Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com

*Attorney for Meta Platforms, Inc. f/k/a
Facebook, Inc.; Facebook Holdings, LLC;
Facebook Operations, LLC; Facebook
Payments, Inc.; Facebook Technologies, LLC;
Instagram, LLC; Siculus, Inc.; and
Mark Elliot Zuckerberg*

*Additional parties and counsel listed on
signature pages*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**INITIAL CASE MANAGEMENT STATEMENT**<br><br>Judge Yvonne Gonzalez Rogers |

The Parties respectfully submit this Initial Case Management Statement.  *See* ECF. No. 2.[1]  The

Parties' Proposed Agenda is attached hereto as **Exhibit A**.

**1.  Jurisdiction and Service**

This Court has been assigned these cases for purposes of coordinated pretrial proceedings under

28 U.S.C. § 1407.  All but one of the actions in this MDL assert that the Court has subject-matter

---

[1] The Parties also submit this statement under the Court's Standing Order, the Standing Order for All Judges of the Northern District of California, and Civil L.R. 16-9.

jurisdiction because the amount in controversy exceeds $75,000 and because complete diversity of citizenship exists between the parties.  28 U.S.C. § 1332(a).  A small subset of actions in this MDL also implicate federal question jurisdiction because they assert federal claims.  28 U.S.C. § 1331.  The undersigned are aware of only one conditionally transferred case in which the Court's subject matter jurisdiction is disputed. *See* Motion to Remand, *Youngers v. Meta Platforms*, No. 1:22-cv-608 (D.N.M. filed Aug. 19, 2022) (ECF No. 8) (seeking remand to New Mexico state court).

Defendants have been properly served, or have waived service, in each case currently transferred into the MDL.

Plaintiffs ask the Court to enter an order establishing a framework for direct filing in the MDL, with direct cases deemed filed in the state of the Plaintiff's residence or the Defendant's residence, at the Plaintiff's election.  Plaintiffs have requested that Defendants waive formal service of process for such actions to avoid waste and unnecessary expense.

Defendants believe it would be premature to enter a direct filing order at this time. To the extent the Court nonetheless desires such an order, Defendants request the opportunity to confer with Plaintiffs regarding the framework and believe direct cases should be deemed filed in the district of the Plaintiff's residence (not the Plaintiff's *or* Defendant's residence at Plaintiff's election); Defendants also reserve the right to object to cases not properly part of the MDL and all rights under *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

**2.   Facts**

**Plaintiffs' position:**

Each of the constituent cases ("Related Actions") in this MDL alleges that Defendants' social media products are designed to induce youths to use Defendants' products in compulsive ways—behavior that has been characterized as addictive.  Defendants' products share several common characteristics that Plaintiffs allege are defects, including the omission of basic safety features such as parental controls and

age verification, and the utilization of design features that target adolescents' underdeveloped ability to resist rewards, particularly social rewards.[2]

Plaintiffs allege that Defendants' conduct has led to a variety of injuries, such as attempted and completed suicide, self-harm, eating disorders, and other injuries that Defendants internally refer to as "social comparison harms;" as well as injuries foreseeably resulting from addicted adolescents or pre-adolescents attempting to maximize engagement with Defendants' products, including accidental deaths from viral pranks (e.g., so-called blackout challenges); and sexual assault, exploitation, and related injuries resulting from Defendants' products connecting adult predators with their minor victims.

**Defendants' position:**

In these cases, Plaintiffs seek to hold Defendants responsible for an array of alleged harms traceable to third-party content that they nevertheless claim were caused by Plaintiffs' use of some or all of Defendants' online communications apps (each of which are distinct and have different features). The medical conditions Plaintiffs describe are troubling, and Defendants deeply sympathize with Plaintiffs and their families. But Defendants dispute they were the cause of these alleged harms. Moreover, Plaintiffs' attempt to use product liability law to impose liability on Defendants in these cases represents an unprecedented use of tort law to attack intangible communications services—and one that runs headlong into both governing federal law and the U.S. Constitution, as discussed in further detail below.

3. **Legal Issues**

**Plaintiffs' position:**

Plaintiffs bring claims under a variety of common law, state statutory, and federal statutory causes of action. Defendants argue certain immunity defenses apply to most or all of Plaintiffs' claims, particularly under Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section

---

[2] Each Defendant's specific design is, of course, unique.

230"), and the First Amendment.  Defendants also assert that their social media platforms are not products for purposes of state product liability laws.

On October 3, 2022, the Supreme Court granted review in *Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021), a Ninth Circuit decision regarding the scope of Section 230.  The issue in *Gonzalez* is whether Section 230 immunizes interactive computer services when they make targeted recommendations of information provided by another information content provider, or only limits the liability of interactive computer services when they engage in traditional editorial functions (such as deciding whether to display or withdraw) with regard to such information. *Gonzalez* will be the Supreme Court's first opportunity to opine on the contours of CDA Section 230.

The Supreme Court's decision will likely shape this MDL going forward, but the nature and extent of its impact remain to be seen.  While Defendants have made clear that their central defense relies on a broad interpretation of Section 230, the Supreme Court is more likely to narrow than broaden immunity under it.  *Cf. Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,* 141 S. Ct. 13 (2020) (Thomas, J.) (suggesting that most lower courts have interpreted Section 230 too broadly).  Moreover, even an affirmance will not dispose of this MDL, because *Gonzalez* differs significantly in its facts and theories from the cases here, and *Gonzalez* does not address failure to warn claims or claims focused on various non-content aspects of Defendants' products that are fundamental to many complaints filed in this litigation.[3]  *See, e.g., Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021**)** (holding that "[plaintiffs] claim neither treats Snap as a 'publisher or speaker' nor relies on 'information provided by another information content provider'").  Of course, were the Supreme Court to reverse or narrow *Gonzalez,* that result would apply *a fortiori* in these cases and change the contours of Rule 12(b)(6) briefing significantly.

---

[3] These include claims based on defective design features such as, *inter alia*, insufficient age verification and parental controls that allowed children under the age established by federal law to use these products or to connect with predatory adults through them, or the use of intermittent and variable rewards to lure children into addiction on these products.

With regards to whether social media platforms are products, Plaintiffs are suing Defendants for the design features of their applications, not intangible thoughts or ideas.  *See Lemmon v Snap.* 995 F.3d 1085 (9th Cir. 2021**)**.  But to the extent Defendants bring motions based on this issue, they will be governed by each state's law[4], and therefore will not be MDL-wide.[5]  Likewise, the First Amendment is a fact specific inquiry that needs to be made on a case-by-case basis, and much of the content at issue in many of the individual complaints pertains to material explicitly excluded from First Amendment protection.

**Defendants' position:**

As legal scholars have recognized, even Plaintiffs' "best case" is "fighting a lot of precedent."[6] Fundamentally, Plaintiffs' core "product liability" theory fails because it targets intangible communications apps, not tangible, physical products; and "[t]here is no strict [product] liability for books, movies, or other forms of media." *Est. of B.H. v. Netflix, Inc.*, No. 4:21-cv-06561-YGR, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-36 (9th Cir. 1989)).  Independently, Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and the First Amendment foreclose Plaintiffs' claims, which seek to hold Defendants liable for the allegedly harmful effects of content created by third parties.

Because the product intangibility flaw is cross-cutting—and because the immunity afforded by the CDA and the First Amendment defense are comprehensive—the Court should address issues such as these (and potentially other cross-cutting issues) in a first phase of dispositive motions.  If, as Defendants expect,

---

[4] For example, a Florida state court recently ruled that the ridesharing platform Lyft could not evade product liability claims on the basis that it also provides a service.  *Brookes v. Lyft Inc.*, No. 50-2019-CA-004782-XXXX-MB, Order Denying Def. Lyft's Mot. for Partial Summ. J. 2–8 (Fla. Cir. Ct. Sept. 30, 2022). (Attached as Exhibit A.)

[5] Given this, such motions would be more appropriate at the bellwether selection phase, as was done in the JUUL litigation.  *See In re Juul Labs Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 3:19-md-02913-WHO, Minute Order 2 (N.D. Cal. Mar. 20, 2020), ECF No. 400.

[6] *E.g.*, Amanda Bronstad, LAW.COM (Sept. 8, 2022), https://www.law.com/2022/09/08/tiresome-to-see-that-argument-coming-up-again-facebooks-plan-to-defeat-addiction-lawsuits/

Plaintiffs' claims cannot survive these dispositive challenges, it would efficiently resolve the great majority of, if not all, cases in this litigation, without undue investment of time and resources by the parties and the Court.  To the extent any claims survive, the Court could then address any additional pleading defects in any individual cases or sets of cases that remain, with a subsequent discovery plan tailored to address any remaining issues.

Such a sequenced approach would promote efficiency, consistent with the Court's prior MDL practice.  *See In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-MD-02420-YGR, ECF No. 276 at 1–2 (N.D. Cal. Aug. 26, 2013).  And because these threshold legal defenses run across Plaintiffs' claims, and one of those defenses grants Defendants immunity with respect to these claims, discovery should remain stayed until Defendants' motions to dismiss are resolved.  *See, e.g.*, *Doe v. Reddit, Inc.*, No. SACV21768JVS, 2021 WL 4348731, at *3 (C.D. Cal. July 12, 2021); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) ("[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.").[7]

---

[7] *See also Fields v. Twitter, Inc.*, No. 3:16-cv-00213-WHO, Dkt. No. 28 (N.D. Cal. Apr. 7, 2016) ("agree[ing] with defendant that a discovery stay is appropriate" pending resolution of motion to dismiss based on CDA immunity); *Gonzalez v. Twitter, Inc.*, No. 4:16-cv-03282-DMR, Dkt. No. 47 (N.D. Cal. Sept. 21, 2016) (staying discovery pending resolution of CDA defense); *Universal Commc'n Sys. v. Lycos, Inc.*, 478 F.3d 413, 425 (1st Cir. 2007) (affirming stay of all discovery); *Ben Ezra, Weinstein, & Co. v. Am. Online, Inc.*, No. 97-485, 1998 WL 896459, at *2-3 (D.N.M. Feb. 3, 1999) (CDA is a "congressionally mandated special immunity" that "free[s]" online service providers "from the burdens of discovery"), *aff'd* 206 F.3d 980, 987 (10th Cir. 2000); *Doe v. Bates*, No. 5:05-cv-91-DF-CMC, 2006 WL 3813758, at *10 (E.D. Tex. Dec. 27, 2006) ("fundamental purpose[] of [CDA] immunity" is to "insulate service providers … from the burdens of litigation, including those associated with discovery").

4.  **Motions**

**Plaintiffs' position:**

Because the Court's October 11, 2022 Order Setting Initial Conference denied all pending dispositive motions without prejudice, there are no such pending dispositive motions.

In light of the Court's direction to avoid argument, Plaintiffs do not fully delve into their arguments in opposition to any motion to dismiss Defendants may file.[8]  Plaintiffs respectfully ask that the Court order that any motion to dismiss only be filed after Plaintiffs file a master complaint and individual short-form complaints, and that the Parties meet and confer on a more complete pre-trial schedule after entry of the Court's order appointing leadership.  Consistent therewith, Plaintiffs urge the Court to reject Defendants' proposal to proceed with motion practice without a master complaint, a mechanism commonly used in mass torts MDLs to consolidate pleadings and promote streamlined motion practice, particularly in litigation like this with a diversity of claims, defendants, and injuries.  *See Manual for Complex Litigation, Fourth* § 22.36; *see also In re Zantac (Ranitidine) Prod. Liab. Litig.*, 339 F.R.D. 669, 679-82 (S.D. Fla. 2021) (summarizing cases that discuss the applicability and utility of master complaints in MDLs).  Engaging in motion practice without this crucial mechanism will be inefficient and lead to confusion regarding the applicability of motions and rulings on them.

Plaintiffs further submit that a full stay of discovery pending resolution of any motion to dismiss Defendants may file is inappropriate here.  Even if the Court is inclined to stay substantive discovery, Plaintiffs ask the Court to ensure the litigation otherwise proceeds expeditiously by entering the crucial "first day orders" discussed below and in the proposed agenda.

---

[8] If the Court desires it, Plaintiff are prepared to submit a response explaining why each of Defendants' arguments lack merit and will not dispose of the MDL.

**Defendants' position:**

Plaintiffs repeatedly attempt to analogize this MDL to other mass tort MDLs, but it is meaningfully different, and Plaintiffs' efforts to argue that their claims are comparable lead them to urge positions that do not make sense in the context of this MDL. Defendants propose that the Court adopt a phased sequence of motion practice that would first address key threshold legal issues, some of which Defendants briefly preview.

*First*, Plaintiffs' tort claims rest principally or entirely on product liability theories, even though Defendants' apps are not tangible goods and thus cannot be deemed "products" for purposes of products liability law. Rather, the apps are intangible communications services for which "[t]here is no strict [product] liability." *Est. of B.H.*, 2022 WL 551701, at *3; *see also Quinteros v. InnoGames*, 2022 WL 898560, at *1, 7 (W.D. Wash. Mar. 28, 2022) (dismissing products liability claim against creator of allegedly "psychologically addictive" "mobile app" game because it was "not a product"). State law is virtually uniform on this issue, *see, e.g.*, *Est. of B.H.*, 2022 WL 551701, at *3 (California law); *see also Quinteros*, 2022 WL 898560, at *1, 7 (Washington law); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 172-73 (D. Conn. 2002) (Connecticut law); *James v. Meow Media, Inc.*, 300 F.3d 683, 700-01 (6th Cir. 2002) (Kentucky law), making it appropriate for resolution on motion to dismiss at the outset of the MDL.[9]

*Second*, each Plaintiff's claims seek to hold Defendant(s) liable for injuries allegedly caused by content created and shared by third-party users of Defendants' communication apps, and claims of this nature are barred by Section 230. *See, e.g., Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th

---

[9] Plaintiffs reference *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), on the question of whether Defendants' apps are "products," but there, the court held only that Section 230 did not bar a negligent design claim that stood "independently of" content on the defendant's app. *Id.* at 1093. The court did not consider, much less decide, whether that app met the legal definition of a product—an issue that was not part of the appeal.

Cir. 2019); Order on Mot. to Dismiss, *Anderson v. TikTok Inc.*, No. 2:22-cv-01849, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) (case identified in conditional transfer order; dismissing product liability and personal injury claims against a TikTok based on CDA immunity). Defendants recognize that the Supreme Court recently granted review in a case involving Section 230 (*Gonzalez v. Google LLC*). The parties cannot, of course, predict how the Court will rule in that case, and even Plaintiffs acknowledge that the Supreme Court may rule in a manner inapplicable to this MDL. Defendants' Section 230 arguments can be resolved based on existing law, and (as discussed below) discovery should not proceed until the application of Section 230 is addressed.

*Third*, the First Amendment prohibits holding Defendants liable for the manner in which they present or control third-party content on their apps, as part of the protection of their "editorial control and judgment." *Miami Herald Publ'n Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *see also NetChoice, LLC v. Att'y Gen. of Fla.*, 34 F.4th 1196, 1213–14 (11th Cir. 2022) (First Amendment protection extends to "decisions about what speech to permit, disseminate, prohibit, and deprioritize," including through algorithms that select and display third-party content).

Defendants believe such threshold issues can be addressed immediately in omnibus motion(s) to dismiss (i.e., would apply across Plaintiffs' existing complaints), without the need for a process by which Plaintiffs file a Master Complaint (which Plaintiffs would then join by reference via individual complaints, or "short form" complaints, as Plaintiffs suggest).[10] The Court can resolve these types of threshold issues much sooner if the process of considering coordinated pleadings is deferred to a later time, and Defendants will make clear in their omnibus motion(s) to dismiss how each of their arguments dispenses with each of Plaintiffs' complaints, eliminating any confusion regarding the applicability of their motion(s) and the

---

[10] Defendants will meet and confer with Plaintiffs regarding whether Defendants will submit a single brief with Defendant-specific supplements or whether separate motions to dismiss will be required. Defendants will also meet and confer with Plaintiffs on appropriate page limits for such motion practice.

Court's ruling thereon.  Because these arguments are truly cross-cutting, they can be addressed in omnibus fashion—both by Defendants *and* by Plaintiffs—allowing all parties to be heard while also allowing for swift resolution of these threshold issues.  If any claims survive such threshold challenges, Defendants' more claim-specific arguments can be addressed, and the Court, if necessary, can direct the preparation of coordinated pleadings with the benefit of a ruling on the threshold legal issues.  This Court has used similar motion(s) to dismiss sequencing in MDLs before.  *See Lithium Ion Batteries*, No. 4:13-MD-02420-YGR, ECF No. 276 at 1–2 ("The numerous issues raised in Defendants' letter brief are best addressed in phases. Depending on how the Court rules on certain issues, other issues may be mooted or substantially simplified.").

**5.  Amendment of Pleadings**

**Plaintiffs' position:**

Plaintiffs anticipate amending their pleadings to refine their factual allegations, add or dismiss certain claims, and incorporate new information learned in discovery.  Plaintiffs submit that the most efficient framework for amendment of pleadings is for the Court to stay deadlines related to the amending of complaints until the filing of a master complaint, which individual Plaintiffs could then adopt in whole or in part.  *See Manual for Complex Litigation, Fourth* § 22.36 (describing master complaints as a vehicle for MDL-wide resolution of various issues).  As discussed above and in the section on scheduling below, Plaintiffs believe that the Parties should meet and confer regarding the deadline for the filing of a master complaint after entry of the Court's order appointing leadership, and any motions to dismiss should not be filed until after the filing of a master complaint and individual short-form complaints.  Permitting motions to dismiss to proceed in the absence of a master complaint would either deprive many plaintiffs of any meaningful opportunity to be heard, or would require a highly impractical and inefficient process of individual briefs from each plaintiff, followed by requests to amend from each plaintiff, in order to satisfy each plaintiff's right to be heard regarding the motion(s).  Plaintiffs are aware of no court that has

adopted this approach in similar MDL litigation.  If the Court is inclined to consider Defendants' proposal that motions to dismiss proceed in the absence of a master complaint, Plaintiffs request an opportunity to brief the issue more fully

Given the broad scope of this MDL, with multiple Defendants, products, and injuries at issue, such filings will likely take more than a few weeks after entry of a leadership order, rendering Defendants' proposed schedule impracticable.  Even under Defendants' schedule, the Court would likely not hear argument of Defendants' motions to dismiss until after the Supreme Court's decision in *Gonzalez*, potentially resulting in pleadings being amended and briefing redone.

With respect to individual complaints, Plaintiffs recommend utilization of a short-form complaint by which an individual plaintiff can adopt, in whole or in part, the allegations and causes of action of the Master Complaint.  If a short-form complaint is utilized, the Parties should meet and confer regarding the information to be provided in it.  Plaintiffs submit that, contrary to Defendants' suggestion, individual Plaintiffs should not be required to provide information that exceeds the pleading requirements of the Federal Rules of Civil Procedure and enters into the realm of discovery, such as a recitation of all content viewed on each app.  Defendants are of course entitled to request such information during *reciprocal* discovery, but Defendants *already* possess comprehensive and complete data sets on each of the adolescent users and concerning all associated user accounts.

**<u>Defendants' position:</u>**

As noted above, it is unnecessary for Plaintiffs to file a master complaint before the Court rules on Defendants' omnibus motion(s) to dismiss.  Should the Court prefer to adopt Plaintiffs' proposal to file a master complaint before resolution of Defendants' threshold motion(s) to dismiss, however, Defendants submit that the Court should set a prompt deadline for Plaintiffs to file a single master complaint. Defendants maintain that any factual allegations in the master complaint must not improperly lump Defendants together and must include distinct allegations that are specific to each Defendant's app.  *E.g.*,

*In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2008) (plaintiff cannot "obfuscate[] what role[]" each defendant "independently played in the alleged harm and whether [each] is liable for its own conduct."). Defendants' apps offer different features and capabilities, and different Plaintiffs engaged with each Defendant differently (to the extent they engaged at all). Plaintiffs should therefore be precluded from, as they do throughout the various complaints (and indeed, in this CMC Statement), making broad allegations against "Defendants" without, for example, explaining what particular app features are allegedly addictive and which Plaintiff engaged with what feature. *See, e.g.*, *Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022) (noting that "Plaintiffs fail to plead the claims with enough specificity for Defendants to determine which claims apply to which Defendants" and that "Plaintiffs must specify with particularity which entity took which alleged actions, and may not evade this requirement by making allegations against groups of 'defendants' generically").

If a master complaint approach is adopted, no Plaintiff should be excused from filing an individual complaint that is fully compliant with applicable pleading requirements. A Plaintiff may incorporate by reference a master complaint "in whole or in part" (as Plaintiffs propose), but each Plaintiff's individual complaint should also (1) identify which of the causes of action in the master complaint the Plaintiff asserts; (2) identify the Defendant(s) against which the Plaintiff purports to bring each cause of action; (3) make Plaintiff-specific allegations regarding the Plaintiff's alleged use of the app(s) at issue, alleged injuries, and alleged damages, including alleging with specificity which app(s) the Plaintiff used, what content was viewed on each app,[11] and how that content contributed to their alleged harm; and (4) make any Plaintiff-specific allegations necessary to support particular claims.

---

[11] Defendants are not suggesting Plaintiffs recite each piece of content they viewed on each app, only that they generally describe the type of content they contend led to their claimed injuries—information only they know and that should have been collected as part of any reasonable pre-suit investigation.

Defendants are willing to meet and confer with Plaintiffs regarding an appropriate sequenced briefing schedule if the Court prefers to adopt Plaintiffs' master complaint approach.     However, Defendants submit that Plaintiffs cannot simultaneously insist on a procedure that delays resolution of the pleadings while insisting on taking discovery of Defendants before the pleadings are settled and Plaintiffs have shown that they have actually stated a claim—and certainly not before the operative complaint is even filed (as Plaintiffs currently propose).  This is particularly true here where discovery will be unusually burdensome.  *See, e.g.*, *Kincheloe v. Am. Airlines, Inc.*, No. 21-cv-00515-BLF, 2021 U.S. Dist. LEXIS 236143 (N.D. Cal. Dec. 9, 2021).

**6.   Evidence Preservation**

The Parties have reviewed the Northern District of California's Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken reasonable and proportionate steps to preserve evidence relevant to the issues in this action.

**Plaintiffs' position:**

Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Court's Guidelines, Plaintiffs acknowledge their duty to cooperate in good faith and be reasonably transparent in all aspects of discovery process, including the identification and preservation of potentially relevant information.  To that end, Plaintiffs believe that the early exchange of information regarding evidence preservation is critical here, so that important evidence is not lost or compromised in the interim, particularly given that Defendants have indicated that certain aspects of their social media platforms are ephemeral.  Cooperative and transparent disclosure now is likely to avoid significant disputes later in the litigation, and will assist the Parties' counsel in responsibly advising their clients regarding the scope of their preservation obligations.

Plaintiffs request the Court order the Parties to hold a Rule 26(f) conference, focused on the disclosure of information regarding the identification and preservation of sources of potentially relevant

information, within 30 days of the Court's appointment of leadership, with multiple days reserved as needed. The Parties' e-discovery vendors and client representatives (in particular, in-house IT personnel) should be ordered to attend. Plaintiffs also propose that the Parties file their Joint Rule 26(f) Report 10 days after the Rule 26(f) conference. Such an approach has been adopted in other MDL litigation, perhaps most notably in Case Management Order No. 1 in *In re 3M Combat Arms Earplug Products Liability Litigation*, No. 3:19-md-2885-MCR (N.D. Florida April 23, 2019) (ECF No. 86).

**<u>Defendants' position:</u>**

These cases present complex preservation issues that will require careful delineation, management and potentially briefing before the Court. Defendants have already devoted extraordinary time and resources to these issues but wish to flag the following issues for the Court's awareness.

*First*, a threshold issue that Defendants have been addressing with respect to each filed case is the need to identify the user accounts associated with each Plaintiff across the various apps. Proper names (to the extent they appear on Plaintiffs' complaints) are insufficient to identify the account(s) for each Plaintiff. Nor can Plaintiffs provide an illustrative set of usernames or other data points (*e.g.,* phone numbers and email addresses) and ask Defendants to search for all "similar" names and data points, as this approach is not feasible from either a technological or a privacy standpoint. Instead, at a minimum, Defendants require the following information to identify the accounts: (1) a username (*i.e.* "handle") or URL for all accounts used by each Plaintiff; (2) all phone numbers used by each Plaintiff and/or their parents or guardians; and (3) all email addresses used by each Plaintiff and/or their parents or guardians. Defendants have requested, and are entitled to, this basic information from Plaintiffs in connection with each lawsuit that has been filed, but many Plaintiffs have not provided it. The Parties should confer regarding the information necessary from plaintiffs to aid in the preservation process, a preservation fact sheet procedure that will facilitate preservation, and the technological limits to and feasibility of preservation.

*Second*, Defendants note that, for Plaintiffs' accounts that remain active on Defendants' apps, Plaintiffs or their children may continue to generate new activity, and in some circumstances that activity may be ephemeral.  Plaintiffs have the ability to save or preserve their account content, while Defendants would face substantial technological and legal burdens from continuous preservation.  Should Plaintiffs attempt to insist that Defendants assume a one-sided, ongoing preservation of all future content and account activity, Defendants will likely seek clarification from the Court to address the scope of their preservation obligations as to active accounts.

*Third*, Defendants note that certain of Plaintiffs' complaints allege that minor users sent images or videos that could constitute child sexual abuse material ("CSAM").  Applicable law prohibits the production, distribution, reception, and possession of "child pornography," for example, as defined in 18 U.S.C. § 2256(8) (*i.e.*, CSAM).  Defendants also have specific legal obligations once they have actual knowledge of certain apparent violations of federal law involving CSAM, including an obligation to report such material to the National Center for Missing and Exploited Children and, after a limited period of secure and limited-access retention, delete the CSAM.  *See* 18 U.S.C. § 2258A(a) and (h).  Given these legal constraints, should Defendants gain actual knowledge of any CSAM, they expect to be unable to preserve (beyond the limited retention period prescribed by law) or produce any such material.  Defendants intend to seek the Court's guidance on the procedure in this litigation for reviewing, preserving, and producing material constituting CSAM.

Defendants are open to discussing these and other preservation issues in the context of negotiating a protective order and ESI protocol with Plaintiffs during the pendency of their motion(s) to dismiss, but

for the reasons discussed believe discovery (including any Rule 26(f) conferences and reports) should be stayed during that time.[12]

### 7. **Discovery**

There has been no discovery in most of the Related Cases and only limited discovery in a handful of other cases.

**Plaintiffs' position:**

Given the vast amount of data and the proprietary platforms at issue, Plaintiffs anticipate undertaking negotiations of appropriate ESI (Electronically Stored Information) and TAR (Technology Assisted Review) in earnest following the appointment of Plaintiffs' leadership. Because Defendants' ESI is not well-suited to keyword searches, Defendants should use TAR to identify and cull relevant and responsive information. An agreed-upon TAR protocol would be far more efficient, effective, and less costly than search terms and would minimize discovery disputes that could cause significant delays.

Additionally, there are four aspects of the discovery process in this case that Plaintiffs ask the Court to evaluate as part of its broader consideration of its case management approach.

First, because of the extensive personal information collected by Defendants and the *purported* ephemeral nature of certain aspects of Defendants' platforms, it is important to establish a framework for Defendants' preservation and production of comprehensive and complete data sets on each of the adolescent users.

Second, because discovery in some of these actions will involve allegations of sexual abuse of children facilitated by Defendants' platforms, as well as suicide videos distributed on Defendants' platforms, among other things, it is important for the Court to establish a framework for appropriately

---

[12] Defendants object to Plaintiffs' suggestion that the parties' e-discovery vendors and in-house IT personnel must be present at any Rule 26(f) conference, which would be premature at this point. If and when a Rule 26(f) conference occurs, good-faith negotiations can occur between outside counsel.

handling child sexual abuse materials ("CSAM") and other highly sensitive material if discovered by a Party, to ensure the material is taken down (and preserved), and not circulated further on Defendants' social media platforms.  This is important not only because appropriate handling of such highly sensitive material is essential to protecting the dignity of victims, and preservation of such materials is permitted by law through the pendency of the litigation, *see, e.g.,* 18 U.S.C. § 2258A; 18 U.S.C. § 2703, but also because inconsistent protocols regarding the handling of such material have the potential to expose the Parties to negative consequences and seriously disrupt the discovery process in this litigation.

Third, Plaintiffs anticipate that substantial discovery regarding Defendants' internal research and documents will be needed on questions of general causation.  Courts in mass tort cases have recognized that a defendant's internal research regarding its product's effects is particularly relevant information in evaluating questions of general causation.  *See*, *e.g.*, *In re Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Prods. Liab. Litig.*, 570 F. Supp. 3d 473, 475 (E.D. Ky. 2020); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.,* 181 F. Supp. 3d 278, 287 (E.D. Pa. 2016). Such discovery is likely to be especially important in this case.  Unlike a mass tort arising from a drug or toxic substance that outside scientists can study, scientists do not have access to the years of research by Defendants studying the impact of their design choices on adolescents in the real world or the innards of Defendants' social media products.  In contrast, Defendants—and the teams of engineers and scientists they employ—have vastly more ability to conduct experimental research on the effects of their products. Defendant-specific internal research disclosed publicly through whistleblowers, though limited, has substantially expanded the public's understanding of the ways in which Defendants' products harm adolescents.  The various lawsuits in this MDL thus rely heavily on whistleblower revelations about Defendants' internal research, but much remains to be disclosed and analyzed.  Because of the importance of this discovery, efforts to phase or sequence the case in a way that isolates general causation issues are unlikely to yield efficiencies.

Fourth, certain Defendants are the subject of several overlapping government investigations regarding the conduct at issue in this litigation, and are involved in parallel federal multidistrict litigation on data privacy issues.[13]  These investigations provide an opportunity for the Court to efficiently advance discovery by ordering Defendants to reproduce in this litigation discovery produced in any court case, government investigation, or government hearing (whether domestic or international) regarding the health or behavioral effects of their products on minors.  Such an approach has been adopted in other MDL litigation, perhaps most notably in Discovery Ruling No. 22 in *In re National Prescription Opiate Litigation*, No. 1:17-md-02804-DAP (N.D. Ohio Sept. 16, 2019) (ECF No. 2576) (amended Oct. 3, 2019 (ECF No. 2712), Apr. 30, 2020 (ECF No. 3286), and May 8, 2020 (ECF No. 3291)) and reflected in the Civil Minutes of December 9, 2019 Telephone Status Conference in *In Re: Juul Labs, Inc.*, No. 19-md-02913-WHO (N.D. Cal. Dec. 10, 2019) (ECF No. 299).  Coordination with the state court cases (*see* No. 10 below) will also streamline discovery.

**<u>Defendants' position:</u>**

The Court has stayed discovery pending the Initial Case Management Conference.  *See* Order Setting Initial Conference at 5.  The Court should maintain this stay pending resolution of the types of

---

[13] A nationwide investigation led by a bipartisan group of eight state attorneys general is scrutinizing Defendants' promotion of their social media platforms to children, and the resulting physical and mental harms to youth. *See* Press Release, Rob Bonta Attorney General, *Attorney General Bonta Announces Nationwide Investigation into TikTok* (Mar. 2, 2022), available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-nationwide-investigation-tiktok (last accessed Oct. 24, 2022); Press Release, Rob Bonta Attorney General, *Attorney General Bonta Announces Nationwide Investigation into Instagram's Impact on Young People* (Nov. 18, 2021), available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-nationwide-investigation-instagram%E2%80%99s-impact (last accessed Oct. 24, 2022).  The parallel federal multidistrict litigation is pending settlement redressing defendants' unlawful sharing of users' private data with third parties.  *See* Berg, L. *Facebook users near deal in data harvesting MDL*, LAW360. (Aug. 26, 2022), available at: https://www.law360.com/articles/1525082 (last accessed: Oct. 24, 2022).

threshold legal issues discussed above, whether or not the Court adopts Plaintiffs' proposed master complaint process.[14]  As such, Plaintiffs' discovery arguments are premature.

District courts in the Ninth Circuit generally stay discovery pending a motion to dismiss when the motion is (1) "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed;" and (2) one that "can be decided absent discovery."  *See Huang v. Futurewei Techs., Inc.*, 18-cv-00534-BLF, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018) (the Court "has 'wide discretion in controlling discovery,' and that discretion extends to staying discovery upon a showing of 'good cause.'") (citation omitted).  Defendants' anticipated motion(s) to dismiss easily satisfies this test because the issues raised in that motion could dispense of the cases entirely and no discovery is necessary to resolve those issues.  A stay is particularly appropriate in light of Defendants' Section 230 defense.  Courts have recognized that this provision creates an immunity—and that discovery is not permitted where the defendant raises such a defense unless and until the claim to immunity is resolved.  *See, e.g.*, *Onuoha v. Facebook, Inc.*, 2017 WL 11681325, at *1 (N.D. Cal. Apr. 7, 2017); *Gonzalez, et al. v. Twitter, Inc., et al.*, No. 4:16-CV-03282-DMR, Dkt. No. 47 (N.D. Cal. Sept. 21, 2016); *Doe v. Reddit, Inc.*, 2021 WL 4348731, at *3 (C.D. Cal. July 12, 2021).

Plaintiffs raise a number of substantive discovery-related issues concerning the collection, review, and production of ESI.  These issues are not presently before the Court.  Should the Court adopt Defendants' position and agree to stay discovery pending resolution of Defendants' motion(s) to dismiss, Defendants are prepared to engage with Plaintiffs on various preliminary discovery issues, including an appropriate protective order, ESI protocol, and the like.  Plaintiffs' arguments regarding potential discovery phasing are premature and incorrect.  But discussion of that question should be deferred—at a

---

[14] If the Court is not inclined to extend the discovery stay at the Initial Case Management Conference, Defendants reserve the right to move for a stay on the grounds stated herein and reserve the right to object to all categories identified for potential discovery in Plaintiffs' statement.

minimum—until after the Plaintiffs' leadership structure is decided and Defendants' pleading challenges are resolved.

## 8. **Disclosures**

**Plaintiffs' position:**

Plaintiffs believe the deadline for Rule 26 disclosures should be established following the Court's appointment of a Plaintiffs' leadership structure.

**Defendants' position:**

As explained *supra*, the Court should stay all discovery, including Rule 26 disclosures, pending resolution of Defendants' motions to dismiss.

## 9. **Related Class Action**

There is a putative class action pending in California state court against Meta alleging non-personal injury claims based on some of the same alleged conduct at issue in these suits.  *See V.P. v. Meta Platforms, Inc.*, No. 22-CIV-03935 (Cal. Super. Ct., San Mateo Cty. filed Sept. 27, 2022). On October 27, 2022, Meta removed this suit to federal court and designated it a related case.  The Parties agree that any remand motion and dispositive motions regarding the putative class action should be addressed independently of the individual actions.

## 10. **Related Cases**

Several state court cases are pending in California that involve related issues of law and fact, including those in two pending petitions for coordination before the Judicial Council of California.  In addition, forty-five additional cases were transferred to this Court soon after the JPML's initial centralization ruling, *see* Conditional Transfer Order (CTO-1) (ECF No. 5, filed Oct. 19, 2022), and Plaintiffs anticipate a considerable volume of further tag-along transfers to this MDL.

## 11. **Relief**

Plaintiffs seek restitution, compensatory and punitive damages, and disgorgement in amounts to be determined at trial; an order requiring Defendants to pay both pre-and post-judgment interest on any amounts awarded; injunctive relief directed at Defendants' practices; an award of costs and attorneys' fees; and such other or further relief as may be appropriate.

Defendants deny that Plaintiffs are entitled to any of the relief sought.

**12. Settlement and ADR**

Plaintiffs believe that discussion of settlement should be deferred until, at a minimum, the Court's appointment of a Plaintiffs' leadership structure.  Defendants believe it would be premature to discuss settlement when the litigation is in its early stages.

**13. Consent to Magistrate Judge for All Purposes**

The Parties do not consent to a Magistrate Judge for all purposes.

**14. Other References**

**Plaintiffs' position:**

Plaintiffs do not believe reference to a special master is appropriate at this time.  Plaintiffs defer to the Court on whether referral to a Magistrate Judge to oversee discovery matters would facilitate progress of the litigation.

**Defendants' position:**

As noted above, the Court has stayed discovery pending the Initial Case Management Conference. *See* Order Setting Initial Conference at 5.  The Court should maintain this discovery stay pending resolution of threshold legal issues like those discussed above; consideration of Plaintiffs' suggestion that discovery be referred to a Magistrate would be premature.

**15. Narrowing of Issues**

The Parties believe that it is premature to consider an agreement to narrow issues for trial or expedite the presentation of evidence at trial.  They do not propose to bifurcate any issues, claims, or

defenses at this time, but Defendants reserve the right to propose a discovery plan following resolution of their motion(s) to dismiss that is tailored to address any remaining issues.

### 16. Expedited Trial Procedure

The Parties respectfully submit that this case is not appropriate for proceedings pursuant to the expedited trial procedure of General Order No. 64, Attachment A.

### 17. Scheduling

**Plaintiffs' position:**

To prevent the potential loss of relevant evidence and permit the Parties to move the litigation forward expeditiously, it is crucial that the Parties negotiate, and the Court enter, initial case management orders—often referred to as "First Day Orders"—covering document preservation, ESI, and protection of confidential and sensitive material. *See* Exhibit A, §2. Likewise, the early exchange of sources of potentially relevant ESI, including identifying current and former internal departments, divisions, committees, or teams, and individual members thereof, possessing potentially relevant information, is consistent with Rules 16(b) and 26(a) and (f)—and will help avoid later disputes on what sources of responsive information exist, what sources are reasonably accessible, and what sources will be searched for responsive information. *Id.*, § 1. This early exchange of information is particularly important given the substantial imbalance of information between the Parties.

Additionally, Plaintiffs ask the Court to order Defendants to reproduce immediately in this litigation discovery produced in any court case, government investigation, or government hearing regarding their products' health or behavioral effects on minors. Because Defendants will have already collected this information to respond to parallel government investigations or lawsuits, there is no burden to producing it here. *See, e.g., In re High-Tech Employee Antitrust Litig.,* 856 F. Supp. 2d 1103, 1113 (N.D. Cal. 2012) (Koh, J.) (ordering defendants at first case management conference to "produce responsive, non-privileged documents already produced to the DOJ"); *Ohio Police & Fire Pension Fund*

*v. Standard & Poor's Fin. Servs.,* No. 2:09-CV-1054, 2010 WL 2541366, at *1 (S.D. Ohio June 18, 2010) (ordering defendants to "produce to plaintiffs documents already produced to various state or federal regulators" while the motion to dismiss is pending); *Galaria v. Nationwide Mut. Ins. Co.,* No. 2:13-CV-00118, 2013 WL 6578730, at *1 (S.D. Ohio Dec. 16, 2013) (denying defendant's motion to stay discovery pending motion to dismiss, noting that "[i]f documents or other information … respond to requests for information from governmental agencies, it would be difficult to argue that production of that document would be burdensome").

Plaintiffs believe the Parties should meet and confer about the remainder of the schedule after entry of the Court's order appointing leadership.  For the reasons explained above, it is not prudent, practicable or efficient for Defendants' motions to dismiss to be filed prior to the filing of a master complaint and individual short-form complaints.  In addition, the Supreme Court's decision in *Gonzalez* will likely have significant implications for the master complaint, individual complaints, and the Parties' motion to dismiss briefing.  That decision is likely to be rendered in spring or early summer, a reality that should be reflected in the schedule for this MDL, but which Defendants' proposals below ignore.

**Defendants' Position:**

For the reasons discussed *supra*, the Court should maintain the discovery stay until after Defendants' pleadings challenges are resolved, particularly given Defendants' strong immunity defense under Section 230.

Defendants propose the following briefing schedule for their proposed omnibus motion(s) to dismiss, which as noted will allow for the swift resolution of cross-cutting, threshold issues that could dispose of Plaintiffs' complaints in their entirety:

| Defendants' Omnibus Motion(s) to Dismiss on Threshold Issues | December 16, 2022 |
|---|---|
| Plaintiffs' Oppositions | January 23, 2023 |

| Defendants' Replies | February 20, 2023 |
|---|---|
| Hearing on Omnibus Motion(s) to Dismiss | To be set at the Court's convenience |
| Subsequent Motion(s) to Dismiss Briefing (if necessary and/or ordered by the Court) | To be set (if necessary) following ruling on Defendants' Omnibus Motion(s) to Dismiss on Threshold Issues |

Should the Court prefer to have Plaintiffs file a Master Complaint before the resolution of Defendants' motion to dismiss, Defendants propose the following schedule for consolidation of the pleadings:

| Single Master Complaint filed | December 9, 2022 |
|---|---|
| Parties agree to required content of individual complaints | January 6, 2023 |
| Parties to submit a joint letter setting forth any disputes regarding required content of individual complaints | January 13, 2023 |
| Each Plaintiff in a case filed on or before January 9, 2023, to file an individual complaint | February 3, 2023, or 28 days after the Court resolves any disputes regarding the form of the individual complaints (whichever is later) |
| Defendants' Motion(s) to Dismiss on Threshold Issues | February 24, 2023 (assuming no disputes regarding required content of individual complaints) |
| Plaintiffs' Oppositions to Defendants' Motion(s) to Dismiss on Threshold Issues | March 24, 2023 (assuming no disputes regarding required content of individual complaints) |
| Defendants' Replies in Support of Motion(s) to Dismiss on Threshold Issues | April 21, 2023 (assuming no disputes regarding required content of individual complaints) |
| Hearing on Motion(s) to Dismiss on Threshold Issues | To be set at the Court's convenience |
| Subsequent Motion(s) to Dismiss Briefing (if necessary and/or ordered by the Court) | To be set (if necessary) following ruling on Defendants' Motion(s) to Dismiss on Threshold Issues |
| Each Plaintiff in a case filed after January 9, 2023 to file an individual complaint | 30 days after transfer to this MDL |

Defendants believe it would be premature to schedule any other deadlines or proceedings at this time.

**18. <u>Trial</u>**

To the Parties' knowledge, a jury trial has been requested in every case that is part of this MDL.

**19. <u>Disclosure of Non-Party Interested Entities or Persons</u>**

The Parties believe that the filing of a statement pursuant to Local Rule 3-15, if necessary, should take place in accordance with the Local Rules.

**20. <u>Professional Conduct</u>**

The undersigned certify that they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully submitted,

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 COMMERCE STREET
MONTGOMERY, AL 36103
Telephone:  334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. GARDEN STREET, 9TH FLOOR
PENSACOLA, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone:  415-986-1400
jennie@andrusanderson.com

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: (504) 227–8100
raustin@ronaustinlaw.com

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone:  206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone:  212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone:  917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**

INITIAL CASE MANAGEMENT STATEMENT

16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

KIRK GOZA
**GOZA & HONNOLD, LLC**
9500 Nall Avenue, Suite 400
Overland Park, KS 66207
T: 913-451-3433
kgoza@gohonlaw.com

SIN-TINY MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone:  510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone:  510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone:  850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone:  (818) 839-2333
Facsimile:  (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630

Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone:  215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone:  205.855.5700
fu@dicellolevitt.com

ROBERT H. KLONOFF
**ROBERT KLONOFF, LLC**
2425 SW 76TH AVENUE
PORTLAND, OR 97225
Telephone:  503-702-0218
klonoff@usa.net

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

ANTHONY K. BRUSTER
**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
(817) 601-9564
akbruster@brusterpllc.com

FRANCOIS M. BLAUDEAU, MD JD FACHE FCLM
**SOUTHERN INSTITUTE FOR MEDICAL AND
LEGAL AFFAIRS**
2762 B M Montgomery Street, Suite 101
Homewood, Alabama 35209
T: 205.564.2741
francois@southernmedlaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**

31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone:  212-372-3030
jamesmarsh@marshlaw.com

 *Attorneys for Plaintiffs*

COVINGTON & BURLING LLP

By:  /s/ Phyllis A. Jones
       Phyllis A. Jones, *pro hac vice*
       COVINGTON & BURLING LLP
       One CityCenter
       850 Tenth Street, NW
       Washington, DC 20001-4956
       Telephone: + 1 (202) 662-6000
       Facsimile: + 1 (202) 662-6291
       Email:  pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

KING & SPALDING LLP

By:  /s/ Geoffrey M. Drake
       Geoffrey M. Drake
       1180 Peachtree Street, NE, Suite 1600
       Atlanta, GA 30309
       Telephone: + 1 (404) 572-4600
       Facsimile: + 1 (404) 572-5100
       Email: gdrake@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

INITIAL CASE MANAGEMENT STATEMENT

FAEGRE DRINKER LLP

By:     /s/ Andrea Roberts Pierson
        Andrea Roberts Pierson
        300 N. Meridian Street, Suite 2500
        Indianapolis, IN 46204
        Telephone: + 1 (317) 237-0300
        Facsimile: + 1 (317) 237-1000
        Email: andrea.pierson@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP

By:     /s/ Jonathan H. Blavin
        Jonathan H. Blavin, SBN 230269
        MUNGER, TOLLES & OLSON LLP
        560 Mission Street, 27th Floor
        San Francisco, CA  94105-3089
        Telephone:  (415) 512-4000
        Facsimile:  (415) 512-4077

        Rose L. Ehler (SBN 29652)
        Victoria A. Degtyareva (SBN 284199)
        Laura M. Lopez, (SBN 313450)
        Ariel T. Teshuva  (SBN 324238)
        MUNGER, TOLLES & OLSON LLP
        350 South Grand Avenue, 50th Floor
        Los Angeles, CA  90071-3426
        Telephone:  (213) 683-9100
        Facsimile:  (213) 687-3702

        Lauren A. Bell (*pro hac vice forthcoming*)
        MUNGER, TOLLES & OLSON LLP
        601 Massachusetts Ave., NW St.,
        Suite 500 E
        Washington, D.C.  20001-5369
        Telephone:  (202) 220-1100
        Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

INITIAL CASE MANAGEMENT STATEMENT

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:    */s/ Brian M. Willen*
       Brian M. Willen
       bwillen@wsgr.com
       Vivek Tata
       vtata@wsgr.com
       1301 Avenue of the Americas, 40th Floor
       New York, New York 10019
       Telephone: (212) 999-5800
       Facsimile: (212) 999-5899

       Lauren Gallo White
       lwhite@wsgr.com
       Samantha A. Machock
       smachock@wsgr.com
       One Market Plaza, Spear Tower, Suite 3300
       San Francisco, CA  94105
       Telephone: (415) 947-2000
       Facsimile: (415) 947-2099

       Christopher Chiou
       cchiou@wsgr.com
       633 West Fifth Street
       Los Angeles, CA 90071-2048
       Telephone: (323) 210-2900
       Facsimile: (866) 974-7329

       *Attorneys for Defendants YouTube, LLC, Google LLC,*
       *and Alphabet Inc.*

## ATTESTATION

I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:       October 31, 2022       By:    */s/ Phyllis A. Jones*
                                    Phyllis A. Jones

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL No. 3047

Case No. 4:22-md-03047-YGR

Judge Yvonne Gonzalez Rogers |
| ALL ACTIONS | |

## **EXHIBIT A -- PROPOSED AGENDA FOR INITIAL CONFERENCE**

Pursuant to the Court's October 11, 2022 Order Setting Initial Conference (ECF No. 2), the Parties respectfully submit this proposed agenda for the initial conference.  The Parties will be guided by the Court's preference on the order in which the topics should be addressed.

o  **Motions to Dismiss**

- Defendants' proposal to phase motion to dismiss briefing in two phases:

    o   Phase 1: Motion(s) to Dismiss on Threshold Issues

    o   Phase 2 (if necessary): Claim- and Plaintiff-Specific Motions to Dismiss

o  **Discovery**

- Defendants' proposed stay of discovery pending resolution of Motion(s) to Dismiss.

- Plaintiffs' proposed order requiring the production of materials previously produced in any court case, government investigation, or government hearing on the health or behavioral effects of Defendants' products on youth.

o  **Initial Preservation and Other Orders**

- Defendants' proposal that the Parties confer on a preservation fact sheet procedure (and Plaintiffs' proposal that Defendants in turn produce comprehensive and complete data sets on each of the adolescent users, including information for all user accounts).

- Evidence preservation protocols delineating the Parties' obligations to preserve potentially relevant information.

- Plaintiffs' proposed order directing the Parties to hold a Rule 26(f) conference, focused the necessary exchange of information regarding the identification and preservation of sources of potentially relevant information.

- ESI and/or TAR protocols.

- Rule 502(d) Order.

- A protective order governing the disclosure of trade secrets, proprietary business information, and confidential personal or business information.

- A protocol for the handling of child sexual abuse materials ("CSAM") and other sensitive content that may be discovered in the course of the litigation.

The Parties propose that they meet and confer concerning these orders within 10 days after the Court's appointment of leadership.

- **Direct Filing**

  - Plaintiffs' proposal for a framework for direct filing in the MDL and associated waiver of service.