```
1                    UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                          OAKLAND DIVISION

4
                                    CASE NO.  MD-22-3047 YGR
5      IN RE: SOCIAL MEDIA ADOLESCENT
       ADDICTION/PERSONAL INJURY       OAKLAND, CALIFORNIA
6      PRODUCTS LIABILITY LITIGATION
                                       NOVEMBER 9, 2022
7      THIS DOCUMENT RELATES: ALL
       CASES                           PAGES 1 - 135
8

9                      TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
10                  UNITED STATES DISTRICT JUDGE

11     A-P-P-E-A-R-A-N-C-E-S

12     FOR THE PLAINTIFFS:   DIANDRA S. DEBROSSE ZIMMERMANN
                             DICELLO LEVITT GUTZLER LLC
13                           BY:  DIANDRA S. DEBROSSE ZIMMERMANN
                             420 20TH STREET, SUITE 255
14                           BIRMINGHAM, ALABAMA 35203

15                           LIEFF CABRASER HEIMANN AND BERNSTEIN
                             BY:  LEXI J. HAZAM
16                           275 BATTERY STREET, 29TH FLOOR
                             SAN FRANCISCO, CALIFORNIA 94111
17
                             BEASLEY ALLEN
18                           BY:  JOSEPH G. VANZANDT
                             234 COMMERCE STREET
19                           MONTGOMERY, ALABAMA 36103

20                           MORGAN & MORGAN
                             BY:  EMILY C. JEFFCOTT
21                           220 W. GARDEN STREET, 9TH FLOOR
                             PENSACOLA, FLORIDA 32502
22

23                (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24     OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074
25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
       TRANSCRIPT PRODUCED WITH COMPUTER.
```

```
 1    A P P E A R A N C E S: (CONT'D)

 2    FOR THE PLAINTIFFS:          MORGAN & MORGAN
                                   BY:  CHRISTOPHER SEEGER
 3                                 220 W. GARDEN STREET, 9TH FLOOR
                                   PENSACOLA, FLORIDA 32502
 4
                                   ANDRUS ANDERSON LLP
 5                                 BY:  JENNIE ANDERSON
                                   155 MONTGOMERY STREET, SUITE 900
 6                                 SAN FRANCISCO, CALIFORNIA 94104

 7                                 SIMMONS HANLY CONROY
                                   BY:  JAYNE CONROY
 8                                 112 MADISON AVENUE, 7TH FLOOR
                                   NEW YORK, NEW YORK 10016
 9
                                   SOCIAL MEDIA VICTIMS LAW CENTER
10                                 PLLC
                                   BY:  MATTHEW P. BERGMAN
11                                 821 2ND AVENUE, SUITE 2100
                                   SEATTLE, WASHINGTON 98104
12
                                   WAGSTAFF & CARTMELL LLP
13                                 BY:  THOMAS P. CARTMELL
                                   4740 GRAND AVENUE, SUITE 300
14                                 KANSAS CITY, MISSOURI 64112

15                                 GOZA HONNOLD TRIAL LAWYERS
                                   BY:  KIRK J. GOZA
16                                 9500 NALL AVENUE, SUITE 400
                                   OVERLAND PARK, KANSAS 66207
17
                                   WATTS GUERRA LLP
18                                 BY:  PAIGE N. BOLDT
                                   70 STONY POINT ROAD, SUITE A
19                                 SANTA ROSA, CALIFORNIA 95401

20                                 MARSH LAW FIRM PLLC
                                   BY:  JAMES R. MARSH
21                                 31 HUDSON YARDS, 11TH FLOOR
                                   NEW YORK, NEW YORK 10001
22
                                   AYLSTOCK WITKIN KREIS &
23                                 OVERHOLTZ, PLLC
                                   BY:  SIN-TING MARY LIU
24                                 17 EAST MAIN STREET, SUITE 200
                                   PENSACOLA, FLORIDA 32502
25
                       (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

1
    A P P E A R A N C E S: (CONT'D)

2

3    FOR THE PLAINTIFFS:         HACH ROSE SCHIRRIPA & CHEVERIE
                             BY:  HILLARY M. NAPPI

4                             112 MADISON AVENUE
                             NEW YORK, NEW YORK 10016

5

6                             RON AUSTIN LAW
                             BY:  RON A. AUSTIN

7                             400 MANHATTAN BOULEVARD
                             HARVEY, LOUISIANA 70058

8                             THE CARLSON LAW FIRM, P.C.
                             BY:  RUTH THI RIZKALLA

9                             1500 ROSECRANS AVENUE, SUITE 500
                             MANHATTAN BEACH, CALIFORNIA 90266

10

11                           BARON BUDD, P.C.
                             BY:  ROLAND K. TELLIS

12                             15910 VENTURA BOULEVARD
                             ENCINO PLAZA, SUITE 1600
                             ENCINO, CALIFORNIA 91436

13

14                           GIBBS LAW GROUP LLP
                             BY:  ANDRE M. MURA

15                             1111 BROADWAY, SUITE 2100
                             OAKLAND, CALIFORNIA 94607

16                           LEVIN PAPANTONIO RAFFERTY
                             BY:  EMMIE PAULOS

17                             316 SOUTH BAYLEN STREET
                             SUITE 600

18                           PENSACOLA, FLORIDA 32502

19                           WALSH LAW PLLC
                             BY:  ALEXANDRA M. WALSH

20                           1050 CONNECTICUT AVENUE, NW
                             SUITE 500

21                           WASHINGTON, DC 20036

22                           WEITZ AND LUXENBERG
                             BY:  JAMES BILSBORROW

23                           700 BROADWAY
                           NEW YORK, NEW YORK 10003

24

25           (APPEARANCES CONTINUED ON THE NEXT PAGE.)

```
1        A P P E A R A N C E S: (CONT'D)

2        FOR THE PLAINTIFFS:           C.A. GOLDBERG, PLLC
                                       BY:  CARRIE GOLDBERG
3                                      16 COURT STREET, 33RD FLOOR
                                       BROOKLYN, NEW YORK 11241
4
                                       MOTLEY RICE
5                                      BY:  PREVIN WARREN
                                       401 9TH ST. NW, SUITE 630
6                                      WASHINGTON, DC  20004

7        BY ZOOM VIDEO:                LEVIN, SEDRAN AND BERGMAN LLP
                                       BY:  MICHAEL M. WEINKOWITZ
8                                      510 WALNUT STREET, SUITE 500
                                       PHILADELPHIA, PENNSYLVANIA 19106
9

10

         FOR DEFENDANT META PLATFORMS: COVINGTON AND BURLING LLP
11                                      BY:  PAUL W. SCHMIDT
                                             PHYLLIS A. JONES
12                                      ONE CITY CENTER
                                        850 TENTH STREET, NW
13                                      WASHINGTON, DC 20001

14                                      BY:  ASHLEY M. SIMONSEN
                                        1999 AVENUE OF THE STARS
15                                      SUITE 3500
                                        LOS ANGELES, CALIFORNIA 90067
16
         FOR SNAP, INC.:                MUNGER, TOLLES & OLSON, LLP
17                                      BY:  JONATHAN H. BLAVIN
                                        560 MISSION STREET, 27TH FLOOR
18                                      SAN FRANCISCO, CALIFORNIA
                                        94105
19
                                        BY:  LAUREN BELL
20                                      601 MASSACHUSETTS AVE NW
                                        SUITE 500 EAST
21                                      WASHINGTON, DC 20001

22       FOR TIKTOK, INC.:              FAEGRE DRINKER BIDDLE & REATH LLP
                                        BY:  ANDREA PIERSON
23                                      300 NORTH MERIDIAN STREET
                                        SUITE 2500
24                                      INDIANAPOLIS, INDIANA 46204

25
                 (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

```
1        A P P E A R A N C E S: (CONT'D)

2    FOR BYTEDANCE, INC., &        WILSON SONSINI GOODRICH AND
     GOOGLE:                       ROSATI, PC
3                                  BY:  LAUREN G. WHITE
                                   ONE MARKET PLAZA
4                                  SPEAR TOWER, SUITE 3300
                                   SAN FRANCISCO, CALIFORNIA 94105
5
                                   BY:  GEOFFREY DRAKE
6                                  1180 PEACHTREE STREET
                                   ATLANTA, GEORGIA 30309
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   OAKLAND, CALIFORNIA                    NOVEMBER 9, 2022

 2                   P R O C E E D I N G S

 3        (COURT CONVENED AT 9:04 A.M.)

 4             THE COURT:  ALL RIGHT.  LET'S CALL THE CASE.

 5             THE CLERK:  WE'RE CALLING MDL CASE 22-3047-YGR,

 6   IN RE SOCIAL MEDIA ADOLESCENT ADDICTION PERSONAL

 7   INJURY/PRODUCTS LIABILITY LITIGATION.

 8             THE COURT:  OKAY.  EVERYBODY HAS SIGNED IN ON THE

 9   SHEETS OUTSIDE.  IF YOU HAVE NOT SIGNED IN, MR. GARCIA WILL GO

10   AND COLLECT THOSE.  YOU NEED TO CONNECT WITH HIM AFTER THESE

11   PROCEEDINGS AND MAKE SURE YOU'RE ON THE LIST.

12        WE HAVE A LOT TO DO TODAY.

13        I'M NOT GOING TO WASTE TIME HAVING EVERYBODY STATE THEIR

14   APPEARANCE, BUT WE WILL HAVE EVERYBODY WHEN THEY FIRST APPROACH

15   THE COURT TO STATE THEIR APPEARANCE, AT LEAST WITH RESPECT TO

16   THE PLAINTIFFS.

17        WITH RESPECT TO THE DEFENDANTS, THE FIRST PART OF THIS

18   YOU'RE GOING TO SIT AND LISTEN FOR QUITE A WHILE BECAUSE I HAVE

19   A LOT TO TALK ABOUT WITH THE PLAINTIFFS.

20        BUT WHY DON'T YOU GO AHEAD AND COME TO THE MIC AND STATE

21   YOUR APPEARANCE.

22        WITH RESPECT TO MASKS, MY RULE IS THAT YOU DON'T HAVE TO

23   WEAR THEM IF YOU DON'T WANT.  YOU'RE WELCOME TO WEAR THEM IF

24   YOU WANT.

25        AND JUST WHEN YOU'RE AT THE MIC, IF YOU ARE WEARING ONE
```

```
09:05AM   1        AND I CAN'T HEAR YOU, THEN I MIGHT ASK YOU TO TAKE IT OFF.

09:05AM   2             ALL RIGHT.  SO LET ME UNDERSTAND WHO IS HERE ON THE

09:05AM   3   DEFENSE SIDE, IF YOU'LL COME FORWARD.

09:06AM   4                  MS. JONES:  GOOD MORNING, YOUR HONOR.

09:06AM   5        PHYLLIS JONES OF COVINGTON AND BURLING ON BEHALF OF META.

09:06AM   6                  THE COURT:  OKAY.  HOLD ON JUST A MINUTE.

09:06AM   7   THANK YOU.

09:06AM   8                  MS. JONES:  NICE TO SEE YOU.

09:06AM   9                  THE COURT:  YOU, TOO.

09:06AM  10                  MR. SCHMIDT:  GOOD MORNING, YOUR HONOR.

09:06AM  11        PAUL SCHMIDT, COVINGTON AND BURLING ON BEHALF OF META.

09:06AM  12                  THE COURT:  OKAY.  GOOD MORNING.

09:06AM  13                  MS. BELL:  GOOD MORNING, YOUR HONOR.

09:06AM  14        LAUREN BELL FROM MUNGER, TOLLES & OLSON ON BEHALF OF SNAP.

09:06AM  15                  THE COURT:  LAURA BOWELL DID YOU SAY?

09:06AM  16                  MS. BELL:  LAUREN BELL, B-E-L-L, BELL.

09:06AM  17                  THE COURT:  BELL.  FROM MUNGER TOLLES?

09:06AM  18                  MS. BELL:  YES, YOUR HONOR.

09:06AM  19                  THE COURT:  AND YOU'RE HERE -- IS MR. BLAVIN HERE?

09:06AM  20                  MR. BLAVIN:  I AM, YOUR HONOR.

09:07AM  21                  THE COURT:  SO YOU'RE MR. BLAVIN AND YOU'RE BELL.

09:07AM  22   OKAY.  THANK YOU.

09:07AM  23                  MS. WHITE:  GOOD MORNING, YOUR HONOR.

09:07AM  24        LAUREN WHITE FROM WILSON SONSINI ON BEHALF OF

09:07AM  25   DEFENDANT GOOGLE.
```

| | | |
|---|---|---|
| 09:07AM | 1 | THE COURT:  OKAY. |
| 09:07AM | 2 | MR. DRAKE:  GOOD MORNING, YOUR HONOR. |
| 09:07AM | 3 | JEFFREY DRAKE FROM KING & SPALDING ON BEHALF OF TIKTOK AND |
| 09:07AM | 4 | BYTEDANCE. |
| 09:07AM | 5 | THE COURT:  OKAY.  GREAT.  THANK YOU. |
| 09:07AM | 6 | MR. DRAKE:  GOOD MORNING. |
| 09:07AM | 7 | MS. PIERSON:  GOOD MORNING, YOUR HONOR. |
| 09:07AM | 8 | ANDREA PIERSON FROM FAEGRE DRINKER ALSO ON BEHALF OF |
| 09:07AM | 9 | TIKTOK AND BYTEDANCE. |
| 09:07AM | 10 | THE COURT:  OKAY.  GREAT. |
| 09:07AM | 11 | IRENE, DO WE NOT HAVE REALTIME SET UP? |
| 09:08AM | 12 | OKAY.  SO I HAVE YOUR AGENDA.  I HAVE MY OWN.  THANK YOU |
| 09:08AM | 13 | FOR SUBMITTING ALL OF THAT IN ADVANCE. |
| 09:08AM | 14 | AND WHO IS THE ASSOCIATE THAT I CAN THANK FOR THE |
| 09:08AM | 15 | SPREADSHEET ON THE DEFENSE SIDE BECAUSE I KNOW IT WASN'T A |
| 09:08AM | 16 | PARTNER? |
| 09:08AM | 17 | MS. JONES:  OUR COLLEAGUE, ALICE PHILLIPS, HAS BEEN |
| 09:08AM | 18 | LEADING THE CHARGE ON THAT, YOUR HONOR, AT COVINGTON. |
| 09:08AM | 19 | THE COURT:  OKAY. |
| 09:08AM | 20 | MS. JONES:  WE WILL CONVEY THE COURT'S THANKS. |
| 09:08AM | 21 | THANK YOU FOR NOTING THAT. |
| 09:08AM | 22 | THE COURT:  IS SHE NOT HERE? |
| 09:08AM | 23 | MS. JONES:  SHE'S NOT.  SHE'S ACTUALLY IN |
| 09:08AM | 24 | LOS ANGELES. |
| 09:08AM | 25 | THE COURT:  OKAY.  WELL, YOU SEE, THAT'S WHAT |

| | | |
|---|---|---|
| 09:08AM | 1 | HAPPENS IS THEY DO ALL OF THE WORK AND THEY DON'T GET TO COME. |
| 09:08AM | 2 | (LAUGHTER.) |
| 09:08AM | 3 | THE COURT:  SO, YES, PLEASE THANK HER FOR THAT. |
| 09:08AM | 4 | I KNEW THAT I WOULD NEED SOMETHING LIKE THAT AND IT |
| 09:08AM | 5 | OCCURRED TO ME I WAS SURE YOU WERE ALL DOING IT AND IT WOULD BE |
| 09:08AM | 6 | EASY FOR YOU TO SEND IT ON. |
| 09:08AM | 7 | WITH RESPECT TO COUNSEL, MR. SEEGER, IS HE HERE? |
| 09:08AM | 8 | MR. SEEGER PRESENTED TO THE JUDGES AT THE MDL CONFERENCE |
| 09:09AM | 9 | LAST WEEK.  I WAS INTERESTED, ONE, I'D LIKE TO KNOW DID THE |
| 09:09AM | 10 | PARTY HAPPEN YESTERDAY? |
| 09:09AM | 11 | MR. SEEGER:  I'M SORRY, YOUR HONOR?  MAY I APPROACH? |
| 09:09AM | 12 | THE COURT:  YOU MAY. |
| 09:09AM | 13 | MR. SEEGER:  THE PARTY, I'M SORRY? |
| 09:09AM | 14 | THE COURT:  YOU SAID AT THE MDL CONFERENCE THAT THE |
| 09:09AM | 15 | DAY BEFORE THESE FIRST APPEARANCES THAT THERE'S A PARTY. |
| 09:09AM | 16 | (LAUGHTER.) |
| 09:09AM | 17 | THE COURT:  MY LAW CLERKS WONDERED WHY WE WEREN'T |
| 09:09AM | 18 | INVITED. |
| 09:09AM | 19 | (LAUGHTER.) |
| 09:09AM | 20 | MR. SEEGER:  WELL, I PROMISE NOT TO EVER LEAVE YOU |
| 09:09AM | 21 | OUT AGAIN.  I DIDN'T GET IN UNTIL ABOUT 2:00 IN THE MORNING.  I |
| 09:09AM | 22 | HAD DELAY ISSUES, SO NO PARTY FOR ME. |
| 09:09AM | 23 | THE COURT:  NO PARTY FOR YOU.  BUT ONE DID OCCUR? |
| 09:09AM | 24 | MR. SEEGER:  I DON'T THINK SO.  THERE MIGHT HAVE |
| 09:09AM | 25 | BEEN A DINNER OR TWO, BUT GOING FORWARD WE'LL WORK WITH THE |

09:09AM  1    DEFENDANTS ON SETTING UP PARTIES.

09:09AM  2         (LAUGHTER.)

09:09AM  3            THE COURT:  THE OTHER THING, THOUGH, THAT I FOUND

09:09AM  4    INTERESTING IS THAT YOU HAVE ALL TAKEN THIS APPROACH OF GIVING

09:09AM  5    US THIS SLATE.

09:09AM  6         NOW, THE FIRST TIME I HAD AN MDL IT WAS WITHIN ABOUT A

09:09AM  7    YEAR OF BEING CONFIRMED AS A FEDERAL JUDGE.  AND WHEN I ASKED

09:10AM  8    MY COLLEAGUES, YOU KNOW, WHAT ARE YOUR THOUGHTS ON APPOINTING,

09:10AM  9    THEY SAID, OH, DON'T WORRY, EVERYBODY WILL FIGURE IT OUT AMONG

09:10AM 10    THEMSELVES AND IT'S USUALLY A GOOD SLATE.

09:10AM 11         WHEN I TALKED TO MY COLLEAGUES THIS TIME, THEY SAID, YEAH,

09:10AM 12    THEY DO IT AND NO ONE LIKES IT.

09:10AM 13         SO WE, AS JUDGES, DON'T LIKE IT, AND I'M NOT GOING TO DO

09:10AM 14    IT.  I HAVE A LOT TO TALK TO YOU ABOUT, BUT I THINK, YOU KNOW,

09:10AM 15    IF WE'RE EVER GOING TO MIX THINGS UP, WE NEED PEOPLE TO NOT

09:10AM 16    GIVE US SLATES SO MUCH.

09:10AM 17         SO YOU MAY WANT TO THINK ABOUT IT.  MAYBE I'M THE ONLY

09:10AM 18    JUDGE WHO THINKS THAT, BUT I CAN TELL YOU I WASN'T.  BUT MAYBE

09:10AM 19    SOME OTHER JUDGES LIKE IT.

09:10AM 20         SO LET'S START WITH YOU, MR. SEEGER.  WHY DON'T YOU COME

09:10AM 21    BACK TO THE MIC.

09:10AM 22         ONE OF THE THINGS THAT I'M INTERESTED IN, AND I'VE READ

09:10AM 23    ALL OF YOUR BIOGRAPHIES, I'VE READ THEM BEFORE I WENT TO THE

09:11AM 24    CONFERENCE, I READ THEM AFTER I WENT TO THE CONFERENCE.  WHEN

09:11AM 25    YOU WERE INTRODUCED AT THE CONFERENCE ITSELF, THE JUDGE WHO

09:11AM  1    INTRODUCED YOU SAID YOU NEED NO INTRODUCTION, AND I SAT THERE

09:11AM  2    AND I THOUGHT, WELL, I DON'T KNOW HIM.  AND I DON'T KNOW HIM

09:11AM  3    BECAUSE I HAVEN'T DONE A PRODUCTS CASE.  I'VE ONLY DONE

09:11AM  4    ANTITRUST, AIRPLANE CRASHES, AND INSURANCE, AMONG THE OTHER

09:11AM  5    THINGS THAT I DO HERE.

09:11AM  6         SO I DON'T KNOW YOU AT ALL.  I'D LIKE TO HEAR FROM YOU IN

09:11AM  7    TERMS OF -- AGAIN, I'VE ALREADY READ SO YOU DON'T HAVE TO

09:11AM  8    REPEAT WHAT IS IN YOUR FILING.  LET ME ASK ALL OF YOU TO THINK

09:11AM  9    ABOUT THE FOLLOWING:  I WOULD LIKE TO KNOW -- I THINK THAT WHAT

09:11AM  10   YOU HAVE RECOMMENDED IS PRETTY HEAVY IN TERMS OF A LEADERSHIP

09:12AM  11   STRUCTURE.  SO IF YOU WANT TO STICK WITH THAT, THEN I'D LIKE TO

09:12AM  12   UNDERSTAND BETTER YOUR JUSTIFICATION FOR STICKING WITH IT.

09:12AM  13   THAT'S ONE THING.

09:12AM  14        TWO, I'D LIKE TO UNDERSTAND HOW YOU AS A CO-LEAD, AND

09:12AM  15   FIRST I WANT TO GO THROUGH THE PEOPLE WHO HAVE ASKED TO BE

09:12AM  16   CO-LEADS, HOW YOU WOULD STRUCTURE, IF YOU WERE THE ONLY -- IF I

09:12AM  17   APPOINTED ONE, HOW WOULD YOU STRUCTURE THE PLAINTIFFS' LAW FIRM

09:12AM  18   AS YOU CLASSIFIED IT FOR THIS PARTICULAR CASE?

09:12AM  19        THE OTHER THING THAT I'M THINKING ABOUT DOING, AND WE'LL

09:12AM  20   GET TO THIS IN A WHILE, THIS IS, AS I THINK WE ALL RECOGNIZE

09:12AM  21   AND IT'S ONE OF THE REASONS THAT I TOOK IT BECAUSE, OF COURSE,

09:12AM  22   YOU ALL KNOW, WE GET NO EXTRA PAY FOR DOING ALL OF THIS EXTRA

09:12AM  23   WORK.

09:13AM  24        (LAUGHTER.)

09:13AM  25            THE COURT:  ONE, IT'S VERY IMPORTANT FOR OUR

09:13AM  1    CHILDREN, FOR OUR COUNTRY, BUT IT'S ALSO PRETTY NOVEL, AND

09:13AM  2    THERE IS SECTION 230 OUT THERE.

09:13AM  3         SO IT APPEARS TO ME THAT ONE OF THE WAYS THAT I HAVE

09:13AM  4    THOUGHT ABOUT MANAGING THIS IS TO DEAL UP-FRONT WITH THE MOTION

09:13AM  5    TO DISMISS WORK THAT IS GOING TO COME, TO DO THAT IN PHASES

09:13AM  6    STARTING WITH YOUR BEST CASE.

09:13AM  7         AND IF YOU SURVIVE THAT, THEN I'LL OPEN DISCOVERY, AND

09:13AM  8    WE'LL PARALLEL TRACK WITH ALL OF THE OTHER CAUSES OF ACTION

09:13AM  9    THAT MAY OR MAY NOT SEE THE LIGHT OF DAY OR MAY OR MAY NOT EVER

09:13AM  10   GET TO A JURY.

09:13AM  11        SO THAT'S WHAT I'M THINKING.

09:13AM  12        AND IN THAT REGARD IT WOULD SEEM TO ME THAT PERHAPS ONE OF

09:13AM  13   THOSE THINGS THAT I CAN DO IS CREATE A MUCH SMALLER STRUCTURE

09:14AM  14   IN THE BEGINNING AND THEN IF WE GET PAST -- IF YOU GET PAST THE

09:14AM  15   GATE AND DISCOVERY OPENS, WELL, THEN I CAN REVISIT IT AND WE

09:14AM  16   CAN EXPAND THE GROUP.

09:14AM  17        ALL RIGHT.  SO THOSE ARE SOME OF THE ISSUES THAT I'D LIKE

09:14AM  18   YOU TO TALK ABOUT, WHERE YOU SEE THIS LITIGATION GOING AND HOW

09:14AM  19   YOU THINK IT WILL SURVIVE IN LIGHT OF THE THINGS THAT THE

09:14AM  20   DEFENDANTS ARE SAYING.

09:14AM  21        ARE YOU USING LITIGATION FUNDING?

09:14AM  22        NOT EVERYBODY ADDRESSED THAT ISSUE HEAD ON, AND I WANT TO

09:14AM  23   KNOW EXPLICITLY WHETHER YOU USE IT OR INTEND TO USE IT IN THIS

09:14AM  24   CASE.

09:14AM  25        AND ALSO, YOUR THOUGHTS ON WHAT IF YOU NEVER GET DAMAGES

09:14AM 1    BUT ONLY INJUNCTIVE RELIEF?

09:14AM 2         OKAY.  LAY IT OUT THEN.

09:14AM 3              MR. SEEGER:  A LOT.  DO YOU WANT ME TO START AT THE

09:14AM 4    TOP, YOUR HONOR?

09:14AM 5              THE COURT:  OKAY.

09:14AM 6              MR. SEEGER:  OKAY.  SO I'D LIKE TO TAKE 30 SECONDS

09:14AM 7    ON THE -- WHAT WE -- THE MESSAGE THAT I THINK WE WERE TRYING TO

09:14AM 8    CONVEY BY SUBMITTING EXHIBITS TO OUR APPLICATION THAT ARE

09:15AM 9    IDENTICAL.  IT WAS OBVIOUSLY SUGGESTIVE OF A SLATE.  I DON'T

09:15AM 10   THINK WE WERE REALLY ATTEMPTING TO SAY TO YOUR HONOR, "HERE IS

09:15AM 11   OUR SLATE.  COULD YOU RUBBER STAMP IT?"

09:15AM 12        THE IDEA WAS TO TRY TO SEND A MESSAGE THAT WE HAVE BEEN

09:15AM 13   WORKING TOGETHER FOR MANY MONTHS NOW.  SO WE WERE ALL SEPARATE

09:15AM 14   GROUPS AT ONE POINT THAT KIND OF ORGANICALLY CAME TOGETHER, AND

09:15AM 15   THE GROUP HAS BEEN WORKING VERY WELL TOGETHER.  AND EVERY NAME

09:15AM 16   THAT WE HAVE -- EVERY PERSON THAT HAS SUPPORTED US AND THAT WE

09:15AM 17   HAVE SUPPORTED THAT JUST -- IT JUST, IT JUST TURNED OUT THAT,

09:15AM 18   YOU KNOW, THERE WAS A LOT OF CONSISTENCY.

09:15AM 19              THE COURT:  WELL, THERE WERE A COUPLE OF PEOPLE WHO

09:15AM 20   WERE NOT.

09:15AM 21              MR. SEEGER:  YEAH, THERE WERE A COUPLE, RIGHT.

09:15AM 22              THE COURT:  AND IS THAT BECAUSE YOU DIDN'T KNOW

09:15AM 23   THEM, BECAUSE YOU WEREN'T WORKING WITH THEM, OR BECAUSE YOU

09:15AM 24   DON'T LIKE THEM?

09:15AM 25              MR. SEEGER:  NO.  I LIKE EVERYBODY.  I CAN SAY FOR

09:15AM 1    MYSELF IT WOULD BE BECAUSE I DIDN'T KNOW THEM AND I HADN'T

09:15AM 2    WORKED DIRECTLY WITH THEM IN THIS CASE.  I MAY KNOW THEM FROM

09:15AM 3    OTHER CASES, BUT ON THIS ONE THAT WOULD BE IT.

09:15AM 4        SO, YEAH, TO THE EXTENT THAT WE LOOK LIKE WE WERE TRYING

09:16AM 5    TO PUT A SLATE IN FRONT YOU, WE WEREN'T REALLY NECESSARILY

09:16AM 6    TRYING TO DO IT.  WE KNEW THAT YOUR ORDERS SUGGESTED YOU WANTED

09:16AM 7    INDIVIDUAL APPLICATIONS.  WE WERE JUST TRYING TO SHOW YOU THAT

09:16AM 8    WE HAD BEEN WORKING VERY COHESIVELY TOGETHER.

09:16AM 9        THE STRUCTURE.  SO I THINK ON YOUR SECOND POINT THAT YOU

09:16AM 10   RAISED, YOU'RE ASKING, SO IF YOU APPOINT FEWER CO-LEADS OR EVEN

09:16AM 11   A SMALLER COMMITTEE, HOW WOULD YOU GO ABOUT ORGANIZING THE

09:16AM 12   CASE?

09:16AM 13       THE COURT:  IF I APPOINTED ONE -- IF I APPOINTED

09:16AM 14   YOU, HOW WOULD YOU STRUCTURE IT?

09:16AM 15       MR. SEEGER:  I OBVIOUSLY WOULD NOT BE ABLE TO DO THE

09:16AM 16   CASE ALONE.  AND EVERY PERSON ON THAT LIST THAT I HAVE BEEN

09:16AM 17   WORKING WITH FOR THE PAST SEVERAL MONTHS, INCLUDING PEOPLE FROM

09:16AM 18   MY FIRM, OBVIOUSLY IT'S NOT JUST ME, I HAVE TREMENDOUS SUPPORT

09:16AM 19   AT MY FIRM AND THERE ARE MANY PEOPLE WORKING ON THIS CASE, IT

09:16AM 20   WOULD PROBABLY LOOK LIKE -- IT WOULDN'T PROBABLY, IT WOULD LOOK

09:16AM 21   A LOT LIKE EXHIBIT A.

09:16AM 22       THE COURT:  I'M NOT -- EXHIBIT A TELLS ME NOTHING

09:16AM 23   OTHER THAN PEOPLE.

09:16AM 24       MR. SEEGER:  YES.

09:16AM 25       THE COURT:  I'M ASKING ABOUT A LITTLE BIT MORE THAN

```
09:16AM   1        THAT.
09:16AM   2                MR. SEEGER:  SO WHAT I WOULD -- HERE ARE MY THOUGHTS
09:16AM   3        ON IT, AND THIS IS VERY SIMILAR TO THE JUDGE WHO INTRODUCED ME
09:17AM   4        AT THE CONFERENCE.  WE HAD A CASE THAT WAS SIMILAR IN THE SENSE
09:17AM   5        THAT WE HAD A LOT OF DEFENDANTS.  AND IT WAS ONE OF THE
09:17AM   6        QUESTIONS THAT JUDGE KENNELLY ASKED US IN THE TRT, WHY DO I
09:17AM   7        NEED SO MANY LAWYERS?  WHY DO YOU HAVE SO MANY?  AND THE REASON
09:17AM   8        WHY WAS BECAUSE WE HAD SO MANY DEFENDANTS.  AND WHAT WE TEND TO
09:17AM   9        DO IN ORGANIZING THE CASES IS TURN PEOPLE INTO SPECIALISTS AS
09:17AM  10        TO CERTAIN DEFENDANTS.
09:17AM  11            BY DOING THAT, WHEN WE REPORT TO EACH OTHER AND WE HAVE
09:17AM  12        OUR WEEKLY DISCOVERY CALLS, LEADERSHIP CALLS, SCIENCE CALLS,
09:17AM  13        THERE'S A LOT OF CROSS-CHECKING AND OVERLAP.  EVERYBODY GETS TO
09:17AM  14        LEARN THE CASE FROM PEOPLE WHO ARE REALLY FOCUSSED ON IT.
09:17AM  15            WE THINK THAT JUST TENDS TO BE THE MOST EFFICIENT WAY TO
09:17AM  16        DO IT.
09:17AM  17            SO, FOR EXAMPLE, IF THERE WAS A PARTICULAR MOTION DEALING
09:17AM  18        WITH SNAPCHAT, YOU WOULD LIKELY HAVE THE LAWYER WHO IS MOST
09:17AM  19        FAMILIAR WITH THAT ISSUE AND THE LEGAL ISSUES AND THE FACTS
09:17AM  20        ARGUING IN FRONT OF YOU ON THAT.  AND THAT'S THE WAY THAT WE
09:17AM  21        WOULD DELEGATE.
09:17AM  22            NOW, THAT MAY NOT HAPPEN IN EVERY INSTANCE, BUT THAT'S
09:17AM  23        KIND OF THE WAY THAT I SEE THE CASE BEING ORGANIZED.
09:17AM  24            IF IT WERE ONE DEFENDANT, IT WOULD -- IT COULD POTENTIALLY
09:18AM  25        BE VERY DIFFERENT.  BUT IN A CASE LIKE THIS WHERE THE RESOURCES
```

09:18AM 1    ARE GOING TO BE REQUIRED OF THE FIRMS THAT ARE HERE, NOT JUST

09:18AM 2    THE BODIES BUT ALSO THE FINANCIAL RESOURCES, AND IT'S LIKELY TO

09:18AM 3    BE A VERY EXPENSIVE CASE, AS THESE MDL'S TEND TO BE.

09:18AM 4        SO WE WOULD NEED TO RECRUIT PEOPLE WHO WOULD HELP CARRY

09:18AM 5    THE LOAD ON ALL OF THOSE ISSUES.

09:18AM 6        ON THE -- I'LL GO BACK TO ANY ISSUE YOU WANT, YOUR HONOR.

09:18AM 7    I JUST WANT TO HIT ALL OF THESE.

09:18AM 8        ON THE MOTION TO DISMISS, ON YOUR POINT ABOUT THAT, THE

09:18AM 9    ONLY THING THAT IS IMPORTANT TO US IS THAT WE HAVE AN

09:18AM 10   OPPORTUNITY TO MEET AND CONFER WITH THE DEFENDANTS ON THE IDEA

09:18AM 11   OF A MASTER COMPLAINT BECAUSE OTHERWISE WHAT WILL HAPPEN, YES,

09:18AM 12   THEY WILL --

09:18AM 13           THE COURT:  I'M GOING TO ORDER A MASTER COMPLAINT.

09:18AM 14           MR. SEEGER:  I'M SORRY, YOUR HONOR?

09:18AM 15           THE COURT:  I'M GOING TO ORDER A MASTER COMPLAINT.

09:18AM 16   WE'RE NOT GOING TO HAVE A LOT OF DEBATE ABOUT THAT.

09:18AM 17           MR. SEEGER:  OKAY, GOOD.  WELL, THAT'S GOING TO BE

09:18AM 18   VERY HELPFUL.

09:18AM 19           THE COURT:  AND I HAD SOME QUESTIONS ABOUT WHAT THAT

09:18AM 20   WILL LOOK LIKE, BUT ONE WILL BE ORDERED.

09:18AM 21           MR. SEEGER:  RIGHT.  AND IT WILL BE VERY HELPFUL

09:18AM 22   BECAUSE I THINK THAT WHAT YOU'LL WIND UP WITH THEN IS A LIST OF

09:19AM 23   THE CLAIMS THAT THE PLAINTIFFS REALLY WANT TO PURSUE.  RIGHT

09:19AM 24   NOW THERE ARE A LOT OF COMPLAINTS OUT THERE.  SOME OF THOSE

09:19AM 25   CLAIMS MAY GO AWAY JUST THROUGH THE PROCESS.

09:19AM 1        THE COURT:  WELL, THERE'S SOME OF THESE WITH OVER 20

09:19AM 2    CAUSES OF ACTION.

09:19AM 3        MR. SEEGER:  YES, EXACTLY.

09:19AM 4      WE WOULD LIKE TO PARE THAT DOWN.  WE WOULD LIKE TO BOIL IT

09:19AM 5    DOWN.  I THINK WE CAN DO THAT IN THE PROCESS OF CREATING A

09:19AM 6    MASTER COMPLAINT.  LIKELY YOU WOULD WANT A MASTER ANSWER.

09:19AM 7      IF PEOPLE WANT TO DEVIATE FROM THE MASTER COMPLAINT, YOU

09:19AM 8    CAN CREATE A SHORT FORM COMPLAINT WITH ALMOST CHECK THE BOX,

09:19AM 9    YOU KNOW, SETUP, WHICH WE HAVE DONE IN PAST CASES, THAT WILL

09:19AM 10   SIMPLIFY THAT PROCESS.  I THINK IT WILL SIMPLIFY THEIR MOTION

09:19AM 11   TO DISMISS AND OUR OPPOSITION TO IT AND THE COURT'S DECISIONS.

09:19AM 12     ON LITIGATION FUNDING, I CAN REPRESENT TO YOU WHY IT

09:19AM 13   DOESN'T HAPPEN WITH LITIGATION FUNDING.

09:19AM 14     I'M SORRY, YOUR HONOR.  I MIGHT HAVE MISSED ONE OF YOUR

09:19AM 15   QUESTIONS.  I THINK YOU WERE ASKING ABOUT --

09:19AM 16        THE COURT:  -- RELIEF.

09:19AM 17        MR. SEEGER:  OH, THE RELIEF.

09:19AM 18        THE COURT:  I WANT TO UNDERSTAND HOW YOU THINK YOU

09:20AM 19   GET DAMAGES FOR THESE INDIVIDUALS IN THIS KIND OF A CASE.

09:20AM 20        MR. SEEGER:  IF WE WERE TO PREVAIL ON THE PRODUCT

09:20AM 21   LIABILITY CLAIMS AND LET'S SAY -- I'LL JUST SAY -- I'LL TAKE A

09:20AM 22   HYPOTHETICAL CASE OF A TEENAGE SUICIDE, THERE WOULD BE -- THERE

09:20AM 23   WOULD BE DAMAGES AWARDED ON THE PRODUCT LIABILITY CLAIMS.  WE

09:20AM 24   OBVIOUSLY WANT THEM TO CHANGE THEIR PRACTICES, THAT'S A BIG

09:20AM 25   PART OF THIS AS WELL.

09:20AM 1          THE COURT:  THE WAY THE COMPLAINTS ARE CURRENTLY

09:20AM 2    STRUCTURED, THIS COULD IMPLICATE EVERY SINGLE PERSON.  I DON'T

09:20AM 3    UNDERSTAND HOW THAT IS DOABLE.

09:20AM 4          MR. SEEGER:  UNDERSTOOD, YOUR HONOR.

09:20AM 5       I THINK THAT ONCE A COMMITTEE IS FORMED AND WE BEGIN TO

09:20AM 6    WORK ON SOME OF THESE PROJECTS, I THINK THAT WE WOULD BE ABLE

09:20AM 7    TO REPORT ON A VERY CONSISTENT BASIS TO YOU THAT WE WOULD

09:20AM 8    PROBABLY BE ABLE TO NARROW THIS CASE DOWN A LITTLE BIT MORE

09:21AM 9    THAN IT APPEARS TO BE RIGHT NOW.

09:21AM 10      I DON'T WANT TO GET OUT AHEAD OF MY SKIS, AND I DON'T WANT

09:21AM 11   TO MAKE REPRESENTATIONS FOR PEOPLE SITTING IN THE COURTROOM

09:21AM 12   THAT MAY DISAGREE WITH ME.

09:21AM 13         THE COURT:  IF THEY DISAGREE WITH YOU, I WANT TO

09:21AM 14   HEAR IT.  THAT'S WHY I'M ASKING YOU THIS QUESTION.  YOU'RE

09:21AM 15   UNFORTUNATELY THE FIRST ONE, BUT YOU GOT TO PRESENT TO ALL OF

09:21AM 16   THE JUDGES, SO I FIGURED THAT WORKS.

09:21AM 17         MR. SEEGER:  I WAS ASKED.

09:21AM 18         THE COURT:  YOU COULD HAVE DECLINED.  THAT'S OKAY.

09:21AM 19   IT'S NOT BAD.  IT'S JUST THAT'S WHY YOU'RE FIRST.  AND THEY'RE

09:21AM 20   THINKING ABOUT IT WHILE YOU'RE UP HERE.

09:21AM 21         MR. SEEGER:  YES, YES, I KNOW.  I WISH I WAS THEM.

09:21AM 22      (LAUGHTER.)

09:21AM 23         THE COURT:  IT'S OKAY.  THAT'S WHY, YOU KNOW, I'M

09:21AM 24   THINKING ABOUT ALL OF YOU, AND THAT'S WHY I WOULD LIKE YOUR

09:21AM 25   THOUGHTS, AND THAT'S WHY I'M ASKING THESE QUESTIONS.

| | | |
|---|---|---|
| 09:21AM | 1 | MR. SEEGER:  SO I WOULD JUST SAY ON THE LAST POINT, |
| 09:21AM | 2 | YOUR HONOR, YOU KNOW, WE HAD BEGUN TO DISCUSS SOME OF THESE |
| 09:21AM | 3 | THINGS INFORMALLY WHEN WE WERE WORKING SORT OF LOOSELY |
| 09:21AM | 4 | TOGETHER.  THAT IS GOING TO INTENSIFY GOING FORWARD NO MATTER |
| 09:22AM | 5 | WHO YOU SELECT, AND I DO THINK THAT THE LAST ISSUE THAT YOU |
| 09:22AM | 6 | RAISED ABOUT RELIEF IS GOING TO BE A VERY BIG ISSUE FOR US TO |
| 09:22AM | 7 | DISCUSS AND DECIDE ON. |
| 09:22AM | 8 | IT WILL -- ULTIMATELY THOSE DECISIONS WILL GET BUILT INTO |
| 09:22AM | 9 | THE MASTER COMPLAINT OBVIOUSLY, AND THAT'S WHY -- AND YOU'VE |
| 09:22AM | 10 | ALREADY ORDERED THAT'S GOING TO HAPPEN, AND THAT'S WHY IT'S |
| 09:22AM | 11 | SUCH AN IMPORTANT DOCUMENT FOR THIS CASE. |
| 09:22AM | 12 | THE COURT:  OKAY.  ANYTHING ELSE YOU WANT ME TO |
| 09:22AM | 13 | CONSIDER? |
| 09:22AM | 14 | MR. SEEGER:  NO.  AND I'M GOING TO BE HERE THE WHOLE |
| 09:22AM | 15 | TIME IF YOU THINK OF ANYTHING YOU WANT TO ASK ME, YOUR HONOR. |
| 09:22AM | 16 | OBVIOUSLY, I'M GOING TO -- |
| 09:22AM | 17 | THE COURT:  SO THIS IS THE OTHER THING I'M GOING TO |
| 09:22AM | 18 | HAVE YOU DO. |
| 09:22AM | 19 | MR. GARCIA -- YOU'RE GOING TO COME ON OVER TO THIS PODIUM. |
| 09:22AM | 20 | MR. SEEGER:  I AM? |
| 09:22AM | 21 | THE COURT:  YES, GO ON OVER TO THAT PODIUM. |
| 09:22AM | 22 | MR. GARCIA IS GOING TO HAND YOU A PIECE OF PAPER. |
| 09:22AM | 23 | MR. SEEGER:  OKAY. |
| 09:22AM | 24 | THE COURT:  THIS IS A CLOSED BALLOT, STAND RIGHT |
| 09:22AM | 25 | THERE, DON'T LEAVE.  I WANT YOU TO FILL THAT FORM OUT AND HAND |

09:22AM 1    IT BACK TO HIM.

09:22AM 2              MR. SEEGER:  OKAY.

09:22AM 3              THE COURT:  AND WHILE HE'S DOING THAT, LET'S HAVE

09:22AM 4    MS. HAZAM UP NEXT.

09:22AM 5              MS. HAZAM:  GOOD MORNING, YOUR HONOR.

09:23AM 6         LEXI HAZAM OF LIEFF CABRASER.

09:23AM 7              THE COURT:  GOOD MORNING.  SAME QUESTIONS.

09:23AM 8              MS. HAZAM:  YES, YOUR HONOR.

09:23AM 9         FIRST, ADDRESSING YOUR QUESTION ABOUT LEADERSHIP

09:23AM 10   STRUCTURE, I WOULD SAY THAT GIVEN THE GROUNDBREAKING NATURE OF

09:23AM 11   THIS MDL, AS YOUR HONOR HAS NOTED, AND ITS BROAD SCOPE, IT WILL

09:23AM 12   ULTIMATELY CALL FOR ROBUST LEADERSHIP WITH DIVERSE SKILLS AND

09:23AM 13   FORMIDABLE RESOURCES, AND THAT'S PARTICULARLY THE CASE GIVEN

09:23AM 14   THE NUMBER OF DEFENDANTS AND THE VARIETY OF CLAIMS AND INJURIES

09:23AM 15   AT ISSUE.

09:23AM 16        YOUR HONOR HAS POSED THE QUESTION OF WHETHER SUCH A LARGER

09:23AM 17   STRUCTURE IS NECESSARY IMMEDIATELY, PARTICULARLY IF WE WERE TO

09:23AM 18   PROCEED TO MOTIONS.  A FEW COMMENTS ON THAT.

09:23AM 19        FIRST OF ALL, I DO BELIEVE THAT THERE ARE ASPECTS OF WHAT

09:23AM 20   YOU MIGHT CALL DISCOVERY OR MIGHT MORE FITTINGLY CALL FIRST DAY

09:23AM 21   ORDERS THAT DO REQUIRE ATTENTION IMMEDIATELY EVEN IF WE WERE TO

09:23AM 22   PROCEED QUICKLY TO MOTION PRACTICE, AND THOSE HAVE TO DO WITH

09:23AM 23   MATTERS OF PRESERVATION OF ESI IN PARTICULAR, WHICH WILL BE

09:24AM 24   QUITE COMPLEX AND QUITE BROAD IN SCOPE POTENTIALLY IN THIS

09:24AM 25   LITIGATION AND CANNOT WAIT.

09:24AM  1      WE DON'T WANT TO END UP HAVING TO LITIGATE PROBLEMS WITH

09:24AM  2  THAT AFTER THE FACT.  WE WANT TO SET IT UP PROPERLY FROM THE

09:24AM  3  OUTSET, AND I THINK OTHER FIRST DAY ORDERS LIKE PROTECTIVE

09:24AM  4  ORDERS WOULD ALSO BE APPROPRIATE HERE.

09:24AM  5      SO I DO THINK THAT THERE NEEDS TO BE A TEAM TASKED WITH

09:24AM  6  TAKING THOSE CHALLENGES ON EARLY IN THIS LITIGATION.

09:24AM  7      I ALSO THINK THAT THERE ARE CONSIDERATIONS OF TIMING WITH

09:24AM  8  REGARDS TO MOTIONS TO DISMISS THAT THE COURT SHOULD TAKE INTO

09:24AM  9  ACCOUNT INCLUDING THE PENDENCY OF THE GONZALEZ CASE BEFORE THE

09:24AM 10  UNITED STATES SUPREME COURT WHICH REACHES ISSUES OF THE SCOPE

09:24AM 11  OF 230 MAY ALSO HAVE A NEXUS TO QUESTIONS IN THE

09:24AM 12  FIRST AMENDMENT.  THESE ARE SOME OF THE ISSUES THAT THE

09:24AM 13  DEFENDANTS HAVE ARGUED SHOULD BE DEALT WITH IMMEDIATELY IN

09:24AM 14  MOTION PRACTICE AND HAVE SAID ARE CROSS-CUTTING ISSUES.

09:25AM 15      I THINK PLAINTIFFS WOULD SUBMIT THAT THEY'RE NOT AS

09:25AM 16  CROSS-CUTTING AS DEFENDANTS BELIEVE, THAT THEY MAY VARY

09:25AM 17  SOMEWHAT WITH THE CLAIMS AND THE FACTS OF THE CASE, BUT WE

09:25AM 18  WOULD ALSO SUBMIT THAT THEY ARE LIKELY TO BE SHAVED

09:25AM 19  SIGNIFICANTLY BY THE SUPREME COURT'S DECISION SUCH THAT IF

09:25AM 20  MOTION PRACTICE DOES SUCCEED IMMEDIATELY, WHICH OF COURSE WE

09:25AM 21  ALL CAN DO AND ARE PREPARED TO DO IF THAT'S THE COURT'S

09:25AM 22  PREFERENCE, IT MAY RESULT IN AMENDMENTS TO PLEADINGS AND

09:25AM 23  BRIEFING BEING REDONE AND EVEN UNDER THE SCHEDULE THAT THE

09:25AM 24  DEFENDANTS PROPOSE, A HEARING ON THOSE MOTIONS MAY NOT OCCUR

09:25AM 25  UNTIL THE GONZALEZ DECISION HAS COME DOWN OR IS IMMINENT.

09:25AM 1          SO THAT'S AN ISSUE WITH REGARDS TO SCHEDULING.

09:25AM 2          BUT REGARDLESS, I THINK WE NEED TO WORK ON THOSE ISSUES OF

09:25AM 3    PRESERVATION AND FIRST DAY ORDERS IN THE MEANTIME.

09:25AM 4          WITH REGARDS TO HOW ONE WOULD STRUCTURE LEADERSHIP IN THIS

09:25AM 5    CASE, I THINK THERE'S A QUESTION OF WHETHER YOU HAVE TRACKING

09:25AM 6    FROM THE GET-GO AT THE SORT OF TOP LEVEL.  DO YOU TRACK INTO

09:26AM 7    DEFENDANTS' AND/OR INJURIES?

09:26AM 8          MY OWN PREFERENCE AND RECOMMENDATION WOULD BE TO FIRST

09:26AM 9    TRACK INTO COMMITTEES THAT DEAL WITH SUBJECT AREAS OF THE CASE

09:26AM 10   AND PHASES OF THE CASE LIKE DISCOVERY, PLEADINGS, LAW AND

09:26AM 11   BRIEFING, SETTLEMENT.  BUT WITHIN THOSE KINDS OF COMMITTEES, I

09:26AM 12   THINK YOU ABSOLUTELY WILL NEED PEOPLE WHO ARE TASKED WITH

09:26AM 13   PARTICULAR DEFENDANTS AND PARTICULAR INJURIES AS MR. SEEGER

09:26AM 14   SUGGESTED.

09:26AM 15         THE COURT:  ONE OF THE WAYS THAT AT LEAST I

09:26AM 16   UNDERSTAND IT FROM THE COMPLAINTS THAT HAVE BEEN FILED THAT

09:26AM 17   YOU'RE SEEKING TO AVOID THE IMMUNITIES THAT COME WITH

09:26AM 18   SECTION 230 IS TO MAKE ALLEGATIONS OF THE ACTUAL ALGORITHMS

09:26AM 19   THAT ARE BEING USED TO CREATE THE ADDICTIVE BEHAVIORS.

09:26AM 20         AM I WRONG?

09:26AM 21         MS. HAZAM:  NO, YOU'RE NOT, YOUR HONOR.  THERE ARE

09:26AM 22   ALLEGATIONS IN MANY COMPLAINTS OF DEFECTIVE DESIGNS OF THESE

09:27AM 23   PLATFORMS, INCLUDING THEIR ALGORITHMS.

09:27AM 24         THE ALLEGATIONS ARE NOT LIMITED TO THE ALGORITHMS.  THEY

09:27AM 25   ALSO TOUCH UPON OTHER ASPECTS OF DESIGN SUCH AS LACK OF

09:27AM 1    SUFFICIENT PARENTAL CONTROLS AND WHAT WE CALL AGE GATING,

09:27AM 2    ESSENTIALLY AGE VERIFICATION SYSTEMS, ALSO DESIGNS THAT CONNECT

09:27AM 3    CHILDREN OR MINORS TO ADULTS INCLUDING PREDATORY ADULTS THAT

09:27AM 4    MAY HAVE CONSEQUENCES WITH REGARDS TO CHILD SEXUAL ABUSE.

09:27AM 5         THE COURT:  IT WOULD SEEM TO ME IF THAT'S THE CASE,

09:27AM 6    THEN THE ALLEGATIONS AS TO THE INDIVIDUAL DEFENDANTS HAVE TO BE

09:27AM 7    DIFFERENT.

09:27AM 8         MS. HAZAM:  THEY ARE TO SOME EXTENT.  THERE ARE

09:27AM 9    COMMONALITIES OF DESIGN.  IN OTHER WORDS, MANY, IF NOT ALL OF

09:27AM 10   THESE PLATFORMS, ARE SUSCEPTIBLE TO PLAINTIFFS' ALLEGATIONS

09:27AM 11   REGARDING DEFECTIVELY DESIGNED ALGORITHMS.

09:27AM 12        THE ALGORITHMS USED ARE PROPRIETARY AND PRESUMABLY

09:27AM 13   DIFFERENT IN VARIOUS WAYS, BUT THERE IS A COMMONALITY THERE

09:27AM 14   THAT WOULD, I THINK, INVOLVE CROSS-POLLINATION OF DISCOVERY

09:28AM 15   SUCH THAT YOU WANT A DISCOVERY COMMITTEE THAT HAS PEOPLE WITHIN

09:28AM 16   IT LOOKING AT EACH DEFENDANT BUT ALSO TALKING TO EACH OTHER

09:28AM 17   ABOUT THE WAYS THAT THOSE ALGORITHMS WORK ACROSS DEFENDANTS.

09:28AM 18        ALSO --

09:28AM 19        THE COURT:  HOW CAN WE DO THAT WITHOUT IMPACTING THE

09:28AM 20   DEFENDANTS' ABILITY TO HAVE THEIR PROPRIETARY INFORMATION NOT

09:28AM 21   SHARED ACROSS DEFENDANTS?

09:28AM 22        MS. HAZAM:  IT'S A VERY GOOD QUESTION, YOUR HONOR,

09:28AM 23   AND I THINK IT GOES TO THOSE FIRST DAY ORDERS.

09:28AM 24        IN THE FIRST PLACE, WE HAVE TO TALK ABOUT PROTECTIVE

09:28AM 25   ORDERS NOT ONLY IN THE TRADITIONAL SENSE OF IF YOU HAD A

```
09:28AM   1     DEFENDANT -- ONE DEFENDANT IN YOUR CASE AND YOU WANTED TO
09:28AM   2     PROTECT ITS TRADE SECRETS FROM PUBLICATION TO THE WIDER PUBLIC
09:28AM   3     AND THE SAME FOR YOUR CLIENT SENSITIVE INFORMATION, THERE MAY
09:28AM   4     BE CONCERNS BETWEEN DEFENDANTS IN THIS CASE AS WELL, AND I
09:28AM   5     THINK THOSE SHOULD ALSO BE DEALT WITH UP-FRONT IN DISCUSSIONS
09:28AM   6     OF PROTECTIVE ORDERS.
09:29AM   7              THE COURT:  HOW MUCH -- TO WHAT EXTENT DO YOU HAVE
09:29AM   8     WHISTLEBLOWER INFORMATION THAT HAS GIVEN YOU MORE INSIGHTS
09:29AM   9     ABOUT ONE DEFENDANT VERSUS ANOTHER?
09:29AM  10              MS. HAZAM:  I THINK THAT WE DO HAVE MORE INSIGHT
09:29AM  11     THROUGH WHISTLEBLOWERS FOR SOME OF DEFENDANTS, PARTICULARLY
09:29AM  12     META WHICH ALSO OWNS INSTAGRAM, THROUGH FRANCES HAUGEN'S
09:29AM  13     ALLEGATIONS, AND MANY OF WHICH HAVE BEEN MADE PUBLIC, CERTAIN
09:29AM  14     DOCUMENTS HAVE BEEN MADE PUBLIC.
09:29AM  15         THERE MAY BE OTHER WHISTLEBLOWERS.  I THINK SHE IS THE
09:29AM  16     MOST PROMINENT ONE TO DATE, AND, THEREFORE, THE MOST
09:29AM  17     INFORMATION EXISTS AS TO THAT DEFENDANT.  THERE MAY BE OTHERS
09:29AM  18     AND OTHERS MAY COME FORWARD.
09:29AM  19              THE COURT:  OKAY.  OTHER THOUGHTS?
09:29AM  20              MS. HAZAM:  SURE.  YOUR HONOR, JUST TO ADDRESS THE
09:29AM  21     OTHER TWO POINTS YOU RAISED.
09:29AM  22         MY FIRM DOES NOT USE LITIGATION FUNDING IN THIS CASE OR
09:29AM  23     ANY CASE.
09:29AM  24         AND ALSO YOUR QUESTION WITH REGARDS TO DAMAGES AND
09:29AM  25     INJUNCTIVE RELIEF, I WOULD ECHO MR. SEEGER IN SAYING THAT THE
```

09:30AM  1     PLAINTIFFS SEEK BOTH IN THIS LITIGATION.  THERE ARE CASES

09:30AM  2     INVOLVING VERY SEVERE PHYSICAL INJURIES SUCH AS THERE ARE

09:30AM  3     EATING DISORDERS, ATTEMPTED SUICIDES THAT RESULT IN

09:30AM  4     HOSPITALIZATIONS.  THOSE ARE THE KINDS OF CLAIMS FOR WHICH

09:30AM  5     PLAINTIFFS IN MASS TORT CASES TYPICALLY SEEK COMPENSATORY

09:30AM  6     DAMAGES SO THEY ARE AT ISSUE, BUT WE LIKEWISE DO BELIEVE THAT

09:30AM  7     CHANGES IN PRACTICES WOULD BE AN APPROPRIATE TYPE OF RELIEF IN

09:30AM  8     THIS CASE AND ONE THAT WE HOPE TO WORK ON.

09:30AM  9              THE COURT:  OKAY.  THANK YOU.

09:30AM  10             MS. HAZAM:  THANK YOU, YOUR HONOR.

09:30AM  11             THE COURT:  IF YOU'LL COME OVER HERE.

09:30AM  12        MR. GARCIA WILL GIVE YOU THAT SLIP, AND HAND IT UP TO ME.

09:30AM  13        ALL RIGHT.  NEXT, MS. JEFFCOTT.

09:30AM  14             MS. JEFFCOTT:  GOOD MORNING, YOUR HONOR.

09:30AM  15        EMILY JEFFCOTT OF MORGAN & MORGAN.

09:30AM  16        TO ADDRESS YOUR QUESTIONS AND BEGINNING WITH WHY DO WE

09:30AM  17     NEED A LEADERSHIP STRUCTURE THAT IS ADMITTEDLY ON THE LARGER

09:31AM  18     SIDE?

09:31AM  19        AND I THINK STEPPING BACK AND LOOKING AT WHAT HAS BEEN

09:31AM  20     ENCOMPASSED BY THIS MDL, AT THIS POINT WE HAVE AT LEAST FIVE

09:31AM  21     PRODUCTS AT ISSUE:  FACEBOOK, INSTAGRAM, TIKTOK, SNAP, GOOGLE

09:31AM  22     AND POTENTIALLY OTHERS BASED ON HOW THE MDL HAS DESCRIBED THIS

09:31AM  23     LITIGATION.

09:31AM  24        AND EACH ONE OF THOSE PRODUCTS IMPLICATES A NUMBER OF

09:31AM  25     DEFENDANTS.

09:31AM 1          AND WE KNOW JUST BASED ON THE PLEADINGS THAT HAVE BEEN

09:31AM 2     FILED IN THIS CASE THAT THERE ARE UNDERLYING FACTUAL

09:31AM 3     ALLEGATIONS AND SCENARIOS THAT VARY FROM PLAINTIFF TO

09:31AM 4     PLAINTIFF.

09:31AM 5          AND SO BASED ON THE BREADTH AND SCOPE OF THIS LITIGATION,

09:31AM 6     WE BELIEVE THAT A LARGER LEADERSHIP STRUCTURE IS WARRANTED.

09:31AM 7          AND IN PARTICULAR, WHEN IT COMES TO CO-LEAD STRUCTURE,

09:31AM 8     WHEN IT COMES TO A LITIGATION THAT IS AS BROAD AS THIS, WE KNOW

09:31AM 9     THAT FOUR CO-LEADS WORKED.  I POINT YOUR HONOR TO THE

09:32AM 10    JUUL LITIGATION.  THERE FOUR CO-LEADS WERE APPOINTED BY

09:32AM 11    JUDGE ORRICK, AND IN THAT CASE THE CO-LEADS WERE ABLE TO

09:32AM 12    MANAGEABLY BREAK DOWN THE RESPONSIBILITIES.

09:32AM 13              THE COURT:  SO HOW WOULD YOU BREAK THEM DOWN HERE?

09:32AM 14              MS. JEFFCOTT:  YOUR HONOR, I WOULD SUBMIT THAT

09:32AM 15    SIMILAR TO WHAT MR. SEEGER PROPOSED TO THE COURT, THAT ONE WAY

09:32AM 16    TO BREAK THIS DOWN IS ON A DEFENDANT-BY-DEFENDANT BASIS.

09:32AM 17         ANOTHER WAY TO BREAK THIS DOWN IS ON THE TYPE OF CLAIM

09:32AM 18    ALLEGED, WHETHER IT'S FOUNDED ON SEXUALLY EXPLICIT MATERIAL,

09:32AM 19    WHETHER IT'S BASED ON A SPECIFIC DEFENDANT.  THERE ARE A NUMBER

09:32AM 20    OF DIFFERENT WAYS THAT ONCE LEADERSHIP IS APPOINTED, THAT THE

09:32AM 21    PARTIES COULD ASSESS WHAT IS THE BEST WAY TO BREAK UP

09:32AM 22    LEADERSHIP?

09:32AM 23         ANOTHER OPTION AND ONE THAT WAS PURSUED IN THE JUUL MDL IS

09:32AM 24    BASED UPON THE SPECIFIC EXPERTISE OF THE CO-LEAD.  SOME

09:33AM 25    CO-LEADS HAVE MORE EXPERIENCE IN THE SCIENCE AND TECHNICAL

09:33AM  1    REALM WHILE OTHERS IN THE LAW AND BRIEFING.  I THINK THAT IS

09:33AM  2    ONE WAY THAT WE COULD ALSO DIVIDE UP RESPONSIBILITIES HERE.

09:33AM  3         NOW, YOUR HONOR, FOR YOUR SECOND POINT, YOU KNOW, WHY

09:33AM  4    NOT -- WHY START WITH FOUR CO-LEADS AS OPPOSED TO A SMALLER

09:33AM  5    LEADERSHIP STRUCTURE?

09:33AM  6         AND, YOUR HONOR, I WOULD POINT TO THE FACT THAT AS

09:33AM  7    MS. HAZAM EXPLAINED, THAT IN ADDITION TO, IF YOUR HONOR WANTS

09:33AM  8    TO PROCEED WITH MOTIONS TO DISMISS, THERE IS STILL THE

09:33AM  9    PRESERVATION WORK IN THOSE FIRST DAY GATING ORDERS THAT WILL

09:33AM 10    TAKE TIME TO PUT INTO PLACE AND ESSENTIALLY THE LEG WORK THAT

09:33AM 11    WILL BE REQUIRED NOT ONLY TO MAKE SURE THAT WE ARE PROTECTING

09:33AM 12    THE DEFENDANT BY DEFENDANT -- DEFENDANT TECHNICAL WORK PRODUCT,

09:33AM 13    BUT ALSO ENSURING THAT WE HAVE DEVELOPED THE PROTOCOLS FOR ESI

09:33AM 14    AND FOR TARP TO MAKE SURE THAT WE ARE SETTING OURSELVES UP FOR

09:33AM 15    A SECTION OF DISCOVERY.

09:34AM 16         AND THE NORTHERN DISTRICT OF CALIFORNIA ALREADY HAS GATING

09:34AM 17    ORDERS THAT WOULD HELP US FACILITATE AND GUIDE US THROUGH THAT

09:34AM 18    PROCESS, BUT THAT PROCESS IS GOING TO TAKE TIME AND A LOT OF

09:34AM 19    WORK.

09:34AM 20         FURTHERMORE, YOUR HONOR HAS ALREADY ORDERED A MASTER

09:34AM 21    COMPLAINT, AND THAT PROCESS TO DEVELOP A MASTER COMPLAINT WILL

09:34AM 22    ALSO TAKE TIME BECAUSE OF THE BREADTH OF THIS LITIGATION AND

09:34AM 23    THE NUMBER AND THE DIVERSE CLAIMS THAT HAVE BEEN KIND OF

09:34AM 24    SUBSUMED BEFORE YOUR HONOR.

09:34AM 25         NOW, YOUR NEXT POINT OF HOW WOULD YOU STRUCTURE THE

09:34AM 1    LEADERSHIP?  IN GOING BACK TO THAT FOUR CO-LEAD STRUCTURE, HOW

09:34AM 2    I WOULD ENVISION IT, YOUR HONOR, IS DIVIDING IT UP OF SPECIFIC

09:34AM 3    CO-LEADS, HAVING OVERSIGHT OVER UNDERLYING COMMITTEES.

09:34AM 4        AND I THINK THAT'S IMPORTANT TO ENSURE THAT THERE IS

09:34AM 5    EFFICIENCY AND EFFECTIVENESS WITH RESPECT TO THE COMMITTEE WORK

09:34AM 6    SO THERE'S NOT NECESSARILY DUPLICATIVE EFFORTS GOING ON ACROSS

09:34AM 7    COMMITTEES.

09:34AM 8        AND WE'VE SEEN THAT IN JUUL AND IN THE CPAP LITIGATION AND

09:34AM 9    OTHER LITIGATIONS WHERE THERE'S THIS FOUR CO-LEAD STRUCTURE

09:35AM 10   THAT ALLOWS THE CO-LEADS TO HAVE THE TIME TO BE ABLE TO PROVIDE

09:35AM 11   THAT NECESSARY OVERSIGHT ON THE COMMITTEES.

09:35AM 12            THE COURT:  SO IF YOU ALREADY ARE CO-CHAIRING ONE OF

09:35AM 13   THOSE SUBCOMMITTEES, HOW COULD YOU HAVE THE TIME TO CO-LEAD

09:35AM 14   THIS MDL?

09:35AM 15            MS. JEFFCOTT:  YOUR HONOR, RESPECTFULLY, I'M NOT

09:35AM 16   SUGGESTING THAT A CO-LEAD WOULD ALSO CO-CHAIR WITH THE THREE

09:35AM 17   BUT RATHER BE AN EFFECTIVE PARTICIPANT.

09:35AM 18            THE COURT:  SO YOU SAID THAT YOU'RE A MEMBER OF THE

09:35AM 19   JUUL SCIENCE AND EXPERTS COMMITTEE AS CO-CHAIR, THAT'S WHAT I

09:35AM 20   READ?

09:35AM 21            MS. JEFFCOTT:  YES, YOUR HONOR.  I APOLOGIZE.

09:35AM 22            THE COURT:  GIVEN THAT YOU HAVE THAT COMMITMENT

09:35AM 23   ALREADY, HOW CAN YOU BE A CO-LEAD IN THIS MDL?

09:35AM 24            MS. JEFFCOTT:  YES, YOUR HONOR.

09:35AM 25        RESPECTFULLY, THE POSITION OF THE JUUL MDL, IT'S IN A VERY

09:35AM 1    MATURE STANDPOINT.  AND IN TERMS OF MY WORK ON THE SCIENCE AND

09:35AM 2    EXPERTS COMMITTEE THERE, THAT HAS LARGELY CONCLUDED,

09:35AM 3    YOUR HONOR.

09:35AM 4         SO AT THIS POINT AND AT THIS TIME I AM FULLY DEVOTED TO

09:36AM 5    THIS MATTER AND ENSURING THAT I COULD CO-LEAD OR LEAD IT FOR

09:36AM 6    THAT MATTER IN THE WAY THAT YOUR HONOR SEES FIT.

09:36AM 7         NOW, YOUR HONOR, I WOULD REPRESENT THAT MORGAN & MORGAN

09:36AM 8    DOES NOT USE FUNDING LITIGATION, WE HAVEN'T, AND WE WON'T IN

09:36AM 9    THE FUTURE.

09:36AM 10        IN TERMS OF DAMAGES AND INJUNCTIVE RELIEF, I, I -- IN

09:36AM 11   ADDITION TO WHAT MS. HAZAM AND MR. SEEGER SAID, I THINK A

09:36AM 12   NATURAL POINT IS THAT YOU HAD MENTIONED THAT THIS LITIGATION

09:36AM 13   AND THE WAY THAT THE CLAIMS ARE FRAMED HAVE THE POTENTIAL TO

09:36AM 14   IMPLICATE BROAD SWATHS OF PEOPLE.  AND I THINK THAT THE NATURAL

09:36AM 15   PART OF THE MDL PROCESS AND THE ROLE OF THE MDL JUDGE IS BEING

09:36AM 16   ABLE TO NARROW THOSE POINTS THROUGH MASTER COMPLAINTS, AND MORE

09:36AM 17   IMPORTANTLY, THROUGH THE DAUBERT PROCESS AND ENSURING THAT THE

09:36AM 18   LEADING SCIENTIFIC AND TECHNICAL EVIDENCE EXISTS TO PUT FORTH

09:36AM 19   THE VALID CLAIMS.

09:36AM 20        SO THAT'S A NATURAL CHECK AND BALANCE TO ENSURE THAT THE

09:36AM 21   CLAIMS BEFORE THE COURT AND THE EVIDENCE SUPPORTS IT.

09:37AM 22        YOUR HONOR, I'M HAPPY TO ADDRESS ANY OTHER QUESTIONS THAT

09:37AM 23   YOU MAY HAVE.

09:37AM 24             THE COURT:  DID YOU GROW UP IN SAN ANTONIO?

09:37AM 25             MS. JEFFCOTT:  I DIDN'T.  I WENT TO LAW SCHOOL IN

| | | |
|---|---|---|
| 09:37AM | 1 | SAN ANTONIO. |
| 09:37AM | 2 | THE COURT:  I SEE THAT, THAT'S WHY I ASKED. |
| 09:37AM | 3 | MS. JEFFCOTT:  MY UNCLE STILL LIVES THERE.  I'M |
| 09:37AM | 4 | ACTUALLY HEADED THERE TOMORROW MORNING FOR A WEDDING, FOR MY |
| 09:37AM | 5 | COUSIN'S WEDDING. |
| 09:37AM | 6 | THE COURT:  I GREW UP THERE, THAT'S WHY I ASKED. |
| 09:37AM | 7 | OKAY.  IF YOU'LL STAND OVER -- COME OVER HERE |
| 09:37AM | 8 | (INDICATING). |
| 09:37AM | 9 | MS. JEFFCOTT:  THANK YOU, YOUR HONOR. |
| 09:37AM | 10 | THE COURT:  NEXT I HAVE JOSEPH VANZANDT. |
| 09:37AM | 11 | MR. VANZANDT:  GOOD MORNING, YOUR HONOR. |
| 09:37AM | 12 | JOSEPH VANZANDT FROM THE BEASLEY ALLEN LAW FIRM. |
| 09:37AM | 13 | I'M GOING TO GO THROUGH THE QUESTIONS THAT YOU'VE ASKED |
| 09:37AM | 14 | AND TRY NOT TO REPEAT EVERYTHING MY COLLEAGUES HAVE SAID. |
| 09:38AM | 15 | CERTAINLY I DO AGREE WITH A LOT OF THE POINTS THAT THEY HAVE |
| 09:38AM | 16 | MADE AND CERTAINLY WON'T WASTE THE COURT'S TIME WITH RESTATING |
| 09:38AM | 17 | A LOT OF THE SAME STUFF. |
| 09:38AM | 18 | BUT IN TERMS OF THE LEADERSHIP STRUCTURE, I DO BELIEVE |
| 09:38AM | 19 | THAT WE NEED A LARGE TEAM TO MANAGE THIS CASE REALLY FROM DAY |
| 09:38AM | 20 | ONE.  THE SCOPE OF THE MDL THAT THE JPML CREATED HERE IS LARGE |
| 09:38AM | 21 | ALREADY AND THAT'S POTENTIAL TO EVEN GROW FURTHER IN THE |
| 09:38AM | 22 | FUTURE. |
| 09:38AM | 23 | THE COURT:  RIGHT.  BUT IF YOU THROW IT OUT ON A |
| 09:38AM | 24 | MOTION TO DISMISS, THEN WHAT?  THEN IT'S GONE, RIGHT?  SO WHY |
| 09:38AM | 25 | DO I NEED ALL OF THOSE PEOPLE IN THE FIRST INSTANCE? |

09:38AM  1          MR. VANZANDT:  RIGHT.  THAT'S CERTAINLY A RISK THAT

09:38AM  2   WE FACE IN ANY CASE IS THAT IT BEING DISMISSED IN MOTIONS TO

09:38AM  3   DISMISS, BUT IT'S REALLY IMPORTANT FROM DAY ONE TO HAVE A

09:38AM  4   COHESIVE TEAM WORKING TOGETHER AND PLANNING FOR THE ENTIRE

09:38AM  5   LITIGATION.

09:38AM  6          OBVIOUSLY THERE ARE GOING TO BE PEOPLE FOCUSSING ON THE

09:38AM  7   MOTION TO DISMISS ASPECT, BUT SIMULTANEOUSLY, WE NEED TO BE

09:38AM  8   WORKING ON PRESERVATION ISSUES, PLANNING FOR DISCOVERY, HAVING

09:38AM  9   A TEAM WITH AN EYE TOWARDS TRIAL.

09:38AM 10          I MEAN, FROM DAY ONE, WE WILL BE PLANNING OUT A SCOPE AND

09:38AM 11   FOR THE ENTIRE COURSE OF THIS LITIGATION, AND OBVIOUSLY WE ARE

09:38AM 12   HOPEFUL THAT WE WOULD GET PAST THE MOTION TO DISMISS STAGE, BUT

09:39AM 13   AT THAT POINT WE WANT TO BE FAR AHEAD IN TERMS OF OUR PLAN AND

09:39AM 14   OUR WORK PLAN THAT WILL CARRY THE ENTIRE COURSE OF THIS

09:39AM 15   LITIGATION.

09:39AM 16          AND IT IS IMPORTANT THAT IT BE A COHESIVE TEAM FROM DAY

09:39AM 17   ONE AS OPPOSED TO PHASING IT TO WHERE YOU MAY HAVE A TEAM THAT

09:39AM 18   GETS IN-DEPTH KNOWLEDGE DRAFTING THE PLEADINGS, OPPOSING

09:39AM 19   MOTIONS TO DISMISS, AND GETS INSTITUTIONAL KNOWLEDGE OF THE

09:39AM 20   CASE, AND THEN LATER ON BRINGING IN NEW PEOPLE WHO HAVE MISSED

09:39AM 21   MAYBE MONTHS, OR EVEN MAYBE OVER A YEAR OF INSTITUTIONAL

09:39AM 22   KNOWLEDGE ABOUT THE CASE, ABOUT THE FACTS, AND ABOUT THE LEGAL

09:39AM 23   ISSUES IN THE CASE.  SO IT IS IMPORTANT TO HAVE THAT STRUCTURE

09:39AM 24   MOVING FORWARD FROM DAY ONE.

09:39AM 25          A LARGER STRUCTURE IS ALSO IMPORTANT TO ENSURE THAT

09:39AM   1      THERE'S DIVERSITY AMONG THE LEADERSHIP TEAM WITH EXPERIENCE.

09:39AM   2              THE COURT:  HOW DIVERSE?  WHAT DIVERSITY DO YOU

09:39AM   3      BRING?

09:39AM   4              MR. VANZANDT:  MYSELF?

09:39AM   5              THE COURT:  YOU RAISED THE ISSUE SO.

09:39AM   6              MR. VANZANDT:  SURE.  YEAH.  YOUR HONOR, WHAT I'M

09:39AM   7      TALKING ABOUT IS DIVERSITY IN BACKGROUND AND EXPERIENCE.

09:39AM   8              THE COURT:  THAT'S WHAT I'M ASKING.

09:39AM   9              MR. VANZANDT:  SURE.  MY DIVERSITY WOULD INCLUDE

09:40AM  10      OBVIOUSLY HAVING WORKED PREVIOUSLY AS A DEFENSE LAWYER AND NOW

09:40AM  11      WORKING IN THE MDL SETTING FOR THE LAST SIX YEARS AND HAVING A

09:40AM  12      LOT OF EXPERIENCE IN THE MDL SETTING.

09:40AM  13              THE COURT:  OKAY.  SO EVERYBODY HAS EXPERIENCE

09:40AM  14      EXCEPT FOR I THINK TWO IN THE MDL SETTING.

09:40AM  15          SO I DON'T KNOW WHAT YOU MEAN BY THAT.

09:40AM  16              MR. VANZANDT:  RIGHT.

09:40AM  17              THE COURT:  IN TERMS OF YOUR DIVERSITY AS I

09:40AM  18      INTERVIEW EVERYBODY ON THIS SIDE HERE.

09:40AM  19              MR. VANZANDT:  RIGHT.  I THINK EVERYONE HERE,

09:40AM  20      WHETHER OR NOT THEY HAVE MDL EXPERIENCE OR NOT, HAVE DIVERSE

09:40AM  21      BACKGROUNDS AND EXPERIENCES, DIFFERENT TYPES OF CASES,

09:40AM  22      DIFFERENT TYPES OF LITIGATION, DIFFERENT EXPERTISE RELATED TO

09:40AM  23      THE SPECIFIC TYPES OF CASES.

09:40AM  24              THE COURT:  MR. VANZANDT, I UNDERSTAND IT.  I COULD

09:40AM  25      PROBABLY FIGURE IT OUT.  I'M ASKING YOU ABOUT YOU.

09:40AM 1          MR. VANZANDT:  RIGHT.  OKAY.

09:40AM 2          WELL, I WOULD SAY THEN THAT THE DIVERSE ASPECT I BRING TO

09:40AM 3    THIS CASE IN TERMS OF THE LEGAL WORK IS PROBABLY MY WORK THAT

09:40AM 4    I'VE DONE ON THE JUUL LITIGATION REPRESENTING THOUSANDS OF

09:40AM 5    YOUNG INDIVIDUALS, MOSTLY ADOLESCENT PLAINTIFFS, AND HAVING

09:40AM 6    THAT EXPERIENCE OF REPRESENTING THAT CLIENT POPULATION, THE

09:41AM 7    ISSUES THAT ARE INVOLVED WITH CONDUCTING DISCOVERY ON YOUNG

09:41AM 8    PEOPLE WITH VERY SENSITIVE ISSUES RELATED TO SOCIAL MEDIA, AND

09:41AM 9    THOSE ARE ALL ISSUES THAT ARE GOING TO BE FRONT AND CENTER IN

09:41AM 10   THIS CASE, AND SO THAT'S SOMETHING THAT I HAVE SPENT THE LAST

09:41AM 11   THREE YEARS OF MY PROFESSIONAL LIFE DOING AND DEVOTED TO

09:41AM 12   REPRESENTING THAT CLIENT POPULATION, AND IT'S CERTAINLY A WAY

09:41AM 13   THAT MY BACKGROUND BRINGS DIVERSITY TO THE LEGAL EXPERIENCE OF

09:41AM 14   THIS TEAM.

09:41AM 15          THE COURT:  ARE YOU STILL WORKING ON THAT CASE?

09:41AM 16          MR. VANZANDT:  YES, YOUR HONOR, I AM.

09:41AM 17          THE COURT:  SO HOW DO YOU HAVE TIME TO WORK ON THAT

09:41AM 18   CASE AND THIS CASE?

09:41AM 19          MR. VANZANDT:  SURE.  SO AS MS. JEFFCOTT NOTED, THAT

09:41AM 20   CASE IS CERTAINLY VERY MATURE IN WHERE IT STANDS, BUT THE GOOD

09:41AM 21   PART ABOUT THAT CASE, THE JUUL LITIGATION, THERE IS A LARGE

09:41AM 22   LEADERSHIP TEAM.

09:41AM 23          EACH COMMITTEE THAT I WORK ON HAS NOT JUST A CHAIR BUT A

09:41AM 24   CO-CHAIR AND ALSO HAS A CO-LEAD OVERSEEING THAT COMMITTEE, SO

09:41AM 25   IT DOES ALLOW FOR OTHER ATTORNEYS TO WORK ON OTHER PROJECTS AND

09:41AM 1    HAVE THE TIME TO, IN CAPACITY, TO REALLY SHARE THE WORKLOAD

09:41AM 2    BECAUSE OVER THE COURSE OF A LITIGATION THAT COULD TAKE THREE,

09:41AM 3    FOUR, FIVE, YEARS.  THERE'S GOING TO BE TIMES WHERE CERTAIN

09:42AM 4    ATTORNEYS HAVE DIFFERENT CAPABILITIES AND AN ABILITY TO DEVOTE

09:42AM 5    TO THAT CASE CERTAINLY NOT GOING TO --

09:42AM 6            THE COURT:  AND WHAT IS THE PROCEDURAL STATUS OF

09:42AM 7    JUUL?

09:42AM 8            MR. VANZANDT:  THE PROCEDURAL STATUS?

09:42AM 9        SO AT THIS POINT WE ARE ON THE VERGE OF OUR FIRST

09:42AM 10   BELLWETHER TRIAL.

09:42AM 11           THE COURT:  AND AREN'T YOU CO-CHAIR OF THAT

09:42AM 12   COMMITTEE?

09:42AM 13           MR. VANZANDT:  I'M CO-CHAIR OF THE PERSONAL INJURY

09:42AM 14   BELLWETHER COMMITTEE.

09:42AM 15           THE COURT:  WELL, IT SEEMS LIKE EVEN THOUGH IT'S IN

09:42AM 16   AN ADVANCED STAGE, IT'S JUST GETTING TO THE POINT WHERE WHAT

09:42AM 17   YOU'RE DOING IS THE MOST IMPORTANT THING.

09:42AM 18           MR. VANZANDT:  MOST OF THE -- I'D SAY THE MOST

09:42AM 19   IMPORTANT WORK I'VE DONE HAS BEEN IN THE LAST YEAR AND A HALF

09:42AM 20   AND ACTUALLY WORKING UP BELLWETHER CASES, SELECTING THE

09:42AM 21   BELLWETHER CASES AND WORKING THROUGH MOTIONS TO DISMISS AND

09:42AM 22   SUMMARY JUDGMENT.  I CERTAINLY DO INTEND TO BE ONE OF THE

09:42AM 23   COCOUNSEL TRYING THE FIRST BELLWETHER CASE THAT IS CURRENTLY

09:42AM 24   SCHEDULED FOR JANUARY, BUT THERE'S A WHOLE SERIES OF BELLWETHER

09:42AM 25   CASES THAT WILL HAPPENING IN THAT LITIGATION AND THEY'RE ALL

09:42AM  1    NOT MY CLIENTS.  I'M NOT ON THE TRIAL TEAM FOR ALL OF THOSE

09:42AM  2    CASES.

09:42AM  3         AGAIN IT'S A VERY LARGE TEAM TO WHERE THE WORK IS DIVIDED

09:43AM  4    OUT EVENLY, AND SO THERE IS CERTAINLY ROOM TO TAKE ON OTHER

09:43AM  5    PROJECTS.

09:43AM  6         I'M CERTAINLY COMMITTED TO JUDGE ORRICK AND THE JUUL MDL,

09:43AM  7    AND I CERTAINLY DON'T INTEND TO ABANDON THAT, BUT I CERTAINLY,

09:43AM  8    IF GIVEN THE OPPORTUNITY, I WILL DO WHATEVER IT TAKES TO GIVE

09:43AM  9    THE PROFESSIONAL TIME NEEDED TO GIVE THIS MDL THE FULL

09:43AM 10    ATTENTION THAT IS NEEDED.

09:43AM 11              THE COURT:  OKAY.  STEP OVER AND SIGN THAT LITTLE

09:43AM 12    SHEET OR FILL OUT THAT LITTLE SHEET, I SHOULD SAY.

09:43AM 13         I THOUGHT THERE WERE A COUPLE OF OTHERS WHO IN THEIR

09:43AM 14    APPLICATIONS SUGGESTED THAT THEY MIGHT BE INTERESTED IN A

09:43AM 15    CO-LEAD.

09:43AM 16         DIANDRA DEBROSSE ZIMMERMANN, WOULD YOU COME FORWARD.

09:43AM 17              MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.

09:43AM 18              THE COURT:  AND YOU CAN ANSWER MY QUESTIONS BUT ALSO

09:43AM 19    LET ME KNOW WHAT YOUR STATUS IS GIVEN THAT I THOUGHT YOU ASKED

09:43AM 20    FOR CO-LEAD AND THEN LATER YOU HAD A CONVERSATION WITH SOMEONE

09:44AM 21    AND NOW YOU ARE NOT ASKING FOR CO-LEAD.

09:44AM 22              MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.  THANK

09:44AM 23    YOU FOR ALLOWING ME TO SPEAK TODAY.  IT'S AN HONOR TO BE IN

09:44AM 24    YOUR COURT.

09:44AM 25         I DID SEEK A CO-LEAD POSITION INITIALLY, AND I KNOW YOU

09:44AM 1    HAVE MY NAME FOR THE RECORD, DIANDRA DEBROSSE ZIMMERMANN, BUT

09:44AM 2    IF I DON'T SAY DICELLO, LEVITT & GUTZLER, MY PARTNERS ARE UPSET

09:44AM 3    SO I MAKE SURE I SAY MY FIRM NAME ON THE RECORD.

09:44AM 4        I DID SEEK THE CO-LEAD POSITION BECAUSE OF OUR FIRM'S

09:44AM 5    SPECIALTY IN A LOT OF THESE DIFFERENT AREAS.  WE HAVE WORKED

09:44AM 6    WITH MANY OF THE FIRMS IN LEADERSHIP.  WE KNOW MANY OF THEM

09:44AM 7    PERSONALLY.  WE CONSIDER THEM TO BE EXCEPTIONAL LAWYERS WHO

09:44AM 8    HAVE FOUGHT WARS AGAINST THIS COUNTRY'S BIGGEST DEFENDANTS, AND

09:44AM 9    WE KNOW THEY'RE GOING TO DO A GREAT JOB, AND I DECIDED I COULD

09:44AM 10   EQUALLY LEAD AND CONTRIBUTE WITH MY FIRM'S RESOURCES IN AN

09:44AM 11   EXECUTIVE COMMITTEE OR STEERING COMMITTEE POSITION.

09:44AM 12       SO I DON'T ALWAYS HAVE TO BE THE BOSS.  I DO LIKE BEING

09:44AM 13   THE BOSS, BUT I DON'T ALWAYS HAVE TO BE THE BOSS AND THOUGHT I

09:45AM 14   WOULD BE HONORED TO WORK WITH THEM IN A DIFFERENT CAPACITY.

09:45AM 15           THE COURT:  YOU TOO, IT SEEMED TO ME IN ANY EVENT,

09:45AM 16   YOU WERE CO-LEAD IN THE ABBOTT LABS.

09:45AM 17           MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.

09:45AM 18           THE COURT:  THAT'S A 2022 CASE, RIGHT?  SO IT'S JUST

09:45AM 19   STARTING.

09:45AM 20           MS. DEBROSSE ZIMMERMANN:  IT IS JUST STARTING.  I

09:45AM 21   THINK I MAY HAVE AN UNORTHODOX RESPONSE FOR YOU.  I CO-CHAIR

09:45AM 22   THE MAST TORT PRACTICE AND I DO CO-LEAD IN THAT CASE THE ABBOTT

09:45AM 23   AND GOOGLE LITIGATION.  I'M ALSO ON THE PEC OF THE PARAQUAT

09:45AM 24   MDL, BUT I DON'T LEAD THOSE CASES.

09:45AM 25           THE COURT:  PARAQUAT IS SPELLED P-A-R-A-Q-U-A-T, AND

09:45AM 1    SHEN SHE SAYS PEC WHICH IS SHORT FOR PLAINTIFFS' EXECUTIVE

09:45AM 2    COMMITTEE.

09:45AM 3              MADAM COURT REPORTER:  THANK YOU.

09:46AM 4              MS. DEBROSSE ZIMMERMANN:  YOUR HONOR, I DON'T DO IT

09:46AM 5    IN A VACUUM.  I DO TOUCH ON A LOT OF THINGS AND WORK ON A LOT

09:46AM 6    OF THINGS.  I HAVE A LOT OF AMAZING PARTNERS, SENIOR COUNSEL,

09:46AM 7    SUPPORT STAFF, AND I WILL MAKE MYSELF AVAILABLE TO BE VERY

09:46AM 8    PRESENT.  FOR THOSE WHO HAVE WORKED WITH ME, THEY KNOW I AM

09:46AM 9    EDITING AND DRAFTING AND WESTLAW AND DEFENDING DEPOSITIONS AND

09:46AM 10   TAKING DEPOSITIONS, AND I'M NOT JUST A FIGUREHEAD.

09:46AM 11       I MAKE MYSELF AVAILABLE, AND I HAVE DONE SO WHILE TOTING

09:46AM 12   TWO VERY DIFFICULT CHILDREN.  SO I CAN GET IT DONE BECAUSE I'VE

09:46AM 13   GOTTEN IT DONE, ALTHOUGH I HOLD OTHER LEADERSHIP POSITIONS.

09:46AM 14             THE COURT:  AND CAN YOU TELL ME ABOUT SHADES OF

09:46AM 15   MASS?

09:46AM 16             MS. DEBROSSE ZIMMERMAN:  YES, YOUR HONOR.

09:46AM 17       I FOUNDED SHADES OF MASS ALONGSIDE BEN CROMPTON AND A

09:46AM 18   NUMBER OF OTHER FIRMS.  I'VE BEEN IN THIS RODEO, I WON'T SAY

09:46AM 19   THE YEARS, BUT RIGHT COMING IN AND FOUND IT CHALLENGING ON SOME

09:46AM 20   LEVELS TO BE AT THE TABLE AND WHITTLED MY WAY INTO THESE

09:46AM 21   POSITIONS THROUGH A SMALLER FIRM, THEN THROUGH MY OWN LAW FIRM,

09:47AM 22   THEN AT GRANT & EISENHOFER, AND ULTIMATELY WITH THE GOOD FOLKS

09:47AM 23   AT DICELLO, LEVITT AND FELT AS A WOMAN OF COLOR, AS A CHILD OF

09:47AM 24   IMMIGRANTS I WAS PRACTICING LAW FOR A VERY PERSONAL REASON AND

09:47AM 25   CONTRIBUTED SOMETHING A LITTLE BIT DIFFERENT TO THE MANNER IN

09:47AM  1    WHICH CERTAIN TYPES OF MASS CASES HAD BEEN HANDLED, AND I FELT

09:47AM  2    THAT FOLKS WITH THE DIFFERING LIFE EXPERIENCES, THAT WE BROUGHT

09:47AM  3    SOMETHING VERY UNIQUE TO THE TABLE.

09:47AM  4        SO I WANTED TO MAKE THE PATH A LITTLE SIMPLER AND LESS

09:47AM  5    HOSTILE FOR THOSE BEHIND ME, EVEN AGAINST DEFENSE COUNSEL AS

09:47AM  6    WELL, AND I'VE HAD A LOT OF GREAT FIRMS, INCLUDING BEASLEY

09:47AM  7    ALLEN AND OTHERS HERE TODAY WHO ARE ON THAT BOARD.  AND IT'S

09:47AM  8    BEEN A REAL PLEASURE TO SEE THE WAY THAT THE LEGAL PROFESSION

09:47AM  9    HAS RECEIVED IT AND IN SOME SUCCESS SHADES OF MASS HAS ALREADY

09:47AM  10   HAD IN ENCOURAGING NONTRADITIONAL LAWYERS IN THIS SPACE TO GET

09:48AM  11   INVOLVED.

09:48AM  12           THE COURT:  WHERE DID THE NAME COME FROM?

09:48AM  13           MS. DEBROSSE ZIMMERMAN:  MY ITALIAN AMERICAN LAW

09:48AM  14   PARTNER, MARK DICELLO, WE CREATED IT AND WE WERE TRYING TO GO

09:48AM  15   THROUGH NAMES AND HE SAID WHAT ABOUT SHADES OF MASS.  I WOULD

09:48AM  16   LOVE TO TAKE CREDIT FOR IT, BUT IT WAS HIS IDEA.

09:48AM  17           THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

09:48AM  18   TO THINK ABOUT?

09:48AM  19           MS. DEBROSSE ZIMMERMAN:  I WOULD JUST WEIGH IN ON

09:48AM  20   THE SIZE OF THE LEADERSHIP STRUCTURE.

09:48AM  21        EVEN TO THE EXTENT THAT YOUR HONOR RIGHTFULLY SAYS, LOOK,

09:48AM  22   WE MAY ADDRESS THESE DISPOSITIVE ISSUES EARLY ON, EVEN THE

09:48AM  23   RESPONSE TO MOTIONS TO DISMISS, WHICH I KNOW YOUR HONOR KNOWS

09:48AM  24   BETTER THAN I DO, IS AN EXTRAORDINARY TASK.  THERE ARE SO MANY

09:48AM  25   DEFENDANTS HERE.

09:48AM  1      THESE ISSUES ARE AMONGST THE MOST SIGNIFICANT IN OUR

09:48AM  2   COUNTRY FOR THOSE US OF WHO HAVE CHILDREN FOR SURE, AND I THINK

09:48AM  3   AS THE PLAINTIFFS CARRYING THE BURDEN, WHICH IS A HEAVY BURDEN,

09:49AM  4   WE SHOULD BE AVAILED OF A LEADERSHIP STRUCTURE THAT BRINGS THE

09:49AM  5   BEST TO THE TABLE WITH ALL OF THEIR RESOURCES TO BE ABLE TO

09:49AM  6   FIGHT IN THE EARLY HOURS OF THE LITIGATION, AND THOSE ARE MY

09:49AM  7   THOUGHTS.

09:49AM  8      I THANK YOU, YOUR HONOR, VERY MUCH FOR ALLOWING ME THE

09:49AM  9   OPPORTUNITY TO SAY A FEW WORDS.

09:49AM 10           THE COURT:  THANK YOU.

09:49AM 11           MS. ZIMMERMAN:  THANK YOU.

09:49AM 12           THE COURT:  AGAIN, ANYONE WHO COMES TO THE MIC HAS

09:49AM 13   TO COME TO THIS MIC AND RECEIVE THAT SHEET FROM MR. GARCIA.

09:49AM 14      NEXT, JAYNE CONROY.

09:49AM 15           MS. CONROY:  GOOD MORNING, YOUR HONOR.

09:49AM 16   JAYNE CONROY FROM SIMMONS, HANLY & CONROY.

09:49AM 17           THE COURT:  MS. CONROY, SO I HAD YOU IN THIS BLOCK

09:49AM 18   IN PART BECAUSE I MAY HAVE MISREAD YOUR APPLICATION.

09:50AM 19      SO IF YOU JUST WANT TO BE A MEMBER OF THE STEERING

09:50AM 20   COMMITTEE AND YOU'RE NOT INTERESTED IN BEING CO-LEAD, BUT LET

09:50AM 21   ME KNOW.  BUT WHY DON'T YOU GO AHEAD AND ANSWER MY QUESTIONS.

09:50AM 22           MS. CONROY:  I'M SURE YOU DIDN'T MISREAD ANYTHING.

09:50AM 23   I'M SURE IT WAS SOME INAPPROPRIATE WAY THAT I PHRASED

09:50AM 24   SOMETHING, BUT I AM ONLY LOOKING FOR -- I SHOULDN'T SAY "ONLY"

09:50AM 25   -- I AM LOOKING FOR A PSC SEAT, NOT A CO-LEAD SEAT.

| | | |
|---|---|---|
| 09:50AM | 1 | THE COURT:  OKAY.  AND DO YOU HAVE THE TIME?  IT |
| 09:50AM | 2 | SEEMS TO ME THAT YOU'RE ONE OF THE THREE CO-LEADS IN THE OPIOID |
| 09:50AM | 3 | CASE, RIGHT? |
| 09:50AM | 4 | MS. CONROY:  THAT'S CORRECT, YOUR HONOR. |
| 09:50AM | 5 | THE COURT:  SO TALK TO ME ABOUT YOUR ABILITY TO |
| 09:50AM | 6 | ACTUALLY ENGAGE ON THIS ONE GIVEN YOUR OTHER COMMITMENTS. |
| 09:50AM | 7 | MS. CONROY:  SURE.  IT'S SOMEWHAT GOOD NEWS FOR |
| 09:50AM | 8 | MYSELF AND MANY OTHERS, AS WELL AS AT THE DEFENSE TABLE WE |
| 09:50AM | 9 | ARE -- WE'VE PROGRESSED.  THAT CASE IS NOW FIVE YEARS OLD, AND, |
| 09:51AM | 10 | IN FACT, I WAS STARTING TRIAL ON MONDAY HERE IN -- WELL, IN |
| 09:51AM | 11 | SAN FRANCISCO BEFORE JUDGE BREYER, AND THAT CASE HAS RESOLVED |
| 09:51AM | 12 | AND SO -- |
| 09:51AM | 13 | THE COURT:  WHICH OF THOSE? |
| 09:51AM | 14 | MS. CONROY:  THAT WAS THE DAMAGE PHASE FOR THE |
| 09:51AM | 15 | OPIOID CASE AGAINST WALGREENS. |
| 09:51AM | 16 | THE COURT:  OKAY. |
| 09:51AM | 17 | MS. CONROY:  SO WE'VE MADE TREMENDOUS PROGRESS IN |
| 09:51AM | 18 | THAT MDL.  SO JUDGE POLSTER IN CLEVELAND IS SITTING IN A VERY |
| 09:51AM | 19 | DIFFERENT PLACE THAN WHERE YOU'RE SITTING RIGHT NOW. |
| 09:51AM | 20 | THE COURT:  YOU HAVE SIGNIFICANT EXPERIENCE IN |
| 09:51AM | 21 | MDL'S. |
| 09:51AM | 22 | AS I TALKED TO MY COLLEAGUES ABOUT THIS CASE, WE ALL SEEM |
| 09:51AM | 23 | TO THINK THAT IT'S -- THAT THE SLATE OR NON-SLATE THAT WAS |
| 09:51AM | 24 | SUGGESTED SEEMS TO BE QUITE HEAVY. |
| 09:51AM | 25 | WHAT ARE YOUR THOUGHTS ON KIND OF THE OPTIMAL SIZE OF A |

```
09:51AM    1          LEADERSHIP STRUCTURE?
09:52AM    2                  MS. CONROY:  THANK YOU FOR ASKING THAT BECAUSE I
09:52AM    3     HAVE VERY STRONG OPINIONS ON IT.
09:52AM    4          PRIMARILY BECAUSE I'VE BEEN ON SO MANY MDL'S AND I'VE
09:52AM    5     WATCHED THESE PROGRESS OVER THE YEARS, AND OPIOIDS WAS AN
09:52AM    6     ENORMOUS WAKE-UP CALL I THINK FOR PLAINTIFFS' FIRMS THAT ARE
09:52AM    7     INVOLVED IN MDL'S, IN PARTICULAR WHEN THERE ARE SEVERAL
09:52AM    8     DEFENDANTS THAT ARE ACTIVE IN THE LITIGATION.
09:52AM    9          I, MYSELF, WAS A PROPONENT OF SMALLER MDL'S -- I'M SORRY,
09:52AM   10     SMALLER EXECUTIVE COMMITTEES.  I FELT THAT THEY WERE MORE
09:52AM   11     NIMBLE EARLY ON, AND I HAVE COME TO LEARN THAT WITH ELECTRONIC
09:52AM   12     DISCOVERY, THE ENORMOUS EXPENSE OF THESE CASES AND THE
09:52AM   13     TREMENDOUS EFFORT THAT IT TAKES ALL OF THE COUNSEL AND THEIR
09:52AM   14     LAW FIRMS, YOU JUST NEED A BIGGER GROUP TO MAKE THIS WORK.
09:52AM   15          THESE ARE NATIONAL LITIGATIONS.  YOU NEED GEOGRAPHIC
09:52AM   16     SCOPE.  YOU NEED INDIVIDUALS THAT ARE SPECIALIZED IN SO MANY
09:52AM   17     DIFFERENT AREAS, AND YOU HAVE TO TAKE INTO CONSIDERATION THAT A
09:53AM   18     LITIGATION IS GOING TO LAST, IF YOU GET THROUGH THE HURDLES,
09:53AM   19     FOR FIVE TO SIX YEARS.  THAT IS NOT UNCOMMON.
09:53AM   20          AND SO YOU NEED TO BE ABLE TO HAVE FIRMS THAT ARE RELIABLE
09:53AM   21     AND THAT ARE GOING TO BE AROUND AND LAWYERS THAT ARE -- YOU'RE
09:53AM   22     GOING TO GROW WITH AS THE CASE GROWS.
09:53AM   23          EVEN WITH RESPECT TO YOUR CONCEPT OF STARTING SMALL AND
09:53AM   24     THEN GETTING BIGGER, YOU'RE ASKING US TO FACE WHAT COULD BE OUR
09:53AM   25     GREATEST HURDLE IN THE NEXT FEW MONTHS.  AND, FRANKLY, WE'RE
```

09:53AM    1    GOING TO NEED ALL OF THE BRAINS IN THE ROOM TO DEAL WITH THAT.

09:53AM    2        THE COURT:  LOOK, DO YOU NEED 20 BRAINS IN THE ROOM

09:53AM    3    OR DO YOU NEED JUST THE BEST 6?  OR NOT EVEN 20, MAYBE IT'S 40.

09:53AM    4    WRITING BY COMMITTEE IS NOT FUN, THAT'S WHY I LIKE THIS JOB.

09:54AM    5        (LAUGHTER.)

09:54AM    6        MS. CONROY:  YOU KNOW, I HAVE FOUND -- AND THIS IS

09:54AM    7    SOMETHING, AGAIN, THAT I HAVE LEARNED OVER THE YEARS IS THAT WE

09:54AM    8    MUST WRITE BY COMMITTEE, WE MUST DO THAT.  AND WE MUST VET

09:54AM    9    EVERYTHING WE WRITE BASED ON THE FACTS THAT ARE COMING AT US

09:54AM   10    FROM DIFFERENT PERSPECTIVES WITH DIFFERENT CLIENTS, DIFFERENT

09:54AM   11    LAWYERS THAT ARE REPRESENTING DIFFERENT ASPECTS, PEOPLE WHO

09:54AM   12    KNOW SOMETHING MORE.

09:54AM   13        YOU KNOW, BRIEFING IS LOADED WITH POSITIONS THAT WE ARE

09:54AM   14    GOING TO TAKE NOW THAT WE'RE GOING TO HAVE TO LIVE WITH FIVE

09:54AM   15    YEARS FROM NOW.  THAT'S WHY WE NEED ALL OF THE BRAINS, BECAUSE

09:54AM   16    WE CAN'T MAKE A MISSTEP.  WE CAN'T EVER MAKE A MISSTEP.

09:54AM   17        THE COURT:  AND DO YOU FIND -- I MEAN, I'M SURE THAT

09:54AM   18    THE OPIOIDS HAD MOTIONS TO DISMISS, RIGHT?

09:54AM   19        MS. CONROY:  WE DID, YES.

09:54AM   20        (LAUGHTER.)

09:54AM   21        THE COURT:  AND HOW MANY WERE ON THAT COMMITTEE?

09:55AM   22    WHAT WAS THE NUMBER?

09:55AM   23        MS. CONROY:  WE HAD -- IN A LAW AND BRIEFING

09:55AM   24    COMMITTEE, WE HAD THREE CHAIRS OF THE LAW AND BRIEFING

09:55AM   25    COMMITTEE, AND THEY HAD ACCESS TO PROBABLY ANOTHER TEN WRITERS.

09:55AM  1      WE THEN HAD THE CO-LEADS AS WELL AS A LEAD FOR EACH ONE OF

09:55AM  2  THE INDIVIDUAL DEFENDANTS THAT VETTED EACH DRAFT OF THOSE

09:55AM  3  OPPOSITIONS TO THE MOTION TO DISMISS.

09:55AM  4      THIS WAS, THIS WAS A MAJOR WARTIME OPERATION, AND I KNOW

09:55AM  5  IT SOUNDS CRAZY.

09:55AM  6          THE COURT:  SO LET'S SAY THAT YOU HAD THE LAW AND

09:55AM  7  BRIEFING COMMITTEE, YOU HAD A SCIENCE COMMITTEE, AND YOU HAD

09:55AM  8  ALL OF THESE OTHER COMMITTEES, AND SO YOU HAVE 20, 30 PEOPLE

09:55AM  9  WHO ARE ON THESE COMMITTEES.

09:55AM  10      DO YOU REALLY GET SUBSTANTIVE RESPONSES FROM ALL 20 OR 30?

09:55AM  11  AND IS THE CLASS, THE ULTIMATE CLASS REALLY PAYING FOR ALL OF

09:55AM  12  THESE 20 OR 30 TO READ THE BRIEFS?

09:56AM  13          MS. CONROY:  NOPE.  YOU DON'T GET A REACTION FROM

09:56AM  14  EVERYONE.  YOU DON'T GET EVERYONE TO READ.

09:56AM  15      BUT I DON'T KNOW WHO THOSE PEOPLE ARE YET, AND I DON'T

09:56AM  16  KNOW WHAT IS HAPPENING IN THEIR LIVES, WHETHER THEY'RE

09:56AM  17  AVAILABLE.  THAT'S WHY WE NEED LARGER COMMITTEES.

09:56AM  18      OBVIOUSLY TIME IS AUDITED.  EVERY MONTH WE HAVE PEOPLE

09:56AM  19  THAT OVERSEE EXACTLY WHO IS BILLING FOR WHAT.  ALL OF THOSE ARE

09:56AM  20  PART OF THE MANAGEMENT STRUCTURE.

09:56AM  21          THE COURT:  AND SO IF SOMEONE IS NOT REALLY

09:56AM  22  CONTRIBUTING BUT PUTTING IN THE TIME, THAT'S OKAY?

09:56AM  23          MS. CONROY:  NO.  THEIR TIME WILL NOT BE ACCEPTED.

09:56AM  24          THE COURT:  OKAY.

09:56AM  25          MS. CONROY:  WE ALSO -- AND ONE OTHER THING WE HAVE

09:56AM 1    DONE, AND YOU'VE PROBABLY DONE THIS ALREADY, A YEARLY REVIEW OF

09:56AM 2    WHO IS ON EACH COMMITTEE BASED ON THE KIND OF WORK THAT THEY

09:56AM 3    HAVE DONE.

09:56AM 4            THE COURT:  WELL, IN THE BATTERIES CASE I RECEIVED

09:57AM 5    QUARTERLY REPORTS, SO I DIDN'T GET ANNUAL, BUT THAT WAS A

09:57AM 6    LITTLE BIT DIFFERENT.

09:57AM 7            MS. CONROY:  JUDGE POLSTER DIDN'T DO THAT IN

09:57AM 8    OPIOIDS, BUT THE CO-LEADS WE RECEIVED MONTHLY REPORTS ON

09:57AM 9    ACTIVITY.

09:57AM 10           THE COURT:  OKAY.  OTHER THOUGHTS, MS. CONROY?

09:57AM 11           MS. CONROY:  I THINK --

09:57AM 12           THE COURT:  AND DOES YOUR FIRM USE LITIGATION

09:57AM 13   FUNDING?

09:57AM 14           MS. CONROY:  WE DO NOT.

09:57AM 15           THE COURT:  GO FUNDERS?  OKAY.  ALL RIGHT.  THANK

09:57AM 16   YOU.

09:57AM 17           MS. CONROY:  THANK YOU.

09:57AM 18           THE COURT:  MS. ANDERSON.  MS. ANDERSON, YOU ARE

09:57AM 19   HEREBY APPOINTED LIAISON COUNSEL.  ONE, NO ONE ELSE WANTED THE

09:57AM 20   JOB.

09:57AM 21       (LAUGHTER.)

09:57AM 22           THE COURT:  TWO, YOU AND I HAVE WORKED TOGETHER ON

09:58AM 23   BATTERIES, AND YOU'RE LOCAL, WHICH IS NICE TO BE ON THE SAME

09:58AM 24   TIME ZONE.

09:58AM 25           SO YOU HAVE THE JOB.

09:58AM   1          MS. ANDERSON:  THANK YOU, YOUR HONOR.

09:58AM   2          THE COURT:  AS SOON AS WE FINISH HERE, YOU CAN HELP

09:58AM   3   ME DEAL WITH ALL OF THE STUFF THAT IS GOING TO HAPPEN AFTER

09:58AM   4   TODAY.

09:58AM   5          MS. ANDERSON:  IT WILL BE A PLEASURE.

09:58AM   6          THE COURT:  ANYTHING THAT YOU WANT TO SAY FOR THE

09:58AM   7   RECORD?

09:58AM   8          MS. ANDERSON:  NOT UNLESS YOUR HONOR HAS PARTICULAR

09:58AM   9   QUESTIONS.  I CONCUR WITH PRETTY MUCH EVERYTHING THAT MY

09:58AM   10  COLLEAGUES HAVE SAID TODAY.

09:58AM   11         THE COURT:  I WOULD LIKE YOU TO FILL OUT THIS LITTLE

09:58AM   12  FORM HERE.

09:58AM   13         MS. ANDERSON:  OKAY.

09:58AM   14         THE COURT:  LET'S SEE.  HAVE I GOTTEN EVERYBODY?

09:58AM   15  YES, I'VE GOTTEN EVERYBODY AT THAT TABLE.

09:58AM   16      ALL RIGHT.  SO LET'S GO AHEAD, AND WE'LL START WITH THIS

09:58AM   17  GROUP HERE ON THE BENCH.

09:58AM   18      MY, MY -- I THINK THAT THESE ARE ALL FOLKS WHO WANT TO BE

09:58AM   19  ON THE STEERING COMMITTEE.  OKAY.

09:58AM   20      I DON'T KNOW WHO EVERYBODY ELSE IS IN THE BACK, BUT WE'LL

09:59AM   21  FIND THAT OUT LATER, TOO.

09:59AM   22      SO WHY DON'T WE START HERE.  WE WILL TAKE ONE AT A TIME.

09:59AM   23      IF YOU'LL COME TO THE MIC.  WE'LL TAKE ONE AT A TIME.

09:59AM   24  COME TO THE MIC AND TELL ME WHO YOU ARE, AND RESPOND TO MY

09:59AM   25  QUESTIONS GENERALLY THAT I'VE ALREADY PREPARED.  I MAY HAVE

09:59AM 1    SOME QUESTIONS BASED UPON MY REVIEW OF YOUR APPLICATION.

09:59AM 2        GO AHEAD.

09:59AM 3            MS. RIZKALLA:  GOOD MORNING, YOUR HONOR.

09:59AM 4        MY NAME IS RUTH RIZKALLA.  I'M WITH THE CARLSON LAW FIRM,

09:59AM 5    AND, YES, I AM APPLYING FOR A PLAINTIFFS' STEERING COMMITTEE

09:59AM 6    POSITION.

09:59AM 7        I WILL GO IN ORDER.  I BELIEVE YOU HAD SIX QUESTIONS THAT

09:59AM 8    YOU WANTED US TO RESPOND TO.

09:59AM 9            THE COURT:  WELL, ONE OF THE THINGS I WOULD LIKE TO

09:59AM 10   KNOW FROM YOU, BECAUSE YOU WERE NOT ON A SLATE.

09:59AM 11           MS. RIZKALLA:  THAT'S CORRECT, YOUR HONOR.

09:59AM 12           THE COURT:  AND SO WHY DO YOU -- DID YOU ASK TO BE

09:59AM 13   ON THE SLATE?

09:59AM 14           MS. RIZKALLA:  I DID ASK TO BE ON THE SLATE.

09:59AM 15           THE COURT:  ALL RIGHT.  WHO DID YOU ASK?

09:59AM 16           MS. RIZKALLA:  SO I HAVE BEEN ON THE CALLS, I

10:00AM 17   BELIEVE, SINCE AUGUST OF THIS YEAR, AND I EMAILED A COUPLE OF

10:00AM 18   THE FOLKS LETTING THEM KNOW THAT I WAS INTERESTED IN A PSC

10:00AM 19   SPOT.

10:00AM 20       MY UNDERSTANDING IS THAT THERE WERE SO MANY FOLKS WHO

10:00AM 21   WANTED TO BE IN LEADERSHIP, AND I THINK, LIKE YOUR HONOR SAID

10:00AM 22   EARLIER, THAT THIS SLATE WAS ALREADY SO BIG, WHICH IS

10:00AM 23   COMPLETELY FINE WITH ME.

10:00AM 24       I LOOKED AT THE SLATE.  THESE ARE VERY HIGHLY RESPECTED

10:00AM 25   EXPERIENCED LAWYERS ON THE SLATE.  I DON'T FEEL SLIGHTED IN THE

10:00AM  1    LEAST.  I AM USED TO NOT BEING INVITED TO EVERY PARTY THAT I'D

10:00AM  2    LIKE TO GO TO, AND I THINK THAT'S JUST ONE OF THESE SITUATIONS.

10:00AM  3         THE COURT:  OKAY.  GO AHEAD AND TELL ME WHY YOU

10:00AM  4    SHOULD BE ADDED TO THE SLATE.

10:01AM  5         MS. RIZKALLA:  YOUR HONOR, I THINK I SHOULD BE ADDED

10:01AM  6    TO THE SLATE FOR THREE REASONS, THREE MAIN REASONS:

10:01AM  7         THE FIRST BEING THAT I HAVE THE RELEVANT EXPERIENCE.  I'VE

10:01AM  8    BEEN PRACTICING LAW NOW FOR ALMOST TWO DECADES, THE LAST DECADE

10:01AM  9    OF WHICH HAS BEEN PRIMARILY PRODUCTS LIABILITY LITIGATION.  AND

10:01AM 10    DESPITE THE FACT THAT DEFENDANTS ARE SAYING THIS IS NOT A

10:01AM 11    PRODUCT CASE, IT IS.  I THINK IF I CAN SHOW YOUR HONOR THIS

10:01AM 12    THROUGH THIS LITIGATION, I WOULD LOVE TO DO THAT.

10:01AM 13         I HAVE BEEN JUDGE APPOINTED TO THREE MDL'S IN THE PAST,

10:01AM 14    ALL PRODUCTS LIABILITY MDL'S AND FOUR JCCP'S.  SO I THINK THIS

10:01AM 15    IS IN MY WHEELHOUSE AS FAR AS EXPERIENCE GOES.

10:01AM 16         ADDITIONALLY, THIS IS A LITIGATION THAT I CARE ABOUT.  I

10:01AM 17    KNOW OTHER COUNSEL HAVE BROUGHT UP THE FACT THAT THEY HAVE

10:01AM 18    CHILDREN WHO ARE TEENAGERS.  I HAVE THREE KIDS, AND THEY ARE

10:01AM 19    11, 14, AND 16.  SO THE STRUGGLE WITH SOCIAL MEDIA, THE DANGERS

10:02AM 20    THAT LURK WITHIN SOCIAL MEDIA USE IS VERY, VERY REAL FOR ME.

10:02AM 21         SO THE OPPORTUNITY TO WORK IN THIS LITIGATION THAT IS

10:02AM 22    ABSOLUTELY CUTTING EDGE AND I THINK WILL BE LIFE CHANGING NOT

10:02AM 23    JUST FOR THE PLAINTIFFS INVOLVED, BUT I THINK THERE ARE

10:02AM 24    RAMIFICATIONS THAT COME FOLLOWING THIS, TOO, AS FAR AS

10:02AM 25    REGULATING SOCIAL MEDIA PLATFORMS AND THE PEOPLE WHO HAVE

10:02AM  1      BECOME VICTIMS.

10:02AM  2           THIRDLY, I THINK THAT I ALSO BRING A DIFFERENT KIND OF

10:02AM  3      DIVERSITY AND PERSPECTIVE.  AS I NOTED IN MY APPLICATION -- AND

10:02AM  4      I DON'T WANT TO REPEAT THE EXACT SAME THINGS, BUT, YOU KNOW, I

10:02AM  5      AM SOMEONE WHO COMES FROM AN IMMIGRANT FAMILY, WHO HAS OVERCOME

10:02AM  6      ADVERSITY, HARDSHIP, AND I DON'T GIVE UP.  AND I DON'T GIVE UP.

10:02AM  7      I AM HERE TODAY BECAUSE I DON'T GIVE UP.  I AM HERE TODAY

10:03AM  8      BECAUSE I HAVEN'T GIVEN UP.  I WANT TO BE IN FRONT OF

10:03AM  9      YOUR HONOR AND SAY I AM THE PERSON TO DO THIS AND IF YOU

10:03AM  10     APPOINT ME, I WILL NOT LET YOU DOWN, AND I WILL NOT LET THE

10:03AM  11     PLAINTIFFS DOWN.

10:03AM  12          THE COURT:  THE CASES WHERE YOU HAVE ALREADY BEEN

10:03AM  13     APPOINTED, DO YOU HAVE TIME FOR THIS CASE?

10:03AM  14          MS. RIZKALLA:  I ABSOLUTELY DO.  RIGHT NOW I HAVE A

10:03AM  15     PSC POSITION IN THE 3M COMBAT ARMS EARPLUGS CASE.  THAT

10:03AM  16     ESSENTIALLY HAS GONE THROUGH THE BELLWETHER TRIAL PHASE AND NOW

10:03AM  17     WE'RE IN WAVE CASES, WHICH ESSENTIALLY MEANS CASES WILL GET

10:03AM  18     REMANDED TO THE FIRMS THAT INITIALLY FILED THEM, AND SO THOSE

10:03AM  19     FIRMS WILL BE TRYING THEIR OWN CASES.

10:03AM  20          I AM ALSO IN TWO OTHER MDL PSC POSITIONS, AND I'VE BEEN

10:03AM  21     ABLE TO MANAGE.  I'VE ALWAYS MANAGED.  THAT'S KIND OF WHAT I

10:03AM  22     DO.

10:03AM  23          THE COURT:  YOU'RE A SOLO PRACTITIONER?

10:03AM  24          MS. RIZKALLA:  NO.  I AM 1 OF APPROXIMATELY

10:03AM  25     40-SOMETHING LAWYERS.

| | |
|---|---|
| 10:04AM | 1 |
| 10:04AM | 2 |
| 10:04AM | 3 |
| 10:04AM | 4 |
| 10:04AM | 5 |
| 10:04AM | 6 |
| 10:04AM | 7 |
| 10:04AM | 8 |
| 10:04AM | 9 |
| 10:04AM | 10 |
| 10:04AM | 11 |
| 10:04AM | 12 |
| 10:04AM | 13 |
| 10:04AM | 14 |
| 10:04AM | 15 |
| 10:04AM | 16 |
| 10:04AM | 17 |
| 10:05AM | 18 |
| 10:05AM | 19 |
| 10:05AM | 20 |
| 10:05AM | 21 |
| 10:05AM | 22 |
| 10:05AM | 23 |
| 10:05AM | 24 |
| 10:05AM | 25 |

1    AND AS FAR AS THE LITIGATION FINANCE QUESTION GOES, MY

2  FIRM IS NOT, IS NOT -- WE DON'T EVEN HAVE DEBT VERY HONESTLY,

3  SO NO LITIGATION FINANCING, NO DEBT WHATSOEVER.

4        THE COURT:  AND WHICH ARE THE OTHER CASES THAT ARE

5  STILL ONGOING?

6        MS. RIZKALLA:  SO I'M ALSO PART OF THE PARAGUARD

7  MDL, AND THAT'S JUST BEGUN.  SO WE ARE IN DISCOVERY AND, YOU

8  KNOW, I AM PART OF THE TEAM.  I'VE GOT -- OH, GOSH.  HOW MANY

9  DO I HAVE?  I HAVE ASSOCIATES, I HAVE STAFF, AND I'VE BEEN ON

10  TOP OF THAT.  AND THEN -- I'M SORRY.

11        THE COURT:  AND THEN THE THIRD?

12        MS. RIZKALLA:  THE THIRD ONE IS THE ELMIRON

13  LITIGATION, AND SO THAT IS HEADING INTO BELLWETHER TRIALS.  I

14  WILL BE A PART OF THAT TEAM, BUT I AM NOT THE HEAD TRIAL

15  ATTORNEY.

16        THE COURT:  OKAY.  IN TERMS OF ASSIGNMENTS, WHAT WAS

17  YOUR ASSIGNMENTS IN EARPLUGS?  WERE YOU ASSIGNED TO A

18  SUBCOMMITTEE OR A COMMITTEE?

19        MS. RIZKALLA:  SURE.  I WAS GENERAL.  I DIDN'T HAVE

20  A SUBCOMMITTEE THAT I WAS ASSIGNED TO, SO I DID A LITTLE BIT OF

21  EVERYTHING, AND I WAS ABLE TO PARTICIPATE IN THE FIRST

22  BELLWETHER TRIAL THAT TOOK PLACE.

23        THE COURT:  OKAY.  AND WHAT ABOUT ELMIRON?

24        MS. RIZKALLA:  I'M NOT ON ANY ASSIGNED

25  SUBCOMMITTEES.  SO KIND OF THE SAME THING, I'M GENERAL.  AND

```
10:05AM   1    WHEN I'M NEEDED OR IF I WANT TO VOLUNTEER FOR SOMETHING THAT IS

10:05AM   2    UPCOMING IN THE LITIGATION, I CAN DO THAT.

10:05AM   3              THE COURT:  OKAY.  IF YOU COULD PICK A COMMITTEE

10:05AM   4    THAT YOU WOULD LIKE TO SERVE ON IN THIS CASE, WHAT WOULD IT BE?

10:05AM   5              MS. RIZKALLA:  I THINK IT WOULD HAVE TO BE PROBABLY

10:05AM   6    THE MASTER COMPLAINT AND ALSO KIND OF NARROWING DOWN WHAT OUR

10:05AM   7    REAL CAUSES OF ACTION ARE.

10:05AM   8              THE COURT:  GREAT.  THANKS.

10:05AM   9              MS. RIZKALLA:  THANK YOU, YOUR HONOR.

10:05AM  10              THE COURT:  NEXT.

10:06AM  11              MR. GOZA:  GOOD MORNING, YOUR HONOR.

10:06AM  12              THE COURT:  GOOD MORNING.

10:06AM  13              MR. GOZA:  MY NAME IS KIRK GOZA.  I'M WITH THE LAW

10:06AM  14    FIRM OF GOZA HONNOLD, AND I'VE APPLIED FOR A PSC POSITION IN

10:06AM  15    THIS CASE.

10:06AM  16         I'M HAPPY TO ADDRESS THE QUESTIONS THAT YOUR HONOR HAS.

10:06AM  17    FIRST, I GUESS, STARTING WITH LEADERSHIP STRUCTURE.  I KNOW THE

10:06AM  18    COURT HAS SOME CONCERNS ABOUT THE SIZE OF LEADERSHIP.  AND I

10:06AM  19    WOULD SAY THIS, YOU KNOW, I THINK THAT WHAT ALL OF THESE

10:06AM  20    LITIGATIONS NEED IS PEOPLE WITH VARYING EXPERIENCE AND

10:06AM  21    EXPERTISE.  THE COURT IS ALWAYS LOOKING TO PROVIDE NEW PEOPLE

10:06AM  22    OPPORTUNITIES TO GET INVOLVED IN MDL, AND, OF COURSE,

10:06AM  23    DIVERSIFICATION IS IMPORTANT AS WELL.

10:06AM  24         AND I THINK THAT IN THESE KINDS OF CASES IT IS MUCH BETTER

10:06AM  25    TO ERR ON THE SIDE AND LESS HARM MAKING THE PSC BIGGER THAN ONE
```

10:07AM   1    MIGHT ABSOLUTELY NEED IN ORDER TO ACCOMMODATE SOME OF THOSE

10:07AM   2    THINGS.  SO I THINK THOSE ARE ALL WORTHWHILE GOALS TO CONSIDER

10:07AM   3    AS THE COURT EVALUATES PEOPLE COMING TO THE TABLE.

10:07AM   4         AND I THINK THE HARM OF MAKING IT TOO SMALL FAR OUTWEIGHS

10:07AM   5    THE BENEFITS THAT COME WITH OPENING UP THE PSC OPPORTUNITIES TO

10:07AM   6    PEOPLE AND OBVIOUSLY THEN EVERYONE HAS THEIR OWN AREA OF

10:07AM   7    EXPERTISE.

10:07AM   8              THE COURT:  AND WHAT IS YOURS?

10:07AM   9              MR. GOZA:  WHAT IS MINE?  WELL, LET ME SAY FIRST

10:07AM  10    I -- THE REALITY IS THE LAW FIRM HAS BEEN INVOLVED IN A LOT OF

10:07AM  11    DIFFERENT KINDS OF MDL'S LITIGATIONS AND TAKEN A LOT OF

10:07AM  12    DIFFERENT ROLES.  MOST OF THAT HAS BEEN THROUGH MY PARTNER,

10:07AM  13    BRAD HONNOLD.

10:07AM  14              THE COURT:  SO HE'S NOT HERE.  I'M ASKING ABOUT YOU.

10:07AM  15              MR. GOZA:  RIGHT.  I GUESS WHAT I WOULD SAY IS THIS,

10:07AM  16    I HAVE OVER THE YEARS DONE A TREMENDOUS AMOUNT OF WORK WITH

10:07AM  17    EXPERTS, WITH DAUBERT MOTIONS, WITH DEPOSING CORPORATE

10:07AM  18    REPRESENTATIVES, WITH BEING SELECTED TO BE ON VARIOUS TRIAL

10:08AM  19    TEAMS INCLUDING, AS PEOPLE HAVE MENTIONED, THE JUUL TRIAL TEAM

10:08AM  20    FOR A CASE THAT IS COMING UP.

10:08AM  21         SO MY ROLE HAS BEEN NARROW IN TERMS OF WHAT MY EXPERTISE

10:08AM  22    IS.  MY POINT IN BRINGING UP THE FACT THAT I HAVEN'T BEEN

10:08AM  23    ASSIGNED ON PSC'S IN MANY OF THOSE INSTANCES, IS PEOPLE HAVE

10:08AM  24    ASKED ME TO COME AND BE INVOLVED IN CASES AND DO THAT KIND OF

10:08AM  25    WORK IN THAT SPECIFIC AREA, AND I'VE DONE THAT IN I HOPE A

10:08AM   1    COOPERATIVE FASHION WHERE PEOPLE KNOW I'M WILLING TO DO KIND OF

10:08AM   2    WHATEVER IT TAKES TO HELP MOVE THINGS FORWARD.

10:08AM   3        SO THAT WOULD BE MY AREA OF EXPERTISE, I GUESS.

10:08AM   4        THE COURT:  HOW MUCH WORK, IF ANY, HAVE YOU DONE IN

10:08AM   5    TERMS OF SOCIAL MEDIA OR TECH RELATED TOPICS?

10:08AM   6        MR. GOZA:  SO IN SOCIAL MEDIA, I GUESS I WOULD

10:08AM   7    EXPAND JUST A LITTLE WAY TO SAY IN MARKETING IN SOCIAL MEDIA I

10:08AM   8    HAVE ACTUALLY DONE A LOT OF WORK.

10:08AM   9        PEOPLE HAVE TALKED ABOUT THE JUUL CASE.  I ACTUALLY WORKED

10:08AM  10    HAND IN HAND WITH OUR -- BOTH THE DEVELOPMENTAL AND CLINICAL

10:09AM  11    PSYCHOLOGIST THAT DEALT NOT ONLY WITH THE ADDICTION OF THE

10:09AM  12    DEVELOPING ADOLESCENT AND YOUNG ADULT BRAIN AND THE DIFFERENCE

10:09AM  13    BETWEEN THAT AND A MATURE BRAIN, BUT TALK ABOUT THE IMPACT OF

10:09AM  14    MARKETING, SOCIAL MEDIA AND PEER PRESSURE WITH RESPECT TO KIDS,

10:09AM  15    AND ALL OF THOSE WERE RELATED TO EXPERTS IN THE AREA OF YOUTH

10:09AM  16    PSYCHOLOGY AND ADOLESCENT PSYCHOLOGY, AND I'VE SPENT THE LAST

10:09AM  17    TWO OR THREE YEARS WORKING IN THAT AREA.

10:09AM  18        THE COURT:  OKAY.

10:09AM  19        MR. GOZA:  I'M HAPPY TO SAY THAT WE DON'T USE ANY

10:09AM  20    LITIGATION FUNDING, SO I DON'T THINK THAT THAT IS AN ISSUE.

10:09AM  21        IN TERMS OF MY AVAILABILITY, I DO THINK THAT, YOU KNOW, IN

10:09AM  22    TERMS OF WHAT I GENERALLY AM LOOKED AT TO BE INVOLVED IN,

10:09AM  23    THAT'S PROBABLY NOT SOMETHING THAT IS GOING TO HAPPEN

10:09AM  24    IMMEDIATELY.

10:09AM  25        WE DO HAVE TRIALS SCHEDULED IN JUUL IN THE EARLY PART OF

10:09AM  1    THIS -- OR NEXT YEAR.  PRESUMABLY MY ROLE IN THOSE WILL BE

10:10AM  2    EITHER TO TRY THEM OR NOT TRY THEM COME JANUARY OF NEXT YEAR,

10:10AM  3    AND SO I EXPECT THAT BY THE TIME WE GET TO THAT POINT IN

10:10AM  4    DISCOVERY AND DOING EXPERT WORK AND DOING THOSE KINDS OF THINGS

10:10AM  5    IN THIS LITIGATION, I HOPEFULLY WILL BE IN A POSITION TO

10:10AM  6    HOPEFULLY COMMIT FULL TIME TO DOING THAT.

10:10AM  7              THE COURT:  SO IF YOU COULD CHOOSE A SUBCOMMITTEE,

10:10AM  8    IT WOULD BE A TRIAL TEAM?

10:10AM  9              MR. GOZA:  IT WOULD BE A TRIAL OR EXPERT COMMITTEE

10:10AM  10   OR A COMBINATION OF THOSE THINGS, YES.

10:10AM  11             THE COURT:  AND YOU'RE, RIGHT NOW, YOU'RE SCHEDULED

10:10AM  12   TO GO TO TRIAL IN JUUL IN JANUARY?

10:10AM  13             MR. GOZA:  THE FIRST TRIAL IS IN JANUARY AND THE

10:10AM  14   SECOND IN APRIL, I BELIEVE.

10:10AM  15             THE COURT:  THESE ARE IN FRONT OF JUDGE ORRICK?

10:10AM  16             MR. GOZA:  YES, THEY ARE, MA'AM.

10:10AM  17             THE COURT:  AND YOU FOUND A GOOD HOTEL TO LIVE IN?

10:10AM  18             MR. GOZA:  YOU KNOW, THE ANSWER TO THAT QUESTION IS,

10:10AM  19   NO, WE APPARENTLY HAVE NOT FOUND A GREAT HOTEL.  BUT WE'VE GOT

10:11AM  20   A HOTEL.

10:11AM  21        (LAUGHTER.)

10:11AM  22             MR. GOZA:  THAT'S ALL I COULD SAY ABOUT THAT.

10:11AM  23             THE COURT:  WELL, HERE IN OAKLAND I HAD ONE TRIAL

10:11AM  24   LAWYER WHO DID TRIALS IN FRONT OF ME LIKE IN JUNE AND THEN IN

10:11AM  25   SEPTEMBER, AND UNTIL RECENTLY THE ONLY THING WE HAD WAS THE

```
10:11AM   1    MARRIOTT THAT IS RIGHT HERE.
10:11AM   2         WE NOW HAVE ANOTHER ONE HERE DOWN ON BROADWAY.
10:11AM   3             MR. GOZA:  I THINK THE MARRIOTT MIGHT BE ABOVE A
10:11AM   4    STEP WHERE WE'RE SAYING.
10:11AM   5             THE COURT:  WELL, HE SAID HE WOULD NEVER TRY A CASE
10:11AM   6    HERE AGAIN BECAUSE HE HATED THAT.  OKAY.
10:11AM   7         (LAUGHTER.)
10:11AM   8             MR. GOZA:  THANK YOU, YOUR HONOR.
10:11AM   9             THE COURT:  THANK YOU.  NEXT.
10:11AM  10             MR. CARTMELL:  GOOD MORNING, YOUR HONOR.
10:11AM  11       MY NAME IS TOM CARTMELL, AND I'M A LAWYER AT WAGSTAFF &
10:11AM  12    CARTMELL AND IN KANSAS CITY, MISSOURI.
10:11AM  13             THE COURT:  HOLD ON A SECOND.  LET ME JUST GET YOUR
10:11AM  14    TAB.
10:11AM  15         ALL RIGHT.  GO AHEAD.
10:12AM  16             MR. CARTMELL:  I'M ALSO SEEKING A POSITION ON THE
10:12AM  17    STEERING COMMITTEE.  I WOULD VERY MUCH LIKE TO HAVE YOUR
10:12AM  18    PERMISSION TO BE ON THE STEERING COMMITTEE.
10:12AM  19       I THINK I CAN OFFER AND CONTRIBUTE A LOT TO THIS CASE.
10:12AM  20    SOME OF THE MORE RECENT CASES THAT I THINK ARE RELEVANT
10:12AM  21    EXPERIENCE HAVE BEEN TALKED ABOUT ARE THE OPIOIDS CASE THAT I
10:12AM  22    WORKED UNDER MS. CONROY ON THAT CASE, AND THEN MOST RECENTLY IN
10:12AM  23    THE JUUL CASE IN JUDGE ORRICK'S COURT.  I THINK THEY'RE BOTH
10:12AM  24    RELEVANT BECAUSE THEY DO OBVIOUSLY DEAL WITH PUBLIC HEALTH
10:12AM  25    ISSUES, THEY DEAL WITH ADDICTION, ESPECIALLY BOTH OF THEM, AND
```

10:12AM  1      THAT'S A LARGE PART OF THIS CASE AND HAVE LOTS OF

10:12AM  2      CHARACTERISTICS IN THOSE CASES THAT ARE SIMILAR AND OVERLAP,

10:12AM  3      AND I'VE LEARNED A TON AND WORKED VERY HARD IN THOSE, AND I

10:12AM  4      THINK THEY WOULD APPLY TO THIS CASE AS WELL.

10:13AM  5          I DO THINK THE SOCIAL MEDIA ASPECT I HAD NOT DONE A TON IN

10:13AM  6      THAT AREA, AND I HAVE LEARNED A TON IN THE JUUL CASE ABOUT

10:13AM  7      SOCIAL MEDIA AND HAVE BEEN RESPONSIBLE FOR THE EXPERTS THAT WE

10:13AM  8      WERE PLANNING TO PUT ON AT TRIAL NOVEMBER 7TH, BUT THAT TRIAL

10:13AM  9      WAS MOVED FOR A PERIOD OF TIME.

10:13AM 10          I THINK I CAN COMMIT FULLY TO THIS CASE AND WOULD LOVE TO

10:13AM 11      COMMIT, YOU KNOW, FULLY TO THIS CASE TO THE EXTENT POSSIBLE AND

10:13AM 12      ALSO MY LAW FIRM AS WELL.  I WOULD COMMIT TO YOU THAT WE WOULD

10:13AM 13      COMMIT ALL OF OUR RESOURCES TO THE EXTENT POSSIBLE.

10:13AM 14              THE COURT:  SO YOU'VE GOT JUUL GOING.  IN YOUR

10:13AM 15      RESUME YOU'VE LISTED 11 DIFFERENT MDL'S.  ARE ALL OF THEM

10:13AM 16      CURRENT?

10:13AM 17              MR. CARTMELL:  NO.  THE MAJORITY OF THEM ARE OVER

10:13AM 18      AND DONE.

10:13AM 19          THE 3M CASE IN FRONT OF JUDGE CASEY RODGERS IS STILL

10:14AM 20      PENDING.  I'M ON THE EXECUTIVE COMMITTEE AND HAVE TRIED -- MY

10:14AM 21      LAW FIRM HAS TRIED THREE OF THOSE CASES.

10:14AM 22              THE COURT:  OKAY.  DID YOU TRY ANY?

10:14AM 23              MR. CARTMELL:  I TRIED TWO, AND MY PARTNER TRIED

10:14AM 24      ONE.

10:14AM 25              THE COURT:  OKAY.

10:14AM 1          MR. CARTMELL:  THE FIRST BELLWETHER IN THAT CASE AND

10:14AM 2     THEN ONE OTHER TWO MONTHS LATER.  THOSE CASES, THE BELLWETHER

10:14AM 3     TRACKS HAVE BEEN SUSPENDED AND THEY'RE IN THE WAVE.  SO I THINK

10:14AM 4     MY WORK IN THAT CASE IS PRIMARILY DONE.

10:14AM 5          YOU NEVER KNOW FOR SURE OBVIOUSLY, BUT IT'S A VERY MATURE

10:14AM 6     CASE, AND I WAS IN CHARGE OF HANDLING EXPERTS, DEFENDING IN

10:14AM 7     DAUBERT AND THE TRIAL TEAM, AND THAT HAS ALL BEEN DONE.

10:14AM 8          THE JUUL CASE, YOU KNOW, OTHERS HAVE TALKED ABOUT, AND

10:14AM 9     THAT CASE IS STILL PENDING.

10:14AM 10         I AM ON THE TRIAL TEAM.  THE FIRST CASE THAT IS SCHEDULED

10:14AM 11    TO GO NOW IN JANUARY AND THERE WAS -- THERE IS ONE IN APRIL AS

10:15AM 12    WELL, AND I'M ON THAT TRIAL TEAM AS WELL.

10:15AM 13         AGAIN, MY WORK TYPICALLY IN THESE CASES IS ON THE TRIAL

10:15AM 14    TEAMS AND DEALING WITH DAUBERT AND THE EXPERTS.  THAT'S MOSTLY

10:15AM 15    BEEN DONE IN THAT CASE, I THINK.  SO I, I FEEL LIKE, OTHER THAN

10:15AM 16    THOSE TRIALS, WHICH OBVIOUSLY I WILL BE COMMITTED TO AND DOING

10:15AM 17    THOSE, BUT I FEEL LIKE OTHER THAN THAT, I CAN COMMIT OTHERS

10:15AM 18    FROM MY FIRM WHO ARE GOING TO BE AVAILABLE TO FILL ANY SPOTS,

10:15AM 19    BUT I ALSO FEEL LIKE GIVEN YOUR CURRENT PLAN, WHICH I

10:15AM 20    UNDERSTAND IS NOT OBVIOUSLY FINAL, BUT WITH THE UP-FRONT MOTION

10:15AM 21    PRACTICE HERE AND A PERIOD OF TIME OBVIOUSLY IN DISCOVERY, THAT

10:15AM 22    MY INVOLVEMENT MAY NOT BE AS MUCH AS EARLY IN THIS CASE.

10:16AM 23         THE COURT:  HAVE YOU TRIED CASES IN NORTHERN

10:16AM 24    CALIFORNIA?

10:16AM 25         MR. CARTMELL:  NO.  I'VE TRIED CASES IN SOUTHERN.

10:16AM 1    ACTUALLY, MY FIRST --

10:16AM 2              THE COURT:  I'M ASKING SPECIFICALLY ABOUT NORTHERN

10:16AM 3    CALIFORNIA.

10:16AM 4              MR. CARTMELL:  I HAVE NOT.

10:16AM 5         I ACTUALLY SETTLED A CASE ON THE SUNDAY NIGHT BEFORE WE --

10:16AM 6    I WAS GOING TO GIVE THE OPENING STATEMENT IN FRONT OF

10:16AM 7    JUDGE BREYER ON MONDAY MORNING IN THE CELEBREX MDL.

10:16AM 8              THE COURT:  OKAY.

10:16AM 9         MR. GOZA, HAVE YOU TRIED ANY CASES IN NORTHERN CALIFORNIA?

10:16AM 10             MR. GOZA:  NO, MA'AM.  NO, YOUR HONOR.

10:16AM 11             THE COURT:  SO I TAKE IT, MR. CARTMELL, THAT IF YOU

10:16AM 12   COULD CHOOSE A ROLE FOR A SUBCOMMITTEE, IT WOULD BE A TRIAL OR

10:16AM 13   AN EXPERT TEAM?  IS THAT WHAT YOU WOULD ASK FOR?

10:16AM 14             MR. CARTMELL:  YES, YOUR HONOR.

10:17AM 15             THE COURT:  OKAY.  LITIGATION FINANCE?

10:17AM 16             MR. CARTMELL:  OUR FIRM HAS NEVER BEEN INVOLVED WITH

10:17AM 17   LITIGATION FINANCE.

10:17AM 18             THE COURT:  OKAY.  THANK YOU, SIR.

10:17AM 19             MR. CARTMELL:  THANK YOU.

10:17AM 20             MS. LIU:  GOOD MORNING, YOUR HONOR.

10:17AM 21             THE COURT:  GOOD MORNING.

10:17AM 22             MS. LIU:  MY NAME IS SIN-TING MARY LIU, AND I'M WITH

10:17AM 23   THE LAW FIRM OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ.

10:17AM 24        EXCUSE ME.  YOUR HONOR, I APPLIED FOR THIS PSC POSITION

10:17AM 25   BECAUSE I AM -- I'VE BEEN -- MY PASSION, MY DEVOTION TO CHILD

10:17AM 1    ADVOCACY WORK DATES BACK TO RIGHT OUT LAW SCHOOL IN 2010, AND I

10:18AM 2    WANT TO CONTINUE WORKING IN THAT FIELD.  I CURRENTLY REPRESENT

10:18AM 3    CLIENTS WHO HAVE BEEN ASSAULTED AS CHILDREN, AND MY WORK, MY

10:18AM 4    EXPERIENCE WITH SECTION 230 ALSO HAS -- GIVES ME THE

10:18AM 5    OPPORTUNITY TO COMBINE BOTH OF MY PASSIONS INTO THIS WORK.

10:18AM 6         I'M HAPPY TO ANSWER ANY QUESTIONS THAT YOU MAY HAVE AS FAR

10:18AM 7    AS THE STRUCTURE OF THE PSC.  I DO THINK THAT A LARGE GROUP

10:18AM 8    WOULD BE BENEFICIAL IN THIS PARTICULAR CASE WITH THE NUMBER OF

10:18AM 9    DEFENDANTS AND WITH THE VARIOUS LEGAL ISSUES THAT WILL BE

10:18AM 10   PRESENTED, EVEN DURING A MOTION TO DISMISS PHASE THAT YOU WERE

10:18AM 11   TALKING ABOUT, I DO THINK THAT HAVING A LARGE BRAINPOWER WOULD

10:18AM 12   BE BENEFICIAL.

10:18AM 13        AS FAR AS LITIGATION FUNDING, WE DO NOT USE ANY LITIGATION

10:18AM 14   FUNDING AT MY FIRM.

10:18AM 15        AS FAR AS THE -- YOU HAD MENTIONED THE DAMAGES VERSUS THE

10:19AM 16   INJUNCTIVE RELIEF, I THINK THAT BOTH OF THOSE APPLY IN THESE

10:19AM 17   CASES, DEPENDING ON THE SPECIFIC CAUSES OF ACTION.  OF COURSE,

10:19AM 18   IN CERTAIN ONES WE'D HAVE TO HAVE SOME PROXIMATE CAUSATION

10:19AM 19   ISSUES, AND ALL OF THOSE ISSUES WOULD BE BEFORE THE COURT.

10:19AM 20        ANY OTHER SPECIFIC QUESTIONS THAT YOU HAVE FOR ME, I'M

10:19AM 21   HAPPY TO ANSWER.

10:19AM 22             THE COURT:  SO IN TERMS OF YOUR CURRENT WORKLOAD, IT

10:19AM 23   LOOKS LIKE YOU'VE GOT SOME CONSOLIDATED CASES IN CALIFORNIA

10:19AM 24   STATE COURT.

10:19AM 25             MS. LIU:  CORRECT, YOUR HONOR.  I AM -- I CURRENTLY

10:19AM  1    LEAD OUR FIRM'S CHILDHOOD SEXUAL ABUSE CASES IN THE JCCP, AND

10:19AM  2    THERE ARE THREE CASES IN JCCP, 5101, 5105, AND 5108.  IT'S ONLY

10:19AM  3    FOR MY FIRM.  I'M NOT ON THE PLAINTIFF LIAISON COUNSEL OR

10:19AM  4    ANYTHING LIKE THAT BEFORE THE JCCP.  I DO HAVE A TEAM OF

10:20AM  5    ATTORNEYS AND A FAIRLY LARGE STAFF THAT ARE ASSISTING ME ON

10:20AM  6    THOSE CASES.

10:20AM  7                THE COURT:  OKAY.  ARE YOU ON ANY OF OR HAVE YOU

10:20AM  8    BEEN APPOINTED TO PARTICIPATE IN ANY YOURSELF?  ANY MDL'S OR

10:20AM  9    STATE CO-LEADS OR STATE STEERING COMMITTEES?

10:20AM 10                MS. LIU:  WHILE I HAVE WORKED EXTENSIVELY IN JCCP'S

10:20AM 11    AND MDL'S, I HAVE NOT EVER ACTUALLY APPLIED FOR A POSITION

10:20AM 12    UNTIL THIS ONE, AND THAT'S BECAUSE OF MY PASSION FOR THIS

10:20AM 13    PARTICULAR CASE.

10:20AM 14                THE COURT:  IF YOU COULD BE ON A SUBCOMMITTEE, WHAT

10:20AM 15    WOULD IT BE?

10:20AM 16                MS. LIU:  CURRENTLY I WOULD LOVE TO BE ON THE MASTER

10:20AM 17    COMPLAINT COMMITTEE.  MY PAST EXPERIENCE IS I DID A LOT OF

10:20AM 18    DISCOVERY AND DEPOSITIONS AND ALSO EXPERT HANDLING.  SO THOSE

10:20AM 19    WOULD BE THE TEAMS THAT I WOULD BE MOST INTERESTED IN,

10:20AM 20    YOUR HONOR.

10:20AM 21                THE COURT:  AND WHAT IS YOUR BACKGROUND ON THE

10:20AM 22    EXPERTS?

10:21AM 23                MS. LIU:  I RECRUITED A LOT OF THE EXPERTS IN OUR

10:21AM 24    TRANSACTIONAL MESH LITIGATION.  I HANDLED PREPARING THEM FOR

10:21AM 25    DEPOSITIONS, I ALSO TOOK A LOT OF DEFENSE EXPERT DEPOSITIONS.

10:21AM 1     SO THAT WOULD BE MORE OF MY EXPERTISE WITH THE EXPERTS.

10:21AM 2            THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

10:21AM 3     TO CONSIDER?

10:21AM 4            MS. LIU:  NO, YOUR HONOR.  THANK YOU.  THANK YOU FOR

10:21AM 5     YOUR TIME AND CONSIDERATION.

10:21AM 6            THE COURT:  THANK YOU.

10:21AM 7            MR. MURA:  GOOD MORNING, YOUR HONOR.

10:21AM 8         ANDRE MURA OF GIBBS LAW GROUP HERE IN OAKLAND, CALIFORNIA.

10:21AM 9            THE COURT:  GOOD MORNING.

10:21AM 10           MR. MURA:  I APPLIED FOR A PSC POSITION.  IF THERE'S

10:21AM 11    A PARTICULAR COMMITTEE THAT I THINK WOULD BEST SUIT ME, IT

10:21AM 12    WOULD BE A LAW AND BRIEFING COMMITTEE OR ANY EARLY PLEADING

10:22AM 13    PREPARATION COMMITTEE.

10:22AM 14        I HAVE DONE EXTENSIVE WORK IN VARIOUS MDL'S IN THAT

10:22AM 15    CAPACITY BOTH IN TEXAS, HERE, AND IN 3M WHERE I BOTH SERVED ON

10:22AM 16    THE PSC AND LONG BRIEFING, AND IN 3M I WAS APPOINTED AND

10:22AM 17    APPLIED ONLY FOR THE LONG BRIEFING COMMITTEE.

10:22AM 18        AND IN THAT CAPACITY I'VE ARGUED MAJOR DISPOSITIVE

10:22AM 19    MOTIONS, PREPARED EARLY COMPLAINTS, MASTER COMPLAINTS, SHORT

10:22AM 20    FORM COMPLAINTS, DONE A LOT OF RESEARCH AND HAVE A LOT OF

10:22AM 21    EXPERIENCE MANAGING LARGE WRITING TEAMS IN THAT CAPACITY, WHICH

10:22AM 22    I THINK WOULD BE VERY HELPFUL HERE.

10:22AM 23        I ALSO HAVE AN APPELLATE BACKGROUND.  BEFORE COMING TO

10:22AM 24    GIBBS LAW GROUP, I WORKED IN WASHINGTON, D.C., THE CENTER FOR

10:22AM 25    CONSTITUTIONAL LITIGATION WHERE MY FOCUS WAS ON CUTTING EDGE

10:22AM   1    ISSUES THAT WERE AFFECTING THE PLAINTIFFS' BAR, AND WE ALSO

10:22AM   2    REPRESENTED THE AMERICAN ASSOCIATION FOR JUSTICE WHEN IT

10:23AM   3    APPEARED AS AMICUS BEFORE THE U.S. SUPREME COURT.  SO I HAD A

10:23AM   4    BIRD'S-EYE VIEW OF ALL SORTS OF CUTTING EDGE, NOVEL ISSUES THAT

10:23AM   5    WERE AFFECTING THE PLAINTIFFS' BAR.

10:23AM   6         I ALSO HAVE EXPERIENCE BRIEFING SECTION 230 AND

10:23AM   7    ANTI-SLAPP.  I HAVE A CASE PENDING NOW BEFORE JUDGE CHEN

10:23AM   8    AGAINST THOMSON REUTERS WHICH INVOLVED THOSE ISSUES AT THE

10:23AM   9    MOTION TO DISMISS STAGE, AND WE PREVAILED ON BOTH OF THOSE

10:23AM   10   ISSUES, AND THE CASE HAD PROCEEDED TO CLASS CERTIFICATION AND

10:23AM   11   WHICH IS ACTUALLY DUE TODAY AND WHICH WE WILL FILE LATER TODAY.

10:23AM   12        SO I THINK ALL OF THOSE EXPERIENCES PARTICULARLY DEALING

10:23AM   13   WITH VERY COMPLEX LEGAL BRIEFING ARE ISSUES THAT I'M INTERESTED

10:23AM   14   IN IN WORKING ON THIS CASE AND WHERE I THINK I CAN CERTAINLY

10:23AM   15   ADD VALUE.

10:23AM   16        THE COURT:  AND HOW DID YOU GET -- HOW DID YOU LEARN

10:23AM   17   ABOUT THIS?  HOW IS IT THAT YOU BECAME INVOLVED?

10:23AM   18        MR. MURA:  I LEARNED ABOUT THIS CASE IN TALKING TO

10:23AM   19   SOME OF MY COLLEAGUES WHO I KNOW HERE WHO HAVE PRESENTED TODAY.

10:23AM   20   WE'VE WORKED ON OTHER MDL'S BEFORE, AND SO WE ALWAYS TALK ABOUT

10:24AM   21   WHAT THE OTHER IS WORKING ON, AND I WAS VERY INTERESTED AND

10:24AM   22   SORT OF ASKED TO PARTICIPATE BECAUSE OF MY LEGAL BRIEFING

10:24AM   23   BACKGROUND, AND I HAD TALKED TO THEM ABOUT MY EXPERIENCE

10:24AM   24   RESEARCHING AND WRITING ABOUT SECTION 230.

10:24AM   25        AND ALSO, I'VE ARGUED A LOT OF PREEMPTION MOTIONS BOTH IN

10:24AM 1     THE PHARMACEUTICAL CONTEXT AND JURISDICTIONAL ISSUES.  WHEN I

10:24AM 2     WAS AT THE CENTER ONE OF MY LEAD CASES WAS A CASE THAT WENT UP

10:24AM 3     TO THE SUPREME COURT WHERE I DID THE MERITS BRIEFING AT THAT

10:24AM 4     STAGE, IT WAS IN THE CATHETER CASE AND SO ALL OF THAT, I THINK,

10:24AM 5     MADE ME A NATURAL FIT FOR SORT OF BEING ASKED IF I WAS

10:24AM 6     INTERESTED IN WORKING ON THIS CASE, AND I WAS VERY EXCITED BY

10:24AM 7     THE INDIVIDUALS WHO WERE WORKING ON THIS CASE.  I HAVE WORKED

10:24AM 8     WITH THEM BEFORE.

10:24AM 9         I WAS EXCITED TO SEE A YOUNG DIVERSE GROUP.  I HAVE SPOKEN

10:24AM 10    ABOUT DIVERSITY MOST RECENTLY AT A SYMPOSIUM HELD BY THE CIVIL

10:24AM 11    JUSTICE RESEARCH INITIATIVE HERE AT BERKELEY LAW SCHOOL WHERE I

10:25AM 12    WAS A PANELIST AND TALKED ABOUT THE IMPORTANCE OF DIVERSITY IN

10:25AM 13    LEADERSHIP IN MULTIDISTRICT LITIGATION.  I TRIED TO BE ACTIVE

10:25AM 14    IN MY OWN BACKGROUND.

10:25AM 15        THE COURT:  AND WHY DO YOU THINK IT'S IMPORTANT?

10:25AM 16        MR. MURA:  I THINK DIVERSITY IS IMPORTANT BECAUSE IT

10:25AM 17    BRINGS A BROAD SET OF EXPERIENCES AND IT ALSO -- I THINK IT'S

10:25AM 18    IMPORTANT IN MULTIDISTRICT LITIGATION TO HAVE ATTORNEYS WHO ARE

10:25AM 19    REPRESENTING SORT OF THESE NATIONAL PROBLEMS TO REFLECT THE

10:25AM 20    CLIENT BASE THAT THEY'RE REPRESENTING.

10:25AM 21        THE COURT:  HOW?  CAN YOU EXPLAIN TO ME YOUR

10:25AM 22    DIVERSITY?

10:25AM 23        MR. MURA:  I'M A FIRST GENERATION AMERICAN.  I'M

10:25AM 24    ALSO LGBTQ, AND I MOST RECENTLY, FOR EXAMPLE, SERVED AS THE

10:25AM 25    CO-CHAIR OF THE AMERICAN ASSOCIATION FOR JUSTICES LBGTQ

| | | |
|---|---|---|
| 10:25AM | 1 | COMMITTEE.  SO I VERY MUCH TRY TO SORT OF WORK WITH OTHER |
| 10:25AM | 2 | MEMBERS OF THAT COMMUNITY, TO PROMOTE THEM, AND TO PROVIDE THE |
| 10:25AM | 3 | OPPORTUNITIES IN THE LEGAL FIELD AND SO TO SORT OF LEARN AND |
| 10:26AM | 4 | NETWORK AS WELL. |
| 10:26AM | 5 | MY FIRM DID WORK ON A WHITE PAPER THAT WAS PRESENTED |
| 10:26AM | 6 | THROUGH G.W. LAW SCHOOL, WHICH IS ALSO MY ALMA MATER, THAT |
| 10:26AM | 7 | TALKED ABOUT THIS AS WELL AND UNDERREPRESENTATION FOR GENDER |
| 10:26AM | 8 | AND PEOPLE OF COLOR AND LGBTQ.  SO I TRY TO DO WORK IN THAT |
| 10:26AM | 9 | AREA, AND I'M VERY PROUD OF THAT WORK. |
| 10:26AM | 10 | THE COURT:  OKAY.  LITIGATION FINANCING? |
| 10:26AM | 11 | MR. MURA:  OUR FIRM DOES NOT USE LITIGATION |
| 10:26AM | 12 | FINANCING. |
| 10:26AM | 13 | THE COURT:  OKAY.  ANYTHING ELSE YOU WANT ME TO |
| 10:26AM | 14 | THINK ABOUT? |
| 10:26AM | 15 | MR. MURA:  NO, YOUR HONOR.  UNLESS YOUR HONOR HAS |
| 10:26AM | 16 | ANY QUESTIONS, I'M HAPPY TO -- |
| 10:26AM | 17 | THE COURT:  NO. |
| 10:26AM | 18 | MR. MURA:  OKAY.  THANK YOU SO MUCH. |
| 10:26AM | 19 | THE COURT:  THANK YOU. |
| 10:26AM | 20 | MS. BOLDT:  GOOD MORNING, YOUR HONOR. |
| 10:26AM | 21 | PAIGE BOLDT FROM THE LAW FIRM OF WATTS GUERRA. |
| 10:26AM | 22 | THE COURT:  OKAY.  GOOD MORNING. |
| 10:26AM | 23 | MS. BOLDT:  GOOD MORNING.  AS I'VE MENTIONED IN MY |
| 10:27AM | 24 | PAPERS, I HAVE BEEN PRACTICING MASS TORT IN MULTIDISTRICT |
| 10:27AM | 25 | LITIGATION FOR PRODUCT LIABILITY CASES FOR TEN YEARS, |

10:27AM 1   REPRESENTING CLIENTS ACROSS THE COUNTRY IN SEVERAL MDL'S BUT

10:27AM 2   ONLY APPOINTED IN ONE FOR THE ZANTAC LITIGATION WHERE I AM

10:27AM 3   CURRENTLY WORKING ON BOTH DEPOSITION DISCOVERY AND BELLWETHER

10:27AM 4   LITIGATION OR COMMITTEE STRATEGY AND WOULD PRIMARILY SEE MY

10:27AM 5   ROLE, AS A CO-LEAD APPLICANT MENTIONED, YOU GET EXPERTS IN

10:27AM 6   CERTAIN DEFENDANTS, YOU GET PEOPLE WHO SPECIALIZE IN CERTAIN

10:27AM 7   DISCOVERY MATTERS AND GOING THROUGH THE DOCUMENTS THEMSELVES

10:27AM 8   AND BECOMING THE GO-TO PERSON ON THOSE TOPICS, AND I COULD

10:27AM 9   DEFINITELY SEE MYSELF DOING THAT FOR EITHER DISCOVERY OR I

10:27AM 10  IMAGINE THERE'S GOING TO BE A LOT OF ESI DISCUSSIONS AS WELL

10:27AM 11  AND I WOULD ASSIST IN THAT IN THIS LITIGATION.

10:27AM 12          THE COURT:  AND YOU SAID YOU'RE ON THE ZANTAC

10:27AM 13  COMMITTEE?

10:27AM 14          MS. BOLDT:  I AM.

10:27AM 15          THE COURT:  OKAY.  AND WHAT IS YOUR CURRENT ROLE

10:27AM 16  THERE AND DO YOU HAVE TIME?

10:28AM 17          MS. BOLDT:  YES.  I'M ON THE BELLWETHER COMMITTEE,

10:28AM 18  AND I'M A MEMBER OF ASSISTING WITH THE SCIENCE TEAM AS WELL AS

10:28AM 19  THE DISCOVERY TEAM.  AND I CERTAINLY HAVE TIME.

10:28AM 20      WE HAVE GONE THROUGH SOME OF THE DAUBERT ISSUES, AND WE'RE

10:28AM 21  WAITING ON MOTIONS THERE, BUT WE HAVE A WHOLE COMMITTEE PEOPLE

10:28AM 22  ON THE BELLWETHER GROUP.  AS WE GET INTO MORE CASE SPECIFIC

10:28AM 23  TOPICS, I IMAGINE THAT WORK WILL BE DISTRIBUTED EVENLY AMONGST

10:28AM 24  THAT FULL COMMITTEE.

10:28AM 25          THE COURT:  SO YOU SAID THAT YOU HADN'T BEEN

```
10:28AM   1        APPOINTED EXCEPT FOR ZANTAC?

10:28AM   2               MS. BOLDT:  I'VE ONLY BEEN POINTED BY THE COURT IN

10:28AM   3        ZANTAC.  I'VE DONE A LOT AD HOC PROJECTS FOR OTHER COMMITTEES

10:28AM   4        OR FOR OTHER MDL'S.

10:28AM   5               THE COURT:  OKAY.  SO THE OTHER FOUR THAT ARE LISTED

10:28AM   6        ARE JUST AD HOC WORK?

10:28AM   7               MS. BOLDT:  CORRECT.

10:28AM   8               THE COURT:  I'M SORRY, YOU SAID WHAT?

10:28AM   9               MS. BOLDT:  AD HOC WORK, YES, YOUR HONOR.

10:29AM  10               THE COURT:  LITIGATION FINANCE?

10:29AM  11               MS. BOLDT:  WE DO NOT HAVE LITIGATION FINANCE FOR

10:29AM  12        THIS CASE, YOUR HONOR.  MY UNDERSTANDING IS WE DON'T HAVE ANY

10:29AM  13        CURRENTLY, BUT I DON'T KNOW IF WE'VE DONE THAT IN THE PAST.

10:29AM  14               THE COURT:  AND YOU DO LIVE IN SAN ANTONIO.

10:29AM  15               MS. BOLDT:  I DON'T ANYMORE.  I MOVED UP TWO YEARS

10:29AM  16        AGO.  I WAS IN FORT WORTH.

10:29AM  17               THE COURT:  YOUR LETTERHEAD SAYS THAT.

10:29AM  18               MS. BOLDT:  YES.  I WORK REMOTELY, SO I TRY NOT TO

10:29AM  19        PUT MY HOME ADDRESS.

10:29AM  20               THE COURT:  THAT MAKES SENSE.

10:29AM  21            ALL RIGHT.  ANYTHING ELSE THAT YOU WANT ME TO CONSIDER IN

10:29AM  22        TERMS OF YOUR APPLICATION?

10:29AM  23               MS. BOLDT:  NO, YOUR HONOR.  IT SEEMS LIKE YOU'VE

10:29AM  24        REVIEWED IT EXTENSIVELY.

10:29AM  25               THE COURT:  ALL RIGHT.  THANK YOU.
```

| | | |
|---|---|---|
| 10:30AM | 1 | MR. BILSBORROW:  GOOD MORNING, YOUR HONOR. |
| 10:30AM | 2 | JAMES BILSBORROW OF WEITZ AND LUXENBERG. |
| 10:30AM | 3 | THE COURT:  GOOD MORNING.  OKAY.  GO AHEAD. |
| 10:30AM | 4 | MR. BILSBORROW:  YOUR HONOR, I'M APPLYING FOR A |
| 10:30AM | 5 | POSITION WITH THE PLAINTIFFS STEERING COMMITTEE IN THIS CASE. |
| 10:30AM | 6 | I HAVE EXPERIENCE PLAYING A ROLE ON THE PLAINTIFFS' STEERING |
| 10:30AM | 7 | COMMITTEE IN THE DICAMBA HERBICIDES LITIGATION.  D-I-C-A-M-B-A, |
| 10:30AM | 8 | HERBICIDES LITIGATION. |
| 10:30AM | 9 | IN THAT LITIGATION I WAS A MEMBER OF THE PLAINTIFFS' |
| 10:30AM | 10 | EXECUTIVE COMMITTEE.  I OVERSAW AND ORGANIZED ALL OF THE |
| 10:30AM | 11 | PERCIPIENT COMPANY DEPOSITIONS OF THE DEFENDANTS, I TOOK MANY |
| 10:30AM | 12 | OF THOSE DEPOSITIONS MYSELF, BUT I ALSO ORGANIZED THAT EFFORT |
| 10:30AM | 13 | ON THE PLAINTIFFS' SIDE.  I ALSO NEGOTIATED MANY OF THE EARLY |
| 10:30AM | 14 | DISCOVERY ORDERS, THE SAME TYPES OF ORDERS THAT WOULD BE |
| 10:30AM | 15 | RELEVANT HERE IN THIS CASE, PROTECTIVE ORDERS, ESI PROTOCOLS, |
| 10:30AM | 16 | TARP PROTOCOLS, I WAS PART OF THAT TEAM, I CO-LED THAT TEAM. |
| 10:31AM | 17 | IN ADDITION, I HAVE EXTENSIVE EXPERIENCE IN LAW AND |
| 10:31AM | 18 | BRIEFING COMMITTEES.  I CLERKED FOR TWO FEDERAL JUDGES, AND |
| 10:31AM | 19 | DURING MY CLERKSHIP IN THE UNITED STATES DISTRICT COURT IN |
| 10:31AM | 20 | PENNSYLVANIA, WE HAD A LARGE ANTITRUST MDL, SO I'M PRETTY |
| 10:31AM | 21 | FAMILIAR WITH HOW JUDGES THINK ABOUT THESE THINGS BEHIND THE |
| 10:31AM | 22 | SCENES. |
| 10:31AM | 23 | IN ANY OF THOSE ROLES, I THINK I WOULD BE VALUE ADDED IN |
| 10:31AM | 24 | AN MDL CASE SUCH AS THIS. |
| 10:31AM | 25 | I WOULD ALSO SAY THAT I THINK THE LEADERSHIP STRUCTURE |

10:31AM   1    THAT HAS BEEN PROPOSED HERE, WHILE IT MAY BE LARGE, IT IS

10:31AM   2    APPROPRIATE.  MY FIRM HAS BEEN INVOLVED IN MANY OF THE LARGEST

10:31AM   3    MASS TORT LITIGATIONS OVER THE LAST TWO DECADES AND THEY

10:31AM   4    REQUIRE A LOT OF WORK, EVEN IF THEY DON'T SEEM LIKE THAT AT THE

10:31AM   5    FOREFRONT, I KNOW IN THIS CASE EACH ONE OF THE PROPOSED

10:31AM   6    CO-LEADS HAS BEEN ON THE PHONE, HAS SPENT COUNTLESS HOURS ON

10:31AM   7    THE PHONE WITH PLAINTIFFS' COUNSEL TRYING TO ENSURE THAT WE

10:31AM   8    HAVE A UNIFIED STRATEGY, WE'RE NOT ONE LAW FIRM, WE CAN'T -- WE

10:32AM   9    DON'T GET MARCHING ORDERS FROM ONE OR TWO MANAGING PARTNERS.

10:32AM  10    AND SO IT TAKES A LOT OF WORK FOR THE STRATEGY TO COME TOGETHER

10:32AM  11    AND TO COALESCE.

10:32AM  12        I KNOW EACH -- I'VE PERSONALLY SPOKEN WITH EACH ONE OF THE

10:32AM  13    CO-LEADS IN THIS CASE AND STRATEGIZED WITH THEM, AND SO I THINK

10:32AM  14    THEY'VE DONE A TREMENDOUS JOB UP-FRONT, AND I KNOW THEY'LL

10:32AM  15    CONTINUE TO DO A TREMENDOUS JOB IF APPOINTED.

10:32AM  16        MY FIRM DOES NOT TAKE LITIGATION FUNDING.

10:32AM  17        AND I'M HAPPY TO ANSWER ANY QUESTIONS THAT YOUR HONOR HAS.

10:32AM  18            THE COURT:  HAVE YOU LITIGATED IN THE NORTHERN

10:32AM  19    DISTRICT?

10:32AM  20            MR. BILSBORROW:  YES, YOUR HONOR.  MY LAW PARTNER,

10:32AM  21    ROBIN GREENWALD, IS CO-LEAD COUNSEL IN A ROUNDUP LITIGATION.

10:32AM  22    I'VE WORKED EXTENSIVELY ON THAT LITIGATION.  I WORKED UP

10:32AM  23    SEVERAL OF THE SCIENTIFIC EXPERTS, AND I'M VERY FAMILIAR WITH

10:32AM  24    AT LEAST JUDGE CHHABRIA'S OR HIS PRACTICES IN HIS COURTROOM.

10:33AM  25            THE COURT:  OKAY.  AND WHY THIS CASE?

| | | |
|---|---|---|
| 10:33AM | 1 | MR. BILSBORROW:  YOUR HONOR, THIS CASE IS |
| 10:33AM | 2 | INTERESTING TO ME FOR A LOT OF THE REASONS THAT IT'S BEEN |
| 10:33AM | 3 | ENUNCIATED HERE ALREADY.  I THINK IT'S AN INCREDIBLY IMPORTANT |
| 10:33AM | 4 | ISSUE. |
| 10:33AM | 5 | WHILE I PERSONALLY HAVEN'T DONE A LOT OF LITIGATION IN THE |
| 10:33AM | 6 | SOCIAL MEDIA SPACE, I HAVE A LOT OF EXPERIENCE IN PRODUCTS |
| 10:33AM | 7 | CASES AND THAT COVER A WIDE RANGE OF DIFFERENT PRODUCTS, CROP |
| 10:33AM | 8 | PROTECTION PRODUCTS, CARS, COSMETICS, AND I SEE SIMILARITIES |
| 10:33AM | 9 | WITH THIS AND THOSE CASES, BIG DEFENDANTS, A GROUNDBREAKING |
| 10:33AM | 10 | PRODUCT THAT IS HAVING HUGE IMPACTS ON SOCIETY, AND THAT'S THE |
| 10:33AM | 11 | REASON THAT I BECAME A PLAINTIFFS' LAWYER, TO WORK AND |
| 10:33AM | 12 | REPRESENT CLIENTS WHO GOT INJURED BY THOSE TYPES OF PRODUCTS. |
| 10:33AM | 13 | THE COURT:  THE DEFENDANTS SAY IT'S NOT A PRODUCT. |
| 10:33AM | 14 | WHY DO YOU THINK IT IS A PRODUCT? |
| 10:33AM | 15 | MR. BILSBORROW:  WELL, IT'S A PRODUCT BECAUSE, YOU |
| 10:34AM | 16 | KNOW, IT'S REALLY NO DIFFERENT THAN ANY OTHER "THING," FOR LACK |
| 10:34AM | 17 | OF A BETTER WORD, THAT INDIVIDUALS USE, RIGHT, AND INTERACT |
| 10:34AM | 18 | WITH AND IT'S SOMETHING THAT BECOMES AN INTEGRAL PART OF THEIR |
| 10:34AM | 19 | LIFE? |
| 10:34AM | 20 | SO I THINK THERE'S CASE LAW IN VARIOUS STATES THAT HAVE |
| 10:34AM | 21 | HELD THAT THIS TYPE OF PRODUCT IS A PRODUCT. |
| 10:34AM | 22 | THE DEFENDANTS CALL THEMSELVES PRODUCT ENGINEERS, THEY |
| 10:34AM | 23 | REFER TO THIS AS A PRODUCT, AND I THINK THROUGH THE BRIEFING WE |
| 10:34AM | 24 | WILL SHOW THAT THIS IS A PRODUCT. |
| 10:34AM | 25 | THE COURT:  OKAY. |

10:34AM 1          MR. BILSBORROW:  THANK YOU, YOUR HONOR.

10:34AM 2          MR. BERGMAN:  MAY IT PLEASE THE COURT, I'M

10:34AM 3   MATTHEW BERGMAN, AND I'M FOUNDER OF THE SOCIAL MEDIA VICTIMS

10:34AM 4   LAW CENTER.

10:34AM 5          I FOUNDED THIS LAW FIRM A LITTLE OVER A YEAR AGO IN

10:35AM 6   RESPONSE TO THE MENTAL HEALTH CRISIS THAT OUR CHILDREN ARE

10:35AM 7   EXPERIENCING.  I WANTED TO TAKE MY 25 YEARS OF EXPERIENCE

10:35AM 8   REPRESENTING VICTIMS OF PRODUCT LIABILITY AND TRY TO DO

10:35AM 9   SOMETHING SO WE STOP HAVING THE KIND OF VICTIMS THAT WE HAVE.

10:35AM 10          I'M DEEPLY INVOLVED IN THE LITIGATION.  I CURRENTLY

10:35AM 11   REPRESENT 1,163 PARENTS WHOSE CHILDREN HAVE EITHER PASSED AWAY

10:35AM 12   THROUGH SOCIAL MEDIA OR HAVE HAD A DIAGNOSIS AND SEEN BY A

10:35AM 13   MENTAL HEALTH OR A MEDICAL PRACTITIONER IN REGARD TO THAT.

10:35AM 14          I FILED THE FIRST CASE INVOLVING YOUTH MENTAL HEALTH AND

10:35AM 15   SOCIAL MEDIA, THE FIRST PRODUCT LIABILITY CASE IN THIS

10:35AM 16   DISTRICT.  THAT WAS THE RODRIGUEZ CASE.  OUR FIRM WAS

10:35AM 17   RESPONSIBLE FOR DEVELOPING THE PRODUCT LIABILITY THEORIES THAT

10:35AM 18   WE BELIEVE ARE RESONANT, AND WE'VE BEEN ABLE TO, THROUGH THIS

10:35AM 19   WORK, RETAIN SOME OF THE LEADING EXPERTS IN THE FIELD.  WE'RE

10:36AM 20   WORKING VERY CLOSELY WITH THESE EXPERTS ALREADY IN DEVELOPING

10:36AM 21   VARIOUS FORMS OF EXPERT TESTIMONY FROM ALGORITHMIC DESIGN TO

10:36AM 22   SUICIDALITY TO YOUTH MENTAL HEALTH TO ADDICTION.

10:36AM 23          TOGETHER WITH MY PARTNER, LAURA MARQUEZ-GARRETT, WE HAVE

10:36AM 24   DEVELOPED A SPOKE COMPUTER PLATFORM THAT CAN AMALGAMATE

10:36AM 25   MULTIPLE SOCIAL MEDIA PLATFORMS INVOLVING A CHILD'S SOCIAL

10:36AM 1    MEDIA DATA AND PULL OUT MALIGN CONTENT AND VARIOUS OTHER THINGS

10:36AM 2    THAT DEMONSTRATE CAUSATION.

10:36AM 3        YOU KNOW, MY BACKGROUND IS NOT IN MASS TORT PER SE.  MY

10:36AM 4    BACKGROUND HAS BEEN AS A PRODUCT LIABILITY LAWYER ESSENTIALLY

10:36AM 5    POURING NEW WINE IN OLD BOTTLES ADAPTING THE LAW.  WE'RE IN A

10:36AM 6    NEW FIELD OF LAW THAT IS GOING TO BE CHALLENGING FOR MY

10:36AM 7    COLLEAGUES ON THE OTHER SIDE, AND IT'S GOING TO BE CHALLENGING

10:37AM 8    FOR THE COURT, AND IT'S GOING TO BE CHALLENGING FOR US.

10:37AM 9        I THINK THAT MY 25 YEARS OF WORK THAT HAS BEEN

10:37AM 10   DEMONSTRATED BY MY APPELLATE RECORD INDICATES THAT I HAVE THE

10:37AM 11   ABILITY TO BE CREATIVE AND ADAPT TRADITIONAL CONCEPTS OF

10:37AM 12   PRODUCT LIABILITY TO THIS VERY UNIQUE PROBLEM THAT WE HAVE AS A

10:37AM 13   SOCIETY.

10:37AM 14       I AM DEEPLY COMMITTED TO THIS WORK, JUDGE.  I HAVE NEVER

10:37AM 15   IN 30 YEARS CONFRONTED AND DEALT WITH PLAINTIFFS LESS CONCERNED

10:37AM 16   ABOUT MONEY AND MORE CONCERNED ABOUT DOING SOMETHING, AND SO

10:37AM 17   I'VE DEVOTED -- I'VE TAKEN UP COUNSEL STATUS WITH MY FORMER LAW

10:37AM 18   FIRM AND WOULD LIKE TO DEVOTE THE NEXT 5 TO 10 YEARS OF MY

10:37AM 19   CAREER MAKING A DIFFERENCE.

10:37AM 20       THE COURT:  THANK YOU, MR. BERGMAN.

10:37AM 21       YOUR APPLICATION IS DIFFERENT THAN OTHERS, BUT IT SEEMS

10:37AM 22   LIKE THIS IS ALL YOU DO.

10:37AM 23       MR. BERGMAN:  I AM DOING A LITTLE BIT OF NEGOTIATING

10:37AM 24   FOR MY PRIOR FIRM, BUT, YEAH, THIS IS ALL I DO.

10:37AM 25       THE COURT:  OKAY.  THANK YOU, SIR.

10:37AM  1          MR. BERGMAN:  JUDGE, I DO NOT -- WELL, I AM MY OWN

10:38AM  2     LITIGATION FUNDING.

10:38AM  3          THE COURT:  THAT WAS MY SENSE.

10:38AM  4       (LAUGHTER.)

10:38AM  5          THE COURT:  GOOD MORNING.

10:38AM  6          MS. GOLDBERG:  GOOD MORNING, YOUR HONOR.

10:38AM  7       I'M CARRIE GOLDBERG OF C.A. GOLDBERG PLLC IN BROOKLYN.

10:38AM  8     I'M APPLYING FOR A PSC POSITION.

10:38AM  9          SIX MONTHS AGO I DIDN'T EVEN KNOW WHAT THE LETTERS MDL

10:38AM 10     STOOD FOR, BUT REPRESENTING VICTIMS AGAINST BIG TECH IS MY

10:38AM 11     LIFE'S WORK.  I FOUNDED MY LAW FIRM IN 2014 AFTER I HAD BEEN

10:38AM 12     THE VICTIM OF A MAN WHO WAS AGGRESSING AGAINST ME ON SOCIAL

10:38AM 13     MEDIA.  AND I BASICALLY GO TO SLEEP EVERY NIGHT THINKING ABOUT

10:38AM 14     SECTION 230, AND I WAKE UP EVERY MORNING THINKING ABOUT IT.

10:39AM 15          MY CASE HERRICK V. GRINDR IN 2017 WAS THE FIRST IN THE

10:39AM 16     COUNTRY TO BRING -- TO SUE A PLATFORM FOR DEFECTIVE DESIGN AND

10:39AM 17     MANUFACTURE, AND WE LOST UNDER SECTION 230 IN A REALLY MAJOR

10:39AM 18     WAY.  WE WENT UP AND APPEALED IT TO THE SECOND CIRCUIT, TRIED

10:39AM 19     TO GET CERT FROM THE SUPREME COURT, LOST THAT, BUT THEN THAT

10:39AM 20     CASE WAS CITED IN THE MALWAREBYTES DISCUSSION BY

10:39AM 21     JUSTICE CLARENCE THOMAS AS ONE OF THE REASONS THAT SECTION 230

10:39AM 22     HAS BEEN BLOATED WELL BEYOND WHAT THE PEOPLE INTENDED IN 1996.

10:39AM 23          SINCE THEN MY CASE A.M. VERSUS OMEGLE OVERCAME A

10:39AM 24     SECTION 230 12(B)(6) MOTION, AND IT'S ONE OF THE ONLY ONES IN

10:39AM 25     THE COUNTRY THAT HAS.

| | | |
|---|---|---|
| 10:39AM | 1 | THE COURT:  SO YOU'VE -- AND THAT WAS JUDGE MOSMAN'S |
| 10:40AM | 2 | DECISION? |
| 10:40AM | 3 | MS. GOLDBERG:  YES.  AND BY THE WAY, WE'RE GOING TO |
| 10:40AM | 4 | BE ARGUING THE PRODUCT VERSUS SERVICE ISSUE IN ABOUT A MONTH |
| 10:40AM | 5 | BECAUSE DEFENDANTS FORGOT TO BRING THAT IN THE ORIGINAL |
| 10:40AM | 6 | 12(B)(6). |
| 10:40AM | 7 | AND I WILL ADD ON TO MY COLLEAGUE'S STATEMENT THAT THESE |
| 10:40AM | 8 | COMPANIES ARE BEING SUED AS PRODUCTS.  THEY MAY ALSO BE |
| 10:40AM | 9 | SERVICES, BUT THESE ARE TANGIBLE THINGS THAT WE CAN SEE AND |
| 10:40AM | 10 | HEAR AND MOVE AND WE'RE TALKING ABOUT -- AND THEY'RE |
| 10:40AM | 11 | DOWNLOADABLE -- I'LL SAVE THAT FOR THE BRIEFING BUT -- |
| 10:40AM | 12 | THE COURT:  OKAY.  LITIGATION FUNDING? |
| 10:40AM | 13 | MS. GOLDBERG:  NO LITIGATION FUNDING. |
| 10:40AM | 14 | LIKE MR. BERGMAN, I OWN MY OWN SHOP AND FUND EVERYTHING |
| 10:40AM | 15 | MYSELF. |
| 10:40AM | 16 | THE COURT:  AND IN TERMS OF SUBCOMMITTEE WORK, WHAT |
| 10:40AM | 17 | WOULD YOU DO? |
| 10:40AM | 18 | MS. GOLDBERG:  I'D LIKE TO BE WORKING ON THE LAW AND |
| 10:41AM | 19 | THE MOTIONS AND MAKING THE MOST GORGEOUS MASTER COMPLAINT |
| 10:41AM | 20 | IMAGINABLE. |
| 10:41AM | 21 | AND BY THE WAY, I ALSO THINK WE NEED THIS BIG GROUP. |
| 10:41AM | 22 | WE'RE DEALING WITH THE BIGGEST COMPANIES IN THE HISTORY OF THE |
| 10:41AM | 23 | WORLD, AND WE NEED THIS KIND OF POWER ON OUR SIDE. |
| 10:41AM | 24 | THE COURT:  OKAY.  THANK YOU. |
| 10:41AM | 25 | MS. GOLDBERG:  THANK YOU. |

10:41AM 1          THE COURT:  WE'LL GO THROUGH THIS NEXT SET, AND

10:41AM 2     WE'LL TAKE A BREAK SO MY COURT REPORTER GETS A BREAK.

10:41AM 3          MS. PAULOS:  MY NAME IS EMMIE PAULOS, AND I'M FROM

10:41AM 4     LEVIN, PAPANTONIO & RAFFERTY.

10:41AM 5          THE COURT:  GOOD MORNING.

10:41AM 6          MS. PAULOS:  HI.  GOOD MORNING.

10:41AM 7     I AM APPLYING FOR THE PLAINTIFFS' STEERING COMMITTEE

10:41AM 8     POSITION BECAUSE I BELIEVE AND HOPE THAT MY BACKGROUND COULD

10:41AM 9     LEND ITSELF USEFUL TO THIS PARTICULAR LITIGATION.

10:42AM 10     FOR SEVERAL YEARS NOW I'VE BEEN WORKING WITH VICTIMS OF

10:42AM 11     HUMAN TRAFFICKING AND IN THOSE CASES WE DO COME ACROSS ISSUES

10:42AM 12     CONCERNING SECTION 230 OF THE C.D.A.

10:42AM 13     ADDITIONALLY, I'VE HAD EXPOSURE AND A PRETTY SOLID

10:42AM 14     UNDERSTANDING OF HOW TO DEAL WITH VERY SENSITIVE ISSUES.  IN

10:42AM 15     TERMS OF DISCOVERY, OFTENTIMES THE CASES THAT DO INVOLVE SEXUAL

10:42AM 16     EXPLOITATION YOU'LL COME ACROSS WHAT IS CALLED CSAM, THAT'S

10:42AM 17     CHILD SEXUAL ABUSE MATERIALS, AND WE WORK WITH VARIOUS

10:42AM 18     ORGANIZATIONS IN THAT RESPECT, SO I FEEL LIKE THAT IS A UNIQUE

10:42AM 19     QUALIFICATION THAT I WOULD BE ABLE TO BRING.

10:42AM 20     ADDITIONALLY, WE DO WORK WITH VICTIMS OF HUMAN

10:42AM 21     TRAFFICKING, SO WE DO HAVE A VERY TRAUMA INFORMED APPROACH WITH

10:42AM 22     DEALING WITH OUR CLIENTS.

10:43AM 23     HERE THE MAJORITY OF THE CLIENTS ARE EITHER CHILDREN OR

10:43AM 24     YOUNG ADOLESCENTS AND THEY HAVE VERY SEVERE INJURIES IN TERMS

10:43AM 25     OF SUICIDE OR SUICIDE IDEATION, SELF-CUTTING, EATING DISORDERS,

```
10:43AM   1    AND I DO FEEL THAT EXPERTISE OF HAVING THAT TRAUMA INFORMED

10:43AM   2    APPROACH IS -- WOULD LEND ITSELF WELL TO THIS DEMOGRAPHIC OF

10:43AM   3    CLIENTS, ESPECIALLY THE CHILDREN THAT WE ARE WORKING WITH IN

10:43AM   4    THIS LITIGATION.

10:43AM   5         ADDITIONALLY, I DO HAVE THE TIME TO FULLY COMMIT MYSELF,

10:43AM   6    MY SKILLS AND MY RESOURCES, TO THIS LITIGATION.

10:43AM   7         TO ANSWER YOUR QUESTION ABOUT LEADERSHIP STRUCTURE, I DO

10:43AM   8    FEEL LIKE HAVING THE VARIOUS COMMITTEES WITHIN THE ORGANIZATION

10:43AM   9    WOULD BE BENEFICIAL.

10:43AM  10         I KNOW IF WE WERE TO PUT IN THE FOREFRONT THE MOTION TO

10:43AM  11    DISMISS, THERE WAS WORK THAT STILL REMAINS TO BE DONE.  I THINK

10:44AM  12    MY COLLEAGUES HAVE ADDRESSED DISCOVERY, BUT I ALSO THINK THAT

10:44AM  13    WORKING WITH EXPERTS IS VERY IMPORTANT.

10:44AM  14         I THINK THAT IT WILL HELP NARROW THE ISSUES IN THIS

10:44AM  15    LITIGATION.

10:44AM  16         ADDITIONALLY, I THINK THAT THE WORK NEEDS TO BE DONE IN

10:44AM  17    CASE WE DO, AND HOPEFULLY WE WILL, OVERCOME THE MOTION TO

10:44AM  18    DISMISS SO THAT THERE ISN'T ANY DELAY TIME IN THAT THE WORK HAS

10:44AM  19    BEEN DONE AND WE ARE READY TO CHARGE FORWARD BECAUSE THIS IS A

10:44AM  20    VERY SENSITIVE MATTER.  WE CAN'T WASTE A SECOND TO HELP THESE

10:44AM  21    INDIVIDUALS AND TO EFFECTUATE CHANGE IF CHANGE IS POSSIBLE.

10:44AM  22              THE COURT:  AND THEN YOU REPRESENT TWO OF THE CASES

10:44AM  23    OR MORE THAN TWO?

10:44AM  24              MS. PAULOS:  TWO OF THE CASES.  I DO HAVE -- OUR

10:45AM  25    FIRM HAS ACTIVELY BEEN INVOLVED FOR SEVERAL MONTHS.  I AM
```

10:45AM 1    ACTIVELY WORKING WITH OTHER FAMILIES CAREFULLY VETTING CASES

10:45AM 2    AND SEEING IF THEY'RE A GOOD FIT FOR THIS LITIGATION, SO I DO

10:45AM 3    ANTICIPATE THAT WE WILL BE FILING MORE CASES IN THE FUTURE.

10:45AM 4            THE COURT:  LITIGATION FUNDING?

10:45AM 5            MS. PAULOS:  NO LITIGATION FUNDING, YOUR HONOR.

10:45AM 6            THE COURT:  COMMITTEE PREFERENCE?

10:45AM 7            MS. PAULOS:  COMMITTEE?  I WOULD LIKE TO PARTICIPATE

10:45AM 8    ON THE DISCOVERY COMMITTEE AND EXPERT COMMITTEE.

10:45AM 9            THE COURT:  OKAY.

10:45AM 10           MS. PAULOS:  YOUR HONOR, CAN I JUST RAISE ONE MORE

10:45AM 11   ISSUE?

10:45AM 12       WE DO HAVE A COLLEAGUE WHO IS ON ZOOM, MICHAEL WEINKOWITZ.

10:45AM 13   HE WAS SUPPOSED TO BE HERE IN PERSON.  UNFORTUNATELY, HE TESTED

10:45AM 14   POSITIVE FOR COVID.

10:45AM 15       I WOULD JUST LIKE TO RELAY THAT HE IS AVAILABLE IN CASE

10:45AM 16   YOUR HONOR WOULD LIKE TO HAVE HIM RESPOND AS WELL TO HIS

10:45AM 17   APPLICATION FOR LEADERSHIP.

10:46AM 18           THE COURT:  OKAY.

10:46AM 19           MS. PAULOS:  THANK YOU.

10:46AM 20           THE COURT:  NEXT.

10:46AM 21           MR. WARREN:  GOOD MORNING, YOUR HONOR.

10:46AM 22       MY NAME IS PREVIN WARREN WITH THE LAW FIRM MOTLEY RICE.

10:46AM 23   IT'S MY PRIVILEGE TO BRING UP THE REAR OF THIS MORNING'S CONGA

10:46AM 24   LINE.

10:46AM 25       I THINK I HAVE THE DISTINCTION OF BEING THE NEWEST MEMBER

10:46AM  1   OF THE PLAINTIFFS' BAR IN THE COURTROOM.  AFTER A STINT IN THE

10:46AM  2   FEDERAL GOVERNMENT AND A CLERKSHIP ON THE D.C. CIRCUIT FOR

10:46AM  3   MERRICK GARLAND, I SPENT MOST OF MY CAREER AT A CORPORATE STINT

10:46AM  4   FROM JENNER & BLOCK.

10:46AM  5        THESE CASES AND THE IMPACT THAT THEY'RE HAVING ON KIDS

10:46AM  6   LIKE MY KIDS ARE THE REASON I SWITCHED SIDES AND THE REASON I

10:46AM  7   JOINED MOTLEY RICE.

10:46AM  8        MY HOPE IS THAT MY PERSPECTIVE AS A FORMER BIG LAW PARTNER

10:46AM  9   WILL BRING ADDED DIVERSITY OF EXPERIENCE TO THE PSC, WILL HELP

10:46AM  10  ME WORK WITH MY COLLEAGUES ON THE OTHER SIDE AND IN AS

10:46AM  11  ECONOMICAL AND EXPEDITIOUS MANNER AS POSSIBLE CONSISTENT WITH

10:46AM  12  THE GUIDELINES OF PROFESSIONAL CONDUCT IN THIS COURT.

10:47AM  13       I KNOW HOW TO DESIGN A WINNING LEGAL STRATEGY IN COMPLEX

10:47AM  14  TECH CASES.  THAT'S WHAT I DID IN MY LAST JOB.  I TRIED AND I

10:47AM  15  WON NINE FIGURE CASES AGAINST TECH GIANTS LIKE GOOGLE,

10:47AM  16  IHEART MEDIA, AND SIRIUSXM, AND I REPRESENTED CORPORATE CLIENTS

10:47AM  17  IN THE TECH SPACE LIKE GENERAL DYNAMICS INFORMATION TECHNOLOGY

10:47AM  18  IN EQUALLY SIGNIFICANT MATTERS.

10:47AM  19       I THINK OUR SIDE CAN PREVAIL ON THIS MDL IF WE KEEP THREE

10:47AM  20  THINGS IN MIND:

10:47AM  21       FIRST ARE CAUSES OF ACTION.  WE NEED TO CHART A PATH

10:47AM  22  THROUGH SECTION 230 ON THE ONE HAND, BUT ALSO THE

10:47AM  23  FIRST AMENDMENT ON THE OTHER.

10:47AM  24       THESE ARE NOT CASES ABOUT THE SPEECH OF THIRD PARTIES ON

10:47AM  25  SOCIAL MEDIA PLATFORMS, AND THEY'RE ALSO NOT CASES ABOUT THE

10:47AM   1    EDITORIAL JUDGMENT OR EXPRESSIONS OF THE DEFENDANTS.

10:47AM   2        THEY'RE CASES ABOUT BAD CODE, PLAIN AND SIMPLE, AND THE

10:47AM   3    DEFENDANTS' FAILURE TO WARN THE PUBLIC ABOUT THE CONSEQUENCES

10:47AM   4    THAT THAT BAD CODE HAS HAD FOR OUR CHILDREN.  MOTLEY RICE'S

10:48AM   5    COMPLAINT ON BEHALF OF NICHOLAS AND ROSEMARY CHOBANI HAS PLED

10:48AM   6    THAT UNEQUIVOCALLY AND ANY MASTER COMPLAINT THAT I'M INVOLVED

10:48AM   7    IN WOULD DO THE SAME.

10:48AM   8        SECOND, OUR SIDE NEEDS TO STAY FOCUSSED ON THE BIGGER

10:48AM   9    PICTURE, AND THAT'S WHAT THE TEAM OF 20 ATTORNEYS AT

10:48AM  10    MOTLEY RICE AND I HAVE BEEN DOING SINCE WE GOT INVOLVED IN

10:48AM  11    THESE CASES.

10:48AM  12        WE WERE THE ONLY FIRM GRANTED ACCESS TO THE NORTH LONDON

10:48AM  13    CORONER'S INQUEST OF MOLLY RUSSELL WHICH HELD THAT THAT

10:48AM  14    14-YEAR-OLD GIRL DIED NOT ONLY BY SUICIDE BUT BY THE

10:48AM  15    CONSEQUENCES OF HER ADDICTION TO SOCIAL MEDIA.  THAT GAVE US A

10:48AM  16    VERY UNIQUE OPPORTUNITY TO OBSERVE THAT AS WITNESSES AND SEE

10:48AM  17    EVIDENCE AND WHICH HAS GIVEN US AN ABILITY TO PREPARE FOR THIS

10:48AM  18    CASE.

10:48AM  19        TO MY KNOWLEDGE, WE'RE ALSO THE ONLY FIRM TO SUCCESSFULLY

10:48AM  20    SUBPOENA THE COMPLETE UNREDACTED SET OF FRANCES HAUGEN'S

10:48AM  21    DOCUMENTS WHICH WERE OBTAINED FROM META, AND WE'RE HOPEFUL THAT

10:48AM  22    WE'LL BE IN THE POSITION TO NEGOTIATE A PROTECTIVE ORDER WITH

10:48AM  23    THE OTHER SIDE AND SHARE THOSE WITH OUR CO-COUNSEL IN THIS CASE

10:49AM  24    AS SOON AS POSSIBLE.

10:49AM  25        AND THE LAST THING I'LL SAY IS THAT WE ARE LOOKING AHEAD

10:49AM  1    TO DEVELOPMENTS IN THE LAW.  I'VE BEEN WORKING TO COORDINATE

10:49AM  2    AMICUS BRIEFING ON BEHALF OF THE PETITIONER IN GONZALEZ VERSUS

10:49AM  3    GOOGLE, WHICH I'M SURE YOUR HONOR KNOWS WILL HAVE A POTENTIAL

10:49AM  4    IMPACT ON THE LAW IN THIS CASE AROUND 230, AND MY EXPECTATION

10:49AM  5    IS THAT THOSE BRIEFS WILL HELP EXPLAIN TO THE SUPREME COURT WHY

10:49AM  6    A TEXTUAL READING OF THAT STATUTE COULD HAVE SERIOUS UNINTENDED

10:49AM  7    CONSEQUENCES FOR OUR KIDS.

10:49AM  8        THE LAST THING I'LL SAY IS THAT I THINK EVERYONE ON OUR

10:49AM  9    SIDE NEEDS TO REMAIN FOCUSSED ON COLLEGIALITY RATHER THAN

10:49AM  10   CONFRONTATION.  THIS IS AN EXTRAORDINARILY BIG CASE WITH

10:49AM  11   EXTRAORDINARILY BIG CONSEQUENCES NOT JUST FOR OUR CLIENTS AND

10:49AM  12   OUR KIDS, BUT ALSO POTENTIALLY FOR THE DEFENDANTS.  AND I THINK

10:49AM  13   KEEPING TEMPERS COOL AND WORKING RESPECTFULLY WITH ONE ANOTHER

10:49AM  14   IS SOMETHING THAT I KNOW HOW TO DO, HAVING WORKED ON THE OTHER

10:50AM  15   SIDE FOR AS LONG AS I DID, AND I'M HOPING TO BRING THAT VIRTUE

10:50AM  16   TO THE TABLE.

10:50AM  17        THE COURT:  DO YOU HAVE A REASON TO ANTICIPATE THAT

10:50AM  18   TEMPERS -- ARE YOU TALKING ABOUT TEMPERS BETWEEN THE SIDES OR

10:50AM  19   WITHIN THE SIDE?

10:50AM  20        MR. WARREN:  WELL, I SUPPOSE IT COULD HAPPEN EITHER

10:50AM  21   WAY.  I HOPE IT WON'T.  BUT I THINK STAYING RESPECTFUL,

10:50AM  22   COLLEGIAL HAS TO BE THE REALM IN HOW WE APPROACH THIS.

10:50AM  23        THE COURT:  I HAD A NOTE.  I THOUGHT AT ONE POINT, I

10:50AM  24   BELIEVE, YOU WERE APPLYING TO BE A CO-LEAD?

10:50AM  25        MR. WARREN:  YOUR HONOR, I THINK MY INITIAL

```
10:50AM   1    APPLICATION MAY HAVE BEEN AMBIGUOUS ON THAT POINT.
10:50AM   2         AT THIS POINT I'M SEEKING TO SERVE ON THE PSC AND, OF
10:50AM   3    COURSE, WILL SERVE IN WHATEVER CAPACITY THE COURT THINKS IS
10:50AM   4    MOST APPROPRIATE.  THAT IS WHAT WE'RE SEEKING.  WE DO SUPPORT
10:50AM   5    THE LEADERSHIP STRUCTURE THAT HAS BEEN PUT FORWARD ON A
10:50AM   6    CONSENSUS BASIS, AND I'VE HAD REALLY THE PRIVILEGE OF REALLY
10:50AM   7    WORKING WITH MOST OF THE LAWYERS HERE ON THESE CASES, AND IT'S
10:50AM   8    AN EXCEPTIONALLY TALENTED DIVERSE GROUP.
10:50AM   9              THE COURT:  OKAY.  SO YOU WERE OR YOU WEREN'T?
10:51AM  10              MR. WARREN:  I WAS APPLYING TO BE ON THE PSC BUT
10:51AM  11    ALSO TO SORT OF STATE THAT WHATEVER YOUR HONOR DEEMS
10:51AM  12    APPROPRIATE IS WHAT WE'RE PREPARED TO DO.  THESE CASES ARE 80,
10:51AM  13    85 PERCENT OF MY TIME RIGHT NOW.
10:51AM  14              THE COURT:  LITIGATION FINANCING?
10:51AM  15              MR. WARREN:  NONE, YOUR HONOR.
10:51AM  16              THE COURT:  AND THEN WHAT ABOUT COMMITTEES?
10:51AM  17              MR. WARREN:  WELL, YOUR HONOR, I THINK THERE WON'T
10:51AM  18    BE A LOT OF WORK FOR THE OTHER COMMITTEES TO DO UNLESS THE
10:51AM  19    MASTER COMPLAINT IS STRUCTURED THE RIGHT WAY AND WE SURVIVE THE
10:51AM  20    MOTION TO DISMISS.  I WOULD LIKE TO BE INVOLVED IN THOSE
10:51AM  21    EFFORTS.
10:51AM  22              THE COURT:  OKAY.
10:51AM  23              MR. WARREN:  THANK YOU, YOUR HONOR.
10:51AM  24              MS. NAPPI:  GOOD MORNING, YOUR HONOR.
10:51AM  25         HILLARY NAPPI.
```

10:51AM  1                    THE COURT:  GOOD MORNING.

10:51AM  2                    MS. NAPPI:  FIRST, THANK YOU FOR ALLOWING ME TO

10:51AM  3         SPEAK AND BE HEARD TO DAY.  IT'S AN HONOR TO BE IN YOUR

10:51AM  4         COURTROOM AS I'M PRO HAC'D IN.

10:51AM  5                    THE COURT:  WAIT.  WAIT.  YOUR NAME AGAIN.

10:52AM  6                    MS. NAPPI:  HILLARY NAPPI.

10:52AM  7                    THE COURT:  OKAY.  MS. NAPPI, I'LL SAY AS WE START

10:52AM  8         HERE, YOU WEREN'T IN THIS GROUP?

10:52AM  9                    MS. NAPPI:  NO, YOUR HONOR, I'M NOT.

10:52AM 10                    THE COURT:  SO GO AHEAD.

10:52AM 11                    MS. NAPPI:  YOUR HONOR, THE EXPERTISE I'VE HAD IN MY

10:52AM 12         CAREER BOTH WITH COMPLEX LITIGATION AND SPECIFICALLY

10:52AM 13         REPRESENTING CHILD SURVIVORS OF BOTH SEXUAL EXPLOITATION,

10:52AM 14         SPECIFICALLY CSAM, IS EXTREMELY RELEVANT AND WILL BE HELPFUL TO

10:52AM 15         THIS MDL.  AND ON BEHALF OF THE PEOPLE THAT I REPRESENT, BOTH

10:52AM 16         THEIR FAMILIES AND THESE CHILDREN, THEY ABSOLUTELY MUST BE

10:52AM 17         HEARD IN THIS LITIGATION.

10:52AM 18             WHILE I UNDERSTAND THAT THE PREDOMINANT ISSUE BEING PUT

10:52AM 19         FORTH IN THIS MDL IS THE ADDICTION COMPONENT, MOST OF THESE

10:52AM 20         CHILDREN WILL HAVE SOME SORT OF CSAM ON THEIR DEVICES, AND IT

10:52AM 21         HAS TO BE ADDRESSED HERE.  IT'S PARTICULARLY RELEVANT WITH

10:52AM 22         RESPECT TO THE COMMUNICATIONS DECENCY ACT.

10:52AM 23             THE VIEW THAT I TAKE WITH MY CASES, YOUR HONOR, IS THAT

10:53AM 24         THE CREATION OF CSAM IS AN INJURY AND UNDER THE LAW IT IS AN

10:53AM 25         INJURY.

| | |
|---|---|
| 10:53AM | 1 |

AND IT HAS IMMUNITIES FROM THE COMMUNICATIONS DECENCY ACT. AND, IN FACT, WITH MR. MARSH, WE ARE ARGUING NEXT WEEK BEFORE THE ELEVENTH CIRCUIT IN THE CASE AGAINST OMEGLE FOR THIS EXACT ISSUE.

MY FIRM DOES NOT USE LITIGATION FUNDING, AND WHILE I HAVE NOT BEEN APPOINTED TO AN MDL LEADERSHIP POSITION, I HAVE NEVER APPLIED FOR ONE BEFORE, YOUR HONOR.  SO, YOU KNOW, I THINK MY EXPERIENCE LEADS TO EXACTLY WHY I'M HERE TODAY.

MY FIRM, THOUGH, HAS BEEN INVOLVED IN MDL'S ACROSS THE COUNTRY.  THEY HAVE THE FINANCES AND THE SUPPORT AND ARE WILLING TO HIRE INTO THIS CASE BECAUSE WE BELIEVE IN IT.

THE THING THAT I CAN TELL YOUR HONOR IS THAT THEY HAVE ALSO COMMITTED RESOURCES TO GUIDE ME TO APPROPRIATELY CONTRIBUTE TO WHATEVER COMMITTEE THIS COURT ASKS ME TO BE PART OF IF THE COURT SEES FIT TO DO SO.

IT'S ABSOLUTELY IMPORTANT THAT WE ALL COLLABORATE, AND MY CAREER IN EVERY LITIGATION I'VE PARTICIPATED IN, AND I'VE COLLABORATED AT EVERY LEVEL.  PRIOR TO BEING AN ATTORNEY, I WAS A PARALEGAL FOR OVER A DECADE.  I WORKED ON COMPLEX CASES ACROSS THE COUNTRY AND TRAVELLED FOR MONTHS AT A TIME GIVING UP MY LIFE.  I UNDERSTAND WHAT THE COMMITMENT IS, AND I'M PREPARED TO DO THAT IN ANY ROLE THAT THIS COURT SEES FIT TO APPOINT ME TO.

I HAVE WORKED WITH THE LOVELY ATTORNEYS AT THIS TABLE IN COLLABORATING PRIOR TO THE PETITION FOR THE MDL TALKING

10:54AM  1      SPECIFICALLY ABOUT THE EXPERT ISSUES AND THE COMMUNICATIONS

10:54AM  2      DECENCY ACT AND THE ISSUES WE SAW LEGALLY.

10:54AM  3          IF THE COURT WOULD ALLOW ME, I WOULD LOVE TO BE ON A

10:54AM  4      MASTER COMPLAINT COMMITTEE OR ON A LEGAL BRIEFING COMMITTEE.  I

10:54AM  5      THINK MY EXPERTISE AND THE KNOWLEDGE THAT I'VE GAINED THROUGH

10:54AM  6      MY CURRENT WORK WOULD HELP, BUT I'D ALSO LIKE TO COLLABORATE ON

10:54AM  7      THE DISCOVERY ISSUES.

10:54AM  8          I THINK YOU'VE HEARD TODAY, YOUR HONOR, THAT THERE ARE

10:54AM  9      SERIOUS CONCERNS ABOUT PRESERVATION, BUT THAT ALSO GOES TO

10:54AM  10     EVERYONE'S OBLIGATION WITH RESPECT TO CSAM.

10:54AM  11         CSAM IS CONTRABAND.  WE ALL HAVE AN OBLIGATION ABOUT

10:54AM  12     REPORTING, AND IF THE LAWYERS IN THIS ROOM DON'T DO THAT

10:55AM  13     APPROPRIATELY, WE WILL ALL BE IN A BOWL THAT NO ONE WANTS TO

10:55AM  14     BE.

10:55AM  15         SO IT IS EXTREMELY IMPORTANT THAT EVERYONE HERE MEET AND

10:55AM  16     CONFER AND COLLABORATE, AND I THINK THAT MY EXPERIENCE LEADS TO

10:55AM  17     ME BEING ABLE TO DO THAT SEAMLESSLY.

10:55AM  18             THE COURT:  AND DID YOU TALK TO THE GROUP ABOUT

10:55AM  19     BEING ON THE SLATE?  AND WHAT IS YOUR UNDERSTANDING ABOUT WHY

10:55AM  20     YOU'RE NOT ON THE SLATE?

10:55AM  21             MS. NAPPI:  SO AT ONE POINT, YOUR HONOR, I THINK I

10:55AM  22     WAS GOING TO BE PROPOSED TO BE ON THE SLATE, AND MY

10:55AM  23     UNDERSTANDING WAS THAT THERE WERE CONCERNS ABOUT THE SIZE OF

10:55AM  24     THE SLATE AND EVERYONE WAS TRYING TO NAVIGATE THAT

10:55AM  25     APPROPRIATELY.

10:55AM 1    YOU KNOW, I'M HAPPY TO WEIGH IN.  I THINK MY COLLEAGUES

10:55AM 2  HAVE SPOKEN ACCURATELY ABOUT THE NEED OF HAVING EVERYONE COME

10:55AM 3  TO THE TABLE.

10:55AM 4    AND SO I THINK THAT THAT WAS JUST THE ISSUE.  YOU KNOW, WE

10:55AM 5  DEFINITELY NEED ALL OF THE RESOURCES THAT WE CAN PUT TOGETHER

10:55AM 6  BECAUSE IT IS VERY COMPLEX.

10:55AM 7    AND, YOU KNOW, EACH INJURY HERE WILL LEAD TO DIFFERENT

10:55AM 8  EXPERTS AND DIFFERENT DISCOVERY ISSUES WHICH HAVE TO BE I THINK

10:55AM 9  ADDRESSED PROPERLY PLEADING A COMPLAINT, AND, OF COURSE,

10:56AM 10  ADDRESSING THOSE ISSUES IN A BRIEFING.  EXCUSE ME.

10:56AM 11        THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

10:56AM 12  TO KNOW?

10:56AM 13        MS. NAPPI:  NO, YOUR HONOR.  THANK YOU VERY MUCH FOR

10:56AM 14  ALLOWING ME TO BE HEARD.

10:56AM 15        THE COURT:  THANK YOU.

10:56AM 16        MR. MARSH:  GOOD MORNING, YOUR HONOR.

10:56AM 17    MY NAME IS JAMES MARSH FOUNDER OF THE MARSH LAW FIRM, AND

10:56AM 18  IT'S AN HONOR TO BE BACK IN NORTHERN CALIFORNIA IN THE OAKLAND

10:56AM 19  COURTHOUSE.

10:56AM 20    I'M HERE PRIMARILY TODAY TO REPRESENT THE INTERESTS OF

10:56AM 21  VICTIMS OF CHILD PORNOGRAPHY OF WHAT WE CALL NOW CSAM,

10:56AM 22  SOMETHING THAT I'VE BEEN DOING FOR 17 YEARS, SINCE 2005.

10:56AM 23    IN ANSWERING YOUR QUESTIONS, I THINK ONE OF THE QUESTIONS

10:56AM 24  THAT YOU POSITED ABOUT INJUNCTIVE RELIEF AND DAMAGES REALLY

10:56AM 25  HASN'T BEEN ADDRESSED BY ANY OF THE APPLICANTS HERE TODAY, BUT

10:56AM 1    I THINK IT'S A VERY IMPORTANT ISSUE, AND I LEND A TREMENDOUS

10:57AM 2    AMOUNT OF EXPERIENCE ON THIS ISSUE, INCLUDING MY CASE IN THE

10:57AM 3    UNITED STATES SUPREME COURT IN UNITED STATES VERSUS PAROLINE,

10:57AM 4    WHICH WAS AN EFFORT TO DETERMINE HOW CHILDREN ARE DAMAGED BY

10:57AM 5    THINGS THAT HAPPEN ONLINE, THINGS THAT HAPPEN ON THE INTERNET.

10:57AM 6         AND I THINK THAT'S GOING TO BE A VERY IMPORTANT ISSUE IN

10:57AM 7    THIS CASE GIVEN, AS YOUR HONOR RECOGNIZED, THE POTENTIAL SIZE

10:57AM 8    OF THE NUMBER OF POTENTIAL PLAINTIFFS AND THE NEED TO REALLY

10:57AM 9    ARTICULATE AND DETERMINE EXACTLY WHAT DAMAGES THOSE INDIVIDUALS

10:57AM 10   HAVE EXPERIENCED.

10:57AM 11        I'VE ALSO BEEN INVOLVED IN ISSUES NOT ONLY OF ISSUES

10:57AM 12   INVOLVING CSAM, CHILDREN VICTIMIZED ON THE INTERNET, BUT ALSO

10:57AM 13   IN THE ISSUE OF SECTION 230.

10:57AM 14        AND AS HILLARY SAID, WE ARE ARGUING THAT CASE NEXT WEEK

10:57AM 15   BEFORE THE ELEVENTH CIRCUIT.  IT OVERLAPS A LOT WITH SOME OF

10:57AM 16   THE ISSUES HERE TODAY IN TERMS OF WHETHER SOMETHING IS A

10:57AM 17   PRODUCT, WHETHER SOMETHING IS A SERVICE, AND THE EXTENT AND

10:58AM 18   IMPORTANCE OF A LAW THAT I HELPED WRITE, SECTION 18 U.S.C. 2255

10:58AM 19   DEALING SPECIFICALLY WITH VICTIMS OF CHILD PORNOGRAPHY AND

10:58AM 20   ONLINE EXPLOITATION.

10:58AM 21        IN TERMS OF THE STRUCTURE OF THE LEADERSHIP, I THINK FROM

10:58AM 22   MY PERSPECTIVE, IT'S MORE IMPORTANT WHO YOU CHOOSE THAN HOW

10:58AM 23   MANY PEOPLE YOU CHOOSE.  I KNEW WHICH TWO WOMEN I WOULD CHOOSE

10:58AM 24   FOR LEADERSHIP.  I DON'T KNOW THEM PERSONALLY, BUT I HAVE HEARD

10:58AM 25   THEM IN COURT, AND I'VE BEEN VERY IMPRESSED WITH THEIR

10:58AM  1    RESPONSES.

10:58AM  2          IN TERMS OF LITIGATION FUNDING, WE DON'T HAVE ANY

10:58AM  3    LITIGATION FUNDING IN OUR FIRM, AND I'M VERY HAPPY TO DEVOTE

10:58AM  4    THE RESOURCES OF MY FIRM TO THIS CASE.

10:58AM  5                THE COURT:  AND YOU SAID NO LITIGATION FUNDING,

10:58AM  6    RIGHT?

10:58AM  7                MR. MARSH:  NO, WE DO NOT.

10:58AM  8                THE COURT:  SO YOU'VE WORKED WITH MS. NAPPI?

10:58AM  9                MR. MARSH:  I DO WORK VERY CLOSELY WITH MS. NAPPI

10:58AM  10   AND HER FIRM, YES.

10:58AM  11               THE COURT:  ANY ISSUES WORKING WITH THEM?

10:58AM  12               MR. MARSH:  I DON'T HAVE ANY ISSUES WORKING WITH

10:58AM  13   ANYONE, YOUR HONOR.

10:58AM  14         AT ONE POINT IN TIME IN WORKING ON SECTION 2255 IN

10:59AM  15   CONGRESS, I WAS ASKED TO BRIDGE THE GAP BETWEEN THE REPUBLICANS

10:59AM  16   AND THE DEMOCRATS, AND WE PASSED A UNANIMOUS BILL.  SO I THINK

10:59AM  17   IF I CAN WORK WITH THE DEMOCRATS AND THE REPUBLICANS AND THE

10:59AM  18   REPUBLICANS OF THE HOUSE AND THE REPUBLICANS OF THE SENATE, I

10:59AM  19   COULD PROBABLY WORK WITH JUST ABOUT ANYONE IN THIS ROOM

10:59AM  20   INCLUDING DEFENSE COUNSEL.

10:59AM  21          (LAUGHTER.)

10:59AM  22               THE COURT:  MAYBE YOU SHOULD HAVE STARTED THERE.

10:59AM  23               MR. MARSH:  I'M SORRY?

10:59AM  24               THE COURT:  YOU SHOULD HAVE STARTED WITH THAT.

10:59AM  25          (LAUGHTER.)

10:59AM 1        MR. MARSH:  I WILL ALSO ADD AN INTERESTING ASIDE,

10:59AM 2   THAT MY FIRST TRIAL WAS BEFORE JUDGE JUDY, SO THAT IS ANOTHER

10:59AM 3   DISTINCT, I GUESS, BENEFIT I HAVE IN DEALING WITH LITIGATION

10:59AM 4   LIKE THIS SO.

10:59AM 5        (LAUGHTER.)

10:59AM 6        THE COURT:  ALL RIGHT.  THANK YOU, SIR.

10:59AM 7        MR. MARSH:  THANK YOU VERY MUCH.

10:59AM 8        MR. TELLIS:  GOOD MORNING, YOUR HONOR.

10:59AM 9   ROLAND TELLIS WITH BARON BUDD.

10:59AM 10       THE COURT:  MR. TELLIS, YOU'RE THE ONLY ONE OF THESE

10:59AM 11  PEOPLE WHO I KNOW.

10:59AM 12       MR. TELLIS:  IT'S A PLEASURE TO BE BACK IN YOUR

11:00AM 13  COURTROOM AGAIN.  I HOPE YOU FEEL THE SAME WAY.

11:00AM 14       THE COURT:  I LIKE TO BE IN MY COURTROOM.

11:00AM 15       MR. TELLIS:  I HAVE APPLIED FOR A POSITION ON THE

11:00AM 16  PLAINTIFFS' STEERING COMMITTEE, YOUR HONOR.  MY APPLICATION

11:00AM 17  ADDRESSES THE CRITERIA THAT YOUR HONOR ARTICULATED FOR

11:00AM 18  MEMBERSHIP.  IN A NUTSHELL, I HAVE THE COMPLEX LITIGATION

11:00AM 19  EXPERIENCE, I HAVE THE TIME, AND I'M A TEAM PLAYER.

11:00AM 20       THE COURT:  MR. TELLIS, TELL ME ABOUT WHAT IS

11:00AM 21  HAPPENING WITH YOUR ROLE ON THE OPIOID LITIGATION AND IF THAT

11:00AM 22  IS STILL ONGOING.

11:00AM 23       MR. TELLIS:  SURE.

11:00AM 24    MY ROLE STARTED -- I HAD THE FORTUNE, OR PERHAPS THE

11:00AM 25  MISFORTUNE, OF PETITIONING TO FORM THAT MDL AND IT HAS BEEN A

11:00AM   1    SUCCESS I HOPE.

11:00AM   2         I WAS PRIMARILY INVOLVED IN DISTRIBUTOR LITIGATION, WHICH

11:00AM   3    HAS SINCE SETTLED.  SINCE THEN MEMBERS OF MY FIRM HAVE BEEN

11:00AM   4    INVOLVED IN BELLWETHER TRIALS IN THE PHARMACY DEPENDENT AND SO

11:00AM   5    FORTH, BUT MY ROLE WAS PRIMARILY ON THE DISTRIBUTOR WHICH HAS

11:00AM   6    SETTLED.

11:00AM   7              THE COURT:  OKAY.

11:00AM   8              MR. TELLIS:  I'VE BEEN PRACTICING FOR 27 YEARS.

11:00AM   9    YOUR HONOR HAD A CHANCE TO VIEW MY LITIGATION ABILITIES IN THE

11:01AM  10    CASE THAT SPANNED YEARS AND HAD A SUCCESSFUL ENDING.

11:01AM  11         I DON'T HAVE SOCIAL MEDIA EXPERIENCE PER SE, BUT THAT WAS

11:01AM  12    TRUE WHEN THE COURTS APPOINTED ME TO LEAD DEFECTIVE AIRBAG

11:01AM  13    CASES, AND METHANE GAS CASES, COLLATERAL INSURANCE CASES, AND

11:01AM  14    WE EXTRACTED BILLIONS FOR CONSUMERS.

11:01AM  15         I'D BE HONORED TO BE SELECTED BY THE COURT.  I WILL SERVE

11:01AM  16    ON ANY SUBCOMMITTEE THAT YOUR HONOR THINKS I SHOULD, ALTHOUGH

11:01AM  17    IF I HAD A PREFERENCE, I WOULD BE INVOLVED IN LAW AND BRIEFING

11:01AM  18    AND DISCOVERY OR EXPERTS.

11:01AM  19              THE COURT:  HOW DID YOU GET INVOLVED, MR. TELLIS, IN

11:01AM  20    THIS PARTICULAR CASE?

11:01AM  21              MR. TELLIS:  I WAS APPROACHED BY THE LIEFF CABRASER

11:01AM  22    FIRM.  OUR FIRMS HAVE A CLOSE WORKING RELATIONSHIP.

11:01AM  23         THIS ISSUE IS EQUALLY IMPORTANT TO ME.  SOCIAL MEDIA HAS

11:01AM  24    PERMEATED OUR LIVES.  IT HAS ITS POSITIVES, BUT IT CERTAINLY

11:01AM  25    HAS ITS NEGATIVES.

11:02AM  1          WHEN I READ ABOUT THE WHISTLEBLOWER ALLEGATIONS INVOLVING

11:02AM  2     META AND THINKING ABOUT MY OWN TEENAGE DAUGHTER, I FELT LIKE I

11:02AM  3     HAD TO GET INVOLVED.

11:02AM  4               THE COURT:  OKAY.  NO LITIGATION FINANCING?

11:02AM  5               MR. TELLIS:  NO LITIGATION FINANCING, YOUR HONOR.

11:02AM  6               THE COURT:  HOW MANY CASES HAVE YOU TRIED IN THIS

11:02AM  7     DISTRICT?

11:02AM  8               MR. TELLIS:  ZERO.

11:02AM  9               THE COURT:  ANYWHERE ELSE?

11:02AM 10               MR. TELLIS:  AS A DEFENSE LAWYER, I TRIED CASES IN

11:02AM 11     LOS ANGELES WHERE I AM BASED, SEVERAL TO VERDICT.  BUT I HAVE

11:02AM 12     NEVER TRIED A CASE IN THE NORTHERN DISTRICT, BUT I'VE BEEN

11:02AM 13     APPOINTED BY COURTS HERE TO VARIOUS STEERING COMMITTEE

11:02AM 14     INCLUDING JUDGE BREYER IN THE VOLKSWAGEN DIESEL CASE, JUDGE

11:02AM 15     CHEN IN A SIMILAR CASE INVOLVING AUDI, FIAT AUDI.

11:02AM 16          AND I'VE BEEN APPOINTED BY THE COURTS IN SOUTHERN

11:02AM 17     CALIFORNIA, THE CENTRAL DISTRICT, CO-LEAD AND MEMBERS OF THE

11:03AM 18     PLAINTIFFS' STEERING COMMITTEE, BUT I'VE NEVER TRIED A CASE IN

11:03AM 19     THE NORTHERN DISTRICT.

11:03AM 20               THE COURT:  HOW MANY JURY TRIALS TOTAL?

11:03AM 21               MR. TELLIS:  THREE.  SEVERAL ARBITRATIONS.

11:03AM 22               THE COURT:  YES.  A JURY TRIAL IS A LITTLE BIT

11:03AM 23     DIFFERENT.

11:03AM 24               MR. TELLIS:  A LITTLE BIT DIFFERENT.

11:03AM 25               THE COURT:  OKAY.  THANK YOU.

11:03AM   1              MR. TELLIS:  THANK YOU.

11:03AM   2              THE COURT:  DO I HAVE EVERYBODY?

11:03AM   3              MR. VANZANDT:  YOUR HONOR, MAY I ADDRESS ONE THING?

11:03AM   4          JOSEPH VANZANDT.

11:03AM   5          I FAILED TO MENTION WHEN I WAS UP HERE THAT BEASLEY ALLEN

11:03AM   6      DOES NOT USE LITIGATION FINANCING.  I JUST WANTED TO MAKE SURE

11:03AM   7      THAT WAS ON THE RECORD.

11:03AM   8              MS. ZIMMERMAN:  YOUR HONOR, IF I MAY, NOR DOES

11:03AM   9      DICELLO, LEVITT.  I'M TRYING TO SAVE TIME, YOUR HONOR.  AND

11:03AM   10     DICELLO, LEVITT DOES NOT USE LITIGATION FINANCING FOR THIS

11:03AM   11     CASE.  THANK YOU.

11:03AM   12             THE COURT:  MR. GARCIA, DO YOU HAVE ACCESS TO THIS

11:04AM   13     OTHER PERSON OR NOT?

11:04AM   14             THE CLERK:  SO THE ZOOM IS UP RIGHT NOW, BUT I CAN

11:04AM   15     CHECK IF HE'S IN THERE.

11:04AM   16             THE COURT:  ALL RIGHT.  WHY DON'T YOU FIND HIM

11:04AM   17     DURING THE BREAK.

11:04AM   18             MR. AUSTIN:  GOOD MORNING, YOUR HONOR.

11:04AM   19         MAY IT PLEASE THE COURT, RON AUSTIN.

11:04AM   20             THE COURT:  OH, I DIDN'T HAVE YOU YET.  GO AHEAD.

11:04AM   21             MR. AUSTIN:  BY WAY I GUESS OF THE LEADERSHIP

11:04AM   22     STRUCTURE, I DO BELIEVE THAT THE LEADERSHIP STRUCTURE THAT WE

11:04AM   23     HAVE IN PLACE THAT IS PROPOSED IS NECESSARY AND ACTUALLY BY WAY

11:04AM   24     OF COMMENTING, IT PROBABLY CAN EXPAND TO A LEADERSHIP

11:04AM   25     DEVELOPMENT COMMITTEE.  MOST TIMES YOUNG LAWYERS OR LAWYERS WHO

11:04AM  1    ARE LEFT ON THE OUTSIDE OF THE MDL'S NEVER HAVE AN OPPORTUNITY

11:04AM  2    TO PARTICIPATE, AND SO ACTUALLY A LEADERSHIP DEVELOPMENT

11:04AM  3    COMMITTEE PROBABLY WOULD BE HELPFUL HERE AS WELL AS THE

11:04AM  4    PROPOSED 20 OR 21 OR 22 SLATES OF PEOPLE JUST BECAUSE OF THE

11:04AM  5    SIZE AND THE MAGNITUDE OF THIS LITIGATION.  SO FROM THAT

11:04AM  6    STANDPOINT, I WOULD SUPPORT A LARGER RATHER THAN SMALLER SLATE.

11:05AM  7         I DON'T USE LITIGATION FUNDING.  I HAVE TRIED SEVERAL JURY

11:05AM  8    TRIALS, TWO VERDICTS AND INCLUDING ONE AGAINST EXXON MOBILE IN

11:05AM  9    2001 FOR OVER A BILLION DOLLARS, AND IT WAS AN ENVIRONMENTAL

11:05AM  10   CASE.

11:05AM  11        I THINK YOUR HONOR ENJOYS OR INTENDS TO PROMOTE DIVERSITY.

11:05AM  12   I'M A BLACK MAN, OWN MY OWN FIRM.  MY FIRM IS RELATIVELY

11:05AM  13   DIVERSE INCLUDING ONE OF OUR MAIN GUYS INSIDE OF OUR MASS TORTS

11:05AM  14   IS A PUERTO RICAN YOUNG MAN, I HAVE A COLUMBIAN WOMAN, AND THE

11:05AM  15   WOMAN WHO MANAGES MY FIRM IS A BLACK FEMALE, AND MY CHIEF LEGAL

11:05AM  16   OFFICER IS A WHITE FEMALE, ALL SUPPORT OF MY MASS TORTS AND OUR

11:05AM  17   CLASS ACTION SECTION.

11:05AM  18        THE COURT:  AND DO YOU HAVE -- I SEE IN YOUR

11:05AM  19   APPLICATION THAT YOU'RE LEAD COUNSEL IN A NUMBER OF MASS TORTS.

11:05AM  20        DO YOU HAVE TIME TO FOCUS ON THIS ONE?

11:06AM  21        MR. AUSTIN:  I BELIEVE I DO, YOUR HONOR.  I WOULD

11:06AM  22   NOT STAND BEFORE YOUR HONOR AND ASK FOR PERMISSION TO

11:06AM  23   PARTICIPATE IN THIS LITIGATION IF I DID NOT.

11:06AM  24        THE COURT:  WELL, A LOT OF TIMES WHAT I SEE ARE

11:06AM  25   PEOPLE WHO DON'T ACTUALLY HAVE AS MUCH TIME, AND THEN THEY WANT

11:06AM 1    TO GIVE THE FIRM CREDIT FOR IT, AND IT DOESN'T MATTER SO MUCH

11:06AM 2    IF YOU'RE RUNNING YOUR FIRM AND THEN FEED IT DOWN THE CHAIN.

11:06AM 3        I'M INTERESTED TO KNOW WHO HAS GOT ACTUAL TIME VERSUS --

11:06AM 4            MR. AUSTIN:  I'M BOOTS ON THE GROUND, YOUR HONOR.

11:06AM 5    I'M A MASSIVE TRIAL GUY, AND I ENJOY THE WORK.  AND FOR THOSE

11:06AM 6    WHO HAVE WORKED WITH ME KNOW THAT I'M PRESENT AND IN IT.

11:06AM 7            THE COURT:  AND HOW DID YOU GET INVOLVED IN THIS

11:06AM 8    LITIGATION?

11:06AM 9            MR. AUSTIN:  SOMEONE APPROACHED ME, A POTENTIAL

11:06AM 10   CLIENT APPROACHED ME ABOUT DIFFICULTIES THAT THEY WERE HAVING

11:06AM 11   WITH THEIR CHILD.  AND WE SOUGHT A SOMEWHAT DISMISSIVE --

11:06AM 12   ACTUALLY, JOSEPH VANZANDT, I CALLED HIM FROM BEASLEY ALLEN, AND

11:06AM 13   WE JUST STARTED TALKING ABOUT IT, AND THIS IS A LITIGATION THAT

11:06AM 14   WE'RE PUTTING TOGETHER NOW, AND SO THAT WAS SORT OF MY ENTRE

11:07AM 15   INTO IT.

11:07AM 16           THE COURT:  OKAY.  THANK YOU, SIR.

11:07AM 17           MR. AUSTIN:  THANK YOU.

11:07AM 18           MS. WALSH:  YOUR HONOR, I THINK I HAVE THE DISTINCT

11:07AM 19   PLEASURE OF BEING LAST BUT HOPEFULLY NOT LEAST.

11:07AM 20       MY NAME IS ALEXANDRA WALSH OF WALSH LAW FROM WASHINGTON,

11:07AM 21   D.C.  AND THANK YOU FOR HAVING US ALL HERE TODAY AND TAKING THE

11:07AM 22   TIME THAT YOU'RE TAKING TO HEAR FROM EACH OF US.

11:07AM 23       LIKE MR. WARREN, WHO YOU HEARD FROM PREVIOUSLY, I AM A

11:07AM 24   FORMER DEFENSE LAWYER.  I'VE SPENT 20 YEARS ON THE DEFENSE

11:07AM 25   SIDE.  I'VE WORKED WITH MANY OF THE FIRMS AND MY COLLEAGUES

11:07AM 1      SITTING TO MY RIGHT.

11:07AM 2          I ALSO HAVE LITIGATED WITH AND ALSO AGAINST MANY OF MY

11:08AM 3      FRIENDS SITTING BEHIND ME.

11:08AM 4          I ALSO JOIN MR. WARREN IN SAYING THAT THIS LITIGATION AND

11:08AM 5      THE OPPORTUNITY TO PARTICIPATE IN THIS LITIGATION EPITOMIZES

11:08AM 6      WHY I MADE THE DECISION TWO YEARS AGO TO LEAVE BIG LAW AND

11:08AM 7      START MY OWN FIRM.

11:08AM 8          I GOT INVOLVED IN THE LITIGATION BECAUSE I HAVE VERY GOOD

11:08AM 9      FRIENDS AT BEASLEY ALLEN, AND I WAS CONTACTED BY MR. VANZANDT

11:08AM 10     ABOUT GETTING INVOLVED.

11:08AM 11         I'M THE MOTHER OF FOUR CHILDREN, INCLUDING THREE TEENAGE

11:08AM 12     GIRLS, AND I'VE SEEN FIRST HAND THE EFFECTS OF SOCIAL MEDIA

11:08AM 13     PARTICULARLY DURING THE COVID PERIOD.

11:08AM 14         I FEEL STRONGLY THAT I COULD CONTRIBUTE MEANINGFULLY TO

11:08AM 15     THIS LITIGATION, INCLUDING BECAUSE OF MY DEFENSE BACKGROUND,

11:08AM 16     AND MY ABILITY TO UNDERSTAND THE CHALLENGES THAT EXIST HERE.

11:08AM 17         MY MAIN EXPERTISE THAT I WOULD OFFER TO THIS LITIGATION, I

11:08AM 18     AM A TRIAL LAWYER, I'M A FIRST YEAR TRIAL LAWYER, BUT I ALSO

11:09AM 19     HAVE EXTENSIVE BACKGROUND AND EXPERTISE IN LAW AND BRIEFING,

11:09AM 20     AND I BELIEVE VERY STRONGLY AND I THINK THAT MY SUCCESS HAS

11:09AM 21     BEEN INFORMED BY THE FACT THAT I BRING THOSE TWO AREAS OF

11:09AM 22     EXPERTISE TOGETHER.

11:09AM 23         I THINK THE LEADERSHIP STRUCTURE THAT HAS BEEN PROPOSED IN

11:09AM 24     SIZE IS CRITICAL, AND THAT RELATES TO THE POINT THAT I JUST

11:09AM 25     MADE.  THERE WILL BE A LOT OF WORK TO BE DONE TO CRAFT THIS

11:09AM 1    MASTER COMPLAINT.  THERE WILL BE A LOT OF WORK THAT WILL BE

11:09AM 2    DONE IN THE MOTIONS PRACTICE, BUT IT'S CRITICAL THAT THE PEOPLE

11:09AM 3    WHO WILL BE TRYING THESE CASES AND UNDERSTAND HOW THEY NEED TO

11:09AM 4    BE TRIED HAVE A HAND IN THAT AND HAVE CONTRIBUTED TO THAT.  I

11:09AM 5    WOULD LIKE, IF APPOINTED, TO BE PART OF BOTH OF THOSE EFFORTS.

11:09AM 6         I CLERKED FOR JUDGE GARLAND, AGAIN, LIKE MR. WARREN.  I

11:09AM 7    ALSO CLERKED FOR RETIRED JUSTICE STEPHEN BREYER.  I THINK THAT

11:10AM 8    GIVES ME AN ABILITY TO HELP CONFRONT THE VERY INTENSE LEGAL

11:10AM 9    ISSUES THAT EXIST HERE.

11:10AM 10        I UNDERSTAND HOW THE APPELLATE PROCESS WORKS.  I

11:10AM 11   UNDERSTAND HOW THE SUPREME COURT IS LIKELY TO ADDRESS ISSUES

11:10AM 12   LIKE THESE, AND I WOULD LIKE TO BE PART OF THE PROCESS OF

11:10AM 13   CRAFTING THE COMPLAINT TO BE PREPARED TO WITHSTAND WHAT IS AN

11:10AM 14   ALMOST INEVITABLE APPEAL, BUT I FEEL REALLY STRONGLY THAT THE

11:10AM 15   TRIAL TEAMS THAT I HOPE TO BE A PART OF PRESENTING TO THE JURY

11:10AM 16   BE REFLECTED IN THOSE EARLY PROCESSES AS WELL.

11:10AM 17        I WOULD ADD THAT I UNDERSTAND THE COURT'S COMMITMENT TO

11:10AM 18   DIVERSITY, AND I RESPECT IT VERY MUCH.  A LARGE PART OF MY

11:10AM 19   PRACTICE ON THE DEFENSE SIDE WAS HELPING TO PROMOTE DIVERSITY.

11:10AM 20   A BIG PART OF THE REASON THAT I -- BEFORE I MADE MY SWITCH TO

11:10AM 21   THE PLAINTIFFS' SIDE, I ACTUALLY LEFT BIG LAW WITH MY PARTNER,

11:10AM 22   BETH WILKINSON, TO FORM WILKINSON WALSH, AND A HUGE REASON THAT

11:11AM 23   WE DID THAT WAS THAT WE UNDERSTOOD WHILE ALL OF THE EFFORTS

11:11AM 24   THAT BIG LAW MAKES TO PROMOTE YOUNGER LAWYERS AND DIVERSE

11:11AM 25   LAWYERS, THERE ARE CERTAIN SYSTEMIC INSTITUTIONAL ISSUES WITH

11:11AM 1    BIG LAW FIRMS THAT MAKE THAT VERY DIFFICULT TO ACCOMPLISH, AND

11:11AM 2    WE DECIDED THAT IT WAS IMPORTANT TO US TO LEAVE THE COMFORTS OF

11:11AM 3    A BIG POWERFUL LAW FIRM AND START OUR OWN FIRM SO THAT WE COULD

11:11AM 4    STRUCTURE OUR PRACTICE AND STRUCTURE OUR BUSINESS IN A WAY THAT

11:11AM 5    ALLOWED US TO PROMOTE THE NEXT GENERATION OF TRIAL LAWYERS,

11:11AM 6    INCLUDING WOMEN TRIAL LAWYERS AND INCLUDING DEFENSE TRIAL

11:11AM 7    LAWYERS, AND THE SUCCESS THAT WE HAD IN THAT ARENA WILL ALWAYS

11:11AM 8    BE ONE OF MY GREATEST ACCOMPLISHMENTS PROFESSIONALLY.

11:11AM 9          I HAVE HUGE RESPECT FOR THE PLAINTIFFS' BAR, PARTICULARLY

11:11AM 10   -- I HAD IT BEFORE I LEFT, BEFORE I LEFT BIG LAW AND JOINED

11:11AM 11   THIS BAR.  IT HAS MULTIPLIED TREMENDOUSLY SINCE I CAME TO THIS

11:12AM 12   SIDE, BUT I THINK THAT EVERY -- ALL OF MY FRIENDS ON THIS SIDE

11:12AM 13   WOULD AGREE THAT THE PLAINTIFFS' BAR HAS WORK TO DO IN TERMS OF

11:12AM 14   DIVERSITY, RACIAL DIVERSITY, GENDER DIVERSITY, SEXUAL

11:12AM 15   ORIENTATION DIVERSITY ACROSS THE GAMUT.

11:12AM 16         MY FIRM, WHICH IS RUN BY ME, I HAVE ONE PARTNER WHO IS

11:12AM 17   ALSO A WOMAN, WE ARE COMMITTED TO BRINGING SOME OF THE LESSONS

11:12AM 18   THAT WE LEARNED FROM PROMOTING DIVERSITY ON THE DEFENSE SIDE TO

11:12AM 19   THE PLAINTIFFS' SIDE.

11:12AM 20         AND I KNOW THAT THAT IS SHARED BY MANY OF MY COLLEAGUES ON

11:12AM 21   THIS SIDE AS WELL.

11:12AM 22         MR. WEINKOWITZ, WHO UNFORTUNATELY TESTED POSITIVE FOR

11:12AM 23   COVID AND I HOPE WILL HAVE A CHANCE TO ADDRESS THE COURT, I

11:12AM 24   LITIGATED AGAINST HIM IN A LARGE MDL INVOLVING XARELTO, AND WE

11:12AM 25   WERE FIERCE ADVOCATES.  WE BOTH ADVOCATED ZEALOUSLY FOR OUR

11:12AM  1    CLIENTS, BUT WE ALWAYS HAD PROFESSIONALISM AND COURTESY WAS A

11:13AM  2    HUGE PART OF OUR RELATIONSHIP, AND WE HAD A CHANCE TO TALK

11:13AM  3    ABOUT ISSUES THAT WERE IMPORTANT TO US, AND ONE OF THOSE WAS

11:13AM  4    DIVERSITY.

11:13AM  5         SO I KNOW FIRST HAND THAT THERE'S A COMMITMENT TO THAT

11:13AM  6    AMONG THIS GROUP HERE, AND IF APPOINTED, I COMMIT TO THIS COURT

11:13AM  7    THAT I WILL PAY FORWARD THE MENTORING AND THE SUPPORT THAT I

11:13AM  8    RECEIVED AS A YOUNG LAWYER THAT ALLOWED ME TO ACHIEVE MY DREAM

11:13AM  9    OF BEING A FIRST CHAIR TRIAL LAWYER TO THE YOUNGER LAWYERS WHO

11:13AM  10   I KNOW WILL BE CRITICAL IN MOVING THIS LITIGATION FORWARD.

11:13AM  11        YOUR HONOR, I ALSO FUND MY LAW FIRM MYSELF.  I HAVE TRIED

11:13AM  12   A CASE HERE IN THE NORTHERN DISTRICT OF CALIFORNIA.  I TRIED A

11:13AM  13   CASE IN FRONT OF JUDGE ORRICK SHORTLY BEFORE THE PANDEMIC.

11:13AM  14             THE COURT:  OKAY.  THANK YOU.

11:13AM  15             MS. WALSH:  THANK YOU, YOUR HONOR.

11:14AM  16             THE COURT:  CAN WE GET HIM ON?

11:14AM  17             THE CLERK:  I SEE HIM ON, BUT I HAVE TO REBOOT THE

11:14AM  18   SYSTEM.

11:14AM  19             THE COURT:  ALL RIGHT.  WE'LL GO AHEAD AND REBOOT,

11:14AM  20   AND WE WILL BREAK AND START AT 11:30.  SO WE WILL START

11:14AM  21   PROMPTLY AT 11:30, SO DO NOT GO FAR.  THANK YOU.

11:14AM  22        (RECESS FROM 11:14 A.M. UNTIL 11:30 A.M.)

11:30AM  23             THE COURT:  WE'RE BACK ON THE RECORD.

11:30AM  24        THE RECORD WILL REFLECT THAT THE COURT BELIEVES EVERYONE

11:30AM  25   IS HERE.  I'M NOT TAKING ROLL CALL.

11:30AM  1          I HAVE ONE MORE PERSON WHO WOULD LIKE TO BE CONSIDERED WHO

11:30AM  2     IS ON ZOOM, MR. WEINKOWITZ.

11:30AM  3          MR. WEINKOWITZ:  YES, YOUR HONOR.  GOOD MORNING,

11:30AM  4     YOUR HONOR.  THANK YOU FOR ALLOWING ME TO APPEAR BY ZOOM.  I

11:30AM  5     TESTED POSITIVE FOR COVID YESTERDAY.  I INTENDED TO BE THERE

11:30AM  6     LIVE, BUT I THOUGHT IT WISE NOT TO COME.

11:30AM  7          I'M A PARTNER AT LEVIN, SEDRAN AND BERGMAN IN

11:30AM  8     PHILADELPHIA, PENNSYLVANIA.  WHAT I WOULD LIKE TO DO IS START

11:30AM  9     WITH, IS TO TELL YOU WHY I THINK THIS CASE IS IMPORTANT AND WHY

11:30AM  10    I WANT TO BE INVOLVED.

11:30AM  11         THIS CASE IS ABOUT ADOLESCENTS WHO ARE VICTIMS OF A

11:30AM  12    SEEMINGLY INNOCUOUS AND SOMEWHAT UBIQUITOUS PRODUCT, ONE THAT

11:31AM  13    CAN CAUSE GREAT HARM.  I HAVE A NINE-YEAR-OLD DAUGHTER WHO WILL

11:31AM  14    SOON BE IN ADOLESCENCE.  IN MANY WAYS, SHE ALREADY IS IN

11:31AM  15    ADOLESCENCE.  BUT BEFORE I LEARNED WHAT I NOW KNOW FOR

11:31AM  16    INVESTIGATING AND BEING INVOLVED IN THIS CASE, I MIGHT HAVE

11:31AM  17    ALLOWED HER TO USE SOCIAL MEDIA MUCH EARLIER THAN I WILL NOW.

11:31AM  18         HER FRIENDS ARE STARTING TO USE IT.  SHE COMES HOME, SHE

11:31AM  19    ASKS, I RESIST.  SHE ASKS FIVE MORE TIMES.  SHE ASKS MY

11:31AM  20    HUSBAND.  WE RESIST.

11:31AM  21         THIS LITIGATION IS IMPORTANT BECAUSE PARENTS DON'T KNOW

11:31AM  22    WHAT WE KNOW, WHAT THE PEOPLE IN THE COURTROOM KNOW, AND IN MY

11:31AM  23    MIND THIS IS A PUBLIC HEALTH, MENTAL HEALTH ISSUE THAT I HOPE

11:31AM  24    TO BE PART OF THE SOLUTION.

11:31AM  25         MY CURRENT -- MY FIRM CURRENTLY HAS THREE CASES ON FILE,

11:31AM   1        YOUR HONOR, AND WE REPRESENT A GROWING NUMBER OF PLAINTIFFS,

11:31AM   2    MANY OF WHOM ARE LGBTQ YOUTH.

11:31AM   3        AS A MEMBER OF THAT COMMUNITY, I BELIEVE I'M IN A UNIQUE

11:31AM   4    POSITION OF UNDERSTANDING THE NEEDS OF THE LGBTQ PLAINTIFFS

11:31AM   5    THAT WILL BE INVOLVED IN THIS CASE.

11:32AM   6        I HAVE HAD THE HONOR OF WORKING WITH MANY OF THE LAWYERS

11:32AM   7    THAT ARE BEFORE YOU TODAY.  SOME WITH MR. SEEGER.  I THINK THE

11:32AM   8    FIRST LITIGATION I WORKED WITH MR. SEEGER WAS THE PPA

11:32AM   9    LITIGATION.  I WAS A YOUNG ATTORNEY IN THE TRENCHES.  HE WAS MY

11:32AM  10    BOSS.

11:32AM  11        ALEX WALSH, WHO YOU JUST HEARD FROM, SHE WAS ONE OF THE

11:32AM  12    TOUGHEST ADVERSARIES THAT I'VE EVER FACED IN A VERY HARD FOUGHT

11:32AM  13    LITIGATION WHERE I WAS HONORED TO BE THE LEAD IN THE XARELTO

11:32AM  14    STATE COURT LITIGATION.  WE ZEALOUSLY FOUGHT AGAINST EACH

11:32AM  15    OTHER.  I'M GLAD NOW THAT ALEX IS A PLAINTIFFS' LAWYER.

11:32AM  16        AS SHE SAID, WE WERE PROFESSIONAL, WE WERE ABLE TO RESOLVE

11:32AM  17    MANY ISSUES TOGETHER, AND I HOPE TO BE ABLE TO CONTRIBUTE THAT.

11:32AM  18        SHOULD I BE SO LUCKY TO BE APPOINTED BY YOUR HONOR, I LOOK

11:32AM  19    FORWARD TO WORKING WITH THOSE THAT I HAVEN'T WORKED WITH THAT

11:32AM  20    MIGHT BE ON THE TEAM.

11:32AM  21        MY BACKGROUND AND HOW I THINK I CAN CONTRIBUTE TO THIS

11:32AM  22    CASE.  I THINK THIS IS A VERY COMPLEX CASE.  IT HAS GOT VERY

11:32AM  23    WELL FINANCED DEFENDANTS ON THE OTHER SIDE, AND IT REQUIRES A

11:32AM  24    HIGHLY ORGANIZED AND EXPERIENCED LEADERSHIP TEAM.

11:33AM  25        TO YOUR FIRST QUESTION, YOUR HONOR, WHICH IS WHY SHOULD I

```
11:33AM    1        APPOINT SUCH A LARGE TEAM UP-FRONT?  MAYBE I SHOULD WAIT.

11:33AM    2             I THINK IT'S VERY, VERY IMPORTANT FOR HAVING A COHESIVE

11:33AM    3        TEAM ON THE GROUND READY TO GO RIGHT AWAY.

11:33AM    4             THERE'S A LOT OF WORK THAT GOES ON BEHIND THE SCENES EVEN

11:33AM    5        WHEN A MASTER COMPLAINT IS BEING DRAFTED, EVEN WHEN A MOTION TO

11:33AM    6        DISMISS IS BEING DRAFTED, AND I THINK THAT IT BENEFITS BOTH

11:33AM    7        PARTIES, THE DEFENSE TO HAVE A TEAM IN PLACE RIGHT AWAY READY

11:33AM    8        TO GO THE MOMENT THAT I HOPE YOU DENY THE MOTION TO DISMISS.

11:33AM    9        VERY IMPORTANT, I THINK, PARTICULARLY, SINCE WE'RE ALL FROM

11:33AM   10        DIFFERENT LAW FIRMS, THAT COHESION IS ABSOLUTELY ESSENTIAL, AND

11:33AM   11        I HAVE BEEN INVOLVED IN A LOT OF MDL CASES AND STATE COURT

11:33AM   12        CASES, AND THAT REALLY IS, I THINK, VERY, VERY IMPORTANT.

11:33AM   13             WHAT CAN I CONTRIBUTE?  I HAVE 20 YEARS OF EXPERIENCE

11:33AM   14        WORKING IN MASS TORT ARENAS BOTH IN MASS MDL'S AND STATE COURT.

11:33AM   15             I WOULD BRING TO THIS CASE, I HOPE, EXPERIENCES FOR EVERY

11:34AM   16        FACET.  I'VE WORKED ON SCIENCE COMMITTEES DEVELOPING EXPERTS,

11:34AM   17        I'VE WORKED ON BELLWETHER COMMITTEES SELECTING CASES, I'VE LED

11:34AM   18        DISCOVERY COMMITTEES, I'VE TAKEN KEY DEPOSITIONS OF COMPANY

11:34AM   19        WITNESSES.  THOSE DEPOSITIONS HAVE BEEN PLAYED AT TRIAL IN MANY

11:34AM   20        MDL CASES.

11:34AM   21             I HAVE BEEN ON MANY BELLWETHER TRIAL TEAMS IN VARIOUS

11:34AM   22        CAPACITIES, AND I'VE HAD THE HONOR TO BE APPOINTED ON SEVERAL

11:34AM   23        SETTLEMENT TEAMS THAT HAVE NEGOTIATED AND IMPLEMENTED VERY

11:34AM   24        LARGE GLOBAL SETTLEMENTS.

11:34AM   25             ONE OF THE THINGS I DEVELOPED AN EXPERTISE IN AS A RESULT
```

11:34AM 1    OF BEING APPOINTED TO BE A LEADER IN MASS TORTS IN STATE COURT

11:34AM 2    IS WORKING WITH MDL LAWYERS.  SOMETIMES STATE LAWYERS AND MDL

11:34AM 3    LAWYERS HAVE VERY DIVERGING INTERESTS AND BEING A LEADERSHIP IN

11:34AM 4    A STATE COURT WORKING WITH AN MDL COURT DEALING WITH

11:34AM 5    PLAINTIFFS' LAWYERS THAT HAVE DIVERGING INTERESTS IS SOMETHING

11:34AM 6    THAT IS DIFFICULT TO DO AT TIMES.

11:34AM 7         I CURRENTLY SERVE ON THE PSC IN THE JUUL LITIGATION BEFORE

11:34AM 8    JUDGE ORRICK.  THERE I AM CO-CHAIR OF DISCOVERY, AND I AM CHAIR

11:35AM 9    OF THE LONG BRIEFING COMMITTEE.

11:35AM 10        THE COURT:  SO LET ME INTERRUPT YOU BECAUSE THAT'S

11:35AM 11   THE QUESTION I HAD ABOUT YOUR APPLICATION.  AND IF YOU'VE BEEN

11:35AM 12   LISTENING, IT'S NOT GOING TO BE A SURPRISE, WHICH IS, HOW DO

11:35AM 13   YOU HAVE THE TIME IN LIGHT OF THE JUUL LITIGATION STILL GOING

11:35AM 14   ON?

11:35AM 15        MR. WEINKOWITZ:  I'VE THOUGHT ABOUT THIS A LOT, AND

11:35AM 16   I WOULDN'T HAVE APPLIED TO THIS CASE, APPLIED TO BE A MEMBER OF

11:35AM 17   THE LEADERSHIP IN THIS CASE IF I DIDN'T THINK THAT I HAD THE

11:35AM 18   TIME.

11:35AM 19        CASES HAVE LIFECYCLES.  I BELIEVE THAT THE JUUL LIFECYCLE,

11:35AM 20   THE JUUL CASE IS IN A VERY MATURE STATE.  THAT LEAVES ME READY,

11:35AM 21   WILLING, AND ABLE TO DEVOTE TIME TO THIS CASE.

11:35AM 22        THE LONG BRIEFING -- I'M CHAIR OF THE LONG BRIEFING.  MUCH

11:35AM 23   OF THE LONG BRIEFING IN THE JUUL CASE HAS ALREADY BEEN DONE AND

11:35AM 24   COMPLETED.  WE'VE OBVIOUSLY GOTTEN THROUGH THE MOTIONS TO

11:35AM 25   DISMISS, WE'VE GOTTEN THROUGH DAUBERT, WE'VE GOTTEN THROUGH THE

11:35AM 1    SUMMARY JUDGMENT PHASE, NOT THAT THERE'S NOT A LOT MORE

11:36AM 2    BRIEFING TO DO IN TRIAL, WE EVEN GOT THROUGH THE MOTION IN

11:36AM 3    LIMINE STAGE.

11:36AM 4         MY ROLE IN THE TRIALS IS UNFORTUNATELY, OR FORTUNATELY, I

11:36AM 5    GOT TAGGED WITH DEPOSITION DESIGNATIONS.  SO MY JOB IS IN LARGE

11:36AM 6    MEASURE CUTTING AND NEGOTIATING WITH THE OTHER SIDE ON WHAT THE

11:36AM 7    DEPOSITION DESIGNATIONS ARE.  A LOT OF THAT WORK IS ALREADY

11:36AM 8    DONE, AND WE'RE READY FOR TRIAL IN JANUARY, AND THAT DEPOSITION

11:36AM 9    DESIGNATION WORK IS WELL UNDERWAY.

11:36AM 10        SO I THINK THAT I HAVE TIME NECESSARY TO DEVOTE TO THIS

11:36AM 11   CASE, AND I WILL GIVE IT EVERYTHING THAT I HAVE.

11:36AM 12        MY FIRM HAS THE WHEREWITHAL TO MAKE THE NECESSARY

11:36AM 13   SUSTAINED AND LONG-TERM COMMITMENT OF NOT JUST TIME BUT OF

11:36AM 14   RESOURCES.  AND IN THAT REGARD, WE ARE -- WE DO NOT TAKE THIRD

11:36AM 15   PARTY FUNDING.  WE ARE SELF-FUNDED.

11:36AM 16        I BASICALLY, UNLESS YOUR HONOR HAS ANY MORE QUESTIONS OF

11:36AM 17   ME, I'M READY TO GIVE EVERYTHING I HAVE TO THIS CASE AND TO

11:36AM 18   CONTRIBUTE TO THE BEST OF MY ABILITY.

11:37AM 19        THE COURT:  NO, I DON'T.  THANK YOU VERY MUCH.  I

11:37AM 20   APPRECIATE YOU NOT GETTING THE REST OF US SICK.

11:37AM 21        (LAUGHTER.)

11:37AM 22        MR. WEINKOWITZ:  THANK YOU, YOUR HONOR.  THANK YOU

11:37AM 23   FOR THE COURTESY.

11:37AM 24        THE COURT:  YOU'RE WELCOME.

11:37AM 25        OKAY.  JUST A COUPLE MORE QUESTIONS.  IF THERE'S ANYBODY

11:37AM 1    IN THE AUDIENCE WHO IS A PLAINTIFFS' LAWYER WHO WANTS TO BE

11:37AM 2    HEARD ON ANY OF THESE TOPICS, THIS IS YOUR OPPORTUNITY TO STAND

11:37AM 3    AND COME FORWARD AND IDENTIFY YOURSELF.

11:37AM 4         NO?  SOMEONE HAS GOT A PHONE ON THOUGH.  YOU SHOULD TURN

11:37AM 5    IT OFF IF YOU DO.

11:37AM 6         OKAY.  FROM THE DEFENSE SIDE -- WHEN I FIRST -- I BELIEVE

11:37AM 7    IN ACTING PROFESSIONALLY, THE RULES OF PROFESSIONAL CONDUCT.

11:38AM 8         WHEN I FIRST GOT TO THIS BENCH I USED A PROTOCOL,

11:38AM 9    PROFESSIONAL GUIDELINES FOR MY STATE COURT CASES.  THERE WAS NO

11:38AM 10   SUCH THING HERE IN THE FEDERAL COURT, AND I WAS TOLD WHEN JUDGE

11:38AM 11   BREYER CONVINCED ME TO TAKE THAT MDL THAT I SHOULDN'T WORRY

11:38AM 12   BECAUSE I HAVE THE BEST LAWYERS IN THE DISTRICT AND IN THE

11:38AM 13   COUNTRY WHO LITIGATE THESE CASES, WHICH WAS PART OF HIS WAY TO

11:38AM 14   GET ME TO SAY YES.

11:38AM 15        BUT WHAT I DECIDED TO DO WAS TO REQUIRE THAT THE LAWYERS

11:38AM 16   IN THAT MDL, GIVEN THAT THEY WERE THE BEST I WAS TOLD, REQUIRED

11:38AM 17   THEM TO WRITE A DOCUMENT WHICH THEY COULD LIVE WITH WHICH WERE

11:38AM 18   RULES FOR PROFESSIONAL CONDUCT.  I GAVE THEM SAMPLES, AND THOSE

11:38AM 19   LAWYERS CREATED THAT DOCUMENT, WHICH IS NOW THE RULES FOR

11:38AM 20   PROFESSIONAL CONDUCT FOR OUR DISTRICT.

11:39AM 21        I REQUIRE THEM.  I ENFORCE THEM.

11:39AM 22        I HAVE SANCTIONED LAWYERS WHEN I READ LOST -- NOT LOST

11:39AM 23   TRANSCRIPTS -- WHEN I READ DEPOSITION TRANSCRIPTS AND I'VE

11:39AM 24   NOTICED THAT PEOPLE HAVE INSTRUCTED WITNESSES NOT TO ANSWER AND

11:39AM 25   HAVE NO JUSTIFIABLE BASIS FOR IT.  I DON'T TOLERATE

11:39AM 1     GAMESMANSHIP.

11:39AM 2         AND IF YOU DON'T KNOW ME, I WOULD SUGGEST THAT YOU NOT

11:39AM 3     TEST ME BECAUSE I'LL DO IT.  I USED TO DO IT A LOT.  I THINK I

11:39AM 4     HAD A REPUTATION IN WHICH CASE NOW I DON'T HAVE TO SANCTION

11:39AM 5     BECAUSE NO ONE WANTS TO TEST ME ANYMORE.  THAT'S KIND OF WHAT I

11:39AM 6     LEARNED.  SO I HAVEN'T SANCTIONED IN A LONG TIME, BUT I WILL IF

11:39AM 7     I HAVE TO.

11:39AM 8         WHAT I WOULD LIKE TO KNOW FROM THE DEFENSE IS WHETHER ANY

11:39AM 9     OF YOU HAVE EVER FELT COMPELLED TO FILE A MOTION FOR SANCTIONS

11:39AM 10    AGAINST ANY OF THE PLAINTIFFS WHO ARE ASKING FOR COURT

11:40AM 11    APPOINTED -- FOR -- TO BE APPOINTED BY THE COURT BECAUSE I

11:40AM 12    DON'T TOLERATE IT ON EITHER SIDE?

11:40AM 13        AND I DON'T KNOW HOW YOU EXPECT ME TO KNOW IF I'M NOT

11:40AM 14    TOLD, RIGHT?  I'M NOT OUT THERE IN THE HALLWAYS.  I'M NOT THERE

11:40AM 15    IN THE DEPOSITIONS.

11:40AM 16        WE HAVE A LOT OF CASES.  WE HAVE A LOT OF WORK.  I FOCUS

11:40AM 17    ON WHAT I NEED TO DO.  AND BY THE WAY, I HAVE KIDS TOO.  I'M

11:40AM 18    NOW AN EMPTY NESTER, BUT I USED TO THEN GO HOME AND SEE MY

11:40AM 19    KIDS, RIGHT?

11:40AM 20        SO I DON'T KNOW UNLESS I'VE HAD TO RULE ON THESE ISSUES OR

11:40AM 21    DEAL WITH THEM IN SOME OTHER CONTEXT.

11:40AM 22        AND I WANT TO KNOW.

11:40AM 23        SO NOW IS YOUR OPPORTUNITY ON THE DEFENSE SIDE TO LET ME

11:40AM 24    KNOW.

11:40AM 25        ANYONE FROM COVINGTON?

| | | |
|---|---|---|
| 11:40AM | 1 | MS. JONES:  THANK YOU, YOUR HONOR. |
| 11:40AM | 2 | JUST IN THE INTEREST OF STREAMLINING OUR PRESENTATION, I'M |
| 11:41AM | 3 | GOING TO LIKELY BE TAKING THE LEAD AS THE SPOKESPERSON FOR THE |
| 11:41AM | 4 | DEFENSE SIDE, BUT OBVIOUSLY I INVITE MY COLLEAGUES TO JOIN IF |
| 11:41AM | 5 | THEY HAVE SOMETHING SPECIFIC THAT THEY NEED TO RAISE. |
| 11:41AM | 6 | THE COURT:  AND THIS IS MS. JONES, RIGHT? |
| 11:41AM | 7 | MS. JONES:  YES, YOUR HONOR, PHYLLIS JONES FROM |
| 11:41AM | 8 | COVINGTON. |
| 11:41AM | 9 | WE DIDN'T FILE AN OBJECTION TO THE PROPOSED LEADERSHIP |
| 11:41AM | 10 | STRUCTURE WITH THE COURT, AND THAT'S BECAUSE AT THE END OF THE |
| 11:41AM | 11 | DAY WE DEFERRED TO THE COURT'S JUDGMENT ON THE APPROPRIATE SIZE |
| 11:41AM | 12 | OF THE LEADERSHIP STRUCTURE AND WHO SHOULD COMPRISE IT. |
| 11:41AM | 13 | I'M DRAWING ON MY OWN KIND OF MEMORY AND EXPERIENCE HERE |
| 11:41AM | 14 | IN SAYING THAT WITH RESPECT TO THE FOLKS WHO HAVE BEEN |
| 11:41AM | 15 | PROPOSED, I HAVE NO REASON TO THINK THAT THERE'S EVER BEEN ANY |
| 11:41AM | 16 | OCCASION WHERE THERE'S BEEN A NEED FOR A MOTION FOR SANCTIONS |
| 11:41AM | 17 | OR EVEN ANYTHING APPROACHING THAT. |
| 11:41AM | 18 | THERE ARE FOLKS ON THE PLAINTIFFS' SIDE WHOM I KNOW |
| 11:41AM | 19 | PERSONALLY, AND THERE ARE FOLKS WHO I DON'T NECESSARILY KNOW, |
| 11:41AM | 20 | BUT WE'VE ALL HAD AN OPPORTUNITY TO REVIEW THE APPLICATIONS |
| 11:41AM | 21 | VERY CAREFULLY. |
| 11:41AM | 22 | AS YOUR HONOR NOTED, IT'S A LARGE GROUP WHOSE BEEN |
| 11:41AM | 23 | PROPOSED, AND FROM OUR PERSPECTIVE, THE HIGHEST PRIORITY IS |
| 11:42AM | 24 | GETTING MOTIONS ON FILE WITH THE COURT SO THAT THESE |
| 11:42AM | 25 | CROSS-CUTTING DISPOSITIVE ISSUES CAN BE RESOLVED. |

11:42AM  1          WE CERTAINLY WOULD NOT WANT A LEADERSHIP STRUCTURE ON THE

11:42AM  2     PLAINTIFFS' SIDE THAT SOMEHOW IMPAIRS OUR ABILITY TO DO THAT,

11:42AM  3     BUT BEYOND THAT BIG PICTURE CONCERN, WE'RE HAPPY TO DEFER TO

11:42AM  4     YOUR HONOR'S JUDGMENT ON THE CONSTITUTION OF THE LEADERSHIP

11:42AM  5     STRUCTURE.

11:42AM  6               THE COURT:  ALL RIGHT.  MR. SCHMIDT, ANY -- DO YOU

11:42AM  7     HAVE ANY INFORMATION ABOUT THE PLAINTIFFS' ATTORNEYS?

11:42AM  8               MR. SCHMIDT:  NO, YOUR HONOR.  I'VE WORKED WITH A

11:42AM  9     NUMBER OF THE PLAINTIFFS' ATTORNEYS, AND I'VE WORKED WITH A

11:42AM 10     NUMBER OF THEM, BUT NOT IN TERMS OF THE SANCTIONABLE CONDUCT AS

11:42AM 11     YOUR HONOR IDENTIFIED.

11:42AM 12               THE COURT:  ANYONE FROM MUNGER, TOLLES, ANY

11:42AM 13     INFORMATION?

11:42AM 14               MR. BLAVIN:  NO, YOUR HONOR, WE'RE NOT AWARE OF ANY

11:42AM 15     SANCTIONS MOTIONS THAT WE FILED AGAINST ANY OF THE FIRMS.

11:42AM 16               THE COURT:  OKAY.  KING & SPALDING?  MR. DRAKE?

11:42AM 17               MR. DRAKE:  NO, YOUR HONOR, WE DON'T HAVE ANY

11:43AM 18     INFORMATION TO REPORT IN THAT REGARD.

11:43AM 19               THE COURT:  OKAY.

11:43AM 20               MR. DRAKE:  THANK YOU, YOUR HONOR.

11:43AM 21               THE COURT:  MS. PIERSON?

11:43AM 22               MS. PIERSON:  NO, YOUR HONOR, NO INFORMATION TO

11:43AM 23     REPORT.

11:43AM 24               THE COURT:  THANK YOU.  FINALLY, MS. WHITE?

11:43AM 25               MS. WHITE:  LIKEWISE, NO INFORMATION FROM GOOGLE.

11:43AM  1          THE COURT:  GREAT TO HEAR.  I DIDN'T ANTICIPATE THAT

11:43AM  2     THERE WOULD BE, BUT I DO LIKE TO ASK, DOT MY I'S, CROSS MY T'S.

11:43AM  3          FOR PURPOSES OF THIS CASE, MAGISTRATE JUDGE HIXSON WILL

11:43AM  4     MANAGE ANY AND ALL DISCOVERY DISPUTES IF WE GET THERE.  HE IS

11:43AM  5     APPOINTED.

11:43AM  6          I WILL ISSUE A WRITTEN ORDER WITH MY DECISIONS ON

11:43AM  7     PLAINTIFFS' COUNSEL.  I DO THINK, THOUGH, WE CAN MAKE A LITTLE

11:44AM  8     BIT OF PROGRESS.  I DO PLAN ON APPOINTING BOTH MR. SEEGER AND

11:44AM  9     MS. HAZAM.

11:44AM  10          SO I'LL HAVE -- MS. HAZAM, WHY DON'T YOU COME TO THE MIC

11:44AM  11     TO DEAL WITH THE NEXT SET OF ISSUES.

11:44AM  12          AND THEN I TAKE IT -- MS. JONES, YOU'RE AT THE MIC.

11:44AM  13          MS. JONES:  I AM, YOUR HONOR.  THANK YOU.

11:44AM  14          THE COURT:  OKAY.  I DO WANT TO TALK ABOUT HOW TO

11:44AM  15     GET -- THE FIRST TOPIC SEEMS TO ME HOW TO GET A COMPLAINT UP

11:45AM  16     AND ISSUED SO THAT WE CAN HAVE BRIEFING ON A MOTION TO DISMISS.

11:45AM  17          I OUTLINED IN A KIND OF VERY SKELETAL WAY WHAT MY INITIAL

11:45AM  18     THOUGHTS WERE WITH RESPECT TO THIS TOPIC.  IT COULD BE THAT I

11:45AM  19     SHOULD JUST SET ANOTHER MEETING TO GIVE PLAINTIFFS' COUNSEL AN

11:45AM  20     OPPORTUNITY TO PULL SOMETHING TOGETHER BEFORE WE STRUCTURE WHAT

11:45AM  21     THE MOTION PRACTICE WILL LOOK LIKE.

11:45AM  22          BUT I DO WANT TO HAVE A MASTER COMPLAINT BECAUSE WHATEVER

11:45AM  23     DECISIONS I MAKE, I WANT THEM TO BE -- I WANT THEM TO BE ON AN

11:45AM  24     OPERATIVE COMPLAINT.

11:45AM  25          THE WHOLE POINT OF THE MDL PROCESS IS TO STREAMLINE, AND

11:45AM 1    IF THE PLAINTIFFS HAVEN'T ADOPTED THE COMPLAINT ON WHICH THERE

11:46AM 2    IS MOTION PRACTICE, THEN IT'S NOT BINDING.  SO IT SEEMS TO ME

11:46AM 3    THAT THERE HAS TO BE SOME KIND OF MASTER APPROACH.

11:46AM 4        THE DEFENDANTS ARE ENTITLED TO KNOW WHICH SPECIFIC CLAIM

11:46AM 5    EACH SPECIFIC PLAINTIFF IS BRINGING AS AGAINST EACH SPECIFIC

11:46AM 6    DEFENDANT.

11:46AM 7        THE DEFENDANTS ARE ENTITLED TO KNOW WHAT SPECIFIC

11:46AM 8    ALLEGATIONS RELATE TO THEM, AND PERHAPS THERE ARE THREE MASTER

11:46AM 9    COMPLAINTS AGAINST EACH OF THE DEFENDANTS.

11:46AM 10       AS MR. TELLIS KNOWS, HE TRIED TO BRING A CLAIM AGAINST

11:46AM 11   THREE BANKS AND I SAID, NO, I NEED THREE SEPARATE COMPLAINTS.

11:46AM 12   AND WE WORKED THROUGH THAT, BUT IT TURNED OUT, YOU KNOW, TWO

11:46AM 13   WERE DEALT WITH IN ONE WAY AND A THIRD WAS DEALT WITH IN AN

11:47AM 14   ENTIRELY SEPARATE WAY BECAUSE THE DEFENDANTS ARE SEPARATE

11:47AM 15   ENTITIES.

11:47AM 16       SO I CAN ENVISION LOTS OF DIFFERENT WAYS TO BOTH IDENTIFY

11:47AM 17   WAYS THAT I CAN DEAL WITH THE INDIVIDUAL DEFENDANTS AND THEIR

11:47AM 18   NEEDS PLUS GET EFFICIENCIES IN TERMS OF BRIEFING ON COMMON

11:47AM 19   ISSUES.

11:47AM 20       AS I ALSO SAID, I DO THINK THAT IF YOU'RE GOING TO END UP

11:47AM 21   WITH SOME MASTER COMPLAINT THAT HAS 20 CAUSES OF ACTION, IT

11:47AM 22   MAKES NO SENSE TO ME -- BECAUSE REMEMBER, I HAVE A SMALL

11:47AM 23   TEAM -- IT MAKES NO SENSE TO ME TO HAVE EVERYTHING BRIEFED IN

11:47AM 24   THE FIRST ORDER.

11:47AM 25       WHAT I'D LIKE TO HAVE YOU DO IS IDENTIFY THE STRONGEST

11:47AM 1    ONES THAT YOU THINK YOU HAVE FROM THE PLAINTIFFS' SIDE AND THEN

11:47AM 2    HAVE THE DEFENDANTS TAKE -- YOU KNOW, MAKE A MOTION AS TO

11:47AM 3    THOSE.  AND IF YOU SURVIVE THAT, THEN I'M WILLING TO OPEN

11:48AM 4    DISCOVERY.

11:48AM 5         SO THOSE WERE MY INITIAL THOUGHTS.

11:48AM 6         WE'LL START WITH YOU, MS. HAZAM.

11:48AM 7             MS. HAZAM:  THANK YOU, YOUR HONOR.

11:48AM 8         WE AGREE THAT A MASTER COMPLAINT WILL SERVE TO STREAMLINE

11:48AM 9    THE CLAIMS IN THIS LITIGATION.  THERE'S A REASON IT'S A TOOL

11:48AM 10   THAT IS USED UNIVERSALLY IN MASTER MDL'S.

11:48AM 11        AS TO WHETHER THAT COMPLAINT SHOULD BE ONE OMNIBUS

11:48AM 12   COMPLAINT THAT INCLUDES ALL DEFENDANTS AND ALL CLAIMS, OR

11:48AM 13   PERHAPS BROKEN INTO SEPARATE COMPLAINTS AGAINST EACH DEFENDANT,

11:48AM 14   I THINK THE PLAINTIFFS WOULD APPRECIATE THE OPPORTUNITY TO

11:48AM 15   DISCUSS THAT AND PERHAPS DISCUSS IT WITH DEFENDANTS TO THE

11:48AM 16   EXTENT THAT IT MAKES SENSE.

11:48AM 17        I HAVE SEEN IT DONE BOTH WAYS.  IT COULD BE A SINGLE

11:48AM 18   COMPLAINT THAT BREAKS OUT ALLEGATIONS BY DEFENDANT WHERE

11:48AM 19   NECESSARY.

11:48AM 20        EACH INDIVIDUAL PLAINTIFF COULD THEN JOIN THAT MASTER

11:48AM 21   COMPLAINT THROUGH A SHORT FORM COMPLAINT THAT WOULD IDENTIFY,

11:48AM 22   AMONG OTHER THINGS, THE INFORMATION THAT YOUR HONOR JUST

11:49AM 23   MENTIONED, THE DEFENDANTS BEING ACCUSED, THE CLAIMS BEING

11:49AM 24   RAISED, THE PRODUCTS THAT HAVE BEEN USED, AND THE CAUSES OF

11:49AM 25   ACTION THAT WOULD BE ASSERTED.  THERE MAY BE OTHER --

11:49AM   1          THE COURT:  AND I DO AGREE WITH THE DEFENSE THAT THE

11:49AM   2     INDIVIDUAL PLAINTIFFS MUST SPECIFICALLY IDENTIFY WHICH PORTIONS

11:49AM   3     OF THE OPERATIVE COMPLAINT AND CLAIMS THEY AGREE UPON AND WHICH

11:49AM   4     ONES THEY DECLINE.

11:49AM   5          OBVIOUSLY, IT SEEMS TO ME THAT IT IS IMPORTANT TO ADD IN

11:49AM   6     THERE ANY FACTS THAT ARE GOING TO BE UNIQUE TO THAT INDIVIDUAL

11:49AM   7     PLAINTIFF.

11:49AM   8          AND IT COULD ALSO BE THAT AT THE TIME THAT THEY DO THAT,

11:49AM   9     WE HAVE AN INITIAL FACT SHEET WHICH WILL IDENTIFY KEY THINGS

11:49AM  10     THAT WILL BE UP -- KEY INFORMATION ABOUT THAT PLAINTIFF WHICH

11:49AM  11     WILL BE IDENTIFIED OR UPDATED, I MEAN, OVER THE COURSE OF TIME.

11:50AM  12          MS. HAZAM:  YES, YOUR HONOR.  PLAINTIFF FACT SHEETS

11:50AM  13     ARE COMMON IN MDL'S AS WELL.  THEIR USE TYPICALLY TRIGGERS A

11:50AM  14     DEFENDANT FACT SHEET, SO THERE'S A RECIPROCAL EXCHANGE OF BASIC

11:50AM  15     INFORMATION.

11:50AM  16          SO IF WE'RE PROCEEDING TO THAT STEP, WHICH IS OFTEN AN

11:50AM  17     EARLY STEP IN DISCOVERY IN CASES, YOU COULD CHARACTERIZE IT

11:50AM  18     DIFFERENTLY, BUT THAT IS OFTEN WHEN IT BEGINS AND HOW IT

11:50AM  19     BEGINS.

11:50AM  20          THEN PLAINTIFFS WOULD SUBMIT THAT THE DEFENDANT SHOULD

11:50AM  21     HAVE OBLIGATIONS IN RETURN TO IDENTIFY CERTAIN INFORMATION THAT

11:50AM  22     THEY HAVE ABOUT THE PARTICULAR PLAINTIFFS' USE OF THEIR

11:50AM  23     PRODUCT, NONUSE, ET CETERA.

11:50AM  24          THE COURT:  OKAY.  KEEP GOING.

11:50AM  25          MS. HAZAM:  I UNDERSTAND WHAT YOUR HONOR WAS SAYING

11:50AM 1    WITH REGARD TO THE PORTIONS OF THE MASTER COMPLAINT THAT WOULD

11:50AM 2    BE JOINED OR DECLINED NEEDING TO BE IDENTIFIED.

11:50AM 3        WITH REGARDS TO BRIEFING AND POTENTIAL PHASING OF

11:50AM 4    BRIEFING, I THINK PLAINTIFFS ARE OPEN TO SEEKING TO PROPOSE

11:51AM 5    SOME FORM OF PHASING AND TAKING INTO CONSIDERATION YOUR HONOR'S

11:51AM 6    INSTRUCTION REGARDING THE STRONGEST OF CLAIMS.

11:51AM 7        I THINK THERE IS AN ISSUE OF TIMING, AS I IDENTIFIED

11:51AM 8    EARLIER, THAT WE WOULD LIKE THE COURT'S GUIDANCE REGARDING

11:51AM 9    BECAUSE THERE ARE ISSUES PENDING BEFORE THE SUPREME COURT AND

11:51AM 10   IT COULD HAVE A SHAPING EFFECT ON BRIEFING ON AT LEAST SOME OF

11:51AM 11   THE ISSUES.

11:51AM 12       THERE ARE ALSO ISSUES THAT THE DEFENDANTS HAVE SUGGESTED

11:51AM 13   THAT ARE CROSS CUTTING ACROSS PLAINTIFFS, AND PLAINTIFFS WOULD

11:51AM 14   RESPECTFULLY DISAGREE THAT THEY ARE CROSS-CUTTING IN THE MANNER

11:51AM 15   IN WHICH THE DEFENDANTS DESCRIBE, SPECIFICALLY WHETHER THE

11:51AM 16   DEFENDANTS' PLATFORM IS A PRODUCT, IS A SUBJECT OF STATE LAW.

11:51AM 17   STATE LAW AND THE STATE CASE LAW DO DIFFER IN THAT REGARD.  AND

11:51AM 18   THAT, WE WOULD SUBMIT, IS MORE APPROPRIATE ONCE WE GET TO A

11:51AM 19   PHASE OF CULLING PLAINTIFFS FOR BEING POTENTIAL BELLWETHERS TO

11:52AM 20   ADDRESS IT ON A STATE-BY-STATE BASIS.

11:52AM 21       THE FEDERAL LAW QUESTIONS ARE MORE CROSS-CUTTING.

11:52AM 22   CERTAINLY, THEY WILL APPLY TO MORE PLAINTIFFS.  THEY MAY NOT BE

11:52AM 23   DISPOSITIVE.  THEY MAY STILL TURN ON CLAIMS OR FACTS THAT ARE

11:52AM 24   ASSERTED, BUT THOSE ISSUES, AT LEAST THOSE IDENTIFIED BY THE

11:52AM 25   DEFENDANTS, NAMELY, SECTION 230 AND THE FIRST AMENDMENT, MAY BE

11:52AM 1    SHAPED BY THE COURT'S DECISION IN GONZALEZ, WHICH MAY BE COMING

11:52AM 2    AT AROUND THE TIME THAT WE WOULD GET TO A HEARING ON THOSE

11:52AM 3    MOTIONS.

11:52AM 4          THE COURT:  WELL, IT SEEMS TO ME THAT THERE ARE

11:52AM 5    GOING TO BE PLENTY OF ISSUES TO BRIEF.

11:52AM 6       SO ONE OF THE THINGS -- AND I UNDERSTAND THAT THE

11:52AM 7    PLAINTIFFS OR THE DEFENDANTS DON'T BELIEVE THAT THIS IS A

11:52AM 8    PRODUCT.

11:52AM 9       I ALSO UNDERSTAND THAT AT LEAST SOME OF THE PLAINTIFFS'

11:52AM 10   LAWYERS HAVE GONE TO GREAT PAINS TO SAY THAT THEY ARE NOT

11:53AM 11   BRINGING ACTIONS BASED UPON THE CONTENT OF THE PLATFORMS, AND I

11:53AM 12   ASSUME THAT THE DEFENDANTS DISAGREE, BUT THAT IS THEIR

11:53AM 13   COMPLAINT, AND I TAKE THAT AT FACE VALUE.

11:53AM 14      SO I THINK THE NOTION THAT THE DEFENDANTS' ATTEMPT TO

11:53AM 15   RECAST THE PLAINTIFFS' COMPLAINT IN THEIR OWN PREFERRED MANNER

11:53AM 16   WILL BE JUST REJECTED UNLESS THE SUPREME COURT PROVIDES SOME

11:53AM 17   GUIDANCE TO THE CONTRARY.

11:53AM 18      AND YOU CAN ALSO DO IT, YOU KNOW, TO PRESERVE THE ISSUE.

11:53AM 19      BUT YOU DON'T GET TO CONTROL THE COMPLAINT.  AND I'VE

11:53AM 20   THROWN OUT A CASE RELUCTANTLY, AND I UNDERSTAND HOW PARENTS

11:54AM 21   FEEL ABOUT THESE ISSUES.

11:54AM 22      BUT WHAT THE PLAINTIFFS HERE ARE TRYING TO DO IS SOMETHING

11:54AM 23   DIFFERENT, AND IT IS DIFFERENT WHETHER OR NOT THE DEFENDANTS

11:54AM 24   LIKE IT.  SO THAT IS THE ISSUE THAT I THINK NEEDS TO BE

11:54AM 25   ADDRESSED.

11:54AM 1      AND IT'S NOT ENTIRELY CLEAR TO ME THAT WAITING UNTIL LATER

11:54AM 2   TO DECIDE WHETHER OR NOT SOMETHING IS A PRODUCT IS HELPFUL.  IF

11:54AM 3   IT IS A PRODUCT IN 25 STATES AND NOT A PRODUCT IN ANOTHER 25

11:54AM 4   STATES, OR WHATEVER, MAYBE SOME STATES DON'T EVEN HAVE LAW, I

11:54AM 5   DON'T KNOW, THEN PERHAPS CERTAIN CLAIMS FOR CERTAIN PEOPLE GET

11:54AM 6   TO GO THROUGH AND OTHERS DO NOT.

11:54AM 7      BUT I ALSO DON'T KNOW WHAT THE LAW IS IN THE VARIOUS

11:55AM 8   STATES, AND I WOULD EXPECT THAT AN OPERATIVE COMPLAINT WOULD

11:55AM 9   INDICATE WHAT LAW YOU'RE PROCEEDING UNDER.

11:55AM 10      SO PERHAPS YOU'VE GOT A CLAIM THAT IS BASED ON A MAJORITY

11:55AM 11   RULE.  PERHAPS YOU HAVE A CLAIM THAT IS BASED ON A MINORITY

11:55AM 12   RULE.  IT'S NOT ENTIRELY CLEAR TO ME.  BUT THAT IS WHAT IS NEW

11:55AM 13   ABOUT THIS CASE.

11:55AM 14      AND IT SEEMS TO ME THAT THAT'S THE ISSUE THAT NEEDS TO BE

11:55AM 15   ADDRESSED OFF THE BAT.

11:55AM 16      COMMENTS?

11:55AM 17         MS. JONES:  YOUR HONOR, I THINK MUCH OF WHAT YOU

11:55AM 18   JUST SAID IS VERY MUCH IN LINE WITH THE DEFENDANTS' THINKING ON

11:55AM 19   HOW THESE CASES SHOULD PROCEED.

11:55AM 20      THERE REALLY IS A FUNDAMENTAL QUESTION AROUND WHETHER

11:55AM 21   THESE PLAINTIFFS CAN SURVIVE A MOTION TO DISMISS ON THE

11:56AM 22   PLEADINGS, AND WE'RE FULLY COMFORTABLE MOVING AGAINST WHATEVER

11:56AM 23   PLEADING HAPPENS TO BE IN PLACE AND TAKING THAT ON ITS FACE.

11:56AM 24      BUT AT THE RISK OF SOUNDING A LITTLE BIT TOO EXISTENTIAL,

11:56AM 25   THERE'S REALLY A QUESTION ABOUT WHETHER ANY OF US SHOULD BE

11:56AM  1    HERE GIVEN THE LAW ON THE SUBJECT THAT YOU JUST ADDRESSED,

11:56AM  2    WHETHER THESE COMMUNICATION SERVICES ARE IN FACT PRODUCTS AS A

11:56AM  3    MATTER OF LAW.  I WAS STRUCK BY WHAT YOU SAID EARLIER THAT YOU

11:56AM  4    HAVE NOT YET HAD A PRODUCTS CASE IN THE MDL SETTING, AND OUR

11:56AM  5    VIEW IS THAT THESE ARE NOT PROPERLY PLED PRODUCT LIABILITY

11:56AM  6    CASES.  THIS IS NOT, AS THE PLAINTIFFS HAVE DESCRIBED IT, A

11:56AM  7    MASS TORT BECAUSE THESE ARE COMMUNICATION SERVICES AND THE

11:56AM  8    CLAIMS ARE REALLY DRIVEN BY ALLEGATIONS OF HARM ARRIVING FROM

11:56AM  9    THIRD PARTY CONTENT.  EVERY INDIVIDUAL WHO USED THESE

11:56AM  10   APPLICATIONS WILL HAVE HAD A DIFFERENT EXPERIENCE WITH THE

11:56AM  11   SERVICE.

11:56AM  12          THE COURT:  I THINK THE QUESTION, THOUGH, THAT

11:56AM  13   YOU'RE ULTIMATELY GOING TO HAVE TO GRAPPLE WITH IS WHETHER IT

11:57AM  14   IS A PRODUCT THAT CREATES ADDICTIVE BEHAVIOR.

11:57AM  15       AND IF YOU DON'T GRAPPLE WITH IT, IF YOU CHOOSE TO JUST

11:57AM  16   IGNORE IT, THEN A RULING IS GOING TO -- WE'LL NOT BE ABLE TO

11:57AM  17   TAKE YOUR THOUGHTS INTO CONSIDERATION IF YOU DON'T GIVE THEM TO

11:57AM  18   ME.

11:57AM  19          MS. JONES:  AND WE FULLY UNDERSTAND THAT,

11:57AM  20   YOUR HONOR.  WE PROBABLY VIEW THAT AS KIND OF TWO DISTINCT

11:57AM  21   PIECES.

11:57AM  22       ONE IS JUST THE BASIC QUESTION OF WHETHER THESE ARE

11:57AM  23   PRODUCTS THAT SHOULD BE SUBJECT TO STRICT PRODUCT LIABILITY

11:57AM  24   DOCTRINE.  WE THINK THE LAW IN EVERY STATE IS SUPPORTIVE OF OUR

11:57AM  25   POSITION ON THESE FACTS.

| | |
|---|---|
| 11:57AM | 1 |

          THE COURT:  IS THE LAW THE SAME?

          MS. JONES:  INSOFAR AS THERE ARE A VARIETY OF COURTS
AROUND THE COUNTRY WHO HAVE DETERMINED THAT THESE TYPES OF
APPLICATIONS ARE NOT PRODUCTS.

        I MEAN, YOU, OF COURSE, ARE FAMILIAR WITH YOUR OWN
DECISION IN THE NETFLIX CASE FROM EARLIER THIS YEAR, THERE WAS
A DECISION IN HARRIS COUNTY, TEXAS WITH RESPECT TO INSTAGRAM,
AND THERE HAVE BEEN DECISIONS WITH RESPECT TO VIDEO GAMES AND
OTHER TYPES OF MEDIA SERVICES.

          THE COURT:  BUT EVEN IN THE NETFLIX CASE, IF THE
CONTENT WAS CENTRAL TO THAT CASE, THAT IS NOT WHAT IS BEING
ALLEGED.

          MS. JONES:  I THINK, YOUR HONOR, RESPECTFULLY, THAT
WE WOULD TAKE A DIFFERENT VIEW AT LEAST OF THE PLEADINGS AS
THEY EXIST TODAY.

        IN FACT, IF YOU JUST LISTEN TO WHAT SOME OF PLAINTIFFS'
COUNSEL SAID WHEN THEY APPROACHED THE BENCH TO DISCUSS THEIR
LEADERSHIP APPLICATIONS, MR. BERGMAN SPECIFICALLY REFERRED TO
CAUSATION BY MALIGN CONTENT.  THAT'S -- THOSE ARE THE CASES
THAT THEY'VE PLED.

        NOW, WE'VE HEARD DIFFERENT --

          THE COURT:  THOSE ARE THE CASES THAT MOTIVATE THEM.
THAT'S NOT NECESSARILY WHAT IS PLED.

        I'M JUST SAYING THAT THE QUESTION OF WHETHER OR NOT A
PLATFORM'S ALGORITHM CAN, IN FACT, BE A PRODUCT, WHICH IS THE

```
11:59AM   1    NEW TWIST, IT IS A NEW TWIST, THAT'S THE ISSUE.  THAT SEEMS TO

11:59AM   2    ME TO BE THE GATEWAY ONE WAY OR THE OTHER.

11:59AM   3         AND WE'RE NOT GOING TO DECIDE IT HERE.  YOU DON'T NEED TO

11:59AM   4    ARGUE IN FRONT OF ME BECAUSE I DON'T KNOW THE ANSWER YET.

11:59AM   5              MS. JONES:  UNDERSTOOD, YOUR HONOR.

11:59AM   6         AND I THINK WE'RE ACTUALLY VERY MUCH ON THE COURT'S PAGE

11:59AM   7    IN TERMS OF WANTING THAT ISSUE TO BE TEED UP AND ADDRESSED VERY

11:59AM   8    PROMPTLY BECAUSE TO THE POINT THAT YOU MADE EARLIER, IT WILL BE

11:59AM   9    DISPOSITIVE OF WHAT, IF ANY, OF THE CLAIMS MIGHT ACTUALLY

11:59AM  10    PROGRESS.

11:59AM  11         NOW, THERE'S -- OBVIOUSLY THERE ARE OTHER SEPARATE ISSUES,

11:59AM  12    INCLUDING SECTION 230, WHICH RAISES A SEPARATE INDEPENDENT

11:59AM  13    CROSS-CUTTING DISPOSITIVE QUESTION THAT THE COURT, WE BELIEVE,

11:59AM  14    ALSO SHOULD RESOLVE AT THE OUTSET.  THERE IS THEIR

11:59AM  15    FIRST AMENDMENT PROBLEMS WITH THE WAY THAT THESE CLAIMS HAVE

12:00PM  16    BEEN PLED.

12:00PM  17         BUT I DON'T THINK WE'RE ACTUALLY DISAGREEING WITH EACH

12:00PM  18    OTHER, YOUR HONOR, INSOFAR AS WE AGREE THAT IT MAKES GOOD SENSE

12:00PM  19    TO TAKE THOSE ISSUES ON AT THE OUTSET.

12:00PM  20         WITH RESPECT TO A MASTER COMPLAINT IN PARTICULAR, WE'RE

12:00PM  21    MINDFUL OF YOUR INCLINATION TO PROCEED IN THAT WAY.  WE

12:00PM  22    APPRECIATE YOUR GUIDANCE THAT THE PLEADINGS NEED TO BE

12:00PM  23    SUFFICIENTLY SPECIFIC FOR THE DEFENDANTS TO UNDERSTAND THE

12:00PM  24    NATURE OF THE CLAIMS THAT HAVE BEEN BROUGHT AGAINST THEM.  IN

12:00PM  25    PARTICULAR, WE THINK IT'S IMPORTANT THAT ANY MASTER COMPLAINT
```

```
12:00PM   1    NOT ADOPT THE SAME APPROACH THAT MANY OF THE EXISTING

12:00PM   2    COMPLAINTS HAVE TAKEN, WHICH IS TO LUMP ALL OF THE DEFENDANTS

12:00PM   3    AND THEIR APPLICATIONS TOGETHER IN TERMS OF HOW SPECIFIC CLAIMS

12:00PM   4    HAVE BEEN PLED.

12:00PM   5         IF THE COURT IS INCLINED TO PURSUE SOME SORT OF SHORT FORM

12:00PM   6    OR INDIVIDUAL COMPLAINT PROCESS, WE THINK IT'S CRITICALLY

12:00PM   7    IMPORTANT THAT IT NOT BE A CHECK-THE-BOX EXERCISE.

12:00PM   8         WE THINK WE ARE ENTITLED TO KNOW WHAT APPLICATIONS DID

12:00PM   9    THESE INDIVIDUALS USE, WHAT PARTICULAR CONTENT DO THEY CLAIM

12:01PM  10    THEY WERE SUPPOSED TO, WHAT INJURIES THEY'RE ALLEGING.

12:01PM  11              THE COURT:  SO NOTICE PLEADING STILL APPLIES.  THIS

12:01PM  12    IS A -- UNLESS I HAVE FRAUD.  IF THERE'S FRAUD, THEN WE'RE NOT

12:01PM  13    RULING, BUT THE POINT IS TO STREAMLINE.

12:01PM  14         SO THE NOTION -- IF IT'S A 100 PAGE COMPLAINT WITH 15

12:01PM  15    CAUSES OF ACTION, AND A PLAINTIFF ADOPTS 10 BUT NOT 5, NO, I

12:01PM  16    DON'T AGREE THAT IT CAN'T BE SOME JUST CHECK THE BOX.  THAT'S

12:01PM  17    THE POINT.

12:01PM  18         THE POINT IS THAT THEY'RE ADOPTING THE ALLEGATIONS OF THE

12:01PM  19    MASTER COMPLAINT, OTHERWISE IT WOULD JUST BE WE ARE BACK TO

12:01PM  20    EXACTLY WHERE WE ARE, WHICH I'M NOT INCLINED TO HAVE HAPPEN.

12:01PM  21              MS. JONES:  WELL, IF YOU CHECK-THE-BOX APPARATUS IS

12:01PM  22    JUST A MECHANISM FOR THE PLAINTIFF TO IDENTIFY WHAT ARE THEIR

12:01PM  23    PARTICULAR CLAIMS IN THE MASTER COMPLAINT, THAT'S FINE.

12:01PM  24         BUT WE THINK WE ALSO NEED TO HAVE AS TO ANY INDIVIDUAL

12:02PM  25    PLAINTIFF INFORMATION ABOUT WHAT SPECIFIC APPLICATIONS THEY
```

12:02PM  1    CLAIMED TO HAVE USED AND WHAT SPECIFIC CONTENT THEY CLAIM TO

12:02PM  2    HAVE BEEN THE SOURCE OF ANY HARM THAT THEY SUFFERED, AND WHAT

12:02PM  3    PARTICULAR INJURIES THEY'VE CLAIMED.

12:02PM  4            THE COURT:  THEY MAY NOT BE CLAIMING CONTENT, BUT

12:02PM  5    WE'LL SEE.  WE'LL SEE.

12:02PM  6            MS. JONES:  I THINK THE COMPLAINTS TO DATE HAVE

12:02PM  7    SUGGESTED THAT THEY'RE ALL GROUNDED IN CONTENT, YOUR HONOR.

12:02PM  8            THE COURT:  WE'LL SEE.  ALL RIGHT.

12:02PM  9            MS. HAZAM:  YOUR HONOR, IF I MAY, JUST GOING BACK TO

12:02PM 10    THE QUESTION ABOUT THE PRODUCTS ISSUE.

12:02PM 11        WE AGREE THAT THAT IS WHAT IS NEW ABOUT THIS LITIGATION,

12:02PM 12    THAT THESE CASES ARE PLED AS PRODUCT DEFECT CLAIMS.

12:02PM 13        AND WHETHER THESE PLATFORMS ARE PRODUCTS AS DEFENDANTS

12:02PM 14    THEMSELVES HAVE CALLED THEM ON MANY OCCASIONS, OR COMMUNICATION

12:02PM 15    SERVICES, AS THEY'RE REFERRING TO IT IN THIS MDL, OR BOTH, IS A

12:02PM 16    CRITICAL ISSUE.  IT IS GOING TO BE GOVERNED BY STATE LAW, AND

12:02PM 17    WE'LL HAVE SOME VARIABILITY IN THAT REGARD.  SOME OF THE

12:02PM 18    PRECEDENT THAT HAS BEEN CITED IS QUITE OLD AND NOT ABOUT SOCIAL

12:02PM 19    MEDIA.  IT'S ABOUT OTHER KINDS OF PRODUCTS.

12:02PM 20        IN TERMS OF HOW TO STRUCTURE THAT, IF THE COURT WANTS THAT

12:03PM 21    TO GO FIRST, WE COULD DISCUSS AND THINK ABOUT WHETHER WE COULD

12:03PM 22    ADDRESS CERTAIN STATES INITIALLY AND PUT THOSE FORWARD FOR THE

12:03PM 23    COURT TO CONSIDER RATHER THAN TACKLING EVERY STATE AT ISSUE IN

12:03PM 24    THIS LITIGATION, WHICH IS MOST STATES IN THE COUNTRY.

12:03PM 25        SO IF YOUR HONOR WOULD LIKE TO PHASE THAT ISSUE IN SOME

12:03PM 1    MANNER, I THINK IT'S AT LEAST POTENTIALLY FEASIBLE TO DO AND IT

12:03PM 2    WOULD BENEFIT US TO MEET AND CONFER ABOUT IT.

12:03PM 3            THE COURT:  AND THAT'S FINE.

12:03PM 4        I THINK, AGAIN, THE POINT IS THAT MDL JUDGES ARE

12:03PM 5    CRITICIZED FOR HAVING THINGS GO INTO A BLACK HOLE.  WE'RE

12:03PM 6    CRITICIZED FOR THAT.

12:03PM 7        SO NOT ONLY DO WE TAKE ON THE ADDITIONAL WORK, WE'RE

12:03PM 8    CRITICIZED FOR HOW WE DO IT.

12:03PM 9        (LAUGHTER.)

12:03PM 10           THE COURT:  SO IT SEEMS TO ME THAT IN ORDER TO MOVE

12:03PM 11   THIS ALONG, I NEED TO TEE UP YOUR BEST CASE BECAUSE THEY'RE

12:04PM 12   GOING TO ATTACK EVERYTHING.  I'M GOING TO ASSUME THAT THE

12:04PM 13   DEFENDANTS WILL ATTACK EVERYTHING.  THEY DON'T WANT A SINGLE

12:04PM 14   CLAIM TO PROCEED.

12:04PM 15       SO IF IT IS -- WHATEVER RULE IT IS, MAJORITY, MINORITY, I

12:04PM 16   DON'T CARE, WHOEVER'S STATE IT IS, I DON'T CARE.

12:04PM 17       WHAT I NEED YOU TO DO IS CREATE A MASTER COMPLAINT AND

12:04PM 18   IDENTIFY THE STRONGEST CLAIMS THAT YOU HAVE SO THEY CAN ATTACK

12:04PM 19   THOSE, AND I'M THINKING NO MORE THAN FIVE OR SIX SO I CAN GET

12:04PM 20   AN ANSWER TO YOU.  BECAUSE ONCE YOU HAVE SOMETHING, THEN I CAN

12:04PM 21   PARALLEL TRACK.  THEN I CAN OPEN DISCOVERY WHILE HAVING MOTION

12:04PM 22   WORK TO FIGURE OUT HOW TO NARROW ANY CLAIMS THAT MAY STILL BE

12:05PM 23   OUT THERE.

12:05PM 24           MS. HAZAM:  ONE COMMENT ON THAT, YOUR HONOR.

12:05PM 25       I APPRECIATE THE COURT SEEKING TO PRIORITIZE MOTION

118

12:05PM  1      PRACTICE BEFORE OPENING DISCOVERY WIDE UP, THERE ARE, HOWEVER,

12:05PM  2      THESE ISSUES OF EVIDENCE PRESERVATION THAT I BELIEVE ARE OF

12:05PM  3      CRITICAL IMPORTANCE.

12:05PM  4              THE COURT:  I AGREE THAT THEY ARE, TOO, AND I

12:05PM  5      EXPECT -- YOU'RE ORDERED TO MEET AND CONFER ON THEM, AND I

12:05PM  6      EXPECT THAT I DON'T HAVE TO GET INVOLVED, THAT YOU WILL FIGURE

12:05PM  7      OUT HOW TO PRESERVE DISCOVERY, THAT YOU WILL SEND ME A PROPOSED

12:05PM  8      FORM OF ORDER WITH RESPECT TO YOUR AGREEMENT, AND THEN I'LL

12:05PM  9      SIGN THE ORDER.  SO I AGREE, EVIDENCE HAS TO BE PRESERVED.

12:05PM  10         BUT WITH RESPECT TO THE SPECIFICS -- AND THAT'S WHY YOU'LL

12:05PM  11     HAVE YOUR TEAM, BUT I DON'T EXPECT THAT I'LL HAVE TO THEN

12:05PM  12     MICROMANAGE THAT.

12:05PM  13             MS. HAZAM:  WE ARE PREPARED TO DO THAT, YOUR HONOR,

12:05PM  14     AND PROPOSE THAT THE PARTIES HAVE A RULE 26 CONFERENCE IN ORDER

12:06PM  15     TO DO SO.  WE DON'T BELIEVE IT'S SELF-EXECUTING IN THIS

12:06PM  16     CONTEXT, SO WE DO BELIEVE THAT WE NEED TO ACTIVELY ENGAGE.

12:06PM  17             MS. JONES:  YOUR HONOR, IF I MAY?

12:06PM  18         WE'RE CERTAINLY HAPPY TO MEET AND CONFER AROUND THE

12:06PM  19     SUBJECTS OF EVIDENCE PRESERVATION, A BROADER ESI PROTOCOL, A

12:06PM  20     PROTECTIVE ORDER.

12:06PM  21         WE DON'T, AS WE NOTED IN THE CMC STATEMENT, BELIEVE THAT

12:06PM  22     DISCOVERY SHOULD BE OPEN ANY TIME SOON.  WE THINK IT'S

12:06PM  23     PREMATURE TO HAVE A RULE 26(F) CONFERENCE.

12:06PM  24             THE COURT:  I AM NOT ORDERING DISCOVERY OPEN.  I AM

12:06PM  25     ORDERING YOU TO MEET AND CONFER AND TO PROVIDE ME -- IF I HAVE

12:06PM  1      TO GIVE YOU A DEADLINE, I WILL -- A PROTOCOL AND ORDER TO DEAL

12:06PM  2      WITH EVIDENCE PRESERVATION.  THAT IS TOTALLY DOABLE AND TOTALLY

12:06PM  3      APPROPRIATE.

12:06PM  4              MS. JONES:  WE'RE HAPPY TO DO THAT, YOUR HONOR.

12:06PM  5              THE COURT:  HOW MUCH TIME DO YOU NEED?

12:06PM  6              MS. HAZAM:  I WOULD APPRECIATE COMING BACK TO THE

12:06PM  7      COURT WITHIN A MONTH, IF NECESSARY, IF THERE ARE DISPUTES.  SO

12:06PM  8      HAVING A DEADLINE IN ADVANCE OF THAT.

12:07PM  9              MS. JONES:  AND WE'RE CERTAINLY HAPPY TO DO THAT.  I

12:07PM 10      SUSPECT, YOUR HONOR, JUST AS AN INTERIM STEP, WE'LL BE GUIDED

12:07PM 11      BY THE COURT'S DIRECTION ON WHAT THE LEADERSHIP, THE BROADER

12:07PM 12      LEADERSHIP TEAM WILL BE ON THE PLAINTIFFS' SIDE SO WE'LL KNOW

12:07PM 13      WITH WHOM WE'LL BE COORDINATING, BUT TRIGGERING SOME KIND OF

12:07PM 14      MEET AND CONFER DEADLINE OFF OF THAT SEEMS JUST FINE TO US.

12:07PM 15              THE COURT:  RIGHT NOW YOU CAN MEET AND CONFER WITH

12:07PM 16      MR. SEEGER AND MS. HAZAM, AND YOU'LL HAVE A BIGGER TEAM VERY

12:07PM 17      SOON.

12:07PM 18          OKAY.  THERE ARE SOME OTHER THINGS I WANT TO TALK ABOUT,

12:07PM 19      BUT IT SEEMS TO ME IT PROBABLY MAKES SENSE TO HAVE YOU ALL COME

12:07PM 20      BACK IN DECEMBER AND HAVE ANOTHER CONFERENCE.

12:07PM 21          UNTIL I HAVE THIS CASE OPERATING, I EXPECT THAT WE WILL

12:07PM 22      MEET MONTHLY.  I HATE ZOOM.  I'M SORRY.  I MEAN, I SURVIVED

12:08PM 23      WITH ZOOM.  I TRIED CASES WITH ZOOM.

12:08PM 24          BUT WE'RE NOT IN A PERIOD WHERE THAT IS NECESSARY ANY

12:08PM 25      MORE, AND ONCE I -- AGAIN, MAYBE DOWN THE LINE AND WHEN I KNOW

12:08PM  1    YOU ALL VERY WELL AND WHEN YOU CAN READ MY EXPRESSIONS TO STOP

12:08PM  2    TALKING AND THINGS LIKE THAT, THEN WE CAN MOVE TO ZOOM, BUT

12:08PM  3    RIGHT NOW I'M NOT THERE.

12:08PM  4         I'M GOING TO BE IN A CRIMINAL TRIAL, AND WE START OPENING

12:08PM  5    STATEMENTS RIGHT AFTER THANKSGIVING.  SO BASICALLY I HAVE --

12:08PM  6    WELL, THE 16TH WOULD BE THE BEST IN THE MORNING OR I COULD DO

12:08PM  7    IT THE 14TH, BUT IF I HAVE A JURY VERDICT THAT DAY, YOU'RE

12:08PM  8    GOING TO SIT AND WAIT.

12:09PM  9         MS. JONES:  YOUR HONOR, I'M JUST CONSULTING WITH

12:09PM 10    FOLKS ON SCHEDULE.

12:09PM 11         (DISCUSSION OFF THE RECORD.)

12:09PM 12         MS. JONES:  YOUR HONOR, EITHER OF THOSE DATES WILL

12:09PM 13    WORK FOR THE DEFENSE.

12:09PM 14         MS. HAZAM:  YOUR HONOR, THE 14TH WOULD WORK BETTER

12:09PM 15    FOR PLAINTIFFS.

12:09PM 16         THE COURT:  OKAY.  I'LL SET YOU FOR 8:30 A.M.

12:09PM 17         BUT, AGAIN, IF I HAVE A JURY VERDICT, YOU COME SECOND.

12:09PM 18         MS. HAZAM:  UNDERSTOOD.

12:09PM 19         THE COURT:  OKAY.  DECEMBER 14TH, 8:30 A.M.

12:09PM 20         OTHER ISSUES THAT OCCUR TO ME, THERE SHOULD BE SOME JOINT

12:09PM 21    AGREEMENT THAT WHENEVER WE GET THIS MASTER COMPLAINT AND THE

12:10PM 22    ADDENDUMS BY THE PLAINTIFFS, THE INDIVIDUAL PLAINTIFFS THAT WE

12:10PM 23    SHOULD HAVE SOME ORDER THAT HAS THE DEFENDANTS' MOTION OR THE

12:10PM 24    DEFENDANT PERHAPS CAN JUST FILE A NOTICE THAT THEY HAVE

12:10PM 25    ACCEPTED SERVICE OF PROCESS FOR ALL OF THESE SO THAT ALL OF THE

12:10PM  1    MOTION WORK DEALS WITH RESPECT TO ALL OF THEM.  NO ONE SHOULD

12:10PM  2    HAVE TO SERVE INDIVIDUAL ONES FOR THE DEFENDANTS WHO ARE

12:10PM  3    ALREADY HERE.  SO I'D LIKE TO HAVE YOU WORK ON THAT, MS. JONES.

12:10PM  4        APPOINTMENTS OF GUARDIANS AD LITEM, THESE ARE ALL MINORS.

12:10PM  5    I NEED TO HAVE ADULTS, AND I NEED ORDERS FOR THAT.

12:10PM  6        AND, MS. ANDERSON, I WAS HOPING YOU COULD MANAGE WITH THIS

12:10PM  7    IN PARTICULAR BECAUSE IT'S JUST A LOGISTICAL ISSUE.

12:11PM  8        THE CALIFORNIA STATE COURTS HAVE A I THINK PRETTY

12:11PM  9    COMPREHENSIVE FORMAT FOR WHAT IS REQUIRED.

12:11PM 10        I'M HAPPY TO ISSUE AN ORDER THAT SAYS THAT I WILL

12:11PM 11    PRESUMPTIVELY APPOINT A PARENT OR A LEGAL GUARDIAN.

12:11PM 12        ANYBODY ELSE I WOULD REVIEW TO UNDERSTAND WHY A PARENT OR

12:11PM 13    LEGAL GUARDIAN IS NOT BEING REPRESENTATIVE, BUT EVERY PLAINTIFF

12:11PM 14    WHO IS NOT AN ADULT MUST HAVE THE APPOINTMENT.

12:11PM 15        DO YOU HAVE A SENSE NOW OR DID YOU ALL TALK IN ADVANCE

12:11PM 16    ABOUT HOW MUCH TIME YOU WOULD NEED FOR A MASTER COMPLAINT TO

12:11PM 17    GET ONE ON FILE?

12:12PM 18            MS. HAZAM:  YOUR HONOR, WE DID NOT MEET AND CONFER

12:12PM 19    ABOUT IT.

12:12PM 20        THE DEFENDANTS HAVE PROPOSED, I BELIEVE, DECEMBER 9TH.

12:12PM 21    PLAINTIFFS DO NOT BELIEVE THAT THAT IS A PRACTICABLE DATE, BUT

12:12PM 22    I THINK COULD DO SO BY EARLY NEXT YEAR IN ALL LIKELIHOOD, FOR

12:12PM 23    EXAMPLE, 90 DAYS, YOUR HONOR.

12:12PM 24            MS. JONES:  AND, YOUR HONOR, FROM OUR PERSPECTIVE,

12:12PM 25    IF DISCOVERY IS STAYED IN THE MEANTIME, THAT'S ACCEPTABLE TO

12:12PM  1    US.

12:12PM  2              THE COURT:  OKAY.  THEN WHAT WE'LL DO IS I'LL GIVE

12:12PM  3    YOU BETWEEN NOW AND OUR NEXT CONFERENCE TIME TO THINK ABOUT

12:12PM  4    WHAT THE PLAN IS GOING TO LOOK LIKE, DATES CERTAIN FOR THE

12:12PM  5    FILING OF ALL OF THESE THINGS, AND THEN WE CAN COME UP WITH A

12:12PM  6    BRIEFING SCHEDULE.

12:12PM  7         IN MY VIEW THE BRIEFING SCHEDULE SHOULD NOT BE ALL THAT

12:13PM  8    LONG, BECAUSE WHAT I'M TRYING TO DO IS CABIN HOW MUCH IS BEING

12:13PM  9    BRIEFED SO THAT I CAN, IN FACT, GET YOU SOME ANSWER BACK.

12:13PM 10         AND THAT MEANS THAT, YOU KNOW, IF I DO THESE SERIALLY, WE

12:13PM 11    SHOULD BE ABLE TO MOVE THIS.

12:13PM 12         WITH RESPECT TO THE SECTION 230, MAYBE WE'LL HAVE MORE

12:13PM 13    INFORMATION ON GONZALEZ BY THEN.  I DON'T KNOW.

12:13PM 14         OKAY.  I HAVE SOME OTHER LITTLE TINY THINGS, BUT WHAT ELSE

12:13PM 15    DO YOU WANT TO TALK ABOUT TODAY?

12:13PM 16              MS. HAZAM:  YOUR HONOR, ONE ISSUE PLAINTIFFS RAISED

12:13PM 17    IN OUR STATUS CONFERENCE STATEMENT THAT WE WOULD LIKE TO

12:13PM 18    ADDRESS IS PRODUCTION OF MATERIALS PREVIOUSLY PRODUCED IN OTHER

12:13PM 19    LITIGATION AND IN RESPONSE TO INVESTIGATIONS BY DEFENDANTS.

12:13PM 20         THIS IS SOMETHING THAT HAS BEEN ORDERED VERY EARLY ON IN

12:13PM 21    A NUMBER OF MDL'S, AND BECAUSE THESE HAVE ALREADY BEEN

12:13PM 22    PRODUCED, WE DO NOT BELIEVE THAT THERE IS A BURDEN ASSOCIATED

12:13PM 23    AND WOULD TAKE IT IN THE FORM IT WAS PRODUCED PREVIOUSLY.

12:14PM 24         WE WOULD LIKE TO PROCEED EXPEDITIOUSLY ON THAT FRONT

12:14PM 25    BECAUSE IT'S SOMETHING THAT CAN BE DONE.

| | | |
|---|---|---|
| 12:14PM | 1 | MS. JONES:  AND, YOUR HONOR, YOU CAN PROBABLY |
| 12:14PM | 2 | ANTICIPATE MY RESPONSE TO THAT, WHICH IS BEFORE THERE'S BEEN A |
| 12:14PM | 3 | DETERMINATION ABOUT WHETHER OR NOT THIS MATTER SHOULD PROCEED, |
| 12:14PM | 4 | WE THINK IT'S NOT EFFICIENT.  WE DON'T THINK IT'S APPROPRIATE |
| 12:14PM | 5 | FOR DEFENDANTS TO BE PUT IN A POSITION TO PRODUCE THINGS THAT |
| 12:14PM | 6 | WERE PRODUCED IN OTHER MATTERS.  SO -- |
| 12:14PM | 7 | THE COURT:  SO WHICH MATTERS ARE WE TALKING ABOUT |
| 12:14PM | 8 | SPECIFICALLY? |
| 12:14PM | 9 | WHAT PAGE OF YOUR STATEMENT ARE THOSE IDENTIFIED IF AT |
| 12:14PM | 10 | ALL? |
| 12:14PM | 11 | MS. HAZAM:  THE INVESTIGATIONS THAT WE ARE AWARE OF |
| 12:14PM | 12 | THROUGH PRESS REPORTS ARE IDENTIFIED IN A FOOTNOTE TO THE |
| 12:14PM | 13 | STATUS CONFERENCE STATEMENT.  IT'S FOOTNOTE 13 ON PAGE 18. |
| 12:14PM | 14 | PLAINTIFFS, OF COURSE, MAY NOT BE AWARE OF ALL SUCH |
| 12:14PM | 15 | INVESTIGATIONS OR ALL OTHER LITIGATION. |
| 12:14PM | 16 | THE COURT:  ARE THERE LAWSUITS AS OPPOSED TO |
| 12:15PM | 17 | ATTORNEY GENERAL INVESTIGATIONS? |
| 12:15PM | 18 | MS. HAZAM:  THERE HAVE BEEN OTHER LAWSUITS, |
| 12:15PM | 19 | INCLUDING SOME CASES THAT HAVE BEEN CITED TODAY TO YOUR HONOR. |
| 12:15PM | 20 | THERE ALSO, I BELIEVE, HAVE BEEN BOTH INVESTIGATIONS AND |
| 12:15PM | 21 | SOME LITIGATION ABROAD, INCLUDING, FOR EXAMPLE, THE CORONER'S |
| 12:15PM | 22 | INVESTIGATION IN THE UNITED KINGDOM THAT WAS REFERENCED |
| 12:15PM | 23 | EARLIER. |
| 12:15PM | 24 | THE COURT:  RIGHT, WHICH IS CURRENTLY ALREADY IN THE |
| 12:15PM | 25 | POSSESSION OF ONE OF THE PLAINTIFF'S ATTORNEYS. |

12:15PM 1          MS. HAZAM:  I BELIEVE SO.  IT IS NOT YET

12:15PM 2    DISCLOSABLE, BUT I BELIEVE IT IS.

12:15PM 3          THE COURT:  RIGHT.

12:15PM 4          MS. JONES:  AND I THINK PART OF OUR CHALLENGE,

12:15PM 5    YOUR HONOR, IS THE EXTENT OF WHAT WE KNOW ABOUT WHAT THEY'RE

12:15PM 6    EVEN SEEKING IS INCLUDED IN FOOTNOTE 13 TO THE CMC, BUT MORE

12:15PM 7    FUNDAMENTALLY FROM OUR PERSPECTIVE THIS DISCUSSION IS WILDLY

12:15PM 8    PREMATURE IN THE FACE OF THE MOTIONS THAT THE COURT WILL TAKE

12:15PM 9    ON AT THE OUTSET OF THE LITIGATION.

12:15PM 10          THE COURT:  WELL, I'M NOT SURE THAT IT IS WILDLY

12:15PM 11    PREMATURE.  IT MAY BE PREMATURE.

12:15PM 12          MS. JONES:  FAIR ENOUGH.  FAIR ENOUGH.

12:16PM 13          THE COURT:  I DON'T KNOW THAT IT'S WILDLY PREMATURE,

12:16PM 14    IN PART BECAUSE WHAT I DON'T WANT TO RECEIVE IS NEW INFORMATION

12:16PM 15    WHICH LEADS US TO -- FORCES US TO HAVE TO RE-DO EVERYTHING THAT

12:16PM 16    HAS BEEN DONE BEFORE.

12:16PM 17      IN THE ANTITRUST CASES, ROUTINELY EVIDENCE THAT HAS BEEN

12:16PM 18    PRODUCED IS REPRODUCED BEFORE THE MOTION TO DISMISS IS

12:16PM 19    RESOLVED.  IT'S A LITTLE BIT DIFFERENT BECAUSE IN THOSE CASES

12:16PM 20    THERE ARE ALSO CRIMINAL MATTERS GOING ON.

12:16PM 21      BUT WHAT I WOULD NEED TO KNOW MORE SPECIFICALLY IS THE

12:16PM 22    SPECIFIC CASES WHICH THE PLAINTIFFS ARE AWARE OF AND FOR WHICH

12:16PM 23    THEY WOULD LIKE THE DISCOVERY.

12:16PM 24      THE INVESTIGATIONS, IT'S NOT CLEAR TO ME THAT YOU WOULD BE

12:16PM 25    ENTITLED TO THAT.  I DON'T KNOW WHAT THE ATTORNEYS GENERAL ARE

12:17PM 1    DOING.  I DON'T KNOW IF YOU HAVE CONTACTED THEM, IF THEY ARE

12:17PM 2    GOING TO SEEK TO INTERVENE IN THESE CASES OR NOT, AND I DON'T

12:17PM 3    KNOW WHAT THEY'VE ASKED FOR.  SO I DON'T KNOW HOW BROAD OR -- I

12:17PM 4    DON'T KNOW HOW BROAD IT IS, AND IT MAY NOT BE APPROPRIATE.  I

12:17PM 5    DON'T KNOW WHAT THE AGE -- I JUST DON'T HAVE ENOUGH

12:17PM 6    INFORMATION.  SO I WOULD BE PREPARED TO ORDER IT AT THE NEXT

12:17PM 7    HEARING, BUT I DO NEED TO KNOW SPECIFICALLY WHAT IT IS THAT

12:17PM 8    YOU'RE ASKING FOR AND WHAT THE SCOPE OF THOSE PRODUCTIONS WERE.

12:17PM 9            MS. JONES:  FROM OUR PERSPECTIVE, IF YOU WERE

12:17PM 10   INCLINED TO CONSIDER THIS REQUEST BEFORE THE MOTION TO DISMISS

12:17PM 11   HAS EVEN BEEN FILED, WE WOULD REQUEST AN OPPORTUNITY TO BRIEF

12:17PM 12   THAT ISSUE FOR THE COURT, BECAUSE FROM OUR PERSPECTIVE, THERE'S

12:17PM 13   JUST A BASELINE REASON TO STAY DISCOVERY BROADLY, INCLUDING

12:18PM 14   PRODUCTION OF THE MATERIALS THAT WE'RE DISCUSSING RIGHT NOW

12:18PM 15   UNDER THE LAW OF THIS COURT, THE LAW OF THE NINTH CIRCUIT, BUT

12:18PM 16   IMPORTANTLY, THE LAW THAT SAYS THAT SECTION 230 PROVIDES BROAD

12:18PM 17   IMMUNITY, NOT JUST FROM LAWSUITS AND LIABILITY, BUT ALSO FROM

12:18PM 18   THE BURDENS OF LITIGATION, INCLUDING DISCOVERY.

12:18PM 19           THE COURT:  YEAH, BUT THIS ISN'T A BURDEN.  IT'S NOT

12:18PM 20   A BURDEN.

12:18PM 21           MS. JONES:  WELL, YOUR HONOR --

12:18PM 22           THE COURT:  IT'S AN INCONVENIENCE.  IT'S SOMETHING

12:18PM 23   THAT YOU DON'T WANT TO DO, BUT IT'S NOT WHAT WE WOULD CALL A

12:18PM 24   BURDEN.

12:18PM 25           MS. JONES:  YOUR HONOR, WITHOUT STANDING HERE TODAY

12:18PM 1    HAVING THE FULL SENSE OF EVERY POTENTIAL LITIGATION OR

12:18PM 2    INVESTIGATION THEY'RE CONTEMPLATING, I SUSPECT THAT THIS IS A

12:18PM 3    MORE COMPLICATED ISSUE THAN HAS BEEN PRESENTED TO THE COURT

12:18PM 4    THIS MORNING.  THERE MAY WELL NEED TO BE AN ASSESSMENT OF WHAT

12:18PM 5    EXACTLY HAS BEEN PRODUCED ELSEWHERE AND WHETHER ANY OF THAT

12:19PM 6    WOULD BEAR ON THESE CASES, AND THAT IS MEANINGFUL DISCOVERY

12:19PM 7    RELATED ACTIVITY DURING A PERIOD WHEN SECTION 230 IMMUNITY

12:19PM 8    SUGGESTS THAT DISCOVERY SHOULD BE STAYED UNTIL THAT ISSUE HAS

12:19PM 9    BEEN RESOLVED BY THE COURT.

12:19PM 10           THE COURT:  LIKE I SAID, I DON'T HAVE ENOUGH

12:19PM 11   INFORMATION.

12:19PM 12           MS. HAZAM:  YOUR HONOR, PLAINTIFFS CAN SEEK TO

12:19PM 13   PROVIDE YOU WITH THAT INFORMATION.  WE HAVE LESS AWARENESS, OF

12:19PM 14   COURSE, THAN THE DEFENDANTS ABOUT OTHER LITIGATION OR

12:19PM 15   INVESTIGATIONS THAT THEY ARE FACING, SO WE WILL REACH OUT TO

12:19PM 16   THEM TO SEE IF ANY SHARING OF THAT INFORMATION IS POSSIBLE, AND

12:19PM 17   WE WILL PROVIDE YOU WITH THE INFORMATION THAT WE DO HAVE IN

12:19PM 18   ADVANCE OF THE NEXT HEARING.

12:19PM 19       I WOULD JUST NOTE AGAIN, THIS HAS BEEN DONE FREQUENTLY

12:19PM 20   EVEN IN CASES WHERE THEIR PREEMPTION MOTIONS ARE GOING TO BE

12:19PM 21   BROUGHT, ET CETERA.  IT WAS DONE IMMEDIATELY IN 3M, JUUL, AND

12:19PM 22   IN OPIOIDS.

12:19PM 23           THE COURT:  ALL RIGHT.  WELL, I'LL TALK TO THOSE

12:19PM 24   JUDGES AS WELL.

12:19PM 25           MS. HAZAM:  THANK YOU, YOUR HONOR.

| | | |
|---|---|---|
| 12:19PM | 1 | MS. JONES:  YOUR HONOR, WOULD IT BE -- IF WE'RE |
| 12:19PM | 2 | GOING TO BE DISCUSSING THIS ISSUE AGAIN AT OUR CONFERENCE IN |
| 12:20PM | 3 | DECEMBER, WOULD IT BE OF USE TO THE COURT TO HAVE SHORT |
| 12:20PM | 4 | BRIEFING ON THE TOPIC SO WE'VE AT LEAST HASHED OUT THE ISSUE |
| 12:20PM | 5 | MORE CONCRETELY? |
| 12:20PM | 6 | THE COURT:  IT WOULD BE.  IT WOULD BE EVEN MOST |
| 12:20PM | 7 | HELPFUL IF IT'S ONE DOCUMENT. |
| 12:20PM | 8 | MS. JONES:  I THINK WE CAN DO THAT, YOUR HONOR. |
| 12:20PM | 9 | THE COURT:  EXCELLENT. |
| 12:20PM | 10 | MS. HAZAM:  WE HAVE DONE IT ONCE ALREADY.  WE CAN |
| 12:20PM | 11 | TRY IT AGAIN. |
| 12:20PM | 12 | THE COURT:  OTHER ISSUES? |
| 12:20PM | 13 | MS. HAZAM:  THIS MAY BE ON YOUR LIST BUT DIRECT |
| 12:20PM | 14 | FILING IN THE MDL, PLAINTIFFS WOULD SEEK SUCH AN ORDER WHICH IS |
| 12:20PM | 15 | GENERALLY STANDARD PRACTICE IN THESE CASES. |
| 12:20PM | 16 | MS. JONES:  EXCUSE ME, YOUR HONOR.  I THINK, AGAIN, |
| 12:20PM | 17 | FROM OUR PERSPECTIVE, THAT'S A STEP THAT WE DON'T LIKELY NEED |
| 12:20PM | 18 | TO TAKE RIGHT OUT OF THE GATE GIVEN THE NEED TO ADDRESS THE |
| 12:20PM | 19 | DISPOSITIVE MOTIONS THAT WE'VE BEEN DISCUSSING FOR SOME TIME AT |
| 12:20PM | 20 | THIS POINT. |
| 12:20PM | 21 | WE'RE CERTAINLY HAPPY TO DISCUSS WITH PLAINTIFFS THE |
| 12:20PM | 22 | POTENTIAL FORM OF A DIRECT FILING ORDER, BUT, AGAIN, THAT WOULD |
| 12:20PM | 23 | FALL INTO THE CATEGORY OF THE TYPE OF APPARATUS AND |
| 12:21PM | 24 | INFRASTRUCTURE THAT WE DON'T THINK RESOURCES NEED TO BE DEVOTED |
| 12:21PM | 25 | TOWARDS WHILE THE COURT FIRST HAS TO RESOLVE THE QUESTION OF |

12:21PM  1    WHETHER THESE CASES CAN PROCEED AT ALL.

12:21PM  2          MS. HAZAM:  YOUR HONOR, I WOULD JUST RESPOND THAT I

12:21PM  3    DON'T THINK ONE HAS ANYTHING TO DO WITH THE OTHER, AND, IN

12:21PM  4    FACT, THE GREATER USE OF RESOURCES IS TO FORCE ALL PLAINTIFFS

12:21PM  5    TO HAVE TO GO THROUGH THE TRANSFER PROCESS, BURDEN THE PANEL

12:21PM  6    WITH TAKING ACTION IN THAT REGARD WHEN WE CAN HAVE A DIRECT

12:21PM  7    FILING ORDER.

12:21PM  8       THE CASES ARE GOING TO BE FILED, IT'S JUST A MATTER OF

12:21PM  9    ADMINISTRATIVE EFFICIENCY, AND THAT'S ONE OF THE MAIN REASONS

12:21PM  10   FOR CREATING AN MDL TO STREAMLINE SUCH MATTERS.

12:21PM  11         THE COURT:  OKAY.  SO WHAT I'M NOT -- AND MAYBE I'M

12:21PM  12   NOT UNDERSTANDING EXACTLY WHAT YOU ENVISION GIVEN THAT THERE'S

12:21PM  13   GOING TO BE A MASTER COMPLAINT AND THEN PLAINTIFFS ARE GOING TO

12:21PM  14   ADOPT WITH, I WOULD HAVE THOUGHT, THEIR OWN PLEADING, SO WHAT

12:21PM  15   IS THE -- HOW DOES DIRECT FILING THEN IMPACT THAT?

12:22PM  16         MS. HAZAM:  IN TWO WAYS, YOUR HONOR.

12:22PM  17      ONE IS COMPLAINTS THAT ARE BEING FILED IN ADVANCE OF A

12:22PM  18   MASTER COMPLAINT, WHICH MAY TAKE 90 DAYS, THERE MAY BE QUITE A

12:22PM  19   FEW COMPLAINTS THAT ARE FILED IN THE MEANTIME, AND THEN ALSO TO

12:22PM  20   ENSURE THAT THE SHORT FORM ADOPTION PROCEDURE PROCEEDS THROUGH

12:22PM  21   THAT SAME MANNER.

12:22PM  22         THE COURT:  AND ALL YOU'RE ASKING IS THAT THEY BE

12:22PM  23   ABLE TO FILE IT IN 22-MD-3047 AS OPPOSED TO SUBMITTING OR

12:22PM  24   FILING IT AS A SEPARATE ACTION OR BEING TRANSFERRED THROUGH THE

12:22PM  25   MDL?

| | | |
|---|---|---|
| 12:22PM | 1 | MS. HAZAM:  YEAH.  WE COULD PROVIDE OTHER MODEL |
| 12:22PM | 2 | ORDERS TO THAT EFFECT FOR YOUR HONOR TO REVIEW, AND WE COULD |
| 12:22PM | 3 | MEET AND CONFER WITH THE DEFENDANTS ABOUT THE PROPER FORM OF IT |
| 12:22PM | 4 | HERE. |
| 12:22PM | 5 | THE COURT:  I THINK THAT'S FINE. |
| 12:22PM | 6 | SO I'LL EXPECT A FORM OF ORDER ON THAT TOPIC. |
| 12:22PM | 7 | OKAY.  WHAT ELSE DID YOU HAVE? |
| 12:23PM | 8 | MS. JONES:  YOUR HONOR, JUST ON THE DIRECT FILING |
| 12:23PM | 9 | POINT, AND I AGREE THAT WE CAN CERTAINLY TALK ABOUT THAT IN |
| 12:23PM | 10 | ADVANCE OF OUR NEXT CONFERENCE, AND WE CAN BUILD THIS INTO |
| 12:23PM | 11 | WHATEVER WE SUBMIT TO THE COURT, BUT OUR VIEW IS TO THE EXTENT |
| 12:23PM | 12 | THAT THERE IS A DIRECT FILING ORDER THAT IS ADOPTED BY THE |
| 12:23PM | 13 | COURT, THAT ADDITIONAL PLAINTIFFS SHOULD BE DEEMED FILED WITHIN |
| 12:23PM | 14 | THEIR STATE OF RESIDENCE AS OPPOSED TO THE LOCATION OF THE MDL, |
| 12:23PM | 15 | AND WE WOULD OBVIOUSLY WANT TO BAKE INTO ANY ORDER THE |
| 12:23PM | 16 | UNDERSTANDING THAT IT DOESN'T RESPECT -- IT DOESN'T AFFECT ANY |
| 12:23PM | 17 | OF THE DEFENDANTS' LEXICON RIGHTS. |
| 12:23PM | 18 | MS. HAZAM:  YOUR HONOR, AS TO THE LATTER, WE'RE |
| 12:23PM | 19 | CERTAINLY WILLING TO MEET AND CONFER.  WE'RE WILLING TO MEET |
| 12:23PM | 20 | AND CONFER ON ALL MATTERS, BUT IMPORTANTLY, PLAINTIFFS HAVE THE |
| 12:23PM | 21 | RIGHT TO FILE WHERE VENUE AND JURISDICTION IS PROPER. |
| 12:23PM | 22 | THE COURT:  I AGREE. |
| 12:23PM | 23 | MS. HAZAM:  THEY SHOULDN'T BE FORCED TO FOREGO AN |
| 12:23PM | 24 | OPTION -- |
| 12:23PM | 25 | THE COURT:  I AGREE.  YOU CAN'T TELL THE PLAINTIFFS |

|  |  |  |
|---|---|---|
| 12:23PM | 1 | WHERE TO FILE.  IF THEY CHOSE TO FILE AN ACTION HERE IN THE |
| 12:24PM | 2 | NORTHERN DISTRICT, AND YOU HAD A BASIS TO TRANSFER IT, YOU |
| 12:24PM | 3 | COULD MAKE THAT MOTION, BUT YOU DON'T GET TO DICTATE TO THE |
| 12:24PM | 4 | PLAINTIFF WHERE TO FILE A COMPLAINT. |
| 12:24PM | 5 | MS. JONES:  WE UNDERSTAND, YOUR HONOR.  I JUST |
| 12:24PM | 6 | WANTED TO NOTE OUR POSITION ON THAT ISSUE. |
| 12:24PM | 7 | THE COURT:  I REMEMBER READING THAT, BUT IT'S NOT |
| 12:24PM | 8 | YOUR RIGHT. |
| 12:24PM | 9 | OKAY.  SO YOU ALL WILL MEET AND CONFER ON THOSE OTHER |
| 12:24PM | 10 | TOPICS, AND TO THE EXTENT THAT YOU HAVE DISAGREEMENTS ON THE |
| 12:24PM | 11 | FORM OF ORDER, YOU KNOW, SOMETHING LIKE THAT I CAN DO, I COULD |
| 12:24PM | 12 | DO A QUICK ZOOM HEARING OR YOU CAN SEND ME THE PROPOSED FORM OF |
| 12:24PM | 13 | ORDER WITH BRIEF STATEMENTS.  JUST REMEMBER THAT I'M HEADING |
| 12:24PM | 14 | INTO TRIAL SOON -- OKAY? |
| 12:24PM | 15 | MS. HAZAM:  YES, YOUR HONOR. |
| 12:24PM | 16 | MS. JONES:  AND AM I CORRECT HEARING, YOUR HONOR, |
| 12:24PM | 17 | THAT TO THE EXTENT THAT WE CAN SUBMIT JOINT STATEMENTS ON THESE |
| 12:24PM | 18 | TYPES OF ISSUES, THAT'S OF USE TO YOUR HONOR? |
| 12:24PM | 19 | THE COURT:  IT IS PREFERABLE, YES. |
| 12:24PM | 20 | MS. JONES:  OKAY. |
| 12:24PM | 21 | THE COURT:  THESE DOCKETS GET TO BE VERY BIG. |
| 12:24PM | 22 | MS. JONES:  YES.  UNDERSTOOD. |
| 12:24PM | 23 | THE COURT:  SO THAT WAY I DON'T HAVE TO GO, YOU |
| 12:25PM | 24 | KNOW, SEARCHING TO SEE DID THEY RESPOND?  DID THEY NOT RESPOND? |
| 12:25PM | 25 | ET CETERA. |

12:25PM  1          MS. JONES:  WE'LL DO OUR BEST TO MAKE THAT WORK,

12:25PM  2     YOUR HONOR.

12:25PM  3          THE COURT:  OKAY.  AT THIS POINT -- OH, ANYTHING

12:25PM  4     ELSE?

12:25PM  5          MS. HAZAM:  I DON'T HAVE ANYTHING ELSE, YOUR HONOR.

12:25PM  6          MS. JONES:  I THINK YOU'VE COVERED EVERYTHING ON OUR

12:25PM  7     LIST, YOUR HONOR.

12:25PM  8          THE COURT:  OKAY.  SO AT THIS POINT, MS. ANDERSON,

12:25PM  9     YOU'RE TAKING OVER THE SPREADSHEET.

12:25PM  10          MS. ANDERSON:  YES, YOUR HONOR.

12:25PM  11          MS. JONES:  WITH OUR THANKS, MS. ANDERSON.

12:25PM  12          THE COURT:  IF COVINGTON WILL SEND IT TO HER.

12:25PM  13          MS. JONES:  OF COURSE.

12:25PM  14          THE COURT:  SO I DON'T WANT HER TO RETYPE ANYTHING.

12:25PM  15          MS. JONES:  AND, YOUR HONOR, IF IT'S USEFUL TO HAVE

12:25PM  16     A KIND OF ANALOGOUS DESIGNEE ON THE DEFENSE SIDE, WE CAN

12:25PM  17     CERTAINLY PROPOSE SOMEONE TO THE COURT.  WE'LL BE GUIDED BY

12:25PM  18     WHAT YOUR PREFERENCE IS, BUT IF IT WOULD BE USEFUL TO THE COURT

12:25PM  19     AND MS. ANDERSON TO HAVE OUR OWN COMPARABLE PERSON, WE'RE HAPPY

12:26PM  20     TO DO THAT.

12:26PM  21          THE COURT:  IT WOULD BE.  IT WOULD BE USEFUL TO ME

12:26PM  22     JUST BECAUSE THERE ARE SOMETIMES LITTLE THINGS LIKE PERHAPS I

12:26PM  23     NEED TO TALK TO YOU, AND IF I CAN JUST SEND IT TO TWO PEOPLE,

12:26PM  24     IT WOULD MAKE IT A LOT EASIER FOR ME.  SO IF YOU HAVE A DEFENSE

12:26PM  25     LIAISON, I WOULD APPRECIATE THAT.

12:26PM  1          MS. JONES:  YES.  LET ME ACTUALLY USE THIS

12:26PM  2   OPPORTUNITY TO INTRODUCE MY PARTNER WHO IS IN THE GALLERY,

12:26PM  3   ASHLEY SIMONSEN, WHO IS IN OUR LOS ANGELES OFFICE AND WHO HAS

12:26PM  4   GRACIOUSLY AGREED TO SERVE IN THAT ROLE FOR THE DEFENSE TEAM.

12:26PM  5          THE COURT:  ASHLEY?

12:26PM  6          MS. JONES:  SIMONSEN, S-I-M-O-N-S-E-N.

12:26PM  7          THE COURT:  SIMONSEN?

12:26PM  8          MS. JONES:  S-I-M-O-N-S-E-N.

12:26PM  9          THE COURT:  GREAT.  TERRIFIC.  OKAY.  DO NOT GET

12:26PM 10   UPSET WITH ME ON THE DEFENSE SIDE.

12:26PM 11          MS. JONES:  THAT'S QUITE THE LEAD IN, YOUR HONOR.

12:26PM 12       (LAUGHTER.)

12:26PM 13          THE COURT:  BECAUSE AFTER BEING AT THE MDL

12:26PM 14   CONFERENCE, I WAS ADVISED BY A VERY WELL-RESPECTED DEFENSE

12:27PM 15   LAWYER AND PLAINTIFFS' LAWYERS THAT I SHOULD SAY I KNOW IT'S

12:27PM 16   NOT TIME TO TALK SETTLEMENT, BUT WE REALLY SHOULD TRY TO FIND A

12:27PM 17   MEDIATOR WHO YOU COULD ALL START TALKING TO WHO YOU CAN START

12:27PM 18   GETTING TO UNDERSTAND WHAT IS GOING ON TO THE EXTENT THAT

12:27PM 19   ANYTHING ULTIMATELY GETS PAST THE GATES.

12:27PM 20       SO I DO WANT TO HAVE SOMEBODY OUT THERE THAT YOU CAN ALL

12:27PM 21   AGREE ON, AND WITH NO EXPECTATION.

12:27PM 22       LOOK, I UNDERSTAND.  I HAVE A LOT OF WORK TO DO BETWEEN

12:27PM 23   NOW AND THEN, BUT IN ANY EVENT, AND ONE DAY WHEN AND IF THIS IS

12:27PM 24   ALL GONE, I'LL LET YOU KNOW WHO THE DEFENSE LAWYER WAS.

12:27PM 25          MS. JONES:  WE WILL BE WAITING WITH BATED BREATH,

12:27PM  1      YOUR HONOR.

12:27PM  2              (LAUGHTER.)

12:27PM  3              THE COURT:  GIVEN WHO THIS DEFENSE LAWYER IS, YOU

12:27PM  4      WILL NOT BE ABLE TO BE MAD AT HIM.

12:27PM  5              MS. HAZAM:  OKAY.  WE WILL PROMPTLY RECRUIT THEM.

12:27PM  6              MS. JONES:  FAIR ENOUGH.

12:27PM  7              THE COURT:  THAT PERSON IS STILL ACTIVE.

12:27PM  8              MS. JONES:  WE'RE CERTAINLY HAPPY TO PUT THAT ON OUR

12:28PM  9      LIST OF THINGS TO CHAT ABOUT.  I THINK WE BOTH SAID OR AT LEAST

12:28PM 10      WE WOULD HAVE SAID IN THE STATEMENT WE THINK IT'S PREMATURE TO

12:28PM 11      DISCUSS SETTLEMENT, BUT WE UNDERSTAND YOUR HONOR'S INCLINATION.

12:28PM 12              THE COURT:  OR IF YOU CAN'T AGREE, GIVE ME A LIST OF

12:28PM 13      A COUPLE AND I'LL PICK SOMEONE.

12:28PM 14          BUT JUST LIKE I'M NOT -- I'M NOT HOPING FOR ANY DISCOVERY

12:28PM 15      DISPUTES, BUT I DID RECRUIT JUDGE HIXSON TO DEAL WITH THAT, AND

12:28PM 16      I'M JUST TRYING TO GET ALL OF MY DUCKS IN ORDER.  OKAY.

12:28PM 17              MS. HAZAM:  I APPRECIATE THAT.  AND WHILE MS. JONES

12:28PM 18      ACCURATELY REPRESENTED WHAT WE SAID IN THE STATEMENT, I KNOW

12:28PM 19      THIS HAS BEEN DONE IN SEVERAL RECENT MDL'S, INCLUDING IN JUUL,

12:28PM 20      WHERE SEVERAL REFEREES OR MASTERS WERE IDENTIFIED EARLY ON, I

12:28PM 21      THINK IT'S USEFUL.

12:28PM 22              THE COURT:  ONE LAST LITTLE THING.  ALMOST ALL OF

12:28PM 23      YOU GOT IT RIGHT, BUT NOT EVERYBODY DID.

12:28PM 24          MY LAST NAME AND THE NAME THAT I GO BY IS GONZALEZ ROGERS.

12:28PM 25      IT IS NOT HYPHENATED.

12:29PM  1       SO I'LL TELL YOU A LITTLE STORY AND THAT WAY MAYBE YOU

12:29PM  2  WILL REMEMBER.  IT IS NOT HYPHENATED BECAUSE I GOT VERY TIRED

12:29PM  3  OF GOING TO FORMAL EVENTS WITH MY HUSBAND IN THE R LINE AND I

12:29PM  4  WAS IN THE G LINE.

12:29PM  5       MS. JONES:  YEAH.

12:29PM  6       THE COURT:  AND IT'S LIKE, OKAY, ENOUGH ALREADY.

12:29PM  7       SO I USE IT.  I'M VERY PROUD TO BE MEXICAN AMERICAN, BUT

12:29PM  8  MY OFFICIAL LAST NAME IS ROGERS, BUT I USE GONZALEZ ROGERS, NOT

12:29PM  9  HYPHENATED.  GONZALEZ, IT'S EASY TO REMEMBER, IT'S EASY, NOT

12:29PM 10  E-S, RIGHT, E-Z, AND ROGERS DOESN'T HAVE A D.

12:29PM 11       I KNOW IT'S VERY LONG.  IN FACT, IN THE LAW FIRM THEY USED

12:29PM 12  TO USE MY NAME TO DO THE NAME PLATES BECAUSE IT WAS THE LONGEST

12:29PM 13  ONE.

12:29PM 14       (LAUGHTER.)

12:29PM 15       THE COURT:  SO IF YOU WANT TO AND YOU'RE EMAILING OR

12:29PM 16  WHATEVER, YOU CAN EVEN SAY JUDGE YGR, THAT'S FINE WITH ME, I

12:30PM 17  DON'T CARE, BUT DON'T FORGET THE GONZALEZ PART.

12:30PM 18       MS. JONES:  UNDERSTOOD.

12:30PM 19       THE COURT:  OKAY.  LIKE I SAID, MOST EVERYBODY DID

12:30PM 20  IT CORRECTLY, BUT I JUST THOUGHT IF YOU CAN FIX YOUR TEMPLATES

12:30PM 21  AND MAKE SURE YOU HAVE IT RIGHT.

12:30PM 22       OKAY.  I THINK THEN -- IS --

12:30PM 23       MR. WARREN:  MAY I QUICKLY BE HEARD?

12:30PM 24       PREVIN WARREN WITH MOTLEY RICE.  I JUST WANTED TO TAKE AN

12:30PM 25  OPPORTUNITY TO MAKE SURE THE RECORD WAS CLEAR ON ONE ISSUE

12:30PM  1   CONCERNING THE INQUEST RECORD.

12:30PM  2       SO MOTLEY RICE, MY FIRM, DID HAVE ACCESS TO THAT INQUEST

12:30PM  3   MEETING, AND WE WERE PERMITTED TO ATTEND THAT AND WATCH THE

12:30PM  4   HEARINGS LIVE AND SEE IT, BUT WE DO NOT HAVE POSSESSION OF THAT

12:30PM  5   RECORD.  I JUST WANTED TO MAKE SURE THE RECORD WAS CLEAR ON

12:30PM  6   THAT POINT.

12:30PM  7           THE COURT:  OKAY.  I APPRECIATE THAT CLARIFICATION.

12:30PM  8   THANK YOU.

12:30PM  9           MR. WARREN:  THANK YOU.

12:30PM 10           THE COURT:  ALL RIGHT.  THEN I WILL SEE -- WELL, I

12:30PM 11   DON'T KNOW THAT I WILL SEE EVERYBODY, BUT I WILL SEE ALL OF YOU

12:30PM 12   ON DECEMBER 14TH AT 8:30 A.M.  CHECK THE DOCKET.

12:30PM 13       IF I HAVE SOME SENSE THAT I MIGHT BE GETTING A JURY

12:31PM 14   VERDICT THAT MORNING, THEN I'LL TRY TO LET YOU KNOW IN ADVANCE

12:31PM 15   SO WE CAN PUSH IT OFF UNTIL LATER THAT DAY.  BUT, AGAIN, IT'S A

12:31PM 16   CRIMINAL TRIAL SO THAT WILL TAKE PRECEDENCE.

12:31PM 17       I WISH EVERYBODY A HAPPY THANKSGIVING.

12:31PM 18           MS. JONES:  AND TO YOU, YOUR HONOR.  THANK YOU SO

12:31PM 19   MUCH.

12:31PM 20           MS. HAZAM:  THANK YOU, YOUR HONOR.

12:31PM 21       (COURT CONCLUDED AT 12:31 P.M.)

        22

        23

        24

        25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18         DATED:  NOVEMBER 17, 2022

19

20

21

22

23

24

25