UNITED STATES DISTRICT COURT   *ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| IN RE: SOCIAL MEDIA | ) | **Further Case Management** |
| ADOLESCENT ADDICTION/ | ) | |
| PERSONAL INJURY PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | NO. C 22-03047 YGR |
| | ) | |
| | ) | |
| ALL ACTIONS | ) | Pages 1 - 61 |
| | ) | |
| _____) | | Oakland, California |
| | | Wednesday, December 14, 2022 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:              Lieff, Cabraser, Heimann &
                             Bernstein
                             275 Battery Street, 30th Floor
                             San Francisco, California  94111
                      BY:    LEXI J. HAZAM,
                             KELLY K. MCNABB,
                             MIRIAM MARKS,
                             TISEME G. ZEGEYE, ATTORNEYS AT LAW

                             Seeger Weiss LLP
                             55 Challenger Road, Sixth Floor
                             Ridgefield Park, New Jersey  07660
                      BY:    CHRISTOPHER A. SEEGER,
                             CHRISTOPHER L. AYERS, ATTORNEYS AT LAW

                      (Appearances continued next page)

Reported By:        Raynee H. Mercado, CSR No. 8258

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

## A P P E A R A N C E S (CONT'D.)

```
For Plaintiffs:          Motley Rice LLC
                         401 9th Street NW Suite 630
                         Washington, DC  20004
                         Previn Warren,
                    BY:  JODI FLOWERS,
                         MATHEW JASKINSKI,
                         JONATHAN ORENT, ATTORNEYS AT LAW



                         Andrus Anderson LLP
                         155 Montgomery Street, Suite 900
                         San Francisco, California  94104
                    BY:  JENNIE LEE ANDERSON, ATTORNEY AT LAW


                         Beasley Allen Crow Methvin Portis &
                            Miles, P.C.
                         234 Commerce Street
                         Montgomery, Alabama  36103
                    BY:  JOSEPH G. VANZANDT, ATTORNEY AT LAW

                         Morgan & Morgan
                         220 W. Garden Street, 9th Floor
                         Pensacola, Florida  32502
                    BY:  EMILY C. JEFFCOTT, ATTORNEY AT LAW


                         Ron Austin Law
                         400 Manhattan Boulevard
                         Harvey, Louisiana  70058
                    BY:  RON A. AUSTIN, ATTORNEY AT LAW

                         Social Media Victims Law Center
                         821 Second Avenue, Suite 2100
                         Seattle, Washington  98104
                    BY:  MATTHEW BERGMAN,
                         GLENN DRAPER,
                         Laura Marquez-Garrett
                         Madeline Basha, Attorneys at Law
```

## A P P E A R A N C E S (CONT'D.)


```
For Plaintiffs:          Weitz & Luxenberg, PC
                         700 Broadway
                         New York, New York  10003
                    BY:  JAMES J. BILSBORROW, ATTORNEY AT LAW


                         Watts Guerra LLP
                         4 Dominion Drive
                         Building 3, Suite 100
                         San Antonio, Texas  78257
                    BY:  PAIGE BOLDT, ATTORNEY AT LAW


                         Simmons Hanly Conroy, LLC
                         112 Madison Avenue, 7th Floor
                         New York, New York  10016
                    BY:  JAYNE CONROY,
                         ELLYN HURD, ATTORNEYS AT LAW


                         C.A. Goldberg, PLLC
                         16 Court Street
                         Brooklyn, New York  11241
                    BY:  CARRIE GOLDBERG, ATTORNEY AT LAW


                         Aylstock Witkin Kreis & Overholtz PLLC
                         17 East Main Street, Suite 200
                         Pensacola, Florida 92502
                    BY:  SIN-TINY MARY LIU, ATTORNEY AT LAW


                         Gibbs Law Group
                         1111 Broadway, Suite 2100
                         Oakland, California  94607
                    BY:  ANDREW MURA, ATTORNEY AT LAW


                         Levin Papantonio Rafferty
                         316 South Baylen Street
                         Suite 600
                         Pensacola, Florida  32502
                    BY:  EMMIE PAULOS, ATTORNEY AT LAW
```

**A P P E A R A N C E S (CONT'D.)**

```
For Plaintiffs:          DiCello Levitt and Casey LLC
                         7556 Mentor Avenue
                         Mento, OH  44060
                 BY:  MARK ABRAMOWITZ, ATTORNEY AT LAW



                         The Carlson Law Firm
                         1500 Rosecrans Avenue, Suite 500
                         Manhattan Beach, California  90266
                 BY:  JOHN FRABRY,
                      RUTH T. RIZKALLA, ATTORNEYS AT LAW


For the Meta             Covington & Burling LLP
Defendants:              One City Center
                         850 Tenth Street, NW
                         Washington, DC  20001-4956
                 BY:  PHYLLIS JONES,
                      PAUL SCHMIDT,
                      ASHLEY SIMONSEN, ATTORNEYS AT LAW

                         Gibson, Dunn & Crutcher
                         555 Mission Street, Suite 3000
                         San Francisco, California  94105-0921
                 BY:  ROSE RING, ATTORNEY AT LAW

For Defendant Snap       Munger, Tolles & Olson
Inc.:                    560 Mission Street, 27th Floor
                         San Francisco, California  94105
                 BY:  JONATHAN H. BLAVIN,
                      LAUREN A. BELL, ATTORNEYS AT LAW



For Defendant TikTok     King & Spalding LLP
Inc.; ByteDance, Inc.:   1180 Peachtree Street, N.E.
                         Suite 1600
                         Atlanta, Georgia  30309-3521
                 BY:  GEOFFREY M. DRAKE, ATTORNEY AT LAW

                         Faegre Drinker Biddle & Reath LLP
                         90 S. 7th Street, Suite 2200
                         Minneapolis, Minnesota  55402
                 BY:  AMY FITERMAN, ATTORNEY AT LAW
```

# A P P E A R A N C E S (CONT'D.)

```
For Defendant Alphabet   Wilson, Sonsini, Goodrich & Rosati
Inc.; Google, LLC;       One Market Plaza
YouTube, Inc.:           Spear Tower, Suite 3300
                         San Francisco, California  94105
                    BY:  LAUREN GALLO WHITE, ATTORNEY AT LAW


For Defendant Roblox:    Wilson, Sonsini, Goodrich & Rosati
                         650 Page Mill Road
                         Palo Alto, California  94304-1050
                    BY:  ANTHONY J. WEIBELL, ATTORNEY AT LAW



                         --oOo--
```

```
 1   Wednesday, December 14, 2022                    8:33 a.m.
 2                      P R O C E E D I N G S
 3                         --o0o--
 4        THE COURT:  Let's call the case, and we will not do
 5   all of the lawyers' appearances given that the courtroom is
 6   full.
 7        THE CLERK:  Now calling MDL case 22-3047-YGR, In Re:
 8   Social Media Adolescent Addiction Personal Injury Products
 9   Liability Litigation.
10        THE COURT:  Okay.  As you come up and -- we will put
11   on the docket the sign-in sheet.  So if --
12        Sorry about that.
13        And so if you've not signed in on the sign-in sheet, make
14   sure to do so because that will be the record of who is here.
15        And then when you come to the microphone, you should
16   identify yourself.
17        So let's -- who's going to be -- we have a lot to do.
18   I'll start with the CMC statement and go through the issues
19   that are there.  And I'd like to get the updates that you
20   indicated in the CMC statement you might have.
21        So who will be speaking?  One from each side.
22        MS. JONES:  Good morning, Your Honor.  Phyllis Jones
23   from Covington & Burling on behalf of Meta.  I'll be playing
24   spokesperson for the defense for the most part today, but
25   others might get up on specific issues.  Nice to see you
```

1    again.

2              **THE COURT:**  Good to see you again.

3              **MS. HAZAM:**  Good morning, Your Honor.  Lexi Hazam on

4    behalf of plaintiffs.  The same applies.  I will address

5    certain issues, and co-lead counsel will address others.

6              **THE COURT:**  Okay.

7         So going to your CMC statement, what updates do you have

8    in terms of the things that you were considering -- or

9    continuing to address between the time you filed this on

10   December 8th and today?

11        We'll start with the plaintiff.

12             **MS. HAZAM:**  Thank you, Your Honor.

13        Going in the order of the agenda, although I'm happy to go

14   in any other order the Court prefers, the parties have agreed

15   on a schedule for master pleadings and --

16             **THE COURT:**  So maybe I wasn't clear.  I'm going to go

17   through the issues.  What I want to know before I go through

18   issues are what updates, that is, what has happened between

19   December 8th and today that I don't -- that is not reflected

20   in the statement?

21             **MS. HAZAM:**  Your Honor, the parties have continued to

22   meet and confer on certain issues.  Those would include the

23   issues related to prior productions made by defendants.  There

24   has been some progress made, I believe, although there are

25   certainly outstanding disputes.  And my colleague Previn

1    Warren will speak specifically to that.

2        The parties have also had some discussions about the

3    proposed common benefit order.  Mr. Seeger will speak to that.

4        I believe the other update is that pursuant to what the

5    parties set out in the statement, a proposed order regarding

6    guardian ad litem appointments was filed with the Court

7    yesterday.  That is unopposed.  And Ms. Anderson will speak

8    specifically to that.

9             **THE COURT:**  Okay.

10       From your side?

11            **MS. JONES:**  Your Honor, we -- we agree with those

12   updates.  I think the only other thing I would add to the list

13   is we have agreed to aim to exchange proposed mediator names

14   by this Friday, as of a further meet and confer yesterday

15   amongst counsel.

16       And we have also, I believe, reached an agreement with

17   respect to aiming to provide each other with comments on the

18   first drafts of the preservation order that Your Honor asked

19   the parties to work on, the ESI protocol and the protective

20   order.

21            **MS. HAZAM:**  Your Honor, I would note that there was a

22   proposal from defendants last night on that.  I don't believe

23   we've formally responded.  I don't necessarily anticipate that

24   we won't reach agreement, however.

25            **MS. JONES:**  That's accurate, Your Honor.

```
 1              THE COURT:  Okay.

 2         All right.  So then starting at the top.  In terms of the

 3    schedule, in general, the schedule works for me.

 4         A couple of notes.  So the master complaint will be filed

 5    February 14th, 2023.  What I indicated to plaintiffs, to be

 6    clear, is that I wanted you to identify to defendants what you

 7    believed were the five or six strongest claims.  So that I'm

 8    clear, not just any claims, your strongest claims.  And you

 9    should -- you should inform them by way of notice on the

10    docket so that I know too.

11         I anticipate that -- well, let me say it this way:  The

12    defendants will bring a motion to dismiss on those five or six

13    claims or they will be waived.  Understand?

14              MS. JONES:  Understood.

15              THE COURT:  Okay.

16         If you want to bring a claim of -- motion to dismiss on

17    the 230 and First Amendment, you can, but not in that

18    document.  And you can't do it in that document because I'm

19    not going to rule on it until I decide to rule on it.

20         So with respect to that -- those two issues, you can bring

21    a second motion.

22              MS. JONES:  Well, Your Honor, just -- just to address

23    your -- your point.  I think from our perspective, part of the

24    thinking around the schedule was for the parties to have an

25    opportunity to address certain crosscutting issues that might
```

1  be dispositive as to all of the claims and --

2          **THE COURT:**  I am not going to rule on the 230 until I

3  hear from the Supreme Court.

4          **MS. JONES:**  Well, from our perspective, we think that

5  would be -- that would be fine, Your Honor, but we're -- our

6  view is that the parties can proceed with briefing the

7  issue --

8          **THE COURT:**  So why is it that want to brief the issue

9  without hearing from the Supreme Court?  You want to brief it

10  in a vacuum?  Wouldn't you prefer to brief it once we hear

11  from the Supreme Court so you that you can brief it in that

12  context rather than me asking for supplemental briefing?

13          **MS. JONES:**  Your Honor, I don't think we'd be

14  briefing it in a vacuum because certainly there's existing law

15  on the topic.  And if we get to a point where it's appropriate

16  for the Court to seek additional briefing from the parties,

17  that can certainly happen.

18      But I think it's hard for us to make a judgment standing

19  here today that something's going to happen in the *Gonzalez*

20  case that would prevent us from being able to brief the issues

21  fully at this point.

22          **THE COURT:**  Well, the other way you can do it is you

23  can brief it.  If I get something from the Supreme Court that

24  I think moots it, then I'll moot it and I'll have you do it

25  again if appropriate.

1    I don't want to waste my time.  What I've said before and

2    I'll say it again, the plaintiffs here have a different

3    approach that has not been tested.  That is the approach that

4    I'm going to spend my time on.

5        **MS. JONES:**  We -- we fully understand that, Your

6    Honor.  And -- and in fact, I think it's hard for us standing

7    here today to know exactly what that approach will be given

8    what the plaintiffs have said about what they plan to do and

9    their master complaint and how that might differ from the

10   complaints that they've filed so far.

11       We think at least as they've described their proposed

12   alternative approach, it would still be subject to a

13   Section 230 defense.  It would still be subject to a defense

14   under the First Amendment of the U.S. Constitution.

15       And from our perspective, it's not a -- we certainly

16   obviously don't want to waste the Court's time.  That's not

17   what we're aiming to do here.  But we do think we're in a

18   position to brief those issues on the schedule that the

19   parties have agreed to.

20       **MS. HAZAM:**  Your Honor --

21       **THE COURT:**  Like I said, you can brief them but not

22   in the same -- in the same motion.

23       Yes.

24       **MS. HAZAM:**  Your Honor, we understand the Court is

25   instructing that the defendants may bring those motions at the

1    same time as part of a separate motion.  It's plaintiffs'

2    position that it would indeed be wasteful of the Court's and

3    the parties' resources to go forward with briefing of those

4    motions prior to the Supreme Court's decision, which would

5    likely be arriving at the time that the initial phase of

6    motions relating to whether we've adequately alleged a product

7    become ripe.

8        And we believe it is inevitable, regardless of how the

9    Supreme Court rules, that the parties will need to redo their

10   briefing.  And we therefore think it makes sense to proceed as

11   the Court had instructed with these initial phase briefs on

12   the threshold question of whether we've alleged a product and

13   defer briefing on Section 230 until the Supreme Court's

14   ruling.

15           **THE COURT:**  Well, I think we're going to expect a

16   Supreme Court ruling by, you know, the end of June.

17           **MS. HAZAM:**  Yes.

18           **THE COURT:**  Everything -- the defendants' reply

19   briefs are due June 30th.

20       Why you couldn't then do, on 35 days' notice, a motion to

21   dismiss on the 230 and First Amendment, beginning briefing

22   July 1st, given that I'm not going to make a decision in two

23   weeks, I just don't understand how that is efficient.

24           **MS. JONES:**  Let me ask, if I may, Your Honor, just a

25   clarifying question about what you're contemplating, and then

```
 1    I want to give Ms. Ring a chance to weigh in on this because
 2    she came prepared to address this specific issue.
 3        I think from our perspective, while there's a Section 230
 4    defense still pending and unresolved by the Court, then the
 5    discovery stay that the Court has put in place should stay in
 6    place.
 7        If what the Court is contemplating is that discovery would
 8    remain stayed while all this --
 9            THE COURT:  I'm going to allow a measure of
10    discovery, not full discovery, but a measure.
11            MS. JONES:  Well, so our position, Your Honor,
12    respectfully is that while the Section 230 issue is
13    unresolved, discovery wouldn't be appropriate.
14            MS. RING:  Your Honor, I don't want to beat a dead
15    horse here --
16            THE COURT:  So you need to identify --
17            MS. RING:  Yes, I apologize.
18        Rose Ring, Gibson Dunn, on behalf of Meta.
19        During the initial CMC, Your Honor mentioned that you'd
20    had MDLs but never product MDLs.  And this is a unique product
21    MDL, to say the least.  Unlike the drug and device cases, we
22    don't even know if we have a product here --
23            THE COURT:  Correct.
24            MS. RING:  Yeah.  And --
25            THE COURT:  And if there is no product, there is no
```

```
 1   case.
 2          MS. RING:  Agree.  And the nature of the product is
 3   such, Your Honor, these are communications platforms, and we
 4   heard you.  Plaintiffs are the masters of their complaint.
 5   They're trying to do something new here.
 6       We're not trying to be obtuse when we say we don't know
 7   what this is going to look like.  It's based on the current
 8   complaints.  And what plaintiffs are now describing, they're
 9   two very different things.  But we're waiting -- we're just
10   waiting and seeing what the master complaint is going to look
11   like.
12       The reason that, on Gonzalez, we don't know whether the
13   Supreme Court is even going to reach the Section 230 issue.
14   The briefs that have been filed so far are all over the place
15   on the issue to actually even be addressed.  And the one that
16   we filed says the Court doesn't even have to reach
17   Section 230.
18       So just in the interest of the plaintiffs are the master
19   of their complaint, once we see the master complaint and we
20   see what plaintiffs' case and theories are going to look like,
21   we just want a chance to move on it as we would any case.
22       In a situation where it is entirely possible that the
23   Supreme Court will not even reach the Section 230 question,
24   and understanding, Your Honor, you don't want to waste your
25   time, we don't want to waste our time, but we do think the
```

1    timing here is such that we will have a decision.

2        And if the Supreme Court reaches the issue and if the

3    Supreme Court changes the law, that can be addressed in

4    supplemental briefing.

5        But to approach the case holistically and to let us make

6    our arguments on a motion to dismiss holistically, that's why

7    we're asking to brief them together.  We have no desire or

8    intent to waste the Court's time.

9            **MS. HAZAM:**  Your Honor, if I may respond.

10       We understand the Court to be advising defendants that

11   they can bring their motions as separate motions on the same

12   schedule here.  So accepting that, the question becomes

13   whether those motions should then be briefed.

14       In our view, the question presented to the Supreme Court

15   as defined by the parties in their briefing is squarely a

16   Section 230 question.

17       I understand that the defendants are pointing out that

18   there -- within the realm of possibility is the Supreme Court

19   enters a ruling that does not reach the question presented to

20   it.  However, that seems highly unlikely.  It seems quite

21   likely, overwhelmingly likely in fact, that the court's

22   decision will inform this Court's analysis and the parties'

23   analysis of this issue, and therefore it would be wasteful to

24   engage in full briefing prior to that time, particularly when

25   it can be accomplished soon after, as the Court just

1    suggested.

2          **THE COURT:**  Okay.  Again, I've read the statement.  I

3    am not saying you cannot bring it.  I am saying that until I

4    hear from the Supreme Court, one way or the other, I need to

5    understand the legal landscape.

6          Why you can't wait and file it two weeks after the

7    Supreme Court's decision -- you know, the Supreme Court may

8    come out in March.  It may come out in May.  Who knows when

9    the Supreme Court's going to come out.

10         But I don't -- again, it's your call.  I can moot it and

11   have you redo it.  I can ask for supplemental briefing.  But I

12   think it's a waste of time until we hear from the

13   Supreme Court.  That's my perspective.

14         I'm not saying you can't do it.

15         **MS. RING:**  We appreciate that, Your Honor.  And we

16   will think -- we will take that into consideration once we see

17   the master complaint.

18         As I said, it's just -- we don't -- we don't know what

19   it's going to look like.  Once we have it we will take that

20   into consideration.

21         **THE COURT:**  We don't know specifically, but we do

22   know generally they are trying something different.  And it's

23   not as if I don't understand 230.  I threw a case out on 230,

24   and it gets cited to me all the time.  So it's not as if I

25   don't understand it.  The question is how far does it reach.

```
1              MS. RING:  We agree, Your Honor.

2              THE COURT:  So you may agree, I may agree, but until

3      we hear from the Supreme Court, we don't know what the

4      Supreme Court thinks, and they're the ultimate arbiter on the

5      topic.  That's why I think it's a waste.

6              MS. RING:  I understand, Your Honor.

7              THE COURT:  All right.

8         I don't see -- so I take it this is all per local rule in

9      terms of briefing?  You've not asked for more pages.

10             MS. HAZAM:  Your Honor, I believe we intend to meet

11     and confer about that issue and can do so as part of the same

12     schedule.

13             THE COURT:  How many pages do you want for your

14     motion, assuming that it's the five or six claims?

15             MS. RING:  Your Honor, we built time into the

16     schedule to allow meet and confer on this, not because we

17     can't talk about it now, but the reason that we can't decide

18     on it now is because we don't know, for example, whether

19     plaintiffs are going to file separate master complaints for

20     each defendant.  We just don't know.  So that's the reason we

21     haven't agreed to that yet.

22             THE COURT:  All right.

23         And the short form complaint?

24             MS. HAZAM:  Your Honor, we have a schedule that has

25     the short forms complaints shared in proposed form to
```

1    defendants on the same date the master complaint is filed,

2    together with a draft implementation order for those short

3    form complaints.

4        We then have a two-week period for the parties to meet and

5    confer and seek agreement, and then either submit an agreed-to

6    form complaint and implementation order or submit any disputes

7    we have regarding it.

8        Once Your Honor enters an implementation order, resolves

9    any disputes as needed, then there are 21 days until

10   short-form complaints must be filed.  For those who had long

11   form complaints, or shall we say their initial complaints, on

12   file as of the date of the implementation order, short-form

13   complaints will of course continue to be filed thereafter.

14        **THE COURT:**  Okay.  With respect to the filing on

15   February 28th, letter briefs, four pages, single-spaced, one

16   space in between each paragraph, and regular font.

17        I have a lot of you in here.  I'll let you know,

18   frequently we get footnotes that are ten-point font.  Do not

19   do that.  It violates the rules.  And I can't read them

20   without glasses.  So it's really easy for me to know when

21   you've violated the rule because I can't read what you put.

22   So don't do it.  Ever.  Ever.  And the double space I don't

23   like.  So make sure it's single-spaced.

24        **MS. HAZAM:**  Understood, Your Honor.

25        **MS. RING:**  Yes, Your Honor.

1          **THE COURT:**  What we should probably do so that -- in

2     case I have any issues, we'll schedule another conference

3     after February 28th.  I'll be headed back into trial.  And we

4     can go back to this, but I think Friday -- Friday, March 3rd

5     will probably work.  So in the interim you can start looking

6     at calendars.

7          All right.  So April 4th to file the complaints is fine.

8     The 17th to file the motions to dismiss are fine.  June 1st

9     for oppositions.  June 30th for reply briefs.  That all works.

10         Okay.  Next on your -- with respect to the defendants' --

11    I -- I do not agree, and we can talk about it again at the

12    next conference, that motions to dismiss should be brought on

13    a short-form complaint.  That is the whole point of having a

14    master complaint.

15         If there are individual things that need to happen later

16    on the short-form complaints, we can do that in another phase.

17    But we -- but I'm not doing it in the first phase.  The whole

18    point of the first phase is to resolve the big issues across

19    the board.  So those motions on short-form complaints will not

20    be allowed, not unless I get a swarm of law clerks from the

21    Ninth Circuit.

22         **MS. RING:**  Your Honor, may I explain why we even

23    raise that issue?  There are a lot of MDLs where the courts

24    issue decisions later and there's lots of fights later about

25    what was intended, what are the -- what are the operative

```
 1      pleadings.  And I think there's no question that what you have

 2      in mind is that the operative pleadings are the master

 3      complaint as adopted by the short forms.

 4          We also understand in most MDLs and most product MDLs,

 5      again, drug and device, there's just a checkbox.  And if

 6      that's the case, we have no need to move on the short forms.

 7          The reason that we raised it here is because, as you say,

 8      the plaintiffs are trying to do something new here.  We don't

 9      understand yet how they're going to be able to take the

10      complaints they currently have and put them all into a master

11      complaint.

12          So what we were planning for the possibility of is that to

13      state a claim, certain allegations are going to have to be

14      included.  And if those allegations are put into a short form,

15      to accomplish the Court's goal of dealing with these threshold

16      issues and to be moving on these claims, we're going to have

17      to be able to move on the full set of allegations.

18          Now we don't know if those are even going to be in the

19      short form but --

20              THE COURT:  So I don't know one way or other.  I

21      certainly can envision something where some of these claims,

22      perhaps not all, but some, the major ones, can be done by way

23      of master complaint.  That's why I said we should talk about

24      it again once we have it.

25              MS. RING:  Yeah.
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

 1          **MS. HAZAM:**  Your Honor, to respond to Ms. Ring.

 2       We have frequently heard this refrain of "We don't know

 3    what will be in the short-form complaints."  Obviously

 4    inherent in the process until they've seen that they won't

 5    know what it is word for word.  But we have in fact on a

 6    number of occasions outlined the short-form complaints for

 7    defendants, noted that they will be consistent with those

 8    commonly used in other mass tort MDLs with boxes to check for

 9    the defendants being sued, causes of action being asserted,

10    and the injuries being claimed.  Sharing more than that with

11    them now would essentially require actually identifying those

12    claims, and that would be the premature.

13       We think it will be very straightforward to apply rulings

14    on the motions to dismiss.  And we don't believe that the

15    short-form complaints even need to be on file at all before

16    motions are brought.  However, because that was a sticking

17    point for the defendants, we proposed a schedule that would

18    allow the initial batch of short-form complaints to, in fact,

19    be on file before motions are filed.

20       We do not believe that that means that the Court needs to

21    review and rule on every short-form complaint.  As the Court

22    has noted, that would defeat the purpose of the master

23    complaint and mean that the Court had to engage in ongoing

24    rulings as more short-form complaints are files, which they

25    will be during the briefing process.

```
1              THE COURT:  Well, I think it would be helpful to have
2    at least some so I make sure I have an understanding of what
3    it is you're contemplating.
4              MS. HAZAM:  And you will, Your Honor.
5              THE COURT:  It could be that, you know, the
6    short-form complaints provide additional information about the
7    plaintiff to the defense.  Those kinds of things would be
8    important for purposes of going forward if they do go forward.
9         I've got -- myself, I have concerns on the plaintiffs'
10   side about -- and this is from colleagues who have noted these
11   kinds of issues in other products cases where you have, you
12   know, firms that are just -- oh, what's a good word to use --
13   as they're recruiting people, kind of assembly line
14   recruitment where lawyers are not doing their job to make sure
15   that their plaintiffs are actually real plaintiffs, to make
16   sure that the plaintiffs have not, you know, already been
17   contacted, to make sure that they have claims.  And frankly,
18   I'm considering if -- again, if we get past this initial stage
19   and we start having all of these things made, I'll tell you
20   right now, I am considering making sure or requiring that a
21   California lawyer over whom I have authority for ethical
22   violations is assigned to each and every case and to make sure
23   that due diligence on these plaintiffs is being done, and if
24   the plaintiffs' lawyers are not doing their job, as they have
25   in other -- in other products cases, sending them to the state
```

 1   bar for discipline.  I'm not going to have that happen in this

 2   case.

 3      So with the horror stories that I hear from my colleagues

 4   on some of these product cases, I do not want happening in

 5   this case.

 6           MS. HAZAM:  Understood, Your Honor.  We do not want

 7   that to happen either.  And we'll do everything we can to

 8   prevent it and look forward to that conversation with you

 9   after the motions to dismiss.

10           MS. RING:  Your Honor, if I may, I think that's an

11   agenda item that the defense wanted to address.  But just to

12   close out the short form, if the short forms come in in the

13   way that plaintiffs just described, we're not going to have an

14   issue.  It is simply that if allegations that are going to

15   essential elements of the --

16           THE COURT:  I don't -- I don't disagree with that.

17           MS. RING:  Thank you.

18           THE COURT:  But I also don't -- I also don't agree

19   that it needs to happen in Phase 1.  It can happen in a

20   different phase.

21      So -- anyhow.  But we'll have more conversations on that

22   in the next go-around.

23           MS. RING:  Thank you, Your Honor.

24           THE COURT:  Okay.  You've agreed on service of

25   process, waiver of service and direct filing.  I believe that

1    that is -- Docket 100-1 is the proposed form of order.

2          **MS. HAZAM:**  Correct, Your Honor.

3          **THE COURT:**  So, and this is an -- this is an

4    agreed-upon document.

5          **MS. HAZAM:**  It is, Your Honor.

6          **THE COURT:**  So I am -- I am prepared to issue this

7    order with one change, and that is that I don't know that the

8    his or her reference in the order is actually fully

9    appropriate.  There are many people these days who do not use

10   his or her as a pronoun, and I'm trying very hard to avoid

11   that conundrum.

12       I just finished a trial with someone who was a she at the

13   start of the incident and a he at the end of the incident.  So

14   I would like us to have better language in that order.  You

15   can use "his," "her" or "their," you can do something else,

16   but I'd like you to revise that, and once you revise it, then

17   send it to me, I'll issue it.

18         **MS. HAZAM:**  Thank you, Your Honor.  We'll do so.

19       Is using "their" acceptable to the Court even though it

20   normally denotes a plural?  That's a common means of

21   addressing this issue.

22         **THE COURT:**  It is now.  It's taken me some time to

23   get there, but --

24         **MS. HAZAM:**  Okay.

25         **THE COURT:**  -- I am there now.

1          **MS. HAZAM:**  Thank you.

2          **THE COURT:**  Okay.

3      With respect to -- I don't want to get into discovery

4  right at this juncture.  We'll come back to that.

5      And that's the bulk of the CMC statement.

6      With respect to public access, I didn't have this in time

7  to get the cameras in the courtroom, but we'll have plenty of

8  advance notice at this point.  So the next CMC we'll have the

9  cameras in the courtroom.

10     And they -- right, it's old-school technology, this pilot

11 project.  I mean they literally come and put cameras in.  The

12 Zoom doesn't work for that because you get feedback.  So, you

13 know, unless there was one Zoom camera that could get me and

14 all of you all at the same time, but I haven't researched it

15 and I don't have such a camera.

16     So you are all welcome to research it, and if the court

17 can afford it, then perhaps I can make a request for it and we

18 could be our own pilot, then we could do it on Zoom.  If we

19 did it on Zoom -- well, anyhow.

20     There are all sorts of AO requirements about live

21 streaming versus not live streaming and whether or not and the

22 extent to which it can be done.

23     But now that I know that there's agreement, I'll look into

24 that.  And if you all know of a camera that does that kind of

25 thing, let me know, send me a note, and we can look into that.

```
 1            MS. JONES:  And, Your Honor, just from the
 2    defendants' perspective, we do as a general matter have
 3    agreement on this issue.  There -- there may well be topics in
 4    certain hearings where we want to just revisit this particular
 5    issue.  But as -- as a concept, we have no objection.
 6            THE COURT:  Yeah.  Okay.
 7        All right.  The order with respect to the common benefit
 8    order, and I think that's Mr. Seeger.
 9            MS. HAZAM:  Yes, Your Honor, thank you.
10            MR. SEEGER:  Good morning, Your Honor.  Chris Seeger.
11            THE COURT:  Good morning.
12            MR. SEEGER:  Judge --
13            THE COURT:  All right.  So --
14            MR. SEEGER:  Go ahead.
15            THE COURT:  -- my big question with respect to this
16    is whether it was circulated and whether people agree or don't
17    agree.  The one thing I will not agree to is telefax anymore.
18    No one faxes.  And if you do, get with the new technology.
19        I'm not --
20                          (Laughter.)
21            MR. SEEGER:  I'm getting there.
22            THE COURT:  I'm not agreeing to 50 cents a page to
23    fax.
24            MR. SEEGER:  Understood, Your Honor.  I didn't put
25    that in there, believe it or not.
```

```
 1                THE COURT:  Buck stops with you, Mr. Seeger, on this
 2      one.
 3                MR. SEEGER:  I got you.  I believe it.
 4                THE COURT:  Okay.  So has it been -- I mean obviously
 5      it was circulated in the sense that it was filed on the
 6      docket.  Feedback from lawyers about this.
 7                MR. SEEGER:  Yeah.  So, Your Honor, we have received
 8      some feedback, including some from defendants, which, you
 9      know, although frankly I could make the statement that they
10      don't have a dog really in this race, a couple of legit
11      comments have come up that I do think we could do a better job
12      clarifying in the order that's before you.
13          So what I would like to do is put that aside, take a few
14      days to gather up the comments or --
15                THE COURT:  Well, I'd actually like to hear them.
16      And I'd like to hear them because, again, I want to make sure
17      that I'm understanding the considerations that people are
18      thinking about --
19                MR. SEEGER:  Yeah.
20                THE COURT:  -- because I'm signing this.
21                MR. SEEGER:  Correct.  Okay.
22          So I'll -- there's a list in my head I'll go down.
23      Hopefully I'll capture them all.
24          But one item that was raised that I do think is legit is
25      we should clarify a little better that the holdback, should
```

1    you sign that order, that the holdback of the common benefit

2    assessment would not increase the amount that clients pay.

3    It's a redistribution of attorneys' fees from lawyers to

4    lawyers.

5        So that, I think we could do a better job clarifying to

6    make sure that everybody understands it.

7        The defendants have raised issues about the scope of the

8    order, who it covers.  Does it just cover lawyers who have

9    cases in the MDL?  Lawyers who have cases in the MDL and in

10   state court?  Lawyers that only have cases in state court?

11       And I would like to work through some of those issues with

12   them because, like I said, I think there's some really good

13   answers.  And I think the answer is yes to all of that, but

14   I'd like to have an opportunity to lay my thoughts out to them

15   as well and to Your Honor if you want to talk about it when we

16   resubmit it.

17       Defendants had a concern about the percentage being stated

18   upfront as opposed to adding that later.  It's always been my

19   practice, I think -- I think appreciated by most judges, but,

20   Your Honor, you'll have your own take on this, is to put the

21   percentage in upfront with the understanding that the Court

22   can adjust that.  Because the ultimate decision is the

23   Court's.  It's our ask.

24       But by putting it upfront, we at least let plaintiffs'

25   lawyers who participate know what the deal is going in so

```
 1    there's no surprise on that.

 2         And, again, Ms. Jones may have some response to these.

 3    I'm giving you my thoughts without really having theirs fully.

 4         And then, oh, the one issue I think does involve the

 5    defendants frankly, and it's a fair one, is the reporting

 6    requirement.

 7         So if settlements are occurring, we need to have a way to

 8    track them so that we know what amounts need to be held back

 9    because the holdback requirement is on the defendants.

10         I had a brief call -- a couple email exchanges yesterday,

11    a brief call this morning.  I was open to, and my colleagues

12    are, a proposal by defendants that might differ from ours as

13    long as it gets the job done.  But I haven't heard the

14    proposal yet and I haven't had a chance to discuss it with

15    them.

16                     (Simultaneous colloquy.)

17              MS. JONES:  I'm sorry.

18              MR. SEEGER:   I think those are the main points --

19              MS. JONES:  Yeah, Your Honor, from the defendants'

20    perspective, I think Mr. Seeger has correctly identified the

21    issues that we've raised with them.  And I agree we need a

22    little bit more time to work those through.

23         I think for Your Honor's reference, to the extent that

24    it's of any interest or informative of any way -- in any way,

25    Judge Chhabria issued an order in the Roundup MDL, it's
```

1   Docket -- it's deep in the docket, it's Docket 13190 in case

2   number 16 MD 2741 --

3          THE COURT:  Which you can -- which you can file on

4   the docket for me.

5          MS. JONES:  Happy -- and we're happy -- we're happy

6   to do that, Your Honor.

7       But I just -- just to kind of -- if you're interested in

8   just kind of getting a little bit of a perspective on some of

9   these issues which frankly are driving some of the questions

10  that we raised with plaintiffs' counsel, that that might be a

11  useful reference for that purpose.

12      But I agree that Mr. Seeger has properly characterized the

13  issues that we raised and that there's more room for us to

14  work on these things.

15         THE COURT:  All right.  Well --

16         MR. SEEGER:  By the way --

17         THE COURT:  -- and I can talk to Judge Chhabria about

18  his --

19         MR. SEEGER:  And, Your Honor, I do agree with defense

20  counsel that you need to be -- it was important for you to

21  know that order exists.  We have our views on it, they have

22  their views.  But it is important for you to know that exists.

23  It's a judge in your district obviously.

24         THE COURT:  The other thing you should know upfront,

25  because this involves minors, all settlements of minors I must

```
 1    approve.

 2              MR. SEEGER:  Yeah.

 3              THE COURT:  And when I presided over the Asiana

 4    Airline crash case MDL, and we had minors in that case, I

 5    would -- I tracked, because we had different lawyers, so the

 6    different lawyers did not always know what was being settled

 7    in terms -- with the defendants.  The defendants obviously

 8    knew.  The plaintiffs' lawyers did not.

 9              MR. SEEGER:  Correct.

10              THE COURT:  I do ask questions and I will track to

11    make sure that some minor is not being treated unfairly.  So

12    just again an FYI in how I deal with that issue.

13              MS. JONES:  It's understood.

14              THE COURT:  There should be some reason, something

15    rational, you should be able to explain to me why you were

16    paying more or less to a minor versus not.

17              MS. JONES:  Understood.

18              THE COURT:  Okay.

19        Any plaintiffs' lawyer in the courtroom, if you have any

20    issues with this order, you can come forward if you want.  Up

21    to you.  Got a lot of you in here.

22        You're not going to hurt Mr. Seeger's feelings.

23              MR. SEEGER:  Not at all.

24              THE COURT:  I think.

25              MR. SEEGER:  And we are going to follow up with
```

```
1    everybody again, Your Honor.  In light of the fact that I'm
2    asking you to put the one we gave you aside, I want to make
3    sure that we get everyone's thoughts.
4         THE COURT:  Okay.  When you resubmit it, please send
5    to the proposed mailbox so you don't have to do it on the
6    docket, but I do want a redline --
7         MR. SEEGER:  Okay.
8         THE COURT:  -- with the changes.  That will make
9    it -- I've already reviewed it.  So that will make it easier
10   for me to know how it's been changed.
11        MR. SEEGER:  Can I just ask you one question on the
12   issue that was raised by Ms. Jones about Judge Chhabria's
13   order.
14      You may read that and have questions for us.  Would you
15   want us to wait until you've looked at that and then decide
16   how you may want to deal with questions you may have?  Or
17   would you like us to submit the order with some type of a --
18   maybe a short brief?  Just want to make sure we've done what's
19   easier for you, Your Honor.
20        THE COURT:  I don't have an answer to that question
21   because I don't know what I'm going to think.
22        MR. SEEGER:  Okay.
23        THE COURT:  So if --
24        MR. SEEGER:  I could preview it and say he was wrong
25   about a few things.
```

1            **THE COURT:**  I'm sure you think that.  I'm also sure,

2     knowing my colleague, that he thinks he's right.

3         So I think the question is can -- can it -- can it wait to

4     have this issued until March?  If it can't, if it's better to

5     have it done sooner rather than that, you know, we might be

6     able to just do a quick Zoom hearing just on that topic rather

7     than have everybody come in.

8         But I don't know that there's anything -- so let's just

9     put that on the side and see if we need to have a separate

10    hearing on it.

11           **MR. SEEGER:**  Okay.

12           **MS. JONES:**  And, Your Honor, to the extent that it

13    affects any of the timing, I do agree with Mr. Seeger that as

14    a general matter, you know, all of us who play in the space

15    recognize that these common benefit fund orders typically are

16    really within the plaintiffs' lawyers' domain.  So I would not

17    expect the defense will have, you know, broad comments on the

18    balance of the order.  I think Mr. Seeger has captured the

19    issues that we've raised.  So it would probably be a pretty

20    narrow set of issues.

21           **THE COURT:**  Well, then the other thing that could

22    happen is you could submit it.  There could be a -- you know,

23    a letter brief identifying different language or -- or a brief

24    identifying different proposed language if you think it's

25    really important.  I could consider both.

```
 1        And if -- given that it's -- what I would -- what I would
 2   tend to do, Mr. Seeger, since it's an order for the
 3   plaintiffs, is if I disagree with your proposal, then I could
 4   schedule a hearing --
 5             MR. SEEGER:   Okay.  Sounds fair.
 6             THE COURT:    -- to give you an opportunity to tell
 7   me.  If I agree with you and decide I'm, you know, just not
 8   inclined to go the other way, then I can just issue the order.
 9             MR. SEEGER:   Okay.
10             THE COURT:   But I can contact liaison counsel and get
11   something scheduled.
12             MR. SEEGER:   Absolutely.
13             THE COURT:   Okay.  Why don't we do that.
14             MR. SEEGER:   Okay.  Thank you, Your Honor.
15        Is there anything else on the common benefit for now?
16                  (Pause in the proceedings.)
17             THE COURT:   No.  I didn't have any other questions on
18   that.
19             MR. SEEGER:   All right.  Thank you for your time.
20             THE COURT:   Okay.  In terms -- well, I still need to
21   do the guardian ad litem.  And here, it didn't look like there
22   were any objections so this order will issue.  And I'm fine
23   with the approach.
24        Okay.  So let's talk discovery.
25        My primary goal in allowing for a measure of discovery is
```

1    again to make sure that we are dealing with the best complaint

2    that we can deal with.

3        If you will -- I mean obviously, Mr. Warren -- and you

4    should state your appearance.

5            **MR. WARREN:**  Good morning, Your Honor, and thank you.

6        Previn Warren with Motley Rice for the plaintiffs.

7            **THE COURT:**  Mr. Warren, the documents that are

8    currently in your possession in this other case, have you

9    reviewed them?

10           **MR. WARREN:**  Yes, Your Honor.  My firm's reviewed all

11   of them.

12           **THE COURT:**  Okay.  And what is the -- how many are

13   there?

14           **MR. WARREN:**  I don't have a precise number, but it's

15   somewhere between a thousand and 1,500.

16           **THE COURT:**  Okay.  Would it be your intent to use

17   information from those documents for purposes of the master

18   complaint?

19           **MR. WARREN:**  Your Honor, we would like to do that,

20   but that would require us to discuss with defendants the

21   confidentiality designation of those documents, and to the

22   extent appropriate or needed, to brief those with Your Honor.

23       Our position is that the documents in bulk have been

24   released to the public, to Congress, the SEC, and to the

25   press.  For that reason, they're not confidential and we ought

1    to be able to rely on them in building out our master

2    complaint.

3         **THE COURT:**  I'm inclined to order the production of

4    those 1,000 to 1,500 documents.

5       Response.

6         **MS. JONES:**  Yeah, thank you, Your Honor.

7       Let me, if I could, just take a step back to give a little

8    bit more context about what these 1,300 documents are, in part

9    because although there was a suggestion in the CMC statement

10   that they were, quote, highly relevant to this case, it is in

11   fact the case that a high percentage of the documents, and

12   Mr. Warren will know this if his firm has reviewed the

13   documents, have nothing to do with the case.

14      And in fact, we're not talking about close calls in terms

15   of whether something may be related or not.  We're talking

16   about documents about climate change and election interference

17   and other topics.

18        **THE COURT:**  So one of the problems you have is that

19   you didn't do this before.  There are 1,300 documents and

20   rather than say, "You've looked at them, Mr. Warren, I've

21   looked at them.  At most there are 200 relevant documents,"

22   you said, no, we agreed to nothing.  And that's in part the

23   problem.  So you've got hundreds and hundreds of hours that

24   are involved in the production, 800 hours, you claim.

25        **MS. JONES:**  Not with respect -- that's a separate

```
 1    category.
 2           THE COURT:  I understand that.  But you've -- you've
 3    not agreed to anything.  You have taken the position that
 4    nothing is acceptable.
 5           MS. JONES:  No, Your Honor, respectfully we haven't.
 6    We have --
 7           THE COURT:  Okay.  So why am I having this
 8    conversation?
 9           MS. JONES:  With respect to the Molly Russell
10    documents, if we're just talking broadly about their different
11    requests, with respect to the Molly Russell documents, we
12    communicated to Mr. Warren and his colleagues yesterday that
13    we -- there was a compromise that we were prepared to reach
14    with respect to that proceeding which is concluded.  So it's
15    not the case that we've agreed to nothing.
16         With respect to the Haugen documents, we can --
17           THE COURT:  Let's focus on these, then.
18           MS. JONES:  Okay.  And I'm sorry, when you say these,
19    do you mean Haugen and the Molly Russell documents?
20           THE COURT:  The Molly Russell documents.
21           MS. JONES:  Okay.
22           THE COURT:  And that's the easiest for me because
23    Mr. Warren knows what they look like.
24           MS. JONES:  But those are not the -- those are -- he
25    has the Haugen documents, Your Honor.
```

1      **THE COURT:**  So those are the ones that we should talk

2   about.  Those are the 1,300.

3      **MS. JONES:**  Those are the 1,300.  And just to be

4   clear, Your Honor, we communicated to Mr. Warren and his

5   colleagues back in August that many of the documents that you

6   will have received from Ms. Haugen and her counsel have

7   nothing to do with these cases.

8      And if you wish to actually pursue documents that have

9   something to do with these cases, you could do so properly

10  under the applicable rules of procedure in the state court

11  proceeding.

12     It's not -- it's not news to plaintiffs' counsel for the

13  first time today that there are any number of documents within

14  that set of documents that have nothing to do with these

15  cases.

16     And the -- and the problem that we have from our

17  perspective is what has been contemplated by the plaintiffs is

18  that we would have to do, if we were really trying to parse

19  through these materials --

20     **THE COURT:**  But you --

21     **MS. JONES:**  -- we would have to undertake a review

22  exercise in the context of a discovery stay where we have a

23  Section 230 defense that has not been resolved and a motion to

24  dismiss that hasn't been resolved by the Court.  That's the

25  challenge that we've confronted in this regard.

```
 1              MR. WARREN:  May I be heard, Your Honor?

 2              THE COURT:  You may.

 3              MR. WARREN:  Simply put, defendants have said no.

 4    They've said no to allowing us to review or use any of the

 5    Haugen documents, period, in this litigation at this moment in

 6    time.

 7         We have communicated to them that it requires no work on

 8    their part.  I have them.  I can give credential access to my

 9    cocounsel in this MDL.  They need to do nothing to allow this

10    to happen.

11         They have had months to identify to us if there are

12    documents they think are so clearly irrelevant to this

13    proceeding that they should not be part of any compromise

14    deal.  They have not approached me with any compromise deal.

15         The first time ever they suggested that there was any

16    procedural impropriety of me getting these materials was in

17    their draft case management conference statement.

18         I don't think that suggestion has any merit.  We properly

19    subpoenaed Ms. Haugen.  She gave us the documents.  We told

20    Meta immediately we have the documents.  We gave those

21    documents to Meta, provided them a full and fair

22    opportunity --

23              THE COURT:  When was that?

24              MR. WARREN:  Well, I have a full timeline, Your

25    Honor.  We served a subpoena on Ms. Haugen on August 25th.  On
```

1    August 29th, Ms. Haugen produced the documents to us.  On

2    September 1st, we provided all of those to Meta and began the

3    process of meeting -- I'm sorry.  On September 1st we began

4    the process of meeting and conferring with Meta about how they

5    would go about identifying any privileged materials in those

6    documents.

7        We abstained from reviewing any of them, not even a single

8    word, until Meta had provided a privilege log as well as

9    redacted copies of any documents they felt should be redacted.

10   We waited patiently.  They blew the deadlines on more than one

11   occasion.  We didn't complain.  And when we finally received a

12   privilege log and redacted copies, we began our review.

13       There was never a suggestion, not once, that we would --

14                   (Simultaneous colloquy.)

15           THE COURT:  When did you begin your review?

16           MR. WARREN:  Excuse me?

17           THE COURT:  When did you begin your review?

18           MR. WARREN:  I do not know the exact date when they

19   provided us with their final privilege materials and we began

20   reviewing.  I cannot answer that question, Your Honor.  But it

21   would have been several weeks ago.

22           MS. JONES:  And, Your Honor, you will not be

23   surprised to hear that we have a slightly different

24   perspective on the timeline here, including that as soon as

25   the subpoena was served for these documents, we almost -- we

1   immediately sent a note back, and I know this because I was

2   the one who sent the email to Mr. Warren and his colleagues,

3   that said we plan to move to quash.  Those documents were

4   taken from the company without permission.  The documents

5   concern, I'm quoting here, a wide array of topics that have

6   nothing to do with your client's claims, and they also include

7   attorney-client and attorney work product materials.  They're

8   confidential proprietary information.  If you need to seek

9   discovery on these issues, you can do so with respect to Meta

10  under the relevant California rules.  We intend to move to

11  stay pending a demurrer that we would file.

12      And then the California state case was stayed.  So to the

13  extent that there has not been procedural activity around

14  those issues, that's the reason for that.

15      But in any event, to the extent that there's a question

16  about whether or not Mr. Warren and his colleagues properly

17  secured the documents, whether or not we properly raised the

18  issue, that's an issue to be adjudicated in the state court

19  proceeding.

20      The motion that they are going to try to make an end-run

21  around that issue being resolved in state court and instead

22  come here and say to Your Honor we want to be able to share

23  1,300 documents, many of which -- and I don't hear them

24  disagreeing with this -- many of which have nothing to do with

25  our claims, many of which involve very sensitive topics

1    without any kind of -- without any kind of mechanism for

2    avoiding mischief around the sharing of those documents,

3    that's -- that's where -- that's where we are.

4        And I -- again, I think it probably bears repeating that

5    we're in a little bit of an odd situation where discovery has

6    been stayed --

7            **THE COURT:**  General discovery has been stayed, but

8    that doesn't mean I don't have, under Rule 1, the ability and

9    the power to order a small measure of discovery if it is going

10   to make these proceedings more efficient, which I believe it

11   will.

12       So this is what you will do.  You will identify

13   specifically, Mr. Warren, the documents which you want to use

14   in the master complaint.  You're going to have to make that

15   judgment on your own.

16           **MR. WARREN:**  Very well, Your Honor.

17           **THE COURT:**  You will identify those to the defendant.

18   If -- in terms of producing those specifically or providing

19   access to those specifically to the plaintiffs' attorneys only

20   under a highly -- under whatever the appropriate level is

21   under the protective order.

22       Within one week of receiving that notification, if the

23   defendant objects on relevance grounds or any other ground

24   other than -- well, I guess you can preserve it in terms of

25   you don't think that any discovery should be provided, period,

1   you take that to Judge Hixson and he'll make the call.

2       But that way, again, I am only interested in trying to get

3   the plaintiffs the documents that they need so that this

4   master complaint is as fulsome as it should be for purposes of

5   resolving these proceedings one way or the other.

6       **MR. WARREN:**  Thank you, Your Honor.  We understand

7   and we'll abide by that process.

8       I should have mentioned what should be fairly

9   self-evident, that we may file the master complaint partly

10  under seal if necessary while some of those documents remain

11  covered by the highest --

12      **THE COURT:**  I think that's appropriate.

13      **MR. WARREN:**  Thank you, Your Honor.

14      May we address some of the other categories of documents?

15      **THE COURT:**  You may.

16      **MR. WARREN:**  All right.  Thank you.

17      I'm pleased to report that the parties -- that the

18  plaintiffs appear to be close to an agreement with both Snap

19  and Google as to documents that they would be producing at

20  this stage.  I don't think we've finalized that fully, but

21  we're on the precipice of an agreement and so we don't have

22  any issue to raise with respect to them at this time.

23      The issue with the Molly Russell proceeding, so the offer

24  that was made by defendants, Meta specifically late last night

25  and then again this morning, was to provide two out of three

1    witness statements from Meta's head of safety, Elizabeth

2    Lagone, which were presumably prepared by Meta, you know, with

3    some modicum of direction from Meta's counsel and then

4    presented to the coroner.

5        What Meta has indicated they possess and are unwilling to

6    produce include some of the materials that Instagram had

7    pushed to Molly Russell and that were, you know, plainly

8    relevant to the coroner's determination that her addiction to

9    social media was a cause of her death.

10       We think it is unreasonable for us to see only one-half of

11   the picture and the record that led to the coroner's

12   conclusion and not the other half.  Part of what we want to

13   understand is what motivated the coroner's decision to make

14   that determination.  For that reason --

15           THE COURT:  Why can't you get that from the coroner?

16           MR. WARREN:  Your Honor, we very well might be able

17   to do that and we can reach out to the coroner to ask for that

18   material.

19           THE COURT:  I don't understand why you can't get it

20   from the coroner if, you know, Meta -- and/or those who

21   represent Ms. Russell, if you take it from that perspective,

22   then defendants don't have a basis for objecting.

23           MR. WARREN:  Your Honor, you're absolutely right.  I

24   agree with you.  And we have reached out to the Russell

25   family, their representative, to seek their consent.  So

1    perhaps this is a premature issue.

2          THE COURT:  And not only that, I would also say again

3    back to the discussion we're having.  Before -- the specifics

4    of any one particular person could be problematic in a master

5    complaint.  So I don't know why you need that for a master

6    complaint.

7          MR. WARREN:  Very well, Your Honor.  Well, we will --

8    we will attempt to pursue that discovery through other means.

9          MS. JONES:  And, Your Honor, I think -- I think

10   you've put your finger on the concern that we've had which is

11   we -- we've articulated for the plaintiffs a willingness to

12   share with them two of three witness statements.  The third

13   witness statement relates entirely to Ms. Russell, and we

14   don't feel at liberty to or that it would be appropriate for

15   to us produce those -- those materials.

16       So I think this is probably an issue where the parties

17   could -- could benefit from a little bit more time to consult,

18   but at least as to some part of the request, we have reached

19   an agreement.

20         MR. WARREN:  Your Honor, I agree with Ms. Jones on

21   that.  And I do think if the defendants are prepared to, you

22   know, permit us to receive discovery from outside sources

23   without attempting to quash that in any way, then that would

24   be -- certainly go a ways to resolving the issue.

25         MS. JONES:  And I want to be clear here in saying

```
1    we've not had a discussion on our end about efforts to seek

2    these materials from the coroner directly.  I'm not suggesting

3    we necessarily would try to resist that.  I just want to be

4    sure that we're -- that I'm at least putting that marker down.

5              THE COURT:  All right.  What else is there?

6              MR. WARREN:  There really is only one other category,

7    Your Honor, of documents, and they concern discovery that Meta

8    and Tiktok have apparently provided to a group of state

9    attorneys general in two investigations.  The attorneys

10   general involved are California, Florida, Kentucky,

11   Massachusetts, Nebraska, New Jersey, Tennessee, and Vermont.

12   For the Tiktok investigation, my understanding is Illinois is

13   also involved.

14       The way in which those investigations have been described

15   by the attorneys general makes clear that they're directly

16   related and relevant to this MDL.

17       If I may, I would quote former Attorney General Maura

18   Healey, now Governor Elect, whose press release described it

19   as such, quote:  A nationwide investigation into whether

20   Tiktok is designing, operating, and promoting its social media

21   platform to children, teens, and young adults in a manner that

22   causes or exacerbates physical and mental health harms.

23       AG Bonta, from of course California, had said something

24   very similar about the investigation into Meta.

25       My understanding, which we only learned again through the
```

 1    statement that defendants provided us, that there are enough

 2    documents that for defendants to go through and review them

 3    for relevance it would take 800 hours.

 4        Our perspective is that work is entirely unnecessary.  It

 5    will all be relevant.  In any event, unilateral redactions on

 6    the basis of relevance are problematic and -- and as a general

 7    rule not permitted in -- in this circuit.

 8        So we see, you know, no administrative burden in handing

 9    these over.  To the extent there was privilege in any of those

10    materials, presumably it's already been -- it was screened

11    before being handed over to the AG.  And if it wasn't, the

12    privilege has been waived.  There is no selective waiver

13    doctrine in the Ninth Circuit.

14        So we again see no -- nothing that would cause any sort of

15    burden in providing that production.  We feel like we ought to

16    be on even footing as plaintiffs in this MDL in producing a

17    master complaint that takes advantage of the evidence that

18    state AGs are currently reviewing and presumably in preparing

19    their other than lawsuits, and for that reason would

20    request -- would request those materials.

21        The last thing I would say is I know there's some concern

22    expressed by defendants that the investigations are ongoing or

23    haven't concluded.  I don't know if we'll ever know when the

24    investigations are concluded.  I don't know if the state

25    attorneys general are in the business of letting targets of

1   their investigation know that their work is done.

2        But more to the point, there are past cases in which, you

3   know, the reproduction of discovery from ongoing

4   investigations has been permitted.  I would cite Docket 2712

5   from the opioids MDL.  And I'm quoting:  A defendant's

6   production of documents to the federal government in

7   connection with ongoing investigation does not inoculate those

8   documents from discovery if production is appropriate.

9        And I think that statement very much applies to the

10  present case.

11            THE COURT:  Well, in that case, though, discovery was

12  open.

13            MR. WARREN:  Yes, Your Honor, that's correct.

14            THE COURT:  All right.  A response.

15            MS. JONES:  Thank you, Your Honor.

16       And I -- I want to give counsel for Tiktok an opportunity

17  to speak on their behalf if -- if they're inclined to.

18       But just very -- very generally, what we're talking about

19  here is a request of the defendants to produce materials that

20  have been produced in ongoing investigations involving certain

21  of the defendants.

22       We have looked very --

23            THE COURT:  So hold on.

24            MS. JONES:  Yes.

25            THE COURT:  Is the argument going to be no discovery

1    because of the stay?  Or are you making a different argument?

2           **MS. JONES:**  Well, that's -- that's certainly part of

3    the argument, Your Honor.  The other part of the argument is

4    there is a meaningful burden presented by what they are

5    proposing.

6        We think we would have a right to review those documents

7    to determine whether or not they would be appropriately

8    responsive in the context of these specific cases where we

9    still have not had an opportunity to see whatever the master

10   complaint would look like.

11       We think it is within this Court's ability and authority

12   to take notice of the fact that these are ongoing

13   investigations and the potential --

14          **THE COURT:**  So then how do you deal with the opioid

15   precedent, not binding but certainly persuasive, that just

16   because it's an ongoing investigation doesn't necessarily

17   shield you from production.

18          **MS. JONES:**  Our understanding of what happened in the

19   opioid litigation was in fact that Judge Polster determined

20   that there were certain materials that were off limits because

21   in fact there was an ongoing investigation.

22       There's also, of course, the *WorldCom* litigation citation

23   that we included in the CMC statement which stands for the

24   same basic proposition that there's nothing to suggest that

25   there's some wide-scale entitlement to information from

1    ongoing investigation matters.

2            **THE COURT:**  In the antitrust context, we routinely in

3    MDLs order the production of documents that had been produced

4    to the U.S. Attorney's Office in the parallel proceedings,

5    routinely.  Day one.  In fact, I would be 30 days late at this

6    point from having ordered that and my colleagues having

7    ordered that.  It is routine.

8            **MS. JONES:**  From our -- from our perspective, Your

9    Honor, in our procedural posture, and you anticipated that I

10   was going to mention the discovery stay because we do view

11   that as being significant because --

12           **THE COURT:**  So other than that, then there's no

13   objection really.

14           **MS. JONES:**  There is a burden objection, Your Honor,

15   and it is a material burden from -- from our perspective.  It

16   is --

17           **THE COURT:**  But you have the letters from the AGs or

18   the document requests from the AGs.

19           **MS. JONES:**  We do.

20           **THE COURT:**  All right.  File those under seal so that

21   I can see them.

22           **MS. JONES:**  We will, Your Honor.

23           **THE COURT:**  You don't have to provide them to the

24   other side at this point.  We'll see how irrelevant the --

25                    (Simultaneous colloquy.)

1          **MS. JONES:**  Well, just to be -- just to be clear,

2    Your Honor, our argument is not that they are necessarily

3    irrelevant.  Our argument is that for us to feel -- to be able

4    to produce those documents in the way that they've discussed,

5    which is to just press a button, is not workable from our

6    perspective.

7       We think the defendants have a right to look at those

8    documents and make a judgment about whether or not they're in

9    or out in terms of what these cases are.  I'm not

10   suggesting --

11         **THE COURT:**  No, you did suggest in your CMC statement

12   that they weren't relevant.  And so if you are making the

13   argument that they are not relevant and you want to spend

14   800 hours to determine whether they are relevant, then that's

15   very different than -- than some kind of different argument.

16   But that's the argument that you've made.

17         **MS. JONES:**  Well, your Honor, if we were unclear in

18   the argument we were advancing in the CMC statement, I

19   certainly apologize for that.

20         **THE COURT:**  With respect to Meta's assertion that it

21   would -- all right.  Go ahead.

22      Go ahead.

23      And I see someone who wants to stand up over there.

24         **MS. JONES:**  I believe that's Mr. Drake on behalf of

25   Tiktok.

1          All that I was saying was to the extent that there was a

2    miscommunication via the CMC statement, I apologize to the

3    Court.

4          I think our -- the only point we were making was to say

5    that we believe in this circumstance that the defendants do

6    have the right to review the documents and determine whether

7    or not they would be appropriately produced in this context.

8    That's -- and I'm not suggesting that the relevant requests

9    from the state AGs don't track to some extent the topics in

10   these cases.  But -- but we have a right in this setting --

11             **THE COURT:**  You certainly --

12                  (Simultaneous colloquy.)

13        **MS. JONES:**   -- review those documents.

14             **THE COURT:**  You certainly can choose to do that over

15   and above the fact that you've already done it.  That's --

16   but -- but that's different from saying there's an extra

17   burden.  You can have -- you have the choice to do that in

18   addition.

19        But if I have a request that tracks identically the

20   complaint and you have made judgment calls already to produce

21   those to attorneys general, you have made that determination

22   already.

23             **MS. JONES:**  Well --

24             **THE COURT:**  Hold on.

25        **MS. JONES:**  Um-hmm.

```
 1              THE COURT:  When you can in fact easily produce it.

 2         Now if you choose to do a second review, that is your

 3    choice.  That is not an additional burden.  It is your choice.

 4              MS. JONES:  I apologize for interrupting, Your Honor.

 5    I want to give you a chance -- I wanted to make sure you had a

 6    chance to finish what you're --

 7              THE COURT:  Don't worry about me.  I can manage my

 8    own --

 9              MS. JONES:  No, understood.

10         The only point I wanted to -- and something you said I

11    think really highlights one of the issues here which is that

12    we don't have a master complaint in these cases yet.

13         So -- and they've told us that what they're going to do in

14    their master complaint is to some extent going to be different

15    insofar as they're going to abandon content, for example.

16         So it's hard for either the defendants or for the Court to

17    take the existing request from the state AG proceedings and

18    compare them to something that has not yet been filed by the

19    plaintiffs.

20              THE COURT:  I don't know that because I lack

21    information.  That's why I'm asking to you file one.

22              MS. JONES:  Understood.  Understood.

23         I want to give Mr. Drake a chance to speak if he wanted

24    to.

25              MR. WARREN:  Your Honor, may I address two quick
```

```
1    things?
2            THE COURT:  You may.
3            MR. WARREN:  I'm willing to --
4            THE COURT:  Wait.  No, no.  I'm sorry.  Go ahead,
5    Mr. Warren.
6            MR. WARREN:  I'm sorry.  Two quick things.
7        I am willing to represent to the Court right now that our
8    master complaint will raise allegations that are consistent
9    with Attorney General Bonta's description of his investigation
10   into Meta.  And I'm going to quote what that description is:
11   It's an investigation into Meta Platforms, Inc., formerly
12   known as Facebook, for providing and promoting its social
13   media platform, Instagram, to children and young adults
14   despite knowing that such use is associated with physical and
15   mental health harms.
16       So in order to take off the table that there's some
17   mystery, some great mystery as to what our master complaint is
18   going to say, I will make the representation to the Court and
19   to defense counsel right now that we will raise allegations
20   consistent with that description of the Attorney --
21                (Simultaneous colloquy.)
22           THE COURT:  Well, let me ask this.  If you make that
23   allegation in a complaint that they know that such use is
24   associated with physical and mental health, that they have
25   actual knowledge, one of the approaches I could take is to
```

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

1    reject any notion they don't have knowledge.  Right?

2    Sometimes defendants come in here and say, oh, that's a bald

3    allegations without any factual support.

4        I don't know what else you have.  I don't know what's in

5    those other documents.

6            **MR. WARREN:**  Well, Your Honor, we do -- I'm sorry.

7            **THE COURT:**  But -- let me finish.

8            **MR. WARREN:**  Please.

9            **THE COURT:**  But if the defendants keep wanting to

10   refuse to produce, and then want to also argue that they have

11   no knowledge and that the allegations are bald, then I could

12   reject that and you would need nothing else.

13           **MR. WARREN:**  I understand, Your Honor.

14       We do have the benefit in this litigation of certain of

15   Ms. Haugen's whistleblower documents having been released to

16   the press.  And those are publicly known and I can publicly

17   state them, and we believe they support the allegations as I

18   just described them.  But that isn't to suggest remotely that

19   what's in these other productions wouldn't be material,

20   useful, and supportive in us building our master pleadings.

21   We certainly anticipate that they would.

22           **THE COURT:**  All right.

23       Mr. Drake?

24           **MR. DRAKE:**  Geoffrey Drake, King & Spalding, for

25   Tiktok and ByteDance.

1    Good morning, Your Honor.  I'll just make two very brief

2    quick points on top of Ms. Jones'.

3    We'd also appreciate the opportunity to file under seal

4    the CIDs that were issued in the multistate investigations.

5    The issue that we have there, Your Honor, as Your Honor

6    will see when you have an opportunity to review those CIDs, is

7    that the scope of the document requests in that investigation,

8    while some of them perhaps relate to some issues that

9    Mr. Warren raised, various of those requests relate to a whole

10   host of other issues.

11   And that is why, from Tiktok's perspective, a further

12   review of documents to identify those that are particularly

13   relevant to what we anticipate this litigation to be about

14   will be necessary.  So we can file those under seal forthwith

15   so that Your Honor has an opportunity to review them.

16   The second point, while I appreciate Mr. Warren's comment

17   that perhaps you don't know when an investigation is closed,

18   we know that those investigations are not closed, and the

19   document productions continue.

20   So we're dealing with a bit of a rolling issue, Your

21   Honor, where productions will have to continue to be made and

22   then perhaps reproduced in this case.

23   We think the better course of action, consistent with the

24   CMC statement, because we don't believe that any of the

25   documents that we're talking about are particularly necessary

1    for the plaintiffs to file their master complaint, is really

2    just one of timing.  Obviously once we get into discovery, the

3    plaintiffs issue their document requests, we would certainly

4    leverage any productions made to any other agency or body in

5    terms of identifying documents that are potentially responsive

6    to the plaintiffs' requests in this litigation.

7         So thank you.

8         THE COURT:  I take it that when you've done your

9    productions, and this goes to Ms. Jones as well, when you've

10   done your productions, you have actually identified the

11   documents that are -- by Bates number -- that are relevant to

12   each particular request, right?  So you do know how many

13   documents, how many pages you are producing per request.

14        MR. DRAKE:  I can't answer that question today, Your

15   Honor.  I'm not exactly sure how it was done in this

16   investigation.  I know from other matters that I've worked on

17   that I've done it both ways, depending on what the government

18   has required and really the scope of the -- of the scale of

19   the production.

20        THE COURT:  And what is the scale of your production?

21        MR. DRAKE:  It's about 8,000 documents today.

22        THE COURT:  8,000 pages or 8,000 documents?

23        MR. DRAKE:  I believe it's documents.

24        THE COURT:  All right.  And, Ms. Jones --

25        MR. DRAKE:  Thank you.

```
 1           THE COURT:  -- how about you, do you know whether
 2    your productions have been specific to the requests?
 3           MS. JONES:  I would have to offer the same response
 4    that Mr. Drake did which is that I just don't know that
 5    standing here today to what extent they're -- they're kind of
 6    broken out in that way.
 7           THE COURT:  All right.  So then both of you, when you
 8    file those requests under seal, make sure you identify for me
 9    whether your productions were specific to the requests or not.
10           MS. JONES:  Understood.
11           MR. DRAKE:  Yes, Your Honor.
12           MR. WARREN:  Your Honor, if I may?
13           THE COURT:  Hold on before I forget.
14       And that should be done by -- by Monday 9:00 a.m.
15       Okay.  Is there any discussion with the AGs about whether
16    or not they are interested in joining this litigation at all?
17           MR. WARREN:  Your Honor, I'm not aware of any
18    discussions like that to date.
19       It's possible that those may have occurred from other
20    plaintiffs' counsel.  I can't speak on behalf of everyone.  I
21    can only speak on behalf of really myself, but I'm not
22    personally aware of that.
23           THE COURT:  Okay.  Other plaintiffs' counsel,
24    anybody?  Any discussions?
25       Mr. Seeger?
```

```
 1                    (No response)

 2           THE COURT:  No, I can't see.  You're very tall.

 3           MR. WARREN:  Sorry, Your Honor.

 4           MS. HAZAM:  None that we're aware of on behalf of my

 5   firm, Lieff Cabraser.

 6           MR. SEEGER:  None here on behalf of Seeger Weiss,

 7   Your Honor.

 8           THE COURT:  All right.

 9       Okay.  You wanted to say something else, Mr. Warren.

10           MR. WARREN:  No, actually, Your Honor, it's been

11   mooted by something you already said.

12           THE COURT:  Okay.

13       All right.  So what else is there with respect to

14   discovery?

15           MR. WARREN:  Your Honor, I think that is it at the

16   present time.  There may be other issues that we would -- you

17   know, could profitably meet and confer with defendants about,

18   but none of those would be ripe.

19           THE COURT:  Okay.

20       Let's see.  Then anything else you all want to discuss on

21   the MDL?

22           MR. WARREN:  Not from plaintiffs' side, Your Honor.

23           MS. JONES:  Your Honor, I just want to put something

24   on the radar for future discussion.  One of the items in the

25   proposed agenda that we submitted to the Court is number 3,
```

1    docket control measures.

2       And it's -- what we had contemplated, and we'll want to

3    talk to plaintiffs' counsel about this more, is something very

4    much -- perhaps very much in line with what you described

5    earlier in terms of just diligence around the cases to ensure

6    that you don't have a situation that sometimes does play out

7    in these types of larger MDLs where cases kind of flood in

8    without sufficient gating mechanisms in place.

9       I think the only addendum that we might flag for Your

10   Honor's consideration to what you've said earlier is that it

11   may well be something that the Court would want to consider

12   implementing sooner than after the motion to dismiss is -- is

13   resolved, in part because once you have a direct filing order

14   put in place in these types of cases, you sometimes see an

15   influx in -- in cases that are filed.

16      And so if the parties and the Court want to be focused on

17   that issue, we'd probably want to start talking about it

18   sooner rather than later.

19          **THE COURT:**  Okay.  So -- so talk.

20          **MS. JONES:**  Well, that -- we have not yet had a

21   chance to meet and confer with the plaintiffs on it.  We just

22   wanted to put that on the radar for something we'll want to

23   talk about going forward.

24          **THE COURT:**  Okay.  That's fine.

25      I -- I assumed that some of the issues that we talked

1    about today were actually what you intended under Section 3,

2    but if there are other issues, then feel free to identify

3    them.

4           **MS. JONES:**  I think from the defense's perspective,

5    we have -- we have covered everything on our agenda.

6       I'm getting head nods from the table so I think we're

7    good.

8           **THE COURT:**  Okay.

9           **MR. WARREN:**  Thank you, Your Honor.  Nothing further

10   from the plaintiffs.

11          (Proceedings were concluded at 9:53 A.M.)

12                      --o0o--

13

14              **CERTIFICATE OF REPORTER**

15

16          I certify that the foregoing is a correct transcript

17   from the record of proceedings in the above-entitled matter.

18   I further certify that I am neither counsel for, related to,

19   nor employed by any of the parties to the action in which this

20   hearing was taken, and further that I am not financially nor

21   otherwise interested in the outcome of the action.

22

23   _____

24          Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

25              Thursday, December 15, 2022