UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>ALL ACTIONS | **[PROPOSED] CASE MANAGEMENT ORDER NO. 5:  COMMON BENEFIT ORDER** |

In Case Management Order ("CMO") No. 1 (ECF No. 75), the Court appointed Leadership for Plaintiffs. CMO No. 2 (ECF No. 82) governs the responsibilities and operation of Plaintiffs' Leadership. In accordance with CMO No. 2, the Court now sets specific guidelines and rules for work done and expenses incurred for the common benefit of all Plaintiffs in this MDL. This Order also provides for the fair and equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation. Nothing in this Order shall be interpreted to affect any proceedings other than those involving the authorities, duties, responsibilities, guidelines, and rules of and for Plaintiffs' counsel discussed herein.

This Order applies to:

      a.     All cases or claims now or later subject to the jurisdiction of this Court in this MDL, regardless of whether the case is resolved while the case is pending before this Court, after a remand from this Court to the transferor court, or in bankruptcy;[1]

      b.     All cases or claims, filed or unfiled, in which any counsel associated with any one case filed in or transferred to this MDL has a fee interest;

      c.     All cases or claims settled pursuant to an MDL-negotiated or supervised settlement agreement; and

      d.     All cases or claims of clients of any counsel who signs the Participation Agreement as defined herein, whether the case was filed, unfiled or tolled.

## I.    <u>COMMON BENEFIT DOCTRINE</u>

The United States Supreme Court's common benefit doctrine was initially established in *Trustees v. Greenough*, 105 U.S. 527 (1881); was refined in, *inter alia*, *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and was approved and implemented in the MDL context in, *inter alia*, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); and *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987). Common Benefit Work Product includes all work performed for the benefit of all claimants, including pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work that advances this litigation to conclusion.

## II.    <u>ADOPTION OF CASE MANAGEMENT PROTOCOLS FOR COMMON BENEFIT WORK</u>

The Court hereby adopts the following guidelines for the management of case-staffing,

---

[1] If a case is determined to be improperly removed to this Court after the Court's consideration of a remand motion and is remanded to the transferor court, the case will not automatically be subject to assessment just by virtue of it having been temporarily venued in this Court. However, if the case received and benefited from the work product of the MDL, it could be assessed, after due consideration by the Court following briefing by the parties.

timekeeping, cost reimbursement, and related common benefit issues. The recovery of common benefit attorneys' fees and cost reimbursements will be limited to "Common-Benefit Counsel." "Common-Benefit Counsel" is defined as Plaintiffs' Co-Lead Counsel, Liaison Counsel, Steering Committee Leadership and Membership (along with members and staff of their respective firms), and any other counsel authorized by Co-Lead Counsel to perform work that may be considered for common benefit compensation.

Eligibility does not pre-determine payment. Common-Benefit Counsel shall be eligible to receive common benefit attorneys' fees and reimbursement of costs and expenses only if the time expended, costs incurred, and activity in question were (a) for the common benefit of Plaintiffs; (b) timely submitted; and (c) reasonable. Common-Benefit Counsel shall agree to the terms and conditions herein, including submitting to this Court's jurisdiction and agreeing that this Court has plenary authority regarding the award and allocation of common benefit attorneys' fees and expense reimbursements in this matter.

As directed in CMO No. 2, Co-Lead Counsel will be responsible for collecting monthly common benefit time and expense submissions from Common-Benefit Counsel; auditing such submissions, with the assistance of the Common Benefit Time and Expense Billing Manager and Auditor Amy Collins, PC ("Auditor"), *see supra* § II.G, for compliance with the directives set forth in this Order; informing Common-Benefit Counsel when their submissions do not comply with the directives set forth in this Order; and providing quarterly summaries of attorneys' fees and costs by timekeeper to the Court by email at ygrpo@cand.uscourts.gov six weeks following the end each quarter (e.g., May 12, 2023; August 11, 2023; November 10, 2023; etc.). Co-Lead Counsel's and the Auditor's auditing responsibility notwithstanding, the ultimate determination of what is compensable common benefit work, and the extent or rate at which it is compensable, is within the purview of the Court.

If Common-Benefit Counsel are unsure if the action they are about to undertake is considered Common Benefit Work, they shall ask Co-Lead Counsel in advance as to whether such time may be compensable.

### A.    Compensable Common Benefit Work

"Common Benefit Work" includes all work done and expenses incurred that inure to the common benefit of Plaintiffs in this MDL.

Guidelines regarding compensable and non-compensable work are set forth below.

- **Consolidated Pleadings:** (i) factual and legal research and preparation of consolidated master complaint(s) and short-form complaint(s); (ii) comments and suggestions regarding the consolidated master complaint(s); and (iii) presentation of argument before the Court regarding common factual or legal issues.

- **Briefing**: drafting and researching (i) dispositive and non-dipositive motions and responses thereto, including motions to dismiss, discovery motions, *Daubert* motions, and motions for summary judgment; (ii) status conference statements; and (iii) stipulations.

- **Discovery and Document Review:** Only discovery and document review authorized and assigned by Co-Lead Counsel to an attorney or law firm will be considered Common Benefit Work. If a firm/attorney elects to review documents that have not been assigned to them by Co-Lead Counsel, that review may not be considered Common Benefit Work. Descriptions associated with "document review" should contain sufficient detail to allow those reviewing the time entry to generally ascertain what was reviewed. For example, indicating the custodian(s), search topic(s), or number of documents reviewed is the kind of description needed. Likewise, time spent reviewing discovery requests and preparing responses for the benefit of counsel's own clients is not considered Common Benefit Work, unless it is at Co-Lead Counsel's direction and for a bellwether case after the case is selected as a bellwether.

- **Use of Contract Attorneys:** Contract attorneys may be used only with prior authorization of and for work authorized by Co-Lead Counsel. Such authorization should be included in the time submission for said attorneys. Generally this authorization will be limited to first-level document review and legal research. The terms of the compensation to contract attorneys engaged by Common-Benefit Counsel

(e.g., whether at actual cost or on a cost + multiplier basis) will be determined at the time of any Court approved disbursement of any recovery, if any.

- **Depositions:** Co-Lead Counsel shall exercise discretion, judgment, and prudence to designate only that number of attorneys to participate, in person or remotely as appropriate, in any given deposition that is commensurate with the nature of that deposition so as to avoid over-staffing. For attorneys not assigned to first-chair, second-chair, or defend a deposition, approval from Co-Lead Counsel should be sought beforehand, and included in the relevant time submission. Thus, for example, the deposition of a causation expert proffered by Defendants would typically justify the assignment of more attorneys than would the defense of the deposition of one of Plaintiffs' fact witnesses. Time and expenses for Common-Benefit Counsel not designated as one of the authorized questioners or otherwise authorized to attend the deposition by Co-Lead Counsel may not be considered Common Benefit Work but, rather, considered as attending on behalf of such counsel's individual clients. Unnecessary attendance by counsel may not be compensated in any fee application to the Court.

- **Bellwethers:** When authorized by Co-Lead Counsel, Common Benefit Work may include: (i) communication with clients for the purposes of identifying suitable bellwether candidates; (ii) factual and legal research necessary to select the appropriate bellwethers; and (iii) prosecution of the selected bellwether cases.

- **Periodic MDL Status Conferences:** The Court intends to hold periodic status conferences to ensure that the litigation moves forward efficiently, and that legal issues are resolved with guidance from or formal rulings by the Court. Individual attorneys are free to attend any status conference held in open court to stay up to date on the status of the litigation, but except for Co-Lead Counsel, Plaintiffs' Liaison Counsel, Plaintiffs' Steering Committee Leadership and their designees (including, to the extent authorized by Co-Lead Counsel, members of the Plaintiffs' Steering Committee Membership), attending and listening to such conferences is not compensable Common Benefit Work.

All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients. Mere attendance at a status conference will not be considered common benefit time, and expenses incurred in relation thereto will not be considered common benefit expenses. The attorneys designated by Co-Lead Counsel to address issues that will be raised at a given status conference or requested by Co-Lead Counsel to be present at a status conference are working for the common benefit, and their time will be considered for the common benefit. Similarly, any attorney whose attendance at a status conference is specifically requested by the Court (or by any other judge presiding over this matter or Court-appointed Special Master) to address a common issue may submit his or her time and expenses for such attendance for evaluation as Common Benefit Work.

- **Expert-Related Work:** If a Common-Benefit Counsel retains an expert without the knowledge and approval of Co-Lead Counsel, time and expenses attributable to the same may not be approved as Common Benefit Work. On the other hand, communications with and retention of experts with the knowledge and approval of Co-Lead Counsel will be considered common benefit time.

- **Leadership Meetings or Calls:** PSC members may submit common benefit time for participation in leadership communications and meetings that are germane to all members of the PSC and are necessary to fulfill their Court-appointed obligations. During leadership phone calls or other meetings there is a presumption that one participant per Plaintiffs' Steering Committee Membership firm, and two participants per Plaintiffs' Steering Committee Leadership firm, will qualify for common benefit time, . In addition, there is a presumption that additional counsel from PSC firms who are tasked in writing with assignments by Co-Lead Counsel or the Co-Chairs of Subcommittees may participate in Subcommittee calls relevant to those assignments.

- **Attendance at Seminars:** Except as approved by Co-Lead Counsel, attendance at seminars (e.g., American Association for Justice Section Meetings, Mass Torts Made Perfect, Harris Martin, and similar seminars and Continuing Legal Education programs)

shall not qualify as Common Benefit Work, or the expenses pertaining thereto as Common Benefit Expenses.

- **Review of Court Filings and Orders**: All attorneys have an obligation to keep themselves informed about the litigation so that they can best represent their respective clients, and review of briefs and filings made and Orders entered in this litigation is part of that obligation. Only Co-Lead Counsel, Liaison Counsel, Steering Committee Leadership and those attorneys working on assignments therefrom that require them to review, analyze, or summarize those filings or Orders in connection with their assignments are doing so for the common benefit. All other counsel are reviewing those filings and Orders for their own benefit and that of their respective clients and such review will not be considered Common Benefit Work.

- **Emails and Correspondence:** Except for Co-Lead Counsel, Liaison Counsel, Steering Committee Leadership, and their assigned attorneys and staff, time recorded for reviewing emails and other correspondence is not compensable unless germane to a specific task being performed by the receiving or sending attorney or party that is directly related to that email or other correspondence and that is for the common benefit of Plaintiffs. Thus, for example, review of an email or other correspondence sent to dozens of attorneys to keep them informed on a matter on which they are not specifically working would not be compensable as Common Benefit Work.

- **Other Non-Compensable Work**: The following types of work will not be compensated: leadership organization and applications prior to the appointment of leadership, time not authorized by Co-Lead Counsel, duplicative time, excessive amounts of time spent on a particular task, work performed by a person more senior than reasonably necessary for the task (which may not be compensated or may be compensated at a reduced rate), time spent organizing case files, time spent on internal firm management, and time spent preparing and reviewing time and expense submissions or responding to questions concerning time and expense submissions. Because all attorneys have an obligation to stay informed about the litigation so that

they can best represent their respective clients, review of emails and court filings, attendance at status conferences, participation in conference calls, and similar activities will not be considered Common Benefit Work, unless authorized in advance by Co-Lead Counsel in furtherance of a specific common benefit objective.

### B.   Common Benefit Timekeeping Protocols

All time must be accurately and contemporaneously maintained. Common-Benefit Counsel shall keep contemporaneous billing records of the time spent in connection with Common Benefit Work on this MDL, indicating with specificity the hours (in tenth-of-an-hour increments) and billing rate, along with a description of the particular activity (such as "conducted deposition of John Doe"). Descriptions must bear sufficient detail to identify the precise task and how it relates to Common Benefit Work. Individuals identified in time descriptions must be described by at least their first initial and last name, not by initials. "John Doe" is preferred; "J. Doe" is acceptable; and "JD" is unacceptable.

When referring to a specific plaintiff within the time description, the term "plaintiff" should be placed prior to the full name or first initial & full last name. Likewise, when referring to an expert or consultant within the time description, the term "expert" or "consultant" should be placed prior to the full name or first initial & full last name.

Each time entry must be categorized using one of the categories in Exhibit A. In general, when possible, a more specific category should be used in place of a more general category. Under no circumstances should a submitting firm make up new categories for use in its submission.

While the categories are generally self-explanatory, below are some further explanations of some of the categories that may have the potential for the most confusion.

- **Leadership Case Management Duties (1)** – This category code should only be used for work done by Court-appointed Counsel and their assigned attorneys and staff, in their capacity as Court-appointed Counsel. This category should be used primarily for Court-appointed Counsel's more general or administrative responsibilities that do not fit into other, more specific categories. These include, but are not limited to, reviewing, analyzing, and summarizing filings and orders, and coordinating and designating non-

Court-appointed attorneys to conduct common-benefit tasks such as document reviews, depositions, or work with experts. This category should not be used by any timekeeper who is not a Court-appointed Counsel or one of their assigned attorneys or staff.

- **Administrative (3)** – This category should be used for internal filing and organizational tasks, such as reviewing and downloading documents from the ECF case docket(s), creating charts, reviewing filings generally, updating calendars, copying and distributing documents, etc., whether done by an attorney or staff. Please remember that the review of filings and orders to stay informed about the litigation is every attorney's obligation, and time spent on such tasks is not compensable as Common Benefit Work for most timekeepers.

- **Research (6)** – This category should not be used if a more specific category can be used instead. If research is done while writing a brief, that should be clearly indicated in the time description and coded as category 5 (Pleadings/Briefs/Pre-trial Motions/Legal Memoranda). Since most research will likely be done in service of a legal writing, court appearance, discovery, or other specific task (and thus should be coded with the appropriate category for the specific task), category 6 should be used relatively infrequently.

- **Discovery (9)** – Almost all common benefit discovery-related tasks should be coded with this category. The exceptions are: document review (which should be coded category 8), discovery-related motions or briefs (which should be coded category 5), and discovery-related court appearances (which should be category 4).

- **Document Review and Analysis (8)** – For the purposes of this category, the word "document" specifically means documents or other information produced in discovery. In other words, this category is not to be used for every instance of reading a document—it is more specific than that. Only discovery document review specifically authorized by Co-Lead Counsel and assigned to an attorney will be considered Common Benefit Work.  Time entry descriptions for document review tasks should include specific details such as custodians, search topic(s), number of documents reviewed, or

other similar details sufficient to explain and justify the time spent.

- **Litigation Strategy & Analysis (7)** – This is a general category that should not be used if a more specific category can be used instead. Examples of work coded to this category would include internal firm strategy sessions regarding division/completion of work assigned by Co-Leads or internal correspondence regarding same.

- **Pleadings/Briefs/Pre-trial Motions/Legal Memoranda (5)** – All research and drafting time spent for a specific pleading, brief, motion, or similar legal writing should be coded in this category.

- **Trial (13)** – This category is reserved solely for tasks performed during a bellwether or other trial designated by the Co-Leads as a Common Benefit trial.

- **Miscellaneous (15)** – This is a general category that should not be used if a more specific category can be used instead. Any activities that are done in connection with or as part of a larger task like a brief, or a court appearance, or a meeting, should be categorized according to that larger task. This category should be used relatively infrequently; however, if it is used, it is critical that the description of the task be sufficiently detailed to make clear how the work was common benefit.

No time entry should contain the description of Common Benefit Work for more than one category.  If on the same day the timekeeper performs two tasks that fall into two different categories, then there should be two separate entries for that timekeeper on that date, each with the appropriate category code.

## C.    Hourly Rates

Common-Benefit Counsel shall record their then-present hourly rates for all attorneys and staff. Counsel shall not bill a rate other than their standard rates at the time the work is performed. Use of these rates does not guarantee their payment.

## D.    Document Review Platform

Co-Lead Counsel has or will put out for bid any vendor services and strive to get the best services for the best price without sacrificing quality. A document review platform and analysis system will be used to avoid unnecessary expenses and procedures will be put in place to monitor

how much time is spent analyzing documents and to monitor the efficiency and quality of analysis by other firms.

### E.   Common Benefit Expenses Protocol

#### 1.   Shared Costs

"Shared Costs" are costs that will be paid out of the Litigation Fund ("Fund") administered by Co-Lead Counsel. Each member of the Plaintiffs' Leadership shall contribute to the Fund at times and in amounts sufficient to cover Plaintiffs' expenses for the administration of this MDL. The timing and amount of each assessment will be determined by Co-Lead Counsel and each assessment will be paid within 30 days as instructed by Co-Lead Counsel. Failure to pay assessments will be grounds for removal from the appointments made in previous Court Orders or other common benefit assignments.

Shared Costs are costs incurred for the common benefit of Plaintiffs in this MDL as a whole, including costs for bellwethers once set for trial. All Shared Costs must be approved in writing by Co-Lead Counsel prior to payment.

All costs that meet these requirements and fall under the following categories shall be considered Shared Costs and qualify for submission and payment directly from the Fund:

- Court, filing, and service costs related to common issues;
- Court reporter, videographer, and interpreter costs for depositions;
- Document (both electronic and hard copy) depository creation, operation, staffing, equipment, and administration;
- Document and case analysis software used for the common benefit of a substantial number of cases and approved by Co-Lead Counsel;
- Extraordinary administration costs incurred by Plaintiffs' Leadership (e.g., expenses for equipment, technology, conference rooms, etc.), approved by Co-Lead Counsel;
- Legal, tax, and accountant fees relating to the Fund;

- Expert witness and consultant fees and expenses for experts whose opinions and testimony would be generic and for the common benefit of a substantial number of cases. There shall be no reimbursement for case-specific experts except with the approval of Co-Lead Counsel;

- Extraordinary printing, copying, coding, and scanning costs incurred by Plaintiffs' Leadership related to the above , approved by Co-Lead Counsel;

- Research by outside third-party vendors/consultants/attorneys, approved by Co-Lead Counsel;

- Translation costs related to the above, approved by Co-Lead Counsel;

- Bank or financial institution charges relating to the Fund;

- Investigative services, approved by Co-Lead Counsel; and

- Common Benefit Time and Expense Billing Manager and Auditor invoices.

Co-Lead Counsel shall prepare and be responsible for distributing reimbursement procedures and the forms associated therewith. Shared Costs should not be included on the monthly expense report. Requests for payments from the Fund for Common Benefit expenses shall include sufficient information to permit Co-Lead Counsel and a Certified Public Accountant ("CPA") to account properly for costs and to provide adequate detail to the Court if necessary.

## 2. <u>Held Costs</u>

"Held Costs" are those that will be carried by each attorney in this MDL and reimbursed as and when Co-Lead Counsel determines to do so. Held Costs are those that do not fall into the above Shared Costs categories but are incurred for the common benefit of all Plaintiffs in this MDL, including costs of bellwethers once set for trial. Held Costs shall be recorded in accordance with the guidelines set forth herein and on the form provided as Exhibit B hereto.

Held Costs shall be subject to the following limitations:

### a. <u>Travel Limitations</u>

Only reasonable travel expenses will be reimbursed. Except in unusual circumstances approved by Co-Lead Counsel, all travel reimbursements are subject to the following limitations:

- **<u>Airfare</u>:** For routine domestic flights, ordinarily only the price of a refundable,

changeable and convenient coach fare seat or its equivalent will be reimbursed. For international travel, business class, or if business class is not available, first class, is reimbursable. For domestic flights longer than four hours, business class may be reimbursable at Co-Lead Counsel's discretion and with Co-Lead Counsel's prior approval.

- **Hotel:** Hotel room charges for the average available room rate of a reasonable business hotel will be reimbursed.

- **Meals:** Meal expenses must be reasonable. Unusually large meal expenses may be reviewed by Co-Lead Counsel and disallowed.

- **Cash Expenses:** Miscellaneous cash expenses for which receipts generally are not available (e.g., tips, luggage handling) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

- **Automobile Rental:** Automobile rentals must be reasonable for the date and location of the rental.

- **Mileage:** Mileage claims must be documented by stating origination point, destination, and total actual miles for each trip. The rate will be the maximum rate allowed by the Internal Revenue Service.

### b. Non-Travel Limitations

- **Long Distance, Conference Call, and Cellular Telephone Charges:** Common Benefit long distance, conference call, and cellular telephone charges are to be reported at actual cost.

- **Shipping, Overnight, Courier, and Delivery Charges:** All claimed Common Benefit shipping, overnight, courier, or delivery expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package. Such charges are to be reported at actual cost.

- **Postage Charges:** Common Benefit postage charges are to be reported at actual cost.

- **In-House Photocopy:** The maximum charge for Common Benefit in-house copies is $0.20 per black and white page, and $1.00 per color page.

1

2

3

- **Computerized Research- Lexis, Westlaw, or Bloomberg:** Claims for Lexis, Westlaw, Bloomberg, or other computerized legal research expenses should be in the actual amount charged to the firm and appropriately allocated for these research services.

4

5

6

7

8

9

10

11

No entry should contain more than one category of expense when practical, and no entry should have more than one expense category code assigned to it. If, on the same day, one person incurs two expenses that fall into two different categories, then there should be two separate entries for that person for that date, each with the appropriate expense description and category code. Similarly, when practical, no listed expense entry should include expenses incurred by more than one person. If multiple people incur the same expense for the same category, then generally there should be a separate entry for each person, unless a single person paid the expense for multiple people.

12

13

14

15

16

17

18

19

20

21

Every expense entry should be as detailed and specific as reasonably practical. Descriptions such as "Filing and Service Fees," "Service of Process," "Plane Ticket," "Investigation Fees," "Hearing Transcript," and "Deposition Services" are not sufficient. Every entry must describe the task for which the expense was incurred in enough detail to reasonably identify what the expense was, who incurred it, why it was incurred, and how it related to Common Benefit Work. For example: What was filed? Who was served with what document? What hearing transcript was requested and for what purpose? For whom was the plane ticket purchased, for air travel from where to where, for what purpose, and on what dates of travel? (The same goes for hotels, taxis, car services, tips, meals, and any other travel-related expenses.) Expense entries without sufficient detail may be rejected at Co-Lead Counsel's discretion.

22

23

24

25

26

Attorneys shall provide receipts for all expenses. This does not mean that receipts are to be provided "upon request"—it means each firm must provide receipts monthly along with their expense submissions, in PDF form, not hard copy. Credit card receipts or sufficiently specific entries on monthly statements are an appropriate form of verification. The description of unclaimed expenses may be redacted.

27

28

**F.     Protocols for Submission of Time and Expenses**

**1.     Format**

For Co-Lead Counsel to maintain all time submissions in a fully sortable and searchable format, all the time and expense submissions must be provided by submitting counsel in the following format:

2.     Counsel must use files formatted consistent with the Exhibits to this Order.

3.     In the "Monthly Time Report" and the "Monthly Expense Report," the person who performed each task should be identified in the column called "Last Name, First Name" by their complete last name, a comma, and their complete first name (e.g. Smith, John). Please do not use abbreviations or initials in this column.

4.     In all reports, the date must be provided in month/day/year format (e.g., 12/01/2022).

**2.     Deadlines**

All time and expense submissions must be timely submitted to Co-Lead Counsel and the Auditor by the 20th day of each month, in accordance with the guideline set forth herein, using the following email address: MDL3047Time@amylcollinspc.com. If the 20th day of the month falls on a Saturday, Sunday, or legal holiday, time and expense submissions must be submitted the next day that is not a Saturday, Sunday, or legal holiday. The first submission is due on April 20, 2023, and should include all time and expense from inception through March 31, 2023. Lead Counsel and the Auditor will determine prior to the time of allocation whether pre-MDL formation time or costs submitted warrant inclusion as common benefit work. After this first submission, each monthly submission should include all common benefit time and expenses incurred from the first to the last day of the preceding month (e.g. the submission due May 22, 2023 should contain all common benefit time and expenses incurred from April 1, 2023 through April 30, 2023).

Although counsel should endeavor to submit all common benefit expenses incurred in a certain month in the submission made on the 20th of the next month, the realities of third-party billing and credit card statement schedules may make such quick expense submission difficult in some circumstances. Thus submissions of "supplemental" common benefit expense reports will be

permitted for those expenses incurred during the previous six months that—because of circumstances outside the submitting counsel's control—could not have been submitted by the deadline. Any common benefit expenses submitted more than six months in arrears may not be considered or included in any compilation of common benefit expense calculation and may be disallowed, except for good cause shown and with approval of Co-Lead Counsel.

Supplemental submissions of common benefit time will be permitted only for good cause shown and with the approval of Co-Lead Counsel.

### G.   Auditing Time and Expense Submissions

Plaintiffs' Co-Lead Counsel have retained Amy Collins, PC, to serve as Common Benefit Time and Expense Billing Manager and Auditor for common benefit time and expenses submitted for work performed in this MDL. The Auditor will contemporaneously review all MDL submitted common benefit time and expenses for compliance with this Order and identify those entries which are not compliant or otherwise appear not to be reasonable. Co-Lead Counsel shall determine if time and expenses identified as potentially not compensable or reasonable should be disallowed, and notify (through the Auditor or directly) the firm/person who submitted the time/expense of their determination. Co-Lead Counsel will endeavor to provide such notification on a rolling basis and may allow the firm/person an opportunity to correct the problem if appropriate. However, nothing in this Order shall be construed to mean that time entries that are not identified by the Auditor or Co-Lead Counsel as not compliant, not reasonable, or not compensable in the rolling review process are thereby deemed compliant, reasonable, or compensable. The Auditor also will assist Co-Lead Counsel with quarterly submissions to the Court. The Auditor shall be paid from the Fund as a Shared Expense.

### 1.   Immunity

The Auditor, including any person acting as assistant or consultant to the Auditor in relation to her responsibility under this Order, shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions. Specifically, the Auditor and the Auditor's staff working on this matter are protected by absolute quasi-judicial immunity. Co-Lead Counsel will make readily

available to the Auditor any and all facilities, files, database, and documents that may be necessary to fulfill her functions.

## 2. **Indemnity**

In the event of any future settlements or verdicts resulting in the creation of a Qualified Settlement Fund (QSF), the Auditor shall be indemnified and held harmless by the QSF and the attorney claimants seeking payment from the QSF from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Fund. Should the Auditor be named as a party to, or threatened to be made a party to, or named as a witness in, any threatened, pending, or completed action, suit, or proceeding of any kind, whether civil, administrative, or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Auditor having served in any capacity on behalf of the Fund, the Auditor shall be indemnified and held harmless by the QSF and the attorney claimants seeking payments from the QSF against reasonable expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Auditor in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Auditor was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

## III. **PLAINTIFFS' SOCIAL MEDIA FEE AND EXPENSE ACCOUNTS**

Co-Lead Counsel is directed to establish two bank accounts (the "Accounts") to receive and disperse funds in the event of settlements or verdicts as provided in this Order and any subsequent Orders. The first account shall be designated as the "Social Media Fee Account" and the second should be designated as "Social Media Expense Account" respectively. The Accounts will be held subject to the direction of this Court.

### A. **Administration of the Social Media Fee and Expense Accounts**

Co-Lead Counsel shall identify a Certified Public Accountant to serve as "Administrator" to be appointed by a separate Order who will be directed to oversee the Accounts. The Accounts shall be established at a commercial bank that the Administrator shall select in consultation with

1    the Co-Lead Counsel. The commercial bank shall be the "Escrow Agent." No disbursement shall

2    be made from the Accounts other than by Order of this Court pursuant to a petition requesting an

3    award of fees and reimbursement of expenses (a "Petition"). No Petition shall be filed without leave

4    of Court. No person or entity has any right to make any claim against any of the amounts held in

5    the Accounts except to the extent this Court issues an Order directing the disbursement of any

6    amounts to such a person or entity. The rights of any such person or entity are limited to the amount

7    ordered by the Court to be so disbursed to that particular person or entity.

8            The amounts held in the Accounts shall not constitute the separate property of any person

9    or entity or be subject to garnishment or attachment for the debts of any person or entity. However,

10   any specific amounts ordered by the Court to be disbursed to a person or entity, upon the entry of

11   such an Order, can then be subject to garnishment or attachment, limited to the amount of the

12   disbursement so ordered. These limitations do not preclude a person or entity from transferring,

13   assigning, or creating a security interest in potential disbursements from the Accounts to which

14   such person or entity may be entitled as determined by the Court, if permitted by applicable state

15   laws and if subject to the conditions and contingencies of this Order. However, no notice of lien or

16   security interest in potential disbursements or of a transfer or assignment of a right of potential

17   disbursements shall be effective unless and until it is filed in this Court and served upon the

18   Administrator.

19           In connection with the administrative services, the Administrator shall:

20           a.     Have all such power and authority over the Accounts as necessary or

21   convenient to exercise the authority granted in this Order;

22           b.     Keep and report periodically to the Court, to the extent requested by the

23   Court, an accounting of the funds received, maintained and disbursed relating to the Accounts;

24           c.     Have the authority to instruct the Escrow Agent with respect to permitted

25   investments of the Accounts;

26           d.     Make decisions and take action with respect to treatment of the Accounts for

27   purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes,

28   including creating reports, maintaining and reporting relating to the Accounts and their income, if

any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the Administrator deems appropriate;

      e.    Out of the assets of the Accounts, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

      f.    Have the authority to procure, upon consultation with the Co-Lead Counsel, professional accounting, legal and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

      g.    Have the authority to adopt and implement reasonable procedures consistent with this Order and in consultation with the Co-Lead Counsel.

Unless otherwise agreed to by Defendants and the Co-Lead Counsel, details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed by the Administrator to the Co-Lead Counsel, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. The Administrator shall, however, on a quarterly basis provide statements to the Co-Lead Counsel and the Courts showing only the aggregate of the quarterly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

## B.    Requirements of the Escrow Agent

The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian or trustee with respect to funds it holds.

The Administrator shall consider, in designating the Escrow Agent and in procuring professional services, the charges that the Escrow Agent or provider of professional services will impose for its actions and the ability of the Escrow Agent or provider of professional services to undertake the tasks called for with efficiency and responsiveness.

1       The Escrow Agent shall not acquire or hold for longer than 90 days, any debt securities,

2   certificates or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money

3   Market, U.S. Government Money Market or similar type of account guaranteed by the United States

4   or an agency thereof, including an FDIC-Insured Account. The U.S. Treasury Money Market or

5   U.S. Government Money Market must be registered under the Investment Company Act of 1940,

6   as amended. In determining investments to be held by the Escrow Agent, primary regard shall be

7   given by the Escrow Agent to safety of principal.

8       The reasonable fees and reasonable expenses of the Administrator and Escrow Agent shall

9   be paid by the Co-Lead Counsel. The Administrator and Escrow Agent shall each provide to Co-

10  Lead Counsel their statements for their reasonable fees and reasonable expenses charged on a

11  monthly basis. When this Court authorizes the filing of a Petition, the reasonable fees and expenses

12  of the Administrator and Escrow Agent that were paid by Co-Lead Counsel may be included as

13  items for reimbursement from the Accounts. The Petition shall include copies of the statements of

14  the Administrator and Escrow Agent that had been submitted on a monthly basis to Co-Lead

15  Counsel to support the request for reimbursement of such payments made by Co-Lead Counsel for

16  which reimbursement is requested.

17  **IV.    PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING COUNSEL**

18      An agreement attached hereto as Exhibit C (the "Participation Agreement") is approved by

19  this Court for signature by attorneys for the purposes set forth below. The Participation Agreement

20  can be entered into by plaintiffs' attorneys on a voluntary basis. The Participation Agreement is a

21  private and cooperative agreement between Co-Lead Counsel and plaintiffs' attorneys only. It is

22  not an agreement with any Defendants.

23      There is no need for an attorney who already has a case filed in or transferred to this Court

24  to sign the Participation Agreement, because they are automatically subject to this Order with

25  regard to all cases and any amendments (unless they met the criteria of a remand for wrongful

26  removal as set forth in footnote 1) in which they have a fee interest, regardless of whether any of

27  their other cases are filed in other jurisdictions, or not yet filed.

28      Plaintiffs' attorneys who execute the Participation Agreement are hereinafter referred to as

[PROPOSED] CASE MANAGEMENT ORDER NO. 5:
COMMON BENEFIT ORDER
CASE NO. 4:22-MD-03047-YGR

"Participating Counsel." Plaintiffs' attorneys who do not execute the Participation Agreement and who are not deemed signatories to the Participation Agreement, or are otherwise not bound to common benefit assessments pursuant this Order and any amendments are hereinafter referred to as "Non-Participating Counsel."

Participating Counsel who execute the Participation Agreement shall be entitled access to the Common Benefit Work Product for use in all of the cases or claims of their clients, whether the case or claim has been filed or not, and if filed, for use in any court in which it was filed even if not filed in this MDL, and for use for the benefit of non-filed claims, including any for which a tolling agreement exists. All claims or cases of a counsel who has executed the Participation Agreement shall be assessed whether the claim or case has or has not been filed, and all claims or cases in which a counsel who has executed the Participation Agreement has a fee interest shall be assessed.

Non-Participating Counsel who do not execute the Participation Agreement and who are not deemed to have executed the Participation Agreement shall have no right of access to the Common Benefit Work Product. However, in the event it is determined that such counsel in any fashion benefitted from the Common Benefit Work Product or the administrative functions of the Plaintiffs' Leadership, then all cases and claims of clients of such counsel, whether filed or not, shall be subject to the assessment described in this Order. It is deemed that the fair liquidated damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment percentage(s) set by this Order. The Court will also consider an application by the Co-Lead Counsel for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement or use of the Common Benefit Work Product.

Co-Lead Counsel may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients represented or in which they have a fee interest whether the case is filed or not or on a tolling agreement or not, to facilitate the Co-Lead Counsels' ability to keep track of all cases and claims that are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court, and those who sign the Participation Agreement, must comply with such a request within 30 days of the request.

## V.      ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS

### A.      Assessment Allocation

For Participating Counsel, the assessment shall be a combined 10% for fees and costs, with the appropriate division between fees and costs to be proposed by Co-Lead Counsel and approved by the Court prior to any disbursement from the Accounts. The portion of the 10% allocated to fees shall be paid entirely out of attorney's fees. The MDL assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 266 (2d. Cir. 2006).  The Co-Leads may adjust the 10% up or down as appropriate, subject to Court approval.

### B.      Calculating the Assessment

For any attorney subject to an assessment under the terms of this Order, the assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims. A Gross Monetary Recovery occurs when a plaintiff agrees or has agreed—for monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim (a "Settlement") or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory damages and/or abatement costs and/or punitive damages (a "Judgment"), with respect to any Social Media-related claims. The Gross Monetary Recovery excludes court costs that are to be paid by Defendant(s) and includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim.

### C.      Defendants' Obligations

Defendants and their counsel shall not distribute any Settlement or Judgment proceeds to any counsel or plaintiff until after (1) Defendants' counsel notifies Co-Lead Counsel in writing of the existence of a settlement and the name of the individual plaintiff's attorney (without disclosing the amount of the settlement); and (2) Co-Lead Counsel have advised Defendants' counsel in writing whether or not the individual plaintiff's attorney's cases are subject to an assessment pursuant to this Order.

For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to confidentially pay the assessment directly into the Accounts based on the allocations set forth in Section V.A above as a credit against

the Settlement or Judgment. Counsel for each Defendant must provide quarterly notice to the Administrator, who will share the notice with Co-Lead Counsel, of the names and docket numbers of the cases for which it has paid an assessment into the Funds since the last such report. A report is not due if there are no payments made into the Funds by that Defendant during that quarter. Details of any individual settlement agreement, individual settlement amount and individual amounts deposited into escrow will be confidential and must not be disclosed by the Administrator to anyone, except to the Court upon its request. Quarterly statements from the Administrator, however, will be provided to Co-Lead Counsel, and to the Court if it so requests, showing only the aggregate of the quarterly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

This Order shall in no way be read to affect or otherwise encumber any Defendants' obligation to pay attorneys' fees and costs pursuant to fee shifting statutes, if any, that may apply in this case.

**D.      Other Rights**

Nothing in this Order is intended to impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court.

IT IS SO ORDERED.

Dated: _____

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE