Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a
Facebook, Inc.; Facebook Holdings, LLC; Facebook
Operations, LLC; Facebook Payments, Inc.;
Facebook Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on
signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR-TSH |
| THIS DOCUMENT RELATES TO: | Honorable Yvonne Gonzalez Rogers |
| ALL ACTIONS | **CASE MANAGEMENT STATEMENT** |

Pursuant to Case Management Order #1 (ECF No. 75) ("CMO #1"), the Parties respectfully submit this Case Management Statement in advance of the status conference scheduled for March 3, 2023 at 2:00 p.m. The Parties propose addressing these topics in the order presented below.

### 1.    Plaintiffs' Notice of Priority Claims

**Defendants' position:**

Defendants do not object to Plaintiffs' selection of strict liability and negligence claims for Defendants' initial pleadings challenge. But Defendants respectfully submit that Plaintiffs' proposal to limit Defendants' motion to just three state laws, if adopted, would not serve the goals this Court sought

to achieve through phased motion practice, and would unreasonably constrain Defendants' ability to raise significant and pervasive pleading issues on which all Parties would benefit from the Court's guidance.

The Court's Case Management Order No. 3 directs Plaintiffs to "file their master complaint(s)" and "then identify five or six of their strongest claims for the first phase of motions to dismiss." Dkt 111, at 2. Plaintiffs selected the following five "Priority Claims":

      1. Strict Liability Design [Count 1] – New York

      2. Strict Liability Failure to Warn [Count 2] – New York

      3. Negligent Design [Count 3] – Georgia

      4. Negligent Failure to Warn [Count 4] – Georgia

      5. Negligence Per Se [Count 10] – Oregon

Dkt 131 at 1.

Plaintiffs have offered no explanation (either in the Master Complaint or elsewhere) for why they selected a particular state's law for each of the Priority Claims. The Master Complaint does not identify a single state law (or group of laws) regarding any of the five Priority Claims—notwithstanding the Court's direction that "an operative complaint would indicate what law you're proceeding under." Hr'g Tr. 118:8-9 (Nov. 9, 2022); *see also id.* 111:1-13 ("If it is a product in 25 states and not a product in another 25 states . . . then perhaps certain claims for certain people get to go through and others do not. . . . So perhaps you've got a claim that is based on a majority rule. Perhaps you have a claim that is based on a minority rule."). Nor have Plaintiffs explained on what basis they contend that New York, Georgia, or Oregon law applies to a given Plaintiff's claims. Insofar as Plaintiffs are proceeding on the view that the claims of each individual Plaintiff will be governed by the law of their home state,[1] only 10% of plaintiffs currently in the MDL are from the states Plaintiffs have identified with their Priority Claims—significantly limiting the cross-cutting impact across the MDL of any ruling by the Court on Defendants' motions to dismiss. As explained further below, Plaintiffs' proposal effectively forestalls any streamlining of the cases, and usurps Defendants' right to file the motion they deem most appropriate to narrow the scope of Plaintiffs' allegations and, in turn, future discovery.

---

[1] Defendants reserve all rights and arguments as to choice of law issues.

*First*, because Defendants' first motion to dismiss will focus on cross-cutting legal issues, it is far more efficient for Defendants to move on all potentially applicable state laws relating to Plaintiffs' five identified causes of action, rather than arbitrarily limiting the motion to Plaintiffs' subset of three states' laws.  Plaintiffs' approach is animated by the narrow desire to find "at least one" state law claim to "open up discovery," but fails to achieve what Defendants understood to be the Court's broader goals in phasing motion-to-dismiss briefing—namely, "streamlin[ing]" these proceedings by producing a ruling with broad application to the cases.  *Id.* 105:25 ("The whole point of the MDL process is to streamline"); Hr'g Tr. 19:17-19 (Dec. 14, 2022) ("The whole point of the first phase is to resolve the big issues across the board.").  Consistent with the Court's guidance, one of Defendants' primary arguments in their initial motion to dismiss will be that Plaintiffs cannot assert product liability claims relating to Defendants' services because product liability law applies only to tangible products, which the Defendants' services are not.  *See* Hr'g Tr. 113:23-114:2 (Nov. 9, 2022) ("[T]he question of whether or not a platform's algorithm can, in fact, be a product . . . seems to me to be the gateway one way or the other.").  Plaintiffs' straw man warning about briefing "250" claims incorrectly assumes that there are 250 different requirements for "product" tangibility (or duty, proximate causation, etc.).  To the contrary, foundational tort law principles applicable across states recognize that intangible services do not constitute cognizable "products."  For example, the Third Restatement of Torts expressly defines a "product" to be "*tangible* personal property."  *Restatement (Third) of Torts* § 19 (1998) (emphasis added).  Similarly, the Second Restatement does not identify intangible property as a proper subject of product liability claims.  *See Restatement (Second) of Torts* § 402A (1965) Reporter Notes (listing various types of tangible property as subject to product liability claims without listing any form of intangible property).[2]

---

[2]      Consistent with these general principles, case law across a variety of jurisdictions also recognizes this point.  *See, e.g.*, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) ("Products liability law is geared to the tangible world"); *Johnson v. US Steel Corp.*, 240 Cal. App. 4th 22, 31 (Ct. App. 2015) ("A 'product' is broadly defined to include 'any tangible property distributed commercially for use or consumption."); *Ziencik v. Snap, Inc.*, No. CV 21-7292-DMG (PDx), Dkt. 66 at 6 (C.D. Cal. Feb 3, 2023) (dismissing product liability claim against Snap because "Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability"); *Rodgers v. Christie*, 795 F. App'x 878, 880 (3d Cir. 2020) (holding that an "algorithm" or "formula" is not a "product[]" "as

Given that Defendants' core arguments are based on foundational legal principles that apply across the states, it is far more efficient to allow Defendants to move to dismiss under all potentially applicable states' laws. Defendants can readily—and efficiently—address these core legal principles on a global basis by citing applicable case law. If Plaintiffs believe that the law meaningfully varies by state, such that their claims can proceed under the law of particular states but not others, they can demonstrate that in their opposition.

By contrast, Plaintiffs' attempt to limit Defendants' motion to the law of just three selected states would inefficiently require an extra round of briefing to decide how any ruling from the Court regarding those three states applies across the MDL. As a result, the Court's initial ruling would have an exceptionally limited direct impact—even though this Court has contemplated the possibility that *no* claims could remain following Defendants' first round of motion practice. *See* Hr'g Tr. 117:20-23 (Nov. 9, 2022) (explaining that any second motion to dismiss would focus on narrowing "*any* claims that *may* still be out there" (emphasis added)). To illustrate, only 10% of Plaintiffs presently in the MDL reside in the three states Plaintiffs have selected—a pattern not likely to change as additional claims are filed; and because Plaintiffs propose limiting each of their Priority Claims to only one state's laws, the percentage of Plaintiffs implicated by the Court's ruling for any given claim would be even lower.[3] Plaintiffs' proposed approach would thus result in more than 90% of claims being *entirely unaddressed*, and certainly would not accomplish the goal of winnowing entire "Counts" of Plaintiffs' Master Complaint for the remainder of the litigation. In addition, at least one Defendant is not named in lawsuits filed by Plaintiffs in *any* of these three states, meaning that, under Plaintiffs' state limitation, each Defendant could not fully join in the motion as to all claims.

---

a definitional matter"); *Bowen v. Niagara Mohawk Power Corp.*, 183 A.D.2d 293, 297, 590 N.Y.S.2d 628 (N.Y. App. 1992) (strict products liability does not apply to services); *Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393, 399 (S.D.N.Y. 2018) (characterizing Amazon "as a provider of services," not subject to strict liability).

[3] For example, adjudication of some Plaintiffs' strict liability claims under New York law would provide no guidance regarding the viability of those Plaintiffs' negligence claims under that same state's jurisprudence because Defendants would be constrained to briefing negligence claims under Georgia law.

For all of these reasons, Defendants respectfully submit that Plaintiffs' proposed state-specific limitation—which would not even resolve the five selected claims for any individual Plaintiff—would result in expending considerable time and effort on initial motion practice activity that would not advance this litigation in the same way as would allowing Defendants to move at the outset on these five claims under every applicable state law.

*Second*, Plaintiffs' proposed three-state limitation would prevent Defendants from exercising their right as the movants to file the motion to dismiss that they deem most appropriate.  Having argued that they could plead their complaint as they saw fit, which does not include any effort to tie their claims to the law of any given state, Plaintiffs cannot fairly preclude Defendants from moving to dismiss in the manner they believe would be most responsive to the Master Complaint and most efficient for the Court's resolution of the applicable issues.

*Third*, Defendants disagree with Plaintiffs' assumption that "at least one" state law claim could and should "open up discovery."  Plaintiffs' proposed piecemeal approach is at odds with the Court's recognition that discovery should be stayed until Defendants have had an opportunity to meaningfully narrow the scope of claims at issue in these cases (particularly, Defendants submit, in light of their pending Section 230 defense).  On this point, Defendants note that in the related Judicial Council Coordination Proceeding ("JCCP") currently underway in California state court, Judge Carolyn B. Kuhl has stayed all discovery (with the exception of the limited re-productions ordered here) pending resolution of Defendants' demurrer (which is anticipated to include Section 230 and First Amendment issues). Defendants expect that demurrer to be resolved around the same time this Court resolves their second motion to dismiss in these proceedings.  Defendants respectfully submit that a stay of discovery pending rulings on all threshold motions in both proceedings, including Defendants' second-phase motions to dismiss here, would promote efficient coordination across this litigation.

**Plaintiffs' position:**

In accordance with Case Management Order No. 3 (ECF No. 111 at 2), Plaintiffs have identified what they believe are their five strongest claims: (1) strict liability design under New York law; (2) strict liability failure to warn under New York law; (3) negligent design under Georgia law; (4) negligent failure to warn under Georgia law; and (5) negligence per se under Oregon law. (ECF No. 131 at 1.) Rather than

move to dismiss these five claims, Defendants are effectively seeking to brief 250: each of these five theories of liability under each state's law. Their proposal defies the Court's phased approach to dispositive motion practice.

The Court directed Plaintiffs' counsel to "create a master complaint and identify the strongest claims that you have so they [Defendants] can attack those . . . ." Hr'g Tr. at 117:17-19 (Nov. 9, 2022); *see also* Hr'g Tr. at 106:20-107:4 (Nov. 9. 2022) (same, explaining "it makes no sense to me to have everything briefed in the first order.); Hr'g Tr. at 9:5-13 (Dec. 14, 2022) ("What I indicated to plaintiffs, to be clear, is that I wanted you to identify to defendants what you believed were the five or six strongest claims. So that I'm clear, not just any claims, your strongest claims. . . . The defendants will bring a motion to dismiss on those five or six claims or they will be waived."). In adopting this approach, the Court recognized that Plaintiffs could choose the state laws that corresponded with their claims. As the Court put it, "whatever rule it is, majority, minority, I don't care, *whoever's state it is*, I don't care." Hr'g Tr. at 117:15-16 (Nov. 9, 2022) (emphasis added); *see also id.* at 116:20-117:3 (Plaintiffs proposing that motion practice test claims in "certain states initially," "rather than tackling every state at issue in this litigation").[4] In response, Defendants did not raise any issue with the Court's phased approach—instead they waited to learn of Plaintiffs' priority claims before raising any objection.

The wisdom of the Court's phased approach is evident and should not be revisited. Rather than burden the Court with assessing the viability of one or more of Plaintiffs' causes of action under every state's law, the Court put the onus on Plaintiffs to identify their strongest claims—"[b]ecause once you have something, then I can parallel track. Then I can open discovery while having motion work to figure out how to narrow any claims that may still be out there." Hr'g Tr. at 117:20-23 (Nov. 9, 2022). The sooner the Court decides that at least one state-law claim may proceed, the sooner the parties can begin

---

[4]     Defendants' observation that only 10% of Plaintiffs come from the three states Plaintiffs have cited is a makeweight argument. Given that Plaintiffs are spread across the country, it stands to reason that the selection of five or six claims would yield a percentage in this range. To get to a substantially higher percentage would inherently require a substantially larger number of states, again undermining the efficiency and strategic value of the Court's best-claims approach.

discovery. By the same token, the Court's incremental approach does not require it to consider all of Plaintiffs' claims under 50 state laws until it knows that at least one may be pleaded.

In this regard, Defendants' arguments for moving on "all potentially applicable state laws" are not well taken and seek to undo the Court's considered and sensible decision to limit the initial round of motion practice.

*First*, Defendants' approach is not more efficient, given that the purpose of phasing dispositive motion practice is first to test whether Plaintiffs have sufficiently stated *at least one* claim. The Court's remark that Defendants' motions will address "big issues across the board," Hr'g Tr. at 19:17-19 (Dec. 14, 2022), simply reflects the fact that they will be directed to the master complaint, rather than "individual things that need to happen later on the short-form complaints." *See id*. at 19:10-21. Defendants' position that they can "readily—and efficiently—address these core legal principles on a global basis" simply reflects their view that no claim should survive. As the Court predicted, "they're going to attack everything." Hr'g Tr. at 117:11-12 (Nov. 9, 2022). But the point of the Court's phased briefing approach is that the Court doesn't need to resolve everything now "to move this [MDL] along." Hr'g Tr. 117:10-11 (Nov. 9, 2022).

*Second*, Defendants' complaint that phased briefing will have "limited direct impact" similarly ignores the Court's intent to "parallel track" discovery and further "motion work." Hr'g Tr. at 117:20-23 (Nov. 9, 2022). Once the Court finds that one of Plaintiffs' identified claims survives, the Court can then "open discovery" while the parties confer and propose how to package any additional motion practice on the balance of the claims. In doing so, the parties would, of course, be guided by the Court's rulings on the initial motion—including considering the extent to which the Court's rulings on the claims in the identified states apply to parallel claims in other states with similar law.

*Third*, Defendants protest that they have a "right" to move to dismiss under a 50-state approach. But the Court's phased briefing does not deny Defendants the opportunity to address any applicable state's law. It simply directs the *timing* of such motion practice by prioritizing it based on Plaintiffs' selection of

claims, while preserving Defendants' opportunity to move to dismiss other claims at a later juncture if Plaintiffs' priority claims survive the initial round of dispositive motion practice.[5]

### 2.      Proposed Specifications for Defendants' Motion(s) to Dismiss

**Defendants' position:**

For Defendants' initial motion to dismiss, some core issues could be raised jointly in a single motion.  Other issues, however, may require distinct legal analysis for each Defendant.  Accordingly, Defendants believe the most efficient briefing structure is a joint brief along with individual motions to dismiss to address Defendant-specific issues.  Such briefing structures, including both joint and individual motions to dismiss, are commonly used in MDLs, including by this Court.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *1 (N.D. Cal. Jan. 21, 2014) (considering multiple motions to dismiss, some of which were filed jointly by all defendants and others separately by individual defendants); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625 (C.D. Cal. 2022) (same).

Defendants do not anticipate collectively exceeding 100 pages for the initial motion, the total number of pages permitted to them under the local rules.  *See* N.D. Cal. Local Rule 7-2(b) (permitting 25 pages for each defendant's motion).  Plaintiffs do not oppose Defendants' proposal.

**Plaintiffs' position:**

Plaintiffs have no objection to Defendants' request for a combined total of 100 pages to brief their motions to dismiss—i.e., 25 pages per Defendant, consistent with Local Rule 7-2(b)—allocated however Defendants deem appropriate.

### 3.      Plaintiffs' Proposed Short Form Complaint and Implementation Order

Plaintiffs provided Defendants with a proposed Short Form Complaint and Implementation Order on February 14, 2023.  Defendants provided Plaintiffs with their proposed edits on February 23.  The

---

[5]      That one Defendant, Google (YouTube), is not yet named by any Georgia, New York, or Oregon Plaintiff is not a reason for Google not to "fully join in the motion as to all claims." Afterall, the motion is addressed to the Master Complaint. Google already is a named Defendant in cases filed by Plaintiffs in several states alleging their use of YouTube injured them. Given the widespread use of YouTube by children throughout the U.S., it is highly likely that Google and YouTube will be named by Plaintiffs in Georgia, New York, and Oregon through the Short Form Complaint process.

Parties are meeting and conferring on this matter and will submit an agreed-upon order, or any disputes, by the February 28, 2023 deadline under Case Management Order No. 3 (ECF No. 111 at 2).

### 4.     Parties' Proposed Coordination Order

A related JCCP is currently underway in California state court with overlapping plaintiffs' counsel and analogous claims. *See Social Media Cases*, JCCP No. 5255 (Los Angeles Cty. Sup. Ct.) (Kuhl, J.). For efficiency's sake, the Parties propose that discovery and other matters in these proceedings be coordinated to avoid the duplication of efforts. Consistent with this point, Judge Kuhl stated at the initial CMC in the California JCCP on February 17, 2023 that "all of the documents in discovery produced by Defendants in the MDL should be available to the plaintiffs here," and that the plaintiffs in the California JCCP should be "precluded from duplicating discovery that's done in the MDL." JCCP Hr'g Tr. 33:22-26 (Feb. 17, 2023) (Exhibit A). Judge Kuhl further directed counsel to coordinate efforts with the MDL regarding a protective order, preservation order, and ESI stipulation. *See id.* 10:13-15, 40:25-41:1, 43:13-15.

The Parties are meeting and conferring on this matter and will submit an agreed-upon order, or any disputes, on or before March 17, 2023.

### 5.     Defendants' Proposed Filing Requirements

**<u>Defendants' position:</u>**

Plaintiffs' claims challenge some of the many apps that are used by most American teenagers, and allege injuries that are often intangible, raising serious concerns about the administrability of this MDL. As the Court stated, "the way the complaints are currently structured, [plaintiffs' theory] could implicate every single person. I don't understand how that is doable." Hr'g Tr. 18:1-3 (Nov. 9, 2022); *see also* Hr'g Tr. 22:9-17 (Dec. 14, 2022) ("I have concerns on the plaintiffs' side about . . . assembly line recruitment where lawyers are not doing their job to make sure that their plaintiffs are actually real plaintiffs, to make sure that the plaintiffs have [] already been contacted, to make sure that they have claims."). The Judicial Panel on Multidistrict Litigation expressed similar concerns about the potential scope of these proceedings: "[B]asically you have a potential for not just hundreds of thousands but millions of cases, seeing how everybody is a teenager at some point." J.P.M.L. Hr'g Tr. 7:1-3 (Sept. 29,

2022) (Kennelly, J.) (Exhibit B).[6]  In response, Plaintiffs' counsel have offered assurances concerning the work they were undertaking to screen cases by requiring an actual injury.  *See id.* 42:6-13 ("I'm only aware of pursuing cases where somebody has only claimed . . . [a]ddiction plus a separate injury.  And the anxiety and depression-type claims, we are only taking and filing those cases *if it's diagnosed and there's treatment involved*." (emphasis added)); *see also* Hr'g Tr. 69:11-13 (Nov. 9, 2022) (The Social Media Victims Law Center "represent[s] 1,163 parents whose children have either passed away through social media *or have had a diagnosis and [been] seen by a mental health or a medical practitioner* in regard to that." (emphasis added)).

Given these concerns, Defendants request that the Court issue an order establishing three filing requirements for each Plaintiff and their counsel who wish to file a case in this MDL.  Such an order will ensure that the diligent case screening Plaintiffs' counsel have represented they are already independently undertaking is conducted before adding cases to this litigation, including by future Plaintiffs' counsel who may not yet be involved in the litigation and so have not offered any such assurances to the Court, and including when the bar to filing new complaints is lowered by the Direct Filing and Short Form Complaint processes.

*First*, as the Court has already suggested, each complaint in this MDL should be signed by at least one lawyer licensed to practice in the State of California who will be subject to discipline for failure to meet pre-filing due diligence obligations.  *See* ECF No. 111 at 2 ("The Court is inclined to require certification of every complaint by a lawyer that is admitted to practice in California or a comparable procedure such that improper conduct can be addressed accordingly.").  Given the number of California-barred counsel involved in this case, including in the large Plaintiff leadership structure, such a requirement would not impose an unreasonable burden, and would help ensure that appropriate diligence is done prior to filing suit.  *See Middlebrooks v. SACOR Fin., Inc.*, 2017 WL 8186817, at *1 (N.D. Ga. Dec. 26, 2017) ("Having local counsel sign every pleading and motion ensures that a member of the bar of this Court is 'on the hook' and accountable for all of the professional and ethical representations

---

[6]    Although Plaintiffs claim that there has only been a "very modest increase" in cases since the last hearing, that ignores the fact that cases in MDLs typically increase dramatically following the Court's adoption of a short-form complaint and implementation order, which has yet to happen here.

supplied by Rule 11 of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2018 WL 1234572 (N.D. Ga. Feb. 6, 2018).  Consistent with this position, in connection with conferring with Plaintiffs regarding the proposed Short Form Complaint, Defendants have proposed that each Short Form Complaint be signed by a California-barred counsel.  These requirements are well within the Court's authority to determine admission standards for attorneys appearing before it, and are particularly appropriate where, as here, the Court has already articulated well-founded concerns motivating it to require a California-barred attorney to sign every complaint.  Plaintiffs have cited no authority for their assertion that these requirements exceed the Court's authority.

*Second*, before filing a claim on behalf of a client, Plaintiffs' counsel should obtain available medical records (including psychotherapy notes and other records of mental health care and treatment) to the extent necessary to ensure that the claim and supporting factual allegations (particularly regarding alleged emotional or psychological injuries) are properly grounded, consistent with the certification requirements of Fed R. Civ. P. 11(b) and counsel's professional responsibility obligations.  In addition to being consistent with counsel's obligations, requiring this basic diligence would give guidance to the California lawyers required to join in each complaint.  Having this information available will be critical in instances where California counsel are asked to sign onto complaints developed by out-of-state counsel.

*Third*, in the event Defendants' motions to dismiss are denied in whole or in part and discovery proceeds, each Plaintiff should be required within a reasonable period after discovery opens to produce those medical records that were collected for review before the filing of Plaintiffs' complaints, along with any other documents that a Plaintiff may use to support their injury allegations, a list of the Plaintiff's healthcare providers who provided relevant consultations and treatment, and a HIPAA release authorization.  If Plaintiffs' claims were filed individually outside an MDL proceeding, Fed. R. Civ. P. 26(a) would require them, before the commencement of discovery, to make initial disclosures of the identity of relevant witnesses and documents in their possession, custody, or control that may be used to support their claims.  Thus, this production requirement is consistent with the Federal Rules of Civil Procedure, which should not be ignored in any case simply because it is part of an MDL proceeding.

An Order implementing those independent obligations is particularly appropriate where, as here, Plaintiffs point out a variety of reasons why medical records may become increasingly unavailable with the passage of time—highlighting the need for Plaintiffs to promptly preserve all currently available evidence (just as Defendants are extensively coordinating with Plaintiffs to preserve materials within Defendants' possession).  Moreover, given that Plaintiffs anticipate "production of certain available records that support Plaintiffs' claims and Defendants' defenses" with their Plaintiff Fact Sheets, which they anticipate serving "early in the discovery process," it is unclear how they would be burdened by a requirement that, once discovery opens, they promptly produce medical records that they *already* collected before filing their complaints along with other documents that they presently anticipate using to support their injury allegations.[7]  Nor would such productions be one-sided, as Plaintiffs intimate, given that Defendants have already produced tens of thousands of documents to Plaintiffs.

Defendants have attached a proposed Order as Exhibit C reflecting these three requirements.[8]  As to the latter requirement, the proposed Order simply (a) states the Court's intention to adopt such a protocol

---

[7]     Plaintiffs point to a recent statement from Judge Kuhl regarding requirements like these, without acknowledging that Judge Kuhl also directed the parties in the JCCP to immediately begin negotiating Plaintiff Fact Sheets that include the production of medical records.  *See* JCCP Hr'g Tr. 37:23-38:5 (Exhibit A) ("I think it makes sense to start that [Plaintiff Fact Sheet] process," including negotiations over "the scope of the medical records" to be contemporaneously produced); *see also id.* 41:3–8 ("I agree that it makes very good sense for each plaintiff to produce a — what you're calling a profile form as early as possible because that puts the Defendants on notice as to whose records are relevant . . . .").

[8]     Plaintiffs have characterized Defendants' proposed order as a *Lone Pine* order, but it is nothing of the sort.  It does not require Plaintiffs to secure expert testimony in support of their claim, as *Lone Pine* orders usually do.  *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1167 (11th Cir. 2014) ("They usually require plaintiffs in mass tort cases to provide some factual support, including expert testimony, for their claims or run the risk of having those claims dismissed.").  Defendants are simply asking that "plaintiffs come forward with some evidence supporting certain basic elements of their claims." *Id.* at 1168 (distinguishing requests for such information from *Lone Pine* orders, and describing such requests favorably).  Nothing in the  order suggests that claims of Plaintiffs who do not have medical records available will automatically dismissed.

        Plaintiffs also complain that Defendants did not share their two-page proposed Order with Plaintiffs until February 23, but Defendants outlined all components of that order and the reasons for each component in a draft of this statement that they shared with Plaintiffs on February 21—the Parties'

---

requirement in the event Defendants' initial motions to dismiss fail so that Plaintiffs' counsel can gather the specified information during their initial contacts with potential clients, and (b) directs the parties to meet and confer on a proposed order detailing the protocol.

**Plaintiffs' position:**

The Court should reject Defendants' demand that Plaintiffs be required to satisfy filing requirements beyond those imposed by Rule 11 and counsel's ethical obligations, under threat of undefined "consequences." *See* Exhibit C. Setting aside that Defendants' request is inappropriate to brief in a Case Management Statement, Defendants have not articulated any reason to impose such extraordinary requirements in this case. Because Defendants did not send their attached proposed order to Plaintiffs until *the evening before* this Case Management Statement was due[9], Plaintiffs have not had sufficient time to review it in detail. Nevertheless, Plaintiffs will endeavor to address each of Defendants' proposed filing requirements in turn.

*First*, Defendants' proposed requirement that each complaint in this MDL be signed by at least one lawyer licensed to practice in the State of California is unnecessary and unprecedented in MDLs. Plaintiffs are mindful that during the December 2022 case management conference the Court contemplated the possibility of such a requirement after "this initial stage" of motions to dismiss, based on concerns in other cases regarding a "kind of assembly line recruitment where lawyers are not doing their job to make sure that their plaintiffs are actually real plaintiffs." Hr'g Tr. at 22:9-23:2 (Dec. 14, 2022). Plaintiffs note that there is no hint of such conduct here, where there are approximately 140 individual cases, with only a very modest increase since the last hearing, despite defense counsel raising the specter of a "flood" after entry of a direct filing order. *Id.* at 60:2-15.

The Court expressed at the hearing a desire to ensure it had authority over such potential ethical violations. *See id.* at 22:9-23:2. The Court indeed already has the authority to sanction any out-of-state

---

agreed-to deadline for the initial exchange of written positions on disputed issues in advance of the March 3 conference.

[9] This is despite Defendants having raised their purported concerns regarding "docket control" with the Court at the December hearing, and having stated at that time that they "want to start talking about it sooner rather than later. Hr'g Tr. at 59:23-60:18 (Dec. 14, 2022)

lawyer in this litigation because the Court previously admitted *pro hac vice* any attorney who is also admitted to practice and in good stand in any United States District Court. *See* Order Setting Initial Conference, at 5 (ECF No. 3). As part of *pro hac vice* admission, all counsel are required to "abide by the Standards of Professional Conduct set forth in Civil L.R. 11-4 . . . ." L.R. 11-3(a)(2). Those duties and responsibilities include, among other things, to "be familiar and comply with the standards of professional conduct required of members of the State Bar of California; . . . [p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice;" and "[d]ischarge all obligations to client(s) and the Court." L.R. 11-4. The Court also has the "inherent power 'to control admission to its bar and to discipline attorneys who appear before it.'" *Robles v. In the Name of Human., We REFUSE to Accept a Fascist Am.*, No. 17-CV-04864-CW, 2018 WL 2329728, at *4 (N.D. Cal. May 23, 2018), *aff'd sub nom. Robles v. City of Berkeley*, 820 F. App'x 529 (9th Cir. 2020) (quoting *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005)); *see also Methven & Assocs. Pro. Corp. v. Paradies-Stroud*, No. C 13-01079 JSW, 2013 WL 12187701, at *1 (N.D. Cal. Dec. 19, 2013) (sanctioning attorney who appeared *pro hac vice* and revoking his *pro hac vice* status).

Moreover, over 90% of the cases filed to date include one of the firms appointed by the Court to a leadership position, with the heightened accountability to the Court this entails. Defendants' counsel previously acknowledged they had "no reason to think that there's ever been any occasion where there's been a need for a motion for sanctions or even anything approaching that" against Plaintiffs' leadership. Hr'g Tr. at 101:6-105:2 (Nov. 9, 2022).[10]

---

[10] In contrast, certain Defendants (including certain of the law firms representing them here) have been subjected to sanctions within the last month in other cases for failing to comply with their discovery obligations. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC, 2023 WL 1871107, at *29 (N.D. Cal. Feb. 9, 2023) (Chhabria, J.) (sanctioning Facebook and Gibson Dunn "[f]or the systematic, conscious, bad-faith approach they took to th[e] litigation," including making "things increasingly difficult and expensive and frustrating for the opposition"); *In re Google Play Store Antitrust Litigation*, 3:21-md-02981-JD, Sanctions Evidentiary Hr'g Tr. 292:20-294:4 (N.D. Cal. Jan. 31, 2023) (Donato, J.) (finding Google's handling of discovery, specifically failure to preserve chats, was "reckless") (Exhibit E). Similarly, in a third matter (*U.S. v. Google LLC*) the DOJ recently filed a motion detailing how Google employees routinely use a "history off" chat feature for sensitive internal discussions and that, **until February 8, 2023**, Google's legal hold policies did not disable auto-delete for such chats. *U.S. v. Google LLC*, No. 1:20-03010-APM (D.D.C.), ECF 512-1 at 1 & 15 (Exhibit F).

CASE MANAGEMENT STATEMENT
CASE NO. 4:22-MD-03047-YGR

As is typical practice in this District for MDLs,[11] the Court waived the local co-counsel requirement in its Order Setting Initial Conference (ECF No. 3 at 5). Although Plaintiffs believe the Court's prior orders, including those incorporating counsel's *pro hac vice* obligations, are sufficient to ensure that the Court has authority over all counsel with cases in the MDL with regard to their Rule 11 and other ethical duties, Plaintiffs would have no objection to requiring counsel who appear on a Short Form Complaint to certify that they submit to the jurisdiction of this Court for such purposes. *See* CMO No. 3 at 2 (ECF No. 111) (noting that the Court would be inclined to consider certification of every complaint by a California lawyer "*or* a comparable procedure" (emphasis added) to allow improper conduct to be addressed).

In sum, given that there is zero indication that the concerns raised about certain other MDLs are manifest here, Plaintiffs submit that the unprecedented measure of requiring every MDL Plaintiff from across the country to retain California counsel in addition to their own choice of counsel is not warranted.

*Second*, after requesting and obtaining a stay of discovery on the basis of it being potentially wasteful in the face of dispositive motion practice, Defendants now seek to impose requirements that Plaintiffs' counsel collect all relevant medical records prior to filing a complaint—thereby imposing a higher burden on Plaintiffs than what the Rules require at the pleading stage (*see* Fed. R. Civ. P. 8; Fed. R. Civ. P. 11)—and then produce them shortly after rulings on the motions to dismiss, without any reciprocal obligation by Defendants.[12] These second and third proposed "filing requirements" are akin to what is known as a *Lone Pine* order after the case *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986). Such orders are a remedy of last resort that "should be issued only in exceptional cases after the *defendant has made a clear showing of significant evidence* calling into question the plaintiffs' ability to produce evidence to establish the critical elements of causation and damages." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*,

---

[11] *See* District's website noting in the context of *pro hac vice* applications that "[t]he local counsel requirement is waived for MDLs." https://www.cand.uscourts.gov/multidistrict_litigation/.

[12] Within the same breath Defendants argue that the Federal Rules of Civil Procedure should still be followed, but that Plaintiffs (and only Plaintiffs) should be held to a higher standard than that which is required by the Rules because this is an MDL. Defendants cannot have it both ways.

No. 2:18-MD-2846, 2022 WL 2440295, at *2 (S.D. Ohio July 5, 2022) (cleaned up) (emphasis added); *see also* Engstrom Freeman, Nora, *The Lessons of* Lone Pine, 129, Yale L.J. 2, at *55 (Exhibit D) (suggesting that *Lone Pine* "should be an instrument used only when formally sanctioned mechanisms are not practically available or have been tried but fail"). "The vast majority of cases granting *Lone Pine* motions did so only when there was a refusal to comply with discovery requests or when plaintiffs failed to allege a *prima facie* case." *In re Davol, Inc.*, 2022 WL 2440295, at *2 (internal citation omitted); *see also Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1167-68 (11th Cir. 2014) (noting "there is a time and place for everything . . . and even when appropriate, *Lone Pine* orders may not be suitable at every stage of the litigation.").

Defendants have not demonstrated the need for anything close to a *Lone Pine* order in this case, particularly at this early stage. Indeed, Judge Kuhl has already rejected Defendants' attempt to seek a similar order in the JCCP, noting that the complaints filed are "way more specific" than the typical complaint she sees and that she was "not seeing a need here for anything extraordinary" beyond a "Plaintiff Fact Sheet process," which Plaintiffs are amenable to once the discovery stay is lifted, as set forth below. JCCP Tr. at 32:11-15, 33:8-17 (Feb. 17, 2023) (Exhibit A). Defendants' proposal would only result in unnecessary motion practice as Defendants attempt to police Plaintiffs' counsel regarding what "pre-filing due diligence obligations" entail. [13]

---

[13] The Court made no reference to collecting and producing medical records during the discovery stay. *See* Hr'g Tr. at 22:14-17 (Dec. 14, 2022). Nor does Rule 11 support a uniform requirement for gathering medical records before filing a complaint, especially where, like here, each case presents a unique set of circumstances. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990) (whether counsel undertook a reasonable inquiry under Rule 11 is "intensely fact-bound"). For instance, it is possible that some Plaintiffs addicted to Defendants' social media products have not sought treatment for their addiction and related injuries, such as self-harm, and decedents may have committed suicide before receiving medical care. To require the collection of all medical records before filing would be unfairly prejudicial to such claims and impermissibly expand the scope of Rule 11. *See Harara v. ConocoPhillips Co.*, No. C04-0515 BZ, 2005 WL 240773, at *1 (N.D. Cal. Jan. 27, 2005) ("Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits."). There may also be obstacles that prevent collection of medical records prior to filing in some cases (e.g., records may have been purged; a healthcare provider may not be able to locate a patient chart; a healthcare provider may refuse to

It is more efficient and appropriate for Defendants to obtain these records from Plaintiffs (or their providers) as part of normal discovery. As previously discussed with the Court, Plaintiffs anticipate use of fact sheets early in the discovery process, which will provide additional information regarding the nature of each Plaintiff's claims and damages, and the available defenses thereto, including identification of Plaintiffs' health care providers and production of certain records that support Plaintiffs' claims and Defendants' defenses. *See* Hr'g Tr. at 108-8-23 (Nov. 9, 2022) (discussing use of fact sheets, which often occurs early in discovery, and triggers a reciprocal exchange of basic information from the Defendants). As Professor Engstrom astutely noted, a plaintiff fact sheet process "offers many, if not all, of the legitimate benefits *Lone Pine* orders supply with few of the attendant disadvantages." Engstrom, *supra* at *57. Instead of working with Plaintiffs on agreeable fact sheets and timing for a reciprocal exchange of information, Defendants seek to wield a *Lone Pine* order ("approvingly described as a 'weapon'" *id.* at *65) against Plaintiffs to "impose burdens on—and only on—plaintiffs." *Id.* It is telling that although Defendants attempt to analogize such an order to Rule 26(a) initial disclosure obligations, Defendants themselves are notably unwilling to provide initial disclosures and have advocated for a complete stay of discovery until their motions to dismiss are resolved. *See, e.g.*, CMS at 6 (Oct. 31, 2022) (ECF No. 45).

### 6.    Discovery-Related Orders

The Parties have exchanged and continue to confer regarding orders governing (1) preservation of potentially relevant information (the "Preservation Order"), (2) protection of confidential personal and business information (the "Protective Order"), (3) protection of materials protected from discovery (the "502(d) Order"), and (4) discovery of electronically stored information and hard copy documents (the "ESI Order").[14]

---

produce records absent a case filing and subpoena or court order; medical records may be missing, incomplete, or even contain conflicting information), particularly in cases involving mental health records for a minor or wrongful death.

[14] Plaintiffs have requested separately negotiating orders concerning (a) the production of user account information, including a protocol for obtaining the consent generally required before Defendants can produce such information under the Stored Communications Act; and (b) child sex abuse material ("CSAM").  The Parties intend to turn to those orders after completing the initial orders noted above.

With respect to the proposed Protective Order, the Parties have held a number of meet-and-confers and exchanged drafts several times. The Parties conducted their latest meet and confer on February 23, 2023. Defendants will provide their additional comments to Plaintiffs by March 10, 2023, and the Parties will submit any remaining disputes to Magistrate Judge Hixson by March 17, 2023 pursuant to his discovery standing order. The Parties will address source code by a separate, deferred proposed order.

With respect to the proposed Preservation Order, the Parties met and conferred on January 21, 2023, and have exchanged drafts. Defendants anticipate providing comments to Plaintiffs on their latest draft prior to the status conference. The Parties anticipate submitting an agreed-upon order, or any disputes, to Magistrate Judge Hixson on or before March 24, 2023.

With respect to the ESI Order, the Parties met and conferred on February 1, 2023, and have exchanged several drafts. Plaintiffs are integrating the Parties' comments and anticipate circulating a further draft prior to the status conference. With respect to the 502(d) Order, the parties have exchanged drafts and Defendants are currently preparing responses to comments received from Plaintiffs. The Parties will continue to meet and confer and anticipate submitting any remaining disputes on the ESI Order and 502(d) Order to Magistrate Judge Hixson on or before April 14, 2023.

Given the parallel coordinated proceedings in the California JCCP, and consistent with guidance from Judge Kuhl at the initial JCCP status conference, the Parties have involved the JCCP plaintiffs in discussions to ensure consistency in approach between the state and federal proceedings.

**7.      Mediator Selection**

The Parties initially exchanged a handful of proposed mediators on each side, but have not reached agreement on a mediator and disagree as to the process by which a mediator should be selected. The Parties' respective positions on this issue are set forth below.

**Plaintiffs' Position:**

Plaintiffs propose that each side should pick two names from the lists they previously shared with the other side and submit those names, with CVs, to chambers, allowing the Court to choose a mediator.

**Defendants' Position:**

Defendants propose that each side select one mediator from the other side's list of proposed mediators.  The Parties would then submit the two names to the Court under seal, and without identifying which name came from which side's original list.  The Court would then select one of the candidates to serve as the mediator in these proceedings.

### 8.    Proposed Common Benefit Order and Sealing Order

Following additional meet and confer, the Parties have filed an agreed-upon proposed Common Benefit Order and an agreed-upon Sealing Order for the Court's consideration (ECF Nos. 141 (Common Benefit Order), 142 (Sealing Order)).

### 9.    Other Updates

The Parties wish to advise the Court that as of February 18, 2023, four school districts have brought actions asserting public nuisance claims against Defendants.  These cases allege that student use of Defendants' apps caused school districts to expend more resources on student mental health services and on addressing behavioral and academic disruptions caused by social media use.  The four currently pending public nuisance cases are: *Seattle School District No. 1 v. Meta Platforms, Inc. et al.*, 2:23-cv-00032 (W.D. Wash.) (filed Jan. 6, 2023); *Kent School District No. 45 v. Meta Platforms, Inc. et al.*, 2:23-cv-00045 (W.D. Wash.) (filed Jan. 9, 2023); *Mesa Public Schools v. Meta Platforms, Inc. et al.*, 2:23-cv-00172 (D. Ariz.) (filed Jan. 26, 2023); *School District of the Chathams v. Meta Platforms et al.*, 2:23-cv-00910 (D.N.J.) (filed Feb. 16, 2023).

On February 3, 2023, Meta noticed three of those cases—*Seattle School District No. 1*, *Kent School District No. 45*, and *Mesa Public Schools*, all filed by Keller Rohrback LLP—as potential tag-along actions to this MDL.  *See* MDL No. 3047, ECF. No. 151 (J.P.M.L.).  On February 15, 2023, the J.P.M.L. issued a conditional transfer order proposing to send those cases to this Court.  *See* MDL No. 3047, ECF No. 153 (J.P.M.L.).  That conditional transfer order became effective on February 23, 2023.  *See id.* at ECF No. 155.  Defendants plan soon to notice *School District of the Chathams* as an additional potential tag-along action.

Dated:  February 24, 2023

Respectfully submitted,

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: + 1 (973) 639-9100
Facsimile: + 1 (973) 679-8656
Email:  cseeger@seegerweiss.com
Email:  cayers@seegerweiss.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: + 1 (415) 956-1000
Email:  lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: + 1 (202) 386-9610
Email:  pwarren@motleyrice.com

Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone:  + 1 (415) 986-1400
Email:  jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 COMMERCE STREET
MONTGOMERY, AL 36103
Telephone:  + 1 (334) 269-2343
Email:  joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. GARDEN STREET, 9TH FLOOR
PENSACOLA, FL 32502
Telephone: + 1 (850) 316-9100
Email: ejeffcott@forthepeople.com

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: + 1 (504) 227–8100
Email: raustin@ronaustinlaw.com

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: + 1 (206) 741-4862
Email: matt@socialmediavictims.org
Email: glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: + 1 (212) 558-5500
Facsimile: + 1 (212) 344-5461
Email: jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: + 1 (210) 448-0500
Email: PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: + 1 (816) 701 1100
Email: tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**

112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: + 1 (917) 882-5522
Email: jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: + 1 (646) 666-8908
Email: carrie@cagoldberglaw.com

KIRK GOZA
**GOZA & HONNOLD, LLC**
9500 Nall Avenue, Suite 400
Overland Park, KS 66207
Telephone: + 1 (913) 451-3433
Email: kgoza@gohonlaw.com

SIN-TINY MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ,
PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: + 1 (510) 698-9566
Email: mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: + 1 (510) 350-9717
Email: amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: + 1 (850) 435-7107
Email: epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: + 1 (818) 839-2333
Facsimile: + 1 (818) 986-9698

Email:  rtellis@baronbudd.com
Email:  dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone:  + 1 (202) 780-3014
Email:  awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone:  + 1 (215) 592-1500
Email:  mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone:  + 1 (205) 855-5700
Email:  fu@dicellolevitt.com

ROBERT H. KLONOFF
**ROBERT KLONOFF, LLC**
2425 SW 76TH AVENUE
PORTLAND, OR 97225
Telephone:  + 1 (503) 702-0218
Email:  klonoff@usa.net

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone:  + 1 (212) 213-8311
Email:  hnappi@hrsclaw.com

ANTHONY K. BRUSTER
**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
Telephone:  + 1 (817) 601-9564
Email:  akbruster@brusterpllc.com

FRANCOIS M. BLAUDEAU, MD JD FACHE FCLM
**SOUTHERN INSTITUTE FOR MEDICAL AND
LEGAL AFFAIRS**
2762 B M Montgomery Street, Suite 101
Homewood, Alabama 35209
Telephone:  + 1 (205) 564-2741
Email:  francois@southernmedlaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: + 1 (212) 372-3030
Email:  jamesmarsh@marshlaw.com

*Attorneys for Plaintiffs*


**COVINGTON & BURLING LLP**

 */s/ Phyllis A. Jones*
Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a
Facebook, Inc.; Facebook Holdings, LLC; Facebook
Operations, LLC; Facebook Payments, Inc.;
Facebook Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email: gdrake@kslaw.com

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva  (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,

Suite 500 E
Washington, D.C.  20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

 */s/ Brian M. Willen*
Brian M. Willen
Wilson Sonsini Goodrich & Rosati
bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White
Wilson Sonsini Goodrich & Rosati
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou
Wilson Sonsini Goodrich & Rosati
cchiou@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

## ATTESTATION

I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:        February 24, 2023           By:    */s/ Phyllis A. Jones*
                                                  Phyllis A. Jones