Exhibit B

# UNITED STATES JUDICIAL PANEL ON
# MULTIDISTRICT LITIGATION

## HEARING IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL
## INJURY PRODUCTS LIABILITY LITIGATION
## MDL NO. 3047

### TRANSCRIPT OF ORAL ARGUMENT
### HEARD ON SEPTEMBER 29, 2022
### ST. LOUIS, MISSOURI

Chairman:               Honorable Karen K. Caldwell
                        United States District Court
                        Eastern District of Kentucky

Members:                Honorable Dale A. Kimball
                        United States District Court
                        District of Utah

                        Honorable Matthew F. Kennelly
                        United States District Court
                        Northern District of Illinois

                        Honorable Madeline Cox Arleo
                        United States District Court
                        District of New Jersey

Reported By:            REAGAN A. FIORINO, RMR, CRR, CSR, CCR
                        Official Court Reporter
                        United States District Court
                        111 South 10th Street
                        St. Louis, MO 63102 | (314)244-7989

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1                                INDEX

2    ORAL ARGUMENT

3    Joseph VanZandt, Esq. . . . . . . . . . . . . . . . . 3

4    Michael M. Weinkowitz, Esq. . . . . . . . . . . . .11

5    Emily Jeffcott, Esq. . . . . . . . . . . . . . . .14

6    Lexi J. Hazam, Esq. . . . . . . . . . . . . . . .15

7    Christopher A. Seeger, Esq. . . . . . . . . . . . .20

8    Jeffrey P. Goodman, Esq. . . . . . . . . . . . . .23

9    Phyllis A. Jones, Esq. . . . . . . . . . . . . . .26

10   Geoffrey M. Drake, Esq. . . . . . . . . . . . . . .32

11   Jonathan H. Blavin, Esq. . . . . . . . . . . . . .36

12   Brian M. Willen, Esq. . . . . . . . . . . . . . . .39

13   REBUTTAL

14   Joseph VanZandt, Esq. . . . . . . . . . . . . . . .42

15

16                            *    *    *

17

18

19

20

21

22

23

24

25

1              SEPTEMBER 29, 2022

2         (The proceedings commenced at 10:45 a.m.)

3         **JUDGE CALDWELL:**  The panel will now turn to MDL

4    No. 3047, Social Media Adolescent Addiction Products Liability

5    Litigation.

6         We will first hear from Mr. VanZandt.

7         **MR. VANZANDT:**  May it please the Court.  My name is

8    Joseph VanZandt.  I represent the movant/plaintiff Brianna

9    Murden and plaintiffs in 33 additional actions.  We are

10   seeking consolidation in the Northern District of Illinois or,

11   alternatively, the Western District of Missouri.

12         To date there are currently 83 similar cases pending

13   in 35 federal district courts and 13 -- filed by 13 different

14   law firms from around the country.  This litigation involves

15   an issue that is of the utmost importance for the mental and

16   physical health of our nation.

17         We are seeking consolidation of adolescent product

18   liability claims related to Meta's Facebook and Instagram

19   products.  Attempts to informally coordinate with Meta's

20   counsel has been unsuccessful, and consolidation is

21   appropriate under Section 1407.

22         There are primarily two disputed issues among the

23   parties, whether Defendants TikTok, Snap and YouTube should be

24   included in this MDL and to what extent and what is the best

25   district court best suited to handle this case.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1          Now, as to the first question, Meta should be the
2    anchor defendant in this MDL.  And cases against defendants
3    like TikTok and Snap should be included when Meta is a
4    co-defendant.  The title of this proposed multidistrict
5    litigation identifies the principles for cases that we believe
6    should be included in this MDL.
7          It should be related to adolescent product liability
8    claims involving addiction to social media.  And that's the
9    core of these cases.  It involves addictive features of these
10   social media products that cause mental disorders, like
11   anxiety and depression, that manifests in a variety of
12   different ways such as eating disorders, self-harm and
13   suicide.
14         Currently, 27 percent of the cases on file include
15   claims against Meta and one of these other defendants.  And in
16   each of those cases, the plaintiffs allege simultaneous use
17   and injury of the products resulting in very similar injuries
18   caused by nearly identical mechanism of injury.
19         It would be incredibly inefficient to split the
20   claims up by defendant and send claims for Snap to one court,
21   TikTok to another court, when it is the same plaintiff using
22   the same -- nearly the same products and being injured in a
23   very similar way.
24         Now, as to which transferee court would be best
25   suited, we have recommended the Northern District of Illinois.

1   Just the nature of this litigation in and of itself will

2   require a court that has the infrastructure, the experience

3   and the resources to handle a large-scale complex litigation.

4           And the Northern District of Illinois is the most

5   convenient location that's been presented.  And that's

6   especially important in this case involving minors.  I'm

7   currently working on the Juul multidistrict litigation

8   representing young people.  And it is especially a challenge

9   for young families, teenagers that are in school, to travel

10  cross-country to a court for independent medical examinations,

11  for trials; and so we are seeking a venue that is central to

12  everyone, not just the defendants but to all the parties in

13  the case.

14          Now, in terms of another aspect for the Northern

15  District of Illinois is the deep benches of judges that have

16  experience with complex litigation.  That includes Senior

17  Judge Kennelly, Judge Kendall and Judge Sara Ellis.  And we

18  have specifically recommended Judge Sara Ellis due to her

19  experience in complex litigation.  And at least, from our

20  perspective, her caseload would allow her to take this case.

21          Thank you.

22          **JUDGE CALDWELL:**  Questions for Mr. VanZandt?

23          **JUDGE KENNELLY:**  So most of my questions have to do

24  with how big is this MDL likely to get?  Because that does

25  influence the assignment issue, assuming we centralize it.

1    So right now -- I mean, I ran through a summary of

2    the cases. Or at least the ones that have been filed I think

3    at the time the briefing was completed, not long after that.

4    And they all are for -- not all of them but a good many of

5    them involve something -- and I don't want to say this to

6    minimize anybody else's injury but more concrete suicide

7    attempts, something like that.

8    I would think that it's reasonable to expect that

9    this is going to get much broader than that and you might have

10   more -- as it goes on, it's likely to include claims of injury

11   that are more -- and, again, I don't say this with any

12   disrespect to anybody -- more diffuse. Anxiety, depression,

13   things like that. Is that a fair assumption on my part?

14   **MR. VANZANDT:** I do think that the types of cases

15   will be pretty limited to what you see now. There likely will

16   be some severe anxiety and depression cases. But really the

17   underlying injury through that is addiction. And there are

18   going to be different injuries that manifest in different

19   ways, but the underlying basis is addiction.

20   **JUDGE KENNELLY:** And just tell me -- what I'm kind

21   of getting at is, you know, the elephant in the room on a lot

22   of these things, as somebody said earlier, "if you build it

23   they will come" issue. And so if an MDL is created, is there

24   some reasonable likelihood that that plus advertising plus

25   whatever is going to make this mushroom into something that is

1  basically you have a potential for not just hundreds of

2  thousands but millions of cases, seeing how everybody is a

3  teenager at some point.

4        **MR. VANZANDT:**  I don't anticipate that happening.  I

5  have a similar experience with the Juul multidistrict

6  litigation where at the beginning we anticipated hundreds of

7  thousands of cases being filed.  But due to the sensitive --

8        **JUDGE KENNELLY:**  That's about people who smoke or

9  whatever.  You vape, I guess.  That's about people who vape.

10  Not everybody vapes.  Everybody is on social media.  That's

11  the difference.

12        **MR. VANZANDT:**  What I was getting at is the nature.

13  It's the age population of the plaintiffs here, the

14  intrusiveness on their lives that it takes to litigate these

15  cases.  And we have seen this age population be very hesitant

16  to engage in litigation --

17        **JUDGE KENNELLY:**  You are basically bearing your

18  mental state if you file a lawsuit like this because all of

19  your records are going to have to be produced and you will

20  have to be deposed.  What about state AGs on this one?

21        **MR. VANZANDT:**  I have not heard anything

22  specifically about state AGs that are investigating cases.

23  That certainly wouldn't surprise me, given the nature of these

24  allegations.  I don't have the right knowledge of that.

25        **JUDGE KENNELLY:**  I will have more later.

1          **JUDGE ARLEO:**  I have a question.  What about the

2     defendants here?  So the Meta defendants, as I understand it,

3     are Facebook and Instagram?

4          **MR. VANZANDT:**  Yes, Your Honor.

5          **JUDGE ARLEO:**  And what about including the cases

6     where there are no Meta defendants?  That would be Snapchat,

7     TikTok and YouTube?  What is your position on that?  Should

8     they all be included?  The injuries are the same, aren't they?

9     Potentially?

10          **MR. VANZANDT:**  For the most part.  And I can

11     explain.

12          Our position is that Meta should be the anchor

13     defendant.  So Meta must be a co-defendant for a case to be

14     included in the MDL.  The reason is, is there are very few

15     cases that are filed that do not include Meta.  Just a

16     handful.  And obviously those cases could increase down the

17     road.  There is no indication that that is going to be the

18     case and --

19          **JUDGE KIMBALL:**  Well, "anchor" means the most sued

20     defendant?

21          **MR. VANZANDT:**  Yes, Your Honor.  It would just be

22     required that if a case -- for a case to be in the MDL, that

23     Meta be a defendant or a co-defendant and it involve -- the

24     basis of the case involve addiction to social media.

25          **JUDGE ARLEO:**  So let me stop you.  So the non-Meta

1    defendant cases would be those where only either Snapchat,

2    TikTok and YouTube are named and not Instagram and Facebook.

3    Is that right?

4              **MR. VANZANDT:**  That's correct.

5              **JUDGE ARLEO:**  And what -- why shouldn't they be

6    included?  So the theory is that those plaintiffs only

7    suffered injury based on addiction to Snapchat, TikTok or

8    YouTube and not to Facebook or Instagram?

9              **MR. VANZANDT:**  So some of those cases that you are

10   referring to that have been filed are not based upon

11   addiction.  So, for example, the Anderson case, which I

12   believe you will hear about later, is based upon the "blackout

13   challenge" on TikTok.  Which an injury that occurred like

14   that, devastating, didn't necessary require an addiction to

15   the social media product to bring about injury.

16              So, I mean, conscious of the potential size of this

17   MDL, this is one of the largest consumer products of all time,

18   we are trying to put some guardrails on this to define what

19   this MDL will be and limit the cases that would be included,

20   to focus on the issues that we are looking at here, which is

21   addiction to social media products.

22              **JUDGE ARLEO:**  So one last question.  And this might

23   have been something I missed in the briefing.  Age group for

24   this?  Is there an age group?

25              **MR. VANZANDT:**  We are phrasing it as "adolescence."

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1    Some of the plaintiffs are young adults, but every single

2    plaintiff started using these products at adolescence.

3              **JUDGE ARLEO:**  Meaning under the age of 18?

4              **MR. VANZANDT:**  Yes, Your Honor.

5              **JUDGE ARLEO:**  And how early?  Like, is there -- what

6    about preteens?  What about 10- or 12-year-olds who started at

7    a particular time and then continued?  Would they be included?

8              **MR. VANZANDT:**  They would be, yes, Your Honor.

9              **JUDGE ARLEO:**  Would there be any downward age limit

10   not included?

11             **MR. VANZANDT:**  No, Your Honor.

12             **JUDGE ARLEO:**  Is it ongoing or is it during a

13   discrete period of time?

14             **MR. VANZANDT:**  Unfortunately, it's ongoing.

15             **JUDGE CALDWELL:**  I just have a comment.  My

16   grandchildren tell me Facebook is only for old people.

17             (Laughter)

18             **JUDGE ARLEO:**  You may want to have a group of

19   Facebook middle-aged people in an MDL.  But that's for a

20   different day.

21             (Laughter)

22             **JUDGE ARLEO:**  I don't think any young people are on

23   Facebook anymore.  That's just anecdotal.

24             **MR. VANZANDT:**  The reality is a lot of these will

25   say Facebook and Instagram.  A lot of the minors, it's

1   Instagram.

2           **JUDGE KENNELLY:**  It's Instagram.

3           **JUDGE CALDWELL:**  Mary Liu?  No, she's not arguing.

4   Mr. Weinkowitz.

5           **MR. WEINKOWITZ:**  That's me, Your Honor.

6           **JUDGE CALDWELL:**  All right.  Thank you, Sir.

7           **MR. WEINKOWITZ:**  May it please the panel.  Mike

8   Weinkowitz from Philadelphia of Levin, Sedran & Berman on

9   behalf of Plaintiffs Laurel --

10          (Court reporter clarification)

11          **MR. WEINKOWITZ:**  I'm sorry.  I apologize.

12          I represent Plaintiffs Laurel Clevenger and Gabriela

13  Ortiz who have filed their cases in the Eastern District of

14  Pennsylvania.

15          Plaintiff Clevenger, we join the moving party, and

16  we join Meta in requesting consolidation of the MDL.  We also

17  join in seeking the Northern District of Illinois and the

18  Western District of Missouri.

19          We also ask that the panel consider the Eastern

20  District of Pennsylvania.  And my able counsel in the last MDL

21  panel set out that the Eastern District of Pennsylvania has

22  demonstrated its experience in handling complex cases.  It has

23  the resources necessary to handle a complex case like this.

24  It has had 101 MDLs in its history.  It has ten currently on

25  the books, which are sort of on the tail end, and there's not

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1   a lot of activity in those cases.

2           And, also, I am asserting and asking the panel to

3   consider Judge Quiñones, Alejandro Quiñones.  She -- at 20

4   years on the bench in state court.  She's been on the bench

5   for nine years.  And your appointment would be a historical

6   appointment and a first.  She is the first lesbian Hispanic

7   judge to be appointed to the federal judiciary and she would

8   be the first lesbian Hispanic judge to have an MDL.  She is

9   considerably experienced in product liability cases, complex

10  product liability cases including children.  And she has tried

11  a Motrin case with -- to verdict and her verdict has been

12  upheld to the Pennsylvania Supreme Court.  She's an excellent

13  jurist and she would add diversity to the MDL bench and I

14  would ask that you consider her.

15          **JUDGE CALDWELL:**  Thank you.  Judge Kimball.

16          **JUDGE KIMBALL:**  There are -- are there actions that

17  don't include Meta but are against other defendants?

18          **MR. WEINKOWITZ:**  There are, Your Honor.

19          **JUDGE KIMBALL:**  And there are actions that include

20  Meta and other defendants?

21          **MR. WEINKOWITZ:**  There are, Your Honor.

22          **JUDGE KIMBALL:**  Should they all be put together or

23  should -- when Meta isn't there, should there be a separate

24  action, in your view?

25          **MR. WEINKOWITZ:**  In my view, I think that -- like

1   Mr. VanZandt, I think that Meta ought to be the anchor

2   defendant in this MDL and that we ought -- the guardrails that

3   can be put on this case are addiction and adolescence.

4           Now, there aren't that many cases right now that

5   don't involve Meta.  There are a couple that are Snapchat-only

6   cases.  And I think that actually if those cases were brought

7   into the MDL, so long as they had an addiction component, that

8   an MDL judge could actually manage those.

9           There are instances where there have been

10  simultaneous injuries, simultaneous use of a product with a

11  familiar injury.  The mesh case, those cases were managed.

12  The Juul case -- the Juul case actually has other e-cigarette

13  manufacturers who were sued along with Juul, and those cases

14  are in the MDL.  And so I think that having Meta as the

15  anchoring defendant is the appropriate way to go in this case.

16          But I think that if the few cases where there are

17  just non-Meta defendants, it -- MDL judges are amazing.  They

18  can put cases on different tracks.  They can manage these

19  things.  And I don't think that that would be necessarily a

20  bad thing.

21          **JUDGE KIMBALL:**  Thanks.

22          **JUDGE CALDWELL:**  Any other questions?  No.

23  Thank you very much.

24      **MR. WEINKOWITZ:**  Thank you.

25      **JUDGE CALDWELL:**  Emily Jeffcott.

1        **MS. JEFFCOTT:**  Can you hear me?

2        **JUDGE CALDWELL:**  I can.

3        **JUDGE KENNELLY:**  Well, you have to talk first.

4        (Laughter)

5        **MS. JEFFCOTT:**  How is that?

6        **JUDGE KENNELLY:**  So far.

7        **MS. JEFFCOTT:**  Good morning.  And may it please the

8    panel.  My name is Emily Jeffcott.  I'm here for

9    Morgan & Morgan.  And I'm appearing on behalf of Plaintiff

10   Tesch and others in support of consolidation before the

11   Southern District of Ohio of product liability addiction cases

12   in which Meta is one of the named defendants.

13        Now, in my time before the Court, I don't want to

14   focus on the number of hotels or the airport in Columbus,

15   Ohio.  Columbus is a convenient location.  And I think over

16   the last few years of the pandemic, tools like Zoom allow us

17   to communicate across the country.

18        Instead, what I want to focus my time on, is the

19   ability and experience of the Southern District of Ohio to

20   handle large volumes of cases.  Now, through litigations like

21   C-8, the Accufix pacemaker MDL, the Southern District of Ohio

22   has demonstrated an ability not only to handle large numbers

23   of cases but also to move them along.

24        In addition, the Southern District of Ohio is in

25   tune with the needs of MDL litigants, having developed a

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1   website that allows lawyers and laymen alike access to key

2   information and orders and transcripts that would otherwise

3   only be available on Pacer.

4          Now, finally, the judges of the Southern District of

5   Ohio are aptly prepared to handle a litigation like this.

6   Now, any judge in the Southern District of Ohio would be

7   excellent for this case, but my colleagues at Gibbs Law Group

8   and I have identified three candidates that we think would be

9   ideal; that would be Chief Judge Marbley, Judge Watson and

10  Judge Sargus.

11         Now, Chief Judge Marbley and Judge Sargus have been

12  on the bench for over 20 years.  And Judge Watson isn't far

13  behind with 18 years.  Now, Judge Watson and Judge Sargus both

14  have experience handling MDLs, and I can represent to the

15  Court that Judge Marbley would appreciate an MDL as well.

16         **JUDGE CALDWELL:**  Thank you.  Questions for counsel?

17         Thank you very much.  We have your argument.

18         Lexi Hazam.  And I hope I pronounced your name

19  correctly.

20         **MS. HAZAM:**  Yes, you did, Your Honor.  Thank you.

21         Can you hear me okay?

22         **JUDGE CALDWELL:**  Yes.

23         **MS. HAZAM:**  Great.  Good morning, Your Honors.  May

24  it please the Court.  Lexi Hazam of Lieff Cabraser on behalf

25  of Plaintiffs Mandy and Douglas Westwood.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1          For the reasons identified by Petitioner Murden and
2   others, the Westwood plaintiffs support coordination of all
3   cases involving Instagram and Meta alleging addiction based on
4   defective design.  The Westwood plaintiffs propose the
5   District of Utah, where their case is filed, as an appropriate
6   district for coordination.

7          The District of Utah currently has no MDLs, which is
8   true of only one other venue proposed here.  And while the
9   District of Utah does not have any current MDLs, it does have
10  able jurists with higher MDL and complex litigation
11  experience, including Chief Judge Shelby and Judge Kimball.

12         Chief Judge Shelby is currently overseeing an MDL
13  based in the Eastern District of Oklahoma, the Broiler Chicken
14  Growers antitrust MDL.  But that MDL has entered into the
15  settlement phase.  Otherwise, the District of Utah has not had
16  an MDL since, I believe, 2015 is when the last one closed.

17         The District of Utah is conveniently located and
18  accessible to all parts of the country.  It is, in fact, as
19  close to the San Francisco area and the Los Angeles area as
20  they are to one another, in terms of overall travel time.  A
21  fact that makes it convenient for defense witnesses to appear
22  in bellwether trials.  These would be witnesses based at
23  company headquarters in the Bay area and the Los Angeles area.

24         Also relevant to this action, Utah is the youngest
25  state in the nation.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1          In the alternative, the Westwood plaintiffs support

2   coordination in the Northern District of Illinois for the

3   reasons identified by others; namely, convenience to the

4   parties and availability of highly capable jurists with

5   experience handling complex litigation, including Judge Ellis

6   but also including Judges Johnston, Kennelly and Kendall.

7          Thank you.

8          **JUDGE CALDWELL:**  Thank you.  Questions?  Judge

9   Kimball.

10         **JUDGE KIMBALL:**  Did you say Utah was the youngest

11  state in the nation?

12         **MS. HAZAM:**  It is, in fact, Your Honor.  Its average

13  age is about 31 years.  Just a comparison, the average age of

14  Floridians is over 40.

15         **JUDGE KIMBALL:**  I thought you were talking about

16  when they entered the Union.

17         (Laughter)

18         **MS. HAZAM:**  Not the newest.  Just the youngest in

19  age.

20         **JUDGE KIMBALL:**  All right.  Thank you.

21         **JUDGE CALDWELL:**  Judge Kennelly.

22         **JUDGE KENNELLY:**  I'm going to ask this to other

23  people, too, as I did to the first person who talked.  How big

24  is this one likely to get?  I mean, you come from a firm that

25  does substantial work in these types of cases.  What's back

1   there in the pipeline?

2       **MS. HAZAM:**  I think it certainly will grow.  I think

3   it could easily grow to the many hundreds, even the low

4   thousands.  I do not think it will become a case of hundreds

5   of thousands.  While this is obviously a product that is very

6   widely used, I do believe that the nature of the allegations

7   and the severity of the damages involved in these cases will

8   act to restrict it somewhat, at least if we have an MDL that

9   is structured around Meta as an anchor defendant.

10      **JUDGE KENNELLY:**  Yeah.  I guess my concern about

11  that is that, you know, once it's out there and an MDL is

12  created, I mean, I assume there's already advertising going

13  on, but that tends to get ramped up when that happens.  And

14  then we won't be talking about the sort of top tier of

15  severity of injuries.  We will be talking about a much larger

16  middle tier of injuries.  Which, I mean, almost the sky is the

17  limit in terms of the number of potential plaintiffs given

18  that everybody in the last 15 years probably who has been an

19  adolescent has looked at Facebook.

20      **MS. HAZAM:**  It is certainly possible, Your Honor.  I

21  do believe that these products have been on the market only

22  very recently and the case is focused on what happens to

23  adolescents and young people when they use them.  So it's not

24  everybody who is on these platforms.  And, again, it's also

25  focused on particular platforms.  So while we refer to Meta

1    and Facebook, most of the cases against it involve the use of

2    the Instagram product.

3            **JUDGE KENNELLY:**  You said most involve Instagram,

4    not Facebook.

5            **MS. HAZAM:**  Well, Instagram is a Facebook

6    subsidiary, Your Honor.

7            **JUDGE KENNELLY:**  Yeah.  Fewer people are using

8    Facebook and more people are using Instagram recently.

9            **MS. HAZAM:**  In this age group that is certainly

10   true.  I don't know if that's true across the board.

11           **JUDGE ARLEO:**  And what about the non-Meta

12   defendants -- Snapchat, TikTok and YouTube?

13           **MS. HAZAM:**  Yes, Your Honor.  Those cases that

14   involve only those platforms as defendants at this point

15   constitute less than 5 percent of those that have been filed.

16   I think they will remain a very small part of this.  I think

17   it may, therefore, be premature to decide if they should be

18   included in this MDL.  And there would be time to see if there

19   are many additional cases and if so to add them.

20           It's not so much they could not be added.  I don't

21   think that there's an argument that so long as they are based

22   on a similar theory they wouldn't fit the overall nature of

23   the MDL, but they are a small portion currently.

24           Also, there is the risk that if all social media

25   platforms could potentially be part of the MDL, that is a very

1   large number of companies.  The others are smaller but there

2   are many others out there.

3          **JUDGE ARLEO:**  A quick question.  You said in only

4   the stand-alone cases where Snap, TikTok or YouTube are

5   defendants, that's only 5 percent.  Do they have any damages?

6          **MS. HAZAM:**  Those cases have different allegations

7   among them.  Some, I believe, have similar allegations and

8   similar injuries to the cases against Meta and Instagram.

9   Others are more of the nature of a one-off, non-addictive

10  theory, like the Anderson case, which you will hear about

11  shortly, which is the TikTok challenge that resulted in the

12  tragic death of a young person.  That is not based on

13  addiction and so it is very distinguishable from the remainder

14  of the cases.

15         **JUDGE ARLEO:**  And that's one case?

16         **MS. HAZAM:**  That is one case.

17         **JUDGE CALDWELL:**  Any questions?

18         Thank you for your argument.

19         **MS. HAZAM:**  Thank you, Your Honors.

20         **JUDGE CALDWELL:**  The panel will now hear from

21  Christopher Seeger.

22         **MR. SEEGER:**  Good morning, Your Honors.

23         I'm going to spend just a -- quickly go through the

24  district we are asking for and I don't know if there will be

25  questions.

IN RE: Social Media Adolescent Addiction | MDL No. 3047

1        **JUDGE KENNELLY:**  You may have to get closer to the

2    microphone.

3        **JUDGE ARLEO:**  Microphone.

4        **MR. SEEGER:**  We are moving for -- Chris Seeger,

5    Seeger Weiss.  We represent the Doffing plaintiffs.  And we

6    are moving for the Northern District of California.  We

7    thought at the time we made that that would be relatively

8    noncontroversial because Facebook, Instagram and many of the

9    defendants we are talking about are based in California.

10   Third-party discovery is likely, in very heavy ways likely to

11   occur in the Northern District of California.

12       There's a group called the Habit Summit --

13   interesting name for a group in a case involving addiction --

14   who are likely to do third-party discovery on them and others.

15   I have to imagine most of the witnesses, most of the documents

16   and discovery is going to be on the West Coast.

17       And, interestingly, if you signed up today to be a

18   Facebook user, you would have to click "yes" on your user

19   agreement.  And guess which forum Facebook would like you in?

20   California.  But they don't want to be in California for this

21   case.  So I find that interesting.

22       Judge Kennelly, I would like to circle back to some

23   of your earlier questions, if that's okay.  In our papers we

24   did say that we thought that this should be a multi-defendant

25   MDL.  I don't frankly think anybody has specifically filed a

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1  petition for each of the defendants, but they have been

2  discussed.

3          **JUDGE KENNELLY:**  You are talking about even if

4  Facebook is not named?

5          **MR. SEEGER:**  Yes.  And I differ from my friends.

6  And I hope they are not upset with me for this, but I frankly

7  think that they are all going to have to be in one MDL in

8  front of one judge.  There's a long history -- for this

9  reason.  There's a lot of mixed use.  They are not just on one

10  device; they are on many.  They are on many of these media

11  platforms.

12          Kennelly in TRT, you dealt with that issue with

13  multiple defendants.  Judge Cecchi in New Jersey is dealing

14  with that in PPI.  And judges manage to sort that out and deal

15  with it.

16          And I am somewhat concerned that -- I don't know how

17  you, frankly, would make the assignments if you have an anchor

18  defendant and only the defendants that would be dragged along

19  with the anchor.  And you still run the risk of conflicting

20  rulings on important causation and *Daubert* issues, all the

21  things that are going to come up in this case.  So, frankly,

22  again, I apologize to my friends, but I disagree with them.

23          **JUDGE CALDWELL:**  Questions?

24          **JUDGE KENNELLY:**  How big?

25          **MR. SEEGER:**  It's going to be big, but it's not like

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1   there are big barriers to injury.  Causation is going to be an

2   issue.  What we are focused on here in this case is addiction.

3   So I think that some of those issues are going to have to play

4   themselves out.  Whatever judge gets this is going to be

5   teasing through the so-called cross-cutting issues that we

6   deal with in multi-defendant complex cases all the time.

7          One thing that was mentioned is the fact that these

8   are generally very young people, and the idea of putting your

9   personal mental state at issue is going to be an issue for a

10  lot of plaintiffs.  But having said that, my gosh, it's

11  everywhere.  Every kid is on it.  Four years old and up.  So

12  it has the potential to be big, but it doesn't have to be.

13  And I know that's a really unsatisfying answer.

14          **JUDGE KENNELLY:**  Yeah, but that's okay.

15          (Laughter)

16          **JUDGE CALDWELL:**  Any other questions for Mr. Seeger?

17          **MR. SEEGER:**  Good seeing you all.

18          **JUDGE CALDWELL:**  Thank you.  We have your argument.

19          Jeffrey Goodman.

20          **MR. GOODMAN:**  Good morning, Your Honors.  Jeffrey

21  Goodman from Saltz Mongeluzzi.  I represent the plaintiff in

22  the Estate of Nylah Anderson case that has already been

23  mentioned a couple of times.

24          Our cases is currently pending in the Eastern

25  District of the United States and is solely against TikTok and

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1    TikTok's parent company ByteDance.

2                    (Court reporter clarification)

3              **MR. GOODMAN:**   TikTok and ByteDance.

4              We take no position on the overall centralization of

5    the case, nor, for that matter on which defendant should be

6    included in any centralized case.  Our position is simply that

7    cases like ours, our case in particular, should have no part

8    in any coordinated MDL litigation.

9              As the plaintiffs' attorneys before me have

10   mentioned, the two touchstones of this MDL that is sought are,

11   one, that Meta is the anchor defendant and, two, that the

12   injury is premised upon addiction.  We have neither of those

13   in our case.

14             The cases that are likely to be part of a potential

15   MDL here are cases in which young people became addicted to

16   social media and then through that addiction developed

17   injuries such as depression, anxiety, attempted suicides.

18   That's not the case here.

19             Nylah Anderson was a ten-year-old girl when she was

20   sent by TikTok a viral challenge known as the "blackout

21   challenge."  The "blackout challenge" essentially gives a

22   step-by-step guide on how to asphyxiate yourself and

23   encourages the user to mimic it.  TikTok sent this challenge

24   to Nylah by populating it onto her "For You" page.  She saw

25   the challenge, she mimicked it, and she died in the process.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1        It wouldn't matter whether this was her millionth
2   time using TikTok because she was addicted or whether this was
3   her first time using TikTok.  The simple fact is under our
4   case theory, she never should have been sent this challenge.
5        Now, I will note that although the plaintiffs all
6   agree that our case shouldn't be coordinated, TikTok says that
7   in their papers this is likely to be behemoth, we need
8   limiting principles, it could crush the federal judiciary, but
9   if we are in this, we want cases like Anderson with us in it.
10       We believe this is the guardrail needed to keep us
11  out of it.
12       **JUDGE CALDWELL:**  Thank you.  Questions?
13       **JUDGE ARLEO:**  Any other cases similar to yours in
14  the MDL where there's a TikTok challenge or direction that
15  resulted in harm?
16       **MR. GOODMAN:**  I'm aware of three state court cases
17  under the "blackout challenge."  I also represent a couple
18  other cases and cases under investigation.  I'm not aware of
19  any filed federal court cases that involve "blackout
20  challenge" or -- obviously there's other challenges that would
21  potentially have similar consequences.  I'm not aware of any
22  of them and the defendants have not tagged any as related
23  cases.  I actually had to tag my own as a related case just to
24  argue it wasn't related because I didn't want -- because I
25  knew TikTok was going to claim that it was.

1              **JUDGE ARLEO:**  Any of those other state court

2    cases -- are they -- how far along are they?  Any chance they

3    will be moved to federal court?

4              **MR. GOODMAN:**  I don't know the answer to that.  They

5    are in California.  I know they have been filed in the last

6    couple of months.  I'm not familiar with the procedure at all.

7              **JUDGE ARLEO:**  Okay.

8              **JUDGE CALDWELL:**  Thank you very much.

9              **MR. GOODMAN:**  Thank you, Your Honors.

10             **JUDGE CALDWELL:**  Phyllis Jones.

11             **MS. JONES:**  Good morning, everyone.  I will adjust

12   the microphone before Judge Kennelly has to counsel me on

13   that.

14             **JUDGE CALDWELL:**  Pull it down a little further.

15             **MS. JONES:**  Phyllis Jones from Covington & Burling

16   on behalf of Meta Platforms and related entities.

17             In listening to the discussion today about what

18   configuration of defendants needs to be included in any MDL,

19   it really reinforces the core point that I want to make for

20   the panel, which is that for the efficiencies that are

21   possible for an MDL to be achieved, any MDL needs to include

22   all defendants.  All defendants.

23             The data today, in terms of the number of cases, is

24   that there are 24 cases or roughly a third of the cases that

25   are what I would describe as "Meta plus" cases.  Meta plus at

 1  least one co-defendant.  Each of those cases involve a core

 2  allegation by a single individual that that individual used

 3  multiple of these applications, overlapping use.  I think you

 4  have heard the phrase simultaneous use/simultaneous injury.

 5          The complaints, this notion that Meta is the app

 6  that the addiction theory is somehow Meta only, all of the

 7  complaints say essentially the same thing as to each of the

 8  applications.  That's not a Meta-only theory.  That's the

 9  theory that is driving the cases as to all of the defendants.

10          Discovery, even in the Meta-only cases, we expect

11  the discovery will show that the individual plaintiff used

12  multiple of these applications.  And one concrete example that

13  I will point out from the earliest stages of the litigation is

14  that one of the very first cases filed, the Rodriguez case in

15  California, started as a Meta and Snap case, but as the

16  plaintiffs continued to develop their facts, they eventually

17  added TikTok.

18          And we envision that you will see, in a number of

19  these cases, that plaintiffs will fill out fact sheets where

20  they have to say which applications did you use, and they will

21  identify not just Instagram, not just Facebook, but they will

22  likely identify other applications.  And those circumstances

23  where the facts as to one defendant are really bound up in the

24  facts of every defendant, separating out defendants from an

25  individual plaintiff's claims or otherwise segregating Meta

1    cases in an MDL really works against the types of efficiencies

2    that the panel aims to achieve under 1407.

3          On the subject of venue, Judge Kennelly has asked a

4    couple of times:  How big is this going to get?  And I think

5    what we've heard is it is likely to be big.  We don't know

6    exactly how big but we have heard hundreds, possibly the low

7    thousands.  From our perspective that really drives the venue

8    analysis.  You need a venue that can accommodate these types

9    of cases from a judicial resources and capacity perspective.

10         And Meta has proposed two venues that can do that:

11   The Eastern District and the Western District of Kentucky.

12   There is only one MDL in both of those courts currently.  They

13   have had MDLs in the past.  They are underutilized MDL

14   districts, which is a concept that the panel has sometimes

15   invoked in the past.  And so from our perspective, those are

16   more desirable options than what has been proposed.

17         To speak very quickly on the issue of Illinois in

18   particular, it won't be the case that for these young folks

19   who might have to participate in discovery that they will have

20   to travel.  And we also know that discovery is driven

21   electronically.  So those issues really don't drive the venue

22   analysis.

23         **JUDGE CALDWELL:**  Your time is up.  Questions?  Yes.

24   Let's start with Judge Kimball.

25         **JUDGE KIMBALL:**  You have heard Mr. Goodman a minute

1  ago describe the suicide case.  Would you include those types

2  of cases as well?

3      **MS. JONES:**  We would ultimately -- those are not

4  cases -- the challenge cases, as I will refer to them, aren't

5  cases where Meta is named.  We would ultimately defer to the

6  panel's judgment on those cases.

7      **JUDGE KIMBALL:**  But do you have a view on that?

8      **MS. JONES:**  We would probably be inclined to include

9  them, on the same theory that I articulated:  The efficiencies

10  that can be achieved from having everything in one place.

11      **JUDGE CALDWELL:**  Judge Kennelly.

12      **JUDGE KENNELLY:**  I have two.  So the first one is

13  focused on your position regarding cases in which other

14  defendants are named.  So let's talk about a case in which

15  Meta isn't named at all but it alleges addiction from some

16  other platform.  You are saying that should be included?

17      **MS. JONES:**  Yes.

18      **JUDGE KENNELLY:**  Okay.  That's what I thought you

19  were saying.  I just wanted to be sure.

20      The second has to do with your proposed venue.

21  Absolutely nothing, obviously, against the Eastern and Western

22  District of Kentucky --

23      **JUDGE CALDWELL:**  I hope not.

24      (Laughter)

25      **JUDGE KENNELLY:**  Of course not.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1          As we all know, though, one of the big issues in

2    these cases has to do with bellwether trials and Lexecon.  So

3    if you go to one of those districts, obviously there will be

4    plaintiffs from those districts, but it's likely, unless

5    there's going to be a consent under Lexecon, that it's going

6    to drastically restrict the pool of bellwether cases.

7          **MS. JONES:**  From our perspective, the Lexecon

8    discussion is probably a little bit premature but it --

9          **JUDGE KENNELLY:**  I was going to ask you if you are

10   willing to waive Lexecon.

11          **MS. JONES:**  Well, you have now heard what I was

12   likely going to say in response to that question, but --

13          **JUDGE KENNELLY:**  I mean, that just gets back to my

14   point though.  Nobody would expect anybody to waive Lexecon

15   this early, obviously.  You don't even have an MDL yet.  Does

16   it make sense to send it to a district where -- because of

17   population, if nothing else, you are likely drastically

18   decreasing the number of bellwethers?

19          **MS. JONES:**  Our short answer would be yes, in part

20   because we don't think it can be the case that certain

21   districts are entirely taken out of the prospect of having an

22   MDL simply because of those types of issues.  We think you

23   would then have a pretty lopsided allocation potentially of

24   MDL.

25          **JUDGE KENNELLY:**  So you know, I don't think we have

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1    a line of judges lined up outside the door volunteering for

2    this.

3          (Laughter)

4          **MS. JONES:**  Fair enough.

5          **JUDGE ARLEO:**  So you represent the Meta defendants.

6    And isn't Facebook -- I'm sorry, Instagram and Facebook both

7    located in California in the Northern District, their

8    corporate headquarters?

9          **MS. JONES:**  It's correct that Meta is located in the

10   Northern District.

11         **JUDGE ARLEO:**  So what is your opposition to that?

12         **MS. JONES:**  It's simply what I mentioned earlier,

13   Judge Arleo, was this notion that if the MDL is going to be as

14   large as it has been predicted by, I think, virtually every

15   plaintiffs' lawyer who has argued this morning, you really

16   need a venue that can accommodate this.  And as I think we

17   have heard many times today, the Northern District has its

18   fair share of pretty active, robust MDL practice at the

19   moment.

20         **JUDGE ARLEO:**  Okay.

21         **JUDGE CALDWELL:**  Anyone else?

22         Thank you.

23         **MS. JONES:**  Thank you all for your time.

24         **JUDGE CALDWELL:**  Geoffrey Drake.

25         **MR. DRAKE:**  Good morning.  Geoffrey Drake from

IN RE: Social Media Adolescent Addiction | MDL No. 3047

1  King & Spalding for Defendants TikTok and ByteDance.  I want

2  to make three points this morning, please, Your Honors.

3          The first is the plaintiffs, as you have heard over

4  and over, seek a Meta-centric MDL.  Our position is that the

5  MDL should be limited only to cases brought against only Meta.

6  The cases against TikTok, the combination cases, should be

7  left to proceed outside of any MDL or TikTok should be severed

8  leaving Meta to proceed with their case in the MDL and TikTok

9  to proceed outside of the MDL.

10          That said, my colleague who represents Snap will

11  address that argument in more detail.

12          I would like to move to the second point, which is

13  if the panel does create an MDL that does include non-Meta

14  defendants, like TikTok, in a social media adolescent

15  addiction/personal injury product liability MDL that it's been

16  called, that MDL should include all of the cases involving

17  alleged adolescent social media addiction and related personal

18  injury claims, including those to which Meta is not a party.

19  And TikTok has identified those cases for the panel in

20  Docket 107-2.

21          That includes the JM and EW cases in the Northern

22  District of California, which proceed against TikTok and

23  others but not Meta.  That includes the same allegations of

24  addiction in personal injury.  And it also includes the

25  Anderson case in the Eastern District of Pennsylvania.

1          It is squarely within the scope of plaintiffs to

2    find MDL.  The complaint includes the exact same claims and

3    asserts the same allegations of social media addiction.  While

4    Mr. Goodman claims it is not a social media addiction case

5    because it involves the "blackout challenge," Your Honors, the

6    complaint includes the word "addiction" 22 times.  There's

7    good reason, I imagine, for that as the plaintiffs try to

8    circumvent the immunity to which the defendants are entitled

9    under the Communications Decency Act, but the reality is they

10   can't get around their pleadings.  The pleadings use the word

11   "addiction" 22 times.

12          And the fact that it's a specific harmful video case

13   does not distinguish it.  The Johnson case in the Central

14   District of Illinois, which involves Meta and the other

15   defendants, also includes allegations of harmful prank videos.

16   And the Youngers/IG case against only TikTok in the District

17   of New Mexico similarly is a harmful video case that includes

18   the word "addiction" 28 times.  It's central to the

19   plaintiffs' allegations in all of these cases regardless.

20          Third, TikTok supports Meta's view of the world in

21   terms of venue.  While the plaintiffs have offered a number of

22   different suggestions, the defendants are aligned that the

23   Eastern District of Kentucky would be the best venue.  It's

24   not as backlogged compared to the Northern District of

25   California, Northern District of Illinois and others.  It has

1  an experienced bench, including Judge Caldwell, that enable it

2  to accommodate an MDL of this size and scope and is also

3  centrally located for the plaintiffs across the country.

4        **JUDGE CALDWELL:**  Questions?  Yes, Judge Kennelly.

5        **JUDGE KENNELLY:**  Let me clarify.  So Position A is

6  if we are going to centralize it, only do the cases where it's

7  just Meta.  And Position B is if we are -- if we don't do

8  that, then include all of the social media, anything against

9  any social media, whether Meta is involved or not.

10        **MR. DRAKE:**  That's correct.

11        **JUDGE KENNELLY:**  But not what some people have

12  advocated, which is if Meta is a defendant, fine; if Meta is

13  not a defendant, no.

14        **MR. DRAKE:**  That's correct.

15        **JUDGE KENNELLY:**  Why Position A or C but not B?

16  What's wrong with B?

17        **MR. DRAKE:**  Well, our position -- first, to make

18  sure I have the A, B and C correct.

19        **JUDGE KENNELLY:**  A is only Meta is sued.  C is any

20  social media sued, whether Meta is involved or not.  B is Meta

21  plus somebody else.

22        **MR. DRAKE:**  Well, it's our initial position that it

23  shouldn't be Meta plus everybody else.  We are advocating for

24  A, that the MDL focus just on Meta.

25        But once we get past that, we move to the point that

1   it doesn't make any sense for the cases that we have with Meta

2   to be in the MDL but the cases that we have without Meta to be

3   left alone.  The plaintiffs continue to file those cases at

4   increasing volume, and they include the exact same types of

5   allegations.  As Mr. Seeger mentioned, he has cases against

6   all three of us -- or, excuse me, all four of us.  And then he

7   has some cases where Meta is not even a party.

8           There's no real distinguishing feature if you are

9   going to create an MDL that we are in it.  We shouldn't have

10  to litigate cases that are outside the MDL and inside the MDL.

11  We think that's inefficient at that point.  It's not our

12  preference, but that would be our alternative position.

13          **JUDGE CALDWELL:**  Other questions?

14          **JUDGE ARLEO:**  I want to follow up on

15  Judge Kennelly's question.  So your first position is if the

16  Meta defendants are named, they should be -- and TikTok or

17  Snap, they should not be included in the MDL, only the Meta

18  defendants alone?

19          **MR. DRAKE:**  That's correct.

20          **JUDGE ARLEO:**  So under that theory, you would have

21  an MDL of just Meta defendants, but if Meta defendants also --

22  there was a case where there was addiction and causation by

23  the alleged defendants and they named Snap with the Meta

24  defendants, they would just proceed separately, even though

25  they have the same injury and even though those plaintiffs

1   were utilizing both social media platforms potentially

2   simultaneously.  Wouldn't that be inefficient?

3           **MR. DRAKE:**  Well, we think there is precedent for

4   it.  Like Invokana cases, Seroquel cases where there's

5   examples of where the panel has done this before, has left the

6   MDL to be focused just on the so-called anchor defendant --

7   here Meta -- and then sent the cases that involve combination

8   platforms, particularly given how complicated it could get

9   with multiple defendants, with multiple pretrial orders,

10  complicated confidentiality orders, trade secret issues and

11  the like, to leave the combination cases pending elsewhere.

12          But we recognize that the panel is inclined to

13  include everybody.  Our most important point, I think this

14  morning, Your Honor, is to include all of us, if the panel is

15  inclined to.

16          **JUDGE CALDWELL:**  Thank you.  Anyone else?

17          Thank you.

18          Mr. Blavin.

19          **MR. BLAVIN:**  Can you hear me?  Great.  Thank you.

20          Good morning, Your Honors.  Jonathan Blavin from

21  Munger, Tolles & Olson on behalf of Snap.  Snap opposes

22  consolidation of the multi-defendant cases where Snap is a

23  defendant with the Meta-only cases.  As of today, I think

24  that's approximately 70 percent of the Meta-only cases.  The

25  remaining, approximately 30 percent, are the multi-defendant

1    cases.

2             As the panel has noted before, such as in the Yellow

3    Brass Plumbing case, the panel is typically hesitant to

4    centralize litigation against multiple competing defendants

5    which sells similar products.  And that hesitancy is

6    particularly warranted here.

7             While plaintiffs point in broad strokes to purported

8    similarities between the platforms that cause addiction, when

9    the panel actually looks at the allegations of these

10   complaints, it is very clear that the allegations relating to

11   the addiction mechanisms as to the Meta products -- Instagram,

12   Facebook, et cetera -- differ significantly from those

13   purportedly related to other platforms, including Snapchat.

14   And that's confirmed by the fact that they are seeking to have

15   an anchor defendant in all of these cases, being Meta.

16            If the platforms were so similar in which it would

17   warrant consolidation of all of the cases against all of the

18   platforms, you would have every platform be part of that MDL.

19   But multiple plaintiffs' counsel have come forward today

20   saying, no, Meta should be the anchor defendant.

21            And the panel has explicitly rejected in the past

22   the common presence of a single defendant as a significant

23   enough basis to warrant consolidation.  In the Children's

24   Personal Care Product Liability Litigation case that's cited

25   in our papers, the panel specifically denied centralization

1    where J&J was a common defendant amongst all of the cases.

2            Moreover, here, as in the Yellow Brass Plumbing

3    case, there will be significant localized causation issues

4    which make this inappropriate to have a multi-defendant MDL.

5    For example, as referenced before, while all of the cases

6    generally allege addiction, the mechanisms that cause that

7    addiction as to each platform differ.

8            So, for example, if you look at the Murden

9    complaint, which is the petitioner's complaint, it alleges

10   that plaintiff became addicted to Instagram and Facebook

11   because of the algorithmic recommendation and delivery of

12   content by refreshable feed and vanity metrics, such as likes.

13   Both of those features do not exist in Snapchat central

14   messaging feature.

15           Again, Snapchat is primarily a messaging tool

16   between different users.  The users must follow one another to

17   transmit messages between them.  That's the central theory of

18   addiction as to Snapchat.  And that allegation, that theory is

19   completely different from the other defendants.

20           In addition, the fact that there are multiple

21   defendants in these multi-defendant cases will only compound

22   the complex questions of causation, comparative fault and

23   liability, which will be absent from the Meta-only cases.

24           It's not that the Meta wouldn't be in those cases.

25   Meta would continue to be in the multi-defendant cases.  It's

1    just that those cases raise distinct issues which make them

2    inappropriate to be consolidated in an MDL in which 70 percent

3    of the cases are Meta-only cases.

4           **JUDGE CALDWELL:**  Your time is up.  Questions from

5    the panel?

6           Thank you.

7           Mr. Willen.

8           **MR. WILLEN:**  Good morning.

9           **JUDGE CALDWELL:**  You might want to raise that

10   microphone up to meet you there.

11          **MR. WILLEN:**  Let me know if you can't hear me.

12          **JUDGE CALDWELL:**  I can't hear you.

13          **MR. WILLEN:**  The benefits are to the detriments of

14   height.

15          Good morning, Your Honors.  Brian Willen, Wilson

16   Sonsini on behalf of YouTube.

17          So YouTube opposes inclusion in the MDL.  So our

18   position is very much similar to the position articulated by

19   counsel for Snap and TikTok.  And I'm not going to repeat

20   those arguments here.  Instead, I want to use my limited time

21   to explain why YouTube is uniquely situated among defendants

22   and why it would be especially inappropriate, in our view, to

23   sweep the very small handful of claims against YouTube into a

24   sprawling Meta-anchor or Meta-focused MDL.

25          So of the 83, approximately, cases that have been

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1    tagged for consideration by the panel, YouTube is named as a

2    defendant in only five of those cases.  That's by far the

3    fewest of any defendant.  One of those cases is a case that

4    Meta is not a defendant.  The plaintiffs' theory in terms of

5    what cases should be included, there's only four cases in

6    which YouTube is even a party.

7             Now, all of those cases except for one, are pending

8    in the same district, the Northern District of California.

9    The other is in the Central District of Illinois.  But we

10   think there's a strong argument under 1404 to transfer that

11   case to the Northern District.

12            All of the YouTube cases have been filed by the same

13   plaintiff's counsel and YouTube is represented by a single law

14   firm.

15            And all of this makes informal coordination outside

16   of an MDL very, very easy.  Much more simple, much more

17   expeditious and much more efficient than forcing YouTube into

18   an MDL overwhelmingly focused on Meta and would involve dozens

19   of unrelated Meta-only cases.

20            It would also be far more fair to YouTube which, of

21   course, is a direct competitor of Meta and operates an

22   entirely distinct and different service.

23            As Mr. Blavin has argued and pointed out, the panel

24   has often recognized that centralizing litigation against

25   competing defendants can create significant inefficiencies and

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1   unfairness.  The Invokana case really speaks directly to this.

2          So that's exactly the situation we have here.  We

3   think centralizing the claims against Meta while keeping

4   YouTube separate is the right course of action and we ask the

5   panel that you do that.

6          **JUDGE CALDWELL:**  Questions?

7          **JUDGE ARLEO:**  What are the claims against YouTube in

8   those five cases?  Are they addiction?

9          **MR. WILLEN:**  Yes, they are -- there's four cases

10  that involve fundamentally addiction allegations.  There's one

11  case, the Johnson case, in the Central District of Illinois,

12  addiction but also is more a case about particular videos that

13  allegedly caused the plaintiff to --

14         **JUDGE ARLEO:**  What kind of videos?

15         **MR. WILLEN:**  Suicide-inducing videos they claim.

16         **JUDGE ARLEO:**  And those four cases, just so I'm

17  clear, that name YouTube, they also name the Meta defendants?

18         **MR. WILLEN:**  Yeah.  So there's four cases that -- in

19  which defendants are Meta, YouTube, Snap and TikTok.  There's

20  one case in the Northern District in which the defendants are

21  YouTube, Snap and TikTok but not Meta.

22         **JUDGE ARLEO:**  Thank you.

23         **JUDGE CALDWELL:**  Other questions?

24         Thank you.

25         Mr. VanZandt, you have a minute for rebuttal.

1            (Indiscernible banter and laughter)

2        **MR. VANZANDT:**  No, not at 11:30 you don't.

3        (Laughter)

4        **MR. VANZANDT:**  Thank you, Your Honors.

5            Judge Kennelly, I want to address the concern about

6    the size of this potential MDL.  I'm only aware of pursuing

7    cases where somebody has only claimed they are addicted to

8    social media --

9            (Court reporter clarification)

10       **MR. VANZANDT:**  Addiction plus a separate injury.

11   And the anxiety and depression-type claims, we are only taking

12   and filing those cases if it's diagnosed and there's treatment

13   involved.  And most times, when that's the case, there are

14   other manifestations of other injuries along with that.

15       **JUDGE ARLEO:**  Diagnosed as in that the plaintiff is

16   addicted to social media in the records?

17       **MR. VANZANDT:**  I was referring to a diagnosis of

18   anxiety and depression.

19           **JUDGE ARLEO:**  Got it.

20       **MR. VANZANDT:**  Now, as to an MDL with competing

21   defendants, this would not be the first MDL that has competing

22   defendants.  You can look at transvaginal mesh, opioids.  MDL

23   judges are very capable of entering protective orders that can

24   guard against those issues.  And it's been done and can be

25   done in a way that would be -- that would make sense.

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

1  Different tracks, different discovery tracks can handle that.

2          Now, as to the Kentucky district courts, we did

3  consider requesting Kentucky.  But as we looked closer to it,

4  we were concerned about the Lexecon issues and the one-year

5  statute of limitation, the impact that had on the case which

6  is why we decided to go with the Northern District of

7  Illinois.

8          **JUDGE CALDWELL:**  All right.  Your time is up.  Any

9  other questions for Mr. VanZandt?

10         Thank you very much.

11         **MR. VANZANDT:**  Thank you.

12         **JUDGE CALDWELL:**  That concludes our arguments in MDL

13  No. 3047.

14         (The proceedings concluded at 11:36 a.m.)

15

16

17

18

19

20

21

22

23

24

25

*IN RE: Social Media Adolescent Addiction | MDL No. 3047*

<u>CERTIFICATE</u>

I, Reagan A. Fiorino, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 43 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 7th day of October, 2022.


*/s/ Reagan A. Fiorino*
Reagan A. Fiorino, RDR, CRR, CRC, CCR
Official Court Reporter