Exhibit F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *et al.*,

                  Plaintiffs,

v.

GOOGLE LLC,

                  Defendant.

Case No. 1:20-cv-03010-APM
HON. AMIT P. MEHTA

**FILED UNDER SEAL**

## MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR SANCTIONS AGAINST GOOGLE, LLC AND AN EVIDENTIARY HEARING TO DETERMINE THE APPROPRIATE RELIEF

February 10, 2023

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

I.    Google's Use Of Chats ................................................................................ 3

   A. Google Designed Its Chats With "Off The Record" Functionality ................................ 4

   B. Google Custodians Discussed Substantive Business Over Chat ........................ 4

II.    Google's Document Preservation Assertions And Commitments ................................ 6

   A. Questionnaire On Electronically Stored Information ("ESI Questionnaire") .............. 7

     1. Google's Written Document-Retention Policies .............................. 7

     2. Google's Preservation Efforts .............................................. 9

   B. Subsequent Communications With Google Regarding Its Chat Retention ............... 9

     1. Google's New Chat Retention Policy .......................................... 9

     2. Google's Assurances ........................................................ 10

III.    Motion For Sanctions In *Epic v. Google* Regarding Google's Destruction Of Chats ....................................................... 11

IV.    After The *Epic* Sanctions Motion, The United States Raised Concerns Regarding Spoliation In This Case .................................................. 12

V.    The Subsequent *Epic* Evidentiary Hearing Reveals Document Destruction ............. 13

VI.    Plaintiffs Receive Information Regarding Google's Chat Practices ........................... 14

STANDARD ............................................................................................................ 15

ARGUMENT ........................................................................................................... 15

I.    Google Engaged In Sanctionable Spoliation ............................................... 16

   A. Google Failed To Preserve Relevant Chat Messages ..................................... 16

     1. Google Had A Duty To Preserve Relevant Chat Messages ....................... 16

     2. Google Failed To Take Reasonable Steps To Preserve Custodian Chat Messages .......................................................... 17

**3.   Google's Spoliation Prejudiced The United States** ........................................................ 20

**B.   Google's Conduct Warrants Substantial Sanctions** ........................................................ 24

**1.   Google's Conduct Is Sanctionable Under Rule 37(e)(1)** ............................................ 24

**2.   Google's Conduct Is Sanctionable Under Rule 37(e)(2)** ............................................ 25

**II.   The Court Should Hold An Evidentiary Hearing To Determine What Sanctions Are Appropriate** ........................................................................................................................ 29

**CONCLUSION** ........................................................................................................................ 31

# INTRODUCTION

For years, Google empowered, and even encouraged, its employees to engage in "history off" written communications—known by Google employees as "off the record" chats—which were then automatically destroyed after 24 hours. Google even trained employees that "off the record" chats, also known as Google Hangouts or instant messages, are "[b]etter than sending [an] email" and "not retained by Google as emails are." Ex. 1,[1] PX-120, at -264. Unsurprisingly then, Google was aware users often had "off the record" chats "to discuss sensitive topics." Ex. 2, GOOG-DOJ-05446651, at -657, -663. As we now know, over the last four years, Google routinely destroyed these written communications. In fact, Google continued automatically deleting these "off the record" chats after it reasonably anticipated litigation, throughout the United States' investigation, and even when the company became a defendant in this litigation—every 24 hours up until February 8, 2023.

Under Google's longstanding policy—which it memorialized in a written policy weeks after this litigation was filed—the company authorizes its employees to control the preservation of chat messages through a user-accessible setting called the "history" button. "History on" chats are generally preserved for 30 days to 18 months; "history off" chats are preserved for only 24 hours, and then permanently deleted. Google sets the default for many chats as history off, including all one-on-one chats between two users. Thus, if users do not intentionally select history on for each particular chat, Google automatically deletes the chat after 24 hours. Even if,

---

[1]  The Northern District of California recently held an evidentiary hearing on the plaintiffs' motion for sanctions against Google for its chat deletion practices in the litigation *Epic Games, Inc. v. Google, LLC*, No. 3:20-cv-5671, as consolidated, *In Re: Google Play Store Antitrust Litigation*, No. 3:21-md-2981 (together, "*Epic*"). Ex. 1 (USDOJ-GOOGEX-000177) contains the Transcript of the January 12, 2023 Evidentiary Hearing on Chat Preservation in *Epic* along with selected exhibits used at the hearing and subsequently filed publicly (PX-16, PX, 25, PX-37, PX-103, PX-120, DXCH-2).

in the midst of an existing chat stream, a user opts to turn history on, only the chats from that point forward are retained beyond 24 hours; earlier portions of that same conversation are permanently lost.

The Federal Rules of Civil Procedure required Google to suspend its auto-delete practices in mid-2019, when the company reasonably anticipated this litigation. Google did not. Instead, as described above, Google abdicated its burden to individual custodians to preserve potentially relevant chats. Few, if any, document custodians did so. That is, few custodians, if any, manually changed, on a chat-by-chat basis, the history default from off to on. This means that for nearly four years, Google systematically destroyed an entire category of written communications every 24 hours.

All this time, Google falsely told the United States that Google had "put a legal hold in place" that "suspends auto-deletion." Ex. 3, Email from B. Labow to J. Alvarado-Rivera, Nov. 20, 2019 & relevant attachment, USDOJ-GOOGEX-0000061, at -074. Indeed, during the United States' investigation and the discovery phase of this litigation, Google repeatedly misrepresented its document preservation policies, which conveyed the false impression that the company was preserving all custodial chats. Not only did Google unequivocally assert during the investigation that its legal hold suspended auto-deletion, but Google continually failed to disclose—both to the United States and to the Court—its 24-hour auto-deletion policy. Instead, at every turn, Google reaffirmed that it was preserving and searching all potentially relevant written communications.

Amazingly, Google's daily spoliation continued until *this week.* When the United States indicated that it would file this motion —following months of conferral—Google finally committed to "permanently set to history on" and thus preserve its employees' chat messages.

Ex. 4, Email from J. Schmidtlein to E. Murdock-Park, Feb. 8, 2023, USDOJ-GOOGEX-000415, at -415. Google's recognition of its discovery obligation is nearly four years too late. And its belated actions cannot restore the years of discoverable materials already lost.

Google's refusal to suspend its auto-deletion policy earlier is especially notable in light of the sanctions motion filed in the *Epic* proceedings. Even after the plaintiffs in that case confronted Google with spoliation concerns, Google still withheld its 24-hour auto-deletion policy from the United States and continued to destroy written communications in this case.

Google's daily destruction of written records prejudiced the United States by depriving it of a rich source of candid discussions between Google's executives, including likely trial witnesses. Google's intentional and repeated destruction of written communications violated Rule 37(e) and this Court's Electronically Stored Information (ESI) Order.[2]

The United States therefore respectfully requests that the Court (1) hold that Google has engaged in spoliation in violation of Rule 37(e); (2) order an evidentiary hearing to assess the appropriate sanctions to remedy Google's spoliation; and (3) order Google to provide further information about custodians' history-off chat practices, through written declarations and oral testimony, in advance of the requested hearing.

## FACTUAL BACKGROUND

### I.  Google's Use Of Chats

Google designed its chat system[3] to delete "off the record" or "history off" chats within 24 hours of their creation. For Google, this was a feature, not a bug.

---

[2]  ECF No. 86 (Dec. 21, 2020); Amended ESI Order, ECF No. 99 (Jan. 21, 2021).

[3]  "Google Hangouts has been upgraded to Google Chat." Google Chat Help, https://support.google.com/chat/answer/9854901?hl=en (last visited Feb. 9, 2023). This motion uses "chats" and "instant messages" interchangeably to refer to any of Google's instant messaging products. Internal Google documents also note that "Ping = instant message

3

## A.    Google Designed Its Chats With "Off The Record" Functionality

Google uses its own software for written communications, including for chats. For more than eight years, Google's chat systems have given users the ability to control when their chats would be destroyed, while also providing administrators the ability to control that functionality. As Google explained in a 2018 slide deck, Google's "Hangout" chat platform enabled "on / off the record chat so that employees can manage the privacy of their conversations and administrators can set tailored default settings across their organization." Ex. 6, GOOG-DOJ-03649526, at -538.[4] Thus, administrators control whether the defaults for chats are "history on" or "history off," and administrators control whether the users can change the defaults. Chats created with history off were routinely destroyed by Google 24 hours after they were created. Ex. 1, Tr. 47:21–48:9, 53:4–23, 68:8–13.

## B.    Google Custodians Discussed Substantive Business Over Chat

Google custodians in this case—including likely trial witnesses—held substantive and sensitive business discussions over chat, even when (or because) the history was set to "off." This is problematic for several reasons.

*First*, Google knows that its employees use the "off-the-record" functionality to avoid discovery. In July 2019, the company concluded in a launch document that "users often turn

---

via hangouts (access via Gmail). . . . Ping (auto-delete after 24hrs)." Ex. 5, GOOG-DOJ-09508286, at -297.

[4]    *See also* Ex. 7, GOOG-DOJ-07388329, at -329 (Nov. 2014 email exchange with Sundar Pichai, stating that Hangouts for Work will include "the admin option to force Hangouts chat history in your organization to be off (or on)"); Ex. 8, GOOG-DOJ-16063406, at -409 (2015 launch document stating, "While admins could previously default all Hangouts chat conversation history to on or off, chat participants could change this on a per-conversation basis. With this new feature, admins can ensure chat participants cannot change this setting for new conversations. This also means that participants with Hangouts chat history forced to on will not be able to communicate with participants with chat history forced off.").

History off to discuss sensitive topics" and that "when[] History is Off, . . . there's a higher likelihood that sensitive information is being discussed." Ex. 2, at -657, -663. Several months later, knowing that its employees use chats for business purposes, Google recognized that "[p]eople don't want chat to be discoverable." Ex. 9, GOOG-DOJ-04773827, at -829 (Sept. 2019 document regarding "Meet & Chat UX Improvements").

Indeed, as part of Google's Communicate with Care program, **Google trained employees on the benefits of sending history-off chats**. One training document explained that "off the record" chats are "[b]etter than sending [an] email" and "not retained by Google as emails are":



Source: Ex. 1, PX-120, at -264.[5]

*Second*, likely trial witnesses have used "off the record" chats to discuss business issues relevant to this litigation. For example, Prabhakar Raghavan, a likely trial witness and head of Google Search, wrote in April 2019 that he and likely trial witnesses Ben Gomes and Hiroshi

---

[5] *See also* Ex. 10, GOOG-DOJ-01849929, at -929 ("Let's not talk about markets and market share via email."); Ex. 11, GOOG-DOJ-01846148, at-148 ("When you want to talk about stuff that has legal ramifications, such as privacy, the way to discuss it is in person, and not in email / writing of any form (unless you consult with the lawyer cats/pm first :).").

Lockheimer had used "a 'history off' chat" in discussions about "how Chrome has affected our query volume." Ex. 12, GOOG-DOJ-03467074, at -075–76. Similarly, on September 1, 2021, a Google employee wrote to Mr. Raghavan, "Following our IM chat from a few months back I spent some time thinking about search evaluation, how search should work for NBU, competition, etc." Ex. 13, GOOG-DOJ-31182834, at -834.[6]

*Third*, examples involving custodians in this litigation show that, for years, Google employees intentionally steered conversations away from email and toward chats, sometimes explicitly requesting that the history remain off. Ex. 18, GOOG-DOJ-31165518, at -518 (July 27, 2021 email thread between likely trial witnesses Anna Kartasheva and Jim Kolotouros: "[W]e should chat live so you can get the history; best to not put in email."); Ex. 19, GOOG-DOJ-03333526, at -528 (May 2019 roundtable breakfast with Don Harrison, with a comment bubble, "Since it's a sensitive topic, I prefer to discuss offline or over hangout.").[7]

## II.   Google's Document Preservation Assertions And Commitments

Google's duty to preserve documents began when it reasonably anticipated litigation. According to the company's privilege logs, beginning as early as May 2019, Google began

---

[6]   *See also* Ex. 14, GOOG-DOJ-30353728, at -729 (Aug. 25, 2021 email from Mr. Lockheimer: "continuing our IM chat yesterday during the meeting," then listing deficiencies for a Samsung project); Ex. 15, GOOG-DOJ-30252753, at -753 (Feb. 25, 2021 email, adding custodian Ariel Spivak: "JFYI per our IM chat early on the RAM topic and the GAS cost complaints . . . ."); Ex. 16, GOOG-DOJ-16258340, at -340 (Nov. 24, 2020 email to Mr. Raghavan, offering to "chat on Monday to consolidate questions [to Finance] or can hop on a quick chat later today as well"); Ex. 17, GOOG-DOJ-12949396, at -396 (Sept. 2019 chat: "maybe we should discuss this 'off the record', I think [there's] a lot to unpack here.").

[7]   *See also* Ex. 1, PX-103, at -250 (custodian Sameer Samat reminds his fellow employees in February 2021: "pls keep in mind this chat history is not off"); Ex. 20, GOOG-DOJ-13620929, at -930 (Nov. 12, 2019 email: "Kathryn and I chatted about this plan in an off-line chat today and I'm on-board."); Ex. 21, GOOG-DOJ-13690473, at -474 (July 27, 2015 email: "Happy to move to chat if that is more appropriate for this."); Ex. 22, GOOG-DOJ-05909563, at -563 (Oct. 2015 email: "On the hangout now w/Hiroshi [Lockheimer] if others want to jump in.").

withholding materials "compiled in connection with ongoing DOJ investigation." Ex. 23,

USDOJ-GOOGEX-000037, at -037.[8] The United States then issued its first Civil Investigative

Demand (CID) to Google on August 30, 2019, and issued two subsequent CIDs in October 2019.

### A.    Questionnaire On Electronically Stored Information ("ESI Questionnaire")

In October 2019, the United States sent Google a Questionnaire on Electronically Stored

Information. Ex. 24, Email from J. Alvarado-Rivera to B. Labow, Oct. 24, 2019 & relevant

attachment (ESI Questionnaire), USDOJ-GOOGEX-0000001. The questionnaire defined ESI to

"mean[] electronically stored information as the term is used in the *Federal Rules of Civil*

*Procedure*." *Id.* at -002, § I.A (italics in original). Further, the questionnaire explained that "[a]ll

responses should reflect an inquiry into actual employee practices, and not just the organization's

policies." *Id.* at -002, § I.C.

Google responded to the ESI Questionnaire on November 20, 2019, committing at the

outset to "supplement this response as needed." Ex. 3, at -061, -064. Google's answers to two

sections of the ESI Questionnaire are relevant to this motion: (1) Section II, Background,

addressing Google's written document-retention policies; and (2) Section VIII, Preservation

Efforts, addressing the actions Google claimed to take to preserve relevant documents. *See* Ex. 3,

at -064–065, -073–74.

#### 1.    Google's Written Document-Retention Policies

Section II of the ESI Questionnaire asked Google to provide the "written policies related

to document retention and management, along with the period in which the policy was in effect

and whether the policy is enforced and by whom." Ex. 3, at -064. Google responded that it "has

two primary written policies related to document retention, attached as Annexes A (General) and

---

[8]    *See also id.* (withholding as privileged a June 3, 2019 email "seeking legal advice . . . about
       potential DOJ investigation").

B (Gmail) to this response. These policies govern retention of e-mail, general documents, legal holds and other topics." Ex. 3, at -065; *see also id*. at -075–76 (Annex A), -077–78 (Annex B). Google did not reference or attach any other document-retention policies to its questionnaire responses.

Annex A, Google's December 2014 "Records Retention Policy," "covers all records; records stored by electronic means (e.g., computer data, electronic mail and voicemail) are subject to the same retention policies as paper records." Ex. 3, at -075. With respect to legal holds, the policy states that "[a] legal hold *suspends all deletion procedures* in order to preserve appropriate records under special circumstances, such as litigation or governmental investigations." Ex. 3, at -075 (italics added).

Annex B, an August 2015 document titled "Gmail Retention Policy," "applies to corporate Gmail, Chats and Hangouts." Ex. 3, at -078. The policy explains that one exception to the standard "18-month (540-day) retention period" is "[o]n the record Chats, and Hangouts with 'History' checked on, [which] will be retained for 30 days"; but "[e]mail, on the record Chats, and Hangouts with 'History' checked on, that are subject to a Legal Hold, will be preserved for the duration of the Legal Hold."[9] Ex. 3, at -077. In addition, the document contains a separate section titled "Legal Holds," which explains that, for employees under a legal hold, "email will be preserved automatically while the relevant matter is pending." Ex. 3, at -078.

---

[9]   Google employees use "on the record" and "history on" synonymously, as are "off the record" and "history off." Ex. 1, Tr. 29:6–12, 52:2–9. "History off" chats are preserved for 24 hours, then permanently destroyed; "history on" chats are subject to longer retention periods. *Id*. at 52:10–20; *see also* Ex. 25, GOOG1-00012652, at -652–653 (current chat retention policy).

Neither policy, nor Google's ESI Questionnaire responses, (1) discusses the existence of "off the record" written communications; (2) explains how "off the record" or history-off chats are treated; or (3) refers to a default, 24-hour deletion of any ESI.

### 2.    Google's Preservation Efforts

Section VIII of the ESI Questionnaire asked Google to describe the actions taken to preserve ESI potentially responsive to the CIDs. *See* Ex. 3, at -073–74. Google responded:

> Google has put a legal hold in place. *The legal hold suspends auto-deletion.* Documents, including version history, are preserved as of the collection date. The hold notice also *instructs custodians to preserve relevant documents*.

Ex. 3, at -074 (italics added).

### B.    Subsequent Communications With Google Regarding Its Chat Retention

The United States conferred with Google about the preservation and collection of materials first in the context of the United States' investigation, *see, e.g.*, Ex. 3, and again after the complaint was filed, *see, e.g.*, Ex. 26, Letter from F. Rubinstein to J. Goldstein, Jan. 15, 2021, USDOJ-GOOGEX-000079 (parties' agreement to supplement non-chat ESI). Google's communications repeatedly hid Google's continued destruction of employee chats.

### 1.    Google's New Chat Retention Policy

Although Google destroyed history-off chats for years, the company did not have a chat-specific document retention policy when this case was filed in October 2020. Ex. 27, Email from G. Safty to E. Murdock-Park, Jan. 30, 2023 & relevant attachment, USDOJ-GOOGEX-000051, at -054 ("Google did not maintain a standalone written chat retention policy before November 2020."). In November 2020, however, Google crafted a written policy calling for the destruction of history-off chats after 24 hours. Ex. 25, at -654–655. The document explained that Google's prior policy defaulted to a 24-hour deletion period when message history was set to off: "[i]n

Google today, everyone has history off by default." Ex. 25, at -655. The November 2020 policy explained that employees could change the history default. *Id*. In February 2022, Google modified this chat retention policy, removing any reference to an individual's ability to change their own default chat-retention settings. *Id*. at -656–657.

Despite Google's promise to supplement its responses, Ex. 3, at -064, Google hid its new chat-destruction policy. Google did not provide the United States with this new written policy until January 2023.

### 2.     Google's Assurances

Throughout fact discovery (December 2020–May 2022), Google repeatedly assured the United States that the company was preserving and collecting chats in the manner that it had beginning in November 2019, i.e., without noting any limits on the preservation or collection of chats. For example, in April 2021, Google confirmed "that it is producing responsive documents from the same custodial data sources as was done during the DOJ's pre-custodial investigation (G Suite files: Gmail, Docs, Sheets, Hangouts, Slides, Drive)." Ex. 28, Letter from F. Rubinstein to D. Aguilar, Apr. 26, 2021, USDOJ-GOOGEX-000009, at -013. Months later, Google wrote, "We reiterate that we are collecting and searching Google Hangouts as part of the same process we are using for email collection." Ex. 29, Letter from F. Rubinstein to A. Cohen, May 19, 2021, USDOJ-GOOGEX-000014, at -016–17.[10]

After a meeting with Google's counsel in 2021, the United States' counsel memorialized the United States' understanding, "During the May 3 meet and confer, Google confirmed that its

---

[10]  *See also* Ex. 30, Letter from A. Cohen to S. Baimel, June 30, 2021, USDOJ-GOOGEX-000026, at -026 (requesting Google identify "any limitations" on "how far back Google was able to collect" chats); Ex. 31, Letter from S. Baimel to A. Cohen, July 23, 2021, USDOJ-GOOGEX-000028, at -028–29 (identifying no limitations on collecting chats).

employees use instant messaging services such as Hangouts, and similar or predecessor services

commonly referred to as Google Chat. Google further confirmed that (1) these instant messages

are centrally stored in a database, (2) Google has collected the database for messages stored in

the cloud, and (3) Google intends to review and produce responsive material from the database."

Ex. 32, Letter from A. Cohen to F. Rubinstein, May 6, 2021, USDOJ-GOOGEX-000018, at -

024. Google did not explain, either in the meet and confer or in response to this letter, that it was

not taking these preservation actions for history-off chats.

Similarly, in March 2022, the United States challenged Google's production of chats,

noting that although "Google employees regularly use instant messaging to communicate about

relevant matters to this case," the company appeared to have produced only several hundred of

them. Ex. 33, Email from S. Baimel to D. Aguilar, Apr. 13, 2022, USDOJ-GOOGEX-000030, at

-032. In response, Google again reassured the United States that the company had followed the

parties' "agreed-upon review processes." *Id.* at -030.[11] At no point did Google reference its

policy of deleting history off chats every 24 hours.

### III. Motion For Sanctions In *Epic v. Google* Regarding Google's Destruction Of Chats

While discovery was underway in this case, Google also faced discovery in the *Epic* case

in the Northern District of California.[12] During discovery in *Epic*, the plaintiffs filed a joint

statement (and interim motion to seal) "regarding Google's preservation of instant messages."

---

[11]  Subsequently, the United States raised concerns about Google's production of chats in April 2022, requesting that Google run additional search terms across already collected messages because it had refused to provide yield rates for chats earlier in discovery. *See* Ex. 34, Letter from D. Aguilar to S. Baimel, April 26, 2022, USDOJ-GOOGEX-000033, at -033. Google refused. *See* Ex. 35, Letter from S. Baimel to D. Aguilar, May 2, 2022, USDOJ-GOOGEX-000035, at -035–036.

[12]  *Compare* ECF No. 1 (Oct. 20, 2020 complaint in this litigation), *with* Ex. 36, *Epic* Docket, at ECF No. 1 (Aug. 13, 2020 complaint), USDOJ-GOOGEX-000081, at -081; *see also* Ex. 37, *In Re Google Play Store* Docket, USDOJ-GOOGEX-000124.

Ex. 36, at ECF Nos. 265–266; Ex 37, at ECF Nos. 257–258. In October 2022, that court ordered

a briefing schedule, and on October 13, 2022, the *Epic* plaintiffs filed a Rule 37 motion for

sanctions against Google. *See* Ex. 36, at ECF Nos. 313–314; Ex. 37, at ECF Nos. 340, 348–349.

Once briefing concluded in November 2022, the court ordered a hearing on the "discovery

dispute over Google's electronic chat data." The hearing took place in January 2023. Ex. 36, at

ECF No. 338; Ex. 37, at ECF No. 375.

## IV.    After The *Epic* Sanctions Motion, The United States Raised Concerns Regarding Spoliation In This Case

After sanctions proceedings began in *Epic*, the United States requested further materials

from Google regarding its preservation and production of chats during the United States'

investigation and this subsequent litigation.[13] In a November 23, 2022 letter, the United States

sought information regarding Google's litigation hold and chat preservation policies. Ex. 38,

Letter from E. Murdock-Park to J. Schmidtlein, Nov. 23, 2022, USDOJ-GOOGEX-000038, at -

038–39. Google did not respond.

The United States wrote again, on December 5, 2022. Ex. 39, Email from E. Murdock-

Park to J. Schmidtlein, Dec. 5, 2022, USDOJ-GOOGEX-000040, at -040. Again, Google refused

to respond. On January 11, 2023, after a meet and confer regarding Google's retention policies,

Google acknowledged **for the first time** that "off the record" chats are automatically deleted

within 24 hours:

> *All chats that are not on the record are subject to deletion within*
> *24 hours and are not automatically preserved by a legal hold*;
> however, on the record Chats (which are ordinarily subject to a 30-
> day or 18-month retention period depending on the type of Chat)
> are automatically preserved for custodians on legal hold.

---

[13] Many state attorneys general overlap between this case and *Epic*. The United States is not a party to the *Epic* litigation and brings this motion on behalf of only the United States.

Ex. 40, Email from G. Safty to E. Murdock-Park, with attachment, Jan. 11, 2023, USDOJ-

GOOGEX-000043, at -047 (italics added).

## V.     The Subsequent *Epic* Evidentiary Hearing Reveals Document Destruction

On January 12, 2023, an evidentiary hearing was held in *Epic* regarding Google's

spoliation. *See* Ex. 1. The *Epic* proceedings revealed at least nine custodians overlapping with

this case, each a potential trial witness.[14] Documents and testimony from Google at the *Epic*

evidentiary hearing showed:

- Google's chat retention policy is to retain chats for 24 hours if history is off. Ex. 1, Tr. 52:10–53:6; *see also* Ex. 25, at -652, -654, -656, -658.

- For most categories of chats, Google sets the default retention history for chats to "off." Ex. 1, Tr. 53:15–23.[15]

- Employees understood that "off the record" chats would be irretrievably destroyed after 24 hours. Ex. 1, Tr. 47:21–48:17, 53:4–6, 68:8–13, and PX-120, at -264.

- Google has the "technical ability to set 'History on' as the default" setting "for all employees on legal hold" but does not do so. Ex. 1, Tr. 43:22–46:17.

- When chat history is turned on, "it applies only to messages sent after that setting change. . . . [C]hats before the setting change go away and are deleted forever after 24 hours." Ex. 1, Tr. 52:17–53:3.

- Google's internal FAQ regarding chats states that, if an employee is subject to a legal hold and "a topic . . . comes up in [a chat] conversation that's related to that

---

[14] They are Patrick Brady (Vice President, Engineering), Don Harrison (President, Global Partnerships and Corporate Development), Paul Gennai (Director, Product Management), Jim Kolotouros (Vice President, Android Platform Partnerships), Hiroshi Lockheimer (Senior Vice President), Sundar Pichai (Chief Executive Officer), Ruth Porat (Chief Financial Officer), Jamie Rosenberg (former Vice President), and Hal Varian (Chief Economist). There are also several other overlapping custodians between the cases whom the United States did not depose but are also listed in the Plaintiffs' initial disclosures. *See, e.g.*, Ex. 41, USDOJ-GOOGEX-000308, at -375, -377, -379, -381, -383 (listing Ashish Pimplapure and Chris Li, custodians in this litigation who were deposed in the preceding investigation); Ex. 1, PX-103, at -250 (February 2021 chat message from Sameer Samat, a custodian in this litigation, who told participants to "pls keep in mind that chat history is not off");

[15] The exception is chats in a "threaded room," which is a named chat with more than two people. Ex. 1, Tr. 23:21–24:3, 53:15–23.

hold, the employee is "expected to turn history on at that point if it's not already on." Ex. 1, Tr. 34:14–22, testifying regarding DXCH-2).

With respect to the *Epic* case, the evidentiary hearing also demonstrated that Google:

- "[L]eft it up to each individual Google employee to decide about" turning on the chat history. Ex. 1, Tr. 46:5–7, 132:18–21.

- Did not "turn the [history] switch on for everybody's chat related to th[e] case." Ex. 1, Tr. 45:15–17.

- Does not monitor the substance of employee conversations, meaning no one "ever audit[ed] the chats to make sure that nothing relevant to the litigation was getting missed." Ex. 1, Tr. 46:8–17, 132:22–24.

Indeed, some of the custodians in this case testified in *Epic* depositions that they regularly, if not always, chat with their retention set to history off. *E.g.*, Ex. 42, Excerpt from Kolotouros *Epic*, Dep., 481:17–482:2, GOOG1-00012694 at -704–705.

At the conclusion of the *Epic* hearing, Judge Donato stated that (1) "Google's Chat function could, in fact, have contained [relevant] evidence"; (2) "Google did not systematically preserve those chats but, instead, left the preservation of chats to the discretion of each individual who received a hold notice"; and (3) Google "never monitored the chats to see if relevant evidence was possibly being lost." Ex. 1, Tr. 132:13–24.

Judge Donato ordered Google to produce further information to plaintiffs. *See, e.g.*, Ex. 37, at ECF No. 415; Ex. 41, Excerpts from *Epic* sanctions filings at MDL ECF Nos. 429, 431, 432, USDOJ-GOOGEX-000308, at -309. In response, Google admitted that—for litigations spanning the past five years—it has never preserved all chats for relevant individuals by turning chat history on. Ex. 41, at -310 ("In brief: No.").

## VI. Plaintiffs Receive Information Regarding Google's Chat Practices

On January 30, 2023, Google for the first time provided the United States the current and prior versions of the company's chat-specific retention policy. Ex. 27, at -054; *see also* Ex. 25. The company also provided unredacted versions of the parties' spoliation briefings in *Epic*.

These included new documents, above and beyond documents publicly filed, showing that Google employees shielded sensitive conversations by holding history-off chats.[16] Google, however, still refuses to provide its litigation hold. Ex. 27, at -055.

On February 7, 2023, after yet another meet and confer, Google finally agreed to cease auto-deleting history off chats by the end of the day on February 8, 2023; this later slipped to February 9, 2023. Ex. 4, at -415.

## STANDARD

Rule 37(e) authorizes sanctions where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." FED. R. CIV. P. 37(e). The Court may "order measures no greater than necessary to cure the prejudice" in the case of negligent spoliation, *see* FED. R. CIV. P. 37(e)(1), or, upon a finding of intent, issue more severe sanctions, *see* FED. R. CIV. P. 37(e)(2).

"The standard of proof for the award of issue-related sanctions, such as the preclusion of evidence or adverse inference instructions, is a preponderance of the evidence." *Mannina v. D.C.*, 437 F. Supp. 3d 1, 6 (D.D.C. 2020).

## ARGUMENT

By intentionally destroying employee chats and making repeated misleading disclosures to the United States, Google violated Rule 37(e) and is subject to sanctions for spoliation. The

---

[16] *See* Ex. 43, GOOG1-0001160 (SEALED), at -601 (stating in a substantive group chat, "How did history get turned on again? . . . I can[']t figure out how to turn off . . . ."). *See also* Ex. 44, GOOG1-00012597, at -598 (noting two substantive policy issues and then advising that chats "in Rooms on Meet remain in perpetuity so please don't discuss either topic[] in Rooms"); Ex. 45, GOOG1-00012595, at -596 ("Reminder: do not speculate on legal matters over email or (saved) chat").

Court should schedule an evidentiary hearing to determine the appropriate trial sanctions to redress Google's misconduct.

## I.     Google Engaged In Sanctionable Spoliation

Google's routine and sustained destruction of employee chats and its misleading and false statements about this conduct merits sanctions.

### A.     Google Failed To Preserve Relevant Chat Messages

Google consciously failed to preserve relevant evidence. The daily destruction of relevant evidence was inevitable when Google set a companywide default to delete history-off chat messages every 24 hours, and then elected to maintain that auto-delete setting for custodians subject to a litigation hold. Documents from both this case and from the *Epic* proceedings demonstrate that (1) relevant chat messages of custodians should have been preserved; (2) Google failed to take reasonable steps to preserve those chat messages; and (3) the United States was prejudiced.

#### 1.     Google Had A Duty To Preserve Relevant Chat Messages

Beginning in 2019, when Google anticipated this litigation, the company had a duty to preserve employee chat messages.

As an initial matter, Google employee chats are "electronically stored information that should have been preserved in the anticipation or conduct of litigation." FED. R. CIV. P. 37(e). Google cannot dispute that chats are ESI, *see* Ex. 3; indeed, the company preserved and produced some chats. *See, e.g.*, Ex. 28, at -013; Ex. 31, at -028–29.

As to the duty to preserve, "[o]nce a party anticipates litigation, it must preserve potentially relevant evidence that might be useful to an adversary." *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 45 (D.D.C. 2019); *see* Ex. 24, at -002 (defining ESI as "electronically stored information as the term is used in the *Federal Rules of Civil Procedure*" (italics in

16

original)). Google reasonably anticipated this litigation by May 2019, when it began claiming work-product privilege over communications relating to the United States' investigation. Ex. 23, at -037. If litigation is "reasonably foreseeable for work product purposes," it is "reasonably foreseeable for duty to preserve purposes." *Siani v. State Univ. of New York at Farmingdale*, 2010 WL 3170664, at *5 (E.D.N.Y. Aug. 10, 2010); *accord Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354, 1362 (Fed. Cir. 2014). In any case, Google anticipated litigation no later than August 30, 2019, when the United States issued its CID to Google pursuant to 15 U.S.C. §§ 1311–1314. *See Gerlich v. U.S. Dep't of Just.*, 711 F.3d 161, 171 (D.C. Cir. 2013) (duty to preserve "triggered . . . by a reasonably foreseeable Department [of Justice] investigation").

Google thus had a duty to preserve chat messages since 2019, which the company acknowledged when it issued a litigation hold in response to the United States' ESI Questionnaire.[17] That preservation duty remained constant throughout the United States' investigation, after the complaint was filed, and is ongoing today in this bifurcated case. *See* ECF Nos. 86, 99 (ESI Order); *Borum*, 332 F.R.D. at 45.

## 2.   Google Failed To Take Reasonable Steps To Preserve Custodian Chat Messages

"Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). This court similarly has held that a company violates its duty to preserve by failing to suspend a

---

[17] Because Google has refused to produce a copy of its litigation hold, the exact date that it went into effect, its contents, and the custodians who received the litigation hold remain unknown to the United States. *See* Ex. 3, at -074; Ex. 27, at -055–56.

routine document destruction practice. *Vasser v. Shulkin*, 2017 WL 5634860, at *6 (D.D.C. Nov. 22, 2017) (documents destroyed "in accordance with [the company's] typical practice for retaining documents" constituted spoliation where the company "knew or should have known" that documents destroyed pursuant to that policy were relevant).

By failing to suspend the auto-delete function for employee chats, and subsequently destroying relevant ESI, Google "failed to take reasonable steps to preserve" the chat messages at issue here. Fed. R. Civ. P. 37(e).

### a) Google's Failure To Preserve

With respect to "off the record" chat messages, Google disregarded its fundamental duty to preserve potentially relevant evidence in two ways. *First*, Google defaulted all one-on-one chat sessions (and other chats as well)[18] to history off, requiring custodians to take affirmative steps to preserve relevant chats. Google employee Genaro Lopez, Google's Information Governance lead, testified at the *Epic* hearing that, although Google could have set the default to history on for all employees subject to a legal hold, it did not do so. Ex. 1, Tr. 43:22–44:9, 45:15–17; *see* Ex. 41, at -339–340.

Rather than suspend auto-deletion, Google "left it up to each individual Google employee to decide" whether they should turn history on for chats. Ex. 1, Tr. 46:5–7. Google, moreover, made no attempt to audit whether any employee had actually turned history on. Ex. 1, Tr. 46:8–17, 132:18–24. This "policy" did not work. Messrs. Rosenberg and Kolotouros both testified in *Epic* proceedings that they kept their chat history off throughout their time at Google. Ex. 1, Tr. 103:6–17; Ex. 42, 481:14–482:2.

---

[18] For example, for "threaded spaces," *i.e.* named chat rooms, "history is always on and can't be turned off," but un-named chats with more than two people can be set to "history off." *See* Ex. 25, at -658.

*Second*, Google destroyed chats that were defaulted to—or intentionally set as—history off. Twenty-four hours after every "off the record" chat occurred, Google's systems automatically, and irreversibly, deleted that chat. Ex. 1, Tr. 53:4–6.

Because Google did not suspend the auto-deletion of employee chats, it failed to take reasonable steps to preserve that evidence. *Vasser*, 2017 WL 5634860, at *5; *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977-79 (N.D. Ill. 2021) ("[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI."). Moreover, by making no real effort to ensure employees were preserving chat messages, Ex. 1, Tr. 46:5–17, Google further abdicated its preservation duties. *See Samsung*, 881 F. Supp. 2d at 1147.

No litigant is permitted to disregard the Federal Rules by designating an entire category of documents as "off the record," creating their own exemptions to document-preservation requirements. Indeed, Google's decision this week to finally stop auto-deleting chat messages recognizes that the company could have, and should have, done this years ago.

### b) Google Cannot Abdicate Its Burden To Preserve To Its Employees

Google may argue that it relied on individual custodians to manually preserve history-off chats. But that argument should be rejected for two reasons.

*First*, it is and was Google's obligation to suspend auto-deletion policies; it is no defense to suggest that individual custodians—Google employees—owned that obligation. *Samsung*, 881 F. Supp. 2d at 1137 ("[I]t generally is recognized that when *a company or organization* has a document retention policy, *it* is obligated to suspend that policy . . . .") (cleaned up) (italics added). Google designed the chat systems and document preservation policies at issue here.

And Google elected to set the default to history off for many chats. Indeed, Google maintained the "off the record" default despite employee complaints that the default caused them to lose important conversations.[19]

*Second*, Google cannot escape sanctions by shifting the blame to its custodians. For spoliation purposes, destruction of evidence by Google's employees is attributable to the company. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 506–07 (E.D. Va. 2011) ("A party may be held responsible for the spoliation of relevant evidence done by its agents."). Courts commonly sanction corporate litigants for the spoliation of their employees and executives. *See, e.g.*, *Borum*, 332 F.R.D. at 42 (emails deleted by employee). Accordingly, Google violated its duty to preserve potentially relevant evidence on a daily basis from May 2019 through the present.

### 3. Google's Spoliation Prejudiced The United States

By failing to preserve evidence relevant to this case, Google prejudiced the United States. FED. R. CIV. P. 37(e)(1). Because Google's spoliation was intentional, the Court can presume prejudice. *Id.* at 37(e)(2)(A). But regardless of that presumption, the prejudice here is substantial: Google destroyed written records covering nearly four years of employee communications, and those records likely would have been especially probative.

---

[19] For example, a May 2021 survey result complained that "the auto history off feature that deletes chats after 24 hours unless you remember to turn history on is limiting the functionality of the chat. I've missed important notes that got deleted from chat. There is also no way to nicely copy chat messages that I don't want to be deleted." Ex. 47, excerpt from GOOG-DOJ-31025228, "GG21 Comments" at F586; *see also* Ex. 48, GOOG-DOJ-07515462, at -462 ("Going to try and summarize the discussion I had over chat Monday afternoon with Michael and Matthew which sadly has been lost to the Pit Of Chat-History-Off-By-Default."); Ex. 49, GOOG-DOJ-21971845, at -846 ("Hangouts's no-history-by-default setting can be killer.").

"Once a court has determined that future litigation was reasonably foreseeable to the party who destroyed relevant records, the court must then assess . . . whether the destroyed records were likely relevant" to the case. *Gerlich*, 711 F.3d at 171. "An evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the [ESI's] importance in the litigation." *Borum*, 332 F.R.D. at 47. "To show prejudice resulting from the spoliation, a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Id.* (quotation omitted).

Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other"; rather, it "leaves judges with discretion to determine how best to assess prejudice in particular cases." *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *20 (S.D.N.Y. June 20, 2019) (citing Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment); *see also* Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment ("placing the burden of proving prejudice on the party that did not lose the information may be unfair").

### a) The Destroyed Chats Contained Relevant Business Discussions

The deleted chats contained evidence relevant to this case. Key custodians in this litigation—including likely trial witnesses Messrs. Rosenberg, Kolotouros, and Raghavan—discussed relevant business matters over chat. For example, at the evidentiary hearing, Mr. Rosenberg testified about his chats with Mr. Kolotouros, regarding "Project Banyan, . . . a potential collaboration with Samsung on app stores" worth hundreds of millions of dollars[20]—chats that he believed no longer existed because his chat history was turned off. Ex. 1, Tr. 91:6–96:7 (testifying regarding PX-37); *see also* Ex. 1, Tr. 96:8–99:2 (Rosenberg testimony regarding

---

[20] Project Banyan is also of interest in this litigation—for example, Mr. Rosenberg was shown Project Banyan documents during his deposition in this case.

other substantive conversations over chat); Ex. 13, at -834 (email to Raghavan from Google employee discussing their prior IM chat "about search evaluation, how search should work . . . competition, etc.").

Indeed, the sheer volume of destroyed documents is remarkable. The company destroyed potentially relevant chats for 120 custodians from May 2019 through February 8, 2023—more than 1,300 days. Despite the substantial evidence that Google employees conducted important business over chat, as of the close of fact discovery in May 2022, Google had produced only 819 chats in this case—0.1% of Google's productions. Ex. 34, at -033; *see, e.g.*, Ex. 1, Tr. 89:24–90:9 (Rosenberg testimony that he used chat multiple times a day over his career at Google).

At the *Epic* hearing, Judge Donato noted that the chats destroyed by Google could have "contained evidence relevant, as 'relevance' is defined in the Federal Rules of Evidence, to this case." Ex. 1, Tr. 132:13–17. And at *Epic*'s closing arguments, Judge Donato stated: "We've seen all the evidence, Google training and other documents saying: Hey, if it's sensitive, you might want to use Chat. It's plain as day to any objectively reasonable lawyer . . . that Chat is going to contain possibly relevant evidence." Ex. 50, Tr. 240:15–20 (excerpts from January 31, 2023 closing argument).

This Court should reach the same conclusion and find that the destroyed chats contained relevant evidence. By destroying relevant written communications, Google prejudiced the United States. *E.g., Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960–61 (9th Cir. 2006) (prejudice where "any number of the [deleted] files could have been relevant to [the] claims or defenses").

### b)   The Destroyed Chats May Have Been Especially Probative

These deleted chats may have contained especially probative information and revealed candid discussions between key Google executives on relevant topics. As a result, the prejudice to the United States is substantial. *Gerlich*, 711 F.3d at 171 (prejudice analysis is "unavoidably

imperfect" when the evidence at issue has been destroyed and noting "care should be taken not to require too specific a level of proof") (quotations omitted); *Borum*, 332 F.R.D. at 47 (noting the degree of prejudice should be analyzed "along a continuum," with Rule 37 providing "judges with discretion to determine how best to assess prejudice in particular cases").

Common sense dictates that chats are often a rich source of evidence: employees tend to be more candid in informal modes of communication than they are over email or in presentations and memos. Google acknowledged as much at the *Epic* hearing, agreeing with the court when it asked whether chats might include "[t]hings that [employees] may not necessarily want to put in an e-mail." Ex. 1, Tr. 47:2–10. That is at least one reason why Google employees move conversations to history-off chats that are not preserved. *See, e.g.*, Ex. 12, at -075; Ex. 2, at -657, -663; Ex. 1, PX-103, at -250.

Chats are an even more significant source of evidence under the circumstances here, because Google has instructed employees to avoid discussing sensitive issues over email, including issues related to competition. Ex. 10, at -929 ("Let's not talk about markets and market share via email."); Ex. 1, PX-120, at -264 (training employees that "off the record" chats are "[b]etter than sending [an] email").

By deleting these chats, Google deprived the United States of candid, contemporaneous communications among Google's employees and key executives. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) ("fact that the emails of key Samsung witnesses were among those destroyed" establishes prejudice). Of course, the United States cannot prove the precise contents of the deleted chats. But that underscores why the duty to preserve exists. *Perez v. U.S. Postal Serv.*, 2014 WL 10726125, at *3 (W.D. Wash. July 30, 2014) ("Where emails and documents are missing entirely due to a party's failure to preserve and their relevance

23

cannot be directly ascertained, a party can hardly assert any presumption of irrelevance to the destroyed documents." (cleaned up)).[21]

Accordingly, Google's failure to preserve employee chats deeply prejudiced the United States.[22]

## B.    Google's Conduct Warrants Substantial Sanctions

Google's conscious disregard of its obligation to preserve potentially relevant evidence merits sanctions under Rule 37(e). An evidentiary hearing coupled with pre-hearing discovery will assist the Court in fashioning the appropriate sanction.

### 1.    Google's Conduct Is Sanctionable Under Rule 37(e)(1)

Google's conduct is sanctionable under Rule 37(e)(1) because it "failed to take reasonable steps to preserve" the chat messages at issue and those chat messages "cannot be restored or replaced through additional discovery," resulting in prejudice to the United States. FED. R. CIV. P. 37(e); *see Borum*, 332 F.R.D. at 46 (Rule 37(e)(1) satisfied where some ESI is "irremediably lost"); Ex. 1, Tr. 53:4–6 ("history off" chats are irretrievable). Notably, under Rule 37(e)(1), the Court can impose sanctions to "cure the prejudice" resulting from the lost evidence regardless of whether Google acted intentionally (which it did, as described below).

The range of curative measures available under Rule 37(e)(1) is "quite broad" and "the severity of given measures must be calibrated in terms of their effect on the particular case." FED. R. CIV. P. 37(e)(1) advisory committee's note to 2015 amendment. For example, curative measures may include "permitting the parties to present evidence and argument . . . regarding the

---

[21] *DR Distribs.*, 513 F. Supp. 3d at 982 ("The fundamental problem with spoliation issues is that the evidence is gone, so, of course, a party cannot point to a specific communication.").

[22] The United States brings this motion now after learning of Google's misconduct, engaging in lengthy conferral, and exhausting all other options for relief. Google's misrepresentations are the reason the spoliation issue was not resolved or avoided at the outset of this case.

loss of information," *id.*, and other "evidentiary curative measures," *see DR Distribs.*, 513 F. Supp. 3d at 982 (imposing Rule 37(e)(1) sanctions including a jury instruction and evidentiary preclusion); *Borum*, 332 F.R.D. at 49 (under Rule 37(e)(1), districts courts have "broad discretion to impose sanctions" and "[t]he remedy should fit the wrong to be redressed").

The United States respectfully suggests that curative measures can be best determined after Google provides the information requested by the United States and the Court holds the requested evidentiary hearing.

### 2. Google's Conduct Is Sanctionable Under Rule 37(e)(2)

Google's spoliation is also sanctionable under Rule 37(e)(2), because Google's conduct reflects the requisite intent to deprive the United States of the custodians' chat messages. "[A] party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (citing cases).[23] Google's conduct meets this standard because the company (a) knowingly destroyed history-off chat messages; (b) directed sensitive conversations to chats with the knowledge that those messages would not be discoverable; and (c) misled the United States to conceal the company's chat-destruction policy.

---

[23] *Accord, e.g., Doe v. Wesleyan Univ.*, 2022 WL 2656787, at *15 (D. Conn. July 8, 2022) ("[W]hether the spoliator affirmatively destroys the data, or passively allows it to be lost, that party may be sanctioned for the spoliation of evidence" under Rule 37(e)(2).). Upon a finding of intent, "no separate showing of prejudice is required because 'the finding of intent . . . can support . . . an inference that the opposing party was prejudiced by the loss of information.'" *Borum*, 332 F.R.D. at 48 (quoting FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment).

### a)    Google Knowingly Failed To Preserve Chat Messages

Rule 37(e) "makes clear that it is the party's 'fail[ure] to take reasonable steps to preserve' ESI, . . . *with the intent* to deprive another party from using it in litigation," that supports sanctions under Rule 37(e)(2). *Sines v. Kessler*, 2021 WL 4943742, at *10 (W.D. Va. Oct. 22, 2021) (quoting Rule 37(e)(2) (italics added)). Accordingly, a party that fails to preserve relevant evidence, with the intent to deprive an adversary of that information, is subject to sanctions under Rule 37(e)(2). *Accord Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017).

Google's failure to preserve ESI is marked by calculated decisions at every turn: creating the 24-hour auto-delete for history-off chats; setting many chats to a history-off default; and keeping auto-delete enabled in the face of anticipated, and then ongoing, litigation. Indeed, after Plaintiffs filed the complaint in this case, Google doubled down on its "off the record" policy by creating a separate, chat-specific retention policy in November 2020—weeks after this lawsuit was filed—that explicitly states that history-off messages would be destroyed after 24 hours. Ex. 25, at -652–653. Google therefore cannot claim chat messages were deleted "unknowingly or accidentally." *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, 2017 WL 1422364, at *11 (D.D.C. Apr. 19, 2017).

*Sines* is instructive. There, the court found a litigant violated Rule 37(e)(2) by undertaking "minimal" efforts to preserve a cell phone and other sources containing relevant information. 2021 WL 4943742, at *10. The litigant "did nothing to guard against the known risk that the phone or its contents might be lost or destroyed." *Id.* And "despite being aware of his preservation obligations," the defendant demonstrated a "repeated failure over a period of years to confirm that" relevant evidence was being preserved. *Id.*

26

So too here. Google knew that its employees discussed substantive business over chat, and that those chats would be irreversibly destroyed after 24 hours. Yet, Google "did nothing" to suspend the auto-delete policy, nor to monitor whether employees were preserving potentially relevant chats. *Moody*, 271 F. Supp. 3d at 431. Further, not only did Google's spoliation unfold over several years, *see Sines*, 2017 WL 4943742, at *10, but the company's spoliation is "even more egregious" because Google continued to destroy history-off chat messages even after litigation began, *see Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019).[24]

Any doubt about Google's intent is reflected in the company's refusal to change (or even reveal) its auto-delete policy in the face of Epic's challenge in 2022 or the United States' subsequent inquiries. Only when faced with this sanctions motion did Google respond and, ultimately, agree to stop destroying documents.[25] In short, Google knowingly destroyed relevant documents until the risk of sanctions made such destruction untenable.

### b)    Google And Its Employees Intentionally Exploited Its "Off The Record" Chat Policy

The facts above are sufficient to establish Google's intentional spoliation under Rule 37(e)(2). But there is further evidence of Google's intent to deprive: the company's employees knew that history-off chats were not being preserved and exploited that fact to shield sensitive information from discovery. *Sines*, 2021 WL 4943742, at *3 ("The court may consider the entirety of the responsible party's actions, or lack thereof, in determining whether he had the requisite intent to deprive.") (quotation omitted).

---

[24] *See Moody*, 271 F. Supp. 3d at 431 (finding intent to deprive where, "knowing they had a duty to preserve" the evidence at issue, defendants "allowed the original data on the event recorder to be overwritten," and never confirmed "that the data had been preserved in another repository").

[25] Google's ongoing document destruction is particularly troubling given that this case is bifurcated; Plaintiffs' success on the liability phase will lead to discovery regarding remedy.

27

When Google warned employees against discussing sensitive matters over email, the company encouraged them to do so instead through off-the-record chats. Ex. 1, PX-120, at -264. That is because—although chats are written communications and ESI, just as emails are— Google destroyed chats but not emails.

Employees followed Google's direction. For example, one chat went blank after custodian Sameer Samat reminded another employee "pls keep in mind this chat history is not off." Ex. 1, PX-103, at -250. Similarly, Mr. Rosenberg noted about Samsung negotiations: "There is one additional nuance which is best discussed live or over IM (feel free to ping if you want.)." Ex. 51, GOOG-DOJ-16622463, at -463; *see also, e.g.*, Ex. 19, at -528 ("Since it's a sensitive topic, I prefer to discuss offline or over hangout.").

Google's exploitation of off-the-record chats belies any notion that this destruction was an honest mistake or an oversight.

> **c)      Google Misled The United States Into Believing That It Was Retaining All Relevant Chat Messages**

Further, Google's misrepresentations about its 24-hour destruction policy also support a finding of intent. *See Borum*, 332 F.R.D. at 49 (noting that a failure to "promptly disclose[] the loss of ESI" may support a finding of intent to deprive) (citing *O'Berry v. Turner*, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) ("irresponsible and shiftless behavior," considered cumulatively, can establish intent to deprive)). Google never disclosed to the United States or to this Court that the company was destroying ESI every 24 hours.

Google made a series of misleading statements to the United States. In addition to never referencing the 24-hour deletion of history-off chats in its ESI Questionnaire response, Google misrepresented that its legal hold suspended auto-deletion. Ex. 3, at -074. When the United States followed up multiple times during discovery— including in April, May, and July of 2021,

and in April 2022— Google continually assured the United States that the company was preserving and producing relevant documents. Exs. 28, 29, 31, and 33. And, critically, Google continued to hide its 24-hour destruction policy even after the *Epic* plaintiffs confronted Google with spoliation concerns.

## II.    The Court Should Hold An Evidentiary Hearing To Determine What Sanctions Are Appropriate

To determine appropriate sanctions—and to bring Google's conduct fully into the light— we respectfully request that the Court (1) schedule an evidentiary hearing and (2) order Google to produce information before the hearing, to facilitate the presentation of evidence.[26]

The Court has discretion to order evidentiary proceedings to determine the appropriate remedy for spoliation. *See, e.g., In re Dynex Cap., Inc. Sec. Litig.*, 2011 WL 2581755, at *3 (S.D.N.Y. Apr. 29, 2011); ECF No. 353 at 58:10–23 (May 12, 2022 status conference in which the Court stated it would be "reluctant to go down this [sanctions] road . . . without at least having some kind of evidentiary hearing about this"). Such a hearing would allow the United States to demonstrate why broad sanctions against Google are necessary and appropriate.

To permit the United States to properly prepare for the hearing, the Court should order Google to provide two categories of materials:

*First*, that Google produce its litigation hold and any reminder notices. This will demonstrate what Google told its employees and when, *see* Ex. 38, at -039, and Google refused

---

[26] The United States is not seeking to reopen fact discovery, and this motion does not affect the trial date nor the outstanding summary judgment and *Daubert* briefing; this motion only seeks to determine the appropriate sanctions to redress Google's destruction of written communications. *See, e.g.*, *GMS Indus. Supply, Inc. v. G&S Supply, LLC*, 2022 WL 853626, at *5 (E.D. Va. Mar. 22, 2022) (post-discovery sanctions motion timely where, *inter alia*, "the relief sought will not entail reopening discovery or delaying trial."); *Goodman*, 632 F. Supp. 2d at 509 (similar).

to provide it, Ex. 40, at -047. The Court should also order Google to produce signed declarations from each of Google's document custodians in this case, stating (1) whether and under what circumstances they turned history on for any specific chats and (2) whether and under what circumstances they participated in history-off chats from May 1, 2019, to the present.

*Second*, that Google produce a corporate witness or witnesses to sit for a Rule 30(b)(6) deposition in advance of the evidentiary hearing. The requested Rule 30(b)(6) deposition would cover five topics: (1) Google's preservation policies and litigation hold in this case; (2) the extent to which custodians in this case conducted "history off" chats; (3) any efforts by the custodians in this case to move conversations to Google's chat platform with knowledge that those chats were not being preserved; (4) Google's efforts, if any, to monitor its employees and ensure the relevant chats were being preserved; and (5) Google's stated efforts to now suspend the 24-hour auto-delete of "history off" chats for custodians in this litigation.[27]

Ordering this further information is warranted. With respect to the litigation hold, Google has repeatedly used its litigation hold as both a sword and a shield, contending that this hold shows Google's compliance with its discovery obligations yet refusing to disclose the hold or its subsequent reminders. With respect to declarations from Google's document custodians, Google told the *Epic* court that it could not provide detailed information or data regarding custodians' use of history-on chats, because Google does not track that information; the information that Google did provide on its employees' chat practices in response to the court's questions was anonymized.[28] *See* Ex. 41, at -309–325, -330–331. Declarations from the custodians themselves

---

[27] The proposed Rule 30(b)(6) schedule is attached to this motion as Exhibit 52.

[28] Google's interrogatory responses in *Epic* demonstrate that very few employees in that case "recall that they have preserved Google Chats by turning 'history on' during their Custodial Period." Ex. 41, at -357, 359, -375–378. Other Epic custodians (who do not recall whether they preserved chats) recall that they may have used chats for business purposes, however—

are thus necessary to determine the extent of history-off chat practices by custodians in this case.
Finally, 30(b)(6) testimony is necessary to permit the United States to capture—as much as
possible—any gaps in the declarations.

For these reasons, the requested materials will facilitate presentation of evidence at the
proposed hearing and will provide the Court with a fulsome factual basis to evaluate the proper
sanctions to redress Google's misconduct and to deter similar such conduct in the future.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court hold that
Google violated Rule 37(e) and order an evidentiary hearing to establish the factual record
necessary to fashion an appropriate remedy for Google's misconduct.

---

including custodians in this litigation such as Messers. Harrison, Li, Lockheimer, Pichai,
Pimplapure, and Rosenberg, who are custodians in this litigation. *Id*. at -369, -382–383.

Dated: February 10, 2023          Respectfully submitted,


By:    */s/ Kenneth M. Dintzer*
Kenneth M. Dintzer
Erin Murdock-Park (DC Bar # 1019993)
Joshua Hafenbrack (DC Bar #1017128)
Karl E. Herrmann (D.C. Bar #1022464)
U.S. Department of Justice, Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 227-1967
Kenneth.Dintzer@usdoj.gov
Erin.Murdock-Park@usdoj.gov
Joshua.Hafenbrack@usdoj.gov
Karl.Herrmann@usdoj.gov

*Counsel for Plaintiff United States of America*