**Pages 1 - 48**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

```
                              )
                              )
In Re: Social Media           )
Adolescent Addiction/Personal )    NO.  22-md-03047-YGR
Injury Products Liability     )
Litigation                    )
                              )
                              )
_____)
```

                              Oakland, California
                              Friday, March 3, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        SEEGER WEISS LLP
        55 Challenger Road, 6th Floor
        Ridgefield Park, NJ 07660
   BY:  **CHRISTOPHER A. SEEGER, ESQUIRE**
        **JENNIFER R. SCULLION, ESQUIRE**

        ANDRUS ANDERSON LLP
        155 Montgomery Street, Suite 900
        San Francisco, CA 94104
   BY:  **JENNIE LEE ANDERSON, ESQUIRE**

        LIEFF CABRASER HEIMANN AND BERNSTEIN,
        LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111
   BY:  **LEXI HAZAM, ESQUIRE**

        MOTLEY RICE LLC
        401 9th Street NW, Suite 630
        Washington, DC 20004
   BY:  **PREVIN WARREN, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                Official Reporter

**APPEARANCES CONTINUED:**

For Defendants Meta Platforms, Inc.; Facebook Holdings, LLC;
Facebook Operations, LLC; Facebook Payments, Inc.; Facebook
Technologies, LLC; Instagram, LLC; Siculus, Inc.; Mark Elliott
Zuckerberg:

                        COVINGTON & BURLING LLP
                        1999 Avenue of the Stars, Suite 3500
                        Los Angeles, CA 90067
        BY: **ASHLEY SIMONSEN, ESQUIRE**

                        COVINGTON & BURLING LLP
                        One CityCenter
                        850 Tenth Street, NW
                        Washington, DC 20001
        BY: **PAUL SCHMIDT, ESQUIRE**
             **PHYLLIS JONES, ESQUIRE**

For Defendant Snap Inc.:

                        MUNGER, TOLLES & OLSON LLP
                        560 Mission Street, 27th Floor
                        San Francisco, CA 94105
        BY: **JONATHAN BLAVIN, ESQUIRE**

For Defendants TikTok, Inc.; ByteDance, Inc.:

                        FAEGRE DRINKER BIDDLE & REATH LLP
                        300 North Meridian Street
                        Indianapolis, IN 46204
        BY: **ANDREA PIERSON, ESQUIRE**

                        KING & SPALDING LLP
                        1180 Peachtree Street
                        Atlanta, GA 30309
        BY: **GEOFFREY DRAKE, ESQUIRE**

For Defendants Alphabet Inc.; Google LLC; YouTube, LLC:
                        WILLIAMS & CONNOLLY LLP
                        680 Maine Avenue, SW
                        Washington, DC 20024
        BY: **JOSEPH G. PETROSINELLI, ESQUIRE**

<u>**Friday - March 3, 2023**</u>                                    **9:09 a.m.**

**P R O C E E D I N G S**

---0O0---

**THE CLERK:**  Now calling 22-md-03047-YGR, In re:
Social Media Adolescent Addiction/Personal Injury Products
Liability Litigation.

Will counsel please come forward.

**THE COURT:**  Okay.  And as will be the practice, the
record, in terms of who is here for the parties, will be
reflected in the document that was sent to us in terms of
attendees.  If you're not on that document and you want to be
noted in the record, then make sure that you send us an amended
list.  Okay?

All right.  We have a lot to do today.  I'll go through
the issues in the Case Management Statement.  We need to deal
with the implementation order, the common benefit order, the
guardians ad litem, sealing orders, medical record collections,
to name a few; right?  Just a short list of things to do this
morning.  A little bit different from my bank robbery yesterday
or, I should say, this week.

So who are we going to have -- probably different people
for different issues.

Let's see.  Who is going to start on the plaintiffs' side
giving me some updates in terms of who is going to be doing
what?

1      **MS. HAZAM:**  Your Honor, thank you.  Lexi Hazam for
2  plaintiffs.
3      We have divided presentations today by topic.  Going in
4  the order of the status conference statement, the first topic
5  is the plaintiffs' selection of their best claims for motions
6  to dismiss, and Mr. Warren will handle that topic for us.
7      The next topic is the specifications for defendants'
8  motion to dismiss.  That is agreed upon.  Happy to address that
9  if Your Honor would like.
10      That is followed --
11      **THE COURT:**  I would always like -- when people tell me
12  they want to file hundred-page briefs, yes, I would like.
13      **MS. HAZAM:**  Fine, Your Honor.  I'm happy to address
14  that when Your Honor sees fit.
15      Should I continue?
16      **THE COURT:**  No.  We're going to go through the list.
17  Go ahead.
18      **MS. HAZAM:**  Third would be the Short Form Complaint
19  and implementation order.  Ms. Jennifer Scullion of Seeger
20  Weiss will handle that for plaintiffs.
21      **THE COURT:**  Okay.
22      **MS. HAZAM:**  Number 4, the proposed coordination order.
23  I can handle that for plaintiffs to the extent Your Honor wants
24  to discuss it.
25      **THE COURT:**  Okay.

1      **MS. HAZAM:**  Number 5, defendants' proposed filing

2   requirements.  I will also handle that for plaintiffs.

3      **THE COURT:**  Okay.

4      **MS. HAZAM:**  Number 6, discovery-related orders.  For

5   the most part, I will also handle that for plaintiffs.  Those

6   are generally updates on status of meet-and-confers and

7   proposed deadlines.

8      Number 7, mediator selection.  Mr. Seeger will handle that

9   for plaintiffs.

10     Number 8, proposed common benefit order.  That part of

11  number 8 shall be handled by Mr. Seeger and the proposed

12  sealing order shall be handled by Mr. Warren for plaintiffs.

13     And finally, other updates any of us are prepared to

14  handle, Your Honor.

15     **THE COURT:**  Okay.

16     Ms. Jones, do you want to come to the mic and let me know

17  how you have broken it up.  If it's the same issues, that's

18  great.  If there are other issues, let me know.

19     **MS. JONES:**  Certainly.  And good morning, Your Honor.

20  Nice to see you.

21     For the priority claims issue, that will be Mr. Schmidt

22  speaking on behalf of the defendants.

23     To the extent that the Court would like to discuss the

24  proposed specifications for the motion to dismiss briefing, I

25  suspect Mr. Schmidt will also cover that.  The Short Form

1    Complaint topic will also be Mr. Schmidt.

2         On the topics of the coordination order and the

3    defendants' proposed filing requirements, that will be me.

4         For any discovery-related orders, Ms. Simonsen will be

5    arguing or addressing those for the Court.

6         Mr. Schmidt will be handling any discussion related to

7    mediators.

8         Ms. Pierson will be handling any discussion related to the

9    common benefit order.

10        And to the extent that there are other updates, I will

11   take a stab at handling those for the defense.

12        **THE COURT:**  Okay.  And "Pierson," I'm not seeing --

13   oh, "Pierson," there it is.  Great.

14        Then let's start with -- we'll do it in your own order,

15   and then I'll go back and check my own notes.  We'll start with

16   the plaintiffs' selection.  I take it Mr. Warren, Mr. Schmidt

17   to the mics.

18        Okay.  As I understand it from your Case Management

19   Statement, plaintiff has picked 5:  Count 1, strict liability

20   design; Count 2, failure to warn; Count 3, negligent design;

21   Count 4, negligent failure; and Count 10, negligence per se;

22   correct?

23        **MR. WARREN:**  That's correct, Your Honor.

24        **THE COURT:**  All right.  Mr. Warren, we have a lot to

25   do.  I'm going to make this real simple.

1    The suggestion that I'm going to look at one state is not

2  acceptable, period.

3    I thought I explained to all of you when you were here

4  that this is a massive case, and we cannot do this piecemeal.

5  If I'm going to look at whether or not the plaintiffs have

6  stated a claim under strict liability design, I am going to

7  look at all the law with respect to that issue.  It makes no

8  sense to me that somehow I would look under New York law and

9  then avoid and ignore the rest of the law of the United States.

10    What I suggested was that when you brief this, you can do

11  majority rules, you can do minority rules, and perhaps you have

12  outliers, but I am not going to take the approach that you are

13  suggesting, and I see no logical reason to do so.

14    You can respond.

15    **MR. WARREN:**  Very well, Your Honor.

16    Well, we -- I believe we're trying to follow how we

17  interpreted Your Honor's direction and nothing more, and

18  hearing what you're saying, we'll proceed on that basis.

19    The only thing I would add is that in our examination of

20  these various laws, they do not, unfortunately, bucket cleanly

21  into majority or minority states.  We looked for patterns like

22  that, and we didn't find it quite so cleanly, I think in part

23  because many states have not addressed the issue of whether an

24  app like the ones at issue here are or not products for

25  purposes of product liability law.  But we take Your Honor's

1    direction and --

2         **THE COURT:**  And it could be that there is no law.

3    Perhaps there is no law, in which case there is no law for any

4    state, in which case, you know, maybe we're looking at the

5    Restatement.  I don't know.  But what I don't want to do is be

6    myopic when you were seeking to represent adolescents across

7    the United States.

8         **MR. WARREN:**  Of course.  Of course, Your Honor.  And

9    we never understood that we would be taking this piecemeal in

10   the sense of having to brief 50 states.

11        What we thought your direction was, is that we would pick

12   the best states on the best claims so that we could ascertain

13   whether discovery could be opened, and then in a second phase,

14   defendants would of course be able to structure their motion to

15   dismiss however they saw fit, to group the remaining states in

16   however they saw fit, and present that to the Court.

17        **THE COURT:**  Yeah, but I'm not going to open discovery

18   if -- if 49 states say there's no strict liability and one

19   state says there is.  Well, perhaps I could open discovery for

20   one state for 10 plaintiffs or whatever you have, but I'm not

21   going to open discovery for all plaintiffs in all states if 49

22   states don't say that you have a claim.  It makes no sense.

23        **MR. WARREN:**  Very well, Your Honor.  We understand

24   your direction.

25        **THE COURT:**  Right.  And principles of federalism here

1    control.  I mean, the reason that I'm trying to have you narrow

2    is so that we can continue to make some progress, but it

3    doesn't mean that it's easy.

4         **MR. WARREN:**  Very well.  We understand what you're

5    saying, and we, you know -- we're confident we have the better

6    of the argument in all the states, and so we'll brief that in

7    this round.

8         And, again, we were doing nothing more than trying to

9    interpret the direction we thought you had given about picking,

10   you know, quote, whoever's stated as I don't care, but we will

11   do as you say and of course adjust it.

12        **THE COURT:**  Let me also say, just as a general

13   matter -- and I, frankly, am not exactly sure why lawyers do

14   it.

15        You all quote things back to me all the time, but I have

16   in my head what I thought, and context matters.

17        So I may have said something in hour one of our

18   conversation, and after spending three hours with you, at the

19   end of it, I may have said something entirely different at the

20   end.

21        So I can appreciate that you're -- that perhaps I, in

22   fact, said that, but I didn't go back to check the transcript

23   to determine what the entire context of my statement was.  And

24   I'm letting you all know now I won't.  I just don't have time

25   to do that.

1    So I don't know if you do it to get points with the other

2    side or what it is -- why it is that you all do that.  So why

3    is it that you do that?

4         **MR. WARREN:**  Well --

5         **THE COURT:**  I mean, it's not as if I wasn't here.

6         **MR. WARREN:**  Your Honor, if I may, we really were not

7    trying to engage in some exercise of cherry-picking the

8    transcript and, you know, having some selective reading.  We

9    really were trying to interpret what we thought your direction

10   was, and, you know, that took a little bit of work, and we

11   understood part of the issue to be you had asked us to pick our

12   five or six, quote, best claims, and that, I think, was

13   something that came through repeatedly.  What we struggled with

14   was the --

15        **THE COURT:**  Right.  And I think that these are -- that

16   these are the five.

17        **MR. WARREN:**  Right.  And we were just struggling to

18   understand how to take that direction and marry it to the fact

19   that state law varies, and clearly we missed and misunderstood

20   what you were going for, and -- and, you know, there it is, but

21   there wasn't anything -- there wasn't any intentionality other

22   than just trying to determine what all you wanted us to do.

23        **MR. SCHMIDT:**  On our end, Your Honor, I would simply

24   say when Your Honor makes statements about issues, this issue

25   or something else, we don't want Your Honor to think we're not

1    listening to what Your Honor said, and so we were trying to,

2    where we did quote, quote it in terms of trying to be

3    responsive to what Your Honor said.  We obviously didn't mean

4    it to come across as kind of snipping for advocacy purposes,

5    and we'll be guided by that comment, obviously, going forward.

6    But we want the Court to know that we're trying to be

7    responsive to what the Court's telling us and not just reargue

8    issues, not just kind of come back on points Your Honor has

9    already spoken on.

10           **THE COURT:**  Well, then let's do it this way because I

11    don't -- I mean, a huge portion of your CMC statements were my

12    own statements back to me, so do this:  Put a footnote and put

13    a cite, and if I need to see it, I'll go back and see it.

14        But I can also tell you -- you're very good lawyers -- I

15    expect that what you're trying to do is pay attention to what I

16    say.  I don't need to spend time reading my own quotes back to

17    myself.

18           **MR. SCHMIDT:**  Understood, Your Honor.

19           **MR. WARREN:**  Understood.

20           **THE COURT:**  Okay.  All right.

21        So specifications for the brief.  I don't want there to be

22    any precedent that because there are multiple defendants, you

23    are allowed to just take the number of defendants that you have

24    and multiply that by 25 for purposes of determining how many

25    pages of a brief you get.  The whole point is to be more

1    efficient.  And I don't want that to be a precedent because I

2    have patent cases where I don't let that happen where I have a

3    dozen patent cases and I make all of the defendants file one

4    brief that deals with, let's say, the 101 motion or the, you

5    know -- some basic motion to dismiss, and they get the normal

6    pages and then they get about five extra pages to identify

7    anything that's specific to that defendant.  Otherwise, why

8    would I consolidate?  Why would I try to coordinate?  The point

9    is to be more efficient in your writing.

10        That said, I haven't researched these five states.  It

11   sounds like -- not five states, but five claims.  It sounds

12   like you have challenges in categorizing or majority vs.

13   minority rules or whatever.  Is that right?

14            MR. WARREN:  Yes, Your Honor.

15            MR. SCHMIDT:  I don't know if -- on our end if we're

16   going to see those kind of distinctions.  I think what we'll

17   see is more what Mr. Warren was alluding to, that there will be

18   some states that have developed law and some where we are

19   drawing on principles like the Restatement.  But there will be

20   an effort to try to bring the cases together, either in one

21   bucket or in multiple buckets, if that applies.

22            MR. WARREN:  Your Honor, if I may, the -- now that

23   we're taking Your Honor's direction that all 50 states will be

24   at issue with these claims, we do think there is some risk that

25   with 25 pages per defendant, they will have the ability to

1    really expound and dig in to each of those variations, whereas

2    if we're limited on our side just in terms of pages, we just

3    may not have the same ability to respond to those variations.

4         **THE COURT:**  Well, what I want is one consolidated

5    brief from all the defendants.  And then again to the extent

6    that there is something specific about a specific defendant,

7    that should be briefed separately, but what I don't want are --

8    I don't want the defendants to be taking a kitchen-sink

9    approach by everybody doing different things and talking past

10   each other.

11        So the defendants are going to have to coordinate and

12   perhaps -- well, let me ask you, Mr. Warren, what are you all

13   finding in terms of each of these claims?

14        **MR. WARREN:**  Well, in terms of the -- there are a lot

15   of different issues at play in the claims in terms of the

16   question of whether these apps are products.  There's

17   developed -- very favorable law in the three states that we did

18   identify.

19        There is the Restatement the Third which lays out really a

20   series of policy factors but does indicate that intangible

21   goods, such as software, could be products.

22        The Restatement Second has been applied to -- including in

23   the Ninth Circuit to indicate that software is a product.  That

24   would be the *Winter* case in dictum.

25        And then I can't disagree with Mr. Schmidt that there are

1    just many states that haven't spoken to the issue one way or

2    the other nor identified what Restatement approach they would

3    necessarily follow in answering that specific question.

4         **THE COURT:**  So do the defendants have a perspective on

5    how they want to structure the legal arguments?

6         **MR. SCHMIDT:**  Yes, Your Honor.  We are planning to do,

7    I think, hopefully exactly what Your Honor laid out.  We have

8    already begun meeting about a drafting process for a common

9    brief that would cover issues common across the defendants, and

10   they're the issues we've been talking about:  Is it a product,

11   is there a duty for something that is intangible, issues like

12   that.

13        The negligence per se claim, frankly, is different in that

14   it hinges off of alleged statutory violations, so that's a

15   different stream of briefing.  We would include that in the

16   common brief, but it -- it involves different types of

17   arguments than the other arguments and so contributes to the

18   page request that we're making.

19        And then each defendant is considering whether to raise

20   any defendant-specific issues.

21        But our goal is to put everything we can in a common

22   brief, subject to individual defendants looking at what they

23   think they might need to say separately on their own.

24        **THE COURT:**  Because with respect to the individual

25   issues, it would seem to me that counts such as fraudulent

1    concealment, negligent concealment, those are going to be --

2    and perhaps unfair trade practices, right, those are going to

3    be a little bit more defendant-specific because they relate to

4    specific conduct of a specific defendant as opposed to the

5    legal viability of something like strict liability.

6        Now, obviously the designs are slightly different, the

7    failure to warn is probably slightly different on both the

8    second and fourth counts, but those kind of individual issues

9    are not what is going to drive; right?  That won't drive the

10   answer.

11       Because what I can't do in a motion to dismiss, I can't

12   look at extrinsic evidence.  I have to assume that the facts in

13   the Complaint are true.  So once you start arguing facts, you

14   lose the argument.

15       And I can tell you, I am not going to -- at this round, I

16   will not -- I will just deny any attempt to incorporate by

17   reference anything that's referenced in the plaintiffs'

18   Complaint to try to have me prove some -- you know, identify

19   some fact and make a factual finding to support a motion to

20   dismiss.  I know technically it's a possible avenue, but I'm

21   not going to do it on this round.  Understood?

22       **MR. SCHMIDT:**  Understood.  That's helpful guidance,

23   Your Honor.  Thank you.

24       **MR. WARREN:**  Your Honor, if I may?

25       **THE COURT:**  You may.

1          **MR. WARREN:**  I agree with what you said on the

2     concealment and the state protective statutes.  I would just

3     note we did not identify either of those among our five best.

4          **THE COURT:**  I understand that.  That's why I'm saying

5     in terms of the defendants suggesting that they might want

6     individual briefs on some of these things, for motions to

7     dismiss, the individuality matters more on misrepresentations

8     because the misrepresentations are different.

9          **MR. WARREN:**  Yes, Your Honor.

10         **THE COURT:**  I don't know that a failure to plead

11    sufficient facts works in this case, given that I had to read

12    almost 300 pages.  There's plenty there.  It's not like the

13    defendants -- they may not agree with your perspective, but

14    it's not like they don't know what you're talking about.

15         **MR. WARREN:**  Yes, Your Honor.  Well, if I may, from

16    plaintiffs' perspective, what we -- what we care about is

17    parity and the ability to have the same number of pages, so if

18    defendants are able to consolidate their motions into one

19    brief, we would just ask that we get the equivalent number of

20    pages, whatever that number may happen to be.

21         **THE COURT:**  Well, I thought that you had agreed on

22    that; right?

23         **MR. WARREN:**  Yes.

24         **MR. SCHMIDT:**  We agree on that, Your Honor.

25         **THE COURT:**  So I thought what you were asking for was

1    defendants want no more than 100 pages and then plaintiffs

2    would get 100 pages, and a reply, 50 pages.  Okay?

3        Do I have a date for an opening brief?

4            **MR. WARREN:**  I believe it was April 14th --

5    April 17th?

6            **MR. SCHMIDT:**  Yes.

7            **MR. WARREN:**  April 17th, Your Honor.  And I believe

8    our reply was due -- I'm sorry -- our opposition was due

9    June 1st.

10           **THE COURT:**  Okay.  So defendants' opening brief,

11   April 17th, and that still works?

12           **MR. SCHMIDT:**  I apologize.

13       Yes, that still works.  And I think June 30th for the

14   reply.

15           **THE COURT:**  And opposition?

16           **MR. WARREN:**  That would be June 1st, Your Honor.  And

17   that does work.

18           **THE COURT:**  Okay.  Have I given you a hearing date

19   yet?

20           **MR. SCHMIDT:**  No, Your Honor.  And may we say

21   something briefly on that?

22           **THE COURT:**  Sure.

23           **MR. SCHMIDT:**  We have wondered how to navigate the

24   hearing date.  There's obviously the *Gonzalez* issue pending.

25   We have now had argument.  And what we have wondered is we

1    don't know the timing of the decision, of course.  At the

2    latest, as we understand it, it will come as our reply comes

3    in.  It may come earlier.

4         And what we would suggest, if the Court is agreeable to

5    it, is that we hold off on setting a hearing date until we have

6    more certainty because we do hold out hope that there can be --

7    we're going to be briefing the issues separately per

8    Your Honor's guidance.  We do hold out hope that there can be

9    some harmonization as we get near the hearing date depending on

10   how things develop with the timing from the Supreme Court.

11        **THE COURT:**  Well, what we can do is -- what I would

12   suggest is that liaison counsel, once the decision comes out,

13   contact the Court, and we can perhaps just have a Zoom hearing

14   to figure out if we're going to have briefing and what that

15   briefing will look like.  That seems to make -- that will

16   probably make the most sense.

17        **MR. SCHMIDT:**  Okay.  Thank you, Your Honor.

18        Your Honor, may I raise one other thing regarding the

19   motions?

20        **THE COURT:**  You may.

21        **MR. SCHMIDT:**  Our plan is to, as Your Honor gave

22   guidance at the last hearing -- to brief the First Amendment

23   and Section 230 issues separately and later.

24        There is consideration of First Amendment issues in

25   looking at the definition of a product question and then the

1    duty question, and so we -- I think that's a distinct issue

2    from the First Amendment issue we were going to raise.  We do

3    intend to put that in our briefs.  We didn't want that to be

4    viewed by the Court as briefing differently than how the Court

5    envisioned.  We would reserve the actual full-blown First

6    Amendment argument for the --

7         **THE COURT:**  And which claims does that refer to?

8         **MR. SCHMIDT:**  I think it refers to at least the first

9    four and potentially all five, but certainly the ones other

10   than negligence per se.  They all --

11        **THE COURT:**  On the issue of duty?

12        **MR. SCHMIDT:**  On the issue of duty and not a product,

13   which both kind of grapple with this issue of whether it's

14   intangible, and that intangibility question in the case law is

15   influenced by First Amendment considerations.

16        In the discussions in the case law, it's a pretty

17   high-level issue.  It doesn't involve getting into the doctrine

18   in the same way that our First Amendment arguments would so I

19   think it's separate, but I just wanted to flag that for the

20   Court so that it doesn't come as a surprise if we file in that

21   way or if the Court has a reaction, of course.

22        **THE COURT:**  Okay.

23        Mr. Warren.

24        **MR. WARREN:**  Your Honor, we will have to see what

25   defendants have to say on the issue.

1       The only remaining comment I would add is on the *Gonzalez*

2   question and holding off on a hearing date, we believe

3   Your Honor will have quite a bit to decide based on the

4   briefing for this first round of motions to dismiss.  We would

5   prefer not to put off a hearing and hopefully a ruling on those

6   issues.

7       Our understanding is --

8       **THE COURT:**  Mr. Warren?

9       **MR. WARREN:**  Yes?

10      **THE COURT:**  Part of the reason we're going to have a

11  conference is because, as much as I think this is one of the

12  most interesting cases on my docket, it's not the only one.

13      **MR. WARREN:**  Very well, Your Honor.

14      **THE COURT:**  And I'm in trial for most of June and in

15  July.  You know, perhaps those cases will go away but perhaps

16  not.  So I've got actually -- I mean, I've got a Google case

17  going to trial in August if it doesn't resolve.

18      So, you know, let's be a little flexible.  I promise you I

19  will be working hard, and I will try to get you something as

20  soon as I can.

21      **MR. WARREN:**  I have no doubt about that, Your Honor.

22  Thank you.

23      **THE COURT:**  Okay.  All right.

24      So anything else on these two topics?

25      **MR. SCHMIDT:**  Not from the defense, Your Honor.

1          **MR. WARREN:**  Not from the plaintiffs, Your Honor.

2          **THE COURT:**  Okay.  Let's move then to the Complaint,

3     the Short Form Complaint.

4          **MS. SCULLION:**  Good morning, Your Honor.  Jennifer

5     Scullion, Seeger Weiss, for the plaintiffs.

6        Your Honor --

7          **THE COURT:**  Hold on.

8          **MS. SCULLION:**  I apologize.

9          **THE COURT:**  Go ahead.

10          **MS. SCULLION:**  Mr. Schmidt is here again.

11        Your Honor, as we laid out in our letter brief, the

12    approach that plaintiffs have proposed is wholly consistent

13    with the federal rules and with the established precedent in

14    other complex MDLs.  As Your Honor has noted, we have a very

15    detailed Master Complaint, it's far more than any of the wholly

16    conclusory or implausible claims in some of the cases that

17    defendants have cited, detailed the multiple features in each

18    of the defendants' products that plausibly create a defective,

19    dangerous product that is addictive and otherwise dangerous to

20    children.

21        We have plausibly laid out, based on agency conclusions,

22    researchers, some of defendants' own documents and statements,

23    the plausible connection between the use of these products by

24    children and the harms that we allege for the plaintiffs.

25        And consistent with other MDLs, we have proposed a simple,

1    Short Form Complaint.  It is not simply a "Me Too," but

2    consistent with notice pleading and other MDLs, it identifies

3    obviously the plaintiff.  It does say which products they've

4    used and identifies the signature injuries, as well as a box

5    for other injuries.

6         Your Honor, we believe this is sufficient.  It is

7    consistent with what we understand Your Honor had intended in

8    terms of streamlining.  It certainly gives defense more than

9    enough notice of what is at issue here.

10        The defendants say that they want much more, and I think

11   it's -- it's telling that -- on page 3 of their letter brief,

12   they say they want more in order to prepare their defenses on a

13   plaintiff-by-plaintiff basis.

14             **THE COURT:**  Now, I --

15             **MS. SCULLION:**  Respectfully, we're just not there at

16   this juncture.  And, Your Honor, we obviously will get there,

17   and -- we hope we'll get there.  I shouldn't say that.  We hope

18   we will get there, but we're not there at the moment.  And I

19   think -- I'm sorry.  Go ahead.

20             **THE COURT:**  Mr. Schmidt, on this one I think I'm

21   siding with the plaintiffs.

22        The information you're asking for, all relevant if this

23   case is moving forward.  My suggestion would be that if this

24   case makes it past the motion to dismiss stage, what I could do

25   is if you want to work on a separate filing that says within,

1    you know, 45 days of the Court's order denying the motion to

2    dismiss, you'd have to provide this kind of basic information,

3    I think that something like that is fair.  I don't think we

4    need it now, but certainly if the thing is moving forward, then

5    I think individuals need to start thinking about their

6    individual cases.  And maybe it's not 45 days.  Maybe it's 90

7    days.  I don't know.  Now that I know you're quoting me back to

8    me, I'm not saying anything --

9                      (Counsel talked over the Court.)

10            **THE COURT:**  Right.  I don't know specifically, but it

11   seems to me that this is something that should happen after we

12   know that there is actually a claim that is proceeding, and

13   plaintiffs are on notice that this is the kind of information

14   that they're going to have to provide for each of their

15   clients.

16            **MS. SCULLION:**  Your Honor, that's acceptable to us,

17   too, obviously to engage with defendants, meet and confer, and

18   try to figure out a timing and a process that will get them the

19   information that they need, as well as obviously we hope to be

20   discussing at that point additional discovery for the

21   plaintiffs.

22            **THE COURT:**  So my only question -- well, do you wish

23   to be heard, Mr. Schmidt?

24            **MR. SCHMIDT:**  Just one point that we didn't make in

25   our -- in our papers, just so the Court understands where we

1    are coming from, although I'm sure the Court does from what we

2    did file.

3        This is a very complicated MDL.  We see that in the Master

4    Complaint.  And what we really geared our Short Form Complaint

5    around was trying to understand what -- how that complexity in

6    the Master Complaint applies on a plaintiff-by-plaintiff basis,

7    so when they go through all these design issues, how does that

8    apply to any plaintiff which any plaintiff would have to do if

9    they file their own Complaint.  When they go through and we

10   hinge the appearances to their Complaint allegations, how does

11   that apply to individual plaintiffs.  That's what we were

12   aiming to do --

13       **THE COURT:**  Remember, too, if there is a product

14   design -- let's take, you know, cigarettes that are addictive,

15   that are known to be addictive.  The plaintiff doesn't

16   necessarily know the -- what makes these things addictive.

17   Plaintiffs don't necessarily know that the corporations knew

18   that they were addictive, that they used certain language

19   because their marketing team told them that that was going to

20   be addictive.  You know, that's what experts are for.

21       So much of the discussion in the Complaint is a reaction

22   to what people see, but that doesn't necessarily mean that each

23   individual plaintiff is going to know that.  And many of the --

24   many of the little issues that features or functions, for

25   instance, you know, I -- because I don't use these, I don't

1   know whether they're properly grouped.  Perhaps if you use, you

2   know -- like on an iPhone Message, right, there are five

3   options when you're responding to messages.  Maybe you use one,

4   maybe you use two, not that that's addictive.  I'm just saying

5   that sometimes you're given a host of options, and so does that

6   mean that you have to remember back to every single one that

7   you're using when any one of the five would be sufficient?

8        I just -- I don't know.  All I'm suggesting is that there

9   are important issues that you've identified.  We should be able

10   to figure something out, but really we don't have to get there

11   until we've figured out the legal issues.

12        **MR. SCHMIDT:**  We hear what Your Honor is saying.  What

13   we were guided by and how this is different than, I think, the

14   cigarette example is they have pled in their Complaint, in the

15   Master Complaint, a lot of detail about what they say is

16   addictive, and it's detail that is really salient to whoever is

17   using the app.  It's "Do you use the news feed?"  That's

18   something they know.  "Did you experience cyber-bullying?"

19   That's something they allege in the Master that they would

20   know.

21        Those are facts that they know, and they're very, very

22   different.  They key off of, I think, what makes this MDL

23   unique, which is these experiences that people have on these

24   apps are so individualized, those are things they would know.

25   And that's where we were going.

1    But we hear Your Honor.  I'm not trying to argue the point

2    if Your Honor has reached a ruling.  But I want the Court to

3    know that's what was motivating us.

4         **THE COURT:**  I think the additional thing is, again,

5    it's put the plaintiffs on notice that something like this is

6    probably appropriate, right, and so you may have your own

7    groupings.  If we end up one day having bellwether trials, then

8    it could be that we're going to have to group these individuals

9    into certain categories, and maybe it's TikTok users and maybe

10   they're -- so maybe there's a group of features.  I don't -- I

11   don't know.  You all know your cases better, but I do think

12   that's step 2, not step 1.

13        **MS. SCULLION:**  Your Honor, and we agree with that.

14   That's a decision further down the line, and I think discovery

15   will inform what groupings would be appropriate, as will

16   experts, etc.  So we understand Your Honor's direction, and

17   we'll work with the defendants on the next phase if we get

18   there.

19        **THE COURT:**  Okay.

20       One thing that occurred to me, though, as I was reading

21   all of the material you provided me, was whether the Short Form

22   Complaint should have a question about the date of an

23   originally filed and transferred Complaint because that seems

24   to be a distinction that people are making in terms of the

25   statute.

1      **MS. SCULLION:**  Your Honor, the proposed implementing

2    order addresses the question of what is the applicable date.   I

3    don't think we would have a -- I don't think we have a

4    problem --

5      **THE COURT:**  Is there any need to have it in the Short

6    Form?

7      **MS. SCULLION:**  I don't think there is a need, but it

8    may add clarity, and we would be happy to do that.

9      **THE COURT:**  So that was the only thing that you seem

10   to be dealing with in other orders, but for each individual

11   Complaint, we didn't have that in the actual Short Form

12   Complaint.

13     **MS. SCULLION:**  Understood.  We can do that.

14     **THE COURT:**  The other question related to the name of

15   the plaintiff, the name, if applicable, of the guardian

16   ad litem, and that actually dovetails to the issues.

17      With respect to -- right, this is a public proceeding, and

18   I am always reluctant with defendants to seal material, and I

19   am reluctant with plaintiffs to seal your material.

20      In the orders with respect to guardians ad litem, it seems

21   to me that a lot of this information in the actual order itself

22   should be disclosed, but if it's disclosed in the Short Form

23   Complaint, then perhaps it's fine to do this all in a sealed

24   context.

25      The last name of the guardian ad litem, I don't see why I

1    should seal that.  And their city or state.  Lots of people

2    have the same last names.

3        Funny story.  When I went to Princeton, there are not a

4    lot of Hispanics up there, and somebody called during Christmas

5    break and asked information for someone with the last name

6    "Gonzalez."  In San Antonio, that person would laugh at them.

7    There are a lot of Gonzalezes, there are a lot of Smiths, there

8    are a lot of Browns; right?

9        So why are we trying to seal that information?

10        **MS. SCULLION:**  Your Honor, if I might, my colleague,

11    Ms. Anderson, could address this.

12        **THE COURT:**  Ms. Anderson, good morning.

13        **MS. ANDERSON:**  Thank you, Your Honor.

14        The concern was that there are several components that,

15    taken together, can lead to discovery of the minors' identity.

16        I appreciate your suggestion, and we thought because there

17    were 75 applications being filed at once with a lot of

18    information that we believe should be sealed, that sealing the

19    entire application would promote efficiency and that it doesn't

20    really promote any public interest to have those documents

21    filed publicly.

22        That said, we can go back and redact information if you

23    believe that the applications themselves should be on the

24    public record.

25        **THE COURT:**  What I think is that something has to be

1    on the public record.

2        The other way to do this is to have the order have the

3    template of what the application contains, and that way the

4    public knows what's there; right?  They know what the questions

5    are, they know what information the Court is getting.  It can

6    be blank, but at least they know.

7        If, then, the Short Form Complaints are going to give the

8    information that is not and should not be sealed, like the last

9    name of the guardian ad litem, like their state of residence --

10   I don't know necessarily that the city is required, but

11   certainly the state.  We are dealing with states' laws.

12   Individuals in those states may want to know how many people

13   from their state are part of this.  The likelihood that those

14   two pieces of information would lead to finding an adolescent I

15   think is small to none.

16       **MS. ANDERSON:**  Understood, Your Honor.

17       So we are happy to provide a more robust proposed order.

18   It sounds as though if we are including that information in the

19   Short Form Complaint, that you aren't requiring resubmitting

20   redacted applications at this time.  Is that an accurate

21   summary?

22       **THE COURT:**  So what I'm saying is that if I get that

23   information in the Short Form Complaint, then you don't have to

24   go through the administrative burden of redacting, as long as

25   there is a template attached to the order that identifies for

1    the public what information is in those ex partes applications

2    and that has in fact been submitted to the Court.

3            **MS. ANDERSON:**  Yes, Your Honor --

4            **THE COURT:**  I think that that is an appropriate

5    balance.

6            **MS. ANDERSON:**  We can definitely do that, Your Honor.

7            **THE COURT:**  Do you wish to be heard?

8            **MR. SCHMIDT:**  No, Your Honor.  If there is going to be

9    a new submission, I think we would like the opportunity just to

10   confer, but this isn't our issue so I don't expect it will be

11   an issue.

12           **THE COURT:**  Okay.  So I need either Ms. Simonsen --

13   did I say that right --

14           **MS. JONES:**  Simonsen, Your Honor.

15           **THE COURT:**  And, Ms. Anderson, if you'll take a list

16   of what we'll be doing after this so we can have a

17   comprehensive list.  All right.

18       Those were the only things that I had on the Short Form

19   Complaint.

20           **MR. SCHMIDT:**  Thank you, Your Honor.

21           **MS. SCULLION:**  Thank you, Your Honor.

22           **THE COURT:**  Okay.  The coordination order.

23           **MS. HAZAM:**  Yes, Your Honor.  Lexi Hazam for

24   plaintiffs.

25       With regards to a proposed coordination order, the parties

1   have begun to meet and confer on the topic.  Both parties have

2   acknowledged the advantages of coordination, particularly in

3   the realm of discovery.  And the judge who has been appointed

4   to handle the JCCP in the California state courts has

5   recognized that as well so our --

6            **THE COURT:**  Everybody should know Judge Kuhl and I are

7   friends.  We are members of the Council for the American Law

8   Institute together, and we are already talking, to the extent

9   that we should, that if there are ever efficiencies in having

10  joint proceedings, we will consider doing that.  I think mine

11  is significantly bigger than hers at this point, unless there

12  have been more cases filed in the state.  The last time I

13  talked to her about the issue, I think there were only less

14  than 30.

15           **MS. HAZAM:**  It is -- remains the case, Your Honor,

16  that the MDL has significantly more cases than the JCCP, I

17  believe at least three times as much at this point.

18       And Judge Kuhl did inform us of the same thing that

19  Your Honor just referenced, and we're obviously happy to have

20  the judges cooperating, as we hope to do with the other side.

21           **THE COURT:**  Well, we want you all to know that you

22  can't play each other -- you can't play us off each other

23  because we communicate regularly.

24           **MS. JONES:**  Understood, Your Honor.

25           **MS. HAZAM:**  Understood.

1    **THE COURT:**  Anything else you want to do with respect

2    to that, or is it more informative?  I don't think I have a

3    proposed order on this issue yet; correct?

4    **MS. HAZAM:**  You do not because the parties are still

5    meeting and conferring.  The parties propose submitting an

6    order on March 17th, and I don't believe that there is further

7    matters that we would want to address on this today.

8    **THE COURT:**  Okay.

9    **MS. JONES:**  I think that's right, Your Honor.  If

10   there is anything -- if you have any conceptual guidance that

11   you want to offer to us as we are working through that order,

12   we are happy to hear that today, but we can also work amongst

13   ourselves and submit something.

14   **THE COURT:**  No, I don't.

15   **MS. JONES:**  Okay.

16   **THE COURT:**  The next thing you wanted to discuss were

17   discovery orders, or is that combined with the consolidation?

18   **MS. HAZAM:**  We could move to that, Your Honor.

19       The next item in the status conference statement is

20   defendants' proposed filing requirements but happy to move to

21   the discovery orders, if Your Honor wishes.

22   **THE COURT:**  No.  Filing requirements is fine.  Go

23   ahead.

24   **MS. JONES:**  I'm happy to start on that issue,

25   Your Honor.  And Mr. Seeger and we spoke briefly before the

1   conference this morning.

2       I think what would probably be most helpful, from our

3   perspective, is for the parties to have an opportunity to

4   further confer on this topic.  We've made a proposal to them.

5   I don't think we've yet had a meaningful opportunity to meet

6   and confer about their concerns about that proposal, how we

7   might be able to reach a possible resolution.

8       Just for purposes kind of the broader idea at the highest

9   conceivable level, what we've contemplated here is it's not an

10  effort to prevent plaintiffs' counsel from filing their cases.

11  It's not a lone pine order, as they suggest in the CMC

12  statement.

13      What we've really been looking to do is to ensure that for

14  every case that comes into the MDL, whatever that number ends

15  up being, that someone has conducted basic Rule 11 diligence to

16  ensure that there is a basis for the facts as they've been

17  asserted.

18      So we're happy to talk more about what that might look

19  like, but we think it's pretty important in any MDL and in

20  particular in a case like this one.

21          **THE COURT:**  And I don't disagree, but I think the

22  plaintiffs have also made a legitimate point, right, that most

23  of the plaintiffs right now are being represented by members of

24  the steering committee.  And, two, again, if -- it is a bigger

25  issue if this case proceeds.  It is less of an issue if it

1   doesn't.

2          So by the time we get to that point, I may have some

3   perspectives.  At this point, I don't have any additional

4   perspectives for to you consider.

5          **MS. JONES:**  I think that's helpful for us, Your Honor.

6          With your permission, we would like an opportunity to

7   continue to discuss the possible contours of an order, but we

8   understand where you stand today.

9          **MS. HAZAM:**  As do we, Your Honor.

10         **THE COURT:**  All right.

11         **MS. HAZAM:**  Thank you.

12         **THE COURT:**  Okay.  Next.

13         **MS. HAZAM:**  Next would be the discovery-related

14  orders, item 6 in the status conference statement.

15         The parties reported on the status of their

16  meet-and-confers with regards to these orders and dates by

17  which they will submit agreed-upon orders or disputes to the

18  magistrate judge.  We are happy to address any questions or

19  concerns Your Honor may have.

20         **THE COURT:**  Anything?

21         **MS. SIMONSEN:**  Nothing further, Your Honor.

22         **THE COURT:**  Magistrate Judge Hixson is an excellent

23  judge.  I am sure he will handle all of your matters in an

24  excellent manner.  I have nothing to add to that.

25         **MS. HAZAM:**  Thank you, Your Honor.

1          **THE COURT:**  Okay.  Mediator.

2      I can't believe you all couldn't figure this one out.  I'm

3   going to figure it out for you unless you are telling me that

4   you've figured this out.  Yes or no?

5          **MR. SEEGER:**  We have not figured it out.

6          **MR. SCHMIDT:**  No, Your Honor.

7          **THE COURT:**  Then what you are going to do is you are

8   going to, while you're here, write down on a piece of paper one

9   from each list and then give it to me.  All right?  That's the

10  answer.  And then I'll decide.

11         **MR. SCHMIDT:**  And, Your Honor, I think we had a point

12  of disagreement as to which list the pick would come from.  We

13  had proposed --

14         **THE COURT:**  You pick from -- you pick one from your

15  list and one from their list.

16     You pick one from your list and one from their list.

17     I want you to put it on a piece of paper.  I don't know

18  your handwriting.  I don't want you to tell me who it came

19  from.  And you'll put those pieces of paper together, and you

20  will hand them to my courtroom deputy, and she will hand it to

21  me.

22         **MR. SCHMIDT:**  Okay.

23         **THE COURT:**  And then I'll let you know.

24         **MR. SEEGER:**  Thank you, Your Honor.

25         **MR. SCHMIDT:**  Understood.

1          **THE COURT:**  Okay.  Thank you.

2       Common benefit, I think, is next.

3          **MR. SCHMIDT:**  I'm sorry to belabor that.  So we will

4    each be submitting two, one from each side?

5          **THE COURT:**  Yes.

6          **MR. SCHMIDT:**  Okay.  Thank you, Your Honor.

7          **THE COURT:**  Sorry.  I didn't think I was not clear.

8       All right.  Next is common benefit.  Pierson from the

9    defense; is that right?

10         **MR. SEEGER:**  So, Judge, we have sent this to you.  If

11   you remember the last time we were here, the defendants had

12   some concerns about certain aspects of what we submitted.

13      I think that we -- we have made -- as a result of our

14   meeting and conferring on their concerns, we've made a couple

15   of changes.

16      One change had to do with making it clear that the amount

17   of any common benefit assessment holdback is subject to

18   Your Honor's approval.  I mean, we thought that was the law

19   anyway, but we wrote it in just to make it really clear.  We

20   didn't expect Your Honor would just rubber stamp whatever you

21   are going to consider.

22      The second part that we compromised on is on the reporting

23   requirements for the defendants.  They -- we have moved those

24   to make them quarterly so if they begin to settle cases around

25   the country and we don't do a global settlement, a non-class

1   global settlement which would be before you, and they make

2   their own individual settlements, they've got to report to us

3   on a quarterly basis and let us know who the settlements are

4   with so that the proper amount can be set aside in an escrow

5   account.

6          MS. PIERSON:  Your Honor, Andrea Pierson from Faegre

7   Drinker.

8      We have nothing to add.  We were able to confer with

9   Mr. Seeger, and we believe we've reached agreement.

10         THE COURT:  Okay.  That's fine.

11     I did have a few little technical things, or maybe not so

12  technical, that I do want you to change in terms of costs.  You

13  may not like this, but --

14         MR. SEEGER:  Okay.

15         THE COURT:  -- if it's good enough for federal judges,

16  it's good enough for plaintiffs' lawyers.  And that is that

17  domestic flights longer than four hours, you ride in coach.

18  You want to go to business, you'll have to pay for it on your

19  own.  That's what I have to do.  That's what every federal

20  judge has to do, and I'm sure it's what most members -- most of

21  your plaintiffs probably aren't flying business, so if you bill

22  them a few hours, I'm sure that will pay for the cost of the

23  flight, but business -- you know, and it was partly -- maybe

24  it's the wrong time for you.  I happen to be looking at a

25  number of flights to D.C., and they are like four to five times

| | |
|---|---|
| 1 | the cost of coach, so I just don't think it's appropriate. |
| 2 | Obviously you tall people want to sit in the front, but you'll |
| 3 | have to pay for it. |
| 4 | No alcohol.  Do not bill alcohol.  Meals are appropriate. |
| 5 | Alcohol is on you. |
| 6 | Does anybody check the cost of phone calls anymore? |
| 7 | Really?  It's almost like the fax question.  Does any plan that |
| 8 | anybody has do it by individual phone calls?  And are you |
| 9 | really going to track that? |
| 10 | **MR. SEEGER:**  No, I don't think so.  We don't -- I |
| 11 | don't even think offices track that anymore, do we? |
| 12 | **THE COURT:**  So I don't know how I can put that in an |
| 13 | order. |
| 14 | **MR. SEEGER:**  That's an artifact of old -- |
| 15 | **THE COURT:**  I don't know how I put that in an order. |
| 16 | I do see -- if I travel internationally, I do get the list of |
| 17 | phone calls, but -- yeah.  I don't know how I can -- unless you |
| 18 | can explain to me what you're going to do, I don't know how I |
| 19 | put that in an order. |
| 20 | **MR. SEEGER:**  I think we'll delete it. |
| 21 | **THE COURT:**  That would be good.  Okay. |
| 22 | Those were the only small things that I had. |
| 23 | **MR. SEEGER:**  Thank you, Your Honor. |
| 24 | **THE COURT:**  So if you will send us a revised version, |
| 25 | I can issue that order. |

1    Sealing, the bane of all federal judges.  Sealing.

2    So I think our concern with this is whether there was just

3    one step too many on the actual copy.  It seems to me that if I

4    enter an order with the process -- you all don't see them, but

5    any time you file something on ECF that is something I have to

6    do, the way we see it on our screen is it has a little gavel.

7    I hate gavels.  I like to get rid of all my gavels.  I hate

8    them.  And maybe that is an addictive kind of thing.  I don't

9    know.  Maybe that's why they do it to us, so we get rid of

10   them.  I hate little gavels.

11   So it seems to me that you're automatically filing

12   anything on the docket where one party has designated the

13   information as confidential, and you're doing that as part of

14   your filing, whatever the filing is.  But there has to be

15   meet-and-confer before I really get to the thing that I need to

16   do.

17   So my preference would be to have an order that says you

18   get to do that without having to identify it as a gavel.  So I

19   don't want the gavel until you've filed it, you've met and

20   conferred, you've withdrawn, and I then get some omnibus order

21   at the end that addresses all of them in one comprehensive way

22   with hyperlinks, and that's the only gavel I want to see.

23   Does that make sense?

24       **MS. SIMONSEN:**  It does, Your Honor.  I think we can

25   accomplish that, subject's to plaintiffs' point of view.  I

think some of the preliminary steps we outlined could probably be accomplished through notices of filing that would not create a gavel, and so that would be sort of a notice of filing that something is going in provisionally under seal, notice of filing of the redacted version of that document as redacted by the parties whose confidential information is at issue, and then we wait until the conclusion of briefing on a motion that implicates all of that confidential information to file a motion to seal following conferral with the other side.  I would think that would be something we could accomplish.

MR. WARREN:  I think that's very close to what we -- we have agreed to, and we want to take away the gavels, too, so we will work on that.

THE COURT:  So the great thing about this is if you will work on an order, I'm going to save the order, and I'm going to issue it in all of my big cases because, really, it is -- the amount of work and complications that are caused by these motions to seal is -- it takes us hours and hours when really our time could be better spent somewhere else.

MR. WARREN:  We completely agree, and we -- frankly, the parties and the litigants feel the same burden, which is why we were really pleased we were able to reach agreement on this.

THE COURT:  Okay.  So that -- that's the goal.  What I've articulated is the goal, which is to go ahead, you file

1    your stuff under seal, you have your deadlines, people provide

2    the answer -- you meet and confer, whatever, with the goal

3    being at the end I -- you tell me what it is I actually have to

4    decide.

5          And I do want the hyperlinks because it makes it faster.

6              **MS. SIMONSEN:**  Understood, Your Honor.

7              **THE COURT:**  Do you know what I mean by that?

8              **MR. WARREN:**  No, Your Honor, I don't.

9              **THE COURT:**  So you can set up global orders with links

10   to the docket, I believe, or -- or maybe you have to refile

11   them one time with the links so that we can click on something

12   and go to the information that we have to figure out do we

13   agree with your assessment or not.  Maybe you want to talk to

14   your paralegals.  Maybe I'm not explaining it right --

15             **MS. SIMONSEN:**  I certainly understand what you are

16   referring to, Your Honor.  I know we have done this with

17   briefs, not necessarily related to sealing, and I think we can

18   accomplish something similar here.  Perhaps we can confer and

19   make sure we are settled on a procedure for that that will work

20   from the Court's perspective.

21             **MR. WARREN:**  That's clear.

22             **THE COURT:**  Okay.

23         Mr. Warren.

24             **MR. WARREN:**  Yes.  I think that's fine.  We will

25   continue discussing.  I think we can solve this, and it should

1    be doable.  It's possible we may want to contact chambers just

2    to get guidance on how it will show up on your end so we're

3    doing this the right way one time and then we can submit it to

4    you.

5              THE COURT:  Okay.  That would be great; otherwise, I'm

6    all in favor of the streamlined process.  Okay?

7              MR. WARREN:  Thank you.

8              THE COURT:  Okay.  What else do we have?

9              MS. HAZAM:  Your Honor, Lexi Hazam for plaintiffs.

10        The only other item in the status conference statement is

11   number 9, other updates in which the parties reported on

12   several recent filings by school districts, some of which have

13   now been made a part of this MDL.  That was for informational

14   purposes.  We are happy to address anything regarding that or

15   any other matters that the Court may have.

16             MS. JONES:  I agree with plaintiffs' counsel, that

17   that was more an informational update than anything else.

18             THE COURT:  Okay.  I take it that the medical records

19   collection, that was another -- that was another issue that I

20   saw out there.  Did that relate to the filing requirements?  Is

21   that what you were thinking about?

22             MS. JONES:  I think so, Your Honor.  And as we

23   discussed just a moment ago, I think we can probably spend some

24   more time with each other between the plaintiffs and the

25   defendants kind of figuring that out.

1    **MS. HAZAM:**  Yes, Your Honor.  That was part of the
2    defendants' proposed filing requirements --
3        **THE COURT:**  Okay.
4        **MS. HAZAM:**  -- section.
5        **THE COURT:**  Okay.  So let me just, before -- I didn't
6    have anything else.  You went through my list.
7        Let me just pull up your docket.
8        I'm glad that the earlier time worked for you all.  As you
9    all can imagine, when we're in trial, we never exactly -- well,
10   in a criminal trial, we never exactly know when we are going to
11   be done.
12       **MS. JONES:**  Your Honor, for the folks on the East
13   Coast, I cannot overstate how enthusiastic folks were to
14   receive that email, so thank you very much for accommodating
15   us.
16       **THE COURT:**  I assumed that it would be helpful, and I
17   was just going to be sitting here waiting for you to come in in
18   the afternoon.
19       **MS. JONES:**  Well, we appreciate it very much.
20       **MS. HAZAM:**  That goes for our side as well,
21   Your Honor.  Not me personally but others.
22       **THE COURT:**  Okay.  We weren't supposed to be taking
23   closings until today, and we took them early, so . . .
24       Okay.  So as I'm looking at my gavels, 148 -- 147, 148,
25   and 149 are all about the guardian ad litem, so who is dealing

```
 1    with the guardian ad litem again?
 2              MS. HAZAM:  That would be Ms. Anderson for plaintiffs.
 3              THE COURT:  Okay.  So, Ms. Anderson.
 4              MS. ANDERSON:  Your Honor, now that I know that you
 5    hate the gavels, I am sorry that there is one redundant issue,
 6    and that was because Local Rule 7-11 requires a stipulation or
 7    a declaration why a stipulation could not be made that seemed
 8    separate from the declaration that we also attached the
 9    proposed order to.
10              THE COURT:  So that's -- hold on.  Let me just pull it
11    up.  Is that 148?
12              MS. ANDERSON:  One moment.
13              THE COURT:  And it's not that I hate them.  They're
14    actually very useful to tell me what I need to do.  It's just
15    that I am neurotic and like to get my stuff done.  Actually, I
16    probably shouldn't have said that on the --
17              MS. ANDERSON:  I apologize.  I don't have the
18    file-stamped copies with me.  That was -- they were not printed
19    out for me.
20         But essentially there are two orders, one is the sealing
21    order and one is the guardian ad litem order, that the parties
22    have met and conferred on, and that has also been submitted
23    with the guardian ad litem motion itself.  However, I know that
24    Your Honor would like a -- an altered proposed order, so what I
25    would suggest is that I will confer with defense liaison
```

1    counsel, and we will submit a new proposed order and

2    stipulation.

3         **THE COURT:**  Okay.  So 147 regards the motion to file

4    under seal the actual applications.

5         **MS. ANDERSON:**  Correct.

6         **THE COURT:**  All right.  And with respect to that, what

7    I'm going to get from you is a revised order that attaches as

8    an exhibit the form of the application?

9         **MS. ANDERSON:**  Correct.

10        **THE COURT:**  Okay.  So I'm waiting for a revised -- and

11   you can just send that -- you can just send that to our email

12   box.  You don't have to file that.  Okay?  As long as liaison

13   counsel agrees.

14        **MS. ANDERSON:**  Okay.

15        **THE COURT:**  So we will look for a revised 147-2.

16       Then with respect to the order to seal the applications

17   themselves, that's granted.  And then the consolidated motion,

18   that will be granted.  All right.

19        **MS. ANDERSON:**  Thank you, Your Honor.

20        **THE COURT:**  So I'm waiting on one for you.  The other

21   two will be granted.

22        **MS. ANDERSON:**  Thank you.

23        **THE COURT:**  Then I see on here -- all of these motions

24   regarding sealing -- 143, 134, 135, and 137 -- are those for

25   me, for Magistrate Judge Hixson?  What are they?

1       **MS. SIMONSEN:**  Your Honor, the various sealing motions

2    relate to the Master Complaint.  We had understood that

3    Your Honor was resolving those sealing motions.  We, of course,

4    defer to you as to whether those should go to Magistrate

5    Judge Hixson instead.

6       **MR. WARREN:**  And, Your Honor, if I may, there is

7    unlikely to be really any dispute around those.  We've heard

8    from defendants on what information they wish to remain sealed,

9    and TikTok and I believe Snap said that none of the information

10   at issue needs to remain sealed.  Meta has identified, I think,

11   just four or five names, and we will not oppose the redaction

12   of those names.

13      **THE COURT:**  Okay.

14      **MR. WARREN:**  So we ought to be able to resolve that

15   quickly.

16      **THE COURT:**  All right.  So I'll double check.  I read

17   it with all of the highlights, but we'll get those out.  Okay.

18   Thank you.

19      **MS. SIMONSEN:**  Thank you, Your Honor.

20      **THE COURT:**  And then I think that's it.  Okay.

21      **MS. ANDERSON:**  Your Honor, Jennie Lee Anderson on

22   behalf of plaintiffs.

23      I just wanted to clarify because I realized, as I was

24   sitting down, that you said that two orders will be granted

25   with respect to the sealing and the guardian ad litem.  I

```
 1    believe at this time you will just be following through on

 2    your -- on your order from the bench to seal the documents.

 3    The other two orders are the same order.  One was just attached

 4    to the stipulation as required by 7-11.

 5              THE COURT:  Okay.

 6              MS. ANDERSON:  Thank you.

 7              THE COURT:  And then I actually -- you won't see those

 8    orders -- the objection period hasn't passed.  I'm not sure we

 9    are going to get objections, but I do need to wait for the

10    objection period to pass.

11       Okay.  Do you want to set a date on the calendar for the

12    summer?  Or do we just wait until we hear about *Gonzalez*?

13              MS. JONES:  I think from our perspective, Your Honor,

14    we would be inclined to follow the guidance you offered earlier

15    in terms of seeing what happens in *Gonzalez*, having an

16    opportunity for probably a Zoom conference with the Court on

17    what to do in light of that.

18              MR. WARREN:  That's fine with plaintiffs as well,

19    Your Honor.

20              THE COURT:  Okay.  And -- all right.  Then we will --

21    I'll just wait -- well, we are all waiting to get that decision

22    from the court, and then I'll hear from liaison counsel.

23       Okay.  Anything else then?  Not from the plaintiffs?

24              MR. WARREN:  No, Your Honor.

25              THE COURT:  Not from the defense?
```

1          **MS. JONES:**  No, Your Honor.

2          **MR. WARREN:**  We do have our name list to hand you, if

3    we haven't already.

4          **THE COURT:**  What's that?

5          **MR. WARREN:**  We do have the names.

6          **THE COURT:**  Can I have the pieces of paper?

7          **MR. SCHMIDT:**  Your Honor, on our end, if we could have

8    a few minutes to confer among the different defendants, I would

9    appreciate that.

10         **THE COURT:**  That's fine.  I will leave the room, and

11   then you can give it to her when I'm gone.

12      Everybody have safe travels.  We're adjourned.

13              (Proceedings adjourned at 10:21 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                     CERTIFICATE OF REPORTER

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:   Monday, March 6, 2023

8

9   *Pamela Batalo Hebel*

10  _____
    Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11  U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25