Pages 1-27

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson,
United States Magistrate Judge

IN RE:                            )
                                  )
SOCIAL MEDIA ADOLESCENT           )
ADDICTION/PERSONAL INJURY         )    **Case No. 22-MD-03047-YGR**
PRODUCTS LIABILITY                )
LITIGATION.                       )
_____ )


San Francisco, California
Wednesday, April 19, 2023


**<u>TRANSCRIPT OF DISCOVERY HEARING VIA ZOOM VIDEOCONFERENCE</u>**



APPEARANCES ON NEXT PAGE.



TRANSCRIPTION SERVICE BY:
                    Dipti Patel, CET-997
                    Liberty Transcripts
                    7306 Danwood Drive
                    Austin, Texas 78759
                    (847) 848-4907

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

For the Plaintiffs:

MOTLEY RICE LLC
401 9th Street NW, Suite 630
Washington, DC 20004
**BY: PREVIN WARREN, ATTORNEY AT LAW**

MOTLEY RICE LLC
40 Westminster Street, 5th Floor
Providence, Rhode Island 02903
**BY: JONATHAN D. ORENT, ATTORNEY AT LAW**

SEEGERWEISS LLP
55 Challenger Road
Ridgefield Park, New Jersey 07660
**BY: JENNIFER SCULLION, ATTORNEY AT LAW**
**CHRISTOPHER AYERS, ATTORNEY AT LAW**

LIEFF CABRASER HEIMANN & BERNSTEIN
250 Hudson Street, 8th Floor
New York, New York 10013
**BY: KELLY MCNABB, ATTORNEY AT LAW**

LIEFF CABRASER HEIMANN & BERNSTEIN
275 Battery Street, Suite 2900
San Francisco, California 94111
**BY: LEXI J. HAZAM, ATTORNEY AT LAW**

For Defendants Meta Platforms, Inc. f/k/a Facebook Holdings,
LLC, Facebook Operations, LLC, Facebook Payments, Inc.,
Facebook Technologies, LLC, Instagram, LLC, Siculus, Inc., and
Mark Elliot Zuckerburg:

COVINGTON & BURLING, LLP
1999 Avenue of the Stars
Los Angeles, California 90067
**BY: ASHLEY M. SIMONSEN, ATTORNEY AT LAW**

For Social Media Law Victims Law Center:

SOCIAL MEDIA LAW VICTIMS LAW CENTER
821 Second Avenue, Suite 2100
Seattle, Washington 98104
**BY: LAURA MARQUEZ-GARRETT**
**ATTORNEY AT LAW**

**APPEARANCES VIA ZOOM VIDEOCONFERENCE (CONTINUED):**

For Defendants TikTok, Inc. and ByteDance, Inc.:

                         FAEGRE DRINKER BIDDLE & REATH LLP
                         2200 Wells Fargo Center
                         90 South Seventh Street
                         Minneapolis, Minnesota 55402
                    BY: **AMY R. FITERMAN, ATTORNEY AT LAW**

                         KING & SPALDING, LLP
                         1700 Pennsylvania Avenue, NW
                         Suite 900
                         Washington, D.C. 20006
                    BY: **DAVID MATTERN, ATTORNEY AT LAW**

                         KING & SPALDING, LLP
                         1180 Peachtree Street, NE
                         Suite 1600
                         Atlanta, Georgia 30309
                    BY: **GEOFFREY DRAKE, ATTORNEY AT LAW**

For Defendants YouTube, LLC, Google, LLC, and Alphabet, Inc.:

                         WILSON SONSINI GOODRICH & ROSATI
                         12235 El Camino Real
                         San Diego, California 92130
                    BY: **SAMANTHA MACHOCK, ATTORNEY AT LAW**

For Defendant Snap, Inc.:

                         MUNGER, TOLLES & OLSON LLP
                         601 Massachusetts Avenue NW
                         Suite 500 E
                         Washington, D.C. 20001
                    BY: **LAUREN BELL, ATTORNEY AT LAW**

                         MUNGER, TOLLES & OLSON LLP
                         350 South Grand Avenue
                         50th Floor
                         Los Angeles, California 90071
                    BY: **ARIEL T. TESHUVA, ATTORNEY AT LAW**

4

| | |
|---|---|
1    <u>**Wednesday - April 19, 2023**</u>                    <u>10:07 a.m.</u>

2                          P R O C E E D I N G S

3                                ---oOo---

4        **THE CLERK:**  Okay, everyone.  Good morning.  We are here

5    in Civil Action 22-3047, In re Social Media Adolescent

6    Addiction/Personal Injury Products Liability Litigation; the

7    Honorable Thomas S. Hixson presiding.

8        Counsel, I'm going to ask you to state your appearances.

9    Let's start with plaintiffs' counsel with Ms. Scullion.

10        **MS. SCULLION:**  Good morning, Your Honor.

11    Jennifer Scullion from SeegerWeiss for the plaintiffs.

12        **THE COURT:**  Good morning.

13        **THE CLERK:**  And Mr. Ayers.

14        **MR. AYERS:**  Good morning, Your Honor.

15    Chris Ayers from SeegerWeiss on behalf of the plaintiffs.

16        **THE COURT:**  Good morning.

17        **THE CLERK:**  Mr. Warren.

18        **MR. WARREN:**  Good morning.

19        Previn Warren with the plaintiffs at the law firm of

20    Motley Rice.

21        **THE COURT:**  Good morning.

22        **MR. WARREN:**  Good morning.

23        **THE CLERK:**  Mr. Orent.

24        **MR. ORENT:**  Good morning, Your Honor.

25        Jonathan Orent for the plaintiffs also from Motley Rice.

1        **THE COURT:**  Good morning.

2        **THE CLERK:**  Ms. Hazam.

3        **MS. HAZAM:**  Good morning, Your Honor.

4        Lexi Hazam of Lieff Cabraser for plaintiffs.

5        **THE COURT:**  Good morning.

6        **THE CLERK:**  Ms. McNabb.

7        **MS. McNABB:**  Good morning, Your Honor.

8        Kelly McNabb from Leiff Cabraser for the plaintiffs.

9        **THE COURT:**  Good morning.

10        **THE CLERK:**  And Ms. Marquez-Garrett.

11        **MS. HAZAM:**  I believe she intended to be part of the

12   audience and not a panelist.

13        **THE CLERK:**  Okay, that's fine.

14        All right.  Now Meta Platforms, et al.

15        **MS. SIMONSEN:**  Good morning, Your Honor.

16        Ashley Simonsen with Covington & Burling for the Meta

17   defendants.

18        **THE COURT:**  Good morning.

19        **THE CLERK:**  And TikTok.

20        **MR. DRAKE:**  Good morning, Your Honor.

21        Geoffrey Drake, King & Spalding, for the TikTok

22   defendants.

23        **THE COURT:**  Good morning.

24        **MS. FITERMAN:**  And Amy Fiterman, Fagre Drinker, on behalf

25   of the TikTok and ByteDance defendants.

6

1        **THE COURT:**  Good morning.

2        **MS. FITERMAN:**  Good morning.

3        **THE CLERK:**  And Mr. Mattern, are you on?  No?

4        **MR. DRAKE:**  He said he was not promoted, but --

5        **THE CLERK:**  Oh.

6        **MR. DRAKE:**  -- he's content to stay in whatever holding

7    room he's in.

8        **THE CLERK:**  I'm happy to promote him.  I don't see him,

9    so.

10        **MR. DRAKE:**  I wouldn't worry about it.  It's okay.

11        **THE CLERK:**  Okay.  All right.

12        And YouTube.

13        **MS. MACHOCK:**  Good morning, Your Honor.

14        Samantha Machok from Wilson Sonsini on behalf of the

15    Google and YouTube defendants.

16        **THE COURT:**  Good morning.

17        **THE CLERK:**  And Snap.

18        **MS. BELL:**  Good morning, Your Honor.

19        Lauren Bell from Munger, Tulles & Olson on behalf of

20    Snap.

21        **THE COURT:**  Good morning.

22        **THE CLERK:**  And that's it, Judge.

23        **MS. BELL:**  Sorry.  We have one more member of our team,

24    Ariel.

25        **MS. TESHUVA:**  Good morning, Your Honor.

1    Ariel Teshuva, *Munger Tolles*, for Snap.

2    **THE COURT:**  Good morning.

3    Okay.  Well, we are here with a couple of disputes under

4    a proposed 502(d) order.  And the first issue is what

5    privileges are going to be covered by it.  My tentative

6    thought at least is that since Rule 502 applies to attorney-

7    client privilege and attorney work produce, I don't see why

8    the 502(d) order would apply to anything else.  But let me

9    hear from the defendants about that.

10    **MS. BELL:**  Thank you, Your Honor.

11    Lauren Bell on behalf of the defendants.

12    In this case, we can anticipate that other privileges may

13    come into play, namely the Stored Communications Act since all

14    of the defendants possess content of communications with

15    users.  And we anticipate that the plaintiffs will request

16    that in discovery including from third-party user accounts.

17    And so for that reason, from our perspective, we think it

18    makes the most sense from an efficiency standpoint to include

19    the protections that are reasonably anticipated, namely

20    statutory provisions in this 502(d) order.  And as we cited in

21    our brief, there have been other instances in this district

22    such as the Jewel Litigation and the Zoom Privacy Litigation

23    that have also applied statutory privileges and protections

24    for the 502(d) order.

25    **THE COURT:**  As I understand the 502(d) order, its primary

1    purpose is to avoid waiver for inadvertent production.  I

2    would be quite surprised if the defendants inadvertently

3    produce something that was covered by the Stored

4    Communications Act because wouldn't that affect where you

5    would have to look to find the materials?

6        **MS. BELL:**  It is of course our goal not to make any

7    mistakes in producing this, but we anticipate that third-party

8    users could come into play.  And so if the defendants in

9    searching the plaintiff users' account also finds third-party

10   user account information and inadvertently produces that or if

11   family members with whom the minor users interacted on their

12   accounts, those are the types of situations we're trying to

13   just provide coverage for in this order.

14       **THE COURT:**  Is the Stored Communications Act really a

15   privilege?  Isn't that a somewhat different type of immunity?

16       **MS. BELL:**  It is a different type of immunity, but we're

17   hoping to accomplish with this one order protections for

18   privileges and immunities.

19       **THE COURT:**  All right.  Let me hear from the plaintiffs

20   about this.  Or actually wait, before we go back to the

21   plaintiffs, what is the complete list of other statutory

22   privileges the defendants would include or are you preferring

23   to be ambiguous about that?

24       **MS. BELL:**  At this stage, we would prefer to leave it as

25   just statutory privileges.  And we've provided the Stored

1    Communications Act as an example of what we can reasonably

2    anticipate at this point in the discovery process -- well,

3    discovery is stayed, but we would prefer to keep it as all

4    statutory privileges.

5        **THE COURT:**  All right.  Let me hear from plaintiffs'

6    counsel.

7        **MR. WARREN:**  Your Honor?

8        **THE COURT:**  I'm sorry.  Somebody has raised their hand.

9        **MR. WARREN:**  I was just going to inform the Court that

10    Jennifer Scullion was I think inadvertently dropped from the

11    call and is awaiting to be promoted as panelist again.  She

12    was actually the attorney who was going to be arguing the

13    issue.

14        **THE COURT:**  Well, we better get her here then.

15        **THE CLERK:**  I'm getting her.  I think -- there she is.

16        **MS. SCULLION:**  Thank you, Your Honor.  I apologize for

17    the technical error.

18        **THE COURT:**  Welcome back.

19        **MS. SCULLION:**  Thank you very much.

20        Your Honor, we agree with you that 502 is limited to the

21    attorney-client and work-product privileges, and I think you

22    have highlighted one of the concerns that we have which is

23    that the amorphous statement that this order would include

24    other statutory privileges and other basis for protection, it

25    just leaves us not knowing exactly what is at issue here.

1    And on Stored Communications Act, in particular, it's not

2  my understanding that it's a privilege.  I don't know that

3  waiver really even frankly applies.  And in any event, I think

4  it is incumbent on the defendants to comply with their

5  obligations under the SCA.

6    We may have instances where we need to discuss what they

7  are producing, not producing under the SCA.  But that can be

8  taken up in course.

9    **THE COURT:**  All righty.  Well, I am going to side with

10  the plaintiffs on this one.  I think Rule 502 was about the

11  attorney-client privilege and the attorney work product.  And

12  I think that should be the scope of the 502(d) order.

13    And I also don't like the open-ended reference to

14  statutory privileges without an explanation of what is in that

15  black box because then I feel like I don't know what I would

16  be approving as a 502(d) order.  And I don't think that the

17  Stored Communications Act immunity works in much the same way

18  as attorney-client privilege or attorney work product.  Those

19  are very distinct doctrines.  It has its own contours that are

20  somewhat different.

21    And I'm not prepared to say in one fell swoop that every

22  statutory privilege that exists out there should be subject to

23  the 502(d) order.  So I'm going to limit it to attorney-client

24  privilege and work product.

25    The next issue is the other grounds for waiver.  As I

1   understand, this is still on Section 1 of the proposed order.

2   Plaintiffs would limit it to materials that are produced under

3   Rule 34, so we're talking about document production or

4   information production, items that are produced in discovery.

5   Whereas, defendants by taking that out and just sort of having

6   a looser reference to production or disclosure not tethered to

7   Rule 34, it would seem to cover everything, interrogatory

8   responses, deposition testimony, just anything that might come

9   out in the course of litigation.

10       And let me ask defendants, first, is that your intent and

11   then, second, why should the order be that broad?

12       **MS. BELL:**  Your Honor, it is our intent to cover

13   disclosures.  By its very terms, 502(d) pertains to

14   disclosures connected with the litigation pending before the

15   Court.  And so it should not be limited just to documents

16   accidentally produced but could also include testimony given

17   in a deposition that addresses attorney-client privilege.

18       **THE COURT:**  Well, I'm sympathetic about documents because

19   even when privilege review is very thorough, in large cases

20   like this, it's quite common for documents to be inadvertently

21   produced.  I think that's quite different from sitting there

22   during a deposition and letting your witness go on and on and

23   having privileged information come out and the attorney not

24   doing anything in real time when that happens.

25       That's much more problematic.  And I do have a concern

1    about waiting until the end of a deposition, seeing how the

2    testimony turned out, and then going back and trying to see if

3    you could have thought of a claim of privilege.  I think that

4    opens the door to strategy decisions based on how well or how

5    poorly the witness testified.  And I don't think that should

6    be permitted.

7        So I am generally fine with how the plaintiffs have

8    drafted Section 1.  I do think limiting it to materials that

9    are produced is appropriate.  And, also, like interrogatory

10   answers, those are something that should be vetted.  It's not

11   the -- if information is put in an interrogatory answer, those

12   are things that are written by attorneys.  That's quite

13   different from documents that are produced when there aren't

14   necessarily people laying eyes on every document that goes

15   out.

16       So I want to stick with generally plaintiffs' version on

17   Section 1.  I also don't agree that what the language

18   suggested by the defense that, "Instead, (indiscernible) the

19   502(d) order governs all disputes regarding protected material

20   produced or disclosed in this litigation."  I don't think

21   that's true.  I think it governs inadvertent production.

22       Having said that, the plaintiffs have a sentence at the

23   end about "for the avoidance of doubt."  And I agree with the

24   defendants that we don't need to have that in there.  I think

25   "for the avoidance of doubt" sentence itself raises problems,

1   and I just don't think it's necessary.  It's clear with

2   plaintiffs' other language that we're talking about

3   inadvertent production and I don't think we need the "for

4   avoidance of doubt."  Does --

5         **MS. BELL:**  Your Honor?

6         **THE COURT:**  Go ahead.

7         **MS. BELL:**  If we could go back to the issue about the

8   Rule 34 items.  In this case, defendants have been ordered to

9   produce documents already outside of that context.  And so I

10  believe that we would prefer to have the rule applied to

11  documents as Your Honor is contemplating it rather than

12  specifying Federal Rule of Civil Procedure 34.

13        **MS. SCULLION:**  Your Honor, if I might -- I'm sorry.

14        **THE COURT:**  Sure.  Well, I was just going to follow up on

15  that.  What plaintiff have written is, "For purposes of this

16  Rule 502(d) and clawback order, protected material means items

17  as that term is used in F.R.C.P. 34, including electronically

18  stored information produced in discovery or pursuant to an

19  order in this litigation."

20        I would think that would cover the things you produced so

21  far because Judge Gonzalez Rogers ordered you to produce them.

22        **MS. BELL:**  Yes, Your Honor.  That is -- in that full

23  context, you're right.

24        **THE COURT:**  Okay.  Ms. Scullion, you wanted to chime in?

25        **MS. SCULLION:**  You have anticipated exactly what I was

14

1   going to say, Your Honor.  Thank you.

2       **THE COURT:**  All right.  Let me ask plaintiffs, are there

3   any other disputes about Section 1 that I have not addressed?

4       **MS. SCULLION:**  No, Your Honor.  I think you've made clear

5   that -- and it's clear from the briefing that 502(a), actual

6   affirmative use of information would not be governed here

7   talking about inadvertent productions.  And that was one of

8   our main concerns.  Thank you.

9       **THE COURT:**  All right.  Do defendants think there are any

10  other issues with respect to Section 1 that have not been

11  resolved?

12      **MS. BELL:**  No, Your Honor.  I believe that's addressed

13  all of Section 1.

14      **THE COURT:**  Thank you.

15      All right.  Next one is Section 3.

16      A couple of issues in dispute there.  One deals with when

17  there's a clawback notice whether the receiving party's work

18  product such as notes that they may have or that they can

19  sequester that pending resolution of the clawback or whether

20  they have to immediately destroy their own work product

21  requiring a lawyer to immediately destroy their own work

22  product just because there's a claim of privilege that may be

23  contested, that strikes me as a little bit harsh because how

24  did they get it back if they prevail on the claim of

25  privilege.  But let me hear from the defendants about that.

1       **MS. BELL:**  Your Honor, when we drafted our section of the

2   brief, I think we were responding to a slightly different

3   position as we understood it from the plaintiffs.  And we

4   believe that plaintiffs were asking to use their work product

5   in disputing a claim of -- the clawback claim.

6       And we objected to the use of -- just as we would object

7   to the use of the document itself in that type of dispute, we

8   were objecting to the use of work product in that dispute.

9   And so it is -- so I wanted to make sure that that's clear.

10       But, second, there is a potential for gamesmanship here

11   if the receiving party effectively copies the entire protected

12   information into their work product.  They would then be --

13   they could claim work product over the protected material.

14   And we believe that to stop the risk of gamesmanship in that

15   sense, the parties should be required to not use it and to

16   potentially destroy it.

17       **THE COURT:**  Well, on your first point that the receiving

18   party should not be able to use the protected material in the

19   course of the disputing the claim of privilege, I'd agree with

20   you about that.  I didn't think plaintiffs' proposal actually

21   proposed that, but let me turn to plaintiffs.

22       To me, sequester means you put it aside and you can't do

23   anything with it.  Is that plaintiffs think?

24       **MS. SCULLION:**  Your Honor, yes.  That is what we intend

25   is to sequester, not use exactly for the reasons that you

1   highlighted which is if the clawback is ultimately withdrawn

2   or overruled, we have not lost our work product which would be

3   not realistic to reproduce.

4       **THE COURT:**  But you agree then that if the privilege

5   claim is sustained, then you would have to destroy it, right?

6       **MS. SCULLION:**  I mean to the extent that it is

7   reproducing, copying, or derived from, yes.

8       **THE COURT:**  Okay.  Let me see.  I'm looking at 3A.

9   Plaintiffs have language, "If the receiving party does not

10  raise any such challenge within 14 calendar days of receiving

11  the clawback notice or fails to timely move to compel" and so

12  on, let me ask what's a timely motion to compel?

13      **MS. SCULLION:**  I apologize.  I believe -- well, I thought

14  we had actually addressed the timeliness of a motion to compel

15  in here.  I mean I think after we've exhausted a meet and

16  confer on clawbacks, I would think 14 days would be a fair

17  amount of time.

18      **THE COURT:**  And then can you explain what's the language

19  "or upon a final ruling from the Court denying a motion to

20  compel disclosure?"  What is final?  Is that my ruling or is

21  it the time to appeal my ruling?

22      **MS. SCULLION:**  I would say in that instance, and again

23  we're talking here about the sequestered work product that

24  we're not using, that it would include any appeal we might

25  take from an order Your Honor issues.

1    **THE COURT:**  I don't read that language as -- I think that

2    sentence I didn't read as just being about sequester of work

3    product.  I thought that was any challenge of the clawback

4    notice.  Did you mean it to be narrower than that?

5    **MS. SCULLION:**  I apologize.  I think that we had intended

6    there for it to be like the sequestered materials that had not

7    yet been destroyed.

8    The reason I'm saying that, Your Honor, is looking at 3A,

9    it does speak to returning or destroying the protected

10   material upon a clawback but sequestering work product.  And

11   so our intention was then to have a sequestered work product

12   then subsequently be destroyed following resolution of the

13   clawback.

14   And we'd be happy to adjust the language because I see

15   that it does say sequestered copies of the clawed back

16   material.

17   **THE COURT:**  I see.  Well, I don't really understand that

18   language, the "if the receiving party does not raise any such

19   challenges within 14 days."  I'm not sure the scope of that,

20   and I don't think you should say timely motion to compel

21   because under Civil Local Rule 37-3, a motion to compel is

22   timely if it's made up to seven days after the close of fact

23   discovery which would be a long time.

24   So I would like plaintiffs to go back and meet and confer

25   with the other side about that language.

1    **MS. SCULLION:**  Okay.

2    **THE COURT:**  Let me hear any other comments from the

3    defense about Paragraph 3A.

4    **MS. BELL:**  Your Honor, the concept that the work product

5    might just be a mere excerpt of the protected material still

6    concerns us.  And so we would ask that language be inserted to

7    say that if work product is to be sequestered that it be more

8    than than just the excerpts from the protected material or

9    potentially protected material.

10   **THE COURT:**  So if they have a draft brief that quotes

11   material and you claw it back, they have to immediately go in

12   their document management system and purge the draft.  Is that

13   what you're saying?

14   **MS. BELL:**  I guess I'm unclear.  I understood the Court

15   to be saying that you were going to order that work product be

16   sequestered.  And so I was saying under that realm, I would --

17   we were asking that the receiving party would have to show

18   that it was more than just an excerpt from the protected

19   material.

20   **THE COURT:**  Explain --

21   **MS. SCULLION:**  Your Honor?

22   **THE COURT:**  Wait.  I don't understand the implications of

23   what you're saying, Ms. Bell.  Can you explain that a little

24   bit more?

25   **MS. BELL:**  It's to address my earlier stated concern

1    about gamesmanship, that if a receiving party receives a

2    document that's clearly been -- clearly privileged and to

3    avoid sequestering it or destroying it, they -- sorry, and to

4    avoid destroying it, they immediately copy it or excerpt it

5    into work product, they would then be allowed to keep it.

6         And so we are asking that it be more than just an excerpt

7    taken from the work product or taken from the document to

8    count as work product.

9         **THE COURT:**  More than just an excerpt to count as work

10   product?  Isn't that backwards, though?  Wouldn't your concern

11   be that it would have to -- if it's the whole document, it

12   wouldn't count as work product?

13        **MS. BELL:**  We're also concerned about excerpts from the

14   document.

15        **THE COURT:**  I think the existing language about

16   sequestering work product is sufficient.  And this would

17   require them to destroy it once it's determine that it is

18   appropriately clawed back.  But I'm not going to order counsel

19   to immediately destroy their work product just because the

20   other side has issued a clawback notice that hasn't been

21   litigated and may yet be disputed.

22        But I do want the parties to work through the procedures

23   on the clawback and the deadlines because like we need a

24   definition of what a timely motion to compel is, what a final

25   ruling means.  And this isn't -- the language here isn't clear

1    to me.

2        **MS. SCULLION:**  Happy to do that, Your Honor.

3        **THE COURT:**  All right.  Let's turn to Paragraph -- or

4    Section 5.  Yeah, I really don't agree with the defense

5    suggestion that one acceptable alternative is to just sit

6    there and let the witness testify and then after the

7    deposition happens, go back and claw it all back.

8        I think the attorneys going in to defending a deposition

9    should be prepped for each witness and have a reasonable idea

10   of where the privilege lines are likely to be for each

11   witness.  I understand that nothing is perfect and that issues

12   may come up and someone may have to make an educated guess.

13   But I don't like this idea that after the deposition, parties

14   can go back and say, oh, that testimony didn't turn out very

15   well so anyway we can claw it all back.

16       I don't think testimony can be clawed back that way.  I

17   think someone defending a deposition needs to be up to speed

18   about whether there's something privileged to be clawed back

19   and, if there is, to tell the witness not to testify.

20       But anything more the defense wants to say about that?

21       **MS. BELL:**  Your Honor, we see this slightly differently

22   than what we discussed in Section 1 where the concern was just

23   testimony.  Here it's documents are also being used.  And so,

24   you know, on the face of a document, it may not be readily

25   apparent that it is to an attorney.  Our clients have large

1    companies with large legal departments and employees who have

2    come and gone.

3         It is a difficult question in the middle of a deposition

4    to decide if every person's name on an email might have been

5    an attorney for in-house or outside counsel.  And so to

6    protect the documents that are being used in the deposition,

7    it does strike us as more protective of the privilege to allow

8    people to go back to see the transcript and see the documents

9    and, in that context, be able to determine if there was a true

10   privilege.

11        I highly doubt that attorneys are going to sit back and

12   purposefully waive privilege, but -- and so I do not see the

13   risk of the gamesmanship as strongly.  Instead, I see a

14   potential inefficient system where attorneys in the deposition

15   have to constantly object or stop lines of questioning just to

16   be on the safe side, which is also going to lead to an

17   unnecessary numbers of calls to chambers and unnecessary

18   disputes over whether or not a discovery should be left open.

19        It just seems cleaner to allow parties to have a small

20   smount of time after the deposition to analyze whether or not

21   a document involved was privileged.

22        **THE COURT:**  I really don't agree with that.  The

23   attorney-client privilege is important, but it can't be

24   allowed to completely disrupt depositions in this manner.

25   When somebody's taking a deposition, they have to know that

1    they're getting testimony or they're not getting testimony.

2         And it can't just be after the fact that we look at what

3    the other side used as exhibits and then the research project

4    begins to determine if any of these were privileged.  That

5    would result in depositions being taken and then retroactively

6    becoming unusable.  And I think that's very destabilizing to

7    the case.

8         And I am concerned about the problem that after each

9    deposition, a team of associates will be unleashed to look

10   over all of the exhibits that were used to see how much of the

11   deposition can be clawed back.  I think that's a terrible idea

12   and heavily disruptive to discovery and for litigation.  So

13   I'm not going to agree with that.

14        One thing that plaintiffs had inserted was that if a

15   claim is made for the first time at a deposition that

16   materials are protected materials, the examining attorney may

17   seek expedited resolution of any dispute over the privilege.

18   I'm not going to agree to that because, well, I'd be the one

19   resolving those things.

20        And what I found from experience is that a phone call to

21   chambers in the middle of the deposition often doesn't provide

22   me with the information that I need to determine whether

23   something really is privileged.  I get two sides' renditions

24   of events but no real evidence to back up either of them.

25        And I think that it's more efficient for parties to go

1  through a deposition, whatever privilege claims are made are

2  mare.  And then after the fact, if the other sides wants to

3  challenge them, then you can file a joint discovery letter

4  brief.

5      The issue with this Rule 502(d) order is that documents

6  might be inadvertently produced that due to context or for

7  some reason might have been privileged.  Just as Ms. Bell was

8  saying, that may not be evidence on the face of the document,

9  but that also means it won't be evidence to me either on a

10 telephone call and I think more background may be necessary.

11     So I am not going to agree with the expedited resolution

12 which seems to imply that I would resolve something on the fly

13 during a deposition when that often just isn't possible.  So

14 I'm going to strike that language.

15     **MS. SCULLION:**  Thank you.

16     **THE COURT:**  I believe I've addressed everything.

17 Plaintiffs, are there other issues that you believe I have not

18 addressed?

19     **MS. SCULLION:**  Your Honor, this is Jennifer Scullion.

20     There is one difference between the language in Paragraph

21 6 where I believe our version, yeah, had the parenthetical at

22 the very end "(unless for purposes of challenging a claim that

23 the protected material is privileged or protected)."

24     The defendants I believe had struck that out.  The

25 referenced there is of course to what we've agreed to in

1    Paragraph -- in Section 3, rather, which is the marked-up

2    version is on Page 4 and that is the production of a copy of

3    the material in camera upon a court's request.  So I do think

4    the language in Section C needs to stay because that's what

5    it's referring to.

6        **THE COURT:**  But I thought the language in -- about

7    submitting a copy in camera to the court is for the producing

8    party to do.  But Section 6 is addressing what a receiving

9    party would do.

10       It looks to me like in Section 6, your parenthetical

11   would allow the receiving party to hang on to a copy to

12   litigate the challenge.  Is that what you were proposing?

13       **MS. SCULLION:**  You know what, you're correct.  Thank you,

14   Your Honor.  That makes more sense.

15       **THE COURT:**  All right.  So I agree with the defendants on

16   Section 6 striking out that language.  If I need a copy of the

17   item that is privileged that the privilege claim is for, I'll

18   ask the producing party to submit it in camera.  But I don't

19   agree that the receiving party can hang on to it and submit it

20   to the Court.

21       **MS. SCULLION:**  Thank you, Your Honor.

22       **THE COURT:**  Let me ask defendants, are there any issues

23   that you believe I have not addressed?

24       **MS. BELL:**  No, Your Honor.  That's all.

25       **THE COURT:**  All right.  Thank you.

1    Then let's talk about next steps.  I think I've ruled on

2  everything so far except for Section 3 I wanted the parties to

3  meet and confer about timing and deadlines and procedures for

4  clawback notices.

5    And then I think what should happen is the parties should

6  meet and confer about that.  If you can reach an agreement,

7  you should submit an agreed 502(d) order and, if not,

8  competing versions with a joint discovery letter brief.

9    Let me ask plaintiffs' counsel, I think I should put a

10  deadline on this so we get this put to bed sooner rather than

11  later.  Plaintiffs' counsel, what do you think would be a good

12  deadline?

13    **MS. SCULLION:**  A deadline if there's any dispute or

14  submission of a joint, I would say by next Friday.

15    **THE COURT:**  That would be April 28th.  is that right?

16    **MS. SCULLION:**  Correct.

17    **THE COURT:**  Does that work for defense or is there a

18  different deadline that you'd prefer?

19    **MS. BELL:**  No, Your Honor.  That works for us.

20    **THE COURT:**  Okay.  Then I order the parties to meet and

21  confer about the procedures in Section 3 and then by Friday,

22  April 28th, either submit an agreed upon 502(d) order or

23  competing orders accompanied by a joint discovery letter

24  brief.  And then I can rule on that.

25    My rulings today are as I've stated them on the record.

26

1    So if you have any -- if your notes aren't clear, please go

2    ahead and order a copy of the transcript.  I'm not going to

3    issue a written order coming out of today's hearing.

4         Plaintiff's counsel, anything further that you would like

5    t oaddress at this hearing today?

6         **MS. SCULLION:**  No, Your Honor.  Thank you very much.

7         **THE COURT:**  Defense counsel, how about you?

8         **MS. BELL:**  No, Your Honor.  Thank you.

9         **THE COURT:**  All right.  Thank you, counsel.  The matter

10   is submitted, and I look forward to the submission on April

11   28th, whether that's an agreed upon 502(d) order or competing

12   orders and a joint discovery letter brief.

13        Have a great day.

14        **MS. BELL:**  You too.

15        **THE CLERK:**  Thank you, everyone.  We're off the record in

16   this matter.  Court is in recess.

17        (Proceedings adjourned at 10:39 a.m.)

18                         ---oOo---

19

20

21

22

23

24

25

1      **CERTIFICATE OF TRANSCRIBER**

2          I, DIPTI PATEL, certify that the foregoing is a true and

3      correct transcript, to the best of my ability, of the above

4      pages of the official electronic sound recording provided to

5      me by the U.S. District Court for the Northern District of

6      California of the proceedings take on the date and time

7      previously stated in the above-entitled matter.

8          I further certify that I am neither counsel for, related

9      to, nor employed by any of the parties to the action in which

10     this hearing was taken.

11         I further certify that I am not financially nor otherwise

12     interested in the outcome of the action.

13

14     *Dipti Patel*

15     _____

16     DIPTI PATEL, CET-997

17     LIBERTY TRANSCRIPTS                    Date: April 25, 2023

18

19

20

21

22

23

24

25