IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 3047 |
| | ) ) | Case No. 4:22-md-03047-YGR |
| | ) | |
| ALL ACTIONS | ) ) ) ) | **JOINT STATEMENT RE: PLAINTIFF USER ACCOUNT PRESERVATION FORM DISPUTES** |
| | ) ) ) | Judge: Hon. Yvonne Gonzalez Rogers |
| | | Magistrate Judge: Hon. Thomas S. Hixson |

Dear Judge Hixson:

Plaintiffs and Defendants respectfully seek the Court's assistance to resolve a few remaining disputes concerning a proposed Plaintiff Preservation Information Form.  The Parties attach the following exhibits to this Joint Statement:

- **Exhibit A –** Plaintiffs' proposed Plaintiff Preservation Information Form, with Defendants' proposed additions and deletions in redline.

- **Exhibit B** – Clean version of Plaintiffs' proposed Plaintiff Preservation Information Form; and

- **Exhibit C –** Clean version of Defendants' proposed Plaintiff Preservation Information Form.

Pursuant to Your Honor's Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred telephonically and exchanged various redlines of each side's proposal before filing this Joint Statement. The parties further attest that they have complied with section 9 of the Northern District of California's Guidelines for Professional Conduct.

The parties would welcome a telephonic conference to discuss these disputed issues if the Court would find it helpful.

Dated:  May 3, 2023

Respectfully submitted,

*/s/ Christopher L. Ayers*

Christopher A. Seeger
Christopher L. Ayers
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

Lexi J. Hazam
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Previn Warren
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

*Plaintiffs' Co-Lead Counsel*


**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Email: asimonsen@cov.com

Phyllis A. Jones, pro hac  vice
Paul W. Schmidt, pro hac vice
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn
(State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

*Attorneys for Defendants Meta Platforms,
Inc. f/k/a Facebook, Inc.; Facebook
Holdings, LLC; Facebook Operations, LLC;
Facebook Payments, Inc.; Facebook
Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email: gdrake@kslaw.com

David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300

Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman
Faegre Drinker LLP
90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: +1 (612) 766-7000
Email: amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

**MUNGER, TOLLES & OLSEN LLP**

By:      /s/ *Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva  (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell (pro hac vice)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C.  20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH &**
**ROSATI**
**Professional Corporation**

*/s/ Brian M. Willen*
Brian M. Willen
bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou
cchiou@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Counsel for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

**Plaintiffs' Position**

Defendants' duty to preserve potentially relevant information already exists and is ongoing. The Court made that clear in its first Order. ECF No. 2, ¶f.

Defendants track, collect, and use a substantial amount of data on each of their users ("User Information"),[1] some of which is currently subject to short retention periods (*e.g.,* 30-, 60-, 90-days). To assist with Defendants' preservation of such information—*i.e.*, to facilitate their existing obligations—Defendants requested that Plaintiffs provide them with certain information. ECF No. 45, 14-15. Plaintiffs have agreed to provide the information requested and have been doing so.[2] Plaintiffs' proposed Preservation Form (Exh. B) is designed to streamline this process. It includes all necessary information to enable Defendants to identify and preserve relevant User Information.

The Parties' two remaining disputes[3] center on (1) Defendants' attempt to impose unreasonable conditions that Plaintiffs must satisfy ***before*** triggering Defendants' preservation obligations (Exh. A, ¶J) and (2) Defendants' intention to use Plaintiffs' information submitted for purposes outside of this litigation (*Id.*, preamble and fn. 4).[4]

***First***, Defendants insist that each Plaintiff complete attestations that they have notified third parties of the "preservation request." Such attestations are unnecessary to identify and preserve potentially relevant information (which is the sole purpose of this form). They are also unwarranted given that Defendants (not Plaintiffs) have possession, custody, and control over the third party account information which they are obligated to preserve. In certain instances, it would be imprudent, or even dangerous, for a Plaintiff to provide such notice, since the Plaintiff would need to identify themselves to the third-party user (*e.g.*, a situation where a plaintiff previously used the account of an abusive ex-significant other). Defendants do not even address this reality.

Notably, in each of their Privacy Policies, Defendants have already provided notice to third-party account holders that their information is subject to Defendants' preservation obligations. Defendants' Privacy Policies state that User Information may be preserved for numerous reasons, including in connection with litigation:

- "Your information … may be preserved and accessed for longer time if it's related to any of the following … "[a] legal request or obligation, including obligations of Meta Companies or to comply with applicable law …."[5]

- "There may be legal requirements to store your data and we may need to suspend those deletion practices if we receive valid legal process asking us to preserve content …."[6]

---

[1] While Plaintiffs have access to a small subset of the relevant User Information available to them on Defendants' platforms, Defendants possess all existing User Information.

[2] Because significant amounts of potentially relevant User Information is deleted by Defendants every day, most Plaintiffs have ***already*** submitted their information to Defendants.

[3] Defendants cannot even find agreement amongst themselves on any of these disputed provisions.

[4] Plaintiffs note that the JCCP Plaintiffs have indicated they intend to challenge these provisions with the JCCP court as not consistent with California law.

[5] *Meta Privacy Policy*, https://mbasic.facebook.com/privacy/policy/printable/(last visited 5/3/23).

[6] *Snap, Inc's Privacy Policy, Effective June 29, 2022*, https://values.snap.com/privacy/privacy-policy?_ga=2.75007380.766250008.1682660654-166454101.1682660654 (last visited 5/3/23).

- "We may disclose any of the Information We Collect to respond to subpoenas, court orders, legal process, law enforcement requests, [or] legal claims …."[7]

- "We also retain information when necessary to comply with contractual and legal obligations, when we have a legitimate business interest to do so … and for the exercise or defense of legal claims."[8]

- "Sometimes business and legal requirements oblige us to retain certain information, for specific purposes, for an extended period of time…. Reasons we might retain some data for longer periods of time include: … Complying with legal [] requirements…."[9]

Simply put, users already have received notice that Defendants can and will preserve User Information to comply with their preservation obligations. And Defendants routinely preserve users' information without providing further notice. And, again, in the event Defendants believe further notice is warranted, then Defendants are in the best position to provide such notice, as the relevant User Information is in their possession, custody, and control.

Defendants' proposed attestation would not reduce any risk that Plaintiffs provide inaccurate information. In ¶J, Plaintiff will identify the full legal name of a third party and, in ¶K, the third party name (again), all known identifying information, and the relationship of the Plaintiff to the third party, among other information. While mistakes may happen, if a Plaintiff provides an erroneous username or other information, then Defendants should be able to readily reconcile such information with the other information the Plaintiff provided, or request clarification from the Plaintiff. Requiring a Plaintiff to send a notice to the user by mail or otherwise will not do anything to correct the information submitted to Defendants or enable preservation.

Given Defendants' short retention periods, it is paramount that Plaintiffs be able to submit their User Account Preservation Forms as soon as possible to ensure Defendants cease their routine deletion of relevant information. Defendants' requested attestation is an unwarranted roadblock to ensuring timely preservation. It also has the potential to create side-litigation regarding what actions each Plaintiff took to attest that they provided sufficient notice to third parties regarding Defendants' preservation, with each Defendant taking potentially different positions on the threshold Plaintiffs must satisfy to trigger Defendants' preservation obligations.

Finally, Defendants' reliance on "various privacy obligations" is too vague. If Defendants mean the Stored Communications Act ("SCA") (which they previously suggested), then their reliance is untenable and premised on a flawed interpretation. The SCA is not applicable to Defendants' preservation of User Information, nor does it require notice to third parties at a time when discovery is stayed. Moreover, even once discovery opens, third-party consent is not always necessary for disclosure under the SCA. The SCA does not protect communications that are publicly available. *See* 18 U.S.C. § 2511(2)(g); *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 981 (C.D. Cal. 2010). Nor does it protect user records (as distinguished from the content of communications). Content includes "any information concerning the substance, purport, or meaning of that communication." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1033 (N.D. Cal.

---

[7] *TikTok Privacy Policy, last updated March 21, 2023*,

https://www.tiktok.com/legal/page/us/privacy-policy/en (last visited 5/3/23).
[8] *Id.*
[9] *Google's Privacy & Terms, How Google Retains Data We Collect*,

https://policies.google.com/technologies/retention?hl=en (last visited 5/3/23).

2014). Customer record information "includes personally identifiable information such as the customer's name, address, and identity." *Id.* Section 2702(c)(6) permits a Defendant to "divulge a record or other information" in litigation. *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014); *Obodai v. Indeed, Inc.*, 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013).

**Second**, under agreed-upon protective order language, Defendants have already agreed to use information designated Confidential only for purposes of this litigation. *See* ECF No. 192-4, ¶7.1. Nonetheless, Defendants—or at least some of them—assert that they intend to use this information to take action against third parties on their platforms, even when doing so would interfere with an ongoing law enforcement investigation. Exh. A, ¶L, fn. 4. This litigation will include victims of child sexual assault by abusers using fake accounts on Defendants' platforms and part of active law enforcement investigations.[10] If a Defendant takes action against those accounts before law enforcement can identify the abuser, then the abuser would be tipped off and free to create a new fake account and start all over again with a different child. This fear is not hypothetical.[11] If Defendants had their way, then Plaintiffs would need to make a Hobson's choice between submitting information to Defendants for preservation and thereby allowing Meta to interfere with an ongoing investigation of their abusers (and thus allow the abusers to avoid prosecution and abuse others using another username/false identity) *or* not providing the User Account Preservation Form, which would result in Defendants' deletion of critical evidence.

## DEFENDANTS' POSITION

**Third Party Notice (Paragraph J):**  Defendants Snap, TikTok, and YouTube propose that Plaintiffs attest that they attempted in good faith to notify a third party, such as a Plaintiff's family member or friend, whose account they used to access a Defendant's platform and are seeking to have preserved.  Defendants had originally requested (and would prefer) Plaintiffs to provide third-party *consent* before preservation of such third-party accounts, but have proposed this compromise to accommodate Plaintiffs' objections while still respecting third-party user privacy. Defendants also remain willing to continue to meet and confer on agreed-upon mechanisms for Plaintiffs to notify third parties to alleviate any risk of side litigation.  Defendants' proposal is motivated by three concerns:

First, in addition to protecting the privacy rights of third-party users, providing notice in the account identification process minimizes the risk of errors in account identification, which can lead to preservation of erroneous accounts.  Indeed, in forms Plaintiffs have already sent outside the court-ordered process, errors are already prevalent in Plaintiffs' own purported account information (e.g., Plaintiffs have provided emails with obviously wrong domains like "@gmails.com" and "@gamil.com"). Such mistakes are indicative of others that Defendants cannot discern in the username and other portions of provided account information.  Plaintiffs have also provided account information that either does not exist or that in fact belongs to someone with

---

[10] McQue, et al., *"How Facebook and Instagram became marketplaces for child sex trafficking,"* The Guardian, available at https://www.theguardian.com/news/2023/apr/27/how-facebook-and-instagram-became-marketplaces-for-child-sex-trafficking (last visited 5/3/23).

[11] O. Cullen, et al., *"Our Laws Have Not Caught up with the Technology": Understanding Challengers and Facilitators in Investigating and Prosecuting Child Sexual Abuse Materials in the United States,* LAWS (Nov. 2020) ("Frustrating law enforcement investigations further, users may be notified by ISPs that their accounts are being blocked or taken down, giving perpetrators a head start in hiding or destroying evidence.").

no connection to the case. These mistakes make it impossible for Defendants to identify the correct account or lead to Defendants preserving the wrong account. And the risk of errors is even higher for third-party accounts, for which Plaintiffs may have less identifying information. Requiring third-party notice before preservation benefits both parties by giving the third party an opportunity to verify their account details to Plaintiffs. At the same time, it imposes virtually no burden on Plaintiffs: Notice and cooperation with the third parties whose accounts Plaintiffs are claiming to have used, presumably with the third-party user's consent, should already be part of Plaintiffs' due diligence before they file claims or submit a Preservation Form in this litigation. It should not, as Plaintiffs suggest, delay timely submission of a Preservation Form. Plaintiffs also erroneously suggest that Defendants could provide notice, but Defendants' abilities are much more nuanced and limited (and differ by Defendant), especially when Plaintiffs identify the wrong account. Finally, Plaintiffs' abusive ex-significant other hypothetical is a strawman, as Defendants offered to waive the notice requirement if the Plaintiff had a "good faith safety concern."

Second, due to privacy obligations, Defendants typically require express written consent from an account holder before Defendants can produce account information in litigation unless disclosure without consent is legally required. Here, the identification and preservation of individual user accounts is a manual and time-consuming process that imposes significant burdens on certain Defendants—particularly given Plaintiffs' representations that they are planning to file thousands of additional cases.[12] If Plaintiffs have not laid the groundwork for obtaining consent of the third parties to discovery of their accounts, then the burden of preservation far outweighs the benefit since it is not clear that Plaintiffs will ultimately be entitled to production of third-party account data. *See Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014) ("This district recognizes that the proportionality principle applies to the duty to preserve potential sources of evidence.").

Third, Defendants provide tools to permit users to delete their account information, and users understandably expect that when they use those tools, their information will generally be deleted. To be sure, Defendants' Terms disclose that legal obligations to preserve information may sometimes supersede deletion policies. But this limited exception should not permit Plaintiffs to unilaterally override the deletion choices of third-party users without providing them notice— especially for third parties that Plaintiffs do not allege engaged in wrongdoing.

**Footnote 4.** Defendants Meta, TikTok, and Snap object to footnote 4 in the proposed form. Certain Plaintiffs allege they were harmed when other users directed misconduct at them on Defendants' services. Defendants need information about those other users for two reasons: to preserve information relating to those alleged bad actors' accounts; and to investigate whether those users have violated Defendants' terms of use and, if appropriate, take action against them— not only as a normal business practice but also as part of their litigation defense. As a precondition to providing identifying information for alleged bad actor accounts, Plaintiffs insist on precluding Defendants from "tak[ing] an adverse action against such third-party user without approval of law enforcement" whenever Plaintiffs state that "an active investigation" is "ongoing" involving that user. Meta, TikTok, and Snap oppose the inclusion of this language for three reasons.

*First*, the purpose of the form is to give Defendants the information necessary to preserve

---

[12] The JCCP Plaintiffs represented that they anticipate filing "2000 additional cases," Joint Status Conference Statement, at *30, Social Media Cases, No. 22STCV21355 (Cal. Super. Ct. May 1, 2023), and Plaintiffs have represented a similar anticipated volume in the federal MDL.

relevant user accounts. Those accounts will be preserved following receipt of the proper identifying information. Requiring Defendants to get permission from law enforcement before policing misconduct on their services is unnecessary to preservation and will only undermine the integrity of Defendants' services. It will jeopardize users' safety by preventing or delaying timely enforcement. If an account engages in alleged misconduct, Defendants must retain the ability to promptly investigate and take action, where appropriate. *See, e.g.*, *Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288, *6 (N.D. Cal. Sept. 27, 2019) (acknowledging the "public interest" in Facebook's ability to "police the integrity of its platforms"). The Protective Order does not change this analysis. Information about alleged bad actors is relevant when Plaintiffs allege claims against Defendants based on those individuals' conduct. Defendants' resulting investigations and any enforcement actions are an aspect of their defense of this litigation and that use is permitted by the Protective Order. Further, Plaintiffs' cursory analysis does not show that the existence of a particular alleged bad actor account even qualifies as Confidential information within the meaning of the Protective Order. Footnote 4 should be stricken for this reason alone.

*Second*, Footnote 4 improperly attempts to interfere with Defendants' existing processes for interacting with law enforcement . *See, e.g.*, https://www.facebook.com/records/login/. But there is no general legal requirement to obtain law enforcement permission before Defendants enforce their policies and terms of service. Through Footnote 4, Plaintiffs would insert themselves and this Court into Defendants' existing processes, without any real understanding of the existing legal landscape, consideration of the potential negative impacts on user safety, or support for the assertion that Defendants' actions will interfere with law enforcement investigations.

*Third*, Plaintiffs' proposal is unworkable. Plaintiffs do not explain: (1) what constitutes an "active investigation"; (2) what basis they would need to have for asserting that an "active investigation" exists; (3) how or why law enforcement would divert scarce resources to address Defendants' requests; (4) which law enforcement agencies should have this unilateral veto power (there are over 15,000 in the United States alone); or (5) how to ensure timely responses by law enforcement to such requests. This does not present a "Hobson's choice." Plaintiffs are not choosing between a government investigation and civil litigation. Defendants would preserve the accounts of alleged bad actor users and those preservations would be available if law enforcement ultimately elects to investigate the user. Defendants' approach simply aims to prevent future harm.

Plaintiffs' statements make clear that their proposed compromise, "to the extent consistent with Defendants' legal obligations and policies," is an empty promise, as they take the position that Defendants may never use the information provided for enforcement purposes. The form will thus invite disputes for this Court to resolve about whether Defendants were permitted to take action in a given case, all the while exposing Defendants to potential sanctions for violating a Court order and preventing Defendants from enforcing their policies and terms of service.

**Preamble.** All Defendants object to Plaintiffs' proposed statement in the preamble that "[t]he information provided in this form is not discovery …." While Defendants do not currently expect to use the form for purposes other than preservation and policy enforcement, Defendants cannot commit *ex ante* to an indefinite restriction on their ability to use information that Plaintiffs may provide in this form about their use of Defendants' services. And all parties are certainly free to advance any arguments about the relevance and admissibility of the form at an appropriate time.

## ATTESTATION

I, Brian M. Willen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:        May 3, 2023              By:    _/s/ Brian M. Willen_____
                                              Brian M. Willen

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br>**PLAINTIFF USER ACCOUNT PRESERVATION FORM** |
| This Document Relates to:<br><br>ALL ACTIONS<br>_____ . | |

The Plaintiff User named below submits this Plaintiff User Account Preservation Form, by and through the undersigned counsel, after reasonable investigation.  This information is Confidential pursuant to the Protective Order that has been or will be entered by the Court and is being provided solely for preservation purposes.  ~~The information provided in this form is not discovery and is not admissible for any purpose in this proceeding~~All parties reserve all rights to object to the admissibility of this form or any of the information contained herein.[1]

    A.  Plaintiff User's full name:

_____

    B.  Date of birth:

_____

---

[1]  Defendants represent that they differ in their abilities to use the various categories of information provided to identify accounts, and each Defendant will use reasonable, good-faith efforts to identify and preserve accounts.  The parties are meeting and conferring to more precisely define the scope of each Defendant's obligations to identify and preserve user account data, consistent with each Defendant's abilities.

C.  For any Plaintiff User who is a minor, the full name of the Plaintiff's legal representative or

guardian ad litem ("Representative") with authority to consent to the preservation of information

and to receive information on the minor Plaintiff's behalf is:[2]

_____

D.  City:

_____

E.  State:

_____

F.  Any phone number(s) that may have been used by Plaintiff User to create an account on a

Defendant's platform:

_____

G.  Any email address(es) that may have been used by Plaintiff User to create an account on a

Defendant's platform:

_____

H.  Known account username(s) used by Plaintiff User on Defendants' platforms:

- Facebook account URL link(s) used:

    _____

- Instagram account username(s) (handles) and/or URL link(s) used:

    _____

- YouTube account username(s) used:

    _____

---

[2] To the extent the Court has appointed a guardian ad litem to represent the Plaintiff in this action at the time this form is transmitted, Plaintiff will attach the Court's order to this form.

- Snapchat account username(s) used:

  _____

- TikTok account username(s) used:

  _____

- Other:

  _____

I.   Other identifying information that Plaintiff User wishes to provide that Defendants may be able

to use to identify a Plaintiff User's account(s):

_____

_____

J.   To the extent Plaintiff User's claims are predicated on use of any Defendant's platform via an
account opened and used primarily by a user other than the Plaintiff User, the full legal name of
the third party. By identifying a third-party in response to this Question J, Plaintiff attests that
they have a good-faith basis to believe that the third-party consents to the preservation of their
account data and will provide express written consent in connection with any request for
production[3]

_____

_____

> **Commented [A1]:** TikTok, Snap, and YouTube would add this language.

_____

[3] Preservation of account information should not be construed as an agreement to produce such
information.

K.  To the extent Plaintiff identifies any third party in response to Question J, identify:

| Third-party name | Defendant platform accessed | All known account identifying information (e.g., email address, phone number, URL, username or "handle") | Relationship of Plaintiff to third-party account holder | Estimated time period(s) during which Plaintiff used the third-party account |
|---|---|---|---|---|
| | | | | |
| | | | | |

L.  For preservation of third-party account(s) alleged to have been engaged in specific user-directed misconduct, identify:[4]

> **Commented [A2]:** Meta, Snap, and TikTok would remove this footnote.

| Name of the third-party bad actor | All known account identifying information | Platform on which the alleged misconduct occurred | Known (or approximate) date(s) of alleged misconduct |
|---|---|---|---|
| | | | |
| | | | |

---

[4] Third-party account information marked with an asterisk (*) means that an active investigation is ongoing and, to the extent consistent with Defendants' legal obligations and policies, Defendants should not take any adverse action against such third-party user without approval of law enforcement.

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY PRODUCTS
LIABILITY LITIGATION

Case No. 4:22-MD-03047-YGR

MDL No. 3047

This Document Relates to:

ALL ACTIONS

.

**PLAINTIFF USER ACCOUNT
PRESERVATION FORM**

The Plaintiff User named below submits this Plaintiff User Account Preservation Form, by and through the undersigned counsel, after reasonable investigation. This information is Confidential pursuant to the Protective Order that has been or will be entered by the Court and is being provided solely for preservation purposes. The information provided in this form is not discovery and is not admissible for any purpose in this proceeding.[1]

A.  Plaintiff User's full name:

_____

B.  Date of birth:

_____

---

[1]  Defendants represent that they differ in their abilities to use the various categories of information provided to identify accounts, and each Defendant will use reasonable, good-faith efforts to identify and preserve accounts. The parties are meeting and conferring to more precisely define the scope of each Defendant's obligations to identify and preserve user account data, consistent with each Defendant's abilities.

C. For any Plaintiff User who is a minor, the full name of the Plaintiff's legal representative or guardian ad litem ("Representative") with authority to consent to the preservation of information and to receive information on the minor Plaintiff's behalf is:[2]

_____

D. City:

_____

E. State:

_____

F. Any phone number(s) that may have been used by Plaintiff User to create an account on a Defendant's platform:

_____

G. Any email address(es) that may have been used by Plaintiff User to create an account on a Defendant's platform:

_____

H. Known account username(s) used by Plaintiff User on Defendants' platforms:

- Facebook account URL link(s) used:

  _____

- Instagram account username(s) (handles) and/or URL link(s) used:

  _____

- YouTube account username(s) used:

  _____

---

[2] To the extent the Court has appointed a guardian ad litem to represent the Plaintiff in this action at the time this form is transmitted, Plaintiff will attach the Court's order to this form.

- Snapchat account username(s) used:

    _____

- TikTok account username(s) used:

    _____

- Other:

    _____

I.  Other identifying information that Plaintiff User wishes to provide that Defendants may be able to use to identify a Plaintiff User's account(s):

    _____

    _____

J.  To the extent Plaintiff User's claims are predicated on use of any Defendant's platform via an account opened and used primarily by a user other than the Plaintiff User, the full legal name of the third party.[3]

    _____

    _____

K.  To the extent Plaintiff identifies any third party in response to Question J, identify:

| Third-party name | Defendant platform accessed | All known account identifying information (e.g., email address, phone number, URL, username or "handle") | Relationship of Plaintiff to third-party account holder | Estimated time period(s) during which Plaintiff used the third-party account |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

---

[3] Preservation of account information should not be construed as an agreement to produce such information.

1

2

3    L.  For preservation of third-party account(s) alleged to have been engaged in specific user-directed misconduct, identify:[4]

4

5

| Name of the third-party bad actor | All known account identifying information | Platform on which the alleged misconduct occurred | Known (or approximate) date(s) of alleged misconduct |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

[4] Third-party account information marked with an asterisk (*) means that an active investigation is ongoing and, to the extent consistent with Defendants' legal obligations and policies, Defendants should
28    not take any adverse action against such third-party user without approval of law enforcement.

# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR

MDL No. 3047 |
| ———————————————— | **PLAINTIFF USER ACCOUNT PRESERVATION FORM** |
| This Document Relates to:

ALL ACTIONS

——————————————— . | |

      The Plaintiff User named below submits this Plaintiff User Account Preservation Form, by and through the undersigned counsel, after reasonable investigation.  This information is Confidential pursuant to the Protective Order that has been or will be entered by the Court and is being provided solely for preservation purposes.  All parties reserve all rights to object to the admissibility of this form or any of the information contained herein.[1]

   A.  Plaintiff User's full name:

     _____

   B.  Date of birth:

     _____

---

[1] Defendants represent that they differ in their abilities to use the various categories of information provided to identify accounts, and each Defendant will use reasonable, good-faith efforts to identify and preserve accounts.  The parties are meeting and conferring to more precisely define the scope of each Defendant's obligations to identify and preserve user account data, consistent with each Defendant's abilities.

C. For any Plaintiff User who is a minor, the full name of the Plaintiff's legal representative or guardian ad litem ("Representative") with authority to consent to the preservation of information and to receive information on the minor Plaintiff's behalf is:[2]

_____

D. City:

_____

E. State:

_____

F. Any phone number(s) that may have been used by Plaintiff User to create an account on a Defendant's platform:

_____

G. Any email address(es) that may have been used by Plaintiff User to create an account on a Defendant's platform:

_____

H. Known account username(s) used by Plaintiff User on Defendants' platforms:

- Facebook account URL link(s) used:

  _____

- Instagram account username(s) (handles) and/or URL link(s) used:

  _____

- YouTube account username(s) used:

  _____

---

[2] To the extent the Court has appointed a guardian ad litem to represent the Plaintiff in this action at the time this form is transmitted, Plaintiff will attach the Court's order to this form.

- Snapchat account username(s) used:

  _____

- TikTok account username(s) used:

  _____

- Other:

  _____

I.  Other identifying information that Plaintiff User wishes to provide that Defendants may be able

    to use to identify a Plaintiff User's account(s):

    _____

    _____

J.  To the extent Plaintiff User's claims are predicated on use of any Defendant's platform via an
    account opened and used primarily by a user other than the Plaintiff User, the full legal name of
    the third party.  By identifying a third-party in response to this Question J, Plaintiff attests that
    they have a good-faith basis to believe that the third-party consents to the preservation of their
    account data and will provide express written consent in connection with any request for
    production.[3]

> **Commented [A1]:** TikTok, Snap, and YouTube would add this language.

    _____

    _____

---

[3] Preservation of account information should not be construed as an agreement to produce such information.

K.  To the extent Plaintiff identifies any third party in response to Question J, identify:

| Third-party name | Defendant platform accessed | All known account identifying information (e.g., email address, phone number, URL, username or "handle") | Relationship of Plaintiff to third-party account holder | Estimated time period(s) during which Plaintiff used the third-party account |
|---|---|---|---|---|
| | | | | |
| | | | | |

L.  For preservation of third-party account(s) alleged to have been engaged in specific user-directed misconduct, identify:[4]

Commented [A2]: Meta, Snap, and TikTok would remove this footnote.

| Name of the third-party bad actor | All known account identifying information | Platform on which the alleged misconduct occurred | Known (or approximate) date(s) of alleged misconduct |
|---|---|---|---|
| | | | |
| | | | |

---

[4] Third-party account information marked with an asterisk (*) means that an active investigation is ongoing and, to the extent consistent with Defendants' legal obligations and policies, Defendants should not take any adverse action against such third-party user without approval of law enforcement.