# EXHIBIT B

Paul R. Kiesel, State Bar No. 119854
    *kiesel@kiesel.law*
Mariana A. McConnell, State Bar No. 273225
    *mcconnell@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel:    (310) 854-4444
Fax:    (310) 854-0812

Jesse Creed, State Bar No. 272595
    *jcreed@psbr.law*
**PANISH | SHEA | BOYLE | RAVIPUDI LLP**
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Tel:    (310) 477-1700
Fax:    (310) 477-1699

Co-Liaison Counsel for Plaintiffs

[*Additional Counsel Listed on Signature Pages*]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| **COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.400]** | **JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5255** |
| **SOCIAL MEDIA CASES** | For Filing Purposes: 22STCV21355 |
| ——————————————————— | *Assigned for All Purposes to the* |
| **THIS DOCUMENTS RELATES TO** | *Hon. Carolyn B. Kuhl, Dept. SSC-12* |
| **ALL ACTIONS** | **JOINT STATUS CONFERENCE STATEMENT FOR MAY 3, 2023 CONFERENCE** |
| *(Christina Arlington Smith, et al., v. TikTok Inc., et al., Case No. 22STCV21355)* | Date: May 3, 2023 |
| | Time: 09:00 A.M. |

Pursuant to the Court's Minute Order dated March 22, 2023, the Parties respectfully submit this Case Management Statement in advance of the status conference scheduled for May 3, 2023 at 09:00 AM.  The Parties are glad to address these topics in whatever order Your Honor prefers.

## I.  Update on MDL Proceedings

Since the March 22, 2023 status conference before this Court, no additional Case Management Conferences have been held or scheduled in the MDL.  To update, the following has occurred in the MDL Court:

***Initial Pleadings Motions.***  On April 17, 2023, Defendants filed their initial motions to dismiss regarding the MDL plaintiffs' five "Priority Claims."  Plaintiffs' opposition shall be filed no later than June 1, 2023, and Defendants' reply shall be filed no later than June 30, 2023.  At Judge Gonzalez Rogers's instruction, the parties will contact the Court following the U.S. Supreme Court's decision in *Gonzalez v. Google LLC*, No. 21-1333 (U.S.) (arg. Feb. 21, 2023), to set a hearing date for Defendants' initial motions to dismiss and to discuss additional motion practice on Section 230 of the Communications Decency Act ("Section 230") and the First Amendment. Following a decision on those motions and any motion practice on Section 230 and the First Amendment, Defendants intend to file an additional round of motions to dismiss to address any remaining claims, consistent with Judge Gonzalez Rogers's prior guidance.  The MDL Court has not yet set a briefing schedule on the Section 230 and First Amendment motion practice.

***Proposed Orders.***  As ordered by Judge Gonzalez Rogers and/or Magistrate Judge Hixson, the MDL parties submitted or intend to submit the following proposed orders (or competing proposed orders and letter-briefing on their disputes) to Magistrate Judge Hixson or Judge Gonzalez Rogers on the following dates:

|  | Initial Submission(s) | Hearing | Post-Hearing Submission(s) | Status |
|---|---|---|---|---|
| **Protective Order** | March 17, 2023 | April 10, 2023 | TBD | TBD |
| **Stipulated Sealing Protocol** | March 23, 2023 | N/A | N/A | Pending Entry |
| **Rule 502(d) Order** | April 14, 2023 | April 19, 2023 | April 25, 2023 | Entered April 25, 2023 |
| **Plaintiff Preservation** | May 3, 2023 | TBD | TBD | TBD |

| Information Form | | | | |
|---|---|---|---|---|
| **Coordination Order** | May 5, 2023 | TBD | TBD | TBD |
| **Preservation Order** | May 26, 2023 | TBD | TBD | TBD |
| **ESI Protocol** | June 9, 2023 | TBD | TBD | TBD |

The JCCP Plaintiffs have been participating in the MDL parties' negotiations regarding these proposed orders, and the Parties will continue to meet and confer about entry of similar orders in the JCCP. The Parties intend to propose entry of the same types of orders in these proceedings, and will submit proposed orders and/or disputed issues to the Court consistent with its February 17 minute order.

## II. Status of These Proceedings

### a. "Coordination" Order

#### *Plaintiffs' Position*

At first, the JCCP Plaintiffs were willing to negotiate a reasonable "coordination order" that effectively prescribed what the JCCP Plaintiffs are already doing: to coordinate with counsel for the MDL Plaintiffs on discovery. However, Defendants proposed an order that goes far beyond that concept. Defendants' proposals attempt to use the coordination order to establish their preferred forum for litigation of these cases. In draft after draft, over Plaintiffs' repeated objections, Defendants have repeatedly attempted to restrict or eliminate this Court's jurisdiction over pretrial and discovery matters and restrict or eliminate the JCCP Plaintiffs' right under the Civil Discovery Act to conduct coordinated, non-duplicative discovery.

What's more, as of this writing, Defendants have cited no authority under the Code of Civil Procedure, Rules of Court, or California case law that support these restrictions. Not surprisingly, there is none. In fact, there is authority to the contrary as to restricting the authority of this Court to hear matters over which it has jurisdiction, *see Hamilton v. Sup. Ct.*, 37 Cal. App. 3d 418 (1974). ("[T]he San Mateo County court had jurisdiction of the action and that its order transferring the action was tantamount to a refusal to exercise its jurisdiction . . . and mandamus will lie to compel the court to assume and exercise its jurisdiction."). There's also recent authority from the California

Supreme Court involving an appeal from a complex action establishing that courts, even complex courts, cannot raise or alter the burden for discovery set by the Civil Discovery Act. *See Williams v. Sup. Ct.*, 3 Cal. 5th 531, 550 (2017) ("[T]rial courts lack discretion to augment the limitations on discovery established by the Legislature. . . . As a general matter, the statutory scheme imposes no obligation on a party propounding interrogatories to establish good cause or prove up the merits of any underlying claims"). In other words, where the Civil Discovery Act does not require a "good cause" or other higher or different standard for a plaintiff to serve discovery, Defendants cannot demand the JCCP Plaintiffs meet such a standard. Defendants' attempts to distinguish *Williams* ignore this holding. Defendants claim *Williams* simply held that a trial court could not require proof that a case is meritorious before permitting discovery. But *Williams* specifically forbade what Defendants seek to do, which is to require Plaintiffs to "seek leave" to serve discovery "upon showing . . . ***good cause*** why the discovery could not have been obtained through coordinated discovery in the MDL." 4/18/23 Draft Coordination Order. *Williams* expressly said no to this.

Defendants' efforts to restrict this Court's jurisdiction also fly in the face of this Court's previous order establishing that "no special master will be appointed and all discovery disputes should be presented to the court for discussion in an Informal Discovery Conference." 2/17/2023 Minute Order at p. 4. In the complex courts, there is a "policy not to have special masters." 2/17/2023 Hr'g Tr. at 38:23-16. The Court also noted that it "closely supervise[s] discovery." *Id.* at 39:5-6. Defendants' restrictions also would restrict this Court's pretrial scheduling.

The Defendants' stated reasons for implementing these restrictions are that it "makes sense" to have a lead case and the MDL is "ahead" of the JCCP. What makes sense is for the plaintiffs' lawyers in both proceedings to coordinate in propounding and handling discovery, which they will do with or without an order. What also makes sense is for Defendants to agree that all discovery requests and responses served in either proceeding will be treated as though they were served in both proceedings, for efficiency. The Court has already counseled against duplicative discovery. 2/17/23 Minute Order at p. 4 ("In general there should not be duplicative discovery as between the MDL and this JCCP."). Nothing more is needed at this point in time. While Defendants harp on the need for efficiency, efficiency does not justify the restrictions they seek. And in any case, the

California Supreme Court has rejected any order inconsistent with California law on the basis of efficiency.  *See Elkins v. Sup. Ct.*, 41 Cal. 4th 1337, 1368 (2007) (rejecting authority of trial courts to adopt provisions inconsistent with the Code of Civil Procedure or Rules of Court on the basis that they "exalt efficiency over fairness").  The California Supreme Court has noted that a "common theme in the appellate decisions invalidating local rules [and trial court orders] . . . is that a local court has advanced the goals of efficiency and conservation of judicial resources by adopting procedures that deviated from those established by statute, thereby impairing the countervailing interests of litigants as well as the interest of the public in being afforded access to justice, resolution of a controversy on the merits, and a fair proceeding."  *Id.*

The premise of Defendants' rationale also appears to be prematurely stated.  No one yet knows which case will be at issue first and to what extent the case will be at issue.  It appears Defendants anticipate multiple rounds of motions to dismiss in the MDL with no end date in sight.  And the only case to have served and obtained any discovery is the San Mateo County Superior Court case coordinated before this Court.

At this point, the JCCP Plaintiffs have told the Defendants that if they insist on these provisions, they must proceed by noticed motion on the whole coordination order.  The Defendants know which of the provisions are at play, but fundamentally, Defendants must proceed by noticed motion if they intend to restrict this Court's jurisdiction to resolve any matters properly before it under California law or the JCCP Plaintiffs' discovery rights or limit the pace of pre-trial matters in this case behind the MDL.

Defendants claim that Plaintiffs' concerns are premature, but that is not so.  There have been over four drafts circulated and hours of meet and confer, and the JCCP Plaintiffs told the Defendants that any version of the provisions that restrict the Court's jurisdiction or the JCCP Plaintiffs' discovery rights would require a noticed motion.  Yet, Defendants persist with these provisions.  In the most recent version, Defendants insisted that all disputes must be presented to the MDL Court, imposing some kind of "exhaustion" requirement that is unsupportable under California law.  Defenadnts' proposal reads: "In the event that the parties are not able to resolve any disputes pertaining to generally applicable discovery that may arise in Coordinated Discovery, such disputes

will be presented in the first instance to the MDL Court, pursuant to the applicable federal law and applicable local rules and procedures." But per Defendants' proposed order, if the applicable governing law "differs materially" from the Federal Rules of Civil Procedure – whatever that means – the JCCP Plaintiffs could go to this Court first.[1]  And while Defendants cite some comments by the Court at that last hearing, Defendants have outright rejected the Court's proposal at the last hearing that it act as the judge over all discovery disputes.

Moreover, these issues need not be resolved by the MDL Court "first," where the JCCP Plaintiffs believe that a noticed motion is required to obtain the orders they seek.  Practically speaking, there will be two primary forum, the MDL and the JCCP, as both will have jurisdiction over any case filed in the country, given that California is the home state of all the Defendants. Therefore, as the Court being subordinated by Defendants over the JCCP Plaintiffs' objections, the JCCP Plaintiffs told the Defendants that they should proceed promptly in this Court by noticed motion.

Defendants' citation of "coordination orders" from other litigations should carry no weight for two reasons.  First, those orders were all stipulated by the parties.  Second, in the JUUL litigation in Department 11, literally nextdoor to this Court, there were none of the restrictions on the Court's jurisdiction to resolve matters properly before it or the JCCP Plaintiffs' discovery rights that Defendants seek to impose through their coordination order.  The JCCP Plaintiffs could propound discovery and then enforce such discovery in the JCCP Court, as could the MDL Plaintiffs.  There were no complaints of inefficiencies speculated by the Defendants in their section.  Of course, there would be a conferral process to avoid duplicative discovery (which the Plaintiffs agree should occur), but both Courts were open to the parties before them.  Furthermore, in some cases, the MDL

---

[1] Showing their unequivocal preference for the federal forum, the Defendants initially proposed that the federal forum be the exclusive forum for resolving disputes: "In the event that the parties are not able to resolve any disputes pertaining to generally applicable discovery that may arise in Coordinated Discovery, such disputes will be presented to and resolved by the MDL Court, pursuant to the applicable federal law and applicable local rules and procedures."  In essence, the only movement Defendnats have made after turning three drafts to Plaintiffs is the insertion of the word "first" before "presented."

1   Court literally has no subject matter jurisdiction to decide any disputes between the parties, yet the

2   Defendants ask this Court to require those parties' disputes to be resolved by a Court without any

3   jurisdiction to hear them.

4        Defendants claim that the JCCP Plaintiffs "appear to have no interest in meaningful

5   coordination with *the MDL proceedings*" is contrary to the JCCP Plaintiffs' demonstrated conduct

6   to date.  The JCCP Plaintiffs have actively participated in meet and confer efforts to date to which

7   they were invited.  The JCCP Plaintiffs have already demonstrated – without any Court order – that

8   they will not seek to bring disputes before this Court that were resolved by the MDL Court unless

9   California law requires a different result.  The Protective Order is a prime example.  The Plaintiffs

10  brought over a dozen disputes to the federal magistrate judge, and the JCCP Plaintiffs identified

11  two specific issues – the right of the public to challenge sealing orders and the prohibition on

12  unilateral disclosure of experts under Califronia law – that justified a different result under

13  California law.

14       Defendants accuse Plaintiffs of seeking to pick and choose different forums, but the irony

15  is that Defendants seek to pick their preferred forum before any material rulings in any forum has

16  been made, before any case is at issue, and before any discovery has been propounded (with the

17  notable exception of a State court case coordinated before this JCCP).  And when Defendants were

18  aware of this Court's guidance on the protective order regarding California's prohibition on the

19  premature disclosure of experts, *see infra*, Defendants did not disclose the Court's guidance to the

20  magistrate judge to promote uniformity.  Defendants withheld the Court's guidance to obtain a

21  better ruling from the magistrate judge.  Defendants seek uniformity only when it is beneficial to

22  Defendants.

23       Furthermore, Defendants argue it would be "unfair" for the JCCP Plaintiffs to obtain the

24  discovery produced in the MDL without restrictions on their ability to obtain further discovery in

25  the JCCP.  Yet, the purpose of giving the JCCP Plaintiffs discovery produced in the MDL is to

26  avoid the duplication and inefficiencies as an end to itself.  That is, if the Defendants did not agree

27  to produce discovery they produced in the MDL, then the JCCP Plaintiffs would have no choice

28  but to propound identical discovery in the JCCP.  The purpose of an obligation on the Defendants

1   to serve single discovery responses in both cases is to relieve Defendants of the burden of

2   duplicating discovery responses.  Relieving that burden is not a benefit to the JCCP Plaintiffs.  It is

3   a benefit to the Defendants and one that the JCCP Plaintiffs have agreed to give Defendants.

4   Furthermore, if discovery is treated to be propounded and served in both actions, then the JCCP

5   Plaintiffs could enforce discovery in the JCCP in situations where the MDL Plaintiffs have chosen

6   not to in the MDL, and vice versa.

7          At its first conference, this Court expressed a preference to set early trials.  The JCCP

8   Plaintiffs embrace that objective.  Defendants' coordination order expressly stymies that objective

9   as it requires the Court to go no faster than the MDL.  In the end, the two courts are likely to

10  cooperate and collaborate in scheduling.  No order is required for the Court to use its judgment and

11  years of experience in setting the pace of this litigation in concert with the MDL Court.

12         In sum, the JCCP Plaintiffs have told the Defendants that they are willing to enter into a

13  coordination order so long as the order is consistent with the California Code of Civil Procedure

14  and California law.  Restrictions on this Court's jurisdiction (including an exhaustion requirement)

15  and the JCCP Plaintiffs' discovery rights are not consistent.  Therefore, if Defendants insist on

16  either, they should file a motion to secure the unlawful order they seek.

17         ***Defendants' Position***

18         Plaintiffs' characterizations of both the contents of Defendants' draft Coordination Order

19  and the negotiations to-date are inaccurate, and the issues they seek to raise here are premature.[2]

20         *First*, Plaintiffs' attack on Defendants' draft Order—which remains in draft form and is not

21  yet before this Court for adjudication—is premature and improper.  The parties to the MDL are still

22  negotiating the terms of the Order.  Having been informed that Judge Gonzalez Rogers would be

23  out during the month of April and recognizing that the meet-and-confer process has narrowed the

24  issues in dispute, and at plaintiffs' insistence, the parties in the MDL agreed to continue their

25  discussions and jointly submit a proposed order (and letter briefs regarding any disputes) to Judge

26

27  ─────────────────────────
    [2] In light of this Court's comments about the nomenclature used by the Parties for this Order,
28  Defendants intend to propose alternative language when seeking entry of the Order in this Court.

1  Gonzalez Rogers on May 5.  The substance of the Order would then be reviewed, addressed, and

2  entered by the MDL Court to govern only the MDL.

3  At that point, the Parties would present the Order to this Court (and any other court before

4  which a related action is pending), along with any JCCP-specific disputes—as Plaintiffs' counsel

5  (Mr. VanZandt) explained to this Court at the last JCCP CMC.  *See* Mar. 22, 2023 Hr'g Tr. 31:3–

6  10 ("We are meeting and conferring with Defendants and MDL counsel on a proposed coordination

7  order for the MDL *and then* we'll potentially be looking to propose a similar order here to Your

8  Honor." (emphasis added)).  Only then would any disputes remaining between the Parties be ripe

9  for Your Honor's consideration; Plaintiffs' insistence on raising these issues now amounts to a

10  request for an advisory opinion, wasting both the Court's and the Parties' time.[3]  And any court that

11  enters the Order (including this Court) would by its terms retain jurisdiction to modify or rescind

12  the Order.

13  This Court has previously endorsed an approach whereby the MDL Court would issue

14  discovery protocols, followed by adoption or modification in the JCCP.  *See* Mar. 22, 2023 Hr'g

15  Tr. 11:3–7 ("I am quite willing to wait until federal court finishes its work [on the protective order]

16  and then look at necessary modifications . . . ."); *see also id.* at 13:4–7 (protective order and ESI

17  protocol).  The proposed process for implementing the Coordination Order helps facilitate the

18  Court's preferred approach.

19  *Second*, Defendants' draft Coordination Order—which is consistent with coordination

20  orders entered in other MDLs (and parallel state coordinated proceedings) around the country—is

---

[3] Plaintiffs' claim that they have "already demonstrated . . . that they will not seek to bring disputes before this Court that were resolved by the MDL Court" rings hollow given their insistence on continually raising issues here before they are even *presented to* the MDL Court.  Indeed, while Plaintiffs cite the Protective Order as a "prime example" of their ability to coordinate with the MDL, it is just the opposite:  despite joining the MDL Parties' meet-and-confers on the Protective Order, the JCCP Plaintiffs waited until the last minute (just before the Order was due to the MDL Court) to raise concerns with it.  Although Defendants agreed to make certain changes to address those concerns, it was too late for the MDL Plaintiffs to agree to incorporate them into the agreed-upon sections of the proposed Protective Order that went to Magistrate Judge Hixson.  The JCCP Plaintiffs then prematurely raised those issues with this Court in the last CMC statement, and have prematurely re-raised them again here, before any Protective Order has been entered in the MDL or proposed for entry by this Court.

intended to (a) streamline parallel federal and state court pretrial proceedings (including the JCCP and all other cases and proceedings that arise across the country) such that each party has the benefit of the coordinated discovery; (b) prevent duplicative discovery and the undue burden and costs on courts, parties, and nonparties from conducting the same discovery twice; (c) produce substantial savings in judicial resources; and (d) promote the just, speedy, and efficient resolution of cases.[4] This aligns with one of the Complex Court Program's own goals: "to reduce litigation costs to the extent possible for the parties."  Feb. 17, 2023 Hr'g Tr. 4:25–5:1.

Contrary to the JCCP Plaintiffs' position, Defendants' draft Coordination Order in no way attempts "to restrict or eliminate this Court's jurisdiction over pretrial and discovery matters" or "restrict or eliminate the JCCP Plaintiffs' right under the Civil Discovery Act to conduct coordinated, non-duplicative discovery."  Rather, the draft Order designates the MDL as the "lead case" for coordinated discovery, and then effectuates this Court's desire that (1) "all of the documents in discovery produced by defendants in the MDL should be available to the plaintiffs here" in the JCCP and (2) that "the plaintiffs here will be precluded from duplicating discovery that's done in the MDL."  Feb. 17, 2023 Hr'g Tr. 33:22–26.

The JCCP Plaintiffs, however, appear to have no interest in meaningful coordination with *the MDL proceedings*.  Rather, they wish to limit any coordination to informal "coordinat[ion] with counsel for the MDL Plaintiffs on discovery," leaving them the option to pick and choose what aspects of MDL discovery suit them.  It would be unfair for the JCCP Plaintiffs to automatically receive all discovery produced in the MDL under the guise of "efficiency," with no restrictions on their ability to seek even more, including by relitigating requests for material that the MDL Court may have ruled non-discoverable.  It is evident that the JCCP Plaintiffs want to use these proceedings as an opportunity for a do-over, claiming that the Civil Discovery Act leaves this Court without authority to disallow this gamesmanship.  Not so.  "[T[he discovery statutes vest a wide

---

[4] *See* Exhibit 1, Manual for Complex Litigation (Fourth), Related State and Federal Cases – Coordination, §20.31; Exhibit 2, Guidelines and Best Practices for Large and Mass-Tort MDLs, Bolch Judicial Institute, Duke Law School (Second Edition), Chapter 6 – Federal/State Coordination, p. 81.

1   discretion in the trial court in granting or denying discovery." *John B. v. Superior Ct.*, 38 Cal. 4th

2   1177, 1186 (Sup. Ct. 2006); *see also* Cal. Civ. Proc. Code § 2017.020(a).   Indeed, the cases

3   Plaintiffs cite have no relevance here:   *Hamilton* held that a court could not *sua sponte* transfer a

4   properly-venued case to another California court. And *Williams* held that a trial court could not

5   require proof that the case is meritorious before permitting discovery.   Plaintiffs' commentary on

6   *Williams* suggests they have misread both *Williams* and the draft Coordination Order.   In *Williams*,

7   the Supreme Court reversed a trial court order requiring the plaintiff to establish good cause to

8   propound certain discovery in a PAGA action.   Unlike the trial court's order in *Williams*, the

9   Coordination Order proposed by the Defendants does not require a showing of good cause (or any

10   other showing) before a party may propound discovery.   Rather, it designates the MDL as the "lead

11   case" for coordinated discovery.   It also provides that if there is good cause why that discovery

12   could not have been obtained in the MDL then it can be pursued in the JCCP.   *Williams* is

13   inapposite, the Coordination Order proposed by the Defendants does not cut off or restrict any

14   party's right to discovery, but rather designates the MDL as the "lead case" for coordinated

15   discovery.

16          Because of the potential for duplication, administrative burden, and inconsistent discovery

17   rulings, among other issues, it is inefficient for multiple jurisdictions to be "lead cases" engaged in

18   uncoordinated discovery.   Instead, as a practical matter, coordination orders are mutually beneficial

19   for plaintiffs and defendants precisely because there is a "lead case" for discovery that precedes

20   other coordinated cases' discovery schedules, to allow general discovery from a central litigation

21   to be used in other litigations.   Here, it makes sense that the MDL would be the "lead case" in

22   coordinated discovery with not only the JCCP, but also all other cases and proceedings that arise

23   across the country, given that the actions in the MDL were coordinated significantly earlier than

24   the actions here; and it is not uncommon for an MDL proceeding to be the "lead case" in

25   coordination orders.   *See, e.g.*, *In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, 1:22-md-

26   03043-DLC, ECF No. 382 at 3 (S.D.N.Y.) ("The MDL shall be the lead case for discovery and pre-

27   trial proceedings.   Discovery in a Coordinated Action shall not delay or interfere with discovery in

28   the MDL and shall not be more expedited than the fact and expert discovery schedule set in the

JOINT STATUS CONFERENCE STATEMENT FOR MAY 3, 2023 CONFERENCE

MDL.") (attached as Exhibit 3). Indeed, Defendants understand this approach to be consistent with this Court's prior guidance. *See* Mar. 22, 2023 Hr'g Tr. 34:6–10 ("[T]he federal court started first so . . . *if they are going first with the discovery, I'm happy for it to be just brought into this case. That's okay.*" (emphasis added)); *id.* at 34:15–18 ("[Y]ou could do the discovery management in this case and then produce it in the federal case, *but that's not the way things usually work.*" (emphasis added)).

The current draft Order also includes mechanisms by which state-court plaintiffs in related actions can seek additional discovery, beyond what is obtained in the MDL. Further, Defendants' draft Order specifically provides flexibility in scheduling across the litigation, stating that "the Coordinated Actions shall not precede discovery in the MDL . . . *unless the Trial Court in a Coordinated Action finds good cause to adopt a schedule that is more expedited than in the MDL*" (emphasis added). Defendants' draft Order also explicitly provides that the MDL Court expects to confer with the judges in Coordinated Actions, as appropriate, prior to resolving any discovery disputes and that the "parties to the JCCP may for good cause present disputes pertaining to generally applicable discovery for resolution to the JCCP."

In short, the issues Plaintiffs are raising are premature, and in any event misplaced. The negotiations on the Coordination Order are still ongoing in the MDL. But rather than allowing the process to unfold first in the MDL, as the Parties previously agreed, the JCCP Plaintiffs have stymied the conferral process due to their unwillingness to exchange drafts and meet and confer in an effort to narrow the disputed issues—despite insisting on a one-month extension of the original Coordination Order submission deadline in the MDL to facilitate further conferrals. Defendants, on the other hand, have been diligent in their attempts to continue to meet and confer with both the MDL and JCCP Plaintiffs in negotiating the terms of the Order. In advance of the May 5 deadline to submit a proposed Coordination Order in the MDL, Defendants invite both the MDL and JCCP Plaintiffs to continue the dialogue about ways to minimize unnecessary duplication of pretrial efforts, to conserve judicial and party resources, and to ensure a level of coordination and cooperation between the MDL and JCCP. Defendants are optimistic that with continued negotiations, the Parties could further narrow the issues in dispute.

### b.  Master Complaint

On April 17, 2023, Plaintiffs provided a draft Master Complaint and a proposed Short Form Complaint to Defendants.  On April 28, 2023, Defendants sent Plaintiffs a letter outlining perceived deficiencies in Plaintiffs' draft/proposed pleadings.  The Parties will be meeting and conferring today, May 1, 2023, regarding the draft Master Complaint and proposed Short Form Complaint. Plaintiffs shall file the Master Complaint, proposed Short Form Complaint, and an accompanying proposed implementation order on or before May 15, 2023.

### c.  User Interface Day

#### _Plaintiffs' Position_

Plaintiffs understand that the Court would like presentations explaining how a user experiences Defendants' various products.  Plaintiff respectfully requests that these presentations, should they be necessary after reviewing Plaintiffs' Master Complaint, be delayed until after the Court issues its rulings on Defendants' demurrers.

Plaintiffs object to Defendants' proposal giving Defendants – and only Defendants – an opportunity to present extrinsic evidence to the Court with a demurrer pending.  The legal standards on a demurrer are well-settled that the Court is confined to the four corners of the complaint and should not be reviewing or considering any extrinsic evidence.  Yet, Defendants wish to present extrinsic evidence to the Court, some of which is undoubtedly going to seek to refute the allegations in Plaintiffs' complaint.  (One could imagine a slide with a quote from Plaintiffs' complaint about a safety risk two years ago, followed by Defendants' depiction of a new safety feature to mitigate that risk starting last week).  If any such presentation were to happen before a demurrer is ruled upon, it should be led only by the Plaintiffs, given that the record considered by the Court in ruling upon a demurrer is developed and authored solely by the Plaintiffs (i.e. the complaint).  If Defendants wish to participate in any User Experience Day, they must wait for the demurrer to be ruled upon and discovery to be open.  Plaintiffs also had concerns about the relevant time period, as Defendants are releasing safety features nearly every other week to combat the very dangers alleged in this lawsuit.  Defendants said they would likely use the

current product for the User Experience Day, which presumably would showcase their new safety features.  But this time period is not representative of Plaintiffs' allegations.

### ***Defendants' Position***

Consistent with the Court's guidance at the last status conference, Defendants believe a Defendant-led "User Interface Day," which will simply provide the Court with basic information about how Defendants' platforms work from the perspective of the user, Mar. 22, 2023 Hr'g Tr. 44:16-23, should be held at the Court's convenience, which the Court previously indicated would be at some juncture before a hearing on Defendants' demurrers.  *See id.* at 27:21-28:4 ("I think I would be benefited by having one prior to the hearing on the demurrers . . . .").  Plaintiffs identify no compelling reason to delay this presentation.  Basic information about platform functionality will not inject consideration of matters outside the scope of the pleadings.  And in any event, this Court is well aware of the parameters of the demurrers, and it is certainly able to confine consideration of the demurrers to the proper matters.

On April 20, Defendants held a meet-and-confer with Plaintiffs to begin discussing the parameters of such a presentation.  Defendants proposed a neutral, fact-based and defendant-led presentation that would educate the Court on the features of the platforms from the user's perspective.  Consistent with the Court's guidance during the February and March status conferences, Defendants further explained to Plaintiffs their intent to limit the presentation to non-advocacy, factual statements and screenshots that would orient the Court to the platform's basic features.  *Id.* at 27:18–28:4, 15–16, 27:25–27 ("but really something like screen shots as to what things look like"), 28:3–4 ("So I'm thinking of mainly screen shots type of thing.").  During the meet-and-confer with Plaintiffs, Defendants also offered to share Defendants' proposed screenshots in advance of the presentation and to consider Plaintiffs' feedback.  However, when Defendants would not agree to Plaintiffs' proposal that any User Interface Day should be held after the demurrer hearing, Plaintiffs took the position that Defendants should have no role in the presentation—notwithstanding the Court's guidance that it would be "very deferential to the Defendants in this area."  *Id.* at 30:26–31:2.

Defendants respectfully request that the Court order the Parties to meet and confer further on a proposed order setting forth parameters for a Defendant-led User Interface Day.

### d. Demurrer Schedule

#### *Plaintiffs' Position.*

In response to the Court's desire for expedited demurrer briefing and in recognition of the plaintiffs' ongoing injuries, Plaintiffs proposed a significantly shortened demurrer schedule.. Despite multiple rounds of meet and confers, the parties were unable to reach agreement.  Plaintiffs believe that their schedule, as outlined below, provides the parties ample time and will ensure demurrer issues are resolved as soon as possible, paving the way for active discovery, and accommodates the forthcoming *Gonzalez* opinion as Defendants requested.  Plaintiffs ask the Court to adopt their proposed demurrer schedule so as to ensure that this litigation continues to move expediently towards trial.

1. On or before June 2, 2023: Plaintiffs shall identify three (3) short form complaints that shall be subject of demurrers

2. On June 30, 2023 or 4 weeks after the United States Supreme Court's decision in *Gonzalez*, whichever is later: Defendants shall file any joint and individual demurrers

3. On July 28, 2023 or 4 weeks after Defendants file their joint and/or individual demurrers, whichever is later: Plaintiffs shall file their opposition to Defendants' demurrers

4. On August 11, 2023 or 2 weeks after Plaintiffs' opposition, whichever is later: Defendants shall file their reply in support of their demurrers

Defendants assert that this schedule is unworkable because of "the complexity of the issues in play, the volume of briefing and argumentation, and the need to coordinate among the four Defendant groups". With respect to the complexity of issues and the need to coordinate, Defendants ignore that they have briefed many of these issues before.  *See, e.g., Rodriguez v. Meta Platforms, Inc.,* No. 3:22-cv-00401-JD, Jt. Mot. to Dismiss, ECF No. 94, July 25, 2022 (NDCA) (seeking dismissal jointly by Meta, Snap, and TikTok and arguing Section 230, First Amendment, product liability, negligence, and other issues) (attached hereto as Exhibit 4); *Jane Doe v. Meta Platforms, Inc.,* No. 4:22-cv-00051-YGR, Mot. to Dismiss, ECF No. 22, March 7, 2022 (NDCA) (seeking

dismissal by Meta arguing Section 230, First Amendment, product liability, negligence, and other issues) (attached hereto as Exhibit 5); *Ripple Labs Inc. v . YouTube, LLC.*, No. 3:20-cv-02747-LB, Mot. to Dismiss, ECF 26, July 20, 2020 (NDCA) (attached hereto as Exhibit 6). Simply because these issues have not been briefed specifically in MDL 3047 does not warrant the extension of deadlines that Defendants are requesting.  Defendants have had months—if not years—to prepare for these motions, and as of April 21, 2023, Defendants have had in their possession Plaintiffs' draft Master Complaint and Short Form Complaint. Moreover, as Defendants note below, Plaintiffs' draft Master Complaint is similar in many respects to the Master Complaint filed in MDL 3047, which Defendants have had since February 14, 2023. Thus, to presently claim the need for more time is unreasonable.

Moreover, Plaintiffs are concerned that providing additional time for Defendants to coordinate will set a precedent that Defendants will insist upon in future motion practice.  Many lawsuits, including coordinated litigations such as this, involve multiple defendants (and multiple plaintiffs), and counsel are able to efficiently proceed under reasonably aggressive schedules.

Likewise, Defendants' concern that Plaintiffs' proposed June 30th deadline overlaps with a pending deadline in the MDL is not sufficient reason to delay resolution of demurrers in the JCCP. Specifically, Defendants are concerned with the alleged burden of having to meet the MDL deadline for Reply briefs on their Omnibus Motion to Dismiss Plaintiffs' Master Complaint.  Respectfully, the prospect of overlapping deadlines in separate litigations is not reason enough to delay proceedings—particularly when the overlapping deadlines share similar subject matter as in this case (motions to dismiss vs. demurrers).  Indeed, absent coordination in the JCCP and MDL, there can be little doubt that Defendants would face many more overlapping deadlines across the country. Notwithstanding this, Plaintiffs offered to move the proposed deadline for Defendants' opening brief by a week (either earlier or later), which Defendants rejected and instead insisted upon more time.

Next, Defendants' assertion that the demurrer briefing schedule should "arguably be longer" than the briefing schedule for the motion to dismiss in MDL 3047 is without basis.  First, Defendants fail to inform the Court that they seek in MDL 3047 to dismiss Plaintiffs' five priority

claims under the laws of all fifty states—an expansive undertaking that involves a state-by-state analysis of each claim.  Here, at most three states are at play, and as noted above, Defendants have briefed the majority of the issues in the MDL or in prior proceedings. *See* Exhibits 4-6. Second, Defendants ignore what this Court has already stated: "But we have to be realistic that a California demurrer is not Iqbal and Twombly.  It's just not.  It's different from motion to dismiss."  3/8/2023 Hr'g Tr. at 28:15-17.  The Court repeated: "The reason I wanted to brief the entirety of a complaint or, as we're going to do, three complaints is because of the strictures on demurrers in California. . . . But 12(b)(6) is different too, quite different, frankly, so being aware of how it's being done in federal court, I think I'm satisfied that this is a better way for State court."  *Id.* at 7:17-27.  Unlike the federal standard for motions to dismiss, demurrers are reviewed under a more "flexible approach":

> If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the factual allegations of the complaint are adequate to state a cause of action under any legal theory."

*Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 38-39, 960 P.2d 513, 519 (1998), as modified (Sept. 23, 1998) (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 103, 101 Cal.Rptr. 745, 496 P.2d 817 (1972); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 339, 60 Cal.Rptr.2d 539 (1997)).

Finally, without first meeting and conferring with Plaintiffs, Defendants propose page limitations on demurrer briefing.  These page limits are excessive.  Rule 3.1113 provides that, except in sumamary judgement or summary adjudication, opening memoranda is limited to fifteen (15) pages.  In another case involving Defendants Meta, Snap, and TikTok, which has now been consolidated into MDL 3047, Defendants jointly filed a motion to dismiss arguing these issues in twenty (20) pages.  *See* Exhibit 4, *Rodriguez v. Meta Platforms, Inc.,* No. 3:22-cv-00401-JD, Jt. Mot. to Dismiss, ECF No. 94, July 25, 2022 (NDCA). Thus, given the overlapping issues that will be present across the three demurrer plaintiffs, such as the implication of the First Amendment and

1   the Supreme Court's decision in *Gonzalez,* Plaintiffs believe thirty (30) pages is more than

2   sufficient for opening and responding briefs and fifteen (15) pages on reply.

3   ### ***Defendants' Position***

4   Defendants have worked extensively with Plaintiffs to reach agreement on a revised

5   demurrer briefing schedule, including making meaningful timing compromises.  Unable to reach

6   agreement, Defendants propose the below revised schedule (and page limits) to the Court.  This

7   proposed schedule shortens the demurrer briefing by at least 19, and up to 45 days, from the Parties'

8   original proposal, while also providing Defendants the time needed to analyze the forthcoming

9   *Gonzalez* decision and coordinate efficient briefing of these complex issues across four Defendants

10  and two jurisdictions:

11      1.  On or before **June 13, 2023**: Plaintiffs shall identify three (3) short form complaints that

12          shall be the subject of demurrers;

13      2.  On or before **July 14, 2023**, or 31 days after the United States Supreme Court's decision

14          in *Gonzalez*, whichever is later:  Defendants shall file their joint and/or individual

15          demurrers of no more than **100 pages total**;[5]

16      3.  On or before **August 15, 2023**, or 31 days after Defendants file their joint and/or

17          individual demurrers, whichever is later: Plaintiffs shall file their opposition to

18          Defendants' demurrers of no more than **100 pages total**;

19      4.  On or before **September 8, 2023**, or 24 days after Plaintiffs file their opposition,

20          whichever is later:  Defendants shall file their replies in support of their demurrers of no

21          more than **50 pages total.**

22  The Court should enter Defendants' proposed briefing schedule and page-limit proposals

23  for two primary reasons.

24  *First*, the briefing schedule is directly responsive to the Court's comments on the Parties'

25  prior proposed briefing schedule at the last CMC.  The Court expressed a desire for a slightly shorter

26  briefing schedule while recognizing the complicated nature of the issues that will be presented to

27  

28  _____

[5] All proposed page limits are exclusive of appendices, etc.

1   the Court.  *See* Mar. 22, 2023 Hr'g 8:12–23.  Defendants' briefing schedule attempts to reasonably

2   reconcile these points.   While shaving weeks off the Parties' original proposed schedule,[6]

3   Defendants' proposed schedule accounts for the complexity of the issues in play, the volume of

4   briefing and argumentation, and the need to coordinate among the four Defendant groups.  The

5   multiple Defendants will need to analyze new Supreme Court precedent and coordinate strategy as

6   a result of that decision in order to draft key sections of the demurrers.

7         Plaintiffs' proposed schedule, by contrast, would accelerate the briefing schedule by more

8   than two months without justification; would limit Defendants to just 30 pages in total for opening

9   briefs (compared to 100 pages for *fewer* claims and issues in the initial motion to dismiss in the

10  MDL) and 15 pages in total for reply briefs; would require Defendants to file their demurrers the

11  same day their motion-to-dismiss reply briefs are due in the MDL (June 30, 2023); and would

12  require the four Defendant groups to prepare their reply briefs addressing the fourteen claims

13  asserted in Plaintiffs' Master Complaint in just two weeks.  This proposal is unreasonable.

14        Plaintiffs' suggestion that Defendants should be able to simply repurpose their motion-to-

15  dismiss briefing in *Rodriguez v. Meta Platforms, Inc.* (N.D. Cal.), the first-filed case of the nearly

16  200 product-liability cases now centralized in the MDL and JCCP proceedings, and have just 45

17  pages of briefing between initial demurrers and reply briefs ignores the significant differences

18  between the 57-page, five-claim complaint of one plaintiff at issue in *Rodriguez* and the 297-page

19  master complaint here encompassing over fifty Plaintiffs' claims and asserting fourteen causes of

20  action.  Rather, the demurrer briefing is much more akin to the motion-to-dismiss briefing in the

21  MDL (of which *Rodriguez* became part), where Judge Gonzalez Rogers already implicitly rejected

22  Plaintiffs' argument when she allowed 150 pages of briefing for the opening motion and reply over

23  two-and-a-half months for Defendants' motion to dismiss, acknowledging the significantly greater

24  complexity of the briefing that would be required.

25

26

27  ─────────────────
    [6] Contrary to Plaintiffs' repeated mischaracterizations, Defendants are not seeking an "extension"
28  of any "deadlines"; and they are proposing a *shorter* schedule than the Parties' previous proposal.

*Second*, Defendants' proposed demurrer briefing schedule is significantly shorter than the briefing schedule set by Judge Gonzalez Rogers for a more limited motion to dismiss in the MDL (while maintaining the same page limits set by Judge Gonazles Rogers for that motion). Specifically, the MDL motion covers just five "Priority Claims" identified by Plaintiffs, as opposed to the fourteen claims that will be at issue in these demurrers; the MDL motion does not cover arguments under Section 230 or the First Amendment, which are reserved for later briefing, whereas the demurrers here will; and the demurrers here will address three specific short-form complaints, whereas the MDL motions-to-dismiss were focused on the master complaint.   Given these differences, the briefing schedule here should arguably be *longer* than the MTD briefing schedule in the MDL, yet Defendants' proposal makes it shorter.[7]   Notably, while the JCCP Plaintiffs asked for more time than the MDL Plaintiffs to prepare and file their Master Complaint and proposed Short Form Complaint, both of which drew extensively on the work already done by the MDL plaintiffs, they are insisting on shortening Defendants' time to file and brief their demurrers, with a compressed schedule that is nearly half the length of the MDL motion-to-dismiss briefing schedule.

Plaintiffs' arguments in support of their proposed schedule and restrictive page limits are not persuasive.   *First*, Plaintiffs assert that Defendants do not need time to coordinate briefing becase "they have briefed many of these issues before," citing two cases involving completely different allegations in which a ***single*** defendant happened to assert a Section 230 defense in its motion to dismiss a complaint asserting ***no more than three*** claims.[8]   But the fact that a single

_____

[7] Even accepting Plaintiffs' argument that federal pleading standards are meaningfully stricter than state-court pleading standards, that argument, if anything, would also counsel in favor of *additional* pages for Defendants' state-court demurrer.

[8] *See Ripple Labs Inc. v . YouTube, LLC.*, No. 3:20-cv-02747-LB, Mot. to Dismiss, ECF No. 26 (N.D. Cal. July 20, 2020) (motion to dismiss complaint asserting three claims—Lanham Act, right-of-publicity, and UCL claims—against YouTube for third-party scammers' use of hijacked YouTube accounts to defraud cryptocurrency owners); *Jane Doe v. Meta Platforms, Inc.*, No. 4:22-cv-00051-YGR, Mot. to Dismiss, ECF No. 22 (N.D. Cal. Mar. 7, 2022) (motion to dismiss complaint asserting two claims—product liability and negligence—against Meta for injuries suffered by Rohingya people in Myanmar).

Defendant may have briefed the same legal defense in a previous, different case is not a reason to accelerate the briefing schedule in a completely separate set of coordinated cases that happen to implicate the same defense—particularly where that defense could change significantly depending on intervening Supreme Court precedent. These four Defendants have never together briefed the majority of the defenses implicated in the JCCP Plaintiffs' draft master complaint—including in the earlier MDL proceedings.

Plaintiffs' related assertion that Defendants have had "years" to prepare their demurrers—presumably a reference to the fact that *Rodriguez* was filed over a year ago—is absurd. The JCCP Plaintiffs have not even yet filed the final master complaint (currently due on May 15) to which Defendants will be demurring.

*Second*, Plaintiffs "are concerned that providing additional time for Defendants to coordinate will set a precedent that Defendants will insist upon in future motion practice." That concern is wholly speculative, and at any rate can be addressed if it ever becomes appropriate with respect to future briefing.

*Third*, Plaintiffs argue that "the prospect of overlapping deadlines in separate litigations [i.e., the June 30 MDL motion-to-dismiss reply deadline] is not reason enough to delay proceedings—particularly when the overlapping deadlines share similar subject matter as in this case (motions to dismiss vs. demurrers)." But Plaintiffs fail to explain why Defendants *should* be forced to prepare multiple complex briefs (totaling up to 150 pages) across two coordinated centralized proceedings including on non-overlapping claims and issues on exactly the same day. The fact that "Defendants would face many more overlapping deadlines across the country" if the proceedings had not been centralized in an MDL and JCCP does not advance Plaintiffs' argument for overlapping deadlines:  the very purpose of centralizing cases and then coordinating the centralized proceedings, as the Court has indicated should be done across the MDL and JCCP, is to avoid these kinds of unnecessary inefficiencies.  As Defendants informed Plaintiffs during the

conferral on this issue, Defendants would extend similar professional courtesies to Plaintiffs should Plaintiffs face similar overlapping deadlines or circumstances during the course of this litigation.[9]

For all of these reasons, Defendants respectfully request that the Court enter their proposed demurrer briefing schedule.

### e.   Predicates to Discovery

**_Plaintiffs' Position_**   At the first status conference, the Court stated, "I want to say a word about trial setting to give you my perspective . . . This is my going-in thinking about this case. And because I have dealt with a lot of mass litigation.  And a lot of them we have kind of gone slow on trial setting so that we make sure that the table is set and that we have, you know, really representative cases and so forth. . . . My initial instinct is I really want to get to trial in these cases. And I don't think that the matters here at stake are going to be helped by delay." 2/17/23 Hr'g Tr. at 39:23-40:9.  Plaintiffs agree with this thinking.  To achieve the goal of getting to trial, once the Court hears and decides the demurrer motions, the parties must be prepared to immediately move into active discovery. Firm deadlines and regular CMCs are needed because without them the pace is sluggish.

**_Defendants' Position_**   In Defendants' view, there are two predicates to discovery.  _First_, discovery should be stayed until the Court has had the opportunity to assess and decide Defendants' demurrers which, if overruled in any way, will guide the scope of discovery.  _Second_, the MDL and JCCP parties are working together on several orders (_e.g._, the ESI Protocol and 502(d) and Protective Orders) before submitting them to the MDL Court.  Subsequently, the Parties would present them—with modifications as appropriate—to this Court for consideration.

---

[9] Plaintiffs' assertion that they "offered to move the proposed deadline for Defendants' opening brief by a week (either earlier or later), which Defendants rejected and instead insisted upon more time" misconstrues the Parties' negotiations.  After Defendants pointed out the overlapping June 30 deadlines, Plaintiffs "offered" to allow Defendants until July 7 to file their demurrers.  After Defendants pointed out that July 7 fell during the week of the July 4 holiday and asked for just three additional business days to file their demurrers, Plaintiffs refused, forcing the Parties to bring this dispute to the Court.

*See* Mar. 22, 2023 Hr'g Tr. 11:3–7 ("I am quite willing to wait until federal court finishes its work [on the Protective Order] and then look at necessary modifications  . . . ."); *id.* at 13:5–7 ("And also with the ESI Protocol, I'm glad for you to work with the MDL counsel to figure that one out.").  Rather than setting a date before the demurrers are even filed as a blanket arbitrary deadline for submission of all outstanding orders to this Court, Defendants believe it makes more sense for the parties to continue diligently working together on this process and submitting proposed orders in the JCCP after the MDL Court enters corresponding orders in those proceedings, particularly given that the demurrer phase of this case will not conclude until the fall at the earliest.

### i.  Proposed Sealing Procedures

**_Plaintiffs' Position_**  Plaintiffs are open to a sealing order and are reviewing the version filed in the MDL, attached as Exhibit 7 to this submission.  If the Court is open to altering the default sealing procedure, the Plaintiffs will work with Defendants to submit a proposed order.

**_Defendants' Position_**  Defendants believe that the draft sealing stipulation submitted in the MDL can and should be used in this proceeding with any necessary modifications to reference California Rules of Court 2.550 and 2.551.

### ii.  Protective Order

**_Plaintiffs' Position_**  On April 10, 2023, the MDL Plaintiffs and the Defendants presented disputes to the federal magistrate judge in the MDL regarding the protective order.  As previously articulated, the JCCP Plaintiffs flagged for the Court two issues unique to California law that the JCCP Plaintiffs would present to this Court if the MDL Plaintiffs lost on those issues, and one additional issue that the JCCP Plaintiffs and the Defendants were separately negotiating.  Of the three issues, two issues survive.

### a)  Premature Disclosure of Experts

The federal magistrate judge sided with Defendants in requiring that the MDL Plaintiffs disclose the identity and a substantial amount of information to the Defendants and obtain Defendants' approval before the MDL Plaintiffs can disclose "HIGHLY CONFIDENTIAL (COMPETITOR)" information to the expert.  As Plaintiffs previously laid out, this type of premature disclosure violates California law under *Hernandez v. Sup. Ct.,* 112 Cal. App. 4th 285,

296 (2003) (case management order requiring one party to unilaterally disclose expert witnesses before another party "exceeded the trial court's authority to formulate rules of procedure for the management of complex litigation"). As *Hernandez* states, the Code of Civil Procedure "provides for an earlier simultaneous, mutual exchange, but it does not permit a unilateral exchange." *Id.* The order would also compel disclosure of attorney work product, which the JCCP Plaintiffs would contend the Court cannot do. *Id.*

The JCCP Plaintiffs agree with the Court's proposal for moving forward: "One thing that occurred to me was that may, insofar as confidential material is being provided to an expert, perhaps, the party that, as making that disclosure to the expert, could be required just to file under seal with the Court the compliance document that the expert signed so that is's just on file. Early disclosure of experts is an issue. I mean, obviously in – at least in state court parties can have non-disclosed experts that never get disclosed and they're – you know, it's work product at that point." 3/8/23 Hr'g Tr. at 12:19-13:3. The JCCP Plaintiffs agree with the Court's proposal as long as filing those documents under seal excludes Defendants and the public from access.

### b) Expedited Designation of Depositions Closer to Filing Deadlines

The protective order makes all depositions confidential for at least 30 days after the deposition during which time the Defendants could designate material as confidential.[10] This becomes burdensome when there is a flurry of depositions, which there inevitably always is, close to a filing deadline (e.g. an opposition to a motion for summary judgment). In that case, every line of transcript of the deposition would be confidential, even clearly non-confidential material.

There are two ways to deal with this problem. The MDL has dealt with the problem by changing the sealing procedures to relieve the filing party of its burden of identifying confidential material in a filing. The JCCP Plaintiffs are open to this approach, but understand the Court may not be open to altering the sealing procedures under the California Rules of Court. If the Court is not open to a modified sealing procedure, then the JCCP Plaintiffs requested the addition of the

---

[10] By contrast, the LA Superior Model Protective Order requires counsel to designate on the record at the deposition that the deposition is confidential. However, in the spirit of coordination, the JCCP Plaintiffs went along with the MDL Parties' discussions.

following provision in the protective order: "Notwithstanding the foregoing, if there is a deadline to file a pleading within forty-five days after the date of a deposition, a Party states that it in good faith believes it will use the deposition transcript in such pleading, and the Party requests in writing to shorten the deadline for designating the testimony or exhibits, then the Designating Party shall designate any testimony or exhibits of that deposition "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL (COMPETITOR)" within fifteen days after the Party's request."

Defendants have agreed to the concept, but disagree as to the mechanism. Defendants want the JCCP Plaintiffs to disclose in the written notice the portions of testimony or exhibits they plan to use with the upcoming pleading and then the period to designate is shortened as to those snippets of testimony only. An attorney's "impressions, conclusions, [and] opinions" as to the testimony the attorney may use in an upcoming filing are protected work product. *See* Cal. Code Civ. Proc. 3018.030(a). Defendants' proposed mechanism to solve the problem would require the JCCP Plaintiffs to disclose attorney work product, as it would require the JCCP Plaintiffs to identify the parts of the deposition they believe are important to the upcoming pleading (even if they later change their mind) and unfairly give Defendants a sneak peek into the JCCP Plaintiffs' lawyers' impressions, conclusions, and opinions. Defendants may then use this work product to their favor. If there are depositions of witnesses scheduled after such a disclosure, Defendants' counsel could use the JCCP Plaintiffs' lawyers' work product to prepare the witnesses on the same questions and answers identified by the Plaintiffs as important to the upcoming motion.

***Defendants' Position*** *First*, on the issue of disclosure of experts—as Plaintiffs note, Magistrate Judge Hixson in the MDL sided with Defendants in ruling that the Northern District of California's "Highly Confidential" Model Protective Order should apply in this case.[11] That model order, which is "presumptively reasonable" in cases where highly sensitive confidential information is likely to be disclosed (as is true here), *see Corley v. Google, Inc.*, 2016 WL 3421402, at *1 (N.D.

---

[11] Defendant Snap did not join the other Defendants in requesting this provision regarding the disclosure of experts in the MDL Protective Order. However, in the interest of coordinating procedures across the MDL and JCCP proceedings, Snap agrees that the same Protective Order provisions should apply in both proceedings.

Cal. June 22, 2016), requires a receiving party to disclose to the designating party identifying information about an expert before providing that expert with confidential information.  The reason for this is that "[a] party should have an opportunity to vet someone who is going to have access to their 'extremely sensitive' confidential information" and "should not have to rely on an opponent's expert's self-evaluation of conflicts." *In re Google Assistant Priv. Litig.*, 2020 WL 4698810, at *2 (N.D. Cal. Aug. 13, 2020).

Judge Hixson agreed with Defendants that this rule was necessary and should apply here:

> I think that you[] . . . certainly will be receiving very sensitive information belonging to the defendants.  And they want to know who's getting this stuff . . . .
> And why isn't that reasonable?  Why shouldn't they at least know this is where this stuff has gone?  They do have a concern that this stuff . . . could be leaked on social media, it could show up somewhere.  And if they have no idea where their materials went, then . . . they would have nobody to even figure that out.

Exhibit 8, Excerpts from Apr. 10, 2023 MDL Hr'g Tr. 33:10–21; *see also id.* at 39:6–8 ("And again, I think, given the sensitive nature of the information that the defendants either have produced or are likely to produce, they're entitled to know who has this.").

In fact, Judge Hixson not only agreed that the model order's protections should apply, but also went a step further than the model order in requiring that additional information, including any patent or patent applications in which the expert is an inventor or applicant or has any pecuniary interest, should be disclosed.  *See id.* at 40:15–21.

It makes good sense for this Court to follow the same approach as the MDL.  As this Court has recognized, protections across the MDL and JCCP should be consistent.  Defendants anticipate that there will be a significant overlap in the experts used in each proceeding, and it makes sense for the disclosure requirements to be uniform, for the sake of clarity and efficiency.

Plaintiffs cite *Hernandez* in arguing that California law precludes this procedure as amounting to a premature expert disclosure.  But in *Hernandez* the trial court had required unilateral early disclosure of the plaintiffs' experts *and their opinions*, in order to "establish a prima facie showing" of the elements of their case, which the Court of Appeal held violated the statutory requirement for simultaneous exchange.  112 Cal. App. 4th at 296.  Defendants' proposal does not require Plaintiffs to disclose their experts' opinions or reports, and certainly not in order to compel

them to prove their case prematurely.  Moreover, Plaintiffs need not disclose an expert at all under the Protective Order unless that expert is given access to sensitive confidential information.

When Plaintiffs prematurely raised this issue prior to the last CMC, this Court remarked that perhaps a work-around could involve Plaintiffs' submitting the identity of the expert and their certification of compliance to the Court under seal, without providing access to Defendants.  This proposal would not address the concerns noted by Judge Hixson and which animate the federal court's model order.  Defendants should have a right to know to whom their Highly Confidential (Attorneys' Eyes Only) information may be disclosed, in order to properly vet for themselves that person, their potential conflicts, and the potential harm that could arise from that person's receipt of the information, as well as to properly investigate the source of any leak.[12]

*Second*, Plaintiffs seek a procedure to expedite the confidentiality designations of deposition testimony and exhibits when the deposition occurs close to a filing deadline.  As Plaintiffs concede, this issue can be avoided entirely if this Court follows the same sealing procedures that the MDL has adopted.  And the Parties are in agreement that it would be appropriate for this Court to adopt those same procedures.  *See* ¶ II.e.i, *supra*.

If the Court is not inclined to adopt the same sealing procedures as in the MDL, then Plaintiffs propose a burdensome process that would require Defendants to complete confidentiality designations for an entire deposition (and potentially for many depositions simultaneously) within just 15 days, whenever the other side *might* (subject to potentially "later chang[ing] their mind") cite a *single* answer from a several-hundred page transcript.  Defendants' compromise would have Plaintiffs point to the segments of the deposition they intend to use in the upcoming pleading, in

---

[12] Plaintiffs' claim that Defendants "withheld" from Magistrate Judge Hixson this Court's "guidance" on this issue "to obtain a better ruling from the magistrate judge" is wholly unfounded. Without having a proposed protective order before it or the benefit of full briefing, this Court offered "just a thought" at the last CMC regarding expert disclosures "in state court."  Mar. 22, 2023 Hr'g Tr. 112:19-13:3.  Plaintiffs offer no explanation for the suggestion that Defendants (but apparently not even the MDL Plaintiffs) were obligated to apprise Magistrate Judge Hixson of this Court's informal commentary on a perceived state-court issue for purposes of ruling on a proposed federal court Protective Order.  Defendants have always made clear that to the extent state law may require modifications of orders entered in the MDL, they are willing to consider such modifications when presenting analogous orders to this Court.  No such modifications are necessary here.

order for Defendants to make designations for just those segments on an expedited basis.  Contrary to Plaintiffs' suggestion, this would not amount to a "sneak peek" into their work product prior to the brief being filed.  It is commonplace for parties to meet and confer on redactions and sealing applications in advance of filing a brief when the filing party seeks to use material designated as confidential by the other party.  Defendants simply propose a version of this cooperative process, which will conserve resources for all involved.

#### f.   Plaintiff Fact Sheet and Plaintiff-Specific Document Requests

***Plaintiffs' Position***   Defendants provided an 88-page draft Plaintiff Fact Sheet to Plaintiffs on April 18, 2023.  This draft seeks information from Plaintiffs that is far beyond that necessary to select bellwether plaintiffs or to assess the value of a case.  Plaintiffs initially agreed to provide the plaintiff specific discovery requests needed to complete the draft Plaintiff Facts Sheet on April 25, 2023, but given the length of Defendants' draft, Plaintiffs requested an extension until April 28, 2023. On that day, Plaintiffs provided to Defendants the (1) plaintiff-specific discovery requests that Plaintiffs believe are necessary to complete the Plaintiffs Fact Sheet and (2) Plaintiffs' proposed revisions to the draft.  The Parties are meeting and conferring on the date of this submission (May 1, 2023).  The JCCP Plaintiffs believe that the Court should set a deadline for the end of the meet and confer process on the Plaintiff Fact Sheet for June 30, 2023 and then the JCCP Plaintiffs would request that the Parties present disputes to the Court shortly thereafter.

***Defendants' Position***   Defendants submit that their proposed Plaintiff Fact Sheet, which was shared with Plaintiffs on April 18, 2023, is appropriate given the complexity of these proceedings, in which Plaintiffs bring claims alleging a variety of mental and physical harms against five separate online services, operated by four different Defendants, all of which have different and unique features and designs.  Plaintiffs misstate the purpose of a Plaintiff Fact Sheet, which is not limited to "select[ing] bellwether plaintiffs or to assess[ing] the value of a case"; rather, it is "to give each defendant the specific information necessary to defend the case against it . . . ." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006). Defendants' proposed Plaintiff Fact Sheet reflects the need to capture Plaintiffs' disparate experiences over these five services by asking how and when Plaintiffs used each service and how

they were allegedly harmed as a result, while attempting to streamline the inquiries as much as possible.  If Plaintiffs have any suggestions for further streamlining the Plaintiff Fact Sheet, Defendants will continue to meet and confer with Plaintiffs to attempt to reach an agreement.

The Parties are not set to meet and confer until May 4, 2023, and Defendants did not receive the list of user account data Plaintiffs are demanding to receive before completing Plaintiff Fact Sheets until April 28.  Moreover, Plaintiffs will not be required to complete any Fact Sheets until after the Court rules on Defendants' initial demurrers.  Defendants submit that it is therefore premature to set deadlines for the end of the meet-and-confer process or for the submission of any disputes.  As the Court made clear, if Plaintiffs seek discovery "prior to the time Plaintiffs are expected to provide responses to Plaintiff Fact Sheets," the Court would hear any motion to compel discovery only after the "outcome" of the "initial pleading motions" is known.  *See* Feb. 17, 2023 Minute Order.  Given that Plaintiffs would not file any motion to compel on this issue or submit Plaintiff Fact Sheets until after resolution of Defendants' demurrers, there is no need to complete the meet-and-confer process by an arbitrary date *before the demurrers are even filed*.  Rather, Defendants submit that it would be in the interest of efficiency to permit the Parties to continue conferring in good faith to attempt to resolve or narrow any areas of disagreement regarding the Plaintiff Fact Sheet and Plaintiffs' user account data requests.  If the Parties are unable to reach an agreement, they can raise any remaining disputes with the Court at a later time.

### g.  Preservation-Related Negotiations: Plaintiff Preservation Form and CSAM Preservation

#### i.  Plaintiff Preservation Information Form

***Plaintiffs' Position***  The Parties are conferring on a Plaintiff Preservation Information Form and expect to present it to the Court in the near future.  However, given the delay in preparing the form and the need to ensure preservation without any prejudice to Plaintiffs, and in an effort to facilitate Defendants' preservation obligation, Plaintiffs have prepared and served all the necessary information that Defendants have previously requested via letter or on Defendants to trigger preservation obligations.  Plaintiffs may provide additional information as the information becomes available. Out of an abundance of caution, some law firms are submitting forms for both filed and

unfiled cases.  To the extent that Defendants are claiming that their preservation obligations are not triggered until Plaintiffs complete the yet-to-be-finalized Plaintiff Preservation Information Form, Plaintiffs strenuously disagree.   Defendants' preservation obligations exist regardless of the Plaintiff Preservation Information Form, and Plaintiffs have endeavored to provide the information sought in that Form as quickly as possible to Defendants.

***Defendants' Position***   Plaintiffs' claims about delay are meritless.  At the last CMC, the Court instructed the Parties to negotiate and submit a preservation form for Plaintiff account data.  Consistent with that directive, the Parties conferred extensively regarding preservation issues—including the specific information each Defendant requires in order to identify and lawfully preserve Plaintiff account data—and expect to submit a largely-agreed-upon Preservation Information Form to Magistrate Judge Hixson during the week of May 1.  Plaintiffs in this proceeding have been included in those negotiations, including Defendants' explanations regarding why they cannot (as both a technical and legal matter) preserve Plaintiffs' account data without the information requested in the Plaintiff Preservation Information Form.

On April 26, 2023—after waiting *months* to respond to Defendants' requests for the the user information Defendants repeatedly advised was necessary to permit identification and preservation of Plaintiffs accounts—Plaintiffs sent Defendants incomplete user information on their own proposed form (even while knowing that the MDL parties had reached substantial agreement on the content of a Preservation Information Form).  There is no good-faith basis for Plaintiffs' decision to circumvent the cooperative process the Court ordered the parties to follow.

While Defendants are endeavoring in good faith to identify and preserve relevant user accounts based on the incomplete information provided by Plaintiffs, Defendants request that the Court clarify that all Plaintiffs, including those who have already submitted some identifying information, must either (i) submit their user information on the Preservation Information Form that will be entered in the MDL; or (ii) to the extent Plaintiffs believe any deviations are warranted for the JCCP proceedings, submit their user information on a form entered by this Court after meeting and conferring with Defendants in good faith—as the Court previously ordered the Parties to do.

ii.    **CSAM Preservation**

The Parties have attached competing proposed CSAM Preservation Orders and request to submit a 10-page, single-spaced joint letter-brief on the disputed issues by May 26, 2023, with a hearing to be set thereafter. Plaintiffs' proposed order is attached as Exhibit 9, and Defendants' proposed order is attached as Exhibit 10.

### h. Plaintiff Census

As of Friday afternoon, there are currently 124 cases filed in the JCCP.  Plaintiffs have conducted an internal census and, based on the responses provided, have identified approximately 2000 additional cases that are anticipated to be filed in the JCCP.

### i. Proposed Waiver of Formal Service Order

Attached as Exhibit 10 is a proposed order regarding the waiver of formal service in these proceedings.  The Parties respectfully request that the Court enter the order.

### j. Communications with Mediator

The Parties do not object to the Court communicating with Ellen Reisman, the court-appointed mediator appointed in MDL 3047.

### k. Common Benefit Order

***Plaintiffs' Position***   Plaintiffs acknowledge the Court's prior comments on a common benefit order. After further consideration of the alternatives suggested by the Court, the existing MDL common benefit order makes it very difficult and prejudicial to do the alternative. In some instances, cases filed in the JCCP are subject to this Order and purport to be assessed a fee by that order. *See* Exhibit 12, Common Benefit Order, ECF No. 169 at 2, line 5-6. This creates negative incentives to avoid the MDL order and creates unfairness across the plaintiff pool in the JCCP. To ensure fairness and promote coordination between counsel in this litigation and with the MDL, Plaintiffs request that a similar Common Benefit Order be entered in the JCCP.  Should the Court be amendable to such an Order, Plaintiffs likewise request that Plaintiffs utilize the same Special Master as the MDL to oversee the process and to avoid the concerns the Court previously had regarding reviewing billing.

Plaintiffs' fairness and coordination arguments have nothing to do with a coordination order and impose no restrictions on the ability of Defendants to litigate their cases under any jurisdiction. The arguments have to do with *some* plaintiffs in this JCCP being charged an assessment under the federal MDL order while *other* plaintiffs in this JCCP are not, which is unfair to the JCCP Plaintiffs.  The arguments also will have a negative incentive that may cause law firms to file exclusively in the JCCP where there is no common benefit assessment (or, alternatively, dismiss all of their MDL claims and then file exclusively in the JCCP).

**_Defendants' Position_**  Defendants take no position on Plaintiffs' request for reconsideration beyond noting two points.  *First*, Plaintiffs' "fairness and coordination" arguments cannot be reconciled with their opposition to a reasonable Coordination Order.  Plaintiffs should not be able to follow the MDL procedures they like, while avoiding an order whose entire purpose is to promote reasonable coordination with the MDL.  *Second*, if the Court were to reconsider its views on a Common Benefit Order, it should be only after Defendants have had an opportunity to review (and potentially respond to) an actual proposed Order, given that these orders typically impose some obligations on defendants.

### l.   Proposed Revisions to the Plaintiffs' Steering Committee

Plaintiffs respectfully request that Mr. Dean Kawamoto of Keller Rohrback, LLC be added as a member of Plaintiffs Steering Committee.  Given Mr. Kawamoto's experience representing public entities in complex litigation, Plaintiffs believe his addition would be of a common benefit to the litigation particularly given the anticipated coordination of public entity plaintiffs in this JCCP.

### m.  Add-On Cases

As of the filing of this Statement, the Parties are aware of the following additional potential add-on cases (collectively, "Potential Add-On Cases"):

1.    *Vives v. Meta Platforms, Inc., et al.*, San Mateo Superior Court Case No. 23CIV01287 (filed on 3/21/2023; assigned to Dept. 3, Hall of Justice);

2.    *Cubit, et al. v. Meta Platforms, Inc.*, et al., Los Angeles Superior Court Case No. 23STCV06277 (filed on 3/22/2023; assigned to Dept. 12, Spring Street Courthouse);

3.      *Baldwin County Public Schools, et al. v. Meta Platforms, Inc., et al.*, Los Angeles Superior Court Case No. 23STCV06685 (filed on 3/28/2023; assigned to Dept. 12, Spring Street Courthouse);

4.      *Bright, et al. v. Meta Platforms, Inc.*, Los Angeles Superior Court Case No. 23STCV07277 (filed on 4/3/2023; assigned to Dept. 12, Spring Street Courthouse);

5.      *Baldwin v. Meta Platforms, Inc.*, et al., Los Angeles Superior Court Case No. 23STCV07750 (filed on 4/7/2023; assigned to Dept. 12, Spring Street Courthouse);

6.      *Leyva v. Meta Platforms, Inc., et al.*, Los Angeles Superior Court Case No. 23STCV07763 (filed on 4/7/2023; assigned to Dept. 12, Spring Street Courthouse);

7.      *Liberty County School District, et al. v. Meta Platforms, Inc., et al.*, Los Angeles Superior Court Case No. 23STCV08004 (filed on 4/11/2023; assigned to Dept. 12, Spring Street Courthouse);

8.      *Rivera v. Meta Platforms, Inc., et al.*, Los Angeles Superior Court Case No. 23STCV08659 (filed on 4/19/2023; assigned to Dept. 12, Spring Street Courthouse); and

9.      *Williams, et al. v. Meta Platforms, Inc., et al.*, Los Angeles Superior Court Case No. 23STCV08891 (filed on 4/21/2023; assigned to Dept. 12, Spring Street Courthouse).

Plaintiffs, through Plaintiffs' Co-Liaison Counsel, respectfully request that the Court enter the attached proposed Order granting coordination of these Potential Add-On Cases into these proceedings.  *See* Exhibit 13.  Defendants have no objection to this request.

DATED:  MAY 1, 2023

KIESEL LAW LLP

By: _____
Paul R. Kiesel
Co-Liaison Counsel for Plaintiffs

Paul R. Kiesel
Mariana A. McConnell
Cherisse H. Cleofe
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Tel.: 310-854-4444
Fax: 310-854-0812
   kiesel@kiesel.law
   mcconnell@kiesel.law
   cleofe@kiesel.law

Brian J. Panish
Rahul Ravipudi
Jesse Creed
PANISH | SHEA | BOYLE | RAVIPUDI LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Tel.: 310-477-1700
Fax: 310-477-1699
   panish@psbr.law
   rravipudi@psbr.law
   jcreed@psbr.law

Emily Jeffcott
MORGAN & MORGAN
633 West Fifth Street, Suite 2652
Los Angeles, CA 90071
Tel.: 213-787-8590
Fax: 213-418-3983
   ejeffcott@forthepeople.com

Joseph G. VanZandt
BEASLEY ALLEN CROW METHVIN PORTIS
& MILES, LLC
234 Commerce Street
Montgomery, AL 36103
Tel.: 334-269-2343
   Joseph.VanZandt@BeasleyAllen.com

Christopher L. Ayers
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, NJ 07660
Tel.: 973-639-9100
Fax: 973-679-8656
  cayers@seegerweiss.com

Matthew Bergman
Laura Marquez-Garrett
**SOCIAL MEDIA VICTIMS LAW CENTER**
1390 Market Street, Suite 200
San Francisco, CA 94102
Tel.: 206-741-4862
  matt@socialmediavictims.org
  laura@socialmediavictims.org

Brooks Cutter
**CUTTER LAW P.C.**
401 Watt Avenue
Sacramento, CA 95864
Tel.: 916-290-9400
Fax: 916-588-9330
  bcutter@cutterlaw.com

Thomas P. Cartmell
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue Suite 300
Kansas City, MO 64112
Tel.: 816-701-1100
  tcartmell@wcllp.com

Amy Eskin
**SCHNEIDER WALLACE COTTRELL
KONECKY LLP**
2000 Powell Street Suite 1400
Emeryville, CA 94608
Tel.: 415-421-7100
Fax: 415-421-7105
  aeskin@schneiderwallace.com

Kirk Goza
**GOZA & HONNOLD, LLC**
9500 Nall Avenue, Suite 400
Overland Park, KS 66207
Tel.: 913-386-3547
Fax: 913-839-0567
  kgoza@gohonlaw.com

JOINT STATUS CONFERENCE STATEMENT FOR MAY 3, 2023 CONFERENCE
34

Rachel Lanier
**THE LANIER LAW FIRM, P.C.**
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Tel.: 713-659-5200
   Rachel.Lanier@LanierLawFirm.com

Sin-Ting Mary Liu
**AYLSTOCK, WITKIN, KREIS & OVERHOLDZ**
17 E Main St #200
Pensacola, FL 32502
Tel.: 850-202-1010
   mliu@qwkolaw.com

Marc J. Mandich
**SOUTHERN MED LAW**
2762 B M Montgomery Street, Suite 101
Homewood, AL 35209
Tel.: 205-564-2741
Fax: 205-649-6346
   marc@southernmedlaw.com

Kelly McNabb
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: 415-956-1000
   kmcnabb@lchb.com

Jonathan D. Orent
**MOTLEY RICE LLC**
40 Westminster St., 5th Fl.
Providence RI 02903
Tel.: 401-457-7723
Fax: 401-457-7708
   jorent@motleyrice.com

Ruth Rizkalla
**THE CARLSON LAW FIRM, PC**
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266
Tel.: 254-526-5688
Fax: 254-526-8204
   rrizkalla@carlsonattorneys.com

JOINT STATUS CONFERENCE STATEMENT FOR MAY 3, 2023 CONFERENCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Frederick Schenk
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101-1486
Tel.: 619-238-1811
Fax: 619-544-9232
   Fschenk@cglaw.com

*Attorneys for Plaintiffs*

1   DATED:  May 1, 2023                    **COVINGTON & BURLING LLP**

2

3                                          By:        */s/ Ashley M. Simonsen*

4                                                 Ashley M. Simonsen

5                                                 ASHLEY M. SIMONSEN, SBN 275203
                                                  asimonsen@cov.com
6                                                 COVINGTON & BURLING LLP
                                                  1999 Avenue of the Stars
7                                                 Los Angeles, CA 90067
                                                  Tel.: 424-332-4800
8

9                                                 EMILY JOHNSON HENN, SBN 269482
                                                  ehenn@cov.com
10                                                COVINGTON & BURLING LLP
                                                  3000 El Camino Real
11                                                5 Palo Alto Square, 10th Floor
                                                  Palo Alto, CA 94306
12                                                Tel.: 650-632-4700

13                                                PHYLLIS A. JONES, *pro hac vice*
14                                                pajones@cov.com
                                                  PAUL W. SCHMIDT, *pro hac vice pending*
15                                                pschmidt@cov.com
                                                  MICHAEL X. IMBROSCIO, *pro hac vice*
16                                                *forthcoming*
                                                  mimbroscio@cov.com
17                                                COVINGTON & BURLING LLP
                                                  One City Center
18                                                850 Tenth Street, NW
                                                  Washington, DC 20001-4956
19                                                Tel.: 202-662-6000
20

21                                                *Attorneys for Defendants Meta Platforms, Inc.,*
                                                  *Facebook Holdings, LLC, Facebook Operations,*
22                                                *LLC, Facebook Payments, Inc., Facebook*
                                                  *Technologies, LLC, Instagram, LLC, and*
23                                                *Siculus, Inc.*

24

25

26

27

28

DATED:  May 1, 2023                     **MUNGER, TOLLES & OLSEN LLP**


By:  _____*/s/ Jonathan H. Blavin*_____
       Jonathan H. Blavin

       JONATHAN H. BLAVIN, SBN 230269
       jonathan.blavin@mto.com
       MUNGER, TOLLES & OLSON LLP
       560 Mission Street, 27th Floor
       San Francisco, CA 94105-3089
       Tel.: 415-512-4000

       ROSE L. EHLER, SBN 29652
       Rose.Ehler@mto.com
       VICTORIA A. DEGTYAREVA, SBN 284199
       Victoria.Degtyareva@mto.com
       ARIEL T. TESHUVA, SBN 324238
       Ariel.Teshuva@mto.com
       MUNGER, TOLLES & OLSON LLP
       350 South Grand Avenue, 50th Floor
       Los Angeles, CA 90071-3426
       Tel.: 213-683-9100

       LAUREN A. BELL, *pro hac vice*
       *forthcoming*
       Lauren.Bell@mto.com
       MUNGER, TOLLES & OLSON LLP
       601 Massachusetts Ave., NW St.
       Suite 500 E
       Washington, D.C. 20001-5369
       Tel.: 202-220-1100

       *Attorneys for Defendant Snap Inc.*

DATED:  May 1, 2023

**KING & SPALDING LLP**

By:   /s/ Matthew J. Blaschke

Matthew J. Blaschke

MATTHEW J. BLASCHKE, SBN 281938
mblaschke@kslaw.com
BAILEY J. LANGNER, SBN 307753
blangner@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: 415-318-1200

ALBERT Q. GIANG, SBN 224332
agiang@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel.: 213-443-4310

GEOFFREY DRAKE, *pro hac vice
pending*
gdrake@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600

DATED:  May 1, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

By:   /s/ Tarifa B. Laddon

Tarifa B. Laddon

TARIFA B. LADDON, SBN 240419
tarifa.laddon@faegredrinker.com
DAVID P. KOLLER, SBN 328633
david.koller@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH
LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
Tel.: 310-203-4000

JOINT STATUS CONFERENCE STATEMENT FOR MAY 3, 2023 CONFERENCE
39

1
2        ANDREA R. PIERSON, *pro hac vice*
         *pending*
3        andrea.pierson@faegredrinker.com
         FAEGRE DRINKER BIDDLE
4        & REATH LLP
         300 N. Meridian Street, Suite 2500
5        Indianapolis, IN 46204
         Tel: 317-237-1424
6
7        *Attorneys for Defendants TikTok Inc. and*
         *ByteDance Inc.*
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2 DATED:  May 1, 2023                    **WILSON SONSINI GOODRICH & ROSATI LLP**

3

4                                        By:      */s/ Christopher C. Chiou*
                                                Christopher C. Chiou
5
                                                CHRISTOPHER C. CHIOU, SBN
6                                               233587
                                                cchiou@wsgr.com
7                                               SAMANTHA MACHOCK, SBN 298852
                                                smachock@wsgr.com
8                                               WILSON SONSINI GOODRICH & ROSATI
                                                LLP
9                                               633 W 5th St, Ste 1550
                                                Los Angeles, CA 90071-3543
10                                              Tel.: 323-210-2900
11
12                                              LAUREN WHITE, SBN 309075
                                                lwhite@wsgr.com
13                                              WILSON SONSINI GOODRICH & ROSATI
                                                LLP
14                                              One Market Plaza, Spear Tower, Suite 3300
                                                San Francisco, CA 94105
15                                              Tel.: 415-947-2000
16
17                                              BRIAN M. WILLEN, *pro hac vice
                                                forthcoming*
18                                              bwillen@wsgr.com
                                                WILSON SONSINI GOODRICH & ROSATI
19                                              LLP
                                                1301 Avenue of the Americas, 40th Floor
20                                              New York, New York 10019
                                                Tel.: 212-999-5800
21
22                                              *Attorneys for Defendants YouTube, LLC, Google
                                                LLC, Alphabet Inc.*
23

24

25

26

27

28

1    DATED:  May 1, 2023            **WILLIAMS & CONNOLLY LLP**

2

3

               By:      */s/ Joseph G. Petrosinelli*

4                       JOSEPH G. PETROSINELLI, *pro hac vice application forthcoming*

5                       jpetrosinelli@wc.com

6                       ASHLEY W. HARDIN, *pro hac vice application forthcoming*

7                       ahardin@wc.com

8                       WILLIAMS & CONNOLLY LLP
                      680 Maine Avenue, SW

9                       Washington, DC 20024
                      Tel.: 202-434-5000

10

11                      *Attorneys for Defendants YouTube, LLC, Google LLC, Alphabet Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28