# EXHIBIT C

# In the Matter Of:

SOCIAL MEDIA CASES

JCCP5255

---

MOTION

May 03, 2023

---



```
          SUPERIOR COURT OF THE STATE OF CALIFORNIA

              FOR THE COUNTY OF LOS ANGELES

DEPARTMENT SSC 12          HON. CAROLYN B. KUHL, JUDGE

                                   CERTIFIED COPY
SOCIAL MEDIA CASES,            )
                              )
                              )CASE NO. JCCP5255
_____)



              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                  WEDNESDAY, MAY 3, 2023

APPEARANCES:

FOR PLAINTIFFS APPEARING IN PERSON:

                PANISH SHEA BOYLE & RAVIPUDI, LLP
                BY:  RAHUL RAVIPUDI, ESQ.
                     JESSE CREED, ESQ.
                11111 Santa Monica Boulevard, Suite 700
                Santa Monica, CA  90025
                310.477.1700
                rravipudi@psbr.law
                jcreed@psbr.law

                KIESEL LAW, LLP
                BY:  PAUL R. KIESEL, ESQ.
                     CHERISSE H. CLEOFE, ESQ.
                8648 Wilshire Boulevard
                Beverly Hills, CA  90211
                310.854.4444
                kiesel@kiesel.law
                cleofe@kiesel.law

                BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
                 MILES, P.C.
                BY:  JENNIFER EMMEL, ESQ.
                218 Commerce Street
                Montgomery, AL  36104
                334.269.2343
                jennifer.emmel@beasleyallen.com


                (APPEARANCES CONTINUED ON NEXT PAGE.)


Christine Kwon-Chang, CSR No. 12143, CRR
Official Pro Tempore Court Reporter
Job No. 204278
```

```
 1   APPEARANCES:   (CONTINUED)

 2                       MORGAN & MORGAN
                         BY:  EMILY JEFFCOTT, ESQ.
 3                       633 West Fifth Street, Suite 2652
                         Los Angeles, CA  90071
 4                       213.787.8590
                         ejeffcott@forthepeople.com
 5
                         SOCIAL MEDIA VICTIMS LAW CENTER
 6                       BY:  MATTHEW BERGMAN, ESQ.
                         520 Pike Street, Suite 1125
 7                       Seattle, WA  98101
                         206.395.2797
 8                       matt@socialmediavictims.org

 9
     FOR PLAINTIFFS APPEARING REMOTELY VIA LACOURTCONNECT:
10
                         BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
11                        MILES, P.C.
                         BY:  CLINTON RICHARDSON, ESQ.
12
                         THE CARLSON LAW FIRM
13                       BY:  JAVAD TAHBAZ SALEHI, ESQ.
                              RUTH RIZKALLA, ESQ.
14
                         SCHNEIDER WALLACE COTTRELL KONECKY, LLP
15                       BY:  AMY ESKIN, ESQ.

16                       CUTTER LAW, PC
                         BY:  C. BROOKS CUTTER, ESQ.
17                            JENNIFER S. DOMER, ESQ.

18                       SEEGER WEISS, LLP
                         BY:  CHRISTOPHER D. AYERS, ESQ.
19
                         CASEY, GERRY, SCHENK, FRANCAVILLA,
20                       BLATT & PENFIELD, LLP
                         BY:  CATHERINE M. MCBAIN, ESQ.
21
                         MOTLEY RICE, LLC
22                       BY:  JONATHAN D. ORENT, ESQ.
                              PREVIN WARREN, ESQ.
23
                         LIEFF CABRASER HEIMANN & BERSTEIN, LLP
24                       BY:  LEXI HAZAM, ESQ.

25                       SOUTHERN INSTITUTE FOR MEDICAL & LEGAL
                         AFFAIRS, LLC
26                       BY:  MARC MANDICH, ESQ.

27
                         (APPEARANCES CONTINUED ON NEXT PAGE.)
28
```

```
 1   APPEARANCES:  (CONTINUED)

 2   FOR PLAINTIFFS APPEARING REMOTELY VIA LACOURTCONNECT:

 3                   KIESEL LAW, LLP
                     BY:  MARIANA A. MCCONNELL, ESQ.
 4
                     LANIER LAW FIRM
 5                   BY:  MICHAEL AKSELRUD, ESQ.

 6                   MORGAN & MORGAN
                     BY:  NARMEEN NKEITI, ESQ.
 7
                     ALYSTOCK, WITKIN, KREIS &
 8                   ORVERHOLTZ, PLLC
                     BY:  S. MARY LIU, ESQ.
 9

10   ALSO APPEARING REMOTELY FOR PLAINTIFF WITHOUT FIRM NAMES:

11                   JOSH AUTRY, ESQ.
                     KATHERINE MASSA, ESQ.
12                   MICHAEL B. GURIEN, ESQ.
                     SUZANNE CLARK, ESQ.
13

14                   (APPEARANCES CONTINUED ON NEXT PAGE.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1   APPEARANCES:  (CONTINUED)

 2   FOR DEFENDANTS APPEARING IN PERSON:

 3                    KING & SPALDING
                      BY:  MATT J. BLASCHKE, ESQ.
 4                    50 California Street, Suite 3300
                      San Francisco, CA  94111
 5                    415.318.1212
                      mblaschke@kslaw.com
 6
                      COVINGTON & BURLING, LLP
 7                    BY:  ASHLEY M. SIMONSEN, ESQ.
                      1999 Avenue of the Stars
 8                    Los Angeles, CA  90067
                      424.332.4782
 9                    asimonsen@cov.com

10                    COVINGTON & BURLING, LLP
                      BY:  PAUL W. SCHMIDT, ESQ.
11                    The New York Times Building
                      620 Eighth Avenue
12                    New York, NY  10018
                      pschmidt@cov.com
13
                      FAEGRE DRINKER BIDDLE & REATH, LLP
14                    BY:  TARIFA B. LADDON, ESQ.
                           ANDREA PIERSON, ESQ.
15                    11766 Wilshire Boulevard, Suite 750
                      Los Angeles, CA  90025
16                    310.500.2090
                      tarifa.laddon@faegredrinker.com
17                    andrea.pierson@faegredrinker.com

18                    MUNGER, TOLLES & OLSON, LLP
                      BY:  JONATHAN H. BLAVIN, ESQ.
19                         VICTORIA DEGTYAREVA, ESQ.
                      560 Mission Street, 27th Floor
20                    San Francisco, CA  94105
                      415.512.4011
21                    jonathan.blavin@mto.com
                      victoria.degtyareva@mto.com
22
                      WILSON SONSINI
23                    BY:  CHRISTOPHER CHIOU, ESQ.
                           MATTHEW DONOHUE, ESQ.
24                    633 West Fifth Street, Suite 1550
                      Los Angeles, CA  90071
25                    323.210.2900
                      cchiou@wsgr.com
26                    mdonohue@wsgr.com

27
                      (APPEARANCES CONTINUED ON NEXT PAGE.)
28
```

```
 1   APPEARANCES:   (CONTINUED)

 2   FOR DEFENDANTS APPEARING REMOTELY VIA LACOURTCONNECT:

 3                     KING & SPALDING, LLP
                       BY:  BAILEY LANGNER, ESQ.
 4                          GEOFFREY DRAKE, ESQ.

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

1          (WEDNESDAY, MAY 3, 2023)

2          M A S T E R   I N D E X

3

4      CHRONOLOGICAL/ALPHABETICAL ORDER OF WITNESSES

5                    (NONE)

6

7              INDEX OF EXHIBITS

8              (NONE OFFERED)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1   CASE NUMBER:              JCCP5255

 2   CASE NAME:               SOCIAL MEDIA CASES

 3   LOS ANGELES, CALIFORNIA, WEDNESDAY, MAY 3, 2023

 4   DEPARTMENT SSC 12        HON. CAROLYN B. KUHL

 5   REPORTER:               CHRISTINE KWON-CHANG
                             CSR NO. 12143
 6
     TIME:                    A.M. SESSION
 7
     APPEARANCES:             (AS HERETOFORE NOTED.)
 8

 9               (The following proceedings

10                were held in open court:)

11

12        THE COURT:  Good morning everyone here on the

13   social media cases, and we'll take appearances in the

14   courtroom starting over here, please.

15        MS. EMMEL:  Jennifer Emmel with Beasley, Allen.

16        MS. CLEOFE:  Good morning, your Honor.

17             Cherisse Cleofe from Kiesel Law.

18        MS. JEFFCOTT:  Emily Jeffcott of Morgan & Morgan.

19        MR. CREED:  Jesse Creed of Panish, Shea, Boyle,

20   Ravipudi.

21        MR. RAVIPUDI:  Rahul Ravipudi for plaintiffs.

22        MR. KIESEL:  Paul Kiesel, Your Honor, for

23   plaintiffs.

24        MR. BERGMAN:  Good morning, Your Honor.

25             Matthew Bergman, Social Media Victims Law

26   Center.

27        THE COURT:  Very good.  On the defense side in

28   the courtroom, please.
```

```
 1         MS. DEGTYAREVA:  Good morning, your Honor.

 2              Victoria Degtyareva from Munger, Tolles &

 3    Olson on behalf of Defendant Snap.

 4         MS. PIERSON:  Good morning, your Honor.

 5              I'm Andrea Pierson from Faegre Drinker for

 6    TikTok and Byte Dance.

 7         MR. CHIOU:  Good morning, Your Honor.

 8              Christopher Chiou with Wilson Sonsini for

 9    Google, Alphabet, and YouTube.

10         MR. DONOHUE:  Good morning, your Honor.

11              Matthew Donahue from Wilson Sonsini for

12    Google, Alphabet, and YouTube.

13         MR. BLASCHKE:  Good morning, Your Honor.

14              Matt Blaschke with King & Spalding for

15    TikTok and Byte Dance.

16         MS. SIMONSEN:  Good morning, Your Honor.

17              Ashley Simonsen from Covington & Burling

18    for the Meta defendants.

19         MR. SCHMIDT:  Good morning, Your Honor.

20              Paul Schmidt, Covington, for the Meta

21    defendants as well.

22         MS. LADDON:  Good morning, Your Honor.

23              Tarifa Laddon with Faegre Drinker for

24    TikTok and Byte Dance.

25         MR. BLAVIN:  Good morning, Your Honor.

26              Jonathan Blavin from Munger, Tolles &

27    Olson for Snap.

28         THE COURT:  Very good.  You can all be seated.
```

 1              Those of you on LACourtConnect, the clerk
 2  has taken your appearances, and I think those of you in
 3  the courtroom heard those appearances at that time, so
 4  we won't repeat them.
 5              Feel free to jump in if you need to,
 6  though, those of you online.
 7              And I'm signing the court reporter's
 8  order.
 9              Okay.  Thank you very much for your joint
10  report, and there was a request for priority on a couple
11  of issues, so we'll start with those.
12              So we'll start with a discussion of the
13  parties' proposed coordination order to coordinate
14  discovery between the MDL and the JCCP.
15              I'm going to tell you, having read your
16  thorough discussion of your respective positions, I'm
17  going to tell you my proposal for addressing the issue,
18  and then you can talk to me about what I've expressed.
19              So you'll recall this was not an order I
20  asked for.  I've asked for several things, but this is
21  not one I asked for particularly.
22              If the defendants want to ask the MDL
23  court to enter an order about how discovery should be
24  coordinated between the MDL and JCCP courts, that's
25  fine.
26              I have not spoken with Judge Gonzalez
27  Rogers about this.  I know she has been traveling.
28              My own experience has been that -- and

1  this goes back to the year 2000 when we started the

2  complex courts.

3          My experience at creating elaborate orders

4  to govern in advance future proceedings and how the

5  future proceedings will be conducted has some downsides.

6  I've found that -- and I think most of us in complex

7  have found that it's better to solve issues as they

8  arise and better decisions can be made in concrete

9  situations.

10          I feel confident there will be good

11  communication between the lawyers in this case and the

12  lawyers in the MDL.  I feel confident there will be good

13  communication between myself and Judge Gonzalez Rogers.

14          So what I propose to do is the following.

15  I'd propose that the minute order for today set forth

16  several general principles that I think everybody agrees

17  on, and for the present that would be sufficient for

18  this case.

19          At this time, depending on what the

20  federal court does, something else may be required, but

21  I would propose to set forth in today's minute order the

22  following principles:  One, discovery in the MDL and the

23  JCCP should be coordinated; two, discovery requests

24  served and responded to in the MDL will be treated as

25  though served and responded to in the JCCP; and, third,

26  this Court will allow discovery in -- will not allow

27  discovery in this case that duplicates what has taken

28  place in the MDL.

1          So then if the defendants want this Court

2  to enter additional orders on this topic, defendant

3  should provide plaintiffs with a list of such proposed

4  orders or topics, proposed order, and meet and confer.

5  Absent an agreement, you'll let me know in a joint

6  posting or in a future status conference report.

7          I'll have an informal discovery conference

8  on the issues, and then absent informal resolution,

9  defendants could file a motion with this Court.

10          So I'll hear from counsel on either side

11  on this proposed action by this Court at this time.

12      MR. BLASCHKE:  Your Honor, Matt Blaschke for

13  TikTok.  I'll speak on this behalf of defendants.

14          I appreciate the Court's comments this

15  morning.  Indeed, the principles that Your Honor just

16  outlined are embedded in the draft coordination order

17  that we have been discussing with the plaintiffs for

18  sometime now.

19          And as Your Honor noted, there is a

20  process already in place whereby the proposed order will

21  be submitted to Judge Gonzalez Rogers, and she'll do one

22  of three things with that order.

23          She'll either enter it as proposed, she'll

24  modify it and enter it, or she won't enter it at all.

25  And I do think that that will dictate what we do next in

26  connection with the JCCP.

27          Your point certainly about not having an

28  elaborate order that is forward-looking and just not

1   necessary, those comments are well-taken, and our

2   approach here certainly is not to have a needlessly

3   elaborate order but rather to streamline the proceedings

4   and take some commonsense type steps that might help us

5   do that.

6              So with your comments in mind, Judge,

7   we'll proceed, and we'll report back once we've engaged

8   with the MDL.

9         THE COURT:  Okay.  Plaintiffs' counsel?

10        MR. CREED:  Your Honor, Jesse Creed for the

11  plaintiffs.

12             We agree with the Court's approach, and

13  these all sound -- these three items sound fine to us.

14  We have no objection to that.

15             I think on the second item, there might be

16  an issue where I think -- as counsel for defendant said,

17  we -- there are things -- there were agreement on

18  things, and then there was sort of a list that we said

19  we wouldn't agree to absent a noticed motion, and we

20  outlined the concepts of what those things consist of in

21  the joint report.

22             But I think what was also agreed to was

23  that any discovery served and responses in the JCCP

24  would also be applicable in the MDL.  That's been agreed

25  to by the parties as well.

26        THE COURT:  Okay.  That's fine, but I'm governing

27  my turf here, so I wouldn't think it would be

28  appropriate for me to say what is done here -- the

1  binding effect of what is done here should have on the

2  MDL, so it's probably why I wouldn't do it in the

3  converse, so to speak.  Okay?

4       MR. CREED:  Yes.

5       THE COURT:  Very good.

6            Okay.  So the minute order will reflect

7  those -- those three principles.

8            So let's turn to the protective order.

9  Was the order signed by the magistrate judge attached to

10 the joint report?

11           I don't think I saw it.

12      MS. SIMONSEN:  Your Honor, the magistrate judge

13 has not entered the protective order yet, but he did

14 hold a hearing on the parties' proposed initial draft

15 and the disputed issues, and the parties are currently

16 adjusting the order to reflect his comments at the

17 hearing and anticipates submitting a revised proposed

18 protective order in the near future.

19      THE COURT:  So it's not final.

20           So let me just address the two issues that

21 are raised by plaintiffs' counsel, one regarding expert

22 disclosures.

23           So the Northern District of California has

24 the extensive experience, probably more than anyplace in

25 the country, with especially patent cases that have

26 trade secret and technical information of that sort, and

27 I certainly respect their understanding of the risks and

28 protections for highly confidential trade secrets and

 1  technical information.

 2          My view, without conducting a separate

 3  research for this case, is that I don't think California

 4  allows law -- allows the identity of a nondesignated

 5  expert to be required to be disclosed to a party

 6  opponent.

 7          So depending on what is done in the

 8  federal court, this issue will need to be briefed here.

 9  So we can do that now or we can wait, but that, I think,

10  could be -- well, so that will need to be briefed.

11          So my question for counsel is -- and I'll

12  move on to the other issue in a minute, but my question

13  for counsel is how do you want to handle this?

14      MR. CREED:  Your Honor, this is Jesse Creed for

15  the plaintiffs.

16          We agree it would need to be briefed, and

17  we can do that -- I think if defendants want to draft

18  the issue, obviously, then we would agree to what is

19  happening in the MDL vis-a-vis the protective order.

20          If the defendants want to insist on any

21  provision that would require early disclosure, then I

22  don't see any need to wait on briefing it.

23      MS. SIMONSEN:  Your Honor, we would propose that

24  once the MDL court enters the protective order in those

25  proceedings, we meet and confer with plaintiffs on any

26  revisions that may be required for purposes of these

27  proceedings, as we've contemplated would be the course

28  of action all along, and then we present to Your Honor a

1   proposed protective order or competing proposed

2   protective orders along with letter briefing on any

3   disputes, and that way we can address all of the issues

4   at once in the context of an actual proposed order that

5   would be before -- before Your Honor.

6         THE COURT:  Okay.  Let's see what the magistrate

7   judge does, and then we'll move forward from there.

8               And what I'd propose in terms of something

9   like this, the way I'd like you to do it is either bring

10  it up in the next status conference and we can talk

11  about specific briefing or use the message board and

12  say, you know, "The magistrate judge has entered the

13  order, and it does require disclosure experts" -- "names

14  of experts, and here's what we'd propose for briefing

15  the issue," or just say, "We'd like an informal

16  conference with the Court to discuss how the issue

17  should be briefed."  Okay?

18              And for purposes of this Court, we don't

19  do -- we don't do letter briefs.  We need something that

20  can be filed, and so it would have to be either, you

21  know, an agreed length joint statement where each side

22  has its portion of the joint statement or simultaneous

23  briefing by each side on an agreed length.  There's a

24  lot of ways to do it, but it needs to be filed.

25        MS. SIMONSEN:  Understood, Your Honor.

26              And I will just for your awareness let you

27  know that we have had, I think, success doing similar

28  joint statements when we've submitted proposed orders in

1   the MDL.  I think we can certainly do something similar

2   here in a form that would be acceptable to Your Honor,

3   and that can be filed.

4         MR. CREED:  Your Honor, a note on that.

5              Based on my experience in California

6   practice, obviously, the appellate courts in particular,

7   as the Court has had experience with, there's -- when

8   you're dealing with work product, I think it should

9   proceed by a noticed motion.

10             So if the defendants want to impose an

11  order that would require piercing the plaintiffs' work

12  product, then it should be by a noticed motion.

13             So we will, of course, talk to defendants

14  if there's an alternative issue, but having dealt with a

15  stay from the Supreme Court of California with this

16  Court on various privilege issues, I think that's how we

17  would prefer to proceed to create the record.

18        THE COURT:  Okay.  And I'm -- I am open to that.

19             I've also had the unfortunate situation

20  where it seems like everybody's agreed to simultaneous

21  briefs and an informal process, and then people say,

22  "You can't order me, you know, at the last minute."

23             So there's something to what Mr. Creed

24  says, but under those circumstances, what we ought to do

25  is sort of agree to shorten time or something so that we

26  don't have to -- so, you know, notice for a regular

27  motion here is 16 court days, which is basically a

28  month, so we could do something quicker if you stipulate

 1  to that.

 2      MS. SIMONSEN:  Your Honor, we're happy to discuss

 3  that with plaintiffs.

 4          I think, as Your Honor proposed, an

 5  informal discovery conference first where we can at

 6  least preview for Your Honor any of the outstanding

 7  issues --

 8      THE COURT:  On this issue, you can say, "We have

 9  had the informal conference."  Okay?

10          So -- yeah, it will have to be briefed.

11  So that's what I need to determine in an informal

12  conference, is, you know, if I can give a tentative

13  that's going to satisfy both sides, if I can give a

14  tentative of, you know, what my understanding of the law

15  is without briefing as truly a tentative, and then

16  briefing can go forward.

17          So on this issue, we've talked about it,

18  so we're going to have to brief it if that's what's in

19  the federal -- in the federal order and you wanted to

20  apply it in a similar way here.

21      MS. SIMONSEN:  Understood, Your Honor.

22      THE COURT:  On the 30 days to designate which

23  parts of the deposition are confidential, and as I

24  understand it, the entire deposition would be treated as

25  confidential for 30 days, and then there would be a

26  deadline to designate the parts that are confidential

27  under the protective order.

28          I would say this.  I think it's really not

1  very burdensome under California Rule of Court 2.550,

2  which I have something additional to say about in a

3  moment, to redact deposition testimony in a brief and

4  file the brief conditionally under seal, which is what's

5  required.

6              The party -- the burdensomeness really is

7  on the party whose information is filed by an opposing

8  party and is arguably confidential, and then that party

9  has a greater burden because they have to move to seal

10  within ten days.

11             And that party, if they want to avoid that

12  burden of having to move to seal within ten days, can go

13  through the deposition more quickly and designate the

14  confidential -- the only parts that should be

15  confidential before somebody needs to file a motion.

16             And everybody's going to know when motions

17  are being filed here, so that would -- I would at this

18  point just leave the 30 days.  This is also one of those

19  really forward-looking issues that by the time it

20  arises, the parties will have experienced working with

21  each other, and you may be able to deal with that

22  informally to avoid burden on both sides when the issue

23  arises later.

24             So I would just leave the 30 days in there

25  at this point.

26        MR. CREED:  Okay.

27        MS. SIMONSEN:  Thank you, Your Honor.

28        MR. CREED:  Thank you, Your Honor.

1          THE COURT:  Okay.  While we're talking about

2    California Rule of Court 2.550, first of all, no one

3    enjoys the burden of obtaining permission to seal a

4    court record, and this Court does not enjoy ruling on

5    motions about same.

6               However, you know, we are an institution

7    that lives by its own credibility, and we have

8    California Supreme Court precedence that is real wisdom

9    about having an open court system and the importance of

10   that, and California Rules of Court 2.550, burdensome as

11   it is, reflects the California Supreme Court's decision

12   in the CBS case setting forth the importance of having

13   an open court.

14               And when you study 2.550, which I

15   recommend to everyone if you haven't done it, you'll see

16   that there are some places it applies and some places it

17   doesn't apply, so anything that has to do with solving

18   discovery disputes, it does not apply -- or that is, it

19   has an exception for the standards that apply otherwise.

20               You know, so I can't change 2.550, and,

21   you know, a lot of us have thought about whether

22   there's, you know, a more expedited way that we could

23   propose to get through this, but, you know, the Judicial

24   Council hasn't come up with anything as yet.  So I think

25   we would just go with no separate sealing order.  Follow

26   the Rules of Court.

27               I looked at Exhibit 7 to the joint report.

28   I don't think it would be sufficient in state court.

1  Critically, it doesn't set forth the standards that
2  would have to be met by a party seeking to seal, which
3  is set forth in 2.550, and it's not consistent with
4  state procedures for how documents are filed
5  conditionally under seal.
6             By the way, this process is also a --
7  2.550 is a huge burden on staff as well, so setting up
8  some new slightly different system would probably not be
9  helpful since they've mastered that system.
10             So that's my view about sealing.  We'll
11  just -- 2.550, just follow it.
12         MS. SIMONSEN:  And, Your Honor, Ashley Simonsen
13  for the defendants.
14             To be clear, we were proposing not that
15  Your Honor enter that specific sealing stipulation, but
16  rather that we would make adjustments to it to account
17  for 2.550.
18             Certainly, we have no intention of
19  addressing the substantive standards for sealing in
20  terms of who bears the burden of establishing a basis
21  for sealing.
22             Really, the purpose is to try to make it a
23  little bit easier on everyone in the sense that the
24  sealing motions would be filed at the conclusion of
25  briefing on any underlying motion for which there are
26  multiple sealing motions, but we would not anticipate
27  there would be any lesser access to information.
28             For instance -- and I think there's --

 1   reasonably there would be greater access because ten

 2   days following the submission of a paper for which

 3   certain material may be subject to sealing, the

 4   designating party goes through and redacts it in as

 5   limited nature as possible and then submits it to the

 6   other side to go ahead and put in redacted form on the

 7   record.

 8              In ordinary practices, as Your Honor just

 9   observed, it may be the case that the party filing the

10   paper that needs to be sealed may sort of overredact

11   since the information is not their own to defend the

12   sealing of, but if Your Honor doesn't want us to take a

13   shot at sort of amending that stipulation to comply with

14   California rules, certainly we hear you and we'll simply

15   follow the code.

16        THE COURT:  I would suggest following the code, I

17   really would.

18              It's -- and, yes, a party filing a paper

19   will overredact, but that's because under your

20   confidentiality orders, usually the producing party at

21   the first stage will overdesignate as confidential, and

22   we understand why that happens, but then it has to be

23   unwound at that point, i.e., ten days after, let's say,

24   the plaintiffs file a motion.

25              So the -- so I think we ought to -- if you

26   want to bring it back again, I'll listen, but I think

27   that's what we ought to do.

28              By the way, I usually hear those motions

1  at the same time I hear the substantive motion, so we

2  don't have a separate -- separate appearance, but I

3  realize it's a lot of work that has to be done

4  immediately following.

5          But, you know, the Rules of Courts say

6  that the clerk is supposed to unseal the thing by court

7  rule if the motion isn't filed.

8          Now, I'll tell you we allow do-overs,

9  right, if people don't quite make that deadline, but

10  that's -- that's the rule.

11  MS. SIMONSEN:  I understand.

12  THE COURT:  What I would suggest is if you come

13  up with something good, submit it to the Civil Rules

14  Committee of the Judicial Council as a proposal because

15  all of us would like our life made easier in some way.

16          Okay.  All right.  So just noting that you

17  referenced the deadline for the master complaint, and

18  that's moving forward.  That's excellent.

19          User interface day, so when I was thinking

20  about a science day, so to speak, regarding user

21  experiences with various products, I had not thought

22  about that there would be a temporal problem; that is,

23  what user experience is over different periods of time

24  alleged in the complaints or today, for that matter, and

25  I think it's too complicated before the demurrers are

26  adjudicated, especially because we have to be so careful

27  not to run afoul of the rule that facts outside the

28  allegations of the complaint can't be considered on

 1  demurrer.

 2              So I think we should let this issue go for

 3  now, and I'm sorry that people have spent a lot of time

 4  on it.  It's something I threw out without thinking

 5  through very well.  Perhaps it will be helpful at some

 6  point later.

 7              Okay.  The demurrer is scheduled, so I

 8  have looked over the competing schedules and the reasons

 9  for them, and thank you for your efforts to agree, and

10  even though you didn't agree, the discussions were

11  helpful for me in thinking about a schedule.

12              So here's the schedule that I would put

13  out there as a tentative subject to further argument if

14  you want to and weighing the competing considerations.

15              So on or before -- and I put this in the

16  minute order.

17              On or before June 2, plaintiffs to

18  identify three short form complaints that together with

19  the master complaint would be the subject of the

20  demurrers, and then July 14 or four weeks after the

21  Supreme Court decision in Gonzalez versus Google,

22  whichever is later, defendants will file joint and

23  individual demurrers.

24              I have no inside information, but knowing

25  what the Supreme Court has on its calendar still, my

26  guess would be it would be very close to June 30 anyway

27  that they're going to decide this, so really it would be

28  running four weeks from the Supreme Court decision, but

1  July 14 if they do get it done sooner.

2            And then four weeks after the demurrers

3  are filed, plaintiffs are to file their opposition, and

4  three weeks after the opposition is filed, defendants

5  are to file a unitary reply brief.

6            I would ask for a unitary reply brief.  If

7  at the time I've looked at the opposition from the

8  plaintiffs and you feel you should have separate ones,

9  you can let me know, but knowing how these things tend

10 to work, I think you'll want a unitary reply brief, and

11 that would be most helpful to me.

12      MR. SCHMIDT:  And that's what we're trying to do

13 both with the opening brief, Your Honor, Paul Schmidt

14 for Meta, and with the reply brief is to have unitary

15 briefs.

16            That obviously takes a lot of

17 coordination, so we appreciate that time, but that is

18 what we're aiming for.  There's a possibility that there

19 might be companion individual defendant briefs, but

20 we're going to put as much as we can in unified briefs.

21            In the MDL, we did one unified brief, and

22 then one defendant had a supplementary brief, and I

23 would expect -- I would hope that we would get something

24 very similar here.

25      THE COURT:  That would meet my expectations.

26 That sounds good.

27            So -- now, I say four weeks rather than 30

28 or 31 days, and the reason is because the Supreme

 1 | Court -- I'm assuming it's going to run from the Supreme
 2 | Court decision.
 3 |           The Supreme Court will issue its decision
 4 | on a weekday, and that way when we count weeks, we're
 5 | counting weekdays, and we don't have a problem of what
 6 | if the 30th or 31st day falls on a weekend.
 7 |           Everyone knows when we're filing.  Okay?
 8 |           However, obviously, we don't know when the
 9 | Supreme Court is going to decide, and therefore I'm not
10 | setting a hearing date today.
11 |           So here's what I'd like you to do, and
12 | I'll put this in the minute order.  I'd like you to file
13 | a stipulation and proposed order re requested hearing
14 | date after Gonzales versus Google is decided and set
15 | forth the actual dates each brief will be filed, and
16 | also in that pleading, I'd like you to propose or
17 | repropose page lengths.
18 |           And at that point, the parties will have
19 | been able to see at least some of the briefing in
20 | federal court and perhaps have a better sense of what's
21 | needed for the demurrers here.
22 |           Based on -- I'll tell you that based on my
23 | current anticipation of what might have to be covered, I
24 | would not anticipate approving a hundred pages, so --
25 | but you can ask again.
26 |           So if you don't agree on the page length,
27 | I'll consider your positions at that time and make my
28 | own judgment.

1          So that would be a stipulation and

2   proposed order setting forth the schedule for the

3   briefing, asking for the page lengths that you want, if

4   you agree.

5          If you disagree, I would suggest you just

6   set forth your -- your respective positions in that

7   stipulation even though it's not stipulated to.  Okay?

8       MR. SCHMIDT:  Your Honor, may I speak briefly on

9   the page?

10      THE COURT:  Yes.

11      MS. SIMONSEN:  That is an issue that I think

12  we'll probably not have agreement on given where the

13  parties are right now, and I'm mindful about what Your

14  Honor said about a hundred pages.

15          That's what we used in the MDL with, from

16  our perspective, much narrower claims that -- we were

17  moving on 5 claims.  Here, we're moving on 14 claims.

18          We had the wrinkle in the MDL that we were

19  doing all state law, but essentially that played itself

20  out with a big footnote or string cite listing cases

21  from different jurisdictions, as opposed to multiple

22  arguments for us as a defense group to come in much

23  below that.

24          Given the complexity of the claims here,

25  given the Section 230 and First Amendment issues we

26  haven't even briefed yet in the MDL within those hundred

27  pages, it is really, really challenging.

28          If we were not coordinating on the defense

1  and we each filed our individual briefs, that would

2  actually play out to many more pages than a hundred

3  pages across the defense group.

4           It would help to have probably earlier

5  guidance on that because -- for example, what the

6  plaintiffs proposed from our perspective is just not a

7  serious proposal.  We can't address facts regarding each

8  individual defendant, let alone 14 different claims, in

9  a 300-page complaint in 30 pages.

10          Having some earlier guidance on that might

11  help us draft because we are starting to draft now with

12  the hope that we will get a hundred pages, with the

13  thought that as remarkable as a hundred pages sounds,

14  it's certainly a big brief, that's from our perspective

15  going to be hard to reach in terms of the different

16  arguments we have to present given the complaint that

17  we've received.

18     THE COURT:  Well, draft with the idea in mind

19  that you're not going to get a hundred pages, but you're

20  going to get more than 30 pages.

21          Thirty pages is too little for this, but I

22  don't think I've ever had a hundred-page brief, so there

23  you are.

24     MR. SCHMIDT:  May I bring one other issue on

25  that, Your Honor?

26          One thing we hadn't anticipated when we

27  proposed the hundred pages is the choice of law issues

28  and having to brief choice of law issues.

1          Your Honor no doubt will recall that when
2    we were here last time, I raised the issue whether
3    plaintiffs would be moving -- would be identifying
4    plaintiffs from different states and that that might
5    implicate choice of law issues.
6          Plaintiffs didn't say they even had
7    plaintiffs from other states.  We've now been told as of
8    Monday that two or one of the three plaintiffs they plan
9    to pick are from other states, and that creates a
10   serious concern as to whether that really advances the
11   litigation.
12         We have only one other state that has
13   double digit plaintiffs.  Most states have one or two
14   plaintiffs, and if we get an Oregon or Georgia or
15   New York plaintiff where there's only one plaintiff in
16   that state, it doesn't do much to advance the
17   litigation.
18         But it also adds a wrinkle in terms of
19   potentially having to brief choice of law which can be a
20   complicated issue-by-issue question that we need to
21   brief if we're trying to live within 100 pages for three
22   plaintiffs with 14 claims.
23       THE COURT:  You're going to have that in the
24   federal court case anyway, aren't you, choice of law?
25       MR. SCHMIDT:  In the federal court case, because
26   we were essentially moving on all states, we didn't have
27   to do the same level of plaintiff-by-plaintiff analysis
28   as to what the controlling law is and certainly not the

 1  same level of claim-by-claim analysis.

 2            Just as an example, in the draft master

 3  complaint, we have -- the plaintiffs pled a California

 4  sex discrimination claim.  Presumably, they're going to

 5  shift that for non-California plaintiffs, but that would

 6  be a choice of law issue that we just didn't have to

 7  grapple with in the MDL.

 8            And there's similar kinds of statutory

 9  claims that are different across the states where there

10  are actually significant differences within the states

11  that we didn't have to address in the MDL that we will

12  here.

13       MS. JEFFCOTT:  Your Honor, we haven't decided

14  which plaintiffs would be subject to demurrer, but I

15  think at this time, we -- we anticipate that more likely

16  that all plaintiffs will be from California, so this

17  issue may be mooted in its entirety.

18            We obviously don't want to commit to that

19  at this point in time just because we still have a month

20  to review additional claims, but we're willing to work

21  with the defense to the extent that we do select a

22  non-California plaintiff for a demurrer.

23       THE COURT:  Okay.  That might fall out or it

24  might not, but that's something that you'll know by the

25  time you're asking me for page lengths.  Okay?

26       MR. CREED:  Your Honor, just one clarification on

27  the stipulation and proposed order.  Maybe this is clear

28  to others, but I want to make sure I understand.

1          That would be -- so that would be a

2   stipulation we would file after the Supreme Court's

3   opinion in Gonzalez?

4          THE COURT:  Correct.

5               So once that opinion is filed, we will

6   know precise dates for the filing of each.  So the stip

7   and proposed order would have two purposes.

8               Purpose number one would be to ask for a

9   hearing date essentially based on what you now know are

10  the specific calendar dates, and the second purpose

11  would be to address the page length issue.

12              All right.  Very good.

13              You had a section in the joint report

14  called "Predicates to Discovery," and discovery's stayed

15  now as you know, so I don't think I need to do anything

16  else except now we're going to talk about plaintiff fact

17  sheets.

18              And I think, first of all, I want to thank

19  the parties for working on this.  It does take a lot of

20  time.  A lot I think can be done between the parties

21  between now and when the demurrers are argued.

22              I don't know if the plaintiffs are using a

23  data aggregator.  It certainly takes time to work with

24  that -- with such an entity and to, you know, figure out

25  the electronic system for the plaintiffs to be entering

26  their responses electronically.

27          MR. CREED:  We do anticipate using a data

28  aggregator.  Which one we use has not been determined.

1  We haven't selected one.  We've been talking to Two-1,

2  so that's the latest update on that, Your Honor.

3       THE COURT:  I would really encourage you to --

4  and, again, sometimes both sides will agree.  I don't

5  know if you will or not, but start early.

6            I've got -- I have another case which is a

7  mass tort.  It's not a JCCP, but it involves thousands

8  of plaintiffs, and plaintiffs' counsel is telling me

9  it's taking them months and months and months to work

10 with the data aggregator to get the electronic system

11 correct so that the responses are going to be recorded

12 correctly, so I would get going on that.

13           I know plaintiffs are anxious to move

14 discovery forward.  I would really recommend that you

15 focus on that.

16           I know that the data aggregator will then

17 say -- will need time with the specific questions:  How

18 many subparts?  Do you jump to the third question?

19           I get all of that, but the process should

20 be started in my opinion.

21      MS. JEFFCOTT:  And, Your Honor, Emily Jeffcott

22 for plaintiffs.

23           And, Your Honor, we have solicited a quote

24 from one entity that can do this, and we'll work with

25 defendants to see if we can come to an agreeable

26 solution on that end.

27           Some of us on this end have had great

28 success with certain companies in being able to move

1  through from plaintiff fact sheet all the way through to

2  the end of the case.

3       THE COURT:  Yes, and I don't need -- you all are

4  sophisticated.  I don't need to tell you that the

5  plaintiff fact sheet has many uses, including post

6  settlement, if there's -- if there ever is a settlement

7  and it's an inventory or global settlement, you need to

8  think through those fact sheets with the far end of the

9  case in mind, and I know you know that.

10      MR. CREED:  Your Honor, on that note, I think --

11  I think that in order to even discuss having an informed

12  discuss with a data aggregator, we would need to have a

13  fixed fact sheet so they understand what questions are

14  being asked --

15      THE COURT:  I don't think so.  I think you need

16  to start with them and get them in place.

17           So the other thing that I would counsel

18  is, and this applies as much to the defendant as to the

19  plaintiffs and perhaps more, don't ask too much.

20           If you have too many subparts, it's going

21  to be difficult for you -- for defendants to ask me to

22  enforce that adequately, so, you know, think about

23  something that, first of all, is difficult for a

24  layperson to understand and has holes in it, and then

25  you come and ask me to dismiss that plaintiff because

26  they have those holes, and, you know, they've been asked

27  to re-respond and they haven't re-responded, are you

28  going to bring me a half filled out thing that has

CERTIFIED COPY

1  detail that's missing and ask me to dismiss the claim?

2            That's a hard sell.  Okay?  So really

3  limit it to what you need to evaluate the case.

4            Obviously, before any case would go to

5  trial, you're going to have depositions and IMEs and all

6  kinds of things, so don't -- don't overask in the

7  plaintiff fact sheet.

8            The other thing that I really recommend is

9  to try them out on laypeople.  We're lawyers, and we

10 have that problem of asking things using our language,

11 and from defense -- from plaintiffs' standpoint, you

12 don't want to have to hang over your clients and answer

13 all those questions about what does this mean.

14           From defendant's standpoint, you don't

15 want to confront someone in deposition and they say, "I

16 have no idea what this meant," and then the answers that

17 you got are not useful.

18           So try them out on laypeople and simplify

19 and simplify.  Okay?

20     MS. SIMONSEN:  It's helpful guidance, Your Honor.

21 Thank you.

22     THE COURT:  And I have had -- we've had a lot

23 of -- a lot of experience with plaintiff fact sheets,

24 and I always review them too because even if counsel

25 agree, there are things there that maybe I can see that

26 counsel haven't thought of.  So those are my

27 suggestions.

28           I would propose to do this and to ask that

1  by August 1 the parties submit competing proposed fact

2  sheets for the Court's review and comment.

3              Now, hopefully you'll have met and

4  conferred and, you know, eliminated as many issues as

5  you can, but at that point, I would be able to give you

6  kind of a check-in and my thoughts about it to send you

7  back to the negotiating table if you haven't -- if you

8  haven't agreed.

9              Does that sound reasonable?

10       MR. CREED:  It does, Your Honor.

11             Could we also include in that discussion

12  document -- plaintiffs' specific document request that

13  we would make?

14       THE COURT:  Yeah.

15             Ordinarily -- well, to me the plaintiff

16  fact sheet includes document requests that are -- it

17  would be in the fact sheet; right?

18       MR. CREED:  No.

19             These are the -- there is document

20  requests in the fact sheet that the defendants had

21  proposed, and we have provided an edit yesterday to it.

22             These are the document requests that we --

23  plaintiffs would propound on defendants for plaintiffs'

24  specific documents that would inform the plaintiffs when

25  they're -- when they're completing the fact sheet.

26       THE COURT:  Yeah, I haven't seen that picked up

27  in this -- in the joint report, but I continue to think

28  it's a good idea.

1       MS. SIMONSEN:  And, Your Honor, if I may, I know

2  at the initial status conference you had suggested, in

3  connection with negotiating a plaintiff fact sheet, that

4  plaintiffs might suggest a very limited universe of data

5  that they might request from the defendants.

6           Purely for the purposes of ensuring they

7  have access to data that they wouldn't otherwise have

8  access to that maybe is needed to complete the fact

9  sheet, we received from plaintiff last Friday a

10  voluminous list of document requests, all documents

11  relating to everything under the sun relating to these

12  plaintiffs, third parties.

13           I do not, respectfully, believe it was

14  within the spirit of what Your Honor had contemplated at

15  the first status conference.  I also would note that

16  Your Honor did observe that any motion to compel

17  relating to those initial data requests should happen

18  after the demurrers are resolved, which we do think it's

19  consistent with the fact that discovery is stayed.

20           We think we can negotiate the plaintiff

21  fact sheet, and as we get guidance from Your Honor on

22  the plaintiff fact sheet and how that's coming along, I

23  think that will in turn inform potentially the user data

24  request plaintiffs are making.  So I would propose we

25  not make that part of the plaintiff fact sheet

26  discussion, but rather take it up after we're further

27  along on the plaintiff fact sheet.

28       THE COURT:  I'm glad you're continuing to discuss

 1  the potential for information to be provided prior to --
 2  prior to the plaintiff fact sheet.
 3           I think they go hand in hand, so I would
 4  ask you, again, on August 1 to let me know where you are
 5  on those as well.
 6           And, you know, if this -- I'll just say
 7  it.  Plaintiffs, if this production of documents is
 8  going to serve the purpose we want it to serve, it has
 9  to be narrow and pointed at what the plaintiff would
10  reasonably want to see to refresh recollection to answer
11  the plaintiff fact sheets.  That's what I'm
12  contemplating.
13      MR. CREED:  Your Honor, we received an 88-page
14  fact sheet that requested voluminous --
15      THE COURT:  I understand.
16      MR. CREED:  Every one of their requests can be
17  tied to a particular question.
18           We served back, I think, a 20-page fact
19  sheet.  I may be off by a couple pages.  We have an
20  edited list of our document requests that would
21  correspond with our fact sheet that would be
22  significantly smaller.
23      THE COURT:  And I think it's smart for plaintiffs
24  to present their own proposed fact sheet too.  I think
25  in some ways, plaintiffs' counsel are -- have a better
26  perspective on what the fact sheet ought to look like.
27           So you'll go back and forth, and August 1
28  I'll take a look at it and see where you're at.  Okay?

1           So on August 1, we'll put in the minute
2  order today the parties are to submit competing proposed
3  fact sheets to the Court for review and document -- and
4  comment -- for the Court's review and comment, and
5  plaintiff -- and -- and proposed early production by
6  defendant of limited documents relevant to plaintiffs'
7  ability to respond to the fact sheets.
8           Okay.  So you'll submit that.
9           What I'm going to do is what we call in
10 our system a nonappearance case review, and that means
11 that -- and I'll set that for August -- August 4.
12          That means that on August 4, I'll open up
13 the electronic file and look for this filing that you
14 all have done, so I'm envisioning that this would be
15 sort of a cover sheet that would say, you know,
16 plaintiff and defendants' proposed fact sheet, et
17 cetera, and that it would attach as exhibits your --
18 now, if you can get to the point where you have a red
19 line, that would be even better.
20          Okay?  All right?  So that's what that
21 would be.
22          And then what I'll do on August 4,
23 nonappearances, take a look at that, and maybe we've got
24 a status conference coming up in ten days, and we'll
25 talk about it at the status conference, and I'll let you
26 know or maybe I'll set a separate conference to talk
27 about the fact sheets.  Okay?
28      MS. SIMONSEN:  That's helpful, Your Honor.

1         With respect to the user data requests,

2   would it be helpful -- I know there are certain

3   categories of data that plaintiffs are requesting, and

4   we as defendants know that they have access to that

5   information through their own social media accounts.

6         In order to explain to Your Honor why our

7   proposed initial user data requests, if we do think any

8   are appropriate, are limited in the way that they are,

9   would it be helpful for us to submit any kind of short

10  briefing or explanation on that issue for Your Honor?

11      THE COURT:  I think what would be most helpful is

12  to just have, you know, the documents.

13        In the cover sheet, you can each use a

14  page maybe to set forth where you're at and why, so to

15  speak, but I should be able to discern the issues.

16        And -- anyway, and if you have that

17  information about the individual accounts, why don't you

18  give it to them now?

19        Okay.  But after the demurrer.  Right.  I

20  understand.  We've got a demurrer coming up.

21      MS. SIMONSEN:  My point only, Your Honor, is that

22  they actually have access to the information, and we

23  have our first meet-and-confer on this issue scheduled I

24  believe for tomorrow, and so we'll be walking them

25  through that so that they understand what they already

26  have access to, right, in order to complete these

27  plaintiff fact sheets.

28      THE COURT:  Okay.

1          MR. CREED:  We disagree, but I'm not going to say

2     anything further.

3          THE COURT:  That's fine.  That's fine.

4               Well, you know, we all know that in

5     discovery the fact that one side has it doesn't mean the

6     other side doesn't have to give it, ultimately, but --

7     okay.

8               This bring us to the plaintiff

9     preservation form, and I think as I may have said

10    earlier, but if I haven't, I'll say now, I think both

11    sides have a lot to lose if this isn't done properly.

12              So here is what I'd propose.  I'd propose

13    that the parties submit an agreed form -- and we know

14    what this is about, right, the plaintiff preservation

15    form?

16              This is a form that the plaintiffs would

17    fill out to give to the defendants with respect to what

18    the plaintiffs know about their accounts so that -- what

19    they know at this point in time about those accounts so

20    that the defendants are on notice as to -- of that

21    information so that defendants can feed that into their

22    evaluation of what their document preservation

23    responsibilities are.  Okay?  That's what this is about.

24              So I would suggest that I have you submit

25    either an agreed form or competing proposed forms by

26    May 26th, together with a proposal from plaintiffs as to

27    when they're going to complete the forms.

28              In other words, you know, okay, now if we

1 have agreed on a form, there should be a deadline,

2 right, for plaintiffs to individually complete these

3 forms.  Okay?

4            And then if there's not an agreement, I'll

5 have a conference hopefully very quickly to resolve

6 this.  If we need some briefing, I'll give you a chance

7 for briefing.

8            So when I have these conferences on a

9 particular subject, you know, if I can mediate a

10 solution, that's great.  If I can't, then I'll say

11 here's how we're going to brief whatever issues we know

12 are remaining at that point.

13            Does that work for you?

14      MR. CREED:  Yes, it does.

15            Just really quick, at the last hearing I

16 think Your Honor turned to us and said get them the

17 information really quickly, so we've actually turned

18 over the information requested on the form for many of

19 the --

20      THE COURT:  I understand that, and I get that

21 there's -- yeah.  I get that, but I think it's going to

22 be far preferrable in the long run to have something

23 that says, "Here's what needs to be turned over," so

24 that can be tracked in every case.

25      MR. CREED:  We will do it.

26            I think our goal though in giving the

27 information quickly is we understand that the

28 accounts -- there may be some -- they might be ephemeral

1  in some respects, so we want to make sure by giving the

2  following, we've triggered the preservation obligation,

3  whether it's on some form or separately from the forms.

4          THE COURT:  I haven't made any order.  Right?

5              The preservation responsibilities are what

6  they are, so -- yeah.  Okay.  So -- all right.

7              By May 26th, parties are to submit an

8  agreed plaintiff preservation form or competing forms

9  together with the proposal for when the plaintiffs will

10 provide completed forms.

11             So you'll file that May 26th, and for me I

12 will set June 1 as a nonappearance case review, so I'll

13 look at that on that day and see what needs to be --

14 whether there needs to be an informal conference or

15 whether I just tell you go ahead with what you've agreed

16 to.  Okay?

17         MS. SIMONSEN:  Thank you, Your Honor.

18         THE COURT:  And if you agree to something

19 earlier, just, you know, submit it as a proposed order.

20         MR. CREED:  I think we are largely in agreement.

21 We're just --

22         THE COURT:  Okay.  Now you've got a deadline.

23             Okay.  All right.  The CSAM preservation

24 order, looking at those, and those were attached to the

25 joint report, it didn't look like there was a whole lot

26 of agreement.

27             Am I reading that correctly?

28         MS. SIMONSEN:  Well, Your Honor, if I may, there

1  actually is one important area of agreement since we

2  last brought this issue to Your Honor.

3              I know at the outset of these proceedings,

4  both sides raised the issue of the complication around

5  preserving CSAM which is contraband.

6              The parties having met and conferred I

7  think quite productively on this are now in agreement

8  that the defendants cannot preserve actual CSAM without

9  running afoul of federal criminal law, so we've instead

10  started to negotiate alternatives to the preservation of

11  the actual CSAM as plaintiffs had originally thought

12  might be possible.

13             So what we're now discussing is are there

14  alternative ways we can ensure the CSAM itself isn't

15  destroyed, and what plaintiffs initially proposed to us,

16  which I think makes some good sense, is that each

17  defendant represent that in the ordinary course of their

18  reporting practices to NCMEC, they actually submit the

19  CSAM itself with their NCMEC reports.

20             And defendants' understanding is that

21  NCMEC maintains the CSAM indefinitely, so it's being

22  preserved at NCMEC, and for that reason, defendants

23  believe that the concerns that animated both sides

24  raising this in the first instance and Your Honor's

25  concerns are really resolved, they're addressed.

26             Now, it is in defendants' sole discretion

27  whether to submit actual CSAM with NCMEC reports, but

28  all four defendants, to address plaintiffs' concerns and

 1  Your Honor's concerns, have investigated and now have

 2  made the representation to plaintiffs that they do

 3  report the actual CSAM with the NCMEC reports.

 4              They have, furthermore, agreed in

 5  connection with meeting and conferring on this CSAM

 6  preservation order that they would inform plaintiffs to

 7  the extent that their NCMEC reporting practices change

 8  in such a way that they longer report the actual CSAM

 9  with the report.

10              And we would submit, Your Honor, that that

11  really resolves the issue because all that remains after

12  you account for the fact that the actual CSAM can't be

13  preserved by the defendants but is being preserved by

14  NCMEC is information relating to the CSAM, and the

15  parties are in the course of and have made, I think, a

16  lot of good progress negotiating a separate preservation

17  order that will cover all of the other types of

18  information that defendants are preserving in these

19  cases.

20              And that would include -- just to give

21  Your Honor an example, for Meta we have explained to

22  plaintiffs that we have account snapshots for relevant

23  accounts that we've identified and that those account

24  snapshots have certain information in them which we're

25  sharing with plaintiffs.

26              Some of that information includes

27  information relating to NCMEC reports, and therefore we

28  can negotiate in the context of that preservation order,

1  that broader preservation order, what type of

2  information defendants are preserving not only about

3  CSAM related information but all of the other

4  information that is relevant in these cases.

5        THE COURT:  So for the record, could you -- and

6  for me, could you give the full name of NCMEC, is it?

7        MS. SIMONSEN:  I believe it's the National Center

8  for Missing and Exploited Children.

9        THE COURT:  Okay.  Let me ask --

10        MR. CREED:  It's a nonprofit that's been charged

11  by Congress to effectively handle these reports.

12        THE COURT:  Okay.  Would they make the

13  information -- I mean, these are pictures; right?

14        MS. SIMONSEN:  Yes.

15        THE COURT:  It could be other things I suppose,

16  but --

17        MS. SIMONSEN:  When we're talking about the

18  actual CSAM, we're talking about photographs.  I think

19  it could also potentially be something that's not a

20  photo -- I'm not certain about that, so I don't want to

21  represent, but it's not, for instance --

22        THE COURT:  There's so many things that we don't

23  know about what reality might -- reality mirroring

24  images or other things that might come about.

25             Is there any -- and I want to hear

26  plaintiffs in a minute, but is there any understanding

27  about the willingness or ability of the National Center

28  for Missing and Exploited Children to provide that

1  information to plaintiffs, for example, at trial if the

2  Court had found that it was admissible evidence?

3          MS. SIMONSEN:  I would -- I believe that the

4  plaintiffs have looked into that question.

5              My understanding from what they've

6  reported to us is that through other law enforcement

7  agencies, it may be able to be obtained, but we have not

8  ourselves investigated that question.

9          THE COURT:  Okay.  Let me hear from plaintiffs.

10         MR. CREED:  For this issue, Your Honor, Chris

11 Ayers who is on LACourtConnect has been taking the lead,

12 so I'd defer to Mr. Ayers on the topic.

13         MR. AYERS:  Good morning, your Honor.

14             This is Chris Ayers on behalf of the

15 plaintiffs.

16             So the issue -- the issue with the CSAM

17 generally is that, yes, the parties can continue to hold

18 it indefinitely and must report it.

19             Defendants have the ability to report it

20 to NCMEC which would -- which is a repository for it

21 that only works with law enforcement, so the plaintiffs

22 themselves and counsel do not have direct access to any

23 of the actual CSAM that is submitted and disclosed by

24 the defendants.

25             And so what the current dispute is really

26 about is providing -- prior to the defendants' deletion

27 of the CSAM images or video, the child pornography that

28 they possess, before they delete it, that they provide

1  notice to us and also with key information surrounding

2  the evidence that can be provided, such as what type of

3  image it was, what the contents of it were, the

4  information about the victim, information about the

5  alleged abuser, so any information surrounding this, and

6  that that information be provided to the plaintiff, and

7  also that we would get realtime notice to the actual

8  deletion of the CSAM so that we can work with law

9  enforcement to make sure that all the evidence about the

10 CSAM is preserved.

11          Because what we are talking about is,

12 while it's lawful, the destruction of the key evidence

13 that's going to be in this case, and so that's what the

14 current dispute is about.

15          We understand that defendants do submit

16 the CSAM to NCMEC, but from there, we don't have direct

17 access to it with NCMEC.

18          We've had numerous calls with NCMEC

19 personnel, and they indicated that they cannot by

20 statute provide it because they're only this nonprofit,

21 this lawful means of transitioning that to law

22 enforcement.  We do not have access to it there, and

23 they cannot make it available to us there.

24          So the current dispute is about making

25 sure that we have the plaintiffs' key information

26 surrounding the actual CSAM that we have.  That would be

27 evidence that would be admissible and useful in this

28 litigation.

1      THE COURT:  Okay.  So what do you want me to do

2  about this issue?

3      MR. AYERS:  I believe the parties are going to be

4  briefing the issue, and so you'll be able to fully

5  understand the parties' positions, and you have the

6  current CSAM orders proposed now.

7      THE COURT:  They have very little overlap, the

8  proposed orders --

9      MS. SIMONSEN:  And, Your Honor --

10      THE COURT:  -- based on my -- based on my

11  relatively quick review.

12      MS. SIMONSEN:  If I may respond to points that

13  Mr. Ayers made about plaintiffs' proposed preservation

14  order?

15          What plaintiffs have proposed, having

16  recognized that defendants cannot preserve actual CSAM,

17  is that we actually have human reviewers I believe is

18  their proposal or create some kind of new AI that can

19  look at every single piece of CSAM that is being

20  reported to NCMEC and create a summary of it, which

21  would revictimize the victim of CSAM.

22          It would also run directly counter to the

23  reporting statute which expressly lays out that the

24  extent of viewing of the CSAM after it is detected and

25  reported should be extremely limited, only for purposes

26  of reporting.

27          It's also impracticable to do that.

28  Defendants' reporting systems are largely programmatic.

1  They detect CSAM through -- through machine learning

2  models -- I may be using the wrong terminology, but most

3  of it is not done through human review of actual CSAM.

4            Furthermore, it's not linked to some

5  separate set of accounts that may be determined to be

6  relevant in this litigation such that we could either

7  practicably give notice to plaintiffs when CSAM is

8  reported in connection with a user account or determine

9  whether this description of the CSAM has to be generated

10 again.

11           The only way we can see that that would be

12 done would be through some kind of human review

13 revictimizing the victim, and so for those reasons, we

14 don't think that either of those proposals --

15      THE COURT:  Does federal criminal law preclude

16 human review?

17      MS. SIMONSEN:  No.

18           And there are instances where these

19 defendants do human review, but what they're proposing,

20 because of the way our system is set up, it would

21 effectively require individuals to conduct a manual

22 review of every single piece of CSAM in the millions --

23 tens of millions of reports that these defendants make

24 to NCMEC every year, the vast majority of which will

25 have nothing to do with this litigation, and it's not a

26 part of what's required by federal law.

27           In fact, we would submit to Your Honor,

28 again, that it runs counter to federal law.

```
 1        THE COURT:  This is litigation.
 2        MS. SIMONSEN:  Understood, Your Honor, but -- we
 3   are happy to brief this.
 4             There is no litigation exception in the
 5   NCMEC reporting statute despite there being exceptions
 6   for other circumstances.
 7        THE COURT:  I understand.
 8             You have to come to grips with the
 9   question of whether you want in a trial the plaintiffs
10   to be able to stand up and tell the jury that through
11   computer means, you destroyed the information that could
12   show what they need to prove their case.
13             And I could read you -- I don't have it up
14   here anymore, but the jury instruction on that is
15   incredibly powerful about destroyed information, whether
16   it's intentional or not.
17             We need to grapple with this issue in my
18   opinion in order to protect both sides.
19        MS. SIMONSEN:  Understood, Your Honor.
20             I think plaintiffs recognize that we can't
21   preserve the CSAM, so I don't think that's evenly an
22   issue of dispute anymore.  We have to destroy the CSAM
23   after we've reported it.  It is then preserved by NCMEC.
24             I would submit, Your Honor, I don't even
25   know how plaintiffs could ever admit this in evidence
26   because it is contraband.  It can't be possessed.  It
27   can't be shown again to an entire jury, which would
28   revictimize --
```

1  THE COURT:  Have you been to the criminal courts
2  building?
3  MS. SIMONSEN:  Well, in the context of criminal
4  proceedings, there's an exception, and that is the
5  exception that I mentioned to Your Honor in the NCMEC
6  reporting statute for criminal proceedings.
7  These are not criminal proceedings.
8  There's no exception.
9  THE COURT:  So they shouldn't be able to prove
10  their case if they have a plaintiff who was victimized
11  by being asked to provide pictures of their private
12  parts to somebody else?  They shouldn't be able to prove
13  their case?
14  MS. SIMONSEN:  I'm not suggesting that they
15  shouldn't be able to prove their case, Your Honor, but
16  in this instance there are certain limitations on
17  evidence that can be used to do that.
18  In this case, of course, to the extent
19  that there is CSAM in any of these individual user's
20  accounts, that is something that they could certainly
21  describe if they were the ones who were the victims, as
22  opposed to having, for instance, individuals -- that
23  each of the defendants review tens of millions of pieces
24  of CSAM revictimizing all of those victims in order to
25  summarize it in a way that, again, I'm sure there would
26  then be disputes about whether we adequately summarized
27  it.
28  In the meantime, we do have these NCMEC

1  reports which, for instance, you know, I think I

2  would -- we would want to submit this information with

3  our briefing to the extent that it is highly

4  confidential information --

5      THE COURT:  But the reports can't be linked to

6  any individual plaintiff.

7      MS. SIMONSEN:  Oh, they can because -- and that's

8  what we can submit more information to Your Honor about,

9  and this is what I was getting to with this idea of the

10 broader preservation order covering -- this is

11 information about these NCMEC reports and the CSAM that

12 the defendants do maintain and do preserve beyond the

13 actual CSAM itself, and we're in the process of

14 discussing with plaintiffs exactly what that information

15 is.

16      And so it would include, you know,

17 information I believe about the victim and the

18 perpetrator.  I mean, I would want to confirm that, and

19 we'd want to submit that to Your Honor.

20      But in addition, there is a way that each

21 defendant is able to confirm -- if we have, for

22 instance, say a list of relevant accounts in this

23 litigation, plaintiff accounts, there's a way to confirm

24 whether for any particular account there was a NCMEC

25 report that was made in connection with CSAM that may

26 have been associated with that account.

27      THE COURT:  So you can associate with them with

28 an individual?

1        MS. SIMONSEN:  We can associate NCMEC reports

2   with an individual, that's right, Your Honor.

3              And so, you know --

4        THE COURT:  Even though this AI machine is doing

5   it, you can associate it with the report?

6        MS. SIMONSEN:  Oh, absolutely.

7              What we can't do, Your Honor, is -- and

8   don't do and we believe would violate the statute is

9   have an individual human look at the CSAM and summarize

10  it and describe it before it gets reported to NCMEC,

11  which is what plaintiff is proposing that we do.

12             And if --

13       THE COURT:  All right.  Mr. Ayers?

14       MR. AYERS:  Yes.

15             What defendants are talking about isn't

16  actually what the plaintiffs' proposal contemplates.

17             What the plaintiffs' proposal contemplates

18  is to make sure, because of CSAM in certain context

19  would have to be deleted following its reporting to law

20  enforcement or NCMEC, ask them to preserve it past the

21  90 days.

22             We ask that they make sure that they

23  preserve prior to deletion and also provide to the

24  plaintiffs key information, and those are spelled out,

25  and they also -- those are spelled out not only just

26  talking about the suspected CSAM itself but talking

27  about the source of CSAM, suspected offender and victim,

28  and other identifying information and other additional

1  information.

2            CSAM is admissible in court, and what

3  happens in the context of using it in court, both civil

4  and criminal, is that the CSAM images would need to be

5  redacted, and those would be court personnel.

6            And so if we're talking about admitting,

7  the Court would need to take acceptance of CSAM images

8  from law enforcement and then conduct its own redaction

9  of that for its admissibility.

10           It's obviously a heavy burden on the court

11  providing such descriptions of the CSAM itself.  It may

12  aleve some of those burdens and also have information

13  related to the suspected CSAM that plaintiffs would have

14  and not have to use law enforcement resources in order

15  to potentially try to get -- get access to the CSAM from

16  NCMEC.

17           There are resources for that.  Nothing

18  about providing a description of the CSAM images

19  themselves would violate anything within the federal

20  rules, federal law whatsoever, so that's just not

21  accurate.

22           There are potential ways to provide

23  descriptive features of these videos.  Part of the

24  description we ask for is including whether it's a video

25  or image, the number of files, any distinctive features

26  of the material included in any of their available

27  metadata.  So there are ways to go about this and do it

28  to make sure that this information is preserved about

1  the CSAM.

2            The preservation order itself that we're

3  discussing does not tackle this issue directly.  What

4  we're talking about is contraband that the defendants

5  will not be preserving, will be deleted, and so in the

6  context of the deletion of evidence, we want to make

7  sure as plaintiffs that we're able to get all the

8  details around that deleted.

9            Just as if there was an inadvertent

10  spoliation issue, they would -- defendants would be

11  required to describe what evidence was actually -- what

12  evidence was destroyed, what evidence was lost so that

13  plaintiffs would have those disclosures.

14            It's commonplace in litigation where

15  evidence is lost or destroyed, whether lawfully or

16  otherwise, to provide a description of that information.

17            And what plaintiffs provided in their

18  order -- in their proposed order is a statutory history,

19  a little background to explain how the federal law works

20  in connection with the reporting of CSAM as well as the

21  preservation of it.

22            And so we believe that the reporting to

23  NCMEC is a way for the defendants to make sure that this

24  information is preserved.

25            That said, if there's another means that

26  defendants would prefer to provide plaintiffs with this

27  valuable information about the CSAM, we can further

28  discuss it, but, nonetheless, the plaintiffs have a

1  right to this information about it to make sure we

2  understand information about the victim itself, about

3  the abuser, and about the CSAM.

4          MS. SIMONSEN:  Your Honor, with the exception of

5  the description of the CSAM, which I don't really know

6  what Mr. Ayers means by that, I think we can continue to

7  meet and confer as we have been to share with him

8  information about the CSAM that we do preserve, which

9  some of those items he just mentioned we do preserve,

10 and we told him that, and we told him that we'll commit

11 in the preservation order that we're negotiating to

12 preserve that information in connection with our other

13 preservation efforts.

14          If Your Honor would prefer, we can go

15 ahead and put that into a preservation order that would

16 be entered separately for purposes of CSAM, but I think

17 further conferral on the description of the CSAM is

18 probably going to be the nub of the issue.

19          I'll also note, Your Honor, that if

20 Mr. Ayers is aware of a way in civil proceedings through

21 law enforcement to admit CSAM, then it's unclear to me

22 why he wouldn't pursue that route to the extent that

23 plaintiffs want to introduce this in evidence at trial.

24          I'm not aware that that's permissible, but

25 to me that seems to be the solution rather than having

26 defendants create summaries of CSAM, which as I've

27 described is impracticable.

28          But I do think, Your Honor, additional

1  briefing on this may be the most helpful for Your Honor,

2  and the parties have proposed submitting something by

3  May 26th for Your Honor's consideration if that would be

4  acceptable.

5          THE COURT:  So that's fine.

6              I think it probably -- so let me ask

7  Mr. Ayers.

8              You want to continued to see how close you

9  can get on this?  That would be helpful.

10         MR. AYERS:  I think if the parties -- the parties

11 can continue to meet and confer to see if we can come to

12 a closer agreement.

13             I will say just quickly in response, you

14 know, CSAM -- while CSAM has been admitted and is

15 admissible, there's significant burdens to it, as well

16 as the access to the CSAM images by plaintiffs counsel,

17 as well as the victims themselves.

18             Since NCMEC can't -- we can't get access

19 through NCMEC itself, the defendants' proposal

20 essentially is to say, "Hey, we're providing the CSAM to

21 NCMEC which you can't get from NCMEC anyway, and this

22 isn't admissible in court so tough."

23             And so we are looking for a mechanism to

24 be able to provide that, use the information about that

25 CSAM so that it would be usable and useful as evidence

26 to the Court, as well as to plaintiff.

27             So we're happy to continue to meet and

28 confer to see if we can find some more common ground.

1      THE COURT:  Okay.  That sounds fine.

2           So maybe what we should though -- I think

3  you were proposing simultaneous briefing on what you

4  were unable to agree with.

5           I think it's probably better for

6  plaintiffs to bring a motion because if I'm ordering

7  defendants to do something that is arguably contrary to

8  federal law in order to meet the requirements of civil

9  litigation, then it better be based on a noticed motion.

10 Okay?

11          So let's do it this way.  Get as close as

12 you can, and then, Mr. Ayers, go ahead and file your

13 motion by May -- by May 26th, and go ahead and submit a

14 briefing schedule just on Case Anywhere, okay, or you

15 could do, you know -- you could do it as a stip and

16 proposed order.

17          Do it on Case Anywhere, and let me know

18 and then request a hearing date that way.  Okay?

19          Give me your briefing schedule and a

20 hearing date.  Okay?

21          All right.  So that bring up filing

22 proposed orders with the court.

23          So you had a proposed order regarding

24 waiver of formal service, which is fine, but, you know,

25 it's whatever Attachment 10 is to the joint report.

26          So we don't want the staff to have to take

27 the joint report apart and get that out and then have to

28 file it.  So when you -- the way our electronic system

1 works is if it has the word "proposed order" in it or

2 "stip and proposed order," it gets into the work queue,

3 basically.

4            So file that as a -- as a proposed order

5 or as a stipulation and proposed order letting me know

6 that it's agreed to by the parties, and then that is

7 easier to execute that way.

8            Did my staff have anything else, since

9 we're talking about proposed orders, that you wanted to

10 let counsel know about in terms of getting orders to us?

11      THE CLERK:  I think that's the most important

12 part, was that anything mentioned in a report and if

13 it's proposed, it needs to come into the work digitally

14 standing on its own so we can process it.

15      THE COURT:  Okay.  Good.

16            If you have questions, my staff is

17 wonderful.  You can call them, but don't abuse the

18 privilege.  Okay?

19            All right.  Call and benefit order,

20 turning to the plaintiffs, so I talked last time about

21 the possibility of a consensual agreement among counsel.

22            Have you tried that and failed?

23      MS. JEFFCOTT:  The problem we have with that is

24 there's already an order entered in the MDL that would

25 essentially hold back 10 percent of most, if not all, of

26 the cases that are already filed in the JCCP and that

27 will be filed in the future most likely.

28            And so in order to essentially prevent a

1  double holdback that we would be able to achieve, if we

2  did a private agreement, we would need something more

3  formal along the lines of we believe a parallel common

4  benefit order filed in the litigation that would

5  explicitly say that there isn't going to be a double

6  holdback, that there wouldn't be a 10-percent holdback

7  on cases that are subject to an MDL assessment, and also

8  that would explain that there would be coordination

9  between the MDL and the JCCP, and that there could be no

10  duplicative work, and all of the elements of that we're

11  trying to seek through coordination that's already

12  ongoing in the litigation.

13          THE COURT:  Can't you do that yourselves though?

14             Because you can agree to something --

15  well, my position is that that ought to be the case for

16  both federal and state court, but I don't have anything

17  to do about federal court.

18             Why can't you take all of those things

19  you've just said and agreed to them among yourselves,

20  and then, you know, I can ask that you submit it to

21  Judge Gonzalez Rogers and see if there is anything she

22  believes in your agreement that would conflict with her

23  orders?

24          MS. JEFFCOTT:  We can certainly try that.

25             I think one concern we have is that as

26  additional cases get filed into the JCCP, that we would

27  have to essentially renegotiate or have those new -- new

28  parties, new counsel entered into the agreement.

1      THE COURT:  You'd have a provision for new

2  counsel being added, and if you've got a free rider in

3  the future, there are a lot of reasons why somebody

4  coming in would not be a free rider, quite honestly, but

5  maybe there would be a free rider.  You could bring it

6  to the court.

7      MS. JEFFCOTT:  Your Honor, we'll work to --

8      THE COURT:  Why don't you try to do that?

9          Let me -- sorry.

10          I know this may seem like wasted effort,

11  why can't I just sign a piece of paper, but ultimately

12  if I don't have authority to, I can't enforce it anyway,

13  so -- whereas if you do it by agreement, you know, it's

14  a contractual arrangement.

15          And so if you're not able to achieve that,

16  you can come back and file a motion.

17      MS. JEFFCOTT:  One question, Your Honor.

18          If we're able to achieve an agreement,

19  will we be able to submit that as sort of a stipulation

20  so that at least we've made a record of it?

21      THE COURT:  Yes.  You'll be able to make a record

22  of it.

23      MS. JEFFCOTT:  Thank you, Your Honor.

24      THE COURT:  Yes.  Definitely.

25          So if you can't achieve that, you can

26  bring a motion.

27          I will want to know which counsel are not

28  in agreement with going along with everyone else's

1  proposal, so to speak, and -- but then you'll have to

2  brief the authority.

3            There are articles by Professor Charles

4  Silver of the University of Texas, and I think he just

5  posted one.  I found it online on unjust enrichment

6  theory.  I think he's already written that there's no

7  authority for common benefit fund theory, and maybe he's

8  out there by himself on it.

9            I'm aware of the whole history of the

10  complex litigation handbook on the federal side and that

11  everyone does it, but there is that -- there are those

12  arguments that Professor Silver makes, and moreover, and

13  most importantly here, we'd have to address it under

14  California law.  We have to find a way under California

15  law.

16            So -- and I just-- I'm not going to preach

17  on it.  I want to be helpful to all parties here, but

18  for reasons I mentioned last time, it feels very uneven

19  to me to be issuing orders to make sure that counsel on

20  one side can get paid.

21            It just doesn't feel right, understanding

22  however, that when you have multiple counsel, you've got

23  to find some way of being fair to the people who are

24  taking the laboring oar, who are the people sitting

25  here.

26       MS. JEFFCOTT:  I think what we're trying to

27  establish is a mechanism so that we can raise funds to

28  pursue the litigation and also at the back end make sure

1  that people are compensated for their expenses and time.

2          We appreciate the guidance you've

3  provided.  We'll work through this and report back if

4  necessary.

5      THE COURT:  Yeah, let me know.

6          I'm not totally foreclosing, but -- well,

7  I've said what I've said, but try to work it out

8  yourselves, and you may be establishing some new, you

9  know, mechanisms for going forward.

10         As I'm sure everybody here knows, the

11  Federal Rules Committee is considering -- the Civil

12  Rules Committee sent to the Standing Committee rules

13  about the MDL -- proposed rules by the MDL, and it does

14  make mention of the common benefit fund there.

15         So if that's -- if those are approved,

16  which works -- the rules committees work very slowly.

17         If that's approved, then people will point

18  to that and say that's the authority for it, and maybe

19  it is.  We'll see what they do.

20         Okay.  I am happy to add Mr. Kamamoto

21  (phonetic) to the plaintiffs' steering committee, so if

22  you'll just file a proposed order on that in that

23  regard?

24      MS. JEFFCOTT:  Yes, Your Honor.

25      THE COURT:  Stip and proposed order.

26         With respect to the cases that you

27  helpfully listed in the joint report, plus the one case

28  that was mentioned in the Case Anywhere posting as one

1  you've recently agreed should be included in the JCCP,

2  I've consulted with my clerk, and we think it's better

3  that the clerk's minute order today just add those cases

4  on.

5            And apparently there's a new code that

6  will help the clerk get that organized in the court

7  system, so let us try that, and then you don't have to

8  submit a separate proposed order.  Okay?

9        MS. JEFFCOTT:  Thank you, Your Honor.

10       THE COURT:  Good.

11           Then the final thing.  This is not

12  mentioned in the joint report, but I'm adding it on.

13           So I had requested a proposed order

14  allowing plaintiffs to be named by their pseudonyms.  I

15  did not enter what was given to me, and I really wanted

16  some more on that.

17           So the things that I need are, I think it

18  should be limited to plaintiffs who are minors or

19  plaintiffs who are not minors but who are alleging

20  sexual abuse because I think those are pretty much

21  automatic categories for listing people by pseudonyms.

22           And if you accept that limitation, then I

23  think you can say that there is good cause, and if you

24  didn't mind looking for a case about the issue of -- the

25  minors I think is very clear, and the whole dependency

26  system operates that way, but the issue about adults and

27  sexual abuse, there's probably a case on that.  If you

28  can cite it, it would be great.

1      MS. JEFFCOTT:  Thank you, Your Honor.

2      THE COURT:  So resubmit that when you can.

3           So I'll set a next status conference, but

4  before I do that, is there anything else?

5      MS. SIMONSEN:  Your Honor, defendants just wanted

6  to clarify.

7           I believe the plaintiffs had reported that

8  there are 124 cases in the JCCP.  We wanted you to be

9  aware that that is actually a count by plaintiffs of the

10 number of plaintiffs.  By our count, there are actually

11 61 cases in the JCCP.

12          Plaintiffs have begun filing

13 multi-plaintiff complaints, and that is the reason why

14 there is half the number of cases as there are

15 plaintiffs.

16     THE COURT:  Thank you.  I appreciate that

17 clarification.

18          Sixty-one cases, yeah, and that becomes

19 what we live with in state court because we don't

20 require them to be filed separately, although, trust me,

21 the recordkeeping is much simpler if you can do them

22 separately.

23     MS. SIMONSEN:  And as we've stated in the waiver

24 of service agreement, the defendants of course would

25 reserve the right to take the position down the road, to

26 the extent there are trials, that those should be

27 individual trials and not --

28     THE COURT:  Absolutely.  Absolutely.

```
 1              Let me ask plaintiffs.
 2              It would be helpful if you would not mix
 3   plaintiffs from different states in one complaint.  I'm
 4   not ordering you in that regard, but that would be
 5   helpful.
 6        MS. JEFFCOTT:  Okay.  Your Honor, I'll pass that
 7   along.
 8        THE COURT:  Okay.  Thank you.
 9              Anything else?
10        MS. CLEOFE:  Your Honor, Cherisse Cleofe on
11   behalf of plaintiffs.
12              Just a point of clarification for the
13   proposed order regarding formal service.
14              Did you need the parties to resubmit that
15   proposed order, or is the proposed order from the joint
16   report acceptable?
17        THE COURT:  I need you to resubmit it.
18        MS. CLEOFE:  Understood, Your Honor.
19        THE COURT:  So we're not taking courtesy copies
20   apart or printing out parts of Case Anywhere things and
21   separating them.
22              Anything you want entered as an order
23   should always be filed as a separate document or lodged
24   as a separate document.
25        MS. CLEOFE:  Understood, Your Honor.  We'll
26   resubmit that and the other one.
27        THE COURT:  Okay.  Appreciate that.
28              Okay.  Thank you.  Very good work on
```

1  everybody, and I know you had disagreements, but I think

2  it will get easier as we go along.  Maybe it won't,

3  but --

4        MR. ORENT:  Your Honor, this is Jonathan Orent

5  for plaintiffs.

6             We have one housekeeping that's come up,

7  and I suspect others may have the same issue, and I

8  wanted to raise it before the Court, which is we filed a

9  stipulation of dismissal along with defendants in a

10 particular case.  This case is 22-CIV-03783.

11            The case was being refiled in the MDL, and

12 the stipulation of dismissal was rejected by the court

13 stating that we needed to prove essentially it was a

14 settlement and that the settlement met the needs of the

15 minor child, and I just wanted to raise this issue

16 because this was an instance where we were immediately

17 refiling in the MDL and wanted to really flag it for the

18 Court and understand how the Court wanted those types of

19 issues handled.

20        THE COURT:  Minor's compromises will at some

21 point, if these cases are resolved, consensually be a

22 big issue, no question about it, but I take your point

23 that this is just being refiled.

24             Ms. Miro, can you shed any light on this?

25        THE COURTROOM ASSISTANT:  Yeah, it actually came

26 through as a request for dismissal, and I explained to

27 them that we couldn't dismiss a minor.

28        THE COURT:  Okay.  So here's what I'd like you to

 1 | do.

 2 |          I would -- and my staff is correct about

 3 | that, but I take your point that you're refiling in

 4 | federal court, and I think there is a difference.

 5 |          So why don't you file a document called

 6 | Request for Dismissal and Proposed Order, okay, and

 7 | explain the circumstances, and that way I can sign it.

 8 |          I can approve the deviation from the --

 9 | what would be the ordinary rule if -- but I'll probably

10 | need a declaration stating it's going to be refiled.

11 |          Does that make sense?

12 |     MR. ORENT:  Absolutely, Your Honor.  Thank you

13 | for the clarification.

14 |     THE COURT:  Sorry for the extra work, but we're

15 | serious about our minors' compromises.  Okay?

16 |          Anything else?

17 |          All right.  We can set a further status

18 | conference.  Do you have any suggestions?

19 |          And thank you, by the way, for being --

20 | going along with us and moving this one.

21 |          I had planned I was going to be in trial.

22 | My case settled, but I was going to do this and then

23 | proceed into my trial, which is why I moved it to the

24 | morning, but the trial is on its way for now.

25 |          Any suggestions on how long we should wait

26 | before the next -- is there anything in federal court we

27 | should link it to?

28 |     MS. SIMONSEN:  Your Honor, I think at least from

 1  the defense side, and I welcome other defendants' views,

 2  that given these upcoming briefing that we'll be doing

 3  on various issues, I think that would probably serve to

 4  address the most immediate issues that we're currently

 5  working through.

 6              I think that probably setting a status

 7  conference -- we may not need another one until

 8  potentially after the demurrers are resolved or maybe we

 9  come back to the court --

10      THE COURT:  No.  You're going to have more before

11  the demurrers are resolved.  I'm going to make sure

12  these things are moving forward, and we have the August

13  filing dates and all these things.

14              But if -- Plaintiffs?

15      MS. JEFFCOTT:  Your Honor, I think not

16  surprisingly we find these conferences very helpful.

17  They keep us moving forward and at a pace I think that

18  is particularly beneficial to plaintiffs.

19              And so, you know, a month, six weeks,

20  that's something we would envision as being the next

21  conference so that we can keep trucking along.

22      THE COURT:  Okay.  Let me just look at my notes a

23  minute.

24              We may be able to -- we would set it maybe

25  at the same time as we're having a hearing on the CSAM

26  preservation order.  Right?

27      MS. SIMONSEN:  That makes good sense, Your Honor.

28      THE COURT:  But we don't know when that's going

1 │ to be or indeed if we need it, so here's what I'll do.

2 │              I'll set for -- let's see.  Did I already

3 │ set a June 1 appearance I think?  Is that the date I set

4 │ the nonappearance?

5 │        THE CLERK:  Yes.

6 │        THE COURT:  So June 1, that nonappearance case

7 │ will also be re setting further status conference.

8 │ Okay?

9 │              So I'll set it consistent with the hearing

10 │ date on the CSAM motion, and then if there's some other

11 │ motion that has to come up in that time with that.

12 │        MS. SIMONSEN:  Thank you, Your Honor.

13 │        THE COURT:  So that would be the next date.

14 │              Plaintiffs' liaison counsel will give

15 │ notice.  We will get out a minute order that you can

16 │ use.

17 │        MS. CLEOFE:  Thank you, Your Honor.

18 │        THE COURT:  Anything?

19 │        MS. SIMONSEN:  Nothing from the defense.

20 │        THE COURT:  Very good.  Thank you very much.

21 │

22 │              (The proceedings were concluded.)

23 │                      - OOO -

24 │

25 │

26 │

27 │

28 │

1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                  FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT SSC 12          HON. CAROLYN B. KUHL, JUDGE

4
     SOCIAL MEDIA CASES,              )
5                                     ) CASE NO. JCCP5255
                                      )
6                                     ) REPORTER'S
     _____ ) CERTIFICATE
7

8                    I, Christine Kwon-Chang, official pro

9    tempore court reporter of the Superior Court of the

10   State of California, for the County of Los Angeles, do

11   hereby certify that I did correctly report the

12   proceedings contained herein and that the foregoing

13   pages comprise a full, true and correct transcript of

14   the proceedings taken in the matter of the

15   above-entitled cause on May 3, 2023.

16

17

18                   Dated this 4th day of May, 2023.

19            _____

20            Christine Kwon-Chang, CSR No. 12143, CRR
              Official Pro Tempore Reporter
21

22

23

24

25

26

27

28

**1**

**1**  28:1 30:4,27 31:1 35:12 63:3,6

**10**  51:25 52:25

**10-percent**  53:6

**100**  22:21

**12**  1:4

**12143**  1:5

**124**  58:8

**14**  17:20 18:1 20:17 21:8 22:22

**16**  10:27

**2**

**2**  17:17

**2.550**  12:1 13:2,10,14,20 14:3,7, 11,17

**20-page**  30:18

**2000**  4:1

**2023**  1:3

**22-CIV-03783**  60:10

**230**  20:25

**26th**  33:26 35:7,11 50:3 51:13

**3**

**3**  1:3

**30**  11:22,25 12:18,24 17:26 18:27 21:9,20

**300-page**  21:9

**30th**  19:6

**31**  18:28

**31st**  19:6

**4**

**4**  31:11,12,22

**5**

**5**  20:17

**6**

**61**  58:11

**7**

**7**  13:27

**8**

**88-page**  30:13

**9**

**90**  46:21

**A**

**A.M.**  1:6

**ability**  31:7 38:27 39:19

**absent**  5:5,8 6:19

**absolutely**  46:6 58:28 61:12

**abuse**  52:17 57:20,27

**abuser**  40:5 49:3

**accept**  57:22

**acceptable**  10:2 50:4 59:16

**acceptance**  47:7

**access**  14:27 15:1 29:7,8 32:4, 22,26 39:22 40:17,22 47:15 50:16,18

**account**  14:16 37:12,22,23 42:8 45:24,26

**accounts**  32:5,17 33:18,19 34:28 37:23 42:5 44:20 45:22,23

**accurate**  47:21

**achieve**  53:1 54:15,18,25

**action**  5:11 8:28

**actual**  9:4 19:15 36:8,11,27 37:3, 8,12 38:18 39:23 40:7,26 41:16 42:3 45:13

**add**  56:20 57:3

**added**  54:2

**adding**  57:12

**addition**  45:20

**additional**  5:2 12:2 23:20 46:28 49:28 53:26

**address**  7:20 9:3 21:7 23:11 24:11 36:28 55:13 62:4

**addressed**  36:25

**addressing**  3:17 14:19

**adds**  22:18

**adequately**  26:22 44:26

**adjudicated**  16:26

**adjusting**  7:16

**adjustments**  14:16

**admissibility**  47:9

**admissible**  39:2 40:27 47:2 50:15,22

**admit**  43:25 49:21

**admitted**  50:14

**admitting**  47:6

**adults**  57:26

**advance**  4:4 22:16

**advances**  22:10

**afoul**  16:27 36:9

**agencies**  39:7

**aggregator**  24:23,28 25:10,16 26:12

**agree**  6:12,19 8:16,18 10:25 17:9,10 19:26 20:4 25:4 27:25 35:18 51:4 53:14

**agreeable**  25:25

**agreed**  6:22,24 9:21,23 10:20 28:8 33:13,25 34:1 35:8,15 37:4 52:6 53:19 57:1

**agreement**  5:5 6:17 20:12 34:4 35:20,26 36:1,7 50:12 52:21 53:2, 22,28 54:13,18,28 58:24

**agrees**  4:16

**ahead**  15:6 35:15 49:15 51:12,13

**AI**  41:18 46:4

**aiming**  18:18

**aleve** 47:12

**allegations** 16:28

**alleged** 16:24 40:5

**alleging** 57:19

**Allen** 1:15

**allowing** 57:14

**Alphabet** 2:9,12

**alternative** 10:14 36:14

**alternatives** 36:10

**amending** 15:13

**Amendment** 20:25

**analysis** 22:27 23:1

**Andrea** 2:5

**ANGELES** 1:3

**animated** 36:23

**answers** 27:16

**anticipate** 14:26 19:24 23:15 24:27

**anticipated** 21:26

**anticipates** 7:17

**anticipation** 19:23

**anxious** 25:13

**anymore** 43:14,22

**anyplace** 7:24

**apparently** 57:5

**appearance** 16:2 63:3

**appearances** 1:7,13 3:2,3

**appellate** 10:6

**applicable** 6:24

**applies** 13:16 26:18

**apply** 11:20 13:17,18,19

**approach** 6:2,12

**approve** 61:8

**approved** 56:15,17

**approving** 19:24

**area** 36:1

**arguably** 12:8 51:7

**argued** 24:21

**argument** 17:13

**arguments** 20:22 21:16 55:12

**arise** 4:8

**arises** 12:20,23

**arrangement** 54:14

**articles** 55:3

**Ashley** 2:17 14:12

**assessment** 53:7

**ASSISTANT** 60:25

**associate** 45:27 46:1,5

**assuming** 19:1

**attach** 31:17

**attached** 7:9 35:24

**Attachment** 51:25

**August** 28:1 30:4,27 31:1,11,12, 22 62:12

**authority** 54:12 55:2,7 56:18

**automatic** 57:21

**avoid** 12:11,22

**aware** 49:20,24 55:9 58:9

**awareness** 9:26

**Ayers** 39:11,12,13,14 41:3,13 46:13,14 49:6,20 50:7,10 51:12

---

**B**

**back** 4:1 6:7 15:26 28:7 30:18,27 52:25 54:16 55:28 56:3 62:9

**background** 48:19

**based** 10:5 19:22 24:9 41:10 51:9

**basically** 10:27 52:3

**basis** 14:20

**bears** 14:20

**Beasley** 1:15

**begun** 58:12

**behalf** 2:3 5:13 39:14 59:11

**believes** 53:22

**beneficial** 62:18

**benefit** 52:19 53:4 55:7 56:14

**Bergman** 1:24,25

**big** 20:20 21:14 60:22

**binding** 7:1

**bit** 14:23

**Blaschke** 2:13,14 5:12

**Blavin** 2:25,26

**board** 9:11

**Boyle** 1:19

**briefed** 8:8,10,16 9:17 11:10 20:26

**briefing** 8:22 9:2,11,14,23 11:15, 16 14:25 19:19 20:3 32:10 34:6,7 41:4 45:3 50:1 51:3,14,19 62:2

**briefly** 20:8

**briefs** 9:19 10:21 18:15,19,20 21:1

**bring** 9:9 15:26 21:24 26:28 33:8 51:6,21 54:5,26

**broader** 38:1 45:10

**brought** 36:2

**building** 44:2

**burden** 12:9,12,22 13:3 14:7,20 47:10

**burdens** 47:12 50:15

**burdensome** 12:1 13:10

**burdensomeness** 12:6

**Burling** 2:17

**Byte** 2:6,15,24

---

**C**

**calendar** 17:25 24:10

**California** 1:3 7:23 8:3 10:5,15 12:1 13:2,8,10,11 15:14 23:3,16 55:14

**call** 31:9 52:17,19

**called** 24:14 61:5

**calls** 40:18

**careful** 16:26

**CAROLYN** 1:4

**case** 1:1,2 4:11,18,27 8:3 13:12
15:9 22:24,25 25:6 26:2,9 27:3,4
31:10 34:24 35:12 40:13 43:12
44:10,13,15,18 51:14,17 53:15
56:27,28 57:24,27 59:20 60:10,11
61:22 63:6

**cases** 1:2,13 7:25 20:20 37:19
38:4 52:26 53:7,26 56:26 57:3
58:8,11,14,18 60:21

**categories** 32:3 57:21

**CBS** 13:12

**Center** 1:26 38:7,27

**cetera** 31:17

**challenging** 20:27

**chance** 34:6

**change** 13:20 37:7

**charged** 38:10

**Charles** 55:3

**check-in** 28:6

**Cherisse** 1:17 59:10

**child** 39:27 60:15

**Children** 38:8,28

**Chiou** 2:7,8

**choice** 21:27,28 22:5,19,24 23:6

**Chris** 39:10,14

**CHRISTINE** 1:5

**Christopher** 2:8

**circumstances** 10:24 43:6 61:7

**cite** 20:20 57:28

**civil** 16:13 47:3 49:20 51:8 56:11

**claim** 23:4 27:1

**claim-by-claim** 23:1

**claims** 20:16,17,24 21:8 22:22
23:9,20

**clarification** 23:26 58:17 59:12
61:13

**clarify** 58:6

**clear** 14:14 23:27 57:25

**Cleofe** 1:16,17 59:10,18,25 63:17

**clerk** 3:1 16:6 52:11 57:2,6 63:5

**clerk's** 57:3

**clients** 27:12

**close** 17:26 50:8 51:11

**closer** 50:12

**code** 15:15,16 57:5

**comment** 28:2 31:4

**comments** 5:14 6:1,6 7:16

**commit** 23:18 49:10

**committee** 16:14 56:11,12,21

**committees** 56:16

**common** 50:28 53:3 55:7 56:14

**commonplace** 48:14

**commonsense** 6:4

**communication** 4:11,13

**companies** 25:28

**companion** 18:19

**compel** 29:16

**compensated** 56:1

**competing** 9:1 17:8,14 28:1 31:2
33:25 35:8

**complaint** 16:17,28 17:19 21:9,
16 23:3 59:3

**complaints** 16:24 17:18 58:13

**complete** 29:8 32:26 33:27 34:2

**completed** 35:10

**completing** 28:25

**complex** 4:2,6 55:10

**complexity** 20:24

**complicated** 16:25 22:20

**complication** 36:4

**comply** 15:13

**compromises** 60:20 61:15

**computer** 43:11

**concepts** 6:20

**concern** 22:10 53:25

**concerns** 36:23,25,28 37:1

**concluded** 63:22

**conclusion** 14:24

**concrete** 4:8

**conditionally** 12:4 14:5

**conduct** 42:21 47:8

**conducted** 4:5

**conducting** 8:2

**confer** 5:4 8:25 49:7 50:11,28

**conference** 5:6,7 9:10,16 11:5,9,
12 29:2,15 31:24,25,26 34:5
35:14 58:3 61:18 62:7,21 63:7

**conferences** 34:8 62:16

**conferral** 49:17

**conferred** 28:4 36:6

**conferring** 37:5

**confident** 4:10,12

**confidential** 7:28 11:23,25,26
12:8,14,15 15:21 45:4

**confidentiality** 15:20

**confirm** 45:18,21,23

**conflict** 53:22

**confront** 27:15

**Congress** 38:11

**connection** 5:26 29:3 37:5 42:8
45:25 48:20 49:12

**consensual** 52:21

**consensually** 60:21

**consideration** 50:3

**considerations** 17:14

**considered** 16:28

**consist** 6:20

**consistent** 14:3 29:19 63:9

**consulted** 57:2

**contemplated** 8:27 29:14

**contemplates** 46:16,17

**contemplating** 30:12

**contents** 40:3

**context** 9:4 37:28 44:3 46:18 47:3 48:6

**continue** 28:27 39:17 49:6 50:11,27

**continued** 50:8

**continuing** 29:28

**contraband** 36:5 43:26 48:4

**contractual** 54:14

**contrary** 51:7

**controlling** 22:28

**converse** 7:3

**coordinate** 3:13

**coordinated** 3:24 4:23

**coordinating** 20:28

**coordination** 3:13 5:16 18:17 53:8,11

**copies** 59:19

**correct** 24:4 25:11 61:2

**correctly** 25:12 35:27

**correspond** 30:21

**Council** 13:24 16:14

**counsel** 5:10 6:9,16 7:21 8:11,13 25:8 26:17 27:24,26 30:25 39:22 50:16 52:10,21 53:28 54:2,27 55:19,22 63:14

**count** 19:4 58:9,10

**counter** 41:22 42:28

**counting** 19:5

**country** 7:25

**couple** 3:10 30:19

**court** 1:10,12,27 2:28 3:7,23 4:20,26 5:1,9,11 6:9,26 7:5,19 8:8,24 9:6,16,18 10:7,15,16,18,27 11:8,22 12:1 13:1,2,4,8,9,10,13, 26,28 15:16 16:6,12 17:21,25,28 18:25 19:1,2,3,9,20 20:10 21:18 22:23,24,25 23:23 24:4 25:3 26:3, 15 27:22 28:14,26 29:28 30:15,23 31:3 32:11,28 33:3 34:20 35:4,18, 22 38:5,9,12,15,22 39:2,9 41:1,7, 10 42:15 43:1,7 44:1,9 45:5,27 46:4,13 47:2,3,5,7,10 50:5,22,26 51:1,22 52:15 53:13,16,17 54:1,6,

8,21,24 56:5,25 57:6,10 58:2,16, 19,23 59:8,17,19,27 60:8,12,18, 20,28 61:4,14,26 62:9,10,22,28 63:6,13,18,20

**Court's** 5:14 6:12 13:11 24:2 28:2 31:4

**courtesy** 59:19

**courtroom** 1:14,28 3:3 60:25

**courts** 3:24 4:2 10:6 16:5 44:1

**cover** 31:15 32:13 37:17

**covered** 19:23

**covering** 45:10

**Covington** 2:17,20

**create** 10:17 41:18,20 49:26

**creates** 22:9

**creating** 4:3

**credibility** 13:7

**Creed** 1:19 6:10 7:4 8:14 10:4,23 12:26,28 23:26 24:27 26:10 28:10,18 30:13,16 33:1 34:14,25 35:20 38:10 39:10

**criminal** 36:9 42:15 44:1,3,6,7 47:4

**Critically** 14:1

**CSAM** 35:23 36:5,8,11,14,19,21, 27 37:3,5,8,12,14 38:3,18 39:16, 23,27 40:8,10,16,26 41:6,16,19, 21,24 42:1,3,7,9,22 43:21,22 44:19,24 45:11,13,25 46:9,18,26, 27 47:2,4,7,11,13,15,18 48:1,20, 27 49:3,5,8,16,17,21,26 50:14,16, 20,25 62:25 63:10

**CSR** 1:5

**current** 19:23 39:25 40:14,24 41:6

---

**D**

**Dance** 2:6,15,24

**data** 24:23,27 25:10,16 26:12 29:4,7,17,23 32:1,3,7

**date** 19:10,14 24:9 51:18,20 63:3, 10,13

**dates** 19:15 24:6,10 62:13

**day** 16:19,20 19:6 35:13

**days** 10:27 11:22,25 12:10,12,18, 24 15:2,23 18:28 31:24 46:21

**deadline** 11:26 16:9,17 34:1 35:22

**deal** 12:21

**dealing** 10:8

**dealt** 10:14

**decide** 17:27 19:9

**decided** 19:14 23:13

**decision** 13:11 17:21,28 19:2,3

**decisions** 4:8

**declaration** 61:10

**defend** 15:11

**defendant** 2:3 5:2 6:16 18:19,22 21:8 26:18 31:6 36:17 45:21

**defendant's** 27:14

**defendants** 2:18,21 3:22 5:1,9, 13 8:17,20 10:10,13 14:13 17:22 18:4 25:25 26:21 28:20,23 29:5 32:4 33:17,20,21 36:8,22,28 37:13,18 38:2 39:19,24 40:15 41:16 42:19,23 44:23 45:12 46:15 48:4,10,23,26 49:26 51:7 58:5,24 60:9

**defendants'** 31:16 36:20,26 39:26 41:28 50:19 62:1

**defense** 1:27 20:22,28 21:3 23:21 27:11 62:1 63:19

**defer** 39:12

**Degtyareva** 2:1,2

**delete** 39:28

**deleted** 46:19 48:5,8

**deletion** 39:26 40:8 46:23 48:6

**demurrer** 17:1,7 23:14,22 32:19, 20

**demurrers** 16:25 17:20,23 18:2 19:21 24:21 29:18 62:8,11

**DEPARTMENT** 1:4

**dependency** 57:25

**depending** 4:19 8:7

**deposition**  11:23,24 12:3,13 27:15

**depositions**  27:5

**describe**  44:21 46:10 48:11

**description**  42:9 47:18,24 48:16 49:5,17

**descriptions**  47:11

**descriptive**  47:23

**designate**  11:22,26 12:13

**designating**  15:4

**destroy**  43:22

**destroyed**  36:15 43:11,15 48:12, 15

**destruction**  40:12

**detail**  27:1

**details**  48:8

**detect**  42:1

**detected**  41:24

**determine**  11:11 42:8

**determined**  24:28 42:5

**deviation**  61:8

**dictate**  5:25

**difference**  61:4

**differences**  23:10

**difficult**  26:21,23

**digit**  22:13

**digitally**  52:13

**direct**  39:22 40:16

**directly**  41:22 48:3

**disagree**  20:5 33:1

**disagreements**  60:1

**discern**  32:15

**disclosed**  8:5 39:23

**disclosure**  8:21 9:13

**disclosures**  7:22 48:13

**discovery**  3:14,23 4:22,23,26,27 5:7 6:23 11:5 13:18 24:14 25:14 29:19 33:5

**discovery's**  24:14

**discretion**  36:26

**discrimination**  23:4

**discuss**  9:16 11:2 26:11,12 29:28 48:28

**discussing**  5:17 36:13 45:14 48:3

**discussion**  3:12,16 28:11 29:26

**discussions**  17:10

**dismiss**  26:25 27:1 60:27

**dismissal**  60:9,12,26 61:6

**dispute**  39:25 40:14,24 43:22

**disputed**  7:15

**disputes**  9:3 13:18 44:26

**distinctive**  47:25

**District**  7:23

**do-overs**  16:8

**document**  28:12,16,19,22 29:10 30:20 31:3 33:22 59:23,24 61:5

**documents**  14:4 28:24 29:10 30:7 31:6 32:12

**Donahue**  2:11

**DONOHUE**  2:10

**double**  22:13 53:1,5

**doubt**  22:1

**downsides**  4:5

**draft**  5:16 7:14 8:17 21:11,18 23:2

**Drinker**  2:5,23

**duplicates**  4:27

**duplicative**  53:10

---

**E**

---

**earlier**  21:4,10 33:10 35:19

**early**  8:21 25:5 31:5

**easier**  14:23 16:15 52:7 60:2

**edit**  28:21

**edited**  30:20

**effect**  7:1

**effectively**  38:11 42:21

**effort**  54:10

**efforts**  17:9 49:13

**elaborate**  4:3 5:28 6:3

**electronic**  24:25 25:10 31:13 51:28

**electronically**  24:26

**elements**  53:10

**eliminated**  28:4

**else's**  54:28

**embedded**  5:16

**Emily**  1:18 25:21

**Emmel**  1:15

**encourage**  25:3

**end**  25:26,27 26:2,8 55:28

**enforce**  26:22 54:12

**enforcement**  39:6,21 40:9,22 46:20 47:8,14 49:21

**engaged**  6:7

**enjoy**  13:4

**enjoys**  13:3

**enrichment**  55:5

**ensure**  36:14

**ensuring**  29:6

**enter**  3:23 5:2,23,24 14:15 57:15

**entered**  7:13 9:12 49:16 52:24 53:28 59:22

**entering**  24:25

**enters**  8:24

**entire**  11:24 43:27

**entirety**  23:17

**entity**  24:24 25:24

**envision**  62:20

**envisioning**  31:14

**ephemeral**  34:28

**essentially**  20:19 22:26 24:9 50:20 52:25,28 53:27 60:13

**establish** 55:27

**establishing** 14:20 56:8

**evaluate** 27:3

**evaluation** 33:22

**evenly** 43:21

**everybody's** 10:20 12:16

**evidence** 39:2 40:2,9,12,27 43:25 44:17 48:6,11,12,15 49:23 50:25

**excellent** 16:18

**exception** 13:19 43:4 44:4,5,8 49:4

**exceptions** 43:5

**execute** 52:7

**Exhibit** 13:27

**exhibits** 31:17

**expect** 18:23

**expectations** 18:25

**expedited** 13:22

**expenses** 56:1

**experience** 3:28 4:3 7:24 10:5,7 16:23 27:23

**experienced** 12:20

**experiences** 16:21

**expert** 7:21 8:5

**experts** 9:13,14

**explain** 32:6 48:19 53:8 61:7

**explained** 37:21 60:26

**explanation** 32:10

**explicitly** 53:5

**Exploited** 38:8,28

**expressed** 3:18

**expressly** 41:23

**extensive** 7:24

**extent** 23:21 37:7 41:24 44:18 45:3 49:22 58:26

**extra** 61:14

**extremely** 41:25

## F

**fact** 24:16 26:1,5,8,13 27:7,23 28:1,16,17,20,25 29:3,8,19,21,22, 25,27 30:2,11,14,18,21,24,26 31:3,7,16,27 32:27 33:5 37:12 42:27

**facts** 16:27 21:7

**Faegre** 2:5,23

**failed** 52:22

**fair** 55:23

**fall** 23:23

**falls** 19:6

**features** 47:23,25

**federal** 4:20 8:8 11:19 19:20 22:24,25 36:9 42:15,26,28 47:19, 20 48:19 51:8 53:16,17 55:10 56:11 61:4,26

**feed** 33:21

**feel** 3:5 4:10,12 18:8 55:21

**feels** 55:18

**figure** 24:24

**file** 5:9 12:4,15 15:24 17:22 18:3, 5 19:12 24:2 31:13 35:11 51:12, 28 52:4 54:16 56:22 61:5

**filed** 9:20,24 10:3 12:7,17 14:4,24 16:7 18:3,4 19:15 21:1 24:5 52:26,27 53:4,26 58:20 59:23 60:8

**files** 47:25

**filing** 15:9,18 19:7 24:6 31:13 51:21 58:12 62:13

**fill** 33:17

**filled** 26:28

**final** 7:19 57:11

**find** 50:28 55:14,23 62:16

**fine** 3:25 6:13,26 33:3 50:5 51:1, 24

**fixed** 26:13

**flag** 60:17

**focus** 25:15

**follow** 13:25 14:11 15:15

**footnote** 20:20

**foreclosing** 56:6

**form** 10:2 15:6 17:18 33:9,13,15, 16,25 34:1,18 35:3,8

**formal** 51:24 53:3 59:13

**forms** 33:25,27 34:3 35:3,8,10

**forward** 9:7 11:16 16:18 25:14 56:9 62:12,17

**forward-looking** 5:28 12:19

**found** 4:6,7 39:2 55:5

**free** 3:5 54:2,4,5

**Friday** 29:9

**full** 38:6

**fully** 41:4

**fund** 55:7 56:14

**funds** 55:27

**future** 4:4,5 5:6 7:18 52:27 54:3

## G

**general** 4:16

**generally** 39:17

**generated** 42:9

**Georgia** 22:14

**get all** 25:19 48:7

**give** 11:12,13 28:5 32:18 33:6,17 34:6 37:20 38:6 42:7 51:19 63:14

**giving** 34:26 35:1

**glad** 29:28

**global** 26:7

**goal** 34:26

**Gonzales** 19:14

**Gonzalez** 3:26 4:13 5:21 17:21 24:3 53:21

**good** 1:12,16,24,27 2:1,4,7,10, 13,16,19,22,25,28 4:10,12 7:5 16:13 18:26 24:12 28:28 36:16 37:16 39:13 52:15 57:10,23 59:28 62:27 63:20

SOCIAL MEDIA CASES                                                                              MOTION
JCCP5255,  05/03/2023                          CERTIFIED COPY                        Index: Google..interface

**Google**  2:9,12 17:21 19:14

**govern**  4:4

**governing**  6:26

**grapple**  23:7 43:17

**great**  25:27 34:10 57:28

**greater**  12:9 15:1

**grips**  43:8

**ground**  50:28

**group**  20:22 21:3

**guess**  17:26

**guidance**  21:5,10 27:20 29:21 56:2

---

### H

**half**  26:28 58:14

**hand**  30:3

**handbook**  55:10

**handle**  8:13 38:11

**handled**  60:19

**hang**  27:12

**happen**  29:17

**happening**  8:19

**happy**  11:2 43:3 50:27 56:20

**hard**  21:15 27:2

**hear**  5:10 15:14,28 16:1 38:25 39:9

**heard**  3:3

**hearing**  7:14,17 19:10,13 24:9 34:15 51:18,20 62:25 63:9

**heavy**  47:10

**held**  1:10

**helpful**  14:9 17:5,11 18:11 27:20 31:28 32:2,9,11 50:1,9 55:17 59:2,5 62:16

**helpfully**  56:27

**HERETOFORE**  1:7

**Hey**  50:20

**highly**  7:28 45:3

**history**  48:18 55:9

**hold**  7:14 39:17 52:25

**holdback**  53:1,6

**holes**  26:24,26

**HON**  1:4

**honestly**  54:4

**Honor**  1:16,22,24 2:1,4,7,10,13, 16,19,22,25 5:12,15,19 6:10 7:12 8:14,23,28 9:5,25 10:2,4 11:2,4,6, 21 12:27,28 14:12,15 15:8,12 18:13 20:8,14 21:25 22:1 23:13, 26 25:2,21,23 26:10 27:20 28:10 29:1,14,16,21 30:13 31:28 32:6, 10,21 34:16 35:17,28 36:2 37:10, 21 39:10,13 41:9 42:27 43:2,19, 24 44:5,15 45:8,19 46:2,7 49:4, 14,19,28 50:1 54:7,17,23 56:24 57:9 58:1,5 59:6,10,18,25 60:4 61:12,28 62:15,27 63:12,17

**Honor's**  36:24 37:1 50:3

**hope**  18:23 21:12

**housekeeping**  60:6

**huge**  14:7

**human**  41:17 42:3,12,16,19 46:9

**hundred**  19:24 20:14,26 21:2,12, 13,19,27

**hundred-page**  21:22

---

### I

**i.e.**  15:23

**idea**  21:18 27:16 28:28 45:9

**identified**  37:23

**identify**  17:18

**identifying**  22:3 46:28

**identity**  8:4

**image**  40:3 47:25

**images**  38:24 39:27 47:4,7,18 50:16

**IMES**  27:5

**immediately**  16:4 60:16

**implicate**  22:5

**importance**  13:9,12

**important**  36:1 52:11

**importantly**  55:13

**impose**  10:10

**impracticable**  41:27 49:27

**inadvertent**  48:9

**include**  28:11 37:20 45:16

**included**  47:26 57:1

**includes**  28:16 37:26

**including**  26:5 47:24

**incredibly**  43:15

**indefinitely**  36:21 39:18

**individual**  17:23 18:19 21:1,8 32:17 44:19 45:6,28 46:2,9 58:27

**individually**  34:2

**individuals**  42:21 44:22

**inform**  28:24 29:23 37:6

**informal**  5:7,8 9:15 10:21 11:5,9, 11 35:14

**informally**  12:22

**information**  7:26 8:1 12:7 14:27 15:11 17:24 30:1 32:5,17,22 33:21 34:17,18,27 37:14,18,24, 26,27 38:2,3,4,13 39:1 40:1,4,5,6, 25 43:11,15 45:2,4,8,11,14,17 46:24,28 47:1,12,28 48:16,24,27 49:1,2,8,12 50:24

**informed**  26:11

**initial**  7:14 29:2,17 32:7

**initially**  36:15

**inside**  17:24

**insist**  8:20

**instance**  14:28 36:24 38:21 44:16,22 45:1,22 60:16

**instances**  42:18

**institution**  13:6

**instruction**  43:14

**intention**  14:18

**intentional**  43:16

**interface**  16:19

introduce 49:23

inventory 26:7

investigated 37:1 39:8

involves 25:7

issue 3:17 6:16 8:8,12,18 9:15,16 10:14 11:8,17 12:22 17:2 19:3 20:11 21:24 22:2 23:6,17 24:11 32:10,23 36:2,4 37:11 39:10,16 41:2,4 43:17,22 48:3,10 49:18 57:24,26 60:7,15,22

issue-by-issue 22:20

issues 3:11 4:7 5:8 7:15,20 9:3 10:16 11:7 12:19 20:25 21:27,28 22:5 28:4 32:15 34:11 60:19 62:3, 4

issuing 55:19

item 6:15

items 6:13 49:9

**J**

JCCP 3:14,24 4:23,25 5:26 6:23 25:7 52:26 53:9,26 57:1 58:8,11

JCCP5255 1:1

Jeffcott 1:18 23:13 25:21 52:23 53:24 54:7,17,23 55:26 56:24 57:9 58:1 59:6 62:15

Jennifer 1:15

Jesse 1:19 6:10 8:14

joint 3:9 5:5 6:21 7:10 9:21,22,28 13:27 17:22 24:13 28:27 35:25 51:25,27 56:27 57:12 59:15

Jonathan 2:26 60:4

judge 3:26 4:13 5:21 6:6 7:9,12 9:7,12 53:21

judgment 19:28

Judicial 13:23 16:14

July 17:20 18:1

jump 3:5 25:18

June 17:17,26 35:12 63:3,6

jurisdictions 20:21

jury 43:10,14,27

just-- 55:16

**K**

Kamamoto 56:20

key 40:1,12,25 46:24

Kiesel 1:17,22

kind 28:6 32:9 41:18 42:12

kinds 23:8 27:6

King 2:14

knowing 17:24 18:9

KUHL 1:4

KWON-CHANG 1:5

**L**

laboring 55:24

LACOURTCONNECT 3:1 39:11

Laddon 2:22,23

language 27:10

largely 35:20 41:28

latest 25:2

law 1:17,25 8:4 11:14 20:19 21:27,28 22:5,19,24,28 23:6 36:9 39:6,21 40:8,21 42:15,26,28 46:19 47:8,14,20 48:19 49:21 51:8 55:14,15

lawful 40:12,21

lawfully 48:15

lawyers 4:11,12 27:9

laypeople 27:9,18

layperson 26:24

lays 41:23

lead 39:11

learning 42:1

leave 12:18,24

length 9:21,23 19:26 24:11

lengths 19:17 20:3 23:25

lesser 14:27

let alone 21:8

letter 9:2,19

letting 52:5

level 22:27 23:1

liaison 63:14

life 16:15

light 60:24

limit 27:3

limitation 57:22

limitations 44:16

limited 15:5 29:4 31:6 32:8 41:25 57:18

lines 53:3

link 61:27

linked 42:4 45:5

list 5:3 6:18 29:10 30:20 45:22

listed 56:27

listen 15:26

listing 20:20 57:21

litigation 22:11,17 40:28 42:6,25 43:1,4 45:23 48:14 51:9 53:4,12 55:10,28

live 22:21 58:19

lives 13:7

lodged 59:23

long 34:22 61:25

longer 37:8

looked 13:27 17:8 18:7 39:4

LOS 1:3

lose 33:11

lost 48:12,15

lot 9:24 13:21 16:3 17:3 18:16 24:19,20 27:22,23 33:11 35:25 37:16 54:3

**M**

machine 42:1 46:4

made 4:8 16:15 35:4 37:2,15 41:13 45:25 54:20

magistrate 7:9,12 9:6,12

**maintain** 45:12

**maintains** 36:21

**majority** 42:24

**make** 14:16,22 16:9 19:27 23:28 28:13 29:25 35:1 38:12 40:9,23 42:23 46:18,22 47:28 48:6,23 49:1 54:21 55:19,28 56:14 61:11 62:11

**makes** 36:16 55:12 62:27

**making** 29:24 40:24

**manual** 42:21

**mass** 25:7

**master** 16:17 17:19 23:2

**mastered** 14:9

**material** 15:3 47:26

**Matt** 2:14 5:12

**matter** 16:24

**Matthew** 1:25 2:11

**MDL** 3:14,22,24 4:12,22,24,28 6:8,24 7:2 8:19,24 10:1 18:21 20:15,18,26 23:7,11 52:24 53:7,9 56:13 60:11,17

**means** 31:10,12 40:21 43:11 48:25 49:6

**meant** 27:16

**meantime** 44:28

**mechanism** 50:23 55:27

**mechanisms** 56:9

**media** 1:2,13,25 32:5

**mediate** 34:9

**meet** 5:4 8:25 18:25 49:7 50:11, 27 51:8

**meet-and-confer** 32:23

**meeting** 37:5

**mention** 56:14

**mentioned** 44:5 49:9 52:12 55:18 56:28 57:12

**message** 9:11

**met** 14:2 28:3 36:6 60:14

**Meta** 2:18,20 18:14 37:21

**metadata** 47:27

**millions** 42:22,23 44:23

**mind** 6:6 21:18 26:9 57:24

**mindful** 20:13

**minor** 60:15,27

**Minor's** 60:20

**minors** 57:18,19,25

**minors'** 61:15

**minute** 4:15,21 7:6 8:12 10:22 17:16 19:12 31:1 38:26 57:3 62:23 63:15

**Miro** 60:24

**mirroring** 38:23

**missing** 27:1 38:8,28

**mix** 59:2

**models** 42:2

**modify** 5:24

**moment** 12:3

**Monday** 22:8

**month** 10:28 23:19 62:19

**months** 25:9

**mooted** 23:17

**Morgan** 1:18

**morning** 1:12,16,24 2:1,4,7,10, 13,16,19,22,25 5:15 39:13 61:24

**motion** 5:9 6:19 10:9,12,27 12:15 14:25 15:24 16:1,7 29:16 51:6,9, 13 54:16,26 63:10,11

**motions** 12:16 13:5 14:24,26 15:28

**move** 8:12 9:7 12:9,12 25:13,28

**moved** 61:23

**moving** 16:18 20:17 22:3,26 61:20 62:12,17

**multi-plaintiff** 58:13

**multiple** 14:26 20:21 55:22

**Munger** 2:2,26

**N**

**named** 57:14

**names** 9:13

**narrow** 30:9

**narrower** 20:16

**National** 38:7,27

**nature** 15:5

**NCMEC** 36:18,19,21,22,27 37:3, 7,14,27 38:6 39:20 40:16,17,18 41:20 42:24 43:5,23 44:5,28 45:11,24 46:1,10,20 47:16 48:23 50:18,19,21

**needed** 19:21 29:8 60:13

**needlessly** 6:2

**negotiate** 29:20 36:10 37:28

**negotiating** 28:7 29:3 37:16 49:11

**non-california** 23:5,22

**nonappearance** 31:10 35:12 63:4,6

**nonappearances** 31:23

**nondesignated** 8:4

**nonetheless** 48:28

**nonprofit** 38:10 40:20

**Northern** 7:23

**note** 10:4 26:10 29:15 49:19

**noted** 1:7 5:19

**notes** 62:22

**notice** 10:26 33:20 40:1,7 42:7 63:15

**noticed** 6:19 10:9,12 51:9

**noting** 16:16

**nub** 49:18

**number** 1:1 24:8 47:25 58:10,14

**numerous** 40:18

**O**

**oar** 55:24

**objection** 6:14

**obligation** 35:2

**observe** 29:16

**observed** 15:9

**obtained** 39:7

**obtaining** 13:3

**offender** 46:27

**Olson** 2:3,27

**ongoing** 53:12

**online** 3:6 55:5

**open** 1:10 10:18 13:9,13 31:12

**opening** 18:13

**operates** 57:26

**opinion** 24:3,5 25:20 43:18

**opponent** 8:6

**opposed** 20:21 44:22

**opposing** 12:7

**opposition** 18:3,4,7

**order** 3:8,13,19,23 4:15,21 5:4,
16,20,22,28 6:3 7:6,8,9,13,16,18
8:19,24 9:1,4,13 10:11,22 11:19,
27 13:25 17:16 19:12,13 20:2
23:27 24:7 26:11 31:2 32:6,26
35:4,19,24 37:6,17,28 38:1 41:14
43:18 44:24 45:10 47:14 48:2,18
49:11,15 51:8,16,23 52:1,2,4,5,
19,24,28 53:4 56:22,25 57:3,8,13
59:13,15,22 61:6 62:26 63:15

**ordering** 51:6 59:4

**orders** 4:3 5:2,4 9:2,28 15:20
41:6,8 51:22 52:9,10 53:23 55:19

**Ordinarily** 28:15

**ordinary** 15:8 36:17 61:9

**Oregon** 22:14

**Orent** 60:4 61:12

**organized** 57:6

**originally** 36:11

**outlined** 5:16 6:20

**outset** 36:3

**outstanding** 11:6

**overask** 27:6

**overdesignate** 15:21

**overlap** 41:7

**overredact** 15:10,19

---

**P**

**pace** 62:17

**pages** 19:24 20:14,27 21:2,3,9,
12,13,19,20,21,27 22:21 30:19

**paid** 55:20

**Panish** 1:19

**paper** 15:2,10,18 54:11

**parallel** 53:3

**part** 29:25 42:26 47:23 52:12

**parties** 6:25 7:15 12:20 19:18
20:13 24:19,20 28:1 29:12 31:2
33:13 35:7 36:6 37:15 39:17 41:3
50:2,10 52:6 53:28 55:17 59:14

**parties'** 3:13 7:14 41:5

**parts** 11:23,26 12:14 44:12 59:20

**party** 8:5 12:6,7,8,11 14:2 15:4,9,
18,20

**pass** 59:6

**past** 46:20

**patent** 7:25

**Paul** 1:22 2:20 18:13

**people** 10:21 16:9 17:3 55:23,24
56:1,17 57:21

**percent** 52:25

**periods** 16:23

**permissible** 49:24

**permission** 13:3

**perpetrator** 45:18

**personnel** 40:19 47:5

**perspective** 20:16 21:6,14 30:26

**phonetic** 56:21

**photo** 38:20

**photographs** 38:18

**pick** 22:9

**picked** 28:26

**pictures** 38:13 44:11

**piece** 41:19 42:22 54:11

**pieces** 44:23

**piercing** 10:11

**Pierson** 2:4,5

**place** 4:28 5:20 26:16

**places** 13:16

**plaintiff** 22:15 23:22 24:16 26:1,
5,25 27:7,23 28:15 29:3,9,20,22,
25,27 30:2,9,11 31:5,16 32:27
33:8,14 35:8 40:6 44:10 45:6,23
46:11 50:26

**plaintiff-by-plaintiff** 22:27

**plaintiffs** 1:21,23 5:3,17 6:11
8:15,25 11:3 15:24 17:17 18:3,8
21:6 22:3,4,6,7,8,13,14,22 23:3,5,
14,16 24:22,25 25:8,13,22 26:19
28:23,24 29:4,12,24 30:7,23 32:3
33:16,18,26 34:2 35:9 36:11,15
37:2,6,22,25 38:26 39:1,4,9,15,21
41:15 42:7 43:9,20,25 45:14
46:24 47:13 48:7,13,17,26,28
49:23 50:16 51:6 52:20 57:14,18,
19 58:7,9,10,12,15 59:1,3,11 60:5
62:14,18

**plaintiffs'** 6:9 7:21 10:11 25:8
27:11 28:12,23 30:25 31:6 36:28
40:25 41:13 46:16,17 56:21 63:14

**plan** 22:8

**planned** 61:21

**play** 21:2

**played** 20:19

**pleading** 19:16

**pled** 23:3

**point** 5:27 12:18,25 15:23 17:6
19:18 23:19 28:5 31:18 32:21
33:19 34:12 56:17 59:12 60:21,22
61:3

**pointed** 30:9

**points** 41:12

**pornography** 39:27

**portion** 9:22

**position** 53:15 58:25

**positions** 3:16 19:27 20:6 41:5

**possess** 39:28

**possessed** 43:26

**possibility** 18:18 52:21

**post** 26:5

**posted** 55:5

**posting** 5:6 56:28

**potential** 30:1 47:22

**potentially** 22:19 29:23 38:19 47:15 62:8

**powerful** 43:15

**practicably** 42:7

**practice** 10:6

**practices** 15:8 36:18 37:7

**preach** 55:16

**precedence** 13:8

**precise** 24:6

**preclude** 42:15

**Predicates** 24:14

**prefer** 10:17 48:26 49:14

**preferrable** 34:22

**present** 4:17 8:28 21:16 30:24

**preservation** 33:9,14,22 35:2,5, 8,23 36:10 37:6,16,28 38:1 41:13 45:10 48:2,21 49:11,13,15 62:26

**preserve** 36:8 41:16 43:21 45:12 46:20,23 49:8,9,12

**preserved** 36:22 37:13 40:10 43:23 47:28 48:24

**preserving** 36:5 37:18 38:2 48:5

**pretty** 57:20

**prevent** 52:28

**preview** 11:6

**principles** 4:16,22 5:15 7:7

**printing** 59:20

**prior** 30:1,2 39:26 46:23

**priority** 3:10

**private** 44:11 53:2

**privilege** 10:16 52:18

**problem** 16:22 19:5 27:10 52:23

**procedures** 14:4

**proceed** 6:7 10:9,17 61:23

**proceedings** 1:9 4:4,5 6:3 8:25, 27 36:3 44:4,6,7 49:20 63:22

**process** 5:20 10:21 14:6 25:19 45:13 52:14

**producing** 15:20

**product** 10:8,12

**production** 30:7 31:5

**productively** 36:7

**products** 16:21

**Professor** 55:3,12

**programmatic** 41:28

**progress** 37:16

**properly** 33:11

**proposal** 3:17 16:14 21:7 33:26 35:9 41:18 46:16,17 50:19 55:1

**proposals** 42:14

**propose** 4:14,15,21 8:23 9:8,14 13:23 19:16 27:28 29:24 33:12

**proposed** 3:13 5:3,4,11,20,23 7:14,17 9:1,4,28 11:4 19:13 20:2 21:6,27 23:27 24:7 28:1,21 30:24 31:2,5,16 32:7 33:25 35:19 36:15 41:6,8,13,15 48:18 50:2 51:16,22, 23 52:1,2,4,5,9,13 56:13,22,25 57:8,13 59:13,15 61:6

**proposing** 14:14 42:19 46:11 51:3

**propound** 28:23

**protect** 43:18

**protections** 7:28

**protective** 7:8,13,18 8:19,24 9:1, 2 11:27

**prove** 43:12 44:9,12,15 60:13

**provide** 5:3 35:10 38:28 39:28 40:20 44:11 46:23 47:22 48:16,26 50:24

**provided** 28:21 30:1 40:2,6 48:17 56:3

**providing** 39:26 47:11,18 50:20

**provision** 8:21 54:1

**pseudonyms** 57:14,21

**Purely** 29:6

**purpose** 14:22 24:8,10 30:8

**purposes** 8:26 9:18 24:7 29:6 41:25 49:16

**pursue** 49:22 55:28

**put** 15:6 17:12,15 18:20 19:12 31:1 49:15

---

**Q**

**question** 8:11,12 22:20 25:18 30:17 39:4,8 43:9 54:17 60:22

**questions** 25:17 26:13 27:13 52:16

**queue** 52:2

**quick** 34:15 41:11

**quicker** 10:28

**quickly** 12:13 34:5,17,27 50:13

**quote** 25:23

---

**R**

**Rahul** 1:21

**raise** 55:27 60:8,15

**raised** 7:21 22:2 36:4

**raising** 36:24

**Ravipudi** 1:20,21

**re-respond** 26:27

**re-responded** 26:27

**reach** 21:15

**read** 3:15 43:13

**reading** 35:27

**real** 13:8

**reality** 38:23

**realize** 16:3

**realtime** 40:7

**reason** 18:28 36:22 58:13

**reasonable** 28:9

**reasons** 17:8 42:13 54:3 55:18

**recall** 3:19 22:1

**received** 21:17 29:9 30:13

**recently** 57:1

**recognize** 43:20

**recognized** 41:16

**recollection** 30:10

**recommend** 13:15 25:14 27:8

**record** 10:17 13:4 15:7 38:5 54:20,21

**recorded** 25:11

**recordkeeping** 58:21

**red** 31:18

**redact** 12:3

**redacted** 15:6 47:5

**redaction** 47:8

**redacts** 15:4

**referenced** 16:17

**refiled** 60:11,23 61:10

**refiling** 60:17 61:3

**reflect** 7:6,16

**reflects** 13:11

**refresh** 30:10

**regard** 56:23 59:4

**regular** 10:26

**rejected** 60:12

**related** 38:3 47:13

**relating** 29:11,17 37:14,27

**relevant** 31:6 37:22 38:4 42:6 45:22

**remaining** 34:12

**remains** 37:11

**remarkable** 21:13

**renegotiate** 53:27

**repeat** 3:4

**reply** 18:5,6,10,14

**report** 3:10 5:6 6:7,21 7:10 13:27 24:13 28:27 35:25 37:3,8,9 39:18, 19 45:25 46:5 51:25,27 52:12 56:3,27 57:12 59:16

**reported** 39:6 41:20,25 42:8 43:23 46:10 58:7

**REPORTER** 1:5

**reporter's** 3:7

**reporting** 36:18 37:7 41:23,26, 28 43:5 44:6 46:19 48:20,22

**reports** 36:19,27 37:3,27 38:11 42:23 45:1,5,11 46:1

**repository** 39:20

**represent** 36:17 38:21

**representation** 37:2

**repropose** 19:17

**request** 3:10 28:12 29:5,24 51:18 60:26 61:6

**requested** 19:13 30:14 34:18 57:13

**requesting** 32:3

**requests** 4:23 28:16,20,22 29:10,17 30:16,20 32:1,7

**require** 8:21 9:13 10:11 42:21 58:20

**required** 4:20 8:5,26 12:5 42:26 48:11

**requirements** 51:8

**research** 8:3

**reserve** 58:25

**resolution** 5:8

**resolve** 34:5

**resolved** 29:18 36:25 60:21 62:8, 11

**resolves** 37:11

**resources** 47:14,17

**respect** 7:27 32:1 33:17 56:26

**respectfully** 29:13

**respective** 3:16 20:6

**respects** 35:1

**respond** 31:7 41:12

**responded** 4:24,25

**response** 50:13

**responses** 6:23 24:26 25:11

**responsibilities** 33:23 35:5

**resubmit** 58:2 59:14,17,26

**revictimize** 41:21 43:28

**revictimizing** 42:13 44:24

**review** 23:20 27:24 28:2 31:3,4, 10 35:12 41:11 42:3,12,16,19,22 44:23

**reviewers** 41:17

**revised** 7:17

**revisions** 8:26

**rider** 54:2,4,5

**risks** 7:27

**road** 58:25

**Rogers** 3:27 4:13 5:21 53:21

**route** 49:22

**rule** 12:1 13:2 16:7,10,27 61:9

**rules** 13:10,26 15:14 16:5,13 47:20 56:11,12,13,16

**ruling** 13:4

**run** 16:27 19:1 34:22 41:22

**running** 17:28 36:9

**runs** 42:28

**S**

**satisfy** 11:13

**schedule** 17:11,12 20:2 51:14,19

**scheduled** 17:7 32:23

**schedules** 17:8

**Schmidt** 2:19,20 18:12,13 20:8 21:24 22:25

**science** 16:20

**seal** 12:4,9,12 13:3 14:2,5

**sealed** 15:10

SOCIAL MEDIA CASES                                                      MOTION
JCCP5255,  05/03/2023              CERTIFIED COPY            Index: sealing..state

**sealing**  13:25 14:10,15,19,21,24, 26 15:3,12

**seated**  2:28

**secret**  7:26

**secrets**  7:28

**section**  20:25 24:13

**seek**  53:11

**seeking**  14:2

**select**  23:21

**selected**  25:1

**sell**  27:2

**send**  28:6

**sense**  14:23 19:20 36:16 61:11 62:27

**separate**  8:2 13:25 16:2 18:8 31:26 37:16 42:5 57:8 59:23,24

**separately**  35:3 49:16 58:20,22

**separating**  59:21

**serve**  30:8 62:3

**served**  4:24,25 6:23 30:18

**service**  51:24 58:24 59:13

**SESSION**  1:6

**set**  4:15,21 14:1,3 19:14 20:6 31:11,26 32:14 35:12 42:5,20 58:3 61:17 62:24 63:2,3,9

**setting**  13:12 14:7 19:10 20:2 62:6 63:7

**settled**  61:22

**settlement**  26:6,7 60:14

**sex**  23:4

**sexual**  57:20,27

**share**  49:7

**sharing**  37:25

**she'll**  5:21,23

**Shea**  1:19

**shed**  60:24

**sheet**  26:5,13 27:7 28:16,17,20, 25 29:3,9,21,22,25,27 30:2,14,19, 21,24,26 31:15,16 32:13

**sheet all**  26:1

**sheets**  24:17 26:8 27:23 28:2 30:11 31:3,7,27 32:27

**shift**  23:5

**short**  17:18 32:9

**shorten**  10:25

**shot**  15:13

**show**  43:12

**shown**  43:27

**side**  1:27 5:10 9:21,23 15:6 33:5, 6 55:10,20 62:1

**sides**  11:13 12:22 25:4 33:11 36:4,23 43:18

**sign**  54:11 61:7

**signed**  7:9

**significant**  23:10 50:15

**significantly**  30:22

**signing**  3:7

**Silver**  55:4,12

**similar**  9:27 10:1 11:20 18:24 23:8

**Simonsen**  2:16,17 7:12 8:23 9:25 11:2,21 12:27 14:12 16:11 20:11 27:20 29:1 31:28 32:21 35:17,28 38:7,14,17 39:3 41:9,12 42:17 43:2,19 44:3,14 45:7 46:1,6 49:4 58:5,23 61:28 62:27 63:12, 19

**simpler**  58:21

**simplify**  27:18,19

**simply**  15:14

**simultaneous**  9:22 10:20 51:3

**single**  41:19 42:22

**sitting**  55:24

**situation**  10:19

**situations**  4:9

**Sixty-one**  58:18

**slightly**  14:8

**slowly**  56:16

**smaller**  30:22

**smart**  30:23

**Snap**  2:3,27

**snapshots**  37:22,24

**social**  1:2,13,25 32:5

**sole**  36:26

**solicited**  25:23

**solution**  25:26 34:10 49:25

**solve**  4:7

**solving**  13:17

**Sonsini**  2:8,11

**sooner**  18:1

**sophisticated**  26:4

**sort**  6:18 7:26 10:25 15:10,13 31:15 54:19

**sound**  6:13 28:9

**sounds**  18:26 21:13 51:1

**source**  46:27

**Spalding**  2:14

**speak**  5:13 7:3 16:20 20:8 32:15 55:1

**specific**  9:11 14:15 24:10 25:17 28:12,24

**spelled**  46:24,25

**spent**  17:3

**spirit**  29:14

**spoken**  3:26

**spoliation**  48:10

**SSC**  1:4

**staff**  14:7 51:26 52:8,16 61:2

**stage**  15:21

**stand**  43:10

**standards**  13:19 14:1,19

**standing**  52:14 56:12

**standpoint**  27:11,14

**start**  3:11,12 25:5 26:16

**started**  4:1 25:20 36:10

**starting**  1:14 21:11

**state**  13:28 14:4 20:19 22:12,16

53:16 58:19

**stated**  58:23

**statement**  9:21,22

**statements**  9:28

**states**  22:4,7,9,13,26 23:9,10
59:3

**stating**  60:13 61:10

**status**  5:6 9:10 29:2,15 31:24,25
58:3 61:17 62:6 63:7

**statute**  40:20 41:23 43:5 44:6
46:8

**statutory**  23:8 48:18

**stay**  10:15

**stayed**  24:14 29:19

**steering**  56:21

**steps**  6:4

**stip**  24:6 51:15 52:2 56:25

**stipulate**  10:28

**stipulated**  20:7

**stipulation**  14:15 15:13 19:13
20:1,7 23:27 24:2 52:5 54:19
60:9,12

**streamline**  6:3

**string**  20:20

**study**  13:14

**subject**  15:3 17:13,19 23:14 34:9
53:7

**submission**  15:2

**submit**  16:13 28:1 31:2,8 32:9
33:13,24 35:7,19 36:18,27 37:10
40:15 42:27 43:24 45:2,8,19
51:13 53:20 54:19 57:8

**submits**  15:5

**submitted**  5:21 9:28 39:23

**submitting**  7:17 50:2

**subparts**  25:18 26:20

**substantive**  14:19 16:1

**success**  9:27 25:28

**sufficient**  4:17 13:28

**suggest**  15:16 16:12 20:5 29:4

33:24

**suggested**  29:2

**suggesting**  44:14

**suggestions**  27:27 61:18,25

**summaries**  49:26

**summarize**  44:25 46:9

**summarized**  44:26

**summary**  41:20

**sun**  29:11

**supplementary**  18:22

**suppose**  38:15

**supposed**  16:6

**Supreme**  10:15 13:8,11 17:21,
25,28 18:28 19:1,3,9 24:2

**surprisingly**  62:16

**surrounding**  40:1,5,26

**suspect**  60:7

**suspected**  46:26,27 47:13

**system**  13:9 14:8,9 24:25 25:10
31:10 42:20 51:28 57:7,26

**systems**  41:28

─────────────

**T**

**table**  28:7

**tackle**  48:3

**takes**  18:16 24:23

**taking**  25:9 39:11 55:24 59:19

**talk**  3:18 9:10 10:13 24:16 31:25,
26

**talked**  11:17 52:20

**talking**  13:1 25:1 38:17,18 40:11
46:15,26 47:6 48:4 52:9

**Tarifa**  2:23

**technical**  7:26 8:1

**telling**  25:8

**temporal**  16:22

**ten**  12:10,12 15:1,23 31:24

**tend**  18:9

**tens**  42:23 44:23

**tentative**  11:12,14,15 17:13

**terminology**  42:2

**terms**  9:8 14:20 21:15 22:18
52:10

**testimony**  12:3

**Texas**  55:4

**theory**  55:6,7

**thing**  16:6 21:26 26:17,28 27:8
57:11

**things**  3:20 5:22 6:17,18,20 18:9
27:6,10,25 38:15,22,24 53:18
57:17 59:20 62:12,13

**thinking**  16:19 17:4,11

**Thirty**  21:21

**thought**  13:21 16:21 21:13 27:26
36:11

**thoughts**  28:6

**thousands**  25:7

**threw**  17:4

**tied**  30:17

**Tiktok**  2:6,15,24 5:13

**time**  1:6 3:3 4:19 5:11 10:25
12:19 16:1,23 17:3 18:7,17 19:27
22:2 23:15,19,25 24:20,23 25:17
33:19 52:20 55:18 56:1 62:25
63:11

**today**  4:15 16:24 19:10 31:2 57:3

**today's**  4:21

**told**  22:7 49:10

**Tolles**  2:2,26

**tomorrow**  32:24

**topic**  5:2 39:12

**topics**  5:4

**tort**  25:7

**totally**  56:6

**tough**  50:22

**tracked**  34:24

**trade**  7:26,28

**transitioning**  40:21

**traveling** 3:27

**treated** 4:24 11:24

**trial** 27:5 39:1 43:9 49:23 61:21, 23,24

**trials** 58:26,27

**triggered** 35:2

**trucking** 62:21

**trust** 58:20

**turf** 6:27

**turn** 7:8 29:23

**turned** 34:16,17,23

**turning** 52:20

**Two-1** 25:1

**type** 6:4 38:1 40:2

**types** 37:17 60:18

---

**U**

**ultimately** 33:6 54:11

**unable** 51:4

**unclear** 49:21

**underlying** 14:25

**understand** 11:24 15:22 16:11 23:28 26:13,24 30:15 32:20,25 34:20,27 40:15 41:5 43:7 49:2 60:18

**understanding** 7:27 11:14 36:20 38:26 39:5 55:21

**Understood** 9:25 11:21 43:2,19 59:18,25

**uneven** 55:18

**unfortunate** 10:19

**unified** 18:20,21

**unitary** 18:5,6,10,14

**universe** 29:4

**University** 55:4

**unjust** 55:5

**unseal** 16:6

**unwound** 15:23

**upcoming** 62:2

**update** 25:2

**usable** 50:25

**user** 16:19,20,23 29:23 32:1,7 42:8

**user's** 44:19

---

**V**

**valuable** 48:27

**vast** 42:24

**versus** 17:21 19:14

**victim** 40:4 41:21 42:13 45:17 46:27 49:2

**victimized** 44:10

**victims** 1:25 44:21,24 50:17

**Victoria** 2:2

**video** 39:27 47:24

**videos** 47:23

**view** 8:2 14:10

**viewing** 41:24

**views** 62:1

**violate** 46:8 47:19

**vis-a-vis** 8:19

**voluminous** 29:10 30:14

---

**W**

**wait** 8:9,22 61:25

**waiver** 51:24 58:23

**walking** 32:24

**wanted** 11:19 52:9 57:15 58:5,8 60:8,15,17,18

**wasted** 54:10

**ways** 9:24 30:25 36:14 47:22,27

**WEDNESDAY** 1:3

**weekday** 19:4

**weekdays** 19:5

**weekend** 19:6

**weeks** 17:20,28 18:2,4,27 19:4 62:19

**weighing** 17:14

**well-taken** 6:1

**whatsoever** 47:20

**whichever** 17:22

**willingness** 38:27

**Wilson** 2:8,11

**wisdom** 13:8

**wonderful** 52:17

**word** 52:1

**words** 33:28

**work** 10:8,11 16:3 18:10 23:20 24:23 25:9,24 34:13 40:8 52:2,13 53:10 54:7 56:3,7,16 59:28 61:14

**working** 12:20 24:19 62:5

**works** 39:21 48:19 52:1 56:16

**wrinkle** 20:18 22:18

**written** 55:6

**wrong** 42:2

---

**Y**

**year** 4:1 42:24

**yesterday** 28:21

**York** 22:15

**Youtube** 2:9,12