**Defense Exhibit 1**

# Manual for Complex Litigation, Fourth

Federal Judicial Center 2004

# *Part II*

# *Special Problems*

———————

20. Multiple Jurisdiction Litigation  217

21. Class Actions  242

22. Mass Torts  341

23. Expert Scientific Evidence  469

Blank page inserted for correct pagination
when printing double-sided copies.

# 20. Multiple Jurisdiction Litigation

.1 Related Federal Civil Cases  218
   .11 Cases in Same Court  218
   .12 Cases in Different Federal Courts  219
   .13 Multidistrict Transfers Under Section 1407  219
      .131 Requests for Transfer  219
      .132 During Period of Transfer  221
      .133 Remand  225
   .14 Coordination Between Courts  227
.2 Related Criminal and Civil Cases  228
.3 Related State and Federal Cases  229
   .31 Coordination  229
      .311 Identifying the Need and Opportunity  231
      .312 Threshold Steps  232
      .313 Specific Forms of Coordination  235
   .32 Jurisdictional Conflicts  238

Multiplication of cases within the federal system or across the federal and state systems is a common characteristic of complex litigation. Multiple claims may be aggregated in a single class action if the prerequisites of Federal Rule of Civil Procedure 23 are met. Frequently, though, separate lawsuits asserting similar claims are initiated; multiple, overlapping class actions are filed in federal and state courts; or class members opt out to file their own cases. Occasionally, peripheral claims in complex litigation will lead to multiple cases, as in the case of insurance coverage litigation or reactive litigation motivated by forum preferences. Control over the proliferation of cases and coordination of multiple claims is crucial to effective management of complex litigation. When the limitations of federal jurisdiction preclude such control, voluntary means may be available to achieve coordination and thereby reduce duplicative activity, minimize the risks of conflict, and avoid unnecessary expense.

The most powerful device for aggregating multiple litigation pending in federal and state courts—the bankruptcy law[636]—is, except for the mass tort context, beyond the scope of this manual. Where related adversary proceedings are pending in bankruptcy court, however, the bankruptcy judge should consider having them reassigned, at least tentatively, to the district judge handling related litigation.[637] When related bankruptcy reorganization pro-

---

636.  *See* A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986). *See generally* section 22.5.
637.  *See generally* section 22.54.

ceedings are pending in different districts, judges should consider methods of consolidating those proceedings before a single judge.[638]

# 20.1   Related Federal Civil Cases

.11 Cases in Same Court  218
.12 Cases in Different Federal Courts  219
.13 Multidistrict Transfers Under Section 1407  219
    .131 Requests for Transfer  219
    .132 During Period of Transfer  221
    .133 Remand  225
.14 Coordination Between Courts  227

## 20.11  Cases in Same Court

All related civil cases pending in the same court should initially be assigned to a single judge to determine whether consolidation, or at least coordination of pretrial proceedings, is feasible and is likely to reduce conflicts and duplication (see section 10.12). If the cases appear to involve common questions of law or fact, and consolidation may tend to reduce cost and delay, the cases may be consolidated under Federal Rule of Civil Procedure 42(a) (see section 11.631). Cases pending in different divisions of the court may be transferred upon request under 28 U.S.C. § 1404(b). Cases should not be consolidated if it would result in increased delay and other unnecessary burdens on parties, such as having to participate in discovery irrelevant to their cases.[639]

At the initial conference, consider whether cases should be coordinated or consolidated for pretrial proceedings or for all purposes even if the final decision must be deferred pending the development of additional information. When cases are coordinated or consolidated, the court should enter an order establishing a master file for the litigation in the clerk's office, relieving the parties from multiple filings of the same pleadings, motions, notices, orders, and discovery materials, and providing that documents need not be filed separately in an individual case file unless uniquely applicable to that particular case.

---

638. *See* Order of Chief Judge Edward H. Becker, Designation of a District Judge for Service in Another District Within the Circuit (3d Cir. Nov. 27, 2001). The order was based on authority granted the chief judge in 28 U.S.C. § 292(b), which permits such reassignments "in the public interest."

639. *In re* Repetitive Stress Injury Litig., 11 F.3d 368 (2d Cir. 1993).

## 20.12  Cases in Different Federal Courts

Related cases pending in different federal courts may be consolidated in a single district by a transfer of venue. Under 28 U.S.C. § 1404(a), the court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought."[640] Plaintiffs' choice of forum is, however, entitled to substantial deference.[641]

## 20.13  Multidistrict Transfers Under Section 1407

.131 Requests for Transfer  219
.132 During Period of Transfer  221
.133 Remand  225

The Judicial Panel on Multidistrict Litigation ("the Panel") is authorized to transfer civil actions pending in more than one district involving one or more common questions of fact to any district for coordinated or consolidated pretrial proceedings upon the Panel's determination that transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions."[642] The Panel's authority is not subject to venue restrictions[643]—it extends to most civil actions[644] and, with one statutory exception, only to transfer for pretrial proceedings (as of December 2003).[645]

### 20.131  Requests for Transfer

Transfer proceedings may be initiated by one of the parties or by the Panel itself, although the latter procedure is ordinarily used only for "tag-along" cases (transfer on the request of a person not a party in one or more of the

640.  For the implications of the phrase "where it might have been brought," see *infra* note 649.

641.  *See* Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508 (1947).

642.  28 U.S.C. § 1407 (West 2003).

643.  *In re* N.Y. City Mun. Sec. Litig., 572 F.2d 49 (2d Cir. 1978).

644.  Antitrust actions brought by the United States are exempt from the Panel's power, 28 U.S.C. § 1407(g) (West 2002), as are injunctive actions instituted by the Securities and Exchange Commission unless the SEC consents to consolidation, 15 U.S.C. § 78u(g) (2000).

645.  *See infra* section 20.132 and text accompanying notes 666–71. *Parens patriae* antitrust actions brought by states under 15 U.S.C. § 15c(a)(1) may be transferred by the Panel for both pretrial and trial. 28 U.S.C. § 1407(h) (West 2002). The Panel can also designate the circuit court to hear appeals of federal agency rulings in certain instances in which petitions for review have been filed in multiple circuits. *Id.* § 2112(a)(3).

cases).[646] The Panel evaluates each group of cases proposed for multidistrict treatment on the cases' own facts in light of the statutory criteria. The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.[647] As few as two cases may warrant multidistrict treatment,[648] although those advocating transfer bear a heavy burden of persuasion when there are only a few actions, particularly those involving the same parties and counsel.[649]

Occasionally, only certain claims in an action are related to multidistrict proceedings, or an action contains claims relating to more than one multidistrict docket (e.g., a plaintiff suing its broker over purchases of stock in two different companies, each of which is the subject of a separate multidistrict docket). Section 1407(a) authorizes the Panel to transfer only "civil actions," not claims; however, section 1407(a) also empowers the Panel to accomplish "partial" transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the transferor district any claims for which transfer was not deemed appropriate, such as cross-claims, counterclaims, or third-party claims. If the "new" action containing the remanded claim in the transferor district is also appropriate for inclusion in a second transferee docket, the process can proceed one step further with simultaneous retransfer to the second docket's transferee district.

A transfer under section 1407 becomes effective when the order granting the transfer is filed in the office of the clerk of the transferee court. At that point, the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction.[650] During the pendency of a motion (or show cause order) for transfer, however, the court in which the action was filed retains jurisdiction over the case.[651]

The transferor court should not automatically stay discovery; it needs to consider provisions in local rules that may mandate early commencement of discovery, and an order modifying such provisions' impact on the litigation may be necessary. Nor should the court automatically postpone rulings on pending motions, or generally suspend further proceedings. When notified of

646. The Panel may order transfer on the request of a person not a party in one or more of the cases. *See, e.g., In re* Equity Funding Corp. Sec. Litig., 375 F. Supp. 1379, 1390 n.4 (J.P.M.L. 1974).

647. *See In re* Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968).

648. *See, e.g., In re* Clark Oil & Ref. Corp. Antitrust Litig., 364 F. Supp. 458 (J.P.M.L. 1973).

649. *See, e.g., In re* Scotch Whiskey, 299 F. Supp. 543 (J.P.M.L. 1969).

650. *In re Plumbing Fixture*, 298 F. Supp. 484. Unless altered by the transferee court, orders entered by the transferor court remain in effect.

651. J.P.M.L. R.P. 1.5; *In re* Four Seasons Sec. Laws Litig., 362 F. Supp. 574 (J.P.M.L. 1973).

the filing of a motion for transfer,[652] therefore, matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer. The Panel has sometimes delayed ruling on transfer to permit the court in which the case is pending to decide critical, fully briefed and argued motions. At the same time, it may be advisable to defer certain matters until the Panel has the opportunity to rule on transfer. For example, there would be little purpose in entering a scheduling order while a conditional order of transfer is pending. The court should, however, modify any previously scheduled dates for pretrial proceedings or trial as may be necessary to avoid giving the Panel a misleading picture of the status of the case.

More often, however, the Panel has held that the pendency of potentially dispositive motions is not an impediment to transfer of actions, because such motions can be addressed to the transferee judge for resolution after transfer. Furthermore, the pendency of motions raising questions common to related actions can itself be an additional justification for transfer.[653]

The Panel uses no single factor to select the transferee district,[654] but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges. Based on these factors, the Panel will designate a judge (on rare occasions, two judges) to whom the cases are then transferred for pretrial proceedings. The judge is usually a member of the transferee court, but occasionally the Panel selects a judge designated to sit specially in the transferee district on an intracircuit or intercircuit assignment.

## 20.132 During Period of Transfer

After the transfer, the transferee judge[655] exercises not only the judicial powers in the transferee district but also "the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings."[656] The Panel has no authority to direct transferee judges in the exercise of their powers and discretion in supervising multidis-

---

652. A copy of the motion is to be filed with the court where the action is pending. *See* J.P.M.L. R.P. 5.12(c).

653. *See, e.g., In re* Ivy, 901 F.2d 7, 9 (2d Cir. 1990).

654. *See* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214–215 (1977).

655. *In re Plumbing Fixture*, 298 F. Supp. at 489.

656. 28 U.S.C. § 1407(b) (West 2003).

trict proceedings.[657] This supervisory power over depositions in other districts may be exercised in person or by telephone.[658] The transferee judge may vacate or modify any order of a transferor court, including protective orders;[659] unless altered, however, the transferor court's orders remain in effect.[660]

Although the transferee judge has no jurisdiction to conduct a trial in cases transferred solely for pretrial proceedings, the judge may terminate actions by ruling on motions to dismiss, for summary judgment, or pursuant to settlement, and may enter consent decrees.[661] Complexities may arise where the rulings turn on questions of substantive law. In diversity cases, the law of the transferor district follows the case to the transferee district.[662] Where the claim or defense arises under federal law, however, the transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit,[663] keeping in mind that statutes of limitations may present unique problems.[664] An action is closed by appropriate orders entered in the transferee court, without further involvement by the Panel or the original transferor court.

The transferee judge's management plan for the litigation should include provisions for handling tag-along actions transferred by the Panel after the initial transfer. Panel Rules 7.2(I) and 7.5(e) impose an affirmative obligation on parties in cases in which a motion to transfer is pending, or that previously have been transferred by the Panel, to promptly notify the Panel of any potential tag-along action in which the party is also named. This obligation also is imposed on counsel with respect to any action in which the counsel appears. Ordinarily, it is advisable to order that (1) tag-along actions shall be automatically made part of the centralized proceedings upon transfer to, or filing in, the transferee court; (2) rulings on common issues—for example, on the statute of limitations—shall be deemed to have been made in the tag-along

---

657.   *Id.*

658.   *See In re* Corrugated Container Antitrust Litig., 662 F.2d 875 (D.C. Cir. 1981); *In re* Corrugated Container Antitrust Litig., 644 F.2d 70 (2d Cir. 1981); *In re* Corrugated Container Antitrust Litig., 620 F.2d 1086 (5th Cir. 1980).

659.   *See, e.g., In re* Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig., 664 F.2d 114 (6th Cir. 1981).

660.   *See In re* Master Key Antitrust Litig., 320 F. Supp. 1404 (J.P.M.L. 1971).

661.   *See, e.g., In re* Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 367–68 (3d Cir. 1993).

662.   Van Dusen v. Barrack, 376 U.S. 612 (1964); *In re* Dow Co. "Sarabond" Prods. Liab. Litig., 666 F. Supp. 1466, 1468 (D. Colo. 1987).

663.   *Compare In re* Korean Air Lines Disaster, 829 F.2d 1171 (D.C. Cir. 1987), *aff'd on other grounds sub nom.* Chan v. Korean Air Lines Ltd., 490 U.S. 122 (1989), *with* Dow "Sarabond," 666 F. Supp. 1466 (D. Colo. 1987), and cases cited therein.

664.   *See, e.g.,* Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 406 (2d Cir. 1975).

action without the need for separate motions and orders; and (3) discovery already taken shall be available and usable in the tag-along cases.[665] Consider other means of reducing duplicative discovery activity and expediting later trials by measures such as videotaping key depositions or testimony given in bellwether trials, particularly of expert witnesses, for use at subsequent trials in the transferor courts after remand.

One of the values of multidistrict proceedings is that they bring before a single judge all of the federal cases, parties, and counsel comprising the litigation. They therefore afford a unique opportunity for the negotiation of a global settlement. Few cases are remanded for trial; most multidistrict litigation is settled in the transferee court. As a transferee judge, it is advisable to make the most of this opportunity and facilitate the settlement of the federal and any related state cases. See section 20.31.

Until 1998, actions based on section 1407 proceedings and not settled or otherwise dismissed in the transferee districts during their pretrial stages often remained in the transferee districts for trial. Transferee judges entered orders effecting transfer for trial, pursuant to 28 U.S.C. § 1404 or 1406, of cases previously transferred to them for pretrial under section 1407.

In 1998, the U.S. Supreme Court held that a district court has no authority to invoke section 1404(a) to assign a transferred case to itself for trial, because section 1407(a) "uncondition[ally]" commands the Panel to remand, at the end of pretrial proceedings, each action transferred by the Panel that has not been terminated in the transferee district.[666] However, the policy reasons for the pre-1998 practice remain: (1) during the often protracted time of the section 1407 assignment, the transferee judge gains a solid understanding of the case, and it makes sense for trial to be conducted by the judge with the greatest understanding of the litigation; (2) the transferee judge may already be trying the constituent centralized action(s), and there may be efficiencies in adjudicating related actions or portions thereof in one trial; and (3) the transferee judge, if empowered to try the centralized actions, may have a greater ability to facilitate a global settlement.

---

665. For a discussion of the use of supplemental depositions, see *supra* section 11.453. *See also infra* sample order at section 40.29.

666. *In re* Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). The Court infers that MDL transferee judges may not use section 1404(a) to transfer to any district at all, neither to a third district or back to the section 1407 transferor district. *Id.* at 41 n.4. By analogy and further inference, an MDL transferee judge likewise now may not transfer under section 1406. *See id.*

Accordingly, evolving alternatives, such as those below, permit the transferee court to resolve multidistrict litigation through trial while remaining faithful to the *Lexecon* limitations:

- Prior to recommending remand, the transferee court could conduct a bellwether trial of a centralized action or actions originally filed in the transferee district, the results of which (1) may, upon the consent of parties to constituent actions not filed in the transferee district, be binding on those parties and actions,[667] or (2) may otherwise promote settlement in the remaining actions.
- Soon after transfer, the plaintiffs in an action transferred for pretrial from another district may seek or be encouraged (1) to dismiss their action and refile the action in the transferee district, provided venue lies there, and the defendant(s) agree, if the ruling can only be accomplished in conjunction with a tolling of the statute of limitations or a waiver of venue objections, or (2) to file an amended complaint asserting venue in the transferee district,[668] or (3) to otherwise consent to remain in the transferee district for trial.[669]

---

667. *See, e.g., In re* Air Crash Near Cali, Colombia on Dec. 20, 1995, MDL No. 1125, Order No. 1522 (S.D. Fla. Jan. 12, 2000) (noting that parties in some of the actions transferred under section 1407 had agreed to be bound by the results of a consolidated liability trial and had been instructed to file appropriate motions after the completion of the trial, seeking a ruling that effectuated such agreements).

668. Often in multidistrict litigation the transferee court will consider establishing a master file with standard pleadings, motions, and orders. This file may include a single amended consolidated complaint, alleging that venue is proper in the transferee district. If such a document is used, the court and parties should take care to ensure a common understanding of the document's intent and significance—that is, whether it is being used as a device simply to facilitate ease of the docket's administration, or whether the filing in the transferee district constitutes the inception of a new "case or controversy" in that district, thereby superseding and rendering moot the pending separate actions that had been transferred to that district for pretrial proceedings by the Panel under section 1407.

669. *See, e.g.,* State v. Liquid Air Corp. (*In re* Carbon Dioxide Indus. Antitrust Litig.), 229 F.3d 1321 (11th Cir. 2000) (ruling that *Lexecon* does not prohibit parties from waiving venue objections in centralized actions where transferee court otherwise had subject-matter jurisdiction); *In re* Dippin' Dots Patent Litig., MDL No. 1377, Docket No. 1:00-CV-907 (N.D. Ga. July 23, 2001) (transferee court ordered all parties to file a pleading stating whether they consented to trial in the transferee district); *In re* Research Corp. Techs., Inc. Patent Litig., Docket No. 97-2836 (D.N.J. Dec. 3, 1999) (order entering final judgment and staying further pretrial proceedings; transferee court found it reasonable to conclude that final judgment may be entered following trial proceedings consented to by the parties that resulted in termination of the actions).

- After an action has been remanded to the originating transferor court at the end of section 1407 pretrial proceedings, the transferor court could transfer the action,[670] pursuant to 28 U.S.C. § 1404 or 1406, back to the transferee court for trial by the transferee judge.[671]
- The transferee judge could seek an intercircuit or intracircuit assignment pursuant to 28 U.S.C. § 292 or 294 and follow a remanded action, presiding over the trial of that action in that originating district.

## 20.133 Remand

Section 1407 directs the Panel to remand, after appropriate pretrial proceedings, actions not filed or terminated in the transferee court to the respective transferor courts for further proceedings and trial. When this should be done will depend on the circumstances of the litigation. In some cases, remands have been ordered relatively early, while substantial discovery remained to be done; in others, virtually all discovery had been completed and the cases were ready for trial at the time of remand to the transferor districts. Some of the constituent cases may be remanded, while others are retained for further centralized pretrial proceedings.

The Panel looks to the transferee court to suggest when it should order remand, but that court has no independent authority to order section 1407 remand.[672] The transferee court should consider when remand will best serve the expeditious disposition of the litigation. The Panel may also order remand on its own initiative or on the motion of a party.[673] Although authorized to "separate any claim, cross claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded," the Panel has rejected most requests to exclude portions of a case from transfer

---

670. *Lexecon*, 523 U.S. at 19.

671. *See, e.g.,* Kenwin Shops, Inc. v. Bank of La., 97 Civ. 907, 1999 WL 294800, at *11 (S.D.N.Y. May 11, 1999). The transferee court might also facilitate such a transfer by expressly recommending it either in its suggestion of remand to the Panel or in its final pretrial order. *See, e.g., In re* Air Crash at Dubrovnik, Croatia on Apr. 3, 1996, MDL No. 1180 (Letter from Alfred V. Covello, Chief Judge, U.S. District Court, D. Conn., to Michael J. Beck, Clerk of the Panel, Judicial Panel on Multidistrict Litigation, suggesting that four remanded cases be transferred back to the court and consolidated for trial (Jan. 4, 2002) (on file with the Judicial Panel on Multidistrict Litigation)).

672. *See In re* Roberts, 178 F.3d 181 (3d Cir. 1999).

673. J.P.M.L. R.P. 7.6(c). Great deference is given to the views of the transferee judge. *See, e.g., In re* IBM Peripheral EDP Devices Antitrust Litig., 407 F. Supp. 254, 256 (J.P.M.L. 1976). Efforts by parties to use the Panel as a substitute for appellate review, by seeking premature remand, have been uniformly rejected.

under section 1407.[674] The transferee court may give such matters individualized treatment if warranted, and the transferee judge (who will develop a greater familiarity with the nuances of the litigation) can suggest remand of claims in any constituent action whenever the judge deems it appropriate.[675] The Panel has further concluded that it has no power to transfer (or sever and remand) particular "issues," as distinguished from particular "claims."[676]

After remand, the transferor court has exclusive jurisdiction, and further proceedings in the transferee court with respect to a remanded case are not authorized absent a new transfer order by the Panel.[677] The transferor court conducts further pretrial proceedings, as needed, and thus all cases remanded to the same court for additional proceedings and trial should be assigned at least initially to a single judge for coordination or consolidation. Although the transferor judge has the power to vacate or modify rulings made by the transferee judge, subject to comity and "law of the case" considerations, doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings.[678]

The complete pretrial record is sent to the transferor court upon remand of the case. One of the final actions of the transferee court should be a pretrial order that fully chronicles the proceedings, summarizes the rulings that will affect further proceedings, outlines the issues remaining for discovery and trial, and indicates the nature and expected duration of further pretrial proceedings.[679] Transferee courts typically do not provide transferor courts with status reports during the pretrial proceedings, so this order will help the transferor

---

674.  *But see In re* Hotel Tel. Charge Antitrust Litig., 341 F. Supp. 771 (J.P.M.L. 1972); *cf. In re* Midwest Milk Monopolization Litig., 386 F. Supp. 1401 (J.P.M.L. 1975).

675.  *See, e.g., In re* Collins, 233 F.3d 809 (3d Cir. 2000), *cert. denied sub nom.* Collins v. MacMillan Bloedel, Inc., 532 U.S. 1066 (2001) (upholding severance of punitive damage claims by the transferee court in actions where the rest of the claims were suggested for remand); *In re* Patenaude, 210 F.3d 135, 143 (3d Cir. 2000) (ruling that the phrase "coordinated or consolidated pretrial proceedings" in section 1407(a) is to be interpreted broadly, here in the context of the transferee judge's wide leeway regarding when to suggest remand).

676.  *In re* Plumbing Fixture Case, 298 F. Supp. 484, 489–90 (J.P.M.L. 1968).

677.  *See, e.g., In re* The Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig., 508 F. Supp. 1020 (E.D. Mich. 1981). In unusual circumstances, the Panel has by a new order again transferred a remanded case to the transferee district or transferred it to a new district as part of another multidistrict proceeding.

678.  *See* Stanley A. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978).

679.  *See In re* Diet Drugs Prods. Liab. Litig., MDL No. 1203, Order No. 1962, 2001 WL 497313 (E.D. Pa. May 9, 2001), *available at* http://www.fenphen.verilaw.com/search_common.icl (last visited Nov. 10, 2003) (final pretrial order establishing a process for the remand of transferred cases that have completed the pretrial process).

courts plan further proceedings and trial. Transferee judges have occasionally received intracircuit or intercircuit assignments under 28 U.S.C. §§ 292(b) and 292(d) to preside at trials of cases remanded to the transferor courts.

## 20.14  Coordination Between Courts

Even when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts. Coordination requires effective communication between judges and among judges and counsel.

Steps that may be taken include the following:

- *Special assignment of judge.* All cases may be assigned to a single judge designated by the chief justice or the chief circuit judge under 28 U.S.C. §§ 292–294 to sit temporarily in the district where the cases are pending (either within or outside of the assigned judge's own circuit).

- *Lead case.* Counsel in the various cases may agree with the judge to treat one case as the "lead case." The agreement may provide for staying proceedings in the other cases pending resolution of the lead case, or rulings in the lead case may be given presumptive, though not conclusive, effect in the other courts.

- *Joint conferences and orders.* All judges may attend joint hearings or conferences, in person or by telephone. Federal Rule of Civil Procedure 77(b) requires consent of the parties for trials or hearings to be conducted outside the district; consent is not required for other proceedings, such as conferences. The joint proceedings may be followed by joint or parallel orders by the several courts in which the cases are pending.

- *Joint appointments.* The several courts may coordinate the appointment of joint experts under Federal Rule of Evidence 706, or special masters under Federal Rule of Civil Procedure 53, to avoid duplicate activity and inconsistencies. The appointments may help resolve claims of privilege made in a number of cases on similar facts, or where global settlement negotiations are undertaken. The courts may also coordinate in appointing lead or liaison counsel.

- *Avoiding duplicative discovery.* Judges should encourage techniques that coordinate discovery and avoid duplication, such as those discussed in sections 11.423, 11.443, 11.452, and 11.464. Filing or cross-filing deposition notices, interrogatories, and requests for production in related cases will make the product of discovery usable in all cases

and avoid duplicative activity. Relevant discovery already completed should ordinarily be made available to litigants in the other cases.[680] If the material is subject to a protective order, the court usually may accommodate legitimate privacy interests by amending the order to include the new litigants within the order's restrictions,[681] and the party seeking the discovery may be required to bear a portion of the cost incurred in initially obtaining the information. Document production should be coordinated and joint depositories established.[682] The resolution of discovery disputes can also be coordinated to some degree (e.g., by referring them to a single magistrate judge or special master).

- *Clarifying class definitions.* Conflicts between class actions, or between a class action and individual actions, can be avoided by coordinating the drafting of class definitions when actions are certified. See section 20.32.

- *Stays.* In appropriate cases, a judge may order an action stayed pending resolution of a related case in a federal court.

## 20.2  Related Criminal and Civil Cases

Major management problems arise in concurrent criminal and civil cases involving the same persons. Witnesses may claim a Fifth Amendment privilege in the civil actions, especially if examined prior to final resolution of the criminal proceedings.[683] Serious questions may arise as to requiring an accused, during the pendency of criminal charges, to produce in civil proceedings either adverse (although nonprivileged) evidence or exculpatory evidence to which

680. *See* Wilk v. Am. Med. Ass'n, 635 F.2d 1295, 1299 (7th Cir. 1980) ("Where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. . . . Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.").

681. *Id.* at 1301.

682. *See* Fed. R. Civ. P. 26(b)(2) ("The frequency or extent of use of [discovery] . . . shall be limited by the court if it determines that: (i) the discovery is unreasonably . . . duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . . .").

683. Termination of the criminal case will not necessarily result in testimony becoming available. *See* Pillsbury Co. v. Conboy, 459 U.S. 248 (1983) (witness compelled by grant of "use immunity" to give testimony to grand jury does not waive right to claim Fifth Amendment in subsequent civil litigation).

the prosecution would not be entitled under Federal Rule of Criminal Procedure 16. The criminal proceeding ordinarily has first priority because of the short pretrial period allowed under the Speedy Trial Act[684] and because of the potential impact of a conviction. Even if conviction will not preclude relitigation of issues in a subsequent civil proceeding, it may be admissible in the civil case as substantive evidence of the essential elements of the offense under Federal Rule of Evidence 803(22) or as impeachment evidence under Federal Rule of Evidence 609. Suspending all pretrial activities in civil litigation until the end of the criminal proceeding, however, may be inadvisable, since it may be possible to conduct major portions of the civil case's discovery program without prejudice before completion of the criminal proceedings.[685]

To facilitate coordination, related criminal and civil cases should be assigned, if possible, to the same judge (though, as noted in section 10.12, circumstances may make assignment to the same judge inadvisable). Although the MDL Panel has no authority to transfer criminal cases, it has frequently ordered transfer of civil actions to the location of related criminal proceedings. If the cases are assigned to different judges, the judges should at least communicate and coordinate informally. If grand jury materials from another court are sought, the two-step procedure described in *Douglas Oil Co. of California v. Petrol Stops Northwest*[686] must be followed.

# 20.3   Related State and Federal Cases

.31 Coordination  229
    .311 Identifying the Need and Opportunity  231
    .312 Threshold Steps  232
    .313 Specific Forms of Coordination  235
.32 Jurisdictional Conflicts  238

# 20.31   Coordination

.311 Identifying the Need and Opportunity  231
.312 Threshold Steps  232
.313 Specific Forms of Coordination  235

Increasingly, complex litigation involves related cases brought in both federal and state courts. Such litigation often involves mass torts (see section

---

684. The complexity of the case may be a ground for extending the statutory time limits. 18 U.S.C. § 3161(h)(8)(B) (2000). *See infra* section 30.4.

685.  *See* Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936); Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967).

686.  441 U.S. 211 (1979).

22.2). Some sets of cases may involve numerous claims arising from a single event, confined to a single locale (such as a plane crash or a hotel fire). Other more-complicated litigations may arise from widespread exposure to harmful products or substances dispersed over time and place.

No single forum has jurisdiction over these groups of cases. Unless the defendant files for bankruptcy, no legal basis exists for exercising exclusive federal control over state litigation. Interdistrict, intradistrict, and multidistrict transfer statutes and rules apply only to cases filed in, or removable to, federal court (see sections 22.32 and 22.33).

State and federal judges, faced with the lack of a comprehensive statutory scheme, have undertaken innovative efforts to coordinate parallel or related litigation[687] so as to reduce the costs, delays, and duplication of effort that often stem from such dispersed litigation. State judges, for example, can bring additional resources that might enable an MDL transferee court to implement a nationwide discovery plan or a coordinated national calendar.[688] There are, however, potential disadvantages of cooperative activity. Coordination can delay or otherwise affect pending litigation, conferring an advantage to one side in contentious, high-stakes cases.[689] Such litigation activates strategic maneuvering by plaintiffs and defendants. For example, plaintiffs may seek early trial dates in jurisdictions with favorable discovery rules.[690]

687.  *See generally* William W Schwarzer et al., *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 Va. L. Rev. 1689 (1992) (reporting on a study of eleven notable instances of state–federal coordination in litigation arising from (1) 1972 Federal Everglades air crash, (2) 1977 Beverly Hills Supper Club fire, (3) 1979 Chicago air crash, (4) 1980 MGM Grand Hotel fire, (5) 1981 Hyatt skywalk cases, (6) 1986 technical equities fraud, (7) 1987 L'Ambience Plaza collapse, (8) 1989 Exxon Valdez oil spill, (9) 1989 Sioux City air crash, (10) Ohio asbestos litigation, and (11) Brooklyn Navy Yard asbestos litigation). *See infra* section 33.23.

688.  *See* Sam C. Pointer, Jr., *Reflections by a Federal Judge: A Comment on Judicial Federalism: A Proposal to Amend the Multidistrict Litigation Statute*, 73 Tex. L. Rev. 1569, 1571 (1995) (discussing state judges taking primary responsibility for portions of common discovery and other aspects of the silicone gel breast implant MDL process). *See also* E. Norman Veasey, *A Response to Professor Francis E. McGovern's Paper Entitled Toward a Cooperative Strategy for Federal and State Judges in Mass Tort Litigation*, 148 U. Pa. L. Rev. 1897, 1898 (2000) ("Over 95% of all litigation and roughly the same percentage of resources are in the state courts.").

689.  *See generally* Mark Herrmann, *To MDL or Not to MDL: A Defense Perspective*, 24 Litig. 43 (1998).

690.  Paul D. Rheingold, *Symposium: National Mass Torts Conference: Comment on Judicial Federalism: A Proposal to Amend the Multidistrict Litigation Statute*, 73 Tex. L. Rev. 1581, 1582–83 (1995). Defendants may have concerns about state cases being resolved before federal cases consolidated under the MDL procedure. *See* Francis E. McGovern, *Rethinking Cooperation Among Judges in Mass Tort Litigation*, 44 UCLA L. Rev. 1851, 1858 (1997) [hereinafter McGovern, *Rethinking Cooperation*] ("[P]laintiffs' attorneys rush to their favorite judges and demand

State and federal judges also have initiated state–federal cooperation between jurisdictions to minimize conflicts that distract from the primary goal of resolving the parties' disputes.

## 20.311 Identifying the Need and Opportunity

Coordination approaches differ depending on the nature of the litigation. Coordination is relatively easy if all of the cases are pending in a single state. States increasingly have adopted procedures for assigning complex multiparty litigation to a single judge or judicial panel or have created courts to deal with complex business cases,[691] facilitating coordination between state and federal courts. Federal judges should learn about their own state or local courts' practices and procedures for consolidating cases.

The Judicial Panel on Multidistrict Litigation has no power over cases pending in state courts, but has facilitated coordination by transferring federal cases to a district where related cases are pending in the state courts.[692]

Coordination is easier when counsel for some or all of the parties in the related actions have the same counsel. In appointing lead or liaison counsel or otherwise organizing counsel (see section 10.22 (general) and section 22.62 (mass torts) and 21.27 (class actions)), consider including attorneys from jurisdictions with cases that may need to be coordinated with either class action or multidistrict litigation.

The need to coordinate is especially acute where overlapping or multiple identical class actions are filed in more than one court (see section 21.15). It is best to communicate with state and federal judicial counterparts at an early stage to begin coordinating such cases. Unilateral action by any judge to certify a class or assert nationwide jurisdiction can fatally undermine future coordination efforts.

Coordination becomes much more complex when cases are dispersed across a number of states, even where the federal cases are all centered in a

---

draconian procedures to pressure defendants to make block settlements . . . Defendants seek the opposite—delay is their nirvana.").

691. Alexander B. Aikman, Managing Mass Tort Cases: A Resource Book for State Trial Court Judges § 3.11 (December 1995). For examples of such rules, see *id.* at app. C. *See also* Helen E. Freedman, *Product Liability Issues In Mass Torts—View From the Bench*, 15 Touro L. Rev. 685, 687, n.8 (1999), and cases cited therein; Paul D. Rheingold, Mass Tort Litigation §§ 6:3, 6:7 (1996) (discussing statewide systems in California, New York, and elsewhere). *See also, e.g.,* N.C. Rules of Prac. for Sup. & Dist. Cts. R. 2.1 (West 2003). See www.ncbusinesscourt.net for a history and overview of the workings of the North Carolina Business Court.

692. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation, supra* note 654, at 215.

single MDL transferee court. Electronic media—e.g., Internet Web sites and list-servs—can improve communication in such circumstances.

Reciprocity and cooperation create trust and mutual respect so that attempts to coordinate are not perceived as attempts to dominate. The special master who facilitated state–federal coordination in the silicone gel breast implant litigation observed that the more transparent, formal, even-handed, and administrative the proposed cooperative venture is, the more acceptable it will be to other judges.[693]

## 20.312 Threshold Steps

The nature and extent of multiple filings related to the same subject matter in different courts should be clarified, so as to minimize conflicts. The court should direct counsel to identify the names of all similar cases in other courts, their stage of pretrial preparation, and the assigned judges. Such a direction should be part of the initial case-management order in any case with related litigation pending in other courts,[694] and many courts have local rules requiring disclosure of similar information.[695]

Dispersed litigation makes essential an information network, perhaps formalized as a judicial advisory committee,[696] which can serve as a catalyst for some degree of state–federal coordination. If the litigation warrants it, a meeting of a judicial advisory committee can help to develop relationships

---

693. McGovern, *Rethinking Cooperation*, *supra* note 690, at 1870.

694. *See, e.g., In re* Silicone Gel Breast Implant Prods. Liab. Litig., MDL No. 926, Order No. 1 (N.D. Ala. June 26, 1992), *at* http://www.fjc.gov/BREIMLIT/ORDERS/orders.htm (last visited Nov. 10, 2003).

695. *See, e.g.,* Alaska U.S. Dist. Ct. L.R. 40.2 ("Whenever counsel has reason to believe that an action or proceeding on file or about to be filed in this court is related to another action or proceeding in this or any other federal or state court, whether pending, dismissed or otherwise terminated, counsel shall promptly file and serve a Notice of Related Case."); Ohio N.D., Civ. L.R. 16.3 ("An attorney who represents a party in Complex Litigation, as defined above, shall, with the filing of the complaint, answer, motion, or other pleading, serve and file a Case Information Statement which briefly describes the nature of the case, identifies by title and case number all other related case(s) filed in this and any other jurisdiction (federal or state) . . . .").

696. *See, e.g., In re* Diet Drugs Prods. Liab. Litig., MDL No. 1203, Order No. 1014 (E.D. Pa. Dec. 7, 1999), *at* http://www.fenphen.verilaw.com/search_common.icl (last visited Nov. 10, 2003). Judge Bechtle, the MDL judge, had earlier communicated with and established an informal network of state judges to coordinate the litigation. The settlement agreement with American Home Products expressly provided for the creation of a State Court Judicial Advisory Committee to assist in administering the settlement agreement. *In re Diet Drugs*, MDL No. 1203, Nationwide Class Action Settlement Agreement with Am. Home Prods., at § VIII(B)(3)–(6) (E.D. Pa. Nov. 18, 1999), *at* http://www.fenphen.verilaw.com/mdl_settle/settleagree.pdf (last visited Nov. 10, 2003).

among the judges and ease coordination efforts.[697] An Internet list-serv is another economical way to foster communications among geographically dispersed attorneys and judges. In some mass torts litigation, the National Conference of State Chief Justices, the National Center for State Courts, and the State Justice Institute have helped create and fund coordinating committees of state court judges with significant mass tort assignments. Federal judges with mass tort responsibilities have sometimes participated in person or by presenting written or telephonic reports and updates of federal activities. Such committees help identify specific types of coordination that can be recommended to other state and federal judges assigned to the same type of litigation. It may also be helpful to organize attorneys from states with significant numbers of cases into an advisory committee, to be a channel of communication between the judges and other attorneys.[698]

Federal judges should communicate personally with state court judges who have a significant number of cases in order to discuss mutual concerns and suggestions, such as designating a liaison attorney and judge to communicate with federal counterparts. These communications provide an opportunity to exchange pretrial orders and proposed schedules that help avoid potential conflicts. One special master has concluded that "[t]he earlier and more comprehensive the cooperative intervention occurs in the litigation cycle, the greater the benefits and the less the resistance."[699]

Class counsel generally have the benefit of the common fund doctrine to support payment for their efforts on behalf of the class or consolidated litigants.[700] MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.[701] Without special provisions to com-

697. *See, e.g., In re* Baycol Prods. Liab. Litig., 180 F. Supp. 2d 1378 (J.P.M.L. 2001). The transferee judge convened a conference from June 6–8, 2002, that included twenty-three state judges. Notably, the meeting was held in New Orleans, La., not in the transferee district. The agenda of the conference is available online at http://www.mnd.uscourts.gov/Baycol_Mdl (last visited Nov. 10, 2003).

698. *See, e.g., In re* Diet Drugs, MDL No. 1203, Order No. 39 (E.D. Pa. Apr. 21, 1998), *available at* http://www.fenphen.verilaw.com/search_common.icl (last visited Nov. 10, 2003) (appointing twenty lawyers from fourteen states to serve as members of the plaintiffs' state liaison committee).

699. McGovern, *Rethinking Cooperation*, *supra* note 690, at 1870.

700. *See supra* section 14.12. *See also* Paul D. Rheingold, Mass Tort Litigation § 7:33 (1996 & Supp. 2000).

701. *See, e.g., In re* Diet Drugs, MDL No. 1203, Order No. 467 (E.D. Pa. Feb. 10, 1999), *at* http://www.fenphen.verilaw.com/search_common.icl (last visited Nov. 10, 2003) (ordering defendants to withhold a fixed portion of settlements and pay into a common fund). *See also In re* Silicone Gel Breast Implants Prods. Liab. Litig., MDL No. 926, unnumbered order (N.D. Ala.

pensate state attorneys who cooperate with federal MDL-funded attorneys, the MDL fee structure presents an obstacle to cooperation. State attorneys and judges may realistically perceive that state attorneys' legal work might not be rewarded appropriately even though it advances the national litigation.

There are various ways to handle these fee issues.[702] It is important to allay the coordinating state lawyers' concerns about being fairly compensated. In the diet drug litigation, discovery proceedings were coordinated between the MDL court and the judge presiding over California's statewide consolidated diet drug litigation. The federal and state judges entered orders establishing rates of contribution for lawyers who settled cases using coordinated state–federal discovery.[703] The state judge controlled the fund, eliminating concerns about federal dominance and providing a direct financial link between the state and federal common-benefit activities. In other mass tort litigation, judges have permitted state attorneys who were not part of the MDL plaintiffs' attorneys' steering committee to make claims for MDL-managed funds. In the silicone gel breast implant litigation, the MDL transferee judge appointed a former state judge to rule on attorneys' disputed claims for common fund fees.[704] Lawyers should be encouraged to resolve fee disputes among themselves and to seek judicial intervention only if necessary. It may be helpful to appoint a

Oct. 7, 1998), *at* http://www.fjc.gov/BREIMLIT/ORDERS/orders.htm (last visited Nov. 10, 2003) (denying attorneys' motions for relief from Order No. 13, which required payment of 6% of settlements into a "common benefit" fund). Judge Pointer carefully tailored Order No. 13, entered on July 23, 1993, to comply with the Fourth Circuit ruling that fee orders in MDL cases cannot be applied to cases that were not within the jurisdiction of the MDL transferee court. *See In re* Showa Denko K.K. L-Tryptophan Prods. Liab. Litig. II, 953 F.2d 162 (4th Cir. 1992). To comply with this jurisdictional limit, Judge Pointer applied the assessment to cases that were in MDL No. 926 at any time, except those that were remanded because they were improperly removed from state court. He also extended the obligation to counsel who agreed to it and to "cases in a state court to the extent so ordered by the presiding judge of that court." *Silicone Gel*, MDL No. 926, Order No. 13, § 2(c), *at* http://www.fjc.gov/BREIMLIT/ORDERS/orders.htm (last visited Nov. 10, 2003).

702. For an extensive discussion of mechanisms for allocating fees in mass tort litigation, including case summaries discussing the orders in the silicone gel breast implant and diet drug litigations, see Rheingold, *supra* note 691, §§ 7:33, 7:36, 7:40.

703. *In re Diet Drugs,* MDL No. 1203, Order No. 467 (establishing a deduction of 9% from all settlements of MDL cases transferred from California federal district courts and 6% from all settlements in California state court actions, and creating a coordinated discovery plan). *See also* Rheingold, *supra* note 691, § 7:40 (discussing PTO 467).

704. Thomas E. Willging, Laural L. Hooper, Marie Leary, Dean Miletich, Robert Timothy Reagan, & John Shapard, Special Masters' Incidence and Activity: Report to the Judicial Conference's Advisory Committee on Civil Rules and Its Subcommittee on Special Masters 26–27 (Federal Judicial Center 2000) [hereinafter FJC Study, Special Masters].

special master to coordinate proceedings among the state and federal courts,[705] reducing to manageable proportions the challenge of communicating and coordinating with dozens of judges.

In the silicone gel breast implant and diet drug litigations, state and federal judges created working relationships that came close to achieving a comprehensive approach to state–federal cooperation.[706] Extending that approach to other mass torts "could build upon generally accepted models for resolving local mass torts, such as the use of test plaintiffs for discovery, with settlement discussions based upon the results of the test cases."[707] In the diet drug and silicone gel breast implant litigations, the federal MDL transferee judge took the lead in implementing a comprehensive state–federal discovery plan while state judges presided over individual trials and settlements. The parties achieved the economies of consolidated discovery and developed information about the value of individual cases, providing a basis for aggregated settlements and judgments.

## 20.313 Specific Forms of Coordination

*Aggregation and consolidation decisions.* Discussions between state and federal judges about the timing of class certification hearings and decisions have a beneficial effect on other aspects of cooperation. The prospect that one judge might unilaterally certify a nationwide class and enter a binding national judgment has a chilling effect on cooperative relationships. Joint deferral of decisions on certification and perhaps joint hearings on motions to certify a class enhance the chances that both sets of courts will find appropriate roles in managing the litigation. Judges might agree that the court with most of the cases or the strongest interest should take the lead in certain proceedings, such as class certification.[708]

The court should also consider staying cases until actions in the other tribunal have been tried. Important factors in making that decision include the

---

705. In *In re Silicone Gel Breast Implants Product Liability Litigation*, the MDL transferee judge appointed a special master to serve as liaison between the federal and state judges and to facilitate coordination. *See* Francis E. McGovern, *Toward a Cooperative Strategy for Federal and State Judges in Mass Tort Litigation*, 148 U. Pa. L. Rev. 1867, 1886–87 (2000) [hereinafter McGovern, *Cooperative Strategy*]. *See also* Francis E. McGovern, *An Analysis of Mass Torts for Judges*, 73 Tex. L. Rev. 1821, 1839 (1995) [hereinafter McGovern, *Mass Torts for Judges*].

706. For a discussion of mechanisms for coordinating cases that are dispersed nationwide among state and federal courts, including a brief history of the Mass Tort Litigation Committee (MTLC), which was funded by the State Justice Institute, see *supra* section 20.31.

707. McGovern, *Cooperative Strategy*, *supra* note 705, at 1886.

708. *See, e.g.,* Union Light, Heat, & Power Co. v. United States Dist. Court, 588 F.2d 543 (6th Cir. 1978) (discussing Beverly Hill Supper Club fire class action proceedings on common issues).

extent of pretrial discovery and motions activities in the various jurisdictions, the typicality of the claims, the likelihood that verdicts will provide useful information about the values of other pending cases, and the impact that delay may have on the parties.

*Pretrial motions and hearings.* State and federal judges have often worked together during the pretrial process.[709] They have jointly presided over hearings on pretrial motions, based on a joint motions schedule, sometimes alternating between state and federal courthouses. Joint hearings have used coordinated briefs so that one set of briefs can be used in both state and federal courts, with supplements for variations in the applicable laws and choice-of-law questions.

Cooperative approaches might also include jointly appointing a special master, court-appointed expert, or other adjunct to assist the courts with some aspect of the litigation. Some state courts are not authorized to appoint such adjuncts and may wish to share the benefits of the federal authority.

At a minimum, judges should exchange case-management orders, master pleadings, questionnaires, and discovery protocols. This simple step can encourage judges to adopt the same or similar approaches to discovery and pretrial management.

Also, consider joint appointments of lead counsel, committees of counsel, or liaison counsel to coordinate activities between the courts. Having some overlapping membership among counsel in state and federal cases facilitates cooperation by establishing channels of communication.

*Pretrial discovery.* State and federal judges have considerable experience coordinating and managing nationwide discovery.[710] For example, courts may issue joint orders for the preservation of tangible, documentary, and electronic evidence and for coordinating the examination of evidence by experts in both state and federal proceedings. Early attention to questions concerning expert evidence may be necessary to take advantage of various options for managing such evidence, including the possibility of appointing common experts.[711]

Coordination could involve inviting state judges to participate in a coordinated national discovery program while retaining control of local discovery. Depending on the progress of the state litigation, some aspects of discovery in state cases may in some instances serve as the basis for national

---

709. *See generally*, Schwarzer et al., *Judicial Federalism in Action*, *supra* note 687, at 1690.

710. *See, e.g., In re Diet Drugs*, MDL No. 1203, Order No. 467, 1999 WL 124414, at *4–*6 (order granting, in part, plaintiff's petition for management committee).

711. Joe S. Cecil & Thomas E. Willging, *Accepting Daubert's Invitation: Defining a Role for Court-Appointed Experts in Assessing Scientific Validity,* 43 Emory L.J. 995, 1058–62 (1994) (describing a pretrial procedure designed to identify issues regarding expert evidence and any need for special assistance).

discovery. For example, in the silicone gel breast implant litigation, state judges in Texas had progressed further in discovery than had federal courts at the time the MDL cases were assigned to Judge Pointer. Recognizing the state court's advantage, Judge Pointer "agreed to designate certain Texas depositions as official ones for the entire multidistrict litigation (MDL)."[712] Procedures to minimize duplicative discovery activity include consolidating depositions of experts who will testify in numerous cases and maintaining document depositories. It is important to remember that the rulings of a single court can become preemptive; for example, the first court to reject a particular privilege claim likely will cause the material sought to be protected to become discoverable for the entire litigation.[713]

Specific elements of discovery coordination have included

- creating joint federal–state, plaintiff–defendant document depositories, accessible to attorneys in all states;[714]

- ordering coordinated document production and arrangements for electronic discovery;

- ordering discovery materials from prior state and federal cases to be included in the document depository;

- scheduling and cross-noticing joint federal–state depositions;[715]

- designating state-conducted depositions as official MDL depositions;[716]

- enjoining attorneys conducting federal discovery from objecting to use of that discovery in state courts on the grounds that it originated in federal court;

- adopting standard interrogatories developed by state judges for litigation in their cases; and

---

712. Sandra Mazer Moss, *Response to Judicial Federalism: A Proposal to Amend the Multidistrict Litigation Statute from a State Judge's Perspective,* 73 Tex. L. Rev. 1573, 1574 (1995).

713. *Supra* section 22.6 discusses relevant provisions of case-management orders in the silicone breast implant and diet drugs litigations implementing state–federal coordination of multiple actions in many states. See also *supra* section 22.4 for suggestions about eliciting information that may be useful in planning for state–federal coordination.

714. *See, e.g., In re Diet Drugs,* MDL No. 1203, Order No. 22, ¶ 6 (E.D. Pa. Mar. 23, 1998), *at* http://www.fenphen.verilaw.com/search_common.icl (last visited Nov. 10, 2003) (establishing plaintiffs' document depository).

715. *In re Diet Drugs,* MDL No. 1203, Order No. 467, 1999 WL 124414, at *4–*6.

716. *Id.* (separating the portion of the deposition to be used in the MDL proceedings from portions designed to be admissible in state proceedings).

- coordinating rulings on discovery disputes, such as the assertion of privilege, and using parallel orders to promote uniformity to the extent possible.[717]

*Settlement.* State and federal judges should consider conducting joint comprehensive settlement negotiations, hearings, and alternative dispute resolution procedures to establish case values.[718] Insurance coverage disputes may require special attention and coordination because resolution of the primary litigation may depend on resolution of the coverage dispute.

*Trial.* State and federal judges have developed coordinated management plans for an entire litigation.[719] Joint trials, where separate state and federal juries sit in the same courtroom and hear common evidence, present substantial procedural and practical difficulties,[720] but differences in state and federal procedures have not been insurmountable barriers to useful coordination. Any coordination must be flexible because cases in some state courts will reach trial sooner than those in others. State and federal courts should establish a mechanism to coordinate trial dates so that they do not unduly burden parties or their attorneys with multiple conflicting trial settings. Judges may also set the order and location of trials cooperatively to provide better information as to the diverse range of value of the cases included in the mass tort.

## 20.32  Jurisdictional Conflicts

The pendency of related state and federal actions can cause jurisdictional complexities and conflicts, leading to requests that the federal court either stay or dismiss its proceeding or enjoin state court proceedings. Such injunctions should be a last resort, invoked only after voluntary coordination efforts have failed. An injunction against pending state proceedings, even if authorized by federal statutes and case law (see below, this section, and see also section 21.15), can have a detrimental effect on future efforts to work cooperatively and should be used only as a last resort, if at all.

Federal courts have a duty to exercise their jurisdiction, notwithstanding the mere pendency of parallel or related litigation in state court. Discretion to stay or dismiss the federal proceedings exists, however, in the following circumstances: (1) where a pending state proceeding may decide a pivotal question of state law, the decision of which may remove the need for the

---

717.  *See* Coordinating Proceedings in Different Courts, *infra* section 40.41.
718.  Schwarzer et al., *Judicial Federalism in Action*, *supra* note 687, at 1714–21.
719.  *See, e.g., id.* at 1702–03 (describing the Ohio asbestos litigation).
720.  *See id.* at 1727–32.

federal court to decide a constitutional issue before it;[721] (2) where state law claims are alleged and federal court litigation would impair a comprehensive state regulatory scheme;[722] and (3) in order to avoid piecemeal litigation where the state court has previously acquired jurisdiction of the res and is the more convenient forum.[723]

Where the action alleges both federal claims and related state law claims joined on the basis of supplemental jurisdiction, 28 U.S.C. § 1367(c) permits the district court to decline to exercise jurisdiction over a state law claim if the claim raises a novel or complex issue of state law, if it substantially predominates over the federal claims, if the district court has dismissed all federal claims, or, in exceptional circumstances, if there are compelling reasons for declining jurisdiction. In some circuits, the court's discretion to dismiss claims entertained under its supplemental jurisdiction has been held to be considerably narrower than under the former doctrine of pendent jurisdiction.[724] In deciding whether to entertain the state law claims, the court should consider whether dismissal or remand will result in substantially duplicative litigation and unnecessary burdens on parties, witnesses, or the courts.

The federal court's power to interfere with parallel or related proceedings in state court is limited by the Anti-Injunction Act, which prohibits federal

---

721. R.R. Comm'n v. Pullman, 312 U.S. 496 (1941).

722. Burford v. Sun Oil Co., 319 U.S. 315 (1942).

723. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); *see also* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983).

724. Some courts have emphasized that discretionary dismissals are limited to exceptional circumstances that are as compelling as the circumstances specified in 28 U.S.C. § 1367(c)(1)–(3) (West 2003) and have held that the statute does not authorize a court to decline jurisdiction based on the amount of judicial time required to adjudicate the state claim. *See* Itar–Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446–48 (2d Cir. 1998) and cases cited therein; Executive Software N. Am., Inc. v. United States Dist. Court, 24 F.3d 1545, 1555–62 (9th Cir. 1994). But other circuits have taken a different view of what constitutes "exceptional circumstances" under section 1367(c). *See* Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("[T]he district court, in reaching its discretionary determination on the jurisdictional question, will have to assess the totality of the attendant circumstances."); Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("Section 1367(c) . . . was intended simply to codify the preexisting pendent jurisdiction law, enunciated in *Gibbs* and its progeny . . . ."). Where a case has been removed under 28 U.S.C. § 1441(c) (West 2003), discretion to remand the separate and independent state law claim may be broader. *See* Moralez v. Meat Cutters Local 539, 778 F. Supp. 368 (D. Mich. 1991) (remanding federal and state claims removed under 28 U.S.C. § 1441(c) on the grounds that the separate and independent state law claims predominate). *See also* Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611 (4th Cir. 2001) (finding inherent authority to remand state law statutory claims after federal claims involving some plaintiffs settled, based on finding that state law claims predominated).

courts from enjoining or staying state court proceedings[725] except as expressly authorized by an act of Congress,[726] or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. The exceptions under the Act are narrowly construed.

   The pendency of a parallel state court action does not by itself warrant an injunction, even though an impending judgment in that action would be *res judicata* in the federal action.[727] Similarly, the fact that persons who fall within the scope of a class certified in a federal court action have filed parallel actions in state court does not afford a basis for interfering with the state court actions during the pendency of the federal action. Accordingly, when defining a proposed class, a federal court should consider whether a class can be defined so as to avoid unnecessary conflict with state court actions.[728] However, where a class has been certified under Federal Rule of Civil Procedure 23(b)(3), and where class members have failed to avail themselves of their right to opt out and litigate their claims independently in state or federal court, a district judge may enjoin those members from initiating or proceeding with civil actions in other state or federal courts.[729]

   In limited circumstances, federal courts have used the All Writs Act[730] and the necessary-in-aid-of-jurisdiction exception to the Anti-Injunction Act[731] to protect their exercise of jurisdiction. The Anti-Injunction Act enables a judge to issue orders directed to nonparties in the pending litigation.[732] Generally, those statutes have been used to effectuate global settlements in large scale litigation by enjoining or removing to federal court parallel state court litigation that would otherwise frustrate the adoption or implementation of comprehensive class settlements approved by the federal court as binding on

---

725. 28 U.S.C. § 2283 (West 2002). *See also* Younger v. Harris, 401 U.S. 37 (1971). Note, however, that *Younger* abstentions have been applied to civil cases only in limited circumstances involving significant state interests. *See, e.g.*, Pennzoil v. Texaco, 481 U.S. 1 (1987).

726. The prime example of such authorizing legislation is 42 U.S.C. § 1983 (2000). *See* Mitchum v. Foster, 407 U.S. 225 (1972).

727. Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 642 (1977).

728. Where the class is certified under Fed. R. Civ. P. 23(b)(3), class members have the right to opt out and litigate their claims independently in state or federal court.

729. *See infra* section 21.42 at notes 934–42.

730. 28 U.S.C. § 1651(a) (West 2002) authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

731. The Anti-Injunction Act bars federal courts from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (West 2003).

732. *See* United States v. N.Y. Tel. Co., 434 U.S. 159 (1977).

the parties to the state court litigation,[733] or that would require relitigation in state court of a matter finally decided in federal court.[734] Courts have also enjoined state court stay orders that would otherwise prevent a federal court from proceeding with pretrial aspects of the litigation.[735]

---

733.  *In re* "Agent Orange" Prod. Liab. Litig., 996 F.2d 1425 (2d Cir. 1993), *cert. denied sub nom.* Ivy v. Diamond Shamrock Chems. Co., 510 U.S. 1140 (1994); *In re* Baldwin-United Corp., 770 F.2d 328 (2d Cir. 1985). *But cf.* Brown v. Ticor Title Ins. Co., 982 F.2d 386 (9th Cir. 1992), *cert. dismissed as improvidently granted*, 511 U.S. 117 (1994) (due process requires that plaintiffs with monetary claims be given right to opt out of class action settlement); *In re* Real Estate Title & Settlement Servs. Antitrust Litig., 869 F.2d 760 (3d Cir. 1989).

734.  *See* Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067 (11th Cir. 1993).

735.  *See, e.g.,* Winkler v. Eli Lilly & Co., 101 F.3d 1196, 1202–03 (7th Cir. 1996) (holding that an MDL transferee judge had authority to issue an injunction to protect the integrity of an order barring discovery of a particular matter); *In re* Columbia/HCA Healthcare Corp., Billing Practices Litig., 93 F. Supp. 2d 876 (M.D. Tenn. 2000) (issuing injunction under All Writs Act against competing motion to compel discovery filed in state court).