**Defense Exhibit 2**

# GUIDELINES AND BEST PRACTICES

# FOR LARGE AND MASS-TORT MDLS

# BOLCH JUDICIAL INSTITUTE, DUKE LAW SCHOOL

## (SECOND EDITION)

Duke Law School
September 2018

# CHAPTER 6
# FEDERAL/STATE COORDINATION

MDLs are no longer islands.  A transferee judge increasingly confronts the reality of other proceedings and actions, moving forward outside the MDL court's jurisdiction.  Case-management strategies must therefore account for the impact of developments in parallel state court litigation, as well as the specter of regulatory or agency actions.  The degree to which coordination is possible and the contours of that interaction are driven by case-specific factors − the individuals and personalities involved, the degree of overlap in players between state and federal cases, the procedural devices available in and degree of flexibility available to judges in each of the applicable states for coordination, the extent to which state cases are likely to reach trial during the pendency of the MDL and the degree to which they will be perceived as helpful or distinguishable from the MDL cases, to name just a few.  (Indeed, in some jurisdictions there is no trial judge assigned until a month before trial, so there is little potential for intercourt coordination.  In these cases, the transferee judge may focus on mechanisms for facilitating coordination by counsel themselves, which are also detailed in this chapter.)

The path taken by any transferee judge will therefore always be a unique one.  This chapter explores the extent to which judges and attorneys have found coordination to be helpful in prior cases and present some of the varied ways that this coordination can occur.  The *MDL Pocket Guide for Judges* is a good resource in this regard, which this chapter does not seek to duplicate.  Instead, this chapter is intended as a companion that provides judges' and attorneys' wisdom and words of caution about the ways in which that guidance has been implemented in prior cases.

> **GUIDELINE 13**:  Effective coordination between the federal and state courts in an MDL action promotes cooperation in scheduling hearings, conducting and completing discovery, facilitates efficient distribution of and access to discovery work product, avoids inconsistent federal and state rulings on discovery and privilege issues, if possible, and fosters communication and cooperation among litigants and courts that may facilitate just and inexpensive determination.

The strongest proponents of consolidation have long advocated "inter-system" cooperation and interaction between MDLs and parallel state proceedings starting sooner, rather than later.[226]  The *Manual for Complex Litigation* has regularly encouraged federal judges to communicate "informally" with their colleagues at the state level.[227]  Those who support "inter-system" collaboration have suggested a variety of tools, including joint scheduling, joint discovery plans, a common discovery master, and joint settlement initiatives.[228]  Such

---

[226] *See* Judicial Panel on Multi-District Litigation and Federal Judicial Center, *Ten Steps to Better Management:  A Guide to Multi-District Litigation for Transferee Judges* (2014), p. 7.

[227] *See Manual for Complex Litigation (Second),* §31.31 (1985); *Manual for Complex Litigation (Fourth)*, §31.312 (2004); *see also* Catherine R. Borden, Emery G. Lee, III, *Beyond Transfer:  Coordination of Complex Litigation in State and Federal Courts in the 21st Century,* 31 Rev. Litig. 997, 1005 (2012).

[228] *See* Schwarzer, Weiss, and Hirsch, *Judicial Federalism in Action:  Coordination of Litigation in State and Federal Courts,* 78 Va. L. Rev. 1689 (1992); Borden and Lee, *supra.*

coordination requires communication and cooperation among the courts themselves, among counsel, and between counsel and courts.

Communication is an essential component of the cooperation process in part because of the degree to which state laws and state judicial norms vary.  State judges may be in a position to cooperate fully with the MDL, coordinating to the greatest extent possible.  But other judges may be concerned about changing the speed with which the cases on their docket move forward based upon requests from a third-party (i.e., the MDL judge).  Some state judges may wish to limit what they view as ex parte communications with another judge, while others inform the parties that they will be communicating with the MDL judge (and, if applicable, other judges with parallel cases) and then includes this notation in an order to avoid any later confusion.  Still other judges' participation may be impacted by the numerosity of similar cases upon their own docket − does the judge just have a single parallel case or hundreds of parallel cases (whether as the result of individual filings or a state coordination rule akin to the federal MDL statute)?

Achieving the goal of reducing discovery costs and duplication in MDL litigation that is accompanied by related actions in state courts, such as mass tort and consumer cases, depends upon effective coordination.  Coordination is an action as well as a principle, and requires ongoing effort throughout the course of the proceedings.  If state court actions are pending in many districts or states, communication among judges is a concrete way to demonstrate the reality of federal-state coordination and inter-judicial collegiality.  It also gives a role and voice to counsel who may be active in the state court proceedings, but may not have sought, or obtained, leadership appointments in the MDL itself.

The way in which this communication and coordination is manifested can take a variety of forms.  In good economic times, some federal judges have been able to arrange in-person meetings with their state counterparts, going to visit each individual court, as a mechanism to show respect for the state judge, enhance relationship building, and in turn foster trust and understanding between the courts.  Other judges have convened joint hearings, which have in turn permitted this opportunity for in-person interaction and discussion before the hearing. Others have merely coordinated on matters, formally or informally; for example, some transferee judges have set up periodic teleconferences in which all the parallel court judges participate to make sure that the cases are moving along at about the same pace and, if not, ensuring the judges are aware of the divergence and the impact it may have on the parties' actions in their own cases. So long as each court retains its independence to determine procedural and substantive matters for itself, there should be no problem with such communications.  But, at a minimum, most MDL judges have found that having a website updated with new orders within hours is a helpful way to communicate with state judges and state parties, particularly in cases in which more formal coordination is not favored for the strategic reasons described above.

BEST PRACTICE 13A: The transferee judge should set a cooperative tone early in the litigation by engaging in outreach and communications with state court judges, by specifying the time and manner in which counsel are to report on the existence, status, and progress of related actions in other jurisdictions, and by encouraging and facilitating ongoing coordination.

The coordination "best practices" highlighted in this chapter have been effective aids to courts in achieving functional inter-jurisdictional coordination. As the MDL court undertakes this process, it should seek to create mechanisms for bidirectional information sharing with the parallel cases with respect to not only the case itself, but also the judicial expectations (whether driven by statutory provisions, normative considerations, or case-specific exigencies) about how the cases will proceed. The "5C's" − communication, cooperation, civility, coordination, and candor − are helpful touchstones in framing one's approach.[229]

BEST PRACTICE 13B: In issuing the initial scheduling order, the newly appointed transferee judge should consider including provisions tailored to facilitate effective federal-state coordination.

Possessing up-to-date information on the status and progress of related state court proceedings is the first step to effective federal-state coordination. Federal-state coordination should be included as a discussion item on the agenda provided in the initial conference order.

BEST PRACTICE 13B(i): The transferee judge should direct liaison counsel for plaintiffs and defendants to provide a report on the existence and status of related state court litigation, either in writing in advance of the initial conference or orally at the conference itself to inform this discussion. Counsel should be requested to provide contact information for the state court judges before whom related proceedings are pending.

As lawyers have grown accustomed to substantial levels of coordination, transferee judges have found that the appointment of appointed liaison counsel is "essential in most MDLs." Most judges prefer to appoint one from the plaintiffs' side and one from the defense side. In addition, state court judges may also decide to appoint liaisons; typically these are counsel who have cases before the state court and are actively involved in the federal MDL as well.

---

[229] For the genesis of this wisdom, see Francis McGovern, *Toward a Cooperative Strategy for Federal and State Judges in Mass Tort Litigation*, 148 Penn. L. Rev. 1867 (2000) and Francis McGovern, *Rethinking Cooperation Among Judges in Mass Tort Litigation*, 44 UCLA L. Rev. 1851 (1997).

BEST PRACTICE 13B(ii):  Similar reports by liaison counsel should be made a feature of every subsequent status conference, so that the transferee judge is apprised, on an ongoing and current basis, of hearing schedules, discovery activities, trial dates, and other important events and rulings in the state courts. These recommendations can be scaled based upon the needs of the particular litigation.

In MDLs with few parallel cases, the lead or liaison counsel may be responsible for these tasks and may often simply apprise the judge of "no action" in the state courts during these conferences.  In contrast, in some MDLs there can be a large number of cases in state court − in some cases even approaching the number of individual cases in the MDL.  In these cases, the judge may consider appointing a state-federal liaison counsel to focus exclusively on these tasks and provide regular and timely updates to the MDL court, the state courts, the PEC, and state court counsel.

BEST PRACTICE 13B(iii):  Counsel should be advised at the initial conference that such communications between the MDL judge and state court judges will take place.  While counsel should be given the opportunity to object, there will rarely be a well-founded objection to such communications, which have become a familiar feature of multi-jurisdictional proceedings.

Many MDL judges initiate communication with the state court judges themselves, by telephone or email, to introduce themselves and to invite ongoing communications.  State judges have commented that in some jurisdictions their resources are limited such that, for example, a letter is highly likely to go unanswered because the judge does not have a secretary, while a call from the transferee judge would be immediately answered.  Some judges prefer email communications, while others acknowledge never checking the account; thus there is no single "right" communication method to reach every judge.  As such, the transferee judge may want to consider trying different, successive methods of outreach, rather than assuming an unanswered communication is a sign that the state judge is unwilling to communicate.

Counsel may, or may not, actively desire such coordination.  While coordination saves time and money, there may, literally, be competing considerations.  Many judges have noted that particularly at the outset, they underestimated the extent to which plaintiffs' counsels' concerns about common benefit assessments would color their perceptions of state-federal coordination.

BEST PRACTICE 13C:  In an MDL action with parallel court actions, state and federal judges should communicate informally as needed to correct perceived duplication and should explore whether formal measures may, or may not, be efficient or justified.

Enthusiasm for tightly-knit or formal cooperation between state and federal judges has waxed and waned.  Achieving an optimal level of coordination is an art, rather than a science, and informal coordination may, in a given litigation, be all that is necessary or feasible. In the literature, examples of thorough-going coordination have typically been limited to state courts in

the same jurisdiction as the federal transferee court.[230]  Additionally, not all states have corresponding mass consolidation statutory counterparts.  Coordination even with the many that do may be difficult.[231]  The circumstances of a particular litigation landscape may weigh for, or against, a high degree of coordination.

The following considerations should be kept in mind.  First, the organization of a federal MDL – by itself – is complex and demanding.  It presents the transferee judge with "difficult management, intellectual, and personal challenges."[232]  If a judge must layer on top of those challenges an ongoing coordination with state court cases, the burdens may overwhelm and delay judicial administration.  Second, there are federalism concerns raised by intensive and formal interaction, e.g., will state court judges yield their superior knowledge of state law and their own notions of effective procedure – for example, early trials – to their federal counterparts?[233]  Third, some judges have expressed concerns about *ex parte* communications with state court colleagues.[234]  But inter-judicial communication among courts charged with managing similar cases, involving the same defendants and often the same lawyers, may be highly useful to avoid scheduling conflicts (such as for hearings and trials) even if additional coordination is not accomplished.

More commonly, the concern is with the extent to which joint hearings may be conducted.  Many judges have taken the view that such joint hearings are proper and effective methods of allowing the attorneys to present evidence, so long as each judge then decides the motion on his or her own.  (To this end, each judge must be permitted to ask questions and otherwise remain unrestricted in his or her ability to obtain the information necessary to a ruling; failure to do so may result in due process objections, as well as a perception of disrespect by the judge who was not afforded the opportunity to question counsel.)  However, some judges have expressed hesitation about whether such a joint hearing is proper.  While clarification about the legality of these innovative procedures would be helpful, in the interim, it is sufficient for our purposes to simply note that this is an area in which courts have taken both approaches and that a transferee judge will want to assess the developing state and federal law at the time, to determine whether a joint hearing would be both efficient and permissible.

---

[230] *See* Schwarzer, Weiss and Hirsch, *supra*, for case studies.

[231] At least fifteen states have enacted analogues to the MDL statute and consolidation scheme.  They are: California, Cal. Civ. Proc. Code §§404-404.9, Colorado, Colo. R. Civ. P. 42.1(g) (2014) (amended by C.O. 0013), Connecticut, Conn. Gen. State §51-347b (West 2014), Illinois, Ill. Sup. Ct. R. 384, Maryland, Md. R. 2-327(d), Massachusetts, Mass. Trial Ct. R. XII, New Hampshire, N.H. Super. Ct. R. 113, New Jersey, N.J. Super. Tax & Surrogate's Ct. Civ. R. 4:38-1, 4:60-1, New York, N.Y. Comp. Codes R & Regs. Tit. 22, §202.69 (West 2014), Oklahoma, Okla. Const. art. VII, §§4, 6, Oregon, Ore. R. Civ. P. 32L(1)(L), Pennsylvania, Pa. R. Civ. P. No. 213, Texas, Tex. R. Jud. Admin. §13.10, Virginia, 108Va. Code Ann. §§8.01-267 to 8.01-267.9 (Lexis 2014), and West Virginia, W. Va. Code §56.9-1 (LexisNexis 2014).  For a discussion of the statutes in these states, *see* Yvette Ostolaza, Michelle Hartmann, *Overview of Multidistrict Litigation Rules at the State and Federal Level,* 26 REV. LITIG. 47, 69-75 (2007).  *See also* Mark Herrmann et al., STATEWIDE COORDINATED PROCEEDINGS: STATE COURT ANALOGUES TO THE FEDERAL MDL PROCESS (West 2d ed. 2004).

[232] *Ten Steps to Better Case Management, supra*, p. v.

[233] *Schwarzer, et al., supra*, pp. 1743-48.

[234] *See* Borden and Lee, *supra*, at 1017-18.

BEST PRACTICE 13D:  If multiple jurisdictions are involved, the transferee judge should consider procedures or mechanisms to facilitate state/federal court coordination, to provide periodic reports to each of the courts, to assist in coordinating discovery and hearing schedules, and to schedule joint federal-state court status conferences and hearings.

Many cases involve parallel federal and state court proceedings, and coordination with the state litigation will ensure that the cases are conducted as efficiently as possible.  Counsel in the federal and state cases can, for example, conduct joint depositions of expert witnesses that will provide testimony and reports in both proceedings.[235]  A number of transferee judges have noted that at the outset, they did not anticipate the extent to which procedural variation between states and between state and federal procedure would impact coordination (e.g., differences in the length of depositions or number of interrogatories). While these differences should be resolved through party negotiation, it is helpful for the judges to be aware of these dynamics, which may lead not only to conflict between the parties but also to opposition to coordination by certain interest groups.

Major hearings can be coordinated, such as *Daubert* proceedings.[236]  As discussed in the prior section, there may be some variation in the extent to which state or federal law permits joint hearings.  However, lesser forms of coordination are possible as well.  For example, counsel noted that inconsistent deadlines between state court and federal court proceedings could be substantially disruptive at best, and result in strategic gaming at worst.  One additional word of caution from state judges related to a sense that while coordination was permissible and helpful, that requests from transferee judges to delay ruling on a motion, delay a trial, or to discuss particular motions' legal merit in advance could be viewed as improper.  Some judges expressed a generalized concern with incorporating ex parte requests to change the court's ruling, while others expressly noted state law mandates − for example, a Texas mandate to get all asbestos cases to trial in six months conflicted with a transferee judge's request to stay the case for many years.  Thus, while coordination can be helpful, the transferee judge should be aware of and sensitive to potential well-reasoned bases for state court judges to oppose certain requests.  Indeed, being aware of these potential minefields at the outset, a transferee judge may approach consolidation in a more considered manner and avoid unintentionally damaging the relationship with the state court judge.

A transferee judge may want to designate a member of the committee to serve as a liaison or else direct lead or liaison counsel to communicate regularly with counsel in the state litigation.[237]  Judges may also consider appointing a special master to assist in coordination with the state court litigation.[238]

---

[235] *Managing Multidistrict Litigation in Products Liability Cases* § 6(a); *see also* Case Management Order No. 12 Regarding Expert Deposition Discovery at 2, *In re Phenylpropanolamine (PPA) Products Liability Litigation*, MDL 1407, No. 2:01-md-1407-BJR (W.D. Wash. Dec. 23, 2002) (ECF No. 1298).
[236] Pretrial Order 143 Regarding *Daubert* Proceedings on Stroke, *In re Avandia Marketing, Sales Practices and Product Liability Litigation*, MDL 1871, No. 2:07-md-01871-CMR (E.D. Pa. Oct. 21, 2011) (ECF No. 1878).
[237] *MCL* § 10.225.
[238] *MCL* § 20.312; *see also* Francis E. McGovern, *Toward a Cooperative Strategy for Federal and State Judges in Mass Tort Litigation*, 148 U. Pa. L. Rev. 1867, 1886-87 (2000).

BEST PRACTICE 13E:  The MDL judge should direct designated counsel (typically, lead or liaison counsel for each side) to provide information on the status of related state court actions in the written status conference report submitted several days before each regularly scheduled status conference.

The transferee judge will often find it helpful to delegate certain information functions to attorneys, relieving the burden from the court while expanding the available pool of information at the judge's disposal.  Such a report should include information on the number and location of recently-filed state court cases; trial dates, discovery deadlines, status conferences, and other key dates in such actions; and the status of removal and remand motions.  The transferee judge or the designated state court liaison counsel can assure ongoing communication by disseminating these status reports to all courts and counsel.

During the pendency of an MDL, the transferee judge also may be expected to coordinate with state courts handling parallel state actions.  Such coordination may include the creation of nationwide discovery plans; the entry of consistent evidence-preservation orders; the coordination of a national calendar; encouraging state-federal cooperation; and familiarization with state courts, specifically their practices for consolidating cases and case management.[239]  It is especially important in the multiple-class-action context to coordinate efforts between the transferee judge and state courts because unilateral action by a single court to certify a class or assert nationwide jurisdiction may undermine coordination efforts among all courts.[240]  It is also important that attempts by the transferee judge to coordinate the litigation are not perceived as attempts to dominate state courts.[241]  To that end, clear communication between the transferee judge and state courts is essential.  In some cases communication may be facilitated through the appointment of a special master[242] or advisory committees.[243]  Transferee judges may consider initiating cooperative efforts with state judges during the initial MDL stages, because early cooperation may help avoid potential conflicts later on in the process.[244]

---

[239] *MCL* § 20.311.  Some states have adopted procedures for assigning complex multiparty litigation to a single judge or panel or have created courts to deal with complex business cases.  *Id.*  The transferee judge may consider becoming familiar with such efforts in order to take advantage of efficiencies presented by state court innovations.
[240] *Id.*
[241] *Id.*
[242] *Id.*
[243] *MCL* § 20.312.
[244] *Id.*  Transferee judges may look to the silicone gel breast implant and diet drug litigations as models for state-federal cooperation.  *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, MDL No. 926; *In re Diet Drugs*, MDL No. 1203.  In those cases, the transferee judge took the lead in implementing a comprehensive state-federal discovery plan while state judges presided over individual trials and settlements.  *See MCL* § 20.312.  The parties achieved the economies of consolidated discovery and developed information about the value of individual cases, providing a basis for aggregated settlements and judgments.  *Id.*

BEST PRACTICE 13F:  The transferee judge should provide accessible, up-to-date information on the status and progress of the MDL proceedings, including the status and progress of coordination with the state courts, and specific pages for each MDL on the district court's website.  The MDL-specific site should provide a calendar, access to important orders, hearing transcripts, and a list of key events.[245]

As noted above, status conferences may be held jointly between the MDL court and one or more state courts.  As the *Manual for Complex Litigation,* § 20.313 describes the federal-state coordinated pretrial process:

State and federal judges have often worked together during the pretrial process.  They have jointly presided over hearings on pretrial motions, based on a joint motions schedule, sometimes alternating between state and federal courthouses.

Telephonic access via a toll-free number can facilitate participation by interested counsel and by multiple judges, while minimizing the cost and inconvenience of travel.  Video conferencing has also been used successfully where facilities are available.

BEST PRACTICE 13G:  In MDL and state court proceedings, the judges should consider holding joint pretrial hearings, including joint status conferences in a variety of jurisdictions, co-presiding over each conference with the state court judge in that jurisdiction.

For example, MDL courts and state judges have convened joint *Daubert/Frye* hearings so that oral argument by counsel, and testimony by experts whose qualifications are being challenged under the *Daubert* and *Frye* standards, need not appear and argue or testify more than once.  Other courts have even allowed for the judges to meet for presentations by the lawyers outside the motion context; for example, for presentations on the applicable science issues or bringing the judges up to speed on key issues in the case.  Teleconferencing and video conferencing can be used to facilitate such joint hearings if it is not practicable for all judges to be present in person.  However, as noted before, some judges have expressed a procedural concern with joint hearings, although there is ample precedent and support in the *Manual on Complex Litigation* at § 20.313.

At least at the federal level, this may be abated by the recent *Arkison* decision.  In *Arkison*, the appellant argued that while an Article III judge ultimately ruled on a particular issue de novo, the judge might have given practical deference or otherwise been swayed by a non-Article III judge – there, a bankruptcy judge.  The Supreme Court upheld the validity of the process, holding that so long as the district court judge indicated he was reviewing the case de novo, this was sufficient.  By extension, while the reasoning of the state court judges in their questioning at oral argument may influence the Article III judge, this should not create any constitutional hurdle.  For this reason, counsel should be encouraged to cite to the specific law of each jurisdiction in briefing a motion, even if it will be heard in a joint hearing.

---

[245] *See MCL* § 40.3.  For a current example, *see, e.g.*, The Eastern District of Louisiana's official court website for MDL-2179 Oil Spill by the Oil Rig "Deepwater Horizon," http://www.laed.uscourts.gov/OilSpill/OilSpill.htm.

The high cost of experts may also be reduced, and expert deposition scheduling difficulties reduced, by suggesting the use of common experts, coordinated expert disclosures, and expert discovery.[246]

> BEST PRACTICE 13H:  The transferee judge can also promote coordination through its supervision of the litigation process; for example, the court may encourage the parties to establish a common discovery-product depository (now most frequently a password-protected online collection rather than a physical depository) to avoid duplicative efforts.

Even if coordination is not possible between the judges, the parties may themselves coordinate − for example, creating a document depository, issuing joint deposition notices, and the like.  However, the transferee judge may still have a role in facilitating these private attempts at coordination.  In particular, federal/state coordination may be hindered by concerns that privilege may be lost or waived by production of information, or discovery rulings, in one jurisdiction.  Federal Rule of Evidence 502 now protects parties from the production of privileged information, without the need to show mistake or inadvertence; privileged documents that have been produced may be "clawed-back."[247]  Rule 502(d) orders are controlling in state courts under Rule 502(g).

> BEST PRACTICE 13I:  If no party requests the court to issue a Rule 502(d) order, the transferee judge should consider raising the matter on its own.

> BEST PRACTICE 13J:  When feasible without causing discovery delays, the transferee judge should coordinate with state court colleagues to set uniform schedules in related federal and state proceedings for document production, production of privilege logs, and resolution of privilege disputes and other objections.

Conflicts can arise between counsel, particularly when clear understandings are not reached in advance with respect to issues like what rules will govern the length of a jointly noticed deposition, the allocation of that time, and the order in which counsel will question the witness.  The transferee judge does not have power over parties that are not before it − and, while technically it may issue an order applicable to parties that appear in both cases (namely the defendant), or exert informal pressure over counsel that appear in both cases, this approach is disfavored.  Instead, the better approach for the transferee court may simply be to ask questions of the parties to ensure that they have reached agreement on these issues, rather than issuing direct orders.

---

[246] See "Ten Steps to Better Case Management: A Guide for MDL Transferee Judges" (Judicial Panel on Multidistrict Litigation/Federal Judicial Center 2014), § VII.  Coordinate with Parallel State Court Cases.
[247] For a recent example of such a common benefit order, see "Amended Order No. 25:  Common Benefit Order," MDL No. 2151 in Toyota Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation (C.D. Cal. 2003), http://court.cacd.uscourts.gov/Cacd/RecentPubOp.nsf/Toyota?OU

If the court believes a more aggressive role would be valuable, a number of options exist. One approach is for the MDL court and state courts to appoint a single special master, who then has the authority to coordinate discovery across all of the cases. Transferee judges that have used joint appointments report that it can be incredibly helpful in ensuring that discovery proceeds smoothly, but note that it takes the right case, right parties, and right situation for a joint appointment to be feasible.

Transferee judges should also be sensitive to the reality that discovery may be proceeding at a different pace or with different depth in the state courts. On the one hand, the MDL process will (in most cases) have triggered a months-long delay in the federal cases, while the state cases continued moving forward. On the other hand, the MDL may have substantially greater resources than the state litigation, particularly if the first state cases moving forward are single-plaintiff cases prosecuted by firms with only one or a handful of clients with similar claims. This disconnect may be particularly true when the state lawyers want to move ahead with their cases outside of the MDL process; typically, in these cases, the state lawyers report having no desire to have years of discovery, but simply want to move their cases forward to trial.

While some transferee judges have reported a perception that state court trials are disruptive, others have noted that it is not a problem − it is just a different way forward. In most cases, state court trials will have moved forward as a result of counsel's strategy, but it will give the parties some additional information. In some cases, it will be helpful and provide some insight as one of many potential bellwether data points. In other cases, the result is seen as an outlier by both sides whether for factual, legal, or decisionmaker-based reasons, and yields less information. In many cases the state verdict will either have no effect or simply provide a data point to the MDL leadership. Under this view, state court trials should be viewed not as a universal problem, but instead as a moment to revisit the MDL's path. Has the state verdict increased or decreased the parties' preference for a settlement end-game, rather than other potential paths to resolution? What steps can the court take to help the parties move toward resolution in light of these inputs?

Both counsel and transferee judges have expressed the unified warning that while coordination can be helpful, at the end of the day the parties' buy-in is driven by the different strategy decisions of plaintiffs' and defense counsel, by the differing procedural and substantive rules of the courts, and the shadow of fees and assessments. Thus, as the transferee court begins considering its own discovery rulings and the potential for state coordination, considering these pragmatic factors that will drive the attorneys can assist the judge in anticipating potential objections or conflicts, rather than being caught off-guard or pressed into a purely responsive mode.

BEST PRACTICE 13K:  Discovery decisions should be made available to all courts.

BEST PRACTICE 13L:  In an MDL involving multiple jurisdictions, the transferee judge should consider the *joint* appointment of a special master among multiple courts to review disputed documents *in camera* and issue a report and recommendation to all courts.

MDL courts may appoint special masters under Fed. R. Civ. P. 53 with the specific duty of facilitating federal/state coordination.  This was done in MDL No. 926, *The Silicone Gel Breast Implants Litigation.  See Manual for Complex Litigation*, § 20.311.  Similar coordination may also be introduced by cooperating with the state courts to appoint a common special master with a particular function, such as discovery.  For example, in *In re Bextra & Celebrex Marketing, Sales Practices and Products Liability Litigation*, MDL-1699, the MDL transferee court and the New York state judge presiding over New York State coordinated proceedings jointly appointed a retired federal district judge to serve as a joint discovery special master.  This special master's duties expanded, to include mediation and settlement, as the litigation progressed.  In ruling on matters, the special master should issue rulings with citations applicable to each affected jurisdiction, in order to facilitate review by the applicable judges − and if necessary, appeal.

BEST PRACTICE 13M:  The transferee judge may appoint a "state court liaison" or "state/federal liaison" from among plaintiffs' (or defendants') counsel who are active in the MDL, in order to provide transparency by submitting periodic reports on the status and progress of state court proceedings and to assist in assuring that discovery work product is made appropriately available to those who are litigating in state courts.

Typically, access to MDL discovery and work product is provided under a "common benefit" or "assessment order" that spreads the costs of common benefit discovery, experts, and other work product on a contingent basis, among all plaintiffs' counsel.

Anecdotes exist about transferee judges that have attempted to pressure plaintiffs' counsel into moving their cases into federal court, into the MDL.  It may therefore be appropriate to mention at this juncture that there are strong reasons that attorneys may maintain cases in state court, even while participating in earnest in the MDL.  For example, the case may be one as to which there is no basis for federal jurisdiction.  Or, it may be one as to which the attorney believes the particular client will obtain a better result in state court; an attorney's ethical obligation to pursue the best strategy for each client is not abridged even in aggregation, and this decision should be respected.  Likewise, defendants may have valid reasons for aggressively pursuing claims in state court, opposing removal, or opposing global settlement.

Far from these reports of transferee judges "punishing" state court lawyers by not appointing them to leadership positions, experienced transferee judges report that they actually prefer to have some attorneys in leadership who have cases in both courts, because it helps the judge to know what is going on in parallel cases.  Moreover, if the parties move toward settlement as the MDL's endpoint, this overlap may be helpful in exploring the viability of and

objections to a global settlement.  In addition, the transferee judge may also consider using joint committees on targeted issues, like fees or settlement, drawn from both the federal and state courts.

BEST PRACTICE 13N: The transferee judge should consider issuing a deposition protocol order that assigns a specific percentage of deposition time to state counsel.

Participation by state court counsel in MDL depositions ensures that these depositions are complete and non-duplicative.  Depositions may be "cross-noticed" in the MDL and state cases. A joint federal-state counsel committee can be appointed to take responsibility for the scheduling and conduct of depositions.  Some MDL courts have facilitated scheduling discovery coordination by including in the court-appointed leadership structure counsel who are active in both the MDL and state cases.  As noted previously, the transferee judge's order will not bind the state parties but instead would only govern the federal counsel's treatment of the state parties.  If the transferee judge anticipates that greater certainty is necessary for the parties, the judge may consider coordination with the state court judges on the appointment of the same special master for discovery, such that a single individual would then be empowered to resolve discovery disputes.  If this approach is taken, the special master should be encouraged to cite to the law of each applicable court in order to facilitate review by the court.

The Federal Judicial Center, the National Center for State Courts, and the National Judicial College, often working jointly, have collected and developed materials to assist and support federal and state judges in achieving effective case management over complex litigation, including the management of MDLs in coordination with related state proceedings.  These materials include the comprehensive *Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004), which addresses coordination in §§ 20.3-20.33 and 22.4.  Other shorter, topic-specific guides available on the Federal Judicial Center website include *Managing Class Action Litigation:  A Pocket Guide for Judges;* the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide; Coordinating Multijurisdiction Litigation: A Pocket Guide for Judges* (2013) [248] (prepared by a committee composed equally of federal and state judges), and a listing of state-federal judicial education programs.

---

[248] Also available at http://multijurisdictionlitigation.wordpress.com.