# Defense Exhibit 4

# Ten Steps to Better Case Management

*A Guide for Multidistrict Litigation Transferee Judges*

Second Edition

United States Judicial Panel on Multidistrict Litigation
&
Federal Judicial Center

2014

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop educational materials for the judicial branch. While the Center regards the content as responsible and valuable, it does not reflect policy or recommendations of the Board of the Federal Judicial Center.

first printing

**Contents**

Preface,  v

I.  Coordinate with Your Clerk's Office,  1

II.  Promptly Schedule a Conference with Counsel,  1

III.  Take Great Care in Appointing Counsel,  2

IV.  Enter a Case Management Order,  3

V.  Rule Promptly on Motions,  4
    a.  Rule on Remand Motions,  5
    b.  Resolve Discovery Disputes,  5
    c.  Avoid Delay from Interlocutory Appeals,  6

VI.  Hold Regular Telephone Conferences,  6

VII.  Coordinate with Parallel State Court Cases,  6

VIII.  Encourage an Early Mediation Process,  7

IX.  Anticipate *Lexecon* Issues,  8

X.  Exercise Your Primary Responsibilities,  8
    a.  Decide Pretrial Issues,  8
    b.  Settle or Try All Claims When Possible,  9
    c.  Remand Cases to the Transferor Courts,  9
    d.  Tell the Transferor Court What You Did,  10

**Preface**

This guide is intended to help transferee judges with their MDL cases. Congress created the United States Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407 and gave it the responsibility to transfer "civil actions involving one or more common questions of fact" from multiple districts to any single district for coordinated or consolidated pretrial proceedings. The Panel centralizes cases in order to promote the convenient, just and efficient conduct of the actions. After the Panel transfers cases, it exercises virtually no further control over them.

Section 1407 empowers a transferee judge to exercise all the powers of the transferor court, with the exception of actually conducting the trial of the case (except in special circumstances). The purpose of this guide is to introduce briefly some of the "best practices" that transferee judges have developed over the years. Of course, these "ten steps" oversimplify your complex task. Some MDLs will require special arrangements and extraordinary treatment. However, there is some virtue in focusing upon core responsibilities. That is our purpose here.

Multidistrict litigation presents a federal judge with difficult management, intellectual, and personal challenges. It is these challenges, in fact, that attract so many of our best judges to serve as transferee judges. In the final analysis, intangible leadership qualities rather than mechanical rules define the best MDL judges.

A highly useful resource for every transferee judge is the *Manual for Complex Litigation, Fourth Edition,* which contains a wealth of detailed suggestions. You will find references to the Manual throughout this guide. Other sources of helpful information can be found by clicking the *MDL Judge Resources* tab on the homepage of the Panel's website. The site contains relevant articles and speeches, as well as sample orders submitted by other transferee judges.

The Panel and the Federal Judicial Center hope that this guide helps you manage your MDL successfully. Our thanks particularly to former Panel member Judge J. Frederick Motz (D. Md.),

for the inspiration and recommendations necessary to complete this guide.

John G. Heyburn II
*Chairman, United States Judicial Panel on Multidistrict Litigation*
*U.S. District Court Judge*
*Western District of Kentucky*

Jeremy D. Fogel
*Director, Federal Judicial Center*
*U.S. District Court Judge*
*Northern District of California*

## I. Coordinate with Your Clerk's Office

Upon receiving an MDL assignment, you, your courtroom deputy or the case administrator, and others in the clerk's office responsible for handling it should settle upon some practical administrative matters. An MDL will require special attention from your clerk's office. You should consult *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Court Clerks.* This publication, which is available on the Panel's website by clicking on the *MDL Judge Resources* tab[1] and on the Center's intranet website, FJC Online, under *Class Action & Complex Litigation*,[2] sets forth the initial actions necessary to administer a multidistrict litigation case properly.

If this is your district's first MDL, you also should encourage your clerk to contact the Panel's clerk's office and other district court clerks' offices that have handled MDL cases in the past.

## II. Promptly Schedule a Conference with Counsel

Remember, your new cases already may have experienced some delay while the Panel considered and resolved the issue of centralization. It is important to get them moving again. Try to schedule a prompt organizational conference. *See* Manual § 11.2. To do so sends a message that you are serious about organizing and moving the MDL. This conference may occur either by telephone or in person, but most judges believe that an in-person meeting is best.

Prior to the conference, require counsel to meet and confer with one another and submit a proposed initial case management order. *See* Manual § 11.11. Invite counsel to submit proposed agenda items for discussion at the initial meeting. At the conference, take charge and set the tone—consistent with your

---

1. To access the website, go to the J-Net (http://jnet.ao.dcn) and click on the *Court & Related Sites* quick-link button. The U.S. Judicial Panel is listed under "Courts & Agencies." The *MDL Judge Resources* link is the second tab on the left.

2. To access FJC Online from the J-Net, click on the *FJC Online* link at the very top of the page. To go directly to FJC Online within your browser, enter http://fjconline.fjc.dcn.

own style and personality. As with all other litigation, you must establish credibility with the lawyers.

Set a clear target date for concluding important phases of your MDL, i.e., for all pretrial issues to be resolved and for the cases to be ready for trial. While making it clear that you expect the litigation to be conducted expeditiously, you also should respect the difficulties that counsel may confront in dealing with complex litigation involving numerous parties.

Determine the key issues that you can decide early or on an expedited basis. This will speed settlement or other resolution of the litigation as a whole. *See* Manual § 11.33.

The most serious complaint that we ever hear—though infrequently—is that the judges may not take their MDL responsibilities seriously. Counsel will respond best if they know that you are serious about maintaining the schedule you establish. Brisk progress in the litigation is likely to minimize or eliminate petty and time-consuming incidental disputes among counsel and help bring the MDL proceedings to a fair and prompt conclusion.

### III. Take Great Care in Appointing Counsel

It often is necessary to select lead, liaison, and/or administrative counsel in your MDL. This is one of your first and most important decisions.

There is no magic formula for doing this. Consult the Manual for a listing of various selection criteria to consider. *See* Manual §§ 10.224, 14.211, 22.62. Many judges request that lawyers submit their résumés, descriptions of their prior experience in other complex litigation, and their proposed fee arrangements. Judges often hold a hearing to observe and assess counsels' competence and professionalism. Your judicial colleagues are a valuable source of information. Feel free to contact other MDL judges for evaluations of particular lawyers. Use the Panel's website to help.

The method or amount of fees that a lawyer will charge is always an important factor in the choice of lead counsel. It is also important to establish, explain, and enforce record-keep-

ing requirements. *See* Manual §§ 14.213, 40.23 (sample order). However, while a counsel's proposed fee arrangements are important, this factor should not be dispositive.

Identify and appoint counsel who are vigorous advocates and constructive problem-solvers, and who, at the same time, are civil with their adversaries. Particularly in cases where there is related state court litigation, lead counsel must have the self-confidence to include other attorneys in the committee structure and delegate significant responsibilities to them. *See* Manual § 40.22 (sample order setting forth responsibilities of lead and liaison counsel). The political and economic dynamics among lawyers, unless monitored, can disrupt the MDL and related state court proceedings. You cannot manage an MDL entirely yourself. To a large extent, you must rely upon lead counsel to assist you.

### IV. Enter a Case Management Order

Managing an MDL fundamentally is no different from managing any other case, except that an MDL usually has the added complexity of more moving parts—lawyers, parties, jurisdictions, choice-of-law issues, varieties of discovery, and differentiated claims, just to mention a few. Any one of these factors can present you with serious challenges.

Your case management order should include the usual interim breakpoints, e.g., filing of a consolidated amended complaint (where appropriate), filing and briefing on motions to dismiss, a fact-discovery deadline, a deadline for resolution of any class-certification motions, expert disclosures and discovery deadlines, and a summary judgment motions deadline. *See* Manual § 40.21 (sample order). Many MDLs involve overlapping statewide and national class actions. Sequencing the discovery and briefing necessary to resolve class certification and summary judgment motions is one of your most vital initial tasks.

Try to avoid unnecessary sequencing with respect to the treatment of pending motions and other matters. For example, where a defendant moves to dismiss some but not all of the plaintiffs' claims, allow other discovery to proceed while you

decide the motion. This technique may be particularly useful where the partial motion to dismiss raises difficult issues. On the other hand, limited discovery or "reverse sequencing" may be appropriate if settlement is likely. In such a situation, the parties can avoid unnecessary cost and delay by engaging in discovery and preparing expert reports on damages issues before addressing the merits of the underlying claims.

Your case management order should address the role of magistrate judges in the discovery process. *See* Manual §10.14. Many judges have found magistrate judges to be indispensable for the efficient handling of discovery matters. You also may want to consider the potential roles for a special master or an expert advisor to the court. *See* Manual §§11.51, 11.52.

Another circumstance to bear in mind is the potential that new ("tag-along") cases could be added to your MDL docket, as such cases are filed in other jurisdictions and the Panel transfers them to you. Ask the parties whether additional actions are likely, and, if so, include appropriate provisions in the case management order for integrating such actions into the ongoing proceedings. *See* Manual §§ 20.132, 22.631.

## V. Rule Promptly on Motions

As you receive the new MDL cases, you may find many pending motions. Some of these motions may require more attention than others.  Rulings should be prompt and disciplined; scholarly perfection is not required on all issues. We all remember from our days practicing law that a judge's decision in our favor was delightful and that one against us, while unwanted, enabled us to advise our client about his or her risks and expectations. The only decision that we could not live with was the one that was never made. Consider issuing short rulings, which assume that the reader has knowledge of the underlying facts and legal issues and which simply state your holdings and the reasons for them.

### a. Rule on Remand Motions

The Panel routinely centralizes cases recently removed to federal court. In some of these cases, plaintiffs already may have filed motions for remand to a state court under 28 U.S.C. § 1447. The Panel's decision to transfer a case in no way suggests an opinion about any such motion. The Panel's belief is that the transferee judge is in the best position to determine jurisdictional issues. The Panel does not review your decisions on these or any other motions.

Take these motions seriously and rule upon them as soon as reasonably possible. Where several motions appear to present an identical or substantially similar issue (for example, the alleged fraudulent joinder of the same defendant), many judges will decide one of them, and then order the remaining movants and/or respondents to show cause why that ruling should not apply to them as well. This is an easy way to test any pertinent differences in state or circuit law.

### b. Resolve Discovery Disputes

Resolving discovery disputes expeditiously is important to avoid undue delay in any case, but particularly in an MDL. Different judges have different practices in handling discovery matters. Some judges assign a magistrate judge to monitor all discovery issues. Others have found it beneficial to handle discovery disputes themselves. These judges have found that the more contact they can have with the lawyers, the more they can control the pace of the litigation and influence its progress. Some judges use telephonic conference calls to resolve discovery disputes, dispensing with briefing when unnecessary. Regardless, the mere fact that a judge or magistrate judge is immediately available to handle a discovery dispute itself may enable counsel to resolve the dispute among themselves.

### *c. Avoid Delay from Interlocutory Appeals*

Many judges use the interlocutory appeal procedure afforded by 28 U.S.C. §1292(b) to allow appellate review of critical rulings while other aspects of the case move forward. Some circuits are more amenable to permitting such appeals than others. Whatever the case, the pendency of an interlocutory appeal generally should not be allowed to delay or halt other aspects of the MDL. Such delay usually is counterproductive.

## VI. Hold Regular Telephone Conferences

Many transferee judges schedule regular (often monthly) telephone conference calls with counsel. *See* Manual §11.22. When no pressing matters exist during a particular month, you can cancel the conference. However, unless the conference is regularly scheduled, minor issues can fester and become major problems. Frequent contact allows you to take the pulse of the litigation, to fine-tune scheduling adjustments, to set briefing and hearing dates for any anticipated motions, and to rule upon discovery and small scheduling disputes.

Most judges have a court reporter present during the telephone conference, at least to make a record of any scheduling changes or substantive matters discussed and ruled upon. *See* Manual § 11.22. As to other administrative issues, you may confer with counsel to determine whether transcription is necessary.

## VII. Coordinate with Parallel State Court Cases

Sometimes pending state court cases relate to your MDL. Coordination with state judges can be very important. *See* Manual § 20.313.

Take it upon yourself to reach out to your state court colleagues from the outset. *See* Manual § 20.31. Try to forge constructive working relationships with them. One way of doing this is to establish an MDL-specific website so that your orders

and rulings are readily available. *See* Manual §40.3 (sample order directing creation of a website). You can also begin by assessing what issues presented in the related state and federal court cases might be suited for coordinated efforts.

A useful resource when dealing with federal and state coordination issues is a website created as a joint project by the National Center for State Courts, the Federal Judicial Center, and the Panel, which provides helpful tips and model orders on this subject. *See* http://multijurisdictionlitigation.wordpress.com.

Discovery is one area that is quite amenable to effective coordination. The use of common experts, along with consolidated expert disclosures and expert discovery, is also sometimes worthwhile. *See* Manual § 22.4. In sophisticated litigation, only a limited number of persons may be available to provide certain kinds of opinions. Moreover, high expert fees can provide an incentive for parties to join together in selecting their experts on common issues and to establish reasonable parameters on expert discovery.

### VIII.  Encourage an Early Mediation Process

As soon as you are satisfied that plaintiffs' claims have at least some arguable merit, it may be a good idea to suggest that counsel establish a mediation structure, select a mediator, and begin settlement negotiations simultaneous with discovery and the briefing of preliminary motions. *See* Manual § 13.1. Although early negotiations may not bear immediate fruit, they do require all parties to keep the endgame in mind even in the initial phases of the litigation.

Sometimes the accumulation of costs and fees can be an obstacle to settlement. It is important at the outset to advise all parties about the importance of controlling costs. Particularly in cases arising under fee-shifting statutes, it may be helpful to set some ground rules, such as no first-class travel and a limitation on the number of lawyers at depositions. *See* Manual §14.21.

### IX.  Anticipate *Lexecon* Issues

In *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26 (1998), the Supreme Court ruled that a transferee judge cannot "self-transfer" an MDL action to his or her district under 28 U.S.C. § 1404 for the purpose of conducting a trial. You should anticipate *Lexecon* issues and resolve them, if you can, on the front end.

Over the years, transferee judges have devised appropriate methods of working within the confines of *Lexecon*. *See* Manual § 20.132.

Many MDLs contain a number of actions that were properly filed in the first instance in the transferee district (that is, your district). Conducting one or more bellwether trials in those cases can help promote a global settlement or at least expedite settlement of other individual cases. *See* Manual §§ 20.132, 22.315, 22.93.

In some instances, transferee judges have obtained an intra- or intercircuit assignment to preside over one or more trials after pretrial matters have been resolved and the actions remanded to their transferor districts. *See* Manual § 20.132.

### X.  Exercise Your Primary Responsibilities

Good case management techniques are a means, not an end. Never lose sight of your statutory responsibility, which is to manage pretrial proceedings efficiently and fairly.

#### *a.  Decide Pretrial Issues*

Your ultimate responsibility is to resolve pretrial issues in a timely and expeditious manner. This responsibility certainly includes resolution of jurisdictional issues, important evidentiary disputes, class certification issues and, perhaps most important, motions to dismiss and for summary judgment. As noted earlier, the Panel exercises no review over any procedural or substantive ruling of a transferee judge.

While the powers of the transferee judge are extremely broad, they are not without limitation. The transferee judge generally must apply the substantive law of the transferor forum, includ-

ing the appropriate state law and that forum's choice-of-law rules.

### b.  Settle or Try All Claims When Possible

Experience shows that MDL proceedings, like most civil cases, usually do end in settlement. Indeed, an MDL provides an extremely favorable structure for resolution. Where settlements are reasonable and just, they stand as a testament to the effectiveness of the MDL process. As you resolve pretrial issues and explore settlement options, the opportunity may arise to schedule a trial in one or more of the transferred cases. Such an opportunity is important to pursue creatively, as suggested in Section IX above.

### c.  Remand Cases to the Transferor Courts

The transferee judge has authority at any time during centralized proceedings to recommend that the Panel remand a particular case—or even individual claims within a case—to the transferor court. *See* Manual § 20.133. Such a remand is thus an option even where other centralized proceedings will continue.

In certain circumstances, a transferee judge, after careful consideration, may conclude that he or she cannot effectively or efficiently coordinate a particular case or group of cases within the MDL (for example, where a tag-along action involves overwhelmingly individualized issues, or where a late-filed tag-along's inclusion in the MDL presents insurmountable logistical hurdles given the advanced stage of centralized proceedings). In those instances, the transferee judge should recommend that the Panel remand the case (or claim) to the transferor court. *See* Manual § 20.133.

When you have completed all common discovery, ruled on all pretrial motions, and exhausted reasonable settlement attempts, it may be time to recommend that the Panel remand those unresolved cases to their transferor districts. *See* Manual § 20.133. Do not hesitate to take this action (or to suggest that

you might take it) when coordinated or consolidated pretrial proceedings no longer serve a valid purpose.

As a technical matter, the transferee judge issues a suggestion of remand to the Panel. *See* Manual § 20.133. Upon receipt of that suggestion, the Panel issues a conditional order of remand and also a stay of that order for seven days. *See* Panel Rule 10.2. If no party objects, the order becomes final, and the case or cases are remanded to the transferor court. Occasionally, a party will object, and the Panel schedules a briefing and then renders a decision. However, as a practical matter, the Panel gives great deference to the view of the transferee judge with respect to remand. *See* Manual § 20.133.

### *d. Tell the Transferor Court What You Did*

A final recommendation: When suggesting the Panel remand to the transferor court, it is of great benefit to the transferor court to include in the record a brief description of pertinent events that have taken place in the litigation, including key evidentiary and legal rulings, as well as a recommendation regarding any additional proceedings that you believe are necessary to make the case ready for trial. *See* Manual § 20.133. You can find examples of such a memorandum on the Panel's website.



Again, thank you for undertaking the challenge and public service of handling your MDL assignment.