```
1                 UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5   In re:                     )
                               )
6   SOCIAL MEDIA ADOLESCENT    ) No. 22MD03047-YGR
    ADDICTION/PERSONAL INJURY  )
7   PRODUCTS LIABILITY LITIGATION,)
                               )
8   _____)

9                               San Francisco, California
                                Tuesday, May 9, 2023
10
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
11          RECORDING 9:14 - 9:41 = 27 MINUTES

12  APPEARANCES:

13  For Plaintiffs:
                                Seeger Weiss, LLP
14                              55 Challenger Road
                                Ridgefield Park, New Jersey
15                                07660
                            BY: JENNIFER SCULLION, ESQ.
16                              CHRISTOPHER AYERS, ESQ.

17                              Lieff, Cabraser, Heimann &
                                  Bernstein
18                              275 Battery Street, 29th Floor
                                San Francisco, California
19                                94111
                            BY: LEXI J. HAZAM, ESQ.
20                              KELLY MCNABB, ESQ.

21                              Motley Rice, LLC
                                401 9th Street, NW, Suite 630
22                              Washington, DC 20004
                            BY: PREVIN WARREN, ESQ.
23                              MATTHEW JASINSKI, ESQ.

24          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

25
```

2

```
 1  APPEARANCES:  (Cont'd.)

 2  For Meta Platforms, Inc.:
                                Covington & Burling, LLP
 3                              415 Mission Street, Suite 5400
                                San Francisco, California
 4                                94105
                           BY:  ISAAC CHAPUT, ESQ.
 5                              PAUL SCHMIDT, ESQ.

 6  For Snap, Inc.:
                                Munger, Tolles & Olson
 7                              601 Massachusetts Avenue, NW
                                Suite 500E
 8                              Washington, DC 20001
                           BY:  LAUREN BELL, ESQ.
 9
    For TikTok, Inc., &
10    ByteDance, Inc.:          Faegre, Drinker, Biddle &
                                  Realth, LLP
11                              2200 Wells Fargo Center
                                90 South Seventh Street
12                              Minneapolis, Minnesota 55402
                           BY:  AMY R. FITERMAN, ESQ.
13
                                King & Spalding, LLP
14                              1700 Pennsylvania Avenue, NW
                                Suite 900
15                              Washington, DC 20006
                           BY:  DAVID P. MATTERN, ESQ.
16
    For You Tube:
17                              Wilson, Sonsini, Goodrich &
                                  Rosati
18                              12235 El Camino Real
                                San Diego, California 92130
19                         BY:  SAMANTHA MACHOCK, ESQ.

20
    Transcribed by:             Echo Reporting, Inc.
21                              Contracted Court Reporter/
                                Transcriber
22                              echoreporting@yahoo.com

23

24

25
```

*Echo Reporting, Inc.*

1   <u>Tuesday, May 9, 2023</u>                                    <u>9:14 a.m.</u>

2                      P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4           THE CLERK:  Good morning, everyone.  We are here

5   on civil action 22-3047, In Re: Social Media Adolescent

6   Addiction/Personal Injury Products Liability Litigation.

7   The Honorable Thomas S. Hixson presiding.

8       Counsel, let's have your appearances.  Let's start with

9   Plaintiffs' counsel, so gentlemen?

10          MR. AYERS (via Zoom):  Chris Ayers from Seeger

11  Weiss on behalf of Plaintiffs.

12          THE COURT:  Good morning.

13          MR. AYERS:  Good morning.

14          MS. HAZAM (via Zoom):  Lexi Hazam of Leiff

15  Cabraser on behalf of Plaintiffs.

16          THE COURT:  Good morning.

17          MS. MCNABB (via Zoom):  Kelly McNabb from Leiff

18  Cabraser on behalf of Plaintiffs.

19          THE COURT:  Good morning.

20          MS. SCULLION:  Jennifer Scullion from Seeger Weiss

21  on behalf of Plaintiffs.

22          THE COURT:  Good morning.

23          MR. WARREN (via Zoom):  Previn Warren of Motley

24  Rice on behalf of Plaintiffs.

25          THE COURT:  Good morning.

4

1          MR. JASINSKI (via Zoom):  Matthew Jasinski with

2   Motley Rice for Plaintiffs.

3          THE COURT:  Good morning.

4          MS. JASINSKI:  Morning.

5          THE CLERK:  All right, thank you.  And now, the

6   Defendants.  How about the Meta Defendants?

7          MR. CHAPUT (via Zoom):  Good morning, your Honor.

8   Isaac Chaput, Covington and Burling on behalf of the Meta

9   Defendants.

10          THE COURT:  Good morning.

11          MR. SCHMIDT:  Good morning, your Honor.  Paul

12   Schmidt, Covington, on behalf of the Meta Defendants.

13          THE COURT:  Good morning.

14          THE CLERK:  Okay.  And for Snap?

15          MS. BELL (via Zoom):  Good morning, your Honor.

16   Lauren Bell from Munger, Tolles and Olson on behalf of Snap.

17          THE COURT:  Good morning.

18          THE CLERK:  And for TikTok and ByteDance?

19          MS. FITERMAN (via Zoom):  Good morning, your

20   Honor.  Amy Fiterman, Faegre Drinker, on behalf of the

21   TikTok Defendants.

22          THE COURT:  Good morning.

23          MR. MATTERN (via Zoom):  And, good morning, your

24   Honor.  David Mattern from King and Spalding on behalf of

25   the TikTok Defendants.

1          THE COURT:  Good morning.

2          THE CLERK:  And, You Tube?

3          MS. MACHOCK (via Zoom):  Good morning, your Honor.

4   Samantha Machock from Wilson Sonsini on behalf of the You

5   Tube Defendants.

6          THE COURT:  Good morning.

7          THE CLERK:  All right, Judge, that's it.

8          THE COURT:  Okay.  We're here on the parties'

9   joint discovery letter brief about the Plaintiff user

10  account preservation form, and I see that there are

11  competing versions of that.  One thing that I don't like

12  about the form, and that I don't like about the parties'

13  suggestions, is the way that the form blends a form with a

14  pseudo court order.  And it has language in it that would

15  really have to be in a court order and does not belong in a

16  form.

17     As I -- if I understand correctly, and maybe I'll ask

18  the Plaintiffs, my understanding of the idea is that the

19  Plaintiffs would fill out the form, providing the requested

20  information, and that would be turned over for the

21  Defendants to aid in the Defendants' ability to preserve

22  relative information; but let me ask Plaintiffs, is that the

23  purpose of this?

24          MR. AYERS:  This is Chris Ayers on behalf of

25  Plaintiffs.  Yes, your Honor.  Defendants had indicated in

6

1  their initial case management order that they required

2  additional information from Plaintiffs to facilitate their

3  preservation of information, and in good faith we've been

4  working with Defendants to work on a form that would allow

5  us to provide them with the information they claim they need

6  in order to make sure that user information is not deleted

7  in the ordinary course of business.

8        THE COURT:  All right.  And do Defendants agree

9  that at a high level, that's the purpose of this form?

10        MR. CHAPUT:  Yes, your Honor.  We agree at the

11  highest level that that's the purpose.

12        THE COURT:  Okay.  So then, let me just identify

13  things that I don't think belong in the form, because the

14  form should just be the provision of information to the

15  Defendants.

16     So, the first sentence where it says,

17           "The Plaintiff user name below

18           submits this Plaintiff user account

19           preservation form, binds you -- the

20           undersigning counsel, after reasonable

21           investigation."

22  That seems like a good sentence.  That identifies the

23  purpose of the form and it states that they've done a

24  reasonable investigation.

25     And then it goes on to state,

7

1              "This information is confidential,
2              pursuant to the protective order that
3              has been, or will be entered by the
4              court, and is being provided solely for
5              preservation purposes."
6 That's a good sentence, as well.  Because under the
7 protective order, someone can designate something as
8 confidential, so the Plaintiff is doing that here.
9      But, at least in the Plaintiffs' view, the next
10 sentence seems problematic.  It says,
11              "The information provided in this
12              form is not discovery and is not
13              admissible for any purpose in this
14              proceeding."
15 Sorry, the Plaintiff doesn't get to decide that.  The
16 Defendants don't get to decide that and the parties don't
17 get to decide that.  I don't get to decide that either.
18 Whether something is admissible or not will be determined by
19 whoever has to make those decisions, which isn't you and
20 isn't me.  Judge Gonzalez Rogers may be one of the people
21 who is likely to make that decision, but since this is an
22 MDL proceeding, it's possible there might be a remand at
23 some point down the road and these cases could be sent back
24 to districts across the country, and whoever has those cases
25 will be ruling on admissibility there.

8

1   So, you can't sneak in a statement or ruling that this

2   isn't admissible, because that hasn't been decided yet, and

3   it won't be decided for some time.  This is preservation

4   form and I have some concern that by saying on the form that

5   it's not admissible, that could be misleading the person who

6   is filling out the form, because you don't know if this is

7   admissible or not.

8       So, let me ask Plaintiffs.  Have I missed something, or

9   what is it about that sentence that you thought made it

10  appropriate to be in this form?

11         MR. AYERS:  The appropriateness of that sentence

12  was, the parties were in good faith negotiating this -- the

13  information form on the basis that this would be used for

14  preservation purposes.  Towards the end of the -- those

15  discussions, it became clear the Defendants also now want to

16  potentially use this in some sort of discovery.  The idea

17  was is that we wanted to kind of prevent this kind of side

18  litigation on this form.  We're happy to cut that sentence

19  from the preservation form.  It's not necessary and we're

20  happy to -- we're agreeable to strike that sentence.

21         THE COURT:  All right, thank you.  And then, the

22  Defendants have their own counter proposal, which is,

23             "All parties reserve all rights to

24             object to the admissibility of this

25             form, or any of the information

9

1          contained therein."

2  I don't think that a reservation of rights belongs in a

3  preservation form.  The purpose of this form is for the

4  Plaintiffs to fill it out, provide information to the

5  Defendants and the Defendants to use that information to

6  preserve information.  This isn't a stipulation.  This isn't

7  a court order.  I don't see why reservation of rights

8  language would be at all appropriate in here.

9      And also, the footnote, advising of the parties meeting

10  and conferring and Defendants represent that they defer in

11  their abilities.  This isn't a case management conference

12  statement.  It's not a representation to the Court, it's

13  just a form.  Like, if you go into Safeway and you want to

14  order a sandwich, and you say, "I want chicken and then I

15  want cheese and then I want pumpernickel bread."  This is

16  similar in its providing information to the Defense, but

17  it's not where you put reservation of rights languages or

18  representations about what the Defendants can do, and

19  summaries of meeting and conferring.  That just doesn't

20  belong here.

21      So, let me hear from the Defendants; why would you want

22  that sentence and that footnote, one, in this form?

23          MR. CHAPUT:  I can address that, your Honor.  On

24  the sentence with the reservation of rights, we were

25  proposing that as an alternative to Plaintiffs' language.  I

10

1 think we are comfortable with taking that sentence out on

2 the reservation of rights on admissibility.

3     With respects to the footnote.  The first sentence of

4 the footnote, we wanted that included just to make clear

5 that not every piece of information here is something that

6 Defendants can plug into a system and it will spit out an

7 account.

8     So, for example, just a proper name is generally not

9 enough information for us to go and find a user account, but

10 it can be helpful in allowing us to confirm that we found

11 the right account, for example.  So, we just wanted to make

12 that point clear and that was the purpose of that first

13 sentence.

14     The second sentence, just for your Honor's -- some

15 additional context, originally the parties had anticipated

16 that this form would be finalized at the same time that the

17 parties finalized the preservation order that we've been

18 conferring about.  That has been deferred by a few more

19 weeks, but Plaintiffs wanted to finalize the form.  And so,

20 the purpose of that second sentence was just a reference to

21 those ongoing negotiations, but I think the parties

22 understand that those negotiations are ongoing, so I think

23 that we would be okay with removing that second sentence.

24         THE COURT:  Okay.  I think the whole footnote

25 should go.  If you -- if you want to make representations

1 about what the Plaintiffs can or can't preserve, you could

2 that maybe in a whereas clause in the preservation order.

3 That would be fine.  It's just, this seems like the wrong

4 place for it.  That's not really what a form is for.  So, I

5 would think the whole footnote should come out.

6          MR. CHAPUT:  Understood, your Honor.  We

7 appreciate the guidance.

8          THE COURT:  All right.  Then, let's look at

9 paragraph J.  The first sentence there, which seems

10 uncontested,

11              "To the extent Plaintiffs' users

12          claims are predicated on use of any

13          Defendants' platform, via an account

14          opened and used primarily by a user

15          other than the Plaintiff user, the full

16          legal name of the third party."

17 That seems fine, it's just identifying a name.

18      The Defendants then propose -- or sorry -- TikTok, Snap

19 and You Tube propose another sentence saying,

20              "By identifying a third party in

21          response to this question J, Plaintiff

22          attests that they have a good faith

23          basis to believe that the third party

24          consents to the preservation of their

25          account data and will provide express

1          written consent in connection with any

2          request for production."

3 I don't agree with that sentence.  I don't think that the

4 Plaintiffs should be in the position of attesting to what

5 other people consent to, or saying what -- each person is in

6 charge of him or herself, or maybe their guardian ad litem

7 is, if they're a minor, but I don't think it's appropriate

8 to say that the Plaintiffs says that the third party

9 consents to preservation.  Maybe they don't consent to

10 preservation.  Or, to say that Plaintiff will obtain

11 somebody else's consent.

12      So, let me ask the Defendants, why should we saddle

13 that attestation on the submitting Plaintiff?

14          MS. MACHOCK:  Your Honor, Samantha Machock on

15 behalf of You Tube and Snap and TikTok for this provision.

16      So, the core of what we're trying to accomplish here is

17 really a notice requirement and we think that there are --

18 the purpose of this form, as your Honor recognized, is to

19 ensure that relevant and potentially discoverable

20 information is retained.

21      The Stored Communications Act will prohibit Defendants

22 from producing the contents of communications with -- about

23 user consent.  We recognize that this is a preservation

24 form, not production, but to lay the groundwork for ultimate

25 production of this information, it's important to start the

1 process of ensuring that, A, we're preserving the correct
2 account.  B, we're protecting user privacy, and C, the user
3 is getting notice because they're going to ultimately need
4 to receive notice before any production could occur.  And,
5 if that's the first time they're hearing about it, there's -
6 - there's a very real possibility that the Court is going to
7 be inundated with objections and motions to quash that's
8 going to significantly delay production of information in
9 this case.
10      And so, by providing -- we're happy to clarify that
11 this is simply a notice requirement.  It seems like a very
12 light lift on Plaintiffs' part, if they're already doing
13 their due diligence -- their Rule 11 due diligence -- before
14 filing claims, based on third-party accounts they're
15 claiming to have used, and thereby then harmed.  It -- they
16 should already be communicating with these third parties,
17 and it takes mere minutes --
18        THE COURT:  Well, this walks right into the
19 problem that the Plaintiffs have identified, which is, what
20 if that third party is someone who has been abusive towards
21 the Plaintiff?  What's your response to that?
22        MS. MACHOCK:  Sure.  Two points on that, your
23 Honor.
24      So, first of all, that is a purely hypothetical
25 situation that we are aware -- we are not aware of any

1 actual situations in which that is an issue.  This is, in a

2 vast vast majority of cases, going to be a parent, a family

3 member, a friend's account.  That's one.

4      Number two.  During our negotiations, we specifically

5 offered to have a carve out, an exception to this notice

6 requirement if there was a safety concern, or a wellness

7 concern, and Plaintiffs repudiated that.

8      So, you know, we're absolutely conscience of that and

9 we certainly don't want to be put -- have any Plaintiffs put

10 themselves in a position where they could suffer harm, as a

11 result of the notice requirement, but that's like taking the

12 1-percent, potentially, of cases that's purely hypothetical,

13 and throwing out the benefits of providing notice, which is

14 very -- like, light lift -- it can be an email, in 99-

15 percent of cases.

16           THE COURT:  Well, let me ask you this.  My

17 understanding, but please tell me if I'm wrong mistaken, but

18 my understanding is that Defendants cannot produce user data

19 under the Stored Communications Act without the consent of

20 the user; do you agree that that's true?

21           MS. MACHOCK:  That is true, with very limited

22 exceptions, but yes, that's true.

23           THE COURT:  Okay.  But, in general, that's true?

24           MS. MACHOCK:  That's absolutely true, in general,

25 and we -- and even if there's an exception, we still provide

1  -- we still require notice to the third party.

2        THE COURT:  Okay.  Well then, why isn't the

3  simplest solution just to make this all Plaintiffs' problem

4  and just drop this, that language you propose, in response

5  to item J?  They list the third party and you go and

6  preserve that data, and then when Plaintiffs say, "Please

7  produce the data," you say, "Well, go get me a consent."

8  And then, if the Plaintiffs have concerns about reaching out

9  to the third party for any reason, it's their problem; why

10 don't we do it that way?

11       MS. MACHOCK:  So, we will -- we will require that

12 at the production stage.  I think there is still value in

13 having notice at the preservation stage, because -- and this

14 is not speculation, this is based on what's happened.  In

15 this case, to date, we have received dozens of forms

16 already.  There has been obvious errors in some of them.  In

17 other cases, email addresses don't line up to any account,

18 or they line up to an account that's very obviously -- like,

19 we discover later in (indiscernible) account -- very

20 obviously a wrong -- an erroneous account.  And so, there's

21 been a lot of errors in these forms that's given Defendants

22 significant cause for concern, and it wastes resources and

23 it diverts resources away from preserving the correct

24 account, and significantly delays preservation of

25 information.  But by just asking Plaintiffs to notify the

16

1  third party, give them a chance to verify their information,

2  our hope is that that would at least reduce the numbers of

3  errors that we're getting here.

4  THE COURT:  How do we know that the notice

5  requirement would do anything?  I mean, they just -- what

6  would notice be?  They just give this person notice and then

7  what happens?

8  MS. MACHOCK:  Well, if a third party knows that

9  someone is asking for their account to be preserved, it's an

10  opportunity to verify that they have the correct email

11  address.  If they receive a bounce back on the email

12  address, which some of these would, because they're

13  erroneous, that would be a signal to Plaintiffs that they

14  have the wrong address and maybe they would make the

15  correction before giving us the form.  It's not a perfect

16  solution, but it -- it's a middle ground that imposes

17  virtually -- you know, it's a compromise, from our

18  perspective, that imposes virtually no burden on Plaintiffs

19  if they're already doing their due diligence, and will at

20  least catch some of the errors by opportunity to verify an

21  account, or a bounce back email or something that will

22  signal that the information was erroneous.

23  THE COURT:  Let me turn to Plaintiffs, and the

24  issue that you flagged about potential risks to the

25  Plaintiff, or the minor, from notice to third parties.

1  Based on what you've seen so far, what are the dimensions of

2  that problem?  How often do you think that could pose risk

3  for the Plaintiff?  And, acceptable answers include, "We

4  don't know yet, we're still looking into that, but we,

5  anecdotally, we think it's -- it could be a problem."  How

6  would you describe the dimensions of that problem?

7          MR. AYERS:  Your Honor, we don't know yet.  We --

8  we are still looking into the -- to that issue.  We think

9  it's a real possibility and certainly if it's required for

10  all potential Plaintiffs that file -- that file cases in

11  that action, that it will come up.  We believe it will come

12  up or has some likelihood of coming up in the future.  But,

13  we're still looking at the issue and we don't have an

14  example to provide the Court at this time.

15          THE COURT:  All right.  And that's in the process

16  of learning -- of obtaining this information from your

17  clients?

18          MR. AYERS:  Well, we are gathering -- we have -- I

19  mean, the Plaintiffs have provided preservation information

20  to the Defendants on an ongoing basis already.  Because of

21  the short retention period for a substantial amount of

22  information that the Defendants are gathering from the

23  Plaintiffs, both on the platforms and off the platforms,

24  it's imperative that the Plaintiffs could provide this --

25  provide this information to Defendants to make sure their

1  user information is being preserved.  So there's already a

2  process that's been underway for some time to get this

3  information to the Defendants so that they can continue

4  their existing obligations.

5      But -- and so, we will continue to monitor and see if

6  some of this issue comes up.  We think that it's a real

7  possibility, and that's why we wanted to -- that's why we

8  don't believe notice is appropriate at this -- at this

9  stage.  It's also a real impediment and roadblock to

10 providing the actual preservation information in the first

11 instance.  Because they delete information 30, 60, 90 days,

12 it's imperative that this information gets over and that's

13 just another roadblock to making sure that Defendants are

14 preserving and undertaking their obligations.

15      THE COURT:  Okay.  Here's how I see the notice

16 issue.  I think it's a little premature for me to decide

17 whether notice should be provided, but I also think that

18 notice is extrinsic to the purpose of this form.  It's again

19 -- that's more of a -- something that's sort of sneaking in

20 a court order into the form.  The form is just about the

21 Plaintiff providing information to the Defendants so they

22 can go preserve data.

23      So, I think J should just ask for the for the full

24 legal name of the third party and the Plaintiff should fill

25 out the form, and fill that out accurately.  If there needs

19

1  to be a notice obligation on the Plaintiff, that's -- a form

2  doesn't impose obligations.  It's not an order.  So, what I

3  would like the parties to do, and in fact, I will order you

4  to do this, is to meet and confer about a proposed order

5  concerning notice.  It could be something similar to what

6  the Defendants provided, conceptually, which could be,

7  "Plaintiffs will provide notice to the third party of the

8  preservation request, unless they have reason to believe

9  that would be unsafe."  Those aren't like magic words or

10 anything, but something like that that would, in general,

11 obligate Plaintiffs to provide notice to the third parties

12 that they've listed, unless there is a reason not to.  And

13 I'd like the parties to meet and confer about that, but that

14 could just be in a stipulation or proposed order.  It

15 doesn't need to be in the form.

16      So, let me ask Plaintiffs' Counsel, how long do you

17 need to meet and confer with Defense Counsel about a notice

18 requirement?

19          MR. AYERS:  Two weeks should be -- two weeks.

20 That should be sufficient to meet and confer on that.  I

21 mean, Plaintiffs don't believe that a notice requirement for

22 the preservation is really required.  I mean, Defendants can

23 provide notice, but we will, as the Court directs, meet and

24 confer with them on a proposed order that we can submit to

25 the Court.

1          THE COURT:  Okay.  As Defense Counsel said, notice

2    is not a perfect solution to preservation issues, but if you

3    do give notice, there is a chance that person will come back

4    say -- like, if you get a bounce back on an email, there is

5    a chance you'll discover, "Oh, this isn't correct."

6          And so, let me ask Defense Counsel, is 14 days good

7    enough for you to meet and confer with Plaintiffs' Counsel

8    about a stipulation of a proposed order concerning notice?

9          MS. MACHOCK:  Yes, your Honor.  I think that's

10   reasonable.  We would also, I think, be amenable to folding

11   it into the broader preservation order, if that was -- we're

12   happy to do it either way.

13         THE COURT:  Okay.  Either way is fine.  So, I'll

14   order the parties to do one of those two alternatives.

15   Either meet and confer and then in 14 days propose a

16   stipulation of proposed order, or competing stipulation

17   about competing proposed order, in a joint discovery letter

18   brief about a notice requirement, or your other option is to

19   fold it into the larger preservation order.  Okay.

20         I think that deals with J -- oh, foot note three,

21                "The preservation of account

22              information should not be construed as

23              an agreement to produce such

24              information."

25   Again, that's -- first, I think that's obvious, but second,

1    that doesn't belong in a form.  That could be in a

2    stipulation, it could be in something else, but that doesn't

3    need to be in the form that the Plaintiff submits to

4    Defendants.

5         Then we come to footnote four, and again, that's sort

6    of stuff that just shouldn't be in a form.  That -- that

7    language about Defendants not taking adverse action, that

8    could be in a court order, for example, but it shouldn't be

9    in a form.  So, I think that footnote should come out.

10        Substantively, just in case you're thinking, "Oh, let's

11   now file a joint discovery letter brief about that issue."

12   I really don't want to step into the relationship between

13   the Defendants and law enforcement.  That's extrinsic to

14   this MDL proceeding.  I have no idea what the consequences

15   of footnote four would be.  That's difficult for me to

16   understand, especially considering how many different law

17   enforcement agencies would be affected nationwide.

18        But, anyway, the narrower point is that I think

19   footnote four just doesn't belong in a form.  It's not

20   necessary for the Plaintiff to fill out a form to give to

21   the Defendants.

22        So -- but let me turn to Plaintiffs.  Anything more you

23   want to say about footnote four, including why it should be

24   in this form?

25             MR. AYERS:  No, your Honor.  We can -- we can

22

1  address it separately.

2          THE COURT:  Okay, thank you.

3      Then let me see -- Plaintiffs, are there any issues

4  that you raised that you feel that I have not addressed so

5  far?

6          MR. AYERS:  No, your Honor.  I believe you covered

7  all of the material.

8          THE COURT:  Same question for the Defendants?

9          MR. CHAPUT:  No, your Honor --

10         MS. MACHOCK:  No --

11         MS. CHAPUT:  Sorry, Samantha.

12         MR. CHAPUT:  I believe you've covered it all.

13         MS. MACHOCK:  Same here.  Thank you.

14         THE COURT:  Okay.  Then, we should be good on the

15 Plaintiff user account preservation form.  What's the next

16 step?  Let me turn to Plaintiffs' Counsel.  Is it like -- do

17 you want to file the final version with the Court in some

18 fashion, so that we have a record of what it is?

19         MR. AYERS:  We can -- we can do that.  We can

20 finalize the -- finalize it and file it with the Court, and

21 then we'll begin making sure that these go out to

22 Defendants.

23         THE COURT:  Can it just be a joint notice by all

24 of the parties?  "Notice - here is the Plaintiff user

25 account preservation form."

23

1            MR. AYERS:  I think that works.

2            THE COURT:  Let ask Defense Counsel, does that

3  seem like a good idea to you?

4            MR. CHAPUT:  Yes, your Honor.  That seems -- that

5  seems reasonable.

6            THE COURT:  And we should have a deadline.  I

7  don't imagine it would take too long.  Let me ask

8  Defendants, when do you want to file the notice of the final

9  form?

10            MR. CHAPUT:  Within a week.  I'm sure we can -- we

11  can do.  Likely, sooner.

12            THE COURT:  And, Plaintiffs, does a week work for

13  you?

14            MR. AYERS:  Yeah, a week or even by this Friday

15  would -- I think we can manage it, with your guidance.

16            THE COURT:  Okay.  Then I'll order the parties to

17  file a notice with the final version of the Plaintiff user

18  account preservation form within seven days of today.

19            MS. MACHOCK:  Your Honor, may we make one related

20  request?

21            THE COURT:  Sure.

22            MS. MACHOCK:  We received a few premature forms,

23  based on prior versions, could your Honor please direct

24  Plaintiffs to file using the officially entered form, so

25  that all Plaintiffs are using the form that your Honor has

24

1  approved?

2         THE COURT:  Do you mean resubmit using the correct

3  form?

4         MS. MACHOCK:  Yes.

5         THE COURT:  Let me ask Plaintiffs.  What's the

6  burden there?

7         MR. AYERS:  I -- we can discuss it.  I think we

8  should be able to do that.  We wanted -- I mean, obviously

9  the key of getting this information was to get this

10 information over to Defendant as soon as possible and not

11 wait for any delays, but we can happily resubmit using the

12 -- using the agreed upon form that we'll be finalizing.

13        THE COURT:  Because the Plaintiffs' Counsel can do

14 that.  Once you've got the information from your client, you

15 can just write it on the new form.  You don't need your

16 clients to do anything further, right?

17        MR. AYERS:  That's correct.

18        THE COURT:  Okay.  Then I'm going to order

19 Plaintiffs' Counsel to resubmit previous forms using the new

20 agreed upon form; anything further that Plaintiffs would

21 like to raise at the hearing today?

22        MR. AYERS:  Nothing from Plaintiffs, your Honor.

23 Thank you.

24        THE COURT:  Anything further the Defendants would

25 like to raise at the hearing today?

25

1          MR. CHAPUT:  Nothing from the Meta Defendants.

2     Thank you, your Honor.

3          MS. MACHOCK:  Nothing (audio glitch), your Honor.

4     Thank you very much.

5          THE COURT:  And the other Defendants?

6          MS. BELL:  Nothing on behalf of Snap.  Thank you,

7     your Honor.

8          MS. FITERMAN:  Nothing on behalf of TikTok.  Thank

9     you, your Honor.

10          THE COURT:  All right.  Well, thank you Counsel.

11    I'll look forward to seeing the notice of the final form

12    within seven days and then either a stipulation of proposed

13    order about the notice issue, or competing letter briefs, or

14    you can fold that into the ESI order.

15         Thank you, Counsel.  The matter is submitted.

16         (Proceedings adjourned at 9:41 a.m.)

17

18

19

20

21

22

23

24

25

26

<u>CERTIFICATE OF TRANSCRIBER</u>

1

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14



15

16           Echo Reporting, Inc., Transcriber

17              Thursday, May 11, 2023

18

19

20

21

22

23

24

25