IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>ALL ACTIONS | ) <br> ) MDL No. 3047 <br> ) <br> ) Case No. 4:22-md-03047-YGR <br> ) <br> ) **JOINT STATEMENT RE:** <br> ) **PROTECTIVE ORDER** <br> ) <br> ) Judge: Hon. Yvonne Gonzalez Rogers <br> ) <br> ) Magistrate Judge: Hon. Thomas S. Hixson <br> ) |

Dear Judge Hixson:

Following the April 10, 2023 conference with Your Honor on disputes concerning the proposed Protective Order, Plaintiffs and Defendants exchanged further proposed drafts of the Protective Order and met and conferred on the same. The parties were unable to reach agreement on several issues and request that Your Honor rule on the remaining disputes.

Attached, please find a 5-page submission of the parties' positions. Further attached are:

- **Exhibit A** – A redline comparing the parties' respective proposals, showing Defendants' proposal as changes to Plaintiffs' proposal.

- **Exhibit B** – A clean copy of Plaintiffs' proposal.

- **Exhibit C** – A clean copy of Defendants' proposal.

Dated: May 12, 2023                                   Respectfully submitted,

/s/ *Jennifer R. Scullion*
Christopher A. Seeger
Jennifer R. Scullion SBN 183476
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6th FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com
jscullion@seegerweiss.com

Lexi J. Hazam

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29th FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Previn Warren
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

*Plaintiffs' Co-Lead Counsel*
**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Email: asimonsen@cov.com

Phyllis A. Jones, pro hac vice
Paul W. Schmidt, pro hac vice
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn
(State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Isaac D. Chaput (State Bar No. 329623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ichaput@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**KING & SPALDING LLP**

/s/ *Geoffrey M. Drake*
Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email: gdrake@kslaw.com

David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

**FAEGRE DRINKER LLP**

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman
Faegre Drinker LLP

90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone: +1 (612) 766-7000
Email: amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**MUNGER, TOLLES & OLSEN LLP**

/s/ *Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva  (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell (pro hac vice)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C.  20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

*/s/ Brian M. Willen*
Brian M. Willen
bwillen@wsgr.com

1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou
cchiou@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Counsel for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

## ATTESTATION

I, Jennifer R. Scullion, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: May 12, 2023            By:    */s/ Jennifer R. Scullion*
                                      Jennifer R. Scullion
                                      SBN 183476

**Plaintiffs' Positions**

1. **Export Controls.** Plaintiffs ask the Court to reject again Defendants' "export control" restrictions, which would treat *all* Highly Confidential-Competitor information as export controlled and impose restrictions unsupported by applicable law. Plaintiffs' proposal closely tracks the Model Protective Order (MPO) for Highly Sensitive Confidential Information.

This case does not pose any threat to national security. Discovery will not concern military technology covered by the International Traffic in Arms Regulations. And the Export Administration Regulations (EAR) and Office of Foreign Assets Control (OFAC) restrictions apply only to a subset of materials concerning non-public encryption technology per Export Control Classification Number (ECCN) 5E002.[1] The straightforward division of responsibilities set forth in the MPO is sufficient: (1) the producing party must identify any export-controlled materials and (2) the receiving party/ies must then "take measures" necessary to comply with applicable export controls. Plaintiffs' proposal appropriately tracks the MPO on these points.[2]

By contrast, Defendants' proposal would treat *all* HC-Competitor information as export-controlled and impose restrictions untethered to applicable law.[3] As the MPO recognizes, parties seeking use restrictions in the name of "export controls" bear the burden to limit those restrictions to covered materials. Defendants concede only "technical data" would be ECCN-controlled and agree to identify the ECCNs applicable to any "technical data" in their HC-Competitor productions. But they refuse to identify *which* documents (or even pools of documents) *within* those productions constitute "technical data" subject to any ECCN. Defendants are mega-cap companies represented by large, sophisticated law firms. They can discern controlled encryption data from relevant, non-controlled information, such as marketing plans or detailed user demographic analyses. Defendants also seek to bar otherwise *lawful* data exports unless "necessary for a litigation need." (Def. proposal, first sentence). No export control imposes this condition, which invades work-product. Moreover, given that *all* materials governed by the Protective Order can be used only for this litigation (Sec. 7.1), Defendants' language is, at best, superfluous and, at worst, dangerously ambiguous.

2. **Definition of Expert.** Defendants' proposal defines an "Expert" to exclude any current or anticipated employee "of a Party's competitor." Plaintiffs respectfully ask the Court to reject

---

[1] Plaintiffs' export control consultants have advised that the most restrictive ECCN potentially applicable to Defendants is 5E002, which pertains only to technical data concerning non-public encryption technology. Defendants have not identified any type of relevant technical data that would be subject to a more restrictive ECCN. This matters because, under EAR Part 740.17, ECCN 5E002 materials *can* be exported/shared by U.S. firms, including with overseas contractors in most countries. For example, a lawyer working for a U.S. firm on this case *can* take covered materials when travelling abroad and the U.S. firm also *can* share such materials with a retained consultant, expert, or other contractor who lives or works abroad.

[2] Consistent with Your Honor's prior guidance, Plaintiffs have deleted the MPO's introductory sentence that merely recites materials are subject to "applicable" export control laws.

[3] None of the orders Defendants cite warrant overriding the Northern District's MPO because the orders either were stipulated or out-of-circuit.

this language, as it is excessively broad in its scope and severely limiting in its effect.

As to scope, Defendants do not define "competitor." It appears to mean any company that competes with any Party with respect to any product or service whatsoever. But Meta and Google are giant conglomerates involved in a wide variety of businesses that have nothing to do with this MDL. Those range from search engines to virtual reality headsets to smartphones. It is hard to conceive of a tech industry company that *doesn't* compete with these behemoths.[4]

As to the consequences, because Defendants' proposal could be read to cover nearly every tech company in the country—indeed, this appears to be how they believe it should be read[5]—Plaintiffs would be prevented from retaining a Microsoft coder who works on the Windows operating system, or an Amazon engineer who works on cloud data storage, even though such products have nothing to do with this case. That would unfairly restrict Plaintiffs' potential pool of experts. *See Olin v. Facebook*, 2019 WL 5802020 (N.D. Cal. 2019) (Hixson, M.J.) (rejecting Facebook's effort to prevent plaintiffs from retaining an expert whose "prior work for [Google] was wholly unrelated to the technology at issue in this case"). "Public policy favors allowing experts to pursue their trade, allowing parties to select their own experts, and preventing parties from creating conflicts solely to prevent their adversary from using the services of the expert." *Aristocrat Techs. v. Int'l Game Tech.*, 2007 WL 9747650, at *6 (N.D. Cal. 2007).

The Court already ordered Plaintiffs cannot hire a Party's current employee as an expert. So, Plaintiffs cannot retain a TikTok engineer for their case against Meta. That ruling strikes a reasonable balance between protecting Defendants' competitive interests and ensuring Plaintiffs have a sufficient pool of experts to draw on for their case. The Court need not go further.

**3. Disclosure of Experts.** Plaintiffs respectfully ask this Court to reconsider its ruling adopting the Non-Snap Defendants' requirement of advance disclosure of experts who access Highly Confidential material. Recent developments make clear this provision would unnecessarily hamstring Plaintiffs and interfere with coordination between the MDL and the JCCP.[6]

Judge Kuhl expressed the view that California law does not "allow[] the identity of a nondesignated expert to be required to be disclosed to a party opponent." 5/3/23 JCCP Tr. at 8:3–6.[7] That is correct. *See Hernandez v. Superior Court*, 112 Cal. App. 4th 285, 297-98 (2003)

---

[4] Together, Meta and Google capture nearly 50% of all digital advertising revenue in the United States. *See* Sara Fischer, *Slow fade for Google and Meta's ad dominance*, AXIOS, https://www.axios.com/2022/12/20/google-meta-duopoly-online-advertising (Dec. 20, 2022)

[5] Defendants earlier proposed a definition of "competitor" that included Apple, Amazon, and Microsoft.

[6] Defendants' suggestion that Plaintiffs are "playing the two courts off of each other," *infra*, is a misplaced attempt at a potshot. Plaintiffs have been transparent with both courts regarding the potential impact of this issue on efficient coordination, and in seeking guidance regarding it.

[7] Defendants mischaracterize the JCCP court's guidance. Judge Kuhl stated her view of California law, as noted above, and contemplated further briefing only if the MDL adopts the provision Defendants urge. 5/3/23 JCCP Tr. at 8:7-10. Plaintiffs can provide the Court with transcripts from the March 22 and May 3, 2023 JCCP status conferences upon request.

(under California law, experts' identity "remains privileged until they are designated as trial witnesses"). Plaintiffs' counsel in the MDL and JCCP are working together to efficiently prosecute these actions, including sharing experts. *See The Effect of Equity on Mass Tort Law*, 1991 U. Ill. L. Rev. 269, 289; *see also* Manual for Complex Litig. (Fourth) § 20.313.

The Non-Snap Defendants' expert disclosure requirement undermines these efforts and creates an untenable situation. It either requires early disclosure of JCCP experts, contrary to what Judge Kuhl indicated California law permits, or it severely hampers Plaintiffs' ability to coordinate. Effectively, if the MDL Plaintiffs show a highly confidential document to an expert shared with the JCCP, all Plaintiffs have to disclose that expert to the designating Defendant.

Plaintiffs submit other provisions in the protective order adequately protect Defendants from competitive harm, and the separate source code order will contain enhanced protections. Should the Court believe additional measures are called for, it could adopt Judge Kuhl's suggestion that Parties file under seal their experts' agreements to the Protective Order. 3/22/23 Tr. at 12:24-27. Alternatively, while Plaintiffs believe it is unnecessary, *see supra* § 2, the Court could adopt Snap's proposal for early disclosure of experts' identity only in narrow situations.[8] In sum, Defendants' competitive interests can be adequately protected without hindering Plaintiffs' ability to prosecute their case or efficiently coordinate across the MDL and JCCP.[9]

**Defendants' Positions**

      **Expert Definition (Section 2.9).** Defendants' proposed PO defined "Expert" to exclude any "*past or* current employee of a Party *or of a Party's competitor*" and any "anticipated" future "employee of a Party *or of a Party's competitor*." ECF #192-1 (disputed provisions italicized). The Court ruled, "I'm going to strike the word 'past,'" given the likelihood that experts in the industry "would have at some point in their career worked for one of the parties or of the parties' competitor." 04.10.23 Tr. 31:7–19. Consistent with the MPO, the Court did *not* strike the language disqualifying current and future competitor employees from serving as experts, which would create an obvious "risk of experts improperly sharing confidential information with [Defendants'] competitors." *Corley v. Google, Inc.*, 2016 WL 3421402, at *3 (N.D. Cal. June 22, 2016); *In re Worlds of Wonder Sec. Lit.*, 147 F.R.D. 214, 216–17 (N.D. Cal. 1992) (denying motion to compel when discovery would be shared with competitor experts, because it would be "naïve" to expect them to "erase" their memories). *Olin* does not help Plaintiffs, because it contained the competitor language that Plaintiffs resist here, and the challenged experts were *past* employees of a competitor. 2019 WL 5802020, at *1. *Aristocrat* similarly involved a past employee, 2007 WL 9747650, at *4, and the stipulated PO did not categorically bar anyone from serving as expert, No. 5:06-cv-03717 (N.D. Cal.), ECF #120. Finally, Plaintiffs cannot reasonably complain that "competitor" is undefined when *they struck* Defendants' proposed definition on the ground that no definition appears in the MPO; nor is there any reason why the parties cannot "determine in good faith … who qualifies as a competitor of [a Defendant]." *Corley*, 2016 WL 3421402, at *4.

---

[8] Snap's proposed language, set out as an alternative in the trade secret MPO, was adopted in, *e.g.*, *Stark v. Patreon, Inc.*, No. 3:22-cv-3131 (N.D. Cal. Aug. 23, 2022).

[9] This outcome also would be most protective of the parties' attorney work product. *See, e.g. Todd v. Tempur-Sealy Int'l*, 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015).

3

**Expert Disclosures (Section 7.6).** This Court already rejected Plaintiffs' objections to the MPO's expert disclosure requirements, including their assertion that an expert's identity is "work product." 04.10.23 Tr. 33:6–34:2, 39:6–40:1; *In re Google Assistant Priv. Litig.*, 2020 WL 4698810, at *2 (N.D. Cal. Aug. 13, 2020). Neither Judge Kuhl's comment that California law *might* differ—an issue on which she did not rule and specifically invited briefing (May 3, 2023 Minute Order (JCCP 5255), at 3)[10]—nor speculation that the JCCP Plaintiffs may retain some of the same experts, provides any basis to revisit this Court's ruling, which applies only to the MDL and requires disclosure only when Plaintiffs want to share Defendants' competitively sensitive information with an expert. *Cf.* 03.03.23 Tr. 31:21–23 (Gonzalez Rogers, J.) (directing the parties not to "play [the MDL and JCCP courts] off each other").

**Export Controls (Section 12.8).** Plaintiffs' proposed export control provision is unworkable for two reasons. First, Defendants cannot designate technical data at the document level without enormous burden, especially given the anticipated breadth of discovery into technical data. Second, Plaintiffs' proposal provides no guidance for complying with export controls. Defendants' approach, by contrast, would limit the export control provision to "HIGHLY CONFIDENTIAL (COMPETITOR)" ("HCC") material and incorporates the Court's remarks that "guidance should be provided." 04.10.2023 Tr. 63:12–13. Given the high penalties (including for *Defendants*), 15 C.F.R. § 764.3, Defendants' proposal explains what the export control laws generally bar and provides Plaintiffs with the Export Control Classification Numbers (ECCNs) applicable to HCC productions—information above and beyond what the MPO requires—so the receiving party may assess whether they can export data in compliance with the regulations.

Scope of Export Control Provision. Defendants' proposal follows the Court's prior invitation to propose an export control provision that covers "highly competitive, sensitive information," 04.10.2023 Tr. 62:19–20, by narrowing this provision to material designated HCC, which approximates the universe of documents subject to export controls without the need for onerous, expert-driven review.[11] Defendants offered to explore whether they could exclude certain HCC materials that are competitively sensitive for non-technical reasons (*e.g.*, pricing) without document-level review, but Plaintiffs have refused to consider any alternatives.

Designations. Designating technical material on a *document-by-document* basis would impose an untenable burden. Because Defendants do not internally designate export control information at the document level, individual designation would require specialized manual review by both an export controls expert and an engineer able to translate highly technical documents. Frontline document reviewers—or even most attorneys—could not accurately do this. This review cannot be done through keyword searches or review tools because technical discussions refer to export-controlled topics in countless ways. Document-level identification might be feasible in cases involving narrower discovery into a specific patent/trade secrets, but Plaintiffs here challenge

---

[10] In *Hernandez*, the state court had required unilateral early disclosure of plaintiffs' experts *and their opinions*, to "establish a prima facie showing" of their claims. 112 Cal. App. 4th at 296.

[11] Defendants cannot predict *ex ante* the universe of technical data in future productions, but one example is encryption technology, which is highly regulated (15 C.F.R. § 734.17), and incorporated into many features (*e.g.*, user log-in, user identity, and data storage). "Technical data" extends beyond source code to engineering discussions, design specifications, and other documents, 15 C.F.R. § 772.1, which exist in formats (*e.g.*, Word) potentially designated HCC.

myriad technical features. Recognizing the burden of such designation in cases involving voluminous discovery, courts routinely do *not* require document-level identification, and approve provisions materially identical to Defendants' language. *E.g.*, *Virentem Ventures, LLC v. YouTube, LLC* No. 1:18-cv-917 (D. Del.), ECF #85 (entering defendants' PO), ECF #80 (letter briefing opposing plaintiffs' proposal for document-level identification on undue burden grounds); *see also In re Google Referrer Header Priv. Litig.*, No. 5:10-cv-04809 (N.D. Cal.), ECF #149 (approving language with no document-level identification); *HyperMedia Navigation LLC v. Facebook, Inc.*, No. 4:17-cv-05383 (N.D. Cal.), ECF #51 (same).

Critically, Defendants' approach does not impose any heightened burden on Plaintiffs. Regardless of whether the export control provision applies to individually-designated documents or to all HCC materials, if *any* materials Plaintiffs wish to share with a foreign expert or use abroad contains technical data, Plaintiffs will be legally required to implement some compliance method—*e.g.*, obtaining a license for their export, or confirming that their use complies with a nuanced export authorizations (neither of which would occur at the document level).

<u>Clear Guidance Regarding Compliance</u>. Defendants' proposal provides clear guidance to *all* Receiving Parties (including experts, contractors, and Professional Vendors without legal expertise who may access HCC under the PO) regarding how to comply with byzantine export control laws. It provides specific ECCNs for Defendants' productions, enabling Plaintiffs to identify applicable restrictions, license requirements, and potential license exceptions that may permit them to engage foreign experts or use information abroad for legitimate litigation needs. Simultaneously, it explains that a party can comply with the EAR by simply refraining from taking HCC material outside the U.S. or making it available to non-U.S. persons, both of which constitute an "export." *See, e.g.*, 15 C.F.R. § 734.17(a), (b); § 730.5(c) (defining "export" "broadly"). This guidance is crucial: the EAR broadly prohibits export of ECCN 5E002 non-public technical data to all countries except Canada, *see* 15 C.F.R. Pt. 738, Supp. 1, unless a license or license exception applies. Plaintiffs predict that all future exports to "retained consultants" and "experts" will fall under an (unspecified) exception in 15 C.F.R. § 740.17—a massively complex provision whose application depends on *e.g.*, citizenship and destination, and is available *only* to "employees, individual contractors or interns of a U.S. company … if the items are for internal company use." *Id.* § 740.17(a)(2). The exception would *not* necessarily cover external experts–nor "consultants" or *corporate* contractors or vendors. Plaintiffs also erroneously state that OFAC applies "only to a well-defined subset of materials," but in fact the scope of materials covered is extensive and not well defined. *See* 15 C.F.R. Pt. 730 *et seq.*

Moreover, courts routinely approve Defendants' language. *See, e.g.*, *Virentem Ventures*, ECF #85 (approving materially identical restrictions, after dispute, ECF #80); *Dynamic Data Techs., LLC v. Samsung Elecs. Co.*, No. 2:18-cv-00459 (E.D. Tex.), ECF #84 (approving Defendants' language over the N.D. Cal. Model language, ECF #64); *Facebook, Inc. v. OnLineNic, Inc.*, No. 3:19-cv-07071 (N.D. Cal.), ECF #35 (AEO material categorically cannot leave U.S.); *Brandywine Comms. Techs. LLC v. AT&T*, No. 4:12-cv-02494 (N.D. Cal.), ECF #94. This Court should too: Defendants' provision imposes far less burden in the document review process without imposing additional burden on Plaintiffs, and provides important guidance to recipients of HCC material who may lack experience with the complexities of EAR compliance.

5