UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No.:  4:22-md-03047-YGR<br><br>**JOINT STATEMENT RE: PRESERVATION ORDER** |
| This Filing Relates to:<br><br>ALL ACTIONS | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Thomas S. Hixson |

Dear Judge Hixson:

Pursuant to the Court's Order granting the parties' requested extension until May 26, 2023 to submit their joint proposed Preservation Orders (ECF 245), Plaintiffs and Defendants respectfully seek the Court's assistance to resolve their disputes concerning a proposed Preservation Order. The parties attach the following exhibits to this Joint Statement:

**Exhibit A** – Plaintiffs' proposed Preservation Order, with Defendants' proposed edits in redline.

**Exhibit B**- Clean version of Plaintiffs' proposed Preservation Order.

**Exhibit C** – Clean version of Defendants' proposed Preservation Order.

The parties would welcome a telephonic conference to discuss the disputed issues if the Court would find it helpful.

Dated:  May 26, 2023                     Respectfully submitted,


                                        _/s/ Christopher l. Ayers_
                                        CHRISTOPHER A. SEEGER
                                        CHRISTOPHER L. AYERS
                                        **SEEGER WEISS LLP**
                                        55 CHALLENGER ROAD, 6TH FLOOR
                                        RIDGEFIELD PARK, NJ 07660
                                        Telephone: + 1 (973) 639-9100

Email:  cseeger@seegerweiss.com
Email:  cayers@seegerweiss.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: + 1 (415) 956-1000
Email:  lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: + 1 (202) 386-9610
Email:  pwarren@motleyrice.com

Co-Lead Counsel

**WILSON SONSINI GOODRICH &
ROSATI**

**Professional Corporation**
_____/s/ Lauren Gallo White_____
Lauren Gallo White
Wilson Sonsini Goodrich & Rosati
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Brian M. Willen
Wilson Sonsini Goodrich & Rosati
bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Christopher Chiou
Wilson Sonsini Goodrich & Rosati
cchiou@wsgr.com
633 West Fifth Street

Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

**COVINGTON & BURLING LLP**

_____*/s/ Ashley M. Simonsen*_____
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email:  ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

**KING & SPALDING LLP**

        */s/ Geoffrey M. Drake*
Geoffrey M. Drake
David Mattern
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

**FAEGRE DRINKER LLP**

        */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson
Amy Fiterman
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and*
*ByteDance Inc.*

**MUNGER, TOLLES & OLSEN LLP**

_/s/ Jonathan H. Blavin_
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077
Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva  (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, _pro hac vice_
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C.  20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

_Attorneys for Defendant Snap Inc._

## **ATTESTATION**

I, Christopher L. Ayers, hereby attest pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


DATED:  May 26, 2023                                    By:  */s/ Christopher L. Ayers*
                                                                Christopher L. Ayers

**<u>Plaintiffs' Statement</u>**

This briefing addresses several big-picture issues as to which the Court can provide guidance to assist the parties in narrowing their overall disputes. Plaintiffs' proposed Preservation Order is based on preservation best practices and modeled after orders entered in multiple other litigations similar in scale, complexity, and public importance of this case.

***First***, with respect to User Information, Defendants[1] have proposed an extraordinary "opt in" approach, in which they designate the specific data sources, including a myriad of conditions, exceptions, and limitations, which each Defendant will agree to preserve and by implication seek Court approval to destroy or otherwise not preserve any Potentially Relevant Information that falls outside these designated repositories. Plaintiffs are not aware of courts adopting such an opt-in approach to preservation in any comparable litigation. Notably, the parties held a number of informal meet and confers to address Defendants' preservation,[2] and Defendants at times expressly declined to even discuss data sources outside those designated on purported proportionality grounds. As a result, Plaintiffs do not know what data sources and Potentially Relevant Information Defendants are intending to carve out. Defendants are correct that their data management systems are extremely sophisticated, and even Defendants' counsel themselves have had a difficult time wrapping their hands around the complexity. But this is reason to reject Defendants' approach, not endorse it. Particularly, in light of the recent sanctions imposed by multiple courts on a number of the Defendants for their preservation practices. *See, e.g., In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 1871107, at *21 (N.D. Cal. Feb. 9, 2023.); *In re Google Play Store Antitrust Litig.,* 2023 WL 2673109, at *1 (N.D. Cal. Mar. 28, 2023); *Stitch Editing Ltd. v. TikTok, Inc.* et al, No. 2:21-cv-06636, ECF Nos. 168, 221 (C.D. Cal. Dec. 5, 2022). If there are data sources Defendants would like to carve out due to burden, proportionality, or for other grounds, then the parties can engage in a transparent meet and confer process to determine if such sources should be excluded and bring any resulting disputes to the Court.

It is important to keep in mind that User Information is critical information to prove Plaintiffs' claims. This is the Information Defendants track, collect, and create with respect to each User and use to keep them hooked on Defendants' platforms. It is used in numerous machine-learning tools Defendants employ, and without it Plaintiffs cannot recreate or even understand how Defendants determined what to feed an individual plaintiff or which aspects of a Plaintiff's use of their products Defendants tracked. Plaintiffs still do not have insight into what "off-platform" Defendants track and collect, where such information is stored, and how it is used by Defendants' platforms. Significantly, in public documents filed in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, Meta disclosed that the DYI tool, which is mostly limited to a user's on platform activity, did not include (1) Facebook-generated information, (2) Information generated by third parties, and (3) Information received from third parties, among other things. There is no reason to treat data sources containing User Information differently from other data sources which contain Potentially Relevant Information. Potentially Relevant Information should be preserved.

---

[1] This position statement addresses issues common to all Defendants. There are differences, however, specific to each Defendant in regard to these preservation issues. Those relevant differences are outlined in letters that have been sent to each Defendant.

[2] There are significant disparities in the level of detail and knowledge of potentially relevant data sources among Defendants. TikTok, for instance, held a single one-hour meet and confer with Plaintiffs and provided minimal detail how it tracks, collected, stores, and uses User Information.

**Second**, with respect to User Information, Defendants continue to insist that their preservation obligations do not even begin until receipt of a Plaintiff's completed User Account Preservation Form. The preservation form is meant to assist Defendants' *ongoing* identification and preservation efforts, not abrogate federal law. It is well settled that the duty to preserve documents is triggered "when a party should have known that the evidence may be relevant to future litigation." *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018). Once triggered, "a litigant must preserve evidence which it knows, or would reasonably know, is relevant to the parties' claims or defenses." *See In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006); *see also Apple v. Samsung Electronics Co., Ltd.*, 881 F.Supp.2d 1132, 1136 (N.D. Cal. 2012) ("The duty to preserve evidence also includes an obligation to identify, locate and maintain, [relevant] information"). Where Defendants have information to identify user accounts and Potentially Responsive Information (and for many Plaintiffs Defendants do), there is no justification for Defendants not implementing preservation immediately—especially where Defendants' normal retention of User Information can be mere days.

**Third**, Defendants repeatedly use the term "Proportionality" throughout their proposed order as grounds to avoid not only preservation but even *disclosure* of what Potentially Relevant Information Defendants possess. Proportionality, however, is not a determination to be made unilaterally. *See* Exh. B, I.J. "The parties and court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Starline Windows, Inc. v. Quanex Bldg. Prod. Corp.*, 2016 44485568, at *9 (S.D. Cal. Aug. 19, 2016) (quoting Adv. Comm. Notes to 2015 Amendment to Rule 26(b)(1)). This collective responsibility arises because "neither party may possess the information and knowledge necessary to fully address the factors that 'bear on proportionality' or the 'importance of the discovery.'" *Id.* For instance, "[a] party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party," "but has far better information, and possibly the only information, with respect to the proportionality determination." *Id.* Destruction of relevant evidence on the basis of proportionality, without permitting meaningful dialogue between the parties and/or an opportunity to inspect, constitutes spoliation. *Id.* at *9-10. To this end, Plaintiffs incorporated a definition for Proportionality consistent with federal law to ensure that Proportionality is not used to shield Potentially Relevant Information without both prior disclosure and a determination under the factors set forth in Rule 26.

**Fourth**, Defendants have largely refused based on Proportionality to modify their preservation practices in the ordinary course of business. Plaintiffs' proposal including well-accepted provisions about the parties' general duties to suspend auto-deletion where necessary and appropriate. *See* Exh. B, II.B. "That litigation may require a party to deviate from its normal data ESI management protocols is not unusual, or on its face, a viable basis for objection." *Al Otro Lado, Inc*, 328 F.R.D. at 418. Instead, a party's obligation to preserve relevant ESI requires that they "arrive at workable preservation solutions, which balance the proportionality of preservation against the need for eventual production of information." *Id.* In *Al Otro*, the defendant sought a protective order limiting its obligation to preserve ESI, arguing that its existing infrastructure for archiving surveillance did not permit archiving of the surveillance requested by the plaintiffs. The court rejected this argument, finding that "the manner in which [the defendant] selectively chooses to archive incidents" was merely a reflection of the defendant's own determination of the "best method to meet its operational needs," which must be altered to permit archiving of potentially relevant surveillance. *Id.*; *see also Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *6–7 (C.D. Cal. May 29, 2007) (ordering preservation of ESI that defendants did not currently retain

but admitted could be logged without difficulty); *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 431 (S.D.N.Y. 2009) (party on notice that transitory data not ordinarily collected for business purposes was requested "had the obligation to preserve it, if possible, or to at least negotiate in good faith what data they could produce").

*Fifth and finally*, for months now the parties have been negotiating a *separate* CSAM preservation order, because CSAM and CSAM-related information should be preserved via CyberTipline submissions to National Center for Missing & Exploited Children ("NCMEC"). *See* Exh. B, II.H. The JCCP Plaintiffs have been leading that negotiation, and at the JCCP's May 3 conference Judge Kuhl ordered the JCCP Plaintiffs to file a motion concerning CSAM preservation by May 26. As ordered, the JCCP Plaintiffs filed a "Motion For an Order Governing The Preservation of Child Sexual Abuse Materials" earlier today. Defendants now want to take up CSAM preservation in the MDL at the same time. Plaintiffs believe that would be inefficient. The parties have agreed to coordinate and not waste judicial resources. Plaintiffs believe the Court should defer CSAM preservation until Judge Kuhl resolves in the JCCP. Defendants' response is due on June 9, and Judge Kuhl set a hearing date for June 27, 2023 at 1:45 PM. If there are remaining issues to be resolved in the MDL, then the parties can take them up at that time. For these reasons, Plaintiffs have not included CSAM in their proposed Preservation Order. At the Court's request, Plaintiffs will provide courtesy copies of the JCCP Plaintiffs' Motion and proposed CSAM Preservation Order. In any event, Defendants' CSAM proposal is unworkable and built on a false premise that all Defendants actually submit this information to NCMEC. Defendants do not all provide the information specified "in the ordinary course." Put simply, Defendants' handling and preservation of CSAM is inconsistent. This is litigation. CSAM is relevant Information. Defendants must ensure CSAM and CSAM-related information is preserved before it is destroyed.

**Defendants' Statement**

Defendants respectfully request that the Court order the Parties to confer on a proposed Preservation Order that follows Defendants' approach. That approach tracks Plaintiffs', but limits all Parties' preservation obligations by reasonableness and proportionality—consistent with the Federal Rules and every preservation order Defendants have found. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. Dec. 1, 2021) (reasonableness and proportionality govern preservation obligations); Preservation Order, *In re Fluoroquinolone Prods. Liab. Litig.*, MDL No. 15-2642, Case No. 0:15-cv-04122 (D. Minn. Apr. 26, 2016), Dkt. 0156 (parties must take "reasonable" preservation steps, "proportional to the needs of the case" and noting "limits to preservation pursuant to [Rules] 26(b)(1), 26(b)(2), and 37(e)."). For limited data categories—user account captures and child sexual abuse material ("CSAM")—it provides a more precise definition of the Parties' obligations, which is essential due to various legal, technical, and other complexities. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 369 (S.D.N.Y. 2006) ("a preservation order protects the producing party by defining clearly the extent of its obligations"); Preservation Order No. 7, *In re: General Motors LLC Ignition Switch Litig.*, No. 1:15-cv-03272 (S.D.N.Y. Apr. 27, 2015), Dkt. 0881. If the Court is inclined to adopt Plaintiffs' approach, Defendants request leave to file declarations and briefing to address Defendant-specific issues and associated burdens.

**Proportionality.** "[R]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI]." *The Sedona Principles*, Third Edition, 19 Sedona Conf. J., Principle 6 (2018); *e.g.*, *Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022) (applying principle). Here, Plaintiffs demanded sweeping changes to Defendants' system architecture that would

inevitably require preservation of data belonging to users unrelated to this litigation, in contravention of some Defendants' privacy policies, such as Snap. In response, Defendants explained their proportionality concerns. They voluntarily provided exceptional transparency to Plaintiffs, holding over 12 hours of Defendant-specific meetings with Plaintiffs, in which they described the data Defendants possess; retention, search, and privacy and legal compliance; and technical abilities and limitations—and will continue those conferrals.[3] Defendants' approach goes above and beyond what Rule 26 requires. Plaintiffs' would require Defendants to "demonstrate that the six factors outlined in Rule 26 weigh in [their] favor" if they believe "preservation of any Potentially Relevant Information is disproportionate to the needs of the case." Ex. B § 1.J. This unprecedented approach flips the legal standard on its head.

**User Data.** Contrary to Plaintiffs' assertions, Defendants' approach to User Data preservation facilitates a transparent and cooperative process culminating in clear guidance (for all Parties) of the User Account Data to be preserved, using tools designed specifically to create account captures, and the information required from Plaintiffs to effect that preservation. And Defendants commit to take reasonable and proportional steps to preserve other User Data. Plaintiffs, by contrast, refuse to preserve the User Data readily accessible to them, while asking Defendants to preserve every piece of data they track, collect, and create with respect to each User, with no consideration of what is reasonable or even feasible, let alone proportionate and relevant. Ex. B §§ I.L, III.A. Courts have rejected such unbounded preservation for digital data in part due to the "immense amount of data" connected to user accounts. *E.g.*, *Rodriguez*, 2021 WL 8085492, at *2; *Treppel*, 233 F.R.D. at 372 ("[A] blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems in their day-to-day operations." (cleaned up)). Even Plaintiffs' cited case recognizes that "wholesale preservation" of a *single source* of video data would "be over-burdensome." *Al Otro Lado*, 328 F.R.D. at 419. Concrete guidance is essential here because, as Defendants have explained to Plaintiffs, Defendants operate complex services with algorithms that can use thousands, millions, or billions of data points every day to provide each user a distinct experience. Data for one account on one day can be voluminous and ever-changing, and certain data can be captured only for a present moment or brief period (and cannot be recreated historically). Nor can Plaintiffs show how such data would have any utility in understanding what content an individual Plaintiff viewed.

**Retention Practices.** Plaintiffs' claim that Defendants refused to modify their retention practices is wrong: In addition to account captures, certain Defendants are preserving table and log data related to Plaintiffs' use of their services, including data that would otherwise be routinely deleted. Defendants have also repeatedly sought Plaintiffs' cooperation to identify alternatives to wholesale preservation of every user-data-related system that Defendants operate, after explaining specific system and data limitations. Yet Plaintiffs continue to insist that Defendants "suspend[]" "all processes and procedures which would result in the elimination … of any unpreserved data," and "re-program[] [their] systems … to preserve Potentially Relevant Information," Ex. C §§ II.B, G—*i.e.*, every piece of data that could have impacted what any Plaintiff saw on any Defendant's service, *id.* §§ I.L, III.A. Plaintiffs' claims may implicate tens of thousands of user accounts (since many allegedly used multiple accounts). Even if limited to identified Plaintiff accounts, Plaintiffs' approach is exceptionally burdensome, while calling for preservation of data of marginal if any probative value. *Cf. Rodriguez*, 2021 WL 8085492, at *2 ("[T]he Court won't require Google to

---

[3] TikTok provided Plaintiffs with detailed information about its user data preservation at its meet and confer. Plaintiffs never responded to TikTok's offer for an additional meet and confer.

4

start saving petabytes of data per day, indefinitely, without a more compelling showing of need."); *Margolis v. Dial Corp.*, 2012 WL 2588704, at *3 (S.D. Cal. July 3, 2012) (rejecting preservation order requiring "build[ing] an entirely new infrastructure").

**Preservation Forms.**  Defendants cannot identify or preserve User Data without plaintiff-specific information.  A name is not enough—hundreds or thousands of accounts can be registered to the same or similar names, and usernames often vary from real names.  Yet Plaintiffs insist that Defendants must preserve User Data *before* Plaintiffs provide basic identifying information, which for some Defendants would require putting entire systems for all users on hold (which itself is not possible).  This approach does not "abrogate federal law"; it follows it by requiring preservation once Defendants can reasonably anticipate the relevance of particular accounts.

**CSAM-Related Information.**  The Parties' joint agenda for the first CMC in these cases included "a protocol for the handling of [CSAM]."  Dkt. 45, Ex. B at 2.  The Court then ordered the Parties to negotiate a preservation order.  Defendants have for months met and conferred with Plaintiffs' co-lead counsel *in this MDL—not* in the JCCP—about CSAM reporting and compliance in an effort to resolve this federal law issue.  Plaintiffs now refuse to engage, asking instead to have a California state court resolve it.  But a state court cannot resolve a live dispute between the Parties in *this* federal proceeding, and this federal Court should rule on these federal issues.

On the merits, Plaintiffs' request that Defendants preserve *all* CSAM-related information reported to NCMEC, regardless of whether the CSAM was sent to or from one of *these Plaintiffs'* accounts, is infeasible, unreasonable, and disproportionate.  Nor can Plaintiffs explain away the third-party privacy and confidentiality concerns with preserving CSAM-related information relating to victims unrelated to this litigation.

The Parties agree that Defendants generally *cannot* retain or disseminate CSAM of which they have actual knowledge, including in civil litigation, without violating federal criminal law.  18 U.S.C. § 2258A; *B.L. v. Louisville Metro Police Dep't*, 2020 WL 9396448, at *1 (W.D. Ky. Oct. 21, 2020); *cf.* 18 U.S.C. § 3509(m) (limited discovery for criminal proceedings).  Though Defendants cannot preserve the CSAM itself for litigation, Defendants must report and (contrary to Plaintiffs' suggestion) *do* report known CSAM (and certain related information, where available) to NCMEC, and *are* preserving "CSAM and CSAM-related information…via CyberTipline submissions to [NCMEC]," as Plaintiffs request.  But Defendants have agreed to go further, committing to separately preserve for this litigation data reported to NCMEC.  Where available and used in the normal course of business, certain Defendants will also supply labels categorizing the nature of the CSAM using an industry classification standard (the "A1-B2" scale).  Plaintiffs want more, demanding that Defendants create "descriptions" of the CSAM or categorize the CSAM by applying a scale that Defendants do not currently employ.  But that asks Defendants to create—not simply preserve—additional information. Plaintiffs offer no justification for requiring Defendants' reviewers to learn and apply this index, and doing so would divert resources from the actual review and removal of CSAM.  Plaintiffs also ask Defendants to overhaul their CSAM reporting systems to add other information beyond what the federal reporting statutes require or allow. These proposals would require Defendants' employees to possess and view CSAM otherwise identified and reported without any human review–unnecessarily subjecting employees to higher volumes of CSAM and re-victimizing victims–all potentially in violation of, and certainly in contravention of the goals of, federal reporting statutes.  *See* 28 U.S.C. § 2258A(h).