# EXHIBIT A

1
2
3
4
5
6
7
8          ~~UNITED STATES DISTRICT COURT~~
9          ~~NORTHERN DISTRICT OF CALIFORNIA~~
10         UNITED STATES DISTRICT COURT
11         NORTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR |
| | MDL No. 3047 |
| This Document Relates to: | **[PROPOSED] ORDER GOVERNING PRESERVATION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |
| ALL ACTIONS | |

Pursuant to the Court's Order Setting Initial Conference (ECF No. 2), the Parties are required to "take reasonable steps to preserve all evidence that may be relevant to this litigation." This Order further governs the Parties' preservation obligations during the pendency of MDL No. 3047 ~~and Judicial Council Coordinated Proceeding No. 5255 (the "JCCP," and together with the "MDL,"~~ (the "**Action**") and shall apply to the preservation of Electronically Stored Information ("**ESI**") and hard copy documents (collectively, "**Documents**"). This Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("**Federal Rules**") or the Local Rules of the U.S. District Court for the Northern District of California ("**Local Rules**"), as

-1-

applicable; (b) ~~alter or affect the applicability of the California Code of Civil Procedure (the "CCP"), California Rules of Court, or the California Evidence Code (collectively, the "State Rules"); (c)~~ address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any Document or Information, regardless of whether the Document or Information is to be preserved, is preserved, or is produced; or (~~d~~c) alter or affect the objections to discovery available under the Federal Rules ~~or CCP; or (e) displace applicable federal and state laws with respect to CSAM, including, without limitation, 18 U.S.C. §§ 2251, 2252, 2252, or with respect to Defendants' reporting obligations, including, without limitation, 18 U.S.C. § 2258A~~. The purpose of this Order is to facilitate the preservation of ~~evidence in an efficient and proportional~~Potentially Relevant Information in an effective and Proportional manner ~~and~~ in accordance with governing law, and to give the Parties greater clarity as to their respective preservation obligations for purposes of this Action and the measures being undertaken to preserve Potentially Relevant Information. This Order is not intended to, and does not, establish or suggest that any particular document, piece of ~~information~~Information, or tangible object is or is not discoverable, relevant, or admissible in this matter, or subject to privilege or work product protection. Each party reserves any and all ~~rights and~~ objections to the collection, ~~production,~~ and/or ~~use~~production of documents or ~~information~~Information that may fall within the scope of this Order. This Order shall continue in full force and effect until further Order of this Court.

## I.   **DEFINITIONS**

Any term used herein is synonymous with the usage of the term in the Federal Rules of Civil Procedure unless otherwise stated.

B.   ~~A. The term~~ "**Child Sex Abuse Material or Child Exploitation Imagery**" ("**CSAM**" or "**CEI**") means "child pornography" as defined in 18 U.S.C. § 2256(8).

C.   ~~B.~~The term "**Communication(s)**" means the transmission, sending, or receipt of ~~information~~Information of any kind (in the form of facts, ideas, inquiries, or otherwise).

D.   ~~C.~~The term "**Custodian**" means ~~a~~ current or former ~~employee of a Defendant that the Defendant reasonably believes, or the Court determines, possesses information that is relevant~~

1  ~~to a party's claim or defense and preservation of which is proportional to the needs of the~~

2  ~~case.~~internal departments, divisions, committees, or teams, and individual members of such

3  departments, divisions, committees, or teams, possessing Potentially Relevant Information.

4      E.      The term "**Document(s)**" is synonymous and equal in scope to its usage in Fed. R.

5  Civ. P. 34 and to the terms "[w]ritings and recordings," "photographs," "original," and "duplicate"

6  as defined in Fed. R. Evid. 1001.

7      F.      ~~D.~~The term "**Information**" ~~means~~shall be interpreted broadly to include

8  Documents, ESI, Communications, tangible things, and other writings as those terms are used in

9  ~~Rules 26 and~~Rule 34 of the Federal Rules of Civil Procedure~~, the CCP, and the California~~

10 ~~Evidence Code~~.

11     G.      ~~E.~~The term "~~**Plaintiff Device Material**" shall include all information existing on~~

12 ~~any device used by a Plaintiff to access Defendants' applications, including the passwords needed~~

13 ~~to access any such information, and any information originally created on a device but that is~~

14 ~~stored in any storage device (e.g., external hard drive, cloud storage), even if no longer available~~

15 ~~on a device.~~**Injury**" means any injury, harm, symptom, or side effect a Plaintiff has asserted or

16 will assert was caused, in whole or in part, by use of Defendants' services (including mental,

17 psychological, or psychiatric injuries).

18     H.      ~~F.~~The term "**Potentially Relevant Information**" means Information that ~~(i) has~~

19 ~~not been deleted prior to the Party receiving notice of this Action, (ii) has been identified by the~~

20 ~~provision of adequate information to identify and preserve it, (iii)~~ is within the scope of the

21 categories set forth ~~in Sections IV.G and V.A~~ below~~,~~ and ~~(iv)~~that a Party knows or has reason to

22 believe, after a reasonable search, is or may likely be relevant to the claims asserted against

23 it/them or defenses asserted ~~against it in this action.  **Potentially Relevant Information is subject**~~

24 ~~**to the date range, source, and other restrictions applicable to Plaintiffs and each Defendant,**~~

25 ~~**respectively, as outlined in Sections II, III, IV, and V below.**  Potentially Relevant Information~~

26 ~~does not include identifiable user data subject to disposition as required by privacy regulations or~~

27 ~~court orders.~~by it/them in this Action.

28

I.   ~~G.~~ The term "**Preserve(d)**" means to take good faith, reasonable, and ~~proportional~~Proportional steps to retain and prevent the destruction, removal, mutilation, ~~alteration~~alternation, deletion, or disposal of Potentially Relevant Information (including, where applicable, potentially relevant document metadata) in the Party's possession, custody, or control. The steps should focus on retaining unique copies of Potentially Relevant Information wherever it is located. The Party objecting on proportionality grounds carries the burden to establish that the standard has been met.

J.   The term "**Proportional**" means that the scope of discovery should be tailored to this Action, taking into account the factors outlined in Rule 26, including the (1) amount in controversy; (2) the importance of the issues at stake in the litigation; (3) the parties' relative access to relevant Information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  To the extent that a Party asserts that the preservation of any Potentially Relevant Information is disproportionate to the needs of the case, such Party shall meet and confer about the Potentially Relevant Information the preservation of which the Party believes in good faith is disproportionate to the needs of the case and shall demonstrate that the six factors outlined in Rule 26 weigh in the Party's favor.

K.   ~~H.~~ The term "**User**" means any account user that is ~~identified in a~~a named plaintiff in any individual complaint filed in or transferred to this Action or for which a Defendant has received a litigation hold correspondence or Plaintiff User Account Preservation Form~~, or through the investigation of account-identifying information contained in a Plaintiff User Account Preservation Form~~ (ECF No. 269-1).

L.   The term "**User Account Information**" means Potentially Relevant Information concerning a User's account(s) on any of the Defendants' platforms. The following categories of User Account Information are not intended to be exhaustive and are intended only to facilitate the good-faith identification of Potentially Relevant Information, and do not reflect any representation by any Defendant that such data or Information is relevant, exists, or can be preserved:

1    ~~I. The term **"Injury"** means any injury, harm, symptom, or side effect a Plaintiff has asserted or will assert~~

2    ~~was caused by use of Defendants' services (including mental, psychological, or psychiatric injuries).~~

3    ~~J. The term "**User Data**" means Potentially Relevant Information concerning a specific User and the~~

4    ~~User's devices, the preservation of which is reasonable and proportional to the needs of the case.  Categories of~~

5    ~~User Data may include the data and information described below.  It is expressly understood that not all~~

6    ~~Defendants create, collect, or maintain each of the categories of data or information described below in the~~

7    ~~ordinary course of business.  The following list is intended to facilitate the good-faith identification of Potentially~~

8    ~~Relevant Information, and does not reflect any representation by any Defendant that such data or information is~~

9    ~~relevant, exists, or can be preserved.  The scope of each Defendant's obligation to preserve User Data (including~~

10   ~~User Account Data) is defined in Section III below.  Subject to those caveats, categories of User Data may~~

11   ~~include:~~

12   1.  Personal ~~information~~Information concerning a User and User's account(s), and any
13       device used to access any User's account at issue, including names, usernames,
         device IDs, IP addresses, date of birth, age, phone numbers, email addresses, number
14       of accounts, ~~or~~and any other identifying ~~information~~Information concerning a User
         and device-related ~~information~~Information created or provided by the User and~~/or~~
15       ~~created or~~ collected by Defendant ~~in the ordinary course of business, the preservation~~
         ~~of which is proportional to the needs of the case~~.

16   2.  Demographic ~~information~~Information, which may include ~~information~~Information
17       about a User's age, gender, location, and other demographic characteristics created
         or provided by the User and~~/or created or~~ collected by Defendant ~~in the ordinary~~
18       ~~course of business, the preservation of which is proportional to the needs of the case~~,
         including any algorithmic age estimates and other similar Information.

19   3.  Profile ~~information~~Information which may include ~~information~~Information about a
20       User's interests, preferences, and other details a User included in a profile on
         Defendants' ~~service~~platform(s) created or provided by the User and~~/or created or~~
21       collected by Defendant ~~in the ordinary course of business, the preservation of which~~
         ~~is proportional to the needs of the case~~(s).

22   4.  **User Activity ~~Data~~** ~~which may include information regarding a User's Activity on~~
23       ~~the services that Plaintiffs claim in the Master Complaints filed in the MDL and~~
         ~~JCCP (collectively, the "Master Complaints") to have used and to have suffered~~
24       ~~cognizable harm as a result of that use, and~~**Information**, as that term is defined
         below, which may include content a User posted, shared, or interacted with on a
25       ~~service~~platform and other data collected and/or activities taken in connection with
         User's accounts ~~that is preserved in the ordinary course of business~~.

26   5.  Users' usage data, ~~which may include information~~including Information and metrics
27       concerning account open and close dates, status, access points, devices used,
         account/profile settings, account-related statistics (*i.e.* snaps/messages/other sent and
28       received, when and to who, followers, followed, friends, blocked users, etc.) and

-5-

usage of the ~~service~~platform in any regard (*i.e.* total time spent on ~~service~~platform, number of daily sessions, etc.) created or collected by Defendant ~~in the ordinary course of business, the preservation of which is proportional to the needs of the case~~.

6. Device and technical data which may include ~~information~~Information about the devices the User used to access a ~~service~~platform (i.e., User's device type, IP address, browser type, operating system) created or collected by Defendant ~~in the ordinary course of business, the preservation of which is proportional to the needs of the case~~.

7. Advertising data which may include ~~information~~Information about the ads Users viewed or interacted with on the ~~service~~platform or which were suggested to a User, as well as interests and preferences as inferred from a User's activity on the ~~service~~platform, that is created or collected by a Defendant ~~in the ordinary course of business, the preservation of which is proportional to the needs of the case~~.

8. User-related data stored in or used by any Artificial Intelligence, algorithm, or other proprietary system or technology that collects or utilizes Information relating to individual users, including but not limited to profiles or Avatars, which also may include any data collected or reviewed by a Defendant in training, altering, or updating any Artificial Intelligence, algorithm, or other proprietary system or technology that collects or utilizes Information relating to individual users.

M.    The term "**User Activity Information**" means Potentially Relevant Information concerning a User's activity on any of the Defendants' platforms, including, but not limited to, Information concerning a User's activity on the platform, as well as content a User posted, shared, or interacted with on a platform, including, but not limited to, all posts, reactions (e.g., all emotional responses sent or received such as "like," "love," "laugh" "sad" or "angry" or other emoji related responses), comments, messages (e.g., direct or instant messages sent and received, disappearing messages sent or received, "snaps" sent or received, as well as all images or videos sent or received), reshares, push notifications, rewards (e.g., "streaks," "trophies," "charms," or "scores"), pages User visits, friends a User connects with, suggestions or recommendations by a platform, images, videos, text, or advertisements shown to or otherwise presented or suggested to a User, URL links sent or received (and whether they were clicked), and other data collected and/or activities taken in connection with User's accounts and/or devices.

~~8. Data saved to a User account and relied upon by relevant algorithms to recommend content to individual Users in the ordinary course of business, the preservation of which is proportional to the needs of the case.~~

-6-

1   ~~K. The term "User Account Data" means User Data that Defendants are able to preserve through User~~

2   ~~account captures or snapshots.  The scope of each Defendant's obligation to preserve User Account Data is defined in~~

3   ~~Section III below.~~

## II.   GENERAL PRESERVATION OBLIGATIONS

A.   Consistent with the factors set forth in Fed. R. Civ. P. 26, the Parties shall take

reasonable and ~~proportional steps to preserve Potentially Relevant Information, balancing the~~

~~competing needs to ensure that proper ESI is preserved, while also reducing the costs and~~

~~burdens of preservation.  To that end, the parties have engaged in numerous meet and confers~~

~~regarding preservation, including hours of detailed, defendant-specific discussions regarding~~

~~each individual Defendants' proprietary systems, data collection and retention practices, and~~

~~preservation capabilities and limitations. The provisions that follow are informed by those~~

~~discussions and outline the scope of the Parties' obligations with respect to~~ Proportional steps to

Preserve Potentially Relevant Information. Sections III and IV below provide specific, non-

exclusive examples to guide the Parties on what Potentially Relevant Information shall be

Preserved. This Order should not be construed to relieve any party to this action of the

obligation to expand the categories of information subject to preservation as necessitated by

developments in this Action such as new claims or defenses asserted.

~~B. Ephemeral Service or Application Data.  The Parties acknowledge and agree that the preservation of~~

~~ephemeral data that would require a party to disable or change any operating system powering the provision of a~~

~~Defendant's service or application to its users such that the service or application will behave in a way other than what~~

~~is represented to users, including eliminating the ephemeral characteristics of any service or social media application,~~

~~would be contrary to privacy laws, regulations, and judicial orders, and that doing so is not reasonably accessible for~~

~~preservation purposes and is not proportional to the needs of the case.  The Parties are not required to take such steps.~~

B.   The Parties shall take reasonable and Proportional steps to ensure that Potentially

Relevant Information in existence as of when a Party should have reasonably anticipated potential

litigation under Fed. R. Civ. P. 26(b)(1) are not destroyed, removed, mutilated, altered, concealed,

deleted, rendered inaccessible, or otherwise disposed of or compromised. This obligation may

1    include re-programing systems currently programmed to routinely or upon request not save

2    incoming or generated data and suspending any auto-delete features or retention policies in use as

3    to systems or devices under their direct control to the extent reasonably necessary to preserve

4    Potentially Relevant Information.

5          C.      The Parties' preservation obligations extend to Potentially Relevant Information

6    generated on or after this date as well as to Potentially Relevant Information in existence on this

7    date, no matter when created.

8          D.      The fact that particular Information may or may not be included in the scope of this

9    Order is not intended to, and does not, establish or suggest that the Information is or is not

10   discoverable, relevant, or admissible in this matter, subject to privilege or work product protection.

11   Each party reserves any and all objections to the collection and/or production of documents or

12   Information that may fall within the scope of this Order.

13          C. **Preservation of User Data**. Defendants' obligations to Preserve User Data (including User Account

14   Data) are identified in the party-specific provisions of Section III.

15          D. **Preservation of Non-User Custodial and Non-Custodial Data Sources**. Defendants' obligations to

16   Preserve Information other than User Account Data is governed by Section IV, which identifies a list of the types of

17   ESI that the Parties believe should be preserved if (1) in existence as of when the Parties reasonably anticipated

18   litigation, had notice of its relevance to the litigation, and had received adequate information to identify and preserve

19   it; and (2) to the extent that preservation is reasonable, proportional, and not unduly burdensome based on each

20   Defendant's capabilities.

21          E.     ~~**Legal Hold Notices to Custodians.**~~ Defense counsel shall ensure that legal hold

22   notices have been disseminated to Defendants' employees reasonably believed to possess

23   Potentially Relevant Information. Auto-delete functions for workplace chats, if they are employed

24   by a Defendant, have been disabled for employees to whom Legal Hold Notices have been issued,

25   and employees have been instructed to refrain from communicating about this Action on third-

26   party messaging apps that Defendants may not have the ability to preserve, and will issue periodic

27   reminders to recipients of these notices reiterating that the hold and its instructions are still in

28

1  place. To the extent Defendants become aware of additional individuals ~~who~~that may possess

2  ~~unique~~ Potentially Relevant Information, Defendants will issue the legal hold notice to those

3  additional employees. In addition, Defendants will notify any third parties (*e.g.*, cloud application

4  provider, offsite storage facilities) who hold Defendants' ESI or hard copy documents, of the

5  preservation obligations outlined in this Order or in the Federal Rules of Civil Procedure. Counsel

6  for individual Plaintiffs shall ensure that legal hold notices have been disseminated to their clients

7  and will advise Plaintiffs of their current and continuing obligations to preserve and not alter or

8  destroy ~~any~~ Potentially Relevant Information.

9        F.     In accordance with ESI Guideline 2.01(d) and Federal Rules, the Parties will

10  continue to meet and confer over their respective ESI preservation obligations and needs and agree

11  that preservation of Potentially Relevant ~~ESI~~Information will be reasonable and

12  ~~proportionate~~Proportional. The Parties further acknowledge and agree that ~~good faith~~ cooperation

13  ~~and a reasonable measure of early disclosure and~~, transparency ~~regarding Defendants'~~, and

14  disclosure of Information relating to all systems, existing data and data sources, ~~including~~

15  ~~numerous conferrals between the Parties held in the process of negotiating this Preservation Order,~~

16  ~~are appropriate to facilitate determinations regarding~~and reasonably anticipated costs associated

17  with all preservation options is necessary to determine what is reasonable and

18  ~~Proportionate~~Proportional given the circumstances of this Action~~.~~, and that the Parties will

19  disclose such Information (subject to any applicable protective order provisions) promptly and in

20  good faith. If a Party so demonstrates that the preservation of a data source(s) is not Proportional

21  to the needs of this Action, the Parties will amend this Order to so reflect.

22        ~~G. The Parties acknowledge that Defendants are subject to and will comply with various privacy regulations~~

23  ~~and court orders that require the disposition of identifiable user data.  Defendants' compliance with such regulations~~

24  ~~and court orders will not constitute a violation of this Preservation Order or Defendants' preservation obligations in~~

25  ~~this Action.~~

26        ~~H. Reservation of Right to Object. Nothing in this Order waives the right of any party to petition the Court~~

27  ~~for an order modifying its terms upon sufficient demonstration that compliance with such terms is unreasonably~~

28

+

1  burdensome or infeasible or that Preservation of particular information in a certain format or with different metadata

2  fields is reasonably necessary, provided, however that counsel for such party must first meet and confer with opposing

3  counsel and shall use reasonable efforts to negotiate an exception from or modification to this Order prior to seeking

4  relief from the Court.

5       G.     Each Defendant will identify all ESI preservation systems, including back-up,

6  archive and disaster recovery systems, and all associated policies, processes and procedures,

7  including those related to the deletion, removal, migration or transfer of data from a system or

8  location, and confirm that (i) all backup, disaster recovery, or archive media which may contain

9  Potentially Relevant Information that is not otherwise available are being preserved, and (ii) all

10  processes and procedures which would result in the elimination, or transfer to a less accessible

11  medium, of any unpreserved data and associated metadata which would otherwise be required to

12  be preserved or produced have been suspended.

13  **III.** ~~III. DEFENDANTS' PRESERVATION OBLIGATIONS REGARDING~~

14  ~~USER  DATA~~

15  A.  The scope of each Defendant's obligation to preserve User Data is defined below.  Defendants shall

16  take reasonable and proportional steps to ensure the preservation of such User Data, consistent with the

17  obligations described below.  Each Defendant collects and stores different types of information, and each

18  Defendant has varying capabilities to  reasonably access the various types of information based on their unique

19  systems.

20  B. Furthermore, Defendants have no obligations to preserve any User Account Data or other User Data

21  beyond application of each Defendants' standard retention policies applied in the ordinary course of business,

22  unless and until each respective Defendant receives from each Plaintiff a complete Plaintiff User Account

23  Preservation Form.  To avoid ambiguity, this means that Defendants cannot – consistent with privacy concerns

24  and technical limitations – identify and/or preserve User Data based on incomplete or inaccurate information that

25  is insufficient to identify a user account and/or information that yields more than one potentially matching user

26  account.

27

28

C. The Account Identifying Information required for each Defendant, below, must be submitted by a Plaintiff on the Plaintiff User Account Preservation Form approved by the Court (or on an equivalent, web-based form if agreed to by the parties).  A Plaintiff must submit the Account Identifying Information via the Plaintiff User Account Preservation Form approved by the Court even if that Plaintiff previously submitted some or all of the information in another manner.  Each existing Plaintiff must provide to Defendants a Plaintiff User Account Preservation Form within a reasonable time after entry of this Order.  Each future Plaintiff must provide to Defendants a Plaintiff User Account Preservation Form within two weeks of filing a Short Form Complaint.  If a Plaintiff must amend a previously served User Account Preservation Form, all subsequent versions must be named accordingly (e.g., "First Amended User Account Preservation Form," etc.).

D. **Meta Defendants**.  Meta Platforms, Inc.; Facebook Payments, Inc.; Siculus, Inc.; Facebook Operations, LLC; and Instagram, LLC (collectively, "Meta") are obligated to preserve User Data as follows:

1. Only ESI created or received between January 1, 2015 and February 14, 2023, and not deleted prior to receiving notice of this Action, will be preserved.

2. Meta cannot—and has no obligation to—retain any User Data for any particular Plaintiff unless and until a reasonable time after Meta receives from that Plaintiff a complete Plaintiff User Account Preservation Form.

Facebook and Instagram User Account Data:

a. Within a reasonable time after receiving the Plaintiff User Account Preservation Form for any individual Plaintiff, and subject to the limitations in this Order, Meta will preserve a one-time account capture,[1] using Meta's Switchboard tool, of the following categories of User Account Data of any account identified pursuant to Section III.C as it exists at the time of taking the capture.[2]

i. Instagram account captures will generally contain at least the following types of User Account Data, to the extent available:

1. Basic subscriber information: name, vanity, phone number, email, registration date, registration IP, logins, and account end date;

2. Information related to linked accounts, changes to name, vanity, and email;

---

[1] Meta cannot preserve Plaintiffs' Instagram or Facebook "feeds" exactly as they appeared to Plaintiffs when using Instagram or Facebook.

[2] Meta does not have any obligation to itself preserve User Account Data using the tools Meta makes available to its users to download their account data.  More information regarding those tools is available at the following links (*see also* Section V.B below):
https://www.facebook.com/help/212802592074644
https://help.instagram.com/181231772500920

-11-

3. Profile photo, bio information, and gender;

4. List of followers, accounts following, and incoming follow requests for the account;

5. Records of likes and comments, and comment likes made by the account, and a link to the media that the account interacted with;

6. Searches made by the account;

7. Videos and photos posted by the account, including archived content; and

8. Private messages between the account user and other accounts.

ii. Facebook account captures will generally contain at least the following types of User Account Data, to the extent available:

1. Basic subscriber information: name, vanity, phone number, email, registration date, registration IP, logins, and account end date;

2. Information related to linked accounts, changes to name, vanity, and email;

3. Profile and about me information, including gender;

4. Records of comments, likes, poll votes, and saves made by the account, and a link to the media that the account interacted with;

5. Searches made by the account;

6. Videos, photos, and posts made by the account, including archived content; and

7. Private messages between the account user and other accounts.

iii. Account captures will not contain any content that was deleted by the user before the capture was generated.

iv. Account captures will not contain any content posted by other users that the account interacted with.  In order to preserve content plaintiffs viewed or interacted with, Meta therefore will preserve, within a reasonable time after identifying and preserving accounts as described in Section III.C above, and to the extent reasonable and proportional:

1. The accounts plaintiffs were following or friends with as of the date  that such accounts are identified, including at minimum basic subscriber information and all of the non-deleted content that those accounts posted that plaintiffs potentially saw; and

2. The accounts plaintiffs did not follow or friend but whose content plaintiffs interacted with, including at minimum basic subscriber information and all the non-deleted content they posted and that Plaintiffs interacted with.  "Interacted with" shall mean liking, commenting on, and saving.

b. With respect to adult Plaintiffs, Meta is under no obligation to search for and preserve User Account Data (or User Data) for accounts beyond those identified using the data points provided by Plaintiffs in a Plaintiff User Account Preservation Form.

c. With respect to Plaintiffs who are suing on behalf of deceased minors, Meta will perform a reasonable search for additional accounts that may have belonged to the minor user, using the account information provided by Plaintiffs in a Plaintiff User Account Preservation Form as a starting point.

   i. During Meta's reasonable and proportional search for additional accounts in response to cases involving Plaintiffs who are suing on behalf of deceased minors, it will review phone numbers, email addresses, and Device IDs that appear in Meta's records as being linked to the accounts that are initially identified by searches using the account information provided by Plaintiffs. Meta will consider common phone numbers, email addresses, and Device IDs as data points potentially indicating that two accounts have a common user. With respect to Device IDs, Meta will review potential accounts only where the volume is low enough that it is reasonably likely to return positive matches.

   ii. Meta's reasonable and proportional search for additional accounts in response to cases involving Plaintiffs who are suing on behalf of deceased minors will include a review of basic information regarding the account and any content posted by the account that is publicly available at the time of the review. Meta's reasonable and proportional search will not include a review of any private content posted by the account or any messages sent or received by the account.

   iii. Meta will preserve User Account Data for all accounts it identifies through its reasonable and proportional search as reasonably likely to have been used by the deceased minor.

d. With respect to Plaintiffs suing on behalf of minors, Meta will consider, on a case-by-case basis, requests to search for additional accounts that may belong to the minor user following the process set forth in Section III.D.2.c above and using the account information provided by Plaintiffs in a Plaintiff User Account Preservation Form as a starting point.

   i. Any Plaintiff making such a request must describe with specificity the circumstances requiring such a search.

   ii. Meta is not obligated to perform any search, or identify and preserve any User Account Data, pursuant to this subparagraph III.D.2.d.

For any Facebook or Instagram accounts identified in a Plaintiff User Account Preservation Form as belonging to any third party alleged to have engaged in misconduct related to a Plaintiff on Facebook or Instagram, and subject to the limitations in this Order, within a reasonable amount of time after Plaintiffs provide the information in Section III.C, above, Meta will Preserve a single account capture of any identified account as it exists at the time of taking the capture. The capture will contain the information described in Section III.D.2.a.

e. To the extent that no Facebook or Instagram account is associated with the information provided by a Plaintiff, no User Account Data will be identified or preserved.

f. To the extent that any claims implicate information associated with users under the age of 13, the Plaintiff's Representative in the Action specifically consents to Meta's retention of data associated with the under-13 user and to application of any relevant policies of Defendants,

including but not limited to policies requiring such accounts to be deleted following preservation.

g. Meta has no obligation to Preserve any User Account Data on an ongoing basis. Moreover, nothing in this provision affects each Plaintiff's independent obligation to preserve all User Account Data accessible to them.

3. The Meta Defendants agree to take reasonable and proportional steps to Preserve User Data that is not User Account Data to the extent that data is relevant to a Party's claim or defense and proportional to the needs of the case, subject to the other provisions of this Order addressing User Data.

4. The Meta Defendants are not obligated to preserve any data or information from or related to any services provided by Meta or its subsidiaries or affiliates other than Facebook and Instagram, including (but not limited to) Users' use of WhatsApp or Oculus.

E. **Defendant Snapchat.** Parameters of User Data for Snap are outlined below.

1. Only ESI created or received between January 1, 2015, and October 6, 2022, and retained prior to this Action, will be preserved.

2. Snap User Data. Snap cannot and has no obligation to retain any User Data unless and until a reasonable time after Snap receives from that Plaintiff a complete Plaintiff User Account Preservation Form:

a. Within a reasonable time after receiving the Plaintiff User Account Preservation Form for any individual Plaintiff, and subject to the limitations in this Order, Snap will create a preservation record of the following categories of User Account Data as they exist at the time of preservation for any identified Snapchat account(s), and Snap also will freeze[3] the identified account(s):

i. Subscriber account information: name, date of birth, phone number, email address, registration date, registration IP address, and account end date;

ii. Snaps, chats, and messages, that are saved by the user, and available related metadata;

iii. Stories and friend list(s), and available related metadata;

iv. Content uploaded by the User to Snapchat and saved by the User on Snapchat, and available related metadata;

v. Other metadata created as a result of User engagement with Snapchat for any identified Snapchat account(s) that is retained in the ordinary course of business.

b. To the extent that no Snapchat account is associated with the name, email address, and phone number provided by a Plaintiff on the Plaintiff User Account Preservation Form, no User Account Data and User Account Activity will be identified and preserved. Snap is under no obligation to search for and Preserve User Account Data for accounts beyond those identified using the User Account Preservation Form.

---

[3] In "freezing" an account, Snap will temporarily block the account so that it cannot be used or accessed, thereby preventing the creation of new content in the frozen account.

c. Account captures will not contain all content posted by other users simply because these accounts may have interacted with the Plaintiff user account. Snap will not separately save all content belonging to non-identified user accounts just because they interact with a Plaintiff user's account.

d. With respect to accounts identified in a Plaintiff User Account Preservation Form as belonging to any third party alleged to have engaged in misconduct related to a Plaintiff on Snapchat, and subject to the limitations of this Order, within a reasonable amount of time after Plaintiffs provide the User Account Preservation Form, Snap will preserve:

   i. Personal information concerning the User, the User's Snapchat account at issue, and the User's device used to access the Snapchat account at issue collected by Snap in the ordinary course of business, the preservation of which is proportional to the needs of the case, and

   ii. Information that is associated with an individual User's account regarding that User's activity on the platforms saved by the user and collected by Snap in the ordinary course of business, as it exists at the time of the preservation, subject to the provisions of Section III.E.2.a, as applicable.

e. To the extent that any claims implicate information associated with users under the age of 13, including users who created or used adult accounts, the Plaintiffs' Representative in the Action specifically consents to Snap's retention of data associated with sub-13 users and to application of any relevant policies of Defendants, including but not limited to, policies requiring such accounts be deleted following preservation.

f. With respect to Plaintiffs who are suing on behalf of deceased minors, Snap will perform a reasonable search for additional accounts that may have belonged to the minor user, using the account information provided by Plaintiffs in a Plaintiff User Account Preservation Form as a starting point.

   i. During Snap's reasonable search, it will review email addresses, phone numbers, and Snap device IDs that appear in Snap's records as being linked to the accounts that are initially identified by searches using the account information provided by Plaintiffs. Snap will consider common email addresses, phone numbers, and Snap device IDs as data points potentially indicating that two accounts have a common user. With respect to Snap device IDs, Snap will review potential accounts only where the volume is low enough that it is reasonably likely to return positive matches.

   ii. Snap's reasonable search will include a review of basic information regarding the account and any content posted by the account that is publicly available at the time of the review. Snap's reasonable search will not include a review of any private content posted by the account or any messages sent or received by the account.

   iii. Snap will preserve User Account Data for all accounts it identifies through its reasonable search as reasonably likely to have been used by the deceased minor.

g. Snap agrees to take reasonable and proportional steps to Preserve User Data that is not User Account Data to the extent that data is relevant to a Party's claim or defense and proportional to the needs of the case, subject to the other provisions of this Order addressing User Data.

h. Nothing in this provision affects each Plaintiff's independent obligation to preserve all User Account Data accessible to them.

F. **TikTok Defendants**: TikTok Inc. and ByteDance Inc. ("TikTok Defendants") are obligated to preserve User Data, as follows:

1. Only ESI created or received between January 1, 2018 and October 6, 2022, and retained prior to this Action will be preserved.[4]

2. TikTok User Data. The TikTok Defendants cannot—and have no obligation to—retain any User Data until a reasonable time after TikTok receives from each respective Plaintiff a complete and accurate Plaintiff User Account Preservation Form.

a. Within a reasonable amount of time after a Plaintiff provides a User Account Preservation Form, TikTok will preserve available User Account Data for any accounts that may be located with the information provided on the User Account Preservation Form through use of affirmative collection efforts from the user account using its existing preservation tools as of the time of preservation. Unless it has been deleted by the user prior to preservation, the data preserved includes:

i. Basic subscriber information

ii. Profile photo and bio

iii. User uploads (including TikTok videos) and related metadata

iv. Comments and related metadata

v. Direct messages and related metadata

vi. Account activity (followers, following, likes)

b. **Preservation Limitations**: TikTok User Accounts may contain thousands of User Data that are managed in a highly decentralized fashion. Numerous data points are system file fields that do not contain substantive data or that are not relevant to the claims alleged in the instant litigation. Furthermore, risk of loss of data from certain data points is rare but unavoidable given the various business owners with manual account management responsibility over data fields. TikTok has taken reasonable and proportional efforts to preserve likely relevant data fields, including instructing business processes to bypass any retention periods that may exist. TikTok also notes that not all data fields preserved may ultimately be exportable.

c. TikTok agrees to take reasonable and proportional steps to Preserve User Data that is not User Account Data to the extent that data is relevant to a Party's claim or defense and

---

[4] TikTok states that it has undertaken a good faith and proportionately reasonable effort to identify sources of data within its custody and control that may contain information relevant to the claims alleged in this litigation. TikTok states that it does not represent that this listing is exhaustive and reserves the right to update and/or revise by notice in writing to Plaintiffs within a reasonable time if additional sources of information are identified.

1    proportional to the needs of the case, subject to the other provisions of this Order
     addressing User Data.

2    d. TikTok is under no obligation to search for and Preserve User Data for accounts beyond
3    those identified using the User Account Preservation Form.

4    3. For any TikTok accounts identified as belonging to any third party alleged to have engaged in
     misconduct related to a Plaintiff on TikTok, TikTok will preserve data through use of affirmative
5    collection efforts from the user account using its existing preservation tools as of the time of
     preservation within a reasonable amount of time after Plaintiffs provide the User Account Preservation
6    Form. *See also* Preservation Limitations identified above.

7    4. TikTok has no obligation to Preserve any Plaintiff User Data on an ongoing basis. Moreover, nothing
     in this provision affects each Plaintiff's independent obligation to preserve all User Account Data
8    accessible to them.

9    **G. YouTube Defendants.** Alphabet, Google, and YouTube ("YouTube Defendants") are obligated to

10   preserve User Data, including User Account Data on YouTube that is saved to any User's account, as follows:

11   1. Only ESI created or received between August 2, 2017, and October 6, 2022, and retained prior to this
     Action, will be preserved.

12   2. User Data. The YouTube Defendants cannot and have no obligation to retain any User Data unless
13   and until a reasonable time after YouTube receives from each respective Plaintiff a complete and
     accurate Plaintiff User Account Preservation Form that identifies, at minimum:

14   i. The Plaintiff's full name;

15   ii. All email address(es) associated with the Google account(s) the Plaintiff used to
16   access YouTube and, if possible, the Plaintiff's YouTube username(s);[5]

17   iii. To the extent Plaintiff User's claims are predicated on use of an account opened
     and used primarily by a user other than the Plaintiff User, the full legal name of
18   the third party, all known account identifying information (including the email
     address associated with the account), and the (estimated) time period during which
19   the Plaintiff used that Google account to access YouTube;

20   iv. (For any Plaintiff who is a minor) the name of the Plaintiff's legal representative or
     guardian ad litem ("Representative") with authority to consent to the preservation
21   of information and to receive information on the minor Plaintiff's behalf; and

22   v. (If entered) a court guardian ad litem order demonstrating the Representative's
     authority.

23   b. Within a reasonable time after receiving the Account Identification Information for any
24   individual Plaintiff, and subject to the limitations in provisions in Sections III.G.2.e–f

25

26   _____

27   [5] Plaintiffs should endeavor to provide YouTube usernames whenever possible. In certain
     instances where Plaintiffs provide only an email address, YouTube may require additional
     verifying information.

28

-17-

below, YouTube will conduct a reasonable search for any Google account associated with the email address(es) provided by the Plaintiff in the User Account Preservation Form.

c. To the extent that no Google account is associated with the email address(es) provided by a Plaintiff in the User Account Preservation Form, no User Data can be preserved.  To the extent a Google account is associated with the email address(es) provided by Plaintiff, YouTube shall preserve a single account snapshot of the following categories of User Account Data associated with a GAIA ID that exist at the time of preservation for any identified Google account(s),[6] to the extent available:

i. YouTube and YouTube Music Basic subscriber account Information;

ii. YouTube and YouTube Music User settings Information;

iii. YouTube and YouTube Music User comments and related metadata;

iv. YouTube and YouTube Music User uploads and related metadata;

v. YouTube and YouTube Music User channels and related metadata;

vi. YouTube and YouTube Music User subscriptions; and

vii. YouTube and YouTube Music User activity.

d. Sub-13 Accounts.  To the extent that any Plaintiff seeks preservation of any User Data associated with a User under the age of 13, including a User who created or used an adult account, the Plaintiff's identified Representative in the Action specifically consents to YouTube's retention of data associated with the sub-13 User and to application of YouTube's applicable policies, including but not limited to, policies relating to the closure or conversion of such accounts to supervised accounts.

e. The YouTube Defendants are not obligated to preserve any data or information from or related to any services provided by Google or its subsidiaries or affiliates other than YouTube.

f. YouTube shall have no obligation to preserve any User Data on an ongoing basis. However, nothing in this provision precludes Plaintiff from preserving any User Account Data, including on an ongoing basis, through Google's Takeout tool as provided in Section V.B, infra.

## IV.     IV. PRESERVATION OBLIGATIONS REGARDING OTHER (NON-USER) DATA SOURCES

A. General Principles. Consistent with the Manual For Complex Litigation's objective to eliminate unnecessary litigation costs, the Parties' obligations to preserve Information pursuant to this Order should be aimed at "best preserv[ing] relevant matter without imposing undue burdens."  See Manual for Complex Litigation, Fourth Edition § 11.442. As such, the Parties

---

[6] Account captures will not contain any content that was deleted by the user before the capture was generated.

1  shall take reasonable and proportional steps and negotiate in good faith to ensure that

2  information subject to this Order is Preserved without imposing unnecessary preservation costs

3  and burdens on each other. The Parties recognize that Defendants employ different data

4  collection and data management systems and processes so what is reasonable for one Defendant

5  may not be reasonable or feasible for another based on their unique system(s) and differing

6  preservation capabilities.

7

8      B. The fact that Information may or may not be included in the scope of this Order is not

9  intended to, and does not, establish or suggest that the Information is or is not discoverable,

10  relevant, or admissible in this Action, or that it is or is not subject to privilege, work product, or

11  other protection.

12      A.     C. Custodial Data.  Defendant(s) have taken, and will continue to take, reasonable

13  steps to investigate and identify Custodians who are reasonably likely to possess Potentially

14  Relevant Information. To facilitate the identification of Custodians and reasonably ensure the

15  Preservation of Potentially Relevant Information they may possess, the parties have exchanged

16  or will exchange lists and are workingwork cooperatively to identify, for each Plaintiff and each

17

18  Defendant, a list of the general job titles orand descriptions of custodianstheir duties and

19  functions, dates of employment for Custodians for whom they believe ESI should be

20  preservedpossess Potentially Relevant Information.

21

22      D. Databases and Logs. Defendants agree to take reasonable and proportional steps to

23  Preserve Potentially Relevant Information contained in databases, database management

24  systems, and proprietary systems to the extent that data is relevant to a Party's claim or defense

25  and proportional to the needs of the case.  The Parties recognize that it may not be feasible,

26  reasonable, or proportional for Defendants to preserve certain log data, or that certain log data

27  cannot be Preserved without undue burden, due to factors such as data volume and system

28

-19-

limitations, as well as Defendants' inability to identify or isolate the portion(s) of the databases or logs that may contain Potentially Relevant Information.

E. Internet and Intranet Sites. To the extent it exists, each Defendant shall take reasonable and proportional steps to preserve Potentially Relevant Information contained on that Defendant's internet or intranet sites. For clarity, the information on internet sites referenced in this section does not include information posted by or presented to users, or with which users otherwise interact, on Defendants' platforms, which is governed by other provisions of this order.

H.      Defendants' position is that they are not permitted to preserve Information constituting or containing CSAM or CEI due to restrictions imposed by federal and state laws on the possession and dissemination of such Information. Plaintiffs disagree and believe Defendants are obligated to report and preserve Potentially Relevant Information constituting or containing CSAM or CEI. Moreover, it is Plaintiffs' position that this Court has the authority to require preservation via reporting all Potentially Relevant Information constituting, containing, or relating to CSAM or CEI to the National Center for Missing & Exploited Children ("NCMEC"). The Parties are negotiating a separate CSAM Order to address the parties' preservation and reporting of Potentially Relevant Information constituting, containing, or relating to CSAM or CEI.

I.      Defendants' position is that they are not permitted by the Stored Communications Act to preserve Potentially Responsive Information concerning User Account Information and User Activity Information for non-Plaintiff Users without such individuals' written consent. To the extent necessary, this Order authorizes and requires Defendants to preserve Potentially Relevant Information wherever it is located and identified by Defendants, including any User Account Information and User Activity Information without written consent.

J.      Reservation of Right to Object. Nothing in this Order waives the right of any party to petition the Court for an order modifying its terms upon sufficient demonstration that compliance with such terms is unreasonably burdensome or infeasible or that Preservation of

1  particular information in a certain format or with different metadata fields is necessary, provided,

2  however that counsel for such party must first meet and confer with opposing counsel and shall

3  use reasonable efforts to negotiate an exception from or modification to this Order prior to seeking

4  relief from the Court.

5  F. Variations. In light of the varying and disparate data systems and architectures
   employed by the Parties, departures from this Order may be required. In the event that any Party

6

7  identifies a circumstance where application of this Order is not technologically possible,

8  proportional, or practicable, or involves Information that is not reasonably accessible, that Party

9  will disclose the reason(s) for and circumstances surrounding the need to depart from this Order,

10 and the Parties will meet and confer in an effort to reach agreement on an appropriate departure

11 from this Order. In the event that the Parties cannot reach agreement, the matter may be

12 submitted to the Court for determination.

13 **V.      DEFENDANTS' PRESERVATION OBLIGATIONS**

14

15      A.      G. **Potentially Relevant Information** Parties agree that Information related to the

16 following topics is potentially relevant to this Action and should be preserved to the extent (1) it

17 was created between the date specified for each Defendant in Section III above and February 14,

18 2023; (2) it was or is in existence as of when the Parties reasonably anticipated litigation and had

19 notice of its relevance to the litigation; and (3) Preservation is reasonable, proportional, and not

20 unduly burdensome based on each Defendant's capabilities:**:** Defendants shall take reasonable and

21 Proportional steps to ensure the preservation of Potentially Relevant Information, including, but

22 not limited to:

23          1.  Information concerning (i) this Action;

24          2. Information concerning (i) the effects of Defendants' services that
             Plaintiffs challenge in the Master Complaints on(ii) the mental health and

25          welfare of minorAdolescent users; and (iiiii) the safetyeffects of

26          Defendants' services that Plaintiffs challenge in the Master Complaints for
             minor users, including studies regarding:platform(s) on Adolescent users; or

27          (iv) whether Defendants' platform(s) is safe for Adolescent users;

28

-21-

1    ~~a. time or duration of use;~~

2    ~~b. addictive, habitual, compulsive, or otherwise problematic use;~~

3    ~~c. minor user activity, usage patterns, and engagement; and~~

4    ~~d. abusive or other activity that violates Defendants' community guidelines or~~

5    ~~standards with respect to minor users.~~

6    **2.** ~~3.~~ Information concerning the <u>tracking,</u> collection, use, and sharing of

7    ~~minor users~~<u>Adolescents</u>' information ~~for purposes of providing~~

      ~~personalized content to users on Defendants' services that Plaintiffs~~

8    ~~challenge in the Master Complaints~~<u>both on and off platform(s)</u>;

9    **3.** ~~4.~~ Information concerning the design, development, ~~and functionality of the~~

10   ~~features of Defendants' services that Plaintiffs challenge in the Master~~

      ~~Complaints, including how those features may have changed during the~~

      ~~time period relevant to this case. These features include (and the Parties~~

11   ~~recognize that many features are present in only some, but not all, of~~

12   ~~Defendants' services):~~<u>engineering, or implementation of Defendants'</u>

      <u>platform(s), including its features, functionality, and attributes, and all</u>

13   <u>changes over time, related to:</u>

14   a. ~~User~~<u>user</u> account creation and any age restrictions associated thereto;

15   b. ~~Tools~~<u>age-estimators</u> to determine, approximate, or estimate user age;

16   ~~and~~

17   c. ~~Algorithmic recommendations~~<u>algorithms</u>, including ~~social networking~~

      ~~recommendations ; group recommendations; and content~~

18   ~~recommendations;~~<u>, but not limited to, the following examples:</u>

19       i.   <u>User recommendation features (commonly referred to as "People</u>
             <u>You May Know" on Facebook and "Suggestions for You" on</u>

20           <u>Instagram; "Find Friends" on TikTok; "Quick Add" on</u>

21           <u>Snapchat);</u>

22       ii.  <u>Group recommendations;</u>

23       iii. <u>Recommendations across all product features, i.e. ranking of</u>
             <u>news feed, photos and videos pushed to Explore, "For You"</u>

24           <u>and/or Discover pages, "Activities" feeds, "Explore what others</u>
             <u>are up to Feeds," "Trending" topics or similar; or</u>

25       iv.  <u>Any differences in programming as between accounts utilized by</u>

26           <u>minors as compared to adult users (over the age of 18).</u>

27   d. ~~Geo-location~~<u>geo-location</u> and device tracking features <u>such as "Heat maps" and</u>

28       <u>"Tagged Locations";</u>

-22-

e. ~~Features~~platform features such as "Tagging", "Liking", "Following" and/ or hashtags;

f. ~~Service-based~~platform-based photo or video filters such as "AR Filters", "Effects Gallery for Stories", "Effects", "Templates", "Sounds" and/or "Lenses";
~~g. Service-based rewards ;~~

g. platform based rewards such as "Tokens", "Coins", "Gifts", "Badges", "Super Chats" and "Super Stickers";

h. ~~Interactive~~interactive platforms features such as "Direct Messaging" "Private Messaging", "Snap Streaks" and/or live-content streaming; or

i. ~~Email~~email and mobile ~~app-based~~app based push notifications.
~~5. Information concerning source code, design, machine learning, and algorithms integrated into Defendants' services that Plaintiffs challenge in the Master Complaints related to minor users' experience (including policies or coding that reflect differences between how minor users experience the services as compared to adult users), content recommendation, community guideline enforcement (such as the identification of underage accounts), content moderation, content ratings, and parental controls;~~

4. Information concerning testing, validation, quality assurance, investigation, monitoring, or other study of Defendants' platforms related to:

a. safety;

b. risk of harms;

c. time or duration of use;

d. addictive, habitual, compulsive, or otherwise problematic use;

e. Adolescent user activity, usage patterns, and engagement;

f. user accounts reported for abusive or other violative activity; or
g. group violations of Defendants' community guidelines or standards.

5. Information concerning knowledge of, investigation of, testing of, response to, or disclosure of Adolescents under the age of 13 with accounts on Defendants' platform(s) or any competitor platform;

6. Information concerning source code, design, machine learning, and algorithms integrated into Defendants' platform(s);

7. Information concerning whether a Defendant's platform(s), as well as any features or attributes, is a product and/or service, including, but not limited to, references to or discussions of a Defendant's platform(s) or any feature/attribute as a product;

8. ~~6. Aggregated information~~Information concerning the sales and sales volumes of advertising, and all revenue otherwise generated from or related to ~~minor users' use of Defendants' services that Plaintiffs challenge in the Master Complaints~~Adolescent users of the platform(s);

9. ~~7.~~ Information concerning parental controls or measures ~~regarding~~to improve the safety of Defendants' ~~services that Plaintiffs challenge in the Master Complaint~~platform(s);

10. ~~8.~~ Information concerning the ~~alleged~~ connection of and ~~inappropriate interactions between minor users and adult users on Defendants' services that Plaintiffs challenge in the Master Complaints~~interaction between Adolescent users and sexual predators or abusers, including, but not limited to, ~~sexual~~the use of Defendants' platforms by sexual predators or the exploitation ~~or solicitation~~ of any ~~minor~~Adolescent user, as well as all policies, practices, steps and procedures in place to protect children from sexual exploitation, ~~solicitation,~~ and human trafficking;

11. Information concerning suspected CSAM,[1] including, but not limited to, images and videos of suspected CSAM identified on a Defendant's platform(s) and determined by a Defendant to not constitute CSAM and CSAM reported by a Defendant to NCMEC;

12. ~~9.~~ Information concerning any regulatory submissions, ~~congressional~~Congressional oversight, or governmental investigation ~~of~~into Defendants regarding ~~the effect of Defendants' services that Plaintiffs' challenge in the Master Complaints on minors'~~, in whole or part, any actual, alleged, or suspected defect in the platform(s) or the mental health and welfare of Adolescent users of the platform(s);

13. Information concerning business planning and forecasting concerning Adolescent users;

---

[1] CSAM and CSAM-related Information shall be preserved pursuant to separate CSAM Preservation Order to be entered.

14. ~~10.~~ Information concerning marketing and promotion of ~~Defendants' services that Plaintiffs challenge in the Master Complaints to minor users~~the platform(s);

15. Information concerning complaints regarding Adolescents' use of the platform(s), or requests to disable or restrict Adolescents' accounts or allow or enhance parental control(s);

16. Information concerning design, development, implementation, engineering, testing, or other consideration of any actual or contemplated fix, repair, mitigation, remedial measure, or means of redressing, in whole or part, any actual, alleged, or suspected defect or risk in the platform(s) relating to Adolescent users of the platform(s), including, but not limited to, based on factors such as age, gender, race, or socioeconomic status and/or all testing of design, product feature and algorithmic-based changes to be implemented in Adolescent user accounts; and

17. Information concerning each User and their User Account Information and User Activity Information.

B.      The Parties acknowledge that each Defendant is in possession, custody, and control of all of the Potentially Relevant Information concerning a User's User Account Information and User Activity Information that a User on each Defendant's platform(s) has access to. The Parties likewise acknowledge that it is common for Users to create multiple User Accounts on Defendants' platforms. The Parties also acknowledge that each Defendant has collected and created Potentially Responsive Information concerning each User both on- and off-platform(s) and such Information, which is in each Defendant's possession, custody, and control, is not saved to a User's User Account and is not otherwise available or accessible to the User. The Parties further acknowledge that to facilitate Defendants' preservation of Potentially Relevant Information, each Plaintiff will complete a "Plaintiff User Account Preservation Form," (ECF No. 269-1) identifying any usernames, email addresses, phone numbers, and other information that they recall using in connection with a Defendant's platform(s). Defendants will perform a reasonable search for all accounts, including those not listed on the Plaintiff User Account Preservation Form, that may have belonged to a User, using the account Information provided by Plaintiffs and the Information and tools available to Defendants. Defendants will preserve Potentially Relevant Information concerning a User's User Account Information and User Activity Information for all accounts they

1    identify through its reasonable search as likely to have been used by a User as well as all other

2    Information collected and created by Defendants on- and off-platform(s) and will provide

3    Plaintiffs with a reciprocal "Defendant User Account Preservation Form," identifying and

4    describing the User Account Information and User Activity Information for all accounts

5    Defendants identify.  By providing a completed Plaintiff User Account Preservation Form to

6    Defendants, the Parties acknowledge that all User Account Information and User Activity

7    Information that Plaintiffs have access to is entirely duplicative of, or only a small subset of, the

8    Information in Defendants' possession, custody, and control.

9       H. Preservation of Data Relating to CSAM.

10        1. With limited exceptions not applicable here, federal and state law prohibit the possession, production, distribution, and receipt of CSAM using or affecting any means or facility of interstate or foreign

11        commerce.  *See, e.g.*, 18 U.S.C. §§ 2251, 2252, 2252A; *see also* Cal. Penal Code § 311 *et seq.*

12        Accordingly, Defendants will not preserve CSAM for purposes of this Action.  Instead, Defendants' reporting of CSAM in accordance with their reporting obligations and practices as described in paragraph IV(H)(2) below, and their preservation of information in accordance with paragraph

13        IV(H)(3) below, shall satisfy their preservation obligations in this Action with respect to CSAM.

14        2. The Protect Our Children Act requires certain providers, including Defendants, to make reports of CSAM to the National Center for Missing & Exploited Children ("NCMEC") NCMEC CyberTipline

15        in certain circumstances.  *See* 18 U.S.C. § 2258A(a)(1)(A).  In the ordinary course of business and in their "sole discretion," 18 U.S.C. § 2258A(b), each Defendant currently usually includes the reported

16        CSAM (to the extent practicable and readily available) in the information it reports to the NCMEC CyberTipline.  The Parties have met and conferred about the non-CSAM information that Defendants

17        generally report to the NCMEC CyberTipline.  Counsel for each Defendant will promptly alert counsel for the other Parties if that Defendant no longer includes reported CSAM (to the extent

18        practicable and readily available) in its reports to the NCMEC CyberTipline in the ordinary course of

19        business.

20        3. Defendants shall preserve the following information relating to NCMEC CyberTipline reports that Defendants are able to determine relate to CSAM sent to or from or uploaded by a Plaintiff User, to

21        the extent such information is already generated and/or preserved in the ordinary course of Defendants' businesses:

22          a. An identification number for the NCMEC report;

23          b. The time and date the NCMEC report was submitted;

24          c. An identifier for the account that uploaded or sent the reported media;

25          d. In the case of media sent from one user account directly to one or more other user accounts, identifiers for such recipient accounts;

26

27          e. An identifier or identifiers for each reported piece of media;

28          f. The IP address associated with each media upload;

g. The time each reported piece of media was uploaded;

h. The type of each reported piece of media;

i. The A1-B2 or "severe meme" classification assigned to each reported piece of media.

I. Limitations on Obligations to Search or Preserve Particular Data Sources.

1. For Defendants, some or all of the following data sources and data types are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and unwarranted extraordinary measures will not be taken to preserve ESI from these sources, which may be retained pursuant to standard business processes, but not otherwise preserved, searched, reviewed, or produced:

a. backup systems and/or tapes;

b. systems no longer in use that cannot be accessed by using systems currently in use by the Party;

c. voice messages that are not chronicled to an email, messaging, or other searchable, indexed archive system;

d. instant messages and chats that are not chronicled to an email, messaging, or other searchable, indexed archive system. For the sake of clarity, records of chat messages from Defendants' enterprise data sources, which are being Preserved for identified Custodians, would not fall into this category.

e. sound recordings, including, without limitation, .mp3 and .wav files that are not chronicled to an email, messaging, or other searchable, indexed archive system;

f. information contained on mobile devices that is not otherwise backed up to an enterprise system;

g. any other data sources that are discovered during Defendants' investigation that are otherwise not reasonably accessible.

2. In addition to the agreements above, the Parties agree that data from the following sources from some Defendants (a) could contain Potentially Relevant Information but (b) under the proportionality factors, should not be preserved:

a. Deleted, slack, fragmented, or unallocated data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to Preserve without disabling the operating system.

c. On-line data such as temporary internet files, history cache, cookies, and the like.

d. Mobile device activity logs.

e. Server, system, or network logs.

f. Dynamic fields in databases or log files not stored or retained in the usual course of business.

-27-

g. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the Party.

h. Other forms of ESI whose Preservation requires unreasonable, disproportionate, and/or non-routine, affirmative measures that are not utilized in the ordinary course of business.

3. For the Meta Defendants, the following data sources and data types are not reasonably accessible, and the parties agree not to preserve, search, review, or produce the following:

a. backup systems and/or tapes used for disaster recovery;

b. systems no longer in use that cannot be accessed by using systems, tools, or resources currently in use by the Meta Defendants;

c. voice messages that are not chronicled to an email, messaging, or other searchable, indexed archive system;

d. instant messages and chats that are not chronicled to an email, messaging, or other searchable, indexed archive system. For the sake of clarity, records of chat messages from Meta's Workplace Chat system, which is being preserved for identified legal hold notice recipients, would not fall into this category;

e. sound recordings, including, without limitation, .mp3 and .wav files that are not chronicled to an email, messaging, or other searchable, indexed archive system;

f. video recordings that are not chronicled to an email, messaging, or other searchable, indexed archive system;

g. information contained on mobile devices that is not otherwise backed up to an enterprise system;

h. deleted, slack, fragmented, or unallocated data only accessible by forensics;

i. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

j. on-line data such as temporary internet files, history cache, cookies, and the like;

k. data in metadata fields that are frequently updated automatically, such as last opened or last modified dates;

l. mobile device activity logs;

m. server, system, or network logs;

n. dynamic fields in databases or log files not stored or retained in the usual course of business;

o. information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment by the Meta Defendants.

4. For the Snap Defendant, the following data sources and data types are not reasonably accessible, and the parties agree not to preserve, search, review, or produce the following:

-28-

1    a. backup systems and/or tapes used for disaster recovery;

2    b. systems no longer in use that cannot be accessed by using systems, tools, or resources
3        currently in use by the Snap Defendant;

4    c. voice messages that are not chronicled to an email, messaging, or other searchable, indexed
        archive system;

5    d. Except for Slack messages, any other instant messaging and chat application data that are not
6        chronicled to an email, messaging, or other searchable, indexed archive system;

7    e. video and sound recordings, including, without limitation, .mp3 and .wav files, that are not
        chronicled to an email, messaging, or other searchable, indexed archive system;

8    f. information contained on mobile devices that is not otherwise backed up to an enterprise
9        system;

10   g. deleted, slack, fragmented, or unallocated data only accessible by forensics;

11   h. random access memory (RAM), temporary files, or other ephemeral data that are difficult to
        preserve without disabling the operating system;

12   i. on-line data such as temporary internet files, history cache, cookies, and the like;

13   j. data in metadata fields that are frequently updated automatically, such as last opened or last
        modified dates;

14   k. mobile device activity logs;

15   l. server, system, or network logs;

16   m. dynamic fields in databases or log files not stored or retained in the usual course of
17       business;

18   n. information created or copied during the routine, good-faith performance of processes for the
        deployment, maintenance, retirement, and/or disposition of computer equipment by the
19       Snap Defendant.

20   5. For the TikTok Defendants, the following data sources and data types are not reasonably accessible,
        and the parties agree not to preserve, search, review, or produce the following:

21   a. voice messages;

22   b. information from handsets, mobile devices, personal digital assistants, and tablets that is
23       duplicative of information that resides in a reasonably accessible data source;

24   c. except for Lark messages, instant messaging and chat application data;

25   d. automatically saved versions of documents and emails;

26   e. video and audio recordings in custodial files;

27   f. deleted, slack, fragmented, or other data accessible only by forensics;

28   g. systems, server and network logs;

-29-

h. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

i. on-line access data such as temporary internet files, history, cache, cookies, and the like;

j. dynamic fields of databases or log files that are not retained in the usual course of business; and

k. data in metadata fields that are frequently updated automatically, such as last opened dates.

3. For the YouTube Defendants, the following data sources and data types are not reasonably accessible, and the parties agree not to preserve, search, review, or produce the following:

a. voice messages;

b. information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

c. Except for Google Chat, any other instant messaging and chat application data;

d. automatically saved versions of documents and emails;

e. video and audio recordings in custodial files;

f. deleted, slack, fragmented, or other data accessible only by forensics;

g. systems, server and network logs;

h. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

i. on-line access data such as temporary internet files, history, cache, cookies, and the like;

j. dynamic fields of databases or log files that are not retained in the usual course of business; and

k. data in metadata fields that are frequently updated automatically, such as last opened dates.

## VI.  ~~V.~~ PLAINTIFFS' PRESERVATION OBLIGATIONS

A.  ~~Potentially~~ **Relevant Information:**  Each Plaintiff ~~(including Representatives of Plaintiffs who are minors, deceased, or otherwise lack capacity)~~ shall take reasonable and ~~proportional~~ Proportional steps to ensure the preservation of the following Potentially Relevant Information, to the extent it exists and is accessible to the Plaintiff, ~~once the Plaintiff reasonably anticipates litigation~~:[72]

---

[72] The inclusion of these topics is not intended to suggest that every User possesses information concerning all topics in this Paragraph.

1. ~~Plaintiff's~~User's use and interaction with Defendants' ~~services~~platform(s), including (i) any User Account ~~Data~~; (ii) any communications or content created by a ~~Plaintiff~~User on their User Account; and (iii) any third-party communications or content a User has accessed or received via Defendants' ~~service.[8]~~platform(s).

2. Communications related to (i) this Action~~, or~~ (ii) a ~~Plaintiff's~~User's account on Defendants' ~~service, (iii) a user's use of the service, including Injuries suffered as a result of using Defendants' services, or (iv) Defendants' services~~platform(s).

~~3. Information, documents, or materials related to Injuries or a Plaintiff's physical, mental, or emotional condition, including (but not limited to):~~

~~a. Those reflecting expenditures attributable to Injuries;~~
~~b. Those relating to a Plaintiff's physical, mental, or emotional condition;~~
~~c. Photographs, videos, audio recordings, slides, CDs, DVDs, artwork, or any other media relating to Plaintiff's physical, mental, or emotional condition during the time Plaintiff claims to have suffered from Injuries, or Plaintiff's life thereafter;~~
~~d. E-mails, tweets, text messages, social media posts, or other posts (including any pictures or videos included with post) on any websites, chat rooms, blogs, message boards, support groups, or social media services about Plaintiff's physical, mental, or emotional condition or Injuries;~~
~~e. Diaries, journals, or notebooks discussing Defendants' services; Plaintiff's physical, mental, or emotional condition or Injuries;~~
~~f. Calendars, datebooks, appointment books, or other documents in recording appointments related to Injuries;~~
~~g. Those related to any workers' compensation, Social Security, or other disability claims, benefits, or compensation;~~
~~h. Communications with all crisis hotlines (including but not limited to suicide hotlines and eating disorder hotlines);~~
~~i. Those concerning treatment received in connection with addiction;~~
~~j. Those concerning alcohol, tobacco/nicotine, opioid, and recreational drug use and/or treatment.~~

3. ~~4.~~ Physical and mental health records~~,~~ in User's actual possession, including psychiatric records, psychological records, medical records, ~~pharmacy records,~~and health insurance records and expenses~~, and communications related to physical and mental health treatment~~.

4. ~~5.~~ Educational records in User's actual possession, including information concerning school attendance, academic performance, disciplinary proceedings or actions, student counseling ~~or therapy services~~, and extracurricular activities ~~or programs~~.

5. ~~6. Non-educational~~Records related to non-educational activities in User's actual possession concerning after-school programs ~~(both in and out of school)~~, athletic activities, clubs, religious groups, and summer programs.

---

~~[8] To the extent Plaintiffs delete any User accounts or User Account Data, in violation of their Preservation obligations, Defendants may be unable to preserve such User accounts, User Account Data, or User Activity Data.~~

-31-

7. All electronic devices, including but not limited to smart phones, smart watches; laptop, desktop, and tablet computers; gaming consoles; smart TVs; and any other devices through which Plaintiff may have accessed the Defendants' apps and services, the internet, or other communication services, and all Plaintiff Device Material, including for any newly obtained devices.

8. Documents, materials, or information regarding media viewed and/or heard concerning the alleged effects of Defendants' services on users, including attorney advertisements.

6. 9. Information in the possession, custody, or control of a User and/or the User's and/or User's parent(s)' and/or User's guardian(s)' (if the parent or guardian filed claim claims against any Defendant or if the User is under the age of 18 years) custody or control related to:

    a.  Employment history;

    b.  Residential history;

    c.  Criminal and juvenile delinquency history, including arrests, convictions, fines, incarceration, parole, and probation;

    d. Lawsuits, bankruptcies, and family court proceedings;

    d.  e. Social and child services history;

    f. Military service;

    e.  g. Any media in User's actual possession viewed and/or heard by User and their parents concerning the alleged effects of Defendants' apps and services on Adolescent users;

    f.  h. Parental Documents and information related to parental efforts to guide or control social media use;

    g.  Any journals, diaries, letters, emails, text messages, photographs, videos, or other items or Information relevant to the injuries Plaintiff has asserted or will assert were caused by use of Defendants' products.

B.    The Parties acknowledge that Users are children and teenagers with limited capacity and they will use best efforts to carry out their obligations.

C.    The Parties acknowledge that the tools Defendants offer to permit Users to Preserve their own User Account limit the User Account Information to a subset of the Information in Defendants' possession, custody, and control. Thus, as reflected in Section III.B above, if a Plaintiff submits to Defendants a completed Plaintiff User Account Preservation Form, then such Plaintiff need not preserve any User Account Information and User Activity Information.

i. Discrimination, harassment, trauma, violence, threats, bullying, cyberbullying, emotional neglect, physical abuse, physical assault, physical neglect, rape, sexual abuse, sexual assault, self-harm, or verbal abuse experienced by a Plaintiff.

B. Plaintiffs' obligations to preserve Potentially Relevant Information related to their use and interaction with Defendants' services, as contemplated in Section V.A, includes, but is not limited to, an obligation to preserve the Potentially Relevant information related to their use and interaction with Defendants' services that is readily available to them via tools provided by Defendants, as outlined in this subsection.  In certain circumstances, Plaintiffs' User Account Data is more accessible to Plaintiffs than to Defendants, because (i) the information necessary to locate Plaintiffs' accounts is in Plaintiffs' sole possession; (ii) knowledge regarding Plaintiffs' use of those accounts (including new activity on those accounts that may be relevant to the Action) is in Plaintiffs' possession; and/or (iii) Defendants provide tools that permit Plaintiffs readily to Preserve their own account data.  Accordingly, Plaintiffs are obligated to preserve the information readily available to them, as follows:

1. Concurrently with or promptly after filing of any short form complaint in the Action, all Plaintiffs asserting claims against Meta are obligated to preserve all information relating to their usage of Instagram and/or Facebook that is available to them through Meta's Download Your Data tools, which are described at https://help.instagram.com/181231772500920 and https://www.facebook.com/help/212802592074644.  Specifically, Plaintiffs must Preserve information through Meta's Download Your Data tools for every Instagram and/or Facebook account they claim to have used.

2. Concurrently with or promptly after filing of any short form complaint in the Action, all Plaintiffs asserting claims against YouTube are obligated to preserve all information relating to their usage of YouTube that is available to them through Google's Takeout Tool, which is available at https://takeout.google.com.  Specifically, Plaintiffs must Preserve information through Google's Takeout Tool for every Google account they claim to have used to access YouTube.

3. Concurrently with or promptly after filing of any short form complaint in the Action, all Plaintiffs asserting claims against Snap are obligated to preserve all information relating to their usage of Snapchat that is available to them through Snapchat's tool, which is described at https://help.snapchat.com/hc/en-us/articles/7012305371156.  Specifically, Plaintiffs must preserve information through Snapchat's tool for every Snapchat account they claim to have used to access Snapchat.

## VII.   VI. CONTINUING OBLIGATIONS

Periodically, no less than once per calendar year, the Parties will meet and confer to discuss the preservation obligations outlined herein, specifically as related to additional Parties, non-parties, or newly identified sources of documents, data, or other tangible thingsInformation.  This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

**IT IS SO ORDERED.**

DATED: _____                    _____
                                           The Honorable Thomas S. Hixson
                                           United States Magistrate Judge


SUBMITTED BY:

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.4.0.111 Document comparison done on 5/26/2023 6:31:45 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** REDLINE - Preservation Order - Def Draft (5.24.23 v 5.26.23).docx | |
| **Modified filename:** MDL 3047 - Preservation Order - Plaintifffs 5.26.docx | |
| **Changes:** | |
| Add | 239 |
| Delete | 653 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 892 |