LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com

BRIAN M. WILLEN
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

CHRISTOPHER CHIOU, SBN 233587
SAMANTHA A. MACHOCK, SBN 298852
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
       smachock@wsgr.com

*Attorneys for Defendants GOOGLE LLC, YOUTUBE, LLC and ALPHABET INC.*

ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3047<br><br>CASE NO.: 4:22-md-03047-YGR<br><br>**DEFENDANTS META, TIKTOK, AND YOUTUBE'S RESPONSE TO PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE REGARDING EXPERT DISCLOSURE**<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Thomas S. Hixson |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

    A.    The Magistrate Court Did Not Clearly Err in Following the HCC Model PO. ........................................................................................................ 3

    B.    Section 7.6 Does Not Invade Protected Work Product and Is Essential to Protecting Defendants' Proprietary, Competitive Information. ................. 5

    C.    Section 7.6 Will Not Impede Coordination with the JCCP Proceedings. ............... 8

    D.    Plaintiffs' "Alternative" Proposals Do Not Adequately Protect Designating Parties, Given the Highly Sensitive Nature of the Information at Issue. ........................................................................................ 9

CONCLUSION ........................................................................................................................ 10

**INTRODUCTION**

The Magistrate Court did not commit clear error in adopting Section 7.6 of the Protective Order ("PO") (ECF No. 290), which adopts Section 7.4(a) of this District's "presumptively reasonable" Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("HCC Model PO"). *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011). Section 7.6 requires that, before a party may give an expert access to another party's "HIGHLY CONFIDENTIAL (COMPETITOR)" ("HCC") protected material, it must disclose the expert's identity and basic conflicts information (*e.g.*, employers and sources of professional income). *See* ECF No. 290.[1] Such disclosure serves an important and common-sense purpose: It gives the designating party the information necessary to assess, raise, and resolve legitimate objections that disclosure of its most confidential information to a particular expert could cause competitive harm—before irreparable competitive harm occurs.

Plaintiffs seek a departure from the HCC Model PO's default provisions on the grounds that disclosure of an expert's identity and background information invades protected work product. But the Ninth Circuit has squarely rejected that view, holding that such disclosures do not divulge any communications with, facts known, or opinions held by an expert—which is all the federal rules protect. And courts in this District have also rejected the same challenge that Plaintiffs make here, finding that a magistrate judge's decision to adopt these disclosure provisions is not "clearly erroneous." Plaintiffs' arguments also overlook that Section 7.6 requires no disclosure of a non-testifying expert *at all*, unless and until a party seeks to share another party's highly confidential, competitive information with that expert.

Nor does the existence of a coordinated JCCP proceeding somehow make this District's model provisions unlawful or impede coordination. The PO applies only to the federal proceedings; no coordination order has been entered; and neither side's proposed coordination

---

[1] The PO in this case adds only one additional disclosure to the HCC Model PO: patent applications in which an expert is the "inventor," "applicant," or has a "pecuniary interest." PO § 7.6(a)(7).

order (even when entered) would require the state-court plaintiffs to retain (or disclose) the same non-testifying or consulting experts as the federal Plaintiffs. The PO therefore imposes no obligations on the state-court plaintiffs. Contrary to Plaintiffs' insinuation, Judge Kuhl has never suggested—much less ruled—that entry of a PO containing an expert disclosure obligation *for the MDL* would violate California law. *See infra* n.8. Rather, she has directed the parties to brief whether California law requires a different approach for purposes of the JCCP proceedings, after a final PO is entered in the MDL. That does not bear on the proper resolution of this issue under federal law for this MDL—much less render Judge Hixson's well-reasoned adoption of the approach endorsed in this District's Model Protective Order clear error.

Plaintiffs' objections should be overruled.

## BACKGROUND

This is Plaintiffs' third effort to re-litigate this dispute. Plaintiffs first objected to Section 7.6 (then-Section 7.7(a)) in a March 17, 2023 joint letter brief, in which they argued that disclosing even an expert's *name* "eviscerates" their work product privilege. *See* ECF No. 192 at 2. Judge Hixson disagreed, explaining that disclosing the identity of an expert "doesn't require disclosure of [the expert's] work." 4/10/23 Hr'g Tr. 39:9-12, 21-23 (adopting Defendants' proposed expert disclosure provision). Judge Hixson further observed that "given the sensitive nature of the information that the defendants either have produced or are likely to produce," "defendants are entitled to know who has their material, and they're entitled to the other information in Paragraph 7.7(a), so they can make an appropriate challenge[,] [i]f there's a basis to do so, to the retention of an expert." *Id.* at 39:6-8, 13-16. Judge Hixson ordered the parties to submit a proposed protective order "in keeping with [his] rulings." *Id.* at 68:13-14.

Instead of doing so, Plaintiffs raised this dispute again. They asked Judge Hixson in a May 12, 2023 letter brief to "reconsider [his] ruling" regarding "advance disclosure of experts who access Highly Confidential material," based on the same mischaracterization of Judge Kuhl's comments at the May 3 hearing (*infra* n.8) that Plaintiffs advance here. ECF No. 271 at 2. In a tentative discovery order, Judge Hixson again rejected Plaintiffs' arguments, with further explanation of why the Meta, TikTok, and YouTube Defendants' approach was warranted:

> Data breaches and ransomware attacks are on the rise. Forcing Defendants to produce extremely sensitive materials, and then telling them "Don't worry who has your data - that's not for you to know" is really just too much. Under Plaintiffs' proposal, Defendants would never, not even at the conclusion of the litigation, know all the expert firms that have or had their data because they would never learn about the experts Plaintiffs later decided not to use. If a data breach happens and some of Defendants' highly confidential materials end up in the public record, Defendants need to know all the possible sources of the breach.
>
> Further, the other purpose of the disclosure is to give the designating party the opportunity to object if it believes its protected material should not be disclosed to a particular expert…. The day expert reports are due is not when a designating party should learn for the first time that someone who never should have had their protected materials has them.

ECF No. 284 at 4. The parties submitted a proposed protective order incorporating the tentative rulings, ECF No. 287, which Judge Hixson adopted on May 22, 2023, ECF No. 290; *see also* ECF No. 289 (final Discovery Order).

## ARGUMENT

On appeal of a Magistrate's Judge's non-dispositive ruling, "[t]he district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law." *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 240 (9th Cir. 1991) (quoting Fed. R. Civ. P. 72(a)). "[A] magistrate judge's non-dispositive ruling is clearly erroneous only when the district court is left with a 'definite and firm conviction that a mistake has been committed.'" *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 984 (N.D. Cal. 2012) (citation omitted). Plaintiffs do not come close to meeting that deferential standard.

### A. The Magistrate Court Did Not Clearly Err in Following the HCC Model PO.

"[T]he court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information." *Kelora*, 2011 WL 6000759, at *2. And with the exception of disclosures related to the proposed expert's patent applications—a provision that Plaintiffs do not seriously challenge and for which Judge Hixson found good cause[2]—Section 7.6 appears verbatim in Section 7.4 of the HCC Model PO.

---

[2] 4/10/23 Hr'g Tr. 40:15-21 (Hixson, M.J.) (approving inclusion of patent disclosure because "in the context of this case, … it's legitimate information" Defendants would need to know to "inform" whether disclosure would present a risk of competitive harm).

That Plaintiffs allege "products liability" claims rather than "patents and trade secrets" claims, ECF No. 303 at 3, is of no moment. The HCC Model PO facially applies to any case involving "patent," "trade secret," *or* "highly sensitive confidential information." Unsurprisingly, courts have routinely adopted it outside the patent and trade secret contexts, when a plaintiff's claim targets a defendant's proprietary features. *See, e.g.*, Stipulated Protective Order, *In re Apple iPhone Antitrust Litig.*, No. 4:19-cv-3074-YGR (N.D. Cal. Jan. 9, 2020), ECF No. 85 (adopting HCC Model PO in antitrust case); Stipulated Protective Order, *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal. Oct. 15, 2020), ECF No. 81 (same, in cookie-tracking case regarding web browser); *In re Google Assistant Priv. Litig.*, 2020 WL 4698810, at *1-3 (N.D. Cal. Aug. 13, 2020) (same, in privacy case over voice feature); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 2021 WL 254265, at *1 (N.D. Cal. Jan. 26, 2021) (same, in case involving video feature).[3]

Plaintiffs' claims challenge a host of proprietary features of Defendants' services as "defective," and Plaintiffs will almost certainly seek discovery into Defendants' most closely held trade secrets, including source code (*see* ECF No. 303 at 4) and non-source code materials about how Defendants' algorithms work, business and pricing strategies, and other highly sensitive and technical information. Judge Hixson thus did not clearly err in finding that "discovery in this case is likely to involve highly-confidential matters." 4/10/23 Hr'g Tr. 7:19-25.[4]

Plaintiffs' related argument that source code is the only category of trade secret that could cause competitive harm if disclosed (ECF No. 303 at 4) is meritless. Under the PO, a risk of harm from disclosure is required for the HCC designation. *See* PO § 2.10 (defining HCC material as "Protected Material the disclosure of which to another Party or Non-Party *would*

---

[3] *Johnson v. City and County of San Francisco,* 2011 WL 13377688 (N.D. Cal. Feb 9, 2011)—a civil rights case alleging discriminatory promotion by the San Francisco Fire Department—involved none of the types of information at issue here and is inapposite.

[4] Beyond being irrelevant, Plaintiffs' objection that Section 7.6 "as a practical matter … only burdens Plaintiffs" (ECF No. 303 at 2) is also wrong. This MDL involves four distinct and competing technology companies—all of whom will be subject to the same disclosure and vetting procedures if they seek to share each other's highly confidential competitive information with their own experts.

*create a substantial risk of serious harm* that could not be avoided by less restrictive means." (emphasis added)); *see also* HCC Model PO § 2.8 (same). Many types of non-source code material could cause serious harm if disclosed to a competitor, such as a company's proprietary formula or a confidential product launch strategy. *Cf.* HCC Model PO § 2.9 (defining source code separately from HCC material). Indeed, the HCC Model PO applies the expert disclosure provisions to *all* highly confidential information, not merely to source code. *Id.* § 7.4.

### B. Section 7.6 Does Not Invade Protected Work Product and Is Essential to Protecting Defendants' Proprietary, Competitive Information.

Judge Hixson's ruling is also not "clearly erroneous" because it follows "innumerable decisions in this District" *rejecting* Plaintiffs' argument that conditioning an expert's access to a party's most confidential information on disclosure of the expert's identity invades protected work product. *In re Google Assistant*, 2020 WL 4698810, at *1 (disclosure of expert identity and information to assess competitive risk of disclosure does not reveal protected "work product"); Order re Discovery Dispute, *Free Range Content, Inc. v. Google Inc.*, No. 5:14-cv-02329-BLF (N.D. Cal. Oct. 11, 2016), ECF No. 133 (rejecting plaintiffs' work product argument because "the court surely took these risks into account when drafting the language of the model protective order"); Minute Entry, *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF (N.D. Cal. May 12, 2015), ECF No. 51 ("grant[ing] defendant's motion for protective order" containing "Paragraph 7.4" expert disclosure obligations over plaintiffs' work product objection).[5]

Indeed, Judge Koh has already rejected a Rule 72(a) appeal on exactly the issue presented here, holding that requiring disclosures before an expert may receive "Highly Confidential – Attorneys' Eyes Only" documents is "neither 'clearly erroneous' nor 'contrary to law.'" *In re Zoom*, 2021 WL 254265, at *1.

---

[5] *Cf. Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, 2018 WL 2197544, at *7 (N.D. Cal. May 14, 2018) (rejecting Plaintiffs' proposed protective order as "inadequate" specifically because it "cuts out the majority of the Model Protective Order's § 7.4, concerning the producing party's ability to approve or object to the disclosure of highly confidential information to an expert"); *TD Pro. Servs. v. Truyo Inc.*, 2022 WL 3098985, at *8 (D. Ariz. Aug. 4, 2022) ("Providing its experts' CVs to Defendants to ascertain affiliation with a competitor would have minimal burden on Plaintiff while affording Defendants certainty that their source code and other proprietary material remains secure.").

The cases Plaintiffs cite are both contrary to Ninth Circuit precedent and readily distinguishable.  Plaintiffs cite *Corley v. Google, Inc.*, 2016 WL 3421402, at *3 (N.D. Cal. June 22, 2016), which relied on *In re Pizza Time Theatre Securities Litigation*, 113 F.R.D. 94, 98 (N.D. Cal. 1986), for the proposition that the mere *identity* of a non-testifying expert is protected work product under Federal Rule of Civil Procedure 26(b)(3).  *Corley* also suggested that disclosure of an expert's identity "indirectly" reveals "facts known" by the expert, purportedly in violation of Rule 26(b)(4)(D).

But at the time *Corley* was decided, the Ninth Circuit had already rejected both of those arguments in *Ibrahim v. Department of Homeland Security*, holding that nothing in Rule 26 precludes disclosure of a non-testifying expert's *identity and background check information* in the context of an expert seeking access to highly sensitive information.  669 F.3d 983, 999 (9th Cir. 2012).  As the Court of Appeals recognized, Rule 26(b)(3) imposes no restriction because it protects only "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," *id.*, while Rule 26(b)(4)(D) prohibits only the discovery of "*facts known or opinions held* by a[] [non-testifying] expert," Fed. R. Civ. P. 26(b)(4)(D) (emphasis added).  These protections are distinct from, and do not extend to, "the identity of a nontestifying expert."  *Ibrahim*, 669 F.3d at 999.  In addition, Rule 26(b)(4)(D) by its terms applies only to information obtained "by interrogatories or deposition."  *Id.*  It is therefore inapplicable to expert disclosures required by a protective order.

*Ibrahim* thus refutes any argument that an expert's identity is protected work product under Rule 26—the core premise of *Corley*, *In re Pizza Time*, and all of Plaintiffs' cases.  *See Burt v. AVCO Corp.*, 2015 WL 12912366, at *4 (C.D. Cal. Nov. 17, 2015) (likewise relying on *In re Pizza Time*); *Todd v. Tempur-Sealy Int'l Inc.*, 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015) (same premise).  Because they are contrary to binding precedent, these cases are simply not good law.  *See In re Google Assistant*, 2020 WL 4698810, at *2 (recognizing that *Corley* is contrary to Rule 26 and *Ibrahim*).[6]  Indeed, as the district court "correctly held" in *Ibrahim*, "[i]t

---

[6] Even work product is still discoverable upon a showing of "substantial need" or "exceptional circumstances."  *E.g.*, Fed. R. Civ. P. 26(b)(3)(A)(ii), (4)(D)(ii).  The disclosure of
(continued...)

is *commonplace* for experts and consultants on both sides of any ordinary civil action to be vetted so that trade secrets and other sensitive information will not fall into the hands of someone with an adverse position to the owner of the sensitive information." *Ibrahim*, 669 F.3d at 999 (emphasis added) (quoting district court).

Plaintiffs' cases are also distinguishable from this one. In *Corley*, the plaintiffs made a specific showing, supported by a sworn declaration, that several potential experts had "already refused to work on this case" on account of the disclosure requirement. 2016 WL 3421402, at *3. Plaintiffs have made no such showing here. In *Todd*, the parties had previously agreed to alternative language imposing a pre-disclosure investigation and certification requirement, which the court found sufficient under the facts there. *See Todd*, 2015 WL 433481, at *4. But the court had no occasion to address the concerns identified by Judge Hixson regarding leaks and other potential sources of conflicts, such as active patent applications (and regardless, *Ibrahim* rejected *Todd*'s reasoning that self-vetting by "adverse" parties sufficiently protects a party's "sensitive information." 669 F.3d at 999); *see also In re Google Assistant*, 2020 WL 4698810, at *1 (rejecting *Todd*).[7] And *Burt* simply deferred to a ruling that plaintiffs need not disclose their experts' identities to defendants *for export controls compliance purposes*, when plaintiffs were already required to lodge with the Magistrate Court a list of all individuals to whom they provided such export-controlled material. 2015 WL 12912366, at *3-4. *Burt* thus did not address the need for disclosure to guard against potential competitive injury.

---

an expert's identity and background information for the purpose of protecting a company's most closely held secrets would easily "satisf[y] that requirement," were it applicable (it is not). *In re Google Assistant*, 2020 WL 4698810, at *2; *see also Corley*, 2016 WL 3421402, at *4 (requiring disclosure of experts who review source code).

[7] The *Todd* court also cited cases rejecting its own premise about work product and the argument Plaintiffs make here. *See* 2015 WL 1022886, at *1 (N.D. Cal. Mar. 6, 2015) (citing *Baki v. B.F. Diamond Constr. Co.*, 71 F.R.D. 179, 182 (D. Md. 1976), which held that "the names, addresses, and other identifying information of [non-testifying] experts," *are* "*routine[ly]*" discoverable and granted a motion to compel that information, reasoning that expert identities can be withheld under Rule 26 only for *non-retained*, "informally" consulted experts who have *no* "*information or knowledge*" concerning the case (emphasis added)). A consultant shown a party's highly confidential information would necessarily have "information or knowledge" concerning the case and would not meet this narrow exclusion.

**C.   Section 7.6 Will Not Impede Coordination with the JCCP Proceedings.**

The existence of coordinated JCCP proceedings likewise provides no basis to depart from the HCC Model PO's presumptively reasonable approach. To start, Plaintiffs' premise—that Section 7.6 puts Plaintiffs in a "catch-22" of having to "disclose their experts early" or forego coordination (ECF No. 303 at 4-5)—is wrong. This Court's protective order applies only to the MDL Plaintiffs; it does not require the *JCCP* Plaintiffs to disclose the *JCCP's* experts. As Judge Kuhl has stated repeatedly, she will decide whether to adopt a parallel disclosure requirement in the JCCP once a final protective order is entered in the MDL. *E.g.*, Minute Order, JCCP No. 5255 (Cal. Super. Ct. L.A. Cnty. May 3, 2023) (ordering that, if the "Protective Order … entered in the MDL proceeding … requires a party to disclose the name of an expert to whom highly confidential information will be disclosed," the JCCP Plaintiffs "may file a motion to ask this Court to omit such provision from a Protective Order *in this case* [*i.e.*, the JCCP]." (emphasis added)); Minute Order, JCCP No. 5255 (Cal. Super. Ct. L.A. Cnty. May 25, 2023) (similar).[8]

Absent such a requirement, however, Defendants would have no way of knowing whether the JCCP Plaintiffs are or are not retaining the same experts until the expert disclosure deadline in the JCCP. Judge Hixson's approach thus fully preserves whatever rights the JCCP Plaintiffs (and their lawyers) have under California law and does nothing to impede coordination.

Moreover, though the precise contours of California law are irrelevant to these proceedings, Plaintiffs' sole cited case does not support their interpretation. *Hernandez v. Superior Court* rejected a far more invasive and "unilateral" disclosure of "petitioners' experts *and their opinions*," and it required disclosure for an entirely different purpose: "*in order to*

---

[8] Plaintiffs also misstate Judge Kuhl's comments at a May 3, 2023 hearing. What she actually said on this issue was:

> So the Northern District of California has the extensive experience, probably more than anyplace in the country, with especially patent cases that have trade secret and technical information of that sort, and *I certainly respect their understanding of the risks and protections for highly confidential trade secrets and technical information.* My view, *without conducting [] separate research for this case*, is that I don't think California [] law – allows the identity of a nondesignated expert to be required to be disclosed to a party opponent. So depending on what is done in the federal court, *this issue will need to be briefed here.*

5/3/23 JCCP 5255 Hr'g Tr., ECF No. 303-1 at 7:23-8:10 (emphasis added).

*establish a prima facie showing of exposure and causation.*" 112 Cal. App. 4th 285, 296 (2003) (emphasis added). *Hernandez* says nothing about the reciprocal, limited disclosure of an expert's identity and background information for the important purpose of protecting a producing party from potentially severe competitive harm. It does not suggest that such a disclosure would be impermissible even under California law—or that California law somehow allows a different set of Plaintiffs to avoid their disclosure obligations under federal law.

### D. Plaintiffs' "Alternative" Proposals Do Not Adequately Protect Designating Parties, Given the Highly Sensitive Nature of the Information at Issue.

Instead of the HCC Model PO's restrictions, Plaintiffs ask the Court to adopt the position that no expert disclosures are required at all. Under their proposal, HCC material would "be treated in the same manner as documents designated 'CONFIDENTIAL,'" except that counsel would generally be barred from showing the material to their clients. Proposed Order, ECF No. 303-3 at 2. In the alternative, Plaintiffs urge the Court to adopt the "alternative" provision in the HCC Model PO's footnote 7, which would require disclosure of an expert receiving HCC material only if that expert is "a current officer, director, or employee of a competitor of a Party or anticipated to become one." *Id.*

As a threshold matter, Plaintiffs cite no legal basis for finding "clear error" in a Magistrate Court's adoption of a default model provision over an "alternative" model provision,[9] let alone over a non-model provision. *See Corley*, 2016 WL 3421402, at *1 ("A party who unilaterally requests a deviation from the presumptively valid terms of that model order must show 'specific harm or prejudice' …." (citation omitted)). Furthermore, the Magistrate Court addressed Plaintiffs' arguments on the record at the April 10, 2023 hearing, *e.g.*, 4/10/23 Hr'g Tr. 33:25-34:1, 39:6-20, and correctly held that neither of Plaintiffs' proposals would adequately protect Defendants' strong interests in protecting their most sensitive information.

---

[9] *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal. Aug. 23, 2022), involved a stipulated PO, and thus the Court did not make a finding regarding whether the alternative HCC Model PO's level of protection was adequate.

First, Judge Hixson held that "[w]ithout [the full information contemplated by Section 7.6], there's no way [Defendants] could meaningfully challenge somebody as an expert, even if they had a legitimate and good basis to do so." *Id.* at 39:17-20.  For example, Plaintiffs' alternative (footnote 7) language would allow an expert to access highly confidential information without disclosing that the expert receives remuneration from a competitor for non-employee "consulting" services.  It would likewise require no disclosure of an expert with an active patent application or financial interest in a directly competing patent application—even though the Ninth Circuit has recognized that "[t]he risk" in that situation "is simply too great that … a trade secret might be misappropriated by a consultant or expert and written into a pending patent application." *Ibrahim*, 669 F.3d at 999 (quoting district court).  Second, Judge Hixson reasoned that, given the "very sensitive information" at issue, *id.* at 33:12, Defendants have a legitimate "concern that [their highly confidential information] could … be leaked on social media," *id.* at 33:17-21.  Without the full "universe of people who got this highly-confidential information," *id.* at 33:25-34:1, Defendants could not even begin to investigate or identify the source of any leaks.

Judge Hixson's rulings were consistent with established law.  Because a "trade secret once lost is … lost forever," *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal. 2019), a designating "party … should not have to rely on an opponent's expert's self-evaluation of conflicts," *In re Google Assistant*, 2020 WL 4698810, at *2.  Especially in a case like this, putting an adverse party or expert in the position of self-policing conflicts simply creates "too great" a "risk … that someone in such an adverse position will be tempted to misuse sensitive information for a purpose other than the litigation." *Ibrahim*, 669 F.3d at 999.  Judge Hixson's decision to adopt the standard disclosure provision of the HCC Model PO, rather than an alternative, was in no way clearly erroneous.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' motion should be denied and the Protective Order entered in this case as approved by the Magistrate Court (ECF No. 290).

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 | Dated: June 21, 2023 | **WILSON SONSINI GOODRICH & ROSATI**<br>**Professional Corporation** |

/s/ *Brian M. Willen*
Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com

Christopher Chiou, SBN 233587
Samantha A. Machock, SBN 298852
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: smachock@wsgr.com

*Attorneys for Defendants Google LLC,*
*YouTube, LLC and Alphabet Inc.*

**COVINGTON & BURLING LLP**

/s/ *Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Email: asimonsen@cov.com

|   |   |
|---|---|
| 1 | Phyllis A. Jones, pro hac vice |
| 2 | Paul W. Schmidt, pro hac vice |
|   | COVINGTON & BURLING LLP |
| 3 | One CityCenter |
|   | 850 Tenth Street, NW |
| 4 | Washington, DC 20001-4956 |
|   | Telephone: (202) 662-6000 |
| 5 | Facsimile: (202) 662-6291 |
|   | Email: pajones@cov.com |
| 6 | Email: pschmidt@cov.com |

Emily Johnson Henn, SBN 269482
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
Email: ehenn@cov.com

Isaac D. Chaput, SBN 329623
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ichaput@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com

David Mattern
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 626-2946
Email:  dmattern@kslaw.com

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegredrinker.com

Amy R. Fiterman
Faegre Drinker LLP
90 South Seventh Street
2200 Wells Fargo Center
Minneapolis, MN 55402
Telephone:  (612) 766-7000
Email:  amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**ATTORNEY ATTESTATION**

I, Brian M. Willen, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatories.

*/s/ Brian M. Willen*
Brian M. Willen