Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a
Facebook, Inc.; Facebook Holdings, LLC; Facebook
Operations, LLC; Facebook Payments, Inc.;
Facebook Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on
signature pages*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-TSH<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6) PLAINTIFFS' PRIORITY CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT**<br><br>**Hearing:**<br>Date:   TBD<br>Time:   TBD<br>Place:   Oakland, California<br>Judge:   Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

        A.      Plaintiffs' Product Liability Claims Should Be Dismissed. ................................... 2

                1.      Precedent Uniformly Holds That Defendants Provide Services, Not
                        Products. ...................................................................................................... 3

                2.      Plaintiffs' Inapposite Case Law Involving Software Does Not
                        Demonstrate That Defendants' Services Are Subject to Product
                        Liability Law. .............................................................................................. 5

                3.      Plaintiffs Allege Harm From Intangible Information, Content, and
                        Ideas. ........................................................................................................... 9

                4.      The Court Should Not Create New State Tort Law for Every State. ........ 12

        B.      Plaintiffs' Negligence-Based Product Liability Claims Should Also Be
                Dismissed for Failure to Allege a Cognizable Duty. ........................................... 14

                1.      Plaintiffs Do Not Allege a Cognizable General Duty Owed by
                        Defendants. ................................................................................................ 15

                2.      Plaintiffs' Allegations Regarding the Alleged Addictiveness of
                        Defendants' Services Do Not Create a Duty of Care. ............................... 18

                3.      Plaintiffs Do Not—and Cannot—Allege Any Legally Cognizable
                        Special Relationship That Would Impose Duties on Defendants. ............ 19

                4.      This Court Should Decline to Create New "Public Policy" Duties. ......... 22

        C.      Plaintiffs Fail to Adequately Allege Proximate Causation. ................................. 23

                1.      Defendants Are Not Liable Under Settled Case Law for Harms Caused
                        by the Tortious or Criminal Acts of Third Parties. .................................. 23

                2.      Plaintiffs Fail to Tie Defendants' Services to Plaintiffs' Alleged
                        Injuries. ..................................................................................................... 27

        D.      The Negligence Per Se Claim Is Barred by Established Law in Most States and
                There Is No Support for Creating Such a Claim in the Others. ........................... 30

                1.      Plaintiffs' Claim Is Barred in More Than 40 States, and Plaintiffs
                        Provide No Basis for This MDL Court to Create New Law in Other
                        States. ......................................................................................................... 30

2.   Plaintiffs Have Not Alleged a Violation of the Predicate Federal Statutes. ................................................................................. 34

3.   Plaintiffs Have Not Alleged a Tort Harm or Article III Injury. ................ 38

III.   CONCLUSION ........................................................................................................... 38

IV.   APPENDIX ................................................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-md-02885 (N.D. Fl. Sept. 20, 2019) ........................................................................ 29

*A.B. v. Salesforce.com, Inc.*,
2021 WL 3616097 (S.D. Tex. Mar. 22, 2021) ...................................................................... 25

*A.M. v. Omegle.com, LLC*,
2023 WL 1470269 (D. Or. Feb. 2, 2023) ................................................................................ 6

*A.M. v. Omegle.com, LLC*,
614 F. Supp. 3d 814 (D. Or. 2022) .......................................................................................... 6

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
718 N.E.2d 181 (Ill. 1999) .................................................................................................... 44

*Adams v. BRG Sports, Inc.*,
2018 WL 4853130 (N.D. Ill. Oct. 5, 2018) ........................................................................... 29

*Air & Liquid Sys. Corp. v. DeVries*,
139 S. Ct. 986 (2019) ............................................................................................................ 15

*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
537 F. Supp. 3d 679 (D.N.J. 2021) ........................................................................................ 29

*Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC*,
2019 WL 2250068 (D. Kan. May 24, 2019) .......................................................................... 45

*Arbaugh v. Bd. of Educ., Cnty. of Pendleton*,
591 S.E.2d 235 (W. Va. 2003) .............................................................................................. 48

*Ardente, Inc. v. Shanley*,
2010 WL 546485 (N.D. Cal. Feb. 10, 2010) .......................................................................... 35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 16

*Estate of B.H., v. Netflix, Inc.*,
2022 WL 551701 (N.D. Cal. Sept. 22, 2021) ................................................................ *passim*

*Bagelmann v. First Nat'l Bank*,
823 N.W.2d 18 (Iowa 2012) .................................................................................................. 45

*Bartsch v. Costello*,
170 So. 3d 83 (Fla. Dist. Ct. App. 2015) ............................................................................... 44

iv

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................................................... 17

*BCBSM, Inc. v. GS Labs, LLC*,
    2023 WL 2044329 (D. Minn. Jan. 30, 2023) ............................................................. 45

*Bellamy v. Fed. Express Corp.*,
    749 S.W.2d 31 (Tenn. 1988) ....................................................................................... 47

*Bittle v. Brunetti*,
    750 P.2d 49 (Colo. 1988) ............................................................................................ 43

*Bradley v. Ray*,
    904 S.W.2d 302 (Mo. Ct. App. 1995) ........................................................................ 46

*Brandt v. Weather Channel, Inc.*,
    42 F. Supp. 2d 1344 (S.D. Fla. 1999) ........................................................................ 16

*Brookes v. Lyft Inc.*,
    2022 WL 19799628 (Fla. Cir. Ct. Sept. 30, 2022) .................................................. 7, 8

*Brown v. City of Valparaiso*,
    67 N.E.3d 652 (Ind. Ct. App. 2016) ........................................................................... 44

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011) .................................................................................................... 16

*Brown v. USA Taekwondo*,
    11 Cal. 5th 204 (2021) .......................................................................................... 15, 22

*Burghart v. S. Corr. Entity*,
    2023 WL 1766258 (W.D. Wash. Feb. 3, 2023) ............................................................ 4

*Camacho v. The Control Grp. Media Co.*,
    2022 WL 3093306 (S.D. Cal. July 18, 2022) ............................................................... 8

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........................................................... 15

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) .................................................................................... 12

*City of Everett v. Purdue Pharma L.P.*,
    2017 WL 4236062 (W.D. Wash. Sept. 25, 2017) ....................................................... 26

*Clark v. Am. Honda Motor Co.*,
    528 F. Supp. 3d 1108 (C.D. Cal. 2021) ...................................................................... 28

*Cline v. Prowler Indus. of Md., Inc.*,
    418 A.2d 968 (Del. 1980) ............................................................................................. 3

*Cline v. United States*,
  2015 WL 13664121 (M.D. Tenn. May 20, 2015) ................................................................. 47

*Estate of Alex ex rel. Coker v. T-Mobile US, Inc.*,
  313 F. Supp. 3d 723 (N.D. Tex. 2018) ............................................................................ 47

*Connes v. Molalla Transp. Sys., Inc.*,
  817 P.2d 567 (Colo. App. 1991) ..................................................................................... 44

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019)................................................................................ 24, 25, 28

*Crouch v. Ruby Corp.*,
  2022 WL 16747282 (S.D. Cal. Nov. 7, 2022) ................................................................ 11

*Deckard v. Bunch*,
  370 P.3d 478 (Or. 2016)................................................................................................... 46

*DeFilippo v. Nat'l Broad. Co.*,
  1980 WL 336092 (R.I. Super. Ct. June 8, 1980) ............................................................ 14

*Del Webb Cmtys., Inc. v. Partington*,
  652 F.3d 1145 (9th Cir. 2011)......................................................................................... 33

*Delfino v. Agilent Technologies, Inc.*,
  145 Cal. App. 4th 790 (2006)..................................................................................... 22, 23

*Doe v. MySpace, Inc.*,
  474 F. Supp. 2d 843 (W.D. Tex. 2007)........................................................................... 19

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021) ........................................................................ 8, 31

*Dyroff v. Ultimate Software Grp., Inc.*,
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017)................................................................ 20

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019)................................................................................... 10, 19

*Matter of Eighth Jud. Dist. Asbestos Litig.*,
  33 N.Y.3d 488 (2019) ..................................................................................................... 13

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ........................................................................... 27

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999) .................................................................................................... 15

*Erwin v. Roe*,
  928 N.E.2d 609 (Ind. Ct. App. 2010).............................................................................. 45

vi

*Faber v. Ciox Health, LLC*,
    331 F. Supp. 3d 767 (W.D. Tenn. 2018)................................................................. 47

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021).......................................................................... 3, 11

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................. 17

*Ferrari v. Nat. Partner, Inc.*,
    2017 WL 76905 (N.D. Cal. Jan. 9, 2017) ........................................................... 27

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018)............................................................... 24, 25, 28

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019).................................................................................. 10

*In re Fort Totten Metrorail*,
    895 F. Supp. 2d 48 (D.D.C. 2012) ...................................................................... 44

*Foster v. Bridgestone Americas, Inc.*,
    2013 WL 489162 (S.D. Ala. Feb. 8, 2013) .......................................................... 3

*Estate of French v. Stratford House*,
    333 S.W.3d 546 (Tenn. 2011).............................................................................. 47

*Gamache v. Airbnb, Inc.*,
    2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017) ............................................. 25

*Gerrity Oil & Gas Corp. v. Magness*,
    946 P.2d 913 (Colo. 1997) .................................................................................. 43

*Gersh v. Anglin*,
    353 F. Supp. 3d 958 (D. Mont. 2018) ................................................................. 21

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ............................................................................................ 37

*Gonzalez v. Google, Inc.*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018) .............................................................. 25

*Govea v. City of Norcross*,
    608 S.E.2d 677 (Ga. Ct. App. 2004) ................................................................... 44

*Grigsby v. Valve Corp.*,
    2013 WL 12310666 (W.D. Wash. Mar. 18, 2013) ............................................. 48

*Grossman v. Rockaway Twp.*,
    2019 WL 2649153 (N.J. Super. Ct. June 10, 2019)................................... 3, 4, 11

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

*Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*,
   2023 WL 2709646 (D. Or. Mar. 29, 2023) ................................................................. 46

*Hacala v. Bird Rides, Inc.*,
   90 Cal. App. 5th 292 (2023) ....................................................................................... 21

*Hageman v. TSI, Inc.*,
   786 P.2d 452 (Colo. App. 1989) ................................................................................. 44

*Hardin v. PDX, Inc.*,
   227 Cal. App. 4th 159 (2014) ....................................................................................... 6

*Heath v. La Mariana Apartments*,
   180 P.3d 664 (N.M. 2008) .......................................................................................... 33

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018) ....................................................................... 11

*Highmark Fed. Credit Union v. Hunter*,
   814 N.W.2d 413 (S.D. 2012) ................................................................................ 31, 47

*Holbrook v. Prodomax Automation Ltd.*,
   2021 WL 5052101 (W.D. Mich. Oct. 15, 2021) .......................................................... 8

*Hollis ex rel. Hollis v. Poplar Bluff Reg'l Med. Ctr., LLC*,
   2023 WL 3958788 (Mo. Ct. App. June 13, 2023) ..................................................... 46

*Hou-Tex, Inc. v. Landmark Graphics*,
   26 S.W.3d 103 (Tex. App. 2000) ............................................................................... 47

*Howard Reg'l Health Sys. v. Gordon*,
   952 N.E.2d 182 (Ind. 2011) ....................................................................................... 44

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) .................................................................................... 21

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) ........................................................... 27

*Jackson v. Airbnb, Inc.*,
   2022 WL 16752071 (C.D. Cal. Nov. 4, 2022) ............................................ 4, 6, 11, 22

*Jacobs v. Meta Platforms, Inc.*,
   2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ........................................ *passim*

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002) ............................................................................ *passim*

*Jane Doe No. 1 v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (2022) ......................................................................................... 7

*Jones v. Google LLC*,
    56 F.4th 735 (9th Cir. 2022).............................................................................. 32, 34

*Judd v. Weinstein*,
    967 F.3d 952 (9th Cir. 2020) ..................................................................................... 12

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    497 F. Supp. 3d 522 (N.D. Cal. 2020) ................................................................. 19, 25

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    No. 19-md-02913 (N.D. Cal. Mar. 11, 2020) ............................................................ 29

*Kan. State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*,
    819 P.2d 587 (Kan. 1991) ......................................................................................... 45

*Kapps v. Biosense Webster, Inc.*,
    813 F.Supp. 2d 1128 (D. Minn. 2011) ...................................................................... 46

*Kho v. Pennington*,
    875 N.E.2d 208 (Ind. 2007) ...................................................................................... 44

*Kirsten v. Cal. Pizza Kitchen, Inc.*,
    2022 WL 16894503 (C.D. Cal. July 29, 2022) ......................................................... 43

*Kudlacik v. Johnny's Shawnee, Inc.*,
    440 P.3d 576 (Kan. 2019) ......................................................................................... 45

*L.W. v. Snap Inc.*,
    2023 WL 3830365 (S.D. Cal. June 5, 2023).......................................................... 10, 25

*Laron v. Wright Med. Tech., Inc.*,
    587 F. Supp. 3d 1065 (D. Nev. 2022) ....................................................................... 12

*Legal Tender Servs. PLLC v. Bank of Am. Fork*,
    506 P.3d 1211 (Utah Ct. App. 2022) ........................................................................ 47

*Lemmon v. Snap, Inc.*,
    2022 WL 1407936 (C.D. Cal. Mar. 31, 2022) ...................................................... 5, 26

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021)................................................................... 5, 8, 9, 26

*In re Lithium Ion Batteries Antitrust Litig.*,
    2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)............................................................. 33

*Lombard v. Colo. Outdoor Educ. Ctr., Inc.*,
    187 P.3d 565 (Colo. 2008) ........................................................................................ 43

*Lowe v. Cerner Corp.*,
    2022 WL 172690666 (4th Cir. Nov. 29, 2022).......................................................... 48

ix

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

*Lowery v. Echostar Satellite Corp.*,
160 P.3d 959 (Okla. 2007) .............................................................. 15, 17

*M. L. v. Craigslist Inc.*,
2020 WL 6434845 (W.D. Wash. Apr. 17, 2020) .................................... 19

*Machlup v. Bowman*,
2021 WL 5882102 (Ohio Ct. App. 2021) ...................................... 33, 46

*Magna Tr. Co. v. Ill. Cent. R.R.*,
728 N.E.2d 797 (Ill. App. Ct. 2000) ................................................... 44

*Martifer-Silverado Fund I, LLC v. Zhongli Sci. & Tech. Grp. Co.*,
2020 WL 5500381 (N.D. Cal. Sept. 11, 2020) ..................................... 28

*Martin v. Schroeder*,
105 P.3d 577 (Ariz. Ct. App. 2005) ................................................... 43

*Massee v. Thompson*,
90 P.3d 394 (Mont. 2004) ................................................................ 46

*Maynard v. Snapchat, Inc.*,
870 S.E.2d 739 (Ga. 2022) ........................................................ 5, 8, 26

*McClellan v. I-Flow Corp.*,
776 F.3d 1035 (9th Cir. 2015) (at Opp. 56) ........................................ 32

*In re Med. Cap. Sec. Litig.*,
842 F. Supp. 2d 1208 (C.D. Cal. 2012)............................................... 13

*Menendez v. Paddock Pool Construction Co.*,
836 P.2d 968 (Ariz. Ct. App. 1991) .................................................... 43

*Merrill v. Trump Ind., Inc.*,
320 F.3d 729 (7th Cir. 2003).............................................................. 18

*Mitchell v. Wells Fargo Bank*,
355 F.Supp. 3d 1136 (D. Utah 2018) .................................................. 48

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018)...................................................... 23, 24, 25

*Moody v. Or. Cmty. Credit Union*,
505 3d 1047 (Or. Ct. App. 2022) ....................................................... 46

*In re MyFord Touch Consumer Litig.*,
2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ...................................... 8

*In re Nat'l Prescription Opiate Litig.*,
452 F. Supp. 3d 745 (N.D. Ohio 2020)............................................... 19

x

*NOLA 180 v. Harrah's Operating Co.*,
  94 So. 3d 886 (La. Ct. App. 2012) ................................................................ 18

*Orkin v. Taylor*,
  487 F.3d 734 (9th Cir. 2007) .............................................................. 12, 13

*Osburn v. Danek Medical, Inc.*,
  520 S.E.2d 88 (N.C. Ct. App. 1999) ............................................................. 46

*Otten v. BNSF Ry. Co.*,
  2023 WL 1948626 (10th Cir. Feb. 13, 2023) .................................................. 33

*Owens v. Perdue Foods LLC*,
  2021 WL 2323718 (M.D. Ga. June 7, 2021) ................................................... 44

*In re Packaged Seafood Prods. Antitrust Litig.*,
  2022 WL 11337564 (S.D. Cal. Oct. 19, 2022) ................................................ 13

*Packingham v. North Carolina*,
  582 U.S. 98 (2017) ......................................................................... 13, 14

*Powell v. Tosh*,
  929 F. Supp. 2d 691 (W.D. Ky. 2013) ......................................................... 45

*Prager Univ. v. Google LLC*,
  951 F.3d 991 (9th Cir. 2020)............................................................... 4, 41

*In re Qualcomm Antitrust Litig.*,
  2023 WL 121983 (N.D. Cal. Jan. 6, 2023) .................................................... 13

*Quinteros v. InnoGames*,
  2022 WL 898560 (W.D. Wash. Mar. 28, 2022) ............................................... 4, 11

*Quiroz v. Alcoa Inc.*,
  416 P.3d 824 (Ariz. 2018).................................................................... 43

*Rodgers v. Christie*,
  795 F. App'x 878 (3d Cir. 2020)......................................................... 6, 10, 46

*Rodgers v. Laura & John Arnold Found.*,
  2019 WL 2429574 (D.N.J. June 11, 2019) ..................................................... 43

*Doe ex rel. Roe v. Snap, Inc.*,
  2022 WL 2528615 (S.D. Tex. July 7, 2022).................................................... 8

*Rowland v. Christian*,
  69 P.2d 561 (Cal. 1968) ................................................................. 21, 22, 23

*S.P. v. County of San Bernardino*,
  2020 WL 3051360 (C.D. Cal. Mar. 24, 2020) ................................................. 26

*Sanders v. Acclaim Ent., Inc.*,
   188 F. Supp. 2d 1264 (D. Colo. 2002) ................................................................ 6, 16

*Schafer v. State Farm Fire & Cas. Co.*,
   507 F. Supp. 2d 587 (E.D. La. 2007) ................................................................ 45

*Schueler v. Ad Art, Inc.*,
   136 Nev. 447 (Nev. Ct. App. 2020) ................................................................ 46

*Scoggins v. Floyd Healthcare Mgmt. Inc.*,
   2016 WL:11544774 (N.D. Ga. June 10, 2016) ................................................................ 44

*Scurry v. N.Y.C. Hous. Auth.*,
   140 N.Y.S.3d 255 (2021) ................................................................ 23

*Sewell v. Racetrac Petroleum, Inc.*,
   245 So. 3d 822 (Fla. Dist. Ct. App. 2017) ................................................................ 17

*Sheldon v. Kettering Health Network*,
   40 N.E.3d 661 (Ohio Ct. App. 2015) ................................................................ 46

*Shirley v. Glass*,
    308 P.3d 1 (Kan. 2013) ................................................................ 45

*Short v. Spring Creek Ranch, Inc.*,
   731 P.2d 1195 (Wyo. 1987) ................................................................ 33

*Sims v. United States*,
   2020 WL 3273040 (W.D. Mo. June 17, 2020) ................................................................ 19

*Smallwood v. NCsoft Corp.*,
   730 F. Supp. 2d 1213 (D. Haw. 2010) ................................................................ 44

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................ 38

*Stevens v. MTR Gaming Grp., Inc.*,
   788 S.E.2d 59 (W. Va. 2016) ................................................................ 18

*Swix v. Daisy Mfg. Co.*,
   373 F.3d 678 (6th Cir. 2004) ................................................................ 19

*Taveras v. Resorts Int'l Hotel, Inc.*,
   2008 WL 4372791 (D.N.J. Sept. 19, 2008) ................................................................ 18

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
   No. 1:14-cv-01748 (N.D. Ill. Nov. 24, 2015) ................................................................ 29

*Town of Montezuma v. Downs*,
   685 N.E.2d 108 (Ind. Ct. App. 1997) ................................................................ 45

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...................................................................... 38

*Twitter, Inc. v. Taamneh*,
  143 S. Ct. 1206 (2023) ................................................................ *passim*

*In re Tylenol (Acetaminophen) Mktg, Sales Pracs, and Prods. Liab. Litig.*,
  2:13-md-02436 (E.D. Pa. June 18, 2013) ......................................... 29

*United States v. Bohannon*,
  506 F. Supp. 3d 907 (N.D. Cal. 2020) .............................................. 36

*Vesely v. Armslist LLC*,
  762 F.3d 661 (7th Cir. 2014) .................................................. 19, 20, 21

*Watters v. TSR, Inc.*,
  904 F.2d 378 (6th Cir. 1990) ............................................................... 9

*Weinberg v. Advanced Data Processing, Inc.*,
  147 F. Supp. 3d 1359 (S.D. Fla. 2015) ............................................. 44

*Wickersham v. Ford Motor Co.*,
  194 F. Supp. 3d 434 (D.S.C. 2016) ..................................................... 8

*Wilson v. Midway Games, Inc.*,
  198 F. Supp. 2d 167 (D. Conn. 2002) ................................... 6, 13, 44

*Winter v. G.P. Putnam's Sons*,
  938 F.2d 1033 (9th Cir. 1991) ..................................................... *passim*

*Wren v. Sullivan Electric, Inc.*,
  797 F.2d 323 (6th Cir. 1986) ............................................................ 47

*Zamora v. Columbia Broad. Sys.*,
  480 F. Supp. 199 (S.D. Fla. 1979) .............................................. 16, 19

*Ziencik v. Snap, Inc.*,
  2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ............................ 4, 20, 36

**Statutes and Regulations**

16 C.F.R. § 312.2 ................................................................................. 33, 37

15 U.S.C. § 6502 ........................................................................................ 34

18 U.S.C. § 2258A ........................................................................ 32, 34, 35

18 U.S.C. § 2258B ............................................................................... 31, 35

42 U.S.C. § 4852d ..................................................................................... 45

49 U.S.C. § 14704 ........................................................................................................ 44

49 U.S.C. § 60121 ........................................................................................................ 45

Ark. Code Ann. § 16-116-202 ...................................................................................... 43

Minn. Stat. § 604.101 ................................................................................................... 45

Tenn. Code Ann. § 29–26–101 ..................................................................................... 47

Tenn. Code Ann. § 29–28–102 ..................................................................................... 47

**Other Authorities**

*Frequently Asked Questions*, FTC (July 2020),
    https://www.ftc.gov/businessguidance/resources/complying-coppa-frequently-
    asked-questions ......................................................................................................... 37

Restatement (Second) of Torts § 402A (1965) ............................................................ 43

Restatement (Third) of Torts: Products Liability § 19 (1998) ........................... 3, 12, 43

W. Jonathan Cardi, *The Hidden Legacy of Palsgraf: Modern Duty Law in Microcosm*,
    91 B.U. L. Rev. 1873 (2011) .................................................................................. 22

# I.    INTRODUCTION

Plaintiffs' Opposition confirms that they seek to have this Court create new tort law for all 50 states and override established limits on product liability and negligence per se claims.  The Court should decline Plaintiffs' request to "adapt"—that is, remake—state law into an unprecedented tool for regulating services that millions of Americans use to communicate, learn, and express creativity.

The core of Plaintiffs' claims is that Defendants' services are defective "products" because they make potentially harmful speech available to users and because Defendants offer features that help curate user content or make it more engaging.  No court has ever allowed such an expansive product liability theory.  To the contrary, case after case recognizes that Defendants' services, and similar ones, are just that: *services*, not tangible products regulated by product liability law.  Courts also routinely recognize that product liability law does not apply to harm allegedly caused by dissemination of intangible information, content, and ideas—including through technological features.

Plaintiffs ignore this uniform case law and instead mischaracterize narrow, inapposite cases that discuss "software" affecting the safe operation of cars or similar tangible products.  There is no support for Plaintiffs' argument that software in *all* its forms—much less software that operates as a service or that is used to communicate ideas—is a "product" under product liability law.  Plaintiffs' demand that this Court reject these foundational limitations misconceives the role of a federal court sitting in diversity and ignores the constitutional avoidance concerns underlying courts' longstanding refusal to apply product liability law to the dissemination of speech.  This Court should not push product liability law to a place where it has never been and does not belong.

Plaintiffs' negligence-based claims fail for the additional reason that there is no duty of care to support those claims here.  The Opposition cites no case finding that Defendants (or services like theirs) owe a general duty of care to their billions of users—nor a heightened duty to minors.  Plaintiffs also concede that no special relationship exists that could give rise to a duty of care.  Instead, Plaintiffs rely almost entirely on the alleged foreseeability of injuries to some users to argue that this Court should recognize a duty where no other court has done so.  Plaintiffs' resort to public policy considerations further underscores that established law does not support their argument.

Plaintiffs' priority claims also do not plead that Defendants' services were the proximate cause of any alleged injuries.  Plaintiffs' Opposition confirms that Plaintiffs fail to tie the features of Defendants' services to any of their alleged harms, and that they seek, contrary to recent Supreme Court precedent, to hold Defendants liable for harms caused by third-party misuse of Defendants' services.  *See Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023).  The Court's approval of the format for Plaintiffs' pleadings does not give Plaintiffs license to ignore the Federal Rules of Civil Procedure.

Plaintiffs' negligence per se claim is barred by established law in more than 40 states, and there is no basis for recognizing the claim in the remaining states.  No court has ever recognized a negligence per se claim predicated on alleged violations of the federal statutes that Plaintiffs invoke.  For good reason:  those statutes are not privately enforceable and lack any common law antecedent.  Moreover, Plaintiffs fail to state a claim because they do not plausibly allege a violation of either predicate federal statute or a concrete personal injury suffered by any plaintiff as a result of such a violation.

## II.   ARGUMENT

Plaintiffs' product liability and negligence per se priority claims should be dismissed because they are barred by Section 230 of the Communications Decency Act and by the First Amendment, as explained in Defendants' Supplemental Joint Motion to Dismiss (Dkt. 320).  This Reply and the initial Joint Motion to Dismiss (Dkt. 237) ("Mot.") demonstrate that the priority claims also should be dismissed for failure to state a claim under state law.

### A.   Plaintiffs' Product Liability Claims Should Be Dismissed.

Plaintiffs have no good response to the uniform case law expressly holding that Defendants provide "services"—not "products"—and thus are not subject to product liability law.  Mot. 14–17.  They also do not demonstrate any reason for the Court to depart from the unanimous authority, grounded in constitutional avoidance concerns, that rejects applying product liability law to harm from the dissemination of information, content, and ideas.  *Id.* 17–26.

Seeking to change these established state law limitations on product liability claims, Plaintiffs rely on the unsupported and incorrect assertion that "software" is necessarily a product, based on inapposite case law addressing software that affected the safe operation of cars or similar products.  And Plaintiffs also make misplaced appeals to public policy.  But this case is not akin to a challenge to

an airplane's autopilot system that goes haywire and causes a plane to crash—or suing the manufacturer of a radio that plays too loudly and causes hearing loss.  *Contra* Pls.' Opp. to Joint Mot. (Dkt. 302) ("Opp.") 23.  Instead, it is akin to suing a radio station because its programming choices and broadcasting techniques cause certain people to listen "too much" and expose them to harmful content.  That is not the domain of product liability law.[1]

### 1.    Precedent Uniformly Holds That Defendants Provide Services, Not Products.

Defendants cited numerous cases in which courts have repeatedly dismissed product liability claims against them on the ground that they provide *services*, not products.  *See* Mot. 14–17.  Plaintiffs' only response to those cases is to incorrectly assert that those courts "declined to address whether a social media app was a product."  Opp. 28.  But that is incorrect.  Each of those courts specifically held that Defendants provide services.  In *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023), the court held that "as a social media platform that connects its users, Facebook is more akin to a service than a product."  *Id.* at *3–4 (citing Restatement (Third) of Torts: Products Liability § 19 (1998) ("Restatement (Third)").[2]  In *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021), the Texas Supreme Court noted that the trial court "granted Facebook's motion to dismiss the [plaintiffs'] products-liability claim on the ground that Facebook is not a 'product.'"  *Id.* at 85 n.1.  In *Grossman v. Rockaway Township*, 2019 WL 2649153 (N.J. Super. Ct. June 10, 2019), the court noted

---

[1] Plaintiffs concede that strict liability claims are unavailable under the product liability laws of **Massachusetts**, **Michigan**, **North Carolina**, and **Virginia**.  Opp. 22 n.8.  And Plaintiffs do not dispute that "courts applying **Alabama** law have declined to recognize a freestanding cause of action for strict liability in the products liability context."  *Foster v. Bridgestone Americas, Inc.*, 2013 WL 489162, at *2 (S.D. Ala. Feb. 8, 2013) (emphasis added).  Plaintiffs speculate that they might be able to assert a claim under the "differen[t]" "Alabama Extended Manufacturers' Liability Doctrine," Opp. 22 n.8, but no such claim is at issue here.  **Delaware** law also does not recognize strict product liability claims.  *See Cline v. Prowler Indus. of Md., Inc.*, 418 A.2d 968, 974 (Del. 1980).  *Contra* Opp. 22 n.8.  The only *exception*, where such claims are recognized, requires "a bailment-lease" transaction between the parties, *Cline*, 418 A.2d at 971, and none is alleged here.  Finally, Plaintiffs do not dispute that **Connecticut**, **Louisiana**, **New Jersey**, **Ohio**, and **Washington** do not recognize negligence product liability claims.  *See* Mot. 14 n.9.

[2] Plaintiffs contend that *Jacobs* did not concern Facebook's "algorithms or related features," Opp. 28, but the court addressed allegations that "Meta's algorithms promoting divisive content" caused plaintiff's harm, holding that "the *design* of the social media platform itself . . . provides a *service* for purposes of [product liability] analysis."  *Jacobs*, 2023 WL 2655586, at *2, *4 (emphases added).

that the plaintiffs there had failed to identify any "persuasive or other authority" suggesting that Snapchat "constituted a 'product' rather than a 'service.'" *Id.* at *11. And in *Ziencik v. Snap, Inc.*, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023), the court held—in accord with multiple "[o]ther courts"— that Snapchat "is more like a service than a product." *Id.* at *4.

The uniform result reached by every court to consider this question aligns with other cases holding that analogous online services are not products. *See, e.g.*, *Jackson v. Airbnb, Inc.*, 2022 WL 16752071, at *9 (C.D. Cal. Nov. 4, 2022) (online "platform that connects users . . . is more akin to a service than to a product"); *Quinteros v. InnoGames*, 2022 WL 898560, at *1, *7 (W.D. Wash. Mar. 28, 2022) (allegedly "psychologically addictive" "mobile app" that enabled "interaction between online players . . . over chat and other message systems" was "not a product"); Mot. 16.

These decisions make good sense, and their rationale fully applies here. At their core, Plaintiffs challenge how Defendants' services recommend and deliver various types of content to users based on their interests or facilitate connections and communications between users. Such services are akin to services that businesses have provided for decades—such as bookstores offering personalized recommendations to customers; interior designers selecting, organizing, and displaying art; and businesses connecting people to one another (such as job candidates and employers). *See* Mot. 14–17. No court has ever treated those as a "product" subject to product liability law. That such services are provided within software or other digital technology does not change the analysis. *See infra* Part II.A.2.

Plaintiffs offer no meaningful response. They instead isolate unrelated business contexts where Defendants described their services as "products," Opp. 3, 25, but they do not dispute that whether "something is, or is not, a product [subject to product liability law] is a question of law for the Court," Mot. 17 (quoting Restatement (Third) § 19 cmt. a). It is irrelevant how a company describes its own offerings in other contexts. *See, e.g.*, *Burghart v. S. Corr. Entity*, 2023 WL 1766258, at *3 (W.D. Wash. Feb. 3, 2023) (regardless of whether "services are . . . presented as 'products' to purchase, they are not considered products" subject to product liability law); *Jacobs*, 2023 WL 2655586, at *3 n.1 (the "use by Facebook of the term 'product'" is immaterial to whether "Facebook represents a 'product' for the purposes of" product liability law); *cf. also Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020) (isolated statements by a party "cannot somehow convert" entity's character).

4

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

This Court should follow *every* court that has addressed this issue—and hold that Defendants' interactive communication services are services, and are not products subject to product liability law.

### 2.    Plaintiffs' Inapposite Case Law Involving Software Does Not Demonstrate That Defendants' Services Are Subject to Product Liability Law.

Seeking to upend the judicial consensus, Plaintiffs premise their opposition on the sweeping assertion that "[f]or nearly as long as computer software has existed, courts have treated software as a 'product' in circumstances similar to those here."  Opp. 20.  This is demonstrably wrong.  Indeed, it is an open question whether product liability law applies to computer software *at all*.  *See* Restatement (Third) § 19 cmt. d (noting "dictum" in *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir. 1991), that computer software might be a product in some circumstances but expressing no view on that issue because "there are no cases on point").

Plaintiffs primarily rely on cases where courts conspicuously did *not* address whether Defendants' services are products for purposes of product liability law.  Opp. 21–22.  For instance, *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739 (Ga. 2022), and *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), dealt with distinct legal questions—of duty and proximate causation, and Section 230 immunity, respectively—concerning a specific Snapchat "speed filter" that has been defunct for years and is not at issue in this litigation.  Whether Snapchat constituted a "product" subject to product liability law was not addressed in the briefing nor in either decision.[3]

Courts have specifically recognized that *Lemmon* "did not address whether Snapchat (a photosharing application) was 'a product' for purposes of California tort law."  *Jacobs*, 2023 WL 2655586, at *3–4.  The same is true of the subsequent district court proceedings in *Lemmon v. Snap, Inc.,* 2022 WL 1407936, at *6–7 (C.D. Cal. Mar. 31, 2022) ("*Lemmon II*") (cited at Opp. 21).  Courts

---

[3] Plaintiffs cite *A.M. v. Omegle.com, LLC*, 614 F. Supp. 3d 814 (D. Or. 2022).  Opp. 20-22, 30.  That ruling similarly did "not address the issue before this court, *i.e.*, whether [Defendants' services are] 'a product' for purposes of products liability law."  *Jacobs*, 2023 WL 2655586, at *3 (distinguishing *Omegle*).  When the defendant attempted to raise the issue later in the case, the court held that it had been waived.  *A.M. v. Omegle.com, LLC*, 2023 WL 1470269, at *2 (D. Or. Feb. 2, 2023) (citing Fed. R. Civ. P. 12(g)(2)).  Plaintiffs also cite *Hardin v. PDX, Inc.*, 227 Cal. App. 4th 159 (2014), where the court denied an anti-SLAPP motion while noting that the defendant "*has not argued*" its software program was not a "product"—and so refused to consider that issue at that point.  *Id.* at 170 (emphasis added).

5

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

have *twice* rejected identical attempts by plaintiffs to mischaracterize those proceedings—explaining that "[t]he analysis in *Lemmon II* was under an ordinary negligence analysis, not a product liability analysis." *Jacobs*, 2023 WL 2655586, at *4 (alteration omitted) (quoting *Jackson*, 2022 WL 16752071, at *9).

Moreover, Plaintiffs disregard the fact that courts have consistently declined to apply product liability law to online services, video games, and other media that are comprised of computer software. *See supra* Part II.A.1; *see also, e.g.*, *Rodgers v. Christie*, 795 F. App'x 878, 879–80 (3d Cir. 2020) ("an 'algorithm' or 'formula'" used to present "information, guidance, ideas, and recommendations" is not a product); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 170 (D. Conn. 2002) (dismissing product defect claim against video game software that was allegedly "designed" "to addict players"); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1269–70 (D. Colo. 2002) (dismissing product defect claim concerning video game); *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) ("words and images purveyed [through] electrical pulses through the internet" do not "constitute products"). This Court reached the same conclusion in *Estate of B.H.*, rejecting plaintiffs' argument that a video-streaming "platform and targeting algorithms are tangible software products." Pls.' Opp. to Defs. Motn. to Strike & Alternatively to Dismiss, *Estate of B.H. v. Netflix, Inc.*, 4:21-cv-06561 (filed Nov. 29, 2021), ECF No. 53 at 21. That effort did "not persuade." *Estate of B.H. v. Netflix*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022), *appeal docketed*, No. 22-15260 (9th Cir. Feb. 23, 2022). It is equally unpersuasive here.

As these cases demonstrate, software is not a product subject to product liability law for either of two reasons. *First*, software can be used to deliver a service, and the Restatement is clear that "services, even when provided commercially, are not products." Restatement (Third) § 19(b); *see also id.* cmt. f ("Courts are unanimous in refusing to categorize commercially-provided services as products."); *supra* Part II.A.1. *Second*, product liability law does not apply when a plaintiff alleges injury from intangible information, content, and ideas. Restatement (Third) § 19(a). Indeed, courts are unanimous in refusing to apply product liability law when the plaintiff alleges harm from information, content, or ideas—and that includes when software is playing the "role [of] bringing ideas and information to the public." *Winter*, 938 F.2d at 1037 n.8. That software is involved in

disseminating ideas does not change the analysis; in other words, *Winter* would not have come out differently if the *Encyclopedia of Mushrooms* had been an e-book.

Far from demonstrating a broad categorical rule treating computer software as a "product," Plaintiffs fail to identify a *single* "software" case departing from these established limits on the scope of product liability law. Plaintiffs instead cite cases addressing a narrow circumstance—when software causes a *tangible product* (like a car) to malfunction or be operated unsafely and the *tangible product* injures the plaintiff (as in a car crash). That is not this case.[4]

Plaintiffs rely heavily on the trial court's decision in *Brookes v. Lyft Inc.,* 2022 WL 19799628 (Fla. Cir. Ct. Sept. 30, 2022). Opp. 22–28. But that case involved an application used to navigate a car that struck the plaintiff. *See Brookes*, 2022 WL 19799628, at *1, *3. The court held that the plaintiff could challenge as "defective" the features of the application which "required [the] Defendant to take his eyes off the road" while navigating the car. *Id.* at *1. The court emphasized that the plaintiff's claim was based on how "the Lyft application distracted Defendant . . . and thereby caused the [car] accident resulting in injury to Plaintiff." *Id.* at *6. In so ruling, the court expressly stated that the plaintiff's claim "is not based on expressions or ideas transmitted by the Lyft application." *Id.* at *4. In contrast, when a plaintiff brought product liability claims challenging the design of a similar ridesharing application, but did not allege that the software made the operation of the vehicle more dangerous, the court dismissed the claims because the ridesharing "app was not a product." *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (2022).

---

[4] Plaintiffs contend that the tangibility requirement is satisfied because Defendants' services are accessed by clicking on computers or tapping on phones, and that Defendants take into account these "physical interactions with the apps." Opp. 25–26. But the Master Complaint nowhere asserts any harm from interaction with physical devices. This case does not involve, for example, carpal tunnel syndrome or a phone that overheated and burned a user. Indeed, reading a book (or performing a service, like a librarian delivering recommended books to patrons based on their interests) can involve physical acts, too, but that does not make the information communicated in books (or the librarian's recommendations) subject to product liability law. *See Winter*, 938 F.3d at 1035–36. Plaintiffs also assert that "Snap targets ads to users based" on "children's heartbeats." Opp. 26. That assertion not only is false, but is entirely unsupported by the Master Complaint, which cites a blog post describing a focus group where a discrete group of consenting individuals' heart rates were measured. MC ¶ 459. Plaintiffs do not and could not allege that Snap targeted advertisements to Snapchat users based on their heartbeats.

Similarly, *Lemmon* and *Maynard* involved plaintiffs harmed in car crashes allegedly caused by a design feature that functioned akin to a car's "speedometer." *Maynard*, 870 S.E.2d at 743 ("McGee was [allegedly] using a "Speed Filter" feature . . . to record her real-life speed" while driving and "then rear-ended a car"); *Lemmon*, 995 F.3d at 1088 (similar). Those cases at most indicate that product liability law could apply to software "used to guide an individual" in relation to a physical product that causes harm—similar to "a compass" or a component part of a car.[5] *Winter*, 938 F.3d at 1036.

*Brookes*, *Lemmon*, and *Maynard* do not suggest that product liability law applies where the plaintiff alleges harm from provision of a service or from information, ideas, and content expressed through the service. *See, e.g.*, *Camacho v. The Control Grp. Media Co.*, 2022 WL 3093306, at *15 (S.D. Cal. July 18, 2022) (distinguishing *Lemmon* from claim alleging harm based on how online service was designed to imbue images in advertisements); *Doe ex rel. Roe v. Snap, Inc.*, 2022 WL 2528615 (S.D. Tex. July 7, 2022) (distinguishing *Lemmon* from claim alleging harm based on how "Snapchat has [allegedly] failed to monitor content and messages sent between parties on its platform"), *aff'd*, No. 22-20543 (5th Cir. June 26, 2023); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (distinguishing "*Lemmon* because the nature of the alleged design flaw in this case— and the harm that is alleged to flow from that flaw"—is "related to the posting of third-party content"), *aff'd in relevant part sub nom.*, *Doe # 1 v. Twitter, Inc.*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023).

In sum, the case law and Third Restatement are unanimous. Where, as here, defendants are sued for providing services—not for making more dangerous a specific tangible product that physically harmed the plaintiff—such claims are not subject to product liability law, whether or not software is involved.

---

[5] Plaintiffs' reliance on other cases where software affected the operation of a vehicle or other tangible product that physically harmed the plaintiff is misplaced for the same reason. *See Wickersham v. Ford Motor Co.*, 194 F. Supp. 3d 434, 435 (D.S.C. 2016) (allegedly defective airbag); *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *1, *24 (N.D. Cal. Sept. 14, 2016) (allegedly defective system that generated vehicle "safety concerns"); *Holbrook v. Prodomax Automation Ltd.*, 2021 WL 5052101, at *1 (W.D. Mich. Oct. 15, 2021) (allegedly defective robotic arm on automated assembly line).

### 3.     Plaintiffs Allege Harm From Intangible Information, Content, and Ideas.

Plaintiffs' product liability claims fail for the independent reason that they are based on alleged injuries from intangible information, content, and ideas.  Plaintiffs concede that product liability law does not apply to allegations of harm from information, content, and ideas.  Opp. 20.  To get around this undisputed point of law, they insist they "do not seek to hold Defendants liable for the content uploaded by their users." *Id.* at 30.  But Plaintiffs' brief and Master Complaint tell a different story.

Plaintiffs themselves explain that their theory is "specifically that they would not have been harmed *by the content* on Defendants' platforms but for the alleged design defects."  Opp. 43 (emphasis added).  Plaintiffs thus concede that it is content that allegedly harmed Plaintiffs.  Likewise, the Master Complaint contains numerous allegations that identify the specific content that Plaintiffs allege harmed them.  *See* Mot. 25 (citing Am. Master Compl. (Dkt. 234-1) ("MC") ¶¶ 114, 257 n.303, 278, 610, 762).  And Plaintiffs do not explain how they would "attempt[] to hold [Defendants] liable [without] using such evidence." *Lemmon*, 995 F.3d at 1093 n.4.

To the contrary, Plaintiffs expressly challenge the presence of certain content provided by users on Defendants' services and the alleged failure to "take [it] down."  Opp. 14; *see id.* (discussing how criminals "conceal and exchange CSAM").  They also reference "[i]njuries from online challenges and viral pranks," but such challenges and pranks consist of "certain types of videos" allegedly posted on Defendants' services, and any alleged harm stems from users deciding to imitate the *content* in those videos—for example, they decide to perform the routine or prank that another user recorded themselves performing.  MC ¶¶ 44, 125–26, 632–34, 731.  Holding Defendants liable under product liability law for that third-party content communicated by users on their services is imposing liability for the content itself.  And "strict [product] liability has never been extended to words or pictures" or to a defendant publishing them. *Watters v. TSR, Inc.,* 904 F.2d 378, 381 (6th Cir. 1990); *see* Mot. 24–25 (collecting cases).

Plaintiffs cannot plead around their reliance on content communicated by users through their argument that they challenge only purported "design defects" of Defendants' services.  Opp. 22.  As Defendants explained in their motion to dismiss, each of the purported design defects relates to how

Defendants disseminate information and content provided by users, and Plaintiffs allege harm from the presentation or presence of such content.  Mot. 22–26.

*First*, Plaintiffs argue that Defendants' services are defective because they apply "usage-maximizing algorithms."  Opp. 8–10.  But Plaintiffs' own descriptions of Defendants' algorithms show that their alleged harm is from how content affects them—for example, by alleged increased exposure to "videos [that] tend to be sensationalist."  *Id.* 9–10.  The use of an algorithm to present information or content is not a product, *see Rodgers*, 795 F. App'x at 879, and instead reflects a service "vigorously fulfilling its role as a publisher," *Force v. Facebook, Inc.*, 934 F.3d 53, 70 (2d Cir. 2019); *see also Taamneh*, 143 S. Ct. at 1227 ("content on [Defendants'] platforms is filtered through these algorithms," which "sort the content by information and inputs provided by users and found in the content" and "match[] any content . . . with any user who is more likely to view that content").

*Second*, Plaintiffs point to various "design features" related to the display and dissemination of information, ideas, and content provided by users on Defendants' services.  Plaintiffs discuss how users may "receive[] a message, notification, or 'like,'" Opp. 4, 6; how users may view video clips that "automatically play and restart," *id.* 4; and how users may receive "notifications" about users' activities, *id.* 7.  Courts have specifically held that such "functions—[including] recommendations and notifications—are features meant to facilitate the communication and content of others."  *L.W. v. Snap Inc.*, 2023 WL 3830365, at *5 (S.D. Cal. June 5, 2023) (quoting *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019)).  Imposing product liability would thus "seriously inhibit those who wish to share thoughts and theories."  *Winter*, 938 F.2d at 1035; *see* Mot. 25.  Indeed, the alleged harm from these functions is that they lead users to consume or engage with "too much" content or content that, in Plaintiffs' view, is harmful.

*Third*, Plaintiffs challenge features that allow users to personalize photos and videos using "filters and lenses."  Opp. 6.  They also take issue with features that "enable[] users to post a video side-by-side with another . . . user's video," *id.*, and even with users' general ability to share "information" such as "posts, friends, pictures, and general online sharing" with one another, *id.* 13.  Courts have rejected the argument that these features, which allow users to "develop messages or graphic overlays that accompany photographs," mean that Defendants' services "qualify [as] or

10

constitute a product." *Grossman,* 2019 WL 2649153, at *4, *15; *accord* Mot. 23.  For good reason: the alleged harm associated with these filters is that using them to view or create content may lead some users to engage in social comparisons or to have bad feelings about themselves. *E.g.*, MC ¶¶ 319, 324.  What Plaintiffs allege is harm from information and content.

      *Fourth*, Plaintiffs challenge features that users use to share content and "connect" with one another.  Opp. 11–12.  For example, Plaintiffs challenge the alleged manner in which certain "recommendation algorithms [effectively] function as a digital matchmaking *service*." *Id.* 13 (emphasis added).  But Plaintiffs are alleging harm from how Defendants allegedly enable users to communicate and transmit information to one another.  *See* MC ¶¶ 138, 145; *Quinteros*, 2022 WL 898560, at *2, *7 (online game that some users misused to exchange "harassing" messages was "not a product").  Moreover, an online service that "connects its users . . . is more akin to a *service* than a product." *Jacobs*, 2023 WL 2655586, at *4 (quoting *Jackson*, 2022 WL 16752071, at *9) (emphasis added); *see also, e.g.*, *Crouch v. Ruby Corp.*, 2022 WL 16747282, at *9 (S.D. Cal. Nov. 7, 2022) (online matchmaking company "do[es] not sell products on their website, they sell a service").

      *Finally*, Plaintiffs take issue with *how* users can access the information, ideas, and content on Defendants' services.  Plaintiffs demand that their preferred "age verification," "account deletion," or "parental control" measures be imposed, all of which would "limit" access.  Opp. 7–8, 10–11.  But the encyclopedia in *Winter* would not have been transformed into a product if the plaintiff's claim had been that the publisher should have limited its availability to qualified mycologists.  Plaintiffs likewise seek to use product liability law to restrict the "words and images" that Defendants make available—content that Plaintiffs say Defendants should have "prevented from reaching minors." *James*, 300 F.3d at 697, 701; *see In re Facebook*, 625 S.W.3d at 84–85, 85 n.1 (noting dismissal of similar product liability claim predicated on age-verification and parental-control features); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 584 (S.D.N.Y. 2018) (allowing a user to access and create a "profile" on an online service implicates "expressive content"), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).

      In sum, Plaintiffs do not seek to hold Defendants liable for any physical attributes of their services; Plaintiffs' purported "design defects" instead concern "words and ideas" or a "publisher's

role in bringing ideas and information to the public." [6] *Winter*, 938 F.2d at 1035, 1037 n.8.  Plaintiffs'

alleged harm necessarily depends on the content on Defendants' services and their choices about how

that content is presented.  "Without the content, there would be no claim."  *Estate of B.H.*, 2022 WL

551701, at *3.[7]  Product liability law does not apply to such claims.  *Id.*

### 4. The Court Should Not Create New State Tort Law for Every State.

Implicitly recognizing their claims are contrary to established law, Plaintiffs urge the Court to

"adapt" tort law in response to Defendants' "major inventions," Opp. 1, because "public policy

confirms strict products liability is appropriate here," *id.* 31 (cleaned up).  The Court should reject that

request and instead "take state law as it exists."  *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007).

*First*, Plaintiffs contend that a federal court must be able to extend state law to claims "involving

novel issues" because otherwise "defendants could ensure a decision in their favor simply by removing

the case to federal court."  Opp. 19 (cleaned up).  But when addressing novel state law claims, federal

courts predict how a state's highest court would decide the issue by looking to "intermediate appellate

court decisions, decisions from other jurisdictions, statutes, treatises, and restatements."  *Judd v.

Weinstein*, 967 F.3d 952, 955–56 (9th Cir. 2020).  Plaintiffs instead are asking the Court to reject

established limits on state law and create new law on the basis of (ill-considered) policy arguments.

Such "trailblazing initiatives under state law" are precisely what the Ninth Circuit has advised against.

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011).

---

[6] That some cases have treated electricity as a product, Opp. 25, is irrelevant here.  Electricity is a "force[]" that can cause "personal injury or property damage," Restatement (Third) § 19, and the cases Plaintiffs cite have nothing to do with injuries resulting from information, ideas, or content.

[7] Plaintiffs' assertion that *Estate of B.H.* concerned only the "content of a show," Opp. 29, is contradicted by the record in that case.  The plaintiffs there alleged that Netflix used "sophisticated, targeted recommendation systems to push" allegedly harmful content "on unsuspecting and vulnerable children," that these "recommendation algorithms" were themselves "a product," and similarly disclaimed that the product liability claim did "not arise from Netflix's manufacture or creation of [content], but rather from its targeting of . . . vulnerable children and its failure to include adequate warnings."  Am. Compl. ¶¶ 14–15, 78 & p.14, *Estate of B.H.*, No. 4:21-CV-06561-YGR (N.D. Cal. Sept. 22, 2021), ECF No. 22.  This Court correctly held that the purported distinctions, including between content and design features, were immaterial.  *See Estate of B.H.*, 2022 WL 551701, at *3.

In similar circumstances, federal courts—including those presiding over MDLs—have rejected invitations to "predict" that state courts would eschew established legal doctrines.  *See, e.g.*, *Laron v. Wright Med. Tech., Inc.*, 587 F. Supp. 3d 1065, 1077 (D. Nev. 2022) ("this Court can see no clear indication that [a state high court] would depart from [the Restatement's] rationale in this case"); *In re Med. Cap. Sec. Litig.*, 842 F. Supp. 2d 1208, 1213 (C.D. Cal. 2012) ("Perhaps the California Supreme Court or the California Legislature will extend the law at some future date and, at that time, this Court will be happy to enforce it.  At the present time, however, California state law clearly prohibits the [plaintiffs'] claims."); *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 11337564, at *6 (S.D. Cal. Oct. 19, 2022) ("it is not for this Court to reimagine [state law] under a modern framework"); *In re Qualcomm Antitrust Litig.*, 2023 WL 121983, at *18 (N.D. Cal. Jan. 6, 2023) (refusing to predict that state court would reach a "novel" conclusion that lacks "any basis in case law" from the relevant state); *Orkin*, 487 F.3d at 741 ("it is highly unlikely that the California Supreme Court would . . . adopt a new rule" that diverges from existing law).

*Second*, public policy does not support Plaintiffs' creation of new product liability law.  As the Ninth Circuit observed in *Winter*, the "cost/benefit analysis" that supports applying strict liability law to tangible products does not apply to claims of harm from ideas and expression. "Strict liability principles even when applied to products are not without their costs.  Innovation may be inhibited.  We tolerate these losses.  They are much less disturbing than the prospect that we might be deprived of the latest ideas and theories."  938 F.2d at 1035.  This Court similarly refused to expand product liability law based on policy considerations in *Estate of B.H.*, 2022 WL 551701, at *1, *3; *see also, e.g.*, *Wilson*, 198 F. Supp. 2d at 174 (rejecting plaintiff's argument that "technological advances" warranted abandoning "the 'intangible' category that is demarcated in the case law"); *Jacobs*, 2023 WL 2655586, at *3 (rejecting argument that "the times and needs of society" justify "chang[ing]" product liability law such that Facebook could be considered a product (citation omitted)).[8]

---

[8] None of the cases cited by Plaintiffs support applying a public policy analysis to create new state law liability when a plaintiff alleges harm from information, ideas, or content.  Those cases instead concerned plaintiffs suffering harm from tangible items, such as "large, industrial coke ovens." *Matter of Eighth Jud. Dist. Asbestos Litig.*, 33 N.Y.3d 488, 491 (2019).

That is all the more important here.  Users employ Defendants' services "to engage in a wide array" of communication "on topics as diverse as human thought."  *Packingham v. North Carolina*, 582 U.S. 98, 105 (2017) (citation omitted).  Imposing product liability law on how Defendants disseminate such information and speech could severely restrict what users can say or see online and how effectively their messages can flow.  *See DeFilippo v. Nat'l Broad. Co.*, 1980 WL 336092, at *2– 3 (R.I. Super. Ct. June 8, 1980) (it "would create a chilling effect" that could "result in suppression" of speech if product liability law applied to the dissemination of intangible information or content), *aff'd*, 446 A.2d 1036 (R.I. 1982).  That is apparent from the very nature of Plaintiffs' claims—which demand that Defendants redesign their services to ensure Plaintiffs' disfavored content, such as "sensationalist" videos, is suppressed, Opp. 8–10; to make it harder for users to connect or communicate with one another, *id*. at 11–12; to limit the features users can use to create or personalize content they choose to share, *id*. at 6; and even to eliminate users' ability to share ideas and content at all, *id*. at 7–8.  This Court "must exercise extreme caution before suggesting" that such drastic results are mandated by state law, *Packingham*, 582 U.S. at 105—much less by a body of law that has *never* before regulated a defendant's "role in bringing ideas and information to the public," *Winter*, 938 F.2d at 1037 n.8.

**B.**      **Plaintiffs' Negligence-Based Product Liability Claims Should Also Be Dismissed for Failure to Allege a Cognizable Duty.**

Plaintiffs attempt to avoid their obligation to allege that Defendants owe them a legally recognized duty by relying on their flawed product liability arguments.  Opp. 35.  But Plaintiffs' argument that "Defendants owe them the same duties that all product makers owe to product users," *id.*, necessarily fails because Defendants' online services are not products.  *See supra* Part II.A.

Plaintiffs' other attempts to establish a duty also fail.  *First*, Defendants do not owe a "general duty" to Plaintiffs.  And Plaintiffs have not rebutted or distinguished the myriad cases declining to recognize such a duty owed by online communications services to their billions of users.  *Second*, Plaintiffs' allegations that Defendants' services are "addictive" cannot create a duty of care that does not otherwise exist.  Plaintiffs cite no authority supporting the existence of such a duty and ignore the many cases with contrary holdings.  *Third*, Plaintiffs cite no legal support for their suggestion that the Court can or should create a special relationship between Defendants and their minor users or other

14

1    third parties to support a duty of care.  *Fourth*, because there is no "general duty," this Court need not

2    address "public policy" factors, which in any event would weigh in favor of limiting any such duty.

3              **1.      Plaintiffs Do Not Allege a Cognizable General Duty Owed by Defendants.**

4              Plaintiffs incorrectly argue that they have adequately pleaded "a general duty" by simply

5    asserting a product liability claim.  *Contra* Opp. 35.  Courts in other cases involving online services,

6    communication apps, and expressive media have considered and rejected similar arguments.  Mot. 28–

7    31 (citing cases rejecting "general duties" allegedly owed by communication apps, online services, or

8    expressive media).  Plaintiffs' claims are another chapter in a long history of failed attempts to impose

9    tort duties on new forms of media and entertainment—spanning television and movies, video games,

10   publishers of "pranks" or "dangerous" content, and online services.  *See id.*

11             It is *Plaintiffs'* burden to "plead facts establishing" a duty.  *Castillo v. Seagate Tech., LLC*, 2016

12   WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016).  And it has long been insufficient to baldly assert, as

13   Plaintiffs do, that Defendants owe billions of users "a general duty."  Opp. 38.  "Duty is not universal;

14   not every defendant owes every plaintiff a duty of care."  *Brown v. USA Taekwondo*, 11 Cal. 5th 204,

15   213 (2021).  The risk of imposing untenable and limitless duties is particularly pronounced for online

16   communication services, who have "arm's length" relationships with "billions of people, most of whom

17   use the platforms for interactions that once took place via mail, on the phone, or in public areas."

18   *Taamneh*, 143 S. Ct. at 1227–28 (rejecting claims whose "expansive scope" would impose limitless

19   duties on "communication-providing services").

20             Nor is foreseeability the "sole or predominant consideration of the duty analysis" in "most

21   jurisdictions."  Opp. 36.  "[F]oreseeability is not synonymous with duty; nor is it a substitute."  *Erlich

22   v. Menezes*, 21 Cal. 4th 543, 552 (1999); *cf. Lowery v. Echostar Satellite Corp.*, 160 P.3d 959, 965

23   (Okla. 2007) (defendant owed no duty, despite finding that "[t]he foreseeability of the risk of harm to

24   [plaintiff] . . . is tacitly admitted by the parties").  As one of Plaintiffs' own cases explains, "[m]any

25   products can foreseeably be used in numerous ways with numerous other products and parts," and

26   requiring a warning "about all of those possible uses . . . would impose a difficult and costly burden on

27   manufacturers, while simultaneously overwarning users."  *Air & Liquid Sys. Corp. v. DeVries*, 139 S.

28   Ct. 986, 994 (2019) (cited at Opp. 1, 35); *see also Taamneh*, 143 S. Ct. at 1228 (theoretical

                                                        15

foreseeability is insufficient because "there is no allegation that the platforms here do more than transmit information by *billions of people*," and because plaintiffs' claims would necessarily hold platforms liable for every bad act "committed *anywhere* in the world" (emphases added)).

These principles have even greater force here, as online services, like "broadcasters and publishers[,] owe no duty to the general public who may view their broadcasts or read their publications." *Brandt v. Weather Channel, Inc.*, 42 F. Supp. 2d 1344, 1346 (S.D. Fla. 1999) (collecting cases), *aff'd*, 204 F.3d 1123 (11th Cir. 1999); *see also* Mot 28–31.  Plaintiffs' opposition does not cite a single case where a court has imposed a comparable duty based merely on information or ideas exchanged on an online service.  Plaintiffs' legal conclusions that such a duty exists here do not make it so.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts have rejected similar assertions that "known risks" about harmful media are sufficient to establish duty as a matter of law.  *E.g.*, *Zamora v. Columbia Broad. Sys.*, 480 F. Supp. 199, 206 (S.D. Fla. 1979) (granting motion to dismiss for lack of duty, despite acknowledging that "television programming presents problems and the study of these continues"); *James*, 300 F.3d at 693 (affirming dismissal because no duty owed by internet websites, video game makers, or movie producers after classmate killed students, while acknowledging that "[m]ental health experts could quite plausibly opine about the manner in which violent movies and video games affect viewer behavior"); *cf. Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 798, 800–02 (2011) (rejecting reliance on "research" and "psychological studies" about violent video games).

In any event, Plaintiffs do not meaningfully rebut the many cases holding that, as a matter of law, personal injury and death are not foreseeable consequences of distributing content.  *See* Mot. 28–29 (citing cases); *see also Sanders*, 188 F. Supp. 2d at 1272  (collecting cases rejecting tort liability premised on the purported foreseeability of injury arising from viewing or listening to content).  Plaintiffs claim the injuries in those cases involved "speculative," "unforeseeable—often erratic, idiosyncratic—harm," and "content censorship."  Opp. 37–38.  But they are no different than the harms Plaintiffs assert here.  Plaintiffs concede that users interact with Defendants' services in varied ways—asserting "*unique* characteristics" of each service, with "multiple, *distinct* defects," that "manifest in *different* ways," and result in individualized user experiences "based on *a staggering number of*

16

*variables and datapoints.*"  Opp. 4, 9 (emphases added).  Plaintiffs do not (and cannot) explain why a "general duty" to "foresee" and prevent variable harm to billions of users should be created here, when it already has been rejected in contexts involving streaming content about suicide (*Estate of B.H.*), creating "addictive" video games (*James*), publishing shooting sports supplements (*Way*), and disseminating an article describing autoerotic acts (*Herceg*).  *See* Mot. 28–29 (citing cases).

Unable to articulate a principled basis to distinguish these cases, Plaintiffs pivot to inapposite cases involving physical products and injuries.  Opp. 36.  In *Lowery*, for instance, the court declined to impose a duty on a satellite dish company after the plaintiff slipped from a ladder while attempting to repair a satellite dish, even after the defendant had advised "that [the plaintiff] could make the minor repair to the dish."  160 P.3d at 962, 965–66.  Here, Plaintiffs do not allege that Defendants have direct communications with Plaintiffs, making any interactions even more attenuated than in *Lowery*.  Plaintiffs also cite *Sewell v. Racetrac Petroleum, Inc.*, 245 So. 3d 822 (Fla. Dist. Ct. App. 2017), but that case involved a recognized theory of liability—*i.e.*, that "[a]n owner can be liable for actions it takes or fails to take on its own property that cause vehicles to exit in a manner that the owner knew or should have known creates an unreasonable danger to vehicles on the adjacent roadway."  *Id.* at 827–28 (citing cases).  In other words, the foreseeable harm was physical, took place on the defendant's property, and was redressable through limited safety measures.  By contrast, Plaintiffs' claims would impose on Defendants a sprawling duty to prevent harm from third-party content to billions of users, each of whom interacts with Defendants' services differently.[9]  Opp. 36, 43 (arguing Plaintiffs "would not have been harmed *by the content* on Defendants' platforms but for the alleged design defects." (emphasis added)); *see supra* Part II.A (product intangibility); Mot. 28.

---

[9] The two cases Plaintiffs cite for "foreseeability" in the context of "social media" merely held that some plaintiffs had plausibly alleged a duty related to collecting and storing individuals' personal information, *not* that Facebook owed "a general duty" to all users of the Facebook service.  *See* Opp. 38 (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019)).

> ### 2.     Plaintiffs' Allegations Regarding the Alleged Addictiveness of Defendants' Services Do Not Create a Duty of Care.

Plaintiffs' argument for a duty based on the allegedly addictive nature of Defendants' services also fails.  Opp. 44–45.  Defendants' purported duty to prevent "compulsive" use—*e.g.*, through "feeds" that "winnow[] a mass of content" (MC ¶ 591)—necessarily derives from users accessing, viewing, and interacting with content.  Defendants' "recommendation algorithms are merely part of [the] infrastructure through which all the content on their platforms is filtered."  *Taamneh*, 143 S. Ct. at 1227.  And where claims are inextricably intertwined with the dissemination of speech and content, courts have declined to impose a duty to "prevent addiction" or over-consumption of that content.  Mot. 31–33; *see also supra* Part II.A.3 (product intangibility).

Plaintiffs' claim that "[t]here is no special exemption in negligence for addiction," Opp. 44, has it backwards.  It is *Plaintiffs* who must identify an exception to the rule that there is no general duty in tort, not vice versa.  This they cannot do.  And courts have rejected duties premised on "addictiveness."  *See* Mot. 31–33 (citing cases).  Again, attempts to invoke "studies" about allegedly harmful content—including from "defendants' creation and distribution of their games, movie, and internet sites"—do not establish foreseeability.  *See James*, 300 F.3d at 692 ("The mere fact that the risk may have materialized does little to resolve the foreseeability question.").  Nor may Plaintiffs sidestep "slippery-slope hypotheticals" (Opp. 45) because their own theories would apply not just to Defendants' online services but to other services (online or not).  *E.g.*, MC ¶ 12 (alleging children are susceptible to addictive features in "digital products"); *id.* ¶ 77 (alleging all products using intermittent variable reward techniques are "highly addictive or habit forming").  The element of duty stands "as a gatekeeper for the otherwise extremely broad concept of negligence."  *James*, 300 F.3d at 692.

Plaintiffs' attempt to analogize Defendants' services to slot machines, MC ¶ 78–79, also fails.  It is irrelevant that casinos are "carefully regulated."  Opp. 44 n.25.  Courts have held that operators of casinos and slot machine manufacturers *do not* owe a general duty to prevent addiction.  *See Merrill v. Trump Ind., Inc.*, 320 F.3d 729, 732–33 (7th Cir. 2003) (declining to impose common law duty); *see also Taveras v. Resorts Int'l Hotel, Inc.*, 2008 WL 4372791, at *4 (D.N.J. Sept. 19, 2008) (casino not liable for excessive gambling, which would require "impos[ing] a duty on shopping malls and credit-

card companies to identify and exclude compulsive shoppers"); *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W. Va. 2016) (rejecting claim where gambling allegedly caused customer to embezzle, spend all family funds, and die by suicide); *NOLA 180 v. Harrah's Operating Co.*, 94 So. 3d 886, 889 (La. Ct. App. 2012) (casinos have no duty to identify and exclude "problem gamblers").

Plaintiffs attempt to rely on two cases—involving nicotine and opiates—that involve physical products that contain *chemical* components. And these chemical components have direct, traceable, common, and predictable effects on most individuals. Opp. 44–45 (citing *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 522, 655 (N.D. Cal. 2020); *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 785–87 (N.D. Ohio 2020)). In contrast, Plaintiffs make no claim that Defendants created the harmful content to which Plaintiffs were allegedly exposed, or that the vast majority of the billions of users of Defendants' services are "addicted." Nor do they explain how Defendants could predict which users will become "addicted" and suffer mental health harms. Inventing a duty to prevent or warn about alleged "addictiveness" of information, content, and ideas would provide "no recognizable standard" for courts. *Zamora*, 480 F. Supp. at 202.

### 3.     Plaintiffs Do Not—and Cannot—Allege Any Legally Cognizable Special Relationship That Would Impose Duties on Defendants.

Plaintiffs concede that Defendants do not owe a heightened duty to minors based on the existence of a "special relationship" with users. Opp. 45–46. And courts have repeatedly recognized that there is not a "special relationship" between millions of users and services that users can join (or leave) at will. *E.g.*, *Dyroff*, 934 F.3d at 1101 ("[N]o special relationship [exists] between Facebook and its users."); *James*, 300 F.3d at 694; *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007); *cf. M. L. v. Craigslist Inc.*, 2020 WL 6434845, at *13 (W.D. Wash. Apr. 17, 2020) (there is no "general duty" for website operators "to ensure that their website does not endanger minors").[10]

---

[10] Plaintiffs' cited cases involve *physical* products or custodial relationships. Neither support recognizing a heightened duty of care to minors here. *Cf. Swix v. Daisy Mfg. Co.*, 373 F.3d 678, 686–88 (6th Cir. 2004) (using an "objective reasonable child standard" to find that it was foreseeable that a 12-year-old would misuse a BB gun to shoot at another person); *Sims v. United States*, 2020 WL 3273040, at *3 (W.D. Mo. June 17, 2020) (recognizing a duty of care arising from a supervisory relationship under Missouri law); *In re JUUL*, 497 F. Supp. 3d at 656 (duty of care analysis premised on foreseeability and public policy factors, not solely the age of plaintiffs).

19

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

Instead, Plaintiffs claim that Defendants engaged in misfeasance, a narrow exception to the special relationship requirement, arguing that "Defendants' social media apps actively contributed to [such] conduct" or "created a risk of harm." Opp. 46, 48; *see Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) ("If a plaintiff can demonstrate that the defendant did not merely fail to act, *but also assisted the third party*, then the requirement of a special relationship no longer applies." (emphasis added, citation omitted)). But such conclusory allegations would destroy the guardrails around tort liability, as the Supreme Court recently confirmed.

In *Taamneh*, the Supreme Court rejected claims that Facebook, Twitter, and YouTube were *secondarily* liable under a federal terrorism statute for the posting (and alleged algorithmic recommendation) of terrorism content that allegedly radicalized users. 143 S. Ct. at 1218. Reasoning from "common law" principles about the "limits on tort liability" and "duty," *id.* at 1220–21, 1226, 1227 & n.14, 1229, the Court explained that while "it might be that bad actors . . . are able to use [online communications services] for illegal—and sometimes terrible—ends," "the same could be said of cell phones, email, or the internet generally." *Id.* at 1226. Creating a rule that imposes liability "merely for knowing that . . . wrongdoers were using [defendant's] services and failing to stop them" would "run roughshod over the typical limits on tort liability." *Id.* at 1228–29. The Court declined to sanction such a dramatic expansion of tort liability, noting that "when legislatures have wanted to impose a duty to remove content on these types of entities, they have apparently done so by statute." *Id.* at 1227 n.14.

*Taamneh*'s reasoning applies with even more force here, where Plaintiffs attempt to impose *direct* liability on Defendants for third-party misconduct on their services. The Master Complaint is devoid of well-pleaded allegations that Defendants' services *actively contributed* to Plaintiffs' injuries. Billions of people use Defendants' services, and the "mere creation of their media platforms is no more culpable than the creation of email, cell phones, or the internet generally." *Id.* at 1209. And the possibility that a service could be misused by *some* bad actors is not sufficient to allege an increased risk of harm. *See* Mot. 35–38; *see also Taamneh*, 143 S. Ct. at 1227 n.14 ("Plaintiffs have not presented any case holding such a company liable for merely failing to block such criminals despite knowing that they used the company's services."); *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *15 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) (website's use of neutral tools and

20

functionalities is not misfeasance); *Ziencik*, 2023 WL 2638314, at \*5 ("[d]efendant's creation and operation of a communication platform . . . does not by itself create a risk of third-party misuse as a matter of law"); *Vesely*, 762 F.3d at 666 ("simply enabling consumers to use a legal service is far removed from encouraging them to commit an illegal act").

Cases involving firearms are inapposite.  *See* Opp. 47–48.  *Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003), is readily distinguishable because (1) firearms are tangible products; (2) they were the sole cause of the direct and immediate physical harms at issue (injury and death of multiple individuals); and (3) the plaintiff alleged that the defendant took "affirmative action" to "creat[e] an illegal secondary market for guns that targets illegal purchasers," none of which apply here.  *Id.* at 1201.  Further, the Seventh Circuit has held that a "website that facilitates the sale of guns between private owners" did not owe a duty of care to the deceased, because there was no special relationship between the parties, and the website "did not invite [third parties] to break the law."  *Vesely*, 762 F.3d at 665–66.  Here, Plaintiffs do not allege that Defendants "encourag[ed] [third parties] to commit an illegal act."  *Id.*

Plaintiffs' reliance on cases about other physical products is misplaced.  For example, *Hacala v. Bird Rides, Inc.*, 90 Cal. App. 5th 292 (2023) (cited at Opp. 48), involved allegations of a tangible product (a scooter), "controlled, operated, unlocked, and rented" by the scooter company, which then caused a physical injury.  *Id.* at 311.  Due to its control over the product, the scooter company affirmatively agreed "to take measures to prevent such injuries when it obtained [a] permit from the City."  *Id.* at 301.  The court limited its ruling to a *codified* duty "in the management of [one's] *property*," based on allegations that the company "le[ft] scooters on sidewalks in a manner that posed a tripping hazard to pedestrians."  *Id.* at 312–13 (emphasis added).  Here, there is no physical product leading to physical injury, and no undertaking to manage property or prevent injury.

Plaintiffs' reliance on *Gersh v. Anglin*, 353 F. Supp. 3d 958 (D. Mont. 2018), is also misplaced. Opp. 48.  In *Gersh*, the defendant personally directed the alleged tortious activity—"publishing personal and professional contact information for the Gersh family, and offering samples of the types of anti-Semitic and misogynistic messages his readers should leave."  353 F. Supp. 3d at 969.  Plaintiffs here do not allege that Defendants directed users to create or share the content that harmed Plaintiffs.

21

### 4.      This Court Should Decline to Create New "Public Policy" Duties.

The Court should reject Plaintiffs' request to create a duty based on "a set of 'public policy' factors" that they claim are "regularly consider[ed]" by states.  Opp. 40.  Again, Plaintiffs have it backwards.  Those factors, first articulated in *Rowland v. Christian*, 69 P.2d 561, 564 (Cal. 1968), are *not* a "freestanding means of establishing duty, but instead a means for deciding whether to limit a duty derived from other sources."  *Brown*, 11 Cal. 5th at 217.  Thus, where, as here, a plaintiff alleges a duty to protect from third-party misconduct, there is no duty absent a "special relationship between the parties or some other set of circumstances giving rise" to such a duty.  *Id.* at 209.  Only if such a relationship or circumstances exist may courts consult the *Rowland* factors.  Moreover, the *Rowland* factors "remain a minority approach."  W. Jonathan Cardi, *The Hidden Legacy of Palsgraf: Modern Duty Law in Microcosm*, 91 B.U. L. Rev. 1873, 1879, 1884 (2011) (citing *Rowland*).

Even if the Court examines the *Rowland* factors, they do not support a finding of duty here.  *See supra* Part II.A.3 (product intangibility).  The harms alleged are not foreseeable under *Rowland*.  Defendants each provide disparate services with varied features, that billions of users engage with in individualized experiences alleged to be "based on a staggering number of variables and datapoints."  Opp. 9.  In turn, Plaintiffs allege only that some users may be injured in any number of ways, depending on how they individually engage with different combinations of Defendants' services or with third parties.  Courts have declined to impose a duty under the *Rowland* factors when claims were similarly attenuated.  Thus, for example, in *Jackson*, the court refused to recognize a duty for Airbnb, a short-term rental website, to prevent a shooting on one of the properties booked through the site.  2022 WL 16752071, at *8.  "Even if there were some exception to the limitations on duties applied here," the court held, the "*Rowland* factors do not support a finding of duty" because "the foreseeability of the crime was low," "the connection between Airbnb's conduct[] and the injury is virtually nonexistent," and "the burden of preventing this sort of incident in the future is high."  *Id.*

*Rowland*'s public policy considerations weigh against a duty as well.  Any blame is appropriately placed on third parties who create the content that Plaintiffs allegedly cannot disengage from or who harmed Plaintiffs directly; Defendants are not the cause of those injuries.  The policy of preventing future harm would not be best served by imposing the costs of third-party conduct upon

22

1  Defendants.  Moreover, imposing liability on Defendants would have significant consequences to the

2  community because of the chilling effect on expression.  In *Delfino v. Agilent Technologies, Inc.*, 145

3  Cal. App. 4th 790 (2006), the California Court of Appeal declined to find that an employer could be

4  responsible for the transmission of threats online by an employee using the employer's computer,

5  reasoning that a duty "might have a significant chilling effect upon Internet free speech."  *Id.* at 816;

6  *see also, e.g., Estate of B.H.*, 2022 WL 551701, at *3 ("California courts have declined to find a duty

7  as a matter of law under the *Rowland* factors for claims implicating expression.").  So too, here, creating

8  a new duty to prevent unforeseeable bad acts by third parties who use Defendants' services would fail

9  the *Rowland* factors.

10         **C.      Plaintiffs Fail to Adequately Allege Proximate Causation.**

11         Plaintiffs' Opposition confirms that they fail to allege the requisite causal connection between

12  any Defendant and *any* of Plaintiffs' alleged harms.  Nowhere is this more apparent than their numerous

13  attempts to impose liability on Defendants for the criminal and tortious actions of *third parties*.[11]

14         **1.      Defendants Are Not Liable Under Settled Case Law for Harms Caused by the
15                   Tortious or Criminal Acts of Third Parties.**

16         At a minimum, all claims premised on harms allegedly caused by third parties who misused

17  Defendants' services to commit criminal and tortious acts should be dismissed (*e.g.*, alleged harms

18  resulting from third parties' sexual predation and exploitation, solicitation and transmission of CSAM,

19  and bullying).   Plaintiffs' Opposition makes plain that their claims would impose liability on

20  Defendants for such harms.  *See* Opp. 53 (arguing Defendants' services "facilitate and contribute to

21  sexual exploitation and CSAM dissemination" and provide forum for predators "to groom and abuse

22  children"); *see, e.g.*, MC ¶ 17 (alleging Defendants' services facilitate bullying).  Plaintiffs misstate

23  their burden in pleading proximate cause, contending they need allege only that Defendants generally

24  could have foreseen that some third parties might misuse their services to cause the types of harms

25  Plaintiffs allegedly suffered.  Opp. 52–53.  But this argument ignores the many authorities cited in

26

27  _____

[11] Plaintiffs do not contest that the issue of proximate causation may be decided as "one of law, not
28  fact," on a motion to dismiss.  *Modisette*, 30 Cal. App. 5th at 152; *see also Scurry v. N.Y.C. Hous.
     Auth.*, 140 N.Y.S.3d 255, 260 (2021).

Defendants' Motion, MTD 43, as well as the Supreme Court's recent decision in *Taamneh*, which held that merely providing online services to the general public does not make a company liable for the wrongful acts of others, even if it is generally foreseeable that misuse might occur. *See, e.g.*, *Taamneh*, 143 S. Ct. at 1226, 1228–29 (the "mere creation of [social media] platforms" is insufficient to make a company legally responsible for harms caused by third parties, even where the company knew "that the wrongdoers were using [its] services and fail[ed] to stop them").[12]

Likewise, here, the Court should follow settled law and reject Plaintiffs' argument that Defendants proximately cause all of the harms that they could generally foresee being committed through the use of their communication services. *See id.* at 1228–29; *see also Modisette v. Apple Inc*., 30 Cal. App. 5th 136, 155 (2018) (even assuming "use of the iPhone while driving" was generally foreseeable to result in car accident, "the gap between Apple's design of the iPhone and the [plaintiffs'] injuries is too great for the tort system to hold Apple responsible"); *Fields v. Twitter, Inc.*, 881 F.3d 739, 749–50 (9th Cir. 2018); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019).

Plaintiffs' attempt to distinguish the wealth of case law declining to hold online communication services liable in similar circumstances confirms that those decisions apply here. *See* Mot. 43–45. Plaintiffs are wrong that "the connection between the defendants' actions and the plaintiffs' harm in those cases was far more attenuated than it is here." Opp. 54. Like Plaintiffs' allegations here, the cases Defendants cited in Defendants' Motion involve claims that plaintiffs suffered harm after third parties used the defendants' services for nefarious ends. For example, there is no legal distinction between Plaintiffs' argument that Defendant' services "help sexual predators connect with children," *see, e.g.*, MC ¶ 134, and the plaintiffs' arguments in *Crosby*, *Field*, and *Taamneh* that the defendants' services helped terrorists connect with one another, recruit users, or communicate about their plan, *see Crosby*, 921 F.3d at 620 (no proximate cause where plaintiffs alleged that defendants "provid[ed] social media platforms to ISIS" that ISIS used to post graphic and threatening content and to "connect[] and reconnect[]" with its supporters); *Fields*, 881 F.3d at 743 (no proximate cause where plaintiffs alleged

---

[12] As the Supreme Court's comments in *Taamneh* show, that Defendants' services are intended to be used and are used overwhelmingly for lawful and beneficial purposes, and that fact is highly relevant to the proximate causation analysis despite Plaintiffs' attempt to argue otherwise (Opp. 55).

that ISIS used Twitter "to communicate with potential recruits" and "post[] graphic photos and videos"); *see also Taamneh*, 143 S. Ct. at 1226 (explaining that plaintiffs alleged that "ISIS was able to upload content to the platforms and connect with third parties," and that "defendants' algorithms matched ISIS-related content to users").[13]   Indeed, as one court recently noted in rejecting product defect claims against some of the same features challenged here (*i.e.*, friend recommendation features and ephemeral content), "the harm animating Plaintiffs' claims [that Snapchat was used in an alleged sextortion scheme] is 'directly related to the posting of third-party content on [Snapchat]'" and "*doesn't flow from a design defect*." *L.W.*, 2023 WL 3830365, at *4–5 (emphasis added).

There also is no merit to Plaintiffs' suggestion that, in *Crosby*, the Sixth Circuit applied "a more stringent showing of causation than state tort law." Opp. 54.   To the contrary, the Sixth Circuit expressly stated that it was affirming the dismissal of both the federal Anti-Terrorism Act and "*state law claims*" for negligence for failure to "show[] proximate cause." *Crosby*, 921 F.3d at 627 (emphasis added).   In *Fields*, the court likewise heavily cited decisions discussing proximate causation in other contexts, including under state law.   *See* 881 F.3d at 745–48.   And, contrary to Plaintiffs' assertion, the California Court of Appeal's holding in *Modisette* was not "premised on a prior determination" concerning the duty of care.   *Contra* Opp. 54.   Rather, the court specifically held that lack of proximate causation was an independent basis for dismissal and that Apple's "failure" to "automatically disable [the FaceTime app while driving] did nothing more than create the condition that made Plaintiffs injuries possible," and was "too remotely connected with Plaintiffs' injuries to constitute their legal cause." *Modisette*, 30 Cal. App. 5th at 154.

Against this weight of authority involving online services, Plaintiffs offer only plainly distinguishable decisions involving physical products, pharmaceuticals, and foster care placements in dangerous homes.   For example, in *In re JUUL Labs*, the plaintiffs alleged that Juul was culpable for

---

[13] *See also Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *2–3 (Cal. Ct. App. Aug. 10, 2017) (no proximate cause where plaintiffs alleged "Airbnb facilitated short-term rentals at their building"); *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *5 (S.D. Tex. Mar. 22, 2021) (no proximate cause where plaintiffs alleged that Salesforce provided "targeted solutions that were critical to Backpage's growth and success," and that "Salesforce knowingly assisted, supported, and facilitated sex trafficking"); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1161, 1178 (N.D. Cal. 2018) (similar).

third parties illegally providing its physical nicotine products to minors because Juul "intended" this result.  497 F. Supp. 3d at 664.  Here, Plaintiffs nowhere allege that Defendants *intended* for criminals to misuse their services, nor could they given that Defendants' terms of use expressly prohibit such activities.  Mot. 37–38.

Similarly, in *City of Everett v. Purdue Pharma L.P.*, 2017 WL 4236062 (W.D. Wash. Sept. 25, 2017), the plaintiffs alleged that Purdue "supplied suspicious quantities of OxyContin to obviously suspicious physicians and pharmacies in Everett . . . without disclosing suspicious orders as required by regulations," and that Purdue "continued to supply massive and disturbing quantities of Oxycontin pills to the drug ring" despite tracking "extensive data evidencing the illegal trafficking of Oxycontin." *Id.* at *2.  But Plaintiffs here have not alleged that any Defendant actively supported any specific individuals or organizations who Defendant knew were engaging in illegal activity.

In *S.P. v. County of San Bernardino*, 2020 WL 3051360 (C.D. Cal. Mar. 24, 2020), the defendants were county employees responsible for supervising the welfare of a group of foster children who failed to intervene in or report the abuse of those children despite their actual knowledge that this abuse was taking place in the home *where the defendants had placed them.  See id.* at *3–4, *7–8.  Plaintiffs have not alleged that Defendants in this case had a similar responsibility for users' physical welfare, *see supra* Part II.B.3 (lack of special relationship with or physical control of minors); that Defendants physically placed Plaintiffs in the care of dangerous individuals; or that they ignored actual notice of specific ongoing harms to the individual Plaintiffs.

Plaintiffs' citations to *Maynard* and *Lemmon* are even further afield.  These cases did not involve third-party bad actors misusing a service with the deliberate aim of hurting someone else; they concerned allegations that a now-defunct filter on Snapchat that recorded a user's speed encouraged drivers to drive recklessly, and the courts found that there was no plausible purpose for the filter *beyond* that alleged encouragement.  *See Maynard*, 883 S.E.2d at 535–36; *Lemmon II*, 2022 WL 1407936, at *10.  By contrast, Plaintiffs do not (and could not) plausibly allege that Defendants purposefully encouraged or incentivized criminal sexual predatory behavior or other bad acts by third parties, and the features challenged here indisputably have widespread legitimate uses.  *See Lemmon II*, 2022 WL 1407936, at *10 (distinguishing *Modisette* by noting that "[t]he FaceTime app at issue in [that case]

served many useful purposes").  The Court should apply established law and dismiss all of Plaintiffs'

priority claims that are premised on third-party bad acts.

### 2.   Plaintiffs Fail to Tie Defendants' Services to Plaintiffs' Alleged Injuries.

Plaintiffs' disregard of established limits on proximate causation underscores a more pervasive

problem that afflicts all of their alleged harms:  Plaintiffs have not  plausibly alleged that specific

conduct by Defendants actually caused *each* Plaintiff's injuries.  Indeed, Plaintiffs have not even

alleged which of the Defendants' various services, let alone which features of those services, caused

each of the harms alleged by each individual Plaintiff.  In their Opposition, Plaintiffs argue that they

need only (1) allege generally how various features of one or more of Defendants' services could

theoretically harm users; and (2) assert vaguely that "the defective features in each of Defendants' apps

work in concert to cause injury."  Opp. 49–50.  This is plainly insufficient.  Imagine a group of

teenagers who, having attended different high schools, decided to sue all of the schools they attended

in a single suit for a range of alleged legal shortcomings.  It would not be enough for these teenagers

to simply allege that (1) a variety of issues—from abusive teachers, to inadequate special education

services, to unsafe bus drivers, to insufficient protection from bullies, to nutritionally deficient food—

have been known to occur in schools; and (2) they all suffered harm linked to one of more of these

issues.  To survive a pleadings challenge, these teenagers would have to specify not only which high

school, but which aspect of their experience at a particular school, actually caused their injuries.  *Cf.*

*In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011) (dismissing

complaint under Rule 8 because "[t]he Mobile Industry Defendants persuasively argue that, by lumping

all eight of them together, Plaintiffs have not stated sufficient facts to state a claim for relief that is

plausible against one Defendant"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 857 (N.D. Cal.

2012) (dismissing claims where "plaintiffs did not allege a sufficient nexus" between the specific

alleged defect and the resulting harm because "they failed to explain how" this defect caused the harm);

*Ferrari v. Nat. Partner, Inc.*, 2017 WL 76905, at *6 (N.D. Cal. Jan. 9, 2017) (dismissing design defect

claim under Rule 8 because it did not "provide supporting facts that 'explain how the particular design'

of the product caused Plaintiff's alleged harm" (citation omitted)).  The same is required here.

Plaintiffs' reliance on general studies, which Plaintiffs claim show that certain online services have harmed some people in the past, underscores the insufficiency of their factual allegations. Plaintiffs do not allege that these studies involved any of the Plaintiffs, nor that they show that any Plaintiff was actually harmed by any feature of Defendants' services (in the manner discussed in the study or otherwise). Rather, Plaintiffs' argument boils down to the contention that *someone* (for example, the subjects of those studies) might theoretically have a claim against Defendants. This theoretical assertion does not satisfy Plaintiffs' obligation to plead facts establishing *their own* entitlement to relief. *See* Mot. 41–42; *see also Crosby*, 921 F.3d at 625–26 (plaintiffs failed to state a claim because while they "identif[ied] hypothetical facts that may help them connect ISIS to a 'lone wolf' terrorist attack," they "allege[d] [no] facts connecting Defendants to [the perpetrator] or the . . . shooting"); *Fields*, 881 F.3d at 750 (similar).

Plaintiffs cannot avoid the requirement of pleading causation by asserting in a conclusory manner that "the defective features in each of Defendants' apps work in concert to cause injury." Opp. 50. Plaintiffs' own cases illustrate why this theory does not work in this case. *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108 (C.D. Cal. 2021), for instance, involved "miscommunications among" multiple systems *within the same car* that allegedly caused a *single* "defect" leading to "unintended and uncontrollable deceleration, engine stalls," and other problems that collectively caused unsafe driving conditions. *Id.* at 1116. By contrast, Plaintiffs in this case do not allege that the various Defendants manufactured components that were then combined together into a single product, nor do they allege that their harms were caused by a single defect. Instead, the Master Complaint alleges that various alleged defects in Defendants' various services—each of which operates differently and has its own system architecture and primary use cases—caused a wide range of disparate harms through various possible mechanisms. *See* Mot. 41; *see also* MC ¶ 103 ("push notifications and emails at night" cause insufficient sleep); *id.* ¶ 279 (viewing "content related to suicide, self-injury, and depression" causes harm); *id.* ¶ 319 ("negative social and appearance comparison" with other users causes harm). Plaintiffs' reliance on *Martifer-Silverado Fund I, LLC v. Zhongli Science & Technology Group Co.*, 2020 WL 5500381 (N.D. Cal. Sept. 11, 2020), is also misplaced. There, the court relied on the complaint "contain[ing] numerous allegations regarding the role each defendant played in the scheme

28

to induce plaintiff to enter into [fraudulent] agreements," including identifying specific representations made by each defendant constituting the alleged fraud.  *Id.* at *5.  No such allegations are made here.

Contrary to Plaintiffs' suggestion, the fact that the Court allowed Plaintiffs to choose how to plead their case does not mean that Plaintiffs are excused from Rule 8's requirements.  Opp. 51–52.  Because Plaintiffs are the masters of their own complaint, they are responsible for its shortcomings.  And here, unlike in the cases Plaintiffs cite, the Short-Form Complaints do not cure the Master Complaint's fatal flaw in failing to plead causation because they do not allege how any Plaintiff was actually harmed by Defendants' services, or even which of the various Defendants' services are alleged to have caused which harms.[14]  For instance, in *Adams v. BRG Sports, Inc.*, 2018 WL 4853130 (N.D. Ill. Oct. 5, 2018), which *Plaintiffs* rely upon (Opp. 51–52), the court found the short-form complaints at issue to be insufficient under Rule 8 for many of the same reasons that the Court should dismiss Plaintiffs' claims here.  *Adams* involved claims against manufacturers of football helmets by a group of football players who allegedly suffered injuries.  All the short-form complaints stated was "when and where the plaintiff played football"; "the nature of the injuries [and symptoms] the plaintiff suffered playing football"; that "the plaintiff wore a helmet designed or manufactured by defendants; and a listing of the causes of action set forth in the master complaint that the plaintiff is adopting."  *Id.* at *1.  The court held that this did not suffice to plead proximate cause because "the short-form complaints sa[id] nothing about whether or how defendants' [conduct] . . . caused plaintiffs' injuries."

---

[14] Plaintiffs' references to short-form complaints in other cases are inapposite because in each of those cases, the plaintiffs' claims all centered on a *single* type of physical product and defect.  *See* Third Am. Master Long-Form Compl. and Jury Demand at 10–17, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 1:14-cv-01748 (N.D. Ill. Nov. 24, 2015), Dkt. No. 1074 (claims about one type of drug); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 700 (D.N.J. 2021) (claims against one manufacturer of implants for a single alleged defect); Plaintiffs' Consolidated Master Compl. (Personal Injury) at 3–8, *In re JUUL Labs, Inc., Mktg., Sales Pracs., and Prod. Liab. Litig.*, No. 19-md-02913 (N.D. Cal. Mar. 11, 2020), ECF No. 388 (claims about one substance—nicotine—in one company's e-cigarette products); Master Long Form Compl. and Jury Trial Demand at 1–2, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-02885 (N.D. Fl. Sept. 20, 2019), ECF No. 704 (claims about one product—poor-fitting earplugs intended for use with firearms); Plaintiffs' Master Complaint and Jury Demand at 3–4, *In re Tylenol (Acetaminophen) Mktg, Sales Pracs., and Prods. Liab. Litig.*, 2:13-md-02436 (E.D. Pa. June 18, 2013), ECF No. 32 (claims about a specific set of acetaminophen products).

*Id.* at *1–3.  The same is true here.  Plaintiffs' priority claims should be dismissed for failure to plead proximate cause.

>    **D.      The Negligence Per Se Claim Is Barred by Established Law in Most States and There Is No Support for Creating Such a Claim in the Others.**

Plaintiffs ask this Court to allow a negligence per se claim based on alleged violations of the data-collection provisions of COPPA and the reporting provisions of the PROTECT Act regarding CSAM, despite no other court having allowed such a claim.  *See* Mot. 51–53.  Acknowledging the "dearth of caselaw" supporting their approach, and conceding that no negligence per se claim of any type is available in at least 15 states, Opp. 59, Plaintiffs urge the Court to "predict[]" that the highest court of nearly every other state would create new law to allow such a claim, *id.* 58, but they offer no persuasive reason why the Court should do that.  Beyond that, Plaintiffs cannot overcome the failure to plausibly allege that Defendants violated either of the two predicate federal statutes or that the alleged statutory violations caused any individual plaintiff to suffer a concrete personal injury.

>    **1.      Plaintiffs' Claim Is Barred in More Than 40 States, and Plaintiffs Provide No Basis for This MDL Court to Create New Law in Other States.**

From the outset, Plaintiffs defend their negligence per se claim under the laws of 35 states, conceding that it is not cognizable in the remaining 15 states.  Opp. 59.  But in addition to the states conceded by Plaintiffs as unavailable, the claim is barred by various legal doctrines in a host of additional states, and Plaintiffs' request to create a new claim is contrary to the role of a federal court in applying state law.  *See supra* Part II.A.4.  When all of the state laws limiting negligence per se claims are taken into account, Plaintiffs' claim is barred in more than 40 states.[15]

***No standalone claim.***  Plaintiffs concede that they have no negligence per se claim in 15 states (either because those states do not recognize negligence per se as a standalone claim at all or place other limitations on the doctrine that bar Plaintiffs' claim):  **Arkansas**, **Hawaii**, **Kentucky**, **Louisiana**, **Maryland**, **Massachusetts**, **Montana**, **Nebraska**, **New Hampshire**, **New Jersey**, **North Dakota**, **Ohio**, **Pennsylvania**, **South Carolina**, and **Washington**.  *See* Opp. 59 & n.42.  Plaintiffs assert that 8

---

[15] State names are **bolded** on first reference throughout this section.

other states—**California**, **Illinois**, **Maine**, **Michigan**, **Rhode Island**, **Utah**, **Vermont**, and **West Virginia**—"treat statutory violations as prima facie evidence of negligence or apply a presumption of negligence."  Opp. 59 & n.41.  But that is not a negligence per se claim.  Whether a statutory violation could be used as evidence to support a basic negligence claim—a claim Plaintiffs pleaded, but did not select as a "priority" claim—is irrelevant to whether Plaintiffs can plead a stand-alone negligence per se claim in those states.  Moreover, most of these states limit the type of statutory violations that can give rise to such a presumption, which (as discussed below) would rule out even an evidentiary presumption here.

   *No claim absent legislative intent in the predicate statute to impose private civil liability.*  In 23 states, a negligence per se claim (or the use of a statutory violation as evidence of negligence) cannot be premised on violations of federal statutes unless the statutes have a private right of action or there is evidence of legislative intent to impose private civil liability.

   COPPA and the PROTECT Act do not have a private right of action and there is no legislative intent to impose private civil liability, and Plaintiffs do not dispute that.[16]  *See Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 926 (N.D. Cal. 2021) (neither Section 2258A or 2258B "reflects a clear intent on the part of Congress to establish a private right of action to enforce the reporting requirement found in Section 2258A"), *aff'd in relevant part sub nom.*, *Doe #1 v. Twitter, Inc.*, 2023 WL 3220912 (9th Cir. May 3, 2023).  Plaintiffs either expressly concede or fail to contest that this rule thus bars their claim in: Arkansas, **Colorado**, **Florida**, Maine, Montana, Nebraska, **Nevada**, New Jersey, **New York**, North Dakota, Ohio, South Carolina, and **Wisconsin**.  Opp. 59 nn.40 & 42; *see id.* 78, 80, 87, 90–94, 96, 99–100.  While Plaintiffs quibble about the law in additional states, this same private right of action requirement also applies to bar their claim in **Georgia**, **Indiana**, **Iowa**, **Kansas**, **Missouri**, **North**

---

[16] Plaintiffs contend that "the PROTECT Act *does* allow civil claims 'for failing to report . . . known child pornography,'" Opp. 57, but leave out the key fact that only the *government*—not private plaintiffs—can bring such claims, and only under very limited circumstances, *see* 18 U.S.C. § 2258B; Mot. 49.

**Carolina**, **South Dakota**, **Tennessee**, Utah, and West Virginia.  *See* Reply Appendix; *see also, e.g.*, *Highmark Fed. Credit Union v. Hunter*, 814 N.W.2d 413, 418 (S.D. 2012).[17]

*No claim absent an underlying common law duty.*  Fourteen (14) states do not allow negligence per se claims (or the use of a statutory violation as evidence of negligence) unless there is an underlying duty at common law.  Plaintiffs either expressly concede or fail to contest that this rule applies in: **Arizona**, California, Colorado, Massachusetts, New Hampshire, Pennsylvania, South Carolina, **Texas**, Utah, Vermont, and **Virginia**.  Opp. 59 n.42, 78–80, 88, 91, 95–98.  They also fail to rebut Defendants' case law showing that the common law duty requirement also applies in Illinois, **Minnesota**, and **Oregon**, *see* Reply Appendix.[18]

Thus, Plaintiffs' claim is barred in these 14 states because COPPA and the PROTECT Act impose statutory duties lacking a common law antecedent.  Mot. 50.  Plaintiffs cite *Jones v. Google LLC*, 56 F.4th 735 (9th Cir. 2022) (at Opp. 56–57), but that case simply held that state law claims alleging conduct that would violate COPPA were not *preempted*; it did not hold that such claims were actually viable under state tort law (an issue the Ninth Circuit remanded to the district court, 56 F.4th at 742), much less that COPPA itself reflects pre-existing common law duties.  And Plaintiffs do not point to any state that has found a common law duty for online service providers to not collect certain data or to report CSAM to a federally-established nonprofit organization (or anything similar).

*No claim based on a statute that requires assessment of complex factors.*  Three (3) states— **New Mexico**, Ohio, and **Wyoming**—require a negligence per se claim to be premised on statutes that impose a specific, bright-line standard of care, which requires dismissal of the claim here.  Plaintiffs do not meaningfully dispute that assessing whether Defendants violated the PROTECT Act and COPPA would require a factfinder to make numerous complex determinations.  For example, a factfinder would have to determine Defendants' mental state and whether any "apparent" violations of

---

[17] In **Connecticut**, **Idaho**, and **Mississippi**, some courts have required that there be legislative intent for private civil liability, but other courts have not.  *See* Mot. 68, 70, 74; Opp. 80–81, 83–84, 89.

[18] Plaintiffs rely on *McClellan v. I-Flow Corp.*, 776 F.3d 1035 (9th Cir. 2015) (at Opp. 56), but the Ninth Circuit held only that federal law did not preempt a negligence per se claim under Oregon law.  *Id.* at 1037.  It did not address substantive state law or whether a freestanding negligence per se claim would be available under state law.  *See* Mot. 78.

certain other laws were present for a PROTECT Act violation.  *See* 18 U.S.C. § 2258A(a)(1)–(2) (requiring "actual knowledge" of "apparent violation[s]"); *id.* § 2258A(e)(1) ("knowing and willful" failure to report).  And for COPPA, a factfinder would have to determine whether Defendants' services were "directed to children" under a complex federal regulatory standard.  *See* 16 C.F.R. § 312.2. Moreover, regardless of whether these statutes "impose[] a clear standard of conduct" on Defendants, Opp. 67; *see also id.* 92, 94, 100, a factfinder would still have to "evaluate the factual circumstances . . . to determine whether [Defendants] acted reasonably," *Heath v. La Mariana Apartments*, 180 P.3d 664, 666 (N.M. 2008); *accord Machlup v. Bowman*, 2021 WL 5882102, at *4 (Ohio Ct. App. 2021); *Otten v. BNSF Ry. Co.*, 2023 WL 1948626, at *11 (10th Cir. Feb. 13, 2023) (quoting *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1198 (Wyo. 1987)).[19]

\*   \*   \*

These four aspects of established state law collectively bar Plaintiffs' negligence per se claim in more than 40 states.  For the remaining states, Plaintiffs incorrectly assert that this MDL Court should create new state tort law, but Plaintiffs make no effort to show that the highest court of any state would embrace the common law policymaking their theories would require.  The decision to create new negligence per se claims rests, ultimately, on a state court's decision to exercise its "common-law authority to develop tort doctrine."  Restatement (Third) § 14 cmt. c.  Especially for a federal court, exercising such discretion requires affirmative, state-specific justification that is wholly absent here. *See Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011).

Plaintiffs' citation to *In re Lithium Ion Batteries Antitrust Litigation*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014), underscores the problem with their open-ended invitation for tort-law creation.  The Court there recognized that its obligation "is to make a conscientious prediction of what rule a state high court would adopt in the case before it, without regard to the Court's own view of what the best rule may be."  *Id.* at *8.  Here, all "the available reliable evidence" weighs against Plaintiffs' position. *Id.*  Defendants' Joint Motion discusses the Restatements, treatises, and decisions across the country that are cautious of expanding negligence per se, Mot. 47–53, and Plaintiffs cite no authority suggesting

---

[19] Plaintiffs concede that this standard applies in New Mexico and Wyoming, Opp. 92, 100, and cite no authority that would preclude applying the rule in Ohio.

1    that any court would adopt COPPA or the PROTECT Act as setting a standard of care enforceable in

2    a negligence per se claim, Opp. 56–58.  Plaintiffs cite no case allowing negligence per se claims based

3    on either statute, and Defendants are aware of none.

4        COPPA and the PROTECT Act refute any idea that Congress intended to create a duty

5    enforceable in private state tort suits.  Neither statute includes a private right of action, and both are

6    enforceable solely by the government.  Mot. 49.  Regardless of whether it affirmatively preempts

7    Plaintiffs' claim, COPPA's express preemption provision underscores Congress's intent *not* to have

8    the statute serve as a predicate for expanded state-law tort liability.  15 U.S.C. § 6502(d).[20]

9        Plaintiffs contend that "the court should not dismiss the negligence per se count from the Master

10   Complaint" because *some* individual Plaintiffs' claims may be able to survive under *some* states' laws.

11   Opp. 59 n.42.  That is misguided.  Plaintiffs' claim fails in every state, but (as discussed below) even

12   if there were a handful of states in which Plaintiffs' claim was possible in theory, Plaintiffs still have

13   not plausibly alleged a violation of either federal statute at issue.  Moreover, state-by-state briefing is

14   intended to guide the MDL Court at the outset on whether Plaintiffs' claim can proceed in particular

15   states.  If the Court does not dismiss the negligence per se count outright, Defendants respectfully

16   request that it dismiss the claim under the law of all of the states where the claim is not available.

17       **2.      Plaintiffs Have Not Alleged a Violation of the Predicate Federal Statutes.**

18       Plaintiffs' negligence per se claim fails for the independent reason that they have not plausibly

19   alleged that Defendants violated the predicate federal statutes.

20       *The PROTECT Act.*  Plaintiffs concede that the PROTECT Act does not require Defendants to

21   monitor or affirmatively search their services for CSAM or to build particular features that enable them

22   to uncover and remove CSAM.  Opp. 68, 70; 18 U.S.C. § 2258A(f).  Plaintiffs recognize that the statute

23   ――――――――――――

24   [20] As Defendants have explained, *Jones* did not involve negligence per se claims and did not address

25   the issue here, which is whether it is proper *as a matter of state law* to create civil state law liability
     predicated on the violation of a federal reporting or data-collection statute, thereby effectively making
     federal statutes privately enforceable when Congress intentionally elected not to impose private
     liability.  Mot. 52 n.30.  *Jones* simply read COPPA as not preempting state law claims that would

26   independently enforce existing state law duties consistent with COPPA.  But the fact that COPPA does
     not contemplate private civil enforcement of its own requirements weighs against using the statute as
     the basis for a new duty of care based on those requirements enforceable through state tort law.  Nothing

27   in *Jones* suggests otherwise.

28

34

mandates only that Defendants "report" to NCMEC apparent violations involving CSAM about which they have "actual knowledge." Opp. 67; 18 U.S.C. § 2258A(a)(1)(A). But even as they acknowledge that, Plaintiffs premise their claim on alleged activity that does not violate that reporting requirement.

*First*, several of Plaintiffs' allegations are based on Defendants' purported *failure to remove* CSAM. Opp. 68 (Plaintiffs' "requests to remove and take down [CSAM] from Defendants' products[] often fall on deaf ears" (citation omitted)); *see also* MC ¶¶ 395, 419, 670, 805. But an alleged failure to remove CSAM is not a violation of the PROTECT Act and could not be the basis for Plaintiffs' negligence per se claim—especially given the lack of any allegation that any such CSAM relates to any of the Plaintiffs in this case. If negligent failure to remove CSAM were the predicate of Plaintiffs' claim, it would be barred by Section 230. *See* Defs.' Supp. Joint Mot. to Dismiss (Dkt. 320) 12.

*Second*, Plaintiffs offer nothing beyond conclusory allegations to suggest that any alleged failure to report known CSAM was "intentional, malicious, or reckless," as required for their claims to avoid the safe harbor in the PROTECT Act, which bars civil claims against a provider "arising from the performance of the reporting or preservation responsibilities" under the Act. Mot. 56, Opp. 70; 18 U.S.C. § 2258B. Plaintiffs cite portions of the Master Complaint alleging in a conclusory manner that Defendants "have not 'report[ed] to NCMEC the violations of [CSAM] laws that they suspected to be in existence within [their] respective products.'" Opp. 68 (quoting MC ¶ 1004); *see also* Opp. 68–70 (citing MC ¶¶ 420, 669–670, 800, 1004–1006). But these conclusory allegations, which parrot the language of the statute and are unsupported by factual allegations, do not suffice under federal pleading standards. Mot. 55.[21] Indeed, Plaintiffs' Defendant-specific assertions highlight that they have *not* alleged a violation of the reporting requirement of the PROTECT Act:

<u>Meta</u>: Plaintiffs allege Meta's content moderation processes are inadequate to meet the PROTECT Act's requirements. MC ¶¶ 409, 413–14, 427; *see also* Opp. 68–69. In Plaintiffs' view, the alleged deficiencies in Meta's process mean it has "failed to take down dozens of images and videos

---

[21] Plaintiffs also fail to respond to the fact that they did not allege facts supporting a violation of 18 U.S.C. § 2258B(c), which requires service providers to "minimize the number of employees that are provided access to" CSAM. Mot. 55. Plaintiffs' failure to respond "concedes it through silence." *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010). Any claim based on this separate provision must be dismissed.

that were 'flagged' to its moderators" in the past.  *Id.* ¶ 395.  Meta disputes these allegations.  But even if they were accurate, the PROTECT Act's reporting requirements apply only when a service has *actual knowledge* of CSAM, *see* 18 U.S.C. § 2258A, and the PROTECT Act does not require services to maintain a particular system to obtain knowledge.  *See United States v. Bohannon*, 506 F. Supp. 3d 907, 914 n.3 (N.D. Cal. 2020).  Moreover, an alleged violation must be a knowing and willful failure to *report* CSAM, not a failure to *remove* potential CSAM.

Snap:  Plaintiffs claim that Snap "maintains features" that facilitate CSAM and make it difficult for users to report CSAM.  *Id.* 69.  Snap disputes these allegations.  But, in any event, as Plaintiffs acknowledge, *id.* 70, the PROTECT Act does not require Defendants to design their services to make it easier to detect CSAM or simplify user reporting.  *See Bohannon*, 506 F. Supp. 3d at 914 n.3.

TikTok:  Plaintiffs contend that TikTok maintains features that facilitate CSAM, "does not permit users to specifically report CSAM," and "does not respond even when abuse is reported."  Opp. 69.  The PROTECT Act does not speak to user-reporting features, and Plaintiffs allege no instance in which TikTok had "actual knowledge" of an "apparent violation" and failed to report CSAM to NCMEC.

YouTube:  Plaintiffs concede that they have no negligence per se claim against YouTube based on the PROTECT Act: "no MDL Plaintiff has alleged injury as a result of any CSAM on YouTube."  Opp. 67 n.48.[22]

***COPPA.***  Plaintiffs' Opposition abandons the theory suggested in the Master Complaint: that Defendants have a duty under COPPA to implement different age verification measures.  MC ¶ 1002; *see* Opp. 64–67.  And Plaintiffs' remaining COPPA arguments fare no better.

Beyond bare conclusions that do not meet pleading standards, MC ¶ 1010; *see* Mot. 57, Plaintiffs have not alleged that Defendants actually knew that any Plaintiff was younger than 13 years old such that Defendants would be required to obtain verifiable parental consent under COPPA.  Plaintiffs contend that Defendants were willfully blind to the age of their users, Opp. 63, but they fail

---

[22] Regardless of this dispositive concession, Plaintiffs contend that YouTube displays ads alongside CSAM and makes it difficult for users to flag CSAM.  Opp. 70.  YouTube disputes these allegations, but they too have nothing to do with the reporting requirement of the PROTECT Act and do not give rise to any possible negligence per se claim.

to allege either requirement of willful blindness: that Defendants (1) "subjectively believe[d] that there is a high probability" that any specific individual Plaintiff was younger than 13 years old, and (2) "t[ook] deliberate actions to avoid learning of that fact," *i.e.*, "shield[ed] themselves from clear evidence" that was readily available. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766–69 (2011). Plaintiffs argue instead that Defendants may have general knowledge of children on their services and may be able to "estimate real user ages." Opp. 63. But suspicion about general user demographics is not a belief about a specific user's age, and even assuming Defendants had the ability to estimate user ages under 13, such an ability is not tantamount to deliberately avoiding a suspected fact.[23]

Moreover, the COPPA Rule "does not require operators of general audience sites to investigate the ages of visitors to their sites or services," and a "service that chooses to screen its users for age in a neutral fashion may rely on the age information its users enter, even if that age information is not accurate." *Complying with COPPA: Frequently Asked Questions*, FTC (July 2020), https://www.ftc.gov/businessguidance/resources/complying-coppa-frequently-asked-questions (cited in MC ¶ 56 n.20) ("*Complying with COPPA*"). Plaintiffs' willful blindness argument flies in the face of that FTC interpretation. It also ignores the FTC's recognition that even if a user reveals in a social-media post that they are under 13, the operator of that service does not have actual knowledge of the user's age for the purposes of COPPA unless it has actual knowledge *of that post*, and thus "knows that a *particular visitor* is a child." *Id.* (emphasis added). Hence, even if Defendants as a general matter may be able to *estimate* user ages, that does not meet the actual knowledge requirement of COPPA for particular users. *Id.* While the FTC's examples suggest that actual knowledge about a specific child's age may come through "direct communications" (*e.g.*, by "learn[ing] of a child's age or grade from a concerned parent"), *id.*, Plaintiffs have not alleged anything like that here.[24]

---

[23] That advertisers may rely on estimates of viewer age to choose which ads to run, Opp. 63–64, says nothing about whether Defendants have actual knowledge of any specific user's age.

[24] Plaintiffs also assert that Defendants' entire services (not just their "Kids" versions) are "directed to children." Opp. 60–63. But this theory is not supported by the Master Complaint, which does not allege as much or offer facts that, taken as true, would bring Defendants' general services—in contrast to the distinct services they operate for children, *see* MC ¶¶ 207, 462, 574, 705—within the FTC's carefully limited definition of online services "directed to children." 16 C.F.R. § 312.2.

3.       **Plaintiffs Have Not Alleged a Tort Harm or Article III Injury.**

Plaintiffs fail to respond to Defendants' argument that the operative pleadings do not allege a concrete personal injury proximately caused by the alleged statutory violations—a failure with both tort and constitutional implications.  Mot. 59–61.  The Opposition confirms that Plaintiffs' negligence per se claim is based on precisely the kind of "abstract dispute[]" that neither states a claim nor satisfies Article III.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  For example, Plaintiffs repeat general claims about supposed violations of COPPA affecting "millions of elementary and middle schoolers."  Opp. 59, 65–66.  But they do not allege that Defendants collected any individual Plaintiff's personal information in violation of COPPA.

Plaintiffs similarly assert that Defendants failed to report "'massive amounts' of CSAM," *id*. 68, but this generalized statement only underscores that no Plaintiff in this case has claimed a personalized injury from any purported failure to report.  Where Plaintiffs do address specifics, they confirm the lack of any viable claim.  The Opposition notes that three individual Plaintiffs allege that they were "victimized by CSAM on one or more of Defendants' platforms."  *Id*. 67.  But the provision of the PROTECT Act on which Plaintiffs' claim is based is a reporting statute.  To meet the causation and standing requirements for any claim based on that reporting provision, a Plaintiff would need to allege facts plausibly suggesting that they suffered a concrete and personal injury fairly traceable to Defendants' alleged knowing failure to report to NCMEC some instance of CSAM featuring that Plaintiff.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Nothing like that is alleged here.

## III.    CONCLUSION

Defendants respectfully request that Plaintiffs' priority claims (Counts 1–4 and Count 10 of the Master Complaint) be dismissed with prejudice.

Dated: June 30, 2023                          Respectfully submitted,


                                              **COVINGTON & BURLING LLP**

                                              _/s/ Phyllis A. Jones_
                                              Beth S. Brinkmann (State Bar No. 129937)
                                                bbrinkmann@cov.com
                                              Mark W. Mosier, _pro hac vice_
                                                mmosier@cov.com
                                              Paul W. Schmidt, _pro hac vice_
                                                pschmidt@cov.com
                                              Phyllis A. Jones, _pro hac vice_
                                                pajones@cov.com
                                              COVINGTON & BURLING LLP
                                              One CityCenter
                                              850 Tenth Street, NW
                                              Washington, DC 20001
                                              Telephone: + 1 (202) 662-6000
                                              Facsimile: + 1 (202) 662-6291

                                              Emily Johnson Henn (State Bar No. 269482)
                                                ehenn@cov.com
                                              COVINGTON & BURLING LLP
                                              3000 El Camino Real
                                              5 Palo Alto Square, 10th Floor
                                              Palo Alto, CA 94306
                                              Telephone: + 1 (650) 632-4700
                                              Facsimile: +1 (650) 632-4800

                                              _Attorneys for Defendants Meta Platforms, Inc._
                                              _f/k/a Facebook, Inc.; Facebook Holdings, LLC;_
                                              _Facebook Operations, LLC; Facebook Payments,_
                                              _Inc.; Facebook Technologies, LLC; Instagram,_
                                              _LLC; Siculus, Inc.; and Mark Elliot Zuckerberg_

1

2

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
  gdrake@kslaw.com
Albert Q. Giang (State Bar No. 224332)
  agiang@kslaw.com
David Mattern, *pro hac vice*
  dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100


**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
  andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
  amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000


*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC*


**MUNGER, TOLLES & OLSON LLP**

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
Telephone: + 1 (415) 512-4000
Facsimile: + 1 (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)

40

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5

Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
 Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071
Telephone: + 1 (213) 683-9100
Facsimile: + 1 (213) 687-3702

6
7
8
9
10

Lauren A. Bell, *pro hac vice*
 Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001
Telephone: + 1 (202) 220-1100
Facsimile: + 1 (202) 220-2300

11
12

*Attorneys for Defendant Snap Inc.*

13
14

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

15

 */s/ Brian M. Willen*

16
17
18
19

Brian M. Willen, *pro hac vice*
Wilson Sonsini Goodrich & Rosati
 bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: + 1 (212) 999-5800
Facsimile: + 1 (212) 999-5899

20
21
22
23
24
25
26

Lauren Gallo White (State Bar No. 309075)
Wilson Sonsini Goodrich & Rosati
 lwhite@wsgr.com
Andrew Kramer (State Bar No. 321574)
 akramer@wsgr.com
Carmen Sobczak (State Bar No. 342569)
 csobczak@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: + 1 (415) 947-2000
Facsimile: + 1 (415) 947-2099

27
28

Christopher Chiou (State Bar No. 233587)
Wilson Sonsini Goodrich & Rosati
 cchiou@wsgr.com

41

Samantha Machock (State Bar No. 298852)
  smachock@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
  mdonohue@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071
Telephone: + 1 (323) 210-2900
Facsimile: + 1 (866) 974-7329

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

1

**ATTESTATION**

2          I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to

3    the filing of this document has been obtained from each signatory hereto.

4

5    DATED:        June 30, 2023              By:    _/s/ Phyllis A. Jones_
                                                     Phyllis A. Jones
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

## IV.   APPENDIX[25]

| | |
|---|---|
| AZ | **Not a Product:** *Menendez v. Paddock Pool Construction Co.*, 836 P.2d 968  (Ariz. Ct. App. 1991), is inapposite; the case concerns a plaintiff "thrown headlong" into a tangible in-ground swimming pool. *Id.* at 970, 972. |
| | **NPS:** *Quiroz v. Alcoa Inc.*, 416 P.3d 824 (Ariz. 2018), did not involve a NPS claim *or* find a statutory duty. *Id.* at 831. And *Martin v. Schroeder*, 105 P.3d 577 (Ariz. Ct. App. 2005), is distinguishable because "[c]ommon sense dictate[d]" the finding of a duty. *Id.* at 583. Not so here. |
| AR | **Not a Product:** Arkansas product liability law defines "Product" as "any tangible object or goods produced"; both the "object" and "goods" must be "tangible." Ark. Code Ann. § 16-116-202(4). |
| CA | **Not a Product:** Plaintiffs concede *Winter* is "control[ling]" and that California courts hold that "a 'product' must be tangible." |
| | **NPS:** Plaintiffs concede they must "otherwise state a viable claim for negligence," and their citation confirms this requires them to "show[] that there is an independent duty of care to support a negligence claim." *Kirsten v. Cal. Pizza Kitchen, Inc.*, 2022 WL 16894503, at *8 (C.D. Cal. July 29, 2022) (citation omitted). |
| CO | **NPS:** Plaintiffs' cases confirm NPS requires legislative intent to impose civil liability. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 574–75 (Colo. 2008) (statute contemplated civil liability); *Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 931 (Colo. 1997) (requiring "clear indication [of] legislat[ive] inten[t]"); *Bittle v. Brunetti*, 750 P.2d 49, 59 (Colo. 1988) (no NPS where statute "did not expressly provide for imposition of civil liability"). And two of their cases |

---

[25] Plaintiffs do not dispute the majority of the Appendix included in Defendants' Motion to Dismiss. For example, Plaintiffs' Appendix concedes that the vast majority of states have adopted or would follow the Restatement (Second) of Torts § 402A (1965) or the Restatement (Third) § 19 in assessing whether Defendants' services are "products."  And Plaintiffs concede (or fail to dispute) that various states apply limitations to the negligence per se doctrine that would bar their claim here.  *See supra* Part II.D.1.  This Appendix does not repeat that law, and it addresses only Plaintiffs' attempts to distinguish it.  It also does not repeat rebuttals to Plaintiffs' arguments contained elsewhere in this Reply.  In addition, Plaintiffs' reliance on UCC cases throughout the Appendix is misplaced. Opp. 26, 34.  The principles of contract law underlying UCC cases (which classify, *e.g.*, books as goods) do not translate to the tort-law doctrines underlying product liability law. *See, e.g.*, *Rodgers v. Laura & John Arnold Found.*, 2019 WL 2429574, at *1 (D.N.J. June 11, 2019) (rejecting plaintiff's attempt to rely on UCC cases in product liability case; holding algorithms were not a product), *aff'd*, 795 F. App'x 878 (3d Cir. 2020).

based NPS claims on federal motor carrier regulations that had a private right of action, *see* 49 U.S.C. § 14704(a)(2). *Connes v. Molalla Transp. Sys., Inc.*, 817 P.2d 567, 572 (Colo. App. 1991), *aff'd*, 831 P.2d 1316 (Colo. 1992); *Hageman v. TSI, Inc.*, 786 P.2d 452, 453 (Colo. App. 1989). Plaintiffs ignore the limitation that, absent such intent, NPS requires a common law duty.

| CT | **Not a Product:** In Connecticut "intangible thoughts, ideas and messages . . . are not products." *Wilson*, 198 F. Supp. 2d at 173. |
|---|---|
| DC | **Not a Product:** *In re Fort Totten Metrorail*, 895 F. Supp. 2d 48 (D.D.C. 2012), is inapposite because it concerns individuals "injured in a collision between two . . . [tangible] trains." *Id.* at 55. |
| FL | **NPS:** Florida "refuse[s] to recognize" NPS based on federal statutes lacking a private right of action. *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015). *Bartsch v. Costello*, 170 So. 3d 83 (Fla. Dist. Ct. App. 2015), rejected a state statute-based claim. *Id.* at 88. |
| GA | **NPS:** No NPS based on federal statutes absent legislative intent to impose private liability. *See Govea v. City of Norcross*, 608 S.E.2d 677, 683 (Ga. Ct. App. 2004); *Owens v. Perdue Foods LLC*, 2021 WL 2323718, at *1 (M.D. Ga. June 7, 2021). *Scoggins v. Floyd Healthcare Management Inc.*, 2016 WL 11544774 (N.D. Ga. June 10, 2016), held NPS fails "if the statute or regulation reportedly giving rise to the legal duty does not provide a civil remedy." *Id.* at *42. |
| HI | **Not a Product:** *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213 (D. Haw. 2010), did not address a product liability claim. *Id.* at 1219. |
| IL | **NPS:** Plaintiffs' cases confirm that a statutory violation "does not constitute negligence *per se*, *i.e.* strict liability, unless the legislature clearly intends to impose strict liability." *Magna Tr. Co. v. Ill. Cent. R.R.*, 728 N.E.2d 797, 805 (Ill. App. Ct. 2000) (citing *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 185 (Ill. 1999)). Plaintiffs do not contest that, absent such intent, a statutory violation may be evidence of negligence only if an underlying common law duty exists. |
| IN | **NPS:** NPS requires legislative intent to impose private liability, which is absent where, as here, the statute "contains an enforcement mechanism." *Brown v. City of Valparaiso*, 67 N.E.3d 652, 658 (Ind. Ct. App. 2016); *see also Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 187 (Ind. |

45

2011). The procedural state statute in *Kho v. Pennington*, 875 N.E.2d 208 (Ind. 2007), contained no such mechanism. *Id.* at 213–15. And Plaintiffs' other cases based NPS claims on federal statutes with private rights of action—the Lead-Based Paint Hazard Reduction Act, *see* 42 U.S.C. § 4852d; *Erwin v. Roe*, 928 N.E.2d 609, 619 (Ind. Ct. App. 2010), and the Pipeline Safety Act, *see* 49 U.S.C. § 60121; *Town of Montezuma v. Downs*, 685 N.E.2d 108, 116 (Ind. Ct. App. 1997).

| | |
|---|---|
| IA | **NPS:** Plaintiffs' cases significantly predate *Bagelmann v. First National Bank*, 823 N.W.2d 18 (Iowa 2012), which held that NPS cannot be based on a federal statute lacking a private right of action absent an underlying common law duty. *Id.* at 27. |
| KS | **Not a Product:** *Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC*, 2019 WL 2250068 (D. Kan. May 24, 2019), is inapposite as the case addresses the tort of conversion—not product liability law. *Id.* at *5. |
| | **NPS:** For a court to "recognize a duty of care based on [a] statute[] alone," there must be legislative intent that the statute be privately enforceable. *Kudlacik v. Johnny's Shawnee, Inc.*, 440 P.3d 576, 583 (Kan. 2019); *see also Kan. State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 603 (Kan. 1991). *Shirley v. Glass*, 308 P.3d 1 (Kan. 2013), is inapposite—not only did it involve a state statute, but the plaintiff was merely using a statute to "fill in some of the elements of a negligent entrustment claim." *Id.* at 6–7; *see also Kudlacik*, 440 P.3d at 583 (explaining difference). |
| KY | **Not a Product:** *Powell v. Tosh*, 929 F. Supp. 2d 691 (W.D. Ky. 2013), cited by Plaintiffs, highlights that the "Restatement defines a product as 'tangible personal property.'" *Id.* at 713. |
| LA | **Not a Product:** *Schafer v. State Farm Fire & Casualty Co.*, 507 F. Supp. 2d 587 (E.D. La. 2007), held a product liability claim was not adequately alleged and indicates that Louisiana would follow the Third Restatement. *Id.* at 601. |
| MA | **Not a Product:** Plaintiffs' discussion of "UCC warranty claims," Pls. App'x 88, is irrelevant as no such claim is at issue here. |
| MN | **Not a Product:** Minnesota defines a "product" as "*tangible* personal property"—in a provision that itself *defines* a "[p]roduct defect tort claim." Minn. Stat. § 604.101(1)(c), (e) (emphasis added). |

46

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS
ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

| | |
|---|---|
| | **NPS:** NPS "sets the standard of care 'where an underlying common law cause of action [already] exists.'" *BCBSM, Inc. v. GS Labs, LLC*, 2023 WL 2044329, at *7 (D. Minn. Jan. 30, 2023) (citations omitted). In *Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128 (D. Minn. 2011), the court dismissed a NPS claim because there was no underlying tort duty. *Id.* at 1152. |
| MO | **NPS:** NPS requires legislative intent to impose private civil liability. *See Bradley v. Ray*, 904 S.W.2d 302, 314 (Mo. Ct. App. 1995); *Hollis ex rel. Hollis v. Poplar Bluff Reg'l Med. Ctr., LLC*, 2023 WL 3958788, at *5 n.2 (Mo. Ct. App. June 13, 2023). |
| MT | **NPS:** *Massee v. Thompson*, 90 P.3d 394 (Mont. 2004), permitted *state* statutory violations to serve as evidence of negligence and thus does not help Plaintiffs. *Id.* at 401. |
| NV | **Not a Product:** *Schueler v. Ad Art, Inc.*, 136 Nev. 447 (Nev. Ct. App. 2020), is inapposite as it concerned a plaintiff harmed by a defect in the tangible "interior platform" of a large billboard sign. *Id.* at 449. |
| NJ | **Not a Product:** *Rodgers* held that "the Third Restatement . . . defines 'product' as 'tangible personal property,'" and "information, guidance, ideas, and recommendations" from an "algorithm" are not "'products' . . . as a *definitional* matter." 795 F. App'x at 879–80 (emphasis added). |
| NC | **NPS:** Plaintiffs contend *Osburn v. Danek Medical, Inc.*, 520 S.E.2d 88 (N.C. Ct. App. 1999), *aff'd*, 520 S.E.2d 54 (N.C. 2000), "controls" over Defendants' federal decisions, but *Osburn* dismissed the NPS claim for lack of causation and "look[ed] no further" at the claim. 520 S.E.2d at 94. |
| OH | **NPS:** *Sheldon v. Kettering Health Network*, 40 N.E.3d 661 (Ohio Ct. App. 2015), rejected the proposition that a statute lacking a private right of action may be "applicable" to negligence. *See id.* at 672, 676 ("choos[ing] not to follow" cases finding HIPAA was "applicable as 'evidence of a [] duty'"). And *Machlup v. Bowman*, 2021 WL 5882102 (Ohio Ct. App. 2021), makes clear that NPS cannot be based on statutes that "leav[e] to the jury the ascertainment and determination of reasonableness and correctness of acts and conduct under the proven conditions and circumstances." *Id.* at *4. |

| | |
|---|---|
| OR | **NPS:** *Deckard v. Bunch*, 370 P.3d 478 (Or. 2016), suggests NPS requires an underlying duty at common law. *Id.* at 483 n.6; *see Gutta v. Sedgwick Claims Mgmt. Servs., Inc.*, 2023 WL 2709646, at \*5 (D. Or. Mar. 29, 2023). *Moody v. Oregon Community Credit Union*, 505 P.3d 1047 (Or. Ct. App. 2022), did not address whether a statute could supply the duty in a negligence action, but rather the standard of care. *Id.* at 1054 (*Deckard* said only that, "if all the other elements of a negligence claim otherwise exist, a statute or rule may supply the standard of care for a negligence *per se* claim"). |
| SD | **NPS:** "If [a federal statute] does not create a private right of action, then . . . an individual cannot use the [statute] to establish a duty." *Highmark Fed. Credit Union v. Hunter*, 814 N.W.2d 413, 418 (S.D. 2012). Plaintiffs contend *Highmark* did not involve a NPS claim, but that is incorrect—the plaintiff asserted that breach of a federal statute amounted to "negligen[ce] as a matter of law," which is the same as NPS. *Id.* at 415. Plaintiffs' cases predate *Highmark*. |
| TN | **Not a Product:** A "product" is "any tangible object or goods produced"; both the "object" or "goods" must be "tangible." Tenn. Code Ann. § 29– 28–102(5). |
| | **NPS:** "[T]he application of federal law to [NPS] claims under Tennessee law has not been wholesale" and is "'analytically related' to whether an implied private right of action exists." *Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767, 778–79 (W.D. Tenn. 2018) (citations omitted), *aff'd*, 944 F.3d 593 (6th Cir. 2019). The *Faber* court explained why Plaintiffs' cases—*Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), *superseded by statute*, Tenn. Code Ann. 29–26– 101 et seq., and *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn. 1988)—did not convince it to allow NPS based on federal statutes lacking private rights of action. *Id.* The NPS claim in *Wren v. Sullivan Electric, Inc.*, 797 F.2d 323 (6th Cir. 1986), was based on a state "statute and regulations incorporating OSHA standards." *Id.* at 326. And *Cline v. United States*, 2015 WL 13664121 (M.D. Tenn. May 20, 2015), allowed NPS based on a federal child abuse reporting statute in part because "an analogous state law statute exists." *Id.* at \*10. |

| TX | **Not a Product:** Plaintiffs' cases are inapposite as they concerned a tangible "wireless device," *Estate of Alex ex rel. Coker v. T-Mobile US, Inc*., 313 F. Supp. 3d 723, 732 (N.D. Tex. 2018), and "negligence" law, *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 106 (Tex. App. 2000). |
|---|---|
| UT | **Not a Product:** "[A] product for purposes of a product liability claim" must be "a moveable good" or "an item of 'tangible personal property.'" *Legal Tender Servs. PLLC v. Bank of Am. Fork*, 506 P.3d 1211, 1220 (Utah Ct. App. 2022); *see also id.* (website "does not qualify"). Defendants' services are not tangible and, *a fortiori*, not moveable goods. *See supra* Part II.A. |
| | **NPS:** Plaintiffs ignore *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136 (D. Utah 2018), which held that Utah "would likely not adopt the GLBA as imposing a [tort] duty," as there is no "case in which a Utah court . . . [found] a state-law tort duty arising out of a federal statute which lacked a private right of action." *Id.* at 1158. Plaintiffs' cases involved city ordinances. And Plaintiffs do not address the common-law duty limitation on NPS cited in Defendants' Appendix. |
| VA | **Not a Product:** *Lowe v. Cerner Corp.*, 2022 WL 172690666 (4th Cir. Nov. 29, 2022), is inapposite; the defendant did not dispute it offered a "product" and the plaintiff was not harmed by information or ideas—but instead by the failure to receive a blood-oxygen "monitoring device" that led to "brain damage." *Id.* at *1–2. |
| WA | **Not a Product:** *Grigsby v. Valve Corp.*, 2013 WL 12310666 (W.D. Wash. Mar. 18, 2013), held only that a "software distribution platform" provided a "service[]" not a "product." *Id.* at *6. |
| WV | **NPS:** "[W]henever a violation of a statute is the centerpiece of a theory of liability"—as it is here— "the question arises whether the statute creates an implied private cause of action." *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 591 S.E.2d 235, 239 (W. Va. 2003) (citation omitted). And the NPS claims in Plaintiffs' cases involved state laws, not federal statutes lacking private rights of action. |

49