1  JONATHAN H. BLAVIN (State Bar No. 230269)
   Jonathan.Blavin@mto.com
2  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
3  San Francisco, CA 94105-2907
   Telephone:    (415) 512-4000
4  Facsimile:    (415) 512-4077

5  ROSE LEDA EHLER (State Bar No. 296523)
   Rose.Ehler@mto.com
6  VICTORIA A. DEGTYAREVA (State Bar No. 284199)
   Victoria.Degtyareva@mto.com
7  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
8  Los Angeles, California 90071-3426
   Telephone:    (213) 683-9100
9  Facsimile:    (213) 687-3702

10 LAUREN BELL (*pro hac vice*)
   Lauren.Bell@mto.com
11 MUNGER, TOLLES & OLSON LLP
   601 Massachusetts Avenue NW, Suite 500 E
12 Washington, DC 20001
   Telephone:    (202) 220-1100
13 Facsimile:    (202) 220-2300

14 *Attorneys for Defendant Snap Inc.*

15            **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
16                   **OAKLAND DIVISION**

17 IN RE: SOCIAL MEDIA ADOLESCENT          MDL No. 3047
18 ADDICTION/PERSONAL INJURY
   PRODUCTS LIABILITY LITIGATION,          Case No. 4:22-MD-03047-YGR-TSH
19
   THIS DOCUMENT RELATES TO:               Honorable Yvonne Gonzalez Rogers
20
   ALL ACTIONS                             **DEFENDANT SNAP INC.'S**
21                                         **SUPPLEMENTAL BRIEF IN SUPPORT**
                                           **OF DEFENDANTS' REPLY IN**
22                                         **SUPPORT OF DEFENDANTS' JOINT**
                                           **MOTION TO DISMISS PURSUANT TO**
23                                         **RULES 12(b)(1) AND 12(b)(6)**
                                           **PLAINTIFFS' PRIORITY CLAIMS**
24                                         **ASSERTED IN AMENDED MASTER**
                                           **COMPLAINT (DKT. 237)**
25
                                           **Hearing**:
26                                         Date:    TBD
                                           Time:    TBD
27                                         Place:   Oakland, California
                                           Judge:   Hon. Yvonne Gonzalez Rogers
28

1    Plaintiffs' Opposition (Opp., Dkt. 302) to Snap's supplemental brief is most notable for what

2    it does not address.  Instead of rebutting Snap's arguments, Plaintiffs' Opposition misconstrues them

3    and distorts Plaintiffs' own allegations (including seeking to minimize the significant amendments

4    Plaintiffs made following Snap's Rule 11 letter).  The Opposition confirms that Plaintiffs' claims in

5    the Amended Master Complaint (AMC, Dkt. 234-1) against Snap should be dismissed.

6    **I.    Plaintiffs' Allegations of Serious Harms Focus on Third-Party Misconduct**

7    In their Opposition, Plaintiffs double down on their allegations that they were harmed by

8    third parties who abused Snapchat's features, including through illegal actions.  Opp. at 72–73, 75.

9    As explained in Defendants' Joint Motion (Mot., Dkt. 237)—and as was recently confirmed by the

10   Supreme Court—criminal acts committed by third-party bad actors are not "caused" by Internet

11   platforms simply because those bad actors took advantage of platform functionality to commit their

12   crimes.  Mot. at 43–47; Defs' Reply, Dkt. 323, at 23–27; Snap's Supplemental Brief (Snap Br.), Dkt.

13   238, at 6–7; *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1229 (2023) ("[H]old[ing] any sort of

14   communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers

15   were using its services and failing to stop them . . . would run roughshod over the typical limits on

16   tort liability[.]").  Indeed, a federal district court in California recently rejected the argument that

17   alleged Snapchat "design defects" (including the very features challenged here) were the source of

18   harm suffered by Plaintiffs who experienced sexual exploitation by bad actors who abused the

19   platform.  *L.W. v. Snap Inc.*, 2023 WL 3830365, at *4–5 (S.D. Cal. June 5, 2023) (rejecting claim

20   that "Snapchat's ephemeral design features, specifically the disappearing messages and the Quick

21   Add function, combined with users' ability to create multiple accounts[,] . . . is inherently

22   dangerous," and explaining that "the harm animating [the p]laintiffs' claims 'is directly related to the

23   posting of third-party content on [Snapchat]'" and "doesn't flow from a design defect").[1]

24   Plaintiffs cannot evade this on-point case law with bad-faith characterizations of Snap's

25   functionality that contradict their own allegations in the AMC.  While the original Master Complaint

26   _____

27   [1] As set forth in Defendants' Supplemental Joint Motion to Dismiss Pursuant to Rule 12(b)(6)
Plaintiffs' Priority Claims Under Section 230 and the First Amendment, Plaintiffs' claims that rely
on communications and connections with third-party bad actors are barred by Section 230 of the

28   Communications Decency Act.  *See* Dkt. 320 at 8–10 (collecting cases).

incorrectly alleged that Snapchat had default public profiles for minors and therefore "put children at risk of being approached and befriended by sexual predators," Master Compl., Dkt. 138 ¶ 138, the operative complaint (which Plaintiffs amended following a Rule 11 letter from Snap) acknowledges that all Snapchat minor profiles are private by default, AMC ¶¶ 138–39; *cf. id.* ¶¶ 400–01, 581–82; Opp. at 75.  The AMC further concedes that Quick Add "only suggest[s] friends" to minor users "who share[] a certain number of common friends with the minor user," AMC ¶ 512, and that Snap Map merely "*allows users* to share their location *with their followers*" if they so choose and does not by default share their locations, *id.* ¶ 506 (emphases added); *see also id.* ¶ 508.  Plaintiffs cannot ignore their own allegations about how Snapchat actually operates and attempt to avoid dismissal by arguing that Snapchat's design encourages adult strangers to connect with minors they otherwise would not have met.  Opp. at 13–14, 71–72.  To the contrary, Plaintiffs' own allegations confirm that Snapchat is designed specifically to prevent this from happening.[2]

## II.  Plaintiffs' Allegations Against Snap Focus on Non-Cognizable Injuries

Aside from their allegations of harm from third-party bad actors, Plaintiffs do not dispute that the majority of the AMC's other allegations against Snap claim only that various Snapchat features—including the "Streaks" and "Charms" icons that appear next to certain chat threads—are appealing to minors or cause some combination of stress, anxiety, or other "'negative' feelings." *See, e.g.*, AMC ¶ 485.  Nor do Plaintiffs rebut Snap's legal argument, supported by a plethora of caselaw, that these alleged harms are not actionable under negligence or strict product liability.  *See* Snap Br. at 7–8 (collecting cases, including *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021) (surveying state tort law; "a general allegation of emotional harm like anxiety or distress falls 'short of cognizable injury as a matter of general tort law'") (quoting another source)).

Rather, Plaintiffs resort to inflammatory rhetoric and accuse Snap of equating "[e]ating disorders and suicidality" with "general negative feelings."  Opp. at 71.  Nowhere in its brief, however, did Snap argue that eating disorders or suicidality are not cognizable harms, or equate them

---

[2] Faced with allegations about Quick Add similar to those made by Plaintiffs, the *L.W.* court "expressed its concerns" regarding the "sources of information" and "questionable wording" of the plaintiffs' claims, including that Quick Add "can be used by perpetrators to 'find minor aged children' by geographic location or similar topics of interest."  *L.W.*, 2023 WL 3830365, at *10–11.

1    with general "negative feelings"—which is Plaintiffs' language, lifted directly from the AMC.

2    AMC ¶ 485.  Snap simply pointed out that the AMC does not allege that *any* specific Snapchat

3    feature caused any Plaintiff to commit suicide[3] and that its allegations regarding eating disorders are

4    not supported by its own cited materials.  Snap Br. at 2, 7–8.  Instead, the core Snapchat features

5    Plaintiffs challenge are alleged to have led only to "sadness" and "'negative' feelings"—terms that

6    Plaintiffs *themselves* use.  AMC ¶¶ 485, 507.  This makes sense, given that people mainly use

7    Snapchat to communicate with people they already know, and features like "Streaks" and "Charms"

8    are simply cartoon-like icons that appear next to users' profiles and chat threads.  Plaintiffs do not

9    dispute that claims based on alleged "sadness" are not actionable as a matter of law.  Snap Br. at 9.

10          Plaintiffs' Opposition, in fact, appears to acknowledge that the AMC's allegations do not tie

11   Snapchat's core direct messaging feature to actionable harms.  Rather than defend the AMC's

12   allegations, Plaintiffs focus instead on Snapchat's "Spotlight" tab, despite the fact that the AMC

13   barely references "Spotlight," and Plaintiffs are not alleged to have heavily used this feature (it was

14   not even introduced until after several of the wrongful death plaintiffs had passed away).  AMC

15   ¶¶ 132, 496–97.  Plaintiffs acknowledge that Snapchat does not open to any algorithmic content

16   feed, such as "Spotlight"; rather, it opens to a camera that enables people to "communicate through

17   short videos and images" in direct messages with individual friends or small groups of friends.  *Id.*

18   ¶ 438.  Although Plaintiffs attempt to minimize this deliberate design, requiring users to take the

19   affirmative step of clicking away from the home screen and into the "Spotlight" feed (thus giving

20   users the agency to decide whether to engage with this feature) is exactly the type of design element

21   Plaintiffs claim to be advocating for.  Plaintiffs also ignore that videos on Spotlight are moderated

22   by Snap, and the AMC does not identify any specific harmful videos on Spotlight.  *Id.* ¶¶ 130, 496.[4]

---

[3] At most, Plaintiffs assert highly generalized allegations that Defendants' services generally increase the risk of suicide, without identifying any Snapchat-specific feature.  *E.g.,* AMC ¶¶ 18, 90, 440.  Or they rely on the wrongful acts of third parties who abused Snapchat to send harmful messages.

[4] Plaintiffs also fail to allege Snapchat has any feature comparable to *public* "likes" or "like counts." Plaintiffs strain to analogize to other Snapchat features, Opp. at 74, but they are all fundamentally different.  AMC ¶¶ 475–76 (Trophies only "viewable by [] friends"); ¶ 492 (Story "view count[s]" not alleged to be public); ¶¶ 76, 472 (Snapscores do not appear in public "feed[s]'" as do "likes").

1       Plaintiffs' only attempt to tie any serious harms to Snapchat features *without relying on*

2  *third-party conduct* is emphasizing conclusory allegations that Snapchat filters and lenses

3  purportedly play a role in body dysmorphia and eating disorders.[5]  But as noted in Snap's

4  Supplemental Brief (at 8 n.7), and which Plaintiffs ignore, the AMC's own citations, even taken as

5  true, do not support that assertion.  Plaintiffs' allegation that filters trigger "body dysmorphic

6  disorder," AMC ¶ 515, relies on a study which does not support it.  That study reached no

7  conclusions about body dysmorphia (it only dealt with attitudes about cosmetic surgery); it

8  explained that "much debate exists over whether photo editing contributes to body dysmorphic

9  disorder," and found use of Snapchat "yielded no significant differences" with respect to "self-

10 esteem scores."  Jonlin Chen, et al., *Association Between Social Media and Photograph Editing*

11 *Use, Self-esteem, and Cosmetic Surgery Acceptance*, 21 JAMA FACIAL PLAST. SURG. (Sep. 1,

12 2019), https://www.liebertpub.com/doi/10.1001/jamafacial.2019.0328 (cited at AMC ¶ 515 n.649).

13 Plaintiffs cannot rely on a conclusory allegation that is not supported by the sole study they cite in

14 support of it.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (courts

15 are "not required to accept as true conclusory allegations which are contradicted by documents

16 referred to in the complaint") (quoting another source).

17 **III.    Conclusion**

18      The Court should dismiss Plaintiffs' priority claims against Snap.[6]

19

20

21 _____

22 [5] In the Opposition, Plaintiffs discuss the now-defunct "speed filter" that was the subject of
   *Lemmon v. Snap, Inc.*, 2022 WL 1407936 (C.D. Cal. Mar. 31, 2022), and was removed from

23 Snapchat in 2021.  Opp. at 21.  The AMC contains only a passing reference to this feature, AMC
   ¶¶ 517–18, and nowhere alleges that any Plaintiff actually used or was injured by it.

24 [6] To the extent the Court finds that Plaintiffs have sufficiently pled their claims as to any Snapchat

25 feature, it should still dismiss the claims as to all other features.  Because each individual Plaintiff
   used different features of different Defendants' services, it is crucial at this stage to determine

26 exactly which portions of Plaintiffs' claims, if any, are sufficiently pled.  *See, e.g.*, *Walsh v.
   Tehachapi Unified School Dist.*, 827 F. Supp. 2d 1107, 1128–29 (E.D. Cal. 2011) (granting motion

27 to dismiss in part, and dismissing certain claims "to the extent that liability is premised on" various
   legal theories and alleged conduct); *W. Marine Prod., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

28 *PA*, 572 F. Supp. 3d 841, 856–57 (N.D. Cal. 2021) (similar).

1    DATED:  June 30, 2023                    MUNGER, TOLLES & OLSON LLP
                                              JONATHAN H. BLAVIN
2                                             ROSE LEDA EHLER
                                              VICTORIA A. DEGTYAREVA
3                                             LAUREN BELL
4
5
                                      By:      _/s/ Jonathan H. Blavin_____
6                                             JONATHAN H. BLAVIN
                                          Attorneys for Defendant SNAP INC.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SNAP'S SUPPLEMENTAL BRIEF IN SUPPORT OF REPLY IN SUPPORT OF JOINT MOTION TO DISMISS