UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No.: 3047<br><br>Case No.: 4:22-md-03047-YGR |
| This Filing Relates to:<br><br>ALL ACTIONS | **JOINT STATEMENT RE: ESI PROTOCOL**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge:  Hon. Thomas S. Hixson |

Dear Judge Hixson:

    The parties submit this Joint Statement regarding outstanding disputes over their submission of an order governing the production of electronically stored information and hard copy documents ("ESI Order"). The parties have exchanged multiple draft ESI Orders, and counsel have met and conferred at length in an effort to narrow the parties' disputes. But the parties continue to disagree about the purpose and basic framework for an ESI Order in this case. The parties attach the following exhibits to this Joint Statement:

- Exhibit A – Clean version of Defendants' proposed ESI Order.
- Exhibit B – Clean version of Plaintiffs' proposed ESI Order.
- Exhibit C – A redline comparing the parties' proposals, using Defendants' proposal as the original document.
- Exhibit D – Plaintiffs' July 5, 2023 meet and confer correspondence.
- Exhibit E – Defendants' July 17, 2023 response to Plaintiffs' July 5, 2023 letter.

    Given the page limitations governing this letter brief, the parties focus on the major disagreements they have been unable to resolve, the full scope of which are evident from the parties' competing proposed ESI Orders. If helpful to the Court, the parties are prepared to fully brief any or all of these issues.

    Pursuant to Your Honor's Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred telephonically and exchanged drafts of each side's proposal before filing this Joint Statement. The parties further attest that they have complied with section 9 of the Northern District of California's Guidelines for Professional Conduct.

    The parties would welcome a telephonic conference to discuss these disputed issues if the Court would find it helpful.

Dated: August 10, 2023

Respectfully submitted,

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

    */s/ Lauren Gallo White*
Lauren Gallo White
Wilson Sonsini Goodrich & Rosati
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Brian M. Willen
Wilson Sonsini Goodrich & Rosati
bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Christopher Chiou
Wilson Sonsini Goodrich & Rosati
cchiou@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

    */s/ Christopher L. Ayers*
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: + 1 (973) 639-9100
Facsimile: + 1 (973) 679-8656
Email: cseeger@seegerweiss.com
Email: cayers@seegerweiss.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: + 1 (415) 956-1000
Email: lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: + 1 (202) 386-9610
Email: pwarren@motleyrice.com

*Co-Lead Counsel*

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: + 1 (415) 986-1400
Email: jennie@andrusanderson.com

*Liaison Counsel*

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 COMMERCE STREET
MONTGOMERY, AL 36103
Telephone: + 1 (334) 269-2343
Email: joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. GARDEN STREET, 9TH FLOOR
PENSACOLA, FL 32502
Telephone: + 1 (850) 316-9100
Email: ejeffcott@forthepeople.com

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: + 1 (504) 227–8100
Email: raustin@ronaustinlaw.com

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: + 1 (206) 741-4862
Email: matt@socialmediavictims.org
Email: glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: + 1 (212) 558-5500
Facsimile: + 1 (212) 344-5461
Email: jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: + 1 (210) 448-0500
Email: PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: + 1 (816) 701 1100
Email: tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: + 1 (917) 882-5522
Email: jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: + 1 (646) 666-8908
Email: carrie@cagoldberglaw.com
KIRK GOZA
**GOZA & HONNOLD, LLC**

9500 Nall Avenue, Suite 400
Overland Park, KS 66207
Telephone: + 1 (913) 451-3433
Email: kgoza@gohonlaw.com

SIN-TINY MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: + 1 (510) 698-9566
Email: mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: + 1 (510) 350-9717
Email: amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: + 1 (850) 435-7107
Email: epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: + 1 (818) 839-2333
Facsimile: + 1 (818) 986-9698
Email: rtellis@baronbudd.com
Email: dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: + 1 (202) 780-3014
Email: awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET

SUITE 500
PHILADELPHIA, PA 19106
Telephone: + 1 (215) 592-1500
Email: mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: + 1 (205) 855-5700
Email: fu@dicellolevitt.com

ROBERT H. KLONOFF
**ROBERT KLONOFF, LLC**
2425 SW 76TH AVENUE
PORTLAND, OR 97225
Telephone: + 1 (503) 702-0218
Email: klonoff@usa.net

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: + 1 (212) 213-8311
Email: hnappi@hrsclaw.com

ANTHONY K. BRUSTER
**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, TX 76092
Telephone: + 1 (817) 601-9564
Email: akbruster@brusterpllc.com

FRANCOIS M. BLAUDEAU, MD JD FACHE FCLM
**SOUTHERN INSTITUTE FOR MEDICAL AND LEGAL AFFAIRS**
2762 B M Montgomery Street, Suite 101
Homewood, Alabama 35209
Telephone: + 1 (205) 564-2741
Email: francois@southernmedlaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170

Telephone: + 1 (212) 372-3030
Email: jamesmarsh@marshlaw.com

*Attorneys for Plaintiffs*

**COVINGTON & BURLING LLP**
    */s/ Phyllis A. Jones*
Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email: ehenn@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**KING & SPALDING LLP**
    */s/ Geoffrey M. Drake*
Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email: gdrake@kslaw.com

**FAEGRE DRINKER LLP**
     */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**MUNGER, TOLLES & OLSON LLP**
     */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Lauren A. Bell, *pro hac vice*
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**ATTESTATION**

I, Lauren Gallo White, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory thereto.

| | |
|---|---|
| Dated:  August 10, 2023 | */s/ Lauren Gallo White*<br>Lauren Gallo White |

**DEFENDANTS' POSITION:**[1] Plaintiffs' proposed ESI order would impose duties on Defendants that exceed Federal Rules requirements, foreclose discussion and resolution of issues in the context of specific discovery requests, and seek discovery on discovery without good cause.[2]

**The Producing Party Is Best Situated to Formulate Its Search Processes.** Defendants' proposal identifies and addresses the need for the parties to cooperatively establish transparent search methodologies and confer about validation protocols as may be appropriate. Ex. A § 8. Plaintiffs' proposal, by contrast, goes far beyond what the Federal Rules permit, asking the Court to compel unwarranted discovery on discovery and authorize Plaintiffs to micromanage and monitor every stage of Defendants' discovery process:

- Before any Rule 34 requests are served, Plaintiffs would have Defendants respond to detailed questions about search technologies used, methods for excluding system files and exact duplicates, and even "systems used to track review status." *Compare* Ex. B §§ 8, 13, 14, *with Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored."); *Rg Abrams Ins. v. Law Offs. of C.R. Abrams*, 2021 WL 10312431, at *12 (C.D. Cal. Dec. 22, 2021) ("A party should not be required to provide discovery about its e-discovery process without good cause.").
- Plaintiffs would be able to demand an unlimited number of search terms, Ex. B § 8(b), which Defendants (and only Defendants),[3] would have to run as-is regardless of their potential overbreadth or produce unbounded iterations of detailed "hit reports" to demonstrate burden. *Compare id.* § 10 *with* N.D. Cal. ESI Guidelines § 1.03 (proportionality applies to search of ESI).
- Plaintiffs would curtail Defendants' discretion regarding the use of TAR instead of or in addition to search terms. *Compare* Ex. B § 8(a) ("TAR will not be applied before or after any application of search terms."), *with Huntsman v. Sw. Airlines Co.*, 2021 WL 3504154, at *3 (N.D. Cal. Aug. 10, 2021) ("[U]sing keyword searches and technology-assisted review in tandem does not offend the court's expectation … .").
- Plaintiffs would require the parties to confer on a protocol to validate the review process and resulting productions after the fact to ensure "responsive ESI was not … inadvertently omitted." Ex. B § 10. Hindsight validation raises the specter of costly and unnecessary discovery do-overs. *See Alivecor, Inc. v. Apple, Inc.*, 2023 WL 2224431, at *2 (N.D. Cal. Feb. 23, 2023) ("Perfection in ESI discovery is not required.").
- Plaintiffs would then reserve to themselves the right to demand *re*-validation of productions at any time, based on their subjective belief that there is a "need to reassess," with no consideration for "the time, cost, and/or other resources expended." Ex. B § 12.

The Federal Rules do not authorize Plaintiffs' proposed oversight of Defendants' discovery process. Precisely the opposite: "the responding party is the one best situated to decide how to search for and produce ESI responsive to discovery requests." *In re Viagra Prod. Liab. Litig.*,

---

[1] Defendants submit that attaching Plaintiffs' July 5 letter is inconsistent with the Court's Discovery Standing Order and an end-run around the page limits. The letter does not summarize conferrals; it simply argues other legal issues. Tellingly, Plaintiffs do not cite this letter even once. Defendants submit their response to complete the record.

[2] To comply with the Court's standing order, Defendants do not provide declarations regarding the burden attendant to Plaintiffs' proposed order. If the Court is inclined to adopt Plaintiffs' proposal, Defendants request the opportunity to fully brief the issues and submit accompanying declarations.

[3] Any obligations imposed on Defendants must apply equally to Plaintiffs, which include hundreds of school districts with complex information technology systems.

2016 WL 7336411, at *1 (N.D. Cal. Oct 14, 2016); *accord* Sedona Principles, 3d. ed., 19 Sedona Conf. J. 1, Principle 6, 118–30 (2018) ("Sedona"). Absent "indication that a party's discovery has been insufficient or deficient," *Jensen*, 328 F.R.D. at 566, "neither a requesting party nor the court should prescribe or detail the steps that a responding party must take," Sedona at 123; *accord id.* at 127 ("[P]arties should not be required to produce documentation of their discovery processes unless there has been a showing of a specific deficiency."); *see id.* at 131 (requesting party has burden of proving discovery processes "were inadequate").

**Plaintiffs' Production Requirements and Form Demands Exceed What Is Reasonable or Necessary.** Plaintiffs seek to subject Defendants to various unnecessary burdens:
- *First*, Plaintiffs reject **email threading**, *compare* Ex. B § 15 (requiring lesser-inclusive emails be produced or logged) *with* Ex. A § 11—a routinely endorsed practice that makes discovery more efficient by limiting review and production to the most-inclusive emails. *See, e.g.*, Wash. Model ESI Order § C(5) (making email threading default practice);[4] Apr. 20, 2023 Tr. 114:12–13, *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580, ECF No. 217 at 114 (N.D. Cal. Apr. 27, 2023) ("[E]-mail threading is very normal.").
- *Second*, Plaintiffs would require the parties to confer every time there is a need to **redact for reasons other than privilege**. Ex. B, App'x § 17. There is no reason the parties cannot categorically agree to redact sensitive and irrelevant information (*e.g.*, source code, PII, non-public user content) including where necessary to comply with legal duties. *See, e.g.*, *Gershzon v. Meta Platforms, Inc.*, 2023 WL 3483294, at *2 (N.D. Cal. May 16, 2023) (source code); *Scherer v. FCA, LLC*, 2021 WL 5494463, at *4 (S.D. Cal. Nov. 23, 2021) (PII). If a dispute arises, the parties may confer in the ordinary course.
- *Third*, rather than requesting a reasonable number of **historic versions** of particular documents where needed after reviewing productions, *see* Ex. A, App'x § 13, Plaintiffs would require Defendants to manually collect, review, and produce *all* historic versions of *every* document produced—an unprecedented and excessively labor-intensive proposal.
- *Fourth*, Plaintiffs' proposal deems all **hyperlinked material** part of the document family. Courts routinely reject the premise that hyperlinks are akin to attachments or create family relationships. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) ("hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship"; directing parties to "consider reasonable requests for production … on a case-by-case basis"); *Nichols v. Noom, Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. 2021) (case links in legal memo do not make "the hyperlinked cases ... attachments"); *Porter v. Equinox Holdings*, 2022 WL 887242, at *2 (Cal. Sup. Ct. Mar. 17, 2022). Plaintiffs' cases are not to the contrary. Two involved a stipulated order (*Acetaminophen* & *In re E. Palestine Train Derailment*). *Shenwick* recognized the substantial burdens a contrary approach would entail and reasonably limited requests for hyperlinked documents accordingly, similar to what Defendants propose here. Ex. A, App'x § 14.
- *Finally*, Plaintiffs demand that all word processing documents "containing hidden content, including track changes, comments, notes, etc.," be **produced in color as a matter of course**, even though Rule 34(b)(2)(E)(ii) requires only that a document be produced in "a reasonably usable form." *See* Sedona at 173 ("Parties should not demand forms of production … for which they have no practical use."). Moreover, because there is no

---

[4] https://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement.pdf

"HASCOMMENTS" metadata field, there is no automatic or other reasonable way for Defendants to detect documents with comments and produce them in color. There is a metadata field that shows track changes, however. Accordingly, Defendants have agreed to produce (i) color images of word processing documents that contain track changes; (ii) a "HASHIDDENDATA" metadata field; and (iii) additional documents in color where reasonably necessary to understand the document.

**Plaintiffs Demand Production of Non-Existent or Unnecessary Metadata.** Plaintiffs' definition of "ALLFILEPATHS" requires information (*e.g.*, file name, file extension) that is not actually present in this field as generated by standard discovery processing tools. It is, however, already provided in other fields (*e.g.*, "FILENAME") that Defendants have agreed to produce. Plaintiffs also insist on metadata fields that either do not exist or are unnecessary. Despite categorically rejecting email threading, Plaintiffs include "THREADID" as a required metadata field. "HASCOMMENTS" does not exist, as noted above. "IMPORTANCE" is not meaningful in the non-Microsoft email platforms most Defendants use, and metadata fields like "ATTACHBATES" and "EMAILTYPE," provide obvious and duplicative information.

**Preservation Obligations Belong in a Preservation Order.** Plaintiffs inject *preservation* issues relating to custodians, data sources, and "irretrievable" material throughout their proposed *ESI* order. Ex. B §§ 6, 19(d). These preservation topics would exceed the parties' Rule 26 disclosure obligations and may be more properly addressed through the parties' separate discussions about a preservation order.

**PLAITNIFFS' POSITION:** Plaintiffs' proposed ESI Protocol (Exh. B) adheres to the modern approach to e-discovery in complex litigation by emphasizing early cooperation and transparency in ESI collection and production. It establishes efficient, cost-effective discovery methods that reduce "gamesmanship" and ensure "forthright sharing…with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness…." *Sedona Cooperation Proclamation*, 10 Sedona Conf. J. 331, 332 (2009); Sedona Cooperation Guidance for Litigators & In-House Counsel, at 14 (2011).

**Identify and disclose custodians and data sources (¶6).** In an information-asymmetric litigation, early identification of relevant custodians and data sources is necessary to avoid later disputes or time-consuming corrective measures. It is consistent with the ESI Guidelines and Checklist.

**Search methods must be cooperative, transparent, and have data-driven validation (¶¶8-12).** Search methodologies, particularly search terms,[5] can be both significantly over- and under-inclusive, which is why it is essential for Parties to cooperate and be transparent in the search methods employed and properly validate them. *E.g.*, *Deal Genius v O2COOL*, 2023 WL 4556759, *5 (N.D. Ill. 2023) ("parties should adopt iterative search term development procedures and quality assurance practices that can help identify relevant information not retrieved by the original search terms"); *William A. Gross Const. Assocs. v. Am. Mfrs. Mut. Ins.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("wake-up call" to the Bar that "where counsel are using keyword searches for retrieval of

---

[5] TAR is far more accurate and cost effective than search terms, *e.g.*, *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (average recall rate of keyword searches only 20%), but it should not be used in combination with search terms. If TAR is performed after culling with search terms, the average recall rate would be just 16%.

ESI, they at a minimum must carefully craft the appropriate keywords … and the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives'"). Plaintiffs' Protocol ensures that the Parties will discuss quality control methods to evaluate the sufficiency of the search tools. Neither Defendants' cited cases or their mischaracterization of Sedona Principle 6 support a lack thereof. Indeed, courts have rejected a party's reliance on Principle 6 when it failed to properly "evaluate the procedure" underlying its production position. *See Marin v. Apple-Metro, Inc.*, 2023 WL 2060133, at *8 (E.D.N.Y. 2023). Because search terms can miss 75-80% of responsive documents, it is critical Plaintiffs are not forced to negotiate blind, guess what terms to omit/add, whether to narrow connectors, and whether a term omits a high percentage of responsive ESI. The case law—in this District and elsewhere—overwhelmingly supports cooperation in developing search and validation methods because it "is entirely consistent with both the letter and spirit of the [FRCP]." *Pyle v. Selective Ins.*, 2016 WL 5661749 (W.D. Pa. 2016); *see Lithium Ion Batteries*, 2015 U.S. Dist. LEXIS 22915, *56 (N.D. Cal. 2015) (Gonzalez Rogers, J.) (including provision requiring qualitative sampling). Defendants' proposal to not address this upfront, but wait until there are problems in production months or years from now, would only result in delay and expensive curative or redo measures. *See Hardin v. Mendocino Coast Dist. Hosp.*, 2019 WL 4256383, *2 (N.D. Cal. 2019) (Hixson, J.).

**Responsive ESI must be produced without "relevancy" redactions (App. 1 ¶¶1(e), 12, 17).** Courts strongly disfavor relevancy redactions. *E.g.*, *Magana-Munoz v. W. Coast Berry Farms*, 2022 WL 6584545, *2–3 (N.D. Cal. 2022) (Davila, J.) ("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive."). The Court's three-tier protective order is the proper way to address concerns about safeguarding potentially confidential irrelevant information within responsive documents.

**Hyperlinked content should be produced with its family relationship intact (App. 1 ¶¶1(e), 17)**. If communications do not include hyperlinked attachments, then potentially determinative evidence of who knew what when will be lost. *Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, 2023 WL 196157, *5 (S.D.N.Y. 2023) ("modern attachments" shall be collected and produced with the parent message").[6] Consider a parent email stating, "Urgent that you look at this immediately!" Without the hyperlinked attachment (the "this"), the email would be impossible to decipher. And if they are not collected as a family, the parent email may not be produced or identifiable. Defendants' proposal, which would require Plaintiffs to show "good cause" why the hyperlinked document should be produced for a limited set of communications, is unworkable and prejudicial to Plaintiffs.[7] Defendants should not be incentivized to adopt technology that conceals relevant ESI in litigation. When Courts have ordered production of hyperlinked content, the parties have successfully done so without incident. If Defendants are not required to produce hyperlinked documents as a family relationship in the first instance for all custodians, at a minimum the Parties should continue to meet and confer on reasonable methods for the production of these families. Such methods may include (1) reasonable requests from Plaintiffs to in-house counsel screened

---

[6] *East Palestine Train Derailment*, No. 4:23-cv-002242, ECF No. 100 (E.D. Ohio 2023) (ordering Defendants to produce hyperlinked content); *Stitch Editing v. TikTok*, 2022 WL 17363054, at *1 (C.D. Cal. 2022) ("Documents referenced in hyperlinks … must be produced together with the source document containing the hyperlinks so that the association between parent document and hyperlinked document is maintained.").

[7] Plaintiffs have not found a decision that required the requesting party to show "good cause" for the producing party to identify hyperlinked documents. *E.g.*, *Shenwick v. Twitter,* 2018 WL 5735176, at *1 (N.D. Cal. 2018) (Kim, J.) (Plaintiffs "have a right to determine if an electronic message refers to a document" and ordering defendants to "produce documents referenced in a hyperlink for 200 documents that Plaintiffs choose.").

from litigation counsel to identify the hyperlinked documents; and (2) collection of emails with associated hyperlinked documents for priority custodians for review on family basis.

**E-mail threading is inappropriate (¶15).** Withholding e-mails in a thread leads to the suppression of substantive evidence and impedes normal litigation preparation. First, e-mail threading suppresses the metadata of the non-produced emails, preventing proper searching. Second, e-mails suppressed by e-mail threading have independent significance in their original forms for deposition of trial testimony. Critically, Defendants' proposal omits language to even ensure all thread participants and fields (*i.e.*, From, To, CC, BCC, Subject) and content in previous emails, including attachments, are contained within the final message, such that no unique content is removed or modified as a result of the threading process. Nor will Defendants honor good faith requests to produce earlier chains of emails otherwise excluded by email thread suppression.

**Deduplication tools should be proven effective (¶14).** MD5 and SHA-1 are the industry standard algorithms that should be used to remove exact duplicates. The algorithms, however, do not work effectively on e-mails which were not collected as standalone (*e*.g., .eml, .msg) files because of the way that emails are stored within containers (*e.g.,* .pst files) from which they are collected. Thus, it is essential to include the specific criteria (*i.e.*, to, from, cc, bcc, date sent, time sent, e-mail subject, attachment names, etc.) to be used to deduplicate e-mails.

**Exchange relevant information (¶¶11, 20(d), Defs' ¶15; App. 1 ¶¶11, 14, 18-19)**. To correct the parties' imbalance of information, Defendants should exchange information regarding hard to access ESI. *First*, if relevant information is stored in a database, then the Parties should disclose what it is in the database, how it is related to other responsive data in the database, and the available metadata fields. That will allow the Parties to confer on which data fields should be produced, rather than disputing the sufficiency of the production after the fact. It is impossible to meaningfully confer regarding responsive data contained in such structured data sources without this disclosure. *Second*, if a Party knows information is lost or no longer retrievable, then it should disclose the circumstances and confirm whether that information is available from other sources, including any backup. *Third*, transparency regarding error files and unsearchable ESI is critical to prevent improper withholding. *Fourth*, the Court should reject Defendants' attempt to broadly conceal relevant ESI from based on "any other applicable privilege or immunity."

**Relevant ESI should not be improperly withheld (¶¶13, 20(b), 25; Defs' ¶ 15)**. There is no dispute that non-substantive system files can be removed from productions. The NIST hash list is the industry standard, but Defendants seek to categorically withhold without any review broad categories of files which may contain substantive relevant ESI. Defendants also want to categorically withhold prior versions of relevant ESI. Prior versions are highly relevant and will show knowledge, contradictions or inconsistences, chronologies, mistakes, and collaboration among custodians. Finally, Defendants' proposal to categorically foreclose discovery regarding (1) Defendants' preservation of ESI; and (2) broad undefined "privileges" or "immunities," full stop, is not appropriate. This information may become discoverable (*e.g*., spoliation, waiver).

**Social Media (¶17)**. Producing social media may pose challenges which should be discussed.