# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1.     **PURPOSE**

    This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.[1]

---
[1] The Parties will work cooperatively in an effort to reach agreement regarding the application of this ESI Order to Judicial Council Coordinated Proceeding No. 5255.

## 2.     DEFINITIONS

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

## 3.     COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties' will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI, as well as propounding reasonably particular discovery requests, establishing proportional limits on the scope of potentially relevant and discoverable ESI, while endeavoring to reasonably and proportionally identify and produce a reasonable proportion of potentially relevant and discoverable ESI, and maintaining security over the discovery in this Litigation. The Parties will make reasonable efforts to comply with their obligations in this ESI Order.

## 4.     LIAISON

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

### 5.    PRESERVATION

The Parties' preservation obligations will be set forth in an Order Relating to Preservation of Documents and Electronically Stored Information ("Preservation Order") [Dkt. __].

### 6.    IDENTIFICATION OF CUSTODIANS AND DATA SOURCES

The parties will disclose a preliminary list of potential custodians as part of initial disclosures  according to Fed. R. Civ. P. 26(f) and participate in Rule 26(f) discussions guided by this District's ESI Checklist. Once discovery requests have been propounded under Fed. R. Civ. P. 34, the parties agree to meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles or descriptions of their work, and for data sources, location information or description.

### 7.    KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

## 8.   SEARCH QUERIES AND METHODOLOGIES

The Parties shall adopt reasonable and proportionate approaches to search, collect, cull, and produce ESI as reasonably necessary. The Parties further recognize that each Party may use one or more methodologies to identify, collect, cull, review, or produce relevant and responsive, non-privileged ESI. There are many acceptable methods the Parties may use to satisfy their obligation under the Federal Rules of Civil Procedure to search for and retrieve ESI, and the Parties agree that absent a showing of specific need and good cause, the Producing Party is best situated to evaluate which of these methods is appropriate for its own ESI.

The Parties will work together in an effort to reach agreement upon a reasonable search methodology to identify responsive documents. *See* Section 3. If any Requesting Party upon a showing of good cause requests additional information regarding the quality control method(s) used by the Producing Party to validate whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI, the Parties agree to meet and confer on a reasonable and proportional validation scope and protocol.

a) **<u>Key Word Search</u>**. If the Producing Party is identifying or culling potentially responsive ESI, which is not already known to be responsive, using search terms, the Parties will meet and confer about search terms.

b)  Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are in fact responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by any search term that are not relevant and responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

## 9.    SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The Parties also may filter out stand-alone files identified as zero bytes in size and image files smaller than 512 kilobytes or confirmed to be non-substantive and non-responsive. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 10.    DEDUPLICATION

Each Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI data set across all custodians at the family level. Documents should be de-duplicated at the family level using MD5 hash values, or SHA hash values, or comparable industry standard methods. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches as established by commercial software methods.  For example, for emails with attachments, the hash value is generated based on the parent/child document grouping.  The Parties shall disclose the methodology, e.g., industry standard program (including any variable parameters), being used to calculate the hash values for individual emails and email families.

## 11.    EMAIL THREADING

Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," to the extent that they are fully contained (considering attachments) within the Last In Time Email(s).  Only email messages for which the parent document and all attachments are contained in the Last In Time Email(s) will be considered lesser-inclusive email messages that need not be produced.

## 12.    SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same.[2]

## 13.    PRODUCTION FORMATS

---

[2] Except as separately agreed, the provisions in Sections 6-11 do not apply to databases, other structured data, or User Data (as defined in the Preservation Order) (see Appendix 1, ¶10).

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that Defendants are not able to produce Plaintiffs' user account information in the same format as it appeared to and/or functioned for Plaintiffs when using Defendants' apps and/or services.

**14.   PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**15.   DOCUMENTS PROTECTED FROM DISCOVERY**

a)  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

b)  Nothing in this ESI Order requires disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

**16.   MISCELLANEOUS PROVISIONS**

a)  **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a

bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee. The Parties shall further agree to confer, upon a showing of good cause, concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Redactions for Reasons other than Privilege.** If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made. If the issue cannot be resolved, the Parties may seek resolution from the Court. Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable Protective Order.

c) **Translations Of Produced Materials**. The Producing Party has no obligation to create a translation of the Documents or any portion thereof. For any foreign-language documents responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The parties will meet and confer as necessary

concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

d) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter.  Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

e) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its

employees, agents, or contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

f) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

g) **Protective Order**. The Parties agree to enter into a Stipulated Protective Order that governs the production of content requiring special protections.

h) **Rule 502(d) Order**. The Parties have entered into a separate Stipulated 502(d) Order under Fed. R. Evid. 502(d). Dkt. 248.

i) **Privilege Logs**. The Parties will meet and confer to negotiate a protocol to govern the scope, format, and procedures for bringing challenges to the Parties' privilege logs.

j) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

k) **Good Faith**. The Parties will act in good faith as required by law and use these

procedures to identify and reduce the potential for disputes.

l) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

m) **Reservation of Rights**. Nothing in this ESI Order may be construed or interpreted to waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI, or to independently move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production. The Parties retain the right, upon reviewing any productions made by another Party in this Litigation or conducting other investigation and discovery to request that Documents or ESI from additional non-custodial data sources and/or custodians be produced. The Parties will meet and confer regarding such request(s) prior to any search or production related thereto. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party. It solely means the Parties are deferring discussion on the topic or that the Parties are not in agreement. This provision does not apply to any topic outlined and negotiated by the Parties herein unless the Parties jointly agree to modify a provision.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____          Dated: _____

By: /s/  <u>DRAFT</u>                                                                           By: /s/  <u>DRAFT</u>

*Attorneys for Plaintiffs' Executive Committee*        *Attorneys for Defendants Meta Platforms, Inc.,  f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

By: /s/  <u>DRAFT</u>

*Attorneys for Defendants TikTok, Inc. and ByteDance Inc.*

By: /s/  <u>DRAFT</u>

*Attorneys for Defendant Snap, Inc.*

By: /s/  <u>DRAFT</u>

*Attorneys for Defendants YouTube, Inc., Google LLC, and Alphabet Inc.*

    **IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____            _____

                                        MAGISTRATE JUDGE THOMAS S. HIXSON

**APPENDIX 1: PRODUCTION FORMAT**

**1)** **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

a)  an ASCII delimited data file (.DAT) using standard delimiters;

b)  an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

c)  single page black-and-white TIFF images, or JPEG images when color is needed;

d)  and document level .TXT files for all documents containing extracted full text or OCR text.

e)  Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production.

f)  If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

**2)** **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

**3)** **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

**4)** **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document. However, to the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, is burdensome to provide, or would reveal information that is privileged or otherwise protected from discovery, this provision shall not be read to require any Party to extract, capture, collect or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, and (j) TEXTFILEPATH,

which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |

| Field Name | Field Description |
|---|---|
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" |

| Field Name | Field Description |
|---|---|
|  | line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTION TYPE[3] | General category of redaction reason as agreed to by the parties. For example, if agreed, "Privilege" (e.g., attorney-client, work product), "Privacy" (e.g., PII, PHI, personal financial information), or "Source Code."  If more than one, separate reasons by semicolons. |
| REDACTIONS | Indicate Yes/No if document redacted |

     **5)**      **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the

---

[3] The Parties will provide specific information on any privilege(s) asserted in their privilege logs.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

**6)     Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with reasonable requests by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents, and no party shall make routine requests pursuant to this paragraph.

**7)     Text Files.** A single multi-page text file should be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will use reasonable efforts to OCR foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition ("OCR") should be used for all scanned, hard copy documents and for documents with redactions. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"),

(4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. Text extracted from emails should also be generated with commercially acceptable technology set to include the text of any URLs or links, e.g., if an email contains a link like "Please review these rules" where "these rules" is a URL to a destination such as "https://www.cand.uscourts.gov/notices/new-notice-proposed-modifications-to-civil-local-rules/", then the extracted text must include the URL as well as the linked text "these rules."

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format To the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper

documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)     Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)     Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)     Databases and Other Structured Data.** The Parties shall meet and confer regarding the production format and scope of relevant structured data in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not

impose an undue burden on the Producing Party, by, for example, requiring development of reports, requiring the manipulation of structured data from some form other than the form that it is kept in during the normal course of business, or requiring the creation of software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Requesting Party to view the ESI.

**13)** **Prior Versions of a Document.** If, in the normal course of business, a Party stores a document in a repository that preserves historic versions of the same document (e.g. Google Drive, iManage, etc.), the Parties agree that they will meet and confer in good faith about producing certain of the historic versions of that document. The Parties agree that, given technological limitations and the extensive burden involved in retrieving prior versions (if even possible), the Parties shall limit requests made pursuant to this paragraph to a reasonable number of documents, and no Party shall make routine requests pursuant to this paragraph.

**14)** **Pointer hyperlinks.** The Parties agree that given technological limitations, document(s) and/or folder(s) of documents that are pointer hyperlinked inside a responsive document need not be produced in the first instance. Upon the Receiving Party's showing of good cause, the Parties agree to meet and confer in good faith about producing responsive, non-privileged pointer hyperlinked documents for a limited set of documents identified by the Receiving Party if also under the possession, custody or control of the Party. The Parties agree that, given technological limitations and the extensive burden involved in retrieving pointer

hyperlinked documents (if even possible), the Parties shall limit requests made pursuant to this paragraph to a reasonable number of documents, and no Party shall make routine requests pursuant to this paragraph.

**15)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**16)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**17)** **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**18)** **Redactions**. Other than as permitted by this Order or the Protective Order entered in this Action, no redactions for relevance may be made within a produced document or ESI item without first meeting and conferring before such redactions are made. If the issue cannot be resolved, the Parties may seek resolution from the Court. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the type of the redaction, and a metadata field shall indicate that the document contains redactions and the type of the redaction (e.g., "Privacy" or "Privilege"). Where a

responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

    a) **Spreadsheets**.   Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively.

    b) **Other Documents**.  Parties shall use best efforts to ensure all images of redacted files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.  Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE or similar to prevent the current date from being printed.  Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

    c) **Color**.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

       **19)**    **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the

identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.