# Exhibit B

1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 7<br>8<br>9<br><br>10<br><br>11<br>12<br>13<br>14 | IN RE: SOCIAL MEDIA ADOLESCENT<br>ADDICTION/PERSONAL INJURY<br>PRODUCTS LIABILITY LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br><br>**[PROPOSED] ORDER GOVERNING THE<br>PRODUCTION OF ELECTRONICALLY<br>STORED INFORMATION AND HARD<br>COPY DOCUMENTS** |

15

16    **1.   PURPOSE**

17          This Order Governing the Production of Electronically Stored Information and Hard

18    Copy Documents ("ESI Order") will govern discovery of electronically stored information and

19    any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil

20    Procedure and this District's Guidelines for the Discovery of Electronically Stored Information

21    ("ESI Guidelines")[1] and Checklist for Rule 26(f) Meet and Confer Regarding Electronically

22    Stored Information ("ESI Checklist"),[2] and any other applicable orders and rules. "This

23

24

25

26          [1]https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.
27          [2]https://www.casd.uscourts.gov/judges/leshner/docs/Electronically%20Stored%20Informatio
      n%20Checklist.pdf.

28    [PROPOSED] ORDER GOVERNING THE                                      MDL No. 3047
      PRODUCTION OF ELECTRONICALLY STORED
      INFORMATION AND HARD COPY DOCUMENTS
                                            1

Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2. DEFINITIONS

a)     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b)     "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c)     "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d)     "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

## 3. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI, as well as propounding reasonably particular discovery requests, establishing proportional limits on the scope of potentially relevant and discoverable ESI, while endeavoring to identify and produce a reasonable percentage of potentially relevant and discoverable ESI, and maintaining

security over the discovery in this Litigation.

## 4. LIAISON

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

## 5. PRESERVATION

The Parties' preservation obligations will be set forth in an Order Relating to Preservation of Documents and Electronically Stored Information ("Preservation Order") [Dkt. ___].

## 6. IDENTIFICATION OF CUSTODIAL AND NON-CUSTODIAL DOCUMENTS AND ESI

The Parties will disclose a preliminary list of (a) custodians likely to possess potentially relevant information, (b) custodial and non-custodial data sources likely to contain potentially relevant Documents and ESI, and (c) third parties likely to possess potentially relevant information in accordance with Fed. R. Civ. P. 26(f) and this District's ESI Guidelines and participate in Rule 26(f) discussions guided by this District's ESI Checklist.

Once discovery requests have been propounded under Fed. R. Civ. P. 34, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from

which Documents and ESI will be collected for review for potential production in this litigation.

The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description.

The Parties agree that if the Producing Party determines a source is not "reasonably accessible" pursuant to Fed. R. Civ. P. 26(b) during the search and collection process it will provide sufficient information regarding the accessibility of the source to enable the Parties to confer in good faith about whether such source or Document will be produced or methods by which the information can be produced. If the Parties disagree as to the accessibility of the source after a good faith meet and confer, the Party seeking discovery from the source may submit the issue to the Court or its designee in accordance with the Court's procedures. The Parties agree to take any unresolved disputes on same promptly to the Court or its designee.

## 7.   KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

## 8.   SEARCH QUERIES AND METHODOLOGIES

Pursuant to Fed. R. Civ. P. 26(f), the ESI Guidelines, and the State Rules, the Parties shall confer on the application, if any, of search or other filtering technologies, including search terms, file types, date ranges, transparent validation procedures and random sampling, predictive coding,

[PROPOSED] ORDER GOVERNING THE                              MDL NO. 3047
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION AND HARD COPY DOCUMENTS

or other appropriate advanced technology, including systems used to track review status related to those advanced technologies. The Parties are expected to work in a cooperative, collaborative, and iterative manner, in order to reach agreement upon a reasonable search methodology to achieve an appropriate level of recall (the percentage of responsive Documents in the collection against which the search terms were run which include a search term). To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court or its designee. The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.

a) **Use of TAR**. If a Producing Party plans to use technology-assisted review ("TAR"), also known as "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Parties in advance to discuss an appropriate TAR protocol for that type of review. TAR processing will not be "stacked" with the application of search terms, i.e., TAR will not be applied before or after any application of search terms. If the Parties cannot reach agreement on the TAR protocol to be used, the matter may be submitted to the Court for resolution.

b) **Key Word Search**. If the Producing Party is identifying or culling potentially responsive ESI, which is not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's documents. The Parties will meet and confer about information to improve the effectiveness of the search terms, such as providing a list of relevant English and foreign language company terminology (or equivalent) and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any. Before implementing search terms, the

[Proposed] Order Governing the                                   MDL No. 3047
Production of Electronically Stored
Information and Hard Copy Documents

5

Producing Party will disclose information and meet and confer regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), significant or common misspellings of the listed search terms in the collection to be searched, any date filters, or other culling methods, after which the Receiving Party may propose additional terms or culling parameters.

c)      Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are in fact responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by any search term that are not relevant and responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

**9.  HIT REPORTS**

In the event that a Producing Defendant claims burden with respect to modified and additional search terms proposed by the Requesting Party, the Producing Defendant will provide a hit report for each custodian or data source in the deduplicated document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

a)      The number of documents with hits for that term;

b)      The number of unique documents, i.e., documents which do not have hits for any other term;

c)      The number of family members, including the documents with hits, of the documents with hits for that term; and

d)      The number of unique family members of the documents with hits for that term.

The hit report will also include the total number of documents in the de-duplicated collection against which the search terms were applied, the total number of unique documents containing hits, and the total number of unique family members, including the documents with hits, of the documents with hits.  It is understood that the unique hit numbers would be document collection specific, as non-U.S. custodial data will not be comingled with U.S. data for deduplication.  The Parties will meet and confer to resolve disagreements over the search terms or their application.

## 10. VALIDATION OF DEFENDANTS' SEARCH METHODOLOGY AND RESULTS.

The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate post-production validation procedures and random sampling of Defendants' Documents (both of non-relevant sets and of the entire collection against which search terms were run or  TAR or other identification or classification methodology was used), in order to establish that an appropriate level of recall (the percentage of responsive Documents in the collection against which the search terms were run which include a search term) has been achieved and ensure that the Defendants' search methodology was effective and responsive ESI was not being inadvertently omitted.

## 11. UNSEARCHABLE DOCUMENTS

Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, video, certain spreadsheets, certain hard copy documents, or certain foreign language documents where the Parties do not have suitable search terms in such language, must be reviewed without culling by search terms, predictive

coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.

## 12. REASSESSMENT

After the completion of the search methodology meet and confer sessions and/or after completion of the selected search process itself, a Producing Party, a Receiving Party, or the Court may perceive the need to reassess a search methodology and/or validation process.  In all such circumstances, the Parties will meet and confer to address any issues in a reasonable and timely manner; and the time, cost, and/or other resources expended in connection with ineffective methodologies and/or processes shall be deemed irrelevant to the issues of reasonableness and proportionality for additional efforts required.

## 13. SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list.  The Parties shall meet and confer on methods for excluding any other non-substantive files and folders that are reasonably identified as system files and not likely to contain user-created files.

## 14. DEDUPLICATION

Each Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI data set across all custodians at the family level.  Documents should be de-duplicated at the family level using MD5 hash values, or SHA-1 hash values, or comparable industry standard hash algorithm disclosed by such Party. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches. Parties shall disclose the methodology, e.g., industry standard program (including any variable parameters), being used

[PROPOSED] ORDER GOVERNING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION AND HARD COPY DOCUMENTS

MDL No. 3047

to calculate the hash values for individual emails and email families. Any such methodology must ensure that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field. Emails shall be deduplicated at the family level and standalone documents shall not be deduplicated against attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the "ALL CUSTODIAN" metadata field, separated by semi-colons, in addition to a separate field of data identifying the custodian whose Document is produced; such de-duplicated Documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial.  The original file paths of a Document prior to deduplication will be populated in the "ALL FILE PATHS" metadata field, separated by semi-colons, in the order corresponding to the order of names in ALL CUSTODIANS. Hard-Copy Documents shall not be eliminated as duplicates of ESI.

## 15. NO EMAIL THREADING

No email may be withheld from production or not logged for privilege because it is included in whole or in part in a more inclusive email, although Parties may use email threading for their own internal review and other internal processes.

## 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same.

## 17. PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **<u>Appendix 1</u>** to this ESI Order. If particular Documents or categories of Documents identified in response to

document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of Documents as part of the Document production process. The Parties agree that the production and production format of social media is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media.

**18. PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**19. MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**. Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to create a translation of the Documents or any portion thereof. For any foreign-language documents

responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation in the ordinary course of business or for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The Parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**. A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

[PROPOSED] ORDER GOVERNING THE                                   MDL NO. 3047
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION AND HARD COPY DOCUMENTS

d)      **Lost, Destroyed, or Irretrievable ESI**.  If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, whether any backup or copy of such original responsive ESI exists, and take reasonable steps to restore or replace it through additional discovery.

e)      **Documents Produced by Parties – Presumption of Authenticity.** In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents or contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

f)      **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

g)      **Protective Order**. Documents produced by the Parties are subject to the terms of the Protective Order [Dkt. ___] entered in this Litigation. The Parties agree to meet and confer

regarding any further stipulated protective order to govern the production of content a Party believes in good faith requires special protections.

h)   **Rule 502(d) Order**. The Parties have entered into a separate 502(d) Order under Fed. R. Evid. 502(d). Dkt. 248.

i)   **Privilege Logs**. The Parties will meet and confer to negotiate a separate order to govern the Parties' privilege logs.

j)   **Modification.** This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

k)   **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

l)   **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

m)   **Reservation of Rights.** Nothing in this ESI Order may be construed or interpreted to waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI, or independently move for an appropriate protective order pursuant to the Federal Rules of Civil Procedure. The Parties retain the right, upon reviewing any productions made by another Party in this Litigation or conducting other investigation and discovery, to request that Documents or ESI from additional non-custodial data sources and/or custodians be produced. The Parties will meet and confer regarding such request(s) prior to any search or production related thereto. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably

seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements).

**IT IS ORDERED** that the forgoing Order is approved.

Dated:

_____

MAGISTRATE JUDGE THOMAS S. HIXSON

## APPENDIX 1: PRODUCTION FORMAT

1.      **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

     a)  an ASCII delimited data file (.DAT) using standard delimiters;

     b)  an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

     c)   single page black-and-white TIFF or color JPEG images, or native files with single page placeholder TIFF images, depending on the applicable production format for each type of file;

     d)  and document level .TXT files for all documents containing extracted full text or OCR text.

     e)  Family relationships will be maintained in production. Attachments should be consecutively produced with their parent. "Attachments" shall be interpreted broadly and includes, *e.g.*, traditional email attachments and documents embedded in other documents (*e.g.*, Excel files embedded in PowerPoint files) as well as modern attachments, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents).

     f)  If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.      **<u>Production Media and Access Controls</u>.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on

CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

4.      **Metadata Fields.**  Defendants shall use methods of collection and processing that preserve the integrity of document metadata. The metadata fields detailed in **Appendix 2** should be produced for each Document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

5.      **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6.      **Color.** Word processing documents containing hidden content, including track changes, comments, notes, etc., shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with reasonable requests by the Requesting Party to determine whether a produced black-and-white TIFF's native or hardcopy original version contains color and to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

7.      **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will OCR foreign language documents using the appropriate setting for those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition ("OCR") should be used with the highest quality setting during processing for all scanned, hard copy documents, and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. Text extracted from emails should also be generated with commercially acceptable technology set to include the text of any URLs or links, e.g., if an email contains a link like "Please review these rules" where "these rules" is a URL to a destination such as "https://www.cand.uscourts.gov/notices/new-notice-proposed-modifications-to-civil-local-rules/", then the extracted text must include the URL as well as the linked text "these rules."

8.      **Native files.** Spreadsheets (*e.g.* MS Excel) and unredacted presentations (*e.g.* Microsoft PowerPoint) will be produced in native format. To the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The

Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Appendix 2. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

9.  **Production Format for Hard Copy Documents**. Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth on **Appendix 2**. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[3]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their

---

[3] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents.  Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, shall be imaged with and without the note attached.

10.     **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11.     **Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

12.     **Databases and Other Data**.  The Parties shall meet and confer regarding the production and format and scope of relevant structured data or aggregated or threaded data source or otherwise maintained by an application (*e.g.*, Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases or services) in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. The Parties will cooperate in the exchange of sufficient information concerning such databases to facilitate discussions on the production of responsive information, including available data

fields/objects and schema. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

13.     **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

14.     **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

15.     **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (*e.g.*, "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

16.     **Time Zone**.   All provided metadata pertaining to dates and times will be standardized to UTC.

17.     **Redactions**.  Other than as permitted by this Order or the Protective Order entered in this Action, no redactions for relevance may be made within a produced document or ESI item.

The Parties agree to meet and confer on a case by case basis if a Party believes there is a good faith basis to permit limited redaction by agreement of the Parties of highly sensitive, non-relevant information within a Document that contains other relevant information. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the type of the redaction, and a metadata field shall indicate that the document contains redactions and the type of the redaction (e.g., "Privacy" or "Privilege"). Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

    a) **Spreadsheets**.  Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively.

    b) **Other Documents**.  All images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.  Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed.  Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

    c) **Color**.  Redacted versions of Documents that would have been produced in color

in their un-redacted form shall be produced in color as detailed herein.

18.     **Exception Files**.  The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files.  In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

19.     **Mobile and Handheld Device Documents and Data**.  If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

**APPENDIX 2 – METADATA FIELDS[4]**

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHBATES | Bates number from the first page of each attachment |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | List of all original file/path of the locations where the item was located at the time of collection delimited by semi-colon. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and |

---

[4] The Producing Party will produce the fields contained in **Appendix 2** to the extent available and technically achievable and to the extent required by this Order.

| Field Name | Field Description |
|---|---|
|  | path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |

| Field Name | Field Description |
|---|---|
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| TIMEZONE | The timezone used to process the document |

[PROPOSED] ORDER GOVERNING THE
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION AND HARD COPY DOCUMENTS

MDL No. 3047

| Field Name | Field Description |
|---|---|
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| E-MAIL TYPE | Type of mail item, e.g., e-mail, calendar item, contact, note, task |
| THREADID | ConversationID for emails, thread id for threaded communications |
| REDACTION TYPE[5] | General category of redaction reason as agreed to by the parties. For example, if agreed, "Privilege" (e.g., attorney-client, work product), "Privacy" (e.g., PII, PHI, personal financial information), or "Source Code."  If more than one, separate reasons by semicolons. |
| REDACTIONS | Indicate Yes/No if document redacted |
| IMPORTANCE | High Importance — indicates Priority E-mail message. |

---

[5] The Parties will provide specific information on any privilege(s) asserted in their privilege logs. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

[PROPOSED] ORDER GOVERNING THE                                        MDL NO. 3047
PRODUCTION OF ELECTRONICALLY STORED
INFORMATION AND HARD COPY DOCUMENTS