# Exhibit D

**SeegerWeiss** LLP

July 5, 2023

**Via E-mail**

RE:   Social Media Cases, JCCP No. 5255 – ESI Protocol

Dear Counsel:

Plaintiffs write to identify the key areas of dispute between the Parties concerning the ESI protocol.[1] Plaintiffs remain willing to discuss in an attempt to reduce the number of issues for the Court's attention.

1.  **The Parties should identify and disclose the custodians and data sources likely to contain relevant and responsive information.**

Section 6 of Plaintiffs' Protocol provides a process for the Parties to exchange relevant information about the nature and scope of ESI, including custodians and data sources. Disclosure of this information promptly after the Court lifts the discovery stay comports with the Parties' obligations under Fed. R. Civ. P. 26(a) and 26(f), and this District's "Guidelines for Discovery of Electronically Stored Information" ("ESI Guidelines")[2] and "Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information" ("ESI Checklist").[3] By contrast, Defendants seek to narrow their obligations under the Rules, limiting initial disclosures only to "potential custodians" and disclosing "data sources" only after Plaintiffs propound requests for production of documents. There is no reason why the Parties cannot discuss the relevant custodial and non-custodial data sources as part of the Parties' Rule 26(f) conference as outlined by this District's ESI Checklist. *See* ESI Checklist at § III.

2.  **The Parties agree that they must produce known or easily identified documents.**

Paragraphs 7 and 8 of Plaintiffs' Protocol ensures that the Parties produce readily-identifiable (or known) responsive information regardless of whether the Parties use TAR, search terms, or other content-based filtering to collect their documents. Plaintiffs appreciate that Defendants have incorporated a similar "Known ESI" provision to that initially proposed by Plaintiffs, requiring the Producing Party to produce documents or ESI that it knows, after a reasonable investigation, to be responsive to a discovery request even if the material eluded the search methodology. *See* Defendants' Protocol at § 7.a. Plaintiffs are amenable to Defendants revised language of this provision, but believe it should be a standalone section as reflected in Plaintiffs' redline edits to the last version of Defendants' Protocol. Like Known ESI, if discrete collections of responsive information exist (e.g., a physical or electronic folder of product design decisions or user experience studies), those sources should be reviewed without using search terms to "cull" the contents.

---

[1] In addition to the issues addressed in this letter, Plaintiffs believe the Parties are near resolution on the following and would benefit from further meet and confer: TIFF resolution, text files' extracted text, bates numbering conventions, production of hard copy documents, dynamic fields, time zones, and system files de-NISTing.
[2] https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf
[3] https://www.casd.uscourts.gov/judges/leshner/docs/Electronically%20Stored%20Information%20Checklist.pdf

    **3.**     <u>**Search queries and methodologies must be cooperative, transparent, and include quality assurance measures to ensure effectiveness.**</u>

Plaintiffs' protocol calls for a cooperative and transparent search methodology by incorporating quality-control and quality-assurance procedures. Doing so will ensure that the search tools used by the Parties are calibrated to effectively identify responsive documents. *See* Pls.' Protocol §§ 8-10, 12. Defendants have stricken those procedures, leaving Plaintiffs without a reasonable opportunity to assess the accuracy of their searches.

Working cooperatively in developing a search methodology, including the quality-control measures to be taken, "is entirely consistent with both the letter and spirit of the Federal Rules of Civil Procedure" and this District's ESI Guidelines and Checklist. *Pyle v. Selective Ins. Co. of Amer.*, 2016 WL 5661749 (W.D. Pa. Sept. 30, 2016); *see also William A. Gross Constr. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009) ("This Opinion should serve as a wake-up call to the Bar in this District about the need for careful thought, quality control, testing and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or electronically stored information.").

Defendants' reliance on Sedona Conference Principle 6 to resist cooperation and transparency in developing an adequate search methodology is misplaced. First, the Sedona Conference has long encouraged cooperation and transparency between the Parties in developing search methodologies and ESI disclosure generally. *See* The Sedona Conference Cooperation Guidance for Litigators & In-House Counsel, at 14 (2011). Second, courts have rejected responding parties' reliance on Principle 6 in failing to properly evaluate their search and production procedures. *See, e.g.*, *Marin v. Apple-Metro, Inc.*, No. 12CV5274ENVCLP, 2023 WL 2060133, at *8 (E.D.N.Y. Feb. 8, 2023). Indeed, numerous courts—including Judge Gonzalez Rogers and other courts within the Northern District of California—have compelled appropriate methods to test productions to "reasonably ensure [that the responding party] has not overlooked relevant, responsive documents that should have been produced in discovery." *Deal Genius, LLC v. O2COOL, LLC*, No. 21 C 2046, 2023 WL 3445758, at *3 (N.D. Ill. Apr. 28, 2023) (citing *City of Rockford v. Mallinckrodt ARD Inc.*, No. 17 CV 50107, 2018 WL 3766673, at *4 (N.D. Ill. Aug. 7, 2018)); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2015 U.S. Dist. LEXIS 22915, at *56 (N.D. Cal. Feb. 24, 2015) (granting plaintiffs' request to incorporate a provision regarding qualitative sampling of documents returned by disputed search terms in the search protocol). These courts have not required the non-producing party to demonstrate good cause or consider proportionality when compelling search term validation as Defendants propose here.

    **4.**     <u>**Deduplication tools should be proven effective.**</u>

Section 14 of Plaintiffs' Protocol sets forth industry standard methods for deduplication. MD5 and SHA-1 are the industry standard algorithms used to confirm whether documents are exact duplicates (and may be withheld from production). The methodology, however, does not work effectively on e-mails because deduplication must be performed on a family level rather than a document level. Thus, it is essential to include the specific criteria (i.e., to, from, cc, bcc, date sent, time sent, e-mail subject, attachment names, etc.) to be used to deduplicate e-mails in order to avoid removing near duplicates

(which the parties agree should not be removed from production).[4] Defendants' proposal gives Defendants broad discretion to apply any hashing algorithm, based on an undefined industry standard, regardless of efficacy, which may result in the withholding of unique, responsive data and not just exact duplicates.

### 5. Productions should not artificially exclude responsive documents.

*Prior versions of documents should be produced.* Paragraph 11 in Appendix 1 of Defendants' protocol eliminates Defendants' obligation to produce historical versions of documents. Historic documents contain valuable information relevant to the context, timeline, and/or evolution of documents and the topics discussed therein decisions. Nothing in the Federal Rules allows Defendants to withhold relevant and responsive documents solely because new versions of the documents exist.

*Email threading should not be used in production.* Plaintiffs reject the use of email threading in production. Only producing the most-inclusive emails would deprive Plaintiffs of important information and critical metadata from earlier-in-time emails. For example, attachment names plainly visible in the heading of a standalone e-mail are dropped by Outlook when the body of that e-mail is included in a thread in a reply. E-mail thread suppression may also make it impossible to determine the critical substantive fact of what attachments were attached at each point in the thread. Nothing in Plaintiffs' proposed language would prevent Defendants from employing email suppression during their review.

*Defendants should not be able to shield certain documents from discovery.* Defendants propose excluding from discovery (1) Defendants' activities undertaken to preserve relevant information; (2) irrelevant information without context; and (3) privileged information, full stop. This inappropriately narrows the permissible scope of discovery without regard to the context in which these categories of information may become discoverable. First, Defendants' activities undertaken to preserve relevant information have already been the discussion of may meet and confers and are contemplated to be part of the Parties' Rule 26(f) conference under the District's ESI Guidelines and Checklist. Moreover, this information may be discoverable in the event of the spoliation of evidence, as Google is well aware. *See In re Google Play Store Antitrust Litig.*, No. 21-MD-02981-JD, 2023 WL 2673109, at *9 (N.D. Cal. Mar. 28, 2023) (concluding "that Google did not take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation."). Second, as explained below, relevancy redactions are largely disfavored. Third, although Plaintiffs agree that privileged information is typically not discoverable, there are situations in which it is (e.g. subject matter waiver). Plaintiffs will not agree to be bound by Defendants' proposed provisions.

### 6. Productions should be formatted in a manner that preserves evidence.

*Color-containing documents should be produced in color.* Paragraph 6 in Appendix 1 to Plaintiffs' Protocol requires Parties to produce all color-containing documents in color. Color often plays a crucial role in interpreting color-containing files. Consider a line graph in which each line appears in color. Matching the lines to the legend is impossible if the graph is produced in grayscale. In addition, if

---

[4] Folder/File Path metadata is critical substantive data that must be disclosed for any withheld duplicate. For example, the fact that a deduplicated custodian kept a document in a directory named "C:\Users\Smith\Documents\UXdesign" would clearly be a substantive fact. Folder/File Path has been included in virtually every ESI protocol. *See Salazar v. McDonald's Corp.*, 3:14-cv-02096-RS, at *1 (N.D. Cal. Mar. 10, 2015) ("metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced").

TIFFs of Word documents are not produced in color, any track changes in the document may be illegible, making the form of production unreasonable. Thus, files that contain color should be initially produced in color, and files already produced in black-and-white TIFF format should be reviewed to determine whether they contain color and re-produced in color if they do. Defendants' proposal that would require the requesting party to identify a "limited number of documents where color is necessary to accurately interpret the document" is unworkable. Not only will it result in delay, it will require Plaintiffs to reveal to Defendants which documents "matter" to them, needlessly revealing attorney work product in advance.

*Certain documents should be produced in native form.* If Defendants will agree to provide the Metadata fields listed in Appendix 2 and produce non-native documents with color in color, then Plaintiffs will limit Paragraph 8 of Appendix 1 of Plaintiffs' Protocol to direct the Parties to produce (i) spreadsheets and (ii) presentation files (e.g., PowerPoint) in their "native" file format, rather than TIFF that creates an image of the file. Native production is necessary because it provides hidden/embedded content and other important information that would otherwise be illegible or inaccessible. Defendants' proposal disadvantages Plaintiffs by producing documents in a far less useable format than the documents appear to Defendants. Producing these documents in native would not impose any undue burden on the Parties because the documents are gathered in native format before they are converted for production.

*Spreadsheets should be redacted natively to permit their use.* Paragraph 16.a in Appendix 1 of Plaintiffs' Protocol requires that redactions to Excel spreadsheets be done in native, not TIFF or PDF. Redactions in TIFF make Excel files virtually unreadable, and technology has changed to allow the Parties to redact with relative ease in native form.

*Hyperlinked documents should be produced as family groups*. Courts have recognized that internal hyperlinked content are akin to email attachments such that the family relationship should be retained in production. *See IQVIA, Inc. v. Veeva Sys., Inc.*, 2019 WL 3069203 (D.N.J. July 11, 2019) (ordering production of linked documents in family relationships with underlying emails); *cf. In re StubHub Refund Litig.*, 2023 WL 3092972 (N.D. Cal. Apr. 25, 2023) (Hixson, J.) (ordering defendant to product hyperlinked documents in family relationships pursuant to the court-ordered ESI protocol). Where hyperlinks are used by Defendants to link to internal documents, that ESI should be produced as a family.

*Metadata is necessary to understand the Parties' documents and ESI production.* Sections 2 and 14, Paragraph 4 of Appendix 1, and Appendix 2 in Plaintiffs' Protocol identify the necessary metadata fields that the Parties need to include in their document productions. Defendants removed Plaintiffs' definition of metadata entirely without proposing any alternative definition to govern the ESI Protocol. Defendants' Proposal, moreover, removes any obligation to produce substantial metadata fields that are already contained in native documents, including Folder/File Path metadata for all withheld duplicates, metadata related to document attachments, metadata related to who last modified documents, and metadata related to hidden content (such as hidden text, slides, notes, rows, worksheets, etc.). The exchange of the metadata in Plaintiffs' Protocol is typical and Defendants have not provided a reason for its exclusion.

*Relevance-based redactions to responsive documents are improper and should not be permitted.* Paragraph 16 of Appendix 1 to Plaintiffs' Protocol appropriately permits the Parties to redact documents for privilege, work product, and certain personal identifying information, but not based on relevance. Relevance-based redactions are heavily disfavored at any juncture and the Parties' multi-tier protective orders will sufficiently safeguard any private or confidential information intended to be protected by

relevance redactions. *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *3 (N.D. Cal. Feb. 7, 2018) (explaining that "[i]n general, courts frown upon the practice of redacting irrelevant information from documents based on one party's unilateral assessment of relevance" and collecting cases).

### 7. Information should be exchanged about ESI that is harder to access.

***Lost, destroyed, or irretrievable ESI.*** Section 19(d) of Plaintiffs Protocol requires that the parties explain where and when responsive ESI was lost and last retrievable in its original form and whether it is available from other sources. This is commonly mandated by courts in ESI orders, as it mitigates any potential harm or disadvantage faced by a party from lost ESI. *See, e.g.*, *In re Gardasil Products Liab. Litig.*, CV 3:22-MD-03036-RJC, 2023 WL 3081303, at *7 (W.D.N.C. Apr. 24, 2023) ("the Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.").

***Exception (Error) files should be identified and disclosed.*** Paragraph 14 in Appendix 1 to Plaintiffs' Protocol requires the Parties to compile a report identifying documents or ESI omitted from production due to technical issues. Transparency here is critical as it relates to responsive information that will be withheld from production due to processing error.

***Unsearchable repositories and documents.*** Section 11 of Plaintiffs' Protocol involves document repositories where the application of search terms may not be appropriate. Consistent with the ESI Checklist, Plaintiffs propose that the Parties confer about how to appropriately search and collect relevant material from such repositories.

***Exchange of information is necessary to understand the purpose of, and available data in, the Parties' database systems.*** Paragraph 10 of Appendix 1 of Plaintiffs' Protocol requires Defendants to provide their database schema and identification of the "data fields" available in their database systems to facilitate the Parties' conferral about the production of responsive data. This is consistent with the United States District Court Northern District of California "Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information. In addition, in the event the Defendants' software is necessary for reviewing pertinent ESI, Plaintiffs' Protocol contemplates the Parties will meet and confer along with a technical expert to ensure that the production of these documents is carried out with minimal burden and cost. This practice aligns with established norms and embodies a cooperative approach. *In re Philo Privacy Litig.*, 3:22-cv-04296-HSG, at *13 (N.D. Cal. Nov. 29, 2022); *Mayhall v. Amazon Web Servs.*, C21-1473-TL-MLP, at *4 (W.D. Wash. July 11, 2022).

\*   \*   \*

      Plaintiffs are available to meet and confer to further narrow the disputes. In an effort to narrow the disputes the parties need to present to the Court for resolution, Plaintiffs suggest the parties designate their respective ESI liaisons or representatives for an in-person meeting, together with the parties' ESI consultants, to discuss the remaining disputes.

Very truly yours,

Christopher L. Ayers