# Exhibit E



Wilson Sonsini Goodrich & Rosati
Professional Corporation

650 Page Mill Road
Palo Alto, California 94304-1050

O: 650.493.9300
F: 866.974.7329

July 17, 2023

**Via Electronic Mail**

Christopher L. Ayers
Seeger Weiss
55 Challenger Road
Ridgefield Park, NJ 07660

      Re:    *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litig.*, **MDL No. 3047 (N.D. Cal.) – ESI Protocol**

Dear Counsel:

      We write jointly with counsel for all Defendants in the above-referenced matter to respond to your July 5, 2023 letter. In that letter, you raised various discovery issues, some of which were addressed during the parties' prior meet-and-confer discussions, and some of which have not yet been discussed in meaningful detail or at all. Plaintiffs seek to impose discovery obligations via a so-ordered ESI protocol that greatly exceed the parties' discovery obligations under the Federal Rules of Civil Procedure and the purposes of an ESI protocol (including efficiently managing electronic discovery and minimizing future disputes).

      We look forward to discussing these issues with you in greater detail.

### Disclosure of Custodians & Data Sources (Section 1 of Your Letter)

      An ESI protocol is not an appropriate place to address the timing and contents of Rule 26 disclosures. ESI protocols are supposed to make discovery more efficient by establishing common ground and agreements on process, thereby minimizing ESI-related disputes. Information on the substance and timing of disclosures plays no role in an ESI protocol because Rule 26 separately addresses those requirements. Defendants' proposal to disclose "a preliminary list of potential custodians" as part of their initial disclosures is consistent with their obligations to make initial disclosures under Rule 26 that identify persons "*likely* to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).

      The Rules do not require Defendants to disclose the custodians and data sources from which they will search for responsive documents at any particular time. Neither does the Northern District of California's ESI Checklist. Defendants intend to use the non-mandatory ESI Checklist as it is intended to be used—as a guide where appropriate "in the context of the specific claims and defenses involved." ESI Checklist at 1; *accord* Fed. R. Civ. P. 26(f)(2) ("[T]he parties must consider the nature and basis of their claims and defenses."). Moreover, the ESI Checklist states

WILSON SONSINI

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 2

expressly what Rule 26(f) contemplates: "The usefulness of particular topics on the checklist, and the timing of discussion about the[] topics, may depend on the nature and complexity of the matter." ESI Checklist at 1.

In complex MDL proceedings like this one, it is unnecessary—and likely to prove wasteful and unworkable—for the parties to confer about the number of custodians and exchange lists of proposed custodians and data sources before Rule 34 requests have been served, whether that is before or after the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d). Those requests will outline the initial scope of discovery, which will then allow the parties to meaningfully and efficiently confer about the number of custodians and exchange lists of custodial and non-custodial data sources. It would not be productive for the parties to guess at these issues before then, and particularly when a dispositive motion is pending. Such speculation would be inefficient and wasteful, and would invite premature and additional ESI-related disputes before discovery even opens, rather than preparing a framework that will make discovery more efficient and minimize disputes. Defendants, therefore, do not agree to Plaintiffs' proposal.

## **Known Responsive ESI (Section 2 of Your Letter)**

We are pleased that Plaintiffs are amenable to Defendants' proposed language regarding known responsive ESI. Defendants have no objection to including that language in a different or stand-alone paragraph, as you propose.

As discussed previously, however, Defendants disagree with Plaintiffs' proposal related to "discrete collections of responsive information" because it is vague and unworkable. It is vague because Plaintiffs have not explained what "discrete collections of responsive information" means. The premise of Plaintiffs' proposal—that electronic files exist in some sort of virtual filing cabinet or banker's box where "discrete" folders can be identified—is flawed and has been rejected by courts. *See In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.*, 2017 WL 3445634, at *15 (D.D.C. July 31, 2017) ("Electronic records and communications are not like 'paper files intermingled in a file cabinet.'" (citing *United States v. Ganias*, 824 F.3d 199, 211 (2d Cir.) (en banc), *cert. denied*, 137 S. Ct. 569 (2016))). Plaintiffs' inability to define "discrete collections of responsive information" proves their proposal is unworkable, amounting to a requirement that a producing party search all haystacks by hand because somewhere in the "discrete collection" there is a needle.

Plaintiffs' proposal is also unworkable because it would prematurely circumscribe the tools available to a producing party to identify responsive and nonresponsive documents before the volume and characteristics of those documents are even known. Given the likely volume of ESI at issue in MDL proceedings and the array of file formats likely at issue, electronic search and culling tools will likely be necessary to effectively, efficiently, and proportionately locate, collect, and review information for production in discovery. Consistent with Sedona Principle 6, a producing party is best situated to choose the most appropriate tools and methods to identify, review and produce responsive documents. And Defendants will do so in good faith when the contours of discovery are more precisely defined by Plaintiffs' discovery requests. Plaintiffs' proposal improperly permits Plaintiffs to micromanage Defendants' document search, collection,

**WILSON SONSINI**

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 3

review, and production efforts. *See In re Viagra Prod. Liab. Litig.*, 2016 WL 7336411, at *1 (N.D. Cal. 2016) ("[T]he responding party is the one best situated to decide how to search for and produce ESI responsive to discovery requests."); Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, Principle 6, 118–30 (2018) ("*Sedona Principles*") ("[N]either a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations."). That is not required by any Rule or precedent, and it would increase discovery costs and production times unnecessarily.

### Cooperation, Transparency, and Quality Assurance (Section 3 of Your Letter)

Defendants have not objected to "a cooperative and transparent search methodology." Ltr. 2. To the contrary, Defendants' proposal expressly states: "[t]he Parties *will work together* in an effort to reach agreement upon a reasonable search methodology to identify responsive documents." Def. ESI Protocol § 8 (emphasis added); *see also id.* § 3.[1]

Nor have Defendants attempted to "leav[e] Plaintiffs without a reasonable opportunity to assess the accuracy of [Defendants'] searches" for responsive documents. Ltr. 2. Defendants' proposal provides that, if there is reason to do so, the parties will "meet and confer on a reasonable and proportional validation scope and protocol." Def. ESI Protocol § 8. Validation processes vary, depending on the volume, types, and characteristics of the documents and information subject to production. Defendants agree to meet and confer with Plaintiffs about whether validation protocols are appropriate and necessary when they have concrete information about the documents and information subject to discovery. Such concrete information will be available after Plaintiffs serve discovery, after Defendants identify custodians and sources of information responsive to Plaintiffs' requests, and after Defendants have learned specific information about the documents and information that will be produced in this matter. That specific information will inform a productive discussion that will be reasonable in light of the specific characteristics and volume of the documents that are subject to discovery and production.

### Deduplication (Section 4 of Your Letter)

Deduplication of documents is settled practice. *See, e.g.*, *Rusoff v. Happy Group, Inc.*, 2023 WL 114224 (N.D. Cal. Jan. 5, 2023) (recognizing that burden of discovery can be "substantially mitigated by the application of appropriately narrow search terms and the de-duplication of ESI across custodians"). Section 10 of Defendants' proposed ESI Protocol addresses each of the deduplication concerns raised in your letter. It states that deduplication will be done using "industry standard methods" to exclude only "exact duplicates," and to ensure that exact duplicates for emails are determined "at the family level." Def. ESI Protocol § 10. In short, Defendants' proposal tracks Plaintiffs' articulated concerns exactly and reflects an agreement on the concept. To the extent that Plaintiffs are asking Defendants to disclose *how* the underlying

---

[1] *Compare Pyle v. Selective Ins. Co.*, 2016 WL 5661749, at *2 (W.D. Pa. Sept. 30, 2016) (party requesting documents refused invitation from producing party to provide proposed search terms).

WILSON SONSINI

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 4

software calculates a hash for deduplication purposes, that level of detail is unnecessary to address your concerns and does not serve any legitimate purpose.

**Reasonable Limitations To Manage Discovery Burdens (Section 5 of Your Letter)**

**Historic versions.** It would be neither reasonable nor proportionate to the needs of this case to force Defendants to bear the significant burden and expense of retrieving every historic version of a document—a collection that cannot be automated using Defendants' existing discovery tools—especially given the volume of documents Plaintiffs typically seek in MDL proceedings. It would also needlessly delay productions. "Perfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents." *Alicecore, Inc. v. Apple, Inc.*, 2023 WL 2224431, at *2 (N.D. Cal. Feb. 23, 2023).

Defendants offer a reasonable and proportionate approach that balances any genuine need for historic versions of documents and the associated burdens. Specifically, Defendants' proposal states that, upon the receiving party's "showing of good cause, they will meet and confer in good faith about producing certain of the historic versions." Defs. ESI Protocol App'x ¶ 11. This approach ensures Plaintiffs have access to historic versions they actually need (if any) without forcing Defendants to incur outsized costs and burdens which may delay discovery. It also is consistent with Rule 26(b)(2)(B), which permits a Court to compel production of ESI that "is not readily accessible because of undue burden or cost" *if* "the requesting party shows good cause." Fed. R. Civ. P. 26(b)(2)(B).

**Email threading.** Like deduplication, email threading makes discovery more manageable and efficient for *both* the producing and receiving parties. It eliminates redundant bulk that would otherwise complicate the receiving party's review and increase all parties' ESI hosting and storage costs. Unique content is preserved, while only redundant content is omitted. Courts endorse email threading precisely because it makes discovery more efficient. The Western District of Washington has even recognized that email threading ought to be the *default* practice. *See* W.D. Wash. Model Agreement Regarding Discovery of Electronically Stored Information & Order § C(5).[2] That is fully consistent with Rule 26(b)(2)(C)'s requirement that courts limit discovery that "is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also* Apr. 20, 2023 Hr'g Tr. 114:12–13, *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, ECF No. 217 (N.D. Cal.) (DeMarchi, J.) ("e-mail threading is very normal").

Plaintiffs are incorrect that threading will result in responsive emails not being produced. Defendants' proposed use of threading will ensure the production of all responsive emails because threading will be performed, as Plaintiffs request, at the "family level." Family level threading means emails will be excluded *only when all thread members are "fully contained" in the most inclusive message, including all attachments*. Def. ESI Protocol § 11. Defendants' family level threading methodology ensures that Plaintiffs will receive all unique emails and their attachments and has become standard practice in document intensive, large-scale litigation.

---

[2] https://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement.pdf

WILSON SONSINI

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 5

**Protected Documents.** It is standard to include in an ESI protocol language clarifying that information subject to privilege or work-product protections is not discoverable. Doing so avoids any doubt or future argument that a party has waived privilege or work-product protection by virtue of some language elsewhere in the ESI protocol. This language benefits all parties and is consistent with the Federal Rules, which unambiguously limit the scope of discovery to *non-privileged* material. *See* Fed. R. Civ. P. 26(b)(1).

### Production Format Issues (Section 6 of Your Letter)

**Color Production.** There is no reason for Defendants to incur the additional expense of producing every document that contains color in color as a matter of course, and Plaintiffs provide no authority for such a requirement. *See* Sedona Principles at 173 ("Parties should not demand forms of production … for which they have no practical use or that do not materially aid in the discovery process."); *accord Dizdar v. State Farm Lloyds*, 2015 WL 12780640, at *11 (S.D. Tex. Jan. 21, 2015) (declining to order that all documents be produced in color; many documents contain colored portions that do not have independent value (*e.g.*, logos)). The Rules provide only that a document be produced in "a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Defendants are of course willing to confer in good faith about production in color of documents when actually necessary to understand the document's meaning. Plaintiffs' concern that this will "result in delay" is misplaced. Ltr. 4. Color production as a matter of course will increase processing time, hosting size, and cost, and delay *all* productions. Nor does Defendants' approach require "Plaintiffs to reveal … which documents 'matter' to them" or "attorney work product." *Id*. An assertion that color is necessary for a particular document to be in a reasonably usable form discloses only that color is reasonably necessary to understand the document's meaning, not that the document is one that counsel believes is important. *See, e.g.*, *Nichols v. Noom, Inc.*, 2021 WL 948646 (S.D.N.Y. March 11, 2021) (rejecting similar attorney mental impression argument with respect to hyperlinks).

**Native Production & Redactions.** Nothing in the Federal Rules requires Defendants to produce documents natively. *See, e.g.*, *Sedona Principles* cmt. 12.b ("Typically, a requesting party does not need ESI produced in its native format in order to access, cull, analyze, search, and display the ESI. Indeed, the most common way to produce ESI for more than a decade has been to create a static electronic image in Tagged Image File Format (TIFF) or Adobe Portable Document (PDF) file format, to place the extracted text from the document into a text file, and to place the selected metadata and other non-apparent data into one or more separate load files"); *Nat'l Jewish Health v. WebMD Health Servs. Grp., Inc.*, 305 F.R.D. 247, 253–54 (D. Colo. 2014) ("[E]ven if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata . . . because the production is in usable form, e.g., electronically searchable and paired with essential metadata.").

Defendants are willing to confer about potentially producing Excel and PowerPoint files in native format and applying native redactions to Excel files where necessary.

WILSON SONSINI

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 6

**Hyperlinked Documents.** Defendants fundamentally disagree with the premise that a hyperlink creates a familial relationship between the document where the link resides and the linked material. *See In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131 (N.D. Cal. June 2, 2023) (ordering that "hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production," and instead directing parties to "consider reasonable requests for production of hyperlinked documents on a case-by-case basis"); *Shenwick v. Twitter, Inc.*, 2018 WL 5735176, *1 (N.D. Cal. Sept. 17, 2018) (permitting plaintiffs to "identify up to 200 hyperlinks for which they seek the referenced documents"); *see also Nichols*, 2021 WL 948646, at *4–5. A link is a reference, not an attachment or enclosure. *See, e.g.*, *Nichols*, 2021 WL 948646, at *4 ("a legal memorandum might have hyperlinks to cases cited therein," but that does not make "the hyperlinked cases … attachments" to the memo"); *Porter v. Equinox Holdings, Inc.*, 2022 WL 887242, at *2 (Cal. Sup. Ct. Mar. 17, 2022) ("Given the potential technological challenges with producing linked documents in family relationships, the Court declines to order at this time that Equinox produce all linked documents referenced in relevant communications in family relationships.").[3]

**Metadata.** Defendants look forward to conferring in detail and in good faith about which metadata fields the parties will include in their productions. Defendants are optimistic the parties will come to substantial agreement on this topic.

However, a number of fields Plaintiffs propose are not necessary to ensure ESI is produced in a reasonably usable form and do not have independent relevance, much less relevance that is proportional to the needs of the case. Others provide only redundant information. For example, the APPLICATION field is redundant of the FILENAME field since the latter contains the file extension.

**Relevance Redactions.** The scope of discovery is limited to material that is "*relevant* to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevance redactions are appropriate and to all parties' benefit because they focus discovery on relevant information. *See, e.g.*, *Gershzon v. Meta Platforms, Inc.*, 2023 WL 3483294, at *2 (N.D. Cal. 2023) (permitting relevance redactions because "there is no reason for Meta to automatically disclose source code that is not relevant," even in cases where there is a blanket protective order); *Holley v. Gilead Scis., Inc.*, 2020 WL 2097602, at *3 (N.D. Cal. May 1, 2020) (permitting redactions of irrelevant information that is "commercially or scientifically sensitive" and commenting that "Plaintiffs' concern that Gilead will redact prejudicial relevant information is not well-taken; if counsel was going to violate their ethical obligations they would just withhold the document all together rather

---

[3] *In re StubHub Refund Litig.*, 2023 WL 3092972, at *1 (N.D. Cal. Apr. 25, 2023), is readily distinguishable. There, the parties had agreed to produce hyperlinked documents as family members, and one party failed to abide by that agreement. *See id.* ("This order is about agreements. . . . Thus, this is not a case like *Nichols v. Noom, Inc.*, 2021 WL 948646 (S.D.N.Y. March 11, 2021), where the defendant refused to treat linked documents as attachments, and the court had to decide whether to order that or not. Here, StubHub did agree to do that, and both sides agree that with a handful of exceptions, it has not lived up to this part of the ESI Protocol.").

WILSON SONSINI

Christopher L. Ayers
Seeger Weiss
July 17, 2023
Page 7

than produce it in redacted form"); *Scherer v. FCA, LLC*, 2021 WL 5494463, at *4 (S.D. Cal. Nov. 23, 2021) (permitting redaction of PII); *see also Kaiser Aluminum Warrick, LLC v. U.S Magnesium, LLC*, 2023 WL 2482933, at *2 (S.D.N.Y. 2023) ("[W]hile it is true that relevance redactions take time and may be expensive, if a party wishes to undertake the expense voluntarily and it can do so in a timely manner without impacting the discovery schedule set by the Court or prejudicing the other party, then such redactions are consistent with Rule 26(b)(3) and Rule 1.").

Nevertheless, Defendants are willing to meet and confer regarding potential guardrails surrounding relevancy redactions.

### **Discovery on Discovery Is Inappropriate (Section 7 of Your Letter)**

Section 7 of your letter seeks detailed discovery on discovery—largely demanding disclosure of what information *does not* exist. This is more than the Federal Rules require. "Discovery into another party's discovery process is disfavored," and courts will not allow it absent "some indication that a party's discovery has been insufficient or deficient." *Jensen v. BMW, LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019); *see also Uschold v. Carriage Servs.*, 2019 WL 8298261, at *4 (N.D. Cal. 2019); Sedona Principles at 123 ("[N]either a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations."); *id.* at 127 ("[P]arties should not be required to produce documentation of their discovery processes unless there has been a showing of a specific deficiency."); *id.* at 131 ("The requesting party has the burden on a motion to compel to show that the responding party's steps to preserve and produce relevant electronically stored information were inadequate."). Plaintiffs have not (and cannot) make such a showing here because discovery has not even begun. Moreover, an ESI protocol is not itself a device to obtain fact discovery. Rule 33 and Rule 34 requests are the devices a party may use to obtain discovery on discovery (in the rare event the propounding party has made the requisite showing).

***

We look forward to discussing these issues with you further during our next meet and confer.

Sincerely,

*Andrew T. Kramer*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation