1  Phyllis A. Jones (*pro hac vice*)
2  COVINGTON & BURLING LLP
   One CityCenter
3  850 Tenth Street, NW
   Washington, DC 20001
4  Telephone: + 1 (202) 662-6000
   Facsimile: + 1 (202) 662-6291
5  Email: pajones@cov.com

6  *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
7  *Facebook, Inc.; Facebook Holdings, LLC; Facebook*
   *Operations, LLC; Facebook Payments, Inc.;*
8  *Facebook Technologies, LLC; Instagram, LLC;*
   *Siculus, Inc.; and Mark Elliot Zuckerberg*
9
10 *Additional parties and counsel listed on*
   *signature pages*

11          **UNITED STATES DISTRICT COURT**
12          **NORTHERN DISTRICT OF CALIFORNIA**
                     **OAKLAND DIVISION**
13

14 IN RE: SOCIAL MEDIA ADOLESCENT          MDL No. 3047
15 ADDICTION/PERSONAL INJURY
   PRODUCTS LIABILITY LITIGATION           Case No. 4:22-md-03047-YGR-TSH
16
   THIS DOCUMENT RELATES TO:               Honorable Yvonne Gonzalez Rogers
17
   ALL ACTIONS                             **DEFENDANTS' REPLY IN SUPPORT**
18                                         **OF SUPPLEMENTAL JOINT MOTION**
                                           **TO DISMISS PURSUANT TO RULE**
19                                         **12(b)(6) PLAINTIFFS' PRIORITY**
                                           **CLAIMS UNDER SECTION 230 AND**
20                                         **THE FIRST AMENDMENT**
21
22                                         **Hearing:**
23                                         Date:   TBD
                                           Time:   TBD
24                                         Place:  Oakland, California
                                           Judge:  Hon. Yvonne Gonzalez Rogers
25
26
27
28

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT .................................................................................................................... 1

        A.      Section 230 Bars All of the Priority Claims............................................................ 1

                1.      The Master Complaint Alleges Plaintiffs Were Harmed by User
                        Content. ........................................................................................................ 2

                2.      Section 230 Is Not Limited to Claims Requiring Monitoring or
                        Removing Content. ....................................................................................... 3

                3.      The Priority Claims Would Treat Defendants as Publishers of User
                        Content by Imposing Liability for Their Services' Features That
                        Disseminate Such Content. .......................................................................... 5

        B.      The First Amendment Bars All of the Priority Claims. ......................................... 9

                1.      Plaintiffs Cannot Relabel Dissemination of Speech as Mere "Conduct." .. 9

                2.      Product Liability Labels Do Not Evade the First Amendment. ................. 11

                3.      Tort Claims of "General Applicability" That Burden Protected Speech
                        Are Barred by the First Amendment. ........................................................ 14

III.    CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
   143 S. Ct. 2298 (2023) ....................................................................................... 10

*A.M. v. Omegle.com, LLC*,
   614 F. Supp. 3d 814 (D. Or. 2022) ...................................................................... 7

*Allen v. Am. Cyanamid*,
   527 F. Supp. 3d 982 (E.D. Wis. 2021) ................................................................ 13

*Anderson v. TikTok, Inc.*,
   2022 WL 14742788 (E.D. Pa. Oct. 25, 2022) .................................................... 3, 9

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ......................................................................... 2, 3, 4

*Bill v. Super. Ct.*,
   137 Cal. App. 3d 1002 (1982) ....................................................................12, 13, 14

*Bride v. Snap, Inc.*,
   2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ..................................................... 6

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011) ............................................................................................ 11

*Burton v. E.I. du Pont de Nemours & Co.*,
   994 F.3d 791 (7th Cir. 2021) ............................................................................... 13

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ............................................................................ 6

*City of Annapolis v. BP PLC*,
   2022 WL 4548226 (D. Md. Sept. 29, 2022) ...................................................... 13

*Clift v. Narragansett Television LP*,
   688 A.2d 805 (R.I. 1996) .................................................................................... 15

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991) ............................................................................................ 15

*DeFilippo v. Nat'l Broad. Co.*,
   446 A.2d 1036 (R.I. 1982) .................................................................................. 15

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ............................................................................... 9

iii

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008)............................................................................................ 7

*Doe v. Snap, Inc.*,
   2022 WL 2528615 (S.D. Tex. July 7, 2022)..................................................................... 7

*Doe v. Twitter, Inc.*,
   555 F. Supp. 3d 889 (N.D. Cal. 2021) ............................................................................. 3

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019)................................................................................*passim*

*In re Facebook, Inc.*,
   625 S.W.3d 80 (Tex. 2021)............................................................................................... 9

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,
   25 F. Supp. 2d 837 (N.D. Ill. 1998) .............................................................................. 14

*Fair Hous. Council v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir. 2008)......................................................................................... 5

*Fayetteville Pub. Libr. v. Crawford Cnty.*,
   __ F. Supp. 3d __, 2023 WL 4845636 (W.D. Ark. July 29, 2023)........................................ 13

*Fields v. Twitter, Inc.*,
   217 F. Supp. 3d 1116 (N.D. Cal. 2016) ................................................................. 4, 6, 8, 9

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019).......................................................................................... 3, 6, 7

*G.G. v. Salesforce.com, Inc.*,
   __ F.4th __, 2023 WL 4944015 (7th Cir. Aug. 3, 2023) ........................................................ 5

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021)......................................................................................... 6, 19

*Green v. Miss USA, LLC*,
   52 F.4th 773 (9th Cir. 2022)..................................................................................... 10, 15

*Henderson v. Source for Pub. Data, L.P.*,
   53 F.4th 110 (4th Cir. 2022)............................................................................................. 4

*Herceg v. Hustler Mag., Inc.*,
   565 F. Supp. 802 (S.D. Tex. 1983) ........................................................................... 11, 12

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018)............................................................................... 9

*Herrick v. Grindr, LLC*,
   765 F. App'x 586 (2d Cir. 2019)...................................................................................... 9

iv

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019) ........................................................................ 4

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ...................................................................................... 10

*Jackson v. Airbnb, Inc.*,
   2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) ............................................... 9

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002) ................................................................. 11, 14

*Kimzey v. Yelp!, Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................. 3, 6

*L.W. v. Snap Inc.*,
   2023 WL 3830365 (S.D. Cal. June 5, 2023) ......................................... 6, 8, 9

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ............................................................ 5, 7, 8

*M.P. v. Meta Platforms, Inc.*,
   2023 WL 4853650 (D.S.C. July 24, 2023) .................................................. 6

*Martinez v. Metabolife Int'l, Inc.*,
   113 Cal. App. 4th 181 (2003) ..................................................................... 13

*McCollum v. CBS, Inc.*,
   202 Cal. App. 3d 989 (1988) .......................................................... 11, 14, 15

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) .................................................................................. 9, 10

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ..................................................................................... 14

*NetChoice, LLC v. Att'y Gen., Fla.*,
   34 F.4th 1196 (11th Cir. 2022) ................................................................... 10

*NetChoice, LLC v. Paxton*,
   49 F.4th 439 (5th Cir. 2022) ....................................................................... 10

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ..................................................... 10

*O'Kroley v. Fastcase, Inc.*,
   831 F.3d 352 (6th Cir. 2016) ........................................................................ 4

*Olivia N. v. Nat'l Broad. Co.*,
   126 Cal. App. 3d 488 (1981) ...................................................................... 14

*Project Veritas v. Schmidt*,
   72 F.4th 1043 (9th Cir. 2023) .................................................................................... 10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ................................................................................................... 11

*Rigsby v. GoDaddy Inc.*,
   59 F.4th 998 (9th Cir. 2023) ....................................................................................... 2

*Sanders v. Acclaim Ent., Inc.*,
   188 F. Supp. 2d 1264 (D. Colo. 2002) ...................................................................... 11

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ................................................................................................... 11

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ............................................................................................... 9, 13

*Telescope Media Grp. v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) ..................................................................................... 10

*United States v. Elcom Ltd.*,
   203 F. Supp. 2d 1111 (N.D. Cal. 2002) .................................................................... 11

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) ................................................................................ 10, 11

*Walt Disney Prods., Inc. v. Shannon*,
   276 S.E. 2d 580 (Ga. 1981) ....................................................................................... 15

*Watters v. TSR, Inc.*,
   715 F. Supp. 819 (W.D. Ky. 1989) ........................................................................... 13

*Weirum v. RKO Gen., Inc.*,
   15 Cal. 3d 40 (1975) ............................................................................................ 14, 15

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ............................................................................................... 15

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) ............................................................................. 14, 15

*Zacchini v. Scripps-Howard Broad. Co.*,
   433 U.S. 562 (1977) ................................................................................................... 15

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................................ *passim*

**Statutes**

47 U.S.C. § 230 ................................................................................................................... *passim*

# I.    INTRODUCTION

Plaintiffs try to evade Section 230 and the First Amendment by arguing that they are targeting Defendants' conduct, not user content.  This is a false choice that disregards established law and Plaintiffs' own allegations.  The Master Complaint is replete with allegations about third-party content that allegedly harmed Plaintiffs, and the "conduct" Defendants are accused of engaging in is disseminating or facilitating this content.  Both Section 230 and the First Amendment bar their claims.

Plaintiffs try to rewrite Section 230 by asserting that it does not bar their claims because they do not require Defendants to monitor or remove third-party content.  But Plaintiffs' claims would require large-scale monitoring to avoid presenting to certain users what Plaintiffs allege is harmful content.  Moreover, Plaintiffs are wrong that Section 230 is limited to claims that would require Defendants to take those steps.  Under binding law, Section 230 bars claims that would impose liability based on the dissemination of third-party content—no matter whether a plaintiff demands monitoring or removal of that content.  *E.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019).

Plaintiffs likewise cannot avoid the First Amendment by labeling Defendants' services and their features that facilitate user speech as "defective products" or asserting that Defendants "failed to warn" about the dangers of such speech.  No matter how Plaintiffs characterize their priority claims, they would impose liability for constitutionally protected speech that users create and for the manner in which Defendants disseminate and facilitate that speech.  An unbroken line of cases holds that the First Amendment bars liability in these circumstances, and Plaintiffs have no response to this precedent.

# II.    ARGUMENT

## A.    Section 230 Bars All of the Priority Claims.

Plaintiffs concede that Defendants have satisfied two of Section 230's three requirements: (i) Defendants provide "interactive computer service[s]" (Opp. 4), and (ii) the allegedly harmful content was provided by "another information content provider," *i.e.*, by users of Defendants' services, not Defendants (Opp. 9).  Defendants have also satisfied the third element because Plaintiffs' priority claims treat Defendants as "the publisher[s] or speaker[s]" of that user content.  47 U.S.C. § 230(c)(1).

1.      **The Master Complaint Alleges Plaintiffs Were Harmed by User Content.**

Plaintiffs' argument that these cases are about "conduct, not content" (Opp. 1) does not take their claims outside of Section 230. Section 230 "precludes liability" for "conduct" that takes the form of publishing third-party content. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). The Ninth Circuit has expressly held that "functions" used "to facilitate the communication and content of others" are protected publisher conduct and that plaintiffs cannot plead around that protection by calling those functions something else. *Dyroff*, 934 F.3d at 1098.

Plaintiffs contend that their claims can be linked to third-party content only by applying a "but for" test that the Ninth Circuit has rejected. Opp. 2, 8. But unlike cases rejecting that test, the content here is not an incidental aspect of Plaintiffs' claims—it is an indispensable part of them. Plaintiffs can argue otherwise only by ignoring the allegations in their Master Complaint. Plaintiffs allege that they suffered wide-ranging harm from viewing "harmful content," and conceded as much in prior briefing. *See* Pls. Opp. To Joint Mot. 43 (Dkt. 302). Plaintiffs allege harm from viewing user content such as "posts about depression, self-harm, drugs, and extreme diets," and "violent" or "sexual" material. MC ¶¶ 597, 612, 758, 765. They further allege that viewing user-edited, "'idealized' content," such as "thinspiration" imagery, harmed them by fostering "unrealistic body image standards." *Id.* ¶¶ 88, 114, 314, 316, 385, 513–15. And they also claim harm from viewing allegedly "dangerous" content, like "online challenges or dares," *id.* ¶¶ 125–132, and receiving connection requests and "messages" from bad actors, *id.* ¶¶ 666, 399, 404, 430, 507, 509, 656. Plaintiffs thus seek to impose liability on Defendants by alleging harm from user content. That is precisely what Section 230 bars. *See, e.g.*, *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1008 (9th Cir. 2023).

Plaintiffs' assertion that these cases are about "conduct" is based on allegations that features of Defendants' services are defective. But as discussed below, *see infra* pp. 5–9, Plaintiffs claim these features are defective because they disagree with how these features disseminate content. Defendants' hypothetical about a service with the same features that displayed only blank boxes illustrates that all of Plaintiffs' priority claims, at their core, hinge on allegedly harmful third-party content. Mot. 1, 18. Plaintiffs' response misses the point. Plaintiffs incorrectly argue that "if the only way Defendants' products would not harm children is to strip their products of all content" then "Plaintiffs' liability

theories are not targeting any particular content or ideas." Opp. 19. But it makes no difference whether Plaintiffs focus on a particular piece of content or take advantage of the MDL procedure by pleading claims more generally and referencing general categories of potentially harmful content. That Plaintiffs' claims would not survive if Defendants disseminated only blank boxes confirms that Plaintiffs' alleged harm is from third-party content. That would be true whether the claims are premised on all user content available on Defendants' services or just some of it.

**2.      Section 230 Is Not Limited to Claims Requiring Monitoring or Removing Content.**

Plaintiffs attempt to avoid dismissal by rewriting Section 230 to somehow be limited to claims that would require monitoring and removing specific content (Opp. 4), *i.e.*, claims that would "necessitate[] different decisions about posting or not-posting specific, identifiable content" (Opp. 9). But Plaintiffs' claims *do* require monitoring—for example, to avoid recommending or displaying allegedly problematic content that Plaintiffs try to link to their injuries. Moreover, there is no support for Plaintiffs' misreading of Section 230, which is contrary to statutory text and binding precedent.

Courts interpret Section 230 by giving ordinary meaning to the statutory phrase "treated as the publisher" of information provided by another. *See, e.g.*, *Barnes*, 570 F.3d at 1102. Based on the "common definition of what a publisher does," courts have held "that publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Id.*; *see also Anderson v. TikTok, Inc.*, 2022 WL 14742788, at *4 (E.D. Pa. Oct. 25, 2022), *appeal docketed*, No. 22-3061 (3d Cir. Nov. 10, 2022).

No court has limited Section 230 only to claims that would require services to monitor and remove content. To the contrary, Section 230 "protects websites from liability under state or local law for material posted on their websites by someone else." *Dyroff*, 934 F.3d at 1097 (cleaned up). With no mention of monitoring, *Dyroff* held that Section 230 barred claims that did not seek removal of third-party content, but premised liability on *recommending* or *notifying* users about such content. *Id.* Courts have also held that Section 230 bars claims for "republishing" third-party content to a different website, *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016); "disseminat[ing] information very quickly" and broadly, *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021); "organizing," "displaying," and "distributing third-party content," *Force v. Facebook, Inc.*, 934 F.3d 53, 66, 70 (2d

Cir. 2019); and delivering content through search results, *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *accord Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016) (website's "structure," "operation," and "design" are publishing), *aff'd*, 881 F.3d 739 (9th Cir. 2018). These rulings wholly refute Plaintiffs' argument.[1]

Section 230's definition of "interactive computer service" confirms the holdings of these cases. That definition specifies that "interactive computer service" includes any "access software provider," 47 U.S.C. § 230(f)(2), which in turn is defined as "a provider of software" or "enabling tools" that, among other things, "allow," "pick," "choose," "analyze," "transmit," "display," "search," "organize," or "reorganize" content, *id.* § 230(f)(4)(A)–(C). The fact that this language is located in a definitional section (Opp. 6) only underscores its importance:  providers that do the very things that Congress included in Section 230 in the first place (such as *picking*, *forwarding*, and *organizing* content) are not, for that very reason, excluded from the statute's scope.

Plaintiffs fail in their attempt to support their atextual reading of Section 230 by quoting various Ninth Circuit opinions out of context. Opp. 4–5. For example, nothing in *Barnes* suggests that Section 230 is limited to claims demanding content removal. *Barnes* held that Section 230 barred a tort claim because that "cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." 570 F.3d at 1101–02. It separately held that a website can be liable in contract where it made a clear and individualized promise to a specific user to remove specific content on its service. *Id.* at 1106–07. Plaintiffs allege nothing comparable here.

The same is true of *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019), which arose from an ordinance prohibiting the acceptance of a fee for short-term rentals of unlicensed properties. *Id.* at 682–83. The ordinance fell outside Section 230 because it did not impose liability for any online property listing or other content. *Id.* Instead, it regulated only defendants' off-platform facilitation of booking transactions for unlicensed real-world properties. *Id.* That bears no resemblance

---

[1] *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022), is not to the contrary and does not suggest different "alignment" among circuits (Opp. 10). *Henderson* makes clear that "publication" includes negligent dissemination of information to third parties, and that Section 230(c)(1)'s publication element is met when a claim: "(1) bases the defendant's liability on the disseminating of information to third parties and (2) imposes liability based on the information's [allegedly harmful] content." *Id.* at 123. That bars Plaintiffs' claims.

to Plaintiffs' claims, which are based on viewing and engaging with user-generated content disseminated on Defendants' services.  Plaintiffs' argument also is not supported by *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008), because the Section 230 analysis there turned on whether the website operator was an "information content provider," *id.* at 1165—an argument Plaintiffs disclaim here (*see* Opp. 9).  *Roommates*' observation that claims based on removal of content are barred does not mean that those are the only claims Section 230 bars.  Indeed, *Roommates* itself recognized that Section 230 protects a website's publication of "provocative" content and actions that "encourage" users to share information.  521 F.3d at 1173–74.

Plaintiffs distort Section 230 by taking out of context (Opp. 6) the statement in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), that the "duty . . . allegedly violated" was "to design a reasonably safe product," which was "fully independent of Snap's role in monitoring or publishing third-party content."  *Id.* at 1093–94.  Plaintiffs ignore the court's explanation of why that was so:  the service did not need to transmit *any content* to others for the speed filter to allegedly induce reckless driving.  *Id.* at 1093.  In contrast, *Lemmon* recognized that where, as here, claims "at bottom, depend[] on a third party's content" no "liability . . . exist[s]."  *Id.* at 1094; *see also id.* 1093 n.4.  That includes claims focused on Defendants' "conduct as a publisher."  Opp. 4 (citing *Lemmon*).  This is why courts have repeatedly held after *Lemmon* that Section 230 bars product liability claims where, as here, the alleged design flaws directly relate to publication of third-party content.  Mot. 4–5.[2]

### 3.    The Priority Claims Would Treat Defendants as Publishers of User Content by Imposing Liability for Their Services' Features That Disseminate Such Content.

Plaintiffs' allegations about purportedly defective features on Defendants' services do not take these cases outside of Section 230.  These features provide access to and engagement with third-party content, and Plaintiffs' feature-based claims depend on Defendants' dissemination of that content.

***Recommendation Algorithms and Content Delivery.***  Plaintiffs contend that their challenge to algorithms that Defendants use to organize or prioritize user content concerns only the algorithms'

---

[2] This also explains why *G.G. v. Salesforce.com, Inc.*, __ F.4th __, 2023 WL 4944015 (7th Cir. Aug. 3, 2023), is of no use to Plaintiffs.  Section 230 did not apply there because "Salesforce was simply not involved in any publishing.  Salesforce's job was, in part, to help Backpage reach more customers," through, for example, "streamlining its business practices."  *Id.* at *17–18 (emphasis omitted).

5

DEFENDANTS' REPLY ISO SUPPLEMENTAL JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY
CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

allegedly being "designed to maximize the duration and intensity of children's usage" by adapting to users' interests based on their "interactions with content." Opp. 11. But that "usage" involves viewing user content, as illustrated by many Master Complaint allegations specifically faulting Defendants' algorithms for recommending allegedly "harmful, "extreme," "dangerous," or "inappropriate" *content*, and that it is such "videos or topics, which . . . hook [Plaintiffs] in." *See*, *e.g.*, MC ¶¶ 130, 267, 523, 591, 597, 600, 602–05, 758. Plaintiffs cannot avoid Section 230 by pointing to allegations about maximizing user engagement. Those allegations are another way of saying that Defendants' features led Plaintiffs to view more or "too much" user-generated content. *See, e.g.*, *M.P. v. Meta Platforms, Inc.*, 2023 WL 4853650, at *1, *3–4 (D.S.C. July 24, 2023) (Section 230 barred claims alleging Facebook's algorithms were "designed to maximize engagement").

Plaintiffs have no answer to binding precedent rejecting similar efforts to evade Section 230. Mot. 6–7. Plaintiffs incorrectly assert that neither *Dyroff* nor *Kimzey* addressed whether claims imposed liability by treating the defendants as publishers. Opp. 9. To the contrary, *Dyroff* expressly held that by using "features and functions, including algorithms, to analyze user posts . . . and recommend[] other user groups," the defendant was "acting as a publisher of others' content." 934 F.3d at 1098 (discussing *Barnes*'s second factor). *Kimzey* emphasized there was "no question" that the plaintiff's claims were "premised on Yelp's publication of [user] statements," 836 F.3d at 1268, in concluding that Section 230 barred claims against Yelp for "disseminating . . . content . . . to a search engine," *id.* at 1270. Moreover, Plaintiffs' suggestion that *Force* is contrary to Ninth Circuit law (Opp. 9–10) is belied by the Ninth Circuit's decision in *Gonzalez v. Google LLC*, 2 F.4th 871, 895–96 (9th Cir. 2021), *vacated*, 143 S. Ct. 1191 (2023), which expressly recognized that Ninth Circuit "precedent require[d] it to "reach the same outcome" as *Force*. That the Supreme Court vacated *Gonzalez* for unrelated reasons does not warrant ignoring the Ninth Circuit's understanding of its own precedent.

**Networking and Messaging Features Abused by Third-Party Wrongdoers.** Courts have repeatedly held that Section 230 bars claims against the same networking and messaging features Plaintiffs challenge here. *See, e.g.*, *L.W. v. Snap Inc.*, 2023 WL 3830365, at *4 (S.D. Cal. June 5, 2023) ("Quick Add" friend recommendations); *Bride v. Snap, Inc.*, 2023 WL 2016927, at *6 (C.D. Cal. Jan. 10, 2023) ("abusive messaging"); *Fields*, 217 F. Supp. 3d at 1128–29 ("Direct Messaging"); *Carafano*

6

1   *v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124–25 (9th Cir. 2003); *Force*, 934 F.3d at 65 (bringing

2   "message[s] to interested parties" falls within "what it means to be [a] 'publisher'").  Plaintiffs do not

3   meaningfully distinguish these cases.  Opp. 8–9.  Citing only *A.M. v. Omegle.com, LLC*, 614 F. Supp.

4   3d 814 (D. Or. 2022), Plaintiffs contend that Section 230 does not bar claims that would impose liability

5   for networking and messaging features that may "match minors and adults."  Opp. 13.  *Omegle* is

6   inapposite because the website there allegedly "randomly pair[ed]" minors and adults in "one-on-one

7   chats," 614 F. Supp. 3d at 817, 821, which is not alleged here.  It is also contrary to the overwhelming

8   weight of authority.  Mot. 8–9.  *Omegle* erroneously concluded that *Lemmon* dictated the result, 614 F.

9   Supp. 3d at 817, even though *Lemmon* did not involve similar features.  *See supra* p. 5.

10      Plaintiffs contend that their claims based on defective age verification and parental controls do

11  not involve third-party content.  Opp. 11–12.  But the allegations regarding these features are

12  inextricably tied to such content.  Plaintiffs claim the features "place children in the pathways of sexual

13  predators," MC ¶ 136, and "can lead to kids connecting with predators," *id.* ¶ 141.  Confronting similar

14  efforts to avoid Section 230 by framing claims as based "solely on [defendants'] failure to implement

15  basic safety measures to protect minors," courts have seen such claims for what they are:  "merely

16  another way of claiming" that Defendants are liable "for publishing . . . communications" between

17  users.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 420–22 (5th Cir. 2008); *see also, e.g.*, *Doe v. Snap, Inc.*,

18  2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022), *aff'd*, 2023 WL 4174061 (5th Cir. June 26, 2023).

19      ***Comments, Likes, and Reactions.***  Plaintiffs claim that they challenge only the timing and

20  manner in which they can share or view comments, likes, and reactions through Defendants' services,

21  and not the content of such communication themselves.  Opp. 13.  This cannot be reconciled with the

22  Master Complaint's allegations that "likes" are perceived as "endorsements," and have "an especially

23  powerful effect on teenagers and can neurologically alter their perception of online posts."  MC ¶ 87.

24  Moreover, Plaintiffs ignore that imposing liability on Defendants for facilitating interactive user

25  communications (*i.e.,* for allowing users to create and share content that engages directly with other

26  content) is contrary to the core coverage of Section 230.  Mot. 10.

27      ***Short-Form Content.***  Plaintiffs cannot dispute that allowing users to submit short-form content

28  is a publication choice (Mot. 10), so instead they contend that such features are unlawful because they

7

"are designed to induce 'flow state'" and "compel use."  Opp. 13.  But this underscores why Section 230 bars these claims.  Plaintiffs do not suggest that a "flow state" is a cognizable harm itself; they use that term to mean that Plaintiffs view more user-generated *content* than they otherwise would.  *See, e.g.*, MC ¶¶ 3, 289, 493, 615, 731.

*Ephemeral and Private Content.*  Plaintiffs' theory about ephemeral and private content is that it allegedly allows CSAM to be posted in ways that are harder to detect and report.  Opp. 13.  Plaintiffs thus concede that any injury they claim from such features is based on Defendants' dissemination of harmful content through those features, and that these claims are therefore barred by Section 230.  *See L.W.*, 2023 WL 3830365, at *4 (ephemerality); *Fields*, 217 F. Supp. 3d at 1128 (private messaging).

*Notifications and Metrics.*  Plaintiffs contend that their claims regarding notifications do not depend on the underlying content, but rather on the notifications alone.  Opp. 13.  This argument departs from the Master Complaint, which alleges that the notifications "draw[] back users who are not presently using" the service, leading to further engagement with the *content* about which they were notified.  MC ¶ 292; *see also id.* ¶¶ 103, 293, 469, 628.  Any theory that notifications facilitate harmful interaction with third-party content is foreclosed by *Dyroff.*  934 F.3d at 1098.

*Filters and Other Effects.*  Plaintiffs contend that they "do not fault Defendants for publishing altered photos," but rather that Plaintiffs were harmed by viewing their own "filtered selfies."  Opp. 12.  The Master Complaint says otherwise:  it expressly alleges that Plaintiffs were harmed by viewing filtered images from other users, including by comparing their appearance to images of "friends and celebrities who use filters."  MC ¶ 652; *see also id.* ¶¶ 88, 110, 315.  That theory would impose liability on Defendants by treating them as publishers of altered photos from users, contrary to Section 230.  *Lemmon*, 995 F.3d at 1093 n.4.  And any theory that Defendants are liable for allowing users to create filtered images is also barred by the First Amendment.  Mot. 19–20.

*Failure to Warn.*  Contrary to Plaintiffs' suggestion (Opp. 13), Defendants' feature-by-feature analysis applies to all product liability claims, whether styled as "design defect" or "failure-to-warn."  Each claim, as alleged, would impose liability on Defendants for harms allegedly caused by the same purported defects.  MC ¶ 864.  Because Plaintiffs' failure-to-warn claims rest on treating Defendants

as the publishers of third-party content, Section 230 bars them.  *L.W.*, 2023 WL 3830365, at *7; *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *1 (C.D. Cal. Nov. 4, 2022).

Plaintiffs incorrectly assert that Defendants "fail[] to cite any appellate cases in support of their [failure-to-warn] argument."  Opp. 13.  But Defendants cited several.  Mot. 4, 18 (citing, *e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd* 765 F. App'x 586 (2d Cir. 2019)).  Ignoring these cases, Plaintiffs rely on *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), but the allegations there were very different.  In *Internet Brands*, an assault victim alleged that a website had a duty to warn that third parties might physically assault her because the website developer had learned, from an outside source, about assailants' scheme to assault women.  *Id.* at 848–49, 853.  There was no relevant third-party content on the defendant's website, and the plaintiff's claim of harm had nothing to do with any such content or online communications with bad actors.  *Id.* at 852.  Courts have correctly distinguished *Internet Brands* where, as here, the "theory of liability is inherently tied to content," *Fields*, 217 F. Supp. 3d at 1126, and have held Section 230 bars failure-to-warn claims, *Herrick*, 765 F. App'x at 586; *Anderson*, 2022 WL 14742788, at *3–4.

**Negligence Per Se.**   Plaintiffs offer no response to Defendants' argument:  that insofar as Plaintiffs seek to use a state-law negligence claim to impose liability for injuries "from use of and exposure to Defendants'" services, MC ¶ 1017, those alleged injuries are from the *content* Plaintiffs viewed on the services.  Section 230 therefore also bars Plaintiffs' negligence per se claim.  Mot. 12.

  **B. The First Amendment Bars All of the Priority Claims.**

  **1. Plaintiffs Cannot Relabel Dissemination of Speech as Mere "Conduct."**

Plaintiffs try to characterize Defendants' facilitation, dissemination, and presentation of user speech as mere "conduct" unprotected by the First Amendment.  Opp. 16, 23.  This defies settled law, which holds that "speech" includes both the "dissemination of information" and "editorial control and judgment."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).  Online service providers like Defendants "are in the business of delivering curated compilations of speech created, in the first instance, by others," and their "decisions about what speech to permit, disseminate, prohibit, and deprioritize . . . fit comfortably within the Supreme Court's

9

editorial-judgment precedents." *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1213–14 (11th Cir. 2022), *pets. filed*, Nos. 22-277, 22-393; *accord O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022), *aff'd sub nom.*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); Mot. 16–17.[3]

Just as with other aspects of website design, *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2318, 2320 (2023), or other forms of speech, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019), the fact that conduct may be involved does not make Defendants' "inherently expressive" determinations about how to disseminate the speech of others any less protected by the First Amendment. *NetChoice*, 34 F.4th at 1213. The Ninth Circuit has rejected similar efforts to use the label of "conduct" to disaggregate speech from the processes used to generate it. *E.g.*, *Project Veritas v. Schmidt*, 72 F.4th 1043, 1054–56 (9th Cir. 2023); *accord Green v. Miss USA, LLC*, 52 F.4th 773, 780 (9th Cir. 2022) ("Picketing is accompanied by the conduct of holding a placard; leafleting is accompanied by the conduct of standing on a sidewalk . . . . Calling it something other than speech does not make it so." (citation omitted)).

Plaintiffs are equally wrong to suggest that "the right to editorial discretion" is only "a protection against compelled speech by the government." Opp. 21. *Tornillo* makes clear that the right not to speak is the mirror image of the right to speak. 418 U.S. at 256. Just as Florida could not compel the Miami Herald to print a candidate's response to an editorial criticizing him, the state could not have awarded damages against the newspaper for publishing that editorial in the first place—or for placing it on the front page rather than somewhere else. *Id.* at 258. The right to editorial discretion is an important manifestation of the general First Amendment "right to tailor . . . speech," the purpose of which is "to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573–74 (1995).

Plaintiffs' cryptic argument that Defendants' dissemination of speech is unprotected because it relies on computer code mangles the only case they cite. Opp. 24–25 (citing *Universal City Studios,*

---

[3] In a passing footnote (Opp. 22 n.15), Plaintiffs mention (but do not endorse) the Fifth Circuit's outlier decision in *NetChoice, LLC v. Paxton*, 49 F.4th 439 (5th Cir. 2022), which has been stayed by the Supreme Court. 142 S. Ct. 1715 (2022). While Defendants believe *Paxton* is wrong, that case involved a statute that limited websites' ability to remove or restrict content—not the First Amendment implications of holding websites civilly liable for disseminating protected speech.

10

DEFENDANTS' REPLY ISO SUPPLEMENTAL JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY
CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

*Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)).  Plaintiffs ignore *Corley*'s express holding that "computer programs constructed from code can merit First Amendment protection."  273 F.3d at 446–49; *accord United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1126 (N.D. Cal. 2002).  And unlike *Corley*, which involved the content-neutral regulation of code used to circumvent encryption, Plaintiffs seek to hold Defendants liable not for making illegal source code available, but for the information (*i.e.*, the user speech) they disseminate through their services.  The "conveying of information" is speech, including when facilitated by software.  *Corley*, 273 F.3d at 447–48.

Plaintiffs also suggest that even if their claims have "incidental effects" on speech, they satisfy constitutional scrutiny because "safeguarding the physical and psychological well-being of a minor is [a] compelling" state interest.  Opp. 20–21.[4]  But the burden on disseminating speech here is anything but incidental (*infra* pp. 12–13)—and, as courts have explained in rejecting similar efforts to apply tort law to speech deemed harmful to minors (Mot. 23–25), there is no "free-floating power to restrict the ideas to which children may be exposed," *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011).

### 2. Product Liability Labels Do Not Evade the First Amendment.

Plaintiffs argue that their claims are about "the design of the product that contains the content," or the failure to warn about such design, not about "the right to include or exclude any content."  Opp. 22.  But Plaintiffs cannot evade the First Amendment with labels, and they have no persuasive response to the numerous cases holding that the First Amendment bars product liability claims based on the allegedly harmful effects of speech.  Mot. 15, 18.  Plaintiffs try to cabin these cases to situations "where the plaintiffs allegedly sought to hold speakers liable for expressing dangerous ideas" or "where defendants would have to alter what was expressed to avoid liability."  Opp. 17–18 & n.11.[5]  While

---

[4] Plaintiffs' invocation of intermediate scrutiny is misplaced.  Courts do not generally use the tiers of scrutiny analysis in evaluating tort claims that premise liability on protected speech.  *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011); *James v. Meow Media, Inc.*, 300 F.3d 683, 696–97 (6th Cir. 2002); *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 999–1003 (1988).  But even under that framework, strict scrutiny would apply.  *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1280 (D. Colo. 2002).  Plaintiffs' claims depend on the content of the material they viewed, and content-based speech regulation is "presumptively unconstitutional."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

[5] Despite Plaintiffs' suggestion (Opp. 17 & n.10), *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802 (S.D. Tex. 1983), involved very similar claims: "negligent publication and strict liability" allegations that a

---

11

1    this purported limit is artificial, that is exactly what Plaintiffs' claims would do.  *Supra* pp. 2–3, 5–9;

2    Mot. 6–7, 15–18.

3          Plaintiffs cannot obtain a different result by claiming that features Defendants use to manage

4    content are "defective."  Plaintiffs largely ignore Defendants' feature-by-feature analysis showing that

5    those features are the means by which Defendants disseminate and facilitate user speech.  Mot. 18–21.

6    Nor can Plaintiffs backpedal from their own allegations that users were allegedly harmed not by

7    Defendants' features in a vacuum, but by the speech those features disseminated or facilitated.  *Supra*

8    p. 2; MC ¶¶ 88, 110, 315, 652.  As discussed, Plaintiffs' asserted injuries presuppose that certain speech

9    they viewed or were prompted to create—because of recommendations, notifications, ephemeral

10   messaging, short-form communications, and the rest—was harmful, whether because it encouraged

11   social comparisons (MC ¶ 114), promoted unrealistic beauty standards (*id.* ¶ 316), encouraged risky

12   behavior (*id.* ¶ 126), or simply was "excessive" (*id.* ¶ 351).

13         Plaintiffs' priority claims thus do not target Defendants' services as incidental "containers" of

14   speech—as with hypothetical cases involving dirty tattoo needles or designs that make books

15   physically dangerous to hold.  Opp. 23–24.  Instead, Plaintiffs allege that Defendants' services and

16   features are "defective" precisely because of *how they present or incentivize user speech*—by allegedly

17   making certain speech (or speech generally) more engaging, prominent, or interesting.  Mot. 6–11, 18–

18   21; *e.g.*, MC ¶ 87.  Giving such claims a product liability label does not make them any less about

19   speech or exempt them from the First Amendment.

20         That is no less true insofar as Plaintiffs suggest that Defendants' features made the underlying

21   speech more dangerous.  That framing only underscores that Plaintiffs would impose liability on the

22   dissemination of speech *because of* the alleged propensity of that speech to harm certain people.  The

23   First Amendment bars such claims, no matter who or what supposedly made the speech harmful.  For

24   example, Plaintiffs accept that the First Amendment bars claims against a movie studio for releasing a

25   "dangerous" movie that leads to violence by viewers.  *E.g.*, *Bill v. Super. Ct.*, 137 Cal. App. 3d 1002,

26   _____

27   magazine article was a "dangerous instrumentality or a defective, unreasonably dangerous product."
     After those claims were dismissed on First Amendment grounds, *id.* at 803, the Fifth Circuit rejected
28   an effort to resurrect them with allegations about incitement.  814 F.2d 1017, 1024 (5th Cir. 1987).

1011–12 (1982).  But the same protections would apply to claims against a *movie theater* for showing an otherwise innocuous movie "too many" times, thereby encouraging compulsive viewing.  Likewise, just as a library cannot be liable for furnishing books deemed "harmful" to minors, *Fayetteville Pub. Libr. v. Crawford Cnty.*, __ F. Supp. 3d __, 2023 WL 4845636, at *21 (W.D. Ark. July 29, 2023), that library cannot be liable for allegedly causing harmful addiction by challenging teens to read as many books as possible in a month or recommending certain titles, *accord Sorrell*, 564 U.S. at 577–78.

Plaintiffs thus are doubly mistaken in asserting that "Defendants could avoid tort liability by abandoning their unsafe designs, while leaving up the same content."  Opp. 20.  If their claims were content-agnostic, the Master Complaint would look very different.  And even if avoiding liability would not require *removal* of content, the First Amendment protects more than just the binary decision to publish or remove.  It also protects decisions about how to disseminate, present, and arrange speech—exactly what Plaintiffs' claims allege are tortious.  Relief for Plaintiffs' idea of "unsafe designs" would, at minimum, require Defendants to:  (1) prevent certain content from being presented to certain users; (2) stop informing users about speech that may interest them; (3) bar users from reacting to speech; and (4) prevent users from editing or creating speech with Defendants' features.  Mot. 18–21.  Far from avoiding the First Amendment, this confirms that Plaintiffs' claims are barred by it.

Unsurprisingly, Plaintiffs identify no case in which a court has allowed product liability claims predicated on the dissemination of protected speech.  Opp. 19.  *Allen v. American Cyanamid*, 527 F. Supp. 3d 982 (E.D. Wis. 2021), and *Burton v. E.I. du Pont de Nemours & Co.*, 994 F.3d 791 (7th Cir. 2021), involved the manufacture and sale of lead paint.  The only First Amendment issue was whether defendants' advertising and lobbying activities related to the sale of the paint were admissible as *evidence*.  Here, in contrast, "protected activity itself is the basis for liability."  *Burton*, 994 F.3d at 831.  Insofar as *Martinez v. Metabolife International, Inc.*, 113 Cal. App. 4th 181 (2003), involved speech at all, it was misleading *commercial* speech, which is not at issue here.  And *City of Annapolis v. BP PLC*, 2022 WL 4548226 (D. Md. Sept. 29, 2022), which concerned harms caused by fossil fuels, held only that the First Amendment did not create *federal jurisdiction* authorizing removal.

Courts also have not hesitated to apply the First Amendment to bar failure-to-warn claims.  *Bill*, 137 Cal. App. 3d at 1007; *Watters v. TSR, Inc.*, 715 F. Supp. 819, 822 n.1 (W.D. Ky. 1989).  Plaintiffs

13

cite *In re Factor VIII or IX Concentrate Blood Products Litigation*, 25 F. Supp. 2d 837 (N.D. Ill. 1998), but that case arose from misleading omissions by an expert body "concerning the safety of medical products," which the court explained made it indistinguishable from a medical malpractice action. *Id.* at 845. In that context, the court found that imposing a duty to warn hemophiliacs about the risk of AIDS was not "compelled speech." *Id.* at 848 n.13. Here, in contrast, the problem is what *triggers* Plaintiffs' asserted duty to warn—alleged dangers of the protected user speech Defendants disseminate and features that help users create and access such speech. As in *Bill*, the First Amendment bars such claims. *Cf. Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037–38 (9th Cir. 1991) ("We will not introduce a duty we have just rejected by renaming it a 'mere' warning label.").

### 3.    Tort Claims of "General Applicability" That Burden Protected Speech Are Barred by the First Amendment.

Plaintiffs are similarly wrong to suggest that the First Amendment does not bar their tort claims because they are based on "the application of general laws." Opp. 16. That tort law can be described as generally applicable is no impediment to First Amendment protection when such claims target protected speech. Mot. 14–16, 24–25; *accord NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 891–92, 915 (1982) (malicious interference and antitrust claims); *James*, 300 F.3d at 697 ("[U]nder the concept of negligence, there is no room for evaluating the value of the speech itself.").

Plaintiffs' cases do not suggest otherwise. *Weirum v. RKO General, Inc.*, 15 Cal. 3d 40 (1975), allowed a negligence claim against a radio station that "actively and repeatedly encouraged listeners" to drive at recklessly unsafe speeds to win a contest. *McCollum*, 202 Cal. App. 3d at 1005 (describing "reckless importuning" in *Weirum* "as a specie of incitement to imminent lawless conduct for which no First Amendment protection is justified"). Later cases clarify that *Weirum* "limited its holding to the facts of the case," and they expressly rejected the idea that it authorized broad-based negligence claims against publication of allegedly dangerous speech. *Winter*, 938 F.2d at 1037 n.8; *accord Olivia N. v. Nat'l Broad. Co.*, 126 Cal. App. 3d 488, 496 (1981). Here, Plaintiffs do not seek to hold Defendants liable for statements they made actively inciting users to engage in activities likely to cause immediate physical danger, they instead challenge Defendants' role in making protected third-party speech more available and engaging. And, as the Ninth Circuit explained, a "publisher's role in

14

bringing ideas and information to the public bears no resemblance to the *Weirum* scenario." *Winter*, 938 F.2d at 1037 n.8.

     *Clift v. Narragansett Television LP*, 688 A.2d 805 (R.I. 1996), is similarly inapposite.  Applying Rhode Island law, the court adopted the "uncontrollable impulse rule"—a targeted negligence doctrine that addresses the limited circumstances in which suicide might *not* break a causal chain.  *Id.* at 806–07; *see also id.* at 811.  First Amendment considerations led the Court to refuse to expand proximate causation doctrine to permit "recovery for a suicide alleged to have been negligently caused beyond the uncontrollable impulse rule."  *Id.* at 806–07.  That holding has no bearing on Defendants' argument here.  Moreover, *Clift* elsewhere recognized that the First Amendment barred a more general negligence claim against a television station for airing a dangerous stunt that caused a minor accidentally to take his life.  *Id.* at 810–11 (discussing *DeFilippo v. Nat'l Broad. Co.*, 446 A.2d 1036 (R.I. 1982)); *see* MC ¶¶ 125–132.[6]

     Finally, Plaintiffs suggest that this issue is not susceptible to resolution on the pleadings.  But the First Amendment confers a right "not just to speak, but to be free of protracted speech-chilling litigation," *Green*, 52 F.4th at 793; and it has repeatedly been applied to dismiss similar claims without discovery (Mot. 15).  So too here, "it is clear from the face of the complaint that the claim is barred."  Opp. 25.  Plaintiffs point to no factual development that would be relevant to this issue, and they ignore that "speedy resolution of cases involving free speech is desirable."  *DC Comics*, 30 Cal. 4th at 891; *accord McCollum*, 202 Cal. App. 3d at 1002–03 (rejecting similar argument).  Any other result would have a "seriously chilling effect on the flow of protected speech through society's mediums of communication."  *Walt Disney Prods., Inc. v. Shannon*, 276 S.E. 2d 580, 583 (Ga. 1981).

### III.     CONCLUSION

     Defendants respectfully request that Plaintiffs' priority claims be dismissed with prejudice.

---

[6] Neither *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991) (First Amendment does not prohibit enforcement of non-disclosure agreement), nor *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) (First Amendment does not bar right of publicity claim alleging "appropriation" of a performer's "entire act"), suggests any rule that general tort claims are outside the First Amendment.  *E.g.*, *Winter v. DC Comics*, 30 Cal. 4th 881, 891 (2003) (First Amendment barred right of publicity claim).  And Plaintiffs' claims here do not involve contract or intellectual property rights.

15

DEFENDANTS' REPLY ISO SUPPLEMENTAL JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

Dated: August 15, 2023                           Respectfully submitted,


                                                  **COVINGTON & BURLING LLP**

                                                  */s/ Beth S. Brinkmann*

                                                  Beth S. Brinkmann (State Bar No. 129937)
                                                    bbrinkmann@cov.com
                                                  Mark W. Mosier, *pro hac vice*
                                                    mmosier@cov.com
                                                  Paul W. Schmidt, *pro hac vice*
                                                    pschmidt@cov.com
                                                  Phyllis A. Jones, *pro hac vice*
                                                    pajones@cov.com
                                                  COVINGTON & BURLING LLP
                                                  One CityCenter
                                                  850 Tenth Street, NW
                                                  Washington, DC 20001
                                                  Telephone: + 1 (202) 662-6000
                                                  Facsimile: + 1 (202) 662-6291

                                                  Emily Johnson Henn (State Bar No. 269482)
                                                    ehenn@cov.com
                                                  COVINGTON & BURLING LLP
                                                  3000 El Camino Real
                                                  5 Palo Alto Square, 10th Floor
                                                  Palo Alto, CA 94306
                                                  Telephone: + 1 (650) 632-4700
                                                  Facsimile: +1 (650) 632-4800

                                                  *Attorneys for Defendants Meta Platforms, Inc.*
                                                  *f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
                                                  *Facebook Operations, LLC; Facebook Payments,*
                                                  *Inc.; Facebook Technologies, LLC; Instagram,*
                                                  *LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

1

**KING & SPALDING LLP**

2

*/s/ Geoffrey M. Drake*

3

Geoffrey M. Drake, *pro hac vice*
  gdrake@kslaw.com

4

Albert Q. Giang (State Bar No. 224332)
  agiang@kslaw.com

5

David Mattern, *pro hac vice*
  dmattern@kslaw.com

6

King & Spalding LLP

7

1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309

8

Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

9

10

**FAEGRE DRINKER LLP**

11

*/s/ Andrea Roberts Pierson*

12

Andrea Roberts Pierson, *pro hac vice*
  andrea.pierson@faegredrinker.com

13

Amy Fiterman, *pro hac vice*
  amy.fiterman@faegredrinker.com

14

Faegre Drinker LLP

15

300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204

16

Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000

17

18

*Attorneys for Defendants TikTok Inc., ByteDance*

19

*Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC*

20

**MUNGER, TOLLES & OLSON LLP**

21

22

*/s/ Jonathan H. Blavin*

Jonathan H. Blavin (State Bar No. 230269)

23

  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP

24

560 Mission Street, 27th Floor

25

San Francisco, CA  94105
Telephone: + 1 (415) 512-4000

26

Facsimile: + 1 (415) 512-4077

27

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com

28

Victoria A. Degtyareva (State Bar No. 284199)

17

Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
 Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071
Telephone: + 1 (213) 683-9100
Facsimile: + 1 (213) 687-3702

Lauren A. Bell, *pro hac vice*
 Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001
Telephone: + 1 (202) 220-1100
Facsimile: + 1 (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

 */s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
Wilson Sonsini Goodrich & Rosati
 bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: + 1 (212) 999-5800
Facsimile: + 1 (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
Wilson Sonsini Goodrich & Rosati
 lwhite@wsgr.com
Andrew Kramer (State Bar No. 321574)
 akramer@wsgr.com
Carmen Sobczak (State Bar No. 342569)
 csobczak@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: + 1 (415) 947-2000
Facsimile: + 1 (415) 947-2099

Christopher Chiou (State Bar No. 233587)
Wilson Sonsini Goodrich & Rosati
 cchiou@wsgr.com

18

Samantha Machock (State Bar No. 298852)
 smachock@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
 mdonohue@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071
Telephone: + 1 (323) 210-2900
Facsimile: + 1 (866) 974-7329

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

DEFENDANTS' REPLY ISO SUPPLEMENTAL JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY
CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR

1

## ATTESTATION

2    I, Beth S. Brinkmann, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence

3    to the filing of this document has been obtained from each signatory hereto.

4

5    DATED:          August 15, 2023          By:   */s/ Beth S. Brinkmann*
                                                    Beth S. Brinkmann
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY ISO SUPPLEMENTAL JOINT MOTION TO DISMISS PLAINTIFFS' PRIORITY
CLAIMS ASSERTED IN AMENDED MASTER COMPLAINT — CASE NO. 4:22-MD-03047-YGR