Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*
*Facebook, Inc.; Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook Payments, Inc.;*
*Facebook Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-TSH<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br><br>**Hearing:**<br>Date:    TBD<br>Time:    TBD<br>Place:   Oakland, California<br>Judge:  Hon. Yvonne Gonzalez Rogers |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined in accordance with the Court's Case Management Order No. 5 (Dkt. 164), before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street in Oakland, California, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, Siculus, Inc., and Mark Elliot Zuckerberg; TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC; Snap Inc.; and YouTube, LLC, Google LLC, and Alphabet Inc. (each a "Defendant," and collectively the "Defendants"), will and hereby do move this Court, under 28 U.S.C. § 1292(b), for an order certifying the Court's November 14, 2023 Order Granting in Part and Denying in Part Motions to Dismiss (Dkt. 430) for interlocutory review.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any Reply Memorandum or other papers submitted in connection with the Motion, the Amended Master Complaint (Personal Injury) (Dkt. 234-1), Defendants' Joint Motion to Dismiss (Dkt. 237) and the Reply in Support of Defendants' Joint Motion to Dismiss (Dkt. 323), Defendants' Supplemental Joint Motion to Dismiss (Dkt. 320), and the Reply in Support of Defendants' Supplemental Joint Motion to Dismiss (Dkt. 353), all other pleadings and papers on file in this action, any matter of which this Court may properly take judicial notice, and any information presented at argument.

DATED:      December 12, 2023          By:   */s/ Phyllis A. Jones*
                                                     Phyllis A. Jones

*Attorneys for Defendants Meta Platforms,*
*Inc. f/k/a Facebook, Inc.; Facebook*
*Holdings, LLC; Facebook Operations, LLC;*
*Facebook Payments, Inc.; Facebook*
*Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................................... i

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 3

III.   ARGUMENT ............................................................................................................. 5

       A.     The Order Involves Controlling Questions of Law. ............................................ 6

       B.     Substantial Grounds Exist for Difference of Opinion ......................................... 8

              1.     There Is Substantial Ground for Difference of Opinion on Whether the
                     Failure-to-Warn Claims Are Barred by Section 230 or the First
                     Amendment. ......................................................................................... 8

              2.     There Is Substantial Ground for Difference of Opinion on Whether the
                     First Amendment Bars Plaintiffs' Challenges to Age Verification and
                     Parental Controls. .............................................................................. 12

              3.     There Is Substantial Ground for Difference of Opinion on Whether
                     Plaintiffs' Priority Product Liability Claims Fail Because Defendants
                     Do Not Offer "Products." ................................................................... 15

       C.     Interlocutory Review May Materially Advance the Ultimate Termination of the
              Litigation. ....................................................................................................... 18

IV.    CONCLUSION ........................................................................................................ 20

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003)........................................................................................... 14

*ACLU v. Mukasey*,
534 F.3d 181 (3d Cir. 2008)........................................................................................... 13

*Alario v. Knudsen*,
2023 WL 8270811 (D. Mont. Nov. 30, 2023) ................................................................. 1

*Anderson v. TikTok, Inc.*,
637 F. Supp. 3d 276 (E.D. Pa. 2022) ............................................................................ 10

*Barnes v. Yahoo!, Inc.*,
570 F. 3d 1096 (9th Cir. 2009)........................................................................................ 9

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................................................................ 6

*Bill v. Superior Court*,
137 Cal. App. 3d 1002 (1982).......................................................................................11

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) .......................................................... 8, 15

*Bride v. Snap Inc.*,
2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ........................................................... 9, 10

*Brown v. Entertainment Merchants Association*,
564 U.S. 786 (2011) ...................................................................................................... 14

*Burghart v. South Correctional Entity*,
2023 WL 1766258 (W.D. Wash. Feb. 3, 2023) ............................................................ 16

*Carden v. Gen. Motors Corp.*,
509 F.3d 227 (5th Cir. 2007).......................................................................................... 10

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001)........................................................................................... 3

*Coleman v. Medtronic, Inc.*,
223 Cal. App. 4th 413 (2014)......................................................................................... 20

*DeLuca v. Farmers Ins. Exch.*,
2019 WL 4260437 (N.D. Cal. Sept. 9, 2019) ................................................................ 18

*Doe v. Internet Brands*,
    824 F.3d 846 (9th Cir. 2016) ................................................................................... 10, 11

*Doe v. Twitter*,
    2023 WL 3220912 (9th Cir. May 3, 2023) ....................................................................... 2, 6

*Dukes v. Wal-Mart Stores, Inc.*,
    2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) ...................................................................... 19

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ....................................................................................... 5, 6

*Free Speech Coal., Inc. v. Colmenero*,
    2023 WL 5655712 (W.D. Tex. Aug. 31, 2023) ...................................................................... 13

*Gallion v. United States*,
    772 F. App'x 604 (9th Cir. 2019) ....................................................................................... 2

*Gillespie v. Centerra Servs. Int'l, Inc.*,
    2022 WL 18584762 (C.D. Cal. Oct. 26, 2022) ...................................................................... 18

*Green v. Miss United States of Am., LLC*,
    52 F.4th 773 (9th Cir. 2022) ............................................................................................ 6

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ..................................................................................... 9, 11

*Hill v. Henderson*,
    195 F.3d 671 (D.C. Cir. 1999) .......................................................................................... 19

*Hodgkins ex rel. Hodgkins v. Peterson*,
    355 F.3d 1048 (7th Cir. 2004) .......................................................................................... 13

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ........................................................................................... 18

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    625 F. Supp. 3d 971 (N.D. Cal. 2022) ...................................................................... 6, 19, 20

*In re Blue Cross Blue Shield Antitrust Litig.*,
    2018 WL 3326850 (N.D. Ala. June 12, 2018) ...................................................................... 19

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) ........................................................................................... 6

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
    2007 WL 1302496 (N.D. Cal. May 2, 2007) ................................................................... 3, 19

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
    691 F.2d 1335 (9th Cir. 1982) ........................................................................................... 3

iv

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021) ............................................................................................ 2, 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
    427 F.Supp.3d 374 (S.D.N.Y. 2019) ................................................................................ 19

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) ................................................................................. 20

*In re Multidistrict Vehicle Air Pollution*,
    481 F.2d 122 (9th Cir. 1973) ........................................................................................... 19

*In re Paris Air Crash*,
    622 F.2d 1315 (9th Cir. 1980) ........................................................................................... 3

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*,
    2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ........................................................... *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales & Prod. Liab. Litig.*,
    2 F.4th 1199 (9th Cir. 2021) .............................................................................................. 3

*Interactive Digit. Software Ass'n v. St. Louis Cnty., Mo.*,
    329 F.3d 954 (8th Cir. 2003) ........................................................................................... 14

*J.B. v. G6 Hospitality, LLC*,
    2021 WL 6621068 (N.D. Cal. Dec. 16, 2021) ................................................................... 6

*Jackson v. Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ....................................................................... 16, 17

*Jaco v. WinCo Holdings, Inc.*,
    2019 WL 2615739 (E.D. Cal. June 26, 2019) ................................................................. 18

*James v. Meow Media, Inc.*,
    300 F. 3d 683 (6th Cir. 2002) ......................................................................................... 15

*Klem v. Cnty. of Santa Clara*,
    1998 WL 440425 (N.D. Cal. July 9, 1998) ..................................................................... 17

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ............................................................................................... 7

*L.W. v. Snap Inc.*,
    __ F. Supp. 3d __, 2023 WL 3830365 (S.D. Cal. June 5, 2023) ................................. 10, 11

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) .................................................................................... 16, 17

*Meeker v. Belridge Water Storage Dist.*,
    2007 WL 781889 (E.D. Cal. Mar. 13, 2007) ..................................................................... 8

*Nat'l Ass'n of African Am.-Owned Media v. Charter Comm'ns, Inc.*,
2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ................................................... 6, 7

*NetChoice, LLC v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022) ................................................................. 1

*NetChoice, LLC v. Bonta*,
2023 WL 6135551, (N.D. Cal. Sept. 18, 2023) ................................... 1, 12, 13, 14

*NetChoice, LLC v. Griffin*,
2023 WL 5660155, (W.D. Ark. Aug. 31, 2023) ................................. 1, 12, 13, 14

*NetChoice, LLC v. Paxton*,
573 F. Supp. 3d 1092 (W.D. Tex. 2021) ........................................................ 1

*Olivia N. v. Nat'l Broad. Co.*,
126 Cal. App. 3d 488 (1981) ...................................................................... 11

*People ex rel. Allstate Ins. Co. v. Weitzman*,
107 Cal. App. 4th 534 (2003) .................................................................... 20

*Pirani v. Slack Techs., Inc.*,
2020 WL 7061035 (N.D. Cal. June 5, 2020) ................................................ 17

*Plaskett v. Wormuth*,
18 F.4th 1072 (9th Cir. 2021) ..................................................................... 6

*Quinteros v. InnoGames*,
2022 WL 898560 (W.D. Wash. Mar. 28, 2022) .......................................... 16

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......................................................... 7, 8, 16, 19

*Reno v. ACLU*,
521 U.S. 844 (1997) ........................................................................... 13, 14

*Roberts v. AT&T Mobility LLC*,
2016 WL 3476099 (N.D. Cal. June 27, 2016) ............................................... 6

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ..................................... 7, 18, 19

*Roth v. Foris Ventures, LLC*,
2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ...................................... 6, 15

*Sanders v. Acclaim Entm't, Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002) ....................................................... 11

*Silbersher v. Allergan Inc.*,
2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ......................................... 19, 20

vi

*Su v. Siemens Indus., Inc.*,
  2014 WL 2600539 (N.D. Cal. June 10, 2014) ........................................................... 7

*Turner v. Chevron U.S.A., Inc.*,
  2008 WL 4570271 (C.D. Cal. Oct. 14, 2008) ......................................................... 10

*United States v. Real Prop. & Improvements Located at 2441 Mission St.*,
  2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ......................................................... 15

*Virgil v. Time, Inc.*,
  527 F.2d 1122 (9th Cir. 1975) ................................................................................. 6

*Volokh v. James*,
  656 F. Supp. 3d 431 (S.D.N.Y. 2023) ..................................................................... 1

*Watters v. TSR, Inc.*,
  715 F. Supp. 819 (W.D. Ky. 1989) ........................................................................ 11

*Westlands Water Dist. v. Amoco Chem. Co.*,
  953 F.2d 1109 (9th Cir. 1991) ............................................................................. 2, 6

*Williams v. Alameda Cnty.*,
  657 F. Supp. 3d1250 (N.D. Cal. 2023) .................................................................... 7

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................ *passim*

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................. *passim*

47 U.S.C. § 230 ................................................................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts (1965) ............................................................................ 6

Restatement (Third) of Torts: Prods. Liab. (1998) ............................................... 16, 17

16 Wright & Miller, *Federal Practice & Procedure* § 3929 (3d ed. Apr. 2023 Update) ............ 19

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) its November 14, 2023, Order Granting in Part and Denying in Part Motions to Dismiss (Dkt. 430), given the substantial grounds for difference of opinion on the following controlling questions of law:

1. Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230, or the First Amendment bar claims for failure to warn of an alleged design defect where claims targeting the same underlying alleged defective design are barred.

2. Whether the First Amendment bars claims that Defendants' services are defective because they lack "robust age verification" and "effective parental controls."

3. Whether Defendants' services (or certain features of their services) constitute "products" for purposes of product liability law.

## I.     INTRODUCTION

"[T]hese proceedings implicate novel questions of law, including the applicability of products liability torts to the digital world." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2023 WL 7524912, at *20 (N.D. Cal. Nov. 14, 2023) (Dkt. 430).  Defendants agree and respectfully ask the Court to certify for interlocutory review its November 14, 2023 Order.

Defendants operate online services that permit users to create, disseminate, and view content. Courts repeatedly have held that Section 230 bars claims, including failure-to-warn claims, based on many of the same features of Defendants' services at issue here.  Likewise, in the last two years alone, federal courts in at least six states (including a court in this District) have enjoined laws restricting online speech, including through requiring age verification and parental control features, on constitutional grounds.[1]  And many courts have reached conflicting decisions when weighing the application of product liability law to internet platforms, with most courts—including the California

---

[1] Courts have enjoined laws in Arkansas, California, Florida, Montana, New York, and Texas.  *See NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1203–04, 1210 (11th Cir. 2022) (Florida); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *12–15, 18–21 (W.D. Ark. Aug. 31, 2023) (Arkansas); *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1105–16 (W.D. Tex. 2021) (Texas); *Volokh v. James*, 656 F. Supp. 3d 431, 443–46 (S.D.N.Y. 2023) (New York); *NetChoice, LLC v. Bonta*, 2023 WL 6135551, at *10–18 (N.D. Cal. Sept. 18, 2023) (California); *Alario v. Knudsen*, 2023 WL 8270811, at *8–11 (D. Mont. Nov. 30, 2023) (Montana).

state court in the parallel Judicial Council Coordination Proceeding ("JCCP")—reaching a decision opposite from the one reached in the November 14, 2023 Order.  These critically important issues warrant interlocutory appellate review, both to speed resolution of this MDL proceeding and to vindicate the protections for publishing activity that Congress contemplated and the First Amendment demands.

The Court's Order satisfies the requirements of 28 U.S.C. § 1292(b) for many of the same reasons that other courts in this district have certified similar issues for review.  Indeed, the Ninth Circuit has repeatedly granted interlocutory review to address the scope of Section 230, First Amendment defenses, and threshold issues of state law.  *E.g.*, *Doe v. Twitter*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023) (reviewing order granting motion to dismiss in part based upon Section 230); *Gallion v. United States*, 772 F. App'x 604, 605 (9th Cir. 2019) (reviewing order denying motion for judgment on the pleadings based upon First Amendment challenge); *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1110–11 (9th Cir. 1991) (state law issue implicating products liability law).

*First*, the Order involves controlling questions of law.  An immediate appeal of the Court's Section 230 and First Amendment rulings could substantially streamline the proceedings by narrowing or resolving altogether the claims in hundreds of actions pending in this MDL.  And an immediate appeal of the product liability issues could dispose of all of the product liability claims.

*Second,* there is "substantial ground for difference of opinion" concerning these questions. While this Court held that Plaintiffs' failure-to-warn claims can proceed for "any and all of the alleged defects," *In re Soc. Media*, 2023 WL 7524912, at *16, "the unanimous view" of other courts that have confronted such claims is that they "are barred by section 230" because they "seek to hold [Defendants] liable for failing to protect Plaintiffs from third-party users on the site."  *In re Facebook, Inc.*, 625 S.W.3d 80, 94 (Tex. 2021) (listing cases).  The Court also held that the First Amendment does not bar claims that Defendants' platforms are defective for not using robust age verification and effective parental controls, but several other trial and appellate courts have held that such requirements violate the First Amendment.  And whether Defendants' services (or particular features of those services) constitute "products" presents a novel question on which courts have reached different results— including the JCCP court considering nearly identical allegations.  *Soc. Media Cases*, 2023 WL

6847378, at *15 (Cal. Super. Ct. Oct. 13, 2023).  All of these questions warrant review under Section 1292(b).

*Third*, certification here is likely to advance the ultimate termination of the litigation by avoiding time-consuming discovery, motion practice, and a potential trial on issues that the Ninth Circuit reasonably could conclude warrant dismissal at the pleading stage.  Because interlocutory review can avoid or streamline costly proceedings, courts have recognized that Section 1292(b) review is "particularly appropriate in the context of MDL proceedings," *In re Cintas Corp. Overtime Pay Arb. Litig.*, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007), and the Ninth Circuit has granted Section 1292(b) review in MDL cases—including petitions at the pleading stage.  *E.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales & Prod. Liab. Litig.*, 2 F.4th 1199, 1203 (9th Cir. 2021); *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1339 (9th Cir. 1982); *In re Paris Air Crash*, 622 F.2d 1315, 1317 (9th Cir. 1980).

Defendants respectfully ask the Court to certify its ruling for appeal to the Ninth Circuit.[2]

## II.    BACKGROUND

On February 14, 2023, Plaintiffs filed their Master Complaint alleging eighteen causes of action (Dkt. 136, *amended*, Dkt. 234–1), and they selected five "priority" claims, *see* Dkt. 131, Notice of Priority Claims 1, to be the subject of Defendants' joint motions to dismiss, *see* Dkt. 237, Defs.' Joint Motion to Dismiss ("Mot.") & Dkt. 320, Defs.' Joint Supplemental Motion to Dismiss ("Suppl. Mot."). Plaintiffs selected four product liability claims, alleging harm from purported "design" defects and failure to warn about those alleged design defects, and one claim for negligence per se alleging violation of two federal statutes.

Defendants moved to dismiss Plaintiffs' priority claims for three main reasons.

---

[2] Alternatively, the Court may exercise its inherent discretion to reconsider any part of its motion to dismiss order.  *See* Fed. R. Civ. P. 54(b) ("any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation omitted) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

*First*, Defendants argued that Section 230 of the Communications Decency Act, 47 U.S.C. § 230, provides immunity from claims—including design defect and failure to warn—that would treat Defendants as "publishers" of third-party content available on Defendants' services.  Plaintiffs' design defect claims failed because Plaintiffs' alleged harm depended on Defendants' publishing activities as to user-generated content, *e.g.*, Suppl. Mot. 6, and because Plaintiffs' failure-to-warn claims rested on the same alleged defects, they too were barred, Suppl. Mot. 4.  As Defendants explained, "'every published decision' has rejected efforts to evade Section 230 by recasting claims based on user content as based on a service's failure to 'warn' or 'protect' users 'from the dangers posed by its [supposed] products.'"  Suppl. Mot. 4 (citing *In re Facebook, Inc.*, 625 S.W.3d at 93–95; *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009)).  And Defendants similarly explained that "Plaintiffs' claim that Defendants failed to warn users . . . is 'intertwined with Defendants' publishing activities and related allegations that they failed to monitor and edit third-party content," and thus must be rejected under Section 230.  Suppl. Mot. 9 (citing *L.W. v. Snap Inc.*, __ F. Supp. 3d __, 2023 WL 3830365, at *8 (S.D. Cal. June 5, 2023)); *see also* Dkt. 353, Defs.' Reply in Support of Joint Supplemental Motion to Dismiss ("Suppl. Mot. Reply") 8–9 ("Failure to Warn" discussion).

*Second*, Defendants argued that the First Amendment barred Plaintiffs' priority claims because those claims ran afoul of Defendants' right to exercise editorial discretion over third-party content, as well as regulated Defendants' own speech, on their services.  *Third*, Defendants contended that their intangible services—which offer highly customizable ways to exchange information—are not "products" subject to product liability law.

On November 14, 2023, this Court issued an order granting in part and denying in part Defendants' motion to dismiss the priority product liability claims and deemed Defendants' motion as to the negligence per se claim withdrawn without prejudice to further motion to dismiss briefing.  *In re Soc. Media*, 2023 WL 7524912, at *1.

Starting with Plaintiffs' design defect claims (Counts 1 & 3), this Court concluded that Section 230 and the First Amendment barred most, but not all, of Plaintiffs' theories of liability.  *Id.* at *12–19.  The Court held that Section 230 precluded relief as to those claims based on Defendants' "use of algorithms"; "not providing a beginning and end to a user's 'Feed'"; the "timing and clustering of

notifications of third-party content in a way that promotes addiction"; "failing to put 'default protective limits to the length and frequency of sessions'"; "failing to institute '[b]locks to use during certain times of day (such as during school hours or late at night)'"; "recommending minor accounts to adult strangers"; and "limiting content to short-form and ephemeral content, and allowing private content," *id.* at *13 (capitalization altered).  The Court held that Section 230 did not bar relief for alleged defects regarding "effective parental controls," "notifications" of Defendants' own content, "age verification," and "appearance-altering filters," *id.* at *12.  The Court also concluded that the First Amendment did not bar these claims because they "would not require that defendants change how or what speech they disseminate," *id.* at *18, with the exception of Plaintiffs' claims related to notifications of Defendants' own content (which the court held the First Amendment bars), *id.* at *19.  Finally, turning to Defendants' arguments under product liability law, the Court concluded that "global arguments as to whether defendants' platforms are services do not resolve this dispute," *id.* at *24, and that the specific "functionalities" surviving the Section 230 and First Amendment analyses were themselves "products" within the meaning of the Restatements and thus subject to product liability law in states that follow those authorities, *id.* at *29–34.

As to Plaintiffs' failure-to-warn claims (Counts 2 & 4), the Court reasoned that Plaintiffs had plausibly alleged that Defendants' services were "defective and unreasonably dangerous" such that they should have included a warning.  *Id.* at *16.  In the Court's view, Plaintiffs had plausibly alleged that Defendants had a duty to warn based on their "knowledge" that their services present a "risk of abuse, addiction, and compulsive use."  *Id.*  The Court clarified at the November 16, 2023 case management conference that the failure-to-warn claims survived dismissal with respect to *all* alleged defects.  *See* Dkt. 457, Nov. 16, 2023 Case Management Conference Tr. 26:8–29:13.  Thus, even if Section 230 or the First Amendment barred design defect liability for a particular feature, it would not bar liability for failing to warn of that same feature's alleged dangerousness.

## III.    ARGUMENT

Section 230 is designed to protect "websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008).  The Ninth Circuit has instructed courts

to "keep firmly in mind that [Section 230] is an immunity statute," and that "[c]lose cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites." *Id.* at 1174.  So, too, "the First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary litigation that chills speech," calling for a decision "at the earliest possible junction." *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 800 (9th Cir. 2022).  Thus, courts routinely certify similar questions under Section 1292(b), as well as threshold questions of state law:

- **Section 230**.  *See, e.g.*, *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 996 (N.D. Cal. 2022), *appeal accepted*, No. 22-80098 (9th Cir. 2022); *J.B. v. G6 Hospitality, LLC*, 2021 WL 6621068, *4 (N.D. Cal. Dec. 16, 2021), *appeal accepted*, No. 22-15290 (9th Cir. 2022); *Doe v. Twitter, Inc.*, No. 3:21-cv-00485-JCS (N.D. Cal. Oct. 26, 2021), ECF No. 85, *appeal accepted*, No. 22-15103 (9th Cir. 2022).

- **First Amendment**.  *See, e.g.*, *Bartnicki v. Vopper*, 3:94-cv-01201-EMK, ECF No. 97, *appeal accepted*, No. 98-7156 (3d Cir. 1998), *aff'd*, 532 U.S. 514 (2001); *Nat'l Ass'n of African Am.-Owned Media v. Charter Comm'ns, Inc.*, 2016 WL 10647193, at *6 (C.D. Cal. Dec. 12, 2016), *appeal accepted*, No. 17-55723 (9th Cir. 2017); *Roberts v. AT&T Mobility LLC*, 2016 WL 3476099, at *2 (N.D. Cal. June 27, 2016), *appeal accepted*, No. 16-16915 (9th Cir 2016).

- **Threshold state law issues**.  *See, e.g.*, *Virgil v. Time, Inc.*, 527 F.2d 1122, 1125–30 (9th Cir. 1975) (state law issue implicating the Restatement (Second) of Torts); *Westlands Water Dist.*, 953 F.2d at 1110–11 (state law issue implicating products liability law).

Following these authorities, the Court should certify its Order under Section 1292(b) because the criteria for certification are satisfied.

### A.    The Order Involves Controlling Questions of Law.

The Order necessarily involves questions of law because "[t]he adequacy of [a plaintiff's] claims under" Rule 12(b)(6) "raises a question of law." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021).  And those questions are controlling.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981); *accord Roth v. Foris Ventures, LLC*, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (Gonzalez Rogers, J.) (same).  "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on

the litigation" as a whole.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Williams v. Alameda Cnty.*, 657 F. Supp. 3d1250, 1255 (N.D. Cal. 2023) (same); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (rejecting argument that "no question of law can be controlling unless it determines who will win on the merits").  Certification is proper if even "one question support[s] certification." *Nat'l Ass'n of African Am.-Owned Media*, 2016 WL 10647193, at *4.  Here, there are several controlling questions of law that would, at a minimum, materially advance the outcome of the litigation, and may even dispose of the priority claims altogether.

The Section 230 and First Amendment questions are "controlling."  For instance, if the Ninth Circuit held that Section 230 bars Plaintiffs' failure-to-warn claims to the same extent as the design defect claims, it would confirm that discovery on topics such as Defendants' alleged use of algorithms to promote addictive engagement, timing and clustering of notifications, and frequency and length of use, *see In re Soc. Media*, 2023 WL 7524912, at *13, is unnecessary.  *See Rollins v. Dignity Health*, 2014 WL 6693891, at *2 (N.D. Cal. Nov. 26, 2014) (legal question was "controlling" as "[t]he remaining issues to be decided in this case, and the attendant costs of discovery, will vary significantly depending on [appellate] resolution of this issue").  The same would be true if the Ninth Circuit held that Section 230 or the First Amendment precluded Plaintiffs' challenges based on additional features of Defendants' services, as this would materially limit the scope of discovery, the plaintiffs who can assert claims, and the relief they could seek.  *See Su v. Siemens Indus., Inc.*, 2014 WL 2600539, at *3 (N.D. Cal. June 10, 2014) (legal question was "controlling" because, depending on its resolution, "many actions [plaintiff] seeks to challenge would be cut out of the case").

Moreover, appellate resolution of the product liability issue in Defendants' favor could lead to the outright dismissal of *all* of Plaintiffs' priority claims.[3]  *See In re Soc. Media*, 2023 WL 7524912,

---

[3] This Court "appli[ed] the approach taken by the Restatement [as] in keeping with approaches likely to be taken by the respective high courts of . . . plaintiffs' preferred" jurisdictions (Georgia and New York).  *In re Soc. Media*, 2023 WL 7524912, at *22.  Plaintiffs and Defendants in their briefing agreed that the Restatement approach would be either controlling or highly persuasive in at least 40 jurisdictions—with most of the remainder being states where state statutes independently require that any "product" be "tangible." *See* Mot. 66–82; Dkt. 302, Pls.' Opp'n to Defs.' Mot. to Dismiss 77–100; Oct. 27, 2023 Mot. to Dismiss Hr'g Tr. 105:17–106:02 (discussing statutes in Arkansas, Delaware, Illinois, Maryland, Minnesota, Ohio, and Tennessee); *see also In re Soc. Media*, 2023 WL 7524912, at *25 ("[T]he Court determines defendants' platforms are not tangible.").

at *19 ("[B]oth [the] design defect and failure to warn claims . . . are predicated on the existence of a 'product.'").  That alone satisfies this criterion.  *See, e.g.*, *Reese*, 643 F.3d at 688 ("the requirements of § 1292(b) [we]re met" as appellate resolution of the certified issue could take certain "claims . . . out of the case"); *Meeker v. Belridge Water Storage Dist.*, 2007 WL 781889, at *5 (E.D. Cal. Mar. 13, 2007) (similar; reversal would increase the movant's likelihood of prevailing in the litigation, even if some claims "remained in the case").

**B.      Substantial Grounds Exist for Difference of Opinion.**

The second criterion of Section 1292(b) is also satisfied, as there is a substantial ground for difference of opinion on the Court's conclusions that Plaintiffs may proceed on their failure-to-warn and other claims despite Section 230 and the First Amendment, and that Plaintiffs' priority product liability claims survived in part following Defendants' motion to dismiss.

**1.      There Is Substantial Ground for Difference of Opinion on Whether the Failure-to-Warn Claims Are Barred by Section 230 or the First Amendment.**

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *Reese*, 643 F.3d at 688.  And "[o]ne of the best indications that there are substantial grounds for disagreement on a question of law," although not a necessary one, "is that other courts have, in fact, disagreed." *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) (quoting *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016)); *see also Reese*, 643 F.3d at 688 ("[A] novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.").  Here, there is a substantial ground for difference of opinion over whether a failure-to-warn claim can proceed to the extent such a claim is premised on alleged design defects for which Section 230 or the First Amendment bar liability.

First, the Court's Section 230 ruling departs from that of other courts by allowing claims to proceed based on alleged failures to warn about features that the Court otherwise ruled could not be challenged under Section 230.  This Court held that Section 230 protected many (but not all) of the challenged features underlying Plaintiffs' design defect allegations.  *In re Soc. Media*, 2023 WL 7524912, at *12–13.  The Court then held that Plaintiffs plausibly alleged a failure-to-warn claim based

on "*any and all* of the alleged defects," even those that cannot support a design defect claim. *Id.* at *16 (emphases added); *see also* Nov. 16, 2023 Case Management Conference Tr. 28:9, 29:11–13. Other courts, however, have routinely held that Section 230 necessarily bars failure-to-warn claims where, as here, Section 230 bars the parallel design defect claim. In fact, as Defendants argued in their motion to dismiss, the "unanimous view of other courts" confronted with failure-to-warn claims has been (until now) that such claims must be dismissed to the extent they rest on alleged design defect claims that are barred by Section 230. *In re Facebook, Inc.*, 625 S.W.3d at 93–95 (listing cases); *see also* Suppl. Mot. 4 ("'*[E]very published decision*' has rejected efforts to evade Section 230 by recasting claims based on user content as based on a service's failure to 'warn' or 'protect' users 'from the dangers posed by its [supposed] products.'" (emphases added and citing cases)) & 18; *see also* Suppl. Mot. Reply 8–9 (reiterating failure-to-warn argument and highlighting previously cited authorities).

The majority view is supported by sound policy: if Plaintiffs could plead around Section 230 by characterizing their claims as based on an alleged "failure to warn" of the challenged publishing features, this exception to Section 230 would swallow the rule. If, for example, a defamation claim plainly barred by Section 230 could be recast as a "failure to warn" users that content might be defamatory, it would run counter to the Ninth Circuit's repeated admonition that what matters under Section 230 "is not the name of the cause of action" and that "a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory." *Barnes v. Yahoo!, Inc.*, 570 F. 3d 1096, 1101–03 (9th Cir. 2009).

The Second Circuit's decision in *Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019), is illustrative. There, the plaintiff alleged that an online dating service was defectively designed because it allowed another user to create accounts on the service impersonating the plaintiff, and that the defendant was further liable because it failed to warn him about that possibility. *Id.* at 589. After concluding that Section 230 barred plaintiff's design defect claims, *id.* at 590, the Second Circuit affirmed the dismissal of his failure-to-warn claim because it was "inextricably linked" to the preempted defect claim, *id.* at 591. California federal courts have reached the same conclusion. *E.g.*, *Bride v. Snap Inc.*, 2023 WL 2016927, at *7 (C.D. Cal. Jan. 10, 2023) (Section 230 barred failure-to-warn claim because it was "predicated on allegations concerning activity immunized by Section 230"),

*appeal filed*, No. 23-55134 (9th Cir. Feb. 14, 2023); *L.W.*, 2023 WL 3830365, at *8 (same); *accord Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 281 (E.D. Pa. 2022) (same), *appeal filed*, No. 22-3061 (3d Cir. Nov. 10, 2022).[4]

These cases confirm that reasonable jurists could conclude Plaintiffs cannot sidestep Section 230 by recasting challenges to the publication of third-party content as failures to warn about the dangers of such content or publishing choices. The Ninth Circuit's decision in *Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016), indicates as much. There, an assault victim alleged that a website had a duty to warn that third parties might physically assault her because the website developer had learned, from an outside source (unconnected to the website), about assailants' scheme to assault women. *Id.* at 848–49, 853. The key to *Internet Brands* was that the plaintiff did "not seek to hold Internet Brands liable as a 'publisher or speaker' of content someone posted on the Model Mayhem website, or for Internet Brands' failure to remove content posted on the website." *Id.* at 851. Importantly, the assailants did not post *any* content on the website, or communicate harmful messages to the plaintiff. *Id.* at 851–52 (explaining that plaintiff did not allege that her assailants "posted anything to the website"; nor does she "claim to have been lured by any posting that Internet Brands failed to remove.").[5] That is why courts have held, following *Internet Brands*, that Section 230 bar claims based on failure to warn where the missing warnings relate to the publication of content or where the claims targeting the underlying alleged defective design are barred. *See, e.g.*, *Bride*, 2023 WL 2016927, at *7

---

[4] Outside the context of Section 230, courts have held that where an underlying product defect claim is preempted by federal law, a failure-to-warn claim related to that defect is necessarily also preempted. *See, e.g., Turner v. Chevron U.S.A., Inc.*, 2008 WL 4570271, at *3 (C.D. Cal. Oct. 14, 2008) (where "the defect claim is preempted" and the "Plaintiff's failure to warn claim is inextricably tied to his defect claim, this claim is also preempted" (citing *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 770 (11th Cir. 1998) ("Because Plaintiff's defective-design claim is preempted . . . there [i]s no defect about which to warn"))); *see also Carden v. Gen. Motors Corp.*, 509 F.3d 227, 233 (5th Cir. 2007) (same), *abrogated on other grounds by Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011).

[5] The Court stated that the plaintiff in *Internet Brands* was "assaulted at a fake audition third parties had posted on defendants' website" and that "[w]hile the harm was inextricable from the third-party content (the fake audition post), the conduct at issue was not the defendant's publication of the advertisement, it was the failure to warn about the advertisement while holding information indicating it was likely fake and dangerous." *In re Soc. Media*, 2023 WL 7524912, at *9. But the Ninth Circuit's decision makes clear that there was no fake advertisement posted on the website; that plaintiff was not lured by any such post; and that the plaintiff's claim was not premised on a failure to warn about fake and dangerous content on the site. *See Internet Brands*, 824 F.3d at 848, 851–52.

(distinguishing *Internet Brands* and holding Plaintiffs' failure-to-warn claims failed because they "are all predicated on allegations concerning activity immunized by Section 230"); *L.W.*, 2023 WL 3830365, at *8 (similar); *Herrick*, 765 Fed. App'x at 591 (similar).

The Court's related First Amendment ruling on Plaintiffs' failure-to-warn claim is similarly in tension with decisions from other courts and thus presents an issue on which there is substantial ground for disagreement. Courts have repeatedly applied the First Amendment to dismiss claims that would require a defendant to warn about the dangers *of speech*. These cases make clear that couching speech-based liability in the guise of failure to warn does not allow Plaintiffs to escape constitutional protections for the publication and dissemination of speech. Thus, for example, in *Bill v. Superior Court*, 137 Cal. App. 3d 1002 (1982), the California Court of Appeal applied the First Amendment to preclude a claim that the producers of a film had a duty to warn filmgoers about the likelihood "that violence might occur at or near theaters showing the film." *Id.* at 1006; *see also* Suppl. Mot. 18. The plaintiffs argued that their claim did not seek "to impose liability on the basis of the content of the motion picture," but instead sought to hold defendants liable because they purportedly were aware that violence might break out. *Id.* at 1007. The Court of Appeal disagreed and concluded that the same considerations, including the potential "chilling effect" of liability, were "as applicable as where liability is sought to be imposed directly for the failure to warn." *Id.* at 1007–09.

Similarly, in *Watters v. TSR, Inc.*, 715 F. Supp. 819 (W.D. Ky. 1989), *aff'd*, 904 F.2d 378 (6th Cir. 1990), the court, after concluding that a claim about the supposed addictive and dangerous effects of the Dungeons and Dragons role-playing game was barred by the First Amendment, rejected efforts to salvage the claim by recasting it as a failure-to-warn claim. *Id.* at 823 n.1. "Because the first amendment protects TSR from liability based on the content of the publication, it likewise cannot constitutionally be required to warn its readers of possible consequences of reading or playing the game materials." *Id.*; *see also, e.g.*, *Olivia N. v. Nat'l Broad. Co.*, 126 Cal. App. 3d 488, 492 (1981) (First Amendment barred claim against television broadcaster for showing violent film that was likely to cause imitation "without proper warning in an effort to obtain the largest possible viewing audience"); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1270 (D. Colo. 2002) (First Amendment barred claims against movie and video game distributors based on allegations that "Defendants failed to

11

exercise reasonable care to inform consumers of the dangerous condition of their products and materials or of the facts which made their products and materials likely to be dangerous").

As these cases show, reasonable minds could differ on whether Plaintiffs' failure-to-warn claims are barred by the First Amendment to the same extent as their underlying product defect claims. The Court's conclusion stands in considerable tension with established law.[6]

> ### 2. There Is Substantial Ground for Difference of Opinion on Whether the First Amendment Bars Plaintiffs' Challenges to Age Verification and Parental Controls.

The Court's additional First Amendment holdings also present substantial ground for disagreement. In allowing Plaintiffs' claims to proceed on the theory that Defendants' services lack "robust age verification" and "effective parental controls," the Court effectively held that Defendants may be legally required to verify the ages of all their users and give parents broad control over what their minor children can do or see on Defendants' services. *In re Soc. Media*, 2023 WL 7524912, at *29–30, *34–38. This ruling, however, is in tension with many others, including two federal district court decisions (including one from this District) decided while Defendants' motions to dismiss were pending and holding that state statutes imposing similar obligations violate the First Amendment: *NetChoice, LLC v. Griffin*, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023), and *NetChoice, LLC v. Bonta*, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023).

---

[6] This Court incorrectly suggested that Defendants' Section 230 and First Amendment challenges to the failure-to-warn claims were not squarely presented in the motion to dismiss. As to Section 230, Defendants explained in both their opening and reply briefs that Section 230 barred Plaintiffs' failure-to-warn claim. *See* Suppl. Mot. 4, 9; Suppl. Mot. Reply 8–9. And as to the First Amendment, Defendants' opening brief argued that all of Plaintiffs' priority claims (including the strict liability failure-to-warn claim) were barred by the First Amendment. In doing so, Defendants took as given that the application of the First Amendment turns on the substance of a claim, not its label, so Defendants' argument against the core design defect claims would equally apply to Plaintiffs' related failure-to-warn claim. *See* Suppl. Mot. 27 (quoting *Bill*, 137 Cal. App. 3d at 1007, and noting its rejection of a "failure to warn claim" on First Amendment grounds). When Plaintiffs' Opposition argued that different First Amendment considerations applied to their failure-to-warn claim, Defendants responded to that argument, refuting it with appropriate legal citation. *See* Suppl. Mot. Reply 20–21 (citing *Bill* and *Watters*).

1        In *Bonta*, Judge Freeman preliminarily enjoined enforcement of the California Age-Appropriate

2   Design Code Act, which, as relevant here, would have "require[d] businesses to estimate the age of

3   child users and provide them with a high default privacy setting, or forgo age estimation and provide

4   the high default privacy setting to all users."  2023 WL 6135551, at *8.  The "end goal" of that

5   requirement was to "reduce the amount of harmful content displayed to children."  *Id.* at *13.  Judge

6   Freeman recognized that implementing such verification would require potentially invasive data

7   collection from adults as well as minors, which threatened a "vast chilling effect" on speech.  *Id.*; *see*

8   *also, e.g., ACLU v. Mukasey*, 534 F.3d 181, 196–97 (3d Cir. 2008) (age verification affirmative defense

9   to law barring dissemination of material harmful to minors did not render law constitutional because

10  age verification would "deter[]" "many users who are not willing to access information non-

11  anonymously" "from accessing the desired information"); *Free Speech Coal., Inc. v. Colmenero*, 2023

12  WL 5655712, at *15–16 (W.D. Tex. Aug. 31, 2023) (rejecting age-verification requirement for

13  websites whose content is more than one-third sexual material harmful to minors), *stayed pending*

14  *appeal*, No. 23-50627 (5th Cir. Nov. 14, 2023).

15       Similarly, in *Griffin*, a federal district court preliminarily enjoined a state law that would have

16  required "social media companies to verify the age of all account holders who reside in Arkansas" and

17  allow minors to use their services only with verified parental consent.  2023 WL 5660155, at *1–2.  As

18  in *Bonta*, the Court held that the law would require covered social media companies to build obstacles

19  to access that would impermissibly burden the First Amendment rights of both minors *and* adults,

20  discouraging them from accessing sites by creating "an additional hassle" and forcing users to "forgo

21  the anonymity otherwise available on the internet."  *Id.* at *17 (quoting *Am. Booksellers Found. v.*

22  *Dean*, 342 F.3d 96, 99 (2d Cir. 2003)); *cf. Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1064

23  (7th Cir. 2004) ("The only way that a minor can avoid this risk is to find a parent or another adult

24  designated by his parent to accompany him," but "[t]o condition the exercise of First Amendment rights

25  on the willingness of an adult to chaperone is to curtail them.").

26       Consistent with these cases, the Supreme Court has repeatedly recognized that restrictions

27  aimed at keeping children away from expressive material deemed harmful to them raise First

28  Amendment concerns.  In *Reno v. ACLU*, 521 U.S. 844 (1997), the Supreme Court struck down on

First Amendment grounds the anti-indecency provisions of the Communications Decency Act, which were designed to limit minors' access to potentially harmful content. Notably, the Court recognized that there was no effective and economical way for providers to verify users' ages "without also denying access to adults," whose First Amendment rights would therefore be curtailed. *Id.* at 876; *see also ACLU v. Ashcroft*, 322 F.3d 240, 259 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004) ("Requiring a user to pay a fee for use of an adult verification service or to enter personal information prior to accessing certain material constitutes a . . . severe burden on speech"). Similarly, in *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), which held that California could not constitutionally restrict the sale or rental of violent video games to minors, the Supreme Court rejected the state's contention that the law was "justified in aid of parental authority," explaining that while it "may indeed be in support of what some parents of the restricted children actually want, its entire effect is only in support of what the State thinks parents *ought* to want." *Id.* at 804. "This is not the narrow tailoring to 'assisting parents' that restriction of First Amendment rights requires." *Id.* at 802–03; *accord Interactive Digit. Software Ass'n v. St. Louis Cnty., Mo.*, 329 F.3d 954, 956 (8th Cir. 2003) (enjoining ordinance that "makes it unlawful for any person knowingly to sell, rent, or make available graphically violent video games to minors, or to 'permit the free play of' graphically violent video games by minors, without a parent or guardian's consent").

*Griffin* and *Bonta* applied those principles to efforts to impose age verification and parental control requirements on Defendants and other online services to protect minors from mental-health and other harms. In both cases, the courts held that even under intermediate scrutiny, such age verification and parental control laws were unconstitutional. *Griffin*, 2023 WL 5660155, at *15–16; *Bonta*, 2023 WL 6135551, at *10. "[E]ven though the State's goal of internet safety for minors is admirable, 'the governmental interest in protecting children does not justify an unnecessarily broad suppression of speech addressed to adults'"—as the age-verification requirements would inevitably do. *Griffin*, 2023 WL 5660155, at *17 (quoting *Reno*, 521 U.S. at 875).

As these cases reflect, reasonable judges can disagree as to whether the First Amendment bars the imposition of legal rules that would require online services, like Defendants', to verify the age of their users and implement broad parental controls on how minors can use those services to

14

communicate and access information.[7]  This Court's decision is in tension with cases that have more robustly applied the First Amendment in this context, and this is an important legal issue that would benefit from prompt consideration by the Ninth Circuit.

> **3.**     **There Is Substantial Ground for Difference of Opinion on Whether Plaintiffs' Priority Product Liability Claims Fail Because Defendants Do Not Offer "Products."**

"Courts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented." *Roth*, 2022 WL 21777087, at *2 (quoting *Reese*, 643 F.3d at 688).  This Court has recognized that "the applicability of products liability torts to the digital world" is a "novel question[] of law."  *In re Soc. Media*, 2023 WL 7524912, at *19.  And this novel question is a "difficult" one. *Roth*, 2022 WL 21777087, at *2; *see United States v. Real Prop. & Improvements Located at 2441 Mission St.*, 2014 WL 1350914, at *3 (N.D. Cal. Apr. 4, 2014) (this factor is satisfied where there "is some case law on the issue at the district court level, but it is sparse, and not all of it is in accord with the Court's prior order").

The JCCP court overseeing parallel California litigation recently held that product liability law does not apply to Defendants' services.  *Soc. Media Cases*, 2023 WL 6847378, at *15 (sustaining demurrer on product liability claims because "[p]roduct liability doctrine is inappropriate for analyzing Defendants' responsibility for Plaintiffs' injuries").   That divergent result by another trial court addressing materially identical allegations under state law itself demonstrates "substantial grounds for disagreement"—given that "other courts have, in fact, disagreed." *Brickman*, 2017 WL 1508719, at *3 (quoting *Heaton*, 2016 WL 232433, at *4).

This Court also recognized that "[c]ases exist on both sides of the [product liability] questions posed by this litigation."  *In re Soc. Media*, 2023 WL 7524912, at *20.  For example, multiple courts have dismissed product liability claims targeting similar services, including those of Defendants,

---

[7] It is no answer to say that those cases involved statutes, while this one involves common-law tort claims.  If anything, that distinction makes the First Amendment problem here *more* acute.  *See, e.g.*, *James v. Meow Media, Inc.*, 300 F. 3d 683, 697 (6th Cir. 2002) ("We cannot adequately exercise our responsibilities to evaluate regulations of protected speech, even those designed for the protection of children, that are imposed pursuant to a trial for tort liability.").

concluding, for example, that "Facebook is more akin to a service" and that "Snapchat is more like a service than a product, and services are not subject to the laws of strict products liability." *Id.* at *20, *24 & n.36 (first quoting *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023); then quoting *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023)); *see also, e.g.*, *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022); *Quinteros v. InnoGames*, 2022 WL 898560, at *7 (W.D. Wash. Mar. 28, 2022); *Burghart v. South Correctional Entity*, 2023 WL 1766258, at *3 (W.D. Wash. Feb. 3, 2023).   These cases confirm that a "substantial ground for difference of opinion exists," *Reese*, 643 F.3d at 688, including as to multiple aspects of this Court's product liability analysis.

*First*, as this Court recognized, under the Third Restatement, "[s]ervices, even when provided commercially, are not products," and "custom software . . . is a service." *In re Soc. Media*, 2023 WL 7524912, at *22 (quoting Restatement (Third) § 19(b)), *28.  Applying these principles, this Court concluded that Defendants' "platforms [do not] consist solely of services as a matter of law"— particularly insofar as Plaintiffs challenged certain "functionalities." *Id.* at *27 n.42, *29.  But the JCCP court, interpreting the same language, held that Defendants provide "services" in *all* material respects.  *See Soc. Media Cases*, 2023 WL 6847378, at *15 (quoting Restatement (Third) § 19(b)). The JCCP court reasoned that plaintiffs' allegations "do not describe a product that all consumers *experience* in a uniform manner," *id.* at *16; *see also id.* at *20 ("Defendants' platforms are not static things; they are programs that facilitate an interactive experience"), and that this "services" categorization fully disposed of plaintiffs' product liability claims, including as to "'features' built into the social media experience by Defendants," *id.* at *16.

*Second*, this Court concluded that *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), "supports the use of products liability in this litigation" because *Lemmon* "assumed (perhaps because [the court] found it obvious) that plaintiffs adequately alleged a product-based negligence claim against Snap." *In re Soc. Media*, 2023 WL 7524912, at *27.  But *Lemmon*'s reasoning was limited "entirely" to Section 230, and the Ninth Circuit specifically "decline[d]" to address whether the plaintiffs there "failed to plead adequately . . . their negligent design claim." *Lemmon*, 995 F.3d at 1095.  Other courts have found plaintiffs' reliance on *Lemmon* "unpersuasive" under these circumstances precisely *because*

16

1     the Ninth Circuit "declined to address whether there was a failure to plead a negligent design claim."

2     *Jackson*, 639 F. Supp. 3d at 1011; *see also, e.g.*, *Soc. Media Cases*, 2023 WL 6847378, at *17

3     ("*Lemmon* is not a precedent for an issue not decided and not necessary to the decision that was

4     rendered."). When the same language "has been given different interpretations by courts," that too is

5     a factor supporting 1292(b) certification. *Klem v. Cnty. of Santa Clara*, 1998 WL 440425, at *7 (N.D.

6     Cal. July 9, 1998), *appeal accepted*, No. 98-16844 (9th Cir. 2000).

7          *Third*, this Court concluded that certain "*functionalities* of defendants' platforms" were

8     "sufficiently analogous to the distribution and use of tangible personal property that it is appropriate to

9     apply" product liability law to those functionalities under the Restatement approach. *In re Soc. Media*,

10     2023 WL 7524912, at *22 (emphasis in original) (quoting Restatement (Third) § 19(a)). On this score,

11     too, the JCCP court disagreed, concluding that Defendants' "features [are] built into the social media

12     experience by Defendants," and that none of the "interactions between Defendants and Plaintiffs by

13     way of the Defendants' platforms are . . . 'analogous to the distribution and use of tangible personal

14     property.'" *Soc. Media Cases*, 2023 WL 6847378, at *16 (quoting Restatement (Third) § 19(a)).

15          Interlocutory review of the product liability issue is also warranted because the Court's

16     reasoning "breaks new ground." *Pirani v. Slack Techs., Inc.*, 2020 WL 7061035, at *2 (N.D. Cal. June

17     5, 2020) (certifying order under 1292(b)), *appeal accepted*, No. 20-16419 (9th Cir. 2021). This Court's

18     "defect-by-defect" approach was not advanced by either Plaintiffs or Defendants, and it is not one

19     commonly used in other product-liability cases. For example, the Court reasoned that Plaintiffs' claims

20     targeting allegedly "defective parental controls and age verification" were sufficiently analogous to

21     tangible property because "[m]yriad tangible products contain parental locks." *Id.* at *30. Defendants

22     are not aware of any authority framing—much less answering—the question whether something is a

23     product in this way, and respectfully submit that reasonable jurists could reach a different conclusion.

24     For one, reasonable jurists could conclude that the only relevant question is whether a given platform

25     itself is a product—not whether specific features of that platform, like age-verification or parental

26     controls, can themselves constitute "products" for product liability purposes. But even if that were the

27     question, reasonable jurists could answer it, as many courts have, by drawing an analogy to the use of

28     age-verification or parental control features by entities that unquestionably provide *services*, such as

movie theaters checking identification before allowing patrons to view R-rated movies, or recreational sports teams requiring parental consent for minor children to play ball.  Doing so here would have led to a different outcome.  *Cf. Soc. Media Cases*, 2023 WL 6847378, at *21 ("Plaintiffs allegations are more appropriately conceptualized as contending Defendants engaged in a course of conduct . . . . Allowing this case to go forward on theories of product liability would be like trying to fit a four-dimensional peg into a three-dimensional hole.").

**C.    Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.**

The last criterion under Section 1292(b) is also met.  Interlocutory review of these issues would "materially advance the ultimate termination of the litigation," particularly in the context of an MDL comprising numerous individual cases, because getting an immediate answer to these threshold questions "'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings."  *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026–27).  That is so for multiple reasons.

*First*, immediate appellate review of the Section 230 and First Amendment questions would clarify the nature and scope of the remaining claims and could streamline discovery in significant ways. And a Ninth Circuit ruling in Defendants' favor on the product liability issue would mean the outright dismissal of all of Plaintiffs' priority claims now proceeding to discovery.  *See supra* Part III.A; *DeLuca v. Farmers Ins. Exch.*, 2019 WL 4260437, at *5 (N.D. Cal. Sept. 9, 2019) ("This factor is closely related to the question of whether an issue of law is 'controlling'" (quotation and alterations omitted)); *Rollins*, 2014 WL 6693891, at *4 ("the considerations of this factor overlap significantly with the first one"). This alone is more than enough to "materially advance" the litigation.  *See, e.g.*, *Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL 18584762, at *3 (C.D. Cal. Oct. 26, 2022) (resolving some, but not all, claims would materially advance litigation); *Rollins*, 2014 WL 6693891, at *4 (noting an immediate appeal would materially advance the litigation because certified issue "will clearly impact the course of further motions and discovery"); *Jaco v. WinCo Holdings, Inc.*, 2019 WL 2615739, at *5–6 (E.D.

Cal. June 26, 2019) ("prevent[ing] a duplicative discovery process" materially advanced the litigation); *accord Reese*, 643 F.3d at 688 ("a final, dispositive effect on the litigation" is not required).

*Second*, numerous "[c]ourts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation" when an interlocutory appellate ruling could "save the courts and the litigants unnecessary trouble and expense." *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021); *see also, e.g., In re Apple*, 625 F. Supp. 3d at 996 ("[I]f interlocutory appeal is not granted and the Ninth Circuit reverses this Court's holding," discovery "would be a significant and needless waste of the Court and the Parties' resources."); *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F.Supp.3d 374, 391, 394 (S.D.N.Y. 2019) (recognizing certification would materially advance "complex and substantial multidistrict litigation" due to "the realities of litigation of this size and complexity"). If Plaintiffs are permitted to continue litigating their case based on alleged defects and functionalities that the Ninth Circuit ultimately holds are protected under Section 230 or the First Amendment (or not subject to product liability law), then the Court and the parties will undergo massive wasted effort—in the form of fact and expert discovery, summary judgment motions, as well as any trial. *See, e.g., Rollins*, 2014 WL 6693891, at *4 ("Importantly, if the Court were to deny certification now . . . but subsequently be reversed by the Ninth Circuit, the Court would then need to consider the remaining issues . . . that much later, after significant expense will have been incurred."). Thus, an immediate appeal on these issues could "'minimiz[e] the total burdens of litigation on [the] parties and the judicial system by accelerating or at least simplifying trial court proceedings.'" *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (quoting 16 Wright & Miller, Federal Practice & Procedure § 3930 at n.40 (2d ed.)).

*Third,* all of this is especially salient in the context of MDL proceedings, where certification of interlocutory orders is "favored." *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999); *accord Cintas*, 2007 WL 1302496, at *2; 16 Wright & Miller, *Federal Practice & Procedure* § 3929 (3d ed. Apr. 2023 Update) ("interlocutory appeal is appropriate . . . in 'big' cases").[8] And, as noted, the Ninth

---

[8] *See also, e.g., In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 124 (9th Cir. 1973) (considering certified interlocutory appeal under § 1292(b) from pretrial proceedings in an MDL); *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F.Supp.3d at 393 ("[B]ecause the Court's [order] arises in the context of an MDL, the efficiencies to be gained by interlocutory appeal are particularly substantial."); *In re*

Circuit recently agreed to consider a Section 1292(b) appeal on Section 230 from another MDL.  *See In re Apple Inc. App Store*, 625 F. Supp. 3d at 996, *appeal accepted*, No. 22-80098 (9th Cir. 2022). That makes sense because, in MDLs, "the cost of discovery . . . will impose a heavy burden on the parties and the Court," and an immediate appeal "could result in a significant reduction of that burden or even eliminate it altogether."  *Silbersher*, 2021 WL 292244, at *3.  It is also true because immediate review of threshold legal issues promotes case management efficiencies.  Here, interlocutory appellate review addressing Defendants' threshold federal defenses would provide significant guidance across the MDL, and review of Plaintiffs' priority product liability claims could resolve the claims asserted in more than 200 pending personal injury cases.  Moreover, appellate review could provide much-needed persuasive guidance not only in these federal coordinated proceedings, but also in the more than 450 parallel personal injury lawsuits currently pending in California court.  *People ex rel. Allstate Ins. Co. v. Weitzman*, 107 Cal. App. 4th 534, 563 (2003) (California courts "often look to federal decisions" for assistance in applying California law, particularly when "a federal statute" is involved); *see also, e.g.*, *Coleman v. Medtronic, Inc.*, 223 Cal. App. 4th 413, 429 (2014) (deeming Ninth Circuit precedent "persuasive authority that we elect to follow" in deciding a federal question).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its Order of November 14, 2023 Granting in Part and Denying in Part Motions to Dismiss (Dkt. 430) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

*Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) ("the need for § 1292(b) review is particularly compelling" due to "the nationwide scope and importance of this multidistrict litigation"); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) ("Delaying [interlocutory] review would burden not only the parties, but the judicial system itself."), *appeal accepted*, No. 03-1817 (4th Cir. 2004).

Dated: December 12, 2023                          Respectfully submitted,


                                                  **COVINGTON & BURLING LLP**

                                                   */s/ Phyllis A. Jones*
                                                  Mark W. Mosier, *pro hac vice*
                                                    mmosier@cov.com
                                                  Paul W. Schmidt, *pro hac vice*
                                                    pschmidt@cov.com
                                                  Phyllis A. Jones, *pro hac vice*
                                                    pajones@cov.com
                                                  COVINGTON & BURLING LLP
                                                  One CityCenter
                                                  850 Tenth Street, NW
                                                  Washington, DC 20001-4956
                                                  Telephone: + 1 (202) 662-6000
                                                  Facsimile: + 1 (202) 662-6291

                                                  Emily Johnson Henn (State Bar No. 269482)
                                                    ehenn@cov.com
                                                  COVINGTON & BURLING LLP
                                                  3000 El Camino Real
                                                  5 Palo Alto Square, 10th Floor
                                                  Palo Alto, CA 94306
                                                  Telephone: + 1 (650) 632-4700
                                                  Facsimile: +1 (650) 632-4800

                                                  *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
                                                  *Facebook, Inc.; Facebook Holdings, LLC;*
                                                  *Facebook Operations, LLC; Facebook Payments,*
                                                  *Inc.; Facebook Technologies, LLC; Instagram,*
                                                  *LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

1

2

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*

Geoffrey M. Drake, *pro hac vice*
  gdrake@kslaw.com
Albert Q. Giang (State Bar No. 224332)
  agiang@kslaw.com
David Mattern, *pro hac vice*
  dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

3

4

5

6

7

8

9

10

11

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson, *pro hac vice*
  andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
  amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000

12

13

14

15

16

17

18

19

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC*

20

21

**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*

Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

22

23

24

25

26

27

28

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)

22

1                            Victoria.Degtyareva@mto.com

                         Ariel T. Teshuva  (State Bar No. 324238)
2                           Ariel.Teshuva@mto.com

3                          MUNGER, TOLLES & OLSON LLP

                         350 South Grand Avenue, 50th Floor
4                          Los Angeles, CA  90071-3426

                         Telephone:  (213) 683-9100
5                          Facsimile:  (213) 687-3702

6

7                          Lauren A. Bell, *pro hac vice*

                         Lauren.Bell@mto.com
8                          MUNGER, TOLLES & OLSON LLP

                         601 Massachusetts Ave., NW,
9                          Suite 500 E

                         Washington, D.C. 20001-5369
10                        Telephone:  (202) 220-1100

                         Facsimile:  (202) 220-2300
11

12                        *Attorneys for Defendant Snap Inc.*

13                        **WILSON SONSINI GOODRICH & ROSATI**

                       **Professional Corporation**
14

15                   */s/ Brian M. Willen*

                       Brian M. Willen, *pro hac vice*
16                          bwillen@wsgr.com

                         Wilson Sonsini Goodrich & Rosati
17                          1301 Avenue of the Americas, 40th Floor

                         New York, New York 10019
18                          Telephone: (212) 999-5800

                         Facsimile: (212) 999-5899
19

20                        Lauren Gallo White (State Bar No. 309075)

                         lwhite@wsgr.com
21                          Carmen Sobczak (State Bar No. 342569)

                         csobczak@wsgr.com
22                        Wilson Sonsini Goodrich & Rosati

                         One Market Plaza, Spear Tower, Suite 3300
23                          San Francisco, CA  94105

                         Telephone: (415) 947-2000
24                          Facsimile: (415) 947-2099

25

26                        Christopher Chiou (State Bar No. 233587)

                         cchiou@wsgr.com
27                          Matthew K. Donohue (State Bar No. 302144)

                         mdonohue@wsgr.com
28                        Wilson Sonsini Goodrich & Rosati

633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

1

## ATTESTATION

2       I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to

3 the filing of this document has been obtained from each signatory hereto.

4

5   DATED:       December 12, 2023      By:   */s/ Phyllis A. Jones*

                                              Phyllis A. Jones

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR