# EXHIBIT 1

**Plaintiffs' Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge Regarding Expert Disclosure and attached exhibits (ECF No. 303)**

1

2   [*Submitting Counsel on Signature Page*]

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: SOCIAL MEDIA ADOLESCENT            Case No. 4:22-md-03047-YGR
     ADDICTION/PERSONAL INJURY
12   PRODUCTS LIABILITY LITIGATION            MDL No. 3047

13   _____         Honorable Yvonne Gonzalez Rogers

14   This Document Relates to:                **PLAINTIFFS' MOTION FOR RELIEF
                                              FROM NONDISPOSITIVE PRETRIAL
15   ALL ACTIONS                              ORDER OF MAGISTRATE JUDGE
                                              REGARDING EXPERT DISCLOSURE**
16   _____

17

18

19

20

21

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, Plaintiffs respectfully seek relief from Section 7.6 of the Protective Order ("PO") entered by Magistrate Judge Thomas S. Hixson.[1] Dkt. 290; *see also* Dkt. 289 (associated Discovery Order). Plaintiffs ask the Court to find that Judge Hixon erred in requiring advance disclosure of experts to whom the Parties intend to provide material designated Highly Confidential. *See* Dkt. 290 at 13–14.

Plaintiffs in the MDL and JCCP have been coordinating to ensure efficiency, avoid duplication, and reduce costs, including as to experts. These efforts will be significantly impeded if Section 7.6 is allowed to stand, in part because Judge Kuhl has indicated (correctly) that early disclosure of experts is not allowed under California state law. Advance disclosure also invades attorney work product. Accordingly, Plaintiffs ask the Court to strike Section 7.6 and replace it with Plaintiffs' requested provision that prohibits disclosure of highly confidential information only to individual Plaintiffs or officers, directors, and employees of the recipient, subject to certain exceptions, or, in the alternative, with the language from footnote 7 to Section 7.4 of the Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, or Trade Secrets ("Trade Secrets MPO").

## BACKGROUND

On March 17, 2023, the Parties submitted competing proposed protective orders to Magistrate Judge Hixson. *See* Dkt. 192; *see also* Dkt. 111 (CMO No. 3) at 6–7. Plaintiffs submitted a proposal largely consistent with the Stipulated Protective Order for Standard Litigation ("Standard MPO"). Defendants asked Judge Hixson to adopt the Trade Secrets MPO or even more restrictive language. Specifically, Defendants sought a provision preventing Parties from disclosing Highly Confidential material to a retained expert unless the party first identifies and provides extensive information about that expert to the designating party (including information that goes beyond the Trade Secrets MPO).[2] While the provision technically applies to

---

[1] Plaintiffs note that Section 7.6 does not apply to Parties' source code, which the Parties will address in a separate order.

[2] Under the proposal advanced by Defendants and adopted by Judge Hixson, a party is required to disclose "any patents or patent applications in which the Expert has a pecuniary interest, is involved in maintaining or prosecuting, or is listed as an inventor or applicant," a requirement that does not exist under the Trade Secrets MPO.

all Parties, as a practical matter it only burdens Plaintiffs: the "Highly Confidential" designation applies only when disclosure would create risk of competitive harm, a consideration that does not apply to Plaintiffs, who are adolescents and/or their families. *E.g.*, *id.* § 7.6. (The PO provides that protected health and educational information—the type of sensitive information Plaintiffs expect to produce—is designated "Confidential," not "Highly Confidential." Dkt. 290 § 7.3.)

On April 10, 2023, Judge Hixson heard the Parties' disputes regarding the PO. Stating that he was using the Trade Secrets MPO as the "presumptive starting spot," Dkt. 247 at 7:19–8:3, Judge Hixson agreed with Defendants' proposal requiring advanced disclosure of experts, *id.* at 39:3–40:1. Following the hearing, the Parties met and conferred about remaining issues, including early expert disclosure. During this time, Judge Kuhl, who is overseeing the parallel JCCP, expressed concern that the MDL PO may require early disclosure of non-testifying experts, given her view that such a provision would violate California law. *See* Ex. A (5/3/23 JCCP Tr.) at 8:3– 6; *Hernandez v. Superior Court*, 112 Cal. App. 4th 285, 297–98 (2003).

On May 12, 2023, the Parties submitted their positions on the remaining disputes, with Plaintiffs requesting that Judge Hixson reconsider his inclination to adopt Defendants' early expert disclosure provision. Dkt. 271. On May 18, Judge Hixson issued a tentative ruling imposing the provision. Dkt. 284 at 3–4. The Parties then submitted a proposed PO in line with Judge Hixson's tentative ruling, while reserving their rights to object. Dkt. 287. On May 22, Judge Hixson issued a final Discovery Order on the PO (Dkt. 289) and entered the PO (Dkt. 290) with Section 7.6 requiring advanced disclosure of experts who access material designated as Highly Confidential. Plaintiffs object to the relevant parts of these Orders.

## LEGAL STANDARD

The Court may modify or set aside a magistrate judge's nondispositive order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). This Court reviews the magistrate judge's legal conclusions de novo, and it reviews factual findings for clear error. *Guidiville Celgard, LLC v. Shenzhen Senior Tech. Material Co.*, WL 19977072, at *1 (N.D. Cal. Sept. 27, 2022). A nondispositive order is clearly erroneous if "the court is left with the definite and firm conviction that a mistake has been committed." *Id.* An order is contrary to law if it "applies an

incorrect legal standard or fails to consider an element of the applicable standard." *Id.*

**ARGUMENT**

### I. Plaintiffs should not be required to provide advance disclosure of their experts.

Judge Hixson clearly erred by adopting Defendants' early expert disclosure provision without a justification for imposing this restriction. The Trade Secrets MPO is an "extremely restrictive type of protective order." *Johnson v. City and County of San Francisco*, 2011 WL 13377688, at *1, *3 (N.D. Cal. Feb. 9, 2011). This case is a mass tort case alleging products liability, not a case over "patents and trade secrets," where courts in this District typically impose it. *Id.* at *1. And the animating concern behind the Trade Secrets MPO—that one party should not be able to sue another for breach of its intellectual property rights and thereby gain unfettered access to carefully guarded secrets—is not present here.[3]

Judge Hixson nonetheless ordered Plaintiffs to disclose their consulting experts—and their testifying experts—in advance because he reasoned that "Defendants are entitled to know who has their stuff" (Dkt. 289 at 3). While every party would like to know who the opposing party's experts are in every litigation, there is a reason that the Federal Rules do not impose an early disclosure: such a requirement would "effectively" and improperly "allow the Defense to vet" all of Plaintiffs' experts. *Johnson*, 2011 WL 13377688, at *2. Courts generally decline to intrude on litigants' strategic decisions and create additional burdens in this manner. *See, e.g.*, *Corley v. Google, Inc.*, 2016 WL 3421402, at *3 (N.D. Cal. June 22, 2016) ("the identities of non-testifying experts . . . is 'central to lawyering strategy'"; "[v]irtually any large company could assert in each of its pending civil cases . . . that non-testifying experts might misuse confidential information"; "it will be significantly more difficult for Plaintiffs to retain qualified non-testifying experts if those experts are not permitted to remain anonymous"); *Todd v. Tempur-Sealy Int'l, Inc.*, 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015) (early expert disclosure "potentially invades the attorney work product doctrine and removes [a party's] ability to have non-disclosed consulting experts"); *see also Burt v. AVCO Corp.*, 2015 WL 12912366, at *4 (C.D. Cal. Nov. 17, 2015) (it

---

[3] *See, e.g.*, *Bayside Sols., Inc. v. Avila*, 2022 WL 3215010, at *2 (N.D. Cal. Aug. 9, 2022) (imposing Trade Secrets MPO in misappropriation case because "the disclosure of [plaintiff's] trade secrets and confidential business information…could result in competitive harm").

1    "would be contrary to law" to "permi[t] Defendants to discover the identity of Plaintiffs'

2    consulting experts). Judge Hixson erred by ignoring these harms.

3         Importantly, although Defendants' apps contain highly sensitive source code that may be

4    subject to discovery, the Parties agreed to deal with source code via a separate order,

5    contemplating additional restrictions for it. Thus, the information subject to the Highly

6    Confidential designation under this PO will be information Defendants are likely to designate but

7    which does not require unusually restrictive protections, such as marketing plans, financial

8    documents, and similar documents disclosed in a wide variety of cases. There is no reason to

9    impose burdensome restrictions on such non-source code information. *See Corley*, 2016 WL

10   3421402, at *3 (recognizing that source code is different).

11        Indeed, the Trade Secrets MPO implicitly recognizes that not every trade secret case calls

12   for such an intrusion on litigation strategy. That MPO contains an alternative provision that

13   allows disclosure of highly confidential material "without disclosure of the identity of the Expert

14   as long as the Expert is not a current officer, director, or employee of a competitor of a Party or

15   anticipated to become one." § 7.4 n.7. This "optional court-authored provision . . . is

16   presumptively valid." *Corley*, 2016 WL 3421402, at *3. Although Plaintiffs as well as Snap said

17   they would be amenable to this provision (Dkt. 192 at 5; Dkt. 271 at 3), Judge Hixson did not

18   address this presumptively reasonable alternative, nor rulings in other cases involving software

19   defendants that have found it sufficient to protect parties' highly confidential, non-source code

20   material. *See Corley*, 2016 WL 3421402, at *3; *Stark v. Patreon, Inc.*, No. 22-cv-3131 (N.D. Cal.

21   Aug. 23, 2022), Dkt. 29. This alternative from the Trade Secrets MPO would protect Plaintiffs'

22   work product while ensuring Defendants' most sensitive information remains guarded.

23        Given these significant concerns and the lack of justification for advance expert disclosure

24   here, the Court should overrule Judge Hixson's imposition of Section 7.6 and instead adopt

25   Plaintiffs' proposal or, in the alternative, footnote 7 to Section 7.4 of the Trade Secrets MPO.

26   **II.    <u>Requiring early disclosure of experts will impede MDL-JCCP coordination.</u>**

27        Imposing Section 7.6 of the PO is also clearly erroneous because it does not consider that

28   the early expert disclosure requirement will interfere with coordination between the MDL and

JCCP. Counsel for MDL Plaintiffs are actively coordinating with plaintiffs in the parallel JCCP to efficiently prosecute their actions, including by sharing experts. *See* Jack B. Weinstein & Eileen B. Hershenov, *The Effect of Equity on Mass Tort Law*, 1991 U. Ill. L. Rev. 269, 289; *see also* Manual for Complex Litig. (Fourth) § 20.313.

The PO as entered, however, would make it highly impractical to pursue this coordination and achieve these efficiencies with regards to experts. This is because, as Judge Kuhl indicated during the May 3 JCCP status conference, California law does not "allow[] the identity of a nondesignated expert to be required to be disclosed to a party opponent." Ex. A at 8:3–6; *see Hernandez*, 112 Cal. App. 4th at 297–98 (experts' identity "remains privileged *until* they are designated as trial witnesses") (emphasis added). With this PO provision in place, either the JCCP plaintiffs will have to disclose their experts early (contrary to what Judge Kuhl indicated California law permits) or Plaintiffs will be severely hampered in coordinating efforts (because they will be limited in their ability to share experts). This catch-22 is unnecessary, particularly because other provisions in the PO adequately protect Defendants from competitive harm, and the separate source code order will contain enhanced protections. Plaintiffs also offered to agree to adopt Judge Kuhl's suggestion that Parties submit *in camera* their experts' agreements to be bound by the Protective Order. Ex. B (3/22/23 JCCP Tr.) at 12:24-27, as well as the "presumptively valid" language from footnote 7 to Section 7.4 of the Trade Secrets MPO, also favored by Defendant Snap. It was clear error to ignore the real and serious harms to Plaintiffs' ability to prosecute their case efficiently, especially in light of these reasonable alternatives.

## **CONCLUSION**

Plaintiffs respectfully ask the Court to replace Section 7.6 of the PO with Plaintiffs' requested provision or, in the alternative, footnote 7 to Section 7.4 of the Trade Secrets MPO.

1        Dated: June 5, 2023             Respectfully submitted,

2                                  */s/ Lexi J. Hazam*

3                                  LEXI J. HAZAM
                                   **LIEFF CABRASER HEIMANN &**

4                                    **BERNSTEIN, LLP**
                                   275 Battery Street, 29th Floor

5                                    San Francisco, CA 94111-3339
                                   Telephone: 415-956-1000

6                                    lhazam@lchb.com

7

8                                  */s/ Christopher A. Seeger*
                                   CHRISTOPHER A. SEEGER

9                                  **SEEGER WEISS, LLP**
                                   55 Challenger Road, 6th Floor

10                                    Ridgefield Park, NJ 07660
                                   Telephone: 973-639-9100

11                                    Facsimile: 973-679-8656
                                   cseeger@seegerweiss.com

12

13                                  */s/ Previn Warren*
                                   PREVIN WARREN

14                                  **MOTLEY RICE LLC**
                                   401 9th Street NW Suite 630

15                                    Washington DC 20004
                                   T: 202-386-9610

16                                    pwarren@motleyrice.com

17                                  **Plaintiffs' Co-Lead Counsel**

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I hereby attest pursuant to N.D. Cal. Civil L.R. 5–1 that the concurrence to filing of this document has been obtained from each signatory hereto.

DATED:      June 5, 2023                    By: /s/ *Lexi J. Hazam*
                                                          Lexi J. Hazam

# EXHIBIT A

**In the Matter Of:**

SOCIAL MEDIA CASES

JCCP5255

---

MOTION

May 03, 2023

---



SOCIAL MEDIA CASES                                                    MOTION
JCCP5255, 05/03/2023            CERTIFIED COPY

```
        SUPERIOR COURT OF THE STATE OF CALIFORNIA

            FOR THE COUNTY OF LOS ANGELES

DEPARTMENT SSC 12        HON. CAROLYN B. KUHL, JUDGE

                            ┌─────────────────────┐
                            │   CERTIFIED COPY     │
SOCIAL MEDIA CASES,      )  └─────────────────────┘
                         )
                         )CASE NO. JCCP5255
_____)


            REPORTER'S TRANSCRIPT OF PROCEEDINGS

                WEDNESDAY, MAY 3, 2023

APPEARANCES:

FOR PLAINTIFFS APPEARING IN PERSON:

                PANISH SHEA BOYLE & RAVIPUDI, LLP
                BY:  RAHUL RAVIPUDI, ESQ.
                     JESSE CREED, ESQ.
                11111 Santa Monica Boulevard, Suite 700
                Santa Monica, CA  90025
                310.477.1700
                rravipudi@psbr.law
                jcreed@psbr.law

                KIESEL LAW, LLP
                BY:  PAUL R. KIESEL, ESQ.
                     CHERISSE H. CLEOFE, ESQ.
                8648 Wilshire Boulevard
                Beverly Hills, CA  90211
                310.854.4444
                kiesel@kiesel.law
                cleofe@kiesel.law

                BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
                 MILES, P.C.
                BY:  JENNIFER EMMEL, ESQ.
                218 Commerce Street
                Montgomery, AL  36104
                334.269.2343
                jennifer.emmel@beasleyallen.com


                (APPEARANCES CONTINUED ON NEXT PAGE.)


Christine Kwon-Chang, CSR No. 12143, CRR
Official Pro Tempore Court Reporter
Job No. 204278
```

```
 1  APPEARANCES:   (CONTINUED)

 2                  MORGAN & MORGAN
                    BY:  EMILY JEFFCOTT, ESQ.
 3                  633 West Fifth Street, Suite 2652
                    Los Angeles, CA  90071
 4                  213.787.8590
                    ejeffcott@forthepeople.com
 5
                    SOCIAL MEDIA VICTIMS LAW CENTER
 6                  BY:  MATTHEW BERGMAN, ESQ.
                    520 Pike Street, Suite 1125
 7                  Seattle, WA  98101
                    206.395.2797
 8                  matt@socialmediavictims.org

 9
    FOR PLAINTIFFS APPEARING REMOTELY VIA LACOURTCONNECT:
10
                    BEASLEY, ALLEN, CROW, METHVIN, PORTIS &
11                   MILES, P.C.
                    BY:  CLINTON RICHARDSON, ESQ.
12
                    THE CARLSON LAW FIRM
13                  BY:  JAVAD TAHBAZ SALEHI, ESQ.
                         RUTH RIZKALLA, ESQ.
14
                    SCHNEIDER WALLACE COTTRELL KONECKY, LLP
15                  BY:  AMY ESKIN, ESQ.

16                  CUTTER LAW, PC
                    BY:  C. BROOKS CUTTER, ESQ.
17                       JENNIFER S. DOMER, ESQ.

18                  SEEGER WEISS, LLP
                    BY:  CHRISTOPHER D. AYERS, ESQ.
19
                    CASEY, GERRY, SCHENK, FRANCAVILLA,
20                  BLATT & PENFIELD, LLP
                    BY:  CATHERINE M. MCBAIN, ESQ.
21
                    MOTLEY RICE, LLC
22                  BY:  JONATHAN D. ORENT, ESQ.
                         PREVIN WARREN, ESQ.
23
                    LIEFF CABRASER HEIMANN & BERSTEIN, LLP
24                  BY:  LEXI HAZAM, ESQ.

25                  SOUTHERN INSTITUTE FOR MEDICAL & LEGAL
                    AFFAIRS, LLC
26                  BY:  MARC MANDICH, ESQ.

27
                    (APPEARANCES CONTINUED ON NEXT PAGE.)
28
```

```
 1   APPEARANCES:   (CONTINUED)

 2   FOR PLAINTIFFS APPEARING REMOTELY VIA LACOURTCONNECT:

 3                   KIESEL LAW, LLP
                     BY:  MARIANA A. MCCONNELL, ESQ.
 4
                     LANIER LAW FIRM
 5                   BY:  MICHAEL AKSELRUD, ESQ.

 6                   MORGAN & MORGAN
                     BY:  NARMEEN NKEITI, ESQ.
 7
                     ALYSTOCK, WITKIN, KREIS &
 8                   ORVERHOLTZ, PLLC
                     BY:  S. MARY LIU, ESQ.
 9

10   ALSO APPEARING REMOTELY FOR PLAINTIFF WITHOUT FIRM NAMES:

11                   JOSH AUTRY, ESQ.
                     KATHERINE MASSA, ESQ.
12                   MICHAEL B. GURIEN, ESQ.
                     SUZANNE CLARK, ESQ.
13

14                   (APPEARANCES CONTINUED ON NEXT PAGE.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1    APPEARANCES:   (CONTINUED)

 2    FOR DEFENDANTS APPEARING IN PERSON:

 3                   KING & SPALDING
                     BY:  MATT J. BLASCHKE, ESQ.
 4                   50 California Street, Suite 3300
                     San Francisco, CA  94111
 5                   415.318.1212
                     mblaschke@kslaw.com
 6
                     COVINGTON & BURLING, LLP
 7                   BY:  ASHLEY M. SIMONSEN, ESQ.
                     1999 Avenue of the Stars
 8                   Los Angeles, CA  90067
                     424.332.4782
 9                   asimonsen@cov.com

10                   COVINGTON & BURLING, LLP
                     BY:  PAUL W. SCHMIDT, ESQ.
11                   The New York Times Building
                     620 Eighth Avenue
12                   New York, NY  10018
                     pschmidt@cov.com
13
                     FAEGRE DRINKER BIDDLE & REATH, LLP
14                   BY:  TARIFA B. LADDON, ESQ.
                         ANDREA PIERSON, ESQ.
15                   11766 Wilshire Boulevard, Suite 750
                     Los Angeles, CA  90025
16                   310.500.2090
                     tarifa.laddon@faegredrinker.com
17                   andrea.pierson@faegredrinker.com

18                   MUNGER, TOLLES & OLSON, LLP
                     BY:  JONATHAN H. BLAVIN, ESQ.
19                       VICTORIA DEGTYAREVA, ESQ.
                     560 Mission Street, 27th Floor
20                   San Francisco, CA  94105
                     415.512.4011
21                   jonathan.blavin@mto.com
                     victoria.degtyareva@mto.com
22
                     WILSON SONSINI
23                   BY:  CHRISTOPHER CHIOU, ESQ.
                         MATTHEW DONOHUE, ESQ.
24                   633 West Fifth Street, Suite 1550
                     Los Angeles, CA  90071
25                   323.210.2900
                     cchiou@wsgr.com
26                   mdonohue@wsgr.com

27
                     (APPEARANCES CONTINUED ON NEXT PAGE.)
28
```

```
 1    APPEARANCES:   (CONTINUED)

 2    FOR DEFENDANTS APPEARING REMOTELY VIA LACOURTCONNECT:

 3                        KING & SPALDING, LLP
                          BY:  BAILEY LANGNER, ESQ.
 4                             GEOFFREY DRAKE, ESQ.

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

1                  (WEDNESDAY, MAY 3, 2023)

2              M A S T E R   I N D E X

3

4       CHRONOLOGICAL/ALPHABETICAL ORDER OF WITNESSES

5                          (NONE)

6

7                   INDEX OF EXHIBITS

8                    (NONE OFFERED)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1   CASE NUMBER:              JCCP5255

 2   CASE NAME:                SOCIAL MEDIA CASES

 3   LOS ANGELES, CALIFORNIA, WEDNESDAY, MAY 3, 2023

 4   DEPARTMENT SSC 12         HON. CAROLYN B. KUHL

 5   REPORTER:                 CHRISTINE KWON-CHANG
                               CSR NO. 12143
 6
     TIME:                     A.M. SESSION
 7
     APPEARANCES:              (AS HERETOFORE NOTED.)
 8

 9              (The following proceedings

10               were held in open court:)

11

12       THE COURT:  Good morning everyone here on the

13   social media cases, and we'll take appearances in the

14   courtroom starting over here, please.

15       MS. EMMEL:  Jennifer Emmel with Beasley, Allen.

16       MS. CLEOFE:  Good morning, your Honor.

17           Cherisse Cleofe from Kiesel Law.

18       MS. JEFFCOTT:  Emily Jeffcott of Morgan & Morgan.

19       MR. CREED:  Jesse Creed of Panish, Shea, Boyle,

20   Ravipudi.

21       MR. RAVIPUDI:  Rahul Ravipudi for plaintiffs.

22       MR. KIESEL:  Paul Kiesel, Your Honor, for

23   plaintiffs.

24       MR. BERGMAN:  Good morning, Your Honor.

25           Matthew Bergman, Social Media Victims Law

26   Center.

27       THE COURT:  Very good.  On the defense side in

28   the courtroom, please.
```

```
 1          MS. DEGTYAREVA:  Good morning, your Honor.

 2              Victoria Degtyareva from Munger, Tolles &

 3  Olson on behalf of Defendant Snap.

 4          MS. PIERSON:  Good morning, your Honor.

 5              I'm Andrea Pierson from Faegre Drinker for

 6  TikTok and Byte Dance.

 7          MR. CHIOU:  Good morning, Your Honor.

 8              Christopher Chiou with Wilson Sonsini for

 9  Google, Alphabet, and YouTube.

10          MR. DONOHUE:  Good morning, your Honor.

11              Matthew Donahue from Wilson Sonsini for

12  Google, Alphabet, and YouTube.

13          MR. BLASCHKE:  Good morning, Your Honor.

14              Matt Blaschke with King & Spalding for

15  TikTok and Byte Dance.

16          MS. SIMONSEN:  Good morning, Your Honor.

17              Ashley Simonsen from Covington & Burling

18  for the Meta defendants.

19          MR. SCHMIDT:  Good morning, Your Honor.

20              Paul Schmidt, Covington, for the Meta

21  defendants as well.

22          MS. LADDON:  Good morning, Your Honor.

23              Tarifa Laddon with Faegre Drinker for

24  TikTok and Byte Dance.

25          MR. BLAVIN:  Good morning, Your Honor.

26              Jonathan Blavin from Munger, Tolles &

27  Olson for Snap.

28          THE COURT:  Very good.  You can all be seated.
```

 1               Those of you on LACourtConnect, the clerk
 2  has taken your appearances, and I think those of you in
 3  the courtroom heard those appearances at that time, so
 4  we won't repeat them.
 5               Feel free to jump in if you need to,
 6  though, those of you online.
 7               And I'm signing the court reporter's
 8  order.
 9               Okay.  Thank you very much for your joint
10  report, and there was a request for priority on a couple
11  of issues, so we'll start with those.
12               So we'll start with a discussion of the
13  parties' proposed coordination order to coordinate
14  discovery between the MDL and the JCCP.
15               I'm going to tell you, having read your
16  thorough discussion of your respective positions, I'm
17  going to tell you my proposal for addressing the issue,
18  and then you can talk to me about what I've expressed.
19               So you'll recall this was not an order I
20  asked for.  I've asked for several things, but this is
21  not one I asked for particularly.
22               If the defendants want to ask the MDL
23  court to enter an order about how discovery should be
24  coordinated between the MDL and JCCP courts, that's
25  fine.
26               I have not spoken with Judge Gonzalez
27  Rogers about this.  I know she has been traveling.
28               My own experience has been that -- and

1  this goes back to the year 2000 when we started the

2  complex courts.

3           My experience at creating elaborate orders

4  to govern in advance future proceedings and how the

5  future proceedings will be conducted has some downsides.

6  I've found that -- and I think most of us in complex

7  have found that it's better to solve issues as they

8  arise and better decisions can be made in concrete

9  situations.

10          I feel confident there will be good

11 communication between the lawyers in this case and the

12 lawyers in the MDL.  I feel confident there will be good

13 communication between myself and Judge Gonzalez Rogers.

14          So what I propose to do is the following.

15 I'd propose that the minute order for today set forth

16 several general principles that I think everybody agrees

17 on, and for the present that would be sufficient for

18 this case.

19          At this time, depending on what the

20 federal court does, something else may be required, but

21 I would propose to set forth in today's minute order the

22 following principles:  One, discovery in the MDL and the

23 JCCP should be coordinated; two, discovery requests

24 served and responded to in the MDL will be treated as

25 though served and responded to in the JCCP; and, third,

26 this Court will allow discovery in -- will not allow

27 discovery in this case that duplicates what has taken

28 place in the MDL.

1              So then if the defendants want this Court

2    to enter additional orders on this topic, defendant

3    should provide plaintiffs with a list of such proposed

4    orders or topics, proposed order, and meet and confer.

5    Absent an agreement, you'll let me know in a joint

6    posting or in a future status conference report.

7              I'll have an informal discovery conference

8    on the issues, and then absent informal resolution,

9    defendants could file a motion with this Court.

10             So I'll hear from counsel on either side

11   on this proposed action by this Court at this time.

12        MR. BLASCHKE:  Your Honor, Matt Blaschke for

13   TikTok.  I'll speak on this behalf of defendants.

14             I appreciate the Court's comments this

15   morning.  Indeed, the principles that Your Honor just

16   outlined are embedded in the draft coordination order

17   that we have been discussing with the plaintiffs for

18   sometime now.

19             And as Your Honor noted, there is a

20   process already in place whereby the proposed order will

21   be submitted to Judge Gonzalez Rogers, and she'll do one

22   of three things with that order.

23             She'll either enter it as proposed, she'll

24   modify it and enter it, or she won't enter it at all.

25   And I do think that that will dictate what we do next in

26   connection with the JCCP.

27             Your point certainly about not having an

28   elaborate order that is forward-looking and just not

1   necessary, those comments are well-taken, and our

2   approach here certainly is not to have a needlessly

3   elaborate order but rather to streamline the proceedings

4   and take some commonsense type steps that might help us

5   do that.

6            So with your comments in mind, Judge,

7   we'll proceed, and we'll report back once we've engaged

8   with the MDL.

9        THE COURT:  Okay.  Plaintiffs' counsel?

10       MR. CREED:  Your Honor, Jesse Creed for the

11  plaintiffs.

12           We agree with the Court's approach, and

13  these all sound -- these three items sound fine to us.

14  We have no objection to that.

15           I think on the second item, there might be

16  an issue where I think -- as counsel for defendant said,

17  we -- there are things -- there were agreement on

18  things, and then there was sort of a list that we said

19  we wouldn't agree to absent a noticed motion, and we

20  outlined the concepts of what those things consist of in

21  the joint report.

22           But I think what was also agreed to was

23  that any discovery served and responses in the JCCP

24  would also be applicable in the MDL.  That's been agreed

25  to by the parties as well.

26       THE COURT:  Okay.  That's fine, but I'm governing

27  my turf here, so I wouldn't think it would be

28  appropriate for me to say what is done here -- the

 1  binding effect of what is done here should have on the

 2  MDL, so it's probably why I wouldn't do it in the

 3  converse, so to speak.  Okay?

 4       MR. CREED:  Yes.

 5       THE COURT:  Very good.

 6            Okay.  So the minute order will reflect

 7  those -- those three principles.

 8            So let's turn to the protective order.

 9  Was the order signed by the magistrate judge attached to

10  the joint report?

11            I don't think I saw it.

12       MS. SIMONSEN:  Your Honor, the magistrate judge

13  has not entered the protective order yet, but he did

14  hold a hearing on the parties' proposed initial draft

15  and the disputed issues, and the parties are currently

16  adjusting the order to reflect his comments at the

17  hearing and anticipates submitting a revised proposed

18  protective order in the near future.

19       THE COURT:  So it's not final.

20            So let me just address the two issues that

21  are raised by plaintiffs' counsel, one regarding expert

22  disclosures.

23            So the Northern District of California has

24  the extensive experience, probably more than anyplace in

25  the country, with especially patent cases that have

26  trade secret and technical information of that sort, and

27  I certainly respect their understanding of the risks and

28  protections for highly confidential trade secrets and

1    technical information.

2                My view, without conducting a separate

3    research for this case, is that I don't think California

4    allows law -- allows the identity of a nondesignated

5    expert to be required to be disclosed to a party

6    opponent.

7                So depending on what is done in the

8    federal court, this issue will need to be briefed here.

9    So we can do that now or we can wait, but that, I think,

10   could be -- well, so that will need to be briefed.

11               So my question for counsel is -- and I'll

12   move on to the other issue in a minute, but my question

13   for counsel is how do you want to handle this?

14         MR. CREED:  Your Honor, this is Jesse Creed for

15   the plaintiffs.

16               We agree it would need to be briefed, and

17   we can do that -- I think if defendants want to draft

18   the issue, obviously, then we would agree to what is

19   happening in the MDL vis-a-vis the protective order.

20               If the defendants want to insist on any

21   provision that would require early disclosure, then I

22   don't see any need to wait on briefing it.

23         MS. SIMONSEN:  Your Honor, we would propose that

24   once the MDL court enters the protective order in those

25   proceedings, we meet and confer with plaintiffs on any

26   revisions that may be required for purposes of these

27   proceedings, as we've contemplated would be the course

28   of action all along, and then we present to Your Honor a

1  proposed protective order or competing proposed

2  protective orders along with letter briefing on any

3  disputes, and that way we can address all of the issues

4  at once in the context of an actual proposed order that

5  would be before -- before Your Honor.

6       THE COURT:  Okay.  Let's see what the magistrate

7  judge does, and then we'll move forward from there.

8            And what I'd propose in terms of something

9  like this, the way I'd like you to do it is either bring

10  it up in the next status conference and we can talk

11  about specific briefing or use the message board and

12  say, you know, "The magistrate judge has entered the

13  order, and it does require disclosure experts" -- "names

14  of experts, and here's what we'd propose for briefing

15  the issue," or just say, "We'd like an informal

16  conference with the Court to discuss how the issue

17  should be briefed."  Okay?

18            And for purposes of this Court, we don't

19  do -- we don't do letter briefs.  We need something that

20  can be filed, and so it would have to be either, you

21  know, an agreed length joint statement where each side

22  has its portion of the joint statement or simultaneous

23  briefing by each side on an agreed length.  There's a

24  lot of ways to do it, but it needs to be filed.

25       MS. SIMONSEN:  Understood, Your Honor.

26            And I will just for your awareness let you

27  know that we have had, I think, success doing similar

28  joint statements when we've submitted proposed orders in

1  the MDL.  I think we can certainly do something similar

2  here in a form that would be acceptable to Your Honor,

3  and that can be filed.

4           MR. CREED:  Your Honor, a note on that.

5                Based on my experience in California

6  practice, obviously, the appellate courts in particular,

7  as the Court has had experience with, there's -- when

8  you're dealing with work product, I think it should

9  proceed by a noticed motion.

10               So if the defendants want to impose an

11  order that would require piercing the plaintiffs' work

12  product, then it should be by a noticed motion.

13               So we will, of course, talk to defendants

14  if there's an alternative issue, but having dealt with a

15  stay from the Supreme Court of California with this

16  Court on various privilege issues, I think that's how we

17  would prefer to proceed to create the record.

18           THE COURT:  Okay.  And I'm -- I am open to that.

19               I've also had the unfortunate situation

20  where it seems like everybody's agreed to simultaneous

21  briefs and an informal process, and then people say,

22  "You can't order me, you know, at the last minute."

23               So there's something to what Mr. Creed

24  says, but under those circumstances, what we ought to do

25  is sort of agree to shorten time or something so that we

26  don't have to -- so, you know, notice for a regular

27  motion here is 16 court days, which is basically a

28  month, so we could do something quicker if you stipulate

 1  to that.

 2      MS. SIMONSEN:  Your Honor, we're happy to discuss

 3  that with plaintiffs.

 4          I think, as Your Honor proposed, an

 5  informal discovery conference first where we can at

 6  least preview for Your Honor any of the outstanding

 7  issues --

 8      THE COURT:  On this issue, you can say, "We have

 9  had the informal conference."  Okay?

10          So -- yeah, it will have to be briefed.

11  So that's what I need to determine in an informal

12  conference, is, you know, if I can give a tentative

13  that's going to satisfy both sides, if I can give a

14  tentative of, you know, what my understanding of the law

15  is without briefing as truly a tentative, and then

16  briefing can go forward.

17          So on this issue, we've talked about it,

18  so we're going to have to brief it if that's what's in

19  the federal -- in the federal order and you wanted to

20  apply it in a similar way here.

21      MS. SIMONSEN:  Understood, Your Honor.

22      THE COURT:  On the 30 days to designate which

23  parts of the deposition are confidential, and as I

24  understand it, the entire deposition would be treated as

25  confidential for 30 days, and then there would be a

26  deadline to designate the parts that are confidential

27  under the protective order.

28          I would say this.  I think it's really not

 1  very burdensome under California Rule of Court 2.550,

 2  which I have something additional to say about in a

 3  moment, to redact deposition testimony in a brief and

 4  file the brief conditionally under seal, which is what's

 5  required.

 6            The party -- the burdensomeness really is

 7  on the party whose information is filed by an opposing

 8  party and is arguably confidential, and then that party

 9  has a greater burden because they have to move to seal

10  within ten days.

11            And that party, if they want to avoid that

12  burden of having to move to seal within ten days, can go

13  through the deposition more quickly and designate the

14  confidential -- the only parts that should be

15  confidential before somebody needs to file a motion.

16            And everybody's going to know when motions

17  are being filed here, so that would -- I would at this

18  point just leave the 30 days.  This is also one of those

19  really forward-looking issues that by the time it

20  arises, the parties will have experienced working with

21  each other, and you may be able to deal with that

22  informally to avoid burden on both sides when the issue

23  arises later.

24            So I would just leave the 30 days in there

25  at this point.

26            MR. CREED:  Okay.

27            MS. SIMONSEN:  Thank you, Your Honor.

28            MR. CREED:  Thank you, Your Honor.

1      THE COURT:  Okay.  While we're talking about
2  California Rule of Court 2.550, first of all, no one
3  enjoys the burden of obtaining permission to seal a
4  court record, and this Court does not enjoy ruling on
5  motions about same.
6         However, you know, we are an institution
7  that lives by its own credibility, and we have
8  California Supreme Court precedence that is real wisdom
9  about having an open court system and the importance of
10 that, and California Rules of Court 2.550, burdensome as
11 it is, reflects the California Supreme Court's decision
12 in the CBS case setting forth the importance of having
13 an open court.
14        And when you study 2.550, which I
15 recommend to everyone if you haven't done it, you'll see
16 that there are some places it applies and some places it
17 doesn't apply, so anything that has to do with solving
18 discovery disputes, it does not apply -- or that is, it
19 has an exception for the standards that apply otherwise.
20        You know, so I can't change 2.550, and,
21 you know, a lot of us have thought about whether
22 there's, you know, a more expedited way that we could
23 propose to get through this, but, you know, the Judicial
24 Council hasn't come up with anything as yet.  So I think
25 we would just go with no separate sealing order.  Follow
26 the Rules of Court.
27        I looked at Exhibit 7 to the joint report.
28 I don't think it would be sufficient in state court.

 1  Critically, it doesn't set forth the standards that
 2  would have to be met by a party seeking to seal, which
 3  is set forth in 2.550, and it's not consistent with
 4  state procedures for how documents are filed
 5  conditionally under seal.
 6          By the way, this process is also a --
 7  2.550 is a huge burden on staff as well, so setting up
 8  some new slightly different system would probably not be
 9  helpful since they've mastered that system.
10          So that's my view about sealing.  We'll
11  just -- 2.550, just follow it.
12      MS. SIMONSEN:  And, Your Honor, Ashley Simonsen
13  for the defendants.
14          To be clear, we were proposing not that
15  Your Honor enter that specific sealing stipulation, but
16  rather that we would make adjustments to it to account
17  for 2.550.
18          Certainly, we have no intention of
19  addressing the substantive standards for sealing in
20  terms of who bears the burden of establishing a basis
21  for sealing.
22          Really, the purpose is to try to make it a
23  little bit easier on everyone in the sense that the
24  sealing motions would be filed at the conclusion of
25  briefing on any underlying motion for which there are
26  multiple sealing motions, but we would not anticipate
27  there would be any lesser access to information.
28          For instance -- and I think there's --

 1 | reasonably there would be greater access because ten
 2 | days following the submission of a paper for which
 3 | certain material may be subject to sealing, the
 4 | designating party goes through and redacts it in as
 5 | limited nature as possible and then submits it to the
 6 | other side to go ahead and put in redacted form on the
 7 | record.
 8 |            In ordinary practices, as Your Honor just
 9 | observed, it may be the case that the party filing the
10 | paper that needs to be sealed may sort of overredact
11 | since the information is not their own to defend the
12 | sealing of, but if Your Honor doesn't want us to take a
13 | shot at sort of amending that stipulation to comply with
14 | California rules, certainly we hear you and we'll simply
15 | follow the code.
16 |       THE COURT:  I would suggest following the code, I
17 | really would.
18 |            It's -- and, yes, a party filing a paper
19 | will overredact, but that's because under your
20 | confidentiality orders, usually the producing party at
21 | the first stage will overdesignate as confidential, and
22 | we understand why that happens, but then it has to be
23 | unwound at that point, i.e., ten days after, let's say,
24 | the plaintiffs file a motion.
25 |            So the -- so I think we ought to -- if you
26 | want to bring it back again, I'll listen, but I think
27 | that's what we ought to do.
28 |            By the way, I usually hear those motions

```
 1  at the same time I hear the substantive motion, so we
 2  don't have a separate -- separate appearance, but I
 3  realize it's a lot of work that has to be done
 4  immediately following.
 5            But, you know, the Rules of Courts say
 6  that the clerk is supposed to unseal the thing by court
 7  rule if the motion isn't filed.
 8            Now, I'll tell you we allow do-overs,
 9  right, if people don't quite make that deadline, but
10  that's -- that's the rule.
11       MS. SIMONSEN:  I understand.
12       THE COURT:  What I would suggest is if you come
13  up with something good, submit it to the Civil Rules
14  Committee of the Judicial Council as a proposal because
15  all of us would like our life made easier in some way.
16            Okay.  All right.  So just noting that you
17  referenced the deadline for the master complaint, and
18  that's moving forward.  That's excellent.
19            User interface day, so when I was thinking
20  about a science day, so to speak, regarding user
21  experiences with various products, I had not thought
22  about that there would be a temporal problem; that is,
23  what user experience is over different periods of time
24  alleged in the complaints or today, for that matter, and
25  I think it's too complicated before the demurrers are
26  adjudicated, especially because we have to be so careful
27  not to run afoul of the rule that facts outside the
28  allegations of the complaint can't be considered on
```

 1 | demurrer.
 2 |          So I think we should let this issue go for
 3 | now, and I'm sorry that people have spent a lot of time
 4 | on it.  It's something I threw out without thinking
 5 | through very well.  Perhaps it will be helpful at some
 6 | point later.
 7 |          Okay.  The demurrer is scheduled, so I
 8 | have looked over the competing schedules and the reasons
 9 | for them, and thank you for your efforts to agree, and
10 | even though you didn't agree, the discussions were
11 | helpful for me in thinking about a schedule.
12 |          So here's the schedule that I would put
13 | out there as a tentative subject to further argument if
14 | you want to and weighing the competing considerations.
15 |          So on or before -- and I put this in the
16 | minute order.
17 |          On or before June 2, plaintiffs to
18 | identify three short form complaints that together with
19 | the master complaint would be the subject of the
20 | demurrers, and then July 14 or four weeks after the
21 | Supreme Court decision in Gonzalez versus Google,
22 | whichever is later, defendants will file joint and
23 | individual demurrers.
24 |          I have no inside information, but knowing
25 | what the Supreme Court has on its calendar still, my
26 | guess would be it would be very close to June 30 anyway
27 | that they're going to decide this, so really it would be
28 | running four weeks from the Supreme Court decision, but

1   July 14 if they do get it done sooner.

2              And then four weeks after the demurrers

3   are filed, plaintiffs are to file their opposition, and

4   three weeks after the opposition is filed, defendants

5   are to file a unitary reply brief.

6              I would ask for a unitary reply brief.  If

7   at the time I've looked at the opposition from the

8   plaintiffs and you feel you should have separate ones,

9   you can let me know, but knowing how these things tend

10  to work, I think you'll want a unitary reply brief, and

11  that would be most helpful to me.

12       MR. SCHMIDT:  And that's what we're trying to do

13  both with the opening brief, Your Honor, Paul Schmidt

14  for Meta, and with the reply brief is to have unitary

15  briefs.

16              That obviously takes a lot of

17  coordination, so we appreciate that time, but that is

18  what we're aiming for.  There's a possibility that there

19  might be companion individual defendant briefs, but

20  we're going to put as much as we can in unified briefs.

21              In the MDL, we did one unified brief, and

22  then one defendant had a supplementary brief, and I

23  would expect -- I would hope that we would get something

24  very similar here.

25       THE COURT:  That would meet my expectations.

26  That sounds good.

27              So -- now, I say four weeks rather than 30

28  or 31 days, and the reason is because the Supreme

 1 | Court -- I'm assuming it's going to run from the Supreme
 2 | Court decision.
 3 |          The Supreme Court will issue its decision
 4 | on a weekday, and that way when we count weeks, we're
 5 | counting weekdays, and we don't have a problem of what
 6 | if the 30th or 31st day falls on a weekend.
 7 |          Everyone knows when we're filing.  Okay?
 8 |          However, obviously, we don't know when the
 9 | Supreme Court is going to decide, and therefore I'm not
10 | setting a hearing date today.
11 |          So here's what I'd like you to do, and
12 | I'll put this in the minute order.  I'd like you to file
13 | a stipulation and proposed order re requested hearing
14 | date after Gonzales versus Google is decided and set
15 | forth the actual dates each brief will be filed, and
16 | also in that pleading, I'd like you to propose or
17 | repropose page lengths.
18 |          And at that point, the parties will have
19 | been able to see at least some of the briefing in
20 | federal court and perhaps have a better sense of what's
21 | needed for the demurrers here.
22 |          Based on -- I'll tell you that based on my
23 | current anticipation of what might have to be covered, I
24 | would not anticipate approving a hundred pages, so --
25 | but you can ask again.
26 |          So if you don't agree on the page length,
27 | I'll consider your positions at that time and make my
28 | own judgment.

 1              So that would be a stipulation and
 2   proposed order setting forth the schedule for the
 3   briefing, asking for the page lengths that you want, if
 4   you agree.
 5              If you disagree, I would suggest you just
 6   set forth your -- your respective positions in that
 7   stipulation even though it's not stipulated to.  Okay?
 8        MR. SCHMIDT:  Your Honor, may I speak briefly on
 9   the page?
10        THE COURT:  Yes.
11        MS. SIMONSEN:  That is an issue that I think
12   we'll probably not have agreement on given where the
13   parties are right now, and I'm mindful about what Your
14   Honor said about a hundred pages.
15              That's what we used in the MDL with, from
16   our perspective, much narrower claims that -- we were
17   moving on 5 claims.  Here, we're moving on 14 claims.
18              We had the wrinkle in the MDL that we were
19   doing all state law, but essentially that played itself
20   out with a big footnote or string cite listing cases
21   from different jurisdictions, as opposed to multiple
22   arguments for us as a defense group to come in much
23   below that.
24              Given the complexity of the claims here,
25   given the Section 230 and First Amendment issues we
26   haven't even briefed yet in the MDL within those hundred
27   pages, it is really, really challenging.
28              If we were not coordinating on the defense

1  and we each filed our individual briefs, that would

2  actually play out to many more pages than a hundred

3  pages across the defense group.

4           It would help to have probably earlier

5  guidance on that because -- for example, what the

6  plaintiffs proposed from our perspective is just not a

7  serious proposal.  We can't address facts regarding each

8  individual defendant, let alone 14 different claims, in

9  a 300-page complaint in 30 pages.

10          Having some earlier guidance on that might

11 help us draft because we are starting to draft now with

12 the hope that we will get a hundred pages, with the

13 thought that as remarkable as a hundred pages sounds,

14 it's certainly a big brief, that's from our perspective

15 going to be hard to reach in terms of the different

16 arguments we have to present given the complaint that

17 we've received.

18     THE COURT:  Well, draft with the idea in mind

19 that you're not going to get a hundred pages, but you're

20 going to get more than 30 pages.

21          Thirty pages is too little for this, but I

22 don't think I've ever had a hundred-page brief, so there

23 you are.

24     MR. SCHMIDT:  May I bring one other issue on

25 that, Your Honor?

26          One thing we hadn't anticipated when we

27 proposed the hundred pages is the choice of law issues

28 and having to brief choice of law issues.

1           Your Honor no doubt will recall that when

2    we were here last time, I raised the issue whether

3    plaintiffs would be moving -- would be identifying

4    plaintiffs from different states and that that might

5    implicate choice of law issues.

6           Plaintiffs didn't say they even had

7    plaintiffs from other states.  We've now been told as of

8    Monday that two or one of the three plaintiffs they plan

9    to pick are from other states, and that creates a

10   serious concern as to whether that really advances the

11   litigation.

12          We have only one other state that has

13   double digit plaintiffs.  Most states have one or two

14   plaintiffs, and if we get an Oregon or Georgia or

15   New York plaintiff where there's only one plaintiff in

16   that state, it doesn't do much to advance the

17   litigation.

18          But it also adds a wrinkle in terms of

19   potentially having to brief choice of law which can be a

20   complicated issue-by-issue question that we need to

21   brief if we're trying to live within 100 pages for three

22   plaintiffs with 14 claims.

23        THE COURT:  You're going to have that in the

24   federal court case anyway, aren't you, choice of law?

25        MR. SCHMIDT:  In the federal court case, because

26   we were essentially moving on all states, we didn't have

27   to do the same level of plaintiff-by-plaintiff analysis

28   as to what the controlling law is and certainly not the

1  same level of claim-by-claim analysis.

2           Just as an example, in the draft master

3  complaint, we have -- the plaintiffs pled a California

4  sex discrimination claim.  Presumably, they're going to

5  shift that for non-California plaintiffs, but that would

6  be a choice of law issue that we just didn't have to

7  grapple with in the MDL.

8           And there's similar kinds of statutory

9  claims that are different across the states where there

10 are actually significant differences within the states

11 that we didn't have to address in the MDL that we will

12 here.

13      MS. JEFFCOTT:  Your Honor, we haven't decided

14 which plaintiffs would be subject to demurrer, but I

15 think at this time, we -- we anticipate that more likely

16 that all plaintiffs will be from California, so this

17 issue may be mooted in its entirety.

18          We obviously don't want to commit to that

19 at this point in time just because we still have a month

20 to review additional claims, but we're willing to work

21 with the defense to the extent that we do select a

22 non-California plaintiff for a demurrer.

23      THE COURT:  Okay.  That might fall out or it

24 might not, but that's something that you'll know by the

25 time you're asking me for page lengths.  Okay?

26      MR. CREED:  Your Honor, just one clarification on

27 the stipulation and proposed order.  Maybe this is clear

28 to others, but I want to make sure I understand.

1          That would be -- so that would be a

2 stipulation we would file after the Supreme Court's

3 opinion in Gonzalez?

4          THE COURT:  Correct.

5               So once that opinion is filed, we will

6 know precise dates for the filing of each.  So the stip

7 and proposed order would have two purposes.

8               Purpose number one would be to ask for a

9 hearing date essentially based on what you now know are

10 the specific calendar dates, and the second purpose

11 would be to address the page length issue.

12              All right.  Very good.

13              You had a section in the joint report

14 called "Predicates to Discovery," and discovery's stayed

15 now as you know, so I don't think I need to do anything

16 else except now we're going to talk about plaintiff fact

17 sheets.

18              And I think, first of all, I want to thank

19 the parties for working on this.  It does take a lot of

20 time.  A lot I think can be done between the parties

21 between now and when the demurrers are argued.

22              I don't know if the plaintiffs are using a

23 data aggregator.  It certainly takes time to work with

24 that -- with such an entity and to, you know, figure out

25 the electronic system for the plaintiffs to be entering

26 their responses electronically.

27         MR. CREED:  We do anticipate using a data

28 aggregator.  Which one we use has not been determined.

 1  We haven't selected one.  We've been talking to Two-1,
 2  so that's the latest update on that, Your Honor.
 3       THE COURT:  I would really encourage you to --
 4  and, again, sometimes both sides will agree.  I don't
 5  know if you will or not, but start early.
 6            I've got -- I have another case which is a
 7  mass tort.  It's not a JCCP, but it involves thousands
 8  of plaintiffs, and plaintiffs' counsel is telling me
 9  it's taking them months and months and months to work
10  with the data aggregator to get the electronic system
11  correct so that the responses are going to be recorded
12  correctly, so I would get going on that.
13            I know plaintiffs are anxious to move
14  discovery forward.  I would really recommend that you
15  focus on that.
16            I know that the data aggregator will then
17  say -- will need time with the specific questions:  How
18  many subparts?  Do you jump to the third question?
19            I get all of that, but the process should
20  be started in my opinion.
21       MS. JEFFCOTT:  And, Your Honor, Emily Jeffcott
22  for plaintiffs.
23            And, Your Honor, we have solicited a quote
24  from one entity that can do this, and we'll work with
25  defendants to see if we can come to an agreeable
26  solution on that end.
27            Some of us on this end have had great
28  success with certain companies in being able to move

1  through from plaintiff fact sheet all the way through to
2  the end of the case.
3       THE COURT:  Yes, and I don't need -- you all are
4  sophisticated.  I don't need to tell you that the
5  plaintiff fact sheet has many uses, including post
6  settlement, if there's -- if there ever is a settlement
7  and it's an inventory or global settlement, you need to
8  think through those fact sheets with the far end of the
9  case in mind, and I know you know that.
10      MR. CREED:  Your Honor, on that note, I think --
11 I think that in order to even discuss having an informed
12 discuss with a data aggregator, we would need to have a
13 fixed fact sheet so they understand what questions are
14 being asked --
15      THE COURT:  I don't think so.  I think you need
16 to start with them and get them in place.
17           So the other thing that I would counsel
18 is, and this applies as much to the defendant as to the
19 plaintiffs and perhaps more, don't ask too much.
20           If you have too many subparts, it's going
21 to be difficult for you -- for defendants to ask me to
22 enforce that adequately, so, you know, think about
23 something that, first of all, is difficult for a
24 layperson to understand and has holes in it, and then
25 you come and ask me to dismiss that plaintiff because
26 they have those holes, and, you know, they've been asked
27 to re-respond and they haven't re-responded, are you
28 going to bring me a half filled out thing that has

1  detail that's missing and ask me to dismiss the claim?

2            That's a hard sell.  Okay?  So really

3  limit it to what you need to evaluate the case.

4            Obviously, before any case would go to

5  trial, you're going to have depositions and IMEs and all

6  kinds of things, so don't -- don't overask in the

7  plaintiff fact sheet.

8            The other thing that I really recommend is

9  to try them out on laypeople.  We're lawyers, and we

10 have that problem of asking things using our language,

11 and from defense -- from plaintiffs' standpoint, you

12 don't want to have to hang over your clients and answer

13 all those questions about what does this mean.

14           From defendant's standpoint, you don't

15 want to confront someone in deposition and they say, "I

16 have no idea what this meant," and then the answers that

17 you got are not useful.

18           So try them out on laypeople and simplify

19 and simplify.  Okay?

20      MS. SIMONSEN:  It's helpful guidance, Your Honor.

21 Thank you.

22      THE COURT:  And I have had -- we've had a lot

23 of -- a lot of experience with plaintiff fact sheets,

24 and I always review them too because even if counsel

25 agree, there are things there that maybe I can see that

26 counsel haven't thought of.  So those are my

27 suggestions.

28           I would propose to do this and to ask that

1  by August 1 the parties submit competing proposed fact

2  sheets for the Court's review and comment.

3          Now, hopefully you'll have met and

4  conferred and, you know, eliminated as many issues as

5  you can, but at that point, I would be able to give you

6  kind of a check-in and my thoughts about it to send you

7  back to the negotiating table if you haven't -- if you

8  haven't agreed.

9          Does that sound reasonable?

10      MR. CREED:  It does, Your Honor.

11          Could we also include in that discussion

12  document -- plaintiffs' specific document request that

13  we would make?

14      THE COURT:  Yeah.

15          Ordinarily -- well, to me the plaintiff

16  fact sheet includes document requests that are -- it

17  would be in the fact sheet; right?

18      MR. CREED:  No.

19          These are the -- there is document

20  requests in the fact sheet that the defendants had

21  proposed, and we have provided an edit yesterday to it.

22          These are the document requests that we --

23  plaintiffs would propound on defendants for plaintiffs'

24  specific documents that would inform the plaintiffs when

25  they're -- when they're completing the fact sheet.

26      THE COURT:  Yeah, I haven't seen that picked up

27  in this -- in the joint report, but I continue to think

28  it's a good idea.

 1          MS. SIMONSEN:  And, Your Honor, if I may, I know
 2    at the initial status conference you had suggested, in
 3    connection with negotiating a plaintiff fact sheet, that
 4    plaintiffs might suggest a very limited universe of data
 5    that they might request from the defendants.
 6              Purely for the purposes of ensuring they
 7    have access to data that they wouldn't otherwise have
 8    access to that maybe is needed to complete the fact
 9    sheet, we received from plaintiff last Friday a
10    voluminous list of document requests, all documents
11    relating to everything under the sun relating to these
12    plaintiffs, third parties.
13              I do not, respectfully, believe it was
14    within the spirit of what Your Honor had contemplated at
15    the first status conference.  I also would note that
16    Your Honor did observe that any motion to compel
17    relating to those initial data requests should happen
18    after the demurrers are resolved, which we do think it's
19    consistent with the fact that discovery is stayed.
20              We think we can negotiate the plaintiff
21    fact sheet, and as we get guidance from Your Honor on
22    the plaintiff fact sheet and how that's coming along, I
23    think that will in turn inform potentially the user data
24    request plaintiffs are making.  So I would propose we
25    not make that part of the plaintiff fact sheet
26    discussion, but rather take it up after we're further
27    along on the plaintiff fact sheet.
28          THE COURT:  I'm glad you're continuing to discuss

 1  the potential for information to be provided prior to --
 2  prior to the plaintiff fact sheet.
 3              I think they go hand in hand, so I would
 4  ask you, again, on August 1 to let me know where you are
 5  on those as well.
 6              And, you know, if this -- I'll just say
 7  it.  Plaintiffs, if this production of documents is
 8  going to serve the purpose we want it to serve, it has
 9  to be narrow and pointed at what the plaintiff would
10  reasonably want to see to refresh recollection to answer
11  the plaintiff fact sheets.  That's what I'm
12  contemplating.
13      MR. CREED:  Your Honor, we received an 88-page
14  fact sheet that requested voluminous --
15      THE COURT:  I understand.
16      MR. CREED:  Every one of their requests can be
17  tied to a particular question.
18              We served back, I think, a 20-page fact
19  sheet.  I may be off by a couple pages.  We have an
20  edited list of our document requests that would
21  correspond with our fact sheet that would be
22  significantly smaller.
23      THE COURT:  And I think it's smart for plaintiffs
24  to present their own proposed fact sheet too.  I think
25  in some ways, plaintiffs' counsel are -- have a better
26  perspective on what the fact sheet ought to look like.
27              So you'll go back and forth, and August 1
28  I'll take a look at it and see where you're at.  Okay?

 1              So on August 1, we'll put in the minute
 2   order today the parties are to submit competing proposed
 3   fact sheets to the Court for review and document -- and
 4   comment -- for the Court's review and comment, and
 5   plaintiff -- and -- and proposed early production by
 6   defendant of limited documents relevant to plaintiffs'
 7   ability to respond to the fact sheets.
 8              Okay.  So you'll submit that.
 9              What I'm going to do is what we call in
10   our system a nonappearance case review, and that means
11   that -- and I'll set that for August -- August 4.
12              That means that on August 4, I'll open up
13   the electronic file and look for this filing that you
14   all have done, so I'm envisioning that this would be
15   sort of a cover sheet that would say, you know,
16   plaintiff and defendants' proposed fact sheet, et
17   cetera, and that it would attach as exhibits your --
18   now, if you can get to the point where you have a red
19   line, that would be even better.
20              Okay?  All right?  So that's what that
21   would be.
22              And then what I'll do on August 4,
23   nonappearances, take a look at that, and maybe we've got
24   a status conference coming up in ten days, and we'll
25   talk about it at the status conference, and I'll let you
26   know or maybe I'll set a separate conference to talk
27   about the fact sheets.  Okay?
28         MS. SIMONSEN:  That's helpful, Your Honor.

1              With respect to the user data requests,
2  would it be helpful -- I know there are certain
3  categories of data that plaintiffs are requesting, and
4  we as defendants know that they have access to that
5  information through their own social media accounts.
6              In order to explain to Your Honor why our
7  proposed initial user data requests, if we do think any
8  are appropriate, are limited in the way that they are,
9  would it be helpful for us to submit any kind of short
10 briefing or explanation on that issue for Your Honor?
11     THE COURT:  I think what would be most helpful is
12 to just have, you know, the documents.
13             In the cover sheet, you can each use a
14 page maybe to set forth where you're at and why, so to
15 speak, but I should be able to discern the issues.
16             And -- anyway, and if you have that
17 information about the individual accounts, why don't you
18 give it to them now?
19             Okay.  But after the demurrer.  Right.  I
20 understand.  We've got a demurrer coming up.
21     MS. SIMONSEN:  My point only, Your Honor, is that
22 they actually have access to the information, and we
23 have our first meet-and-confer on this issue scheduled I
24 believe for tomorrow, and so we'll be walking them
25 through that so that they understand what they already
26 have access to, right, in order to complete these
27 plaintiff fact sheets.
28     THE COURT:  Okay.

 1          MR. CREED:  We disagree, but I'm not going to say
 2   anything further.
 3          THE COURT:  That's fine.  That's fine.
 4                  Well, you know, we all know that in
 5   discovery the fact that one side has it doesn't mean the
 6   other side doesn't have to give it, ultimately, but --
 7   okay.
 8                  This bring us to the plaintiff
 9   preservation form, and I think as I may have said
10   earlier, but if I haven't, I'll say now, I think both
11   sides have a lot to lose if this isn't done properly.
12                  So here is what I'd propose.  I'd propose
13   that the parties submit an agreed form -- and we know
14   what this is about, right, the plaintiff preservation
15   form?
16                  This is a form that the plaintiffs would
17   fill out to give to the defendants with respect to what
18   the plaintiffs know about their accounts so that -- what
19   they know at this point in time about those accounts so
20   that the defendants are on notice as to -- of that
21   information so that defendants can feed that into their
22   evaluation of what their document preservation
23   responsibilities are.  Okay?  That's what this is about.
24                  So I would suggest that I have you submit
25   either an agreed form or competing proposed forms by
26   May 26th, together with a proposal from plaintiffs as to
27   when they're going to complete the forms.
28                  In other words, you know, okay, now if we

 1  have agreed on a form, there should be a deadline,
 2  right, for plaintiffs to individually complete these
 3  forms.  Okay?
 4            And then if there's not an agreement, I'll
 5  have a conference hopefully very quickly to resolve
 6  this.  If we need some briefing, I'll give you a chance
 7  for briefing.
 8            So when I have these conferences on a
 9  particular subject, you know, if I can mediate a
10  solution, that's great.  If I can't, then I'll say
11  here's how we're going to brief whatever issues we know
12  are remaining at that point.
13            Does that work for you?
14       MR. CREED:  Yes, it does.
15            Just really quick, at the last hearing I
16  think Your Honor turned to us and said get them the
17  information really quickly, so we've actually turned
18  over the information requested on the form for many of
19  the --
20       THE COURT:  I understand that, and I get that
21  there's -- yeah.  I get that, but I think it's going to
22  be far preferrable in the long run to have something
23  that says, "Here's what needs to be turned over," so
24  that can be tracked in every case.
25       MR. CREED:  We will do it.
26            I think our goal though in giving the
27  information quickly is we understand that the
28  accounts -- there may be some -- they might be ephemeral

1   in some respects, so we want to make sure by giving the

2   following, we've triggered the preservation obligation,

3   whether it's on some form or separately from the forms.

4            THE COURT:  I haven't made any order.  Right?

5                 The preservation responsibilities are what

6   they are, so -- yeah.  Okay.  So -- all right.

7                 By May 26th, parties are to submit an

8   agreed plaintiff preservation form or competing forms

9   together with the proposal for when the plaintiffs will

10  provide completed forms.

11                So you'll file that May 26th, and for me I

12  will set June 1 as a nonappearance case review, so I'll

13  look at that on that day and see what needs to be --

14  whether there needs to be an informal conference or

15  whether I just tell you go ahead with what you've agreed

16  to.  Okay?

17           MS. SIMONSEN:  Thank you, Your Honor.

18           THE COURT:  And if you agree to something

19  earlier, just, you know, submit it as a proposed order.

20           MR. CREED:  I think we are largely in agreement.

21  We're just --

22           THE COURT:  Okay.  Now you've got a deadline.

23                Okay.  All right.  The CSAM preservation

24  order, looking at those, and those were attached to the

25  joint report, it didn't look like there was a whole lot

26  of agreement.

27                Am I reading that correctly?

28           MS. SIMONSEN:  Well, Your Honor, if I may, there

 1  actually is one important area of agreement since we
 2  last brought this issue to Your Honor.
 3          I know at the outset of these proceedings,
 4  both sides raised the issue of the complication around
 5  preserving CSAM which is contraband.
 6          The parties having met and conferred I
 7  think quite productively on this are now in agreement
 8  that the defendants cannot preserve actual CSAM without
 9  running afoul of federal criminal law, so we've instead
10  started to negotiate alternatives to the preservation of
11  the actual CSAM as plaintiffs had originally thought
12  might be possible.
13          So what we're now discussing is are there
14  alternative ways we can ensure the CSAM itself isn't
15  destroyed, and what plaintiffs initially proposed to us,
16  which I think makes some good sense, is that each
17  defendant represent that in the ordinary course of their
18  reporting practices to NCMEC, they actually submit the
19  CSAM itself with their NCMEC reports.
20          And defendants' understanding is that
21  NCMEC maintains the CSAM indefinitely, so it's being
22  preserved at NCMEC, and for that reason, defendants
23  believe that the concerns that animated both sides
24  raising this in the first instance and Your Honor's
25  concerns are really resolved, they're addressed.
26          Now, it is in defendants' sole discretion
27  whether to submit actual CSAM with NCMEC reports, but
28  all four defendants, to address plaintiffs' concerns and

 1   Your Honor's concerns, have investigated and now have
 2   made the representation to plaintiffs that they do
 3   report the actual CSAM with the NCMEC reports.
 4            They have, furthermore, agreed in
 5   connection with meeting and conferring on this CSAM
 6   preservation order that they would inform plaintiffs to
 7   the extent that their NCMEC reporting practices change
 8   in such a way that they longer report the actual CSAM
 9   with the report.
10            And we would submit, Your Honor, that that
11   really resolves the issue because all that remains after
12   you account for the fact that the actual CSAM can't be
13   preserved by the defendants but is being preserved by
14   NCMEC is information relating to the CSAM, and the
15   parties are in the course of and have made, I think, a
16   lot of good progress negotiating a separate preservation
17   order that will cover all of the other types of
18   information that defendants are preserving in these
19   cases.
20            And that would include -- just to give
21   Your Honor an example, for Meta we have explained to
22   plaintiffs that we have account snapshots for relevant
23   accounts that we've identified and that those account
24   snapshots have certain information in them which we're
25   sharing with plaintiffs.
26            Some of that information includes
27   information relating to NCMEC reports, and therefore we
28   can negotiate in the context of that preservation order,

 1   that broader preservation order, what type of
 2   information defendants are preserving not only about
 3   CSAM related information but all of the other
 4   information that is relevant in these cases.
 5          THE COURT:  So for the record, could you -- and
 6   for me, could you give the full name of NCMEC, is it?
 7          MS. SIMONSEN:  I believe it's the National Center
 8   for Missing and Exploited Children.
 9          THE COURT:  Okay.  Let me ask --
10          MR. CREED:  It's a nonprofit that's been charged
11   by Congress to effectively handle these reports.
12          THE COURT:  Okay.  Would they make the
13   information -- I mean, these are pictures; right?
14          MS. SIMONSEN:  Yes.
15          THE COURT:  It could be other things I suppose,
16   but --
17          MS. SIMONSEN:  When we're talking about the
18   actual CSAM, we're talking about photographs.  I think
19   it could also potentially be something that's not a
20   photo -- I'm not certain about that, so I don't want to
21   represent, but it's not, for instance --
22          THE COURT:  There's so many things that we don't
23   know about what reality might -- reality mirroring
24   images or other things that might come about.
25               Is there any -- and I want to hear
26   plaintiffs in a minute, but is there any understanding
27   about the willingness or ability of the National Center
28   for Missing and Exploited Children to provide that

 1  information to plaintiffs, for example, at trial if the
 2  Court had found that it was admissible evidence?
 3       MS. SIMONSEN:  I would -- I believe that the
 4  plaintiffs have looked into that question.
 5           My understanding from what they've
 6  reported to us is that through other law enforcement
 7  agencies, it may be able to be obtained, but we have not
 8  ourselves investigated that question.
 9       THE COURT:  Okay.  Let me hear from plaintiffs.
10       MR. CREED:  For this issue, Your Honor, Chris
11  Ayers who is on LACourtConnect has been taking the lead,
12  so I'd defer to Mr. Ayers on the topic.
13       MR. AYERS:  Good morning, your Honor.
14           This is Chris Ayers on behalf of the
15  plaintiffs.
16           So the issue -- the issue with the CSAM
17  generally is that, yes, the parties can continue to hold
18  it indefinitely and must report it.
19           Defendants have the ability to report it
20  to NCMEC which would -- which is a repository for it
21  that only works with law enforcement, so the plaintiffs
22  themselves and counsel do not have direct access to any
23  of the actual CSAM that is submitted and disclosed by
24  the defendants.
25           And so what the current dispute is really
26  about is providing -- prior to the defendants' deletion
27  of the CSAM images or video, the child pornography that
28  they possess, before they delete it, that they provide

1  notice to us and also with key information surrounding

2  the evidence that can be provided, such as what type of

3  image it was, what the contents of it were, the

4  information about the victim, information about the

5  alleged abuser, so any information surrounding this, and

6  that that information be provided to the plaintiff, and

7  also that we would get realtime notice to the actual

8  deletion of the CSAM so that we can work with law

9  enforcement to make sure that all the evidence about the

10 CSAM is preserved.

11           Because what we are talking about is,

12 while it's lawful, the destruction of the key evidence

13 that's going to be in this case, and so that's what the

14 current dispute is about.

15           We understand that defendants do submit

16 the CSAM to NCMEC, but from there, we don't have direct

17 access to it with NCMEC.

18           We've had numerous calls with NCMEC

19 personnel, and they indicated that they cannot by

20 statute provide it because they're only this nonprofit,

21 this lawful means of transitioning that to law

22 enforcement.  We do not have access to it there, and

23 they cannot make it available to us there.

24           So the current dispute is about making

25 sure that we have the plaintiffs' key information

26 surrounding the actual CSAM that we have.  That would be

27 evidence that would be admissible and useful in this

28 litigation.

 1        THE COURT:  Okay.  So what do you want me to do
 2   about this issue?
 3        MR. AYERS:  I believe the parties are going to be
 4   briefing the issue, and so you'll be able to fully
 5   understand the parties' positions, and you have the
 6   current CSAM orders proposed now.
 7        THE COURT:  They have very little overlap, the
 8   proposed orders --
 9        MS. SIMONSEN:  And, Your Honor --
10        THE COURT:  -- based on my -- based on my
11   relatively quick review.
12        MS. SIMONSEN:  If I may respond to points that
13   Mr. Ayers made about plaintiffs' proposed preservation
14   order?
15             What plaintiffs have proposed, having
16   recognized that defendants cannot preserve actual CSAM,
17   is that we actually have human reviewers I believe is
18   their proposal or create some kind of new AI that can
19   look at every single piece of CSAM that is being
20   reported to NCMEC and create a summary of it, which
21   would revictimize the victim of CSAM.
22             It would also run directly counter to the
23   reporting statute which expressly lays out that the
24   extent of viewing of the CSAM after it is detected and
25   reported should be extremely limited, only for purposes
26   of reporting.
27             It's also impracticable to do that.
28   Defendants' reporting systems are largely programmatic.

 1  They detect CSAM through -- through machine learning

 2  models -- I may be using the wrong terminology, but most

 3  of it is not done through human review of actual CSAM.

 4              Furthermore, it's not linked to some

 5  separate set of accounts that may be determined to be

 6  relevant in this litigation such that we could either

 7  practically give notice to plaintiffs when CSAM is

 8  reported in connection with a user account or determine

 9  whether this description of the CSAM has to be generated

10  again.

11              The only way we can see that that would be

12  done would be through some kind of human review

13  revictimizing the victim, and so for those reasons, we

14  don't think that either of those proposals --

15       THE COURT:  Does federal criminal law preclude

16  human review?

17       MS. SIMONSEN:  No.

18              And there are instances where these

19  defendants do human review, but what they're proposing,

20  because of the way our system is set up, it would

21  effectively require individuals to conduct a manual

22  review of every single piece of CSAM in the millions --

23  tens of millions of reports that these defendants make

24  to NCMEC every year, the vast majority of which will

25  have nothing to do with this litigation, and it's not a

26  part of what's required by federal law.

27              In fact, we would submit to Your Honor,

28  again, that it runs counter to federal law.

```
 1            THE COURT:  This is litigation.
 2            MS. SIMONSEN:  Understood, Your Honor, but -- we
 3    are happy to brief this.
 4                 There is no litigation exception in the
 5    NCMEC reporting statute despite there being exceptions
 6    for other circumstances.
 7            THE COURT:  I understand.
 8                 You have to come to grips with the
 9    question of whether you want in a trial the plaintiffs
10    to be able to stand up and tell the jury that through
11    computer means, you destroyed the information that could
12    show what they need to prove their case.
13                 And I could read you -- I don't have it up
14    here anymore, but the jury instruction on that is
15    incredibly powerful about destroyed information, whether
16    it's intentional or not.
17                 We need to grapple with this issue in my
18    opinion in order to protect both sides.
19            MS. SIMONSEN:  Understood, Your Honor.
20                 I think plaintiffs recognize that we can't
21    preserve the CSAM, so I don't think that's evenly an
22    issue of dispute anymore.  We have to destroy the CSAM
23    after we've reported it.  It is then preserved by NCMEC.
24                 I would submit, Your Honor, I don't even
25    know how plaintiffs could ever admit this in evidence
26    because it is contraband.  It can't be possessed.  It
27    can't be shown again to an entire jury, which would
28    revictimize --
```

1        THE COURT:  Have you been to the criminal courts
2   building?
3        MS. SIMONSEN:  Well, in the context of criminal
4   proceedings, there's an exception, and that is the
5   exception that I mentioned to Your Honor in the NCMEC
6   reporting statute for criminal proceedings.
7            These are not criminal proceedings.
8   There's no exception.
9        THE COURT:  So they shouldn't be able to prove
10   their case if they have a plaintiff who was victimized
11   by being asked to provide pictures of their private
12   parts to somebody else?  They shouldn't be able to prove
13   their case?
14        MS. SIMONSEN:  I'm not suggesting that they
15   shouldn't be able to prove their case, Your Honor, but
16   in this instance there are certain limitations on
17   evidence that can be used to do that.
18            In this case, of course, to the extent
19   that there is CSAM in any of these individual user's
20   accounts, that is something that they could certainly
21   describe if they were the ones who were the victims, as
22   opposed to having, for instance, individuals -- that
23   each of the defendants review tens of millions of pieces
24   of CSAM revictimizing all of those victims in order to
25   summarize it in a way that, again, I'm sure there would
26   then be disputes about whether we adequately summarized
27   it.
28            In the meantime, we do have these NCMEC

1  reports which, for instance, you know, I think I

2  would -- we would want to submit this information with

3  our briefing to the extent that it is highly

4  confidential information --

5       THE COURT:  But the reports can't be linked to

6  any individual plaintiff.

7       MS. SIMONSEN:  Oh, they can because -- and that's

8  what we can submit more information to Your Honor about,

9  and this is what I was getting to with this idea of the

10 broader preservation order covering -- this is

11 information about these NCMEC reports and the CSAM that

12 the defendants do maintain and do preserve beyond the

13 actual CSAM itself, and we're in the process of

14 discussing with plaintiffs exactly what that information

15 is.

16            And so it would include, you know,

17 information I believe about the victim and the

18 perpetrator.  I mean, I would want to confirm that, and

19 we'd want to submit that to Your Honor.

20            But in addition, there is a way that each

21 defendant is able to confirm -- if we have, for

22 instance, say a list of relevant accounts in this

23 litigation, plaintiff accounts, there's a way to confirm

24 whether for any particular account there was a NCMEC

25 report that was made in connection with CSAM that may

26 have been associated with that account.

27       THE COURT:  So you can associate with them with

28 an individual?

1    MS. SIMONSEN:  We can associate NCMEC reports

2  with an individual, that's right, Your Honor.

3          And so, you know --

4    THE COURT:  Even though this AI machine is doing

5  it, you can associate it with the report?

6    MS. SIMONSEN:  Oh, absolutely.

7          What we can't do, Your Honor, is -- and

8  don't do and we believe would violate the statute is

9  have an individual human look at the CSAM and summarize

10 it and describe it before it gets reported to NCMEC,

11 which is what plaintiff is proposing that we do.

12          And if --

13    THE COURT:  All right.  Mr. Ayers?

14    MR. AYERS:  Yes.

15          What defendants are talking about isn't

16 actually what the plaintiffs' proposal contemplates.

17          What the plaintiffs' proposal contemplates

18 is to make sure, because of CSAM in certain context

19 would have to be deleted following its reporting to law

20 enforcement or NCMEC, ask them to preserve it past the

21 90 days.

22          We ask that they make sure that they

23 preserve prior to deletion and also provide to the

24 plaintiffs key information, and those are spelled out,

25 and they also -- those are spelled out not only just

26 talking about the suspected CSAM itself but talking

27 about the source of CSAM, suspected offender and victim,

28 and other identifying information and other additional

1  information.

2          CSAM is admissible in court, and what

3  happens in the context of using it in court, both civil

4  and criminal, is that the CSAM images would need to be

5  redacted, and those would be court personnel.

6          And so if we're talking about admitting,

7  the Court would need to take acceptance of CSAM images

8  from law enforcement and then conduct its own redaction

9  of that for its admissibility.

10          It's obviously a heavy burden on the court

11  providing such descriptions of the CSAM itself.  It may

12  aleve some of those burdens and also have information

13  related to the suspected CSAM that plaintiffs would have

14  and not have to use law enforcement resources in order

15  to potentially try to get -- get access to the CSAM from

16  NCMEC.

17          There are resources for that.  Nothing

18  about providing a description of the CSAM images

19  themselves would violate anything within the federal

20  rules, federal law whatsoever, so that's just not

21  accurate.

22          There are potential ways to provide

23  descriptive features of these videos.  Part of the

24  description we ask for is including whether it's a video

25  or image, the number of files, any distinctive features

26  of the material included in any of their available

27  metadata.  So there are ways to go about this and do it

28  to make sure that this information is preserved about

 1  the CSAM.

 2           The preservation order itself that we're

 3  discussing does not tackle this issue directly.  What

 4  we're talking about is contraband that the defendants

 5  will not be preserving, will be deleted, and so in the

 6  context of the deletion of evidence, we want to make

 7  sure as plaintiffs that we're able to get all the

 8  details around that deleted.

 9           Just as if there was an inadvertent

10  spoliation issue, they would -- defendants would be

11  required to describe what evidence was actually -- what

12  evidence was destroyed, what evidence was lost so that

13  plaintiffs would have those disclosures.

14           It's commonplace in litigation where

15  evidence is lost or destroyed, whether lawfully or

16  otherwise, to provide a description of that information.

17           And what plaintiffs provided in their

18  order -- in their proposed order is a statutory history,

19  a little background to explain how the federal law works

20  in connection with the reporting of CSAM as well as the

21  preservation of it.

22           And so we believe that the reporting to

23  NCMEC is a way for the defendants to make sure that this

24  information is preserved.

25           That said, if there's another means that

26  defendants would prefer to provide plaintiffs with this

27  valuable information about the CSAM, we can further

28  discuss it, but, nonetheless, the plaintiffs have a

1  right to this information about it to make sure we

2  understand information about the victim itself, about

3  the abuser, and about the CSAM.

4       MS. SIMONSEN:  Your Honor, with the exception of

5  the description of the CSAM, which I don't really know

6  what Mr. Ayers means by that, I think we can continue to

7  meet and confer as we have been to share with him

8  information about the CSAM that we do preserve, which

9  some of those items he just mentioned we do preserve,

10 and we told him that, and we told him that we'll commit

11 in the preservation order that we're negotiating to

12 preserve that information in connection with our other

13 preservation efforts.

14       If Your Honor would prefer, we can go

15 ahead and put that into a preservation order that would

16 be entered separately for purposes of CSAM, but I think

17 further conferral on the description of the CSAM is

18 probably going to be the nub of the issue.

19       I'll also note, Your Honor, that if

20 Mr. Ayers is aware of a way in civil proceedings through

21 law enforcement to admit CSAM, then it's unclear to me

22 why he wouldn't pursue that route to the extent that

23 plaintiffs want to introduce this in evidence at trial.

24       I'm not aware that that's permissible, but

25 to me that seems to be the solution rather than having

26 defendants create summaries of CSAM, which as I've

27 described is impracticable.

28       But I do think, Your Honor, additional

 1  briefing on this may be the most helpful for Your Honor,
 2  and the parties have proposed submitting something by
 3  May 26th for Your Honor's consideration if that would be
 4  acceptable.
 5          THE COURT:  So that's fine.
 6                  I think it probably -- so let me ask
 7  Mr. Ayers.
 8                  You want to continued to see how close you
 9  can get on this?  That would be helpful.
10          MR. AYERS:  I think if the parties -- the parties
11  can continue to meet and confer to see if we can come to
12  a closer agreement.
13                  I will say just quickly in response, you
14  know, CSAM -- while CSAM has been admitted and is
15  admissible, there's significant burdens to it, as well
16  as the access to the CSAM images by plaintiffs counsel,
17  as well as the victims themselves.
18                  Since NCMEC can't -- we can't get access
19  through NCMEC itself, the defendants' proposal
20  essentially is to say, "Hey, we're providing the CSAM to
21  NCMEC which you can't get from NCMEC anyway, and this
22  isn't admissible in court so tough."
23                  And so we are looking for a mechanism to
24  be able to provide that, use the information about that
25  CSAM so that it would be usable and useful as evidence
26  to the Court, as well as to plaintiff.
27                  So we're happy to continue to meet and
28  confer to see if we can find some more common ground.

1        THE COURT:  Okay.  That sounds fine.

2               So maybe what we should though -- I think

3  you were proposing simultaneous briefing on what you

4  were unable to agree with.

5               I think it's probably better for

6  plaintiffs to bring a motion because if I'm ordering

7  defendants to do something that is arguably contrary to

8  federal law in order to meet the requirements of civil

9  litigation, then it better be based on a noticed motion.

10 Okay?

11              So let's do it this way.  Get as close as

12 you can, and then, Mr. Ayers, go ahead and file your

13 motion by May -- by May 26th, and go ahead and submit a

14 briefing schedule just on Case Anywhere, okay, or you

15 could do, you know -- you could do it as a stip and

16 proposed order.

17              Do it on Case Anywhere, and let me know

18 and then request a hearing date that way.  Okay?

19              Give me your briefing schedule and a

20 hearing date.  Okay?

21              All right.  So that bring up filing

22 proposed orders with the court.

23              So you had a proposed order regarding

24 waiver of formal service, which is fine, but, you know,

25 it's whatever Attachment 10 is to the joint report.

26              So we don't want the staff to have to take

27 the joint report apart and get that out and then have to

28 file it.  So when you -- the way our electronic system

 1  works is if it has the word "proposed order" in it or
 2  "stip and proposed order," it gets into the work queue,
 3  basically.
 4            So file that as a -- as a proposed order
 5  or as a stipulation and proposed order letting me know
 6  that it's agreed to by the parties, and then that is
 7  easier to execute that way.
 8            Did my staff have anything else, since
 9  we're talking about proposed orders, that you wanted to
10  let counsel know about in terms of getting orders to us?
11       THE CLERK:  I think that's the most important
12  part, was that anything mentioned in a report and if
13  it's proposed, it needs to come into the work digitally
14  standing on its own so we can process it.
15       THE COURT:  Okay.  Good.
16            If you have questions, my staff is
17  wonderful.  You can call them, but don't abuse the
18  privilege.  Okay?
19            All right.  Call and benefit order,
20  turning to the plaintiffs, so I talked last time about
21  the possibility of a consensual agreement among counsel.
22            Have you tried that and failed?
23       MS. JEFFCOTT:  The problem we have with that is
24  there's already an order entered in the MDL that would
25  essentially hold back 10 percent of most, if not all, of
26  the cases that are already filed in the JCCP and that
27  will be filed in the future most likely.
28            And so in order to essentially prevent a

1   double holdback that we would be able to achieve, if we

2   did a private agreement, we would need something more

3   formal along the lines of we believe a parallel common

4   benefit order filed in the litigation that would

5   explicitly say that there isn't going to be a double

6   holdback, that there wouldn't be a 10-percent holdback

7   on cases that are subject to an MDL assessment, and also

8   that would explain that there would be coordination

9   between the MDL and the JCCP, and that there could be no

10  duplicative work, and all of the elements of that we're

11  trying to seek through coordination that's already

12  ongoing in the litigation.

13         THE COURT:  Can't you do that yourselves though?

14             Because you can agree to something --

15  well, my position is that that ought to be the case for

16  both federal and state court, but I don't have anything

17  to do about federal court.

18             Why can't you take all of those things

19  you've just said and agreed to them among yourselves,

20  and then, you know, I can ask that you submit it to

21  Judge Gonzalez Rogers and see if there is anything she

22  believes in your agreement that would conflict with her

23  orders?

24         MS. JEFFCOTT:  We can certainly try that.

25             I think one concern we have is that as

26  additional cases get filed into the JCCP, that we would

27  have to essentially renegotiate or have those new -- new

28  parties, new counsel entered into the agreement.

```
 1        THE COURT:  You'd have a provision for new
 2   counsel being added, and if you've got a free rider in
 3   the future, there are a lot of reasons why somebody
 4   coming in would not be a free rider, quite honestly, but
 5   maybe there would be a free rider.  You could bring it
 6   to the court.
 7        MS. JEFFCOTT:  Your Honor, we'll work to --
 8        THE COURT:  Why don't you try to do that?
 9             Let me -- sorry.
10             I know this may seem like wasted effort,
11   why can't I just sign a piece of paper, but ultimately
12   if I don't have authority to, I can't enforce it anyway,
13   so -- whereas if you do it by agreement, you know, it's
14   a contractual arrangement.
15             And so if you're not able to achieve that,
16   you can come back and file a motion.
17        MS. JEFFCOTT:  One question, Your Honor.
18             If we're able to achieve an agreement,
19   will we be able to submit that as sort of a stipulation
20   so that at least we've made a record of it?
21        THE COURT:  Yes.  You'll be able to make a record
22   of it.
23        MS. JEFFCOTT:  Thank you, Your Honor.
24        THE COURT:  Yes.  Definitely.
25             So if you can't achieve that, you can
26   bring a motion.
27             I will want to know which counsel are not
28   in agreement with going along with everyone else's
```

 1  proposal, so to speak, and -- but then you'll have to
 2  brief the authority.
 3           There are articles by Professor Charles
 4  Silver of the University of Texas, and I think he just
 5  posted one.  I found it online on unjust enrichment
 6  theory.  I think he's already written that there's no
 7  authority for common benefit fund theory, and maybe he's
 8  out there by himself on it.
 9           I'm aware of the whole history of the
10  complex litigation handbook on the federal side and that
11  everyone does it, but there is that -- there are those
12  arguments that Professor Silver makes, and moreover, and
13  most importantly here, we'd have to address it under
14  California law.  We have to find a way under California
15  law.
16           So -- and I just-- I'm not going to preach
17  on it.  I want to be helpful to all parties here, but
18  for reasons I mentioned last time, it feels very uneven
19  to me to be issuing orders to make sure that counsel on
20  one side can get paid.
21           It just doesn't feel right, understanding
22  however, that when you have multiple counsel, you've got
23  to find some way of being fair to the people who are
24  taking the laboring oar, who are the people sitting
25  here.
26      MS. JEFFCOTT:  I think what we're trying to
27  establish is a mechanism so that we can raise funds to
28  pursue the litigation and also at the back end make sure

 1  that people are compensated for their expenses and time.

 2              We appreciate the guidance you've

 3  provided.  We'll work through this and report back if

 4  necessary.

 5         THE COURT:  Yeah, let me know.

 6              I'm not totally foreclosing, but -- well,

 7  I've said what I've said, but try to work it out

 8  yourselves, and you may be establishing some new, you

 9  know, mechanisms for going forward.

10              As I'm sure everybody here knows, the

11  Federal Rules Committee is considering -- the Civil

12  Rules Committee sent to the Standing Committee rules

13  about the MDL -- proposed rules by the MDL, and it does

14  make mention of the common benefit fund there.

15              So if that's -- if those are approved,

16  which works -- the rules committees work very slowly.

17              If that's approved, then people will point

18  to that and say that's the authority for it, and maybe

19  it is.  We'll see what they do.

20              Okay.  I am happy to add Mr. Kamamoto

21  (phonetic) to the plaintiffs' steering committee, so if

22  you'll just file a proposed order on that in that

23  regard?

24         MS. JEFFCOTT:  Yes, Your Honor.

25         THE COURT:  Stip and proposed order.

26              With respect to the cases that you

27  helpfully listed in the joint report, plus the one case

28  that was mentioned in the Case Anywhere posting as one

 1  you've recently agreed should be included in the JCCP,

 2  I've consulted with my clerk, and we think it's better

 3  that the clerk's minute order today just add those cases

 4  on.

 5          And apparently there's a new code that

 6  will help the clerk get that organized in the court

 7  system, so let us try that, and then you don't have to

 8  submit a separate proposed order.  Okay?

 9      MS. JEFFCOTT:  Thank you, Your Honor.

10      THE COURT:  Good.

11          Then the final thing.  This is not

12  mentioned in the joint report, but I'm adding it on.

13          So I had requested a proposed order

14  allowing plaintiffs to be named by their pseudonyms.  I

15  did not enter what was given to me, and I really wanted

16  some more on that.

17          So the things that I need are, I think it

18  should be limited to plaintiffs who are minors or

19  plaintiffs who are not minors but who are alleging

20  sexual abuse because I think those are pretty much

21  automatic categories for listing people by pseudonyms.

22          And if you accept that limitation, then I

23  think you can say that there is good cause, and if you

24  didn't mind looking for a case about the issue of -- the

25  minors I think is very clear, and the whole dependency

26  system operates that way, but the issue about adults and

27  sexual abuse, there's probably a case on that.  If you

28  can cite it, it would be great.

```
 1          MS. JEFFCOTT:  Thank you, Your Honor.

 2          THE COURT:  So resubmit that when you can.

 3              So I'll set a next status conference, but

 4    before I do that, is there anything else?

 5          MS. SIMONSEN:  Your Honor, defendants just wanted

 6    to clarify.

 7              I believe the plaintiffs had reported that

 8    there are 124 cases in the JCCP.  We wanted you to be

 9    aware that that is actually a count by plaintiffs of the

10    number of plaintiffs.  By our count, there are actually

11    61 cases in the JCCP.

12              Plaintiffs have begun filing

13    multi-plaintiff complaints, and that is the reason why

14    there is half the number of cases as there are

15    plaintiffs.

16          THE COURT:  Thank you.  I appreciate that

17    clarification.

18              Sixty-one cases, yeah, and that becomes

19    what we live with in state court because we don't

20    require them to be filed separately, although, trust me,

21    the recordkeeping is much simpler if you can do them

22    separately.

23          MS. SIMONSEN:  And as we've stated in the waiver

24    of service agreement, the defendants of course would

25    reserve the right to take the position down the road, to

26    the extent there are trials, that those should be

27    individual trials and not --

28          THE COURT:  Absolutely.  Absolutely.
```

Case 4:22-md-03047-YGR   Document 5013-11   Filed 10/05/23   Page 76 of 151

```
 1              Let me ask plaintiffs.
 2              It would be helpful if you would not mix
 3  plaintiffs from different states in one complaint.  I'm
 4  not ordering you in that regard, but that would be
 5  helpful.
 6         MS. JEFFCOTT:  Okay.  Your Honor, I'll pass that
 7  along.
 8         THE COURT:  Okay.  Thank you.
 9              Anything else?
10         MS. CLEOFE:  Your Honor, Cherisse Cleofe on
11  behalf of plaintiffs.
12              Just a point of clarification for the
13  proposed order regarding formal service.
14              Did you need the parties to resubmit that
15  proposed order, or is the proposed order from the joint
16  report acceptable?
17         THE COURT:  I need you to resubmit it.
18         MS. CLEOFE:  Understood, Your Honor.
19         THE COURT:  So we're not taking courtesy copies
20  apart or printing out parts of Case Anywhere things and
21  separating them.
22              Anything you want entered as an order
23  should always be filed as a separate document or lodged
24  as a separate document.
25         MS. CLEOFE:  Understood, Your Honor.  We'll
26  resubmit that and the other one.
27         THE COURT:  Okay.  Appreciate that.
28              Okay.  Thank you.  Very good work on
```

 1  everybody, and I know you had disagreements, but I think

 2  it will get easier as we go along.  Maybe it won't,

 3  but --

 4        MR. ORENT:  Your Honor, this is Jonathan Orent

 5  for plaintiffs.

 6             We have one housekeeping that's come up,

 7  and I suspect others may have the same issue, and I

 8  wanted to raise it before the Court, which is we filed a

 9  stipulation of dismissal along with defendants in a

10  particular case.  This case is 22-CIV-03783.

11             The case was being refiled in the MDL, and

12  the stipulation of dismissal was rejected by the court

13  stating that we needed to prove essentially it was a

14  settlement and that the settlement met the needs of the

15  minor child, and I just wanted to raise this issue

16  because this was an instance where we were immediately

17  refiling in the MDL and wanted to really flag it for the

18  Court and understand how the Court wanted those types of

19  issues handled.

20        THE COURT:  Minor's compromises will at some

21  point, if these cases are resolved, consensually be a

22  big issue, no question about it, but I take your point

23  that this is just being refiled.

24             Ms. Miro, can you shed any light on this?

25        THE COURTROOM ASSISTANT:  Yeah, it actually came

26  through as a request for dismissal, and I explained to

27  them that we couldn't dismiss a minor.

28        THE COURT:  Okay.  So here's what I'd like you to

 1 | do.
 2 |          I would -- and my staff is correct about
 3 | that, but I take your point that you're refiling in
 4 | federal court, and I think there is a difference.
 5 |          So why don't you file a document called
 6 | Request for Dismissal and Proposed Order, okay, and
 7 | explain the circumstances, and that way I can sign it.
 8 |          I can approve the deviation from the --
 9 | what would be the ordinary rule if -- but I'll probably
10 | need a declaration stating it's going to be refiled.
11 |          Does that make sense?
12 |      MR. ORENT:  Absolutely, Your Honor.  Thank you
13 | for the clarification.
14 |      THE COURT:  Sorry for the extra work, but we're
15 | serious about our minors' compromises.  Okay?
16 |          Anything else?
17 |          All right.  We can set a further status
18 | conference.  Do you have any suggestions?
19 |          And thank you, by the way, for being --
20 | going along with us and moving this one.
21 |          I had planned I was going to be in trial.
22 | My case settled, but I was going to do this and then
23 | proceed into my trial, which is why I moved it to the
24 | morning, but the trial is on its way for now.
25 |          Any suggestions on how long we should wait
26 | before the next -- is there anything in federal court we
27 | should link it to?
28 |      MS. SIMONSEN:  Your Honor, I think at least from

 1  the defense side, and I welcome other defendants' views,

 2  that given these upcoming briefing that we'll be doing

 3  on various issues, I think that would probably serve to

 4  address the most immediate issues that we're currently

 5  working through.

 6              I think that probably setting a status

 7  conference -- we may not need another one until

 8  potentially after the demurrers are resolved or maybe we

 9  come back to the court --

10       THE COURT:  No.  You're going to have more before

11  the demurrers are resolved.  I'm going to make sure

12  these things are moving forward, and we have the August

13  filing dates and all these things.

14              But if -- Plaintiffs?

15       MS. JEFFCOTT:  Your Honor, I think not

16  surprisingly we find these conferences very helpful.

17  They keep us moving forward and at a pace I think that

18  is particularly beneficial to plaintiffs.

19              And so, you know, a month, six weeks,

20  that's something we would envision as being the next

21  conference so that we can keep trucking along.

22       THE COURT:  Okay.  Let me just look at my notes a

23  minute.

24              We may be able to -- we would set it maybe

25  at the same time as we're having a hearing on the CSAM

26  preservation order.  Right?

27       MS. SIMONSEN:  That makes good sense, Your Honor.

28       THE COURT:  But we don't know when that's going

 1  to be or indeed if we need it, so here's what I'll do.

 2            I'll set for -- let's see.  Did I already

 3  set a June 1 appearance I think?  Is that the date I set

 4  the nonappearance?

 5       THE CLERK:  Yes.

 6       THE COURT:  So June 1, that nonappearance case

 7  will also be re setting further status conference.

 8  Okay?

 9            So I'll set it consistent with the hearing

10  date on the CSAM motion, and then if there's some other

11  motion that has to come up in that time with that.

12       MS. SIMONSEN:  Thank you, Your Honor.

13       THE COURT:  So that would be the next date.

14            Plaintiffs' liaison counsel will give

15  notice.  We will get out a minute order that you can

16  use.

17       MS. CLEOFE:  Thank you, Your Honor.

18       THE COURT:  Anything?

19       MS. SIMONSEN:  Nothing from the defense.

20       THE COURT:  Very good.  Thank you very much.

21

22            (The proceedings were concluded.)

23                    - OOO -

24

25

26

27

28

```
 1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2               FOR THE COUNTY OF LOS ANGELES

 3   DEPARTMENT SSC 12          HON. CAROLYN B. KUHL, JUDGE

 4
     SOCIAL MEDIA CASES,              )
 5                                    ) CASE NO. JCCP5255
                                      )
 6                                    ) REPORTER'S
     _____) CERTIFICATE
 7

 8                I, Christine Kwon-Chang, official pro

 9   tempore court reporter of the Superior Court of the

10   State of California, for the County of Los Angeles, do

11   hereby certify that I did correctly report the

12   proceedings contained herein and that the foregoing

13   pages comprise a full, true and correct transcript of

14   the proceedings taken in the matter of the

15   above-entitled cause on May 3, 2023.

16

17

18                Dated this 4th day of May, 2023.

19                _____

20                Christine Kwon-Chang, CSR No. 12143, CRR
                  Official Pro Tempore Reporter
21

22

23

24

25

26

27

28
```

SOCIAL MEDIA CASES
JCCP5255,  05/03/2023

CERTIFIED COPY

MOTION
Index: 1..aiming

**1**

**1**  28:1 30:4,27 31:1 35:12 63:3,6

**10**  51:25 52:25

**10-percent**  53:6

**100**  22:21

**12**  1:4

**12143**  1:5

**124**  58:8

**14**  17:20 18:1 20:17 21:8 22:22

**16**  10:27

**2**

**2**  17:17

**2.550**  12:1 13:2,10,14,20 14:3,7, 11,17

**20-page**  30:18

**2000**  4:1

**2023**  1:3

**22-CIV-03783**  60:10

**230**  20:25

**26th**  33:26 35:7,11 50:3 51:13

**3**

**3**  1:3

**30**  11:22,25 12:18,24 17:26 18:27 21:9,20

**300-page**  21:9

**30th**  19:6

**31**  18:28

**31st**  19:6

**4**

**4**  31:11,12,22

**5**

**5**  20:17

**6**

**61**  58:11

**7**

**7**  13:27

**8**

**88-page**  30:13

**9**

**90**  46:21

**A**

**A.M.**  1:6

**ability**  31:7 38:27 39:19

**absent**  5:5,8 6:19

**absolutely**  46:6 58:28 61:12

**abuse**  52:17 57:20,27

**abuser**  40:5 49:3

**accept**  57:22

**acceptable**  10:2 50:4 59:16

**acceptance**  47:7

**access**  14:27 15:1 29:7,8 32:4, 22,26 39:22 40:17,22 47:15 50:16,18

**account**  14:16 37:12,22,23 42:8 45:24,26

**accounts**  32:5,17 33:18,19 34:28 37:23 42:5 44:20 45:22,23

**accurate**  47:21

**achieve**  53:1 54:15,18,25

**action**  5:11 8:28

**actual**  9:4 19:15 36:8,11,27 37:3, 8,12 38:18 39:23 40:7,26 41:16 42:3 45:13

**add**  56:20 57:3

**added**  54:2

**adding**  57:12

**addition**  45:20

**additional**  5:2 12:2 23:20 46:28 49:28 53:26

**address**  7:20 9:3 21:7 23:11 24:11 36:28 55:13 62:4

**addressed**  36:25

**addressing**  3:17 14:19

**adds**  22:18

**adequately**  26:22 44:26

**adjudicated**  16:26

**adjusting**  7:16

**adjustments**  14:16

**admissibility**  47:9

**admissible**  39:2 40:27 47:2 50:15,22

**admit**  43:25 49:21

**admitted**  50:14

**admitting**  47:6

**adults**  57:26

**advance**  4:4 22:16

**advances**  22:10

**afoul**  16:27 36:9

**agencies**  39:7

**aggregator**  24:23,28 25:10,16 26:12

**agree**  6:12,19 8:16,18 10:25 17:9,10 19:26 20:4 25:4 27:25 35:18 51:4 53:14

**agreeable**  25:25

**agreed**  6:22,24 9:21,23 10:20 28:8 33:13,25 34:1 35:8,15 37:4 52:6 53:19 57:1

**agreement**  5:5 6:17 20:12 34:4 35:20,26 36:1,7 50:12 52:21 53:2, 22,28 54:13,18,28 58:24

**agrees**  4:16

**ahead**  15:6 35:15 49:15 51:12,13

**AI**  41:18 46:4

**aiming**  18:18

**aleve** 47:12

**allegations** 16:28

**alleged** 16:24 40:5

**alleging** 57:19

**Allen** 1:15

**allowing** 57:14

**Alphabet** 2:9,12

**alternative** 10:14 36:14

**alternatives** 36:10

**amending** 15:13

**Amendment** 20:25

**analysis** 22:27 23:1

**Andrea** 2:5

**ANGELES** 1:3

**animated** 36:23

**answers** 27:16

**anticipate** 14:26 19:24 23:15
24:27

**anticipated** 21:26

**anticipates** 7:17

**anticipation** 19:23

**anxious** 25:13

**anymore** 43:14,22

**anyplace** 7:24

**apparently** 57:5

**appearance** 16:2 63:3

**appearances** 1:7,13 3:2,3

**appellate** 10:6

**applicable** 6:24

**applies** 13:16 26:18

**apply** 11:20 13:17,18,19

**approach** 6:2,12

**approve** 61:8

**approved** 56:15,17

**approving** 19:24

**area** 36:1

**arguably** 12:8 51:7

**argued** 24:21

**argument** 17:13

**arguments** 20:22 21:16 55:12

**arise** 4:8

**arises** 12:20,23

**arrangement** 54:14

**articles** 55:3

**Ashley** 2:17 14:12

**assessment** 53:7

**ASSISTANT** 60:25

**associate** 45:27 46:1,5

**assuming** 19:1

**attach** 31:17

**attached** 7:9 35:24

**Attachment** 51:25

**August** 28:1 30:4,27 31:1,11,12,
22 62:12

**authority** 54:12 55:2,7 56:18

**automatic** 57:21

**avoid** 12:11,22

**aware** 49:20,24 55:9 58:9

**awareness** 9:26

**Ayers** 39:11,12,13,14 41:3,13
46:13,14 49:6,20 50:7,10 51:12

---

**B**

**back** 4:1 6:7 15:26 28:7 30:18,27
52:25 54:16 55:28 56:3 62:9

**background** 48:19

**based** 10:5 19:22 24:9 41:10
51:9

**basically** 10:27 52:3

**basis** 14:20

**bears** 14:20

**Beasley** 1:15

**begun** 58:12

**behalf** 2:3 5:13 39:14 59:11

**believes** 53:22

**beneficial** 62:18

**benefit** 52:19 53:4 55:7 56:14

**Bergman** 1:24,25

**big** 20:20 21:14 60:22

**binding** 7:1

**bit** 14:23

**Blaschke** 2:13,14 5:12

**Blavin** 2:25,26

**board** 9:11

**Boyle** 1:19

**briefed** 8:8,10,16 9:17 11:10
20:26

**briefing** 8:22 9:2,11,14,23 11:15,
16 14:25 19:19 20:3 32:10 34:6,7
41:4 45:3 50:1 51:3,14,19 62:2

**briefly** 20:8

**briefs** 9:19 10:21 18:15,19,20
21:1

**bring** 9:9 15:26 21:24 26:28 33:8
51:6,21 54:5,26

**broader** 38:1 45:10

**brought** 36:2

**building** 44:2

**burden** 12:9,12,22 13:3 14:7,20
47:10

**burdens** 47:12 50:15

**burdensome** 12:1 13:10

**burdensomeness** 12:6

**Burling** 2:17

**Byte** 2:6,15,24

---

**C**

**calendar** 17:25 24:10

**California** 1:3 7:23 8:3 10:5,15
12:1 13:2,8,10,11 15:14 23:3,16
55:14

**call** 31:9 52:17,19

**called** 24:14 61:5

**calls** 40:18

SOCIAL MEDIA CASES                                          MOTION
JCCP5255, 05/03/2023            CERTIFIED COPY      Index: careful..contents

**careful** 16:26

**CAROLYN** 1:4

**case** 1:1,2 4:11,18,27 8:3 13:12 15:9 22:24,25 25:6 26:2,9 27:3,4 31:10 34:24 35:12 40:13 43:12 44:10,13,15,18 51:14,17 53:15 56:27,28 57:24,27 59:20 60:10,11 61:22 63:6

**cases** 1:2,13 7:25 20:20 37:19 38:4 52:26 53:7,26 56:26 57:3 58:8,11,14,18 60:21

**categories** 32:3 57:21

**CBS** 13:12

**Center** 1:26 38:7,27

**cetera** 31:17

**challenging** 20:27

**chance** 34:6

**change** 13:20 37:7

**charged** 38:10

**Charles** 55:3

**check-in** 28:6

**Cherisse** 1:17 59:10

**child** 39:27 60:15

**Children** 38:8,28

**Chiou** 2:7,8

**choice** 21:27,28 22:5,19,24 23:6

**Chris** 39:10,14

**CHRISTINE** 1:5

**Christopher** 2:8

**circumstances** 10:24 43:6 61:7

**cite** 20:20 57:28

**civil** 16:13 47:3 49:20 51:8 56:11

**claim** 23:4 27:1

**claim-by-claim** 23:1

**claims** 20:16,17,24 21:8 22:22 23:9,20

**clarification** 23:26 58:17 59:12 61:13

**clarify** 58:6

**clear** 14:14 23:27 57:25

**Cleofe** 1:16,17 59:10,18,25 63:17

**clerk** 3:1 16:6 52:11 57:2,6 63:5

**clerk's** 57:3

**clients** 27:12

**close** 17:26 50:8 51:11

**closer** 50:12

**code** 15:15,16 57:5

**comment** 28:2 31:4

**comments** 5:14 6:1,6 7:16

**commit** 23:18 49:10

**committee** 16:14 56:11,12,21

**committees** 56:16

**common** 50:28 53:3 55:7 56:14

**commonplace** 48:14

**commonsense** 6:4

**communication** 4:11,13

**companies** 25:28

**companion** 18:19

**compel** 29:16

**compensated** 56:1

**competing** 9:1 17:8,14 28:1 31:2 33:25 35:8

**complaint** 16:17,28 17:19 21:9, 16 23:3 59:3

**complaints** 16:24 17:18 58:13

**complete** 29:8 32:26 33:27 34:2

**completed** 35:10

**completing** 28:25

**complex** 4:2,6 55:10

**complexity** 20:24

**complicated** 16:25 22:20

**complication** 36:4

**comply** 15:13

**compromises** 60:20 61:15

**computer** 43:11

**concepts** 6:20

**concern** 22:10 53:25

**concerns** 36:23,25,28 37:1

**concluded** 63:22

**conclusion** 14:24

**concrete** 4:8

**conditionally** 12:4 14:5

**conduct** 42:21 47:8

**conducted** 4:5

**conducting** 8:2

**confer** 5:4 8:25 49:7 50:11,28

**conference** 5:6,7 9:10,16 11:5,9, 12 29:2,15 31:24,25,26 34:5 35:14 58:3 61:18 62:7,21 63:7

**conferences** 34:8 62:16

**conferral** 49:17

**conferred** 28:4 36:6

**conferring** 37:5

**confident** 4:10,12

**confidential** 7:28 11:23,25,26 12:8,14,15 15:21 45:4

**confidentiality** 15:20

**confirm** 45:18,21,23

**conflict** 53:22

**confront** 27:15

**Congress** 38:11

**connection** 5:26 29:3 37:5 42:8 45:25 48:20 49:12

**consensual** 52:21

**consensually** 60:21

**consideration** 50:3

**considerations** 17:14

**considered** 16:28

**consist** 6:20

**consistent** 14:3 29:19 63:9

**consulted** 57:2

**contemplated** 8:27 29:14

**contemplates** 46:16,17

**contemplating** 30:12

**contents** 40:3

**context** 9:4 37:28 44:3 46:18 47:3 48:6

**continue** 28:27 39:17 49:6 50:11,27

**continued** 50:8

**continuing** 29:28

**contraband** 36:5 43:26 48:4

**contractual** 54:14

**contrary** 51:7

**controlling** 22:28

**converse** 7:3

**coordinate** 3:13

**coordinated** 3:24 4:23

**coordinating** 20:28

**coordination** 3:13 5:16 18:17 53:8,11

**copies** 59:19

**correct** 24:4 25:11 61:2

**correctly** 25:12 35:27

**correspond** 30:21

**Council** 13:24 16:14

**counsel** 5:10 6:9,16 7:21 8:11,13 25:8 26:17 27:24,26 30:25 39:22 50:16 52:10,21 53:28 54:2,27 55:19,22 63:14

**count** 19:4 58:9,10

**counter** 41:22 42:28

**counting** 19:5

**country** 7:25

**couple** 3:10 30:19

**court** 1:10,12,27 2:28 3:7,23 4:20,26 5:1,9,11 6:9,26 7:5,19 8:8,24 9:6,16,18 10:7,15,16,18,27 11:8,22 12:1 13:1,2,4,8,9,10,13, 26,28 15:16 16:6,12 17:21,25,28 18:25 19:1,2,3,9,20 20:10 21:18 22:23,24,25 23:23 24:4 25:3 26:3, 15 27:22 28:14,26 29:28 30:15,23 31:3 32:11,28 33:3 34:20 35:4,18, 22 38:5,9,12,15,22 39:2,9 41:1,7, 10 42:15 43:1,7 44:1,9 45:5,27 46:4,13 47:2,3,5,7,10 50:5,22,26 51:1,22 52:15 53:13,16,17 54:1,6,

8,21,24 56:5,25 57:6,10 58:2,16, 19,28 59:8,17,19,27 60:8,12,18, 20,28 61:4,14,26 62:9,10,22,28 63:6,13,18,20

**Court's** 5:14 6:12 13:11 24:2 28:2 31:4

**courtesy** 59:19

**courtroom** 1:14,28 3:3 60:25

**courts** 3:24 4:2 10:6 16:5 44:1

**cover** 31:15 32:13 37:17

**covered** 19:23

**covering** 45:10

**Covington** 2:17,20

**create** 10:17 41:18,20 49:26

**creates** 22:9

**creating** 4:3

**credibility** 13:7

**Creed** 1:19 6:10 7:4 8:14 10:4,23 12:26,28 23:26 24:27 26:10 28:10,18 30:13,16 33:1 34:14,25 35:20 38:10 39:10

**criminal** 36:9 42:15 44:1,3,6,7 47:4

**Critically** 14:1

**CSAM** 35:23 36:5,8,11,14,19,21, 27 37:3,5,8,12,14 38:3,18 39:16, 23,27 40:8,10,16,26 41:6,16,19, 21,24 42:1,3,7,9,22 43:21,22 44:19,24 45:11,13,25 46:9,18,26, 27 47:2,4,7,11,13,15,18 48:1,20, 27 49:3,5,8,16,17,21,26 50:14,16, 20,25 62:25 63:10

**CSR** 1:5

**current** 19:23 39:25 40:14,24 41:6

---

# D

**Dance** 2:6,15,24

**data** 24:23,27 25:10,16 26:12 29:4,7,17,23 32:1,3,7

**date** 19:10,14 24:9 51:18,20 63:3, 10,13

**dates** 19:15 24:6,10 62:13

**day** 16:19,20 19:6 35:13

**days** 10:27 11:22,25 12:10,12,18, 24 15:2,23 18:28 31:24 46:21

**deadline** 11:26 16:9,17 34:1 35:22

**deal** 12:21

**dealing** 10:8

**dealt** 10:14

**decide** 17:27 19:9

**decided** 19:14 23:13

**decision** 13:11 17:21,28 19:2,3

**decisions** 4:8

**declaration** 61:10

**defend** 15:11

**defendant** 2:3 5:2 6:16 18:19,22 21:8 26:18 31:6 36:17 45:21

**defendant's** 27:14

**defendants** 2:18,21 3:22 5:1,9, 13 8:17,20 10:10,13 14:13 17:22 18:4 25:25 26:21 28:20,23 29:5 32:4 33:17,20,21 36:8,22,28 37:13,18 38:2 39:19,24 40:15 41:16 42:19,23 44:23 45:12 46:15 48:4,10,23,26 49:26 51:7 58:5,24 60:9

**defendants'** 31:16 36:20,26 39:26 41:28 50:19 62:1

**defense** 1:27 20:22,28 21:3 23:21 27:11 62:1 63:19

**defer** 39:12

**Degtyareva** 2:1,2

**delete** 39:28

**deleted** 46:19 48:5,8

**deletion** 39:26 40:8 46:23 48:6

**demurrer** 17:1,7 23:14,22 32:19, 20

**demurrers** 16:25 17:20,23 18:2 19:21 24:21 29:18 62:8,11

**DEPARTMENT** 1:4

**dependency** 57:25

**depending** 4:19 8:7

**deposition** 11:23,24 12:3,13 27:15

**depositions** 27:5

**describe** 44:21 46:10 48:11

**description** 42:9 47:18,24 48:16 49:5,17

**descriptions** 47:11

**descriptive** 47:23

**designate** 11:22,26 12:13

**designating** 15:4

**destroy** 43:22

**destroyed** 36:15 43:11,15 48:12, 15

**destruction** 40:12

**detail** 27:1

**details** 48:8

**detect** 42:1

**detected** 41:24

**determine** 11:11 42:8

**determined** 24:28 42:5

**deviation** 61:8

**dictate** 5:25

**difference** 61:4

**differences** 23:10

**difficult** 26:21,23

**digit** 22:13

**digitally** 52:13

**direct** 39:22 40:16

**directly** 41:22 48:3

**disagree** 20:5 33:1

**disagreements** 60:1

**discern** 32:15

**disclosed** 8:5 39:23

**disclosure** 8:21 9:13

**disclosures** 7:22 48:13

**discovery** 3:14,23 4:22,23,26,27 5:7 6:23 11:5 13:18 24:14 25:14 29:19 33:5

**discovery's** 24:14

**discretion** 36:26

**discrimination** 23:4

**discuss** 9:16 11:2 26:11,12 29:28 48:28

**discussing** 5:17 36:13 45:14 48:3

**discussion** 3:12,16 28:11 29:26

**discussions** 17:10

**dismiss** 26:25 27:1 60:27

**dismissal** 60:9,12,26 61:6

**dispute** 39:25 40:14,24 43:22

**disputed** 7:15

**disputes** 9:3 13:18 44:26

**distinctive** 47:25

**District** 7:23

**do-overs** 16:8

**document** 28:12,16,19,22 29:10 30:20 31:3 33:22 59:23,24 61:5

**documents** 14:4 28:24 29:10 30:7 31:6 32:12

**Donahue** 2:11

**DONOHUE** 2:10

**double** 22:13 53:1,5

**doubt** 22:1

**downsides** 4:5

**draft** 5:16 7:14 8:17 21:11,18 23:2

**Drinker** 2:5,23

**duplicates** 4:27

**duplicative** 53:10

**E**

**earlier** 21:4,10 33:10 35:19

**early** 8:21 25:5 31:5

**easier** 14:23 16:15 52:7 60:2

**edit** 28:21

**edited** 30:20

**effect** 7:1

**effectively** 38:11 42:21

**effort** 54:10

**efforts** 17:9 49:13

**elaborate** 4:3 5:28 6:3

**electronic** 24:25 25:10 31:13 51:28

**electronically** 24:26

**elements** 53:10

**eliminated** 28:4

**else's** 54:28

**embedded** 5:16

**Emily** 1:18 25:21

**Emmel** 1:15

**encourage** 25:3

**end** 25:26,27 26:2,8 55:28

**enforce** 26:22 54:12

**enforcement** 39:6,21 40:9,22 46:20 47:8,14 49:21

**engaged** 6:7

**enjoy** 13:4

**enjoys** 13:3

**enrichment** 55:5

**ensure** 36:14

**ensuring** 29:6

**enter** 3:23 5:2,23,24 14:15 57:15

**entered** 7:13 9:12 49:16 52:24 53:28 59:22

**entering** 24:25

**enters** 8:24

**entire** 11:24 43:27

**entirety** 23:17

**entity** 24:24 25:24

**envision** 62:20

**envisioning** 31:14

**ephemeral** 34:28

**essentially** 20:19 22:26 24:9 50:20 52:25,28 53:27 60:13

**establish** 55:27

**establishing** 14:20 56:8

**evaluate** 27:3

**evaluation** 33:22

**evenly** 43:21

**everybody's** 10:20 12:16

**evidence** 39:2 40:2,9,12,27 43:25 44:17 48:6,11,12,15 49:23 50:25

**excellent** 16:18

**exception** 13:19 43:4 44:4,5,8 49:4

**exceptions** 43:5

**execute** 52:7

**Exhibit** 13:27

**exhibits** 31:17

**expect** 18:23

**expectations** 18:25

**expedited** 13:22

**expenses** 56:1

**experience** 3:28 4:3 7:24 10:5,7 16:23 27:23

**experienced** 12:20

**experiences** 16:21

**expert** 7:21 8:5

**experts** 9:13,14

**explain** 32:6 48:19 53:8 61:7

**explained** 37:21 60:26

**explanation** 32:10

**explicitly** 53:5

**Exploited** 38:8,28

**expressed** 3:18

**expressly** 41:23

**extensive** 7:24

**extent** 23:21 37:7 41:24 44:18 45:3 49:22 58:26

**extra** 61:14

**extremely** 41:25

---

## F

**fact** 24:16 26:1,5,8,13 27:7,23 28:1,16,17,20,25 29:3,8,19,21,22, 25,27 30:2,11,14,18,21,24,26 31:3,7,16,27 32:27 33:5 37:12 42:27

**facts** 16:27 21:7

**Faegre** 2:5,23

**failed** 52:22

**fair** 55:23

**fall** 23:23

**falls** 19:6

**features** 47:23,25

**federal** 4:20 8:8 11:19 19:20 22:24,25 36:9 42:15,26,28 47:19, 20 48:19 51:8 53:16,17 55:10 56:11 61:4,26

**feed** 33:21

**feel** 3:5 4:10,12 18:8 55:21

**feels** 55:18

**figure** 24:24

**file** 5:9 12:4,15 15:24 17:22 18:3, 5 19:12 24:2 31:13 35:11 51:12, 28 52:4 54:16 56:22 61:5

**filed** 9:20,24 10:3 12:7,17 14:4,24 16:7 18:3,4 19:15 21:1 24:5 52:26,27 53:4,26 58:20 59:23 60:8

**files** 47:25

**filing** 15:9,18 19:7 24:6 31:13 51:21 58:12 62:13

**fill** 33:17

**filled** 26:28

**final** 7:19 57:11

**find** 50:28 55:14,23 62:16

**fine** 3:25 6:13,26 33:3 50:5 51:1, 24

**fixed** 26:13

**flag** 60:17

**focus** 25:15

---

**follow** 13:25 14:11 15:15

**footnote** 20:20

**foreclosing** 56:6

**form** 10:2 15:6 17:18 33:9,13,15, 16,25 34:1,18 35:3,8

**formal** 51:24 53:3 59:13

**forms** 33:25,27 34:3 35:3,8,10

**forward** 9:7 11:16 16:18 25:14 56:9 62:12,17

**forward-looking** 5:28 12:19

**found** 4:6,7 39:2 55:5

**free** 3:5 54:2,4,5

**Friday** 29:9

**full** 38:6

**fully** 41:4

**fund** 55:7 56:14

**funds** 55:27

**future** 4:4,5 5:6 7:18 52:27 54:3

---

## G

**general** 4:16

**generally** 39:17

**generated** 42:9

**Georgia** 22:14

**get all** 25:19 48:7

**give** 11:12,13 28:5 32:18 33:6,17 34:6 37:20 38:6 42:7 51:19 63:14

**giving** 34:26 35:1

**glad** 29:28

**global** 26:7

**goal** 34:26

**Gonzales** 19:14

**Gonzalez** 3:26 4:13 5:21 17:21 24:3 53:21

**good** 1:12,16,24,27 2:1,4,7,10, 13,16,19,22,25,28 4:10,12 7:5 16:13 18:26 24:12 28:28 36:16 37:16 39:13 52:15 57:10,23 59:28 62:27 63:20

---

SOCIAL MEDIA CASES
JCCP5255, 05/03/2023    CERTIFIED COPY

MOTION
Index: Google..interface

**Google** 2:9,12 17:21 19:14

**govern** 4:4

**governing** 6:26

**grapple** 23:7 43:17

**great** 25:27 34:10 57:28

**greater** 12:9 15:1

**grips** 43:8

**ground** 50:28

**group** 20:22 21:3

**guess** 17:26

**guidance** 21:5,10 27:20 29:21 56:2

---

### H

**half** 26:28 58:14

**hand** 30:3

**handbook** 55:10

**handle** 8:13 38:11

**handled** 60:19

**hang** 27:12

**happen** 29:17

**happening** 8:19

**happy** 11:2 43:3 50:27 56:20

**hard** 21:15 27:2

**hear** 5:10 15:14,28 16:1 38:25 39:9

**heard** 3:3

**hearing** 7:14,17 19:10,13 24:9 34:15 51:18,20 62:25 63:9

**heavy** 47:10

**held** 1:10

**helpful** 14:9 17:5,11 18:11 27:20 31:28 32:2,9,11 50:1,9 55:17 59:2,5 62:16

**helpfully** 56:27

**HERETOFORE** 1:7

**Hey** 50:20

**highly** 7:28 45:3

**history** 48:18 55:9

**hold** 7:14 39:17 52:25

**holdback** 53:1,6

**holes** 26:24,26

**HON** 1:4

**honestly** 54:4

**Honor** 1:16,22,24 2:1,4,7,10,13, 16,19,22,25 5:12,15,19 6:10 7:12 8:14,23,28 9:5,25 10:2,4 11:2,4,6, 21 12:27,28 14:12,15 15:8,12 18:13 20:8,14 21:25 22:1 23:13, 26 25:2,21,23 26:10 27:20 28:10 29:1,14,16,21 30:13 31:28 32:6, 10,21 34:16 35:17,28 36:2 37:10, 21 39:10,13 41:9 42:27 43:2,19, 24 44:5,15 45:8,19 46:2,7 49:4, 14,19,28 50:1 54:7,17,23 56:24 57:9 58:1,5 59:6,10,18,25 60:4 61:12,28 62:15,27 63:12,17

**Honor's** 36:24 37:1 50:3

**hope** 18:23 21:12

**housekeeping** 60:6

**huge** 14:7

**human** 41:17 42:3,12,16,19 46:9

**hundred** 19:24 20:14,26 21:2,12, 13,19,27

**hundred-page** 21:22

---

### I

**i.e.** 15:23

**idea** 21:18 27:16 28:28 45:9

**identified** 37:23

**identify** 17:18

**identifying** 22:3 46:28

**identity** 8:4

**image** 40:3 47:25

**images** 38:24 39:27 47:4,7,18 50:16

**IMES** 27:5

**immediately** 16:4 60:16

**implicate** 22:5

**importance** 13:9,12

**important** 36:1 52:11

**importantly** 55:13

**impose** 10:10

**impracticable** 41:27 49:27

**inadvertent** 48:9

**include** 28:11 37:20 45:16

**included** 47:26 57:1

**includes** 28:16 37:26

**including** 26:5 47:24

**incredibly** 43:15

**indefinitely** 36:21 39:18

**individual** 17:23 18:19 21:1,8 32:17 44:19 45:6,28 46:2,9 58:27

**individually** 34:2

**individuals** 42:21 44:22

**inform** 28:24 29:23 37:6

**informal** 5:7,8 9:15 10:21 11:5,9, 11 35:14

**informally** 12:22

**information** 7:26 8:1 12:7 14:27 15:11 17:24 30:1 32:5,17,22 33:21 34:17,18,27 37:14,18,24, 26,27 38:2,3,4,13 39:1 40:1,4,5,6, 25 43:11,15 45:2,4,8,11,14,17 46:24,28 47:1,12,28 48:16,24,27 49:1,2,8,12 50:24

**informed** 26:11

**initial** 7:14 29:2,17 32:7

**initially** 36:15

**inside** 17:24

**insist** 8:20

**instance** 14:28 36:24 38:21 44:16,22 45:1,22 60:16

**instances** 42:18

**institution** 13:6

**instruction** 43:14

**intention** 14:18

**intentional** 43:16

**interface** 16:19

CERTIFIED COPY

**introduce** 49:23

**inventory** 26:7

**investigated** 37:1 39:8

**involves** 25:7

**issue** 3:17 6:16 8:8,12,18 9:15,16 10:14 11:8,17 12:22 17:2 19:3 20:11 21:24 22:2 23:6,17 24:11 32:10,23 36:2,4 37:11 39:10,16 41:2,4 43:17,22 48:3,10 49:18 57:24,26 60:7,15,22

**issue-by-issue** 22:20

**issues** 3:11 4:7 5:8 7:15,20 9:3 10:16 11:7 12:19 20:25 21:27,28 22:5 28:4 32:15 34:11 60:19 62:3, 4

**issuing** 55:19

**item** 6:15

**items** 6:13 49:9

---

**J**

**JCCP** 3:14,24 4:23,25 5:26 6:23 25:7 52:26 53:9,26 57:1 58:8,11

**JCCP5255** 1:1

**Jeffcott** 1:18 23:13 25:21 52:23 53:24 54:7,17,23 55:26 56:24 57:9 58:1 59:6 62:15

**Jennifer** 1:15

**Jesse** 1:19 6:10 8:14

**joint** 3:9 5:5 6:21 7:10 9:21,22,28 13:27 17:22 24:13 28:27 35:25 51:25,27 56:27 57:12 59:15

**Jonathan** 2:26 60:4

**judge** 3:26 4:13 5:21 6:6 7:9,12 9:7,12 53:21

**judgment** 19:28

**Judicial** 13:23 16:14

**July** 17:20 18:1

**jump** 3:5 25:18

**June** 17:17,26 35:12 63:3,6

**jurisdictions** 20:21

**jury** 43:10,14,27

**just--** 55:16

---

**K**

**Kamamoto** 56:20

**key** 40:1,12,25 46:24

**Kiesel** 1:17,22

**kind** 28:6 32:9 41:18 42:12

**kinds** 23:8 27:6

**King** 2:14

**knowing** 17:24 18:9

**KUHL** 1:4

**KWON-CHANG** 1:5

---

**L**

**laboring** 55:24

**LACOURTCONNECT** 3:1 39:11

**Laddon** 2:22,23

**language** 27:10

**largely** 35:20 41:28

**latest** 25:2

**law** 1:17,25 8:4 11:14 20:19 21:27,28 22:5,19,24,28 23:6 36:9 39:6,21 40:8,21 42:15,26,28 46:19 47:8,14,20 48:19 49:21 51:8 55:14,15

**lawful** 40:12,21

**lawfully** 48:15

**lawyers** 4:11,12 27:9

**laypeople** 27:9,18

**layperson** 26:24

**lays** 41:23

**lead** 39:11

**learning** 42:1

**leave** 12:18,24

**length** 9:21,23 19:26 24:11

**lengths** 19:17 20:3 23:25

**lesser** 14:27

**let alone** 21:8

**letter** 9:2,19

**letting** 52:5

**level** 22:27 23:1

**liaison** 63:14

**life** 16:15

**light** 60:24

**limit** 27:3

**limitation** 57:22

**limitations** 44:16

**limited** 15:5 29:4 31:6 32:8 41:25 57:18

**lines** 53:3

**link** 61:27

**linked** 42:4 45:5

**list** 5:3 6:18 29:10 30:20 45:22

**listed** 56:27

**listen** 15:26

**listing** 20:20 57:21

**litigation** 22:11,17 40:28 42:6,25 43:1,4 45:23 48:14 51:9 53:4,12 55:10,28

**live** 22:21 58:19

**lives** 13:7

**lodged** 59:23

**long** 34:22 61:25

**longer** 37:8

**looked** 13:27 17:8 18:7 39:4

**LOS** 1:3

**lose** 33:11

**lost** 48:12,15

**lot** 9:24 13:21 16:3 17:3 18:16 24:19,20 27:22,23 33:11 35:25 37:16 54:3

---

**M**

**machine** 42:1 46:4

**made** 4:8 16:15 35:4 37:2,15 41:13 45:25 54:20

**magistrate** 7:9,12 9:6,12

SOCIAL MEDIA CASES                                           MOTION
JCCP5255,  05/03/2023              CERTIFIED COPY      Index: maintain..oar

**maintain** 45:12

**maintains** 36:21

**majority** 42:24

**make** 14:16,22 16:9 19:27 23:28 28:13 29:25 35:1 38:12 40:9,23 42:23 46:18,22 47:28 48:6,23 49:1 54:21 55:19,28 56:14 61:11 62:11

**makes** 36:16 55:12 62:27

**making** 29:24 40:24

**manual** 42:21

**mass** 25:7

**master** 16:17 17:19 23:2

**mastered** 14:9

**material** 15:3 47:26

**Matt** 2:14 5:12

**matter** 16:24

**Matthew** 1:25 2:11

**MDL** 3:14,22,24 4:12,22,24,28 6:8,24 7:2 8:19,24 10:1 18:21 20:15,18,26 23:7,11 52:24 53:7,9 56:13 60:11,17

**means** 31:10,12 40:21 43:11 48:25 49:6

**meant** 27:16

**meantime** 44:28

**mechanism** 50:23 55:27

**mechanisms** 56:9

**media** 1:2,13,25 32:5

**mediate** 34:9

**meet** 5:4 8:25 18:25 49:7 50:11, 27 51:8

**meet-and-confer** 32:23

**meeting** 37:5

**mention** 56:14

**mentioned** 44:5 49:9 52:12 55:18 56:28 57:12

**message** 9:11

**met** 14:2 28:3 36:6 60:14

**Meta** 2:18,20 18:14 37:21

**metadata** 47:27

**millions** 42:22,23 44:23

**mind** 6:6 21:18 26:9 57:24

**mindful** 20:13

**minor** 60:15,27

**Minor's** 60:20

**minors** 57:18,19,25

**minors'** 61:15

**minute** 4:15,21 7:6 8:12 10:22 17:16 19:12 31:1 38:26 57:3 62:23 63:15

**Miro** 60:24

**mirroring** 38:23

**missing** 27:1 38:8,28

**mix** 59:2

**models** 42:2

**modify** 5:24

**moment** 12:3

**Monday** 22:8

**month** 10:28 23:19 62:19

**months** 25:9

**mooted** 23:17

**Morgan** 1:18

**morning** 1:12,16,24 2:1,4,7,10, 13,16,19,22,25 5:15 39:13 61:24

**motion** 5:9 6:19 10:9,12,27 12:15 14:25 15:24 16:1,7 29:16 51:6,9, 13 54:16,26 63:10,11

**motions** 12:16 13:5 14:24,26 15:28

**move** 8:12 9:7 12:9,12 25:13,28

**moved** 61:23

**moving** 16:18 20:17 22:3,26 61:20 62:12,17

**multi-plaintiff** 58:13

**multiple** 14:26 20:21 55:22

**Munger** 2:2,26

### N

**named** 57:14

**names** 9:13

**narrow** 30:9

**narrower** 20:16

**National** 38:7,27

**nature** 15:5

**NCMEC** 36:18,19,21,22,27 37:3, 7,14,27 38:6 39:20 40:16,17,18 41:20 42:24 43:5,23 44:5,28 45:11,24 46:1,10,20 47:16 48:23 50:18,19,21

**needed** 19:21 29:8 60:13

**needlessly** 6:2

**negotiate** 29:20 36:10 37:28

**negotiating** 28:7 29:3 37:16 49:11

**non-california** 23:5,22

**nonappearance** 31:10 35:12 63:4,6

**nonappearances** 31:23

**nondesignated** 8:4

**nonetheless** 48:28

**nonprofit** 38:10 40:20

**Northern** 7:23

**note** 10:4 26:10 29:15 49:19

**noted** 1:7 5:19

**notes** 62:22

**notice** 10:26 33:20 40:1,7 42:7 63:15

**noticed** 6:19 10:9,12 51:9

**noting** 16:16

**nub** 49:18

**number** 1:1 24:8 47:25 58:10,14

**numerous** 40:18

### O

**oar** 55:24

SOCIAL MEDIA CASES
JCCP5255, 05/03/2023
CERTIFIED COPY
MOTION
Index: objection..portion

**objection** 6:14

**obligation** 35:2

**observe** 29:16

**observed** 15:9

**obtained** 39:7

**obtaining** 13:3

**offender** 46:27

**Olson** 2:3,27

**ongoing** 53:12

**online** 3:6 55:5

**open** 1:10 10:18 13:9,13 31:12

**opening** 18:13

**operates** 57:26

**opinion** 24:3,5 25:20 43:18

**opponent** 8:6

**opposed** 20:21 44:22

**opposing** 12:7

**opposition** 18:3,4,7

**order** 3:8,13,19,23 4:15,21 5:4,
16,20,22,28 6:3 7:6,8,9,13,16,18
8:19,24 9:1,4,13 10:11,22 11:19,
27 13:25 17:16 19:12,13 20:2
23:27 24:7 26:11 31:2 32:6,26
35:4,19,24 37:6,17,28 38:1 41:14
43:18 44:24 45:10 47:14 48:2,18
49:11,15 51:8,16,23 52:1,2,4,5,
19,24,28 53:4 56:22,25 57:3,8,13
59:13,15,22 61:6 62:26 63:15

**ordering** 51:6 59:4

**orders** 4:3 5:2,4 9:2,28 15:20
41:6,8 51:22 52:9,10 53:23 55:19

**Ordinarily** 28:15

**ordinary** 15:8 36:17 61:9

**Oregon** 22:14

**Orent** 60:4 61:12

**organized** 57:6

**originally** 36:11

**outlined** 5:16 6:20

**outset** 36:3

**outstanding** 11:6

**overask** 27:6

**overdesignate** 15:21

**overlap** 41:7

**overredact** 15:10,19

---

**P**

**pace** 62:17

**pages** 19:24 20:14,27 21:2,3,9,
12,13,19,20,21,27 22:21 30:19

**paid** 55:20

**Panish** 1:19

**paper** 15:2,10,18 54:11

**parallel** 53:3

**part** 29:25 42:26 47:23 52:12

**parties** 6:25 7:15 12:20 19:18
20:13 24:19,20 28:1 29:12 31:2
33:13 35:7 36:6 37:15 39:17 41:3
50:2,10 52:6 53:28 55:17 59:14

**parties'** 3:13 7:14 41:5

**parts** 11:23,26 12:14 44:12 59:20

**party** 8:5 12:6,7,8,11 14:2 15:4,9,
18,20

**pass** 59:6

**past** 46:20

**patent** 7:25

**Paul** 1:22 2:20 18:13

**people** 10:21 16:9 17:3 55:23,24
56:1,17 57:21

**percent** 52:25

**periods** 16:23

**permissible** 49:24

**permission** 13:3

**perpetrator** 45:18

**personnel** 40:19 47:5

**perspective** 20:16 21:6,14 30:26

**phonetic** 56:21

**photo** 38:20

**photographs** 38:18

**pick** 22:9

**picked** 28:26

**pictures** 38:13 44:11

**piece** 41:19 42:22 54:11

**pieces** 44:23

**piercing** 10:11

**Pierson** 2:4,5

**place** 4:28 5:20 26:16

**places** 13:16

**plaintiff** 22:15 23:22 24:16 26:1,
5,25 27:7,23 28:15 29:3,9,20,22,
25,27 30:2,9,11 31:5,16 32:27
33:8,14 35:8 40:6 44:10 45:6,23
46:11 50:26

**plaintiff-by-plaintiff** 22:27

**plaintiffs** 1:21,23 5:3,17 6:11
8:15,25 11:3 15:24 17:17 18:3,8
21:6 22:3,4,6,7,8,13,14,22 23:3,5,
14,16 24:22,25 25:8,13,22 26:19
28:23,24 29:4,12,24 30:7,23 32:3
33:16,18,26 34:2 35:9 36:11,15
37:2,6,22,25 38:26 39:1,4,9,15,21
41:15 42:7 43:9,20,25 45:14
46:24 47:13 48:7,13,17,26,28
49:23 50:16 51:6 52:20 57:14,18,
19 58:7,9,10,12,15 59:1,3,11 60:5
62:14,18

**plaintiffs'** 6:9 7:21 10:11 25:8
27:11 28:12,23 30:25 31:6 36:28
40:25 41:13 46:16,17 56:21 63:14

**plan** 22:8

**planned** 61:21

**play** 21:2

**played** 20:19

**pleading** 19:16

**pled** 23:3

**point** 5:27 12:18,25 15:23 17:6
19:18 23:19 28:5 31:18 32:21
33:19 34:12 56:17 59:12 60:21,22
61:3

**pointed** 30:9

**points** 41:12

**pornography** 39:27

**portion** 9:22

CERTIFIED COPY

**position** 53:15 58:25

**positions** 3:16 19:27 20:6 41:5

**possess** 39:28

**possessed** 43:26

**possibility** 18:18 52:21

**post** 26:5

**posted** 55:5

**posting** 5:6 56:28

**potential** 30:1 47:22

**potentially** 22:19 29:23 38:19 47:15 62:8

**powerful** 43:15

**practicably** 42:7

**practice** 10:6

**practices** 15:8 36:18 37:7

**preach** 55:16

**precedence** 13:8

**precise** 24:6

**preclude** 42:15

**Predicates** 24:14

**prefer** 10:17 48:26 49:14

**preferrable** 34:22

**present** 4:17 8:28 21:16 30:24

**preservation** 33:9,14,22 35:2,5, 8,23 36:10 37:6,16,28 38:1 41:13 45:10 48:2,21 49:11,13,15 62:26

**preserve** 36:8 41:16 43:21 45:12 46:20,23 49:8,9,12

**preserved** 36:22 37:13 40:10 43:23 47:28 48:24

**preserving** 36:5 37:18 38:2 48:5

**pretty** 57:20

**prevent** 52:28

**preview** 11:6

**principles** 4:16,22 5:15 7:7

**printing** 59:20

**prior** 30:1,2 39:26 46:23

**priority** 3:10

**private** 44:11 53:2

**privilege** 10:16 52:18

**problem** 16:22 19:5 27:10 52:23

**procedures** 14:4

**proceed** 6:7 10:9,17 61:23

**proceedings** 1:9 4:4,5 6:3 8:25, 27 36:3 44:4,6,7 49:20 63:22

**process** 5:20 10:21 14:6 25:19 45:13 52:14

**producing** 15:20

**product** 10:8,12

**production** 30:7 31:5

**productively** 36:7

**products** 16:21

**Professor** 55:3,12

**programmatic** 41:28

**progress** 37:16

**properly** 33:11

**proposal** 3:17 16:14 21:7 33:26 35:9 41:18 46:16,17 50:19 55:1

**proposals** 42:14

**propose** 4:14,15,21 8:23 9:8,14 13:23 19:16 27:28 29:24 33:12

**proposed** 3:13 5:3,4,11,20,23 7:14,17 9:1,4,28 11:4 19:13 20:2 21:6,27 23:27 24:7 28:1,21 30:24 31:2,5,16 32:7 33:25 35:19 36:15 41:6,8,13,15 48:18 50:2 51:16,22, 23 52:1,2,4,5,9,13 56:13,22,25 57:8,13 59:13,15 61:6

**proposing** 14:14 42:19 46:11 51:3

**propound** 28:23

**protect** 43:18

**protections** 7:28

**protective** 7:8,13,18 8:19,24 9:1, 2 11:27

**prove** 43:12 44:9,12,15 60:13

**provide** 5:3 35:10 38:28 39:28 40:20 44:11 46:23 47:22 48:16,26 50:24

**provided** 28:21 30:1 40:2,6 48:17 56:3

**providing** 39:26 47:11,18 50:20

**provision** 8:21 54:1

**pseudonyms** 57:14,21

**Purely** 29:6

**purpose** 14:22 24:8,10 30:8

**purposes** 8:26 9:18 24:7 29:6 41:25 49:16

**pursue** 49:22 55:28

**put** 15:6 17:12,15 18:20 19:12 31:1 49:15

---

**Q**

**question** 8:11,12 22:20 25:18 30:17 39:4,8 43:9 54:17 60:22

**questions** 25:17 26:13 27:13 52:16

**queue** 52:2

**quick** 34:15 41:11

**quicker** 10:28

**quickly** 12:13 34:5,17,27 50:13

**quote** 25:23

---

**R**

**Rahul** 1:21

**raise** 55:27 60:8,15

**raised** 7:21 22:2 36:4

**raising** 36:24

**Ravipudi** 1:20,21

**re-respond** 26:27

**re-responded** 26:27

**reach** 21:15

**read** 3:15 43:13

**reading** 35:27

**real** 13:8

**reality** 38:23

**realize** 16:3

realtime 40:7

reason 18:28 36:22 58:13

reasonable 28:9

reasons 17:8 42:13 54:3 55:18

recall 3:19 22:1

received 21:17 29:9 30:13

recently 57:1

recognize 43:20

recognized 41:16

recollection 30:10

recommend 13:15 25:14 27:8

record 10:17 13:4 15:7 38:5 54:20,21

recorded 25:11

recordkeeping 58:21

red 31:18

redact 12:3

redacted 15:6 47:5

redaction 47:8

redacts 15:4

referenced 16:17

refiled 60:11,23 61:10

refiling 60:17 61:3

reflect 7:6,16

reflects 13:11

refresh 30:10

regard 56:23 59:4

regular 10:26

rejected 60:12

related 38:3 47:13

relating 29:11,17 37:14,27

relevant 31:6 37:22 38:4 42:6 45:22

remaining 34:12

remains 37:11

remarkable 21:13

renegotiate 53:27

repeat 3:4

reply 18:5,6,10,14

report 3:10 5:6 6:7,21 7:10 13:27 24:13 28:27 35:25 37:3,8,9 39:18, 19 45:25 46:5 51:25,27 52:12 56:3,27 57:12 59:16

reported 39:6 41:20,25 42:8 43:23 46:10 58:7

REPORTER 1:5

reporter's 3:7

reporting 36:18 37:7 41:23,26, 28 43:5 44:6 46:19 48:20,22

reports 36:19,27 37:3,27 38:11 42:23 45:1,5,11 46:1

repository 39:20

represent 36:17 38:21

representation 37:2

repropose 19:17

request 3:10 28:12 29:5,24 51:18 60:26 61:6

requested 19:13 30:14 34:18 57:13

requesting 32:3

requests 4:23 28:16,20,22 29:10,17 30:16,20 32:1,7

require 8:21 9:13 10:11 42:21 58:20

required 4:20 8:5,26 12:5 42:26 48:11

requirements 51:8

research 8:3

reserve 58:25

resolution 5:8

resolve 34:5

resolved 29:18 36:25 60:21 62:8, 11

resolves 37:11

resources 47:14,17

respect 7:27 32:1 33:17 56:26

respectfully 29:13

respective 3:16 20:6

respects 35:1

respond 31:7 41:12

responded 4:24,25

response 50:13

responses 6:23 24:26 25:11

responsibilities 33:23 35:5

resubmit 58:2 59:14,17,26

revictimize 41:21 43:28

revictimizing 42:13 44:24

review 23:20 27:24 28:2 31:3,4, 10 35:12 41:11 42:3,12,16,19,22 44:23

reviewers 41:17

revised 7:17

revisions 8:26

rider 54:2,4,5

risks 7:27

road 58:25

Rogers 3:27 4:13 5:21 53:21

route 49:22

rule 12:1 13:2 16:7,10,27 61:9

rules 13:10,26 15:14 16:5,13 47:20 56:11,12,13,16

ruling 13:4

run 16:27 19:1 34:22 41:22

running 17:28 36:9

runs 42:28

## S

satisfy 11:13

schedule 17:11,12 20:2 51:14,19

scheduled 17:7 32:23

schedules 17:8

Schmidt 2:19,20 18:12,13 20:8 21:24 22:25

science 16:20

seal 12:4,9,12 13:3 14:2,5

sealed 15:10

SOCIAL MEDIA CASES
JCCP5255, 05/03/2023

CERTIFIED COPY

MOTION
Index: sealing..state

**sealing** 13:25 14:10,15,19,21,24, 26 15:3,12

**seated** 2:28

**secret** 7:26

**secrets** 7:28

**section** 20:25 24:13

**seek** 53:11

**seeking** 14:2

**select** 23:21

**selected** 25:1

**sell** 27:2

**send** 28:6

**sense** 14:23 19:20 36:16 61:11 62:27

**separate** 8:2 13:25 16:2 18:8 31:26 37:16 42:5 57:8 59:23,24

**separately** 35:3 49:16 58:20,22

**separating** 59:21

**serve** 30:8 62:3

**served** 4:24,25 6:23 30:18

**service** 51:24 58:24 59:13

**SESSION** 1:6

**set** 4:15,21 14:1,3 19:14 20:6 31:11,26 32:14 35:12 42:5,20 58:3 61:17 62:24 63:2,3,9

**setting** 13:12 14:7 19:10 20:2 62:6 63:7

**settled** 61:22

**settlement** 26:6,7 60:14

**sex** 23:4

**sexual** 57:20,27

**share** 49:7

**sharing** 37:25

**she'll** 5:21,23

**Shea** 1:19

**shed** 60:24

**sheet** 26:5,13 27:7 28:16,17,20, 25 29:3,9,21,22,25,27 30:2,14,19, 21,24,26 31:15,16 32:13

**sheet all** 26:1

**sheets** 24:17 26:8 27:23 28:2 30:11 31:3,7,27 32:27

**shift** 23:5

**short** 17:18 32:9

**shorten** 10:25

**shot** 15:13

**show** 43:12

**shown** 43:27

**side** 1:27 5:10 9:21,23 15:6 33:5, 6 55:10,20 62:1

**sides** 11:13 12:22 25:4 33:11 36:4,23 43:18

**sign** 54:11 61:7

**signed** 7:9

**significant** 23:10 50:15

**significantly** 30:22

**signing** 3:7

**Silver** 55:4,12

**similar** 9:27 10:1 11:20 18:24 23:8

**Simonsen** 2:16,17 7:12 8:23 9:25 11:2,21 12:27 14:12 16:11 20:11 27:20 29:1 31:28 32:21 35:17,28 38:7,14,17 39:3 41:9,12 42:17 43:2,19 44:3,14 45:7 46:1,6 49:4 58:5,23 61:28 62:27 63:12, 19

**simpler** 58:21

**simplify** 27:18,19

**simply** 15:14

**simultaneous** 9:22 10:20 51:3

**single** 41:19 42:22

**sitting** 55:24

**situation** 10:19

**situations** 4:9

**Sixty-one** 58:18

**slightly** 14:8

**slowly** 56:16

**smaller** 30:22

**smart** 30:23

**Snap** 2:3,27

**snapshots** 37:22,24

**social** 1:2,13,25 32:5

**sole** 36:26

**solicited** 25:23

**solution** 25:26 34:10 49:25

**solve** 4:7

**solving** 13:17

**Sonsini** 2:8,11

**sooner** 18:1

**sophisticated** 26:4

**sort** 6:18 7:26 10:25 15:10,13 31:15 54:19

**sound** 6:13 28:9

**sounds** 18:26 21:13 51:1

**source** 46:27

**Spalding** 2:14

**speak** 5:13 7:3 16:20 20:8 32:15 55:1

**specific** 9:11 14:15 24:10 25:17 28:12,24

**spelled** 46:24,25

**spent** 17:3

**spirit** 29:14

**spoken** 3:26

**spoliation** 48:10

**SSC** 1:4

**staff** 14:7 51:26 52:8,16 61:2

**stage** 15:21

**stand** 43:10

**standards** 13:19 14:1,19

**standing** 52:14 56:12

**standpoint** 27:11,14

**start** 3:11,12 25:5 26:16

**started** 4:1 25:20 36:10

**starting** 1:14 21:11

**state** 13:28 14:4 20:19 22:12,16

53:16 58:19

**stated** 58:23

**statement** 9:21,22

**statements** 9:28

**states** 22:4,7,9,13,26 23:9,10
59:3

**stating** 60:13 61:10

**status** 5:6 9:10 29:2,15 31:24,25
58:3 61:17 62:6 63:7

**statute** 40:20 41:23 43:5 44:6
46:8

**statutory** 23:8 48:18

**stay** 10:15

**stayed** 24:14 29:19

**steering** 56:21

**steps** 6:4

**stip** 24:6 51:15 52:2 56:25

**stipulate** 10:28

**stipulated** 20:7

**stipulation** 14:15 15:13 19:13
20:1,7 23:27 24:2 52:5 54:19
60:9,12

**streamline** 6:3

**string** 20:20

**study** 13:14

**subject** 15:3 17:13,19 23:14 34:9
53:7

**submission** 15:2

**submit** 16:13 28:1 31:2,8 32:9
33:13,24 35:7,19 36:18,27 37:10
40:15 42:27 43:24 45:2,8,19
51:13 53:20 54:19 57:8

**submits** 15:5

**submitted** 5:21 9:28 39:23

**submitting** 7:17 50:2

**subparts** 25:18 26:20

**substantive** 14:19 16:1

**success** 9:27 25:28

**sufficient** 4:17 13:28

**suggest** 15:16 16:12 20:5 29:4

33:24

**suggested** 29:2

**suggesting** 44:14

**suggestions** 27:27 61:18,25

**summaries** 49:26

**summarize** 44:25 46:9

**summarized** 44:26

**summary** 41:20

**sun** 29:11

**supplementary** 18:22

**suppose** 38:15

**supposed** 16:6

**Supreme** 10:15 13:8,11 17:21,
25,28 18:28 19:1,3,9 24:2

**surprisingly** 62:16

**surrounding** 40:1,5,26

**suspect** 60:7

**suspected** 46:26,27 47:13

**system** 13:9 14:8,9 24:25 25:10
31:10 42:20 51:28 57:7,26

**systems** 41:28

---

**T**

**table** 28:7

**tackle** 48:3

**takes** 18:16 24:23

**taking** 25:9 39:11 55:24 59:19

**talk** 3:18 9:10 10:13 24:16 31:25,
26

**talked** 11:17 52:20

**talking** 13:1 25:1 38:17,18 40:11
46:15,26 47:6 48:4 52:9

**Tarifa** 2:23

**technical** 7:26 8:1

**telling** 25:8

**temporal** 16:22

**ten** 12:10,12 15:1,23 31:24

**tend** 18:9

**tens** 42:23 44:23

**tentative** 11:12,14,15 17:13

**terminology** 42:2

**terms** 9:8 14:20 21:15 22:18
52:10

**testimony** 12:3

**Texas** 55:4

**theory** 55:6,7

**thing** 16:6 21:26 26:17,28 27:8
57:11

**things** 3:20 5:22 6:17,18,20 18:9
27:6,10,25 38:15,22,24 53:18
57:17 59:20 62:12,13

**thinking** 16:19 17:4,11

**Thirty** 21:21

**thought** 13:21 16:21 21:13 27:26
36:11

**thoughts** 28:6

**thousands** 25:7

**threw** 17:4

**tied** 30:17

**Tiktok** 2:6,15,24 5:13

**time** 1:6 3:3 4:19 5:11 10:25
12:19 16:1,23 17:3 18:7,17 19:27
22:2 23:15,19,25 24:20,23 25:17
33:19 52:20 55:18 56:1 62:25
63:11

**today** 4:15 16:24 19:10 31:2 57:3

**today's** 4:21

**told** 22:7 49:10

**Tolles** 2:2,26

**tomorrow** 32:24

**topic** 5:2 39:12

**topics** 5:4

**tort** 25:7

**totally** 56:6

**tough** 50:22

**tracked** 34:24

**trade** 7:26,28

**transitioning** 40:21

SOCIAL MEDIA CASES
JCCP5255, 05/03/2023

CERTIFIED COPY

MOTION
Index: traveling..Youtube

traveling 3:27

treated 4:24 11:24

trial 27:5 39:1 43:9 49:23 61:21, 23,24

trials 58:26,27

triggered 35:2

trucking 62:21

trust 58:20

turf 6:27

turn 7:8 29:23

turned 34:16,17,23

turning 52:20

Two-1 25:1

type 6:4 38:1 40:2

types 37:17 60:18

**U**

ultimately 33:6 54:11

unable 51:4

unclear 49:21

underlying 14:25

understand 11:24 15:22 16:11 23:28 26:13,24 30:15 32:20,25 34:20,27 40:15 41:5 43:7 49:2 60:18

understanding 7:27 11:14 36:20 38:26 39:5 55:21

Understood 9:25 11:21 43:2,19 59:18,25

uneven 55:18

unfortunate 10:19

unified 18:20,21

unitary 18:5,6,10,14

universe 29:4

University 55:12

unjust 55:5

unseal 16:6

unwound 15:23

upcoming 62:2

update 25:2

usable 50:25

user 16:19,20,23 29:23 32:1,7 42:8

user's 44:19

**V**

valuable 48:27

vast 42:24

versus 17:21 19:14

victim 40:4 41:21 42:13 45:17 46:27 49:2

victimized 44:10

victims 1:25 44:21,24 50:17

Victoria 2:2

video 39:27 47:24

videos 47:23

view 8:2 14:10

viewing 41:24

views 62:1

violate 46:8 47:19

vis-a-vis 8:19

voluminous 29:10 30:14

**W**

wait 8:9,22 61:25

waiver 51:24 58:23

walking 32:24

wanted 11:19 52:9 57:15 58:5,8 60:8,15,17,18

wasted 54:10

ways 9:24 30:25 36:14 47:22,27

WEDNESDAY 1:3

weekday 19:4

weekdays 19:5

weekend 19:6

weeks 17:20,28 18:2,4,27 19:4 62:19

weighing 17:14

well-taken 6:1

whatsoever 47:20

whichever 17:22

willingness 38:27

Wilson 2:8,11

wisdom 13:8

wonderful 52:17

word 52:1

words 33:28

work 10:8,11 16:3 18:10 23:20 24:23 25:9,24 34:13 40:8 52:2,13 53:10 54:7 56:3,7,16 59:28 61:14

working 12:20 24:19 62:5

works 39:21 48:19 52:1 56:16

wrinkle 20:18 22:18

written 55:6

wrong 42:2

**Y**

year 4:1 42:24

yesterday 28:21

York 22:15

Youtube 2:9,12

# EXHIBIT B

**In the Matter Of:**

Social Media Cases

JCCP5255

---

MOTION

March 22, 2023

---



SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 12               HON. CAROLYN B. KUHL, JUDGE

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION | ) ) ) |
| CHRISTINA ARLINGTON SMITH, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO _____ | ) ) ) |
| | )       JCCP 5255 ) |
| LALANI WALTON, DECEASED; HERIBERTO ARROYO, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ARRIANA JAILEEN ARROYO, DECEASED; CHRISTAL ARROYO, INDIVIDUALLY, AND JESSICA WILLIAMS, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ZAIDEN BALDWIN, DECEASED, | ) ) ) ) ) ) ) ) ) |
|           PLAINTIFFS,     VS. | ) ) |
| TIKTOK, INC.; BYTEDANCE, INC.; DOES 1 THROUGH 100, INCLUSIVE, | ) ) ) |
|          DEFENDANTS. _____ | ) ) ) |

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS
TUESDAY, MARCH 22, 2023

APPEARANCES OF COUNSEL:

AMY ESKIN, ESQ.
CHRISTOPHER AYERS, ESQ.
CLINTON RICHARDSON, ESQ.
DAVIS VAUGHN, ESQ.
DEAN KAWAMOTO, ESQ.
FELICIA CRAICK, ESQ.
GLENN DRAPER, ESQ.
JONATHAN D. ORENT, ESQ.
KEVIN M. LOEW, ESQ.
LEXI HAZAM, ESQ.
MARC J. MANDICH, ESQ.
MARY LIU, ESQ.
NARMEEN NKEITI, ESQ.
SOU SEOK YANG, ESQ.
ANDREA PIERSON, ESQ.
DAVID P. KOLLER, ESQ.
GEOFFREY DRAKE, ESQ.
MATHEW BLASCHKE, ESQ.

```
 1  APPEARANCE OF COUNSEL:

 2  TERESA GRIFFIN, ESQ.
    KELLY MCNABB, ESQ.
 3  CHERISSE H. CLEOFE, ESQ.
    JONATHAN H. BLAVIN, ESQ.
 4  CHRISTOPHER CHIOU, ESQ.
    VICTORIA A. DEGTYAREVA, ESQ.
 5  JENNIFER EMMEL, ESQ.
    PAUL W. SCHMIDT, ESQ.
 6  ASHLEY M. SIMONSEN, ESQ.
    TARIFA B. LADDON, ESQ.
 7  JOSEPH VAN ZANDT, ESQ.
    JESSE CREED, ESQ.
 8  LAURA MARQUEZ GARRETT, ESQ.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1    CASE NUMBER:              5255

 2    CASE NAME:                SOCIAL MEDIA CASES

 3    LOS ANGELES, CALIFORNIA; TUESDAY, MARCH 22, 2023

 4    DEPARTMENT 12             HON. CAROLYN B. KUHL, JUDGE

 5    REPORTER:                 BUFORD J. JAMES, CSR 9296
                                          (REMOTELY)
 6
      TIME:                             9:06 A.M.
 7

 8    APPEARANCES:              (AS NOTED ON TITLE PAGE)

 9                              --OOO--

10

11         (FOLLOWING PROCEEDING HELD IN OPEN COURT

12          IN OPEN COURT AND VIA L.A. COURTCONNECT)

13

14         THE COURT:  GOOD MORNING, COUNSEL.  WE'RE HERE

15    ON THE SOCIAL MEDIA CASES.  WE HAVE HAD APPEARANCES OF

16    THOSE APPEARING BY L.A. COURTCONNECT.  LET ME REMIND

17    THOSE APPEARING BY L.A. COURTCONNECT THAT WE HAVE A

18    COURT REPORTER IN THE COURTROOM SO YOU WILL NEED TO

19    IDENTIFY YOURSELVES IF YOU ARE SPEAKING.

20              AND LET'S HAVE APPEARANCES IN THE

21    COURTROOM, PLEASE, STARTING ON PLAINTIFFS' SIDE.

22         MS. MARQUEZ:  LARA MARQUEZ GARRETT, SOCIAL

23    MEDIA VICTIMS LAW CENTER ON BEHALF OF PLAINTIFFS.

24         MS. CLEOFE:  GOOD MORNING, YOUR HONOR,

25    CHERISSE CLEOFE FROM KIESEL LAW ON BEHALF OF PLAINTIFFS.

26         MR. CREED:  GOOD MORNING, YOUR HONOR, JESSE

27    CREED OF PANISH SHEA BOYLE RAVIPUDI ON BEHALF OF THE

28    PLAINTIFFS.
```

```
 1            MR. VAN ZANDT:  GOOD MORNING, YOUR HONOR,
 2   JOSEPH VAN ZANDT FROM BEASLEY ALLEN ON BEHALF OF THE
 3   PLAINTIFFS.
 4            MS. MCNABB:  GOOD MORNING, YOUR HONOR, KELLY
 5   MCNABB FROM LIEFF CABRASER HEIMANN & BERNSTEIN ON BEHALF
 6   OF THE PLAINTIFFS.
 7            MS. EMMEL:  JENNIFER EMMEL FROM BEASLEY ALLEN
 8   ON BEHALF OF PLAINTIFFS.
 9            THE COURT:  ALL RIGHT.  FOR DEFENDANTS.
10            MS. SIMONSEN:  GOOD MORNING, YOUR HONOR,
11   ASHLEY SIMONSEN FROM COVINGTON & BURLING FOR THE META
12   DEFENDANTS.
13            MR. SCHMIDT:  GOOD MORNING, YOUR HONOR, PAUL
14   SCHMIDT, COVINGTON & BURLING FOR THE META DEFENDANTS.
15            MS. LADDON:  GOOD MORNING, YOUR HONOR, TARIFA
16   LADDON WITH FAEGRE DRINKER FOR TIKTOK AND BYTEDANCE.
17            MR. CHIOU:  GOOD MORNING, YOUR HONOR,
18   CHRISTOPHER CHIOU WITH WILSON SONSINI FOR GOOGLE,
19   ALPHABET AND YOU TUBE.
20            MR. BLAVIN:  GOOD MORNING, YOUR HONOR,
21   JONATHAN BLAVIN FOR MUNGER TOLLES ON BEHALF OF DEFENDANT
22   SNAP.
23            MS. DEGTYAREVA:  GOOD MORNING, YOUR HONOR,
24   VICTORIA DEGTYAREVA FROM MUNGER, TOLLES & OLSON ON
25   BEHALF OF THE DEFENDANT SNAP.
26            THE COURT:  OKAY.  VERY GOOD.  YOU CAN ALL BE
27   SEATED.  AND MY REQUEST WOULD BE WHEN YOU ARE SPEAKING
28   PULL UP THE MICROPHONE, AT LEAST.  IF YOU WANT TO STAND,
```

 1  THAT'S FINE, BUT THE MICROPHONE IS THE MOST IMPORTANT SO

 2  FOLKS ON THE LINE CAN HEAR YOU.  THANK YOU FOR YOUR

 3  JOINT REPORT.  IT WAS VERY HELPFUL AND THOROUGH.  I HAVE

 4  A LIST OF ITEMS TO RUN THROUGH, AND THEN WE'LL CATCH UP

 5  WITH YOU IN CASE YOU HAVE SOMETHING TO ADD.

 6            SO WITH RESPECT TO THE ADD-ON CASES, JUST

 7  TO KEEP TRACK OF EVERYTHING.  WE CORRECTED THE CASE

 8  NUMBER FOR THE NU VERSUS META CASE, THE SAN DIEGO COUNTY

 9  CASE, AND THAT WAS CORRECTED IN THE MINUTE ORDER OF

10  FEBRUARY 23.  THERE WAS A PROPOSED ORDER SUBMITTED TO

11  ADD ON BOYD VERSUS META.  THAT WAS FILED JANUARY 27.  I

12  DID NOT SIGN THAT ORDER BECAUSE THAT CASE WAS ORDERED TO

13  BE ADDED ON IN THE FEBRUARY 17, 2023 MINUTE ORDER.

14            OKAY.  AND THEN ATTACHED TO THE JOINT

15  STATUS CONFERENCE STATEMENT FOR THIS TIME, FOR THIS

16  DAY'S STATUS CONFERENCE, WAS A PROPOSED ORDER TO ADD ON

17  SEVERAL ADDITIONAL CASES, AND THAT ORDER INCLUDED THE

18  TWO CASES THAT ARE ON THE CALENDAR FOR TODAY.  AND I

19  HAVE SIGNED THAT PROPOSED ORDER AND IT WILL BE FILED.

20  AND THE CLERK IS GOING TO ISSUE ORDERS FINDING THAT EACH

21  OF THE ADD-ON CASES IS COMPLEX AND ASSESSING THE COMPLEX

22  FILING FEE.  SO I HAD A STAND-IN JA LAST TIME WHO WASN'T

23  AS FAMILIAR WITH THE COORDINATED CASE PROCEEDINGS SO

24  THAT DIDN'T HAPPEN, BUT YOU'LL SEE THOSE MINUTE ORDERS

25  COMING OUT FOR EACH CASE.

26            OKAY.  ANY QUESTIONS ABOUT ADD-ON CASES?

27  AND, AGAIN, THANK YOU FOR KEEPING TRACK.  IT'S VERY

28  HELPFUL.  IF YOU ARE CURIOUS, THE REASON WHY THEY GET ON

Case 4:22-md-03047-YGR Document 503-2 Filed 12/06/23 Page 104 of 151

Social Media Cases             MOTION
JCCP5255, 03/22/2023   CERTIFIED COPY     Page 4

1  CALENDAR SOMETIMES IS THAT IF JUDGE CUNNINGHAM AS THE

2  ASSISTANT SUPERVISING JUDGE FOR COMPLEX, IF HE RECEIVES

3  A CASE WHERE THE BOX HAS BEEN CHECKED FOR COMPLEX, HE

4  REVIEWS THAT CASE TO DETERMINE WHETHER IT'S COMPLEX OR

5  NOT AND THEN ASSIGNS IT.  IF HE SEES THAT IT IS THE

6  DEFENDANT'S THAT ARE INVOLVED IN THE SOCIAL MEDIA CASES,

7  HE WILL THEN ASSIGN IT TO ME, BUT HIS ASSIGNMENT TO ME

8  DOESN'T ADD THE CASE ON.  OKAY.  THAT'S WHY SOMETIMES

9  THEY APPEAR ON CALENDAR AND SOMETIMES, THEY DON'T.

10     OKAY.  REGARDING LEADERSHIP STRUCTURE.  I

11  HAVE SIGNED CMO NUMBER ONE REGARDING THE PLAINTIFFS

12  LEADERSHIP STRUCTURE.  THANK YOU FOR ORGANIZING THAT.

13  AND I SIGNED CMO NUMBER THREE REGARDING DEFENSE LIAISON

14  COUNSEL.  THANK YOU FOR THAT.  AND THAT I SIGNED

15  YESTERDAY, I THINK, SO THAT WILL BE FILED.

16     OKAY.  SO MOVING TO BEYOND HOUSEKEEPING,

17  SO TO SPEAK, THERE WAS ONE THING THAT I MENTIONED LAST

18  TIME THAT DID NOT GET HANDLED, AND I WOULD LIKE TO RAISE

19  IT AGAIN.  WE TALKED ABOUT A PROPOSED ORDER BEING

20  PREPARED AND LODGED ALLOWING THE MINOR PLAINTIFFS IN THE

21  JCCP TO APPEAR PSEUDONYMOUSLY.  I MENTIONED THERE IS

22  RELATIVELY NEW CALIFORNIA AUTHORITY THAT SAYS THAT THE

23  COURT HAS TO MAKE A FINDING IN ORDER FOR FOLKS TO BE

24  ABLE TO FILE CASES BY NOT HAVING FULL IDENTIFICATION.

25     GO AHEAD.

26    MS. CLEOFE:  GOOD MORNING, YOUR HONOR,

27  CHERISSE CLEOFE ON BEHALF OF PLAINTIFFS.  THE PARTIES

28  HAVE BEEN DISCUSSING A DRAFT ORDER.  WE EXPECT TO FILE

CERTIFIED COPY

1  THAT DEFINITELY BY THE END OF THIS WEEK BUT PERHAPS AS

2  SOON AS THIS AFTERNOON.

3          THE COURT:  WONDERFUL.  AND I AM GOING TO PUT

4  IN TODAY'S MINUTE ORDER THAT IT SHOULD BE SUBMITTED

5  WITHIN 10 DAYS, OKAY, GIVE YOU TEN DAYS TO GET THAT

6  DONE.  AND PLEASE CITE THE CASES THAT WAS REFERENCED

7  LAST TIME.  THANK YOU.

8          MS. CLEOFE:  YES, YOUR HONOR.

9          THE COURT:  OKAY.  FOR CASE MANAGEMENT ORDER

10 NUMBER TWO WHICH I HAVE NOT YET SIGNED, AND I'LL TELL

11 YOU WHY.  IT FIRST ADDRESSES THE MASTER COMPLAINT AND

12 THE SHORT FORM COMPLAINTS AND THE SCHEDULE PROPOSED FOR

13 NUMBERS ONE THROUGH SIX AS ACCEPTABLE.  SO THAT GOES

14 THROUGH THE PROCESS OF THE MASTER COMPLAINT, THE SHORT

15 FORM COMPLAINTS, PLAINTIFFS SELECTING THREE CASES TO BE

16 THE BASIS OF THE DEMURRERS.

17          AND THE GOOD THING FROM MY STANDPOINT

18 ABOUT THAT PART OF THE SCHEDULE IS THAT IT TEES THE

19 CASES UP PRIOR TO THE TIME WHEN -- WELL, JUST PRIOR TO

20 THE TIME WHEN WE EXPECT FOR THE GONZALEZ VERSUS GOOGLE

21 CASE TO BE DECIDED BY THE SUPREME COURT.  SO I KNOW THAT

22 IN THE MDL YOU ARE DOING ADVANCE BRIEFING ON DEMURRERS,

23 AND OF COURSE WE GOT STARTED WITH THIS COORDINATION

24 SEVERAL MONTHS AFTER THE MDL WAS PUT TOGETHER SO WE'RE A

25 LITTLE BIT BEHIND, BUT THIS WILL ALLOW US JUST TO HAVE

26 ONE SET OF BRIEFING AFTER GONZALEZ VERSUS GOOGLE IS

27 DECIDED OR NOT DECIDED.  I HAVE A THEORY THAT DISMISSAL

28 IS IMPROVIDENTLY GRANTED, BUT WE'LL SEE IF I AM RIGHT.

1  IT DOESN'T MATTER.  WE'LL KNOW ONE WAY OR THE OTHER AT

2  THAT POINT.

3              OKAY.  SO WITH RESPECT TO THE PLEADING

4  CHALLENGES AND THE SCHEDULE FOR THAT, THAT'S WHAT I

5  WANTED TO TALK TO YOU BEFORE I SIGNED CMO NUMBER TWO.

6  SO LET ME FIRST ASK YOU, HAVING HAD SOME TIME TO THINK

7  ABOUT IT, IS IT STILL MAKING SENSE TO YOU THAT WE WILL

8  BRIEF THE PLEADING CHALLENGES ON THE BASIS OF THREE

9  CASES IN THE WAY THAT WE'RE PLANNING TO?  IS THAT MAKING

10 SENSE TO EVERYBODY?

11             MR. CREED:  IT DOES FOR THE PLAINTIFFS, YOUR

12 HONOR.

13             MR. SCHMIDT:  YOUR HONOR, PAUL SCHMIDT FOR

14 META.  WE ARE PREPARED TO PROCEED ON THAT BASIS.  IT

15 DOES CREATE A DISCONNECT BETWEEN THE WAY YOUR HONOR IS

16 ADDRESSING THE DEMURRER AND THE WAY JUDGE GONZALEZ

17 ROGERS IS ADDRESSING THE MOTION TO DISMISS.  AND WE HAVE

18 BEEN ASSUMING THAT SOME OF THAT WOULD BE SMOOTHED OVER

19 BY THE FACT THAT WHEN PLAINTIFFS ELECT THEIR CASES THEY

20 WILL HAVE SOME FOCUS ON CALIFORNIA PLAINTIFFS AS OPPOSED

21 TO IDIOSYNCRATIC -- OTHER STATES THAT MIGHT BE BEFORE A

22 COURT, BUT THAT COULD BECOME A BIT OF AN ISSUE IF THAT

23 CIRCUMSTANCE ARISES IF THEY PICK NON-CALIFORNIA

24 PLAINTIFFS.

25             THE COURT:  OKAY.  I CAN'T IMAGINE THAT YOU

26 WOULD PICK ALL NON-CALIFORNIA PLAINTIFFS.

27             MR. CREED:  I BELIEVE AT THIS POINT ALL THE

28 PLAINTIFFS IN THESE JCCP ARE CALIFORNIA PLAINTIFFS

1   ALTHOUGH THAT MIGHT CHANGE OR MAY HAVE ALREADY CHANGED,

2   THE LAST TIME I CHECKED.

3          THE COURT:  OKAY.  MR. SCHMIDT IS SHAKING HIS

4   HEAD.

5          MR. SCHMIDT:  YES, THAT'S NOT OUR

6   UNDERSTANDING, BUT YOU KNOW YOUR PLAINTIFFS BETTER THAN

7   WE DO.  WE HAD TAUGHT FROM LOOKING AT IT THAT THE

8   MAJORITY WERE CALIFORNIA, BUT THERE WERE A RANGE FROM

9   OTHER STATES, BUT YOU WOULD KNOW BETTER THAN US.

10          MR. CREED:  YEAH, I THINK THE LAST WE DID,

11   THERE WERE MOSTLY CALIFORNIA, AND I BELIEVE I -- IF IT

12   HAS CHANGED SINCE THEN.  I BELIEVE THE LAST WE DID THEY

13   WERE ALL CALIFORNIA, BUT I THINK THEY HAVE CHANGED.

14   THERE HAS BEEN SOME THAT ARE NON-CALIFORNIA.  I'M AWARE

15   THERE WILL BE MORE NON-CALIFORNIA PLAINTIFFS TO BE FILED

16   IN THIS PROCEEDING.

17          THE COURT:  OKAY.  THE REASON I WANTED TO

18   BRIEF THE ENTIRETY OF A COMPLAINT OR, AS WE'RE GOING TO

19   DO IT, THREE COMPLAINTS IS BECAUSE OF THE STRICTURES ON

20   DEMURRERS IN CALIFORNIA.  I JUST -- MY INSTINCT WAS WE

21   COULD GET HUNG UP IF WE DIDN'T DO AN ENTIRE COMPLAINT.

22   AND I REALIZE THAT JUDGE GONZALEZ ROGERS, WITH WHOM I

23   HAVE SPOKEN BY THE WAY, HAS IT SET UP DIFFERENTLY, BUT

24   12(B)(6) IS DIFFERENT TOO, QUITE DIFFERENT, FRANKLY.  SO

25   BEING AWARE OF HOW IT'S BEING DONE IN FEDERAL COURT, I

26   THINK I'M SATISFIED THAT THIS IS A BETTER WAY FOR STATE

27   COURT.

28          AND THE OTHER THING ABOUT THE WAY THE MDL

```
 1  IS DOING IT, OBVIOUSLY, THEY HAVE MORE THAN ONE STATE'S
 2  LAW TO HANDLE AND THAT WILL BE A COMPLEXITY, BUT ALSO
 3  JUDGE GONZALEZ ROGERS IS ONLY DOING FIVE CAUSES OF
 4  ACTION, AS I UNDERSTAND IT.  SO I AM FINE, BY THE WAY,
 5  STRUCTURING THIS CASE SO THAT JUDGE GONZALEZ ROGERS
 6  DECIDES FIRST, AND I'M FINE WITH THAT.  I DON'T KNOW
 7  THAT IT'S NECESSARY, BUT WE'LL SEE.  WE'LL SEE HOW IT
 8  WORKS OUT.  I'M KIND OF THINKING THAT THIS WILL BE
 9  STRUCTURED SO SHE'S LIKELY TO DECIDE BEFORE I DO, WHICH
10  I AM DEFERENTIAL.  THAT'S FINE.  OKAY.  AND I DON'T HAVE
11  TO FOLLOW, AS YOU KNOW.
12              SO GOING BACK THEN TO THE SCHEDULE -- I
13  MEAN, THE REPLY BRIEF WOULD BE FILED IN OCTOBER, AND I
14  JUST WOULD RATHER GET ON WITH THIS A LITTLE MORE QUICKLY
15  IF WE COULD.  BUT, ON THE OTHER HAND, IT'S VERY
16  COMPLICATED, AND THE SCHEDULE AS PROPOSED GIVES EACH
17  SIDE ABOUT A MONTH.  SO IF WE ASSUME, YOU KNOW, THAT THE
18  SUPREME COURT BEFORE IT GOES ON VACATION DECIDES
19  THEIR -- OR IT DOESN'T DECIDE THEIR CASE IN GONZALEZ
20  VERSUS GOOGLE, DEFENDANTS WOULD GET ABOUT A MONTH TO
21  ABSORB THAT AND FILE AND THEN A MONTH AND A MONTH.  SO
22  IT'S JUST A LITTLE LONG, FRANKLY, BUT YOU LET ME KNOW
23  WHAT YOU THINK.  THOUGHTS?
24         MR. CREED:  WELL, IT'S FINE, YOUR HONOR.
25  BEFORE WE GOT HERE, I SAW THE ORDER WASN'T ENTERED AND I
26  THOUGHT -- I ACTUALLY SPECULATED IT WAS BECAUSE YOU
27  THOUGHT IT WAS A LITTLE LONG.  WE'RE FINE SHORTENING IT.
28  I THINK THE CHALLENGE WILL BE FOR DEFENDANTS TO PREPARE
```

 1  THEIR INITIAL DEMURRER WHICH THEY ARE THE MOVING PARTY,

 2  BUT WE'RE FINE SHORTENING OUR REPLY TO A MONTH INSTEAD

 3  OF SIX WEEKS.

 4          MR. SCHMIDT:  I THINK FROM OUR PERSPECTIVE,

 5  YOUR HONOR, WE WOULD PREFER HAVING A GOOD BLOCK OF TIME

 6  AFTER THEY IDENTIFY THEIR THREE CASES.  I DON'T WANT TO

 7  JAM THE PLAINTIFFS UP, BUT IF THEY IDENTIFY THEIR THREE

 8  CASES EARLIER WE COULD PROBABLY MOVE UP OUR DEMURRER

 9  DATE A WEEK OR TWO EARLIER.  AND THAT WOULD PULL

10  EVERYTHING ALONG IN ADDITION TO SHORTENING WHICH

11  MR. CREED SUGGESTED, BUT WE CAN PROCEED HOWEVER YOUR

12  HONOR DEEMS BEST.

13          THE COURT:  RIGHT.  SO, YOU KNOW, MAYBE THE

14  PLAINTIFFS COULD DO THAT LITTLE BIT EARLIER.  ON THE

15  OTHER HAND, YOU KNOW, WE MIGHT NOT HAVE GONZALEZ VERSUS

16  GOOGLE UNTIL JULY 1 OR JULY 3, OR THEY ALWAYS GET IT

17  DONE BY THE 4TH OF JULY.

18          MR. CREED:  YOUR HONOR, I THINK THAT -- I'LL

19  NEED TO CONFER WITH OTHER PLAINTIFFS COUNSEL, BUT I

20  SUSPECT THAT THE GONZALEZ DECISION AND SECTION 230 IS

21  NOT GOING TO IMPACT TOO MUCH WHICH PLAINTIFFS WE

22  IDENTIFY.  SO WE -- I CAN CONFER WITH OTHER PLAINTIFFS

23  COUNSEL AND SEE IF WE CAN IDENTIFY WHOLE COMPLAINTS THAT

24  THEY CAN DEMURRER ON EARLIER.

25          THE COURT:  OKAY.  ALL RIGHT.  SO LET ME --

26  WELL, LET'S SEE.

27          MR. CREED:  WOULD YOUR HONOR LIKE US TO RE --

28          THE COURT:  TO REDO IT.  I WOULD LIKE YOU TO

```
 1   REDO IT.  ON THE OTHER HAND, I AM LEAVING FOR A TWO-WEEK
 2   VACATION ON FRIDAY AND I'M IN EUROPE.  IF YOU DON'T GET
 3   IT TO ME BEFORE FRIDAY, I WON'T GET IT ENTERED.
 4           SO LET'S DO THIS.  I WILL -- I'LL ENTER
 5   THE ORDER, BUT I'LL STRIKE PARAGRAPHS 6 THROUGH 9 AND
 6   THEN YOU CAN MEET AND CONFER.  AND THEN IF I DON'T GET
 7   YOUR NEW IDEAS BEFORE I LEAVE MID-DAY ON FRIDAY THIS
 8   WEEK, THEN I'LL SEE IT WHEN I GET BACK.  OKAY.
 9           MR. CREED:  YES.
10           MR. SCHMIDT:  THANK YOU, YOUR HONOR.
11           THE COURT:  GOOD.  AND, YOU KNOW, WE WILL THEN
12   SET A -- WHAT YOU SHOULD DO IS SET A -- PUT A LINE THERE
13   FOR A HEARING DAY.  AND THEN I AND MY STAFF WILL TAKE A
14   LOOK AT THAT AND WE'LL SET THE HEARING DATE.  THEN IF
15   IT'S BAD FOR SOMEBODY YOU CAN LET ME KNOW.  OKAY.  GOOD.
16           SO AS AN ASIDE ON THE MDL BRIEFING, I DID
17   LOOK AT THE LODGED COMPLAINT, MASTER COMPLAINT, IN THE
18   MDL, AND I WAS WONDERING WHETHER YOU HAD DISCUSSED WITH
19   JUDGE GONZALEZ ROGERS INCLUDING ONE OF THE CRIMINAL
20   STATUTE CAUSES OF ACTION IN THE FIRST WAIVE BRIEFING.
21   I'M -- IT'S NONE OF MY BUSINESS.  I'M JUST THROWING THAT
22   OUT THERE.
23           MR. SCHMIDT:  WE DID DISCUSS IT, YOUR HONOR,
24   BUT IT WILL COME UP BECAUSE THE NEGLIGENCE PER SE CLAIM
25   THAT THE PLAINTIFFS HAVE ELECTED TO COVER SWEEPS IN
26   THOSE -- THOSE CAUSES OF ACTION.
27           THE COURT:  OKAY.  THAT SEEMS LIKE A BIG ISSUE
28   TO ME.  THAT'S ALL.  OKAY.  ENOUGH SAID.  I'VE GOT
```

```
 1  ENOUGH TO DO HANDLING MY CASE WITHOUT HANDLING JUDGE
 2  GONZALEZ ROGERS' CASES.
 3              LET'S MOVE TO THE ISSUE OF THE PROTECTIVE
 4  ORDER.  AND I AM QUITE WILLING TO WAIT UNTIL FEDERAL
 5  COURT FINISHES ITS WORK AND THEN LOOK AT NECESSARY
 6  MODIFICATIONS WITHOUT GETTING TOO FAR INTO THE ISSUES
 7  THAT ARE IN THE JOINT REPORT.  AND THINGS WILL SMOOTH
 8  OUT OVER TIME, BY THE WAY, IN TERMS OF EACH SIDE
 9  COMMUNICATING WITH THE OTHER SUFFICIENTLY IN ADVANCE TO
10  GET BOTH SIDE'S VIEWS IN IN A FAIR WAY.  I HAVE HAD THAT
11  HAPPEN BEFORE IN LARGE CASES WHERE THE JOINT REPORTS ARE
12  KIND OF A PROBLEM AT THE BEGINNING, BUT I'M CONFIDENT
13  YOU WILL SMOOTH THAT OUT AS TIME GOES ON.
14              SO I WILL SAY THAT THERE HAS TO BE
15  COMPLIANCE WITH CALIFORNIA RULE OF COURT 2.550, ET SEC.
16  I COULDN'T, FRANKLY, IMAGINE A SITUATION IN WHICH IT
17  WOULD BE APPROPRIATE TO NOT ALLOW NONPARTIES TO
18  CHALLENGE CONFIDENTIALITY.  THAT'S PROBABLY 60 PERCENT
19  OF THE REASON FOR THE WAY CALIFORNIA LAW HAS EVOLVED
20  WITH THE CALIFORNIA SUPREME COURT CASE WHICH I DIDN'T
21  LOOK UP, BUT ONE THE NETWORKS.
22              MR. CREED:  NBC SUBSIDIARY.
23              THE COURT:  NBC SUBSIDIARY, THANK YOU, BEING
24  VERY CONCERNED ABOUT OPEN COURT PROCEEDINGS.  AND THAT'S
25  WHY -- AND THEN THE RULES OF COURT WERE DRAFTED IN THE
26  WAKE OF THAT.  GO AHEAD.
27              MS. SIMONSEN:  UNDERSTOOD, YOUR HONOR, AND WE
28  APPRECIATE THAT GUIDANCE.  WE HAVE EVERY INTENTION WITH
```

```
 1   RESPECT TO THE PROTECTIVE ORDER THAT WE WOULD ENTER FOR
 2   YOUR COURT'S CONSIDERATION TO ADDRESS RULE 2.550 AND
 3   TAKE INTO ACCOUNT WITH RESPECT TO SEALING.
 4            WITH RESPECT TO THE CONFIDENTIALITY
 5   CHALLENGES, THE RULE THAT THE PLAINTIFFS CITE, AS WE
 6   UNDERSTAND IT, ALLOWS FOR THE GENERAL PUBLIC TO
 7   CHALLENGE THE CONFIDENTIALITY OF RECORDS FILED AND
 8   LODGED WITH THE COURT AS OPPOSED TO, FOR INSTANCE, BEING
 9   ABLE TO CHALLENGE THE CONFIDENTIALITY OF ANY DOCUMENT
10   PRODUCED IN THE COURSE OF DISCOVERY IN A CASE.  AND THAT
11   WOULD BE THE DISTINCTION THAT AT THIS POINT WE WOULD
12   DRAW, BUT WE ARE HAPPY TO CONTINUE THE CONFERRAL WITH
13   THE PLAINTIFFS ON THIS.  THE ISSUE IS THEN TEED UP FOR
14   MAGISTRATE JUDGE HIXON IN THE MDL AS WELL, RECOGNIZING A
15   DIFFERENT SET OR RULES AND PROCEDURES WILL APPLY THERE,
16   BUT I THINK THAT WILL BE VERY INSTRUCTIVE FOR THE
17   PARTIES BEFORE WE SUBMIT SOMETHING FOR YOUR HONOR'S
18   CONSIDERATION.
19            THE COURT:  AND THEN ON THE DISCLOSURE OF
20   EXPERTS ISSUE, I HAVEN'T REALLY -- THAT HAS NOT COME UP
21   BEFORE, BUT I STARTED THINKING ABOUT IT.  AND, YOU KNOW,
22   ONE THING THAT OCCURRED TO ME WAS THAT MAYBE, INSOFAR AS
23   CONFIDENTIAL MATERIAL IS BEING PROVIDED TO AN EXPERT,
24   PERHAPS, THE PARTY THAT, AS MAKING THAT DISCLOSURE TO
25   THE EXPERT, COULD BE REQUIRED JUST TO FILE UNDER SEAL
26   WITH THE COURT THE COMPLIANCE DOCUMENT THAT THE EXPERT
27   SIGNED SO THAT IT'S JUST ON FILE.  EARLY DISCLOSURE OF
28   EXPERTS IS AN ISSUE.  I MEAN, OBVIOUSLY, IN -- AT LEAST
```

1  IN STATE COURT PARTIES CAN HAVE NON-DISCLOSED EXPERTS

2  THAT NEVER GET DISCLOSED AND THEY'RE -- YOU KNOW, IT'S

3  WORK PRODUCT AT THAT POINT.  ANYWAY, JUST A THOUGHT.

4           SO I WILL AWAIT THE WORK ON THE FEDERAL

5  COURT PROTECTIVE ORDER.  AND ALSO WITH THE ESI PROTOCOL,

6  I'M GLAD FOR YOU TO WORK WITH THE MDL COUNSEL TO FIGURE

7  THAT ONE OUT.

8           MR. CREED:  YOUR HONOR, MAY I MAKE A COMMENT

9  ON THE DISCLOSER OF EXPERT ISSUE.  ONE OF THE -- AND I

10  AM NOT SURE THERE IS ANYTHING TO DECIDE AT THE MOMENT ON

11  IT, OF COURSE, BUT ONE OF THE CHALLENGES WE'LL HAVE ON

12  THE PLAINTIFFS SIDE IS THAT THERE ARE SOME ATTORNEYS WHO

13  ARE IN THE STATE COURT PROCEEDING AND THE FEDERAL

14  PROCEEDING AND SO.

15           WHAT WE'RE TRYING TO NAVIGATE HERE AND

16  WHY WE THOUGHT IT WAS USEFUL TO PRESENT THE ISSUE TO YOU

17  WAS SITUATIONS WHERE THERE IS, OBVIOUSLY, DIFFERENT

18  RULES, DIFFERENT PROCEDURAL RULES, IN EACH JURISDICTION,

19  AND WE'RE GOING TO HAVE TO FIGURE OUT WAYS TO MAKE SURE

20  ATTORNEYS ARE IN COMPLIANCE WITH BOTH PROTECTIVE ORDERS.

21  SO WE'LL WORK WITH DEFENDANTS ON IT, BUT WE ARE WORKING

22  WELL COORDINATING THE TWO CASES.  WE'VE ALL BEEN ON

23  PHONE CALLS TOGETHER, LENGTHY MEET AND CONFERS ON A

24  NUMBER OF ISSUES.  AND SO IT WILL BE A PROCESS TO SMOOTH

25  OUT FOR HOW THE DIFFERENT PROCEEDINGS PRESENT ISSUES TO

26  THE DIFFERENT DECISION MAKERS UNDER DIFFERENT RULES, AND

27  SO WE'RE JUST MAKING SURE WE'RE ACTING APPROPRIATELY

28  HERE.

```
 1              THE COURT:  OKAY.
 2              MS. SIMONSEN:  JUST TO BRIEFLY RESPOND.  WE OF
 3  COURSE UNDERSTAND THAT THE PARTIES WILL NEED TO CONFER
 4  ABOUT ANY STATE COURT DIFFERENCES THAT MAY REQUIRE SOME
 5  ADJUSTMENTS TO WHATEVER THE PARTIES PROPOSE OR IS
 6  ENTERED IN THE MDL.  WE OBVIOUSLY WANT TO BE MINDFUL OF
 7  ANY PARTICULAR GUIDANCE YOUR HONOR HAS.  IT'S SIMPLY OUR
 8  POSITION THAT IT'S PREMATURE TO BE RAISING THOSE ISSUES
 9  AT THIS POINT IN TIME.  AND WE WOULD PROPOSE THAT WHEN
10  THE ISSUE IS RIPE FOR CONSIDERATION WE PRESENT ALL
11  REMAINING OUTSTANDING ISSUES FOR YOUR HONOR'S
12  CONSIDERATION SO THAT WE DON'T PREMATURELY RAISE THEM
13  WITH YOU AT CMC'S.
14              THE COURT:  OKAY.  THAT'S FINE.  I LIKE SEEING
15  THINGS IN ADVANCE, ACTUALLY, THINKING ABOUT THEM, BUT
16  YOU KNOW HOW WE WORK IN COMPLEX COURTS.  WE DO A LOT OF
17  INFORMAL -- FOR EXAMPLE, INFORMAL DISCOVERY CONFERENCES
18  AND PREMOTION CONFERENCES.  SO WE DO A LOT OF
19  COMMUNICATING WITHOUT DECIDING, AND DECIDING IS A
20  DIFFERENT THING.
21              MS. SIMONSEN:  THANK YOU, YOUR HONORER.
22              THE COURT:  OKAY.  ON THE PRESERVATION ISSUE,
23  I THINK IF -- I'M GLAD YOU ARE GOING TO PROCEED WITH THE
24  PLAINTIFF PROFILE FORM THAT WOULD SORT OF INITIATE, AS I
25  WOULD SEE IT, A RESPONSIBILITY OF THE DEFENDANT TO
26  PRESERVE WITH REGARD TO THE USER ACCOUNTS.  I THINK IT'S
27  IMPORTANT TO DO THAT A VERY QUICKLY, QUITE HONESTLY.  I
28  THINK IT'S TO EVERYBODY'S ADVANTAGE.
```

1        IT'S TO PLAINTIFF ADVANTAGE BECAUSE YOU

2   WANT THAT EVIDENCE PRESERVED.  IT'S TO THE DEFENDANT'S

3   ADVANTAGE BECAUSE -- WELL, THE PRESERVATION ORDERS, I

4   DON'T THINK I'VE DONE A DOCUMENT PRESERVATION ORDER,

5   WHICH IT'S SORT OF INTERESTING, BUT IT REALLY IS A

6   PROTECTION FOR THE DEFENDANTS BECAUSE WHAT HAPPENS

7   WITHOUT THAT IS -- IT COULD BE WHAT HAPPENED IN ONE OF

8   THE FIRST CASES I LITIGATED.  OUR -- I WAS WORKING WITH

9   A PARTNER WHO WAS LITIGATING IT.  YOU KNOW HOW THAT

10  GOES.

11        AND, YOU KNOW, THE RETIRED -- I WILL TELL

12  THIS SORRY.  WE WERE SUBBED INTO A CASE, AND JUST BEFORE

13  WE WERE SUBBED IN A FORMER EMPLOYEE, HIGH-LEVEL

14  EMPLOYEE, OF THE COMPANY HAD BEEN DEPOSED.  HE WAS

15  RETIRED.  AND IT WAS A DEPOSITION WITH A NOTICE TO

16  PRODUCE DOCUMENTS, A SUBPOENA IN THE CASE.  AND HE -- IT

17  WAS VERY ODD THAT HIS WIFE INSISTED HE CLEAN OUT THE

18  GARAGE ON THE SATURDAY BEFORE HIS WEDNESDAY DEPOSITION,

19  AND HE DESTROYED EVERYTHING.

20        OKAY.  AND WE WERE NOT IN THE CASE AT

21  THAT TIME, THANKFULLY, BUT WE WERE BROUGHT IN AFTER

22  THAT.  IT WAS A HUGE FACTOR IN THE CASE, JUST A HUGE

23  FACTOR BECAUSE THE DESTRUCTION WAS GOING TO LOOM SO

24  LARGE IN THAT TRIAL.  AND I JUST REFERRED THE DEFENDANTS

25  TO CACI 204, WILLFUL SUPPRESSION.  I HAVE GIVEN THAT

26  INSTRUCTION BEFORE.  I THINK IT HAS A DEVASTATING AFFECT

27  ON THE JURY, AND MANY TIMES PLAINTIFFS ARE BETTER OFF

28  HAVING THAT INSTRUCTION THAN HAVING THE EVIDENCE.

 1          SO THIS WHOLE DOCUMENT PRESERVATION
 2   ISSUE, YOU CAN GO AHEAD AND NEGOTIATE A PRESERVATION
 3   ORDER IN FEDERAL COURT.  TO MY WAY OF THINKING, IT'S
 4   ALMOST A SAFE HARBOR FOR THE DEFENDANTS, BUT I THINK
 5   EVERYTHING IS ADVANTAGED BY DOING THIS PLAINTIFF
 6   PROFILE, AND I THINK YOU SHOULD GET ON WITH IT.  AND
 7   EVEN IF YOU CAN'T -- WELL, HOPEFULLY, YOU CAN NEGOTIATE
 8   SOMETHING THAT'S AGREED BY BOTH SIDES, BUT JUST BASED ON
 9   WHAT HAS BEEN ALLEGED AND DISCUSSED ABOUT HOW LONG
10   THINGS ARE KEPT IN THE INTERNET WORLD OF THESE ACCOUNTS,
11   I THINK THAT NEEDS TO BE DONE QUICKLY.
12          MR. CREED:  YOUR HONOR, SO WE ARE WORKING,
13   NEGOTIATING A PLAINTIFF PROFILE FORM FOR PRESERVATION
14   PURPOSES.  I THINK IN THE INTERIM, I CAN SPEAK FOR OUR
15   CASES, WE HAVE BEEN RESPONDING AT LEAST TO META'S
16   REQUESTS FOR PROFILE INFORMATION FOR THE PLAINTIFFS.  SO
17   IT'S BEEN HAPPENING INFORMALLY.  I HAVE SEEN LETTERS
18   GOING BACK AND FORTH ON THAT, BUT WE WILL ADOPT A MORE
19   FORMAL PROCESS, AS YOUR HONOR DIRECTED.
20             ON THE ISSUE OF THE PRESERVATION ORDER IN
21   FEDERAL COURT, MY UNDERSTANDING IS THAT DEFENDANTS WILL
22   SEEK A SIMILAR ORDER IN THIS PROCEEDING.  AND WHAT WE'RE
23   TRYING TO AVOID, OF COURSE, IS THAT THE FEDERAL ENACTS
24   AN ORDER UNDER FEDERAL RULES WITH RESPECT TO
25   DISCOVERABILITY STANDARDS, AND THEN WE COME TO YOUR
26   HONOR WITH AN ARGUMENT THAT THOSE STANDARDS DON'T APPLY
27   AND THERE IS A DIFFERENT ORDER IN THIS CASE.
28             WE ARE TRYING TO SYNC THEM UP.  AND AS

 1  YOU SAID, AS YOUR HONOR SAID, I THINK IT DOES PROTECT

 2  THE DEFENDANT, SO MAYBE IT'S JUST SOMETHING FOR THE

 3  DEFENDANTS TO FIGURE OUT HOW TO COMPLY WITH BOTH ORDERS

 4  IF THERE ARE TWO ORDERS.

 5          THE COURT:  I MEAN, I DON'T KNOW.  I LOOK AT

 6  IT AS A SAFER HARBOR FOR THE DEFENDANTS SO -- I DON'T

 7  KNOW.  AND IT'S A CURIOUS QUESTION, IN A WAY, HOW THE --

 8  HOW THE BALANCING OF THE FEDERAL RULES WITH REGARD TO

 9  DISCOVERY IN TERMS OF WHAT IS DISCOVERABLE WOULD APPLY

10  IN A CASE LIKE THIS.  I MEAN, IT'S NOT A SITUATION WHERE

11  IT'S A SMALL CASE AND A SMALL DEFENDANT PRODUCING

12  DOCUMENTS.  SO IN THE END I DOUBT THERE IS MUCH

13  DIFFERENCE, BUT, YOU KNOW, I CAN'T SPECULATE.

14  ULTIMATELY THE ISSUE IS WHETHER IT'S REQUESTED IN

15  DISCOVERY AND WHETHER THE COURT FINDS THAT IT SHOULD BE

16  PRODUCED.  AND THEN IF IT'S BEEN DESTROYED, THEN THAT'S

17  THE PROBLEM.

18          MS. SIMONSEN:  YOUR HONOR, WE COULDN'T AGREE

19  WITH YOU MORE AS TO THE PRESERVATION ORDER BEING, I

20  THINK, A HELPFUL TOOL FOR BOTH SIDES.  AND THE

21  PRESERVATION ORDER THAT WE HAVE PROPOSED TO

22  PLAINTIFFS -- WHICH, AGAIN, WE'RE NEGOTIATING WITH BOTH

23  THE MDL PLAINTIFFS AND THE JCCP PLAINTIFFS -- IS

24  DESIGNED TO MEET DEFENDANTS' PRESERVATION AND DISCOVERY

25  OBLIGATIONS ACROSS BOTH THE STATE AND FEDERAL

26  PROCEEDINGS.

27          CERTAINLY, THERE IS SOME DIFFERENCE IN

28  TERMINOLOGY WITH WORDS LIKE "PROPORTIONALITY" IN FEDERAL

 1 | COURT AS OPPOSED TO, PERHAPS, "BALANCE" AND "RELEVANCE"
 2 | AND "UNDUE BURDEN" IN STATE COURT, BUT THE WAY THAT WE
 3 | HAVE APPROACHING THE PRESERVATION ORDER IS TO DELINEATE
 4 | SPECIFIC CATEGORIES OF DOCUMENTS AND INFORMATION THAT
 5 | EACH DEFENDANT HAS, BEING VERY TRANSPARENT WITH
 6 | PLAINTIFFS AS TO EXACTLY WHAT WE ARE PRESERVING AND THE
 7 | CATEGORIES OF INFORMATION FOR WHICH, WHETHER DUE TO
 8 | PRIVACY OR BURDEN OR OTHER CONCERNS, WE TAKE A POSITION
 9 | WE ARE UNABLE TO PRESERVE.  AND THOSE ISSUES, WE INTEND
10 | TO BE AND HAVE BEEN FULLY TRANSPARENT WITH PLAINTIFFS
11 | ABOUT AND WILL CONTINUE TO BE TRANSPARENT WITH THEM
12 | ABOUT.
13 |           WITH THE SPECIFIC CATEGORIES OF DOCUMENTS
14 | AND INFORMATION DELINEATED IN THIS FASHION, IF WE CAN
15 | REACH AGREEMENT WITH PLAINTIFFS OR IF YOUR HONOR AND THE
16 | MDL COURT ARE OPEN TO THAT APPROACH, WE THINK THAT THAT
17 | REALLY OBVIATES ANY NEED FOR A DISCUSSION AROUND THE
18 | KIND OF THEORETICAL DIFFERENCES BETWEEN FEDERAL AND
19 | STATE LAW AND DISCOVERABILITY WHICH AS YOUR HONOR NOTED
20 | FROM OUR PERSPECTIVE REALLY IS EQUIVALENT ACROSS THE
21 | JURISDICTIONS.  AND WE HAVE BEEN APPROACHING
22 | PRESERVATION WITH OUR OBLIGATIONS UNDER STATE AND
23 | FEDERAL RULES IN MIND.
24 |           THE COURT:  OKAY.  WELL, I DON'T THINK THERE
25 | IS ANYTHING MORE I CAN DO FOR YOU HERE EXCEPT THAT --
26 | AND REALLY I THINK IT'S MOSTLY ON THE PLAINTIFF'S SIDE
27 | TO GET TOGETHER SOMETHING THAT WE'VE TALKED ABOUT AS A
28 | PLAINTIFF PROFILE FORM TO MAKE A DEMAND, IF YOU WILL, ON

```
 1  THE DEFENDANT'S, YOU KNOW, HERE'S AT A MINIMUM WHAT WE

 2  BELIEVE THE ACCOUNT INFORMATION IS, ET CETERA, AND THE

 3  IDENTIFICATION OF THE PLAINTIFF.  SO OKAY.

 4             MS. SIMONSEN:  YOUR HONOR, JUST TO PROVIDE A

 5  BRIEF UPDATE TO YOUR HONOR, THE DEFENDANTS DID PROCEED A

 6  PLAINTIFF PROFILE FORM WHICH WE ARE NOW REFERRING TO AS

 7  A PLAINTIFF PRESERVATION INFORMATION FORM JUST TO MAKE

 8  SURE THERE'S NO CONFUSION WITH RESPECT TO THE PLAINTIFF

 9  FACT SHEET WHICH WILL BE A SEPARATE DOCUMENT.  AND WE

10  DID RECEIVE COMMENTS, AT LEAST FROM THE MDL PLAINTIFFS,

11  I BELIEVE, MONDAY EVENING.  AND WE WILL BE MEETING AND

12  CONFERRING WITH BOTH SETS OF PLAINTIFFS ON THAT FORM

13  TOMORROW MORNING, SO WE ARE MOVING IT FORWARD.

14             THE COURT:  GOOD.  I APPRECIATE THAT.

15             MR. CREED:  YES, YOUR HONOR.

16             THE COURT:  OKAY.  VERY GOOD.

17             SO WE TALKED SEPARATELY LAST TIME ABOUT

18  CSAM PRESERVATION, AND I SEE THAT YOU HAVE BEEN

19  DISCUSSING THAT.  I WOULD LIKE TO GIVE PRIORITY TO THE

20  ISSUE.  COULD WE HAVE A STIP AND PROPOSED ORDER IN 20

21  DAYS ON THAT AS A SEPARATE ISSUE.

22             MS. SIMONSEN:  YOUR HONOR, WE HAD ASKED

23  PLAINTIFFS ON MARCH 7TH FOR A MEET AND CONFER ON THAT

24  ISSUE AND THEY DECLINED TO SET IT.  WE HAVE NOW FINALLY

25  SET A MEET AND CONFER ON THAT ISSUE FOR TOMORROW

26  MORNING.  I BELIEVE THAT THIS IS A RELATIVELY COMPLEX

27  ISSUE.

28             JUST TO GIVE YOUR HONOR ONE PERSPECTIVE
```

1  ON IT, FEDERAL LAW DOES ALLOW, FOR INSTANCE, IN CRIMINAL

2  CASES FOR CRIMINAL DEFENDANTS ONLY TO ACCESS THIS TYPE

3  OF CSAM INFORMATION THROUGH GOVERNMENT FACILITIES.  AND

4  THAT IS AN EXCEPTION MADE ONLY IN THE CASE OF CRIMINAL

5  CASES.  THAT'S ONLY TO HIGHLIGHT FOR YOUR HONOR REALLY

6  WHAT A SORT OF EXTREME FEDERAL STATUTE WE ARE DEALING

7  WITH HERE THAT PROHIBITS US UNDER FEDERAL LAW FROM

8  POSSESSING AND DISTRIBUTING CHILD SEX ABUSE MATERIAL.

9          AND FOR THOSE REASONS WE THINK LIKELY

10 SIGNIFICANT CONFERRAL ON THESE ISSUES WILL BE REQUIRED

11 FROM OUR PERSPECTIVE, AND IT'S IN PLAINTIFFS INTEREST

12 VERY MUCH TO UNDERSTAND HOW THAT FEDERAL STATUTE MAY

13 APPLY WITH RESPECT TO ANY CSAM THAT THEIR CLIENTS MAY BE

14 IN POSSESSION OF BY VIRTUE OF MAINTAINING THEIR SOCIAL

15 MEDIA ACCOUNTS.  SO WE THINK BOTH SIDES HAVE AN INTEREST

16 IN HAVING CLARITY AND AN OPPORTUNITY TO FULLY VET THESE

17 ISSUES WITH ONE ANOTHER BEFORE PRESENTING THEM TO YOUR

18 HONOR.

19          I THINK WE CAN CERTAINLY MAKE EVERY

20 EFFORT TO -- IF WE CAN REACH AGREEMENT ON A PROPOSAL

21 WITH RESPECT TO CSAM PRESERVATION, I THINK 20 DAYS

22 LIKELY WOULD BE SUFFICIENT, SUBJECT TO THE VIEWS OF THE

23 OTHER DEFENDANTS AND THE PLAINTIFFS.  I THINK THAT IF WE

24 AREN'T ABLE TO REACH AGREEMENT ON THAT ISSUE, A BIT OF A

25 LONGER PERIOD OF TIME SO THAT WE CAN FULLY BRIEF IT FOR

26 YOUR HONOR WOULD BE BENEFICIAL.

27          MR. CREED:  YOUR HONOR, 20 DAYS WOULD WORK FOR

28 US.  I AM NOT AWARE OF THAT MARCH 7TH COMMUNICATION, BUT

```
 1  I AM AWARE THAT WE ARE MEETING AND CONFERRING TOMORROW
 2  ON THE ISSUE.  I THINK, AS I UNDERSTAND THE ISSUE, IT'S
 3  JUST ABOUT PRESERVATION OF THE INFORMATION.  SO IT'S NOT
 4  ABOUT THE PRODUCTION OR DISTRIBUTION OF THE INFORMATION.
 5  I THINK CSAM WOULD REQUIRE DEFENDANTS TO PRESERVE IT
 6  ANYWAYS REGARDLESS OF HOW -- THE METHOD BY WHICH THEY
 7  DISTRIBUTE IT TO A CRIMINAL DEFENDANT, BUT THAT'S -- WE
 8  DON'T HAVE TO ARGUE THE MERITS.  TOMORROW WE CAN HAVE
 9  THE MEET AND CONFER AND WE WILL GET ON WITH IT WITHIN
10  THE 20 DAYS.
11         THE COURT:  SO IT IS INDEED ABOUT
12  PRESERVATION, AND SO I THINK WHAT I WOULD LIKE TO DO IS
13  TO SAY THAT I WANT A STIPULATION AND PROPOSED ORDER IN
14  20 DAYS OR A REDLINED PROPOSED ORDER THAT HIGHLIGHTS THE
15  AREAS OF DISAGREEMENT WITH A PROPOSAL AS TO HOW YOU
16  WOULD LIKE TO PROCEED FURTHER WITH DISCUSSION OF THE
17  REMAINING ISSUES WITH THE COURT.
18            SO, IN OTHER WORDS, YOU COULD SAY, YOU
19  KNOW, HERE ARE THE AREAS OF DISAGREEMENT, THE COURT CAN
20  JUST DECIDE, OR, YOU KNOW, HERE IS A COUPLE PARAGRAPHS
21  FOR EACH SIDE WHICH WE'RE PUTTING ON THE MESSAGE BOARD
22  OR, GEE, WE'D LIKE X PAGES PER SIDE AND A HEARING.
23  RIGHT?
24         MS. SIMONSEN:  VERY GOOD, YOUR HONOR.
25         THE COURT:  ANY OF THAT IS FINE.  SO WITHIN 20
26  DAYS A STIPULATION AND PROPOSED ORDER REGARDING CSAM
27  PRESERVATION OR A REDLINED PROPOSED ORDER SHOWING THE
28  AREAS OF DISAGREEMENT TOGETHER WITH A JOINT POSTING ON
```

1  THE MESSAGE BOARD THAT SUGGESTS HOW YOU BELIEVE THE

2  COURT SHOULD DECIDE THOSE ISSUES.

3            MS. SIMONSEN:  YES, YOUR HONOR.

4            THE COURT:  MAKE SENSE?

5            MS. SIMONSEN:  YES, YOUR HONOR.  THANK YOU.

6            THE COURT:  VERY GOOD.  I'M GLAD YOU ARE

7  MOVING FORWARD WITH THE PLAINTIFF FACT SHEETS

8  DISCUSSION.  I THINK IT IS APPROPRIATE TO PROCEED WITH

9  THAT.  THE GAL PROCEDURE THAT YOU SUGGEST IS ACCEPTABLE.

10            MR. CREED:  WE ALSO HAVE A PROPOSED ORDER ON

11  THAT THAT I WILL BE SUBMITTING.

12            THE COURT:  THAT'S FINE.  SO I SEE YOU HAVE A

13  MEDIATOR.  AND SO I WILL WANT TO KNOW MAYBE BY THE TIME

14  OF THE NEXT STATUS CONFERENCE IF YOU ARE AGREEABLE THAT

15  I CAN SPEAK WITH THE MEDIATOR OR NOT.  AND YOU CAN GO

16  EITHER WAY ON THAT.  I DON'T LIKE TO PUSH THOSE THINGS,

17  BUT -- SO I WOULD JUST LIKE TO KNOW.  ALL RIGHT.  SO YOU

18  CAN INCLUDE THAT IN YOUR POSITIONS ON THAT IN THE NEXT

19  STATUS REPORT.

20            WHAT ELSE DO WE NEED TO TALK ABOUT?

21            MR. SCHMIDT:  YOUR HONOR, I HATE TO GO BACK, I

22  APOLOGIZE.  JUST ONE SMALL POINT ON THE SCHEDULING ISSUE

23  THAT I MISSED WHEN YOUR HONOR SAID THIS.  YOUR HONOR

24  SAID THAT THE COURT WOULD ENTER ITEMS ONE THROUGH SIX ON

25  A SCHEDULE.  ITEM SIX IS THE PLAINTIFFS' ELECTION OF THE

26  THREE CASES THAT WOULD BE COVERED.  FROM OUR PERSPECTIVE

27  IF WE'RE GOING TO CONFER ON MOVING DATES, WE WOULD WANT

28  TO BE ABLE TO CONFER ON MOVING THAT UP AS WELL SO I

```
 1   WOULD ASK THE COURT IF THE COURT WOULD JUST ENTER AS ONE
 2   THROUGH FIVE.
 3            THE COURT:  YES, YOU ARE QUITE CORRECT.
 4   ACTUALLY, WHEN I DID AN ANNOTATION ON THE PRINTED-OUT
 5   VERSUS I STRUCK PARAGRAPH SIX AS WELL, SO WE'RE ON THE
 6   SAME PAGE.
 7            MR. SCHMIDT:  THANK YOU, YOUR HONORER.
 8            MR. CREED:  YOUR HONOR, GOING BACK AS WELL ON
 9   THE CASE MANAGEMENT ORDER NUMBER ONE INVOLVING
10   PLAINTIFFS' LEADERSHIP, I HAD NOTICED THAT YOUR HONOR
11   STRUCK CERTAIN PARAGRAPHS.  I JUST WANTED TO SEE IF THAT
12   WAS WITHOUT PREJUDICE BECAUSE THEY RELATED TO COMMON
13   BENEFIT AND ASSESSMENT --
14            THE COURT:  WE DON'T HAVE ANYTHING NEW.
15            MR. CREED:  OKAY.  UNDERSTOOD.  IT'S WITHOUT
16   PREJUDICE, YOUR HONOR?
17            THE COURT:  YES, IT'S WITHOUT PREJUDICE, BUT I
18   THINK -- LET ME EXPRESS MYSELF MORE CLEARLY ON COMMON
19   BENEFIT FUND.  I HAVE SIGNIFICANT DOUBTS AS TO WHETHER I
20   HAVE THE AUTHORITY TO -- AND I KNOW IN OTHER CASES
21   OTHER -- WELL, IN THE SOCAL GAS CASE THERE WAS A COMMON
22   BENEFIT FUND SET UP IN AN INITIAL ORDER THAT ANOTHER
23   JUDGE ENTERED.
24              MY CONCERN IS I DON'T THINK IT'S A COMMON
25   BENEFIT FUND IN THE WAY THAT A CLASS SETTLEMENT IS A
26   COMMON BENEFIT FUND.  I DON'T KNOW THAT I HAVE -- AS I
27   SAY, I DON'T KNOW THAT I HAVE AUTHORITY TO ENTER IT.
28   I'M VERY CONCERNED ABOUT WHAT THE FEDERAL COURTS DO.  I
```

1   HAVE READ JUDGE CHHABRIA'S OPINIONS ON THIS.  I'M VERY

2   CONCERNED ABOUT WHAT FEDERAL COURTS DO BECAUSE IT

3   STRIKES ME AS THE COURT ENSURING THAT ONE SIDE IS

4   GETTING PAID.  AND IT, TO ME, CREATES A SITUATION,

5   PARTICULARLY WHERE BILLS ARE BEING REVIEWED AND

6   POTENTIALLY REVIEWED BY THE COURT, THAT I'M EXTREMELY

7   UNCOMFORTABLE WITH.

8             NOW, IN THE SOCAL GAS CASE WHICH

9   PLAINTIFFS COUNSEL IS FAMILIAR WITH, MR. CREED IS

10  FAMILIAR WITH, WHERE THERE IS A COMMON BENEFIT FUND,

11  THANKFULLY THAT NEVER CAME TO THE COURT, RIGHT.  BUT IN

12  THINKING ABOUT THE PROBLEMS, UNDOUBTEDLY THE PROBLEMS

13  THAT PLAINTIFFS HAVE IN -- PLAINTIFFS COUNSEL HAVE IN

14  COLLECTIVE LITIGATION LIKE THIS, TO ME THERE SHOULD BE

15  AN AGREEMENT BETWEEN COUNSEL WHICH IS THEN ENFORCED

16  THROUGH AN AGREED ARBITRATOR.

17            MR. CREED:  THANK YOU, YOUR HONOR.

18            THE COURT:  SO IT DOESN'T COME BEFORE THE

19  COURT.

20            MR. CREED:  I'M GLAD I RAISED THAT THEN.  WE

21  CAN TALK INTERNALLY.

22            THE COURT:  YES, MAYBE YOU CAN TALK INTERNALLY

23  ABOUT THAT AND KNOW I AM A LITTLE BIT OUT OF THE

24  MAINSTREAM ON THAT, AT LEAST AS YOU LOOK AT AN MDL.  YOU

25  KNOW, WE'VE BEEN DOING COMPLEX LITIGATION HERE FOR 20

26  YEARS, AND I DON'T KNOW OF ANYBODY, ANY OF OUR JUDGES,

27  WHO HAVE EVER GOTTEN INTO -- I KNOW THERE HAVE BEEN CASE

28  MANAGEMENT ORDERS WHERE A COURT HAS AGREED TO A COMMON

1  BENEFIT FUND, BUT I DON'T KNOW OF A SITUATION WHERE A

2  JUDGE HAS EVER GOTTEN INTO THE DEPTH TO BE REVIEWING

3  BILLS AND BILLING.  AND SOMEHOW WE GET THROUGH, YOU

4  KNOW, NONETHELESS.

5          MR. CREED:  YES.

6          THE COURT:  BUT, YOU KNOW, I HAVE LOOKED AT

7  WHAT YOU SET UP IN THE MDL AND IT'S VERY ELABORATE.  NOT

8  YOU, BUT THE MDL COUNSEL HAVE SET UP, AND IT'S VERY

9  ELABORATE.  BUT, YOU KNOW, IF I WERE PLAINTIFF'S

10  COUNSEL, I WOULDN'T LIKE MY BILLS BEING LOOKED AT.  AND

11  IF I WERE DEFENSE COUNSEL, I WOULDN'T LIKE THE OTHER

12  SIDE'S BEING ASSURED OF GETTING PAID.  SO I THINK YOU

13  CAN TAKE CARE OF IT, ACTUALLY, AS PRIVATE -- I WOULD

14  CALL IT PRIVATE ORDERING.

15          MR. CREED:  OKAY.  WE'LL WORK ON THAT, YOUR

16  HONOR.

17          THE COURT:  SO THINK ABOUT THAT.

18              NOW, YOU MIGHT CONVINCE ME BECAUSE I AM

19  NOT UNAWARE THAT THERE IS A POTENTIAL FREE RIDER EFFECT

20  THAT YOU HAVE GOT TO DEAL WITH.  RIGHT, IF THERE IS JUST

21  ONE COUNSEL THAT SAYS -- FOLDS THEIR ARMS AND SAYS, NO,

22  I AM NOT GOING TO CHIP IN TO PAY FOR A COMMON  -- YOU

23  KNOW, THE COURT REPORTER FEES FOR DEPOSITIONS THAT ARE

24  HELPING MY CLIENT, NO, I AM NOT GOING TO DO THAT, AND

25  YOU HAVE A FREE RIDER EFFECT.  THAT'S A PROBLEM.  I GET

26  THAT.  BUT TO THE EXTENT POSSIBLE IF YOU CAN DO PRIVATE

27  ORDERING, THAT WOULD BE PREFERRABLE.

28          MR. CREED:  WE'RE I THINK -- I TRUST WE'LL BE

 1 | ABLE TO DO THAT.  WE DID THAT IN THE USC CASE ALSO.
 2 | YES.
 3 |          THE COURT:  OKAY.  ALL RIGHT.  I THINK THE
 4 | FEDERAL COURTS ARE GOING TO STAY WHERE THEY ARE ON THAT
 5 | ISSUE, BUT WE'LL SEE.
 6 |                OKAY.  ANYTHING ELSE?
 7 |          MR. VAN ZANDT:  YOUR HONOR, JOSEPH VAN ZANDT
 8 | FOR THE PLAINTIFFS.  I HAD A COUPLE OF ISSUES I WANTED
 9 | TO RAISE.  FIRST IS SOMEWHAT RELATED TO CMO ONE, BUT
10 | EMILY JEFFCOTT IS ONE OF THE ATTORNEYS YOU APPOINTED AS
11 | LEAD COUNSEL IN THE JCCP, AND SHE WANTED ME TO PASS
12 | ALONG HER APOLOGIES FOR NOT BEING AT THE INITIAL HEARING
13 | OR AT THIS HEARING.  AT THE LAST HEARING SHE WAS ON BED
14 | REST ABOUT TO GIVE BIRTH.  SHE HAS SINCE GIVEN BIRTH AND
15 | IS OUT ON MATERNITY LEAVE RIGHT NOW.  HER AND THE BABY
16 | ARE BOTH DOING WELL, AND SHE'S VERY MUCH LOOKING FORWARD
17 | TO GETTING BACK TO WORK AND BEING HERE IN YOUR COURT IN
18 | THE NEAR FUTURE.
19 |          THE COURT:  WELL, CONGRATULATIONS TO HER.
20 |          MR. VAN ZANDT:  ABSOLUTELY.  THERE IS TWO
21 | ISSUES THAT YOUR HONOR MENTIONED AT THE FIRST STATUS
22 | CONFERENCE, AND ONE OF THOSE IS THE QUESTION ABOUT THE
23 | NUMBER OF CASES THAT WE ANTICIPATE BEING FILED IN THIS
24 | COURT.  WE ARE IN THE PROCESS OF PERFORMING AN INTERNAL
25 | CENSUS AMONG THE ATTORNEYS WORKING ON THE JCCP TO BE
26 | ABLE TO PROVIDE YOUR HONOR, YOU KNOW, AN IDEA OF HOW
27 | MANY CASES MAY BE FILED IN THIS COURT, BUT, AT LEAST,
28 | THE BEST THE PLAINTIFFS' COUNSEL CAN KNOW FOR NOW.

```
 1           I CAN SPEAK ON BEHALF OF MY FIRM AND ALSO
 2  ON BEHALF OF THE EMILY JEFFCOTT WHO IS AT MORGAN &
 3  MORGAN.  BETWEEN OUR TWO FIRMS WE WOULD ANTICIPATE, YOU
 4  KNOW, CASES IN THE -- WELL OVER A HUNDRED CASES, IN THE
 5  HUNDREDS, POTENTIALLY, OF INDIVIDUAL CASES TO BE FILED
 6  HERE IN YOUR COURT.  WE DO LOOK FORWARD TO GETTING YOUR
 7  HONOR THOSE MORE SPECIFIC NUMBERS AT THE NEXT STATUS
 8  CONFERENCE.
 9           AND THEN THE NEXT ISSUE IS YOUR HONOR
10  MENTIONED LAST TIME INTEREST OF HAVING A SCIENCE DAY.
11           THE COURT:  YES.
12           MR. VAN ZANDT:  WE JUST WANTED TO ASK A LITTLE
13  CLARIFICATION.  WE CERTAINLY LOOK FORWARD TO MEETING AND
14  CONFERRING WITH DEFENDANTS ON THAT, BUT IN TERMS OF WHAT
15  YOU HAD IN MIND IN TERMS OF THE TIMELINE AS IT WOULD
16  WORK WITH THE REMAINDER OF THE SCHEDULE, WHEN YOU WOULD
17  LIKE TO SEE SOMETHING LIKE THAT?
18           THE COURT:  RIGHT.  AND I APPRECIATE YOUR
19  BRINGING THAT UP BECAUSE I DID TALK ABOUT IT LAST TIME,
20  AND I ALSO TALKED WITH JUDGE GONZALEZ ROGERS ABOUT IT.
21  I DON'T KNOW IF SHE FEELS LIKE SHE NEEDS ONE.  I THINK I
22  WOULD BE BENEFITED BY HAVING ONE PRIOR TO THE HEARING ON
23  THE DEMURRERS, FRANKLY, BUT WHAT THAT WOULD LOOK LIKE IN
24  MY JUDGMENT IS NOT REALLY GETTING INTO ALGORITHMS,
25  ALTHOUGH THAT MIGHT BE MENTIONED, BUT REALLY SOMETHING
26  LIKE SCREEN SHOTS AS TO WHAT THINGS LOOK LIKE; WHAT AN
27  ACCOUNT LOOKS LIKE; HOW "RECOMMENDED" OR, YOU KNOW, "UP
28  NEXT" VIDEOS ARE PRESENTED; HOW, YOU KNOW, "LIKES" AND
```

1   "DISLIKES," OR NUMBER OF DAYS THAT YOU HAVE BEEN IN

2   TOUCH WITH SOMEBODY OR THOSE KINDS OF THINGS ACTUALLY

3   LOOK AND WHAT THE VARIOUS OPTIONS ARE.  SO I'M THINKING

4   OF MAINLY SCREEN SHOTS TYPE OF THING.

5           I NOTICED IN THE SUPREME COURT HEARING --

6   AND I MAY HAVE SAID THIS LAST TIME -- BUT IN THE SUPREME

7   COURT HEARING ON GONZALEZ VERSUS GOOGLE, YOU KNOW, THAT

8   WAS A VERY SIMPLE SCENARIO, I THINK, WITH YOU TUBE

9   VIDEOS AND SOMETHING BEING PROPOSED AS, YOU KNOW, "NEXT

10  UP."  AND THE JUSTICES DIDN'T SEEM TO HAVE A VIEW IN

11  THEIR MINDS OF WHAT THAT LOOKED LIKE.  AND THEN OF

12  COURSE JUSTICE KAGAN SAID WE'RE PROBABLY THE LEAST ABLE

13  NINE PEOPLE TO REALLY UNDERSTAND THE ENTIRETY OF THE

14  SCENARIOS WE'RE TALKING ABOUT.

15          SO I'M JUST WANTING TO UNDERSTAND REALLY

16  THE USER EXPERIENCE, NOT -- YOU KNOW, AT SOME POINT IN

17  THIS LITIGATION IF IT GOES FORWARD, MAYBE WE'LL NEED

18  SOMETHING ON ALGORITHMS, BUT I -- I AM NOT GOING TO SAY

19  I TOTALLY UNDERSTAND THE ALGORITHMS, BUT I DO HAVE A

20  DAUGHTER WHO IS A DATA SCIENTIST WHO DOES MACHINE

21  LEARNING.  AND I HAVE A DEGREE IN CHEMISTRY.  SO I HAVE

22  SOME IDEA OF WHAT AN ALGORITHM IS, BUT WHAT THIS LOOKS

23  LIKE TO THE USER EXPERIENCE IS WHAT I AM THINKING ABOUT.

24          DOES THAT MAKE DEFENDANTS UNCOMFORTABLE?

25          MR. SCHMIDT:  WE DID TALK ABOUT IT ON THE

26  DEFENSE SIDE, YOUR HONOR; YOUR HONOR HAVING RAISED IT.

27  WE OBVIOUSLY WANT TO PROVIDE THE COURT WITH WHATEVER

28  WOULD BE USEFUL TO THE COURT.  THE CONCERN THAT WE HAD

```
 1   WAS WE DO THINK IT WOULD MAKE SENSE TO HAVE THE KIND
 2   SCIENCE DAY YOUR HONOR IS TALKING ABOUT.  WE ALSO THINK
 3   THAT PROBABLY FURTHER DOWN THE ROAD IT WOULD MAKE SENSE
 4   TO HAVE A SCIENCE DAY ON ACTUAL SCIENCE AND RESEARCH ON
 5   SOME OF THE MERITS ISSUES.
 6             WE HAD THOUGHT BOTH OF THOSE WOULD MAKE
 7   SENSE AFTER THE DEMURRER SIMPLY BECAUSE OF THE CONCERN
 8   THAT IF IT TURNS INTO ADVOCACY THROUGH SELECTION OF
 9   SCREEN SHOTS OR SOMETHING LIKE THAT, THAT COULD BE HARD
10   TO MANAGE IN THE TERMS OF THE PARTIES REACHING ALIGNMENT
11   ON THAT.
12             WE'RE CERTAINLY OPEN TO CONFERRING ON
13   THAT WITH THE PLAINTIFFS TO SEE IF THERE ARE GUARDRAILS
14   WE COULD COME UP WITH TO TRY TO GIVE YOUR HONOR WHAT
15   YOUR HONOR IS LOOKING FOR WITHOUT IT TURNING INTO WHAT
16   WE WOULD VIEW AS AN OUTSIDE-THE-RECORD ADVOCACY EXERCISE
17   BEFORE A DEMURRER, BUT THAT WOULD BE OUR CONCERN ABOUT
18   DOING IT, IS JUST THE SIMPLE TIMING CONCERN OF DOING IT
19   BEFORE A DEMURRER AND THE GUARDRAILS FOR IT NOT BEING AN
20   ADVOCACY EXERCISE TO GO OUTSIDE THE RECORD, OUTSIDE THE
21   PLEADINGS.
22             MR. VAN ZANDT:  YOUR HONOR, WE CERTAINLY WOULD
23   BE INTERESTED TO MEET AND CONFER AND DISCUSS PARAMETERS
24   ON THOSE POTENTIAL SCIENCE DAY ISSUES, BUT IN THE
25   MEANTIME, GIVEN YOUR HONOR'S WISHES TO SEE SCREEN SHOTS
26   TO UNDERSTAND THE USER EXPERIENCE MORE, WE CERTAINLY
27   DISCUSSED THAT INTERNALLY, AND WE CAN CERTAINLY
28   INCORPORATE MORE OF THAT INTO OUR MASTER COMPLAINT THAT
```

```
 1  WE WILL BE FILING HERE.  WE CERTAINLY, OBVIOUSLY, HAVE
 2  AN INTEREST FOR THE COURT TO UNDERSTAND THESE PLATFORMS
 3  AND THESE ISSUES GOING INTO THE DEMURRER BRIEFING, SO
 4  THAT'S SOMETHING WE CAN ADDRESS WITH THE PLAINTIFFS'
 5  SIDE THROUGH OUR INITIAL MASTER COMPLAINT.
 6          THE COURT:  I DID SEE THAT THERE WERE SCREEN
 7  SHOTS IN THE MDL COMPLAINT.  I HAVEN'T READ IT COVER TO
 8  COVER, BUT I DID SEE THERE WERE SCREEN SHOTS THERE.
 9          MR. SCHMIDT:  IF WE COULD CONFER ON THAT, YOUR
10  HONOR, WE WOULD APPRECIATE THAT OPPORTUNITY.
11          THE COURT:  THAT'S FINE.  AND, YOU KNOW, STATE
12  LAW IS REALLY QUITE STRICT ON NOT CONSIDERING EVIDENCE
13  OUTSIDE THE RECORD WHEN ONE IS DOING A DEMURRER.  I'M
14  WELL AWARE OF THAT.
15          AND I'LL SAY JUDGE GONZALEZ ROGERS WILL
16  SPEAK FOR HERSELF, SHE DIDN'T SEEM THAT TAKEN BY THE
17  IDEA.  I WON'T SAY SHE TOLD ME IT WAS A STUPID IDEA,
18  BUT, YOU KNOW, SHE DIDN'T SAY, OH, LET'S SCHEDULE THAT
19  SOON.  SO I'M NOT SURE THERE IS GOING TO BE A JOINT
20  SCIENCE DAY.  SHE'S GOT A VERY BUSY CALENDAR TOO, AS YOU
21  PROBABLY KNOW.
22          MR. VANZANT:  YOUR HONOR, WE'LL TAKE YOUR
23  COMMENTS IN CONSIDERATION FOR PURPOSES OF THE COMPLAINT.
24  AND, OBVIOUSLY, WE WILL BE WILLING TO MEET AND CONFER
25  WITH DEFENDANTS ON THIS ISSUE.
26          THE COURT:  VERY GOOD.  I WANT TO BE VERY
27  DEFERENTIAL TO THE DEFENDANTS IN THIS AREA, QUITE
28  HONESTLY, BECAUSE IT -- PARTICULARLY AT THE CHALLENGE TO
```

```
 1  THE PLEADING STAGE, IT SHOULD NOT BE SOMETHING THAT
 2  INTERFERES WITH STATE LAW.  OKAY.  STATE PROCEDURAL LAW.
 3          MR. VAN ZANDT:  YOUR HONOR, FINAL ISSUE FOR
 4  ME, JOSEPH VAN ZANDT, WE ARE MEETING AND CONFERRING WITH
 5  DEFENDANTS AND MDL COUNSEL ON A PROPOSED COORDINATION
 6  ORDER FOR THE MDL AND THEN WE'LL POTENTIALLY BE LOOKING
 7  TO PROPOSE A SIMILAR ORDER HERE TO YOUR HONOR.  I JUST
 8  WANT TO LET YOU KNOW THAT WAS IN THE WORKS.  I THINK THE
 9  SCHEDULE IS CURRENTLY FOR THAT TO BE SUBMITTED TO THE
10  MDL COURT THIS FRIDAY, A PROPOSED COORDINATION ORDER.
11          THE COURT:  I SAW A REFERENCE TO THAT.  WHAT
12  IS A COORDINATION ORDER?
13          MR. CREED:  THE COORDINATION ORDER IS
14  BASICALLY AN ORDER THAT SEEKS TO SORT OF LAY THE GROUND
15  RULES FOR HOW WE'RE GOING TO -- AS A COURT, MDL COURT
16  PLAINTIFFS AND DEFENDANTS WILL DRAFT.  I THINK WE CAN --
17  I THINK THE INITIAL DRAFT IS VERY BROAD IN TERMS OF WHAT
18  IT DID.  AND I THINK WE'RE MEETING AND CONFERRING SOON,
19  AND I AM NOT GOING TO RAISE THOSE ISSUES, BUT IN JUUL,
20  FOR INSTANCE, WE HAD A COORDINATION ORDER BETWEEN THE
21  STATE COURT AND THE FEDERAL COURT.  AND IT LARGELY WAS
22  JUST SORT OF THE GROUNDWORK FOR MAKING SURE THERE IS
23  NON-DUPLICATIVE DISCOVERY ON COMMON ISSUES BETWEEN THE
24  TWO.  IT DIDN'T RESTRICT EITHER PARTY'S RIGHT TO
25  PROPOUND DISCOVERY, BUT IT'S AN ISSUE THAT WE'RE WORKING
26  OUT WITH DEFENDANTS.  WE THINK THAT IT MAKES SENSE TO
27  ENTER ONE, BUT, YOU KNOW, WE RESERVE THE RIGHT NOT TO
28  ENTER ONE IN THIS PROCEEDING.
```

```
 1            THE COURT:  ALL RIGHT.  SO I WOULD JUST HAVE
 2   TWO COMMENTS ON THAT.  NUMBER ONE, COORDINATION HAS A
 3   SPECIFIC MEANING UNDER STATE LAW, RIGHT.  IT WOULD --
 4   THIS IS A COORDINATED PROCEEDING, AND WE HAVE A WHOLE
 5   PROCEDURE WHICH YOU HAVE BEEN THROUGH ON HOW CASES ARE
 6   COORDINATED IN THAT SENSE.  SO I THINK, AT LEAST FOR ME,
 7   THAT -- YOU KNOW, THAT NEEDS -- THAT WORD NEEDS TO BE
 8   CONSTRUED IN THE CONTEXT OF WHAT THE RULES OF COURT
 9   PROVIDE FOR COORDINATION, SO TO SPEAK, WHICH YOU HAVE
10   ALREADY BEEN THROUGH, BUT WHICH COULD HAVE FURTHER
11   IMPLICATIONS DOWN THE LINE WITH RESPECT TO THIS COURT,
12   AS YOU KNOW, BEING ABLE TO TRY ALL OF THE CASES, RIGHT,
13   VERSUS THE FEDERAL COURT WHICH HAS TO REMAND AT SOME
14   POINT OR ELSE GO SIT IN OHIO TO HEAR AN OHIO CASE,
15   RIGHT, SO IT'S A DIFFERENT PROCESS.  OKAY.
16            THE OTHER THING YOU SHOULD KNOW -- AND,
17   YOU KNOW, THOSE OF YOU WHO HAVE BEEN INVOLVED IN CASES
18   IN MY COURT WOULD KNOW, DISCOVERY IS VERY SELDOM OPEN
19   ENDED IN MY COURT.  OKAY.  SO THERE WILL BE -- THE
20   DISCOVERY STAY -- WHEN THE DISCOVERY STAY IS LIFTED,
21   IT'S NOT GOING TO BE OPEN SEASON ON DISCOVERY.  WE WILL
22   GO THROUGH STAGES OF DISCOVERY.
23            I OFTEN LIKE TO HAVE COUNSEL CONFER ABOUT
24   THE AVAILABILITY OF DOCUMENTATION BEFORE PROPOUNDING
25   DISCOVERY SO THAT WE TRY TO AVOID THINGS LIKE, YOU KNOW,
26   TOTALLY OVERBROAD DISCOVERY WHICH IS TOTALLY OVERBROAD
27   BECAUSE THE REQUESTING PARTY HAS NO IDEA HOW THE
28   RESPONDING PARTY KEEPS THEIR DOCUMENTS AND INFORMATION.
```

 1 AND THEN POUND SAND OBJECTIONS BECAUSE IT IS OVERBROAD,

 2 RIGHT, AND SO THEN YOU HAVE WASTED, YOU KNOW, 60 DAYS ON

 3 THAT.  AND THEN YOU SIT DOWN FOR THE FIRST TIME AND DO A

 4 MEET AND CONFER ABOUT WHAT IS ACTUALLY AVAILABLE AND

 5 WHAT IS GOING TO BE PRODUCED.  I LIKE TO MOVE THAT EVENT

 6 UP TO THE BEGINNING.  SO THAT'S ONE THING.

 7                I'M ALSO -- I ALSO THINK THAT WHAT I CALL

 8 STAGED DISCOVERY CAN BE A USEFUL WAY TO GO IN SOME CASES

 9 WHERE CORE DOCUMENTS ARE PRODUCED OR CORE INFORMATION IS

10 PRODUCED WITHOUT THERE BEING AN ASSUMPTION THAT

11 EVERYTHING HAS BEEN PRODUCED AND MAYBE SAMPLES ARE

12 PRODUCED AND THAT SORT THING.  SO UNLIKE A SITUATION

13 WHERE YOU HAVE GOT A MAGISTRATE JUDGE WORRYING ABOUT THE

14 LITTLE STUFF OF THE DISCOVERY, TO ME, DISCOVERY IS

15 CENTRAL.

16                FOR TWO REASONS:  NUMBER ONE, IT SHAPES

17 THE CASE.  AND, NUMBER TWO, IT'S THE MOST EXPENSIVE PART

18 OF THE CASE.  AND WE HAVE IN OUR COMPLEX PROGRAM AN

19 OBLIGATION TO SERVE THE GOALS OF THE PROGRAM, ONE OF

20 WHICH IS TO REDUCE LITIGATION COSTS.  SO WE DO A LOT OF

21 HANDS-ON TAKING CARE OF DISCOVERY.  AND AT A MINIMUM NO

22 DISCOVERY MOTION IS FILED BEFORE THERE IS AN INFORMAL

23 CONFERENCE WITH THE COURT, BUT IN A CASE THIS LARGE I

24 MANAGE IT BEFORE WE GET INTO THE ACTUAL SUBSTANCE OF THE

25 DISCOVERY.

26                NOW, HAVING SAID THAT, I AM AWARE THAT IN

27 THESE LARGER CASES SOMETIMES IT DOESN'T MAKE SENSE TO DO

28 STAGED DISCOVERY AND PARTIAL DISCOVERY BECAUSE

 1 | EVERYTHING NEEDS TO BE DONE BEFORE DEPOSITIONS CAN BE
 2 | TAKEN.  SO I'M AWARE THAT THERE MAY BE ONLY SO MUCH THE
 3 | COURT CAN DO TO SAVE LITIGATION COSTS BY USING STAGED
 4 | DISCOVERY; NEVERTHELESS, YOU WILL KNOW WHAT YOU ARE
 5 | DOING FROM ME.
 6 |              HAVING SAID THAT, THE FEDERAL COURT
 7 | STARTED FIRST SO, YOU KNOW, IF THEY ARE GOING FIRST WITH
 8 | THE DISCOVERY, I'M HAPPY FOR IT TO BE JUST BROUGHT INTO
 9 | THIS CASE.  THAT'S OKAY.  SO THOSE ARE SOME OBSERVATIONS
10 | YOU MIGHT KEEP IN MIND.
11 |              MS. SIMONSEN:  THAT'S VERY HELPFUL, YOUR
12 | HONOR.  THANK YOU.
13 |              THE COURT:  I'LL BE GLAD TO BE THE MAGISTRATE
14 | JUDGE FOR THE FEDERAL CASE TOO IF YOU WANT TO DO IT THAT
15 | WAY.  I'M ONLY SORT OF KIDDING, BECAUSE YOU COULD DO THE
16 | DISCOVERY MANAGEMENT IN THIS CASE AND THEN PRODUCE IT IN
17 | THE FEDERAL CASE, BUT THAT'S NOT THE WAY THINGS USUALLY
18 | WORK.
19 |              ACTUALLY, YEARS AGO, I WILL SAY WHEN WE
20 | HAD COORDINATED CASES, THE MDL'S SEEMED TO GET STARTED
21 | LATER AND WE WOULD HAVE GOTTEN STARTED EARLIER WITH OUR
22 | DISCOVERY.  THAT'S NOT SO MUCH THE CASE ANY MORE.  THE
23 | FEDS HAVE SEEMED TO HAVE MOVED AHEAD WITH GETTING THE
24 | MDL STARTED, SO ANYWAY.  SO JUST SOME THINGS TO KEEP IN
25 | MIND AS YOU ARE DRAFTING THE, QUOTE, UNQUOTE,
26 | COORDINATION ORDER.  AND NOW THAT I KNOW WHAT IT IS, I
27 | WILL BE LOOKING AT IT DIFFERENTLY.
28 |              WE'RE NOT GOING TO HAVE PROBLEMS HERE.

1  WE'VE GOT JUDGE GONZALEZ ROGERS IS VERY COLLEGIAL.

2  JUDGE WEINSTEIN ORDERED THAT DOCUMENTS PRODUCED IN AN

3  MDL COULD NOT BE PRODUCED BY THE -- ORDERED THE

4  DEFENDANT NOT TO PRODUCE THE CASES IN A COORDINATED

5  CASE.

6          MR. CREED:  YEAH, I THINK THAT'S THE KIND OF

7  THING WE'RE WORKING ON WITH DEFENDANTS.

8          THE COURT:  YOU ARE NOT GOING TO HAVE THAT

9  HERE.  OKAY.  ALL RIGHT.  WELL, WE HAVE A LOT TO DO, BUT

10 WE'VE GOT KIND OF AN INTERIM PERIOD HERE BEFORE WE CAN

11 START DECIDING KEY ISSUES.

12          WHEN WOULD YOU LIKE TO COME BACK FOR A

13 CHECK-IN?

14          MR. SCHMIDT:  YOUR HONOR, WE MIGHT SUGGEST TWO

15 MONTHS.

16          MR. CREED:  I THINK WE WOULD SUGGEST EARLIER,

17 YOUR HONOR, GIVEN SOME OF THESE ARE OTHER ISSUES THAT

18 ARE PERCOLATING WITH THE PRESERVATION ORDER AND A

19 PROTECTIVE ORDER AND THE PLAINTIFF FACT SHEET MEET AND

20 CONFER.

21          THE COURT:  WELL --

22          MR. CREED:  AND THE CSAM PRESERVATION ORDER.

23          THE COURT:  HOW ABOUT SOMETHING THE FIRST WEEK

24 IN MAY, WOULD THAT MAKE SENSE?  AND IF SOMETHING RIPENS

25 IN THE MEANTIME LIKE, FOR EXAMPLE, THE CSAM ORDER, YOU

26 KNOW, YOU WILL BE POSTING THE PROBLEMS AND WE'LL BE

27 FIGURING OUT.  YOU KNOW, WE MIGHT HAVE JUST A CONFERENCE

28 TO DEAL JUST WITH THAT ISSUE, FOR EXAMPLE.

```
 1          SO IF I COULD HAVE A DATE THE FIRST WEEK
 2   IN MAY.  WE'RE GOING TO HAVE TO DO EITHER A 9:00 A.M. OR
 3   1:45.  DO WE HAVE ANYTHING IN THE AFTERNOON?  WE'LL DO
 4   9:00 A.M.  MAY 3 AT 9:00 A.M.  OKAY.
 5          FIRST OF ALL, I ALSO WANT TO APOLOGIZE
 6   FOR CHANGING THE TIME OF TODAY'S HEARING, AND I
 7   APPRECIATE YOUR ACCOMMODATION ON THAT.  THANK YOU.
 8          MR. VANZANT:  YOUR HONOR, JOSEPH VAN ZANDT,
 9   MAY 3RD WORKS FOR THE PLAINTIFFS, BUT ME, PERSONALLY,
10   I'M SCHEDULED TO BE IN TRIAL IN THE NORTHERN DISTRICT OF
11   CALIFORNIA FOR ABOUT A MONTH SO THAT WILL BE RIGHT IN
12   THE MIDDLE OF THAT.  SO IN CASE I'M NOT HERE, THAT WILL
13   BE THE REASON FOR THAT.  THANK YOU.
14          THE COURT:  OKAY.  THANK YOU.  SURE.
15              MAY 3, 9:00 A.M.
16          MR. SCHMIDT:  THANK YOU, YOUR HONOR.
17          THE COURT:  PLEASE FILE A JOINT STATUS --
18   REPORT I AM GOING TO SAY BY NOON ON MAY 1.  OKAY, NO
19   LATER THAN NOON.  SO PLAINTIFF LIAISON COUNSEL TO GIVE
20   NOTICE.  I WILL GET OUT A MINUTE ORDER TODAY WITH MY
21   EXPRESSION OF WHAT WE DECIDED TODAY, OKAY, WHAT FUTURE
22   THINGS ARE ON TAP.  OKAY.  VERY GOOD.  THANK YOU.
23          MR. CREED:  THANK YOU, YOUR HONOR.
24          MR. SCHMIDT:  THANK YOU, THANK YOU.
25          MS. SIMONSEN:  THANK YOU, YOUR HONOR.
26          MR. VANZANT:  THANK YOU, YOUR HONOR.
27          MS. CLEOFE:  THANK YOU, YOUR HONOR.
28              (PROCEEDING ADJOURNED AT 10:10 A.M.)
```

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                  FOR THE COUNTY OF LOS ANGELES

 3  DEPARTMENT 12              HON. CAROLYN B. KUHL, JUDGE

 4  IN RE:  SOCIAL MEDIA ADOLESCENT        )
    ADDICTION                              )
 5                                         )
 6  CHRISTINA ARLINGTON SMITH, INDIVIDUALLY )
    AND AS SUCCESSOR-IN-INTEREST  TO       )
 7  _____)
                                           )
 8                                         )    JCCP 5255
                                           )
 9  LALANI WALTON, DECEASED;               )
    HERIBERTO ARROYO, INDIVIDUALLY AND AS  )
10  SUCCESSOR-IN-INTEREST TO               )
    ARRIANA JAILEEN ARROYO, DECEASED;      )
11  CHRISTAL ARROYO, INDIVIDUALLY, AND     )
    JESSICA WILLIAMS, INDIVIDUALLY AND AS  )
12  SUCCESSOR-IN-INTEREST TO ZAIDEN        )
    BALDWIN, DECEASED,                     )
13                  PLAINTIFFS,            )
                 VS.                       )
14  TIKTOK, INC.; BYTEDANCE, INC.;         )
    DOES 1 THROUGH 100, INCLUSIVE,         )
15                                         )
                    DEFENDANTS.            )
16  _____)

17                   REPORTER'S CERTIFICATE

18

19            I, BUFORD J. JAMES, CSR 9296, OFFICIAL

20  REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

21  FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

22  FOREGOING PAGES 1 THROUGH 36, INCLUSIVE, COMPRISE A FULL,

23  TRUE, AND CORRECT TRANSCRIPT OF THE TESTIMONY AND

24  PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER ON WEDNESDAY

25  MARCH 22, 2023.

26          DATED THIS 24TH DAY OF MARCH, 2023.

27  _____

28          BUFORD J. JAMES, OFFICIAL REPORTER PRO TEM 9296
```

**-**

**--O0O--** 1:9

**1**

**1** 9:16 36:18
**10** 5:5
**10:10** 36:28
**12** 1:4
**12(B)(6)** 7:24
**17** 3:13
**1:45** 36:3

**2**

**2.550** 11:15 12:2
**20** 19:20 20:21,27 21:10,14,25 24:25
**2023** 1:3 3:13
**204** 15:25
**22** 1:3
**23** 3:10
**230** 9:20
**27** 3:11

**3**

**3** 9:16 36:4,15
**3RD** 36:9

**4**

**4TH** 9:17

**5**

**5255** 1:1

**6**

**6** 10:5

**60** 11:18 33:2

**7**

**7TH** 19:23 20:28

**9**

**9** 10:5
**9296** 1:5
**9:00** 36:2,4,15
**9:06** 1:6

**A**

**A.M.** 1:6 36:2,4,15,28
**ABSOLUTELY** 26:20
**ABSORB** 8:21
**ABUSE** 20:8
**ACCEPTABLE** 5:13 22:9
**ACCESS** 20:2
**ACCOMMODATION** 36:7
**ACCOUNT** 12:3 19:2 27:27
**ACCOUNTS** 14:26 16:10 20:15
**ACTING** 13:27
**ACTION** 8:4 10:20,26
**ACTUAL** 29:4 33:24
**ADD** 3:5,11,16 4:8
**ADD-ON** 3:6,21,26
**ADDED** 3:13
**ADDITION** 9:10
**ADDITIONAL** 3:17
**ADDRESS** 12:2 30:4
**ADDRESSES** 5:11
**ADDRESSING** 6:16,17
**ADJOURNED** 36:28
**ADJUSTMENTS** 14:5
**ADOPT** 16:18
**ADVANCE** 5:22 11:9 14:15

**ADVANTAGE** 14:28 15:1,3
**ADVANTAGED** 16:5
**ADVOCACY** 29:8,16,20
**AFFECT** 15:26
**AFTERNOON** 5:2 36:3
**AGREE** 17:18
**AGREEABLE** 22:14
**AGREED** 16:8 24:16,28
**AGREEMENT** 18:15 20:20,24 24:15
**AHEAD** 4:25 11:26 16:2 34:23
**ALGORITHM** 28:22
**ALGORITHMS** 27:24 28:18,19
**ALIGNMENT** 29:10
**ALLEGED** 16:9
**ALLEN** 2:2,7
**ALLOWING** 4:20
**ALPHABET** 2:19
**ANGELES** 1:3
**ANNOTATION** 23:4
**ANTICIPATE** 26:23 27:3
**APOLOGIES** 26:12
**APOLOGIZE** 22:22 36:5
**APPEARANCES** 1:8,15,20
**APPEARING** 1:16,17
**APPLY** 12:15 16:26 17:9 20:13
**APPOINTED** 26:10
**APPROACH** 18:16
**APPROACHING** 18:3,21
**APPROPRIATELY** 13:27
**ARBITRATOR** 24:16
**AREA** 30:27
**AREAS** 21:15,19,28
**ARGUE** 21:8
**ARGUMENT** 16:26
**ARISES** 6:23
**ARMS** 25:21

Social Media Cases
JCCP5255, 03/22/2023

CERTIFIED COPY

MOTION
Index: ASHLEY..CLERK

**ASHLEY** 2:11

**ASSESSING** 3:21

**ASSESSMENT** 23:13

**ASSIGN** 4:7

**ASSIGNMENT** 4:7

**ASSIGNS** 4:5

**ASSISTANT** 4:2

**ASSUME** 8:17

**ASSUMING** 6:18

**ASSUMPTION** 33:10

**ASSURED** 25:12

**ATTACHED** 3:14

**ATTORNEYS** 13:12,20 26:10,25

**AUTHORITY** 4:22 23:20,27

**AVAILABILITY** 32:24

**AVOID** 16:23 32:25

**AWAIT** 13:4

**AWARE** 7:14,25 20:28 21:1 30:14 33:26 34:2

---

**B**

**BABY** 26:15

**BACK** 8:12 10:8 16:18 22:21 23:8 26:17 35:12

**BAD** 10:15

**BALANCE** 18:1

**BALANCING** 17:8

**BASED** 16:8

**BASICALLY** 31:14

**BASIS** 5:16 6:8,14

**BEASLEY** 2:2,7

**BED** 26:13

**BEGINNING** 11:12 33:6

**BEHALF** 1:23,25,27 2:2,5,8,21, 25 4:27 27:1,2

**BENEFICIAL** 20:26

**BENEFIT** 23:13,19,22,25,26 24:10 25:1

**BENEFITED** 27:22

**BERNSTEIN** 2:5

**BIG** 10:27

**BILLING** 25:3

**BILLS** 24:5 25:3,10

**BIRTH** 26:14

**BIT** 5:25 6:22 9:14 20:24 24:23

**BLAVIN** 2:20,21

**BLOCK** 9:5

**BOARD** 21:21 22:1

**BOX** 4:3

**BOYD** 3:11

**BOYLE** 1:27

**BRIEFING** 5:22,26 10:16,20 30:3

**BRIEFLY** 14:2

**BRINGING** 27:19

**BROAD** 31:17

**BROUGHT** 15:21 34:8

**BUFORD** 1:5

**BURDEN** 18:2,8

**BURLING** 2:11,14

**BUSINESS** 10:21

**BUSY** 30:20

**BYTEDANCE** 2:16

---

**C**

**CABRASER** 2:5

**CACI** 15:25

**CALENDAR** 3:18 4:1,9 30:20

**CALIFORNIA** 1:3 4:22 6:20,28 7:8,11,13,20 11:15,19,20 36:11

**CALL** 25:14 33:7

**CALLS** 13:23

**CARE** 25:13 33:21

**CAROLYN** 1:4

**CASE** 1:1,2 3:5,7,8,9,12,23,25 4:3,4,8 5:9,21 8:5,19 11:1,20 12:10 15:12,16,20,22 16:27

17:10,11 20:4 23:9,21 24:8,27 26:1 32:14 33:17,18,23 34:9,14, 16,17,22 35:5 36:12

**CASES** 1:2,15 3:6,17,18,21,26 4:6,24 5:6,15,19 6:9,19 9:6,8 11:2,11 13:22 15:8 16:15 20:2,5 22:26 23:20 26:23,27 27:4,5 32:5, 12,17 33:8,27 34:20 35:4

**CATCH** 3:4

**CATEGORIES** 18:4,7,13

**CENSUS** 26:25

**CENTER** 1:23

**CENTRAL** 33:15

**CETERA** 19:2

**CHALLENGE** 8:28 11:18 12:7,9 30:28

**CHALLENGES** 6:4,8 12:5 13:11

**CHANGE** 7:1

**CHANGED** 7:1,12,13

**CHANGING** 36:6

**CHECK-IN** 35:13

**CHECKED** 4:3 7:2

**CHEMISTRY** 28:21

**CHERISSE** 1:25 4:27

**CHHABRIA'S** 24:1

**CHILD** 20:8

**CHIOU** 2:17,18

**CHIP** 25:22

**CHRISTOPHER** 2:18

**CIRCUMSTANCE** 6:23

**CITE** 5:6 12:5

**CLAIM** 10:24

**CLARIFICATION** 27:13

**CLARITY** 20:16

**CLASS** 23:25

**CLEAN** 15:17

**CLEOFE** 1:24,25 4:26,27 5:8 36:27

**CLERK** 3:20

Social Media Cases
JCCP5255, 03/22/2023

CERTIFIED COPY

MOTION
Index: CLIENT..DEFENDANTS'

**CLIENT** 25:24

**CLIENTS** 20:13

**CMC'S** 14:13

**CMO** 4:11,13 6:5 26:9

**COLLECTIVE** 24:14

**COLLEGIAL** 35:1

**COMMENT** 13:8

**COMMENTS** 19:10 30:23 32:2

**COMMON** 23:12,18,21,24,26 24:10,28 25:22 31:23

**COMMUNICATING** 11:9 14:19

**COMMUNICATION** 20:28

**COMPANY** 15:14

**COMPLAINT** 5:11,14 7:18,21 10:17 29:28 30:5,7,23

**COMPLAINTS** 5:12,15 7:19 9:23

**COMPLEX** 3:21 4:2,3,4 14:16 19:26 24:25 33:18

**COMPLEXITY** 8:2

**COMPLIANCE** 11:15 12:26 13:20

**COMPLICATED** 8:16

**COMPLY** 17:3

**CONCERN** 23:24 28:28 29:7,17, 18

**CONCERNED** 11:24 23:28 24:2

**CONCERNS** 18:8

**CONFER** 9:19,22 10:6 14:3 19:23,25 21:9 22:27,28 29:23 30:9,24 32:23 33:4 35:20

**CONFERENCE** 3:15,16 22:14 26:22 27:8 33:23 35:27

**CONFERENCES** 14:17,18

**CONFERRAL** 12:12 20:10

**CONFERRING** 19:12 21:1 27:14 29:12 31:4,18

**CONFERS** 13:23

**CONFIDENT** 11:12

**CONFIDENTIAL** 12:23

**CONFIDENTIALITY** 11:18 12:4,

7,9

**CONFUSION** 19:8

**CONGRATULATIONS** 26:19

**CONSIDERATION** 12:2,18 14:10,12 30:23

**CONSTRUED** 32:8

**CONTEXT** 32:8

**CONTINUE** 12:12 18:11

**CONVINCE** 25:18

**COORDINATED** 3:23 32:4,6 34:20 35:4

**COORDINATING** 13:22

**COORDINATION** 5:23 31:5,10, 12,13,20 32:2,9 34:26

**CORE** 33:9

**CORRECT** 23:3

**CORRECTED** 3:7,9

**COSTS** 33:20 34:3

**COUNSEL** 1:14 4:14 9:19,23 13:6 24:9,13,15 25:8,10,11,21 26:11,28 31:5 32:23 36:19

**COUNTY** 3:8

**COUPLE** 21:20 26:8

**COURT** 1:11,12,14,18 2:9,26 4:23 5:3,9,21 6:22,25 7:3,17,25, 27 8:18 9:13,25,28 10:11,27 11:5, 15,20,23,24,25 12:8,19,26 13:1,5, 13 14:1,4,14,22 16:3,21 17:5,15 18:1,2,16,24 19:14,16 21:11,17, 19,25 22:2,4,6,12,24 23:1,3,14,17 24:3,6,11,18,19,22,28 25:6,17,23 26:3,17,19,24,27 27:6,11,18 28:5, 7,27,28 30:2,6,11,26 31:10,11,15, 21 32:1,8,11,13,18,19 33:23 34:3, 6,13 35:8,21,23 36:14,17

**COURT'S** 12:2

**COURTCONNECT** 1:12,16,17

**COURTROOM** 1:18,21

**COURTS** 14:16 23:28 24:2 26:4

**COVER** 10:25 30:7,8

**COVERED** 22:26

**COVINGTON** 2:11,14

**CREATE** 6:15

**CREATES** 24:4

**CREED** 1:26,27 6:11,27 7:10 8:24 9:11,18,27 10:9 11:22 13:8 16:12 19:15 20:27 22:10 23:8,15 24:9,17,20 25:5,15,28 31:13 35:6, 16,22 36:23

**CRIMINAL** 10:19 20:1,2,4 21:7

**CSAM** 19:18 20:3,13,21 21:5,26 35:22,25

**CSR** 1:5

**CUNNINGHAM** 4:1

**CURIOUS** 3:28 17:7

**D**

**DATA** 28:20

**DATE** 9:9 10:14 36:1

**DATES** 22:27

**DAUGHTER** 28:20

**DAY** 10:13 27:10 29:2,4,24 30:20

**DAY'S** 3:16

**DAYS** 5:5 19:21 20:21,27 21:10, 14,26 28:1 33:2

**DEAL** 25:20 35:28

**DEALING** 20:6

**DECIDE** 8:9,19 13:10 21:20 22:2

**DECIDED** 5:21,27 36:21

**DECIDES** 8:6,18

**DECIDING** 14:19 35:11

**DECISION** 9:20 13:26

**DECLINED** 19:24

**DEEMS** 9:12

**DEFENDANT** 2:21,25 14:25 17:2,11 18:5 21:7 35:4

**DEFENDANT'S** 4:6 15:2 19:1

**DEFENDANTS** 2:9,12,14 8:20, 28 13:21 15:6,24 16:4,21 17:3,6 19:5 20:2,23 21:5 27:14 28:24 30:25,27 31:5,16,26 35:7

**DEFENDANTS'** 17:24

**DEFENSE** 4:13 25:11 28:26

**DEFERENTIAL** 8:10 30:27

**DEGREE** 28:21

**DEGTYAREVA** 2:23,24

**DELINEATE** 18:3

**DELINEATED** 18:14

**DEMAND** 18:28

**DEMURRER** 6:16 9:1,8,24 29:7, 17,19 30:3,13

**DEMURRERS** 5:16,22 7:20 27:23

**DEPARTMENT** 1:4

**DEPOSED** 15:14

**DEPOSITION** 15:15,18

**DEPOSITIONS** 25:23 34:1

**DEPTH** 25:2

**DESIGNED** 17:24

**DESTROYED** 15:19 17:16

**DESTRUCTION** 15:23

**DETERMINE** 4:4

**DEVASTATING** 15:26

**DIEGO** 3:8

**DIFFERENCE** 17:13,27

**DIFFERENCES** 14:4 18:18

**DIFFERENTLY** 7:23 34:27

**DIRECTED** 16:19

**DISAGREEMENT** 21:15,19,28

**DISCLOSED** 13:2

**DISCLOSER** 13:9

**DISCLOSURE** 12:19,24,27

**DISCONNECT** 6:15

**DISCOVERABILITY** 16:25 18:19

**DISCOVERABLE** 17:9

**DISCOVERY** 12:10 14:17 17:9, 15,24 31:23,25 32:18,20,21,22, 25,26 33:8,14,21,22,25,28 34:4,8, 16,22

**DISCUSS** 10:23 29:23

**DISCUSSED** 10:18 16:9 29:27

**DISCUSSING** 4:28 19:19

**DISCUSSION** 18:17 21:16 22:8

**DISLIKES** 28:1

**DISMISS** 6:17

**DISMISSAL** 5:27

**DISTINCTION** 12:11

**DISTRIBUTE** 21:7

**DISTRIBUTING** 20:8

**DISTRIBUTION** 21:4

**DISTRICT** 36:10

**DOCUMENT** 12:9,26 15:4 16:1 19:9

**DOCUMENTATION** 32:24

**DOCUMENTS** 15:16 17:12 18:4, 13 32:28 33:9 35:2

**DOUBT** 17:12

**DOUBTS** 23:19

**DRAFT** 4:28 31:16,17

**DRAFTED** 11:25

**DRAFTING** 34:25

**DRAW** 12:12

**DRINKER** 2:16

**DUE** 18:7

---

### E

**EARLIER** 9:8,9,14,24 34:21 35:16

**EARLY** 12:27

**EFFECT** 25:19,25

**EFFORT** 20:20

**ELABORATE** 25:7,9

**ELECT** 6:19

**ELECTED** 10:25

**ELECTION** 22:25

**EMILY** 26:10 27:2

**EMMEL** 2:7

**EMPLOYEE** 15:13,14

**ENACTS** 16:23

**END** 5:1 17:12

**ENDED** 32:19

**ENFORCED** 24:15

**ENSURING** 24:3

**ENTER** 10:4 12:1 22:24 23:1,27 31:27,28

**ENTERED** 8:25 10:3 14:6 23:23

**ENTIRE** 7:21

**ENTIRETY** 7:18 28:13

**EQUIVALENT** 18:20

**ESI** 13:5

**EUROPE** 10:2

**EVENING** 19:11

**EVENT** 33:5

**EVERYBODY'S** 14:28

**EVIDENCE** 15:2,28 30:12

**EVOLVED** 11:19

**EXCEPTION** 20:4

**EXERCISE** 29:16,20

**EXPECT** 4:28 5:20

**EXPENSIVE** 33:17

**EXPERIENCE** 28:16,23 29:26

**EXPERT** 12:23,25,26 13:9

**EXPERTS** 12:20,28 13:1

**EXPRESS** 23:18

**EXPRESSION** 36:21

**EXTENT** 25:26

**EXTREME** 20:6

**EXTREMELY** 24:6

---

### F

**FACILITIES** 20:3

**FACT** 6:19 19:9 22:7 35:19

**FACTOR** 15:22,23

**FAEGRE** 2:16

**FAIR** 11:10

**FAMILIAR** 3:23 24:9,10

**FASHION** 18:14

**FEBRUARY** 3:10,13

**FEDERAL** 7:25 11:4 13:4,13 16:3,21,23,24 17:8,25,28 18:18, 23 20:1,6,7,12 23:28 24:2 26:4 31:21 32:13 34:6,14,17

**FEDS** 34:23

**FEE** 3:22

**FEELS** 27:21

**FEES** 25:23

**FIGURE** 13:6,19 17:3

**FIGURING** 35:27

**FILE** 4:24,28 8:21 12:25,27 36:17

**FILED** 3:11,19 4:15 7:15 8:13 12:7 26:23,27 27:5 33:22

**FILING** 3:22 30:1

**FINAL** 31:3

**FINALLY** 19:24

**FINDING** 3:20 4:23

**FINDS** 17:15

**FINE** 3:1 8:4,6,10,24,27 9:2 14:14 21:25 22:12 30:11

**FINISHES** 11:5

**FIRM** 27:1

**FIRMS** 27:3

**FOCUS** 6:20

**FOLDS** 25:21

**FOLKS** 3:2 4:23

**FOLLOW** 8:11

**FORM** 5:12,15 14:24 16:13 18:28 19:6,7,12

**FORMAL** 16:19

**FORWARD** 19:13 22:7 26:16 27:6,13 28:17

**FRANKLY** 7:24 8:22 11:16 27:23

**FREE** 25:19,25

**FRIDAY** 10:2,3,7 31:10

**FULL** 4:24

**FULLY** 18:10 20:16,25

**FUND** 23:19,22,25,26 24:10 25:1

**FUTURE** 26:18 36:21

---

## G

**GAL** 22:9

**GARAGE** 15:18

**GARRETT** 1:22

**GAS** 23:21 24:8

**GEE** 21:22

**GENERAL** 12:6

**GIVE** 5:5 19:19,28 26:14 29:14 36:19

**GLAD** 13:6 14:23 22:6 24:20 34:13

**GOALS** 33:19

**GONZALEZ** 5:20,26 6:16 7:22 8:3,5,19 9:15,20 10:19 11:2 27:20 28:7 30:15 35:1

**GOOD** 1:14,24,26 2:1,4,10,13,15, 17,20,23,26 4:26 5:17 9:5 10:11, 15 19:14,16 21:24 22:6 30:26 36:22

**GOOGLE** 2:18 5:20,26 8:20 9:16 28:7

**GOVERNMENT** 20:3

**GRANTED** 5:28

**GROUND** 31:14

**GROUNDWORK** 31:22

**GUARDRAILS** 29:13,19

**GUIDANCE** 11:28 14:7

---

## H

**HAND** 8:15 9:15 10:1

**HANDLE** 8:2

**HANDLED** 4:18

**HANDLING** 11:1

**HANDS-ON** 33:21

**HAPPEN** 3:24 11:11

**HAPPENED** 15:7

**HAPPENING** 16:17

**HAPPY** 12:12 34:8

**HARBOR** 16:4 17:6

**HARD** 29:9

**HATE** 22:21

**HEAD** 7:4

**HEAR** 3:2 32:14

**HEARING** 10:13,14 21:22 26:12, 13 27:22 28:5,7 36:6

**HEIMANN** 2:5

**HELD** 1:11

**HELPFUL** 3:3,28 17:20 34:11

**HELPING** 25:24

**HIGH-LEVEL** 15:13

**HIGHLIGHT** 20:5

**HIGHLIGHTS** 21:14

**HIXON** 12:14

**HON** 1:4

**HONESTLY** 14:27 30:28

**HONOR** 1:24,26 2:1,4,10,13,15, 17,20,23 4:26 5:8 6:12,13,15 8:24 9:5,12,18,27 10:10,23 11:27 13:8 14:7 16:12,19,26 17:1,18 18:15, 19 19:4,5,15,22,28 20:5,18,26,27 21:24 22:3,5,21,23 23:8,10,16 24:17 25:16 26:7,21,26 27:7,9 28:26 29:2,14,15,22 30:10,22 31:3,7 34:12 35:14,17 36:8,16,23, 25,26,27

**HONOR'S** 12:17 14:11 29:25

**HONORER** 14:21 23:7

**HOUSEKEEPING** 4:16

**HUGE** 15:22

**HUNDRED** 27:4

**HUNDREDS** 27:5

**HUNG** 7:21

---

## I

**IDEA** 26:26 28:22 30:17 32:27

**IDEAS** 10:7

**IDENTIFICATION** 4:24 19:3

**IDENTIFY** 1:19 9:6,7,22,23

**IDIOSYNCRATIC** 6:21

**IMAGINE** 6:25 11:16

**IMPACT** 9:21

**IMPLICATIONS** 32:11

**IMPORTANT** 3:1 14:27

**IMPROVIDENTLY** 5:28

**INCLUDE** 22:18

**INCLUDED** 3:17

**INCLUDING** 10:19

**INCORPORATE** 29:28

**INDIVIDUAL** 27:5

**INFORMAL** 14:17 33:22

**INFORMALLY** 16:17

**INFORMATION** 16:16 18:4,7,14 19:2,7 20:3 21:3,4 32:28 33:9

**INITIAL** 9:1 23:22 26:12 30:5 31:17

**INITIATE** 14:24

**INSISTED** 15:17

**INSTANCE** 12:8 20:1 31:20

**INSTINCT** 7:20

**INSTRUCTION** 15:26,28

**INSTRUCTIVE** 12:16

**INTEND** 18:9

**INTENTION** 11:28

**INTEREST** 20:11,15 27:10 30:2

**INTERESTED** 29:23

**INTERESTING** 15:5

**INTERFERES** 31:2

**INTERIM** 16:14 35:10

**INTERNAL** 26:24

**INTERNALLY** 24:21,22 29:27

**INTERNET** 16:10

**INVOLVED** 4:6 32:17

**INVOLVING** 23:9

**ISSUE** 3:20 6:22 10:27 11:3 12:13,20,28 13:9,16 14:10,22 16:2,20 17:14 19:20,21,24,25,27 20:24 21:2 22:22 26:5 27:9 30:25 31:3,25 35:28

**ISSUES** 11:6 13:24,25 14:8,11 18:9 20:10,17 21:17 22:2 26:8,21 29:5,24 30:3 31:19,23 35:11,17

**ITEM** 22:25

**ITEMS** 3:4 22:24

### J

**JA** 3:22

**JAM** 9:7

**JAMES** 1:5

**JANUARY** 3:11

**JCCP** 4:21 6:28 17:23 26:11,25

**JEFFCOTT** 26:10 27:2

**JENNIFER** 2:7

**JESSE** 1:26

**JOINT** 3:3,14 11:7,11 21:28 30:19 36:17

**JONATHAN** 2:21

**JOSEPH** 2:2 26:7 31:4 36:8

**JUDGE** 1:4 4:1,2 6:16 7:22 8:3,5 10:19 11:1 12:14 23:23 24:1 25:2 27:20 30:15 33:13 34:14 35:1,2

**JUDGES** 24:26

**JUDGMENT** 27:24

**JULY** 9:16,17

**JURISDICTION** 13:18

**JURISDICTIONS** 18:21

**JURY** 15:27

**JUSTICE** 28:12

**JUSTICES** 28:10

**JUUL** 31:19

### K

**KAGAN** 28:12

**KEEPING** 3:27

**KELLY** 2:4

**KEY** 35:11

**KIDDING** 34:15

**KIESEL** 1:25

**KIND** 8:8 11:12 18:18 29:1 35:6, 10

**KINDS** 28:2

**KUHL** 1:4

### L

**L.A.** 1:12,16,17

**LADDON** 2:15,16

**LARA** 1:22

**LARGE** 11:11 15:24 33:23

**LARGELY** 31:21

**LARGER** 33:27

**LAW** 1:23,25 8:2 11:19 18:19 20:1,7 30:12 31:2 32:3

**LAY** 31:14

**LEAD** 26:11

**LEADERSHIP** 4:10,12 23:10

**LEARNING** 28:21

**LEAVE** 10:7 26:15

**LEAVING** 10:1

**LENGTHY** 13:23

**LETTERS** 16:17

**LIAISON** 4:13 36:19

**LIEFF** 2:5

**LIFTED** 32:20

**LIKES** 27:28

**LIST** 3:4

**LITIGATED** 15:8

**LITIGATING** 15:9

**LITIGATION** 24:14,25 28:17 33:20 34:3

**LODGED** 4:20 10:17 12:8

**LONG** 8:22,27 16:9

**LONGER** 20:25

**LOOKED** 25:6,10 28:11

**LOOM** 15:23

**LOS** 1:3

**LOT** 14:16,18 33:20 35:9

---

**M**

**MACHINE** 28:20

**MADE** 20:4

**MAGISTRATE** 12:14 33:13 34:13

**MAINSTREAM** 24:24

**MAINTAINING** 20:14

**MAJORITY** 7:8

**MAKE** 4:23 13:8,19 18:28 19:7 20:19 22:4 28:24 29:1,3,6 33:27 35:24

**MAKERS** 13:26

**MAKES** 31:26

**MAKING** 6:7,9 12:24 13:27 31:22

**MANAGE** 29:10 33:24

**MANAGEMENT** 5:9 23:9 24:28 34:16

**MARCH** 1:3 19:23 20:28

**MARQUEZ** 1:22

**MASTER** 5:11,14 10:17 29:28 30:5

**MATERIAL** 12:23 20:8

**MATERNITY** 26:15

**MATTER** 6:1

**MCNABB** 2:4,5

**MDL** 5:22,24 7:28 10:16,18 12:14 13:6 14:6 17:23 18:16 19:10 24:24 25:7,8 30:7 31:5,6,10,15 34:24 35:3

**MDL'S** 34:20

**MEANING** 32:3

**MEANTIME** 29:25 35:25

**MEDIA** 1:2,15,23 4:6 20:15

**MEDIATOR** 22:13,15

**MEET** 10:6 13:23 17:24 19:23,25 21:9 29:23 30:24 33:4 35:19

**MEETING** 19:11 21:1 27:13 31:4, 18

**MENTIONED** 4:17,21 26:21 27:10,25

**MERITS** 21:8 29:5

**MESSAGE** 21:21 22:1

**META** 2:11,14 3:8,11 6:14

**META'S** 16:15

**METHOD** 21:6

**MICROPHONE** 2:28 3:1

**MID-DAY** 10:7

**MIDDLE** 36:12

**MIND** 18:23 27:15 34:10,25

**MINDFUL** 14:6

**MINDS** 28:11

**MINIMUM** 19:1 33:21

**MINOR** 4:20

**MINUTE** 3:9,13,24 5:4 36:20

**MISSED** 22:23

**MODIFICATIONS** 11:6

**MOMENT** 13:10

**MONDAY** 19:11

**MONTH** 8:17,20,21 9:2 36:11

**MONTHS** 5:24 35:15

**MORGAN** 27:2,3

**MORNING** 1:14,24,26 2:1,4,10, 13,15,17,20,23 4:26 19:13,26

**MOTION** 6:17 33:22

**MOVE** 9:8 11:3 33:5

**MOVED** 34:23

**MOVING** 4:16 9:1 19:13 22:7,27, 28

**MUNGER** 2:21,24

---

**N**

**NAVIGATE** 13:15

**NBC** 11:22,23

**NEGLIGENCE** 10:24

**NEGOTIATE** 16:2,7

**NEGOTIATING** 16:13 17:22

**NETWORKS** 11:21

**NON-CALIFORNIA** 6:23,26 7:14,15

**NON-DISCLOSED** 13:1

**NON-DUPLICATIVE** 31:23

**NONETHELESS** 25:4

**NONPARTIES** 11:17

**NOON** 36:18,19

**NORTHERN** 36:10

**NOTED** 1:8 18:19

**NOTICE** 15:15 36:20

**NOTICED** 23:10 28:5

**NU** 3:8

**NUMBER** 1:1 3:8 4:11,13 5:10 6:5 13:24 23:9 26:23 28:1 32:2 33:16,17

**NUMBERS** 5:13 27:7

---

**O**

**OBJECTIONS** 33:1

**OBLIGATION** 33:19

**OBLIGATIONS** 17:25 18:22

**OBSERVATIONS** 34:9

**OBVIATES** 18:17

**OCCURRED** 12:22

**OCTOBER** 8:13

**ODD** 15:17

**OHIO** 32:14

**OLSON** 2:24

**OPEN** 1:11,12 11:24 18:16 29:12 32:18,21

**OPINIONS** 24:1

**OPPORTUNITY** 20:16 30:10

**OPPOSED** 6:20 12:8 18:1

CERTIFIED COPY

**OPTIONS** 28:3

**ORDER** 3:9,10,12,13,16,17,19 4:19,23,28 5:4,9 8:25 10:5 11:4 12:1 13:5 15:4 16:3,20,22,24,27 17:19,21 18:3 19:20 21:13,14,26, 27 22:10 23:9,22 31:6,7,10,12,13, 14,20 34:26 35:18,19,22,25 36:20

**ORDERED** 3:12 35:2,3

**ORDERING** 25:14,27

**ORDERS** 3:20,24 13:20 15:3 17:3,4 24:28

**ORGANIZING** 4:12

**OUTSIDE-THE-RECORD** 29:16

**OUTSTANDING** 14:11

**OVERBROAD** 32:26 33:1

---

**P**

**PAGES** 21:22

**PAID** 24:4 25:12

**PANISH** 1:27

**PARAGRAPH** 23:5

**PARAGRAPHS** 10:5 21:20 23:11

**PARAMETERS** 29:23

**PART** 5:18 33:17

**PARTIAL** 33:28

**PARTIES** 4:27 12:17 13:1 14:3,5 29:10

**PARTNER** 15:9

**PARTY** 9:1 12:24 32:27,28

**PARTY'S** 31:24

**PASS** 26:11

**PAUL** 2:13 6:13

**PAY** 25:22

**PEOPLE** 28:13

**PERCENT** 11:18

**PERCOLATING** 35:18

**PERFORMING** 26:24

**PERIOD** 20:25 35:10

**PERSONALLY** 36:9

**PERSPECTIVE** 9:4 18:20 19:28 20:11 22:26

**PHONE** 13:23

**PICK** 6:23,26

**PLAINTIFF** 14:24 15:1 16:5,13 18:28 19:3,6,7,8 22:7 35:19 36:19

**PLAINTIFF'S** 18:26 25:9

**PLAINTIFFS** 1:23,25,28 2:3,6,8 4:11,20,27 5:15 6:11,19,20,24,26, 28 7:6,15 9:7,14,19,21,22 10:25 12:5,13 13:12 15:27 16:16 17:22, 23 18:6,10,15 19:10,12,23 20:11, 23 24:9,13 26:8 29:13 31:16 36:9

**PLAINTIFFS'** 1:21 22:25 23:10 26:28 30:4

**PLANNING** 6:9

**PLATFORMS** 30:2

**PLEADING** 6:3,8 31:1

**PLEADINGS** 29:21

**POINT** 6:2,27 12:11 13:3 14:9 22:22 28:16 32:14

**POSITION** 14:8 18:8

**POSITIONS** 22:18

**POSSESSING** 20:8

**POSSESSION** 20:14

**POSTING** 21:28 35:26

**POTENTIAL** 25:19 29:24

**POTENTIALLY** 24:6 27:5 31:6

**POUND** 33:1

**PREFER** 9:5

**PREFERRABLE** 25:27

**PREJUDICE** 23:12,16,17

**PREMATURE** 14:8

**PREMATURELY** 14:12

**PREMOTION** 14:18

**PREPARE** 8:28

**PREPARED** 4:20 6:14

**PRESENT** 13:16,25 14:10

**PRESENTED** 27:28

**PRESENTING** 20:17

**PRESERVATION** 14:22 15:3,4 16:1,2,13,20 17:19,21,24 18:3,22 19:7,18 20:21 21:3,12,27 35:18, 22

**PRESERVE** 14:26 18:9 21:5

**PRESERVED** 15:2

**PRESERVING** 18:6

**PRINTED-OUT** 23:4

**PRIOR** 5:19 27:22

**PRIORITY** 19:19

**PRIVACY** 18:8

**PRIVATE** 25:13,14,26

**PROBLEM** 11:12 17:17 25:25

**PROBLEMS** 24:12 34:28 35:26

**PROCEDURAL** 13:18 31:2

**PROCEDURE** 22:9 32:5

**PROCEDURES** 12:15

**PROCEED** 6:14 9:11 14:23 19:5 21:16 22:8

**PROCEEDING** 1:11 7:16 13:13, 14 16:22 31:28 32:4 36:28

**PROCEEDINGS** 3:23 11:24 13:25 17:26

**PROCESS** 5:14 13:24 16:19 26:24 32:15

**PRODUCE** 15:16 34:16 35:4

**PRODUCED** 12:10 17:16 33:5,9, 10,11,12 35:2,3

**PRODUCING** 17:11

**PRODUCT** 13:3

**PRODUCTION** 21:4

**PROFILE** 14:24 16:6,13,16 18:28 19:6

**PROGRAM** 33:18,19

**PROHIBITS** 20:7

**PROPORTIONALITY** 17:28

**PROPOSAL** 20:20 21:15

**PROPOSE** 14:5,9 31:7

**PROPOSED** 3:10,16,19 4:19

5:12 8:16 17:21 19:20 21:13,14, 26,27 22:10 28:9 31:5,10

**PROPOUND** 31:25

**PROPOUNDING** 32:24

**PROTECT** 17:1

**PROTECTION** 15:6

**PROTECTIVE** 11:3 12:1 13:5,20 35:19

**PROTOCOL** 13:5

**PROVIDE** 19:4 26:26 28:27 32:9

**PROVIDED** 12:23

**PSEUDONYMOUSLY** 4:21

**PUBLIC** 12:6

**PULL** 2:28 9:9

**PURPOSES** 16:14 30:23

**PUSH** 22:16

**PUT** 5:3,24 10:12

**PUTTING** 21:21

---

**Q**

**QUESTION** 17:7 26:22

**QUESTIONS** 3:26

**QUICKLY** 8:14 14:27 16:11

**QUOTE** 34:25

---

**R**

**RAISE** 4:18 14:12 26:9 31:19

**RAISED** 24:20 28:26

**RAISING** 14:8

**RANGE** 7:8

**RAVIPUDI** 1:27

**REACH** 18:15 20:20,24

**REACHING** 29:10

**READ** 24:1 30:7

**REALIZE** 7:22

**REASON** 3:28 7:17 11:19 36:13

**REASONS** 20:9 33:16

**RECEIVE** 19:10

**RECEIVES** 4:2

**RECOGNIZING** 12:14

**RECOMMENDED** 27:27

**RECORD** 29:20 30:13

**RECORDS** 12:7

**REDLINED** 21:14,27

**REDO** 9:28 10:1

**REDUCE** 33:20

**REFERENCE** 31:11

**REFERENCED** 5:6

**REFERRED** 15:24

**REFERRING** 19:6

**REGARD** 14:26 17:8

**RELATED** 23:12 26:9

**RELEVANCE** 18:1

**REMAINDER** 27:16

**REMAINING** 14:11 21:17

**REMAND** 32:13

**REMIND** 1:16

**REMOTELY** 1:5

**REPLY** 8:13 9:2

**REPORT** 3:3 11:7 22:19 36:18

**REPORTER** 1:5,18 25:23

**REPORTS** 11:11

**REQUEST** 2:27

**REQUESTED** 17:14

**REQUESTING** 32:27

**REQUESTS** 16:16

**REQUIRE** 14:4 21:5

**REQUIRED** 12:25 20:10

**RESEARCH** 29:4

**RESERVE** 31:27

**RESPECT** 3:6 6:3 12:1,3,4 16:24 19:8 20:13,21 32:11

**RESPOND** 14:2

**RESPONDING** 16:15 32:28

**RESPONSIBILITY** 14:25

**REST** 26:14

**RESTRICT** 31:24

**RETIRED** 15:11,15

**REVIEWED** 24:5,6

**REVIEWING** 25:2

**REVIEWS** 4:4

**RIDER** 25:19,25

**RIPE** 14:10

**RIPENS** 35:24

**ROAD** 29:3

**ROGERS** 6:17 7:22 8:3,5 10:19 27:20 30:15 35:1

**ROGERS'** 11:2

**RULE** 11:15 12:2,5

**RULES** 11:25 12:15 13:18,26 16:24 17:8 18:23 31:15 32:8

**RUN** 3:4

---

**S**

**SAFE** 16:4

**SAFER** 17:6

**SAMPLES** 33:11

**SAN** 3:8

**SAND** 33:1

**SATISFIED** 7:26

**SATURDAY** 15:18

**SAVE** 34:3

**SCENARIO** 28:8

**SCENARIOS** 28:14

**SCHEDULE** 5:12,18 6:4 8:12,16 22:25 27:16 30:18 31:9

**SCHEDULED** 36:10

**SCHEDULING** 22:22

**SCHMIDT** 2:13,14 6:13 7:3,5 9:4 10:10,23 22:21 23:7 28:25 30:9 35:14 36:16,24

**SCIENCE** 27:10 29:2,4,24 30:20

**SCIENTIST** 28:20

**SCREEN** 27:26 28:4 29:9,25 30:6,8

**SEAL** 12:25

**SEALING** 12:3

**SEASON** 32:21

**SEATED** 2:27

**SEC** 11:15

**SECTION** 9:20

**SEEK** 16:22

**SEEKS** 31:14

**SEES** 4:5

**SELDOM** 32:18

**SELECTING** 5:15

**SELECTION** 29:8

**SENSE** 6:7,10 22:4 29:1,3,7 31:26 32:6 33:27 35:24

**SEPARATE** 19:9,21

**SEPARATELY** 19:17

**SERVE** 33:19

**SET** 5:26 7:23 10:12,14 12:15 19:24,25 23:22 25:7,8

**SETS** 19:12

**SETTLEMENT** 23:25

**SEX** 20:8

**SHAKING** 7:3

**SHAPES** 33:16

**SHEA** 1:27

**SHEET** 19:9 35:19

**SHEETS** 22:7

**SHORT** 5:12,14

**SHORTENING** 8:27 9:2,10

**SHOTS** 27:26 28:4 29:9,25 30:7, 8

**SHOWING** 21:27

**SIDE** 1:21 8:17 11:8 13:12 18:26 21:21,22 24:3 28:26 30:5

**SIDE'S** 11:10 25:12

**SIDES** 16:8 17:20 20:15

**SIGN** 3:12

**SIGNED** 3:19 4:11,13,14 5:10 6:5 12:27

**SIGNIFICANT** 20:10 23:19

**SIMILAR** 16:22 31:7

**SIMONSEN** 2:10,11 11:27 14:2, 21 17:18 19:4,22 21:24 22:3,5 34:11 36:25

**SIMPLE** 28:8 29:18

**SIMPLY** 14:7 29:7

**SIT** 32:14 33:3

**SITUATION** 11:16 17:10 24:4 25:1 33:12

**SITUATIONS** 13:17

**SMALL** 17:11 22:22

**SMOOTH** 11:7,13 13:24

**SMOOTHED** 6:18

**SNAP** 2:22,25

**SOCAL** 23:21 24:8

**SOCIAL** 1:2,15,22 4:6 20:14

**SONSINI** 2:18

**SORT** 14:24 15:5 20:6 31:14,22 33:12 34:15

**SPEAK** 4:17 16:14 22:15 27:1 30:16 32:9

**SPEAKING** 1:19 2:27

**SPECIFIC** 18:4,13 27:7 32:3

**SPECULATE** 17:13

**SPECULATED** 8:26

**SPOKEN** 7:23

**STAFF** 10:13

**STAGE** 31:1

**STAGED** 33:8,28 34:3

**STAGES** 32:22

**STAND** 2:28

**STAND-IN** 3:22

**STANDARDS** 16:25,26

**STANDPOINT** 5:17

**START** 35:11

**STARTED** 5:23 12:21 34:7,20, 21,24

**STARTING** 1:21

**STATE** 7:26 13:1,13 14:4 17:25 18:2,19,22 30:11 31:2,21 32:3

**STATE'S** 8:1

**STATEMENT** 3:15

**STATES** 6:21 7:9

**STATUS** 3:15,16 22:14,19 26:21 27:7 36:17

**STATUTE** 10:20 20:6,12

**STAY** 26:4 32:20

**STIP** 19:20

**STIPULATION** 21:13,26

**STRICT** 30:12

**STRICTURES** 7:19

**STRIKE** 10:5

**STRIKES** 24:3

**STRUCK** 23:5,11

**STRUCTURE** 4:10,12

**STRUCTURED** 8:9

**STRUCTURING** 8:5

**STUFF** 33:14

**STUPID** 30:17

**SUBBED** 15:12,13

**SUBJECT** 20:22

**SUBMIT** 12:17

**SUBMITTED** 3:10 5:4 31:9

**SUBMITTING** 22:11

**SUBPOENA** 15:16

**SUBSIDIARY** 11:22,23

**SUBSTANCE** 33:24

**SUFFICIENT** 20:22

**SUFFICIENTLY** 11:9

**SUGGEST** 22:9 35:14,16

**SUGGESTED** 9:11

**SUGGESTS** 22:1

**SUPERVISING** 4:2

**SUPPRESSION** 15:25

**SUPREME** 5:21 8:18 11:20 28:5, 6

**SUSPECT** 9:20

**SWEEPS** 10:25

**SYNC** 16:28

---

**T**

**TAKING** 33:21

**TALK** 6:5 22:20 24:21,22 27:19 28:25

**TALKED** 4:19 18:27 19:17 27:20

**TALKING** 28:14 29:2

**TAP** 36:22

**TARIFA** 2:15

**TAUGHT** 7:7

**TEED** 12:13

**TEES** 5:18

**TEN** 5:5

**TERMINOLOGY** 17:28

**TERMS** 11:8 17:9 27:14,15 29:10 31:17

**THANKFULLY** 15:21 24:11

**THEORETICAL** 18:18

**THEORY** 5:27

**THING** 4:17 5:17 7:28 12:22 14:20 28:4 32:16 33:6,12 35:7

**THINGS** 11:7 14:15 16:10 22:16 27:26 28:2 32:25 34:17,24 36:22

**THINKING** 8:8 12:21 14:15 16:3 24:12 28:3,23

**THOUGHT** 8:26,27 13:3,16 29:6

**THOUGHTS** 8:23

**THROWING** 10:21

**TIKTOK** 2:16

**TIME** 1:6 3:15,22 4:18 5:7,19,20 6:6 7:2 9:5 11:8,13 14:9 15:21 19:17 20:25 22:13 27:10,19 28:6 33:3 36:6

**TIMELINE** 27:15

**TIMES** 15:27

**TIMING** 29:18

**TITLE** 1:8

**TODAY** 3:18 36:20,21

**TODAY'S** 5:4 36:6

**TOLD** 30:17

**TOLLES** 2:21,24

**TOMORROW** 19:13,25 21:1,8

**TOOL** 17:20

**TOTALLY** 28:19 32:26

**TOUCH** 28:2

**TRACK** 3:7,27

**TRANSPARENT** 18:5,10,11

**TRIAL** 15:24 36:10

**TRUST** 25:28

**TUBE** 2:19 28:8

**TUESDAY** 1:3

**TURNING** 29:15

**TURNS** 29:8

**TWO-WEEK** 10:1

**TYPE** 20:2 28:4

---

**U**

**ULTIMATELY** 17:14

**UNABLE** 18:9

**UNAWARE** 25:19

**UNCOMFORTABLE** 24:7 28:24

**UNDERSTAND** 8:4 12:6 14:3 20:12 21:2 28:13,15,19 29:26 30:2

**UNDERSTANDING** 7:6 16:21

**UNDERSTOOD** 11:27 23:15

**UNDOUBTEDLY** 24:12

**UNDUE** 18:2

**UNLIKE** 33:12

**UNQUOTE** 34:25

**UPDATE** 19:5

**USC** 26:1

**USER** 14:26 28:16,23 29:26

---

**V**

**VACATION** 8:18 10:2

**VAN** 2:1,2 26:7,20 27:12 29:22 31:3,4 36:8

**VANZANT** 30:22 36:8,26

**VERSUS** 3:8,11 5:20,26 8:20 9:15 23:5 28:7 32:13

**VET** 20:16

**VICTIMS** 1:23

**VICTORIA** 2:24

**VIDEOS** 27:28 28:9

**VIEW** 28:10 29:16

**VIEWS** 11:10 20:22

**VIRTUE** 20:14

---

**W**

**WAIT** 11:4

**WAIVE** 10:20

**WAKE** 11:26

**WANTED** 6:5 7:17 23:11 26:8,11 27:12

**WANTING** 28:15

**WASTED** 33:2

**WAYS** 13:19

**WEDNESDAY** 15:18

**WEEK** 5:1 9:9 10:8 35:23 36:1

**WEEKS** 9:3

**WEINSTEIN** 35:2

**WIFE** 15:17

**WILLFUL** 15:25

**WILSON** 2:18

**WISHES** 29:25

**WONDERFUL** 5:3

**WONDERING** 10:18

**WORD** 32:7

**WORDS** 17:28 21:18

**WORK** 11:5 13:3,4,6,21 14:16
20:27 25:15 26:17 27:16 34:18

**WORKING** 13:21 15:8 16:12
26:25 31:25 35:7

**WORKS** 8:8 31:8 36:9

**WORLD** 16:10

**WORRYING** 33:13

---

### Y

**YEARS** 24:26 34:19

**YESTERDAY** 4:15

---

### Z

**ZANDT** 2:1,2 26:7,20 27:12
29:22 31:3,4 36:8

1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
|---|---|
| | CASE NO.: 4:22-md-3047 |
| | Honorable Yvonne Gonzalez Rogers |
| This Document Relates to: ALL ACTIONS | **[PROPOSED] ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

Before the Court is Plaintiffs' Motion for Relief from Nondispositive Pretrial Order of

Magistrate Judge. Dkt. 303. The Court agrees with Plaintiffs that it would be unduly restrictive

and unnecessary under the circumstances presented by this products liability action to require

Plaintiffs to disclose the identity of their experts, including their consulting experts, to Defendants

before sharing documents designated highly confidential. *See Corley v. Google, Inc.*, No. 2016

WL 3421402, at *3 (N.D. Cal. June 22, 2016); *Johnson v. City and County of San Francisco*, 2011

WL 13377688, at *1–3 (N.D. Cal. Feb. 9, 2011). The Court further notes that the Parties have

agreed to deal with source code, which may require a higher degree of protection, via separate

order.

[PROPOSED] ORDER GRANTING MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF M.J.
NO. 4:22-MD-03047-YGR

1         Accordingly, the Court **STRIKES** Section 7.6 of the Protective Order (Dkt. 290). The

2   Court **ORDERS** Plaintiffs to refile the Protective Order, replacing the struck language with the

3   following:

4         7.6     Documents designated as "HIGHLY CONFIDENTIAL (COMPETITOR)"
    will be treated in the same manner as documents designated "CONFIDENTIAL,"

5       except that the documents may not be disclosed to the individual Plaintiffs or
    officers, directors, and employees of the Receiving Party (if an entity), including

6       House Counsel, unless that person otherwise meets the requirements of 7.4(h) or
    (j).

7

8   *Alternative: The Court* **ORDERS** *Plaintiffs to refile the Protective Order, replacing the struck*

9   *language with the following:*

10        *7.6     Procedures for Approving or Objecting to Disclosure of "HIGHLY*
    *CONFIDENTIAL (COMPETITOR)" Protected Material to Experts.* *"HIGHLY*

11       *CONFIDENTIAL (COMPETITOR)" information or items may be disclosed to an*
    *Expert without disclosure of the identity of the Expert as long as the Expert is not*

12       *a current officer, director, or employee of a competitor of a Party or anticipated to*
    *become one.*

13

14       **IT IS SO ORDERED.**

15

16   DATED:              _____

17                     HON. YVONNE GONZALEZ ROGERS

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order Granting Motion for Relief
from Nondispositive Pretrial Order of M.J.
No. 4:22-md-03047-YGR