Geoffrey M. Drake, *pro hac vice*
David Mattern, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email:  gdrake@kslaw.com
         dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc.,*
*ByteDance Inc., ByteDance Ltd.,*
*TikTok Ltd., and TikTok LLC*

*Additional parties and counsel listed on*
*signature pages*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | Honorable Yvonne Gonzalez Rogers |
| ALL ACTIONS | **DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) PLAINTIFFS' NON-PRIORITY CLAIMS (COUNTS 5, 12, 14, 16–18)** |
| | **Hearing:** |
| | Date:    TBD |
| | Time:    TBD |
| | Place:    Oakland, California |
| | Judge:   Hon. Yvonne Gonzalez Rogers |

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined in accordance with the Court's Case Management Order No. 6 (Dkt. 451), before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street in Oakland, California, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, Siculus, Inc., and Mark Elliot Zuckerberg; TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC; Snap Inc.; and YouTube, LLC, Google LLC, and Alphabet Inc. (each a "Defendant," and collectively the "Defendants"), will and hereby do move under Federal Rule of Civil Procedure 12(b)(6), for an order dismissing with prejudice Plaintiffs' general negligence (Count 5), wrongful death (Count 16), survival (Count 17), and loss of consortium (Count 18) claims in the Second Amended Master Complaint (Dkt. 494).  Meta also moves herein to dismiss Counts 12 and 14 asserted against it.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any Reply Memorandum or other papers submitted in connection with the Motion, the Second Amended Master Complaint filed in this action, any matter of which this Court may properly take judicial notice, and any information presented at argument.

DATED:        December 22, 2023        By:    _/s/ Geoffrey M. Drake_
                                                Geoffrey M. Drake

                                                *Attorney for Defendants TikTok Inc.,*
                                                *ByteDance Inc., ByteDance Ltd.,*
                                                *TikTok Ltd., and TikTok LLC*

                                                *Additional parties and counsel listed on*
                                                *signature pages*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... v

I.      INTRODUCTION ....................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................. 1

III.    LEGAL STANDARD .................................................................................. 4

IV.     ARGUMENT .............................................................................................. 4

    A.      Plaintiffs' General Negligence Claim Fails as a Matter of Law (Count 5, asserted against all Defendants). ......................................................... 4

        1.      Plaintiffs Fail to Plausibly Allege a Recognized Legal Duty. .................... 5

            a)      Defendants Cannot Be Held Liable for Publishing and Enhancing Engagement with Third-Party Content. ....................... 6

            b)      Plaintiffs' Allegations of Harm by Third-Party Bad Actors Are Not Cognizable. ............................................................................. 8

            c)      There Is No Legal Basis for Imposing a Duty to Alter Parental Controls, Age Verification, or CSAM Reporting Processes. ........ 11

                (1)     Plaintiffs' Claim Is Barred to The Extent It Is Premised on Harms from Publishing Third-Party Content. .............. 11

                (2)     Plaintiffs Fail to Plead a Duty Related to Age Verification, Parental Controls, and Reporting Features. . 15

        2.      Plaintiffs Fail to Adequately Allege Proximate Causation of Third-Party Misconduct. .................................................................. 18

    B.      Plaintiffs' CSAM Claims Fail (Counts 12 and 14, against Meta only). .............. 21

        1.      Section 230 Bars Plaintiffs' CSAM Claims. ............................................ 21

        2.      Independently, Plaintiffs Fail to State a Claim Under Sections 2252 and 2252A(a)(5)(B). ............................................................................ 22

    C.      The Court Should Dismiss Plaintiffs' Claims for Loss of Consortium, Wrongful Death, and Survival (Counts 16–18). ................................................. 25

        1.      Loss of Consortium, Wrongful Death, and Survival Are Derivative Claims and Must Be Dismissed Where the Underlying Personal Injury Claims Are Dismissed. ...................................................................... 25

2.    Numerous States Do Not Allow Parents to Recover Damages for Loss of Consortium. ........................................................................... 27

3.    The Court Should Dismiss the Consortium Plaintiffs' Prayer for Medical Expenses...................................................................................... 29

4.    The Court Should Dismiss or Limit Plaintiffs' Survival Claims Under the Laws of Five States. ............................................................. 30

V.    CONCLUSION ...................................................................................................... 31

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A.H. ex rel. C.H. v. Church of God in Christ, Inc.*,
   831 S.E.2d 460 (Va. 2019) ........................................................................................... 10

5

*Am. Exp. Lines, Inc. v. Alvez*,
   446 U.S. 274 (1980) ...................................................................................................... 30

6

7

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ........................................................................ 24

8

9

*Anderson v. TikTok, Inc.*,
   637 F. Supp. 3d 276 (E.D. Pa. 2022) .............................................................................. 8

10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 4

11

12

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) .......................................................................................................... 5

13

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ......................................................................................... 5

14

15

*Baxter v. Super. Ct.*,
   19 Cal. 3d 461 (1977) ................................................................................................... 28

16

*Beerbower v. State ex rel. Or. Health Scis. Univ.*,
   736 P.2d 596 (Or. Ct. App. 1987) ................................................................................ 28

17

18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 4

19

20

*Bride v. Snap Inc.*,
   2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) .............................................................. 13

21

*Brown v. Ent. Merchants Ass'n*,
   564 U.S. 786 (2011) ...................................................................................................... 17

22

23

*Butler v. Chrestman*,
   264 So. 2d 812 (Miss. 1972) ......................................................................................... 27

24

*Chavez-Solis v. Lynch*,
   803 F.3d 1004 (9th Cir. 2015) ...................................................................................... 23

25

26

*Cocoli v. Children's World Learning Ctrs., Inc.*,
   1994 WL 16035130 (Va. Cir. Ct. Dec. 28, 1994) ........................................................ 28

27

28

v

*Cox v. Shelter Ins. Co.*,
  34 So. 3d 398 (La. Ct. App. 2010) .................................................................... 30

*Crosby v. Twitter, Inc.*,
  921 F.3d 617 (6th Cir. 2019) .............................................................. 18, 19, 20

*Devito v. Opatich*,
  215 A.D.2d 714 (N.Y. App. Div. 1995) ............................................................ 27

*District of Columbia v. Howell*,
  607 A.2d 501 (D.C. 1992) .................................................................................. 28

*Doe #1 v. MG Freesites, Ltd.*,
  2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ...................................................... 23

*Doe #1 v. Twitter, Inc.*,
  2023 WL 3220912 (9th Cir. May 3, 2023) .................................................. 20, 21

*Doe II v. MySpace Inc.*,
  175 Cal. App. 4th 561 (2009) ............................................................................ 13

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .................................................. 21

*Doe v. City of Gauley Bridge*,
  2022 WL 3587827 (S.D. W. Va. Aug. 22, 2022) .............................................. 24

*Doe v. Fry*,
  2012 WL 13102263 (M.D. Fla. Apr. 9, 2012) .................................................. 23

*Doe v. Greenville Cnty. Sch. Dist.*,
  651 S.E.2d 305 (S.C. 2007) ............................................................................... 27

*Doe v. Hansen*,
  2018 WL 222367 (E.D. Mo. May 15, 2018) ..................................................... 24

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) .............................................................. 23

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ............................................................................. 13

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021) ......................................................... 21, 22

*Doe v. Uber Techs., Inc.*,
  2021 WL 2382837 (D. Md. June 9, 2021) ........................................................... 9

*Dyroff v. Ultimate Software Grp., Inc.*,
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) .................................................. 10

vi

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..................................................................................... 6

*Eagan v. Calhoun*,
    698 A.2d 1097 (Md. 1997) ......................................................................................... 25

*Elgin v. Bartlett*,
    994 P.2d 411 (Colo. 1999) ......................................................................................... 28

*Ellenwine v. Fairley*,
    846 N.E.2d 657 (Ind. 2006) ....................................................................................... 30

*Estate of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ......................................................... 5, 16

*Everett v. Carter*,
    490 So. 2d 193 (Fla. Dist. Ct. App. 1986) ................................................................ 20

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................................................................... 21

*Father A v. Moran*,
    469 N.W.2d 503 (Minn. Ct. App. 1991) .................................................................... 27

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016) ............................................................... 13, 22

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ............................................................................... 13, 19

*Ford Motor Co. v. Miles*,
    967 S.W.2d 377 (Tex. 1998) ...................................................................................... 28

*Gallimore v. Children's Hosp. Med. Ctr.*,
    617 N.E.2d 1052 (Ohio 1993) .................................................................................... 28

*Grant v. McAuliffe*,
    41 Cal. 2d 859 (1953) ................................................................................................ 26

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
    2011 WL 5521005 (N.D. Cal. Nov. 14, 2011) ............................................................. 5

*Hannon v. Duncan*,
    594 So. 2d 85 (Ala. 1992) .......................................................................................... 27

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ............................................................................... 13

*Holland v. Murphy Oil USA, Inc.*,
    290 So. 3d 1253 (Miss. 2020) .................................................................................... 10

vii

*HomeAway.com, Inc. v. City of Santa Monica,*
   918 F.3d 676 (9th Cir. 2019) ........................................................................................ 13

*In re Certification of Questions of L. from U.S. Ct. of Appeals for Eighth Cir., Pursuant to*
   *Provisions of SDCL 15-24A-1,*
   544 N.W.2d 183 (S.D. 1996) ........................................................................................ 27

*In re Facebook, Inc.,*
   625 S.W.3d 80 (Tex. 2021) ............................................................................................ 9

*In re Labatt Food Serv., L.P.,*
   279 S.W.3d 640 (Tex. 2009) ........................................................................................ 25

*In re Optical Disk Drive Antitrust Litig.,*
   2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ................................................................. 4

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.* ("*In re Soc. Media*"),
   ___ F. Supp. 3d ___, 2023 WL 7524912, at *1 (N.D. Cal. Nov. 14, 2023) ........................... *passim*

*In re Zofran (Ondansetron) Prods. Liab. Litig.,*
   2017 WL 145819 (D. Mass. Apr. 24, 2017) ................................................................... 4

*Jackson v. Airbnb, Inc.,*
   639 F. Supp. 3d 994 (C.D. Cal. 2022) .......................................................................... 10

*Jackson v. Tastykake, Inc.,*
   648 A.2d 1214 (Pa. Super. Ct. 1994) ........................................................................... 27

*Jane Doe No. 14 v. Internet Brands, Inc.,*
   No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016), ECF No. 51 .................................. 16

*Jane Doe No. 1 v. Uber Techs., Inc.,*
   79 Cal. App. 5th 410 (2022) ........................................................................................ 11

*Johnson v. Maker Ecosystem Growth Holdings, Inc.,*
   2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ................................................................. 5

*Johnson v. Ottomeier,*
   275 P.2d 723 (Wash. 1954) ......................................................................................... 26

*Kane v. Hartford Accident & Indem. Co.,*
   98 Cal. App. 3d 350 (1979) ......................................................................................... 20

*Kuciemba v. Victory Woodworks, Inc.,*
   14 Cal. 5th 993 (2023) ................................................................................................. 26

*L.W. ex rel. Doe v. Snap Inc.,*
   2023 WL 3830365 (S.D. Cal. June 5, 2023) ................................................................... 9

*Lacy v. G.D. Searle & Co.*,
  484 A.2d 527 (Del. Super. Ct. 1984) ........................................................... 27

*Laizure v. Avante at Leesburg, Inc.*,
  109 So. 3d 752 (Fla. 2013) ........................................................................... 25

*Ledger v. Tippitt*,
  164 Cal. App. 3d 625 (1985) ........................................................................ 29

*Lewis v. Rowland*,
  701 S.W.2d 122 (Ark. 1985) ........................................................................ 27

*Lincoln Alameda Creek v. Cooper Indus., Inc.*,
  829 F. Supp. 325 (N.D. Cal. 1992) ................................................................ 5

*M. L. v. Craigslist Inc.*,
  2020 WL 6434845 (W.D. Wash. Apr. 17, 2020) ..................................... 10, 16

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
  809 F. Supp. 2d 1041 (E.D. Mo. 2011) ....................................................... 21

*M.H. v. Omegle.com, LLC*,
  2022 WL 93575 (M.D. Fla. Jan. 10, 2022) .................................................. 21

*Martin v. Staheli*,
  457 P.3d 53 (Ariz. Ct. App. 2019) ............................................................... 25

*Martin v. United Sec. Servs., Inc.*,
  314 So. 2d 765 (Fla. 1975) ........................................................................... 30

*McCollum v. CBS, Inc.*,
  202 Cal. App. 3d 989 (1988) ........................................................................ 16

*McKethean v. Wash. Metro. Area Transit Auth.*,
  588 A.2d 708 (D.C. 1991) ............................................................................ 20

*Michaels v. Nemethvargo*,
  571 A.2d 850 (Md. Ct. Spec. App. 1990) ..................................................... 27

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) ............................................................... 7, 18, 20

*Morton v. Merrillville Toyota, Inc.*,
  562 N.E.2d 781 (Ind. Ct. App. 1990) ........................................................... 27

*NetChoice, LLC v. Bonta*,
  2023 WL 6135551 (N.D. Cal. Sept. 18, 2023) ..................................... 14, 16, 17

*NetChoice, LLC v. Griffin*,
  2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) ...................................... 14, 17

*Packingham v. North Carolina,*
   582 U.S. 98 (2017) ................................................................................................ 16

*Pierce v. Casas Adobes Baptist Church,*
   782 P.2d 1162 (Ariz. 1989) ................................................................................... 30

*Pisano v. Extendicare Homes, Inc.,*
   77 A.3d 651 (Pa. Super. Ct. 2013) ........................................................................ 25

*Powell v. Am. Motors Corp.,*
   834 S.W.2d 184 (Mo. 1992) ................................................................................. 27

*Reiser v. United States,*
   786 F. Supp. 1334 (N.D. Ill. 1992) ....................................................................... 30

*Reno v. Am. Civil Liberties Union,*
   521 U.S. 844 (1997) .............................................................................................. 16

*Roberts v. Williamson,*
   111 S.W.3d 113 (Tex. 2003) ................................................................................. 28

*Rodriguez v. Bethlehem Steel Corp.,*
   12 Cal. 3d 382 (1974) ........................................................................................... 29

*Ruiz v. Podolsky,*
   50 Cal. 4th 838 (2010) .......................................................................................... 25

*Russell v. Ingersoll-Rand Co.,*
   841 S.W.2d 343 (Tex. 1992) ................................................................................. 26

*Sanders v. Acclaim Ent., Inc.,*
   188 F. Supp. 2d 1264 (D. Colo. 2002) .................................................................... 6

*Santana v. Rainbow Cleaners, Inc.,*
   969 A.2d 653 (R.I. 2009) ...................................................................................... 10

*Sawyer v. Bailey,*
   413 A.2d 165 (Me. 1980) ...................................................................................... 27

*Schaefer v. Allstate Ins. Co.,*
   668 N.E.2d 913 (Ohio 1996) ................................................................................. 25

*Se. Booksellers Ass'n v. McMaster,*
   371 F. Supp. 2d 773 (D.S.C. 2005) ....................................................................... 17

*Seismic Reservoir 2020, Inc. v. Paulsson,*
   785 F.3d 330 (9th Cir. 2015) .................................................................................. 4

*Shattuck v. Gulliver,*
   481 A.2d 1110 (Conn. Super. Ct. 1984) ................................................................ 27

*Siciliano v. Capitol City Shows, Inc.*,
  475 A.2d 19 (N.H. 1984) ................................................................................................ 27

*Sizemore v. Smock*,
  422 N.W.2d 666 (Mich. 1988) ......................................................................................... 27

*Smith v. Town of S. Hill*,
  611 F. Supp. 3d 148 (E.D. Va. 2020) ............................................................................... 30

*Soc. Media Cases*,
  2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ......................................................... 17, 18

*Thomas v. Regents of Univ. of Cal.*,
  2023 WL 8248249 (Cal. Ct. App. Nov. 29, 2023) ........................................................... 17

*Tice v. Ebeling*,
  715 P.2d 397 (Kan. 1986) ................................................................................................. 27

*Ticknor v. Choice Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001) ........................................................................................... 15

*Tilton v. Deslin Hotels, Inc.*,
  2007 WL 3072374 (M.D. Fla. Oct. 19, 2007) ................................................................. 23

*Tilton v. Playboy Ent. Grp., Inc.*,
  554 F.3d 1371 (11th Cir. 2009) ....................................................................................... 23

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ......................................................................................................... 19

*United States v. Dean*,
  635 F.3d 1200 (11th Cir. 2011) ....................................................................................... 23

*United States v. Merino-Balderrama*,
  146 F.3d 758 (9th Cir. 1998) ........................................................................................... 22

*United States v. Moreland*,
  665 F.3d 137 (5th Cir. 2011) (2006) ............................................................................... 22

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994) ........................................................................................................... 22

*Upton v. Vicknair*,
  2021 WL 2635460 (E.D. La. June 25, 2021) ................................................................... 24

*Valiant Ins. Co. v. Webster*,
  567 So. 2d 408 (Fla. 1990) ............................................................................................... 25

*Vanhooser v. Super. Ct.*,
  206 Cal. App. 4th 921 (2012) ........................................................................................... 25

xi

*Vaughn v. Clarkson*,
   376 S.E.2d 236 (N.C. 1989) ................................................................................. 27

*Vitro v. Mihelcic*,
   806 N.E.2d 632 (Ill. 2004) ................................................................................. 28

*W.J. Bremer Co. v. Graham*,
   312 S.E.2d 806 (Ga. Ct. App. 1983) ................................................................ 27

*Wachocki v. Bernalillo Cnty. Sheriff's Dep't*,
   265 P.3d 701 (N.M. 2011) ................................................................................. 28

*Waller v. Osbourne*,
   763 F. Supp. 1144 (M.D. Ga. 1991) ................................................................... 7

*Watters v. TSR, Inc.*,
   904 F.2d 378, 379 (6th Cir. 1990) .................................................................. 6, 7

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ............................................................................ 5

*Wiener v. Southcoast Childcare Ctrs., Inc.*,
   32 Cal. 4th 1138 (2004) ................................................................................... 20

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) .......................................................................... 16

*Zamora v. CBS*,
   480 F. Supp. 199 (S.D. Fla. 1979) .................................................................. 7, 8

*Ziencik v. Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .................................................... 11

**Statutes**

18 U.S.C. § 1466A ...................................................................................................... 23

18 U.S.C. § 1595 ......................................................................................................... 24

18 U.S.C. § 2252 ........................................................................................... 20, 21, 22, 23

18 U.S.C. § 2252A ........................................................................................ 20, 21, 22, 23

18 U.S.C. § 2255 ................................................................................................ 20, 21, 24

Ariz. Rev. Stat. Ann. § 14-3110 ................................................................................. 31

Cal. Civ. Code § 1714 ................................................................................................ 18

Fla. Stat. § 768.20 ...................................................................................................... 30

Wyo. Stat. Ann. § 1-4-101 ................................................................................................ 30

**Other Authorities**

65 C.J.S. Negligence § 194 ............................................................................................... 18

*Child Sexual Exploitation, Abuse and Nudity*,
    Meta (2023), https://transparency.fb.com/policies/
    community-standards/child-sexual-exploitation-abuse-nudity/ ..................................... 23

Restatement (Second) of Torts (1965) .............................................................................. 10

Restatement (Second) of Torts (1977) ......................................................................... 24, 29

Restatement (Second) of Torts (1979) .............................................................................. 25

Restatement (Third) of Torts: Phys. & Emot. Harm (2012) ............................................. 10

*Terms and Policies: Community Guidelines*,
    Instagram (2023), https://help.instagram.com/477434105621119 ................................ 23

DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR

## I.     INTRODUCTION

Defendants publish, disseminate, and curate expressive speech created by their users to communicate with, educate, or engage others.  When Defendants engage in these activities, they are protected by both the First Amendment and Section 230 of the Communications Decency Act.  Accordingly, when ruling on Defendants' motion to dismiss Plaintiffs' product liability claims, this Court held that those fundamental protections barred many of the key allegations and legal theories in Plaintiffs' First Amended Master Complaint.  Without those allegations, Plaintiffs' claims for general negligence (Count 5), wrongful death (Count 16), survival (Count 17), and loss of consortium (Count 18) against all Defendants, as well as possession and distribution of child sex abuse material ("CSAM") against Meta (Counts 12 and 14) fail.  Each should be dismissed for failing to state a claim.

*First*, Plaintiffs' general negligence claim rests on legal theories of duty and breach that this Court (and many others) have rejected.  Stripped of those theories, no viable claim remains.  Courts around the nation have repeatedly rejected the duties that Plaintiffs would attribute to Defendants because they would abridge the fundamental protections afforded to content publishers like Defendants.  That, however, is not the only flaw dooming Plaintiffs' claim:  Plaintiffs also fail to adequately allege that *Defendants* were the proximate cause of the many alleged injuries, as opposed to third-party actors.

*Second*, Section 230 also bars Plaintiffs' two remaining CSAM claims, which are expressly based on Meta's alleged hosting or dissemination of third-party content that Meta did not create or develop (and strives very hard to eliminate on its services).  These claims also fail as Plaintiffs do not adequately allege that Meta *itself* violated federal criminal statutes prohibiting the knowing possession or receipt of CSAM.

*Third*, Plaintiffs' derivative claims for wrongful death, survival, and loss of consortium fail absent any valid predicate claim.  Moreover, many states do not recognize, as a matter of law, the types of derivative claims Plaintiffs allege here.  Accordingly, this Court should dismiss these claims.

## II.     PROCEDURAL BACKGROUND

Plaintiffs filed their Master Complaint alleging eighteen causes of action on February 14, 2023, (Dkt. 136), and a materially identical First Amended Master Complaint on April 14, 2023 (Dkt. 234-

1) ("MAC").  Plaintiffs identified five priority claims to brief in the first round of motions to dismiss—

Plaintiffs' product liability claims for defective design and failure to warn under both strict liability

and negligence theories (Counts 1–4) and Plaintiffs' negligence per se claim (Count 10).  *See* Notice

of Priority Claims at 1 (Dkt. 131).  On April 17, 2023, Defendants moved to dismiss those claims.

(Dkt. 237, "Priority MTD").   On June 27, 2023, Defendants submitted supplemental briefing

addressing their Section 230 and First Amendment defenses to the priority claims.  (Dkt. 320, "Supp.

MTD").[1]   This Court deferred briefing on the remaining claims in the First Amended Master

Complaint—which were designated "non-priority claims"—until after it resolved the Priority Motion

to Dismiss.

On November 14, 2023, the Court granted in part and denied in part the motion to dismiss those

priority claims.   *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.* ("*In re Soc.

Media*"), ___ F. Supp. 3d ___, 2023 WL 7524912, at *1 (N.D. Cal. Nov. 14, 2023).  More specifically,

the Court concluded that Section 230 and the First Amendment barred many of Plaintiffs' theories of

liability.  *Id.* at *12–19.  Section 230 precluded relief as to design-defect claims based on: Defendants'

"[u]se of algorithms to promote addictive engagement"; "[n]ot providing a beginning and end to a

user's Feed"; the "[t]iming and clustering of notifications of third-party content"; "[f]ailing to put

[d]efault protective limits to the length and frequency of sessions"; "[f]ailing to institute [b]locks to use

during certain times of day (such as during school hours or late at night[)]"; "[r]ecommending minor

accounts to adult strangers"; "[l]imiting content to short-form and ephemeral content, and allowing

private content"; and "[p]ublishing geolocating information for minors."  *Id.* at *13 (quotation marks

omitted).    And the First Amendment barred claims based on "awards" and "notifications of

[D]efendants' content."  *Id.* at *19.  Conversely, the Court determined that neither Section 230 nor the

---

[1] Defendants included a detailed background of the claims and parties in the prior motions to dismiss
Plaintiffs' product liability claims (*see* Priority MTD at 3–12; Supp. MTD at 2), incorporated herein
by reference.

First Amendment barred Plaintiffs' remaining product liability theories regarding "effective parental controls" or "parental notifications," "age verification," and "appearance-altering filters."[2]  *Id.* at *12.

Turning to Defendants' arguments under product liability law, the Court concluded that "global arguments as to whether defendants' platforms are services do not resolve this dispute," and that the specific "functionalities" surviving the Section 230 and First Amendment analyses were themselves "products" within the meaning of the Third Restatement and thus subject to product liability law in Plaintiffs' priority jurisdictions (New York and Georgia).  *Id.* at *21–22, *24, *29–34 (emphasis omitted).  The Court concluded for purposes of Plaintiffs' priority product liability claims that Plaintiffs had adequately alleged a duty grounded in product liability law because "manufacturers of products owe such duties to users," but did not consider whether the duty alleged by Plaintiffs exists outside of the product liability context.  *Id.* at *34–35.  The Court separately ruled, however, that "[i]n general, entities do not owe a duty to prevent harm by third parties to their users."  *Id.* at *35.  Indeed, Plaintiffs conceded Defendants have no "special relationship" with their users, and the Court ruled that the First Amended Master Complaint "d[id] not sufficiently allege misfeasance such that a duty should attach for third party conduct."  *Id.* at *35, *39.  The Court also noted Plaintiffs' acknowledgment that "defendant[] [TikTok] ha[s] taken more precautionary steps than defendants" in cases where courts have found a duty.  *Id.* at *38.

On November 21, 2023, this Court ordered that additional briefing for the remaining claims be organized into four tracks.  *See* CMO 6 (Dkt. 451) at 2.  This Motion was slated to address the "Track 2" claims—that is, "the remaining MAC claims" aside from Counts 7–9.  CMO 6 at 2–3.  This designation included Counts 5, 6, and 11–18.

---

[2] The Court reached the same result for claims based on Defendants' alleged "failure to implement opt-in restrictions" or "to enable default protective limits to the length and frequency of use sessions," "creating barriers that make it more difficult for users to delete and/or deactivate their accounts than to create them in the first instance," "failure to label content that has been edited, such as by applying a filter," and "failure to create adequate processes for users to report suspected CSAM to defendants' platforms."  *In re Soc. Media*, 2023 WL 7524912, at *21.  Plaintiffs do not include allegations about opt-in restrictions or filters in their general negligence claim, so Defendants do not address them here.

On December 15, Plaintiffs filed a Second Amended Master Complaint ("SAC") withdrawing Counts 6 (negligent undertaking), 11 (sex trafficking), and 13 and 15 (CSAM) as to all Defendants and withdrew Counts 12 and 14 (the remaining CSAM claims) as to all Defendants except Meta.  (Dkt. 494).  The Second Amended Complaint incorporated by reference allegations filed against some Defendants by various state attorneys general.  SAC ¶¶ 391A, 391B, 689A.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss any claim that is barred by law, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015), or that fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The MDL context does not alter these well-established pleading standards.   *See In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2017 WL 1458193, at *5 (D. Mass. Apr. 24, 2017) ("The creation of an MDL proceeding does not suspend the requirements of the Federal Rules of Civil Procedure, nor does it change or lower the[m].");  *In re Optical Disk Drive Antitrust Litig.*, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) (dismissing consolidated complaint in MDL for failure to satisfy Rule 8 where plaintiffs' allegations were merely "*possible*" rather than "'plausible'" (quoting *Twombly*, 550 U.S. at 570)).

### IV.   ARGUMENT

**A.   Plaintiffs' General Negligence Claim Fails as a Matter of Law (Count 5, asserted against all Defendants).**

The heart of Plaintiffs' general negligence claim is that Defendants use content-recommendation algorithms (and related features like scrolls of content and notifications about content) to present users with "excessive" content and "addict" them to their services.  *See* SAC ¶¶ 916, 922, 929–30.  This Court, however, has already held that Section 230 and the First Amendment bar claims on these bases because they "are traditional editorial functions that are essential to publishing."  *In re Soc. Media*, 2023 WL 7524912, at *15.  And once those barred theories are taken away, what is left is nowhere near enough: Plaintiffs' remaining allegations in Count 5 concerning age verification, parental controls, and reporting features cannot support a viable negligence claim because they fail to plausibly

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

allege (1) a legally cognizable duty of care or (2) proximate causation with respect to alleged harms caused by third parties.

### 1.  Plaintiffs Fail to Plausibly Allege a Recognized Legal Duty.

An "essential element" in "any negligence claim" is a recognized legal duty, and Plaintiffs bear the burden of plausibly alleging such a duty. *Lincoln Alameda Creek v. Cooper Indus., Inc.*, 829 F. Supp. 325, 328 (N.D. Cal. 1992). Plaintiffs plead their general negligence claim "in the alternative on a non-product theory." SAC ¶ 914. That means they cannot rely on the traditional duties owed by a product manufacturer, which was the basis for this Court's product liability duty analysis. *In re Soc. Media*, 2023 WL 7524912, at *34–35. The same duty does not exist under general negligence law. While the Second Amended Master Complaint recites various duty theories, most of what Plaintiffs allege are theories that this Court has already held barred by Section 230 and the First Amendment. Those rulings apply equally to a negligence claim.[3] *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009) (applying Section 230 to negligence); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) ("[I]n the First Amendment context, courts must 'look through forms to the substance.'" (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963))).

Plaintiffs allege generally that "[e]ach Defendant owed Plaintiffs a duty to exercise reasonable care" in, among other things, the "development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control" of each of Defendants' services. SAC ¶ 916. But just because Plaintiffs say there is a duty does not mean that they are right, and courts routinely reject these kinds of generic, conclusory duty allegations. *E.g.*, *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023) (allegations that a defendant had a duty to act "in a reasonable, prudent, non-negligent manner" is "insufficient" because it "fails to identify the source of the duty alleged" (quotation marks omitted)); *Green Desert Oil Grp. v. BP W.*

---

[3] Defendants maintain that Section 230 and the First Amendment bar all of Plaintiffs' claims, including those claims the Court allowed to move forward, and they preserve those issues for appeal. *See* Supp. MTD at 4–14; Supp. Reply at 1–9. But Defendants will not repeat arguments concerning allegations this Court's Order allowed to proceed in this motion.

DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR

*Coast Prods.*, 2011 WL 5521005, at \*5 (N.D. Cal. Nov. 14, 2011) (dismissing negligence claim where plaintiff included allegations "conclusorily alleging duty"), *aff'd*, 571 F. App'x 633 (9th Cir. 2014).

That is particularly true in the context of cases where plaintiffs try to apply such generic duties to defendants that engage in and disseminate speech, such as interactive communication services, game designers, broadcasters, and other traditional publishers. *E.g.*, *Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at \*3–4 & n.7 (N.D. Cal. Jan. 12, 2022) (collecting cases finding "no duty" to support "negligence-based claims" "for claims implicating expression"). And with good reason: "[n]o website could function if a duty of care w[ere] created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019). As a matter of basic tort law, imposing such generic duties would "stretch the concepts of foreseeability and ordinary care to lengths that would deprive them of all normal meaning." *Watters v. TSR, Inc.*, 904 F.2d 378, 379, 381 (6th Cir. 1990). And it would risk "burden[ing]" a defendant's "rights to freedom of expression." *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1273, 1275 (D. Colo. 2002).

This Court may dismiss the negligence claim on this basis alone. But even if the Court analyzes the various more specific breaches that Plaintiffs allege, that leads to the same result, just by different route. *See* SAC ¶¶ 929–30. The theories Plaintiffs offer are either barred by federal law or insufficient to plead any recognized tort-law duty under state law (or both). None of the three categories of breaches Plaintiffs allege can support a cognizable legal duty.

### a) Defendants Cannot Be Held Liable for Publishing and Enhancing Engagement with Third-Party Content.

Plaintiffs' first category of allegations asserts that Defendants breached a purported duty by deploying features to enhance how users engage with the third-party content that Defendants publish—in essence, arguing that tort liability may be imposed on Defendants for facilitating more (or more engaging) speech. SAC ¶¶ 929(a), (b), (d), 930(c), (d), (e), (f); *see also* SAC ¶ 916 (asserting a duty "not to create an unreasonable risk of harm … including an unreasonable risk of addiction"). This Court has already rejected these allegations as barred by Section 230 because they "directly target defendants' roles as publishers of third-party content." *In re Soc. Media*, 2023 WL 7524912, at \*13.

But, even if that did not dispose of Plaintiffs' claim (and it does), Plaintiffs fail to allege any legally recognized, cognizable duty to prevent whatever Plaintiffs feel is "excessive" engagement with Defendants' services.

Start with Plaintiffs' allegations that Defendants failed to use available means to monitor for and limit minors' (1) excessive use of the platform and (2) use of the platform during sleep and school times.  SAC ¶¶ 930(c)–(d).  As this Court recognized, Section 230 bars allegations that Defendants failed "to put '[d]efault protective limits to the length and frequency of sessions[,]'" or "to institute '[b]locks to use during certain times of day (such as during school hours or late at night[)].'"  *In re Soc. Media*, 2023 WL 7524912, at *13 (quoting MAC ¶¶ 845(e), (h), (i)).

Plaintiffs also allege that Defendants are liable because their services "rely on unreasonably dangerous methods (such as endless scroll, autoplay, IVR, social comparison, and others) as a means to engage youth users," and that the "algorithms" on Defendants' services "actively driv[e] youth users into" harmful third-party content.  SAC ¶¶ 930(e)–(f); *see also id.* ¶¶ 929(a), (b), (d).  These theories are similarly barred: this Court held that Section 230 prohibits claims based on allegations that Defendants do "[n]ot provid[e] a beginning and end to a user's 'Feed,'" and that they use "'auto-play'" functionality and "algorithms to promote addictive engagement."  *In re Soc. Media*, 2023 WL 7524912, at *13 & n.6.

And even if Section 230 did not resolve Plaintiffs' allegations, there is no recognized, cognizable tort-law duty based on these kinds of publisher-liability theories.  Courts have routinely concluded that publishers owe no duty of care based on their publication and dissemination of third-party content—even when that content and/or its presentation is allegedly "addicting."  *See, e.g.*, *Zamora v. CBS*, 480 F. Supp. 199, 200 (S.D. Fla. 1979) (declining to impose duties on TV broadcasters to prevent minor from "duplicat[ing] the atrocities he viewed on television," despite allegations that the minor was "involuntarily addicted to and 'completely subliminally intoxicated' by the extensive viewing of television violence"); *Waller v. Osborne*, 763 F. Supp. 1144, 1145–46, 1152 (M.D. Ga. 1991) (rejecting negligence claim by parents of a child who committed suicide after "repeatedly" listening to "an Ozzy Osbourne cassette tape which contained audible and perceptible lyrics that directed [their son] to take his own life" because the "alleged wrongful acts" were based on

7

"dissemination of protected speech"), *aff'd*, 958 F.2d 1084 (11th Cir. 1992) (Table); *Watters*, 904 F.2d at 379, 381 (rejecting argument that manufacturer of Dungeons & Dragons had "duty to warn that the game could cause psychological harm in fragile-minded children").  Even outside of the publishing context, companies have no general duty to prevent "addiction."  *E.g.*, *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 151 n.12 (2018) (finding no duty owed to Plaintiffs despite "the contention that smartphones are addictive").

These decisions, which reach the same result regardless of the medium of communication, recognize that a duty to limit engagement would have "no valid basis[,] … be against public policy," and provide "no recognizable standard for [any publisher] to follow."  *Zamora*, 480 F. Supp. at 202. Plaintiffs' allegations here also pose sweeping questions ranging from what content would facilitate "dangerous or risky behavior" to what constitutes "excessive use."  SAC ¶ 916, 922.[4]  Those questions are ill-fit for judicial resolution and the answers to them depend on individual circumstances, not broad generalizations.  Plaintiffs offer no support for why this Court should not follow this well-established precedent.

### b)      Plaintiffs' Allegations of Harm by Third-Party Bad Actors Are Not Cognizable.

Plaintiffs' second category of alleged breaches seeks to impose liability for Defendants' alleged failure to prevent third parties from causing injury via their services.  *See* SAC ¶¶ 929(c), 930(g); *see also* SAC ¶ 916 (asserting a duty "to protect Plaintiffs from unreasonable risk of injury").  In particular, Plaintiffs allege that Defendants breached a duty to prevent "the use of their platforms by sexual predators to victimize, abuse, and exploit youth users,"  SAC ¶ 930(g), by allegedly "[i]ncluding features and algorithms" in their services "that unreasonably expose[] youth users to sexual predators and sexual exploitation, including features that recommend or encourage youth users to connect with adult strangers on or through the platform," *id.* ¶ 929(c).  Again, Section 230 bars these allegations,

---

[4] To the extent Plaintiffs assert that Defendants are liable for exposure to material that encourages "dangerous or risky behavior," Section 230 also bars those theories as well.  *E.g.*, *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 281 (E.D. Pa. 2022), *appeal docketed*, No. 22-3061 (3d Cir. Nov. 10, 2022).

and Plaintiffs have failed to plausibly allege the kind of misfeasance by Defendants that could give rise to a duty to prevent third-party misconduct.

As this Court explained, Section 230 bars claims for "[r]ecommending minor accounts to adult strangers"—in other words, using algorithms to connect users—because "user accounts or profiles are third-party 'content[,]'" and "the recommendation function challenged is indistinguishable from publishing." *In re Soc. Media*, 2023 WL 7524912, at *13–14. Section 230 likewise bars claims for "allowing private content," the "features" Plaintiffs point to for allegedly connecting users with adult strangers. *Id.* And it bars claims based on Defendants allegedly "[p]ublishing geolocating information for minors," because "limiting publication of geolocation data provided by users to be published by the site inherently targets the publishing of third-party content and would require defendants to refrain from publishing such content." *Id.* at *13.[5] In short, this Court (and others) have already ruled out the theories underlying any general negligence claim based on any alleged duties to prevent third parties from using the communications features of Defendants' services to abuse or exploit minor users. Such claims based on such third-party harm are at the heart of Section 230 immunity. *E.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 93–95 (Tex. 2021); *L.W. ex rel. Doe v. Snap Inc.*, 2023 WL 3830365, at *5 (S.D. Cal. June 5, 2023).

More broadly, this Court has held that "Defendants do not [] owe plaintiffs a duty to protect them from harm from third party users of defendants' platforms." *In re Soc. Media*, 2023 WL 7524912, at *39. "Duty is typically not imposed for nonfeasance," and none of the limited exceptions to that rule applies. *Id.* at *36.[6] Plaintiffs have "concede[d] that no qualifying special relationship exists

_____

[5] Defendants' Terms of Service prohibit criminal activity. As this Court observed: "Defendants note that their Terms of Service prohibit criminal activity and therefore their platforms cannot be said to encourage such activity such as by third parties who caused harm to plaintiffs here. *See* [Priority MTD] at 37–38 n.18 (referring to various defendants' online terms of service or similar policies, user contracts, or disclosures)." *In re Soc. Media,* 2023 WL 7524912, at *38 n.72. In particular, the Court found that "plaintiffs' MAC cites to and thereby incorporates by reference defendant TikTok's Terms of Service which do prohibit criminal activity, including with respect to minors. *See* MAC ¶ 644." *Id.*

[6] Plaintiffs' allegations premised on Defendants' nonfeasance should be dismissed in whole for this reason. *See* SAC ¶ 930 (alleging "[e]ach Defendant has breached its duties of care owed to Plaintiffs through its nonfeasance, failure to act, and omissions …").

9

here." *Id.* at *35 & n.65 (citing Oct. 27, 2023 Hrg Tr. 132:9–11).  And the "generality" of Plaintiffs'

allegations is still nowhere near enough to plausibly allege that Defendants engaged in misfeasance.[7]

*Id.* at *38.

There is no reason to chart a different course here.  Most states limit "special relationships" to

certain defined relationships, often when one party is *physically* dependent on another party or subject

to that party's control.  Restatement (Second) of Torts § 314A (1965); Restatement (Third) of Torts:

Phys. & Emot. Harm §§ 37, 40 (2012).  Without a special relationship, Plaintiffs cannot plead a duty

(much less a "heightened" duty).  *See* Restatement (Second) § 314A, Restatement (Third) §§ 37, 40;

*see also M. L. v. Craigslist Inc.*, 2020 WL 6434845, at * 13 (W.D. Wash. Apr. 17, 2020), *report and

recommendation adopted*, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020) ("[P]laintiff cites no

authority, and the undersigned is aware of none, supporting the proposition that craigslist has a

general[] duty to ensure that their website does not endanger minors."); *contra* SAC ¶ 927, 928.  The

mere fact that someone uses an online service cannot create a "special relationship."  As Plaintiffs

acknowledge, *millions* or even *billions* of users can use Defendants' services.  *See, e.g.*, SAC ¶¶ 158,

187, 210, 449, 554, 703.

In its prior Order, this Court held that the First Amended Master Complaint does not plausibly

allege that Defendants engaged in any misfeasance by "making the plaintiff's position worse."  *In re

Soc. Media*, 2023 WL 7524912, at *39; *Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at

---

[7] Plaintiffs have not and cannot adequately plead misfeasance, but even if they could, Plaintiffs' claims
fail outright under four states laws (Maryland, Mississippi, Rhode Island, and Virginia), none of which
recognize a misfeasance exception to the general rule rejecting a duty to prevent third-party harm.  *See,
e.g.*, *Doe v. Uber Techs., Inc.*, 2021 WL 2382837, at *3 (D. Md. June 9, 2021) (rejecting plaintiffs'
argument that his "claim c[ould] survive even absent a special relationship because misfeasance exists,"
as that "broader conception of duty with respect to third-party harms has … been emphatically rejected
by the Maryland Court of Appeals" (quotation marks omitted)); *Holland v. Murphy Oil USA, Inc.*, 290
So. 3d 1253, 1256 (Miss. 2020) ("The duty to control the conduct of others is a narrow one," with
limited exception for a "special relationship"); *Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 658
(R.I. 2009) (recognizing only a "special relationship" exception to the "general rule" that there is "no
duty to control a third party's conduct"); *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d
460, 468 (Va. 2019) (recognizing only two "rare circumstances" where a duty arises to protect against
third party harm: "express communication" describing an undertaking or where a "special relationship"
exists (quotation marks omitted)).

10

*12 (N.D. Cal. Nov. 26, 2017) (quoting *Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 49 (1975)); *see also* Restatement (Second) § 302B; Restatement (Third) § 37.  In their Second Amended Master Complaint, Plaintiffs offer no new allegations of misfeasance to undermine that holding.  Misfeasance requires *affirmative wrongdoing* on the part of the defendant.  Merely enabling or even unintentionally facilitating harm by a third party does not amount to misfeasance, and no duty is triggered in those circumstances.  *See Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1008 (C.D. Cal. 2022) ("[T]hat an organization or business 'creates an opportunity for criminal conduct against a plaintiff … does not constitute misfeasance triggering a duty to protect.'" (quoting *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 428–29 (2022))); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *5 (C.D. Cal. Feb. 3, 2023) (holding that Snap's "creation and operation of a communication platform … d[id] not by itself create a risk of third-party misuse as a matter of law"—even where plaintiffs received threatening messages via Snap—because "the alleged facts d[id] not give rise to a legal duty on the part of Defendant to protect Plaintiffs from the conduct of third parties on its platform").  Plaintiffs have not plausibly alleged any such affirmative misconduct here.

> ### c)      There Is No Legal Basis for Imposing a Duty to Alter Parental Controls, Age Verification, or CSAM Reporting Processes.

Plaintiffs' final category of alleged breaches seek to impose on Defendants duties to implement more robust age-verification procedures, parental controls, and abuse-reporting features for minor users and parents and guardians.  SAC ¶¶ 929 (e), (f), 930 (a), (b), (h).  These allegations, like those discussed above, are in several respects directly linked to harms allegedly flowing from Defendants' role as the publisher of third-party content.  They, therefore, are barred by Section 230 under this Court's prior order.  What is more, Plaintiffs do not identify any legally cognizable common-law tort duty requiring Defendants to verify the age of users of their services, affirmatively notify parents about minors' uses of their services, or allow non-users to report abusive material.  These theories, accordingly, fail.

> ### (1)      Plaintiffs' Claim Is Barred to The Extent It Is Premised on Harms from Publishing Third-Party Content.

Plaintiffs cannot base a general negligence claim on allegations about purportedly inadequate age verification, parental controls, or abuse-reporting features that are premised on harms allegedly

11

caused by Defendants' publication of third-party content. *Cf. In re Soc. Media*, 2023 WL 7524912, at *12 (permitting age verification claims premised on harms "distinct from [those] caused by consumption of third-party content on defendants' platforms").  But an examination of the Second Amended Master Complaint reveals that Plaintiffs do just that.  Plaintiffs do not allege that purportedly insufficient age verification, parental controls, and abuse-reporting mechanisms are harmful in and of themselves.  (For example, Plaintiffs allege no harm stemming from the public's alleged inability to report content without first signing into Defendants' services. *See* SAC ¶ 930(h)).  Rather, they allege that these purported deficiencies are actionable because they allow Plaintiffs to be exposed to harmful third-party content.

For example, Plaintiffs allege that "without age verification, identity verification, or parental consent, children of all ages can create a Facebook or Instagram account, and immediately become *subject to the products' various addictive and harmful features*."  SAC ¶ 333 (emphasis added); *see also, e.g.*, *id.* ¶ 721 ("YouTube's defective age verification feature means that Google fails to protect children *from other product features* discussed below that Google knows to be harmful to kids" (emphasis added)); *id.* ¶ 566 (alleging that "defective age verification and parental control procedures, [] allow children under 13 unfettered access to the app[]").

Indeed, the Second Amended Master Complaint repeatedly connects the absence of age verification and parental controls to *specific* alleged features (and associated harms) involving third-party content that this Court has expressly held are protected by Section 230—including connections between adults and minors; autoplay of content; algorithmic content recommendations; and content ephemerality, all of which are barred by Section 230.  Plaintiffs thus allege that "flawed age verification" and "wholly inadequate and ineffective parental controls" "help sexual predators connect with children," *id.* ¶ 134; *see also id.* ¶ 141, by, among other things, allowing adult users to lie about their ages and connect with children. *Id.* ¶ 400 ("the absence of effective age verification measures, as described above, allows predators to lie about their ages and masquerade as children, with obvious dangers to the actual children on Meta's products"); ¶ 466 (same as to Snap); ¶ 576 (same as to TikTok).  Plaintiffs also allege that inadequate age verification on YouTube allows users to be exposed

to YouTube's "autoplay feature" (which is otherwise disabled for users 13–17).  *Id.* ¶ 722.  Similarly, Plaintiffs allege that "by failing to age-restrict its Discover feature, Snapchat's algorithm has recommended inappropriate sexual content to adolescent users."  *Id.* ¶ 523.  Plaintiffs further allege that "Snap's parental controls are ill-equipped to mitigate the risks" allegedly posed by content ephemerality, as "parents are unable to view a Snap's content."  *Id.* ¶ 503; *see id.* ¶ 522 (same).  And as to reporting features, Plaintiffs allege "that the inability to report illegal images as contraband *delays their removal* and results in repeated re-victimization" as the images remain posted.  *Id.* ¶ 151 (emphasis added).

Under established law, Section 230 also bars these kinds of allegations—which use the alleged lack of effective safety features for minors, including age verification, to target the publication of third-party content.  *See, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 420–21 (5th Cir. 2008) (claims barred by Section 230 where plaintiff "assert[ed] that they only [sought] to hold MySpace liable for its failure to implement measures that would have prevented" sexual predators from communicating with minors on its website, including "age verification software," because such "allegations are merely another way of claiming that MySpace was liable for publishing the communications"); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590 (2d Cir. 2019) (claims barred by Section 230 because "Grindr's alleged lack of safety features is only relevant to [plaintiff's] injury to the extent that such features would make it more difficult for his former boyfriend to post impersonating profiles or make it easier for Grindr to remove them" (quotation marks omitted)); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1124 (N.D. Cal. 2016) ("[T]he decision to furnish an account, or prohibit a particular user from obtaining an account, is itself publishing activity."), *aff'd*, 881 F.3d 739 (9th Cir. 2018); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 574–75 (2009) (tort claims based on a duty to restrict access to minors' MySpace profiles barred by Section 230).

Likewise, by alleging that Defendants have a duty to create parental controls that would "notify parents when their child's use becomes excessive" and/or "exposes the child to harmful content," Plaintiffs would overtly, and impermissibly, require Defendants to monitor and review third-party content.  *Id.* ¶ 351; *accord In re Soc. Media*, 2023 WL 7524912, at *10 ("The Ninth Circuit has also

indicated" that Section 230 bars "liability for any claim that would 'necessarily require an internet company to monitor third-party content'" (quoting *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019))); *Bride v. Snap Inc.*, 2023 WL 2016927, at *5 (C.D. Cal. Jan. 10, 2023) (design defect claim barred as "[i]mposing such a duty would 'necessarily require [Snap] to monitor third-party content'" (quoting *HomeAway.com, Inc.*, 918 F.3d at 682), *appeal docketed*, No. 23-55134 (9th Cir. Feb. 14, 2023).  And while the court held that a claim regarding abuse reporting would not be barred to the extent it "does not require [Defendants] to remove the content," *In re Soc. Media*, 2023 WL 7524912, at *13, Plaintiffs seek to impose obligations on Defendants to avoid "delays" in the "removal" of content.  SAC ¶ 151.

Separate and apart from Section 230, the First Amendment also bars Plaintiffs' attempt to assert a general negligence claim based on the theory that Defendants are legally required to implement robust age verification and broad parental controls that would, among other things, require parents to be notified when their children may be exposed to "excessive" or "harmful" content.  Indeed, courts (including in a recent case in this District) have repeatedly held that the First Amendment does not permit legislative efforts to require social media services and other websites to implement age verification requirements and similar parental control obligations.  *See NetChoice, LLC v. Bonta*, 2023 WL 6135551, at *10–18 (N.D. Cal. Sept. 18, 2023) (preliminarily enjoining California's Age Appropriate Design Code, which required "age estimation" to protect children's privacy), *appeal docketed*, No. 23-2969 (9th Cir. Oct. 23, 2023); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *1 (W.D. Ark. Aug. 31, 2023) (preliminarily enjoining Arkansas law that would have required "social media companies to verify the age of all account holders who reside in Arkansas" and allow minors to use their services only with verified parental consent).[8]

The Court's prior Order is consistent with this application of Section 230 and the First Amendment (and the decisions reached by other courts).  In allowing certain product liability allegations regarding age verification and parental controls to evade dismissal, the Court found that the

---

[8] Insofar as the Court believes that it has already rejected this First Amendment argument, Defendants preserve it for appeal.

surviving allegations were permissible because they were "distinct from" harm caused by publication of third-party content. *In re Soc. Media*, 2023 WL 7524912, at *12. At the same time, the Court took care to explain that a claim that Defendants "should have used age-verification to then limit platform access to children like plaintiff," *would* "impact [the defendant's] publication of third-party content" and thus be barred by Section 230. *Id.* (discussing *Doe v. MySpace*). Plaintiffs' negligence claim falls on the wrong side of that line. Their allegations that the alleged deficiencies in age verification and parental controls allow minors alleged "unfettered access to the app," SAC ¶ 566, allowed adults to create accounts pretending to be minors, exposed minors to autoplay or algorithmic content recommendations, and prevented adults from being able to view ephemeral content—all are tied to the publication of third-party content.

In short, to the extent that Plaintiffs' age verification, parental controls, and abuse-reporting allegations in support of their general negligence claim are intrinsically tied to third party content, and under this Court's ruling and established law, such allegations are barred by Section 230 and the First Amendment.

### (2)   Plaintiffs Fail to Plead a Duty Related to Age Verification, Parental Controls, and Reporting Features.

Even if this category of allegations is not barred, it still fails to support a general negligence claim. The law has never imposed the kind of expansive and unprecedented duty that Plaintiffs advocate—namely, a duty to create different age verification procedures, parental controls, and CSAM reporting features. Nor is there any basis to create such a duty out of whole cloth. Plaintiffs seek to use common law negligence principles to argue that Defendants have a legal duty to reliably verify the age of every user of their services, implement extensive new parental controls (including affirmatively notifying parents of every minor user when their children are engaging in "excessive" use or being exposed to potentially "harmful" content), and allow non-users to report abusive material without having to create an account—and that the failure to do so would entitle Plaintiffs to damages. SAC ¶¶ 929 (e), (f), 930 (a), (b), (h); *see also* SAC ¶ 916 (duty related to "development" and "management" of platform). This is not a permissible application of state common law—particularly by a federal court

required to "take the law as [it] find[s] it." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001).  It would be a wholly unwarranted extension of it.

No common law court has *ever* recognized these kinds of duties.  Because Plaintiffs bear the burden of adequately pleading the existence of such a duty, that should be the end of the inquiry. Although few cases address age verification, parental controls, or CSAM reporting specifically, courts have consistently refused efforts to impose a duty of care between online services and their users— much less a duty to affirmatively modify or create features for those online services.  *Estate of B.H.*, 2022 WL 551701, at *3–4 & n.7; *Craigslist Inc.*, 2020 WL 6434845, at *13; Civil Minutes at 7, *Jane Doe No. 14 v. Internet Brands, Inc.*, No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016), ECF No. 51 (website had "no duty" "to warn … users that they were at risk of being victimized by [a] rape scheme").

And for good reasons: recognizing such a duty would chill expression, a significant constraint in tort (and constitutional) law—which courts decline to impose.  *See, e.g.*, *Estate of B.H.*, 2022 WL 551701, at *3 ("California courts have declined to find a duty as a matter of law under the *Rowland* factors for claims implicating expression.").  As prominent speech forums, Defendants' services are "integral to the fabric of our modern society and culture" and among "the most important places … for the exchange of views" on "topics 'as diverse as human thought.'"  *Packingham v. North Carolina*, 582 U.S. 98, 104, 107, 109 (2017) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 868 (1997)).  Courts considering how to balance attempts to impose expansive tort liability against "the First Amendment and the values embodied therein" routinely err on the side of limiting liability.  *E.g.*, *McCollum v. CBS, Inc.*, 202 Cal. App. 3d 989, 1004 (1988) ("The countervailing policies which arise out of the First Amendment have a substantial bearing upon the issue whether there should be imposed upon defendants the exposure to liability of the kind for which plaintiffs contend." (cleaned up)); *see also* Priority MTD 28–30 (collecting cases).  For instance, the Ninth Circuit has declined to impose tort law duties against publishers, reasoning that "[w]ere we tempted to create this duty, the gentle tug of the First Amendment and the values embodied therein would remind us of the social costs."  *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1037 (9th Cir. 1991).

That imposing this sort of unprecedented duty would chill speech is clear from the many cases enjoining legislative attempts to alter or implement parental controls on First Amendment grounds. For instance, *Bonta* preliminarily enjoined enforcement of the California Age-Appropriate Design Code Act, which would have "require[d] businesses to estimate the age of child users and provide them with a high default privacy setting, or forgo age estimation and provide the high default privacy setting to all users." 2023 WL 6135551, at *8.  As *Bonta* explained, implementing such verification would potentially require invasive data collection from adults as well as minors, threatening a "vast chilling effect" on speech.  *Id.*; *see also Griffin*, 2023 WL 5660155, at *12–15, *17–21 (age-verification requirement for social media websites preliminarily enjoined as likely violation of First Amendment rights of both minors and adults); *accord Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 802 (2011) (invalidating state law limiting minors' access to violent video games notwithstanding claim that law was "justified in aid of parental authority").

Even if this Court does not decide whether the First Amendment bars these claims, these principles counsel strongly against creating a novel common law tort duty to adopt specific measures that, when imposed via legislation, courts have repeatedly found unconstitutional.[9]  *Griffin*, 2023 WL 5660155; *Bonta*, 2023 WL 6135551; *see also Brown*, 564 U.S. 786; *Se. Booksellers Ass'n v. McMaster*, 371 F. Supp. 2d 773, 782–83 (D.S.C. 2005) (collecting cases where statutory age verification provisions "create[d] First Amendment problems").

\* \* \*

The most that Plaintiffs may point to in support of their position is the Judicial Council Coordination Proceeding ("JCCP"), which overruled Defendants' demurrer on general negligence, concluding that "Plaintiffs seek to hold Defendants liable for their conduct in manipulating Plaintiffs' engagement with social media platforms separate from the content of those platforms."  *Soc. Media Cases*, 2023 WL 6847378, at *28 (Cal. Super. Oct. 13, 2023).  But that is at odds with both federal

---

[9] Defendants preserve their argument that the First Amendment bars Plaintiffs' negligence claim insofar as it seeks to impose a duty on Defendants to verify the age of all their users and implement onerous new parental controls.

courts' pleading requirements in general and this Court's Order barring large portions of Plaintiffs' theories in particular.  The JCCP Court applied what is understood to be California's very different pleading and demurrer rules, which allow plaintiffs considerably more leeway. *Id.* at \*8–9; *see Thomas v. Regents of Univ. of Cal.*, 2023 WL 8248249, at \*12 n.12 (Cal. Ct. App. Nov. 29, 2023) (noting the differences in "the standards governing motions to dismiss in federal court and demurrers in state court").  And unlike this court, the JCCP Court did not determine whether any of Plaintiffs' particular allegations would be barred by Section 230 and the First Amendment. *Soc. Media Cases*, 2023 WL 6847378, at \*9.  Thus, the JCCP Court never considered whether once those allegations were stripped away, Plaintiffs had plausibly alleged a duty.  Finally, the JCCP Court applied California's substantive law, which in its view imposes a general statutory duty that is not present in most states. *Id.* at \*22–24 (discussing role of statutory duty under Cal. Civ. Code § 1714).

Under this Court's Order and assessed against the applicable pleading standards in federal court, Plaintiffs' general negligence claim as set out in the Second Amended Master Complaint fails for lack of duty.  Each of the duties that Plaintiffs have alleged are barred by Section 230 (or the First Amendment) or are not cognizable as a matter of state common law—or both.  To allow Plaintiffs to proceed based on such alleged duties would be at odds with this Court's prior ruling, contrary to established law, and amount to a dramatic expansion of the state law not well suited to the role of an MDL court.

### 2.     Plaintiffs Fail to Adequately Allege Proximate Causation of Third-Party Misconduct.

Finally, Plaintiffs' negligence allegations premised on third-party misconduct fail to state a claim because Plaintiffs have not sufficiently alleged proximate causation.[10] *See* 65 C.J.S. Negligence § 194 ("Proximate causation is a necessary element of ordinary negligence and cannot be presumed by a court." (collecting cases)).

---

[10] In its Order, this Court did "not address the sufficiency of plaintiffs' allegations of causation relative to harms purportedly caused by third parties using defendants' platforms." *In re Soc. Media*, 2023 WL 7524912, at \*39 n.77.  This analysis was unnecessary because "the MAC does not sufficiently allege misfeasance such that a duty should attach for third party conduct." *Id.* at \*39.

Courts have repeatedly held that plaintiffs cannot plead around the requirement of proximate causation by arguing that their injuries are attributable to defendants' failure to implement design changes that would have prevented bad actors from using their platforms, as Plaintiffs try to do here. *See, e.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 620 (6th Cir. 2019) (no proximate cause where plaintiff alleged Twitter could have used "a content-neutral algorithm" to "prevent ISIS from rapidly connect[ing] and reconnect[ing] with its supporters" on Twitter (quotation marks omitted)); *Modisette*, 30 Cal. App. 5th at 140 (same where plaintiff alleged that "Apple had wrongfully failed to implement in the iPhone 6 Plus a safer alternative design that would have automatically prevented drivers from utilizing FaceTime while driving at highway speed").

That a small fraction of users abuse Defendants' services does not make Defendants the proximate cause of harms flowing from these third parties' misconduct. *See, e.g.*, *Crosby*, 921 F.3d at 625–26 ("With the 'highly interconnected' nature of social media, the internet, and 'modern economic and social life'—we expect Defendants' websites to cause some 'ripples of harm' that would 'flow far beyond the defendant's misconduct,'" but "Defendants do not proximately cause all these potential ripples." (quoting *Fields v. Twitter, Inc.*, 881 F.3d 739, 749 (9th Cir. 2018)); *id.* at 625 & n.4 ("Courts appear to be unanimous" that "Defendants do not proximately cause everything that an individual may do after viewing th[e] endless [third-party] content."). Ruling otherwise would be like finding a cellular service or email provider liable for a criminal conspiracy because bad actors used cell phones or email to perpetrate their crimes, and just as unjustifiable. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 499 (2023) ("[I]t might be that bad actors like ISIS are able to use platforms like defendants' for illegal—and sometimes terrible—ends. But the same could be said of cell phones, email, or the internet generally. Yet, we generally do not think that internet or cell service providers incur culpability merely for providing their services to the public writ large.").[11]

---

[11] This Court has stated that *Taamneh* "considered 'the typical limits on tort liability,'" but not "the scope of tort liability in the *products* context here at issue." *In re Soc. Media*, 2023 WL 7524912, at *36 n.69 (quoting 598 U.S. at 503). Defendants maintain that the reasoning in *Taamneh* is relevant to Defendants' online services just as it was to Facebook, Twitter, and Google in that case. Further, "the typical limits on tort liability" are relevant to Plaintiffs' negligence claim, as distinct from product liability claims.

19

Recognizing "the seemingly boundless litigation risks that would be posed by extending" liability to online services in these circumstances, *Fields*, 881 F.3d at 749, courts have repeatedly found that plaintiffs have not sufficiently pled or proved proximate causation where plaintiffs attempt to hold online services liable for third-party misconduct because they provided communication tools.[12] *See, e.g.*, *Crosby*, 921 F.3d at 620, 625–27 (no proximate cause for "state law claims" (including common law negligence) where defendants allegedly "provid[ed] social media platforms to ISIS" that ISIS used to post graphic and threatening content and to "connect[] and reconnect[] with its supporters" (quotation marks omitted)).

Further, even where foreseeability may be considered as part of proximate causation, specific acts of misconduct by third-party bad actors are not legally foreseeable in the context of online services with hundreds of millions or billions of users engaging in hundreds of millions or even billions of interactions per day on the platforms, even if it is generally foreseeable some potential misuse might occur. *See, e.g.*, *Crosby*, 921 F.3d at 625 ("[Twitter] do[es] not proximately cause everything that an individual may do" on Twitter nor can Defendants "foresee how every viewer will react" on the service). *Cf. Modisette*, 30 Cal. App. 5th at 155 (Even assuming it was generally foreseeable that "use of the iPhone while driving" could result in car collision, "the gap between Apple's design of the iPhone and the [plaintiffs'] injuries is too great for the tort system to hold Apple responsible."). More generally, courts refuse to find criminal and other intentionally harmful acts foreseeable. *See, e.g.*, *Wiener v. Southcoast Childcare Ctrs., Inc.*, 32 Cal. 4th 1138, 1149–50 (2004).

Put simply, because Defendants bear no legal responsibility for the allegations about third-party bad actors that make up in this category, Plaintiffs fail to state a claim for negligence premised on third-party misconduct.

---

[12] The numerous decisions rejecting liability for merely providing interactive communication services that wrongdoers then misuse, causing injury, are consistent with the established principle that a third party's intervening criminal act is a superseding cause of the alleged harm, breaking any causal chain. *See, e.g.*, *Kane v. Hartford Accident & Indem. Co.*, 98 Cal. App. 3d 350, 360 (1979); *McKethean v. Wash. Metro. Area Transit Auth.*, 588 A.2d 708, 716–17 (D.C. 1991); *Everett v. Carter*, 490 So. 2d 193, 195 (Fla. Dist. Ct. App. 1986).

### B.    Plaintiffs' CSAM Claims Fail (Counts 12 and 14, against Meta only).

Counts 12 and 14 assert claims under 18 U.S.C. § 2255, alleging that Meta violated two criminal CSAM statutes—18 U.S.C. §§ 2252 and 2252A(a)(5)(B).  Section 230 bars these claims because they seek to hold Meta liable for hosting or disseminating third-party content that Meta did not create or develop.  *See Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023).  Independently, the claims fail because Plaintiffs have not plausibly alleged that Meta *itself* committed a CSAM crime, and 18 U.S.C. § 2255 does not permit secondary liability.

### 1.    Section 230 Bars Plaintiffs' CSAM Claims.

Established Section 230 case law, as outlined in the Court's prior ruling, categorically bars these claims.  The Second Amended Master Complaint alleges Meta violated 18 U.S.C. §§ 2252 and 2252A(a)(5)(B) based on its alleged receipt, possession, and/or transmission of sexually explicit materials involving minors.  *See* SAC ¶¶ 1040–42 (18 U.S.C. § 2252); *id.* ¶¶ 1058–59 (18 U.S.C. § 2252A(a)(5)(b)).  The Ninth Circuit and other courts have applied Section 230 to bar 18 U.S.C. § 2255 claims like those Plaintiffs brought here.  *See Doe #1*, 2023 WL 3220912, at *2 (alleged violation of 18 U.S.C. § 2252A); *accord M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5–6 (M.D. Fla. Jan. 10, 2022) (alleged violation of 18 U.S.C. § 2252A), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 202); *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1045, 1054–55 (E.D. Mo. 2011) (alleged violation of criminal statutes enumerated in 18 U.S.C. § 2255(a)); *Doe v. Bates*, 2006 WL 3813758, at *2, *5 (E.D. Tex. Dec. 27, 2006) (alleged violation of 18 U.S.C. § 2252A).

*Doe v. Twitter* is directly on point.  There, the plaintiffs asserted a claim under 18 U.S.C. §§ 2252A and 2255 based on allegations that "Twitter was notified of the CSAM material depicting [plaintiffs] on its platform," "initially refused" to remove it, continued to "knowingly receive[], maintain[], and distribute[ it]," and "profit[ted] from doing so."  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 894–95 (N.D. Cal. 2021) (quotation marks omitted), *aff'd in relevant part*, 2023 WL 3220912 (9th Cir. May 3, 2023).  The Ninth Circuit held that "[b]ecause the complaint targets 'activity that can be boiled down to deciding whether to exclude material that third parties seek to post online,' such activity 'is perforce immune under section 230.'"  *Doe #1*, 2023 WL 3220912, at *2 (quoting *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008)).

This case is no different.  The basis of Plaintiffs' claims is that Meta allegedly *disseminated*, *distributed*, or *displayed* unlawful CSAM that was created and posted by third parties through features that this Court has specifically held are protected by Section 230—including algorithmic recommendation of content or accounts (*e.g.*, SAC ¶¶ 88, 114, 125–32, 267, 394–95, 399, 509–12, 523, 560, 597, 758–59; *id.* ¶ 391B (NM AG ¶¶ 69-72, 80, 92-93, 131, 155, 167, 172, 174, 176-77, 181-82, 188-91, 214, 248, 263)) and private messaging features (*e.g.*, SAC ¶¶ 404, 530, 666; *id.* ¶ 391B (NM AG ¶¶ 70, 111-13, 117)).  That is the essence of publisher liability.  *See In re Soc. Media*, 2023 WL 7524912, at *13–16 (allegations regarding "[u]se of algorithms" and "private messaging" "are barred by Section 230"); *cf. Twitter, Inc.*, 555 F. Supp. 3d at 929 (Section 230 barred claim that Twitter enabled the distribution of CSAM through features like algorithms and the ability to create multiple accounts); *Fields*, 217 F. Supp. 3d at 1128 (Section 230 "bar[s] claims predicated on a defendant's transmission of non-public messages").

### 2. Independently, Plaintiffs Fail to State a Claim Under Sections 2252 and 2252A(a)(5)(B).

Plaintiffs' CSAM claims independently fail because the Second Amended Master Complaint fails to allege that Meta violated either 18 U.S.C. §§ 2252 or 2252A(a)(5)(B).  Those statutes make it unlawful to "knowingly transport[]," "ship[]," "receive[]," "distribute[]," or "reproduce" visual depictions of "a minor engaging in sexually explicit conduct," 18 U.S.C. § 2252(a)(1)–(2), and to "knowingly possess[], or knowingly access[] with intent to view, any … material that contains an image of child pornography" that was produced or distributed through interstate or foreign commerce, *id.* § 2252A(a)(5)(B).

Plaintiffs' claims are largely conclusory, with few supporting factual allegations.  What little Plaintiffs do allege falls far short of plausibly suggesting that Meta violated these criminal statutes.

*First*, Plaintiffs do not allege that Meta had actual knowledge that it received or possessed any instance of CSAM (or engaged in any other enumerated activity), much less that Meta knew of CSAM featuring Plaintiffs.

The Supreme Court has held that, to be criminally liable under Section 2252, the defendant must know that: (1) it engaged in one of the prohibited actions; (2) the material was sexually explicit;

and (3) the material featured a minor.  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); *accord United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998) ("The substantive scienter element of § 2252 contains two sub-parts.  First, the government must show that the defendant knew that … the materials portrayed sexually-explicit conduct and, second, that he knew that the materials depicted minors engaged in such conduct.").  Courts have extended this knowledge requirement to other federal CSAM statutes, including Section 2252A(a)(5)(B).  *See United States v. Moreland*, 665 F.3d 137, 141 (5th Cir. 2011) (2006); *see also United States v. Dean*, 635 F.3d 1200, 1209 (11th Cir. 2011) (18 U.S.C. § 1466A(a)); *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1007 (9th Cir. 2015) (18 U.S.C. § 2252(a)(4)(B)).

At most, Plaintiffs allege that Meta was generally aware that unspecified third parties had posted unspecified CSAM somewhere on its services.  *See, e.g.*, SAC ¶¶ 143, 145, 146, 417, 523, 654, 778; *id.* ¶ 391B (NM AG ¶¶ 237–42, 246–48).  That is insufficient.  *See, e.g.*, *Tilton v. Deslin Hotels, Inc.*, 2007 WL 3072374, at *5 (M.D. Fla. Oct. 19, 2007) ("appearance of [minor plaintiff's] image on Defendants' website" failed to establish 18 U.S.C. §§ 2252(a) and 2252A(a) violations because "Defendants were not informed of her age or likeness prior to her filing this lawsuit"), *aff'd sub nom. Tilton v. Playboy Ent. Grp., Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009); *Doe v. Fry*, 2012 WL 13102263, at *5 (M.D. Fla. Apr. 9, 2012) (same).  Cases permitting CSAM claims against websites have required much more.  *See Doe #1 v. MG Freesites, Ltd.*, 2022 WL 407147, at *21 (N.D. Ala. Feb. 9, 2022) (plaintiffs alleged defendants "actively control which videos are posted," "review every video," and "*retitle videos indicating CSAM but leave the videos available for distribution*" (emphasis added)); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal. 2021) (plaintiff alleged that "Defendants' moderators knowingly *reviewed, approved, and featured* [CSAM] videos on their platforms, including videos of Plaintiff." (emphasis added)).

*Second*, Plaintiffs fail to allege that Meta engaged in any of the prohibited actions relating to CSAM.  Rather, Plaintiffs' theory is that Meta's services allegedly make it easier for *third-party* predators to create, view, and share CSAM (*e.g.*, SAC ¶¶ 133, 145–46, 541, 804; *id.* ¶ 391B (NM AG ¶¶ 69–70, 80, 88, 90, 92, 161, 167)), and that Meta allegedly does not do enough to detect, remove, or report CSAM (*e.g.*, SAC ¶¶ 135, 415, 419, 800; *id.* ¶ 391B (NM AG ¶¶ 83, 157, 167–93)).  Broad-

based communications services do not commit *criminal* violations of federal CSAM laws whenever third-party users (impermissibly and in violation of those services' rules[13]) post such material on the services' platforms.

Unlike other civil liability statutes, such as 18 U.S.C. § 1595,[14] which permits certain civil claims against knowing beneficiaries of sex trafficking, Section 2255 does not provide for vicarious or other forms of secondary civil liability.  *See* 18 U.S.C. § 2255; *see, e.g.*, *Doe v. City of Gauley Bridge*, 2022 WL 3587827, at *13 (S.D. W. Va. Aug. 22, 2022) ("the Court finds that [] Congress did not intend to permit a theory of vicarious liability under § 2255"), *appeal dismissed*, No. 22-2025 (4th Cir. Aug. 31, 2023); *Upton v. Vicknair*, 2021 WL 2635460, at *5 (E.D. La. June 25, 2021) ("a claim under § 2255 is limited to a defendant [who] committed the acts described in any of the listed offenses" (cleaned up)), *revised on other grounds*, 2023 WL 204333 (E.D. La. Feb. 16, 2023); *Doe v. Hansen*, 2018 WL 2223679, at *5 (E.D. Mo. May 15, 2018) ("the civil remedy provision of [Section 2255] does not permit claims for secondary or vicarious liability"), *aff'd*, 920 F.3d 1184 (8th Cir. 2019); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281–82 (D. Conn. 2013) ("§ 2255 does not provide for secondary liability").  Thus, to the extent Plaintiffs' Section 2255 claims rest on a theory that Meta facilitated CSAM crimes by providing a communications service that third-party criminals used to create, view, or disseminate CSAM, those claims fail as a matter of law.

---

[13] *See* SAC ¶ 391A (MDL AG ¶¶ 40, 169) (citing Meta's terms of service); *Child Sexual Exploitation, Abuse and Nudity*, Meta (2023), https://transparency.fb.com/policies/community-standards/child-sexual-exploitation-abuse-nudity/ (Facebook does "not allow content or activity that sexually exploits or endangers children."); *Terms and Policies: Community Guidelines*, Instagram (2023), https://help.instagram.com/477434105621119 (Instagram does not allow "sharing sexual content involving minors"); *see also Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022) (documents "referenced, mentioned, or quoted" in a complaint are "incorporated by reference"); *In re Soc. Media*, 2023 WL 7524912, at *38 n.72 (noting that TikTok's terms of service were incorporated by reference in the MAC).

[14] Plaintiffs have withdrawn their claim under 18 U.S.C. § 1595.  *See* SAC ¶¶ 1021–38 (withdrawing Count 11).

**C.**   **The Court Should Dismiss Plaintiffs' Claims for Loss of Consortium, Wrongful Death, and Survival (Counts 16–18).**

**1.**   **Loss of Consortium, Wrongful Death, and Survival Are Derivative Claims and Must Be Dismissed Where the Underlying Personal Injury Claims Are Dismissed.**

Claims for loss of consortium, wrongful death, and survival are derivative in nature, meaning their success depends on the viability of the injured party's underlying personal injury claim.   *See, e.g.*, Restatement (Second) of Torts § 693 (1977) (noting with respect to loss of consortium claims that "[o]ne who *by reason of his tortious conduct* is liable to one spouse … is subject to liability to the other spouse for the resulting loss of the society and services of the first spouse[.]" (emphasis added)); Restatement (Second) of Torts § 925 cmt. *a* (1979) (both wrongful death and survival claims "are dependent upon the rights of the deceased," so that "if no action could have been brought by the deceased if still alive, no right of action exists").[15]   This means that Plaintiffs' claims for loss of consortium, wrongful death, and survival must be dismissed along with Plaintiffs' underlying personal injury claims.[16]

---

[15] *See also, e.g.*, *Martin v. Staheli*, 457 P.3d 53, 58 (Ariz. Ct. App. 2019) ("Loss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim."); *Schaefer v. Allstate Ins. Co.*, 668 N.E.2d 913, 916–17 (Ohio 1996) (recognizing that "a loss of consortium claim is derivative in that it is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury"); *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 760 (Fla. 2013) (recognizing that wrongful death claims are "derivative in the sense that they are dependent upon a wrong committed upon another person" and that "[n]o Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered" (quoting *Valiant Ins. Co. v. Webster*, 567 So. 2d 408, 411 (Fla. 1990), *receded from on other grounds by Gov't Emps. Ins. Co. v. Douglas*, 654 So. 2d 118, 119–20 (Fla. 1995)); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) ("[W]e have consistently held that the right of statutory beneficiaries to maintain a wrongful death action is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death.").

[16] Although the Court has allowed certain of Plaintiffs' product liability theories to proceed, many Plaintiffs allege harms resulting from third-party bad acts that, as the Court previously ruled, are barred. *In re Soc. Media*, 2023 WL 7524912, at *42.   To the extent any Plaintiff's substantive claims are dismissed on this or on any other theory, their claims for loss of consortium, wrongful death, and survival should also be dismissed.

---

25

Even in states that allow such claims to be maintained separately from the underlying personal injury claims, a loss of consortium or wrongful death claim still requires a cognizable injury.  *See, e.g.*, *Vanhooser v. Super. Ct.*, 206 Cal. App. 4th 921, 928 (2012) ("Without injury to the spouse, the plaintiff has no loss of consortium claim."); *Ruiz v. Podolsky*, 50 Cal. 4th 838, 846 (2010) ("Although wrongful death is technically a separate statutory cause of action in the heirs, it is in a practical sense derivative of a cause of action in the deceased.").[17]  Survival claims, of course, are always derivative because they allow a decedent's representative to recover damages for injuries to the decedent.  *See, e.g.*, *Grant v. McAuliffe*, 41 Cal. 2d 859, 864 (1953) (explaining that "survival statutes do not create a new cause of action" but instead "merely prevent the abatement of the cause of action of the injured person, and provide for its enforcement by or against the personal representative of the deceased"); *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) ("The survival action … is wholly derivative of the decedent's rights.  The actionable wrong is that which the decedent suffered before his death.").

Because these claims are derivative in nature, when Plaintiffs' underlying claims fail, these claims fail too.  For example, to the extent Plaintiffs' claims derive from Defendants' publishing of third-party content and/or third parties' wrongful acts, they are barred by Section 230 and the First Amendment.  Section IV.A.  They also separately fail for lack of duty or proximate causation.  *Supra* Section IV.A.

The Court should therefore dismiss or limit the claims for loss of consortium, wrongful death, and survival to the extent that Plaintiffs' underlying personal injury claims are dismissed or limited.  As discussed below, Plaintiffs' claims also fail for other reasons.

---

[17] *See also Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013) ("[W]rongful death actions are derivative of decedents' injuries" even if they "are not derivative of decedents' rights."); *Eagan v. Calhoun*, 698 A.2d 1097, 1102 (Md. 1997) (a wrongful death claim is not derivative in the sense that it is "not brought in a derivative or representative capacity to recover for a loss or injury suffered by [the deceased] person," but is derivative in the sense that it is "based on the [tortious] death of another person"); *Johnson v. Ottomeier*, 275 P.2d 723, 725 (Wash. 1954) (en banc) (a wrongful death action is derivative "in the sense that it derives from the wrongful act causing the death, rather than from the person of the deceased").

2.      **Numerous States Do Not Allow Parents to Recover Damages for Loss of Consortium.**

Plaintiffs plead loss of consortium claims on behalf of not only spouses, but also "parents, guardians, … children, siblings, and close family members" of the allegedly injured minor plaintiffs. SAC ¶ 21 (defining "Consortium Plaintiffs").  In reality, nearly every loss of consortium claim in the MDL to date has been filed on behalf of parents.[18]  Many states forbid these claims as a matter of law.

For example, numerous states, including California, explicitly limit loss of consortium claims to spouses and spouses only.  *See Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1007, 1010 (2023) (A "loss of consortium claim requires proof" of, among other requirements, "a valid and lawful marriage" and that a spouse's injury adversely "affect[ed] their marital relationship." (quotation marks omitted)).[19]  Other states have explicitly rejected loss of "filial consortium" claims—*i.e.*, those brought by parents for the loss of children.[20]  And where filial consortium claims are not recognized, claims for

---

[18] On information and belief, of the 87 loss of consortium Plaintiffs currently pursuing claims in this MDL, 85 of them are parents, one is a grandparent, and one does not specify a relationship with the minor plaintiff/decedent.

[19] **Arkansas:** *Lewis v. Rowland*, 701 S.W.2d 122, 122 (Ark. 1985) (only "husbands and wives have a right to damages for loss of consortium"); **Delaware:** *Lacy v. G.D. Searle & Co.*, 484 A.2d 527, 532 (Del. Super. Ct. 1984) (reciting the elements of a cause of action for loss of consortium, including "that the party asserting that cause of action was married to the person who suffered physical injury at the time the injury occurred"); **Georgia:** *W.J. Bremer Co. v. Graham*, 312 S.E.2d 806, 808 (Ga. Ct. App. 1983) ("[L]oss of consortium is by its very nature historically and definitionally self-limited to and applicable only to the two parties to the marital union, the spouses[.]"), *writ denied*, 312 S.E.2d 787 (Ga. 1984) (per curiam); **Indiana:** *Morton v. Merrillville Toyota, Inc.*, 562 N.E.2d 781, 785 (Ind. Ct. App. 1990) (recovery for loss of consortium is limited "strictly to spouses"); **Kansas:** *Tice v. Ebeling*, 715 P.2d 397, 402 (Kan. 1986) (recognizing loss of consortium claim "[w]hen a married person sustains personal injuries causing the loss or impairment of his or her ability to perform services"); **Maine:** *Sawyer v. Bailey*, 413 A.2d 165, 166 (Me. 1980) ("Absent the lawful relationship of husband and wife, there can be no recovery for loss of consortium."); **North Carolina:** *Vaughn v. Clarkson*, 376 S.E.2d 236, 236 (N.C. 1989) (per curiam) ("claims for loss of consortium should be limited to the spousal relationship"); **Pennsylvania:** *Jackson v. Tastykake, Inc.*, 648 A.2d 1214, 1217 (Pa. Super. Ct. 1994) ("[C]laims for loss of consortium are limited to spouses and do not extend to the loss of a child's consortium.").

[20] **Alabama:** *Hannon v. Duncan*, 594 So. 2d 85, 93 (Ala. 1992) (mem.) ("The loss of the society of a child … cannot form the element of recoverable damages."); **Connecticut:** *Shattuck v. Gulliver*, 481 A.2d 1110, 1113 (Conn. Super. Ct. 1984) (parents cannot "recover for the lost consortium of their child."); **Maryland:** *Michaels v. Nemethvargo*, 571 A.2d 850, 858 (Md. Ct. Spec. App. 1990)

---

27

loss of consortium by other relatives are likewise without legal foundation. *See, e.g.*, *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 265 P.3d 701, 704 (N.M. 2011) (observing that "[m]any jurisdictions have expressly rejected sibling loss-of-consortium claims"); *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 383 (Tex. 1998) (acknowledging that Texas law permits a child to recover for loss of a parent's consortium but finding "virtually no support for further extending recovery for loss of consortium to siblings" or stepparents); *Gallimore v. Children's Hosp. Med. Ctr.*, 617 N.E.2d 1052, 1058 (Ohio 1993) (permitting recovery for loss of filial consortium but recognizing that the "parent-child relationship is unique, and it is particularly deserving of special recognition in the law" and "mak[ing] no suggestion that the right [to recover] does or should extend" to other relatives).

Limiting loss of consortium claims to specific relationships and circumstances reflects policy decisions by many states to narrowly tailor recovery in light of "[t]he intangible character of the loss, which can never really be compensated by money damages; the difficulty of measuring damages; [and] the dangers of double recovery of multiple claims and of extensive liability." *Baxter v. Super. Ct.*, 19

---

(declining to recognize cause of action by parents for loss of child's society and companionship); **Michigan:** *Sizemore v. Smock*, 422 N.W.2d 666, 667 (Mich. 1988) (Michigan "does not recognize a parent's action for loss of a child's society and companionship"); **Minnesota:** *Father A v. Moran*, 469 N.W.2d 503, 506 (Minn. Ct. App. 1991) ("The Minnesota Supreme Court has explicitly denied a cause of action for loss of consortium in the parent-child context."); **Mississippi:** *Butler v. Chrestman*, 264 So. 2d 812, 816–17 (Miss. 1972) ("Mississippi, along with a majority of other states, does not consider loss of the society and companionship of a child as an element in fixing the damages recoverable by a parent."); **Missouri:** *Powell v. Am. Motors Corp.*, 834 S.W.2d 184, 191 (Mo. 1992) (en banc) ("declin[ing] to recognize a common law cause of action [for loss of consortium] in either children or parents of an injured party"); **New Hampshire:** *Siciliano v. Capitol City Shows, Inc.*, 475 A.2d 19, 24 (N.H. 1984) ("declin[ing] to create a new cause of action allowing parents to recover for the loss of the society of their negligently injured or killed child"); **New York:** *Devito v. Opatich*, 215 A.D.2d 714, 715 (N.Y. App. Div. 1995) (loss of daughter's society "is not compensable"); **South Carolina:** *Doe v. Greenville Cnty. Sch. Dist.*, 651 S.E.2d 305, 308 (S.C. 2007) ("South Carolina law does not recognize claims for loss of filial consortium."); **South Dakota:** *In re Certification of Questions of L. from U.S. Ct. of Appeals for Eighth Cir., Pursuant to Provisions of SDCL 15-24A-1*, 544 N.W.2d 183, 192 (S.D. 1996) ("We do not find that a parent had or has a common law right to make a claim of loss of consortium."), *superseded by statute on other grounds as stated in Millea v. Erikson*, 849 N.W.2d 272 (S.D. 2014); **Virginia:** *Cocoli v. Children's World Learning Ctrs., Inc.*, 1994 WL 16035130, at *4 (Va. Cir. Ct. Dec. 28, 1994) ("Virginia does not recognize a parent's cause of action for damages based on loss of consortium, companionship, and society [of a child]."); **District of Columbia:** *District of Columbia v. Howell*, 607 A.2d 501, 506 (D.C. 1992) (acknowledging that Washington, D.C. does not recognize a claim for "loss of parent-child consortium").

DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR

Cal. 3d 461, 464 (1977).  This Court may not disturb those limitations and should dismiss loss of consortium claims, other than those brought by a spouse or eligible family member, under the laws of the aforementioned states.

Even among states that do recognize claims for loss of filial consortium, many preclude recovery except in the event of a child's death.  *See, e.g.*, *Elgin v. Bartlett*, 994 P.2d 411, 418 (Colo. 1999) (en banc) (recognizing that parents cannot bring loss of consortium claims for nonfatal injuries to their child), *overruled on other grounds*, *Rudnicki v. Bianco*, 501 P.3d 776, 777 (Colo. 2021).[21]  The Court should therefore dismiss loss of consortium claims brought by parents of nonfatally injured children under the laws of these states.

For these reasons, the Court should dismiss: (1) all loss of consortium claims brought by non-qualified family members under Alabama, Arkansas, California, Connecticut, Delaware, Georgia, Indiana, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New York, North Carolina, Pennsylvania, South Carolina, South Dakota, Virginia, or District of Columbia law; and (2) all claims for loss of consortium brought by parents of nonfatally injured children under Colorado, Illinois, Oregon, and Texas law.[22]

### 3.	The Court Should Dismiss the Consortium Plaintiffs' Prayer for Medical Expenses.

The Court should also dismiss the Consortium Plaintiffs' claims "for medical aid, medical treatment, and medications of the Plaintiffs in this litigation."  SAC ¶ 1090.  These damages are not recoverable under a theory of loss of consortium or loss of society.

---

[21] *See also Vitro v. Mihelcic*, 806 N.E.2d 632, 640 (Ill. 2004) ("declin[ing] to enlarge the scope of liability to encompass claims for loss of filial society resulting from nonfatal injuries to a child"); *Beerbower v. State ex rel. Or. Health Scis. Univ.*, 736 P.2d 596, 597–99 (Or. Ct. App. 1987) (concluding that damages for loss of child's society and companionship are not recoverable under statute creating cause of action for parents to sue for nonfatal injuries to their child); *Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003) (recognizing that parents are not permitted to recover loss of consortium damages in case where child has not died).

[22] Because nearly all of the loss of consortium claims in this MDL are brought by parents, this brief focuses primarily on those claims in an effort to streamline this litigation.  However, Defendants reserve the right to later address and move to dismiss claims brought by children, siblings, grandparents, and other family members should any individual Plaintiff raise such claims.

By definition, loss of consortium damages are intended to compensate plaintiffs for intangible losses associated with impairment of the relationship with the injured party.  *See* Restatement (Second) of Torts § 693 cmt. f ("[t]he major element of damages" in a loss of consortium action "is any loss or impairment of the other spouse's society, companionship, affection and sexual relations").   In California, therefore, loss of consortium damages do not include medical or other expenses.  *See, e.g.*, *Ledger v. Tippitt*, 164 Cal. App. 3d 625, 633 (1985) ("The concept of consortium includes … such elements as love, companionship, comfort, affection, society, sexual relations, the moral support each spouse gives the other through the triumph and despair of life, and the deprivation of a spouse's physical assistance in operating and maintaining the family home."), *disapproved of on other grounds*, *Elden v. Sheldon*, 46 Cal. 3d 267 (1988) (en banc); *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 409 (1974) (explaining that wife could not recover costs for nursing services via loss of consortium claim because medical expenses were properly recoverable by husband in his own personal injury claim).  Other jurisdictions likewise do not include medical or other expenses in consortium damages.[23]

In sum, medical expenses and other costs are not recoverable on claims for loss of consortium. The loss of consortium claims should be dismissed to the extent they seek to recover medical or other expenses.

> **4.      The Court Should Dismiss or Limit Plaintiffs' Survival Claims Under the Laws of Five States.**

*First,* under Indiana, Florida, Virginia, and Wyoming law, survival claims are not permitted where the decedents died as a result of their injuries.  Instead, the personal representatives of the

---

[23] *See Am. Exp. Lines, Inc. v. Alvez*, 446 U.S. 274, 275 n.1 (1980) (noting that the term "society" "embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection" (quotation marks omitted)); *Cox v. Shelter Ins. Co.*, 34 So. 3d 398, 410–11 (La. Ct. App. 2010) ("The compensable elements of damage in a claim for loss of consortium of a spouse include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity."), *writ denied*, 45 So. 3d 1044 (La. 2010) (mem.); *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989) (en banc) ("Loss of consortium … is defined as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support."); *Reiser v. United States*, 786 F. Supp. 1334, 1336 (N.D. Ill. 1992) ("Under Illinois law, the elements of loss of society include loss of the decedent's love, affection, care, attention, companionship, comfort, guidance and protection." (quotation marks omitted)).

decedents in those states may seek relief only by means of a wrongful death claim.  *See Ellenwine v. Fairley*, 846 N.E.2d 657, 661 (Ind. 2006) ("Sections 1 and 4 of the [Indiana] Survival Act provide that if an individual who has a personal injury claim or cause of action dies, the claim or cause of action does not survive and may not be brought by the representative of the deceased party unless the individual dies from causes other than those personal injuries."); *Martin v. United Sec. Servs., Inc.*, 314 So. 2d 765, 770 (Fla. 1975) ("a separate lawsuit for death-resulting personal injuries cannot be brought as a survival action" but must be pursued under the Wrongful Death Act (citing Fla. Stat. § 768.20)); *Smith v. Town of S. Hill*, 611 F. Supp. 3d 148, 191 (E.D. Va. 2020) (collecting cases demonstrating that Virginia law does not recognize an independent survival claim where the tort victim dies of their injuries; plaintiff instead must pursue a wrongful death claim only); Wyo. Stat. Ann. § 1-4-101 ("[I]n actions for personal injury damages, if the person entitled thereto dies recovery is limited to damages for wrongful death.").  Accordingly, any survival claims brought on behalf of deceased parties under Indiana, Florida, Virginia, and Wyoming law must be dismissed.

*Second*, under Arizona law, plaintiffs asserting survival claims are not permitted to recover damages for the decedent's pre-death pain and suffering.  *See* Ariz. Rev. Stat. Ann. § 14-3110 ("[U]pon the death of the person injured, damages for pain and suffering of such injured person shall be not allowed").  Accordingly, the Court should dismiss any survival claims brought under Arizona law to the extent they seek damages for a decedent's pre-death pain and suffering.

## V.    CONCLUSION

Defendants respectfully request that Plaintiffs' non-priority claims (Counts 5, 12, 14, and 16 – 18 of the Second Amended Master Complaint) be dismissed with prejudice.

Dated:  December 22, 2023                    Respectfully submitted,

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
 gdrake@kslaw.com
David Mattern, *pro hac vice*
 dmattern@kslaw.com

31

King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
 andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
 amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**COVINGTON & BURLING LLP**

 */s/ Phyllis A. Jones*
 Mark W. Mosier, *pro hac vice*
  mmosier@cov.com
 Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
 Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
 COVINGTON & BURLING LLP
 One CityCenter
 850 Tenth Street, NW
 Washington, DC 20001-4956
 Telephone: + 1 (202) 662-6000
 Facsimile: + 1 (202) 662-6291

 Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com
 COVINGTON & BURLING LLP
 3000 El Camino Real
 5 Palo Alto Square, 10th Floor
 Palo Alto, CA 94306
 Telephone: + 1 (650) 632-4700
 Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*


**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)
  Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
  Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
  Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*


**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

*/s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
Wilson Sonsini Goodrich & Rosati

33

bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
Wilson Sonsini Goodrich & Rosati
  lwhite@wsgr.com
Andrew Kramer (State Bar No. 321574)
  akramer@wsgr.com
Carmen Sobczak (State Bar No. 342569)
  csobczak@wsgr.com
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou (State Bar No. 233587)
Wilson Sonsini Goodrich & Rosati
  cchiou@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
  mdonohue@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR

1

## ATTESTATION

2

     I, Geoffrey M. Drake, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence

3

to the filing of this document has been obtained from each signatory hereto.

4

5

  DATED:      December 22, 2023      By:   */s/ Geoffrey M. Drake*

6

                      Geoffrey M. Drake

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR