# Exhibit A



| | |
|---|---|
| STATE OF INDIANA     )<br>                          ) SS:<br>COUNTY OF ALLEN   ) | ALLEN SUPERIOR COURT<br><br>CAUSE NO. 02D02-2212-PL-400 |
| STATE OF INDIANA,<br>     Plaintiff,<br><br>vs.<br><br>TIKTOK, INC., BYTEDANCE,<br>INC., TIKTOK PTE. LTD., and<br>BYTEDANCE, LTD.,<br>     Defendants. | **ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS** |

On October 25, 2023, Plaintiff State of Indiana, (the "State") appeared by attorneys Scott Barnhart and Brian Barnes. Defendants TikTok, Inc. ByteDance, Inc., TikTok Pte. Ltd., and ByteDance, Ltd. (hereinafter collectively "TikTok") appeared by attorneys Daniel Pulliam, Emily Ullman, and Alexander Berengaut. The Court conducted a hearing on TikTok's Motion to Dismiss. The Court took the Motion to Dismiss under advisement. The Court, having considered all matters designated by the parties, all legal memoranda filed herein, and the arguments of counsel, now enters the following Order:

## BACKGROUND

This case was initially brought by the State against Defendants TikTok, Inc. and ByteDance, Ltd. on December 7, 2022. In the original Complaint filed by the State, the State sought a preliminary injunction based upon the allegation that TikTok had violated the Indiana Deceptive Consumer Sales Act ("DCSA") by representing that the TikTok app contains "Infrequent/Mild" instances of certain subject matter categories: (1) profanity or crude humor; (2) mature/suggestive themes; (3) alcohol, tobacco, or drug use or references; and (4) sexual content or nudity. The State alleged that TikTok should describe its app as containing frequent and intense depictions of the four (4) above categories, and the State sought to prohibit TikTok from making the "Infrequent/Mild" representations to the Apple App Store regarding the TikTok app.

Following discovery and briefing, the Court held a hearing on the State's Motion for Preliminary Injunction on March 3, 2023. After the hearing, the Court issued a ruling finding that the State lacked specific jurisdiction over the Defendants and, furthermore, TikTok's responses to the questionnaire relating to "Infrequent/Mild" rather than "Frequent/Intense" were subjective statements of opinion and would therefore not be actionable under the DCSA. Additionally, following the preliminary injunction hearing, the Court held that the State failed to establish that TikTok made false or otherwise deceptive representations when identifying the relative content categories as infrequent. Finally, the Court also held that the downloading of a free app did not constitute a consumer transaction as that term, used in the DCSA, is limited to exchanges for money.

Following the denial of the State's Motion for Preliminary Injunction, the State did not seek appellate review of the Court's decision. Instead, the State filed for a change of judge and also filed an Amended Complaint. The Amended Complaint identified ByteDance, Inc. and TikTok Pte. Ltd. as additional Defendants. The substance of the allegations in the Amended Complaint remained essentially the same. The State's Motion for Change of Judge was granted shortly after the Amended Complaint was filed by the State. After acceptance of the case by the special judge, the parties and the Court conducted a hearing to set a briefing schedule on TikTok's Motion to Dismiss.

## **DESIGNATED MATERIAL FACTS**

1. TikTok, Inc. is a for-profit entity incorporated in the state of Washington. TikTok, Inc. operates a social media app known as "TikTok". TikTok, Inc. is headquartered at 5800 Bristol Parkway, Culver City, California.

2. TikTok Pte. Ltd. is a related corporate entity that nominally makes TikTok available on the Apple app store, Google Play Store, and the Microsoft Store.

3. ByteDance, Inc. is a for-profit entity incorporated in the state of Delaware and headquartered at 250 Bryant Street, Mountainview, California 94041.

Case 4:22-md-03047-YGR Document 517-3 Filed 12/22/23 Page 5 of 18

4. Defendant Bytedance Ltd. is a multinational internet technology holding company and is the parent company of TikTok, Inc., TikTok Pte. Ltd., and ByteDance, Inc. Bytedance Ltd. is headquartered in Room 503 5F, Building 2, 43 North Third Ring West Road, Beijing, 10086 China and is registered in the Cayman Islands.

5. The TikTok app is a social media platform that centers on short videos created and uploaded by users and often set to music. The TikTok app is available to download on smartphones and tablets and most TikTok users interact with the platform through the application. The app is available for download on the Apple App Store, the Google Play Store, or the Microsoft Store. TikTok was the most downloaded app globally in 2022.

6. TikTok users register and create a profile in order to access the platform. In doing so, TikTok users answer a few questions about themselves and provide their birthdays. Users can only access the platform if they provide a birthdate indicating they are 13 years or older.

7. The TikTok app has more than 1 billion users globally, and approximately 100 million users in the United States, including users in Indiana.

8. TikTok makes its app available for download globally, including in Indiana. Many Hoosiers have downloaded TikTok and in Indiana the app was activated by a device using an Indiana IP address over 6 million times between January 1, 2021, and December 31, 2022.

Page 4 of 17

9. TikTok earns significant income by serving the American market, including the Indiana market.

10. TikTok is an entertainment platform that allows users to create, share, and view videos. There are different ways in which a TikTok user can access the video content on the app. TikTok makes videos available to users through a "For You" feed. This feed provides a personalized experience for each TikTok user. Additionally, users may also view videos by searching for them using keywords or hashtags and by following other users to view videos through a "Following" feed. The videos posted to TikTok are also accessed by searching for topics on the "Discover" page or from other people sharing links to the specific videos.

11. As commonly found with most free apps, TikTok presents advertisements on the app, based on the users' presence in any given location. By way of example, if a TikTok user's location indicates they are in Indiana, the TikTok user may see an ad on the app from an advertiser wanting to reach consumers in a certain Indiana market, such as Fort Wayne or Indianapolis.

12. Between January 1, 2021, and January 8, 2023, 8,009,338,251 videos were uploaded to TikTok in the United States. During the same time period, there were more than 21 trillion views of videos uploaded on the app in the United States.

13. Apple, Inc. ("Apple") operates a digital distribution platform, commonly known as the "App Store", through which app developers can make their apps, such as TikTok, available for download. Google and Microsoft also provide platforms for app developers to distribute their apps.

14. The TikTok app has been available for download, for free, on the App Store since 2018.

15. The State's case against the Defendants concerns TikTok's responses to an age rating questionnaire that developers of software apps must complete in order to have their apps distributed by Apple in the App Store. All of the text in the questionnaire is provided by Apple.

16. The App Store's questionnaire includes questions that ask the app developer to select the level of frequency and intensity for each content description that best describes the app. Apple requires a response to this question with respect to 12 categories of content it labels "Apple Content Descriptions." Apple has three permitted responses to the questionnaire for each of these categories: "None," "Infrequent/Mild," or "Frequent/Intense." With respect to content descriptions for "profanity or crude humor," "mature/suggestive themes," "alcohol, tobacco, or drug use or references," and "sexual content or nudity," TikTok selected "Infrequent/Mild." As a result of these submitted responses from TikTok, Apple assigned the TikTok app a 12+ age rating.

17. There is not an Indiana-specific version of TikTok. The app is distributed on a nationwide basis and, therefore, the version of the app available for download on any platform in Indiana is the same version available throughout the United States.

18. When downloaded on Android devices via the Google Play Store and the Microsoft Store, TikTok has a "T" for teen rating, but no similar questionnaire of the app developer is required for these two platforms.

## **STANDARD OF REVIEW**

Defendants have moved to dismiss the State's Amended Complaint for lack of personal jurisdiction pursuant to Indiana Trial 12(B)(2), and for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6).

The existence of personal jurisdiction over a Defendant is a constitutional requirement for entering a valid judgment which is mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014). Indiana's "long-arm" rule for exercising personal jurisdiction over out-of-state defendants permits the exercise of personal jurisdiction in any manner consistent with the Due Process Clause. *Id.* (citing *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)). In determining whether the exercise of personal jurisdiction would violate the Due Process Clause, "a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brockman v. Kravic*, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002) (citing

*International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A defendant's contacts must "consist of some action by which the Defendant purposely avails itself to the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). "Only the purposeful acts of the defendant, not the acts of the plaintiff or any third-parties, satisfies this requirement." *Id.*

Courts must first "look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being haled into court there." *Id.* "Contacts are any acts physically performed in the forum state or acts performed outside the forum state that have an effect within the forum." *Id.* "When evaluating a defendant's contacts with a forum state, courts should assess: (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agents with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contact; and (5) whether the defendant expected or encouraged contacts with the state." *Id.* at 1257.

To survive a motion to dismiss under Rule 12(B)(6), the allegations in the complaint must establish a "set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs*, 845 N.E.2d 130, 134 (Ind. 2006)(citation omitted). A motion to dismiss is proper only when it is apparent that the complaint states a set of facts and circumstances, which if true, would not support the relief requested. See *Witham v. Steffan*, 131 N.E.3d 774, 776 (Ind. Ct. App. 2019).

## **PERSONAL JURISDICTION**

The State acknowledges it is not pursuing an argument that the Court could exercise general jurisdiction over the Defendants in this case.

Specific jurisdiction exists when a lawsuit arises from, or is closely related to, a defendant's minimum contacts with or substantial connection to the forum state. *LinkAmerica*, 857 N.E.2d at 967 (citing *Helicopteros Nacionales Day Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), *on remand Hall v. Helicopteros Nacionales Day Columbia, S.A.*, 677 S.W.2d 19 (Tex. 1984). Specific jurisdiction is very different from general jurisdiction. Unlike general jurisdiction, where any contact a defendant intentionally directs at the state factors into the analysis, "[i]n order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "In other words there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation.' For this reason, 'specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

Contacts unrelated to the allegations against the non-resident defendant are immaterial in determining whether there is specific jurisdiction. *Id.* at 1781 ("when there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state.") (citing *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).

Specific jurisdiction is found when "the suit-related conduct is related to or arises out of the defendant's conduct within or directed to Indiana." *Aquatherm GmbH v. Renaissance Assocs. I LP*, 140 N.E.3d 349, 358–59 (Ind. Ct. App. 2020). What matters for this analysis are the "contacts that the defendant [itself] creates with the forum state, not the defendant's contacts with persons who reside there." *Ysursa v. Frontier Pro. Baseball, Inc.*, 151 N.E.3d 275, 280 (Ind. Ct. App. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

Here, the Amended Complaint does not allege facts sufficient to establish this Court's jurisdiction over Defendants. The Amended Complaint does not allege that Defendants made any of their allegedly deceptive statements or omissions in Indiana, nor does it allege that any of those statements or omissions were directed at Indiana users specifically. To the extent that any of the statements were targeted anywhere, it was at Apple, Google, or Microsoft, none of which are located in Indiana.

While the Amended Complaint alleges that the TikTok platform is available to Hoosiers through third-party app stores, this is insufficient to establish specific jurisdiction because the State does not allege that TikTok specifically targeted Indiana. *See Wolf's Marine*, 3 N.E.3d at 17 ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.") (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)).

Moreover, it is well-established that the unilateral act of a third party—such as a Hoosier downloading and using TikTok, or a third-party app store offering TikTok in Indiana—cannot establish specific jurisdiction. *See, e.g., Walden*, 571 U.S. at 285–86. As the Seventh Circuit has observed, if having an interactive website were enough in situations like this one, there is no limiting principle and a plaintiff could sue everywhere. *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

The State also alleges that TikTok provides Indiana users with Indiana-focused content and advertisements on the TikTok platform. This conduct is insufficient to establish jurisdiction over Defendants. In *Johnson v. TheHuffingtonPost.com, Inc.*, the Fifth Circuit rejected the plaintiff's argument that geographically-targeted advertisements were sufficient to support specific jurisdiction over a defendant in a libel case. 21 F.4th 314, 321 (5th Cir. 2021). As the court explained, the defendant's sale of advertisements neither "produced nor relate[d] to" the plaintiff's libel claim, and thus there was no "suit-related tie[]" to support personal jurisdiction. *Id.* at 320–21. The same is true here: Indiana-focused content and advertisements have nothing to do with the State's claims, which address nationally-directed statements and content allegedly inappropriate for minors. The State has not pled that this allegedly inappropriate content is targeted to Indiana residents in any manner different than it is to users in other states.

Similarly, the allegation that TikTok Inc. filed an Indiana income tax return, is insufficient to support specific jurisdiction. The fact that TikTok Inc. derives

some income from activities in Indiana does not mean that the State's lawsuit—founded on particular purported misstatements that are not targeted at Indiana users—arises from or relates to those activities. And if filing a tax return were enough to establish specific jurisdiction over a corporation, then conducting any business in a state could establish jurisdiction over the entity for all suits, which would violate the Indiana Supreme Court's command that a "defendant's *suit-related conduct* must create a *substantial connection* with the forum State" for specific jurisdiction to exist. See *Boyer*, 42 N.E.3d at 511 (citation omitted) (first emphasis added).

Finally, the Court finds that the State's specific allegations against ByteDance Ltd. and ByteDance Inc. are insufficient to support personal jurisdiction as to those entities. The State alleges only that ByteDance Inc. is a "parent entity that earns revenue in the United States from TikTok's operations" and that ByteDance Ltd. "own[s]" the other Defendant entities. That a company is the parent of another company, without more, does not subject it to specific jurisdiction. See *LinkAmerica*, 857 N.E.2d at 968 ("We start with the presumption that a parent and a subsidiary are independent entities and a subsidiary's contacts with the forum are not attributed to the parent corporation for jurisdictional purposes."); *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012) (applying the "general rule" that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent") (citations omitted).

Accordingly, the Court concludes that it lacks specific jurisdiction over Defendants and TikTok's Motion to Dismiss under Trial Rule 12(B)(2) shall be granted.

## **INDIANA DECEPTIVE CONSUMER SALES ACT**

While the Court has determined that it lacks personal jurisdiction over TikTok, the Court will still address, albeit more briefly, whether the State has stated a claim for relief under the Indiana Deceptive Consumer Sales Act. The Court finds that the State has failed to state a claim for relief under the DCSA and, therefore, there is an additional independent ground for dismissal of the State's Amended Complaint.

### 1. **The Downloading of TikTok's Free App is not a Consumer Transaction Under the DCSA**

The TikTok Defendants have argued that the term "consumer transaction" as used in the DCSA is limited to exchanges for money, and does not encompass the downloading of free apps like TikTok. Specifically, the DCSA states: "a supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). The DCSA also defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible." *Id.* § 24-5-0.5-2(1). The DCSA has historically been used for consumer transactions involving exchanges for money. *See e.g. Lawson v. Hale*, 902 N.E.2d 267, 269-71 (Ind. Ct. App. 2009).

The State argues that the DCSA applies to TikTok because both "sales" and "other dispositions" can occur for consideration other than money, and TikTok users provide their personal data as consideration for access to the platform. But "[u]nder Indiana law a 'sale' has a well-defined meaning and is the passing of title from a seller to a buyer for money." *Washington Nat'l Corp. v. Sears, Roebuck & Co.,* 474 N.E.2d 116, 120 (Ind. Ct. App. 1985).

Moreover, the State does not dispute that "other disposition" should be interpreted consistently with the preceding terms. Rather, it argues that terms like "lease," "assignment," or "award by chance" do not require an exchange of money. However, the State does not identify any authority for the proposition that "lease," "assignment," or "award by chance" should be construed as not involving an exchange of money, such that *ejusdem generis* would support the State's broad interpretation of the term "other disposition."

TikTok relies on *ejusdem generis* to support their argument that the phrase "or other disposition" as used in the DCSA definition of consumer transaction, would also involve the exchange of money or other valuable consideration. *Ejusdem generis* is an interpretive cannon of law, meaning "of the same kind." *O'Bryant v. Adams*, 123 N.E.3d 689, 693 (Ind. 2019). This Court finds that the DCSA definition of consumer transaction does not include the downloading of a free app. No consumers in Indiana have exchanged money for their use of TikTok. As the downloading of a free app is not a consumer transaction, the DCSA does not apply to this case.

The State has also argued the DCSA should apply to the TikTok defendants because they profit from consumers who use the platform. The DCSA, however, is limited to the regulation of consumer transactions and does not include all profit-generating activities the defendants may benefit from. For this reason too, the DCSA does not apply to TikTok because there is no consumer transaction involved.

As the downloading of the free TikTok app is not a consumer transaction, the State has failed to state a claim under the DCSA and TikTok is entitled to a dismissal of the State's Amended Complaint under Trial Rule 12(B)(6).

## 2. TikTok's responses to the App Store questionnaire that certain content categories were "Infrequent/Mild" are not representations of fact but are subjective opinions and are not actionable under the DCSA

In addition to issues with the definition of consumer transaction, TikTok contends that its answers to questions for the App Store are not a violation of the DCSA. The State argues that TikTok committed actionable misrepresentations when TikTok selected the "Infrequent/Mild" option instead of "Frequent/Intense" option on the App Store questionnaire for the four relevant content categories: "sexual content and nudity," "mature/suggestive themes," "profanity or crude humor," and "alcohol, tobacco, and drug references." TikTok argues that both the App Store content categories and the questionnaire options are too general and too

subjective to qualify as "representations of fact" and are, therefore, not actionable under the DCSA.

The Indiana Supreme Court has held that subjective assertions of opinion are not actionable under the DCSA because such opinions are not "representations of fact." *Kessling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332-33 (Ind. 2013). In *Kessling*, the Supreme Court held that representing a car as "sporty" was not actionable because a determination of whether a car is sporty is a subjective assertion of opinion rather than a fact. *Id.* When considering the meaning of the App Store relevant content categories and TikTok's corresponding selection of "Infrequent/Mild" responses to those categories, the determination made by TikTok is clearly subjective. One can see how easily the responses to those questions could vary from person to person. Considering the subjectivity of the App Store's content categories, the App Store questionnaire inherently solicits non-actionable statements of opinion, not objectively verifiable "representations of fact."

For the reasons set forth above, TikTok's responses to the App Store questionnaire are not actionable under the DCSA and TikTok is entitled to a dismissal of the State's Amended Complaint under Trial Rule 12(B)(6).

## CONCLUSION

The Court has found that it does not have personal jurisdiction over TikTok. Furthermore, the State has failed to state a claim under the DCSA. For the above and foregoing reasons, TikTok's Motion to Dismiss under Indiana Trial

Rules 12(B)(2) and 12(B)(6) is **GRANTED** and Plaintiff's Amended Complaint against Defendants is hereby **DISMISSED**.

November 29, 2023

_____
JUDGE JENNIFER L. DEGROOTE