# Exhibit A

**Issue 1: Search Methodologies**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **8. SEARCH METHODOLOGIES**<br><br>The Parties recognize and agree that each party may use one or more search methodologies to cull, review, and produce responsive, not-privileged potentially responsive or relevant information, including the use of keyword search terms and/or the use of technology assisted review ("TAR"). The parties therefore agree to cooperate in good faith, in an iterative manner, regarding the disclosure and formulation of appropriate search methodologies, as well as transparent and cooperative validation procedures. The parties agree to meet and confer and exchange reasonably necessary information regarding any methodologies that remove relevant or responsive information from human review and withhold such information from production (e.g., search terms) and the document sources to which they will be applied, prior to the application of any such methodologies to any ESI source that may contain potentially relevant or responsive ESI. The Requesting Party may propose modifications, such as additional search terms and culling parameters, or TAR enhancements, for a Producing Party to consider. After meeting and conferring, the parties may enter into additional agreements or protocols relating to the search methodologies they will use to satisfy their discovery obligations. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court or its designee. The Parties recognize | SEARCH METHODOLOGIES<br><br>The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as reasonably necessary. The Parties recognize and agree that each party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI.<br><br>… |

| | |
|---|---|
| that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.<br><br>**9. HIT REPORTS FOR DISPUTED SEARCH TERMS**<br><br>In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by the Requesting Party, the Producing Party will provide a hit report for the terms at issue using industry-standard processing tools, such as NUIX or other similar tools. The Producing Defendant will provide a hit report for each custodian or data source in the deduplicated document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:<br>    a) The number of documents with hits for that term;<br>    b) The number of unique documents, i.e., documents which do not have hits for any other term;<br>    c) The number of family members, including the documents with hits, of the documents with hits for that term; and<br>    d) The number of unique family members of the documents with hits for that term.<br><br>The hit report will also include the total number of documents in the de-duplicated collection against which the search terms were applied, the total number of unique documents containing hits, and the total number of unique family members, including the documents with hits, of the documents with hits. It is understood that the unique hit numbers would be document collection specific, as non-U.S. custodial data will not be comingled with U.S. data for deduplication. The Parties will meet and confer to resolve disagreements over the search terms | Key Word Search and Hit Reports.<br><br>If the Producing Party uses search terms to identify, search, or cull potentially responsive ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall meet and confer regarding any disputes over the disclosed search terms. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by the Requesting Party, the Producing Party will provide a hit report for the terms at issue using industry-standard processing tools such as NUIX or other similar tools. Hit reports are not predictive of richness, prevalence or responsiveness. A Producing Party need not provide a hit report for any term or set of terms that on its/their face is not reasonably and proportionately tailored to identify information responsive to a particular Request (e.g. entire company name, product and/or service name, a custodian's own name, or similar term). A Producing Party need only provide two rounds of hit reports to a Requesting Party. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court.<br><br>Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing a review to determine if documents captured by search terms are in fact responsive to the Requesting Party's discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be responsive. |

2

| | |
|---|---|
| or their application. | Further, nothing in this ESI Order requires or may be relied on by a Party to compel the production of documents captured by any search term that are not responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure. |
| **8 fn. 2. TAR**<br><br>The producing party will disclose to the receiving party if they intend to use Technology Assisted Review ("TAR") (including predictive coding or any other form of machine learning) to filter out non-responsive documents. The parties will meet and confer at that time to negotiate a suitable TAR protocol. | **TAR**. A Producing Party may use TAR (technology-assisted review) during the culling and review process, which may be applied in addition to search terms. If a Producing Party uses TAR to filter out or exclude non-responsive documents for production, they shall do the following:<br>● If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms.<br>● Disclose the name of the TAR tool used. |

**Issue 2: Validation of Search Methodologies**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **10. VALIDATION OF DEFENDANTS' SEARCH METHODOLOGY AND RESULTS.**<br><br>The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate validation procedures and random sampling of Defendants' Documents (both of non-responsive sets and of the entire collection against which search terms were run or TAR or other identification or classification methodology was used), in order to establish that an appropriate level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by Defendants' methodology) has been achieved and ensure that the Defendants' search methodology was effective and responsive ESI was not being inadvertently omitted.<br><br>**12. REASSESSMENT**<br><br>After the completion of the search methodology meet and confer sessions and/or after completion of the selected search process itself, a Producing Party, a Receiving Party, or the Court may perceive the need to reassess a search methodology and/or validation process. In all such circumstances, the Parties will meet and confer to address any issues in a reasonable and timely manner; and the time, cost, and/or other resources expended in connection with ineffective methodologies and/or processes shall be deemed irrelevant to the issues of reasonableness and proportionality for additional efforts required. | **Validation.** The Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. The Parties recognize that different validation processes and standards may be appropriate for distinct document/data sets, and may vary per document/data set and Producing Party. If any Requesting Party, upon a showing of good cause, requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the methodology used (statistical sampling methodology, other random sampling methodology, etc.).<br><br>REASSESSMENT<br><br>[No provision necessary in ESI Protocol]. |

**Issue 3: Collection of Hyperlinks and Production As Families**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **APPENDIX 1**<br>**1) Production Components.**<br>…<br>e) Family relationships between emails and their attachments, embedded files or linked internal or non-public documents and their source document, and connected hardcopy documents will be preserved and maintained in production, subject to Paragraph 13 below. Attachments should be consecutively produced with their parent.<br><br>**13) Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document or responsive documents that may be hyperlinks in otherwise non-responsive emails within a Producing Party's custody, possession, or control, including documents on internal or third-party systems or platforms, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points, unless a Party can export files hyperlinked documents automatically (e.g., not manual process) during collection using Google Vault,[1] for which Defendants Google, Snap, and TikTok already have licenses for and use in the ordinary course of business for documents residing in the Google environment, and Microsoft Purview eDiscovery Premium solutions,[2] for which Defendant Meta has already has licenses for and uses in the ordinary course of business for documents residing in the Microsoft environment. Following initial production of documents, (i) if | 1) Production Components<br>…<br>e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.<br><br>13) Hyperlinks. The Parties agree that given technological limitations, document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document need not be produced in the first instance. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of up to 500 hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. Nothing in this provision requires production of non-responsive documents. |

| | |
|---|---|
| there are particular documents containing hyperlinks for unproduced documents in the production, the Receiving Party may submit a list of such documents by Bates number to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that pointed to location and either identify it by Bates number or provide any non-produced and non-privileged documents, and (ii) if there are particular documents in the production that the Receiving Party believes may have been linked to an ESI custodian's emails, the Receiving Party may submit a list of such documents by Bates number to the Producing Party, and the Producing Party will engage in reasonable efforts to locate such custodian's emails and either identify the produced documents by Bates number or provide any non-produced and non-privileged documents. The parties agree to meet and confer to resolve any future or additional issues regarding hyperlinks.<br><br>1 See https://workspaceupdates.googleblog.com/2023/12/google-vault-export-hyperlinked-drive-content-from-gmail-messages.html ("Starting December 8, 2023, admins can export Drive files hyperlinked in Gmail messages directly in Google Vault."). Three Defendants, Google, Snap, and TikTok, exclusively use Google Suite in the ordinary course of business.<br><br>2 See https://learn.microsoft.com/en-us/purview/ediscovery ("You can use eDiscovery tools in Microsoft Purview to search for content in Exchange Online, OneDrive for Business, SharePoint Online, Microsoft Teams, Microsoft 365 Groups, and Viva Engage teams. You can search mailboxes and sites in the same eDiscovery search, and then export the search results."). Defendant Meta uses Office365 which includes Microsoft Purview. | [These footnotes are not appropriate for an ESI Order]. |

**Issue 4: Redactions**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **APPENDIX 1**<br>**18) Redactions.**<br><br>(a) The Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) of the type described in Fed. R. Civ. P. 5.2 that is not otherwise relevant or responsive (e.g., users' ages, years of birth, illnesses, injuries, and medical diagnoses).<br><br>(b) No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.<br><br>(c) The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.<br><br>(d) Notwithstanding the foregoing, this provision shall not be | 18) Redactions.<br><br>(a) The Producing Party may redact personal identifying information (PII), information that cannot be disclosed pursuant to the Stored Communications Act (SCA), source code (CODE), and information subject to the attorney client privilege or the work product protection (PRIV). Redactions shall not be made solely for relevance within a produced document or ESI item.<br><br>(b) If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding those kinds of information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.<br><br>(c) The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.<br><br>(d) Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable law or Protective Order.<br><br>(e) Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the |

| | |
|---|---|
| read to prohibit redactions required under applicable U.S. law or Protective Order.<br><br>(e) Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.<br><br>(f) Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively. In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.<br><br>(g) All images of redacted files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application.  Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed.  Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged.  The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.  The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.<br><br>(h) Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein. | non-redacted portions.<br><br>(f)  Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted natively. In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.<br><br>(g) All images of redacted files shall be processed to show all comments, revision marks, speaker notes, or marks made in track changes, unless such material is redacted and marked in accordance with this section.<br><br><br><br>h)  Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein. |

**Issue 5: Databases and Structured Data**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **APPENDIX 1**<br>**12) Databases and Other Structured Data.**<br><br>To the extent that responsive information is stored in a database, or database management system, or proprietary system or otherwise maintained by an application, the Producing Party will identify the database and platform to the Requesting Party, and will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the format and scope of the production. The Producing Party will provide information about the databases to facilitate that discussion. | 12) Databases and Other Structured Data.<br><br>To the extent that a Producing Party produces information that is stored in a database upon production, the Producing Party will identify the database or platform to the Requesting Party. The Producing Party shall produce exports and reports in a reasonably usable form. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.<br><br>16 fn.3.<br>Except as separately agreed, the provisions in Sections 6-11 do not apply to non-custodial data like databases, other structured data, or user data. |

**Issue 6: Email Threading**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **15. EMAIL THREADING**<br><br>Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive message(s) ("Last In Time Email(s)") and need not produce | 11.           EMAIL THREADING<br><br>The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. |

| | |
|---|---|
| earlier, lesser inclusive email messages or "thread members," provided that the program being used to perform threading is disclosed and that (i) all participants in any role (Sender, To, CC and BCC) in any email in the thread are participants, although not necessarily in the same roles, in every email in the thread, (ii) all the subject lines of every email in the thread are identical or are identical except for added prefixes "Re:", or "Fwd:", (iii) the entire body of each thread member is included within the Last in Time Email(s), and (iv) any email in the thread with attachment(s) will be separately produced with the "ThreadID" in the metadata. If a thread member contains any additional or altered data that is not contained in the most-inclusive email (including, without limitation, attachments or BCC recipients), it is not a less-inclusive e-mail and must be separately produced. The Producing Party will honor requests to produce earlier chains of emails otherwise excluded by email thread suppression. | Upon reasonable request, the producing party will produce a less inclusive copy. |

**Issue 7: Deduplication**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **14. DEDUPLICATION**<br><br>Each Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI data set across all custodial and non-custodial sources at the family level using MD5 hash values or SHA hash values. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches as established by commercial software methods. Hash values of emails will be | 10. DEDUPLICATION<br><br>Each Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Party's ESI data set across all custodians at the family level using industry standard deduplication technology–i.e., MD5 hash values or SHA hash values. The parties will not withhold near-duplicates without meeting and conferring on this issue. The names of all custodians, who were identified as custodians for purposes of collection for |

10

| | |
|---|---|
| calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field. | this matter, who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field. |

**Issue 8: System Files**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **13. SYSTEM FILES**<br><br>Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource | 9.     SYSTEM FILES<br><br>Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, |

| | |
|---|---|
| Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. | Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. |

**Issue 9: Custodians and Data Sources**

| **Plaintiffs' Proposed ESI Language** | **Defendants' Proposed ESI Language** |
|---|---|
| **5. IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**<br><br>The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines.  The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description. | 5. IDENTIFICATION OF CUSTODIANS AND DATA SOURCES<br><br>The parties will make disclosures regarding custodians likely to have discoverable information and custodial and non-custodial data sources that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses in accordance with Fed. R. Civ. P. 26. The Parties will participate in Rule 26(f) discussions guided by this District's ESI Guidelines and Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description. |

| | |
|---|---|
| **6. INACCESSIBLE OR UNUSEABLE ESI**<br><br>If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably accessible", otherwise unnecessary, or if the Receiving Party asserts that, following production, certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such assertions. The parties will exchange sufficient information to enable the parties to confer in good faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution. | INACCESSIBLE OR UNUSEABLE ESI:<br><br>[No provision necessary in ESI Protocol] |

**Issue 10: Exception files**

| Plaintiffs' Proposed ESI Language | Defendants' Proposed ESI Language |
|---|---|
| **Appendix 1**<br>**19) Exception Files.** The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files.  In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination. | Exception Files. The Parties will use reasonable efforts to address processing exceptions. |