1   Previn Warren
    **MOTLEY RICE LLC**
2   401 9th Street NW Suite 630
    Washington, DC 20004
3   Telephone: 202-386-9610
    pwarren@motleyrice.com
4
5   *Attorney for Plaintiffs Baker, B.B., Booker, C.G., C.S.,*
    *Calvoni, Cameron, Cusato, D.S., Dodd, Dowdy, Garceau,*
6   *Haas, Hirka, J.F., Jackson, Jansky, K.C., Keizer, Koizol,*
    *M.C., M.M., N.K., Robertson, and S.S.*
7

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10  IN RE: SOCIAL MEDIA ADOLESCENT          Case No. 4:22-md-03047-YGR
    ADDICTION/PERSONAL INJURY
11  PRODUCTS LIABILITY LITIGATION           MDL No. 3047

12  ───────────────────────────────

13  This Document Relates to:               **PLAINTIFFS' OPPOSITION TO MARK**
                                            **ZUCKERBERG'S MOTION TO DISMISS**
14  *Baker*    (4:23-cv-01578);
15  *B.B.*     (4:23-cv-03032);             Judge Yvonne Gonzalez Rogers
    *Booker*   (4:23-cv-01537);
16  *C.G.*     (4:23-cv-01568);
    *C.S.*     (4:23-cv-01569);
17  *Calvoni*  (4:22-cv-05873);
    *Cameron*  (4:23-cv-03266);
18  *Cusato*   (4:23-cv-04961);
    *D.S.*     (4:23-cv-03402);
19  *Dodd*     (4:23-cv-01583);
    *Dowdy*    (4:23-cv-01866);
20  *Garceau*  (4:23-cv-04962);
    *Haas*     (4:23-cv-01565);
21  *Hirka*    (4:23-cv-03906);
    *J.F.*     (4:23-cv-01846);
22  *Jackson*  (4:23-cv-03774);
23  *Jansky*   (4:23-cv-02026);
    *K.C.*     (4:23-cv-03179);
24  *Keizer*   (4:23-cv-02972);
    *Koizol*   (4:23-cv-02244);
25  *M.C.*     (4:23-cv-03398);
    *M.M.*     (4:23-cv-01615);
26  *N.K.*     (4:23-cv-01584);
    *Robertson* (4:24-cv-00127);
27  *S.S.*     (4:23-cv-02024).

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

I.     INTRODUCTION ............................................................................................................... 1

II.    BACKGROUND .................................................................................................................. 1

       A.     Mark Zuckerberg's power as a decision-maker and spokesperson for
              Meta is unparalleled. ............................................................................................... 1

       B.     Mark Zuckerberg concealed evidence that Meta's platforms are not
              safe for youth. ......................................................................................................... 2

III.   LEGAL STANDARDS ....................................................................................................... 4

IV.    ARGUMENT ...................................................................................................................... 5

       A.     Mark Zuckerberg is personally liable for his omissions and concealment. ....... 6

       B.     Plaintiffs plausibly allege Mark Zuckerberg's fraudulent omissions and
              concealment. ............................................................................................................ 7

              1.     Mr. Zuckerberg had a duty to disclose the dangers Meta's products
                     present to minors. ........................................................................................ 7

              2.     Plaintiffs adequately plead that Mr. Zuckerberg made incomplete
                     statements of fact. ..................................................................................... 11

              3.     Plaintiffs relied on and were harmed by Mr. Zuckerberg's
                     misleading statements. .............................................................................. 12

       C.     Mr. Zuckerberg does not have a First Amendment right to lie to Congress .. 17

V.     CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  472 F.3d 99 (4th Cir. 2006) ................................................................ 17

*Acoustic Systems, Inc. v. Wenger Corp.*,
  207 F.3d 287(5th Cir. 2000) ............................................................... 17

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ........................................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 4

*Azoulai v. BMW of North America LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .................................... 12

*BAC Home Loans Serv. v. Farina*,
  2010 Conn. Super. LEXIS 4929 (Conn. Super. Ct. June 2, 2010) ......... 8

*Bain v. Jackson*,
  783 F. Supp. 2d 13 (D.D.C. 2010) ........................................................ 8

*Bank of Montreal v. Signet Bank*,
  193 F.3d 818 (4th Cir. 1999) .......................................................... 8, 10

*Batis v. Dun & Bradstreet Holdings, Inc.*,
  2023 WL 1870057 (N.D.Cal., 2023) .................................................. 17

*Bays v. Hunter Sav. Ass'n*,
  539 F. Supp. 1020 (S.D. Ohio 1982) .................................................. 10

*Belville v. Ford Motor Co.*,
  60 F. Supp. 3d 690 (S.D.W. Va. 2014) ................................................. 4

*Berger v. Sec. Pac. Info. Sys., Inc.*,
  795 P.2d 1380 (Colo. App. 1990) ......................................................... 9

*BP Am. Prod. Co. v. Patterson*,
  263 P.3d 103 (Colo. 2011) .................................................................. 13

*Brock v. Zuckerberg*,
  2021 WL 2650070 (S.D.N.Y. June 25, 2021) ....................................... 7

*Burman v. Richmond Homes Ltd.*,
  821 P.2d 913 (Colo. App. 1991) ......................................................... 10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ................................................................ 6

*Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*,
  181 S.W.3d 879 (Tex. App. 2006) ........................................................ 8

*Cope v. Metro Life Ins. Co.*,
  82 Ohio St.3d 426, 436 (Ohio 1998) .................................................. 13

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................................. 13, 17

*Dean v. Beckley*,
    2010 WL 3928650, at (D. Md. Oct. 1, 2010) ............................................................ 8

*DiMichele v. Perrella*,
    120 A.3d 551 (Conn. App. Ct. 2015) ...................................................................... 10

*Donsco, Inc. v. Casper Corp.*,
    587 F.2d 602 (3d Cir. 1978) .................................................................................... 6

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961) ............................................................................................... 18

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ............................................................................... 18

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................... 4

*First Marblehead Corp. v. House*,
    473 F.3d 1 (1st Cir. 2006) ........................................................................................ 5

*Frances T. v. Vill. Green Owners Ass'n*,
    42 Cal.3d 490 (1986) ............................................................................................... 6

*Garrison v. State of Louisiana*,
    379 U.S. 64 (1964) ................................................................................................. 18

*Gilmore v. Wells Fargo Bank N.A.*,
    75 F. Supp. 3d 1255 (N.D. Cal. Dec. 16, 2014) ....................................................... 5

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
    155 F. Supp. 3d 670 (S.D. Tex. 2015) .................................................................... 12

*Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc.*,
    31 F.3d 573 (7th Cir. 1994) .................................................................................... 17

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) ........................................................................... 16

*In re Apple Inc. Sec. Litig.*,
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ...................................................... 12, 18

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................... 16

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) .............................................................. 11, 15

*In re Coventry Healthcare, Inc. Sec. Litig.*,
    2011 WL 1230998 (D. Md. Mar. 30, 2011) ............................................................ 11

*In re Ford Motor Co. Sec. Litig.*,
    381 F. 3d 563 (6th Cir. 2004) ................................................................................ 12

*In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*,
    76 F. Supp. 3d 321 (D. Mass. 2015)................................................................ 7

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................................. 15

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ...................................................................... 12

*In re Takata Airbag Prods. Liability Litig.*,
    2017 WL 775811 (S.D. Fla. Feb. 27, 2017) ................................................. 10

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2017 WL 1902160 (D.N.J. May 8, 2017).......................................................... 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318, *29 (N.D. Cal. Aug. 30, 2017).................................... 12

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022)...................................................16, 17

*In re: Gen. Motors LLC Ignition Switch Litig.*,
    2016 WL 3920353 (S.D.N.Y. July 15, 2016) ............................................... 10

*Jones v. Corus Bankshares, Inc.*,
    701 F. Supp. 2d 1014 (N.D. Ill. 2010) ......................................................... 11

*Kaloti Enter., Inc. v. Kellogg Sales Co.*,
    699 N.W.2d 205 (Wis. 2005).......................................................................... 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 4

*Khan v. Shiley Inc.*,
    266 Cal. Rptr. 106 (Cal. Ct. App. 1990) ...................................................... 10

*Kottle v. Nw. Kidney Centers*,
    146 F.3d 1056 (9th Cir 1998) ....................................................................... 18

*Lerner v. DMB Realty, LLC*,
    234 P.3d 909 (Ariz. Ct. App. 2014) ............................................................... 8

*LiMandri v. Judkins*,
    60 Cal. Rptr. 2d 539 (1997) ......................................................................6, 10

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .................................................. 7

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................ 5, 13, 16

*Maxwell v. United Servs. Auto. Ass'n*,
    342 P.3d 474 (Colo. App. 2014) ................................................................... 13

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) .......................................................... 8

iv

*McDonald v. Smith,*
    472 U.S. 479 (1985) ........................................................................................................ 18

*McKee v. James,*
    2013 WL 3893430 (N.C. Super. July 24, 2013) .............................................................. 8

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
    521 F.3d 1097 (9th Cir. 2008) ......................................................................................... 4

*Mewawalla v. Middleman,*
    601 F. Supp. 3d 574 (N.D. Cal. 2022) ............................................................................ 6

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082 (Cal. 1993) ........................................................................................... 13

*Morris v. Princess Cruises, Inc.,*
    236 F.3d 1061 (9th Cir. 2001) ....................................................................................... 12

*Njoku v. Geico Gen. Ins. Co.,*
    2020 WL 4915433, (N.D. Cal. May 6, 2020). ................................................................ 5

*Nooner Holdings, Ltd. v. Abilene Vill., LLC,*
    668 S.W.3d 956 (Tex. App. 2023) ................................................................................. 10

*Nota Const. Corp. v. Keyes Assocs., Inc.,*
    694 N.E.2d 401 (Mass. App. Ct. 1998) .......................................................................... 9

*O'Connor v. Uber Techs., Inc.,*
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ............................................................. 6, 7

*Patino v. Cnty. of Monterey,*
    2023 WL 375349 (N.D. Cal. Jan. 24, 2023) ................................................................... 7

*Perkins v. LinkedIn Corp.,*
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................................... 16

*Perry v. Merit Sys. Prot. Bd.,*
    582 U.S. 420 (2017) ...................................................................................................... 18

*Pirozzi v. Apple Inc.,*
    913 F. Supp. 2d 840 (N.D. Cal. 2012) .......................................................................... 16

*Priselac v. Chemours Co.,*
    2022 WL 909206 (E.D.N.C. Mar. 28, 2022) ................................................................. 6

*Quashnock v. Frost,*
    445 A.2d 121 (Pa. Super. Ct. 1982) ............................................................................... 8

*Roberts v. Paine,*
    199 A. 112 (Conn. 1938) ................................................................................................ 9

*Sloan v. Gen. Motors LLC,*
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................ 5, 13, 16

*Social Media Cases,*
    JCCP 5255, 2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ....................................... 10

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...................................................................................... 18

*Stamm v. Salomon*,
    551 S.E. 2d 152 (N.C. Ct. App. 2001) ....................................................................... 10

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
    40 F. Supp. 2d 644 (W.D. Pa. 1999) .......................................................................... 10

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ............................................................. 16

*Theme Promotions, Inc. v. News Am Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ...................................................................................... 18

*Tuosto v. Philip Morris USA Inc.*,
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ............................................................ 18

*TVT Recs. v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ........................................................................................... 8

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ........................................................................ 12

*Zwiercan v. Gen. Motors Corp.*,
    2002 WL 31053838 (Pa. Ct. Com. Pl. 2002) ............................................................. 13

**Statutes**

18 U.S.C. § 1001 ................................................................................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 4

Fed. R. Civ. P. 9(b) ................................................................................................ 4, 5, 13, 16

**Other Authorities**

63A Am. Jur. 2d Products Liability § 779 .......................................................................... 10

Restatement (Second) of Torts (1965) ................................................................................. 11

Stan Lee & Steve Ditko, *Introducing Spider Man*,
    Amazing Fantasy 15 (Marvel Comics 1962) .............................................................. 2

U.S. Const. Amend. I ............................................................................................................ 18

PLAINTIFFS' OPPOSITION TO DEFENDANT
MARK ZUCKERBERG'S MOTION TO DISMISS
CASE NO. 4:22-MD-03047-YGR

## I. INTRODUCTION

Mark Zuckerberg is not merely a CEO; he is a household name. Given his outsized role as Meta's spokesperson, his superior knowledge of its products—namely, Facebook and Instagram—and his decision to vouch for their safety, Mr. Zuckerberg accepted the duty to speak fully and truthfully on the risks Meta's platforms pose to children's health. Had he done so, Plaintiffs would have acted differently to prevent the suffering they endured. Mr. Zuckerberg's omissions harmed Plaintiffs[1] and countless children across the country. He is an actual participant in the tort, and his efforts to hide behind Meta are unavailing. His motion to dismiss, ECF 518 (hereinafter "Mot."), should be denied.

## II. BACKGROUND

### A. Mark Zuckerberg's power as a decision-maker and spokesperson for Meta is unparalleled.

Mark Zuckerberg delivered Facebook into existence, spearheaded his company's acquisition of Instagram, and shepherded explosive growth on both platforms, making Facebook and Instagram ubiquitous in public life. SAC[2] ¶¶ 187, 193-208, 209-15. Even at Facebook's inception, Mr. Zuckerberg knew he was no ordinary "Founder," listing himself also as the "Master and Commander" and "Enemy of the State" on Facebook's first masthead.[3] His unparalleled role in the company persists to this day, *see* AG ¶ 39,[4] and issues he does not engage with do not get institutional support. Mr. Zuckerberg repeatedly ignored employee requests to invest in initiatives addressing user well-being, leaving Meta's mental health team defunded such that it "completely stopped" work by the end of 2019. SAC ¶ 366. In 2021, a renewed request to address "concerns about the impact of [Meta's] products on young

---

[1] Mr. Zuckerberg notes that only the twenty-four Plaintiffs who have filed short form complaints naming him as a defendant are the subject of his motion. Mot. at 2. The twenty-five Plaintiffs named in the caption represent the updated and active cases in which Mr. Zuckerberg is named as a defendant. Each of these Plaintiffs used Instagram.

[2] References to "SAC ¶ __" are to Plaintiffs' Second Amended Master Complaint (Personal Injury), ECF 494.

[3] *See* Jillian D'Onfro, *Facebook's News Feed is 10 years old. This is how the site has changed*, World Econ. F. (Sept. 9, 2016), https://weforum.org/agenda/2016/09/facebooks-news-feed-is-10-years-old-this-is-how-the-site-has-changed (referenced in SAC ¶ 195 nn.209, 210, 211, 213).

[4] References to "AG ¶ __" are to the paragraphs of the multistate complaint filed by numerous attorneys general in *State of Arizona v. Meta Platforms, Inc.*, No. 4:23-cv-05448, ECF 1 (Oct. 24, 2023), which are incorporated by reference in SAC ¶ 391A.

people's mental health," was met with a Meta executive's acknowledgment that there was a "very low-likelihood that Mark chooses to fund more here." AG ¶¶ 621-29.

With great power comes great responsibility.[5] Unfortunately, Mr. Zuckerberg has not lived up to that maxim. Even amidst Meta's unprecedented evolution and expansion, he has maintained a tight grip on design and engagement-focused decisions, consistently promoting growth and profits over user safety. *See, e.g.*, AG ¶¶ 57, 144. As one Meta software engineer explained, "many employees feel that if they whistleblow, dissent, give feedback to unethical decisions, etc, then they are at risk for being fired." SAC ¶ 381. When Meta executives were in active disagreement about whether to increase the quantity of notifications sent to users to boost engagement, the conversation ended with confirmation that the number of active users "[was] a bigger concern for Mark . . . than user experience." AG ¶ 322. Another such veto included rejecting his Vice President of Product Design and Responsible Innovation's proposed ban on filters that simulate plastic surgery. AG ¶¶ 339-63. Although "outside academics and experts consulted were nearly unanimous on the harm," and the proposed ban earned significant employee support, Mr. Zuckerberg ignored the data, called the proposal "paternalistic," and cited "clear[] demand" as reason enough to reject it. *Id.* ¶¶ 339-63.

### B. Mark Zuckerberg concealed evidence that Meta's platforms are not safe for youth.

Mr. Zuckerberg has long established himself as a resource to the public on all things Meta—he is *the* face of Facebook, and now Meta. For example, in 2006, when users expressed concern over the novel Facebook "news feed" displaying more data about users in real time, Mr. Zuckerberg personally responded. *See* SAC ¶ 195 n.213 (citing article referencing Zuckerberg post titled "Calm down. Breathe. We hear you."). In the wake of outcry about extremist content on social media, Mr. Zuckerberg posted a lengthy "Blueprint for Content Governance and Enforcement." SAC ¶ 271. People listen to what Mr. Zuckerberg has to say. And Mr. Zuckerberg's ability to command attention and drive the news is not limited to his own products. He publishes op-eds in major papers, is a guest of prominent technology journalists, and is invited to public conversations with senators. *See* SAC ¶ 369 nn.490, 497, 484. His every word is a focus of such intense public interest that Marquette University hosts The

---

[5] Stan Lee & Steve Ditko, *Introducing Spider Man*, Amazing Fantasy 15 (Marvel Comics 1962).

Zuckerberg Files, a digital archive of Mr. Zuckerberg's public statements. SAC ¶ 176 n.167 (citing same).

Mr. Zuckerberg has long understood his influence over how people understand and use his products. Regrettably, he abused that power by concealing information about Facebook and Instagram and creating a false impression of their safety. Mr. Zuckerberg was warned by both external and internal sources that Meta's products are unsafe for children. In 2019, he met with a psychologist and leading expert who explained that research "points heavily to a connection" between social media use and youth mental health issues. SAC ¶ 365. Likewise, a Meta employee informed him that the company was "not on track to succeed for our core well-being topics (problematic use, bullying & harassment, connections, and [suicide and self-injury]), and [was] at increased regulatory risk and external criticism. These affect everyone, especially Youth and Creators." SAC ¶ 183. Mr. Zuckerberg received a similar warning in a 2021 email from an employee, who cautioned that users were having far more harmful experiences on Instagram than Meta's public metrics acknowledged. AG ¶¶ 504-505. On top of this, Mr. Zuckerberg knew that children under the age of 13 were using Meta products. Internal Meta documents indicate that in 2018, Mr. Zuckerberg personally received a report estimating there were four million kids under thirteen using Instagram. AG ¶¶ 657-60.

Mr. Zuckerberg easily could have, but chose not to, use his megaphone to share any of this information with the public. Instead, he did the opposite. In 2019, as he ignored internal requests to fund user well-being initiatives, Mr. Zuckerberg posted to his followers: "You should expect we'll do everything we can to keep you safe on our services," SAC ¶ 370(l), and told investors he was "proud of the work that [Meta] ha[s] done to get in front of a lot more of these [safety and security] issues." SAC ¶ 370(j). And in 2021, despite knowing that Meta's algorithms could contribute to addiction (or what Meta called "problematic use"), SAC ¶¶ 276-79, Mr. Zuckerberg told Congress—and the American public—that he did not believe his platforms harm children. SAC ¶ 370(p). At the same hearing, when asked whether passive consumption of social media harmed children's mental health—something Meta's internal research established—Mr. Zuckerberg suggested the opposite was true: "Overall, the research that we have seen is that using social apps to connect with other people can have positive mental health benefits and well-being benefits by helping people feel more connected and less lonely." AG ¶ 419. And when two United States senators wrote to Mr.Zuckerberg asking for the findings of

Meta's research on the platforms' impact on youth well-being, the response did not disclose Meta's own detailed studies demonstrating its products can and do result in "problematic use" that disproportionately causes harm for young users. AG ¶ 593; SAC ¶¶ 373-79. The truth became front-page news[6] just weeks later when Frances Haugen shared these studies and other Meta documents with the Wall Street Journal and testified before Congress. SAC ¶¶ 217-20, 377.

Furthermore, since at least 2011, Mr. Zuckerberg has maintained that Meta does not allow children under the age of thirteen to use its products. SAC ¶¶ 369(c). He reiterated this point at a congressional hearing in 2021, stating: "[W]e have additional systems that try to determine what someone's age might be so if we detect that someone might be under the age of 13, even if they lied, we kicked them off." AG ¶ 770. Mr. Zuckerberg's incomplete and misleading public statements created a false impression that Meta was actively working to make its products safe for minors and inaccessible to children too young for the platforms.

## III.   LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Allegations of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" suffice to survive a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept factual allegations in the complaint as true in deciding the claims' plausibility. *Id.*

While the pleading requirements for claims that "sound in fraud" or are "grounded in fraud," are heightened, Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), "many courts do not apply a strict Rule 9(b) analysis to allegations of omissions." *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 696 (S.D.W. Va. 2014); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (omission claim did not have to "specify the time, place, and specific content of an omission as precisely as would a . . . false representation claim"). "Because the Plaintiffs are alleging a

---

[6] The print version of at least two articles included in the "Facebook Files" cited in paragraph 217 of the SAC appeared on page A1. John D. McKinnon & Ryan Tracy, *Facebook Hearing Fuels Call for Reins on Tech*, Wall St. J., October 6, 2021, at A1; Keach Hagey & Jeff Horwitz, *Facebook Tried to Make Platform Healthier. It Got Angrier Instead*, Wall St. J., September 16, 2021, at A1.

failure to act instead of an affirmative act, the Plaintiffs cannot point out the specific moment when the Defendant failed to act." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (cleaned up). Therefore, an omissions-based fraud claim can satisfy Rule 9(b) through more generalized allegations about the "who what when where, and how" of the alleged misconduct: who should have revealed information, what the information was, when they should have done so, and where plaintiffs would have received this information. *Id.*

## IV.   ARGUMENT

Plaintiffs assert fraudulent- and negligent-omission claims against both Meta and its "Master and Commander." As discussed in more detail below, together, the Second Amended Master Complaint and applicable short-form complaints more than adequately allege that Mr. Zuckerberg (1) owed a duty to disclose material facts to the Plaintiffs and (2) "concealed or suppressed" those facts, and that (3) Plaintiffs were unaware of the facts and would have acted differently if they had known the truth, which (4) resulted in their injury.[7] *See, e.g.*, *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018) (quoting *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 32 (Cal. Ct. Ap. 2007)).

Mr. Zuckerberg moves to dismiss on the grounds that Plaintiffs have failed to allege reliance, injury, or actionable misstatements of fact within the framework of fraudulent misrepresentation.[8] But Plaintiffs' claims center on what Mr. Zuckerberg *failed* to say. In this regard, Plaintiffs' claims are largely untouched by Mr. Zuckerberg's arguments and authorities, which focus on the actionability of affirmative false statements, rather than misrepresentation by omission. In the only portion of his

---

[7] As Mr. Zuckerberg notes, the fundamental elements of fraud are substantially similar from state to state. Mot. at 7. Negligent misrepresentation shares these elements and requires that reliance be "justifiable" and the omission made "with failure to exercise reasonable care or competence." *See, e.g.*, *First Marblehead Corp. v. House*, 473 F.3d 1, 9-10 (1st Cir. 2006).

[8] With scant exception, Mr. Zuckerberg only addresses Plaintiffs' negligent-misrepresentation claims indirectly, insofar as their elements overlap with fraudulent misrepresentation. *See* Mot. at 7 n.6 (citing one case noting the "reasonable reliance" standard applicable in negligent-misrepresentation cases). Accordingly, Plaintiffs do not separately discuss their negligence theory but respectfully submit that the facts discussed in part IV.B.3 demonstrate that their reliance was reasonable, even under the heightened pleading standard of Rule 9(b). However, Plaintiffs note that "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation," *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1269 (N.D. Cal. Dec. 16, 2014), and district courts remain "divided on [this] question." *Njoku v. Geico Gen. Ins. Co.*, 2020 WL 4915433, *3 (N.D. Cal. May 6, 2020).

motion that squarely addresses Plaintiffs' omissions claims, Mr. Zuckerberg argues that he owes no duty to disclose the dangers Meta's products present to minors. As explained further in Part IV.B.1, however, Mr. Zuckerberg's duty to disclose arose from his (1) superior and exclusive knowledge about, and (2) misleading partial representations regarding, the risk of harm created by his company's products. Mr. Zuckerberg's motion should be denied.

### A.    Mark Zuckerberg is personally liable for his omissions and concealment.

As an initial matter, Mr. Zuckerberg insists that he is insulated from liability for Meta's conduct. Mot. at 4-6. In doing so, he mischaracterizes Plaintiffs' claims as allegations based on Mr. Zuckerberg's "[m]ere status as an executive" or "shareholder" *Id.* at 5. Plaintiffs are not suing Mr. Zuckerberg for Meta's conduct—they are suing him for *his own* tortious omissions and concealment.

Mr. Zuckerberg may not "hide 'behind the corporation where he is an actual participant in the tort.'" *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978)); *see also O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (quoting *Frances T. v. Vill. Green Owners Ass'n*, 42 Cal.3d 490, 507-08 (1986)) ("[T]he corporate fiction . . . was never intended to insulate officers from liability from their own tortious conduct."); *Priselac v. Chemours Co.*, 2022 WL 909206, at *11 (E.D.N.C. Mar. 28, 2022) (plaintiff sufficiently alleged two corporate officers' participation in environmental trespass claim by alleging omitted material information in permit applications they helped craft). Indeed, the case Mr. Zuckerberg cites as representative of the black-letter law on corporate-officer liability supports denying his motion. Mot. at 4-5. As in *Mewawalla v. Middleman*, 601 F. Supp. 3d 574 (N.D. Cal. 2022), Plaintiffs have alleged sufficient facts to show "that [Mr. Zuckerberg] had a duty to disclose," *infra* IV.B.1, that Mr. Zuckerberg "had exclusive knowledge of material facts not known to the plaintiff[s]," and "to put [Mr. Zuckerberg] on notice of what [he] concealed from Plaintiff[s] and when it occurred." *Mewawalla*, 601 F. Supp. 3d at 602-03 (quoting *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (1997)).

Far from "rely[ing] on allegations regarding Meta's corporate conduct generally," Mot. at 6, Plaintiffs allege that Mr. Zuckerberg personally omitted and concealed material facts about his company. *See generally supra* Part II.B. Plaintiffs detail Mr. Zuckerberg's actual and constructive knowledge of the dangers Meta's products pose to the mental health of minors, *see* SAC ¶¶ 183, 276-

81, 365; AG ¶¶ 267, 521, 613, 621-29, his role in creating those dangers, *see* AG ¶¶ 340-58, the widespread use of the products by children under 13-years-old, AG ¶¶ 657-60, and various invitations Mr. Zuckerberg had to share this information with the public, *see, e.g.*, SAC ¶ 370(p) (asking Mr. Zuckerberg, "Do you believe that your platform harms children?"); AG ¶ 419 (asking Mr. Zuckerberg whether passively consuming social media harms children's mental health); SAC ¶¶ 373 n.508, 374-79, AG ¶ 593 (asking Mr. Zuckerberg whether Meta "conducted research on the effect of its platforms and products on children's and teens' mental health and well being" and the findings of such studies); SAC ¶¶ 369(c) (asking Mr. Zuckerberg to "elaborate upon" Facebook's accessibility to children under thirteen).

Mr. Zuckerberg also argues that because claims against him in unrelated cases were dismissed in the past, Plaintiffs' claims, too, are ripe for dismissal. Mot. at 5. Again, Mr. Zuckerberg fails to take the claims against him in this case seriously. They are a far cry from merely "identifying [his] role[] in the corporation and alleging that [he was] 'responsible' for" existing corporate policies or practices. *O'Connor*, 2013 WL 6354534, at *18; *see also Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *5 (N.D. Cal. Oct. 3, 2022) (complaint alleged only the bare assertion that Mr. Zuckerberg "should be held liable because he is the CEO of the company and was 'personally involved and/or directed the challenged acts'" with no additional facts); *Brock v. Zuckerberg*, 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) ("Plaintiff fails to allege any facts that connect Zuckerberg . . . to Facebook's removal of his posts").[9]

**B.     Plaintiffs plausibly allege Mark Zuckerberg's fraudulent omissions and concealment.**

**1.     *Mr. Zuckerberg had a duty to disclose the dangers Meta's products present to minors.***

Mr. Zuckerberg had a duty to disclose the risks Meta's products pose to children's mental health and physical well-being. Plaintiffs plausibly allege facts giving rise to such a duty based upon:

---

[9] Mr. Zuckerberg's other cited authorities are equally distinguishable. *See Patino v. Cnty. of Monterey*, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) (complaint "lump[ed] multiple defendants together in a manner that ma[de] it impossible to tell what each defendant is alleged to have done or not done"); *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 321, 336 (D. Mass. 2015) (the plaintiff "failed to produce any evidence suggesting the existence of red flags that were brought to [Defendant's] attention" after discovery).

(1) Mr. Zuckerberg's exclusive and superior knowledge of the ways Meta's products exploit minors, presenting risks to their health; and (2) his public, partial representations concerning the safety of Meta's products.

Courts overwhelmingly recognize that the duty to disclose arises "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005); *see, e.g.*, *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (applying Virginia law) ("A duty may arise . . . if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist.").[10]

In the present case, Plaintiffs sufficiently plead Mr. Zuckerberg's superior knowledge of the harms Meta's products pose to minors. *See, e.g.*, *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *19 (D.N.J. May 8, 2017). Plaintiffs allege that Mr. Zuckerberg "heard firsthand from a leading researcher that Instagram and Facebook posed unique dangers to young people," SAC ¶¶ 185,

---

[10] *See also Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 888 (Tex. App. 2006) ("The duty to disclose arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to discover the truth." (citations omitted)); *Lerner v. DMB Realty, LLC*, 234 P.3d 909, 917 (Ariz. Ct. App. 2014) (a party to a transaction "may be required to disclose information when the [other party] reasonably cannot discover the information for himself"); *BAC Home Loans Serv. v. Farina*, 2010 Conn. Super. LEXIS 4929, *2 (Conn. Super. Ct. June 2, 2010) ("[A] duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair."); *Dean v. Beckley*, 2010 WL 3928650, at *5 (D. Md. Oct. 1, 2010) (acknowledging a duty to disclose "if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist"); *McKee v. James*, 2013 WL 3893430, at *8 (N.C. Super. July 24, 2013) (Recognizing a duty to disclose "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." (citation omitted)); *Quashnock v. Frost*, 445 A.2d 121, 128 (Pa. Super. Ct. 1982) (party with superior knowledge had a duty to disclose a latent or "serious and dangerous condition . . . not readily observable upon reasonable inspection."); *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010) (defendant's "position of 'superior knowledge' with respect to plaintiff . . . triggered a duty to disclose"); *Bain v. Jackson*, 783 F. Supp. 2d 13, 18 (D.D.C. 2010) (applying New York law) (a "duty to disclose arises only where one party possesses superior knowledge of essential facts that makes a transaction inherently unfair"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (acknowledging duty to disclose where defendant concealed "intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover" (citation omitted)); *Kaloti Enter., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 213 (Wis. 2005) (establishing duty to disclose where a material fact "is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it").

365, 993, "was warned personally" by employees that Meta was "not on track to succeed for [its] core well-being topics . . . affect[ing] everyone, especially Youth," *id.* ¶ 183, "came to understand that Meta was 'actively encouraging young girls into body dysmorphia,'" AG ¶¶ 340-41, received data from internal researchers confirming that social media exacerbates negative comparisons and user mental health issues, *id.* ¶¶ 557-58, 416-17, and declined to fund internal initiatives to develop solutions to mounting "concerns about the impact of [Meta's] products on young people's mental health," *id.* ¶¶ 612-29. Plaintiffs allege sufficient facts to show that Mr. Zuckerberg had more knowledge (from more sources) about the harms Meta's products pose to youths than anyone else, and that he repeatedly concealed it. Given Mr. Zuckerberg's prominence as the speaker for a pioneering technology used by billions of people, he owed a duty to provide Plaintiffs with material information about the dangers Meta's platforms pose to minors, about which he had exclusive and far superior knowledge.

Mr. Zuckerberg is incorrect that a "a duty to disclose [typically] does not exist absent a contractual or other special relationship between the parties." Mot. at 12. Although the duty-to-disclose inquiry often begins by evaluating the "relationship of the parties," the issue boils down to "whether the occasion and circumstances are such as to impose a duty to speak." *Roberts v. Paine*, 199 A. 112, 115 (Conn. 1938). In lieu of artificially restricting application of the duty to disclose to specific transactions and business relationships, courts favor a contextual approach. *See, e.g., Nota Const. Corp. v. Keyes Assocs., Inc.*, 694 N.E.2d 401, 404 (Mass. App. Ct. 1998) ("[A] duty to disclose may arise in a number of circumstances"). In general, "a person has a duty to disclose to another with whom he deals facts that 'in equity or good conscience' should be disclosed," even where no contractual or fiduciary relationship exists. *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990) (employer had a duty to disclose information to prospective employee).

With these points in mind, Mr. Zuckerberg's duty must be considered in the context of his company's. In the process of founding and leading a company that revolutionized social engagement and communication—and captured the attention of millions of people across the globe—Mr. Zuckerberg was the trusted voice on all things Meta, including on sensitive, consequential social and political issues. *See supra* Part II.B. Even as he commanded an increasingly towering presence in the tech industry, Mr. Zuckerberg remained an approachable resource to the public. *See, e.g.,* SAC ¶ 195

n.213 ("Calm down. Breathe. We hear you."). Plainly, Meta owed a duty to its customers to inform them that Meta's products are defective and to warn them of the risks associated with their use.[11] *Social Media Cases*, JCCP 5255, 2023 WL 6847378, at \*44-45 (Cal. Super. Oct. 13, 2023); *see also Khan v. Shiley Inc.*, 266 Cal. Rptr. 106, 112 (Cal. Ct. App. 1990) (confirming that manufacturers have a duty to disclose safety information concerning anything from a "mechanical heart valve [to] frozen yogurt"); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at \*39 (S.D.N.Y. July 15, 2016) (the plaintiff adequately plead violation of duty to disclose where defendant knew about latent defects). By cultivating his roles in public life as both the embodiment of Meta and Silicon Valley's approximation of a philosopher king, Mr. Zuckerberg accepted the same duty.

Mr. Zuckerberg also had a duty to disclose his knowledge of the harms social media posed to young people because of his partial representations on the subject. "[W]hen the defendant makes partial representations but also suppresses some material facts," a duty to disclose exists, 63A Am. Jur. 2d Products Liability § 779,[12] and "there may be recovery either on the basis of the original misleading

---

[11] In its motion to dismiss the Personal Injury Plaintiffs' misrepresentation claims (SAC Counts 8 and 9), Meta does not argue that it did not have a duty to disclose its platforms' defects to users. ECF 517 at 64-66.

[12] *See, e.g., In re Takata Airbag Prods. Liability Litig.*, 2017 WL 775811, at \*4 (S.D. Fla. Feb. 27, 2017) (applying South Carolina Law) (finding duty to disclose where defendant made "incomplete representations about the safety and reliability of [products]"); *Bays v. Hunter Sav. Ass'n*, 539 F. Supp. 1020, 1025 (S.D. Ohio 1982) ("Ohio law imposes a duty to make full disclosure in circumstances where full disclosure is necessary to dispel misleading impressions that are, or might have been, created by partial revelation of the facts."); *Stamm v. Salomon*, 551 S.E. 2d 152, 158 (N.C. Ct. App. 2001) (concealment occurs when a person "has made a partial or incomplete representation"); *Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956, 966 (Tex. App. 2023) ("Various Texas courts of appeals have generally agreed that a duty to disclose may arise based upon a partial disclosure . . . [and] when a party makes a true disclosure that conveys a false impression."); *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336, 60 Cal.Rptr.2d 539 (1997) (defendant has a duty to disclose "when [he] makes partial representations but also suppresses some material facts"); *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 657 (W.D. Pa. 1999) ("a party making an 'incomplete' representation that could be misleading if left to stand alone is under a duty to disclose such other facts as may be necessary to make the initial statement clear"); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991) ("[A] party has a duty to disclose if he has stated facts that he knows will create a false impression unless other facts are disclosed."); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (applying Virginia law) ("A duty may arise if . . . one party takes actions which divert the other party from making prudent investigations or by making a partial disclosure)"); *DiMichele v. Perrella*, 120 A.3d 551, 554 (Conn. App. Ct. 2015) ("Under the common law, a duty to disclose 'is imposed on a party insofar as he voluntarily makes disclosure. A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak.'").

statement *or of the nondisclosure of the additional facts*." Restatement (Second) of Torts § 551 cmt. g (1965) (emphasis added). Moreover, "concealment may amount to fraud . . . where, in addition to a party's silence, there is *any statement, word, or act on his part*, which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1008-09 (N.D. Cal. 2018) (emphasis added) (quoting *Lubore v. RPM Assocs.*, 674 A.2d 547, 556 (Md. Ct. App. 1996)); *see also id.* at 1010 ("[i]f in addition to the party's silence there is any statement, even in word or act on his part, which tends affirmatively to a suppression of truth . . . the concealment becomes fraudulent" (internal quotation marks omitted)).

Here, Plaintiffs adequately allege that Mr. Zuckerberg made numerous statements in which he concealed material information about the risks of using Meta's platforms despite various explicit invitations to disclose it. *See supra* Part IV.A. For example, when Mr. Zuckerberg was asked about the harm that passive consumption of social media could pose to children's mental health, he "played up the benefits" of Meta's platforms despite "being given talking points on the negative effects of passive consumption on mental health to prepare for the congressional hearing." AG ¶ 419. In sum, Mr. Zuckerberg had a duty to disclose what he knows better than anyone: that using Meta's products could harm the mental health of children.

### 2.   *Plaintiffs adequately plead that Mr. Zuckerberg made incomplete statements of fact.*

Mr. Zuckerberg's insistence that his partial disclosures regarding the safety of Meta's platforms constitute non-actionable "puffery" is wrong. Mot. at 9-11. Even a statement that could be construed as mere puffery is rendered materially misleading—giving rise to a duty to disclose—where the defendant's knowledge renders the statement deceptive. *See Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1027-28 (N.D. Ill. 2010) ("[S]tatements that would otherwise amount to puffery can be actionable if the speaker is aware that the statement is deceptive."); *In re Coventry Healthcare, Inc. Sec. Litig.*, 2011 WL 1230998, at *12 (D. Md. Mar. 30, 2011).

Here, plaintiffs adequately allege that Mr. Zuckerberg made statements over several years indicating that Meta prioritized safety on its platforms and that the platforms are in fact safe, with

knowledge that those statements were incomplete and misleading. *See supra* Part II.B; *see also In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *15 (N.D. Cal. June 2, 2020) ("[A] party cannot affirmatively create a positive impression of an area it knows to be doing poorly."); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("Even 'general statements of optimism, when taken in context, may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly.").

The authorities Mr. Zuckerberg cites in support of finding his statements non-actionable are inapposite. Mot. at 9-10. In two cases, the defendant made statements regarding safety without the existence of contrary facts at the time the statement was made. *In re Ford Motor Co. Sec. Litig.*, 381 F. 3d 563, 570 (6th Cir. 2004) (Ford disclosed "accurate historical data" without noting potential for less favorable results in future quarters); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at * 8 (N.D. Cal. Apr. 13, 2017) (under statutory claims asserted under omission theory, plaintiffs failed to assert defect contrary to any affirmative statements). In others, the plaintiffs did not assert any omission or concealment claim. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 682 (S.D. Tex. 2015); *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016). And the fraudulent-omission claim analysis in *In re Yahoo!* assumed a duty to disclose to dismiss on other grounds. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, *29 (N.D. Cal. Aug. 30, 2017). In light of Plaintiffs' factual allegations, Mr. Zuckerberg's attempt to recast his misleading statements (which give rise to a duty to disclose) as "involv[ing] vague, non-specific matters of **opinion**," Mot. 10 (emphasis in original); Appx. A, misses its mark.

### 3.    *Plaintiffs relied on and were harmed by Mr. Zuckerberg's misleading statements.*

In arguing that Plaintiffs did not adequately allege reliance, Mot. at 7-9, Mr. Zuckerberg again fails to appreciate the distinction between fraudulent misrepresentation and fraudulent omission and concealment. Plaintiffs' claims turn on the impact of Mr. Zuckerberg's *silence*—of his decision to hide highly material information about the safety of Instagram and Facebook from public view, despite speaking about the same topics. Thus, it does not matter whether Plaintiffs "saw any of the supposedly

false statements" or relied on any one specific statement by Mr. Zuckerberg, Mot. at 7-8. "What matters in an omission case . . . is whether the plaintiff had an opportunity to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018). Under Rule 9(b), claims based on an omission can succeed without the same level of specificity required by a normal fraud claim. This is because a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim. *See MacDonald*, 37 F. Supp. at 1096.

In this regard, the reliance inquiry focuses on whether plaintiffs would have acted differently had they known the disclosed information. In many states, a presumption of reliance arises when the omission is material. *See, e.g.*, *Cope v. Metro Life Ins. Co.*, 82 Ohio St.3d 426, 436 (Ohio 1998) ("It is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance."); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, *5 (Pa. Ct. Com. Pl. 2002) ("Plaintiff's reliance on Defendant's active concealment can be presumed because the concealment of the alleged defect would be material to the Plaintiff's decision to purchase her car."). In others, "reliance may be inferred from circumstantial evidence where the defendant concealed a material fact from the plaintiff." *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110 (Colo. 2011); *see also Maxwell v. United Servs. Auto. Ass'n*, 342 P.3d 474, 481 (Colo. App. 2014) (explaining that the materiality of an omission allows for the inference of reliance through circumstantial rather than direct evidence, although there must still be some evidence of reliance). For example, in California, "[t]hat one would have behaved differently can be presumed, or at least inferred, when the omission is material," although plaintiffs must still plausibly allege that they would have been aware of the omitted information had it been publicly revealed. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (Cal. 1993) (explaining that materiality of omission is relevant to plaintiffs' allegations that, "had the omitted information been disclosed, [they] would have been aware of it and behaved differently").

Reading the Master Complaint and the Short Form Complaints together[13] and accepting as true all factual allegations in the pleadings, Plaintiffs adequately allege that they relied upon Mr. Zuckerberg's omissions. If Mr. Zuckerberg had disclosed how harmful Meta's platforms are to children, that material information would have been widely reported, and Plaintiffs both would have known and would have taken specific actions to prevent the harm that they and their families suffered.

For example, the *Baker* complaint contains allegations, omitted in Mr. Zuckerberg's selective quotation, Mot. at 8, that had he revealed the omitted information, "Plaintiff reasonably would have utilized more caution in their social media consumption, understood their symptoms were caused by social media sooner, and taken the necessary steps to mitigate damage to their mental health." *Baker* SFC, Ex. A (4:23-cv-01578). Other Plaintiffs and their parents allege that they would not have allowed their child to use Meta's platforms at all, *see e.g.*, *Booker* SFC (4:23-cv-01537) ("Had the omitted information been disclosed, Plaintiff Richard Neal Booker reasonably would have prohibited his minor child S.B. from ever downloading and using Instagram."); "would have delayed the age at which they got Plaintiff a phone until at least thirteen years old and would have looked for a phone with parental control features to control and monitor app downloads," *C.G.* SFC (4:23-cv-01568); and "would have taken action to prevent Plaintiff from accessing Instagram for many more years," *C.S.* SFC (4:23-cv-01569). Plaintiffs' specific averments of actions they would have taken had Mr. Zuckerberg not concealed information about the safety of Instagram demonstrate their reliance on Mr. Zuckerberg's omissions. *See McCabe*, 948 F. Supp. 2d at 1368 ("McCabe and Herring also allege that they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect. . . . Thus, they have plausibly alleged justifiable reliance.").

Plaintiffs' individual allegations are further substantiated by the actions of Meta and its employees. Damningly, Meta executives who had full knowledge of the dangers Meta's platforms pose to children chose to ban or significantly reduce their children's use of social media, a choice Mr. Zuckerberg's concealment denied Plaintiffs and their loved ones. SAC ¶ 261. Meta—and

---

[13] Mr. Zuckerberg's attempt to isolate Plaintiffs' Short-Form Complaints from the allegations of the Master Complaint is not well taken. Plaintiffs' operative pleadings consist of the Second Amended Master Complaint *and* their short form complaints. ECF 117 at 3.

Mr. Zuckerberg—knew that if the broader public had access to this knowledge, other parents would make the same choice, costing Meta the young users its business depended on. This understanding is apparent in Meta's cynical strategy of marketing itself as a youth-safety oriented company—including through public statements by Mr. Zuckerberg—while aggressively discrediting any outside research showing harms to youth from its products. SAC ¶¶ 184-85, 303-304, 364. Meta's persistent focus on child safety in messaging efforts provides further evidence of the importance of such information to Plaintiffs. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957 (N.D. Cal. 2014) ("[A] reasonable jury could well conclude that the problems with the MFT system were material facts because the system arguably was the subject of Ford's marketing efforts—the system enhanced the functionality and experience of the vehicle, including its safety."); *In re Chrysler*, 295 F. Supp. 3d at 1014 ("There is, at the very least, a question of fact regarding materiality in light of the fact that the Class Vehicles were promoted as environmentally friendly in the first place. In other words, if Defendants promoted the Class Vehicles as such, they believed that such information was material to the consuming public.").

Furthermore, had Mr. Zuckerberg fulfilled his duty to Plaintiffs and made these disclosures, Plaintiffs undoubtedly would have been aware of the same. Mr. Zuckerberg's every statement and decision receives an almost unmatched degree of public attention. There are few other CEOs whose Senate testimony is posted verbatim as a story in its own right, *see* SAC ¶ 173 n.155, who can not only author an op-ed in a national paper but have their name lead the headline, *see* SAC ¶ 370 n.497, or whose every public statement is exhaustively catalogued in an academic archive, *see* SAC ¶¶179 n.175 (citing same). When Mr. Zuckerberg speaks, the whole world listens.

In addition to Mr. Zuckerberg's personal ability to command public attention, information about Meta's safety (or lack thereof) for child users generates massive public interest. *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation* provides a helpful point of comparison. In *Chrysler*, the court found that the plausibility of concealed information receiving national news coverage was enough to show that plaintiffs likely would have learned of the information had it not been concealed. 295 F. Supp. 3d at 1015. Here, such coverage is not just plausible, it actually occurred. When the information concealed by Mr. Zuckerberg was eventually revealed by whistleblower Frances Haugen, it generated national, high-profile press coverage and investigations at the highest

levels of government. SAC ¶¶ 217, 377-79. Thus, Plaintiffs would have been aware of any statements by Mr. Zuckerberg disclosing the dangers of using Meta's platforms.

For the same reasons, Plaintiffs satisfy Rule 9(b). Plaintiffs allege that Mr. Zuckerberg should have publicly revealed that Meta's platforms are harmful to children, that they would have learned of this information from resulting widespread media coverage, and that they would have behaved differently if they had known the truth about Meta's platforms. Taken together, this is more than sufficient to comply with the Rule 9(b) standard for omissions claims. *See In re Carrier IQ,Inc.*, 78 F. Supp. 3d 1051, 1113-14 (N.D. Cal. 2015) (finding that plaintiffs complied with Rule 9(b) and UCL pleading requirements because they alleged what information was omitted, that the omitted information was exclusively known by defendants, that they would have acted differently had they known the omitted information, and that the omitted information was the subject of intense public outcry); *MacDonald*, 37 F. Supp. 3d at 1096 ("Plaintiffs adequately allege the 'who what when and how,' given the inherent limitations of an omission claim. In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles.'); *Sloan*, 287 F. Supp. 3d at 878 ("Plaintiffs would likely meet their burden under Rule 9(b) even without specifically identifying a particular advertisement in which the omitted information should have been included, so long as they provide plausible allegations . . . that they would have received the information in some way had Defendant exercised reasonable care.").

The cases cited by Mr. Zuckerberg are not to the contrary. Both *Haskins v. Symantec Corp.* and *Perkins v. LinkedIn Corp.* deal with express *misrepresentations*, not omissions. *See Haskins*, 654 F. App'x 338, 339 (9th Cir. 2016); *Perkins*, 53 F. Supp. 3d 1190, 1219-21 (N.D. Cal. 2014).[14] For an omissions claim, "[a]lthough the actual receipt of some information from a defendant might tend to demonstrate that the plaintiff had an opportunity to receive additional information, it is not necessarily the only way to establish such an opportunity." *Sloan*, 287 F. Supp. 3d at 875. Indeed, the portion of *In re ZF-TRW Airbag Control Units Products Liability Litigation*, 601 F. Supp. 3d 625 (C.D. Cal. 2022), that Mr. Zuckerberg

---

[14] *Tabler v. Panera LLC*, 2019 WL 5579529, at *11 (N.D. Cal. Oct. 29, 2019) and *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 845 (N.D. Cal. 2012), are inapposite for the same reason.

quotes makes this distinction clear. The court held that the plaintiffs could demonstrate reliance on an omission either by showing that they had seen specific statements *or* by a more general showing—untethered from any one specific statement—that they would have been aware if the concealed information had been disclosed. *Id.* at 767.

Mr. Zuckerberg's assertion that Plaintiffs were not injured by his omissions, Mot. at 8-9, is misplaced for the same reason as his reliance argument. *See Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc.*, 31 F.3d 573, 580 (7th Cir. 1994) (explaining that reliance "suppl[ies] the causal link between the alleged tortious act and the plaintiff's harm); *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 126 (4th Cir. 2006) ("[P]roximate cause may be established by evidence of reliance."); *Daniel*, 806 F.3d at 1225 ("To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."). Plaintiffs allege that use of Meta's platforms caused them a range of serious physical harms, including eating disorders, self-harm, and suicidal depression. *See e.g.*, *Booker* SFC (alleging addiction and compulsive use, anorexia, depression, anxiety, and attempted suicide). As discussed above, plaintiffs have plausibly alleged that had they known the information Mr. Zuckerberg concealed, they would have strictly limited or entirely halted their use of Meta's platforms, thereby preventing or reducing their injuries. *See supra* at 14-15.

## C.   Mr. Zuckerberg does not have a First Amendment right to lie to Congress.

Finally, Mr. Zuckerberg maintains that the First Amendment immunizes him from claims based upon omissions from his Congressional testimony.[15] Mot. at 11. As a threshold matter, however, Mr. Zuckerberg's First Amendment argument "constitutes an affirmative defense," which the Court may only rely upon to dismiss a complaint if it is clear from the face of the complaint that the claim is barred. *See Batis v. Dun & Bradstreet Holdings, Inc.*, 2023 WL 1870057, at *7 (N.D.Cal., 2023); *see also Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 296 (5th Cir. 2000) ("the *Noerr-Pennington* doctrine provides only an affirmative defense against liability, not a right not to stand trial"). A plaintiff need not

---

[15] Mr. Zuckerberg expressly limits his *Noerr-Pennington* argument to the statements that he made in testimony to Congress. Mot. at 11. Notably, however, Plaintiffs' claims rely on many other statements by Mr. Zuckerberg that were not made in Congressional testimony. SAC ¶¶ 369(a)-(c), 370(a), (d)-(l).

plead facts to negate an affirmative defense. *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017). Here, there is no obvious bar to securing relief on the face of the complaint for at least two reasons.

*First*, "the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Garrison v. State of Louisiana*, 379 U.S. 64, 75 (1964). The *Noerr-Pennington* doctrine supplies no exception. "The doctrine derives from two Supreme Court cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability." *Theme Promotions, Inc. v. News Am Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008). It does not afford greater protection than the First Amendment. *See McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("there is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions"). Simply stated, "neither the *Noerr-Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation[.]" *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995).

To be sure, the *Noerr-Pennington* doctrine may protect deception "along the lines normally accepted in our political system." *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961); *see also Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1061 (9th Cir 1998) ("the political arena has a higher tolerance for outright lies than the judicial arena does"). But knowingly concealing material information from Congress does not qualify. It is a crime. *See* 18 U.S.C. § 1001; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 504 (1988) (distinguishing "misrepresentations made under oath at a legislative committee hearing" from "deceptive practices in the political arena").

*Second*, even if the *Noerr-Pennington* doctrine did protect false statements—as some courts have mistakenly found, *see, e.g., Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5-6 (S.D.N.Y. Aug. 21, 2007)—it only applies when one "petition[s] the government for a redress of grievances." U.S. Const. Amend. I; *see Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). In the absence of evidence that a party was seeking redress from Congress, *Noerr-Pennington* does not apply. *See, e.g., In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *18 (N.D. Cal. 2020). In the present case, there is no indication in the Master Complaint or Plaintiffs' short-form complaints—whose allegations control—that Mr. Zuckerberg intended to influence any particular legislation or government effort through his

omissions and concealments. Indeed, Mr. Zuckerberg wasn't on the Hill because he wanted something from Congress, but rather because Congress wanted something from him—namely, the truth about the harm caused by Meta's platforms. *See, e.g.*, SAC ¶ 307(o) (letter from senators requesting information). Mr. Zuckerberg has been called to testify again before Congress on January 31, 2024.[16] One hopes he will finally be forthcoming about the risks Meta's platforms pose to young people. The world will be listening.

## V.      CONCLUSION

Plaintiffs respectfully request that the Court deny Mark Zuckerberg's motion to dismiss.

Dated: January 16, 2024

Respectfully submitted,

*/s/ Previn Warren*

Jodi Westbrook Flowers
Sara O. Couch
Jade Haileselassie
Annie Kouba
Ebony Bobbitt
Jessica L. Carroll
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
jflowers@motleyrice.com
scouch@motleyrice.com
jhaileselassie@motleyrice.com
akouba@motleyrice.com
ebobbitt@motleyrice.com
jcarroll@motleyrice.com

Previn Warren
Abigail Burman
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington, DC 20004
Telephone: 202-232-5504
pwarren@motleyrice.com
aburman@motleyrice.com

Mathew P. Jasinski
Jessica C. Colombo
**MOTLEY RICE LLC**
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1681
mjasinski@motleyrice.com
jcolombo@motleyrice.com

Jonathan D. Orent
Katie Menard
**MOTLEY RICE LLC**
40 Westminster St., 5th Floor
Providence, RI 02903
Telephone: 401-457-7700
jorent@motleyrice.com
kmenard@motleyrice.com

---

[16] U.S. Senate Committee on the Judiciary, *Durbin, Graham Announce January 2024 Hearing with Five Big Tech CEOs on their Failure to Protect Children Online* (Nov. 29, 2023), https://www. judiciary. senate.gov/press/releases/durbin-graham-announce-january-2024-hearing-with-five-big-tech-ceos-on-their-failure-to-protect-children-online.