Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*
*Facebook, Inc.; Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook Payments, Inc.;*
*Facebook Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br><br>**Hearing:**<br>Date:    January 26, 2024<br>Time:    9:30 AM<br>Place:   Oakland, California<br>Judge:   Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT....................................................................................................... 1

        A.      The Order Involves Controlling and Novel Questions of Law............................. 1

        B.      Substantial Grounds for Difference of Opinion Exist on All Three Issues. ........... 5

                1.      Whether Section 230 or the First Amendment Bars Failure-to-Warn
                        Claims Where the Court Found Underlying Defect Claims Barred ........... 5

                2.      Whether the First Amendment Bars Plaintiffs from Alleging a Tort
                        Duty to Impose Heightened Age Verification and Parental Control
                        Barriers ....................................................................................... 7

                3.      Whether Plaintiffs' Product Liability Claims Are Cognizable ................. 9

        C.      Interlocutory Review May Materially Advance the Ultimate Termination of the
                Litigation.................................................................................................. 10

        D.      The States Offer No Good Reason to Delay Resolving These Threshold Issues. .... 14

III.    CONCLUSION................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmadzai v. Stohlman & Rogers, Inc.*,
  2016 WL 881132 (E.D. Cal. Mar. 8, 2016) ........................................................................... 4

*Allen v. ConAgra Foods, Inc.*,
  2019 WL 1466889 (N.D. Cal. Feb. 6, 2019) .......................................................................... 3

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ......................................................................................... 7, 13

*Bill v. Super. Ct.*,
  137 Cal. App. 3d 1002 (1982) ............................................................................................... 7

*Brickman v. Facebook, Inc.*,
  2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ................................................................... 2, 5

*Bride v. Snap Inc.*,
  2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) .................................................................... 5, 6

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ............................................................................... 12

*Catalina Cablevision Assocs. v. City of Tucson*,
  745 F.2d 1266 (9th Cir. 1984) ............................................................................................... 2

*Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*,
  2004 WL 1286806 (S.D.N.Y. June 10, 2004) ..................................................................... 14

*City of San Jose v. Monsanto Co.*,
  2017 WL 6039670 (N.D. Cal. Dec. 6, 2017) ......................................................................... 4

*Columbia Grain, Inc. v. Buhler-Miag, Inc.*,
  879 F.2d 865 (9th Cir. 1989) ................................................................................................. 2

*Daniel Indus., Inc. v. Barber-Colman Co.*,
  8 F.3d 26 (9th Cir. 1993) ....................................................................................................... 4

*Doe v. Grindr Inc.*,
  2023 WL 9066310 (C.D. Cal. Dec. 28, 2023) ................................................................. 5, 12

*Doe v. Internet Brands, Inc.*,
  824 F.3d 846 (9th Cir. 2016) ................................................................................................. 6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ......................................................................................... 10, 12

ii

*Fazio v. City & Cnty. of San Francisco,*
    125 F.3d 1328 (9th Cir. 1997) ................................................................................. 2

*Gallion v. Charter Commc'ns Inc.,*
    287 F. Supp. 3d 920 (C.D. Cal. 2018) ..................................................................... 2

*Gamble v. Kaiser Found. Health Plan, Inc.,*
    348 F. Supp. 3d 1003 (N.D. Cal. 2018) ................................................................. 15

*Ginsberg v. Google Inc.,*
    586 F. Supp. 3d 998 (N.D. Cal. 2022) ................................................................... 12

*Green v. Miss United States of Am., LLC,*
    52 F.4th 773 (9th Cir. 2022) .............................................................................11, 12

*Herrick v. Grindr LLC,*
    765 F. App'x 586 (2d Cir. 2019) ........................................................................ 5, 6

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union,*
    22 F.4th 1125 (9th Cir. 2022) ................................................................................ 13

*In re Apple Inc. App Store Simulated Casino-Style Games Litig. MDL,*
    625 F. Supp. 3d 971 (N.D. Cal. 2022) .........................................................2, 12, 14

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,*
    966 F. Supp. 2d 1031 (C.D. Cal. 2013) ................................................................. 14

*In re Facebook, Inc.,*
    625 S.W.3d 80 (Tex. 2021) ................................................................................. 5, 6

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ................................................................... 12

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,*
    2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ................................................*passim*

*Jackson v. Airbnb, Inc.,*
    639 F. Supp. 3d 994 (N.D. Cal. 2022) ................................................................... 10

*James v. Meow Media, Inc.,*
    300 F.3d 683 (6th Cir. 2002) ................................................................................... 8

*L.W. v. Snap Inc.,*
    2023 WL 3830365 (S.D. Cal. June 5, 2023) ........................................................... 5

*Langere v. Verizon Wireless Servs., LLC,*
    983 F.3d 1115 (9th Cir. 2020) ............................................................................... 15

*Lemmon v. Snap, Inc.,*
    995 F.3d 1085 (9th Cir. 2021) ............................................................................... 10

iii

*MCI Commc'ns Servs., Inc. v. Skanska-Traylor-Shea*,
2021 WL 2170333 (C.D. Cal. May 18, 2021)......................................................... 4

*Merritt v. Countrywide Fin. Corp.*,
2015 WL 5542992 (N.D. Cal. Sept. 17, 2015)...................................................... 12

*Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc,*,
2016 WL 10647193 (C.D. Cal. Dec. 12, 2016)........................................................ 2

*NetChoice, LLC v. Bonta*,
2023 WL 6135551 (N.D. Cal. Sept. 18, 2023)......................................................... 8

*NetChoice, LLC v. Griffin*,
2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) .................................................... 8, 9

*NetChoice, LLC v. Yost*,
2024 WL 104336 (S.D. Ohio Jan. 9, 2024) ............................................................. 8

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................................. 12

*Omni MedSci, Inc. v. Apple Inc.*,
2020 WL 759514 (N.D. Cal. Feb. 14, 2020)........................................................... 6

*Petersen v. Boeing Co.*,
715 F.3d 276 (9th Cir. 2013)................................................................................... 4

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011).................................................................................. 13

*Republican Nat'l Comm. v. Google, Inc.*,
2023 WL 5487311 (E.D. Cal. Aug. 24, 2023) ...................................................... 11

*Schlegel v. Bebout*,
841 F.2d 937 (9th Cir. 1988).................................................................................... 2

*Silbersher v. Allergan Inc.*,
2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ......................................................... 14

*Soc. Media Cases*,
2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2022)...........................................9, 10

*SolarCity Corp. v. Salt River Project Agric. Improvement*,
2015 WL 9268212 (D. Ariz. Dec. 21, 2015) .......................................................... 2

*Thompson v. Runnels*,
705 F.3d 1089 (9th Cir. 2013).................................................................................. 4

*United States v. Real Prop. & Improvements Located at 2441 Mission St.*,
2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) .......................................................... 6

iv

*Virgil v. Time, Inc.*,
   527 F.2d 1122 (9th Cir. 1975) ............................................................................ 4

*Watters v. TSR, Inc.*,
   715 F. Supp. 819 (W.D. Ky. 1989) ...................................................................... 7

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................*passim*

**Statutes**

28 U.S.C. § 1292 ....................................................................................................*passim*

47 U.S.C. § 230 ......................................................................................................*passim*

**Other Authorities**

Fed. R. App. P. 4 .......................................................................................................... 15

Restatement (Third) of Torts: Prods. Liab. (1998) ...........................................4, 9, 12

# I.   INTRODUCTION

Plaintiffs have no response to the many cases in which courts have certified questions of law regarding the application of Section 230, the First Amendment, and threshold questions of state law following an order on a motion to dismiss.  *See* Mot. (Dkt. 473) 6.[1]  Rather than confront that compelling authority, Plaintiffs mischaracterize the identified controlling questions of law as fact-driven, ignore the substantial grounds for difference of opinion about the Court's holdings, and downplay the unquestionable benefits of immediate appellate review on those important legal issues.

Plaintiffs and the States both urge the Court to wait before certifying its Order for interlocutory appeal.  Plaintiffs contend that the Parties should first develop a factual record, but any record would be entirely irrelevant to the questions of law Defendants ask the Court to certify.  The States argue that the Court should wait until it decides additional motions to dismiss in this MDL, but that approach accomplishes nothing but needless delay:  a Ninth Circuit ruling on key threshold questions, including on Section 230 and the First Amendment, would provide meaningful guidance across this MDL, and is critical to determining the scope of permissible discovery and assessing the viability of claims asserted by all plaintiffs in this MDL.  In short, there is neither any legal nor prudential barrier to immediate certification of this Court's Order.

# II.   ARGUMENT

## A.   The Order Involves Controlling and Novel Questions of Law.

Plaintiffs contend that the Court's decision on a Rule 12(b)(6) motion—itself a question of law reviewed *de novo*—presents fact-bound questions unsuitable for interlocutory appeal.  But on a motion to dismiss or otherwise, whether Section 230 immunity and the First Amendment bar claims—and the threshold question whether an entire body of law (here, product liability law) even applies—are "controlling questions of law" under Section 1292(b).  And, contrary to Plaintiffs' assertions, Defendants *are* "challeng[ing] the legal standards this Court used to analyze the Section 230 and First Amendment defenses."  *Contra* Opp. (Dkt. 527) 9.  Defendants challenge three distinct legal rulings: the Court's holdings (1) that Section 230 and the First Amendment apply differently for failure-to-warn

---

[1] Defendants use "Plaintiffs" to refer to the personal injury plaintiffs and "States" to refer to the plaintiff States in the Multistate Action.

claims than they would for design-defect claims based on the same alleged defects (contrary to the virtually uniform view of other courts); (2) that the First Amendment does not preclude tort claims against online services for allowing minors to access speech without barriers in the form of plaintiffs' preferred age-verification or parental control mandates; and (3) that certain features of Defendants' services are "products."  Each of these challenges focus on pure legal issues, assume in this posture that Plaintiffs' factual allegations are true, and involve issues that courts routinely resolve on the pleadings.  Notably, nowhere in its Order did the Court indicate it was unable to decide these legal questions without further factual development.

Plaintiffs' contention that these issues are not "controlling questions of law" cannot be reconciled with the many decisions certifying similar questions.  A defense "akin to an argument for complete immunity" is "often an appropriate 'controlling question of law,'" *Nat'l Ass'n of Afr.-Am. Owned Media v. Charter Commc'ns, Inc.*, 2016 WL 10647193, at \*4–5 (C.D. Cal. Dec. 12, 2016).  Section 230 and the First Amendment provide such a defense.  Mot. 6.  Plaintiffs do not even acknowledge (much less address) Judge Davila's decision to certify *sua sponte* his order holding that Section 230 did not bar claims against hosts of certain "social casino" apps, which recognized that this ruling presented a "controlling question of law."  *In re Apple Inc. App Store Simulated Casino-Style Games Litig. MDL*, 625 F. Supp. 3d 971, 994–96 (N.D. Cal. 2022).  That decision was hardly the first to recognize a Section 230 issue as a "controlling questions of law," Mot. 6, and multiple courts have recognized the same as to the First Amendment and other similar issues.  *See also, e.g.*, *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at \*2 (N.D. Cal. Apr. 27, 2017) (certifying appeal of First Amendment defense as litigation could take a "decidedly different path" depending on outcome); *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 931 (C.D. Cal. 2018), *aff'd sub nom.*, *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019) (similar); *Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1330 (9th Cir. 1997) (similar); *Nat'l Ass'n of Afr.-Am. Owned Media*, 2016 WL 10647193, at \*4–5 (similar).[2]  Plaintiffs have no persuasive response to these cases.

---

[2] *See also SolarCity Corp. v. Salt River Project Agric. Improvement,*, 2015 WL 9268212, at \*2 (D. Ariz. Dec. 21, 2015) (same, state-action immunity); *Schlegel v. Bebout*, 841 F.2d 937, 941 (9th Cir. 1988) (same, prosecutorial immunity); *Catalina Cablevision Assocs. v. City of Tucson*, 745 F.2d 1266, 1267 (9th Cir. 1984) (same, *Parker* immunity doctrine).

The cases Plaintiffs do cite stand only for the proposition that the application of *settled* law to factual allegations may not be suitable for interlocutory review. *See Allen v. ConAgra Foods, Inc.*, 2019 WL 1466889, at *2 (N.D. Cal. Feb. 6, 2019) (question of "whether a spray-dispensed, oil-based product is properly classified as a 'spray type' oil under" regulations). For example, in *Doe v. Mindgeek USA Inc.*, the court did not certify a straightforward application of settled Ninth Circuit law addressing when defendants "materially contribute[]" to the unlawfulness of third-party content. 574 F. Supp. 3d 760, 775 (C.D. Cal. 2021). Here, by contrast, no settled authority holds that a failure-to-warn claim can proceed where Section 230 or the First Amendment bars a design-defect claim based on the same alleged defect; or that the First Amendment does not apply to age-verification and parental controls impeding access to speech; or that product liability law may extend to online services, either generally or as to particular alleged "defects" in those services. On the contrary, this Court recognized that this case "implicate[s] novel questions of law." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2023 WL 7524912, at *20 (N.D. Cal. Nov. 14, 2023) (Dkt. 430).

Nor should the Court decline certification based on the contention that Defendants waived their arguments regarding the failure-to-warn claims—a conclusion with which Defendants respectfully disagree. Mot. 12 n.6. Defendants' motion to dismiss specifically challenged Plaintiffs' failure-to-warn claim under Section 230 (Suppl. Mot. (Dkt. 320) 4, 9), and argued that all of the product liability claims (both design-defect and failure-to-warn) were similarly barred by the First Amendment (*id.* at 14–25). On reply, Defendants addressed those arguments again in response to Plaintiffs' novel position that failure-to-warn theories are subject to fundamentally different Section 230 and First Amendment standards—an argument that Defendants explained in their Reply, and continue to maintain, is out of step with established law. Defs.' Reply in Support of Suppl. Mot. (Dkt. 323) 8–9, 11, 13–14.[3]

More fundamentally, any purported briefing inadequacy regarding the failure-to-warn claims would be no barrier to interlocutory appeal, because this Court proceeded to address the merits of this issue, *see In re Soc. Media*, 2023 WL 7524912, at *16, and the Ninth Circuit can appropriately resolve

---

[3] Contrary to Plaintiffs' assertions (Opp. 8), Defendants did not need to first seek reconsideration of the Court's ruling. Plaintiffs identify no authority requiring as much—because there is none. And in any event, this Court may, at any time, exercise its inherent discretion to reconsider any part of its motion to dismiss order. *See* Mot. 3 n.2 (listing cases).

a question where "the district court nevertheless addressed the merits of the issue not explicitly raised by the party." *Petersen v. Boeing Co.*, 715 F.3d 276, 282 n.5 (9th Cir. 2013) (quoting *Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1260 n.8 (9th Cir. 2010)).  Moreover, the Ninth Circuit "h[as] the authority to identify and apply the correct legal standard, whether argued by the parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).  The Ninth Circuit would have compelling reasons to do so here, given that answering this pure question of law now could save years of burdensome litigation in a sprawling MDL.  Plaintiffs are therefore wrong to suggest that if certification is granted, the Ninth Circuit would need to review the parties' motion to dismiss briefing to assess waiver; the Ninth Circuit can proceed directly to the merits.  Opp. 7–8.  Plaintiffs do not identify a single case declining 1292(b) certification on grounds of waiver, let alone where the district court addressed the merits of the issue.[4]

Nor should the Court decline to certify the question whether Defendants' services are "products" merely because it is governed by state law.  *Contra* Opp. 11.  This Court's analysis turned principally on an interpretation of the Third Restatement of Torts, which the parties agree is generally applicable across most jurisdictions, not on particularities in each state's law.  *See Virgil v. Time, Inc.,* 527 F.2d 1122, 1125 (9th Cir. 1975) (certifying order where controlling question involved application of the Second Restatement of Torts).[5]  And in any event, courts often grant Section 1292(b) certification on novel questions of state law.  *E.g.*, *MCI Commc'ns Servs., Inc. v. Skanska-Traylor-Shea,* 2021 WL 2170333, at *3 (C.D. Cal. May 18, 2021).  And the product liability question that Defendants have identified for review is controlling because it is potentially dispositive of all priority product liability claims—the only claims addressed in the Order.  *See infra* at p.13.

---

[4] Plaintiffs' authorities are inapposite.  *See Daniel Indus., Inc. v. Barber-Colman Co.*, 8 F.3d 26 (9th Cir. 1993) (unpublished disposition involving waiver of applying Texas law to a contract claim, not waiver of an argument); *Ahmadzai v. Stohlman & Rogers, Inc.*, 2016 WL 881132, at *5 (E.D. Cal. Mar. 8, 2016) (denial of an interlocutory appeal of a bankruptcy default); *City of San Jose v. Monsanto Co.*, 2017 WL 6039670, at *1 (N.D. Cal. Dec. 6, 2017) (denying certification of finding that plaintiffs had not exhausted administrative remedies—undoubtedly a fact-bound question, but not one of forfeiture).

[5] The Ninth Circuit's resolution of the product liability issue under the Third Restatement would be either be controlling or highly persuasive across at least 40 jurisdictions, as Defendants demonstrated in their Motion (at 7 n.3) and Plaintiffs nowhere dispute.  And most of the other states have statutes that independently require any "product" to be "tangible."  *Id.*

4

**B.      Substantial Grounds for Difference of Opinion Exist on All Three Issues.**

There also can be no dispute that substantial grounds for difference of opinion exist as to the three holdings at issue.  As this Court explained, "these proceedings implicate novel questions of law, including the applicability of products liability torts to the digital world."  *In re Soc. Media*, 2023 WL 7524912, at *20.  While the novelty of the issues involved alone suggests that reasonable jurists could disagree, that is also the case for a more straightforward reason:  "other courts have, in fact, disagreed" with each of the Court's conclusions.  *Brickman*, 2017 WL 1508719, at *3.

**1.      Whether Section 230 or the First Amendment Bars Failure-to-Warn Claims Where the Court Found Underlying Defect Claims Barred**

In discussing the failure-to-warn claims, Plaintiffs' Opposition ignores the actual issue on which Defendants seek certification:  "Whether Section 230 . . . or the First Amendment bar claims for failure to warn of an alleged design defect *where claims targeting the same underlying alleged defective design are barred*."  Mot. 1 (emphasis added).

This Court's failure-to-warn holding stands alone among rulings of other courts addressing this question.  Those courts uniformly hold that where Section 230 bars claims arising from certain content or publication features of an online service, it necessarily bars claims for a failure to warn *about the same content or features*.  *See, e.g.*, *In re Facebook, Inc.*, 625 S.W.3d 80, 93–94 (Tex. 2021); *L.W. v. Snap Inc.*, 2023 WL 3830365, at *7–8 (S.D. Cal. June 5, 2023); *Bride v. Snap Inc.*, 2023 WL 2016927, at *7 (C.D. Cal. Jan. 10, 2023); *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019).  The Texas Supreme Court observed as much in endorsing the "unanimous view of other courts" confronting such claims, holding that "a warning about third-party content is a form of editing, just as much as a disclaimer printed at the top of a page of classified ads in a newspaper would be."  *Facebook*, 625 S.W.3d at 94; *accord Herrick*, 765 F. App'x at 591 ("Herrick's failure to warn claim is inextricably linked to Grindr's alleged failure to edit, monitor, or remove the offensive content provided by his ex-boyfriend; accordingly, it is barred by § 230.").  Indeed, shortly after Defendants filed this motion, another court in this circuit held that a plaintiff's "defective warning claims" were barred by Section 230 where they were "not materially different from the product liability claims . . . as they also rely on published content from App users."  *Doe v. Grindr Inc.*, 2023 WL 9066310, at *5 (C.D. Cal. Dec. 28,

5

2023).  These Section 230 cases are consistent with a long line of First Amendment authority holding that plaintiffs cannot attach liability to protected speech by reframing a claim as one for failure to warn.  *See* Mot. 10–11.  Were it otherwise, the exception would swallow the rule:  Plaintiffs could always recast claims barred by Section 230 or the First Amendment—*i.e.*, claims based on the publishing of objectionable third-party content—as a "failure to warn" of the dangers of that content.

Ignoring all this, Plaintiffs erroneously argue that *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), settles the issue.  Opp. 13–14.  But all of the cases discussed above were decided <u>after</u> *Internet Brands*.[6]  That is not surprising because *Internet Brands* did not involve the posting of *any objectionable or harmful content* on the defendant's website, let alone claims that the website should have warned about the dangers of such content or publication features involving it.  *See* 824 F.3d at 851; Mot. 10–11 & n.5.  Plaintiffs do not dispute this, nor could they.  And this case presents an issue *Internet Brands* did not address:  whether a failure-to-warn claim is barred by Section 230 where a plaintiff's underlying claims (or parts of those claims) *do* turn on a defendant's actions as a publisher.  Reasonable jurists certainly could disagree about the result—and indeed they have in expressly distinguishing *Internet Brands*.  *E.g.*, *Bride*, 2023 WL 2016927, at *7 (distinguishing *Internet Brands* by explaining that the "plaintiff sought to hold the defendant 'liable for failing to warn her about information it obtained from an outside source'" and thus that "[t]he duty to warn" would "not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content'"); *Herrick*, 765 F. App'x at 591 (similarly distinguishing *Internet Brands* from case involving failure to warn about alleged lack of safety features); *In re Facebook*, 625 S.W.3d at 94 (distinguishing *Internet Brands* from case where "proposed warning . . . would be about user-generated content itself").

Plaintiffs also ask the Court to ignore this contrary authority because these cases involved plaintiffs whose claims were "barred in their entirety," whereas Plaintiffs in this case also asserted *some*

---

[6] Plaintiffs' suggestion that "non-binding authority" from district courts cannot illustrate grounds for disagreement, Opp. 13, is incorrect.  Courts, including this Court, have cited disagreement with or among other district courts as supporting certification.  *E.g.*, *Omni MedSci, Inc. v. Apple Inc.*, 2020 WL 759514, at *2 (N.D. Cal. Feb. 14, 2020); *United States v. Real Prop. & Improvements Located at 2441 Mission St.*, 2014 WL 1350914, at *3 (N.D. Cal. Apr. 4, 2014).  Plaintiffs also ignore that the Second Circuit (*Herrick*, 765 F. App'x 586) and Texas Supreme Court (*In re Facebook*, 625 S.W.3d 80) both expressly distinguished *Internet Brands* and reached a different conclusion than this Court.

legal theories that the Court allowed to proceed.  Opp. 13–14.  But a failure-to-warn claim does not treat a defendant any more or less as a publisher depending on what *other* allegations are in a complaint. *Cf. Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102–09 (9th Cir. 2009) (negligent undertaking claim barred by Section 230 even where allegations relating to promissory estoppel were not barred).  And the Court already held that the allegations must be analyzed claim-by-claim—not using an "'all or nothing' approach" that would allow *all* of Plaintiffs' claims simply because *some* allegations might not implicate Section 230.  *In re Soc. Media*, 2023 WL 7524912, at *1.

Finally, Plaintiffs offer no meaningful response to the authority showing a difference of opinion as to whether the First Amendment bars claims seeking to impose liability for failing to warn about harms associated with protected speech.  Mot. 11–12.  They instead rehash their argument that their claims are based on "features" rather than "content," and therefore outside the First Amendment's scope.  Opp. 14.  But the Court already rejected this argument, concluding that some features that Plaintiffs challenge, such as notifications and rewards, did implicate speech "entitled to First Amendment protection."  *In re Soc. Media*, 2023 WL 7524912, at *18.  Plaintiffs have nothing to say about the real issue:  whether it is constitutionally permissible to require warnings about potential harms from protected speech.  They certainly do not establish that reasonable jurists could not disagree with this Court's holding.  *See, e.g.*, *Bill v. Super. Ct.*, 137 Cal. App. 3d 1002, 1007 (1982) (First Amendment barred claim that movie theater failed to warn patrons about potential risks from the subject matter of a film); *Watters v. TSR, Inc.*, 715 F. Supp. 819, 822 n.1 (W.D. Ky. 1989) (First Amendment barred claim that video game producer failed to warn about potential consequences of playing a game).

In short, the direct conflict between this Court's decision and those of multiple other courts amply reflects substantial grounds for difference of opinion—and underscores the importance of these issues and the benefit of receiving early appellate guidance from the Ninth Circuit.

### 2. Whether the First Amendment Bars Plaintiffs from Alleging a Tort Duty to Impose Heightened Age Verification and Parental Control Barriers

Likewise, Plaintiffs fail to adequately address the substantial grounds for difference of opinion over the Court's holding that the First Amendment does not bar states from imposing a tort duty requiring Defendants to adopt heightened age verification and parental control barriers to accessing

protected speech. As Defendants explained, several recent decisions have held that the First Amendment precludes states from imposing such requirements by statute. *See NetChoice, LLC v. Griffin*, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023); *NetChoice, LLC v. Bonta*, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023). Here, too, the list of cases is growing: after Defendants filed their motion, the U.S. District Court for the Southern District of Ohio issued a TRO enjoining, as a likely violation of the First Amendment, that state's attempt to "require certain website operators to obtain parental consent before allowing any unemancipated child under the age of sixteen to register or create an account on their platform." *NetChoice, LLC v. Yost*, 2024 WL 104336, at *1 (S.D. Ohio Jan. 9, 2024). As in *Griffin* and *Bonta*, the *Yost* court recognized that a statute limiting minors' ability to access certain websites threatens both the websites' speech rights and those of its minor users. *Id.* at *4–5, 8; *see also Griffin*, 2023 WL 5660155, at *16 (explaining that age verification barriers also "burden[] . . . adults' access to speech").

Plaintiffs' only response is to say that these cases involve statutes rather than tort claims, but Plaintiffs cite no authority for this spurious distinction. As this Court's order recognizes, the First Amendment protects against state regulation of speech through tort law as surely as through statute. *In re Soc. Media*, 2023 WL 7524912, at *17. Plaintiffs identify no basis for distinguishing *Griffin*, *Bonta*, and *Yost* from their claims, which seek injunctive relief that is virtually identical to the statutory requirements enjoined in those cases. *Compare, e.g.*, Master Compl. ¶¶ 136, 141 (seeking "adequate age and identity verification" and enforcement and stringent "parental controls") *with Griffin*, 2023 WL 5660155, at *1 (statute requiring services "to verify the age of all account holders who reside in Arkansas" and allow minors access only if "a parent provides express consent"); *Yost*, 2024 WL 104336, at *1 (statute requiring parental consent to create account); *and Bonta*, 2023 WL 6135551, at *12 (statute requiring services to "[e]stimate the age of child users with a reasonable level of certainty" or "apply child-appropriate data and privacy protections to all users" (cleaned up)).

If anything, the threat to speech is *greater* when liability is imposed in tort, given that the uncertainty concerning what constitutes sufficient age verification or parental controls from the perspective of tort law may force services to be more restrictive, thereby imposing a greater burden on speech. *See James v. Meow Media, Inc.,* 300 F.3d 683, 697 (6th Cir. 2002) ("We cannot adequately

exercise our responsibilities to evaluate regulations of protected speech, even those designed for the protection of children, that are imposed pursuant to a trial for tort liability."); *cf. Griffin*, 2023 WL 5660155, at *15 (noting vagueness concerns such that "companies will err on the side of caution," which may "unnecessarily burden minors' access to constitutionally protected speech").

Once again, the conflict between these recent rulings and this Court's decision on age verification and parental controls underscores the importance of these issues, the grounds for difference of opinion, and the potential benefit of early appellate guidance.

### 3.    Whether Plaintiffs' Product Liability Claims Are Cognizable

There can similarly be no doubt that courts can, and have, reached different views on whether the online services Defendants offer (or certain aspects of those services) are "products" under product liability law.  Mot. 15–16 (citing cases).  This includes, most notably, the parallel JCCP proceedings, which involved nearly identical product liability claims and held none to be cognizable under California law.  *Soc. Media Cases*, 2023 WL 6847378, at *20 (Cal. Super. Ct. Oct. 13, 2022); *see also id.* at *15, *16, *18 n.8 (citing the Third Restatement).  Such disagreement among jurists is unsurprising given, as this Court noted, the relative novelty of determining "the applicability of products liability torts to the digital world."  *In re Soc. Media*, 2023 WL 7524912, at *20.

Plaintiffs contend that the JCCP proceeding somehow does not create grounds for a difference of opinion because that court still "allowed significant claims against the Defendants to proceed."  Opp. 15.  But the only two claims that court permitted to proceed (negligence and fraudulent concealment) are not among the priority product liability claims addressed by this Court's Order on which Defendants seek certification.  And the JCCP decision, which likewise applied the Third Restatement, explained at length how ordinary negligence and strict product liability claims differ and why those differences are important.  *Soc. Media Cases*, 2023 WL 6847378, at *14–21.  In short, if the JCCP court's ruling were adopted here, Plaintiffs' product liability claims would be dismissed outright, and this Court's holding would require Defendants' liability to be evaluated under the very product liability doctrines the JCCP court found inappropriate.  These substantially different decisions by two courts illustrate the room for differing opinions—not to mention the numerous other courts that have rejected arguments that Defendants' services constitute "products."  Mot. 15–16 (collecting cases).

Plaintiffs also do not dispute that disagreement exists among courts over the significance of *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), in product liability law.  Mot. 16–17.  Plaintiffs' assertion that *Lemmon* does not "conflict" with this Court's opinion, Opp. 16, misses the point.  This Court relied on *Lemmon* to support its ruling that some features of Defendants' services may be treated as "products," but Plaintiffs cannot dispute that other courts (including the JCCP court) have held that *Lemmon* did not address that question (nor could it, given that no strict product liability claims were asserted in that case) and cannot be relied upon in support of that proposition.  *See Soc. Media Cases*, 2023 WL 6847378, at *17 (*Lemmon* inapposite because whether product liability law applied "simply was not presented on appeal"); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (N.D. Cal. 2022) (*Lemmon* inapposite regarding viability of "products liability claim" because "the circuit addressed only whether Snap was immune to liability under" Section 230); *see also* Mot. 16–17 (additional cases deeming *Lemmon* inapposite).

Finally, Plaintiffs do not (and cannot) dispute that this Court's "defect-by-defect" approach to product liability law itself breaks new ground, and that there is room for disagreement about whether that approach is appropriate.  Mot. 17–18.  That is especially so because the JCCP court took a fundamentally different approach, and Plaintiffs cite no authority suggesting that the question of whether a defendant offers a "product" should be answered by asking whether each alleged "defect" (as opposed to the underlying alleged "product" as a whole) is analogous to tangible property.[7]  Mot. 17–18.  There is, at least, a reasonable basis for disagreement about this aspect of the Court's analysis.

### C.    Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.

Plaintiffs do not deny that Section 230 is designed to protect "websites not merely from ultimate liability, but from having to fight costly and protracted legal battles."  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (cited at Mot. 5).  Nor do they dispute that "the First Amendment's protections extend to not only unconstitutional laws, but also to unnecessary litigation that chills speech," calling for a decision "at the earliest possible

---

[7] In a similar vein, Plaintiffs cite no support for their argument that certification is inappropriate because Defendants have also sought writ review of the JCCP decision.

junction." *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 800 (9th Cir. 2022) (cited at Mot. 5).  It is precisely for these reasons that courts routinely certify similar questions implicating Section 230 and the First Amendment for early appellate resolution under Section 1292(b).  *See* Mot. 5 (collecting cases).  The alternative—delay until final judgment—threatens both to undermine a congressionally created immunity from suit and to chill protected First Amendment activity.

This concern is particularly pronounced in an MDL where the proceedings involve hundreds of plaintiffs and can continue for years across multiple trials.  Section 230's broad protections from suit reflect Congress's recognition that litigation can be extraordinarily burdensome and costly—particularly so in large MDLs—and that Internet companies would be pressured to censor vast amounts of speech to avoid these burdens unless they were given immunity at the earliest stages of a case.  As courts have recognized:  "the burden of litigation itself would thwart the stated goal of section 230 'to remove disincentives for the development and utilization of blocking and filtering technologies,' 47 U.S.C. § 230(b)(4), and undermine the Ninth Circuit's characterization of section 230 as an immunity from suit."  *Republican Nat'l Comm. v. Google, Inc.*, 2023 WL 5487311, at *8 (E.D. Cal. Aug. 24, 2023).

Ignoring this authority, Plaintiffs contend that an appeal now would come too soon and "complicate" the litigation by addressing "only a fraction of Plaintiffs' claims on a sparse record."  Opp. 16, 19.  Not so.  Appellate review of this Court's Section 230, First Amendment, and product liability rulings may *simplify* this MDL, including not only the claims brought by the personal injury plaintiffs, but also those brought by the States, local governments, and school districts.  A decision by the Ninth Circuit in Defendants' favor would resolve the only claims that this Court has ruled thus far can survive a motion to dismiss, saving the parties months (or even years) litigating claims the law forecloses.  Even a mixed ruling from the Ninth Circuit would likely provide helpful clarity on the scope of Plaintiffs' claims, thereby significantly narrowing the permissible scope of discovery and any subsequent trials.

Plaintiffs' contrary arguments fail for multiple reasons.  *First*, Plaintiffs incorrectly contend that interlocutory review is disfavored early in an MDL.  Opp. 17–18.  Indeed, as noted above, Judge Davila recently *sua sponte* certified a Section 230 ruling on an initial motion to dismiss in an MDL—

even though the parties there had yet to brief whether Plaintiffs had stated viable claims under state law. *In re Apple*, 625 F. Supp. 3d at 994–96. The case on which Plaintiffs principally rely did not adopt any general rule applicable to interlocutory appeals in all MDLs. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) ("*Facebook IPO II*"). The court in *Facebook IPO II* merely denied certification "on a non-threshold issue" because an appellate decision "could at most lead only to a remand for repleading," thus delaying, rather than advancing, "the entire action." *Id.* at 531–32. That reasoning is inapplicable here. Plaintiffs do not—and cannot—explain how they might "replead" around a Ninth Circuit ruling that (1) Section 230 and the First Amendment apply in equal measure to Plaintiffs' failure-to-warn claims; (2) the First Amendment bars Plaintiffs' attempts to impose age-verification and parental-consent barriers to accessing speech; and (3) Defendants' websites and mobile applications (or any of the alleged defects with them) are not "products" subject to product liability law.

These are all threshold questions of law, *see Roommates.Com*, 521 F.3d at 1175 (Section 230); *Green*, 52 F.4th at 733 (First Amendment); Restatement (Third) § 19 cmt. a (product liability), and courts routinely dismiss claims on the pleadings without leave to amend on the grounds that Defendants raise here.[8] Consistent with this authority, this Court did not grant Plaintiffs leave to amend as to "functionalities" barred by Section 230 and the First Amendment. *In re Soc. Media*, 2023 WL 7524912, at *42. Plaintiffs ignore these established principles and would subject Defendants to months or even years of litigation when both Congress and the Constitution demand the opposite, and where repleading cannot overcome Defendants' threshold Section 230, First Amendment, and product liability defenses should the Ninth Circuit vindicate them.

*Second*, there is no merit to Plaintiffs' repeated assertions that Section 1292(b) certification should await development of a factual record. Opp. 17–18. As discussed, *supra* Part II.A, these are pure questions of law and do not depend on any factual development. Plaintiffs never explain why

---

[8] *See, e.g.*, *Doe v. Grindr Inc.*, ___ F. Supp. 3d ___, 2023 WL 9066310, at *8 (C.D. Cal. Dec. 28, 2023) (Section 230); *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1010 (N.D. Cal. 2022) (Section 230); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016) (Section 230); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1188, 1203 (N.D. Cal. 2022) (First Amendment), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *22 (N.D. Cal. Sept. 17, 2015) (product liability), *aff'd*, 783 F. App'x 717 (9th Cir. 2019).

they think otherwise, and any explanation would expose the inconsistency of their position.  According to Plaintiffs, for an issue to be "a controlling question of law"—and thus eligible for certification—the issue cannot depend on the factual record.  Opp. 6.  And yet Plaintiffs also argue that the Court should require the parties to develop such a record *before* certifying issues that do not depend on that record.  That illogical and incoherent approach invites inefficiencies that Section 1292(b) is designed to avoid.

*Third*, Plaintiffs are incorrect that resolution of these threshold issues could not materially advance the termination of both the personal injury cases and the MDL as a whole.  Plaintiffs repeatedly point out that the Court's order addressed only some of their claims.  Opp. 19.  But the Court addressed the claims that Plaintiffs themselves identified as their "strongest."  Hr'g Tr. 117:11–12; 18–20 (Nov. 9, 2022).  If Plaintiffs' "priority" claims all fail on appeal, there is no reason to think the remaining claims would survive, or that (at the very least) new Ninth Circuit precedent addressing Section 230 and the First Amendment in the context of this litigation would fail to provide meaningful guidance as to the resolution of any remaining claims.  Plaintiffs argue that the non-priority claims "are predicated on different theories of liability" than the priority claims, Opp. 22, but Defendants raised Section 230 and First Amendment defenses to those claims as well, *see* Defs.' Mot. to Dismiss Pls.' Non-Priority Claims (Dkt. 516) 4, and guidance from the Ninth Circuit now on these defenses will carry over to those claims regardless of the labels Plaintiffs attach to them, *see Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009).

In any event, a ruling disposing of Plaintiffs' priority claims asserted by hundreds of plaintiffs in this MDL—even if some other claims survive—easily meets the threshold for material advancement because such a ruling "'*may* appreciably shorten the time, effort, or expense of conducting' the district court proceedings."  *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (emphasis added) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026–27 (9th Cir. 1981)); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (a "final, dispositive effect on the litigation" is not required).  Such a ruling would also materially advance resolution of litigation brought by States, local governments, and school districts.  Plaintiffs in those cases challenge many of the same features of Defendants' services, and thus Defendants either have

13

already or will assert similar Section 230 and First Amendment defenses.  Immediate resolution of these defenses by the Ninth Circuit could thus substantially narrow all of the cases in the MDL.

*Fourth*, clarifying the scope and nature of the remaining claims here and in the companion cases would materially advance the litigation by minimizing the litigation burden on all parties and the Court. That some litigation will remain pending in state court and in this action after an interlocutory appeal is nearly unavoidable in an action of this size.  Opp. 18–19.  That reality has not prevented other courts from finding material advancement.  Mot. 18–19 (listing cases).  What matters is that the Ninth Circuit's clarification would, at this early stage, "save the courts and litigants unnecessary trouble and expense" by "facilitat[ing] disposition of the action by getting a final decision on a controlling legal issue sooner."  *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021).  At minimum, such clarification would materially affect the time and expense the parties will incur in discovery, and may avoid a needless trial on claims that are barred as a matter of law.  *Id.*; *see also, e.g.*, *In re Apple*, 625 F. Supp. 3d at 996 (granting certification *sua sponte* because "if interlocutory appeal is not granted and the Ninth Circuit reverses this Court's holding," discovery "would be a significant and needless waste of the Court and the Parties' resources").

Plaintiffs rely on cases where "discovery would proceed in largely the same fashion" regardless of how the Ninth Circuit resolved the potential appeal, *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1046 (C.D. Cal. 2013), or where the appeal would determine only which forum would decide the case, *see, e.g.*, *Certain Underwriters at Lloyd's, London v. ABB Lummus Glob., Inc.*, 2004 WL 1286806, at *7 (S.D.N.Y. June 10, 2004) (seeking certification of a remand order).  Neither circumstance is present here.  Discovery is underway, but an immediate appeal could nonetheless narrow its scope considerably and save the Parties (and this Court) significant time and expense.  *See, e.g., In re Apple*, 625 F. Supp. 3d at 996.

**D.     The States Offer No Good Reason to Delay Resolving These Threshold Issues.**

This Court should also decline the States' invitation to defer ruling on Defendants' motion. State Opp. (Dkt. 526) 6.  As explained above, certification is warranted now because it will advance resolution of the personal injury cases in the MDL.  *See supra* Part II.C.  And as the States themselves concede, resolution of those questions, and in particular the Section 230 and First Amendment issues,

14

will also resolve "related questions of law" pending in their own case, State Opp. 2—which is likely why they have opposed a motion that does not directly address their claims.

The States' arguments are unavailing. A "potential for multiple appeals," *id.* 6, will always exist in an MDL involving hundreds of cases and different parties. That is hardly a reason to delay an appellate ruling that could narrow (or resolve) the pending claims and related discovery. Holding certification "in abeyance" pending a ruling on subsequent motions to dismiss, *id.* 7, would accomplish nothing but needless delay. The Court's Order meets the requirements for certification, and there is no reason to wait to see if later orders may also warrant Section 1292(b) review.

Similarly, mere "uncertainty" as to the application of any Ninth Circuit ruling to this Court's future decisions is no reason for delay. *Id.* 6. If it were, no court would ever certify an order for interlocutory review. Nor is there a "risk of inconsistent rulings between this Court and the Ninth Circuit." *Id.* 5. This Court, of course, is "bound by Ninth Circuit authority." *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018) (Gonzales Rogers, J.). Any inconsistency between this Court's rulings and those of the Ninth Circuit in an interlocutory appeal would be resolved the same way that lower courts routinely respond to new, binding appellate precedent issued during litigation—by adhering to the higher court's instructions. *E.g.*, *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1122 (9th Cir. 2020) ("[W]hen a rule announced by this court and a rule later announced by the Supreme Court cannot both be true at the same time, . . . the former must give way to the latter."). The possibility that the Ninth Circuit may disagree with this Court is an argument *for* prompt appellate review—not a reason to avoid or delay it.[9]

### III.    CONCLUSION

Defendants respectfully request that the Court certify its Order of November 14, 2023 Granting in Part and Denying in Part Motions to Dismiss (Dkt. 430) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

[9] The States' suggestion that multiple appeals would present a "high" "risk of inconsistent rulings from different panels" is pure speculation. State Opp. 5. The States are wrong to assume that multiple appeals will necessarily be heard by different panels, *see* Fed. R. App. P. 4(b)(2), and in any event published opinions "remain binding on subsequent panels." *Langere*, 983 F.3d at 1121.

1   Dated: January 19, 2024                          Respectfully submitted,

2

3                                                    **COVINGTON & BURLING LLP**

4

5                                                    */s/ Phyllis A. Jones*
                                                     ─────────────────────────────
                                                     Mark W. Mosier, *pro hac vice*
6                                                      mmosier@cov.com
                                                     Paul W. Schmidt, *pro hac vice*
7                                                      pschmidt@cov.com
                                                     Phyllis A. Jones, *pro hac vice*
8                                                      pajones@cov.com
                                                     COVINGTON & BURLING LLP
9                                                    One CityCenter
                                                     850 Tenth Street, NW
10                                                   Washington, DC 20001-4956
                                                     Telephone: + 1 (202) 662-6000
11                                                   Facsimile: + 1 (202) 662-6291

12
                                                     Emily Johnson Henn (State Bar No. 269482)
13                                                     ehenn@cov.com
                                                     COVINGTON & BURLING LLP
14                                                   3000 El Camino Real
                                                     5 Palo Alto Square, 10th Floor
15                                                   Palo Alto, CA 94306
                                                     Telephone: + 1 (650) 632-4700
16                                                   Facsimile: +1 (650) 632-4800

17
                                                     *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
18                                                   *Facebook, Inc.; Facebook Holdings, LLC;*
                                                     *Facebook Operations, LLC; Facebook Payments,*
19                                                   *Inc.; Facebook Technologies, LLC; Instagram,*
                                                     *LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*
20

21

22

23

24

25

26

27

28

DEFS.' REPLY ISO MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*

Geoffrey M. Drake, *pro hac vice*
  gdrake@kslaw.com
Albert Q. Giang (State Bar No. 224332)
  agiang@kslaw.com
David Mattern, *pro hac vice*
  dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100


**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson, *pro hac vice*
  andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
  amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000


*Attorneys for Defendants TikTok Inc., ByteDance*
*Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC*


**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*

Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)

17

Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
 Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
 Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

 */s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
 bwillen@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
 lwhite@wsgr.com
Carmen Sobczak (State Bar No. 342569)
 csobczak@wsgr.com
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou (State Bar No. 233587)
 cchiou@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
 mdonohue@wsgr.com
Wilson Sonsini Goodrich & Rosati

18

633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

DEFS.' REPLY ISO MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

1

**ATTESTATION**

2          I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to

3   the filing of this document has been obtained from each signatory hereto.

4

5   DATED:          January 19, 2024          By:   */s/ Phyllis A. Jones*
                                                    Phyllis A. Jones

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' REPLY ISO MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR