# EXHIBIT A

1     [*Submitting Counsel on Signature Page*]

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11 IN RE: SOCIAL MEDIA ADOLESCENT       MDL No. 3047
     ADDICTION/PERSONAL INJURY

12 PRODUCTS LIABILITY LITIGATION        Case No. 4:22-03047-YGR

13 _____    **JOINT REPORT ON PROPOSED**
                                      **DISCOVERY PLANS**

14 This Document Relates to:

     ALL ACTIONS                             Judge:  Hon. Yvonne Gonzalez Rogers

15

16                                       Magistrate Judge:  Hon. Peter H. Kang

17       Pursuant to the Court's Discovery Management Order No. 1, at 2 (ECF No. 503), the

18 Parties have met and conferred and respectfully submit their positions on various aspects of a

19 proposed discovery plan consistent with Fed. R. Civ. P. 16 and 26(f)(2)-(3):

20 **I.**     <u>**Case Management Orders to Advance and Efficiently Manage this MDL**</u>

21       **A.**     <u>**Order Governing Sealing Procedures**</u>

22       The Court entered an Order Governing Sealing Procedures on August 1, 2023.  *See* ECF

23 No. 341.

24       **B.**     <u>**Rule 502(d) Clawback Order**</u>

25       The Court entered a Rule 502(d) Clawback Order on April 25, 2023.  *See* ECF No. 248.

26       **C.**     <u>**Protective Order**</u>

27       The Court entered a Protective Order on May 22, 2023.  *See* ECF No. 290.  On December

28 14, 2023, this Court heard argument on Plaintiffs' objection to Paragraph 7.6 regarding the early

disclosure of experts who receive Protected Material designated as "Highly Confidential."  As directed by the Court (*see* ECF No. 503), on December 18, 2023, the Parties re-filed their protective order briefing as a motion to amend the protective order.  *See* ECF No. 501 (Motion to Modify Protective Order and related briefing); 502 (State Attorneys' Generals Position Statement); 506 (Meta's response to State Attorneys General).

### D.    Order Governing Preservation of CSAM

The Court entered an Order Governing Preservation of CSAM on December 12, 2023. *See* ECF No. 475.

### E.    ESI Protocol

The Parties are negotiating a proposed ESI Protocol to govern the identification and production of ESI and hard copy documents.  The status of the Parties' disputes is addressed in the Parties' separately-filed Joint Chart of ESI Order Disputes Pursuant to Discovery Management Order No.  ECF Nos. 534, 534-1.

### F.    Privilege Log Protocol

The Parties are negotiating a proposed protocol to govern the Parties' privilege logs and procedures for bringing challenges.  By February 12, 2024, the Parties will submit a proposed Privilege Log Protocol or competing protocols together with a joint letter not to exceed five (5) pages, evenly divided between the Parties, and formatted with text at 12-point font or greater, single-spaced with reasonable margins, and line breaks between paragraphs.

### G.    Deposition Protocol

The Parties are negotiating a deposition protocol to govern the scheduling and taking of depositions.  By February 20, 2024, the Parties will submit a proposed deposition protocol or competing protocols together with a joint letter not to exceed five (5) pages, evenly divided between the Parties, and formatted with text at 12-point font or greater, single-spaced with reasonable margins, and line breaks between paragraphs.

### H.    Source Code Order

The Parties are meeting and conferring regarding the need for a source code order governing the production of and/or access to source code and will raise with the Court at the

1  appropriate time.

2  **I.    Bellwether Order**

3  **Plaintiffs' Position:**

4  The Parties are negotiating a bellwether order to establish a bellwether trial selection

5  procedure, including which specific Plaintiffs are subject to individual discovery beyond the

6  Plaintiff Fact Sheet, to run concurrently with fact discovery.  By March 1, 2024, the Parties will

7  submit a proposed bellwether order or competing orders together with a joint letter not to exceed

8  five (5) pages, evenly divided between the Parties, and formatted with text at 12-point font or

9  greater, single-spaced with reasonable margins, and line breaks between paragraphs.

10  **Defendants' Position:**

11  At Judge Kuhl's direction, the Parties have begun meeting and conferring on discovery

12  pool and bellwether selection for the JCCP Personal Injury plaintiffs.  Defendants will meet and

13  confer with the MDL Plaintiffs regarding the submission of a bellwether order for the MDL

14  Personal Injury Plaintiffs, but believe it is premature to set a deadline at this time, before a

15  Plaintiff Fact Sheet ("PFS") Implementation Order has even been entered in the MDL, let alone

16  any PFS data received—a necessary prerequisite to bellwether selection.  Defendants also believe

17  this issue should be presented to Judge Gonzalez Rogers in the first instance, who will set the trial

18  schedules in these cases.

19  **J.    User Account Identification Order, Plaintiff Fact Sheet, and Defendant Fact
20         Sheet (Personal Injury Actions)**

21  On December 14, 2023, the JCCP Court entered the User Account Identification Order

22  and the Plaintiff Fact Sheet Order for the Personal Injury actions.  The Personal Injury Plaintiffs

23  and Defendants plan to submit these orders (conformed as appropriate for the MDL) to the Court

24  soon.

25  Defendants and the JCCP Plaintiffs are negotiating a Defendant Fact Sheet ("DFS") and

26  an implementation order in the JCCP with respect to the Personal Injury actions.  Within 10 days

27  following entry in the JCCP, the Personal Injury Plaintiffs and Defendants will submit the DFS

28  and implementation order (conformed as appropriate for the MDL) for this Court's consideration.

The Personal Injury Plaintiffs and Defendants will use MDL Centrality as the online platform for data management of fact sheets and related documents.

**K.    Plaintiff Fact Sheet and Defendant Fact Sheet (School District and Local Government Entity Actions)**

Defendants and the JCCP Plaintiffs anticipate negotiating a PFS and DFS to be completed by each School District and Local Government Entity Plaintiff and Defendant.  Within 10 days following entry in the JCCP, the School District and Local Government Entity Plaintiffs and Defendants will submit these proposed orders (conformed as appropriate for the MDL) for this Court's consideration.

**II.    Discovery Plan[1]**

**A.    Rule 26 Initial Disclosures**

**All-Plaintiffs' Position:**

Defendants shall provide Rule 26(a) initial disclosures to the Personal Injury and School District and Local Government Entity ("PI/SD") Plaintiffs on or before January 26, 2024.  The Plaintiff Fact Sheet Implementation Order shall govern the PI/SD Plaintiffs' discovery obligations at this time, including Rule 26(a) initial disclosures. Defendant(s) named by the State Attorneys General and the State Attorneys General waive their right to Rule 26 Initial Disclosures vis-à-vis one another.

**PI/SD Plaintiffs' Further Position:**

The purpose of initial disclosures under Rule 26(a)(1) is to "allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Lindsay v. First La Brea, LLC*, No. CV203360JFWPVCX, 2020 WL 12188179, at *1 (C.D. Cal. Oct. 6, 2020) (quoting *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)).  The PI/SD Plaintiffs will be providing the information numerated in Rule 26(a)(1) through the Plaintiff Fact Sheet.  Defendants, however, will not be required to identify witnesses or documents relevant to

---

[1] This Discovery Plan is intended to apply only to discovery of common issues.  It is understood that additional, non-duplicative fact and expert discovery may be conducted in connection with a discovery pool and ultimately bellwether cases.  The Parties will discuss what, if any, supplemental fact and expert discovery is required in the context of any Bellwether Orders and will seek the Court's assistance if they are unable to reach agreement.

common issues as part of the Defendant Fact Sheet, which is limited to case-specific information and does not require witness names. Although the Parties attempted to negotiate a preservation order for over a year, at no point during those discussions were key witnesses identified. The PI/SD Plaintiffs require this information in order to efficiently and effectively tailor subsequent discovery and determine which witnesses need to be deposed. Defendants have had more than a year to prepare for initial disclosures as a routine part of litigation, and any burden of doing so now does not outweigh the importance to the ability of PI/SD Plaintiffs to proceed with targeted and efficient discovery.

A disclosure of trial witnesses, while important at the appropriate juncture, will not serve this key purpose of initial disclosures. *See Holak v. K Mart Corp.*, No. 1:12-cv-00304-AWI-MJS, 2014 U.S. Dist. LEXIS 139879, at *12-13 (E.D. Cal. Sep. 30, 2014) (explain that late disclosure of witnesses throws a wretch in the "smooth progression of the litigation"). Defendants' proposal to identify trial witnesses *2 weeks after* the close of fact discovery is plainly not an adequate substitute. Defendants themselves acknowledge the need to depose any trial witnesses who are disclosed, so relying solely on such a post-discovery disclosure runs the risk of reopening discovery and thereby undermining the remaining schedule and the trial date.

In short, Defendants' objection to providing initial disclosures will only result in delay and a "go fish" exercise by Plaintiffs to guess which witnesses or documents Defendants intend to use to support their defenses. *See also* Fed. R. Civ. P. 37(c) (disallowing a party to use information or witnesses that it failed to provide as required by Rule 26(a) or (e) in motion practice, at a hearing, or at trial).

**Defendants' Position:**

Defendants have already made or will soon be making extensive initial disclosures to the PI/SD Plaintiffs in connection with their prior negotiations regarding a potential Preservation Order, certain Defendants' re-production of documents previously produced to State Attorneys General, and Defendant Fact Sheets. Indeed, certain Defendants have already produced to Plaintiffs over 65,000 documents relevant to common issues in this case, which reflect the identities of potential witnesses.

1    Accordingly, initial disclosures should be waived for all Parties in all three sets of cases—

2    not only for Plaintiffs in the PI/SD cases, as Plaintiffs propose.  However, the Parties should be

3    required to make final disclosures of fact witnesses for trial no later than two weeks after the

4    close of fact discovery (or March 5, 2026, assuming entry of Defendants' Discovery Plan on

5    February 15, 2024).  All Parties agree that any witness disclosed for trial after the close of fact

6    discovery must have the opportunity to be deposed by opposing Parties (if they have not already

7    been deposed) prior to expert rebuttal deadlines.

8    **B.**    **Completion of Written Defensive Discovery**

9    **Plaintiffs' Position:**

10    Plaintiffs propose that by June 28, 2024, Defendants shall complete production of

11    documents responsive to discovery served before January 25, 2024, which production shall be

12    carried out on a "rolling" basis. Disputes as to certain requested information shall not be a reason

13    to delay production of information that is not in dispute.

14    An interim deadline to complete production of documents responsive to PI/SD Plaintiffs'

15    initial requests disincentives the "gotcha" gamesmanship of producing key documents near the

16    close the fact of discovery.  These practices prevent the requesting party from timely requesting

17    additional key documents or adequately deposing witnesses in preparing for trial.

18    Plaintiffs' proposed deadline of June 28, 2024 provides Defendants with five months to

19    make their productions, a reasonable amount of time considering the substance and nature of the

20    requests.  Six identical sets of requests address issues that are common to all Defendants, and

21    focus on standard categories of documents appropriate for early discovery such as corporate

22    organization and finance, as well as on features and safety measures core to the allegations in this

23    case.  The remaining, Defendant-specific RFPs are generally "go fetch" requests seeking

24    specifically identified documents or following up on documents already produced or facts learned

25    from publicly available information.

26    Given this relatively circumscribed scope and the aim of the requests to kick-start efficient

27    discovery, Plaintiffs submit that the proposed deadline for substantial completion of responsive

28    productions is eminently reasonable.  Such interim deadlines serve to keep discovery on track

1   toward its ultimate completion. In contrast, Defendants' suggestion that the Parties must resolve

2   all objections to every one of Plaintiffs' RFPs in order to negotiate custodians and search

3   methodologies departs from standard practice and has no justification, particularly given the

4   extensive knowledge Defendants already have from Plaintiffs' allegations. It is a recipe for

5   delaying document production and incentivizing extended disputes.  Of course, in keeping with

6   general practice to date and professional courtesy, Plaintiffs will consider reasonable requests for

7   extensions of time regarding these productions.

8          **Defendants' Position:**

9          As of the filing of this statement, the PI/SD Plaintiffs have already served a total of 609

10  requests for production on all Defendants, including 175 requests on Meta, 197 requests on

11  TikTok, 116 requests on Google and YouTube, and 121 requests on Snap.  Of those, 108 requests

12  are identical and were served on all Defendants, with responses and objections currently due on

13  February 26, 2024.  The PI/SD Plaintiffs have categorized those common requests into the

14  following issues: organization and finance, features and warnings, health and safety, user

15  demographics and targeting, marketing and lobbying, and student safety.  Contrary to Plaintiffs'

16  suggestion, these requests are anything but "relatively circumscribed [in] scope"; in combination,

17  they demand "all documents" covering nearly every aspect of Defendants' businesses over

18  decades.  The remaining Defendant-specific requests are also expansive, and while some demand

19  specific documents, many others request "all documents" and "all communications" related to

20  various issues potentially relevant to this litigation.

21         Plaintiffs' suggestion that Defendants should be expected to complete their production of

22  documents responsive to all discovery currently pending by June 28, 2024 is therefore

23  unreasonable.  Before the Parties can even negotiate the full set of custodians and search terms to

24  be applied to these 609 requests, the Parties will first need sufficient time to resolve Defendants'

25  objections to the requests, most of which are not due to be served on the PI/SD Plaintiffs' until

26  February 26.[2]  After that, Defendants will then need a considerable amount of time to search for,

27

28  _____
    [2] Plaintiffs' response on this point is a strawman.  Defendants are not suggesting that *all*
    objections must be resolved before some search terms and custodians can be negotiated, and

collect, and review a significant volume of documents before the full set of responsive documents can be identified.  Because the PI/SD Plaintiffs' current requests implicate nearly every aspect of Defendants' business, Defendants anticipate it will require a massive amount of machine processing and human time to complete the document collection and review.  Defendants will also need additional time to redact for, e.g., privilege, personally identifying information, and the Stored Communications Act.

For these reasons and others, it would be unreasonable and impractical to require Defendants to complete a fulsome production under the unnecessarily truncated timeline Plaintiffs have proposed.  Defendants instead propose that all document productions, including productions responsive to requests served before January 25, 2024, be completed on a rolling basis by February 19, 2026 (the close of fact discovery in Defendants' proposed schedule).

**C.    Discovery Cut-Offs:**

The Parties propose the following cut-offs for the close of fact and expert discovery:

| Description | Plaintiffs' Proposed Deadline | Defendants' Proposed Deadline (Dates Assume Entry of Plan on February 15, 2024) |
|---|---|---|
| **Close of Fact Discovery** | November 15, 2024 (provided no phasing) | February 19, 2026 |
| **Close of Expert Discovery** | March 1, 2025 (provided no phasing) | July 9, 2026 (20 weeks later) |

**Plaintiffs' Position:**

Plaintiffs' proposal includes a workable schedule that adheres to Rule 1's mandate to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  In particular, Plaintiffs' schedule should phasing not be ordered provides for fact discovery to be complete in approximately 10 months and expert discovery completed approximately 4 months later, which would permit the first bellwether trial to take place in 2025

---

Defendants will be prepared to begin negotiating search terms for some of those requests after responses are served on February 26.  At that time, however, Defendants expect to have objections to many of the other requests, and objections as to those requests must be resolved before the Parties will be able to agree to the full set of terms and custodians.

1  or early 2026 depending on the Court's schedule.[3]  Defendants' schedule, on the other hand,

2  allocates approximately *2 years* to fact discovery and another 5 months to expert discovery.

3  Under Defendants' schedule, trial would not take place until the *end of 2026 or 2027*.[4]  Such an

4  extremely lengthy schedule is unwarranted.  Discovery is underway: Defendants Meta, TikTok,

5  and Snap already made initial productions of documents, which were part of the months long

6  inquiry by the Attorneys General into the exact conduct by Defendants at issue in this case; many

7  additional documents and information are publicly available through congressional testimony by

8  whistleblowers with respect to Meta; the Parties have spent over a year developing the foundation

9  (e.g., 502(d) Order, ESI Protocol, Protective Order) required for discovery;[5] and the PI/SD

10  Plaintiffs have already propounded initial sets of requests for production of documents and

11  anticipate serving notices of deposition pursuant to Rule 30(b)(6) shortly.

12      **Defendants' Position:**

13          Defendants propose a general fact discovery cutoff of February 19, 2026 (105 weeks after

14  entry of a Discovery Plan if entered on February 15, 2024).  In light of the extensive document

15  discovery already served on Defendants (as explained above), and the unknown volume of

16  additional written discovery that Plaintiffs may still serve, it would be unreasonable for all fact

17  discovery on four Defendants in these sprawling cases to be completed within the timeframe

18  suggested by Plaintiffs.  Furthermore, concluding Defendant fact discovery this year would be

19  asymmetrical with later-commenced bellwether discovery.

20          Defendants propose a non-general causation expert discovery cut-off that is 20 weeks

21  after Defendants' proposed fact-discovery cutoff.  Under Plaintiffs' proposed deadline, expert

22  discovery would be completed 15 weeks after the close of fact discovery.  Defendants believe that

23  5 additional weeks are needed to ensure all Parties have sufficient time to serve their reports and

24

25  [3] It bears mentioning that Plaintiffs' schedule in the event that the Court does not order phasing of general causation is *2 months shorter* than Defendants' proposed schedule for general causation discovery only.

26  [4] As this Court is aware, discovery in this matter is linked to the pending JCCP. Under California Code of Civil Procedure § 583.310 an action must be brought to trial in 5 years after it is commenced against the defendants, making the JCCP's trial deadline December 2027. Any delay in Defendants' proposed schedule would jeopardize the 5 year trial date mandate.

27

28  [5] The Parties have agreed to interim deadlines within the next few months to complete any additional orders needed for discovery to proceed smoothly.

JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
                                                MDL No. 3047; CASE No. 4:22-03047-YGR

1   depose all experts that may be identified in this case.

2          Contrary to Plaintiffs' suggestion, Defendants are not proposing any "phasing" of

3   discovery in connection with their general causation staging proposal (or otherwise).  Defendants

4   have been clear that they are not seeking to stay or limit discovery as Plaintiffs contend.  Instead,

5   Defendants seek an earlier and separate resolution of Rule 702 challenges to Plaintiffs' general

6   causation experts, with sufficient time for Plaintiffs to take whatever fact discovery they feel may

7   bear on that issue.[6]

8          **D.      Supplemental Expert Discovery Plan.**

9          By March 7, 2024, the Parties shall submit a supplemental expert discovery plan and

10  proposed case management order for expert reports and depositions.

11                                *       *       *

12         For the convenience of the Court, the Parties include below a chart showing the proposed

13  dates identified above to the extent Judge Gonzalez Rogers does not order the prioritization of

14  general causation.  The Parties' alternative proposed schedules, should Judge Gonzalez Rogers

15  order the prioritization of general causation, are stated in Section III below.

| Description | Plaintiffs' Proposed Deadline | Defendants' Proposed Deadline (Dates Assume Entry of Plan on February 15, 2024) |
|---|---|---|
| Defendants' Rule 26 Initial Disclosures | January 26, 2024 | Initial disclosures should be waived for all Parties, with a deadline of March 5, 2026 (two weeks after the close of fact discovery) for the Parties to make their final disclosure of fact witnesses for trial |
| Privilege Log Protocol | February 12, 2024 | February 12, 2024 |
| Deposition Protocol | February 20, 2024 | February 20, 2024 |

---

[6] Defendants' proposed schedule would not "jeopardize the 5 year trial date mandate" in California state court, as Plaintiffs assert.  The five-year limitations period for bringing actions to trial in California state court does not include the time during which there is a complete stay of all proceedings, Cal. Code. Civ. P. § 583.340(b), *Bruns v. E-Com. Exch., Inc.*, 51 Cal. 4th 717, 730 (2011), which the Court issued last February, *see* Feb. 10, 2023 Minute Order; Feb. 17 Minute Order.

| Description | Plaintiffs' Proposed Deadline | Defendants' Proposed Deadline (Dates Assume Entry of Plan on February 15, 2024) |
|---|---|---|
| Personal Injury Bellwether Order | March 1, 2024 | Defendants will meet and confer with Plaintiffs regarding the submission of a bellwether order to Judge Gonzalez Rogers, but believe that it is premature to set a deadline for the submission of that order at this time |
| Supplemental Expert Discovery Plan | March 7, 2024 | March 7, 2024 |
| Completion of Production of Documents responsive to Requests served by January 25, 2024 | June 28, 2024 | February 19, 2026 (fact discovery cut-off) |
| Close of Fact Discovery | November 15, 2024 | February 19, 2026 |
| Close of Expert Discovery | March 1, 2025 | July 9, 2026 |

The deadlines and other provisions set forth in the Court's prior scheduling orders remain in effect. *See* ECF No. 503 (Discovery Management Order No. 1).

III. **Alternative Discovery Schedules Should Judge Gonzalez Rogers Grant Defendants' Request Relating to General Causation**

On December 13, 2023, the Court granted Defendants leave to file letter briefs on strategies to facilitate early resolution of the issue of general causation relative to the Personal Injury Plaintiffs' Master Complaint. *See* ECF No. 479 (Case Management Order No. 7) at 3. Pursuant to Case Management Order No. 7 (ECF No. 479), on January 15, 2024, the Personal Injury Plaintiffs and Defendants filed opening letter briefs on their respective positions (*see* ECF Nos. 536 and 537), and on January 19, 2024, they filed their rebuttal letter briefs.

**Plaintiffs' Position:**

Defendants' request to prioritize or phase general causation should be denied for the reasons articulated in Plaintiffs' letter brief to Judge Gonzalez Rogers filed on January 15, 2024

(ECF No. 537) and rebuttal letter brief to be filed on January 19, 2024.

Should Judge Gonzalez Rogers order prioritization of general causation, Plaintiffs propose the following schedule:[7]

| Description | Deadline |
|---|---|
| Parties to serve expert reports related to general causation | December 2, 2024 |
| Parties to serve rebuttal experts reports related to general causation | January 17, 2025 |
| Close of Expert Discovery on general causation | March 3, 2025 |
| Close of Fact Discovery | June 6, 2025 |
| Parties to serve remaining expert reports (including case specific) | July 18, 2025 |
| Parties to serve rebuttal experts reports on remaining issues (including case specific) | August 15, 2025 |
| Close of Expert Discovery | September 12, 2025 |

Should the Court phase general causation discovery, Plaintiffs' alternative schedule includes approximately 3 months after the general causation deadline for additional fact discovery, and thereafter approximately 3 months for non-causation liability expert discovery and case specific expert discovery  This alternative schedule provides additional time compared to Plaintiffs' proposed schedule in Section II above, due to the inefficiencies introduced by phasing (*see* Pls' position on phasing at ECF No. 537), which would entail the Parties conducting fact

[7] Plaintiffs' objected to Defendants including the joint chart below because it does not accurately reflect Plaintiffs' position.  Defendants refused to remove it from this submission.

discovery while simultaneously conducting expert discovery, briefing and hearings regarding general causation. But it would still be ten months shorter than Defendants' overall schedule.

Given the coordination between this action and the JCCP, Plaintiffs also propose simultaneous expert reports, as is common practice in California state court. *See* Cal. Civ. Proc. Code § 2034.210. Should the Court not agree to simultaneous expert reports, Plaintiffs propose they produce their general causation expert reports on December 2, 2024, and Defendants produce their general causation expert reports on January 13, 2025. Plaintiffs also object to Defendants deposing Plaintiffs' experts prior Defendants serving their expert reports. This is not common practice and would unfairly disadvantage Plaintiffs' experts.

**Defendants' Position:**

Defendants have asked Judge Gonzalez Rogers to enter an order in the Personal Injury cases that prioritizes the deadlines for the Parties' disclosure of experts on general causation, and the filing and adjudication of Rule 702 motions concerning the admissibility of Plaintiffs' general causation experts' testimony. Defendants' request should be granted for the reasons articulated in Defendants' letter brief to Judge Gonzalez Rogers filed on January 15, 2024 (ECF No. 536) and rebuttal letter brief to be filed on January 19, 2024.

To the extent Judge Gonzales Rogers prioritizes the deadlines for the Parties' disclosure of experts on general causation as Defendants have proposed, Defendants propose the following deadlines related to general causation experts, which can be slated into Defendants' overall proposed Discovery Plan without modification:

| Description | Deadline (Dates Assume Entry of Plan on February 15, 2024) |
|---|---|
| Plaintiffs serve expert reports related to general causation | January 9, 2025 |
| Deadline to depose Plaintiffs' general causation experts | February 20, 2025 |
| Defendants serve expert reports related to general causation | March 20, 2025 |
| Deadline to depose Defendants' general causation | May 1, 2025 |

| Description | Deadline (Dates Assume Entry of Plan on February 15, 2024) |
|---|---|
| experts | |
| General causation expert discovery closed[8] | May 1, 2025 |
| Plaintiffs serve remaining expert reports | March 19, 2026 |
| Defendants serve remaining expert reports | April 30, 2026 |
| Deadline to depose Defendants' remaining experts | May 28, 2026 |
| Expert discovery closed | July 9, 2026 |

Because Defendants are not seeking a stay of discovery, their proposal prioritizing resolution of challenges to Plaintiffs' general causation experts does not prejudice Plaintiffs' ability to proceed in litigating and taking discovery of Defendants. It similarly permits taking discovery of Plaintiffs.

Defendants' staging proposal does not introduce "inefficiencies," as Plaintiffs assert. To the contrary, deciding earlier the case-wide issue of whether Plaintiffs can introduce reliable expert testimony to meet their burden of proof on general causation will promote the efficient resolution or narrowing of this MDL, as explained in Defendants' letter-briefing. Plaintiffs fail to explain how "conducting fact discovery while simultaneously conducting expert discovery, briefing and hearings regarding general causation" would introduce inefficiencies, when all of that discovery and briefing and hearings will occur regardless of whether general causation is staged for earlier resolution; Defendants' proposal, if accepted, would merely advance the deadlines for expert reports and Rule 702 motions on this one issue, which otherwise would simply be resolved at a later point in time.

Plaintiffs' proposal to serve expert reports simultaneously would also be highly inefficient. Plaintiffs bear the burden of proving general causation, and Defendants' expert reports will necessarily be responsive to the reports served by Plaintiffs' experts.

---

[8] If Judge Gonzalez Rogers permits early Rule 702 challenges to Plaintiffs' general causation experts, the Parties would submit Rule 702 motions within a reasonable time after the close of general causation expert discovery.

1    Defendants do not believe that Party discovery is necessary for Plaintiffs to prepare their

2    general causation expert reports, but Defendants' proposed timing would allow Plaintiffs to

3    conduct any such targeted discovery they believe they need for such experts.  In making this

4    proposal, Defendants do not represent or commit to being able to complete additional discovery

5    before the proposed deadline for Plaintiffs to disclose general causation expert reports.

6    For the convenience of the Court, Defendants include below a chart showing the proposed

7    dates identified above to the extent general causation staging is ordered.[9]

| Description | Defendants' Proposed Deadline (Dates Assume Entry of Plan on February 15, 2024) | Plaintiffs' Proposed Deadline |
|---|---|---|
| Plaintiffs serve expert reports related to general causation | January 9, 2025 | December 2, 2024 |
| Deadline to depose Plaintiffs' general causation experts | February 20, 2025 | N/A |
| Defendants serve expert reports related to general causation | March 20, 2025 | December 2, 2024 (if simultaneous) January 13, 2025 (if not simultaneous) |
| Deadline to depose Defendants' general causation experts | May 1, 2025 | N/A |
| Deadline to serve rebuttal expert reports related to general causation | N/A | January 17, 2025 (if simultaneous) |
| General causation expert discovery closed | May 1, 2025 | March 3, 2025 |
| Close of fact discovery | February 19, 2026 | June 6, 2025 |
| Plaintiffs serve remaining expert reports | March 19, 2026 | July 18, 2025 |

---

[9] Plaintiffs objected to including this chart jointly, so Defendants included it in their section. Plaintiffs did not identify any inaccuracies in the chart.

-15-

| Defendants serve remaining expert reports | April 30, 2026 | July 18, 2025 (simultaneous) |
| Deadline to depose Defendants' remaining experts | May 28, 2026 | N/A |
| Deadline to serve rebuttal expert reports | N/A | August 15, 2025 (if simultaneous) |
| Expert discovery closed | July 9, 2026 | September 12, 2025 |

## IV.    Limitation or Modifications to Discovery.

### A.    Interrogatories

**Plaintiffs' Position:**

Unless otherwise agreed by the parties, the PI/SD Plaintiffs may serve no more than fifty (50) interrogatories on each Defendant, and the States Attorneys General may serve no more than twenty-five (25) interrogatories on each Defendant named by the State Attorneys General, including discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2).  The Bellwether Order shall govern the limitations as to the number and scope of interrogatories Defendants may collectively serve on bellwether plaintiffs. Defendant(s) named by the State Attorneys General may serve no more than twenty-five (25) interrogatories, including discrete subparts, on the State Attorneys General as a whole.

Plaintiffs submit that these limits are reasonable in a case of this complexity where there are multiple groups of Plaintiffs with overlapping but distinct allegations and different claims, and with different representation. The Parties agree that the Bellwether Order shall govern the limitations as to the number and scope of interrogatories Defendants may collectively serve on bellwether plaintiffs beyond the Plaintiff Fact Sheet.

**Defendants' Position:**

To enhance the efficiencies these proceedings were created to address, including in coordination with the JCCP, all three sets of Plaintiffs in this MDL—the (1) Personal Injury Plaintiffs, (2) Local Government Entity Plaintiffs, and (3) State AG Plaintiffs—as well as the

1

2       JCCP plaintiffs should be required to coordinate defensive discovery.  That is particularly so

3       where their various complaints substantially overlap in terms of the factual allegations and issues

        presented (even if their formal causes of action may differ).

4
                Defendants propose that Plaintiffs as a group (including the JCCP plaintiffs) be limited to
5
        no more than forty (40) interrogatories on each Defendant.  Any Defendants named in State AG
6
        cases would be limited to serving the same number of interrogatories (no more than forty (40)) on
7
        each State AG Plaintiff.[10]
8
                Defendants agree that Bellwether Orders, to the extent entered, shall govern the
9
        limitations as to the number and scope of interrogatories Defendants may collectively serve on
10
        the PI/SD Plaintiffs related to a discovery pool and ultimately bellwether cases.
11
                For the avoidance of doubt, limitations on discovery for each "Defendant" as used in
12
        Defendants' position statements herein shall be defined such that related corporate entities and
13
        any employees of those corporate entities who are named individually in any MDL member case
14
        are a single Defendant.  "State Attorney General Plaintiff" includes state employees and state
15
        agencies outside of the State Attorney General's office.
16
                The Parties will further meet and confer about the scope and any limitations on third-party
17
        discovery.
18
                **Snap and YouTube's Position:**
19
                YouTube and Snap agree that setting reasonable limits on written discovery is appropriate
20
        in this proceeding, and agree that Plaintiffs should coordinate discovery among themselves to
21
        streamline and avoid duplication.  But the parties have not yet had sufficient opportunity to fully
22
        assess and confer as to what specific limits are reasonable and appropriate in this case, including
23
        the applicability of Rule 26's proportionality principle.  Moreover, YouTube and Snap's view is
24
        that this Plan should be focused on the overall structure and schedule for various discovery
25
        components in this matter.  For these reasons, YouTube and Snap respectfully request that the
26
        parties be directed to further meet and confer as to particular limitations on written discovery
27

28      [10] Meta, which is the only Defendant currently named in State AG cases, anticipates that each
        State AG Plaintiff would be served with substantially the same forty (40) interrogatories.

1    before any dispute is presented for resolution.  In all events, YouTube and Snap reserve the right

2    to argue that discovery limitations be calibrated to be proportional to the claims and defenses as

3    asserted against them specifically.

4        If the Court is inclined to set limits now, YouTube and Snap believe that the maximum

5    limits proposed by Defendants are more appropriate than those proposed by Plaintiffs for the

6    reasons set forth herein, and that the parties can meet and confer on whether a lower number

7    would be appropriate for any particular Party.

8        **B.**    **Requests for Admission**

9        **Plaintiffs' Position:**

10       RFAs are not limited by the Rules of Civil Procedure or in the routine practice of complex

11   litigation.  They generally impose little burden and can serve as important tools to narrow areas of

12   disputes, establish uncontroverted facts, and guide thoughtful discovery.  "Rule 36 serves two

13   vital purposes, both of which are designed to reduce trial time. . . .[F]irst to facilitate proof with

14   respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by

15   eliminating those that can be." Advisory committee's notes to 1970 amendment of Fed. R. Civ. P.

16   36; *see also Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 403 n.26 (3d Cir. 2016) ("Rule 36

17   provides a tool to streamline the proof of controverted facts.").

18       Defendants' request that RFAs be limited departs from established norms in complex

19   litigation and is impractical.  Plaintiffs intend to be thoughtful and targeted in their RFAs in the

20   context of this complex case, but if the Court decides upon Defendants' petition that RFAs

21   propounded by Plaintiffs have become too voluminous or burdensome, it may reduce Defendants'

22   burden to respond to RFAs by identifying which ones are appropriate and warrant response *see,*

23   *e.g.*, *Stokes v. Interline Brands Inc.*, 2013 WL 6056886 (N.D. Cal. Nov. 14, 2013), or by limiting

24   Plaintiffs' additional RFAs at a later date in the discovery process, should the need arise.

25       **Defendants' Position:**

26       Defendants propose that Plaintiffs as a group (including the JCCP plaintiffs) be limited to

27   no more than twenty-five (25) requests for admission on each Defendant (not including requests

28   for admission related to the authentication of documents for trial, which could be served at a later

1   time), with the ability to serve additional requests for admission for good cause shown.  Any

2   Defendants named in State AG cases would be limited to serving the same number of requests for

3   admission (no more than twenty-five (25)) on each State AG Plaintiff.[11]

4          Defendants agree that Bellwether Orders, to the extent entered, shall govern the

5   limitations as to the number and scope of requests for admission Defendants may collectively

6   serve on the PI/SD Plaintiffs related to a discovery pool and ultimately the bellwether cases.

7       **C.     Number of Depositions[12]**

8              **1.     Depositions of Defendants[13]**

9       **Plaintiffs' Position:**

10         The PI/SD Plaintiffs may take up to forty (40) depositions of each Defendant, and may

11  take up to 10 (ten) additional depositions of Defendants collectively, inclusive of current/former

12  employees represented and produced for deposition by a Defendant and Rule 30(b)(6)

13  depositions.  The States Attorneys General may take up to twenty (20) depositions of each

14  Defendant named by the State Attorneys General, inclusive of current/former employees

15  represented and produced for deposition by that Defendant and Rule 30(b)(6) depositions. In the

16  event a witness was employed by multiple Defendants and is represented and produced for

17  deposition by multiple Defendants, then the deposition shall only count as a deposition regarding

18  the Defendant that employed the witness last-in-time. For the avoidance of doubt, a Rule 30(b)(6)

19  deposition notice counts as a single deposition even if multiple corporate representatives testify in

20  response to the Rule 30(b)(6) deposition notice.

21         Defendants propose no more than a total of 140 hours of depositions collectively for all

22  groups of Plaintiffs, with an additional limit of 21 hours of 30(b)(6) depositions per Defendant.

23  Defendants would further limit Plaintiffs collectively to 30 deponents per Defendant, and would

24  limit each deponent to 10 hours split amongst all Plaintiffs.

25

26  ---
    [11] Meta, which is the only Defendant currently named in State AG cases, anticipates that each
    State AG Plaintiff would be served with substantially the same twenty-five (25) requests for
27  admission.
    [12] The deposition limits set forth herein do not apply to expert witnesses.
28  [13] The number of depositions excludes records custodians that may be necessary for
    authentication of business records.

1    Defendants' proposed limitations on depositions would be draconian in any MDL, and are

2  particularly so here given the complexity and technical aspects of this case and the multiple

3  categories of Plaintiffs pursuing different claims. For example, if each deposition can last only 10

4  hours, all Plaintiffs collectively would be entitled to only 14 depositions per Defendant.

5  Defendants' proposed rules are also complicated enough that tracking how they operate will be

6  akin to a logic game.

7    Plaintiffs oppose layering a limitation on the overall hours of depositions on top a limit on

8  the number of depositions. However, in addition to proposing the numerical limits above,

9  Plaintiffs propose a limitation of 14 hours on the record per defense witness, not to exceed 7

10  hours in a single day. Plaintiffs will coordinate amongst themselves to keep their questioning

11  within these limits and avoid repetition.  Plaintiffs will propose a draft deposition protocol by the

12  deadline noted above, with provisions regarding these limits and other details. Plaintiffs' proposal

13  allows different Plaintiffs pursuing different claims on behalf of different types of clients in

14  different jurisdictions to have enough time to ask questions necessary to litigate their claims,

15  while limiting those depositions to a finite number of witnesses and hours, and ensuring that

16  redundant questioning is avoided.

17    **Defendants' Position:**

18    Defendants propose that Plaintiffs as a group (including the JCCP plaintiffs) may take up

19  to a cumulative total of one hundred and forty (140) hours (approximately twenty (20) full

20  deposition days) of depositions of each Defendant, inclusive of current/former employees and

21  Rule 30(b)(6) depositions.  This cumulative allowance for each Defendant is subject to the

22  following additional provisions:

23    (a) each fact deposition shall be limited to no more than ten (10) hours total, with

24  Defendants reserving the right to seek less time for specific witnesses on a showing of good

25  cause;

26    (b) Plaintiffs shall be limited to no more than thirty (30) deponents per Defendant (with

27  the witness(es) on any individual 30(b)(6) notice counting as one (1) witness);

28    (c) Plaintiffs may take up to a cumulative total of twenty-one (21) hours (approximately

three (3) full deposition days) of 30(b)(6) depositions of each Defendant;

(d) the 140-hour allowance does not include time spent on direct or re-cross;

(e) one (1) minute of re-cross shall be permitted for every one (1) minute of direct examination conducted of that witness.

The State Attorney General Plaintiffs may only participate in the depositions of Defendants specifically named by the State Attorney General Plaintiffs.

**Snap and YouTube Defendants' Position:**

YouTube and Snap agree that setting reasonable limits on depositions—in particular, the number of depositions and the hours allotted for taking those depositions—is appropriate in this proceeding, and agree that Plaintiffs should coordinate discovery among themselves to streamline and avoid duplication. But the parties have not yet had sufficient opportunity to fully assess and confer as to what specific limits are reasonable and appropriate in this case, including the applicability of Rule 26's proportionality principle. Moreover, YouTube and Snap's view is that this Plan should be focused on the overall structure and schedule for various discovery components in this matter. For these reasons, YouTube and Snap respectfully request that the parties be directed to further meet and confer as to particular limitations on depositions in connection with the forthcoming deposition protocol before any dispute is presented for resolution. In all events, YouTube and Snap reserve the right to argue that discovery limitations be calibrated to be proportional to the claims and defenses as asserted against them specifically. If the Court is inclined to set limits now, YouTube and Snap believe that the maximum limits proposed by Defendants are more appropriate than those proposed by Plaintiffs for the reasons set forth herein, and that the parties can meet and confer on whether a lower number would be appropriate for any particular Party.

### 2. Depositions of Plaintiffs

**Plaintiffs' Position:**

The Bellwether Order shall govern the limitations as to the number and scope of depositions Defendants may collectively take related to the bellwether cases. Defendants may not

take depositions of the States Attorneys General.

**Defendants' Position:**

Defendants agree that Bellwether Orders, to the extent entered, shall govern the limitations as to the number and scope of depositions Defendants may collectively take of the PI/SD Plaintiffs related to a discovery pool and ultimately the bellwether cases.

Defendants named by the State Attorneys General may collectively take no more than a cumulative total of one hundred and forty (140) hours (approximately twenty (20) full deposition days) of each State Attorney General Plaintiff.[14] This cumulative allowance is subject to the following additional provisions for each State Attorney General Plaintiff:

(a) each fact deposition shall be limited to no more than seven (7) hours total;[15]

(b) Defendants shall be limited to no more than thirty (30) deponents per State Attorney General Plaintiff (with the witness(es) on any individual 30(b)(6) notice counting as one (1) witness);

(c) Defendants may take up to a cumulative total of twenty-one (21) hours (approximately three (3) full deposition days) of 30(b)(6) depositions of each State Attorney General Plaintiff;

(d) the 140-hour allowance does not include time spent on direct or re-cross;

(e) one (1) minute of re-cross shall be permitted for every one (1) minute of direct examination conducted of that witness.

### 3.    Rule 30(b)(6) Depositions

**Plaintiffs' Position:**

The Parties may notice and take multiple Rule 30(b)(6) depositions. The Party noticing a Rule 30(b)(6) deposition (the "Noticing Party") may limit a Rule 30(b)(6) deposition notice to a

---

[14] The State Attorney General Plaintiffs informed Defendants less than an hour before midnight the day this filing was due that they were retracting their prior proposal that Defendants be afforded twenty depositions of the State Attorneys General, and instead taking the position that Defendants could take no depositions of the State Attorneys General at all. Given the timing, Defendants did not have an opportunity to confer on or prepare a response to this remarkable proposal before this filing was due, and so will address it at the DMC.

[15] Assumes that the Meta Defendants remain the only Defendant group named by the State Attorney General Plaintiffs; otherwise, the ten (10)-hour limit set forth above for depositions taken by multiple Parties would apply.

1
2
discrete subject matter category and notice topics concerning that category (without prejudice to

serving additional Rule 30(b)(6) notices as the discovery period continues.).

3
**Defendants' Position:**

4
5
The Parties may notice and take multiple Rule 30(b)(6) depositions, subject to the

limitations set forth above.

6
7
As set forth above, Defendants propose that Plaintiffs as a group (including the JCCP

plaintiffs) may take up to a cumulative total of twenty-one (21) hours (approximately three (3)

8
9
full deposition days) of 30(b)(6) depositions of each Defendant, regardless of how many notices

their topics may be split across, or the number of witnesses designated for each topic.

10
11
Defendants propose that any Defendants named by the State Attorney General Plaintiffs

may take up to a cumulative total of twenty-one (21) hours (approximately three (3) full

12
13
deposition days) of 30(b)(6) depositions of each State Attorney General Plaintiff, regardless of

how many notices their topics may be split across, or the number of witnesses designated for each

14
topic.

15
DATED: January 19, 2024

16
17
Respectfully submitted,

18
*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

19
20
21
22
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

23
24
25
26
27
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630

28

Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone:  415-986-1400
jennie@andrusanderson.com

*Liaison Counsel*

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 COMMERCE STREET
MONTGOMERY, AL 36103
Telephone:  334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. GARDEN STREET, 9TH FLOOR
PENSACOLA, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: (504) 227–8100
raustin@ronaustinlaw.com

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone:  206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone:  212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT

1   **WATTS GUERRA LLP**
    4 Dominion Drive, Bldg. 3, Suite 100
2   San Antonio, TX 78257
    T: 210-448-0500
3   PBoldt@WattsGuerra.com

4   THOMAS P. CARTMELL
    **WAGSTAFF & CARTMELL LLP**
5   4740 Grand Avenue, Suite 300
    Kansas City, MO 64112
6   T: 816-701 1100
    tcartmell@wcllp.com

7
    JAYNE CONROY
8   **SIMMONS HANLY CONROY, LLC**
    112 MADISON AVE, 7TH FLOOR
9   NEW YORK, NY 10016
    Telephone:  917-882-5522
10  jconroy@simmonsfirm.com

11  CARRIE GOLDBERG
    **C.A. GOLDBERG, PLLC**
12  16 Court St.
    Brooklyn, NY 11241
13  T: (646) 666-8908
    carrie@cagoldberglaw.com

14
    KIRK GOZA
15  **GOZA & HONNOLD, LLC**
    9500 Nall Avenue, Suite 400
16  Overland Park, KS 66207
    T: 913-451-3433
17  kgoza@gohonlaw.com

18  SIN-TINY MARY LIU
19  **AYLSTOCK WITKIN KREIS &**
    **OVERHOLTZ, PLLC**
20  17 EAST MAIN STREET, SUITE 200
    PENSACOLA, FL 32502
21  Telephone:  510-698-9566
22  mliu@awkolaw.com

23  ANDRE MURA
    **GIBBS LAW GROUP, LLP**
24  1111 BROADWAY, SUITE 2100
    OAKLAND, CA 94607
25  Telephone:  510-350-9717
    amm@classlawgroup.com
26
    EMMIE PAULOS
27  **LEVIN PAPANTONIO RAFFERTY**
    316 SOUTH BAYLEN STREET, SUITE 600
28  PENSACOLA, FL 32502
    Telephone:  850-435-7107

1    epaulos@levinlaw.com

2    ROLAND TELLIS
     DAVID FERNANDES
3    **BARON & BUDD, P.C.**
     15910 Ventura Boulevard, Suite 1600
4    Encino, CA 91436
     Telephone:  (818) 839-2333
5    Facsimile:  (818) 986-9698
     rtellis@baronbudd.com
6    dfernandes@baronbudd.com

7    ALEXANDRA WALSH
     **WALSH LAW**
8    1050 Connecticut Ave, NW, Suite 500
     Washington D.C. 20036
9    T: 202-780-3014
     awalsh@alexwalshlaw.com
10
     MICHAEL M. WEINKOWITZ
11   **LEVIN SEDRAN & BERMAN, LLP**
     510 WALNUT STREET
12   SUITE 500
     PHILADELPHIA, PA 19106
13   Telephone:  215-592-1500
     mweinkowitz@lfsbalw.com
14
     DIANDRA "FU" DEBROSSE ZIMMERMANN
15   **DICELLO LEVITT**
     505 20th St North
16   Suite 1500
     Birmingham, Alabama 35203
17   Telephone:  205.855.5700
     fu@dicellolevitt.com
18
     ROBERT H. KLONOFF
19   **ROBERT KLONOFF, LLC**
     2425 SW 76TH AVENUE
20   PORTLAND, OR 97225
     Telephone:  503-702-0218
21   klonoff@usa.net
22
     HILLARY NAPPI
23   **HACH & ROSE LLP**
     112 Madison Avenue, 10th Floor
24   New York, New York 10016
     Tel: 212.213.8311
25   hnappi@hrsclaw.com
26
     ANTHONY K. BRUSTER
27   **BRUSTER PLLC**
     680 N. Carroll Ave., Suite 110
28   Southlake, TX 76092

-26-    JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
          MDL No. 3047; CASE No. 4:22-03047-YGR

1

(817) 601-9564
akbruster@brusterpllc.com

2

FRANCOIS M. BLAUDEAU, MD JD FACHE

3

FCLM
**SOUTHERN INSTITUTE FOR MEDICAL**

4

**AND LEGAL AFFAIRS**
2762 B M Montgomery Street, Suite 101

5

Homewood, Alabama 35209
T: 205.564.2741

6

francois@southernmedlaw.com

7

JAMES MARSH
**MARSH LAW FIRM PLLC**

8

31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170

9

Telephone:  212-372-3030
jamesmarsh@marshlaw.com

10

11

*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    PHILIP J. WEISER
     Attorney General
2    State of Colorado

3    _/s/ Bianca E. Miyata_
     Bianca E. Miyata, CO Reg. No. 42012,
4    *pro hac vice*
     Senior Assistant Attorney General
5    Lauren M. Dickey, CO Reg. No. 45773
     First Assistant Attorney General
6    Megan Paris Rundlet, CO Reg. No. 27474
     Senior Assistant Solicitor General
7    Elizabeth Orem, CO Reg. No. 58309
     Assistant Attorney General
8    Colorado Department of Law
     Ralph L. Carr Judicial Center
9    Consumer Protection Section
     1300 Broadway, 7th Floor
10   Denver, CO 80203
     Phone: (720) 508-6651
11   bianca.miyata@coag.gov

12   *Attorneys for Plaintiff State of Colorado, ex rel.*
     *Philip J. Weiser, Attorney General*
13
     **ROB BONTA**
14   Attorney General
     State of California
15
     _/s/ Megan O'Neill_
16   Nick A. Akers (CA SBN 211222)
     Senior Assistant Attorney General
17   Bernard Eskandari (SBN 244395)
     Supervising Deputy Attorney
18   General
     Megan O'Neill (CA SBN 343535)
19   Joshua Olszewski-Jubelirer
     (CA SBN 336428)
20   Marissa Roy (CA SBN 318773)
     Deputy Attorneys General
21   California Department of Justice
     Office of the Attorney General
22   455 Golden Gate Ave., Suite 11000
     San Francisco, CA 94102-7004
23   Phone: (415) 510-4400
     Fax: (415) 703-5480
24   Bernard.Eskandari@doj.ca.gov

25   *Attorneys for Plaintiff the People of the State of*
     *California*
26
     **DANIEL J. CAMERON**
27   Attorney General Commonwealth
     of Kentucky
28

-28-        JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
            MDL No. 3047; CASE No. 4:22-03047-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_/s/ J. Christian Lewis_
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Gregory B. Ladd (KY Bar No. 95886),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
GREG.LADD@KY.GOV
ZACH.RICHARDS@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

COVINGTON & BURLING LLP

By:      */s/ Philips A. Jones*
Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

1

2          FAEGRE DRINKER LLP

           By:     /s/ Andrea Roberts Pierson
3          Andrea Roberts Pierson, *pro hac vice*
           Amy Fiterman, *pro hac vice*
4          FAEGRE DRINKER LLP
           300 N. Meridian Street, Suite 2500
5          Indianapolis, IN 46204
           Telephone: + 1 (317) 237-0300
6          Facsimile: + 1 (317) 237-1000
           Email: andrea.pierson@faegredrinker.com
7          Email: amy.fiterman @faegredrinker.com

8          GEOFFREY DRAKE, *pro hac vice*
           David Mattern, *pro ha vice*
9          KING & SPALDING LLP
           1180 Peachtree Street, NE, Suite 1600
10         Atlanta, GA 30309
           Tel.: 404-572-4600
11         Email: gdrake@kslaw.com
12         Email: dmattern@kslaw.com

13         *Attorneys for Defendants TikTok Inc. and
           ByteDance Inc.*
14

15         MUNGER, TOLLES & OLSEN LLP

16         By:     /s/ Jonathan H. Blavin
           Jonathan H. Blavin, SBN 230269
17         MUNGER, TOLLES & OLSON LLP
           560 Mission Street, 27th Floor
18         San Francisco, CA  94105-3089
           Telephone:  (415) 512-4000
19         Facsimile:  (415) 512-4077
           Email: jonathan.blavin@mto.com
20
           Rose L. Ehler (SBN 29652)
21         Victoria A. Degtyareva (SBN 284199)
           Laura M. Lopez, (SBN 313450)
22         Ariel T. Teshuva  (SBN 324238)
           MUNGER, TOLLES & OLSON LLP
23         350 South Grand Avenue, 50th Floor
           Los Angeles, CA  90071-3426
24         Telephone:  (213) 683-9100
           Facsimile:  (213) 687-3702
25         Email: rose.ehler@mto.com
           Email: victoria.degtyareva@mto.com
26         Email: Ariel.Teshuva@mto.com

27         Lauren A. Bell (*pro hac vice forthcoming*)
           MUNGER, TOLLES & OLSON LLP
28         601 Massachusetts Ave., NW St.,

1    Suite 500 E
     Washington, D.C.  20001-5369
2    Telephone:  (202) 220-1100
     Facsimile:  (202) 220-2300
3    Email: lauren.bell@mto.com

4    *Attorneys for Defendant Snap Inc.*

5
     WILSON SONSINI GOODRICH & ROSATI
6    Professional Corporation

7
     By:     */s/ Brian M. Willen*
8    Brian M. Willen
     WILSON SONSINI GOODRICH & ROSATI
9    1301 Avenue of the Americas, 40th Floor
     New York, New York 10019
10   Telephone: (212) 999-5800
     Facsimile: (212) 999-5899
11   Email: bwillen@wsgr.com

12   Lauren Gallo White
     Samantha A. Machock
13   WILSON SONSINI GOODRICH & ROSATI
     One Market Plaza, Spear Tower, Suite 3300
14   San Francisco, CA  94105
     Telephone: (415) 947-2000
15   Facsimile: (415) 947-2099
     Email: lwhite@wsgr.com
16   Email: smachock@wsgr.com

17   Christopher Chiou
     WILSON SONSINI GOODRICH & ROSATI
18   633 West Fifth Street
     Los Angeles, CA 90071-2048
19   Telephone: (323) 210-2900
     Facsimile: (866) 974-7329
20   Email: cchiou@wsgr.com

21   *Attorneys for Defendants YouTube, LLC,*
     *Google LLC, and Alphabet Inc.*
22

23   WILLIAMS & CONNOLLY LLP

24   By: */s/ Joseph G. Petrosinelli*

25

26

27

28

-31-       JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
           MDL No. 3047; Case No. 4:22-03047-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashley W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
MDL No. 3047; Case No. 4:22-03047-YGR

1

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

2

Dated: _____, 2024

3

4

_____
PETER H. KANG
United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

**DATED:** January 19, 2024

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

JOINT REPORT ON [PROPOSED] DISCOVERY PLAN
MDL No. 3047; Case No. 4:22-03047-YGR