**SEEGERWEISS** LLP
NEW YORK • NEW JERSEY • PHILADELPHIA • NEWTON, MA

**VIA ECF**

Honorable Yvonne Gonzalez Rogers                                              January 19, 2024
U.S.D.C., Northern District of California
Oakland Courthouse
1301 Clay Street, Courtroom 1, 4th Fl.
Oakland, CA 94612

> *In Re: Social Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,* **4:22-md-03047-YGR:**
> **Plaintiffs' Corrected Response Letter Brief Opposing "Prioritization" of General Causation**

Dear Judge Gonzalez Rogers:

Plaintiffs respectfully submit this response to Defendants' letter brief requesting prioritization of general causation discovery and Rule 702 motions ("Def. Brf."). ECF 536. Defendants' brief confirms that "prioritizing" general causation is ill-suited for this case and would be inefficient and prejudicial.

*First*, in contrast to the cases Defendants cite, Defendants acknowledge the claims here involve a combination of neurobiology (such as brain development), psychology, and social and behavioral sciences. Def. Brf. at 2. Thus, unlike toxic tort or drug injury cases involving only a physical change in the body like mesothelioma, the claims here for mental and emotional, as well as physical, harms do not allow for segregation of general causation from specific causation. ECF 537 (Pltf. Brf.) at 4.[1]

*Second*, Defendants proceed under the mistaken premise that Plaintiffs need only "targeted" or "limited" discovery "if any" to prove up general causation. Def. Brf. at 4, n.9 and 5.

Plaintiffs will need discovery to confirm their understanding of the nature of the relevant features in Defendants platforms and how those features affect interaction with the platform—e.g., what notifications is a Defendant sending when a user has not logged in for a period of time? Plaintiffs also are entitled to discovery of Defendants' own testing, observations, and knowledge of how their platforms' features impact user behavior, mental health, and emotional states. Plaintiffs allege such use is the predictable result of Defendants' pursuing their all-important user "engagement" goal and, therefore, designing features that would dramatically increase use of their platforms—including by kids. MC ¶¶ 2, 182-84, 261, 364, 440, 447, 556, 586, 625, 690, 755-58. Thus, evidence of how the platforms affect users will come from Defendants, including from their research, design, safety, "health and wellbeing," sales, and other departments. Pltf. Brf. at 3-4. Plaintiffs are entitled to full discovery to prove up causation.

*Third*, Defendants claim their proposal will not prejudice Plaintiffs and will "yield meaningful efficiencies." Def. Brf. at 1, 2 & 5. But, if prioritization goes forward under Defendants' proposed discovery plan, general causation expert discovery would not close until May 1, 2025. By comparison, Plaintiffs propose to complete all expert discovery by March 1, 2025 (without prioritization). The children and families who have been injured cannot afford such delay. Moreover, despite the lack of a formal stay, Defendants intend to aggressively limit the proposed initial period of discovery. Indeed, Defendants assert prioritization would allow the Court to address general causation "before the parties are able to complete a substantial portion of broader fact discovery." Def. Brf. at 4, n. 9 (emphasis added). In their Discovery

---

[1] The JPML order and filings Defendants cite (Def. Brf. at 2) went to the different issue of whether general causation (among other issues) raises sufficient common questions of fact to warrant creation of an MDL. The fact that general causation raises common issues does not mean general causation should be carved out and decided early in isolation from specific causation.

Plan submission to Magistrate Judge Kang, Defendants were even clearer, stating "Defendants <u>do not</u> represent or <u>commit to being able to complete additional [i.e., non-general causation] discovery</u>" before their proposed date for Plaintiffs' general causation expert disclosure. ECF 548-1 at 15 (emphasis added).[2]

*Fourth*, Defendants similarly foreshadow their intent to take an unduly rigid and narrow approach to "general causation" by insinuating that Plaintiffs must prove they suffer from a "medically-recognized condition of 'addiction'" recognized in the DSM-5. Def. Brf. at 2-3. The injuries here are not limited to addiction and include compulsive use and what at least one Defendant calls "problematic" use. *E.g.*, MC ¶¶ 9, n 13 and ¶¶ 755-758; Amended Short-Form Complaint (ECF No. 520-1) at II. D (alleging injury of addiction <u>or</u> compulsive use). Moreover, DSM recognition is not required for admissible proof of mental illness. *See U.S. v. Finley*, 301 F.3d 1000, 1012 (9th Cir. 2002) ("mental disorders are 'constantly-evolving conception[s]' about which 'the psychological and psychiatric community is far from unanimous'"; "[a] court may not exclude proffered expert psychological testimony simply because the defendant's condition does not fit within the expert's—or the district court's own—concept of mental 'disorder.'"); *Peña v. Clark Cnty.*, 2023 WL 3293093 (W.D. Wash. May 5, 2023) (allowing opinion relying on concepts in peer-reviewed literature reliable despite lack of inclusion in DSM-5).[3]

Finally, as predicted, Defendants ask the Court to pre-judge the strength of Plaintiffs' scientific case before it is fully discovered and presented by experts. Def. Brf. at 2-4. That is particularly improper given the growing body of research connecting excessive social media use with the injuries alleged by Plaintiffs (Pltf. Brf. at 5), plus Defendants' <u>own</u> research showing their platforms hurt kids. MC ¶¶ 19, 282, 374, 391A (¶¶ 116, 119, 163), 453, 468, 486, 592-93. At best, Defendants' citations underscore the likelihood that any early Rule 702 challenge on general causation would end in a battle of the experts that juries must resolve. *See, e.g.*, *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 779–80 (8th Cir. 2021) (experts may "bridge the gap" between association and causation).[4]

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger

---

[2] One case cited by Defendants, *In re Incretin Mimetics Prods. Liab. Litig.*, MDL No. 2452 (S.D. Cal.), illustrates how structured discovery leads to delays. In that case, disputes over the scope of "general causation" discovery delayed resolution for <u>years</u>. 2014 WL 2532315, at *2 (June 2014) (summary judgment premature due to discovery disputes); 2014 WL 4987877, at *4 (Oct. 2014) (denying motion to compel as beyond the limited scope); 721 F. App'x 580 (9th Cir. 2017) (remanding, in part, to permit discovery excluded by trial court as beyond the limited scope); 524 F. Supp. 3d 1007 (S.D. Cal. 2021) (granting summary judgment). Given Defendants' unrealistically narrow view of the "limited" discovery needed on general causation here, similar disputes and delay are likely.

[3] In Defendants' cases, the expert opinions were unreliable for reasons other than lack of DSM diagnosis. *Vaughn v. Hobby Lobby Stores*, 2021 WL 2008469, at *8 (W.D. 2021) (expert applied DSM criteria but relied on plaintiff's self-serving statements); *U.S. v. Sampson*, 2016 WL 11726919, at *18 (D. 2016) (expert did not incorporate psychopathy testing manual's recommendations and ignored criticisms of test); *U.S. v. Weis*, 891 F. Supp. 2d 1007, 1009 (N.D. Ill. 2012) (opinion based on criteria from *Examiner.com*).

[4] Indeed, the National Academy of Sciences report Defendants cite explains that most of the research examined for the report was not designed to assess "whether the media use causes the outcome in question" and that the authors did not conduct a "systematic review." NAS, *Social Media and Adolescent Health* (2023 Prepublication) at 92.