UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No.  22-md-03047-YGR (PHK) <br><br> **ORDER RE MOTION TO MODIFY THE PROTECTIVE ORDER** <br><br> Re: Dkt. Nos. 501, 502 |

## INTRODUCTION

This multidistrict litigation ("MDL") action comprises hundreds of individual lawsuits brought on behalf of children and adolescents ("Individual Plaintiffs"), scores of actions commenced by school districts and local governments throughout the United States ("School District Plaintiffs"), and actions filed jointly by thirty-four State Attorneys General ("AG Plaintiffs").  The primary Defendants in the litigation are the companies operating Facebook and Instagram (collectively, "Meta"), as well as the companies operating YouTube, TikTok, and Snapchat.  A related state-level Judicial Council Coordination Proceedings ("JCCP") action is pending in Los Angeles County Superior Court before Judge Carolyn Kuhl.  *See* JCCP Proceeding No. 5255, Case No. 22STCV21355.

The MDL action has been referred to the undersigned for discovery purposes.  *See* Dkt. 426.  Now pending before the Court is the Individual Plaintiffs' Motion to Modify the Protective Order previously entered in this case.  [Dkt. 501].  The AG Plaintiffs, who join in support of the Individual Plaintiffs' request, seek additional modifications to the Protective Order.  [Dkt. 501-4; Dkt. 502].  Meta, YouTube, TikTok, and Snapchat oppose these modification requests.  [Dkt. 501-

2; Dkt. 506].  The Court has carefully reviewed the materials submitted by the Parties and heard oral argument at the Hybrid Discovery Hearing held on December 14, 2023.  *See* Dkt. 484; Dkt. 511.  For the reasons discussed at the hearing and as set forth below, Plaintiffs' motions to modify the Protective Order are **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

On October 6, 2022, the Judicial Panel on Multidistrict Litigation transferred this MDL action to the Northern District of California for coordinated and consolidated pretrial proceedings. [Dkt. 1].  On November 10, 2022, Judge Gonzalez Rogers, to whom the MDL was assigned, referred the case to Magistrate Judge Hixson "for all discovery matters, including the issuance of protective orders and orders regarding ESI and/or TAR protocols." [Dkt. 75 at 6].  The Parties thereafter began to meet and confer regarding the terms of a protective order.  [Dkt. 82 at 5; Dkt. 111 at 6-7; Dkt. 164 at 4].

**The Protective Order**

On March 3, 2023, Judge Gonzalez Rogers ordered the Parties to submit their remaining disputes concerning a protective order to Judge Hixson by March 17, 2023.  [Dkt. 164 at 4].  In compliance with that Order, the Parties filed a joint letter brief, with competing proposed protective orders attached, stating that they had "largely reached agreement on a stipulated Protective Order" and requesting Judge Hixson's assistance in resolving "certain disputed issues." [Dkt. 192].  Among other things, the Parties disagreed as to whether, and to what extent, the protective order should include language setting forth a process for disclosure of certain identifying information about a receiving party's retained expert, and a time period for the producing party to object to that expert before that expert can gain access to highly confidential materials at issue of the producing party.

On April 10, 2023, Judge Hixson held a hearing on the disputed protective order issues. *See* Dkt. 220; Dkt. 247.  At the hearing, Judge Hixson ruled in favor of adopting Defendants' proposed language requiring advance disclosure of experts who access another party's highly confidential material.  [Dkt. 247 at 39:3-40:21].  Following that hearing, the Parties continued to meet and confer regarding the protective order terms.

On May 12, 2023, the Parties submitted a further "Joint Statement Re: Protective Order" to Judge Hixson concerning their ongoing dispute as to the protective order terms, stating that they were still "unable to reach agreement on several issues." [Dkt. 271]. Plaintiffs, in their portion of the joint letter brief, asked Judge Hixson to reconsider his prior ruling on the advance expert disclosure requirement, arguing that "[r]ecent developments make clear this provision would unnecessarily hamstring Plaintiffs and interfere with coordination between the MDL and the JCCP." *Id.* at 8.

On May 18, 2023, Judge Hixson issued his Tentative Discovery Order regarding the then-remaining disputes regarding the protective order. [Dkt. 284]. On May 19, 2023, the Parties submitted a joint letter brief attaching a proposed protective order conforming to the Tentative Discovery Order's ruling. [Dkt. 287]. On May 22, 2023, Judge Hixson issued the final Discovery Order on the then-remaining protective order disputes. [Dkt. 289]. Rejecting Plaintiffs' request to reconsider the advance disclosure requirement, the Court reasoned that Defendants "will be producing highly sensitive documents in this MDL proceeding," and thus, "are entitled to know who has their stuff." *Id.* at 3. The Discovery Order also stressed that, "[i]f a data breach happens and some of Defendants' highly confidential materials end up in the public record, Defendants need to know all the possible sources of the breach." *Id.* at 4. Finally, the Court reasoned that eliminating the advance disclosure requirement would "substantively abolish" the designating party's ability to raise legitimate objections to improper disclosures, stressing that "[t]he day expert reports are due is not when a designating party should learn for the first time that someone who never should have had their protected materials has them." *Id.* The Protective Order was entered later that same day. [Dkt. 290]. The provision of the Protective Order which remains at issue is Section 7.6, regarding disclosure of background information on a party's proposed expert prior to that expert's gaining access to the opposing party's highly confidential information.

**Appeal re: the Protective Order**

On June 5, 2023, the Individual Plaintiffs filed a motion before Judge Gonzalez Rogers under Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, seeking relief from Section 7.6 of the Protective Order. [Dkt. 303]. Specifically, the Individual Plaintiffs argued that

1  the Court "clearly erred" by adopting Defendants' proposed language requiring advance disclosure

2  of experts who would receive highly confidential materials "without justification for imposing this

3  restriction." *Id.* at 4.  In support of that contention, the Individual Plaintiffs stressed that advance

4  expert disclosure requirements are typically imposed in patent and trade secret cases involving

5  competitor companies, where "the animating concern . . . [is] that one party should not be able to

6  sue another party for breach of its intellectual property rights and thereby gain unfettered access to

7  carefully guarded secrets[.]" *Id.*  They argued that such concerns regarding competitive harm are

8  "not present here," because this MDL is "a mass tort case alleging products liability, not a case

9  over 'patents and trade secrets.'" *Id.*  In addition, the Individual Plaintiffs argued that because the

10  Parties agreed to deal with source code separately, the Protective Order entered by Judge Hixson

11  governs only non-source code materials, "such as marketing plans, financial documents, and

12  similar documents disclosed in a wide variety of cases." *Id.* at 5.  They argued that "[t]here is no

13  reason to impose burdensome restrictions" on this type of information.  *Id.*

14      In challenging Section 7.6 of the Protective Order, the Individual Plaintiffs also argued that

15  they would be unduly harmed by an advance expert disclosure requirement.  Stressing that the

16  Federal Rules of Civil Procedure "do not impose an early disclosure [requirement]," they argued

17  that the imposition of such a requirement in this case would, in effect, allow Defendants to vet "all

18  of Plaintiffs' experts" and would otherwise "intrude" on their litigation strategy. *Id.* at 4.

19      The Individual Plaintiffs argued further that requiring advance disclosure of experts in this

20  case would "interfere with coordination between the MDL and JCCP." *Id.* at 5-6.  They stressed

21  that "[c]ounsel for the MDL Plaintiffs are actively coordinating with plaintiffs in the parallel JCCP

22  to efficiently prosecute their actions, including by sharing experts." *Id.* at 6.  The Individual

23  Plaintiffs argued that requiring early expert disclosure in the MDL "would make it highly

24  impractical to pursue this coordination," because California law allegedly prohibits required early

25  expert disclosure in the JCCP. *Id.*  They contended that if Section 7.6 is left to stand, either the

26  JCCP plaintiffs will have to disclose their experts early (which they assert violates California law),

27  or the MDL plaintiffs and the JCCP plaintiffs will be "severely hampered" in their ability to share

28  experts. *Id.*

1   On June 21, 2023, Meta, TikTok, and YouTube filed a response to the Individual

2   Plaintiffs' motion, arguing that "Judge Hixson did not commit clear error in adopting Section 7.6

3   of the Protective Order," and requesting that the provision remain as entered.  [Dkt. 318 at 1].

4   Defendants argued that, aside from language requiring disclosure of patent applications which

5   (according to the defense) "Plaintiffs do not seriously challenge," Section 7.6's language is taken

6   verbatim from this District's Tier 2 Model Protective Order ("MPO"), which "set[s] forth

7   presumptively reasonable conditions regarding the treatment of highly confidential information."

8   *Id.* at 3, 5.  According to Defendants, the fact that this case involves products liability claims

9   rather than intellectual property claims "is of no moment" as "courts have routinely adopted [the

10  Tier II MPO] outside the patent and trade secret contexts."  *Id.* at 6.  They argued that the

11  Individual Plaintiffs "will almost certainly seek discovery into Defendants' most closely held trade

12  secrets, including . . . non-source code materials about how Defendants' algorithms work, business

13  and pricing strategies, and other highly sensitive and technical information."  *Id.*  Rejecting the

14  Individual Plaintiffs' distinctions between source code and non-source code as "meritless,"

15  Defendants argued that "[m]any types of non-source code material could cause serious harm if

16  disclosed to a competitor," including those at issue here.  *Id.* at 6-7.

17  In addition, Defendants contended that the Individual Plaintiffs' concerns regarding

18  potential harms from required early disclosure are overblown.  Defendants stressed that "Section

19  7.6 requires no disclosure of a non-testifying expert *at all*, unless and until a party seeks to share

20  another party's highly confidential, competitive information with that expert."  *Id.* at 3 (emphasis

21  in original).  Citing *Ibrahim v. Department of Homeland Security*, 669 F.3d 983 (9th Cir. 2012),

22  Defendants argued that the Ninth Circuit has "squarely rejected" any assertion that information

23  regarding a non-testifying expert's identity constitutes protected work product.  *Id.* at 8.  As to the

24  Individual Plaintiffs' concerns regarding coordination with the JCCP, Defendants argued that the

25  Protective Order "applies only to the MDL Plaintiffs," and thus, "does nothing to impede

26  coordination."  *Id.* at 10.

27  Finally, as to the Individual Plaintiffs' alternate proposal that the advance disclosure

28  requirement apply only to experts who are current or anticipated officers, directors, or employees

1    of a competitor, Defendants argued that such a provision would afford them inadequate

2    protections.  *Id.* at 11-12.  Specifically, Defendants stressed that the alternative language would

3    still allow an expert receiving remuneration from a competitor for non-employee consulting

4    services to access Defendants' highly confidential information.  *Id.* at 12.

5          On June 28, 2023, the Individual Plaintiffs filed a reply brief, reiterating their position that

6    Section 7.6's advance disclosure requirement would substantially impede coordination between

7    the plaintiffs in the MDL and the JCCP because (according to them) "California law does not

8    permit imposing early disclosure requirements."  [Dkt. 321].  They argued that Section 7.6's

9    advance disclosure requirement will put Defendants "at a strategic advantage by allowing them to

10   learn the identity of Plaintiffs' *potential* testifying experts well in advance of when they would

11   otherwise receive Plaintiffs' formal expert disclosures."  *Id.* at 4.  Plaintiffs argued that Defendants

12   "have not shown a particular need for this approach," stressing that Section 2.9 of the Protective

13   Order already prohibits the Parties from hiring current or anticipated employees of a Party or of a

14   Party's competitor as experts in this litigation.  *Id.*  In addition, they argued that Section 7.6, as

15   entered, "provides incentive for Defendants to over-designate documents or data as highly

16   confidential, which will result in significant time and resources being consumed by designation

17   challenges."  *Id.* at 4 n.3.

18         After the completion of briefing, and while the appeal to Judge Gonzalez Rogers was still

19   pending, on September 27, 2023, Magistrate Judge Hixson issued an Order of Recusal in this case.

20   [Dkt. 377].  The case was then ultimately reassigned to the undersigned for all further discovery

21   matters.  [Dkt. 419].

22   **Resubmission of the Protective Order Issue**

23         Following these events, on November 14, 2023, Judge Gonzalez Rogers issued an Order

24   granting in part, and denying in part, Defendants' motion to dismiss the Individual Plaintiffs'

25   priority claims in their Master Complaint.  [Dkt. 430].  On November 16, 2023, Judge Gonzalez

26   Rogers lifted the formal discovery stay that had been in place since the MDL's inception and

27   ordered the Parties to "resubmit their disputes and requests for relief from Magistrate Judge

28   Hixson's [Protective Order] for a fresh look as Magistrate Judge Kang will be overseeing the

United States District Court
Northern District of California

6

discovery."  [Dkt. 451 at 5].

In the interim, on October 24, 2023, the AG Plaintiffs filed Complaints against Meta in this MDL.  Given their self-professed status as "relative newcomers" to the MDL, on December 13, 2023, the AG Plaintiffs filed a Position Statement addressing the pending discovery disputes that had already been briefed, including the instant dispute concerning Section 7.6 of the Protective Order.  [Dkt. 478].  Supporting the Individual Plaintiffs' challenge to the Protective Order, the AG Plaintiffs asked the Court to "remove the expert disclosure obligation imposed by Section 7.6," and alternatively, to "revisit the issue at a later date."  *Id.* at 3.  The AG Plaintiffs argued that Section 7.6's advance expert disclosure provision, if left unaltered, "would impose new and onerous disclosure obligations, burdening the States' ability to provide certain materials to retained consultants and experts."  *Id.* at 2.

The AG Plaintiffs argued that the provision "significantly departs" from an existing confidentiality agreement between the States and Meta, which "does not impose tiered levels of confidentiality designations," and which "reasonably and appropriately requires only that any consultants and experts assisting the States agree in writing to keep information confidential to the same extent as required by the confidentiality agreement."  *Id.* at 2-3.  The AG Plaintiffs argued that "[t]his regime has been acceptable to Meta during the course of the States' investigation," and thus, "there is no reason to now impose new, unnecessary expert obligations on the States."  *Id.* at 3.  In addition, the AG Plaintiffs argued that Meta cannot establish good cause to impose Section 7.6's "stringent restrictions" on expert disclosure, because Meta has not identified materials subject to highly confidential designation that "it expects to produce in this litigation going forward that it has not already produced."  *Id.*

Finally, the AG Plaintiffs argued that requiring them to disclose their experts who receive highly confidential materials produced by Meta in this MDL litigation will "disrupt[] ongoing engagements with consultants who were retained [by the States] under different terms."  *Id.* at 3. The AG Plaintiffs expressed concerns, specifically, that "[t]he broad term 'consultant,' used throughout the Protective Order, could be interpreted to encompass Meta's former employees."  *Id.*  They argued that such a result "could chill the cooperation of these individuals by jeopardizing

their anonymity and compromise critical law-enforcement relationships." *Id.*

**Hearing on the Instant Dispute**

On December 14, 2023, this Court held a Hybrid Discovery Hearing on the pending discovery dispute issues affecting this case. *See* Dkt. 484, 511. At the hearing, the Court addressed the Individual Plaintiffs' appeal of Section 7.6 of the Protective Order entered by Judge Hixson. The Court instructed the Parties that, procedurally, the undersigned lacks jurisdiction to hear an appeal in the form of a motion for relief from a nondispositive order issued by another Magistrate Judge. For that reason, the Court ordered the Parties to withdraw all of their briefing on the appeal and to then refile the identical briefing as the instant Motion to Modify the Protective Order.

On the merits of the dispute at hand, the Court heard argument from the Individual Plaintiffs, the AG Plaintiffs, and Defendants as to their respective positions regarding Section 7.6 of the Protective Order. In response to the Court's questioning, counsel for Snapchat clarified that, while Snapchat previously did not join in Defendants' opposition to the Individual Plaintiffs' request to remove Section 7.6 from the Protective Order, now Snapchat agrees with Meta, YouTube, and TikTok regarding the dispute. Counsel for Snapchat confirmed that the Court need not issue a separate order on the dispute specific to Snapchat.

At the hearing, the Court granted Meta's oral motion for leave to file and serve a single-page supplemental response to the AG Plaintiffs' Position Statement regarding the dispute, because Meta had not had an opportunity to file a reply to that brief previously. At the hearing, the AG Plaintiffs verbally requested that the Court further modify the Protective Order to "carve out" or provide an exemption from any Section 7.6 disclosure obligation with respect to experts and/or consultants with whom the AG Plaintiffs were already engaged before this litigation commenced. The Court granted the AG Plaintiffs' oral request for a half-page of supplemental briefing to set forth the exact proposed language of their verbal motion. At the conclusion of the hearing, the Parties agreed that this long-running dispute over expert disclosure in Section 7.6 was now submitted.

**Post-Hearing Final Briefs on Section 7.6 of the Protective Order**

On December 18, 2023, the Parties filed their Joint Notice of Plaintiffs' Motion to Modify the Protective Order [Dkt. 501], attaching as exhibits all the prior briefing: the Individual Plaintiffs' motion for relief from Section 7.6's advance expert disclosure requirement [Dkt. 303], Defendants' response to that motion [Dkt. 318], the Individual Plaintiffs' reply brief [Dkt. 321], and the AG Plaintiffs' Position Statement [Dkt. 478]. Contemporaneous with that submission, the AG Plaintiffs filed their supplemental briefing regarding a proposed carve-out exemption to early expert disclosure, requesting that the following text be added to Section 7.6 of the Protective Order, directly before subsection (a):

> For the avoidance of doubt, information or material received outside of this Action is not subject to Section 7.6, even if such information or material was also produced and designated as "HIGHLY CONFIDENTIAL (COMPETITOR)" Protected Material during the course of this Action. To the extent a Party discloses to an Expert information or material received outside of this Action, the Party is not bound by Section 7.6 with respect to that information or material.

[Dkt. 502].

Also on December 18, 2023, Meta filed a single-page supplemental response to the AG Plaintiffs' briefing regarding Section 7.6. [Dkt. 506]. Meta attached as an exhibit a copy of the Confidentiality Agreement between Meta and the States. *See* Dkt. 506-1. Meta argues that the Confidentiality Agreement, by its terms, was intended to govern the production of documents for use in the AG Plaintiffs' pre-suit investigation only, and "expressly contemplates" that the AG Plaintiffs' use of those documents in subsequent litigation would be governed by the terms of a protective order issued in that case. [Dkt. 506 at 2]. Meta argues that to the extent the AG Plaintiffs wish to continue using experts retained in connection with the pre-suit investigation who have been or will be permitted access to Meta's highly confidential materials as experts in this MDL, those experts must be disclosed to Meta pursuant to Section 7.6. *Id.*

In addition, Meta argues that the AG Plaintiffs proposed carve-out to Section 7.6 should be rejected, because such an exemption would allow the AG Plaintiffs to circumvent the advance disclosure requirement for materials produced during pre-suit investigation "regardless of whether such material is also produced *in* this litigation." *Id.* According to Meta, the AG Plaintiffs

"provide no reason why Meta should be afforded less protection when their Highly Confidential

documents are shared with litigation experts for the State AGs as opposed to other Parties'

litigation experts, and there is none." *Id.*

**DISCUSSION**

**LEGAL STANDARD**

The Court provides the extensive recitation of the procedural history above to show that

the Parties have argued and briefed this identical issue to the Court on two prior occasions.  And

on both occasions, the Court denied Plaintiffs' requests.  Procedurally, therefore, Plaintiffs' instant

request may be viewed as a renewed motion for reconsideration of the Protective Order.  Under

Civil Local Rule 7-9, a party seeking reconsideration of an interlocutory court order must file a

motion specifically show one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law
> exists from that which was presented to the Court before entry of the
> interlocutory order for which reconsideration is sought.  The party also must
> show that in the exercise of reasonable diligence the party applying for
> reconsideration did not know of such fact or law at the time of the interlocutory
> order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time
> of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal
> arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).  The moving party may not reargue any written or oral argument previously

asserted to the Court.  Civil L.R. 7-9(c).

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of

finality and conservation of judicial resources.'"  *Gamevice, Inc. v. Nintendo Co.*, --- F. Supp. 3d -

---, 2023 WL 4032009, at *1 (N.D. Cal. 2023) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945

(9th Cir. 2003)).  "As such, it should not be granted 'absent highly unusual circumstances.'"  *Id.*

(quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir.

2009)).

Here, Plaintiffs in effect ask this Court to reconsider Judge Hixson's May 22, 2023 Order

United States District Court
Northern District of California

United States District Court
Northern District of California

1    resolving the Parties' disputes as to the Protective Order, and further, to reconsider the Court's

2    prior verbal decision of April 10, 2023 requiring expert disclosures before a party may disclose

3    protected material to an expert.  *See* Dkt. 220; Dkt. 289.  In the May 22, 2023 Order, Judge Hixson

4    expressly acknowledged that Plaintiffs were seeking reconsideration of his April 10, 2023

5    decision.  [Dkt. 289 at 3.]  Then, as now, Plaintiffs argued that Section 7.6's advance disclosure

6    requirement would unduly prejudice the MDL Plaintiffs and impede coordination between the

7    MDL and the JCCP proceedings.  *Compare* Dkt. 271 at 8 ("Recent developments make clear

8    [Section 7.6's advance disclosure requirement] would unnecessarily hamstring Plaintiffs and

9    interfere with coordination between the MDL and the JCCP."), *with* Dkt. 321 at 3 ("[R]equiring

10   the MDL Plaintiffs to reveal their consulting experts and prematurely identify testifying experts . .

11   . would frustrate coordination [between the MDL and the JCCP] by imposing burdens on and

12   potentially impeding the sharing of experts between the two litigations.").  Notwithstanding

13   Plaintiffs' arguments, Judge Hixson "decline[d] to change [his] mind" regarding the advance

14   disclosure requirement, because Defendants will be producing "extremely sensitive materials" in

15   this MDL and are thus "entitled to know who has their stuff."  [Dkt. 289 at 3.]

16          The Court provides the detailed summary of the Parties' successive prior briefs on this

17   issue above to demonstrate that the arguments have not changed materially since first presented to

18   the Court in March 2023.  *See* Dkt. 192.  In their arguments and briefing on the identical issue to

19   this Court, Plaintiffs have not demonstrated the emergence of new material facts or a change in

20   law occurring after the time of the Court's April 10, 2023 hearing or after the time of the Court's

21   May 22, 2023 Order, nor have they shown that there is a material difference in fact or law from

22   that which was previously presented to the Court.  *See* Civil L.R. 7-9(b)(1)-(2).  Further, Plaintiffs

23   have not offered any evidence of "manifest failure by the Court to consider material facts or

24   dispositive legal arguments which were presented to the Court before such interlocutory order."

25   Civil L.R. 7-9(b)(3).  Accordingly, Plaintiffs have not demonstrated adequate grounds for

26   reconsideration of Judge Hixson's prior ruling on the Protective Order, were this Court to construe

27   Plaintiffs' instant Motion as a motion for reconsideration.

28          The Court is cognizant of the somewhat unique procedural posture of the instant Motion.

As is their right, Plaintiffs appealed the Protective Order issue to Judge Gonzalez Rogers as a motion for relief from a nondispositive pretrial order.  [Dkt. 303].  Judge Gonzalez Rogers directed the Parties to resubmit this dispute to the undersigned.  [Dkt. 451 at 5].  Plaintiffs thus withdrew their appeal [Dkt. 499], and the Parties resubmitted this dispute to the undersigned by the instant Motion to Modify the Protective Order.  [Dkt. 501].  In light of this posture, instead of a motion for reconsideration, the instant Motion may be viewed procedurally as a motion under Federal Rule of Civil Procedure 26, which grants the Court discretion and authority to engage in "continuing and close judicial involvement" in discovery in the case and to exercise effective judicial management of discovery.  *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("The present amendment again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management. . . . [T]here will be important occasions for judicial management, both when the parties are legitimately unable to resolve important differences and when the parties fall short of effective, cooperative management on their own."); *see also Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ("Control of pretrial discovery, including the entry or modification of a protective order, is a matter falling peculiarly within the discretion of the district court."); *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("We do not see how the district court abused the very wide discretion it is allowed in handling pretrial discovery.").

Rule 26(c) states that the Court may, for good cause shown, "protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" by issuing a Protective Order which "specif[ies] terms" for how discovery shall occur.  Fed. R. Civ. P. 26(c)(1)(B).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Consistent with this broad discretion to formulate the terms of protective orders under Rule 26, courts have equally broad discretion to modify their own protective orders.  *See Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995) ("A District Court Has Discretion Whether or Not to Modify Protective Orders. . . . Some circuits even suggest that district courts have more discretion in this area than in other areas.").

1    Thus, this Court has broad discretion in deciding whether to modify an existing protective order.

2    *Lahrichi v. Lumera Corp.*, 433 F. App'x 519, 521 (9th Cir. 2011).

3         The Court's authority to modify an existing protective order derives from the Court's

4    powers as a matter of its inherent authority.  As Wright & Miller recognize,

5         A starting point is to recall the flexibility, and sometimes the ease, that attends entry
         of protective orders. These are flexible devices, subject to the district court's
6        informed discretion. . . . [O]n many occasions they are embodied in "umbrella"
         orders entered on stipulation in advance of discovery and apply to all materials
7        deemed confidential by the producing party.  Given this broad range of protections,
         it should come as no surprise that as a sheer matter of power the court has authority
8        to alter the terms of a protective order it has entered, and that ordinarily requests to
         modify are directed to the district court's discretion and subject to review only for
9        abuse of discretion.

10   8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

11   PROCEDURE § 2044.1 (3d ed. 2023).

12        Here, whether the Court's authority to modify the Protective Order derives directly from

13   Rule 26 itself or from the Court's inherent authority, the standard for showing whether a

14   modification is warranted is "good cause."  *See CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D.

15   195, 201 (N.D. Cal. 2009) (citing *Phillips ex rel. Est. of Byrd v. Gen. Motors Corp.*, 307 F.3d

16   1206, 1213 (9th Cir. 2002)) ("[D]istrict courts have inherent authority to grant a motion to modify

17   a protective order where 'good cause' is shown").  The party seeking the modification bears the

18   burden of proving such good cause exists to modify the protective order.  *Id.* at 205 ("[Moving

19   party] CBSI bears the burden to make a showing of good cause to modify the protective order.").

20   Further, "[a] party asserting good cause bears the burden to show that specific prejudice or harm

21   will result if the motion [to modify the protective order] is not granted."  *Id.* at 201 (citing *Phillips*,

22   307 F.3d at 1210-11).

23        Accordingly, because Plaintiffs seek modification of the Protective Order's terms, they

24   bear the burden of establishing good cause for the modification and the burden to show that

25   specific prejudice or harm will result if the motion is not granted.  While the Court would deny the

26   instant Motion were it treated as a motion for reconsideration (as discussed above), the Court

27   below analyzes the instant Motion under the good cause standard pursuant to the Court's inherent

28

United States District Court
Northern District of California

13

1    authority and the Court's authority under Rule 26.

2    **Modification of the Protective Order's Section 7.6**

3         As the United States Supreme Court long ago recognized: "It will be understood that if, in

4    the opinion of the trial judge, it is or should become necessary to reveal the secrets to others, it

5    will rest in the judge's discretion to determine whether, to whom, *and under what precautions*, the

6    revelation should be made." *E. I. Du Pont De Nemours Powder Co. v. Masland*, 244 U.S. 100,

7    103 (1917) (emphasis added).  Section 7.6 of the Protective Order, which originates from this

8    District's Model Protective Order, provides specific precautions before highly confidential

9    materials of a producing party can be revealed to an expert of a receiving party – specifically, the

10   precautions in Section 7.6 require the receiving party to disclose certain background information

11   about that expert to the producing party which designated the material as "highly confidential," in

12   order to afford that producing/designating party an opportunity to determine if there is a basis for

13   objecting to such expert's receiving those materials.

14   **Whether Plaintiffs Have Shown Good Cause to Delete Section 7.6**

15        Here, Plaintiffs argue that the expert disclosure terms of Section 7.6 are entirely

16   unnecessary and should be deleted.  Plaintiffs argue that, at most, Section 7.6 should be replaced

17   with alternative language which limits the need to disclose information about experts only when

18   those experts are current or anticipated officers, directors, or employees of a Party or a Party's

19   competitor.  [Dkt. 303 at 5].  Plaintiffs argue that the Parties are negotiating a completely separate

20   protective order directed to source code, and that the provisions of Section 7.6 are unnecessary

21   where the highly confidential information in the instant Protective Order is directed to other types

22   of documents or information, such as business plans, marketing or sales materials, pricing

23   strategies, and other commercial information of a highly confidential nature.  *Id.*

24        The Northern District of California's website makes available to the public two different

25   model protective orders for consideration: (1) the Model Stipulated Protective Order for Standard

26   Litigation ("Tier 1 MPO"); and (2) the Model Protective Order for Litigation Involving Patents,

27   Highly Sensitive Confidential Information and/or Trade Secrets ("Tier 2 MPO").  *See*

28   https://cand.uscourts.gov/forms/model-protective-orders/ ("The protective orders on this page are

United States District Court
Northern District of California

14

court-approved model forms.") (last visited January 18, 2024).  The Tier 1 MPO is offered for consideration to use in "standard cases" or "standard litigation."  By contrast, the Court's Tier 2 MPO contains "presumptively reasonable conditions" for a protective order to be used in a case involving discovery of highly sensitive materials.  *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 WL 3421402, at *1 (N.D. Cal. June 22, 2016) (quoting *Barnes & Noble, Inc. v. LSI Corp.*, No. 11-cv-02709-LB, 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012)).  The Protective Order entered in this case is predicated on the Tier 2 MPO.

The Individual Plaintiffs previously argued to Judge Hixson, and still argue here, that the Tier 1 MPO (rather than the Tier 2 MPO) should serve as the base model protective order in this case, because "[t]his case is a mass tort case alleging products liability, not a case over 'patents and trade secrets.'"  [Dkt. 303 at 4.]  Defendants, in response, argue that the Tier 2 MPO is appropriate for use in this case, because Plaintiffs "will almost certainly seek discovery into Defendants' most closely held trade secrets," including "non-source code materials about how Defendants' algorithms work, business and pricing strategies, and other highly sensitive and technical information."  [Dkt. 318 at 6.]

While the Court expresses no opinions on the merits of this case, the Parties' pleadings and filings make clear that commercially sensitive, closely guarded information regarding how Defendants' respective social media online platforms operate and generate revenue, including how certain features of those platforms are designed (including whether and to what extent if any they affect adolescents' neurocognitive behaviors), are likely to be the subject of discovery.  *See, e.g.*, Dkt. 386 at 1-2.  The Court finds that Plaintiffs have failed to show good cause to modify the Court's previous determination that the Tier 2 MPO is the appropriate starting point for crafting the Protective Order's terms.

Section 7.4 of the Tier 2 MPO delineates the procedures for a party who has produced and designated highly confidential materials to object to a receiving party's disclosure of those highly confidential materials to an expert.  The default language of the provision requires the receiving party to provide certain information to the producing party prior to the receiving party's furnishing or disclosing such highly confidential information to any such expert.  The purpose of these

United States District Court
Northern District of California

disclosures is to give the producing party sufficient information to make an informed decision on whether or not to object to the disclosure of their highly confidential materials to that expert. Section 7.4(a) of the Tier 2 MPO requires the receiving party to provide the producing party a written request which sets forth certain identifying information regarding the highly confidential material(s) at issue and the particular expert to whom disclosure of such materials is sought.  With the exception of requiring additional disclosures related to an expert's patents and patent applications, Section 7.6 of the Protective Order entered in this case (the provision at issue here) adopts verbatim the default language of Section 7.4 of the Tier 2 MPO.

Here, Plaintiffs ask the Court to strike Section 7.6 from the Protective Order and replace it with their proposed alternative provision that prohibits disclosure of highly confidential materials "only to individual Plaintiffs or officers, directors, and employees of the recipient, subject to certain exceptions." [Dkt. 303 at 2].  The Court finds that Plaintiffs have not shown good cause for such a modification to the Protective Order's terms.

Plaintiffs' argument to limit the disclosure about experts only to current or anticipated officers, directors, or employees of a producing party's competitor ignores the many reasons why an expert could be objected to by a producing party, even if that expert is not an employee of a competitor.  Experts on finance and damages issues are often economists who work for management consulting, financial consulting, or accounting services firms which provide strategic market and/or financial analysis of competitors or of an industry sector for clients outside the litigation context.  Economists and finance expert witnesses sometimes provide advice, if not opinions, to clients in the context of contemplated mergers and acquisitions or other private corporate transactions.  Technical experts provide not just litigation-related services, but also sometimes, if not often, provide engineering or technical consulting services to companies—some of whom may be among the fiercest competitors of the producing party.  Technical experts sometimes become entrepreneurs and start their own technology-based or venture-backed companies which may be a competitor to a producing party.  Technical experts sometimes support their customers not only in litigation, but also in development of an intellectual property portfolio and such IP could be the basis of a potential future assertion against a producing party.  Expert

witnesses (whether technical or damages) sometimes provide repeat litigation-support services for their customers, and those customers may be among the fiercest competitors of a producing party. All these relationships an expert has would likely not be public, are outside or irrelevant to whether or not that expert is an officer, director, or employee of a competitor, and can raise substantial bases for objecting to exposing the most highly confidential materials to that expert.

The Tier 2 MPO's language is the result of a recognition that there is a practical and substantial need for pre-disclosure identification of experts before they receive highly confidential materials in a case, because without such a procedure the expert would be exposed to those materials and, even if later disqualified, it is impossible to erase knowledge of those materials from the expert's mind or memory. Unlike attorneys, expert witnesses are not subject to the Rules of Professional Conduct, nor subject to discipline by a professional bar association or the like, nor uniformly subject to licensure requirements, nor required to receive training in ethics or professional responsibility.

Here, Plaintiffs argue that modification is warranted because Section 7.6 relates to highly confidential information under the Protective Order, which the Parties agree does not apply to source code because the Parties agreed to negotiate a separate protective order specific to only computer software source code produced by the Parties (primarily expected to be Defendants). Indeed, at the hearing on this matter, the Parties confirmed with the Court their intention to continue to meet and confer regarding a separate protective order covering source code materials. Based on this separation of source code into a future protective order, Plaintiffs argue that the provisions of Section 7.6 are inappropriate and unnecessary because the type of highly confidential materials expected to be at issue under the existing Protective Order are pricing, marketing, sales, and other commercial information. However, Rule 26(c) explicitly contemplates and authorizes the issuance of protective orders "requiring that . . . commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(7). Courts routinely issue protective orders limiting access to confidential commercial information to attorneys and outside experts. *See, e.g.*, *RSI Corp. v. Int'l Bus. Machs. Corp.*, No. 5:08-cv-3414 RMW, 2012 WL 3095439, at *1 (N.D. Cal. July 30, 2012) ("Where trade secrets or other confidential

United States District Court
Northern District of California

commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims.  Disclosure may be ordered to opposing party's trial counsel only[.]") (internal citation and quotation marks omitted); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555-56 & n.4 (C.D. Cal. 2007) (ordering that protective order provide that disclosure of the defendant's customer and supplier lists and revenue and sales information be limited to "attorney's eyes only"); *Russo v. Lopez*, No. 2:11-cv-00284-PMP-GWF, 2011 WL 13250479, at *4 (D. Nev. Dec. 12, 2011) ("[C]ourts commonly issue protective orders restricting access to highly sensitive competitive information to the requesting party's counsel and outside experts.  Such limitations are imposed where the disclosure of the information to the party's direct competitor would result in competitive harm to the disclosing party."); *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("Protective orders that limit access to certain documents to counsel *and experts* only are commonly entered in litigation involving trade secrets and other confidential research, development, or *commercial information*.") (emphasis added).  Plaintiffs make no showing of good cause to exempt commercial information from the current Protective Order's provisions in Section 7.6, which are intended to protect the dissemination of highly sensitive commercial information.

Plaintiffs' argument that Section 7.6 (which is based on the Tier 2 MPO) should not or cannot be used except in certain types of intellectual property cases is mistaken.  To the contrary, the Northern District of California's website makes clear that, with the exception of cases governed by Patent Local Rule 2-2 (*i.e.,* patent cases), "the Local Rules do not require the parties to use *any* of the model protective orders and counsel may stipulate to or move for another form or protective order." CAND Model Protective Orders, https://www.cand.uscourts.gov/forms/model-protective-orders/ (emphasis added); *accord Rabin v. Google LLC*, --- F.Supp.3d ----, 2023 WL 8010231, at *1 (N.D. Cal. 2023); *see also Mironowski v. Ford Motor Co.*, No. 1:22-cv-00675-JLT-CDB, 2023 WL 2957858, at *2 (E.D. Cal. Apr. 14, 2023) (observing that the Northern District of California's "preference" as to the specific base model protective order to be used in a given case "extends only to protective orders in patent cases").

**Whether Plaintiffs Have Shown Good Cause to Modify Section 7.6**

If Section 7.6 is not deleted or replaced entirely, Plaintiffs argue that the provision should be modified to eliminate subsection (a) which requires disclosure of certain information about an expert. Plaintiffs argue that they are harmed by the expert disclosure provisions of Section 7.6 of the Protective Order because "early" disclosure of their experts to Defendants provides an unfair tactical advantage to Defendants. [Dkt. 303 at 4]. However, "[t]o modify a protective order a party must establish good cause by demonstrating how the protective order will prejudice the party's case." *Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992)). "The protective order must actually prejudice presentation of the moving party's case, not merely increase the difficulty of managing the litigation." *Id.*

Plaintiffs make no assertion that the actual presentation of their case is prejudiced by Section 7.6. A party's ability to present their case is not prejudiced by providing a relatively minimal amount of basic (and likely public) information about an expert witness to the opposing party. The difference in the Parties' dispute here is only a dispute as to timing: whether experts' backgrounds (and grounds for potential conflicts) are disclosed "early" (as Plaintiffs argue speculatively is the result of Section 7.6 of the Protective Order) or are disclosed at a time closer to trial and presumably during the start of the expert discovery period (as apparently would result from Plaintiffs' proposed modification). If Defendants have grounds to object to one of Plaintiffs' proposed experts, that objection will, either way, be raised and decided in the pretrial period—the only difference here is at what stage of the pretrial period. If such proposed expert has an actual conflict or other sustained basis for not being able to see the highly confidential information of a Defendant, the "earlier" timing of the decision on that issue does not prejudice Plaintiffs' ability to present their case.

Plaintiffs argue that the allegedly "earlier" disclosure of experts' information under Section 7.6 is tactically disadvantageous, presumably because Plaintiffs would prefer to give Defendants the least amount of time possible to investigate, seek possibly impeaching evidence, and research the background of Plaintiffs' experts before expert depositions and expert discovery. However, a

preference for tactical timing of such information is not cognizable prejudice to the Plaintiffs' ability to put on a case.  If Plaintiffs were correct, then any time a party were required to disclose its contentions, its witnesses, or its expert witnesses, the party could argue that it is somehow "prejudiced."  That is not how discovery under the Federal Rules is intended to proceed—long ago the courts abandoned allowing litigation by ambush or surprise.  The whole purpose of discovery under the Federal Rules is to ensure the efficient and effective management of the case, which includes management of the timing of disclosures such as in Section 7.6 of the Protective Order.  Thus, Plaintiffs' arguments based on "earlier" timing of expert witness disclosures do not constitute good cause for modification of the Protective Order.

Indeed, as the Court noted at the hearing on this dispute, early resolution of experts' potential conflicts results in *less prejudice* to the Parties.  If (as Plaintiffs propose) such a conflict issue is only able to be recognized, raised, and decided "late" in the pretrial period of the case, then fact discovery would be closed (or nearly closed) and the party proposing the conflicted expert would likely have to scramble to find a replacement expert on shorter notice, potentially in the middle of the expert discovery period.  Instead, the logic behind Section 7.6 as part of the Court's model language is to ensure that conflict issues are flagged, discussed, and resolved much earlier in the case in order to avoid (or at least mitigate) any prejudice from trying to find a replacement expert in a rush or at the last minute.  Further, such "early" disclosure affords all parties the benefit of knowing they can continue to work with their experts throughout the fact discovery period without fear of the need to replace the expert at the start of the expert discovery period.  Section 7.6's required disclosure of information about experts (whether early or not) allows for prompt resolution of any potential objections to an expert, allows a party to seek and retain unobjectionable experts as replacements if needed without prejudicing that party with limited or short time to work with their new experts, avoids last-minute disputes over experts which could become the basis for requests to modify the case schedule unnecessarily, and clears the path for the case to proceed in an orderly and prompt manner to resolution.  In this way, Section 7.6 promotes the interests of securing a just and speedy determination of a case, and thus, promotes the efficient and fair administration of justice as a matter of reasonable Court

management of civil discovery.  *See* Fed. R. Civ. P. 1 & advisory committee's note to 2015 amendment.  Accordingly, Section 7.6 reduces the risk of harm or prejudice to the Parties here, because they can prepare the presentation of their cases with the benefit of firsthand work for months on the case during the fact discovery period with experts they know will remain available to them when it comes time for expert discovery.

On the issue of the timing of the disclosure of information about experts, Plaintiffs' arguments assume, without addressing why, that such disclosure would *necessarily* be unfairly "early" in the litigation (as compared to the last-minute disclosure Plaintiffs would prefer for the reasons noted above).  However, the timing of when to make any such disclosure is wholly within the control of the Plaintiffs.  Under Section 7.6, the triggering event for the required expert disclosure is the time at which the receiving party decides *they* want to disclose the producing party's highly confidential materials to their expert.  There is no requirement under this Protective Order that such disclosure be "early" or "premature."  That timing decision is entirely within the discretion and control of the receiving party and their counsel's strategic decision on when they want to disclose the highly confidential information to their expert.  Plaintiffs' argument that Section 7.6 provides an unfair litigation advantage by requiring them to disclose detailed information about their experts early in the litigation is not well founded.  As noted, Section 7.6's requirement of disclosure about experts is *only* triggered if and when a receiving party desires to show highly confidential materials to an expert.  There are aspects of a case an expert can work on to support a party without receiving any highly confidential information of an opposing party. The timing for disclosure of highly confidential materials to an expert is wholly within the control of the receiving party (and their counsel) working with that expert.  In this Court's experience, there is a significant period of fact discovery between the parties in a case resulting in the passage of time before highly confidential materials are produced, which is a predicate before any such materials could even be reviewed by experts.  Accordingly, Plaintiffs' arguments for "good cause" and "specific harm or prejudice" are entirely speculative and unfounded in the language of Section 7.6.

In relevant part, Section 7.6 of the Protective Order, entitled "Procedures for Approving or

Objecting to Disclosure of 'HIGHLY CONFIDENTIAL (COMPETITOR)' Protected Material to Experts," reads as follows:

> (a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Protective Order) any Protected Material, must first make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL (COMPETITOR)" Protected Material that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services, including in connection with a litigation, at any time during the preceding five years and the Party to the litigation for whom such work was done, (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years, and (7) identifies any patents or patent applications in which the Expert is identified as an inventor or applicant, is involved in prosecuting or maintaining, or has any pecuniary interest.

> *  *  *

> (b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within fourteen calendar days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

> (c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice-to-voice dialogue) to try to resolve the matter by agreement within ten calendar days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert may file a motion to resolve the discovery dispute [in accordance with the Northern District of California's Civil Local Rules], or otherwise in accordance with the Court's procedures for disputes relating to discovery matters and protective orders. . . . In any such proceeding, the Party opposing disclosure to the Expert bears the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

[Dkt. 290 at 13-14].

Subsection (a) of Section 7.6 thus identifies seven categories of information about a proposed expert witness which must be disclosed to the producing party: (1) the general categories of highly confidential materials the receiving party wants to disclose to the expert, (2) the full name of the expert and the city and state of his or her primary residence, (3) a copy of the expert's current resume, (4) the expert's current employer(s), (5) the identities of people or entities who

have paid the expert for professional services (including litigation) in the preceding five years, (6) the prior litigations in which the expert has offered testimony in the preceding five years, and (7) the patents or patent applications for which the expert is a named inventor/applicant or is basically involved with substantively or financially.  And subsections (b) and (c) of Section 7.6 make clear that the purpose of this expert disclosure is to enable the parties to determine and discuss whether there is a basis to object to an expert receiving the highly confidential information of another party, due to conflicts or other reasonable objections.

While the Court denies Plaintiffs' request that subsection (a) of Section 7.6 either be deleted from the Protective Order entirely or its application limited only to experts who are former/future employees of a producing party, the Court grants-in-part Plaintiffs' request to modify the list of information that must be disclosed under subsection (a).  Specifically, the Court modifies the Protective Order to remove the requirement that the receiving party need identify the categories of documents that are sought to be provided to the expert as set forth in Section 7.6(a)(1).  As argued at the hearing in this matter, the Parties already know the categories of documents that have been or are to be designated "HIGHLY CONFIDENTIAL (COMPETITOR)" in this case—such material will not include source code and (per the Parties' representations to the Court) such materials instead would include marketing, sales, business planning, and other commercial information.  Because the Parties already know what kind of information will be designated as "HIGHLY CONFIDENTIAL (COMPETITOR)" under the Protective Order, there is no need to require a receiving party to explain the categories of documents or information sought to be disclosed to an expert.  By removing this subsection of the list of information to be provided in subsection (a) of Section 7.6, the Court further addresses and mitigates Plaintiffs' concern that the disclosure somehow unfairly requires disclosing too much information relating to litigation tactics and strategy to the defense.  While the Court finds that Plaintiffs have not demonstrated any actual specific harm or prejudice, reducing this part of the disclosure will, by necessity, reduce any hypothetical strategic or tactical prejudice perceived by Plaintiffs from Section 7.6.

The Court notes that the information to be disclosed about an expert under Section 7.6 does not invade work product or privileged materials.  The expert's name, residence, employer,

United States District Court
Northern District of California

current resume, and most recent litigations and clients of professional services are not confidential information.  Indeed, most expert witnesses publicize their names, employers, locations, and current biographical information for their own marketing purposes.  Whether an expert provided testimony in a prior litigation is not confidential and some experts publicize their previous litigation work, again for marketing purposes.  There is no perceivable harm or specific prejudice to Plaintiffs' ability to present their case by their disclosure of this type of information about experts, which is virtually always disclosed in litigation anyway—most of this information would be found in an expert's or consultant's CV and most of it is typically found on experts' online profiles, such as any of the myriad online and printed expert witness directories or on LinkedIn.  Finally, as discussed in the briefing and at the hearing, Plaintiffs have not raised any objection to the seventh category of information to be disclosed about experts concerning patents and patent applications they are connected to substantively.  For these reasons, Plaintiffs have not shown good cause to modify Section 7.6 further.

**Interplay Between Section 7.6 and State Investigations' Confidentiality Agreements**

Plaintiffs also argue that the disclosure obligations of Section 7.6 are inconsistent with confidentiality agreements entered into between at least one Defendant (Meta) and the AG Plaintiffs.  [Dkt. 478 at 2].  As discussed at the hearing and in the briefing, at least one Defendant has, prior to this litigation, produced material to the AG Plaintiffs in connection with State investigations addressing issues similar to those at issue in this MDL.  Some of those materials were designated as "Confidential" as defined by and pursuant to a Confidentiality Agreement between Meta and certain State Attorneys General.  *See* Dkt. 506-1.  That Confidentiality Agreement permits the State Attorneys General to disclose information or material designated as "Confidential" (under the terms of that Agreement) to consultants and experts who have agreed in writing to afford such information a level of protection against disclosure that is at least as protective as the terms of that Agreement, without any prior disclosure to the producing party of who those experts are.  *Id.* at 5 ¶ 14(c).  There is no procedure or provision in the Confidentiality Agreement for the disclosure of identifying or background information of any experts working with the State Attorneys General on those investigations, even where such experts or consultants

United States District Court
Northern District of California

1    have accessed Confidential Information of Meta or other Defendants produced in those

2    investigations.

3         Defendants have re-produced in this litigation those same materials that were previously

4    produced in State investigations to State Attorneys General, and to the extent any have not yet

5    been produced, Defendants anticipate completing such re-production.  Defendants do not seek

6    return or destruction of any material produced in the State investigations.  [Dkt. 506 at 2 n.1].  The

7    Parties dispute whether or not an expert or consultant working on the pre-litigation investigations

8    led by the AG Plaintiffs need to be disclosed immediately, now that the material from those

9    investigations have been re-produced in this litigation.  Defendants argue that immediate

10   disclosure is required because the material has now been re-produced, and some of it is designated

11   as "HIGHLY CONFIDENTIAL (COMPETITOR)" under the Protective Order.  *Id.* at 2.  The AG

12   Plaintiffs argue that no disclosure should be required at all (because Section 7.6 should be

13   modified to entirely remove the disclosure provisions).  [Dkt. 478 at 2-3].

14        Contrary to Defendants' assertions, the Confidentiality Agreement between the AG

15   Plaintiffs and Meta does not state that all confidential investigation documents re-produced in

16   subsequent litigation shall or must trigger all disclosure obligations in the protective order issued

17   in that litigation.  Rather, the Confidentiality Agreement refers only to documents attached to "any

18   petition, charging document, or company by the Attorney General."  [Dkt. 506-1 at ¶ 6].

19   Specifically, Paragraph 6 of the Confidentiality Agreement defines applicability of any litigation

20   protective order as follows: "Following the filing of any petition, charging document, or complaint

21   by the Attorney General, the confidentiality or non-confidentiality of documents or information

22   *attached to the petition, complaint or charging document* will be determined by the terms of a

23   protective order entered in the case by stipulation or court order[.]"  *Id.* (emphasis added).  Indeed,

24   the parties to the Confidentiality Agreement (*e.g.,* AG Plaintiffs and Meta) agreed that "[n]othing

25   contained herein shall alter or limit the obligations of the Attorney General that may be imposed . .

26   . by order of any court, regarding the maintenance or disclosure of documents or information

27   supplied to the Attorney General."  *Id.* at ¶ 11.  The Parties thus agreed that the orders of this

28   Court shall control disposition of confidentiality issues.

United States District Court
Northern District of California

Therefore, simply because Meta or other Defendants have re-produced in this litigation the materials from the State investigations does not by itself trigger the disclosure obligations of Section 7.6 of the Protective Order.  Indeed, the State investigations' Confidentiality Agreement only triggers the Protective Order specifically with respect to documents attached to a "petition, complaint or charging document"—there is no discussion of production of such material in discovery.  *Id.* at 3-4 ¶ 6.  Defendants are incorrect that the Confidentiality Agreement mandates that the AG Plaintiffs must disclose information about any experts or consultants who accessed confidential information in connection with the State investigations.  Rather, the parties to the Confidentiality Agreement agreed that disclosure obligations with respect to the AG Plaintiffs' handling of confidential information would be controlled by order of the court.  The Protective Order and the instant Order are the governing or operative documents setting forth when and under what conditions an expert disclosure is required, therefore, and not any terms in the Confidentiality Agreement itself.

Under Section 7.6 of the Protective Order, as discussed above, the timing of when an MDL Plaintiff (such as the AG Plaintiffs) needs to disclose information about an expert to Defendants is triggered when the AG Plaintiffs wants to disclose documents produced in this case which are designated Highly Confidential in this case.  Thus, if an AG Plaintiff has been and/or is continuing to work with an expert or consultant on any investigations, and ***not*** this litigation, then the terms of the Confidentiality Agreement control, not the Protective Order.  The Protective Order does not purport to extend its terms to the States' investigations *per se*.  Thus, no disclosure of information for any such expert or consultant (as discussed in Section 7.6) is required even if such expert or consultant (working solely on the State investigation) has received or has access to material designated as "Confidential" pursuant to that Confidentiality Agreement regardless of whether it has been re-produced in this litigation.

Conversely, however, if an AG Plaintiff desires in future to disclose information designated by a Defendant as "HIGHLY CONFIDENTIAL (COMPETITOR)" Protected Material, where such information was not produced by a Defendant in connection with a pre-litigation State investigation (and thus was not produced pursuant to the Confidentiality Agreement in the

United States District Court
Northern District of California

1 | investigation), then the disclosure requirements of Paragraph 7.6 will of course be triggered at that

2 | point.  The timing of when to make any such disclosure is wholly within the control of the AG

3 | Plaintiffs and there is no requirement under this Protective Order that such disclosure be "early" or

4 | "premature" as discussed.

5 |      The AG Plaintiffs argue, speculatively, that the disclosure process under Section 7.6 would

6 | somehow interfere with their relationships with current experts and/or consultants.  [Dkt. 478 at

7 | 3].  At the hearing on this matter, counsel for the AG Plaintiffs admitted that nothing in the

8 | Protective Order requires any Plaintiff in this MDL action to fire or refrain from working with any

9 | particular expert.  [Dkt. 511 at 27:16-22].  Any Plaintiff is free to work with an expert or

10 | consultant who has no conflict adverse to Defendants.  Whether or not a Plaintiff discloses

11 | background information about an expert does not mean that Plaintiff would have to cease working

12 | with that expert entirely.  Even if a Defendant objects to disclosure of highly confidential

13 | information to a Plaintiff's expert, that does not mean the Plaintiff is required to terminate

14 | working with that expert.  Because Defendants committed at the recent hearing before this Court

15 | not to over-designate materials as highly confidential (and the Court admonished them on this

16 | issue), there is expected to be a substantial amount of non-highly confidential discovery material

17 | produced in this case which would *not* trigger the disclosure obligations of Section 7.6 and an

18 | expert witness or consultant thus would remain free to access such non-highly confidential

19 | materials (as well as publicly-available materials) in their work with Plaintiffs in this matter.

20 |      To make clear to Defendants (and indeed all Parties), the Court reminds the Parties that

21 | Sections 5.1 and 5.2 of the Protective Order mandate that a producing party shall not over-

22 | designate produced documents, information, or material as "HIGHLY CONFIDENTIAL

23 | (COMPETITOR)" Protected Material.  Accordingly, the Court admonishes the Parties to refrain

24 | from over-designations that are shown to unnecessarily or unjustifiably attempt to create artificial

25 | barriers to a receiving party's work with an expert, or designations which unreasonably or

26 | excessively attempt to trigger expert disclosure under Section 7.6.  The Court trusts experienced

27 | counsel in this MDL to avoid improper and excessive over-designations of Highly Confidential

28 | Material, and notes that excessive over-designations may potentially expose the over-designating

United States District Court
Northern District of California

1    party to appropriate sanctions, including (but not limited to) potential discovery sanctions (both

2    fact and expert), monetary sanctions, review of a counsel's status either under the *pro hac vice*

3    rules or membership in the bar of this Court, and/or the Court requiring direct and in-person

4    involvement of clients, in-house counsel, or other business or governmental officers supervising

5    this litigation of the over-designating party in future discovery proceedings, in-person meet and

6    confers, and hearings in this matter.

7    **Section 7.6 and the JCCP**

8          The Parties devote significant portions of their briefing regarding Section 7.6 of the

9    Protective Order to the issue of whether California law prohibits required early disclosure of a

10   party's expert to the party's opponent.  [Dkt. 303 at 3, 6; Dkt. 318 at 4, 10-11; Dkt. 321 at 2-3].

11   The Individual Plaintiffs claim that, during a recent status conference in the JCCP proceeding,

12   Judge Kuhl "expressed concern" that the Protective Order governing this MDL action "may

13   require early disclosure of non-testifying experts."  [Dkt. 303 at 3].  According to them, Judge

14   Kuhl "indicated" at the time that "such a provision would violate California law."  *Id.* at 3, 6.

15         As additional support for their contention that Section 7.6's advance expert disclosure

16   requirement violates California law, the Individual Plaintiffs cite *Hernandez v. Superior Court*,

17   112 Cal. App. 4th 285 (2003).  *Id.* at 6.  In *Hernandez*, the state trial court directed the plaintiffs to

18   unilaterally disclose their experts and those experts' opinions to the defendants early in the case,

19   ostensibly to provide the parties with enough information to determine whether motions for

20   summary judgment were warranted.  112 Cal. App. 4th at 296.  While recognizing that a

21   simultaneous expert witness exchange was required by California statute, the trial court reasoned

22   nonetheless that a non-simultaneous exchange would better facilitate resolution of the case.  *Id.*

23   Reversing the trial court's order, the California appellate court held that the statute at issue

24   "provides for an earlier simultaneous, mutual exchange, but it does not permit a unilateral

25   exchange."  *Id.* at 297.  While noting that California trial courts possess "inherent power" to adopt

26   "suitable" case management procedures, the *Hernandez* court ultimately held that trial courts may

27   not adopt procedures that directly conflict with statutes.  *Id.* at 296-97.

28         The Court finds *Hernandez* to be inapposite.  In *Hernandez*, the trial court ordered the

United States District Court
Northern District of California

1    plaintiffs to unilaterally disclose all of their experts and their opinions on causation in advance of

2    the defendants to establish a *prima facie* case of exposure and causation.  Section 7.6 of the

3    Protective Order, by contrast, requires no "early" disclosure of any Party's expert *at all*, and (as

4    discussed above) only requires disclosure at the time that Party seeks to share a producing party's

5    highly confidential materials with that expert.  The provision applies with equal force to all Parties

6    in the MDL action, unliked in *Hernandez* where disclosure was unilateral.  Additionally,

7    *Hernandez* is further distinguishable because nothing in Section 7.6 of the Protective Order

8    requires early disclosure of any experts' opinions, unlike the case management order at issue in

9    *Hernandez*.

10          Aside from *Hernandez* and their own interpretation of Judge Kuhl's "views" regarding the

11   issue, Plaintiffs provide no other support for their contention that Section 7.6's "advance" expert

12   disclosure requirement violates California law.  Nor has the Court, in its own independent

13   research, located any support for Plaintiffs' assertion that such provisions are altogether prohibited

14   under California law.

15          Regardless, the Court notes that the nature of this case requires efficient coordination of

16   discovery between the MDL and JCCP proceedings.  Indeed, Judge Kuhl has made clear to the

17   Parties in the JCCP that she and Judge Gonzalez Rogers have agreed to coordinate the MDL with

18   the JCCP, and as part of that coordination, they both agree (and no Party has challenged) that

19   discovery issues will generally be handled exclusively by this Court (except as to discovery issues

20   which are specific to state law or the conduct of the JCCP which may differ from the MDL).  *See*

21   Dkt. 511 at 6:20-7:2, 23:5-7.  While disclosure of experts under Section 7.6 in this action is clearly

22   within the Court's authority in this Court, there is at best merely speculation from Plaintiffs that

23   they may decide to use the same experts in the JCCP and thus the disclosure is improper under

24   California law.  Plaintiffs ignore that they are under no obligation to inform anyone whether they

25   intend to use any particular expert both in this MDL and in the JCCP.  Certainly, nothing in

26   Section 7.6 of the Protective Order requires any party to declare whether their proposed expert will

27   or will not also be working on the JCCP.  Plaintiffs' argument thus is based on a faulty assumption

28   that disclosure of an expert under Section 7.6 in this MDL necessarily equates to an allegedly

29

improper "early" disclosure of an expert in the JCCP under California law.  Fundamentally, disclosure of an expert under Section 7.6 is not tantamount to disclosure of that expert in the JCCP: Section 7.6's disclosure provides no information to any other party about whether that expert will be working on the JCCP, provides no information about what that expert's role in this case will be (that is, testifying versus consulting, or some other role), provides no information about that expert's opinions or anticipated areas of possible testimony, and by definition is a disclosure only in this MDL and not in the JCCP.  While Plaintiffs assert that they intend to coordinate the actions efficiently, nothing requires Plaintiffs to use the same experts in both actions, nothing in their briefing binds them to using the same experts in both matters, and for tactical, strategic, or other reasons, it is just as likely that Plaintiffs may decide to use different testifying experts in the MDL as opposed to the JCCP.  The Court finds that the speculative nature of Plaintiffs' argument does not constitute good cause to modify Section 7.6.

**Finalizing the Protective Order**

In Attachment A, the Court provides a redline to Section 7.6 consistent with the rulings in this Order.  Some edits are included to fix minor issues or to conform the text to the undersigned's Discovery Standing Order.  As discussed below, the Parties are ORDERED to work jointly to prepare and submit a Stipulated and [Proposed] Modified Protective Order which conforms to Attachment A and the Court's rulings in the instant Order.

**Miscellaneous Issues**

After reviewing all briefing (especially comparing the briefs appealing this issue to Judge Gonzalez Rogers with the briefs submitted to Judge Hixson), the Court is disappointed the Parties could not resolve among themselves an issue which, fundamentally, amounts to a timing issue about disclosing background information about their experts.  No one argues that experts' identities should never be disclosed.  No one argues that objections to experts, if they have conflicts or other reasonable bases not to see a party's highly confidential materials, should be ignored or never resolved.  Section 7.4 of the Tier 2 MPO (from which the language of Section 7.6 of the Protective Order is taken verbatim) is the result of input from many stakeholders involved with the Court over significant periods of time to balance the needs of parties to set reasonable

ground rules for working with and clearing experts' conflicts.  As the Court noted at the hearing in this matter, the most bitterly litigated complex cases in this Court between the most aggressive and adversarial of competitors across a range of industries (represented by able counsel) have used and stipulated to the expert disclosure terms of the Tier 2 MPO.  In this MDL, there will almost certainly be weightier issues for the Parties to litigate than the timing of expert disclosures, and the Court admonishes the Parties and their counsel not to make mountains out of molehills but rather to abide by their obligations under the Federal Rules to achieve efficient and effective management of discovery.  *See* Fed. R. Civ. P. 1 & 26 and advisory committee's notes to same.

If the Parties persist in demonstrating an inability to resolve issues for which the Court expects reasonable, experienced counsel to be capable of reaching compromise, the Court provides the Parties and their counsel notice that the Court will consider implementing more stringent discovery management protocols as part of the Court's inherent and Rule 26 authority and discretion, including but not limited to requiring lead trial counsel (and/or clients or in-house counsel) to participate in all meet and confers on discovery issues in-person, requiring all meet and confers on discovery issues to be held in Courtroom F of this Court's San Francisco courthouse, requiring the Parties to retain a court reporter to transcribe all meet and confers on discovery so that the Court can review the actual record of discussions between counsel, and (should they become necessary) any potential appropriate sanctions (including discovery sanctions).

As a final matter, the Court notes that Meta's supplemental response to the AG Plaintiffs' final submission [Dkt. 506] does not appear to be properly formatted in compliance with this Court's Civil Local Rules.  *See* Civil L.R. 3-4(c).  The Court granted Meta leave to file a one-page brief.  However, the text of the brief submitted by Meta is not aligned with the pleading paper and the text does not appear to be double spaced.  Rather, it appears that the formatting was changed to make the text fit on one page by decreasing the line spacing, rather than reduce the verbosity to fit within the limits.  Failure to abide by the Court's page limits, line-spacing, font, and other formatting requirements for pleadings and filing papers that appear designed to avoid the Court's page or word limitations is potentially sanctionable conduct.  In future, if any Party files a pleading or other document with the Court which appears to be modified in order to avoid such

length limitations, the Court provides notice that such conduct potentially exposes that Party and its counsel to more stringent case discovery management procedures, including but not limited to rejection of and refusal to consider any such noncompliant briefs or filings, making inferences adverse to the sanctioned Party on the issues being briefed, and/or other appropriate modifications to discovery management orders.  Putting aside whether the Court would need to resort to any change in discovery management, wise and experienced lawyers will also understand that failure to abide by simple Court-ordered guidelines does not materially advance counsel's or a Party's efforts to put their credibility or reasonableness in a good light.

### **CONCLUSION**

For the reasons stated herein, **IT IS ORDERED THAT**:

(1) The Individual Plaintiffs' Motion to Modify the Protective Order [Dkt. 501] is **GRANTED IN PART and DENIED IN PART** as discussed herein.

(2) The AG Plaintiffs' Supplemental Proposal to Clarify Application of the Protective Order [Dkt. 502] is **GRANTED IN PART and DENIED IN PART**.

(3) Within **five (5) business days** of the date of this Order, the Parties shall jointly submit to the Court a Stipulated [Proposed] Modified Protective Order, executed by all Parties, which conforms to this Order and, in particular, the edits shown in Attachment A.

Dated:  January 23, 2024

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

32