Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Instagram, LLC, Meta Payments, Inc.,*
*Meta Platforms Technologies, LLC, Facebook*
*Payments, Inc., Siculus, Inc., Facebook*
*Operations, LLC, and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| _____<br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS<br>_____ | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) THE PERSONAL INJURY PLAINTIFFS' CLAIMS**<br><br>**Hearing:**<br>Date:   TBD<br>Time:   TBD<br>Place:  Oakland, California<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

Page

I.   ARGUMENT ........................................................................................................... 1

     A.   Plaintiffs Fail to Plead that Mr. Zuckerberg Owed Them a Duty to Disclose the
          Alleged Omissions. ....................................................................................... 1

     B.   Plaintiffs Fail to Establish Their Reliance on Mr. Zuckerberg's Alleged
          Omissions. ..................................................................................................... 5

     C.   Plaintiffs Do Not Allege Mr. Zuckerberg Made Misleading Statements of Fact. .............. 7

     D.   Mr. Zuckerberg's Congressional Testimony Cannot Give Rise to a Cause of
          Action. ........................................................................................................... 9

II.  CONCLUSION ..................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................................8

*BAC Home Loans Serv. v. Farina*,
  2010 Conn. Super. LEXIS 4929 (Super. Ct. June 2, 2010) ...................................................3

*Bain v. Jackson*,
  783 F. Supp. 2d 13 (D.D.C. 2010) ........................................................................................3

*Bank of Montreal v. Signet Bank*,
  193 F.3d 818 (4th Cir. 1999) ............................................................................................2, 5

*Bays v. Hunter Sav. Ass'n*,
  539 F. Supp. 1020 (S.D. Ohio 1982) .....................................................................................4

*Berger v. Sec. Pac. Info. Sys., Inc.*,
  795 P.2d 1380 (Colo. App. 1990) ..........................................................................................2

*Burman v. Richmond Homes Ltd.*,
  821 P.2d 913 (Colo. App. 1991) ............................................................................................5

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................................4, 6

*Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*,
  181 S.W.3d 879 (Tex. App. 2006) .........................................................................................3

*In re Conventry Healthcare, Inc. Sec. Litig.*,
  2011 WL 1230998 (D. Md. Mar. 30, 2011) ...........................................................................8

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ...............................................................................................5

*Dean v. Beckley*,
  No. CIV10-297, 2010 WL 3928650 (D. Md. Oct. 1, 2010) ...................................................3

*DiMichele v. Perrella*,
  158 Conn. App. 726, 120 A.3d 551 (2015) ...........................................................................4

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ...............................................................................................................9

*In re Facebook PPC Advert. Litig.*,
  2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) .......................................................................6

iii

REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) THE PERSONAL INJURY
PLAINTIFFS' CLAIMS

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*,
    717 F. Supp. 2d 156 (D. Mass. 2010)...................................................................2, 3

*In re Fluoroquinolone Prod. Liab. Litig.*,
    517 F. Supp. 3d 806 (D. Minn. 2021) .................................................................2, 3

*Franchise Realty Interstate Corp. v. San Francisco Loc. Joint Exec. Bd. of Culinary Workers*,
    542 F.2d 1076 (9th Cir. 1976) ...............................................................................9

*Garcia v. Chrysler Grp. LLC*,
    127 F. Supp. 3d 212 (S.D.N.Y. 2015) ...................................................................1

*Haddad v. Merck & Co.*,
    2022 WL 17357779 (C.D. Cal. Aug. 11, 2022).....................................................7

*Jones v. Corus Bankshares, Inc.*,
    701 F. Supp. 2d 1014 (N.D. Ill. 2010) ..................................................................7

*Kaloti Enterprises, Inc. v. Kellogg Sales Co.*,
    2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205 .................................................3

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................................6

*Lerner v. DMB Realty, LLC*,
    234 Ariz. 397, 322 P.3d 909 (Ct. App. 2014).........................................................3

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ...................................................................................4

*McCabe v. Daimler AG*,
    160 F. Supp. 3d 1337 (N.D. Ga. 2015)...................................................................2

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013)...................................................................3

*McKee v. James*,
    No. 09 CVS 3031, 2013 WL 3893430 (N.C. Super. July 24, 2013)......................3

*Metro Cable Co. v. CATV of Rockford, Inc.*,
    516 F.2d 220 (7th Cir. 1975) .................................................................................9

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ...............................................................................8

*Nooner Holdings, Ltd. v. Abilene Vill., LLC*,
    668 S.W.3d 956 (Tex. App. 2023) .........................................................................5

*Nota Const. Corp. v. Keyes Assocs., Inc.*,
    45 Mass. App. Ct. 15, 694 N.E.2d 401 (1998) ...................................................................2

*O'Connor v. Uber Techs., Inc.*,
    2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ...................................................................4

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ...................................................................8

*Quashnock v. Frost*,
    299 Pa. Super. 9, 445 A.2d 121 (1982) ...................................................................3

*Roberts v. Paine*,
    124 Conn. 170, 199 A. 112 (Conn. 1938) ...................................................................2

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...................................................................10

*Stamm v. Salomon*,
    144 N.C. App. 672, 551 S.E.2d 152 (2001) ...................................................................4

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ...................................................................7

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
    40 F. Supp. 2d 644 (W.D. Pa. 1999) ...................................................................5

*In re Takata Airbag Prod. Liab. Litig.*,
    2017 WL 775811 (S.D. Fla. Feb. 27, 2017) ...................................................................4

*Tapia v. Davol, Inc.*,
    116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...................................................................1

*Tuosto v. Philip Morris USA Inc.*,
    No. 05CIV.9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...................................................................9

*TVT Recs. v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ...................................................................2

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...................................................................9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................................................................8, 9

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................5, 6

v

REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) THE PERSONAL INJURY PLAINTIFFS' CLAIMS

**Other Authorities**

63A Am. Jur. 2d Products Liability § 779 ....................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     ARGUMENT

Plaintiffs seek to impose liability on Mr. Zuckerberg based on his prominence as the founder and leader of a well-known company.  Opp. 1 ("Mark Zuckerberg is not merely a CEO; he is a household name.").  In effect, Plaintiffs invite the Court to rule that the normal rules governing the personal liability of corporate officers should not apply here.  *See id.* at 2.  The Court should reject that invitation and, applying black letter law, dismiss the claims asserted against Mr. Zuckerberg.

In their Opposition, Plaintiffs effectively concede that they do not state a claim against Mr. Zuckerberg for any ***affirmative*** misrepresentations, instead arguing that Mr. Zuckerberg is liable for alleged omissions or concealment.  *See* Opp. 5 ("Plaintiffs' claims center on what Mr. Zuckerberg *failed to say*").  As explained in Mr. Zuckerberg's motion, Plaintiffs' theory fails for several reasons:  (1) they do not allege Mr. Zuckerberg personally owed them a duty to disclose, (2) they do not adequately allege reliance on Mr. Zuckerberg's alleged omissions, (3) Mr. Zuckerberg's allegedly "incomplete" statements are not statements of fact upon which they can reasonably rely, and (4) Mr. Zuckerberg's statements to Congress are protected by the First Amendment.  Plaintiffs' Opposition fails to meaningfully address these fatal defects.

### A.     Plaintiffs Fail to Plead that Mr. Zuckerberg Owed Them a Duty to Disclose the Alleged Omissions.

Plaintiffs' claim that Mr. Zuckerberg is liable for "fraudulent omissions and concealment," Opp. 7, fails as a threshold matter because Plaintiffs have not pled facts that would give rise to a duty to disclose. The Court can resolve Mr. Zuckerberg's motion on this basis alone—Plaintiffs do not, and could not, dispute that absent a duty to disclose none of their omission or concealment claims can proceed.  *See, e.g.*, *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (duty to disclose an element of fraudulent concealment claim); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 237 (S.D.N.Y. 2015) ("Plaintiffs have failed to allege a duty to disclose and, by extension, a plausible fraudulent concealment claim under the laws of Alabama, Florida, Georgia, New Jersey, South Dakota, and Texas.").

Plaintiffs' Opposition confirms they have not pled facts that would give rise to a legal duty to disclose between Mr. Zuckerberg personally and Meta's users.  Plaintiffs point to two categories of purported "facts" allegedly giving rise to such a duty: (1) "Mr. Zuckerberg's exclusive and superior

knowledge of the ways Meta's products [allegedly] exploit minors, presenting risks to their health"; and (2) his "public, partial representations concerning the safety of Meta's products."  Opp. 8.  Neither supports a legal duty that would permit Plaintiffs' claims to proceed.

*First*, Plaintiffs' argument that Mr. Zuckerberg's "superior knowledge" created a duty to disclose ignores the bedrock principle that a duty to disclose does not exist absent a contractual or other special relationship between the parties.  *See, e.g.*, *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350 (N.D. Ga. 2015) (finding no duty to disclose where defendant had "no apparent relationship with Plaintiffs"); *In re Fluoroquinolone Prod. Liab. Litig.*, 517 F. Supp. 3d 806, 820 (D. Minn. 2021) ("The 'touchstone of [the Court's] duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that [Illinois] law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff.'").[1]  "Superior knowledge" alone, absent a contractual or other special relationship, does not create a duty to disclose.  If the rule were otherwise, not just corporate officers, but virtually any knowledgeable employee could be sued under a claimed legal duty to disclose to the public at large solely based on their superior knowledge of the company's operations—a remarkable expansion of liability that finds no support in the law or common sense.

Tellingly, ***none*** of the cases cited by Plaintiffs holds that a defendant had a duty to disclose absent a contractual or other special relationship with the plaintiff(s).  Rather, they all involved parties in contractual or other special relationships.  *See, e.g.*, *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005) (in breach of contract suit, stating that "superior knowledge" can create a duty to disclose "In the context of a business transaction"); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829

---

[1] The cases cited by Plaintiffs do not support Plaintiffs' assertion that "Mr. Zuckerberg is incorrect that 'a duty to disclose [typically] does not exist absent a contractual or other special relationship between the parties."  Opp. 9.  Indeed, the *Roberts* case states that "[w]hether or not there is a duty to disclose depends on the relationship of the parties," and found that there was no duty owed by the officers of a mental institution to the plaintiff patient.  *Roberts v. Paine*, 124 Conn. 170, 175, 199 A. 112, 115 (Conn. 1938).  The *Keyes* case only makes the generic (and correct) statement that "a duty to disclose may arise in a number of circumstances," and provides no support that a duty to disclose can exist absent a special relationship between the parties.  *See Nota Const. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 19, 694 N.E.2d 401, 404 (1998).  Finally, *Berger* was decided in the context of an employer/employee relationship, and similarly provides no support for the claim that a duty to disclose can exist absent a special relationship between the parties.  *See Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1385 (Colo. App. 1990).

(4th Cir. 1999) ("superior knowledge" can create duty to disclose in breach of contract suit, and noting that "a duty to disclose does not normally arise when parties are engaged in an arm's length transaction"); *Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 888 (Tex. App. 2006) (stating that "the duty to disclose arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to discover the truth" in the context of a breach of contract suit); *Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 405, 322 P.3d 909, 917 (Ct. App. 2014) (stating that "a seller may be required to disclose information when the buyer reasonably cannot discover the information for himself" in the context of a real estate sale and alleged breach of fiduciary duty by a real estate broker).[2]

Here, Plaintiffs have not pled that they had a contractual or other special relationship with Mr. Zuckerberg that could create a legal duty on his part to disclose any of the omissions alleged here. Instead, they focus solely on allegations regarding Mr. Zuckerberg's purported "superior knowledge of the harms Meta's products pose to minors." *E.g.*, Opp. 8. But Plaintiffs cite ***no authority*** that supports a personal duty for every officer to disclose under these facts, even accepting them as true. Whether a duty to disclose exists is a question that turns on the ***relationship between plaintiff and the defendant***. *See e.g.*, *In re Fluoroquinolone Prod. Liab. Litig.*, 517 F. Supp. 3d 806, 820 (D. Minn. 2021) ("The 'touchstone of [the Court's] duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that [Illinois] law imposed upon the defendant an obligation of reasonable conduct for the benefit

---

[2] *See also BAC Home Loans Serv. v. Farina*, 2010 Conn. Super. LEXIS 4929, at *2 (Super. Ct. June 2, 2010) (stating "a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair" in context of a real estate sale) (emphasis added); *Dean v. Beckley*, No. CIV10-297, 2010 WL 3928650, at *5 (D. Md. Oct. 1, 2010) (addressing duty to disclose in context of a breach of contract dispute); *McKee v. James*, No. 09 CVS 3031, 2013 WL 3893430, at *8 (N.C. Super. July 24, 2013) (addressing duty to disclose in context of breach of contract dispute, and finding no duty to disclose); *Quashnock v. Frost*, 299 Pa. Super. 9, 23, 445 A.2d 121, 128 (1982) (addressing failure to disclose in context of sale of real estate); *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010) (addressing failure to disclose in context of sale of component parts to manufacturer); *Bain v. Jackson*, 783 F. Supp. 2d 13, 18 (D.D.C. 2010) (addressing duty to disclose in context of breach of contract dispute, and finding no duty to disclose); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (addressing failure to disclose in context of class action brought by vehicle purchasers against vehicle manufacturers); *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 19, 283 Wis. 2d 555, 573, 699 N.W.2d 205, 213 (addressing failure to disclose in the context of "part[ies] to a business transaction").

3

REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) THE PERSONAL INJURY PLAINTIFFS' CLAIMS

of the plaintiff.'"").  Plaintiffs' allegations focused solely on Mr. Zuckerberg's purported knowledge, without more, cannot create such a duty.[3]

*Second*, Plaintiffs' circular argument that Mr. Zuckerberg's public statements created a duty to disclose, Opp. 10-11, similarly fails.  Plaintiffs again cite to inapplicable authority to support their novel— and incorrect—argument that any public statement creates a duty to disclose to the public at large.  For example, Plaintiffs cite language from a treatise stating that a duty to disclose may exist "when the defendant makes partial representations," Opp. 10, but omit language from the very same discussion making clear that this is so only if the speaker "knows that the other is about to ***enter into the transaction*** under a mistake as to such facts and that the other, ***because of the relationship between them***, would reasonably expect disclosure of such facts."  63A Am. Jur. 2d Products Liability § 779 (emphasis added).  The cases Plaintiffs cite all similarly involve a contractual or other special relationship between the parties.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1008-09 (N.D. Cal. 2018) (discussing partial disclosure in context of class action brought by purchasers of trucks against manufacturers and suppliers); *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 775811, at *1 (S.D. Fla. Feb. 27, 2017) (addressing "incomplete" representations in context of personal injury suits by purchasers of vehicles against vehicle manufacturer); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336– 37 (1997) (noting that in addition to a fiduciary relationship, "[e]ach of the other three circumstances in which nondisclosure may be actionable presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise"); *DiMichele v. Perrella*, 158 Conn. App. 726, 731, 120 A.3d 551, 554 (2015) (rejecting partial disclosure argument where parties did not "share[] a special relationship").[4]  Accordingly, Plaintiffs' allegations regarding Mr. Zuckerberg's public

---

[3] Plaintiffs also argue that "Mr. Zuckerberg's duty must be considered in the context of his company's," Opp. 9, inviting the Court to impute any duty Meta might have to Mr. Zuckerberg personally.  Plaintiffs do not, and could not, cite any authority in support of this argument.  *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (liability of corporation cannot be imputed to individual defendants merely based on their status as officers of the corporation).

[4] *See also Bays v. Hunter Sav. Ass'n*, 539 F. Supp. 1020, 1025 (S.D. Ohio 1982) (addressing partial disclosure in context of consumer credit contracts); *Stamm v. Salomon*, 144 N.C. App. 672, 680, 551 S.E.2d 152, 158 (2001) (addressing partial disclosure in context of dispute between business partners);

(continued…)

statements do nothing to remedy the foundational defect in their fraudulent omission/concealment claims: Plaintiffs' have not alleged any relationship *between Mr. Zuckerberg and Plaintiffs* that could create a legal duty to disclose.

**B.      Plaintiffs Fail to Establish Their Reliance on Mr. Zuckerberg's Alleged Omissions.**

To state a claim for fraudulent omission, Plaintiffs are required "to plead some facts 'to establish that they would have been aware of the [omitted fact], if it were disclosed.'" *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 767 (C.D. Cal. 2022); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) (plaintiffs must establish "that they would have been aware of a disclosure"); Mot. 7–8.  Plaintiffs fail to do so here.  They devote much of their Opposition to arguing that reliance can be presumed or inferred when a material fact is omitted, and that they would have acted differently had the allegedly omitted information been revealed.  *See* Opp. 12–15.  This misses the point— even if Plaintiffs can show (by inference or otherwise) that they would have acted differently, they still must plead facts demonstrating that they would have actually been aware of the disclosure in the first place.  Plaintiffs *admit* as much.  *Id.* at 13 (acknowledging that "plaintiffs still must plausibly allege that they would have been aware of the omitted information had it been publicly revealed").  On this necessary element, the Complaint is silent.  *See* Mot. 7–8.

The Opposition betrays the Complaint's silence on this issue by offering nothing but rank speculation and conclusory statements in an attempt to argue that Plaintiffs would have been aware of the disclosures.  Plaintiffs claim without support or reasoning that "Mr. Zuckerberg's every statement and decision receives an almost unmatched degree of public attention" and that "[w]hen Mr. Zuckerberg speaks, the whole world listens."  Opp. 15.  These claims are supported only by allegations that some press and academic sources have compiled his statements, and that Mr. Zuckerberg has published an op-

---

*Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956, 966 (Tex. App. 2023) (addressing partial disclosure in context of breach of contract claim); *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 657 (W.D. Pa. 1999) (rejecting plaintiff's "incomplete" representation theory where parties had an integrated contract); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991) (addressing partial disclosure in the context of written real estate contracts, and finding that defendant had no duty to disclose); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (addressing partial disclosure in context of contractual dispute between banks).

ed.  *See id.* (citing Compl. ¶¶ 173 n. 155, 179 n. 175, 370 n. 497).  To say this amounts to an "unmatched degree of public attention" is quite the stretch.  But even if it is true that Mr. Zuckerberg receives a great deal of public attention, it does not matter unless Plaintiffs can show that ***they themselves*** were listening to and relying on his statements.  Yet they never allege a single instance where they read or heard a statement of his, much less that they consulted any of his statements in deciding whether to use (or to allow their minor children to use) Meta's services.  *Cf. In re ZF-TRW*, 601 F. Supp. 3d at 767 (collecting cases where plaintiffs established they would have been aware of the disclosure by demonstrating that they had read specific labels or spoken to specific sales personnel).[5]

Plaintiffs also claim that past whistleblower disclosures have generated "high-profile press coverage," citing to allegations of a story published in the Wall Street Journal.  Opp. 15–16 (citing Compl. ¶¶ 217, 377–79).  They argue that, had Mr. Zuckerberg disclosed the alleged omissions, it would have generated similar press coverage.  But this still does not establish that ***Plaintiffs themselves*** actually saw this Wall Street Journal story at the time, or would have seen similar coverage even if it had occurred.  Critically, no Plaintiff alleges having actually read the Wall Street Journal story.[6]

Moreover, the information that Plaintiffs allege Mr. Zuckerberg and Meta should have disclosed is essentially the same information that they allege ***was*** in fact disclosed by the Wall Street Journal in

---

[5] Plaintiffs misleadingly suggest that the *In re ZF-TRW* court held that the plaintiffs could demonstrate reliance "by a more general showing—untethered from any one specific statement"—that they would have been aware of the disclosure.  Opp. 17.  The court made no such holding about a "general showing," and to the extent it concluded no one specific statement was required, it also found that the plaintiffs spoke to a specific sales representative who would have disclosed the information. 601 F. Supp. 3d at 767.

[6] *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018), is distinguishable.  While the court remarked that "[h]ad Defendants made the disclosure . . . it is plausible that the media would pick up that story, and it would have made national news," it was also the case that the plaintiffs had "interacted with and received information from sales representatives" who "would have passed on [the disclosure] to consumers at the time of the contemplated purchases."  *Id.* at 1015–16.  Moreover, simply presuming awareness of a disclosure from national news coverage does not comport with Rule 9(b), which requires a *particularized* showing of the circumstances surrounding how the plaintiff would have become aware of the omission.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("[N]ondisclosure is a claim for misrepresentation in a cause of action for fraud, [so] it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."); *In re Facebook PPC Advert. Litig.*, 2010 WL 3341062, at *10 (N.D. Cal. Aug. 25, 2010) ("Plaintiffs still should be able to identify with particularity at least the specific policies and representations that they reviewed.").

2021.  *See* Compl. ¶ 377 ("Meta's years-long concealment of its research **was revealed** just weeks later, when Frances Haugen released these studies, along with a trove of other internal Meta documents, to the Wall Street Journal." (emphasis added)).  Yet *nearly all* Plaintiffs here allege that they have **continued to use Meta's services up to the present**, when clearly they now know (because they allege it in their Complaint) of the information that they allege Mr. Zuckerberg and Meta failed to disclose.  *See, e.g.*, *Booker* SFC at 4; *Garceau* SFC at 4; *B.B.* SFC at 4; *Keiser* SFC at 4; *Koisol* SFC at 4; *Jansky* SFC at 4.  This fact alone belies any plausible showing of actual reliance or causation.[7]  *See Haddad v. Merck & Co.*, 2022 WL 17357779, at *8 (C.D. Cal. Aug. 11, 2022) ("Plaintiffs' claims [] fail because they continued to take Singulair after the omission was cured.").  In short, the fact that Plaintiffs did not change their behavior when the allegedly withheld information was disclosed effectively disproves Plaintiffs' conclusory assertions that they would have changed their behavior had Mr. Zuckerberg revealed the same information earlier.

### C.  Plaintiffs Do Not Allege Mr. Zuckerberg Made Misleading Statements of Fact.

While Plaintiffs argue that "Mr. Zuckerberg had a duty to disclose the [alleged] dangers Meta's products present to minors" based in part on his "his public, partial representations concerning the safety of Meta's products," Opp. 6-7, they do not dispute that—with one exception[8]—all of the statements at issue concern matters of opinion, not objective fact.  *See* Mot. 9–11.  Instead, they argue that even such statements can be actionable if the defendant has knowledge of facts that render the statements deceptive.  In support of this contention, Plaintiffs cite only securities fraud cases where the defendants made statements about the financial health of their companies that were not true in light of known, objective facts alleged about the financial status of those companies.  *See Jones v. Corus Bankshares, Inc.*, 701 F.

---

[7] For substantially the same reason, the omission claim fails for lack of causation.  *See* Mot. 8–9.  Because Plaintiffs do not establish that they would have behaved any differently had the information not been omitted, the omission cannot be the but-for cause of their injuries.

[8] The one statement that is more concrete—that Meta "do[es] not allow people under the age of 13 to sign up" for its services—is undisputedly true and therefore cannot be an actionable misrepresentation.  Mot. 10–11.  Plaintiffs do not respond to this point, and therefore have conceded it. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

Supp. 2d 1014, 1027–28 (N.D. Ill. 2010) (statement that company's balance sheet was "fortress-like" was actionable when the company knowingly lacked adequate reserves and had stopped originating loans); *In re Conventry Healthcare, Inc. Sec. Litig.*, 2011 WL 1230998, at *12 (D. Md. Mar. 30, 2011) (statement that health care plan was "fundamentally sound" was actionable when it knew it could not process new claims and had dwindling reserves); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) (statement that "business in China was very strong last quarter" was actionable because company admitted that it "'saw' troubling signs coming out of China . . . that were 'particularly bad in November'").[9]

These cases all deal with a specific kind of situation where claims are made about the financial health of a company that are ***objectively*** disprovable.  Financial solvency is a numeric metric that basic accounting can assess.  By contrast, concepts of "safety"—especially in the context of a novel communication service where executives must balance the competing goals of fostering free expression and restricting sensitive content—are squarely matters of opinion upon which reasonable people can disagree.  *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("a statement that is ***quantifiable*** . . . may be an actionable statement of fact while a general, ***subjective*** claim about a product is non-actionable puffery").

As explained in the opening brief (Mot. 10), *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017), is squarely on point.  There, the court held that statements regarding how "Defendants' prioritize the safety of their systems" were not actionable ***even though Yahoo allegedly knew of the risks of a data breach***.  *Id.* at *26.  Even where there is a known risk, whether a company sufficiently prioritizes safety and the prevention of such risk is inherently subjective.  Plaintiffs offer no response to *In re Yahoo!* other than to misleadingly suggest that the court dismissed on other

---

[9] In *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), the defendant "did not just describe the pipeline in subjective or emotive terms. Rather, they provided a concrete description of the past and present state of the pipeline." *Id.* at 1144.  Plaintiffs do not contest that Mr. Zuckerberg's statements about safety were cast in anything but subjective or emotive terms.

grounds by citing to a different part of the opinion that dealt with a different claim.[10]  In fact, the court dismissed the claims based on the safety statements "with prejudice because, as a matter of law," the statements were "mere puffery on which a reasonable consumer could not rely." 2017 WL 3727318, at *26.

### D.     Mr. Zuckerberg's Congressional Testimony Cannot Give Rise to a Cause of Action.

Finally, it is clear that the First Amendment's *Noerr-Pennington* doctrine immunizes Mr. Zuckerberg from claims based on statements made during the course of testimony to Congress.

Under *Noerr-Pennington*, "attempts to lobby and petition a governmental body. . . are absolutely immune" from liability.  *Franchise Realty Interstate Corp. v. San Francisco Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1080 (9th Cir. 1976).  While the doctrine "originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore . . . applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).

Plaintiffs first mistakenly argue that the doctrine does not apply to allegedly false statements made to Congress.  Mr. Zuckerberg's statements were not false, and Plaintiffs have not shown to the contrary, but in any event *Noerr* itself involved a "fraudulent" publicity campaign designed to influence legislation. *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 133 (1961).  And since that time, court have repeatedly reaffirmed that when "activities occur in a legislative or other non-adjudicatory governmental setting," *Noerr-Pennington* applies even to "'conduct that can be termed unethical,' **such as deception and misrepresentation**." *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220, 228 (7th Cir. 1975); *see Tuosto v. Philip Morris USA Inc.*, No. 05CIV.9384(PKL), 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) ("*Noerr–Pennington* protection has been extended to all advocacy intended to influence government action, including to allegedly false statements") (collecting cases).

Here, it is especially clear that *Noerr-Pennington* protects Mr. Zuckerberg from liability, given that Plaintiffs disavow any assertion that he made specific false statements, and instead argue only that his testimony was misleading by omission.  *See* Opp. 5. Imposing liability under such circumstances

---

[10] The part of *In re Yahoo!* to which Plaintiffs refer considered an alleged omission from the company's privacy policy, which the court dismissed because the plaintiffs there failed to allege they read the policy. 2017 WL 3727318 at *29.  This *further* supports dismissal here for the reasons explained in Part B, *supra.*

would violate the "breathing space principle" underlying the First Amendment.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (recognizing that certain allegedly false statements must be afforded protection under *Noerr-Pennington* in order to fully vindicate First Amendment rights).

Plaintiffs next argue that *Noerr-Pennington* does not apply because there "is no indication in the Master Complaint or Plaintiffs' short-form complaints" that Mr. Zuckerberg's testimony was intended to "influence any particular legislation or government effort."  Opp. 18.  *Noerr-Pennington*, however, has been construed broadly to apply even to "public relations campaign[s]" intended to indirectly influence legislative action, *see Sosa*, 437 F.3d at 934—conduct much less directly implicating the First Amendment's protections than live Congressional testimony.  In any event, the very transcripts cited in the Complaint make clear that the hearings at which Mr. Zuckerberg testified **did** concern potential efforts by Congress to pass legislation.[11]  These transcripts, which are incorporated by reference in the Complaint, fatally undercut Plaintiffs' dubious suggestion that Mr. Zuckerberg's Congressional testimony somehow did not involve protected petitioning activity.

## II.   CONCLUSION

Defendant Mark Zuckerberg respectfully requests that Plaintiffs' claims against him under Counts 8 and 9 of the Second Amended Complaint be dismissed with prejudice.

---

[11] *See, e,.g.*, Bloomberg Government, Transcript of Mark Zuckerberg's Senate Hearing, Washington Post (Apr. 10, 2018), https://www.washingtonpost.com/news/the-switch/wp/2018/04/10/transcript-of-mark-zuckerbergs-senate-hearing (cited at Compl. nn.155-57) ("I have a bill . . . that would just put on the books a law that said that Facebook, and any other company that gathers information about Americans, has to get their permission, their affirmative permission, before it can be reused for other purposes. Would you support that legislation. . . ?"); *id.* ("So I have a separate piece of legislation to insure that kinds who are under 16 absolutely have a privacy bill of rights, and that permission has to be received from their parents for their children before any of their information is reused for any other purpose other than that which was originally intended. Would you support a child online privacy bill of rights for kids under 16 to guarantee that that information is not reused for any other purpose without explicit permission from the parents for the kids?"); *id.* ("[W]e talk about all these proposed legislation. . . .").

Dated: January 23, 2024

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Phyllis A. Jones*

Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
Christian J. Pistilli (*pro hac vice* pending)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc.,*
*Instagram, LLC, Meta Payments, Inc., Meta Platforms*
*Technologies, LLC, Facebook Payments, Inc., Siculus,*
*Inc., Facebook Operations, LLC, and Mark Elliot*
*Zuckerberg*

REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) THE PERSONAL INJURY
PLAINTIFFS' CLAIMS