[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 4:22-md-03047-YGR<br><br>MDL No. 3047<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) PLAINTIFFS' NON-PRIORITY CLAIMS (COUNTS 5, 12, 14, 16-18) [THE TRACK TWO BRIEF- 35 PAGES]**<br><br>Judge Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS....................................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................................ii

I.      INTRODUCTION ................................................................................................................1

II.     ARGUMENT ........................................................................................................................2

    A.     Defendants are not entitled to dismissal of Plaintiffs' non-product
        negligence claim (Count 5). ......................................................................................2

        1.     Defendants do not dispute the sufficiency of each of Plaintiffs'
               theories of negligence supporting Count 5. ...................................................2

               a.     Defendants do not dispute the sufficiency of Plaintiffs'
                     allegations of negligence with respect to self-restrictions,
                     account deletion, or image filters...............................................4

               b.     Defendants do not dispute the sufficiency of Plaintiffs' failure-
                     to-warn theory of negligence. ....................................................5

        2.     Plaintiffs allege a cognizable duty of care. ..................................................6

               a.     Defendants owe their users a duty not to create an
                     unreasonable risk of harm. .........................................................7

                b.     Defendants owe their users a duty not to create an
                     unreasonable risk of addiction to their platforms. .................... 13

               c.     The Court previously rejected Defendants' "publisher
                     liability" arguments with respect to age verification, parental
                     controls, and reporting features............................................... 14

        3.     The Court's prior ruling on third-party misconduct is equally
                applicable to Count 5. ................................................................................. 16

    B.     Defendants are not entitled to dismissal of Plaintiffs' claims for loss of
        consortium, wrongful death, and survival (Counts 16-18). ................................... 16

         1.     The derivative nature of Counts 16-18 does not provide a basis for
                dismissal where Plaintiffs' underlying personal-injury claims
                remain operative........................................................................................ 17

        2.     Plaintiffs' state-specific loss-of-consortium claims are not subject
                to dismissal. ............................................................................................... 18

        3.     Consortium Plaintiffs can recover for medical expenses............................ 19

         4.     Parents can pursue survival and wrongful-death actions concurrently......... 19

    C.     Meta is not entitled to dismissal of Plaintiffs' CSAM claims (Counts 12 &
        14). .......................................................................................................................... 20

         1.     Section 230 does not bar Counts 12 and 14................................................. 20

         2.     Plaintiffs adequately allege that Meta violated 18 U.S.C. § 2252 and
                18 U.S.C. § 2252A(5)(B). ......................................................................... 22

         3.     Plaintiffs' CSAM claims do not seek to hold Meta vicariously liable
                for the conduct of third parties................................................................... 24

III.    CONCLUSION................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Lale,*
216 N.W.2d 152 (S.D. 1974) ............................................................................................... 31

*B.M.K. v. W.A.,*
2021 WL 2068903 (N.J. Super. Ct. App. Div. May 24, 2021) ......................................... 8

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009) ............................................................................................ 21

*Bass v. Facebook, Inc.,*
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................ 8, 9

*Baxter v. Superior Court,*
19 Cal. 3d 461 (1977) ........................................................................................................ 33

*Beck v. Claymont Sch. Dist.,*
1983 WL 884220 (Del. Super. Ct. July25, 1983) ............................................................ 33

*Beerbower v. State ex rel. Oregon Health Sciences University,*
736 P.2d 596 (Or. Ct. App. 1987) ..................................................................................... 34

*Berly v. D L Sec. Serv.,*
*Invest,* 876 S.W.2d 179 (Tex. App. 1994) ......................................................................... 8

*Betz v. Farm Bureau Mut. Ins. Agency of Kan., Inc.,*
8 P.3d 756 (Kan. 2000) ....................................................................................................... 33

*Boivin v. Somatex, Inc.,*
2022 Me. 44 (Me. 2022) ...................................................................................................... 27

*Boyle v. Asap Energy, Inc.,*
408 P.3d 183 (Okla. 2017) ................................................................................................... 8

*Capone v. Philip Morris USA, Inc.,*
116 So. 3d 363 (Fla. 2013) .................................................................................................. 19

*Carrillo v. El Mirage Roadhouse, Inc.,*
793 P.2d 121 (Ariz. Ct. App. 1990) .................................................................................... 8

*Carter v. Nat'l R.R. Passenger Corp.,*
63 F. Supp. 3d 1118 (N.D. Cal. 2014) ......................................................................... 10, 12

*Centra Health, Inc. v. Mullins,*
670 S.E.2d 708 (Va. 2009) .................................................................................................. 19

*Clift v. Narragansett Television L.P.*,
   688 A.2d 805 (R.I. 1996) ........................................................................................................ 13

*Crow v. Brezenski*,
   2023 WL 8803432 (D. Kan. Dec. 20, 2023) ............................................................................ 27

*Danler v. Rosen Auto Leasing*,
   609 N.W.2d 27 (Neb. 2000) .................................................................................................... 28

*Day v. Grand Union Co.*,
   280 A.D. 253 (N.Y. App. Div. 1952) ......................................................................................... 7

*Dearborn Fabricating & Eng'g Corp., Inc. v. Wickham*,
   551 N.E.2d 1135 (Ind. 1990) .................................................................................................. 33

*Deveneau v. Wielt*,
   144 A.3d 324 (Vt. 2016) .......................................................................................................... 30

*Doe #1 v. MG Freesites, LTD*,
   2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ....................................................................... 21, 22

*Doe v. Blake Sch.*,
   310 F. Supp. 3d 969 (D. Minn. 2018) ...................................................................................... 27

*Doe v. Boland*,
   698 F.3d 877 (6th Cir. 2012) ................................................................................................... 20

*Doe v. Cochran*,
   210 A.3d 469 (Conn. 2019) ..................................................................................................... 25

*Doe v. Napa Valley Unified Sch. Dist.*,
   2018 WL 4859978 (N.D. Cal. Apr. 24, 2018) ........................................................................... 4

*Doe v. Twitter, Inc.*,
   2023 WL 3220912 (9th Cir. May 3, 2023) .............................................................................. 21

*Dorrell v. South Carolina Dept. of Transp*,
   605 S.E.2d 12 (S.C. 2004) ....................................................................................................... 29

*Draper v. Westerfield*,
   181 S.W.3d 283 (Tenn. 2005) .................................................................................................. 30

*Driggers v. Locke*,
   913 S.W.2d 269  (Ark. 1996) ................................................................................................... 25

*Durr v. Stille*,
   487 N.E.2d 382 (Ill. App. Ct. 1985) .......................................................................................... 8

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   946 F.3d 1040 (9th Cir. 2019) ................................................................................................. 20

*Est. of DeSela v. Prescott Unified Sch. Dist. No.1*,
    249 P.3d 767 (Ariz. 2011) ............................................................................................ 19

*Estate of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ............................................................ 13, 15

*Father A v. Moran*,
    469 N.W.2d 503 ............................................................................................................ 33

*Feld v. Borkowski*,
    790 N.W.2d 72 (Iowa 2010) .......................................................................................... 26

*Finnerty v. Cummings*,
    22 P.2d 37 (Cal. Ct. App. 1933) .................................................................................... 19

*Fluker v. United States*,
    2014 WL 5363870 (N.D. Ala. Oct. 21, 2014) ............................................................... 25

*Forsythe v. Clark USA, Inc.*,
    864 N.E.2d 227, (Ill. 2007) ........................................................................................... 26

*Franklin v. Midwest Recovery Sys., LLC*,
    2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) ................................................................... 4

*Fussner v. Andert*,
    113 N.W.2d 355 (Minn. 1961) ....................................................................................... 31

*Garrett v. Ford Motor Co.*,
    684 F. Supp. 407 (D. Md. 1987) ....................................................................................... 8

*Gaston v. Life Care Centers of Am., Inc.*,
    488 P.3d 929 (Wyo. 2021) ............................................................................................. 20

*Giuliani v. Guiler*,
    951 S.W.2d 318 (Ky. 1997) ........................................................................................... 18

*Grady v. Jones Lang LaSalle Constr. Co., Inc.*,
    193 A.3d 283 (N.H. 2018) ............................................................................................. 28

*Greenberg v. Perkins*,
    845 P.2d 530 (Colo. 1993) ............................................................................................. 25

*Guilfoy v. United Servs. Auto. Ass'n*,
    898 A.2d 502 (N.H. 2006) ............................................................................................. 31

*Hall v. Patriot Mut. Ins. Co.*,
    2007 ME 104, 942 A.2d 663 .......................................................................................... 33

*Hannon v. Duncan*,
    594 So. 2d 85 (Ala. 1992) .............................................................................................. 33

iv

*Harris v. R.J. Reynolds Tobacco Co.*,
  383 F. Supp. 3d 1315 (M.D. Fla. 2019) ............................................................... 20

*Hays v. City & County of Honolulu*,
  917 P.2d 718 (Haw. 1996) ..................................................................................... 8

*Henderson v. United States*,
  1575 U.S. 622 (2015) ............................................................................................ 23

*Hendrickson v. Grider*,
  70 N.E.3d 604 (Ohio Ct. App. 2016) .................................................................... 29

*Hoffman v. Theriot*,
  249 So. 3d 297 (La. Ct. App. 2018) ...................................................................... 27

*Hulsey v. Pride Rests., LLC*,
  367 F.3d 1238 (11th Cir. 2004) .............................................................................. 6

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  567 F. Supp. 3d 667 (D.S.C. 2021) ........................................................................ 5

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  362 F. Supp. 3d 1295 (N.D. Ga. 2019) .................................................................. 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ 8-9

*In re JUUL*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................... 10, 11, 13

*In re Nat'l Prescription Opiate Litig.*,
  452 F. Supp. 3d 745 (N.D. Ohio 2020) ................................................................ 13

*In re Netopia, Inc. Sec. Litig.*,
  2005 WL 3445631 (N.D. Cal. Dec. 15, 2005) ....................................................... 4

*In re September11 Litig.*,
  280 F. Supp. 2d 279 (S.D.N.Y. 2003) ................................................................... 28

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
  2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ............................................. passim

*In re Syngenta AG MIR 162 Corn Litig.*,
  131 F. Supp. 3d 1177 (D. Kan. 2015) ................................................................ 7, 8

*Interurban Ry. Co. v. Trainer*,
  233 S.W. 816 (Ark. 1921) ..................................................................................... 33

*Jahnke v. Allen*,
  865 N.W.2d 49 (Mich. Ct. App. 2014) ................................................................. 27

*Johnson v. Scandia Associates, Inc.*,
   717 N.E.2d 24 (Ind. 1999) ................................................................................. 26

*Kau v. City & County of Honolulu*,
   722 P.2d 1043 (Haw. Ct. App. 1986) ................................................................. 26

*Khadim v. Lab. Corp. of Am.*,
   838 F. Supp. 2d 448 (W.D. Va. 2011) ................................................................ 30

*Kopera v. Moschella*,
   400 F. Supp. 131 (S.D. Miss. 1975) .................................................................... 31

*Kreiss v. Allatoona Landing, Inc.*,
   133 S.E.2d 602 (Ga. Ct. App. 1963) ..................................................................... 8

*Kuciemba v. Victory Woodworks, Inc.*,
   14 Cal. 5th 993 (2023) ....................................................................................... 12

*Larmon v. United States*,
   200 F. Supp. 3d 896 (D.S.D. 2016) ..................................................................... 29

*Law v. Superior Court*,
   755 P.2d 1135 (Ariz. 1988) ................................................................................. 25

*Liu v. Striuli*,
   *36 F. Supp. 2d 452 (D.R.I. 1999)* ...................................................................... 29

*Lockhart v. Airco Heating & Cooling, Inc.*,
   567 S.E.2d 619 (W. Va. 2002) ............................................................................ 30

*Lompoc Unified Sch. Dist. v. Superior Court*,
   20 Cal. App. 4th 1688 (1993) ............................................................................... 8

*Lowery v. Echostar Satellite Corp.*,
   160 P.3d 959 (Okla. 2007) .................................................................................. 10

*Mack v. Wal-Mart Stores, Inc.*,
   2007 WL 3177000 (D.S.C. Oct. 26, 2007) ............................................................ 6

*MacPherson v. Buick Motor Co.*,
   111 N.E. 1050 (N.Y. 1916) ................................................................................... 7

*Madison Capital Co. v. S & S Salvage, LLC*,
   765 F. Supp. 2d 923 (W.D. Ky. 2011) ................................................................ 27

*Maley v. Children's Bus Serv., Inc.*,
   117 N.Y.S.2d 888 (Sup. Ct. 1952) ....................................................................... 34

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,*
   141 S. Ct. 13 (2020) ............................................................................................ 20

*In re Certification of Questions of Law,* 544 N.W.2d 183, 193 (S.D. 1996),
   1996 S.D. 10, 544 N.W.2d 183 ............................................................................ 34

*McCollum v. CBS,*
   202 Cal. App. 3d 989 (1988) ............................................................................... 13

*McGrellis v. Bromwell,*
   2019 WL 1422901 (Del. Super. Ct. Mar. 29, 2019) ............................................ 25

*Md. Cas. Co. v. Asbestos Claims Court,*
   460 P.3d 882 (Mont. 2020) .................................................................................. 28

*Michaels v. Nemethvargo,*
   571 A.2d 850 (Md. App. Ct. 1990) ...................................................................... 33

*Midwest Employers Cas. v. Harpole,*
   293 S.W.3d 770 (Tex. App. 2009) ....................................................................... 30

*Modisette v. Apple Inc.,*
   30 Cal. App. 5th 136 (2018) ................................................................................ 14

*Mohr v. St. Paul Fire & Marine Ins.,*
   674 N.W.2d 576 (Wis. Ct. App. 2003) ................................................................ 30

*Moore v. Myers,*
   868 A.2d 954 (Md. Ct. Spec. App. 2005) ............................................................ 27

*Morris v. Farley Enterprises, Inc.,*
   661 P.2d 167 (Alaska 1983) ................................................................................. 25

*NetChoice v. Bonta,*
   2023 WL 613551 (N.D. Cal. 2023) ...................................................................... 12

*NetChoice v. Griffin,*
   2023 WL 5660155 (W.D. Ark. 2023) ................................................................... 12

*Norg v. City of Seattle,*
   522 P.3d 580 (Wash. 2023) .................................................................................. 30

*Osborne v. Empres at Riverton, LLC,*
   2023 WL 4064267 (Wyo. Dist. May8, 2023) ...................................................... 19

*Osborne v. Ohio,*
   495 U.S. 103 (1990) ............................................................................................. 22

*Perez v. Stanford,*
   2021 WL 828560 (Conn. Super. Ct. Jan. 19, 2021) ............................................ 18

*Prewett v. Weems,*
   749 F.3d 454 (6th Cir. 2014) ............................................................................. 23

*Quisenberry v. Compass Vision, Inc.,*
   618 F. Supp. 2d 1223 (S.D. Cal. 2007) .............................................................. 11

*R.M. v. City of St. Charles Pub. Sch. Dist.,*
   2016 WL 2910265 (E.D. Mo. May 19, 2016) ................................................... 34

*Ramirez v. The Paradies Shops, LLC,*
   69 F.4th 1213 (11th Cir. 2023) ........................................................................... 5

*Ransom v. City of Garden City,*
   113 Idaho 202 (Idaho 1987).............................................................................. 26

*Rasmussen v. Ill. Cas. Co.,*
   628 S.W.3d 166 (Mo. Ct. App. 2021).............................................................. 28

*Reighard v. Yates,*
   285 P.3d 1168 (Utah 2012) ............................................................................... 30

*Richardson v. Tate,*
   269 So. 2d 278 (La. Ct. App. 1972).................................................................. 19

*Rohm v. Stroud,*
   194 N.W.2d 307 (Mich. 1972).......................................................................... 34

*Rowland v. Christian,*
   69 Cal. 2d 108 (1968) ....................................................................................... 10

*Rudnicki v. Bianco,*
   501 P.3d 776 (Colo. 2022)................................................................................ 33

*S. Fulton Med. Ctr., Inc. v. Poe,*
   480 S.E.2d 40 (Ga. Ct. App. 1996).................................................................. 33

*Sanders v. Acclaim Ent., Inc.,*
   188 F. Supp. 2d 1264 (D. Colo. 2002).............................................................. 13

*Sanderson v. Eckerd Corp.,*
   780 So. 2d 930 (Fla. Dist. Ct. App. 2001) ...................................................... 26

*Sawyer v. United States,*
   465 F. Supp. 282 (E.D. Va. 1978) .................................................................... 32

*Sax v. Votteler,*
   648 S.W.2d 661 (Tex. 1983).............................................................................. 34

*Schwerdt v. Myers,*
  683 P.2d 547 (Or. 1984) ............................................................................................ 29

*Scott v. Porter,*
  530 S.E.2d 389 (S.C. Ct. App. 2000) ......................................................................... 31

*Senger v. United States,*
  103 F.3d 1437 (9th Cir. 1996) ...................................................................................... 6

*Siciliano v. Capitol City Shows, Inc.,*
  475 A.2d 19 (N.H. 1984) ............................................................................................ 34

*Sizemore v. Smock,*
  422 N.W.2d 666 (Mich. 1988) .................................................................................... 31

*Smith v. Cent. Mine Equip. Co.,*
  876 F. Supp. 2d 1261 (W.D. Okla. 2012) .................................................................. 29

*Smith v. Johnston,*
  854 N.E.2d 388 (Ind. Ct. App. 2006) ......................................................................... 19

Social Media Cases,
  2023 WL 6847378 (Cal.Super. Oct. 13, 2023) ...................................................... 10-12

*Spangler v. McQuitty,*
  141 A.3d 156 (Md. 2016) ............................................................................................ 31

*T.A. v. Allen,*
  669 A.2d 360 (Pa. Super. Ct. 1995) ............................................................................. 8

*Tanner v. City of Sullivan,*
  2013 WL 3287068 (E.D. Mo. June28, 2013) ............................................................. 18

*United States v. Adams,*
  343 F.3d 1024 (9th Cir. 2003) .................................................................................... 22

*United States v. Little,*
  864 F.3d 1283 (11th Cir. 2017) .................................................................................. 23

*United States v. Nelson,*
  419 F.2d 1237 (9th Cir. 1969) .................................................................................... 22

*United States v. Pruitt,*
  638 F.3d 763 (11th Cir. 2011) .................................................................................... 22

*United States v. Romm,*
  455 F.3d 990 (9th Cir. 2006) ...................................................................................... 22

*United States v. Ruiz-Castelo,*
  835 F. App'x 187 (9th Cir. 2020) ............................................................................... 23

*United States v. Vasquez,*
   654 F.3d 880 (9th Cir. 2011) ............................................................................... 23

*Wachocki v. Bernalillo Cnty. Sheriff's Dep't,*
   265 P.3d 701 (N.M. 2011) ................................................................................... 18

*Watson v. Daniel,*
   183 S.E. 183 (Va. 1936)....................................................................................... 35

*Watters v. TSR, Inc.,*
   904 F.2d 378 (6th Cir. 1990) ............................................................................... 13

*Weeks v. Huntington Ingalls Inc.,*
   2012 WL 5383371 (S.D. Miss. Oct. 31, 2012) ................................................... 28

*Weirum v. RKO Gen., Inc.,*
   15 Cal. 3d 40 (1975) ............................................................................................ 13

*Weisenberger v. Ameritas Mut. Holding Co.,*
   597 F. Supp. 3d 1351 (D. Neb. 2022).................................................................... 5

*Weller v. Blake,*
   726 S.E.2d 698 (Ga. Ct. App. 2012) ................................................................... 26

*Williamson v. Waldman,*
   696 A.2d 14 (N.J. 1997)....................................................................................... 28

*Winter v. G.P. Putnam's Sons,*
   938 F.2d 1033 (9th Cir. 1991) ............................................................................. 13

*Wofse v. Horn,*
   523 F. Supp. 3d 122 (D. Mass. 2021) ................................................................. 27

*Wood v. CRST Expedited, Inc.,*
   419 P.3d 503 (Wyo. 2018).................................................................................... 31

*Worley v. Barger,*
   807 N.E.2d 1222 (Ill. Ct. App. 2004) ................................................................. 19

*Wright v. Colleton Cnty. Sch. Dist.,*
   391 S.E.2d 564 (S.C. 1990) ................................................................................. 34

*Wright v. Standard Oil Co.,*
   470 F.2d 1280 (5th Cir. 1972) ............................................................................. 34

**Statutes**

18 U.S.C. §2252 .......................................................................................... 20, 21, 22, 24

18 U.S.C. §2252A ................................................................................................... 20

18 U.S.C. §2255(a) ................................................................................................ 22

18 U.S.C. §2258A ................................................................................................... 23

18 U.S.C. §2258B(b) .............................................................................................. 24

18 U.S.C. §§2252(a)(1), 2252A(a)(2) .................................................................... 21

18 U.S.C. §§2252(a)(2), 2252A(a)(5)(B) ............................................................... 21

Cal. Civil Code § 1714 ................................................................................ 7, 10, 25

Ind. Code Ann. §34-9-3-4 ...................................................................................... 20

N.D. Cent. Code §9-10-06 ...................................................................................... 29

N.H. Rev. Stat. Ann. §556:12 ................................................................................ 31

**Rules**

Fed. R. Civ. P. 8(d)(2)............................................................................................... 6

Fed. R. Civ. P.12(6)

Ninth Circuit R. 36-3(a) ......................................................................................... 21

**Other Authorities**

Dobbs, *The Law of Torts* § 255 (2d ed.) .................................................................. 8

Ill. Pattern Jury Instr.-Civ. 30.08 .......................................................................... 33

NMRA, Civ. UJI 13-1604........................................................................................ 28

NMRA, Civ. UJI 13-1810A..................................................................................... 18

Pa. SSJI (Civ), §13.10............................................................................................. 29

Restatement (Third) of Torts (Liability for Physical and Emotional Harm) §7(a) (2010) ................. 7

Wright and Miller, 5A Fed. Prac. & Proc. Civ. §1324 (4th ed.)............................... 6

# I.      INTRODUCTION

Plaintiffs' core allegation in this litigation is that Defendants' social media platforms are designed and operated in a manner that induces addictive, compulsive use at the expense of the well-being and safety of the children who use the platforms. The Court has already permitted many of Plaintiffs' claims to move forward. Yet Defendants repeat many of the same arguments here that the Court already has rejected. Neither the First Amendment nor § 230 raises any type of categorical bar to Plaintiffs' claims that these platforms should have appropriate safety and protective features, including robust parental controls and age verification, options to self-restrict usage, accessible account-deletion capabilities, effective mechanisms to report child sexual abuse material ("CSAM") or predators, restrictions on appearance-altering filters for use by children, and labels on altered images. *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.,* 2023 WL 7524912, at *12, *16, *18–19 (N.D. Cal. Nov. 14, 2023) ("MTD1 Op."). And neither bars claims based on Defendants' failure to provide adequate warnings of the serious risks using Defendants' platforms poses to young people. *Id.*

Plaintiffs respectfully submit that similar reasons compel denial of Defendants' current motion to dismiss non-product negligence (Count 5) and loss of consortium, wrongful death, and survival claims brought by families whose children were injured or died as a result of Defendants' actions (Counts 16-18), as well as claims alleging CSAM violations (Counts 12 and 14 asserted against Meta only) ECF 516 ("Motion"). For example, Defendants double down on their extreme position that they owe their users *no duty* of reasonable care in the structure and operation of their platforms. But every state recognizes that businesses owe their direct consumers and users a basic duty to carry out their business in a manner that does not *create* an unreasonable risk of foreseeable harm to their customers, including a duty to reasonably warn of foreseeable risks.  This basic duty is not constrained to brick-and-mortar businesses, but instead is always adapting to emerging business risks and consumer threats. Likewise, Defendants' arguments that *all* of the conduct at issue here— including lack of age verification, parental controls, and CSAM/predator reporting—is "publishing" activity immune from liability are as wrong now as they were when the Court previously rejected

them. Defendants do not have statutory or constitutional carte blanche to promote compulsive use without any regard for the health and safety of their young users.

In sum, Defendants fall far short of showing that they are beyond the reach of the law for the injuries and damages caused by their misconduct. Plaintiffs therefor respectfully ask the Court to deny Defendants' motion to dismiss Counts 5, 12, 14, 16, 17, and 18 in its entirety.

## II.   ARGUMENT

### A.   Defendants are not entitled to dismissal of Plaintiffs' non-product negligence claim (Count 5).

Count 5 of the SAMC[1] alleges a negligence claim (expressly pled in the alternative) that does not depend on whether Defendants' platforms are "products."[2] SAMC ¶ 914. Count 5 is otherwise parallel to the product-based negligence causes of action, Counts 3 and 4. As such, Count 5 expressly incorporates by reference *all* of the factual allegations that also support Counts 3 and 4. *Id.*

Defendants' attacks on Count 5 unnecessarily confuse the well-settled law of duty that applies here, ignore multiple theories of negligence pled by Plaintiffs, and improperly seek to reargue § 230 and First Amendment issues this Court already decided. As a threshold matter, the Court should deny dismissal of Count 5 in its entirety because Defendants improperly seek dismissal of only *subparts* of a single claim of negligence. Alternatively, the Court should sustain Count 5 on the same theories of negligence it found actionable under Counts 3 and 4, including each Defendant's failure to provide reasonable warnings of risks to children from using their platforms. MTD1 Op. at *12, *16, *18, & *19.

#### 1.   *Defendants do not dispute the sufficiency of each of the theories of negligence supporting Count 5.*

Defendants' motion should be denied because it addresses only select aspects of Count 5 and

---

[1] References to "SAMC ¶ __" are to Plaintiffs' Second Amended Master Complaint (Personal Injury), ECF 494.

[2] For example, Plaintiffs proceeding under Ohio law will rely on Count 5 in lieu of their product-based claims, given that "Ohio's products liability framework limits the scope of 'products' to tangible things." *See* MTD1 Op. at *25 n.38 (dismissing Plaintiffs' product-liability claims "insofar as they are brought under Ohio law").

1   does not challenge the sufficiency of a number of other theories of negligence Plaintiffs assert.

2   Plaintiffs expressly plead their non-product negligence claim (Count 5) to parallel their

3   product-based negligence claims (Count 3 & 4). As such, Count 5 expressly incorporates *all* of the

4   factual allegations that formed the basis for Counts 3 and 4. SAMC ¶ 914. With respect to Counts 3

5   and 4, the Court determined that seven of Plaintiffs' theories of misconduct survive both § 230 and

6   the Defendants' First Amendment challenges:

7        (1) ineffective parental controls,

8        (2) not allowing users to self-restrict time on the platform;

9        (3) making it "challenging" for users to delete accounts;

10        (4) inadequate age verification;

11        (5) difficult CSAM/predator reporting processes;

12        (6) providing appearance-altering filters; and

13        (7) not labelling filtered content.

14   MTD1 Op. at *12, *18. The Court also found Plaintiffs' "failure to warn" theory of negligence

15   was not barred by § 230 and that Defendants had "effectively waived" any First Amendment

16   argument for dismissal. *Id.* at *16, *19.[3]

17   As shown below, Defendants ignore four of the seven surviving theories: self-restrictions,

18   account deletion, filters, and lack of labels for filtered images. Defendants likewise do not challenge

19   Count 5 with respect to Plaintiffs' failure-to-warn theory.

20   It is well-established that where a plaintiff pleads "multiple theories and operative facts" in

21   support of a single claim of negligence, Rule 12(b)(6) does not permit dismissal of only *some* of the

---

[3] Plaintiffs agree with Defendants (Mot. at 5) that the Court's prior feature-by-feature rulings concerning § 230 and First Amendment "apply equally" to Count 5. Indeed, the Court analyzed the § 230 and First Amendment issues *before* examining the distinct issue of whether any challenged features could be treated as products. MTD1 Op. at *6-*7. Like Defendants (Mot. at 5, n. 3), Plaintiffs do not ask the Court to revisit those rulings for purposes of this motion (although Plaintiffs respectfully disagree to the extent those rulings were adverse to Plaintiffs and Plaintiffs preserve all arguments on these issues for any appeal/cross-appeal). Thus, whatever was ruled "out" under Section § 230/First Amendment for Counts 3 and 4 is "out" for Count 5. Conversely, whatever was *not* barred by Section § 230 or the First Amendment for Counts 3 and 4 is not barred for purposes of Count 5.

theories. *Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *2-3 (N.D. Cal. Apr. 24, 2018) (defendant cannot "attack portions of a single claim on a motion to dismiss"). A cause of action "either fails totally" or it "remains in the complaint." *In re Netopia, Inc. Sec. Litig.*, 2005 WL 3445631 at *3 (N.D. Cal. Dec. 15. 2005) (Rule 12(b)(6) cannot be used "on subparts of claims"); *see also Franklin v. Midwest Recovery Sys., LLC*, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9. 2020) (Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim."). Thus, because Defendants challenge only "subparts" of Count 5, their motion is improper under Rule 12(b)(6) and should be denied on this basis alone.

> **a.    Defendants do not dispute the sufficiency of Plaintiffs' allegations regarding user self-restrictions, account deletion, or image filters.**

As indicated above, Count 5 expressly incorporates *all* of the factual allegations concerning Defendants' conduct and platforms and the risks they create for kids using the platforms. SAMC ¶ 914. This includes Plaintiffs' allegations concerning (1) the lack of self-restriction mechanisms, (2) "challenging" processes to delete accounts, (3) appearance-altering filters, and (4) the failure to label filtered content.[4] Plaintiffs further allege these aspects of Defendants' platforms create a risk of addiction, compulsive use, sleep deprivation, depression, body dysmorphia, and other injuries.[5] And Count 5 alleges each Defendant affirmatively breached its "duties of care" to Plaintiffs by offering platforms that are "structured and operated" in a manner that "unreasonably creates or increases the foreseeable risk of" "addiction to," "compulsive use of," and "overuse of" each Defendant's respective platform, as well as "depression," "anxiety," "suicidal ideation," "body dysmorphia," and "eating disorders"—the very risks that Plaintiffs allege arise from the four theories of misconduct that Defendants ignore. SAMC ¶¶ 916. 929(a)-(b).

Defendants do not challenge any of the above four aspects of Count 5. They attempt to justify ignoring (1) and (3) by asserting Plaintiffs "do not include allegations about opt-in restrictions or

---

[4] Lack of Self-Restriction: SAMC ¶¶ 182, 262, 303 & 350. Account Deletion Process: SAMC ¶¶ 358-63, 489-90, 638-48, 774-77. Image-Altering Filters: SAMC ¶¶ 88, 114-17, 318-19, 321, 513-15, 649-53. Lack of Labels. SAMC ¶¶ 318, 435, 549.

[5] SAMC ¶¶ 18, 90, 96, 105, 108-117, 308, 431, 440, 543, 675, 766, 812.

filters in their general negligence claim." Mot. at 3 n.2. But, as shown above, that is not true. Moreover, Defendants provide no excuse for ignoring Plaintiffs' additional allegations of account deletion (2) and labeling (4). Defendants' failure to address *each* of Plaintiffs' theories of negligence is grounds alone to deny their motion to dismiss Count 5 without reaching Defendants' arguments concerning Plaintiffs' *other* alleged grounds for negligence.

### b. Defendants do not dispute the sufficiency of Plaintiffs' failure-to-warn theory of negligence.

Plaintiffs also allege each Defendant failed to provide adequate warnings of the known and foreseeable risks their conduct created for children using the platforms and that such failures "proximately caused significant harm to Plaintiffs' mental and physical well-being." SAMC ¶¶ 20, 248, 282, 431-37, 543-53, 675-89, 772, 812-19. Again, Count 5 expressly incorporates these allegations. *Id.* ¶ 914. And all fall squarely within Count 5's allegations that each Defendant "should have known" children would not appreciate the risks of using the platforms and each Defendant breached its duty of care by creating unreasonable risks of harm in how it "managed," "operated," "marketed," "advertised," "promoted," and "controlled" its respective platform, including each Defendant's "failure to act." *Id.*, ¶¶ 922, 929 & 930.

The general negligence duty not to create an "unreasonable risk of harm" to others includes a duty to warn of risks that a defendant knows or should have known are created by its conduct in operating its business. *See* Rest. (Third) Torts: Physical and Emotional Harm § 18 ("[a] warning can often be a useful device for reducing the risk of harm occasioned by the defendant's conduct" and, therefore, "failure to warn is a basic form of negligence").[6] Thus, a duty to warn does not depend on

---

[6] *See also*, *e.g.*, *Ramirez v. The Paradies Shops, LLC*, 69 F.4th 1213, 1219 (11th Cir. 2023) (Georgia law: "[T]raditional negligence principles provide that the creator of a potentially dangerous situation has a duty to do something about it so as to prevent injury to others . . . that is, the creator has a duty to eliminate the danger or give warning to others of its presence."); *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 4d 1351, 1364 (D. Neb. 2022) (Nebraska law: "a defendant whose conduct creates a risk of physical or emotional harm can fail to exercise reasonable care by failing to warn of the danger if the defendant knows or has reason to know of that risk and that those encountering the risk will be unaware of it"); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 4d 667, 681 (D.S.C. 2021) (South Carolina law: duty to warn arises "where the defendant negligently or intentionally creates the risk").

the parties' relationship, but on whether a defendant's conduct created a foreseeable risk of harm. *See, e.g.*, *Senger v. United States*, 103 F.3d 1437, 1443 (9th Cir. 1996) (Oregon law: "[A] defendant may have a duty to warn . . . because of a general requirement to avoid conduct that unreasonably creates a foreseeable risk to the plaintiff."); *Mack v. Wal-Mart Stores, Inc.,* 2007 WL 3177000, *3 (D.S.C. Oct. 26, 2007) (South Carolina law: explaining that the duty to warn did not  arise from the defendant's association with the parties or the premise but rather "her common law duty to exercise due care to avoid damage or injury to foreseeable plaintiffs").

As the Court found, Defendants chose not to address Plaintiffs' failure-to-warn theory in their prior motion to dismiss the product-based negligence claims. MTD1 Op. at *16, *19. They repeat that strategy here on Plaintiffs' non-product negligence claim.[7] Thus, Defendants have waived any argument that Count 5 cannot proceed on a failure-to-warn theory. That waiver compels denial of Defendants' motion to dismiss Count 5 because, as shown above, Rule 12(b)(6) does not allow dismissal of only some theories of negligence where, as here, a plaintiff asserts multiple theories in a single claim.

### 2.    *Plaintiffs allege a cognizable duty of care.*

Even if the Court were to consider Defendants' arguments with respect to the select aspects of Count 5 that their Motion does address, Defendants are not entitled to dismissal. Simply stated, Defendants are wrong that there is no cognizable duty to support Count 5. Mot. at 5-6, 7-8, 15-17.

Defendants owe the same basic duty of care to Plaintiffs that all business owe to their customers: the duty not to create an unreasonable risk of harm. Plaintiffs allege their injuries are the direct and foreseeable result of the knowing choices each Defendant made to prioritize user "engagement" over safety—even to the point of depriving kids and their parents of effective means

---

[7] Defendants cannot try to excuse their failure on the theory that Plaintiffs did not plead a separate "Failure to Warn" count on a non-product basis. Rule 8 does not require a separate count where, as here, Plaintiffs allege multiple theories of negligence. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively, either in a single count or in separate ones."); Wright and Miller, 5A Fed. Prac. & Proc. Civ. § 1324 (4th ed.) ("When several different acts provide the background for the plaintiff's complaint, the individual acts need not be separately stated if only a single claim is asserted."); *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1247 (11th Cir. 2004) ("While it may well be preferable to plead different theories of recovery in separate counts, it is not required").

1    to protect themselves through optional self-restrictions, account deletion, age verification,

2    CSAM/predator reporting, and parental controls. All of the practical and policy factors courts look to

3    when considering whether a duty of care exists weigh decidedly in favor of imposing a requirement

4    on Defendants to use reasonable means for such self-protection.

5          Defendants raise a series of arguments to deny and avoid their duties of care. None has any

6    merit. Online platforms are not categorically exempt from the duty not to harm their users. Nor is

7    there any exemption where a business creates a risk of addiction (or compulsive use or any of the

8    other injuries to the physical and mental well-being of kids that Plaintiffs allege). Finally, Defendants'

9    repeated appeals to their role as a publisher of user content are an obvious attempt to relitigate the

10   § 230 and First Amendment issues the Court already decided.

11                    a.      **Defendants owe their users a duty not to create an unreasonable**

12                            **risk of harm.**

13         Defendants feign confusion over what duty Plaintiffs allege as the basis for their negligence

14   claim. Mot. at 5-6. But Plaintiffs make clear that Count 5 rests on the general duty every business

15   owes "not to create unreasonable risks to others" through their affirmative conduct. Restatement

16   (Third) of Torts (Liability for Physical and Emotional Harm) § 7(a) (2010). Whether by common law

17   or (in states like California) by statute, this is the "default rule." *In re Syngenta AG MIR 162 Corn*

18   *Litig.* ("*Syngenta*"), 131 F. Supp. 3d 1177, 1189 (D. Kan. 2015) (citing Restatement (Third) of Torts

19   (Liability for Physical and Emotional Harm) § 7(a) (2010)); Cal. Civil Code § 1714; *see also* Dobbs,

20   *The Law of Torts* § 255 (2d ed.) (The "default rule . . . is that everyone owes a duty of care not to

21   create unreasonable risks to others.").[8] This general duty of care is inherently and intentionally

22   flexible to keep up with "whatever the needs of life in a developing civilization require them to be."

23   *MacPherson v. Buick Motor Co.,* 111 N.E. 1050, 1053 (N.Y. 1916) (Cardozo, J.). Negligence is not a

24   "static institution," but instead possesses "ready adaptability to radically changed conditions." *Day v.*

25   *Grand Union Co.*, 280 A.D. 253, 254 (N.Y. App. Div. 1952). The essential flexibility of the law of

26

27

28   ─────────────────
     [8] *See* App'x A (every state recognizes a general duty of care).

negligence to meet evolving businesses and risks to their consumers is widely recognized.[9]

Thus, courts recognize that consumer-facing businesses—including online businesses like Meta's Facebook—owe a basic duty to operate their business in a manner that does not create an unreasonable risk of foreseeable injury to their direct consumers. *E.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (Facebook owed its users duty of care in handling of personal data); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (same). Indeed, a company's basic duty to carry out its business without creating an unreasonable risk of injury often extends *beyond* the direct consumers to other ascertainable groups. *E.g.*, *Syngenta*, 131 F. Supp. 3d at 1189 (in commercializing genetically modified corn, Syngenta owed duty of care to corn sellers, not just to farmers who bought the seed).

Defendants ignore all of this to claim that "online services" do not owe any "duty of care" to their users. Mot. at 16. This is the same extreme position Defendants took in their prior motion to dismiss. ECF 237 at 28 (asserting online services do not owe "*any* duty of care" to their users); *see also* Oct. 27, 2023 Hr'g Tr. at 145:8-147:10. The case law refutes any notion that Defendants have a

---

[9] *See, e.g.*, *Carrillo v. El Mirage Roadhouse, Inc.*, 793 P.2d 121, 124 (Ariz. Ct. App. 1990) ("Because duty and liability are matters of public policy, they are subject to the changing attitudes and needs of society."); *Lompoc Unified Sch. Dist. v. Superior Court*, 20 Cal. App. 4th 1688, 1692 (1993) ("The boundaries of duty may be redefined by the courts in response to ever-changing social norms and mores."); *Kreiss v. Allatoona Landing, Inc.*, 133 S.E.2d 602, 610 (Ga. Ct. App. 1963) ("Negligence law deals with human life and our civilization is rapidly changing. There will always be progress, and, the common law must move forward to keep pace with our advancing civilization."); *Hays v. City & County of Honolulu*, 917 P.2d 718, 725 (Haw. 1996) ("Duty is a fluid concept, and as our ideas of human relations change the law as to duties changes with them."); *Durr v. Stille*, 487 N.E.2d 382, 383 (Ill. App. Ct. 1985) ("The court's perceptions of duty in negligence cases will change as society changes."); *Garrett v. Ford Motor Co.*, 684 F. Supp. 407, 412 (D. Md. 1987) ("The common law is not sterile or rigid and serves the best interest of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time."); *B.M.K. v. W.A.*, 2021 WL 2068903, at *2 (N.J. Super. Ct. App. Div. May 24, 2021) ("Duty 'is not a rigid formalism that remains static through time, but rather is a malleable concept that must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows.'"); *Boyle v. Asap Energy, Inc.*, 408 P.3d 183, 192 (Okla. 2017) ("[T]he concept of duty is one of public policy and is "subject to the changing attitudes and needs of society."); *T.A. v. Allen*, 669 A.2d 360, 367  (Pa. Super. Ct. 1995) ("The concept of duty is constantly evolving"); *Berly v. D L Sec. Serv. Invest*, 876 S.W.2d 179, 188 (Tex. App. 1994) ("The common law of torts, including the concept of duty, must evolve in light of the changing conditions and circumstances of society.").

categorical exemption from the ordinary duty of care.

The *Bass* and *Facebook* courts squarely rejected the same argument when Facebook claimed it "does not owe its users a duty of care." *Bass*, 394 F. Supp. 3d at 1039; *In re Facebook, Inc.*, 402 F. Supp. 3d at 799. As the *Bass* court observed, such a blanket "no duty" rule would "create perverse incentives" that would permit Defendants (and other online platforms) to turn a "blind eye" to foreseeable risks of harm their protocols and operations create for their users. 394 F. Supp. 3d at 1039 (quoting *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019)).

Although decided in the context of data privacy, these rulings refute the proposition that "online services" are categorically exempt from the basic duty of care that applies to offline, brick-and-mortar business. Similarly, courts have rejected the proposition that holding businesses liable for losses in "new" contexts requires a court to create a "new tort." *In re Equifax, Inc.*, 362 F. Supp. 3d at 1326. As the *Equifax* court correctly concluded, it did not need to find a "new duty" to allow the plaintiffs to sue for negligent exposure of their personal data because, applying "traditional negligence principles, the Defendants owed a legal duty to the Plaintiffs to take reasonable precautions due to the reasonably foreseeable risk of danger of a data breach incident." *Id.*

So, too, here. Although Count 5 may arise in the (somewhat) new setting of social media, it does not seek to "create" a new duty "out of whole cloth," contrary to what Defendants contend. Mot. at 15. Rather, traditional negligence principles decidedly support applying a general duty of care to Defendants' decisions about how to structure and operate their platforms with respect to the safety of children who use them.

Judge Kuhl's order allowing the JCCP Plaintiffs to proceed on their non-product negligence claim is instructive. Judge Kuhl held Defendants owed the plaintiffs there—children who used the platforms (and their parents)—a duty of care under ordinary negligence principles with respect to the "design and/or operation" of their social media platforms. *Social Media Cases*, 2023 WL 6847378, at *23 (Cal. Super. Oct. 13, 2023) ("JCCP Op.") including Defendants' use of protocols that "do not verify the age of users" and conduct that "diminish[es] the effectiveness of parental supervision." *Id.*

1   at 40, 62. In so holding, Judge Kuhl examined California's "*Rowland*"[10] factors, which parallel the

2   factors many states look to when considering whether a duty of care can be imposed. *See* Dobbs, *The*

3   *Law of Torts* § 255 (2d ed.) (discussing factors looked to in cases examining duty).[11] Here, as in the

4   JCCP action, each of those factors (examined below) weighs decidedly in favor of finding Defendants

5   owe their users a duty of care with respect to the design and operation of their platforms.

6         *Foreseeability*. In most jurisdictions, foreseeability is the sole or predominant consideration

7   of the duty analysis. *See, e.g.*, *Carter v. Nat'l R.R. Passenger Corp.*, 63 F. Supp. 3d 1118, 1149 (N.D.

8   Cal. 2014) (foreseeability "is the most important factor"); *Lowery v. Echostar Satellite Corp.*, 160

9   P.3d 959, 964 (Okla. 2007) ("The most important consideration in determining the existence of a duty

10  of care is foreseeability of harm to the plaintiff."); *cf. In re JUUL*, 497 F. Supp. 3d 552, 655 (N.D.

11  Cal. 2020) ("Some jurisdictions give more weight to the foreseeability of harm than others.").

12        Judge Kuhl found "foreseeability weighs heavily in favor of finding that Defendants owe a

13  general duty to the users of Defendants' platforms," given the allegations that Defendants deliberately

14  designed their platforms "to manipulate dopamine releases in children's developing brains and, in

15  doing so, create compulsive use of their apps" and that there is more than a "decade" of studies

16  demonstrating that Defendants' platforms can harm children's health, including "compulsive use,

17  addiction, body dissatisfaction, [and] … depression." JCCP Op. at 46-47. Plaintiffs here likewise

18  allege that a substantial body of research supports the conclusion that "compulsive use of Defendants'

19  apps leads to negative mental and physical outcomes for kids" SAMC ¶¶ 18, 99, 100-17 and that the

20  risks of addiction, compulsive use, and attendant harms to children from using Defendants' platforms

21  were not only foreseeable, but actually foreseen. *Id.* ¶¶ 96–124 (all Defendants); 431–37 (Meta); 543–

22

23  [10] *Rowland v. Christian*, 69 Cal. 2d 108 (1968).

24  [11] Defendants argue that Judge Kuhl's opinion is not persuasive because it was decided under
    California demurrer law. Mot. at 17-18. But Judge Kuhl did not conduct the superficial or conclusory

25  analysis Defendants suggest. Relevant here, she thoroughly examined each of the "*Rowland*" factors
    California courts consider to determine whether the default duty of care under California Civil Code

26  § 1714 should apply in light of various practical and policy considerations. JCCP Op. at 42-53.
    Defendants previously conceded that the *Rowland* factors are representative of the key factors

27  governing duty questions in most states. Defendants Reply ISO Joint Motion to Dismiss Plaintiffs'

28  Priority Claims, ECF No. 323 at 22-23.

53 (Snapchat); 675–89 (TikTok); 812–19 (YouTube).

*Certainty and Closeness of Injury*. As Judge Kuhl found, the "certainty of injury" and "closeness of connection" factors are readily satisfied where, as here, Plaintiffs are not "mere bystanders," but individuals "who were directly affected by Defendants' conduct"—the children who used the platforms and their parents. JCCP Op. at 47-49; *Quisenberry v. Compass Vision, Inc.*, 618 F. Supp. 2d 1223, 1230 (S.D. Cal. 2007) (this factor weighs in favor of imposing a duty as long as the alleged causal nexus between a defendant's actions and a plaintiff's injury "is not doubtful or remote"). Plaintiffs allege Defendants' products harm Plaintiffs directly. *See* SAMC ¶¶ 181-437 (Meta); *id.* at ¶¶ 438-553 (Snap); *id.* at ¶¶ 554-689 (ByteDance); *id.* at ¶¶ 690-819 (Google). Defendants' speculative arguments that Plaintiffs' injuries were *not* caused by conduct the Court found actionable (*i.e.*, theories of liability not barred by § 230/First Amendment) (Mot. at 15) is a question for the jury, not a basis for dismissal. *Accord* JCCP Op. at 49.

*Policy Factors*. Public policy factors also firmly support recognition of a duty of care here. JCCP Op. at 49-53. Each of the platform features/failings on which the Court has allowed Plaintiffs to proceed—lack of self-restriction options, difficult account deletion, ineffective age verification, CSAM/predator reporting, and ineffective parental controls—concern ways Defendants have undermined and interfered with the ability of parents and children to make their own choices about their well-being, exercise agency, and try to protect *themselves*. Defendants' failure to warn of the risks of using their platforms likewise deprives parents and children of the ability to make informed decisions about their own best interests.

There can be no serious debate that interfering with the ability to protect a child's mental and physical well-being is deserving of the strongest moral blame. All the more so when, as Plaintiffs allege, Defendants designed and operate their platforms to manipulate children so that Defendants could cash in on the addictive, compulsive use of their platforms by kids—the youngest of whom were never supposed to be allowed on the platforms at all. *See, e.g.*, *In re JUUL*, 497 F. Supp. 3d at 656 (targeting children for addictive vape products had "strong moral blame" and "social utility" favored prevention of youth addiction). The "obvious inequality between the unsophisticated minors and Defendants who exercised total control over how their platforms functioned" only adds to the

1   moral blame here. JCCP Op. at 50 (citing *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993,

2   1025 (2023)).

3          Arguments from Defendants that the benefits of their platforms allegedly would be lost by

4   providing effective warnings or actually allowing kids and parents to protect themselves (Mot. at 16-

5   17) make no sense on their face. After all, Defendants already purport to offer (ineffective) age

6   verification, parental controls, CSAM/predator reporting, usage "reminders," and account deletion.

7   Debates over the extent to which Defendants can implement more *effective* means for parents and

8   kids to protect themselves—and whether there is social value in Defendants' preference to structure

9   and operate their platforms without those protections—are factual issues for the jury. *See Carter*, 63

10  F. Supp. 3d at 1150 and n. 20 (alleged burden of the corrective action is factual issue for trial).[12]

11         Defendants also are best able to internalize the costs of the injuries their platforms already

12  have caused. That Defendants are some of the richest companies on Earth further lightens this burden.

13  SAMC ¶¶ 246 (Meta); 451 (Snap); 562 (TikTok); 716 (YouTube). And, because Defendants have

14  exclusive control over their platforms and are thus the only parties able to implement the design and

15  warning changes Plaintiffs seek, they are in the best position to prevent future harms.

16         *Speech and Publication Implications*. Finally, Defendants once again seek immunity from

17  negligence in the name of free speech and their "integral" role in fostering "diverse . . . human

18  _____

19  [12] As Defendants tacitly recognize (Mot. at 14 n.8), the Court already has ruled that the First
    Amendment does not bar tort claims based on ineffective age verification. MTD1 Op. at *18-19
20  (finding that claims addressed to age verification (among and other defects) "would not require that
    defendants change how or what speech they disseminate" and, therefore, are not barred by the First
21  Amendment). The recent decisions in *NetChoice v. Bonta* and *NetChoice v. Griffin* (cited at Mot.
    at 14) were issued by district courts and are not controlling here. *NetChoice v. Bonta*, 2023 WL
22  613551 (N.D. Cal. 2023); *NetChoice v. Griffin*, 2023 WL 5660155 (W.D. Ark. 2023). In any event,
    those decisions are inapposite. Each court was considering challenges to *statutes* mandating certain
23  age-verification requirements (among other restrictions), not negligence claims seeking liability for
    failure to deploy *reasonably* available and effective age verification methods. Moreover, to the extent
24  each court found the age verification requirements at issue in those cases would unconstitutionally
    restrain speech, it did so based on an evidentiary record, not on pure abstraction such as Defendants
25  offer here. *Bonta*, 2023 WL 613551, at *12-*13 (analyzing the materials and evidence in the record
    for the motion); *Griffin*, 2023 WL 5660155, at *3 (discussing testimony given concerning operation
26  of age-verification methods). Thus, if anything, those decisions demonstrate that age verification
    decisions are not categorically protected as a matter of law, but at least require a factual record to
27  assess whether and to what extent enhancing verification would restrain or chill protected speech.

28

1  thought." Mot. at 16. Defendants' "no duty" argument simply rehashes the same issues from the same

2  flawed premise—namely, that imposing a duty on Defendants will chill expression and censor

3  content. Mot. at 15-16. But the Court already rejected these same arguments (based on the same cases)

4  when it found that neither § 230 nor the First Amendment bars Plaintiffs' product-defect claims with

5  respect to certain aspects of Defendants' platforms (age-verification, parental controls,

6  CSAM/predator reporting, self-restrictions on usage, account deletion, and image-altering

7  filters/labels for filtered images). MTD1 Op. at *12, *18. Moreover, communications businesses do

8  not have an unfettered license to carry out their business by means that create an unreasonable risk of

9  foreseeable harm due to the way they are structured and operated. *Weirum v. RKO Gen., Inc.*, 15 Cal.

10  3d 40, 43-48 (1975); *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 811 (R.I. 1996) (television

11  station could be held liable for conducting interview in way that interfered with police efforts).[13]

12          **b.  Defendants owe their users a duty not to create an unreasonable**

13          **risk of addiction to their platforms.**

14          Contrary to what Defendants urge (Mot. at 8), the basic duty to avoid creating an unreasonable

15  risk of harm includes not creating an unreasonable risk of addiction. In the JUUL and Opioids

16  litigations, for example, courts upheld general-negligence claims brought by schools and towns,

17  finding that the defendants had a duty not to carry out their marketing and distribution operations in

18  a way that created an unreasonable, foreseeable risk of addicting children and other users of their

19  products. *In re JUUL*, 497 F. Supp. 3d at 655 (defendant owed a duty of care to school districts

20  because targeting and addicting youth to vaping created a foreseeable risk of harm to school districts);

21

22  [13] The cases Defendants cite are inapplicable as they concern attempts to hold publishers liable in tort

23  for the *content* they published. *E.g.*, *Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing negligence claims where "case was based upon the creation and

24  dissemination of a show"); *McCollum v. CBS*, 202 Cal. App. 3d 989, 1005-06 (1988) (finding no duty

25  for performing artists to "avoid the dissemination of ideas in artistic speech"); *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1035 (9th Cir. 1991) (dismissing claims based on allegedly erroneous

26  encyclopedia entry reflecting "pure thought and expression"); *Watters v. TSR, Inc.*, 904 F.2d 378, 379 (6th Cir. 1990) (dismissing wrongful death claim based on alleged influence of content of Dungeons

27  & Dragons role-playing game using "booklets" and literature); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1275 (D. Colo. 2002) (dismissing wrongful death claims that were brought against

28  makes of video games and movies "based merely on the content or ideas expressed in their creative works").

1   *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745, 786 (N.D. Ohio 2020) (plaintiffs

2   adequately alleged general duty of care because "Defendants' [alleged] activities regarding these

3   potentially dangerous and highly addictive opioid drugs create a 'general threat of harm to others'").

4          Defendants ignore these on-point cases and baldly assert that companies have "no general

5   duty to prevent addiction." Mot. at 8. The only case they cite, *Modisette v. Apple Inc.*, 30 Cal. App.

6   5th 136 (2018), did not so hold. The "no duty" ruling in *Modisette* was driven *entirely* by the court's

7   conclusion that the California legislature had made a policy choice to allow drivers to use cell phones

8   while driving despite the dangers of distracted driving. *Id.* at 150-52.

9          In any event, Plaintiffs do not rely on a duty to "prevent" addiction, as Defendants wrongly

10  assert. Mot. at 8. Plaintiffs allege affirmative conduct—i.e., that Defendants built and operate their

11  online platforms in a manner that *induces* addictive, compulsive, and "problematic" use. SAMC

12  ¶¶ 18, 19, 74, 76-90, & 167.[14]

13                    **c.      Defendants' "publisher liability" arguments are identical to those**

14                            **already rejected by the Court.**

15         Defendants claim Plaintiffs' allegations of injuries flowing from deficient age verification,

16  parental controls, and CSAM/predator-reporting processes seek to hold Defendants liable as

17  publishers. Mot. at 11. But this Court has squarely held that challenges to such conduct do not arise

18  from any role Defendants might otherwise have as publishers. MTD1 Op. at *12 & *18. Defendants

19  could change their designs and operations to avoid liability with respect to these matters without

20  changing or taking down *any* content. *Id.* Moreover, the Court found Plaintiffs may proceed on claims

21  concerning these three aspects of Defendants' platforms *despite* concluding that § 230 or the First

22  Amendment bars product-defect claims concerning other aspects of the platforms. *Id.* As the Court

23

24  ─────────────────

25  [14] Defendants would have the Court believe—without hearing from a single expert—that there
    allegedly is no way to know what constitutes "excessive use" of their platforms. Mot. at 8. But
    Plaintiffs allege psychologists, behavioral scientists, and other experts are answering those questions,

26  including observing connections between the number of daily hours of use and negative impacts on
    children. SAMC ¶¶ 80, 103, 106, 109. And, indeed, at least one Defendant (Meta) has observed what

27  it euphemistically calls "problematic" use of its platform. SAMC ¶ 299. In any event, what constitutes
    "excessive use" is a factual issue that cannot be resolved on a motion to dismiss.

28

1  explained, the surviving theories "would not impact [Defendants'] publication of third-party content"

2  and "[n]o posting or publication" is necessary to the alleged harms. *Id.* at *12.

3       Defendants say they view the Court's prior Order as "consistent with" their own

4  understanding of § 230 and the First Amendment (and with decisions of other courts), Mot. at 14, but

5  they nevertheless argue that § 230 and the First Amendment *do* bar Plaintiffs' negligence claim as to

6  Defendants' age verification, CSAM/predator reporting, and parental controls because—in

7  Defendants' re-telling—challenges to such features *necessarily* implicate content. *Id.* at 11-15.

8  Defendants cannot have it both ways, and the Court should not countenance their efforts to take a

9  second bite at the apple. The Court squarely held that § 230 does not immunize a platform from

10  liability merely because content "is relevant to or a but-for cause of the plaintiff's harm." MTD1 Op.

11  at *9. Likewise, although Defendants argue that Plaintiffs do not allege that insufficient age

12  verification or parental controls are "harmful in and of themselves" (Mot. at 12), the Court expressly

13  found that Plaintiffs *do* allege "a plausible theory under which failure to validly verify user age harms

14  users that is distinct from harm caused by consumption of third-party content on defendants'

15  platform." MTD1 Op. at *12.

16       Defendants also contend that imposing a duty to provide parental controls to notify when a

17  child's "use becomes excessive" would require Defendants to "monitor and review third party

18  content." Mot. at 13. But that is illogical on its face. A defendant can monitor the amount of *time* a

19  child uses a platform, for example, without having to monitor the *content* the child is seeing. As to

20  CSAM/predator reporting, the Court similarly rejected Defendants' "publisher liability" arguments.

21  The Court found that "[r]eceiving more reports does not require [Defendants] to remove the content.

22  They could respond by taking other steps, such as reporting the content to a government agency or

23  providing relevant warnings." MTD1 Op. at *13.

24       In sum, Count 5 does not "fall[] on the wrong side" of the line that the Court drew between

25  claims that do and do not implicate § 230 and the First Amendment. *See* Mot. at 15. Count 5 parallels

26  Count 3. To use Defendants' words, the Court's § 230 and First-Amendment rulings for Count 3

27  "apply equally" to Count 5. *See* Mot. at 5.

28

**3. *Plaintiffs preserve their appellate rights with respect to the Court's ruling on third-party misconduct.***

Defendants seek dismissal of aspects of Count 5 that seek to hold Defendants liable for third-party misconduct (e.g., sexual predators, sextortionists, and the like). Mot. 8-10. They also challenge Plaintiffs' allegations that Defendants' misconduct is a proximate cause of harm involving third parties. Mot. at 18-20.

The Court previously found Plaintiffs had not alleged a sufficient factual basis for "misfeasance" required to hold Defendants liable for third-party misconduct. MTD1 Op. at *39. The Court therefore dismissed claims based on third-party misconduct but with leave to amend if, "with the benefit of discovery," Plaintiffs are able "to more explicitly and specifically explain the basis for the misfeasance by defendants that they claim." *Id.* Like the Court's § 230 and First Amendment rulings, this ruling applies equally to Count 5, which is pled in parallel to Count 3. Plaintiffs therefore respectfully incorporate by reference here all of the arguments previously made in opposition to MTD1 with respect to third-party misconduct and preserve for any appeal/cross-appeal their rights with respect to the Court's adverse ruling on this issue.

**B. Defendants are not entitled to dismissal of Plaintiffs' claims for loss of consortium, wrongful death, and survival (Counts 16-18).**

Defendants next challenge Plaintiffs' derivative claims for wrongful death, loss of consortium, and survival. To the extent there is any basis to seek dismissal of these claims under a particular state's laws, Plaintiffs respectfully submit that such a motion should be handled on an individual level, particularly given the small number of Plaintiffs who have asserted these claims (approximately forty-one). In sum, Defendants' motion overreaches, given that many states do not limit loss-of-consortium claims to spouses; even when medical expenses are not recoverable under a theory of loss of consortium, parents may still be able to recover medical expenses incurred for their children's injuries; and Plaintiffs may, at a minimum, plead survival and wrongful-death claims in the alternative.

1

### 1.   There is no basis for dismissing Counts 16-18 when Plaintiffs' underlying personal-injury claims remain operative.

2

3   Defendants contend that Counts 16 through 18 are "derivative" in nature and, therefore,

4   should be scuttled along with Plaintiffs' underlying "personal injury" claims. But this Court earlier

5   held that many of Plaintiffs' personal injury-based claims remain operative and, therefore, under

6   Defendants' own reasoning, Counts 16 through 18 are viable.

7   In its prior order, the Court held that many of the alleged design defects at issue (Claims 1, 3),

8   as well as the entirety of Plaintiffs' failure-to-warn claims (Claims 2, 4) survive § 230 and First

9   Amendment scrutiny. MTD1 Op. at 14-23. And, although the Court dismissed Plaintiffs' product-

10   based negligence claims "*to the extent* such claims are premised on the existence of a duty to protect

11   users from third-party actors," *id*. at 47 (emphasis in original), the Court afforded leave to amend,

12   while also leaving intact Plaintiffs' other claims concerning "defects previously determined by this

13   Court to be product components," *id*. Importantly, Plaintiffs allege personal injuries resulting from

14   all four of these claims. SAMC at ¶¶ 850-53 (Count 1), 867-68, (Count 2), 890-91 (Count 3), 909-10

15   (Count 4). Thus, inasmuch as these claims—and any others which survive Defendants' current motion

16   to dismiss—remain operative, they provide a sufficient predicate for Plaintiffs' derivative claims.

17   Plaintiffs do not dispute that in certain states, derivative claims would be extinguished if

18   premised on personal-injury allegations and/or claims that have been dismissed. Nor, for that matter,

19   do Plaintiffs dispute that wrongful-death and survivorship claims can only exist where victims of

20   Defendants' tortious conduct have died. But Defendants have failed to identify any dismissed

21   personal injury-based allegations or claims which require wholesale dismissal of Counts 16

22   through 18. Rather, they broadly proclaim that these counts should be dismissed "*to the extent* that

23   Plaintiffs' underlying personal injury claims are dismissed or limited." Mot. at 26 (emphasis added).

24   Given that Plaintiffs' personal injury-based claims remain operative, and certain other claims are the

25   subject of Defendants' present motion, Defendants' arguments are either erroneous or premature, or

26   both, and should be squarely rejected by this Court.

27

28

### 2.    *Plaintiffs' state-specific loss-of-consortium claims are not subject to dismissal.*

Defendants claim that a minority of states "explicitly limit loss of consortium claims to spouses and spouses only," Mot. at 27, and that "[o]ther states have explicitly rejected 'filial consortium' claims," *Id.* Such arguments are overbroad or, as they pertain to specific states, misleading. First, Connecticut courts *have not* rejected filial loss of consortium claims for parents of injured minors. *See Perez v. Stanford*, 2021 WL 828560, at *2 (Conn. Super. Ct. Jan. 19, 2021) (recognizing "a common-law claim for loss of filial consortium" in case concerning catastrophic injuries to minor child). Further, in several of the states identified in Defendants' motion, parents can seek loss-of-consortium claims upon the death of a child.[15] And even in those states in which parents cannot sustain independent claims for loss of consortium, they can still recover damages for loss of companionship and society (App'x B, Table 1), and damages for lost earnings and loss of services, App'x B, Table 2), resulting from injuries to children. Thus, even where independent claims for loss of consortium cannot be maintained in certain states, Plaintiffs here can still seek similar forms of relief under the wrongful death, survival, and—where allowed—personal injury-based claims. *See* SAMC at p. 269 ("Prayer for Relief") (seeking damages on behalf of plaintiffs for "*all damages available* for wrongful death and survivorship.") (emphasis added).

With respect to their contention that filial-consortium claims for other, non-parent/child relationships are "without legal foundation," Defendants' reliance on *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 265 P.3d 701, 704 (N.M. 2011), is misplaced. In *Wachocki,* the Supreme Court of New Mexico expressly held that "[w]here the facts demonstrate that two siblings shared a mutually dependent relationship, recovery for loss of consortium may be available." *Wachocki,* 265 P.3d 7 at 704; *see also* NMRA, Civ. UJI 13-1810A (Westlaw NM R CIV UJI) (App'x C) (citing to *Wachocki*

---

[15] *See Giuliani v. Guiler*, 951 S.W.2d 318, 319 (Ky. 1997), *as modified on denial of reh'g* (Oct. 2, 1997) ("Kentucky currently recognizes loss of consortium claims between husband and wife and the claim of a parent for the loss of the child's affection and companionship upon the death of a child."); *Tanner v. City of Sullivan*, 2013 WL 3287068, at *16 (E.D. Mo. June 28, 2013) ("The physical, emotional, and psychological relationship between a parent and child must be considered when computing the loss of consortium for the loss of a parent for a child or the loss of a child for a parent.").

1   and noting that "a sibling" can recover for loss of consortium).

2   **3.      Consortium Plaintiffs can recover for medical expenses.**

3   Defendants' assertion that medical expenses are not recoverable "under a theory of loss of

4   consortium or loss of society" in California, Louisiana, Arizona, and Illinois is, again, overbroad and

5   incomplete. Mot. at 29. Although medical expenses may not be recoverable under the loss-of-

6   consortium claim in certain states, parents of injured children can still recover medical expenses for

7   injuries sustained by children in all four states. *See, e.g.*, *Finnerty v. Cummings*, 22 P.2d 37, 38 (Cal.

8   Ct. App. 1933) ("where the usual relationship of parent and child exists in which the parent exercises

9   his right to the child's services and performs his duty to support it, the right to recover for loss of . . .

10  medical expenses incurred in treating its injuries belongs to the parent"); *Richardson v. Tate*, 269 So.

11  2d 278, 282 (La. Ct. App. 1972) (allowing recovery of injured children's medical expenses); *Est. of

12  DeSela v. Prescott Unified Sch. Dist. No. 1*, 249 P.3d 767, 767-68 (Ariz. 2011) ("we hold that both

13  the minor and the minor's parents are entitled to recover pre-majority medical expenses . . ."); *Worley

14  v. Barger*, 807 N.E.2d 1222, 1225 (Ill. Ct. App. 2004) ("it is well established that a parent is allowed

15  to recover the child's loss of earnings and medical and caretaking expenses during the

16  child's minority").

17  **4.      Parents can pursue survival and wrongful-death actions concurrently.**

18  Defendants' contention that Indiana, Florida, Virginia, and Wyoming prohibit survival claims

19  "where the decedent die[s] as a result of their injuries" paints an incomplete picture. Mot. at 30. All

20  four states permit survival and wrongful-death claims to be pled in the alternative where, as here,

21  causation is contested. *See Smith v. Johnston*, 854 N.E.2d 388, 391–92 (Ind. Ct. App. 2006)

22  (permitting wrongful death and survival claims in the alternative); *Capone v. Philip Morris USA, Inc.*,

23  116 So. 3d 363, 378 (Fla. 2013) ("it is permissible for a personal representative to pursue both a claim

24  for survival damages and an alternative wrongful death claim where the cause of the decedent's death

25  may be disputed by the parties"); *Centra Health, Inc. v. Mullins*, 670 S.E.2d 708, 717–18 (Va. 2009)

26  (permitting pleading survival and wrongful-death claims in the alternative); *Osborne v. Empres at

27  Riverton, LLC*, 2023 WL 4064267, at *5 (Wyo. Dist. May 8, 2023) (denying defendants' motion to

28  dismiss and/or summary judgment on plaintiff's survival claim pled in the alternative).

Further, under certain circumstances, survival claims continue when there are multiple injuries, only some of which cause death. *See, e.g.*, Ind. Code Ann. § 34-9-3-4 (allowing action by personal representative for personal injuries not causing death); *Harris v. R.J. Reynolds Tobacco Co.*, 383 F. Supp. 3d 1315, 1324 (M.D. Fla. 2019), *rev'd on other grounds,*, 981 F.3d 880 (11th Cir. 2020) ("[T]he Court remains persuaded that where a tortfeasor's conduct causes multiple injuries, one of which results in death and at least one of which does not result in death, a plaintiff can recover wrongful death damages with respect to the fatal injury as well as survival damages with respect to the non-fatal injury."); *Gaston v. Life Care Centers of Am., Inc.*, 488 P.3d 929, 937 (Wyo. 2021) ("separate survival and wrongful death claims may be maintained when the same defendant commits multiple negligent acts causing separate injuries to the decedent, some non-fatal and others fatal").

Accordingly, Defendants' request to dismiss or limit survival claims brought on behalf of deceased parties under Indiana, Florida, Virginia, and Wyoming law should be denied.

## C.      Meta is not entitled to dismissal of Plaintiffs' CSAM claims (Counts 12 & 14).

For their part, the Meta Defendants ("Meta") challenge Counts 12 and 14, in which Plaintiffs allege that Meta knowingly receive and possess CSAM in violation of 18 U.S.C. § 2252 and 18 U.S.C. § 2252A. Importantly, Plaintiffs do not seek to impose liability for Meta's *publication* of third-party content. Instead, Counts 12 and 14 plausibly allege that Meta has violated federal law through its knowing *receipt and possession* of CSAM, coupled with its intentional conduct leading to widespread failures to report such CSAM to the National Center for Missing & Exploited Children ("NCMEC").

### 1.      Section 230 does not bar Counts 12 and 14.

"Before giving companies immunity from civil claims for knowingly hosting illegal [CSAM], we should be certain that is what the law demands." *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 18 (2020) (cleaned up) (statement of Justice Thomas respecting denial of certiorari). Here, it is not. Congress enacted § 230 to protect children, not to immunize social-media platforms for knowingly receiving and possessing CSAM. *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1047 (9th Cir. 2019) ("[t]he history of § 230(c)(2) shows that access to pornography was Congress's motivating concern"); *see also Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012) ("the 'evil' of child pornography 'so overwhelmingly outweighs the expressive

1    interests, if any, at stake' in this form of communication that it lies categorically beyond constitutional

2    protection"). Section 230 "only protects from liability (1) a provider or user of an interactive computer

3    service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker

4    (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570

5    F.3d 1096, 1100-1101 (9th Cir. 2009).

6           In its prior ruling, this Court held that a claim treats a defendant as "the publisher or speaker"

7    of third-party content where it "is based on 'behavior that is *identical* to publishing or speaking.'"

8    MTD1 Op. at 11 (emphasis in original) (quoting *Barnes*, 570 F.3d at 1107). Thus, Meta asserts that

9    Plaintiffs may not hold it liable "for hosting or disseminating third-party content." *See* Mot. at 21.

10   Sadly, it is true that Meta hosts and disseminates CSAM posted by third parties.[16] But that is *not* the

11   behavior on which Plaintiffs' CSAM claims are based. As discussed in greater detail below, the

12   SAMC sufficiently alleges Meta's direct, illegal, knowing, and unauthorized *possession* of CSAM.

13   Receipt and possession of child pornography, alone, are criminal acts. *See* 18 U.S.C. §§ 2252(a)(2),

14   2252A(a)(5)(B). If Meta's argument is taken seriously, then it may immunize itself from liability for

15   *possessing* CSAM *by publishing it*. That is perverse and it is wrong.

16          The unreported decision in *Doe v. Twitter, Inc.*, 2023 WL 3220912 (9th Cir. May 3, 2023), is

17   not to the contrary. In that case—which is not precedent, *see* Ninth Circuit R. 36-3(a)—the Ninth

18   Circuit found that the complaint targeted "activity that can be boiled down to deciding whether to

19   exclude material that third parties seek to post online." *Id.* at *2. While that holding is wrong,[17] it is

20   understandable, given that 18 U.S.C. § 2252 and 2252A bar not only the receipt and possession of

21   CSAM but also its distribution. 18 U.S.C. §§ 2252(a)(1), 2252A(a)(2). Again, however, distribution

22   is not what Plaintiffs challenge here. Rather, Plaintiffs allege that Meta itself knowingly receives and

23   possesses CSAM—*irrespective of whether Meta also published that CSAM*. *See MG Freesites*, 2022

24

25   [16] Plaintiffs assume that by "host," Meta means that it stores content on a server or other computer *so
     that it can be accessed*," "Host," Oxford English Dictionary, https://www.oed.com (emphasis added).

26

27   [17] The better reasoned analysis is that § 230 does not apply to CSAM at all because it is not "legally
     cognizable information." *See Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at *22 (N.D. Ala. Feb.
28   9, 2022).

1   WL 407147, at *22 ("Plaintiffs' section 2252 and 2252A claims allege that Defendants are not only

2   distributors of but also receivers and possessors of child pornography. Receipt and possession of child

3   pornography, alone, are criminal acts, and are not shielded by Section 230 immunity.").

4               **2.      *Plaintiffs adequately allege that Meta violated***

5                        ***18 U.S.C. §§ 2252 and 2252A(5)(B).***

6        18 U.S.C. §§ 2252 and 2252A criminalize the possession of CSAM.[18] *See* Mot. at 22. The

7   SAMC alleges Meta knowingly possessed CSAM depicting certain Plaintiffs. Accepting these

8   allegations as true, Meta—through its Facebook and Instagram apps—is no different from the

9   thousands who are convicted of non-production child pornography offenses in the United States each

10  year. *See, e.g.*, *MG Freesites*, 2022 WL 407147, at *22; *see also Osborne v. Ohio*, 495 U.S. 103, 110

11  (1990) ("given the importance of the State's interest in protecting the victims of child pornography,"

12  the State is justified in "attempting to stamp out this vice at all levels in the distribution chain");

13  *United States v. Adams*, 343 F.3d 1024, 1033 (9th Cir. 2003) (the statute criminalizing possession of

14  CSAM is part of the larger congressional scheme to eradicate the market for child pornography).

15       Under Sections 2252 and 2252A, the "knowingly" standard refers to Meta's knowledge that

16  material on its servers contains CSAM depicting certain Plaintiffs. Circumstantial evidence can be

17  used to prove any fact, including facts from which another fact is to be inferred. *United States v.*

18  *Nelson*, 419 F.2d 1237 (9th Cir. 1969); *see also United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir.

19  2011) (evidence that a person has searched for child pornography on the internet and has a computer

20  containing child-pornography images can count as circumstantial evidence that a person has

21  knowingly received child pornography). This includes evidence of material in a computer's cache.

22  *United States v. Romm*, 455 F.3d 990, 999–1000 (9th Cir. 2006) ("to possess the images in the cache,

23  the defendant must, at a minimum, know that the unlawful images are stored on a disk or other

24  tangible material in his possession"). Knowledge can also be imputed even when a defendant has not

25  _____

26  [18] "Any person who, while a minor, was a victim of a violation of" §§ 2252 and 2252A, among others, "and who suffers personal injury as a result of such violation . . . may sue in any appropriate United

27  States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other

28  litigation costs reasonably incurred." 18 U.S.C. § 2255(a).

viewed CSAM. *United States v. Ruiz-Castelo*, 835 F. App'x 187, 189 (9th Cir. 2020) (defendant only needs knowledge that the video contained sexually explicit conduct with a minor, it is not necessary to prove that defendant necessarily viewed the video).

Actual possession exists when there is direct physical control over a thing. *Henderson v. United States*, 575 U.S. 622, 626 (2015). Constructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object. *See United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011); *United States v. Little*, 864 F.3d 1283, 1288–89 (11th Cir. 2017). The word "violation" in § 2255, *see supra* note 18, does not mean "conviction" and "the predicate acts" required for civil liability need not "be established beyond a reasonable doubt." *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014).

In this case, as alleged in the SAMC and several Amended Short Form Complaints ("ASFC"), Meta "knowingly" possessed Plaintiff's CSAM—sometimes "actually," sometimes "constructively," and sometimes both. Several ASFCs,[19] along with the complaint in *State of New Mexico v. Meta Platforms, Inc., et al.* (Exhibit B to the SAMC, relevant paragraphs incorporated by reference in SAMC ¶ 391B), allege sufficient facts concerning Meta's knowledge and failure to timely and properly report CSAM to NCMEC as required by 18 U.S.C. § 2258A. In the ASFC filed in *Ann Frank v. Meta Platforms, Inc.*, for example, the plaintiff alleges that "[f]rom approximately February 7, 2020 to April 28, 2020, Ann submitted to Facebook over 67 individual 'Photo Removal Requests' and similar reports of CSAM depicting her," but "Meta acted on fewer than 10 of Ann's reports and often determined that the CSAM images depicting her did not violate Meta's community standards." No. 4:23-cv-04686-YGR, Doc 14, Attach. ¶¶ 49-50 (Jan. 2, 2024). Ann continued to make numerous "Photo Removal Requests" and reports of CSAM depicting her to Meta in 2021, only to be met with the same response from Meta that "all of Ann's reports were determined to not violate Meta's community guidelines. Ann requested a second review on several occasions with the same results."

---

[19] *D.H. v. Meta Platforms, Inc. et al.*, 4:22-cv-04888-YGR, Doc. 28, Attach. ¶¶ 1–70; *K.S. v. Meta Platforms, Inc. et al.*, 4:23-cv-05146-YGR, Doc. 11, Attach. ¶¶ 1–50; *Ann Frank v. Meta Platforms, Inc. et al.*, 4:23-cv-04686-YGR, Doc 14, Attach. ¶¶ 1–94; *Alice Doe v. Meta Platforms, Inc. et al.*, 4:23-cv-04719-YGR, Doc 10, Attach. ¶¶ 1–63; *C.F. on behalf of her minor child A.K. v. Meta Platforms, Inc. et al.*, 4:23-cv-04682-YGR, Doc 10, Attach. ¶¶ 1–34.

1    *Id.* at ¶¶ 60-63. Ann further alleges that "from approximately October 26, 2017 to the present date,

2    Meta has possessed specific knowledge of Ann's identity, age, name, and her status as a minor victim

3    of CSAM."[20] *Id.* at ¶ 79.

4        In summary, Plaintiffs have adequately pleaded that Meta possessed CSAM depicting certain

5    Plaintiffs in violation of Sections 2252 and 2252A(a)(5)(B). Plaintiffs sufficiently plead allegations

6    to support their claims for which Meta has no defense, immunity, or exemption from liability.

7            **3.    *Plaintiffs' CSAM claims do not seek to hold Meta vicariously liable for***

8                 ***the conduct of third parties.***

9        Finally, Plaintiffs sufficiently allege that, despite Meta's actual or constructive knowledge of

10    its possession of CSAM, Meta failed to report that material to NCMEC, in violation of 18 U.S.C.

11    §§ 2252 and 2252A(5)(B). Contrary to Meta's arguments, Mot. at 24, Plaintiffs have not alleged

12    vicarious liability against Meta for third-party violations of CSAM distribution occurring on Meta's

13    apps. Rather, Meta is directly liability under 18 U.S.C. § 2255.

14        The SAMC and several ASFCs allege that Meta ignored Plaintiffs' and law enforcement's

15    reports of CSAM and intentionally or recklessly disregarded these reports, resulting in liability. There

16    is no safe harbor for such misconduct. *See* 18 U.S.C. § 2258B(b) (no safe harbor for "intentional

17    misconduct" or failures to act "with reckless disregard" for others' safety). Simply stated, Meta cannot

18    bury its head in the sand and feign ignorance over its knowing receipt and *continued* possession of

19    child pornography. Plaintiffs' claims sufficiently allege plausible facts supporting Meta's violations

20    of 18 U.S.C. §§ 2252 and 2252A.

21    **III.    CONCLUSION**

22        For all of the foregoing reasons, the Court should deny Defendants' motion to dismiss Counts

23    5, 12, 14, and 16 through 18.

24

25    [20] In October 2017, law enforcement arrested and criminally charged one of Ann's perpetrators who
      used Facebook to sexually assault, exploit, and post CSAM depicting Ann. This perpetrator was
26    ultimately convicted and imprisoned. *Ann Frank*, ¶¶ 26, 33 and 34. In July 2021, law enforcement
      arrested and criminally charged another of Ann's perpetrators who also used Facebook to sexually
27    assault, exploit, and post CSAM depicting Ann. "At the time, prosecutors noted that the details of the
      digital crime scene and associated charges were 'too disturbing' to publicly release." *Id.* at ¶ 65.
28

# APPENDIX A

## Jurisdiction Survey As To The Recognition Of A General Tort Duty

| | |
|---|---|
| **AL** | *Fluker v. United States,* 2014 WL 5363870, at *2 (N.D. Ala. Oct. 21, 2014) ("Alabama law places a duty on every person ... to use reasonable care to avoid causing injury or damages to a person."). |
| **AK** | *Morris v. Farley Enter., Inc.*, 661 P.2d 167, 168 (Alaska 1983) ("[The] general principles of negligence law [is that] every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others."). |
| **AZ** | *Law v. Superior Court*, 755 P.2d 1135, 1141 (Ariz. 1988) ("Everyone has a duty to use due care to prevent injury to others."). |
| **AR** | *Driggers v. Locke*, 913 S.W.2d 269, 276 (Ark. 1996) ("[T]he general rule is that one has a duty to use ordinary care for his or her own safety and for the safety of others, unless a statute or rule of law provides otherwise."). |
| **CA** | Cal. Civ. Code § 1714 ("Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person…"). |
| **CO** | *Greenberg v. Perkins*, 845 P.2d 530, 537 (Colo. 1993) ("[W]e have recognized that people owe a duty to use reasonable care with regard to their affirmative conduct and that such a duty extends to all who may foreseeably be injured if that conduct is negligently carried out."). |
| **CT** | *Doe v. Cochran*, 210 A.3d 469, 478 (Conn. 2019) ("The default assumption of the common law, then, is that one owes a duty to exercise due care in one's affirmative conduct with respect to all people, insofar as one's negligent actions may foreseeably harm them."). |
| **DE** | *McGrellis v. Bromwell,* 2019 WL 1422901, at *5 (Del. Super. Ct. Mar. 29, 2019), *aff'd,* 225 A.3d 721 (Del. 2020) ("Absent any basis for a heightened duty, each person owes a duty to those who may foreseeably be harmed by his or her action to take such steps as a |

| | |
|---|---|
| | reasonably prudent person would take in similar circumstances to avoid such harm to others."). |
| **FL** | *Sanderson v. Eckerd Corp.*, 780 So. 2d 930, 932 (Fla. Dist. Ct. App. 2001) ("A legal duty will arise whenever human endeavor creates a generalized and foreseeable risk of harming others."). |
| **GA** | *Weller v. Blake*, 726 S.E.2d 698, 703 (Ga. Ct. App. 2012) ("This legal duty may arise from the general duty one owes to all the world not to subject them to an unreasonable risk of harm."). |
| **HI** | *Kau v. City & County of Honolulu,* 722 P.2d 1043, 1047 (Haw. Ct. App. 1986) ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."). |
| **ID** | *Ransom v. City of Garden City*, 113 Idaho 202, 206 (Idaho 1987) ("We recognized a general duty of care: 'one owes the duty to every person in our society to use reasonable care to avoid injury[.]'"). |
| **IL** | *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 238, (Ill. 2007) ("[I]t is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act."). |
| **IN** | *Johnson v. Scandia Associates, Inc.*, 717 N.E.2d 24, 29 (Ind. 1999) ("Tort law imposes on all persons who engage in risk-creating activities the duty of reasonable care under the circumstances."). |
| **IA** | *Feld v. Borkowski*, 790 N.W.2d 72, 75 (Iowa 2010) ("As a general rule, our law recognizes that every person owes a duty to exercise reasonable care to avoid causing injuries to others."). |
| **KS** | *Crow v. Brezenski*, 2023 WL 8803432, at *3 (D. Kan. Dec. 20, 2023) ("In Kansas, there is a 'universal rule' to the effect that everyone is under a duty to exercise reasonable care to avoid causing harm to others."). |

| KY | *Madison Capital Co. v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 934 (W.D. Ky. 2011) ("Kentucky courts recognize a 'universal duty' of care under which 'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'"). |
|---|---|
| LA | *Hoffman v. Theriot*, 249 So. 3d 297, 301 (La. Ct. App. 2018) ("There is an almost universal duty on the part of a defendant to use reasonable care to avoid injury to another."). |
| ME | *Boivin v. Somatex, Inc.*, 2022 Me. 44, 6 (Me. 2022) ("The duty of reasonable care that applies in an action for general negligence is a 'duty to act reasonably to avoid causing *physical harm* to others.'"). |
| MD | *Moore v. Myers*, 868 A.2d 954, 968 (Md. Ct. Spec. App. 2005) ("The notion of duty is founded on the 'responsibility each of us bears to exercise due care to avoid unreasonable risks of harm to others.'"). |
| MA | *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) ("As a general principle of tort law, every actor has a duty to exercise reasonable care to avoid physical harm to others."). |
| MI | *Jahnke v. Allen*, 865 N.W.2d 49, 52 (Mich. Ct. App. 2014) ("[T]he duty owed in a general negligence claim is that every person who engages in the performance of an undertaking has an obligation to use due care or to act so as not to unreasonably endanger the person or property of another."). |
| MN | *Doe v. Blake Sch.*, 310 F. Supp. 3d 969, 978 (D. Minn. 2018) ("In Minnesota, a defendant owes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff."). |
| MS | *Weeks v. Huntington Ingalls Inc.,* 2012 WL 5383371, at *6 (S.D. Miss. Oct. 31, 2012) ("Mississippi has long imposed on every person who undertakes an action a duty of reasonable care to protect against causing injury to others."). |
| MO | *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 176 (Mo. Ct. App. 2021) ("[U]nder the general law of torts, '[e]very person is required to take ordinary care against injuries reasonably to be anticipated.'"). |

| MT | *Md. Cas. Co. v. Asbestos Claims Court*, 460 P.3d 882, 894 (Mont. 2020) ("Apart from duties imposed by statute, statutory and common law authorities recognize that all individuals generally have a common law duty to use reasonable care under the circumstances to avoid reasonably foreseeable risks of harm to the person or property of others."). |
| --- | --- |
| NE | *Danler v. Rosen Auto Leasing*, 609 N.W.2d 27, 31–32 (Neb. 2000) ("We have recognized that a common-law duty exists to use due care so as not to negligently injure another person."). |
| NV | Nev. J.I. 4.3 (2018) ("Generally, everyone has a duty to exercise reasonable care when their conduct creates a risk of physical harm to others."). |
| NH | *Grady v. Jones Lang LaSalle Constr. Co., Inc.*, 193 A.3d 283, 287 (N.H. 2018) ("All persons have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm."). |
| NJ | *Williamson v. Waldman*, 696 A.2d 14, 24 (N.J. 1997) ("The overriding principle governing the determination of a duty is the general obligation to avoid foreseeable harm to others."). |
| NM | NMRA, Civ. UJI 13-1604 ("Every person has a duty to exercise ordinary care for the safety of the person and the property of others."). |
| NY | *In re September 11 Litig.*, 280 F. Supp. 2d 279, 47 (S.D.N.Y. 2003) ("Duty is imposed on all persons not to place others at risk of harm through their actions. The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case."). |
| NC | N.C.P.I.-Civ. 102.11 ("Every person is under a duty to use ordinary care to protect himself and others from injury[.]"). |
| ND | N.D. Cent. Code § 9-10-06 ("A person is responsible not only for the result of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or self."). |

| | |
|---|---|
| OH | *Hendrickson v. Grider*, 70 N.E.3d 604, 622 (Ohio Ct. App. 2016) ("[A]n individual generally possesses a duty to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate."). |
| OK | *Smith v. Cent. Mine Equip. Co.*, 876 F. Supp. 2d 1261, 1268 (W.D. Okla. 2012) ("It is fundamental that every person or entity must use ordinary care to avoid a foreseeable risk of injury to other persons."). |
| OR | *Schwerdt v. Myers*, 683 P.2d 547, 548 (Or. 1984) ("In general it is the duty of every person in our society to use reasonable care in order to avoid damage to himself or to another person in any situation in which it would reasonably be anticipated that a failure to use such care might result in such damage."). |
| PA | Pa. SSJI (Civ), § 13.10 Negligence (2020) ("A person must act in a reasonably careful manner to avoid [injuring] others."). |
| RI | *Liu v. Striuli,* 36 F. Supp. 2d 452, 466 (D.R.I. 1999) ("Where the risk of injury to a party is reasonably foreseeable, the law will impose a duty upon the defendant to take reasonable steps to avoid that injury."). |
| SC | *Dorrell v. South Carolina Dept. of Transp.*, 605 S.E.2d 12, 15 (S.C. 2004) ("[The] common law duty of due care includes the duty to avoid damage or injury to foreseeable plaintiffs."). |
| SD | *Larmon v. United States*, 200 F. Supp. 3d 896, 904 n.7 (D.S.D. 2016) ("[T]he general duty to exercise reasonable care for the benefit of others."). |
| TN | *Draper v. Westerfield*, 181 S.W.3d 283, 291 (Tenn. 2005) ("In general, all persons have a broad duty to exercise reasonable care to avoid causing foreseeable injury to others."). |
| TX | *Midwest Employers Cas. v. Harpole*, 293 S.W.3d 770, 776 (Tex. App. 2009) ("Every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others."). |
| UT | *Reighard v. Yates*, 285 P.3d 1168, 1179 (Utah 2012) ("[A]s a general rule, we all have a duty to exercise care when engaging in affirmative conduct that creates a risk of physical harm to others."). |

| VT | *Deveneau v. Wielt*, 144 A.3d 324, 326 (Vt. 2016) ("Vermont common law imposes a general duty of ordinary care: to act as a reasonably prudent person would in similar circumstances."). |
| VA | *Khadim v. Lab. Corp. of Am.*, 838 F. Supp. 2d 448, 458 n.8 (W.D. Va. 2011) ("It has long been the law of Virginia that a duty extends to anyone who could reasonably and foreseeably be injured by one's failure to use ordinary care."). |
| WA | *Norg v. City of Seattle*, 522 P.3d 580, 587 (Wash. 2023) ("At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others."). |
| WV | *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 623 (W. Va. 2002) ("[T]his Court recognized that one who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm."). |
| WI | *Mohr v. St. Paul Fire & Marine Ins.*, 674 N.W.2d 576, 592 (Wis. Ct. App. 2003) ("In Wisconsin, the rule is that every person has a duty to use ordinary care in all of his or her activities[.]"). |
| WY | *Wood v. CRST Expedited, Inc.*, 419 P.3d 503, 510 (Wyo. 2018) ("One owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury."). |

**APPENDIX B**

| TABLE 1 [FROM SECTION II.B.2 (Pg. 18)]<br><br>**Even in those states in which parents cannot sustain independent claims for loss of consortium, they can still recover damages for loss of companionship and society.** | |
|---|---|
| **MD** | *Spangler v. McQuitty*, 141 A.3d 156, 165 (Md. 2016) (where the decedent is a minor child, wrongful death statute provides damages for loss of society, companionship, and comfort). |
| **MI** | *Sizemore v. Smock*, 422 N.W.2d 666, 672 (Mich. 1988) (recognizing "filial consortium damages under the state's wrongful death act"). |
| **MN** | *Fussner v. Andert*, 113 N.W.2d 355, 360 (Minn. 1961) (parent may recover for loss of advice, comfort, assistance, and protection in action for wrongful death of a minor child). |
| **MS** | *Kopera v. Moschella*, 400 F. Supp. 131, 135 (S.D. Miss. 1975), *aff'd*, 526 F.2d 1405 (5th Cir. 1976) (awarding "loss of society and companionship of their only child" to parents of deceased child). |
| **NH** | *Guilfoy v. United Servs. Auto. Ass'n*, 898 A.2d 502, 504 (N.H. 2006) ("where the decedent is a parent of a minor child or children, the trier of fact may award damages to such child or children for the loss of familial relationship . . .") (citing N.H. Rev. Stat. Ann. § 556:12). |
| **SC** | *Scott v. Porter*, 530 S.E.2d 389, 394 (S.C. Ct. App. 2000) (damages recoverable in action for wrongful death of child include "loss of companionship" and "deprivation of the use and comfort of the intestate's society"). |
| **SD** | *Anderson v. Lale*, 216 N.W.2d 152, 158 (S.D. 1974) ("in a wrongful death action, wherein the decedent was a minor, it is proper for the court to instruct the jury that loss of companionship and society . . . are proper elements of damage for them to consider in reaching their verdict."). |
| **VA** | *Sawyer v. United States*, 465 F. Supp. 282, 291-293 (E.D. Va. 1978) (in calculating damages in action for wrongful death of son, trier of fact is to consider, *inter alia*, "society, companionship, [and] comfort"). |

| | **TABLE 2 [FROM SECTION II.B.2 (Pg. 18)]** |
|---|---|
| | **Even in those states in which parents cannot sustain independent claims for loss of consortium, they can still recover damages for lost earnings and loss of services.** |
| AL | *Hannon v. Duncan*, 594 So. 2d 85, 93 (Ala. 1992) ("A father may recover as damages resulting from the negligent bodily injury of his minor child . . . compensation for loss of services") (internal citation omitted). |
| AR | *Interurban Ry. Co. v. Trainer*, 233 S.W. 816, 817 (Ark. 1921) ("The measure of damages to a parent for killing his child is the pecuniary value of his services during minority."). |
| CA | *See Baxter v. Superior Court*, 19 Cal. 3d 461, 463 (1977) (recognizing parents' right to recover for loss of earnings and services of economic value). |
| CO | *Rudnicki v. Bianco*, 501 P.3d 776, 780 (Colo. 2022) (acknowledging parents' claims for injured child's earning capacity and loss of household and similar services). |
| DE | *Beck v. Claymont Sch. Dist.*, 1983 WL 884220, at *1 (Del. Super. Ct. July 25, 1983) (acknowledging parental claims for loss of services). |
| GA | *S. Fulton Med. Ctr., Inc. v. Poe*, 480 S.E.2d 40, 45 (Ga. Ct. App. 1996) (for parent of deceased minor, "[i]t is established that loss of services may be awarded in a wrongful death action as part of the full value of the deceased's life."). |
| IL | Ill. Pattern Jury Instr.-Civ. 30.08 ("In actions for damages arising out of an injury to an unemancipated minor, the loss of earnings, medical and caretaking expense during the child's minority are recoverable by the parents."). |
| IN | *Dearborn Fabricating & Eng'g Corp., Inc. v. Wickham*, 551 N.E.2d 1135, 1136 (Ind. 1990) ("injuries to a child will entitle a parent to seek damages for loss of the child's services, society, and companionship."). |
| KA | *Betz v. Farm Bureau Mut. Ins. Agency of Kan., Inc.*, 8 P.3d 756, 760 (Kan. 2000) ("In case of injury to a minor two causes of action arise: one in favor of the infant for his personal injuries, and one in favor of the parent for loss of services."). |
| MD | *Michaels v. Nemethvargo*, 571 A.2d 850, 850 (Md. App. Ct. 1990) ("We agree . . . that there |

| | | is a valid claim for the loss of services and necessary expenses . . .”). |
|---|---|---|
| | ME | *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 22, 942 A.2d 663, 669 (“[t]he term ‘loss of services’ is equivalent to loss of consortium and is therefore included as a type of loss that is compensable under the Wrongful Death Act.”). |
| | MI | *Rohm v. Stroud*, 194 N.W.2d 307, 309 (Mich. 1972) (“a parent, entitled to the services of his minor child does suffer a pecuniary loss when wrongfully deprived of those services by the negligent act of another”) |
| | MN | *Father A v. Moran*, 469 N.W.2d 503, 506 (Minn. Ct. App. 1991) (parents may recover damages based on injury to their child “for loss of the child’s earnings, contributions, and services that the parents would have received until the child reached majority age”). |
| | MO | *R.M. v. City of St. Charles Pub. Sch. Dist.*, 2016 WL 2910265, at *8 (E.D. Mo. May 19, 2016) (“[w]hen a minor is injured because of another’s fault, two causes of action arise: the minor’s claim for damages for personal injuries and the parents’ claim for loss of services and expenses necessarily incurred by them for the minor’s medical treatment”) (internal citation omitted). |
| | MS | *Wright v. Standard Oil Co.*, 470 F.2d 1280, 1287 (5th Cir. 1972) (under Mississippi law, holding district court erred in reducing mother’s award for loss of services). |
| | NH | *Siciliano v. Capitol City Shows, Inc.*, 475 A.2d 19, 21 (N.H. 1984) (under New Hampshire law, parent may recover for pecuniary damages “such as loss of services”). |
| | NY | *Maley v. Children’s Bus Serv., Inc.,* 117 N.Y.S.2d 888, 890 (Sup. Ct. 1952), *aff’d*, 125 N.Y.S.2d 643 (App. Div. 1953) (awarding damages for loss of child’s services). |
| | OR | *Beerbower v. State ex rel. Oregon Health Sciences Univ.*, 736 P.2d 596, 598-99 (Or. Ct. App. 1987) (damages recoverable under ORS 30.010(1) include “loss of the child’s services”). |
| | SC | *Wright v. Colleton Cnty. Sch. Dist.*, 391 S.E.2d 564, 569 (S.C. 1990) (“we find that the parent’s claims for loss of services and medical expenses are within the statutory definition of ‘loss’ . . . and are therefore recoverable”) (internal citations omitted). |

| SD | *In re Certification of Questions of Law*, 544 N.W.2d 183, 193 (S.D. 1996) ("We do . . . recognize a parent's right to assert claims for loss of the child's services and for medical and other consequential damages incurred in caring for the child."). |
| TX | *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983) ("services and earnings of an unemancipated minor belong to his parents"). |
| VA | *Watson v. Daniel*, 183 S.E. 183, 187 (Va. 1936) (affirming award to father for loss of child's services). |

**Appendix C**

**NMRA, CIV. UJI 13-1810A. LOSS OF CONSORTIUM; DEFINITION**

Loss of consortium is a claim to recover compensation for damage to certain relationships. To recover for loss of consortium, _____ (name of loss of consortium claimant or names of loss of consortium claimants) must show that _____ (name of loss of consortium claimant or names of loss of consortium claimants) and [ _____ (name of injured party)] [ _____ (name of decedent)] had a mutually dependent relationship. Mutual dependence means that _____ (name of loss of consortium claimant or names of loss of consortium claimants) and [ _____ (name of injured party)] [ _____ (name of decedent)] relied on the relationship and could not enjoy life in the same way once [the injury took place] [after the death].

In deciding whether a relationship is mutually dependent, factors to consider may include:

[The duration of the relationship;]

[The degree of mutual dependence;]

[The extent of common contributions to a life together;]

[The extent and quality of shared experience;]

[Whether _____ (name of loss of consortium claimant or names of loss of consortium claimants) and [ _____ (name of injured party)] [ _____ (name of decedent)] were members of the same household;]

[Their emotional reliance on one another;]

[The particulars of their day-to-day relationship;]

[The manner in which _____ (name of loss of consortium claimant or names of loss of consortium claimants) and [ _____ (name of injured party)] [ _____ (name of deceased party)] related to each other in addressing life's day-to-day requirements;]

[Other _____.]

**USE NOTES**: This instruction should be given when there is a jury question as to whether a claimant or claimants had a sufficiently close relationship with an injured or a deceased person to recover for loss of consortium. When this instruction is given, UJI 13-1810B NMRA should also be given.

1    Dated: February 5, 2024                     Respectfully submitted,

2                                                */s/ Lexi J. Hazam*
                                                 LEXI J. HAZAM
3                                                **LIEFF CABRASER HEIMANN &**
                                                 **BERNSTEIN, LLP**
4                                                275 BATTERY STREET, 29TH FLOOR
                                                 SAN FRANCISCO, CA 94111-3339
5                                                Telephone: 415-956-1000
                                                 lhazam@lchb.com
6

7                                                PREVIN WARREN
                                                 **MOTLEY RICE LLC**
8                                                401 9th Street NW Suite 630
                                                 Washington DC 20004
9                                                T: 202-386-9610
                                                 pwarren@motleyrice.com
10

11                                               *Plaintiffs' Co-Lead Counsel*

12                                               CHRISTOPHER A. SEEGER
                                                 **SEEGER WEISS, LLP**
13                                               55 CHALLENGER ROAD, 6TH FLOOR
                                                 RIDGEFIELD PARK, NJ 07660
14                                               Telephone: 973-639-9100
                                                 Facsimile: 973-679-8656
15                                               cseeger@seegerweiss.com
16

17                                               *Plaintiffs' Counsel to Co-Lead Counsel*

18                                               JENNIE LEE ANDERSON
                                                 **ANDRUS ANDERSON, LLP**
19                                               155 MONTGOMERY STREET, SUITE 900
                                                 SAN FRANCISCO, CA 94104
20                                               Telephone: 415-986-1400
                                                 jennie@andrusanderson.com
21

22                                               *Plaintiffs' Liaison Counsel*

23                                               MATTHEW BERGMAN
                                                 GLENN DRAPER
24                                               **SOCIAL MEDIA VICTIMS LAW CENTER**
                                                 821 SECOND AVENUE, SUITE 2100
25                                               SEATTLE, WA 98104
                                                 Telephone: 206-741-4862
26                                               matt@socialmediavictims.org
                                                 glenn@socialmediavictims.org
27

28                                               JAMES J. BILSBORROW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502

37    PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS 5, 12, 14, 16-18
CASE NO. 4:22-MD-03047-YGR

Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170

38

Telephone: 212-372-3030
jamesmarsh@marshlaw.com

**_Attorneys for Individual Plaintiffs_**