*[Submitting Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-md-03047-YGR<br><br>MDL No. 3047 |
| ––––––––––––––––––––––––––<br><br>This Document Relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE PERSONAL INJURY PLAINTIFFS' CONSUMER PROTECTION CLAIMS (COUNT 7) AND META'S MOTION TO DISMISS THE PERSONAL INJURY PLAINTIFFS' MISREPRESENTATION CLAIMS (COUNTS 8-9)**<br><br>Judge Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................2

I.    PLAINTIFFS ADEQUATELY ALLEGE UDAP CLAIMS (COUNT 7). ..2

    A.    State UDAP statutes apply to Defendants' misleading omissions about the safety of their products. ...............................................2

    B.    Section 230 does not bar Plaintiffs' UDAP claims. .........................5

    C.    Plaintiffs plead actionable omissions. ............................................7

        1.    Defendants' misleading omissions are not matters of opinion. ...........................................................................7

        2.    Defendants have no First Amendment right to lie to Congress. .....................................................................9

    D.    Plaintiffs sufficiently allege reliance. ...........................................11

    E.    Plaintiffs have sustained ascertainable losses. ..............................14

II.    META IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' CONCEALMENT CLAIMS (COUNTS 8-9). ........................................16

CONCLUSION .........................................................................................................20

APPENDIX ...............................................................................................................21

# TABLE OF AUTHORITIES

Page

**Cases**

*Acoustic Sys., Inc. v. Wenger Corp.*,
207 F.3d 287 (5th Cir. 2000) ................................................................................. 9

*Alexander v. Carrington Mortg. Servs., LLC*,
23 F.4th 370 (4th Cir. 2022) .................................................................................. 3

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ............................................................................................. 10

*Anderson v. TikTok, Inc.*,
637 F. Supp. 3d 276 (E.D. Pa. 2022) ..................................................................... 6

*Apodaca v. Whirlpool Corp.*,
2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ...................................................... 19

*Arizona v. Google, LLC*,
2022 WL 223907 (Ariz. Super. Ct. Jan. 21, 2022) ............................................... 4

*Aspinall v. Philip Morris Cos. Inc.*,
813 N.E.2d 476 (Mass. 2004) .............................................................................. 30

*Auburn's Gameday Ctr. at Magnolia Corner Owners Ass'n v. Murray*,
138 So. 3d 317 (Ala. Civ. App. 2013) .................................................................. 32

*Azoulai v. BMW of N. Am. LLC*,
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ....................................................... 8

*Batis v. Dun & Bradstreet Holdings, Inc.*,
2023 WL 1870057 (N.D. Cal. 2023) ..................................................................... 9

*Binette v. Dyer Library Ass'n*,
688 A.2d 8988 (Me. 1996) ................................................................................... 30

*BP Am. Prod. Co. v. Patterson*,
263 P.3d 103 (Colo. 2011) ............................................................................. 13, 17

*Bradshaw v. Maiden*,
2015 WL 4720387 (N.C. Super. Ct. Aug. 10, 2015) *aff'd*, 2022 WL
17985671881 (N.C. App. Ct. 2022) ..................................................................... 36

*Bride v. Snap, Inc.*,
2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ........................................................ 6

*Brown v. Adtalem Glob. Educ., Inc.*,
421 F. Supp. 3d 825 (W.D. Mo. 2019) ................................................................ 16

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ...................................................... 4

*Burket v. Hyman Lippitt, P.C.*,
560 F. Supp. 2d 571 (E.D. Mich. 2008), *vacated in part on other grounds*,
2008 WL 2478308 (E.D. Mich. June 17, 2008) ................................................... 33

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Chassels v. Krepps*,

4

   174 A.3d 896 (Md. Ct. Spec. App. 2017) .......................................................... 36

*City of New York v. Lead Indus. Ass'n*,

5

   190 A.D.2d 689 (N.Y. App. Div. 1993) ....................................................... 9, 18

6

*Clark v. Am. Honda Motor Co.*,

7

   528 F. Supp. 3d 1108 (C.D. Cal. 2021) .......................................................... 12

*Cope v. Metro. Life Ins. Co.*,

8

   696 N.E. 2d 1001 (Ohio 1998) ............................................................... 13, 17

9

*Dabush v. Mercedes-Benz USA, LLC*,

   874 A.2d 1110 (N.J. Super. Ct. App. Div. 2005) ............................................. 16

10

*Daniel v. Ford Motor Co.*,

11

   806 F.3d 1217 (9th Cir. 2015) ............................................................... 9, 13

12

*Delahunt v. Cytodyne Techs.*,

   241 F. Supp. 2d 827 (S.D. Ohio 2003) .......................................................... 31

13

*Di Teresi v. Stamford Health Sys., Inc.*,

14

   88 A.3d 1280 (Conn. App. Ct. 2014) ............................................................ 15

15

*Dinsmore v. Gateway Realty of McCook, Inc.*,

   2005 WL 1021655 (Neb. Ct. App. Apr. 26, 2005) .......................................... 20

16

*Doe v. Internet Brands, Inc.*,

   824 F.3d 846 (9th Cir. 2016) .......................................................................... 6

17

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,

18

   365 U.S. 127 (1961) ................................................................................ 10

19

*Eberhart v. LG Elecs. USA, Inc.*,

   188 F. Supp. 3d 401 (D.N.J. 2016) ............................................................... 34

20

*Eberts v. Goderstad*,

   569 F.3d 757 (7th Cir. 2009) ...................................................................... 36

21

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,

22

   48 F.3d 1260 (D.C. Cir. 1995) ............................................................. 10, 19

23

*Elevation 10175, LLC v. Douglas Cnty. Ins. Servs, Inc.*,

   2020 WL 11271852 (Colo. Dist. Ct. Dec. 1, 2020) ......................................... 32

24

*Evers v. FSF Overlake Assocs.*,

25

   77 P.3d 581 (Okla. 2003) .......................................................................... 34

*Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*,

26

   172 P.3d 1021 (Haw. 2007) ................................................................. 20, 32

27

*Falk v. Gen. Motors Corp.*,

   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................ 12

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS COUNTS 7-9
CASE NO. 4:22-MD-03047-YGR

## TABLE OF AUTHORITIES
### (continued)

Page

*Feiler v. Clean Sweep Restoration Servs. of New Engl., LLC,*
2009 WL 3740748 (Conn. Super. Ct. Oct. 20, 2009) ............................................. 15

*Ferguson v. JONAH,*
136 A.3d 447 (N.J. Super. Ct. Law Div. 2014) ...................................................... 15

*First Marblehead Corp. v. House,*
473 F.3d 1 (1st Cir. 2006) ...................................................................................... 17

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora,*
261 F. Supp. 2d 837 (E.D. Mich. 2003) ........................................................... 3, 25

*Garrison v. Louisiana,*
379 U.S. 64 (1964) ................................................................................................ 10

*Gennari v. Weichert Co. Realtors,*
691 A.2d 350 (N.J. 1997) ...................................................................................... 31

*Gibb v. Citicorp Mortg., Inc.,*
518 N.W.2d 910 (Neb. 1994) ........................................................................... 20, 33

*Gilmore v. Wells Fargo Bank N.A.,*
75 F. Supp. 3d 1255 (N.D. Cal. 2014) ................................................................... 17

*Greater Houston Transp. Co. v. Uber Techs., Inc.,*
155 F. Supp. 3d 670 (S.D. Tex. 2015) ..................................................................... 8

*Hahn v. Mirda,*
54 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ............................................................ 17

*Hamilton v. TBC Corp.,*
328 F.R.D. 359 (C.D. Cal. 2018) ........................................................................... 30

*Hanson v. Hackman Corp.,*
2008 WL 4471679 (Kan. Ct. App. 2008) ......................................................... 20, 36

*Haskins v. Symantec Corp.,*
654 F. App'x 338 (9th Cir. 2016) ........................................................................... 12

*Hauter v. Zogarts,*
534 P.2d 377 (Cal. 1975) .................................................................................... 9, 18

*Hawkins v. Medtronic, Inc.,*
62 F. Supp. 3d 1144 (E.D. Cal. 2014) ................................................................... 12

*Heller v. Silverbranch Constr. Corp.,*
382 N.E.2d 1065 (Mass. 1978) ................................................................................ 3

*Herrick v. Grindr LLC,*
306 F. Supp. 3d 579 (S.D.N.Y. 2018) ..................................................................... 6

*HomeAway.com, Inc. v. City of Santa Monica,*
918 F.3d 676 (9th Cir. 2019) ................................................................................... 5

**TABLE OF AUTHORITIES**
(continued)

Page

*Horace Mann Life Ins. Co. v. Nunaley,*
 960 So. 2d 455 (Miss. 2007) .................................................................. 33

*In re Am. Cont'l Corp./Lincoln Savs. and Loan Sec. Litig.,*
 794 F. Supp. 1424 (D. Ariz. 1992) .......................................................... 10

*In re Apple Inc. Sec. Litig.,*
 2020 WL 2857397 (N.D. Cal. June 2, 2020) ................................. 7, 10, 19

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prod. Liab. Litig.,*
 295 F.Supp.3d 927 (N.D. Cal. 2018) ......................................................... 8

*In re Coventry Healthcare, Inc. Sec. Litig.,*
 2011 WL 1230998 (D. Md. Mar. 30, 2011) ................................................ 7

*In re Facebook, Inc.,*
 625 S.W.3d 80 (Tex. 2021) ........................................................................ 6

*In re FCA US LLC Monostable Elec. Gearshift Litig.,*
 334 F.R.D. 96 (E.D. Mich. 2019) ............................................................ 14

*In re Ford Motor Co. Sec. Litig.,*
 381 F.3d 563 (6th Cir. 2004) ..................................................................... 8

*In re Hester,*
 2015 WL 6125308 (Bankr. E.D.N.C. Oct. 16, 2015) ............................... 30

*In re Lyft Inc. Securities Litigation,*
 484 F. Supp. 3d 758 (N.D. Cal. 2020) ....................................................... 9

*In re Pharm. Indus. Average Wholesale Price Litig.,*
 252 F.R.D. 83 (D. Mass. 2008) .......................................................... 30, 31

*In re Quality Sys., Inc. Sec. Litig.,*
 865 F.3d 1130 (9th Cir. 2017) .............................................................. 8, 18

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.,*
 155 F. Supp. 3d 772 (N.D. Ill. 2016) ......................................................... 8

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,*
 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ............................................ 5

*In re Takata Airbag Prods. Liab. Litig.,*
 462 F. Supp. 3d 1304 (S.D. Fla. 2020) ...................................................... 7

*In re Target Corp. Customer Data Sec. Breach Litig.,*
 64 F. Supp. 3d 1304 (D. Minn. 2014) ...................................................... 33

*In re Tobacco II Cases,*
 207 P.3d 20 (Cal. 2009) ...................................................................... 9, 13

*In re Toyota Motor Corp.,*
 2012 WL 12929769 (C.D. Cal. 2012) ........................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................... 8

*In re ZF-TRW Airbag Control Units Products Liability Litigation*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ............................................................... 12, 13

*Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*,
  935 N.E.2d 174 (Ind. 2010), *modified on reh'g*, 942 N.E.2d 796 (Ind. 2011) ......................... 5

*Ingaharro v. Blanchette*,
  440 A.2d 445 (N.H. 1982) ............................................................................... 34

*Jackson v. Airbnb, Inc.*,
  2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) ........................................................... 6

*Jackson v. State*,
  956 P.2d 35 (Mont. 1998) .............................................................................. 33

*Johnson v. Nissan N. Am., Inc.*,
  2018 WL 6267838 (N.D. Cal. May 17, 2018) ......................................................... 12

*Jones v. Corus Bankshares, Inc.*,
  701 F. Supp. 2d 1014 (N.D. Ill. 2010) ............................................................. 7, 18

*Justice v. Anderson Cnty.*,
  955 S.W.2d 613 (Tenn. Ct. App. 1997) ............................................................... 35

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................ 12

*Keshish v. Allstate Ins. Co.*,
  2012 WL 12887075 (C.D. Cal. Oct. 19, 2012) ........................................................ 20

*Kottle v. Nw. Kidney Centers*,
  146 F.3d 1056 (9th Cir. 1998) ........................................................................ 10

*Krobath v. S. Nassau Cmties. Hosp.*,
  178 A.D.3d 807 (N.Y. App. Div. 2019) ............................................................... 34

*Kwikset Corp v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ................................................................................ 19

*L.W. v. Snap Inc.*,
  __ F. Supp. 3d __, 2023 WL 3830365 (S.D. Cal. June 5, 2023) ........................................ 6

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ......................................................................... 5

*Little v. Brown & Williamson Tobacco Corp.*,
  1999 WL 33291385 (D.S.C. Mar. 3, 2009) ............................................................. 15

*M.T. v. Saum*,
  7 F. Supp. 3d 701 (W.D. Ky. 2014) .................................................................... 15

# TABLE OF AUTHORITIES
## (continued)

Page

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................................................. 12

*Manistee Town Ctr. v. City of Glendale*,
   227 F.3d 1090 (9th Cir. 2000)............................................................................................... 11

*McAlister v. Citibank*,
   829 P.2d 1253 (Ariz. Ct. App. 1992) .................................................................................... 32

*McAuslin v. Grinnell Corp.*,
   1999 WL 370597 (E.D. La. June 8, 1999) ............................................................................ 33

*McDonald v. Smith*,
   472 U.S. 479 (1985)............................................................................................................... 10

*Meta Platforms, Inc.*
   *v. Federal Trade Commission*, 1:23-cv-03562 ..................................................................... 3

*Mission v. Robles*,
   2022 WL 17225938 (N.D. Cal. Nov. 25, 2022)..................................................................... 12

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001)................................................................................................. 8

*Nelson v. Cheney*,
   401 N.W.2d 242 (Neb. 1987)................................................................................................. 20

*Njoku v. Geico Gen. Ins. Co.*,
   2020 WL 4915433 (N.D. Cal. May 6, 2020) ........................................................................ 17

*Noonan v. Bayview Loan Servicing*,
   2019 WL 1552690 (Nev. Apr. 8, 2019).................................................................................. 34

*Oracle Partners, L.P. v. Biolase, Inc.*,
   2014 WL 2120348 (Del. Ch. May 21, 2014), *aff'd*, 97 A.3d 1029 (Del. 2014) .................... 32

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................................. 12

*Perry v. Merit Sys. Prot. Bd.*,
   582 U.S. 420 (2017)................................................................................................................. 9

*Pierce v. McMullen*,
   328 P.3d 445 (Idaho 2014)....................................................................................................... 3

*Pruitt v. Morrow*,
   342 S.E.2d 400 (S.C. 1986).................................................................................................... 34

*R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*,
   766 P.2d 928 (N.M. Ct. App. 1988)....................................................................................... 34

*Sanders v. Francis*,
   561 P.2d 1003 (Or. 1977)....................................................................................................... 31

**TABLE OF AUTHORITIES**
(continued)

Page

*Simms v. Candela*,
   711 A.2d 778 (Conn. Super. Ct. 1998) ................................................................. 15

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................... 11, 16, 17

*Smith v. Frandsen*,
   94 P.3d 919 (Utah 2004) ....................................................................................... 35

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................................. 10

*Speerly v. Gen. Motors, LLC*,
   343 F.R.D. 493 (E.D. Mich. 2023), *leave to appeal granted sub nom. In re*
   *Gen. Motors, LLC*, No. 23-104 (6th Cir. Oct. 23, 2023) (ECF 20) ....................... 14

*State Farm Fire & Cas. Co. v. Huynh*,
   92 Wash. App. 454 (Wash. Ct. App. 1998) ............................................................. 3

*State of Arizona et al. v. Meta Platforms, Inc. et al.*,
   No. 4:23-cv-05448, ECF 1 (Oct. 24, 2023) ............................................................. 2

*State of Indiana v. TikTok, Inc.*,
   2023 WL 8481303 (Ind. Super. Nov. 29, 2023) ..................................................... 4

*Tabler v. Panera LLC*,
   2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ........................................................ 12

*The Nat'l Bank v. FCC Equip. Fin., Inc.*,
   801 N.W.2d 17 (Iowa Ct. App. 2011) .................................................................... 36

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008) ................................................................................. 10

*Troth v. Warfield*,
   495 F. Supp. 3d 729 (N.D. Ind. 2020) .................................................................... 36

*Tuosto v. Philip Morris USA Inc.*,
   2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ........................................................ 10

*Van Dinter v. Orr*,
   138 P.3d 608 (Wash. 2006) (en banc) .................................................................... 35

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. Super. Ct. App. Div. 2000) ............................................... 13, 31

*Vercher v. Ford Motor Co.*,
   527 So. 2d 995 (La. Ct. App. 1988) ....................................................................... 15

*Vess v. Ceba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................... 12

*Vigilante.com, Inc. v. Argus Test.*
   *com, Inc.*, 2005 WL 2218405 (D. Or. Sept. 6, 2005) ............................................ 34

# TABLE OF AUTHORITIES
### (continued)

Page

*Villegas v. Wells Fargo Bank, N.A.*,
    2012 WL 4097747 (N.D. Cal. Sept. 17, 2012) ...................................................................... 17

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996)..................................................................................................... 18

*Washington National Corp. v. Sears, Roebuck & Co.*,
    474 N.E.2d 116 (Ind. Ct. App. 1985)................................................................................... 4, 5

*Weingarden v. Milford Anesthesia Associates, P.C.*,
    2013 WL 3119578 (Conn. Super. Ct. May 30, 2013).......................................................... 32

*Wengert v. Thomas L. Meyer, Inc.*,
    152 S.W.3d 379 (Mo. Ct. App. 2004)................................................................................... 33

*Whelan v. Abell*,
    48 F.3d 1247 (D.C. Cir. 1995) ........................................................................................ 10, 19

*Wiegand v. Walser Auto. Grps., Inc.*,
    683 N.W.2d 807 (Minn. 2004)............................................................................................... 30

*Williams v. Apple Inc.*,
    2017 WL 10186313 (E.D.N.Y. Nov. 1, 2017)...................................................................... 16

*Williams v. Edwards*,
    717 N.E.2d 368 (Ohio Ct. App. 1998)..................................................................................... 4

*Wright v. Craft*,
    640 S.E.2d 486 (S,C. Ct. App. 2006)..................................................................................... 31

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ..................................................................................... 8

*Zwiercan v. Gen. Motors Corp.*,
    2002 WL 31053838 (Pa. Ct. Com. Pl. Sept. 11, 2002)........................................................ 13

**Statutes**

18 U.S.C. § 1001 ......................................................................................................................... 10

47 U.S.C. § 230 ......................................................................................................................... 5, 6

73 Pa. Stat. and Cons. Stat. § 201-2 ........................................................................................... 26

6 R.I. Gen. Laws § 6-13.1-1 ........................................................................................................ 27

Ala. Code § 8-19 ..................................................................................................................... 3, 21

Conn. Gen. Stat. § 42-110a ......................................................................................................... 21

Ga. Code Ann. § 10-1-392 .......................................................................................................... 22

HRS § 480-2 ................................................................................................................................. 22

Idaho Code Ann. § 48-602 .......................................................................................................... 22

Ill. Comp. Stat. 505/1 .................................................................................................................. 23

# TABLE OF AUTHORITIES
**(continued)**

Page

Ind. Code § 24-5-0.5-2 ................................................................. 23

Kan. Stat. Ann. § 50-624 ............................................................. 23

Ky. Rev. Stat. Ann. § 367.110 ..................................................... 24

La. Stat. Ann. § 51:1402 .............................................................. 24

Mass. Gen. Laws Ann. Chapter 93A ........................................... 25

Md. Code Ann., Com. Law § 13-303 ........................................... 25

Me. Rev. Stat. Ann. Title 5, § 206 ............................................... 24

Mich. Comp. Laws § 445.902 ...................................................... 25

Mo. Rev. Stat. § 407.010 ............................................................. 26

N.D. Cent. Code § 51-15-02 ........................................................ 30

Neb. Rev. Stat. Ann. § 59-1601 ................................................... 26

Ohio Rev. Code Ann. § 1345.01 .................................................. 26

S.C. Code Ann. § 39-5-10 ...................................................... 27, 31

Tenn. Code Ann. § 47–18–104 ..................................................... 27

Tenn. Code Ann. § 47-18-115 ........................................................ 3

Tex. Bus. & Com. Code Ann. § 17.44 ............................................ 3

Tex. Bus. & Com. Code Ann. § 17.45 .......................................... 28

Utah Code Ann. § 13-11-2 ................................................... 3, 4, 28

Va. Code Ann. § 59.1-198 ............................................................ 29

Vt. Stat. Ann. Title 9, § 2451 ................................................... 3, 28

Vt. Stat. Ann. Title 9, § 2453 ...................................................... 28

**Court Rules**

Rule 9(b) ....................................................................................... 12

**Treatises**

37 Am. Jur. 2d Fraud and Deceit § 74 (2023) .............................. 18

Restatement (Second) of Torts § 551 (1977) ................... 19, 20, 32

**Constitutions**

U.S. Const. Amendment I ............................................................. 10

**INTRODUCTION**

Defendants have made billions of dollars by maximizing young users' time spent on their platforms, thereby becoming some of the world's largest companies. SAMC[1] at ¶¶ 8–13. Yet their success has come at an immense cost: an ever-growing youth mental health crisis. *E.g.*, *id.* at ¶ 15–16. Plaintiffs allege that Defendants knew their platforms posed serious safety risks to young users, including the risk of addiction and compulsive use. *Id.* at ¶¶ 14, 96–124. When Defendants learned through their own research and studies that their relentless pursuit of increasing profits was causing these harms, they could have told the truth by disclosing that their platforms put young users' mental and physical health at risk. *See id.* at ¶¶ 96, 99–124. Instead, to protect their bottom line, they kept the truth to themselves, while touting their platforms' safety. *E.g.*, *id.* at ¶ 369a–b.

Defendants assert they should face no liability under the various states' unfair-or-deceptive-acts-or-practices ("UDAP") statutes for their misleading conduct. But Defendants' analysis of Plaintiffs' UDAP claims, pled in Count 7, is neither a complete nor accurate presentation of the relevant law. All states have enacted UDAP statutes to protect the public from broad forms of deceptive or wrongful conduct. At their core, the claims in this case involve deception: Defendants' withholding of material facts about the harms posed by their products. That is precisely the type of deception prohibited under UDAP laws. Defendants' motion to dismiss Count 7 should be denied.

Additionally, Meta[2] argues it cannot be held liable under the fraudulent- and negligent-concealment and misrepresentation claims Plaintiffs allege in Counts 8 and 9. Plaintiffs allege that Meta had the knowledge and opportunity to disclose important information about the health risks posed by its platforms, Facebook and Instagram, but instead actively withheld that information. If Meta had disclosed how harmful these platforms are to children, that information would have been widely reported, and Plaintiffs could have taken steps to prevent the harm that they and their families suffered. Meta's motion to dismiss Counts 8 and 9 should likewise be denied.

---

[1] References to "SAMC" are to Plaintiffs' Second Amended Master Complaint (Personal Injury), ECF 494.

[2] "Meta" refers to Defendants Meta Platforms, Inc., Facebook Payments, Inc., Siculus, Inc., Facebook Operations, LLC., and Instagram, LLC.

1

**ARGUMENT**

2  **I.     PLAINTIFFS ADEQUATELY ALLEGE UDAP CLAIMS (COUNT 7).**

3       **A.     State UDAP statutes apply to Defendants' misleading omissions about the**

4              **safety of their products.**

5              Plaintiffs allege Defendants suppressed the truth about health and safety risks posed by their

6  platforms in order to allay public concerns and continue exploiting young users' personal data,

7  information, and attention for profits. *E.g.*, SAMC ¶ 13. This deceptive conduct not only took place

8  in connection with "consumer transactions" and "trade or commerce," but it is also core to

9  Defendants' business model. *Id.* at ¶¶ 12–15. Yet, Defendants claim they are exempt from 25 states'

10 UDAP statutes.[3] Specifically, Defendants argue that because users do not pay money to download

11 Defendants' apps, Defendants' deceptive conduct did not occur in the context of "trade or

12 commerce" or "consumer transactions." Defs.' Mot. to Dismiss at 49–53, 56–59, ECF 517

13 (hereinafter "Mot.").

14             Not only do Defendants mischaracterize Plaintiffs' claim as predicated solely on the act of

15 downloading apps, Defendants also rely on an overly narrow reading of "consumer transactions"

16 and "trade or commerce," as those terms are used in UDAP laws. Defendants fail to engage with

17 the nuances of state-specific aspects of UDAP laws, and instead make sweeping claims based on

18 conclusory interpretations of statutory text.[4] For the same reasons discussed by the Attorneys

19 General in their opposition to Meta's motion to dismiss the Multistate Complaint,[5] Defendants'

20

21

22  [3] Defendants challenge application of UDAP statutes from Alabama, Connecticut, Georgia,

23 Hawai'i, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts,
   Michigan, Missouri, Nebraska, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee,

24 Texas, Utah, Vermont, and Virginia. Mot. at 57–59.

   [4] Neither the Court nor Plaintiffs should be left to tease out the nuances of the various states'
25 consumer protection laws on issues for which Defendants have the burden of showing there is no
   claim stated as a matter of law. While Plaintiffs respond to Defendants' generalized arguments,
26 should the Court be inclined to dismiss Plaintiffs' UDAP claims under any particular state UDAP
   statute, Plaintiffs request the opportunity to submit additional briefing on the specific statute.
27
   [5] *State of Arizona et al. v. Meta Platforms, Inc. et al.*, No. 4:23-cv-05448, ECF 1 (Oct. 24, 2023).
28

cursory review of state UDAP law lacks merit. *See* ECF No. 599, Multistate Attorneys General Opp. to Meta's Mot. to Dismiss ("AG Br.") at 43–45.

UDAP statutes are construed liberally to protect against unfair and deceptive business practices.[6] This includes defining "consumer transaction" and "trade or commerce" to encompass wide-ranging commercial activity, regardless of whether end-users pay money. *See, e.g.*, *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 849 (E.D. Mich. 2003) ("There is no requirement that consumer goods be sold or purchased."); *see also* App'x Table 1 (discussing broad statutory language for the 25 states' UDAP statutes Defendants claim do not apply).

"Trade or commerce" includes business activity that, like the Defendants' alleged deceptive conduct here, is intended to increase profits. *State Farm Fire & Cas. Co. v. Huynh*, 92 Wash. App. 454, 469 (Wash. Ct. App. 1998); *see* AG Br. at 49–50. Defendants undeniably exploit young users' data and attention for profit. As Meta acknowledged in a recent filing challenging regulatory action by the Federal Trade Commission, their young users' data, information, and attention are essential to their bottom line. *See* Ex. A, Compl. in *Meta Platforms, Inc. v. Federal Trade Commission*, 1:23-cv-03562, ¶ 58, ECF No. 1 (Nov. 29, 2023) ("[L]imit[ing] Meta's collection and use of the data of so-called 'Youth Users,' . . . would severely curtail [Meta]'s ability to market new products and

---

[6] *See* Ala. Code § 8-19-2 (2023) (**Alabama**) ("The public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson."); *Pierce v. McMullen*, 328 P.3d 445, 454 (Idaho 2014) (**Idaho**) (ICPA "must be liberally construed to effect the legislative intent" to "deter deceptive or unfair trade practices and to provide relief for consumers" (citations omitted)); *Heller v. Silverbranch Constr. Corp.*, 382 N.E.2d 1065, 1069 (Mass. 1978) (**Massachusetts**) (Mass. Gen. Laws Chapter 93A "is a statute of broad impact whose basic policy is to ensure an equitable relationship between consumers and persons engaged in business."); *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022) (**Maryland**) (MCPA "must be liberally construed in order to effectuate [its] broad remedial purpose" (citation omitted)); Tenn. Code Ann. § 47-18-115 (2023) (**Tennessee**) (TCPA "shall be construed to effectuate the purposes and intent"); Tex. Bus. & Com. Code Ann. § 17.44 (West 2023) (**Texas**) ("[t]his subchapter shall be liberally construed and applied") Utah Code Ann. § 13-11-2 (West 2023) (**Utah**) ("[t]his act shall be construed liberally"); Vt. Stat. Ann. tit. 9, § 2451 (2023) (**Vermont**) ("The purpose of this chapter is . . . to protect the public and to encourage fair and honest competition."); *see also* AG Br. at 43.

services to a key demographic of its users."). The same is true for the other Defendants. *E.g.*, SAMC ¶¶ 12–15.

"Consumer transaction" is also construed broadly and includes transactions beyond those that involve the exchange of money. *See Williams v. Edwards*, 717 N.E.2d 368, 373 (Ohio Ct. App. 1998) ("[T]he fact that no money changed hands has no bearing on the applicability of the [Consumer Sales Practices Act] . . . ."); *see also* AG Br. at 43–44. Here, Plaintiffs transact with Defendants by providing their data, personal information, and attention in exchange for access to the Defendants' platforms. SAMC ¶ 13; *see also* AG Br. at 43–44. Courts have increasingly recognized consumers' property interests in their "valuable data," as technology companies derive their profits from monetizing that data. *See, e.g.*, *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (consumers' loss of data constitutes economic injury under the UCL); *Arizona v. Google, LLC*, 2022 WL 223907, at *14 (Ariz. Super. Ct. Jan. 21, 2022) ("There is a tenable claim that the consumer is provided a service in exchange for information data. Therefore, there is a plausible claim that the exchange is in connection with the sale of merchandise."); *see also* Utah Code Ann. § 13-11-2 (West 2023) (UCSPA "shall be construed liberally" to "simplify, clarify, *and modernize* the law governing consumer sales practices") (emphasis added). As such, the provision of valuable consumer data is precisely the type of "valuable consideration" Defendants contend is paramount to a consumer transaction. Mot. at 53 n.55.

Defendants' argument to the contrary rests on *State of Indiana v. TikTok, Inc.*, an unpublished, non-precedential decision involving one state trial court's interpretation of Indiana's Deceptive Consumer Sales Act ("IDCSA"). *See* Mot. at 49 (citing *State of Indiana v. TikTok, Inc.*, 2023 WL 8481303 (Ind. Super. Nov. 29, 2023)). There, the court erred as a matter of Indiana law by holding the IDCSA defines "sale" and "other disposition" *only* to include exchanges for money. *Indiana v. TikTok*, 2023 WL 8481303, at *6. The court based its holding on one quote from *Washington National Corp. v. Sears, Roebuck & Co*., 474 N.E.2d 116 (Ind. Ct. App. 1985), which notes that Indiana's common law definition of "sale" means "the passing of title from a seller to a buyer for money." *Indiana v. TikTok*, 2023 WL 8481303, at *6 (citing *Washington Nat'l Corp.*, 474 N.E.2d at 120). However, the court ignored the very next sentence in *Washington National*,

which clarifies that "sales" include the "transfer of property in exchange for consideration." 474 N.E.2d at 120. Under Indiana law, consideration can take various forms and is not limited only to money payments. *See Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC,* 935 N.E.2d 174, 179 (Ind. 2010), *modified on reh'g*, 942 N.E.2d 796 (Ind. 2011) (defining consideration as a "benefit" and holding that "consideration—no matter what its form—consists of a bargained-for exchange" (citations omitted)). Moreover, as discussed above, this decision is out of step with the weight of authority, and not relevant to states with different statutory language and different common law. *See* AG Br. at 44–45. Defendants' attempt to exempt themselves from 25 states' UDAP laws is unavailing.

### B.       Section 230 does not bar Plaintiffs' UDAP claims.

Defendants contend they are immune under 47 U.S.C. § 230 from claims that they omitted warnings about "harmful content" and "engagement-inducing features." Mot. at 59. That is misdirection. Plaintiffs do not allege that Defendants should have warned them about harmful content. Plaintiffs allege Defendants withheld material facts about the dangers of *their platforms*. *See, e.g.*, SAMC ¶ 965 (UDAP claim alleging Defendants "fail[ed] to disclose the serious harms related to use" of their platforms); *see also id.* at ¶¶ 96–124 (discussing research connecting Defendants' platforms to negative health outcomes). Section 230 does not apply where defendants would face no liability for the substance of content on their platforms. *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019) (finding no § 230 immunity where defendants would "face no liability for the content" of posts on their platforms).

Defendants' argument is also contrary to this Court's ruling on Plaintiffs' failure-to-warn claims. This Court determined that § 230 applies only where the alleged duty "stems from the defendant's status or conduct as a publisher or speaker." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2023 WL 7524912, at *9 (N.D. Cal. Nov. 14, 2023) ("MTD1 Op.") (quoting *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021)) (internal quotation marks omitted). Just as with Plaintiffs' failure-to-warn claims, Defendants' UDAP duties stem "from their knowledge, based on public studies or internal research, of the ways that their products harm children," not from publishing conduct. *Id*. at *16. Defendants' withholding of material

information about these risks, "including the risk of abuse, addiction, and compulsive use," is not entitled to § 230 protection. *Id.*

Tellingly, Defendants ignore the Court's ruling on their duty to warn. Instead, Defendants rely on inapposite cases involving allegations that defendants failed to adequately monitor user activity on their sites. *Herrick v. Grindr LLC*, 306 F. Supp. 3d 579, 584 (S.D.N.Y. 2018) (failure to monitor for fake dating profiles); *In re Facebook, Inc.*, 625 S.W.3d 80, 83 (Tex. 2021) (failure to police sex trafficking on Facebook); *L.W. v. Snap Inc.*, __ F. Supp. 3d __, 2023 WL 3830365, at *8 (S.D. Cal. June 5, 2023) (failure to monitor for sex crimes against children on Snapchat); *Bride v. Snap, Inc.*, 2023 WL 2016927 at *6 (C.D. Cal. Jan. 10, 2023) (failure to adequately monitor "end-users' abusive messaging"); *Anderson v. TikTok, Inc.*, 637 F. Supp. 3d 276, 280 (E.D. Pa. 2022) (failure to monitor dangerous videos trending on TikTok); *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *2 (C.D. Cal. Nov. 4, 2022) ("The accusation here is fundamentally that Snap should have monitored and curbed third-party content."). As explained above, the duties alleged in those cases are distinct from the one at issue here.

For instance, Defendants place heavy reliance on *Herrick*, where the plaintiff alleged a dating app failed to warn about "malicious catfishing." 306 F. Supp. 3d at 584. There, unlike here, the claims stemmed directly from the platform's failure to remove "objectionable content" (fake dating profiles). *Id.* at 591. The app's alleged duty thus arose from its responsibility as "a publisher to supervise content." *Id.* Similarly, in *Facebook*, Defendants' other primary authority, the claims would have required Facebook to monitor for signs of sex trafficking on the platform. *See Facebook*, 625 S.W.3d at 94 (warnings "would only be necessary because of Facebook's allegedly inadequate policing of third-party content"). The duty to supervise or monitor content in cases like *Herrick* and *Facebook* is fundamentally different from Defendants' UDAP duties here, where they need not "mak[e] any changes to how they publish content" to disclose the truth their platforms. MTD1 Op. at *16; *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) (Section 230 inapplicable where claim would not impose a duty "to remove any user content or otherwise affect how [a website] publishes or monitors such content"). Defendants provide no compelling reason to depart from the Court's well-reasoned analysis on Defendants' duty to warn.

## C.     Plaintiffs plead actionable omissions.

The gravamen of Plaintiffs' consumer-protection claims is that Defendants misled users by describing their platforms as safe despite knowing that use of their platforms often leads to negative health outcomes. SAMC ¶¶ 96–124, 167–70, 184–85, 366, 369, 390–91, 540, 682, 802–03. Defendants purposefully withheld that material information from Plaintiffs for years, because to do otherwise would have resulted in decreasing their bottom line. SAMC ¶¶ 10–14, 184, 253–61, 281, 446–50, 556, 583–93, 675–89, 703–17, 755–56. Defendants claim some of their statements are not actionable because they were statements of opinion or protected by the First Amendment. Mot. at 59–60. Neither of these arguments holds water.

### 1.     Defendants' misleading omissions are not matters of opinion.

Defendants' misleading statements about the purported safety of their platforms are not "opinion" or "puffery," as Defendants argue. Mot. at 26. Even where a statement could otherwise be construed as mere exaggeration or "puffery," it becomes materially misleading when the defendant is aware of facts that make the statement deceitful. *See Jones v. Corus Bankshares, Inc.*, 701 F. Supp. 2d 1014, 1027–28 (N.D. Ill. 2010) ("[S]tatements that would otherwise amount to puffery can be actionable if the speaker is aware that the statement is deceptive."); *In re Coventry Healthcare, Inc. Sec. Litig.*, 2011 WL 1230998, at *12 (D. Md. Mar. 30, 2011). "Although the marketing of safety features may be construed as 'puffery' when viewed in isolation, such marketing can 'cross the line from mere puffery to active misrepresentations'" when the "manufacturer had actual knowledge of the alleged safety defect." *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020) (citation omitted); *see also In re Toyota Motor Corp.*, 2012 WL 12929769, at *18 (C.D. Cal. 2012) ("Advertising a car as safe and reliable when it actually has a safety-related defect . . . is not within the tolerable range of commercial puffery, especially because Toyota allegedly had exclusive knowledge of the SUA defect." (internal quotation marks omitted)).

Here, Defendants' misleading statements about their platforms' supposed safety were contrary to concrete information in their possession about harms caused by using their platforms, and were materially misleading in the context of those omissions. *See In re Apple Inc. Sec. Litig.*,

2020 WL 2857397, at *15 (N.D. Cal. June 2, 2020) ("[A] party cannot affirmatively create a positive impression of an area it knows to be doing poorly."); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("Even 'general statements of optimism, when taken in context,'" are sufficient "when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." (citation omitted)). At a minimum, it is not "so clear" Defendants' statements should be deemed puffery that the issue may be decided on a motion to dismiss. *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., and Prod. Liab. Litig.*, 295 F.Supp.3d 927, 1004–1005 (N.D. Cal. 2018) ("[W]hether a statement is deemed puffery is generally considered a question of fact, not law, although there are instances in which the answer is so clear that the issue may be decided as a matter of law.").

The authorities Defendants cite in support of finding their omissions non-actionable are inapposite. Mot. at 27–28. In two cases, the defendant made statements regarding safety without the existence of contrary facts at the time the statement was made. *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (Ford disclosed "accurate historical data" without noting potential for less favorable results in future quarters); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at * 8 (N.D. Cal. Apr. 13, 2017) (under statutory claims asserted under omission theory, plaintiffs failed to assert defect contrary to any affirmative statements). In others, the plaintiffs did not assert any omission or concealment claim. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061 (9th Cir. 2001); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 682 (S.D. Tex. 2015); *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *24 (N.D. Cal. Aug. 30, 2017) (court's puffery analysis limited to alleged "affirmative misrepresentations" in the defendant's privacy policy). In light of Plaintiffs' detailed factual allegations about Defendants' persistent misleading conduct, Defendants' attempt to recast their deception as "generalized claims" about the platforms' safety, Mot. at 26, misses its mark.

Defendants' deceptions, moreover, are not "puffery" because they directly implicate the platforms' safety, a crucial and material aspect of the products to Plaintiffs and other young users. *See infra* Part I.D.; *see also In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155

F. Supp. 3d 772, 818 (N.D. Ill. 2016) (statements are not "puffery" if they "convey information on which a consumer of ordinary prudence and comprehension may rely"); *Hauter v. Zogarts*, 534 P.2d 377, 381 (Cal. 1975) ("Courts have consistently held" misrepresentations about a product's safety characteristics are "representations of fact."); *City of New York v. Lead Indus. Ass'n*, 190 A.D.2d 689, 700 (N.Y. App. Div. 1993) ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective," support an action for fraud). Defendants' citation to *In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020), does not aid them on this point. There, the court found the alleged misstatements too generalized based on the securities law principle that reasonable investors are not presumed to rely on optimistic statements when making investment decisions. *Id.* at 770 ("under federal securities laws" generalized optimistic statements are nonactionable "because no reasonable investor would rely on such statements"). The opposite is true for Plaintiffs' UDAP claims, with respect to which courts presume reliance on omissions that a reasonable consumer would consider "material." *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225–26 (9th Cir. 2015) (citing *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)); *see also infra* Part I.D.

## 2.  Defendants have no First Amendment right to lie to Congress.

Defendants maintain that the First Amendment shields them from claims based upon misleading statements their executives made to Congress.[7]  Mot. at 35, 60. As a threshold matter, however, Defendants' First Amendment argument "constitutes an affirmative defense," which the Court may rely upon to dismiss a complaint only if it is clear from the face of the complaint that the claim is barred. *Batis v. Dun & Bradstreet Holdings, Inc.*, 2023 WL 1870057, at *7 (N.D. Cal. 2023); *see also Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 296 (5th Cir. 2000) ("[T]he Noerr-Pennington doctrine provides only an affirmative defense against liability, not a right not to stand trial . . . ."). A plaintiff need not plead facts to negate an affirmative defense. *Perry v. Merit*

---

[7] Defendants' misleading statements to Congress—and to the American public—are not outside the scope of commercial activity contemplated by UDAP statutes. *See supra* Part I.A.; *see also* AG Br. at 23–32, 43–45.

*Sys. Prot. Bd.*, 582 U.S. 420, 448 n.9 (2017). Here, there is no obvious bar to securing relief on the face of the complaint for at least two reasons.

*First*, "the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964). The *Noerr-Pennington* doctrine supplies no exception. "The doctrine derives from two Supreme Court cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008). It does not afford greater protection than the First Amendment. *See McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("[T]here is no sound basis for granting greater constitutional protection to statements made in a petition . . . than other First Amendment expressions."). Simply stated, "neither the *Noerr-Pennington* doctrine nor the First Amendment more generally protects petitions predicated on fraud or deliberate misrepresentation[.]" *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (citing *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995)).[8] "Whatever the ultimate breadth of *Noerr-Pennington*, it is not a shield for fraud." *In re Am. Cont'l Corp./Lincoln Savs. and Loan Sec. Litig.*, 794 F. Supp. 1424, 1448 (D. Ariz. 1992).

*Second*, even if the *Noerr-Pennington* doctrine did protect false statements—as some courts have mistakenly found, *see, e.g.*, *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5–6 (S.D.N.Y. Aug. 21, 2007)—it applies only when one "petition[s] the government for a redress of grievances." U.S. Const. Amend. I; *see Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). In the absence of evidence that a party was seeking redress from Congress, *Noerr-Pennington* does not apply. *See, e.g.*, *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *18 (N.D. Cal. 2020). And,

---

[8] To be sure, the *Noerr-Pennington* doctrine may protect deception "along the lines normally accepted in our political system." *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961); *see also Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1061 (9th Cir. 1998) ("[T]he political arena has a higher tolerance for outright lies than the judicial arena does."). But knowingly concealing material information from Congress does not qualify. It is a crime. *See* 18 U.S.C. § 1001; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 504 (1988) (distinguishing "misrepresentations made under oath at a legislative committee hearing" from "deceptive practices in the political arena").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS COUNTS 7-9
CASE NO. 4:22-MD-03047-YGR

even when lobbying is at issue, courts draw a distinction between claims based on the *result* of that effort (which are barred) with claims that challenge "the process of lobbying" itself (which are not). *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1095 (9th Cir. 2000) (doctrine barred claim because harm was caused by outcome of lobbying effort, "not any abuse of the publicity/lobbying process by defendants"). In the present case, none of Plaintiffs' allegations indicate that Defendants intended to influence any particular legislation or government effort through their omissions. Indeed, Meta's founder, Mark Zuckerberg, wasn't on the Hill because he wanted something from Congress, but rather because Congress wanted something from him— namely, the truth about harms caused by Meta's platforms. *See, e.g.*, SAMC ¶ 307o (letter from senators requesting information). But even if Defendants were attempting to influence legislation, their objective is not at issue; their deception is.

### D.    Plaintiffs sufficiently allege reliance.

Defendants are wrong that "actual reliance" poses an impediment to Plaintiffs' UDAP claims. Mot. at 60–61. First, Defendants frame the issue incorrectly. Plaintiffs allege they were harmed by Defendants' *silence* as to the dangerous, safety-related defects in their apps, so they need not show they heard or saw any particular *misstatements*. Plaintiffs have satisfied this standard by alleging, *inter alia*, that Defendants "knowingly, affirmatively, and actively concealed" the defects in their products, SAMC ¶ 826, and that they "uniformly communicated the purported benefits and safety of using [their] respective social media products while failing to disclose the serious harms related to use, particularly to youth," *id*. ¶ 965. Defendants' public silence as to the harms their products cause continues to this day. *Id*. ¶ 827 ("Despite their knowledge of the defects and their attendant safety risks, Defendants continue to market their platforms to children and teens while simultaneously omitting the disclosure of known and foreseeable harms to children and teens.").

Defendants say these allegations are not sufficient because Plaintiffs must point to "statements that were allegedly misleading by omission." Mot. at 62. But "[w]hat matters in an omission case . . . is whether the plaintiff had an *opportunity* to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information." *Sloan*

*v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 875 (N.D. Cal. 2018); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (defendant's concealment of material facts it was bound to disclose constituted actionable fraud by omission). To that end, courts sensibly recognize that, when a case involves a failure to speak, it "would largely be an artificial exercise" to require the plaintiff "to identify with more specificity the statements made that omitted the defect." *Johnson v. Nissan N. Am., Inc.*, 2018 WL 6267838, at *2 (N.D. Cal. May 17, 2018).

Indeed, despite Defendants' heavy use of Rule 9(b), they ignore that this rule is "somewhat relaxed" in the omissions context because "a plaintiff cannot plead either the specific time of an omission or the place." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1122–23 (C.D. Cal. 2021) (citation omitted); *see also Hawkins v. Medtronic, Inc.*, 62 F. Supp. 3d 1144, 1156 (E.D. Cal. 2014) (concluding that "reliance need not comply with the particularity requirements of Rule 9(b)" because "conditions of a person's mind may be alleged generally") (quoting Fed. R. Civ. P. 9(b)).[9] To the contrary, courts recognize "the inherent limitations of an omission claim" and Plaintiffs therefore need not "specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (citation omitted). These practical realities completely undermine Defendants' citation to cases that arose in the context of fraudulent affirmative *misstatements*.[10]

Defendants' citation to *In re ZF-TRW Airbag Control Units Products Liability Litigation*, 601 F. Supp. 3d 625 (C.D. Cal. 2022), is of no moment. That case says only that plaintiffs must

---

[9] YouTube, Snap, and TikTok Defendants also cite to cases applying Rule 9(b) to the context of fraudulent misrepresentations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *Vess v. Ceba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003). Those Defendants neglect to mention that the Ninth Circuit in *Vess* reversed the dismissal of claims not "grounded in fraud," as is the case with many of Plaintiffs' allegations of deceptive and unfair conduct. 317 F.3d at 1105–06. In *Kearns*, meanwhile, the limited facts pertaining to nondisclosure were far more "general" than those here, and the Ninth Circuit concluded that the entire UCL claim emanated from the central allegations of "a unified course of fraudulent conduct" involving "knowing[] misrepresent[ations] to the public." 567 F.3d at 1126–27. Again, that is not the case here.

[10] *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (case involving "misrepresentations"); *Tabler v. Panera LLC*, 2019 WL 5579529, at *13 (N.D. Cal. Oct. 29, 2019) (case involving "misstatements"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (case involving "misrepresentations"); *see also Mission v. Robles*, 2022 WL 17225938, at *2 (N.D. Cal. Nov. 25, 2022) (RICO claim).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS COUNTS 7-9
CASE NO. 4:22-MD-03047-YGR

allege "they would have been aware of the safety defect, if it were disclosed." *Id*. at 767. Plaintiffs here have alleged that the hidden defects were material and that disclosure would have affected their decision to download the apps. *See* SAMC ¶¶ 8–15, 74, 96, 970. Nothing in *ZF-TRW*, or any other case, requires a plaintiff to identify a particular statement that should have contained the omitted information, and it is reasonable to infer that Plaintiffs would have become aware of the truth, had it been disclosed, given the intense media attention that whistleblower Frances Haugen received when she shared Meta's internal studies and other documents with the Wall Street Journal. *See, e.g.*, SAMC ¶¶ 217-20, 377. Additionally, quite unlike *ZF-TRW* where Plaintiffs "plead no interactions" with the company, 601 F. Supp. at 766, Plaintiffs here allege *constant* interactions with the platforms, which Defendants design, run, and actively update. *See* SAMC ¶¶ 33, 35, 43, 47 (alleging Defendants control and update their apps). It is reasonable to infer that Plaintiffs would have seen any in-app disclosures. SAMC ¶ 839 ("Plaintiffs used these products as intended"); *id.* ¶¶ 18, 929, 933 (noting Plaintiffs' "addiction to," "compulsive use of," "overuse of," and "excessive use of" Defendants' platforms).

Defendants also ignore the bedrock principle that courts presume reliance on omissions that a reasonable consumer would consider "material."[11] *See, e.g.*, *Daniel*, 806 F.3d at 1225–26 (citing *Tobacco II Cases*, 46 Cal. 4th at 327); *Cope v. Metro. Life Ins. Co.*, 696 N.E. 2d 1001, 1008 (Ohio 1998); *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, at *5 (Pa. Ct. Com. Pl. Sept. 11, 2002); *see also BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 110 (Colo. 2011) ("[R]eliance may be inferred from circumstantial evidence where the defendant concealed a material fact from the plaintiff."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 818 (N.J. Super. Ct. App. Div. 2000) (similar). Here, the Court can presume Plaintiffs' reliance on Defendants' omissions regarding the dangerous defects in their platform. The SAMC alleges that Defendants' products

---

[11] Of course, whether there is a presumption of reliance only matters if reliance is an element in the first place. In fact, many of the laws at issue in Defendants' motion do not require reliance. *See* App'x Table 2 (No reliance required in Colorado, Massachusetts, Maine, North Carolina, North Dakota, Rhode Island, Minnesota, New Jersey, Ohio, Oregon, and South Carolina). The absence of a reliance requirement is another ground on which the Court can reject Defendants' motion as to these states.

contain scores of unsafe defects and that Defendants did not inform the public about these hidden dangers.[12] The SAMC also alleges that Defendants' failure to disclose these defects was material to Plaintiffs' decision "to use Defendants' respective social media products." SAMC ¶ 970. Contrary to what Defendants insist, what constitutes a "material" omission is an objective inquiry that does not require "individualized allegations of reliance," Mot. at 62; *accord id.* at 60. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 115–17 (E.D. Mich. 2019) ("[T]he question whether the concealment of information about the alleged . . . defect should be deemed 'material' can be answered by common, class-wide proofs concerning whether reasonable consumers would have been concerned about the information withheld."); *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 520–22 (E.D. Mich. 2023) (collecting cases and stating that "the materiality inquiry is based uniformly on the application of an objective standard"), *leave to appeal granted sub nom. In re Gen. Motors, LLC*, No. 23-104 (6th Cir. Oct. 23, 2023) (ECF 20). By any standard, a reasonable consumer would consider these safety defects material, and Plaintiffs have adequately alleged that disclosure of these defects would have changed their behavior. Nothing more is required.

### E.    Plaintiffs have sustained ascertainable losses.

Plaintiffs seek damages "for injuries sustained as a result of the use of each Defendant's respective social media products," including "expenses for hospitalizations and mental treatments[] and other economic harm that includes but is not limited to lost earnings and loss of earning capacity." SAMC at 269. "[E]conomic losses" like "medical expenses and lost wages" are

---

[12] *See, e.g.*, SAMC ¶ 8 ("Defendants are the multibillion-dollar corporations who designed unsafe products that hopelessly outmatch parents' struggle to keep their children healthy and safe."); *id.* ¶ 74 ("[E]ach Defendant deliberately designed, engineered, and implemented dangerous features in their apps that present social-reward and other stimuli in a manner that has caused Plaintiffs and many scores of others to compulsively seek out those stimuli, develop negative symptoms when they were withdrawn, and exhibit reduced impulse control and emotional regulation.");*id.* ¶ 96 ("Nearly a decade of scientific and medical studies demonstrate that dangerous features engineered into Defendants' platforms—particularly when used multiple hours a day—can have a 'detrimental effect on the psychological health of [their] users,' including compulsive use, addiction, body dissatisfaction, anxiety, depression, and self-harming behaviors such as eating disorders." (citation omitted)).

1    ascertainable, and plaintiffs who allege they suffered such damages are entitled to bring UDAP

2    claims to recover them. *Simms v. Candela*, 711 A.2d 778, 781 (Conn. Super. Ct. 1998).[13]

3        Defendants do not attempt to argue that these alleged losses are not ascertainable. Instead,

4    they raise a non-sequitur that "Plaintiffs' claimed expectation of 'safety' on [their] services is not

5    sufficiently ascertainable." Mot. at 63. But Plaintiffs do not allege that Defendants' failure to meet

6    their expectations is an injury unto itself. Nor do Plaintiffs assert that Defendants' violation of

7    Plaintiffs' right to "safety" imposed *only* non-economic damages. Regardless of whether such

8    damages are (or are not) an aspect of Plaintiffs' UDAP claims, dismissal is improper because

9    Plaintiffs also list other incontestably ascertainable losses. *See Little*, 1999 WL 33291385, at *11

10   (denying motion to dismiss South Carolina UDAP claim where plaintiffs sought "medical costs,

11   lost earnings, and . . . other alleged out-of-pocket expenses" even though they also sought

12   impermissible injunctive relief). The case Defendants cite says only that non-economic damages

13   typically do not constitute ascertainable losses. *Di Teresi v. Stamford Health Sys., Inc.*, 88 A.3d

14   1280, 1284 (Conn. App. Ct. 2014) (holding that plaintiffs who did not allege "any actual monetary

15   or physical loss" could not sustain UDAP claim). As set out above, this case is distinguishable

16   because Plaintiffs here do allege they "suffered a financial loss or a physical injury." *Cf. id*.

17       Finally, Defendants' argument that Plaintiffs cannot have suffered an ascertainable loss

18   because the apps are free to download (Mot. at 63) confuses ascertainable loss with the proper

19   measure of damages. Defendants' own authority recognizes that "a plaintiff need not actually

20   expend a sum of money as a result of defendant's unlawful consumer practice in order to

---

21   [13] *See, e.g.*, *Ferguson v. JONAH*, 136 A.3d 447, 454 (N.J. Super. Ct. Law Div. 2014) (holding that

22   "reparative treatment and counseling" constitute ascertainable loss); *Little v. Brown & Williamson*

23   *Tobacco Corp.*, 1999 WL 33291385, at *11 (D.S.C. Mar. 3, 2009) (holding that plaintiffs who "listed among their damages such 'economic' losses as medical costs and lost earnings" pled

24   ascertainable loss); *Feiler v. Clean Sweep Restoration Servs. of New Engl., LLC*, 2009 WL

25   3740748, at *9 (Conn. Super. Ct. Oct. 20, 2009) ("[E]xpenses, such as medical bills, associated with personal injuries constitute an ascertainable loss of money."); *see also M.T. v. Saum*, 7 F.

26   Supp. 3d 701, 705 (W.D. Ky. 2014) ("If a consumer relies upon misleading or deceptive advertisements and suffers harm as a result, he may recover damages for personal injuries resulting

27   from the statutory violation."); *Vercher v. Ford Motor Co.*, 527 So. 2d 995, 999–1000 (La. Ct. App. 1988) (stating that plaintiffs under Louisiana's Unfair Trade Law may recover for "mental anguish

28   and humiliation").

demonstrate a[n ascertainable] loss." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1116 (N.J. Super. Ct. App. Div. 2005).[14] Rather, Defendants' argument seems to assume that the only proper measure of damages is "benefit of the bargain," i.e. whether Plaintiffs received something lower in value than they were promised. *See* Mot. at 64. But "the benefit of the bargain rule" is often "inadequate" in UDAP claims, in which case "other measures of damages may be used." *Brown v. Adtalem Glob. Educ., Inc.*, 421 F. Supp. 3d 825, 832 (W.D. Mo. 2019). Moreover, Plaintiffs need not put forward a precise damages methodology at this stage in the proceedings. What matters is that they have pled an ascertainable loss in the form of claimed economic damages caused by Defendants' unfair and deceptive trade practices. Accordingly, the Court should deny the motion to dismiss Count 7.

## II.    META IS NOT ENTITLED TO DISMISSAL OF PLAINTIFFS' CONCEALMENT CLAIMS (COUNTS 8-9).

In Counts 8 and 9 of the SAMC, respectively, Plaintiffs plead fraudulent- and negligent-concealment and misrepresentation claims against Meta.[15] More specifically, Plaintiffs allege that "Meta breached its duty to the public, users, and their parents . . . by concealing, failing to disclose, and making misstatements about the serious safety risks presented by Instagram and Facebook." SAMC ¶ 980; *see also* SAMC ¶ 993 (also alleging that Meta "failed to take reasonable care").

As Meta notes, the fundamental elements of fraud are substantially similar from state to state. Mot. at 64. With respect to fraud by omission, Plaintiffs must show that Meta (1) owed a duty to disclose material facts to the Plaintiffs and (2) intentionally "concealed or suppressed" those facts, and that (3) Plaintiffs were unaware of the facts and would have acted differently if they had known the truth, which (4) resulted in their injury.[16] *See, e.g.*, *Sloan*, 287 F. Supp. 3d at 865 (quoting

---

[14] Courts appear to agree that ascertainable loss may arise out of a deceptive practice related to a free download. *See Williams v. Apple Inc.*, 2017 WL 10186313, at *5 (E.D.N.Y. Nov. 1, 2017) (denying motion to dismiss NJ UDAP claim that Apple deceived users into downloading an update to iOS and holding that the resulting damages caused ascertainable loss).

[15] Meta mistakenly asserts that Count 8 pleads "fraudulent misrepresentation" and Count 9 pleads "fraudulent concealment." Mot. at 64. Plaintiffs' fraud claim is alleged in Count 8, SAMC ¶¶ 976–987; their negligence claim is alleged in Count 9, SAMC ¶¶ 988–999.

[16] Negligent misrepresentation shares these elements and requires that reliance be justifiable, and

1    *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 532 (Cal. Ct. App. 2007)). Meta does not dispute that it owed

2    a duty to disclose. Instead, Meta recycles a number of arguments it advances against Plaintiffs'

3    consumer-protection claim. *See* Mot. at 65–66. Each is equally unavailing here.

4        *First*, Meta contends that "Plaintiffs have not adequately alleged either reliance on or injury

5    resulting from Meta's alleged misrepresentations or omissions." Mot. at 65. As discussed above,

6    however, if Defendants—including Meta—had disclosed how harmful their platforms are to

7    children, that material information would have been widely reported, and Plaintiffs both would

8    have known and would have been able to take specific actions to prevent the harm that they and

9    their families suffered. *See supra* Part I.D. "When there is nondisclosure of a material fact, courts

10    permit inferences or presumptions of inducement and reliance." *Cope*, 696 N.E.2d at 1008; *accord*

11    *Patterson*, 263 P.3d at 110 ("reliance may be inferred from circumstantial evidence"); *see also*

12    *Sloan*, 287 F. Supp. 2d at 875 ("What matters in an omission case . . . is whether the plaintiff had

13    an *opportunity* to receive and therefore rely on the omitted information, not whether they actually

14    received some other, irrelevant information.").

15        *Second*, Meta insists that "a claim based on the omission of warnings about harmful third-

16    party content is barred by Section 230." Mot. at 65. But that is not Plaintiffs' claim. Instead,

17    Plaintiffs allege that Meta failed to disclose material facts about *its platforms*—namely,

18    "knowledge, based on public studies or internal research, of the ways that [its] products harm

19    children." *See* ECF 430 at 20; *see also*, *e.g.*, SAMC ¶ 376 (describing Meta's failure to disclose,

20    *inter alia*, "detailed research regarding addiction to its products," "its conclusion that so-called

---

21    the omission made with failure to exercise reasonable care. *See, e.g.*, *First Marblehead Corp. v.*

22    *House*, 473 F.3d 1, 9–10 (1st Cir. 2006). Apart from arguing that Plaintiffs may not pursue claims

      based on "negligent nondisclosure or concealment," Mot. at 66, Meta does not address Plaintiffs'

23    negligent-misrepresentation claim. Accordingly, Plaintiffs do not separately discuss their

      negligence theory but respectfully submit that the facts discussed in Part I.D., *supra*, demonstrate

24    that their reliance was reasonable, even under the heightened pleading standard of Rule 9(b).

      Plaintiffs note, however, that "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s

25    heightened pleading standard applies to a claim for negligent misrepresentation," *Gilmore v. Wells*

      *Fargo Bank N.A*., 75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014) (quoting *Villegas v. Wells Fargo*

26    *Bank, N.A*., 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012)), and district courts remain

27    "divided on [this] question," *Njoku v. Geico Gen. Ins. Co*., 2020 WL 4915433, at *3 (N.D. Cal.

      May 6, 2020).

28

problematic use causes profound harms," that "multiple Meta product features that act as triggers for so-called problematic use," and other findings). As this Court held, Section 230 does not bar Plaintiffs' failure-to-warn claims because Defendants could provide such warnings "without making any changes to how they publish content." *Id.*; *see also supra* Part I.B. The same is true for Plaintiffs' omission claims.

*Third*, Meta asserts that "statements about 'safety'" are non-actionable "opinions, not misrepresentations of fact." Mot. at 65; *see also id.* at 59–60 (asserting that statements in SAMC ¶¶ 370(d), 370(f), 370(m), and 379 are "non-actionable statements of opinion").[17] Meta is wrong: promises of safety may be misrepresentations of fact. *See Hauter*, 534 P.2d at 381 (collecting cases); *see also Lead Indus. Ass'n*, 597 N.Y.S.2d at 700 ("Misrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective, gives rise to a separate cause of action for fraud.").

Moreover, even when "a speaker gives an opinion when he or she is aware of facts incompatible with such opinion, the opinion may amount to a false statement of fact if made with the intention of deceiving or misleading." 37 Am. Jur. 2d Fraud and Deceit § 74 (2023); *see, e.g.*, *Jones*, 701 F. Supp. 2d at 1027–28 ("[S]tatements that would otherwise amount to puffery can be actionable if the speaker is aware that the statement is deceptive."); *see also supra* Part I.C.; *In re Quality Sys.*, 865 F.3d at 1143 ("[E]ven 'general statements of optimism, when taken in context, may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly.") (quoting *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)). Here, Plaintiffs adequately allege that Meta made statements over several years indicating that it prioritized safety on its platforms and that the platforms are in fact safe, with knowledge that those statements were incomplete and misleading. *Compare* SAMC ¶¶ 369–75, *with* SAMC ¶¶ 376–78.

---

[17] Notably, Plaintiffs allege various other misrepresentations of fact that Meta does not address. *See, e.g.*, SAMC ¶ 370(o) (statement denying that Meta could determine whether increased use of its platforms among teenage girls has any correlation with increased signs of depression or anxiety); SAMC ¶ 375 (statement denying awareness of consensus among studies or experts about how much screen time is "too much"); SAMC ¶ 384 (statement regarding restrictions on ads targeting young people).

*Fourth*, Meta maintains that the First Amendment immunizes it from claims based upon congressional testimony. But Plaintiffs' claims rest principally on what Meta did *not* say—to Congress or to anyone else—not what Meta did say. As discussed above, moreover, *see supra* Part I.C.2., Meta makes no attempt to show that it was seeking redress from Congress. *See, e.g.*, *In re Apple Inc.*, 2020 WL 2857397, at *18. At any rate, "neither the *Noerr-Pennington* doctrine nor the First Amendment . . . protects petitions predicated on fraud or deliberate misrepresentation[.]" *Edmondson & Gallagher*, 48 F.3d at 1267 (citing *Whelan v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995)).

*Fifth,* Meta challenges the materiality of certain of its "statements or omissions." Mot. at 66 (emphasis added). (Notably, Meta appears to concede the materiality of statements made in (or omitted from) congressional testimony. *See id*. at 65–66 (challenging only "other" statements of omissions).) As Meta acknowledges, a misrepresentation is material when "a reasonable person would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." Mot. at 34 (quoting *Kwikset Corp v. Superior Ct*., 51 Cal. 4th 310, 332 (2011)). This same standard applies to omissions. *See, e.g.*, *Apodaca v. Whirlpool Corp*., 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) ("[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue.") (citations omitted)); Restatement (Second) of Torts § 551 cmt. a (1977) (noting the materiality of omissions hinges on whether, if known, the facts would shape "his course of action").

As shown above, Plaintiffs more than adequately plead that they "would find information that [Meta's products] impacted the users' health, safety, and well-being . . . to be important when deciding whether to use, or continue to use, those products." SAMC ¶ 983; *see supra* Part I.D. Meta has represented to Plaintiffs and the public that its focus is on "safety." SAMC ¶¶ 369–70. It has gone so far as to assure the world that "Instagram's negative impact on teens [is] 'quite small.'" *Id*. ¶ 370(r). In reality, internal and external research about Meta's products showed that they pose serious risks to young people. *See, e.g.*, *id*. ¶ 365 ("[R]esearch on social media's role" in the "dramatic rise in rates of teenage anxiety, depression, and self harm . . . points heavily to a connection, not just from correlational studies but from true experiments, which strongly indicate

1  causation."); *id*. ¶ 367 ("Meta's internal research demonstrate[s] Instagram's and Facebook's

2  negative impacts on the health and well-being of the nation's youth."); *id*. ¶ 299–301 (describing

3  studies at Meta finding that addictive or "problematic use" of Facebook and Instagram was highest

4  among younger users). Reasonable consumers would certainly care about this disconnect.

5       *Sixth*, and finally, Meta argues that Plaintiffs cannot assert an omission claim based upon

6  negligence (Count 9) on the grounds that the tort of negligent misrepresentation "'extends only to

7  affirmative statements,' not 'negligent nondisclosure or concealment.'" Mot. at 66 (quoting

8  *Keshish v. Allstate Ins*. *Co*., 2012 WL 12887075, at *4 (C.D. Cal. Oct. 19, 2012)); *see also id*. at 66

9  n.73 (citing cases from Hawai'i, Kansas, Kentucky, and Nebraska). Meta's statement of the law is

10  incomplete. Plaintiffs concede that some states (including California and Kentucky) do not

11  recognize a pure-omission theory of negligent misrepresentation, but Meta inaccurately represents

12  the state of the law in Hawai'i, Kansas, Nebraska.[18] Indeed, the vast majority of jurisdictions either

13  recognize that nondisclosure may support a negligent misrepresentation claim, *see* App'x, Table 3,

14  or have not decided the issue, *see* App'x, Table 4.

15                          **CONCLUSION**

16       For the foregoing reasons, the Court should deny Defendants' motion to dismiss Count 7

17  and Meta's motion to dismiss Counts 8 and 9.

18

19

20

---

21  [18] The Supreme Court of Hawai'i appeared to at least facially acknowledge a negligent

22  nondisclosure claim when it noted the Restatement (Second) of Torts § 551 (1977), including a
party's "duty to exercise reasonable care to disclose," in *Exotics Hawaii-Kona, Inc*. *v. E.I. Du Pont

23  De Nemours & Co*., 172 P.3d 1021, 1067 n.3 (Haw. 2007). In *Hanson v. Hackman Corp*., 2008 WL
4471679 (Kan. Ct. App. 2008), the court observed that "Kansas has not adopted the tort of negligent

24  nondisclosure, *although neither has the tort directly been rejected*." *Id*. at *6 (emphasis added).
Although Meta is correct that the Supreme Court of Nebraska expressed skepticism about accepting

25  negligent concealment as a tort in the 1987 case *Nelson v. Cheney*, Mot. at 66 n.73 (citing 401

26  N.W.2d 242, 476 (Neb. 1987)), more recent cases suggest that Nebraska's common law is evolving.
*See Gibb v. Citicorp Mortg*.*, Inc*., 518 N.W.2d 910, 921 (Neb. 1994) (adopting negligent

27  misrepresentation cause of action); *Dinsmore v. Gateway Realty of McCook, Inc*., 2005 WL
1021655, at *5 (Neb. Ct. App. Apr. 26, 2005) (entertaining a claim of negligent misrepresentation

28  where there was a "failure to disclose" information).

**APPENDIX**

| | TABLE 1 |
|---|---|
| | **Defendants' deceptive conduct is prohibited by the UDAP laws of all 25 states raised in Defendants' motion.** |
| AL | Alabama's Deceptive Trade Practices Act defines "trade" and "commerce" to include "the advertising, buying, offering for sale, sale or **distribution or performance of any service or goods, and any other article, commodity, or thing of value wherever situated and shall include any trade or commerce** affecting the people of this state." Ala. Code § 8-19-3(14) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A.<br><br>"Consumer" is defined as "[a]ny natural person who buys goods or services for personal, family, or household use." § 8-19-3(4). Plaintiffs "buy" access to Defendants' platforms through the provision of valuable personal data and attention. *See supra* Part I.A. |
| CT | Connecticut's Unfair Trade Practices Act defines "trade" and "commerce" to mean "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or **the distribution of any services and any property, tangible or intangible**, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| GA | Georgia's Fair Business Practices Act defines "trade" and "commerce" to mean "the advertising, **distribution**, sale, lease, or offering for distribution, sale, or lease **of any goods, services, or any property, tangible or intangible**, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of this state." Ga. Code Ann. § 10-1-392(a)(28) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A.<br><br>"Consumer transactions" means "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes." § 10-1-392(a)(10). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "consumer transactions." *See supra* Part I.A. |
| HI | Hawaii's Unfair or Deceptive Acts or Practices Act prohibits "unfair or deceptive acts or practices in the conduct of **any trade or commerce**[.]" HRS § 480-2 (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| ID | Idaho's Consumer Protection Act defines "trade" and "commerce" as "the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or **distributing goods or services**, either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state." Idaho Code Ann. § 48-602(2) (2023) (emphasis added). "Goods" means "**any property, tangible or intangible**, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, including certificates or coupons exchangeable for such goods." § 48-602(6) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| IL | Illinois's Consumer Fraud and Deceptive Business Practices Act defines "trade" and "commerce" to "mean the advertising, offering for sale, sale, or **distribution of any services and any property, tangible or intangible**, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, **and shall include any trade or commerce directly or indirectly affecting the people of this State**." 815 Ill. Comp. Stat. 505/1(f) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| IN | Indiana's Deceptive Consumer Sales Act defines "consumer transaction" to mean "a sale, lease, assignment, award by chance, **or other disposition of an item of personal property, real property, a service, or an intangible** . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." Ind. Code § 24-5-0.5-2(1) (2023) (emphasis added). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "consumer transactions." *See supra* Part I.A. |
| KS | Kansas's Consumer Protection Act defines "consumer transaction" to mean "a sale, lease, assignment or **other disposition for value of property or services** within this state, except insurance contracts regulated under state law, to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Kan. Stat. Ann. § 50-624(c) (2023). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "consumer transactions." *See supra* Part I.A. |

| | |
|---|---|
| KY | Kentucky's Consumer Protection Act broadly defines "trade" and "commerce" to be "the advertising, offering for sale, or **distribution of any service and any property, tangible or intangible**, real, personal or mixed, and any other article, commodity, or thing of value, **and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth**." Ky. Rev. Stat. Ann. § 367.110(2) (West 2023). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| LA | Louisiana's Unfair Trade Practices Act broadly defines "trade and commerce" as "the advertising . . . **or distribution of any services and any property**, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, **and includes any trade or commerce directly or indirectly affecting the people of the state**." La. Stat. Ann. § 51:1402(10) (2023). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| ME | Maine Unfair Trade Practices Act defines "trade" and "commerce" to include "advertising, offering for sale, sale or **distribution of any services and any property, tangible or intangible**, real, personal or mixed, and any other article, commodity or thing of value wherever situate, **and shall include any trade or commerce directly or indirectly affecting the people of this State**." Me. Rev. Stat. Ann. tit. 5, § 206(3) (West 2024) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| MD | Maryland's Consumer Protection Act applies to "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services." Md. Code Ann., Com. Law § 13-303(1) (West 2023). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "sales." *See supra* Part I.A. |
| MA | Massachusetts' Regulation of Business Practices for Consumers Protection Act defines "trade" and "commerce" to include "the advertising, the offering for sale, rent or lease, the sale, rent, lease **or distribution of any services and any property, tangible or intangible**, real, personal or mixed, any security . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, **and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth**." Mass. Gen. Laws Ann. ch. 93A, § 1(b) (West 2023). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| MI | Michigan's Consumer Protection Act defines "trade" and "commerce" to mean "**the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes** the advertising, solicitation, offering for sale or rent, sale, lease, or **distribution of a service or property, tangible or intangible**, real, personal, or mixed, or any other article, or a business opportunity." Mich. Comp. Laws § 445.902 (2023) (emphasis added); *see also Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 848 (E.D. Mich. 2003) ("There is no requirement that consumer goods be sold or purchased."). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| MO | Missouri's Merchandising Practices Act defines "trade" and "commerce" to include "the advertising, offering for sale, sale, or **distribution**, or any combination thereof, **of any services and any property, tangible or intangible**, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated." Mo. Rev. Stat. § 407.010(7) (2023). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| NE | Nebraska's Consumer Protection Act defines "trade" and "commerce" to include "sale of assets or services **and any commerce** directly or indirectly affecting the people of the State of Nebraska." Neb. Rev. Stat. Ann. § 59-1601(2) (2023) (emphasis added). "Assets" means "any property, **tangible or intangible**, real, personal, or mixed, and wherever situated, and any other thing of value." § 59-1601(3) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| OH | Ohio's Consumer Sales Practices Act defines "consumer transaction" to include "a sale, lease, assignment, award by chance, or **other transfer of an item of goods, a service, a franchise, or an intangible**, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code Ann. § 1345.01(A) (emphasis added). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "sales" or "other transfers." *See supra* Part I.A. |
| PA | Pennsylvania's Unfair Trade Practices and Consumer Protection Law defines "trade" and "commerce" to include the "advertising, offering for sale, sale, or **distribution of any services and any property, tangible or intangible**…" 73 Pa. Stat. and Cons. Stat. § 201-2(3) (West 2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| RI | Rhode Island's Deceptive Trade Practices Act defines "trade" and "commerce" to include "the advertising, offering for sale, sale, or **distribution of any services and any property, tangible or intangible**, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and include any trade or commerce directly or indirectly affecting the people of this state." 6 R.I. Gen. Laws § 6-13.1-1(5) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| SC | South Carolina's Unfair Trade Practices Act defines "trade" and "commerce to include "the advertising, offering for sale, sale **or distribution of any services and any property, tangible or intangible**, real, personal or mixed, and any other article, commodity or thing of value wherever situate, **and shall include any trade or commerce** directly or indirectly affecting the people of this State." S.C. Code Ann. § 39-5-10(b) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| TN | Tennessee's Consumer Protection Act prohibits "unfair or deceptive acts or practices affecting the conduct **of any trade or commerce**." Tenn. Code Ann. § 47–18–104(b) (2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |

| | |
|---|---|
| TX | Texas's Deceptive Trade Practices Act defines "trade" and "commerce" to include "the advertising, offering for sale, sale, lease, or **distribution of any good or service, of any property, tangible or intangible**, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, **and shall include any trade or commerce** directly or indirectly affecting the people of this state." Tex. Bus. & Com. Code Ann. § 17.45(6) (West 2023) (emphasis added). Defendants' deceptive conduct occurred in connection with trade and commerce. *See supra* Part I.A. |
| UT | Utah's Consumer Sales Practices Act defines "consumer transaction" to include "a sale, lease, assignment, award by chance, or other written or oral transfer or **disposition of goods, services, or other property, both tangible and intangible** (except securities and insurance)" to a person for "primarily personal, family, or household purposes." Utah Code Ann. § 13-11-3(2)(a) (West 2023) (emphasis added). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "sales" or "other dispositions." *See supra* Part I.A. |
| VT | Vermont's Consumer Protection Act prohibits "unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, § 2453(a) (2023). Defendants' deceptive conduct occurred in connection with commerce. *See supra* Part I.A.<br><br>The VCPA defines "consumer" as "any person who purchases, leases, **contracts for, or otherwise agrees to pay consideration for goods or services** not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household." § 2451a(a). Plaintiffs' provision of data to Defendants in exchange for access to their platforms is "consideration for goods or services." *See supra* Part I.A. |

| | |
|---|---|
| VA | Virginia's Consumer Protection Act defines "consumer transaction" to include the "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Va. Code Ann. § 59.1-198 (2023) (emphasis added). "Goods" means "all real, personal or mixed property, **tangible or intangible**. For purposes of this statute, **intangible property includes but shall not be limited to 'computer information' and 'informational rights' in computer information** as defined in [Virginia's Uniform Computer Information Transaction Act] § 59.1-501.2." *Id.* (emphasis added). Plaintiffs' provision of data to Defendants in exchange for access to their platforms are "consumer transactions." *See supra* Part I.A. |

| | **TABLE 2**<br><br>**Jurisdictions that do not require reliance for UDAP claims.** | |
|---|---|---|
| CO | *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 381 (C.D. Cal. 2018) ("[R]eliance does not appear to be an element of a claim under Colorado's consumer protection statute."). | |
| MA | *Aspinall v. Philip Morris Cos. Inc.*, 813 N.E.2d 476, 486 (Mass. 2004) (reliance not required). | |
| ME | *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 904, 906-08 (Me. 1996) (discussing "justifiable reliance" as an element of negligent misrepresentation but not as an element of the Maine unfair or deceptive act claim) | |
| MN | *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 811 (Minn. 2004) (plaintiff need not "plead[] and prove[e] 'traditional common law reliance'" for Consumer Fraud Act claim). | |
| NC | *In re Hester*, 2015 WL 6125308, at *4 (Bankr. E.D.N.C. Oct. 16, 2015) (holding that plaintiff asserting North Carolina UDAP claim need not show reliance unless the claim "'stem[s] from' alleged misrepresentations"). | |
| ND | *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 98 (D. Mass. 2008) (listing North Dakota's consumer protection statute as among those the parties "appear to agree . . . do not require the element of reliance"); N.D. Cent. Code § 51-15-02 (defining relevant acts as deceptive "whether or not any person has in fact been misled, deceived, or damaged . . . ."). | |

| | |
|---|---|
| NJ | *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997) (reliance not required); *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 813–14 (N.J. Super. Ct. App. Div. 2000) (noting consumer fraud differs as a cause of action from common-law fraud, which "requires proof of reliance"). |
| OH | *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 835 (S.D. Ohio 2003) ("Unlike a fraud claim, where a plaintiff must allege harm above and beyond the misrepresentation and reliance thereon, a cause of action accrues under the Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs."). |
| OR | *Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977) (claims alleging "failure to disclose" do not require reliance). |
| RI | *Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. at 98 (listing Rhode Island's consumer protection statute as among those the parties "appear to agree . . . do not require the element of reliance"). |
| SC | *See Wright v. Craft*, 640 S.E.2d 486, 498 (S,C. Ct. App. 2006) (citing S.C. Code Ann. § 39-5-10 *et seq.*) (listing elements of a claim under South Carolina's unfair trade practices law). |

1

2
3
4

| **TABLE 3**<br><br>**Jurisdictions that recognize nondisclosure may<br>support a negligent-misrepresentation claim.** | |
|---|---|
| AL | *Auburn's Gameday Ctr. at Magnolia Corner Owners Ass'n v. Murray*, 138 So. 3d 317, 329 (Ala. Civ. App. 2013) (acknowledging negligent "fail[ure] to disclose"). |
| AZ | *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992) ("Negligent misrepresentation requires a misrepresentation or omission of a fact."). |
| CO | *Elevation 10175, LLC v. Douglas Cnty. Ins. Servs, Inc..*, 2020 WL 11271852, at *3 (Colo. Dist. Ct. Dec. 1, 2020) ("negligent omission of information can lead to liability"). |
| CT | *Weingarden v. Milford Anesthesia Associates, P.C.*, 2013 WL 3119578, at *20 (Conn. Super. Ct. May 30, 2013) ("Nondisclosure can form the basis of a negligent misrepresentation claim."). |
| DE | *Oracle Partners, L.P. v. Biolase, Inc*., 2014 WL 2120348, at *19 (Del. Ch. May 21, 2014), *aff'd*, 97 A.3d 1029 (Del. 2014) (acknowledging "false statements or omissions" as bases for a negligent misrepresentation claim). |
| HI | *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co*., 172 P.3d 1021, 1067 n.3 (Haw. 2007) (noting Restatement (Second) of Torts § 551 (1977), which includes "duty to exercise reasonable care to disclose"). |

| | |
|---|---|
| LA | *McAuslin v. Grinnell Corp.*, 1999 WL 370597, at *2 (E.D. La. June 8, 1999) ("[N]egligent misrepresentation encompasses nondisclosures as well as affirmative misrepresentations."). |
| MI | *Burket v. Hyman Lippitt, P.C.*, 560 F. Supp. 2d 571, 597 (E.D. Mich. 2008) ("[A] claim for negligent misrepresentation under Michigan law can be based on omissions so long as there is a duty to disclose."), *vacated in part on other grounds*, 2008 WL 2478308 (E.D. Mich. June 17, 2008). |
| MN | *In re Target Corp. Customer Data Sec. Breach Litig.*, 64 F. Supp. 3d 1304, 1310-12 (D. Minn. 2014) (analyzing negligent-omission claim). |
| MS | *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007) (identifying the first element of negligent misrepresentation as "a misrepresentation or omission of a fact"). |
| MO | *Wengert v. Thomas L. Meyer, Inc.*, 152 S.W.3d 379, 382 (Mo. Ct. App. 2004) ("[N]egligent misrepresentation can arise from a person's affirmative misrepresentations or from passive nondisclosure."). |
| MT | *Jackson v. State*, 956 P.2d 35, 49 (Mont. 1998) (analyzing negligent nondisclosure claim). |
| NE | *Gibb v. Citicorp Mortg., Inc.*, 518 N.W.2d 910, 921-22 (Neb. 1994) (adopting negligent misrepresentation cause of action). |

| NV | *Noonan v. Bayview Loan Servicing*, 2019 WL 1552690, at *1 (Nev. Apr. 8, 2019) (finding summary judgment proper where defendant "neither made an affirmative false statement nor omitted a material fact it was bound to disclose"). |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| NH | *Ingaharro v. Blanchette*, 440 A.2d 445, 447 (N.H. 1982) (implying that negligent misrepresentation by omission is appropriate where there is a duty to disclose). |
| NJ | *Eberhart v. LG Elecs. USA, Inc.,* 188 F. Supp. 3d 401, 410 (D.N.J. 2016) ("[N]egligent misrepresentation claim may be based on an omission."). |
| NM | *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 766 P.2d 928, 933 (N.M. Ct. App. 1988) (evaluating negligent representation where "failure to disclose is alleged"). |
| NY | *Krobath v. S. Nassau Cmties. Hosp.*, 178 A.D.3d 807, 808 (N.Y. App. Div. 2019) (analyzing plaintiff's claim as a "species of negligent misrepresentation based on the omission to disclose material facts"). |
| OK | *Evers v. FSF Overlake Assocs.*, 77 P.3d 581, 587 n.3 (Okla. 2003) ("[W]here one has a duty to speak, but remains silent, there may be constructive fraud."). |
| OR | *Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 WL 2218405, at *16 (D. Or. Sept. 6, 2005) (explaining Oregon negligent misrepresentation claim requires "negligently making false representations or omitting material facts"). |
| SC | *Pruitt v. Morrow*, 342 S.E.2d 400, 401 (S.C. 1986) (recognizing "negligent or reckless non-disclosure" claim). |

| | |
|---|---|
| TN | *Justice v. Anderson Cnty.*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997) ("Nondisclosure of a material fact may also give rise to a claim for fraudulent or negligent misrepresentation . . . ."). |
| UT | *Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004) ("[A]n omission may be actionable as a negligent misrepresentation where the defendant has a duty to disclose . . . ."). |
| WA | *Van Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006) (en banc) ("If a party has a duty to disclose information, the failure to do so can constitute negligent misrepresentation."). |

| | **TABLE 4**<br><br>**Jurisdictions that have not decided whether nondisclosure<br>may support a negligent-misrepresentation claim.** |
|---|---|
| IN | *Troth v. Warfield*, 495 F. Supp. 3d 729, 742 (N.D. Ind. 2020) (negligent misrepresentation law in Indiana is evolving and in a state of "relative chaos"). |
| IA | *The Nat'l Bank v. FCC Equip. Fin., Inc.*, 801 N.W.2d 17, 22 (Iowa Ct. App. 2011) (dismissing negligent nondisclosure claim on other grounds, declining to decide whether such a claim exists). |
| KA | *Hanson v. Hackman Corp.*, 2008 WL 4471679, at *6 (Kan. Ct. App. 2008) ("Kansas has not adopted the tort of negligent nondisclosure, although neither has the tort directly been rejected."). |
| MD | *Chassels v. Krepps*, 174 A.3d 896, 902 (Md. Ct. Spec. App. 2017) (acknowledging that negligent concealment has not yet been recognized as a tort in Maryland). |
| NC | *Bradshaw v. Maiden*, 2015 WL 4720387, at *9 (N.C. Super. Ct. Aug. 10, 2015) *aff'd*, 2022 WL 17985671881, at *1 (N.C. App. Ct. 2022) (plaintiff successfully alleged a claim for negligent misrepresentation based on defendant's "false and fraudulent representations, omitted material facts and told deceptive half-truths"). |
| WI | *Eberts v. Goderstad*, 569 F.3d 757, 767 n.8 (7th Cir. 2009) (noting that Wisconsin's pattern jury instructions contemplate "silence if there is a duty to speak" as "a representation of a fact for purposes of . . . negligent misrepresentation"). |

Respectfully submitted,

Dated: February 5, 2024

By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS COUNTS 7-9
CASE NO. 4:22-MD-03047-YGR

1   JAMES J. BILSBORROW
    **WEITZ & LUXENBERG, PC**
2   700 BROADWAY
    NEW YORK, NY 10003
3   Telephone: 212-558-5500
    Facsimile: 212-344-5461
4   jbilsborrow@weitzlux.com
5
    PAIGE BOLDT
6   **WATTS GUERRA LLP**
    4 Dominion Drive, Bldg. 3, Suite 100
7   San Antonio, TX 78257
    T: 210-448-0500
8   PBoldt@WattsGuerra.com
9
    THOMAS P. CARTMELL
10  **WAGSTAFF & CARTMELL LLP**
    4740 Grand Avenue, Suite 300
11  Kansas City, MO 64112
    T: 816-701 1100
12  tcartmell@wcllp.com
13
    JAYNE CONROY
14  **SIMMONS HANLY CONROY, LLC**
    112 MADISON AVE, 7TH FLOOR
15  NEW YORK, NY 10016
    Telephone: 917-882-5522
16  jconroy@simmonsfirm.com
    CARRIE GOLDBERG
17  **C.A. GOLDBERG, PLLC**
    16 Court St.
18  Brooklyn, NY 11241
    T: (646) 666-8908
19  carrie@cagoldberglaw.com
20
21  SIN-TING MARY LIU
    **AYLSTOCK WITKIN KREIS &**
22  **OVERHOLTZ, PLLC**
    17 EAST MAIN STREET, SUITE 200
23  PENSACOLA, FL 32502
    Telephone: 510-698-9566
24  mliu@awkolaw.com
25
    ANDRE MURA
26  **GIBBS LAW GROUP, LLP**
    1111 BROADWAY, SUITE 2100
27  OAKLAND, CA 94607
    Telephone: 510-350-9717
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS COUNTS 7-9
CASE NO. 4:22-MD-03047-YGR

amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*