# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

META PLATFORMS, INC.,
1601 Willow Road,
Menlo Park, California  94025

           Plaintiff,

    v.

THE FEDERAL TRADE COMMISSION,

– and –

LINA M. KHAN, REBECCA KELLY
SLAUGHTER, and ALVARO BEDOYA,
in their official capacities as Commissioners
of the Federal Trade Commission,

           Defendants.

Case No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

       Plaintiff Meta Platforms, Inc. ("Meta") brings this Complaint for injunctive and

declaratory relief against the Federal Trade Commission (the "FTC" or "Commission") and Lina

M. Khan, Rebecca Kelly Slaughter, and Alvaro Bedoya, in their official capacities as

Commissioners of the FTC (the "Commissioners" and together with the FTC, "Defendants").

Meta alleges as follows:

### INTRODUCTION[1]

       1.     Meta (formerly Facebook, Inc.) brings this Complaint to challenge the structurally

unconstitutional authority exercised by the FTC through its Commissioners in an administrative

reopening proceeding against Meta.  *See In the Matter of Facebook, Inc.*, FTC File No. C-4365

(the "FTC Proceeding").  Meta respectfully requests that this Court declare that certain

---

[1] Unless otherwise indicated, all emphasis has been added to quotations.

fundamental aspects of the Commission's structure violate the U.S. Constitution, and that these violations render unlawful the FTC Proceeding against Meta.  Meta also respectfully requests that this Court permanently enjoin the FTC Proceeding.

2.     The Commission reopened the FTC Proceeding in May 2023 by issuing an administrative order to show cause ("OTSC").[2]  The OTSC, expressly referred to as an "enforcement action," requires Meta to (a) answer accusations (including in the form of prejudged factual findings and legal determinations made by the Commissioners) primarily that Meta has violated the agreed terms of a document that was entered by the Commission as a consent order in 2020 (the "2020 Order"), and (b) show cause why the 2020 Order should not be modified as proposed by the Commission.[3]  Meta's deadline for responding to the OTSC is December 11, 2023.[4]

3.     In this Complaint, Meta does not seek to litigate the merits of the Commission's accusations and findings against Meta in the FTC Proceeding.  Instead, Meta challenges the

---

[2] The public version of the OTSC is available at www.ftc.gov/system/files/ftc_gov/pdf/C4365-Commission-Order-to-Show-Cause-%28Redacted-Public%29.pdf.

[3] The Commission entered the 2020 Order as part of the agreed settlement of a civil action before this Court that the United States had brought, on behalf of the Commission, against Meta in 2019.  *See United States. v. Facebook, Inc.*, 19-cv-02184-TJK (D.D.C. July 24, 2019).  The 2020 Order is titled "Attachment A" because it was attached to the judicial consent decree that resolved the civil action in 2020.  Meta advanced the structural constitutional claims asserted in this Complaint as part of a motion before this Court—per the Honorable Timothy J. Kelly—to enjoin the FTC Proceeding on various grounds, including to enforce the consent decree.  On November 27, 2023, Judge Kelly ruled that he lacks jurisdiction over Meta's motion because the 2020 Order was not part of the consent decree.  Meta now asserts in this Complaint structural constitutional claims that include the claims Meta asserted in the motion before Judge Kelly.

[4] The Commission twice extended the original 30-day deadline in light of Meta's motion to enjoin the FTC Proceeding in *United States v. Facebook.*

constitutionality of five structural characteristics of the Commission that render the FTC

Proceeding unconstitutional.

4.     First, the FTC is structured so that in administrative adjudications, including the

FTC Proceeding against Meta, the Commission has a dual role as prosecutor and judge in

violation of the Due Process Clause.  *See* U.S. Const. amend. V, cl. 4.  Under the Federal Trade

Commission Act (the "FTC Act"), the Commission (as prosecutor) initiates an administrative

enforcement proceeding by voting to initiate it and (as judge) decides the matter, including

through factual findings and legal determinations.  In the FTC Proceeding against Meta, the due

process violation resulting from the Commission's unconstitutional dual role is especially

egregious: the Commission already has, before hearing from Meta, prejudged the matter by

formally determining, based on an extensive and unprecedented "Preliminary Finding of Facts,"

that "modifications to the [2020] Order are needed."  On information and belief, the Commission

has never before made preliminary findings of fact as part of an administrative adjudication.

5.     Second, the Commissioners exercise executive authority while being

unconstitutionally insulated from removal by the President, who can remove a Commissioner

only "for inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  Among the

Commission's broad executive functions is its prosecutorial role in administrative adjudications,

including the FTC Proceeding—which the Commission describes as an "enforcement action."

Moreover, the FTC Act has significantly expanded the grant to the Commission of executive

powers since 1935, when the Supreme Court upheld the FTC Act's removal restriction because

the Commission "exercise[d] 'no part of the executive power.'"  *Seila L. LLC v. CFPB*, 140 S.

Ct. 2183, 2198 (2020) (quoting *Humphrey's Ex'r v. United States*, 295 U.S. 602, 628 (1935)).

The post-1935 expansion of the Commission's executive power includes the language in Section

5(b) of the FTC Act that the Commission (erroneously) invokes as the source of its authority to modify the 2020 Order, and the grant in Section 13(b) of the power to prosecute enforcement actions in federal court.

6.      Third, Congress unconstitutionally has delegated to the FTC the power to assign disputes to administrative adjudication rather than litigating them before an Article III court.  In delegating this peculiarly legislative power to the Commission, Congress failed to supply an "intelligible principle" to guide its exercise.  Thus, the delegation violates Article I of the U.S. Constitution.  The Commission has (erroneously) invoked Congress's unconstitutional delegation as the statutory authorization for the FTC Proceeding.

7.      Fourth, the FTC adjudicates private rights in violation of Article III.  In the FTC Proceeding, for example, the Commission has proposed to unilaterally modify the terms of the 2020 Order—an agreement it reached with Meta in settlement of the lawsuit brought by the United States on behalf of the FTC before an Article III court.  Further, the proposed modifications infringe Meta's property rights including Meta's contractual rights under the 2020 Order—and would dictate how and when Meta can design its products.  The U.S. Constitution requires that these private rights be adjudicated by an Article III court.

8.      Fifth, adjudication of these issues by the Commission in a proceeding that affords Meta no right to a trial by jury—and pursuant to a statutory scheme that provides for the potential future imposition of civil penalties, *see* 15 U.S.C. § 45(l)—violates Meta's right to a jury trial under the Seventh Amendment.

9.      While Meta challenges the FTC on these bases, it has a long history of cooperation with the Commission.  Indeed, Meta has accommodated the FTC for over a decade in connection with the FTC Proceeding that the FTC abruptly reopened.

10.     In 2011, for example, Meta entered into an administrative settlement with the FTC to resolve allegations made in the FTC Proceeding that it engaged in unfair and deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  The settlement was memorialized in an administrative consent order (the "2012 FTC Order") issued by the FTC on July 27, 2012.[5]  The 2012 FTC Order imposed certain restrictions and requirements on Meta.

11.     In 2018, the FTC informed Meta that the agency believed that Meta had violated the 2012 FTC Order and Section 5(a).  Meta subsequently negotiated with the FTC, and with the United States Department of Justice ("DOJ"), to resolve those allegations.  After the parties reached a settlement, the United States, on behalf of the Commission, filed a complaint against Meta in this Court seeking civil penalties and injunctive relief for the alleged violations.  *See United States. v. Facebook, Inc.*, 19-cv-02184-TJK (D.D.C. July 24, 2019).  The United States concurrently filed a consent motion (the "Consent Motion") requesting entry of a stipulated order (the "Stipulated Order") memorializing the parties' settlement.

12.     In an opinion dated April 23, 2020, this Court—per Judge Kelly—granted the Consent Motion and entered the Stipulated Order, which included the 2020 Order as "Attachment A."  The Stipulated Order, to which the 2020 FTC Order was attached, ordered Meta to pay $5 billion in civil penalties.  It also required Meta's consent to the reopening of the FTC Proceeding, including by waiving certain procedural rights under FTC regulations, so that the Commission could supersede the 2012 FTC Order by entering the 2020 Order.

13.     Meta invested billions of dollars in designing and implementing the programs required by the 2020 Order, and in facilitating the oversight of an Assessor that Meta appointed,

---

[5] *Available at* www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf.

and the FTC approved, pursuant to the 2020 Order.  Meta is confident that these efforts were more than sufficient to meet the compliance requirements of the 2020 Order.

14.     Now, three years later, the FTC seeks to unilaterally modify the terms of the 2020 Order, as described below.

15.     That obvious power grab—to unilaterally alter an agreed-upon, court-approved order through a prejudged administrative adjudication—provides perhaps the greatest example of the Commission's structural defects resulting in an unconstitutional adjudication by fiat.  Indeed, any semblance of an unbiased review is belied by the fact that the Commission has *already* issued its preliminary finding of facts, and a formal determination that modifications to the 2020 Order are "needed," before Meta has even had a chance to respond.

16.     The harm to Meta if it were forced to respond would be immediate and irreparable.  The mere subjection to an illegitimate proceeding by an illegitimate decision maker is sufficient harm to warrant an injunction.

17.     While Meta disagrees with the OTSC, including its preliminary finding of facts, and believes the Commission has evaded Judge Kelly's continuing exclusive jurisdiction over the 2020 Order, this Complaint challenges only the structural unconstitutionality of the Commission and the FTC Proceeding against Meta.   These challenges can and should be heard in federal district court prior to the FTC Proceeding.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

## PARTIES

18.     Plaintiff Meta Platforms, Inc. is a Delaware corporation with its principal office or place of business at 1601 Willow Road, Menlo Park, California 94025.

19.     Defendant Federal Trade Commission is an agency of the United States government whose principal place of business, on information and belief, is Washington, D.C.

20.     Defendant Lina M. Khan is the Chair of the Federal Trade Commission.  She was sworn in as Chair of the Commission on June 15, 2021.  She is being sued in her official capacity.

21.     Defendant Rebecca Kelly Slaughter is a Commissioner of the FTC.  She was sworn in as a Commissioner on May 2, 2018.  She is being sued in her official capacity.

22.     Defendant Alvaro Bedoya is a Commissioner of the FTC.  He was sworn in as a Commissioner on May 16, 2022.  He is being sued in his official capacity.

## JURISDICTION

23.     This Action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this Action pursuant to the U.S. Constitution and 28 U.S.C. § 1331.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e), including because a substantial part of the events or omissions giving rise to the claims occurred in this district.

25.     This Court is authorized to grant the relief prayed for under the U.S. Constitution; the All Writs Act, 28 U.S.C. § 1651(a); and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201(a)-2202.

## BACKGROUND

### A.     Meta's Compliance with the 2020 Order and Cooperation with the Commission

26.     Meta promptly began implementing its obligations under the 2020 Order, including instituting compliance programs and retaining an assessor (the "Assessor") to conduct an initial assessment of Meta's programs and, for 20 years, biennial assessments.  (2020 Order at 13.)  Meta invested billions of dollars in designing and implementing the compliance programs

required by the 2020 Order, and in facilitating the Assessor's oversight.  Meta is confident that these efforts were more than sufficient to meet the requirements of the 2020 Order.

27.     The Assessor submitted its first assessment of Meta's programs to the FTC and DOJ on July 1, 2021.  This assessment—which covered the initial six-month period during which Meta started its compliance program—reflected Meta's good faith efforts, its well-designed program, and its substantial compliance with the 2020 Order.  The Assessor concluded: "We believe the overall scope of the program … is logical and appropriately comprehensive.  As a result, the key foundational elements necessary for an effective program are now in place, although their maturity and completeness vary."[6]  As the 2020 Order contemplated and required, the Assessor identified a number of "gaps and weaknesses" for Meta to address, which Meta has done.

28.     Between August 2021 and May 2022, Meta cooperatively responded to numerous requests from the FTC relating to the Assessor's findings.  Meta's responses included multiple depositions, hundreds of pages of narrative responses, and nearly 30,000 pages of underlying source material relating to its extensive efforts to design and implement the programs required by the 2020 Order.

29.     After completing its responses in May 2022, Meta did not hear further from the FTC concerning its compliance with the 2020 Order for nearly a year.  Despite Meta's record of cooperation, on March 13, 2023, the FTC sent letters to Meta stating that the FTC was considering initiating a "proceeding" against Meta.  The FTC apparently provided this notice

---

[6] *Available at* www.ftc.gov/system/files/documents/foia_requests/facebook_assessment_report-executive_summary-redacted_for_release.pdf.

only to inform Meta that information that Meta had provided to the FTC in the FTC Proceeding
may be disclosed in the new proceeding.

### B.    The Commission's OTSC

30.    Prior to issuing the OTSC, the Commission eschewed its established practice of
affording companies the opportunity to engage with senior FTC staff and Commissioners prior to
the initiation of any proceeding.  After Meta received the FTC letters about a potential new
proceeding, Meta reached out to the FTC multiple times to request an opportunity to discuss the
FTC's concerns and to ask the FTC to follow its typical process and allow for further
engagement between Meta and its senior staff and Commissioners prior to initiating any
proceeding.

31.    The FTC, however, rebuffed Meta's requests.  It would not meet with Meta, and it
refused to provide Meta with any information regarding the type of "proceeding" it was planning
to initiate.  For example, in response to a letter to the Associate Director of the FTC's Division of
Enforcement reiterating Meta's request for "the same opportunity the Commission routinely
provides to companies to engage with senior staff and Commissioners prior to initiating any
proceeding," Commission staff attorneys responded: "At the present time, we have no further
information to share with you."

32.    On May 3, 2023, the Commissioners issued the OTSC in the FTC Proceeding.
The OTSC requires Meta to show cause why the Commission should not reopen the FTC
Proceeding and unilaterally "modify" the 2020 Order by replacing it with a proposed Modified
Decision and Order (the "Proposed FTC Order") that accompanied the OTSC.

33.    The Proposed FTC Order substantially rewrites the 2020 Order, imposing
expansive and unprecedented injunctive and equitable requirements and prohibitions on Meta.

Indeed, a comparison between the two documents shows more than 800 changes to what was a 23-page document, including:

- a requirement that at least one member of the Independent Privacy Committee of Meta's Board of Directors hold, or have held within the last five years, a position at a nonprofit where that person worked to advance civil liberties, privacy, consumer or data security-related goals;

- a prohibition on the introduction of *any* new or modified products, services, or features, unless the most recent assessment by the Assessor showed that Meta met certain privacy goals set forth in its Privacy Program and that there were no identifiable material gaps or weaknesses in the Privacy Program; and

- expanding the breadth of the Privacy Program to cover all of Meta's affiliates and subsidiaries and to include not only procedures to mitigate risks to the "privacy, confidentiality, security, and [i]ntegrity" of user information—as was the basis for the original order—but to risks concerning user's "physical harm, emotional distress or mental health harm, economic harm, reputational harm, relationship harm, discrimination, or harm to an individual's autonomy (*e.g.*, impairing an individual's ability to make his or her own informed decisions, such as thought coercion, manipulation, thwarted expectations, or failure to inform the individual of material facts)."

34. The OTSC also was accompanied by an extensive "Preliminary Finding of Facts in Support of the Order to Show Cause." In the OTSC, the Commission formally determined, as its regulations require, that "changed conditions demonstrat[e] that additional modifications to the Order are needed to clarify and strengthen its requirements." *See* 16 CFR § 3.72(b)(1) (requiring an OTSC to "stat[e] the changes it proposes to make in the decision and the reasons they are deemed necessary"). That determination rests on the Commission's finding of facts.

C.   **Prior Litigation over the OTSC**

35. On May 31, 2023, Meta moved in the *United States v. Facebook* action to enforce the Stipulated Order entered by this Court (per Judge Kelly) and to enjoin the FTC Proceeding. Meta advanced two principal reasons that the Stipulated Order bars the Commission from unilaterally modifying the 2020 Order. First, Meta relied on the Court's retention of exclusive

10

jurisdiction over enforcement and modification of the Stipulated Order—including the 2020 Order incorporated into the Stipulated Order as Attachment A. Second, Meta invoked the *res judicata* effect of the Stipulated Order, which memorialized the parties' settlement.[7]

36.     In the alternative, Meta also interposed structural constitutional objections to the FTC Proceeding, including those that are asserted in this Complaint.

37.     On November 27, 2023, this Court—per Judge Kelly—denied Meta's motion. Judge Kelly held that the Court lacks jurisdiction to entertain Meta's claims in the *United States v. Facebook, Inc.* action because the 2020 Order was not part of the Court's Stipulated Order entered in that action. His decision did not address Meta's constitutional challenges to the structure of the Commission and the FTC Proceeding, but he had explained at oral argument that if he determines that he lacks jurisdiction over the 2020 Order "what has to happen is Meta has to go and file another lawsuit and, maybe, it will be assigned to me, but, maybe, it will be assigned to one of my colleagues, and … whoever it's assigned to would go through the issue of whether there's *Axon* jurisdiction at this point."[8]

38.     On November 28, 2023, Meta noticed an appeal to the United States Court of Appeals for the District of Columbia Circuit.

---

[7] Meta raised additional arguments, including that the OTSC was not authorized, as the Commission claims, by Section 5(b) of the FTC Act. *See* 15 U.S.C. § 45(b) (authorizing the Commission, under certain circumstances, to "reopen and alter, modify, or set aside, in whole or in part any … order made or issued by it under" under Section 5, which does not provide for consent orders).

[8] Oral argument transcript in *United States v. Facebook, Inc.*, No. 1:19-cv-02184-TJK (D.D.C. Oct. 17, 2023) at 47; *see also id.* at 29-30 (explaining that if the Court does not have jurisdiction over the 2020 Order "through this suit," then "a possible outcome is [Meta] just ha[s] to go file a new case down the hall and you're going to get an Article III judge—a district judge, not a circuit judge, to evaluate whether that judge has *Axon* jurisdiction and whether you can get an injunction through that method").

**D.    The Commission's Dual Role as Prosecutor
and Judge in FTC Proceedings Violates Due Process**

39.     Under the OTSC, the Commission will function as both prosecutor and judge in the FTC Proceeding.  Indeed, the Commission already has acted as both prosecutor and judge in issuing the OTSC.  In the OTSC, the Commission formally determined (as prosecutor) that it "has good cause to believe" that Meta violated the requirements of the 2020 Order *and* (as judge) that "changed conditions *demonstrat[e]* that additional modifications to the Order are *needed* to clarify and strengthen its requirements."  Those determinations rest on the 1,164 paragraphs of "preliminary" finding of facts that the Commission already has made.  The OTSC explains that "[t]he *full record* supporting the *Commission's* findings is contained in the attached Preliminary Finding of Facts."  Finding facts is an adjudicative function, as is making determinations based on findings of fact such as that "modifications" to the 2020 Order are "needed."  OTSC at 1, 12-13.

40.     The Commission also has determined that Meta's alleged "non-compliance" with the 2020 Order necessitates "further enforcement action by the Commission."  If Meta opposes the "proposed" order, the Commission will adjudicate the matter, and render a "final" decision on the matters that it already has prejudged.

41.     It is unclear from the OTSC or FTC regulations what procedures the Commission's adjudication would entail.  In the OTSC, the Commission stated that "[i]f [Meta] files an Answer, Commission Rule 3.72(b) sets forth the next steps whereby the Commission will first consider [Meta's] Answer and then determine what process is appropriate to resolve

any issues that arise from that Answer." OTSC at 1. Rule 3.72(b) provides that the Commission

may determine whether the facts warrant a hearing and, if so, on what issues.[9]

42.    The Commission's final decision would be subject to a deferential standard of

review by a court of appeals. 15 U.S.C. § 45(c).

43.    The bias reflected by the Commission's prejudgment in the OTSC is an especially

egregious manifestation of the bias inherent in the Commission's dual role as prosecutor and

judge. As the United States Court of Appeals for the Ninth Circuit observed the "FTC does not

appear to dispute … that [it] has not lost a single [administrative] case in the past quarter-

century." *Axon Enter., Inc. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175

(2023).

44.    The FTC's internal administrative process is vastly out of step with the

substantive and procedural due process protections afforded to litigants in an Article III court.

For example, the federal district court judges are Article III impartial fact-finders who owe no

allegiances to the FTC. In contrast, the Commissioners both make the critical decision to issue

administrative complaints and subsequently decide the resulting administrative adjudications.

45.    That contrast is illustrated by the striking differences between the Commission's

record when litigating before itself (where it has not lost a single case in decades) and its record

when litigating in Article III courts (where it loses cases with great and growing frequency).

---

[9] Under Commission regulations, the Commission could hear evidence, and any role by an
administrative law judge would be limited to receiving evidence and making recommendations
to the Commission. *See* 16 CFR § 3.72(b)(2).

E.     **The Commissioners Exercise Executive Authority While**
       **Being Insulated from Removal in Violation of Article II**

46.     The Commission exercises extensive executive authority.  The Commission's law enforcement actions, including those being exercised against Meta pursuant to the OTSC, are executive.  They include initiating formal investigations, initiating disciplinary proceedings, and engaging in the daily exercise of prosecutorial discretion.  The Commissioners set enforcement priorities, initiate prosecutions, and determine what penalties to seek against private parties.

47.     Each of these powers is the exercise of executive power which, under Article II, is vested exclusively in the President.  *See* U.S. Const. art. II, § 1, cl. 1.  And while the President may delegate that power to the Commissioners, he or she must retain unrestricted removal authority over them.  Yet, the Commissioners are *not* subject to the President's unrestricted removal authority.  Instead, they can only be removed for "inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.

48.     The Commission's executive powers have greatly expanded since 1935, when the Supreme Court upheld the FTC Act's restrictions on the President's power to remove the Commissioners on the ground that the Commission "exercise[d] no part of the executive power." *Seila L.*, 140 S. Ct. at 2198 (2020) (quoting *Humphrey's Ex'r*, 295 U.S. at 628).  Executive powers granted to the Commission after 1935 include the language in Section 5(b) of the FTC Act that the Commission misconstrues as the source of its authority to modify the 2020 Order, *see supra* ¶ 5, and the grant in Section 13(b) of the power to prosecute enforcement actions in federal court.

49.     Nor does the current Commission otherwise possess the organizational features that caused the Supreme Court to uphold the removal restriction in *Humphrey's Executor*.  The

Commission that issued the OTSC had only three members, all from the same political party, and the Commissioners lack the tenure that is supposed to be the source of their expertise.

### F. The Commission's Unfettered Authority to Assign Disputes to Administrative Adjudication Violates Article I

50.     The power to assign a dispute to administrative adjudication is a peculiarly legislative power that Congress can delegate only if the exercise of the delegated authority is constrained by an intelligible principle.

51.     Congress has provided two avenues for the FTC to enforce the FTC Act: (1) an administrative action in which the Commission acts as an adjudicative body, *see* 15 U.S.C. § 45(b), and (2) a judicial action in which the Commission sues in federal district court and acts as a litigant, *see* 15 U.S.C. § 53(b).

52.     The Commission has admitted that it has "discretion to decide which route is appropriate for any given matter."  Brief for the Commission, *AMG Cap. Mgmt., LLC v. FTC*, No 19-508 (U.S.), 2020 WL 7093938, at *3-4; Supp. Mem. of the Commission, *FTC v. Wyndham Hotels & Resorts, LLC*, No. 14-3514 (3d Cir.), 2015 WL 1517040, at *6 (arguing that FTC Act "leaves to [the Commission's] discretion the cases in which it wishes to invoke judicial rather than administrative enforcement").  Moreover, that discretion is unconstrained by any intelligible principle.  In particular, no intelligible principle constrains the FTC's (claimed) authority to reopen the FTC Proceeding under Section 5(b) of the FTC Act.

53.     Because Congress's delegation to the Commission of the legislative power to assign a dispute to administrative adjudication is not constrained by an intelligible principle, the delegation violates Article I of the U.S. Constitution.

### G.     The Commission Adjudicates
####         Private Rights in Violation of Article III

54.     Under the Constitution, private rights may be adjudicated only in Article III courts, and not by administrative agencies such as the FTC.

55.     In the FTC Proceeding, the Commission proposes to unilaterally modify the terms of the 2020 Order, an agreement that it reached with Meta in settlement of the lawsuit brought by the United States on its behalf before an Article III court.  The proposed modifications embodied in the FTC's Proposed Order infringe Meta's property rights.

56.     As with any contract or agreement, Meta possesses private contract rights under the 2020 Order.  In issuing the OTSC, the Commission has, in essence, alleged a claim for breach of contract arising under the 2020 Order.  An action for breach of contract is among the traditional common law actions tried by English courts in 1789.

57.     In forcing Meta to adjudicate those allegations and its contract rights through the FTC Proceeding, however, the FTC has impermissibly infringed upon the exclusive jurisdiction of the Article III courts to adjudicate parties' private rights.

58.     The Proposed Order itself includes numerous additional impingements on Meta's property rights, including broad and sweeping restrictions on its ability to use data from its site and to develop new products and services for its users.  By way of example, the Proposed Order purports to limit Meta's collection and use of the data of so-called "Youth Users," which would severely curtail the Company's ability to market new products and services to a key demographic of its users.  Going even further, the Proposed order purports to limit Meta's ability to launch *any* new products or services without first getting the stamp of approval from the Assessor.

59.     These comprehensive restrictions intrude upon Meta's *private* rights, including its rights to its intellectual property and to the free use and enjoyment of its intellectual property.

As a result, any attempt to implement the proposed restrictions requires adjudication by an Article III court.  Article III precludes the FTC from restricting Meta's private rights on its own, and its attempt to do so should be enjoined.

**H. The FTC Proceeding Infringes Meta's Right to a Jury Trial in Violation of the Seventh Amendment**

60.     The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

61.     The FTC Proceeding will entail administrative adjudication of issues involving Meta's property rights, including its contract rights under the 2020 Order.  The FTC Proceeding is governed by a statutory scheme that provides for the potential future imposition of civil penalties.  *See* 15 U.S.C. § 45(l).

62.     But the statutory and regulatory provisions governing the FTC Proceeding afford Meta no right to a trial by jury.

63.     Therefore, the FTC Proceeding violates Meta's right to a jury trial under the Seventh Amendment.

**I. Meta Will Suffer Irreparable Harm**

64.     As described above, the FTC suffers from numerous structural defects that render it and its actions, including in the FTC Proceeding, unconstitutional.

65.     As a result, Meta will suffer irreparable harm in the form of a "here-and-now" injury if subjected to the FTC Proceeding.  Put simply, the injury arises from the mere fact that Meta is subjected to an illegitimate proceeding led by an illegitimate decision maker.  As a result, once done, such harm cannot be undone.  Any subsequent judicial review of Meta's claims would come too late to be meaningfully remedied.

## COUNT I

### Violation of the Due Process Clause of the
### Fifth Amendment to the U.S. Constitution

66.     Meta incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     Under the FTC Act, the FTC, as prosecutor, initiates or reopens an administrative proceeding in its discretion, and, as judge, decides the matter, including through factual findings and legal determinations.

68.     In the FTC Proceeding, the Commission did just that.  It has acted as prosecutor, determining to reopen the Proceeding, and, *simultaneously therewith*, set forth its finding of facts before Meta has had a chance to respond.

69.     This dual role of prosecutor and adjudicator violates a respondent's right to due process because it brings into serious question whether the respondent will receive a fair and unbiased hearing.

## COUNT II

### Violation of Article II of the U.S. Constitution

70.     Meta incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Article II, Section 3 provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and grants the President appointment and removal powers over executive officers.

72.     The Commissioners are executive officers because they exercise executive authority delegated to them by the President, including among other things exercising prosecutorial discretion and the ability to initiate enforcement proceedings.

73.     The Commissioners are not freely removable by the President.  *See* 15 U.S.C. § 41.  They may only be removed from their positions for "inefficiency, neglect of duty, or malfeasance in office."  *Id.*

74.     Because they exercise executive authority but are not freely removable by the President, the Commissioners' insulation under Section 41 of the FTC Act violates Article II, Section 3 of the U.S. Constitution.

**COUNT III**

**<u>Violation of Article I of the U.S. Constitution</u>**

75.      Meta incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     Congress may grant legislative power to an agency only if it provides an "intelligible principle" by which the agency can exercise that power.

77.     Congress granted to the FTC the discretion to adjudicate violations of the FTC Act by an administrative proceeding or in federal court.  But it failed to provide any guidance or intelligible principle whatsoever on how the FTC should exercise that discretion.

78.     Congress's delegation to the FTC of authority, unconstrained by an intelligible principle, to assign disputes to administrative adjudication violates Article I of the U.S. Constitution.

79.     Likewise, the FTC's choice to reopen the FTC Proceeding, unguided by an intelligible principle, violates Article 1 of the U.S. Constitution.

**COUNT IV**

**<u>Violation of Article III of the U.S. Constitution</u>**

80.     Meta incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

19

81.     Article III requires that the judicial power of the United States be vested in Article III courts.  As a result, cases involving private rights may not be removed from the jurisdiction of those courts.

82.     Such private rights that cannot be removed from the jurisdiction of the Article III courts include property rights.

83.     The FTC seeks to usurp the exclusive jurisdiction of the Article III courts by actively impinging on respondents' private rights to property, including by seeking to adjudicate the parties' contract rights under the 2020 Order in the FTC Proceeding and by seeking to impose broad restrictions on how companies such as Meta may make use of their intellectual property.

84.     The FTC's adjudication of private rights, including in the FTC Proceeding, violates Article III of the U.S. Constitution.

## COUNT V

### Violation of the Seventh Amendment of the U.S. Constitution

85.     Meta incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     The Seventh Amendment requires that the right to a jury trial for suits arising in common law exceeding $20 in value be preserved.

87.     The FTC Proceeding entails the administrative adjudication of issues for which the Seventh Amendment affords Meta the right to trial by jury, and is governed by a statutory scheme that provides for the potential future imposition of civil penalties.  *See* 15 U.S.C. § 45(l). Under the statutes and regulations governing the FTC Proceeding, however, Meta has no right to a jury trial.

88.     Therefore, the FTC Proceeding violates Meta's right to a trial by jury under the Seventh Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Meta respectfully requests that this Court enter an order and judgment in favor of Meta and against Defendants:

a.     Preliminarily and permanently enjoining the FTC Proceeding against Meta, including all deadlines set forth by the Commission for Meta to respond to the OTSC.

b.     Declaring that the FTC's dual role as prosecutor and judge, including in the FTC Proceeding against Meta, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

c.     Declaring that the FTC Act's insulation of FTC Commissioners against at-will removal by the President of the United States violates Article I of the U.S. Constitution;

d.     Declaring that Congress's delegation to the FTC of the peculiarly legislative power to assign a dispute to administrative adjudication, unconstrained by an intelligible principle, violates Article II of the U.S. Constitution, including as exercised by the Commission in reopening the FTC Proceeding against Meta;

e.     Declaring the FTC's adjudication of private rights, including in the FTC Proceeding against Meta, violates Article III of the U.S. Constitution;

f.     Declaring that the FTC Proceeding violates the Seventh Amendment of the U.S. Constitution;

g.     Awarding such other and further relief that the Court deems just and proper.

Dated:    November 29, 2023

DAVIS POLK & WARDWELL LLP

*/s/ James P. Rouhandeh*

James P. Rouhandeh (DDC Bar No. NY0390)
Michael Scheinkman (DDC Bar No. NY0381)
David B. Toscano (D.C. Bar No. 453126)
John A. Atchley III
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
TEL: (212) 450-4000
rouhandeh@davispolk.com
michael.sheinkman@davispolk.com
david.toscano@davispolk.com
john.atchley@davispolk.com

Paul J. Nathanson (DDC Bar No. 982269)
DAVIS POLK & WARDELL LLP
901 15th St., NW
Washington, DC 20005
TEL: (202) 962-7000
paul.nathanson@davispolk.com

*Attorneys for Plaintiff Meta Platforms, Inc.*