# EXHIBIT C

# KELLER ROHRBACK L.L.P.

Dean Kawamoto
(206) 428-0586
DKAWAMOTO@KELLERROHRBACK.COM

# LEVIN SEDRAN & BERMAN LLP
*Counsellors at Law and Proctors in Admiralty*

Michael M. Weinkowitz
MWeinkowitz@lfsblaw.com
(215) 592-1500

August 30, 2023

**VIA E-MAIL**

Lauren Bell
Munger, Tolles & Olson LLP
601 Massachusetts Ave., NW Street
Suite 500 E
Washington, D.C. 20001-5369
lauren.bell@mto.com

Jonathan H. Blavin
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
jonathan.blavin@mto.com

Rose L. Ehler
Victoria A. Degtyareva
Ariel T. Teshuva
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
rose.ehler@mto.com
victoria.degtyareva@mto.com
ariel.teshuva@mto.com

John H. Beisner
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., N.W.
Washington, DC 20005
john.beisner@skadden.com

Ashley M. Simonsen
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
asimonsen@cov.com

Phyllis A. Jones
Paul W. Schmidt
Michael X. Imbroscio
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
pajones@cov.com
pschmidt@cov.com
mimbroscio@cov.com

Emily Johnson Henn
Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
ehenn@cov.com

Geoffrey M. Drake
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
gdrake@kslaw.com

■ 1201 Third Avenue, Suite 3200, Seattle, WA 98101-3052 | Telephone: (206) 623-1900 | Facsimile: (206) 623-3384 ■

Seattle (HQ)     Missoula     New York     Oakland     Phoenix     Portland     Santa Barbara
WWW.KellerRohrback.com | WWW.KRComplexLit.com

■ 510 Walnut Street, Suite 500     Philadelphia PA 19106 ■
Tel (215) 592-1500
www.lfsblaw.com

**KELLER ROHRBACK L.L.P.**
**LEVIN SEDRAN & BERMAN LLP**

August 30, 2023
Page 2

| | |
|---|---|
| Andrea Roberts Pierson | Joseph G. Petrosinelli |
| Faegre Drinker LLP | Ashley W. Hardin |
| 300 N. Meridian Street, Suite 2500 | Williams & Connolly LLP |
| Indianapolis, IN 46204 | 680 Maine Avenue SW |
| andrea.pierson@faegredrinker.com | Washington, DC 20024 |
| | jpetrosinelli@wc.com |
| | ahardin@wc.com |

Re: *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, JCCP 5255 and MDL No. 3047 – Defendants' Preservation Demands

Dear Counsel:

On behalf of the counsel for government entity plaintiffs and Co-Lead Counsel in the above-referenced matters (the "GE Plaintiffs"), we write to respond to Defendants'[1] concerns with the GE Plaintiffs' preservation efforts, which Defendants expressed in a letter dated August 8, 2023 and a meet-and-confer held on August 9, 2023.[2]

Defendants' concerns over the scope of the GE Plaintiffs' preservation efforts are predicated on a mistaken view of how social media platforms have affected school districts. Defendants charge the GE Plaintiffs with attempting "to limit their preservation obligations only to a very narrow category of documents relating to students' social media use."[3] As "prime example[s]," Defendants cite the GE Plaintiffs' offer to preserve documents from individuals "whose primary responsibility and role is to address issues concerning students' use of social media" and communications "relating to students' use of social media platforms and their impact on student mental health and school operations."[4] Defendants' concerns, however, stem only from their narrow interpretation of the issues that arise from students' use of social media and their impact on school operations. Contrary to Defendants' view, their social media platforms have had a multi-faceted impact on students and the issues the GE Plaintiffs must address as a result.

**How Social Media Impacts School Operations, Who Deals with Those Issues, and the Corresponding Burden of Preserving Such Information Differs Between GE Plaintiffs.** As explained in our July 18, 2023 letter and again during the August 9 conference, each GE Plaintiff is unique and may be situated differently with respect to the electronically stored information and documents within their possession, custody, and control. For example, Defendants reported in

---

[1] Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc.; Meta Platform Technologies, LLC; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; Whatsapp, Inc.; Snap Inc.; TikTok Inc.; ByteDance Inc.; YouTube, LLC; Google LLC; XXVI Holdings Inc.; and Alphabet Inc.
[2] As mentioned that day, our meet-and-confers may be more fruitful if Defendants share any views they have on the topics for the conference more than 12 hours in advance.
[3] Defendants' Aug. 8, 2023, Letter at 2.
[4] *Id.*

**KELLER ROHRBACK L.L.P.**
**LEVIN SEDRAN & BERMAN LLP**

August 30, 2023
Page 3

their August 8 letter that Garrett County, Maryland agreed to comply with Defendants' preservation demands.[5] Defendants omitted that Garrett County also told Defendants it has "no control over . . . records pertaining to the State Board of Education and the County Board of Education," and disclaimed any duty to preserve what appears to be the vast majority, if not all, of the categories of information Defendants demand the school districts preserve.[6]

Even among school districts, there is a wide diversity in how they are structured, who is responsible for what, and where information is stored, to name just a few areas. For example, some may exclusively serve elementary school students (and have no sexual education program), some may have no taxing authority (and therefore no ability to raise funds for mental health or other services), and others may operate micro-schools on the campuses of other schools (with overlapping infrastructure). These structural and other differences affect how schools deliver services and divide up responsibilities. For example, mental health services may be provided by nurses at one school, through counselors at a second, at school-operated clinics at a third, and a fourth may refer students to outside agencies. These are just a few of the many differences between the GE Plaintiffs that can affect what potentially discoverable information each has, who has such information, how that information may be stored, and the burden of preservation.

It would be unreasonable to address every permutation and associated burden of these issues for every one of Defendants' preservation demands across the hundreds of GE Plaintiffs in the JCCP and the MDL. The GE Plaintiffs have instead described in their July 18 letter the principles they will use to identify and preserve potentially discoverable information.

**The GE Plaintiffs' Efforts to Preserve Information Beyond Social Media.** The GE Plaintiffs' preservation principles are not intended to preclude Defendants, as they charge, from pursuing discovery of other possible causes of the mental health crisis among students, including the Defendants' hypothetical "cut back[s] [to] school-sponsored counseling services for at-risk students," and "trends in student mental health unrelated to social media (such as, for example, a decline in mental health resulting from distressing news events like global protests about race and social justice, gun violence, and/or an increase of substance abuse or from the COVID-19 pandemic)."[7] But, as Defendants acknowledged during the parties' August 9 conference, the GE Plaintiffs cannot be expected to preserve the documents of every employee who deals with those issues.

Instead, the GE Plaintiffs have reasonably focused on the individuals with the primary responsibilities and roles for providing health and physical safety supports, and their custodial and non-custodial sources. As explained in the July 18 letter, that would include the preservation of information regarding the "provision of student health services," whether for substance abuse,

---

[5] Defendants' Aug. 8, 2023, Letter at 1.
[6] Garrett County's Aug. 3, 2023, Letter at 1.
[7] Defendants' Aug. 8, 2023, Letter at 2.

**KELLER ROHRBACK L.L.P.**
**LEVIN SEDRAN & BERMAN LLP**

August 30, 2023
Page 4

bullying, social justice issues, or otherwise; "funding for mental health services," including those for at-risk youth; "research regarding mental health services," whatever the cause; and databases and other compilations of student attendance and disciplinary records, from which Defendants can attempt to extrapolate any trends they wish.[8]

Below, the GE Plaintiffs address Defendants' specific complaints with the GE Plaintiffs' preservation efforts:[9]

- *Custodians*.[10] Defendants complain that the GE Plaintiffs limit their preservation efforts to those with a "primary responsibility and role to address issues concerning students' use of social media," and refuse to preserve individuals "whose 'primary role is to address' any other potentially relevant area, including bullying, substance abuse, sexual harassment, eating disorders, and so on."[11] As a practical matter, the individuals addressing the fallout from social media are the people most likely to deal with the other issues Defendants list. Additionally, and as explained above, Defendants' complaint appears to be based on a misreading of the GE Plaintiffs' preservation efforts. The GE Plaintiffs have agreed to preserve the information of those with the "primary responsibility and role . . . to provide health and physical safety supports."[12] While Defendants write that this "would seemingly include the teachers,"[13] Defendants agreed on August 9 that it was not reasonable to expect the GE Plaintiffs to preserve information from every teacher. It is reasonable to presume teachers would report the more serious incidents to those with the primary responsibility for addressing such issues, and whose information the GE Plaintiffs have already agreed to preserve.

- *Policy and Budgetary Documents*. Defendants assert that the GE "Plaintiffs refuse to preserve policy or budgetary and accounting documents other than those relating to social media."[14] That is not true. The GE Plaintiffs agreed to preserve a host of policies, procedures, and budgetary documents related to student mental health, regardless of whether those policies, procedures, or budgetary decisions are attributable to students'

---

[8] GE Plaintiffs' July 18, 2023, Letter at 4–5.
[9] Defendants note in their August 8 letter that they "have not attempted to catalogue" all their disputes with the GE Plaintiffs' preservation efforts. The GE Plaintiffs are not in a position to do so for Defendants and will not speculate on their behalf. If Defendants wish to raise other issues, the GE Plaintiffs remain willing to meet and confer.
[10] For ease of reference, the GE Plaintiffs adopt Defendants nomenclature for the disputes. But the GE Plaintiffs do not agree that every individual whose information is preserved would be a proper custodian for discovery.
[11] Defendants' Aug. 8, 2023, Letter at 3.
[12] GE Plaintiffs' July 18, 2023, Letter at 5.
[13] Defendants' Aug. 8, 2023, Letter at 3.
[14] *Id.* at 3.

<strong>KELLER ROHRBACK L.L.P.<br>LEVIN SEDRAN & BERMAN LLP</strong>

August 30, 2023
Page 5

social media use.[15] The GE Plaintiffs also agreed to preserve policies and procedures, including disciplinary policies related to students' "usage of electronic devices" and "social media."[16] It is unclear why Defendants read that to exclude policies the GE Plaintiffs codify on cyberbullying. For the avoidance of doubt, the GE Plaintiffs are willing to preserve student handbooks, codes of conduct, and disciplinary policies regardless of whether they pertain to social media platforms or electronic device usage.

- *COVID-19 Policies*. During the parties' August 9 conference, Defendants clarified that they are focused on the policies the GE Plaintiffs changed in response to the COVID-19 pandemic related to school closures, attendance, extracurricular activities, and remote learning. The GE Plaintiffs are willing to preserve such district-wide policies. As explained during the conference, it is not reasonable to preserve any COVID-19 related changes a teacher, administrator, or other staff made for a particular class or extracurricular activity, which would have minimal relevance to this action, if any. Indeed, even if such a preservation were even feasible, it would be unduly burdensome and disproportionate to the needs of the case.

- *Disciplinary and Law Enforcement Records*. Defendants seek "disciplinary records unrelated to discipline for social media use."[17] While the GE Plaintiffs dispute such records are relevant, they are willing to preserve databases and other compilations of students' violations of school policies. Defendants appear to request the GE Plaintiffs also preserve every communication regarding such a violation. Communications regarding an individual students' violation of school policies is unlikely to be relevant to the GE Plaintiffs' claims, which are premised on Defendants' contributions to a mental health crisis among youth generally. Moreover, there can be thousands (and, at larger districts, tens of thousands) of disciplinary incidents each year, each of which can result in communications between teachers and administrators, administrators and students, and administrators and parents, among others. Attempting to preserve such communications for multiple years would be unduly burdensome and disproportionate to the needs of the case in light of the fact that it is very unlikely any of this "needle in a haystack" information would be relevant, much less the type of material that either party would plausibly introduce at trial.

---

[15] GE Plaintiffs' July 18, 2023, Letter at 4–5 (offering to preserve "[s]tudent handbooks, codes of conduct, and disciplinary polices, including updates to such policies and procedures, relating to student mental health, usage of electronic devices, or students' usage of social media platforms; [s]chool Board policies, Board packets, and supporting documents relating to student mental health, usage of electronic devices, or usage of social media platforms; . . and [b]udgetary and accounting documents describing the resources Plaintiff allocated to address students' use of social media and mental health.").

[16] *Id.*

[17] Defendants' Aug. 8, 2023, Letter at 4.

<strong>KELLER ROHRBACK L.L.P.<br>LEVIN SEDRAN & BERMAN LLP</strong>

August 30, 2023
Page 6

- *Use of Social Media*.[18] Defendants have walked back their demand that the GE Plaintiffs' preserve "all documents . . . and tangible things related to . . . [t]he school district's (including individual schools') use of technology,"[19] and now focus on "how schools encourage, discourage, or monitor social media use."[20] The GE Plaintiffs have already agreed to preserve handbooks, codes of conduct, and disciplinary policies regarding students' use of electronic devices and social media platforms, which would include internet use policies; surveys, reports, and other compilations of data related to students' usage of electronic devices or usage of social media platforms; and training materials on students' usage of electronic devices and social media platforms.[21] As discussed during the August 9 conference, the GE Plaintiffs cannot preserve and Defendants agreed they are not asking the GE Plaintiffs to preserve every internet-connected device in their possession, custody, or control. Instead, Defendants indicated they sought exemplars of school-issued devices and policies or other documents describing how those devices can be used. The GE Plaintiffs are willing to take reasonable steps either to preserve exemplars of devices they issue to students by imaging them or, if easier, documents reflecting the standard setup of said devices, such as software inventory or asset configuration logs, which should serve the same purpose. Additionally, the GE Plaintiffs are willing to preserve either documents reflecting websites that are blocked or, if easier, permitted, on the GE Plaintiffs' network(s); any existing compilation of metrics regarding students' use of devices the GE Plaintiffs issue them; and emails, alerts, or reports received regarding monitored internet traffic, such as emails flagging a particular student's search for self-harm content.

- *Sexual Education Programs*. The GE Plaintiffs did not expressly agree in their July 18 letter to preserve documents related to their sexual education programs. During the August 9 conference, Defendants indicated they believe a district's policies and curricula on sexual education is relevant to student mental health. Solely to avoid a dispute, the GE Plaintiffs are willing to preserve documents regarding any district-wide policy or curricula on sexual education. By agreeing to preserve such documents, the GE Plaintiffs are not conceding their relevance or that these documents should be produced. To the contrary, the GE Plaintiffs contend that these materials are not relevant to this litigation, and reserve all rights to object to the production of these materials.

---

[18] As explained above, GE Plaintiffs have adopted Defendants' headings for ease of reference. But this heading is another misnomer and refers to what Defendants termed "Use of Technology" generally in their initial preservation demand. As explained in our July 18 letter, that topic had few, if any, bounds.
[19] Defendants' Preservation Demand at 3.
[20] Defendants' Aug. 8, 2023, Letter at 4.
[21] GE Plaintiffs' July 18, 2023, Letter at 4–5.

**KELLER ROHRBACK L.L.P.**
**LEVIN SEDRAN & BERMAN LLP**

August 30, 2023
Page 7

- *Teacher Discipline.* During the August 9 conference, the parties discussed whether Defendants sought human resource records regarding teachers or other staff that have been disciplined. Defendants clarified that they are not asking the GE Plaintiffs to preserve all employees' disciplinary or other personnel records, but suggested they believed that disciplinary actions taken for interacting with a minor or student online should be preserved. The GE Plaintiffs are willing to preserve such records, if they exist, and if that resolves any dispute.

- *Timeframe.* Defendants initially demanded the GE Plaintiffs preserve all categories of information back to 2009, while Defendants attempted to limit their preservation obligations to 2015 or later. The GE Plaintiffs objected, and the parties discussed during the August 9 conference a compromise in which the GE Plaintiffs use one timeframe to preserve policy and budgetary documents and data compilations maintained in a central repository and another timeframe for custodial files. Consistent with that proposal, the GE Plaintiffs are willing to preserve those centralized documents back to 2010, and custodial files back to the 2020–21 school year, to the extent available.

*     *     *     *     *

As stated, the GE Plaintiffs are taking reasonable efforts to preserve potentially discoverable information and will continue to do so as appropriate. GE Plaintiffs do not waive their rights to object to the production of documents and information discussed herein, prior correspondence, or during the parties' past and future meet-and-confers. If Defendants have questions concerning the GE Plaintiffs' preservation efforts, we are available to discuss.

Sincerely yours,

**Dean Kawamoto**

**Michael Weinkowitz**

cc: Joseph VanZandt
Emily Jeffcott
Jesse Creed
Tom Cartmell

**KELLER ROHRBACK L.L.P.**
**LEVIN SEDRAN & BERMAN LLP**

August 30, 2023
Page 8

    Kirk Goza
    Jim Frantz
    Chris Seeger
    Lexi Hazam
    Previn Warren
    School District Counsel of Record