1
2
3
4
5
6
7
8

*[Parties and Counsel Listed on Signature Pages]*

*Additional parties and counsel listed on signature pages*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| This Document Relates To: | **AGENDA AND JOINT STATEMENT FOR FEBRUARY 23, 2024, CASE MANAGEMENT CONFERENCE** |
| ALL ACTIONS | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Case Management Order No. 1 (ECF 75) and Case Management Order No. 6 (ECF 451), the Parties submit this agenda and joint statement in advance of the February 23, 2024 Case Management Conference ("CMC").

## I.   Update on Motions to Dismiss

### A.  Personal Injury Plaintiffs' Claims Against Mark Zuckerberg

On December 22, 2023, Defendant Mark Zuckerberg moved to dismiss certain Personal Injury ("PI") Plaintiffs' claims against him in his individual capacity. ECF 518. Those PI Plaintiffs filed their opposition on January 16, 2024. ECF 538. Mr. Zuckerberg filed his reply on January 23, 2024. ECF 555. Pursuant to Case Management Order No. 8, the Parties are prepared to argue this motion at the Case Management Conference on February 23, 2024. ECF 581.

### B.  Hearing on Meta's "Track 1" Motion to Dismiss

On December 22, 2023, Meta moved to dismiss the Multistate Attorneys General Complaint, the Florida Attorney General's Complaint, and the PI Plaintiffs' Consumer Protection and Misrepresentation Claims.  ECF 517.  Defendants YouTube, Snap, and TikTok joined Meta's motion to dismiss Count 7 of the PI Plaintiffs' Amended Master Complaint.  ECF 519.  Plaintiffs filed their oppositions on February 5, 2024.  ECF 600.  Defendants' reply is due February 26, 2024.  ECF 451.  The State Attorneys General and PI Plaintiffs request argument on this motion at the April 19, 2024, Case Management Conference. Should the Court wish to hold argument on this date, the Meta Defendants advise the Court that they are available.

### C.  Update on Remaining Motions to Dismiss

On December 22, 2023, Defendants moved to dismiss the PI Plaintiffs' remaining "non-priority" claims (Counts 5, 12, 14, 16–18) asserted in the PI Plaintiffs' Second Amended Master Complaint. ECF 516.  The PI Plaintiffs filed their opposition on February 5, 2024.  ECF 597.  Defendants' reply is due February 26, 2024.  *See* Dkts. 479, 451.

On January 12, 2024, Defendant Snap moved to dismiss claims under 18 U.S.C. §§ 2252 and 2252A (also known as the "Identified Counts") asserted in PI Plaintiffs' amended Short-Form Complaints pursuant to Case Management Order No. 8 (ECF 479).  *See* ECF 533.  Those PI Plaintiffs filed their opposition on February 5, 2024.  ECF 598.  Defendant Snap's reply is due February 15, 2024. ECF 479.

On February 5, 2024, Defendants moved to dismiss the claims asserted in the School District and Local Government Entity ("SD/GE") Plaintiffs' Master Complaint (ECF 504).  *See* ECF 601.  The SD/GE Plaintiffs' opposition is due on March 4, 2024, and Defendants' reply is due on March 25, 2024. *See* ECF 451.

## II.  Update on Plaintiff Fact Sheets (PFSs) and Defendant Fact Sheets (DFSs)

### A.  Personal Injury Plaintiff Fact Sheets

On January 29, the Court issued an Implementation Order Governing Adoption of the Plaintiff Fact Sheet for PI Plaintiffs ("PI PFS Implementation Order").  ECF 596.  Pursuant to that order, all PI

Plaintiffs in this MDL "must serve verified, written responses to the PFS and applicable Appendices, together with any responsive documents and applicable executed authorizations, . . . within 105 days from the date of this order" (i.e., by May 13, 2024).[1]  Subsequently, on February 8, 2024, the Court issued Case Management Order No. 10 ("CMO 10"), which advanced this deadline to April 1, 2024, and set a mid-April deadline for the selection of 12-15 PI bellwether Plaintiffs.

During a February 14, 2024 conference in the JCCP on the PI Defendant Fact Sheet, Judge Kuhl indicated that she will set later deadlines in the JCCP for the PI Plaintiffs to complete PFSs, for Defendant to complete Defendant Fact Sheets for the PI cases, and for the selection of bellwether PI Plaintiffs.  Judge Kuhl asked the JCCP Parties to meet and confer and propose deadlines within the next few weeks.

### A.  School District and Government Entity Plaintiff Fact Sheets

On February 7, 2024, the Parties attended a Case Management Conference in the JCCP and requested that Judge Kuhl expedite the process for finalizing the SD/GE PFS.  To that end, the Parties each submitted their proposed School District PFS on February 8, 2024 and a joint statement in support of their respective positions on February 9, 2024.  Judge Kuhl held an informal discovery conference on February 14, 2024 to work through the Parties' outstanding disputes.  Per this Court's CMO 10, dated February 8, the MDL Plaintiffs shall submit all PFSs by April 1, 2024.  Judge Kuhl indicated that she will set a mid-May deadline for the completion of SD/GE PFSs in the JCCP to ensure there is time for the SD/GE Plaintiffs to complete a more comprehensive PFS (to facilitate case assessment).  Accordingly, the Parties negotiated a PFS that they expect to be completed by all SD/GE Plaintiffs in the JCCP by May 2024, with a subset of questions to be answered by the MDL SD/GE Plaintiffs by April 1, 2024.

To avoid confusion and to facilitate the collection and segregation of data through MDL Centrality, the Parties in the MDL will propose (1) a School District MDL PFS (SD PFS) to be answered by April 1, 2024 and (2) a School District Supplemental Plaintiff Fact Sheet (SD SPFS) (that

---

[1] Defendants' Additional Position: The PI Plaintiffs confirmed at the February 6, 2024 conference that they could serve completed PFSs within sixty days.

includes the questions that the parties agreed would be answered after April 1, 2024 in the MDL, during the conference with Judge Kuhl).

**Defendants' Additional Position:**

The Parties agree that the SD SPFS be answered by all non-Bellwether School Districts by October 1, 2024.  The Parties disagree, however, about the deadline by which the 12-15 Bellwether School District Plaintiffs will submit the SD SPFS.  Defendants propose May 1; Plaintiffs propose August 15.

It is Defendants' position that the 12-15 MDL Bellwether School Districts who are actively litigating their claims under a compressed time schedule (urged by Plaintiffs) should be able to provide the basic information requested by the SD SPFS by May 1.  An additional 4.5 months from April 1 to complete approximately 8 supplemental questions is unwarranted and would unfairly infringe upon an already short discovery schedule.  Defendants further note that all 333 JCCP School Districts are required to complete the full SD PFS—including the supplemental questions—by May 16.

**Plaintiffs' Additional Position:**

Plaintiffs propose the following schedule:

| DATE | EVENT |
|------|-------|
| 4/1/2024 | School District Plaintiffs produce SD PFS per ECF 604, 606. |
| 8/15/024 | 12 School District Plaintiffs selected as Bellwethers in February. 2024 pursuant to ECF 604 produce SD SPFS. |
| 10/1/2024 | Non-Bellwether School District Plaintiffs that filed SD PFS on 4/1/2024 file a SD SPFS. |

The schedule above accomplishes the following: (1) follows the Court's prior Order requiring Plaintiffs to answer a SD PFS by April 1 to assist in bellwether pool selection (Step 1); (2) provides Defendants and the Court with the additional information for the 24 School District Plaintiffs in advance the Bellwether selection in February 2025 (Step 2); (3) minimizes the heavy burden on the Non-Bellwether Plaintiffs while at the same time providing information to the Defendants and the Court to facilitate case valuation.

1

### B.  Personal Injury Defendant Fact Sheets

2
3
4
5
6
7
8
9

As ordered by Judge Kuhl, on January 31, 2024, Defendants sent Plaintiffs their counter-proposal to Plaintiffs' proposed Defendant Fact Sheet for the PI cases.[2]  The Parties held an informal discovery conference with Judge Kuhl on February 7, 2024, during which Plaintiffs made a counter-proposal that narrowed the personal injury DFS further to focus on data points Plaintiffs view as important for bellwether selection while reserving the right to seek further plaintiff-specific discovery from Defendants for cases in the bellwether pool.  The Parties held a second informal discovery conference with Judge Kuhl on February 14, 2024.  The Parties in the JCCP are close to reaching agreement on the DFS and hope to have a final version next week.

10
11
12

Defendants and the PI Plaintiffs in the MDL have agreed to meet and confer regarding what DFS data could be produced in time to inform bellwether selection by this Court's April 15, 2024, date (ECF 604).

13

### III. Short Form Complaint Implementation Orders

14
15
16
17
18
19
20

On February 2, 2024, the SD/GE Plaintiffs filed a proposed amended stipulated implementation order governing the adoption of the SD/GE Plaintiffs' Master Complaint that also included a template Short Form Complaint ("SFC") for the Court's consideration.  *See* ECF 589.  On February 5, 2024, the PI Plaintiffs filed a proposed revised second amended stipulated implementation order governing the adoption of the PI Plaintiffs' Second Amended Master Complaint for the Court's consideration.  *See* ECF 593.  The PI Plaintiffs and Defendants are prepared to answer any questions from the Court regarding these proposed orders at the CMC.

21

### IV. Update on February 7, 2024 JCCP Status Conference

22
23
24
25

On February 7, 2024, Judge Kuhl held a status conference in the JCCP that addressed anticipated procedures for PI bellwether selection and trial schedule setting.  Judge Kuhl explained that she would "need to know" two things regarding the MDL before setting trial dates: the discovery cutoff in the MDL and the first trial date set by this Court.  *See* Feb. 7, 2024 Status Conf. Tr. at 28:15–29:14.  The

26
27
28

---

[2] Plaintiffs' Additional Position: Plaintiffs had provided their proposed Defendant Fact Sheet to Defendants on November 21, 2023.

Parties provided Judge Kuhl with CMO 10 and Discovery Management Order 2 (ECF 606) on February 12, 2024.

Judge Kuhl has not yet entered a bellwether selection protocol, but met with the Parties to discuss a proposed "grid" based on the PFS data.

**Plaintiffs' Additional Position:**

Judge Kuhl indicated that the "grid" would have injuries and certain injury combinations (although not all) on the vertical axis and certain Plaintiff attributes and social media usage metrics on the horizontal axis of the grid.  The PI Plaintiffs do not agree with Defendants' characterization that the grid's vertical axis would have every combination of injuries.

**Defendants' Additional Position:**

Judge Kuhl instructed the Parties to include Defendants' three proposed bellwether discovery pool categories—PI Plaintiffs who have alleged eating disorders, sleeping disorders, and eating plus sleeping disorders—on the vertical axis of the grid, along with every other injury and combination of injuries.  Judge Kuhl also provided direction on certain attributes of PI Plaintiffs she would like included on the horizontal axis of the grid (e.g., gender and whether the alleged injury has been medically diagnosed, in addition to usage information).  Judge Kuhl also noted that the Parties were free to develop their own grids and "bring that to me as well" in connection with proposing bellwether categories if they wished.  *Id.* at 24:11–15.  The next JCCP status conference is set for March 20, 2024.

## V.  February 22, 2024 Discovery Management Conference

The Parties' next Discovery Management Conference ("DMC") with Magistrate Judge Kang is scheduled for February 22, 2024.  For the Court's convenience, the Parties attach here as Exhibit A their joint status report to Judge Kang in advance of the DMC.

## VI. State-Specific Information Requested at the February 6, 2024 Conference

### A.  State Attorneys General Position

#### 1.  Jury Demand

The State Attorneys General do not demand a trial by jury for any claims or issues presented in the Multistate or Florida Complaint.  The State Attorneys General contend that these civil law

enforcement actions should be tried to a court, not a jury.  If Meta formally requests a jury trial, the State Attorneys General reserve the right to submit briefing on the issue of whether Meta is entitled to a jury on the State Attorneys General's claims or any subset thereof.

### 2.  Restitution and Statutory Penalties

The State Attorneys General do not intend to seek restitution in a form that is measured by the amount of money expended by individuals, state agencies, or the States as a result of Meta's alleged misconduct. The State Attorneys General intend to seek statutory civil penalties, among other remedies.

### B.  Meta Defendants' Position

At this juncture in the litigation, Meta does not waive and expressly reserves any right to a jury trial under the Seventh Amendment in connection with these matters.

As the U.S. Supreme Court has explained, a "civil penalty was a type of remedy at common law that could only be enforced in courts of law."  *Tull v. United States*, 481 U.S. 412, 422 (1987).  Here, each of the States seeks, among other relief, civil penalties from Meta.  Accordingly, Meta "has a constitutional right to a jury trial to determine [its] liability" on the legal claims for civil penalties asserted by the States.  *Id.* at 425.  (That the States further seek "damages, " *e.g.*, Compl., PRAYER FOR RELIEF A.3, further reinforces Meta's right to a jury trial.)

While the States also seek equitable relief, Meta's "right to [a] jury trial on the legal claim, including all issues common to both claims, … cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought."  *Id.*  It is also of no moment that, had certain States asserted their claims in state court, a jury trial right might not exist.  *See, e.g.*, *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 330-31 (2020) ("The *Tull* decision rested on several points in which the federal interpretation of the Seventh Amendment departs from California's interpretation of the California jury trial provision.").

## VII.   Defendants' Proposed Eligibility Criteria for PI and SD/GE Bellwether Discovery Pools

### A.  Parties Joint Position

On February 2, 2024, Plaintiffs submitted their proposed bellwether discovery pool criteria (ECF 592), including the following:

> Any Personal Injury Plaintiff who 1) has named Meta as a Defendant; 2) alleges addiction; 3) alleges a) an eating disorder (anorexia, bulimia, or binge eating disorder), and/or b) self-harm (self-harm, suicide attempt(s) or suicide); and 4) whose case was filed in or transferred to this Court and who has submitted a Plaintiff Fact Sheet (PFS) by the deadline for already-filed cases under the Personal Injury PFS Implementation Order . . . will be included in the Personal Injury Plaintiff Bellwether Selection Pool.
>
> Any School District Plaintiff, excluding those alleging RICO claims, whose case was filed in or transferred to this Court and who has submitted a School District Plaintiff Fact Sheet by the deadline for already-filed cases under the Personal Injury PFS Implementation Order . . . will be included in the School District Plaintiff Bellwether Selection Pool.

The Court preliminarily adopted Plaintiffs' criteria, but allowed Defendants leave to submit any contrary proposal in advance of the February CMC.  *See* CMO No. 10 (ECF 604).

The Parties have conferred and agree that Plaintiffs' criteria for the SD/GE Bellwether Pool should be applied.  Following the entry of CMO 10, that criteria include: "Any School District Plaintiff, excluding those alleging RICO claims, whose case was filed in or transferred to this Court and who has submitted a School District Plaintiff Fact Sheet by April 1, 2024."  ECF 595-1, Exhibit A, p. 4.

With respect to eligibility criteria for the PI Bellwether Pool, in addition to the eligibility-requirement that Plaintiffs submit a PFS by the Court's April 1 deadline, the Parties agree that Plaintiffs claiming one or more of the following injuries are eligible for selection:

- an eating disorder (defined to include generalized eating disorder, anorexia, bulimia, and binge eating disorder);

- self-harm (defined to include self-harm, suicidality, and suicide attempt(s)).

However, as discussed below, the Parties disagree on whether the Bellwether Pool should include (1) non-addiction cases, (2) suicide cases, and (3) Plaintiffs who allege either body dysmorphia or sleep disorders alone.  The Parties further disagree as to whether the Court should include eligibility requirements relating to age at time of filing and gender.

### B.  **Defendants' Position**

Defendants request that the Court modify the eligibility criteria for inclusion in the PI Bellwether Pool in two respects: (1) **eliminate outlier cases** that would skew the Bellwether Pool and would not

result in representative bellwether trials, and (2) **expand the criteria** to include Plaintiffs who allege common injuries—specifically, body dysmorphia and sleep disorders.  In addition, Defendants request that the Court require the Parties to reflect in their bellwether selections the adult and male Plaintiffs that comprise a significant portion of this MDL.

First, the Court should act consistently in excluding outlier cases that will not produce representative bellwether trials.  Plaintiffs' proposed criteria **exclude 28** cases in which the Plaintiff claims an injury caused by Defendants' platforms, but where there is no claim of addiction, based on the assertion that those cases are "outliers" and do not represent the majority of cases within this MDL.[3] Yet Plaintiffs simultaneously seek to **include 29** cases that allege suicide (which Plaintiffs would include in the "self-harm" category), without a logical rationale to support such inconsistent and unfair treatment of outlier cases.  The reason for this inconsistency is apparent:  **Plaintiffs seek to include in the bellwether pool the cases with the highest potential damages (suicide cases) while simultaneously excluding cases that they believe represent the lowest potential damages (non-addiction cases).**

Defendants' position is that neither end of the proverbial barbell should be included, as those cases will not result in representative bellwether trials.  If the Court is going to exclude the **13%** of Plaintiffs who do not allege addiction as non-representative, it should likewise eliminate the **13%** of Plaintiffs who allege suicide.[4]  By screening those outliers now, the Parties' Bellwether selections are more likely to represent the majority of cases in the MDL—screening that is critical given that CMO 10 permits the

---

[3] Contrary to Plaintiff's claims, 87% of Plaintiffs allege addiction/compulsive use in their Short Form Complaints, meaning that 13% do not.  Plaintiffs take issue with Defendants' numbers but don't specify *when* they made their "detailed" review.  Because SFC data is updated on a regular basis, the miniscule differences between the Parties' numbers likely results from the day on which the analysis was done.  The injury counts Plaintiffs report are slightly smaller than the numbers Defendants report (*e.g.*, 24 instead of 29, 49 instead of 51).  That the Parties' counts are off by 2-5 cases out of more than 200 shows that the data is essentially the same.

[4] Plaintiffs lump together suicide and wrongful death cases, which are entirely different.  Suicide cases involve a self-inflicted injury, where wrongful death cases allege injury caused by another.  There are 29 cases alleging suicide (13% or 29/223 cases)  and 5 cases alleging wrongful death (2% or 5/223). Both suicide and wrongful death cases are outliers, and the Court should exclude them.  Alternatively, should the Court permit these outliers to remain in the pool, the Court also should allow the 13% of non-addiction cases to remain in the pool.

9

Parties to select just six Bellwether Pool cases each.  This is not to say these outlier cases should never

be tried, and there will be a time and place for doing so; but it will significantly detract from the value of

the bellwether process if they are tried ahead of other cases that are substantially more representative of

the larger MDL.

The Court should reject Plaintiffs' efforts at gamesmanship, act consistently in the exclusion of

outliers, and also exclude the **29** suicide cases.

Second, Defendants propose adding **body dysmorphia** and **sleep disorders** as eligible conditions

for inclusion in the Bellwether Pool.  Adjusting the eligibility criteria in this way would ensure a more

representative pool, as the Short Form Complaint data for cases within the MDL reveals.

Notably, the **50** Plaintiffs (or 22% of total PI cases) who claim to have suffered a "sleep disorder"

and **53** Plaintiffs (or about 23% of the total PI cases) who allege "body dysmorphia" did *not* check an

SFC box, but rather wrote in "sleep disorder" or "body dysmorphia" as an "other injury" in their SFCs.

The fact that so many Plaintiffs affirmatively wrote in these alleged injuries in the SFC—even though it

was not included on the SFC—indicates that it is a meaningful injury.  Indeed, the Parties agreed that

sleep disorders and body dysmorphia were sufficiently meaningful alleged injuries to include them as

standalone injury categories in the PFS, and the number of Plaintiffs who claim them is likely to grow as

a result.[5]  In an effort to maintain continuity across the cases and in anticipation of the impact of

including those injuries in the PFS, the Court should include both sleep disorders and body dysmorphia

as qualifying injuries for this bellwether process.

Finally, Defendants also request that the Court require the Parties to select Bellwether Pool cases

that are truly representative of the adult Plaintiffs who comprise half of this MDL, as well as cases that

reflect the gender diversity of the MDL.  Because key MDL demographics on age and gender reflect that

nearly half (46%) of Plaintiffs were 18 or older at the time of filing, and 23% of Plaintiffs are male and

77% are female, consideration of gender and age will help assure a representative bellwether pool.

---

[5] Plaintiffs assert that "sleep problems are almost inherent in social media addiction and thus will be
present in a large majority of cases, whether they are a diagnosed disorder or not," but that only
reinforces why sleep disorders should be a qualifying injury.

Plaintiffs point to age at first use to suggest that adult Plaintiffs should not be considered in selecting the Bellwether Pool.  The Parties disagree as to whether this is a relevant marker, and Defendants note that in different contexts, Plaintiffs have pointed to age at peak use, age of continuous use, and age of first use.  Until Defendants receive Plaintiffs' expert reports, it is impossible to know precisely what moment of usage Plaintiffs will contend is pivotal.  One fact is clear, however: half of the Plaintiffs in this MDL are adults who are more likely to have broad experience with Defendants' platforms, to be able to sit for fulsome depositions, and to be able to describe their alleged injuries. Those Plaintiffs should be represented proportionally in the Bellwether Pool, and counsel for Plaintiffs should be concerned with assuring that as few minor Plaintiffs as necessary are subjected to the process counsel elected to pursue.

### C.  PI/SD/GE Plaintiffs' Position

Upon reviewing Defendants' initial proposal for this submission, Plaintiffs agreed to add to the list of eligible injuries two of those suggested by Defendants, suicidality and generalized eating disorder. Plaintiffs disagree with Defendants' other proposed departures from Plaintiffs' proposal as preliminarily adopted by the Court.[6]

First, Plaintiffs disagree that sleep disorder and body dysmorphia should constitute independent bases for eligibility for the bellwether pool. These are not injury categories listed on the Short Form Complaint ("SFC"), but a minority of Plaintiffs wrote them into a space for "other injuries".  These injuries, however, occur almost uniformly together with the other qualifying injuries in Plaintiffs' proposal: all but a handful of Plaintiffs who allege body dysmorphia[7] or sleep disorders also allege eating disorder or self-harm injuries.  Thus including cases in the pool based solely on body dysmorphia

---

[6] The data reported by Defendants data above has inaccuracies based on Plaintiffs' detailed review of the SFCs.  For example, only 24 cases do not allege addiction, in contrast to Defendants' reported number of 29; 49 cases allege body dysmorphia, not 51 as Defendants report; and only 45 cases allege sleep disorder, not 51 as reported by Defendants.

[7] Defendants suggest that body dysmorphia is an eating disorder, but this is not the case. *See* Diagnostic and Statistical Manual of Mental Disorders: Fifth Edition, at 264-265 (classifying body dysmorphia under Obsessive-Compulsive and Related Disorders, and not Feeding and Eating Disorders).

or a sleeping disorder would not be representative, and in fact, the co-occurrence of these injuries with others already among the criteria is far more common. This is not surprising given that sleep problems are almost inherent in social media addiction and thus will be present in a large majority of cases, whether they are a diagnosed disorder or not.[8]

Second, Defendants falsely equate their request to remove suicide from the self-harm injury category to the requirement (previously agreed to by the Parties, though Defendants now disagree) of addiction for inclusion. Addiction is the very premise of this litigation, as reflected in the name of the MDL, and almost 90% of the Plaintiffs allege addiction in their SFC. Trying a bellwether case that does not allege addiction would not advance resolution of the vast majority of the cases in this MDL. In contrast, is a type of self-harm and constitutes approximately fifteen percent of cases, and thus cannot be said to be an outlier. Excluding suicide cases from the pool would prevent early trials from addressing the full spectrum of severity of injury, thereby impeding rather than facilitating overall resolution. Defendants remain free to exclude suicide cases from their selections, and the Court will ultimately determine the kinds of cases to be tried first, but these important cases should not be excluded from eligibility and work-up for potential early trials.

Third, the age of the Plaintiff at the date of filing has no import for this litigation; it says nothing about when or at what age the Plaintiff started using the platform(s) or any other issue relevant to liability, causation or damages. What is relevant to all of those issues is the age of the Plaintiff when they first used the social media platforms. This has direct import for the lack of adequate age verification by Defendants. It also goes to causation and damages as the medical literature shows a positive correlation between age at first use of social media use and injury outcome.[9] In fact, the SFC

---

[8] In addition, review of the SFCs shows that this injury is alleged largely by Plaintiffs represented by a single law firm. That firm has filed the substantial majority of its clients' claims in the JCCP, and thus sleep disorder is much more commonly alleged there.

[9] *See, e.g.*, Orben, A., Przybylski, A. K., Blakemore, S. J., & Kievit, R. A. (2022). Windows of developmental sensitivity to social media. Nature communications, 13(1), 1649. https://doi.org/10.1038/s41467-022-29296-3.

data shows that over 50% of Plaintiffs were under the age of 10 at first use, and over 75% were under the age of 12.  The fact that some Plaintiffs may nonetheless not file their claims until they reach the age of majority is not surprising and has no bearing on these issues. Defendants' purported concern for minors undergoing the discovery process is not credible or well-taken given the focus of this litigation is on the harm caused by Defendants' platforms to this very population.[10]

Finally, gender is not reported on the SFC, and it is unclear how Defendants calculated the gender statistic above. PFS data will provide accurate numbers on the gender and other demographics of Plaintiffs and may be taken into account by the Parties in making and arguing for their selections, but it is not appropriate or efficient to layer on these requirements for eligibility.

Respectfully submitted,

DATED: February 16, 2024          By:  /s/ Lexi J. Hazam

                              LEXI J. HAZAM
                              **LIEFF CABRASER HEIMANN &**
                              **BERNSTEIN, LLP**
                              275 BATTERY STREET, 29TH FLOOR
                              SAN FRANCISCO, CA 94111-3339
                              Telephone: 415-956-1000
                              lhazam@lchb.com

                              PREVIN WARREN
                              **MOTLEY RICE LLC**
                              401 9th Street NW Suite 630
                              Washington DC 20004
                              T: 202-386-9610
                              pwarren@motleyrice.com

                              Co-Lead Counsel

                              CHRISTOPHER A. SEEGER
                              **SEEGER WEISS, LLP**
                              55 CHALLENGER ROAD, 6TH FLOOR

---

[10] In addition, Defendants' position that minors (which they define as younger than 16 years of age) should be subjected to four (4) hours of questioning in single-Defendant cases (*with an additional 1 hour for each additional Defendant in multi-Defendant cases*), does not support a true concern for minors' well-being.

RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel


JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500

Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**DANIEL J. CAMERON**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Gregory B. Ladd (KY Bar No. 95886),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
GREG.LADD@KY.GOV
ZACH.RICHARDS@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
Amy Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

GEOFFREY DRAKE, *pro hac vice*
David Mattern, *pro ha vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

19

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashley W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

AGENDA AND JOINT STATEMENT FOR FEBRUARY 23, 2024 CASE MANAGEMENT CONFERENCE
4:22-md-03047-YGR

## <u>ATTESTATION</u>

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: February 16, 2024

By: /s/ *Ashley M. Simonsen*
ASHLEY M. SIMONSEN

AGENDA AND JOINT STATEMENT FOR FEBRUARY 23, 2024 CASE MANAGEMENT CONFERENCE
4:22-md-03047-YGR