Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
David Mattern, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
Email:  gdrake@kslaw.com
         tharris@kslaw.com
         dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc.,*
*ByteDance Inc., ByteDance Ltd.,*
*TikTok Ltd., and TikTok LLC*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) PLAINTIFFS' NON-PRIORITY CLAIMS (COUNTS 5, 12, 14, 16–18)**<br><br>**Hearing:**<br>Date:    TBD<br>Time:    TBD<br>Place:   Oakland, California<br>Judge:   Hon. Yvonne Gonzalez Rogers |

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ...................................................................................................... iii

3   I.       INTRODUCTION ...................................................................................................... 1

4   II.      ARGUMENT ............................................................................................................. 1

5           A.      Plaintiffs' General Negligence Claim (Count 5) Fails as Pleaded. ......................... 1

6                   1.       Plaintiffs Concede Many Portions of Their Negligence Claim Are
7                            Barred. .......................................................................................................... 1

8                   2.       Section 230 Bars Claims Premised on Harms from Publishing Third-
9                            Party Content. ............................................................................................... 4

10                  3.       The First Amendment Bars Plaintiffs' Attempts to Require Different
                            Age Verification or Parental Controls. .......................................................... 6

11
12                  4.       Plaintiffs Do Not Allege a Cognizable Duty. ................................................. 7

13                  5.       Plaintiffs Fail to Adequately Allege that Defendants Were the
                            Proximate Cause of Third-Party Misconduct. ............................................ 11

14          B.      The Court Should Dismiss or Limit Plaintiffs' Loss of Consortium, Wrongful
15                  Death, and Survival Claims (Counts 16–18). ......................................................... 12

16                  1.       Plaintiffs Acknowledge the Derivative Nature of Counts 16–18. ............... 12

17                  2.       Plaintiffs Acknowledge that Numerous States Do Not Recognize Loss
                            of Consortium Claims (Count 18) Asserted by Parents. .............................. 12

18
19                  3.       Plaintiffs Acknowledge They Are Not Entitled to Medical Expenses
                            Under a Loss-of-Consortium Theory (Count 18). ....................................... 14

20          C.      The Court Should Dismiss Plaintiffs' CSAM Claims. .......................................... 14

21                  1.       Section 230 Bars Plaintiffs' CSAM Claims. ................................................. 14

22                  2.       Plaintiffs Fail to State a Claim Under Sections 2252 and
23                           2252A(a)(5)(B). ........................................................................................... 17

24   III.     CONCLUSION ........................................................................................................ 18

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashburn v. Anne Arundel Cty.*,
    510 A.2d 1078 (Md. 1986)....................................................................................... 9

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ................................................................................ 16

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................. 7

*Brennon B. v. West Contra Costa Uni. Sch. Dist.*,
    2019 WL 4738283 (N.D. Cal. Sept. 27, 2019) ....................................................... 3

*Bride v. Snap Inc.*,
    2023 WL 2016927 (C.D. Cal. Jan. 10, 2023) ......................................................... 5

*Bush v. Liberty Life Assurance Co. of Boston*,
    130 F. Supp. 3d 1320 (2015) ................................................................................... 3

*Campos v. Coleman*,
    123 A.3d 854 (Conn. 2015)..................................................................................... 13

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ................................................................................ 16

*Com. Bank/Penn. v. 1st Union Nat'l Bank*,
    911 A.2d 133 (Pa. Super. Ct. 2006) ........................................................................ 9

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019).................................................................................. 11

*Dent v. NFL*,
    968 F.3d 1126 (9th Cir. 2020).................................................................................. 3

*Doe #1 v. MG Freesites, LTD*,
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ..................................................... 16, 17

*Doe #1 v. Twitter, Inc.*,
    2023 WL 3220912 (9th Cir. May 3, 2023) ............................................... 14, 15, 16

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)....................................................... 15

*Doe v. Grindr, LLC*,
    2023 WL 7053471 (M.D. Fla. Oct. 26, 2023),

(11th Cir. Nov. 28, 2023) ............................................................................................. 5

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal., Sept. 3, 2021) ..................................................... 17

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007) .................................................................... 8

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) .................................................................................... 5

*Doe v. Snap, Inc.*,
    2022 WL 2528615 (S.D. Tex. July 7, 2022) ............................................................ 5

*L.W. ex rel. Doe v. Snap Inc.*,
    2023 WL 3830365 (S.D. Cal. June 5, 2023) ........................................................... 14

*Doe v. Twitter, Inc.*,
    2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) ........................................................ 16

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) ....................................................... 15, 16, 17

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ............................................................................ 15, 16

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .................................................................................. 3

*Estate of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ............................................................. 7

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019) .................................................................... 7

*Fair Housing Coun. Of San Fernando Valley v. Roommates. Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ............................................................................ 3, 16

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) .................................................................................. 11

*Garza v. Endo Pharms.*,
    2012 WL 5267897 (C.D. Cal. Oct. 24, 2012) .......................................................... 2

*Godwin v. Facebook, Inc.*,
    160 N.E.3d 372 (Ohio Ct. App. 2020) ..................................................................... 8

*Greater Houston Transp. Co. v. Phillips*,
    801 S.W.2d 523 (Tex. 1990) ................................................................................... 8

iv

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
   2011 WL 5521005 (N.D. Cal. Nov. 14, 2011)..................................................................... 7

*Grieco v. Daiho Sangyo, Inc.*,
   344 So. 3d 11 (Fla. 4th DCA 2022) .................................................................................. 9

*Hustler Mag., Inc. v. Falwell*,
   485 U.S. 46 (1988) ........................................................................................................... 11

*Jane Doe No. 14 v. Internet Brands, Inc.*,
   No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016), ECF No. 51 ..................................... 3

*In re JUUL Labs, Inc., Mktg., Sales, Pracs., and Prod. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) .......................................................................... 2, 10

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   — F. Supp. 3d —, 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023) ............................... *passim*

*Lincoln Alameda Creek v. Cooper Indus., Inc.*,
   829 F. Supp. 325 (N.D. Cal. 1992) .................................................................................... 6

*M.L. v. Craigslist Inc.*,
   2020 WL 6434845 (W.D. Wash. Apr. 17, 2020).................................................................. 7

*M.H. v. Omegle.com, LLC*,
   2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ....................................................................... 15

*Mack v. Wal-Mart Stores, Inc.*,
   2007 WL 3177000 (D.S.C. Oct. 26, 2007) ......................................................................... 8

*Menefee v. CCMC Corp.*,
   2024 WL 164912 (Conn. Super. Ct. Jan. 10, 2024).......................................................... 13

*Modisette v. Apple Inc.*,
   30 Cal. App. 6th 136 (2018)........................................................................................... 7, 8

*NetChoice, LLC v. Bonta*,
   — F. Supp. 3d —, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023) ....................................... 6

*NetChoice, LLC v. Griffin*,
   — F. Supp. 3d —, 2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) ...................................... 6

*NetChoice, LLC v. Yost*,
   — F. Supp. 3d —, 2024 WL 555904 (S.D. Ohio Feb. 12, 2024) ........................................ 6

*New Show Studios LLC v. Needle*,
   2014 WL 2988271 (C.D. Cal. June 30, 2014) ..................................................................... 2

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011)............................................................................. 15

*Perez v. S. Pac. Transp. Co.*,
    218 Cal. App. 3d 462 (1990) ............................................................................... 8

*Powell v. Am. Motors Corp.*,
    834 S.W.2d 184 (Mo. 1992) ............................................................................... 13

*Quisenberry v. Compass Vision, Inc.*,
    618 F. Supp. 2d 1223 (S.D. Cal. 2007) ........................................................... 9, 10

*Rhodes v. Illinois Cent. Gulf R.R.*,
    665 N.E.2d 1260 (Ill. 1996) ............................................................................... 8

*Seebold v. Prison Health Servs. Inc.*,
    57 A.3d 1232 (Pa. 2012) ..................................................................................... 9

*Senger v. United States*,
    103 F.3d 1437 (9th Cir. 1996) ........................................................................... 8

*Soc. Media Cases*,
    2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ................................................. 8

*Sollberger v. Wachovia Sec., LLC.*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ................................................... 2

*Stewart v. Bourque*,
    2023 WL 4072993 (Conn. Super. Ct. June 13, 2023) ....................................... 13

*Tanner v. City of Sullivan*,
    2013 WL 3287068 (E.D. Mo. June 28, 2013) ................................................... 13

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ..................................................................................... 10, 11

*United States v. Moreland*,
    665 F.3d 137 (5th Cir. 2011) ............................................................................. 17

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ............................................................................................. 17

*Verdun v. State*,
    598 So. 2d 1091 (La. Ct. App. 1992) ................................................................ 8

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) ........................................................................... 11

*Zamora v. CBS*,
    480 F. Supp. 199 (S.D. Fla. 1979) .................................................................... 10

vi

**Statutes**

18 U.S.C. § 2252 ..................................................................................... *passim*

18 U.S.C. § 2252A ......................................................................................... 17

18 U.S.C. § 2255 ...................................................................................... 15, 17

18 U.S.C. § 2258A ......................................................................................... 17

18 U.S.C. § 2258B ......................................................................................... 17

47 U.S.C. § 230 .................................................................................... *passim*

## I.   INTRODUCTION

Plaintiffs' Opposition sidesteps Defendants' arguments and contorts the allegations in the Second Amended Master Complaint ("SAC") in an effort to retroactively amend by argument.[1]  These efforts do not save Plaintiffs' non-priority claims.

*First*, Plaintiffs defend only a narrow slice of their negligence claim and otherwise attempt to shoehorn new theories of liability through improper shotgun pleading that incorporates irrelevant and contradictory allegations into Count 5.  As to age verification, parental controls, and content reporting processes, this Court's prior holdings applying Section 230 and the First Amendment bar Plaintiffs' allegations to the extent they rely on harms arising from Defendants' publication of third-party content.  Plaintiffs also have not pleaded a cognizable legal duty.  This Court previously held that Defendants plausibly owed Plaintiffs a *product manufacturer's* duty when assessing *product-liability* claims.  Plaintiffs' self-styled "non-product" negligence claim has no comparable duty, and Plaintiffs cannot distinguish the scores of cases rejecting a duty on online service operators when, as here, the alleged injury is tied to third-party speech.

*Second*, Counts 16–18 need not await resolution in individual cases.  Plaintiffs chose to bring these claims in their Master Complaint, and their concessions make clear that these counts are amenable to global resolution—particularly as to states that do not recognize the claims Plaintiffs pleaded.

*Finally*, the Opposition confirms that Plaintiffs do not state a claim against Meta under 18 U.S.C. §§ 2252 and 2252A.  Section 230 bars claims based on content provided by others, and Plaintiffs fail to identify any CSAM that Meta supposedly "possessed" other than the CSAM that third parties created and posted to its services.  Nor does the Master Complaint adequately allege that Meta "knowingly" possessed CSAM as required to state a claim under §§ 2252 and 2252(a)(5)(B).

## II.   ARGUMENT

### A.   Plaintiffs' General Negligence Claim (Count 5) Fails as Pleaded.

### 1.   Plaintiffs Concede Many Portions of Their Negligence Claim Are Barred.

This Court's order on Plaintiffs' priority claims makes clear, and Plaintiffs do not seriously

---

[1] Throughout this Reply, Defendants' Joint Motion to Dismiss Plaintiffs' Non-Priority Claims (Dkt. 516) is cited as "Mot." and Plaintiffs' Opposition (Dkt. 597) is cited as "Opp."

contest, that many of the theories and allegations the SAC offers in support of Plaintiffs' general negligence claim are barred.  Accordingly, the Court should dismiss those barred theories and narrow the scope of Plaintiffs' negligence claim in a manner consistent with the Court's previous rulings.

Plaintiffs do not dispute that the Court's prior order bars the portions of the negligence claim that "directly target defendants' roles as publishers of third-party content"—a category that encompasses most of the allegations in Count 5.  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.* ("*In re Soc. Media*"), — F. Supp. 3d —, 2023 WL 7524912, at *13 (N.D. Cal. Nov. 14, 2023).  For example, Plaintiffs may not contend that Defendants acted negligently by deploying features that enhance how users engage with each other and with third-party content on Defendants' services.  *Id.*  Yet many of the allegations in Count 5 do just that.  *E.g.*, SAC ¶¶ 916, 929(a), (b), (d), 930(c), (d), (e), (f).  Nor do Plaintiffs dispute that the Court's order bars negligence liability for third-party conduct—yet Count 5 alleges just such liability.  *E.g.*, SAC ¶¶ 916, 929(c), 930(g); Opp. 16.

Plaintiffs seek to evade dismissal of their negligence claim by arguing that Defendants failed to respond to their allegations about "self-restrictions, account deletion, filters, and lack of labels for filtered images."  Opp. 3.  But Plaintiffs did not plead those allegations as part of Count 5 (which is why Defendants' motion did not address them).  That alone resolves this argument.

Seemingly recognizing this pleading deficiency, Plaintiffs ask the Court to ignore their express allegations and accept new theories of liability driven by boilerplate incorporation of "*all* of the factual allegations that formed the basis" for their preceding counts.  Opp. 3, 15 (emphasis in original).  This is simply an invitation to treat the Opposition as a back-door amendment to their Complaint—a request numerous courts have rejected.  *Garza v. Endo Pharms.*, 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012) ("arguments in an opposition are not factual allegations that this Court may consider on a motion to dismiss plaintiffs' *complaint*") (emphasis in original).

The wholesale incorporation of factual allegations underlying other claims is a textbook case of shotgun pleading.  Shotgun pleadings are "unacceptable" because they "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations."  *Sollberger v. Wachovia Sec., LLC.*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010); *see also New Show Studios LLC v. Needle*, 2014 WL 2988271, at *11 (C.D.

Cal. June 30, 2014). That is precisely the case here—Plaintiffs expressly pleaded Count 5 "on a non-product theory." SAC ¶ 914. Yet they now ask the Court to incorporate by reference into Count 5 numerous allegations that Defendants' services are "products." *E.g.*, SAC ¶ 1 (describing Defendants' services as "dangerous social media products"), ¶¶ 2–4, 6–8, 10, 13–22, 54–55, 60, 71–72, 76, 97 (mentioning the word "product" eight times in a single paragraph), ¶¶ 124, 127, 158.

Given Count 5's express *disclaimer* of products-based theories, SAC ¶ 914, Plaintiffs cannot fault Defendants for not addressing those theories in moving to dismiss this claim, Opp. 3–5. If Plaintiffs wanted to plead allegations about "self-restrictions, account deletion, filters, and lack of labels for filtered images" in their negligence claim, *see* Opp. 3, their opportunity to do so was in their Complaint, not in their Opposition.[2] Plaintiffs' attempt to assert new theories of liability now fails to give Defendants the fair notice of the predicates of Plaintiffs' negligence claim that Rule 8 requires.

Plaintiffs further argue that the Court may not dismiss subparts of claims or apply Section 230 or the First Amendment to bar certain theories. This argument ignores this Court's broad authority to control its docket and its past practices in this case, and others, of dismissing aspects of claims that are non-cognizable, improperly pleaded, or both. *In re Soc. Media*, 2023 WL 7524912, at *1; *see also Dent v. NFL*, 968 F.3d 1126 (9th Cir. 2020) (affirming dismissal of two theories underlying single negligence count while allowing third theory); *Fair Housing Coun. Of San Fernando Valley v. Roommates. Com, LLC,* 521 F.3d 1157 (9th Cir. 2008) (applying Section 230 to bar certain theories but not others).[3]

---

[2] Notwithstanding Plaintiffs' failure to adequately plead that failure to warn was a predicate to their general "non-product" negligence claim, Defendants cited authority that social media platforms do not have a duty to warn their users of the various alleged dangers on the platforms. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Jane Doe No. 14 v. Internet Brands, Inc.*, No. 2:12-CV-3626-JFW (C.D. Cal. Nov. 14, 2016), ECF No. 51 at 7 (website had "no duty" "to warn … users that they were at risk of being victimized by [a] rape scheme"). Defendants also explained why such a claim fails when it is actually pleaded. *See* Dkt. 320 at 4–5, 9, 18; Dkt. 353 at 8–9; Dkt. 601 at 15–16.

[3] *Brennon B. v. West Contra Costa Uni. Sch. Dist.*, 2019 WL 4738233 (N.D. Cal. Sept. 27, 2019) (Gonzalez Rogers, J.); *Bush v. Liberty Life Assurance Co. of Boston*, 130 F. Supp. 3d 1320 (2015) (Gonzalez Rogers, J.).

### 2.  Section 230 Bars Claims Premised on Harms from Publishing Third-Party Content.

When Plaintiffs finally turn to what they *did* plead in Count 5—allegations involving age verification, parental controls, and content reporting by users—they incorrectly accuse Defendants of seeking "a second bite" in arguing that Section 230 bars such theories *to the extent* premised on Defendants' publication of third-party content.  Opp. 15.  To the contrary, the Court's order made clear that Section 230 bars theories of harm premised on third-party content—including connections between adults and minors, content ephemerality, algorithmic content recommendations, autoplay features, and exposure to allegedly harmful materials.  *See In re Soc. Media*, 2023 WL 7524912, at *14–16.  And Plaintiffs do not dispute that their age verification, parental controls, and reporting claims are in several respects premised on these barred theories of harm.  Mot. 12–13.[4]

With respect to age verification, the Court held that Section 230 bars claims that Defendants "should have used age-verification to … limit platform access to children" because doing so *would* "impact [the defendant's] publication of third-party content."  *In re Soc. Media*, 2023 WL 7524912, at *12 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 422 (5th Cir. 2008)).  Yet Plaintiffs assert this very theory, alleging that "defective age verification and parental control procedures … allow children under 13 unfettered access to the app."  SAC ¶ 566.  Likewise, Plaintiffs allege that Defendants' purported lack of "age verification, identity verification, [and] parental consent" are actionable because minors "become *subject to the products' various addictive and harmful features*."  SAC ¶ 333 (emphasis added); *see also, e.g.*, *id.* ¶¶ 721, 655 (same).  But the Court previously held that many of these features are protected by Section 230.  *In re Soc. Media*, 2023 WL 7524912, at *12.  Accordingly, Plaintiffs' age verification and parental consent theories based on challenges to these features are nonviable.

---

[4] *Citing, e.g.*, SAC ¶¶ 134, 400, 466, 576 (alleging that "flawed age verification" and "parental controls" "help sexual predators connect with children," including by posing as minors to exploit account recommendation tools); ¶ 503 (alleging that "Snap's parental controls are ill-equipped to mitigate the risks" allegedly posed by content ephemerality); ¶ 523 (alleging that inadequate age verification allowed "Snapchat's algorithm" to "recommend[] inappropriate sexual content to adolescent users"); ¶ 722 (alleging that inadequate age verification exposes minors to YouTube's "autoplay feature"); ¶ 566 (alleging that "defective age verification and parental control procedures, [] allow children under 13 unfettered access to the app"); ¶ 151 (alleging that inability to report images "delays their removal and results in repeated re-victimization" as the images remain posted).

Ignoring that reality, Plaintiffs argue that *some* of their *other* theories of harm do not "*necessarily* implicate content." Opp. 15 (emphasis in original). But large swaths of Plaintiffs' underlying allegations of harm reveal their dependence on content. For instance, Plaintiffs insist that "imposing a duty to provide parental controls to notify when a child's 'use becomes excessive'" would not require Defendants "to monitor the *content* the child is seeing." Opp. 15 (quoting SAC ¶ 351) (emphasis added). But Plaintiffs omit a key portion of that quote from their Complaint, which proposes requiring Defendants "to notify parents when their child's use becomes excessive, occurs during sleep time, *or exposes the child to harmful content*." SAC ¶ 351 (emphasis added). A duty to notify parents of exposure to harmful content "would 'necessarily require [Defendants] to monitor third-party content.'" *In re Soc. Media*, 2023 WL 7524912, at *10 (quoting *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)); s*ee also, e.g.*, *Bride v. Snap Inc.*, 2023 WL 2016927, at *5 (C.D. Cal. Jan. 10, 2023) (same), *appeal docketed*, No. 23-55134 (9th Cir. Feb. 14, 2023).

Likewise, Plaintiffs argue that Section 230 does not bar allegations regarding purportedly inadequate tools for reporting harmful content to the extent those allegations do "not require [Defendants] to remove the content." Opp. 15 (quoting *In re Soc. Media*, 2023 WL 7524912, at *13). Even if this were true, Plaintiffs once again disregard the actual allegations in their Complaint, which claim that inadequate reporting tools lead to "delays" in the "*removal*" of certain content, which Plaintiffs assert "results in repeated re-victimization" as the images remain posted. SAC ¶ 151 (emphasis added); Mot. 13–14. Section 230 plainly bars this type of claim. *See* Mot. 13; *e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d at 420–21 (barring claims that the lack of "age verification software" facilitated communications with predators because such "allegations are merely another way of claiming that MySpace was liable for publishing the communications"); *Doe v. Snap, Inc.*, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022) ("Snapchat's alleged lack of safety features is only relevant to [Doe's] injuries to the extent that such features would have averted wrongful communication via [Snap's] platforms by third parties" (cleaned up)), *aff'd* 2023 WL 4174061 (5th Cir. June 26, 2023); *Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023), *appeal docketed*, No. 23-13874 (11th Cir. Nov. 28, 2023) (Section 230 barred claims that Grindr "fail[ed] to implement basic

safety measures to protect minors" because "[t]he foundation of Plaintiff's claim" concerned "communications on the Grindr platform").

### 3. The First Amendment Bars Plaintiffs' Attempts to Require Different Age Verification or Parental Controls.

Plaintiffs similarly ignore the growing consensus that the First Amendment bars attempts to require online services, including social media services, to implement age verification or parental controls. *See* Mot. 14; *NetChoice, LLC v. Bonta*, — F. Supp. 3d —, 2023 WL 6135551, at *10–18 (N.D. Cal. Sept. 18, 2023) (First Amendment barred attempt to mandate age verifications or limits on all accounts); *NetChoice, LLC v. Griffin*, — F. Supp. 3d —, 2023 WL 5660155, at *1–2, 17 (W.D. Ark. Aug. 31, 2023) (First Amendment barred attempt to mandate age verification and parental consent). This principle was recently reaffirmed in *NetChoice, LLC v. Yost*, — F. Supp. 3d —, 2024 WL 555904 (S.D. Ohio Feb. 12, 2024), which preliminarily enjoined an Ohio law requiring online services that "target children" to bar users under 16 absent parental consent. *Id.* at *1–2, 14. The court explained that the law "appears to be exactly th[e] sort of law" that impermissibly limits access to speech, and that "[f]oreclosing minors under sixteen from accessing all content on [covered] websites … absent affirmative parental consent, is a breathtakingly blunt instrument for reducing social media's harm to children." *Id.* at *12. Moreover, "[t]he features that the Act singles out" to target certain services, including features that allow users "to post, comment, and privately chat," "are inextricable from the content produced by those features" and therefore protected by the First Amendment. *Id.* at *11. The same is true here as to Plaintiffs' negligence allegations that seek to use allegedly deficient parental controls or age verification to hold Defendants liable for providing access to their platforms and exposing Plaintiffs to allegedly harmful content.[5]

---

[5] In a footnote, Plaintiffs suggest this Court should ignore "[t]he recent decisions in *NetChoice v. Bonta* and *NetChoice v. Griffin*" because they "were issued by district courts"—even though *Bonta* was decided by another judge in this district. Opp. 12 n.12. Plaintiffs further attempt to distinguish those cases because they involved statutes instead of common-law torts. But Defendants cited the two *NetChoice* decisions for the proposition that multiple courts, including this one, have held imposing age-verification restrictions unconstitutional—a conclusion that is relevant to the viability of both a state statute and a tort claim. *See In re Soc. Media*, 2023 WL 7524912, at *17 ("The Free Speech Clause of the First Amendment ... can serve as a defense in state tort suits." (quoting *Snyder v. Phelps*,

#### 4.   Plaintiffs Do Not Allege a Cognizable Duty.

To the extent Plaintiffs have alleged any non-barred theories in support of their negligence claim, they fail to identify any viable duty Defendants owed, in connection with a non-product-based negligence claim, to provide age verification, parental controls, or reporting features—an "essential element" of "any negligence claim." *Lincoln Alameda Creek v. Cooper Indus., Inc.*, 829 F. Supp. 325, 328 (N.D. Cal. 1992).

As Defendants explained, courts refuse to impose a duty of care between online services and their users—much less a duty to affirmatively modify or create features. *E.g.*, Mot. 6, 8, 15–16. Plaintiffs misconstrue those cases as relating only to liability regarding the *content* of Defendants' publications. Opp. 14–15. But they fail to reckon with, for example, *Estate of B.H. v. Netflix, Inc.*, in which the Court dismissed claims relating to "Netflix's use of its trove of individualized data about its users to specifically target vulnerable children." 2022 WL 551701, at *2 n.3 (N.D. Cal. Jan. 12, 2022). Nor do Plaintiffs have a response to courts' refusal to impose a duty to modify website features that allowed third parties to exploit minors. *E.g.*, *M.L. v. Craigslist Inc.*, 2020 WL 6434845, at *2 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020) (no duty despite allegation "that craigslist knew that human traffickers were using the features and guidelines of the craigslist website to advertise trafficked minors").

Instead, Plaintiffs broadly contend that "all business[es] owe to their customers[] the duty not to create an unreasonable risk of harm." Opp. 6; *see* SAC ¶ 916. Such conclusory duty allegations are routinely rejected. *See, e.g.*, *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011) (dismissing negligence claim that "conclusorily alleg[ed] duty"), *aff'd*, 571 F. App'x 633 (9th Cir. 2014).

The cases Plaintiffs cite to support their conclusory assertions are inapposite. Some concern a purported duty to safeguard users' personally identifying information from data breaches. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019), *In re Equifax, Inc., Customer Data Sec.*

---

562 U.S. 443, 451 (2011)); *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 51 (1988) (courts must "ensure that individual expressions of ideas remain free from governmentally imposed sanctions").

*Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019); *see also* Opp. 5 n.6 (citing additional cases). For example, in *Equifax*, the court held that the Federal Trade Commission Act and Fair Credit Reporting Act imposed on defendants a duty to implement data security measures, but that state common law imposed no such duty. *Id.* Similarly, in *Bass*, plaintiffs alleged that Facebook "failed to comply with minimum data-security standards" resulting in a data breach. *Bass*, 394 F. Supp. 3d at 1039. Here, by contrast, Plaintiffs can point to no statute or industry standard that would justify imposing a novel tort duty to better verify users' ages or enhance parental controls. Plaintiffs' attempt to distinguish *Modisette v. Apple Inc.*, 30 Cal. App. 6th 136 (2018), fails for this very reason. Even if the *Modisette* holding "was driven entirely by" the court's assessment of the California legislature's policy choices, Opp. 14, Plaintiffs cannot point to any legislative choice to regulate online communication services' parental controls, age verification, and procedures for users to report CSAM to the extent that Plaintiffs demand.

Plaintiffs' other cases arise in the context of duties that physical businesses owe to invitees—a classic example of a special relationship that justifies imposing a duty. *See Senger v. United States*, 103 F.3d 1437, 1443 (9th Cir. 1996); *Mack v. Wal-Mart Stores, Inc.*, 2007 WL 3177000, at *3 (D.S.C. Oct. 26, 2007). Unsurprisingly, courts have refused to analogize website users to business invitees. *See, e.g.*, *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007), *aff'd on other grounds*, 528 F.3d 413 (5th Cir. 2008); *Godwin v. Facebook, Inc.*, 160 N.E.3d 372, 380 (Ohio Ct. App. 2020). To the extent Plaintiffs rely on a theory of "attractive nuisance," courts have likewise reserved that theory for physical premises. *See, e.g.*, *Perez v. S. Pac. Transp. Co.*, 218 Cal. App. 3d 462, 468 (1990). Defendants have no similar relationship with (nor duty to) Plaintiffs.

Plaintiffs rely on the JCCP court's ruling, but that decision turned on California's unique statutory rule "that all persons are required to use ordinary care to prevent others from being injured as a result of their conduct," which California courts have held presumptively creates a duty in "*every case*" unless an exception to the rule is "clearly supported by public policy." *Soc. Media Cases*, 2023 WL 6847378, at *23 (Cal. Super. Oct. 13, 2023) (emphasis in original). In most states, the presumption runs in the opposite direction: there is no duty unless public policy clearly requires one. *See, e.g.*,

*Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267 (Ill. 1996) ("In resolving whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other.").[6]  Moreover, the JCCP court did not consider whether the allegations were barred by Section 230 or the First Amendment.  *See* Mot. 18.

Plaintiffs nevertheless ask the Court to expand the JCCP court's California-specific analysis to fashion a novel, nationwide duty to affirmatively create age-verification, parental controls, and reporting features.  Opp. 10–12.  But they can point to no support for the existence of such a duty. While they claim that the failure to create such features foreseeably causes harm, the studies they cite only examine social media and internet use generally.  Plaintiffs fail to allege that the particular features they challenge—allegedly inadequate parental controls, age verification, and procedures for users to report CSAM—actually caused any particular injury, much less that it was objectively reasonable to expect that they would.  Moreover, while in most states the foreseeability of a particular injury is a factor in determining whether a duty exists, "[f]oreseeability itself does not give rise to a duty." *S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc.*, 346 S.E.2d 324, 325 (S.C. 1986); *see also Seebold v. Prison Health Servs. Inc.*, 57 A.3d 1232, 1249 n.26 (Pa. 2012) (foreseeability "is not alone determinative of the duty question"); *Ashburn v. Anne Arundel Cty.*, 510 A.2d 1078, 1083 (Md. 1986) ("The fact that a result may be foreseeable does not itself impose a duty in negligence terms").  In many states, "courts must look at whether it was *objectively reasonable to expect the specific danger* causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility." *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022) (emphasis added); *see also Com. Bank/Penn. v. 1st Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. Ct. 2006) (bank's knowledge that bad actors opened accounts to perpetrate fraud was too "vague and attenuated" to

---

[6] *See also Verdun v. State*, 598 So. 2d 1091, 1096 (La. Ct. App. 1992) ("[T]he existence of a duty may be determined by considering the case of association between the duty owed and the risk encountered, as well as social, moral, and economic factors." (internal quotation marks omitted)), *writ denied*, 604 So. 2d 1003 (La. 1992); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.").

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

establish that the "harm in this specific case" was "foreseeable in the first instance").

Plaintiffs cite *Quisenberry v. Compass Vision, Inc.*, 618 F. Supp. 2d 1223 (S.D. Cal. 2007), to argue a duty is imposed when the "alleged causal nexus between a defendant's actions and a plaintiff's injury 'is not doubtful or remote.'" Opp. 11.  But that case turned on an inapposite legal question—whether "a laboratory owes a duty to those whose specimens it tests"—which the "overwhelming majority of the courts" had recognized.  *Quisenberry*, 618 F. Supp. 2d at 1228.  And in the court's view, it "[could] not imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing of individuals."  *Id.* at 1230.  By contrast, Plaintiffs fail to identify the same legal authority or causal allegations between the allegedly inadequate parental controls, age verification, and procedures for users to report CSAM and their alleged injuries.

Similarly, Plaintiffs point to *In re JUUL Labs, Inc., Mktg., Sales, Pracs., and Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 657 (N.D. Cal. 2020), where the court found that vaping had little "social utility" and imposed a duty on defendant to exercise care in the promotion of their vape products.  Here, by contrast, the social utility of Defendants' services—including among minors—is significant and broadly recognized.  *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 502–03 (2023) (recognizing that "billions of people" transmit information through social media).

Plaintiffs' policy arguments further do not grapple with reasons that courts have declined to impose a duty in similar cases.  Mot. 7–8 (citing cases); *see also In re Soc. Media*, 2023 WL 7524912, at *17 and n.25 (noting that the First Amendment serves as a defense in state tort suits and does "not vary when a new and different medium for communication appears" (internal quotations omitted)).  Courts have held that imposing a duty on publishers to limit engagement by minor users would have "no valid basis[,] … be against public policy," and provide "no recognizable standard for [any publisher] to follow."  *See Zamora v. CBS*, 480 F. Supp. 199, 200, 202 (S.D. Fla. 1979) (finding no duty where plaintiffs alleged their child was "involuntarily addicted to and 'completely subliminally intoxicated' by the extensive viewing of television violence").  Imposing new legal duties requiring Defendants to stringently verify the age of every one of their users, design elaborate new parental control mechanisms, and monitor, remove, and/or report content posted by third-party users of their

services would restrict access to important communications platforms widely used by both adults and minors to engage in valuable speech.  Plaintiffs fail to refute these serious concerns that cut against recognizing the expansive new duties they seek to impose.

**5. Plaintiffs Fail to Adequately Allege that Defendants Were the Proximate Cause of Third-Party Misconduct.**

Nor do Plaintiffs offer any reason why their claims based on third-party misconduct should not be dismissed for failure to adequately allege that Defendants proximately caused those harms. Plaintiffs acknowledge that this Court's ruling "dismiss[ing] claims based on third-party misconduct" for failure to allege a duty "applies equally to" their negligence claim.  Opp. 16.  And they fail to rebut Defendants' challenges based on proximate causation other than to "incorporate by reference here all of the arguments previously made in opposition to MTD1."  *Id.*  Even if this "incorporat[ion] by reference" was procedurally proper, Plaintiffs' prior briefing contains no responses to several of Defendants' key arguments, and Plaintiffs' silence should be construed as a waiver.  *See, e.g.*, *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition to motion to dismiss failed to address arguments, plaintiff "effectively abandoned" claim).

In particular, as Defendants' Motion explains, courts have repeatedly ruled that providing online communication services does not proximately cause injuries that result from third parties' misuse of those services.  Mot. 19–20.[7]  Plaintiffs have never identified any legal distinction between their claims that, for example, Defendants' services "help sexual predators connect with children," *see, e.g.*, SAC ¶ 134, and the plaintiffs' allegations in *Crosby*, *Fields*, and *Taamneh*.  *See* Dkt. 323, Defs.' Reply ISO MTD Plf.'s Priority Claims at 24–25.  Plaintiffs also have not adequately responded to

---

[7] *E.g.*, *Crosby v. Twitter, Inc.*, 921 F.3d 617, 620, 625 (6th Cir. 2019) (no proximate cause where terrorist group allegedly used defendants' services "to spread its propaganda and messages of hate," recruit members, "connect[] and reconnect" with supporters, and "fund its terrorism"); *Fields v. Twitter, Inc.*, 881 F.3d 739, 742–43, 749–50 (9th Cir. 2018) (no proximate cause where terrorist group allegedly used defendant's service to "spread propaganda," "incite fear," "fundraise," and "communicate with potential recruits"); *cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 497–99, 503 ( 2023) (dismissing claims that defendants' services allowed terrorists "to upload content to the platforms and connect with third parties" and used "algorithms [to match] ISIS-related content to users" because these claims "would run roughshod over the typical limits on tort liability").

Defendants' many authorities holding that providing online services to the public does not establish a causal link sufficient to make a company liable for the wrongful acts of others, even if it is generally foreseeable that misuse might occur.  *See* Dkt. 237, Defs' MTD Plf.'s Priority Claims at 46–47; Dkt. 323, Defs.' Reply ISO MTD Plf.'s Priority Claims at 23–24.  Nor have Plaintiffs responded to Defendants' explanations as to why Plaintiffs' previously cited cases are inapposite.  *See* Dkt. 323, Defs.' Reply ISO MTD Plf.'s Priority Claims at 25–27.

Because Plaintiffs fail to rebut Defendants' arguments, the Court should dismiss Plaintiffs' negligence claim for lack of proximate cause insofar as it rests on allegations of third-party misconduct.

## B.   The Court Should Dismiss or Limit Plaintiffs' Loss of Consortium, Wrongful Death, and Survival Claims (Counts 16–18).

Plaintiffs are wrong that Defendants' challenges to Counts 16–18 should be deferred until a later stage of the litigation and "handled on an individual level."  Opp. 16.  Plaintiffs chose to plead these claims as part of their Master Complaint, and they implicitly concede (by not addressing Defendants' arguments) that multiple aspects of these claims are deficient.

### 1.   Plaintiffs Acknowledge the Derivative Nature of Counts 16–18.

Plaintiffs do not (and cannot) dispute the derivative nature of their survival, wrongful death, and loss of consortium claims.  Opp. 17.  Nor do they dispute that such claims would be extinguished as to any individual plaintiff whose underlying claims are ultimately dismissed.  *Id.*  The Court should therefore dismiss or limit Counts 16–18 to the extent Plaintiffs' underlying personal injury claims or particular theories of harm are dismissed or limited as a result of its other rulings.

### 2.   Plaintiffs Acknowledge that Numerous States Do Not Recognize Loss of Consortium Claims (Count 18) Asserted by Parents.

As Defendants explained, many states do not recognize loss of consortium claims asserted by parents for injuries to their children.  *See* Mot. 27–29.  Plaintiffs largely agree, listing numerous states "in which parents cannot sustain independent claims for loss of consortium."  Opp. 18 & Appendix B.  Moreover, Plaintiffs do not respond to Defendants' arguments and cited authorities addressing loss of consortium claims in North Carolina, Pennsylvania, or the District of Columbia (*see* Mot. 27 n.19, 28 n.20), and therefore have forfeited any arguments to support such claims.  The Court should dismiss

12

Count 18 as to the claims for those three jurisdictions as well as any of the states listed in Appendix B of Plaintiffs' opposition.

Plaintiffs are wrong that Connecticut and Missouri allow loss of filial consortium claims by parents. *See* Opp. 18. A Connecticut court recently explained that "[t]here is no appellate precedent expressly authorizing a claim for loss of filial consortium" brought by a parent for the loss of a child. *Menefee v. CCMC Corp.*, 2024 WL 164912, at *1 (Conn. Super. Ct. Jan. 10, 2024). Although Connecticut has recognized "loss of parental consortium" claims following the death of a *parent*, *Campos v. Coleman*, 123 A.3d 854, 856 (Conn. 2015), those claims are distinguishable from Plaintiffs', as "the constellation of responsibilities owed by parents to their minor children" flow uniquely from parent to child, not the other way. *See Menefee*, 2024 WL 164912, at *4–7 (the "same legal obligations and entitlements identified in *Campos* to support a claim for loss of parental consortium do not exist" in a claim brought by a parent for injuries to a minor child). Accordingly, although some Connecticut trial courts have permitted claims for loss of filial consortium, it is unlikely that the Connecticut Supreme Court would authorize such a claim. *See Stewart v. Bourque*, 2023 WL 4072993, at *3–4 (Conn. Super. Ct. June 13, 2023) ("[T]he court concludes that a parent may not recover for loss of consortium caused by injuries suffered by his or her child.").

Similarly, the Missouri Supreme Court has expressly "decline[d] to recognize a common law cause of action [for loss of consortium] in either children or parents of an injured party." *Powell v. Am. Motors Corp.*, 834 S.W.2d 184, 191 (Mo. 1992) (en banc). Plaintiffs cite a federal district court case that treated "loss of consortium" only as an element of damages for a *wrongful death* claim, not as a freestanding cause of action. *Tanner v. City of Sullivan*, 2013 WL 3287068 (E.D. Mo. June 28, 2013). Even if these rulings were in tension, this Court must follow the Missouri Supreme Court's interpretation of state law and reject Plaintiffs' loss of consortium claims with respect to Missouri.[8]

---

[8] Plaintiffs cite a Kentucky decision in support of the notion that "parents can seek loss-of-consortium claims upon the death of a child" in some states, Opp. 18 n.15, but Defendants do not challenge Count 18 with respect to Kentucky, *see* Mot. at 27–29.

**3.      Plaintiffs Acknowledge They Are Not Entitled to Medical Expenses Under a Loss-of-Consortium Theory (Count 18).**

Although Plaintiffs expressly plead that they have been forced to pay "for medical aid, medical treatment, and medications" for their children, SAC ¶ 1090, Plaintiffs admit that such expenses "may not be recoverable under the loss-of-consortium claim in certain states," Opp. 19.[9]  Even if parents may be entitled to recover medical expenses under *some other* legal theory, Plaintiffs' demand for those damages under Count 18 is improper, and the Court should limit the claim accordingly.

**C.      The Court Should Dismiss Plaintiffs' CSAM Claims.**

Finally, Plaintiffs' claims against Meta for receipt, possession, and distribution of CSAM under 18 U.S.C. §§ 2252 and 2252A(a)(5)(B) are barred by Section 230 and, in any event, are not plausibly alleged.  Plaintiffs cannot evade Section 230 by mischaracterizing the Master Complaint as alleging only that Meta possessed CSAM, not that Meta disseminated CSAM or failed to remove it. Courts, including the Ninth Circuit, have consistently held that where, as here, a defendant is alleged to have "possessed" CSAM only in its role as the publisher of user-generated content, such allegations necessarily take aim at publisher activity protected by Section 230.  Nor can Plaintiffs save the deficient CSAM claims as alleged in the Master Complaint by focusing on allegations in a recently amended Short Form Complaint ("SFC").  Plaintiffs' attempt to do so shows they understand that the Master Complaint has not plausibly alleged that Meta itself violated §§ 2252 and 2252A(a)(5)(B).

**1.      Section 230 Bars Plaintiffs' CSAM Claims.**

Plaintiffs concede, as they must, that Section 230 provides Meta immunity for hosting, disseminating, or failing to remove CSAM provided by third parties.  *See* Opp. 21 (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–1101 (9th Cir. 2009)); *accord Doe #1 v. Twitter, Inc.*, 2023 WL 3220912, at *1 (9th Cir. May 3, 2023) (affirming dismissal of CSAM claim against Twitter and explaining that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230" (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008))); *L.W. ex rel. Doe*

---

[9] Although Plaintiffs attempt to limit their admission to "certain states," Opp. 19, Plaintiffs do not identify a single state that permits recovery of medical expenses for loss of consortium.

*v. Snap Inc.*, 2023 WL 3830365, at *4 (S.D. Cal. June 5, 2023) ("theories of liability [that] plainly turn on … failure to monitor and remove third party [CSAM] content" are barred by Section 230). Plaintiffs' concession is sufficient to dismiss the CSAM claims.

Plaintiffs nevertheless try to save their claims by arguing that they seek to hold Meta liable for "knowingly receiv[ing] and possess[ing] CSAM—*irrespective of whether Meta also published that CSAM.*" Opp. 21 (emphasis in original). But this argument contradicts the Complaint, which seeks to hold Meta liable for its alleged "distribution" and "dissemination" of CSAM, and for its "fail[ure] … to remove these contraband materials." SAC ¶¶ 418–19; *see also id.* ¶¶ 398, 409; *id.* ¶ 391B (NM AG ¶¶ 69–72); Mot. 22. That is not drafting sloppiness on Plaintiffs' part; rather, it underscores that their Opposition brief sets forth a distinction without a difference. As relevant to this case, the publication of CSAM—conduct Plaintiffs concededly cannot challenge consistent with Section 230—is inseparable from the receipt and possession of that material. Plaintiffs allege (and indeed could only allege) that Meta "possessed" CSAM solely as a result of users posting it on Facebook or Instagram.

In two recent cases, the Ninth Circuit has held that Section 230 bars claims like Plaintiffs', which seek to impose liability on an online service provider for failing to adequately monitor and remove CSAM posted by third-party users. *See Doe #1*, 2023 WL 3220912, at *2 (affirming ruling that Section 230 barred claims under 18 U.S.C. § 2252A alleging that "Twitter is liable for possessing, receiving, maintaining, and distributing child pornography"); *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (same for claims alleging that Reddit knowingly benefitted from sex trafficking venture by failing to remove known CSAM uploaded by users).[10]

Plaintiffs contend that their allegations differ from those the Ninth Circuit rejected in *Doe #1*. They do not. As here, *Doe #1* involved a § 2255 civil claim based on an alleged violation of § 2252A for possessing and distributing user-uploaded CSAM—a claim which turned on allegations that Twitter failed to remove CSAM after receiving notice that third-party users had used the service to publish

---

[10] These holdings are consistent with numerous cases that have applied Section 230 to bar claims based on users of online services uploading CSAM. *E.g.*, *M.H. v. Omegle.com, LLC,* 2022 WL 93575, at *5–6 (M.D. Fla. Jan. 10, 2022), *appeal docketed*, No. 23-10338 (11th Cir. Jan. 31, 2022); *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC,* 809 F. Supp. 2d 1041, 1045, 1054–55 (E.D. Mo. 2011); *Doe v. Bates,* 2006 WL 3813758, at *2, *5 (E.D. Tex. Dec. 27, 2006); Def. Snap, Inc.'s Reply ISO Mot. to Dismiss Identified Counts (Dkt. 613) (hereinafter "Snap Reply") at 3–4.

such material.  *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 895 (N.D. Cal. 2021), *aff'd in relevant part*, 2023 WL 3220912, at *2.  Plaintiffs also suggest that this Court should not follow the unpublished *Doe #1* decision and instead hold that CSAM "is not 'legally cognizable information'" for purposes of Section 230.  Opp. 21 n.17.  That the Ninth Circuit's decision in *Doe #1* was not published reflects only that the ruling was based on clearly established precedent.  *See Doe #1*, 2023 WL 3220912, at *2 ("[O]ur court has consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes." (cleaned up)).

Indeed, *Doe #1* is consistent with the Ninth Circuit's earlier *published* decision in *Reddit*.  51 F.4th at 1139–41 (recognizing that a claim based on Reddit's alleged failure to remove CSAM treated Reddit as a "publisher or speaker" under Section 230); *see also Doe v. Twitter, Inc.*, 2023 WL 8568911, at *4 (N.D. Cal. Dec. 11, 2023), *appeal docketed*, No. 24-177 (9th Cir. Jan 10, 2024) (explaining that in *Doe #1* the Ninth Circuit applied the reasoning from *Reddit*).  As *Reddit* reflects, Section 230 immunity does not depend on the nature of the content at issue, only its origin.  51 F.4th at 1145–46; *accord Barnes*, 570 F.3d at 1100–1101.  CSAM is illegal, but so is other third-party content covered by Section 230.  47 U.S.C. § 230(c)(1); *see Doe v. Twitter*, 555 F. Supp. 3d at 928 (rejecting argument that CSAM is "contraband" that is outside Section 230 immunity); *cf. Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1120–21, 1123 (9th Cir. 2003) (defamation, threats, and "cruel and sadistic identify theft" covered by Section 230).

Holding that CSAM is an exception to the rule that interactive computer services are not liable for the third-party content published on their services would contradict this binding authority and undermine the balance Section 230 strikes, by effectively requiring services to either comprehensively monitor third-party content for such contraband or "do[] nothing."[11]  *In re Soc. Media*, 2023 WL 7524912, at *7; *see id.* (Section 230 mitigates the otherwise "adverse incentive not to monitor or remove any harmful content"); *Doe #1*, 2023 WL 3220912, at *2 (applying Section 230 to bar CSAM claims); *Roommates.Com,* 521 F.3d at 1163 (Section 230 intended to "spare interactive computer

---

[11] The sole case Plaintiffs cite to the contrary, *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022), is contrary to Ninth Circuit precedent, provides no reasoned basis for its drastic result, and involved conduct not alleged here.  *See id.* at *21 (defendants alleged to have controlled, reviewed, and retitled CSAM video for publication); *see also* Snap Reply at 4–5.

services" a "grim choice by allowing them to perform some editing on user-generated content without thereby becoming liable for all … unlawful [content] that they didn't edit or delete.").

### 2. Plaintiffs Fail to State a Claim Under Sections 2252 and 2252A(a)(5)(B).

Independent of Section 230, Plaintiffs fail to adequately allege that Meta violated §§ 2252 and 2252A(a)(5)(B).  Plaintiffs have merely alleged that Meta's services are "*used for*" the possession and receipt of CSAM by third parties, *see* SAC ¶ 418 (emphasis added); *see also, e.g.*, *id.* ¶ 133 ("sexual predators use Defendants' products to target and exploit minors"), ¶¶ 145–146 (alleging defendants failed to curb predators' use of their services for dissemination of CSAM); *id.* ¶ 391B (NM AG ¶¶ 237–40) (similar), and that Meta failed to timely remove that material, *see, e.g.*, SAC ¶¶ 135, 415, 419, 800; *id.* ¶ 391B (NM AG ¶ 74).  But Plaintiffs concede that §§ 2252 and 2252A(a)(5)(B) do not permit vicarious liability, and they do not point to any persuasive authority in which an internet service provider was held liable for the use of its services by others to possess and receive CSAM.

*MG Freesites*, the sole case Plaintiffs cite, is nonbinding and readily distinguishable.  There, defendants allegedly "duplicated and distributed *new* child pornography by creating and hosting new 'thumbnail' images from existing videos of Plaintiffs and others," conduct the court recognized "simply cannot be likened to other kinds of [interactive computer services]."  2022 WL 407147, at *17, 21 (emphasis in original).  Nothing like that is alleged here.  Nor can allegations that Meta "failed to report that material to NCMEC" independently support claims under §§ 2255 and 2255A.  Plaintiffs *withdrew* their § 2258A claims, and in any event neither § 2258A nor § 2258B provides a private right of action.  *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 843 (C.D. Cal., Sept. 3, 2021) (dismissing § 2258A claim due to absence of private right of action); *Doe v. Twitter*, 555 F. Supp. 3d at 895 (same).

Plaintiffs also fail to adequately allege scienter.  Under §§ 2252 and 2252A(a)(5)(B), a defendant must have actual knowledge that it engaged in a prohibited action, that the material was sexually explicit, and that the material featured a minor.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); *United States v. Moreland*, 665 F.3d 137, 141 (5th Cir. 2011).  But the Master Complaint alleges, at most, that Meta was generally aware that unspecified third parties had posted CSAM somewhere on its services.  *See, e.g.*, SAC ¶¶ 143, 145, 146, 417, 523, 654, 778; *id.* ¶ 391B (NM AG ¶ 74); Mot. 23.  Plaintiffs do not identify a single factual allegation in the Master Complaint

17

that supports their assertion that "Meta 'knowingly' possessed … CSAM." Opp. 23. They instead discuss only allegations that were added to a single SFC after Meta moved to dismiss the CSAM claims in the Master Complaint. Opp. 23 (quoting Ann Frank SFC, filed on January 2, 2024). But this SFC is not presently before the Court, *see* Case Management Order No. 6 (Dkt. 451) at 2; Case Management Order No. 3 (Dkt. 111) at 3, and its allegations are barred by Section 230 in any event, *see* Opp. 23 (discussing allegations that Meta failed to remove CSAM); *supra* Part II.A.2. Meta has moved to dismiss the CSAM claims asserted in the Master Complaint, and those claims can survive only if the allegations in the Master Complaint state a claim. Plaintiffs' attempt to shift the focus from the Master Complaint to a single fatally defective SFC confirms they do not.

### III.     CONCLUSION

Defendants respectfully request that Plaintiffs' non-priority claims (Counts 5, 12, 14, and 16 – 18) of the Second Amended Master Complaint be dismissed with prejudice.

Dated:  February 26, 2024                                  Respectfully submitted,

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
 gdrake@kslaw.com
TaCara D. Harris, *pro hac vice*
 tharris@kslaw.com
David Mattern, *pro hac vice*
 dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
 andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
 amy.fiterman@faegredrinker.com
Faegre Drinker LLP

300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

*Attorneys for Defendants TikTok Inc., ByteDance*
*Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**COVINGTON & BURLING LLP**

*/s/ Phyllis A. Jones*
Mark W. Mosier, *pro hac vice*
 mmosier@cov.com
Paul W. Schmidt, *pro hac vice*
 pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
 pajones@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
 ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*
*Facebook, Inc.; Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook Payments, Inc.;*
*Facebook Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
 Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor

19

San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)
  Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
  Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
  Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*


**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

 */s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
Wilson Sonsini Goodrich & Rosati
  bwillen@wsgr.com
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
Wilson Sonsini Goodrich & Rosati
  lwhite@wsgr.com
Andrew Kramer (State Bar No. 321574)
  akramer@wsgr.com
Carmen Sobczak (State Bar No. 342569)
  csobczak@wsgr.com
One Market Plaza, Spear Tower, Suite 3300

20

San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou (State Bar No. 233587)
Wilson Sonsini Goodrich & Rosati
  cchiou@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
  mdonohue@wsgr.com
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,
Google LLC, and Alphabet Inc.*

DEFENDANTS' REPLY ISO JOINT MOTION TO DISMISS
PLAINTIFFS' NON-PRIORITY CLAIMS— CASE NO. 4:22-MD-03047-YGR

**ATTESTATION**

I, Geoffrey M. Drake, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:          February 26, 2024          By:    /s/ Geoffrey M. Drake
                                                        Geoffrey M. Drake