**Pages 1 - 95**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

```
IN RE:  SOCIAL MEDIA          )
ADOLESCENT ADDICTION/PERSONAL  )
INJURY PRODUCTS LIABILITY      )
LITIGATION,                    )
                               )  NO. 22-MD-03047-YGR (PHK)
                               )
_____)
```

San Francisco, California
Thursday, February 22, 2024

APPEARANCES:

For Plaintiffs:

ANDRUS ANDERSON LLP
155 Montgomery Street - Suite 900
San Francisco, California  94104
BY:  **JENNIE LEE ANDERSON**
     **ATTORNEY AT LAW**

SEEGER WEISS LLP
55 Challenger Road - 6th Floor
Ridgefield Park, New Jersey  07660
BY:  **CHRISTOPHER AYERS, ATTORNEY AT LAW**

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street - 29th Floor
San Francisco, California 94111
BY:  **LEXI JOY HAZAM, ATTORNEY AT LAW**
     **MICHAEL LEVIN-GESUNDHEIT**
     **ATTORNEY AT LAW**

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
250 Hudson Street - 8th Floor
New York, New York 10013
BY:  **KELLY KRISTINE McNABB, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Jennifer Coulthard, RMR, CRR, CRC
              Official Reporter, CSR No. 14457

```
1   APPEARANCES:   (CONTINUED)

2   For Plaintiffs:
                           MOTLEY RICE LLC
3                          28 Bridgeside Boulevard
                           Mt. Pleasant, South Carolina 29464
4                     BY:  ANNIE KOUBA, ATTORNEY AT LAW

5                          WEITZ & LUXENBERG PC
                           700 Broadway
6                          New York, New York 10003
                      BY:  JAMES J. BILSBORROW, ATTORNEY AT LAW
7                          (via Zoom)

8                          SIMMONS HANLY CONROY, LLC
                           One Court Street
9                          Alton, Illinois 62002
                      BY:  JAYNE CONROY, ATTORNEY AT LAW
10                         (via Zoom)

11
                           GIBBS LAW GROUP LLP
12                         1111 Broadway, Suite 2100
                           Oakland, California 94607
13                    BY:  ANDRE M. MURA, ATTORNEY AT LAW

14                         MORGAN & MORGAN
                           220 W. GARDEN STREET, 9TH FLOOR
15                         Pensacola, Florida 32502
                      BY:  EMILY CATHERINE JEFFCOTT
16                         ATTORNEY AT LAW

17                         LEVIN SEDRAN AND BERMAN LLP
                           510 Walnut Street, Suite 500
18                         Philadelphia, Pennsylvania 19106
                      BY:  MICHAEL M. WEINKOWITZ
19                         ATTORNEY AT LAW

20  For the Plaintiff City of Providence:
                           KESSLER TOPAZ MELTZER AND CHECK LLP
21                         280 King of Prussia Road
                           Radnor, Pennsylvania 19087
22                    BY:  MELISSA L. YEATES, ATTORNEY AT LAW

23


24       (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Plaintiff State of Colorado:
                     COLORADO DEPARTMENT OF LAW
 3                   1300 Broadway - 6th floor
                     Denver, Colorado 80203
 4              BY:  BIANCA MIYATA,
                     SENIOR ASSISTANT ATTORNEY GENERAL
 5
     For Plaintiff State of California:
 6                   CALIFORNIA DEPARTMENT OF JUSTICE
                     455 Golden Gate Avenue - 11th Floor
 7                   San Francisco, California 94102
                BY:  MEGAN O'NEILL
 8                   DEPUTY ATTORNEY GENERAL

 9                   CALIFORNIA DEPARTMENT OF JUSTICE
                     1515 Clay Street, Suite 2000
10                   Oakland, California 94612
                BY:  JOSHUA OLSZEWSKI-JUBELIRER
11                   ASSISTANT ATTORNEY GENERAL

12   For Plaintiff Commonwealth of Kentucky:
                     KENTUCKY OFFICE OF THE ATTORNEY GENERAL
13                   Office of Consumer Protection
                     1024 Capital Center Drive - Suite 200
14                   Frankfort, Kentucky 40601
                BY:  DANIEL KEISER
15                   ASSISTANT ATTORNEY GENERAL

16   For Plaintiff State of New Jersey:
                     NEW JERSEY OFFICE OF THE ATTORNEY
17                   GENERAL
                     124 Halsey Street
18                   P.O. Box 45029
                     Newark, New Jersey 07102
19              BY:  THOMAS HUYNH
                     MANDY WANG
20                   ASSISTANT ATTORNEYS GENERAL

21

22           (APPEARANCES CONTINUED ON FOLLOWING PAGE)

23

24

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant Meta:
                         COVINGTON & BURLING LLP
 3                       1999 Avenue of the Stars - Suite 3500
                         Los Angeles, California 90025
 4              BY:  ASHLEY M. SIMONSEN, ATTORNEY AT LAW

 5                       COVINGTON & BURLING LLP
                         620 Eighth Ave
 6                       New York, New York 10018
                BY:  GREGORY L. HALPERIN, ATTORNEY AT LAW
 7
                         COVINGTON & BURLING LLP
 8                       Sales Force Tower
                         415 Mission Street - Suite 5400
 9              BY:  ISAAC D. CHAPUT, ATTORNEY AT LAW

10   For Defendant TikTok:
                         KING & SPALDING LLP
11                       1180 Peachtree Street
                         Atlanta, Georgia 30309
12              BY:  GEOFFREY DRAKE, ATTORNEY AT LAW
                     TACARA HARRIS, ATTORNEY AT LAW
13
                         FAEGRE DRINKER BIDDLE & REATH LLP
14                       90 South 7th Street - Suite 2200
                         Minneapolis, Minnesota 55402
15              BY:  AMY R. FITERMAN, ATTORNEY AT LAW

16                       FAGRE DRINKER BIDDLE & REATH LLP
                         300 North Meridian Street, Suite 2500
17                       Indianapolis, Indiana  46204
                BY:  ANDREA PIERSON, ATTORNEY AT LAW
18                   PATRICK H. REILLY, ATTORNEY AT LAW

19   For Defendant YouTube:
                         WILLIAMS & CONNOLLY LLP
20                       680 Maine Avenue, SW
                         Washington, D.C.  20024
21              BY:  JOSEPH G. PETROSINELLI
                     ATTORNEY AT LAW
22

23

24        (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

**APPEARANCES**:  (CONTINUED)

For Defendant Snap:

                    MUNGER, TOLLES & OLSON LLP
                    560 Mission Street - 27th Floor
                    San Francisco, California  94105
              BY:   **JONATHAN H. BLAVIN, ATTORNEY AT LAW**

                    MUNGER, TOLLES & OLSON LLP
                    355 South Grand Avenue - 35th Floor
                    Los Angeles, California 90071
              BY:   **LAURA M. LOPEZ, ATTORNEY AT LAW**


For Defendant YouTube:

                    WILSON, SONSINI, GOODRICH & ROSATI
                    633 West Fifth Street - 15th Floor
                    Los Angeles, California 90071
              BY:   **MATTHEW DONOHUE, ATTORNEY AT LAW**

                    WILSON, SONSINI, GOODRICH & ROSATI
                    650 Page Mill Road
                    Palo Alto, California 94304
              BY:   **ANDREW KRAMER, ATTORNEY AT LAW**



                         --oOo--

```
 1   Thursday - February 22, 2024                    2:10 p.m.

 2                    P R O C E E D I N G S

 3                        ---o0o---

 4        THE CLERK:  Now calling 22-MD-3047-YGR, in Re: Social

 5   Media Adolescent Addiction Personal Injury Products Liability

 6   Litigation.

 7            Counsel, when speaking, please approach the podium and

 8   state your appearance for the record.

 9        THE COURT:  Good afternoon.

10        ALL:  Good afternoon.

11        THE COURT:  All right.  So I've received the parties'

12   joint status report as well as the parties' submission

13   regarding the privilege log protocol.  Since there's actually

14   fewer issues for me to resolve in the joint status report, I

15   thought I'd start there.

16            So really, you all, I should hope by now, have

17   received my ESI order.

18        ALL:  Yes, Your Honor.

19        THE COURT:  All right.  So questions just procedurally

20   on how to go forward from there, anyone?

21        MR. AYERS:  No question --

22        COURT REPORTER:  I need your name, please.

23        MR. AYERS:  Chris Ayers on behalf of plaintiffs.

24            Chris Ayers on behalf of plaintiffs.

25            No question, Your Honor.  We understood you.  We
```

1    received your order; it was very helpful.

2          Plaintiffs have reached out to defendant to schedule

3    meet and confers and hope to get that scheduled as soon as

4    possible.  Still waiting to hear back from defendants, but we

5    anticipate being able to schedule meet and confers this coming

6    week and hope to resolve all of the issues within days, not

7    weeks.

8          And because Your Honor gave us direction in ruling on

9    the vast majority of the disputes that do not require further

10   meet and confer, we have no doubt that the parties will be able

11   to get moving on all other issues, like disclosure of

12   custodians and search terms, for example, while we -- prior to

13   when we necessarily have the final entry of an ESI protocol.

14         **THE COURT:**  Great.

15         **MR. CHAPUT:**  Isaac Chaput on behalf of the Meta

16   defendants, Your Honor.

17         From our perspective there's no clarification

18   required.  We appreciated Your Honor's order.  We're working to

19   find times to confer with plaintiffs, including coordinating

20   with our vendors.

21         **THE COURT:**  Great.  Okay.  Well, then I look forward

22   to seeing the final stipulation and order to sign off on.

23         Okay.

24         **MR. AYERS:**  Thank you.

25         **THE COURT:**  So that's that.  We'll turn to the

PROCEEDINGS

 1   privilege log protocol issue secondly and then I'm not sure I

 2   saw a proposed deposition protocol.  Is there -- is that still

 3   in the works?

 4           MS. KOUBA:  Annie Kouba for the plaintiffs, Your

 5   Honor.

 6           Yes, Your Honor.  The parties stipulated to an

 7   extension of time to put the deposition protocol in front of

 8   Your Honor because we have been making good progress on that

 9   and have narrowed our areas of dispute to just a few

10   outstanding issues.  So the parties mutually agreed that an

11   extra week to try and resolve those issues and limit the scope

12   of what ultimately appears before Your Honor would be as narrow

13   as possible.  But we continue to meet and confer, we plan to

14   continue to meet and confer before that next seven days from

15   yesterday deadline or, I'm sorry, from Tuesday deadline, and I

16   think that the parties are hopeful to have a very narrow list

17   for you next Tuesday.

18           MS. FITERMAN:  Amy Fiterman on behalf of TikTok

19   defendants.

20           We agree with that representation.

21           THE COURT:  Okay.  Well, hopefully there will be no

22   issues for me to resolve and there will just be a protocol for

23   me to sign off on.  So what date should I expect that then?

24           MS. KOUBA:  That is Tuesday, Your Honor, which I

25   believe is the 27th.

 1              **THE COURT:**  Okay.  I look forward to seeing that on

 2      the 27th.

 3              And then the only other thing that sort of actually

 4      requires action on my part or at least approval is the request

 5      at the very end to change the time for the source code order

 6      that was in my schedule -- my discovery scheduling order.

 7              Who wants to speak to that?

 8              **MS. HAZAM:**  Good afternoon, Your Honor; Lexi Hazam for

 9      plaintiffs.

10              **MS. SIMONSEN:**  Good afternoon, Your Honor; Ashley

11      Simonsen for the Meta defendants from Covington and Burling.

12              **COURT REPORTER:**  I'm sorry, could you repeat your

13      name?

14              **MS. SIMONSEN:**  Ashley Simonsen, Covington and Burling,

15      for the Meta defendants.

16              **MS. HAZAM:**  Your Honor, the parties stated in the

17      status report, as you may have seen, that they would like more

18      time to address this issue with the benefit of early discovery

19      on their claims and defenses and have agreed -- with the

20      Court's approval of course -- to vacate the March 1st and March

21      15th, 2024, deadlines and, instead, to advise the Court, within

22      60 days, if they reach an impasse on the need for or

23      discoverability of source code.

24              **THE COURT:**  Being mindful that there's a 10-month

25      discovery deadline here we're operating under, 60 days feels

1    like a little long to me for you to come to me and say you're

2    at an impasse over an order that would control source code

3    production, so here's what I'm going to do:  It's going to be

4    on the agenda for the next EMC.  You've got a month -- all

5    right? -- and I need you to tell me at that point whether, you

6    know, if you've reached an impasse, you've reached an impasse.

7    I mean, I don't know what an extra 30 days is going to do, so

8    if you've reached an impasse by then, let's tee it up for then,

9    okay?  And if you're telling me that you're still on track and

10   you're still making progress and you don't think it's going to

11   need court intervention, great, you can tell me that as well

12   I'll probably order you to do it quickly and finish it up,

13   okay?

14            **MS. HAZAM:**  Understood, Your Honor.

15            **THE COURT:**  All right.

16            **MS. SIMONSEN:**  Thank you, Your Honor.

17            **THE COURT:**  So those dates are vacated and replaced by

18   the next DMC date, subject to what I just said.

19            Okay.  So as far as I can tell in terms of actual

20   disputes and things for me to act on in the joint status

21   report, that was it.  Everything else were reports on brewing

22   disputes and maybe implied or vague or soft requests for some

23   guidance from me, but I didn't see any actual requests for

24   rulings, so I'm not going to go as long as last week's hearing,

25   so of the column -- because they're all under, you know,

**PROCEEDINGS**

 1  actions that are not ripe for dispute or don't need court

 2  action at this time.  Let's take your most important one from

 3  each side.  Which one do you want guidance on or do you just

 4  want to feel me out on or raise or have some venting on?

 5          **MS. HAZAM:**  Thank you, Your Honor.

 6          And I realize now, looking at the status report, that

 7  we did, in fact, put the discovery limits issue under issues

 8  that do not currently require Court action.  That may have been

 9  an error, because I think the parties have been actively

10  meeting and conferring and trying to clarify where their

11  disputes lie and lay them out for the Court in this submission.

12          **THE COURT:**  Okay.

13          **MS. HAZAM:**  So from plaintiff's perspective at least,

14  we did anticipate and would appreciate guidance from the Court,

15  even decisions from the Court as to those issues because I

16  think they shape discovery going forward.

17          **THE COURT:**  Okay.  All of them?  I mean, do you

18  really -- I mean, there's like 8,700 issues.

19          **MS. SIMONSEN:**  Your Honor, just speaking for the

20  defendants -- Ashley Simonsen -- we have actually reached

21  agreement on several of the outstanding disputes, which I'd be

22  glad to provide a report to Your Honor on.

23          I think from the defendant's perspective, we would

24  also appreciate resolution of the parties' outstanding disputes

25  today and --

**PROCEEDINGS**

1          **THE COURT:** All right.

2          **MS. SIMONSEN:** -- are prepared to present argument on

3  those issues.

4          **THE COURT:** Okay. Have you prepared a stipulation on

5  the areas you've agreed on?

6          **MS. SIMONSEN:** We have not, Your Honor.

7          Again, Ashley Simonsen for the defendants.

8          That's, in part, because some of these agreements were

9  reached within the last 24 hours or so and --

10         **THE COURT:** Okay. To the extent the parties have or

11 do reach agreement on discovery limits, submit a stipulation

12 and proposed order and let's just -- you don't have to report

13 it to me on the record --

14         **MS. SIMONSEN:** Okay.

15         **THE COURT:** -- and take that time. Just get that in

16 front of me as soon as possible.

17         Okay. Given we only have so much time on the record,

18 it's partly to help manage discovery for you all, so do you

19 want to talk about this stuff first, or do you want to talk

20 about privilege log protocol first? Which is more important

21 for you?

22         **MS. HAZAM:** Your Honor, I think you have the people

23 before you who would talk about the discovery limits so if

24 convenient, we can do that.

25         **THE COURT:** All right.

PROCEEDINGS

1          **MS. HAZAM:**  And we can try to be as efficient as

2    possible, understanding that the Court may have had a different

3    understanding because of the way we entitled things in the

4    status report --

5          **THE COURT:**  Okay.

6          **MS. HAZAM:**  -- for which we offer our apologies.

7          **THE COURT:**  Okay.  So in the discovery limits, let's

8    talk about -- what's the first one, which is depo limits I

9    think, right?

10          **MS. HAZAM:**  Yes, Your Honor.

11          **THE COURT:**  All right.  So -- and I've seen a lot of

12    what I call "footnote sniping" back and forth about positions

13    changing and all of that.  I don't really care, all right?

14    It's not going to sway me either way.

15          Boiling it down, it feels like the parties have -- are

16    you still debating whether it should be deposition hours limits

17    versus deposition days limits, or are you over at least that

18    conceptual dispute?

19          **MS. HAZAM:**  So, Your Honor, we have stated our

20    positions somewhat differently.

21          **THE COURT:**  Yeah.

22          **MS. HAZAM:**  So plaintiffs have stated them as a number

23    of depos per defendant and then an hour limit.  We can do the

24    math, obviously, to tell you what that would add up to, the

25    number of hours, but we do have both components; whereas -- and

**PROCEEDINGS**

```
 1   I don't want to speak for Ms. Simonsen, but I believe the
 2   defendant's position at this point is a number of hours.
 3        MS. SIMONSEN:  Yes, Your Honor that's right.
 4        Our position is that it's a number of hours.  Easier
 5   to manage, encourages efficient depositions.  That's not to say
 6   that we wouldn't be willing to try to work with plaintiffs, I
 7   think, on an overall number.  I think the issue is that we have
 8   so far apart on hours and in terms of general approach to how
 9   this is going to realistically play out over the next ten
10   months of discovery that it would be helpful maybe to talk in
11   terms of hours preliminarily.
12        THE COURT:  All right.  So just so we're all speaking
13   in terms of oranges and oranges --
14        MS. HAZAM:  Sure.
15        THE COURT:  -- let's talk in terms of number of
16   hours -- all right? -- when you're talking about limits.  So
17   how many hours of fact deposition witnesses do the plaintiffs
18   want?
19        MS. HAZAM:  So plaintiffs are seeking 420 hours of
20   fact witness depositions per defendant for all of the non-Meta
21   defendants.  That includes the hours for 30(b)(6) depositions.
22   And I do not want to speak for the State AGs.  They will speak
23   for what they are seeking in terms of additional hours with
24   regards to Defendant Meta.
25        MS. O'NEILL:  Thank you.  Meghan O'Neill for the State
```

**PROCEEDINGS**

1   AGs.

2          In addition to the limits Ms. Hazam has -- in addition

3   to the limits Ms. Hazam has just said, we are also seeking 144

4   hours of depositions on Meta.

5          **THE COURT:**  Just so I'm clear, so this is -- your

6   proposal is a separate number of hours just for the State

7   plaintiffs.  Would counsel for any other plaintiff groups be

8   even allowed to ask questions at those depositions or are they

9   just observing?

10         **MS. HAZAM:**  Your Honor, this proposal is made on

11  behalf of all of the plaintiffs before this Court and the JCCP

12  plaintiffs --

13         **THE COURT:**  Okay.

14         **MS. HAZAM:**  -- so the personal injury plaintiffs, the

15  school district plaintiffs, the JCCP personal injury and school

16  district plaintiffs and the State AG plaintiffs all fit within

17  these limits, which are just slightly different for Meta

18  because the State AGs have unique claims against Meta.

19         **THE COURT:**  Okay.  So the 420 hours, when you said it

20  doesn't include Meta, it doesn't include Meta at all?

21         **MS. HAZAM:**  No.  I'm sorry, Your Honor.  420 would be

22  the baseline for the number of hours for Meta.  And the State

23  AGs are requesting an additional 12 depositions, which would be

24  at the 12 hours we've proposed, 144 hours.  So I believe that

25  that is 564 hours total as to Meta versus 420 for each of the

**PROCEEDINGS**

1    other three defendants.

2         **THE COURT:**  Okay.  And again, for those extra State AG

3    hours of depositions of Meta, that's not an opportunity for the

4    other plaintiffs to ask more questions of Meta.  I just want to

5    make sure.  You've got your own hours for Meta, correct?

6         **MS. HAZAM:**  We do.  I would say this, Your Honor,

7    that, first of all, the understanding -- and I believe it's

8    even stated in the proposed depo protocol that the parties are

9    working on, which isn't before you yet, but to avoid any

10   duplicative questioning or duplicative discovery generally.

11   That said, I don't believe that -- our understanding is -- that

12   there would be a bar on other plaintiffs asking questions at

13   those depositions within the time limits if those depositions

14   touch on new material, which is what they should be about, that

15   is also relevant to the personal injury or school district

16   plaintiffs.  We wouldn't be prohibited from questioning.

17        **THE COURT:**  But in the first instance for those 144

18   hours it would be the State plaintiffs taking lead?

19        **MS. HAZAM:**  Yes, Your Honor.

20        **THE COURT:**  Okay.  So I've heard plaintiff's proposed

21   number of hours.  What are the defendants proposed number of

22   hours?

23        **MS. SIMONSEN:**  Thank you, Your Honor; Ashley Simonsen

24   for the Meta defendants and speaking on behalf of the

25   defendants.

**PROCEEDINGS**

1          The TikTok, Snap and YouTube defendants propose that

2    the plaintiffs as a group, all three sets of plaintiffs, as

3    well as the JCCP plaintiffs, may take up to a cumulative total

4    of 100 hours of depositions of each defendant group -- so Meta,

5    TikTok, YouTube, Snap being the four defendant groups -- and

6    that would include 30(b)(6) depositions.

7          The Meta defendants have agreed to a higher cumulative

8    total limit for all defendants -- this is not specific to

9    Meta -- and that would be 140 hours of depositions of each

10   defendant group.

11          We have also proposed to the State AGs as a compromise

12   offer that we would afford them an additional 25 hours or 5

13   depositions, whichever limit is reached first, of the Meta

14   defendants.  That would equate to, you know -- the defendants'

15   proposal equates to roughly 14 depositions or, under Meta's

16   proposal, 20 depositions per defendant group with the State --

17          **THE COURT:**  Let me stop you there a second, I'm

18   confused.

19          **MS. SIMONSEN:**  Yep.

20          **THE COURT:**  Hundred hours for depositions of each

21   defendant group including Meta or not including Meta?

22          **MS. SIMONSEN:**  Including Meta.

23          **THE COURT:**  Okay.

24          **MS. SIMONSEN:**  However, the Meta defendant's proposal

25   is that each defendant group be subject to 140 hours of

1   depositions.  We're simply prepared to go higher in order to

2   reach -- we were prepared to go higher to try to reach an

3   agreement with plaintiffs, but I want to be clear that the

4   Snap, TikTok and YouTube defendants have -- at this point,

5   their position is that each defendant group should be subject

6   to only a hundred hours.

7           THE COURT:  Oh, I see.  Okay.

8           MS. SIMONSEN:  And Your Honor, I'm happy -- I know

9   that we were not able in our DMC statement to provide a

10  response to the plaintiff's position statement, just given the

11  hour at which we received it.  I would like to direct Your

12  Honor to a couple of MDLs where comparable types of discovery

13  limits have been entered.  As an example in the Takata air bags

14  product liability MDL, plaintiffs were permitted 10 fact

15  depositions per defendant group limited to 7 hours each plus 28

16  hours of 30(b)(6) deposition testimony.

17          In the *Lithium Ion Batteries Antitrust MDL* before

18  Judge Gonzalez Rogers, plaintiffs were permitted to take 12

19  fact depositions per defendant group limited to 7 hours each.

20          I wanted to make sure that we provided that authority

21  to Your Honor simply because I know plaintiffs had presented

22  some authority to support their position.

23          And I would also just point out that the plaintiffs'

24  proposal, 35 depositions per defendant or 420 hours per

25  defendant plus an additional 144 hours of depositions on Meta

1    equates to 1,824 hours of depositions of the four defendants,

2    which is 280 days of depositions, assuming plaintiff's proposed

3    12-hour limit would be split over two days.  And just to put

4    that in perspective, there are only about 60 business days

5    between the September 20th substantial completion deadline and

6    the December 20th fact discovery cutoff, which means that we'd

7    need to be more than quadruple tracking depositions every

8    single business day from September 20th through the close of

9    fact discovery.  It would mean, to put it differently, that

10   every defendant would need to put up a witness every single day

11   of that deposition period.  Even if plaintiffs start taking

12   depositions tomorrow, that would mean taking more than one

13   deposition every day between tomorrow and the fact discovery

14   cutoff, and that is not taking into account the depositions

15   that the defendants will need to take of the personal injury

16   school district and State plaintiffs.  So I just want to point

17   out and put that in context, Your Honor.

18           We really worked hard to identify a number of hours

19   that was reasonable in light of the plaintiff's position that

20   discovery should be complete within the ten-month timeframe

21   that's been entered.  And with that in mind, and keeping in

22   mind the amount of discovery that we, of course, are entitled

23   to take of the plaintiffs, simply just would submit to Your

24   Honor that the plaintiff's proposal is really wildly

25   unreasonable in light of the schedule, and it's for that reason

1  that we were not able to reach, you know, any kind of

2  compromise or agreement on that particular discovery limit;

3  whereas we were on others.

4          **MS. HAZAM:**  Your Honor, if I may respond.

5          **THE COURT:**  Go ahead.

6          **MS. HAZAM:**  Thank you.

7          **THE COURT:**  Briefly.

8          **MS. HAZAM:**  Sure.  The number of depositions proposed

9  by the plaintiffs here is, if anything, conservative for MDLs

10 like this.  And you can see the citations we provided in the

11 statement.  As an example, a product liability MDL, Philips

12 CPAP, one very recent, had 50 depositions of each defendant

13 group and 70 hours 30(b)(6) depositions on top of those 50

14 depositions.  This is an MDL against four of the biggest

15 companies in the world.

16         I would further note that defendants' excuse regarding

17 the short schedule here is not credible given that defendants

18 themselves are seeking nearly 4,500 hours of plaintiff

19 depositions in the same amount of time.  That amounts to over

20 600 depositions at 7 hours each.  That is two and a half times

21 the number that plaintiffs are seeking from defendants.

22         It also disregards the fact that the Court did not

23 suggest, in setting the schedule, that the parties would be

24 foregoing sufficient discovery and, in fact, ordered the

25 plaintiffs to answer the same written discovery she had

**PROCEEDINGS**

 1    previously ordered on a significantly shortened timeframe.

 2            If each minor plaintiff can fill out 43-page PFSs with

 3    over a hundred questions by April 1st and if plaintiffs can

 4    conduct 170 depositions of plaintiff's witnesses collectively

 5    by the discovery cutoff -- which is, in fact, what we are

 6    proposing -- then defendants can certainly do the same number

 7    of depositions total because plaintiffs are seeking 152,

 8    approximately; whereas, we are offering over 170.  But, in any

 9    event, the total hours are actually very disparate between what

10    we're seeking as plaintiffs and what defendants are seeking.

11    Defendants are seeking far more.  So the rationale of there's

12    not enough time is not well taken.

13            MS. O'NEILL:  Your Honor, if I may add --

14            MS. SIMONSEN:  Your Honor, those numbers are --

15            MS. O'NEILL:  If I may just add --

16            THE COURT:  Sure.

17            MS. O'NEILL:  -- a bit on the additional request from

18    the AGs for depositions on Meta --

19            THE CLERK:  What's your name?

20            MS. O'NEILL:  Excuse me.  Meghan O'Neill for the State

21    AGs.

22            We think that these additional depositions are

23    warranted for a few reasons, including the specific nature of

24    the AG's action, the case's complexity, and Meta's role in this

25    case.

1          The AGs have brought a separate case that is of a

2    different character than the case brought -- cases brought by

3    the plaintiffs, the private plaintiffs, and that has been

4    recognized at multiple instances in this case.

5          That's reflected in both the remedies that the AGs

6    seek and the claims that we've brought.

7          The case involves multiple categories of plaintiffs

8    pursuing a real complex assortment of claims against an

9    overlapping but not identical set of defendants.  And although

10   the AGs are committed to conducting discovery in an efficient

11   way and cooperating with the other plaintiffs, it's entirely

12   reasonable and realistic to think that additional deposition

13   time is needed for the defendants that the AGs have sued, Meta.

14         Even with respect to claims that are similar to other

15   plaintiffs, the AGs may want to pursue their claims in

16   different ways, seek different avenues of proof.  The other

17   plaintiffs' claims involve sometimes different elements than

18   the claims that the AGs have brought, involve different laws

19   and, again, different defendants.  So for all these reasons we

20   think that additional time for depositions of Meta are

21   warranted.

22         **THE COURT:**  Okay.

23         **MS. SIMONSEN:**  May I respond briefly, Your Honor?

24         **THE COURT:**  Really briefly.

25         **MS. SIMONSEN:**  Ashley Simonsen.

1    The State plaintiffs have really failed to explain why

2    they need an additional 144 hours of depositions of Meta.

3    In conferrals they pointed out that they've asserted a

4    COPPA claim.

5    The personal injury plaintiffs have also asserted a

6    negligence per se claim that's premised on alleged violations

7    of COPPA.  They've pointed out that they're seeking civil

8    penalties, which may require them to seek evidence of Meta's

9    intent and knowledge.

10    The personal injury and school district plaintiffs are

11    seeking punitive damages that will presumably require very

12    similar discovery.  They've pointed out that they're seeking

13    disgorgement.

14    Again, the personal injury and school district

15    plaintiffs are -- really the thrust of their case is on an

16    alleged prioritization of profits over safety, so discovery

17    into profits, which the State AGs identified as the key to the

18    disgorgement calculation is something that the private

19    plaintiffs will also be seeking.

20    And their final point was that they're seeking

21    injunctive relief, they said, of a different focus; but the

22    personal injury and school district plaintiffs are also seeking

23    injunctive relief and so, you know, I did try to probe the

24    State Attorneys' General on really what more additional

25    discovery would they need, and these were the only points I

1  heard, and we simply don't see how 144 additional hours is

2  needed.  We are willing to give them 25 additional hours.

3          And one just very brief point, Your Honor, on the

4  discovery of the plaintiffs that the defendants are proposal,

5  the parties are actually not that far apart when it comes to

6  the amount of depositions that they are proposing that the

7  defendants get to take of each bellwether plaintiff.

8          The defendants, just to put it in perspective, Your

9  Honor, are proposing that we get 40 hours total of depositions

10  of each of the school district and the personal injury

11  plaintiffs on fact depositions.  That's compared to the hundred

12  hours or 140 hours, depending on the defendant, that we are

13  proposing that the plaintiffs collectively get to take of each

14  defendant.

15          **MS. O'NEILL:**  Your Honor, may I briefly respond?  Very

16  briefly --

17          **THE COURT:**  Okay.

18          **MS. O'NEILL:**  -- I promise.

19          Meghan O'Neill for the State AGs.

20          I would just like to very briefly respond to

21  Ms. Simonsen's contention that the AG's cases are not

22  different.

23          I would just say that the AG's COPPA claim forms a

24  very significant part of the AG's case in a way that's very

25  different from the individual plaintiffs.

1        As law enforcement, the AGs are significantly more

2   focused on injunctive relief.  We do seek disgorgement and

3   civil penalties, which do have distinctions from the types of

4   claims and remedies Ms. Simonsen was just discussing, and we

5   think all of those reasons warrant additional discovery.

6        **THE COURT:**  All right.

7        **MS. HAZAM:**  Your Honor, I'm sorry.  I just wanted to

8   very briefly note that the number proposed by defendants of a

9   hundred hours per defendant with the exception of Meta, not

10  only is it lower than their prior proposal, it's lower than

11  what would be permitted under the federal rules.

12       **THE COURT:**  I read that point.

13       **MS. HAZAM:**  Thank you.

14       **THE COURT:**  So these are -- let me ask you this:  In

15  the last MDL you worked on did you take all the depositions up

16  to the limit?

17       **MS. HAZAM:**  Most of the MDLs I've worked on did not

18  have limits.  I can give you some numbers.

19       **THE COURT:**  I'm asking you.  The last one you worked

20  on --

21       **MS. HAZAM:**  Sure.

22       **THE COURT:**  -- that had limits, did you actually

23  take -- did you work -- did you actually fill up and take them

24  all the way up to the limit?

25       **MS. HAZAM:**  I honestly don't think I've worked on an

1    MDL with limits, Your Honor.  I may have and I'm not recalling

2    it.  The two that come to mind immediately did not have limits

3    and one of them I believe we took -- and these were all --

4    these were both, I should say, single group of defendants with

5    single product, essentially.  I think in one of them it was

6    something like 60 odd depositions and the other was over a

7    hundred.

8         THE COURT:  Okay.  Let's do it this way:  I'm going to

9    give the plaintiffs 240 hours of deposition time of the non --

10   per defendant of the non-Meta defendants, including 30(b)(6)s.

11   And I'm going to give the State AGs 48 hours of additional

12   deposition on top of that.  These are limits.  If you hit the

13   limits and you come to me and you say, Judge, I need you to --

14   I need more, you can file a motion asking for more time if you

15   can't reach a stipulation then you raise it that way, okay?

16   But I'm hopeful that, with this many hours, you'll be able to

17   accomplish what you need to accomplish, given the time that we

18   have, but I'm not unreasonable.  If you come to me and say they

19   dumped 10 million documents on us last month and we need

20   another deposition or two or three or whatever, if you can show

21   good cause, I'm willing to listen to it.  Okay?

22        MS. HAZAM:  Thank you, Your Honor.

23        A related issue is the limit on the length of each

24   deposition.  When we were last before Your Honor, we were, I

25   believe, at 14 hours per deposition for all plaintiffs

**PROCEEDINGS**

1  collectively, all of those groups I referred to earlier with

2  both jurisdictions.   The defendants were at 10.   We moved, in

3  the interim, to kind of meet in the middle at 12.   Obviously

4  with the limit that you, Your Honor has just instructed, we're

5  not likely to use 12 with any frequency, but we think there

6  will be variability with witnesses, so we would like the

7  flexibility with all of these plaintiffs groups to go up to 12.

8        **THE COURT:**  Sure.

9        **MS. O'NEILL:**  And Your Honor, again, Meghan O'Neill

10 for the State AGs.   Just one particular point.   We would

11 appreciate a provision in any order that you issue that any

12 defendants that are later named by the State AGs must meet and

13 confer with the State AGs regarding any additional discovery

14 that is needed of them.

15       **THE COURT:**  I think that's probably inherent in

16 discovery management, but yes.   I don't know that you need a

17 written order to that effect, but if you -- time is short.   If

18 you are planning on naming new defendants, then I'm sure their

19 counsel will appear and they'll have to come here in front of

20 me and we'll talk about it at that point.

21       **MS. O'NEILL:**  Thank you, Your Honor.   Understood.

22       **THE COURT:**  Okay.

23       **MS. SIMONSEN:**  Your Honor, if I may, just one

24 request -- not argument -- on the number of hours per

25 deposition, the 12-hour limit.   We would just ask that Your

1  Honor advise the parties to meet and confer in advance of

2  depositions about approximately how long they expect a

3  particular deposition to be.

4        The plaintiffs had asked that defendants do that with

5  respect to the depositions of the bellwether plaintiffs, which

6  we would be glad to do.  We simply would appreciate the same

7  courtesy from the plaintiffs.

8        **THE COURT:**  I saw Ms. Hazam nodding.

9        **MS. HAZAM:**  No objection.

10       **THE COURT:**  Parties have already agreed to that, so

11  pursuant to the agreement, so ordered.

12       **MS. SIMONSEN:**  Thank you, Your Honor.

13       **THE COURT:**  Okay.  So are we done with depo limits?

14       **MS. HAZAM:**  Well, there are -- there are also limits

15  on the bellwether plaintiffs --

16       **THE COURT:**  I knew you were going to get to that.

17       **MS. HAZAM:**  -- so going the other direction.

18       **THE COURT:**  All right.

19       **MS. HAZAM:**  There are also other issues, so I'm not

20  sure where Your Honor would like to go first.

21       **THE COURT:**  Let's take them in order.  We can go in

22  order of the statement or in order of priority, so it's up to

23  you all.

24       **MS. SIMONSEN:**  Your Honor, it makes sense just to

25  briefly touch on the number of depositions that the Meta

**PROCEEDINGS**

1    defendants will get of the State plaintiffs.

2          **THE COURT:**  Okay.

3          **MS. SIMONSEN:**  Our position is that the Meta

4    defendants should get the same number of hours of depositions

5    of each State plaintiff that the plaintiffs as a whole are

6    getting of each defendant.  And with Your Honor's ruling that

7    that be 140 -- excuse me -- 240 hours, we would submit that the

8    same should apply in reverse.

9          **THE COURT:**  So your proposal or request is that Meta

10   be able to take 240 hours' worth of depositions of each State

11   plaintiff?

12         **MS. SIMONSEN:**  That's correct, Your Honor; again, not

13   necessarily anticipating that those will all be used.

14         Our proposal coming into this conference -- before

15   Your Honor offered this helpful guidance -- was 140 hours, and

16   I think we would be comfortable sticking to that position if

17   it's Your Honor's view that the number should be lower than

18   what the plaintiffs are getting of each defendant, but there

19   will be significant discovery that is needed of the State

20   plaintiffs.

21         I do want to flag that there is an outstanding

22   dispute, as Your Honor is aware, with respect to the discovery

23   that we make take of State agencies as distinct from the State

24   Attorneys' General.  And my offices and my colleague, Greg

25   Halperin is prepared to address that today.  It may make sense,

PROCEEDINGS

1    to short circuit things, to wait until that dispute is resolved

2    because I think the State -- our position is that those

3    deposition limits that I just proposed would apply to

4    depositions not of the State Attorneys' General Offices

5    themselves but, rather, of those offices and all of the State

6    agencies from which we would be seeking discovery as well.

7           So if it would be helpful to Your Honor, we could come

8    back to you after that dispute about discovery on State

9    agencies is resolved.

10          THE COURT:  Okay.  Unless you want to -- do you want

11   to address that issue right now?

12          MS. SIMONSEN:  Certainly, Your Honor.

13          MS. O'NEILL:  Your Honor, we are prepared as well.

14          THE COURT:  Okay.  And don't repeat anything in the

15   written statements because I've read it all.

16          MR. HALPERIN:  Certainly, Your Honor.  Greg Halperin

17   for the Meta defendants.

18          With the exception of only a handful of plaintiffs --

19   I think there are three -- the named plaintiffs in the MDL

20   complaint are the States themselves, not the AG's Offices.  So

21   taking as an example the State's co-lead counsel, they've

22   signed the complaint on behalf of the State Attorneys' General,

23   they've filed appearances on behalf of the State Attorneys

24   General and the named plaintiffs in the caption are the State

25   Attorneys General.

1          The attorneys general are participating in this action

2     not as parties themselves but as chief law enforcement officers

3     for their respective states.  That's plain not only from the

4     caption and from the signature box and from the appearances but

5     from the relief they are seeking in this action.

6          The relief they are seeking is civil penalties, which

7     under the laws of the respective states, in some or all

8     instances, revert to the State's general funds, not to be

9     adjudicated, not to be doled out by the Attorneys' General but

10    by the state legislatures.

11         In those circumstances, we believe it's clear that

12    while the States may subdivide themselves however they may like

13    into agencies, the States are a singular entity and the State

14    agencies are subject to party discovery.

15         We think the case law supports that, we've previewed

16    for Your Honor a variety of cases holding that, including

17    within the Ninth Circuit in our DMC statement we cited Your

18    Honor to *Washington versus The GEO Group* from the Western

19    District of Washington as well as a variety of other cases; I

20    won't repeat those for Your Honor.  But we think it's clear

21    that the State Attorneys' General are suing on behalf of the

22    States, the States are the plaintiffs and we're entitled to

23    discovery from the States as plaintiffs.

24         **MR. OLSZEWSKI-JUBELIRER:**  Good afternoon, Your Honor;

25    Josh Olszewski-Jubelirer for The People for the State of

PROCEEDINGS

1    California.

2            We understood this Court's second discovery management

3    order to astutely recognize that State agencies are separate

4    from the AG plaintiffs who are prosecuting this case and, by

5    definition -- by definition are third parties.  And as the

6    Court recognized, should Meta attempt to depose such agencies,

7    other attorneys from those agencies or from -- in some cases

8    from the State AG's Offices -- might represent them, and those

9    agencies would have their own objections to discovery.

10           Two federal cases that we cited in our position

11   statement squarely hold in line with the Court's guidance in

12   the second discovery management order that when a State

13   Attorney General brings an enforcement action to protect State

14   residents, party discovery is limited to the Attorney General's

15   Office.

16           And this really goes to the key issues here of

17   federalism and respect for the authority of state constitutions

18   and state legislatures.  Those distinctions between agencies

19   should not be disregarded and -- in line with those cases --

20   may not be disregarded for the purposes of discovery.

21           And the law -- this is particularly true in the vast

22   majority of states that have a divided executive with the

23   Attorney General separately elected from the governor; the

24   governor controls most State agencies, the Attorney General

25   does not.

PROCEEDINGS

1          In California, the law is particularly clear on this

2   point.  The case we cited, *Lockyer*, squarely holds, "When the

3   Attorney General brings a consumer protection enforcement

4   action on behalf of The People of the State of California, the

5   defendant may not obtain party discovery from state agencies."

6          We do not have a client agency in this case.  Our

7   client is the body politic.  This is a law enforcement action

8   and party discovery is limited to the prosecution team, the

9   investigative agency, which, in our case, is the Attorney

10  General's Office.  There are a variety of reasons for this.

11  Agencies can conduct their own investigations, they are

12  responsible for maintaining their own records.  Their interests

13  are often in conflict and they can even sue each other.

14         It would be unduly burdensome on -- as Lockyer held if

15  any time that people bringing an enforcement action that we are

16  required to search for documents from any and all State

17  agencies that the propounding party may request.

18         If Meta wants to serve subpoenas directly on the State

19  agencies, those agencies are best able to protect their

20  interests and decide how to respond, raise any objections that

21  they might have.  There's no burden on Meta to serve subpoenas

22  directly on those State agencies.

23         I also would like to dispute, as I think Mr. Halperin

24  recognized, with respect to where the money from civil

25  penalties goes, that is not true across all states that it goes

**PROCEEDINGS**

1    to the State's general funds.  In some cases it goes -- it may

2    go directly to the -- first of all, this is the first we've

3    heard of this, so I haven't done a full survey of our State's

4    coalition, but in some cases it may go to custodial funds

5    controlled by the AGs directly.

6         **THE COURT:**  Okay.  Have you provided a list to the

7    State plaintiffs as to which agencies from each state you would

8    even plan to take discovery from?

9         **MR. HALPERIN:**  We have not yet, Your Honor, but we are

10   happy to do so.

11        **THE COURT:**  Give them that list within a week, okay?

12        A week after that, I want the State AGs, the State

13   plaintiffs to tell the defendants whether the State AG's office

14   is going to represent or not any one or none of those agencies

15   in their particular state for purposes of this litigation.

16        If you're not planning on entering an appearance and

17   defending a particular agency, then they are a third-party,

18   they're going to have their own counsel -- all right? -- but if

19   you are -- and as a matter of practicality then certainly there

20   are unique instances probably where there are going to be some

21   agencies that are going to be represented by a particular State

22   AG's Office in this litigation.  And if that's the case -- as a

23   matter of practicality; I'm not get into the case law of

24   whether they're, quote, a party or not -- just as a matter of

25   practicality I'm probably going to order them to be considered

**PROCEEDINGS**

1  and treated as if they were subject to party discovery since

2  the State AG is here as well already.

3          Do you understand my ruling there?

4          **MR. OLSZEWSKI-JUBELIRER:**  I understand the ruling,

5  Your Honor.  If I may speak to that point briefly.

6          **THE COURT:**  Sure.

7          **MR. OLSZEWSKI-JUBELIRER:**  The case law takes this

8  point on that Meta has made directly that if the other

9  attorneys from the Attorney General's Office represent State

10  agencies then they are, by definition, somehow parties.  And

11  the case law that we cite takes it on directly.  *American*

12  *Express*, for example, says that is just not true as a matter of

13  how party discovery works.

14          If we -- if other attorneys from the State -- from the

15  Department of Justice in California represent a state agency,

16  they do so in a attorney-client relationship, we would note

17  serve -- we would not attempt to take party discovery of other

18  clients represented by Covington Burling that are not Meta

19  defendants here.  Just because a client is -- just because a

20  client was represented by a law firm --

21          **THE COURT:**  Hold on.  If there were a third-party out

22  there that is represented by a private counsel across the

23  table, you would at least ask them if they'd accept the

24  subpoena.  It's not unusual for them sometimes to agree to

25  accept the subpoena on behalf of a third-party.

1        **MR. OLSZEWSKI-JUBELIRER:**  We -- you're right, Your

2    Honor.  I'm not talking about whether Covington would accept a

3    subpoena or whether other attorneys from the Attorney General's

4    Office would accept subpoenas on behalf of state agencies.

5        The difference, in terms of party discovery, is

6    significant.  There are special protections, as Your Honor

7    knows, under Rule 45 subpoenas.  The types of discovery that

8    they can take of third parties are different, and I guess I'll

9    live it at that, Your Honor.

10       **THE COURT:**  Let's take this a step at a time.

11       You give the State plaintiffs your list of agencies

12   across the board that you're planning on taking discovery from,

13   and you give them a list of the agencies that each individual

14   State AG's Office is planning or not planning to represent in

15   each of those instances and then if you can't agree at that

16   point whether you'll accept discovery -- well, let's see the --

17   why don't you submit the list to me at the end of the day and

18   we'll see how many are left to talk about at that point, okay?

19   And we could -- if you can't reach agreement on -- for those

20   agencies who are going to be represented by a particular State

21   AG's Office to be treated as party discovery, put it in the

22   next month's DMC and I'll make a definitive ruling so I'll know

23   how many agencies we're actually talking about at that point.

24   It could be one, it could be 20, a hundred I don't know.  So we

25   need to know better what the scope of this dispute is.

PROCEEDINGS

1          **MR. HALPERIN:**  Your Honor, if I could just ask that we

2   submit that well in advance of the DMC.  Just given the short

3   discovery time period, I'm hesitant to lose a month of not

4   knowing whether these agencies are or are not parties.  So I

5   think what Your Honor said makes perfect sense, one week and

6   one week and then submit to Your Honor right away rather than

7   waiting until the next DMC statement.

8          **THE COURT:**  You're free to do that if you really want

9   to.

10          Of course, remind me, nothing's stopping you from

11   serving subpoenas today.  There's nothing stopping you from

12   serving subpoenas for the last month, right?

13          **MR. HALPERIN:**  Yes, Your Honor.

14          **THE COURT:**  So, you know, I can't really -- I can't

15   really expect you to be making arguments that somehow you're

16   going to need extra dispensation later because you didn't, you

17   know, take advantage of the time to take discovery now, do you

18   understand?

19          **MR. HALPERIN:**  Understood, Your Honor.

20          **THE COURT:**  All right.  And if you want to flesh out

21   who is actually representing the agencies, you could have done

22   that on your own to a month or so ago or more -- all right? --

23   so -- but I'm going to force you to do it now, okay?

24          **MR. HALPERIN:**  Yes, Your Honor.

25          **THE COURT:**  All right.

 1          MR. OLSZEWSKI-JUBELIRER:  Thank you, Your Honor.

 2          THE COURT:  So does that resolve the issue now?

 3          MS. SIMONSEN:  I think it resolves it for now and we

 4    can come back to Your Honor if we have a remaining dispute.

 5          THE COURT:  Okay.

 6          MS. SIMONSEN:  And I think that leaves deposition

 7    limits for the bellwether plaintiffs --

 8          THE COURT:  Okay.

 9          MS. SIMONSEN:  -- as well as written discovery on the

10    bellwether plaintiffs.

11          So you know, I just -- I would like to start -- and,

12    again, this is Ashley Simonsen -- just to note that in setting

13    the discovery schedule, Your Honor did ask plaintiffs how much

14    time they would need to develop their evidence.  And that's

15    certainly a reasonable question to ask in setting a non-case

16    specific discovery schedule and limitations where the party

17    discovery is likely to be primarily in the defendants'

18    possession.

19          When it comes to the case specific discovery, of

20    course, the opposite is true.  The discovery that will be

21    needed primarily is of plaintiffs; and in the case of personal

22    injury plaintiffs, third-party physicians.

23          And I know Your Honor hadn't asked us how much time we

24    would need to develop our defenses, but with the plaintiffs

25    having secured an expedited fact discovery period, it is our

1   view that their proposals, in terms of the discovery we would

2   get, seek to unfairly deprive us of the opportunity to develop

3   the evidence that we need from the plaintiffs to defend

4   ourselves.

5        And so with that background, again, our proposal is,

6   40 hours of fact depositions of each personal injury and school

7   district plaintiff.  We know from Judge Gonzalez Rogers' recent

8   order that there will be 12 to 15 personal injury bellwether

9   plaintiffs and 12 to 15 school district bellwether plaintiffs.

10       We also propose that within those depositions of the

11  personal injury plaintiffs that for depositions of minors who

12  are under 16 years of age, we would be prepared to agree to

13  4-hour cap on those depositions with one additional hour per

14  additional defendant.

15       And with respect to written discovery, we would ask to

16  serve only the default provisions under the rules, so 25

17  interrogatories on each personal injury and school district

18  bellwether plaintiff.

19       And with Your Honor's guidance, the number of requests

20  for admission should roughly equate to the number of

21  interrogatories; 25 requests for admission on each personal

22  injury and school district plaintiff.

23       The plaintiffs, by contrast, have proposed limits of 5

24  fact depositions of 25 hours for each personal injury plaintiff

25  and 6 fact depositions or 32 hours per school district

1   plaintiff with a 3-hour cap on minor depositions defined as

2   under 18 and one additional hour in multi-defendant cases.  And

3   then they would limit us to serving only five interrogatories

4   and five requests for admission on each personal injury and

5   school district plaintiff.

6        I know there was a reference earlier by Ms. Hazam to

7   plaintiff fact sheets.  Certainly we will be receiving

8   discovery from plaintiffs through those plaintiff fact sheets,

9   but I think it's important for Your Honor to know that in the

10  course of those negotiations with plaintiffs over the plaintiff

11  fact sheets, in arguing for narrower plaintiff fact sheets,

12  they made the point that we would, of course, be getting much

13  more extensive discovery of the bellwether plaintiffs once

14  those bellwether plaintiffs were identified.  And in fact, the

15  PFS implementation order agreed to by the parties and entered

16  by Judge Gonzalez Rogers expressly clarifies that the PFS shall

17  not count against numeric limits for written discovery,

18  including but not limited to interrogatories, as set forth in

19  Rule 33.

20       At the CMC, there was also -- on May 3rd there was

21  also guidance provided by Judge Gonzalez Rogers that obviously

22  before any case is going to go to trial, you're going to have

23  depositions and IMEs and all kinds of things, so don't over-ask

24  on the plaintiff fact sheet.

25       And, excuse me, that was Judge Kuhl not Judge Gonzalez

PROCEEDINGS

1  Rogers.

2          And so I just wanted to provide Your Honor with

3  that -- with that background.  We don't see any rationale or

4  authority for the particularly restrictive limits on written

5  discovery that the plaintiffs are proposing.

6          I think that the defendants probably would be prepared

7  to reach a compromise agreement on the school district

8  bellwether depositions of 35 hours, but that would have to be

9  without a corresponding limit on the number of depositions.

10          Part of what we're trying to do here is come to Your

11  Honor with a good faith, reasonable proposal.  And one of the

12  ways that we thought to do that is to propose an hours limit so

13  that we're not proposing a large number of depositions

14  necessarily, all of them extending to a particular amount of

15  time but, rather, a constrained hours limit with the ability to

16  use those hours as -- as needed to take our discovery.

17          And I'm happy to go into more detail, if it would be

18  helpful to Your Honor, about kind of the unique issues in these

19  cases that require a lot of discovery.  This isn't your typical

20  personal injury case.  We will need to explore, as just one

21  example, a range of potential alternate causes of these

22  personal injury plaintiffs' alleged injuries.  And on the

23  school district side we're going to be moving to depose school

24  administrators, members of the school board; we're going to

25  need superintendents.  There's going to be extensive discovery,

1    as there was extensive discovery of the school districts in

2    kind of comparable mass tort litigation in other contexts

3    alleging the kind of public nuisance claim that these school

4    district plaintiffs are alleging, and we've really taken to

5    heart trying to propose to Your Honor something that we think

6    is reasonable; and for those reasons we'd ask that Your Honor

7    order the 40-hour limit that we've proposed.

8         There's just one caveat I want to note, which is that

9    the parties are in agreement that with respect to the school

10   district bellwether plaintiffs the defendants will have 10

11   hours of 30(b)(6) depositions of each school district

12   bellwether plaintiff.  So those limits I was referring to

13   earlier are for the fact depositions.

14        **THE COURT:**  Gratified to hear the parties are

15   agreeing.

16        **MS. HAZAM:**  Your Honor, may I respond?

17        **THE COURT:**  Yeah.  I want to make sure I got the

18   numbers correct.

19        **MS. HAZAM:**  Sure.

20        **THE COURT:**  So we're talking bellwethers only.  For

21   bellwether personal injury plaintiffs it's 45 or 35 hours?

22        **MS. SIMONSEN:**  40 hours per personal injury plaintiff.

23        **THE COURT:**  Okay.

24        **MS. SIMONSEN:**  40 hours per school district plaintiff.

25        **THE COURT:**  Where did the mention of a 35-hour number

PROCEEDINGS

1    as a compromise?

2         **MS. SIMONSEN:**  We would be -- we would be prepared to

3    compromise on 35 hours for the school district plaintiffs.

4         **THE COURT:**  School district.  Okay.

5         **MS. SIMONSEN:**  Again, subject to no hard limit on the

6    number of depositions, but with the caveat that we would, of

7    course, meet and confer with the plaintiffs about how long we

8    expect any one deposition to take.

9         **THE COURT:**  Now, when you say 40 hours of deposition

10   per personal injury bellwether, that's 40 hours of deposition

11   not of that one person?

12        **MS. SIMONSEN:**  No.  And I think that's --

13        **THE COURT:**  So any witness related to that one

14   individual plaintiff -- that's what you're talking about? --

15        **MS. SIMONSEN:**  That's right.  We're --

16        **THE COURT:**  -- their treating physician and all of

17   that?

18        **MS. SIMONSEN:**  That's correct, Your Honor.

19        **THE COURT:**  Okay.  So let me resolve what I think is

20   the first easy question.  A minor is somebody under 18, not

21   somebody under 16 -- okay? -- so that's my ruling.  Okay?

22        **MS. SIMONSEN:**  Okay.

23        **THE COURT:**  I don't think the law is unclear about

24   that.

25             So now that I got the numbers right, go ahead.

1          **MS. HAZAM:**  Thank you, Your Honor.  Defendants have

2    stated that they wished to propose reasonable numbers.  I would

3    note that defendant's numbers have moved up from their last

4    ones that they submitted to Your Honor previously, and their

5    total number of hours on depositions for the bellwether

6    plaintiffs would mean that depos at 7 hours would be greater in

7    number on the bellwether plaintiffs than on the defendants

8    collectively.

9          In other words, their 1,080 hours of total depositions

10   they want to take on bellwether plaintiffs would be 154 depos

11   at 7 hours each.

12         Your Honor has ordered that with regards to depos on

13   the defendants, we have 240 hours per defendant.  That would be

14   136 depositions per defendant at 7 hours each.  So the number

15   is lopsided, and I think that's of particular concern when

16   you're talking about lay people and minors.

17         Plaintiff's proposal was -- and we moved towards where

18   defendants were last time; they went the other direction.

19   Plaintiff's proposal is now 5 depositions or 25 hours total as

20   to the personal injury plaintiffs and 6 depositions or 32 hours

21   total as to the school district plaintiffs.

22         As to minors, defined as under 18, as Your Honor just

23   indicated, plaintiffs have proposed a 3-hour time limit with a

24   possibility of an additional hour if there are additional

25   defendants named.  So that would bring it to a total of 4 hours

1  of deposition for a minor plaintiff for the defendants to allot

2  among them as they see fit.

3       We believe those are quite reasonable.  Those numbers

4  are actually higher than the numbers in the Juul litigation,

5  which was very similar, it was an MDL in this court involving

6  minor plaintiffs and school districts.  There the number of

7  depositions of the plaintiffs was limited to four.

8       With regards to written discovery, the defendants have

9  noted that plaintiffs have committed to completing PFSs.  PFSs

10  are commonly regarded in mass tort MDLs and by the Manual on

11  Complex Litigation and by guidance from the Federal Judiciary

12  Center as done in lieu of interrogatories.

13       I think even a quick glance at the plaintiff fact

14  sheet that was attached to our joint statement will show Your

15  Honor the great depth contained therein.  It's 43 pages long,

16  it has a hundred questions just in the main part and then it

17  has addenda for each defendant, which add anywhere from 25 to

18  60 additional questions that are sworn.  They are verified

19  answers in the same way interrogatories are.

20       Plaintiffs have offered, in the spirit of compromise

21  to defendants, an additional five interrogatories and five

22  requests for admission per bellwether plaintiff.

23       **THE COURT:**  Both PI and SD?

24       **MS. HAZAM:**  Yes, Your Honor.

25       I would also note, Your Honor, that the totals that I

1    just gave you do not include any depositions on the State AGs

2    or their agencies, which would add quite a few hours to the

3    total number of depositions that defendants are seeking to take

4    of plaintiffs.  They are seeking 3,400 additional hours if you

5    include those.

6           **MS. SIMONSEN:**  If I may briefly respond, Your Honor.

7    I think we should take the depositions and the discovery of the

8    State Attorneys General kind of off the table for the moment.

9           Just a few points.  Ms. Hazam said that our proposals

10   to you previously, that we had moved up from those proposals.

11   I don't think we previously made any proposals to you.  We had

12   made a proposal to Judge Gonzalez Roger in the context of

13   proposing a trial schedule.  Under that proposal, the

14   defendants had suggested that there be a two-phase approach to

15   bellwether discovery where there would be a group of bellwether

16   discovery plaintiffs from whom a targeted amount of discovery

17   would be taken followed by additional discovery on the

18   bellwether trial plaintiffs identified for trial.  That's a

19   very common setup in mass torts in terms of discovery of

20   bellwether plaintiffs.  So in making the proposals we've made

21   to the plaintiffs and to Your Honor, the 40-hour limit, that

22   would be of all depositions of the bellwether plaintiffs.  And

23   that's because Judge Gonzalez Rogers declined to order that

24   two-phase bellwether discovery process.

25           So I don't think it's accurate to say that we -- that

1    we increased our number of hours.  We took a hard look at the

2    number of bellwether plaintiffs, the amount of time to get

3    discovery done and the fact that we would need to take all the

4    discovery of the bellwether plaintiffs by December, and that is

5    how we arrived at what we think is a reasonable number.

6         I know that Ms. Hazam likes to multiply the number of

7    hours of depositions that we're proposing of each plaintiff by

8    the number of bellwether plaintiffs and compare it to the

9    number of depositions of each defendant by the number of

10   defendants, but it's really not an apples-to-orange comparison,

11   Your Honor.  I think --

12        THE COURT:  It is an apples-to-orange comparison --

13        MS. SIMONSEN:  It is an apples-to-orange, excuse me.

14   It is not an apples-to-apples comparison because, I mean, of

15   course the way to look at this is these are plaintiffs -- they

16   are parties to this -- these lawsuits.

17        Now, it happens to be the case that there will be 24

18   to 30 bellwether plaintiffs from whom discovery will be taken.

19   It happens to be that they have named four defendant groups as

20   defendants in this litigation.  So doing that kind of

21   multiplication math I don't think is helpful in terms of

22   advancing the discussion about what's actually needed for the

23   defendants to prepare their defenses in these cases.

24        And finally, on Ms. Hazam's point about deposition

25   limits that may have been set in Juul or other cases, again,

**PROCEEDINGS**

1    this case is really quite different.  I mean, I think when it

2    comes to allegations about nicotine, for instance, and whether

3    it is addictive, there may be more established scientific

4    evidence of that.

5         There is no scientific evidence of a relationship

6    between the use of social media and the types of harms that the

7    plaintiffs are alleging here.  It's a really critical issue in

8    these cases -- as Your Honor knows -- we proposed to brief that

9    issue early before Judge Gonzalez Rogers and we really need to

10   be able to test that and that's -- that's going to require

11   extensive -- extensive discovery into the -- you know, the

12   background, the medical history of each of these personal

13   injury plaintiffs.

14        I also do just want to make sure that I state for the

15   record just how complex the school district bellwether

16   discovery is also going to be.  In the school district cases,

17   the list of potential fact witnesses is vast.  It includes

18   principals, you know, I said school board presidents, executive

19   directors of the school districts, school health, supervisors

20   of students and family services, district social workers,

21   district superintendents, school police departments, directors

22   of school safety, technology directors, school CFOs, former

23   administrators, faculty and students and others.  And that is

24   discovery that the defendants will need to develop their

25   defenses in these cases.

1          **MS. HAZAM:**  And Your Honor, just briefly to respond.

2          **THE COURT:**  Yeah.

3          **MS. HAZAM:**  I don't think our purpose is to argue

4     causation here today, so I won't engage opposing counsel on the

5     merits of that.

6          **THE COURT:**  I could hear you bristling and waiting to

7     respond to the medical point.

8          **MS. HAZAM:**  Yeah.

9          **THE COURT:**  I take your point.

10         **MS. HAZAM:**  Thank you.

11         **THE COURT:**  No one is making rulings or making

12    admissions on causation.

13         **MS. HAZAM:**  I did not think so.  Simply don't think

14    it's appropriate to offer argument on that, so I won't.

15         With regards to the math, the math -- which both sides

16    have engaged in -- is relevant because defendants' rationale

17    with regards to discovery on them is the short schedule.  And

18    so the point that we made here is that if defendants are

19    prepared to take literally thousands of hours of depositions of

20    the plaintiffs, that undercuts their argument as to the

21    discovery on them.

22         With regards to the core versus noncore point, I just

23    want to note that essentially I think that what that

24    demonstrates is that defendants' previously offered limits were

25    illusory.  Essentially the only limits they were offering -- it

1  became clear, we were with Judge Gonzalez Rogers -- were as to

2  the core phase.  There were no limits as to noncore, which made

3  the distinction, frankly, in our view, without any purpose, and

4  that was never specifically acknowledged by the defendants.

5  But I think we are hearing them say today that the noncore part

6  had absolutely no limits attached to it whatsoever.

7          So I simply would note that I think that we've

8  proposed what are very reasonable limits on discovery on

9  bellwether plaintiffs.  We've moved towards the defendants,

10  splitting the difference that we had before on a number of

11  measures and ending up at a place where the total number of

12  depositions that could be taken of plaintiffs and the total

13  number that could be taken of defendants are similar.

14          I certainly don't think that defendants should be

15  taking more depositions of minor lay people, bellwether

16  plaintiffs, than we should be able to take on these large

17  corporations.

18          **THE COURT:**  Discovery is never completely equal both

19  ways.  That's not -- I mean, if that were the rule, then you

20  wouldn't need me here, you would just pick a number.

21          So okay.  Just so I'm clear, the discovery limits that

22  you're all proposing -- this is for all defendants you agree

23  there are not -- okay.  So, for example, you said 40 hours of

24  deposition of PI plaintiffs not 40 hours by Meta and 40 hours

25  by TikTok.  It's 40 hours as a side for all defendants, right?

PROCEEDINGS

1          MS. HAZAM:  That's my understanding.  I certainly hope

2    that is the case.

3          THE COURT:  I just want to make sure we all understand

4    the number.

5          MS. SIMONSEN:  Yes, Your Honor.

6          THE COURT:  That's what I intend.

7          MS. HAZAM:  Yes, Your Honor.

8          THE COURT:  Okay.  All right.  So I'm going to treat

9    the plaintiff groups a little bit differently.  So the PI

10   plaintiffs, 30 hours of depositions.  For the school district

11   plaintiffs, 35 hours of deposition.  For the minor PI

12   plaintiffs, we adopt the plaintiff's position 3 hours for

13   minors, 4 hours if it's a multi-defendant case.

14          For interrogatories, 15 rogs for school district

15   plaintiffs, 10 rogs for minors because there's going to be less

16   time to depose them, seven rogs for the nonminor PI plaintiffs

17   and then reading by my rule that means 42 RFAs split however

18   you want to split it.

19          I will say, just so that the parties have guidance on

20   this, for RFAs, I'm expecting the parties to reach stipulations

21   on authentication of documents and things that might be used

22   for RFAs, might, like, increase in a general case the number of

23   RFAs, so I'm not thinking that you're going to use RFAs for

24   that kind of thing.

25          MS. HAZAM:  Yes, Your Honor.  I believe the parties

 1  are in agreement to that among ourselves also.

 2          THE COURT:  Okay.

 3          MS. HAZAM:  Appreciate that.

 4          THE COURT:  Okay.  So those numbers -- do I need to

 5  repeat the numbers?

 6          MS. HAZAM:  I believe I have the numbers.  I do have a

 7  question.

 8          THE COURT:  Yeah.

 9          MS. HAZAM:  Your Honor has articulated this in terms

10  of hours of deposition, so I believe it was 30 hours for the

11  personal injury plaintiffs, 35 hours for the school district

12  plaintiffs --

13          THE COURT:  Yeah.

14          MS. HAZAM:  -- and not in terms of limits on the

15  number of depositions.

16          Plaintiffs do have a concern about those being divided

17  too many ways and adding up to a very large number of

18  depositions, some of which may be short but against friends of

19  minors who are minors themselves, et cetera, so we do request

20  that the Court consider some limit on the number of depositions

21  themselves in addition to the hours.

22          THE COURT:  Because it hasn't occurred yet and it's

23  somewhat hypothetical, I'm just going to admonish the

24  defendants not to split this up and start harassing, you know,

25  minor friends of minor personal injury plaintiffs and

1    certainly -- I mean, from what you've listed for me for

2    individual plaintiffs it's like the plaintiff, him or herself,

3    their treating physician, maybe one other person, right?

4         **MS. SIMONSEN:**  Certainly their parents, Your Honor.

5         **THE COURT:**  Okay.  So that's four.  All right.  So I'm

6    not setting any hard numerical limits, but if you start

7    noticing more than four or five depositions for each personal

8    injury, especially for a minor, I don't -- you know, the

9    defendants -- the plaintiffs certainly can come to me on an

10   emergency basis for a motion or a ruling on whether a

11   particular deposition ought to be quashed or struck.

12        **MS. SIMONSEN:**  And Your Honor, the one thing I would

13   just note is that there could be multiple treating physicians,

14   given the range of injuries that are alleged going back --

15        **THE COURT:**  I'm assuming that the plaintiffs are going

16   to be reasonable in understanding that if there are multiple

17   physicians then, again, that's why I didn't say hard numbers.

18   I'm expecting both sides to work within the hours limits to be

19   reasonable in terms of numbers of depositions.  But if I get

20   the sense or if you come to me that one side or the other is

21   abusing -- right? -- numbers of depositions, I'm not going to

22   take -- I'm going to take a different view to that.

23        **MS. SIMONSEN:**  Understood, Your Honor, and we have no

24   intention of abusing it.

25        I think we would ask for the opportunity -- and I

1    heard Your Honor -- to endorse this earlier that, of course, if

2    there's any individual case a need for more than 30 hours of

3    depositions that we would be able to come to Your Honor and

4    request that relief.

5        **THE COURT:** Again, these are limits. You're always

6    free if you can show good cause if you've got a good reason to

7    come back to me to ask for -- on a case-by-case basis or in a

8    specific instance you need more hours I'm not stopping you.

9    I'm not barring anybody from doing that.

10        Before I let you go on this issue --

11        **MS. HAZAM:** Yes.

12        **THE COURT:** -- I do note -- and this is kind of

13    emblematic of some of the stuff I saw in the disputes over

14    limits, so essentially one side was arguing about four hours

15    per cap for minors and the other side was arguing three hours

16    with maybe four hours in a multi-year. I cannot believe you

17    could not agree on what a minor is and you could not agree

18    on -- when you were one hour apart on that issue.

19        And I will note, I've said this before, section (h) of

20    my standing order on discovery disputes has a requirement that

21    "In a discovery dispute the joint letter shall attest that lead

22    counsel met and conferred in person, as required herein. If

23    lead counsel did not meet in person, the joint letter shall

24    explain why an in-person meeting was not required."

25        Can someone show me in this document where there's any

**PROCEEDINGS**

1  attestation that lead counsel met and conferred on this -- on

2  any issues?

3         **MS. SIMONSEN:**  In person, Your Honor?

4         **THE COURT:**  Yeah.

5         **MS. SIMONSEN:**  Your Honor, it is not in that

6  statement.  I believe we explained that we had conferred and on

7  which date, but going forward we will certainly be sure to

8  abide by that ruling, and your guidance is well taken.

9         **THE COURT:**  And you understand the attestation is that

10  lead counsel met and conferred and jointly -- blah, blah,

11  blah -- make sure I got the right word.  Both counsel -- both

12  lead trial counsel have concluded that no agreement or

13  negotiated resolution can be reached.  Okay?

14         I cannot believe that experienced trial lawyers cannot

15  reach an agreement as a difference between three hours and four

16  hours or on what the difference is between a 17-year-old and an

17  18-year-old.

18         **MS. SIMONSEN:**  Understood, Your Honor.

19         And just -- I'm not sure that this is of significance,

20  but obviously we were -- we were moving quickly to try to get

21  this resolved, and I think we've come to Your Honor at a point

22  earlier than a fully developed -- right? -- letter briefing

23  presentation of the disputes, which is why we did not adhere to

24  those rules that you're pointing to, Your Honor, and we will be

25  sure to do so going forward.

**PROCEEDINGS**

1          THE COURT:  Well, you know, the rules are there for a

2    reason, because it's been my experience that even through meet

3    and confers when the senior trial lawyers get involved at the

4    end of the process, a lot of things get resolved, all right?

5          And if I have to make a decision between whether it's

6    three hours or four hours again, I'm actually going to start

7    forcing people to meet and confer in person in my courtroom.

8          MS. SIMONSEN:  Understood, Your Honor.  Thank you.

9          MS. HAZAM:  Understood, Your Honor.  I apologize that

10   that attestation was missing.  We did have extensive meet and

11   confers.  We did at one point have agreement on what a minor

12   was, so --

13         THE COURT:  Okay.

14         MS. HAZAM:  -- but we will take all of this to heart.

15         THE COURT:  I think you all have better things to do

16   than argue over things like that.

17         MS. SIMONSEN:  Understood, Your Honor.

18         THE COURT:  Okay.  What's -- do we need any other

19   discussion on discovery limits?

20         MS. SIMONSEN:  I don't believe so.

21         MS. HAZAM:  I don't think so either.  Your Honor has

22   our agreement as to interrogatories and requests for admission

23   on the defendants.  We'll put it in the form of a stipulation,

24   as Your Honor has requested.

25         THE COURT:  Actually, I'm going to ask you all if

**PROCEEDINGS**

1    you'll get the transcript can you prepare a proposed

2    stipulation -- a stipulation a to the extent you agree and a

3    proposed order to the extent I said it verbally here that

4    capture everything --

5              **MS. HAZAM:**  Yes, Your Honor.

6              **THE COURT:**  -- on the limits.

7              **MS. HAZAM:**  We can do so.  And my colleague may have a

8    matter to address.

9              **THE COURT:**  Okay.

10             **MS. O'NEILL:**  Yes, Your Honor.  Meghan O'Neill on

11   behalf of the State AGs.  I just wanted to report on an

12   agreement that we did reach with Meta regarding interrogatories

13   and RFAs on the State AGs.

14             Ms. Simonsen can correct me if I'm mistaken, but I

15   believe we agreed to 32 identical interrogatories and RFAs on

16   the AGs as a whole, along with six state-specific RFAs and

17   interrogatories on each AG.

18             **MS. SIMONSEN:**  That's correct, Your Honor.

19             **THE COURT:**  All right.  Why don't you include that in

20   the stipulation.

21             **MS. SIMONSEN:**  We will, Your Honor.

22             **MS. O'NEILL:**  Thank you.

23             And Your Honor, just one note.  We would like to note

24   that this agreement is still subject to the AG's position that

25   party discovery, including interrogatories and RFAs, is only

**PROCEEDINGS**

1  appropriate as to the State AGs, not State agencies.  As

2  discussed earlier, many if not all of the State -- in many if

3  not all of the states, the AG attorneys represent -- who

4  represent the people in consumer protection enforcement actions

5  are not authorized to accept service of any discovery requests

6  made on State agencies.  This is an issue of extreme importance

7  to the AGs, and we did want to just make clear on the record

8  that we will be seeking review of this issue.

9          **THE COURT:**  Okay.  I haven't issued a ruling yet, but

10  if you're telling me you're going to seek review before you see

11  my ruling, that's fine.

12          **MS. O'NEILL:**  We will of course review your ruling and

13  act accordingly.  Thank you, Your Honor.

14          **THE COURT:**  Okay.

15          **MS. SIMONSEN:**  Thank you, Your Honor.

16          **THE COURT:**  Privilege log, is that where we are now?

17  What's next?

18          **MS. SIMONSEN:**  Oh.  I apologize.  My colleague is on

19  this one.

20          **MR. DRAKE:**  I'm sorry, Your Honor; Geoffrey Drake,

21  king and Spalding for the TikTok defendants.  Just want to make

22  sure we were documented, and we'll put this in the joint

23  stipulation as well on the 10-hour 30(b)(6) agreement for the

24  school district cases, if that was not included in your oral

25  order.  Just wanted to make sure we're clear.  Thank you, Your

**PROCEEDINGS**

1  Honor.

2         **THE COURT:**  I understand the stipulation, I accept

3  that and that should be part of the order.

4         So are we done with everything in the joint status

5  report?  Speak now or forever hold your --

6         **MS. HAZAM:**  I believe so, Your Honor.

7         **THE COURT:**  All right.  So privilege log.

8         **MS. McNABB:**  Good afternoon, Your Honor --

9         **THE COURT:**  Before we continue, since we're switching

10  gears, Madam Reporter, do you need a break?

11         **COURT REPORTER:**  Oh, no, I'm fine.

12         **THE COURT:**  Are you sure?  Okay.  Go ahead.

13         **MS. McNABB:**  All right.  Good afternoon, Your Honor;

14  Kelly McNabb Lieff Cabraser on behalf of the plaintiffs.

15         **MS. LOPEZ:**  Good afternoon, Your Honor; Laura Lopez on

16  behalf of -- for Snap and on behalf of the defendants.

17         **THE COURT:**  All right.  So on the privilege log

18  disputes, the first issue is -- tell me if I got this -- if I

19  understand this correctly -- plaintiffs want a privilege log

20  that in the description, subject, whatever you want to call it,

21  field is metadata plus the topic?

22         **MS. McNABB:**  Correct, Your Honor.

23         **THE COURT:**  Where the topic is selected from a

24  pre-agreed upon dropdown menu in whatever review tool that the

25  defendants use or whatever -- each plaintiff; is that right?

PROCEEDINGS

1    **MS. McNABB:**  Yes, Your Honor.  Kelly McNabb for the

2    plaintiffs.

3           What the main difference is between the parties' logs

4    is that plaintiffs are asking for an additional column that

5    includes a topic that identifies the general subject matter of

6    the withheld document.

7           **THE COURT:**  Yeah.  And then defendant's position, as I

8    understand it, is just include the metadata as it is without

9    this extra column.  Is that -- do I have the gist of this first

10   argument correctly?

11          **MS. LOPEZ:**  Yes.  But if I may, Your Honor, I do want

12   to clarify.  I don't think it's accurate to say that plaintiffs

13   are suggesting pre-agreed categories.  Typically the way that's

14   done there's like a cap.  They're asking for narrative

15   descriptions that are less than a sentence, maybe three to four

16   words for each document.  That's how we've understood it all

17   along.  That's how it reads in their proposal.  So it is a

18   little different than a categorical log, for example, where

19   they're pre-agreed categories, Your Honor.

20          **MS. McNABB:**  Your Honor --

21          **THE COURT:**  You seem to want to respond to that, so go

22   ahead.

23          **MS. McNABB:**  Yes, Your Honor; Kelly McNabb for the

24   plaintiffs.

25          We are not asking for a narrative description.  That

**PROCEEDINGS**

1  is not correct.  What we were asking for is a topic that would

2  be generated from a dropdown menu in a review platform.

3       I do have examples of what a metadata plus topic log

4  would look like in comparison to a metadata only log, if Your

5  Honor would find that useful.

6       **THE COURT:**  Have you shown it to the defendants?

7       **MS. McNABB:**  It was recently published in the Sedona

8  Conference commentary on privilege logs, which was submitted

9  two days after we submitted our briefing on this issue.  The

10  Sedona Conference has recommended use of metadata plus topic

11  logs in almost all cases.

12       And I did reference the commentary to counsel on a

13  meet and confer.  Because it was not published at the time, I

14  did not provide the examples that are included in the

15  commentary.

16       **THE COURT:**  You're pointing to something.  Do you have

17  a copy of it in front of you right now?

18       **MS. McNABB:**  Yes, Your Honor, I do.

19       **THE COURT:**  Why don't you show it to her and show her

20  that it is or is not what she fears may be issued.  She said

21  you're wanting a narrative description, and you're saying it's

22  not, so I think it would be helpful if you all saw what exactly

23  you're talking about.

24       **MS. LOPEZ:**  Sure.

25       **MS. McNABB:**  Yes.  Would Your Honor like to see a

PROCEEDINGS

1    copy?

2           THE COURT:  Well, why don't you talk amongst

3    yourselves first --

4           MS. McNABB:  Okay.

5           THE COURT:  -- to see if you can agree as to whether

6    it looks okay.

7           MS. McNABB:  We did provide, Your Honor, in our --

8    prior to today and prior to our submission, examples of what a

9    topic would look like.

10          MS. LOPEZ:  Your Honor, to be clear, plaintiffs

11   pointed us to how defendants might describe a particular line

12   item; for example, contract drafting, settlement dispute.  But

13   at no time did plaintiffs suggest that the parties could agree

14   to a limited set of categories, which is typically what -- at

15   least I'm not familiar with this formative log such as I'm

16   seeing it right now, but in categorical logs, for example,

17   which are commonly used -- the Southern District of New York,

18   for example -- the parties agree to categories.  That is a very

19   different exercise than having what is typically a separate

20   team of very well-trained attorneys craft narratives that

21   correspond to an individual document.

22          THE COURT:  From what I'm hearing, they're not asking

23   for written narratives by a human being.  They're asking for

24   dropdown menu selections.  So I hear what you're saying.

25          First of all, on this issue I'm going to -- because

1  you're still -- it sounds like you're still not actually

2  finished meet and conferring, I'll order you to complete

3  meeting and conferring on this.  I'm going to give you

4  guidance.  I do think it makes sense having agreed, set-upon --

5  I don't know -- selections from that dropdown menu that

6  plaintiffs are proposing, right?  And I think it's reasonable

7  for the defendants to ask plaintiffs, you know, if there's

8  maybe newcomers, if it's too new, but I don't know if there's

9  like a template or industry standard set of those kind of

10 selections for a dropdown menu, but if you can agree on what

11 would be in that dropdown menu, then that obviously relieves

12 the burden that the defense is worried about of having to, you

13 know, manually check every document, have an attorney do what I

14 used to do when I was a young associate, actually write a

15 narrative for each document, right?

16         So it sounds like everybody wants it to be done on a

17 review platform, but it seems like the best way to do that is

18 come to an agreed set of terms for that dropdown menu if you

19 can; and if you can't -- I'm hoping you can because if you come

20 to me and say you want 30 terms and they want 25 and you can't

21 agree between 25 and 30, I'm not going to be happy, so try to

22 work out an agreed-upon set of terms for that dropdown menu.

23         **MS. McNABB:**  Yes, Your Honor.  Kelly McNabb for the

24 plaintiffs.  We would be happy to meet and confer with

25 defendants on a list of topics.

**PROCEEDINGS**

1          To that end, plaintiffs have asked defendants who have

2     produced documents previously to the Attorneys' General, which

3     have now been reproduced in this litigation, to also provide a

4     privilege log that was previously produced to the Attorneys

5     General.  Those privilege logs have not yet been produced.

6          We would ask that prior to our meet and confer on the

7     topics to be included in the dropdown menu that those privilege

8     logs be provided so that we can have some context of what are

9     the types of privileges that defendants have already claimed in

10    this litigation.

11         **THE COURT:**  Do you have a problem with giving them

12    privilege logs if they're previously prepared?

13         **MS. LOPEZ:**  Your Honor, I think some of the defendants

14    to whom the supplies have replied that they will willing to

15    make those reproductions, speaking for Snap, it's just not

16    applicable to us, so at this time we don't have any such logs

17    to --

18         **THE COURT:**  Oh, okay.  So if no such log exists,

19    there's nothing to produce, right?

20         **MS. LOPEZ:**  Right.  Yes.

21         **MS. FITERMAN:**  Good afternoon, Your Honor; Amy

22    Fiterman on behalf of the TikTok defendants.

23         TikTok has already communicated with the plaintiffs as

24    recently as last evening that we will have that log produced

25    next week.

1          **THE COURT:**  Okay.  So if any defendant has a privilege

2    log prepared that pre-exists -- that that exists, according to

3    their production, to the State investigation or a State AG,

4    they should produce that -- those existing logs to -- to the

5    plaintiffs.

6          **MR. CHAPUT:**  Your Honor, Isaac Chaput for the Meta

7    defendants.  I did want to make clear the Meta defendants have

8    already agreed to produce those privilege logs and we also

9    anticipate doing so likely next week.

10         **THE COURT:**  There's no dispute here.  Why did you ask

11   me to order them to do it if there's no dispute?

12         **MS. McNABB:**  Thank you, Your Honor.

13         **THE COURT:**  Okay.  So why don't you finish that meet

14   and confer on this issue within the next week because, I mean,

15   coming up with a list of terms shouldn't take that long --

16   right? -- and then hopefully you can fill this that part of the

17   protocol without any further input from the Court, okay?

18         **MS. McNABB:**  Yes, Your Honor.  My understanding from

19   counsel from TikTok is the earliest they were suggesting they

20   were going to produce the prior privilege log was the 29th,

21   which is next Friday.

22         So if we are to meet and confer within a week, then

23   the privilege log needs to be produced sooner, or we can agree

24   to submit the list of topics to Your Honor within five days of

25   the privilege log being produced.

1          **MS. FITERMAN:** Hi, Your Honor. Amy Fiterman on behalf

2     of the TikTok defendants.

3          We did indicate that it would be produced next week.

4     We have another production of documents rolling out next

5     Thursday, which is the 29th, and we would propose we just do it

6     all in one service. But if it needs to go earlier, it can go a

7     bit earlier. We're willing to do what we can to keep this

8     moving.

9          **THE COURT:** I don't think the preexisting privilege

10    logs need to be tied to an upcoming production.

11         **MS. FITERMAN:** That has actually been our position as

12    well, Your Honor, but we're doing what we can to complete our

13    obligations.

14         **THE COURT:** When are you -- okay. I'm going to order

15    the privilege logs be produced no later than next Wednesday and

16    then you finish the meet and confers no later than next Friday,

17    okay?

18         **MS. McNABB:** Thank you, Your Honor.

19         **THE COURT:** All right. So that's that issue.

20         The second issue that was briefed was exclusions from

21    logging. All right. So --

22         And it seems again -- so there are a couple of sub

23    disputes here. Before I move on to this issue now does madam

24    reporter need a break?

25         Let's take a break. Ten minutes.

1      (Recess taken at 3:29 p.m.)

2      (Proceedings resumed at 3:43 p.m.) withdrawn.

3      **MR. HUYNH:**  Good afternoon, Your Honor; Thomas Huynh

4  for the States Attorneys General.  Before we broke the issue,

5  Your Honor teed up was the exclusions from log issue for the

6  privilege log.

7      **THE COURT:**  Yes.

8      **MR. HUYNH:**  If I may, there are two major issues that

9  are contained within that, and I'll start with the broader

10  issue, which is that the State Attorneys General and also the

11  Plaintiffs are concerned about the exclusion from logging for

12  any communications or work product involving counsel, which is

13  something that defendants proposed.

14      Now, we understand that counsel's appearance on emails

15  may suggest that something is attorney-client privileged, but

16  we also want to flag to your Honor's attention, we which we

17  also did in the briefing, the concern about overdesignation of

18  counsel and also placing counsel on email chains in order to

19  get privilege, which was raised by the Northern District in the

20  *Facebook Cambridge Analytica* case.

21      We also wanted to flag that to the extent that there

22  is counsel on the email communication, it may not actually be

23  something that's wholly about legal advice but, rather --

24      **THE COURT:**  I've read that argument.  Look --

25      **MR. HUYNH:**  Uh-huh.

PROCEEDINGS

1    **THE COURT:**  -- who's on that particular document is

2    not -- that's why you have a privilege log.  That doesn't tell

3    you whether the document is privileged or not.  That's why

4    you're arguing separately about whether it's metadata or

5    metadata plus subject or whatever -- right? -- so --

6    **MR. HUYNH:**  Uh-huh.

7    **THE COURT:**  -- I understand the concern, but at this

8    point it's hypothetical because you haven't seen their

9    privilege logs and if they don't -- if the defendant's don't

10   substantiate the privilege because there are 800 people on an

11   email chain, there's one lawyer, I'm sure you'll make a motion

12   to challenge the assertion of privilege.

13   **MR. HUYNH:**  And Your Honor we agree with that a

14   hundred percent.  To the extent it becomes ripe we would

15   challenge it, then but we're just asking it to be logged on the

16   privilege log in the first place.

17   **MR. CHAPUT:**  And Your Honor, if I may, the proposal

18   that defendants have made is to exclude from logging categories

19   of communications that are presumptively privileged, so the

20   communications and work product of counsel regarding this and

21   related litigation that post-date the filing of the complaint.

22   **THE COURT:**  Okay.  Look, I saw the parties' dispute on

23   what -- related litigation.  The answer to that is, you have to

24   identify and list out what you mean by -- which cases you mean

25   by "related litigation" -- all right? -- so the other side has

1  notice as to what you consider to be the related litigations.

2  Okay?

3          MR. CHAPUT:  Understood, Your Honor.

4          THE COURT:  All right.

5          MR. CHAPUT:  We can do that.

6          THE COURT:  And if plaintiffs believe that

7  communications that have to do with some case in -- you

8  know? -- that happened 30 years ago in some far distant

9  jurisdiction is not a sufficient basis to assert privilege, I'm

10  sure they'll argue it, okay?

11          MR. CHAPUT:  Understood, Your Honor.  And we do not

12  intend to sweep so broadly, certainly.

13          THE COURT:  Okay.

14          MR. CHAPUT:  And if I may respond just very briefly

15  with respect to the consumer privacy case that counsel raised,

16  I just wanted to say Meta and Covington take our discovery

17  responsibilities very seriously.  Meta is not going to make

18  privilege decisions based only on indicia of privilege such as

19  a banner that says "privileged and confidential" or the

20  presence of an attorney on the chain.  We will be making

21  case-by-case document-specific privilege determinations.

22          THE COURT:  Thank you for that representation.  I hope

23  that allays, at least in part, plaintiff's concern.

24          MR. HUYNH:  State Attorneys General plaintiffs

25  appreciated that, Your Honor.

1          **THE COURT:**  Okay.  So the other dispute as I

2    understand is exclusion is whether communications between

3    government counsel and law enforcement should be excluded from

4    logging.  Is that still a dispute, or have you reached

5    agreement on that?

6          **MR. HUYNH:**  That's still a dispute, Your Honor.

7          And again, Thomas Huynh with the State Attorneys

8    General, the plaintiffs.

9          So with regards to that our narrow exception from

10   logging is that to the extent that we have communications with

11   other law enforcement agencies, whether it's within the state

12   or without the state, we would ask that that be excluded due to

13   the fact that we would have a common interest in investigating

14   Meta or investigating any other defendants and prosecuting

15   them.

16         So that common interest, which then allows us to wrap

17   the work-product privilege around those communications and, to

18   some extent, attorney-client privileged communications or

19   privilege around those communications is what we're saying

20   should allow us to then exclude that from logging because it's

21   presumptively privileged.

22         **MR. CHAPUT:**  I think, Your Honor, that the

23   expansiveness of what the State Attorneys General are looking

24   for was shown by what counsel just said.

25         This exception would allow them to prevent logging any

1 communication between government counsel and civil or criminal

2 law enforcement agencies, bureaus, offices, departments of the

3 State or the United States.

4        Those are simply not per se privileged.  And that's

5 particularly the case if the Court accepts the State AG's

6 repeated representations that they do not represent other State

7 agencies.  And so if they don't represent those agencies, then

8 this per se privilege they're seeking to invoke simply cannot

9 exist.

10        **MR. HUYNH:**  Judge, if I may respond?

11        **THE COURT:**  Sure.

12        **MR. HUYNH:**  Just briefly.  With regards to the state

13 agency issue, that's really a red herring here because what

14 we're discussing is other law enforcement agencies with which

15 we might be discussing or communicating for the joint and

16 common interest of investigating and prosecuting Meta.

17        This isn't about the division of taxation.  This isn't

18 about the Department of Health -- all right? -- it's very

19 narrow.

20        **THE COURT:**  For madam reporter slow down.

21        **MR. HUYNH:**  Ah, yes.  It's very narrow, though, and

22 just about those other law enforcement communications, which we

23 have routinely in these multi-state investigations.

24        **THE COURT:**  Is the proposal to exclude from logging

25 any such communications regardless of temporal timeframe, or is

1    it only post-dating this MDL?

2          **MR. HUYNH:**  Your Honor, we had an investigation

3    preceding the MDL as well.

4          **THE COURT:**  Okay.  So that's not my question.

5          **MR. HUYNH:**  Yes.

6          **THE COURT:**  Is there any time limit to the proposal to

7    exclude from logging?

8          **MR. HUYNH:**  No.  We have not imposed a time limit on

9    that.

10         **THE COURT:**  Do the defendants propose --

11   counterpropose a time limit?

12         **MR. CHAPUT:**  I don't believe we've discussed a

13   potential time limit, Your Honor, but we would be happy to

14   confer for that.

15         **THE COURT:**  What would be the harm to the defendants

16   to excluding from logging such communications post the filing

17   of the MDL?

18         **MR. CHAPUT:**  As long as we're clear, Your Honor, on

19   what specifically -- similar to what we were discussing before

20   with respect to related cases for defendants, what is

21   encompassed within the relatedness sphere so that we can be

22   certain that there is actually some tether between this case

23   and the other investigations that counsel is referring to.

24         **THE COURT:**  Well, but if there's a time limit, there's

25   presumably -- counsel mentioned there was investigations done

1  before the filing of the complaint.  If I were to impose a time

2  cutoff, there would still be logging of material, if it exists,

3  any communications before the filing of the complaint, which

4  would allow your side to test the sufficiency of the privilege

5  assertion as to those pre-lawsuit documents.  So you get some

6  notice of what they are and what the assertion of privilege is

7  and then you can debate amongst yourselves whether common

8  interest applies or not.

9          MR. HUYNH:  Judge, may I respond briefly to you?

10          THE COURT:  I've got a question for --

11          MR. HUYNH:  Oh, sorry.  Of course.

12          MR. CHAPUT:  I do agree, Your Honor, I do think that

13  would be helpful.  However, similar to their need to understand

14  the notion of relatedness, I think we need to understand what

15  else could be swept within that in terms of the communications

16  that would -- that would post-date the complaint that aren't

17  getting logged; what -- what other matters exist that are part

18  of that -- that are subject to that exclusion.

19          MR. HUYNH:  Judge, may I --

20          THE COURT:  As I -- as I understand, the proposals

21  exclude from logging communications discussing this -- the

22  subject matter of this case, right?  I mean, if there -- I

23  mean, if it's communications, for example, some State AG with a

24  different law enforcement agency about, like, I don't know, a

25  cyber-stalking case involving some individual in Russia, that's

 1   not even relevant to the case, right?

 2          MR. CHAPUT:  I agree, Your Honor.  And if it is

 3   limited just to the subject matter of this case, then I agree

 4   that the limitation Your Honor has suggested of allowing the

 5   exclusion only to the extent the communications post-date the

 6   filing of the complaint, I think that would be acceptable.

 7          THE COURT:  All right.  Do you object to that?

 8          MR. HUYNH:  Your Honor, we do have objections, and the

 9   concern is that would also wrap into logging communications

10   between State Attorneys General about the investigation, which

11   would be effectively legal advice being exchanged between State

12   Attorneys General Offices.

13          THE COURT:  You're just logging.  You're not going to

14   be disclosing the advice.

15          MR. HUYNH:  That's correct, Your Honor.  It's just it

16   would be like a voluminous amount of emails that we would have

17   to log because as a part of these multistate investigations

18   there's extensive communications between State Attorneys

19   General Offices to try to coordinate as much as possible on

20   this, including with regards to legal theories and also

21   potential targets.

22          THE COURT:  Well, help me out.  If it's a matter of

23   public record, how long did the investigation -- I mean, how --

24   what's the scope of time before -- between the investigation

25   and an MDL filing or first complaint filing, rather?

1      **MR. HUYNH:**  It would be a few years back, Your Honor.

2  And there would be hundreds of thousands of emails, just based

3  on our estimate of our communications with other State Attorney

4  Generals Offices.  By "other," I mean within this coalition.

5      **THE COURT:**  But wait.  Okay.  So now you're confusing

6  me.  "This coalition," so I thought the proposal was to exclude

7  from logging communications with nonparty law enforcement.  No?

8      **MR. HUYNH:**  Oh, no.  Like, in the proposal we provided

9  it was with civil and criminal law enforcement, including other

10 State Attorneys General's Offices.  So it would be inclusive of

11 our coalition as well.

12     **THE COURT:**  Do you need logging as between parties to

13 the case?

14     **MR. CHAPUT:**  With respect to the Attorneys General who

15 are plaintiffs in this case, no, Your Honor, I don't believe we

16 need that logging.  I think that would, similar to the

17 exclusion we have proposed, fall within a well-accepted

18 privilege exclusion.

19     **THE COURT:**  So if it were just third-party or nonparty

20 law enforcement officials with a time cutoff, that must reduce

21 your burden, right?

22     **MR. HUYNH:**  It would reduce our burden, Your Honor.

23     **THE COURT:**  Okay.  That's my ruling.  So the exclusion

24 only applies to -- let me make sure I got this right; tell me

25 if I got it wrong -- the exclusion applies to communications

**PROCEEDINGS**

1    that post-date the filing of the complaint, not the MDL, and

2    communications -- as exclusion from logging -- and

3    communications as between the government counsel and

4    third-party or nonparty law enforcement only need to be logged,

5    not communications with other parties.

6         **MR. CHAPUT:**  Yes, Your Honor.

7         **THE COURT:**  Okay.

8         **MR. CHAPUT:**  I believe that's correct.

9         **THE COURT:**  Okay.

10        **MR. HUYNH:**  Judge, one thing we would flag is before

11   we filed in the MDL as an investigative body we were a much

12   larger group that included other states which are now currently

13   in state court.  So if Your Honor didn't carve those states

14   out, it would likely include basically all the same

15   communications because those states -- for example, I can

16   provide Tennessee was a part of our coalition before we filed

17   in the MDL, but Tennessee was filed in state court and there

18   were a lot of documents, also communications that we had with

19   Tennessee and also other states that if we didn't exclude those

20   groups from loggings, we would still end up having to log

21   hundreds of thousands of emails Your Honor referenced or that

22   we've referenced to Your Honor.

23        **THE COURT:**  How -- okay.  So how -- I thought those

24   would get covered by the related litigation.  I mean, if

25   there's another litigation out there that's not part of the

**PROCEEDINGS**

1  MDL, I assume that would be part of the list of related

2  litigations.  Am assuming incorrectly that --

3       **MR. CHAPUT:**  Yes, Your Honor.  I would certainly

4  expect that those -- those cases would be included within the

5  list of related litigations from Meta's perspective.

6       **THE COURT:**  Right.  So -- and would you agree with

7  that, Mr. Huynh?

8       **MR. HUYNH:**  So if they're including the list of

9  related litigations, they would also be excluded from the

10  privilege logging.

11       **THE COURT:**  That's right.

12       **MR. HUYNH:**  Okay.  In that case that would help a lot,

13  Your Honor.

14       **THE COURT:**  Okay.

15       Is that now clear the way those two provisions now

16  interplay?

17       **MR. CHAPUT:**  It is.  Yes.  Thank you, Your Honor.

18       **THE COURT:**  Okay.  So I'm going to ask you both to

19  work on crafting the exact formal language on this and the

20  stipulation.

21       **MR. CHAPUT:**  I'm confident we can work that out.

22  Thank you, Your Honor.

23       **THE COURT:**  Okay.  So the next issue, as I understand

24  it, is -- well, I'll just walk through these.  We already

25  talked about --

**PROCEEDINGS**

 1          Lesser included emails.  So the parties spent a lot of

 2     time arguing to me last time, and I spent a lot of time

 3     crafting a ruling in the ESI protocol on how to decide whether

 4     a new email in a string is lesser included or not and should be

 5     basically considered a separate document or not.  So, to me,

 6     that's the answer to this.  If another -- if a privileged

 7     document would be considered, if it were produced, a separate

 8     document -- right? -- but it's being withheld from production,

 9     then it should be logged.  I mean, I don't see why there's a

10     dispute on this.

11          So in other words, if you already have kind of

12     guidelines and a protocol, what would constitute essentially

13     another -- a lesser included email that somehow, for some

14     reason, stems off the main thread and becomes essentially a new

15     document -- right? -- and if that new stemming or branching off

16     thread is asserted to be privileged -- all right? -- then

17     because it would otherwise be considered a new document, it

18     should be logged.

19          **MS. LOPEZ:**  Laura Lopez for Snap.

20          That's exactly right, Your Honor.  This provision is

21     intended to mirror what's going to happen when we produce

22     documents, so if there are lesser included threads, those would

23     get logged separately.

24          I think plaintiffs are suggesting that if there are,

25     within a long chain, lower chains are not privileged, that we

**PROCEEDINGS**

```
 1   should not be not logging those.  We are not going -- those
 2   would be redacted and logged separately and produced.
 3            THE COURT:  Yeah.
 4            MS. McNABB:  Kelly --
 5            THE COURT:  Go ahead.
 6            MS. McNABB:  Kelly McNabb for the plaintiffs, Your
 7   Honor.
 8            THE COURT:  All right.
 9            MS. McNABB:  Based on your guidance in the ESI order
10   that was recently issued this issue has been moot.
11            THE COURT:  Okay.
12            MS. McNABB:  We can handle the logging based on the
13   guidance in the ESI protocol.
14            THE COURT:  Perfect.  Okay.  Moving on.
15            Attorney identification.  So what I heard is,
16   plaintiffs are worried that somehow they can't search or sort
17   if there are asterisks used in the spreadsheet.
18            MS. LOPEZ:  Your Honor --
19            THE COURT:  The defendant never said -- I saw
20   defendants saying, well, we're going to use whatever protocol
21   we use, but I never heard the defendant say we swear we won't
22   use asterisks.  So can you swear you won't use asterisks?
23            MS. LOPEZ:  Yes, Your Honor --
24            THE COURT:  Okay.
25            MS. LOPEZ:  -- we can.
```

**PROCEEDINGS**

1      **THE COURT:** Does that resolve your concern?

2      **MS. McNABB:** Yes, Your Honor.

3      **THE COURT:** Okay. I'm going to ask the same question.

4  Show me in this dispute document for the privilege log protocol

5  where there's the attestation that counsel met and conferred in

6  person.

7      **MS. McNABB:** Your Honor, it not in there.

8      **THE COURT:** Did you read my standing order on civil

9  discovery?

10      **MS. McNABB:** Yes, we did, Your Honor.

11      **MS. LOPEZ:** Yes, Your Honor. We apologize for that

12  oversight.

13      **THE COURT:** Okay. This is one -- this is one of

14  several issues that I really believe if the attorneys doing the

15  direct meet and confers couldn't reach agreement on, I would

16  have expected experienced trial counsel to reach agreement on,

17  and so I -- you're going to have to -- especially if you're

18  going to submit a discovery dispute for separate discussion,

19  which is fine, but follow the meet-and-confer obligations,

20  okay?

21      **MS. McNABB:** Your Honor, my colleague just pointed out

22  that we do, indeed, have the statement in the cover letter of

23  the joint statement. We did meet and confer, but we will make

24  sure that it is clear that we are complying not only with the

25  Northern District of California's guidelines but also Your

**PROCEEDINGS**

 1  Honor's standing order.

 2          **THE COURT:**  The attestation is only that the parties

 3  have met and conferred telephonically.  My requirement is that

 4  lead trial counsel meet and confer in person; and if they

 5  cannot meet and in person, by videoconference, all right?

 6          **MS. McNABB:**  Okay.  Understood.  Understood, Your

 7  Honor.

 8          **THE COURT:**  All right.  So there's no confusion, all

 9  right?  If this has to get escalated I want senior lawyers to

10  get involved before it gets presented to me, okay?  Everybody

11  understand that?

12          **MS. LOPEZ:**  Sure.  Understood.

13          **THE COURT:**  You're shaking your heads.  Okay.

14          So we fixed -- are we finished?  Attorney letter

15  finished?

16          All right.  The issue of what happens with withdrawn

17  privilege claims.  Let me ask you this:  When you produce -- is

18  the expectation that when you produce succeeding privilege log

19  updates as production goes on, on both sides, are they going to

20  be essentially new privilege logs, new Excel sheets or however

21  they're formatted, or are they going to be, like, edited

22  versions of a previous privilege log?

23          **MS. McNABB:**  I believe -- Your Honor, Kelly McNabb for

24  the plaintiffs.

25          It was plaintiffs' understanding that this would be a

**PROCEEDINGS**

1    cumulative log, which is why we asked for a description of when

2    that document that's either been downgraded or the privilege

3    has been withdrawn and it has been produced.  It should not be

4    a hard lift to do that.  It's commonly used and I'm not -- I

5    won't speak for defendants on how they envisioned the privilege

6    log being produced.

7            MS. LOPEZ:  Your Honor, I think that's correct for

8    almost all of defendants.  I'd have to -- I don't know if I

9    can --

10           THE COURT:  Go ahead and ask.

11           MS. LOPEZ:  Thank you.

12       (Brief pause.)

13           MS. LOPEZ:  Yes, Your Honor.  That will be fine.

14           THE COURT:  Okay.

15           MS. LOPEZ:  We can reflect the withdrawn.

16           THE COURT:  Great.  It applies to both sides, by the

17   way.

18           MS. LOPEZ:  Right.

19           THE COURT:  For everyone.

20           MS. McNABB:  Understood, Your Honor.

21           THE COURT:  All right.  We handled all of exclusions

22   from logging, or are there any other subissues under that?  I

23   think we handled everything.

24           MS. McNABB:  Yes, Your Honor.  I believe we've handled

25   everything from the exclusions.

1          **THE COURT:**  All right.  The -- I'll call it the --

2    maybe the precursor to a meet and confer procedure where

3    parties can't really -- they feel like they can't assess the

4    privilege from an initial privilege log.  As I understand, the

5    plaintiffs are proposing that there be a supplemental privilege

6    log within 21 days and then meet and confers.  But I read the

7    defendants say that they wouldn't produce a further description

8    and it sounds like you're not really disagreeing.

9          **MS. LOPEZ:**  Your Honor, if I may.

10          **THE COURT:**  Yeah.

11          **MS. LOPEZ:**  That offer was premised on a production of

12    a metadata log without separate categorization and creation of

13    descriptions because we understood plaintiffs' concern that

14    some metadata might not be sufficient, so we were willing, at

15    request, to provide up to a thousand -- or a reasonable

16    number -- of descriptions for such in an effort to narrow

17    disputes.  What are the documents we really care about?  We

18    will describe those for you.  We will give you more information

19    because metadata logs are easy to create.  They're quicker.  We

20    can get them to them faster.  But now if -- I think we have to

21    sort of go back and think about how we can do this once we

22    understand the sort of categories that plaintiffs are

23    envisioning.

24          **THE COURT:**  Well, as I understand, we are going to

25    get -- again, it's not that we're going to require, like,

```
 1   individualized attorney drafting these, just a dropdown menu

 2   with an extra column, right?

 3            MS. LOPEZ:  Your Honor, it actually doesn't quite --

 4   at least I'll speak for Snap -- it doesn't quite work that way.

 5   Once -- it just goes to a different set of people that have to

 6   review the document again and select the category.  So it's not

 7   as easy as:  Okay, we have this set of documents, we're going

 8   to generate the metadata log.  We're going to QC that metadata

 9   log because it contains subject lines, a lot of rich

10   information that could contain privileged information, so it's

11   not like it's that simple.  We think we're giving a lot of

12   information, but the selection of the categories is a separate

13   process.  It's a separate workflow.

14            THE COURT:  Well, let me put it this way:  If the

15   parties, either way, have a dispute as to an assertion of

16   privilege and one party challenges the other party's assertion

17   and asks for more information on a document or a set of

18   documents, the rules are very pretty clear the party asserting

19   the privilege has a burden of proving it.  So I'd assume it's

20   in everybody's who's asserting privilege their interest to

21   provide more information.  How you provide that additional

22   information, whether it's a supplemental log or a separate

23   description or a letter that -- with a chart in it, that's up

24   to you -- all right? -- but, you know, I'm going to expect the

25   parties to work reasonably in cooperating in providing extra
```

**PROCEEDINGS**

1   information if there's an assertion that the privilege was

2   incorrectly or at least unknowably -- not unknowably but, you

3   know, questionably asserted, and so if the party asserting the

4   privilege doesn't provide additional information, you run the

5   risk that I'm going to rule that the privilege wasn't properly

6   asserted.

7           **MS. LOPEZ:**  Yes, Your Honor, of course.

8           I think what we're trying to say is we were trying to

9   sort of create an easier path to providing information where --

10  you know? -- there hasn't been a description.  But if we're

11  going to the trouble of assigning descriptions, making those

12  choices, we can't just say, "Oh, just send us a thousand doc

13  IDs."  We'd want to confer.  We'd want to sort of understand

14  the basis of the concern.  There's going to be a little more

15  involved in that process.

16          **THE COURT:**  Okay.  Well, I -- again, I assume you all

17  are going to have a lot more important things to work on than

18  picking over assertions of privilege in every single document.

19          **MS. LOPEZ:**  Of course, Your Honor.

20          **THE COURT:**  There's a privilege log, so presumably you

21  will apportion your budget and time appropriately to not

22  fighting over things that are inconsequential.

23          So the only thing I can give you guidance there is I'm

24  not going to impose a specific process for, you know,

25  mandatorily exchanging supplemental information, but everybody

1  is warned that, you know, you've got to keep in mind who has

2  the burden of proof on establishing the existence of the

3  justification of the assertion of privilege.

4         **MS. LOPEZ:**  Understood, Your Honor.  Thank you.

5         **THE COURT:**  All right.

6         Okay.  Privilege log timing.  So if I understand

7  correctly, plaintiffs want a privilege log within 30 days of

8  when a document would have otherwise been produced and the

9  defendants want 60 days from previously produced documents and

10  45 days for all others.  Is the 60 days, is that different

11  from -- I don't -- is that different from the privilege log for

12  the documents?  Is that different from the documents that were

13  already produced by the State AGs, or what is that 60 days

14  referring to?

15         **MS. LOPEZ:**  Yes, Your Honor.  I think that's a

16  misunderstanding.  That 60 days was not meant to apply to

17  previously produced documents.

18         **THE COURT:**  Okay.

19         **MS. LOPEZ:**  So that was just meant to just sort of

20  make sure that we had enough time to produce documents here and

21  then to log them.

22         **THE COURT:**  Okay.  So you want 60 days to produce a

23  privilege log after you've done a tranche of production of

24  documents; is that what you're proposing?

25         **MS. LOPEZ:**  Correct, Your Honor.

PROCEEDINGS

1          THE COURT:  And plaintiffs wanted 30 days to get the

2      log after the documents are produced, correct?

3          MS. McNABB:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MS. McNABB:  We think using a metadata plus topic log

6      should be -- as an export from the review platform it should be

7      pretty quick to produce the log.  We're also dealing with, as

8      we've discussed earlier, discovery cutoff of December 20th.

9          THE COURT:  Well, you all asked for it, so --

10         MS. McNABB:  Fair, but --

11         MS. LOPEZ:  Your Honor, if I just may quickly respond.

12         THE COURT:  Sure.

13         MS. LOPEZ:  As I explained it's not a push of a button

14     especially now we have to do these category descriptions.

15     These things have to be QC'd to make sure the metadata is not

16     revealing privileged information, so it's really not simple.

17         THE COURT:  Okay.  Again, 30 days versus 60 days,

18     again, one of those issues I would have trusted an experienced

19     litigation counsel to be able to reach an agreement between

20     those two numbers, so presumptively the privilege log should be

21     produced within 45 days of a document production, right?

22              As far as I can tell in terms of your briefing, that's

23     everything that has been teed up in the briefs.  Is there

24     anything else that requires Court action on the privilege log

25     protocol?

PROCEEDINGS

1          **MS. McNABB:**  Yes, Your Honor.  Kelly McNabb for the

2     plaintiffs.

3          We had asked that for situations where a custodian is

4     being or a witness is being deposed that the deadline for a

5     privilege log be 20 days prior to the deposition to resolve any

6     potential challenges so that we do not need to seek to redepose

7     the witness.

8          **THE COURT:**  I'm not going to impose a hard deadline.

9     I think it is -- I think it's probably in my discovery standing

10    order.  I'm pretty sure I put something like this in the

11    discovery management order most recently.  I assume and I know

12    both parties are going to be talking about scheduling and

13    noticing of depositions.  Once depositions start getting

14    discussed, we can start talking about, you know, does this or

15    that particular individual's deposition need to be scheduled

16    later so that their privilege review can get done in time

17    before their deposition.

18         So I'm going to order the parties to take into account

19    this issue when scheduling depositions and work reasonably on

20    both ends getting the documents produced, getting the

21    privileged logs done and then scheduling the depositions in a

22    reasonable fashion so that nobody gets jammed at the end.

23    Okay?

24         **MS. McNABB:**  Understood, Your Honor.  Thank you.

25         **MS. LOPEZ:**  Thank you, Your Honor.

1        **MS. McNABB:**  The other minor issues, there --

2    defendants requested a section in their proposed protocol for a

3    waiver of -- basically a repeat of the 502(d) order.

4        There already has been a 502(d) order entered in this

5    case.  Plaintiffs don't think it's necessary to include an

6    actually different 502(d) order within the privilege log

7    protocol.

8        **THE COURT:**  I saw that.  I was curious why there was

9    a -- if there's an existing order, which I looked at, why is

10   there a need to refer to the existing order since it's in the

11   case; it's an existing order in the case?

12       **MS. LOPEZ:**  I think it's just a cross-reference to the

13   order.  We didn't think that was a conclusion.

14       **THE COURT:**  If it's not substantive, let's take that

15   out I think.  If the order -- I mean, obviously if the order

16   exists, somehow this protocol is not going to somehow supersede

17   or aggregate that order.  So I assume you're all going to be

18   filing all the orders in the case until they're otherwise

19   reversed or reviewed.

20       **MS. McNABB:**  Understood.

21       **THE COURT:**  Okay.

22       **MS. McNABB:**  The only other issue, Your Honor, is

23   something that I believe the parties can work out on the

24   modification or other section of the order.  But given that we

25   will be discussing, I think we can reach agreement on that

 1  provision.

 2          **THE COURT:**  I'm gratified to hear that.  Okay.

 3          **MS. LOPEZ:**  Thank you, Your Honor.

 4          **THE COURT:**  All right.  Anything further from the

 5  parties?

 6          **MS. HAZAM:**  Lexi Hazam for plaintiffs.

 7          Your Honor, I do have one matter to clarify, and I

 8  apologize for not raising this earlier.

 9          When Your Honor was indicating your rulings as to the

10  limits of discovery on the bellwether plaintiffs, Your Honor

11  had listed for interrogatories 15 for the school districts, 10

12  for minors, 7 for nonminors, which adds up to 32.

13          **THE COURT:**  Oh.  I did the math wrong.

14          **MS. HAZAM:**  And then Your Honor said RFAs should be

15  42, and I believe Your Honor may have meant 32 but wanted to

16  confirm.

17          **THE COURT:**  I think with the full range there, you'll

18  be able to hear me now.  32 is correct.

19          **MS. HAZAM:**  Thank you.  That's all I have.

20          **MS. SIMONSEN:**  I had one request for clarification on

21  the same limit.

22          Ashley Simonsen for the Meta defendants.

23          I think I heard you say that the 42 or, rather, 32,

24  would be split how the defendants would like among the school

25  district and the personal injury cases.  Is that to say that

PROCEEDINGS

```
 1   the defendants can allocate, say, 16 requests -- can determine
 2   that there will be a 16 requests-for-admission limit on school
 3   district plaintiffs and a 16 RFA limit on any given personal
 4   injury plaintiff, or did Your Honor intend to suggest something
 5   else?
 6          THE COURT:  I mean, again, assuming you were going to
 7   split them roughly equally anyway, I'm certainly happy to split
 8   the numbers for you if you can't reach agreement.  Do you want
 9   me to split the numbers?  I'm --
10          MS. HAZAM:  I actually did not understand Your Honor
11   to be suggesting that defendants would split them on their
12   prerogative earlier; I may have misunderstood.  I'm fine with
13   Your Honor splitting them for us.
14          THE COURT:  All right.  So let's use the numbers.
15   So -- let's get the math right.  That would mean 15 RFAs for
16   the school districts and then 17 RFAs for the PI/SD plaintiffs.
17          Do you need me to split those even more granularly?
18          MS. HAZAM:  No.  I'm sorry, Your Honor.  I think I'm
19   just not following the math.  We were at 32 for the RFAs, and I
20   believe Your Honor just listed 15, 17 and 17.
21          THE COURT:  No, no.
22          MS. HAZAM:  Okay.  Sorry.
23          THE COURT:  15 for the school districts.
24          MS. HAZAM:  Okay.
25          THE COURT:  And the remaining 17 for the PI
```

PROCEEDINGS

 1  plaintiffs.

 2          **MS. HAZAM:**  Understood.

 3          **THE COURT:**  I think I got the math right.

 4          **MS. HAZAM:**  Yes.  Thank you, Your Honor.

 5          **THE COURT:**  Okay.  Any other clarification in there?

 6          **MS. SIMONSEN:**  I may, Your Honor, just wish to consult

 7  with the defendants --

 8          **THE COURT:**  Sure.

 9          **MS. SIMONSEN:**  -- because it may make sense -- and I

10  would just want to present it to Your Honor if it does -- that

11  there actually be more RFAs allocated to the school district.

12  So if I may just take a moment to confer with the defendants.

13      (Brief pause.)

14          **MS. SIMONSEN:**  Your Honor, just to clarify, we

15  understand that Your Honor is ordering that we will have a

16  15-interrogatory limit for each individual school district

17  bellwether plaintiff, a 10-interrogatory limit for each

18  individual minor personal injury plaintiff, a 7-interrogatory

19  limit for each adult personal injury plaintiff.

20          We would propose that if there is a total of 32

21  requests for admission that we may serve on, I guess, any two

22  cases, one being a personal injury case and one being a school

23  district case that the number of RFAs be evenly divided between

24  the two so that we have 16 RFAs as the limit on the school --

25  on any given school district bellwether plaintiff and 16 RFAs

1  as the limit on any given personal injury plaintiff.

2       **THE COURT:**  That one different -- that one number

3  difference makes a difference?

4       **MS. SIMONSEN:**  I think -- I don't understand the

5  plaintiffs to be taking the position that it should be any

6  different.  I just think it probably makes more sense.  I think

7  we'd say probably, all else equal, we would take more on the

8  school districts than the personal injury plaintiffs, but we're

9  happy to just split it for the sake of simplicity.

10       **THE COURT:**  Any objection?

11       No objection.

12       Okay.  So 16 RFAs for the school district, 16 RFAs for

13  the combined personal injury and school district -- combined

14  personal injury minor and not minor.

15       **MS. SIMONSEN:**  Thank you, Your Honor.

16       **MS. HAZAM:**  Thank you, Your Honor.

17       **THE COURT:**  Okay.  All right.  Now anything further?

18       **MS. HAZAM:**  Nothing further for plaintiffs.

19       **MS. LOPEZ:**  Apologies, Your Honor.  I just realized we

20  didn't cover one thing, which is on the privilege log protocol

21  dispute, we had offered to log redacted documents so long as

22  that was a push of a button metadata, pure metadata log.

23       If we are to do -- I just -- it's better to get the

24  guidance from you now, Your Honor -- if we are to do category

25  descriptions, I just -- I don't see the point if plaintiffs

1  will get the document itself with just minor redactions --

2  they're going to have more than enough information, so I just

3  don't think that it makes sense to log redacted documents.

4  It's just going to add a lot of volume and time to prepare any

5  privilege logs.

6        **MS. McNABB:**  Your Honor, Kelly McNabb for the

7  plaintiffs.  This is a new proposal for us.  I would suggest

8  that we take this back with the additional issues that we are

9  taking under the meet and confer and discuss.

10        **THE COURT:**  Why don't you do that.

11        **MS. LOPEZ:**  Okay.  Thank you, Your Honor.

12        **THE COURT:**  Given the deadlines I put you under on

13  that earlier discussion about the privilege log issues, why

14  don't you send me a joint status report on where the privilege

15  log protocol stands no later than, say, Wednesday, March 6th.

16  Does that give you enough time?

17        **MS. LOPEZ:**  Thank you.

18        **THE COURT:**  Okay.  So I could know whether there's --

19  progress has been made and nothing that needs to be discussed

20  at the next DMC.  Okay?

21        Now anything further from the plaintiffs?

22        **MS. HAZAM:**  No, Your Honor.

23        **THE COURT:**  Okay.  Defendants?

24        **MS. SIMONSEN:**  Nothing further from defendants.  Thank

25  you, Your Honor.

PROCEEDINGS

1          THE COURT:  We are adjourned until the next hearing.

2    Thank you for all of your hard work.

3          THE CLERK:  We're off the record in this matter.

4    Court is in recess.

5          (Concluded at 4:18 p.m.)

6                         --oOo--

7

8

9                    CERTIFICATE OF REPORTER

10         I certify that the foregoing is a correct transcript

11    from the record of proceedings in the above-entitled matter.

12

13

14    _____      February 25, 2024
      JENNIFER L. COULTHARD, RMR, CRR               DATE
15    Official Court Reporter
      CA CSR#14457
16

17

18

19

20

21

22

23

24

25