IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**JOINT STATEMENT RE: STATE AGENCY DISCOVERY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

The parties respectfully submit this Joint Statement regarding their outstanding dispute over whether state entities other than the attorneys general are subject to party discovery. Pursuant to this Court's Standing Order for Discovery in Civil Cases and Civil Local Rule 37-1, the parties attest that they met and conferred telephonically and exchanged proposals several times before filing this Joint Statement.[1] Specifically, they met and conferred on February 20 and March 11, 2024, on the issues that are the subject of this letter. Lead trial counsel for the parties involved in the dispute attended the March 11, 2024 conferral. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

The parties will be prepared to address this dispute at the next Discovery Management Conference, currently set for March 21, 2024.

Dated: March 15, 2024

Respectfully submitted,

---

[1] Pursuant to the Court's standing order, the Parties have equally divided 5 single-spaced pages between Defendants and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-Discovery-Standing-Order-v1.2-2023_06_01-1.pdf.

**ROB BONTA**
Attorney General
State of California

 /s/ Joshua Olszewski-Jubelirer
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (510) 879-1300
Fax: (415) 703-5480
Joshua.OlszewskiJubelirer@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 /s/ Bianca E. Miyata
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*pro hac vice*
Assistant Section Chief, Deputy Attorney General
Gina F. Pittore (NJ Bar No. 323552019),

3

*pro hac vice*
Verna J. Pradaxay (NJ Bar No. 335822021),
*pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Gina.Pittore@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division of Consumer Affairs*

**COVINGTON & BURLING LLP**

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook*

*Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

## ATTESTATION

I, Joshua Olszewski-Jubelirer, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated:  March 15, 2024                                        */s/ Joshua Olszewski-Jubelirer*
                                                              *Counsel for the People of the State of California*

**Meta's Position:**  The State Plaintiffs' position that third-party Rule 45 subpoenas are the only mechanism by which Meta can obtain discovery of a named plaintiff is contrary to this Court's guidance at the February DMC, DMO 3, and federal law.

On February 23, 2024, in accordance with DMO 3, Meta sent the State AGs a list of state agencies that may possess information relevant to the claims or defenses.  Meta identified an average of eight agencies per State, including agencies responsible for mental and physical health, education, and children and families—subject matters that squarely relate to the States' claims.  *See, e.g.*, Multistate Compl. ¶ 849 (alleging Meta's social media services result in "mental and physical harms"); *id.* ¶ 315 (alleging services "interfere with young users' education").  Meta further identified agencies responsible for commerce and consumer protection—*i.e.*, those that regulate businesses like Meta and protect the consumers that Meta allegedly adversely affected.  *Id.* ¶ 12.

Although DMO 3 required the AGs to "inform Meta (by March 8, 2024) whether each state agency at issue will be represented by the corresponding AG Plaintiff's office," ECF No. 667, at 3, they have not done so.  Instead, the AGs declined to provide a substantive response for two-thirds of the identified agencies, claiming to be unable to determine whether they would provide legal services to those agencies until a subpoena is served.[2]  The AGs take this position even though a full two weeks before the March 8 deadline, Meta served the State Plaintiffs (through the AGs) with discovery requests seeking documents from the very agencies that Meta identified.[3]  In other words, even though the State Plaintiffs know what documents Meta is seeking, the AGs refuse to say whether they will represent the agencies in responding to those document requests until Meta serves those same requests via hundreds of individual subpoenas.  This requirement that Meta serve a subpoena to determine if one is even necessary would render DMO 3 a nullity.  Even as to the 61 agencies in 9 states that the AGs committed to represent, the AGs refused to agree that these agencies can be considered parties for purposes of responding to discovery, again demanding that Meta subpoena each agency individually.

The State Plaintiffs' position is contrary to law, even where the AGs elect not to represent a particular state agency in responding to discovery.  Almost without exception, the named plaintiffs are the States themselves, not the AGs.  *See* Complaint ¶¶ 11, 21; *see also, e.g.*, ECF Nos. 9, 12, 29 (appearances of counsel).[4]  Courts across the country have determined that AGs, as the "law

---

[2] Plaintiffs did not disclaim an ability to provide this information when ordered to do so at the February 22 DMC, *see* Tr. at 34:11-35:5, or otherwise seek relief from DMO 3.

[3] In some instances, the AGs even declined to commit to representing agencies that (a) they are **_legally obligated_** to represent, s*ee, e.g.,* N.Y. Exec. Law § 63(1), or (b) are required by law to "fully cooperate with the Attorney General" in prosecuting cases under the relevant consumer protection statute, Ky. Rev. Stat. § 367.160.

[4] Even as to Florida, Maryland, and New Jersey, where suit has been brought formally on behalf of a state subdivision, discovery of state agencies remains party discovery.  This is so because states are singular entities, meaning that a suit by a state agency is in substance a suit by the state itself.  *See Compagnie Francaise d'Assurance v. Phillips Petrol. Co.*, 105 F.R.D. 16, 35 (S.D.N.Y. 1984) (where an "agency of government institutes suit, any obligation to disclose relevant information extends to the government qua government, requiring disclosure of all documents in

firm[s]" for their respective States, must "respond to and produce discovery on behalf of" their State clients, "including [their] agencies" (whose documents are of course within the possession, custody, and control of the State). *Washington v. GEO Grp.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018); *accord State v. Purdue Pharma, L.P.*, 2020 WL 13566522, at *3 (N.M. Dist. July 22, 2020) (in case brought by New Mexico, holding that "Plaintiff is obligated to respond to discovery requests based on information and documents available to state agencies, departments and boards"); *In re Opioid Litigation*, 2019 WL 4120096, at *1–2 (N.Y. Sup. Ct. Aug. 14, 2019) (in litigation brought on behalf of "the People of the State of New York," ordering AG to "search and produce documents from agencies likely to possess responsive documents"); *South Carolina v. Purdue Pharma L.P.*, No. 2017-CP-40-04872, at 2 (Ct. Com. Pleas, July 5, 2019) (similar, and rejecting *Chilcott* for failing to recognize AG's "interconnectedness" with agencies).[5]

The State Plaintiffs' cases are readily distinguishable, as they did not involve litigation under state consumer protection statutes authorizing recovery of civil penalties that in many instances must revert to the States' general funds. The State Plaintiffs cannot disclaim participating as parties in the litigation for purposes of discovery, while also seeking civil penalties that would be paid to them and appropriated to any agency. *Compare United States v. Novartis Pharms. Corp.*, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) (reflecting AGs' agreement that certain agency discovery was party discovery); *People ex rel. Lockyer v. Superior Ct.*, 19 Cal. Rptr. 3d 324 (Cal. Ct. App. 2004) (seeking injunctive relief under optometry laws); *United States v. Am. Express Co.*, 2011 WL 13073683 (E.D.N.Y. July 29, 2011) (seeking injunctive relief and corrective advertising under Sherman Antitrust Act); *N.Y. ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 262 (N.D.N.Y. 2006) (breach-of-contract action for compensatory damages), *with, e.g.*, Cal. Bus. & Prof. Code § 17206(c)(1) ("If the action is brought by the Attorney General, one-half of

---

its possession, custody or control, not just those materials in the immediate possession of the particular agency-plaintiff"); *Bd. of Educ. of Shelby County v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (where TN AG was named as a party, requiring him to "respond appropriately to discovery requests on behalf of the entities of the state government that he represents," because "a state's attorney general, acting as the state's legal counsel, maintains control over [the state's] documents for purposes of Rule 34"); *United States v. AT&T*, 461 F. Supp. 1314, 1333–34 (D.D.C. 1978) (though "[t]he Attorney General . . . [is] responsible for instituting and conducting the criminal and civil litigation of the United States," "it hardly seems reasonable to insulate the entire government, other than the Attorney General's Office, from the direct discovery process"). Indeed, Florida, Maryland, and New Jersey (like the other State Plaintiffs) assert claims under COPPA, which may only be brought by "the State." 15 U.S.C. § 6504. In short, the AGs are not suing in their personal capacity, but rather **as the State**.

[5] *See also League of United Latin Am. Citizens v. Abbott*, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022) ("For the purposes of party discovery . . . , 'the State of Texas' is made up of state executive agencies or officials who have information that is relevant to the factual basis for the claim."); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410 (E.D. Pa. 2021) (in case brought by Commonwealth of Pennsylvania, rejecting argument that "documents must be obtained by the issuance of nonparty subpoenas upon the agencies"); *United States v. Nat'l Broad. Co.*, 65 F.R.D. 415, 419 (C.D. Cal. 1974) ("[W]hile the Department of Justice upon proper authorization by the Attorney General brings antitrust actions, the Department is not the 'plaintiff.' The Department of Justice is the plaintiff's counsel.").

the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund."); Colo. Rev. Stat. Ann. § 6-1-112 (civil penalty paid "to the general fund of this state"); Fla. Stat. Ann. § 501.2075 ("A civil penalty so collected shall accrue to the state and shall be deposited as received into the General Revenue Fund unallocated."); Kan. Stat. Ann. § 50-636(c) ("Civil penalties . . . recovered by the attorney general shall be paid into the general fund of the state."); Minn. Stat. Ann. § 8.31, subd. 3.

The State Plaintiffs cannot shirk their discovery obligations by incorrectly framing the States' component agencies as non-parties. Not only is the State Plaintiffs' legally-unsupported, but it also would have significant practical consequences, requiring Meta to serve and negotiate 275 separate third-party subpoenas (a time-consuming, burdensome undertaking regardless of whether the AGs identify points of contact), and tee up any discovery disputes with the Court on an agency-by-agency basis. And it would improperly shift the discovery burden to Meta. As a party to this case, if a State objects to Meta's discovery requests, it must "show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). But if Meta must issue subpoenas, the burden would unfairly shift to Meta to demonstrate that it took steps to shield the State's agencies from "undue burden or expense." *Id.* R. 45(d)(1).

Meta was and remains prepared to compromise on reasonable and proportionate limits on the scope or volume of entities subject to party discovery, but the AGs' position has remained unchanged. Meta therefore respectfully requests an order that all State entities (or, alternatively, all entities Meta identified pursuant to DMO 3) are subject to party discovery.

**State Attorneys General's Position:** Meta asks this Court to hold that the State AGs' Complaints opened the door to party discovery of an unlimited number of state agencies. In doing so, Meta urges this Court to ignore the nature of the claims in this case, precedent, the Federal Rules of Civil Procedure, and ethical rules governing law firms. If Meta seeks information from other state agencies, it must use non-party Rule 45 subpoenas, not "party" discovery. *See, e.g.*, *United States v. Am. Express Co.*, No. 10-04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011) (holding in civil enforcement action by 17 State AGs that party discovery could not be used to obtain information directly from state agencies).

This is a civil law-enforcement action brought by 35 State AGs in their sovereign capacity to protect their residents and deter and redress Meta's misconduct. The State AGs are authorized to prosecute violations of their consumer protection laws and, with few exceptions, do so on their own behalf without representing or collaborating with a client agency.

This case is about Meta's conduct, and whether Meta violated the law. Nonetheless, Meta is attempting to make this case about the States. It identified nearly 300 state agencies from which it may seek information, then immediately served RFPs seeking documents from an unbounded set of state entities and employees, including state legislatures. (The response time for the RFPs has not passed, and the State AGs reserve all rights to object on grounds including but not limited to relevance, burden, and proportionality.) None of these agencies is a named plaintiff in this action. Nor did the State AGs allege specific harm or seek remedies on behalf of these agencies. Each listed agency is controlled by a Governor or other elected official, not a State AG. Accordingly, whether a State AG's office ultimately acts as counsel to a listed agency in responding to a subpoena does not alter the agency's nonparty status in this action. And as the State AGs do not

have possession, custody, or control over documents of other agencies, the State AGs are not authorized or able to produce another agency's materials. Meta cannot seek this information through party discovery, but instead must issue Rule 45 subpoenas.

### I.   ONLY THE STATE ATTORNEYS GENERAL ARE PARTIES FOR DISCOVERY

The law is clear. When a State AG brings an enforcement action under its constitutional or statutory authority to protect the public, every other state governmental entity is not also a party to that action. *See, e.g.*, *Am. Express Co.*, 2011 WL 13073683, at *2. "[S]tate agencies, in the ordinary course of their duties, are distinct and separate governmental entities, third parties under the discovery statutes that can be compelled to produce documents only upon a subpoena." *People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct. App. 2004).

"For reasons of federalism and comity, [courts] give great deference to the State and its Legislature to define how governmental entities are to be separate and distinct and how they may relate to one another as a whole; this is 'uniquely an exercise in state sovereignty.'" *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 264 (N.D.N.Y. 2006) (cleaned up). Courts rightly refuse to "aggregate" state agencies into one monolithic party for discovery purposes. *Id.*; *see also, e.g.*, *Colorado v. Warner Chilcott Holdings*, No. 05-02182, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007). Accordingly, courts regularly require defendants to utilize third-party discovery if they seek information from state agencies. Meta's contrary citations are all inapposite or distinguishable, including cases involving foreign/federal plaintiffs, states as defendants, or damages sought for state agencies. The South Carolina case was also abrogated by state statute (see below). Further, state fiscal policy is irrelevant to the scope of party discovery.

Despite clear precedent, Meta makes much of the styling of the State AGs in the caption of their Complaints. But the mere styling of some State AGs in the caption as "the state" is common to many law-enforcement actions, *see, e.g., People v. Ashford Univ., LLC*, ___ Cal. Rptr. 3d ___, 2024 WL 1007649, at *19 (Cal. Ct. App. 2024). This does not mean that all state executive agencies, entities, governors, and legislatures are made parties to this case. *See United States v. Novartis Pharms. Corp.*, No. 11-8196, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014). The interpretation urged by Meta ignores rules and tradition regarding the styling of government parties to a case and would yield absurd results.

### II.   THE STATE ATTORNEYS GENERAL DO NOT HAVE CONTROL OVER THE MATERIALS OF OTHER STATE AGENCIES

To seek discovery of state agency materials through the State AGs, Meta must establish that the State AGs have "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), over the materials of those agencies. *See United States v. Int'l Union of Pet. & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989). Yet, Meta has made no showing (and cannot) that the State AGs have "the legal right to obtain documents upon demand" from any of the outside agencies from which Meta may seek materials. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

The constitutions and laws of most states establish a "dual executive," in which Governors and State AGs are independently elected and control separate governmental functions. *See Am. Express Co.*, 2011 WL 13073683, at *2. Generally, State AGs oversee the States' legal affairs, and enforce

9

specific laws. Governors typically control executive branch agencies. Although State AGs often act as legal counsel for state agencies, most do not have the authority to control those agencies. They do not set agency priorities, cannot discipline agency employees, and do not have the practical ability to produce agency documents.

For this reason, State AGs neither legally nor practically have "custody, possession, or control" of outside agency materials. Each of the 275 state agencies identified by Meta is controlled by a Governor or other separately elected official. "[T]he State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client." *Am. Express Co.*, 2011 WL 13073683, at *3; *accord, e.g.*, *Lockyer*, 19 Cal. Rptr. 3d at 337; 2023-24 Appropriation Act, Part 1B, § 59.19, 2023 S.C. Acts 477, 884 (South Carolina Attorney General does not have control of state agency documents in enforcement actions); Del. Code Ann. tit. 29, § 2508(b) (same for Delaware AG). Thus, the State AGs cannot be required to produce outside agency materials.

### III. IT IS IRRELEVANT THAT A STATE ATTORNEY GENERAL'S OFFICE MAY SOMETIMES REPRESENT STATE AGENCIES IN RESPONDING TO A SUBPOENA

Finally, it is legally and practically irrelevant that some outside state agencies may sometimes utilize a State AG's Office for legal representation when the agency is party to a lawsuit or responds to a subpoena. This does not make those agencies a party to this litigation, which was brought independent of those agencies, or give the State AGs control over agency materials. "[T]he State Attorneys General play a very unique role—that of both law firm and policymaker. In their representative capacity of the agencies, they act in many ways as retained private counsel—at their client's behest." *Am. Express Co.*, 2011 WL 13073683, at *3. And private counsel in litigation would properly object and insist that an adversary seeking documents belonging to a non-party client utilize Rule 45. *Id.* Not only does the law require that Meta use Rule 45 subpoenas to seek material from state agencies, it is also practically expedient, leading to efficient resolutions of disputes between Meta and those agencies. Requiring Meta "to seek documents and witnesses directly from the involved state agencies will allow those agencies to protect their particular interests, of which the People may have no knowledge, expertise or understanding." *Lockyer*, 19 Cal. Rptr. 3d at 338.

The organizational structure and division of the State AGs' Offices further illustrates this point. Like any law firm, each AG's Office represents a variety of clients. The AGs' Offices are composed of separate units of representation to avoid ethical problems arising from conflicts of interest amongst their clients and to comply with Model Rule of Professional Conduct 1.7, 1.9 and their state analogs. Public entities' interests are not always aligned and at times agencies may even litigate against each other to further their respective, unique goals. For this reason, AGs' Offices create boundaries and protect the confidentiality of information among attorney units that represent different clients. Just like in a private law firm, one AG Office attorney's representation of a client cannot necessarily be imputed to another attorney in that office.

In the spirit of cooperation, the State AGs offered to assist Meta in identifying points of contact at state agencies with whom Meta could discuss service of Rule 45 subpoenas—assistance not required under the Federal Rules. *See Warner Chilcott*, 2007 WL 9813287, at *6. Meta rejected this compromise, necessitating this briefing and Court involvement.