**Appendix A:  Statements of Opinion Not Actionable**

| State | Authority | State AG Response[1] |
|---|---|---|
| Alabama | *Russell v. Wilson,* 991 So. 2d 745, 748 (Ala. Civ. App. 2008) (Alabama) ("[A] buyer must demonstrate that a seller's statements as to the condition of the property were representations of fact and not mere statements of opinion amounting to nothing more than sales talk or mere puffery."). | Alabama is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Arizona | *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 827 (D. Ariz. 2016) ("a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."). | Arizona does not dispute the doctrine of puffery, but rather its applicability to this case. |
| California | *Elias v. Hewlett-Packard Co.,* 903 F. Supp. 2d 843, 854–55 (N.D. Cal. 2012) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."). | California does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Colorado | *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 436 (Colo. App. 2006) (under Colorado law, puffery "represents a statement of opinion, the meaning of which would depend on the speaker's frame of reference, such as mass produced housing versus a custom built home. It is not a specific representation of fact subject to measure or calibration.") | Colorado does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Connecticut | *NetScout Systems, Inc. v. Gartner, Inc.*, 334 Conn. 396, 424 & n.15(2020) (explaining that "nonactionable puffery" is "an exaggeration or overstatement expressed in broad, vague, and commendatory language" and that "advertising that speaks | Connecticut does not dispute the doctrine of puffery, but rather its applicability to this case. |

---

[1]  Idaho, Nebraska, New Jersey, and New York were not included in Defendants' Appendix A, but maintain, similarly to the states listed in the Appendix, that they are not disputing the doctrine of puffery, but rather its applicability to this case.

| | | |
|---|---|---|
| | generically to caliber of defendant' product is 'classic puffery' and incapable of being proved true or false") | |
| Delaware | *Solow v. Aspect Res., LLC*, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004) ("[T]o the extent that plaintiff is arguing that any statements of opinion rise to the level of a fraudulent representation, statements such as, 'Aspect has the skills, experience, and resources to successfully and quickly capitalize on the 3D opportunity,' are mere puffery and cannot form the basis for a fraud claim." (footnotes omitted)). | Delaware does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Florida | *Westgate Resorts, LTD. v. Reed Hein & Assoc., LLC.*, 2018 WL 5279156, at *5 (M.D. Fla. October 24, 2018) (the Court "cannot conclude, as a matter of law, that the statements at issue constitute mere opinion or puffery" and denied Defendants' motion to dismiss the FDUTPA count.) | Florida does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Georgia | *Villalobos v. Atlanta Motorsports Sales, LLC*, 355 Ga. App. 339, 346 & n.1 (2020) (affirming judgment on the pleadings on Georgia Fair Business Practices Act claim after concluding buyer could not have justifiably relied on alleged oral misrepresentations made by seller's salesperson which amounted to nonactionable opinion and "puffery") | Georgia does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Hawai'i | *Ludlow v. Lowe's Companies*, Inc., 2014 WL 12580233, at *12 (D. Haw. Jan. 17, 2014) ("Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."). | Hawai'i does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Indiana | *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013) ("puffery consists of 'empty superlatives on which no reasonable person would rely,' or 'meaningless sales patter...'") (citing *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999)). | Indiana does not dispute the doctrine of puffery, but rather its applicability to this case. |

| Iowa | *Adrian Trucking, Inc. v. Navistar, Inc*., 609 F. Supp. 3d 728, 750 (N.D. Iowa 2022) (unactionable puffery occurs when a statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained). | Iowa is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
|---|---|---|
| Illinois | *Castaneda v. Amazon.com, Inc.*, --- F. Supp. 3d ---, 2023 WL 4181275, at *7 (N.D. Ill. June 26, 2023) (statements that are "not objectively verifiable" are not actionable). | Illinois does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Kansas | *Ormsby v. Imhoff & Assocs, P.C.*, 2014 WL 4248264, at *10 (D. Kan. Aug. 27, 2014) (statements which are "subjective in nature and non-specific" are "innocent puffing" and "not actionable") (citing *Baldwin v. Priem's Pride Motel*, 580 P.2d 1326 (Kan. 1978)). | Kansas does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Kentucky | *Naiser v. Unilever U.S., Inc*., 975 F. Supp. 2d 727, 734 (W.D. Ky. 2013) (seller who "states an opinion or expresses a judgment about a thing as to which [both the buyer and seller] may each be expected to have an opinion and exercise a judgment" is not liable). | Kentucky does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Louisiana | *Dyson, Inc. v. Oreck Corp.*, 2009 WL 537074, at *6 (E.D. La. Mar. 4, 2009) ("Puffery is a non-actionable statement of general opinion that comes in two forms: '(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion.'"). | Louisiana does not dispute the doctrine of puffery, but rather its applicability to this case. |

| Maine | *State v. McLaughlin,* 235 A.3d 854, 859 (Me. 2020) (considering whether Defendant's "initial representations about his ability to complete the work were mere 'puffery,' exaggerating or overselling his ability to convince the victims to hire him," but noting that the record evidence was sufficient to support the jury's verdict irrespective of any puffery). | Maine does not dispute the doctrine of puffery, but rather its applicability to this case. |
|---|---|---|
| Maryland | *Singh v. Lenovo (United States) Inc.,* 510 F. Supp.3d 310, 330 (D. Md. 2021) ("A statement is considered non-actionable puffery if a claim is 'extremely unlikely to induce consumer reliance,' while 'quantifiable' statements and 'misdescriptions of specific or absolute characteristics of a product' are actionable." (internal citations omitted)). | Maryland does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Massachusetts | *Valley Children's Hosp. v. Athenahealth, Inc.*, 2023 WL 6065800, at *5 (D. Mass. Sept. 18, 2023) (Statements that are "too vague and immaterial" are non actionable puffery). | Massachusetts is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Michigan | *Mahindra & Mahindra Ltd. v. FCA US LLC*, 2021 WL 323253, at *5 (E.D. Mich. Feb. 1, 2021) (Unactionable puffery occurs when vague phrases are "nothing more than a mere expression of opinion"). | Michigan does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Minnesota | *Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861, at *10 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) (statements are not actionable when they are "too vague to be proved or disproved"). | Minnesota does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Missouri | *Tucker v. Gen. Motors LLC*, 58 F.4th 392, 398 (8th Cir. 2023) (Missouri) ("merely exaggerated boasting or highly subjective claims of product superiority" are unactionable puffery). | Missouri does not dispute that the doctrine of puffery is an open question that its courts have not explicitly decided, but rather its applicability to this case. *See Hurst v. Nissan N. Am., Inc.*, 529 S.W.3d 322, 325 (Mo. 2017) |

| | | |
|---|---|---|
| | | (stating "[t]he question of whether "puffery" is actionable under the MMPA . . . is an interesting question worthy of study. But that question need not be decided in this case" because it assumed terms like "luxury" or "premium" "are sufficiently factual for this Court to leave to a jury the questions of whether those representations were false in a particular case."). However, regulations interpreting the Missouri Merchandising Practices Act clearly capture such conduct. *See* Mo. Code Regs. tit. 15, § 60-9.010(1)(A) (defining "assertion" as including "words, conduct or pictorial depiction, and may convey past or present fact, law, value, *opinion*, intention or other state of mind" (emphasis added)). |
| Nevada | *Bevers v. D.R. Horton, Inc.*, 2011 WL 294369, at *2 (D. Nev. Jan. 26, 2011) ("A statement is not actionable if it is merely an expression of opinion, an estimate of value, or 'mere puffery.'"). | Nevada is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| North Carolina | *Glob. Hookah Distribs. v. Avior, Inc.*, 401 F. Supp. 3d 653, 659 (W.D.N.C. 2019) ("The line between corporate optimism and material statements falls where the statements at issue were specific factual allegations that were not simply sales pitches but rather can be proven true or false" (internal quotation marks omitted)) | North Carolina does not dispute that some lower courts have applied the doctrine of puffery to private deception claims under the Unfair or Deceptive Trade Practices Act ("UDTPA"). However, the North Carolina Supreme Court has explained that the UDTPA "was needed because common law remedies had proved often ineffective," in part because |

| | | "[t]ort actions for deceit in cases of misrepresentation . . . were subject to the defense of 'puffing.'" *Marshall v. Miller*, 276 S.E.2d 397, 400 (N.C. 1981).<br><br>Moreover, the defense of puffery goes to the reasonableness of a plaintiff's reliance. *Solum v. Certainteed Corp.*, 147 F.Supp.3d 404, 411–12 (E.D.N.C. 2015). Private plaintiffs must allege reasonable reliance. *See* N.C. Gen. Stat. § 75-16 (permitting suit by "injured" plaintiff"); *Bumpers v. Cmty. Bank of Va.*, 747 S.E.2d 220, 226 (N.C. 2013). The Attorney General is not required to do so. See N.C. Gen. Stat. § 75-15; *State ex rel. Edmisten v. Challenge, Inc.*, 284 S.E.2d 333, 339 (N.C. Ct. App. 1981) (in a public enforcement action, "[i]t is not necessary to show actual injury has resulted, but merely that the act or practice complained of adversely affects the public interest"). |
| North Dakota | *Dahl v. Messmer*, 719 N.W.2d 341, 345 (N.D. 2006) ("statements of opinion . . . have not been actionable even though they are false" because they are non-actionable puffery) | North Dakota does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Ohio | *Davis v. Byers Volvo*, 2012-Ohio-882, ¶ 39 ("mere boasting" would be interpreted by a reasonable consumer as "a general claim of superiority, which constitutes puffery and is not actionable") | Ohio does not dispute the doctrine of puffery, but rather its applicability to this case. |

| Oregon | *Andriesian v. Cosm. Dermatology, Inc.,* 2015 WL 1638729, at *4 (D. Or. Mar. 3, 2015) ("'[G]eneralized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely.' Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir.2003) (holding that a company's statements 'generally describing the 'high priority' [it] placed on product development and alluding to marketing efforts" that suggested the product was almost complete and would be released could not form the basis for a fraud or negligent misrepresentation claim). The court may determine as a matter of law whether a statement is puffery.'") | Oregon does not dispute the doctrine of puffery, but rather its applicability to this case. |
| --- | --- | --- |
| Pennsylvania | *Kovalev v. Lidl US, LLC,* 647 F. Supp. 3d 319, 352–53 (E.D. Pa. 2022) ("Where the impression created by the [advertising] statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery."). | Pennsylvania does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Rhode Island | *A.J. Amer Agency, Inc. v. Astonish Results, LLC,* 2014 WL 3496964, at *20 (D.R.I. July 11, 2014) ("rosy statements about future performance amounts to 'puffery' and is not actionable"). | Rhode Island does not dispute the doctrine of puffery, but rather its applicability to this case. |
| South Carolina | *Clarkson v. Orkin Exterminating Co.,* 761 F.2d 189, 191 (4th Cir. 1985) ("[a] statutory prohibition of deceptive practices simply does not reach expected puffing of a vendor's product nor authorize an award of damages solely on the basis of testimony from a competitor that the product is ineffective."). | South Carolina does not dispute the doctrine of puffery, but rather its applicability to this case. |
| South Dakota | *Schmaltz v. Nissen,* 431 N.W.2d 657, 661 (S.D. 1988) ("An affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."). | South Dakota does not dispute the doctrine of puffery, but rather its applicability to this case. |

| Tennessee | *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) ("statements of opinion or intention are not actionable. . . . Likewise, puffing or other sales talk is generally not actionable."). | Tennessee is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
|---|---|---|
| Texas | *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) ("These statements were not misrepresentations of material fact but merely 'puffing' or opinion, and thus could not constitute fraud."). | Texas is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Utah | *Boud v. SDNCO, Inc.*, 2002 UT 83, ¶ 14, 54 P.3d 1131, 1135 ("To qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false."). | Utah is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Vermont | *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, 951 F. Supp. 2d 592, 603 (D. Vt. 2013) ("[m]isrepresentations involving facts are actionable while those involving opinions are not.") | Vermont is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Virginia | *Graham v. RRR, LLC, 202 F. Supp. 2d 483, 491 (E.D. Va. 2002)* ("As a general rule, 'fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated upon unfulfilled promises or statements as to future events.'"). | Virginia does not dispute the doctrine of puffery, but rather its applicability to this case. |
| Washington | *Babb v. Regal Marine Indus., Inc.,* 179 Wash. App. 1036 (2014) ("General, subjective, unverifiable claims about a product or service are 'mere puffery' that cannot give rise to false advertising or, in this context, an unfair or deceptive act." (internal citation omitted)). | Washington does not dispute the doctrine of puffery, but rather its applicability to this case. |

| Wisconsin | *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 171-72 (2004) ("exaggerations reasonably to be expected of a seller as to the degree of quality of his product" is non-actionable puffery). | Wisconsin does not dispute the doctrine of puffery, but rather its applicability to this case. |

**Appendix B:  Materiality Requirement**

| State | Authority | State AG Response[2] |
|---|---|---|
| Arizona | *In re Arizona Theranos, Inc. Litig.*, 2023 WL 3246811, at *5 (D. Ariz. May 4, 2023) ("the ACFA broadly prohibits the misrepresentation or omission of any material fact in connection with the sale or advertisement of consumer goods and services."). | *See* Opp. p. 30 n.27 noting that Arizona requires only deceptive omissions, not affirmative misrepresentations, to be material; Ariz. Rev. Stat. Ann. § 44-1522; *accord, e.g.*, *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (Ariz. 2012) (distinguishing omission from act). |
| California | *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 327 (2022) (assuming that "a materiality standard is implicit in the likelihood of deception standard applicable in all fraudulent and deceptive advertising cases") | *See* Opp. p. 30 n.29; *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 326–28 (2022) (noting that there is no materiality requirement to determine deception under California's Unfair Competition law, but that materiality can bear on standing for private plaintiffs or in class actions, not Attorney General Actions). |

---

[2] Although Meta identified New York and New Jersey as two of the 18 states it believes has a materiality requirement, and Nebraska as a state that it believes incorporates the FTCA's materiality requirement, none of these states are named in this appendix. Should Meta reprise this argument, however, these states have provided relevant citations for the court.

Nebraska: No court in Nebraska has held that materiality is a requirement under the Nebraska Consumer Protection Act.

New Jersey: *Leon v. Rite Aid Corp.*, 774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ("[I]t is not necessary that plaintiff show . . . that the misrepresentation was of material fact" when bringing a deception claim under New Jersey's Consumer Fraud Act.).

New York: *People v. Trump*, 2023 WL 630 7177, at *15 (N.Y. Sup. Ct., Sept. 26, 2023) (holding that materiality is not a requirement under N.Y. Exec. Law § 63(12)) and *Gaidon v. Gaurdian Life Ins. Co. Of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (treating materiality as a question of fact rather than a question of law when evaluating claims under Gen. Bus. Law § 349).

| Colorado | *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) ("a false representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers."). | *See* Opp. p. 30 n.30, clarifying the holding of *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (explaining that only some claims under the Colorado Consumer Protection Act require that false representations "have the capacity or tendency to attract consumers"). |
|---|---|---|
| Connecticut | *State v. Moody's Corp.*, 2012 WL 2149408, at *2 (Conn. Super. Ct. May 10, 2012) (State required to allege "that the misleading representation, omission, or practice was material") | Connecticut does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |
| Delaware | *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529, at *9 (Del. Super. Ct. July 10, 2002) ("The CFA 'incorporates the principle that a negligent misrepresentation is sufficient to violate the statute,' and for a misrepresentation to be negligent it must be material.") | *See* Opp. p. 30 n.30, clarifying that *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529 (Del. Super. Ct., July 10, 2022) is not relevant to Delaware's Count XI.<br><br>*See also* Opp. p. 30 n.27, noting that Delaware requires only deceptive omissions, not affirmative misrepresentations, to be material, Del. Code Ann. tit. 6, § 2513(a). |
| Florida | [*materiality requirement comes from incorporated FTCA standard*]<br><br>Fla. Stat. Ann. § 501.204(2) ("It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [subsection] 5(a)(1) of the Federal Trade Commission Act."). | Florida does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |
| Georgia | Follows the FTCA standard, which makes materiality a necessary element of a deceptive practices claim. *See, e.g., F.T.C. v. Verity* | No state court in Georgia has held that materiality is a requirement of actions brought by the Attorney General under the Georgia Fair |

|  | *Int'l Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) ("the representation, omission, or practice [must be] material") | Business Practices Act (Count XII). To the extent the Court would apply such a requirement, Georgia notes that the States' Opposition adequately addresses how that requirement has been met. |
|---|---|---|
| Hawaiʻi | *State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 152 Haw. 418, 443 (2023) ("Materiality is an essential element of a . . . deceptive acts violation."). | Hawaiʻi does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |
| Indiana | *Meta is not aware of case law in Indiana addressing the materiality requirement either way, but respectfully submits that Indiana would follow the majority rule.* | *See* Opp. p. 30 n.27 noting that Indiana does not contain any express materiality element.<br><br>No state court in Indiana has held that there is a materiality requirement to bring a deceptive claim under the Indiana Deceptive Consumer Sales Act (Count XVIII). |
| Illinois | *People ex rel. Madigan v. United Const. of Am., Inc.*, 981 N.E.2d 404, 409 (Ill. App. 2012) (to state a claim, State must "demonstrat[e] that a defendant misrepresented a material fact"). | Illinois does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |
| Kansas | *York v. InTrust Bank, N.A.*, 265 Kan. 271, 290 (1998) (claim requires "any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact") | *See* Opp. p. 30 n.27, noting that Kan. Stat. Ann. § 50-626 (Count XX) requires materiality for some prongs, but not others, such as § 50-626(b)(1); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 615 (D. Kan. 2014) (holding that misrepresentation claims under the Kansas Consumer Protection Act do not have a materiality requirement, only omissions claims). |

| Kentucky | | *See* Opp. p. 30 n.27 noting that Kentucky does not contain any express materiality element. |
| | [*materiality requirement comes from incorporated FTCA standard*] | *See* Opp. p. 31 n. 31 noting that the Kentucky Supreme Court in *Morgan v. Blue Cross & Blue Shield*, 794 S.W.2d 629, 632 (Ky. 1989) compared the language of the Kentucky Consumer Protection Act (Count XXII) to the FTCA for the purpose of determining constitutionality, not to apply the FTCA standard or impose a materiality requirement for state deception claims. |
| | *Morgan v. Blue Cross & Blue Shield of Kentucky, Inc.*, 794 S.W.2d 629, 632 (Ky. 1989) ("The [Kentucky Supreme] Court . . . determined that the language of Section 5 of the Federal Trade Commission Act [15 U.S.C. § 45(a)(1)] was comparable to Kentucky law."). | |
| Louisiana | [*materiality requirement comes from incorporated FTCA standard*] | See Opp. p. 30 n.27 noting that Louisiana does not contain any express materiality element. |
| | La. Stat. Ann. § 51:1406(4) ("The provisions of this Chapter shall not apply to: … (4) Any conduct which complies with section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C., 45(a)(1)], as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations."). | No state court in Louisiana has held that materiality is a requirement under the Louisiana Unfair Trade Practices Act (Count XXIII). |
| Maine | *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005) ("An act or practice is deceptive if it is a material representation.") | Maine does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |
| Michigan | *In re OnStar Cont. Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (requiring that that "the defendant made a material misrepresentation that was false"). | *See* Opp. p. 30 n.27, noting that Michigan Comp. Laws Ann. section 445.903 requires materiality only for subsections (1)(s), (bb), and (cc), not the other prongs also cited in Count XXV. |

| | | |
|---|---|---|
| | | *See also* Opp. p. 30 n.29, citing *Brownlow v. McCall Enters., Inc.,* 888 N.W. 2d 295, 306 (Mich. Ct. App. 2016) (limiting the applicability of *In re OnStar Cont. Litig.* to clarify that the materiality requirement deriving from common law fraud will only be incorporated where materiality is an explicit element of subsections of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903(1)(s),(bb),(cc), but not where the subsections do not explicitly contain a materiality requirement, Mich. Comp. Laws §§ 445.903(1)(a),(b), (e)). |
| Minnesota | *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1095 (D. Minn. 1999) (requiring that "the deception is material because it is likely to influence buying decisions"). | *See* Opp. p. 30 n.27, noting that the Minnesota Uniform Deceptive Trade Practices Act (Count XXVI) does not contain any express materiality element.<br><br>*See also* Opp. p. 31 n.32 citing *Sutton v. Viking Oldsmobile Nissan, Inc.*, 611 N.W.2d 60, 64 (Minn. Ct. App. 2000), *vacated on other grounds*, 623 N.W.2d 247 (Minn. 2001) (declining to read materiality into Minnesota Consumer Fraud Act).<br><br>*Compare Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1095 (D. Minn. 1999) (evaluating Minnesota Uniform Deceptive Trade Practices Act under the Lanham Act standard when brought simultaneously in a private action) *with Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (recognizing it is erroneous to evaluate claims |

| | | |
|---|---|---|
| | | under Minnesota Uniform Deceptive Trade Practices Act under federal consumer protection standards when only the state claim is asserted). |
| Missouri | *Dedloff v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 5428501, at *5 (E.D. Mo. Aug. 23, 2023) (requiring "that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages"). | *See* Opp. p. 30 n.27, noting that the Missouri Merchandising Practices Act (Count XXVIII) requires only deceptive omissions, not affirmative misrepresentations, to be material; Mo. Ann. Stat. § 407.020(1). <br><br> *Compare* Mo. Code Regs. Tit. 15, § 60-9.020(1) ("Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.") *with* Mo. Code Regs. Tit. 15, § 60-9.070(1) (incorporating materiality explicitly into regulations related to concealment and suppression, but not deception). <br><br> *See also* Opp. p. 30 n.29, distinguishing *Dedloff v. Whole Foods Mkt. Grp.*, Inc., 2023 WL 5428501, at *5 (E.D. Mo. Aug. 23, 2023) as interpreting inapplicable private action provision of Missouri law. |
| North Carolina | [*materiality requirement comes from incorporated FTCA standard*] <br><br> *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 239 (1997) ("Our statute is patterned after section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and we look to federal case law for guidance in interpreting the statute.") | The North Carolina Unfair or Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1 et seq., (Count XXXIX) does not contain any express materiality element. While FTCA decisions may provide persuasive authority on the construction of the UDTPA, they "are not controlling." *Holley v. Coggin Pontiac, Inc.*, 259 S.E.2d 1, 10 (N.C. Ct. App. 1979). North |

| | | |
|---|---|---|
| | | Carolina courts do not require the Attorney General to allege misrepresentations induce action by a particular consumer. Instead, the test is whether the practice "has the capacity or tendency to deceive; proof of actual deception is not required." *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981). |
| North Dakota | *N. Bottling Co. v. Henry's Foods, Inc.*, 474 F. Supp. 3d 1016, 1028 (D.N.D. 2020) (requiring that "the deception is material, in that it is likely to influence the purchasing decision") | *See* Opp. p. 30 n.27, noting that North Dakota law does not contain any express materiality element; *First Union Nat'l Bank v. RPB 2, LLC*, 2004 ND 29, ¶ 17, 674 N.W.2d 1 ("[t]his Court will not add words or additional meaning to a statute"). N.D. Cent. Code chapter 51–15 was patterned after Minnesota law. *Ackre v. Chapman & Chapman*, *P.C.*, 788 N.W.2d 344, 1020 ND 167, ¶29 (Sandstrom, J., concurring in result). *Sutton v. Viking Oldsmobile Nissan, Inc.*, 611 N.W.2d 60, 64 (Minn. App. 2000) declined to read materiality into Minnesota Consumer Fraud Act, and the same analysis should apply to North Dakota law. *N. Bottling Co. v. Henry's Foods, Inc.*, 474 F. Supp. 3d 1016, 1028 (D.N.D. 2020) is discussing the Lanham Trade-Mark Act, 15 U.S.C. §1125(a)(1)(B), not N.D. Cent. Code §51-15-02. |
| Ohio | *Davis v. Byers Volvo*, 2012 WL 691757, ¶ 29 (Ohio App. 4 Dist. 2012) (to be deceptive, act must "concern a matter that is or is likely to be material to a consumer's decision") | Ohio does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |

| Oregon | *Oregon is a minority state that disclaims a materiality requirement.* | *No response needed.* |
|---|---|---|
| Pennsylvania | [*materiality requirement comes from incorporated FTCA standard*]<br><br>*Com., by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 461–62, 329 A.2d 812, 817–18 (1974) ("The Consumer Protection Law has regularly been interpreted by the Commonwealth Court as being based on the Federal Trade Commission Act . . . . Indeed, in all relevant respects the language of section 3 of the Consumer Protection Law and section 5 of the FTC Act is identical."). | *See* Opp. p. 30 n.27, noting that Pennsylvania law does not contain any express materiality element.<br><br>*See also Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 203 n.20 (Pa. 2007)("[W]e recognize that federal decisions brought under the federal statute can provide guidance. There is, however, no rule that binds us to those decisions.")(internal citations omitted)); *Com. by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 817–18 (Pa. 1974) (holding that state courts "*may* look to [the FTCA] for guidance and interpretation" as persuasive precedent, but it is not binding when evaluating state consumer protection claims).<br><br>*See generally Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018) ("[A]n act or practice is deceptive or unfair if it has the capacity or tendency to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." (cleaned up)). |
| Rhode Island | *State v. BTTR, LLC, 2023 WL 3183738, at *8* (R.I. Super. Apr. 24, 2023) ("requiring State to prove that 'the representation, omission, or practice is material'") | Rhode Island does not dispute that a materiality requirement applies to its claims of deception and notes that the States' Opposition adequately addresses how that requirement has been met. |

17

| | | |
|---|---|---|
| | | *See also Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014) (holding that "[e]xpress representations that are shown to be false are presumptively material" (quoting *Cliffdale Assoc., Inc.*, 103 F.T.C. 110, 168, 182 (1984)). |
| South Carolina | [*materiality requirement comes from incorporated FTCA standard*]<br>S.C. Code Ann. § 39-5-20(b) ("It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."). | *See* Opp. p. 30 n.27, noting that South Carolina law does not contain any express materiality element.<br><br>No state court in South Carolina has held that materiality is a requirement under the South Carolina Unfair Trade Practices Act. |
| Virginia | *Weiss v. Cassidy Dev. Corp.*, 63 Va. Cir. 76 (2003) (requiring "a false representation, of material fact"). | *See* Opp. p. 30 n.27, noting that the Virginia Consumer Protection Act (Count L) does not contain any express materiality element.<br><br>*See also* Opp. p. 30 n.29, comparing *Weiss v. Cassidy Dev. Corp.*, No. 206766, 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003) (relying on outdated precedent that Virginia Consumer Protection Act ("VCPA") incorporates all common law "elements of fraud") with *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014) (clarifying VCPA "extends considerably beyond fraud" by eliminating common law elements). |
| Washington | *Washington is a minority state that disclaims a materiality requirement.* | *No response needed.* |

18

| Wisconsin | *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (Wisconsin; "[A] label is deceptive if it is likely to mislead a reasonable consumer in a material respect.") | *See* Opp. p. 30 n.27 noting that the Wisconsin Deceptive Trade Practices Act (Count LIV) does not contain any express materiality element.<br><br>*See also* Wis. Stat § 100.18(11)(d) (creating a separate cause of action for the State to bring a public enforcement action that does not require a showing of materiality or pecuniary loss).<br><br>*See also* Opp. p. 30 n.29, distinguishing *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (discussing inapplicable private action provision, not the public enforcement provision, and citing *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020), which does not interpret Wisconsin law). |

**Appendix C:  States that Follow the Federal Trade Commission Act (FTCA) Standard**

| State | Authority | State AG Response[3][4] |
|---|---|---|
| Arizona | Ariz. Rev. Stat. Ann. § 44-1522(C) ("It is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code [§§] 45, 52 and 55(a)(1)."). | *See* Opp. p. 35 n.37, acknowledging that the statute provides that courts may use the FTCA as a guide in interpreting the Arizona Consumer Fraud Act, but the state's position is that this is a requirement that is *less* restrictive than the FTCA.<br><br>*See also* Opp. p. 37, supporting the position that the States sufficiently plead that their alleged injury was not reasonably avoidable citation to *Davis v. HSBC Bank Nev.*, N.A., 691 F.3d 1152, 1169 (9th Cir. 2012) and *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). |
| Connecticut | Conn. Gen. Stat. Ann. § 42-110b(b) ("It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the | *See* Opp. p. 35 n.38, citing *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013) in support of the position that the state's law is generally broader than the FTCA. |

---

[3] The title of Meta's Appendix C is overly broad and thus inaccurate.  While the title refers to states that *follow* the FTCA standard, many of the relevant statutes provide that the states are merely *guided* by the FTCA, or, as in Illinois's statute, that "*consideration* shall be given to the interpretations of the [FTC]." 815 Ill. Comp. Stat. Ann. 505/2. The difference between *follow* and *guided* or *consider* is legally significant.

[4] While California does not apply a single test for unfairness, California courts "may turn for guidance to the jurisprudence arising under the 'parallel' section 5 of the Federal Trade Commission Act." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 564 (Cal. 1999).

| | | |
|---|---|---|
| | Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 USC 45(a)(1)), as from time to time amended.") | |
| Delaware | Del. Code Ann. tit. 6, § 2511(9) ("'Unfair practice' means any act or practice that causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.") | Delaware does not dispute the applicability of the FTCA Standard as it applies to its claims of unfairness. |
| Florida | Fla. Stat. Ann. § 501.204(2) ("It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [subsection] 5(a)(1) of the Federal Trade Commission Act.") | The Florida Court of Appeal (from FTC's 1980 policy directive) held an unfair practice, is an act that (1) causes/likely to cause substantial injury to consumers, (2) cannot be reasonably avoided by consumers, (3) and is not outweighed by the countervailing benefits to consumers or to competition. FTC 1980 Policy Statement on Unfairness. *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. Dist. Ct. App. 2014).<br><br>The Florida Supreme Court held (following FTC's 1964 policy directive) that an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). |

| Georgia | Ga. Code Ann. § 10-1-391(b) ("It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended.") | *See* Opp. p. 37, supporting the position that the States sufficiently plead that their alleged injury was not reasonably avoidable and citing to *Orkin Exterm. Co. v. Fed. Trade Comm'n*, 849 F.2d 1354, 1365 (11th Cir. 1988). |
|---|---|---|
| Hawai'i | Haw. Rev. Stat. Ann. § 480-2(b) ("In construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.") | *See* Opp. p. 35 n.38 citing *State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 422–23 (Haw. 2023) in support of the position that the state's law is generally broader than the FTCA. |
| Illinois | 815 Ill. Comp. Stat. Ann. 505/2 ("In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."). | *See* Opp. p. 38 n. 43, clarifying that Illinois follows *Sperry* and that Meta mischaracterizes its unfairness standard. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61 (Ill. 2002) (endorsing *Sperry* factors and holding that a practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three"). <br><br> *See also* Opp. p. 38, regarding whetherthe States sufficiently plead that their alleged injury was not reasonably avoidable and the State's position that Meta's interpretation of Illinois law was misplaced. *See Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016); *Ristic v. Machine Zone, Inc.*, No. 15-cv-8996, 2016 WL 4987943, at *2–4 (N.D. Ill. Sept. 19, 2016) |

| Kentucky | *Morgan v. Blue Cross & Blue Shield of Kentucky, Inc.*, 794 S.W.2d 629, 632 (Ky. 1989) ("The [Kentucky Supreme] Court . . . determined that the language of Section 5 of the Federal Trade Commission Act [15 U.S.C. § 45(a)(1)] was comparable to Kentucky law." (citing *Dare to be Great, Inc. v. Com. of Ky, ex rel Hancock, Ky.*, 511 S.W.2d 224 (1974))). | *See* Opp. p. 31. Neither case refers to any specific elements of FTCA claims. *See Morgan v. Blue Cross & Blue Shield of Kentucky, Inc.*, 794 S.W.2d 629, 632 (Ky. 1989) ("The statutes imposing general restrictions on trade practices are recognized as legitimate and necessary forms of regulation."); *Dare to be Great, Inc. v. Commonwealth of Kentucky*, 511 S.W.2d 224, 227 (Ky. 1974) ("KRS 367.170 is claimed to be void for vagueness. . . ."). No case applies or interprets the KYCPA under the same analysis as unfairness under the FTCA. |
|---|---|---|
| Louisiana | La. Stat. Ann. § 51:1406(4) ("The provisions of this Chapter shall not apply to: (4) Any conduct which complies with section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C., 45(a)(1)], as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations."). | *Inkas's S'Coolwear, Inc. v. Sch. Time, L.L.C.*, 97-2271 (La. App. 1 Cir. 1998), 725 So. 2d 496, 501 ("A practice is considered unfair when it offends established public policy, when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers."); *see also Nat'l Oil Service of Louisiana, Inc. v. Brown*, 9740 (La. App 4 Cir. 1980), 381 So.2d 1269. |
| Maine | Me. Rev. Stat. tit. 5, § 207(1) ("It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 45(a)(1) of the Federal Trade Commission Act (15 United States Code 45(a)(1)), as from time to time amended."). | *See* Opp. p. 35 n.36, noting that Maine did not bring an unfairness claim. |

| Minnesota | "An unfair or unconscionable act or practice is any . . . act[] or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Minn. Stat. Ann. § 325F.69, subd. 8. | *See* Opp. p. 41, explaining that Minnesota courts' evaluation of unfairness and unconscionability is modeled after the "cigarette rule" standard used by the FTCA before it was amended in 1994 to the current substantial unjustified injury test and noting that Meta inaccurately characterizes Minnesota's law as following the FTCA's current unfairness standard. |
|---|---|---|
| Missouri | An "unfair practice" is a practice that either (1) "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions," or (2) that both is "unethical, oppressive, or unscrupulous and [] presents a risk of, or causes, substantial injury to consumers." *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013), as modified (May 28, 2013). | *See* Opp. p. 41–42 explaining that Missouri has sufficiently stated a claim in accordance with Mo. Code Regs. Ann. tit. 15, § 60-8.020 and *Fed. Trade Comm'n v. Sperry & Hutchinson, Co*, 405 U.S. 233, 243 (1972) (quoting *Fed. Trade Comm'n v. R. F. Keppel & Bro., Inc.*, 291 U.S. 304, 313 (1934)) and that support for the same was provided in citation to various paragraphs in the complaint. |
| Nebraska | *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 297 Neb. 682, 698 (2017) ("Section 59-1602 states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful.' We have stated that § 59-1602 mirrors the language of 15 U.S.C. § 45(a)(1).")). | *See* Opp. p. 35 n.38, citing *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 590–91 (Neb. 2008) (adopting *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998)) in support of the position that the state's law adopts the *Sperry* standard and is generally broader than the FTCA. Defendants' cited case applies only to antitrust actions, which are harmonized with federal law. |

| | | |
|---|---|---|
| New York | Multistate Compl. Count XXXVII, ¶¶ 1077–84 ("Violation of FTC Act § 5 in Violation of N.Y. Executive Law § 63(12)). | New York does not dispute this characterization of an unfairness claim. |
| North Carolina | *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749 (1997) ("Our statute is patterned after section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and we look to federal case law for guidance in interpreting the statute.") | North Carolina's legislature has not expressly adopted the FTC Act's unfairness standard, *compare* N.C. Gen. Stat. § 75-1.1 *with* 15 U.S.C. § 45(n), nor have North Carolina's courts, *see Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (a "practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."). |
| North Dakota | *Compare* N.D. Cent. Code Ann. § 51-15-02 ("The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice."), *with* 15 U.S.C. § 45(n) ("The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.") | See Opp. p. 35 n.36, noting that Meta incorrectly characterizes North Dakota law. The North Dakota DTPA does not contain a harmonization provision directing courts to interpret it in harmony with interpretations of the FTC Act. N.D. Cent. Code chapter 51-15. However, North Dakota courts can and will look to the interpretation of same or similar federal law for guidance "when it is sensible to do so." *Hieb v. State*, 2016 ND 146, ¶12, 882 N.W.2d 724. |

| Ohio | Ohio Rev. Code Ann. § 1345.02(C) ("In construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended.") | *See Shumaker-v-Hamilton Chevrolet, Inc.,* 920 N.E.2d 1023, 1030 (Ohio Ct. App. 2009) (holding that Ohio is not bound by FTC rules and need only "consider federal precedent for its persuasive value"). |
|---|---|---|
| Pennsylvania | Creamer v. Monumental Properties, Inc., 459 Pa. 450, 461–62, 329 A.2d 812, 817–18 (1974) ("The Consumer Protection Law has regularly been interpreted by the Commonwealth Court as being based on the Federal Trade Commission Act . . . . Indeed, in all relevant respects the language of section 3 of the Consumer Protection Law and section 5 of the FTC Act is identical." (citing 15 U.S.C.A. § 45(a)(1)))) | The Pennsylvania Supreme Court has stated, "we **may** look to the decisions under those Acts [e.g., FTCA] for guidance and interpretation." *Com. by Creamer v. Monumental Props., Inc.,* 329 A.2d 812, 817–18 (Pa. 1974); *see also Toy v. Metro. Life Ins. Co.,* 928 A.2d 186, 203 n. 20 (Pa. 2007) ("[W]e recognize that federal decisions brought under the federal statute can provide guidance. There is, however, no rule that binds us to those decisions." (internal citations omitted)) |
| Rhode Island | 6 R.I. Gen. Laws Ann. § 6-13.1-3 ("It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), as from time to time amended.") | *Long v. Dell, Inc.,* 93 A.3d 988, 1003 (R.I. 2014). In ruling on the DTPA violations, courts should consider three factors: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to |

| | | |
|---|---|---|
| | | consumers (or competitors or other businessmen)." *Id.* at 1000. |
| South Carolina | S.C. Code Ann. § 39-5-20(b) ("It is the intent of the legislature that in construing paragraph (a) of this section the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to Section 5(a) (1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."). | "The SCUTPA was modeled after the Federal Trade Commission Act, which provides '[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.'" *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015). "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *Id.* (*citing deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000)). "Whether an act or practice is unfair or deceptive within the meaning of the [SC]UTPA depends upon the surrounding facts and the impact of the transaction on the marketplace." *Id.* at 57. "The terms 'unfair' and 'deceptive' are not defined in SCUTPA; rather, in section 39–5–20(b) of the Act, the legislature directs that in construing those terms, the courts of our state 'will be guided by' decisions from the federal courts, the Federal Trade Commission Act (FTCA), and interpretations given by the Federal Trade Commission (FTC)." *Id.* "We find no reversible error in the trial court's failure to charge the |

| | | |
|---|---|---|
| | | precise verbiage of section 45(n) of the FTCA. We do not discern the wide chasm between the federal and state definitions of 'unfair' that Janssen urges. The FTC has issued 'Policy Statements' that provide guidance on the statutory terms." *Id.* at 70. |
| Washington | Wash. Rev. Code Ann. § 19.86.920 ("The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters."). | *See* Opp. p. 35 n.37 noting that while Washington courts look to federal law for guidance when interpreting the Washington CPA, Washington courts are not bound by the FTCA or federal law and instead give effect to Washington law. *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) (en banc) ("Although we have been guided by federal interpretations, Washington has developed its own jurisprudence regarding application of Washington's CPA."). |

**Appendix D:  States that Require a Consumer Transaction or Connection to Trade or Commerce**

| State | Definition of "Trade or Commerce" or "Consumer Transaction" | State AG Response[5] |
|---|---|---|
| Alabama | Ala. Code § 8-19-5 (limiting "deceptive acts or practices" to those "in the ***conduct of any trade or commerce***" (emphasis added)); Ala. Code § 8-19-3(14) ("Trade or commerce includes but is not limited to, the advertising, buying, offering for sale, sale or distribution or performance of any service or goods, and any other article, commodity, or thing of value wherever situated and shall include any trade or commerce affecting the people of this state."); Ala. Code § 8-19-10(a) (providing that "[a]ny person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a ***consumer*** . . . shall be liable to each ***consumer***" (emphasis added)); Ala. Code § 8-19-3(4) (a "consumer" is "[a]ny natural person who ***buys*** goods or services for personal, family, or household use" (emphasis added)). | Alabama is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |

---

[5] Meta did not include Minnesota in its Appendix D. However, the Minnesota Deceptive Trade Practices Act does not require a sale or consumer transaction and instead applies broadly to commercial conduct. *See* Minn. Stat. § 325.44, subd. 1 (includes conduct that occurs in the "course of business, vocation, or occupation").

| Arizona | Ariz. Rev. Stat. Ann. § 44-1522 ("The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, ***in connection with the sale or advertisement of any merchandise*** whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." (emphasis added)); Ariz. Rev. Stat. Ann. § 44-1521 ("Advertisement includes the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise; Sale means any sale, offer for sale or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale."). | *See* Opp. p. 33, citing Ariz. Rev. Stat. Ann. § 44-1522 noting the exact point that Meta emphasizes in this chart that a violation only has to broadly be ***in connection with*** the consumer transaction (emphasis added). Additionally, *see* Opp. p. 44 where Arizona state law is used to support the position that the relevant bargained-for exchange (rather than a transfer of dollars) is consumers' personal data. *State v. Google LLC*, 2022 WL 223907, at \*13–14 (Ariz. Super. Ct., Jan. 21, 2022). |
|---|---|---|
| Connecticut | Conn. Gen. Stat. Ann. § 42-110b(a) ("No person shall engage in unfair methods of competition and unfair or deceptive acts or practices ***in the conduct of any trade or commerce***." (emphasis added)). | *See* Opp. p. 43, citing *McCann Real Equities Series XXII, LLC. v. David McDermott Chevrolet, Inc.*, 890 A.2d 140, 163–64 (Conn. App. Ct. 2006) (no violation for "activities that are incidental to an entity's primary trade or commerce"). |
| Delaware | Del. Code Ann. tit. 6, § 2513(a) ("The act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, ***in connection with the sale, lease, receipt, or advertisement of any merchandise*** . . . ."). | The purpose of adding the word "receipt" to Del. Code Ann. tit. 6, § 2513(a) was to "[…] clarify that persons who provide goods or services at no charge to consumers—such as social media companies funded by advertising revenue—are not precluded from being held liable for engaging in consumer fraud simply because they may not directly sell or lease their |

| | | goods or services to consumers." H,B. 91, 151st Gen. Assemb., Reg. Sess. (Del. 2021).<br><br>Del. Code Ann. tit. 6, § 2511(1), defines "advertisement" much more broadly than the colloquial definition. ("[T]he attempt by publication, solication or cirulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise.") |
|---|---|---|
| Georgia | Ga. Code Ann. § 10-1-393(a) ("Unfair or deceptive acts or practices in the conduct of **consumer transactions** and consumer acts or practices **in trade or commerce** are declared unlawful. (emphasis added)); *Henderson v. Gandy*, 270 Ga. App. 827, 830 (2004) (requiring that the representations be "intended to encourage consumer transactions"). | *See* Opp. p. 33, citing *Zeeman v. Black*, 273 S.E.2d 910, 915 (Ga. Ct. App. 1980) noting the general requirement that a consumer transaction occur in the "context of the ongoing business."<br><br>*See also* Opp. p. 44, noting that acts done to encourage consumer transactions are sufficient, such as being able to purchase goods and services through Meta's platforms and exposure to advertisements on the platforms (which occurs as a result of a consumer viewing advertisements on Meta's platforms and exchanging his or her personal data for access to Meta's platforms) making consumer transactions more likely. |
| Hawai'i | HRS § 480-2 ("Unfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce** are unlawful."(emphasis added)); *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, 2014 WL 2761744, at *19 (D. Haw. June 18, 2014) ("trade or commerce" means "a transaction [that] occurs in a business context"). | As the Hawai'i Intermediate Court of Appeals noted in *Beerman v. Toro Mfg. Corp.*, "[t]he legislative history to §§ 480-2 and 480-13 makes clear that the paramount purpose of both statutes is to prevent deceptive practices **by businesses** that are injurious to other businesses |

| | | |
|---|---|---|
| | | and consumers." 615 P.2d 749, 754 (Haw. Ct. App. 1980) (emphasis added). This intent is also evidenced by the absence of definitions for terms such as "trade or commerce" or "consumer transaction" in Haw. Rev. Stat. § 480-1. |
| Idaho | I.C. § 48-603 ("The following unfair methods of competition and unfair or deceptive acts or practices ***in the conduct of any trade or commerce*** are hereby declared to be unlawful" (emphasis added)); I.C. § 48-602(2) ("'Trade' and 'commerce' mean the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services, either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state."). | Idaho did not bring a state consumer protection claim. |
| Illinois | 815 ILCS 505/2 ("Unfair methods of competition and unfair or deceptive acts or practices . . . ***in the conduct of any trade or commerce*** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (emphasis added)); 815 ILCS 505/1(f) ("The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State."); *City of Chicago v. Purdue Pharma L.P.*, 2021 WL 1208971, at *4 (N.D. Ill. Mar. 31, 2021) (requiring "the defendant's intent that the plaintiff rely on the deceptive or unfair practice"). | Illinois courts routinely hold that "trade or commerce" applies to acts not directly linked to specific sales transactions. *See, e.g., People ex rel. Hartigan v. Maclean Hunter Publishing Corp.*, 119 Ill.App.3d 1049, 457 N.E.2d 480, 75 Ill. Dec. 486 ( Ill. App. Ct. 1983) (trade or commerce includes the publishing of a manual of pricing information for used cars). The "appropriate inquiry" when analyzing whether the complained-of conduct occurred in "trade or commerce" includes assessing whether the acts "directly or indirectly [affect] the people of [Illinois]." *People ex rel. Daley v. Datacom Systems Corp.*, 176 Ill. App. 3d 697, 708 (Ill. App. Ct. 1988) |

| Indiana | Ind. Code Ann. § 24-5-0.5-3(a) ("A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice ***in connection with a consumer transaction***." (emphasis added)); *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 642 (2002) ("To come within the FBPA, therefore, the deceptive activity must take place in the context of the consumer marketplace."); Ga. Code Ann. § 10-1-392(a)(7) ("[c]onsumer acts or practices" means "acts or practices intended to encourage consumer transactions"); Ga. Code Ann. § 10-1-392(a)(10) ("Consumer transactions," means "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes."). | *See* Opp. p. 45 explaining how a different court imposed an extratextual requirement for a consumer to have exchanged money to use a platform for it to qualify as a consumer transaction where the Indiana Deceptive Consumer Sales Act (DCSA) contains no such requirement.<br><br>A sale does not require the exchange of money. "[T]he common definition of a sale" is "the trade-off of title to property for consideration." *Monarch Beverage Co. v. Ind. Dep't of State Revenue,* 589 N.E. 2d 1209, 1213 (Ind. T.C. 1992). The DCSA does not define "sale," but the Indiana Code elsewhere defines the term consistent with the common definition of "transfers [of] property to another person for consideration." Ind. Code § 6-2.5-4-1(b)(2) (defining "selling at retail"). The consideration from a sale can take various forms and is not limited to a money payment. *See Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010), *opinion modified on reh'g sub nom.*, 942 N.E.2d 796 (Ind. 2011) (defining consideration as a "benefit" and holding that "consideration—no matter what its form—consists of a bargained-for exchange"). In addition, the DCSA definition of consumer transaction explicitly *includes* transactions that do *not* necessarily involve money, like an "assignment" or an "award by chance." Ind. Code § 24-5-0.5-2(a)(1). |
|---|---|---|

| | | Indiana also notes that Meta has cited to Georgia law in the Indiana section of the Appendix. |
|---|---|---|
| Kansas | Kan. Stat. Ann. § 50-626(a) ("No supplier shall engage in any deceptive act or practice **in connection with a consumer transaction**." (emphasis added)); Kan. Stat. Ann. § 50-624(c) ("'Consumer transaction' means a sale, lease, assignment or other disposition for value of property or services within this state, except insurance contracts regulated under state law, **to a consumer**; or a solicitation by a supplier with respect to any of these dispositions." (emphasis added)). | A consumer transaction does not require a monetary exchange as a trade may also establish a "disposition of value." *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39, 41 (Kan. Ct. App. 2007). Under Kan. Stat. Ann. § 50-624(l), "supplier" means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.<br><br>*See Watkins v. Roach Cadillac, Inc.*, 637 P.2d 458 (Kan. Ct. App. 1981) (extending the definition of a consumer transaction further by saying that a sale or a lease, or exchange of money, doesn't actually have to take place.); *State ex rel. Kline v. Berry*, 137 P.3d 500 (Kan. Ct. App. 2006) (expanding on the Watkins case by finding that a solicitation *in Kansas* is enough to establish jurisdiction, even if the transaction occurs elsewhere or not at all). |
| Kentucky | Ky. Rev. Stat. § 367.170(1) ("Unfair, false, misleading, or deceptive acts or practices **in the conduct of any trade or commerce** are hereby declared unlawful." (emphasis added)); Ky. Rev. Stat. § 367.110(2) ("'Trade' and 'commerce' means the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, | *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) (The Kentucky Consumer Protection Act "has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts."). For example, in *Suhail v. Univ. of the* |

| | | |
|---|---|---|
| | and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."). | *Cumberlands*, 107 F. Supp. 3d 748, 758 (E.D. Ky. 2015), the district court found that a university's recruitment of students would be considered "trade or commerce" for purposes of our consumer protection act.  This broad interpretation, combined with a plain reading of the statute, makes clear that Meta's unfair and or deceptive practices are deemed in the "conduct of any trade or commerce." |
| Louisiana | La. Stat. Ann. § 51:1405 ("Unfair methods of competition and unfair or deceptive acts or practices ***in the conduct of any trade or commerce*** are hereby declared unlawful." (emphasis added)); La. Stat. Ann. § 51:1402(9) ("Trade and commerce" defined as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state."). | Louisiana Unfair Trade Practices Act's definition of "trade" and "commerce" includes the "advertisement" and "distribution" of intangible services. There is no consumer transaction requirement. <br><br> Louisiana courts look to the plain language of the statute to address conduct occurring in the course of trade or commerce. *See Law Indus., LLC v. State of Louisiana*, 2023-00794 (La. 1/26/24), 378 So.3d 3. |
| Maine | Me. Rev. Stat. tit. 5, § 207 ("Unfair methods of competition and unfair or deceptive acts or practices ***in the conduct of any trade or commerce*** are declared unlawful." (emphasis added)); Me. Rev. Stat. tit. 5, § 206(3) ("'Trade' and 'commerce' shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State."). | In relying on the language of Maine's statute, "trade or commerce" under the Maine Unfair Trade Practices Act is defined to include "the . . . distribution of any services and any property . . . and any other article, commodity or thing of value wherever situate[d.]" Me. Rev. Stat. tit. 5, § 206(3). Accordingly, Maine law prohibits a business that provides services to consumers from engaging in deceptive practices with respect to those services. |

| Maryland | Md. Code Ann., Com. Law § 13-303(1) (act limited to "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services"); Md. Code Ann., Com. Law § 13-101(i) ("sale" means "[s]ale of or offer or attempt to sell merchandise, real property, or intangibles for cash or credit; or . . . [s]ervice or offer for service which relates to any person, building, or equipment."); *id.* § 13-101(j) ("Service," means "[b]uilding repair or improvement service; . . . [s]ubprofessional service; . . . [r]epair of a motor vehicle, home appliance, or other similar commodity; . . . or [r]epair, installation, or other servicing of any plumbing, heating, electrical, or mechanical device."). | Maryland did not bring a state consumer protection claim. |
|---|---|---|
| Massachusetts | Mass. Gen. Laws Ann. ch. 93A, § 2(a) ("Unfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce** are hereby declared unlawful." (emphasis added)); Mass. Gen. Laws Ann. ch. 93A, § 1(b) ("Trade or commerce" defined as including, "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services."). | Massachusetts is not currently represented in the State Attorneys General Coalition; therefore, the States have no response as to their applicable law. |
| Michigan | Mich. Comp. Laws Ann. § 445.903 ("Unfair, unconscionable, or deceptive methods, acts, or practices **in the conduct of trade or commerce** are unlawful." (emphasis added)). | *See* Opp. p. 43, citing *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 849 (E.D. Mich. 2003) |
| Missouri | Mo. Ann. Stat. § 407.020(1) ("The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice." (emphasisc added)); Mo. Ann. Stat. § 407.010(7) ("'Trade' or 'commerce', | *See* Opp. p. 33–34, citing *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 414 (Mo. 2014) finding that the violation must simply have "a relationship" with the sale. |

| | | |
|---|---|---|
| | the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services, and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated). | |
| Nebraska | Neb. Rev. Stat. Ann. § 59-1602 ("Unfair methods of competition and unfair or deceptive acts or practices i**n the conduct of any trade or commerce** shall be unlawful. (emphasis added)); Neb. Rev. Stat. Ann. § 59-1601 ("Trade and commerce shall mean the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."). | Meta does not contest, nor could it, that it is a for-profit business that engages in commerce that directly or indirectly affects Nebraskans. The commerce includes Meta's efforts to maximize user engagement, Meta's collection of consumer data, the buying and selling of advertising on ad exchanges, or any of the other numerous commercial activities that a company of Meta's stature engages in on a daily basis.<br><br>Meta does not contest that the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq.*, applies to its misconduct. |
| New Jersey | N.J. Stat. Ann. § 56:8-2 (requiring that the act be done "in connection with the sale or advertisement"). | Meta's public testimony was in connection with the sale and advertisement of (a) Meta Verified, and (b) Meta's collection of consumers' data to advertise merchandise. Compl. at 46–47, 52.  Meta's public statements misrepresented the safety of certain features, downplayed the actual harmful and addictive effects of continued use, and obfuscated the actual profit-driven motive of developing these features in order to induce greater consumption and use of the platform. Compl. at 120–24. New Jersey courts have found liability for |

| | | |
|---|---|---|
| | | similarly substantive representations regarding safety and found that the representations were made in connection with the sale or advertisement of merchandise.  *See, e.g.*, *Grewal v. Janssen Pharms., Inc.*, No. C-80-18, 2019 N.J. Super. Unpub. LEXIS 5766 at *16-18 (N.J. Super. Ct. Oct. 21, 2019).<br><br>Furthermore, Meta's efforts to maximize consumer engagement and retention are part and parcel with its targeted advertisement business and its sale of Meta Verified.  Compl. at 54–58.  Meta's conduct—attracting a younger audience, collecting their personal information, and using that personal information to provide targeted advertisements—all serves to increase its future business opportunities and profits.  Such a "business opportunity" is merchandise within the ambit of the New Jersey Consumer Fraud Act. *See Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677 (N.J. Super. Ct. App. Div. 2003) (citing *Morgan v. Air Brook Limousine*, 510 A.2d 1197 (N.J. Super. Ct. 1986)). |
| New York | *Fed. Trade Comm'n v. Quincy Bioscience Holding Co., Inc.*, 646 F. Supp. 3d 518, 526 (S.D.N.Y. 2022) (requiring that defendant's conduct be "consumer-oriented"). | New York Executive Law § 63 (12) does not require an underlying consumer transaction, sale, or advertisement to support a violation. *See People by Lefkowitz v. MacDonald*, 330 N.Y.S.2d 85 (N.Y. Sup. Ct. 1972) (holding that N.Y. Exec. Law § 63(12) had been violated where defendant repeatedly violated state maritime laws by transiting waters without a licensed pilot); *State v. Hamilton*, 511 N.Y.S.2d |

| | | |
|---|---|---|
| | | 190 (N.Y. App. Div. 1986) (holding that N.Y. Exec. Law § 63(12) was violated where defendant repeatedly engaged in unlawful sexual discrimination).<br><br>New York General Business Laws §§ 349 and 350 "on their face apply to virtually all economic activity, and their application has been correspondingly broad... [in order to provide] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (citation omitted).  "Consumer-oriented," means "that the acts or practices have a broader impact on consumers at large" rather than being "private contract disputes."  *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25(1995). |
| North Dakota | N.D. Cent. Code § 51-15-02 ("The act, use or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon ***in connection with the sale or advertisement of any merchandise*** . . . is declared to be an unlawful practice." (emphasis added)). | N.D. Cent. Code § 51-15-01(1) applies to an "attempt by publication, dissemination, solicitation, or circulation, oral or written, to induce, directly or indirectly, any person to *enter into any obligation* or acquire any title or interest in any merchandise" (emphasis added). A sale is "any sale, offer for sale, or attempt to sell any such merchandise *for any consideration*, N.D. Cent. Code § 51-15-01(5) (emphasis added); *see also Woodmont Co. v. LaSalle Shopping Ctr., LLC*, 2020 WL 2857164 (D.N.D., June 2, 2020) (the "in connection with" language in § 51-15-02 is |

| | | |
|---|---|---|
| | | inclusive and the terms of § 51-15-01 are broad).<br><br>North Dakota law protects persons, not only consumers. N.D. Cent. Code § 51-15-01(4); *Jorgenson v. Agway, Inc.*, 2001 ND 104, ¶¶ 8-9, 627 N.W.2d 391 (the clear and ambiguous language of N.D.C.C. § 51-15-09 and the definition of "person" belied a legislative intent to limit the statute to only consumer transactions). N.D.C.C. § 51-15-02, like N.D.C.C. § 51-15-09, uses the term "person," not "consumer." |
| Ohio | Ohio R.C. § 1345.02(A) ("No supplier shall commit an unconscionable act or practice ***in connection with a consumer transaction*.**" (emphasis added)); Ohio R.C. § 1345.01 (defining "consumer transaction" to mean "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family"). | *See* Opp. p. 43, noting that a consumer transaction does not require a transfer of money and citing *Williams v. Edwards*, 717 N.E.2d 368, 373 (Ohio Ct. App. 1998) ("[T]he fact that no money changed hands has no bearing on the applicability of the [Consumer Sales Practices Act] . . . ."). |
| Pennsylvania | 73 Pa. Stat. Ann. § 201-3(a) ("Unfair methods of competition and unfair or deceptive acts or practices ***in the conduct of any trade or commerce*** as defined by . . . ." (emphasis added)); 73 Pa. Stat. Ann. § 201-2(3) ("'Trade' and 'commerce' means the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."). | The definition of "conduct" is "the act, manner, or process of carrying on" when interpreting 73 Pa. Cons. Stat. § 201-(3)(a). *Garcia v. Foot Locker Retail, Inc.*, 2023 WL 2487256, at *3 (Pa. Super. Ct., Mar 14, 2023). Meta offers products to its users and profits by selling advertisements to businesses that target the users while on the platforms. Meta collects revenue in the conduct (i.e. in the "act, manner or carrying on") of trade or commerce through its advertising. |

| Rhode Island | 6 R.I. Gen. Laws Ann. § 6-13.1-2 ("Unfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce** are declared unlawful." (emphasis added)); 6 R.I. Gen. Laws Ann. § 613.1-1(5) ("'Trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and include any trade or commerce directly or indirectly affecting the people of this state."). | R.I. Gen. Laws § 6-13.1-1(5) defines "trade" and "commerce" as including the "advertising, offering for sale, sale, or distribution of any services . . . or thing of value . . . and include any trade or commerce directly or indirectly affecting the people of this state."Meta is distributing services and a "thing of value" to Rhode Islander consumers over its platforms.<br><br>Rhode Island courts have liberally applied the DTPA to activities taking place in a commercial or business context even if there was no purchase by a consumer. *E.g., Chen v. Subaru of America*, 2008 WL 4176777, at *1 (R.I. Super. Ct. Aug. 25, 2008) (plaintiff not required to purchase goods from defendant); *Laccinole v. Rocket Mortgage, LLC*, 609 F. Supp. 3d 68, 74 (D.R.I. 2022) (defendant entered Rhode Island commerce by calling plaintiff to sell a financial product). |
| South Carolina | S.C. Code Ann. § 39-5-20(a) ("Unfair methods of competition and unfair or deceptive acts or practices **in the conduct of any trade or commerce** are hereby declared unlawful." (emphasis added)); S.C. Code Ann. § 39-510(b) ("Trade and commerce shall include the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this State."). | *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 743 S.E.2d 808 (S.C. 2013). ("Furthermore, by its very definition, "trade or commerce" involves "[e]very business occupation carried on for subsistence or profit and involving the elements of bargain and sale, barter, exchange, or traffic." Black's Law Dictionary (9th ed. 2009); *see also Bretton v. State Lottery Comm'n*, 673 N.E.2d 76, 78–79 (Mass App. Ct. 1996) (recognizing that "the proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or |

| | | |
|---|---|---|
| | | commerce' must be read to apply to those acts or practices which are perpetrated in a business context" (citations omitted)).") <br><br> All of Meta's acts and practices plead in the complaint were "perpetrated in a business context" and therefore were unfair or deceptive practices in the conduct of trade or commerce. |
| Tennessee | Tenn. Code Ann. § 47-18-104(a) ("Unfair or deceptive acts or practices affecting the ***conduct of any trade or commerce*** constitute unlawful acts or practices and are Class B misdemeanors. (emphasis added)); Tenn. Code Ann. § 47-18-103(20) ('Trade,' 'commerce,' or 'consumer transaction' means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated."). | Tennessee is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |
| Texas | Tex. Bus. & Com. Code Ann. § 17.46 9(a) ("False, misleading, or deceptive acts or practices ***in the conduct of any trade or commerce*** are hereby declared unlawful . . . . (emphasis added)); Tex. Bus. & Com. Code Ann. § 17.45(6) ("'Trade' and 'commerce' mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state."); Tex. Bus. & Com. Code Section 17.50(a) ("***A consumer*** may maintain an action . . . " (emphasis added)). | Texas is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |

| Utah | Utah Code § 13-11-4(1) ("A deceptive act or practice by a supplier *in connection with a consumer transaction* violates this chapter whether it occurs before, during, or after the transaction." (emphasis added)); Utah Code § 13-11-3(2)(a) ("'Consumer transaction' means a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible"). | Utah is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |
|---|---|---|
| Vermont | 9 V.S.A. § 2453(a) ("Unfair methods of competition in commerce and unfair or deceptive acts or practices *in commerce* are hereby declared unlawful." (emphasis added)); Vt. Stat. Ann. tit. 9, § 2451a(1) (defining "consumer" as "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale . . . but for his or her use or benefit or the use or benefit of a member of his or her household . . ."); Vt. Stat. Ann. tit. 9, § 2461(b) (providing a private cause of action to "*[a]ny consumer* who contracts for goods or services" (emphasis added)). | Vermont is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |
| Virginia | Va. Code § 59.1-200 ("The following fraudulent acts or practices committed by a supplier *in connection with a consumer transaction* are hereby declared unlawful[.] (emphasis added)); Va. Code § 59.1-198 (defining "consumer transaction" to include "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes"). | Though there may not be money changing hands between the SMP user and the SMP, there is a monetary exchange happening with advertisers and there is an exchange of valuable information occurring between Meta's users and Meta. This concept is spelled out in the Meta Terms of Service. |
| Washington | Wash. Rev. Code Ann. § 19.86.020 ("Unfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." (emphasis added)); Wash. Rev. Code Ann. § 19.86.010 ("'Trade' and 'commerce' shall include the sale of assets or services, and any commerce directly or indirectly | *See* Opp. p. 34, 43, citing *State Farm Fire & Cas. Co. v. Huynh*, 962 P.2d 854, 862 (Wash. Ct. App. 1998) finding that any "acts done for the purpose of increasing profits are within the sphere of trade [or] commerce." |

| | | |
|---|---|---|
| | affecting the people of the state of Washington."); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 793 (1986) ("[Defendant] and the [Plaintiffs] were involved in a loan closing, which is a commercial transaction.  As such, the transaction occurred in 'trade or commerce'." (internal citations omitted)). | These acts do not have to apply to the representation, act, or practice at issue. *See Farrell v. Friends of Jimmy*, 13 Wash. App. 2d 1134, 2020 WL 4195989, at *2 (2020) ("An actor can violate the CPA without any consumer or business relationship between the plaintiff and the actor because the 'trade or commerce' element is not limited to those transactions.") (unpublished). The representation, act, or practice at issue only needs to be done within the context of trade or commerce, i.e. to further business or commercial objectives rather than non-business goals such as political, charitable, or personal purposes. |
| Wisconsin | *Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 998 (E.D. Wis. 2010) (requiring representation to be made "with intent to induce . . . 'the public'"). | Wis. Stat. § 100.18 is not limited to instances where the speaker has an intent to induce the public but also prohibits the use of a misrepresentation "with intent to sell, distribute, *increase the consumption of* or in any wise dispose of any … service, or anything offered by such person." (emphasis added). |

**Appendix E:  Restitution Requirements**

| State | Authority | State AG Response |
|---|---|---|
| Arizona | Ariz. Rev. Stat. Ann. § 44-1528(2) (Permitting the Court to "make such orders or judgments as may be necessary to . . . restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice in this article declared to be unlawful, including the appointment of a receiver"). | Arizona does not dispute Meta's characterization of its law.<br><br>Meta has incorrectly cited the statute. The correct cite is Ariz. Rev. Stat. Ann. § 44-1528(A)(2). |
| California | Cal. Bus. & Prof. Code § 17203 (permitting the Court to "make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."). | See Opp. p. 46 explaining that that non-pecuniary interests may be appropriate for restitution. Brown v. Google LLC, No. 20-CV-03664-LHK, 2021 WL 6064009, at *18 (N.D. Cal., Dec. 22, 2021). |
| Colorado | Colo. Rev. Stat. Ann. § 6-1-110(1) ("The Court may make such orders or judgments . . . which may be necessary to completely compensate or restore to the original position of any person injured by means of any such practice."). | See Opp. p. 46, n.53 noting that Colo. Rev. Stat. Ann. § 6-1-110(1) does not suggest that such orders or judgments are limited to the loss of money or property. |
| Delaware | Del. Code Ann. tit. 6, § 2523 (Proving that "after a hearing may grant relief by issuing temporary restraining orders, preliminary or permanent injunctions, and such other relief . . . which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice declared to be unlawful by this subchapter"). | See Opp. p. 46, n.53 explaining that Del. Code Ann. tit. 29, § 2520(a)(5), (9) provides broader restitution powers than Del. Code Ann. tit. 6, § 2523. |
| Georgia | Ga. Code Ann. § 10-1-397(b)(2)(D) (Providing that the Court "may enter or grant . . . [r]estitution to any person or persons adversely affected by a defendant's actions in violation of [the statute]."). | Ga. Code Ann. § 10-1-397(b)(2)(D) provides that the court may grant "[o]ther relief as the court deems just and equitable." |

| Illinois | 815 ILCS 505/7(a) ("The Court, in its discretion, may exercise all powers necessary, including but not limited to . . . restitution."). | See Opp. p. 46, citing *People v. Lann*, 587 N.E.2d 521, 524 (Ill. App. Ct. 1992) (The remedy of restitution "flows from the basic policy that those who engage in proscribed conduct or practices surrender all profits flowing therefrom."). |
|---|---|---|
| Indiana | Ind. Code Ann. § 24-5-0.5-4(c)(2) (The Court may "order the supplier to make payment of the money unlawfully received from the aggrieved consumers to be held in escrow for distribution to aggrieved consumers."). | Ind. Code Ann. § 24-5-0.5-4(c)(2) does not make an explicit reference to "restitution" and should be broadly read to include unjust enrichment and disgorgement. |
| Kansas | Kan. Stat. Ann. § 50-632(c)(2) ("the court may . . . make such orders or judgments as may be necessary to compensate any consumer for damages sustained"). | Measurable monetary damages do not need to be established to recover damages for an aggrieved consumer. *See Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 863–64 (Kan. 2013). |
| Kentucky | Ky. Rev. Stat. Ann. § 367.200 ("The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been paid out as a result of any practice declared to be unlawful"). | *See* Opp. p. 46, referencing *Haeberle v. St. Paul & Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. Ct. App. 1989) (providing that the equitable doctrine of unjust enrichment "is applicable as a basis of restitution") (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 1 ("The purpose of a claim of restitution is not to compensate the plaintiff for any loss the plaintiff suffered but to compensate the plaintiff for the benefit the plaintiff conferred on the defendant.")); *see also Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 781 (Ky. 2017) (observing "Kentucky courts' willingness to adopt equitable measures where appropriate and wholly consistent with the principles in the RESTATEMENT (THIRD) |

| | | OF RESTITUTION AND UNJUST ENRICHMENT"). |
|---|---|---|
| Michigan | *In re White, 330 Mich. App*. 476, 483, 948 N.W.2d 643, 648 (2019) (under Michigan law, restitution is the restoration of actual amounts lost by the victim). | *See* Opp. p. 46, citing *Avery v. Indus. Mortg. Co.*, 135 F. Supp. 2d 840, 845 (W.D. Mich. 2001) (holding that losses under the Mich. Consumer Protection Act are not limited to pecuniary in nature). |
| Minnesota | *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013) ("[T]he sole statutory remedy for deceptive trade practices is injunctive relief."); *Dennis Simmons, D.D.S., P.A. v. Mod. Aero*, Inc., 603 N.W.2d 336, 340 (Minn. Ct. App. 1999) ("[S]ubdivision 3a specifically limits its relief to those statutes referred to in subdivision 1, and the DTPA is not included in that list."); Humphrey v. Philip Morris Inc., 551 N.W.2d 490, 496 (Minn. 1996) (noting that the deceptive trade practices statute is not included in Section 8.31). | *See* Opp. p. 46–47 noting that the *parens patriae* power of the Attorney General authorizes them to seek equitable restitution. *See State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 139 (Minn. 2019). ; Minn. Stat. § 8.31, subd. 3a (providing for equitable remedies including disgorgement in addition to other remedies provided by law.) *See also Findling v. Group Health Plan, Inc.*, 998 N.W. 2d 1, 7 (Minn. 2023) (rejecting proposition in *Dennis Simmons* and holding that the AG's enforcement power is not limited to § 8.31, but all laws related to unfair or unlawful practices in business, commerce, or trade. |
| Missouri | Mo. Ann. Stat. § 407.100(4) (Providing that the Court "may enter an order of restitution . . . as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter"). | Mo. Rev. Stat. § 407.100(3) ("If the court finds that the person has engaged in [an unlawful practice] it may make such orders or judgments as may be necessary to prevent such person from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be |

| | | |
|---|---|---|
| | | unlawful by this chapter."). Such equitable relief may include disgorgement. |
| Nebraska | Neb. Rev. Stat. Ann. § 59-1608 ("The court may make such additional orders or judgments as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any act prohibited in the Consumer Protection Act."). | Neb. Rev. Stat. Ann. § 87-303 ("The court may order such additional equitable relief as it deems necessary to protect the public from further violations . . . . Proof of monetary damage, loss of profits, or intent to deceive is not required."). |
| Nevada | Nev. Rev. Stat. Ann. § 598.0971 (permitting "restitution for any money or property improperly received or obtained as a result of the violation"); Nev. Rev. Stat. Ann. § 598.0993("the court in which an action is brought pursuant to NRS 598.0979 and 598.0985 to 598.099, inclusive, may make such additional orders or judgments as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any deceptive trade practice which violates any of the provisions of NRS 598.0903 to 598.0999, inclusive, but such additional orders or judgments may be entered only after a final determination has been made that a deceptive trade practice has occurred"). | Nevada is not currently represented in the State Attorneys General Coalition; therefore, the State AGs have no response as to their applicable law. |
| New Jersey | N.J. Stat. Ann. § 56:8-15 ("the Attorney General or his designee may . . . upon a finding of an unlawful practice under this act and the act . . . order that any moneys or property, real or personal, which have been acquired by means of such unlawful practice be restored to any person in interest, except that if any moneys or property, real or personal, have been acquired by means of an unlawful practice perpetrated against a senior citizen, the amount of moneys or property, real or personal, ordered restored shall be twice the amount acquired"). | The breadth of the language of N.J. Stat. Ann. § 56:8-15 supports the ability of the Attorney General to pursue remedies under the doctrine of unjust enrichment. |

| New York | N.Y. Gen. Bus. Law § 349 (permitting court to "enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices"). | The "specific statutory language limiting relief" that Meta cites on page 33 of its Reply is not present in N.Y. Exec. Law § 63(12), which authorizes relief, including restitution, independently of N.Y. Gen. Bus. Law § 349. *See* Opp. p. 46, explaining that N.Y. Exec. Law § 63(12) grants the Attorney General unqualified restitution authority. |
|---|---|---|
| North Dakota | N.D. Cent. Code Ann. § 51-15-07 ("The court may make an order or judgment . . . which may be necessary to restore to any person in interest any money, or property that may have been acquired by means of any practice in this chapter.") | *See* Opp. p. 46, noting that Meta omitted language from N.D. Cent. Code Ann. § 51-15-07 which provides "The court may make an order or judgment *as may be necessary to prevent the use or employment by a person of any unlawful practices, or* which may be necessary to restore to any person in interest any money, or property that may have been acquired by means of any practice in this chapter." (emphasis added). |
| Pennsylvania | 73 Pa. Stat. Ann. § 201-4.1 ("[T]he court may in its discretion direct that the defendant or defendants restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any violation of this act, under terms and conditions to be established by the court.") | *See* Opp. p. 46 citing *Commonwealth v.TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1139 (Pa. Commw. Ct. 2005), which provides there is no requirement that damages "arise from payments made directly to a defendant." |
| Rhode Island | 6 R.I. Gen. Laws Ann. § 6-13.1-5(c) ("The court may make any additional orders or judgments that may be necessary to restore to any person in interest any moneys or property, real or personal, that may have been acquired by means of any practice in this chapter declared to be unlawful . . . .") | *See* Opp. p. 46, explaining that R.I. Gen. Laws § 6-13.1-5(a) authorizes the attorney general to bring an action "to seek any other relief that may be appropriate." |
| South Carolina | S.C. Code Ann. § 39-5-50(b) ("The court may make such additional orders or judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act or practice, | The standard of proof for damages is higher in actions brought by private plaintiffs than in proceedings brought by the Attorney General. *State ex rel. Wilson v. Ortho-McNeil-Janssen* |

| | any moneys or property, real or personal, which may have been acquired by means of any practice declared to be unlawful in this article . . . .”). | *Pharm., Inc.*, 777 S.E.2d 176, 193 (S.C. 2015). Thus, the Attorney General is not required to show any specific or actual damages. |
|---|---|---|
| Virginia | Va. Code Ann § 59.1-205 (The “court may make such additional orders or decrees as may be necessary to restore to any identifiable person any money or property, real, personal, or mixed, tangible or intangible, which may have been acquired from such person by means of any act or practice declared to be unlawful in § 59.1-200 or 59.1200.1 . . . .”) | *See* Opp. p. 46 n.55, noting that Va. Code § 59.1-205 provides restitution for intangible property. |
| Washington | Wash. Rev. Code Ann. § 19.86.080(2) (“The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful . . . .”). | *See State v. LG Electronics, Inc.*, 340 P.3d 915, 924–25 (Wash. App. 2014). Whereas damages measure a plaintiff's loss, the purpose of restitution is to measure the defendant's gain and disgorge them of such. |
| Wisconsin | Wis. Stat. § 100.18(11)(d) (“The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court.”) | Wisconsin does not dispute Meta's characterization of its law. |