Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

IN RE:  SOCIAL MEDIA ADOLESCENT)
ADDICTION/PERSONAL INJURY     )
PRODUCTS LIABILITY LITIGATION )  **NO. 22-MD-03047 YGR (PHK)**
_____)

                              San Francisco, California
                              Thursday, March 21, 2024

**APPEARANCES:**

For Plaintiffs:
                    MOTLEY RICE LLC
                    28 Bridgeside Boulevard
                    Mount Pleasant, South Carolina 29464
            BY:     **ANNIE E. KOUBA**
                    **ATTORNEY AT LAW**

                    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                    275 Battery Street - 29th Floor
                    San Francisco, California 94111
            BY:     **LEXI J. HAZAM**
                    **MICHAEL I. LEVIN-GESUNDHEIT**
                    **ATTORNEYS AT LAW**

                    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
                    250 Hudson Street - 8th Floor
                    New York, New York 10013
            BY:     **KELLY K. MCNABB**
                    **ATTORNEY AT LAW**

                    BEASLEY ALLEN LAW FIRM
                    218 Commerce Street
                    Montgomery, Alabama 36104
            BY:     **JOSEPH G. VanZANDT**
                    **ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:  Kelly Shainline, CSR No. 13476, RPR, CRR
              Official Stenographic Reporter

**APPEARANCES**:   (CONTINUED)

For Plaintiffs:
                        GIBBS LAW GROUP, LLP
                        1111 Broadway - Suite 2100
                        Oakland, California 94607
              BY:  **ANDRE M. MURA**
                   **ATTORNEY AT LAW**


                        SEEGER WEISS LLP
                        55 Challenger Road - 6th Floor
                        Ridgefield Park, New Jersey  07660
              BY:  **AUDREY C. SIEGEL**
                   **ATTORNEY AT LAW**

For Plaintiff the People of the State of California:
                        CALIFORNIA DEPARTMENT OF JUSTICE
                        OFFICE OF THE ATTORNEY GENERAL
                        455 Golden Gate Avenue - 11th Floor
                        San Francisco, California 94102
              BY:  **MEGAN M. O'NEILL**
                   **JOSHUA OLSZEWSKI-JUBELIRER**
                   **DEPUTY ATTORNEYS GENERAL**


For Plaintiff the Commonwealth of Kentucky:
                        KENTUCKY OFFICE OF THE ATTORNEY GENERAL
                        COMMONWEALTH OF KENTUCKY
                        Office of Consumer Protection
                        1024 Capital Center Drive - Suite 200
                        Frankfort, Kentucky 40601
              BY:  **J. CHRISTIAN LEWIS**
                   **ASSISTANT ATTORNEY GENERAL**


For Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.;
Facebook Holdings, LLC; Facebook Operations, LLC; Facebook
Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg:
                        COVINGTON & BURLING LLP
                        1999 Avenue of the Stars - Suite 3500
                        Los Angeles, California 90067
              BY:  **ASHLEY M. SIMONSEN**
                   **ATTORNEY AT LAW**


                        COVINGTON & BURLING LLP
                        Salesforce Tower
                        415 Mission Street - Suite 5400
                        San Francisco, California 94105
              BY:  **ISAAC D. CHAPUT**
                   **ATTORNEY AT LAW**

1    **<u>APPEARANCES</u>:   (CONTINUED)**

2    For Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.;
     Facebook Holdings, LLC; Facebook Operations, LLC; Facebook
3    Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC;
     Siculus, Inc.; and Mark Elliot Zuckerberg:
4                             COVINGTON & BURLING LLP
                              One City Center
5                             850 Tenth Street, NW
                              Washington, D.C. 20001
6                    BY:  **PAUL W. SCHMIDT**
                         **ATTORNEY AT LAW**
7
                              COVINGTON & BURLING LLP
8                             620 Eighth Avenue
                              New York, New York  10018
9                    BY:  **GREGORY L. HALPERIN**
                         **ATTORNEY AT LAW**
10
     For Defendant Snap Inc.:
11                            MUNGER, TOLLES & OLSON LLP
                              355 South Grand Avenue - 35th Floor
12                            Los Angeles, California 90071
                     BY:  **LAURA M. LOPEZ**
13                       **ATTORNEY AT LAW**

14   For Defendants TikTok Inc. and ByteDance Inc.:
                              FAEGRE DRINKER BIDDLE & REATH LLP
15                            90 S. 7th Street - Suite 2200
                              Minneapolis, Minnesota 55402
16                   BY:  **AMY R. FITERMAN**
                         **ATTORNEY AT LAW**
17
                              KING & SPAULDING
18                            1700 Pennsylvania Avenue NW
                              Washington, D.C.  20006
19                   BY:  **DAVID P. MATTERN**
                         **ATTORNEY AT LAW**
20
                              KING & SPAULDING
21                            1180 Peachtree Street
                              Atlanta, Georgia  30309
22                   BY:  **GEOFFREY DRAKE**
                         **ATTORNEY AT LAW**
23

24

25

1    **APPEARANCES**:   **(CONTINUED)**

2    For Defendants YouTube, LLC, and Google LLC:
                          WILSON, SONSINI, GOODRICH & ROSATI
3                        650 Page Mill Road
                          Palo Alto, California  94304
4                  BY:  **ANDREW KRAMER**
                        **ATTORNEY AT LAW**
5
                          WILSON, SONSINI, GOODRICH & ROSATI
6                        953 E. 3rd Street - Suite 100
                          Los Angeles, California 90013
7                  BY:  **MATTHEW K. DONOHUE**
                        **ATTORNEY AT LAW**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    Thursday - March 24, 2024                     1:06 p.m.

 2                      P R O C E E D I N G S

 3                          ---o0o---

 4         THE CLERK:  Now calling Multidistrict Litigation

 5    22-3047, In Re: Social Media Adolescent Addiction and Personal

 6    Injury Products Litigation.

 7         Counsel, when speaking please approach the podium and

 8    state your name.

 9         THE COURT:  Okay.  We're here for the monthly

10    discovery management conference.  I have received the party's

11    joint status report, Docket 686.

12         Good afternoon, everyone.

13         So it's clear to me the big issue is state agency

14    discovery.  So who's going to talk about that on each side?

15         MR. OLSZEWSKI-JUBELIRER:  Good afternoon, Your Honor.

16    Josh Olszewski-Jubelirer for the People of the State of

17    California.

18         THE COURT:  Okay.  Do you speak on behalf of all the

19    state AGs?

20         MR. OLSZEWSKI-JUBELIRER:  California is a member of

21    the leadership coalition of state AGs.  I'm here representing

22    the People of the State of California.

23         THE COURT:  Okay.  Well, if your -- do you -- well, if

24    your views differ with any other state AGs, you need to let me

25    know because, I mean, you're either presenting arguments as a
```

```
 1   block or not.
 2            MR. OLSZEWSKI-JUBELIRER:  Of course, Your Honor.
 3            THE COURT:  Okay.
 4            MR. HALPERIN:  Good afternoon, Your Honor.  Greg
 5   Halperin from Covington & Burling on behalf of the Meta
 6   defendants.
 7            THE COURT:  Okay.  And just for the record, I both
 8   received the submissions and the joint report as well as the
 9   separately filed is it Joint Statement Re State Agency
10   Discovery from the parties?
11        So here's where I am on this issue.  Okay.  And thinking
12   about it further, it appears to this Court that this is an
13   issue that's going to depend on individual state law, state
14   government structure in terms of the state constitution, and
15   the specifics of each state.
16        So the briefing the parties have submitted to me has been
17   kind of blanket with regard to treated all states as if they're
18   equal, and I think defendants -- well, Meta would admit that it
19   does differ from state to state in terms of whether the state
20   constitution sets up the state AG in a different status as
21   regard to other agencies, doesn't it?
22            MR. HALPERIN:  That's true, Your Honor, and certainly
23   the law as to whether the state AG is required to represent all
24   agencies or not differs a bit by state.
25            THE COURT:  Right.  So I was trying to avoid a
```

1    multitude of briefs on this, but I think there's no way around

2    it.  I was considering doing it by chart, but I don't think

3    that's going to work.  It's just too many states.

4         So I'm going to order each state to provide a one-page

5    supplemental brief on this issue addressing -- letter brief --

6    addressing specifically, and cite the law of that state or the

7    constitution of that state, which prohibits or prevents the

8    AG's office to access documents of the agencies that have been

9    identified by Meta as being the agencies from which discovery

10   would be sought.  Right?

11        Because I also know that it could be, hypothetically, in

12   some states the AG's office may have the ability to access

13   documents from some agencies but not others.  All right.  So I

14   want the focus to be on the agencies that have been identified

15   by Meta for each particular state in the filing of the chart

16   that you provided to the Court dated March 11th, 2024, which is

17   entitled "State Attorney General Plaintiffs and Meta Defendants

18   Joint Submission Regarding State Agencies Pursuant to Discovery

19   Management Order Number 3."

20        All right.  So, again, the briefing should focus on and

21   address -- it's only one page -- address whether there is state

22   law or state constitutional authority that prohibits or

23   prevents the AG of that state from accessing the documents of

24   the agencies of that state identified by Meta.  Okay?

25        And discuss whether the state AG of that state lacks a

```
1   legal right to access the documents of those agencies under the
2   Ninth Circuit's legal control test.  I draw your attention to
3   the In Re: Citric Acid Litigation cases, the case most people
4   cite for that test.  Okay?
5        On the defense side -- I assume it's Meta -- would address
6   the flip side of that, which is cite and argue the law that
7   shows that that particular state AG does -- is not prevented or
8   is not prohibited from accessing the documents of the agencies
9   of that state or whether there's law that specifically allows
10  or requires the state AG to have access to documents of those
11  agencies of that state and also discuss the legal control test.
12       On both sides as well, because this has come up in a
13  slightly different context but it impacts this, I want both
14  sides to address whether the AG of that state has taken a
15  position or will take a position in this litigation that
16  communications between that state AG's office and any of the
17  listed agencies are privileged communications or not.
18       So I want to make sure that's clear.  And so I want one
19  page per state from each state and I want one-page rebuttal
20  from Meta to each state.  All right.  So I think I'm facing 60
21  pages of briefing if I'm doing the math right.
22       Are there 30 states involved here?
23            MR. HALPERIN:  There are 35, Your Honor.
24            MR. OLSZEWSKI-JUBELIRER:  35.
25            THE COURT:  70 pages of briefing coming my way.  Okay?
```

1        All right.  So that's what you're limited to, a page each.

2   Okay?  So make your arguments tight and succinct and address

3   those issues.  That's why I tried to narrow the issues to the

4   one specifically that I've identified.

5        I will say separate and apart from this, I still want all

6   the briefing.  I haven't made a final decision on this issue;

7   but as I noted at one of the prior CMCs, separate and apart

8   from the legal control test and access test, strictly speaking,

9   I believe under both Rules 1 and 26 and my general authority of

10  discretion to control discovery, I have the authority to treat

11  the agency as if it were a party if the state AG of that state

12  is representing that agency.

13       This primarily affects the states such as -- I'm just

14  going to pick one -- Colorado, which have already told me in

15  the chart that they plan to represent all agencies of that

16  state.  I haven't made a final decision on that, so don't brief

17  the issue.  All right?  I am still looking at that.  But I am

18  inclined to narrow the dispute somewhat to go down that route

19  separate and apart from the legal control test and separate and

20  apart from the Rule 34 approach and use my authority under

21  Rule 26 and Rule 1 under the federal rules generally for that.

22  But I haven't made a final decision on that, so I've already

23  think I've heard your arguments on that point as well.  So get

24  me the briefing.

25       How long do you need for one-page briefs each?  A week?

1    Is that enough?

2        **MR. HALPERIN:**  I think that should be fine for us,

3    Your Honor.

4        **MR. OLSZEWSKI-JUBELIRER:**  Your Honor, I think -- I

5    guess I have a couple of questions.

6        **THE COURT:**  Sure.

7        **MR. OLSZEWSKI-JUBELIRER:**  First of all, *Citric Acid* I

8    think is very clear that the legal control test is the

9    burden -- to establish is the burden of the party seeking

10   discovery, and so this is Meta's burden here.

11       **THE COURT:**  If you're going to argue that they haven't

12   met the legal control test and you just want to argue that's

13   their burden and you don't want to address the issue, that's

14   totally up to you, but then you haven't taken a position on the

15   issue.

16       **MR. OLSZEWSKI-JUBELIRER:**  Certainly, Your Honor.

17   That's not what I was suggesting.

18       **THE COURT:**  Okay.

19       **MR. OLSZEWSKI-JUBELIRER:**  I guess what might be more

20   helpful for you, Your Honor, is we're happy to see -- to have

21   Meta serve us their arguments within a week and within a week

22   after that we can respond.

23       I think the issue is there's 35 of us and there's just one

24   of them, and so there's going to be at least some coordination

25   in order to make the arguments sort of more cohesive.

1          **THE COURT:**  You-all had no problem submitting the

2     joint statement previously.  What's the problem here with

3     submitting joint -- 35 joint briefs to me?

4          **MR. OLSZEWSKI-JUBELIRER:**  No problem with submitting

5     35 joint briefs.  Part of the point was that if you -- if we're

6     just sort of briefing past each other, it may not be as helpful

7     to you as if we can take a look at what the party that has the

8     burden has to say about it and we can express our views on

9     whether that's right and whether that's wrong.

10         **THE COURT:**  And that these are joint briefs; right?  I

11    don't do opening/opposition/reply for a reason.  How you-all

12    work out and negotiate the exchange of your sections in the

13    joint brief is up to you -- all right? -- but it's not -- this

14    is not opening/opposition/reply.  We don't do it that way here;

15    right?

16         And I made the issues succinct and narrow so that you're

17    not going to be, hopefully -- if you're briefing past each

18    other, then, you know, you'll have -- presumably you'll give

19    each other some time to make slight adjustments if you need to

20    if you actually are briefing past each other, and I expect you

21    to work rationally and cooperatively on that.

22         **MR. OLSZEWSKI-JUBELIRER:**  We're ready and eager to

23    work cooperatively on that.  Is it possible to have just a

24    little bit more than a week?  Two weeks?

25         **THE COURT:**  Two weeks?

1          **MR. OLSZEWSKI-JUBELIRER:** Two weeks. Just because if

2     we're -- if we're exchanging positions and looking at each

3     other's side's positions and responding to them, we're talking

4     about briefing this -- like sending initial positions maybe in

5     the next couple of days.

6          **THE COURT:** So you've been meeting and conferring and

7     discussing this issue amongst each other and against each other

8     for months now, and you can't get it together in -- how about

9     10 days? Will 10 days work?

10          **MR. OLSZEWSKI-JUBELIRER:** We'll take whatever the

11     Court will provide. I will say we have seen no -- Meta has not

12     shared any authority with us that says that the AGs state by

13     state have the legal control over these agencies.

14          **THE COURT:** That's why I'm asking for the briefing.

15     But, I mean, you do understand, different cases cited, at least

16     in the joint statement, address state law; right? So there

17     are -- I mean, there have been cases -- the whole reason why

18     I'm asking for the state-by-state briefing is it's clear the

19     precedence here goes state by state.

20          So to say that they haven't given you any precedent for

21     any states is not exactly correct; right?

22          **MR. OLSZEWSKI-JUBELIRER:** Again, Your Honor, I may

23     have misspoke. I meant Meta has not gone state by state and

24     presented this information to us. We've certainly seen their

25     cases, that's right, Your Honor.

1          **THE COURT:**  That's exactly why I'm ordering it.  So is

2    10 days enough?

3          **MR. HALPERIN:**  Yes, Your Honor.

4          **THE COURT:**  All right.  Let's do 10 days.  And I'll --

5    I don't think we need more argument after that, but I'll give

6    you further direction once I see the briefing on whether

7    there's going to be argument or not.  Okay?

8          **MR. HALPERIN:**  Your Honor, if I could just ask a point

9    of clarification just so we don't run afoul of Your Honor's

10   expectations.  Is it one page single spaced like in the joint

11   brief?

12         **THE COURT:**  Yes.

13         **MR. HALPERIN:**  Thank you, Your Honor.

14         **MR. OLSZEWSKI-JUBELIRER:**  And, Your Honor --

15         **THE COURT:**  Normal margins.  So no fiddling with

16   margins or fonts or anything.

17         **MR. HALPERIN:**  Absolutely.

18         **THE COURT:**  All right.

19         **MR. OLSZEWSKI-JUBELIRER:**  Just one point of

20   clarification, and then I certainly do have some thoughts to

21   share on the joint briefing that I think may be helpful in sort

22   of framing this.

23         But the question for clarification was just the entities

24   that we are addressing are just limited to those in that joint

25   submission; right?  In Meta's list of 275; is that right?

1          **THE COURT:**  They represented those are the agencies

2    they expect to take discovery from so, yes.  Right.  I mean, I

3    think I was -- was I not clear?  I thought I was clear on that,

4    that you should be addressing whether they have access to or

5    are prohibited from getting access to the documents of the

6    agencies that are listed and that were identified by Meta as

7    the agencies they want to take discovery from in the March 11th

8    chart I think.

9          **MR. LEWIS:**  Sorry, Your Honor.  Chris Lewis for the

10   states.

11         The reason that comes up as an issue, the discovery that's

12   been served is much, much broader as to the agencies, the

13   legislature, and other entities that they've requested from and

14   RFPs that have been served.  So we just want to make sure that

15   we are working off that list and not off the much broader

16   definition of who RFPs were being served on through the AG's

17   office.

18         **THE COURT:**  Well, I didn't think Meta served any

19   subpoenas yet.  Have you served subpoenas?

20         **MR. LEWIS:**  No subpoenas.

21         **MR. HALPERIN:**  We have not, Your Honor.

22         **MR. LEWIS:**  It was request for production of documents

23   that defined "you" to include a larger number of agencies than

24   what was on that filing, and I think that actually also

25   included the state legislature.

```
 1          THE COURT:  I believe my instructions were that this
 2   chart that was submitted to me March 11th --
 3          MR. LEWIS:  That's perfect, Your Honor.
 4          THE COURT:  -- were to list the agencies from whom
 5   Meta intended to take discovery only, and not every other -- if
 6   they left them off the list, they left them off the list,
 7   they're not taking discovery from that other agency.  Right?
 8          MR. LEWIS:  Sure.
 9          THE COURT:  If they want to, you know, take a position
10   later on somebody else that's not on the list, they're going to
11   have to show good cause.
12          MR. LEWIS:  Thank you, Your Honor.
13          THE COURT:  Any other clarifications?
14          MR. OLSZEWSKI-JUBELIRER:  No other clarifications,
15   Your Honor.  I did want to address a couple of things from the
16   letter brief with Your Honor's indulgence.
17          THE COURT:  Well, all right, given the fact that we're
18   going to be briefing the more precise issues state by state
19   and, like I said, this joint statement really kind of treated
20   this as a blanket matter, which I don't think actually is
21   helpful in resolving the issue, so I'll give you a little bit
22   of time to make your point; but if it's going on a tangent that
23   I don't think is going to help resolve it, I'm going to move
24   on.
25          MR. OLSZEWSKI-JUBELIRER:  Thank you, Your Honor.
```

```
1          I think -- I just want to make two quick points about some
2     of the arguments from the letter briefs.  I will -- I agree
3     with Your Honor that the issue of control is really critical,
4     and you'll see arguments about that we do not have control over
5     these agencies.
6          I think from the case law that you've seen, Meta's cases
7     are distinguishable.  They fall into essentially three buckets;
8     cases in which AGs have alleged harm to specific agencies.
9     That's not the case in this litigation.  We do not allege harm
10    to any specific agencies.  We're not seeking relief on behalf
11    of any agencies.
12         There are cases in which the state is sued as a defendant
13    in the context of redirecting or equal protection claims --
14         THE COURT:  You're repeating arguments you made in
15    your brief.
16         MR. OLSZEWSKI-JUBELIRER:  Okay.
17         THE COURT:  You don't need to repeat arguments you
18    made in your brief.
19         MR. OLSZEWSKI-JUBELIRER:  Just moving beyond that, I
20    think on civil penalties --
21         THE COURT:  Yes.
22         MR. OLSZEWSKI-JUBELIRER:  -- Meta's argument is that
23    the agencies that would be subject to discovery would depend on
24    a speculative idea of who might receive a recovery when it's
25    appropriated by the legislature.  I'm not aware of any case
```

1    that holds this with respect to civil penalties.

2        Meta asks to take it one step further.  They say because

3    some states' civil penalties could be -- could go to the

4    General Fund and be appropriated to any agency, then all states

5    must be subject to discovery for all agencies.

6        And I think one thing that's important to note is even

7    with respect to some of the agent -- some of the states they

8    listed, California, our civil penalties do go to the General

9    Fund, three paragraphs down from the paragraph they cited, "The

10   statute is very clear that for the exclusive use of the

11   Attorney General for consumer protection enforcement."

12       In terms of the arguments about our cases, they're just

13   factually incorrect.  *Locklear* is a consumer protection case

14   that raises the exact same UCL and FAL claims and sought civil

15   penalties.  *Novartis* is a False Claims Act case that also

16   sought civil penalties.  *Warner Chilcott*, which they don't

17   specifically address, also includes consumer protection claims

18   which sought civil penalties.  And I'll leave it there.

19           **THE COURT:**  Okay.  Let me make clear.  On the briefing

20   on legal control, I want you to address not the test in general

21   but whether the state agents -- whether the AG has the legal

22   right to access the documents under the legal control test --

23   all right? -- or lacks the legal right to access.  All right?

24   Legal right to access, that's what I want you to tell me,

25   whether or not that state AG has that legal right or not.

1    Okay?

2              **MR. HALPERIN:**  I understand, Your Honor.

3              **THE COURT:**  Okay.  Anything further from either side

4    on state agency discovery at this point?

5              **MR. HALPERIN:**  We'll respond in our letter briefing,

6    Your Honor.

7              **THE COURT:**  Okay.  Anything further?

8              **MR. OLSZEWSKI-JUBELIRER:**  Nothing at this time,

9    Your Honor.

10             **THE COURT:**  Okay.  Great.

11        All right.  So let's turn to the status report itself.

12        Now, I was -- maybe I don't want to get too optimistic,

13   but in the section on issues ripe for dispute, there are only

14   four listed and three of them have already been kind of

15   resolved.  Like, I issued the depo protocol.  We did the depo

16   protocol earlier this week.

17        Who's here to talk about depo protocol here again?  I just

18   want to -- I never set a deadline to get the -- please come

19   forward.

20        So I don't know if you've had a chance to see the order

21   that we issued on the depo protocol.  First, any questions on

22   that order from either side?

23             **MS. KOUBA:**  No, Your Honor.  We did have a chance to

24   review it.  No questions.

25        And I apologize.  It's Annie Kouba with Motley Rice for

1    the plaintiffs.

2         MR. CHAPUT:  Isaac Chaput, Covington & Burling, for

3    the Meta defendants.

4         We did receive Your Honor's order, and no questions from

5    defendants at this point.  Thank you.

6         THE COURT:  And one thing I specifically didn't do

7    because I knew we would come back today was ask you:  In light

8    of the hearing and now in light of the order, how much time do

9    you need to submit, hopefully, the final proposed depo protocol

10   for me to sign off on.

11        MS. KOUBA:  Your Honor, in light of your order and the

12   transcript having already come through, I don't think that

13   there should be any delay at all.  A couple of days; but if

14   defendants think they may need longer --

15        MR. CHAPUT:  Maybe just a week, Your Honor, just to

16   make sure that we can iron everything out in case there are --

17        THE COURT:  The end of next week.

18        MR. CHAPUT:  Thank you, Your Honor.

19        THE COURT:  And so what is next Friday?

20        MR. CHAPUT:  I believe it's the 30th.

21        THE CLERK:  29th.

22        MR. CHAPUT:  29th.

23        THE COURT:  Deadline to submit is March 29th.  Okay?

24   Great.

25        And then I saw there's no need for a source code protocol

1    at this juncture.  And has that stip and proposed order come in

2    yet?  I know you said you were going to file it.  I checked the

3    docket.  I didn't see it yet.

4         **MR. WARREN:**  Good afternoon, Your Honor.

5    Previn Warren for the plaintiffs with Motley Rice.

6         No, nothing's come through.  And, actually, we've reached

7    agreements with defendants that I think we're just going to

8    forgo both the source code protocol and any sort of stipulation

9    or waiver on the docket.

10        The shared understanding is that plaintiffs are not going

11   to be seeking access to the source code itself, meaning the

12   actual programming instructions, unless and until defendants

13   put that at issue.

14        We have reserved our rights to seek other documentation

15   that pertains to source code.  That's source code adjacent is

16   what we're sort of calling it.  You know, it may be that if and

17   when we request those documents, there are issues to bring to

18   your attention regarding confidentiality or such related

19   things, but those are not ripe at this time.

20        **THE COURT:**  Okay.  Well, presumably if it's not source

21   code, then it would still fall under the existing protective

22   order now, so --

23        **MR. WARREN:**  Correct, Your Honor.

24        **THE COURT:**  -- for the most part it shouldn't

25   require -- there won't be a dispute.

1          **MR. CHAPUT:**  I think that's generally correct,

2    Your Honor.  There is a little bit of lack of clarity in

3    exactly what plaintiffs contemplate might fall within that

4    category of source code adjacent and there may be limited

5    instances beyond where some additional protection beyond highly

6    confidential competitor would be called for.  And we would, of

7    course, meet and confer with plaintiffs once we come across

8    such an issue and bring it to the Court expeditiously if there

9    is a problem.

10          **THE COURT:**  So the record's clear, it's my

11   understanding I should not expect a stip or proposed order;

12   you're just agreeing among counsel?

13          **MR. WARREN:**  Correct, Your Honor.  We don't feel the

14   need to put it on the docket at this time.

15        I mean, to preview the issue, we take the position the

16   protective order is sufficient to handle whatever we'd be

17   requesting; but, again, we'll sort that out with defendants

18   before bringing it to your attention.

19          **THE COURT:**  Okay.  And then I think we issued the

20   order on the clarification on discovery limits right before

21   this hearing.  Did you-all see that?

22          **MR. CHAPUT:**  That's correct.  We saw that, Your Honor.

23   Thank you.

24          **THE COURT:**  And in terms of formatting, it includes

25   the entire statement on top of the proposed order -- or the

order because the order, I think by its terms, refers back to the stipulation and the statement.  So there was no way to separate them and file it as a separate document.

I would suggest for future proposed orders, if it's a stipulation, like cut and paste the stipulation into the proposed order so we don't have to file the whole thing.

**MR. WARREN:**  Understood, Your Honor.

**THE COURT:**  Okay.  And we covered state agency.  So we're done for today; right?

**MR. WARREN:**  We could be.  I think there are -- you know, there's always things that we can raise, and --

**THE COURT:**  Is it like the last CMC where there are issues in the discovery issues not currently ripe but that you want to talk about?

**MR. WARREN:**  There may be some, Your Honor.  There actually has been one somewhat late-breaking issue that's come up that may require the attention of the Court, although it may be premature, we're still talking about it, and that's that certain depositions have been noticed by a state Attorney General that is not part of the multistate coalition in the MDL.

And, you know, my understanding is there aren't dates actually set for those deponents yet.  Those are Meta employees or former employees.  I think there's three.  And so it does leave some unanswered questions around how we deal with that

 1   cross-noticing issue given that we, you know, haven't received

 2   the custodial files for those individuals and don't have the

 3   same level of coordination with that particular Attorney

 4   General that we do with our 35 Attorney General colleagues who

 5   are represented here today.

 6           **THE COURT:**  So how many depos are we talking about?

 7           **MR. CHAPUT:**  There are three depositions, Your Honor.

 8   And we actually previewed this item earlier this week when we

 9   were before Your Honor.  I think it is premature.

10       We have Your Honor's deposition protocol order.  Now we

11   understand kind of what the steps are that we need to follow.

12   I think the parties need to meet and confer, including with the

13   Attorney General who is proceeding in state court, before we --

14   there's anything further for us to discuss with Your Honor.

15           **MR. WARREN:**  I would agree with that, yes.

16           **THE COURT:**  Just for my own edification, which state

17   is that?

18           **MR. CHAPUT:**  Tennessee.

19           **THE COURT:**  Tennessee, okay.  Call it a nonparty AG.

20           **MR. WARREN:**  Correct.

21           **THE COURT:**  Okay.

22       All right.  Well, hopefully everything works out fine with

23   that other AG in Tennessee.

24       Okay.  Other issues you want to raise from the other parts

25   of the status report?

1    **MR. WARREN:**  Your Honor, there is an issue around

2    initial disclosures that might be profitable to discuss at this

3    juncture that was actually fairly well ventilated in the

4    discovery management conference statement that we could talk

5    through.  This was flagged as not ripe but, you know, maybe

6    it's more better described as sort of ripe.

7        I think that the issue that we have right now is that --

8    well, it's a sort of two-way issue.  I think there are

9    complaints in both directions about the initial disclosures

10   that have been proffered to date.

11       Our position is the plaintiff fact sheets are due on

12   April 1st, and really everything that they're looking for will

13   be provided through that, including an extensive damages

14   section of the PFS that will provide that computation.

15       Our understanding of Your Honor's prior remarks at the DMC

16   from January is that we could, in essence, sort of put down a

17   placeholder for those PFSs and then those PFSs will come in to

18   provide a robust amount of information.

19       In the other direction, you know, we've been quite

20   disappointed with the initial disclosures offered by

21   defendants.

22           **THE COURT:**  Before we get to the second dispute --

23           **MR. WARREN:**  Sure.

24           **THE COURT:**  -- let me just cover the first one.

25       For the record, why don' you --

1              **MR. DRAKE:**  Geoffrey Drake, King & Spalding, for the

2     TikTok defendants.

3              **THE COURT:**  So what is it in Rule 26(a)(1) that won't

4     be in their plaintiff fact sheets that you need?

5              **MR. DRAKE:**  As we laid out in the letter, that we

6     anticipate that the fact sheets will provide the information

7     that we expected to receive in the initial disclosures.  So I

8     don't think that there's anything ripe for the Court to

9     adjudicate today.

10         We didn't file a motion or raise any concern.  We simply

11    sent a letter to the plaintiffs expressing our dissatisfaction

12    that even information they already knew at the time the

13    disclosures were due wasn't provided, and we said in the letter

14    "We anticipate you're going to cure this on April 1st in your

15    fact sheets."  And we expect that to be cured immediately

16    because we only get two weeks after that then to make our

17    bellwether selection, so there's limited time.

18             **THE COURT:**  So in terms of the timing issue -- and I

19    should have checked the docket -- is April 1st the date to

20    provide plaintiff fact sheets or is it the deadline by which

21    they have to be submitted or exchanged?

22             **MR. WARREN:**  Well, I think in all -- for all practical

23    purposes, those are one and the same given that it's about a

24    week away, but we expect the plaintiffs' fact sheets for all

25    cases that would be in the bellwether pool to be filed on

1    April 1st as they're required to be.  So it sounds like we

2    don't have a dispute here.

3         **THE COURT:**  Okay.  My question is:  Are any of them

4    ready to go?  I mean, why hold back?  If any of them are ready

5    to go, why hold back?

6         **MR. WARREN:**  We passed that along to all of the

7    plaintiffs' attorneys, and they understand they should be

8    filing on a rolling basis; but I think as these things tend to

9    happen, you know --

10        **THE COURT:**  My only directive then is to make sure all

11   the plaintiffs' attorneys know that, you know, if they're ready

12   to go, they shouldn't hold back artificially.

13        **MR. WARREN:**  Absolutely, Your Honor.

14        **MR. DRAKE:**  Thank you, Your Honor.

15        I think that was really our point in many instances.  If

16   the information is already in the possession of counsel, which

17   I have to assume it is, particularly for these school districts

18   which are akin to corporate entities that are suing, we'd like

19   to get that information.  We think we were entitled to it

20   two weeks ago, but we're trying to be reasonable about it and

21   we'll look forward to the supplement.

22        **THE COURT:**  Okay.  So really no dispute there, and

23   we'll just try to work things through --

24        **MR. WARREN:**  Yes, sir.

25        **THE COURT:**  -- as expeditiously as possible.

1          **MR. WARREN:**  Yes, sir.

2          **THE COURT:**  Okay.  And plaintiffs' complaint as to the

3    defendants' initial disclosures, I don't want to put words in

4    your mouth, but it's basically that the plaintiffs feel like

5    they didn't identify enough potential witnesses.

6          **MR. WARREN:**  Well, that's one issue.  You know, as you

7    know, there's four components to the Rule 26(a)(1) disclosures.

8    You know, as for the witnesses, you know, the plaintiffs

9    actually identified eight times the number of Meta employees

10   that Meta themselves identified, five times the number of Snap

11   employees, and three times the number of TikTok and YouTube

12   employees respectively.  So, you know, that's just based on our

13   fairly limited ability to understand information based on the

14   documents we have to date.

15         We don't really understand why the defendants, to really

16   just paraphrase Mr. Drake's words from like 30 seconds ago, why

17   if they're sitting on information about witnesses, they ought

18   to be able to hold that back from us.

19         I mean, to provide one instance, Mr. Zuckerberg of Meta

20   Mr. Spiegel of Snap, two highly percipient fact witnesses that

21   run the company and designed the software at issue, not

22   identified on the initial disclosures.

23         I think the argument that's been put back to us is, "Well,

24   you already know that."  And perhaps that's true with respect

25   to those two individuals, but what about all the other ones?

1    And, you know, we are troubled that there wasn't a fulsome

2    disclosure.

3         With respect to the insurance agreements, what we got back

4    was, you know, "If you request them, we'll provide them."  But

5    that's not actually what the rule says.  The rule requires the

6    defendants to actually provide through the disclosures for fair

7    inspection and copying.  So, I mean, I suppose --

8              **THE COURT:**  Before you -- so let's do subissue one.

9              **MR. WARREN:**  Sure.

10             **THE COURT:**  Okay.  In terms of witnesses, nobody gave

11   them to me, so do the defendants' initial disclosures have

12   sometimes the standard language is that you incorporate by

13   reference every witness identified by any other party in the

14   case or did you just limit it to the people strictly you're

15   identifying?

16             **MR. DRAKE:**  It absolutely incorporates by reference

17   other parties' initial disclosures, but I think it seems that

18   as between the plaintiffs and defendants here, we maybe have a

19   difference of a viewpoint about what the rule actually

20   requires.

21             **THE COURT:**  I was going to get to that.

22        So you understand their position is that, and the rule

23   says, it's only witnesses they intend to rely upon for their

24   defenses.  So if they don't list Mr. Zuckerberg, just as an

25   example, on their list, that means they're not planning to rely

 1  on him for their defenses.

 2      You may rely on him for your cause of action, but that --

 3  the rule I think on its face doesn't require them to list

 4  people that they're not intending to rely upon.  Right?  That's

 5  the gist of their argument.  I think on the face of the rule,

 6  they're right.

 7      So but the flip side of that is if you do know of other

 8  people at your respective client companies who you plan to rely

 9  on, even reasonably expect to rely on, you do need to list

10  them.  You can't hold them back.

11      **MR. DRAKE:**  Absolutely, Your Honor, and that's the

12  approach that we took.  We tried to identify -- I think I can

13  speak safely for all four defending groups, we tried to

14  identify the individuals that at this point in time we

15  reasonably anticipate relying on for the presentation of our

16  defenses, which of course is a different list than a list of

17  every single person at every one of our companies who may have

18  discoverable information.  That's something that will be sorted

19  out, and it sounds like the plaintiffs already have a pretty

20  good working list of who they think has discoverable

21  information.

22      I think there's also a difference of opinion between the

23  parties, respectfully, as to what the scope of these cases are

24  about.  I think the plaintiffs are taking the position that

25  every decision that's ever been made by any one of our clients

1    about anything about the platforms is part of the case.  We

2    don't agree with that.  We laid that out in our initial

3    disclosures.  We've laid that out in other objections, and I

4    think that will get slowly adjudicated as we move through the

5    discovery process.  And the Court will make a decision about

6    whether we're right or wrong about that, but that certainly

7    informed our decision making as it related to our

8    identification of witnesses.

9            **THE COURT:**  Okay.

10           **MR. WARREN:**  So, Your Honor, if it's, in fact, true

11   that Meta only intends to rely on four people for their

12   defense, then I suppose we have no dispute.

13       We're a little incredulous with that, frankly, given the

14   scope of this case, the size of it, and its importance for the

15   company and its, frankly, national visibility; but, you know,

16   that is what they have done.  They have put four people on

17   their initial disclosure witness list, and so there it is.

18           **THE COURT:**  And on that point -- right? -- every party

19   has a duty to supplement their disclosures; and if any

20   defendant, not just Meta, suddenly adds 30 people to their

21   initial disclosures one month before discovery closes I'm --

22   you know, I for one am going to look unkindly on that.  Right?

23   I'm not going to preside over the trial on this but, you know,

24   Judge Gonzalez Rogers is probably going to think carefully

25   about -- I'm taking the implied argument -- those witnesses

1    should be barred from testifying; right?  I don't want to put

2    words in your mouth.

3         **MR. WARREN:**  No, no.  Those were the words in my

4    mouth.  Thank you.

5         **MR. DRAKE:**  Understood, Your Honor.

6    And I don't want to speak for Meta in terms of who they

7    identified in their disclosures, but obviously 23 company

8    witnesses across four defendants are probably three to four

9    times more than Judge Gonzalez Rogers will probably allow

10   testify live at trial.  I mean, we're not going to have

11   10 months to do this trial.  So we're trying to -- obviously

12   these are the witnesses, as stated in the rule, that we may

13   rely upon, and we understand our rule and obligation to

14   supplement under Rule 26.

15        **THE COURT:**  I trust able counsel to make good

16   strategic choices and, you know, weigh all the pros and cons.

17   On the insurance agreement issue, I mean, same argument

18   applies.  The face of the rule requires you to produce the

19   insurance policies; right?  I mean --

20        **MR. DRAKE:**  My client doesn't have any insurance, so

21   perhaps I should pass the point two to one of the other

22   representatives of the other client groups that do have

23   insurance.  Thank you.

24        **THE COURT:**  Okay.

25        **MS. SIMONSEN:**  Good afternoon, Your Honor.  Ashley

1    Simonsen, Covington & Burling, for the Meta defendants.

2        I believe the rule states that the defendant shall make

3    available for inspection and copying copies of the relevant

4    insurance policies, which we have agreed to do.  I'm happy to

5    follow up with plaintiffs to set a time or logistics to make

6    that happen.

7            **THE COURT:**  So there's no dispute.

8        **MR. WARREN:**  Well, the dispute is just that that

9    should have been provided with the disclosures; but if they're

10    going to provide it tomorrow, great.  I think we just -- we

11    have asked for it.  It's required under the rule.  We're just

12    simply looking for a date by which they're going to be

13    provided.

14            **MS. SIMONSEN:**  Your Honor, unlike the rule that, for

15    instance, requires plaintiffs to provide the documents

16    underlying damages calculations with their initial disclosures,

17    the rule on insurance disclosures simply requires that we make

18    them available for inspection and copying, not that we provide

19    copies.  And so for that reason, we approached it the way the

20    rule describes it.

21        I'm happy to meet and confer with plaintiffs to make them

22    available in whatever way is most convenient for both sides,

23    but I also do want to point out that the plaintiffs have not

24    produced to us actual documents that they were required to

25    produce with their initial disclosures.  So I think we can work

 1    together on this.  I'm not sure it's something we need to be

 2    raising with Your Honor.

 3              THE COURT:  Okay.  Why don't you work it out amongst

 4    yourselves.  I think you both understand what the rule

 5    requires, and I think it sounds like it's just a matter of

 6    logistically getting the insurance agreements over to the

 7    plaintiffs.

 8              MR. WARREN:  That's sounds fine, yeah.

 9              THE COURT:  Okay.  Other issues anybody wants to raise

10    at this point?

11                        (No response.)

12              THE COURT:  Okay.  So there was -- I'm going to raise

13    one.  There was the extensive argument about the scope of

14    discovery impacted by the Court's, not mine,

15    Judge Gonzalez Rogers' order on the motion to dismiss.  So

16    who's ready to talk about that?

17        Identify yourself for the record.

18              MS. HAZAM:  Your Honor, Lexi Hazam for plaintiffs.

19              MR. SCHMIDT:  Good afternoon, Your Honor.  Paul

20    Schmidt for Meta.

21              THE COURT:  Good afternoon.

22        So thank you for your briefing on the issue.  I understand

23    it's an issue, quote, not ripe for decision so I'm just going

24    to provide you some guidance here, and you just work it out

25    amongst yourselves in light of that.

1    So the relevant part of -- this is the order in this

2  relevant part to denying in part the motion to dismiss.  This

3  is Docket Number 430, the order of November 14th, 2023.  The

4  order reads (as read):

5         "Claims 2 and 4 allege that defendants distributed

6         defective and unreasonably dangerous products without

7         adequately warning users of risks," and then it goes on.

8      Next sentence (as read):

9         "The Court defines the risks are those created by the

10        defects addressed in Claims 1 and 2."

11     And then further on (as read):

12        "The Court finds these claims plausibly alleged that

13        defendants are liable for conduct other than publishing of

14        third-party content, and the duty arises not from their

15        publication of conduct but from their knowledge based on

16        public studies or internal research of the ways that their

17        products harm children.  Plaintiffs allege through these

18        claims that defendants can meet this duty without making

19        any changes to how they publish content by providing

20        warnings for any and all of the alleged defects."

21     So the Claims 2 and 4 were not dismissed and on the face

22  of it keep any and all of the alleged defects in the case.

23  That's the way I read the order.

24        **MS. HAZAM:**  It's also how we read the order,

25  Your Honor.

1          **MR. SCHMIDT:**  And our position on that is simply we

2     recognize that's what Judge Gonzalez Rogers ruled.  She spoke

3     to the issue actually with both of the two of us at the podium.

4     The next conference we had we were obviously guided by that.

5          Our only view is it should make some difference.  There is

6     a difference between a failure to warn claim on those potential

7     features and a design defect claim on those potential features,

8     and we think we should meet and confer about how that impacts

9     things obviously guided by what Your Honor just said, guided by

10    what Judge Gonzalez Rogers said, guided by the order.

11         We started doing that on the Meta, and we hope -- we have

12    a meet and confer scheduled tomorrow with the plaintiffs and

13    hope to present some of our thoughts on that.  We've

14    preliminarily presented them, and I think each defendant

15    intends to do the same.

16          **THE COURT:**  Okay.

17          **MS. HAZAM:**  Your Honor, if I may.

18          **THE COURT:**  Yeah.  Sure.

19          **MS. HAZAM:**  It's our view that we shouldn't be meeting

20    and conferring about a claim that's clearly in the case.

21    Failure to warn is clearly in under both the Court's order and

22    her confirmation of our interpretation of it at the hearing

23    following it where she said, "Plaintiffs are correct," and that

24    was after I indicated that failure to warn extends to features

25    that are precluded as bases for direct liability under

1    Section 230.

2        So we are obviously always happy to meet and confer with

3    the defendants on specific discovery requests.  The reason we

4    flagged this scope objection to you is we believe it has no

5    validity under the order; and if that objection is going to

6    keep being raised and if defendants are going to curtail their

7    productions based on it, we will be before you with briefing on

8    the matter.

9        THE COURT:  Which is why you should be meeting and

10   conferring.

11       MR. SCHMIDT:  Yes.

12       And just so we're clear, our position is not that the

13   claim does not survive.  We have a Court ruling on that issue.

14   Our position is simply that requires some consideration as to

15   what discovery tracks to that claim.  That's what we want to

16   meet and confer on.

17       THE COURT:  Okay.  But the way I read the order, all

18   the alleged defects in the complaint are part of the case.

19       MR. SCHMIDT:  As to that claim, yes.

20       THE COURT:  As to Claims 2 and 4.

21       MR. SCHMIDT:  Yes.

22       THE COURT:  Right.  So I would go into the meet and

23   confers with that in mind because I think that would be a

24   fairly straightforward motion if it gets presented to me.

25       Okay.  So any other -- I hate to raise issues if nobody

1    wants to talk about them.  Let me just see if there's something

2    else I need to touch base with you-all.

3        Oh.  So I know you're still meeting and conferring on some

4    of the privilege log protocol issues.  Who's here to talk about

5    privilege log protocol?

6            **MS. McNABB:**  Good afternoon, Your Honor.  Kelly

7    McNabb, Lieff Cabraser, for the plaintiffs.

8            **MS. LOPEZ:**  Good afternoon, Your Honor.  Laura Lopez,

9    Munger Tolles & Olsen, for the defendants.

10           **THE COURT:**  Okay.  What I didn't do I think previously

11   is give you a deadline to work towards finalizing this, and so

12   how -- are you ready?  Have you worked through your issues?

13   Are you ready to submit something soon?

14           **MS. McNABB:**  We just received some additional edits

15   back from defendants yesterday.  So I would think that we could

16   have final protocol submitted to Your Honor by Friday of next

17   week.

18           **THE COURT:**  All right.  Does that work for defendants?

19           **MS. LOPEZ:**  I haven't had a chance to confer.  We were

20   prepared to offer at least two weeks to give us time to meet

21   and confer and finalize, Your Honor, but --

22           **THE COURT:**  Well, why don't you confer with them right

23   now --

24           **MS. LOPEZ:**  Sure.

25           **THE COURT:**  -- and see if you can do it by next

```
 1   Friday.
 2                     (Pause in proceedings.)
 3         MS. LOPEZ:  Your Honor, if it's possible to have
 4   10 days, the defendants would appreciate that.
 5         THE COURT:  Okay.  Today is the -- so 10 days, that
 6   would bring us -- well, 10 days is a Sunday; right?  So Monday,
 7   April 1st?
 8         MS. McNABB:  That's amenable to plaintiffs,
 9   Your Honor.
10         THE COURT:  All right.  So deadline to submit the
11   proposed privilege log protocol is Monday, April 1st.
12       Okay.  Anything else on privilege log?
13         MS. McNABB:  Nothing at this time, Your Honor.
14         THE COURT:  All right.
15         MS. McNABB:  I don't want to speak for the state AGs.
16       No, nothing for the state AGs either, Your Honor.
17         THE COURT:  Okay.
18         MS. LOPEZ:  No, nothing else for defendants.  Thank
19   you, Your Honor.
20         THE COURT:  Okay.  If nobody wants to talk about the
21   TikTok videos, I'm not going to touch it, except encourage you
22   to keep meeting and conferring and work it out.
23         MS. McNABB:  Yes, Your Honor.  Thank you.
24         MS. LOPEZ:  Thank you.
25         THE COURT:  Oh, I just want to confirm the plaintiffs
```

 1  had put -- I assume mainly plaintiffs have put in an

 2  explanation of how they're complying with the lead counsel

 3  meet-and-confer requirements of my standing orders.  What -- it

 4  doesn't state here, but I assume the defendants don't have any

 5  objection to what the plaintiffs are doing.

 6          **MR. SCHMIDT:**  No, we don't, Your Honor.

 7      Paul Schmidt again for Meta.

 8          **THE COURT:**  Okay.

 9          **MR. SCHMIDT:**  We have no objection to their position.

10  We understand they have no objection to the position we put in

11  on that issue.

12          **THE COURT:**  Okay.  All right.  Good.

13      Then that is all I have I think.  Yes.

14          **MR. SCHMIDT:**  Yeah, we did want to flag that issue for

15  the Court because the Court has now several times referred to

16  the lead counsel requirement, including on Monday, which I was

17  able to attend remotely, and which I appreciate being able to

18  attend remotely.

19      We just wanted to put that in to make sure we're giving

20  the Court what the Court is expecting.  It's challenging in a

21  case this complicated, but we think we've come up with

22  something that meets what the Court is telling us to do.

23          **THE COURT:**  And I appreciate that.  And like I think I

24  said in the order the other day, I applaud the parties for

25  continuing to meet and confer and working out these issues.

1    It's good for you.  It's good for me.  It's good for everyone.

2    So thank you.

3            **MR. SCHMIDT:**  Thank you, Your Honor.

4            **THE COURT:**  So last chance to raise any issues for

5    this month's DMC.

6            **MR. WARREN:**  Nothing for the plaintiffs, Your Honor.

7            **MR. SCHMIDT:**  Nothing here, Your Honor.

8            **THE COURT:**  All right.  We're adjourned until the next

9    hearing then.  Thank you.

10            **MR. WARREN:**  Thank you, Your Honor.

11            **THE COURT:**  Thank you.

12            **THE CLERK:**  We're off the record.  The matter is

13    adjourned.  The Court is in recess.

14                    (Proceedings adjourned at 1:49 p.m.)

15                              ---oOo---

16

17

18

19

20

21

22

23

24

25

1

2

3        **<u>CERTIFICATE OF REPORTER</u>**

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Thursday, March 21, 2024

8

9

10

11    _____

12        Kelly Shainline, CSR No. 13476, RPR, CRR
              U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25