# EXHIBIT A

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

THE STATE OF ALASKA, )
)
         Plaintiff, )
)
v. )
)
WALGREEN CO.; WALGREENS )
BOOTS ALLIANCE, INC.; )
WALMART INC. f/k/a WAL-MART )
STORES, INC.; ALBERTSONS )
COMPANIES, INC.; ALBERTSONS )
COMPANIES LLC; SAFEWAY, )
INC.; CARR-GOTTSTEIN FOODS )
CO.; THE KROGER CO.; and )
FRED MEYER, INC., )
)
         Defendants. )
_____) Case No. 3AN-22-06675 CI

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#3]

Public nuisance doctrine historically has been both a vast and a vague area of law. Described 130 years ago as the "wilderness of law"[1] and a "'legal garbage can' full of 'vagueness, uncertainty and confusion'" by William Prosser[2], it led Justice Blackmun to proclaim that "one searches in vain… for anything resembling a principle in the common law of nuisance."[3] The Court is asked to interpret this area of law against the backdrop of an enormous generational crisis, the opioid epidemic. Both parties

---

[1] Horace Wood, The Law of Nuisances iii (3d ed. 1893).
[2] Louise A. Halper, *Untangling the Nuisance Knot*, 26 B.C. Envtl. Aff. L. Rev. 89, 90 (1998) (citing William Prosser, *Nuisance Without Fault*, 20 TEX. L. REV. 399, 410 (1942)).
[3] *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1055 (1992) (Blackmun, J., dissenting).

acknowledge the deeply tragic impact of this crisis on the country and in Alaska. And the parties further agree that bad actors in the opioid industry have likely precipitated this crisis. This Court sees the impact of that crisis daily across all types of cases, from criminal to civil custody matters. However, the question before the Court in Defendants' *Motion to Dismiss* is whether the alleged acts described in Plaintiff's *Complaint* constitute grounds for a public nuisance claim under Alaska law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2022, Defendants, Walgreens Co., Walgreens Boots Alliance, Inc., Walmart Inc., Albertson Companies, Inc., Albertsons Companies, LLC, Safeway, Inc., Carr-Gottstein Foods Co., the Kroger Co., and Fred Meyer, Inc. filed a *Motion to Dismiss*. Plaintiff opposed. Oral arguments were held at the parties' request.

The Court now addresses the following questions stemming from the *Motion to Dismiss*. Do the described activities at issue qualify as a public nuisance as a matter of law? Is Plaintiff's claim for damages preempted by federal or state law? Finally, does the Unfair Trade Practices Act ("UTPA") apply?

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint's allegations.[4] In determining the sufficiency of the stated claim, it is enough that the complaint set forth allegations of fact consistent

---

[4] See ALASKA R. CIV. P.12(b)(6). See also *Dworkin v. First Nat. Bank of Fairbanks*, 444 P.2d 777, 779 (Alaska 1968).

with some enforceable cause of action on any possible theory.[5] The court considers only well pled allegations, while ignoring unwarranted factual inferences and conclusions of law.[6] Generally, such a motion is determined solely on the pleadings; however, the court may consider public record, including court files from other proceedings.[7] The court may also consider attachments to the complaint.[8] The court must construe the complaint in the light most favorable to the non-moving party and presume the pleading's allegations to be true.[9] To survive a motion to dismiss, the complaint "need only allege a set of facts consistent with and appropriate to some enforceable cause of action."[10]

### III. DISCUSSION

Deciding the question of whether an alleged action in a complaint falls within the legal requirements of a cause of action is appropriate for the Court in a 12(b)(6) ruling. The Court makes its rulings to determine the legal sufficiency of the pleadings, not the validity or likelihood of success of those pleadings.

---

[5] *State v. Native Village of Curyung*, 151 P.3d, 396 (Alaska 2006).
[6] *Dworkin*, 444 P.2d at 779.
[7] *Nizinski v. Currington*, 517 P.2d 754, 756 (Alaska 1974) (internal citation omitted).
[8] *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 7 (Alaska 2012).
[9] *Valdez Fisheries Development Ass'n, Inc. v. Alyeska Pipeline Service Co.*, 45 P.3d 657, 664 (Alaska 2002) (citing *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1998)).
[10] *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 254 (Alaska 2000).

### A. The Claim does not describe a public nuisance.

In Alaska, a public nuisance is "an unreasonable interference with a right common to the general public."[11] This includes "significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience. . .".[12] Generally, categories of "public rights" include land, air, and water.

> To establish a claim based on public nuisance, it is not sufficient merely to show that one was injured by the creation or maintenance of some physical condition which would cause injury to a person coming into contact with it. It must also be shown that such condition would be injurious to those who came in contact with it in the exercise of a public or common right.[13]

Many states have codified public nuisance. Some states define public nuisance in specific instances; *e.g.* agricultural, fishing, junkyard statutes, and waterways.[14] Alaska law encompasses both statewide public nuisance statutes and local laws.[15] In the instant case, no state statute defines any action similar to the distribution of a lawful substance as a nuisance.[16] The Restatement also emphasizes that a public right does not accrue

---

[11] Restatement (Second) of Torts § 821B (1979).
[12] *Id.*
[13] *Maier v. City of Ketchikan*, 403 P.2d 34, 38 (Alaska 1965), overruled on other grounds by *Johnson v. City of Fairbanks*, 583 P.2d 181 (Alaska 1978).
[14] "[G]eneral statutes have been adopted in most of the states to provide criminal penalties for public nuisances, often without defining the term at all, or with only a very broad and sometimes rather vague definition. These statutes uniformly have been construed to include the interferences with the rights of the public that were public nuisances at common law. . . . all of the states have numerous special statutes declaring certain conduct or conditions to be public nuisances because they interfere with the rights of the general public." Restatement (Second) of Torts § 821B (1979).
[15] See AS §46.03.822, Matanuska-Susitna Borough Code 8.50.020(c).
[16] Unless stated otherwise, when the Court uses the term "public nuisance" it is referring to common law public nuisance.

merely because it affects a large number or even a majority of the public, but must involve something that is "common to all members of the general public."[17] It logically follows that if such a right is violated, it has actual and potential effects on the rights of every single person. For example, every person has the right to make use of a public park. Unreasonable interference with the access to the park violates a right common to all members even if many will not exercise that right.

Plaintiff claims that Defendants' actions qualify as a public nuisance because, as a result of alleged irresponsible opioid sales, there has been a "significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, and unreasonably interferes with a public right by creating a public health epidemic in Alaska."[18] Defendants assert that the interpretation of "public nuisance" by Plaintiff is too broad, given that traditionally "a public right is a right to a public good, such as 'an indivisible resource shared by the public at large, like air, water, or public rights-of-way.'"[19] Plaintiff supports its claim by citing to other non-binding cases from the Alaska Superior Court and from other state courts that have found a public health crisis to qualify as an interference with the public health.[20]

---

[17] Restatement (Second) of Torts § 821B (1979)
[18] Plaintiff's *Complaint* ¶ 226.
[19] *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 726, (Oklahoma 2021).
[20] E.g. *State v. Purdue Pharma L.P.*, 2018 WL 4468439, (Alaska Sup. Ct. July 12, 2018); *State v. Teva Pharm. Indus., Ltd.*, (Alaska Sup. Ct. Aug, 28, 2022); *In re Nat'l Prescription Opiate Litig.*, 2022 WL 4099669, (N.D. Ohio Aug 22, 2022); *City of Bos. v. Purdue Pharma L.P.* 2020 WL 2198026, (Mass. Super. Ct Feb. 10, 2020).

The Court finds that the Plaintiff has not properly identified a public right that has been violated. In addition to the numerous cases cited by both parties, the Court has unearthed even more cases where the courts have reached different conclusions as to whether the legal sales of opioids can constitute a public nuisance. However, the examples provided in the Restatement and in other similar cases do not necessarily support such a position under Alaska law. The Restatement lists examples of interference with the public health as "keeping diseased animals or the maintenance of a pond breeding malarial mosquitoes."[21] While this list is not all-inclusive, it differs greatly from the type of actions described by Plaintiff. The Court is limited in its ability to liberally expand on a legal definition of public nuisance without some inkling of precedent from the Alaska Supreme Court or the state legislature.

Plaintiff argues that the manufacturing, marketing, and selling of prescription medications – in this case, through the role of pharmacists - have oversaturated our community with opioids and therefore can and do qualify as an interference with the public health as defined by the Restatement. While cases cited by Plaintiff may state that they follow the Restatement's definition of public nuisance, none of those cases indicate how the Restatement's illustrations of public health nuisances are even remotely similar to the act of distributing lawful medication.

---

[21] Restatement (Second) of Torts § 821B (1979).

The Third Restatement of Torts notes that addressing liability for products under public nuisance doctrine has been rejected by most courts.[22] The Court agrees with the reasoning in *City of Chicago v. Beretta U.S.A. Corp.*,[23] that the threat of misuse of an otherwise legal product is not a violation of a public right even if there has been damage to the public. Additionally, the Court declines to find a common nexus to the conduct that points to a public right being violated. The sheer number of violations does not transform the harm from individual injury to communal injury.[24]

Further, the Court does not perceive a sufficient nexus needed for common law public nuisance between the issues Plaintiff describes (pharmacists fulfilling doctors' prescriptions) and the alleged resulting consequences to public health. Realistically, use of prescription medication use is a private individual matter and furthers a legitimate purpose. The drugs at issue are commonly prescribed for pain relief, and many members of the public use them without causing harm or illness. The Restatement notes "in many cases the interests of the entire community may be affected by a danger

---

[22] Liability on such theories has been rejected by most courts, and is excluded by this Section, because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue. Mass harms caused by dangerous products are better addressed through the law of products liability, which has been developed and refined with sensitivity to the various policies at stake. Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. g (Am. Law. Inst. 2020).
[23] 821 N.E. 2d 1099, (Ill. 2004).
[24] Donald Gifford, Public Nuisance as a Mass Products Liability Tort, 71 U. Cin. L. Rev. 741, 817 (2003).

to even one individual."[25] However, these examples generally are issues that do not differ notably from person to person.

The Court must agree with Defendants that Plaintiff's argument, though emotionally compelling and clearly intended for the benefit of Alaskans, is a bridge too far. Taken to its logical conclusion, any claim that has negative impacts on public health could be defined as a public nuisance.[26] Even when the Court questioned Plaintiff regarding this dilemma, Plaintiff could not provide the Court with a basis for finding otherwise.

Because there is no traditional legal basis for treating the legal distribution of pharmaceuticals as interference with the public health, and because the Court can find no guidance or acts by the legislature or the Alaska Supreme Court allowing the Court to define such actions as public nuisances, this Court concludes that Plaintiff's claim for public nuisance must fail.[27]

### B. Defendants' actions are exempt from UTPA claims.

The Unfair Trade Practices and Consumer Protection Act, "the UTPA", states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the

---

[25] See Restatement (Second) of Torts § 821B, comment (g) (1979) (providing examples of smallpox or smoke from a fire).
[26] Under Plaintiff's theory, fast food restaurants, alcohol, and social media all could be defined as creating public nuisances.
[27] A public nuisance claim requires a finding of unreasonable interference. (Restatement (Second)). In determining whether a motion to dismiss should be granted, only the legal sufficiency of the claim is at issue. For the Court to determine here what is unreasonable (or reasonable), additional facts and interpretation of law would be required. Therefore, were the Court to find that Defendants' actions have interfered with a public right, it would not grant dismissal.

conduct of trade or commerce are declared to be unlawful."[28] The UTPA exempts select transaction or acts that are "regulated under laws administered by the state, including a state regulatory board or commission, unless the statute or regulation does not prohibit the practices declared unlawful in AS 45.50.471."[29]

Alaska law requires a two-part analysis to determine whether an act is exempt under AS 45.50.481(a)(1).[30] For the exemption to apply, the business must be "both regulated elsewhere and the unfair acts and practices are therein prohibited."[31] Furthermore, the prohibition must restrict the practice specifically, not prohibit it in a broader sense.[32]

The parties do not dispute that the pharmacies and their business are regulated by the ACSA and CSA. The Court agrees and finds that Defendants' businesses are carefully regulated. The question then follows: are the alleged unfair or deceptive acts prohibited by the ACSA and or CSA?

In the instant case, the practices in question "include but are not limited to, failing to maintain effective controls against opioid diversion by oversupplying opioids into Alaska while failing to create, maintain, and use an adequate compliance program;

---

[28] AS 45.50.471
[29] AS 45.50.481(a)(1)
[30] See *Smallwood v. Cent. Peninsula General Hosp.*, 151 P.3d 319, (Alaska 2006).
[31] Id. at 329 (internal citation omitted). See also *Adkins v. Collens*, 444 P.3d 187 (Alaska 2019). See also *Matanuska Maid, Inc. v. State*, 620 P.2d 182 (Alaska 1980).
[32] See *Smallwood* 151 P.3d 319. (The Court found that although Medicaid billing activities is regulated and practices prohibited, the forms causing the unfair or deceptive practices were not regulated or prohibited.)

Order Granting Motion to Dismiss
3AN-22-06675 CI                                                                                          Page 9 of 12

failing to investigate, report and halt suspicious orders; filling suspicious orders; and failing to exercise due diligence to ensure the prescriptions they dispensed were for legitimate medical purposes."[33] Defendants argue all of these actions are both regulated and prohibited by the ACSA and CSA. Plaintiff claims that due to the ACSA clause preventing preemption, prohibition in this case does not create an exemption.

Plaintiff's argument does not align with the established UTPA exemption analysis. Nowhere does the law indicate that the statutory exemption only applies if the statutory regulation is meant to be the exclusive avenue of relief. As stated, two requirements exist. First, the business must be well-regulated.[34] Second, if well-regulated, the exemption applies "unless the statute or regulation does not prohibit the practices declared unlawful in AS 45.50.471."[35] In this instance it is clear from Plaintiff's allegations in their *Complaint* that the alleged actions of Defendants are supposed violations of the ACSA and CSA, and nearly identical to the actions listed as violations of the UTPA.[36]

---

[33] Plaintiff's Complaint ¶214.
[34] See *Matanuska Maid, Inc. v. State*, 620 P.3d 182 (Alaska 1980).
[35] *Adkins*, 444 P.3d 187 at 196.
[36] "Defendants violated the standard of conduct set forth in the CSA and ACSA by failing to design and operate a system that would disclose the existence of suspicious orders of controlled substances and/or by failing to report and reject suspicious orders of opioids," (Plaintiff's Complaint ¶231).

Because the Court finds that AS 17.30.010 *et seq.*[37] and AS 17.30.200 regulate and prohibit the alleged actions of Defendants, the Court concludes that Plaintiff's UTPA claim must be dismissed.

### C. Plaintiff's claims are not preempted by federal law.

Under the Supremacy Clause, "the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[38] Thus, if a federal law expressly requires preemption, conflicts with a state law, or occupies an entire regulated field, state law and claims cannot proceed.[39] Conflict preemption occurs "when compliance with both federal and state regulations is impossible or stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress."[40]

Plaintiff has demonstrated that the CSA not only does not contain an express preemption clause – it expressly states that it is not meant to occupy an entire regulated field or preempt state action.[41] And Defendants have not demonstrated how compliance with state law is incompatible with following federal regulations.

---

[37] AS 17.30.010 *et seq.* require pharmacists to keep records and maintain inventories, imposes requirements on who may distribute controlled substances and why, requires pharmacists to abide by CSA and its extensive requirements, and requires that all employees and agents be trained regarding the statute.
[38] U.S. Const. art. VI, cl. 2.
[39] See *Arizona v. United States*, 567 U.S. 387, 400 (2012). See also *Allen v. State, Dep't of Health & Social Services*, 203 P.3d 1155 (Alaska 2009).
[40] *Hillman v. Maretta*, 569 U.S. 483, 490 (2013).
[41] See 21 U.S.C. § 903.

Accordingly, the Court declines to find that Plaintiff's claims are preempted by federal law.

## IV. CONCLUSION

While the damages that opioid addiction has inflicted on this proud state and across the nation are grave to the point of tragic, Plaintiff's claims of public nuisance are not supported by Alaska law. The Alaska Supreme Court may see fit to reevaluate previous public nuisance precedent and determine that Plaintiff's definition of public nuisance law applies in Alaska, but this Court does not find a basis to do so today.

Defendants' *Motion to Dismiss* is GRANTED as to the public nuisance and UTPA claims and DENIED based on preemption claims.

SO ORDERED this ___1st___ day of March, 2024, at Anchorage Alaska.

_____
UNA S. GANDBHIR
Superior Court Judge

I certify that on 3/4/24
a copy of the above was mailed/emailed to
each of the following at their address of record:

_Hill / Ackerman / Moriarty / Singer / Gross / Wayne_
_Gilmore / Citera / Ricci / Debel / Harvey / Jacobs_
_Hosubin / Ingeldson_

_____
R. Davis, Judicial Assistant