# EXHIBIT B

1  GREGORY P. STONE (SBN 78329)
   gregory.stone@mto.com
2  DANIEL B. LEVIN (SBN 226044)
   daniel.levin@mto.com
3  BETHANY W. KRISTOVICH (SBN 241891)
   bethany.kristovich@mto.com
4  JOHN M. GILDERSLEEVE (SBN 284618)
   john.gildersleeve@mto.com
5  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
6  Los Angeles, CA 90071-3426
   Telephone:  (213) 683-9100
7  Facsimile:  (213) 687-3702

8  RENEE D. SMITH (*pro hac vice*)
   renee.smith@kirkland.com
9  KIRKLAND & ELLIS LLP
   300 North LaSalle
10 Chicago, IL 60654
   Telephone:  (312) 862-2000
11 Facsimile:  (312) 862-2200

12 PETER A. FARRELL, P.C. (*pro hac vice*)
   peter.farrell@kirkland.com
13 KIRKLAND & ELLIS LLP
   1301 Pennsylvania Ave., N.W.
14 Washington, DC 20004
   Telephone:  (202) 389-5000
15 Facsimile:  (202) 389-5200

16 Attorneys for Defendant JUUL Labs, Inc.

17
                    **UNITED STATES DISTRICT COURT**
18
                   **NORTHERN DISTRICT OF CALIFORNIA**
19

20
   IN RE: JUUL LABS, INC., MARKETING,        Case No. 19-md-02913-WHO
21 SALES PRACTICES, AND PRODUCTS
   LIABILITY LITIGATION                      **Notice of Motion and Motion to Dismiss
22                                           Bellwether Government Entity Complaints;
                                             Memorandum of Points and Authorities**
23
   _____
24 This Document Relates to:                 Judge:   Hon. William H. Orrick
                                             Date:    September 21, 2020
25 (1) *Tucson Unified School District v. JUUL*   Time:    9:00 a.m.
   *Labs, Inc.,et al.*; (2) *County of Santa Cruz,*   Ctrm.:   2
26 *Individually And on Behalf of The People of*
   *The State of California v. JUUL Labs, Inc., et*
27 *al.*; (3) *The Livermore Valley Joint Unified*
   *School District v. JUUL Labs, Inc., et al.*; (4)
28 *The School Board of Broward County, Florida*

                                                          Case No. 19-md-02913-WHO
───────────────────────────────────────────────────────────────
   Notice of Motion and Motion to Dismiss Bellwether Government Entity Complaints

1  *v. JUUL Labs, Inc., et al.*; (5) *The School*
2  *Board of Escambia County, Florida, et al. v.*
   *JUUL Labs, Inc., et al.*; (6) *Three Village*
3  *Central School District v. JUUL Labs, Inc., et*
   *al.*; (7) *Central Bucks School District, Bucks*
4  *County, Pennsylvania v. JUUL Labs, Inc., et*
   *al.*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **NOTICE OF MOTION AND MOTION**

2      **PLEASE TAKE NOTICE** that on September 21, 2020, at 9:00 a.m., or as soon thereafter

3  as this matter may be heard, in Courtroom 2 of this Court, located at 450 Golden Gate Avenue, 17th

4  Floor, San Francisco, California, Defendant Juul Labs, Inc. ("JLI") will and hereby does move the

5  Court for an order dismissing all claims in the seven amended bellwether government entity

6  complaints (ECF 538-544) pursuant to Federal Rule of Civil Procedure 12(b)(6), as set forth in the

7  accompanying memorandum.  Pursuant to the direct filing order, JLI reserves all rights with respect

8  to "any post-remand jurisdictional, venue, or forum challenges or motions" including motions to

9  dismiss for improper venue or lack of personal jurisdiction.  (ECF 643.)

10      JLI moved on May 29, 2020 to stay the government entity complaints based on the FDA's

11  primary jurisdiction (Motion #1) (ECF 626) and to dismiss claims in the exemplar government entity

12  complaint, *Three Village Central School District*, as preempted by federal law (Motion #2) (ECF

13  627).  JLI also moved to dismiss the exemplar government entity RICO claims on May 29, 2020

14  (Motion #3) (ECF 628).  Those motions and the accompanying memoranda of points and authorities

15  are incorporated here by reference and apply equally to all the government entity complaints that

16  are the subject of this motion.  JLI does not repeat in this Motion the arguments for dismissal in

17  those motions.

18      The Motion is based on this Notice of Motion; the Memorandum of Points and Authorities;

19  the Motions to Dismiss Bellwether Government Entity Complaints filed by the Altria and director

20  defendants; the Motions to Dismiss filed by JLI, the Altria defendants, and the director defendants

21  on May 29, 2020 and June 5, 2020; any Reply Memoranda; the pleadings and files in this MDL;

22  and such other matters as may be presented at or before the hearing.

23  DATED:  June 22, 2020      MUNGER, TOLLES & OLSON LLP
    KIRKLAND & ELLIS LLP

24

25

26      By:     */s/ Gregory P. Stone*
    GREGORY P. STONE

27

28      Attorneys for Defendant Juul Labs, Inc.

# TABLE OF CONTENTS

| | | Page |
|---|---|---|

I.  INTRODUCTION .................................................................................................1

II.  BACKGROUND .................................................................................................3

III.  ALL CLAIMS MUST BE DISMISSED..............................................................6

    A.  The Municipal Cost Recovery Rule Bars Plaintiffs from Recovering the Costs of Public Services...............................................................................................6

    B.  Plaintiffs Fail to State a Public Nuisance Claim ...............................................8

        1.  Public Nuisance Cannot Replace a Product Liability Claim.......................10

        2.  Plaintiffs Fail to Plead an Interference with a "Public Right" ....................14

        3.  Plaintiffs Fail to Plead that JLI Had Control Over the Instrumentality of the Nuisance ......................................................................................16

        4.  Plaintiffs Fail to Plead a Special Injury.........................................................18

    C.  Plaintiffs Fail to State Negligence-Based Claims ............................................20

        1.  JLI Does Not Owe the Government Entity Plaintiffs a Duty of Care..........21

        2.  The Economic Loss Rule Bars Plaintiffs' Negligence Claims ...................25

        3.  The Florida Plaintiffs Do Not Plausibly Allege Damages .........................27

        4.  The California and Pennsylvania Gross Negligence Claims, and Santa Cruz County's Punitive Damages Claim, Must Be Dismissed Because They Are Not Independent Causes of Action ...............................................27

    D.  Plaintiffs Fail to Plead Proximate Causation............................................................28

    E.  The Statutory Consumer Protection Claims Must Be Dismissed ...........................31

        1.  Three Village CSD's New York General Business Law Claim Fails..........31

        2.  Broward SB's and Escambia SB's Florida Consumer Protection Claims Fail ..........................................................................................................33

    F.  The Claims Fail Based on JLI's May 29, 2020 Motions ........................................35

IV.  CONCLUSION ..................................................................................................35

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

**FEDERAL CASES**

3

4
*Allegheny General Hosp. v. Philip Morris, Inc.*,
    228 F.3d 429 (3d Cir. 2000) .........................................................................................29

5

6
*Alston v. Caraco Pharm., Inc.*,
    670 F. Supp. 2d 279 (S.D.N.Y. 2009) ..........................................................................30

7
*Ass'n of Wash. Pub. Hosp. Districts v. Philip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) .......................................................................................29

8

9
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................27

10

11
*Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*,
    2017 WL 405425 (C.D. Cal. 2017) ..............................................................................28

12
*Bradshaw v. Rawlings*,
    612 F.2d 135 (3d Cir. 1979) .........................................................................................21

13

14
*Britt Green Trucking, Inc. v. FedEx Nat., LTL, Inc.*,
    2014 WL 3417569 (M.D. Fla. July 14, 2014) ..............................................................33

15

16
*Bruner v. Anheuser-Busch, Inc.*,
    153 F. Supp. 2d 1358 (S.D. Fla. 2001) ...................................................................28, 31

17
*Burlington N. & Santa Fe Ry. Co. v. Grant*,
    505 F.3d 1013 (10th Cir. 2007) ...................................................................................16

18

19
*Burns v. Winnebago Indus., Inc.*,
    2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) .........................................................24, 25

20

21
*Carl v. Republic Sec. Bank*,
    282 F. Supp. 2d 1358 (S.D. Fla. 2003) .........................................................................23

22
*Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*,
    270 F. Supp. 3d 1340 (S.D. Fla. 2017) .........................................................................34

23

24
*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*,
    719 F.2d 322 (9th Cir. 1983) ......................................................................................6, 7

25

26
*City of Philadelphia v. Beretta U.S.A., Corp.*,
    126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd* 277 F.3d 415 (3d Cir. 2002) ......................... passim

27
*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ..........................................................................30

28

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page**

3    *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*,
     401 F. Supp. 2d 1270 (S.D. Fla. 2003)......................................................................31

4

5    *Cook v. MillerCoors, LLC*,
     829 F. Supp. 2d 1208 (M.D. Fla. 2011) .....................................................................22

6

7    *Corales v. Bennett*,
     567 F.3d 554 (9th Cir. 2009)......................................................................................30

8    *Cty. of Erie v. Colgan Air, Inc.*,
     2012 WL 1029542 (W.D.N.Y. Mar. 26, 2012) ............................................................8

9

10   *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*,
     373 F. Supp. 3d 567 (W.D. Pa. 2019) ........................................................................26

11

12   *Floyd v. Brown & Williamson Tobacco Corp.*,
     159 F. Supp. 2d 823 (E.D. Pa. 2001) .........................................................................27

13   *Hennegan Co. v. Arriola*,
     855 F. Supp. 2d 1354 (S.D. Fla. 2012) ......................................................................33

14

15   *Ileto v. Glock Inc.*,
     349 F.3d 1191 (9th Cir. 2003) ...................................................................................12

16

17   *King Cty., Wash. v. IKB Deutsche Industriebank AG*,
     2012 WL 11896326 (S.D.N.Y. Sept. 28, 2012) .........................................................26

18   *McCarthy v. Olin Corp.*,
     119 F.3d 148 (2d Cir. 1997).........................................................................21, 23, 25

19

20   *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*,
     2020 WL 2494608 (S.D. Fla. May 14, 2020) .............................................................33

21   *In re Nat'l Prescription Opiate Litig.*,
     2020 WL 1669655 (N.D. Ohio Apr. 3, 2020) ............................................................20

22

23   *In re Nat'l Prescription Opiate Litig.*,
     406 F. Supp.3d 672 (N.D. Ohio 2019) .......................................................................20

24

25   *Pasternack v. Lab. Corp. of Am.*,
     892 F. Supp. 2d 540 (S.D.N.Y. 2012) ........................................................................21

26   *In re Peabody Energy Corp.*,
     958 F.3d 717 (8th Cir. 2020).......................................................................................7

27

28   *Pelman v. McDonald's Corp.*,
     237 F. Supp. 2d 512 (S.D.N.Y. 2003) ........................................................................31

**TABLE OF AUTHORITIES**
(Continued)

Page

*Perfumeria Ultra, S.A. de C.V. v. Miami Customs Serv., Inc.,*
231 F. Supp. 2d 1218 (S.D. Fla. 2002)........................................................26

*Rhodes v. E.I. du Pont de Nemours & Co.,*
636 F.3d 88 (4th Cir. 2011).........................................................14, 15

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........................................................26

*Spence v. ESAB Grp., Inc.,*
623 F.3d 212 (3d Cir. 2010)........................................................27

*Texas v. Am. Tobacco Co.,*
14 F. Supp. 2d 956 (E.D. Tex. 1997) ........................................................10

*Suffolk Cty. v. Long Island Lighting Co.,*
728 F.2d 52 (2d Cir. 1984).........................................................25

*Tioga Pub. Sch. Dist. No. 15 of Williams Cty., State of N.D. v. U.S. Gypsum Co.,*
984 F.2d 915 (8th Cir. 1993).........................................................13, 17

*Toomer v. United States,*
615 F.3d 1233 (9th Cir. 2010).........................................................23

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York,*
734 F. Supp. 2d 368 (S.D.N.Y. 2010) ........................................................26

*Virgilio v. Ryland Grp., Inc.,*
680 F.3d 1329 (11th Cir. 2012)........................................................24

**STATE CASES**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,*
96 N.Y.2d 280 (2001) ........................................................26

*A.O. Fox Mem'l Hosp. v. Am. Tobacco Co.,*
302 A.D.2d 413 (N.Y. App. Div. 2003)........................................................31, 32

*Abad v. G4S Secure Sols. (USA), Inc.,*
293 So. 3d 26 (Fla. Dist. Ct. App. 2020)........................................................21, 22, 23, 25

*Althaus ex rel. Althaus v. Cohen,*
562 Pa. 547 (2000) ........................................................24

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona,*
148 Ariz. 1 (1985) ........................................................9

**TABLE OF AUTHORITIES**
(Continued)

Page

*Barrett v. Harris*,
    207 Ariz. 374 (Ct. App. 2004) ..............................................................................28, 29

*Biglen v. Fla. Power & Light Co.*,
    910 So. 2d 405 (Fla. Dist. Ct. App. 2005) ....................................................................21

*Bloxham v. Glock Inc.*,
    203 Ariz. 271 (Ct. App. 2002) ...........................................................................22, 23, 25

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*
    3 N.Y.3d 200 (2004) ....................................................................................................32

*Boynton v. Burglass*,
    590 So. 2d 446 (Fla. Dist. Ct. App. 1991)....................................................................22

*Brady v. State Paving Corp.*,
    693 So. 2d 612 (Fla. Dist. Ct. App. 1997)....................................................................30

*Brisbine v. Outside In Sch. of Experiential Educ., Inc.*,
    799 A.2d 89 (Pa. Super. 2002) ...............................................................................22, 23

*Chacko v. Com., Dep't of Transp.*,
    148 Pa. Cmwlth. 494 (1992) .........................................................................................30

*Chavez v. Tolleson Elementary Sch. Dist.*,
    122 Ariz. 472 (Ct. App. 1979) .....................................................................................30

*City of Chicago v. Beretta U.S.A. Corp.*,
    213 Ill.2d 351 (2004)............................................................................................ passim

*City of Modesto Redevelopment Agency v. Superior Court*,
    119 Cal. App. 4th 28 (2004).........................................................................................12

*City of New York v. Smokes-Spirits.Com, Inc.*,
    12 N.Y.3d 616 (2009) ..................................................................................................32

*Cty. of San Luis Obispo v. Abalone All.*,
    178 Cal. App. 3d 848 (1986).........................................................................................7

*Cty. of Santa Clara v. Atl. Richfield Co.*,
    137 Cal. App. 4th 292 (2006)..................................................................................10, 16

*Davidson v. City of Westminster*,
    32 Cal. 3d 197 (1982)..............................................................................................22, 23

*Delci v. Gutierrez Trucking Co.*,
    229 Ariz. 333 (Ct. App. 2012) .....................................................................................21

**TABLE OF AUTHORITIES**
(Continued)

Page

*Duquesne Light Co. v. Pennsylvania Am. Water Co.*,
    850 A.2d 701 (Pa. 2004) ..........................................................................................19

*Eckroth v. Pennsylvania Elec., Inc.*,
    12 A.3d 422 (Pa. Super. 2010) .........................................................................28, 29

*In re Firearm Cases*,
    126 Cal. App. 4th 959 (2005)....................................................................11, 12, 17

*Garrison Ret. Home Corp. v. Hancock*,
    484 So. 2d 1257 (Fla. Dist. Ct. App. 1985)...............................................................23

*Grunow v. Valor Corp. of Fla.*,
    904 So. 2d 551 (Fla. Dist. Ct. App. 2005)................................................................24

*Hafner v. Beck*,
    185 Ariz. 389 (Ct. App. 1995) ..................................................................................22

*Hamilton v. Beretta U.S.A. Corp.*,
    96 N.Y.2d 222 (2001) .......................................................................................... passim

*Hilliard v. A.H. Robins Co.*,
    148 Cal. App. 3d 374 (1983).....................................................................................28

*Hopi Tribe v. Arizona Snowbowl Resort Ltd. P'ship*,
    245 Ariz. 397 (2018) ..................................................................................................18

*Jacoves v. United Merch. Corp.*,
    9 Cal. App. 4th 88 (1992)....................................................................................23, 30

*Jimenez v. 24 Hour Fitness USA, Inc.*,
    237 Cal. App. 4th 546 (2015)....................................................................................27

*Keystone Airpark Auth. v. Pipeline Contractors, Inc.*,
    266 So. 3d 1219 (Fla. Dist. Ct. App. 2019), *review denied*, 2019 WL 1371949
    (Fla. Mar. 27, 2019) .................................................................................................34

*Koch v. Consol. Edison Co. of New York*,
    62 N.Y.2d 548 (1984) ..................................................................................................8

*Koll-Irvine Ctr. Prop. Owners Assn. v. Cty. of Orange*,
    24 Cal. App. 4th 1036 (1994)...............................................................................19, 20

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007).....................................................................................10, 13

*Machipongo Land & Coal Co. v. Com.*,
    569 Pa. 3 (2002) ...................................................................................................................9

*Modisette v. Apple, Inc.*,
    30 Cal. App. 5th 136, 152 (2018)........................................................................................28

*Morena v. S. Hills Health Sys.*,
    501 Pa. 634 (1983) ..............................................................................................................21

*In re Nassau Cty. Consol. MTBE (Methyl Tertiary Butyl Ether) Prods. Liab. Litig.*,
    918 N.Y.S.2d 399 (Sup. Ct. 2010) ......................................................................................23

*In re Opioid Litigation*,
    2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018).........................................................7, 20

*Penelas v. Arms Tech., Inc.*,
    1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999)............................................................. passim

*People ex rel. Gallo v. Acuna*,
    14 Cal. 4th 1090 (1997)........................................................................................................9

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
    309 A.D.2d 91 (N.Y. App. Div. 2003) .......................................................................11, 13, 28

*People v. ConAgra Grocery Prods. Co.*,
    17 Cal. App. 5th 51 (2017) ..........................................................................................12, 16, 17

*Pompeneo v. Verde Valley Guidance Clinic*,
    226 Ariz. 412 (Ct. App. 2011) ...........................................................................................30

*Quiroz v. ALCOA Inc.*,
    243 Ariz. 560 (2018) ....................................................................................................21, 23, 24

*Raldiris v. Enlarged City Sch. Dist. of Middletown*,
    118 N.Y.S.3d 696 (2d Dep't 2020) ............................................................................28, 30, 31

*REM Coal Co. v. Clark Equip. Co.*,
    386 Pa. Super. 401 (1989) ...................................................................................................25

*Rice v. Ctr. Point, Inc.*,
    154 Cal. App. 4th 949 (2007)...............................................................................................21

*Roberts v. Shop & Go, Inc.*,
    502 So. 2d 915 (Fla. Dist. Ct. App. 1986)...........................................................................30

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006)...........................................................................33

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                                                    <u>Page</u>

3   *Rollins, Inc. v. Heller,*
       454 So. 2d 580 (Fla. Dist. Ct. App. 1984)......................................................33, 34, 35
4

5   *S. Cal. Gas Leak Cases,*
       7 Cal. 5th 391 (2019)...............................................................................21, 24, 25, 26

6
7   *Schauer v. Morse Operations, Inc.,*
       5 So. 3d 2 (Fla. Dist. Ct. App. 2009)...........................................................................34

8   *Seminole Lakes Homeowner's Ass'n, Inc. v. Esnard,*
       263 So. 3d 56 (Fla. Dist. Ct. App. 2018).....................................................................28
9

10  *State ex rel. Gardner v. Sailboat Key, Inc.,*
       295 So. 2d 658 (Fla. Dist. Ct. App. 1974)...................................................................18

11  *State v. Lead Indus. Ass'n, Inc.,*
       951 A.2d 428 (R.I. 2008) .....................................................................................10, 15
12

13  *Sullivan v. Pulte Home Corp.,*
       232 Ariz. 344 (2013) .....................................................................................................26
14

15  *Thompson v. State,*
       392 So.2d 1317 (Fla. 1981) ............................................................................................9

16  *Urling v. Helms Exterminators, Inc.*
       468 So. 2d 451 (Fla. Dist. Ct. App. 1985)...................................................................34
17

18  *Venuto v. Owens-Corning Fiberglass Corp.,*
       22 Cal. App. 3d 116 (1971)......................................................................................18, 19
19

20  *Walker Cty. v. Tri-State Crematory,*
       284 Ga. App. 34 (2007)...................................................................................................7

21  *Wheeler v. Lebanon Valley Auto Racing Corp.,*
       303 A.D.2d 791 (2003) ................................................................................9, 18, 19, 20
22

23  *Estate of Witthoeft v. Kiskaddon,*
       557 Pa. 340 (1999) .......................................................................................................21
24

25  **STATE STATUTES**

26  A.R.S. § 13-2917.............................................................................................................9

27  Cal. Civ. Code § 3294 ...............................................................................................27, 28

28  Cal. Civ. Code § 3480 .....................................................................................................9

**TABLE OF AUTHORITIES**
(Continued)

Page

Cal. Civ. Code § 3493 ...................................................................................................18

Fla. Stat. Ann. § 501.212(3) ..............................................................................6, 33, 34, 35

N.Y. General Business Law § 349 ......................................................................6, 31, 32, 33

N.Y. General Business Law § 350 ........................................................................................6

**FEDERAL REGULATIONS**

21 C.F.R. § 1140.14(a)(2)(i) ...........................................................................................17

**TREATISES**

Restatement (Second) of Torts § 821B .......................................................................9, 12, 14

Restatement (Second) of Torts § 821C .....................................................................12, 18, 19

Restatement (Third) of Torts § 8 .............................................................................12, 13, 14

## ISSUES TO BE DECIDED

1.      Whether the government entities' public nuisance claims should be dismissed for failure to state a claim upon which relief may be granted.

2.      Whether the government entities' negligence and gross negligence claims should be dismissed for failure to state a claim upon which relief may be granted.

3.      Whether the County of Santa Cruz's punitive damages claim should be dismissed for failure to state a claim upon which relief may be granted.

4.      Whether the statutory consumer protection claims pleaded by Three Village Central School District and the School Boards of Broward and Escambia Counties should be dismissed for failure to state a claim upon which relief may be granted.

# I.  <u>INTRODUCTION</u>

Seven bellwether government entity Plaintiffs from five different states—six school districts and one county—allege that they have been forced to spend money or divert resources to respond to underage individuals using electronic nicotine delivery systems ("ENDS") in schools or the community.  Despite hundreds of paragraphs alleging defects in the JUUL product and deceptive marketing or lobbying by Juul Labs, Inc. ("JLI") and other defendants, Plaintiffs assert neither product liability nor fraud claims.  Nor could they, because Plaintiffs did not buy or consume JLI's products, and they do not allege they were deceived by any of JLI's labeling, marketing, or advertising.  Instead, Plaintiffs pursue expansive and unfounded claims of public nuisance, negligence and gross negligence, and RICO violations; and three complaints, from New York and Florida, assert statutory consumer protection claims well beyond the bounds of the statutes.  All of these claims fail as a matter of law.

***The Municipal Cost Recovery Rule Bars Plaintiffs' Damages Claims.*** All five states at issue here bar municipalities from recovering the cost of providing public services to residents.  Plaintiffs' tort claims for nuisance and negligence seek money either as damages or in the form of an abatement fund to offset the costs of providing educational or other public community services to their constituents.  Even when a defendant's negligence or other tortious conduct creates the need for public services, a municipal plaintiff cannot recover the cost as money damages.

***The Public Nuisance Claims Fail***.  JLI's design, marketing, and sale of a consumer product does not constitute a public nuisance, particularly when the alleged nuisance involves use of the product long after it has left JLI's control.  Courts in the five states at issue have rejected attempts to expand public nuisance law beyond its traditional boundaries to the kind of defective product and deceptive marketing theories Plaintiffs allege here.  Public nuisance claims in each state require interferences with a "public right," so Plaintiffs must—but here they fail to—allege more than an aggregation of private rights violations.  Nor can the six school districts show—as they must—that JLI's alleged conduct caused them to suffer a special injury, different in kind from other potential claimants.  Accepting Plaintiffs' novel theory would open the floodgates to nuisance claims for downstream economic injuries from distributing and marketing a host of consumer products.

Case No. 19-md-02913-WHO

***The Negligence, Gross Negligence, and Punitive Damages Claims Fail.***  These claims fail for multiple reasons.  JLI does not owe Plaintiffs any tort duty of care. The existence of a duty is a question of law, and the law is clear that product manufacturers like JLI do not owe a duty of care to anyone who, like the government entity Plaintiffs, never purchased JLI's products but rather claim injuries from encountering the products that were acquired and consumed by others.   The negligence-based claims also fail in four of the jurisdictions under the economic loss rule, which precludes a tort claim for economic losses absent physical injury or property damage.  Although Plaintiffs complain that they have been forced to respond in various ways to underage use of JLI's products, these are not claims based on physical damage to Plaintiffs' property.  Plaintiffs' gross negligence claims fail for the same reasons, and in any event, two jurisdictions (California and Pennsylvania) do not recognize such a claim.  Finally, the County of Santa Cruz's claim for punitive damages must be dismissed because punitive damages are a remedy, not a cause of action, under California law.

***Plaintiffs Fail to Plead Proximate Cause***.  Plaintiffs' nuisance and negligence-based claims fail because their allegations do not establish that JLI's conduct proximately caused the specific injuries of which Plaintiffs complain.

***The New York and Florida Statutory Claims Fail.***  The Court should dismiss the statutory consumer protection claims brought under New York law by the Three Village Central School District and under Florida law by the School Boards of Escambia County and Broward County. Courts in both states permit a plaintiff to recover only "actual damages" incurred as a direct result of a deceptive trade practice or advertisement.  Because the type of consequential and derivative economic injuries Plaintiffs allege as third parties to consumer transactions are not recoverable under these statutes, Plaintiffs fail to state a claim for relief.

***The Claims Fail for the Additional Grounds in the May 29, 2020 Motions.***  JLI filed on May 29, 2020 a set of motions directed to claims in these government entity complaints, as well as other complaints in the MDL.  For the reasons set forth in those motions, the government entities' claims should be stayed based on the FDA's primary jurisdiction, ECF 626; and, if not stayed, all

the claims except the RICO claims should be dismissed as preempted by federal law, ECF 627; and the RICO claims should be dismissed for failure to state a claim, ECF 628.

## II.   BACKGROUND

On May 8, 2020, seven bellwether government entity Plaintiffs from five states, as selected by the parties, filed the operative amended complaints in this MDL.[1]  These plaintiffs—six school boards or districts and one county—are Tucson Unified School District (Arizona, ECF 538) ("Tucson USD"), County of Santa Cruz (California, ECF 539) ("Santa Cruz County"), the Livermore Valley Joint Unified School District (California, ECF 540) ("Livermore Valley JUSD"), the School Board of Escambia County, Florida (Florida, ECF 541) ("Escambia SB"), the School Board of Broward County, Florida (Florida, ECF 542) ("Broward SB"), Three Village Central School District (New York, ECF 543) ("Three Village CSD"), and Central Bucks School District, Bucks County, Pennsylvania (Pennsylvania, ECF 544) ("Central Bucks SD").

The amended complaints drop the product liability, unjust enrichment, and willful misconduct claims that were asserted in many of the initial complaints, and none are pleaded as class actions.  In addition to JLI, the amended complaints name as defendants the Altria Group entities and James Monsees, Adam Bowen, Nicholas Pritzker, Hoyoung Huh, and Riaz Valani.

The amended complaints each include more than 500 paragraphs of identical "general factual allegations," which overlap significantly with the factual allegations in the Consolidated Class Action Complaint (ECF 387) and the Amended Consolidated Master Complaint (Personal Injury) (ECF 420).  These allegations include that JLI and various defendants strategized to create a product that would maximize profits through addiction, particularly among underage individuals[2]; sought to position JLI to be acquired by a major cigarette company[3]; devised a marketing scheme that misled the public, including underage individuals, about the nicotine content and safety of

---

[1] The parties selected these bellwether government entity complaints for motion practice only and not for trial.  ECF 483.  The parties anticipate proposing a separate process for selecting bellwether complaints for trial, if necessary.

[2] ECF 538 ¶¶ 30-78, 98-186; ECF 539 ¶¶ 32-80, 100-188; ECF 540 ¶¶ 30-78, 98-186; ECF 541 ¶¶ 30-78, 98-186; ECF 542 ¶¶ 32-80, 100-188; ECF 543 ¶¶ 30-78, 98-186; ECF 544 ¶¶ 30-78, 98-186.

[3] ECF 538 ¶¶ 79-97; ECF 539 ¶¶ 81-99; ECF 540 ¶¶ 79-97; ECF 541 ¶¶ 79-97; ECF 542 ¶¶ 81-99; ECF 543 ¶¶ 79-97; ECF 544 ¶¶ 79-97.

JUUL products[4]; targeted the underage market[5]; engaged in coordinated activities to expand and maintain JLI's position[6]; caused an increase in underage ENDS use[7]; and engaged in efforts to delay meaningful regulation of JUUL products.[8]

Each of the seven amended complaints pleads the same generic "government entity factual allegations."[9] The complaints allege that ENDS usage among underage students has increased and become commonplace.[10] Plaintiffs allege that JLI sought to enter school campuses and targeted underage individuals and schools in advertising and marketing efforts.[11] JLI's "Make the Switch" from cigarettes campaign for adults is alleged to be a "dis-information campaign" and a "cover-up."[12] Plaintiffs further allege that other ENDS competitors and knockoffs have gained popularity.[13]

Each complaint alleges similar impacts from ENDS. The six school districts allege that they spend time and resources to address underage ENDS use, to raise awareness in the community, to hold staff training and school assemblies on ENDS use, and to educate students and parents about ENDS products.[14] They contend that they have expended resources routing students to social workers or counselors, modifying health curricula, participating in or making changes to the

---

[4] ECF 538 ¶¶ 187-289; ECF 539 ¶¶ 189-291; ECF 540 ¶¶ 187-289; ECF 541 ¶¶ 187-289; ECF 542 ¶¶ 189-291; ECF 543 ¶¶ 187-289.

[5] ECF 538 ¶¶ 290-462; ECF 539 ¶¶ 292-464; ECF 540 ¶¶ 290-462; ECF 541 ¶¶ 290-462; ECF 542 ¶¶ 292-465; ECF 543 ¶¶ 290-462; ECF 544 ¶¶ 290-462.

[6] ECF 538 ¶¶ 463-485; ECF 539 ¶¶ 465-487; ECF 540 ¶¶ 463-485; ECF 541 ¶¶ 463-485; ECF 542 ¶¶ 466-488; ECF 543 ¶¶ 463-485; ECF 544 ¶¶ 463-485.

[7] ECF 538 ¶¶ 486-503; ECF 539 ¶¶ 488-505; ECF 540 ¶¶ 486-503; ECF 541 ¶¶ 486-503; ECF 542 ¶¶ 489-507; ECF 543 ¶¶ 486-503; ECF 544 ¶¶ 486-503.

[8] ECF 538 ¶¶ 504-557; ECF 539 ¶¶ 506-559; ECF 540 ¶¶ 504-557; ECF 541 ¶¶ 504-557; ECF 542 ¶¶ 508-561; ECF 543 ¶¶ 504-557; ECF 544 ¶¶ 504-557.

[9] ECF 538 ¶¶ 558-592; ECF 539 ¶¶ 560-594; ECF 540 ¶¶ 558-592; ECF 541 ¶¶ 558-592; ECF 542 ¶¶ 562-596; ECF 543 ¶¶ 558-592; ECF 544 ¶¶ 558-592.

[10] ECF 538 ¶¶ 560-562; ECF 539 ¶¶ 562-564; ECF 540 ¶¶ 560-562; ECF 541 ¶¶ 560-562; ECF 542 ¶¶ 564-566; ECF 543 ¶¶ 560-562; ECF 544 ¶¶ 560-562.

[11] ECF 538 ¶¶ 563, 568-580; ECF 539 ¶¶ 565, 570-582; ECF 540 ¶¶ 563, 568-580; ECF 541 ¶¶ 563, 568-580; ECF 542 ¶¶ 567, 572-584; ECF 543 ¶¶ 563, 568-580; ECF 544 ¶¶ 563, 568-580.

[12] ECF 538 ¶¶ 581-583; ECF 539 ¶¶ 583-585; ECF 540 ¶¶ 581-583; ECF 541 ¶¶ 581-583; ECF 542 ¶¶ 585-587; ECF 543 ¶¶ 581-583; ECF 544 ¶¶ 581-583.

[13] ECF 538 ¶¶ 585-592; ECF 539 ¶¶ 587-594; ECF 540 ¶¶ 585-592; ECF 541 ¶¶ 585-592; ECF 542 ¶¶ 589-596; ECF 543 ¶¶ 585-592; ECF 544 ¶¶ 585-592.

[14] ECF 538 ¶¶ 600-605; ECF 540 ¶¶ 597-600; ECF 541 ¶¶ 598-99; ECF 542 ¶¶ 604-608; ECF 543 ¶¶ 597-601; ECF 544 ¶¶ 597-598.

discipline or diversion program process for students, and monitoring or installing vapor detectors or making other modifications to bathrooms or school property.[15]  Several school districts allege that students cause disruptions in class by using or charging ENDS devices and exhibit anxious and acting-out behaviors because of nicotine addiction.[16]  Other school districts allege that they have added new personnel and counseling resources to address problems associated with ENDS use.[17]  The school districts further allege that they must address hazardous waste disposal problems in schools arising from JUULpods being left in school trash or toilets, or confiscated by staff.[18]  Three Village CSD alleges that it has incurred expenses in connection with disciplinary hearings and tutoring suspended students.[19]  Central Bucks SD alleges that it has spent money on plumbing issues from improper disposal of ENDS products.[20]  Livermore Valley JSD alleges that it has rented portable hand-washing stations to place outside restrooms.[21]

Santa Cruz County, the only non-school-district plaintiff, similarly alleges that it has invested time and resources to combat underage ENDS use.[22]  These allegations include that several county constituents have increased time spent educating the community, including students, about ENDS.[23]  Santa Cruz County also alleges that it must address increasing hazardous waste problems in its community from improper disposal of JUUL pods.[24]

The government entities allege many of the same counts and requests for relief.  Each alleges violations of state public nuisance law and requests orders that defendants abate the alleged nuisance by paying the expenses Plaintiffs allege they incurred responding to it, and enjoining defendants

---

[15] ECF 538 ¶¶ 606-609; ECF 540 ¶¶ 605-606; ECF 541 ¶¶ 601-602; ECF 542 ¶¶ 610-612; ECF 543 ¶¶ 601, 605-607; ECF 544 ¶¶ 601-603.
[16] ECF 538 ¶ 597; ECF 540 ¶ 594; ECF 543 ¶ 595; ECF 544 ¶ 594.
[17] ECF 540 ¶¶ 602-603; ECF 542 ¶ 610; ECF 543 ¶ 603.
[18] ECF 538 ¶ 610; ECF 540 ¶ 607; ECF 541 ¶ 604; ECF 542 ¶ 613; ECF 543 ¶ 609; ECF 544 ¶ 605.
[19] ECF 543 ¶¶ 605-606.
[20] ECF 544 ¶ 603.
[21] ECF 540 ¶ 606.
[22] ECF 539 ¶ 601.
[23] ECF 539 ¶¶ 602-603, 609-610.
[24] ECF 539 ¶ 612.

from further contributing to the alleged public nuisance.[25]  Each alleges violations of the federal RICO statute.  All of the government entities, except for Santa Cruz County, also assert claims for negligence and gross negligence.  Three of the seven complaints further assert state statutory claims. Three Village CSD asserts claims for violations of N.Y. General Business Law §§ 349 and 350,[26] and the Broward SB and Escambia SB assert claims for violations of the Florida Deceptive and Unfair Trade Practices Act.[27]  The Santa Cruz County complaint also asserts a standalone claim for punitive damages.[28]  The complaints seek equitable relief to fund prevention education and addiction treatment, actual and compensatory damages, punitive damages, statutory damages, attorneys' fees and costs, and pre- and post-judgment interest.[29]

## III.     ALL CLAIMS MUST BE DISMISSED

### A.     The Municipal Cost Recovery Rule Bars Plaintiffs from Recovering the Costs of Public Services

The money damages Plaintiffs seek on both their nuisance and negligence-based claims are not cognizable:  municipalities may not recover costs of providing basic public services, even where the need for such costs is attributable to a third-party tortfeasor.  *See City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) ("[W]e conclude that the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service.").  Plaintiffs allege that they should recover damages for spending money on staff resources, increasing training and community educating, increasing counseling, addressing student discipline problems, and monitoring bathrooms.  All of these are costs associated with Plaintiffs' provision of educational and community services to district and county residents.

---

[25] ECF 538 ¶¶ 622, 643, 747-50; ECF 539 ¶¶ 626, 647, 669, 745-748; ECF 540 ¶¶ 619, 640, 754-757; ECF 541 ¶¶ 611, 631, 736-738; ECF 542 ¶¶ 624, 644, p. 262; ECF 543 ¶¶ 621, 642, 754-757; ECF 544 ¶¶ 617, 638, 741-744.

[26] ECF 543 ¶¶ 745-753

[27] ECF 541 ¶¶ 703-709; ECF 542 ¶¶ 716-22

28 ECF 539 ¶¶ 741-44.

[29] ECF 538 ¶¶ 751-757; ECF 539 ¶¶ 749-755; ECF 540 ¶¶ 758-764; ECF 541 ¶¶ 739-745; ECF 542 pp. 262-263; ECF 543 ¶¶ 758-764; ECF 544 ¶¶ 745-751.

Irrespective of the labels Plaintiffs put on these damages,[30] the municipal cost recovery rule bars the claims. *E.g.*, *Walker Cty. v. Tri-State Crematory*, 284 Ga. App. 34, 37 (2007) (affirming dismissal of public nuisance and negligence claims by county against funeral home to recover costs county incurred disposing of human remains that had been improperly stored at defendant funeral home because "a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services"). Each of the jurisdictions at issue has adopted the municipal cost recovery rule to bar the kind of damages Plaintiffs seek:

1. **Arizona**: *Atchison*, 719 F.2d at 323 (concluding, under Arizona law, that a municipality could not recover costs associated with evacuation following train derailment).[31]

2. **California**: *Cty. of San Luis Obispo v. Abalone All.,* 178 Cal. App. 3d 848, 859-60 (1986) (concluding that "a government entity may not . . . recover the costs of law enforcement absent authorizing legislation").

---

[30] Plaintiffs seek both money damages and abatement, or the creation of an abatement fund that would require Defendants to pay costs Plaintiffs allegedly incurred responding to ENDS use. ECF 538 ¶ 643; ECF 539 ¶ 647; ECF 540 ¶ 640; ECF 541 ¶ 631; ECF 542 ¶ 644; ECF 543 ¶ 642; ECF 544 ¶ 638. But regardless whether labelled as damages or abatement in the form of payment of money, Plaintiffs are seeking reimbursement for money spent in schools or in the county. *See In re Peabody Energy Corp.*, 958 F.3d 717, 724-25 (8th Cir. 2020) (explaining that, under California law, even when municipalities sought only "equitable" relief for public nuisance claim against energy company, "that relief can include obligations to pay money," such as abatement, and thus nuisance claim was dischargeable in bankruptcy).

[31] *Atchison* observes that recovery has "been allowed" for the costs of abating a public nuisance, citing cases allowing recovery of costs of pollution cleanup or removal of an abandoned bridge. 719 F.2d at 324; *see also In re Opioid Litigation,* 2018 WL 3115102, at \*10 (N.Y. Sup. Ct. June 18, 2018) (citing *Atchison* and allowing claim for municipal costs for alleged nuisance). But the examples in *Atchinson* involve remediation of physical damage or pollution; not reimbursement of costs of public services, like public schools, hospitals, or emergency services. *See City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 426-27 (2004) (applying municipal cost recovery rule to public nuisance claim against gun manufacturers and observing that exceptions described in *Atchinson* fell into "distinct, well-defined categories" such as "damage to public property" or "environmental pollution") (citation omitted). To the extent a trial court in the opioid litigation allowed a claim for municipal cost recovery to proceed based on ongoing conduct, *In re Opioid Litigation,* 2018 WL 3115102, at \*10, the claim that sustained conduct creates an ongoing need for government spending "is not a meaningful basis for abrogating the rule" because longer-term expenses can be shifted by the legislature to the party causing the need for such spending. *Beretta*, 213 Ill.2d at 430.

3. **Florida**: *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353, at *2 (Fla. Cir. Ct. Dec. 13, 1999) (Municipal costs to provide 911, police, fire and emergency services "are not, without express legislative authorization, recoverable by governmental entities").

4. **New York**: *Cty. of Erie v. Colgan Air, Inc.*, 2012 WL 1029542, at *2-4 (W.D.N.Y. Mar. 26, 2012) (no recovery of costs incurred by municipality responding to alleged nuisance caused by airliner crash); *Koch v. Consol. Edison Co. of New York*, 62 N.Y.2d 548, 560 (1984) (applying "[t]he general rule . . . that public expenditures made in the performance of governmental functions are not recoverable" and rejecting claim to recover from utility the city's "costs incurred for wages, salaries, overtime and other benefits of police, fire, sanitation and hospital personnel from whom services (in addition to those which would normally have been rendered) were required in consequence of [a] blackout").

5. **Pennsylvania**: *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 894-95 (E.D. Pa. 2000), *aff'd* 277 F.3d 415 (3d Cir. 2002) (reimbursement of public funds expended for prevention and limitation of access to handguns, responding to handgun violence, and criminal justice administration "barred by the municipal cost recovery rule") (citation omitted).

Even if JLI had caused a public nuisance or acted in a negligent manner, any resulting costs incurred by the government entity Plaintiffs are not recoverable absent a specific statutory authorization, which Plaintiffs do not claim. Much as a city cannot recover the costs of providing firefighting services needed after a tortfeasor negligently causes a fire, Plaintiffs cannot recover costs to reimburse their provision of educational and community services to their constituents.

### B. <u>Plaintiffs Fail to State a Public Nuisance Claim</u>

Plaintiffs' complaints seek to repackage products liability, fraud, or misrepresentation theories as novel public nuisance claims. This Court should reject Plaintiffs' attempt to avoid the requirements of those traditional tort claims for challenging allegedly harmful products or deceptive marketing by pleading the same theories as nuisance claims.

A public nuisance is generally defined as "an unreasonable interference with a right common to the general public."  Restatement (Second) of Torts § 821B.[32]  While some states have codified the definition of public nuisance in a statute, *e.g.* A.R.S. § 13-2917; Cal. Civ. Code § 3480, all states have developed the requirements of a public nuisance claim through the courts.

Plaintiffs allege that defendants have created a public nuisance by producing, promoting, distributing, and marketing JUUL products for underage use in Plaintiffs' districts in violation of each state's "public nuisance law."[33]  This conduct allegedly included targeting underage students, engaging in marketing tactics designed to mislead and attract minors, designing JUUL products with flavors that appeal to minors, and promoting the growth of the ENDS market.[34]  Plaintiffs further allege that defendants knew or should have known that their activities were causing harm to youth, schools, or the County of Santa Cruz, or that defendants' conduct was a substantial factor in bringing about the public nuisance.[35]  While Plaintiffs allege the legal conclusion that the nuisance was "connected to Plaintiff[s'] property, including but not limited to school buildings," and impacted Plaintiffs' communities,[36] the gravamen of the complaints is that defendants violated state law or public policy by selling a defective ENDS product, marketing the product to underage individuals, and engaging in allegedly deceptive marketing or lobbying.[37]

---

[32] This formulation of public nuisance in the Restatement (Second) has been adopted formally by courts in Arizona, New York, and Pennsylvania (among other states), and Florida and California courts have applied similar principles.  *See Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona,* 148 Ariz. 1, 4 (1985) (quoting section 821B for the definition of a public nuisance); *Wheeler v. Lebanon Valley Auto Racing Corp.*, 303 A.D.2d 791, 792 (2003) (similar in New York)); *Machipongo Land & Coal Co. v. Com.*, 569 Pa. 3, 40 (2002) (noting that courts in Pennsylvania have "repeatedly applied Section 821B . . . to guide [their] determinations as to whether a use of property constitutes a public nuisance"); *see also People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1104 (1997) (comparing section 821B to California common law); *Thompson v. State*, 392 So.2d 1317, 1318 (Fla. 1981) (defining a public nuisance as a violation of public rights or an inconvenience to the public generally).

[33] ECF 538 ¶ 626; ECF 539 ¶ 631; ECF 540 ¶ 623; ECF 541 ¶ 615; ECF 542 ¶ 628; ECF 543 ¶ 625; ECF 544 ¶ 621.

[34] ECF 538 ¶ 630; ECF 539 ¶ 632; ECF 540 ¶ 627; ECF 541 ¶ 619; ECF 542 ¶ 632; ECF 543 ¶ 629; ECF 544 ¶ 625.

[35] ECF 538 ¶¶ 636, 638; ECF 539 ¶¶ 635-637; ECF 540 ¶¶ 633, 635; ECF 541 ¶¶ 624, 626; ECF 542 ¶¶ 637, 639; ECF 543 ¶¶ 635, 637; ECF 544 ¶¶ 631, 633.

[36] ECF 538 ¶¶ 626-627, 632; ECF 539 ¶¶ 631-632, 639; ECF 540 ¶¶ 623-624, 629; ECF 541 ¶¶ 615-616, 620; ECF 542 ¶¶ 628-629, 633; ECF 543 ¶¶ 625-626, 631; ECF 544 ¶¶ 621-622, 627.

[37] ECF 538 ¶¶ 629, 631; ECF 539 ¶¶ 629-630; ECF 540 ¶¶ 626, 628; ECF 541 ¶¶ 618; ECF 542 ¶¶ 631; ECF 543 ¶¶ 628, 630; ECF 544 ¶¶ 624, 626.

Under the laws of each of the jurisdictions at issue, Plaintiffs fail to allege a public nuisance.

### 1. Public Nuisance Cannot Replace a Product Liability Claim

Nuisance has historically been a cause of action for a property-based tort, and, to this day, it is not a mechanism for challenging allegedly harmful products.  As a Pennsylvania federal court recognized when applying Pennsylvania law:  "One way in which the role of public nuisance law has been restricted is the refusal to apply the tort in the context of injuries caused by defective product design and distribution."  *Beretta*, 126 F. Supp. 2d at 909, *aff'd Beretta*, 277 F.3d at 421 ("The courts traditionally have limited the scope of nuisance claims to interference connected with real property or infringement of public rights."); *see State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 452, 456 (R.I. 2008) (holding that "public nuisance typically arises on a defendant's land and interferes with a public right"); *Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997) (dismissing public nuisance claim against tobacco company and reasoning that it was "unwilling to accept the state's invitation to expand a claim for public nuisance beyond its ground in real property").

Courts have repeatedly rejected attempts to stretch nuisance law to allow claims against manufacturers of allegedly dangerous products or based on allegedly deceptive marketing of those products.  For example, in *Lead Industries Association*, the Rhode Island Supreme Court noted that public nuisance claims had "never before" "been applied to products, however harmful," and dismissed a public nuisance claim alleging that manufacturers of lead pigment had distributed a hazardous product while misrepresenting the risks of the product.  951 A.2d at 440, 456; *see id.* ("[P]ublic nuisance and products liability are two distinct causes of action, each with rational boundaries that are not intended to overlap."); *see also In re Lead Paint Litig.*, 924 A.2d 484, 494 (N.J. 2007) (dismissing nuisance claim because "were we to permit these complaints to proceed, we would stretch the concept of public nuisance far beyond recognition and would create a new and entirely unbounded tort antithetical to the meaning and inherent theoretical limitations of the tort of public nuisance").  The California Court of Appeal likewise stated that it was "reluctant to extend liability for damages under a public nuisance theory to an arena that is otherwise fully encompassed by products liability law."  *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 300-01,

313 (2006) (affirming dismissal of a nuisance claim by government entities, including school districts, against a manufacturer of lead paint, seeking costs incurred to educate the public about the hazards of lead, to inspect and test property, to train staff, and to remove lead, because the claim was "at its core, an action for *damages for injuries caused to plaintiffs' property by a product*" and because "liability for damages for product-related injuries should not be extended beyond products liability law to public nuisance law") (emphasis in original). Courts have similarly dismissed public nuisance claims against gun manufacturers, noting that "products which function properly do not constitute a public nuisance." *Beretta*, 126 F. Supp. 2d at 909-10; *see id.* (explaining that "[t]he refusal of many courts to expand public nuisance law to the manufacturing, marketing, and distribution of products conforms with the elements of public nuisance law").

On similar facts, courts in the jurisdictions at issue here have rejected public nuisance causes of action that are in truth improperly disguised product liability claims:

1. **New York**: *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 97 (N.Y. App. Div. 2003) (affirming dismissal of public nuisance claim against gun manufacturer based on alleged manufacturing, distributing, and marketing practices, and reasoning "if public nuisance law were permitted to encompass product liability, nuisance law 'would become a monster that would devour in one gulp the entire law of tort'") (citation omitted).

2. **Pennsylvania**: *Beretta,* 126 F. Supp. 2d at 909, 911 (explaining that "[o]ne way in which the role of public nuisance law has been restricted is the refusal to apply the tort in the context of injuries caused by defective product design and distribution" and "dismissing all of plaintiffs' claims against the defendant gun manufacturers" as "a theory in search of a case, and the defendants are out of range").

3. **Florida**: *Penelas*, 1999 WL 1204353, at *4 (dismissing county's claims against gun manufacturers because "[p]ublic nuisance does not apply to the design, manufacture, and distribution of a lawful product").

4. **California**: *In re Firearm Cases*, 126 Cal. App. 4th 959, 991 (2005) (rejecting Plaintiffs' public nuisance claim and recognizing "cogent policy reasons against

1  extending nuisance liability in this context," including that allowing such a product-

2  based nuisance claim would be "a form of regulation administered through the courts

3  rather than the states['] regulatory agencies") (citation omitted).[38]

4       5.  **Arizona**:  No Arizona court has recognized a nuisance cause of action against a

5          manufacturer of a consumer product based on sale, marketing, or distribution of that

6          product.

7       The Restatement (Third) of Torts endorses these limits.  *See* Restatement (Third) of Torts

8  § 8.  The Third Restatement's discussion of nuisance "does not seek to restate the substantive law

9  of public nuisance" as set forth in the Second Restatement; rather, it complements the Second

10  Restatement by further explaining the limits on public nuisance claims that, like Plaintiffs' claims

11  here, are based on economic injury, not physical harm to property.  *Id.* cmt. a; *see also id.* Reporter's

12  Note a (referring to Restatement (Second) of Torts §§ 821B and 821C for "more extensive

13  treatment" of the nuisance standards).   The Restatement explains that the elements of public

14  nuisance are "phrased at a level of generality that has sometimes caused confusion about their

15  scope," leading to "unsound claims of public nuisance . . . brought on facts outside the traditional

16  ambit of the tort."  *Id.* cmt. b.  These "unsound" claims include nuisance claims "against the makers

17  of products that have caused harm, such as tobacco, firearms, and lead paint" seeking to recover,

18  for example, "the costs of removing lead paint . . . or of providing health care to those injured by

19  smoking cigarettes."  *Id.* cmt. g.  These theories have been "rejected by most courts . . . because the

20

21  [38] *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51 (2017), is not to the contrary.
*ConAgra* affirmed a jury verdict on a public nuisance claim arising from lead paint exposure in

22  private homes.  The Court concluded it was not improperly converting a products claim into a
nuisance claim because a public nuisance claim could be brought based on "affirmative conduct that

23  assisted in the creation of a hazardous condition" in the homes of California residents (on whose
behalf the suit was brought).  *Id.* at 164 (citation omitted).  Unlike Plaintiffs' claims here, *ConAgra*

24  at least involved a claim of a hazardous, pollution-like condition on a plaintiff's property—which
brings the claim closer to a traditional nuisance tort than the theories asserted here.

25       Nor does *Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003), which permitted a nuisance

26  claim by a victims of an assault against the manufacturer of the firearm used in the assault, affect
the analysis of California law.  Two California Courts of Appeal have since declined to follow *Ileto*.

27  *See In re Firearm Cases*, 126 Cal. App. 4th at 990–91; *City of Modesto Redevelopment Agency v.
Superior Court*, 119 Cal. App. 4th 28, 39 n.8 (2004).  *In re Firearms*, in fact, endorsed the reasoning

28  of the Ninth Circuit dissenters, rejecting the imposition of "novel tort theories on economic activity."
126 Cal. App. 4th at 991 (internal quotation marks omitted).

Case No. 19-md-02913-WHO

common law of public nuisance is an inapt vehicle for addressing the conduct at issue." *Id.* The Restatement recognizes what these decisions have consistently found: that "[m]ass harms caused by dangerous products are better addressed through the law of products liability." *Id.*

Plaintiffs' public nuisance claims fail under these principles. In alleging that defendants designed, promoted, distributed, and marketed the JUUL product to maximize addiction or appeal to underage users, Plaintiffs seek to hold defendants liable for distributing an allegedly unsafe consumer product in a deceptive way. This theory must be pleaded in products liability, fraud, or consumer deception. Indeed, it is telling that the consumer plaintiffs raise nearly identical fact allegations in the Consolidated Class Action Complaint (ECF 387) and the Amended Consolidated Master Complaint (Personal Injury) (ECF 420) and assert product liability and deception claims—not public nuisance. The fact that product and deception tort claims would fail here for multiple reasons is not a license to convert the same theories into nuisance claims that do not allege injuries to land or real property.[39]

Allowing nuisance to serve as a catch-all theory for product-based claims is the risk that *Sturm*, *Beretta*, *Lead Paint*, and other courts foresaw. *See, e.g.*, *Sturm*, 309 A.D.2d at 96 ("All a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a company or an industry makes, markets and/or sells its nondefective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born."). It would enable nuisance law to swallow traditional products liability law without requiring plaintiffs to plead that they used or were injured by the product; and it would permit plaintiffs to pursue fraud or deception torts without requiring plaintiffs to plead (with particularity) that they were exposed to and deceived by product labeling or advertising. *See Tioga Pub. Sch. Dist. No. 15 of Williams Cty., State of N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 921

---

[39] Plaintiffs do allege the legal conclusion that the public nuisance "was connected to Plaintiff[s'] property, including but not limited to school buildings." *E.g.*, ECF 538 ¶ 632. But Plaintiffs do not allege any actual property damage from JLI's products or conduct; instead they make passing and vague allegations about increased hazardous waste stream from disposal of JUULpods, plumbing issues, or bathroom renovations. These injuries are economic—they all involve the allegation that the Plaintiffs had to spend money or divert resources to responding to use of the JUUL product. ECF 538 ¶ 642; ECF 539 ¶ 643; ECF 540 ¶ 639; ECF 541 ¶ 629; ECF 542 ¶ 642; ECF 543 ¶ 641; ECF 544 ¶ 637.

(8th Cir. 1993) (rejecting extension of nuisance to sale of asbestos because, if nuisance were extended to product claims, "[n]uisance . . . would become a monster that would devour in one gulp the entire law of tort"). The theory Plaintiffs urge would allow a wave of claims related to alleged downstream economic impacts from the distribution or marketing of a host of consumer products—from the costs of responding to obesity or diabetes from sugary cereals or soda, to the costs of responding to air pollution from automobiles or trucks, to the costs of medical or public safety services from the lawful sales of marijuana. This Court should—consistent with the law of the five states at issue here, cases outside those jurisdictions, and the Restatement—reject Plaintiffs' product-based nuisance theory.

### 2. Plaintiffs Fail to Plead an Interference with a "Public Right"

Plaintiffs' public nuisance claims fail for the additional reason that they do not sufficiently plead that defendants' conduct implicates a public right. Restatement (Second) of Torts § 821B (nuisance is "an unreasonable interference *with a right common to the general public*") (emphasis added); *accord* Restatement (Third) of Torts § 8 cmt. b (same). A public right is "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or *negligently injured*." Restatement (Second) § 821B cmt. g (emphasis added). Determining when a right is sufficiently public to give rise to a public nuisance claim "is not simply a matter of tallying the number of people affected by a defendant's allegedly tortious conduct." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011). Rather, the right must be one "held in common by all members of the community." Restatement (Third) of Torts § 8 cmt. b. For example, courts have held the right of public safety may be impacted by blasting, storage of explosives, or unsafe buildings; the right of public peace may be disrupted by unruly taverns and dance halls; and the right of public comfort may be affected by odors, fumes, dust, or other sources of pollution. *See Beretta*, 213 Ill.2d at 371-72 (collecting cases).

Plaintiffs allege that underage residents of Plaintiffs' districts have been subjected to deceptive advertising and improper marketing by defendants, and that schools and communities

have suffered derivative, downstream injuries from the resulting usage of ENDS products.[40]  Such conduct does not implicate a public right; rather, it implicates at best the *private* right of individuals not to be defrauded.  Though Plaintiffs allege that a significant number of people in their school districts or communities have been affected in a similar way, this "tallying" of alleged individual injuries does not transform a violation of a private right into a violation of a public right.  *Rhodes*, 636 F.3d at 96-97.  Plaintiffs do not identify what particular "right common to the general public" has been implicated, nor how defendants unreasonably interfered with such a public right.

Plaintiffs make conclusory assertions about interferences with "public health, safety and the right to a public education in a safe and healthy environment,"[41] but whatever harm is alleged in this case flows through the individual rights to be free from alleged defective products or alleged deceptive marketing.  This is not a case where the defendant is alleged to have maintained an unsafe building or run a polluting factory; the theory that defendants' alleged conduct led to underage use of ENDS at schools or in the community does not implicate a public right recognized under nuisance law.  *See Beretta*, 213 Ill.2d at 371-72 (distinguishing between individual rights and public rights).  Plaintiffs' allegation that they and their students "have a right to be free from conduct that endangers their health and safety,"[42] is exactly the sort of alleged "public right so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it." *Id*. at 374.  Courts are appropriately reluctant to recognize ill-defined public rights as the basis for a nuisance claim.

The mere fact that the Plaintiffs are themselves public entities does not mean that their claims implicate a public right.  Under similar circumstances, courts have rejected nuisance claims by public entities that arise from individuals' personal decisions to purchase and use products.  *See, e.g.*, *Beretta*, 213 Ill. 2d at 374 ("[W]e query whether the public right asserted by plaintiffs is merely an assertion, on behalf of the entire community, of the individual right not to be assaulted."); *Lead*

---

[40] ECF 538 ¶ 630; ECF 539 ¶ 632; ECF 540 ¶ 627; ECF 541 ¶ 619; ECF 542 ¶ 632; ECF 543 ¶ 629; ECF 544 ¶ 625.
[41] ECF 538 ¶ 626; ECF 540 ¶ 629; ECF 541 ¶ 620; ECF 542 ¶ 633; ECF 543 ¶ 631; ECF 544 ¶ 627.
[42] ECF 538 ¶ 632; ECF 539 ¶ 631; ECF 540 ¶ 623; ECF 541 ¶ 615; ECF 542 ¶ 628; ECF 543 ¶ 625; ECF 544 ¶ 621.

*Indus.*, 951 A.2d at 448 (quoting a law review article with approval: "Products generally are purchased and used by individual consumers, and any harm they cause—even if the use of the product is widespread and the manufacturer's or distributor's conduct is unreasonable—is not an actionable violation of a public right." (citation omitted)).

Even the rare court that has allowed nuisance claims against the manufacturer of a product to proceed has done so on a theory that the products polluted a collective community resource. *See ConAgra*, 17 Cal. App. 5th at 112 (concluding that lead paint exposure in private homes implicated a public right because residential housing is an essential shared community resource like streets, water, electricity, natural gas, or sewer services). Such logic does not apply to Plaintiffs' claims of nuisance based on aggregation of individual underage consumers' decisions to use JLI products, where the alleged injuries are not environmental or physical, but economic. *ConAgra* did not hold that a nuisance claim could arise based on simply bringing a consumer product into private residences or public facilities. Rather, the court's ruling was based on a product that was physically applied to homes throughout the community and created widespread environmental hazards. Those factors are not present here. Nor does the fact that the alleged injuries impact public schools mean that the alleged improper marketing or sales conduct interferes with a public right. *E.g.*, *Atl. Richfield Co.*, 137 Cal. App. 4th at 302-03, 313 (rejecting nuisance claim by public entities to recover money for injuries from use of lead paint, including in public buildings).

### 3. Plaintiffs Fail to Plead that JLI Had Control Over the Instrumentality of the Nuisance

The Arizona, Florida, New York, and Pennsylvania complaints fail for an additional reason: JLI did not control its products at the time the alleged nuisance occurred. Pennsylvania and Florida have expressly adopted this rule. *See Beretta,* 126 F. Supp. 2d at 911 (Pennsylvania courts dismiss public nuisance claims "where the instrument of the nuisance is a lawfully sold product which has left the manufacturer's control"); *Penelas*, 1999 WL 1204353, at *4 (Florida court holds that a "party cannot be held liable for nuisance absent control of the activity which creates the nuisance."). Other courts have frequently recognized this requirement for nuisance. *E.g.*, *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1026 (10th Cir. 2007) ("[An] individual[] may be held liable to

the extent he was responsible for the maintenance of a nuisance that was under his possession or control."). And the rule makes sense, because "without control a defendant cannot abate a nuisance," so a defendant should not be held liable for damages for activity outside of its control. *Tioga Pub. Sch. Dist.*, 984 F.2d at 920 (rejecting nuisance claim based on sale of asbestos). Accordingly, even though Arizona and New York have not specifically adopted a control requirement, it should apply in those jurisdictions as well.[43]

Plaintiffs allege that JLI coordinated with a third party to expand youth access to ENDS or targeted the youth market more generally,[44] but they do not allege that JLI itself sold products unlawfully to specific students in Plaintiffs' school districts or that JLI controlled the activities of underage users who may have brought the products into those schools. Plaintiffs cite statutes that prohibit the sale of ENDS products to minors, but they do not allege specific violations of these statutes impacting the Plaintiffs' schools or communities.[45] The FDA's regulations similarly make retailers of products liable for failure to verify purchasers' ages, not manufacturers. *See* 21 C.F.R. § 1140.14(a)(2)(i). Plaintiffs cannot allege that JLI controls the instrumentality of the nuisance— i.e., the alleged pervasive, disruptive, and indeed *prohibited* underage use of ENDS, including JUUL products, in schools—when such usage results from a series of choices by independent actors, from retailers to users, after the product has left JLI's control. In addition, Plaintiffs seek to hold JLI responsible for unrelated "tobacco industry giants [and] e-cigarette start-ups" that launched their own ENDS products and "knock off devices" that contributed to the alleged nuisance. *E.g.*, ECF 538 ¶¶ 584-587. Such conduct by third-party competitors to JLI is clearly outside of JLI's control.

---

[43] Though California courts have held that "a defendant's control of the nuisance is not necessary to establish liability in a representative public nuisance action in California," *ConAgra*, 17 Cal. App. 5th at 163-64 (citation omitted), this does not support Santa Cruz's and Livermore JSD's public nuisance claims for two reasons. First, Livermore JSD is not seeking to bring a "representative public nuisance" action on behalf of the state, which is a "legally distinct" action from one like Livermore JSD's for damages. *Id.* Second, as discussed above, California law rejects a public nuisance claim where "defendants [ ] merely sell a product that posed a risk of harm." *Id.* at 167-68 (citing *Firearm Cases*, 126 Cal. App. 4th at 989)). Plaintiffs' allegations align instead with those in *Firearm Cases*, where the court held that there was "no causal connection between any conduct of the defendants" and third-party incidents associated with illegal firearm acquisition. 126 Cal. App. 4th at 989.

[44] ECF 538 ¶¶ 412-439; ECF 539 ¶¶ 414-441; ECF 540 ¶¶ 412-439; ECF 541 ¶¶ 412-439; ECF 542 ¶¶ 415-442; ECF 543 ¶¶ 412-439; ECF 544 ¶¶ 412-439.

[45] ECF 538 ¶ 629; ECF 540 ¶ 626; ECF 541 ¶ 618; ECF 542 ¶ 631; ECF 543 ¶ 628; ECF 544 ¶ 624.

It is no answer for Plaintiffs to allege that JLI controls the design of its product or its labeling, marketing, and advertising, and that such activity caused increased underage use of JUUL's products.  JLI has, in fact, suspended all advertising and promotion of JUUL products through broadcast media, print, and digital channels and its products are now sold only in flavors of tobacco and menthol.  ECF 626 at 8.  But "control" over product design or advertising would give rise at best to a products claim or a fraud or misrepresentation claim by the user of a product, and not the type of public nuisance claim that Plaintiffs assert.  As discussed above, courts have repeatedly rejected attempts to convert product or product marketing-based claims into nuisance.  *See, e.g.*, *Beretta*, 126 F. Supp. 2d at 888, 908-10 (rejecting allegation that gun manufacturer's "marketing and distribution schemes [were] responsible for placing guns where they do damage to residents of the City"); *Penelas*, 1999 WL 1204353, at \*4 (nuisance claim failed because of defendant's lack of control over its product at time of harm, despite claim of defects in the product).  The failure to allege JLI's control of its product in schools requires dismissal of Plaintiffs' claims.

### 4. Plaintiffs Fail to Plead a Special Injury

Plaintiffs' claims fail for the independent reason that they have not and cannot allege an injury that is cognizable through a public nuisance claim for damages.  A plaintiff cannot recover for expenditures of money on a claim of public nuisance unless it has "suffered damage different in kind from that suffered by the general public."  Restatement (Second) of Torts § 821C; *see Hopi Tribe v. Arizona Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, 398 (2018) ("Private parties may bring public nuisance claims in Arizona if the alleged nuisance caused the plaintiff special injury."); *Venuto v. Owens-Corning Fiberglass Corp.*, 22 Cal. App. 3d 116, 124 (1971) (private entity cannot sue for "public nuisance unless he alleges facts showing special injury to himself in person or property of a character different in kind from that suffered by the general public") (citations omitted); Cal. Civ. Code § 3493 (imposing special injury requirement); *State ex rel. Gardner v. Sailboat Key, Inc.*, 295 So. 2d 658, 660 n.2 (Fla. Dist. Ct. App. 1974) (noting that an individual not acting in the name of the state must show "special or peculiar injuries different in kind" to pursue claim to enjoin a public nuisance) (citation omitted); *Wheeler*, 303 A.D.2d at 793 ("It has long been settled, however, that '[a] public nuisance is actionable by private persons only if it is shown that

1    the person suffered special injury beyond that suffered by the community at large.'") (citations

2    omitted); *Duquesne Light Co. v. Pennsylvania Am. Water Co.*, 850 A.2d 701, 704 (Pa. 2004) ("To

3    succeed on a claim for public nuisance, however, the plaintiff must have suffered a special or

4    peculiar harm, different from the harm suffered by the general public."). None of the government

5    entity Plaintiffs can satisfy this special injury requirement.[46]

6    A special injury must be different in kind from the injury allegedly suffered from others that

7    could also potentially be impacted by the alleged nuisance. *See, e.g., Wheeler*, 303 A.D.2d at 793

8    (neighborhood residents could not recover for alleged nuisance from racetrack's excessive noise,

9    because "the requisite 'special' or 'peculiar' injury suffered by private persons must be different in

10   kind, and not just degree, from that sustained by the community surrounding the source of the public

11   nuisance") (citation omitted); *Venuto*, 22 Cal. App. 3d at 124 ("plaintiff's damage [must] be

12   different in kind, rather than in degree, from that shared by the general public"); *Koll-Irvine Ctr.*

13   *Prop. Owners Assn. v. Cty. of Orange*, 24 Cal. App. 4th 1036, 1041 (1994) (property owners'

14   association failed to allege special injury from airport fuel tank different from all homes and

15   businesses in the area of the airport). Thus, for example, a plaintiff suing based on noise from a

16   racetrack could not show special injury when all persons within a two-mile radius of the track were

17   "similarly impacted by exposure to unacceptable noise levels." *Wheeler*, 303 A.D.2d at 793

18   (internal quotation marks omitted).

19   Plaintiffs allege that they suffered special damage compared to the general public because

20   they had had to expend, divert, and increase school staff time to such tasks as confiscating product,

21   engaging with parents, assisting with investigations, disciplining students, routing students to social

22   workers, modifying the health curriculum, modifying bathrooms, or addressing waste from JUUL

23   pods.[47] All of these alleged injuries that Plaintiffs assert involve spending money to address issues

24   that they allege derive from increased ENDS use at schools or in the community, but the alleged

25

---

26   [46] Santa Cruz County, but not the other Plaintiffs, has authority to represent the state or a political
     subdivision to sue for injunctive relief to enjoin or abate a public nuisance (but not for money
27   damages) without showing such special injury. *See* Restatement (Second) of Torts § 821C. But the
     County's representative claim fails for the independent reasons discussed above.

28   [47] ECF 538 ¶ 642; ECF 539 ¶ 643; ECF 540 ¶ 639; ECF 541 ¶ 629; ECF 542 ¶ 642; ECF 543 ¶ 641;
     ECF 544 ¶ 637.

injuries are not particular to these plaintiffs as compared to other entities that could also claim to
have been impacted by ENDS use.  The fact that every school district Plaintiff alleges essentially
identical injuries shows that the complaints do not plead any sufficient special injury.  *E.g.*, *Wheeler*,
303 A.D.2d at 793 (no special injury when everyone within zone of racetrack similarly impacted);
*Koll-Irvine*, 24 Cal. App. 4th at 1041 (no special injury when everyone living near airport was
similarly impacted by risks from presence of allegedly unsafe fuel tanks).  In fact, not only do the
school districts all allege essentially the same injuries, Santa Cruz County does too.  Like the school
districts, the county claims to have expended resources on education programs including to "parents,
students, educators, and administrators" and the complaint seeks funding for the County of Santa
Cruz Office of Education.[48]  These allegations establish that rather than one plaintiff complaining
of a special injury, all of the plaintiffs complain of a similar injury; such a claim is not recoverable.
As a result, all six of the school district Plaintiffs cannot maintain any action for public nuisance.[49]

## C.  Plaintiffs Fail to State Negligence-Based Claims

Plaintiffs' negligence and gross negligence claims must be dismissed because (1) under well-
established legal principles in all five states at issue, JLI does not owe any of the government entity

---

[48] ECF 539 ¶¶ 602-603, 609. Relatedly, the state attorneys general of California, New York, and Pennsylvania have brought claims against JLI alleging similar harms to the alleged "special injuries" by the school districts alleged here.  *See* Compl. at ¶¶ 225-234, *California v. JUUL Labs, Inc.*, No. RG19043543 (Alameda Cty. Super. Ct.); Compl. at ¶¶ 99-101, *New York v. JUUL Labs, Inc.*, No. 452168/2019 (N.Y. Sup. Ct.); Compl. at ¶¶ 197-205, *Pennsylvania v. JUUL Labs, Inc.*, No. 200200962 (Pa. Commw. Ct.).

[49] Plaintiffs may rely on trial court decisions from the opioid litigation, in which courts have found that plaintiffs adequately pled claims for public nuisance. *E.g.*, *In re Opioid Litigation*, 2018 WL 3115102 (N.Y Sup. Ct. 2018) (denying motion to dismiss nuisance claim by counties). Those decisions involved unique allegations of a campaign to flood the market with an overabundance of unnecessary opioids.  Importantly, with respect to claims by public entities, public hospitals themselves paid for opioids, which the court found sufficient to plead a special injury. *E.g.*, *In re Nat'l Prescription Opiate Litig.*, 2020 WL 1669655, at *17 (N.D. Ohio Apr. 3, 2020); *see also In re Opioid Litigation*, 2018 WL 3115102 at *2 (payment by counties). Even with that distinction, the opioid MDL court recognized contrary law, but declined to follow it as unpersuasive. *Id.* (declining to follow Florida court's decision in *Penelas* and instead concluding under *Erie* that the Florida Supreme Court would endorse an expansive nuisance theory).  And the opioid MDL Court has relied on state law from jurisdictions that have expressly expanded public nuisance to product-based marketing claims relating to firearms, contrary to the jurisdictions here. *E.g.*, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp.3d 672, 673-74 (N.D. Ohio 2019) (allowing public nuisance claim under Ohio law based on broad statements of state law).  Even despite the unique circumstance of the opioid cases, the expansive approach to public nuisance in those decisions does not reflect the consensus view of the limits of public nuisance law described above.

Plaintiffs a duty of care; and (2) the economic loss rule bars negligence claims to recover the type of economic losses claimed here in all states, except Arizona.  In addition, the Florida complaints fail to allege sufficient damages.  Accordingly, all of the negligence-based claims must be dismissed. *E.g.*, *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) ("Where a claim for ordinary negligence fails, a gross negligence claim necessarily fails.").

### 1.     JLI Does Not Owe the Government Entity Plaintiffs a Duty of Care

Under the law of each of the five states at issue, Plaintiffs have failed to plead an essential element of any negligence (or gross negligence) claim: that JLI owes them a duty of care.[50]  *See Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 955 (2007); *Abad v. G4S Secure Sols. (USA), Inc.*, 293 So. 3d 26, 29 (Fla. Dist. Ct. App. 2020); *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563-64 (2018); *Morena v. S. Hills Health Sys.*, 501 Pa. 634, 642 & n.5 (1983); *Pasternack,* 892 F. Supp. 2d at 552 (New York).

Duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm."  *E.g.*, *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 335 (Ct. App. 2012) (citation omitted).  Whether the law imposes a duty is a threshold question to be determined by the Court as a matter of law and may be decided on a motion to dismiss.  *See Abad*, 293 So. 3d at 29; *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997); *see also Morena*, 501 Pa. at 639; *Quiroz*, 243 Ariz. at 564; *Rice*, 154 Cal. App. 4th at 955.  In determining whether a duty exists, the Court's analysis is driven by the consideration of relevant policy factors, including the dangers of indeterminate and potentially boundless liability.  *See Bradshaw v. Rawlings*, 612 F.2d 135, 138-39 (3d Cir. 1979); *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 398-99, 401 (2019); *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001); *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. Dist. Ct. App. 2005); *Estate of Witthoeft v. Kiskaddon*, 557 Pa. 340, 352-53 (1999).

Because the government entity Plaintiffs have not purchased or used JUUL products, they claim that JLI owed them a duty of care as members of "the general public."  But the law does not

---

[50] Santa Cruz has not alleged any negligence-based claims.

1   extend a defendant's duty of care to the entire population. *E.g.*, *Hamilton*, 96 N.Y.2d at 232 ("The

2   injured party must show that a defendant owed not merely a general duty to society but a specific

3   duty to him or her."); *Hafner v. Beck*, 185 Ariz. 389, 391 (Ct. App. 1995) ("We do not understand

4   the law to be that one owes a duty of reasonable care at all times to all people under all

5   circumstances."); *Abad*, 293 So. 3d at 30 (rejecting argument that duty was owed to the general

6   public). Rather, Plaintiffs must allege a specific duty "running directly to" them from JLI.

7   *Hamilton*, 96 N.Y.2d at 232 (citation omitted).

8        Plaintiffs theorize that JLI owes them a duty in their capacity as "other persons coming into

9   contact with the product."[51] But this conception of duty fails because it turns on the behavior of

10   third parties—underage students—through whom Plaintiffs "com[e] into contact" with JUUL

11   products. Driven by concerns about fairness and boundless liability, each state at issue has refused

12   to impose a duty on defendants to control third parties. *See, e.g.*, *Davidson v. City of Westminster*,

13   32 Cal. 3d 197, 203 (1982) ("As a general rule, one owes no duty to control the conduct of another,

14   nor to warn those endangered by such conduct."); *Brisbine v. Outside In Sch. of Experiential Educ.,*

15   *Inc.*, 799 A.2d 89, 93 (Pa. Super. 2002) ("Generally, there is no duty to control the acts of a third

16   party."); *Boynton v. Burglass*, 590 So. 2d 446, 448 (Fla. Dist. Ct. App. 1991) ("courts have long

17   been loath[] to impose liability based on a defendant's failure to control the conduct of a third

18   party"); *Hamilton*, 96 N.Y.2d at 231-33 (extending gun manufacturer's duty to persons killed by its

19   guns would improperly require manufacturer to control what third parties do, because "[a] defendant

20   generally has no duty to control the conduct of third persons so as to prevent them from harming

21   others, even where as a practical matter defendant can exercise such control") (citation omitted);

22   *Bloxham v. Glock Inc.*, 203 Ariz. 271, 274 (Ct. App. 2002) (same because "there is no duty to control

23   the conduct of a third party"); *Abad*, 293 So. 3d at 30 (same for private security company that gave

24   employee guns); *Cook v. MillerCoors, LLC*, 829 F. Supp. 2d 1208, 1217 (M.D. Fla. 2011) (car

25   accident victim "must show that MillerCoors owed a duty to prevent the harm caused to her by"

26   controlling drunk driver's conduct).

27

28   ───────────────
[51] ECF 538 ¶¶ 718-719; ECF 540 ¶¶ 719-720; ECF 541 ¶¶ 712-713; ECF 542 ¶¶ 725-726; ECF 543 ¶¶ 717-718; ECF 544 ¶¶ 713-714.

Nor can Plaintiffs invoke the narrow exception to the third-party rule for special relationships between "the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct," or" "the defendant and the plaintiff which gives to the plaintiff a right of protection." *Bloxham*, 203 Ariz. at 274 (internal alterations and citations omitted); *see Hamilton*, 96 N.Y.2d at 233; *Brisbine*, 799 A.2d at 93; *Davidson*, 32 Cal. 3d at 203; *Abad*, 293 So. 3d at 30-31. Special relationships are limited to those engrained in the common law: parent-child, carrier-passenger, innkeeper-guest, and landlord-invitee, master-servant, guardian-ward, and similar close relationships. *See Bloxham*, 203 Ariz. at 274 (citing examples); *Brisbine*, 799 A.2d at 93; *Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 114-15 (1992); *Hamilton.*, 96 N.Y.2d at 233; *Garrison Ret. Home Corp. v. Hancock*, 484 So. 2d 1257, 1261 (Fla. Dist. Ct. App. 1985). Similarly, while a business may have a duty to protect its customers from third parties based on a special relationship, *see Toomer v. United States*, 615 F.3d 1233, 1236 (9th Cir. 2010), it does not have a duty to protect third parties from customers it cannot control. *See, e.g.*, *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1372 (S.D. Fla. 2003) (bank owed no duty to third party doing business with its customer); *Abad*, 293 So. 3d at 31 (similar).

Plaintiffs cannot allege a special relationship between themselves and JLI or between JLI and students. Plaintiffs do not allege that JLI has any control (or could have any control) over how Plaintiffs and students interact with each other. *See Quiroz*, 243 Ariz. at 567–68 (employer owed no duty to employee's son who died from mesothelioma acquired from employee's contaminated clothing because employer had no special relationship with employee's son); *In re Nassau Cty. Consol. MTBE (Methyl Tertiary Butyl Ether) Prods. Liab. Litig.*, 918 N.Y.S.2d 399 (Sup. Ct. 2010) ("The plaintiffs fail to allege any facts from which an affirmative duty to control third-party handlers of gasoline, or any other relevant duty, was owed by these defendants in relation to the plaintiffs."); *see also McCarthy*, 119 F.3d at 156 ("New York courts are reluctant to impose a duty of care where there is little expectation that the defendant could prevent the actions of a third party.").

A duty also cannot arise based on allegations that the impact of JLI's conduct on Plaintiffs was foreseeable. Foreseeability is irrelevant to the existence of a duty in New York and Arizona.[52] *Hamilton*, 96 N.Y.2d at 232 ("Foreseeability, alone, does not define duty—it merely determines the scope of the duty once it is determined to exist."); *Quiroz*, 243 Ariz. at 564 ("foreseeability is not a factor to be considered by courts when making determinations of duty"). In California and Pennsylvania, foreseeability is just one of many considerations in determining whether a duty exists. *See S. Cal. Gas Leak Cases*, 7 Cal. 5th at 401; *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 553 (2000). And that some consequences were foreseeable in hindsight does not create a duty out of thin air; "[a]fter all, on clear judicial days courts can foresee forever." *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 401 (internal quotation marks and citations omitted). Precisely because foreseeability "provides virtually no limit on liability for nonphysical harm," *id.*, "the duty element of negligence law serves as an important barrier to over-extension of liability," *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

This case is the perfect example of the dangers of attenuated, limitless liability: the connection between Plaintiffs and JLI involves a chain from the manufacturer, to the distributor, to the retailer, to legal and illegal purchasers, to schools. *See Hamilton*, 96 N.Y.2d at 234; *Beretta U.S.A. Corp.*, 277 F.3d at 426 ("The causal connection between the [ ] manufacturers' conduct and the plaintiffs' injuries is attenuated and weak."). And the "universe of potential claimants whose pocketbooks were adversely (and foreseeably) affected" is massive. *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 410. Even limited to foreseeable plaintiffs, then, "the dangers of indeterminate liability, over-deterrence, and endless litigation are at their apex." *Id.* If JLI had a duty to Plaintiffs, then JLI

---

[52] Florida generally employs a foreseeable "zone of risk" test for determining the existence of a legal duty for negligence claims, but it categorically rejects foreseeability in products liability cases. *Grunow v. Valor Corp. of Fla.*, 904 So. 2d 551, 556 (Fla. Dist. Ct. App. 2005). The basis for the Florida Plaintiffs' claims is that JLI had a duty to design and manufacture products that were not unreasonably dangerous, and that JLI should have warned about the products' risks. ECF 541 ¶¶ 712-720, 723-724; ECF 542 ¶¶ 725-733, 736-737. Because these claims are product-based claims pled as ordinary negligence, *Grunow*'s product-based approach provides the more apt rule. *See Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *3 (M.D. Fla. Aug. 16, 2013) (characterizing negligent misrepresentation claims as "re-titled" product liability claims). But even if the Court follows the foreseeable zone of risk test, there is no duty under Florida law for the same reasons explained in this section.

could be exposed to liability to *anyone* with whom its product's users come into contact who could claim some derivative economic loss. That "would essentially result in [JLI] being … an absolute guarantor of [others'] behavior … at all times." *Abad*, 293 So. 3d at 31.

To avoid that untenable result, states have rejected that limitless theory of legal duty. New York has rejected a duty running from gun manufacturers to victims of gun violence, despite allegations that it was foreseeable that some guns would be used in killings, because such a duty "would create not only an indeterminate class of plaintiffs but also an indeterminate class of defendants whose liability might have little relationship to the benefits of controlling illegal guns." *Hamilton*, 96 N.Y.2d at 236; *see also McCarthy*, 119 F.3d at 157 (finding that ammunition manufacturer owed no duty to shooting victims even though "it may have been foreseeable…that criminal misuse of the…bullets could occur"). The same is true in Arizona and Pennsylvania, "regardless of the 'foreseeable victims' of [a manufacturer's] alleged" negligence. *Bloxham*, 203 Ariz. at 276; *see Beretta*, 277 F.3d at 426. Florida has likewise refused to impose a duty on a mass shooter's employer, even though the employer required him to carry a firearm, knew "he was an unstable and dangerous individual who expressed a desire to commit acts of mass murder," and "submitted a fraudulent psychological evaluation." *Abad*, 293 So. 3d at 28. The Court should follow this persuasive reasoning and dismiss Plaintiffs' negligence claims, because JLI did not owe them a duty.

## 2. The Economic Loss Rule Bars Plaintiffs' Negligence Claims

The Court should dismiss Plaintiffs' negligence claims for the independent reason that they seek damages for economic losses, such as reimbursement for funds spent on education about ENDS use, bathroom monitoring, counseling, waste disposal, and disciplinary proceedings. In each state but Arizona, negligence claims cannot rest on economic losses without plausible allegations of physical injury or property damage. *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400; *Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984); *Burns*, 2013 WL 4437246, at *2;[53] *REM Coal*

---

[53] Florida's economic loss rule is limited to products-based claims which, as noted above, is the genesis of Plaintiffs' negligence claims. *See Burns*, 2013 WL 4437246, at *3 (relying on economic loss rule to dismiss negligence-based claim as a "re-titled" products claim).

*Co. v. Clark Equip. Co.*, 386 Pa. Super. 401, 402 (1989); *but see Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 346 (2013) (limiting rule to contracting parties). That rule "affords a principled basis for reasonably apportioning liability," *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001), and "reflects a policy interest in protecting defendants from disproportionate, and potentially limitless, liability," *Travelers Cas. & Sur. Co. v. Dormitory Auth.- State of New York*, 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010). A complaint must "adequately allege why the economic loss doctrine does not apply." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012). Plaintiffs have not and cannot do so.

An exception to the economic loss rule exists where the plaintiff and defendant have a special relationship. *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400; *Finlandia*, 96 N.Y.2d at 289; *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 602 (W.D. Pa. 2019); *Perfumeria Ultra, S.A. de C.V. v. Miami Customs Serv., Inc.*, 231 F. Supp. 2d 1218, 1223 (S.D. Fla. 2002). But as discussed above, *supra* at 22-23, there is no relationship between JLI and Plaintiffs, let alone a special one, so this exception is inapplicable. *See, e.g.*, *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 2012 WL 11896326, at *1 (S.D.N.Y. Sept. 28, 2012) (finding no special relationship without "direct contact"); *S. Cal. Gas Leak Cases*, 7 Cal. 5th at 400 ("What we mean by special relationship is that the plaintiff was an intended beneficiary of a particular transaction.").

Nor do Plaintiffs plausibly allege any property damage that would save their negligence claims from the economic loss rule. The complaints allege non-physical harm consisting of costs to, for example, confiscate products, communicate with parents, investigate policy violations, discipline students, convene support groups, develop programming, and modify curricula.[54] Though certain Plaintiffs make passing reference to plumbing issues from disposal of JUUL products in toilets, an increase in purportedly hazardous waste on school property, or physical modifications made to bathrooms in response to increased ENDS use, *e.g.*, ECF 544 ¶¶ 604-605,[55] there are no allegations that schools or bathrooms were physically damaged from such waste, let alone what the

---

[54] ECF 538 ¶ 729; ECF 540 ¶ 731; ECF 543 ¶ 728; ECF 544 ¶ 724.

[55] Other complaints do not even make this allegation. Instead, they say that "with sufficient funding," they *would* make physical modifications to schools. ECF 538 ¶ 617 (Tucson USD); ECF 540 ¶ 614 (Livermore Valley JUSD).

1    modifications entailed or why they were necessary.  In any event, these are not allegations of

2    physical damage flowing from JLI's alleged negligence, the way property damage from a car

3    accident follows from a driver's negligence.  At best, they are allegations that third-party use of

4    JLI's products caused Plaintiffs to decide independently to make physical changes to its property.

5    And while other complaints fleetingly allege that Plaintiffs had to "address property damage in

6    schools," they say nothing about what that damage was.[56]  These bare allegations are conclusory

7    and insufficient.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The economic loss rule

8    bars Plaintiffs' negligence claims.

9                    **3.      The Florida Plaintiffs Do Not Plausibly Allege Damages**

10           Even if economic damages were recoverable, the complaints by Broward County SB and

11   Escambia County SB do not plausibly allege negligence-based damages.  ECF 541 ¶ 710-724; ECF

12   542 ¶¶ 723-737.  Unlike the other plaintiffs who attempt to allege specific outlays supposedly

13   attributable to JLI's alleged negligence (although recovery for those outlays is barred by the

14   economic loss rule), the Florida plaintiffs merely assert that they have "been injured and suffered

15   economic damages and will continue to incur damages in the future."  ECF 541 ¶ 724; ECF 542 ¶

16   737.  That "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550

17   U.S. at 555.

18                   **4.      The California and Pennsylvania Gross Negligence Claims, and Santa**
                             **Cruz County's Punitive Damages Claim, Must Be Dismissed Because**
19                           **They Are Not Independent Causes of Action**

20           The gross negligence claims brought by Livermore Valley JUSD and Central Bucks SD must

21   be dismissed, because Pennsylvania and California do not recognize independent causes of action

22   for gross negligence.  *See Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 215 n.2 (3d Cir. 2010); *Floyd*

23   *v. Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 828 (E.D. Pa. 2001); *Jimenez v. 24*

24   *Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 n.3 (2015).

25           Santa Cruz County alleges a distinct cause of action for punitive damages.  ECF 539 ¶¶ 741-

26   744.  Under California law, however, punitive damages are a remedy and not a cause of action.  Cal.

27

28   _____
     [56] ECF 538 ¶ 729; ECF 540, ¶ 731; ECF 543, ¶ 728; ECF 544, ¶ 724.

1  Civ. Code § 3294; *Hilliard v. A.H. Robins Co.*, 148 Cal. App. 3d 374, 391 (1983) (Under California

2  law, "[t]here is no cause of action for punitive damages.  Punitive or exemplary damages are

3  remedies available to a party who can plead and prove the facts and circumstances set forth in Civil

4  Code section 3294."); *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, 2017 WL 405425,

5  at *8 (C.D. Cal. 2017) (dismissing punitive damages claim because punitive damages is not a cause

6  of action under California law).  Accordingly, these claims must be dismissed.[57]

7        **D.        Plaintiffs Fail to Plead Proximate Causation**

8        Plaintiffs' negligence, gross negligence, and nuisance claims also fail because Plaintiffs

9  cannot allege a sufficiently close connection between JLI's alleged conduct and the alleged harms

10 to show proximate causation.  While proximate causation is sometimes a fact question, each state at

11 issue recognizes it may be determined as a matter of law.  *See Modisette v. Apple, Inc.*, 30 Cal. App.

12 5th 136, 152 (2018); *Barrett v. Harris*, 207 Ariz. 374, 378 (Ct. App. 2004); *Eckroth v. Pennsylvania*

13 *Elec., Inc.*, 12 A.3d 422, 427–28 (Pa. Super. 2010); *Raldiris v. Enlarged City Sch. Dist. of*

14 *Middletown*, 118 N.Y.S.3d 696, 701 (2d Dep't 2020); *Seminole Lakes Homeowner's Ass'n, Inc. v.*

15 *Esnard*, 263 So. 3d 56, 58 (Fla. Dist. Ct. App. 2018).  Thus, courts can and do dismiss negligence

16 and nuisance claims that fail to plead that a defendant's alleged negligence or creation of a nuisance

17 was the proximate cause of plaintiff's claimed injuries.  *See, e.g.*, *Sturm*, 309 A.D.2d at 103

18 (affirming dismissal of nuisance claim where defendants' commercial activity was not the proximate

19 cause of plaintiff's harm); *Bruner v. Anheuser-Busch, Inc.*, 153 F. Supp. 2d 1358, 1361 (S.D. Fla.

20 2001) (dismissing negligence claim against beer producer where manufacture or sale of product was

21 not the proximate cause of injuries).

22       Proximate causation generally requires that the defendant's acts substantially bring about

23 the plaintiff's injury, and turns on factors including "(a) the number of other factors which contribute

24 in producing the harm and the extent of the effect which they have in producing it; (b) whether the

25 actor's conduct has created a force or series of forces which are in continuous and active operation

26 up to the time of the harm, or has created a situation harmless unless acted upon by other forces for

27 _____

28 [57] JLI reserves its right to challenge the prayer for punitive damages and contest the availability of
   punitive damages for all of the complaints.

1  which the actor is not responsible; [and] (c) lapse of time." *E.g.*, *Eckroth*, 12 A.3d at 428; *Barrett*,

2  207 Ariz. 374 at n.7.  Ultimately, "[t]he determination of proximate cause is primarily a problem of

3  law and must, as a threshold matter, be determined by the judge and it must be established before

4  the question of actual cause is put to the jury." *Eckroth*, 12 A.3d at 427-28.

5        The injuries Plaintiffs allege are too attenuated, as a matter of law, from JLI's alleged breach

6  to establish proximate cause.  Plaintiffs claim that JLI negligently manufactured and marketed its

7  products, while not warning users about their alleged health risks.  The harm Plaintiffs allege,

8  however, is too far removed from the safety or the attendant health effects of JUUL products on

9  students.  Rather, it is derivative of students' alleged addictions to nicotine and "run[s] through

10  several links in a chain consisting of at least the manufacturer, the . . . distributor[,]. . . the first

11  retailer[,]" and "numerous subsequent legal" and illegal purchasers.  *Hamilton*, 96 N.Y.2d at 234;

12  *see also Beretta*, 277 F.3d at 426 ("The causal connection between the [ ] manufacturers' conduct

13  and the plaintiffs' injuries is attenuated and weak.").

14        Causal chains similar to the one alleged here have been held insufficient as a matter of law.

15  For example, in *Allegheny General Hospital v. Philip Morris, Inc.*, the Third Circuit affirmed the

16  dismissal, on a Rule 12(b)(6) motion, of Pennsylvania negligence claims brought by hospitals that

17  "alleged that the tobacco companies deceived and misled the public about the addictive properties

18  of nicotine and the health risks of smoking."  228 F.3d 429, 432 (3d Cir. 2000).  Allegedly as a

19  result, "many people used tobacco and developed lung cancer and other tobacco-related illnesses,"

20  which the "hospitals expended significant resources treating."  *Id.* at 432-33.  Despite accepting that

21  the tobacco companies had a "specific intent to harm" the hospitals, *id.* at 439, the Third Circuit

22  found proximate cause "lacking due to the remoteness of the Hospitals' injury in relation to the

23  Tobacco Companies' alleged conspiracy," *id.* 445-46; *see also Ass'n of Wash. Pub. Hosp. Districts

24  v. Philip Morris Inc.*, 241 F.3d 696, 707 (9th Cir. 2001) (affirming dismissal, on Rule 12(b)(6)

25  motion, of hospital districts' fraud and misrepresentation claims to recover costs of treating tobacco-

26  related illness for lack of proximate causation).  Likewise, Plaintiffs' alleged injuries are too remote

27  in relation to how JLI allegedly manufactured and marketed its products.  *See Hamilton*, 96 N.Y.2d

28  at 234 ("Such broad liability … should not be imposed without a more tangible showing that

Motion to Dismiss Bellwether Government Entity Complaints

1   defendants were a direct link in the causal chain that resulted in plaintiffs' injuries, and that

2   defendants were realistically in a position to prevent the wrongs.").[58]

3   Even if a defendant's conduct is the proximate cause of a plaintiff's injuries, an intervening

4   event—including deliberate misuse or illegal activity by a third party—can break the causal chain.

5   *See Alston v. Caraco Pharm., Inc.*, 670 F. Supp. 2d 279, 286 (S.D.N.Y. 2009); *Pompeneo v. Verde*

6   *Valley Guidance Clinic*, 226 Ariz. 412, 414 (Ct. App. 2011); *Roberts v. Shop & Go, Inc.*, 502 So.

7   2d 915, 917 (Fla. Dist. Ct. App. 1986); *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009);

8   *Chacko*, 148 Pa. Cmwlth. at 499.    "Proximate cause will not be found where a party

9   merely furnishes the condition or occasion for the occurrence of the event but is not one of its

10  causes." *Raldiris*, 118 N.Y.S.3d at 701.  Here, even if JLI negligently designed and marketed its

11  products, at least two (illegal or prohibited) intervening events occurred before Plaintiffs suffered

12  any damage: adult purchasers gave JLI's products to students (or retailers sold to students), and

13  those underage students deliberately used them at school.

14  To be sure, this Court previously found that because JLI is alleged to have targeted underage

15  users, "Plaintiffs' allegations, if proven, are sufficient to show that JUUL had reason to know that

16  its conduct would encourage illegal use and trade of its products; thus, the allegedly illegal activity

17  was foreseeable and not an intervening cause."  *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728,

18  761-62 (N.D. Cal. 2019).   But the claims in *Colgate* were brought by underage purchasers

19  themselves based on their own alleged injuries.   The chain of causation here extends well past

20  underage purchasers to alleged economic injuries of school districts that never purchased ENDS

21  products and whose injuries derive from use at schools of the products by others.  *See Jacoves*, 9

22  Cal. App. 4th at 118 (affirming judgment on the pleadings because "the complaint must allege that

23  Big 5 knew, or had reason to know, that Jonathan was reasonably likely to use the rifle to harm

24

---

25  [58] *See also, e.g.*, *Chavez v. Tolleson Elementary Sch. Dist.*, 122 Ariz. 472, 478 (Ct. App. 1979) (affirming judgment notwithstanding the verdict because murder of student who left campus was

26  not foreseeable consequence of negligently allowing student to leave school without permission); *Chacko v. Com., Dep't of Transp.*, 148 Pa. Cmwlth. 494, 499-500 (1992) (affirming grant of

27  summary judgment because driver losing consciousness was supervening cause of car crash, even if city negligently designed the road and failed to post warning signs); *Brady v. State Paving Corp.*,

28  693 So. 2d 612, 613 (Fla. Dist. Ct. App. 1997) (reversing denial of summary judgment because owner not correcting known defect relieved contractor of liability for installing defective product).

1  himself"); *Bruner*, 153 F. Supp. 2d at 1361 (granting motion to dismiss because "voluntary drinking

2  of alcohol is the proximate cause of an injury, rather than the manufacture or sale of those

3  intoxicating beverages to that person"); *Compania de Elaborados de Cafe v. Cardinal Capital*

4  *Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1279 (S.D. Fla. 2003) (granting summary judgment because

5  "Plaintiffs cannot establish that they were foreseeable victims without first showing that Defendant

6  had knowledge of [the] alleged wrongful conduct").  At most, JLI merely "furnished the occasion"

7  for students to bring JUUL products to school, but this is insufficient for proximate causation.

8  *Raldiris*, 118 N.Y.S.3d at 701.

9        Because Plaintiffs do not plead proximate causation, all claims fail.

10       **E.        The Statutory Consumer Protection Claims Must Be Dismissed**

11       The statutory consumer protection claims brought under New York law by the Three Village

12  CSD and under Florida law by the School Boards of Escambia County and Broward County fail as

13  a matter of law.  Courts in both states permit a plaintiff to recover only "actual damages" incurred

14  as a direct result of a deceptive trade practice or advertisement.  The government entity Plaintiffs

15  are not purchasers or consumers of JLI's products.  The type of consequential and derivative

16  economic injuries Plaintiffs allege are not recoverable under either state's consumer protection law.

17       **1.        Three Village CSD's New York General Business Law Claim Fails**

18       A claim under Sections 349 and 350 of New York General Business Law requires the

19  plaintiff to have suffered "actual damages" as a result of a deceptive practice, act or advertisement.

20  N.Y. Gen. Bus. §§ 349, 350; *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 524-25 (S.D.N.Y.

21  2003).  Plaintiff Three Village CSD's claims under these sections fail because New York courts

22  have long held that a plaintiff may not recover where, as here, its only damages are economic injuries

23  indirectly arising from consumer transactions with third parties.

24       *A.O. Fox Memorial Hospital* is on point and underscores why the Court must dismiss the

25  New York statutory claims.  There, various non-profit hospitals, as well as their trade association,

26  sued tobacco companies under Sections 349 and 350 to recover unreimbursed costs incurred

27  providing healthcare to tobacco users.  *A.O. Fox Mem'l Hosp. v. Am. Tobacco Co.*, 302 A.D.2d 413,

28  414 (N.Y. App. Div. 2003).  Plaintiffs claimed they had been harmed because the defendants had

1  deceived consumers by "systematically conspir[ing] . . . to fraudulently conceal the adverse health

2  consequences" of their products.  *Id.*  The trial court dismissed the claims on the pleadings, and the

3  Appellate Division affirmed, holding "the plaintiffs' purported economic injury is entirely

4  derivative of the tobacco-related harm suffered by the individual patients and therefore too remote

5  to permit recovery."  *Id.*

6       The Court of Appeals followed *A.O. Fox*'s holding the following year in in *Blue Cross &*

7  *Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, another highly instructive case.  There, an

8  insurance company sought damages from tobacco companies whose alleged deceptive practices

9  misled smokers, thereby increasing the smokers' medical costs, and, in turn, increasing the insurers'

10 costs.  3 N.Y.3d 200 (2004).  Even though the plaintiff had undeniably paid the smokers' medical

11 bills, and had thus been "injured," the court dismissed its claim under New York General Business

12 Law section 349 on the grounds that the plaintiffs' injuries were "too remote" and that plaintiffs had

13 not been "directly injured."  *Id.* at 207-08.  Agreeing with *A.O. Fox*, the Court held: "what is required

14 is that the party actually injured be the one to bring suit.  [Plaintiff] was not directly injured in this

15 sense." *Id.* at 208, n.3.

16      The court reached the same conclusion in *City of New York v. Smokes-Spirits.Com, Inc.*, 12

17 N.Y.3d 616, 621-24 (2009).  There, the City of New York alleged it had suffered lost tax revenue

18 because the defendant online cigarette retailer improperly advertised and sold cigarettes as "tax free"

19 to New York residents.  *Id.* at 620.  The Court of Appeals rejected the City's claim, finding it had

20 not suffered an "actual injury" under Section 349:  "Although in some sense the City's injuries are

21 'caused' by defendants' alleged conduct, this Court has required more than an allegation of 'but for'

22 cause to state a claim for relief under section 349 . . .  Since *Blue Cross,* it has been clear that

23 allegations of indirect or derivative injuries will not suffice."  *Id.* at 623.

24      These cases compel dismissal of Three Village CSD's claims.  Here, Three Village CSD

25 does not allege it was directly injured in a consumer transaction as a result of JLI's alleged

26 misconduct.  Rather, it alleges injury in the form of increased costs to address ENDS use, as a

27 downstream result of those consumer transactions by others.  ECF 543 ¶¶ 593-617.  Such an injury

28 does not constitute "actual damages" under Sections 349 and 350 because it is "indirect" and entirely

derivative of injuries suffered, if at all, by consumers who purchased JUUL products. Accordingly, Three Village CSD's statutory claims must be dismissed.

### 2. Broward SB's and Escambia SB's Florida Consumer Protection Claims Fail

The claims by Broward SB and Escambia SB under the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") similarly fail because these Plaintiffs do not—and cannot—allege cognizable damages under the FDUTPA.

Like its New York counterpart, the FDUTPA requires a plaintiff to have suffered "actual damages" as a result of the allegedly deceptive practice in the course of a consumer transaction. *Britt Green Trucking, Inc. v. FedEx Nat., LTL, Inc.*, 2014 WL 3417569, at *11 (M.D. Fla. July 14, 2014). Florida courts have long held that "actual damages" under FDUTPA "must *directly* flow from the alleged deceptive act or unfair practice," and do not consist of consequential damages arising from such acts. *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (emphasis added); *see also Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, 2020 WL 2494608, at *5 (S.D. Fla. May 14, 2020) ("Florida law is clear that consequential damages are barred under the statute."); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) ("For purposes of recovery under FDUTPA, 'actual damages' do not include consequential damages"). "Actual damages" under the FDUTPA are ordinarily limited to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)) (describing this measurement as being "well-defined in the case law").

Florida courts have repeatedly rejected claims for consequential damages under the FDUTPA. For example, in *Heller*, the plaintiffs sought to recover the value of items stolen in a burglary after the defendant's security system did not perform as represented. 454 So. 2d at 582. The Court of Appeal rejected the plaintiffs' consequential damages model and concluded instead that damages "should be computed based upon the alarm system and the services [the defendant]

agreed to provide, and not with regard to the value of the items stolen during the burglary." *Id*. at 586.

Similarly, in *Urling v. Helms Exterminators, Inc.*, plaintiffs sought to recover the cost of repairing termite damage to their home after relying on a false termite inspection certificate issued by the defendant. The Court of Appeal rejected plaintiffs' damages claim, finding the "cost of these repairs constitutes special or consequential damages which fall outside the statutory concept of actual damages as defined in [the FDUTPA]. . . . Since the Urlings are not seeking recovery of the cost of the erroneous termite certificate but, rather, seek consequential damages, they have no recoverable damages under the act." 468 So. 2d 451, 454 (Fla. Dist. Ct. App. 1985).

Here, the Plaintiff School Boards of Escambia County and Broward County do not allege they incurred any "actual damages" within the meaning of the FDUTPA: They do not allege they were party to *any* transaction by which they were harmed or seek to recover the difference in price between what they paid for JUUL products and what they received. Instead, as with the New York claims, these Plaintiffs seek to recover solely consequential damages they have allegedly incurred because *other* individuals were allegedly deceived into purchasing JUUL products. ECF 541 ¶¶ 593-607 (Escambia County Compl.); ECF 542 ¶¶ 597-620 (Broward County Compl.). These are textbook consequential damages. *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 7 (Fla. Dist. Ct. App. 2009) (the FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services.") (internal quotation marks and citations omitted); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017) (consequential damages under the FDUTPA "are those which do not necessarily result from the injury complained of or which the law does not imply as the result of that injury"); *cf. Keystone Airpark Auth. v. Pipeline Contractors, Inc.*, 266 So. 3d 1219, 1222–23 (Fla. Dist. Ct. App. 2019), *review denied*, 2019 WL 1371949 (Fla. Mar. 27, 2019) (describing consequential damages as those that "do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties"). As such, Plaintiffs' damages are not recoverable as "actual damages" under the

1  FDUTPA. *See Heller*, 454 So. 2d at 585.[59]  Because Florida law squarely forecloses recovery under

2  the FDUTPA for consequential damages, Escambia SB's and Broward SB's claims fail and must

3  be dismissed.

4         **F.**       **The Claims Fail Based on JLI's May 29, 2020 Motions**

5         JLI filed on May 29, 2020, a set of motions directed to claims in multiple complaints pending

6  in the MDL, including a representative government entity complaint, *Three Village CSD*.  One

7  motion specifically addressed RICO claims, ECF 628; another moved for a stay based on the FDA's

8  primary jurisdiction, ECF 626; and a third moved to dismiss claims as preempted by federal law,

9  ECF 627. The outcomes of those motions will apply to the bellwether government entity complaints,

10  and JLI incorporates those motions by reference.

11  **IV.**      **CONCLUSION**

12         The government entity complaints should be dismissed for failure to state a claim.

13  DATED:  June 22, 2020         Respectfully submitted,

14                        MUNGER, TOLLES & OLSON LLP

15                        KIRKLAND & ELLIS LLP

16

17                        By:    */s/ Gregory P. Stone*

18                            GREGORY P. STONE

19                        Attorneys for Defendant JUUL Labs, Inc.

20

21

22

23

24

25

26

27  [59] Furthermore, to the extent Plaintiffs seek to characterize their damages as damages to property, such damages are facially barred under the statute.  Fla. Stat. Ann. § 501.212(3) (FDUTPA "does

28  not apply to . . . a claim for damage to property other than the property that is the subject of the consumer transaction").