UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-3047-YGR<br><br>MDL No. 3047<br><br>**CASE MANAGEMENT ORDER NO. 12**<br><br>*Upcoming Case Management Conferences:*<br>April 19, 2024 at 9:30 a.m.<br>May 9, 2024 at 10:30 a.m.<br>June 21, 2024 at 2:00 p.m.<br>July 19, 2024 at 9:30 a.m. |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

The Court held a further case management conference in the above-captioned matter on March 22, 2024. This order memorializes and expands upon the deadlines set and findings made by the Court during that conference.

**I.     STATE ATTORNEYS GENERAL CLAIMS: RIGHT TO JURY TRIAL**

Previously, the Court ordered the parties to meet and confer as to their understanding of the Seventh Amendment right to a jury trial under *Tull v. United States*, 481 U.S. 412 (1987) and its applicability to the state attorneys general (the "State AGs") claims. (*See* Dkt. No. 646, Case Management Order No. 11 at 4–5.) After conferring, Meta and the State AGs notified the Court they agree "that *Tull* and its progeny cases control the question of whether either party is entitled to a jury trial in this federal action." (Dkt. No. 687, Agenda and Joint Statement for March 22, 2024 Case Management Conference at 4.)

The State AGs at the Case Management Conference indicated they believe that whether *Tull* applies to the consumer protection claims of the 35 states is a question of first impression. Further, on November 29, 2023, the Supreme Court heard argument on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023) (No. 22-859), which the parties contend bears on the applicability of the Seventh Amendment to the State AGs' claims, and request that the Court wait for the Supreme Court's ruling on *Jarkesy* prior to further briefing in this action. The Court agrees and **WITHDRAWS** its order that the parties create a chart identifying jury trial entitlement (or lack thereof) for each claim of relief and **HOLDS IN ABEYANCE** the issue of the

Seventh Amendment's applicability to the State AGs consumer protection claims.[1]

## II. DEFENDANT FACT SHEET DATA

Plaintiffs request that the Court prohibit, for the purposes of proposing cases for bellwether selection, defendants from considering certain information that will be provided in the Defendant Fact Sheets ("DFS") to which plaintiffs do not yet have access. (Dkt. No. 687 at 4–6.) Plaintiffs' request is **DENIED**. As the Court explained, at this early stage both plaintiffs and defendants each have unique information in their possession. Defendants may have account usage data that plaintiffs lack. However, counsel for plaintiffs have, for example, a sense of each plaintiff's ability to withstand cross-examination and their perceived credibility on the stand, key information which the defendants lack. Defendants also emphasize that plaintiffs agreed to the current expedited bellwether selection and discovery process. Asymmetric information is not surprising at this stage and, given comparable deficits between the parties, does not appear fundamentally unfair.

## III. BELLWETHER ELIGIBILITY CRITERIA

The parties request two changes to the bellwether eligibility criteria, which the Court modified previously in Case Management Order No. 11. (*See* Dkt. No. 646 at 4.) First, the parties request, and the Court agrees, to add "suicidality (or suicidal ideation)" to the criteria's definition of self-harm. (Dkt. No. 687 at 6–7.) Second, Meta requests that the eligibility criteria be modified to remove the requirement that Meta be named as a defendant. The Court grants Meta's request but emphasizes again that if defendants propose a non-Meta case for bellwether selection where roughly 95% of cases name Meta as a defendant, defendants must present a highly compelling argument to why that case would be productive to facilitating resolution of this multi-district litigation ("MDL"). These bellwether eligibility criteria are a useful framing device for teeing-up bellwether selection proposals but do not dictate selection outcomes.

Consistent with the above, the selection criteria are **MODIFIED** to the following:

---

[1] As such, the State AGs motion seeking an extension to submit the jury entitlement chart is **DENIED** as moot. (Dkt. No. 684.)

> Any Personal Injury Plaintiff who 1) alleges a) an eating disorder (anorexia, bulimia, or binge eating disorder), b) body dysmorphia, c) sleeping disorder(s), and/or d) self-harm (self-harm, suicidality (or suicidal ideation), suicide attempt(s), or suicide); and 2) whose case was filed in or transferred to this Court and who has submitted a Plaintiff Fact Sheet (PFS) by the deadline for already-filed cases under the Personal Injury PFS Implementation Order will be included in the Personal Injury Plaintiff Bellwether Selection Pool.
>
> Any School District Plaintiff, excluding those alleging RICO claims, whose case was filed in or transferred to this Court and who has submitted a School District Plaintiff Fact Sheet by the deadline for already-filed cases under the Personal Injury PFS Implementation Order will be included in the School District Plaintiff Bellwether Selection Pool.

### IV.   *LEXECON* OBJECTIONS

The parties ask that the Court clarify what happens for bellwether selection in the event that a *Lexecon* objection is sustained. The Court **ADOPTS** the parties' suggested process, as follows:

> Any Plaintiff selected by the Parties by April 15th for the Bellwether Discovery Pools who wishes to assert a *Lexecon* objection to their case being tried by the Court must file an objection in writing by April 25. If the Court selects additional Plaintiffs for the Bellwether Discovery Pools, any Plaintiff so selected who wishes to assert a *Lexecon* objection to their case being tried by the Court must file an objection in writing seven (7) days after being selected by the Court. If no objection is filed by the relevant deadline, a Plaintiff will be deemed to have waived any rights under *Lexecon* and to have agreed to have their case tried by this Court. Likewise, Defendants must file any *Lexecon* objection(s) in writing with the Court by the same deadlines, respectively, or be deemed to have waived any rights.
>
> If an objection is asserted and counsel dispute that the objecting party has a right to assert an objection under *Lexecon*, the Parties will immediately present the issue to the Court for resolution. If the Parties do not dispute the objection or if the Court sustains the *Lexecon* objection, then the claim will be deemed removed from the respective Bellwether Discovery Pool. In that event, if the Plaintiff was a pick by one of the two sides, the side that made the pick will have three (3) business days to select a replacement case of the same type as the case in which the objection was served (i.e., personal injury case or school district/governmental entity case); if the Plaintiff was selected by the Court, the Court will select another case of the same type as the case in which the objection was served (i.e., PI or SD/LG case). *Lexecon* objections other than those for claims selected for trial in this Court under the bellwether protocol are preserved. Thus, if a claim in the respective Bellwether Discovery Pool is not selected for trial, then the Court will restore the rights of the Plaintiff and Defendants in that claim to object to venue and jurisdiction in the Northern District of California for purposes of trial.

3

## V. MULTI-PLAINTIFF TRANSFERRED SCHOOL DISTRICT CASES

The Court queried the parties on whether transferred school district cases need to file individual Short-Form Complaints ("SFCs") as required by the Direct Filing Order (Dkt. No. 119, Case Management Order No. 4), which does not apply to transferred cases. The parties agreed that transferred plaintiffs must each file an SFC.

## VI. *MONTANA V. META PLATFORMS, INC., ET AL.*

On February 9, 2024, the Judicial Panel on Multidistrict Litigation transferred the state of Montana's action against defendants into this MDL. (Dkt. No. 605)[2] The current motion to dismiss briefing on the multistate State AGs complaint does not encompass Montana's claims. Counsel for Montana attested that Montana's complaint will likely present unique legal issues that require treatment separate from the multistate State AGs complaint (*e.g.*, alleged misrepresentations about the availability of mature content on Instagram). In similar situations, the Court has issued an Order to Show Cause why the Court's future order on the motion to dismiss the multistate AGs complaint should not apply to Montana's claims. For now, the parties agreed that the most prudent course is to wait for the Court's ruling on the motion to dismiss the multistate State AGs complaint, at which point the parties will be better able to assess appropriate next steps.

## VII. ADMINISTRATIVE MOTIONS

The State Attorneys General filed a motion for leave to file annotated copies of the state-law appendices included in defendant Meta's Reply in Support of its Motion to Dismiss the State Attorneys General Complaint. (Dkt. No. 701.) The motion is **GRANTED**.

The parties stipulated to re-filing the Master Complaint (Local Government and School District) to correct a typographical "misnomer" of one defendant's name (*i.e.*, substituting "TikTok Pte. Ltd." for "TikTok Ltd."). (Dkt. No. 678.) The stipulation and proposed order is **GRANTED**.

---

[2] *See Montana v. Meta Platforms, Inc.*, No. 23-cv-00145 (D. Mont.); *Montana v. Meta Platforms, Inc.*, No. 24-cv-00805 (N.D. Cal.).

4

The parties filed a stipulated proposed implementation order governing the School District Plaintiff Fact Sheet ("PFS") and School District PFS – Supplemental.  (Dkt. No. 675.)  Pursuant to questions from the Court and corresponding revisions, the parties re-filed the stipulated proposed implementation order and PFS (Dkt. No. 709), which inadvertently failed to enclose the Supplemental PFS.  The parties, as requested and the Court granted, refiled the proposed stipulated implementation order (Dkt. No. 715), which is **GRANTED**.  Docket Nos. 675 and 709 are **TERMINATED** as moot and superseded.

The parties filed a joint stipulation regarding joint filings which requires that joint filings be submitted to the Court no later than 4:00 p.m. Pacific Time.  (Dkt. No. 687-2.)  The stipulation is **GRANTED**.

## VIII.  SCHEDULING UPDATES

On Friday, May 10, 2024, there is a Case Management Conference scheduled for 9:30 a.m. and a Discovery Management Conference scheduled for 2:00 p.m.  The Court **ADVANCES** the Case Management Conference to Thursday, May 9, 2024, at 10:30 a.m.  Further, given the Court's trial schedule, the conference on June 21, 2024 is hereby **SET** for 2:00 p.m.

The Court further **SETS** arguments for hearing in the upcoming Case Management Conferences, as discussed:

- **April 19, 2024, Case Management Conference:**
    - Meta's motion to dismiss the multistate State AGs complaint, the Florida AG's complaint, and the personal injury consumer protection and misrepresentation claims (Track 1, Dkt. No. 517);
    - The selection of bellwether discovery pools, pursuant to Case Management Order No. 10 (Dkt. No. 604); and
    - The motion to remand in *Youngers v. Meta Platforms, Inc.*, No. 22-md-03047 (N.D. Cal. Feb. 15, 2024) (Dkt. No. 64).
- **May 9, 2024, Case Management Conference:**
    - Defendants' joint motion to dismiss the school district and local government entities master complaint (Track 3, Dkt. No. 601).

- **June 21, 2024, Case Management Conference:**
  - Defendants' joint motion to dismiss plaintiff' non-priority claims (Counts 5, 12, 14, 16–18) (Track 2, Dkt. No. 516); and
  - Snap Inc.'s motion to dismiss Counts 12 and 14 asserted in plaintiffs D.H., K.S., and Alice Doe's amended SFCs (Dkt. No. 533).

Should the Court be prepared to hear argument on the motion to dismiss the school district and local government entity master complaint at the April 19, 2024, case management conference, it will advise the parties by April 12, 2024.  Otherwise, the Court SETS argument on that motion to dismiss for May 9, 2024.

This terminates Dkt. Nos. 675, 678, 684, 701, 709, and 715.

**IT IS SO ORDERED.**

Dated: March 27, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**