**Exhibit 8**

**Georgia Attorney General's ("AG") Position:** The AG is "the legal advisor of the executive department," Ga. Const. Art. V, § III, Para. IV, and represents state agencies in court. *See* O.C.G.A. §§ 45-15-3, 45-15-34. However, other than law enforcement subpoenas under O.C.G.A. § 45-15-17(b) (inapplicable here), the Open Records Act ("ORA"), O.C.G.A. § 50-18-70 *et seq.* is what the AG—like any member of the public—must use to compel an agency to produce documents. *See, e.g., Bowers v. Bd. of Regents*, 259 Ga. 221, 221 (1989). The ORA has many exemptions and the requestor must reimburse the agency's costs.

Thus, the AG has no "legal right" to obtain documents from agencies upon demand for this case. The State of Georgia is not a monolithic, centrally controlled government entity; rather, the "State" is comprised of its residents. *See Perdue v. Baker*, 277 Ga. 1, 6 (2003). Under the Code, the "State" is a separate concept from the Governor, departments of the State, and the executive branch. *See* Ga. Const. Art. V, § III, Para. IV; O.C.G.A. §§ 45-15-3, 45-15-34. As for governance at the state executive level, there are various constitutionally created state officials whom Georgia residents separately elect and endow with distinct responsibilities. *See id*. The AG and the State School Superintendent (head of the Department of Education) are constitutional officers and separately elected in statewide elections. Ga. Const. Art. V, § III, Para. IV; *id.* Art. V, § III, Para. I. The Governor is also separately elected, *id.* Art. V, § I, Para. II, and as part of his duties appoints the heads of various other executive and non-executive bodies. For example, the Constitution created the Board of Regents outside the executive branch; the Board's members are appointed by the Governor and confirmed by the State Senate. *Id.* Art. VIII, § IV, Para. I. The Governor appoints the Child Advocate, who is organized as part of the state *court* system and acts "independently of any state official, department, or agency[.]" O.C.G.A. § 15-11-742. The remaining agencies that Meta lists are led by commissioners appointed by either the Governor or by a board appointed by the Governor and confirmed by the State Senate. *Id.* §§ 37-1-3, 37-1-4 (Dep't of Behavioral Health and Developmental Disabilities); *id.* §§ 49-2-1, 49-2-2 (Dep't of Human Services, including the Dep't of Family and Children's Services); *id.* §§ 31-2A-1, 31-2A-2 (Dep't of Public Health); *id.* §§ 50-7-2, 50-7-3 (Dep't of Economic Development).

The above elected officials—including the Governor and the AG—can have different interests and litigate against each other. *See, e.g., Perdue,* 277 Ga. at 6 (holding that Governor's authority to direct AG is restricted and he could not direct AG to dismiss an appeal filed independently by AG on behalf of the State involving legislative reapportionment under the Voting Rights Act); *Bowers*, 259 Ga. at 221. The AG and the Governor both possess "statutory authority to direct litigation on behalf of the State of Georgia." *Perdue*, 277 Ga. at 4. The AG's distinct tripartite duties include representing state agencies, acting upon direction from the Governor, and performing independent AG duties required by law. *See* Ga. Const. Art. V, § III, Para. IV. Here, the AG alone brought this action under the Fair Business Practices Act, O.C.G.A. §§ 10-1-390 *et seq.*, as required by law and outside the scope of any agency representation or direction from the Governor. Any access to documents possible from agency representation or Governor direction does not extend to this case.

Related to this litigation, communications between the AG's Consumer Protection Division (the prosecution team in this case) and state agencies generally would not be protected by attorney-client privilege, though other privileges may apply (*e.g.*, work product, common interest). Communications between agencies and other AG divisions generally would be privileged if they constitute providing legal advice to the agency or representing the agency in litigation.

1

**Meta's Position:**  The Georgia agencies that Meta has identified—Board of Regents; Department of Behavioral Health and Developmental Disabilities; Department of Economic Development; Department of Education; Department of Family and Children Services; Department of Human Services; Department of Public Health; Governor's Office; and Office of the Child Advocate—are subject to discovery as a matter of state and Ninth Circuit law.  The Georgia constitution provides that "[t]he Attorney General shall act as the legal advisor of the executive department."  Ga. Const. art. V, § 3, ¶ IV.  Further, "[i]t is the duty of the Attorney General . . . [t]o represent the state in all civil actions tried in any court."  Ga. Code Ann. § 45-15-3.  And "[t]he Department of Law is vested with complete and exclusive authority and jurisdiction in all matters of law relating to the executive branch of the government and every . . . agency thereof."  *Id.* § 45-15-34.  By statute, these agencies are "prohibited from employing counsel in any manner whatsoever."  *Id.*; *see also id.* §§ 45-15-13 to -14 (Georgia Education Authority requires "approval of the Attorney General to employ other counsel in any matter whatsoever").  No statute deprives the Attorney General of access to agency documents.  And nothing in Georgia's Open Records Act ("ORA") suggests that the AG must use the act to compel records from state agencies.  Rather, as the States' own case makes clear, the ORA only governs the circumstances under which "records must be produced for ***public inspection***."  *Bowers*, 259 Ga. at 221 (1989).

Because the Georgia AG is "vested with complete and exclusive authority" to represent executive agencies, they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[1]  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).  By contrast, courts have rejected the argument Georgia makes here regarding speculative conflicts of interest.  *In re Generic Pharms. Pricing Litig.*, 2023 WL 6985587, at *2 (rejecting "arguments regarding a possible conflict between the AGO and the governor" because "state agencies 'undoubtedly hold many relevant documents and state to benefit from the Attorney General's success" (citation omitted)).

---

[1] Georgia admits that it intends to assert that certain communications between the Attorney General's office and the relevant agencies are privileged.  Georgia cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

2