**Exhibit 11**

**Illinois Attorney General's Position**: Illinois's constitutional structure prevents the Court from aggregating State agencies as parties or treating them as such for purposes of discovery. The AG and the Governor are independently elected by the State's voters; they serve in different roles, enjoy unique rights and responsibilities, and have control over separate governmental functions. *See* Ill. Const. art. V, §§ 1, 2. The AG is the chief "legal officer of the State," while the Governor has "the supreme executive power." *Id*. §§ 8, 15. With very few exceptions, all State agencies are "directly responsible to the Governor." 15 ILCS 15/3.1. While the AG has broad statutory and common law powers to conduct litigation on behalf of State agencies, there is no law that gives the AG control over their executive functions or the type of unfettered access to agency files, including those possessed by Office of the Governor, necessary to respond to Meta's requests. In fact, State agencies may be expressly prohibited from providing certain types of information to anyone, even other agencies. *See, e.g.*, 20 ILCS 2305/2.1(c); 410 ILCS 305/9(2). Restrictions of this sort are best understood and handled by each State agency.

The AG does not "control" the documents of independent state agencies as the term "control" is used in *Citric*, except in limited exceptions not applicable here. *Cf. Strawbridge v. State, Dep't of Law Enforcement*, 388 N.E.2d 203, 205 (Ill. App. 1979) (holding that AG's stipulation on behalf of State agency he represented was not binding on any other agency). The AG is unaware of any state court precedent directly addressing this issue, but one federal court has. *See People ex rel. Raoul v. Monsanto Co.*, 2023 U.S. Dist. LEXIS 106151 (N.D. Ill. June 20, 2023). In *Monsanto*, the court generally agreed that a defendant sued by the AG "must use third-party discovery tools" when seeking documents from State agencies. *Id*. at *20. However, the court created an exception to this general rule based upon the "specific circumstances" of the *Monsanto* litigation and "principles of fundamental fairness" *Id*. at *14, *11. While the AG disagrees with certain aspects of the ruling, this Court need not address those disputes as the *Monsanto* court's reasoning fully supports the AG's position here. The court in *Monsanto* found that the AG can be said to "control" the documents of a specific agency—under a standard identical to *Citric*—where: 1) the suit is a "joint effort" and specific agencies are "expressly referenced" in the complaint; 2) the identified agencies "supplied the information necessary for the [AG] to prepare his complaint;" and 3) the AG seeks "damages for expenses incurred by state agencies." *Id*. at *14-18. Further, in *Monsanto* the AG was acting in its common law *parens patriae* authority as opposed to its statutory role to "investigate alleged violations of the statutes which the Attorney General has a duty to enforce." 15 ILCS 205/4. None of these factors apply in the instant litigation where the AG has brought suit in his role as enforcer of the Illinois Consumer Fraud Act, has acted independently from any State agencies, and does not seek damages for expenses incurred by State agencies.

Where, as here, the AG is acting in its role as enforcer few, if any, pre-suit communications between the AG and State agencies would be subject to privilege claims. However, as the chief legal officer of the State, the AG also acts as "legal adviser to and legal representative of State agencies" such that an "attorney-client relationship exists between a State agency and the Attorney General." *Envtl. Prot. Agency v. Pollution Control Bd.*, 69 Ill. 2d 394, 399, 401 (1977). As such, any past or future communications responsive to Meta's requests that fall within the representational attorney-client paradigm would be privileged.

**Meta's Position:**  The Illinois agencies that Meta has identified—Board of Education; Board of Higher Education; Department of Children and Family Services; Department of Commerce and Economic Opportunity; Department of Human Services; Department of Public Health; and Office of the Governor—are subject to discovery as a matter of state and Ninth Circuit law.  The Illinois Constitution provides that "[t]he Attorney General shall be the legal officer of the State."  Ill. Const. Art. V, § 15.  Courts interpret this provision to "*require[]* the Attorney General to represent the State, and this duty extends to the representation of State agencies."  *People ex rel. Sklodowski v. State*, 642 N.E.2d 1180, 1184 (Ill. 1994) (emphasis added); *see also E.P.A. v. Pollution Control Bd.*, 372 N.E.2d 50, 51 (Ill. 1977) ("As the chief legal officer of the State, the Attorney General has the constitutional duty of acting as legal adviser to and legal representative of State agencies.").  Further, "[o]ne of [the Attorney General's] common-law duties is to act as the sole official adviser of the executive officers, and of all boards, commissions and departments of the state government."  *Bd. of Ed., Sch. Dist. No. 142, Cook Cnty. v. Bakalis*, 299 N.E.2d 737, 748 (1973).  As Illinois admits, "the AG has broad statutory and common law powers to conduct litigation on behalf of State agencies."  No statute deprives the AG of access to agency documents.  That Illinois law limits information sharing regarding possible public health emergencies and HIV records has no bearing here.  *See* 20 ILCS 2305/2.1(c); 410 ILCS 305/9(2).

Because the Illinois AG's "duty extends to the representation of State agencies," they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[1]  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).

In *Raoul*, the court determined that there would be "no constitutional problem" with holding that the AG controls documents of other Illinois agencies, rejecting the argument the State makes here.  2023 WL 4083934, at *3 ("[T]here is zero Illinois caselaw stating that non-party state agencies cannot be subject to party discovery brought by the Illinois Attorney General under its *parens patriae* authority.").  And while the State seeks to distinguish *Raoul* on the ground that the AG was acting in their "*parens patriae* authority," COPPA claims are, by definition, brought in *parens patriae*.  15 U.S.C. § 6504(a)(1).

---

[1] Illinois admits that it intends to assert that certain communications between the Attorney General's office and the relevant agencies are privileged.  Illinois cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

2