**Exhibit 17**

**Office of the Attorney General of Maryland's (OAG) Position**: Meta's contention that a Complaint filed by the OAG somehow equates to a suit being brought by the entire State of Maryland – and therefore the documents of any other state agency should be accessible to the OAG – is belied by the reality of Maryland state government. The Attorney General and the Governor are separate constitutional officers. *See* MD CONST. arts. II, V. Further, the Attorney General has no control over the state agencies previously identified by Meta, as typically, Maryland state agencies are part of the Executive Department and they report to the Governor. Moreover, in the instant matter, the OAG brought only a COPPA claim,[1] a statute which the Attorney General is specifically charged with enforcing. While there are attorneys in the OAG who are specifically hired to provide legal representation for particular agencies, those agencies are clients only.

To obtain documents from the identified state agencies, the OAG would need to request the documents through the same means that are available to Meta – either through a request under Maryland's Public Information Act, Md. Code Ann., Gen. Prov. §§ 4-101 through 4-601, or by requesting issuance of a court subpoena directed to the agencies. *Cf. U.S. v. Am. Express Co.,* 2011 WL 13073683, *3 (E.D.N.Y. July 29, 2011) (finding that the Attorneys General were independent entities from non-party state agencies and that they could not compel documents from those agencies). There is no statute which authorizes the OAG to obtain documents from the Governor or other Executive agencies.

Although the OAG can *request* documents from the identified agencies, this does not amount to control over the documents maintained by the state agencies previously identified by Meta because the OAG does not have a generalized "legal right to obtain documents upon demand" from those agencies. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

Whether the OAG will assert that a privilege applies to a communication between an OAG attorney and an agency identified by Meta will depend on the nature of the communications. For example, for those agencies which have OAG attorneys as counsel, the attorney-client privilege and/or work-product privilege would apply to communications between the attorneys representing the agency[2] and the agency. Separately, the common interest privilege likely is to apply to certain inter-agency communications, including those with the OAG. *See, e.g., Gallagher v. Office of the Attorney Gen.*, 141 Md. App. 664, 676 ("It is uniformly held that under the common interest rule, parties with shared interests in actual or pending litigation against a common adversary may share privileged information without waiving their right to assert the privilege."). However, the applicability of any of these or any other privilege to particular communications will be dictated by the nature of those communications and cannot be pre-determined *en masse*.

---

[1] In prior briefing before this Court, Meta pointed to state consumer protection claims as a reason why third-party state agencies should be deemed parties for purposes of litigation. Without addressing the merits of this argument, the OAG notes that such argument has no relevance to the claims brought by the OAG in this matter, since the OAG has alleged only COPPA claims against Meta and has brought this action as the Attorney General, not the State of Maryland.

[2] The OAG attorneys that are counsel to independent state agencies are distinct from the OAG attorneys who are working on the instant matter. The OAG attorneys comprising the enforcement team do not have an attorney-client relationship with any independent state agencies.

1

**Meta's Position:** The Maryland agencies that Meta has identified—Center for School Safety, Department of Budget and Management, Department of Commerce, Department of Health, Department of Human Services, Governor's Office, Higher Education Commission, and State Department of Education—are subject to discovery as a matter of state and Ninth Circuit law. "[T]he Attorney General has general charge of the legal business of the State" and must "represent and otherwise perform all of the legal work for each officer and unit of the State government." Md. Code Ann., State Gov't § 6-106(a)–(b); *see also, e.g., id.*, Health-Gen. § 2-107 ("The Attorney General is legal adviser to the Department [of Health]."); *id.*, Econ. Dev. § 2-116 (same as to Department of Commerce); *id.*, State Fin. & Proc. § 3-206 (same as to Department of Budget and Management); *id.* Human Serv. § 2-208 (same as to Department of Human Services). Apart from exceptions not relevant here, no "officer or unit of the State government" may retain "counsel other than the Attorney General" without the AG's approval. *Id.*, State Gov't § 6-106(c); *see also* Md. Const. art. 5 § 3(d) ("The Governor may not employ additional counsel [other than the AG], in any case whatever, unless authorized by the General Assembly."); *Duckworth v. Deane*, 903 A.2d 883, 890–91 (Md. 2006) (rejecting officer's "attempts to circumvent the legal requirement of representation by the Attorney General" in litigation related to official duties). No statute deprives the AG of access to agency documents.

Because the AG must "perform all of the legal work" for the agencies at issue they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[3] *See, e.g., Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).[4]

That Maryland asserts only a COPPA claim does not warrant a different outcome. COPPA claims may only be brought by "the State[s], as *parens patriae* . . . on behalf of the[ir] residents," 15 U.S.C. § 6504, and as the Western District of Washington has held, where the AG "has explicitly brought this case as *parens patriae* on behalf of the State," the State AG "should respond to and produce discovery on behalf of the State . . . , including its agencies." *Washington v. GEO Group*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018).

---

[3] Maryland admits that it intends to assert that certain communications between the Attorney General's office and the relevant agencies are privileged. Maryland cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

[4] The State's reliance on *American Express Co.* is unavailing. In that case, the Eastern District of New York did not apply the Ninth Circuit's legal right test at all, instead asking whether the agency and attorney general were subject to "common executive control." 2011 WL 13073683 at *1. Further, the *American Express* court did not conduct a state-by-state analysis of statutory provisions like those cited here.