**Exhibit 19**

**Minnesota Attorney General's ("AG") Position:  The AG does not have access to agency documents because of Minnesota's constitutional structure.**  Minnesota's Governor and AG operate as independent elected officials under the state constitution.  Minn. Const. Art. V, § 1.  Only the Governor can compel agencies to act—including searching for and producing documents in their possession, custody, or control—because the Governor, *not the AG*, has the authority to appoint agency commissioners who serve at the Governor's pleasure.  *See* Minn. Stat. § 15.06, subd. 2; *see also* Minn. Stat. §§ 45.012 (Commerce)); 144.011 (Health); 245.03 (Human Services); 127A.05 (Education); 116J.01 (Employment and Economic Development); 136A.01 (Higher Education); 16A.01 (Management and Budget). In contrast, the AG, *not the Governor nor his commissioners*, has the exclusive authority to determine what litigation to pursue on behalf of the public interest. *State ex rel. Peterson v. City of Fraser*, 254 N.W. 776, 778 (Minn. 1934) (the AG's discretion to institute litigation "is beyond the control of any other officer or department of the state"). Here, the AG initiated this action on his own authority (not on behalf of any agency) and does not have legal authority to access agency documents on demand. Requiring the AG to produce agency documents would upend the constitutional division of powers because the Governor would be able to impermissibly control the AG's litigation by, for example, instructing agencies to refuse to produce documents. Importantly, Meta ignores that Minnesota agencies are permitted *but not required* to utilize the AGO for legal services and often receive legal advice and representation from internal counsel employed by the agency itself. Minn. Stat. § 8.15, subd. 3. Even if a separate (and walled-off) division of the AGO acted as counsel for a state agency, the AG still does not have authority over that agency and does not have control over their documents much like Meta's attorneys do not control Meta's documents.

**There is no Minnesota law that grants the AG blanket authority to obtain agency documents upon demand as required by *In re Citric Acid Litig*.**  Minnesota law is clear that each agency has control over its own data.  *See* Minn. Stat. § 15.17.  Contrary to Meta's assertions, the AG may not obtain not-public data of agencies unless specifically authorized to do so by statute or federal law.  *See* Minn. Stat. § 13.05, subd. 9.  Here, no such specific statute or federal law exists.  Accordingly, if the AG seeks information from agencies in this litigation it can request public data—just like Meta or any other member of the public—or the AG will be required (just like Meta) to issue subpoenas in accordance with Fed. R. Civ. P. 45 to obtain not-public data. *See, e.g., State v. Juul Labs, Inc.*, Court File No. 27-cv-19-19888, 2022 WL 19692975 at *8 (Minn. Dist. Ct. Aug. 8, 2022) (recognizing both AG and Defendant appropriately subpoenaed information from two agencies relevant to consumer protection litigation pursuant to Rule 45). For these reasons, Meta's reliance on *In re Generic Pharms.* is misplaced as there is no law granting the AG unfettered access to agency documents upon demand.

**Whether the consumer protection enforcement section of the AGO ("CP Section") will assert privileges is fact dependent**. The CP Section (which is prosecuting this action pursuant to the AG's *parens patriae* and statutory power) does not represent the agencies identified by Meta. Accordingly, the CP Section will not assert attorney client privilege over pre-suit communications between itself and these agencies. The CP Section, however, reserves the right to assert other privileges or protections, such as common interest, depending on the documents at issue. *Energy Policy Advocates v. Ellison*, 980 N.W.2d 146, 152-55 (Minn. 2022). To the extent a separate AGO division (walled-off from the CP Section) may be engaged by an agency to provide legal services, communications between the agency and that separate AGO division would likely be privileged.

1

**Meta's Position:** The Minnesota agencies that Meta has identified—Department of Commerce, Department of Health, Department of Human Services, Education Department, Employment and Economic Development Department, Governor's Office, Office of Higher Education, and Department of Management and Budget—are subject to discovery as a matter of state and Ninth Circuit law. The AG "shall act as the attorney for all state officers and all boards or commissions created by law in all matters pertaining to their official duties." Minn. Stat. Ann. § 8.06. The AG is to "perform[] exclusively" all "legal business of the state," with "no additional counsel [to] be employed." *Id.*; *see also id.* (permitting the governor to "employ counsel" only if the AG is "interested adversely"); *Elim Homes, Inc. v. Minn. Dep't Hum. Servs.*, 575 N.W.2d 845, 849 (Minn. Ct. App. 1998) (AG is "responsible for representing state agencies"); *Sleepy Eye Care Ctr. v. Comm'r of Hum. Servs.*, 572 N.W.2d 766, 772 (Minn. Ct. App. 1998) ("Only when it is 'necessary' may the attorney general authorize an agency to hire outside counsel . . . , and then only with the written consent of the governor and chief justice."); *Humphrey v. Shumaker*, 524 N.W.2d 303, 305 (Minn. Ct. App. 1994) (AG "ordinarily represents the state and its officers, boards, and commissions").[1] No statute deprives the AG of access to agency documents.[2]

Because the AG is "responsible for representing [Minnesota] agencies," they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[3] *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).

*Juul* concerned a motion for reimbursement of costs, not whether the AG exercised control over state agency documents (an issue the court was not asked to decide). And courts have rejected the arguments Minnesota makes here. *In re Generic Pharms. Pricing Antitrust Litig.*, 2023 WL 6985587, at *4 (E.D. Pa. Oct. 20, 2023) (that each agency "is responsible for its own records" has no bearing on "ability of the AGO to obtain documents after instituting a suit"); *Ill. ex rel. Raoul v. Monsanto Co.*, 2023 WL 4083934, at *3 (N.D. Ill. June 20, 2023) (rejecting "'virtual veto' concern" as "speculative," "conclusory," and "unpersuasive").

---

[1] Section 8.15 concerns the AG's discretionary authority to enter into supplemental fee agreements to provide legal services to state agencies, and does not negate the AG's exclusive responsibility to provide legal services to state agencies.

[2] The Minnesota Government Data Practices Act ("GDPA") is not otherwise. Government data are presumed public, and the discoverability of any data deemed otherwise can be handled in accordance with standard procedures, *See* Minn. Stat. Ann. §§ 13.01, .03(1), (6).

[3] Minnesota admits that it will likely assert that certain communications between the Attorney General's office and the relevant agencies are privileged. Minnesota cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.