**Exhibit 23**

**New Jersey Attorney General's Position:** The NJ Attorney General ("AG") does not have access to or control of documents maintained by the agencies in Meta's March 11, 2024 list because they are not organized within the Department of Law and Public Safety ("LPS"). Longstanding AG guidance, statutes, and case law establish that these executive branch agencies are "clients" of the AG, whose representation is governed—like other attorney-client relationships—by the NJ Rules of Professional Conduct ("RPC"). Under N.J. Stat. Ann. §§ 52:17A-4(e) and 52:17B-2, the AG is appointed by the Governor and provides legal representation through the Division of Law ("DOL") to the Office of the Governor and NJ's state departments, boards, and agencies. Only the agencies expressly organized under LPS, *see* https://www.njoag.gov/about/divisions-and-offices/, fall under the AG's administrative control and oversight. All other State agencies, including those identified by Meta, report to the Governor. *See* N.J.S.A. § 52:14B-30; *Gen. Assemb. of New Jersey v. Byrne*, 448 A.2d 438, 447 (1982). The AG is "the sole legal adviser, attorney or counsel" for NJ's agencies, N.J. Stat. Ann. § 52:17A-4(e), and has "the exclusive power to control all litigation to which the state is a party," *see Perillo v. Dreher*, 314 A.2d 74, 79 (App. Div. 1974); N.J. Stat. Ann. § 52:17A-4(e), but this authority speaks to *legal representation* of non-LPS agencies, and does not mean he has generalized control over documents generated by those agencies.

NJ's state government is "so varied, so multifaceted, so extensive that to regard it as one unitary monolithic employer/client is unrealistic." *In re Advisory Comm. On Prof'l Ethics Op. 621*, 620 A.2d 880, 890 (1992). NJ's agencies "do not necessarily share confidential information as part of their day-to-day operations, engage in the same functions, or have the same management teams." *See* May 15, 2019 Letter from AG Grewal, *available at* https://www.nj.gov/oag/law/pdf/2019-0515_Conflicts-Letter.pdf. "[A]n attorney who represents a public body has the same obligation as any other attorney to comply with RPCs regarding conflicts of interest," which cannot be waived, and must ask "which government entity qualifies as the 'represented' client." *Id.*; *Nieves v. Adolf*, 230 A.3d 227, 234 n.1 (App. Div. 2020) (noting that state agencies may be adverse to one another yet represented by state attorneys). If the AG had unfettered access to records of every agency merely because he is authorized to represent them, then non-LPS agencies' records laws would have no meaning. N.J. Stat. Ann. § 9:6-8.10a (safeguarding child protection investigatory records). Thus, basic attorney ethics and statutory authority necessitate and establish that the AG's "control of litigation" does not mean possession, custody, and control of documents belonging to all clients, at all times.

For these reasons, under *In re Citric Acid Litig.,* 191 F.3d 1090 (9th Cir. 1999*)*, the AG does not have control of documents held by state agencies that are not parties to this lawsuit—unlike the Division of Consumer Affairs within LPS. Rather, while the AG—*as a party* to this lawsuit that is authorized to enforce the relevant law—may request documents from non-LPS agencies, these agencies have no legal duty to respond and can refuse to produce documents under a Rule 34 RFP as they are not the party in interest and not named in the suit. *In re Citric Acid Litig.,* 191 F.3d at 1107-08. Meta does not cite any NJ authority to the contrary, *see* ECF 685, and what non-binding law it does cite is contradicted by both AG guidance and NJ precedent. Last, even if records were properly requested, communications between the AG and non-LPS agencies require review by the DOL attorneys assigned to counsel those agencies to assess whether any privileges apply. *See, e.g.*, *Paff v. Div. of Law*, 988 A.2d 1239, 1245 (App. Div. 2010) ("[It is] well-settled that there exists an attorney-client relationship between the Division [of Law] and the state agencies to which it provides legal advice[.]")

1

**Meta's Position:** The New Jersey agencies that Meta has identified—Department of Children & Families, Department of Education, Department of Health, Department of Human Services, Department of the Treasury, Economic Development Authority, Governor's Counsel on Mental Health Stigma, Office of the Governor, and Office of the Secretary of Higher Education—are subject to discovery as a matter of state and Ninth Circuit law. The AG "shall exclusively attend to and control all litigation and controversies." N.J. Stat. Ann. § 52:17A-4(c). The AG is "the sole legal adviser, attorney or counsel . . . for all officers [and agencies]," and must represent them "in all proceedings or actions." *Id.* § 52:17A-4(e); *see also Digital First Media v. Ewing Twp.*, 226 A.3d 1214, 1217 (N.J. App. Div. 2020) (AG's "responsibilities include representation of State agencies."). The AG must "[a]ttend generally to all legal matters in which the State or any officer . . . or instrumentality" may be involved. N.J. Stat. Ann. § 52:17A-4(g). "No special counsel shall be employed . . . for or by any officer, department, board, body, commission or instrumentality of the State Government except by authority of the Attorney-General, and then only with the approval of the Governor." *Id.* § 52:17A-13. ***Indeed, the AG has acknowledged that it will represent all but two of the identified agencies, both of which it has represented in litigation.*** *See* Ex. 1, at 19–20; *N.J. All. for Fiscal Integrity, LLC v. N.J. Sports & Expo. Auth.*, 2016 WL 5759377 (N.J. Super. Ct. App. Div. Oct. 3, 2016) (NJEDA); *In re Plan for Abolition of Council on Affordable Hous.*, 214 N.J. 444 (2013) (Governor). No statute deprives the AG of access to agency documents. To the extent relevant (as the State AGs have previously argued, *see* ECF 685, at 9), the AG is a member of the executive branch appointed by the governor. *See* N.J. Const. art. 4, § 4, ¶ 3. Suggestions that state departments may theoretically come into conflict with one another do not minimize the AG's clear statutory obligations to render legal services to the agencies identified by Meta. *See In re Generic Pharms. Pricing Antitrust Litig*, 2023 WL 6985587, at *2 (E.D. Pa. Oct. 20, 2023) ("[g]eneral arguments regarding a possible conflict" do not bar finding that AG exercises control over agency documents, as "state agencies 'undoubtedly hold many relevant documents and stand to benefit from the Attorney General's success in the case'").

As the AG has "sole" and "exclusive" authority to represent agencies, they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[1] *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).

---

[1] New Jersey admits that it may assert that certain communications between the Attorney General's office and the relevant agencies are privileged. New Jersey cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

2