**Exhibit 24**

**New York Attorney General's Position:** The New York State constitution contemplates a "separation of powers within the executive branch of the government." *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 263 (N.D.N.Y. 2006). The NYAG is an independently-elected official, and unlike almost all other executive branch officers, including the heads of the state entities Meta identified, does not necessarily act pursuant to the directives of the Governor.[1] Article V, Sections 1-2, of the New York Constitution. The NYAG is empowered to prosecute wrongdoing in the executive branch when requested by various officers, including the state comptroller, who—like the NYAG—is independently-elected. N.Y. Exec. Law § 63(3). And the NYAG has sometimes been adverse to the Governor, such as in 2007 when it investigated and determined that the Governor's office had engaged in misconduct. *See* State of New York Office of the Attorney General, *Report of Investigation into the Alleged Misuse of New York State Aircraft and the Resources of the New York State Police* (July 23, 2007), *available at* https://tinyurl.com/pa2wnwvc.

When the NYAG sues an entity such as Meta, therefore, it does not form an attorney-client relationship with state entities that it isn't representing in the litigation. *United States v. Novartis Pharms. Corp.*, No. 11 CIV. 8196 CM JCF, 2014 WL 6655703, at *9-10 (S.D.N.Y. Nov. 24, 2014). In *Boardman*, for example, the court held that the NYAG represented only the specific agency whose authority was at issue, denying party discovery over other state agencies. *Boardman*, 233 F.R.D at 263-68. Here, the NYAG is not representing any other state entities or seeking relief on their behalf, and therefore has no legal right to access their documents, unlike *in Boardman* or *in re Opioid Litig.*, 2019 WL 4120096 (N.Y. Sup. Ct. Aug. 14, 2019).

The New York legislature has, in some circumstances, authorized the NYAG to represent other state entities and gain the right to access certain of their documents, but those circumstances have not occurred here. The NYAG may represent other state entities in order to "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state… in order to protect the interest of the state…" N.Y. Exec. Law § 63(1). The state entities Meta identified are neither prosecuting nor defending an action or proceeding, and the NYAG has not concluded that representation is necessary at this time to protect the interest of the state, particularly given New York State agencies routinely represent themselves in third-party subpoena compliance.

The NYAG has, in unrelated matters, represented or provided legal counsel to at least some of the state entities Meta identified. Some pre-suit NYAG communications with such entities, therefore, may be privileged. The NYAG does not, however, represent any of the state entities Meta has identified in this litigation, so no pre-suit communications arising out of this litigation are attorney-client privileged.

---

[1] The Empire State Development Corporation, an entity Meta identified, is a "public benefit corporation," not a state agency. *See Goldstein v. Pataki*, 516 F.3d 50, 60 (2d Cir. 2008). It exists "independently of the State." *Bordeleau v. State*, 18 N.Y.3d 305, 316 (2011).

**Meta's Position:** The New York agencies that Meta has identified—Council on Children and Families, Department of Education, Department of Health, Department of State, Higher Education Services Corporation, Office of Children and Family Services, Office of Mental Health, Office of the Governor, and State Division of the Budget[2]—are subject to discovery as a matter of state and Ninth Circuit law.  New York law (with exceptions not relevant here) requires the Attorney General to "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel."  N.Y. Exec. Law § 63(1).  As a result, the AG "is obligated to prosecute, defend and control all legal business of state agencies."  *Morgan v. N.Y. State Dep't of Env't Conservation*, 779 N.Y.S.2d 643, 645 (2004).  No statute deprives the AG of access to agency documents.  That the AG "has sometimes been adverse to the Governor" is of no moment.  *See In re Generic Pharms. Pricing Antitrust Litig*, 2023 WL 6985587, at *2 (E.D. Pa. Oct. 20, 2023) ("[g]eneral arguments regarding a possible conflict" do not bar finding that AG exercises control over agency documents, as "state agencies 'undoubtedly hold many relevant documents and stand to benefit from the Attorney General's success in the case'").

Because the New York AG "is obligated to . . . control all legal business of state agencies," ***a New York court has required the AG to "search and produce documents from agencies."***  *In re Opioid Litig.*, 2019 WL 4120096, at *1–2 (N.Y. Sup. Ct. Aug. 14, 2019) (emphasis added).  That decision is consistent with federal decisions applying *In re Citric Acid*'s "legal right" standard.  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).[3]

The State's authority is not to the contrary.  *Boardman* is readily distinguishable, because the defendant there offered "nothing more than hypotheses" to support its control argument.  *See also In re Opioid Litig.*, 2019 WL 4120096, at *1–2 (*Boardman* is "easily distinguishable").  Moreover, unlike in *Boardman*, New York "brought this case as *parens patriae* on behalf of the State of [New York]."  *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018); *see also* 15 U.S.C. § 6504 (COPPA claims must be brought by states "as *parens patriae*").  And *Novartis* did not conduct a state-by-state analysis of statutory provisions like those cited here.

---

[2] Meta agrees to treat the Empire State Development Corporation as a non-party for purposes of discovery.

[3] New York admits that it may assert that certain communications between the Attorney General's office and the relevant agencies are privileged.  New York cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.