**Exhibit 27**

**Ohio Attorney General's Position:** The Ohio Constitution does not contain a specific provision creating a separation of powers within the state government. However, "this doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *City of South Euclid -v- Jamison* (1986) 28 Ohio St.3d 157, 158-159 (citing *State -v- Harmon* (1877) 31 Ohio St. 250). For example, the Ohio Governor and Ohio Attorney General are two separately elected officials with two separate duties and oversights (see Ohio Const. art III §5 ("The supreme executive power of the State shall be vested in the Governor") and R.C. §109.02 ("The Attorney General is the chief law officer of the state")). This separate executive structure with a lack of common executive control does not empower the Attorney General to compel these agencies to produce documents in discovery, nor would the Attorney General have any knowledge of what, if any, documents these agencies have in their possession.

Similarly, the Ohio Attorney General has no legal right to obtain documents from these separate state agencies upon demand. The state of Ohio is an independent entity that is separate and apart from its offices, agencies, and departments. *State ex. rel. Merrill -v-Ohio Dept. of Natural Resources*, 130 Ohio St. 3d 30, 2011 Ohio 4612. In *State of Ohio-v-Monsanto Co., et. al,* Hamilton C.P. No. A1801237 at 1 (Ohio Ct. Common Pleas Dec 2, 2020) [Ex. 37], the Court held that "the case of *State ex. rel Merrill -v- Ohio Dept. of Natural Resources* . . . demonstrates that the State and its agencies are not interchangeable parties in the context of litigation . . . the Attorney General has the authority to advance what it views as a State interest and that authority is independent of the Governor or state agencies . . . [therefore,] Ohio's constitutional structure prevents the Court from aggregating state agencies as parties and treating them as such for purposes of discovery."

There is a distinction between the attorneys from the Ohio Attorney General's office who have filed this lawsuit – all of whom are assigned to the Consumer Protection Section within the office - and the attorneys from the same office who may be engaged in responding to subpoenas related to this lawsuit on behalf of their respective clients. Each of the 10 state agencies that Defendants identify make their own decision as to whether to engage the Ohio Attorney General's office to represent them when responding to a subpoena. These decisions are driven by fact-specific circumstances and, should the Attorney General's office become involved, the communication with the various state agencies would be conducted through sections within the office different than that of the Consumer Protection Section, and any communication between those attorneys and the agencies would be privileged and protected from not only the Defendants, but also from the Ohio Attorney General's Consumer Protection Section attorneys of record in this matter. Conversely, any communication between the Ohio Attorney General's Consumer Protection Section attorneys who are of record in this matter and the ten agencies identified by Defendants would not be privileged and protected.

Meta cites R.C. §1331.16(N) and *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021). However, this is an antitrust law case and the statute cited by Meta and the court is applicable only to Ohio antitrust law. No such requirement exists within Ohio consumer law or for the statutory authority under which Ohio has brought the case at bar.

**Meta's Position:**  The Ohio agencies that Meta has identified—the Department of Children and Youth, Department of Development, Department of Education & Workforce, Department of Health, Department of Higher Education, Department of Job and Family Services, Department of Mental Health & Addiction Services, Department of Youth Services, Office of Budget and Management, and Office of Governor—are subject to discovery as a matter of state and Ninth Circuit law.  The Ohio AG is the "chief law officer for the state and ***all its departments***."  Ohio Rev. Code § 109.02 (emphasis added).  By statute (with limited exceptions not relevant here), "no state officer or board, or head of a department or institution of the state shall employ, or be represented by, other counsel."  *Id.*  "[T]he attorney general is legal counsel for all state agencies." *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 925 N.E.2d 641, 658 (Ohio Ct. App. 2009).  No statute deprives the AG of access to agency documents.  To the contrary, agencies "shall render and furnish to the attorney general . . . all information and assistance in their possession or within their power."  Ohio Rev. Code § 1331.16(N).[1]

Relying on § 1331.16(N), ***a federal court has already held that the Ohio AG has "control" over agency materials***—and therefore has discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.  *In re Generic Pharms. Pricing Antitrust Litig.*, 2023 WL 6985587, at *4 (E.D. Pa. Oct. 20, 2023).  That decision is consistent with other federal decisions applying the "legal right" standard.  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).[2]

*Montanto*, the AG's only authority, applied state-law discovery standards, with no reference to the legal-right standard applied in *Generic* and *Citric Acid*.  To the extent the Court concludes *Monsanto* is relevant here, it was wrongly decided.  *See* Slip Op. at 4 (recognizing contrary federal authority).

---

[1] *State ex rel. Merrill v. Ohio Dep't of Nat. Res.*, confirms the position Meta has made from the outset that by bringing suit on behalf of the "State of Ohio," *see* Multistate Compl., the State of Ohio is the proper party, rendering irrelevant whether the *Attorney General* has control over documents possessed by the State of Ohio's agencies.  955 N.E.2d 935, 944 (Ohio 2011) (by naming "the state of Ohio" as a party[,] . . . the pleadings verify that the state became an independent party to the underlying action").

[2] Ohio admits that it may assert that certain communications between the Attorney General's office and the relevant agencies are privileged.  Ohio cannot fairly take the position here that the agencies are not parties, to the extent that its communications with these agencies are attorney-client privileged.