**Exhibit 5**

**Connecticut Office of the Attorney General's Position**

        **The CT AG *Cannot* Access Non-Party States Agencies' Documents.**

The Connecticut Office of the Attorney General ("CT AG") is the only Connecticut plaintiff in this action. The CT AG brought this law enforcement action in the name of the State of Connecticut pursuant to its statutory authority to enforce federal children's online privacy protection law and state consumer protection law. *See* 15 U.S.C. § 6504; Conn. Gen. Stat. § 42-110m. No Connecticut state agencies are named as plaintiffs, and the CT AG does not seek damages on any state agency's behalf, nor on behalf of the state.

The Connecticut State Constitution expressly divides the powers of Connecticut state government into three branches—legislative, executive, and judicial. Conn. Const. Art. II and XVIII. The Governor and the CT AG are independently elected officials filling separate constitutionally created offices. Conn. Const. Art. IV. This dual executive form of state government gives the Governor control over executive branch agencies, which do not include the CT AG, and gives the CT AG sole supervisory responsibility over the legal affairs of the state. *See* Conn. Gen. Stat. §§ 3-1 to 3-10f (powers and duties of the Governor); §§ 3-124 to 3-131 (powers and duties of the CT AG); § 4-38c (departments within the executive branch). The CT AG represents "the broader interests of the state" so he can sue executive branch agencies under the control of the Governor. *See Conn. Comm'n on Special Revenue v. Conn. Freedom of Info. Comm.*, 387 A.2d 533, 537 (1978).

        **The CT AG Does *Not* Have Control Over Non-Party State Agencies' Documents.**

The CT AG does not have possession, custody, or control of documents owned by the non-party state agencies or the Connecticut Office of the Governor. Meta has not shown, nor can it, that the CT AG has control or a legal right over the documents sought from non-party state agencies or the Connecticut Office of the Governor. *See In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999) (adopting the legal control test). If this Court adopts Meta's view that the CT AG has control over state agencies, it would give those agencies a "virtual veto" over the CT AG's independent responsibility to the state and his decision whether to bring an enforcement action, which would be in direct conflict with the plain language of the laws of the State of Connecticut. *See* Conn. Gen. Stat. § 3-125 ("[The CT AG] shall have general supervision over all legal matters in which the state is an interested party …").

        **Privileged Communications.**

The Commissioner of the Connecticut Department of Consumer Protection ("DCP") authorizes the CT AG to bring Connecticut Unfair Trade Practices Act ("CUTPA") enforcement actions. *See* Conn. Gen. Stat. § 42-110m. Communications between the CT AG and DCP in that regard are therefore privileged attorney-client communications. *See* Conn. Gen. Stat. § 52-146r. If Meta issues third-party subpoenas to any of the other Connecticut state agencies Meta identified, and should the CT AG be retained by such agencies for their subpoena response, communications between the agencies and the CT AG would be protected under attorney-client privilege. *See id.* This does not change the possession, custody, or control analysis.

**Meta's Position:** The Connecticut agencies that Meta has identified—Commission for Educational Technology; Department of Consumer Protection (*the agency responsible for "authoriz[ing] the CTAG" to bring this suit*)[1]; Department of Economic and Community Development; Department of Education; Department of Mental Health and Addiction Services; Department of Public Health; Department of Children and Families; Office of Health Strategy; office of Higher Education; Office of Policy and Management; Office of the Child Advocate; Office of the Governor; and Office of the State Comptroller—are subject to discovery as a matter of state and Ninth Circuit law.  The Attorney General "shall appear for the state, the Governor . . . and for all heads of departments and state boards . . . and institutions . . . in all suits and other civil proceedings . . . in which the state is a party or is interested." Conn. Gen. Stat. Ann. § 3-125; *see also* 1989 Conn. Op. Att''y Gen. 83 (1989) ("Generally, legal services to state agencies are provided by the Attorney General." (citing § 3-125)).  Further, "the Attorney General's powers encompass advising and representing the State and ***all agencies in all legal proceedings***." *Conn. Comm'n on Special Revenue v. Conn. Freedom of Info. Comm'n*, 174 Conn. 308, 319 (1978) (emphasis added); *see Bysiewicz v. Dinardo*, 6 A.3d 726, 748 (2010) ("authority to perform legal services on behalf of agencies "is conferred exclusively on the attorney general").  No statute deprives the AG of access to agency documents.

Recognizing that the "broad grant of authority undercuts the argument that in the prosecution of an action . . . the AGO cannot obtain documents from state agencies," ***a federal court has already held that the Connecticut AG has "control" over agency materials***—and therefore has discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard. *In re Generic Pharms. Pricing Antitrust Litig.*, 2023 WL 6985587, at *3 (E.D. Pa. Oct. 20, 2023).  That decision is consistent with other federal decisions applying *In re Citric Acid*'s "legal right" standard. *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).[2]

Courts have rejected the arguments Connecticut makes here. *In re Generic Pharms. Pricing Litig.*, 2023 WL 6985587, at *2 (rejecting "arguments regarding a possible conflict between the AGO and the governor" because "state agencies 'undoubtedly hold many relevant documents and state to benefit from the Attorney General's success" (citation omitted)); *Illinois ex rel. Raoul v. Monsanto Co.*, 2023 WL 4083934, at *3 (N.D. Ill. June 20, 2023) (rejecting "the 'virtual veto' concern" as "speculative," "conclusory," and "unpersuasive").

---

[1] It would be particularly inequitable to treat this agency as a non-party given its unique role.

[2] Connecticut admits that it intends to assert that communications between the Attorney General's office and the relevant agencies are privileged.  Connecticut cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

2