**Exhibit 16**

**Maine Attorney General's Position**:

The Attorney General is aware of no general common law or statutory authority to demand that executive branch agencies turn over documents to his office. None of the enabling statutes for the agencies that Meta identified permits the Attorney General to obtain their documents at his discretion. *See* ME. REV. STAT. TIT. 2, § 1 *et seq.* (Governor); ME. REV. STAT. TIT. 5, § 281 *et seq.* (Department of Administrative & Financial Services); *id.* § 13051 *et seq.* (Department of Economic & Community Development); ME. REV. STAT. TIT. 20-A, § 201 *et seq.* (Department of Education); ME. REV. STAT. TIT. 22-A, § 201 *et seq.* (Department of Health & Human Services). Certain documents maintained by these agencies are confidential by statute. *See, e.g.,* ME. REV. STAT. TIT. 22, § 4008. Though in limited circumstances an executive branch agency may be required to provide records to the Attorney General, *see, e.g.,* ME. REV. STAT. TIT. 9-B, § 226(2), Meta has not identified any such statute applicable to the agencies at issue.

When exercising his authority to maintain proceedings in the public interest, as in this case, the Attorney General does not have legal control of documents possessed by executive branch agencies. The Attorney General is an independent constitutional officer with common law powers who is elected by the Legislature. Me. Const. art. IX, § 11; *Withee v. Lane & Libby Fisheries Co.*, 120 Me. 121, 123, 113 A. 22, 23 (1921). He has a unique role in Maine government, distinct from the executive branch: "[a]s the chief law officer of the State, [the Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights." *Lund v. Pratt*, 308 A.2d 554, 558 (Me. 1973). When the Attorney General exercises this independent authority, it is for the benefit of the public, not on behalf of any state agency. Moreover, the agencies that Meta has identified are administered by the Governor or officials she appoints. The autonomy of the Attorney General from these officials and agencies is well-settled. *See Op. of the Justices*, 112 A.3d 926, 938 (Me. 2015); *Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197, 1199 (Me. 1989). Though by statute the Attorney General also represents agencies in their legal proceedings, that statute merely prescribes the Attorney General's obligations and authority as counsel to the agencies and says nothing about control of or access to their documents. *See* ME. REV. STAT. TIT. 5, § 191(3). When acting as counsel to an agency, he has no more legal control of client documents than Meta's lawyers have of Meta's documents. Meta has not, and cannot, identify any Maine statute or caselaw providing that the Attorney General has legal control over agency documents. Considering the Attorney General's role distinct from the executive branch, the fact there is no statute providing that he does <u>not</u> have legal control of agency documents cannot equate to a conclusion he does have such control.

Maine has not taken a position on whether pre-suit communications between the Attorney General's office and agencies are privileged. Any communications between an agency and its counsel are protected by the attorney-client privilege when disclosure "will seriously impair the . . . agency's ability to process a claim or carry out a pending investigation, litigation, or proceedings in the public interest." Me. R. Evid. 502(d)(6). The attorney-client privilege does not treat pre-suit communications differently than other communications. Moreover, even if that privilege does not apply to pre-suit communications, such communications may be protected work product.

**Meta's Position:** The Maine agencies that Meta has identified—Department of Economic & Community Development, Department of Education, Department of Health & Human Services, Division of Administration, and Governor's Office—are subject to discovery as a matter of state and Ninth Circuit law. The Attorney General is "the chief law officer of the State." *In re Thompson's Est.*, 414 A.2d 881, 890 (Me. 1980). He must "appear for . . . agencies of the State in all civil actions and proceedings in which the State is a party or interested." Me. Rev. Stat. tit. 5, § 191(3). Further, "[a]ll legal services required by [state agencies] in matters relating to their official duties must be rendered by the Attorney General or under the Attorney General's direction," and state agencies may not "act at the expense of the State as counsel, nor employ private counsel except upon prior written approval of the Attorney General." *Id.* § 191(3)(B); *see also Michalowski v. Head*, 2010 WL 2757359, at *6 (D. Me. July 12, 2010) ("[The] Attorney General is required by [Maine] law to provide legal representation to state agencies." (citing 5 M.R.S.A. § 191)). ***Indeed, the Maine AG has already confirmed that it would represent each of the identified agencies in responding to a Meta subpoena.*** *See* Ex. 1, at 14. No statute deprives the AG of access to agency documents.

Because the Maine AG must and will provide "[a]ll legal services" to the identified agencies, they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[1] *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).

---

[1] Maine admits that it intends to assert that certain communications between the Attorney General's office and the relevant agencies are privileged. Maine cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.