**Exhibit 21**

**Montana Attorney General's Position:** While Montana's Constitution generally vests "[t]he executive power . . . in the governor," MONT. CONST. art. 6, § 4(1), it also establishes five other constitutionally independent executive offices, which are each separately elected and operate with their own independent constitutional authority—including the Attorney General, *id.* §§ 1(1), 2(1), (4); *see Bullock v. Fox*, 435 P.3d 1187, 1193 (Mont. 2019). All the Montana agencies or entities at issue here fall under the authority of the Governor (or another independently elected executive branch official), *not* the Attorney General. That is most obvious with respect to the Montana Governor's Office itself, and it is also true with respect to the Department of Commerce and the Department of Public Health and Human Services: both Departments are constituted under the Governor's authority, with heads appointed by the Governor and removable at his pleasure. MONT. CODE ANN. §§ 2-15-111, 2-15-1801, 2-15-2201. Similarly, the Office of Public Instruction is headed by the Superintendent of Public Instruction, *id.* § 20-3-105—a constitutionally independent and separately elected executive official, MONT. CONST. art. 6, §§ 1–2. The remaining two entities are likewise subject to the authority of the Governor, the Superintendent of Public Instruction, or a combination of the two—not the Attorney General. *Id.* at art. 10, § 9.

The Attorney General has no legal right to access or control any of these entities' documents. No statute or other legal provision gives the Attorney General authority to obtain documents from these entities; to the contrary, Montana law provides that state records "are and remain the property of the public agency possessing the records." MONT. CODE ANN. § 2-6-1013(1). To be sure, the Attorney General's Office has statutory and common-law responsibility and authority to represent these agencies in certain circumstances. *See id.* §§ 2-15-501(1), 50-1-102; *State ex rel. Olsen v. Pub. Serv. Comm'n*, 283 P.2d 594, 599 (Mont. 1955), *superseded in part as recognized in Bullock*, 435 P.3d at 1197. But even if Meta subpoenaed one of the entities, the Governor could choose to "employ additional counsel that the governor may judge expedient[,]" outside of the Attorney General's control. MONT. CODE ANN. § 2-15-201(4); *see Woodahl v. State Highway Comm'n*, 465 P.2d 818, 820–21 (Mont. 1970). And even where the Attorney General *does* represent a state agency, the Office functions like an ordinary attorney serving its client, and thus must obey the agency's litigation decisions. *See Mont. Power Co. v. Mont. Dep't of Pub. Serv. Regul.*, 709 P.2d 995, 1002 (Mont. 1985); *see also State ex rel. Dep't of Health & Env't Scis. v. Lasorte*, 596 P.2d 477, 482 (Mont. 1979) (distinguishing between the Attorney General's role as "legal advisor" to an agency and his own independent "interest in the enforcement" of state law). Even if it represented one of these agencies, the Office would thus still not have "control" over its documents in the sense contemplated by Rule 34, since it would "have no more power to acquire documents from the non-party agencies than any law firm representing a client." *United States v. Am. Express Co.*, No. 10-cv-4496-NGG-RER, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011).

Because the Montana Attorney General's Office does not represent any of the six state entities at issue, its position is that pre-suit communications related to this matter between the Office and those entities are not protected by the attorney-client privilege.

**Meta's Position:** The Montana agencies that Meta has identified—Board of Public Education, Department of Commerce, Department of Public Health and Human Services, Governor's Office, Office of the Commissioner of Higher Education, and Office of Public Instruction—are subject to discovery as a matter of state and Ninth Circuit law.  Under the Montana Constitution, "[t]he attorney general is the legal officer of the state."  Mont. Const. art. 6, § 4.  Pursuant to Montana law, the AG serves as "the legal officer" for state agencies; as such, lawyers working for agencies "act under the Attorney General in court proceedings as special assistant attorneys general." *Mont. Power Co. v. Mont. Dep't of Pub. Serv. Regul.*, 709 P.2d 995, 1001 (Mont. 1985) (citing Mont. const. art. VI, § 4; Mont. Code. Ann. § 2-15-501(1)); *see also id.* at 1002–03 (AG may "institute and prosecute all actions or proceedings necessary to the enforcement of the regulation of utilities" irrespective of whether the Public Services Commission requested action).[1]  No statute deprives the AG of access to agency documents.  That each agency has ownership over its own records, Mont. Code Ann. § 2-6-1013(1), "do[es] not speak to the ability of the AGO to obtain documents after instituting a suit."  *In re Generic Pharms. Pricing Antitrust Litig.*, 2023 WL 6985587, at *4 (E.D. Pa. Oct. 20, 2023) (rejecting analogous argument by Missouri AG).

Because the Montana AG is "the legal officer" for the state of Montana, with expansive authority to direct and control litigation involving executive agencies, they have "control" over agency materials—and therefore have discovery obligations with respect to them—under *In re Citric Acid*'s "legal right" standard.[2]  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).[3]

---

[1] Mont. Code Ann. § 2-15-201(4) speaks to litigation pending "against" Montana "that may result in any claim against the state," and is therefore not applicable here.

[2] Outside this briefing, Montana has not taken a position in this litigation regarding whether communications between the Attorney General's office and the relevant agencies are privileged.

[3] The State's reliance on *American Express Co.* is unavailing.  In that case, the Eastern District of New York did not apply the Ninth Circuit's legal right test at all, instead asking whether the agency and attorney general were subject to "common executive control."  2011 WL 13073683 at *1.  Further, the *American Express* court did not conduct a state-by-state analysis of statutory provisions like those cited here.

2