**Exhibit 31**

**South Carolina Attorney General's Position:**

Article VI, Section 7 of the South Carolina Constitution provides that the South Carolina Attorney General (SCAG) is an independently elected constitutional officer. The SCAG does not have any legal or practical authority to access the documents of the state agencies identified by Meta, some of which are cabinet agencies which fall under the purview of the Governor, some of which are creations of the legislature with appointed boards, and one of which falls under another independently elected official (the Department of Education). The SCAG does not share a common executive with any of these agencies, which stand independently from the Attorney General's Office. When the SCAG brings an action on behalf of the State of South Carolina, as it has done here, the SCAG acts in the public interest of the State of South Carolina and not as the legal representative or attorney of any department or agency of state government, and these agencies are not parties to the action. *See* 2023-24 Appropriation Act Part 1B Section 59.19.  Notably, Meta does not even cite the Appropriation Act, which is binding South Carolina law, but instead cites a trial court decision which predates its enactment and is therefore immaterial.

The SCAG is not in possession, custody, or control of any documents or electronically stored information of any department, agency, or board in the State of South Carolina that is not a party to this action. *See id.* And the SCAG has no legal ability to require a cabinet or independent agency to turn over documents. Therefore, under the legal control test as defined by *In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999*)* which defines control as "the legal right to obtain documents upon demand," it is clear that the SCAG is not in "control" of any agency documents.

The SCAG has not yet taken a position in this litigation as to whether pre-suit communications between its office and the agencies identified by Meta are privileged. Should Meta issue third-party subpoenas to any of the identified South Carolina agencies, and should the SCAG be retained by such agencies with regard to their subpoena response, communications between the agencies and the SCAG would be protected under attorney-client privilege. Additionally, representation of these agencies with regard to their subpoena response, which would be handled by different attorneys than those involved in this enforcement action, would not change the possession, custody, or control analysis.  When it acts as a law firm, the SCAG has no more legal control over client documents than Meta's counsel has legal control over Meta's documents.

**Meta's Position:**  The South Carolina agencies that Meta has identified—the Commission on Higher Education, Department of Administration Executive Budget Office, Department of Children's Advocacy, Department of Commerce, Department of Consumer Affairs, Department of Education, Department of Health and Human Services, Department of Mental Health, Department of Social Services, Education Oversight Committee, and Office of the Governor—are subject to discovery as a matter of state and Ninth Circuit law.  Under South Carolina law, "the Attorney General shall conduct all litigation which may be necessary for ***any department*** of the state government or any of the boards connected therewith, and all these boards or departments are forbidden to employ any counsel for any purpose except through the Attorney General and upon his advice."  S.C. Code Ann. § 1-7-80 (emphasis added).  Agencies are restricted from employing other counsel without the AG's approval (and such counsel remains "under the supervision and control" of the AG).  *Id.* §§ 1-7-160, 1-7-170.  No statute deprives the AG of access to agency documents.  To the contrary, the AG "has the ability to require '[a]ll State officers, agencies, and institutions within the Executive Branch' to 'give him information in writing upon any subject relating to the duties and functions of their respective offices, agencies, and institutions.'"  Ex. 38, *South Carolina v. Purdue Pharma L.P.*, No. 2017-CP-40-04872, at *2–3 (S.C. Ct. Com. Pleas Jul. 5, 2019) (slip op.) (quoting S.C. Const. Art. IV, § 17).

Based on the foregoing, ***a South Carolina court has held that the AG has "control" over agency materials***.  *See id.*, at *2–3.  That decision is consistent with federal decisions applying *In re Citric Acid*'s "legal right" standard.  *See, e.g.*, *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012) (legal right based on AG's "statutory duties to handle 'all legal services,' 'direct and supervise' all litigation, and 'represent' the State of Tennessee," and the absence of any authority denying the AG the ability to "obtain responsive documents on demand"); *In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 411 (E.D. Pa. 2021) (legal right based on obligation to "represent[] Commonwealth agencies" and statute providing that the AG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" (cleaned up)).  The same result should follow here.[1]

The State's reliance on an appropriations bill does not compel a different result.  The South Carolina legislature's declaration that agency documents "are not in the possession, custody, or control of the Attorney General" is entitled no deference, as that legal determination rests with the judiciary, applying the test set forth in *Citric Acid*.

---

[1] South Carolina admits that it may assert that certain communications between the Attorney General's office and the relevant agencies are privileged.  South Carolina cannot fairly take the position here that the agencies are not parties, while also taking the position that its communications with these agencies are attorney-client privileged.

2