# Exhibit 5



April 3, 2024

**BY EMAIL**

Ashley Simonsen
Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
asimonsen@cov.com

      RE:    *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*; MDL No. 3047

Dear Ashley:

This responds to Defendants' letter that you emailed to us just before 5:00 pm PST yesterday, April 2, 2024 demanding a response in less than 24 hours with a threat to go to the Court.

The premise of Defendants' letter is that (1) more than "20%" of Plaintiffs purportedly failed to timely submit their Plaintiff Fact Sheets ("PFS") and (2) there supposedly are "widespread deficiencies" in the PFS that were loaded to MDL Centrality as of April 1, 2024. Defendants are wrong on both counts. Moreover, it is now apparent that Defendants' approach to the PFS review process is designed to create a "record" of supposed deficiencies, for the purpose of injecting delay into the case schedule, by ignoring the applicable court orders, the actual facts, and common sense. This is an abuse. We are willing to engage in a meaningful discussion of any actual deficiencies that may exist. But the picture Defendants are trying to paint so distorts reality that it is a non-starter for any productive conversation.

*First*, as to supposed substantive "deficiencies" in the PFS that have been filed, Defendants' rush to create a record has resulted in "deficiency" claims that are absurd and frivolous. They bespeak a reckless approach to whatever review of the PFS Defendants may have done. For example:

- For a PI Plaintiff who (thankfully) is alive, Defendants claimed the lack of a <u>death certificate</u> was a supposed deficiency.[1] Can you imagine going to the parents of this child with this deficiency?

---

[1] See ███████████████ Section XVI.

April 3, 2024
Page 2

- For a PI Plaintiff who did fill out all of Section II of the PFS,[2] Defendants asserted a "deficiency" claiming, contrary to fact, that the Plaintiff "did not complete the rest of this section."

- For an 18 year old PI Plaintiff who is not asserting a wage loss claim (and whose only prior employment is as a lifeguard and swim instructor), Defendants claim as a deficiency Plaintiff's failure to provide an authorization "for release of Workers' Compensation Records." This is illogical and improper. The PFS form expressly says that such information must be provided only "*if* you are claiming lost wages or earning capacity."[3]

- Defendants also have claimed as a "deficiency" that a Plaintiff did not explain what was meant by the words "you" or "one of Defendants' services" in response to PFS Section IV—ignoring (a) that section of the PFS does not allow free form responses and (b) the words Defendants ask to be explained are the prepopulated words in the preset selection for that section of the PFS.[4] This Plaintiff literally could not have provided this information in the PFS section that supposedly is "deficient."

- For a case brought on behalf of a 12 year old child who committed suicide, Defendants claimed lack of information on lost wages, employment authorization, and workers comp were alleged "deficiencies."[5] The "lost wages" section of the PFS applies only to children 14 years or older—an age this child never got the chance to meet. For this same child, Defendants also said the PFS was deficient for lack of a disability authorization and for no "social security disability release." But no claim is made for disability for a dead child, and the PFS expressly says that a social security disability release is needed only "if you have been the claimant."

- We have been made aware of numerous alleged "deficiencies" raised by Defendants where the Plaintiff has provided the full extent of truthful information available to them. For instance, in one deficiency letter, Defendants complain that the Plaintiff provided incomplete dates for a disciplinary action and dates of care, even though Plaintiff provided approximate dates to the best of their recollection and provided authorizations allowing Defendants to seek their full school and medical records.[6] Defendants' complaint that these are "deficiencies" is tantamount to an insistence that Plaintiffs guess and/or provide inaccurate information. This is improper.

---

[2] See ███████████████ Section II.
[3] See ███████████████, Section XV.
[4] See ███████████████ Section IV.
[5] See ███████████████ Sections X, XV, and XVI. Defendants also asserted as a "Deficiency" in Section XIV that this Plaintiff "failed to respond" when she "only provided two witnesses"—a flat contradiction.
[6] See ███████████████ Sections III, VI.

April 3, 2024
Page 3


Again, these are only examples, and as Defendants' deficiency letters continue to flood in, we are being made aware of scores of similar problems. Indeed, Defendants' deficiency claims are so off-base that it forces us to ask: What process did Defendants use to review the PFS and assert supposed "deficiencies"? Did a lawyer review each PFS? Did Defendants use any kind of AI or automation in performing the review or generating the deficiencies? Is that how Defendants have been able to turn their defective notices around with such speed (and lack of accuracy)?

*Second*, as to which Plaintiffs were required to file a PFS by April 1—the "denominator" in Defendants' calculations, Defendants appear to be off base in at least three ways.

1. Defendants seem to be taking the position that CMO 10 required every Personal Injury plaintiff on file as of March 31, 2024 to file a PFS by April 1, 2024. That is both wrong and illogical. The PFS Implementation Order for PI Plaintiffs (ECF 596) originally gave each PI Plaintiff 105 days after filing of the SFC to file their PFS. *See* Implementation Order, ¶ 2.a. But that Order distinguished between SFCs on file as of the date of that Order (January 29, 2024) ("First Wave SFCs") and those filed later. First Wave SFCs were required to file within 105 days of the Order, May 13, 2024. When CMO 10 "advanced" the deadline for PFS, it did so in the context of the bellwether schedule such that the May 13, 2024 deadline for the First Wave SFCs was advanced to April 1, 2024.

   As a practical matter, SFCs that were not part of the First Wave could file a PFS by April 1, 2024 to be considered in the bellwether pools. But they were not required to do so. Indeed, if Defendants' reading of CMO 10 were correct, a child whose SFC was filed on March 31, 2024 to meet a statute of limitation concern would have to have filed their PFS within 24 hours. That makes no sense. Even more nonsensical is that, under Defendants' reading of CMO 10, anyone who files an SFC after April 1 somehow already missed the (nonexistent) PFS deadline.

   If we have misunderstood Defendants' position, please let us know (and please retract your deficiency notices to the extent they are predicated on this issue).

2. In your rush to declare "widespread deficiencies," Defendants also blew past some rather obvious issues. For example, the April 1 deadline is expressly a "Pacific Time" deadline. CMO 10 (ECF 604), page 1, n. 2. A quick spot check reveals that many PFS Defendants claim were filed on April 2 were, in fact, timely filed before midnight on April 1 Pacific Time. Likewise, our research reveals that some individual Plaintiffs were listed more than once in MDL Centrality and with different identification numbers for each entry. As a result, even when such a Plaintiff timely uploaded their PFS to MDL Centrality and associated it with one of the identification numbers—which is all that was required of them—the MDL Centrality data would show no submission for the duplicate entries for that same Plaintiff under other identification numbers.

April 3, 2024
Page 4

>Defendants also ignore each Plaintiff's right to voluntarily dismiss their case. We understand that multiple First Wave Plaintiffs have done or will be doing just that.
>
>The PFS deficiency process the Court ordered—notice and 60 days to respond—is designed to ensure that issues such as the above are raised and resolved by the parties.[7] Defendants have improperly jumped the gun on all of this.

We continue to review the status of PFS across the MDL, including updates MDL Centrality has made, for example, to use Pacific Time to determine the date of filing. That said, our numbers already are materially different from Defendants. Of the 210 Plaintiffs required to comply with the April 1 deadline, two complied by dismissing and 186 complied by filing a PFS.  That's a compliance rate of 89.5%. Of approximately 10% who may have missed the April 1 deadline, we understand some will be dismissing and others may have provided their PFS within 24-48 hours of the deadline.[8]

The bottom line is Plaintiffs' compliance rate is robust. By contrast, we are concerned that Defendants have engaged in, at best, a reckless effort to create an excuse to rewrite the rules and schedules the Court has set, including for the bellwether process.

We are willing to discuss <u>substantiated</u> issues in an appropriately deliberative manner under the applicable CMOs and Implementation Orders. But the Deficiency Notices that Defendants have served do not rise to that level and should be retracted immediately, to be replaced with carefully considered notices that raise any real rather than imaginary concerns. Furthermore, there is zero basis for Defendants' demand to rush to the Court. Defendants do so at their peril.

>Best regards,
>
>**MOTLEY RICE, LLC**
>
><u>/s/ Previn Warren</u>
>Previn Warren (*pro hac vice*)
>pwarren@motleyrice.com
>401 9th Street NW, Suite 630
>Washington, DC 20004
>Telephone: (202) 386-9610

---

[7] On this, we are hearing that some Defendants have improperly been demanding cures to alleged PFS deficiencies in as little as <u>three days</u>. Such demands violate the applicable provisions of the PFS Implementation Order. ECF 596, ¶ 5.b. Defendants much withdraw such impermissible demands.

[8] We are investigating Defendants' claim that some PFS appeared "blank" on MDL Centrality. It seems likely that some or all of those were due to a technical error.

April 3, 2024
Page 5

**LIEFF CABRASER HEIMAN
& BERNSTEIN, LLP**

<u>/s/ Lexi J. Hazam</u>
Lexi J. Hazam (SBN 224457)
lhazam@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

*Plaintiffs' Co-Lead Counsel*


**SEEGER WEISS, LLP**

<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660

*Counsel to Plaintiffs' Co-Lead Counsel*