[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION /PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION FOR AMENDMENT OF DEADLINES UNDER CASE MANAGEMENT ORDER AND OTHER RELIEF**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

**INTRODUCTION**

Defendants' Administrative Motion should be denied. Defendants misconstrue the applicable orders and distort the relevant facts to claim Plaintiffs are "gaming the bellwether discovery pool." In fact, the majority of Plaintiff Fact Sheets (PFSs) Defendants claim are late are not yet due. And more than 90% of the PFSs were timely filed. For the PFSs that are outstanding, there is no bad faith attempt by Plaintiffs' counsel to "skew[]" the bellwether pool. Rather, the individual Plaintiffs in question have not responded to repeated, good faith efforts by their respective counsel to contact them to complete the PFS. This happens in nearly every MDL with a subset of individual Plaintiffs, and typically is remedied by eventual dismissal if the client remains unresponsive. As to the School District PFSs that are genuinely late, it is only because their counsel were not aware of the applicable deadline until entry of the Implementation Order on March 27, 2024, just five days before the April 1 deadline.

In short, there is no record of bad faith or gamesmanship justifying scuttling the bellwether and trial schedule, let alone punishing Plaintiffs through an unfairly Defendant-heavy bellwether process. To the contrary, Defendants' motion appears to be a strategy to delay these proceedings. Prior to filing their motion, Defendants issued a flurry of blatantly erroneous deficiency notices immediately upon the PFS deadline. Dft. Exh. 4 (Co-Lead Ltr.). Defendants have since had to issue many "amended" deficiency notices.[1] Defendants' conduct is unfair and a needless distraction during this critical period when both sides should be focused on bellwether selections.

**ARGUMENT**

**I.    The Vast Majority of the PFSs Were Timely Served**

Defendants misconstrue the applicable deadlines for the Personal Injury ("PI") PFS.[2] Defendants assert that CMO 10 (ECF 596) established one uniform deadline—April 1, 2024—for *all* PI cases. Dft. Mem. (ECF 743) at 2-3. But that obviously cannot be true, not least because PI cases could be filed in or transferred into the MDL *after* April 1, 2024. Indeed, it seems even

---

[1] In their haste to file the Administrative Motion late Friday evening, Defendants also filed large portions of PFS on the public record, ignoring that *all* of the PFS information is "deemed confidential" and subject to the Protective Order.  ECF 596, ¶6 and ECF 731, ¶ 15.

[2] Both sides agree that School Districts PFSs were due on April 1, 2024 only as to cases on file or transferred as of March 1, 2024. ECF 731 at ¶ 6 (chart).

1  Defendants do not believe CMO 10 imposed an April 1 deadline for all PI claims since Defendants
2  also suggest, inconsistently, that the April 1 deadline may be limited to PI cases filed as of February
3  8, 2024 (Dft. Mem. at 3) and, later, that the April 1, 2024 deadline should apply to all PI cases filed
4  "before March 1, 2024."[3] Dft. Mem. at 4.

The actual framework ordered by the Court--a common one in MDLs--set different deadlines for differently-situated categories of PI cases. The first was for cases that had already been filed as of the date of the Implementation Order, for which PFSs were due 105 days after its entry (May 13, 2024). ECF No. 596 at 2(a). The second was for PI cases filed after the date of the Order, for which PFSs were due 105 days after the case was filed. *Id.* Both deadlines were subject to an exception (the "Large Volume Exception") for firms that had more than fifty PFSs due on the initial deadline, such that the firm was to serve 50 PFSs on that date, and the balance 60 days thereafter. *Id.* at 2(b). For School District cases, PFSs for cases already filed in the MDL by March 1, 2024 were due April 1, 2024, and all others were due 90 days after filing. ECF No. 731 at III.6.

The entry of CMO 10 did not "supersede" the PI PFS Implementation Order, contrary to what Defendants argue. Indeed, far from abrogating the prior order, CMO 10 expressly directed Plaintiffs to follow the service rules under the Implementation Order and simply "advance[d]" the deadline set by it. ECF No. 604 at 1 n.3. The most natural reading of CMO 10 is that it advanced the May 13, 2024 deadline, particularly given that the language refers to a singular existing "deadline," and not "all deadlines" previously ordered for both pre- and post-January 29 filings. Similarly, CMO 10 did not say or suggest any change to the Large Volume Exception.

In sum, the record here shows robust, good faith compliance with Plaintiffs' reasonable understanding of the applicable deadlines. Contrary to Defendants' claim that 45 PI PFSs are missing, in fact 28 were not due on April 1 (8 because the cases were filed only after the date of the PI PFS Implementation Order, and 20 because they fall under the Large Volume Exception[4]).

---

[3] These arguments are make-weight given that no PI Plaintiffs with allegedly late fact sheets filed their cases <u>between the date of entry of the implementation order</u> and March 1, 2024.

[4] PI cases 24-cv-00794, -01266, -01268. -01326, -01527, -01777, -01817, and -01954 were filed after the PI PFS Implementation Order.  PI cases 22-cv-04709, -04710, -04712. -04937, -05546, -06205, -06455 -07347, 23-cv-01465, -01585, -01588 (originally 22-cv-04710), -02630, -02644, -03498, -03638, -03978, -03800, -03801, -06128, and 24-cv-00221 fall under the Large Volume Exception.

1    That leaves just 17 PI PFSs that are genuinely due but outstanding. Counsel for each of those
2    Plaintiffs have informed Defendants that the PFSs have not been served only because the clients
3    have not responded to repeated, good faith outreach efforts. If unresponsiveness continues, the Co-
4    Leads anticipate the Court and counsel will follow an appropriate process leading to dismissal.

5    Of the 13 School District (SD) PFSs that Defendants assert are missing, 12 are represented
6    by two law firms. The Co-Leads understand that neither firm was aware of the April 1 deadline
7    until the SD PFS Implementation Order was actually entered on March 27, 2024—just before
8    Spring Break for many schools and only 5 days before the April 1 deadline. Far from "holding
9    back" any cases, the Co-Leads understand each firm is working quickly to serve PFSs. One other
10   District, Polk County, FL, has served its PFS. Its experience, however, exemplifies troubling
11   conduct by Defendants. Counsel for the Polk County SD informed Defendants on April 2 that they
12   had learned on April 1 that their client contact for completing the PFS unexpectedly experienced a
13   death in the family and that the district would file a PFS as soon it could.[5] Defendants nonetheless
14   included the Polk County SD in their claimed record of "gamesmanship," including demanding
15   expedited dismissal.

16   This record shows a robust compliance rate of over 90% for both the Personal Injury and
17   the School District cases.[6] Plaintiffs' work is not done. Counsel will continue to reach out to those
18   PI Plaintiffs who have not responded, and to the School Districts with outstanding PFSs. But the
19   picture Defendants seek to paint of substantial non-compliance and a scheme to deliberately skew
20   the bellwether pool is entirely contrary to the facts.[7]

---

[5] Declaration of Lexi Hazam, Exh. A.

[6] For PI cases, Defendants' denominator of 232 PFSs due is erroneous. Subtracting the 28 PI cases for which PFSs were not due April 1, the correct number is 204, of which 187 were completed, yielding a compliance rate of 91.6%. For School Districts, using Defendants' denominator of 121 PFSs, 12 are outstanding, which yields a compliance rate of 90.08%.

[7] In a footnote, Defendants argue that certain PFSs which have been submitted are deficient. Plaintiffs will, of course, meet and confer on these purported deficiencies as outlined in the Implementation Orders. But in another indication of the Defendants' haste, neither of the examples they cite are in fact deficient fact sheets. The PFS referenced at Exhibit 10 of Defendants' motion had already been amended to include the purportedly missing information by the time Defendants filed their motion. Likewise, the PFS referenced at Exhibit 11 of Defendants' motion *does* respond to the requests for documents in Section XI by explaining that such documents have not yet been located, though a search for them is ongoing. If the latter response is deficient, Defendants' own

**II.     The Sanctions Defendants Seek Are Unwarranted and Punitive**

The sanctions Defendants seek are unwarranted. No PFS process is perfect, but the facts here show good faith, robust compliance. Moreover, the Implementation Orders provide for a deficiency process if an individual PFS is not timely served. ECF No. 596 at 5(a-b); ECF No. 731 at 11-12. Defendants should be directed to use that process and address any PFS issues individually.

Even if Plaintiffs' interpretation of CMO 10 were wrong, sanctions are not warranted when a position is mistaken, but substantially justified. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994). The reasonableness of Plaintiffs' read of CMO 10 is underscored by the fact that Defendants themselves offer multiple takes on the PI PFS service deadline.

The specific forms of sanctions Defendants seek are also improper. Defendants' demand that each case filed as of March 1 be dismissed with prejudice if no PFS is served within 7 days of an order on this motion is unjustifiably punitive. The Court already has recognized that, for PI Plaintiffs represented by law firms with large volumes of cases on file, it is not reasonable to require that all be due at once. Clients who fall within the Large Volume Exception make up the bulk of the allegedly "late" PFSs for PI cases. Counsel for those clients reasonably believed they had 60 days from April 1, 2024 to serve the balance of the PFSs for their cases. Imposing a new, accelerated deadline on just 7 days' notice threatens to unfairly deprive those clients of their day in court.

Moreover, dismissal for failure to prosecute is governed by Rule 41(b), including for failure to submit a PFS. *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006). Dismissal under Rule 41(b) is proper only in "extreme circumstances." *Id.* at 1226-29. Defendants make no effort to argue the late PFSs here meet this standard. Nor could they. It is an abuse of discretion to dismiss cases for missing a PFS even by over a month. *Id.* at 1250 (five week delay not sufficient to justify dismissal). The relief Defendants seek is contrary to the law.

Defendants' request to extend the bellwether deadlines and the entire case schedule is likewise unwarranted. Both sides have a rich record from which to undertake the bellwether-selection process. Moreover, neither Plaintiffs nor Defendants have PFSs for the cases where they

---

discovery responses are riddled with deficiencies.

1  are outstanding. If these cases are ultimately dismissed, they will not matter for the overall pool.
2  And if PFSs are ultimately produced for them, Plaintiffs and Defendants will have that information
3  at the same time. There is no uneven playing field. Indeed, any claim of prejudice is entirely
4  speculative and cannot justify extending the deadlines for all fact and expert discovery that are still
5  months away.

6  Finally, Defendants' request to deprive Plaintiffs of bellwether picks is unjustifiably
7  punitive as it would create a lopsided, Defendant-skewed bellwether process. Sanctions "when
8  imposed pursuant to civil procedures, must be compensatory rather than punitive in nature."
9  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). Yet the sanction Defendants
10 seek would operate as a form of collective punishment for Plaintiffs—including the vast majority
11 of Plaintiffs who have served a timely PFS. The "systemic urge to aggregate litigation must not be
12 allowed to trump our dedication to individual justice, and we must take care that each individual
13 plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation." *In re*
14 *Repetitive Stress Inj. Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (internal citations and quotations
15 omitted). Defendants cite no case that has imposed a similar sanction.

16 **III.   The Court Should Inquire Into Defendants' Deficiency Notice Process**

17 Defendants' motion compels Plaintiffs to raise serious questions about the remarkable
18 number of patently baseless deficiencies Defendants have given notice of over the past week.[8]
19 Examples of these are set forth in the letter Plaintiffs sent Defendants on April 3, 2024.[9] The pattern
20 here suggests abuse of the court-ordered deficiency notice process, during a critical time when both
21 sides should be dealing with actual discovery issues and bellwether selection. Plaintiffs respectfully
22 request that the Court inquire how Defendants came to serve these frivolous deficiencies.

---

[8] Defendants served many of the deficiency notices making these frivolous claims in less than 24 hours after the due date for PFSs. Because of this, Plaintiffs have repeatedly asked Defendants if they are using artificial intelligence to generate PFS deficiency letters and sending them out without meaningful human review to catch even obvious errors. Defendants have not answered, but they notably have been sending a number of "amended" deficiency notices pulling back on their prior absurd "deficiency" claims.

[9] Defendants attached a copy of this letter to their motion as Exhibit 5. For ease of reference, Plaintiffs reattach this letter here as Exhibit B to the Hazam Declaration.

| | |
|---|---|
| 1 | DATED: April 9, 2024 |

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

*Counsel to Co-Lead Counsel*

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone:  415-986-1400
jennie@andrusanderson.com

*Liaison Counsel*

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: (504) 227–8100
raustin@ronaustinlaw.com

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone:  206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

| | |
|---|---|
| 1 | |
| 2 | JAMES J. BILSBORROW<br>**WEITZ & LUXENBERG, PC**<br>700 BROADWAY<br>NEW YORK, NY 10003<br>Telephone: 212-558-5500<br>Facsimile: 212-344-5461<br>jbilsborrow@weitzlux.com |
| 3 | |
| 4 | |
| 5 | THOMAS P. CARTMELL<br>**WAGSTAFF & CARTMELL LLP**<br>4740 Grand Avenue, Suite 300<br>Kansas City, MO 64112<br>T: 816-701 1100<br>tcartmell@wcllp.com |
| 6 | |
| 7 | |
| 8 | |
| 9 | JAYNE CONROY<br>**SIMMONS HANLY CONROY, LLC**<br>112 MADISON AVE, 7TH FLOOR<br>NEW YORK, NY 10016<br>Telephone: 917-882-5522<br>jconroy@simmonsfirm.com |
| 10 | |
| 11 | |
| 12 | CARRIE GOLDBERG<br>**C.A. GOLDBERG, PLLC**<br>16 Court St.<br>Brooklyn, NY 11241<br>T: (646) 666-8908<br>carrie@cagoldberglaw.com |
| 13 | |
| 14 | |
| 15 | |
| 16 | SIN-TING MARY LIU<br>**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**<br>17 EAST MAIN STREET, SUITE 200<br>PENSACOLA, FL 32502<br>Telephone: 510-698-9566<br>mliu@awkolaw.com |
| 17 | |
| 18 | |
| 19 | |
| 20 | ANDRE MURA<br>**GIBBS LAW GROUP, LLP**<br>1111 BROADWAY, SUITE 2100<br>OAKLAND, CA 94607<br>Telephone: 510-350-9717<br>amm@classlawgroup.com |
| 21 | |
| 22 | |
| 23 | EMMIE PAULOS<br>**LEVIN PAPANTONIO RAFFERTY**<br>316 SOUTH BAYLEN STREET, SUITE 600<br>PENSACOLA, FL 32502<br>Telephone: 850-435-7107<br>epaulos@levinlaw.com |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

|   |   |
|---|---|
| 1 | ROLAND TELLIS |
|   | DAVID FERNANDES |
| 2 | **BARON & BUDD, P.C.** |
|   | 15910 Ventura Boulevard, Suite 1600 |
| 3 | Encino, CA 91436 |
|   | Telephone:  (818) 839-2333 |
| 4 | Facsimile:  (818) 986-9698 |
|   | rtellis@baronbudd.com |
| 5 | dfernandes@baronbudd.com |

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone:  (818) 839-2333
Facsimile:  (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
PAIGE BOLDT
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com
pboldt@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone:  215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone:  205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone:  212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*