UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-md-03047-YGR <br><br> MDL No. 3047 |
| This Document Relates to: <br> All Actions | **ORDER RE DEFENDANTS' ADMINISTRATIVE MOTION PURSUANT TO CIVIL LOCAL RULE 7-11 FOR AMENDMENT OF DEADLINES AND OTHER RELIEF** <br><br> Re: Dkt. No. 743 |

Defendants move under Civil Local Rule 7-11, which permits a party to move for relief relating to miscellaneous administrative matters not otherwise governed by federal or local rules, for amendment of certain deadlines set forth in Case Management Order No. 10 (Dkt. No. 604) and other relief. (Dkt. No. 743.) Defendants' motion is **DENIED IN PART**.

According to defendants, plaintiffs failed to submit plaintiff fact sheets ("PFSs") by April 1, 2024, for 45 out of 233 bellwether-eligible personal injury cases (19%) and 13 out of 121 school district cases (10%). Principally, defendants argue that the Court in Case Management Order No. 10 advanced the PFS deadline for *all* cases to April 1, 2024. (Dkt. No. 604 at 1.)[1] This advancement, defendants argue, served to overwrite what plaintiffs call the "Large Volume Exception" in the Personal Injury ("PI") PFS Implementation Order, which provides that if a single law firm has 50 or more PFSs due on one day, they may choose to serve only 50 PFSs, advise defendants of the other cases with the same due date, and provide those remaining PFSs

---

[1] Case Management Order No. 10 provides that the PI and SD PFSs will be completed and served by April 1, 2024, and further explains: "This order hereby **ADVANCES** the deadline set for the PI plaintiffs in the implementation order. *See* Dkt. No. 596. Service of the Plaintiff Fact Sheets will be made pursuant to that order. *See id.* at 4–5." (Dkt. No. 604 at 1 & n.3.)

within 60 days (Dkt. No. 596 at 2).[2] Defendants point out that at least one firm, the Social Media Victims Law Firm, has taken the position that the Large Volume Exception remains in force. Following the PI PFS Implementation Order, that firm provided the PFSs for 50 of its cases on April 1, 2024, and notified defendants on April 2, 2024, that it will submit PFSs for its remaining 22 cases within 60 days. (Dkt. No. 743-10, Defs.' Ex. 9.)

Plaintiffs oppose defendants' characterization of most PFSs as untimely on several grounds. As to the PI PFSs, Plaintiffs argue that, under the most reasonable interpretation of Case Management Order No. 10, cases filed or transferred in after April 1 are not obligated to have filed a PFS by April 1, and advancing the PFS deadline to April 1 did not supersede the Large Volume Exception. Taken together, of the 45 PI PFSs defendants claim are untimely, plaintiffs assert that 8 of those cases were filed after the date of the PI PFS Implementation Order, and 20 fall under the so-called Large Volume Exception, leaving only 17 PI PFSs outstanding. Plaintiffs also note some plaintiffs who have failed to file PFSs may seek to dismiss their cases.

As to the School District ("SD") PFSs, plaintiffs note of the 13 missing, 12 are represented by two law firms, neither of which were aware of the April 1 deadline. They also note that the SD PFS Implementation Order was entered on March 27, five days before the April 1 deadline, that this was just before spring break for many schools, and that these firms are working quickly to serve PFSs.

Altogether, plaintiffs claim they nonetheless have a "robust" compliance rate of over 90% for both the PI and SD plaintiffs. Defendants proposed sanctions, plaintiffs argue, are thus unwarranted and punitive.[3]

---

[2] The text of that exception reads, in full: "In the event any single law firm has more than 50 Plaintiff Fact Sheets due on the same date, the firm shall serve on Defendants at least 50 Plaintiff Fact Sheets on the due date and provide notice to Defendants advising of the case names for cases with the same deadline. Plaintiffs shall serve an additional 50 Plaintiff Fact Sheets within 60 days of those submissions, and any additional Plaintiff Fact Sheets shall be served within 60 days of those submissions." (Dkt. No. 596 ¶ 2(b).)

[3] Plaintiffs close by requesting that the Court inquire into defendants' PFS deficiency-notice process. Plaintiffs catalogue (and letters between the parties' enclosed as exhibits elaborate in more detail) what plaintiffs claim are "patently baseless" and "frivolous" notices of deficiency from defendants. For example, defendants purportedly asserted one PFS was deficient for lack of

Defendants argue they are materially prejudiced in the bellwether-selection process without information on 19% of PI plaintiffs and 10% of SD plaintiffs, and request as relief an order that: (1) requires each Plaintiff who filed an action before March 1, 2024, but who did not submit a PFS by April 1, 2024, to do so within seven days from the entry of the Court's Order, subject to the dismissal of the action with prejudice; (2) extends Case Management Order No. 10's bellwether-selection deadline and all other case management deadlines by 14 days from the entry of the Court's Order; (3) reduces Plaintiffs' bellwether-discovery selections from six to five PI and SD cases; and (4) grants any other relief that the Court deems appropriate.

On the one hand, either party's interpretation of whether Case Management Order No. 10's advancement of the PFS deadline to April 1 supersedes the Large Volume Exception is plausible.[4] On the other hand, permitting use of the Large Volume Exception would incentivize any plaintiffs' firm with 50 or more cases to serve PFSs for its strongest 50 by April 1 and withhold its weakest remaining cases until after the conclusion of bellwether-selection briefing. To the extent feasible, the Court wishes to adhere closely to this MDL's already compressed discovery and trial schedule and, as defendants emphasize, preserve information parity among the parties.

However, the 22 PI cases for which a PFS has not been served under the Large Volume Exception constitute only roughly 10% of the PI cases—a not insignificant portion, but nonetheless a small subset. Otherwise, the remaining 9% of PI PFSs and 10% of SD PFSs have not been filed due to apparent (and, on first blush, largely inexcusable) inadvertence, which may serve as a detriment to both plaintiffs and defendants. The bellwether discovery pools will comprise, subject to Court discretion, 12 cases for each set of PI and SD pools, which constitutes roughly 5% and 10% of the currently filed PI and SD cases, respectively. Because the parties will have 81% of PI cases and 90% of SD cases to assemble the respective discovery pools, the Court

---

a death certificate for a plaintiff who is still alive. (Dkt. No. 746-2, Plfs.' Ex. A at 1.)

[4] Plaintiffs here point to Rule 37(d), which provides that sanctions may be warranted for a failure to cooperate in certain discovery "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3); *see also Hyde & Drath v. Baker*, 24 F.3d 1162, 1171–72 (9th Cir. 1994).

1  does not believe defendants are materially prejudiced as to warrant delay of the bellwether-
2  selection schedule.  Cases which have not filed PFSs are excluded from bellwether selection.
3  Defendants' motion is **DENIED IN PART**.
4      That said, plaintiffs requested the aggressive trial schedule and should have raised the
5  issues reflected herein proactively.  Accordingly, all outstanding fact sheets **SHALL** be filed no
6  later than **28 days** from the date of this Order. After defendants' review, and if necessary,
7  defendants may petition the Court to substitute, or add, to the bellwether selections.  Such petition
8  shall occur within **35 days** from the date of this Order.
9      This terminates Dkt. No. 743.
10      **IT IS SO ORDERED.**

12  Dated: April 10, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**