[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**JOINT STATUS REPORT ON DISCOVERY FOR APRIL 22, 2024, DISCOVERY MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>**Magistrate Judge: Hon. Peter H. Kang** |

Pursuant to Discovery Management Order No. 1 (ECF 503), the Personal Injury ("PI") and School District and Local Government Entity ("SD") Plaintiffs, State Attorneys General ("State AGs"), and Defendants submit this agenda and joint statement in advance of the April 22, 2024, Discovery Management Conference ("DMC").

I.      **Status of Discovery and Parties' Progress in Meeting Discovery Deadlines**

      A.      **Initial Disclosures (Follow-Up to Issues Raised at March DMC)**

            1.      *Submission of Plaintiff Fact Sheets*

On April 1, 2024, 186 PI Plaintiffs and 102 SD Plaintiffs submitted Plaintiff Fact Sheets ("PFSs") (which were incorporated by reference into the PI/SD Plaintiffs' initial disclosures), and have therefore supplemented their initial disclosures.  As for the PI and SD Plaintiffs who have not submitted

fact sheets, other than a limited number of Plaintiffs who intend on voluntarily dismissing their claims, they will do so in accordance with the Court's Order (ECF 748) and/or the PFS Implementation Order (ECF 596).

Defendants are currently evaluating Plaintiffs' PI/SD PFSs for compliance with the requirements of Rule 26(a).

### 2. Defendants' production of insurance policies

On April 5, 2024, Meta produced the relevant portions of the primary insurance policies in its possession that may provide coverage for the actions in this MDL.  Similarly, on April 5, 2024, Snap produced copies of its insurance policies that are responsive to this litigation.  TikTok has no relevant insurance policies and thus does not have any responsive insurance agreements.  YouTube is diligently working to assess whether any insurance policies are applicable to this litigation and has met and conferred with Plaintiffs regarding its planned disclosure of any such policies on a rolling basis.

### B. Plaintiffs' Requests for Production of Documents (RFPs) Served on Defendants

### 1. RFPs served by Plaintiffs

The PI/SD Plaintiffs have served 292 RFPs on Meta, and the State AGs have served 39 RFPs on Meta.

The PI/SD Plaintiffs have served 299 RFPs on TikTok.[1]

The PI/SD Plaintiffs have served 139 RFPs on Snap.

The PI/SD Plaintiffs have served 130 RFPs on YouTube.

### 2. Defendants' Responses and Objections (R&Os)

Meta has served R&Os to all sets (Sets 1-10) of the PI/SD Plaintiffs' RFPs.  Meta's R&Os to the State AGs' RFPs are due on April 22, 2024, and its R&Os to the PI/SD Plaintiffs' 11th Set are due on May 9, 2024.

---

[1] On April 5, 2024, Defendants ByteDance Ltd. and TikTok Ltd. waived any challenges in this MDL to personal jurisdiction based on the fact that they are not United States or California-based entities.  In response, the Plaintiffs withdrew without prejudice Plaintiffs' Request for Production of Documents Set 2 (RFP Set 2) which included 48 document requests (RFP nos. 76-124).

Snap has served R&Os to all of the PI/SD Plaintiffs' RFPs with the exception of set 8, which are due May 8, 2024. YouTube has served R&Os to all of the PI/SD Plaintiffs' RFPs with the exception of set 8, which are due May 9, 2024. TikTok has served R&Os to all of Plaintiffs' RFPs with the exception of sets 10, 11, 12, and 13 which are due on May 20, April 29, May 3, and May 6, respectively.

### 3. Status of document productions

All Defendants have begun producing documents in response to Plaintiffs' RFPs and will continue to make rolling productions of documents responsive to Plaintiffs' RFPs.

In addition to the approximately 49,000 documents it produced last year, Meta has produced 341 documents in response to the PI/SD Plaintiffs' requests for specifically-identified documents. Meta intends to make a significant production of custodial documents to Plaintiffs on or before May 21.

In addition to the roughly 17,000 documents it produced last year, TikTok has produced 573 documents in response to Plaintiffs' requests.

In addition to the 843 documents it produced in 2022 and 2023, Snap has produced 24 documents in response to a Rule 30(b)(6) deposition notice and 13 documents in response to Plaintiffs' RFPs

YouTube has produced 7,449 documents in response to Plaintiffs' RFPs.

### 4. Status of conferrals, including on custodians and search terms

The Parties have been meeting and conferring cooperatively on Plaintiffs' RFPs in an attempt to resolve their disputes without requiring the Court's assistance.

On March 27, Meta proposed 48 custodians (for the RFPs for which Meta has agreed to locate documents by running search terms over custodial collections), and has agreed to add 18 of Plaintiffs' proposed 52 additional custodians. Meta proposed search terms to Plaintiffs on April 5; as of April 12, Plaintiffs were preparing their counterproposal to Meta. In the meantime, Meta represents that it continues to make significant progress on custodial collections and that it has already begun reviewing custodial documents based on the application of its proposed search terms.

On April 1, TikTok provided a list of 19 proposed custodians as well as proposed search terms. On April 3, Plaintiffs proposed an additional 43 custodians that TikTok is investigating to determine whether it believes they should be added.

On April 8, Snap proposed a list of 15 custodians and search terms for all RFPs for which Snap has agreed to search for documents. Plaintiffs are assessing the sufficiency of these lists.

On April 8, YouTube provided Plaintiffs with (1) a list of 20 custodians; (2) proposed search terms; and (3) a list of data sources that may contain potentially relevant information. Plaintiffs are assessing the sufficiency of these lists.

**C.     Defendants' RFPs Served on Plaintiffs**

**1.     RFPs served by Meta on State AGs to date**

Meta served 45 RFPs on each of the 35 State AGs on February 27, 2024.

**2.     State AGs' R&Os**

The State AGs served their collective R&Os to Meta's RFPs on March 28, 2024.

**3.     Status of document productions**

The State AGs have not produced any documents to date.

**4.     Status of conferrals, including on custodians and search terms**

The State AGs and Meta are scheduling their first meet and confer regarding Meta's RFPs, and anticipate meeting and conferring early in the week of April 15.  While the State AGs believe that it is improper to propose custodians and search terms for state agencies that are not litigating against Meta until the Court resolves whether documents in the possession of those agencies must be produced in response to Meta's RFPs served on the State AGs, the State AGs have responded to Meta's RFPs on behalf of the State AGs.  Meta requested that the State AGs propose custodians and search terms by April 11, as Meta has already done with respect to the PI/SD Plaintiffs' RFPs on Meta.  The State AGs declined to do so until the Parties had met for the first time to confer regarding the scope of Meta's RFPs and what information Meta is seeking in order to provide meaningful proposals of custodians and search methodologies.  Meta will seek appropriate relief to the extent this delay prejudices Meta's ability to conduct the discovery it needs to prepare for trial.

### D.     Depositions

#### 1.     Scheduling of and conferrals re Plaintiffs' 30(b)(6) deposition notices

The Parties have continued conferring regarding Plaintiffs' initial Rule 30(b)(6) deposition notices and have scheduled a number of depositions.  Meta will present 30(b)(6) witnesses on April 23 and May 1, 2024.  YouTube will present an initial 30(b)(6) witness on April 29 and April 30, 2024. YouTube has suggested a date in mid-May to present a second 30(b)(6) witness on certain ESI Topics. TikTok will present 30(b)(6) witnesses on May 2, May 7, and May 9, 2024.  Snap will present a 30(b)(6) witness on May 1, 2024.

The Parties present certain ripe and unripe disputes related to these depositions in Sections II and III of this statement.  The Parties disagree as to the ripeness of certain other disputes as outlined in Section IV of this statement.

For the avoidance of doubt, the foregoing 30(b)(6) depositions cover only an initial set of preliminary topics; Plaintiffs have reserved the right to serve comprehensive 30(b)(6) notices later in the litigation.

#### 2.     Plaintiffs' Notices of Anticipated Depositions to Meta

On March 22, Plaintiffs identified twelve current or former Meta employees whom they anticipate deposing.  Pursuant to this Court's March 20, 2024 order (ECF 700 at 3), the custodial files of these employees shall be produced to Plaintiffs on or before May 21, 2024.  On March 28, Plaintiffs supplemented this list with three additional employees.  Pursuant to the Court's March 20, 2024 order (ECF 700 at 3), the custodial files of these employees shall be produced to Plaintiffs on or before May 27, 2024.  The Parties had an initial meet-and-confer regarding deposition scheduling on April 2.

Meta is working to collect for review potentially relevant custodial materials associated with these fifteen witnesses, including Emails and Workplace Chats and other custodial data sources.  With respect to these other types of custodial data sources, however, Meta can reasonably foresee that, for certain custodians, Meta will likely require more than 60 days to collect, process, review, and produce the responsive and non-privileged custodial material from these other custodial data sources.  For example, data collected for any given custodian from these other sources can, depending on the size,

take longer to collect and process.  To account for these issues, Meta plans to make a proposal to Plaintiffs for a phased production of custodial materials, which should not prejudice Plaintiffs' ability to prepare for depositions.  Plaintiffs reserve their rights in this regard, including their right to object to any phasing proposal that Defendants may offer and their right to challenge Meta's claim that there is sufficient justification to provide any relief to Meta from the Court's requirement that custodial files be produced within 60 days.

In agreeing to produce responsive, non-privileged custodial and other files for these anticipated deponents, Meta is not agreeing that any is the proper subject of a deposition and reserves the right to object to such deposition and/or to limit the deposition to fewer than 12 hours, particularly for apex custodians.  Plaintiffs reserve their rights in this regard and observe that, to date, Meta has offered no basis to challenge the propriety of deposing any individual actually identified for deposition by Plaintiffs.  Meta has informed Plaintiffs that in the future it intends to raise such challenges and the basis therefor.

The Parties address below (in Section II.D) a dispute regarding the submission of the Joint Deposition Status Chart.

### 3.     Meta Depositions Noticed in Related Actions and Cross-Noticing

On March 15, the Tennessee AG (which is not participating in the MDL) noticed the depositions of three current or former employees in litigation that the AG has filed in Tennessee State court. Pursuant to the deposition protocol, Meta informed the PI/SD Plaintiffs of these depositions on March 25, and informed the State AGs of these depositions on March 28.[2]  On March 27, the Tennessee AG re-noticed those depositions for later dates and noticed 29 additional depositions (for a total of 32 depositions) of current and former Meta employees.  In accordance with the deposition protocol, Meta informed the PI/SD Plaintiffs and MDL AGs of these depositions on April 1.  These depositions are presently noticed to take place in the Tennessee AG state court action between July 9 and December 12, 2024.

---

[2] On March 28, it was brought to Meta's attention that the State AG listserv was not included on Meta's e-mail.  Such omission was inadvertent, and Meta immediately corrected this mistake.

The PI/SD and State AG Plaintiffs have not yet identified whether they intend to cross-notice the foregoing depositions and will do so consistent with the twenty-one day period set forth in the Court's March 20, 2024 order (ECF 700 at 2).  Per that twenty-one day deadline, the PI/SD Plaintiffs have until April 15 and the State AGs have until April 18, 2024 to identify whether they will cross-notice the deponents noticed by the Tennessee AG on March 15. The PI/SD and State AGs will have until April 22 to identify whether they will cross-notice the additional deponents noticed by the Tennessee AG on March 27.

The Parties have agreed to defer discussing the scheduling of depositions of the MDL Plaintiffs' anticipated deponents that were also noticed by the Tennessee AG, for the most part, until after Meta has met and conferred with the Tennessee AG about its objections to the Tennessee AG's deposition notices, and until after MDL Plaintiffs have determined which, if any, of those depositions noticed by the TN AG that they will cross-notice in this action.

### 4.    Plaintiffs' Notices of Anticipated Depositions to Other Defendants

On April 3, Plaintiffs identified fourteen former and current TikTok employees whom they anticipate deposing.  TikTok is still assessing that list and anticipates meeting and conferring with Plaintiffs on the same.

On April 5, Plaintiffs identified seven current or former Snap employees whom they anticipate deposing.  Snap is still assessing that list and anticipates meeting and conferring with Plaintiffs on the same.

On April 5, Plaintiffs identified five current or former YouTube employees whom they anticipate deposing.  YouTube is still assessing the list and anticipates meeting and conferring with Plaintiffs.

### E.    Meta's Written Responses to AG CIDs and Custodian List

On March 8, 2024, the PI/SD Plaintiffs asked "for Meta's consent for the States Attorney General to share with [the PI /SD Plaintiffs] copies of Meta's responses to interrogatories and demand for statements under oath served as part of the States Attorney General's pre-complaint investigation, including lists of custodians."  Meta will agree to provide the PI/SD Plaintiffs with copies of the relevant portions of its narrative responses (responsive to the issues raised in this litigation) previously provided

to the State AGs.  Meta will also provide Plaintiffs with a list of the production custodians previously disclosed to the State AGs.  This list is distinct from Meta's legal hold list, which, as noted below, Meta will not produce.

## II.    Ripe Discovery Disputes

### A.    Discovery of State Agencies

On April 1, pursuant to Discovery Management Order Nos. 3 &4 (ECF 667 & 716), the Meta Defendants and State AGs filed supplemental briefs regarding discovery of the agencies identified in the Joint Submission Regarding State Agencies.  Pursuant to Discovery Management Order No. 4, the Parties await the Court's guidance regarding whether additional oral argument is needed, or whether the Parties should be prepared to discuss the issue at the next DMC or otherwise.

### B.    Meta's Objections to Plaintiffs' Challenges to Confidentiality Designations

PI/SD Plaintiffs' Position:

On April 3, the PI/SD Plaintiffs sent Meta a letter challenging the Highly Confidential designation Meta has applied to thirty-four documents and the Confidential designation it applied to one document, pursuant to the procedure set forth in Section 6 of the Protective Order.  *See* ECF 665, at 9-10.  The Protective Order states that "Any Party or Non-Party may challenge a designation of confidentiality at any time."  *Id.* § 6.1.  Plaintiffs' April 3 confidentiality challenges raise meritorious issues of Meta's apparent violation of the Protective Order, because dozens of Meta's Highly Confidential documents identified in the letter were made public previously, fully or in part.  *See* Protective Order, §§ 3.2(a), 5.1, 5.5(a).  The "burden of persuasion" in these challenges is on Meta, as the Designating Party.  § 6.4.  Meta must meet and confer with Plaintiffs regarding these confidentiality challenges within fourteen days, by April 17 (§ 6.2), but Meta is now resisting the process to which it previously agreed.

Meta's productions to date show an alarming pattern of over-designation.  Of the 49,275 documents that Meta has produced, a staggering 36,493, *74% of the total*, are marked Highly Confidential.  Another 9,333, 19% of the total, are marked Confidential.  The Protective Order prohibits "[m]ass, indiscriminate, or routinized designations" and calls for sanctions for designations "that are

shown to be clearly unjustified or that have been made for an improper purpose . . . ."  § 5.2.  These statistics indicate that Meta is heeding neither the Protective Order nor the Court's guidance to be judicious with confidentiality designations.  Hr'g Tr. 40:20-23 (Dec. 14, 2023) (Kang, J.).  They are also inconsistent with Meta's agreement to re-designate its prior productions (provisionally treated as Highly Confidential pending entry of a Protective Order), which should have led to a substantial reduction in confidentiality designations.

Meta takes the position that challenges to confidentiality designations should be limited to the context of motions to seal. But no such restriction appears in the Protective Order, and such a restriction would only serve to incentivize over-designation and make disputes accumulate and thus become more burdensome.  Meta cites Judge Hixson's prior guidance on confidentiality designations but that guidance was with respect to *non-parties* having the ability to challenge designations. *See* Hr'g Tr. 21:1-22 (Apr. 10, 2024) (Hixson, J.); *see also* Hr'g Tr. 40:20-23 (Dec. 14, 2023) (Kang, J.) (advising producing parties to be judicious on confidentiality designations). Meta's request to suspend the operation of the Protective Oder by disallowing challenges to improper designations in the normal course would create a blanket shield for over-designation. It would prejudice Plaintiffs by delaying resolution of disputes that may reform designations going forward and that will otherwise inefficiently accumulate. Meta's position should be rejected.

Meta's Position:

On April 3, Plaintiffs sent Meta a letter challenging in a vacuum (i.e., not in connection with a motion to seal or other intended use of the document) the confidentiality of 35 documents designated by Meta as either "Confidential" or "Highly Confidential (Competitor)" under the Protective Order.  This approach to confidentiality challenges not only is inefficient, but also disregards the prior directive of this Court (Hixson, J.) that "reviewing confidentiality designations separate from motions to seal" would not be "a good use of the Court's time."  *See* Apr. 10, 2023 Hr'g Tr. 21:7-10.[3]  The Parties are now on an accelerated timeline to complete discovery, at Plaintiffs' request.  Bogging discovery down with

---

[3] While the Court's guidance was given in the context of non-party confidentiality disputes, this principle applies equally in this context.

piecemeal confidentiality challenges for documents Plaintiffs may not even use in this litigation is not an efficient use of anyone's time or resources, including the Court's.  To defend its confidentiality designations, Meta would have to submit briefing and employee declarations justifying the potential harms should the confidential material be made public.  *See* Section VII of Magistrate Judge Kang's Civil Standing Order; JN.D. Cal. L.R. 79-5(c).  This is an arduous and time-consuming process that detracts from the more important work of collecting and producing the massive volumes of documents Plaintiffs have requested on an accelerated timeline—some of which need to be produced within 60 days of Plaintiffs' identifying the custodian as an anticipated deponent.  Meta is of course prepared to litigate its confidentiality challenges in the context of specific disputes involving the documents it has produced in this litigation, but it is premature and would be inefficient to require it to do so now, outside the context of a motion to seal a document for a specific use in the litigation.

Contrary to Plaintiffs' assertion, Meta is not "resisting the process to which it previously agreed" under the Protective Order.  As Meta has informed Plaintiffs, it intends to follow the process outlined in the Protective Order, and has already reached out to Plaintiffs to schedule a meet-and-confer.  Meta simply seeks, in the meantime, guidance from the Court as to whether confidentiality challenges in this context—completely divorced from any intended use of the documents in the litigation, or motion to seal—are proper, considering the accelerated discovery timeline the Parties are now on.  As part of the meet-and-confer process, Meta will consider in good faith Plaintiffs' arguments for why certain documents should be de-designated (and will agree to de-designate them if there is a valid basis to do so), but should not then have to litigate the designations they wish to maintain (unless, as noted, there is a particular need to use the document in the litigation).

Plaintiffs' assertion that "dozens of Meta's Highly Confidential documents identified in the letter were made public previously, fully or in part," however, is misleading.  While Meta previously agreed that *very short excerpts* from certain documents that Plaintiffs excerpted in their Master Complaint could be made public, that does not mean Meta's confidentiality assertions as to *the rest of the document* are invalid.

Finally, it is not "alarming" that 75% of Meta's documents have been marked Highly Confidential given that Plaintiffs' claims put at issue some of the most competitively sensitive design features of the platforms of four defendant groups that are competitors of one another, and that many documents concern many non-public details of Meta's systems for helping prevent child exploitation. Additionally, the fact that Meta's productions contain a mix of Highly Confidential, Confidential, and Not Confidential documents is evidence in and of itself that it did not make designations on a blanket basis. Meta has applied and will continue to apply confidentiality designations in good faith.

### C.   Plaintiffs' Demand that Defendants Identify Individuals Placed on Litigation Hold

<u>PI/SD Plaintiffs' Position:</u>

Through discovery requests made to Meta and 30(b)(6) topics 8 and 9 propounded to all Defendants, the PI/SD Plaintiffs seek information about which employees of Defendants received litigation holds related to this action as an efficient way of ascertaining who is likely to possess relevant information. It is well established that "basic details" about litigation holds are discoverable, "including 'when and to whom the litigation hold notices were given.'" *Doe LS 340 v. Uber Techs., Inc.*, 2024 WL 107929, at *3 (N.D. Cal. Jan. 9, 2024) (quoting *Thomas v. Cricket Wireless*, LLC, 2020 WL 7344742, at *3 (N.D. Cal. Dec. 14, 2020)); *see also Thomas*, 2020 WL 7344742 at *3 (other discoverable information includes "what kinds and categories of information and data" employees "were instructed to preserve and collect" and "what specific actions they were instructed to take to that end.").

Defendants' arguments miss the mark.[4]

*First*, Defendants' arguments target a straw man. Through the meet and confer process, Plaintiffs have narrowed topics 8 and 9 to make clear that only the *names and titles* of individuals placed on a litigation hold, and the *dates* of those holds, are sought through these topics—and, further, that Plaintiffs would agree to accept this information in the form of a list rather than via deposition testimony. Given

---

[4] PI/SD Plaintiffs requested that this issue be presented to the Court via a joint discovery letter, pursuant to the Court's Standing Order for Discovery in Civil Cases. Defendants refused to agree. Plaintiffs request the Court's guidance on how it would prefer disputed issues to be presented going forward.

this narrowing, Defendants' case law concerning the work product protections that apply to *other* information (such as "litigation hold *topics*" and the "*scope* of litigation holds") is simply irrelevant.

**Second**, Defendants advance no compelling argument in logic or precedent why the simple list of basic information requested by Plaintiffs is protected either by the work product protection or attorney client privilege. It is well-established that a list of custodians used by a party for the purposes of ESI collection is not protected work product. *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *2 (N.D. Cal. May 9, 2013) ("During their meetings, Google maintained that its search terms and choice of custodians were privileged under the work-product immunity doctrine, an argument it has abandoned no doubt in part because case law suggests otherwise."); *Price v. Facebook, Inc.*, No. 18-MD-02843-VC (JSC), 2020 WL 13200227, at *1 (N.D. Cal. Apr. 2, 2020). There is no reason why a list of individuals placed on litigation hold should be treated any differently, and in fact it is not.

The recent case *Doe LS 340 v. Uber Techs., Inc.* is directly on point. There, Judge Cisneros held that, while Plaintiffs *are not* entitled to "probe into what exactly Uber's employees were told by its attorneys through the litigation holds," they *are* entitled to "the names and titles of the persons notified of the litigation hold and the dates of such notifications," which "are not protected by the attorney-client privilege and the work product doctrine." 2024 WL 107929, at *3 (cleaned up). Defendants struggle to distinguish this case as one limited to the context of a dispute over preservation but nothing about the Court's reasoning or holding is so limited. Nor are other cases limited to the narrow context suggested by Defendants. *See, e.g.*, *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) ("[T]his Court has previously recognized that discovery regarding the circumstances of a company's litigation hold is not privileged, even if the hold memo itself is privileged."); *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *3 (N.D. Cal. Oct. 2, 2007) (requiring eBay to "provide a list of names and job titles of the approximately 600 employees" who received document retention notices ("DRNs") and holding that "eBay has not shown that the *identities* of the approximately 600 employees receiving the DRNs are privileged or subject to work product protection" (emphasis in original)).

Notably, at least one court in this Circuit has directly addressed the very specific issue of whether a 30(b)(6) deposition can proceed on the topic of litigation holds and determined that it can, subject to the limitations Plaintiffs agree to here:

> Defendants' assertion that the Notice's first topic regarding litigation hold is overbroad is not well founded. Plaintiffs represent that they're not interested in the actual attorney-client communication; nor will a summary of defendants' general litigation hold practices suffice. Rather, plaintiffs seek answers concerning what has actually happened in this case, i.e., when and to whom the litigation hold letter was given, what kinds and categories of ESI were included in defendants' litigation hold letter, and what specific actions defendants' employees were instructed to take to that end. Although the letters themselves may be privileged, the basic details surrounding the litigation hold are not. These requests are reasonable and may ultimately benefit defendants if questions ever arise concerning defendants efforts to preserve relevant ESI.

*Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068-PMP, 2011 WL 3495987, at *3 (D. Nev. Aug. 10, 2011).

**Third**, Defendants fail to explain how the information they have otherwise shared with the PI/SD Plaintiffs obviates the need for the list of individuals placed on litigation hold. Defendants begin by asserting that they have proceeded "reasonably, cooperatively, and transparently" in discovery. Holding aside whether PI/SD Plaintiffs agree with that assertion, what matters is whether Plaintiffs have been given a fair opportunity to test it. Defendants note that they have identified "48 custodians from Meta, 19 from TikTok, 15 from Snap, and 20 from YouTube," but those numbers say nothing about how many custodians *should* have been identified. The litigation hold list would quickly and easily allow Plaintiffs to better understand that issue. Consider how different the situation would look if Meta has placed 50 individuals on litigation hold versus 5,000 individuals. In the former situation, Meta's identification of 48 custodians would look presumptively reasonable, whereas in the latter situation it would look patently unreasonable and invite further interrogation.[5] That issue is heightened with respect to the other three Defendants who have identified far fewer custodians than Meta. There is no ex ante reason to

---

[5] Notably, Meta has a history in this Court of under-identifying custodians. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021) (holding that Zuckerberg and Sandberg were "key decision makers" who should have been identified as custodians).

2976793.22

believe that only 15 individuals at Snap (a company that employees over 5,000) are in possession, custody, or control of potentially relevant information to this lawsuit.

Nor does it assist Defendants' cause to insist that Plaintiffs have other ways of identifying custodians. Defendants should not put Plaintiffs in the position of being the proverbial pig hunting for the truffle. The size of these Defendants is vast. (Meta, for example, currently employs more than 60,000 employees and at times has had more than 80,000.) And Plaintiffs have come to learn that at least some Defendants rely on staffing employees to individual and constantly shifting projects rather than fixed teams. That makes it practically impossible for Plaintiffs to determine who the right list of custodians might be and assess whether they are likely to hold information that cannot be otherwise obtained. More than a year into this litigation, Plaintiffs still have not been able to determine the members, leadership structure, or roles of many teams that directly dealt with child safety issues, and Meta for one has maintained that it cannot produce any form of organizational chart that might assist in this process, other than reporting-line information for a limited set of custodian from whom documents will be collected. Defendants' refusal to release the full list of employees who received litigation holds, that is the employees who Defendants have already identified as possessing potentially relevant information, fundamentally impairs Plaintiffs' ability to make the threshold showing that would be required to compel production from additional custodians. *See In re Facebook, Inc.*, 2021 WL 10282213, at *1 ("Compel[ling] the designation of additional custodians requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated.").

*Finally*, when Defendants' out-of-context quotes are examined in context, their cited case law is readily distinguishable. In *Shenwick v. Twitter*, Plaintiffs sought the actual preservation notices themselves. The full quote (with the portion omitted by Defendants in underline) reads: "<u>Defendants are correct that preservation notices,</u> if prepared by counsel and directed to the client, are protected by the attorney-client privilege." 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018). Here, Plaintiffs do not request the preservation notices themselves, rendering *Shenwick* inapposite. In *Crocs v. Effervescent*, the requesting party likewise sought the actual "content" of the litigation holds, which is again far more

information (and much more clearly protected information) than Plaintiffs seek here.  2017 WL 1325344 at *7 (D. Colo. Jan. 3, 2017). As for *Watkins v. Hireright, Inc.*, No. 13CV1432-MMA BLM, 2013 WL 10448882, at *3 (S.D. Cal. Nov. 18, 2013), that case does not even concern litigation holds or preservation notices and is therefore uninformative.

Defendants' only helpful authority is *RG Abrams*, a case from the Central District of California that attempted to distinguish away the holdings in *eBay* and *Cannata*. All three cases are district court cases and therefore of equal precedential value to this Court. But unlike *RG Abrams*, the logic, reasoning, and holding of *eBay* and *Cannata* have been affirmed just months ago by another Magistrate in this Court, *see Uber*, 2024 WL 107929, at *3, and as such are the more persuasive line of authority.

<u>Defendants' Position:</u>[6]

Plaintiffs' request for 30(b)(6) deposition testimony regarding Defendants' litigation hold practices seeks privileged information and improper "discovery on discovery," which "is not permissible" absent a showing of good cause.  *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 10312431, at *11, 13 (C.D. Cal. Dec. 22, 2021); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) (information regarding a party's litigation holds, "if prepared by counsel and directed to the client, are protected by the attorney-client privilege."); *Watkins v. Hireright, Inc.*, 2013 WL 10448882, at *3 (S.D. Cal. Nov. 18, 2013) (denying 30(b)(6) deposition testimony regarding defendant's "efforts to date to preserve electronic data upon learning of the pendency of this lawsuit"). Even if Plaintiffs' requests were limited to names, titles, and dates, as they now represent,[7] that is still protected information.  Attorneys have managed Defendants' custodian legal hold identification processes for this and related matters—which has included both making and analyzing the selection of

---

[6] Defendants did not "refuse" to present this issue via a joint discovery letter.  Plaintiffs asked that this issue be presented as a "ripe" dispute in this DMC Statement, and Defendants agreed.

[7] Plaintiffs' assertion about the scope of the testimony they are seeking is not accurate.  Deposition Topic 9 and accompanying RFP No. 6 explicitly seeks testimony regarding not only the recipients of litigation holds and dates, but also the *contents of the litigation hold notices*, the *"time period" covered by the hold*, the *"specific actions" employees are instructed to take*——and production of the litigation hold notices themselves.  Moreover, the compromise Plaintiffs have articulated herein has not, in fact, been offered to all Defendants.

individuals to add to the legal holds.  Thus, both the hold notices themselves and the names of individual recipients, is protected attorney work product.

Plaintiffs' demand also constitutes improper discovery on discovery, and courts have routinely denied motions to compel deposition testimony or documents on these specific topics.  *See, e.g.*, *RG Abrams Ins.*, 2021 WL 10312431, at \*11, 13 (denying 30(b)(6) deposition testimony regarding "***whether and when Defendants received litigation hold notices***" (emphasis added)); *PersonalWeb Techs., LLC v. Google Inc.*, 2014 WL 4088201, at \*3-4 (N.D. Cal. Aug. 19, 2014) (denying discovery into "***all dates*** [litigation holds] were circulated and ***the recipients of such notices***" (emphasis added)).

Plaintiffs' discussion of *Crocs v. Effervescent* is inaccurate.  2017 WL 1325344, at \*8 (D. Colo. Jan. 3, 2017), *aff'd*, 2017 WL 1325171 (D. Colo. Feb. 24, 2017).  *Crocs'* holding was not limited to the "the actual 'content' of the litigation holds," which Plaintiffs concede is "clearly protected information." *Crocs* also denied testimony into many litigation-hold topics, including the defendant's *employees' identities and titles*, which it found to be categorically "irrelevant … and not 'proportional to the needs of the case.'"  *Id.* at \*2.

In addition to being wrong on the law, Plaintiffs' arguments that they need testimony regarding litigation hold information is misplaced.  Defendants have proceeded reasonably, cooperatively, and transparently, in full compliance with their discovery obligations.  As a result, Plaintiffs already have extensive information regarding potentially relevant individuals at their disposal from other discovery in this case as well as publicly available materials.

To start, Defendants have identified to Plaintiffs custodians whom Defendants believe are the individuals most likely to possess relevant information, and from whom Defendants have begun the process of collecting custodial documents (48 custodians from Meta,[8] 19 from TikTok, 15 from Snap, and 20 from YouTube).  For their part, Plaintiffs have since proposed 52 additional or substitute custodians for Meta's consideration, and 43 additional custodians for the TikTok Defendants' consideration.  Meta and TikTok are investigating these proposed custodians from Plaintiffs in terms of

---

[8] Meta notes that it included a number of senior executives and even apex custodians on its proposed custodian list, including Mark Zuckerberg.

the subject areas about which they might be expected to have information, and the degree to which that information might be additive, rather than cumulative, of the information possessed by the already-identified custodians; and in the spirit of compromise, Meta has agreed to add 18 of Plaintiffs' proposed additional custodians.  In parallel, Plaintiffs have identified numerous priority witnesses they would like to depose from each Defendant (15 from Meta, 14 from TikTok, 7 from Snap, and 5 from YouTube), from whom Defendants have also begun to collect custodial documents, while, in some cases, reserving rights to challenge their inclusion as custodians and/or deponents.[9]

The fact that Plaintiffs have been able to quickly identify scores of additional or substitute proposed custodians—albeit custodians whose files may largely be duplicative of others' Defendants have already selected—is not surprising.  For example, Meta has already produced nearly 50,000 documents in this matter, which are authored by, sent to, or mention numerous Meta executives and employees.  Likewise, Plaintiffs have more than 17,000 documents from the TikTok Defendants and approximately 900 documents from Snap with the same kind of information allowing them to identify custodians.  In the coming months, Plaintiffs will be receiving significant volumes of documents from all of the Defendants.  And YouTube has now produced 7,449 documents.

Plaintiffs are also receiving information about relevant custodians from 30(b)(6) topics.  For example, Plaintiffs have conducted two Rule 30(b)(6) depositions of Snap witnesses, during which they asked numerous questions about various Snap employees and systems.  And Plaintiffs have noticed 30(b)(6) topics related to each Defendant's corporate structure and thus will soon be receiving additional documents or testimony that will enable them to identify—to the extent they do not already have abundantly sufficient information to do so—additional relevant custodians, if any.[10]  YouTube has

---

[9] YouTube is still assessing the potential relevance of the individuals that Plaintiffs have identified, which includes its co-founder who has not worked at the company for over almost 15 years, and it intends to meet and confer with Plaintiffs regarding their list of witnesses.

[10] Plaintiffs assert that Meta "has maintained that it cannot produce any form of organizational chart that might assist in this process, other than reporting-line information for a limited set of custodian from whom documents will be collected."  This assertion is inaccurate and misleading on numerous levels, and for that reason Meta asked Plaintiffs to remove it, but they refused.

similarly committed to provide Plaintiffs 30(b)(6) testimony on April 29 regarding the "teams" and "leaders" "responsible for" an extensive list of features and functions at issue in this case.

On top of this, Defendants are providing information to Plaintiffs through the ESI meet-and-confer process—such as job titles and descriptions—that will permit Plaintiffs to assess and engage in meaningful dialogue regarding what additional custodians they believe are relevant and proportionate to the case.  In light of all of this information Plaintiffs already have and will have, plus the names identified in Plaintiffs' complaints and that are publicly available, Plaintiffs cannot credibly show that they have a "substantial need" for Defendants' litigation hold lists to prepare their case, and "cannot, without undue hardship, obtain [the] substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Without such a showing, Plaintiffs cannot overcome the work product protections which presumptively place Defendants' litigation hold list beyond the reach of discovery.  *See, e.g.*, *In re Google TRB Consumer Priv. Litig.*, 2023 WL 5836816, at *6 (N.D. Cal. Sept. 8, 2023) ("Plaintiffs overreach" in seeking testimony regarding, among other topics, the "scope of litigation holds," the information employees were instructed to preserve, and "the time period of" preservation, where the only goal was to "'ascertain whether' [defendant] failed to preserve or destroy relevant evidence' and there was no evidence to support plaintiff's suspicions"); *Franck v. New York Health Care Inc.*, 2022 WL 471333, at *2 (S.D.N.Y., 2022) ("discovery into litigation holds with the sole purpose of assistance into the identification of ESI custodians is not necessary when such information can easily be obtained and determined in another cooperative manner").

Plaintiffs' initially-stated motivation for requesting these litigation hold lists "as an efficient way of ascertaining who is likely to possess relevant information," is unsupported logically and legally. Such a list is irrelevant to the custodial selection process given that a party quite reasonably could err on the side of caution and place litigation holds on the files of a much broader set of individuals than would reasonably be selected as custodians.  Moreover, as noted above, the Parties here are already engaged in meaningful conversations about an appropriate set of document custodians without Defendants' having produced a list of all of its litigation hold recipients.  Each Defendant has done what the law requires it to do as a producing party: "***select*** the custodians ***it deems most likely*** to possess responsive ESI and

search their electronic records" and "***tell*** [the requesting party] which custodians and search terms ***it used***." *Emerson v. Iron Mt. Info. Mgmt. Servs.*, 2021 WL 8085488, at *1 (N.D. Cal. Sep. 2, 2021) (emphasis added).

Plaintiffs apparently seek to learn how many Defendant employees have been issued litigation hold notices to compare that number to the number of identified custodians, and then to argue that any significant delta is evidence of too few custodians. To that end, Plaintiffs preview that if Meta issued litigation hold notices to 50 employees, that could signal that 48 custodians is reasonable, whereas if Meta issued litigation hold notices to 5,000 employees, that would be probative evidence that 48 custodians is too few. But the purpose of a litigation hold is to avoid any possibility of spoliation; and cautious lawyers could very well issue such notices broadly. They should not be disincentivized to do so, by Plaintiffs or this Court, for fear that the list of recipients of a broadly-distributed notice will have to be disclosed, and will result in significantly increased and off-course discovery demands.

Plaintiffs cite *Doe LS 340 v. Uber Technologies Inc.*, 2024 WL 107929, at *3 (N.D. Cal. Jan. 9, 2024), in support of their request, but Plaintiffs' reliance is misplaced. In *Uber*, the plaintiffs alleged that Uber was not meeting its document preservation obligations under the court's protective order. *See* Plaintiffs' Motion to Enforce PTO No. 2 and to Compel Defendants to Produce Litigation Hold and Preservation Information, ECF 159 at 3. Thus the *Uber* plaintiffs requested, and the court ultimately granted, an order requiring Uber to disclose the identities of each of its litigation hold recipients in a situation where preservation was at issue, unlike here. *See also City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223947 (C.D. Cal. Oct. 6, 2011) ("The content of litigation hold letters is protected by the attorney-client and work product privileges. However, courts have allowed the disclosure of litigation hold instructions where the court *makes a preliminary finding of potential document spoliation*." (emphasis added)).

Similarly, in *Cohen v. Trump*, cited by Plaintiffs, the court in a prior decision had permitted limited discovery concerning a litigation hold *based on potential spoliation questions*. *See Cohen v. Trump*, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) ("On December 23, 2012, this Court issued a Discovery Order in Makaeff, partially in response to Plaintiffs' claim that Defendants had failed to

produce all relevant documents within their possession, custody, and control, and that Defendants' litigation hold was untimely and insufficient.").  In *Cannata v. Wyndham Worldwide Corp.*, 2011 WL 3495987, at *3 (D. Nev. Aug. 10, 2011), there likewise was a concern "whether defendants disabled all automatic deletions once the litigation hold was in place."  Plaintiffs' citations to *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163 (N.D. Cal. May 9, 2013) and *Price v. Facebook, Inc.*, 2020 WL 13200227 (N.D. Cal. Apr. 2, 2020) are off-point because those cases involved disclosures of custodians and search terms, which Defendants here are disclosing, not lists of litigation hold recipients.

Here there has been no showing (or allegation) that Defendants have failed to preserve their internal documents, so the disclosure of the identities of their litigation hold recipients is not warranted. Information regarding the litigation hold recipients is therefore improper "discovery on discovery."  *See, e.g.*, *RG Abrams Ins.*, 2021 WL 10312431, at *12 (holding that depositions regarding litigation hold information were irrelevant absent showing spoliation; "Plaintiffs appear to seek the Litigation Hold Information to determine if Defendants have satisfied their preservation obligations—that is, whether a litigation hold notice issued, whether Defendants received it, the types of ESI Defendants were instructed to preserve.  However, 'discovery on discovery,' as this type of discovery is known, generally is disfavored and not allowed."); *PersonalWeb Techs., LLC*, 2014 WL 4088201, at *3-4 .

### D.  Submission of Joint Deposition Status Chart

In the deposition protocol, this Court ordered the Parties to submit as an exhibit to each monthly DMC Statement a Joint Deposition Status Chart identifying the names (including titles, affiliations, last known contact information, and other such identifying information, to the extent known by the listing Party) of each individual witness anticipated to be deposed by a Party in the case.  ECF 742.  Defendants have asked Plaintiffs to agree that the Chart shall be submitted by email to this Court's Chambers rather than filed publicly on the docket; Plaintiffs do not agree.  The Parties seek the Court's resolution of this dispute; their position statements are set forth below.

Defendants' Position:

Before submission of this Statement, Defendants conferred with Plaintiffs regarding whether the Parties could submit the monthly lists of anticipated deponents to Chambers via email, rather than via

filing on the public docket.  The filing of lists of anticipated deponents is administrative in nature, used for discovery purposes, and does not go to the merits of the case.  There is no public right of access for this material, which may include individuals' "last known contact information" (Dkt. 742 at 12), and Defendants need only demonstrate "good cause" for sealing or redacting the information at issue.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097, 1101 (9th Cir. 2016).

There is good cause to protect the identity and privacy of non-party, private individuals (current/former employees of Defendants) from unwanted press inquiry and possible harassment given the sensitivity of the issues involved.  *See In re Volkswagen "Clean Diesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 13268668, at *3 (N.D. Cal. Sept. 13, 2019) (allowing the redaction of names and job titles of employees who are nonparties to "help protect nonparty privacy rights"); *see also Music Grp. Macao Commercial Offshore Ltd. v. Foote*, 2015 WL 3993147, at *2 (N.D. Cal. June 30, 2015) ("Disclosure of [identifying] information would infringe the privacy rights of [third-party individuals], which constitutes a compelling reason for sealing."); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015) (noting that "invasion of third parties' privacy" constitutes a compelling reason to file under seal).

That is especially true because, at this stage, these are only individuals who *may or may not* be deposed, and so may have their personal information injected into the public record despite never sitting for a deposition.  Conversely, there is no legitimate interest in Plaintiffs' identifying such individuals on the public docket merely because Plaintiffs have unilaterally decided to identify them for depositions in these proceedings (which itself is subject of ongoing meet and confer); and service of potential deponent names without filing is consistent with the Court's handling of witnesses identified via initial disclosures pursuant to Rule 26(a).  Indeed, Judge Gonzalez Rogers has already granted multiple requests to seal non-party employee names in the operative complaints in this case (which are subject to a higher standard for sealing than here), and has elsewhere held that "[e]mployees and former employees who are not parties to this litigation have privacy interests in their personnel information, and in other sensitive identifying information."  *Murphy v. Kavo Am. Corp.*, 2012 WL 1497489, at *1 (N.D. Cal. Apr. 27, 2012) (granting motion to seal "employee-identifying information") (Gonzalez Rogers, J.).  Defendants

would, of course, reciprocate and not publicly file the personal information of Plaintiffs' family members, friends, physicians, teachers, counselors, etc., when it comes time to identify those potential deponents. Plaintiffs, however, have refused and insist on identifying the names of potential deponents for public consumption without rational justification for doing so.

      Plaintiffs' Position:

      The Court should deny Defendants' extraordinary and unjustified sealing request. The Court ordered the Parties to attach to their monthly public Discovery Management Conference Statements "a Joint Deposition Status Chart" that includes "the names (including titles, affiliations, last known contact information, and other such identifying information) of each individual witness to be deposed by a Party in this case." ECF No. 700 at 2–3. Despite the "strong presumption in favor of access to court records," *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), Defendants seek to seal these Court-ordered Joint Deposition Status Charts. Defendants have not come close to bearing their burden of demonstrating that "*specific* prejudice or harm will result" if these Charts are filed on the public docket and thus that there is "good cause" to seal this information. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1210–11 (9th Cir. 2002); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (for motions "more than tangentially related to the merits of a case," party must show "compelling reasons" to seal information).

      Courts typically reject requests to seal names of party employees if the party does not "articulate[] a specific harm or privacy interest . . . , other than annoyance, embarrassment and generally not wanting to be associated with this case." *Moussouris v. Microsoft Corp.*, 2018 WL 2017296 (W.D. Wash. Apr. 26, 2018), *R&R adopted*, 2018 WL 2091320 (W.D. Wash. May 3, 2018). Those general interests are exactly the ones Defendants refer to here, vaguely gesturing only at the possibility that their employees may not want to have their information disclosed in the public record. It is clear that this is not enough. *See id.*; *see also, e.g.*, *Handloser v. HCL Techs. Ltd.*, 2021 WL 1850633 (N.D. Cal. Mar. 10, 2021) (denying stipulated request to redact the names of defendant's employees and clients because the parties provided no justification for sealing); *In re Inductors Antitrust Litig.*, 2021 WL 12100529 (N.D. Cal. July 9, 2021) (names of party's employees is "not 'confidential identification information'" and

denying sealing request for lack of justification). The cases Defendants cite dealt with specific concerns of witness embarrassment and the privacy rights of entities that were not party to the litigation. *Music Grp. Macao Com. Offshore Ltd. v. Foote*, 2015 WL 3993147, at *2 (N.D. Cal. June 30, 2015) (former employees were suspected of perpetrating a cyber-attack); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2015 WL 984121, at *3 (N.D. Cal. Mar. 4, 2015) (sealing contract with third party where competitive harm was at issue). The *Volkswagen "Clean Diesel"* court cited both of these inapposite cases when it originally granted sealing of employee names, and the information there was tangential to the merits of the case. 2016 WL 11807130, at *2 (N.D. Cal. Aug. 24, 2016). Here, however, which of Defendants' employees were involved in the facts at issue provides crucial context for Plaintiffs' allegations and the merits of their case. Indeed, Defendants' position that their employees are non-parties with heightened privacy interests would make no sense, as these employees statements can be used as party admissions against Defendants. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 536 (N.D. Cal. 2018); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, 2013 WL 4537838, at *3 (N.D. Cal. Aug. 22, 2013). Judge Gonzalez Rogers' opinion in *Murphy v. Kavo America Corp.*, 2012 WL 1497489 (N.D. Cal. Apr. 27, 2012), does not say otherwise. There, even though the names of the employees at issue were far more tangential to the merits of the case that Defendants' employee-deponents here, the Court still required disclosure of the employees' last names and first initial. *Id.* at *2–3. Finally, Defendants' claim of seeking to avoid a tit-for-tat is a red herring. The names of Plaintiffs who are minors are designated confidential under the protective order, so cannot be included on the chart except via their initials, as they appeared on their complaints. And Plaintiffs' sensitive health and other personal information disclosed to Defendants in the Plaintiff Fact Sheets or elsewhere is likewise properly so designated, but would not in any event be included on the deposition chart. Defendants, by contrast, have not justified any specific reason for sealing the names of their employees likely to be deposed, for whom none of these justifications are relevant.

2976793.22

**III.    Discovery Issues that Do Not Currently Require Court Action**

**A.    Deposition Hours Limits Related to Former Employees**

The Parties have come to an agreement regarding the depositions of former employees of Defendants. Depositions of a Defendant's former employee, whether or not that former employee is represented/defended by the Defendant, count toward Plaintiffs' deposition limits of that Defendant, if such deposition is noticed by an MDL Plaintiff, or if the deposition is cross-noticed by an MDL Plaintiff and was originally noticed by a Plaintiff in a Related Action. If, however, any such deposition is originally noticed by a Defendant in the MDL or a Related Action, no questioning at the deposition counts towards MDL Plaintiffs' deposition limits.

**B.    TikTok Zoom Videos Request**

In furtherance of their report in the March DMC Statement (ECF 686 at 17-23), the PI/SD Plaintiffs and TikTok have continued to meet and confer to attempt to reach alignment and avoid a ripe discovery dispute related to the PI/SD Plaintiffs' requests for certain information regarding Zoom video recordings.  There remain a limited number of proposals that may resolve some or all of the dispute that the Parties are still discussing.  To the extent they cannot be resolved, the remaining open issues will be ripe to be heard at the May DMC hearing and the parties will file a Letter Brief pursuant to the Court's Standing Order on discovery disputes.

**C.    PI Plaintiffs' Deletion of Their Own Accounts and Refusal to Provide Assurances that They Have Taken Steps to Preserve Electronic Data**

Defendants' Position:

Defendants have raised concerns about Plaintiffs' inadequate efforts to ensure preservation of their electronic data on their devices—text and other messages, usage data available for smartphones, search history, account information for other applications used by the Plaintiffs—that is highly relevant to Plaintiffs' claims.  Contrary to Plaintiffs' claims that their failure to preserve is "based on incorrect information and otherwise unwarranted," Plaintiffs' counsel *confirmed* that at least five Plaintiffs took affirmative steps to delete electronic data, and Plaintiffs have offered no response to Defendants' request that Plaintiffs confirm they have preserved other sources of relevant electronic information beyond their accounts on Defendants' services.  Plaintiffs have chosen to distract from those facts by casting blame

(incorrectly), rather than engaging in good faith as to their own preservation efforts, but Defendants believe this issue is important to resolve especially because bellwether discovery will soon begin.

PI/SD Plaintiffs' Position:

Snap's allegation that certain Plaintiffs have not preserved their Snapchat accounts is based on incorrect information and otherwise unwarranted. Plaintiffs have exchanged several letters with Snap on this issue, including providing Snap with information demonstrating that some of the Plaintiffs were locked out of their Snapchat accounts permanently by Snap at the time of the alleged deletion or were Plaintiffs for which at least some accounts Snap itself inadvertently deleted.  Given Snap's history of deleting Plaintiffs' accounts, coupled with the fact that some of these Plaintiffs were locked out of their accounts, Plaintiffs have sought information from Snap to support the allegation that it was Plaintiffs who self-deleted the accounts rather than Snap, what steps Snap took to preserve this data when they had received Plaintiffs' Preservation Forms for these accounts well before the alleged deletion, and what prejudice, if any, Snap is alleging.

**D.      Meta's Objections to PI/SD Plaintiffs' 30(b)(6) Deposition Notice**

The Parties may have disputes regarding certain topics referred to in Plaintiffs' deposition notice as "corporate structure" topics.  The Parties have conferred extensively (for approximately 5 hours), and are continuing to confer to attempt to narrow those disputes.

**E.      YouTube's  Objections to Plaintiffs' Discovery Requests**

PI/SD Plaintiffs' Position:

YouTube's arbitrary discovery start date of January 1, 2015 is unworkable because its corporate structure, retention policies, and how it stored information since its launch is highly relevant.  Additionally, YouTube is currently limiting the scope of each topic as requesting information related only to U.S. users, but information regarding additional or alternative design features or warnings YouTube makes available to its users outside of the United States is highly probative of whether YouTube could have provided a safer alternative design or more effective warnings to users in the United States.  Finally, YouTube is currently refusing to produce a witness to testify on the modified version of Topic 4 that Plaintiffs offered the meet and confers, specifically as to how Board of Director,

Shareholder, and Investor meeting minutes are generally prepared, maintained, and circulated (including any requested documents).

YouTube's Position:

YouTube has agreed to explore different time frames for different discovery requests, but notes that its proposed start date of January 1, 2015 stretches back several years further than even the longest statute of limitation period applicable to the earliest claims filed in this case—and is more than reasonable and proportionate to this case, particularly given the breadth of features and teams potentially at issue.  Similarly, consistent with the positions YT understands other Defendants have taken, YouTube believes discovery should be limited to U.S. users (though YouTube is willing to meet and confer with Plaintiffs on this issue in the context of specific provisions in laws in other jurisdictions that Plaintiffs believe are relevant)..  Finally, consistent with other Defendants' positions, YouTube's view is that testimony about how board minutes are prepared and maintained is not relevant (particularly at this juncture), and is unduly burdensome and disproportionate given the enormous resources YouTube is expending to prepare witnesses to testify on many of Plaintiffs' other 37 noticed topics, including related to the features, documents, and teams actually at issue in this case.

**F.     Relevant Time Period and Outside United States Conduct regarding TikTok**

**1.     Relevant Time Period**

PI/SD Plaintiffs' Position:

The TikTok Defendants seek to narrow the "Relevant Time Period" for all discovery, including the scope of Plaintiffs' 30(b)(b) notice, to "the time the TikTok Platform was available in the United States to February 15, 2023."   But activity prior to the U.S. launch of "TikTok" is highly relevant to this litigation, including pre-launch design decisions, research, corporate structure, retention policies, and, importantly, activity relating to TikTok's precursor app, "musical.ly", which existed for *4 years* prior to its rebranding as "TikTok."  *See, e.g.*,  *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide *context*." (collecting cases)).

TikTok's Position:

The TikTok Platform available in the United States is the only platform operated by the TikTok Defendants that is at issue in this litigation, and therefore discovery should be relevant from the date TikTok was launched/first available in the United States.  There is no allegation of injury any Plaintiff can assert that would relate to anything other than the TikTok Platform he or she used/uses.  With respect to pre-launch activities or platforms other than the United States TikTok Platform, including Musical.ly, the TikTok Defendants disagree the same are responsive to Plaintiffs' more than 300 requests for production.

### 2.     Outside United States Conduct

PI/SD Plaintiffs' Position:

The TikTok Defendants seek to limit the scope of each 30(b)(6) topic (and all other discovery) to the "TikTok app and features within that app available in the United States," excluding at least *4 years* of relevant conduct before "musical.ly" rebranded to "TikTok." Moreover, alternative safer designs of the TikTok app (e.g., "Douyin" available in China) or other safeguards available in other countries but not the U.S. are highly relevant to this litigation. This information is probative of whether the TikTok Defendants could have provided a safer alternative design or more effective warnings to users in the U.S.

TikTok's Position:

As noted above, unfettered discovery on platforms other than the TikTok Platform available in the United States is objectionable (Plaintiffs' stated reasons that documents related to such platforms is relevant is misleading and will be addressed substantively in briefing if it becomes necessary), and the only allegations lodged against the TikTok Defendants are asserted by United States Plaintiffs in relation to the United States TikTok Platform. TikTok has already advised the Plaintiffs that it is not objecting to producing documents or limiting custodians to the United States, noting that to the extent there are employees who reside outside the United States whose work supports the United States TikTok Platform, the TikTok Defendants are agreeable to producing their responsive documents to the extent they are negotiated and agreed-upon Custodians.  Although the Plaintiffs to date have not served a single request for production (with nearly 300 already served) that touch on this issue, to the extent there is

2976793.22

narrow and tailored discovery that Plaintiffs seek related to a platform other than the United States

TikTok Platform in the future (neither Douyin nor Musical.ly is referenced), the TikTok Defendants are

willing to meet and confer to address the issue.

### G.     Meet and Confers regarding RFPs (TikTok)

<u>PI/SD Plaintiffs' Position:</u>

Plaintiffs' and the TikTok's conferrals about TikTok's responses to Plaintiffs' Request for

Production of Documents have faced significant headwinds because (1) TikTok's objections and

responses do not always clearly indicate whether documents are being withheld based on a particular

objection; (2) Plaintiffs often need multiple conferrals in order to ascertain TikTok's position on

discovery requests; and (3) while Plaintiffs have memorialized their positions in writing in advance of

video conferences of counsel, TikTok does not respond in writing in advance. Plaintiffs request that the

Court instruct the parties that failure to comply with Rule 34 may waive objections and that they should

endeavor to memorialize its positions in writing in advance of attorney conferences or have their

corporate client present at each such conference to facilitate the parties' negotiations.

<u>Defendants' Position:</u>

Contrary to Plaintiffs' assertions, the TikTok Defendants have cooperated with Plaintiffs on

discovery, have complied with their obligations under the Rules and this Court's orders, and have been

prepared and sat for nearly six hours of meet and confer on these topics.  Plaintiffs' alleged grievances

are without merit, including the request to meet and confer on vague and overbroad requests to

understand the same before committing to a response, and the meet-and-confer process continues given

the Parties have not exchanged final positions on all propounded RFPs.  The TikTok Defendants have

and will continue to meet and confer diligently and in good faith with Plaintiffs' counsel on discovery

issues and trust Plaintiffs' counsel will do the same.

### IV.    Discovery Issues of Disputed Ripeness Regarding PI/SD Plaintiffs' 30(b)(6) Deposition Notices

The PI/SD Plaintiffs and Defendants disagree as to the ripeness of the below disputes.  For that

reason, in this DMC Statement (and this DMC Statement only), the Parties are presenting these disputes

in a separate section of the DMC Statement, and request the Court's guidance as to when disputes should be considered "ripe" for purposes of future DMC Statements.

Plaintiffs' Position:

Plaintiffs' position is that the below disputes are ripe and should be heard at the April DMC so that the parties may benefit from the Court's guidance in advance of the depositions scheduled to take place at the end of the month and the beginning of May.  Plaintiffs have been seeking Defendants' position on a number of these topics for several weeks, only to have the positions finally stated after the Parties exchanged topics for this statement.  Plaintiffs further disagree that Defendants should have the unilateral ability to prevent disputes from timely reaching the Court by claiming that disputes are "unripe," even where the parties have clearly hit an impasse.  Notably, Plaintiffs offered to present the following disputes to the Court via the joint letter brief process set forth in the Court's Standing Order in time for the upcoming conference, but Defendants refused.

Defendants' Position:

Defendants' position is that these disputes are not yet ripe.  This Court's Standing Order makes clear that issues are not ripe until a final meet-and-confer and letter-briefing on the issue (with lead trial counsel certifying attendance) is complete.  Defendants believe that process should be followed, unless the Parties jointly agree to raise a dispute as "ripe" in a particular DMC Statement.  Plaintiffs' rush to raise unripe, piecemeal disputes only as to certain Defendants (on which co-Defendants may share similar concerns) impedes the Parties' ongoing meet-and-confers in which they are attempting to identify reasonable compromises that address those issues.  The Parties are still meeting and conferring on most of these issues, and Defendants believe it makes sense to wait until those conferrals are complete before raising them as "ripe" issues with the Court.

Accordingly, Defendants request the Court's confirmation that an issue should not be included in the "ripe" section of DMC Statements until after a final meet-and-confer and letter-briefing on the issue (with lead trial counsel certifying attendance) is complete, or the Parties jointly agree to present a dispute as "ripe" in a DMC Statement.

## A.    Snap's Refusal to Produce 30(b)(6) Witnesses on ESI/preservation

PI/SD Plaintiffs' Position:

Plaintiffs propounded Rule 30(b)(6) topics on ESI and preservation issues on each of the defendants; only Snap has taken the position that it will not produce a witness to address any of these topics unless Plaintiffs unilaterally drop most of the topics they have noticed. Snap claims that the ESI and preservation topics constitute "discovery on discovery," but they clearly do not; the topics seek information on Snap's systems, and the location, nature, and existence of relevant information. Snap also argues that it provided certain information to Plaintiffs during the parties' preservation conferrals in 2023, but Snap overstates the information it provided. Indeed, the parties were unable to finalize a preservation order because Snap refused to provided critical information—some of the same information Plaintiffs now seek through deposition. Finally, Snap argues that the Rule 30(b)(6) topics are duplicative of information provided by the witnesses Snap produced to explain how it deleted the accounts of 262 plaintiff accounts associated with the MDL and JCCP. But those witnesses testified to Snap's specific procedure for preserving snapshots of plaintiff accounts in litigation, while Plaintiffs' Rule 30(b)(6) topics seek information on ESI and preservation pertinent to Snap's systems as a whole. Plaintiffs have demonstrated that they will compromise and narrow topics during good faith negotiations, but Snap's position with ESI and preservation is that it will not produce a witness to testify on these 27 topics at all. This is untenable and leaves little room for good faith negotiation or compromise.

Snap's Position:

Plaintiffs' 36-topic 30(b)(6) notice to Snap includes 27 ESI and preservation topics. Notably, not a single one of the 27 ESI or Preservation topics on their face include any connection to the specific claims or defenses in this case. Snap therefore objected to the 27 ESI and preservation topics as, among other things, improper discovery-on-discovery. *See Uschold v. Carriage Servs. Inc.*, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019) (explaining that discovery on discovery is disfavored and requires a showing of a "specific deficiency in the other party's production"). Equally important, Snap objected that the great majority of the ESI and preservation topics are also duplicative of information Snap provided during last year's six Snap-specific preservation and ESI conferrals, through the 31-page preservation order the parties painstakingly drafted, via Snap's court-ordered letter regarding the

District's ESI checklist, and through the recent depositions of two Snap witnesses, Brooklyn Poe and Jason Mork.  Notably, Plaintiffs are incorrect that Ms. Poe and Mr. Mork testified solely "to Snap's specific procedure for preserving snapshots of plaintiff accounts in litigation." In fact, Plaintiffs posed numerous questions to Ms. Poe and Mr. Mork about Snap's programs and systems more broadly, including those for user data, user complaints, internal communications, cloud services, HR software, and workflow management tools. *See, e.g.*, Mork Tr. at 183:15-20 ("Q: I want to ask you generally about Snap programs and software. I think we've already talked, actually, quite a bit about different programs and software …"). In short, Plaintiffs have more than enough information to efficiently propound discovery on Snap.  Requiring additional Snap witnesses to prepare detailed testimony about the minutiae of Snap's data sources, document retention policies, and other discovery-related issues is contrary to a party's typical discovery obligations in this Court and particularly disproportionate to the needs of this case as it pertains to Snap.

Despite Snap's serious concerns that the ESI and preservation topics are broadly improper, particularly with respect to Snap, Snap has nevertheless continued to confer with Plaintiffs on the understanding that Plaintiffs may be willing to substantially narrow the scope of these requests.  The parties are scheduled to confer again on Friday, April 12 and Snap remains hopeful the parties can resolve this dispute without needing guidance from the Court.

### B.     TikTok Refusal to Produce 30(b)(6) Witnesses

On February 12, 2024, the PI/SD Plaintiffs served on TikTok and ByteDance ("TikTok") a Notice of Videotaped Rule 30(b)(6) Depositions on topics generally covering corporate structure, litigation hold, document/ ESI Retention, and ESI.  After numerous meet and confers, TikTok has confirmed that it will not produce a witness to testify to Topics 27, 29, 30 and 31. It then served objections and responses on April 8.

#### 1.     Topic 27 (repository data sources)

PI/SD Plaintiffs' Position:

Topic 27 seeks a witness or witnesses to testify about "[a]ny Repositories that contain potentially relevant information which Defendant purports are not accessible and the factual basis for that

31

determination."  TikTok refuses to produce a witness: " . . . because it seeks a witness to discuss "not reasonably accessible information" without context. To the extent the TikTok Defendants have objected to producing documents otherwise responsive to any of Plaintiffs' Requests for Production on these grounds, it can be addressed through that process."  TikTok's objection is meritless.  Plaintiffs have a right to question the repositories that TikTok identified as part of the preservation discussions (and any others) and to explore the accessibility or lack of accessibility of its repositories.  TikTok is well aware of the details of the preservation discussions and the information it provided Plaintiffs about its Repositories.  TikTok should prepare a witness or witnesses to testify to this topic.

TikTok's Position:

On April 5 and 8, 2024, the TikTok Defendants provided Plaintiffs with their positions on Topics 27, 29, 30 and 31, and offered to further meet and confer. On April 9, 2024, the TikTok Defendants and Plaintiffs further discussed these Topics during a two-hour meet-and-confer that also addressed RFPs, and while no consensus was reached, the TikTok Defendants advised Plaintiffs that it was improper to raise these issues in the Discovery Management Conference, without following the letter briefing process prescribed in this Court's Standing Order. In response, Plaintiffs not only declined to take down the issues they had already improperly raised (as to Topics 30 and 31), they also proceeded to add more the next day (Topics 27 and 29). Respectfully, the TikTok Defendants submit that these disputes are not ripe and are procedurally improper.

Plaintiffs' proposed Topics are also substantively improper.

Topic 27 improperly seeks 30(b)(6) testimony on repositories containing relevant documents that TikTok has concluded to be inaccessible, and on the factual basis for that determination. The TikTok Defendants have offered to discuss with Plaintiffs the bases for any objections lodged based on the non-accessibility of a particular data source, but respectfully submit it is improper for Plaintiffs to seek 30(b)(6) testimony to probe the accessibility of "any repositories that contain potentially relevant information." To the extent TikTok is withholding documents on that basis, further inquiry may be provided.  Plaintiffs, in their submission, suggest they are really just seeking a witness to provide testimony on information already provided to them as a part of the preservation order process.  The topic

as written is not so limited.  If that is the case, however, TikTok is willing to further meet and confer and likely will be able to reach agreement on the same.  TikTok is already intending to produce a witness to testify generally about potentially relevant data systems and how information in them is stored, retained and exported.  This should be adequate.  If a question arises over the accessibility of a given data system that TikTok is refusing to produce from on that basis, the parties can further address on an as-needed basis.  The TikTok Defendants remain willing to meet and confer on this issue in an effort to narrow the scope of the dispute.

## 2.    Topic 29 (local non-network data sources)

### PI/SD Plaintiffs' Position:

Topic 29 seeks a witness or witnesses to testify about: "[w]hether Custodians maintain(ed) local non-network storage of emails, voicemails, messages/chats, or other types of documents, including:  a. The time frame of any such non-network storage, for which Custodians, and for what types of documents; and b. Defendant's policies, procedures, and protocols regarding non-network storage of documents; how these were communicated to Custodians; and whether and how Defendant monitored compliance therewith."  TikTok refuses to produce a witness or witnesses "because it is directed to how given custodians may manage their own data. This employee-specific inquiry is better directed to individual custodians."

The parties are obligated to perform a reasonable investigation to identify non-custodial *and custodial sources* of potentially relevant information.  This information about the sources each custodian uses to store relevant information should already be identified and known by Defendants.  This is particularly true when counsel has previously represented months ago that based on the factors under Rule 26 they determined that it is too burdensome and disproportionate to the needs of the litigation to even preserve such potentially relevant information.  Defendants cannot have it both ways.  Discovery is not limited to non-custodial *network* sources.  Courts and commentaries, including Sedona, agree – cooperation and transparency lead to reduced "gamesmanship" and ensure forthright sharing of all parties to expedite the case, minimize burden and expense, and remove contentiousness as much as possible.  This is relevant non-privileged information, and Plaintiffs are entitled to take Rule 30(b)(6)

testimony on this topic now, not months from now after Defendants collect and produce their custodians' documents.  Plaintiffs have limited deposition time and cannot depose every custodian, nor do they intend to do so.  Nor would it be efficient use of time to ask each custodian information that is or should be already known by Defendants.

TikTok's Position:

Topic 29 (addressing whether custodians "maintain(ed) local non-network storage of emails, voicemails, messages/chats, or other types of documents") is likewise improper as it seeks discovery on the individual data-management practices of individual employees, and is not based on the "knowledge of the company."  This topic, as read by TikTok and previously described by Plaintiffs in meet-and-confer, is directed to how given custodians may manage their own data.  This employee-specific inquiry is better directed to individual custodians.  To the extent Plaintiffs now suggest they just want to understand where employees may generally use non-TikTok applications or store data outside TikTok systems, TikTok has already provided this information as a part of the preservation order process and is willing to further meet and confer on providing a witness to testify to the same.  As the Topic is written, however, any witness produced on this topic would have to separately interview arguably every employee regarding his or her individual local data management practices. This is not a proper subject of 30(b)(6) preparation and inquiry.  Again, TikTok has already agreed to produce a witness to testify about TikTok's data systems generally and what third party applications, if any, are known or approved to be used for business purposes.

### 3.      Topics 30 (third-party ESI)

PI/SD Plaintiffs' Position:

Topic 30 seeks a witness or witnesses to testify about "[a]ny third-party person or business entity, whether affiliated with You or otherwise, that possesses or may possess relevant documents or ESI."  TikTok's position is "TikTok will not produce a witness on this Topic.  As plaintiffs only seek a list in response to the request, it is more appropriately addressed in an Interrogatory."  *First,* TikTok's objection is improper. "[T]he Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request 'to elect to supply the answers in a written response to an

interrogatory' in response to a Rule 30(b)(6) deposition notice or subpoena request." *Louisiana Pacific Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D.Cal. 2012) (citation omitted). Plaintiffs also do not seek a mere list—they seek to understand not only which third parties may possess relevant ESI, but also the nature of that ESI and whether it is cumulative or duplicative of what the TikTok Defendants already possess. In addition, Plaintiffs seek to understand which of the TikTok / ByteDance defendants are in possession of ESI, in addition to what relevant ESI third parties may possess. TikTok downplays the importance of this information, but the company itself has made it an issue: It has repeatedly hinted that the wrong corporate entities may be before the Court, without explaining which corporate entities should have been named and why—thus making this topic particularly important. Indeed, at a recent meet and confer, Plaintiffs were told that none of the entities that are named in the Master Complaint may have a board of directors or board minutes. Plaintiffs need clarity on these matters, not least because publicly available information directly contradicts the representations they have received in negotiating the scope of deposition topics.

    TikTok's Position:

    Topic 30 is impermissibly vague and overbroad. Under Rule 30(b)(6), a requesting party "must describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), in order to "put the deponent on notice of what will be asked, so that the deponent can prepare a designee," *Tyler v. Chelan Cnty.*, 2023 U.S. Dist. LEXIS 211505, at *5-6 (E.D. Wash. Nov. 28, 2023). While a responding organization must prepare its deponent to "fully and unevasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 9921, at *13 (N.D. Cal. Jan. 27, 2012) (quotations omitted). Accordingly, vague or overly broad requests for 30(b)(6) testimony are not allowed. *See Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2021 U.S. Dist. LEXIS 7893, at *4 (D. Ariz. Jan. 15, 2021) (requesting party must designate topics "with painstaking specificity" given the "substantial responsibilities and burdens on the responding corporate party"); *TV Interactive Data Corp. v. Sony Corp.*, 2012 U.S. Dist. LEXIS 56861, at *8 (N.D. Cal. April 23, 2012)

1  (concluding topic was "too vague" given it sought testimony regarding "all" facts and contentions

2  underlying affirmative defenses and counterclaims).

3         Here, Plaintiffs' Topic 30 is impermissibly vague, overly broad, and not described with the

4  "reasonable particularity" required. It requests testimony on "any third-party person or business entity"

5  that "possesses or may possess" "relevant documents or ESI." During meet and confer efforts, the

6  TikTok Defendants initially sought clarity from Plaintiffs whether they were seeking information on

7  third parties that may host or maintain TikTok data, on which the TikTok Defendants were prepared to

8  present a witness to testify.  Plaintiffs clarified that they seek information from a TikTok witness as to

9  the identity of third parties that may have documents in their own possession (not TikTok's) based on a

10  consultation or other dealings with TikTok, and where such documents reside and how they are

11  maintained.  As an example, Plaintiffs referenced a third party that TikTok has consulted with and been

12  the subject of third-party subpoenas in other litigation.  As Plaintiffs are aware, the MDL is comprised

13  of hundreds of individual cases implicating varying allegations, causes of action, and defenses, and

14  Plaintiffs have served over 300 discovery requests on the TikTok Defendants. Given the breadth and

15  vagueness of Topic 30 description (which Plaintiffs have not narrowed, but actually expanded, through

16  the meet and confer process), and the inherently subjective inquiry into what is or is not "relevant," the

17  TikTok Defendants could not possibly predict the specific "documents or ESI" of third parties over

18  whom it has no control that Plaintiffs intend to target in their questioning. Nor could the TikTok

19  Defendants reasonably prepare a witness to identify "any" third-party person/entity that "may" possess

20  such "relevant" ESI, only to further be asked to describe the nature of that ESI and whether it is or is not

21  duplicative of what the TikTok Defendants already possess.

22         **4.     Topics 31 (user data)**

23         PI/SD Plaintiffs' Position:

24         Topic 31 seeks a witness or witnesses to testify about "[t]he categories and types of personal

25  information Defendant collects, maintains, uses, or otherwise possesses regarding each User in the

26  ordinary course of their interaction with Defendant's Platform(s), including Defendant's acquisition,

27  generation, retention, storage, sale, and preservation and deletion of such user information."  TikTok,

28

2976793.22

however, refuses to produce a witness or witnesses on this topic because "The TikTok Defendants have provided hours of information through the meet and confer process with Plaintiffs to discussing user account information that is able to be exported by the TikTok Defendants.  Further, the TikTok Defendants have provided a declaration related to the same.  The Plaintiffs have not provided any reasonable basis for seeking additional deposition testimony regarding user account data beyond what has already been extensively disclosed and what has been represented that can be produced." These objections are meritless. Time and again, "courts have rejected the argument that a Rule 30(b)(6) deposition is unnecessary or cumulative simply because individual deponents—usually former or current employees of the entity whose Rule 30(b)(6) deposition is sought—have already testified about the topics noticed in the Rule 30(b)(6) deposition notice," *Louisiana Pacific Corp.*, 285 F.R.D. at 487 (collecting cases), or because the information has been made available by some other means, *see Kelly v. Provident Life and Accident Ins. Co*., 2011 WL 2448276, at *2–3 (S.D. Cal. June 20, 2011) ("[I]n responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position." (citation omitted)). The same holds true here: neither TikTok's prior declaration nor information it informally exchanged can render Plaintiffs' 30(b)(6) deposition unnecessary or unreasonably duplicative. *See Mitchell Eng'g v. City and County of San Francisco*, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) ("Even if the general topics to be addressed at the 30(b)(6) deposition will overlap to some extent, the questions asked and the answers given might not."). A Rule 30(b)(6) deposition is substantially different from these other discovery mechanisms, and TikTok cannot evade its obligation to prepare a witness to provide the binding testimony of the corporation because it would prefer to present its position by some other means. *See Louisiana Pacific Corp.*, 285 F.R.D. at 487-488.

TikTok's Position:

Topic 31 is overbroad and duplicative of substantial discovery the TikTok Defendants have already provided. The TikTok Defendants have provided substantial explanation and discovery into user accounts and user data, and will be producing ESI witnesses to discuss the tools used to access and analyze user data. Yet, Plaintiffs' Topic 31 seeks testimony on that same subject matter, targeting "[t]he

categories and types of personal information Defendant collects, maintains, uses, or otherwise possesses

regarding each User in the ordinary course of their interaction with Defendant's Platform(s), including

Defendant's acquisition, generation, retention, storage, sale, and preservation and deletion of such user

information." Despite the overlap, Plaintiffs have so far declined to narrow the topic in any way, and

have provided no reasonable basis for seeking additional deposition testimony regarding user account

data beyond what has already been disclosed and what has been represented that can be produced. The

Court should not require the TikTok Defendants to produce a witness on Topic 31 as written. *See*

*Simmons v. Safeway, Inc.*, 2019 U.S. Dist. LEXIS 90804, at *8-16 (W.D. Wash. May 30, 2019)

(granting protective order in part as to unreasonably cumulative and duplicative 30(b)(6) topics, ruling

that plaintiff must reform certain topics, and that defendant need not produce a witness as to others). If

Plaintiffs are willing to further refine or narrow the scope of the testimony sought, the TikTok

Defendants would certainly be willing to consider the same and produce a witness.  Time is not of the

essence with this Topic, as the TikTok Defendants previously informed the Plaintiffs that neither of the

ESI witnesses scheduled to testify would be used for this Topic in any event if the Parties could reach

some agreement on narrowing the same.

### C. Deposition topics seeking source code adjacent information (Snap and TikTok)

PI/SD Plaintiffs Position:

As discussed at the last DMC (Hr'g Tr. 19:25-21:18 (Mar. 21, 2024)), Plaintiffs do not presently

intend to request that Defendants produce their source code (though they have reserved their rights to do

so, absent a stipulation with Defendants). However, in exchange for not pursuing the source code itself,

Plaintiffs have always intended to seek source-code *adjacent* information, which may be highly

probative to the claims at issue in this case—such as when the source code related to various design

features was modified, how, and for what reasons. The PI/SD Plaintiffs' initial 30(b)(6) notices seek

discovery on basics related to this source-code adjacent information, such as where and how Defendants

store the versions and design history of their source code. Plaintiffs reasonably expect Defendants to

maintain a variety of non-source-code features; for example, popular source code repositories such as

Github maintain documentation related to project management,[11] issue and bug reporting,[12] task lists,[13] "read me" files and documentation,[14] messages,[15] comments and approval pipelines.[16]

> Defendants' Position:

In light of Plaintiffs' stated position that they do not presently intend to seek source code or algorithms, Snap and TikTok have objected to the 30(b)(6) topics related to Source Code as not relevant. Now, Plaintiffs nevertheless appear to be seeking many source code-related documents and associated testimony. Snap and TikTok view this issue as premature and unripe for the Court's resolution. The Parties still need to confer about what information related to source code and algorithms, if any, Plaintiffs are entitled to. Once that conferral is complete, the Parties can determine what, if any, corporate testimony on that topic is appropriate and when (*e.g.*, any such testimony would likely be much more efficient *after* the production of any information or documents Defendants will actually be producing).

This issue similarly is not ripe as to the Meta and YouTube Defendants, who reserve all rights in connection with this issue.

Respectfully submitted,

DATED: April 12, 2024                    By:  */s/ Lexi J. Hazam*

                                     LEXI J. HAZAM

---

[11] *See* https://docs.github.com/en/issues/planning-and-tracking-with-projects/learning-about-projects/quickstart-for-projects.

[12] *See* https://docs.github.com/en/issues.

[13] *See* shttps://docs.github.com/en/issues/managing-your-tasks-with-tasklists/creating-a-tasklist.

[14] *See* https://docs.github.com/en/repositories/managing-your-repositorys-settings-and-features/customizing-your-repository/about-readmes.

[15] *See* https://docs.github.com/en/pull-requests/committing-changes-to-your-project/creating-and-editing-commits/changing-a-commit-message.

[16] *See* https://docs.github.com/en/pull-requests/collaborating-with-pull-requests/reviewing-changes-in-pull-requests/about-pull-request-reviews.

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

2976793.22

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**

42

2976793.22

1

2   **OVERHOLTZ, PLLC**
    17 EAST MAIN STREET, SUITE 200
    PENSACOLA, FL 32502
3   Telephone: 510-698-9566
    mliu@awkolaw.com

4

5   JAMES MARSH
    **MARSH LAW FIRM PLLC**
    31 HUDSON YARDS, 11TH FLOOR
6   NEW YORK, NY 10001-2170
    Telephone: 212-372-3030
7   jamesmarsh@marshlaw.com

8

9   JOSEPH E. MELTER
    **KESSLER TOPAZ MELTZER & CHECK LLP**
    280 KING OF PRUSSIA ROAD
10  RADNOR, PA 19087
    Telephone: 610-667-7706
11  jmeltzer@ktmc.com

12

13  HILLARY NAPPI
    **HACH & ROSE LLP**
    112 Madison Avenue, 10th Floor
14  New York, New York 10016
    Telephone: 212-213-8311
15  hnappi@hrsclaw.com

16

17  EMMIE PAULOS
    **LEVIN PAPANTONIO RAFFERTY**
    316 SOUTH BAYLEN STREET, SUITE 600
18  PENSACOLA, FL 32502
    Telephone: 850-435-7107
19  epaulos@levinlaw.com

20

21  RUTH THI RIZKALLA
    **THE CARLSON LAW FIRM, PC**
    1500 ROSECRANS AVE., STE. 500
22  MANHATTAN BEACH, CA 90266
    Telephone: 415-308-1915
23  rrizkalla@carlsonattorneys.com

24

25  ROLAND TELLIS
    DAVID FERNANDES
    **BARON & BUDD, P.C.**
26  15910 Ventura Boulevard, Suite 1600
    Encino, CA 91436
27  Telephone: 818-839-2333

28

2976793.22

rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

2976793.22

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.
Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Nayha Arora (CA SBN 350467)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

2976793.22

1

2

*Attorneys for Plaintiff the People of the State of California*

3

**RUSSELL COLEMAN**

4

Attorney General

Commonwealth of Kentucky

5

6

*/s/ J. Christian Lewis*

J. Christian Lewis (KY Bar No. 87109),

7

*Pro hac vice*

Philip Heleringer (KY Bar No. 96748),

8

*Pro hac vice*

Zachary Richards (KY Bar No. 99209),

9

*Pro hac vice app. forthcoming*

Daniel I. Keiser (KY Bar No. 100264),

10

*Pro hac vice*

Matthew Cocanougher (KY Bar No. 94292),

11

*Pro hac vice*

Assistant Attorneys General

12

1024 Capital Center Drive, Suite 200

13

Frankfort, KY 40601

CHRISTIAN.LEWIS@KY.GOV

14

PHILIP.HELERINGER@KY.GOV

ZACH.RICHARDS@KY.GOV

15

DANIEL.KEISER@KY.GOV

MATTHEW.COCANOUGHER@KY.GOV

16

Phone: (502) 696-5300

17

Fax: (502) 564-2698

18

*Attorneys for Plaintiff the Commonwealth of Kentucky*

19

20

21

22

23

24

25

26

27

28

2976793.22

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

47

Geoffrey Drake, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369

48

2976793.22

Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashley W. Hardin
ahardin@wc.com
680 Maine Avenue, SW

49

2976793.22

Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029
*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com
Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

2976793.22

## ATTESTATION

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: April 12, 2024

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen

JOINT STATUS REPORT ON DISCOVERY FOR APRIL 22, 2024 DISCOVERY MANAGEMENT CONFERENCE
4:22-md-03047-YGR

2976793.22