UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-3047-YGR<br><br>MDL No. 3047<br><br>**CASE MANAGEMENT ORDER NO. 13**<br><br>*Upcoming Case Management Conferences:*<br>May 9, 2024 at 10:30 a.m.<br>June 21, 2024 at 2:00 p.m.<br>July 19, 2024 at 9:30 a.m. |
| This Document Relates to:<br><br>All Actions | |

**TO ALL PARTIES AND COUNSEL OF RECORD:**

The Court held a further case management conference in the above-captioned matter on April 19, 2024. This order memorializes and expands upon the deadlines set and findings made by the Court during that conference.

**I.      MOTIONS TO DISMISS AND REMAND**

The Court heard argument on defendant Meta's motion to dismiss the multistate AGs' complaint, the Florida AG's complaint, and the personal injury plaintiffs' consumer protection and misrepresentation claims (Track 1, Dkt. No. 517), as well as plaintiffs' motion to remand in *Youngers v. Meta Platforms, Inc.*, No. 23-cv-00547 (N.D. Cal. Feb. 15, 2024) (Dkt. No. 64). The motions were taken under submission, and separate orders will issue.

**II.      BELLWETHER DISCOVERY POOL SELECTIONS**

Under Case Management Order No. 10, the bellwether selection process commences by creating two bellwether discovery pools consisting of 12 personal injury ("PI") cases and 12 school district ("SD") cases. (Dkt. No. 604 at 4.) On Monday, April 15, 2024, plaintiffs and defendants separately filed briefing listing six proposed cases for each pool and the rationale behind their selections. (*See* Dkt. Nos. 754, 755, 756-1 (sealed), 757-1 (sealed).)[1] The Court held

---

[1] Plaintiffs and defendants each filed temporary sealing motions requesting that their briefing on bellwether discovery pools selection be filed under seal, noting that the reasons for sealing will be addressed in a forthcoming omnibus motion. (Dkt. Nos. 756, 757.) The temporary sealing motions are preliminarily **GRANTED**.

argument with respect to the proposals at the April 19, 2024, case management conference.

### A. *Lexecon* Waivers and Short-Form Complaint Amendment

Two issues arose after the parties submitted their briefing on Monday and prior to the Friday case management conference.  First, at least three of the PI plaintiffs selected by the defendants became ineligible for trial in the Northern District of California—two plaintiffs have refused to waive *Lexecon*, and one plaintiff has apparently informed the defendants of his or her intent to dismiss the case with prejudice.  Second, defendants said that, in eight of the twelve cases proposed for the bellwether discovery pools, plaintiffs have sought to amend their short-form complaints ("SFCs") regarding the age of first use, platform usage, and which platforms a plaintiff used.

Defendants requested the Court order that: (i) plaintiffs are prohibited from further amendments to the SFCs in cases selected for bellwether discovery, and that plaintiffs should meet and confer with defendants and provide seven days' notice to seek leave to amend; (ii) plaintiffs should be required to confirm in seven days that plaintiffs will continue to pursue their cases in this MDL; (iii) Case Management Order No. 12 should be modified to require that, within 12 days, all plaintiffs should provide their position on whether they intend to waive *Lexecon*; and (iv) defendants should have until at least May 15 to make bellwether selections given the plaintiff fact sheets ("PFSs") have not been submitted in certain cases.

Plaintiffs did not dispute these facts but argued they are expected hurdles in multi-district litigation and do not warrant any "extraordinary" relief sought by defendants.

The Court agrees that plaintiffs' changes have, in part, caused issues requiring a measure of relief, and correspondingly **GRANTED IN PART** and **DENIED IN PART** defendants' requests.

First, as to the issue of *Lexecon* waivers, the Court agreed with defendants and **ORDERED** that all PI plaintiffs assert their position on *Lexecon* by May 17, 2024.

Second, as to amending the SFCs, each side overreaches.  Defendants emphasized they cannot select bellwethers with confidence (i) absent accurate information on platform usage and (ii) continued modifications of the PFS, which they contend are prejudicial.  Plaintiffs disagreed and responded that defendants have access to more precise information on platform usage, given

United States District Court
Northern District of California

1  that plaintiffs' allegations of use are only to the best of their recollection prior to discovery, and

2  require the plaintiffs at times to recall their average daily use from ten years ago.

3          In general, it is surprising that a platform would have been omitted from an initial SFC,

4  thus failing to assert any claims against a given defendant.  However, other issues seem typical of

5  the discovery process and involve requested clarifications, for instance, on some PFSs which

6  indicated platform use that exceeded 24 hours in a day. Such clarifications are beneficial, not

7  prejudicial, to the parties.  Taking these considerations altogether, the Court must review the

8  propriety of each motion to amend an SFC on a case-by-case basis, and so declined defendants'

9  request to assert a global prohibition on amending proposed bellwether SFCs.  Defendants'

10  request is **DENIED** in that respect.[2]

11          Lastly, these issues did not—yet, at least—arise with respect to the SD plaintiffs.  Counsel

12  for plaintiffs indicated that all of the plaintiffs' proposed SD bellwethers and four of the defendants'

13  will waive *Lexecon*.  Two of defendants' proposed SD bellwethers have not yet indicated whether

14  they will waive.  In case one of those two do object to trial before this Court under *Lexecon*,

15  defendants were **ORDERED** to provide a short list of six to ten alternates to send to plaintiffs' counsel,

16  who must in turn confirm whether those plaintiffs would assert *Lexecon* objections if selected as a

17  bellwether.  *Lexecon* objections are due by April 25, 2024.

18          **B.      Bellwether Discovery Pool Selections**

19          The Court was satisfied, globally, with the initial proposal presented by the parties.  There

20  is no perfect set of bellwether picks.  The parties sliced the data in slightly different ways, but the

21  Court had adequate visibility into the case representation across different metrics.

22          For the PI plaintiffs, salient factors include platforms used, age of first use, gender,

23  geography, and type of injury.  Both sides skewed certain metrics in a way that perhaps benefits

24  _____

25  [2] Defendants' other two request for relief are **DENIED**.  Defendants request to extend the
   deadline to propose bellwether selections until May 15 is moot because, given plaintiffs' new

26  deadline to assert their positions on *Lexecon* by May 17 and following the parties' *Lexecon*
   protocol as discussed *infra*, defendants now have until May 22 to submit replacement bellwether

27  selections.  The Court also declines to formally require each plaintiff to reassert their intent to
   pursue their respective cases in this MDL, but plaintiffs are reminded that further dismissals of

28  bellwether-selected cases may disrupt and delay the progress of this MDL.

their side, but holistically these differences appear to balance each other.  For instance, defendants proposed three male and three female plaintiffs, whereas plaintiffs proposed six female plaintiffs. Female plaintiffs constitute 80% of the PI pool, so each side misses the mark on their own, but together the proposed pool contains 75% female plaintiffs.

The Court **ADOPTED** the nine surviving proposed PI bellwethers—that is, excluding the plaintiffs who will withdraw their action or have filed *Lexecon* objections—and discovery commences as to those nine cases.  As discussed earlier, all PI plaintiffs must assert their position on *Lexecon* by May 17, 2024.  Following the parties' *Lexecon* protocol, then, defendants will have three business days to select their replacement cases (Dkt. No. 728, Case Management Order No. 12 at 3), and so must file their selections by May 22, 2024.  The Court will determine at a later point whether the PI schedule as a whole requires adjustment.

For the SD plaintiffs, salient factors include student population size; geography; whether the plaintiff is in an urban, rural, or suburban area; and income level or percentage of free meals. As with the PI plaintiffs, the parties weighted certain metrics differently.  Defendants presented, for instance, that of the total pool of bellwether-eligible SD plaintiffs, just under 25% contain fewer than 2,000 students, just under 50% contain between 2,000 and 20,000 students, and a little over 25% contain more than 20,000 students.  (Dkt. No. 756-1 at 15.)  To roughly approximate these figures, defendants proposed one case in the bottom quarter of population size, three in the middle half, and two in the top quarter.  By contrast, plaintiffs proposed one plaintiff close to but above the 2,000-student population mark, with the remainder of their five proposals in the top quarter of population size.  However, plaintiffs focused on having a range of free/reduced lunch eligibility among these selections, whereas defendants focused on household income and spend per pupil.

The Court **ADOPTED** the parties' proposed SD bellwethers, with discovery commencing as to the ten cases that have confirmed waiver of *Lexecon*.  As soon as plaintiffs confirm with defendants that the other two bellwethers waive *Lexecon*, discovery commences as to those two cases.  If either or both of those two cases object under *Lexecon*, then defendants will submit their proposed alternates to the Court.

4

**III.    MOTION TO DISMISS THE SCHOOL DISTRICT AND LOCAL GOVERNMENT ENTITIES MASTER COMPLAINT**

At the May 9, 2024, case management conference, the Court is scheduled to hear defendants' motion to dismiss the school district and local government entities master complaint (Track 3, Dkt. No. 601).  The parties have raised that the state laws of Utah and Arizona are not covered by the aforementioned motion to dismiss, despite SD plaintiffs now hailing from those states.  As discussed at the April 19, 2024, case management conference, the parties shall meet and confer as to the appropriate legal standards applicable in Utah and Arizona, and should the parties agree as to those standards, they shall file a joint stipulation on the docket to that effect.  If not, the Court can determine what additional briefing may be needed after argument on the motion.

**IV.    MARK ZUCKERBERG ADDENDUM**

Pursuant to the Court's April 15, 2024, order on defendant Mark Zuckerberg's motion to dismiss, 25 plaintiffs are permitted to file a consolidated addendum as to Zuckerberg's alleged role as a corporate-officer participant in the conduct charged under Counts 8 and 9 of the Second Amended Master Complaint.  (Dkt. No. 753 at 12.)

The parties have agreed to the following schedule, which the Court then **ORDERED**: plaintiffs will file their consolidated addendum by April 28, 2024.  Defendant Zuckerberg may renew his motion to dismiss by May 10, 2024, plaintiffs' opposition is due by May 23, 2024, and defendant Zuckerberg's reply is due by May 30, 2024.  The motion briefs have page limits of 10, 10, and 6 pages each, respectively.

This terminates Dkt. Nos. 756 and 757.

**IT IS SO ORDERED.**

Dated: April 23, 2024

_____
**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE**

United States District Court
Northern District of California