# EXHIBIT 1

[*Submitting Counsel on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br>**NOTICE OF VIDEOTAPED RULE 30(b)(6) DEPOSITION OF DEFENDANT META PLATFORMS, INC.** |

ISSUING PARTY:     Personal Injury and Local Government Entity Plaintiffs

PRODUCING PARTY:     Meta Platforms, Inc.

TO:     Meta Platforms, Inc. and its Attorneys of Record

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6), Personal Injury and Local Government Entity Plaintiffs, by and through the undersigned counsel, will take the deposition of the corporate designee(s) of Defendant Meta Platforms, Inc. in the above-captioned action on the topics listed on Schedule A attached hereto, at the offices of Lief Cabraser Heimann & Bernstein, 275 Battery Street, 29th Floor, San Francisco, CA 94111, commencing at 9:00 AM PST on February 28, 2024, or on a mutually agreed time and place.

Defendant Meta Platforms, Inc. is directed to designate a person or persons to testify on its behalf on the matters listed in Schedule A attached to this Notice of Deposition and to produce

the documents identified on Schedule B.

    The deposition will be recorded stenographically and on videotape.

Dated:  February 12, 2024        */s/Alexandra M. Walsh*
                                               Alexandra M. Walsh

# SCHEDULE A

## A. CORPORATE STRUCTURE DEPOSITION TOPICS

1. Your registered agents in each state.

2. Your articles of incorporation, and any similar foreign articles of incorporation or association.

3. Your corporate organization and responsibilities for the Relevant Time Period for:[1]

    a. Each application-based Unit (e.g., Meta Platforms, Inc. Platform);

    b. Each function-based Unit, including:

        1. Business development, business plans, marketing, advertising, sales, and commercialization.

        2. Finance, accounting, and budgeting, including the budgets for all Units relating to user growth and engagement and user Safety.

        3. Public and media relations, governmental relations, regulatory affairs, public affairs, and lobbying.

        4. Risk assessment, including identification of potential risks related to youth mental health, CSAM, fake accounts, data breaches and any suggested or implemented measures to address such risks.

    c. The board of directors and executive team, including all members of the "C-Suite," "presidents," and "vice presidents."

4. Your meeting minutes for board of director and shareholder or investor meetings for the relevant time period, and any board documents relating to youth mental health or the allegations in this lawsuit.

---

[1] This topic includes the manner in which the board of directors and C-suite executives of You and Your parent company(ies) have supervisory, oversight, or managerial responsibilities over the above identified Departments and areas.

5. Your corporate organization and responsibilities for all Units that address or have addressed for the Relevant Time Period, directly or indirectly, the following areas:[2]

    a. The mental health, well-being, safety and/or protection of Youth related to their use of Your Platform(s)

    b. Research, development, design, testing, implementation, post-implementation testing or review, collection, assembly, and/or analysis of data relating to any of the Named Features;[3]

    c. Tracking, collection, use, and sharing of Youth's information both on and off Your Platform.

    d. User account creation and deactivation.

    e. Age restrictions, age verification, and/or age estimators.

    f. Parental controls.

    g. Privacy settings.

    h. Youth user engagement and growth.

    i. Youth user reporting and complaints and parental reports and complaints related to Youth problematic use of or addiction to Meta Platforms, Inc.'s Platform, mental health, well-being, or safety.

    j. Support tips and resources provided by You to Your Youth users related to mental health issues.

    k. Terms of Service and Community Guidelines, including all prior Terms of

---

[2] This topic includes the manner in which the board of directors and C-suite executives of You and Your parent company(ies) have supervisory, oversight, or managerial responsibilities over the above identified Departments and areas.

[3] This topic includes the manner in which the board of directors and C-suite executives of You and Your parent company(ies) have supervisory, oversight, or managerial responsibilities over the above identified Departments and areas.

Service and Community Guidelines for the Relevant Time Period.

6. The oversight, monitoring, supervision, and management of the Units, or areas of responsibility identified in response to Topic No. 5 by any domestic or foreign, direct or indirect, parent or holding company during the Relevant Time Period.

7. The identification of those involved in determining compensation plans and bonus structures, and the bases for determining compensation or bonus structures, including as they relate to increased growth and engagement on Your Platform(s).

**B. LITIGATION HOLD DEPOSITION TOPICS**

8. The Date when You first anticipated litigation concerning the Safety of Youth in connection with the use of Your platform.

9. Issuance of litigation hold notices, if any, to any Person in response to, in connection with, or in any way related to, the mental health of youth and use of Your Platform(s), including the following:

    a. When and to whom litigation hold(s) were given;

    b. Whether litigation hold(s) were distributed on more than one occasion;

    c. The method(s) by which the litigation hold(s) were transmitted/Communicated;

    d. The kinds and categories of information and/or data Your current and/or former employees were instructed to preserve and collect;

    e. Any time period specifications or restrictions, if any, covered by the litigation hold(s); and,

    f. The specific actions or inactions Your current and/or former employees were instructed to take to preserve and collect the information requested.

**C. DOCUMENT/ESI RETENTION DEPOSITION TOPICS**

10. Your Document and/or data retention, preservation, destruction, and/or disposal Policies in effect on the Date identified in response to Topic No. 8 through the present, including any revisions and or amendments to the identified Policies.

11. The location, including both physical and electronic storage, of relevant Documents and/or ESI that You retained pursuant to the Policies identified in Topic No. 10.

12. Relevant Document or Data repositories maintained by You and/or on Your behalf, and the content and/or organization of those repositories, as well as any Policies relating to those repositories and their retention.

13. Your Policies applicable to the transfer, transmission, migration, and/or archiving of Your Documents and/or Data, including for departing employees.

14. The destruction, alteration, or loss of any relevant Documents and/or ESI, and Your efforts to locate, remediate, or restore any lost or destroyed Documents and/or ESI.

15. The capabilities of Your relevant Document repository software, how Data is stored and/or maintained with that software, and reports that can be generated with that software.

16. Your search for, identification of, and production of Documents and information responsive to discovery requests in this litigation.

**D. ELECTRONICALLY STORED INFORMATION DEPOSITION TOPICS**

17. Programs used by Custodians to collect, create, generate, or otherwise interact with potentially relevant information, including:

    a. The details of each Program, including the name, hardware and software platform, version number, and period of time during which each version was used by Defendant;

    b. Which of these Programs are Defendant-supported and which are not Defendant-supported but are otherwise used by Custodians;

    c. If purchased as or with a product, the name of its manufacturer/publisher;

    d. The name of the Programs' developers;

    e. If provided as a service, the name of its provider;

    f. The individuals who are most knowledgeable about the Programs past and present use by the Defendant;

    g. The purpose(s) for which Defendant and/or Custodians uses or used the Program;

    h. The dates on which Defendant began to use the Program;

        i. If no longer in active use, provide and identify:

        ii. The date that active use ceased;

        iii. The current location of the Program's data;

        iv. Whether there has been any disposition of its data

        v. Any migration or conversion of its data;

        vi. Its successor program or application and roll-out date; and

        vii. The persons most knowledgeable about the migration, transition and conversion of data.

    j. The user access privileges and rights provided to each of the Custodians for each program or application.

18. Programs used by Custodians for internal or external communications (such as Exchange, Gmail, Skype, WhatsApp, iMessage, Slack, HipChat, Lark, Workplace, voicemail) over the course of their relevant involvement, including:

    a. The details of each Program, including the name, hardware and software platform, version number, period during which each version was used.

    b. Which of these forms of communication are Defendant-supported and which are not Defendant-supported but are otherwise used by Custodians;

    c. Defendant's policies, procedures, and protocols relating to the use of such forms of communication, and which particular forms of communication Custodians should use for particular types of communication, such as:

        i. How were these policies, procedures, or protocols communicated to the Custodians;

        ii. Whether any of these policies, procedures, or protocols is no longer operative, when did it terminate; and

        iii. Whether Defendant monitors/ed compliance with these policies, procedures, and protocols, and if so, how.

19. Custodians' use of personal devices, programs, systems, accounts or applications for communications within Defendant, including:

a. To the extent monitored, tracked, or otherwise known by Defendant, the particular personal devices, programs, systems, accounts or applications used by Custodians, and during what time frame; and

b. Defendant's policies, procedures, and protocols regarding the use of personal devices, programs, systems, or other applications within Defendant; when these were implemented and how these were communicated to Custodians; and whether and how Defendant monitored compliance therewith.

20. Repositories used by Custodians to store potentially relevant information, including:

a. The details of each Repository, including the name, hardware and software platform, version number, period during which each version was used, and (if applicable) location.

b. Which of these Repositories are managed or maintained by Defendant and which are used by the Defendant but managed or maintained by third parties;

c. A description or accounting of all information stored in each Repository, including any schemas or data maps;

d. To the extent the system configuration has changed over time, a description of the prior configurations and the period during which each such version was in use;

e. The system administrator for, who maintains the schema for, and/or who manages the information contained in each Repository;

f. How may information from each Repository be retrieved and in what format;

g. The person(s) most knowledgeable about the system or data configuration, standard and modified retention processes or procedures, and ability to retrieve or extract potentially relevant information from each Repository;

h. The search capabilities that exist at each Repository;

i. Which Repositories maintain an audit trail of changes (tracking and timestamping of additions, edits, deletions) to records in that database;

j. How may documents and document version histories from each database be retrieved and in what format;

k. The existence and location of any standardized reports generated by each Repository;

l. Whether any supporting application is required to review the information contained within or output from each Repository, and if so, the name of

the application and the information necessary to review the data in the Repository.

m. Whether Defendant contracts with any third parties that possess ancillary data, such as field structures and metadata, which are necessary for review of the information contained within or output from each Repository, but which are purportedly not within Defendant's possession, custody, or control, and if so, a description of any ancillary data, including format the name of the third parties, and their contact information.

21. The manner in which Defendant stores each version of its tools, algorithms or source code, to the extent such algorithms or source code concern the Platforms.

22. How Defendant stores descriptions, revisions, modifications, or changes to the tools, algorithms or source code concerning the Platforms, including whether "audit" functionality exists that provides for tracking and timestamping edits, revisions, or deletions.

23. Whether there is a design history or version history file, whether by name or function, for any or all of the tools, algorithms, or source code concerning the Platform(s).

24. Defendant's policies, procedures, or protocols related to the retention, migration to less accessible media, archival, near-line, off-line, or cloud storage or disposal of Defendant's records, documents, and communications, including but not limited to the storage, archive, or preservation of local or server-based mailboxes or mail/message containers (such as PST files).

25. Any "monitoring," journaling, message archive, or central functionality that captures emails, voicemails, and/or messages/chats sent or received within any Program by Custodians, including dates of implementation and the scope of retention.

26. Any backup, data warehouse, or archival systems used to back up or archive potentially relevant information contained in each Repository, including those that are onsite, offsite, cloud-based, or maintained by one or more third party vendors.

27. Any Repositories that contain potentially relevant information which Defendant purports are not accessible and the factual basis for that determination.

28. Defendant's ordinary-course archiving rules or retention or deletion policies (such as auto-delete functions, email, voicemail, messaging/chat size limits, "ephemeral" messaging capabilities, etc.) that may impact the existence of potentially relevant information, including documents stored in Repositories or any email, voicemail, or messaging/chat for the Custodians.

29. Whether Custodians maintain(ed) local non-network storage of emails, voicemails, messages/chats, or other types of documents, including:

    a. The time frame of any such non-network storage, for which Custodians, and for what types of documents; and

    b. Defendant's policies, procedures, and protocols regarding non-network storage of documents; how these were communicated to Custodians; and whether and how Defendant monitored compliance therewith.

30. Any third-party person or business entity, whether affiliated with You or otherwise, that possesses or may possess relevant documents or ESI.

31. The categories and types of personal information Defendant collects, maintains, uses, or otherwise possesses regarding each User in the ordinary course of their interaction with Defendant's Platform(s), including Defendant's acquisition, generation, retention, storage, sale, and preservation and deletion of such user information.

32. The Programs or Repositories that Defendant uses(d) to collect and track new, ongoing, or past complaints from Users, including the retention, storage and preservation of such complaints.

33. The destruction, alteration, or loss of any Documents potentially relevant to this Action.

34. The creation, maintenance, and updates to a glossary of industry or computer terminology related to any of Defendant's Platform(s), including any of the technology at issue in this Action.

35. Custodians from which Defendant or any vendor on its behalf has collected, or initiated collection of, potentially relevant hardcopy and/or ESI.

36. Ability to collect, export, and produce internal or non-public Documents hyperlinked in other Documents, and the decision to implement as well as execute the use of Google Suites within Your organization, if applicable, including any plans to satisfy Defendant's discovery obligations in current or future litigation matters.

37. The data sources for user information identified and described in in the In Re: Facebook, Inc. Consumer Privacy User Profile Litigation, MDL No. 2843 (NDCA) (J. Chhabria).

## SCHEDULE B

## DOCUMENTS TO BE PRODUCED

1. The witnesses' *curriculum vitae*.

2. The witnesses' prior deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony related to the Topics set forth in Schedule A, if any.

3. Documents relied on or reviewed by the witnesses in preparing to testify about the Topics set forth in Schedule A.

4. All notes taken by any witness in preparation for the deposition.

5. The Policies identified in response to Topic Nos. 10, 12, 13, 18, 19, 24, 28, and 29 in Schedule A.

6. Documents related to the litigation hold notices identified in response to Topic No. 9 in Schedule A.

7. Schemas, database dictionaries, metadata repositories, or lists of standard reports and/or fields related to the databases and Document or data repositories identified in response to Topics set forth in Schedule A.

8. Manuals, training materials, sample reports, standard operating procedures, policies, guidances, and/or instructions identified in response to Topics set forth in Schedule A.

9. Documents sufficient to identify and describe the Programs and Repositories identified in response to Topics set forth in Schedule A.

10. Documents related to or containing information concerning the destruction, alteration, or loss of any Documents potentially relevant to this Action

11. Documents sufficient to show how user information is stored, recorded, and accessed, including any differences or gaps between the information Defendant possesses(d) and user-requested activity logs.

# SCHEDULE C

# DEFINITIONS

1. "**Including**" means "including, without limitation" and "including but not limited to."

2. "**You**," "**Your**," "**Defendant**," or "**Defendants**" means the above-named Responding Party or Parties (individually and, where applicable, collectively); each of their predecessor or successor business entities; each foreign or domestic governmental, nongovernmental, or private corporation or entity with which they are commonly owned, including subsidiaries and parent corporations; each of their former or present Units; and for each of the foregoing all former or present directors, officers, members, partners, principals, employees

3. "**Person**" or "**Persons**" means any natural person, corporation, company, partnership, proprietorship, association, governmental or nongovernmental entity, agency, organization, or group, as well as any other business entity or association.

4. "**Unit**" or "**Units**" means departments, teams, working groups, divisions, and subdivisions, however named or classified.

5. "**TikTok Platform**" means any version of the Musical.ly or TikTok platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

6. "**YouTube Platform**" means any version of the YouTube platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

7. "**Instagram Platform**" means any version of the Instagram platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

8. "**Facebook Platform**" means any version of the Facebook platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

9. "**Snapchat Platform**" means any version of the Snapchat platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

10. "**Platform**" refers to the social media platform(s) owned and maintained by you at issue in this Action unless otherwise stated.

11. "**Document**" and "**Documents**" are synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Civ. P. 34 and the Local Rules (and, as applicable, to the usage of the term "writing" in California Evidence Code 250) and include ESI and Communications.

12. "**Electronically Stored Information**" and "**ESI**" are synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Civ. P. 34 and the applicable Local Rules.

13. "**Custodians**" means any current and former internal departments, divisions, committees, or teams, and employees, who were involved in or had responsibilities related to any potentially relevant information, whether stationed inside or outside of the United States, including any current or former employee, director, officer, representative, agent, or other person acting or authorized to act on behalf of Defendant that the Defendant reasonably believes, or the Court determines, possesses potentially relevant information.

14. "**Repository**" or "**Repositories**" includes the data sources, storage platforms, repositories, and locations that the Custodians could have used to store potentially relevant information, whether located inside or outside of the United States, including: (i) file servers, (ii) applications for internal or external email, messaging, or chat; (iii) document management systems ("DMSs") used by Custodians to store ESI; (iv) database management systems ("DBMS") that maintain each database application; (v) collaborative applications (e.g.,

SharePoint, Slack, Lark, Microsoft Team, E-rooms, groupware, company intranet, etc.); (vi) mobile devices; (vii) structured databases; (viii) workstations (e.g., desktop and laptop computers); (ix) portable storage; and (x) social media.

15. "**Communication**" shall mean and refer to any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

    a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;

    b. emails;

    c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including end-to-end encrypted platforms such as Signal and WhatsApp;

    d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You;

    e. user(s)-to-user(s) messages sent via any social media platform including the Snapchat Platform, Instagram Platform, Facebook Platform, TikTok Platform, X, Twitter, Reddit, Tumblr, Bluesky, Mastodon, Twitch, and Discord, including messages sent "directly" or "privately;"

    f. posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;

    g. voicemails and voice messages;

    h. any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials,

decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

16. "**Relating to**," "**relate to**," "**referring to**," "**refer to**," "**reflecting**," "**reflect**," "**concerning**," or "**concern**" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, involving, embodying, evaluating, reviewing, reporting on, commenting on, relating to, referring to in any way or manner, or impacting or connecting in any way logically or factually with the subject matter of the Request.

17. "**Policy**" or "**Policies**" mean all formal and informal policies, practices, guidelines, protocols, procedures, plans, systems, customs, or manners of conducting a specific task that are or were adopted, implemented, or used by You; and for each of the foregoing the terms, methods and means of implementation, and Identity of Persons responsible for their management and implementation.

18. "**CSAM**" means "**child pornography**" as defined in 18 U.S.C. § 2256(8).

19. "**Child**" or "**Children**" means individual(s) under the age of thirteen (13).

20. "**Teen**" or "**Teens**" means individuals between the ages of thirteen (13) and seventeen (17), inclusively.

21. "**Youth**" means individuals under the age of twenty-two (22).

22. "**Date**" means the exact day, month, and year, if ascertainable, or if not, the best approximation (including relationship to other events, with the indication that it is an approximation).

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail on February 12, 2024 to the following, Counsel for Defendants:

ASHLEY M. SIMONSEN, SBN 275203
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel.: 424-332-4800

EMILY JOHNSON HENN, SBN 269482
ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Tel.: 650-632-4700

PHYLLIS A. JONES, pro hac vice
pajones@cov.com
PAUL W. SCHMIDT, pro hac vice
pschmidt@cov.com
MICHAEL X. IMBROSCIO, pro hac vice
mimbroscio@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: 202-662-6000

*Attorneys for Defendants Meta Platforms, Inc.; Facebook Payments, Inc.; Siculus, Inc.; Facebook Operations, LLC; Instagram, LLC*

                                                      */s/Alexandra M. Walsh*
                                                       Alexandra M. Walsh