UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 5 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF APRIL 22, 2024**<br><br><u>Upcoming DMC Dates:</u><br>May 10, 2024 at 1:00 pm<br>June 20, 2024 at 1:00 pm<br>July 18, 2024 at 1:00 pm |

On April 22, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. This Order memorializes and provides further guidance to the Parties, consistent with the Court's directions on the record at the DMC regarding the deadlines and findings made by the Court during that hearing (all of which are incorporated herein by reference).

I.      **State Agency Discovery Dispute**

Per the Court's directives, on April 1, 2024, the AG Plaintiffs and Meta filed supplemental briefing as to each of the thirty-five states from which state agency discovery is sought by Meta in this case. *See* Dkt. 738. At the April 22nd DMC, the AG Plaintiffs requested that at least some of the thirty-five states be given an opportunity to present oral argument on their portion of the supplemental briefing. As stated at the DMC, the Court **ORDERS** the AG Plaintiffs to file a notice on the docket by no later than **April 24, 2024** identifying which of the thirty-five states (if any) wish to present additional oral argument on this issue, and which states choose to submit on

the briefing and prior oral argument. Upon receipt of the AG Plaintiffs' submission, the Court will determine the appropriate course of action and will instruct the Parties accordingly. Assuming at least some states formally seek oral argument, any such argument shall be presented succinctly and efficiently to the Court IN PERSON. Remote argument will not be permitted. Counsel for the AG Plaintiffs indicated that they may consolidate oral argument by appointing one state's counsel to argue on behalf of multiple states. In light of the fact that Meta has voluntarily chosen not to subpoena any state agencies and thus requested expeditious resolution of this dispute, the Court encourages efficient presentation of the issues and expects the AG Plaintiffs to seriously consider whether further oral argument is necessary in light of the multiple briefs and oral arguments already submitted to the Court on this issue.

## II. Confidentiality Designations

The Parties report a dispute concerning the PI/SD Plaintiff's challenges to certain confidentiality designations under the Protective Order which Meta has applied to thirty-five documents produced in discovery in this litigation. [Dkt. 750 at 8-11]. Meta argues that the confidentiality designation challenges at issue are improper because they were made "in a vacuum (i.e., not in connection with a motion to seal or other intended use of the document[s])." *Id.* at 9. As stated at the DMC, the Court confirms that the Parties may raise disputes as to confidentiality designations with the Court so long as the Parties have complied with all procedural requirements set forth in Section H of this Court's Discovery Standing Order, including in particular the meet and confer requirements therein. The Party challenging a confidentiality designation must show good reason for bringing *that* dispute to the Court's attention and must also provide sufficient explanation as to why counsel could not resolve such dispute through the meet and confer process. The Court again admonishes the Parties to not over-designate materials as confidential (or highly confidential) and to not overburden the Court and Parties with unnecessary motions practice. If the Parties demonstrate an inability to resolve confidentiality designation disputes in a reasonable manner consistent with Federal Rules of Civil Procedure 1 and 26 (as well as this Court's Orders), the Court may consider imposing additional meet and confer procedures specific to confidentiality designation disputes, including but not limited to requiring in-person meet and confers by lead trial counsel regardless of lead counsels' geographic proximity, requiring meet and confers to take

place in person at the San Francisco courthouse, requiring in-house counsel or Party representatives (or Parties themselves, if any are natural persons) to attend the meet and confers, and/or requiring counsel directly involved in any of the meet and confers to meet and confer in person.

### III.     Recipients of Litigation Holds

The Parties report a dispute regarding the PI/SD Plaintiffs' request for information relating to Defendants' litigation holds, including the names of Defendants' employees who received litigation hold notices in connection with this litigation, those individuals' job titles, and the dates the holds went into effect.  [Dkt. 750 at 11-20].  While the PI/SD Plaintiffs apparently first sought this information by way of a Rule 30(b)(6) deposition, they state they would be willing to accept the names, titles, and dates "in the form of a list." *Id.* at 11.  The PI/SD Plaintiffs argue that they need this information in some disclosed form in order to be able to compile a complete and accurate list of Defendants' document custodians. *Id.*  Defendants argue that information regarding their litigation holds is work product protected from discovery and improper "discovery on discovery." *Id.* at 15.

As an initial matter, the Court understands that the PI/SD Plaintiffs are no longer seeking information regarding Defendants' litigation holds by way of Rule 30(b)(6) deposition and accordingly no such depositions shall go forward.

The Court finds that the basic identifying information sought by the PI/SD Plaintiffs relating to Defendants' litigation holds (*i.e.,* the names and titles of the employees who received hold notices and the dates that the notices were issued) is not privileged. *See Doe LS 340 v. Uber Tech., Inc.*, --- F. Supp. 3d ----, 2024 WL 107929, at *3 (N.D. Cal. Jan. 9, 2024) (granting plaintiffs' request for "basic information" concerning defendant's litigation holds, including "the names, job titles, and dates of employment of the recipients of the hold notices, the dates of issue, and what litigation or claim the holds relate to," and rejecting defendant's assertion that such information is protected by attorney-client privilege and/or work product doctrine); *Thomas v. Cricket Wireless, LLC*, No. 19-cv-07270-WHA (AGT), 2020 WL 7344742, at *2 (N.D. Cal. Dec. 14, 2020) (distinguishing between litigation hold notices themselves which may be subject to attorney-client privilege and/or work product doctrine, with the 'basic details surrounding the

litigation hold[s]" which are "fair game").

Defendants' authorities do not compel a different result. First, the majority of cases cited by Defendants concern either requests for production of the actual hold notices themselves or requests broadly seeking the contents of such hold notices. *See, e.g.*, *PersonalWeb Techs., LLC v. Google*, No. C13-01317 EJD (HRL), 2014 WL 4088201, at *3-4 (N.D. Cal. Aug. 19, 2014) (denying request for production of Google's "litigation hold notices issued in this case, or documents and information sufficient to identify the content of Google's litigation hold notices" and concluding that "the litigation hold notice itself is protected as attorney-client communications and/or work product"); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) (denying request for production of documents concerning defendants' efforts to "maintain, search for and preserve all [litigation] documents"); *Watkins v. Hireright, Inc.*, No. 13CV1432-MMA (BLM), 2013 WL 10448882, at *2-3 (S.D. Cal. Nov. 18, 2013) (denying request for 30(b)(6) deposition regarding defendant's "efforts to date to preserve electronic data upon learning of the pendency of this lawsuit"); *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 1325344, at *7 (D. Colo. Jan. 3, 2017) (denying request for Rule 30(b)(6) deposition regarding hold notices' "content"). Here, the PI/SD Plaintiffs merely seek the hold notice recipients' names, job titles, and the dates of issuance.

The Court likewise finds unpersuasive Defendants' attempts to distinguish case law on the grounds that disclosure of hold notice recipients' names and titles and the dates that the hold notices came into effect is only permitted where document preservation issues are in dispute. If, as Defendants concede, litigation hold recipients' basic identifying information is not privileged in the context of a preservation dispute, then there is no legal basis for holding such information privileged in the context of other disputes. Either a document is work product protected from discovery, or it is not. While exceptions to or waivers of work product protections may exist in different contexts or situations, that is not the issue here. *Cf. Al Otro Lado, Inc. v. Wolf*, No. 3:17-02366-BAS, KSC, 2020 WL 4432026, at *2 (S.D. Cal. July 31, 2020) (finding "a sufficient preliminary showing of spoliation to overcome the attorney-client privilege that presumably attached to the litigation hold notice").

This basic information is exactly the same information which would appear on a privilege

log for withheld work product, if the Court were to require the Parties to provide privilege logs of documents which post-date the Complaint in this matter. *See Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH (LB), 2019 WL 2716484, at *4 (N.D. Cal. June 28, 2019) (ordering production of privilege log containing, among other things, the title and description of the document at issue, the identity and position of its author, the date the document was communicated or prepared, and the identity and position of all addressees and recipients of the communication); *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2010 WL 2951871, at *1 (N.D. Cal. Jul. 27, 2010) ("The court agrees with plaintiffs that, without the names of the author(s) and recipient(s) of each document, plaintiffs cannot determine whether the attorney-client privilege applies."). Names, titles, and dates are factual matters, not attorney work product. *See In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *3 (N.D. Cal. Oct. 2, 2007) ("eBay has not shown that the *identities* of the approximately 600 employees receiving the [litigation hold notices] are privileged or subject to work product protection."); *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR (JSC), 2015 WL 5604392, at *2 (N.D. Cal. Sept. 24, 2015) ("Defendants merely seek the name of the person Plaintiffs identified (except by name) in the amended complaint. Such information is not work product."). Further the list of persons who received litigation holds is not, itself, work product because disclosing that list does not disclose any of the analyses, bases, or criteria used by counsel to create that list. Rule 26(a)(1)(A)(i) requires counsel to provide a list of individuals likely to have discoverable information that the party may use to support its claims and defenses, and that list is not considered work product even though it directly implicates the party's claims and defenses. *See Brody v. Zix Corp.*, No. 3-04-CV-1931-K, 2007 WL 1544638, at *1 (N.D. Tex. May 25, 2007) (holding work product doctrine does not shield disclosures required by Rule 26(a)(1)(A)(i)); *Burnett v. United States*, No. EDCV 15-1707-CAS (KKx), 2016 WL 3392263, at *6 (C.D. Cal. June 14, 2016) ("Request for Production No. 1 does not appear to seek documents beyond those required to be produced by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Hence, the Court finds Plaintiff's attorney work product objection is meritless.").

        The PI/SD Plaintiffs committed at the DMC to review the lists promptly, within one week of receipt, and to finalize the Parties' respective discussions regarding document custodians

accordingly for ESI and discovery purposes.

As stated at the DMC, the Court **ORDERS** Meta, TikTok, and YouTube to provide the PI/SD Plaintiffs with the names and titles of all employees for those entities who have received litigation hold notifications in connection with this litigation specifically, as well as the dates that the litigation holds were issued, by no later than **April 24, 2024**. The Parties shall finalize their discussions regarding document custodians with respect to Meta, TikTok, and YouTube by no later than **May 1, 2024**.

Pursuant to the Parties' joint agreement communicated to chambers via email subsequent to the DMC, the Court **ORDERS** Snap to provide the PI/SD Plaintiffs with the names and titles of all Snap employees subject to litigation holds in connection with this litigation and the corresponding issuance dates by no later than **May 3, 2024**. Snap and the PI/SD Plaintiffs shall finalize their discussions regarding document custodians by no later than **May 10, 2024**.

### IV. Joint Deposition Chart Submission

Per the Court's directive, the Parties are required to submit a regularly updated Joint Deposition Chart as part of their monthly DMC Statement to the Court. *See* Dkt. 700. The Parties seek clarification from the Court as to whether the Joint Deposition Chart should be submitted each month via email to chambers only or as a publicly filed document on ECF. [Dkt. 750 at 20-23].

As stated at the April 22nd DMC, the Court **ORDERS** the Parties to continue to send an unredacted version of the Joint Deposition Chart to chambers via email as part of their monthly DMC Statement. The Court notes that the Parties are expected to be (and certainly are not precluded from) updating the Joint Deposition Chart regularly as names are added throughout each month, separate from the DMC Statement.

The Court notes, as indicated at the DMC, that publicizing contact information or other personally identifying information of a proposed deponent in a public filing cannot be remedied after the fact if there is risk of harassment or other unwanted contact by third parties. The Court accepts counsel for TikTok's representations that certain of TikTok employees have experienced harassment and that the risk as to TikTok employees is not speculative. Accordingly, after meeting and conferring in good faith after the DMC Statement is submitted each month, the

Parties shall promptly file on the docket only a redacted version of the Joint Deposition Chart which omits any contact information or other sensitive information relating to the proposed deponents' identities, such as addresses, email addresses, phone numbers, and any other personally identifying information. The Court expects the redacted version to, at most, contain the proposed deponents' names, company, and title. To the extent a Party demonstrates good cause (including but not limited to past harassment or good cause to believe there is a risk of harm as to that individual) for a proposed deponent's name, company, and/or title to be redacted as well, the Court directs the Parties to cooperate reasonably in redacting further information for any such proposed deponent (including interim steps such as replacing first and/or last names with initials). The Parties shall use reasonable efforts to cooperate in determining the amount of redaction necessary for each individual identified in the Joint Deposition Chart.

## V. TikTok Zoom Videos

The PI/SD Plaintiffs and TikTok report that they continue to meet and confer regarding their dispute as to TikTok's production of certain Zoom videos. The Parties anticipate submitting letter briefing on this dispute in advance of the next DMC if the issue remains unresolved. Upon receipt of the Parties' letter briefing, the Court will determine whether oral argument is needed, and if so, the Court will likely set a hearing on any such dispute separate from the DMC itself because the dispute does not implicate the other defendants.

## VI. Production of "Source Code Adjacent" Materials

The Parties report an issue of "disputed ripeness" regarding TikTok's objections to the PI/SD Plaintiffs' proposed Rule 30(b)(6) topics relating to "source code adjacent" information. [Dkt. 750 at 38-39]. TikTok argues that the Parties have not sufficiently met and conferred on this dispute. TikTok also claims that the dispute is "premature" because Plaintiffs have previously represented that they do not intend to seek discovery of source code in this case.

As stated at the April 22nd DMC, the Court finds that the dispute over source code adjacent materials is not premature, given that Plaintiffs made clear at one or more previous DMCs that while no Source Code Protocol is required in this case at this time, they reserve all rights to seek discovery of source code adjacent material from Defendants in this litigation. However, the Court finds that the dispute is not yet ripe as the Parties have not exhausted the

7

requisite discovery dispute resolution processes outlined in Section H of this Court's Discovery Standing Order. The Parties indicated that they will continue to meet and confer on this issue.

The Court clarifies that a discovery dispute becomes "ripe," and thus may be raised with the Court in the "Ripe" section of the monthly DMC Statement, only after the final meet and confer by lead trial counsel as set forth in Section H.2 of the Court's Discovery Standing Order. If a dispute has been raised with the Court by a discovery letter brief, the dispute is obviously ripe. The Parties are expected to follow the Discovery Standing Order for the timing of the due date for a joint discovery letter brief on any discovery disputes (which the Parties can modify by mutually agreed extension). Given that the timing of the due date for a monthly DMC Statement may overlap or closely approximate the date for a joint discovery letter, the Parties shall use their reasonable judgment to reach agreement on whether to brief a ripe discovery dispute either within their monthly DMC Statement or in separate letter briefing. If the Parties choose to file separate letter briefing, they must include a status report on the dispute in their monthly DMC Statement. In determining whether to brief a ripe dispute by joint discovery letter instead of in a monthly DMC Statement, the Parties should consider the relative legal or factual complexity of the issue (where higher complexity militates in favor a joint letter brief), the extent to which the dispute concerns substantive as opposed to administrative or procedural issues (where issues that are administrative are likely better suited for a DMC Statement), whether the dispute is discrete and efficiently presented (where such issues are likely better suited for a DMC Statement), and the expected page length of the Parties' briefing (particularly if the briefing in a DMC Statement would approach the page limits in a joint discovery letter; in no event shall the Parties use the DMC Statement as a vehicle to exceed those page limits for presenting a discovery dispute to the Court).

**VII.    Miscellaneous Issues**

At the April 22nd DMC, the Parties confirmed that all other issues of "disputed ripeness" set forth in their DMC Statement have since been resolved.

The Parties confirmed that their Joint Supplemental Letter Brief Re: State Agency Discovery [Dkt. 736], which is substantively identical to the Parties' subsequently filed Corrected Supplemental Briefing Re: State Agency Discovery [Dkt. 738], is moot. Accordingly, the Court

8

**ORDERS** that the Parties' Joint Supplemental Letter Brief Re: State Agency Discovery [Dkt. 736] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: April 25, 2024

_____
PETER H. KANG
United States Magistrate Judge