UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:  4:22-md-03047-YGR-PHK |
| | **JOINT LETTER BRIEF REGARDING RELEVANT TIME PERIOD APPLICABLE TO BYTEDANCE DOCUMENT SEARCH AND PRODUCTION** |
| This Filing Relates to: | |
| *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendants TikTok, Ltd., TikTok, LLC, TikTok, Inc., ByteDance Ltd., and ByteDance Inc. (collectively referred to in this submission as "ByteDance" or "TikTok Defendants") respectfully submit this letter brief regarding a dispute as to the Relevant Time Period applicable to Defendants' search for and production of documents and ESI in response to Plaintiffs' Requests for Production.[1]

Pursuant to this Court's Standing Order for Discovery in Civil Cases and Civil Local Rule 37-1, the Parties attest that they met and conferred telephonically and in person discussed several proposed compromise positions before filing this Joint Statement.  Specifically, they met and conferred on April 3, 2024 and April 18, 2024, on the issues that are the subject of this letter.  Lead trial counsel for the Parties involved in the dispute attended the April 19, 2024 conferral in person. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

The Parties are prepared to address this dispute at Your Honor's earliest convenience.

Dated:  May 1, 2024                     Respectfully submitted,

                                        */s/ Lexi J. Hazam*
                                        LEXI J. HAZAM
                                        **LIEFF CABRASER HEIMANN &
                                        BERNSTEIN, LLP**

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between Defendants and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-Discovery-Standing-Order-v1.2-2023_06_01-1.pdf.

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100

Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY,**
**PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,**
**PSC**
600 West Main Street, Suite 100
Louisville, KY 40202

Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

iv

rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


**FAEGRE DRINKER BIDDLE & REATH
LLP**

*/s/ Andrea R. Pierson*
Andrea Roberts Pierson, *pro hac vice*
andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
 gdrake@kslaw.com
David Mattern, *pro hac vice*
 dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

*Attorneys for Defendants TikTok Inc.,
ByteDance
Inc., ByteDance Ltd., TikTok Ltd., and TikTok,
LLC*

**Plaintiffs' Position**

This letter dispute concerns the Relevant Time Period that should apply to Plaintiffs' discovery requests to ByteDance. After meeting and conferring, Plaintiffs proposed January 1, 2012 through April 1, 2024[2] as the default Relevant Time Period.[3] There is ample support for that default period. By contrast, the period ByteDance proposes—January 1, 2017-February 14, 2023—would shield relevant facts from disclosure for no principled reason.

Importantly, the Defendant here is not TikTok, the platform, but rather ByteDance and its affiliates. Plaintiffs are entitled to take discovery of what the ByteDance Defendants did to develop and test the relevant technologies, their awareness of risks posed by those technologies, and ByteDance's analysis, planning, and goals to target and grow youth engagement. As shown below, the relevant facts on these issues extend back several years before TikTok was launched under that name in the U.S. in 2017. And the relevant facts continue to evolve everyday.[4]

Courts recognize that a defendant's experience with predecessor or related products is relevant to issues such as notice, knowledge of risk, and alternative designs. *E.g.*, *In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *19 n.104 (N.D. Ohio June 4, 2010) ("historical documents discovered from defendants . . . dating back several decades" relevant to show defendants' awareness of the dangers of welding fumes "regardless of which welding product emitted them," as well as defendants' knowledge of the effect of failing to warn of the dangers); *Kirksey v. Schindler Elev. Corp.*, 2016 WL 7116223, at *5 (S.D. Ala. Dec. 6, 2016) (evidence of defendant's "foreign designs and the timeframe of their appearance" was "highly relevant" to whether "alternative, feasible designs were available and existed at the time of installation" of the product at issue in the U.S.). Indeed, courts in product liability cases have long held that even evidence of a <u>non-party</u> manufacturer's knowledge of product risks and the efficacy of its warnings may be relevant to a defendant manufacturer's knowledge. *Welding Fume*, 2010 WL 7699456, at *88-89.

<u>**ByteDance Began Designing the Relevant Technology in 2012:**</u> ByteDance began designing the core technology that drives TikTok in 2012 by launching the "Toutiao" app. Second Am. Master Compl. (PI) ("PI Compl.") ¶¶ 557, 560.[5] Building on Toutiao's success, ByteDance launched a video app called "Douyin" in 2016. PI Compl., ¶ 558. ByteDance then rolled out a similar app using the new name "TikTok" in 2017. *Id.* ¶ 559. TikTok ███████████████████████████████████████. On April 24, 2024, the U.S. passed legislation labeling ByteDance a "Foreign Adversary Controlled Application" and requiring ByteDance to either fully divest TikTok to a U.S. owned company or cease operating TikTok in the U.S. *See* H.R. 7521.

Critically, ███████████████████████████████████████████████████████
███████████████████████████████████████. Indeed, ███████████████

---

[2] With allowance for targeted supplementation.

[3] Certain of Plaintiffs' discovery requests (e.g., requests for marketing budgets or revenue projections for TikTok) inherently implicate a shorter time period.

[4] *See*, *e.g.*, https://newsroom.tiktok.com/en-us/more-updates-to-help-the-tiktok-community-create-and-share-safely (ByteDance April 17, 2024 announcement concerning, among other things, changes to the TikTok platforms purported to create a "safer" user experience).

[5] Initially a news app, ███████████████████████████████████████████
████████████.



. Thus,
. And

In short, to understand how ByteDance developed and designed its addictive design, what alternative designs were available and/or considered and rejected, and why ByteDance chose the design it did when it decided to enter the U.S. social media market, Plaintiffs need discovery going back to the beginning of the  development and testing of the relevant technology—2012.

**ByteDance Developed Its Marketing, Advertising, and Growth Strategy Prior to TikTok's U.S. Launch:**  ByteDance's strategy to target and grow use by teens and kids also is a core issue in both the Personal Injury and School District cases (where this conduct is alleged to have been a substantial factor in creating the public nuisance). Again, even the modest facts disclosed to date show ByteDance's strategy in the U.S. was informed by and modeled on its strategy and learnings from Douyin going back to 2016. When ByteDance launched TikTok, ████████████████████
████████. The company spent massively on ads, particularly on platforms like Snap where it could "reach young users." PI Compl. ¶ 677. This ad buying process "was run from Beijing by the company's experienced growth hacker teams." Matthew Brennan, *Attention Factory: The Story of TikTok and China's ByteDance* (Oct. 2020), at 258.

**TikTok Is Inextricably Intertwined with Musical.ly, Which Launched in 2014:**  Another important set of facts before 2019 involves Muscial.ly, an app that operated from at least 2014-2017.[6]  What happened at Musical.ly is relevant for several reasons. First, Plaintiffs allege ByteDance modeled Douyin on Musical.ly, which had tremendous success targeting and building huge numbers of teen and child users. PI Compl. ¶¶ 558-59.[7] Indeed, Musical.ly's strategy to target children eventually led to a record-breaking COPPA settlement with the FTC. *Id.* ¶ 573. Second, ByteDance acquired Musical.ly in 2017 for $1 billion and then proceeded to merge Musical.ly into TikTok. *Id.* ¶ 559. Musical.ly's founder Alex Zhu is now a ByteDance executive in charge of "Product and Strategy." ByteDance also incorporated technology from Musical.ly into TikTok. PI Compl. ¶ 631.  For example, ████████████████████
████████████████████
███████████████. Given how completely ByteDance incorporated Musical.ly into TikTok—and given Musical.ly's own track record of ruthlessly targeting kids—there is more than

---

[6] Plaintiffs' Requests for Production expressly seek information concerning Musical.ly, as well as TikTok. *E.g.*, Pltfs. RFP Set 4, Definitions ("TikTok Platform" means any version of the Musical.ly or TikTok platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform").

[7] *See How a failed education startup turned into Musical.ly* (https://web.archive.org/web/20190111121542/https://www.businessinsider.my/what-is-musically-2016-5/) (reviewing history of Musical.ly).

ample basis to obtain discovery of what ByteDance learned and likely adopted from Musical.ly's experience and technology for how to target and compel use by children of a short video app.

**Discovery of ByteDance Should Run Through April 1, 2024**: Finally, as to the "cut-off" date for discovery, the law is clear that discovery does not "cut off" on the date a complaint is served. *See Rosales v. FitFlop USA, LLC*,  2013 WL 12416060, at *2-3 (S.D. Cal. 2013). Further, where claims involve allegations of ongoing conduct and injunctive relief, discovery through the present is appropriate. *FTC v. Precision Patient Outcomes, Inc.*, 2023 WL 4475604, at *2 (N.D. Cal., 2023); *Wilson v. Gaver*, 2016 WL 11811706, at *6 (C.D. Cal. 2016). Here, the bellwether Personal Injury Plaintiffs as well as the School District Plaintiffs allege ongoing harm.[8] And ByteDance continues to develop the relevant technology.[9] Nonetheless, Plaintiffs have compromised at April 1, 2024, with allowance for supplementation thereafter for new developments, such as changes to relevant features/policies and ByteDance's responses to legislative bans and safety measures.

*       *       *

**TikTok's Position**

The TikTok Defendants respectfully request that the Court hold the present "relevant time frame" dispute in abeyance until the Parties complete their discussions over and brief the separate dispute regarding discovery into non-TikTok platforms available outside of the United States. *See* Joint DMC Statement at 26-28 (ECF No. 750) (describing separate disputes over "Relevant Time Period" and "Outside United States Conduct").[10]

But if the Court decides it now, it should adopt TikTok's proposed discovery period of January 1, 2017 to February 14, 2023. The date range captures the only potentially relevant period—it spans months before the TikTok platform was available in the United States to the date Plaintiffs filed their Master Complaint. Plaintiffs acknowledge that TikTok was not formed until 2017, and outside of passing references to different platforms like Douyin and musical.ly, offer no allegations related to TikTok from any time period prior to 2017. Sec. Amd. Compl. ¶¶ 554-689A (ECF No. 494). Rather than accept this reasonable position, Plaintiffs have instead spent much effort on

---

[8] *E.g.*, Case No. 4:23-cv-01584-YGR (PHK), PFS at § VII.A (ongoing addiction, anxiety, depression, and body dysmorphia); Case No. 4:23-cv-05632-YGR (PHK), PFS at § VII.A (ongoing addiction, anxiety, depression, body dysmorphia, binge eating disorder, and sleep disorder); First Am. Master Compl. (School District and Local Government), ¶¶ 29, 194, 247, 997, 1026.

[9] Just yesterday, it was reported that ByteDance has introduced measures to prevent addiction in senior users of Douyin in China. *There Is No TikTok in China, but There Is Douyin. Here's What It Is* (https://www.nytimes.com/2024/04/25/business/china-tiktok-douyin.html). What ByteDance knows about such addiction, why it believes the new measures can and should be targeted to a specific age-group of users to address addiction, and why it chose to roll out such measures only on Douyin and not on TikTok are probative of several core issues in this litigation.

[10] Plaintiffs argue that their need for discovery into non-US platforms including Toutiao and Douyin justifies their demand for an earlier relevant time period. This argument was not previously raised in the April 12 Joint DMC Statement, in the April 19 final meeting of trial counsel (at which the TikTok Defendants' counsel inquired into the basis for Plaintiffs' position on the "relevant time frame," and Plaintiffs' responded with only vague generalities about "marketing," "design," and "pre-launch" materials and broad references to the Master Complaint), or at the April 22 DMC.

3

detours (a) about *different* services, (b) arguing the relevance of barred algorithm "design" claims, and (c) distorting the documents they rely on. Indeed, the documents Plaintiffs themselves cite state that ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████.

The Parties' competing positions. No plaintiff may credibly allege injuries from use of the TikTok Platform ("TikTok") before its May 2017 launch in the United States. The TikTok Defendants therefore appropriately objected to searching for documents dated before the time TikTok became available in response to Plaintiffs' over-300 document requests, or dated after the date Plaintiffs filed the Master Complaint in the MDL as the foundation of all claims.

Plaintiffs notified the TikTok Defendants that Plaintiffs would not agree to these limits, and since that time, the TikTok Defendants have exhaustively attempted to meet and confer with Plaintiffs to resolve this dispute, including in letters dated April 3, 12, 13, 17, and 20, 2024; and during six hours of video conferrals on April 3, 9, and 18, 2024. In response, Plaintiffs have declined to negotiate in good faith, contending there is *no compromise* they will accept: "First, **our position is that there is no compromise to offer and that as to discovery prior to launch – it applies across the board.** All RFPs unless an RFP states otherwise. I think I made that clear from the beginning on this point." [April 18 E-mail from M. Weinkowitz to. A. Fiterman.]

In an attempt to avoid Court intervention, the TikTok Defendants have agreed to search for and produce documents dating back to **January 1, 2017**—more than four months prior to the launch of TikTok. In contrast, only after the April 19 in-person conferral among lead counsel did Plaintiffs put *any* parameters on their requested timeframe, asserting that "the Relevant Time Period for each RFP begins **January 1, 2012**," because they allege that was "the year Defendant ByteDance began designing [its] content recommendation AI;" and "runs through April 1, 2024" subject to "reasonable supplementation thereafter." [April 24 E-mail from J. Scullion to A. Fiterman.]

Plaintiffs' proposed time frame seeks irrelevant discovery and is disproportionate to the needs of the case. Plaintiffs do not and cannot demonstrate (as they must) the relevance of pre-2017 discovery in response to any request, let alone "all" 300 of their requests. *See RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 2021 WL 10312431, at *11 (C.D. Cal. Dec. 22, 2021) ("The party seeking discovery bears the initial burden of establishing relevance."). On their face, most of Plaintiffs' requests appear to target discovery from *post-launch* time periods. *See, e.g.*, RFP Nos. 126-147 (addressing user demographics and behavior, and advertising to kids); RFP Nos. 148-170 (addressing parental controls, user controls, features, terms of service, and warnings); RFP Nos. 171-197 (addressing health and safety efforts, complaints, and CSAM and bad actor reporting); RFP Nos. 198-212 (addressing marketing of platform, lobbying efforts, and industry communications related to platform); RFP Nos. 230-233 (addressing use of platform by students and in schools). Plaintiffs provide no legitimate basis for requiring the TikTok Defendants to search back to 2012, five years before the TikTok platform at issue existed.

Plaintiffs' proposed time frame is also disproportionately broad and burdensome. Despite the TikTok Defendants' repeated requests, Plaintiffs have refused to identify any subset of specific requests (out of the 300-plus served) for which Plaintiffs believe they *actually need* pre-2017 discovery to litigate their claims. They contend only that "it applies across the board." Plaintiffs must identify the specific pre-launch information that they claim is relevant, and the basis for that claim, before the TikTok Defendants and Court can properly evaluate whether the demand is relevant and proportionate.

<u>Plaintiffs' reliance on non-US platforms is unripe and improper</u>. Plaintiffs are wrong that an earlier time frame is needed for discovery into *different platforms* (separate from TikTok), including platforms available only outside of the US. Toutiao and Douyin are not at issue in this litigation in that Plaintiffs do not claim injuries therefrom. Further, they are "profoundly different" from TikTok (Plaintiffs' words, *see* Sec. Amd. Compl. ¶ 560 (ECF No. 494)), are not the subject of even a single document request served thus far, and bear marginal if any relevance to Plaintiffs' allegations against TikTok. Though Plaintiffs argue that these other platforms' "AI algorithms" may be relevant, the Court has dismissed Plaintiffs' algorithm-based design defect claims. *See* MTD Order at 16-19 (ECF No. 430). Even assuming discovery into the *TikTok algorithm* will be allowed in light of this dismissal (which TikTok opposes), what Plaintiffs appear to be demanding here is different—they want discovery of *different platforms' algorithms*, a proposition that goes well beyond what is relevant or proportional to the needs of this litigation. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992) (information regarding dissimilar predecessor truck models not discoverable).

<u>Plaintiffs cannot invoke musical.ly to expand the relevant time period</u>. TikTok is the only platform at issue in this litigation affiliated with the TikTok Defendants. The fact that TikTok Defendants operated or acquired different platforms does not open the door to discovery of those platforms, nor does it justify expanding the relevant time period for document production in this case years before TikTok was even contemplated. *See Barcenas v. Ford Motor Co.*, 2004 WL 2827249, at *3 (N.D. Cal. Dec. 9, 2004) ("To allow 'discovery of models that are not substantially similar is truly the equivalent of comparing apples and oranges where there are differences between the other models [of a product] and the model at issue."); *Hofer*, 981 F.2d 377.

<u>The TikTok Defendants' proposal allows for reasonable pre-launch design and marketing discovery</u>. The TikTok Defendants have already agreed to produce pre-launch documents beginning January 1, 2017, months before TikTok was launched. A presumptive "relevant time period" that begins on this date will provide Plaintiffs more than reasonable discovery access into these issues pre-launch, and Plaintiffs offer no basis for why they would require discovery from any earlier timeframe—let alone one dating back to as early as 2012. *See In re Meta Pixel Healthcare Litig.*, 2023 U.S. Dist. LEXIS 104369, at *8-12 (N.D. Cal. June 16, 2023) (concluding appropriate discovery start date was "the date the Pixel was first launched," that discovery relating to functionality released after the Pixel launch should start at date of later release, and that while plaintiffs may seek certain discovery before the date Pixel launched it would "depend on the specific requests and the timing of the activities they implicate"); *Shijiazhuang Hongray Grp. v. World Trading 23, Inc.*, 2022 WL 17363907, at *5-6 (C.D. Cal. Nov. 15, 2022) (affirming magistrate order precluding discovery into products and time periods not implicated by plaintiff's complaint). If Plaintiffs determine *after* reviewing the TikTok Defendants' production that earlier documents are needed, Plaintiffs can request such information based on *actual evidence* demonstrating a need, as opposed to just speculation, and the Court will be better equipped to evaluate the relevance and proportionality of Plaintiffs' demands.

The Court should reject Plaintiffs' demand for document discovery dating back to January 1, 2012. Further, the Court should adopt the TikTok Defendants' proposed relevant time period for discovery, beginning on January 1, 2017, and extending to February 14, 2023—the date that the Plaintiffs filed the Master Complaint in the MDL. To the extent discovery reveals a need for an expansion of this timeframe, Plaintiffs can raise and the Court can consider such request at a later time.

**<u>ATTESTATION</u>**

I, Andre Mura, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: May 1, 2024

By: <u>/s/ *Andre M. Mura*</u>

Andre M. Mura