UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING RELEVANT TIME PERIOD APPLICABLE FOR DISCOVERY AS TO SNAP INC.**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

      Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendant Snap Inc. respectfully submit this letter brief regarding a dispute concerning the beginning date for the Relevant Time Period for discovery.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on May 3, 2024 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: May 10, 2024

Respectfully submitted,
/s/     /s/ Lexi J. Hazam
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER

**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW
CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**

700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY,
PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,
PSC**
600 West Main Street, Suite 100

iii

Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

iv

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,**
**LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

v

*Attorneys for Plaintiffs*

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**Plaintiffs' Position**

This letter dispute concerns the beginning date for the Relevant Time Period that should apply to Plaintiffs' discovery requests and to Snap's custodial searches.[1] Plaintiffs propose a beginning date of January 1, 2011. Snapchat was created and commercialized in 2011, and many of the platform's central features—including its ephemeral Snaps, Snapscores, Stories, Discover, lenses and filters, and its age verification measures—were developed and/or launched between 2011 and 2015. Sec. Am. Master Compl. (PI) ("PI Compl.") ¶¶ 443-44, 470, 491. By contrast, Snap proposes a beginning date for the Relevant Time Period of January 1, 2015, which would deprive Plaintiffs of relevant discovery concerning these and other central features. The Court should reject Snap's position and order that the beginning date for the Relevant Time Period is January 1, 2011.

**<u>Many of Snapchat's Central Features Were Developed Between 2011 and 2015</u>:** Snap developed and/or launched many of Snapchat's central features prior to 2015: ephemeral messaging ("Snaps") and Snapscores were developed in or around 2011, PI Compl. ¶¶ 443-44, 470-71; its SnapKidz and Stories features were developed in 2013, *id.* ¶¶ 462, 491; and its Discover feature in approximately 2014-2015. Snapchat introduced filters in 2013, *id.* ¶ 517, and in 2014, Snap began pushing notifications to users. Snapchat launched its lenses and trophies features in 2015, meaning both were developed earlier than 2015.[2] Each of these features contributed to adolescents' compulsive Snapchat use and discovery of each feature is relevant to Plaintiffs' failure to warn claim.[3] Moreover, the Court has ruled that Section 230 does not bar defect or negligence claims regarding Snapchat's lenses and filters, *see* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss ("MTD Order"), ECF No. 430 at 14-15, each of which was developed prior to 2015.

Important, highly relevant aspects of the Snapchat platform were also designed and implemented prior to 2015. Snap chose to forego age verification on its platform from 2011 to 2013; age verification was not implemented until 2013. PI Compl. ¶¶ 461-62. Even then, Snap's CEO called the age verification measures "effectively useless." *Id.* ¶ 464. Age verification defects are not barred by Section 230, MTD Order at 14, and are relevant to Plaintiffs' claims.

Snapchat expanded from the Apple Store to Android in 2012, and Snap's communications about expansion, growth, and increasing its adolescent users are relevant to Plaintiffs' case. That same year, Snap's C-Suite reported that Snapchat was widely used by students in schools, and beginning as early as 2012, Snap decided to promote and target its app to children. PI Compl. ¶¶ 446, 456. In addition, Snapchat began running advertisements—and further monetizing its adolescent user base—in 2014. *Id.* ¶¶ 451-54. Indeed, Snap's entire business model relies on maintaining and/or increasing advertising revenue, which, in turn, requires it to continually increase the number of daily active users. *Id.* Between 2011 and 2015, Snapchat use skyrocketed to 100 million users, *id.* ¶ 448; 40 of 190 plaintiffs in the MDL (over 20%) and 72 of 265 plaintiffs in the JCCP (27%) allege they started using Snapchat before 2015. Snap's decision to target and increase its adolescent

---

[1] The parties continue to meet and confer regarding the appropriate ending date for discovery.

[2] *See* https://www.techtimes.com/articles/85131/20150916/snapchat-introduces-lenses-trophies-and-paid-replays-here-s-what-you-need-to-know.htm.

[3] Discovery on each of these features is also relevant to Plaintiffs' negligence claim in the JCCP.

users to drive financial growth is highly relevant to Plaintiffs' claims. Accordingly, Snap's contention that Plaintiffs' claims do not rely on pre-2015 conduct is simply wrong.

Finally, in February 2015, Snap launched its Safety Center, which provides tips and warnings on how to stay safe while using Snapchat. Documents pre-dating 2015 will reflect the development of, and impetus for, the Safety Center's launch.

**Relevant Authority Supports Plaintiffs' Position:** Court generally "allow discovery to extend to events before and after the period of actual liability so as to provide context." *Hatamian v. Adv. Micro Devices, Inc.*, No. 14-cv-226-YGR-JSC, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015); *see also Petconnect Rescue, Inc. v. Salinas*, 2022 WL 448416, at *7 (S.D. Cal. Feb. 14, 2022) (same). The discovery period turns on the facts of the case; more lengthy discovery periods are appropriate where necessary to ascertain the defendant's knowledge or notice of harmful conduct. *See, e.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282215, at *5 (N.D. Cal. Sept. 29, 2021) (ordering fourteen-year relevant time period where such information "could be probative of Facebook's intent"). Here, liability for Plaintiffs' design defect, failure to warn, and negligence claims extends back to the development of the Named Features, as well as the development of Snapchat's critical platform design choices, many of which were made between 2011 and 2015. *See Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (temporal scope encompassing the design, manufacture, and decision-making process is reasonable in a products liability case); *Theobald v. Piper Aircract, Inc.*, 2017 WL 9248504, at *3 (S.D. Fla. Nov. 15, 2017) (discovery period extended eight years before airplane was built in products liability case). Foreclosing discovery that pre-dates 2015 will unreasonably deprive Plaintiffs of information critical to their case.

**Snap's Burden Arguments Are Unpersuasive:** Snap raises a burden argument in opposition to the Relevant Time Period start date identified by Plaintiffs.[4] "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. 2005). Snap cannot meet that burden here. First, Snap has acknowledged during conferrals that it has not actually performed any custodial searches using Plaintiffs' Relevant Time Period start date and thus does not actually know how many additional documents Plaintiffs' proposed time frame would identify. This alone is reason to reject Snap's position. *See, e.g.*, *Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at *7 (C.D. Cal. Feb. 6, 2020) (rejecting burden claim where defendant "makes clear that is has not undertaken any effort to find out whether such information exists or not").

Perhaps more importantly, however, Plaintiffs have attempted to address Snap's burden concerns through commonsense solutions that do not foreclose critical discovery. Plaintiffs offered to negotiate the Relevant Time Period on an RFP-by-RFP basis. In other words, for RFPs seeking information that is not likely to pre-date 2015, Plaintiffs have agreed that the relevant time period

---

[4] The beginning date for the Relevant Time Period proposed by YouTube and Meta is also January 1, 2015, illustrating that this date has little to do with the actual facts of the case.

can start at 2015 or later.[5] Snap initially agreed to this approach, but then informed Plaintiffs it would not search custodial files for any documents pre-dating January 1, 2015, meaning Plaintiffs would receive no documents from custodial sources that pre-date 2015. Even there, Plaintiffs proposed commonsense methods to reduce Snap's purported burden, by taking the position that Snap's custodial searches could begin on the date the individual custodian commenced employment with Snap. To date, Snap has agreed to produce *only one* custodial file for an employee who started at the company prior to 2015, and Plaintiffs have requested custodial files for six additional custodians who began work prior to 2015.[6] This means that Snap may only be required to search **at most** seven custodial files for documents that pre-date 2015 and, if Snap gets it way, it would only have to search one custodial file for such documents. Snap has refused Plaintiffs' approach. Plaintiffs have attempted to compromise to reduce Snap's purported burden; Snap's position is simply unreasonable. Plaintiffs thus request that the Court order that the Relevant Time Period for discovery served upon Snap begins on January 1, 2011, and that custodial searches should begin on the date the individual custodian commenced employment with Snap.

*************************

**Snap's Position**
Beyond the mere fact that Snap existed as a company in 2011, Plaintiffs offer no justification for their sweeping timeframe. None of Plaintiffs' claims depend on events that occurred before 2015. Indeed, the vast majority of Plaintiffs—and all but one of the current bellwether plaintiffs—did not use Snapchat before 2015, and all of Plaintiffs' claims depend on post-2015 conduct. The fact that a handful of features might have been initially developed before 2015 does not matter: what matters is the way these features operated at the time that Plaintiffs used them (which will be revealed by document collection from 2015 or later). If Plaintiffs' logic were accepted, companies would always have to begin their document collection from the first date of their existence. This, of course, is not how discovery works. Snap has more than complied with Rule 26(b)(1)'s proportionality principle by offering a production time frame of nearly eight years—at least three years beyond the statute of limitations period.

**<u>Pre-2015 Discovery Is Not Proportionate to the Needs of this Case.</u>** Contrary to Plaintiffs' contention that discovery must go back to the first date of a company's existence, courts routinely limit the temporal scope of discovery to avoid sweeping in irrelevant information or unduly burdening the responding party. *See, e.g.*, *Kelley v. AW Distrib., Inc.*, No. 20-CV-06942-JSW, 2021 WL 5414322, at *1 (N.D. Cal. Sept. 3, 2021) (rejecting Plaintiffs' request for fifteen-year date range for production and limiting discovery to eight-year period); *N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV, 2016 WL 3654759, at *17 (D. Kan. July 8, 2016) (limiting discovery in products liability case to six-year time frame); *In re Brinker Data Incident Litigation*, 337 F.R.D. 424, 425 (M.D. Fla. 2020) (limiting discovery in data breach case to the year prior to breach). Indeed, "[w]hen a discovery request is overly broad based on temporal

---

[5] For example, certain RFPs seek information regarding Snapchat features that were developed after 2015, such as the Family Center or My Eyes Only. For these features, Plaintiffs have agreed to the Relevant Time Period start date proposed by Snap.
[6] Of these six proposed custodians, only one, a company founder and C-suite member, commenced employment in 2011; four began at Snap in 2014; and one began at Snap in 2013.

scope, the proponent of the discovery bears the burden to explain why the discovery request spans a reasonable number of years." *N.U.*, 2016 WL 3654759, at *17.

Plaintiffs cannot meet their burden to show that discovery spanning the entirety of Snap's corporate lifecycle is proportionate. The majority of features identified in the Master Complaint were released in 2015 or later—including, for example, Discover, Lenses, Streaks, Trophies, Charms, Memories, My Eyes Only, Snap Map, Spotlight, and Family Center—and the Master Complaint repeatedly emphasizes how Snap developed and, in some cases, altered these features *after* 2015.[7] Thus, for most features at issue, limiting discovery to 2015 will not deprive Plaintiffs of any documents.

Limiting discovery to post-2015 documents is also consistent with Plaintiffs' claims. As Plaintiffs acknowledge, the vast majority of Plaintiffs—including eight of the nine current bellwether personal injury Plaintiffs—did not begin using Snapchat until *after* 2015. So document collection from 2015 to 2023 will encompass when the alleged harm began for most Plaintiffs. *See Simkins by Simkins v. New York Life Ins. Co.*, No. 2:23-CV-578, 2023 WL 6541460, at *2 (W.D. Wash. Oct. 6, 2023) (limiting time period for 30(b)(6) deposition to seven-year period starting from when the alleged harm began). And for the few Plaintiffs who began using Snapchat before 2015, all but one (non-bellwether) plaintiff allegedly continued using the service after 2015. Hence, post-2015 discovery would cover when all but one of the Plaintiffs were allegedly using Snapchat.

Further, Plaintiffs' allegations rely primarily on Snap's post-2015 conduct. For instance, Plaintiffs cite post-2015 research to support their claim that Snap encourages compulsive use. MC ¶¶ 486 (2018 research on Streaks), 500, (2016 survey of users 12–17), 515 (2017 survey regarding Snapchat filters), 525 (2022 study of user demographics). And Plaintiffs allege that post-2015 actions by Congress warned Snap about the risks of CSAM on Snapchat. *Id.* ¶¶ 532 (2019 letter from Congress to Snap), 540 (2021 Congressional testimony by Snap executive); *see also id.* ¶ 533 (alleging that, in response to Congress's 2019 letter, Snap announced in 2020 that it would use PhotoDNA to prevent the spread of CSAM). Discovery into documents dating after 2015 would encompass documents related to these and similar allegations, if they exist.

By contrast, extending document discovery to 2011—thereby adding an additional four years' worth of documents to the already lengthy proposed relevant time period—would burden Snap. Such burdens would not be limited to custodial searches, as Snap would need to conduct targeted collections before 2015. For instance, Snap would need to produce some requested user data dating back before 2015.

**Plaintiffs Do Not Need Pre-2015 Discovery to Prove their Case.** Pre-2015 discovery is also not necessary for the handful of relevant features that were released before 2015. Because all of these features remained active after 2015, post-2015 documents will provide Plaintiffs with

---

[7] *E.g.*, Master Complaint ("MC"), Dkt. 494 ¶¶ 448 (timeline of Snap features showing numerous features, like Trophies, Lenses, and Memories, were launched in 2015 and 2016), 476 (Charms; 2020), 494 (Discover; post-2016), 496–97 (Spotlight; 2020), 504 n.645 (My Eyes Only; 2016), 522 (Family Center; 2022). Contrary to the claims in Plaintiffs' brief, Discover was introduced in 2015. *See* https://newsroom.snap.com/introducing-discover.

4

ample discovery into how those features operate, Snap's consideration of any changes, and Snap's knowledge of any alleged harm resulting from the features. For instance, Plaintiffs allege that, in 2016, Snap significantly altered Stories (a feature introduced in 2013) to "include recommendations" and add "a feature that starts a new Story automatically after the preceding one ends," which Snap allegedly knew would harm users' mental health. MC ¶ 493. A search for documents after 2015 would include discovery into this 2016 change, which Plaintiffs portray as significant to their claims, as well as Stories' operations more generally.

Likewise, while Snap released "smart filters" in 2013 that "allowed users to stamp date/time, temperature, battery life, altitude, and speed on their Snaps," *id.* ¶ 516, Plaintiffs' allegations focus on appearance-altering filters and rely on post-2015 studies into those filters' effects, *id.* ¶¶ 514–15. The same is true for push notifications—a device-based feature that Snap has consistently used after 2015. Post-2015 document collection will cover these and the other features identified by Plaintiffs.

Further, the key features Plaintiffs have identified as being released before 2015 are at issue only on the failure-to-warn claims. Snaps and Stories are both protected by Section 230 "because they provide short-form and ephemeral content." Dkt. 430 at 18. Plaintiffs' claims related to Snapscore and Trophies are similarly barred by the First Amendment. *Id.* at 22 ("defendants' content ... such as awards, are speech"). And claims relating to notifications are also barred: "where notifications are made to alert users to third-party content, Section 230 bars plaintiffs' product defect claims," *id.* at 18, and "the First Amendment protects defendants for the timing and clustering of notifications they publish to users regarding content created by defendants themselves," *id.* at 22. Requiring an additional four years of document collection so that Plaintiffs may be able to locate additional evidence of these features' design is not proportionate. *See* Fed. R. Civ. P. 26(b)(1). Discovery from 2015 on will provide Plaintiffs with adequate discovery into the key issues for the failure-to-warn claims—Snap's knowledge of these features' alleged defects and whether Snap failed to warn Plaintiffs of the alleged risk of harm. *See* Restatement (Third) of Torts: Prod. Liab. § 2 (1998).

Nor do Plaintiffs require pre-2015 discovery into age verification or advertising on Snapchat. As with the features discussed by Plaintiffs, Plaintiffs' allegations on age verification and advertising focus on post-2015 conduct. For instance, Plaintiffs quote a 2019 article to allege that Snap's age verification measures are ineffective.[8] MC ¶ 464. Plaintiffs also allege that Defendants have failed to implement "robust age verification" measures. *Id.* ¶ 845. Post-2015 discovery will include any alternative measures that Snap considered implementing. Same for advertising, where Plaintiffs rely on advertising statistics from 2018 and 2022 and post-2015 advertising to support their allegations that Snap promotes Snapchat to users under 18. *Id.* ¶¶ 451 (2018 and 2022 advertising statistics), 458 (2019 interview with Snap's CEO), 459 (December 2022 statement to advertisers). Likewise, for Snap's user growth the complaint cites trends in user engagement between 2017 and the present. *Id.* ¶¶ 448–49.

Snap respectfully requests that the Court deny Plaintiffs' request.

---

[8] Plaintiffs' brief incorrectly misattributes a quote about age verification to Snap's CEO; in fact, the quote is a paraphrase of statements by other Snap executives. MC ¶ 464.

## **ATTESTATION**

I, James J. Bilsborrow, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: May 10, 2024

By: /s/ James J. Bilsborrow

6