IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>**JOINT STATEMENT RE: TIME LIMITS IN CROSS-NOTICED DEPOSITIONS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

The parties respectfully submit this Joint Statement regarding their outstanding dispute over whether the cumulative and per-deposition time limits on depositions set by the Court in Discovery Management Order ("DMO") No. 3 (ECF 667) apply to time spent by non-parties to the MDL and JCCP examining the witness during a deposition cross-noticed by MDL or JCCP parties. Pursuant to this Court's Standing Order for Discovery in Civil Cases and Civil Local Rule 37-1, the parties attest that they met and conferred telephonically and exchanged proposals several times before filing this Joint Statement. Specifically, they met and conferred on May 1 and May 3, 2024, on the issues that are the subject of this letter. Lead trial counsel for the parties involved in the dispute attended the May 3, 2024 conferral. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

The parties will be prepared to address this dispute at the next Discovery Management Conference, currently set for May 16, 2024.

Dated: May 10, 2024

Respectfully submitted,

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)

Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Nayha Arora (CA SBN 350467)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (510) 879-1300
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the
State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*pro hac vice*

3

Mandy K. Wang (NJ Bar No. 373452021),
*pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division
of Consumer Affairs*

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP

4

620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorney for Defendants Meta Platforms,*
*Inc. f/k/a Facebook, Inc.; Facebook*
*Holdings, LLC; Facebook Operations, LLC;*
*Facebook Payments, Inc.; Facebook*
*Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**

5

633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

7

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK
LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

8

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

## ATTESTATION

I, J. Christian Lewis, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: May 10, 2024

_____
J. CHRISTIAN LEWIS
Office of the Kentucky Attorney General
Division Chief

**Meta's Position.**  Defendants in this MDL collectively face dozens of Related Actions in state courts around the country.  For "efficiency" of the Parties, and to "minimize burden" on Defendants' current and former employees from having to sit for multiple depositions, the Court instituted cross-noticing procedures under which the MDL/JCCP Plaintiffs are entitled to cross-notice any deposition pending in a Related Action or, if they decline, to show good cause why the witness should be re-deposed in the MDL/JCCP.  *See* ECF 742 ("Dep. Protocol") § II.H.1, .3, .5.  If the MDL/JCCP Plaintiffs elect to cross-notice, they are required to "coordinate" with the noticing Related Action Plaintiff "to maximize efficient use of time in the cross-noticed deposition."  *Id.* § II.H.5.  And "[i]f Plaintiffs cross-notice such a deposition, the individual and cumulative time limits for depositions *apply to that cross-noticed deposition*."  *Id.* § II.H.3 (emphasis added); *accord* ECF 700 (Order re: Dep. Protocol) at 2.  Now, the MDL/JCCP Plaintiffs seek to re-write the Deposition Protocol they negotiated with Defendants and presented jointly to the Court to say that the individual and cumulative time limits for depositions apply only to *the MDL/JCCP Plaintiffs' questioning* at that cross-noticed deposition.  That atextual reading would undermine the Court's objective of "maximizing efficiency and minimizing burden," Dep. Protocol § II.H.6, would create perverse incentives, and should be rejected.

Defendants' concerns are not hypothetical.  Already in one Related Action, the Tennessee Attorney General ("TN AG") has noticed the depositions of 34 current and former Meta employees, including some of its senior-most executives (*e.g.*, Meta's current CEO (Mark Zuckerberg), Chief Product Officer (Chris Cox), Head of Instagram (Adam Mosseri), and Chief Information Security Officer (Guy Rosen), and former Chief Operating Officer (Sheryl Sandberg)).  With the exception of two witnesses for whom the cross-noticing deadline has not yet arrived, the MDL/JCCP Plaintiffs have cross-noticed each of those depositions.  While the TN AG elected not to bring a COPPA claim, the factual allegations and legal claims asserted in the TN action (as well as the other Related Actions) are otherwise the same as or substantially similar to those being asserted by the multi-state AGs here, and highly overlapping with the private MDL/JCCP Plaintiffs' claims.  That is not surprising, given that the TN AG *co-led* the State AGs' pre-suit investigation of Meta with the Colorado AG (a co-lead State in this MDL), before electing to file suit on the same day in its home state.  *See* "TN AG Skrmetti Leads Coalition in Filing Lawsuits against Big Tech Giant Meta and its Social Media Platform" (Oct. 24, 2023) (TN AG announcing that "[t]hese lawsuits are the result of a bipartisan, nationwide investigation led by [TN AG] Skrmetti and Colorado Attorney General Phil Weiser"); "Bipartisan coalition of attorneys general file lawsuits against Meta for harming youth mental health through its social media platforms" (Oct. 24, 2023) (same announcement by Colorado AG).

Specifically, the TN AG alleges two violations for unfairness and deception under its Consumer Protection Act, TN Compl. ¶¶ 396-415, both of which are substantially similar to the unfairness and deception claims alleged in the Master PI Complaint, ¶¶ 956-975, and the Multi-State AG Complaint (which includes counts for each State's Unfair or Deceptive Consumer Protection Act), ¶¶ 846-1170.  These complaints all allege, for example, (1) that Meta designed its platforms to induce compulsive use by young users, *compare* TN Compl. ¶¶ 399-402, *with*, Master PI Compl. ¶ 76, *with*, Multi-State AG Compl. ¶¶ 846-47; (2) that Meta withheld important information about its platforms' alleged impact on mental health and the frequency of harmful experiences, *compare* TN Compl. ¶ 404, *with*, Master PI Compl. ¶¶ 965, 978-83, *with*, Multi-State AG Compl. ¶¶ 846-47; (3) that Meta made material misrepresentations about its platforms' safety and wellbeing-related features, *compare* TN Compl. ¶¶ 410-411, *with*, Master PI Compl. ¶¶ 965, 978-83, *with*, Multi-

State AG Compl. ¶¶ 846-47; and (4) that Meta failed to disclose purported harms allegedly associated with its platforms and their features, *compare* TN Compl. ¶ 412, *with*, Master PI Compl. ¶¶ 965, 978-83, *with*, Multi-State AG Compl. ¶¶ 846-47.  Given this overlap, Plaintiffs' counsel's attempt to characterize the complaints as sharing "very little in common with the cases at issue here except that the defendants are common" is misleading.  Mar. 18, 2024 Hr'g Tr. 14:9–12.[1]

The MDL/JCCP Plaintiffs take the position that (1) they cannot control who questions first in depositions originally noticed by the TN AG,[2] (2) they are entitled to use any testimony secured by the TN AG as if it were taken in this MDL, but (3) none of the TN AG's questioning counts against Plaintiffs' 12-hour per-deposition limit or their total limit of 288 deposition hours.  *See* Mar. 18, 2024 Hr'g Tr. 56:1–9 (urging that "the entirety of that transcript will be available . . . in this Court, not just the part where MDL and JCCP plaintiffs are questioning").  The MDL/JCCP Plaintiffs' time-limits position runs contrary to the purpose behind the Deposition Protocol: to ensure a coordinated and efficient deposition process.  Far from efficient, it would mean that the MDL/JCCP Plaintiffs could question a witness for a full 12 hours *after* the TN AG had questioned that witness for a day or longer, undermining the time limits the Court has put in place, and even more substantially burdening Meta witnesses and disrupting their work.  Alternatively (in their view), the MDL/JCCP Plaintiffs could attend all 34 depositions, coordinate (as they are required to do) with the TN AG in advance on what topics the TN AG should cover, defer asking any questions, and have full use of the testimony—but have none of the time count against their limits.

The cross-noticing provision was designed to bring all plaintiffs in Related Actions who want to question a witness to the same table to ask their questions in one setting, not to give the MDL/JCCP Plaintiffs an unlimited amount of deposition testimony that does not count against their limit.  *See* Mar. 18, 2024 Hr'g Tr. 11:4–7 (Plaintiffs assuring the Court that "we certainly will cross-notice when the deposition is one that we are certain is a custodian or a witness that we want to take the deposition of").[3]  Similarly, the time-limit provisions are intended to limit the substantial burdens the Parties and their witnesses face—not allow those burdens to be magnified simply by deferring to a questioner from another jurisdiction and then making full use of the testimony they generate.

Nor did Meta agree to or bargain away having the questioning time spent by Related Action Plaintiffs count toward the limit, as Plaintiffs contend, citing Section II.H.5 of the Deposition

---

[1] *Compare also, e.g.*, TN Compl. ¶¶ 147-48 ("Instagram presents an infinite scroll on several key surfaces. . . . Instagram teases this yet-to-be-fully-viewed content indefinitely; as the user scrolls down the feed, new content is automatically loaded and previewed. This design choice makes it difficult for Young Users to disengage."), *with* Multi-State Compl. ¶¶ 91-94 ("Instagram debuted its infinite scroll system. . . . The "teasing" of yet-to-be-viewed content continues indefinitely. . . . This 'teasing' feature is intended to keep young users of the Platform engaged and continuing to scroll."), *with* Master PI Compl. ¶ 202 ("Meta also debuted infinite scrolling . . . ensuring that users would never reach the bottom of a page and would, instead, keep scrolling without end or limits.").
[2] The MDL/JCCP Plaintiffs provide no support for this position, and Meta told them it would produce its witnesses for deposition by the MDL/JCCP Plaintiffs first in every deposition.
[3] Plaintiffs' suggestion that Section H somehow "requires" them to cross-notice all Related Action depositions undermines the purpose of Section H, "ensur[ing] efficiency."  Dep. Protocol § II.H.1. Plaintiffs are perfectly capable of determining who they need to depose and should not rely on the TN AG to decide that for them, particularly to the extent Plaintiffs contend the TN AG may have "different discovery priorities, case theories, and strategies," *infra* p. 9.

Protocol.  Section II.H.5 sets forth the unremarkable proposition that the 12-hour individual deposition limit in the MDL/JCCP does not bind non-parties to these proceedings, and that any deposition limits in Related Actions do not bind Parties to these MDL/JCCP proceedings.  For example, if a Related Action has a 7-hour per-deposition limit, the Deposition Protocol does not expand that Related Action Plaintiff's time.  The MDL/JCCP Plaintiffs would then be entitled to use the remaining amount of their 12-hour limit, notwithstanding the shorter time limit governing the Related Action.  *See* Mar. 18, 2024 Hr'g Tr. 12:5–8 (Plaintiffs' counsel expressing concern that "the laws of that [Related Action] court do not allow plaintiffs to take advantage of the full 12 hours that we're entitled to under Your Honor's ruling for each deposition").  Conversely, if the Related Action Plaintiff, after coordinating with the MDL/JCCP Plaintiffs as required, questions for more than twelve hours, only twelve hours would be charged to the MDL/JCCP Plaintiffs.

Similarly, while Section II.H.4 provides that "any time used by an MDL/JCCP Party questioning the witness" shall count toward their limit, the Deposition Protocol does not say that questioning by Related Action Plaintiffs does *not* count.  Plaintiffs' interpretation also is inconsistent with Section II.H.3, which applies the individual and cumulative time limits "to that cross-noticed deposition"— not just to those portions of the deposition during which the MDL/JCCP Plaintiffs asked the questions.  And, to the extent Sections II.H.3 and II.H.4 are inconsistent, any inconsistency should be resolved in favor of coordination and efficiency by counting the Related Action Plaintiffs' time toward the individual and cumulative time limits.  *See* Dep. Protocol § IV.1 (permitting Parties to seek changes to the protocol following good-faith conferrals); *accord* Stipulated Dep. Protocol, *In re Philips Recalled Cpap Bi-Level Pap, & Mech. Ventilator Prod. Litig.*, No. (W.D. Pa. Dec. 12, 2022), ECF 946, at *3 (so-counting cross-noticed depositions toward time limits).

**Plaintiffs' Position:** Meta seeks to contort the plain language of the Court's Order establishing the Deposition Protocol (ECF 742)—a protocol that was the subject of many weeks of negotiation and ultimately a discovery hearing—in an improper attempt to deplete MDL Plaintiffs' court-ordered deposition hours. This Court should not allow Meta to rewrite the Protocol merely because it now has buyer's remorse.

Meta petitions the Court to hold that if an MDL Plaintiff cross-notices into a deposition that originated in another litigation, then the first 12 hours spent questioning the witness count against MDL Plaintiffs' cumulative and per-deposition time limits ordered by the Court in DMO No. 3, even if that questioning is by non-parties. Nothing about the Deposition Protocol contemplates this, and Plaintiffs would have never agreed to such language, given the results that would follow. Other jurisdictions do not have the same 12 hour-per-deposition limit that applies in this MDL. Therefore, if a plaintiff in a cross-noticed jurisdiction were to question a witness for 13 hours, that would in effect extinguish the ability of MDL and JCCP Plaintiffs to ask any questions at all. Meta's proffered alternative of MDL Plaintiffs questioning the witness first every time is infeasible, as non-parties in another jurisdiction are outside this Court's control, and Plaintiffs cannot force this result in every deposition in which a non-party wins the "notice race."[4] Meta's position is contrary to the principles of efficient discovery, as it incentivizes MDL Plaintiffs to use all possible hours of questioning if questioning first, rather than saving time for other deponents, and would penalize them for being more efficient in their questioning.

_____

[4] Meta's "offer" that MDL Plaintiffs could question first in every deposition is misplaced and ignores the need to coordinate with the noticing party, the Tennessee AG.

This position is not only unwieldy and the result of improper gamesmanship, but also is directly at odds with the language and purpose of the Deposition Protocol.[5] Section H of the Deposition Protocol effectively requires MDL Plaintiffs to cross-notice into depositions originally noticed in a Related Action. Specifically, Section H.3 provides that if MDL Plaintiffs do *not* cross-notice a deposition taking place in a Related Action, they waive the right to depose that witness unless the defending party consents to a later deposition or the Court determines there is good cause to permit re-deposing the witness. Section H was specifically negotiated for by Defendants, purportedly to ensure efficiency and prevent multiple depositions of the same witnesses by plaintiffs in various Related Actions across the country. However, Meta now attempts to twist the plain language of the provision it specifically sought, and which MDL Plaintiffs have already maintained would curtail their ability to drive their own discovery.

The plain language of the Deposition Protocol is clear. While Section H.3 states that "the individual and cumulative time limits" apply to cross-noticed depositions, all Parties agree that the Deposition Protocol binds only Parties to this litigation. Section H.5 unambiguously states that the MDL and JCCP plaintiffs' individual and cumulative "time limits *will not apply to non-parties* to the MDL and JCCP." (Emphasis added). Indeed, it specifically calls out state court litigants as an example of such non-parties. It further states that while the MDL/JCCP Parties will endeavor to coordinate with non-parties to use time efficiently, "[i]n all events, the MDL/JCCP Parties shall have the full amount of deposition time allotted to them as set forth in this Court's Discovery Limits Order." (Emphasis added). Meta argues that this "unremarkable" provision merely applies to the per-deposition time limit but proffers no basis for this belief. Further, Section H.4 provides that in cross-noticed depositions, "any time used by an MDL/JCCP Party questioning the witness in that cross-noticed deposition *shall count toward that Party's per-deposition and cumulative time limits*." (Emphasis added). If questioning in a cross-noticed deposition by plaintiffs from a Related Action counted against the MDL and JCCP Plaintiffs' per-deposition and cumulative time limits, this language would be rendered nonsensical. On its face, the Deposition Protocol negotiated and agreed to by the Parties and Ordered by the Court does not support Meta's interpretation, which is in effect an attempt to rewrite the Protocol.

Meta first suggested its tortured reading of Section H only after the Office of the Tennessee Attorney General ("the Tennessee AG") noticed the depositions of thirty-two (32) current and former employees of Meta in a litigation designated as a Related Action by Appendix A of the Deposition Protocol. Since these witnesses are relevant to the PI/SD and State AG plaintiffs' claims, and because the Deposition Protocol would effectively cause the MDL Plaintiffs to waive the right to depose these witnesses if they failed to cross-notice the depositions, the MDL Plaintiffs have cross-noticed all thirty-two depositions.[6] Pursuant to Section H.5, the MDL Plaintiffs are cooperating with the Tennessee AG to avoid duplication and ensure efficiency with respect to these depositions. It is no secret that the Tennessee AG and the State AG plaintiffs participated in a pre-suit investigation that ultimately led to the State AGs' filing in the MDL. But the Tennessee AG only filed Tennessee-specific state-law claims in Tennessee state court. The legal claims of the Tennessee AG are not

---

[5] It is also incongruous with the Court's language in the hearing concerning the deposition protocol on March 18, 2024. *see* Discovery Hearing Tr. March 18, 2024 at 10:21-24. ("THE COURT: Well, okay. But if it's not helpful, you can just end the deposition. You haven't used the hours. Right? MS. KOUBA: Certainly, Your Honor.")

[6] On May 8, 2024, Meta provided MDL Plaintiffs with notice of two (2) additional depositions noticed by the Tennessee AG.

identical to those of the MDL Plaintiffs, and the parties may have different discovery priorities, case theories, and strategies. These distinctions will certainly yield different questions of deponents than those that will be critical to MDL Plaintiffs. More importantly, MDL Plaintiffs ultimately cannot control the questions asked or the time spent by the Tennessee AG in a cross-noticed deposition.

Additionally, the possibility looms that non-parties from other actions could cross-notice into a deposition also cross-noticed by MDL Plaintiffs. Appendix A of the Deposition Protocol lists fifteen (15) litigations deemed to be Related Actions while contemplating the possibility that the list could be updated upon agreement by the Parties. The Related Action plaintiffs include State Attorney Generals as well as private plaintiffs. Under Meta's proposed resolution to this dispute, plaintiffs from any number of these Related Actions or other actions could cross-notice into a deposition also cross-noticed by MDL Plaintiffs and the first 12 hours spent questioning would count against the time limits ordered by this Court. Because this Court has no control over depositions originally noticed in another jurisdiction, MDL and JCCP Plaintiffs could be pushed to the back of the line and effectively squeezed out – registering 12 hours of deposition time without having asked a single question of the deponent. Meta's reimagining of Section H would present the MDL and JCCP Plaintiffs with an impossible choice: either not cross-notice a deposition (and thereby risk waiving any examination of the witness)[7] or cross-notice and hope that the non-party litigants have left time on the table. In effect, this would yield a bizarre result where 35 State AGs and over 1,000 personal injury and school district plaintiffs would be left beholden to the litigation choices and strategies of non-parties with different facts, claims, and remedies in entirely different jurisdictions.

Meta's proffered concern that the MDL Plaintiffs' position could result in overly-burdensome depositions and abuse is purely speculative. Per Section H.5, the "Parties will use best efforts to meet and confer and coordinate with such non-parties to maximize efficient use of time in the cross-noticed deposition." Such coordination ensures that duplicative questioning will be avoided, and that deposition length will be commensurate with the relevant knowledge that any particular witness possesses. The Parties have been ordered to conduct discovery efficiently, and the mere speculation that MDL Plaintiffs may not abide by that obligation is not sufficient to circumvent the agreed-upon deposition protocol language.

For the reasons above, MDL Plaintiffs request affirmation from the Court that only time used by an MDL or JCCP Plaintiff examining a witness apply to the cumulative and per-deposition hour limits as set forth in the Deposition Protocol.

---

[7] The MDL Plaintiffs could decline to cross-notice and risk being presumptively barred from ever deposing the witness unless they succeed on a showing of good cause to do so. If successful, the deponent would ultimately be subjected to the additional travel and disruption to life and work that the Parties are seeking to avoid as they look to "maximiz[e] efficiency and minimiz[e] burden to the deponent." Deposition Protocol § II.H.6. This would directly contravene the very purpose of the Deposition Protocol's provisions regarding cross-noticing and coordination.