[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**AGENDA AND JOINT STATEMENT FOR MAY 17, 2024, CASE MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Case Management Order ("CMO") No. 1 (ECF 75), the Parties submit this agenda and joint statement in advance of the May 17, 2024, Case Management Conference ("CMC").

**I.   Update on Pending Motions**

**A.   Motion to Dismiss Personal Injury Plaintiffs' Claims Against Mark Zuckerberg**

On April 15, 2024, the Court issued an order granting Defendant Mark Zuckerberg's motion to dismiss 25 Personal Injury ("PI") Plaintiffs' claims against him in his individual capacity, with leave to amend (ECF 518).  *See* ECF 753.  On April 26, 2024, pursuant to Case Management Order No. 13, ECF 780 ("CMO 13"), these 25 PI Plaintiffs filed a consolidated addendum to their complaints.  *See* ECF 794.  Defendant's motion to dismiss is due on May 10, 2024, the PI Plaintiffs' opposition is due on May 23, 2024, and Defendant's reply is due on May 30, 2024.  *See* CMO 13 (ECF 780).

**B. Motion to Dismiss Certain Non-Priority Claims of PI Plaintiffs**

On December 22, 2023, Defendants moved to dismiss the PI Plaintiffs' remaining "non-priority claims" (Counts 5, 12, 14, 16–18) asserted in the PI Plaintiffs' Second Amended Master Complaint. *See* ECF 516. The PI Plaintiffs filed their opposition on February 5, 2024. *See* ECF 597. Defendants filed their reply on February 26, 2024. *See* ECF 644. The Defendants and PI Plaintiffs will be prepared to argue this motion at the June 21, 2024, hearing. *See* ECF 728, CMO No. 12 at 6 (setting hearing).

**C. Motion to Dismiss AG Complaints, Consumer Protection Claims, and Misrepresentation Claims**

On April 19, 2024, the Court heard argument on Meta's motion to dismiss the Multistate Attorneys General ("AGs") Complaint, the Florida AG's Complaint, and the PI Plaintiffs' Consumer Protection and Misrepresentation Claims (Counts 7-9). *See* ECF 517.[1] Florida filed an Amended Complaint on April 29, 2024 (*see* Case 4:23-cv-05885-YGR, ECF 23) and a *Lexecon* objection on April 25, 2024 (*see* Case 4:23-cv-05885-YGR, ECF 22).

**D. Motion to Dismiss Claims Asserted in Certain PI Plaintiffs' SFCs Against Snap**

On January 12, 2024, Defendant Snap moved to dismiss claims under 18 U.S.C. §§ 2252 and 2252A (also known as the "Identified Counts") asserted in certain PI Plaintiffs' amended Short-Form Complaints pursuant to CMO No. 7 (ECF 479). *See* ECF 533. Those PI Plaintiffs filed their opposition on February 5, 2024. ECF 598. Defendant Snap filed its reply on February 15, 2024. ECF 613. The PI Plaintiffs and Snap will be prepared to argue this motion at the June 21, 2024, hearing. *See* ECF 728, CMO No. 12 at 6 (setting hearing).

**E. Motion to Dismiss School District and Local Government Entity Plaintiffs' Master Complaint**

On February 5, 2024, Defendants moved to dismiss the claims asserted in the School District and Local Government Entity ("SD/GE") Plaintiffs' Master Complaint (ECF 504). *See* ECF 601. The SD/GE Plaintiffs filed their opposition on March 4, 2024. *See* ECF 668. Defendants filed their reply on

---

[1] Defendants YouTube, Snap, and TikTok joined Meta's motion to dismiss Count 7 of the PI Plaintiffs' Amended Master Complaint. *See* ECF 519. The AGs and PI Plaintiffs opposed the motions. *See* ECF 599;600).

March 25, 2024.  *See* ECF 723.  The Defendants and SD/GE Plaintiffs will be prepared to argue this motion during the May 17, 2024, CMC.  *See* ECF 728, CMO No. 12 at 6 (setting hearing for May 9); ECF 797 (continuing hearing to May 17).

Pursuant to CMO No. 13 (at 5), Defendants and the SD/GE Plaintiffs are meeting and conferring as to the appropriate legal standards applicable in Utah and Arizona and, should they agree, will file a joint stipulation on the docket.  *See* CMO 13 (ECF 780).

**II.  Status Report on Bellwether Selection and Plaintiff Fact Sheets**

For an abundance of clarity, all references to Plaintiffs throughout Section II. refer to the PI/SD Plaintiffs or subgroups thereof.

**A.      Personal Injury Plaintiffs**

*Bellwether Selection.*  The PI/SD Plaintiffs and Defendants submitted their PI and SD bellwether selections on April 15, 2024.  The PI Plaintiffs subsequently dismissed with prejudice or asserted *Lexecon* objections in three of Defendants' six PI picks.  By May 17, 2024, all PI Plaintiffs must assert their position on *Lexecon*, with Defendants then permitted to select three replacement PI bellwether cases from the remaining cases by May 22, 2024.  CMO 13 (ECF 780) at 4.

*Plaintiff Fact Sheets.*  Pursuant to the Court's April 10, 2024 Order (ECF 748), 45 PI Plaintiffs were required to provide PFSs by May 8, 2024.  Of those 45 Plaintiffs, 24 Plaintiffs failed to submit a PFS.  Plaintiffs note that the large majority of the 24 PI Plaintiffs with outstanding PFSs have informed Defendants of the status of their efforts to complete them, advising that in many instances their clients have not been reachable. Defendants intend to move the Court to dismiss those 24 cases pursuant to Rule 41(b).

**Defendants' Further Position:**

On May 3, Defendants learned that a fourth PI bellwether case selected by Defendants would be unilaterally removed from the bellwether pool when counsel for bellwether Plaintiff B.S. o/b/o D.D. informed Defendants that D.D. intends to voluntarily dismiss his case with prejudice, offering no explanation for his failure to do so earlier, before the Court adopted his case as part of the bellwether pool in CMO 13.  *See* Exhibit A.

Through these dismissals and *Lexecon* objections, Plaintiffs have stricken 67% of Defendants' bellwether discovery selections.  *See B.S. o/b/o D.D. v. Meta Platforms, Inc.*, et al., No. 4:22-cv-06495; *Jonathan Casteel v. Meta Platforms, Inc., et al.*, No. 4:22-cv-06423; *Klinten Craig v. Meta Platforms, Inc.*, et al., No. 4:22-cv-05890; *Dymand McNeal v. Meta Platforms, Inc.*, et al., No. 4:23-cv-01092.  In so doing, Plaintiffs have removed all male plaintiffs from the pool – a factor this Court considered in CMO 13.[2]

Defendants should not be unfairly prejudiced by these dismissals, *Lexecon* objections, and other tactics.  Defendants will make their three replacement bellwether picks by the May 22 deadline ordered in CMO 13, but further request the following:

1. To discourage similar tactics, Defendants ask that the Court provide Defendants with one additional strike of cases from the bellwether discovery pool;[3]

2. Defendants request that they be permitted to begin discovery on their replacement picks immediately upon selection on May 22;[4] and

3. Defendants request that their deadline to complete fact discovery of all PI bellwether Plaintiffs be extended by five weeks (to January 24, 2025), as Defendants have already lost 33 days (between April 19 and May 22) from an already-compressed eight-month schedule for the completion of fact discovery for one-third of the bellwether pool.  *See* CMO 13 at n.2 ("[F]urther dismissals of bellwether-selected cases may disrupt and delay

---

[2] In addition, as the Court knows, Defendants sought relief in the form of an administrative motion when Plaintiffs missed the PFS submission deadline for 37 cases.  Meanwhile, Plaintiffs unilaterally accelerated cases for bellwether selection by selectively filing PFSs for certain cases early and then selecting them as bellwethers.  For example, Plaintiffs filed the Short Form Complaint *and* the PFS in *Rodriguez*—a case involving a completed suicide—on April 1 (the last date for bellwether eligibility) and then selected it as a bellwether.

[3] In the meantime, Defendants will be prepared to replace D.D. with a fourth bellwether replacement case when they identify their other three replacement picks on May 22, in accordance with CMO 13.  To be clear, Defendants would exercise this replacement pick only if the Court does not grant their request for an additional strike.

[4] Contrary to Plaintiffs' suggestion below, the Court has authorized the commencement of discovery only as to the now-eight "surviving proposed PI bellwethers."  CMO 13 at 4.

the process of this MDL.").[5]  Alternatively, the Court should assess the total delay caused by this disruption in the bellwether selection process in conjunction with the June CMC, after the bellwether replacement process is complete.

Plaintiffs' counsel's argument below that they "simply cannot make a representation that every Plaintiff that Defendants wish to pursue as a bellwether will 'go the distance'" is unacceptable.  Either their clients are prepared to prosecute their cases, or they are not.  MDLs are not intended to be "park and rides"; if any Plaintiff is unwilling to proceed "because the prospect of a trial (and one potentially far away from home) is overwhelming," they should make that known now and dismiss their case (if they do not assert *Lexecon*), rather than remain in this MDL.  By filing and continuing to prosecute their claims, Plaintiffs and their counsel certify that they have a good-faith factual and legal basis for their claims, and an actual case or controversy with Defendants that they intend to pursue.  The fact that they are part of an MDL has no bearing on that requirement, whether they are selected as bellwether plaintiffs or not.  Indeed, it was through filing hundreds of lawsuits on behalf of their clients that Plaintiffs' counsel were able to obtain the benefits of this MDL in the first place.  Their abuse of that process should not be countenanced.

**Plaintiffs' Further Position:**

Defendant's assertion that Plaintiffs are manipulating bellwether selection such that extraordinary relief is called for is disingenuous and lacks merit. The reality is that voluntary dismissals[6], along with *Lexecon* objections, are part and parcel of any MDL bellwether process. The bellwether selection stage constitutes an important inflection point in each client's case. Sometimes, not unreasonably, clients may determine that they cannot proceed to trial—because their life circumstances

---

[5] The fact that Judge Kuhl ordered (over Defendants' objection) a more compressed bellwether plaintiff discovery schedule in the JCCP, as Plaintiffs observe, has no bearing on whether Defendants should be granted additional time to conduct discovery of the bellwether Plaintiffs *in this MDL*, when the Court's original trial schedule was premised on bellwether selections being finalized by April 19.  Defendants address Plaintiffs' false accusation that they have delayed Plaintiffs' efforts at obtaining discovery in Section III below.

[6] Defendants did not oppose the dismissal with prejudice of Plaintiff B.S. o/b/o D.D. This is not surprising given such dismissals are to their benefit, and they will have a replacement pick regardless.

may not permit the stress and strain of discovery, because the prospect of a trial (and one potentially far away from home) is overwhelming, or simply because they are young and scared. MDL leadership simply cannot make a representation that every Plaintiff that Defendants wish to pursue as a bellwether will "go the distance." That said, MDL leadership has and will continue operating in good faith and do everything within their control to minimize the prospect of future dismissals.

Second, Defendants' insinuation that Plaintiffs "unilaterally accelerated cases" as part of a self-serving strategy in the bellwether selection process lacks substance. Their argument centers on the fact that one of Plaintiffs' selections, Rodriguez, filed on the April 1, 2024 deadline, which they present as evidence of this alleged self-serving scheme. However, Defendants fail to note that the five other Plaintiff picks filed a year prior to the deadline. Moreover, MDL leadership played no role in the timing of the Rodriguez filing and had no communication with counsel for this Plaintiff about the case until after the April 1 deadline when the case was being considered for the bellwether pool.

As to the relief sought by Defendants, the Court has already articulated processes that should adequately protect Defendants' interests. First, the Court has mitigated instability in the bellwether pool by setting a May 17 deadline for assertion of *Lexecon* objections. Second, the Court has directed that Defendants can make replacement picks by May 22. As Defendants acknowledge (albeit in a footnote), they can and will be prepared to make all *four* replacement picks by that date. Third, Defendants are already entitled to begin discovery on their replacement picks immediately upon selection on May 22. (Defendants request this as "relief" but Plaintiffs already understand this to be the default—indeed, Defendants have already begun serving voluminous discovery on the preexisting bellwether picks.)

Defendants' additional requests for relief are unnecessary and disproportionate. Their request for an additional strike would unfairly punish all MDL Plaintiffs because one Plaintiff has exercised their right to seek dismissal of their case. Not only is there nothing untoward about that dismissal (which is that Plaintiff's right to seek under Rule 41, and which Defendants do not oppose), leveraging that dismissal to punish Plaintiffs who had no control over that individual Plaintiff's decision is deeply inequitable. Defendants' request to extend fact discovery likewise lacks a sound basis. The Court need look no further than the JCCP to understand why. Bellwethers will not be selected in the JCCP until

June 17, 2024, and yet the JCCP court has indicated it may hold a trial as early as mid-June 2025 (4 months before the MDL). If Defendants can make that more abbreviated schedule work in the JCCP, there is no cause for added time in the MDL. Defendants' complaint is particularly unjustified given their transparent attempts to delay Plaintiffs' efforts at obtaining discovery, which have included an unwillingness to produce Snapshots and Defendant Fact Sheets for MDL bellwether plaintiffs even though Defendants are already obligated to do so in the JCCP, as set out further below. Relatedly, TikTok has rebuffed multiple requests for bellwether Plaintiffs' user data in contravention of its obligations under recently enacted federal law.[7] Plaintiffs reserve their right to raise such issues with Judge Kang and the Court at a future date.

### B. School District Plaintiffs

*Bellwether Selection.*  Following the April 19 CMC, the SD Plaintiffs asserted *Lexecon* objections in two of Defendants' six SD picks.  On April 29, 2024, Defendants identified six replacement picks pursuant to CMO No. 13 (ECF 780 at 3).  On May 6, 2024, the SD Plaintiffs notified Defendants that three of the six replacement picks will not waive *Lexecon* and two replacement picks will waive *Lexecon*.  The SD Plaintiffs did not provide the position on *Lexecon* objection for the sixth school district case, as was required by CMO No. 13, instead informing Defendants that the school district will not be able to provide its position on *Lexecon* before May 10.  After the final replacement SD Plaintiff exercises its *Lexecon* rights, Defendants will then select their two replacement SD bellwether cases from the remaining cases.  *Id.*

*Plaintiff Fact Sheets.*  As of May 9, 2024, there are 152 individual school district Plaintiffs in this MDL.  One hundred and one (101) SD Plaintiffs served PFSs by the respective deadline(s) set forth in

---

[7] On April 24, 2024, President Biden signed into law the Protecting Americans from Foreign Adversary Controlled Applications Act ("the Act"). Section 2(b) of that Act states that TikTok "shall provide, upon request by a user of such application within the land or maritime borders of United States, to such user all the available data related to the account of such user with respect to such application. Such data shall be provided in a machine readable format and shall include any data maintained by such application with respect to the account of such user, including content (including posts, photos, and videos), and all other account information."

the Implementation Order (ECF 731).  Since April 1, 2024, 31 school districts have served PFSs.  Ten school districts failed to serve a PFS by the May 8, 2024 deadline set forth in the Court's April 10, 2024 Order (ECF 748).  Ten SD Plaintiffs' PFSs are not yet due under the Court's orders.

On April 15, 2024, the Parties each filed temporary sealing motions (*see* ECF 756, ECF 757) regarding the submission of briefing on bellwether discovery pools, noting that the reasons for sealing would be addressed in a forthcoming omnibus motion.  The temporary sealing motions were preliminarily granted on April 23, 2024 (*see* ECF 780, n.1).  The Parties filed a stipulation extending the deadline for the filing of omnibus sealing motions or stipulations to May 6, 2024 in accordance with the Court's Order Setting Sealing Procedures (ECF 341), *see* ECF 804, and Plaintiffs made the sealing filing on May 6, *see* ECF 811.

## III. Bellwether Discovery Coordination

For an abundance of clarity, all references to Plaintiffs throughout Section III. refer to the PI/SD Plaintiffs or subgroups thereof.

### PI/SD Plaintiffs' Position:

As noted in the JCCP update below, under Judge Kuhl's guidance, the parties finalized a Defendant Fact Sheet ("DFS") and filed a Stipulation and Proposed Case Management Order to enter it on April 30th, attached here to as Exhibit C. Per that Proposed Order, DFSs are to be completed by Defendants by May 31 for any JCCP personal injury plaintiff who submitted, by May 1, a Plaintiff Preservation Form and/or User Account Confirmation and Consent Form[8]—over 400 plaintiffs.[9] In addition, Judge Kuhl has ordered that Defendants provide account preservation "snapshots" for the 24 personal injury plaintiffs selected for the JCCP bellwether pool within two days of their selection, by June 19th.

---

[8] The Plaintiff Preservation Form and User Account Confirmation and Consent Form have also been entered in the MDL (*see* ECF 269, 269-1; ECF 616).

[9] There is variation in the extent of DFS data Defendants must provide according to the timing of when a Plaintiff provides these forms, as reflected in the footnotes of Exhibit C, but DFSs must be provided for all Plaintiffs who provided Preservation or Confirmation Forms by May 31, 2024.

PI/SD Plaintiffs have met and conferred with Defendants seeking their agreement to provide the same for the twelve Personal Injury Plaintiffs selected as MDL bellwethers on a similar timeline, to promote efficient discovery and in keeping with the courts' guidance that the JCCP court will address such standardized plaintiff-side discovery, as occurred with the PFSs and associated forms. Defendants have not yet agreed to do so, with some taking the position that Plaintiffs here must instead propound requests for production[10] for the entire universe of bellwether Plaintiff-specific information they may ultimately seek, and then finalize meet and confer on same, as a prerequisite to obtaining even the same basic and highly relevant DFS and snapshot information that Judge Kuhl simply ordered be provided. Should Defendants refuse to adopt the procedure ordered by the JCCP to timely provide DFS and snapshot data for the limited universe of twelve MDL bellwethers, Plaintiffs anticipate filing an Administrative Motion seeking same in the coming days and have so advised Defendants.

**Defendants' Position:**

Plaintiffs conflate the requirements of the bellwether selection process adopted by Judge Kuhl with the requirements here.  Judge Kuhl ordered Defendants to produce the DFS for eligible PI plaintiffs in part because, under the JCCP's random selection process, the parties can use such information to argue representativeness of the bellwethers.  Here, though, there is no bellwether-related need for a DFS. Instead, this is plainly a discovery dispute that belongs before Magistrate Judge Kang.

Yet, since bellwether PI Plaintiffs were selected on April 19 and the Court opened discovery with respect to those Plaintiffs' cases, Plaintiffs have not propounded any discovery requests on Defendants specific to those bellwether cases.  The Parties first met and conferred on these recently-raised discovery issues on May 8.  Defendants have repeatedly explained to Plaintiffs that they will produce relevant account captures for the PI bellwether Plaintiffs' accounts, but that Plaintiffs need to follow the Federal Rules of Civil Procedure and properly propound discovery requests seeking such production.  Certain Defendants expect to be in a position to produce such account captures before the

---

[10] While Plaintiffs maintain that RFPs should not be required for Plaintiffs to obtain DFS and Snapshot data--which the JCCP court ordered be produced without this hurdle,--given Defendants' position, Plaintiffs have propounded same to preserve their rights.

30-day deadline.  But Plaintiffs cannot supplant the requirements of Rule 34 through manufactured urgency.

Defendant Fact Sheets are, in effect, written discovery under the FRCP.  Had Plaintiffs served Rule 34 requests seeking production of the data in the JCCP DFS, Defendants may have been able to produce such data at the same time as they will produce JCCP DFS data, on May 31, 2024.  Plaintiffs, however, did not even raise the possibility of such a production until it was too late for Defendants to include additional data in the production.  Due to the burdens associated with producing this data, Defendants will not be able to produce it in the MDL until after the list of 12 MDL PI bellwether plaintiffs is finalized.  But if Plaintiffs serve RFPs requesting that data, Defendants will respond to those RFPs consistent with the Federal Rules and meet and confer with Plaintiffs.[11]

Plaintiffs have articulated no reason that this issue—which was inserted into this CMC Statement on the day of filing and as to which the Parties clearly need to confer further—is an emergency requiring expedited briefing and extraordinary relief.  The requirements of Rule 34 should not be ignored.

Finally, Plaintiffs' assertion in Section II.1.A. above that "TikTok has rebuffed multiple requests for bellwether Plaintiffs' user data  . . . under recently enacted federal law" is factually inaccurate, legally incorrect, and procedurally improper.  TikTok is not in violation of the law, which in any event does not create a private right of action and assigns exclusive authority to the Attorney General to enforce.  In the meantime, TikTok will be working with Plaintiffs and the other defendants on the process for the production of user data in this MDL, as described above.

---

[11] As one example of the timing issues, for accounts first identified after February 27, 2024 and before April 22, 2024, as the Meta DFS and the entered JCCP DFS implementation order reflect, Meta is only able to produce in the JCCP DFS data covering a recent 90-day period.  Producing older data for accounts identified after February 27, 2024, will require substantial effort and time (likely two months or more).  One of the PI bellwether cases was not filed until April 1, 2024, and Meta expects that Plaintiffs will ask for that historical data that has not yet been extracted.  To the extent other of the PI bellwether cases were also filed more recently, Meta will need to extract all historical data at the same time to minimize burdens.  Similarly, for Defendant Snap, producing certain older DFS data requires substantial time and effort and cannot be accomplished by May 31, 2024.  To the extent Plaintiff also seek other Plaintiff-specific data, it would need to be pulled at the same time to minimize burden.  Extracting historical data is a hugely burdensome endeavor regardless of the amount of data points being extracted, and it is both extremely inefficient and very costly to do it in a piecemeal fashion.

**IV. YouTube: Amendments to Complaints that Add New Defendants**

      For an abundance of clarity, all references to Plaintiffs throughout Section IV. refer to the PI/SD Plaintiffs or subgroups thereof.

      <u>**YouTube's Position:**</u>

      Following the hearing on bellwether selection and the most recent status conference before this Court, Plaintiffs' counsel sent correspondence to certain Defendants requesting to amend multiple cases by, among other things, adding parties. In particular, Plaintiffs represented by Beasley Allen seek to amend approximately 14 personal injury cases to add the YouTube Defendants ("YouTube"), even though one of those cases had already been selected by the Court as a bellwether and the Plaintiffs in several of the other cases did not allege any injury from YouTube in their short-form complaints or in their plaintiff fact sheets, and some had submitted fact sheets stating they had not used YouTube.[12] Plaintiffs did not even provide notice to YouTube of these proposed amendments, and they were only brought to YouTube's attention by the existing Defendants in those cases.

      Pursuant to Case Management Order No. 13, the Court held that it "must review the propriety of each motion to amend an SFC on a case-by-case basis."  ECF 780 at 3. Given that bellwether discovery cases have now been selected and additional bellwether cases will be selected in short order, the Court drew a material distinction between (1) motions to amend that simply clarify an existing short-form complaint and (2) those that seek to add a defendant.  *Id.*  To effectuate that guidance, YouTube seeks to have the Court adopt a straightforward protocol that would give all parties the ability to consider all proposed amendments, interpose reasonable objections, and have any disputes resolved by the Court in a timely manner that minimizes the need for elaborate motion practice—all without changing any of the legal standards that govern whether any given amendment should actually be allowed.

      YouTube proposed such a protocol, and then met and conferred with Plaintiffs to discuss, but Plaintiffs have refused to agree to it.  Instead, Plaintiffs have taken the position that under Fed. R. Civ.

---

[12] These cases are *Clevenger*, No. 22-cv-6457; *Copelton*, No. 22-cv-6165; *Melton*, No. 22-cv-6627; *Murden*, No. 22-cv-5889; *Amacker*, No. 22-cv-6150; *Craig*, 22-cv-05890; *Estevanott*, No. 22-cv-06080; *Haywood*, No. 22-cv-06429; *Isaacs*, No. 22-cv-05885; *Lombardo*, No. 22-cv-07092; *Naber*, No. 22-cv-06832; *Newberry*, No. 22-cv-06460; *Ortiz*, No. 22-cv-06458; and *Thacker*, No. 22-cv-06497.

P. 15, they may unilaterally add non-party Defendants—no matter the circumstances and even after bellwether selection—so long as they have consent of the existing Defendants to the case, without giving either notice to the proposed to-be-added-party or an opportunity for the to-be-added-party to intervene and oppose the amendment under Rule 24.  That is neither efficient nor fair. Particularly given the complex interplay between bellwether consideration and the amendment process in this MDL, a Defendant that is party to the MDL should be given notice and an opportunity to intervene and object to proposed amendments that seek to add that Defendant to a given SFC.

This principle is especially important for cases previously selected for the bellwether discovery pool.  Here, one of the cases where Plaintiffs now seek to add the YouTube Defendants (*Clevenger*) is a personal injury case already selected by the Court as a bellwether.  It would be prejudicial to allow Plaintiffs to change the defendants in such a case, after Defendants selected it based in part on the overall composition of the MDL personal injury cases and the reasonable assumption that each of those cases involved only the Defendants that Plaintiffs had actually named. Indeed, the Court held a hearing on April 19 to discuss issues that may impact the selection process, yet this proposed amendment was never raised.

Plaintiffs are also wrong that the Federal Rules prevent a to-be-added Defendant from challenging an amendment.  To the contrary, Rule 24 gives a to-be-added Defendant precisely that right. Courts routinely grant motions to intervene so that to-be-added Defendants can challenge amendments that seek to name them as a party.  *See, e.g.*, *Wang v. Zymergen Inc.*, No. 21-CV-06028-PCP, 2024 WL 576306, at *2 (N.D. Cal. Feb. 13, 2024) (applying rule and recognizing that there are certain arguments against amendment, such as "delay and prejudice arguments," that "could not be raised in a subsequent motion to dismiss"); *Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n, Inc.*, No. CV421-346, 2022 WL 17327497, at *1 (S.D. Ga. Nov. 29, 2022) (applying rule).  YouTube thus seeks not to avoid the Federal Rules, but to implement them, while avoiding the inefficiency and delay of having to burden the Court with formal motions practice under Rule 24 for each of Plaintiffs' objectionable proposed amendments.

To be clear, YouTube does not object to all of Plaintiffs' proposed amendments.  But there are a smaller subset of proposed amendments to which YouTube does object, including on grounds of undue delay, prejudice, and futility.  This includes cases where the Plaintiff has already asserted under oath (in connection with the Plaintiff Fact Sheet and appendices) that he or she (1) has not used YouTube and/or (2) claims no harm from YouTube.  For instance, Plaintiff in *Clevenger* filed her action in August 2022.  YouTube was not named.  Plaintiff then submitted a short form complaint on April 4, 2023; Plaintiff identified no YouTube usage contributing to her injuries.  On March 13, 2024, Plaintiff in *Clevenger* uploaded a PFS and a signed declaration in which she asserted she had not used YouTube.   That was the operative PFS when *Clevenger* was selected by Defendants as a bellwether.  On May 7, 2024, Plaintiff uploaded a First Amended PFS and signed declaration, again asserting she had not used YouTube.  But on May 8, 2024, after receiving Defendants' exchange of this Joint Statement, Plaintiff uploaded a Second Amended PFS alleging YouTube usage for the first time and that her "peak" YouTube usage exceeds her peak usage of any other Defendants' platform.[13]  YouTube has a right under the Federal Rule 24 to intervene in such a case for the purposes of opposing amendment, but it wishes to spare the Court and the parties the burden of having to file formal motions in each such case.

Instead, for efficiency, to avoid piecemeal motions to intervene under Rule 24, and to effectuate CMO No. 13, YouTube respectfully asks the Court to adopt the [Proposed] Order Governing Amendments to Short-Form Complaints for Filed Cases, attached hereto as Exhibit B.  The proposed Order considers the Court's guidance in CMO No. 13 regarding review of proposed amendments.  YouTube believes the proposed Order creates an orderly and fair process that will reduce the burden on the parties and the Court without changing any substantive standards for amendment.  This proposal would create efficiencies because the Court would not have to address separate motions to intervene in each case where an amendment seeks to add a new Defendant.  Instead, Plaintiffs would simply give

---

[13] Plaintiffs' contention that YouTube was somehow on notice that the Plaintiff in Clevenger may seek leave to add new parties after bellwether selection, merely because she identified a YouTube account in a user account preservation form, makes no sense.  Plaintiff in Clevenger represented under oath that she did not use YouTube or suffer any harm from YouTube.  Her argument undermines the very purpose behind the heavily-negotiated requirement for Plaintiffs to submit SFCs, PFSs, and platform-specific appendices.

notice to all Defendants (including non-party Defendants) of any proposed amendment that would add a new party, and, in the absence of consent from all Defendants (including the to-be-added Defendant). Plaintiffs would explain the basis for the amendment to the Court, any objecting Defendant would have the ability to oppose, and the Court would rule on the amendment under the standards provided by the Federal Rules.  This process in no way prejudices Plaintiffs, and it will create greater order, efficiency, and coherence to the amendment process.

**PI/SD Plaintiffs' Position:**

The process for amending SFCs prior to a Court-ordered deadline is governed by Rule 15(a) of the Federal Rules of Civil Procedure, under which Plaintiffs may amend their complaints either with leave of court or by consent of the named Defendants. *See* Fed. R. Civ. P. 15(a)(2) (a party may amend a pleading "with the opposing party's written consent or the court's leave"). Consistent with Rule 15, Plaintiffs who intend to amend their SFCs have been requesting consent from the named Defendants in their cases and, in many of those cases, have obtained that consent and filed amended SFCs.

Only YouTube has raised objections with this otherwise routine Rule 15 procedure. As is often the case in mass tort MDLs, as more specific information about Plaintiffs' cases has come to light during the PFS process, some Plaintiffs have identified bases to include additional Defendant(s). The PFS was in fact designed to more fully flesh-out the extent to which Plaintiffs have used each platform and its connections to the harms they have suffered, so it is unsurprising that some Plaintiffs have now identified platform usage that warrants amending their SFCs to name additional Defendants. This is particularly the case given that many Plaintiffs may have started using these products years ago at quite young ages and may no longer have access to some of their accounts, and in any event have far less information regarding their account usage at this stage than Defendants do.

YouTube seeks to disrupt the efficiency with which this standard amendment process has thus far proceeded by adding a hurdle beyond the requirements of Rule 15, the sole purpose of which is to give unnamed Defendants the right to prevent Plaintiffs from amending their SFCs without leave of court, even when the named Defendants consent. Rather than simply amending by consent of all named parties as Rule 15(a)(2) provides, this would result in Plaintiffs being forced to file motions for leave to

14

amend when a yet-to-be-named Defendant objects to a proposed amendment. Far from offering efficiency, YouTube's proposal will serve only to clog up the amendment process.

YouTube offers no authority for the extraordinary relief it requests. It claims its proposal effectuates guidance in CMO 13, but CMO 13 denied Defendants' request for a global prohibition on amending SFCs in proposed bellwether cases and recognized that doing so would abrogate the standard governing amendments to pleadings. ECF 780 at 3. This is consistent with Ninth Circuit guidance that MDL courts may not impose burdens on amending pleadings beyond the traditional standards set forth under Rule 15. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir. 2011) ("By denying leave to amend on the basis of the court's prior CMO, the court applied an incorrect legal standard to Plaintiffs' motion. Such an error constitutes an abuse of discretion."). YouTube's request would impose such additional burdens, contrary to Ninth Circuit authority.[14]

YouTube has likewise failed to articulate any substantial prejudice that justifies the inefficiencies and burdens on amendments that its proposal would impose. YouTube claims that some undefined subset of Plaintiffs in a handful of cases it identifies as seeking to add YouTube did not include YouTube usage in their PFSs, but in fact the operative PFS in each of the cases does include substantial YouTube usage. While the *Clevenger* PFS initially did not identify YouTube usage, the Plaintiff had identified a YouTube account in Plaintiff Preservation Forms served on YouTube both well before and after serving her initial PFS, putting YouTube on notice, and promptly amended her PFS to include YouTube upon becoming aware of the oversight. Discovery on the bellwether Plaintiffs remains in its infancy, undercutting any claim of prejudice, but in any event, YouTube is already in possession of much more extensive data on Plaintiffs' accounts than Plaintiffs are.

---

[14] YouTube cites two inapposite cases, where the plaintiff apparently did not obtain consent of the named defendants and, instead, moved the court for leave to amend. *Wang v. Zymergen Inc.*, No. 21-CV-06028-PCP, 2024 WL 576306, at *2 (N.D. Cal. Feb. 13, 2024); *Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n, Inc.*, No. CV421-346, 2022 WL 17327497, at *1 (S.D. Ga. Nov. 29, 2022). The courts permitted unnamed Defendants to intervene and join in the briefing. *Wang*, 2024 WL 576306, at *2; *Auto-Owners Ins. Co.*, 2022 WL 17327497, at *1. Neither case allowed an unnamed defendant to intervene and oppose an amendment where the plaintiff had the consent of all named defendants, the relief YouTube now seeks.

YouTube's suggestion that the bellwether process was skewed because a limited number of Plaintiffs have since sought to add it as a Defendant—a situation for which no other Defendant has sought a departure from the Federal Rules—is likewise unfounded. If anything, to the extent that the number of claims against YouTube has increased, that would suggest that a larger portion of bellwethers should likewise involve it, an outcome not sought by YouTube.

None of YouTube's arguments have merit, but they are also inapposite, because the Federal Rules do not provide unnamed defendants the right to vet the merits of plaintiffs' claims as a condition to amending an SFC. *See* Rule 15(a)(2) (plaintiffs may amend "with the opposing *party's* written consent") (emphasis added). This is true regardless of whether Defendants have selected one of those cases as a bellwether. *See* ECF 780 at 3 ("the Court must review the propriety of each motion to amend an SFC on a case-by-case basis"). In summary, YouTube seeks extraordinary relief that would slow the process for amending SFCs, impose additional burdens on Plaintiffs, and grant YouTube rights beyond those provided under the Federal Rules. The relief requested by YouTube is neither warranted nor appropriate and should be denied.

## V.  Discovery Management Conference Statement

The Parties' Discovery Management Conference Statement is being filed on May 10, 2024.  The Parties will supply a copy to Judge Gonzalez Rogers's chambers by email after the filing.

## VI. JCCP Status Update

For an abundance of clarity, all references to Plaintiffs throughout Section VI. refer to the PI/SD Plaintiffs or subgroups thereof.

On April 24, 2024, Judge Kuhl held a CMC and an informal conference with the parties to discuss the categories for random selection of the PI bellwether discovery pool in the JCCP.  Judge Kuhl will randomly select 24 PI plaintiffs (from the pool of plaintiffs who have submitted PFSs by May 16, 2024) for bellwether discovery on June 17, 2024.  To allow the parties to assess those plaintiffs for representatives of the overall plaintiff population, Judge Kuhl ordered Defendants to produce account preservation snapshots for those plaintiffs by June 19, 2024.  By June 21, 2024, plaintiffs will advise Defendants and the Court if any plaintiff from the bellwether discovery pool selections will not be going

forward with their case and, on June 25, 2024, the parties will file briefs addressing any plaintiff selected for the bellwether discovery pool.  The Court will hear arguments on the issue of whether any bellwether discovery pool plaintiff should be excluded as an "outlier" on June 27, 2024.  Any plaintiffs found to be "outliers" will be replaced via another random draw on that date.  In December 2024, Judge Kuhl will narrow the bellwether pool to 10-12 cases for trial.  Judge Kuhl set a deadline of December 6, 2024, for the completion of bellwether fact discovery, with expert discovery to follow the same timeline as expert discovery in the MDL.

Also at the April 24, 2024 CMC, Judge Kuhl ordered the parties to meet and confer to discuss processes for addressing PFS deficiencies, including dismissals.

The parties also reached agreement on a stipulated implementation order for Defendant Fact Sheets. On April 30, 2024, the parties filed their Stipulation and Proposed Case Management Order for implementation of the personal injury Defendant Fact Sheet ("DFS") which awaits Judge Kuhl's signature.

Finally, Judge Kuhl heard continued argument on Defendants' motion to strike third-party predator, CSAM, and "challenges" allegations from the JCCP Personal Injury Plaintiffs' Master Complaint and from certain short-form complaints on April 24, 2024.

The JCCP's next status conference is May 13, 2024, and Judge Kuhl will hear argument on Defendants' Demurrer and motion to strike Plaintiffs' School District Complaints the same day.

Respectfully submitted,

DATED: May 10, 2024            By:  */s/ Previn Warren*
                                    PREVIN WARREN
                                    **MOTLEY RICE LLC**
                                    401 9th Street NW Suite 630
                                    Washington DC 20004
                                    Telephone: 202-386-9610
                                    pwarren@motleyrice.com
                                    Co-Lead Counsel

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com


CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502

20

Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

21

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Nayha Arora (CA SBN 350467)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

23

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

COVINGTON & BURLING LLP

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

25

Geoffrey Drake, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369

26

Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW

27

Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

## **ATTESTATION**

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: May 10, 2024

By: */s/ Previn Warren*
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
Co-Lead Counsel