UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING DISCOVERY ABOUT THE "TIKTOK PLATFORM"**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendants TikTok, Ltd., TikTok, LLC, TikTok, Inc., ByteDance Ltd., and ByteDance Inc. (collectively referred to in this submission as "TikTok" or the "ByteDance" Defendants) respectfully submit this letter brief regarding a dispute concerning the scope of discovery about the "TikTok Platform."

Pursuant to Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held by telephone by lead trial counsel for the parties involved in the dispute where lead trial counsel for Plaintiffs and for ByteDance were located in Oakland, California, Philadelphia, Pennsylvania, and Atlanta, Georgia. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: May 1, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

i

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

*/s/ Andrea R. Pierson*
Andrea Roberts Pierson, *pro hac vice*
 andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
 amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
 gdrake@kslaw.com
David Mattern, *pro hac vice*
 dmattern@kslaw.com
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100
*Attorneys for Defendants TikTok Inc., ByteDance*

*Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

**Plaintiffs' Position**

The ByteDance Defendants (global companies) seek to block Plaintiffs from obtaining relevant information about their platform design, as well as corporate knowledge and notice of risks posed by the same—and alternative *safer*—designs they deploy overseas. Despite common aspects of the design, operation, and management of the U.S. and non-U.S. versions of their platforms[1]—and despite federal law now defining TikTok as a "foreign adversary controlled application"[2]— ByteDance insists that what happens overseas should stay overseas. But ByteDance's founder has said that the company's approach is to "globalize products and localize content."[3] And TikTok documents show that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The U.S. version of its platform even shares the same recommendation system first designed for use in ByteDance's overseas platforms.[4] Yet the overseas version of the platform appears to protect children in China in ways that the U.S version does not afford children here. Second Am. Master Compl. ¶ 560 (Douyin is "profoundly different" in that it *limits* minors' usage to "just 40 minutes per day"); ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Courts agree that evidence of a defendant's ex-U.S. designs, warnings, and knowledge may be relevant to claims of injury in the U.S.. *E.g.*, *Crisp v. Nissan Motor*, 2020 WL 6163143, at *2 (W.D. Tex. 2020) (allowing discovery of foreign designs: "The point of seeking documentation of alternative cabin designs is to show that a safer alternative design was feasible."); *Kirksey v. Schindler Elev.*., 102 Fed. R. Evid. Serv. 30, at *5 (S.D. Ala. 2016) (evidence of "foreign designs and the timeframe of their appearance" "highly relevant" to show that "alternative, feasible designs were available and existed" at the time the product was installed in the U.S.); *In re Tylenol*, 181 F. Supp. 3d 278, 307 (E.D. Pa. 2016) ("foreign labels on the defendants' products, warning of the risk of '"severe or possibly fatal liver damage' … are evidence of the defendants' knowledge of potential risks"). So too here, information concerning relevant features and risks for non-U.S. versions of TikTok is probative of (a) the availability of alternative designs/warnings with respect to the Named Features and (b) notice of the harms Plaintiffs allege they have suffered—including research, testing, and complaints relating to the health and safety of youth users. If anything, the

---

[1] For example, ByteDance admits its TikTok and Douyin platforms "share the same fundamental 'building blocks.'" TIKTOK3047MDL-002-00092828. While ByteDance also claims "TikTok's business logic, algorithm, integration, and deployment of systems is specific to the TikTok application and separate from Douyin," (*id.*), that position is at odds with researchers have found. Lianru Jia et al., *Going global: Comparing Chinese mobile applications' data and user privacy governance at home and abroad*, 9 INTERNET POLICY REV. 3 (9/16/ 2020) (independent analysis of source code found that Douyin is just "[t]he Chinese version of TikTok.").

[2] *See* Protecting Americans from Foreign Adversary Controlled Application Act of 2024, H.R. 815-64 (2024), *available at* https://www.congress.gov/118/bills/hr815/BILLS-118hr815enr.pdf.

[3] Matthew Brennan, *Attention Factory: The Story of TikTok and China's ByteDance* (Oct. 2020), at 230. *See also* Chris Stokel-Walker, *TikTok Boom: China's Dynamite App and the Superpower Race for Social Media*, CANBURY PRESS (2022), at 200, 224-225 (ByteDance's "technologies transcend[] geographical boundaries." ByteDance "develops its software as a one-size-fits-all product to be used around the world.").

[4] Brennan, *Attention Factory*, at 7, 111.

global nature of ByteDance's platform design and development presents a much stronger case for discovery into non-U.S. versions than was presented to other courts.

Plaintiffs are not demanding *all* information concerning *all* of ByteDance's platforms. Rather, Plaintiffs seek specific categories of documents related to: (1) the Named Features at issue in this case (or their equivalents) used in the non-U.S. versions of ByteDance's platforms [5] or (2) health, wellness or safety of youth using non-U.S. versions. Even at this early stage, Plaintiffs have ample bases to seek such information because it is relevant to alternative designs available to ByteDance, as well as the risks ByteDance should have known and warned U.S. users about. TikTok owes its addictive appeal to ByteDance's "powerful recommendation system," which "powers not just TikTok but all of ByteDance's products."[6] ByteDance "honed" this recommendation system on the Toutiao app, and then "finetuned" it through its other apps, including Douyin.[7] The company also provides safety features in some countries and not others. *Supra*. And TikTok's growth strategies are often global. *E.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Contrary to what ByteDance would have this Court believe, the Douyin and TikTok are "equivalent apps," one offered in China and one offered internationally.[8] TikTok and Douyin even share the same logo—a musical note designed to look like the letter "d", for "Douyin."[9]


Douyin Logo


TikTok Logo

ByteDance's "middle office" works on both apps "simultaneously," creating "shared features" that will work on both apps"[10] As a result, Douyin and TikTok share the same core features, including their "recommendation engine" and For You Feed[11] and are otherwise twin versions of each other.[12] Despite the similarities, Douyin has safety features that TikTok lacks,[13] and TikTok

---

[5] The "Named Features" are identified in the Master Complaints, including age verification, parental controls, and algorithmic recommendations—all of which remain relevant. Tr. 3/21/24 DMC at 33-36 ("all the alleged defects in the complaint are part of the case"). ECF No. 714. ByteDance's insistence that algorithm-based claims are not in the case continues to be wrong.
[6] Chris Stokel-Walker, TikTok Boom: China's Dynamite App and the Superpower Race for Social Media, CANBURY PRESS (2022), at at 60, 91.
[7] *Id.* at 60.
[8] *Id.* at 142.
[9] *Id.* at 189.
[10] *TikTok Boom*, at 142.
[11] Brennan, *Attention Factory*, at 108, 111, 253-254.
[12] *Going global, supra* (code analysis shows Douyin is just "[t]he Chinese version of TikTok.").
[13] Douyin recently added anti-addiction features. *There Is No TikTok in China, but There Is Douyin*, https://www.nytimes.com/2024/04/25/business/china-tiktok-douyin.html.

personnel may crib features from Douyin when considering how to make TikTok safer. *E.g.*, ███████████████████████████████████████████████████████████████████████████ hus, what ByteDance has done and does today with respect to the Douyin-version of the platform is highly probative of claims concerning the U.S. version of TikTok—including why ByteDance chose to roll out certain protective measures only on non-U.S. platforms.

ByteDance's compromise position is no comprise at all. It offered to produce documents about non-U.S. versions of TikTok only if the documents also mention the U.S. version. But the offer is illusory because ByteDance already agreed to produce documents mentioning the U.S. platform. Requiring that a document explicitly mention the U.S. version also would doubtless carve out critically relevant evidence about platform design. For example, ███████████████ ██████████████████████████████ ould not have been produced under ByteDance's proposed compromise. The compromise Plaintiffs offered—narrowing their request just to specific documents related to (1) the Named Features (or their equivalents) or (2) health, wellness or safety of youth using non-U.S. versions of TikTok—is reasonable and proportional to the issues in this case. The Court should overrule ByteDance's objections.

**TikTok's Position**

This case is about the TikTok platform ("TikTok") in the United States. That is the platform that Plaintiffs allege (i) they used; (ii) is purportedly "defective;" and (iii) they were addicted to, resulting in their injuries. Notwithstanding this, Plaintiffs ask the Court to approve their definition of the "TikTok Platform," which—although not obvious from the face of Plaintiffs' requests—Plaintiffs have insisted in conferrals includes not just the US TikTok platform that Plaintiffs used but also (i) *every* version of the TikTok-branded platform available at *any time* in over 150 countries and regions, and even more (ii) entirely different online services available *exclusively* in China, Toutiao (a news and information content platform) and Douyin (a short-video platform). Plaintiffs have not identified the specific requests they are asking the Court to rule on and cannot meet their burden of establishing that "all" documents related to "Named Features" and youth health and safety are relevant and reasonably necessary to pursuing their claims here about the US TikTok Platform. The Court should reject Plaintiffs' request to take a discovery detour through entirely separate, non-TikTok services available only in China and every foreign version of TikTok, multiplying the burden and time necessary to conduct discovery far beyond what the discovery schedule contemplates.

**Discovery About Non-US TikTok Services Is Irrelevant**. Plaintiffs overreach in claiming that this litigation is about ByteDance and its affiliates. Plaintiffs' claims against the TikTok Defendants relate *solely* to the US TikTok platform and do not implicate other TikTok platforms, much less entirely different services that non-party ByteDance subsidiaries make available only in China. Plaintiffs have not come close to meeting their burden of establishing that this information is relevant.

Plaintiffs claim evidence about other services available outside the United States is "potentially" relevant as both evidence of a "reasonable alternative design" and of notice of Plaintiffs' alleged harms. But it can be neither. For starters, Plaintiffs have not established—by expert affidavit or any other means—that other services available outside the United States are

substantially similar, involve substantially the same circumstances, and are not too remote from the TikTok service available in the United States.[14] Nor could they. Those services were developed for use in other countries and are subject to different laws and regulations, reflecting those countries' different cultures and priorities. Courts consistently rule that such foreign "product" information is irrelevant in a US product liability lawsuit, and this Court should too.[15]

**Plaintiffs' Demands for Discovery on Toutiao and Douyin are Even Further Afield**. Toutiao and Douyin are not part of the "TikTok Platform" (TikTok users cannot access accounts or content created by Toutiao or Douyin users, and vice versa). They are different services exclusively available for use in China, unavailable in the United States, and operated by different ByteDance subsidiaries. Indeed, as Plaintiffs themselves concede, these services are "*profoundly different*" from TikTok. *See* Sec. Amd. Compl. ¶¶ 560 (Douyin is "profoundly different than TikTok"), 557 (Toutiao's purpose is "to gather and present world news to users on a single feed"). Under these circumstances, the law does not support *any* discovery into these platforms.[16]

Plaintiffs' claims that the "AI algorithms" for Toutiao and Douyin are relevant to their design defect claims similarly fail. First, Plaintiffs misrepresent what these documents say. For example, Plaintiffs cite TIKTOK3047MDL-002-00092828 to suggest TikTok and Douyin "share the same fundamental 'building blocks.'" (Relevant Time Period Brief at 1, ). But the document actually states that "TikTok's business logic, algorithm, integration, and deployment of systems is specific to the TikTok application and separate from Douyin." As another example, Plaintiffs cite to ▮▮▮▮▮▮▮▮▮▮

---

[14] *See Genrich v. State of California*, 202 Cal.App.3d 221 (1988) (for notice, prior events must be similar, not too remote, and occur under substantially the same circumstances, quoting 1 Witkin, Cal. Evidence (3d ed. 1986) Circumstantial Evidence, § 386, p. 360 (1988))*; Barcenas v. Ford Motor Co*., 2004 WL 2827249, at *3 (N.D. Cal. Dec. 9, 2004) ("As the moving party, Plaintiffs bear the burden of establishing that the different products are substantially similar and that the discovery is relevant or reasonably calculated to lead to the discovery of admissible evidence."); *Shijiazhuang Hongray Grp. v. World Trading 23, Inc*., 2022 WL 17363907, at *5-6 (C.D. Cal. Nov. 15, 2022) (precluding discovery into products and periods not implicated by plaintiff's complaint).

[15] *See, e.g., Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861, 867 (6th Cir. 2006) ("American regulators have different priorities and deal with often more diverse populations than their European counterparts.  The issue is whether the United States label . . . provides adequate instructions . . ."); *Schueneman v. Arena Pharms., Inc*., 2017 WL 3118738, at *4 (S.D. Cal. July 21, 2017) (denying motion to compel where Plaintiff failed to demonstrate relevance given the "different standards utilized by the EMA and the FDA and the different time frames").

[16] *See, e.g.*, *Brockert v. Wyeth Pharmaceuticals, Inc.*, 287 S.W.3d 760 (Tex. App. 2009) (a different product is not a reasonable alternative design); *Pearlstein v. BlackBerry Ltd*., 332 F.R.D. 117, 121-22 (S.D.N.Y. 2019) (denying discovery into BlackBerry product that was "a different type of product than the BlackBerry 10 smartphones at issue" and "was released significantly before the BlackBerry 10 smartphones entered the market" reasoning that such discovery "is not proportional to the needs of the case"); *Stone v. Zimmer, Inc*., 2010 WL 11602738, at *2 (S.D. Fla. Jan. 7, 2010) ("Plaintiffs' generalized comparisons" to predicate devices "are insufficient to warrant discovery of Defendant's entire line of products in its [] hip replacement system").

4

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 2) This document, however, does not contain that statement. Second, the Court dismissed Plaintiffs' algorithm-based design-defect claims. MTD Order at 16-19 (ECF No. 430). The Court has thus already rejected Plaintiffs' purported relevance theory.

Unable to support that the U.S. TikTok platform and Douyin or Toutiao services share substantial similar "Named Features" that the Court has not already dismissed, Plaintiffs are left to grasp at comparing logos and other irrelevant details. But no one would confuse the two logos had Plaintiffs not omitted Douyin's Mandarin name from the logo. And companies commonly use similar logos to market different products in different markets.

**Discovery On Non-US Services Is Not Proportional.** The TikTok Defendants already agreed (subject to other limited objections not at issue here) to conduct reasonable searches for documents about the TikTok Platform in the United States, including documents that may reference or compare it to TikTok platforms and/or other ByteDance subsidiaries' services available outside the United States. TikTok's position is more than reasonable, as it provides Plaintiffs the design information about other services to the extent those other services informed the development of the U.S. TikTok platform, while preventing the several-fold expansion of the burden and time necessary to conduct open ended discovery about services not at issue. *See Valentine v. Crocs, Inc.*, 2024 WL 1636716, at *3 (N.D. Cal. Apr. 15, 2024) (denying plaintiffs' request for additional documents regarding models of shoes not purchased by plaintiffs when defendant already provided documents related to purported defect, concluding request was disproportionate and unduly burdensome) (Kang, M.J.). Given the complete absence of any support demonstrating other services' relevance to this litigation, there is no basis to support the open-ended discovery of the TikTok Platform across over 150 countries worldwide, let alone discovery on different services operated exclusively within China. Adding to the burden, Plaintiffs seeks information that could be subject to the export control laws of a foreign state.[17]

Finally, Plaintiffs are wrong that TikTok's proposal will exclude relevant documents. Plaintiffs' reliance on a document that TikTok *already produced* in this litigation as an example of a document they claim TikTok is seeking to exclude makes this point. [TIKTOK3047MDL-002-00102179]

The Court should reject Plaintiffs' expansive definition of "TikTok Platform," particularly as presented in the abstract to the Court and not even tied to any specific discovery request among hundreds served to date. If the Court is not inclined to reject Plaintiffs' request on its face based on the above authorities, TikTok requests that the Court order further briefing and require Plaintiffs therein to identify the specific requests at issue along with specific support demonstrating the relevance of that information to this litigation.

---

[17] *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to 'abusive' discovery that foreign litigants advance should therefore receive the most careful consideration.").

## **ATTESTATION**

    I, Andre Mura, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: May 1, 2024

By: */s/ Andre M. Mura*

Andre M. Mura
