UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:  4:22-md-03047-YGR-PHK |
| This Filing Relates to: | **JOINT LETTER BRIEF ON PROTECTIVE ORDER REGARDING RELEVANT TIME PERIOD APPLICABLE TO META DOCUMENT SEARCH AND PRODUCTION** |
| *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

   Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") respectfully submit this letter brief regarding the Relevant Time Period applicable to Plaintiffs' discovery requests and Meta's search, collection, and review of responsive documents.  **Exhibit A** is a copy of excerpts from the PI/SD Plaintiffs' First Set of Requests for Production (RFPs) served on Meta.  **Exhibit B** is a copy of excerpts from Meta's Objections and Responses to Plaintiffs' First Set of RFPs served on Plaintiffs.

   Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief.  The final conferral was attended by lead trial counsel for the parties involved in the dispute on May 16, 2024.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated:  May 23, 2024                  Respectfully submitted,


                              *Lexi J. Hazam*
                              LEXI J. HAZAM
                              **LIEFF CABRASER HEIMANN &**

**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**

2

821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY,
PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,
PSC**
600 West Main Street, Suite 100

3

Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TINY MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333

Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


**COVINGTON & BURLING LLP**

Ashley M. Simonsen
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*

Michael X. Imbroscio, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email: ehenn@cov.com

Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email: kpatchen@cov.com
Email: ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email: ghalperin@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

**Plaintiffs' Position**: This dispute concerns the Relevant Time Period applicable to Plaintiffs' discovery requests and Meta's search, collection, and review of responsive documents. Plaintiffs agreed to limit collection of custodians' files to their first date of employment through the date of collection[1] as the default Relevant Time Period. There is substantial justification for that default period. In contrast, the period Meta proposes – January 1, 2015 through February 14, 2023 – would shield *known* relevant information from discovery for no justifiable reason.

The discovery period turns on the facts alleged; more lengthy discovery periods are appropriate where necessary to ascertain the defendant's knowledge or notice of harmful conduct. *E.g.*, *Facebook Consumer Privacy Litig.*, 2021 WL 10282215, at *5 (N.D. Cal. 2021) (ordering 14-year time period for discovery). Courts generally recognize that a defendant's experience with its own product, predecessor products, or related products is relevant to issues such as notice, knowledge of risk, and alternative designs. *E.g.*, *Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *19 n.104 (N.D. Ohio 2010) (historical documents discovered from defendants dating back several decades relevant to show defendants' awareness of dangers); *Hatamian v. AMD*, 2015 WL 7180662, at *2 (N.D. Cal. 2015) (discovery [is allowed] to extend to events before and after the period of actual liability so as to provide context."); *accord Petconnect Rescue, Inc. v. Salinas*, 2022 WL 448416, at *7 (S.D. Cal. 2022). Here, liability for Plaintiffs' design defect, failure to warn, and negligence claims extends back to the development of its features and applications as well as the development of Meta's critical platform design choices, many of which were made between 2004 and 2015. *See Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (temporal scope encompassing the design, is reasonable in a products case); *accord Theobald v. Piper Aircraft, Inc.*, 2017 WL 9248504, at *3 (S.D. Fla. 2017) (discovery period eight years before product was built). Foreclosing discovery that pre-dates 2015 will deprive Plaintiffs of highly relevant information critical to their case.

**Meta Began Designing the Relevant Technology in 2004.** Meta began designing the core technology that drives Facebook in 2004 by launching thefacebook.com. Master Compl. ("PI Compl.") ¶¶ 279-281. Facebook continued to add features including photos, newsfeed, chat, messenger, Facebook live, and other features between 2004 and 2015, as well as implement numerous modifications to these features. *Id.* at ¶¶282-291. These changes included introducing newsfeed in 2006, adding a video service in 2007, launching Facebook chat in 2008, an algorithm to make personalized suggestions for "friending" in 2008, the "like" button in 2009, changing newsfeed from chronologic to algorithmic raking in 2009, launching the messenger app in 2012, and acquiring Instagram in 2012, which was designed and launched in 2010. *Id.* at ¶¶279-290, 296-298. Plaintiffs need, are entitled to, and would be prejudiced without discovery going back to the beginning of the development and testing of the relevant technology to understand how Meta developed and designed its addictive features and products, what alternative designs were available and/or considered and rejected, and why Meta chose the design it did when marketing its product. Plaintiffs have compromised at the date of first employment for each custodial file.

**Meta has no good cause to limit discovery to 2015-2023.** Plaintiffs' RFPs to Meta define the Relevant Time Period as "the date [Meta] first researched, designed, or developed the Facebook Platform or any of its predecessors to the present." Contrary to Meta's assertions that Plaintiffs did not assert this issue until months after Meta began collecting custodial files, Plaintiffs have repeatedly addressed the fact that the Relevant Time Period runs from the initial design and development of the platforms and features at issue and does not end upon the filing of the Master Complaint in correspondence and meet and confers regarding the RFPs going back to February of this year. Any delay in bringing this dispute to the Court is due to Meta's reluctance to "ripen" the dispute. During early conferrals, During early conferrals, Meta declined to say whether it would stand on its time

---

[1] This offer was made without prejudice to Plaintiffs' ability to request updated and refreshed productions consistent with the Parties' obligations under the Federal Rules.

period objections and instead asked to defer conferral on time period to custodian/search terms discussions. The dispute did not ripen until Meta provided its search proposal with a proposed time period limitation on April 5, to which Plaintiffs timely objected.

Meta offers 3 "justifications" for arbitrarily excluding relevant documents: (1) prior productions to the AsG were limited to 2015,[2] (2) discovery should cut-off at the date of the PI Compl.,[3] and (3) there is simply not enough time to meet the Court's deadlines using the Relevant Time Period. These reasons do not accurately describe the AsG's investigation or fit the facts of this case, nor are they consistent with the law. It is axiomatic that Meta possesses relevant information responsive to Plaintiffs' RFPs during the entirety of Plaintiffs' Relevant Time Period.[4] Yet, Meta seeks to unilaterally limit its collection of relevant information to **conceal** critical documents it **knows** are relevant and responsive to Plaintiffs' RFPs, suggesting it is just too burdensome for one of the world's largest companies to comply with its most basic discovery obligations. To the degree Meta is raising an undue burden argument in opposition to the Relevant Time Period, or an argument that it is disproportional to the needs of the case, that argument is unavailing. "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. 2005). Meta cannot meet that burden here. As an initial matter, the parties have already agreed upon a limited number of custodians, and that search terms will be applied to make an initial determination of potential relevance. Further, many of the agreed upon custodians were not even employed prior to 2015 or after 2023, and thus would not be subject to collection outside that timeframe. In addition, Meta has disclosed that they intend to use TAR **after** the application of search terms to **further** cull irrelevant documents. Any issues in meeting the Court's deadlines can be addressed by the application of TAR to the review process, as well as increased staffing where necessary.

Proportionality does not mean that Meta can "refuse discovery simply by making a boilerplate objection that it is not proportional." *Milliner v. Mut. Securities, Inc.,* 2017 WL 6419275, at *3 (N.D. Cal. 2017). Rule 26(b) outlines six factors for determining proportionality. *Valentine v. Crocs, Inc.,* 2024 WL 2193321, at *1 (N.D. Cal. 2024). Each weighs against Meta and in Plaintiffs' favor.[5] Meta has acknowledged during conferrals that relevant information exists earlier than the restricted time period it proposes to search, but it has not actually performed any custodial searches using Plaintiffs' Relevant Time Period and thus does not actually know how many additional documents Plaintiffs' proposed time frame would identify. This alone is reason to reject Meta's position. Plaintiffs requested information on how, as a practical matter, Meta would exclude documents which fall outside the arbitrary cut-off dates for collection which it

---

[2] Meta mischaracterizes the AsG's investigation. As Meta acknowledges, after the AsG's first CID, subsequent requests sought productions dated to 2004. The AsG's Complaint contains several allegations dating as far back as 2004, Multistate Cmpl. ¶24, and allegations about harm dating back to the 2010s, *id.* ¶¶71, 227. The scope of the AsG's case should be judged from the product of their investigation—the AsG's Complaint—not initial requests issued three years ago. To clarify, the AsG are conferring separately with Meta regarding its R&O's to their RFPs, but agree with the PI/SD Plaintiffs' position on relevant time period.

[3] Meta's position that discovery to Meta should be cut-off as of the date of the PI Compl. is particularly troubling given the fact that in Meta's discovery propounded to the SD Plaintiffs, Meta has taken the position that discovery should run through 2024, or present day.

[4] The beginning date for the Relevant Time Period proposed by YouTube and Snap is also January 1, 2015, illustrating that this date has little to do with the actual facts relevant to this case.

[5] Meta has made no showing at all, and the Court should not speculate on Meta's burden. *E.g., Dairy v. Harry Shelton Livestock, LLC*, 2021 WL 4476778, at *1 (N.D. Cal. 2021).

proposes. Meta has refused to answer or provide further details on the grounds that this information is "privileged". Critically, however, Meta is only using search terms to identify the outer boundary of relevant information. Meta is *not* using search terms to exclude non-responsive information. Meta's TAR tool, Relativity Active Learning, is designed to rank the documents within a collection by relevance and exclude non-responsive documents from the review process. This allows Meta to meet tight production timelines, leverage a limited staff of human reviewers, and minimize the bottleneck caused by the algorithm training process.[6] For example, in *3M Earplug Litig.*, MDL No. 2885 (N.D. Florida), *no* search terms, time period, or other filters/limitations were used prior to application of TAR. The total document collection consisted of just under 9 million documents. Of these, only 715 thousand were reviewed by the defendants. This left just under 8.3 million documents in the unreviewed set. TAR should be used as it is designed – to rank documents based on relevancy and exclude non-responsive documents from the review process once properly trained.

As to the discovery "cut-off" date, the law is clear that discovery does not "cut off" on the date a complaint is served. *See Rosales v. FitFlop USA, LLC*, 2013 WL 12416060, at *2-3 (S.D. Cal. 2013). Where claims involve allegations of ongoing conduct and injunctive relief, discovery through the present is appropriate. *FTC v. Precision Patient Outcomes, Inc.*, 2023 WL 4475604, at *2 (N.D. Cal. 2023); *Wilson v. Gaver*, 2016 WL 11811706, at *6 (C.D. Cal. 2016). Here, the bellwether PI/SD Plaintiffs allege ongoing harm, and Meta continues to develop the relevant technology and engage in marketing of its products. Nonetheless, Plaintiffs have compromised at the date of production of each custodial file, with allowance for reasonable supplementation.

**Meta's Position.** The Court should reject Plaintiffs' request for an *unlimited* expansion of the Relevant Time Period Meta has been using since discovery opened. Plaintiffs propose an unbounded 20-year timeframe, spanning the date of inception of the company to the present. Meta, by contrast, has proposed a sufficiently broad timeframe that begins on **Jan. 1, 2015**— the start date specified by the AGs for most of their pre-suit CID requests—and ends on **Feb. 14, 2023**—the date the MDL PI Master Complaint was filed. It will permit Meta to meet the accelerated discovery timeline Plaintiffs demanded, and covers the key youth safety allegations, alleged misstatements, challenged features, and statutes of limitation.

*First*, Plaintiffs' proposed unbounded timeframe plainly is not "tailored and proportionate to the needs of the case." *Rusoff v. Happy Group, Inc.*, 2023 WL 114224, at *3 (N.D. Cal. Jan. 5, 2023). Expanding Meta's Relevant Time Period now would require the collection, processing, and review of up to *233 additional cumulative years* of custodial data, jeopardizing Meta's ability to meet the September 20 substantial completion deadline. The burden is particularly magnified here, where Meta has agreed to more than *double* its original number of proposed custodians (from 48 to 127), and already is running extremely broad search terms. Indeed, Meta estimates that it *already* will need to collect, process, and review *millions of documents*—and *millions more* if Plaintiffs' search terms are added—and substantially complete all of that work in the next four months. Notably, Plaintiffs have refused to make *any* movement on this issue. They describe as a "compromise" their willingness to accept each custodian's first employment date as the start date, but that is an empty offer in that it seeks all of a custodian's documents, without date limitation. And Plaintiffs have not budged from their position that Meta must go back to the inception of the company for non-custodial collections. Plaintiffs also claim to have "compromised at the date of *production* of each custodial file," but that offer *back-tracks* from their prior end-date offer (date of *collection*). Moreover, after insisting on a truncated discovery period—and despite knowing Meta's position on Relevant

---

[6] *See* Declaration of Maura R. Grossman in *Diisocyanates Antitrust Litigation*, MDL No. 2862 (W.D.PA 2018), ECF No. 459; Declaration of Douglas Forrest in *Uber Technologies, Inc. Litigation*, MDL No. 3084 (N.D.CA 2023), ECF No. 261-7 (filed on 2/12/24).

Time Period since 2023—Plaintiffs did not press this issue until ***months after*** Meta had already begun processing large custodial collections (and reviewing the files using that Relevant Time Period). *Cf.* Tr. of 1/25/24 DMC 108:13-18 (cautioning Plaintiffs against "dilly-dallying on getting your document requests and other written discovery out").[7]

Plaintiffs suggest that because Meta is using TAR ***and*** search terms, it can collect an unlimited volume of documents, without regard to relevance or timeframe. But the use of TAR is far from the only factor to consider in assessing the appropriate timeframe for a litigation. Plaintiffs' argument also ignores their own refrain that TAR "follows the notion of garbage in, garbage out," Tr. of 1/25/24 DMC 14:14-15, 15:10-11, and overlooks that Meta needs to use TAR to meet the September 20 substantial completion deadline ***based on the documents already collected***. It also ignores critical parts of the process where "increased staffing" does not solve issues, like the machine time it takes to collect and process documents and increased costs associated with processing and review of the additional documents pulled in. Plaintiffs fault Meta for not using search terms to ***exclude*** non-responsive information, but conveniently omit that Meta asked Plaintiffs to propose such terms and ***they never did***, following up only to ***add*** 122 search terms to the 318 they had already proposed (while agreeing to drop only 2).

*Second*, Meta's Relevant Time Period encompasses the key youth-safety allegations. Indeed, of the 100+ documents obtained by Plaintiffs from a former employee whose allegations against Meta form the basis for these suits, none pre-date 2015; most are from 2018-2020. *See* Tr. of 11/7/23 JCCP CMC 41:25-42:6 (Plaintiffs' counsel representing that as to Meta, "there is lots of information out there, ***and we're going to use that to make sure our discovery is tailored and targeted***."); Tr. of 1/25/24 DMC 103:12-15, 105:3-5, 106:22-25 (Court confirming that if Plaintiffs' "efficient" schedule were ordered, they'd "take the efforts to make sure you meet the deadlines"). And *none* of the statements challenged by the AGs predates 2018.[8]

*Third*, Meta's Relevant Time Period will afford Plaintiffs ample documents regarding the design of the specific features they are challenging. Plaintiffs have repeatedly said these cases concern "[b]ad code, plain and simple"—a reference to Defendants' content delivery algorithms. Tr. of 11/9/22 CMC 77:2-4. Those algorithms launched for Instagram in 2016, and Plaintiffs' specific allegations about Facebook's algorithms predominantly focus on 2018 onward, when Facebook shifted to "meaningful social interactions." ECF 494 ¶¶ 266, 273; 845(j). And the challenged image filters were launched in 2017, third-party augmented reality filters in 2019, and ephemeral content features in 2015-2017 and 2020. *Id.* ¶¶ 845(k), 864(d)& (l). Plaintiffs emphasize the "like" button, but that is not one of the alleged defects the Court

---

[7] Plaintiffs raised the Relevant Time Period in a letter dated February 22 and on a call the next day, but did not otherwise raise it until April 18, despite pressing other disputes. Plaintiffs' claim that Meta "declined to say whether it would stand on its time period objections" is false. On February 9, Meta objected to Plaintiffs' definition of "Relevant Time Period," supplied Meta's definition, and stated that "[a]ny response to the Requests by Meta indicating that documents will be searched for and/or produced" was an indication that Meta "intends, subject to its objections, to conduct a reasonable and proportionate search for responsive information … ***for the Relevant Time Period***." Ex. B at 3, 4. Where Meta agreed in response to specific RFPs to search for and produce documents (RFPs 1, 4-8, 10, 11, 13, 14, 20, 24-28, 30 of Set 1), it specified that it would do so "for the Relevant Time Period." Plaintiffs' assertion that Meta "asked to defer conferral on time period to custodial/search terms discussions" also is false. Meta asked to combine *letter-briefing* on those topics, which Plaintiffs inexplicably refused, declaring impasse and demanding a final conferral on May 16.

[8] The PI Plaintiffs have abandoned their misrepresentation claims, asserting only omission claims based on information they concede was disclosed by 2021. *See* ECF 600 at 11, 19.

allowed to proceed to discovery. *See* ECF 430 at 4, 18 (addressing only the timing and clustering of notifications, including notifications of likes); *see also* ECF 494 ¶¶ 845(l), 864. Plaintiffs also focus on "chat" features and "personalized suggestions for 'friending,'" but to the extent the Court permitted Plaintiffs' challenges to those "features" to proceed, they are limited to a theory that Meta failed to warn of *allegedly inadequate screening* of adult-minor interactions. *See* MTD Order (ECF 430) at 6; ECF 494 ¶¶ 845(u), 864(l); *see also* ECF 494 ¶ 405 (challenging Meta's CSAM-scanning practices within the past 4 years). Accordingly, Plaintiffs' bald assertion that Meta is seeking to "***conceal*** critical documents it ***knows*** are relevant and responsive to Plaintiffs' RFPs" is unfounded, and also overlooks that the standard for reasonable and proportional discovery is not whether a single relevant document might exist at any point in the past. *See Rusoff,* 2023 WL 114224, at *3. Finally, Plaintiffs' cited cases involved discovery periods for *a particular discovery request* that are *the same as or shorter than* the discovery period Meta is offering for *all collections*; none support Plaintiffs' position.[9]

*Third*, far from "arbitrary," the start date of Meta's Relevant Time Period (January 1, 2015) mirrors the start date specified by the AGs in their first pre-suit CID. The AGs have observed that they subsequently issued a CID related to COPPA, and targeted requests for structured data, that specified a start date of 2012. At most, this suggests the start date should be 2012 for certain targeted requests; but when Meta offered to go back to 2010 for up to 5 custodians of Plaintiffs' choice, they rejected that offer. Given the AGs deemed 2015 sufficient for most issues in their investigation, which was "directly related and relevant to the MDL" according to the PI/SD Plaintiffs, Tr. of Dec. 14, 2022 CMC 46:14-16; *see also id.* 47:4-5 ("It will all be relevant"), that date should be treated as presumptively reasonable for these follow-on suits.

*Fourth*, Meta's start date sufficiently encompasses most of the relevant statutes of limitations, which in most states are between 2 to 4 years for product liability and negligence claims. *See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978) ("It is proper to deny discovery . . . to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to the issues in the case."). And courts routinely adopt complaint filing dates as appropriate end dates for discovery purposes. *See, e.g., Waidhofer v. Cloudflare, Inc.*, 2021 WL 8532942, at *2 (C.D. Cal. Mar. 10, 2021); *Martinelli v. Johnson & Johnson*, 2016 WL 1458109, at *1 (E.D. Cal. Apr. 13, 2016). If the Court is inclined to order a later end date, Meta submits (and proposed to Plaintiffs) that October 2023 would be an appropriate middle ground.[10]

---

[9] *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282215, at *5 (N.D. Cal. Sept. 29, 2021) (14-year period for single request); *Petconnect Rescue, Inc. v. Salinas*, 2022 WL 448416, at *3-7 (S.D. Cal. Feb. 14, 2022) (up-to 5-year period for particular requests); *Theobald v. Piper Aircraft, Inc.*, 2017 WL 9248504, at *3 (S.D. Fla. Nov. 15, 2017) (8-year period limited to requests regarding design history); *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 157 (M.D. Pa. 2017) (5-year period limited to requests regarding manufacture, design, or sale of allegedly defective product or its parts); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000 (N.D. Ohio Apr. 10, 2016), ECF No. 1729 at 2) (8-year limit on *part* of single discovery request); *see also Hatamian v. Adv. Micro Devices, Inc.*, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) (2.5-year overall discovery period).

[10] Plaintiffs observe that the date specified in Meta's initial bellwether RFPs is later (April 1, 2024), but that date mirrors the ***agreed*** document production end date for the PFS. Meta has separately agreed to produce user data for every bellwether PI plaintiff through May 2024. Those agreements in an entirely different context have no bearing on the relevant end date for Meta's productions. In any event, with the exception of two plaintiffs who started using Facebook in 2011, all of the bellwether plaintiffs began using Meta's platforms in 2012 or later, supporting (if anything) an outer-bound start date of 2012. Indeed, the AGs confirmed during the Parties' final conferral (on May 16) that "2012 would be the relevant [start] date for us."

## **ATTESTATION**

I, Jennie Lee Anderson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: May 23, 2024

By: /s/ *Jennie Lee Anderson*

Jennie Lee Anderson