Previn Warren
**MOTELY RICE LLC**
401 9th Street NW Suite 630
Washington, DC 20004
Telephone: (202) 386-9610
pwarren@motleyrice.com

*Attorney for Plaintiffs Baker, B.B., Booker, C.G., C.S., Calvoni, Cameron, Cusato, D.S., Dodd, Dowdy, Garceau, Haas, Hirka, J.F. Jackson, Jansky, K.C., Keizer, Koizol, M.C., M.M., N.K., Robertson, and S.S.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | No. 4:22-md-03047-YGR |
| | MDL No. 3047 |
| THIS DOCUMENT RELATES TO: | |
| *Baker* (4:23-cv-01578); *B.B.* (4:23-cv-03032); *Booker* (4:23-cv-01537); *C.G.* (4:23-cv-01568); *C.S.* (4:23-cv-01569); *Calvoni* (4:22-cv-05873); *Cameron* (4:23-cv-03266); *Cusato* (4:23-cv-04961); *D.S.* (4:23-cv-03402); *Dodd* (4:23-cv-01583); *Dowdy* (4:23-cv-01866); *Garceau* (4:23-cv-04962); *Haas* (4:23-cv-01565); *Hirka* (4:23-cv-03906); *J.F.* (4:23-cv-01846); *Jackson* (4:23-cv-03774); *Jansky* (4:23-cv-02026); *K.C.* (4:23-cv-03179); *Keizer* (4:23-cv-02972); *Koizol* (4:23-cv-02244); *M.C.* (4:23-cv-03398); *M.M.* (4:23-cv-01615); *N.K.* (4:23-cv-01584); *Robertson* (4:24-cv-00127); *S.S.* (4:23-cv-02024). | **PLAINTIFFS' OPPOSITION TO MARK ZUCKERBERG'S MOTION TO DISMISS PERSONAL INJURY PLAINTIFFS' CORPORATE OFFICER LIABILITY CLAIMS**<br><br>Honorable Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD ............................................................................................................1

III. ARGUMENT ..........................................................................................................................2

    A.    Plaintiffs' corporate-officer participation allegations against Mark Zuckerberg are not subject to a heightened pleading standard. .................................................2

    B.    Mr. Zuckerberg's proposed narrowing of the range of conduct constituting officer participation in a corporation's tort is not warranted. .............................4

    C.    Plaintiffs sufficiently allege Mark Zuckerberg's participation in Meta's efforts to shield the risks of its platforms from public disclosure. ......................................7

IV. CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Arizona Tile, L.L.C. v. Berger*,
    224 P.3d 988 (Ariz. Ct. App. 2010)......................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 663 (2009) ............................................................................................................2

*B & F Sys., Inc. v. LeBlanc*,
    2011 WL 4103576 (M.D. Ga. Sept. 14, 2011) ....................................................................4

*B&R Res., LLC v. Dep't Envt'l Prot.*,
    180 A.2d 812 (Pa. Cmmw. Ct. 2018) ..................................................................................6

*Batchelar v. Interactive Brokers, LLC*,
    422 F. Supp. 3d 502 (D. Conn. 2019) .................................................................................9

*Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.*,
    700 P.2d 902 (Ariz. Ct. App. 1985) ....................................................................................6

*Capen Wholesale, Inc. v. Probst*,
    509 N.W.2d 120 (Wis. Ct. App. 1993) .......................................................................4, 6, 8

*Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*,
    557 F. Supp. 3d 381 (E.D.N.Y. 2021) .................................................................................9

*Dawson v. Withycombe*,
    163 P.3d 1034 (Ariz. Ct. App. 2007) ..................................................................................5

*Dean v. Beckley*,
    2010 WL 3928650 (D. Md. Oct. 1, 2010) ...................................................................2, 3, 7

*DTC Energy Grp., Inc. v. Hirschfeld*,
    420 F. Supp. 3d 1163 (D. Colo. 2019) ................................................................................6

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) .........................................................................................7, 8

*Frances T. v. Vill. Green Owners Assn.*,
    723 P.2d 573 (Ca. 1986) .....................................................................................................6

*Galas v. Lending Co.*,
    2013 WL 308745 (D. Ariz. Jan. 25, 2013) ..........................................................................9

*Gilmore v. Wells Fargo Bank N.A.*,
    75 F. Supp. 3d 1225 (N.D. Cal. 2014) ................................................................................2

*Gonzalez v. US Hum. Rts. Network*,
    512 F. Supp. 3d 944 (D. Ariz. 2021) ...................................................................................7

*Hildebrand v. New Vista Homes II, LLC*,
    252 P.3d 1159 (Colo. App. 2010) .......................................................................................4

*Hoang v. Arbess*,
    80 P.3d 863 (Colo. App. 2003) ...........................................................................................4

*Hunt v. Rabon*,
  272 S.E.2d 643 (S.C. 1980) ............................................................................................... 9

*In re Chrysler-Dodge-Jeep Ecodiesel*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................ 9, 10

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................. 7

*Jenkins v. Meta Platforms Inc.*,
  2023 WL 4306908 (M.D. Ga. June 30, 2023) ................................................................. 9

*LaLumia v. Schwartz*, 2
  3 A.D.2d 668 (N.Y. App. Div. 1965) .............................................................................. 7

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ......................................................................................... 2

*Luna v. A.E. Eng'g Servs., LLC*,
  938 A.2d 744 (D.C. 2007) ............................................................................................... 5

*Metromedia Co. v. WCBM Maryland, Inc.*,
  610 A.2d 791 (Md. 1992) ................................................................................................ 5

*Mozingo v. Correct Mfg. Corp.*,
  752 F.2d 168 (5th Cir. 1985) ........................................................................................... 9

*N.Y. v. Shore Realty Corp.*,
  759 F.2d 1032 (2d Cir. 1985) ...................................................................................... 5, 7

*Njoku v. Geico Gen. Ins. Co.*,
  2020 WL 4915433 (N.D. Cal. May 6, 2020) ................................................................... 2

*R.N. v. Kiwanis Int'l*,
  496 P.3d 748 (Wash. Ct. App. 2021) ............................................................................... 6

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) ............................................................................... 5

*Schaefer v. D & J Produce, Inc.*,
  403 N.E.2d 1015 (Ohio Ct. App. 1978) ........................................................................... 5

*Scribner v. O'Brien, Inc.*,
  363 A.2d 160 (Conn. 1975) ............................................................................................. 8

*Spurgeon v. Empire Petroleum Partners, LLC*,
  2019 WL 2521722 (Tex. App. June 19, 2019) ................................................................ 5

*Tatten v. Bank of Am. Corp.*,
  912 F. Supp. 2d 1032 (D. Colo. 2012) ............................................................................ 6

*Tedrow v. Deskin*,
  290 A.2d 799 (Md. Ct. App. 1972) .................................................................................. 7

*Ventres v. Goodspeed Airport, LLC.*,
  881 A.2d 937 (Conn. 2005) ............................................................................................. 4

iii   PLAINTIFFS' OPPOSITION TO MARK ZUCKERBERG'S MOTION TO DISMISS PERSONAL INJURY PLAINTIFFS' CORPORATE-OFFICER LIABILITY CLAIMS, CASE NO. 4:22-MD-03047-YGR

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ............................................................................................. 3

*Villegas v. Wells Fargo Bank, N.A.*,
 2012 WL 4097747 (N.D. Cal. Sept. 17, 2012) ..................................................................... 2

*Wellborn v. Mountain Accessories Corp.*,
 23 F. Supp. 2d 1321 (D. Wyo. 1998) ................................................................................... 9

*Wicks v. Milzoco Builders, Inc.*,
 470 A.2d 86 (Pa. 1983) ..................................................................................................... 5, 6

*Zwerling v. Ford Motor Co.*,
 2024 WL 37220 (N.D. Cal. Jan. 2, 2024) ............................................................................ 3

**Rules**

Federal Rule of Civil Procedure 9(b) ............................................................................................ 2, 3

## I. INTRODUCTION

The above-captioned personal injury plaintiffs ("Plaintiffs") allege fraudulent and negligent concealment and misrepresentation-by-omission counts against Mark Zuckerberg, Meta's founder and CEO. *See, e.g.*, *Baker* SFC, No. 4:23-cv-01578 at 3, 10; Second Amended Complaint ("SAC"), ECF 494, ¶¶ 976-99 (counts 8 and 9). Pursuant to the Court's April 15th Order, Plaintiffs filed a consolidated addendum[1] to their short-form complaints "concerning Zuckerberg's role as a corporate-officer participant in the conduct charged under Counts 8 and 9 of the SAC."[2] In his renewed Motion ("Mot."), ECF 833, Mr. Zuckerberg asks the Court to dismiss Plaintiffs' corporate-officer liability claims against him, arguing that his omissions alone do not constitute participation in Meta's alleged tort.

Mr. Zuckerberg's motion should be denied and Plaintiffs' claims should be permitted to advance. **First**, Mr. Zuckerberg improperly dissolves the distinction between the alleged "circumstances constituting fraud" (which may be subject to a heightened pleading standard) and Mr. Zuckerberg's connection to that fraud (which are not). Only the latter is at issue in this motion. **Second**, Mr. Zuckerberg takes an erroneously constrained view of what constitutes "participation" sufficient for a finding of corporate-officer liability. His proffered "misfeasance-nonfeasance" paradigm is at odds with the law and ignores that the "participation" inquiry is wide ranging and fact dependent. **Third**, Plaintiffs allege facts in their Addendum that are more than sufficient to satisfy the standard for "participation" that actually applies. These include not only Mr. Zuckerberg's omissions, but also allegations detailing his knowledge of the risks Meta's platforms posed to minors, misleading public statements facilitating the concealment of those risks, control over the information disclosed (and not disclosed) about Meta's platforms, authority to abate harms the platforms inflicted on minors (through disclosure, among other actions), and consistent choice not to exercise that authority.

## II. LEGAL STANDARD

The parties agree that Plaintiffs' corporate-officer liability claims are governed by the laws of the

---

[1] Consolidated Addendum to Plaintiffs' Short-Form Complaints Stating Claims Against Mark Zuckerberg ("Addendum"), ECF 794.

[2] Order Granting Defendant Mark Zuckerberg's Motion to Dismiss with Leave to Amend ("Order"), ECF 753, at 12.

thirteen states identified in the Court's Order and Mr. Zuckerberg's motion, where Plaintiffs primarily used Meta's platforms. Order at 4; Mot. at 2. However, the parties disagree about much else regarding the legal standard that should govern resolution of Mr. Zuckerberg's motion—specifically, whether Rule 9(b) applies in this context, *see infra* Section III.A, and how to define the parameters for whether a corporate officer has "participated in" a corporation's tort, *see infra* Section III.B. The Court should adopt Plaintiffs' view, which is consistent with the law. Rule 9(b) is inapplicable (and, in any event, Plaintiffs have satisfied it). And the "participation" inquiry sweeps more broadly than the narrow "misfeasance-nonfeasance" distinction advanced by Mr. Zuckerberg.

### III. ARGUMENT

#### A. Plaintiffs' corporate-officer participation allegations against Mark Zuckerberg are not subject to a heightened pleading standard.

In order to survive a motion to dismiss, Plaintiffs need only plausibly allege Mr. Zuckerberg's participation in Meta's torts. *See, e.g.*, *Dean v. Beckley,* 2010 WL 3928650, at *2-3 (D. Md. Oct. 1, 2010). In evaluating the plausibility of Plaintiffs' claims, the Court must accept factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor.[3] *See Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009); *Levitt v. Yelp! Inc.,* 765 F.3d 1123, 1134-35 (9th Cir. 2014).

Mr. Zuckerberg argues for the application of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard to the Addendum. Mot. at 3. But this dissolves the distinction between the alleged "circumstances constituting fraud," Fed. R. Civ. P. 9(b), and Mr. Zuckerberg's connection to it.[4] The two are not governed by the same pleading standard. In *Dean*, for example, the Court applied Rule 9(b) to the plaintiff's underlying fraud claims but did *not* do so in analyzing whether a corporate officer sufficiently

---

[3] Despite paying lip service to this basic rule of procedure, Mr. Zuckerberg nonetheless assails Plaintiffs' "rhetoric" as "not grounded in fact," advancing a series of factual assertions and citations to website that are nowhere to be found in the pleadings. Mot. 1 n.1. The Court can and should ignore this plainly improper argumentation.

[4] Mr. Zuckerberg also ignores Plaintiffs' negligent-omission claim. While it may be appropriate to collapse these claims for purposes of the participation inquiry, "[t]he Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation," *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1225, 1269 (N.D. Cal. 2014) (quoting *Villegas v. Wells Fargo Bank, N.A.*, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012)), and district courts remain "divided on [this] question," *Njoku v. Geico Gen. Ins. Co.*, 2020 WL 4915433, at *3 (N.D. Cal. May 6, 2020).

participated in a corporation's tort such that he could be held personally liable. *See* 2010 WL 3928650, at *2-4 (denying motion to dismiss claim against corporate officer whose "failure to provide notice of [corporation's] bankruptcy was a material fact" that led to the plaintiffs' harm).

Even assuming that Rule 9(b) applies to Counts 8 and 9, it does not follow that the rule also applies to Plaintiffs' allegations pertaining to Mr. Zuckerberg's participation. *Id.* Nor is such a perspective consistent with the Court's Order, which tees up a narrow issue for resolution: whether Plaintiffs can set forth sufficient "allegations concerning Zuckerberg's role as a corporate-officer participant in the conduct charged under Counts 8 and 9 of the SAC." Order at 12. Pursuant to that order, the Addendum does precisely that. But it appropriately does not holistically reallege the "who, what, when, where, and how of the misconduct charged" in Counts 8 and 9, which are separately the subject of Meta's motion to dismiss (ECF 517). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Even if the Court finds that Rule 9(b) applies, Plaintiffs have alleged the circumstances of Mr. Zuckerberg's participation in Meta's fraudulent concealment and omissions in satisfaction of that heightened standard. As the Court observed, an omissions-based fraud claim can satisfy Rule 9(b) through more generalized allegations than a false representation claim. Order at 5. Accordingly, Plaintiffs "describe the content of the omission and where the omitted information should or could have been revealed." *Zwerling v. Ford Motor Co.*, 2024 WL 37220, at *2 (N.D. Cal. Jan. 2, 2024). Plaintiffs list Mr. Zuckerberg's "misleading statements on social media addiction and teen well-being issues that omitted the truth about their products' addictive designs and risks of harm." Addendum ¶ 33; *see infra* Section III.C, at 7. They allege Mr. Zuckerberg's power to "direct[] employees to place warnings on the platforms that would reach young users and their parents." *Id.* ¶ 45. They allege that Mr. Zuckerberg "could have, but did not, share" critical information from reports he received—about how children under the age of 13 use Instagram in significant numbers, how use of Meta's platforms can worsen negative social comparison, how Facebook use is linked to 10- to 12-year old girls' heightened body image issues, and that experiments "strongly indicate causation" between social media use and spikes in teen mental health issues. Addendum ¶¶ 20-24, 30; *see also id.* ¶ 29 (discussing internal report connecting passive social media consumption with negative well-being effects); *id.* ¶ 30 (describing internal report discussing social media use exacerbating user mental health issues). And, worst of all, Plaintiffs allege that Mr. Zuckerberg failed

to make these disclosures despite touting the safety of Instagram and Facebook around the same time. *Id.*; *see also infra* Section III.C (detailing Addendum's additional details concerning Mr. Zuckerberg's participation in Meta's torts).

### B. Mr. Zuckerberg's proposed narrowing of the range of conduct constituting officer participation in a corporation's tort is not warranted.

The parties agree that the thirteen states at issue recognize that "corporate officers can be held liable for the tort of a corporation if they 'participated in' the tort." Mot. at 2. However, Mr. Zuckerberg's misleadingly narrow presentation of the range of conduct constituting "participation" is not supported by the case law.

It is the "general, if not universal rule"[5] that a corporate officer is liable for the corporation's torts in which he participates.[6] Mr. Zuckerberg discusses two iterations of participation, "active participation" and "specific direction." Mot. at 1-3. But courts have recognized participation in many other forms, including: **"conception or authorization,"** *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003), **"sanction[]" or "approv[al],"** *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1166-67 (Colo. App. 2010), **"ratifi[cation],"** *B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, at *32 (M.D. Ga. Sept. 14, 2011), **"knowledge amounting to acquiescence,"** *Capen Wholesale, Inc. v. Probst*, 509 N.W.2d 120, 126 (Wis. Ct. App. 1993), **"negligence in the management and supervision of the corporate affairs causing or contributing to the injury,"** *Arizona Tile, L.L.C. v. Berger*, 224 P.3d 988, 992-93 (Ariz. Ct. App. 2010), **"direct[ion of] the tortious act, or participat[ion] or operat[ion] therein,"** *Ventres v. Goodspeed Airport, LLC.*, 881 A.2d 937, 962 (Conn. 2005), **"cooperat[ion],"** *Wicks v. Milzoco Builders, Inc.*,

---

[5] *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 164 (3d Cir. 2018) (Shwartz, J., concurring) (quoting *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)); *see also DeRosa v. McKenzie*, 936 N.W.2d 342, 345 (Minn. 2019) ("It is the universal rule that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor.") (cleaned up); Martin Petrin, *The Curious Case of Directors' and Officers' Liability for Supervision and Management*, 59 Am. U. L. Rev. 1661, 1666 (identifying "the defendant's participation in the tort" as the "most common" theory of corporate officer tort liability).

[6] Mr. Zuckerberg provides an updated state-by-state table of "pertinent" case law. Mot. at 2, 8-10. Given the parties' agreement that each state accepts corporate officer liability by participation, Tr. Case Mgmt. Conf. (Feb. 23, 2024), at 36:16-18 (Mr. Zuckerberg's counsel: "[T]he basic concepts of corporate officer liability are not meaningfully different in our view across the country."); Mot. at 2, and prior supplemental briefing on this point, ECF 660 (Defendants' Supplemental Briefing); ECF 661 at 3-6 (Plaintiffs' Supplemental Briefing), Plaintiffs do not reproduce a state-by-state table in this briefing.

470 A.2d 86, 91 (Pa. 1983), **"control[ling] corporate conduct,"** *N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985), **"inspiri[ng]" the tort,** *Metromedia Co. v. WCBM Maryland, Inc.*, 610 A.2d 791, 794 (Md. 1992), and **serving as the "guiding spirit" and "central figure in the challenged corporate activity."** *Spurgeon v. Empire Petroleum Partners, LLC*, 2019 WL 2521722, at *3 (Tex. App. June 19, 2019). Importantly, these descriptors do not—as Mr. Zuckerberg's discussion of "specific direction" implies—create distinct theories of corporate-officer liability. Mot. at 2. Instead, these variations show that "participation" can take many forms and is inherently fact-specific. *See Luna v. A.E. Eng'g Servs., LLC*, 938 A.2d 744, 748 (D.C. 2007) ("The extent of [defendant's] participation in and responsibility for the alleged torts was a quintessential question of fact that could not be answered at the pleading stage.").

Mr. Zuckerberg argues that the operative framework for determining whether his conduct constitutes participation in Meta's omissions is binary: liability-creating "misfeasance" versus non-participatory "nonfeasance." Mot. at 1, 4-6, 8. But the misfeasance-nonfeasance approach "has been severely criticized" as a false dichotomy that confuses rather than clarifies, leaving the court to wrestle with "when nonfeasance ceases and misfeasance or malfeasance begins." *Schaefer v. D & J Produce, Inc.*, 403 N.E.2d 1015, 1020 (Ohio Ct. App. 1978). To avoid this unnecessary problem, the "modern rule is that, as long as the agent participated in the tort, personal liability can attach regardless of whether the breach was a result of misfeasance or nonfeasance." *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 464 (E.D. Pa. 2016); *see, e.g.*, *Dawson v. Withycombe*, 163 P.3d 1034, 1051 (Ariz. Ct. App. 2007) (recognizing corporate-officer liability where there is "acquiescence by knowledge of the tort").

It is thus unsurprising that the only jurisdictions Mr. Zuckerberg identifies as seriously engaging with the misfeasance-nonfeasance framework, New York and Pennsylvania, do not apply it in the rote manner he propounds. *Wicks v. Milzoco Builders, Inc.* is illustrative: the plaintiffs' allegations focused on what the corporate officers *did not* do,[7] but the court construed the complaint as misfeasance—specifically, that the corporate officers knew a housing development's location created "an unreasonable risk of the drainage problems which occurred, and that, having the power to do so . . . deliberately ordered

---

[7] The plaintiffs' allegations included that the defendants: "did not order or perform adequate soil testing," "failed to provide for any special drainage considerations," "failed to foresee the potential problems with the instant lot in question," and "fail[ed] to provide in the grading and landscaping for adequate aesthetically pleasing drainage facilities." *Wicks*, 470 A.2d 86 at 88.

the work to proceed." 470 A.2d at 90. The other case Mr. Zuckerberg cites as representative of Pennsylvania case law, *see* Mot. at 10, further explains that the Supreme Court in *Wicks* "did not hold that inaction can never be sufficient to support participation theory liability." *B&R Res., LLC v. Dep't Envt'l Prot.*, 180 A.2d 812, 818 (Pa. Cmmw. Ct. 2018).

Even if the misfeasance-nonfeasance framework applies, the allegations against Mr. Zuckerberg are not reducible to non-participatory nonfeasance. Dismissing the Addendum as alleging "only omissions by Mr. Zuckerberg," Mot. at 6, misses the point that Mr. Zuckerberg's knowledge, role, power, misleading statements, and omissions in combination render his nondisclosure participation in Meta's breach of its duty to disclose.

Although doing nothing "under circumstances that suggest lack of knowledge, involvement, or authority" may not constitute participation, doing nothing "despite having knowledge of and authority to prevent unlawful practices" *is* participation. *Capen Wholesale*, 509 N.W.2d at 126; *see also Frances T. v. Vill. Green Owners Assn.*, 723 P.2d 573, 585 (Ca. 1986) (en banc) ("Directors and officers have frequently been held liable for negligent nonfeasance where they knew that a condition or instrumentality under their control posed an unreasonable risk of injury to the plaintiff, but then failed to take action to prevent it."). Many authorities emphasize that allegations pertaining to the officer's knowledge is central to identifying participation. *R.N. v. Kiwanis Int'l*, 496 P.3d 748, 761 (Wash. Ct. App. 2021) (justifying the misfeasance-nonfeasance paradigm as a method to protect "unwitting corporate officers and agents who fail to take action to prevent the corporation from committing a tort *they knew nothing about*.") (emphasis added)); *Bischofshausen, Vasbinder, & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.*, 700 P.2d 902, 908 (Ariz. Ct. App. 1985) ("knowledge amounting to acquiescence" constitutes participation). Indeed, two of Mr. Zuckerberg's authorities offer examples of corporate-officer liability allegations falling short for failure to allege knowledge. Mot. at 5 (citing *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1177 (D. Colo. 2019) (finding allegations inadequate because they failed to show the corporate officers knew the company would steal trade secrets from another); *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1039 (D. Colo. 2012) (plaintiff alleged the CEO committed misconduct "by and through" employees but failed to allege the CEO's direction or sanction of any such conduct that would indicate his knowledge)). This presents no hurdle here: Plaintiffs allege Mr. Zuckerberg's knowledge of the risks

that Meta's products posed to minors, *see* Addendum ¶¶ 20-25, 29-30, and, as discussed below, facilitated the concealment of that information despite that knowledge.

### C. Plaintiffs sufficiently allege Mark Zuckerberg's participation in Meta's efforts to shield the risks of its platforms from public disclosure.

First, Mr. Zuckerberg's misleading statements constitute direct participation in Meta's tortious omissions and concealment. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 635 (N.D. Cal. 2020) (CEO's statement to the New York Times "that selling JUUL products to youth was 'antithetical to the company's mission'" supported participation in fraudulent scheme); *Dean*, 2010 WL 3928650, at *3 (RV dealership owner's participation in fraudulent conduct where he failed to disclose a manufacturer's recent bankruptcy in statements made to the plaintiffs regarding the manufacturer's warranty). The Addendum details Mr. Zuckerberg's misleading public statements in service of Meta's attempt to conceal the truth about its platforms. For example, Mr. Zuckerberg attested to Meta's focus on "protecting minors specifically," Addendum ¶ 24, developing platforms that are "good for people's wellbeing," *id.* ¶ 22, and its "responsibility to keep people safe," *id.* ¶ 28 n.35. *See also id.* ¶ 29 ("You should expect we'll do everything we can to keep you safe on our services."); *id.* ¶¶ 20, 23, 25, 27 (describing reports and information concerning negative impact of Meta's products on youth Mr. Zuckerberg received prior to making at least one of these statements). To the extent that Mr. Zuckerberg argues that such statements are not misleading, he raises a "dispute[] of fact not appropriate for resolution" at the motion to dismiss stage. *In re JUUL*, 497 F. Supp. 3d at 616; *see* Mot. at 1-2 n.1.

Second, the Addendum plausibly alleges Mr. Zuckerberg's control over disclosures about Meta's products, and a corporate officer is an active participant in conduct he controls. *Shore Realty Corp.*, 759 F.2d at 1052 (citing *LaLumia v. Schwartz*, 23 A.D.2d 668 (N.Y. App. Div. 1965)); *Tedrow v. Deskin*, 290 A.2d 799, 803 (Md. Ct. App. 1972) (corporate-officer liability extends "to tortious acts which he actually brings about" or "inspires"). Relatedly, Mr. Zuckerberg may be held liable as the "guiding spirit" and "central figure in the challenged corporate activity." *Gonzalez v. US Hum. Rts. Network*, 512 F. Supp. 3d 944, 954 (D. Ariz. 2021); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (holding CEO liable as "guiding spirit and central figure" where he "controlled and directed" the

7  PLAINTIFFS' OPPOSITION TO MARK ZUCKERBERG'S MOTION TO DISMISS PERSONAL INJURY PLAINTIFFS' CORPORATE-OFFICER LIABILITY CLAIMS, CASE NO. 4:22-MD-03047-YGR

corporation's actions and the conduct at issue was "his idea").[8] Plaintiffs allege that Mr. Zuckerberg served as Meta's "interlocutor with the public," Addendum ¶ 16, and served as the company's ambassador to challenging issues—whether in formal Q&As, interviews, investor meetings, and Congressional hearings. *See, e.g., id.* ¶¶ 12, 16, 20, 22, 28 n.35, 33(a)-(f). In at least one situation, Mr. Zuckerberg defied the talking points given to him by Meta's staff on the negative effects of social media use and gave a positive spin on Meta's internal research. *Id.* ¶ 33(c). And the Addendum further alleges that Mr. Zuckerberg created a work "culture characterized by fear of dissent and lack of transparency." Addendum ¶ 44 ("[M]any employees feel that if they whistleblow . . . they are at risk for being fired."). It is reasonable to infer that Mr. Zuckerberg controlled and was the "central figure" behind determining what would—and crucially, would not—be disclosed about Meta's products to the public.

Third, Mr. Zuckerberg is a corporate-officer participant because he chose neither to prevent nor to abate Meta's tortious conduct, despite having the authority and knowledge to do so. *See Capen Wholesale*, 509 N.W.2d at 126 (distinguishing doing nothing "under circumstances that suggest lack of knowledge, involvement, or authority" from doing nothing "despite having knowledge of and authority to prevent unlawful practices"); *see also, e.g., Scribner v. O'Brien, Inc.*, 363 A.2d 160, 168 (Conn. 1975) (officer's participation demonstrated by his daily supervision over construction of home that lacked proper drainage system). The Addendum is replete with examples of Mr. Zuckerberg exercising his unique power as Meta's founder, CEO, and controlling shareholder to dominate decision-making. Addendum ¶¶ 5-7 (Mr. Zuckerberg's position allows him to "control [Meta's] management and major strategic investments"); *id.* ¶ 21 (making final decision to increase notification quantity at the cost of user experience); *id.* ¶ 32 (vetoing ban on filters simulating plastic surgery); *id.* ¶¶ 19, 29, 31, 35 (rejecting requests to or declining to fund well-being initiatives). Mr. Zuckerberg's authority makes him the "person who would have made the decision to place warnings on" or otherwise disclose the risks of using Meta's

---

[8] Because "[c]ases finding personal liability on the part of the corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, or the 'central figure' in the challenged corporate activity," these terms serve as guideposts for identifying participation. *Facebook*, 844 F.3d at 1069-70. Although Mr. Zuckerberg is dismissive of the "guiding spirit" test, Meta—then Facebook—successfully argued for its application in a corporate-officer liability case it brought against Power Venture's CEO. Facebook Inc.'s Suppl. Br. Regarding Damages & Liab. Def. Steve Vachani at 14, No. 5:08-cv-05780, ECF 299 (N.D. Cal.).

products. *Wellborn v. Mountain Accessories Corp.*, 23 F. Supp. 2d 1321, 1328 (D. Wyo. 1998).

Fourth, Mr. Zuckerberg's involvement in developing and promoting Meta's social media products to teens supports the reasonable inference that he "was directly involved with, and therefore knowledgeable about," the products' negative impact on user well-being and Meta's concealment of that information. *In re Chrysler-Dodge-Jeep Ecodiesel*, 295 F. Supp. 3d 927, 989 (N.D. Cal. 2018). As early as 2005, Mr. Zuckerberg explained what animated Facebook's development: maintaining and increasing daily use. Addendum ¶ 12; *accord id.* ¶ 15 (former President of Facebook, Sean Parker, stating social media platforms were designed to "consume as much . . . [user] time and conscious attention as possible"). In 2014 and 2015, Mr. Zuckerberg set specific usage-growth goals for both Facebook and Instagram.[9] *Id.* ¶ 15; *Galas v. Lending Co.*, 2013 WL 308745, at *3 (D. Ariz. Jan. 25, 2013) (CEO participated in fraud where he conceived of and ran program that was misrepresented to consumers). Mr. Zuckerberg's appetite for user attention drives Meta's work: Mr. Zuckerberg declares "lockdowns" to develop new attention-commanding features and squash out competitive threats, *id.* ¶ 13-14, maintains close involvement in and advances engagement-focused development, *id.* ¶ 15-18, allocates resources towards projects to capture the teen market, like Facebook Live, *id.* ¶ 18, and he personally facilitated the purchase of Instagram for double its valuation to reach a younger audience, *id.* ¶ 13-14. *See Batchelar v. Interactive Brokers, LLC*, 422 F. Supp. 3d 502, 517 (D. Conn. 2019) (plaintiff adequately alleged participation where officer was responsible for software program's faulty design).[10]

On the whole, *In re Chrysler* is instructive. There, the plaintiffs brought a fraudulent-concealment claim against Fiat and its CEO for failing to disclose that emissions defeat devices rendered the plaintiffs'

---

[9] Nevertheless, at a 2021 congressional hearing, Mr. Zuckerberg denied that Meta's teams "have goals of trying to increase the amount of time that people spend" on the platforms. Addendum ¶ 33(e).

[10] The Addendum's detailed factual allegations (identified throughout this brief) differentiate this case from various authorities Mr. Zuckerberg cites. *See* Mot. at 5 (citing *Jenkins v. Meta Platforms Inc.*, 2023 WL 4306908, at *7 (M.D. Ga. June 30, 2023) (allegations offered "no factual support" for officer's direction or approval of misconduct); *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 398 (E.D.N.Y. 2021) (only factual allegation in support of officer's directing the company's representations was his inclusion on a single email to which he did not respond); *Hunt v. Rabon*, 272 S.E.2d 643, 644 (S.C. 1980) (brought wrongful death claims against all eight members of the Hospital's Board of Trustees without offering individualized allegations)); *see also* Mot. at 4 (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (officer had "little or nothing at all" to do with producing the defective product and did not realize it had been manufactured beyond a prototype)).

1  "EcoDiesel" vehicles not eco-friendly. 295 F. Supp. 3d at 941, 998-99. The plaintiffs adequately alleged
2  the CEO's participation in Fiat's failure to disclose because "the role [he] played vis-à-vis diesel engines"
3  made it reasonable to infer that "he was directly involved with, and therefore knowledgeable about, what
4  was happening with the EcoDiesel engines and [Fiat's] concealment." *Id.* at 989; *see also id.* at 977 (Fiat's
5  CEO "championed the EcoDiesel project"). Mr. Zuckerberg argues that this case is distinguishable
6  because *In re Chrysler's* plaintiffs "presented extensive factual allegations" of the CEO's active, personal
7  participation in the fraudulent concealment, whereas the Addendum "advances no allegations of any
8  deliberate, affirmative conduct by Mr. Zuckerberg to conceal information or to direct others to
9  misrepresent or conceal information." Mot. at 12. In fact, the allegations specific to Fiat's CEO described
10 his participation in general terms. *See generally* Am. Compl., *In re Chrysler*, No. 17-md-02777, ECF 225
11 (N.D. Cal.).[11] The allegations supporting Mr. Zuckerberg's participation (as discussed above) are actually
12 more robust—the Addendum provides many examples of Mr. Zuckerberg's own misleading statements,
13 context for his control over Meta's disclosures, and specific facts indicating his knowledge of and
14 involvement in platform design and the related risk of harm. Finally, Mr. Zuckerberg's argument implies
15 that *In re Chrysler* differs from the present case because of the "affirmative, deliberate wrongdoing by Fiat
16 to cheat on diesel-engine emissions tests," Mot. at 12, but Fiat's "wrongdoing" with respect to the
17 fraudulent concealment claim was—as it is here—"a straight omission/concealment theory" for its
18 failure to disclose information about the defeat device. *In re Chrysler*, 295 F. Supp. 3d, at 988.

### IV.   CONCLUSION

Plaintiffs respectfully request that the Court deny Mark Zuckerberg's motion to dismiss.

---

[11] ¶¶ 102, 226 (CEO "unveiled an ambitious 5-year plan to . . . roll out 'more diesel variants'"); *id.* ¶¶ 103, 227, 235 (CEO "announced another five-year plan . . . to increase" revenue in part by expanding and updating the diesel vehicle portfolio); *id.* ¶¶ 18, 104, 228 (making optimistic statements about the EcoDiesel engine performance); *id.* ¶ 236 (serving "at the helm" when the corporation conspired to circumvent emissions standards); and *id.* ¶ 261 (CEO "directed and controlled" the corporation when it misrepresented diesel vehicle performance metrics).

| | | |
|---|---|---|
| 1 | Dated: May 23, 2024 | Respectfully submitted, |
| 2 | Mathew P. Jasinski | */s/ Previn Warren* |
|   | Jessica C. Colombo | Previn Warren |
| 3 | **MOTLEY RICE LLC** | Abigail Burman |
|   | 20 Church Street, 17th Floor | **MOTLEY RICE LLC** |
| 4 | Hartford, CT 06103 | 401 9th Street NW Suite 630 |
|   | Telephone: 860-882-1681 | Washington, DC 20004 |
| 5 | mjasinski@motleyrice.com | Telephone: 202-232-5504 |
|   | jcolombo@motleyrice.com | pwarren@motleyrice.com |
| 6 | | aburman@motleyrice.com |
| 7 | Jodi Westbrook Flowers | |
|   | Sara O. Couch | Jonathan D. Orent |
| 8 | Jade Haileselassie | Katie Menard |
|   | Annie Kouba | **MOTLEY RICE LLC** |
| 9 | Ebony Bobbitt | 40 Westminster St., 5th Floor |
|   | Jessica L. Carroll | Providence, RI 02903 |
| 10 | **MOTLEY RICE LLC** | Telephone: 401-457-7700 |
|   | 28 Bridgeside Boulevard | jorent@motleyrice.com |
| 11 | Mt. Pleasant, SC 29464 | kmenard@motleyrice.com |
|   | Telephone: 843-216-9000 | |
| 12 | jflowers@motleyrice.com | |
|   | scouch@motleyrice.com | |
| 13 | jhaileselassie@motleyrice.com | |
|   | akouba@motleyrice.com | |
| 14 | ebobbitt@motleyrice.com | |
|   | jcarroll@motleyrice.com | |