Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Facebook Payments, Inc., Siculus, Inc., Facebook Operations, LLC, and Mark Elliot Zuckerberg*

*Additional counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-PHK<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS CORPORATE-OFFICER LIABILITY CLAIMS** |

**TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................. 1

    A.   "Participation in" Requires Allegations of Active Involvement in the Corporation's Broader Alleged Tortious Conduct ................................................. 1

    B.   Plaintiffs Do Not Allege Any Active Involvement by Mr. Zuckerberg in Meta's Alleged Misrepresentations and Omissions that Meets the Standards for Corporate-Officer Liability. ..................................................................................... 4

II.  CONCLUSION ............................................................................................................ 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Tile, L.L.C. v. Berger*,
  224 P.3d 988 (Ariz. Ct. App. 2010) ................................................................................4

*Batchelar v. Interactive Brokers, LLC*,
  422 F. Supp. 3d 502 (D. Conn. 2019) ..............................................................................6

*Capen Wholesale, Inc. v. Probst*,
  509 N.W.2d 120 (Wis. Ct. App. 1993) ........................................................................3, 4

*Chandler v. Phoenix Servs.*,
  419 F. Supp. 3d 972 (N.D. Tex. 2019) .............................................................................2

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .............................................................................6

*Dean v. Beckley*,
  2010 WL 3928650 (D. Md. Oct. 1, 2010) .......................................................................4

*Fields Bros. Gen. Contractors v. Ruecksties*,
  655 S.E. 2d 282 (Ga. Ct. App. 2007) ...............................................................................5

*State ex rel. Fisher v. Am. Courts, Inc.*,
  644 N.E.2d 1112 (Ohio Ct. App. 1994) .......................................................................1, 6

*Frances T. v. Vill. Green Owners Ass'n*,
  723 P.2d 573 (Cal. 1986) .................................................................................................2

*Hildebrand v. New Vista Homes II, LLC*,
  252 P.3d. 1159 (Colo. App. 2010) ...................................................................................5

*Hoang v. Arbess*,
  80 P.3d 863 (Colo. App. 2003) ....................................................................................2, 3

*In re JUUL Labs, Inc., Mktg, Sales Pracs., & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) .........................................................................2, 5

*Loeffler v. McShane*,
  539 A.2d 876 (Pa. Super. Ct. 1988) .................................................................................3

*Mozingo v. Correct Mfg. Corp.*,
  752 F.2d 168 (5th Cir. 1985) ........................................................................................2, 3

*Ramos v. Wal-Mart Stores, Inc.*,
  202 F. Supp. 3d 457 (E.D. Pa. 2016) ...............................................................................3

*Schaefer v. D&J Produce, Inc.*,
403 N.E.2d 1015 (Ohio Ct. App. 1978) ..... 3

*Shipley v. Perlberg*,
780 A.2d 396 (Md. App. 2001) ..... 4, 5

*Spurgeon v. Empire Petroleum Partners, LLC*,
2019 WL 2521722 (Tex. Ct. App. 2019) ..... 2

*Tedrow v. Deskin*,
290 A.2d 799 (Md. Ct. App. 1972) ..... 3

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ..... 4

I.   **ARGUMENT**

The Motion to Dismiss (ECF No. 833) ("Mot.") argues that Plaintiffs' Addendum "make[s] no allegations of affirmative conduct or conscious wrongdoing" by Mr. Zuckerberg that would establish either specific direction or active participation in tortious conduct by Meta, Mot. 2, and that "Plaintiffs here advance no allegations of any deliberate, affirmative conduct by Mr. Zuckerberg to conceal information or to direct others to misrepresent or conceal information," *id*. 7. Crucially, Plaintiffs' Opposition (ECF No. 889) ("Opp.") does not dispute that they lack such allegations. Plaintiffs instead rely on Mr. Zuckerberg's alleged "omissions" and inherent "power" to allege that he "could have, but did not, share critical information," and "failed to make these disclosures." Opp. 3-4.

These allegations, in other words, recycle the claims of omissions by Mr. Zuckerberg that the Court already dismissed in its prior Order (ECF No. 753) ("Order"), on the basis that imposing personal liability for alleged omissions based on "Zuckerberg's public stature" would represent an "expansion of state tort law" "by creating a duty to disclose for any individual recognizable to the public." Order at 11. That same reasoning applies to Plaintiffs' amended claims, which attempt to impose personal liability for the same omissions based on Mr. Zuckerberg's position as Meta's CEO. If personal liability can be imposed on any prominent corporate executive who "could have, but did not, share . . . information with the public," Addendum ¶ 23, or "had the opportunity to tell" information to the public, *id*. ¶ 8, the outcome would be the same "expansion of state tort law . . . for any individual recognizable to the public" that the Court has already rejected as a "novel approach" it "will not countenance." Imposing omissions-based personal liability on CEOs or other senior executives—who inherently have "power" to direct corporate activity and inherently have considerable knowledge of their companies that is not publicly disclosed—would severely erode the "common-law rule against corporate-officer liability for the corporation's acts," *State ex rel. Fisher v. Am. Courts, Inc.*, 644 N.E.2d 1112, 1114 (Ohio Ct. App. 1994). That is why the corporate-officer liability theory requires that the officer take affirmative, deliberate steps to actively participate in or direct a broader tort undertaken by the corporation. The Addendum includes no such allegations.

A.   **"Participation in" Requires Allegations of Active Involvement in the Corporation's Broader Alleged Tortious Conduct.**

"[T]o hold a director or officer individually liable for a company's alleged violation . . . . a plaintiff

1
REPLY IN SUPPORT OF MARK ZUCKERBERG'S MOTION TO DISMISS CORPORATE-OFFICER LIABILITY CLAIMS

1   must plead 'factual allegations of some sort of **conscious wrongdoing** by [an] officer on the corporation's
2   behalf' and that the officer had 'some direct role' in the alleged violation." *Chandler v. Phoenix Servs.*,
3   419 F. Supp. 3d 972, 982 (N.D. Tex. 2019) (emphasis added).  The requirement of "conscious
4   wrongdoing" makes sense to avoid personal liability for steps corporate officers "could have taken" or
5   information they "could have disclosed"—because "[v]irtually any aspect of corporate conduct can be
6   alleged to have been explicitly or implicitly ratified" by a corporate officer. *Frances T. v. Vill. Green
7   Owners Ass'n*, 723 P.2d 573, 582 (Cal. 1986).  Likewise, a corporate officer's overall engagement with
8   the business cannot suffice for corporate-officer liability, because it would mean that "any corporate
9   officer who fails to maintain an almost total ignorance of the products the corporation produces may be
10  personally liable" for a corporation's alleged torts. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174
11  (5th Cir. 1985).

12         Accordingly, the language of the case law, requiring that the corporate officer "specifically
13  directed" or "personally participated" ***in the corporation's tort***, *see* Mot. Ex. A, contemplates some
14  affirmative conduct, active participation or direction, or "conscious wrongdoing"—something far beyond
15  Plaintiffs' allegations that Mr. Zuckerberg "could have" disclosed more or "could have" directed Meta's
16  resources differently.  *See*, *e.g.*, *Spurgeon v. Empire Petroleum Partners, LLC*, 2019 WL 2521722, at *3
17  (Tex. Ct. App. 2019) ("[a] corporate officer may not escape liability where he had ***direct, personal
18  participation*** in the wrongdoing") (emphasis added); *In re JUUL Labs, Inc., Mktg, Sales Pracs., & Prods.
19  Liab. Litig.*, 497 F. Supp. 3d 552, 671 (N.D. Cal. 2020) (plaintiffs must "allege[ ] more than mere
20  knowledge or control" in order to show "personal and direct participation in the deceptive scheme").
21  "Participation" in a corporation's tort inherently contemplates affirmative steps to join in the tort—
22  something beyond mere allegations that the corporate officer "could have" done more or disclosed more.

23         Plaintiffs effectively acknowledge the point.  While they say (Opp. 4) that "participation" has been
24  recognized in "many other forms," the "other forms" of participation they cite—such as "authorization,"
25  "ratification" and "cooperation"—underscore that the "participation" required for corporate-officer
26  liability requires allegations that the corporate officer specifically directed or actively participated in the
27  corporation's tort.  *See* Mot. 4 & Ex. A.  Notably, while Plaintiffs quote *Hoang v. Arbess*, 80 P.3d 863,
28  868 (Colo. App. 2003), for the proposition that "conception or authorization" can establish the requisite

level of "participation," they crop the quote—which says that "personal liability attaches to a defendant who was ***directly involved*** in the [tortious] conduct through conception or authorization." *Id*. (emphasis added).

Similarly, while Plaintiffs suggest that a corporate officer may be liable where he or she is the "guiding spirit" or "central figure" in the corporation's tort (Opp. 5), this line of cases involve allegations that the corporate officer specifically directed or personally participated in the tort. *See, e.g., Mozingo*, 752 F.2d at 174 ("the officer to be held personally liable must have some direct, ***personal participation in the tort***, as where the defendant was the 'guiding spirit' behind the wrongful conduct or the central figure' in the challenged corporate activity") (cleaned up; emphasis added); *Tedrow v. Deskin*, 290 A.2d 799, 802 (Md. Ct. App. 1972) ("[C]orporate officers or agents are personally liable for those torts which . . . they inspire. . . . Of course, ***participation in the tort is essential to liability***.") (emphasis added).

In *Loeffler v. McShane*, 539 A.2d 876, 878 (Pa. Super. Ct. 1988), the court held that "under the participation theory, a corporate officer is liable for 'misfeasance,' i.e., the improper performance of an act, but not 'mere nonfeasance,' i.e., the omission of an act which a person ought to do." While Plaintiffs suggest (Opp. 5) that the distinction between "misfeasance" and "nonfeasance" is disfavored, the cases they cite do not involve corporate-officer liability but rather the entirely different issue that an agent who assumes a duty to act cannot excuse tortious conduct by claiming misfeasance rather than nonfeasance.[1] In contrast, *Loeffler* is addressed to corporate-officer liability, and its distinction between "misfeasance" and "nonfeasance" is simply another formulation of the same test found in other cases—namely, that the corporate officer must engage in affirmative conduct or "conscious wrongdoing" to establish liability for participating in a corporation's broader tort.

Plaintiffs place particular emphasis on *Capen Wholesale, Inc. v. Probst*, 509 N.W.2d 120 (Wis.

---

[1] Plaintiffs (Opp. 5) cite *Schaefer v. D&J Produce, Inc.*, 403 N.E.2d 1015, 1020 (Ohio Ct. App. 1978), to claim there is a "false dichotomy" between misfeasance and nonfeasance. But the issue addressed in *Schaefer* was not corporate-officer liability but rather a question of agency law—"where the agent has *actually undertaken the work*," the "modern tendency" is to "repudiate . . . any distinction as to the liability of the agent . . . based on the fact that the cause of the injury may be an omission to perform some act—a nonfeasance—rather than a positive misfeasance." *Id*. (quotation omitted) (emphasis added). *See also Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 464 n.4 (E.D. Pa. 2016) (quoted at Opp. 5) (where "the agent *participated in the tort*," "personal liability can attach regardless of whether the breach was a result of misfeasance or nonfeasance") (emphasis added).

Ct. App. 1993), which they assert supports the proposition that "doing nothing despite having knowledge of and authority to prevent unlawful practices" is "participation" in a corporation's tort. Opp. 6. But *Capen Wholesale* was decided under a Wisconsin statute which provided "that a diversion of trust funds by a corporate contractor also shall be deemed theft by any officers, directors or agents of the corporation." *Id.* at 127 (quotation omitted). It did not apply the common law standards for corporate-officer liability at issue here. Likewise, Plaintiffs (Opp. 4) quote a negligence standard from *Arizona Tile, L.L.C. v. Berger*, 224 P.3d 988, 992-93 (Ariz. Ct. App. 2010), but that case also involved the diversion of trust funds by a fiduciary and does not apply the general common law rule for corporate-officer liability. Plaintiffs cite no authority that personal liability may attach under the common law of corporate-officer liability for a failure to act or negligent management—and the case law discussed above and in the Motion is squarely to the contrary. *See*, *e.g.*, *Shipley v. Perlberg*, 780 A.2d 396, 401 (Md. App. 2001) (corporate-officer liability requires that the officer "***personally directed*** or ***actively participated*** or ***cooperated in*** the tort committed by the corporation") (emphases added); Mot. Ex. A.

Finally, Plaintiffs argue that Rule 9(b)'s heightened pleading standard does not apply to allegations of corporate-officer liability. Opp. 2-3. This is a question of federal procedural law, and Plaintiffs cite no federal authority for this proposition.[2] Rule 9(b) governs because allegations that a corporate officer "participated in" alleged misrepresentations and omissions sound in fraud. Mot. 3. But even if Rule 9(b) does not apply, Plaintiffs' allegations do not satisfy the Court's directive that they allege facts with "an appropriate degree of precision," Order at 12.

**B.    Plaintiffs Do Not Allege Any Active Involvement by Mr. Zuckerberg in Meta's Alleged Misrepresentations and Omissions that Meets the Standards for Corporate-Officer Liability.**

Plaintiffs allege that Mr. Zuckerberg "could have, but did not, share critical information from reports he received," "failed to make these disclosures despite touting the safety" of Meta's services, and had the "power to direct employees to place warnings on the platforms." Opp. 3-4. These allegations that

---

[2] The only case Plaintiffs cite (Opp. 2), *Dean v. Beckley*, 2010 WL 3928650 (D. Md. Oct. 1, 2010), does not support their argument—the court held that the plaintiffs had pled sufficient facts that the corporate officer "actively participated in a fraudulent inducement" and held that the claim of fraudulent inducement "sounds in fraud" and is "subject to the heightened pleading standards of Rule 9(b)." *Id.* at *3.

Mr. Zuckerberg "could have done more" do not meet the requirement for affirmative conduct or "conscious wrongdoing" that would establish personal direction or active participation in alleged misrepresentations or omissions by Meta. *See*, *e.g.*, *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d. 1159, 1166 (Colo. App. 2010) ("personal liability attaches to a [corporate officer] who was ***directly involved*** in the conduct") (emphasis added); *Fields Bros. Gen. Contractors v. Ruecksties*, 655 S.E. 2d 282, 285 (Ga. Ct. App. 2007) ("an officer of a corporation who ***takes part*** in the commission of a tort by the corporation is personally liable therefor") (emphasis added); *Shipley*, 780 A.2d at 401 (officer must have "***personally directed*** or ***actively participated*** or ***cooperated in*** the tort committed by the corporation") (emphases added).

As explained in Mr. Zuckerberg's opening brief (Mot. 6-8), Plaintiffs' allegations of his personal omissions are insufficient to show Mr. Zuckerberg actively participated in Meta's alleged misrepresentations and omissions. Plaintiffs' reliance (Opp. 7) on *In re JUUL Labs*, 497 F. Supp. 3d at 635, demonstrates that corporate-officer liability requires affirmative conduct in the corporation's broader tort. There, applying New York law on corporate-officer liability, the court found allegations that two corporate officers "provided 'specific direction' on the content of the website," "engineered test results consistent with the deceptive messaging," and "had input and control over specific advertising" sufficient to impose corporate-officer liability. *Id.* at 671.

Plaintiffs' Addendum is striking for its lack of allegations that Mr. Zuckerberg specifically directed or participated in Meta's alleged misrepresentations and omissions. The Addendum alleges that Mr. Zuckerberg "has enjoyed control over Facebook (now Meta)," ¶ 5, that "his personal history is inextricable from the story of Facebook," ¶ 9, that his "enormous power at Meta positioned him to take swift action," ¶ 45, that he "had the opportunity to tell Plaintiffs and the public at large about the risk of harm," ¶ 8, that he "could have, but did not, share . . . information with the public," ¶ 23, that he gave responses that "failed to disclose" internal Meta information, ¶ 34, that he "maintained close control over key design decisions," ¶ 16, that his "unrelenting focus on increasing user engagement is reflected in hallmarks of Meta's products," ¶ 17, that he "deni[ed]" "resource requests," ¶ 20, that he "rejected employee requests to resource initiatives," ¶ 45, that safety initiatives "languished in email limbo or were rejected," ¶ 41, that his "fear of competitors was a constant motivation," ¶ 14, and that he "created a corporate culture

characterized by fear of dissent," ¶ 44.  These allegations simply reflect the role of a CEO of a large corporation—conduct that, without more, cannot support a theory of corporate-officer liability.  *See*, *e.g.*, *State ex rel. Fisher*, 644 N.E.2d at 1114 ("a corporate officer will not be held personally liable for the acts of the corporation by mere virtue of his status as a corporate officer").

While Plaintiffs suggest that Mr. Zuckerberg's leadership of Meta supports a "reasonable inference" that he specifically directed or actively participated in Meta's alleged misrepresentations or omissions (Opp. 9), that "inference" is based on his position as CEO and is the same inference that could be drawn for virtually any CEO of any public company.  This is not enough, as a matter of law, to allege a theory of corporate-officer liability.  *See* Mot. Ex. A.  Plaintiffs' allegations fall far short of *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018), and *Batchelar v. Interactive Brokers, LLC*, 422 F. Supp. 3d 502 (D. Conn. 2019), both of which involve specific factual allegations of corporate officers' direct participation in the corporation's broader alleged tortious conduct.  *In re Chrysler-Dodge-Jeep Ecodiesel* included specific allegations showing that Fiat's CEO "champion[ed]" the scheme to cheat on U.S. emissions standards and "was 'at the helm' of the enterprise to illegally circumvent stringent U.S. emission standards."  295 F. Supp. 3d at 975-76, 978, 983.  The CEO's participation far exceeded simply failing to disclose that Fiat's vehicles were "not eco-friendly," as suggested by Plaintiffs.  Opp. 9-10.  Likewise, in *Batchelar*, which involved claims for negligent design of software, plaintiff alleged that the corporate officer "wrote or [wa]s responsible for the functioning of the . . . algorithm at issue."  422 F. Supp. 3d at 515, 517.

These cases, far from supporting Plaintiffs' position, demonstrate why their allegations fail to meet the pleading requirements for a corporate-officer liability theory.  Plaintiffs make no allegation of any deliberate, affirmative conduct by Mr. Zuckerberg to specifically direct or personally participate in the alleged misrepresentations by Meta.  Allegations that Mr. Zuckerberg "could have" disclosed more information or had the "power" as CEO to direct Meta's activities fall far short of the pleading standards for alleging active participation in or specific direction of an alleged tort by Meta.

## II.     CONCLUSION

For the reasons addressed here and in the Motion to Dismiss, the Court should dismiss Plaintiffs' claims against Mark Zuckerberg based on a theory of corporate-officer liability.

| | | |
|---|---|---|
| 1 | Dated: May 30, 2024 | Respectfully submitted, |
| 2 | | **COVINGTON & BURLING LLP** |

 */s/ Timothy C. Hester*
Timothy C. Hester, *pro hac vice*
  thester@cov.com
Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Facebook Payments, Inc., Siculus, Inc., Facebook Operations, LLC, and Mark Elliot Zuckerberg*