UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br><br>**META'S PORTION OF JOINT LETTER BRIEF REGARDING SEARCH TERMS APPLICABLE TO META'S DOCUMENT COLLECTION** |
| This Filing Relates to:<br><br>*All Actions* | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") respectfully submit Meta's portion of the joint letter brief due at 4 p.m. PT today regarding the Parties' dispute over the search terms to be applied to Meta's collections.[1]  After Plaintiffs (the Personal Injury, School District, and State Plaintiffs) and Meta exchanged their initial statements for the letter brief at the agreed-upon time of 1:00 p.m. PT on June 6, Plaintiffs informed Meta (at 8:43 a.m. PT on June 7) that they would not join the filing, citing the need for more time to respond. In response, Meta pointed Plaintiffs to the court-ordered deadline, informed Plaintiffs that Meta planned to file its portion of the brief by that deadline, and explained that Plaintiffs were welcome to argue in their portion of the brief that they needed more time.  However, Plaintiffs declined to join the filing.

Pursuant to prior agreement of the Parties, the exhibits referenced in the brief are being sent by email to Chambers.  **Exhibit A** is a copy of Meta's original proposed search strings. **Exhibit B** is a copy of Plaintiffs' current proposed search terms.  **Exhibit C** is a copy of a hit report provided by Meta for Plaintiffs' original proposed search terms.  **Exhibit D** is a copy of

---

[1] *See* Tr. of 5/23/24 Discovery Hr'g at 117:4-118:19 ("MS. HAZAM: … The Parties have conferred and intend to complete our [search term] negotiations by May 31st, … and then to submit the disputes by five business days thereafter, which is June 7th.  So we wanted to request the Court allow us to proceed in that fashion. … THE COURT: Given agreement of the Parties, ***it is so ordered***." (emphasis added)); *see also* ECF 687.2 (Parties' stipulation to submit all joint filings by 4:00 p.m. PT on the day the filing is due); ECF 728 at 10 (so-ordered).

Meta's current proposed search terms.  **Exhibit E** is the Declaration of Philip Algieri in Support of Meta's Position Regarding Search Terms Discovery Dispute ("Algieri Decl.").

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, Meta attests that Meta repeatedly met and conferred by video conference, email, and correspondence with Plaintiffs before filing Meta's portion of this brief, including as recently as June 4, 2024 at 4:00 p.m. PT. That final conferral was attended by lead trial counsel for Parties involved in the dispute.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel for Meta has concluded that no agreement or negotiated resolution can be reached.

Dated:  June 7, 2024

Respectfully submitted,

**COVINGTON & BURLING LLP**

*Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
Michael X. Imbroscio, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email: kpatchen@cov.com
Email: ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email: ghalperin@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

**<u>Plaintiffs' Position:</u>** [Not included]

**Meta's Position:**  Just over 3 months remain to substantial completion, yet Plaintiffs are insisting Meta run 366 *more* search terms—*in addition to* the 83 broad terms Meta has already agreed to run, which include 24 *standalone* "**Youth Terms**" like **teen\***, **youth\***, and **kid\***. Plaintiffs' terms would add *millions* of documents to the review pool, the vast majority of which would be *non-responsive (NR)*.  Their proposal is simply not reasonable or proportional, particularly given the accelerated discovery timeline Plaintiffs demanded and the Court ordered. *See Alivecor, Inc. v. Apple, Inc.*, 2023 WL 2224431, at \*2 (N.D. Cal. Feb. 23, 2023) ("Perfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents.").  Meta's terms, by contrast, have been tested and validated to work.  Statistically significant sampling completed after the Parties concluded negotiations confirmed that Meta's original proposal would result in fewer than *1% of responsive documents* being missed—and that was *before* Meta offered to significantly expand its proposal.  Meta's testing has also shown that *only approximately 3.8%* of hits on Plaintiffs' unique terms are likely to be responsive, yet would at least *nearly triple* the hits to an estimated *16.4M documents*.

***The Court Should Adopt Meta's Tested and Validated Proposal.***  "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at \*2 (N.D. Cal. Sept. 29, 2022) (quoting *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, Principle 6, 118 (2018)) (applying principle to search-term dispute).  In early April, Meta sent Plaintiffs a proposal consisting of 3,504 search strings, crafted to encapsulate the expansive issues raised in Plaintiffs' 3 master complaints and then-315 RFPs.  To that end, most of Meta's search strings reflected the combination of broad individual **Youth Terms** (*see above*; *see also, e.g.*, "**under 13**", **U13, pre-teen\***) **"AND"** individual:

- **Harm Terms** (e.g., **suicid\***, **depress\***, **anorexi\***, **addic\***, (**compuls\*** OR **problem\*** OR **excess\***) w/3 (**use\*** OR **using** OR **usage**), and **rabbit** w/3 **hol\***);
- **Wellbeing Terms** (e.g., **wellness**, **well-being**, and **mental w/3 health**); *or*
- **Named Feature Terms**.

The rest consisted of broad **Other Terms** capturing topics like marketing and finance.  It is hard to imagine a "broader," more "simple" approach to establishing "the outer bounds of relevancy," as Plaintiffs urge.  And Meta's statistically valid, random testing confirmed that *fewer than 1% of documents* not hitting on Meta's terms were responsive.[2]

***Plaintiffs' Terms Will Return Only 3.8%-Responsive Documents.***  "Search terms must be reasonably tailored to identify responsive communications;" "[i]ndiscriminate terms . . . are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction." *Est. of Mann v. Cnty. of Stanislaus*, 2022 WL 4029571, at \*2 (E.D. Cal. Sept.

---

[2] (Based on Email/Chat files collected at the time of testing from 80 custodians for 1/1/15-2/14/23.)  Thus, Plaintiffs' reliance on authorities involving recall of unvalidated search terms and TAR is misplaced.  In *Mediatek* and *Vasudevan Software*, the defendants supplied *no* testing or validation to support their burden/relevance arguments.  That parties in other cases (like *3M*) may have used TAR without search terms is also beside the point, as the ESI Order here expressly permits use of both search terms and TAR (ECF 690 ¶ 8).  *See* The Sedona Conference, *TAR Case Law Primer*, 2nd Ed., 24 SEDONA CONF. J. 1, 63 (2023) (collecting decisions declining to change, or ignore, parties' ESI protocols as to TAR processes).

2, 2022).  Because Meta has proposed reasonable terms, Plaintiffs are obligated at least to "be specific and explain why the additional . . . search terms will plausibly yield responsive ESI." *Emerson v. Iron Mt. Info. Mgmt. Servs.*, 2021 U.S. Dist. LEXIS 257055, at *3 (N.D. Cal. Sep. 2, 2021).  That Plaintiffs' terms may return *some* responsive documents is not enough.  *Alivecor*, 2023 WL 2224431, at *2.  Plaintiffs cannot meet this showing.  After Meta disclosed its original terms, Plaintiffs responded with a 319-term proposal, generally consisting of expansive, standalone terms such as **violen\***, **fight\***, and **harm**.  On May 1, Meta sent Plaintiffs a list identifying 63 terms to which it objected as overbroad and irrelevant (*e.g.*, **tax money**, **confiscate**, **webversion**, and **senior**).  Meta also explained during May 1 and 10 conferrals, using obvious examples, that proposed terms like **minor\***, **communit\***, and **senior\*** would bring back high volumes of false hits.  On May 9, Meta sent Plaintiffs "a hit report for Plaintiffs' proposed search terms over the Relevant Time Period (1/1/2015 - 2/14/2023) for Email/ Workplace Chat files for 21 custodians for whom Meta has completed processing."  Meta also sent Plaintiffs an "apples-to-apples" comparison: overall hit estimates for both Meta's terms (~5M) and Plaintiffs' terms (~15M).  Meta offered to consider adding a handful of targeted terms that Plaintiffs considered critically important; Plaintiffs responded by offering to drop 2 terms they have now re-added.  Meta then reviewed a statistically significant sample of documents hitting on Plaintiffs' terms, which showed that only approximately 6% percent were responsive.[3] Nevertheless, Meta offered to run *as standalone terms* all of Meta's *and Plaintiffs'* 24 **Youth Terms**, plus 25 **School Terms** and 34 more **Other Terms** from Plaintiffs—and to run *all 83 resulting terms* over *4+ additional years* of data for the 127 agreed custodians.  That caused the responsiveness rate of Plaintiffs' remaining terms to drop to *only approximately 3.8%*.

***Plaintiffs' Terms Are Disproportional.***  Meta estimates that its terms will *already* return *6.7M documents*, while Plaintiffs' unique terms—including 119 new terms Plaintiffs proposed *the week before the May 31 deadline <u>Plaintiffs requested</u> to conclude negotiations* (ECF 834 at 3)—would return *at least 9.7M more documents*.[4]  That would bring the total review pool to an estimated *16.4M documents*.  Nearly tripling the review pool to add documents, 96.2% of which are expected to be NR, is simply not proportional, particularly at this late stage of the case.

The fact that Meta is using TAR 2.0 to cull potentially NR documents does not change this analysis.  *First*, significant machine time is required just to process and load millions of additional documents from Meta's systems for 127 custodians (which in turn take time to extract); cull the documents using Plaintiffs' terms; and promote the results to a review database.  *See* Ex. E (Algieri Decl.) ¶¶ 11-12; *accord* Bolch Judicial Institute, Duke Law, *<u>Technology Assisted Review (TAR) Guidelines</u>*, (Jan. 2019) ("TAR Guidelines") at 39 (describing delays in

---

[3] (Based on Email/Chat files collected at the time of testing from 58 custodians for 1/1/15-2/14/23.)  The ESI Order does not require Meta to provide responsiveness sampling (or hit reports on Meta's terms), *see* ECF 690 at 4-5, and Meta never "refused" that.  Meta reasonably determined that a number of Plaintiffs' terms needed to be dropped before any such sampling could be worthwhile, and did not complete its sampling until after negotiations were complete.

[4] This 9.7M figure is likely underinclusive, as there was not time for Meta to run all of Plaintiffs' newly-added terms across full custodial files (as opposed to custodial files already collected).  For that same reason, Plaintiffs' request for hit reports on their last-minute new terms should be denied.  Plaintiffs could have included those terms in the proposal they made over 7 weeks ago.

TAR reviews). It is simply not possible—certainly not in the ***2 weeks*** Meta has to produce custodial files for 36 anticipated deponents—to accomplish those steps, let alone the follow-on review. ***Third***, TAR 2.0 combines machine learning with ***ongoing human review*** of both responsive ***and NR documents***. While TAR 2.0 aims to decrease the number of NR documents reviewed, it "does not eliminate the need for any document review." TAR Guidelines at 40. And broad or imprecise search terms (like Plaintiffs') are more likely to return comparatively ***more documents requiring manual review***. Ex. E (Algieri Decl.) ¶¶ 8, 10; *see also* TAR Guidelines at 38 (outlining consequences of introducing new documents mid-stream). ***Fourth***, this extensive additional review would be for essentially no reason, as we ***already know*** Plaintiffs' terms yield exceedingly low responsiveness.

***Plaintiffs' Dilatory Conduct Provides Further Grounds to Deny Their Proposed Terms.*** Plaintiffs' original 319-term counterproposal outright rejected all but 3 of Meta's original 3,504 proposed search strings. Then, the week before the Parties' May 31 deadline to complete negotiations, Plaintiffs sent Meta ***119 new proposed terms***. Plaintiffs purported to justify these late additions by citing their ***Thirteenth Set of RFPs*** served on ***May 17***, "and additions from the AGs that were inadvertently excluded from our [April] list." *See* Tr. of 1/25/24 DMC 108:13-18 (cautioning Plaintiffs against "dilly-dallying on getting your document requests" out). Then, the night of May 29, Plaintiffs sent yet another proposal (described in their briefing as "additional, revised search terms"). Given these last-minute proposals, there was not time before the May 31 deadline for Meta even to run hit reports on Plaintiffs' new terms. *See generally* Ex. E (Algieri Decl.) ¶¶ 11-12. Nevertheless, in a final effort to avoid this dispute, Meta offered to identify a handful of Plaintiffs' new terms that it would agree to add. Plaintiffs responded, "don't even bother," and withdrew their May 29 proposal. Remarkably, Plaintiffs have continued proposing new terms despite passage of the May 31 deadline, requesting ***24 brand-new search strings*** on June 4. The Court should adopt Meta's search terms, and deny Plaintiffs' requests.