UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:  4:22-md-03047-YGR-PHK |
| | **JOINT LETTER BRIEF ON META'S REQUEST FOR LIMITS ON FURTHER WRITTEN REQUESTS FOR PRODUCTION** |
| This Filing Relates to: | |
| *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the State Attorneys General, Personal Injury/School District/Government Entity ("PI/SD") Plaintiffs, and Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") respectfully submit this letter brief regarding Meta's request to limit further written requests for production from the State Attorneys General and Personal Injury/School District/Government Entity Plaintiffs.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief.  The final conferral was attended by lead trial counsel for the parties involved in the dispute on June 5, 2024.  Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated:  June 12, 2024                              Respectfully submitted,


**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Bianca E. Miyata*
Bianca E. Miyata (CO Reg. No. 42012),
*pro hac vice*

Senior Assistant Attorney General
Lauren M. Dickey (CO Reg. No. 45773), *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet (CO Reg. No. 27474), *pro hac vice*
Senior Assistant Solicitor General
Elizabeth Orem (CO Reg. No. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General

2

Commonwealth of Kentucky
 */s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
pro hac vice
Philip Heleringer (KY Bar No. 96748),
pro hac vice
Zachary Richards (KY Bar No. 99209),
*pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
*Matthew Cocanougher (KY Bar No. 94292),*
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300 Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of
Kentucky*

**MATTHEW J. PLATKIN**
Attorney General State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand
(NJ Bar No. 016752008), *pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017), *pro
hac vice*
Assistant Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021), *pro
hac vice*
Mandy K. Wang (NJ Bar No. 373452021), *pro
hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101 Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov

Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division of
Consumer Affairs*

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN**

4

**PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor

5

New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES

JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

Attorneys for Plaintiffs


**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

E. Kate Patchen (State Bar No. 349142)
Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email:  kpatchen@cov.com
Email:  ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

**Meta's Position.**  Just over 3 months remain to substantial-completion, and depositions begin next month.  Based on the discovery served to date, Plaintiffs will receive extensive productions of documents and electronic data from: at least 122 custodians using broad search terms; hundreds of targeted and "go-get" collections; a lengthy pre-suit investigation by the AGs;[1] DFSs including account captures; and confidential documents released by a former Meta employee.  These productions will involve massive efforts by Meta.  There are proportionality limits to discovery in any litigation; here these limits are greatly magnified by the serious feasibility challenges in completing an already huge production in an extremely short period.

Despite this large volume of documents and data, and despite the compressed schedule, Plaintiffs have continued serving dozens of new RFPs on Meta.  As recently as June 7, the AGs served another 108 RFPs on Meta, making Meta subject to ***over 500 RFPs*** served to date, not including the 320 total RFPs served by 8 of the 12 PI bellwether plaintiffs.  For the reasons set forth below, Meta respectfully requests that the Court limit Plaintiffs to no more than 5 additional targeted RFPs beyond the RFPs served as of May 31, 2024, after which Plaintiffs must make a showing of good cause before additional RFPs may be served.[2]  *See Jackson v. Bright*, 2014 WL 1101858, at *11 (N.D. Cal Mar. 18, 2014) (noting district court's broad discretionary power to deny or limit the manner, method or means of discovery).  Meta is open to other reasonable limitations on additional discovery requests, but Plaintiffs have proposed none.

An RFP Limit Is Consistent With Plaintiffs' Commitments to the Court.  At the 1/25 DMC, Defendants asked the Court to set a deadline for Plaintiffs to serve all written discovery.  Tr. of 1/25/24 DMC at 105:13-24,107:2-23.  At that time, the PI/SD Plaintiffs had already served 9 sets of RFPs on Meta, consisting of 175 RFPs.  While the Court declined to "set a hard deadline," it warned Plaintiffs against "delay[ing] serving, say, ***a second round of document requests***."  *Id.* at 106:16-25 (emphasis added); *see also id.* at 108:13-18 (warning Plaintiffs against "dilly-dallying on getting your document requests … out").  The Court also sought reassurances from Plaintiffs that, if their "efficient" discovery schedule were ordered, they would "take the efforts to make sure [they] meet the deadlines" they were proposing—including a 2024 fact discovery cut-off and 2025 first trial date.  *Id.* at 103:12-15, 105:3-5, 106:22-25; *see id.* at 98:19-99:17 (Plaintiffs' counsel answering "Absolutely" and "Yes" to Court's question whether Plaintiffs "think they can get this case ready to go by spring of 2025"); Tr. of 1/26/24 CMC at 64:12-65:1 (same representations to Judge Gonzalez Rogers); Tr. of 11/7/23 JCCP CMC 41:25-42:6 (JCCP

---

[1] Meta re-produced to Plaintiffs the documents it previously produced to the AGs in response to the CID Requests the Court determined to be relevant (ECF 125 at 2).  And Meta has offered to re-produce the remaining documents previously produced to the AGs that Plaintiffs requested be re-produced here, with the exception of some concededly non-responsive material.
[2] Meta will respond to the PI/SD Plaintiffs' 13th Set of RFPs served May 17, but should not have to respond to the State AGs' 2nd Set of RFPs served on June 7—a position Meta has, in fact, met and conferred with Plaintiffs about.  Notably, the AGs' own RFPs explicitly recognize that they repeat, or substantially overlap with, the PI/SD Plaintiffs' RFPs.

Plaintiffs assuring Judge Kuhl that for Meta, "there is lots of information out there, and *we're going to use that to make sure our discovery is tailored and targeted*." (emphasis added).[3]

Rather than serving their remaining RFPs shortly after the January DMC, Plaintiffs have continued to serve multiple additional sets of RFPs, while refusing to agree to any limit on the volume they will serve.  Meta objected when the PI/SD Plaintiffs served their 13th Set of 56 RFPs on May 17 (followed by the AGs serving yet another set of 108 RFPs on June 7).  With these additional RFPs, Plaintiffs have collectively served *over 500 RFPs on Meta*.  "The federal rules require parties 'to work cooperatively in controlling the expense and time demands of litigation' by, among other things, 'siz[ing] and shap[ing] their discovery requests to the requisites of a case."  *Roberts v. Clark Cnty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016).  Here, Plaintiffs have exceeded the outer bounds of what any Party or this Court could have considered a reasonable number of RFPs, even in a case with a much longer timeline than what Plaintiffs demanded here.  *Cf. Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 WL 5720731, at *3 (N.D. Cal. Nov. 5, 2019) (limiting plaintiffs to 80 RFPs, finding the majority of plaintiffs' nearly 600 RFPs represented "an indiscriminate and haphazard approach to the discovery process").[4]  Accordingly, Plaintiffs should be limited to no more than 5 targeted RFPs going forward.

This limit—or some other reasonable limit—is further justified by the time that has passed since Plaintiffs committed in January to "Absolutely" move quickly in progressing these cases so they could obtain their preferred early trial date.  Despite that commitment, the PI/SD Plaintiffs waited several months before serving 191 additional RFPs on Meta between March and May.  The AGs waited until March 22 to serve their *First* Set of RFPs, and did not serve their Second Set of RFPs until *June 7*—*after* the deadline for the Parties to complete search term negotiations.  The Court should hold Plaintiffs to their promise that they would take efforts to meet their proposed fact discovery cut-off by imposing a limit on further RFPs that may be served, to ensure Meta can produce responsive materials by the substantial completion deadline.

<u>The Documents Meta Has Already Agreed to Produce Are More Than Sufficient to Meet Plaintiffs' Discovery Needs.</u>  Meta's original custodian list, search terms, and Relevant Time Period were carefully crafted to ensure documents responsive to Plaintiffs' expansive allegations and hundreds of RFPs would be collected and made available to Plaintiffs on the accelerated case schedule they demanded.  Notwithstanding the already substantial review volume generated by Meta's proposals, Meta has offered to more than double the number of custodians (from 48 to 127), while also significantly expanding the Relevant Time Period and applicable search terms, resulting in a review pool (excluding non-custodial collections) of several million documents.

These significant collection efforts will provide Plaintiffs with an incredibly broad range of material without far exceeding the bounds of proportionality (or feasibility), and are consistent

---

[3] At the 5/23 hearing, the Court stated that Plaintiffs had "plenty of time" to serve "another RFP that targets exactly what you want as opposed to a general one," or specific "follow-up discovery if you see something" particular that is missing.  5/23/24 Hr'g Tr. at 74:3-8; 95:15-21.

[4] Notably, in both the *Reddy* and *Doe v. Trump* cases cited by Plaintiffs in arguing that parties may serve RFPs up to 30 days before the fact discovery cut-off, the Court extended that cut-off by anywhere from 4-6 weeks to allow the producing party sufficient time to respond.

with the standard that "[p]erfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents." *Alivecor, Inc. v. Apple, Inc.,* 2023 WL 2224431, at *2 (N.D. Cal Feb. 23, 2023).

<u>More Than a Few Additional Targeted RFPs Would Jeopardize Meta's Ability to Meet the Accelerated Deadlines.</u>  In addition to being disproportional, allowing continued RFPs would jeopardize Meta's ability to comply with the 60-day custodial file production deadlines it faces for 36 anticipated deponents, and to substantially complete productions by September 20.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery otherwise allowed… [when] the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").  The AGs observe that 6 months remain to the December 20 fact discovery cut-off, but the last 3 months of that period are allocated for depositions, and Plaintiffs have refused to agree not to re-open depositions based on documents received after depositions occur.  *See* ECF 606 at 3:15-17 (purpose of substantial-completion deadline is to "give the Parties sufficient time to schedule and take fact witness depositions by the Fact Discovery Cutoff").

For all of these reasons, Meta respectfully requests that the Court enter an order limiting Plaintiffs to no more than 5 additional targeted RFPs (or some other reasonable limit), after which Plaintiffs must make a showing of good cause before additional RFPs may be served.  At a minimum, the Court should order the AGs to make the same commitment as the PI/SD Plaintiffs:  limiting future RFPs to those necessary to obtain materials concerning new developments, facts, or issues that may come to light in discovery or otherwise.

**State AGs' and PI/SD Plaintiffs' Position:** The deadlines for substantial completion of document production and the close of fact discovery are September 20 and December 20, 2024, respectively. Yet Meta seeks to artificially and prematurely limit Plaintiffs' ability to issue requests for production, which is inconsistent with the discovery schedule, this Court's guidance, and the Federal Rules of Civil Procedure. Meta claims additional requests will be unduly burdensome, but does not substantiate its claim. If Meta has specific, well-founded objections to any additional requests Plaintiffs may propound, it can and should raise them in that context.

At the January 25, 2024 Discovery Management Conference, Meta asked the Court to set a deadline requiring Plaintiffs to serve all written discovery within eight weeks of the Court's issuance of an order adopting a discovery plan and schedule. Tr. 1/25/2024 at 105. The Court declined to set a hard deadline, observing that discovery is necessarily an ongoing process and that document productions often lead to requests for more documents. *Id.* at 105-06. As do depositions, which have yet to commence. While discovery must be propounded sufficiently in advance of the discovery deadline to allow for objections, conferral, and responses, Meta's demand to truncate discovery six months in advance of the actual cut-off date far exceeds that principle and is inconsistent with the Federal Rules of Civil Procedure, including FRCP 34. *See Reddy v. Precyse Solns. LLC*, 2015 WL 2081429 at *7 (E.D. Cal., May 4, 2015) (requests propounded 3 weeks prior to discovery cutoff were "sufficiently in advance of the deadline"); *Doe v. Trump*, 329 F.R.D. 262, 272 (W.D. WA. 2018) ("to be timely, courts typically require a party to serve interrogatories or requests for production at least 30 days prior to the discovery cutoff. . . .").

Here, Meta's first significant production of 109,454 documents was made to all Plaintiffs only on May 21, 2024. It would be impractical and unfair to cut off additional requests—but for the five Meta proposes to allow[5]—a mere three weeks after that production and before a single substantive deposition has been taken. Meta's proposal also is inconsistent with the Court's recent observation that Plaintiffs have "plenty of time to serve another RFP" and "plenty of time to do follow-up discovery." (Tr. 5/23/24. pp. 74, 96).

Plaintiffs have diligently sought to meet the discovery timeline. The PI/SD Plaintiffs served 175 RFPs in December 2023, 60 of which largely consisted of "go get 'em" requests for specifically identified documents, with the rest broken down into specific topical areas. Since January, the PI/SD Plaintiffs have served an additional 192 requests, more than 150 of which again were "go get 'em" requests.[6] For their part, the State AGs have issued just two sets of RFPs totaling 186 requests[7] since entering this case in October 2023, over 7 months after the PI/SD plaintiffs' master complaint was filed. Considering the broad array of issues in this MDL (e.g., design defects, failure to warn, multiple features, claims for various personal injuries, claims by school districts, consumer protection claims by AGs) *and* considering that so many of the Plaintiffs' RFPs are "go get 'em" or otherwise very targeted requests,[8] the quantity of requests is not disproportionate to the needs of the litigation. And Meta has not offered any evidence of undue burden. To the contrary, the parties have largely resolved any concerns through conferring.

Meta also argues that all Plaintiffs have had access to investigative documents which gives them a sufficient "headstart" to justify curbing affirmative discovery. Meta is wrong. *First*, the documents Meta produced to the State AGs are far from a complete response to the requests propounded during the State AGs' investigation. *Second*, as of today, Meta has produced in this MDL less than half of the investigative documents that the State AGs received.[9] Yet Meta insists

---

[5] This proposal is not supported by law in complex cases like this. In Meta's cited case, the court explicitly noted that it was not a complex action warranting extensive discovery. *Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 WL 5720731, at *3 (N.D. Cal. Nov. 5, 2019).

[6] *E.g.*, REQUEST NO. 311: "A copy of the Facebook post authored by Mark Zuckerberg on September 6, 2006, on the Facebook Platform, titled "Calm Down. Breath. We hear you." in which Zuckerberg wrote: "Nothing you do is being broadcast; rather, it is being shared with people who care about what you do—your friends," and all Communications, drafts of and comments related to that post."

[7] Meta and the State AGs have not yet met and conferred on Meta's request to withdraw the AGs' June 7, 2024 Second Set of RFPs, or about the substance of those RFPs, which the AGs tailored to avoid duplicating prior requests. Meta has not articulated any specific objections to the subject matter of those RFPs, nor any specific burden in responding to any of the requests. The appropriate manner to resolve any disputes about the Second Set of RFPs is the dispute resolution process set forth in Section H. of this Court's Standing Order for Discovery in Civil Cases.

[8] For example, rather than serving one RFP seeking "All Documents concerning Meta's Recommendation System," PI/SD RFP Set 13 breaks down the issue into narrower RFPs.

[9] It was not until this morning that Meta finally consented to allowing some of the balance of the investigative response documents to be produced and used in this litigation.

all Plaintiffs should fulsomely coordinate on all aspects of written discovery. Meta also has taken the position that only documents that have been produced in this litigation may be used in depositions or admitted at trial. Meta cannot use the investigative documents as a basis for limiting discovery when its investigative responses were incomplete, it has delayed sharing a majority of those documents with the PI/SD Plaintiffs, and it threatens to block use of unshared documents in this litigation.

As laid out in the parties' filings in ECF 929-30, Meta also suggests that the search terms the parties are negotiating should apply not only to requests issued before agreement, but also prospectively to any and all requests issued in the future. But Meta cannot fulfill its discovery duty in this MDL brought by hundreds of PI/SD Plaintiffs and 35 State AGs by taking a single collection of documents from 127 custodians, using a single set of 83 largely self-defined search terms. Indeed, as of today, the parties are still conferring about search terms and Plaintiffs have no way of knowing whether such searches will be sufficient for all purposes throughout this case. Considering the breadth of the claims, which challenge nearly every facet of Meta's business model, Meta's attempt to unilaterally restrict discovery is neither reasonable nor proportionate in light of FRCP 26(b)'s broad scope of permissible discovery.

**PI/SD Plaintiffs' Position:** Like the State AGs, the PI/SD Plaintiffs object to Meta's effort to artificially restrict Plaintiffs' right to serve additional Requests for Production ("RFP").  The PI/SD Plaintiffs would be well within their rights in this case to serve additional RFPs on Meta. However, the PI/SD Plaintiffs are willing to compromise and limit their right to serve additional RFPs on Meta by substance—not arbitrary numbers. *First*, consistent with the Court's direction at the May 22, 2024 Discovery Management conference, the PI/SD Plaintiffs reserve the right to serve additional RFPs on Meta for materials that fall outside the Relevant Time Period ("RTP"). *E.g.*, Tr. 731-748. *Second*, Plaintiffs also reserve the right to serve follow up RFPs on Meta to obtain materials concerning new developments, facts, or issues that may come to light in discovery or otherwise (e.g., through press releases or Congressional testimony). Again, this is a fairly standard approach where, as here, the Plaintiffs don't know what they don't know. That is all the more true for things that literally have not yet happened. For example, Meta has repeatedly launched new or modified versions of relevant safety and other features throughout this litigation—and as recently as mid-May.[10]

**Conclusion:** Given the early stage of document production, delays in production, and significant unresolved issues to date, it would be impractical and contrary to the fact-finding purpose of discovery to cut off additional requests. Instead, should Meta have any genuine objections to or concerns about any actual future requests for production, those objections can and should be resolved through the usual meet and confer process, which may eliminate the need for this Court's involvement. But the mere possibility that the parties may have such disputes is not a reason to arbitrarily impose any numerical limit on how many additional RFPs Plaintiffs may serve. Plaintiffs ask the Court to deny Meta's request.

---

[10] *See*, *e.g.*, "Giving Teens and Parents More Ways to Manage Their Time on Our Apps." https://about.fb.com/news/2023/06/parental-supervision-and-teen-time-management-on-metas-apps/