*[Parties and Counsel Listed on Signature Pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To: | **JOINT STATUS REPORT ON DISCOVERY FOR JUNE 20, 2024 DISCOVERY MANAGEMENT CONFERENCE** |
| ALL ACTIONS | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Discovery Management Order No. 2 (ECF 606), the Personal Injury ("PI") and School District and Local Government Entity ("SD") Plaintiffs, State Attorneys General ("State AGs"), and Defendants submit this agenda and joint statement in advance of the June 20, 2024, Discovery Management Conference ("DMC").

## I.     Status of Discovery and Parties' Progress in Meeting Discovery Deadlines

### A.     Plaintiffs' Requests for Production of Documents (RFPs) Served on Defendants

#### 1.     RFPs Served by PI/SD Plaintiffs and State AGs

Plaintiffs have served a total of 834 RFPs on Meta:

- The PI/SD Plaintiffs have served 367 RFPs on **Meta**.
- The State AGs have served 147 RFPs on Meta.
- Eight of the twelve bellwether PI Plaintiffs have each served 40 RFPs on Meta, for a total of 320 RFPs.

The PI/SD Plaintiffs have served 323 RFPs on the **TikTok Defendants**.  The bellwether PI Plaintiffs have each served 40 RFPs on the TikTok Defendants, for a total of 280 RFPs.

The PI/SD Plaintiffs have served 174 RFPs on **Snap**.  Seven of the 12 bellwether PI Plaintiffs have each served 40 RFPs on Snap for a total of 280 RFPs.

The PI/SD Plaintiffs have served 148 RFPs on **YouTube**.  The Bellwether PI Plaintiff Smith served 40 RFPs on YouTube.

#### 2.     Defendants Responses and Objections (R&Os)

**Meta** has served R&Os to Sets 1-12 (310 RFPs) of the PI/SD Plaintiffs' RFPs, and R&Os to Set 1 (39 RFPs) of the State AGs' RFPs.  Meta's R&Os to the PI/SD Plaintiffs' Set 13 (57 RFPs) are due on June 28, 2024.  Meta's R&Os to the bellwether PI Plaintiffs' RFPs Set 1 (40 RFPs each) are due on June 10, June 14 and June 20, 2024.  Meta's R&Os to Set 2 of the State AGs' RFPs are due on July 8, 2024, but Meta has objected to responding to any further written RFPs (beyond those served by Plaintiffs before May 31, 2024), with the exception of 5 additional targeted RFPs.  *See* ECF 937 (letter-brief regarding Meta's request for limits on additional RFPs).

The **TikTok** Defendants have served R&Os to all of the PI/SD Plaintiffs' RFPs with the exception of Set 15, which is due July 8, 2024. The TikTok Defendants' R&Os to the bellwether PI Plaintiffs' RFPs Set 1 (40 RFPs each) were served on June 10, June 14, and are further due on June 20, 2024.

**Snap** has served R&Os to all of the PI/SD Plaintiffs' RFPs, including the bellwether PI Plaintiffs' RFPs, with the exception of Set 10, which is due July 1, 2024.

**YouTube** has served R&Os to all of the PI/SD Plaintiffs' and Bellwether Plaintiff Smith's RFPs.

### 3.    Status of Document Productions

All Defendants have been producing documents in response to Plaintiffs' RFPs and will continue to make rolling productions.

In addition to the 48,935 documents it produced last year, **Meta** has already produced 112,645 documents in response to the PI/SD Plaintiffs' and State AGs' RFPs and/or certain topics in the PI/SD Plaintiffs' 30(b)(6) deposition notice (in proposed lieu of testimony), for a total of 161,580 documents. Meta has also produced certain structured data to the PI Plaintiffs.

In addition to the roughly 17,000 documents it produced last year, the **TikTok** Defendants have produced 6,031 documents in response to the PI/SD Plaintiffs' RFPs.

In addition to the 851 documents it produced in 2022 and 2023, **Snap** has produced 44 documents in response to a Rule 30(b)(6) deposition notice and 1,341 documents in response to the PI/SD Plaintiffs' RFPs.

**YouTube** has produced 31,552 documents in response to the PI/SD Plaintiffs' RFPs.

### 4.    Status of Conferrals on Custodians and Search Terms

On April 25, the Court set a deadline of May 1 for the Parties to finalize their respective discussions regarding document custodians, with the exception of Snap, for which the Court set a May 8 deadline. *See* Discovery Management Order No. 5 ("DMO 5") at 5-6. Defendant YouTube and Plaintiffs submitted a letter-brief regarding custodian disputes on May 15, 2024. *See infra* Section II. Otherwise, Defendants and Plaintiffs have agreed on custodians. ECF 834 at 3.

At the Parties' request, the Court set a deadline of May 31 for the Parties to finalize their respective discussions regarding search terms, and a deadline of June 7 for the Parties to submit letter-briefing regarding any disputes.  Snap and Plaintiffs, and YouTube and Plaintiffs, subsequently sought and obtained an extension to June 7 to complete negotiations, and to June 14 to submit any letter-briefing.  After Meta and Plaintiffs made filings regarding their search term disputes on June 7 (ECF 929, 930), the Court ordered them to meet and confer in person by June 13, which they did on June 12, and, pursuant to the Court's order (ECF 936), they filed a joint status report today.  *See* ECF 939. TikTok and Plaintiffs have reached agreement on search terms.

**B.    Discovery Requests Served by Meta on State AGs to Date**

**1.    RFPs Served by Meta on State AGs to Date**

Meta served its first set of 45 RFPs on each of the 35 State AGs on February 27, 2024.  Meta served its second set of RFPs and first set of interrogatories on each of the 35 State AGs on May 3, 2024.  There is a pending dispute before the Court regarding whether the State AGs have control over state agencies' documents for purposes of discovery that was fully briefed and for which a hearing was held on May 6, 2024.  *See* ECF 738.

**2.    State AG's Requests and Objections**

The State AGs served their collective responses and objections to Meta's first 45 RFPs on March 28.  The State AGs served their collective responses and objections to Meta's second set of RFPs and first set of interrogatories on June 3.

**3.    Status of Document Productions**

The State AGs produced an initial tranche of 28 documents on April 29, 2024.  The State AGs produced a second tranche of 885 documents on May 31, 2024.  The State AGs are coordinating with their coalition to continue their rolling productions.

**4.    Status of Conferrals**

The Parties met and conferred on April 16, 2024, regarding the State AGs' R&Os to Meta's first 45 RFPs, as well as Meta's request that the State AGs identify custodians and search terms.  At Meta's

suggestion, the Parties discussed a subset of RFPs and agreed to exchange letters regarding the other RFPs. The Parties are continuing to engage in letter correspondence.

### C.   Discovery Requests Served by Defendants on Bellwether Plaintiffs to Date

#### 1.   Discovery Requests Served by Defendants on Bellwether Plaintiffs

Defendants have jointly served approximately 83 RFPs in each of the SD Bellwether Cases, and approximately 81 RFPs in each of the PI Bellwether Cases.  Defendants have jointly served 3 interrogatories in each of the SD Bellwether Cases.

#### 2.   Bellwether Plaintiffs' Responses and Objections (R&Os)

Ten SD Bellwether Plaintiffs served R&Os to Defendants' RFPs (Set 1) on May 31; the other two SD Bellwether Plaintiffs' responses are not yet due.  Ten SD Bellwether Plaintiffs also served R&Os to Defendants' Interrogatories (Set 1) on June 6; the other two SD Bellwether Plaintiffs' responses are not yet due.

Eight PI Bellwether Plaintiffs served R&Os to Defendants' RFPs (Set 1) on May 31; two PI Bellwether Plaintiffs have response deadlines of June 20, and the other two have response deadlines of June 24.  PI Bellwether Plaintiffs also have response deadlines to a second set of Defendants' RFPs later in June.

#### 3.   Status of Conferrals

The Parties have scheduled conferences or are in the process of discussing dates to meet and confer regarding the SD Bellwether Plaintiffs' R&Os to Defendants' RFPs, as well as their litigation hold lists, custodians, ESI repositories, and search terms.  The Parties have held one initial meet-and-confer regarding PI Bellwether Plaintiffs' R&Os to Defendants' First RFPs.

### D.   Plaintiff Fact Sheets

#### 1.   Personal Injury Plaintiff Fact Sheet (PFS)

As of May 31, there are 246 individual PI Plaintiffs that have filed a Short Form Complaint in this MDL.  190 PI Plaintiffs served PFSs by the April 1 deadline set forth in the PFS Implementation Order (ECF 596) and Case Management Order 10 (ECF 604).  Pursuant to the Court's April 10 Order

(ECF 748), an additional 45 PI Plaintiffs were to provide PFSs by May 8.  Of those 45 Plaintiffs, 22 Plaintiffs failed to submit a PFS by the deadline, and 3 Plaintiffs submitted a PFS after the deadline. The large majority of the 19 PI Plaintiffs with outstanding PFSs have informed Defendants of the status of their efforts to complete them, advising that in many instances their clients have not been reachable. Defendants intend to move the Court to dismiss those remaining 19 cases pursuant to Rule 41(b).

Defendants have submitted a number of PFS deficiency letters and the PI Plaintiffs have responded, including by raising the validity of such alleged deficiencies, and/or amending their PFSs accordingly.  There are, however, certain deficiency letters that have not been responded to within the 60-day period set forth in the PFS Implementation Order (ECF 596).  Should the Parties reach an impasse on any of the individual deficiency letters, they will raise them with this Court.

### 2.     School District PFSs

By Plaintiffs' count, as of June 10, 2024, there are 166 individual SD Plaintiffs in this MDL.  One-hundred and ten (110) SD Plaintiffs served PFSs by the April 1, 2024 deadline set forth in the Implementation Order (ECF 731).  Since April 1, 2024, 32 SD Plaintiffs have served PFSs. PFSs for 24 SD Plaintiffs are not yet due under the Court's orders, and those 24 SD Plaintiffs have not yet served a PFS.

### E.     Depositions

### 1.     Scheduling of and Conferrals Regarding Plaintiffs' 30(b)(6) Deposition Notices

The Parties have continued conferring regarding the PI/SD Plaintiffs' initial Rule 30(b)(6) deposition notices and have scheduled a number of depositions.

**Meta.**  Ahead of Meta's April 23 and May 1 presentation of witnesses, the PI/SD Plaintiffs and Meta agreed to postpone the depositions and reschedule them for dates in the near future in an effort to resolve outstanding disputes.  On April 24, 2024, the PI/SD Plaintiffs and Meta submitted a joint letter-brief addressing their disputes concerning the Rule 30(b)(6) Topics.  ECF No. 786.  The Court set a hearing on the letter-brief for May 23, 2024 at 1:00 p.m. PT.  At the hearing, the Court directed the PI/SD Plaintiffs to serve a Deposition by Written Questions under Rule 31 rather than a live deposition

6

to resolve the dispute over Topics 3-6 of the Plaintiffs' original Rule 30(b)(6) notice.  The PI/SD Plaintiffs served those questions on June 3, 2024, Meta sent a response on June 7, 2024, and Plaintiffs narrowed their questions on June 8, 2024.  On June 12, 2024, Meta stated that it would respond to the questions. The Parties are continuing to meet and confer over the scope of the remaining ESI/Preservation topics.

**TikTok**.   TikTok presented two Rule 30(b)(6) witnesses to testify on ESI/Preservation topics on May 7 and 9, 2024.  TikTok was also prepared to present a Rule 30(b)(6) witness on May 2 to testify on Topics 3-7 related to issues under the broad umbrella of "Corporate Structure," but Plaintiffs withdrew the deposition notice without prejudice one week before the deposition, on the basis that they had not received sufficient responsive documents regarding corporate structure to move forward.  The Parties agreed on certain topics (Topics 1, 2 and 30) for which Plaintiffs agreed to accept documents in lieu of deposition.  Documents were produced for Topics 1, 2, and 30.

**Snap.**  Snap presented a 30(b)(6) witness on Corporate Structure Topics on May 1, 2024.  Snap presented a 30(b)(6) witness on ESI/Preservation Topics on June 13

**YouTube.**  YouTube presented a 30(b)(6) witness on certain corporate structure topics on May 9, 2024, and a 30(b)(6) witness on certain ESI/Preservation Topics on May 24, 2024.  YouTube anticipates presenting a second 30(b)(6) witness on ESI/Preservation Topics on June 25 or 26, 2024, and will finalize the date shortly.

### 2.    Plaintiffs' Notices of Anticipated Depositions of Meta

On March 22, 2024, Plaintiffs identified 12 current or former Meta employees they anticipate deposing.  On March 28, 2024, Plaintiff identified an additional 3 anticipated depositions.  On April 23, 2024, Plaintiffs amended their notice to include 21 additional anticipated deponents, for a total of 36 anticipated Meta deponents.

#### a)    Cross-Noticed Depositions

On April 15, 2024, Plaintiffs cross-noticed 3 depositions that were noticed by the Tennessee AG. On April 22, 2024, Plaintiffs cross-noticed 29 additional depositions that were noticed by the Tennessee

AG.  On May 20, Plaintiffs cross-noticed 1 additional deposition that was noticed by the Tennessee AG, for a total of 33 cross-noticed depositions.  Thirty-two (32) of these depositions are a subset of the 36 anticipated depositions mentioned above.

### b)    60-Day Production Deadline for Anticipated Deponents

Meta continues to collect for review potentially relevant custodial materials associated with the now-36 witnesses identified by Plaintiffs as anticipated deponents, including Emails, Workplace Chats, and other custodial data sources.  These witnesses can be divided into two groups: the first 15 anticipated deponents, and the second group of 21 anticipated deponents.

**First 15 Anticipated Deponents.**  Meta substantially completed its production of responsive and non-privileged Emails and Workplace Chats (based on Meta's original search terms and Relevant Time Period of 1/1/15-2/14/23[1]) for the first 15 anticipated deponents on May 21 and May 28.  Per the Parties' agreement (as ordered by the Court), Meta will produce the remainder of these anticipated deponents' responsive and non-privileged custodial files (based on Meta's original search terms and Relevant Time Period of 1/1/15-2/14/23) by June 20 and June 25, with the exception of certain non-Email/Workplace Chat sources for 2 custodians for whom Meta has requested from Plaintiffs (and asks that the Court so-order) further extensions.  For one custodian, Meta has requested a 2-week extension to July 3; this individual's deposition is not currently scheduled to take place until the third week of July. For the other custodian, Meta has requested a further 30-day extension to July 25; this individual's deposition is not currently noticed to take place until well after July 25.  Meta has also requested from Plaintiffs (and asks that the Court so-order) a 3-week extension of the July 5 and 12 deadlines to produce a privilege log (and any remaining documents as part of that process) for the first 15 deponent custodians to July 26 and August 2, respectively, with the exception of the three witnesses who currently have depositions scheduled in July (for whom Meta would aim to meet the original July 5 deadline).

---

[1] Meta respectfully requests confirmation from the Court that the September 20 substantial completion deadline is the deadline to produce any custodial files returned by any additional search terms or expanded Relevant Time Period agreed-to or ordered by the Court (beyond Meta's original (April 5) proposed search terms and Relevant Time Period).

Plaintiffs have requested the opportunity to meet and confer with Meta about its requests for extension above early in the week of June 17, and will prepared to discuss the requests with the Court as needed.

**Second Group of (21) Anticipated Deponents.**  With respect to the second group of (21) anticipated deponents, Meta anticipates that, with exception of 7 custodians, it can substantially complete production of responsive and non-privileged documents from these witnesses' custodial files (based on Meta's original search terms and Relevant Time Period of 1/1/15-2/14/23) by the current deadline of June 24.  Meta has requested from Plaintiffs (and respectfully requests that the Court order) a 30-day extension of time to July 23 for Meta to complete review and production of certain non-Email/Workplace Chat sources for the 7 custodians just mentioned.

Plaintiffs have requested the opportunity to meet and confer with Meta about its requests for extension above early in the week of June 17, and will prepared to discuss the requests with the Court as needed.

### 3.    PI/SD Plaintiffs' Notices of Anticipated Depositions to TikTok

On April 3, PI/SD Plaintiffs identified fourteen former and current TikTok employees whom they anticipate deposing.  TikTok Defendants have indicated its intent to object to several of Plaintiffs' early deponents, including two whom TikTok Defendants assert are high-level executives protected by the apex doctrine.

On June 3 TikTok Defendants made an initial production of approximately 5,000 custodial documents, based on TikTok's proposed search terms for PI/SD Plaintiffs' early deponents. TikTok will make supplemental productions through July 3 based on the parties' initial agreed search terms. TikTok is otherwise still ascertaining the volume of additional review required based on the parties' final agreement on search terms reached May 31, 2024.

### 4.    PI/SD Plaintiffs' Notices of Anticipated Depositions to Snap

On April 5, 2024, the PI/SD Plaintiffs identified seven current and former Snap employees whom they anticipate deposing.  After meeting and conferring, the PI/SD Plaintiffs withdrew their

identification of three of those current and former employees.  On May 20, 2024, the PI/SD Plaintiffs identified four additional current and former Snap employees whom they anticipate deposing.

### 5.    PI/SD Plaintiffs' Notices of Anticipated Depositions to YouTube

On April 5, 2024, the PI/SD Plaintiffs identified five current or former YouTube employees whom they anticipate deposing.  On April 15, 2024, YouTube responded, objecting to three of the anticipated deponents as "current, high-level executives of YouTube" protected by the apex doctrine, requesting the PI/SD Plaintiffs withdraw their request as to a fourth, identified individual—YouTube's co-founder who left the company fourteen years ago.  On June 6, 2024, the PI/SD Plaintiffs identified four additional YouTube employees whom they anticipate deposing, bringing the total list of identified anticipated YouTube deponents to nine.  YouTube is assessing the PI/SD Plaintiffs' most recent list of anticipated deponents, and the Parties are continuing their discussions.

### 6.    Defendants' Notices of Anticipated Depositions to Plaintiffs

On April 30, 2024, Defendants identified 28 witnesses associated with 9 PI Bellwether Plaintiffs and 60 witnesses associated with the SD Bellwether Plaintiffs whom they anticipate deposing.  On May 31, 2024, Defendants identified an additional 34 witnesses associated with the now-12 PI Bellwether Plaintiffs, and 25 additional witnesses associated with the SD Bellwether Plaintiffs whom they anticipate deposing.

## II.    Ripe Discovery Disputes

### A.    Disputes Heard at May 23, 2024 Hearing

The following disputes were heard and resolved from the bench at the May 23, 2024 hearing: ECF 786 (PI/SD Plaintiffs' 30(b)(6) Notice of Deposition to Meta); ECF 798 (Relevant time period for TikTok discovery); ECF 800 (Ex-U.S. Platforms for TikTok); ECF 824 (YouTube's alternative features and locations outside of the U.S.); ECF 825 (Relevant time period for YouTube discovery); ECF 830 (Start of relevant time frame for Snap discovery).  The Court indicated that a written order would be forthcoming.

**B.  Disputes Between Plaintiffs and Meta**

**1.  Limitations on Further RFPs**

Plaintiffs and Meta submitted a letter-brief to the Court on June 12, 2024 (ECF 937) regarding Meta's request to limit the number of RFPs Plaintiffs may serve, retroactively to May 31, 2024, to five (5) targeted requests, or some other reasonable limit.  Meta requests a hearing on the letter-brief at the June 21 DMC.

**2.  Relevant Time Period**

On May 23, 2024, the PI/SD Plaintiffs and Meta submitted letter-briefing regarding their disputes over the Relevant Time Period applicable to Meta's document collections for purposes of responding to the PI/SD Plaintiffs' RFPs.  ECF 888.

**Meta's Further Position:**

At the May 23 discovery hearing, the Court deferred setting a hearing on the Parties' Relevant Time Period letter-brief, based on Meta's and PI/SD Plaintiffs' counsel's representations that additional conferrals could be fruitful.  *See* 5/23/24 Hr'g Tr. 121:18-122:9.   Heeding the Court's guidance that the Parties meet and confer "in light of what transpired today and see if you can either reach agreement or at least narrow the disputes," *id.* at 121:24-122:2, the Parties engaged in several additional conferrals and were able to narrow their disputes.

End Date.  The Parties appear to have reached agreement on the end date for the Relevant Time Period: April 1, 2024, with the exception of non-Email/Workchat files, for which the end date is the date of collection (which generally falls between January and April 2024 for the 122 of 127 total agreed-to custodians identified to date by Plaintiffs).  Meta requests that the Court so-order that end date.

Start Date.  With respect to the start date for the Relevant Time Period, the Parties' final compromise offers in negotiations were as follows:

**Meta:**
- Briefed Proposal: January 1, 2015
- Last Compromise Offer:
    - General Start Date: January 1, 2012
    - Feature-Specific Start Date: January 1, 2008

**Plaintiffs:**

- Briefed Proposal: Inception of company
- Last Compromise Offer:
  - General Start Date: January 1, 2010
  - Other Start Date: date-of-hire for 6 custodians of Plaintiffs' choice

*General Start Date.*  Meta respectfully submits that the Court should so-order its final proposed general start date of January 1, 2012.  That proposed general start date adds 3 years to Meta's original proposed Relevant Time Period.  It is 3 years earlier than the start date specified by the AGs in their first pre-suit CID, and matches the start date specified in the AGs' subsequent CID related to COPPA and targeted requests for structured data.  *See* ECF 888 at 11 (Meta's portion of Parties' letter-brief).  Indeed, the State AGs confirmed following the Parties' final conferral (on May 16) that "[f]or many of the State AGs' requests served to date, [2012] is the relevant timeframe."  Although they noted that they "have also alleged claims that involve earlier conduct, such as those involving the development of features dating back to 2010," Meta has now agreed to go back to January 1 of the launch year for any Named Feature launched prior to 2012, including going back before 2010 (to 2008) for certain Named Features.

*Named Feature-Specific Start Date.*  At the last discovery hearing, this Court ruled that any discovery extending before the general start date is limited to (a) Named Feature-specific discovery (b) back to January 1 of the year of launch for that Named Feature.  *See* 5/23/24 DMC Tr. at 63:12-64:2, 66:23-67:3, 68:18-69:8, 72:3-72:12, 74:12-15, 75:8-13, 92:7-11.  Accordingly, Meta offered to search the files of all custodians agreed-to by the Parties who were employed prior to 2012 back to January 1, 2008 using Named Feature-specific terms.  2008 is the earliest year Meta was able to determine that any of the Named Features (as defined by Plaintiffs) was "launched."  Specifically, Meta determined that the following Named Features were launched prior to 2012 (Meta's general relevant start date), and that each was launched in the following years:[2]

- Facebook Friend Recommendations (People You May Know) - 2008
- Facebook Algorithmic Recommendations - 2009

---

[2] Meta provided this information to Plaintiffs in connection with the Parties' conferrals.

- Facebook Endless Scroll - 2009

- Facebook Geolocation - 2010

- Facebook Notifications - 2011

The only "feature" Plaintiffs argue was *not* launched in 2008 or later is Facebook Newsfeed, which they say was launched in 2006.  However, this Court made clear at the May 23 discovery hearing that any feature-specific discovery is limited to "Named Features" as defined in Plaintiffs' discovery requests.[3]  Plaintiffs have defined "Named Features" the same way in all 13 Sets of RFPs they have served and all discovery correspondence, and that definition does not include "Facebook Newsfeed"; rather, it lists "Algorithmic Recommendations."  And Plaintiffs' Master Complaint makes clear that the "algorithmic recommendations" Plaintiffs are challenging are what they refer to as "engagement-based ranking" algorithms, which did not launch on Facebook until 2009.  Indeed, Plaintiffs emphasize in the Master Complaint that "2009 also marked the change from chronological to *algorithmic ordering* for the [Facebook] news feed" and that "[i]n 2009, Meta did away with Facebook's chronological feed in favor of *engagement-based ranking*; in 2016, it did the same on Instagram."  ECF 494 ¶¶ 200, 265; *see also id.* ¶¶227, 271-72 (challenging Meta's shift to an "*engagement-based ranking* algorithm") (all emphasis added).  Accordingly, January 1, 2009 is the earliest possible date for feature-specific discovery relating to the Algorithmic Recommendations Named Feature.  And Meta has offered to run search terms specific to that Named Feature over the files of all 25 agreed-to custodians whose date-of-hire preceded 2012, for the period from 2011 back to 2009.

---

[3] *See* Tr. of 5/22 DMC at 46:21-24, 47:19-24 (Plaintiffs' counsel confirming that "we have defined Named Features for purposes of all these document requests" and "are limiting them to … the Named Features"), 34:17-35:3 (Court confirming that "Named Features" means "Named Features in the document request"), 44:10 (Court limiting feature-specific discovery to "the Named Features in the document requests"); *see also id.* at 17:24-25, 28:16-17, 32:23-33:5, 41:3-6, 43:12-13, 55:15-19, 72:18-22, 75:8-13 (limiting feature-specific discovery to the Named Features).

Plaintiffs have proffered no viable basis for obtaining discovery back to date-of-hire for any custodians.[4]  That demand is inconsistent with the Court's prior ruling that "I'm not going to grant anyone blanket discovery across all features for all time, for just one giant timeframe.  I'm going to basically trigger the discovery based on the date that . . . each individual feature was launched."  Tr. of 5/22 Hr'g at 63:12-64:2; *see also id.* at 74:12-15 (custodian searches go back to "whatever the timeframe is for that feature").  Here, the earliest feature launch date is January 1, 2008.

For these reasons, Meta requests that the Court so-order Meta's expanded Relevant Time Period or, alternatively, set argument on the letter-brief at the June 20 DMC.

**PI/SD Plaintiffs' Further Position:**

The PI/SD Plaintiffs' proposed Relevant Time Period—from the first date of a custodian's employment through the date of collection—is appropriate. Documents from Meta's (then Facebook's) early years will help illustrate, among other things, when the company learned that its product could cause addiction and other harms, particularly to youth, and why the company failed to implement warnings. In addition, for the cases in the JCCP, which are proceeding under general negligence and not product liability, evidence related to Meta's early policy and development decisions is particularly relevant to ascertaining the contours of Meta's duty and the applicable standard of care. (General negligence is also a claim in the MDL, but the Court has not ruled on it yet.) Therefore, Meta's latest proposal, to collect only such documents from prior to 2012 that hit on  "Named Feature-specific terms," is inadequate because it would deprive the PI/SD Plaintiffs of important evidence depicting Meta's early motivations and exclude documents relating to key implementation periods—for example, the launch of Newsfeed in 2006. *See* Second Am. Master PI Compl. ¶ 195, Dkt. 494 ("[Newsfeed] was the first 'social feed' of its kind, and increased time spent on the product. . . . The Newsfeed algorithm was originally designed to maximize a user's time spent in one session. However, Meta later changed the code to

---

[4] Plaintiffs cite two quotes from an interview with a former Facebook representative **_from 2017_**.  This vague commentary, untethered from any particular Named Feature, does not support extending the Relevant Time Period all the way back to the inception of the company.

maximize as many use sessions as possible. The frequency of sessions is as strong indicator of problematic use, a point internal Facebook researchers have made . . . .").

Despite Meta's suggestion otherwise, the Court has *not* ruled that Meta ESI discovery should be narrowly circumscribed to documents addressing particular "Named Features." Nor has the Court ruled that Plaintiffs should have no ability to obtain documents from earlier time periods that relate to addiction and harm to youth generally. Simply put, if then-Facebook personnel's communications in the course of launching and refining the product in its early days evince knowledge that the product would addict youth, Plaintiffs are entitled to such critical evidence going to the core of Plaintiffs' allegations. After all, Facebook's first president, Sean Parker (who joined Facebook in 2004), reflected on the development of Facebook, commenting, "God only knows what it's doing to our children's brains," before going on to explain that the driving principle in building the product was answering this question: "How do we consumer as much of your time and conscious attention as possible?" Dkt. 494 ¶ 261. Early documents and communications are also critical to establish motive and intent. Again, Parker described certain Facebook features as creating "a social-validation feedback loop . . . exactly the kind of thing that a hacker like myself would come up with, because you're exploiting a vulnerability in human psychology. The inventors, creators . . . understood this consciously. And we did it anyway." *Id.*

Given these comments and Plaintiffs' related allegations, it is no surprise Meta seeks to avoid important discovery into the early days of Facebook's development and instead tie the Relevant Time Period to certain "Named Features" that were launched in later years. But evidence of intent, motive, knowledge, and state of mind does not simply materialize on the day a feature is launched. Such evidence is generated long before, and as Parker suggests, may go back to the company's founding.

And, to be clear, this dispute does not actually concern most custodians because most began employment in more recent years. In fact, only 15 custodians began employment prior to 2010. The PI/SD Plaintiffs do not know how many of the early documents have been retained. Thus, the universe of documents at issue, while likely highly relevant, may not be large. Even so, and despite Meta's claim otherwise, the PI/SD Plaintiffs have offered to compromise since the May 23 hearing and did so in the interest of reaching compromise and without prejudice to the PI/SD Plaintiffs' ability to reassert their

original position, which Defendants rejected.  Specifically, the PI/SD Plaintiffs presented the following: (i) a January 1, 2010 default start date for custodial and non-custodial files; and (ii) of the 15 custodians hired before January 1, 2010, the PI/SD Plaintiffs choose 6 whose files would be collected back to their hire date. The PI/SD Plaintiffs respectfully submit that their proposed definition of Relevant Time Period—from the first date of a custodian's employment through the date of collection—is the proper one to ensure that relevant evidence is captured for the theories being pursued in both the MDL and JCCP.

**State AGs' Position**

Although the State AGs are not parties to this dispute, as it pertains solely to PI/SD Plaintiffs' RFPs, the State AGs write to respond to Meta's recitation of the AGs' position. On May 16, the State AGs clarified that although many of their discovery requests seek information relevant to Meta's conduct in 2012, the State AGs have also alleged claims that involve earlier conduct, and they referenced—as a mere example—claims involving the development of features dating back to 2010. This May 16 communication also stated that the AGs' position on the relevant time period "does not have any bearing on what timeframe may be relevant to PI/SD plaintiffs' claims, which are distinct."

**C.      Disputes Between PI/SD Plaintiffs and YouTube**

**1.      Custodians**

The Parties continue to meet and confer following submission of their letter brief to the Court on May 15, 2024 (ECF 848) to narrow the issues before the Court. A proposal is currently being negotiated, which would resolve the bulk (but not the entirety) of the custodian dispute. The Parties hope to reach agreement by the time of the Discovery Management Conference.

**2.      Search Terms**

The Parties have met and conferred on the PI/SD Plaintiffs' proposed search terms.  After fruitful discussion, the PI/SD Plaintiffs and YouTube/Google are finalizing today what both sides hope will be an agreement on search terms.  If any disputes remain, the parties will submit a joint letter brief on Monday, June 17, 2024.

**III.     Discovery Issues that Do Not Currently Require Court Action**

    **A.     Disputes Between PI/SD Plaintiffs and More Than One Defendant**

        **1.     Forensic Inspection Protocol (PI Plaintiffs and Snap, TikTok, and YouTube)**

On May 15, 2024, Defendants served a set of RFPs on the PI Bellwether Plaintiffs seeking the devices and forensic images, or clones of the devices, for each PI Bellwether Plaintiff, as well as all documents related to the plaintiffs' usage data, and the International Mobile Equipment Identity (IMEI) number, the Mobile Equipment Identifier (MEID) number, and the Media Access Control ("MAC") address.  On May 28, 2024, Defendants Snap, TikTok, and YouTube also provided a proposed protocol to govern the inspection of the PI Bellwether Plaintiffs' devices and usage data by a neutral third party. The Parties are in the process of scheduling a final meet and confer regarding the proposed protocol in accordance with this Court's Standing Order.

        **2.     Treater Depositions**

The Parties met and conferred on May 24, 2024, regarding procedures pertaining to treating provider depositions to ensure the orderly progression of such depositions.  Specifically, the Parties conferred regarding how time on the record will be allocated between Plaintiffs and Defendants; the order of questioning; the order of depositions (i.e., whether Plaintiffs should be deposed before treating physicians); and the prerequisite of obtaining medical records prior to treater depositions, among other potential guardrails. The PI/SD Bellwether Plaintiffs provided a proposed compromise based upon the May 24 meet and confer on May 31, 2024.  Defendants provided a response to that proposed compromise on June 11, 2024.  The Parties will continue to confer on this topic and will seek relief from the Court if needed.

        **3.     Scope of Documents in Minors' Possession, Custody, or Control**

**Defendants' Position:**

All of the PI Bellwether Plaintiffs began using Defendants' platforms while they were minors and presumably living with their parent(s) or guardian(s).  Yet the PI/SD Plaintiffs have refused to commit to producing documents pertaining to those PI Bellwether Plaintiffs that are held by their parents or guardians unless Defendants serve third-party subpoenas under Rule 45—even where those

parents or guardians have brought this lawsuit on the Bellwether Plaintiff's behalf.  Defendants submit that the PI Bellwether Plaintiffs have possession, custody, or control over such documents, regardless of whether the documents are in a drawer in the child's room versus a file cabinet elsewhere in the home, or on a child's computer versus a parent's.

**PI Plaintiffs' Position:**

PI Bellwether Plaintiffs have not refused to produce documents over which they have possession, custody, or control—including documents about Plaintiffs that they have the right to obtain from their parents, regardless of whether the documents are in the child's room or elsewhere in the home.  Rather, Defendants have incorrectly identified *non-party guardians ad litem* ("GALs") as "plaintiffs" and propounded certain discovery requests that are in substance not directed to Plaintiffs, but rather (in whole or in part) to non-party parents or other members of their households (e.g., documents concerning the marriage or divorce of a plaintiff's parents).  Although Plaintiffs do not have possession, custody, or control over such documents, *see In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999), Plaintiffs' counsel have agreed to accept service of subpoenas directed to non-party GALs via email, thereby preventing any unnecessary delays while protecting the rights of these non-parties under Rule 45.

### 4.      School District Deposition Hours Limit

**Defendants' Position:**

Pursuant to DMO 3, Defendants are allotted 35 hours of fact depositions of each SD Bellwether Plaintiff and 10 hours for Rule 30(b)(6) depositions of each SD Bellwether Plaintiff, *see* ECF 667 at 4—limits that were entered without the benefit of PFSs, litigation hold lists, or interrogatory responses from the SD Bellwether Plaintiffs.  The 35-hour limit set by the Court was lower than Defendants requested, as reflected in the Parties' February 26, 2024 Status Report.  *See* Dkt. 617 at 9.  Nor did Defendants have the benefit of the SD PFSs or early discovery responses when conferring about deposition limits. Early discovery in the SD Bellwether cases has now made clear that the hours limit on fact depositions may need to be revisited, such as the answers of Tucson Unified School District (a medium-sized SD with 39,927 students) and Breathitt County School District (a small SD with only 1,600 students) to

18

Defendants' First Set of Interrogatories (served on June 6, 2024), which identified *35* and *12* current and former employees, respectively, with "*unique*, *material* knowledge of Plaintiff's allegations in this action"—individuals Defendants should be permitted to depose.  Moreover, the size and complexity of other bellwether School Districts suggest that the existing limits are inadequate, irrespective of their interrogatory responses.  Defendants plan to meet and confer with Plaintiffs about the SD Bellwether Plaintiff deposition limits in light of these factual developments, and will seek relief from the Court if needed.

**SD Bellwethers' Position:**

Defendants were fully aware of the relevant issues in this litigation and the status of discovery when they stipulated to 10 hours for Rule 30(b)(6) depositions, asked the Court to allow a combined 40 hours for fact depositions of each Bellwether SD Plaintiff, and ultimately agreed to the 35 hour limit. *See* Hearing Transcript (02/22/2024) at 48 ("I also do just want to make sure that I state for the record just how complex the school district bellwether discovery is also going to be. In the school district cases, the list of potential fact witnesses is vast. It includes principals, you know, I said school board presidents, executive directors of the school districts, school health, supervisors of students and family services, district social workers, district superintendents, school police departments, directors of school safety, technology directors, school CFOs, former administrators, faculty and students and others. And that is discovery that the defendants will need to develop their defenses in these cases."). There have been no surprises and Defendants should be required to abide by their prior agreements.

5.    **SD Plaintiffs' Responses and Objections to RFPs (SD Plaintiffs and Defendants)**

**Defendants' Position:**

The SD Bellwether Plaintiffs' R&Os to Defendants' RFPs are extremely deficient, as the SD Bellwether Plaintiffs are refusing to produce documents relating to a host of topics that are directly relevant to the SD Bellwether Plaintiffs' allegations.  Given the expedited discovery schedule in this case, Defendants are concerned that the serious deficiencies in the SD Bellwether Plaintiffs' R&Os will delay subsequent discovery deadlines.  As noted above, the parties are in the process of meeting and

conferring with respect to Defendants' First RFPs to the SD Bellwether Plaintiffs, but Defendants anticipate that it will likely be necessary to file motions to compel relating to these discovery requests.

**SD Bellwethers Plaintiffs' Position:**

The SD Bellwether Plaintiffs' timely responded to Defendants' RFPs on May 31, 2024.  They are meeting and conferring with Defendants about their responses and objections during the week of June 10, 2024 and anticipate ongoing meet and confers to address Defendants' alleged deficiencies in their responses. SD Bellwether Plaintiffs have not delayed the discovery process, but have timely produced discovery in response to the PFS and supplemental fact sheet and are expeditiously meeting and conferring to resolve any disputes related to their RFP responses and objections.

6. **SD Plaintiffs' Rule 26 Disclosure (SD Plaintiffs and Defendants)**

**Defendants' Position:**

During the March 21, 2024 DMC, the School District Plaintiffs claimed that they would incorporate by reference their individual Plaintiff Fact Sheets into their Initial Disclosures, including providing the damages computations required by FRCP 26(a)(1)(A)(iii).  *See* Tr. of 3/21/24 DMC at 24:11-13.  They did not, and now, over Defendants' objections, Plaintiffs are asserting that they will not provide damages computations until the expert discovery phase of the case.  Plaintiffs should be required to provide those computations now as no expert is needed for a basic computation of the categories of damages claimed by the School District Plaintiffs (*e.g.*, expenses related to hiring personnel to address student mental health and repairing property damage).  *See* First Amended Master SD Compl., ¶ 212, ECF 729); *see, e.g.*, *Burnett v. United States*, 2016 WL 3392263, *3 (C.D. Cal. Jun. 14, 2016) (rejecting the argument that expert testimony relieved plaintiff of the obligation to investigate his claims and provide damages computations based on reasonably available information prior to expert analysis).

**Plaintiffs' Position:**

In accordance with the Plaintiff Fact Sheet (ECF 731-1 at 13-14), which Defendants jointly submitted to the Court after the March 21 hearing, the SD Plaintiffs have detailed "***each category*** of damages or monetary relief" sought.  Defendants' demands for precise damages calculations at this early

20

stage is premature and ignores the Court-ordered schedule (ECF 604) and Ninth Circuit case law, which permits damages calculations that will require expert testimony, such as in this case, to be provided when expert reports are exchanged.  *See, e.g.*, *Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *3 (N.D. Cal. Sept. 28, 2020) ("Given the early stage of the case" it was permissible for plaintiff to initially only disclose the types of damages sought and later disclose a "damages calculation in an expert report that was produced by the deadline set by the Court"); *Naxos, LLC v. Am. Fam. Ins. Co.*, 2020 WL 106740, at *5 (W.D. Wash. Jan. 9, 2020) (finding it was proper for plaintiff to identify categories of damages in initial disclosures and later provide precise damages calculations via an expert report); *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, 2016 WL 1611585, at *4 (D. Nev. Apr. 21, 2016) (finding it was appropriate for plaintiff's damages calculations to be "'made known' throughout the discovery process" including in expert reports).

### 7.    SD Plaintiffs' Preservation Obligations (SD Plaintiffs and Defendants)

**Defendants' Position:**

Of the 8 school district bellwether plaintiffs that have provided document preservation information to Defendants thus far, five did not put in place any litigation holds prior to their selection as a bellwether, notwithstanding Plaintiffs' July 21, 2023 representation that they were "taking reasonable and proportionate steps to preserve potentially discoverable documents," which raises serious concerns as to Plaintiffs' compliance with their preservation obligations.  *See Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012) ("By failing to do as little as issue a litigation hold notice to any employees for eight months after its preservation duty arose . . . the Court finds that [the litigant] acted with not just simple negligence but rather conscious disregard of its duty to preserve.").  On May 31, 2024, Defendants requested a meet-and-confer with SD Plaintiffs' leadership regarding preservation in both the bellwether and non-bellwether cases, explaining that "the preservation efforts of the School District Bellwether Plaintiffs raise questions regarding the adequacy of the non-bellwether Plaintiffs' preservation efforts."

**SD Bellwethers Plaintiffs' Position:**

The SD Bellwether Plaintiffs have taken appropriate preservation efforts and, as public entities, they are subject to open records law and document retention requirements, which in many cases requires them to retain documents indefinitely. Regardless of these policies, many Plaintiffs have also sent legal hold notices as a belt and suspenders approach and are scheduling meet and confers to discuss same with Defendants. *See* The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 104 (2018) ("In some circumstances sending a legal hold notice will not be necessary, *e.g.*, where all potentially relevant information is already secured.").

### 8. PI Plaintiffs' Responses and Objections to RFPs (PI Plaintiffs and Defendants)

**Defendants' Position:**

On May 31, 2024, the first wave of Bellwether Plaintiffs served their R&Os to Defendants' Requests for Production.  Defendants assert that the responses are deficient in a number of respects.  The parties met and conferred regarding the deficiencies on June 7, and they anticipate further conferral(s) on June 17 or 18.  If the parties are unable to resolve their disputes, they will discuss whether letter briefing is appropriate.

**PI Bellwether Plaintiffs' Position:**

Plaintiffs timely responded to Defendants' first set of RFPs on May 31, 2024, and although Plaintiffs have already produced substantial information in response to the PFS and Defendants are already in possession of Plaintiffs' full social media account data, Plaintiffs anticipate production of the remaining relevant documents (including ESI) in response to Defendants' requests to begin soon. Plaintiffs will abide by the ESI Order (ECF 690) in discussing search parameters regarding their ESI, and are willing to engage in transparent discussions on the scope of documents and information that will be searched and produced, as well as search methodology used, in response to Defendants' RFPs. The Parties held an initial meet and confer to discuss same on June 10, 2024, the Plaintiffs have agreed to provide relevant data sources and proposed search terms by Wednesday, June 19, 2024, and the Parties are continuing to confer.

### B.     Unripe Issues Between Meta Defendants and Plaintiffs

#### 1.     Meta's 30(b)(6) Deposition by Written Questions

On June 3, Plaintiffs served the Deposition by Written Question notice on Meta covering Topics 3-6 of the original Rule 30(b)(6) notice along with a Proposed Stipulation on the procedure for the Deposition by Written Question.  The Parties are currently negotiating the timing of Meta's response after Meta raised concerns with the notice.  Plaintiffs agreed to withdraw certain questions on June 8 if Meta answered the others; Meta agreed to do so on June 12, conditioned on a several-week extension of the timeline to respond. Plaintiffs responded on June 13 and expect the Parties will reach agreement regarding timing for the completion of the deposition.

#### 2.     RFPs 244, 262, 265-266, and 274-275

The PI/SD Plaintiffs and Meta have agreed to defer further negotiations and/or briefing on potential disputes regarding these RFPs until the Court (or the Parties) resolve their current disputes regarding Relevant Time Period, *see supra* Section II.B.2, and search terms.

#### 3.     States' Litigation Holds

After the Court ordered Defendants to produce a list of recipients of their litigation holds, *see* ECF 789 at 6, Meta on May 3 requested the same information from the State AGs.  On May 17, 2024, the State AGs voluntarily responded with the requested information.  The State AGs' letter indicated that 14 of the 35 State AGs suing in this MDL had issued litigation holds, and that the State AGs were also relying on various statutes, rules, policies, and procedures to meet their litigation preservation obligations.  The States have not identified these statutes, rules, policies, or procedures.  Meta asked the States to issue litigation holds, including to state agencies.  With respect to the 14 States that issued litigation holds, the State AGs' letter provided information regarding holds sent to employees or contractors within the State AGs' offices, and did not include any employees of any State agencies.  The Parties exchanged letters (on May 21 and May 24) and held a conferral on June 3.  The Parties will continue to confer on this topic and will seek relief from the Court if needed.

### C.      Unripe issues between PI/SD plaintiffs and TikTok

#### 1.      RFPs 198, 200-205 (marketing)

**PI/SD Plaintiffs' Position**

The PI/SD Plaintiffs' RFPs seek materials concerning Defendants' efforts to market or promote the Platform to children (including efforts using images depicting children). Negotiations over these RFPs have been bogged down because Plaintiffs' RFPs are not limited to materials that exclusively target children, but encompass materials whenever children are part of the intended audience. Plaintiffs have proposed to cut through the difficulties by serving targeted ("go get 'em") requests that will kick-off production of Defendants' marketing plans and research, which would then allow Plaintiffs to propose more informed search methods for additional responsive materials.

**TikTok Defendants' Position**

Plaintiffs have issued RFPs seeking broad discovery into the marketing, promotion, and advertising of the TikTok platform generally, seeking all documents that "constitute, identify, describe, or discuss marketing, promotion, and advertising" of the TikTok platform, none of which are limited to the age group relevant to this litigation (minors) or the Named Features that are the subject of Plaintiffs' claims. As such, they are untethered from Plaintiffs' claims and/or TikTok's defenses, and improper under Rule 26.  TikTok requested such narrowing of the topics and the parties were very close to resolution when Plaintiffs inexplicably withdrew all prior offers to narrow the scope of their requests, wasting all of the meet and confer time over a matter of months on the same.  TikTok understands Plaintiffs are now undertaking an effort to redraft these requests, which TikTok has not seen, but TikTok anticipates a dispute will remain to the extent Plaintiffs fail to narrow their requests in the manner described above.

#### 2.      RFPs 199 (investor communications)

**PI/SD Plaintiffs' Position:**

This Request seeks documents concerning statements made to current or prospective investors in TikTok, which are relevant to TikTok's knowledge, as well as to show statements made to investors or potential investors regarding its platform, including about its features and advertising on its platform,

and advertising targeting.  TikTok requested that Plaintiffs withdraw this Request, on the ground that it is duplicative of RFP 202, but that Request seeks documents relied upon by the sales team in communicating with advertisers, not statements made to investors.  The parties are continuing to confer on this Request.

### TikTok Defendants' Position:

This Request seeks all presentations the TikTok Defendants (privately held companies) have given to current or potential investors, regardless of subject matter. Plaintiffs have not articulated why such potentially highly confidential and sensitive documents are relevant to any claims in this matter, nor why they cannot obtain the same information through less intrusive means.  To the extent information about the "benefits or features of advertising" on the TikTok platform, that information will be included in the documents produced in a response to many of Plaintiffs' over 300 other requests, including but not limited to, Plaintiffs' Request 202 for presentations to advertisers about the "benefits or features of advertising" on the platform.

### 3.      RFPs 178-179, 185-186 (health & safety features)

#### PI/SD Plaintiffs' Position

Setting aside the inaccuracy of the statement that Plaintiffs stated they would not pursue deficiencies in TikTok's responses, Plaintiffs await TikTok's response to their proposal that TikTok produce responsive documents, consistent with the compromise reached by Plaintiffs and Meta Defendants on this issue.

#### TikTok Defendants' Position

At the parties' May 8 meet and confer, the PI/SD Plaintiffs informed the TikTok Defendants that they would not be pursuing any purported deficiencies Plaintiffs previously raised as to these requests. On June 5, the PI/SD Plaintiffs asked the TikTok Defendants whether they were willing to agree to the compromise reached on the same Requests between the PI/SD Plaintiffs and Meta.  The TikTok Defendants are considering that proposal and will engage in further meet and confer on the same; however, no meaningful meet and confer has taken place to date.

### 4. RFPs 206-208 (lobbying)

**PI/SD Plaintiffs' Position**

These requests seek information about TikTok's lobbying efforts, as well as communications between TikTok (including its consulting and lobbyists) and government officials about child safety and CSAM. TikTok's awareness of these issues is at the heart of this case, and the requested documents will provide first-hand documentation about TikTok's knowledge and efforts to evade public accountability.

**TikTok Defendants' Position**

These requests seek documents identifying every person, payment, and communication to "lobby, influence, advise, coordinate with, or communicate with any legislative or regulatory body in the United States." They are plainly overbroad and fail to identify the information sought with reasonable specificity. Further, contrary to the PI/SD Plaintiffs' assertion, the information requested is neither relevant nor proportional to showing "notice"—i.e., that TikTok was aware of some purported "dangerous" condition in certain relevant features of the TikTok Platform and Plaintiffs have provided no authority for their claim otherwise.

### 5. Discovery relating to CSAM

**PI/SD Plaintiffs' Position**

The operative complaint describes in detail how "ByteDance has designed various TikTok features that promote and dramatically exacerbate sexual exploitation, the spread of CSAM, sextortion, and other socially maladaptive behavior that harms children." SAC ¶ 654; *see id.* ¶¶ 655-74. These defects are included in the PI/SD Plaintiffs' failure-to-warn claim against TikTok, *id.* ¶ 688—a claim that indisputably remains in the case as to *all* defective TikTok features. *See* 11/14/23 MTD Order (ECF 430) at 20, 22, 41 n.60; *see also id.* at 15-16 (holding that section 230 does not bar product defect claims based on "the ways in which [Defendants] allow users and visitors to their platforms to report CSAM"). During a June 7, 2024 meet and confer, TikTok represented that it would  consider PI/SD Plaintiffs' position and provide a response by June 14, 2024.

**TikTok Defendants' Position**

As the PI/SD Plaintiffs have acknowledged during meet and confers, the only remaining claim against defendants related to CSAM is for allegedly "[n]ot implementing reporting protocols to allow users or visitors of defendants' platforms to report CSAM and adult predator accounts specifically without the need to create or log in to the products prior to reporting. (Nov. 14, 2023 Order on MTD, at 14-15 (citing MAC ¶ 845(p)).  However, the Second Amended Master Complaint does not make this specific assertion against the TikTok Defendants—to the contrary, it asserts that TikTok followed exactly the opposite practice (the "better practice") of allowing reporting of CSAM "**when not logged in.**"  (SAMC, ¶ 667, n.751) (incorporating by reference Canadian Centre for Child Protection, Reviewing Child Sexual Abuse Material Reporting Functions on Popular Platforms, at p. 14).  Accordingly, discovery about CSAM is not relevant to TikTok.

### D.     Unripe issues between PI/SD plaintiffs and YouTube

#### 1.     Ongoing discussions re RFPs

PI/SD Plaintiffs sent YouTube Letters dated 5/28/24 (identifying RFPs on Outside US discovery); 6/3/24 (Relevant Time Period and RFPs); and 6/6/24 (proposal to treat specific RFPs as requesting specific known documents and produce those documents without the use of search terms). The Parties have met and conferred on those topics on June 5 and June 12 and continue to work toward compromise on all three issues.

Respectfully submitted,

DATED: June 14, 2024                    By:  */s/ Lexi J. Hazam*

                                    LEXI J. HAZAM
                                    **LIEFF CABRASER HEIMANN &**
                                    **BERNSTEIN, LLP**
                                    275 BATTERY STREET, 29TH FLOOR
                                    SAN FRANCISCO, CA 94111-3339
                                    Telephone: 415-956-1000
                                    lhazam@lchb.com

                                    PREVIN WARREN

27

**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

29

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**

30

17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333

31

rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400

33

Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General

34

Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey*
*Division of Consumer Affairs*

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600

36

Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,

37

Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google
LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com

Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

## <u>ATTESTATION</u>

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: June 14, 2024

By: <u>*/s/ Ashley M. Simonsen*</u>