Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Instagram, LLC, Meta Payments, Inc.,*
*Meta Platforms Technologies, LLC, Facebook*
*Payments, Inc., Siculus, Inc., Facebook*
*Operations, LLC, and Mark Elliot Zuckerberg*

*Additional counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| *Office of the Attorney General, State of Florida, Department of Legal Affairs,* | MDL No. 3047 |
| *v.* | Case No. 4:23-cv-05885-YGR |
| *Meta Platforms, Inc., Instagram LLC* | Honorable Yvonne Gonzalez Rogers |
| | **META'S MOTION TO DISMISS THE FLORIDA ATTORNEY GENERAL AMENDED COMPLAINT** |
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined in accordance with

3   the Court's Case Management Order No.    6 (4:22-md-3047, Dkt. No. 451), before the Honorable Yvonne

4   Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of

5   California, located at 1301 Clay Street in Oakland, California, Defendants Meta Platforms, Inc.,

6   Instagram, LCC, and Meta Payments, Inc., (each a "Defendant," and collectively the "Defendants"), will

7   and hereby do move this Court, under Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and/or 12(b)(6),

8   for an order dismissing with prejudice the Florida Amended Complaint (4:23-cv-05885-YGR, Dkt. No.

9   23) in its entirety.

10      This Motion is based on the Memorandum of Points and Authorities submitted herewith, any

11   Memorandum or other papers submitted in connection with the Motion, Defendants Meta Platforms' and

12   Instagram's previously filed Motion to Dismiss the Florida Attorney General Complaint (4:23-cv-05885-

13   YGR, Dkt No. 15; 4:22-md-3047, Dkt. Nos. 517, 662), any matter of which this Court may properly take

14   judicial notice, and any information presented at argument.

15

16   DATED:        June 18, 2024        By:    /s/ Timothy C. Hester

17                                             Timothy C. Hester

18

19                                             *Attorneys for Defendants Meta Platforms,*
                                               *Inc., Instagram, LLC, Meta Payments, Inc.,*
20                                             *Meta Platforms Technologies, LLC,*
                                               *Facebook Payments, Inc., Siculus, Inc.,*
21                                             *Facebook Operations, LLC, and Mark*
                                               *Elliot Zuckerberg*
22

23                                             *Additional counsel listed on*
24                                             *signature pages*

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...............................................................................................................1

II.  FACTUAL ALLEGATIONS & PROCEDURAL HISTORY ........................................2

III.  LAW & ARGUMENT.........................................................................................................3

    A.  The COPPA Claim Should Be Dismissed for Improper Venue. .............................4

        1.  Venue in the Middle District of Florida Is Not Proper. ..............................4

        2.  The MDL Court Cannot Cure Venue..........................................................6

    B.  The State Fails to State a Claim Against Meta Payments..........................................6

    C.  The FDUTPA Claim Should Be Dismissed for Lack of Personal Jurisdiction. ................10

        1.  Meta Payments' Presence in Florida is Insufficient to Establish Personal Jurisdiction over Meta Platforms and Instagram. ...................................10

        2.  The Court Cannot Exercise Pendent Jurisdiction over the FDUTPA Claim. ........12

        3.  Florida Lacks Specific Personal Jurisdiction over Meta Platforms and Instagram.........................................................................................13

            a)  The State's FDUTPA Claim Does Not "Arise Out Of or Relate To" Meta's Purported Contacts with Florida.................................14

            b)  The State Cannot Establish "Purposeful Availment" Sufficient to Support Personal Jurisdiction over Meta Platforms and Instagram..........15

IV.  Conclusion .......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) ........................................................................ 12

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ....................................................................... 13

*Admar Int'l, Inc. v. Eastrock, LLC*,
18 F.4th 783 (5th Cir. 2021) .......................................................................... 16

*Advantus, Corp. v. Sandpiper of Cal., Inc.*,
2019 WL 4751725 (M.D. Fla. Sept. 30, 2019) .............................................. 14

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ....................................................................... 16

*In re Amaranth Nat. Gas Commodities Litig.*,
612 F. Supp. 2d 376 (S.D.N.Y. 2009) ........................................................... 12

*Anderson v. Deere & Co.*,
852 F.2d 1244 (10th Cir. 1988) ....................................................................... 9

*APR Energy, LLC v. Pakistan Power Resources, LLC*,
653 F. Supp. 2d 1227 (M.D. Fla. 2009) .......................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 5, 7

*New Mexico ex rel. Balderas v. Tiny Lab Prods.*,
448 F. Supp. 3d 1263 (D.N.M. 2020) ............................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 7

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
582 U.S. 255 (2017) .................................................................................. 14, 15

*Buelow v. Plaza Motors of Brooklyn, Inc.*,
2017 WL 2813179 (E.D. Cal. June 29, 2017) ............................................... 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................. 14, 15

*Car-Freshner Corp. v. Meta Platforms, Inc.*,
2023 WL 7325109 (N.D.N.Y. Nov. 7, 2023) ................................................ 17

*Corley v. Osprey Ship Mgmt. Inc.*,
    2007 WL 201263 (S.D. Fla. Jan. 24, 2007) .................................................................5

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................................14

*Dev Corp. of Palm Beach v. WBC Constr., LLC*,
    925 So.2d 1156 (Fla. 4th DCA 2006) ...........................................................10, 11, 12

*Evans v. Huffington Post.com, Inc.*,
    2022 WL 21320601 (S.D. Miss. Apr. 27, 2022) .........................................................16

*Fidrych v Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ......................................................................................16

*In re FMC Corp. Patent Litig.*,
    422 F. Supp. 1163 (JPML 1976) ...................................................................................6

*FTC v. AMG Servs. Inc.*,
    2012 WL 6800525 (D. Nev. Nov. 1, 2012) ..................................................................8

*FTC v. Consumer Health Benefits Ass'n*,
    2012 WL 1890242 (E.D.N.Y. May 23, 2012) ...............................................................8

*FTC v. Direct Benefits Grp.*,
    2013 WL 3771322 (M.D. Fla. July 18, 2013) ...............................................................8

*FTC v. Ideal Fin. Sols., Inc.*,
    2015 WL 4032103 (D. Nev. June 30, 2015) .................................................................9

*FTC v. Ivy Cap., Inc.*,
    2013 WL 1224613 (D. Nev. Mar. 26, 2013), *aff'd in relevant part*, 616 Fed. App'x
    360 (9th Cir. 2015)........................................................................................................8

*FTC v. Life Mgmt. Servs. of Orange Cnty, LLC*,
    350 F. Supp. 3d 1246 (M.D. Fla. 2018)........................................................................9

*FTC v. Noland*,
    2021 WL 289659 (D. Ariz. 2021) ...............................................................................11

*FTC v. Pointbreak Media, LLC*,
    376 F. Supp. 3d 1257 (S.D. Fla. 2019) .........................................................................8

*FTC v. Wash. Data Resources*,
    856 F. Supp. 2d 1247 (M.D. Fla. 2012).........................................................................7

*Gadea v. Star Cruises, Ltd.*,
    949 So.2d 1143 (Fla. 3rd 2007) ..................................................................................11

iii

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*,
  255 Fed. App'x. 775 (5th Cir. 2007) ......................................................................17

*Gill v. Three Dimension Sys., Inc.*,
  87 F. Supp. 2d 1278 (M.D. Fla. 2000) ...................................................................13

*Holbrook v. Mazda Motor Corp.*,
  2018 WL 1571905 (E.D. Ky. Mar. 20, 2018) ........................................................11

*Johnson v. TheHuffingtonPost.Com*,
  21 F.4th 314 (5th Cir. 2021) ..................................................................................16

*JPMorgan Chase Bank, N.A. v. G7 Productivity Sys., Inc.*,
  2012 WL 6044732 (S.D. Ohio Dec. 5, 2012) ...........................................................7

*Krinsk v. SunTrust Banks, Inc.*,
  2010 WL 11475608 (M.D. Fla. Jan. 8, 2010) ...........................................................9

*KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*,
  2009 WL 103645 (M.D. Fla. Jan. 15, 2009) ...........................................................13

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ................................................................................................3, 6

*Lillard v. Stockton*,
  267 F. Supp. 2d 1081 (N.D. Okl. 2003) ............................................................11, 12

*Louis Vuitton Malletier, S.A. v. Mossier*,
  736 F.3d 1339 (11th Cir. 2013) .............................................................................14

*Mao v. Global Trust Mgmt.*,
  2022 WL 989012 (E.D. Va. Mar. 31, 2022) ..............................................................9

*McCabe v. Henpil, Inc.*,
  889 F. Supp. 983 (E.D. Tex. 1995) ..........................................................................9

*McEwen v. Strickland*,
  2020 WL 495220 (M.D. Fla. Jan. 30, 2020) ..............................................................5

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
  288 F.3d 1264 (11th Cir. 2002) .............................................................................11

*NCR Credit Corp. v. Underground Camera, Inc.*,
  581 F. Supp. 609 (D. Mass. 1984) ...........................................................................9

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) .............................................................................14

*Perez v. Bath & Body Works, LLC*,
  2022 WL 2756670 (N.D. Cal. July 14, 2022) .........................................................12

*Ray v. Tenn. Valley Authority*,
  677 F.2d 818 (11th Cir. 1982) .................................................................13

*Renne v. NextEra Energy, Inc.*,
  2022 WL 2918123 (D. Kan. July 25, 2022) .............................................12

*SkyHop Techns., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ................................................................14

*Snow v. DirecTV, Inc.*,
  450 F.3d 1314 (11th Cir. 2008) ...............................................................17

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*,
  151 F. Supp. 3d 1268 (M.D. Fla. 2015) .....................................................7

*State v. Am. Tobacco Co.*,
  707 So.2d 851 (Fla. 4th DCA 1998) ..................................................10, 11

*Sun Bank, N.A. v. E.F. Hutton & Co.*, Inc.,
  926 F.2d 1030 (11th Cir. 1991) ...............................................................17

*In re Uber Techns., Inc., Passenger Sexual Assault Litig.*,
  2023 WL 9953756 (N.D. Cal. Dec. 28, 2023) ............................................6

*Vibe Micro, Inc. v. Shabanets*,
  878 F.3d 1291 (11th Cir. 2018) ...............................................................12

*Walden v. Fiore*,
  571 U.S. 277 (2014)....................................................................11, 14, 16

*Waste Pro USA, Inc. v. Adams Sanitation Holding Co., LLC*,
  2022 WL 19842681 (M.D. Fla. July 18, 2022) ...........................................5

*Winningham v. Biomet Orthopedics, LLC*,
  2012 WL 3860806 (N.D. Cal. Aug. 31, 2012) ............................................6

*Yohananov v. Bris Avrohom of Fair Lawn*,
  2022 WL 3042521 (M.D. Fla. Aug. 2, 2022) ...........................................16

**Statutes**

15 U.S.C. § 6504................................................................................4, 5

28 U.S.C. § 1367......................................................................................12

28 U.S.C § 1391.........................................................................................5

28 U.S.C. § 1404.......................................................................................6

Fla. Stat. Ann. § 48.193 ..........................................................................14

Fla. Stat. Ann. § 501.201 ..................................................................................................... *passim*

## I.    INTRODUCTION

The Amended Complaint filed by the Florida Attorney General ("the State") should be dismissed in its entirety.[1]

At the April 19, 2024 hearing on Meta's motion that the State's original complaint should be dismissed for improper venue and lack of personal jurisdiction over Meta in Florida, the Court granted the State leave to "replead [its] claims with respect to jurisdiction."[2]  The State's Amended Complaint—which reasserts claims under the Children's Online Privacy Protection Act ("COPPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")—adds some additional and largely conclusory allegations concerning Meta's purported Florida contacts, but fails to cure the State's deficiencies with respect to venue and personal jurisdiction.  The Amended Complaint also purports to add as a new defendant, Meta Payments—a Florida-incorporated Meta subsidiary with no alleged connection to the conduct on which the State bases its claims—in an apparent effort to establish personal jurisdiction in Florida over Meta Platforms and Instagram, under the theory of common-enterprise liability.[3]  Even if the Court were to permit the addition of this new defendant, the State's claims against Meta Payments fail on the pleadings as a matter of law.

The Amended Complaint should be dismissed for three reasons:

*First*, the State's COPPA claim should be dismissed for improper venue, because the alleged facts giving rise to the COPPA claim did not occur in the Middle District of Florida.

*Second*, the State's claims against Meta Payments should be dismissed for failure to state a claim. The Amended Complaint contains no allegations connecting Meta Payments to the State's claims.  Nor does the State allege sufficient facts to support a claim against Meta Payments based on a theory of common-enterprise liability.

---

[1] Plaintiff Florida Attorney General is referred to herein as "the State."  "Meta Platforms" refers to Defendant Meta Platforms, Inc., "Instagram" refers to Defendant Instagram, LLC, and "Meta" refers collectively to those two Defendants.  "Meta Payments" refers to newly added Defendant Meta Payments, Inc.

[2] Transcript of April 19 Case Management Proceedings at 126:23-127:2.

[3] The State was not granted leave to add additional defendants, *see* Transcript of April 19 Case Management Proceedings at 126:23-127:2, and Meta objects to the State's purporting to do so.

*Third*, the State's FDUTPA claim should be dismissed for lack of personal jurisdiction for several reasons: (a) Meta Payments' Florida incorporation cannot establish personal jurisdiction over any Defendant, both because the State does not sufficiently allege a claim against Meta Payments and because the State fails to allege facts sufficient to justify imputing Meta Payments' presence in Florida to Meta Platforms or Instagram; (b) the COPPA claim cannot confer pendent jurisdiction, both because venue is improper and because the alleged facts giving rise to the COPPA claim are separate and distinct from the alleged facts supporting the FDUTPA claim; and (c) the State's FDUTPA claims do not arise out of or relate to Meta's alleged contacts with Florida.[4]

## II.     FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

On October 24, 2023, the State filed its original complaint against Defendants Meta Platforms and Instagram in the Federal District Court for the Middle District of Florida.  The original complaint asserted two claims: (1) violation of COPPA, based on allegations regarding the collection of data from users under 13; and (2) violation of FDUTPA based on allegations regarding "design features" allegedly used to induce minors' use of Meta's services, and alleged deceptive statements by Meta regarding the safety of its services.  Dkt. No. 1.  On November 9, 2023, the State's case was transferred to this Court as part of the MDL.  Dkt. Nos. 10 & 11.

On December 22, 2023, Meta Platforms and Instagram filed an omnibus motion to dismiss the State's original complaint along with the separately filed Multistate Attorneys General Complaint.  Dkt. No. 15.  In addition to the arguments Meta Platforms and Instagram raised as to all of the Attorneys Generals' COPPA and state UTPA claims—that those claims fail as a matter of law on the pleadings— Meta Platforms and Instagram also moved to dismiss the Florida AG's claims specifically for lack of personal jurisdiction, arguing that the State failed to allege that there was personal jurisdiction in Florida

---

[4] Meta Platforms and Instagram raised additional arguments against the State's claims in in their pending Motion to Dismiss the Multistate Attorneys General Complaint; Florida Attorney General Complaint; and Personal Injury Plaintiffs' Consumer Protection and Misrepresentation Claims.  Dkt. No. 15; Case No. 4:22-md-03047-YGR, Dkt. Nos. 517, 662.  Meta reasserts those arguments against the Amended Complaint, as they are unaffected by the State's amendments.  Were the Court to find the State's allegations against Meta Payments sufficient to state a claim under COPPA or FDUTPA—they are not— Meta Payments would join Meta Platforms' and Instagram's additional arguments in favor of dismissal of those claims.

as to the FDUTPA claim.  *Id.*  Meta raised these arguments only against the Florida AG because the State—unlike the Multistate AGs—had initially filed its complaint in the Middle District of Florida, had alleged jurisdiction in Florida (rather than California), and—as was confirmed by the State's more recent filing of a *Lexecon* objection, Dkt. No. 22—may seek to have its case returned to the Middle District of Florida for trial.

In its Opposition to Meta's Motion to Dismiss, the State contended for the first time that personal jurisdiction existed over Meta Platforms and Instagram in the Middle District of Florida because COPPA authorizes nationwide service of process.  Dkt. No. 18.  In Reply, Meta Platforms and Instagram argued that venue was improper in the Middle District of Florida with respect to the COPPA claim and that the pendent personal jurisdiction doctrine did not apply because the State's COPPA claim did not arise out of the same nucleus of operative facts as its FDUTPA claim.  4:22-md-03047-YGR, Dkt. No. 662.  At oral argument on these jurisdictional points, the Court granted the State leave to amend to "replead [its] claims with respect to jurisdiction[.]"  *See* Transcript of April 19 Case Management Proceedings at 126:23-127:2. Meta's other arguments for dismissal of ***all*** the state attorney general claims before this Court—including the State's claims—remain pending.

On April 29, 2024, the State filed its Amended Complaint.  The Amended Complaint reasserts claims under COPPA and FDUTPA, based on allegations regarding the collection of data from users under 13, alleged "design features," and deceptive statements.  Dkt. No. 23.  The State also purported to add Meta Payments as a new defendant, apparently in an effort to establish personal jurisdiction in Florida over Meta Platforms and Instagram.  Dkt. No. 23.  In addition, the State filed a *Lexecon* Objection, objecting to trial in the Northern District of California.  Dkt. No. 22.[5]

## III.     LAW & ARGUMENT

The Amended Complaint should be dismissed in its entirety.  ***First***, the COPPA claim should be dismissed for improper venue, because the alleged facts giving rise to the COPPA claim did not occur in the Middle District of Florida.  ***Second***, the claims against Meta Payments should be dismissed for failure

---

[5] Although the State captioned its Amended Complaint as being filed in the Northern District of California, its *Lexecon* Objection reflects its apparent intent that this case would be tried in the Middle District of Florida.

to state a claim, because there are no allegations connecting Meta Payments to the State's claims and the State does not sufficiently allege that Meta Payments may be held liable under the theory of common-enterprise liability. **Third**, the FDUTPA claim should be dismissed for lack of personal jurisdiction because Meta Payments' presence in Florida cannot establish personal jurisdiction in Florida over Meta Platforms and Instagram, the COPPA claim cannot confer supplemental jurisdiction, and the FDUTPA claim does not arise out of or relate to Meta's alleged contacts with Florida.

### A.     The COPPA Claim Should Be Dismissed for Improper Venue.

Venue in the Middle District of Florida is not proper with respect to the State's COPPA claim because the Amended Complaint includes no allegations linking the Middle District of Florida to that claim.[6]  Because a tag-along transfer to the MDL court cannot cure the ultimate venue issue, the COPPA claim should be dismissed for improper venue.

### 1.     Venue in the Middle District of Florida Is Not Proper.

Under COPPA, "the State, as parens patriae, may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction" for "any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by the engagement of any person in a practice that violates" Section 6502(b) of the COPPA statute. *See* 15 U.S.C. § 6504(a)(1).  One court has held that the statute's conferral of nationwide service of process is sufficient to establish personal jurisdiction in any forum. *See New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 448 F. Supp. 3d 1263, 1268 (D.N.M. 2020) ("Because COPPA thus provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.") (adopting the nationwide service of process authorization from the ERISA context) (quotations and citation omitted).[7]

But regardless of whether the Court follows the non-binding *Tiny Labs* decision on the question of personal jurisdiction, the State has failed to sufficiently allege that the Middle District of Florida is a

---

[6] Separately, the State's COPPA claim should be dismissed for reasons set forth in Meta's previously filed Motion to Dismiss.  *See* Dkt No. 15.

[7] This nonbinding case is the only case of which Meta is aware holding that COPPA's nationwide service of process provision is sufficient to establish personal jurisdiction.

proper **venue** for its COPPA claim. *See McEwen v. Strickland*, 2020 WL 495220, at *4 (M.D. Fla. Jan. 30, 2020) ("Jurisdiction and venue are distinct issues that require separate analyses, so a Court with jurisdiction over a case can still be an improper venue.").  The COPPA statute provides that venue is proper "in the district court of the United States that meets applicable requirements relating to venue under section 1391 of Title 28." 15 U.S.C. § 6504(e)(1)).  And under Section 1391, venue is proper only in "(1) a judicial district in which any defendant resides, *if all defendants are residents of the State in which the district is located*; [or] (2) a judicial district in which a substantial part of the *events or omissions giving rise to the claim* occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C § 1391 (emphases added).

Venue is not proper in the Middle District of Florida with respect to the State's COPPA claim. The State alleges—as it must—that neither Meta Platforms nor Instagram resides in Florida, and thus not all Defendants are residents of Florida.  Instead, the State contends that venue is proper because "[t]he allegations in th[e] Amended Complaint establish that a substantial part of Defendants' acts or omissions giving rise to Plaintiff's COPPA . . . claims occurred in this District." Am. Compl. ¶ 34.  That statement of a legal conclusion is entitled to no weight in evaluating venue.  *See Corley v. Osprey Ship Mgmt. Inc.*, 2007 WL 201263, at *2 (S.D. Fla. Jan. 24, 2007) ("conclusory statements that a substantial part of the events or omissions giving rise to the claim occurred in this District" are not sufficient to establish venue); *Waste Pro USA, Inc. v. Adams Sanitation Holding Co., LLC*, 2022 WL 19842681, at *3 (M.D. Fla. July 18, 2022) (dismissing claims for improper venue where "Plaintiff has offered nothing more than the conclusory statement that confusion has occurred in this District");  *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("mere conclusory statements[ ] do not suffice"); *APR Energy, LLC v. Pakistan Power Resources, LLC*, 653 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009) (quoting *Iqbal*).

The State does not allege a single fact in the Amended Complaint establishing that a "substantial part" of the "events or omissions" supporting the alleged COPPA claim occurred in the Middle District of Florida.  While the Amended Complaint refers to lawsuits brought by parents and school districts in the Middle District of Florida involving mental health harms, *see* Am. Compl. ¶¶ 6, 8, those allegations do not establish that a "substantial part" of *Meta's* alleged activities giving rise to the COPPA claim occurred in the Middle District of Florida.  Further, while the State alleges that "Florida school districts

1  . . . are also confronting the . . . unlawful collection of under-13 users' data," *id.* ¶ 7, that conclusory

2  allegation again does not establish that the "events or omissions" ***by Meta*** giving rise to the COPPA claim

3  occurred in the Middle District of Florida.

4  The State also alleges that venue is proper in the Middle District of Florida because Meta

5  previously suggested the district as a possible forum for the MDL before the MDL was centralized in the

6  Northern District of California.  Am. Compl. ¶ 35.  This allegation is irrelevant to the Court's venue

7  analysis.  It is well established that proper venue is not required in the MDL forum because venue is

8  assessed by where the case will be sent for trial.  *See e.g., In re FMC Corp. Patent Litig.*, 422 F. Supp.

9  1163, 1165 (JPML 1976) ("Transfers under Section 1407 are simply not encumbered by considerations

10  of in personam jurisdiction and venue."); *Winningham v. Biomet Orthopedics, LLC*, 2012 WL 3860806,

11  at *3 (N.D. Cal. Aug. 31, 2012) (finding venue is improper in the Northern District of California even

12  though that is the venue where the case would eventually be transferred as part of the MDL proceeding);

13  *In re Uber Techns., Inc., Passenger Sexual Assault Litig.*,  2023 WL 9953756, at *1 (N.D. Cal. Dec. 28,

14  2023) (explaining in a pretrial order that "[t]he inclusion of any action in this MDL . . . shall not constitute

15  a determination by this Court that jurisdiction or venue is proper in this District").

16         2.      **The MDL Court Cannot Cure Venue.**

17  Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or

18  division where it might have been brought."  However, a MDL court cannot "invoke § 1404(a) to assign

19  a transferred case to itself for trial."  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S.

20  26, 28 (1998).  Thus, while the State may be able to cure its own venue deficiency by re-filing its case

21  directly in this Court and alleging venue in the Northern District of California—as the 33 State Attorneys

22  General who filed the Multistate Complaint did—the Court cannot effectuate that outcome on the State's

23  behalf via transfer, and so should instead dismiss the State's COPPA claim on grounds of improper venue.

24      **B.**    **The State Fails to State a Claim Against Meta Payments.**

25  The State added Meta Payments as a defendant in the Amended Complaint in an apparent effort

26  to establish personal jurisdiction in Florida over Meta Platforms and Instagram.  But the State fails to

27  allege any connection between Meta Payments and the State's claims.  For that reason, the claims against

28  Meta Payments should be dismissed and the State may not use that putative Defendant's Florida

incorporation as a bootstrap for personal jurisdiction over the originally named Defendants. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1274 (M.D. Fla. 2015) (quoting *Iqbal*).

The State attempts to establish a connection between its claims and Meta Payments by alleging that "Meta's financial connection to its users, including advertising, is made through Meta Payments" and that Meta Payments "is the licensed money transmitter for Meta and allows its users to send money virtually over its Platforms." Am. Compl. ¶¶ 22, 26. Even accepting those allegations as true on this Motion to Dismiss (they are not), *see Spiral Direct, Inc.*, 151 F. Supp. 3d at 1274, they do not support claims against Meta Payments because the State's COPPA and FDUTPA claims are not based on the transmission of money or the sending of money "virtually" over Meta's services either by users or by third parties who advertise over Meta's services. The Amended Complaint alleges no connection between users' transmission of money and either the COPPA or FDUTPA claims.

Rather than alleging facts that would state a claim against Meta Payments for violations of COPPA or FDUTPA, the State instead seeks to hold Meta Payments liable under its theory that "Meta operates as a common enterprise." Am. Compl. ¶¶ 25, 27. But Meta Payments cannot be held liable under a theory of common-enterprise liability, for at least two reasons.

***First***, the State has not alleged Meta Payments' participation in any activity related to the State's COPPA and FDUTPA claims. Even assuming that common-enterprise liability applies to COPPA and FDUPTA claims,[8] the State is required to allege that Meta Payments materially ***participated or cooperated***

---

[8] Common-enterprise liability is generally associated with claims brought under the FTC Act—claims the State does not assert here. *See, e.g., FTC v. Wash. Data Resources*, 856 F. Supp. 2d 1247, 1271 (M.D. Fla. 2012) ("If the structure, organization, and patten of a business venture reveal a 'common enterprise' or a 'maze' of integrated business entities, the FTC Act disregards corporateness."). The common-enterprise theory is distinct from other theories of liability that similarly seek to hold one entity liable for the conduct of another. *Cf. JPMorgan Chase Bank, N.A. v. G7 Productivity Sys., Inc.*, 2012 WL 6044732, at *8 (S.D. Ohio Dec. 5, 2012) ("The issue of whether Neovi and G7 were interrelated and engaged in a common enterprise for purposes of the FTC Act is not the same as whether the two entities were alter egos."). Meta is not aware of any case extending common-enterprise liability to COPPA claims or of any Florida state court case extending common-enterprise liability to FDUTPA claims.

*in* the unlawful conduct allegedly undertaken by the common enterprise.  *See FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1269-70 (S.D. Fla. 2019) (finding common-enterprise liability based on "***extensive cooperation*** between the" entities "to induce customer to purchase their services" such that the entities "'maintained an unholy alliance'") (emphasis added; citation omitted); *FTC v. Direct Benefits Grp.*, 2013 WL 3771322, at *19 (M.D. Fla. July 18, 2013) ("corporate entities ***worked cooperatively*** and complemented one another in inducing consumers to enroll in the discount club products") (emphasis added); *see also FTC v. Ivy Cap., Inc.*, 2013 WL 1224613, at *14 (D. Nev. Mar. 26, 2013) ("[while] the roles of each entity varied, [they] ***all had a distinct role*** to play as part of the scam") (emphasis added), *aff'd in relevant part*, 616 Fed. App'x 360 (9th Cir. 2015); *FTC v. AMG Servs. Inc.*, 2012 WL 6800525, at * 7 (D. Nev. Nov. 1, 2012) ("In the description of each defendant, the FTC explains ***the role each defendant played*** and how each defendant is related to others.") (emphasis added); *FTC v. Consumer Health Benefits Ass'n*, 2012 WL 1890242, at *2 (E.D.N.Y. May 23, 2012) ("***The role played by each*** of the newly-added defendants in the venture was one that bespeaks a common enterprise.") (emphasis added).  Because the State makes no allegation that Meta Payments "participated in" or "cooperated in" the alleged unlawful conduct by Meta Platforms and Instagram—*i.e.*, the alleged collection of data from users under 13, the design of allegedly "addictive" app features, and the making of allegedly deceptive statements regarding the safety of Meta's services—it fails to allege facts sufficient to support a claim against Meta Payments based on a theory of common-enterprise liability, even if that theory applies to these claims.

Rather than alleging any such "participation" or "cooperation," the State merely alleges facts reflecting that Meta Payments is a subsidiary of Meta Platforms.  The Amended Complaint alleges that Meta Platforms "operates its business primarily through its subsidiaries including . . . Meta Payments," Am Compl ¶ 15, that Meta Payments is "within the Meta family of products,"[9] *id.* ¶ 26, that "Meta employees use shared email systems," *id.* ¶ 25, that "Meta's internal divisions and teams work

---

[9] In purported support of this allegation, the State cites Meta Platforms' Form 10-Q from Q2 2023.  *See* Am. Compl. ¶ 26 n. 16.  The form identifies the "family" of products to include "Facebook, Instagram, Messenger, and WhatsApp products."  *See* Meta Platforms, Inc. Form 10-Q, 3 (Q2 2023), https://archive.ph/MSvSt.  Meta Payments is *not* on the list of the "family" of products.

collaboratively to govern Meta's day-to-day operations," *id.*, and that "Meta Defendants share corporate headquarters and senior executives," *id.*  The State also alleges that Meta Payments "oversees all commerce and fintech work across Meta's technologies and platforms." *Id.* ¶ 27.  These are nothing more than allegations that Meta Payments has a functional role as a corporate subsidiary within Meta.  But Meta Payments' status as a corporate subsidiary alone cannot support liability for the FDUTPA and COPPA claims that are based entirely on allegations concerning its corporate parent, Meta Platforms.  *See Anderson v. Deere & Co.*, 852 F.2d 1244, 1247 (10th Cir. 1988) (subsidiaries not liable for acts of parent where "the subsidiaries were not involved in the transactions giving rise to this litigation"); *McCabe v. Henpil, Inc.*, 889 F. Supp. 983, 992 (E.D. Tex. 1995) ("the subsidiary corporation is not liable for the acts of the parent or shareholder merely on the basis of alter ego").  As discussed above, a corporate subsidiary can only be held liable for the acts of its corporate affiliates where there are allegations of its participation or cooperation in the allegedly unlawful conduct.  The State makes no such allegation with respect to Meta Payments and its attempt to rely on the theory as a personal jurisdiction loophole should be rejected.

**Second**, the State does not allege—nor could it—that Meta Platforms formed Meta Payments as a mere "front" to avoid liability.  *Compare NCR Credit Corp. v. Underground Camera, Inc.*, 581 F. Supp. 609, 612-13 (D. Mass. 1984) (subsidiary not liable for acts of parent where "[t]here [wa]s no evidence that [parent] used [subsidiary] as an instrument to perpetuate a fraud"); *with FTC v. Life Mgmt. Servs. of Orange Cnty, LLC*, 350 F. Supp. 3d 1246, 1257-58 (M.D. Fla. 2018) (some corporations "were used as fronts," while another corporation was created because the original entities "were subject to criminal investigations and civil liabilities"); *FTC v. Ideal Fin. Sols., Inc.*, 2015 WL 4032103, at *9 (D. Nev. June 30, 2015) (parent used subsidiary to temporarily place revenues generated from shell accounts before transferring the revenue to the parent's accounts).

For these reasons, the State has failed to allege that Meta Payments may be liable under a common-enterprise theory for the COPPA and FDUPTA claims asserted against Meta Platforms.  Without any allegations of conduct by Meta Payments related to either the COPPA or FDUTPA claims, those claims should be dismissed.  *See, e.g., Krinsk v. SunTrust Banks, Inc.*, 2010 WL 11475608, at *6, n.6 (M.D. Fla. Jan. 8, 2010) (granting motion to dismiss where "Plaintiff has not pled facts which would support an argument that [defendants] operated as a common enterprise"); *Mao v. Global Trust Mgmt.,* 2022 WL

989012, at *7 (E.D. Va. Mar. 31, 2022) (granting motion to dismiss where "[t]he Amended Complaint does not plead sufficient facts to establish liability for several Defendants . . . under [the] theor[y] of . . . common enterprise liability").

### C.     The FDUTPA Claim Should Be Dismissed for Lack of Personal Jurisdiction.

The State's FDUTPA claim against Meta Platforms and Instagram should be dismissed for lack of personal jurisdiction in Florida, for three principal reasons: (1) Meta Payments' presence in Florida cannot establish personal jurisdiction over Meta Platforms or Instagram because the State has failed to allege that Defendants operate as a common enterprise that would support disregarding their separate corporate identities; (2) setting aside the point that the COPPA claim should be dismissed on grounds of improper venue, the COPPA claim cannot not confer pendent personal jurisdiction because the COPPA and FDUTPA claims relate to distinct facts; and (3) the FDUTPA claim does not arise out of or relate to Meta's alleged contacts with Florida.

### 1.     Meta Payments' Presence in Florida is Insufficient to Establish Personal Jurisdiction over Meta Platforms and Instagram.

The State seeks to establish personal jurisdiction over Meta Platforms and Instagram by imputing Meta Payments' presence in Florida to Meta Platforms and Instagram.[10]  This argument can be rejected, first of all, because Meta Payments is not a proper Defendant in this case.  *See supra* Part III.B.  But even if the State had properly alleged claims against Meta Payments, it has failed to allege facts sufficient to impute the Florida presence of Meta Payments to Meta Platforms and Instagram.

As an initial matter, that Meta Payments is a subsidiary of Meta Platforms is not, without more, sufficient to establish jurisdiction over Meta Platforms or Instagram.  *See e.g., Dev Corp. of Palm Beach v. WBC Constr., LLC*, 925 So.2d 1156, 1161 (Fla. 4th DCA 2006) ("a parent corporation is not subject to jurisdiction in Florida solely because its subsidiary does business here"); *State v. Am. Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA 1998) ("The law is clear that the mere presence of a wholly owned

---

[10] It is not clear whether the State seeks to impute Meta Payments' presence to Meta Platforms and Instagram for the purpose of establishing general or specific personal jurisdiction.  Regardless, for the reasons explained below, the State has not alleged facts sufficient to impute Meta Payments' presence in Florida to the other Defendants.

subsidiary is insufficient to form a basis for the assertion of personal jurisdiction."); *Gadea v. Star Cruises, Ltd.*, 949 So.2d 1143, 1146 (Fla. 3rd 2007) (subsidiary's "activity in Florida [cannot] form the basis for a finding of general jurisdiction over" parent corporation); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) ("a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there").

But, the State has not alleged facts suggesting anything more than a parent-subsidiary relationship between Meta Platforms and Meta Payments. The State has not alleged that Defendants "bound themselves together" in an effort to target Florida, *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1096 (N.D. Okl. 2003), or any facts showing that Meta Payments "did [anything] to promote or facilitate the challenged conduct in this case," *FTC v. Noland*, 2021 WL 289659, at *4 (D. Ariz. 2021). Nor has the State alleged that Meta Payments "is the entit[y] through which . . . [Meta Platforms] conduct[s] substantial business activity in Florida." *Meier*, 288 F.3d at 1272; *see Walden v. Fiore*, 571 U.S. 277, 279 (2014) (the "proper question is whether the defendant's conduct connects [the defendant] to the forum in a meaningful way").

Rather, as described above, *supra* Part III.B, in support of its conclusory allegation that "Meta and its subsidiaries operate as a common enterprise while engaging in the [alleged] unfair, deceptive and other unlawful acts," Am. Compl. ¶ 32, the State has only alleged facts tending to show that the parent corporation, Meta Platforms, is involved in the operation of its subsidiary, Meta Payments, or that the parent and subsidiary shared resources and officers. *See supra* pp. 8-9. Those facts, taken as true on a motion to dismiss, are insufficient to establish jurisdiction over the parent, Meta Platforms. *See Dev. Corp. of Palm Beach v. WBC Constr., LLC*, 925 So.2d 1156, 1162 (Fla. 4th DCA 2006) (allegations of "involvement," such as "the parent had a general executive responsibility for the subsidiary's operation[,] . . . reviewed and approved the major policy decisions of the subsidiary[,] . . . [and] established goals and gave directives to the subsidiary[,]" are "insufficient" to establish jurisdiction) (citations and quotations omitted); *see also Am. Tobacco Co.*, 707 So.2d at 856 ("directives . . . do[ ] not show the **operational** control of the subsidiary which is necessary to establish personal jurisdiction") (emphasis added); *Holbrook v. Mazda Motor Corp.*, 2018 WL 1571905, at *9 (E.D. Ky. Mar. 20, 2018) (allegations that entities "share[d] a corporate brand, research and development resources, two officers and directions, and

11

are generally a part of a common enterprise, are insufficient . . . for purposes of jurisdiction.") (citation and quotations omitted).  Nor do these allegations show that Meta Platforms exerts the "high and very significant" "level of control" over Meta Payments necessary to impute Meta Payments' presence in Florida to Meta Platforms.  *See Dev. Corp. of Palm Beach*, 925 So.2d at 1161 ("[t]he amount of control exercised by the parent must be high and very significant" to "support[ ] jurisdiction").

Without any allegations of Meta Payments' role in the alleged unlawful conduct, the State's allegation that Meta operates as a common enterprise is too conclusory to impute Meta Payments' presence in Florida to Meta Platforms or Instagram.  *See Lillard*, 267 F. Supp. 2d at 1098 ("Plaintiffs' general, conclusory allegations of" "engag[ing] in a . . . common enterprise" "is insufficient to justify the exercise of general personal jurisdiction"); *Perez v. Bath & Body Works, LLC*, 2022 WL 2756670, at *9 (N.D. Cal. July 14, 2022) ("th[e] generic allegation" "that Defendants engaged in 'a . . . common enterprise' does not suffice"); *Renne v. NextEra Energy, Inc.*, 2022 WL 2918123, at *7 (D. Kan. July 25, 2022) ("other than frequently repeating this refrain" that Defendants are liable based on a common enterprise theory, "Plaintiff does little to actually show that this is the case"); *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 386 (S.D.N.Y. 2009) (granting motion to dismiss where allegations of a common enterprise "include[d] nothing more than conclusory allegations that the Amaranth Defendants are 'a tightly knit association-in-fact' and allegations that they shared common ownership and offices").

2.     **The Court Cannot Exercise Pendent Jurisdiction over the FDUTPA Claim.**

As demonstrated above, *supra* Part III.A, the State's COPPA claim should be dismissed for improper venue.  Without a COPPA claim, the State cannot invoke supplemental jurisdiction to establish subject matter jurisdiction with respect to its FDUTPA claim.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well."); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (same); *see also* 28 U.S.C. § 1367(c)(3) (a court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction").

But even if the COPPA claim were not dismissed for improper venue, COPPA's provision for nationwide service of process is not sufficient to establish pendent personal jurisdiction over the State's separate FDUTPA claim. *See KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009) ("A court must conduct this [personal jurisdiction] inquiry as to each defendant . . . and . . . as to each claim separately."); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant.").

Courts have discretion to invoke pendent personal jurisdiction only where the pendent claim "arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp.*, 368 F.3d at 1180; *see also Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1283 (M.D. Fla. 2000) (similar). Here, the State's COPPA claim does not arise out of the same nucleus of operative facts as its FDUTPA claim. The State's COPPA claim is narrowly focused on two questions: (1) whether Meta had "actual knowledge" of under-13 users and (2) whether Instagram and Facebook are "directed to" children. Am. Compl. ¶¶ 107-129. By contrast, the State's FDUTPA claim focuses primarily on (1) a broad array of "design features" that allegedly "induce young users' harmful, extended and compulsive social media use" and (2) allegedly deceptive statements by Meta regarding the safety of its services and its commitment to the well-being of users. *Id.* ¶¶ 54–106. For this reason, the State's FDUTPA claim does not arise out of a common nucleus of operative facts with its COPPA claim because "the facts necessary to prove the [state law] claim and the theory of recovery" are "separate from the federal claim[ ]." *Ray v. Tenn. Valley Authority*, 677 F.2d 818, 826 (11th Cir. 1982). Accordingly, the Court cannot exercise pendent personal jurisdiction over the State's FDUTPA claim even if the COPPA claim is not dismissed for improper venue.

3.    **Florida Lacks Specific Personal Jurisdiction over Meta Platforms and Instagram.**

Because the State cannot bypass the jurisdictional analysis for its FDUTPA claim against Meta Platforms and Instagram by relying on Meta Payments or its COPPA claim, the State must allege sufficient facts to support the direct exercise of personal jurisdiction in Florida over those entities. The Amended Complaint fails to do so.

The State does not, and could not, allege that general personal jurisdiction exists over Meta Platforms and Instagram in Florida. Rather, the State must allege sufficient facts to support the exercise of specific personal jurisdiction in Florida over Meta Platforms and Instagram. *See Advantus, Corp. v. Sandpiper of Cal., Inc.*, 2019 WL 4751725, at *30 (M.D. Fla. Sept. 30, 2019) (personal jurisdiction "must be established for each individual claim and each defendant"). In order for a court to exercise specific personal jurisdiction consistent with due process, (1) the defendant must have "purposefully availed itself of the forum" and (2) the plaintiff's claims must "arise out of or relate to" the defendant's forum-directed activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *Louis Vuitton Malletier, S.A. v. Mossier*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Burger King*).

> **a)  The State's FDUTPA Claim Does Not "Arise Out Of or Relate To" Meta's Purported Contacts with Florida.**

Due process requires that "the *suit*" must "aris[e] out of or relat[e] to the defendant's **contacts with the forum**." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (emphases added); *see Walden v. Fiore*, 571 U.S. 277, 277 (2014) (specific jurisdiction is based on "the relationship among the defendant, the forum, and the litigation"); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) ("a fundamental element of the specific jurisdiction calculus is that the plaintiff's claim must 'arise out of or relate to' at least one of defendant's contacts with the forum").[11] Because there must be an "affiliation between the forum and the underlying controversy," when "there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) (quotation omitted). "Even regularly occurring" activities in a state "do not justify the exercise of jurisdiction over a claim **unrelated**" to those activities. *Id.* (quotation omitted) (emphasis added).

---

[11] The requirement that the suit "arise from" the defendant's contacts in the State is also imposed by Florida's long-arm statute. *See SkyHop Techns., Inc. v. Narra*, 58 F.4th 1211, 1227-28 (11th Cir. 2023) ("[Florida's] long-arm statute also imposes a connexity requirement between the enumerated activity in Florida and the plaintiff's cause of action" which "stems from the long-arm statute's mandate that, to support jurisdiction, the cause of action must 'aris[e] from' the enumerated activity.") (quoting Fla. Stat. Ann. § 48.193(1)(a)).

The State cannot establish that its FDUTPA claims "arise out of" or "relate to" Meta's alleged contacts with Florida.  The State alleges that (i) Meta has an office in Miami and posts job openings for that office, Am. Compl. ¶ 23, (ii) Meta regularly sells advertising to Florida entities, *id*. ¶¶ 50-52, (iii) Meta executive Sheryl Sandberg met with Florida entrepreneurs to discuss Meta's "small business assistance programs during the coronavirus pandemic," *id.* ¶ 52, (iv) Meta has "initiatives to minority-owned businesses," *id.*, and (v) Meta has "programs designed to teach entrepreneurs how to promote their businesses via Facebook," *id.* ¶ 53.  But none of those alleged contacts with Florida has anything to do with the State's claims that Meta's design features purportedly "addicted" teen users to its services, or that Meta purportedly made misrepresentations about its services.  Accordingly, these alleged contacts cannot establish personal jurisdiction over Meta in Florida, because without an "affiliation between the forum and the underlying controversy," "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Bristol-Myers Squibb Co.*, 582 U.S. at 264.

Critically, the State does not allege that its FDUPTA claims based on Meta's design decisions or purported misrepresentations have any connection to Florida.  That is fatal to the State's attempt to invoke personal jurisdiction over Meta Platforms and Instagram with respect to its FDUTPA claim.  *See id*. at 259 (plaintiffs' design defect claim did not arise out of or relate to defendant's California contacts because "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California").

> **b)** **The State Cannot Establish "Purposeful Availment" Sufficient to Support Personal Jurisdiction over Meta Platforms and Instagram.**

Florida courts lack specific personal jurisdiction over Meta Platforms and Instagram without a showing that they "purposely availed" themselves of the forum.  *See Burger King Corp.*, 471 U.S. at 472.  While the Court need not reach this issue of "purposeful availment," given that the State's FDUTPA claims do not "arise out of" or "relate to" Meta's alleged contacts with Florida, the State's inability to establish this separate requirement of "purposeful availment" is a further reason that Florida courts lack personal jurisdiction over Meta Platforms and Instagram with respect to the State's FDUTPA claim.

In the context of social media services or other internet providers, "purposeful availment" requires a showing of some ***specific targeting*** of the forum state in a manner that differentiates the service's

activities vis-à-vis the forum state from its activities in every other state.  *See, e.g., Fidrych v Marriott Int'l, Inc.,* 952 F.3d 124, 143 (4th Cir. 2020) ("even though Marriott's website is interactive, Marriott does not use it to **target** South Carolina residents **in particular**") (emphases added); *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 785 (5th Cir. 2021) ("Merely running a website that is accessible in all 50 states, but that does not **specifically target** the forum state, is not enough . . . to establish personal jurisdiction.") (emphasis added); *Johnson v. TheHuffingtonPost.Com*, 21 F.4th 314, 318 (5th Cir. 2021) ("[I]f the site interacts with its visitors, sending and receiving information from them, we must then apply our usual tests to determine whether the virtual contacts that give rise to the plaintiff's suit arise from the defendant's **purposeful targeting** of the forum state.") (emphasis added); *Evans v. Huffington Post.com, Inc.*, 2022 WL 21320601, *8 (S.D. Miss. Apr. 27, 2022) ("It is not enough that HuffPost had a contractual relationship with every user in the United States, including its Mississippi visitors. . . .  Instead, under *Calder*, *Revell*, and *Johnson*, there must be evidence that the defendant **specifically directed** his tortious conduct at the forum.") (emphasis added); *Yohananov v. Bris Avrohom of Fair Lawn*, 2022 WL 3042521, at *4 (M.D. Fla. Aug. 2, 2022) (no jurisdiction where "there [wa]s no indication that the allegedly tortious website was **expressly targeted** at the State of Florida") (emphasis added).

In its jurisdictional allegations, the State alleges that Instagram "has become widely popular" in Florida, that Floridians have been "harmed . . . from social media use," that Florida cities are "Instagrammable," and that certain Florida cities have "hashtags" on Instagram, Am. Compl. ¶¶ 6, 17, 21. These allegations fail, as a matter of law, to allege purposeful availment.  It is well established that an interactive website's or service's in-forum user base cannot establish purposeful direction or availment of the forum.  *See, e.g.*, *Johnson*, 21 F.4th at 320 ("Texans visited the site, clicking ads and buying things, . . . but those visits reflect only HuffPost's universal accessibility, not its purposeful availment of Texas"). That is because, among other reasons, personal jurisdiction "must arise out of contacts that the defendant himself creates with the forum State."  *Walden*, 571 U.S. at 1122 (quotation, citation, and emphasis omitted).  Otherwise, a defendant "could be said to expressly aim at **any** forum in which the user views the website . . . run[ning] afoul of the Supreme Court's directive in *Walden* and 'impermissibly allowing a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020) (quotation omitted) (emphasis in original); *Johnson*,

1
2
21 F.4th at 325 ("[C]licks, visits, and views from forum residents cannot alone show purposeful availment.").

3
4
5
6
7
8
9
10
11
12
13
14
Similarly, while the State alleges that Meta made various misrepresentations about its services, it does not allege that any of those statements specifically targeted Florida in any way. Given that failure, the State cannot show that any of the alleged representations were purposefully directed at Florida or could give rise to personal jurisdiction over the State's FDUTPA claim. *See, e.g.*, *Sun Bank, N.A. v. E.F. Hutton & Co.*, Inc., 926 F.2d 1030 (11th Cir. 1991) (no personal jurisdiction where allegedly fraudulent misrepresentations made over the telephone were not purposefully directed at Florida residents); *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. App'x. 775, 794 (5th Cir. 2007) (no personal jurisdiction where defendants did not purposefully direct allegedly misleading marketing materials into Texas); *Buelow v. Plaza Motors of Brooklyn, Inc.*, 2017 WL 2813179, at *5 (E.D. Cal. June 29, 2017) (no personal jurisdiction where defendant "did not expressly aim its misrepresentations at California"). Indeed, the Amended Complaint does not allege ***any*** suit-related conduct by Meta specifically targeting Florida.[12]

15
**IV.    Conclusion**

16
17
For the foregoing reasons, Meta respectfully requests that the State's Amended Complaint be dismissed with prejudice.

18
19
20
Dated: June 18, 2024                                    Respectfully submitted,

21
**COVINGTON & BURLING LLP**

22

23
*/s/ Timothy C. Hester*

24
Timothy C. Hester, *pro hac vice*
thester@cov.com

25
26
27
28
---
[12] The State's conclusory allegation that Meta's conduct is "Florida-targeted," Am. Compl. ¶ 51, does not suffice to support personal jurisdiction. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2008) ("conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction"); *Car-Freshner Corp. v. Meta Platforms, Inc.*, 2023 WL 7325109, at *3 (N.D.N.Y. Nov. 7, 2023) ("Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [plaintiff's] burden.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Paul W. Schmidt, *pro hac vice*
  pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
  pajones@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Nathan E. Shafroth, SBN 232505
  nshafroth@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: +1 (415) 591-6091

Emily Johnson Henn (State Bar No. 269482)
  ehenn@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc.,
Instagram, LLC, Meta Payments, Inc., Meta Platforms
Technologies, LLC, Facebook Payments, Inc., Siculus,
Inc., Facebook Operations, LLC, and Mark Elliot
Zuckerberg*