# EXHIBIT A

ELECTRONICALLY FILED
CLEBURNE COUNTY CIRCUIT COURT
HEATHER SMITH, CIRCUIT CLERK
2024-May-15  12:13:00
12CV-23-65
C16D01 : 15 Pages

IN THE CIRCUIT COURT OF CLEBURNE COUNTY, ARKANSAS
CIVIL DIVISION

| | | |
|---|---|---|
| STATE OF ARKANSAS, ex rel. TIM GRIFFIN, ATTORNEY GENERAL | | PLAINTIFF |
| v. | Case No. 12CV-23-65 | |
| TIKTOK INC.; TIKTOK PTE. LTD.; BYTEDANCE INC.; and BYTEDANCE LTD. | | DEFENDANTS |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Before the Court is the Defendants' Motion to Dismiss the State's First Amended Complaint. The matter has been fully briefed, and this Court held a hearing on the Motion on February 7, 2024. For the reasons set forth below, Defendants' Motion to Dismiss the First Amended Complaint is **DENIED**.

### I. PROCEDURAL HISTORY

The State filed its original Complaint on March 28, 2023. On June 13, 2023, Defendants moved to dismiss the State's original Complaint. The State responded to the Defendants' Motion to Dismiss on August 9, 2023. On August 18, 2023, the Defendants filed a Motion for Protective Order, Stay of Discovery, and Extension of Time pending disposition of their Motion to Dismiss.

On October 4, 2023, the State filed its First Amended Complaint. On November 8, 2023, the Defendants moved to dismiss the First Amended Complaint. The State responded to the Defendants Motion to Dismiss the First Amended Complaint on December 1, 2023. The Court held a hearing on the Motion to Dismiss the First Amended Complaint on February 7, 2024. At

the hearing, the Court requested that each party prepare a proposed order concerning Defendants' Motion to Dismiss the First Amended Complaint. The Court also stayed discovery until it ruled on Defendants' pending Motion to Dismiss the First Amended Complaint.

## II. LEGAL STANDARD

When presented with a motion to dismiss, a court must treat the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party. *Perry v. Baptist Health*, 358 Ark. 238, at 244–248, 189 S.W.3d 54, 57–60 (2004). All reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* In determining whether to dismiss, it is improper for the court to look beyond the complaint. *Battle v. Harris*, 298 Ark. 241, at 243, 766 S.W.2d 431, 432 (1989); *Smith v. Eisen*, 97 Ark. App. 130, 138–39, 245 S.W.3d 160, 168 (2006). Thus, the court may dismiss only where the complaint fails to include "(1) a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim and is the proper venue and that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader considers himself entitled." Ark. R. Civ. P. 8(a). Arkansas's appellate courts have further noted that the standard imposed upon the pleading party is "lenient." *Clayton v. Batesville Casket Co., Inc.*, 2015 Ark. App. 361, at 6, 465 S.W.3d 441, 445.

## III. ANALYSIS

Defendants have moved to dismiss on several grounds. First, Defendants argue that this Court does not have personal jurisdiction over each of the Defendants. Second, Defendants argue that the State has not pleaded the essential elements of a violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 *et seq.* Third, Defendants argue that Section 230 of the Communications Decency Act bars the State's claims. Finally, Defendants argue that

the State's unjust enrichment claim fails a matter of law. The Court will address each of these arguments in turn.

   1.   *This Court has specific personal jurisdiction over the Defendants.*

Defendants argue that they have not purposefully availed themselves of doing business in Arkansas. Arkansas courts have personal jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Lawson v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84, at 6, 569 S.W.3d 865, 869–70 (citing Ark. Code Ann. § 16-4-101(A–B)). In order to establish specific personal jurisdiction: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from or relate to the defendant's contacts with the forum state; and (3) the acts of the defendant or consequences caused by the defendant must have substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Id.* at 9–10, 569 S.W.3d at 871 (citing *Ficarelli v. Champion Petfoods USA, Inc.*, No. 3:18-cv-00361, 2018 WL 6832075, at *3 (M.D. Tenn. Dec. 28, 2018)). The Court finds that the State's First Amended Complaint pleads sufficient facts to establish specific personal jurisdiction over the Defendants.

First, Defendants have purposefully availed itself of the privilege of doing business in Arkansas because Defendants "serve[] a market for a product" in Arkansas, namely, the market for social media applications. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1022 (2021). The TikTok app has been downloaded at least hundreds of thousands of times in Arkansas. First Am. Compl. ¶ 21. Defendants are serving content to and collecting data from all of those devices and accounts located in Arkansas. First Am. Compl. ¶ 21. The State has also alleged that Defendants know and rely on the location of its Arkansas users to target them with

content and advertisements, creating an Arkansas-specific experience inside the TikTok app. First Am. Compl. ¶¶ 22–24. In this way, Defendants have designed its app to encourage Arkansas users to return to the app frequently and for long durations, which increases Defendants' ability to earn advertising revenue. First Am. Compl. ¶¶ 22–23, 48, 51. All this activity is in service of continuing bilateral contractual relationships that Defendants have entered into with at least hundreds of thousands of Arkansas users—relationships that the State alleges many Arkansans would not have agreed to absent the deceptive statements that are the subject of this lawsuit. *See, e.g.*, First Am. Compl. ¶ 13, 31, 62, 66, 69, 218; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (finding purposeful availment where a defendant "has created 'continuing obligations' between [it]self and residents of the forum," including when "transacted solely by … wire communications").

In addition, Defendants have availed themselves of the financial rewards of operating within the State of Arkansas. First Am. Compl. ¶ 25. For the period of May 1 through August 31, 2023, Defendant TikTok, Inc. reported to the Arkansas Department of Finance and Administration taxable sales in Arkansas of $1,808,956 and state and local remittances of vendor use taxes totaling $70,313. First Am. Compl. ¶ 26. Defendant TikTok, Inc. also has employees located in Arkansas. First Am. Compl. ¶ 27. In 2021, TikTok, Inc. employed two people in Arkansas with combined wages of $567,874.71. First Am. Compl. ¶ 27 In 2022, TikTok, Inc. employed five people in Arkansas with combined wages of $547,395.32. First Am. Compl. ¶ 27. Defendants are also doing business *with the State of Arkansas*. First Am. Compl. ¶ 32. Over the past five years, Defendants have sold $284,967.06 in advertising to the Arkansas Department of Health that was, in part, estimated to reach 500,000 English-speaking TikTok users ages 13–24 located in the State of

Arkansas in one instance and 300,000 TikTok users ages 16–24 located in the State of Arkansas in another. First Am. Compl. ¶ 32.

Defendants have also targeted Arkansas as a market for TikTok. First Am. Compl. ¶ 34. They have awarded grant money to Arkansas educators as part of their effort to persuade Arkansas parents that TikTok is safe and appropriate for young people. First Am. Compl. ¶ 34. TikTok has internally identified Arkansas as a "Key Market[]," for "pushing our safety narratives among parenting audiences" and "[d]riv[ing] perception among elite audiences of TikTok as a place where parents feel comfortable for their teens, and want to join." First Am. Compl. ¶ 34. An internal TikTok document specifically lists Arkansas as one of the places where TikTok seeks to "[b]uild trust and establish TikTok as a safe and welcoming place for parents, families, and teens to create, share, and watch videos." First Am. Compl. ¶ 34.

Defendants dispute that these contacts constitute "purposeful availment" because in its view, Defendants' allegedly unlawful actions and allegedly deceptive statements and omissions did not occur in Arkansas and did not specifically target Arkansas. Def.'s Br. in Supp. of Mot. to Dismiss at 12–14. Defendants misunderstand the relevant legal test, however, and cannot hide behind the scale of its business operations to evade personal jurisdiction in Arkansas.

"[W]hat matters" for specific personal jurisdiction "is [TikTok's] structuring of its own activities so as to target the [Arkansas] market." *NBA Props., Inc. v. HANWJH*, 46 F. 4th 614, 624 (7th Cir. 2022). The fact that Arkansans have downloaded the TikTok app is not the "result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475). It is the direct result of Defendants' business and how it has "structured" its operations to "invite" downloads in Arkansas, as detailed above. *NBA Props.*, 46 F. 4th at 625; *see also Doffing v. Meta*, 2022 WL 3357698, at *4 (D. Or. July 20, 2022). Defendants expected, if not encouraged, the

Arkansas contacts that give rise to this case: representations to Arkansas consumers about the safety of the TikTok app and the accessibility of users' digital data. These representations induced Arkansans to enter into continuous bilateral contracts with Defendants that provided the company with the valuable consideration it seeks—user data in exchange for the use of its app. This data allows Defendants to target Arkansans with location-based advertisements, which are central to their business model. Moreover, Defendants' collection of data and targeted advertisements depends on minors' consistent use of the app. Thus, TikTok's alleged addictiveness is also central to its contacts with Arkansans.

Second, the State's claims "relate to" Defendants' contacts with Arkansas. *Ford Motor Co.*, 141 S. Ct. at 1025–26. Arkansans download the TikTok app in the Apple App Store, Google Play Store, or Microsoft Store. *E.g.*, First Am. Compl. ¶ 3–8, 13–17, 52–69. When they do, they are presented with Defendants' allegedly false age-rating representations. *Id*. Every Arkansas user therefore receives this information when they consider whether to download the TikTok app, and that means that these allegedly false and deceptive representations and omissions relate to Defendants' contacts with Arkansas—the thousands of Arkansas user downloads of the TikTok app.

Third, as a global company doing business throughout the United States, it is entirely reasonable for TikTok to expect that it could be haled into court in Arkansas, especially considering TikTok profits handsomely off Arkansas minors. TikTok does not dispute this aspect of the specific personal jurisdiction analysis. Further, Arkansas has a strong interest in providing a forum for the adjudication of claims under the Arkansas Deceptive Trade Practices Act, a broad remedial statute. The Court finds that the State has pleaded sufficient facts to establish specific personal jurisdiction over Defendants.

    *2.*    *The State has pleaded claims under the Arkansas Deceptive Trade Practices Act.*

Defendants claim that the State's ADTPA claims fail for several reasons. First, Defendants claim that their questionnaire responses for the TikTok platform, its age ratings, its public statements, and its statements about Restricted Mode are statements of subjective opinion that cannot lead to liability under the ADTPA. Def.'s Br. in Supp. of Mot. to Dismiss at 22. Defendants also claim the State has not alleged that the questionnaire responses and statements about Restricted Mode are false or misleading in any material respect. *Id.* Defendants further argue that the State's claim based on the platform's addictiveness fails because the State has not alleged a consumer-oriented act that is misleading in a material respect, nor an actionable omission. *Id.* Finally, Defendants claim that all of the State's ADTPA claims must be dismissed because the TikTok app is not a good or service or that Defendants' acts were "consumer-oriented." *Id.* For ease of reference, the Court references the below table that outlines the State's claims.

| Count # | Claim Description | Statutory or Legal Basis |
|---|---|---|
| Count I | Misrepresentation as to Alcohol, Tobacco, and Drug References | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count II | Misrepresentation as to Sexual Content and Nudity | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count III | Misrepresentation as to Mature and Suggestive Themes | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count IV | Misrepresentation as to Profanity and Crude Humor | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count V | Misrepresentation as to 12+ Age Rating in the Apple Store | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |

| Count # | Claim Description | Statutory or Legal Basis |
|---|---|---|
| Count VI | Misrepresentation as to the T for Teen Rating in the Google Play and Microsoft Stores | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count VII | Cumulative Deceptive Representations | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count VIII | Misrepresentation as to Restricted Mode | Ark. Code Ann. § 4-88-107(a)(1), (10) |
| Count IX | Deception and Omission of Material Facts Related to Content and Age Ratings | Ark. Code Ann. § 4-88-108(a)(1–2) |
| Count X | Deception and Omission of Material Facts from TikTok's Community Guidelines | Ark. Code Ann. § 4-88-108(a)(1–2). |
| Count XI | Addictiveness—Unconscionability, Misrepresentations, and Omissions | Ark. Code Ann. § 4-88-107(a)(1), (10), (12) |
| Count XII | Unjust Enrichment | Common Law |

A.   **The TikTok App is a service under the ADTPA.**

The ADTPA applies to "services," among other things, and defines "services" as "work, labor, or other things purchased that do not have physical characteristics." Ark. Code Ann. § 4-88-102(7). Notably, the ADTPA does not define "purchase." *See id.* The State has adequately alleged that the TikTok app is a service. Although Defendants do not charge a monetary fee for the use of the TikTok app, users provide valuable consideration to TikTok—their data. First Am. Compl. ¶ 31. Consumers agree, by bilateral contract, to provide their valuable personal data to Defendants in return for their use of the TikTok app. *E.g.*, First Am. Compl. ¶¶ 21–24, 51, 181–89. This

contractual exchange is central to TikTok's business model. *E.g.*, First Am. Compl. ¶¶ 11, 31, 51, 181. The State has adequately pleaded that the TikTok app is a "service" under the ADTPA.

### B. Defendants' alleged misrepresentations in Counts I through X are actionable under the ADTPA.

The Court concludes that the State has pleaded sufficient facts to show Defendants' misrepresentations were specific, concrete, and actionable under the ADTPA. Defendants ask this Court to hold that the words "infrequent, frequent, mild, intense, and safe" are inherently subjective and thus constitute non-actionable statements of opinion. Even assuming *arguendo* that some exception for statements of opinion exists in the ADTPA, Defendants' argument is belied by the specific facts alleged in the First Amended Complaint. For example, the State's First Amended Complaint alleges that material such as videos related to "pegging" are rampant on TikTok. *E.g.*, First Am. Compl. ¶ 95. It strains credulity to suggest that minors should view content related to pegging—a point Defendants themselves cannot seriously dispute given the content of their Community Guidelines. Words like "infrequent, frequent, mild, intense, and safe" are not inherently subjective and relative, but instead turn on context and relevant facts. For example, it is a fact, not an opinion, that bleach is not safe for use on hands. *See, e.g.*, *Thompson v. Proctor and Gamble Co.*, No. 18-CV-60107, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018). Similarly, the State challenges specific, concrete, and factual representations that Defendants have made about the safety of its product; these representations are central to its business model. Said simply, it is not possible to paint words such as "infrequent, frequent, mild, intense, and safe" in one broad stroke as Defendants request.

The same is true for the age ratings. The State has alleged that the age ratings are important to get minors on its platform and secure Defendants' profits. *E.g.*, First Am. Compl. ¶ 11. Defendants tell people that the TikTok app is safe for minors—specifically, those 12+—through

its age ratings. First Am. Compl. ¶ 12. Yet even Apple itself has told Defendants that TikTok contains frequent or intense mature content. First Am. Compl. ¶ 15. Undoubtedly, any consumer who views the age ratings, which are based on Defendants' own assertions about their product, is entitled to rely on them when they decide what is appropriate for themselves or their children. In fact, the State alleges that Defendants tout their app store age ratings in public statements. First Am. Compl. ¶ 65. In other words, the State alleges that Defendants *want* consumers to treat these age ratings as conveying concrete, factual information on which they can rely.

Defendants also claim that the State must prove just how "frequent" inappropriate content is in order to successfully challenge the alleged misrepresentations. Def.'s Br. in Supp. of Mot. to Dismiss, at 31–32. First, the State has repeatedly alleged that several categories of mature content on TikTok is not "infrequent," as TikTok claims. *See, e.g.*, First Am. Compl. ¶¶ 12, 16–17, 18–19, 20–21. On a motion to dismiss, that allegation is sufficient to establish that Defendants have made a deceptive or false statement. Defendants' objection goes to the *degree* of falsity or deception, which is not necessary for the State to establish at this early stage. This is a motion to dismiss and not a motion for summary judgment. The State is not required to plead this level of detail at this stage of the litigation. Second, because the State challenges Defendants' claim that certain mature content on the TikTok app is "infrequent/mild," the State can show that the inappropriate content is *either* frequent *or* intense to allege deception or falsity. In other words, the State can establish that the inappropriate content is intense regardless of its frequency. The State has pleaded sufficient facts alleging that the TikTok app contains intense content in several mature categories. *E.g.*, First Am. Compl. ¶¶ 80, 94–98. Third, the State has alleged that TikTok places users in filter bubbles that cause some users to be bombarded by a large volume of mature content. First Am. Compl. ¶ 145–148. The overall proportion of mature content on TikTok as a

whole is irrelevant to users who fall into such filter bubbles and see frequent, intense mature content as a result.

Finally, the State has pleaded sufficient facts to show that Defendants' promotion of Restricted Mode deceives Arkansas consumers. *E.g.*, First Am. Compl. ¶¶ 170–177. While Defendants ask this Court to weigh the facts at this stage, it is inappropriate to do so. *See* Def.'s Br. in Supp. of Mot. to Dismiss, at 35–37. Defendants may disagree with the State's assertions in its First Amended Complaint, but they are sufficient to proceed to discovery.

The bottom line is that the State has pleaded sufficient facts to show that Defendants' representations are actionable under the ADTPA and has plausibly stated a claim that Defendants violated the ADTPA. For these reasons, the Court denies Defendants' Motion to Dismiss as to Counts I through X.

    **C.**    **Count XI, the State's addictiveness claim, is actionable under the ADTPA.**

Defendants claim that the State's addictiveness claim must be dismissed because "claims of omission" cannot be brought under Ark. Code Ann. § 4-88-107(a). Def.'s Br. in Supp. of Mot. to Dismiss, at 38. Defendants, however, mischaracterize the State's claim. The State clearly pleaded its addictiveness claim under the umbrella of unconscionability, misrepresentation, and omissions. First Am. Compl. ¶ 369. The State pleaded its addictiveness claim under Ark. Code Ann. § 4-88-107(a), not Ark. Code Ann. § 4-88-108. *Id.* Therefore, the Court rejects Defendants' attempt to apply the materiality requirement found in Ark. Code Ann. § 4-88-108 to the State's addictiveness claim. Def.'s Br. in Supp. of Mot. to Dismiss, at 38. Nevertheless, despite Defendants' claims, Ark. Code Ann. § 4-88-107 *et. seq.* covers omissions. *See* Ark. Code Ann. § 4-88-107(a) ("Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, *but are not limited to*, the following. . .").

An act is unconscionable if it affronts the sense of justice, decency, and reasonableness. *Gulfco of Louisiana, Inc. v. Brantley*, 2013 Ark. 367, at 9, 430 S.W.3d 7, 13 (citing *Baptist Health v. Murphy*, 2010 Ark. 358, at 27, 373 S.W.3d 269, 287). The State has pleaded sufficient facts that show Defendants created and marketed a purposefully addictive app that was designed to harm children for its own profit. This is an unconscionable business or trade practice under the ADTPA. *E.g.*, First Am. Compl. ¶¶ 189–90, 363–372.

Moreover, the State has sufficiently pleaded that Defendants misled people about the safety of its app for minors. Despite Defendants' assertions of safety, the State alleges that Defendants know minors are especially susceptible to addiction and the mental health harms associated with addiction to the app. First Am. Compl. ¶¶ 367–69. In addition, despite knowing about the app's addictiveness, Defendants continued tailoring their app to optimize the time users spent using it, including by adopting "many coercive design tactics that detract from user agency such as infinite scroll, constant notifications, and the 'slot machine' effect," and it did so while knowing that minors would be "particularly sensitive" to these features and would have "minimal ability to self-regulate effectively" when confronted with them. First Am. Compl. ¶¶ 181–86. Defendants' assertion that "addiction" cannot be defined rings especially hollow given that Defendants' own documents describe this problem with the TikTok app. First Am. Compl. ¶¶ 188–90.

Finally, the State has pleaded sufficient facts showing Defendants should have disclosed TikTok's addictiveness to minors—a fact that Defendants have internally studied, analyzed, and acknowledged. *E.g.*, First Am. Compl. ¶ 189. These facts, if proven, would affront a sense of justice, decency, and reasonableness. The State has thus plausibly alleged an unconscionable business or trade practice under the ADTPA. *E.g.*, First Am. Compl. ¶¶ 189–90, 363–372. The Court denies Defendants' Motion to Dismiss as to Count XI.

    3.    *The State has alleged sufficient facts that show Defendants engaged in facilitation that states a claim under Ark. Code Ann. § 4-88-107(a)(12).*

Defendants argue that the State has not alleged sufficient facts that show Defendants engaged in facilitation to state a claim under Ark. Code Ann. § 4-88-107(a)(12). This Court has found that the State has pleaded sufficient facts that show Defendants violated the ADTPA. Therefore, the Court finds that the State has pleaded sufficient facts that show facilitation under the ADTPA.

    4.    *Section 230 of the Communications Decency Act does not bar the State's claims.*

Defendants argue that they are immune from suit under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, but Section 230 does not bar the State's claims. Section 230 protects providers of Internet services from liability for content created by "*another* information content provider." 47 U.S.C. § 230(c)(1). Under Section 230, an internet service provider like TikTok is not "legally responsible for information that third parties created" and is "liable only for speech that is properly attributable to" it. *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 1997)); *see also Demetriades v. Yelp, Inc.*, 175 Cal. Rptr. 3d 131, 145 (Cal. Ct. App. 2014). Here, Defendants made their age-rating and content representations themselves. The First Amended Complaint is agnostic on whether TikTok should contain frequent and intense content about drugs, alcohol, tobacco, sex, nudity, and profanity. The First Amended Complaint demands only that TikTok be honest with consumers about what content the app contains. That does not come within the purview of Section 230.

Likewise, the State's claims relating to the TikTok app's addictiveness are not barred by Section 230. Defendants represent to consumers that the TikTok app is safe for minors. Yet,

Defendants know from their own studies that the app's addictive nature harms minors. Here again, the State is not attempting to hold Defendants liable for the content on the platform. The State's allegations establish that Section 230 of the Communications Decency Act does not bar the State's claims.

> 5. *The State has pleaded sufficient facts to support Count XII, its unjust enrichment claim.*

Defendants claim that the State's unjust enrichment claim should be dismissed because a contract exists between the users of the TikTok app and the Defendants. Def.'s Br. in Supp. of Mot. to Dismiss, at 48. The State has alleged that the alleged contracts, the Terms of Service, were wrongfully induced due to Defendants' misrepresentations about the safety of the TikTok app for minors. Pl.'s Resp. to Def.'s Mot. to Dismiss, at 38. Defendants retort that, even if true, that would make the contracts *voidable*, not void, and an unjust enrichment claim cannot lie where a contract is merely voidable. That question of substantive contract interpretation would require the Court to weigh facts and, ultimately, make a factual determination as to the nature of the contracts between Defendants and Arkansas users. That determination is not appropriate for a motion to dismiss. At this point, given the totality of the allegations in the State's First Amended Complaint, this Court finds that the State has pleaded sufficient facts to support a claim for unjust enrichment. This Court denies Defendants' Motion to Dismiss as to Count XII.

## IV. CONCLUSION

At this stage, this Court declines to weigh the evidence. This Court must take the State's allegations as true and view them in a light most favorable to the State. The State has pleaded sufficient facts to establish specific personal jurisdiction. Defendants target Arkansas minors and profit substantially off their data. There is nothing unfair or unexpected about Defendants being subject to this Court's jurisdiction. Moreover, the State has pleaded sufficient facts to show that

Defendants violated the ADTPA and to state a claim for unjust enrichment. Finally, Section 230 does not bar the State's claims. Defendants' Motion to Dismiss is denied in its entirety.

IT IS SO ORDERED.

*[signature]*

THE HONORABLE HOLLY L. MEYER
16th Circuit Judge, Division 1

May 15, 2024

Prepared by:
Matthew M. Ford, Ark. Bar No. 2013180
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201-2610
Telephone: (501) 320-3069
Fax: (501) 682-8118
Matthew.Ford@ArkansasAG.gov

*Counsel for Plaintiff*