UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING SIX DISCOVERY DISPUTE LETTER BRIEFS**<br><br>Re: Dkts. 786, 798, 800, 824, 825, 830 |

Now pending before the Court are six joint letter briefs regarding disputes as to the Relevant Time Period governing the PI/SD Plaintiffs' discovery requests made to TikTok [Dkt. 798], YouTube [Dkt. 825], and Snap [Dkt. 830]; the scope of discovery about the "TikTok Platform" [Dkt. 800]; the scope of discovery into YouTube features and designs available outside of the United States [Dkt. 824]; and Meta's request for a protective order imposing limitations on the scope of Rule 30(b)(6) depositions regarding electronically stored information ("ESI") [Dkt. 786]. The Court has carefully reviewed the materials submitted by the Parties and heard oral argument at the Discovery Hearing held on May 23, 2024. *See* Dkts. 896, 903. For the reasons set forth herein and for the reasons announced by the Court at the May 23rd Hearing (which are hereby incorporated by reference), the Court resolves these six discovery letter briefs.

**LEGAL STANDARD**

The undersigned has been referred all discovery in this MDL. *See* Dkt. 426. With regard to the scope of discovery, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be

1  discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any
2  matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that
3  is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting
4  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc.*
5  *Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4
6  (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is
7  broader than relevancy for purposes of trial.") (alteration omitted).

8      While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*
9  *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of
10  discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").
11  Information, even if relevant, must be "proportional to the needs of the case" to fall within the
12  scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1)
13  emphasize the need to impose reasonable limits on discovery through increased reliance on the
14  common-sense concept of proportionality: "The objective is to guard against redundant or
15  disproportionate discovery by giving the court authority to reduce the amount of discovery that
16  may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality
17  requirement] is intended to encourage judges to be more aggressive in identifying and
18  discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015
19  amendment; *see also* FREDRIC BELLAMY, ANNOTATED MANUAL FOR COMPLEX LITIGATION
20  FOURTH § 11.41, at 69 (Federal Judicial Center 2023) (Rule 26(b)(1)'s "underlying principle of
21  proportionality means that even in complex litigation, discovery does not require leaving no stone
22  unturned"). In evaluating the proportionality of a discovery request, a court should consider "the
23  importance of the issues at stake in the action, the amount in controversy, the parties' relative
24  access to the information, the parties' resources, the importance of the discovery in resolving the
25  issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."
26  Fed. R. Civ. P. 26(b)(1).

27      The party seeking discovery bears the burden of establishing that its request satisfies the
28  relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,

285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYIS

### I. The Scope of Discovery Regarding the "TikTok Platform"

The PI/SD Plaintiffs (hereinafter, "Plaintiffs") seek to obtain discovery from TikTok regarding other platforms designed and developed by TikTok's parent company, ByteDance, outside of the United States, including overseas versions of the TikTok platform itself, as well as services named Toutiao and Douyin, which are available exclusively in mainland China. [Dkt. 800]. Plaintiffs argue that all of ByteDance's platforms are fundamentally identical with respect to their "design, operation, and management," stressing that the U.S. version of TikTok (which is the alleged source of Plaintiffs' injuries in this lawsuit) "even shares the same recommendation

3

system first designed for use in ByteDance's overseas platforms." *Id.* at 7. Plaintiffs argue that, notwithstanding "the global nature of ByteDance's platform design and development," the non-U.S. platforms "appear[] to protect children [overseas] in ways that the U.S. version does not afford children here." *Id.* Plaintiffs argue that "information concerning relevant features and risks for non-U.S. versions of TikTok is probative of (a) the availability of alternative designs/warnings with respect to the Named Features and (b) notice of the harms Plaintiffs allege they have suffered—including research, testing, and complaints relating to the health and safety of youth users." *Id.* Plaintiffs demand that TikTok produce "specific categories of documents" relating to: (1) the Named Features at issue in this case (or their equivalents) used in the non-U.S. platforms; and/or (2) the health, wellness, or safety of youth using non-U.S. platforms. *Id.* at 8. Plaintiffs argue that the information sought is "relevant to alternative designs available to ByteDance, as well as the risks ByteDance should have known and warned U.S. users about." *Id.*

TikTok, in its portion of the joint letter brief on this dispute, argues that this MDL concerns "the US TikTok Platform" only, because that is the platform Plaintiffs allege that they used and became addicted to, resulting in their injuries. *Id.* at 9. TikTok asks the Court to "reject Plaintiffs' request to take a detour through entirely separate, non-TikTok services available only in China and every foreign version of TikTok." *Id.* TikTok argues that Plaintiffs have not shown that ByteDance's overseas platforms are "substantially similar" to the TikTok platform available in the United States, and thus, "have not come close to meeting their burden of establishing that this evidence is relevant." *Id.* at 9-10.

As an initial matter, the Parties' briefing on this dispute does not identify the specific discovery requests at issue. As stated at the May 23rd Hearing, the Court **ORDERS** the Parties to promptly meet and confer to determine the specific discovery requests that are implicated by the Court's rulings made at the hearing and memorialized herein.

The Court finds that Plaintiffs have made a sufficient showing of relevance with respect to their discovery requests seeking technical and implementation documents regarding the Named Features (or their equivalents) with respect to Toutiao, Douyin, and (as detailed below) the French version of TikTok. The Court understands from the hearing that Plaintiffs have identified the

4

Named Features in their Complaint and that the Parties have used this shorthand phrase in discovery. To the extent the Parties disagree or dispute what a Named Feature is (or is not), the Court **ORDERS** the Parties to meet and confer and work collaboratively on any such disputes.

TikTok argues that discovery into other ByteDance platforms is not relevant because those platforms are not "substantially similar" to the U.S. version of TikTok, which is the platform Plaintiffs allege to have caused the injuries for which they seek relief in this MDL. However, Plaintiffs' theory of liability is that the U.S. version of TikTok was intentionally designed and marketed in such a way to make the platform particularly addictive to children. The extent to which TikTok's parent company, ByteDance, designed certain features of its non-U.S. platforms differently is relevant for discovery purposes with regard to whether alternative designs of the U.S. TikTok platform were feasible and also with regard to TikTok's knowledge (or lack of knowledge) of how those design differences may or may not have affected youth user engagement.

As to other non-U.S. versions of the TikTok platform, the Court finds that Plaintiffs have met their burden to show that the scope of relevant discovery includes technical and implementation documents relating to the age verification features of the French version of TikTok. As with the discussion of Toutiao and Douyin above, the Court finds that Plaintiffs have demonstrated sufficient grounds for such discovery because of its relevance to whether alternative designs of the U.S. TikTok platform were feasible and also with regard to TikTok's knowledge (or lack of knowledge) of how those design differences may or may not have affected youth user engagement. With this guidance, the Court **ORDERS** the Parties to meet and confer in good faith to discuss whether there is a similar basis for discovery of technical or implementation documents for any other Named Features of the French version of TikTok. With regard to other foreign versions of TikTok, Plaintiffs' briefing only specifically references the version of TikTok that is available in France. On the record presented to the Court, Plaintiffs have not met their burden to obtain discovery relating to any other foreign versions of the TikTok platform.

Because the Parties will identify the precise discovery requests implicated by this Order with regard to discovery regarding Toutiao, Douyin, and the French version of TikTok, the Court

further **ORDERS** the Parties to work collaboratively and in good faith regarding any specific objections or concerns directed to any of these specific discovery requests, including issues as to burden.

## II.      YouTube Non-U.S. Features and Designs

Plaintiffs seek to obtain discovery from YouTube regarding certain "relevant features and designs" available outside of the United States, including those relating to "age verification, parental controls, default protective limits, user options, endless scroll, algorithmic recommendations, image filters, notifications, user-complaint protocols, CSAM-reporting protocols, geolocation, friend recommendations, and short-form and ephemeral content." [Dkt. 824]. Plaintiffs argue that, given "the global nature of YouTube's platform design and development," information regarding how non-U.S. versions of the YouTube platform were designed to operate is "highly probative" of the availability of alternative designs of the features of the U.S. version of YouTube at issue here, as well as YouTube's knowledge of the harms Plaintiffs allege to have suffered resulting from those features. *Id.* at 8-9.

YouTube, in its portion of the joint letter brief, characterizes Plaintiffs' request for discovery into YouTube's foreign operations as a "fishing expedition." *Id.* at 10. Stressing that the YouTube platform is available in over 100 countries spanning six continents and implicating eighty languages, YouTube argues that "[t]he burden of investigating these global operations alone would be astronomical." *Id.* YouTube argues that because Plaintiffs in this lawsuit "are United States residents and school systems, whose claims arise exclusively under U.S. law," the scope of discovery should be limited to "information concerning United States users and features as a default, with the potential for targeted supplements as negotiated in good faith between the parties." *Id.*

As stated at the May 23rd Hearing, the Court finds that Plaintiffs have made a sufficient showing of relevance with respect to their discovery requests seeking technical and implementation documents relating to the Named Features with respect to the YouTube features and designs available in the European Union (including the United Kingdom) and Australia. *See* Dkt. 903 at 34-35, 41. To the extent Plaintiffs seek to obtain discovery regarding YouTube

6

features and/or designs available in other geographic regions outside of the United States, they have failed to make a specific showing as to the relevance of those documents.

The Court **ORDERS** Plaintiffs and YouTube to promptly meet and confer for purposes of identifying the specific document requests at issue that are implicated by the Court's ruling. *See* Dkt. 825-1.

### III. Relevant Time Period

The Parties also raise disputes regarding the defined "Relevant Time Period" governing Plaintiffs' discovery requests made respectively to TikTok, Snap, and YouTube. *See* Dkts. 798, 825, 830.

"The relevant time period for discovery must be determined on a case-by-case basis. There is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate." *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324-GPC-KSC, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021) (citing *Oppenheimer*, 437 U.S. at 352). "In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context." *Hatamian v. Advanced Micro Devices*, No. 14-cv-00226-YGR (JSC), 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) (collecting cases); *see also McCarty v. Arch Wood Protection, Inc.*, No. 11-109-HRW-CJS, 2013 WL 11320936, at *2 (E.D. Ky. Mar. 19, 2013) (quoting ROGER S. HAYDOCK & DAVID F. HERR, *Discovery Practice* § 3.01 (2012)) ("Courts may consider the relevant time periods of discovery. Although some temporal limits on discovery obligations generally will be imposed, those limits will not be firmly fixed by the periods of time covered by a party's claims or defenses.").

      **a. TikTok**

Plaintiffs seek documents from TikTok from the period of January 1, 2012 through April 1, 2024. [Dkt. 798 at 7]. TikTok has offered to produce documents from January 1, 2017 through February 14, 2023. *Id.* at 9.

As to the start date, Plaintiffs argue that ByteDance, TikTok's parent company, "began designing the core technology that drives TikTok" when it launched the Toutiao app in mainland

7

China in 2012, and then "[b]uil[t] on Toutiao's success" when it launched the Douyin app in mainland China in 2016. *Id.* at 7. Plaintiffs allege that Toutiao, Douyin, and TikTok (which launched in the United States in early 2017) all share the same fundamental algorithmic design. In addition, Plaintiffs claim that ByteDance's youth-focused marketing and growth strategies for TikTok in the United States were "informed by and modeled on" marketing and growth strategies employed by Douyin and Musical.ly, an app that was acquired by ByteDance in 2017 and later "merge[d]" into TikTok. *Id.* at 8-9. Stressing that "the Defendant here is not TikTok, the platform, but rather ByteDance and its affiliates," Plaintiffs argue that they are entitled to discovery going back "several years before TikTok was launched" to understand both how and why ByteDance designed TikTok the way that it did. *Id.* at 7.

Plaintiffs argue that the appropriate end date for discovery from TikTok should be April 1, 2024, because (i) they allege "ongoing harm," and (ii) "the law is clear that discovery does not 'cut off' on the date a complaint is served." *Id.* at 9.

TikTok urges the Court to adopt its proposed discovery period of January 1, 2017 to February 14, 2023. *Id.* TikTok argues that this date range "captures the only potentially relevant period—it spans months before the TikTok platform was available in the United States to the date Plaintiffs filed their Master Complaint." *Id.* TikTok argues that Plaintiffs have failed to demonstrate the relevance of pre-2017 discovery aside from "passing references" to other "profoundly different" platforms. *Id.* at 9, 11. In addition, TikTok argues that Plaintiffs' request for discovery dating back to 2012 is "disproportionately broad and burdensome," because Plaintiffs have thus far "refused to identify any subset of specific requests (out of the 300-plus served) for which they *actually need* pre-2017 discovery to litigate their claims." *Id.* at 10.

At the May 23rd Hearing, the Court **ORDERED** the Parties to promptly meet and confer regarding the specific document requests implicated by the Court's rulings on this dispute.

To the extent Plaintiffs seek to obtain discovery from TikTok dating back to the launch of Toutiao in 2012, the Court finds that such discovery (though likely relevant) is disproportionate to the needs of the case. Specifically, the Court is persuaded by TikTok's argument that the Toutiao platform is more akin to a multimedia entertainment application as opposed to a social media

8

platform, such that Toutiao differs sufficiently from the Douyin and TikTok platforms subsequently launched by ByteDance. As noted above, discovery under Rule 26(b)(1), while broad, is not without bounds.

The Court finds that Plaintiffs have made a sufficient showing of relevance with respect to their discovery requests seeking non-technical youth health and/or safety marketing materials from Musical.ly relating to the Named Features (or their equivalents). As with the discussion above, the Court finds that Plaintiffs have demonstrated sufficient grounds for such discovery because of its relevance with regard to TikTok's knowledge (or lack of knowledge) of how Named Features may or may not have affected youth user engagement.

As stated at the May 23rd Hearing, the Court **ORDERS** that the default start date for discovery requests directed at TikTok (whether seeking information concerning the U.S. version of TikTok, non-U.S. versions of TikTok, Toutiao, Douyin, or Musical.ly) is January 1, 2016. The Court finds this to be an appropriate default start date given that Douyin, a predecessor platform which Plaintiffs convincingly argue is sufficiently similar to TikTok with respect to its design and purpose, was launched in approximately September 2016.

The Court further **ORDERS** that the default end date for discovery requests directed at TikTok is April 1, 2024. Because software by its nature is continually under a state of development and because Plaintiffs allege ongoing harm, the Court is convinced that some amount of discovery past the date of the filing of the Complaint is appropriate. However, for practical reasons, discovery time periods cannot be extended indefinitely.

### b. Snap

Plaintiffs and Snap disagree as to the appropriate start date for the Relevant Time Period that should apply to Plaintiffs' discovery requests and Snap's custodial searches. [Dkt. 830]. The Parties continue to meet and confer as to the appropriate end date for these discovery requests. *Id.* at 7 n.1.

Plaintiffs propose a start date of January 1, 2011, because "Snapchat was created and commercialized in 2011, and many of the platform's central features—including its ephemeral Snaps, Snapscores, Stories, Discover, lenses and filters, and its age verification measures—were

1  developed and/or launched between 2011 and 2015." *Id.* at 7.

2  Snap proposes a start date of January 1, 2015, arguing that: (i) "the vast majority of Plaintiffs—including eight of the nine current bellwether personal injury Plaintiffs—did not begin using Snapchat until after 2015," (ii) Plaintiffs' claims "rely primarily on Snap's post-2015 conduct," and (iii) the "majority of features" at issue were either "released in 2015 or later" or "altered" by Snap after 2015, and thus, "for most features at issue, limiting discovery to 2015 will not deprive Plaintiffs of any documents." *Id.* at 9-10. According to Snap, "[t]he fact that a handful of features might have been initially developed before 2015 does not matter: what matters is the way these features operated at the time that Plaintiffs used them." *Id.* at 9.

As discussed at the May 23rd Hearing, given that the Parties' briefing on this particular dispute helpfully delineates specific dates that each Named Feature at issue was developed and/or launched, the Court **ORDERS** that the default start date for Plaintiffs' discovery requests seeking marketing and/or technical documents directed at *specific* Snap Named Features shall be as follows: (1) January 1, 2011 for discovery requests relating to ephemeral Snaps and Snapscores; (2) January 1, 2013 for discovery requests relating to age verification, SnapKidz, filters, and Stories; (3) January 1, 2014 for discovery requests relating to the "Discover" feature and push notifications to users; (4) January 1, 2015 for discovery requests relating to lenses and trophies features; and (5) February 1, 2015 for Safety Center. To the extent Plaintiffs' discovery requests seek general marketing and/or advertising materials from Snap unrelated to specific Named Features, the Relevant Time Period start date for such requests shall be January 1, 2015.

As discussed above, the Parties have not (in their briefing) specifically identified the document requests implicated by the Court's ruling. Accordingly, the Court **ORDERS** the Parties to promptly meet and confer and work collaboratively to reasonably identify the specific document requests implicated by the Court's rulings on this dispute, and further to confer reasonably to work out the logistics of the document discovery in light of the Court's rulings.

### c. YouTube

Plaintiffs and YouTube disagree as to the Relevant Time Period applicable to YouTube's search for and production of documents and ESI in response to Plaintiffs' already-served Requests

1    for Production.  [Dkt. 825].

2          Plaintiffs propose a default Relevant Time Period of January 1, 2011 through April 1,
3    2024, which they argue "would account for key modifications to YouTube's recommendation
4    system and for consideration, acknowledgement, and implementation of corrective designs or
5    features that occurred post-filing." *Id.* at 8.  Plaintiffs argue that they are entitled to discovery
6    regarding "YouTube's creation, development, and implementation of technologies related to
7    targeting youth account holders," including Watch Time and YouTube Kids, as these features
8    "form[] the crux of Plaintiffs' claims." *Id.*  Plaintiffs argue that a 2011 start date is "reasonable"
9    as "it tracks YouTube's initial consideration of Watch Time" and "coincides with when YouTube
10   began to 'rethink' strategies to increase viewership and engagement." *Id.*  While admitting that
11   the sought-after document production will likely exceed 15,000 documents, Plaintiffs insist that
12   YouTube will not be unduly burdened given "YouTube's incredibly limited retention policies,"
13   and taking into account "that this MDL is comprised of hundreds of individual cases, YouTube is
14   one of the largest video platforms in the world—whose parent company (Google) is the most
15   sophisticated search company in the world—and [YouTube] has exclusive access to the discovery
16   at issue." *Id.* at 10.

17         YouTube proposes a default Relevant Time Period of January 1, 2015 through February
18   14, 2023. *Id.* at 10-11.  YouTube argues that a default start date of January 1, 2015 "with the
19   potential of targeted supplements as negotiated in good faith" is "reasonable" because: (i) it
20   "covers over eight years of documents prior to the filing of the Complaint, a substantial amount of
21   time longer than the statute of limitations for Plaintiffs' claims;" (ii) it "covers all actual YouTube
22   usage by the substantial majority of Plaintiffs who have asserted claims against YouTube;" (iii)
23   Plaintiffs' claims against YouTube in this MDL "center on the alleged harms caused by conduct
24   that occurred post-2015;" and (iv) a 2015 start date "would appropriately address Plaintiffs' actual
25   RFP [Requests for Production] topics," which YouTube characterizes as demanding "marketing
26   and advertising materials without specification of the related feature," "lobbying in general,"
27   "audits of YouTube," and "business plans projecting revenue goals." *Id.*

28         The Parties' briefing identifies the YouTube features at issue to be: (1) tracking, collection,

11

and analysis of youth accounts; (2) age restrictions and targeting; (3) generating and recommending content; (4) Watch Time; (5) the trusted flagger program; (6) customizable Channels; (7) subscription-filled guides; (8) iPhone and iPod touch apps; (9) mobile offline viewing and commenting; and (10) YouTube Kids.

At the May 23rd Hearing, counsel for YouTube disputed the extent to which some of these features are actually at issue. Plaintiffs' counsel expressed disagreement. The fact remains that Plaintiffs are seeking discovery on these features of YouTube, and YouTube has not argued or shown that these features are outside the scope of relevance for discovery in this MDL. Because the Parties appear to have fallen short in communicating about what is at issue in this case, however, the Court **ORDERS** these Parties to meet and confer to discuss in good faith how these features correlate with the Named Features of YouTube identified by Plaintiffs in the Complaint or as defined by Plaintiffs in their discovery requests.

As stated at the May 23rd Hearing, the Court **ORDERS** the default start date for Plaintiffs' discovery requests directed to YouTube to be as follows: (1) January 1, 2011 for discovery requests relating to Watch Time and technologies aimed at generating and recommending content; (2) January 1, 2014 for discovery requests relating to YouTube Kids; and (3) January 1, 2015 for discovery requests relating to all other features identified above.

Further, as stated at the May 23rd Hearing, YouTube shall not cut off custodial searches for documents based solely on start date of employment for each custodian. While it may be unlikely that a particular custodian would have many documents predating their date of employment, it is also not uncommon for an employee to obtain and keep in their custody documents which were created prior to that employee's start date for employment.

The Court further **ORDERS** the default end date for Plaintiffs' discovery requests directed at YouTube to be April 1, 2024, for the same reasons discussed at the May 23rd Hearing and for the reasons discussed above with regard to the end date of TikTok discovery.

### IV. Meta Rule 30(b)(6) Deposition Topics

Meta seeks a protective order imposing limitations on the scope of thirty-seven Rule 30(b)(6) topics noticed by Plaintiffs. [Dkt. 786]. The specific Rule 30(b)(6) topics at issue cover

four categories of information: (1) Meta's corporate structure and its relevant departments, divisions, committees, or teams, as well as Custodians likely to possess relevant information; (2) Programs and Repositories used by Custodians to collect and/or store relevant information; (3) policies and procedures applicable to such Custodians, Programs, and Repositories; and (4) the availability/accessibility of relevant information and Repositories. *Id.* at 10; *see* Dkt. 786-1.

At the May 23rd Hearing, the Parties confirmed that all disputes regarding Meta's Rule 30(b)(6) deposition topics were resolved aside from those relating to the first category of topics concerning Meta's corporate structure. *See* Dkt. 903 at 96-98.

As to the corporate structure topics that remain in dispute, Meta argues that Plaintiffs' proposed topics are too granularly focused such that Meta would be unduly burdened in preparing a witness for answering questions. Meta offers, as a compromise, to instead provide written responses to Plaintiffs' remaining questions on corporate structure. *See* Dkt. 903 at 102.

As stated at the May 23rd Hearing, the Court **ORDERS** Plaintiffs to depose Meta by written questions, pursuant to Federal Rule of Civil Procedure 31, with respect to Topics 3, 4, 5, and 6. As of the date of this Order, the Parties have reported that the Rule 31 deposition of Meta has resulted in exchanges of questions and answers on June 3, 2024, June 7, 2024, and June 8, 2024, and that the Parties continue to confer on the scope of ESI/Preservation topics. [Dkt. 940 at 6-7].

## CONCLUSION

By this Order and for the reasons discussed herein, the Court **RESOLVES** the disputes raised by the six Joint Discovery Letters [Dkts. 786, 798, 800, 824, 825, 830]. To the extent the Parties raised new related disputes at the May 23rd Hearing, those disputes are either **RESOLVED** as stated at the hearing and as set forth herein, or were withdrawn at the May 23rd Hearing.

**IT IS SO ORDERED.**

Dated:  June 20, 2024

_____
PETER H. KANG
United States Magistrate Judge

13