UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No.  22-md-03047-YGR   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 7 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF JUNE 20, 2024**<br><br>Upcoming DMC Dates:<br>July 11, 2024 at 1:00 pm<br>August 15, 2024 at 1:00 pm<br>September 26, 2024 at 1:00 pm |

On June 20, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkts. 967-68. This Order memorializes and provides further guidance to the Parties, consistent with the Court's directions on the record at the June 20th DMC regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

**I.      Meta's Production of Custodial Documents and Additional Search Terms**

The PI/SD Plaintiffs and Meta continue to meet and confer regarding three additional search terms to be applied to Meta's collections. *See* Dkt. 941. The Court **ORDERS** the Parties to complete their meet and confers on any search terms remaining in dispute by no later than **June 26, 2024**. If any disputes remain with regard to search terms between Meta and the PI/SD Plaintiffs (or any sub-group of PI/SD Plaintiffs), they shall diligently and in good faith comply with the Court's discovery dispute resolution procedures (including meet and confer by the relevant lead counsel) in bringing any such disputes to the Court's attention for resolution.

The Parties seek clarification from the Court as to the deadline for Meta to produce "any custodial files returned by any additional search terms or expanded Relevant Time Period agreed-to or ordered by the Court (beyond Meta's original (April 5) proposed search terms and Relevant Time Period)." [Dkt. 940 at 8 n.1]. The Parties raise concerns regarding early-noticed depositions with potentially incomplete custodial files.  As discussed at the June 20th DMC, the Parties are **ORDERED** to work collaboratively to complete search term negotiations so that Meta can begin producing documents using the search terms with dispatch and so that the Parties can work collaboratively to schedule (or rearrange the schedule) of depositions to take advantage of any custodial files which are able to be produced more quickly than others.  The Court directs the Parties to continue their coordination with the Tennessee Attorney General's office on scheduling (and, if needed, adjusting the schedule) of cross-noticed depositions.

The Court **ORDERS** the AG Plaintiffs to immediately provide Meta with a final list of proposed additional search terms directed at the AG Plaintiffs' document requests served to date, as well as search terms directed to their anticipated next (and hopefully final) set of document requests.  These Parties are likewise **ORDERED** to complete their meet and confer on Meta search terms by no later than **June 26, 2024**.  If any disputes remain with regard to search terms between Meta and the AG Plaintiffs (or any sub-group of AG Plaintiffs), they shall diligently and in good faith comply with the Court's discovery dispute resolution procedures (including meet and confer by the relevant lead counsel) in bringing any such disputes to the Court's attention for resolution.

**II.     Meta Request to Limit Further Written RFPs**

Meta asks for a Court order limiting Plaintiffs to no more than five additional targeted RFPs beyond the RFPs served as of May 31, 2024.  [Dkt. 937 at 10].  Meta asks, in the alternative, that the Court order Plaintiffs to commit to "limiting future RFPs to those necessary to obtain materials concerning new developments, facts, or issues that may come to light in discovery or otherwise." *Id.* at 12.

The PI/SD Plaintiffs commit that they would limit their right to serve additional RFPs with two qualitative exceptions: (1) they reserve the right to serve additional RFPs on Meta for

materials that fall outside the Relevant Time Period; and (2) they reserve the right to serve follow-up RFPs on Meta to obtain materials concerning new developments, facts, or issues that may come to light in discovery or otherwise. *Id.* at 14. Meta agrees to this approach, in lieu of a numerical limit on RFPs. [Dkt. 967 at 19]. Accordingly, the Court accepts the PI/SD Plaintiffs' qualitative limitations on further RFPs (subject to the SD Bellwether Plaintiffs' requests, discussed below).

The PI/SD Plaintiffs seek leave to serve one set of RFPs directed at discovery sought specifically by the SD Bellwether Plaintiffs (recently finalized). *Id.* at 30-31. The PI/SD Plaintiffs are **GRANTED** leave to propound one set of bellwether plaintiff-specific RFPs on Meta directed at discrete discovery issues for those bellwether cases by no later than **June 26, 2024**. The Court expects the Parties to continue to meet and confer on these issues and work expeditiously to complete RFPs in a timely manner.

The JCCP Bellwether Plaintiffs have not yet been (but will soon be) selected in the JCCP. Accordingly, the JCCP Plaintiffs are **GRANTED** leave to propound one set of bellwether plaintiff-specific RFPs on Meta directed at discrete discovery issues for those bellwether cases in the JCCP proceeding. The due date for this set of RFPs is **one week after the JCCP Bellwether Plaintiffs are selected**. The Court admonishes the Parties to work together reasonably if there is a need to extend that deadline.

At the June 20th DMC, the AG Plaintiffs argued that they cannot be limited to using the exact same qualitative approach as the PI/SD Plaintiffs. The AG Plaintiffs argue that they are "differently positioned" from the PI/SD Plaintiffs and "a little bit behind" with respect to discovery and thus require more leeway to serve additional RFPs on Meta. *Id.* at 20. In particular, the AG Plaintiffs argue that there are issues (such as financial issues and issues for which they would confer with their expert witnesses) which are not addressed by the RFPs served to date by any Plaintiff. Meta argues, in response, that it should not have to respond to the AG Plaintiffs' second set of RFPs (served on June 7, 2024) because they are duplicative of RFPs served by the PI/SD Plaintiffs. Meta argues that the AG Plaintiffs should withdraw the second set of RFPs and serve "targeted, narrow, follow-up requests" that are specific to the unique features of the AG Plaintiffs' case. *Id.* at 26. The AG Plaintiffs argue that their second set of requests are not

1  duplicative, that Meta should serve Responses & Objections to that set, and that the Parties should
2  handle disputes over those RFPs on the merits.
3        The Court **ORDERS** Meta to respond to Plaintiffs' already-served RFPs (including the
4  AG Plaintiffs' second set of RFPs). To the extent Meta believes the RFPs are duplicative, they
5  can raise that objection and the Parties are expected to work reasonably to resolve any
6  disputes. The AG Plaintiffs are admonished not to pursue duplicative RFPs since the AG
7  Plaintiffs now have access to all documents produced by Meta to the PI/SD Plaintiffs, including
8  the documents produced with regard to the pre-suit investigations.
9        The AG Plaintiffs are **GRANTED** leave to file one additional set of RFPs, by no later than
10 **<u>July 15, 2024</u>**, to allow them to seek discovery on non-duplicative issues (particularly after
11 conferring with their experts). Other than this one additional set of RFPs, the Court **ORDERS**
12 that the AG Plaintiffs (like the PI/SD Plaintiffs) may not serve any further RFPs on Meta, subject
13 to the same two qualitative exceptions: (1) they reserve the right to serve additional RFPs on Meta
14 for materials that fall outside the Relevant Time Period; and (2) they reserve the right to serve
15 follow-up RFPs on Meta to obtain materials concerning new developments, facts, or issues that
16 may come to light in discovery or otherwise.
17       This **RESOLVES** Dkt. 937.
18 **III.    Meta Relevant Time Period**
19       The Parties dispute the Relevant Time Period governing Plaintiffs' discovery requests
20 directed at Meta and Meta's search, collection, and review of responsive documents. [Dkt. 888].
21 The Parties confirm that they have reached agreement as to the default end date: "April 1, 2024,
22 with the exception of non-Email/Workchat files, for which the end date is the date of collection
23 (which generally falls between January and April 2024 for the 122 of 127 total agreed-to
24 custodians identified to date by Plaintiffs)." [Dkt. 940 at 11]. Accordingly, the Court **ORDERS**
25 the default end date to be as so indicated and agreed-upon by the Parties.
26       The Parties continue to dispute the appropriate start date for discovery. Meta proposes a
27 start date for Named Feature-specific discovery requests dating back to January 1st of the year of
28 the feature's launch and a default start date of January 1, 2015 for all other issues. [Dkt. 967 at

4

49].

Plaintiffs propose a general default start date of January 1, 2010 and a "date-of-hire" start date for six custodians of Plaintiffs' choice (who all worked at Facebook prior to 2010). [Dkt. 940 at 12]. Unlike the Named Feature approach for determining start dates of document discovery issues for Snap, TikTok, and YouTube which the Court ordered previously, Plaintiffs argue that the start date for discovery requests directed at Meta should not be tethered to specific features, because Meta is "distinguishable" from those entities. [Dkt. 967 at 50]. Plaintiffs argue that a feature-based start date for discovery requests made to Meta would, in effect, preclude Plaintiffs from obtaining documents relating to the first four years of Facebook's founding. *Id.* at 50-51. In addition, Plaintiffs argue that because Plaintiffs bring general negligence claims and punitive damages claims against Meta, documents relating to the early days of Facebook are relevant to those issues. *Id.* at 51-52. Plaintiffs argue that because Facebook has been in existence much long than the other social media platforms at issue in this MDL, and because some of the JCCP Plaintiffs began using Facebook in 2006, discovery of Meta's documents prior to their proposed default of 2010 should be allowed. *Id.* at 52-53.

As stated at the June 20th DMC, the Court **ORDERS** the default start date for Plaintiffs' discovery requests directed to Meta to be as follows: **January 1, 2006** for discovery requests relating to Facebook Newsfeed; **January 1, 2008** for discovery requests relating to Facebook Chat and Facebook Friend Recommendations; **January 1, 2009** for discovery requests relating to Facebook Algorithmic Recommendations, Facebook Endless Scroll, and the Facebook "like" button; **January 1, 2010** for CSAM reporting and Facebook Geolocation; **January 1, 2011** for hashtags; and **January 1, 2012** for all other issues.

The Court **ORDERS** the Parties to meet and confer on whether earlier start dates can be agreed upon for features where Plaintiffs have evidence that such other features were launched earlier, such as Facebook Notifications, Parental Controls, Facial Recognition Tagging, and Image Filters.

This **RESOLVES** Dkt. 888.

### IV. YouTube Custodians

Plaintiffs and YouTube dispute whether YouTube must add certain current and former employees as document custodians. [Dkt. 848]. Prior to the June 20th DMC, the Parties confirmed with the Court that they had reached agreement on all but two potential custodians: (1) former YouTube CEO, Susan Wojcicki; and (2) current YouTube CEO, Neal Mohan.

YouTube argues that it should only have to provide Mohan as a document custodian and not Wojcicki because (1) the two CEOs would produce duplicative information as their employment with YouTube significantly overlapped; (2) while admitting that the "apex doctrine" does not apply to document discovery, YouTube argues that Plaintiffs have not shown that Wojcicki has "uniquely relevant" information; and (3) requiring both CEOs to be custodians would be unduly burdensome. [Dkt. 967 at 88-90].

Plaintiffs argue that both CEOs are necessary because: (1) Mohan did not start at YouTube until 2015 (and Wojcicki was CEO beginning in 2014); (2) the standard for naming a CEO as a document custodian is not different than for any other employee (because the apex doctrine does not apply to document discovery); (3) YouTube's document retention period is short and thus any burden is expected to be minimal; (4) Wojcicki created an "ad hoc committee" called "Roomba" during her tenure (and thus does uniquely have such documents); and (5) Wojcicki was CEO during several important events, including the FTC's fining of YouTube in 2019 for COPPA violations, Wojcicki's testimony before Congress in 2021, and the launch of various product and feature changes in 2015, 2018, and 2019. *Id.* at 90-94.

As stated at the June 20th DMC, the Court **ORDERS** that both Wojcicki and Mohan shall be added as document custodians. To address YouTube's concerns regarding duplicative discovery and proportionality, the default start date for Mohan's custodial searches shall be **January 1, 2023** (the year Mohan became YouTube's CEO). The Court **DENIES** YouTube's request to shift the cost of these additional custodial searches to Plaintiffs.

This **RESOLVES** Dkt. 848.

### V. Remaining Issues

The next DMC Statement (in advance of the July 11, 2024 DMC) shall be due by no later

than close of business on **July 2, 2024**.

The Parties are ordered to promptly file an omnibus sealing motion directed at Dkt. 891, in accordance with the sealing procedures for this MDL.  *See* Dkt. 341.

**IT IS SO ORDERED.**

Dated: June 24, 2024

_____
PETER H. KANG
United States Magistrate Judge