UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION 103-104 TO SNAP INC.**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

      Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendant Snap Inc. respectfully submit this letter brief regarding a dispute concerning Plaintiffs' Requests for Production 103-104 to Snap Inc.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on June 18, 2024 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

| | |
|---|---|
| Dated: June 26, 2024 | Respectfully submitted,<br>*/s/ Lexi J. Hazam*<br>LEXI J. HAZAM<br>**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-339<br>Telephone: 415-956-1000<br><br>PREVIN WARREN<br>**MOTLEY RICE LLC**<br>401 9th Street NW Suite 630<br>Washington DC 20004<br>Telephone: 202-386-9610<br>pwarren@motleyrice.com<br><br>Co-Lead Counsel<br><br>CHRISTOPHER A. SEEGER<br>**SEEGER WEISS, LLP** |

i

55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway

New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202

Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,**
**LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

v

*/s/ Victoria A. Degtyareva*
Victoria A. Degtyareva (SBN 284199)
Rose L. Ehler (SBN 29652)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**Plaintiffs' Position:** For nearly four months, Snap has refused to search for and produce **any** documents in response to Plaintiffs' RFP Nos. 103-104. During the parties' final conferral, Plaintiffs sought compromise by offering to narrow these Requests. Snap then agreed to produce documents pursuant to Plaintiffs' compromise proposal provided that no search terms would be added or amended as a result of the agreement. But this condition was a poison pill, as Requests 103 and 104 seek unique documents not targeted by other Requests. Thus, Snap's agreement to produce documents responsive to Requests 103 and 104, but not to add a search term to actually identify such documents, is a hollow proposal and no compromise at all.

This points to a larger problem: Snap has repeatedly taken unreasonable positions in response to Plaintiffs' RFPs. Indeed, the July DMCS identifies eighteen ripe RFP disputes and nineteen unripe RFP disputes with regard to Snap; there is only one other defendant with any ripe RFP disputes. And Snap refuses to produce documents where its co-defendants do not; for example, *every other Defendant* has agreed to produce documents responsive to Requests 103 and 104, illustrating the reasonableness and relevance of the Requests. Snap is an outlier.[1]

To compound matters, although the parties have yet to reach agreement on over 70 of the 174 RFPs propounded by Plaintiffs thus far, and even though Snap has produced less than 2,500 total documents to date, Snap informed Plaintiffs that as of June 21, it will for the most part not agree to run any additional searches, even for RFPs that have not yet been served or responded to. Snap justifies its preemptive refusal to search for responsive documents by characterizing the searches to which it has already agreed as "very broad," but Snap's search terms are considerably more narrow than those agreed to by other defendants. For example, where other Defendants agreed to perform stand-alone searches for Named Features, Snap refused and insisted on limiters in every search term involving the Named Features. Other Defendants have also agreed to run search terms that include their co-Defendants' names and platforms; Snap has flatly refused to do so. And the result of these tactics is manifest; to date, Snap has produced fewer than 2,500 total documents. Every other Defendant has produced more than 25,000. Thus, while this dispute concerns two RFPs, it illustrates a pattern of unreasonable discovery conduct. Plaintiffs seek an order compelling Snap to respond to RFPs 103-104 (as narrowed by Plaintiffs) and utilize the following search term: [U18] w/25 (Meta OR Facebook OR FB OR Instagram OR insta OR Google OR YouTube OR Tiktok OR byte OR bytedance OR apple OR "app store").[2]

**RFPs 103-104**: These Requests seek "Communications with any other Defendant(s) [and/or Apple] concerning: (1) the use of social media platforms by Children; (2) the use of social media platforms by Teens; (3) age verification or age estimation for users; (4) parental controls; (5) CSAM reporting; or (6) age-appropriate design. This request includes Communications in connection with offering Your Platform through Google Play."[3]

---

[1] In its brief, Snap claims it has agreed to conduct a reasonable search for documents responsive to RFPs 103-104, but this is untrue. Snap merely offers to produce documents identified through other searches, which are tailored to other Requests. For example, no other search term incorporates any co-Defendants' names or platforms.

[2] [U18] is a set of terms that refer to users under the age of 18 that the parties negotiated.

[3] "Children" is defined as users under the age of thirteen.

During a final conferral of trial counsel, Plaintiffs offered to significantly narrow each RFP to seek only communications with other Defendants and/or Apple concerning (1) the use of social media platforms by Children, and (2) the use of social media platforms by Teens. No other RFPs seek Defendants' communications with each other and/or Apple regarding the use of social media platforms by Children (under 13), which is illegal under COPPA, or Teens (under 18). The Requests seek information that is plainly relevant. Snap claims Children cannot use its platform; its communication with other Defendants about the use of Snapchat or other platforms by Children will show knowledge that its age gating methods are or were ineffective, that Children are in fact using its platform and other social media platforms, and that its public statements to the contrary are or were false. Such communications are not *targeted by* any other existing searches; Snap certainly identifies none. Further, communications responsive to these Requests are also likely to lead to relevant documents discussing Defendants' knowledge of compulsive or problematic use of their platforms, collaboration to increase engagement despite negative health impacts, and safety problems faced by minors on the platforms—all of which go to directly to failure to warn.

Snap does not seriously contest the relevance of the sought-after documents, but rather claims that responsive information will be encompassed by other searches. Instead, Snap invokes a burden argument, which is meritless and turns on highly misleading data. Snap claims that the search Plaintiffs propose is so broad it crashed Snap's system, but this is untrue. Plaintiffs initially proposed a different, broader search, but after Snap claimed it caused error, Plaintiffs proposed the narrower search set forth above. Snap rejected this proposed term during search term discussions, stating, "You have not explained how this search is reasonably tailored to capture responsive documents. We objected to RFPs 103 and 104." Snap provided no hit counts from this search, as is required by the ESI Protocol before a party may assert burden. *See* Order Governing ESI § 9, ECF No. 690. Snap's failure to comply with the ESI Protocol forecloses its assertion of burden.

And to make matters worse, the night before this brief was due, and after two letter brief exchanges, Snap informed Plaintiffs *for the first time* that following the parties' H(2) conferral, it ran the search Plaintiffs now propose and that search also caused Snap's system to crash. This untimely disclosed information should be disregarded. Snap has clearly not engaged with Plaintiffs transparently and, apparently, engaged in a final H(2) conferral without ever running the search it refused to run. There is also reason to doubt Snap's characterization that it is incapable of running Plaintiffs' search. Other defendants, including Tik Tok and YouTube, have agreed to run similar searches without purportedly crashing their systems.[4] In addition, Snap has previously claimed it was technologically impossible to run many other searches that were ultimately resolved through transparent information sharing and collaboration. In this instance, however, Snap has not engaged in such a process and should not benefit from withholding data until the eleventh hour.[5]

---

[4] Snap further claims Meta and Tik Tok agreed to produce a narrower category of documents in response to similar requests, but this is misleading. Tik Tok has only limited the phrase "social media platforms" to those involved in this case and Meta agreed to produce documents responsive to all six categories in the requests except age-appropriate design. The proposal Plaintiffs offered Snap is narrower than both of these agreements.

[5] After insisting during H(2) and part of the letter briefing exchange that it refused to add any search term to identify documents responsive to RFPs 103-104, Snap finally proposed a term that was so constrained by limiters it hardly detected any documents.

Snap also claims searches for "Google," "Facebook," and "Apple result in large hit counts. But Snap never provided these purported figures to Plaintiffs during search term negotiations and should not be permitted to rely on this data now. In addition, the data is irrelevant because Snap is referring to stand-alone searches, which Plaintiffs have not asked it to run.

Nor can Snap claim other searches will adequately identify documents responsive to RFPs 103-104. Again, Snap—unlike other Defendants—has categorically refused to incorporate the names of its co-Defendants or their platforms in any searches. Accordingly, RFPs seeking communications between Snap and its co-Defendants will not be sufficiently captured by other searches tailored to identify documents responsive to different RFPs. Snap well understands this and focuses on searches designed to capture other topics. But Plaintiffs have already narrowed the Requests to exclude communications regarding issues that may be captured by Snap's existing searches, such as parental controls or CSAM reporting. Snap's speculation about the sufficiency of other searches, tailored to other issues, is just that—speculation—and Snap's deduplication efforts, as required by the ESI Protocol, will ensure that only unique documents are reviewed.

The Court should compel Snap to produce documents responsive to Request Nos. 103 and 104, and to utilize the tailored search term Plaintiffs previously proposed and that is set forth above.

**Snap's Position:** After nine weeks of meet-and-confers, Snap agreed to run over 260 very broad searches[6]—most proposed by Plaintiffs. After the parties' agreement, and in the interest of compromise, Snap agreed to produce documents responsive to two RFPs (103 and 104) to which Snap had previously objected, provided that those documents hit on the already agreed-upon search terms. Plaintiffs rejected Snap's proposal, insisting that Snap add a new search—one so overly broad that Snap's database was not able to even run the search because it exceeded the database's processing capabilities. In short, it is technologically impossible for Snap to use Plaintiffs' search to find and review documents. Snap then proposed a more tailored new search, but Plaintiffs rejected that proposal as well.

Plaintiffs' request is not proportionate to the needs of the case. Snap's existing terms are sufficiently broad to locate relevant documents. Despite Plaintiffs' claims that these RFPs seek "unique" documents, they have not identified a single category of relevant documents that is missing from Snap's existing searches. Nor could they: these RFPs seek communications with the other Defendants or Apple that, if they are relevant, will be captured by existing terms. Adding further terms now would thus be unlikely to locate additional relevant documents, would be unduly burdensome for Snap, and would threaten to delay the compressed discovery schedule. The parties must substantially complete document production by September 20—less than three months from now. Snap is committed to meeting that deadline, but it cannot do so if Plaintiffs insist on adding new terms any time Snap agrees to compromise on responsiveness criteria.

Because they cannot satisfy Rule 26(b)(1)'s proportionality requirements, Plaintiffs focus on other discovery issues not before the Court. Their accusations have no merit. Snap has repeatedly compromised, including by agreeing to broader search terms, more custodians, and more

---

[6] Many of these searches are compound searches with "or" connectors, making them the equivalent of multiple—and often dozens of—searches.

3

expansive responsiveness criteria than Snap initially proposed. And Snap is currently reviewing a substantial number of documents and preparing additional document productions, which it could not do before the parties had agreed upon custodians and search terms.

***Background.*** RFPs 103 and 104 originally sought virtually all communications between Snap and the other Defendants or Apple. Even Plaintiffs' narrowed versions seek all communications between these entities relating to the use of social media by users under 18, regardless of whether they are relevant to any issue in this case.[7] While Snap maintains that these RFPs are overbroad, irrelevant, unduly burdensome, and not proportionate, in the interest of compromise, Snap has agreed to conduct a reasonable search for communications with any other Defendant or Apple that concern the use of social media by minors *related to issues that are relevant to this case*.

***Snap's Current Terms Will Identify Relevant Communications.*** Snap's current terms will provide Plaintiffs with ample discovery into relevant communications between Snap and the other Defendants or Apple. Plaintiffs have not identified any specific relevant communications that are not already captured by Snap's existing broad searches. Nor could they because the existing searches cover a broad array of topics—not limited to Snapchat and its features—that relate to minors' use of online apps, including the alleged harms, safety features, reporting processes, age verification, research, advertising, user engagement, and schools. These searches are broad enough to pick up any relevant communications involving Apple or the other Defendants on the categories that Plaintiffs purportedly seek with these RFPs.

For instance, the general industry term "age verification" (and synonyms) is included in Snap's existing searches about the Named Features[8]—meaning that any search relating to the Named Features will include communications about age verification. Another existing search seeks "age" within five words of terms like "actual," "real," "estimate," or "inferred" and returns more than 20,000 documents, and other searches include terms related to the Children's Online Privacy Protection Act, children, or circumventing age verification. Likewise, on compulsive use, an existing search seeks terms like "develop," "design," "evaluate," or "research" within 25 words of addiction-related terms like "addict," "compulsive," or "excessive" and returns more than 45,000 documents. On safety, there is a search that includes words like "safety" or "protection" within 15 words of any of the Named Features, which returns approximately 125,000 documents, as well as other searches relating to safety features, reporting, or warnings. And several other searches include terms related to the alleged addiction or safety harms (e.g., "addict," "harm," "complain," "anxiety," "anorexia," etc.) within 15 or 25 words of any of the Named Features; each of these searches returns tens of thousands of documents. For efforts to increase user engagement by minors, Snap has included a search that uses terms like "grow," "engage," "usage," or "retention" within 25 words of minor-related terms and returns more than 130,000 documents. None of these searches are limited to documents that are about Snapchat only and, thus, they will pick up any

---

[7] Contrary to Plaintiffs' claims, none of the Defendants agreed to respond to RFPs 103 and 104 as written, and two of them (Meta and TikTok) agreed to produce only a much narrower category of documents than what Plaintiffs seek from Snap.

[8] Indeed, Snap's search string related to its "Named Features" includes many generic industry terms that are not specific to Snapchat, such as "age verification," "parental control," "endless scroll," "privacy settings," "notification," "algorithm," and "user reporting."

4

relevant communications with other Defendants or Apple.

***Plaintiffs' Request for Additional Terms is Not Justified.*** Plaintiffs propose an additional search with broad terms such as "TikTok," "Meta," "YouTube," "Google" and "Apple," which is limited only by terms related to minors. That request is unjustified.

Search terms, like all discovery, must seek information relevant to a "claim or defense and [be] proportional." Fed. R. Civ. Proc. 26(b)(1); *see also* N.D. Cal Guidelines for the Discovery of Electronically Stored Information, Guideline 1.03 (Rule 26(b)(1) applies to ESI searches). A communication with Apple or another Defendant is not relevant simply because it concerns social media and minor users. To be relevant, communications must relate to the parties' claims or defenses, such as communications about the Named Features or about Plaintiffs' alleged harms. *See Yuntek Int'l, Inc. v. Xiamen Jxd Elec. Com. Co.*, No. 20-CV-07201-JSW (RMI), 2022 WL 215121, at *3 (N.D. Cal. Jan. 25, 2022) (rejecting request for "all communications" between defendants "relating to the accused products"). Because Snap's existing terms will identify the communications that relate to the issues at stake, adding new, broad terms like "Apple" is highly unlikely to identify additional relevant evidence. *See* Guideline 1.03 (ESI requests "should be reasonably targeted, clear, and as specific as practicable").

And adding such terms would unduly burden Snap by substantially increasing the number of irrelevant documents Snap will have to review. *See Digital Ally, Inc. v. TASER Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2018 WL 4334297, at *5 (D. Kan. Sept. 11, 2018) (rejecting terms that "would return any email mentioning patents and competition or strategy"). For instance, "Google" hits on nearly 1 million documents, including unrelated Google news alerts and links to Google documents, and "Facebook" and "Apple" each hit on more than 600,000 documents[9]; any searches containing these terms must include sufficient limiters to be reasonable. Indeed, Snap tested the very search Plaintiffs propose in this letter brief, but Snap's database could not run the search because it exceeded its processing capabilities. Snap informed Plaintiffs of this in its initial draft brief, and then offered a refined search that includes names of the other Defendants' platforms and Apple with terms for users under 18 and within 25 words of terms for the alleged harms (e.g., "anxiety" or "addict")—which is tailored to the relevant issues and had approximately 5,000 hits. Plaintiffs rejected Snap's offer.

Courts have rejected "broad generic terms" as an "improper fishing expedition" that is "not proportional to the needs of the case"—particularly where, as here, the responding party already has terms to capture relevant materials. *Weinstein v. Katapult Grp., Inc.*, No. 21-CV-05175-PJH, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022); *see also Lin v. Solta Med., Inc.*, No. 21-CV-05062-PJH, 2024 WL 858750, at *1 (N.D. Cal. Feb. 15, 2024) (rejecting "very general" proposed terms that would "require the excessive production of irrelevant materials").

The Court should deny Plaintiffs' request and order that Snap does not need to add new search terms for these RFPs. Alternatively, the Court should order Snap's proposed search.

---

[9] Snap did not run these terms before as Plaintiffs withdrew their proposal during negotiations.

5

## ATTESTATION

I, Victoria A. Degtyareva, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: June 26, 2024

By: */s/ Victoria A. Degtyareva*