UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISCOVERY DISPUTE REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION NOS. 103-104 TO SNAP**<br><br>Re: Dkt. 981 |

This MDL has been referred to the undersigned for discovery. *See* Dkt. 426. Now before the Court is a joint letter brief regarding a dispute between the PI/SD Plaintiffs (hereinafter, "Plaintiffs") and Snap concerning Plaintiffs' Requests for Production Nos. 103 and 104. [Dkt. 981]. The Court finds the dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also* FREDRIC BELLAMY, ANNOTATED MANUAL FOR COMPLEX LITIGATION FOURTH § 11.41, at 69 (Federal Judicial Center 2023) (Rule 26(b)(1)'s "underlying principle of proportionality means that even in complex litigation, discovery does not require leaving no stone unturned"). In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar.*

*Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").  For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**ANALYIS**

The crux of the Parties' dispute here is whether Snap should run any additional search terms directed at Requests for Production Nos. 103 and 104.  [Dkt. 981].  These RFPs seek: "Communications with any other Defendant(s) [and/or Apple] concerning: (1) the use of social media platforms by Children; (2) the use of social media platforms by Teens; (3) age verification or age estimation for users; (4) parental controls; (5) CSAM reporting; or (6) age-appropriate design.  This request includes Communications in connection with offering Your Platform through Google Play."  *Id.* at 7.

As a result of the meet and confer process, Plaintiffs have narrowed the scope of these RFPs and the relief sought to a request that the Court order Snap to run one specific search term through the database of documents Snap has collected and produce responsive and non-privileged documents.  *Id.*  Specifically, Plaintiffs request that Snap be ordered to run the following search term and then review/produce responsive non-privileged documents resulting from the search: "[U18] w/25 (Meta OR Facebook OR FB OR Instagram OR insta OR Google OR YouTube OR TikTok OR byte OR bytedance OR apple OR 'app store')." *Id.*

Snap argues the existing search terms (negotiated between the Parties) are sufficiently

3

broad to capture the documents sought by RFPs 103 and 104.  *Id.* at 9.  Snap also argues that Plaintiffs' proposed search term crashed their eDiscovery system.  *Id.*

Plaintiffs argue that Snap refused to run the proposed search term during the meet and confer process and only belatedly disclosed the assertion that running the search term caused the system to crash.  *Id.* at 8.  Plaintiffs argue that Snap refused to provide statistics on variations on the search terms (such as searches on "Facebook").  *Id.* at 9.  Plaintiffs further argue that no other requests specifically seek communications with Snap's co-defendants (*i.e.,* Meta, TikTok, and YouTube).  *Id.* at 8.  According to Plaintiffs, no other Defendant has refused to run search terms directed to RFPs 103 and 104.  *Id.* at 8-9.

Snap does not raise substantial arguments that the document requests lack relevance.  Rather, the dispute here focuses on whether running one additional search term is or is not proportional and whether the search term as drafted is burdensome because of the alleged crashing of Snap's eDiscovery system.

The Court finds that RFPs 103 and 104 are directed to relevant evidence.  The Court finds that Plaintiffs' proposal to effectively limit the scope of the requests by having Snap run one additional search term is proportional to the needs of the case.  However, it appears from the record presented that Plaintiffs' proposed search term may be technologically impractical.  The Court is disappointed by the Parties' failure to meaningfully explore alternate phrasing of the search term directed to RFPs 103 and 104—apparently, Plaintiffs demand that Snap run Plaintiffs' term; Snap refuses and apparently prefers to rely on the other existing agreed-upon search terms.  The defect with Plaintiffs' position is that Plaintiffs' search term as currently drafted allegedly causes the system to crash and thus is not practical.  The defect with Snap's position is that Snap essentially relies on speculation that the other search terms would uncover the documents sought by RFPs 103 and 104.  For example, neither Party apparently discussed narrowing the search term from the "w/25" parameter to a tighter parameter such as "w/15".

Accordingly, by no later than **July 3, 2024**, Snap shall file with the Court a declaration from an individual from Snap's eDiscovery vendor or service provider with the best knowledge or personal knowledge: (1) attesting to the facts of when (dates and times) they ran Plaintiffs'

4

1  proposed search term; (2) confirming whether or not running that search term caused the
2  eDiscovery system to crash; (3) explaining the nature of the "crash" of that system (and describing
3  what "system" was involved); (4) explaining whether they explored and attempted any fixes or
4  other reasonable modifications of the proposed search term or other parameters to avoid a crash of
5  the system, and if so, the results of any such attempted corrective measures (and if they explored
6  but did not attempt any corrective measures, why not); (5) explaining whether they have reason to
7  believe that any reasonable modifications to the search term or other parameters are likely to avoid
8  a crash of the system (and if so, what those modifications are); and (6) explaining whether they
9  communicated any such modifications to Snap's counsel, and if not, then why not.

Within **three (3) business days** of the filing of the declaration from Snap's eDiscovery vendor or service provider, Plaintiffs shall file with the Court a declaration from an individual from Plaintiffs' eDiscovery vendor or service provider with the best knowledge or personal knowledge: (1) attesting to whether, in their experience, running a proposed search term can cause an eDiscovery system such as Snap's to crash; (2) explaining whether they explored and attempted any modifications of the search term or other parameters which (in their view) would avoid that crash; and (3) explaining whether they have reason to believe that any reasonable modifications to the search term or other parameters are likely to avoid a crash, what those modifications are, whether they communicated any such modifications to Plaintiffs' counsel, and if not, then why not.

Further, by no later than **July 10, 2024**, counsel for Snap shall file a declaration reporting to the Court the hit count statistics (after de-duplicating) for the number of documents which result from querying Snap's document production database with each of the following search terms for documents falling within the default time period for Snap document discovery:

- [U18] w/15 (Meta OR Facebook OR Instagram)
- [U18] w/15 (Alphabet OR Google or YouTube)
- [U18] w/15 (TikTok OR bytedance)
- [U18] w/15 (Apple)

After reviewing the declarations, the Court will instruct the Parties further as to the instant

1  dispute, including whether the Court will order lead trial counsel (or anyone else the Court deems
2  appropriate) for these Parties to meet and confer in person, whether a hearing will be held, whether
3  further declarations are required, and/or whether in-house counsel for any Party (or any other
4  individual associated with any Party) will be required to participate in any future meet and confers
5  either remotely or in person.

6        The Court is disappointed at what appears to be an increasing failure by all the Parties to
7  meaningfully engage in the meet and confer process for resolving discovery disputes as this MDL
8  has proceeded.  The Court has previously directed the Parties both in written Orders and at
9  hearings to work harder on resolving discovery disputes.  To the extent it was not clear from prior
10  directions from the Court, the Parties are both encouraged and expected to timely share
11  eDiscovery statistics such as hit number results when they have a dispute over eDiscovery issues
12  such as search terms.  Delaying the sharing of search term statistics and the fact that a proposed
13  search term crashed a system but then using that information to support a position on the merits of
14  this discovery dispute is not consistent with the Court's instructions to counsel and the Parties at
15  multiple DMCs to share information reasonably during the meet and confer process (rather than
16  waiting until the draft discovery letter brief is first exchanged).  Further, in the meet and confers
17  that involve eDiscovery issues, the Parties are encouraged to have persons knowledgeable about
18  the technical operations and features of their eDiscovery systems involved, including (where
19  appropriate) persons knowledgeable from their respective eDiscovery service providers who can
20  speak to issues such as system crashes and statistics from sample searches when a Party intends to
21  rely on such information to support its positions.

22        This **RESOLVES** Dkt. 981.
23        **IT IS SO ORDERED.**
24  Dated:  June 28, 2024

PETER H. KANG
United States Magistrate Judge