[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**JOINT STATUS REPORT ON DISCOVERY FOR JULY 11, 2024 DISCOVERY MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Discovery Management Order No. 2 (ECF 606), the Personal Injury ("PI") and School District and Local Government Entity ("SD") Plaintiffs, State Attorneys General ("State AGs"), and Defendants submit this agenda and joint statement in advance of the July 11, 2024, Discovery Management Conference ("DMC").

I.    **Case Management**

The Parties wish to bring to the Court's attention that Judge Gonzalez Rogers reset next month's Case Management Conference ("CMC") for August 9, 2024. ECF 976 at 2. Next month's DMC is currently set for August 15, 2024. ECF 606 at 6. The Parties respectfully inquire as to whether this Court intends to keep the August 2024 DMC on its currently scheduled date, or whether it intends to reschedule the DMC for August 8 in order to align it with the reset CMC.

II.   **Status of Discovery and Parties' Progress in Meeting Discovery Deadlines**

    A.    **Plaintiffs' Requests for Production of Documents (RFPs) Served on Defendants**

        1.    **RFPs Served by PI/SD Plaintiffs and State AGs**

Plaintiffs have served a total of 874 RFPs on Meta:

- The PI/SD Plaintiffs have served 367 RFPs on **Meta.**

- The State AGs have served 147 RFPs on Meta.

- Nine of the twelve Bellwether PI Plaintiffs have each served 40 RFPs on Meta, for a total of 360 RFPs.

The PI/SD Plaintiffs have served 323 RFPs on the **TikTok Defendants**.  Certain Bellwether PI Plaintiffs have each served 40 RFPs on the TikTok Defendants, for a total of 320 RFPs.

The PI/SD Plaintiffs have served 174 RFPs on Snap.  Four of the 12 Bellwether PI Plaintiffs have each served 40 RFPs on Snap for a total of 200 RFPs.

The PI/SD Plaintiffs have served 148 RFPs on YouTube.  The Bellwether PI Plaintiff Smith served 40 RFPs on YouTube.

The Bellwether SD Plaintiffs have served 13 RFPs on Meta, TikTok, and Snap, and 14 RFPs on YouTube.

        2.    **Defendants Responses and Objections (R&Os)**

**Meta** has served R&Os to Sets 1-13 of the PI/SD Plaintiffs' RFPs (367 RFPs), and R&Os to Set

1 of the State AGs' RFPs (39 RFPs).  Meta served R&Os to eight Bellwether PI Plaintiffs' RFPs Set 1 (40 RFPs each) on June 10, June 14, and June 20, 2024, and will serve R&Os to the RFPs most recently-served by one additional Bellwether PI Plaintiff on July 22.  Meta's R&Os to Set 2 of the State AGs' RFPs are due on July 22, 2024.  Meta's R&Os to the Bellwether SD Plaintiffs' RFPs are due on July 29, 2024.

The **TikTok** Defendants have served R&Os to all of the PI/SD Plaintiffs' RFPs with the exception of Set 15, which is due July 8, 2024.  The TikTok Defendants' R&Os to the Bellwether PI Plaintiffs' RFPs Set 1 (40 RFPs each) were served on June 10, June 14, and June 20, 2024.

**Snap** has served R&Os to all of the PI/SD Plaintiffs' RFPs, including the bellwether PI Plaintiffs' RFPs, with the exception of the Bellwether SD Plaintiffs' RFP Set A, which is due July 26, 2024.

**YouTube** has served R&Os to all of the PI/SD Plaintiffs' and Bellwether Plaintiff Smith's RFPs.  YouTube has not responded to the Bellwether SD Plaintiffs' RFP Set A, which was served on the date of this filing.

### 3.    <u>Status of Document Productions</u>

All Defendants have been producing documents in response to Plaintiffs' RFPs and will continue to make rolling productions.

**Meta** has produced 270,591 documents consisting of over 1.5 million pages.  Meta has also produced certain structured data to the PI Plaintiffs.

The **TikTok** Defendants have produced 27,122 documents consisting of more than 300,000 pages in response to the PI/SD Plaintiffs' RFPs.

**Snap** has produced 2,294 documents in response to a Rule 30(b)(6) deposition notice and the PI/SD Plaintiffs' RFPs.  Snap and Plaintiffs also recently reached agreement on a cadence for Snap's rolling productions over the summer and agreed that Snap will produce complete custodial files for three potential early deponents but need not otherwise prioritize productions by custodian ahead of the September 20, 2024 substantial completion deadline.

**YouTube** has produced more than 41,335 documents in response to the PI/SD Plaintiffs' RFPs and/or certain topics in the PI/SD Plaintiffs' 30(b)(6) deposition notice.

### 4. Status of Conferrals on Custodians and Search Terms

The Parties are pleased to report that all Plaintiffs and all Defendants have resolved their disputes regarding custodians and search terms to be used for purposes of identifying responsive, non-privileged documents in response to those RFPs for which such documents will be identified by running search terms over files collected for agreed-upon custodians.  Discussions continue between the Parties concerning the identification and production of relevant information from sources, or portions of sources, not organized or stored by custodian. Plaintiffs and TikTok held three custodians in abeyance pending the Court's discovery rulings and are conferring now about whether to include them.

### B. Discovery Requests Served by Meta on State AGs to Date

### 1. RFPs Served by Meta on State AGs to Date

Meta served its first set of 45 RFPs on each of the 35 State AGs on February 27, 2024.  Meta served its second set of RFPs and first set of interrogatories on each of the 35 State AGs on May 3, 2024.  There is a pending dispute before the Court regarding whether the State AGs have control over state agencies' documents for purposes of discovery that was fully briefed and for which a hearing was held on May 6, 2024.  *See* ECF 738.  Given the September 20, 2024 substantial completion deadline, Meta respectfully wishes to inquire regarding the status of the Court's resolution of the pending dispute.

### 2. State AG's Responses and Objections

The State AGs served their collective responses and objections to Meta's first 45 RFPs on March 28.  The State AGs served their collective responses and objections to Meta's second set of RFPs and first set of interrogatories on June 3.

### 3. Status of Document Productions

The State AGs produced an initial tranche of 28 documents on April 29, 2024.  The State AGs produced a second tranche of 885 documents on May 31, 2024.  The State AGs are coordinating with their coalition to continue their rolling productions.

### 4. Status of Conferrals

The Parties met and conferred on April 16, 2024, regarding the State AGs' R&Os to Meta's first 45 RFPs, as well as Meta's request that the State AGs identify custodians and search terms.  At Meta's suggestion, the Parties discussed a subset of RFPs and agreed to exchange letters regarding the other

RFPs.  The Parties are continuing to engage in letter correspondence.

C.    **Discovery Requests Served by Defendants on Bellwether Plaintiffs to Date**

1.    **Discovery Requests Served by Defendants on Bellwether Plaintiffs**

Defendants have jointly served approximately 83 RFPs in each of the Bellwether SD Cases, and 83 to 121 RFPs in each of the Bellwether PI Cases.[1]  Defendants have jointly served 3 interrogatories in each of the Bellwether SD Cases, and 5 to 7 interrogatories in each of the Bellwether PI Cases.

2.    **Bellwether Plaintiffs' Responses and Objections (R&Os)**

Ten Bellwether SD Plaintiffs served R&Os to Defendants' RFPs (Set 1) on May 31.  Another Bellwether SD Plaintiff served R&Os to Defendants' RFPs (Set 1) on June 20, 2024.  The other Bellwether SD Plaintiff's responses are not yet due.  Ten Bellwether SD Plaintiffs also served R&Os to Defendants' Interrogatories (Set 1) on June 6.  Another Bellwether SD Plaintiff served R&Os to Defendants' Interrogatories (Set 1) on June 20.  The other Bellwether SD Plaintiff's responses are not yet due.

The Bellwether PI Plaintiffs served R&Os to Defendants' RFPs (Sets 1-2) in late May and June.  The Bellwether PI Plaintiffs' responses and objections to Defendants' interrogatories and Set 3 RFPs are due mid- to late-July.

3.    **Status of Conferrals**

The Parties have conducted and continue to conduct meet-and-confer conferences regarding the Bellwether SD Plaintiffs' R&Os to Defendants' RFPs, as well as their litigation hold lists, custodians, ESI repositories, and search terms to be applied by the Bellwether SD Plaintiffs.  The Parties similarly continue to meet-and-confer regarding the Bellwether PI Plaintiffs' R&Os to Defendants' RFPs, custodians, ESI repositories, and the propriety and scope of search terms to be applied by the Bellwether PI Plaintiffs.  At least one dispute is ripe for resolution and is addressed below.  Others may be addressed by letter brief or at the August DMC.

D.    **Plaintiff Fact Sheets**

1.    **Personal Injury Plaintiff Fact Sheet (PFS)**

---

[1] YouTube Defendants have only served discovery in those Bellwether PI Cases where they have been named as defendants.

As of June 28, there are 255 individual PI Plaintiffs that have filed a Short Form Complaint in this MDL. 190 PI Plaintiffs served PFSs by the April 1 deadline set forth in the PFS Implementation Order (ECF 596) and Case Management Order 10 (ECF 604). Pursuant to the Court's April 10 Order (ECF 748), an additional 45 PI Plaintiffs were to provide PFSs by May 8. Of those 45 Plaintiffs, 22 Plaintiffs failed to submit a PFS by the deadline, and 3 Plaintiffs submitted a PFS after the deadline. Counsel for the large majority of the 19 PI Plaintiffs with outstanding PFSs have informed Defendants of the status of their efforts to complete them, advising that in many instances their clients have not been reachable.  The Parties have agreed to a protocol for counsel to withdraw from cases where counsel has lost communication with their client, which may include dismissal pursuant to Rule 41(b) once the plaintiff is provided notice. *See* ECF 987 (July CMCS).

Defendants have submitted a number of PFS deficiency letters and the PI Plaintiffs have responded, including by raising the validity of such alleged deficiencies, and/or amending their PFSs accordingly. There are, however, certain deficiency letters that have not been responded to within the 60-day period set forth in the PFS Implementation Order (ECF 596). Should the Parties reach an impasse on any of the individual deficiency letters, they will raise them with this Court.

## 2.    School District PFSs

By Defendants' count, as of June 28, 2024, there are 173 individual SD Plaintiffs in this MDL. One-hundred and ten (110) SD Plaintiffs served PFSs by the April 1, 2024 deadline set forth in the Implementation Order (ECF 731). Since April 1, 2024, 35 SD Plaintiffs have served PFSs. PFSs for 28 SD Plaintiffs are not yet due under the Court's orders, and those 28 SD Plaintiffs have not yet served a PFS.

## E.    Depositions

### 1.    Scheduling of and Conferrals Regarding Plaintiffs' 30(b)(6) Deposition Notices

The Parties have continued conferring regarding the PI/SD Plaintiffs' initial Rule 30(b)(6) deposition notices and have scheduled a number of depositions.  Meta and Plaintiffs have largely resolved their disputes regarding the scope of Plaintiffs' ESI-related 30(b)(6) topics and have scheduled deposition dates on July 24 and 31.  Meta and Plaintiffs have also agreed to the timing for Meta to

provide its responses to Plaintiffs' 30(b)(6) deposition on written questions (July 25, 2024).

### 2.     Plaintiffs' Notices of Anticipated Depositions of Meta

Since the June status report (ECF 940), Plaintiffs have not identified any additional anticipated deponents.  To date, Plaintiffs have identified 37 anticipated Meta deponents.

Meta continues to collect and review potentially relevant custodial materials associated with the now-37 witnesses identified by Plaintiffs as anticipated deponents, including Emails, Workplace Chats, and other custodial data sources.  In accordance with DMO 7, Plaintiffs and Meta have been working collaboratively to schedule (or rearrange the schedule) of depositions to take advantage of any custodial files which are able to be produced more quickly than others, while continuing their coordination with the Tennessee Attorney General's office on scheduling (and, if needed, adjusting the schedule) of cross-noticed depositions.

For certain custodians whose depositions may occur before September 20, Meta has proposed deadlines to substantially complete production of responsive, non-privileged custodial documents two weeks before the deposition.  To assess this request, Plaintiffs asked Meta to provide information concerning the anticipated size of the relevant custodial files.  Meta provided that information – specifically, Meta estimated the total size of forthcoming custodial productions for each of the eight potential early deponents.  Having now received that information, Plaintiffs have communicated to Meta the dates by which they request to receive complete custodial files to ensure adequate time for review prior to the depositions occurring, which range from two weeks to five weeks before the dates currently requested for the depositions.  Meta responded to that communication by inquiring why Plaintiffs need more than two weeks to review custodial files that are expected to be less than 10,000 documents, particularly when Plaintiffs requested only two weeks to review a custodial file expected to be close to 14,000 documents, as Meta had proposed.[2]

---

[2] Plaintiffs have reserved the right to seek postponement of a deposition should the deponent's actual file size differ materially from the information Meta has provided.  Meta made clear to Plaintiffs that its custodial file size estimates were just that: estimates.

**Meta's Further Position:**

Plaintiffs did not answer that question; and they have refused to provide information about their "capacity" to review custodial files or the "cap" on documents they can review – despite referencing such "capacity" and "cap" in meet-and-confers.[3]  Instead, Plaintiffs responded by stating that there is no reason Meta should "wait" to produce the custodial files until two weeks before the custodian's scheduled deposition.  But Meta's proposal is not to "wait" to produce any custodial files.  Rather, Meta's proposal is to establish a reasonable deadlines by which such files must be produced in order to accommodate the early depositions Plaintiffs wish to take, while simultaneously getting through millions of documents in order to meet the September 20 substantial completion deadline for all 122 of the Parties' agreed-to custodians.

The production of additional documents two weeks before a deposition will not prejudice Plaintiffs particularly given that Meta has already produced to Plaintiffs substantially all documents hitting on Meta's original search terms and Meta's original proposed Relevant Time Period for all of the deponent custodians—some cases over one month ago.  Additionally, because the Parties did not finalize search terms until just last week and the date ranges were not finalized until June 24, per the Court's order, custodial documents for these deponents remain in the collection and processing queue.[4]  Meta is taking all efforts to ensure expeditious processing and review, and to make rolling productions of responsive, non-privileged documents.  Meta will produce any custodial files it is able to produce earlier than the timelines it has proposed, but for the time being can commit only to those timelines, which are eminently reasonable in light of the custodial files already produced for these deponents, and the relatively small volume of files likely remaining to be produced.

**Plaintiffs' Further Position:**

Plaintiffs need and are entitled to sufficient time to review and analyze responsive documents

---

[3] Meta never asked Plaintiffs to disclose "the number and titles of Plaintiffs' document review attorneys," as Plaintiffs claim, *see* n. 5 *infra*.  In inquiring about Plaintiffs' own reference to "capacity" constraints and a "cap" during the Parties' conferrals, Meta was inquiring how many documents Plaintiffs could review in what period of time.  That is the information Plaintiffs have refused to provide, without explanation.

contained in deponents' custodial files.  To that end, Plaintiff carefully considered the dates by which they require complete production of each individual deponent's files, taking into consideration the anticipated complexity of the custodian's documents and the issues likely to be raised in that deposition.  Plaintiffs' proposed deadlines also take into account Meta's insistence that the document counts they cite above are in fact simply estimates, such that the actual number of documents produced just two weeks before a deposition may be substantially higher than Meta posits in objecting to Plaintiffs' proposed deadlines.  Plaintiffs certainly appreciate the work needed to complete custodial file productions. But Plaintiffs do not understand how it could take Defendants so long to make these productions, if in fact they are relatively small as Meta has represented, such that Plaintiffs would only receive them two weeks before the custodian's deposition. Regardless, that does not obviate the need for appropriately timed deadlines, deadlines that will help to ensure an orderly process and avoid the disruption that could be caused by belated production of large volumes of responsive documents too close in time to a deposition.[5]

### III.     Ripe Discovery Disputes

####      A.     Disputes Between Personal Injury Plaintiffs and All Defendants

#####           1.     Forensic Inspection Protocol (PI Plaintiffs and Snap, TikTok, and YouTube)

On May 15, 2024, Defendants served a set of RFPs on the Bellwether PI Plaintiffs seeking to inspect the electronic devices used by a Bellwether PI Plaintiff during the Relevant Time Period to access any social media platform, or, alternatively, to obtain forensic images or clones of the devices, as well as all documents related to the plaintiffs' usage data.  Defendants' RFPs also seek documents sufficient to show the unique identifying number for the devices a Bellwether PI Plaintiff used on a "routine basis" to access Defendants Platforms as specified in PFS XIII.A.1.  On May 28, 2024, Defendants provided a proposed protocol to govern the inspection of the Bellwether PI Plaintiffs' devices and usage data by a neutral third party.

---

[5] When Defendants say Plaintiffs have "refused to provide information" about Plaintiffs' review "cap" and "capacity," what Defendants mean is that Plaintiffs have declined Defendants' requests to disclose the number and titles of Plaintiffs' document review attorneys. Such information is protected litigation strategy and attorney work product, and it beggars belief to think Defendants would share this information if Plaintiffs asked for it.

Plaintiffs have taken the position that the proposed protocol is unnecessary because Plaintiffs are already performing forensic imaging on Plaintiffs' primary devices used to access social media and other of Plaintiffs' devices containing relevant information, and have relayed their willingness to provide certain, but not all, requested information and data on those devices.  The Parties have conferred on three occasions regarding the issue of inspection or production of the devices routinely used by Plaintiffs to access Defendants' platforms, and they have reached an impasse.  The final H.2 conference was held on June 28, and the Parties have agreed to exchange letter briefs on July 10.  The Parties agree that this issue may be heard in conjunction with the Court's July DMC, or at the Court's next convenience.

     **B.**    <u>**Disputes Between the State AGs and Meta**</u>

        **1.**    <u>**State AGs' Preservation Obligations/Litigation Holds**</u>

Meta and the State AGs have been engaged in conferrals concerning the State AGs' preservation obligations for this litigation.  In particular, Meta and the State AGs have exchanged written correspondence and met and conferred concerning litigation hold notices to: (1) AG office employees and contractors and (2) State agencies.   The parties had an initial meet and confer conference on June 3, and a subsequent H.2 conference on July 1.  The parties have agreed on a schedule to submit a joint brief on the dispute on July 9.  Meta will then seek leave to address this issue further at the July 11 hearing, and the State AGs have indicated that they do not object to this request.

     **C.**    <u>**Dispute Between PI/SD Plaintiffs and Snap**</u>

        **1.**    <u>**RFPs 41-47, 50-55**</u>

The parties have scheduled a final conferral of lead trial counsel on RFPs 41-47 and 50-55 for July 10, 2024, with joint letter briefing to follow on any remaining disputes.

     **D.**    <u>**Disputes Between PI/SD Plaintiffs and TikTok**</u>

        **1.**    <u>**RFPs 249-252**</u>

<u>**Plaintiffs' Position:**</u>

These Requests seek documents related to how and why TikTok uses influencers to market and promote its platform to youth.  Requests 249 and 250 seek contracts and correspondence between TikTok and specific high-profile minor youth influencers on TikTok (Charli D'Amelio, Liza Anokhina,

Lebron James Jr., and Leni Klum), and Requests 251 and 252 seek documents regarding TikTok's use of and compensation of influencers under the age of 18 generally.  Despite the narrowness of these Requests—which go to TikTok's marketing and promotional strategies, not content in its own right—and their evident relevance to Plaintiffs' claim that TikTok has shaped its marketing and promotion to target youth users, TikTok has refused to produce responsive documents.

**TikTok Defendants' Position:**

The TikTok Defendants assert that contracts, communications and payments to creators arbitrarily selected by Plaintiffs with no rationale provided, as well as any and all creators under the age of 18, are overly broad and in no way relate to the claims at issue in this litigation and invade certain privacy considerations.  Content created by third parties is not at issue in this matter.  Communications with such content creators is likewise so far afield of the issues the parties are focused on in this matter that need for the same has not been established.  Content creators are not advertisers, nor is this marketing by the TikTok Defendants.  The TikTok Defendants have agreed to produce documents related to both, but extending requests to individuals who create content on the platform is overreaching and irrelevant.

The parties held a final meet and confer of lead counsel on June 25 and anticipate submitting joint letter briefing on this issue prior to July 11 so that this issue can be heard during the July DMC.

## IV.  Discovery Issues that Do Not Currently Require Court Action

### A.   Unripe Issues Between School District Plaintiffs and All Defendants

#### 1.   School District Plaintiffs' Preservation Obligations/Litigation Holds

**Defendants' Position:**

Of the 8 Bellwether SD Plaintiffs that have provided document preservation information to Defendants thus far, five did not put in place any litigation holds prior to their selection as a Bellwether, notwithstanding Plaintiffs' July 21, 2023 representation that they were "taking reasonable and proportionate steps to preserve potentially discoverable documents," which raises serious concerns as to Plaintiffs' compliance with their preservation obligations, *see Apple Inc.*, 888 F. Supp. 2d at 998, *supra*. On June 17, 2024, the Parties met and conferred on this issue, and on June 21, 2024, Defendants sent the SD Plaintiffs a follow-up letter asking them to confirm (1) whether and when each non-Bellwether SD

Plaintiff put a litigation hold in place, (2) whether a SD Plaintiff that had not previously issued a hold is willing to do so now, and (3) whether each SD Plaintiff that had not issued a hold is relying on preexisting retention policies to meet their preservation obligations, and if counsel had specifically evaluated whether such policies are sufficient to meet those obligations.

Defendants have attempted to resolve this issue since May 31, 2024, including with multiple intervening communications on the topic, to ensure that holds are in place so that documents do not continue to be lost, and had hoped to present this issue to the Court by the July CMC, but have not been able to hold a final meet-and-confer with Plaintiffs due to accommodating a serious family healthcare issue on Plaintiffs' end, and so intend to raise this issue at the August DMC if it is not resolved before then.

**Bellwether SD Plaintiffs' Position:**

The Bellwether SD Plaintiffs have taken appropriate preservation efforts and, as public entities, they are subject to open records law and document retention requirements, which in many cases requires them to retain documents indefinitely. *See* The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 104 (2018) ("In some circumstances sending a legal hold notice will not be necessary, *e.g.*, where all potentially relevant information is already secured."). Accordingly, there is no basis for Defendants' insinuation that any documents have been lost and, regardless of these standard retention policies which ensure proper document preservation, many Plaintiffs have also sent legal hold notices as a belt and suspenders approach and are scheduling meet and confers to discuss the same with Defendants.

Plaintiffs have engaged with Defendants in meet and confers on this topic and have taken actions in response to these meet and confers as described herein. Plaintiffs will continue to meet and confer with Defendants on this issue.

2.   **School District Plaintiffs' Refusal To Provide Information Relating to the Time Period for Which They Are Seeking Damages.**

**Defendants' Position:**

The SD Plaintiffs are refusing to disclose the time period for which they are claiming injury and

seeking damages, stating cryptically that they will disclose that the time period for which they are seeking damages only "as pretrial discovery progresses." But if the SD Plaintiffs were to disclose late in fact discovery or during expert discovery a time period for damages that is longer than the time period for which fact discovery has been conducted, the Parties would need to re-do fact discovery for the longer time period, which would be highly unorthodox and inefficient. During fact discovery, the SD Plaintiffs must produce relevant documents for the entire time period for which they are claiming injury and seeking damages, plus some reasonable period of time before then.

**Plaintiffs' Position:**

The SD Plaintiffs have been meeting and conferring with Defendants on these issues and will continue to do so. Plaintiffs are investigating the time period for their damages as this litigation proceeds through discovery and will disclose the damages time period in a timely manner to Defendants.

### 3.   School District Plaintiffs' Rule 26 Disclosures Regarding Computation of Damages

**Defendants' Position:**

During the March 21 DMC the SD Plaintiffs claimed that they would incorporate by reference their individual PFSs into their Initial Disclosures, including providing the damages computations required by FRCP 26(a)(1)(A)(iii), *see* Tr. of 3/21/24 DMC at 24:11-13, but they did not do so, and are now asserting, over Defendants' objections, that they will not provide damages computations until the expert discovery phase of the case. Plaintiffs should be required to provide their computation of each category of damages they are seeking ***now***; no expert is needed for a basic computation of the categories of damages claimed by the SD Plaintiffs (*e.g.*, expenses related to hiring personnel to address student mental health and repairing property damage), *see* First Amended Master SD Compl. (ECF 729), ¶ 212. *See also, e.g.*, *Burnett v. United States*, 2016 WL 3392263, \*3 (C.D. Cal. Jun. 14, 2016) (rejecting argument that expert testimony relieved the plaintiff of the obligation to investigate his claims and provide damages computations based on reasonably available information prior to expert analysis).

**Plaintiffs' Position:**

In accordance with the Plaintiff Fact Sheet (ECF 731-1 at 13-14), which Defendants jointly submitted to the Court after the March 21 hearing, the SD Plaintiffs have detailed "***each category*** of

damages or monetary relief" sought.  Defendants' demands for precise damages calculations at this early stage is premature and ignores the Court-ordered schedule (ECF 604) and Ninth Circuit case law, which permits damages calculations that will require expert testimony, such as in this case, to be provided when expert reports are exchanged.  *See, e.g.*, *Focal Point Films, LLC v. Sandhu*, 2020 WL 5760355, at *3 (N.D. Cal. Sept. 28, 2020) ("Given the early stage of the case" it was permissible for plaintiff to initially only disclose the types of damages sought and later disclose a "damages calculation in an expert report that was produced by the deadline set by the Court"); *Naxos, LLC v. Am. Fam. Ins. Co.*, 2020 WL 106740, at *5 (W.D. Wash. Jan. 9, 2020) (finding it was proper for plaintiff to identify categories of damages in initial disclosures and later provide precise damages calculations via an expert report); *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, 2016 WL 1611585, at *4 (D. Nev. Apr. 21, 2016) (finding it was appropriate for plaintiff's damages calculations to be "'made known' throughout the discovery process" including in expert reports).

### 4.   School District Deposition-Hours Limit

**Defendants' Position:**

Pursuant to DMO 3, Defendants are allotted 35 hours of fact depositions of each Bellwether SD Plaintiff and 10 hours for Rule 30(b)(6) depositions of each Bellwether SD Plaintiff, *see* ECF 667 at 4—limits that were entered without the benefit of SD PFSs, litigation hold lists, or earlier discovery responses from the Bellwether SD Plaintiffs, and that were lower than Defendants requested, *see* Dkt. 617 at 9.  Early discovery in the Bellwether SD cases has now made clear that the fact-depositions hours limit may need to be revisited, such as the June 6 interrogatory responses of Tucson Unified School District (a medium-sized SD with 39,927 students) and Breathitt County School District (a small SD with only 1,600 students), which identified 35 and 12 current and former employees, respectively, with "*unique*, *material* knowledge of Plaintiff's allegations in this action"—individuals Defendants should be permitted to depose.  The sheer size and complexity of other Bellwether SD Plaintiffs reinforces that the existing limits are inadequate, irrespective of their interrogatory responses, and Defendants plan to meet and confer further with Plaintiffs about these limits in light of these factual developments (and would have done so already, but for Plaintiffs' counsel's family health issues), and will seek relief from the Court if needed.

**Bellwether SD Plaintiffs' Position:**

Defendants were fully aware of the relevant issues in this litigation and the status of discovery when they stipulated to 10 hours for Rule 30(b)(6) depositions, asked the Court to allow a combined 40 hours for fact depositions of each Bellwether SD Plaintiff, and ultimately agreed to the 35 hour limit. *See* Hearing Transcript (02/22/2024) at 48 ("I also do just want to make sure that I state for the record just how complex the school district bellwether discovery is also going to be. In the school district cases, the list of potential fact witnesses is vast. It includes principals, you know, I said school board presidents, executive directors of the school districts, school health, supervisors of students and family services, district social workers, district superintendents, school police departments, directors of school safety, technology directors, school CFOs, former administrators, faculty and students and others. And that is discovery that the defendants will need to develop their defenses in these cases."). There have been no surprises and Defendants should be required to abide by their prior agreements.

### 5.   School District Plaintiffs' Responses and Objections to Requests for Production

**Defendants' Position:**

The Bellwether SD Plaintiffs' R&Os to Defendants' RFPs are extremely deficient, as the Bellwether SD Plaintiffs are refusing to produce documents relating to a host of topics that are directly relevant to the Bellwether SD Plaintiffs' allegations.  Given the expedited discovery schedule in this case, Defendants are concerned that the serious deficiencies in the Bellwether SD Plaintiffs' R&Os will delay subsequent discovery deadlines.  As noted previously, the Parties have been in the process of meeting and conferring with respect to Defendants' First RFPs to the Bellwether SD Plaintiffs for several weeks, but Defendants anticipate that it will be necessary to file motions to compel relating to some of these discovery requests in the near future.

**Bellwether SD Plaintiffs' Position:**

The SD Bellwether Plaintiffs timely responded to Defendants' RFPs on May 31, 2024.  They have been meeting and conferring with Defendants about their responses and objections and anticipate ongoing meet and confers to address Defendants' alleged deficiencies in their responses. SD Bellwether Plaintiffs have not delayed the discovery process, but have timely produced discovery in response to the

PFS and supplemental fact sheet and are expeditiously meeting and conferring to resolve any disputes related to their RFP responses and objections.

6.  **School District Plaintiffs' Request for 30-Day Extension of Deadline to Produce Documents Responsive to Requests for Production**

**Defendants' Position:**

Custodial files for the "priority deponents" Defendants added to the Joint Deposition Status Chart on April 30 are due July 1, one week before this deadline the Bellwether SD Plaintiffs requested a 30-day extension of that deadline, and in the spirit of compromise Defendants offered a 2-week extension. Defendants specifically noted that given the compressed discovery period—an accelerated schedule that Plaintiffs had adamantly requested (over Defendants' objections)—Defendants would be substantially prejudiced by any longer extension, but Plaintiffs responded that they "asked for 30 days because that is what is needed" and that they "will take the two weeks offered at this time reserving the right to seek additional time which likely will be needed." To the extent the Bellwether SD Plaintiffs seek and the Court is inclined to grant a further extension of time for them to produce custodial files for these priority deponents, Defendants submit that such extension should come in the form of an extension of the overall deadline by which Defendants must complete affirmative discovery of the Bellwether SD Plaintiffs.

**Bellwether SD Plaintiffs' Position:**

The SD Bellwether Plaintiffs requested a reasonable extension of time for the deadline for the production of custodial files for the "priority deponents" and, while reserving their rights to seek a further extension if necessary, accepted Defendants' offer for an extension that was far shorter than the time requested by Plaintiffs. Plaintiffs have worked cooperatively with Defendants and granted all of Defendants' similar extension requests previously, even at times granting 60 day extensions for Defendants to respond to discovery requests. There is no basis for Defendants' assertions that any part of the schedule needs to be adjusted to permit Plaintiffs this reasonable extension of a production deadline.

B.  **Unripe Issues Between PI Plaintiffs and All Defendants**

1.  **Discovery as to Loss of Consortium Plaintiffs**

**Defendants' Position**

Consortium Plaintiffs, including Jessica Smith in Case No 4:23-cv-05632, have refused Defendants' requests for (a) targeted authorizations to disclose medical records reflecting the Consortium Plaintiffs' mental and emotional damages in connection with their claims for loss of consortium and society, and (b) certain relevant documents and information in response to Defendants' Requests for Production, Set One. Denial of this discovery is improper, as Consortium Plaintiffs have raised their own claims which include, among other allegations, that Consortium Plaintiffs "have been harmed as a direct and proximate result of Defendants' wrongful conduct," and that they "have been caused great mental anguish and emotional distress" (*see* Master Complaint ¶¶ 22, 1091). Nearly a month after service of their objections and numerous letters, Consortium Plaintiffs served a June 28 letter stating they could not "formally agree" to produce documents unless Defendants provide further information, and they are not currently willing to produce certain relevant documents, including (a) relevant medical records of the Consortium Plaintiff or (b) documents related to the user plaintiff's harm in the Consortium Plaintiff's possession.

**PI Plaintiffs' Position:**

Defendants' first set of RFPs contains 77–78 requests, many of which obviously do not pertain to loss-of-consortium plaintiffs (e.g. Request No. 7, which asks for "the names of all video games" and video-gaming systems plaintiffs have used), yet the RFPs were ostensibly served on both user plaintiffs and loss-of-consortium plaintiffs. Each of the Bellwether PI Plaintiffs objected to the overbroad nature of these requests, stating that Defendants must clarify which requests they intended to apply to loss-of-consortium plaintiffs. On June 20, Defendants sent correspondence specifying which requests they intended to apply to loss-of-consortium plaintiffs; then, on June 28, the relevant Bellwether PI Plaintiffs (including Jessica Smith) began sending responsive letters seeking compromise and further clarity on the scope of Defendants' requests in a good-faith effort to provide relevant information that is proportional to the claims at issue in this litigation; and the parties are engaged in active meet-and-confer efforts on this topic.

### C.   Unripe Issues Between Bellwether PI Plaintiffs and All Defendants

#### 1.   Personal Injury Plaintiffs' Responses and Objections to Defendants' Requests for Production

On May 1, 2024, Defendants served their first set of requests for production on eight of the twelve PI Bellwether Plaintiffs.  On May 21 and 24, Defendants served those requests on the remaining four Bellwether Plaintiffs.  Plaintiffs responded and objected on May 31 and June 20.  Plaintiffs have begun to produce documents in response to these requests.  The Parties met and conferred regarding Plaintiffs' responses and objections on June 10 and 20, and held a final H.2 conference as to Requests 3, 5, 6, 50, 53, 61, 62, and 66, as well as Plaintiffs' global objections to the definition of "FAMILY," on July 2, 2024.  The Parties will proceed to joint letter briefing to be completed for any issues on this topic that remain in dispute.

#### 2.   Bellwether PI Plaintiff Search Terms and Data Sources

**Defendants' Position:**

On June 19, approximately three weeks after the original set of PI Bellwether Plaintiffs served objections and responses to Defendants' First RFPs, they proposed general search terms to use for all cases, identified data sources for each case, and committed to provide a proposed list of case-specific search terms (no case-specific terms have been proposed to date). The Bellwether PI Plaintiffs have not provided information about the volume of data at issue for individual Plaintiffs that would require the use of search terms, and in light of the circumstances and nature of Plaintiffs' claims, the use of search terms across a limited set of data sources may not yield key documents that Defendants are entitled to in discovery.  The Parties discussed their positions on the appropriateness of the use of search terms and the scope of Plaintiffs' data sources during video conferences on June 10 and 20 and continue to meet and confer to address their disagreements.

**Bellwether PI Plaintiffs' Position:**

The majority of Defendants' requests for production require the Bellwether PI Plaintiffs to search a large volume of electronic information, including emails, text messages, and other electronic data sources. Plaintiffs have explained that the use of search terms to locate responsive information is entirely appropriate, provided Defendants with proposed search terms designed to cull responsive

documents, and are producing relevant, non-privileged documents based on their proposed search terms (Defendants have yet to propose any additional search terms). Moreover, Plaintiffs are locating and producing known responsive and relevant documents, regardless of whether they hit on search terms, and will continue to propose and apply additional search terms, including on a Plaintiff-specific basis, to locate potentially relevant documents that are responsive to Defendants' RFPs.

### 3. Treater Depositions

The Parties met and conferred on May 24 and June 25, 2024, regarding procedures related to treating provider depositions, which would ensure the orderly progression of such depositions. Specifically, the Parties conferred regarding how time on the record will be allocated between Plaintiffs and Defendants; the order of questioning; the order of depositions (i.e., whether Plaintiffs should be deposed before treating physicians); and the prerequisite of obtaining medical records prior to treater depositions, among other potential guardrails. The Bellwether PI/SD Plaintiffs provided a proposed compromise based upon the May 24 meet-and-confer on May 31, 2024. Defendants provided a response to that proposed compromise on June 11, 2024, which the Parties discussed during an H.2 conference on June 25. The Parties are close to compromise, and they intend to jointly submit a proposed treater deposition protocol to the Court. If they are not able to reach compromise on any issue, they will seek relief from the Court through letter briefing or in conjunction with the August DMC.

### D. Unripe Issues Between PI/SD Plaintiffs and TikTok

#### 1. RFPs 198, 200-205 (marketing)

**PI/SD Plaintiffs' Position**

The PI/SD Plaintiffs' RFPs seek materials concerning Defendants' efforts to market or promote the Platform to children (including efforts using images depicting children). Negotiations over these RFPs have been bogged down because Plaintiffs' RFPs are not limited to materials that <u>exclusively</u> target children, but encompass materials whenever children are part of the intended audience. Plaintiffs have proposed to cut through the difficulties by serving targeted ("go get 'em") requests that will kick-off production of Defendants' marketing plans and research, which would then allow Plaintiffs to propose more informed search methods for additional responsive materials.

**TikTok Defendants' Position**

On June 20, Plaintiffs sent the TikTok Defendants four new requests for production for marketing and advertising documents.  The requests are not the "targeted ('go get 'em')" requests promised, but rather seek marketing and advertising plans, content (including audio and video), research, budgets, and expenditures, among other information.  The TikTok Defendants are still reviewing Plaintiffs' new requests and the parties have not yet met and conferred about them.

### 2.      RFP 199 (investor communications)

**PI/SD Plaintiffs' Position:**

This Request seeks documents concerning statements made to current or prospective investors in TikTok, which are relevant to TikTok's knowledge, as well as to show statements made to investors or potential investors regarding its platform, including about its features and advertising on its platform, and advertising targeting.  TikTok requested that Plaintiffs withdraw this Request, on the ground that it is duplicative of RFP 202, but that Request seeks documents relied upon by the sales team in communicating with advertisers, not statements made to investors.  The parties are continuing to confer on this Request.

**TikTok Defendants' Position:**

This Request seeks all presentations the TikTok Defendants (privately held companies) have given to current or potential investors, regardless of subject matter.  Plaintiffs have not articulated why such potentially highly confidential and sensitive documents are relevant to any claims in this matter, nor why they cannot obtain the same information through less intrusive means.  To the extent information about the "benefits or features of advertising" on the TikTok platform, that information will be included in the documents produced in a response to many of Plaintiffs' over 300 other requests, including but not limited to, Plaintiffs' Request 202 for presentations to advertisers about the "benefits or features of advertising" on the platform.

### 3.      RFPs 178-179, 185-186 (health & safety features)

**PI/SD Plaintiffs' Position:**

Plaintiffs await TikTok's response to their proposal that TikTok produce responsive documents to these RFPs, consistent with the compromise reached by Plaintiffs and Meta Defendants on this issue.

**TikTok Defendants' Position:**

At the parties' May 8 meet and confer, the PI/SD Plaintiffs informed the TikTok Defendants that they would not be pursuing any purported deficiencies Plaintiffs previously raised as to these requests. On June 5, the PI/SD Plaintiffs asked the TikTok Defendants whether they were willing to agree to the compromise reached on the same Requests between the PI/SD Plaintiffs and Meta. The TikTok Defendants are considering that proposal and will engage in further meet and confer on the same; however, no meaningful meet and confer on these topics has taken place to date.

### 4.   Discovery relating to CSAM

**PI/SD Plaintiffs' Position:**

The operative complaint describes in detail how "ByteDance has designed various TikTok features that promote and dramatically exacerbate sexual exploitation, the spread of CSAM, sextortion, and other socially maladaptive behavior that harms children." SAC ¶ 654; *see id.* ¶¶ 655-74. These defects are included in the PI/SD Plaintiffs' failure-to-warn claim against TikTok, *id.* ¶ 688—a claim that indisputably remains in the case as to *all* defective TikTok features. *See* 11/14/23 MTD Order (ECF 430) at 20, 22, 41 n.60; *see also id.* at 15-16 (holding that section 230 does not bar product defect claims based on "the ways in which [Defendants] allow users and visitors to their platforms to report CSAM"). The parties are continuing to meet and confer about this issue.

**TikTok Defendants' Position:**

As the PI/SD Plaintiffs have acknowledged during meet and confers, the only remaining claim against defendants related to CSAM is for allegedly "[n]ot implementing reporting protocols to allow users or visitors of defendants' platforms to report CSAM and adult predator accounts specifically without the need to create or log in to the products prior to reporting. (Nov. 14, 2023 Order on MTD, at 14-15 (citing MAC ¶ 845(p)).  However, the Second Amended Master Complaint does not make this specific assertion against the TikTok Defendants—to the contrary, it asserts that TikTok followed exactly the opposite practice (the "better practice") of allowing reporting of CSAM "when not logged in." (SAMC, ¶ 667, n.751) (incorporating by reference Canadian Centre for Child Protection, Reviewing Child Sexual Abuse Material Reporting Functions on Popular Platforms, at p. 14).  Accordingly, discovery about CSAM is not relevant to TikTok.

### 5.   RFPs 187-189, 285

**Plaintiffs' Position:**

These RFPs seek user complaints made to TikTok regarding any adverse effect on the safety of children, teens, or youth resulting from the TikTok platform (RFP 187), TikTok's policies concerning receipt, review, analysis, or response to user complaints (RFP 188) and TikTok's policies concerning the processing, investigating, and reporting of these complaints to third parties (RFP 189). Likewise, RFP 285 seeks similar complaints made to TikTok by teachers or other school employees regarding the impact of the TikTok platform on schools or students. TikTok has refused to produce documents responsive to these requests as written, seeking instead to limit their responses to user complaints that relate to identified bellwether PI/SD Plaintiffs.

**TikTok Defendants' Position:**

The TikTok Defendants have agreed to search its user feedback systems for all bellwether plaintiffs and produce any such complaints or other feedback received in relation to the same.  The RFPs referenced additionally seek ALL complaints received for non-plaintiff users.  As to these users who have not put their accounts or health conditions at issue in this litigation, the TikTok Defendants offered to produce summary reports that cover topics substantially similar to the injuries alleged in this matter, to be further negotiated with the Plaintiffs.  These summary reports, an exemplar of which has been provided for Plaintiffs' review and consideration, would maintain the privacy of non-plaintiff users, reduce the burden of production on the TikTok Defendants, and still provide the Plaintiffs with the information they need to go to what they suggest is "notice" of alleged injuries.

### 6.   RFPs 206-208

**Plaintiffs' Position:**

These RFPs seek information about TikTok's lobbying efforts, as well as communications between TikTok (including its consultants and lobbyists) and government officials about child safety and CSAM. TikTok has refused to produce documents in response to these requests.

**TikTok Defendants' Position:**

The TikTok Defendants are providing additional proposed compromise positions to Plaintiffs on which they await Plaintiffs' response.

### E.   Unripe Issues Between PI/SD Plaintiffs and Snap

#### 1.   RFPs 10, 12, 14, 37, 75, 77, 85, 90-95, 97, 100, 110-115, 118, 133-135

**PI/SD Plaintiffs' Position**

Because the Parties have been unable to reach agreement on RFPs 10, 12, 14, 37, 75, and 77 despite multiple conferrals, Plaintiffs have requested a final meet and confer on or before July 15, 2024 pursuant to section H(2) of the Court's standing order. Similarly, Plaintiffs have requested a final H(2) conferral to occur on or before July 16, 2024 for RFPs 85, 90-95, 97, 100, 110-115, and 133. Plaintiffs are concerned that Snap's delay is precluding the parties from finally resolving the scope of these RFPs and progressing forward in the discovery process.

**Snap's Position**

Plaintiffs' claims of delay are unjustified.  Snap has engaged in extensive meet-and-confers with Plaintiffs on these RFPs and served amended responses making substantial compromises.  Snap anticipates continuing this process and hopes to be able to resolve many of the RFPs at issue before the parties' H(2) conference.

### F.   Unripe Issues Between PI/SD Plaintiffs and YouTube

#### 1.   Ongoing discussions re RFPs

The Parties continue to meet and confer on YouTube's responses to PI/SD Plaintiffs' RFPs [Sets 1-9].  The Parties are meeting and conferring over YouTube's search methodology for production of documents, which includes the application of default start dates to custodial file collection, the application of search terms versus targeted collection for certain RFPs, and any other level of review that YouTube intends to apply.

Respectfully submitted,

DATED: July 2, 2024                    By:  */s/Lexi J. Hazam*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**

234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500

PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

26

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436

27

Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

29

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*

30

Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey
Division of Consumer Affairs*

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

33

Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

JOINT STATUS REPORT ON DISCOVERY FOR JULY 11, 2024 DISCOVERY MANAGEMENT CONFERENCE
4:22-md-03047-YGR

### ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: July 2, 2024

By: *Lexi J. Hazam*