# EXHIBIT C

The Order of the Court is stated below:
Dated: July 25, 2024        /s/   KENT HOLMBERG
       09:49:07 AM                District Court Judge

**SEAN D. REYES**

UTAH ATTORNEY GENERAL

Douglas Crapo (14620)

Peishen Zhou (18596)

Assistant Attorneys General

160 East 300 South, 5th Floor

Salt Lake City, Utah 84114

Tel: (801) 366-0310

crapo@agutah.gov

peishenzhou@agutah.gov

*Attorneys for Plaintiff Utah Division of Consumer Protection*

THIRD JUDICIAL DISTRICT COURT,

SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **UTAH DIVISION OF CONSUMER PROTECTION**, <br><br> *Plaintiff,* | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** <br><br> Case No.: 230908060 |

| | |
|---|---|
| v. | Honorable Kent Holmberg |
| **META PLATFORMS, INC.**, and **INSTAGRAM, LLC**, | **Tier III** |
| *Defendants.* | |

On June 11, 2024, the Court conducted a hearing on Defendant Meta Platforms, Inc., and Instagram, LLC's (collectively "Meta" or "Defendants") Motion to Dismiss. Plaintiff Utah Division of Consumer Protection (the "Division"), a subdivision of the Utah Department of Commerce, was present and represented by counsel, as were Defendants. Consistent with the oral ruling announced at the hearing, which is fully incorporated into this written Order, the Court hereby DENIES Meta's Motion to Dismiss in full.

2

**BACKGROUND**

On October 24, 2023, the Division filed a two-count Complaint against Meta, alleging violations of the Utah Consumer Sales Practices Act ("UCSPA"). Count I alleges that the Defendants engaged in unconscionable acts and practices exploiting children's neurological vulnerabilities by designing and continually refining addictive features on their social media platforms, Facebook and Instagram, to hook children into spending more time on those platforms. Count II alleges that the Defendants engaged in deceptive acts and practices by making material misrepresentations and omissions about the safety of their platforms, including the use of addictive design features.

The Complaint alleges that Meta operates social media platforms including Facebook and Instagram (the "social media platforms" or "platforms"). Compl. ¶¶ 16–18. The Complaint alleges that the foundation of Meta's business model with respect to these platforms is targeted advertising. *Id.* ¶¶ 35–38.

The Division further alleges Meta thus strives to maximize the time users spend on the platforms and the amount of data Meta can gather from users so that it can sell more advertisements. *Id.* According to the Complaint, teenagers are among the most valuable advertising demographics, and brands look to advertise where teenagers are engaging online. *Id.* ¶ 40. The Complaint further alleges that Meta has aggressively sought to attract teenagers to its platforms. *Id.* ¶¶ 41–47. According to the Complaint, one-third of the children in Utah are daily active users of Facebook, and over half of Utah children between the ages of ten and nineteen use Instagram at least monthly. *Id.* ¶¶ 48, 51. The Division alleges that Meta makes more money

3

when users spend more time on its products, creating an incentive to increase the time that Utah users spend on its platforms. *Id.* ¶¶ 35–38.

The Complaint goes on to allege that Meta has responded to this incentive by adding features that addict and consume the attention of Utah's children to the detriment of their wellbeing. *Id.* ¶ 53–113. This is the very heart of the claims in the Division's Complaint. The Division alleges that Meta has implemented a variety of addictive design features designed to trick children into spending as much time as possible on the platforms and that these features do cause harm to children. *Id.* The Division alleges excessive and compulsive use of the platforms leads to depression, anxiety, body dysmorphia, eating disorders, self-harm, suicidal ideation and poor sleep patterns. *Id.* ¶¶ 92–113, 119, 126–27, 155, 171, 205–10. The Complaint alleges that despite knowledge of these and other harms, Meta has repeatedly represented the safety of its platforms and knowingly concealed the dangers. *Id.* ¶¶ 134–228.

The Division also alleges that Meta purposely directs commercial activities to Utah by maintaining data centers in the state, providing social networking services to Utah users, encouraging those users to view, like, and comment on posts exhibited on Meta's platforms, and selling advertising to companies which target Utah users. *Id.* ¶¶ 24–32. According to the Division, Meta has a business relationship with nearly 70 percent of Utahns through use of its algorithms and targeted alerts. *Id.* ¶¶ 4–5, 28.

The Complaint further alleges that Meta used features like personalized content, recommendation algorithms, distracting notifications, infinite scroll, reels, ephemeral content, and auto-play. *Id.* ¶¶ 237–39.

4

The Defendants filed a joint Motion to Dismiss the Complaint in its entirety on December 22, 2023. The Motion argued that (1) the State of Utah does not have personal jurisdiction over Meta; (2) the Division's claims would impose liability on the Defendants for publication of third-party content, which is barred by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230; (3) the Division's claims would implicate Meta's right to freedom of speech under the First Amendment to the U.S. Constitution; (4) the Complaint fails to state a claim under the UCSPA because it provides immunity to entities that are engaged in the dissemination of information or the reproduction of printed or pictorial matter, Utah Code Section 13-11-22(1)(b), which the Defendants claim applies to them as a matter of law; (5) the Complaint cannot or does not allege that the Defendants undertook any conduct in connection with a consumer transaction as required by the UCSPA; and (6) the Complaint fails to allege facts establishing the elements of a claim for a deceptive or an unconscionable practice under the UCSPA.

## LEGAL STANDARD

In addressing a motion to dismiss under Rule 12(b), a District Court must accept the factual allegations in the Complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). In other words, assuming all the facts in the Complaint are true, and any reasonable inferences added on top of those facts, the Defendants must show that, as a matter of law, the Division cannot make its claim. Dismissal is justified only when the allegations of a complaint clearly demonstrate that the plaintiff does not have a claim. In ruling on a motion to dismiss, a District Court makes no findings as to the ultimate strength of either a plaintiff's claims or a defendant's defenses, but instead accepts the

5

facts in the Complaint as true. At the pleading stage, the Court is not making any decisions about how valid the Division's claims or the Defendants' defenses are. Both sides make their arguments, and all the Court considers is what is in the Complaint.

6

## CONCLUSIONS OF LAW

### A. The Division Has Adequately Alleged Specific Personal Jurisdiction over Meta.

First, on the issue of personal jurisdiction, the Division did not argue general jurisdiction, so only specific personal jurisdiction was at issue. Specific jurisdiction exists if (1) the Defendants purposefully availed themselves of the protection of Utah's laws, including by directing activities at the forum; (2) the claim arises out of or relates to these forum-based contacts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985).

First, has the Division established the purposeful direction prong of the test for specific personal jurisdiction by showing that the Defendants purposely availed themselves of the privilege of conducting activities within the State of Utah? The Division alleges that Meta purposefully directs commercial activities to Utah by maintaining data centers in the State, providing social networking services to Utah users, encouraging those users to view, like, and comment on posts exhibited on Meta's platform, and selling advertising to companies which target Utah users. Compl. ¶¶ 24–32.

It is true that the mere operation of a commercial website accessible to users nationally and internationally does not amount to purposeful direction, *e.g., Admar Int'l v. Eastrock, LLC*, 18 F.4th 783, 785 (5th Cir. 2021), but the Defendants are doing much more than merely operating a commercial website. In this case, the Complaint alleges that the Defendants have intentionally directed their activity or operation at Utah rather than just having the activity or

7

operation accessible there. A party purposely avails itself of the benefits of conducting business in a state by deliberately engaging in significant activities within the state or by creating continuing obligations between themselves and residents of that state.

The Division has made a *prima facie* showing that the Defendants purposely availed themselves of the benefit of conducting business in Utah. According to the Division, Meta has a business relationship with nearly 70 percent of Utahns through the use of its algorithms and targeted alerts. Compl. ¶¶ 4–5, 28. The Complaint alleges that Meta deliberately and significantly engages with its Utah customers in a way that encourages their continuous use of the platforms to the benefit of the Defendants and their advertisers. The nature of the Defendants' contacts, which includes targeting Utahns with advertisements all in an effort to allegedly maximize profits from Utah customers, satisfies the purposeful availment requirement. The Complaint sufficiently alleges that Defendants purposely avail themselves of Utah law by serving content to, collecting data from, and targeting advertisements to Utah users—creating a Utah-specific experience inside the Defendants' social media apps.

Second, in evaluating personal jurisdiction the Court must examine whether the Defendants' contacts are sufficiently related to the claims in this case so that it can be said that the claim arises out of these contacts. The heart and soul of the Complaint alleges facts that draw a direct line between the Defendants' activities in this state and the alleged causes of action.

To name a few of the allegations in the Complaint, Meta operates social media platforms including Facebook and Instagram. Compl. ¶¶ 16–18. The foundation of their alleged business model with respect to these platforms is targeted advertising. *Id.* ¶¶ 35–38. The Division further alleges Meta thus strives to maximize the time users spend on the platforms and the amount of

data Meta can gather from users so that it can sell more advertisements. *Id.* The Complaint alleges that teenagers are among the most valuable advertising demographics, and brands look to advertise where teenagers are engaging online. *Id.* ¶ 40. Consequently, according to the Complaint, Meta has aggressively sought to attract teenagers to its platforms. *Id.* ¶¶ 41–47. Continuing on with the allegations in the Complaint, one-third of the children in Utah are daily active users of Facebook. *Id.* ¶¶ 48, 51. Over half of Utah children between the ages of ten and nineteen use Instagram at least monthly. *Id.* The Division goes on to allege that Meta makes more money when users spend more time on its products, creating an incentive to increase the time that Utah users spend on their platforms. *Id.* ¶¶ 35–38.

The Defendants argue that they do not specifically target Utah, and that may turn out to be a true fact; however, the allegations in the Complaint and the evidence that has been submitted to the Court supports the *prima facie* case that would establish personal jurisdiction.

The Complaint goes on to allege that Meta has responded to this incentive by adding features that addict and consume the attention of Utah's children to the detriment of their wellbeing. *Id.* ¶ 53–113. This is the very heart of the claims in the Division's complaint. The Division alleges that Meta has implemented a variety of addictive design features designed to trick children into spending as much time as possible on the platforms, and these features do cause harm to children. *Id.* It alleges excessive and compulsive use of the platforms leading to depression, anxiety, body dysmorphia, eating disorders, self-harm, suicidal ideation, and poor sleep patterns. *Id.* ¶¶ 92–113, 119, 126–27, 155, 171, 205–10. The Complaint alleges that despite knowledge of these and other harms, Meta has repeatedly represented the safety of its platform and knowingly concealed the dangers. *Id.* ¶¶ 134–228.

9

Under the Complaint's allegations, the Defendants do target Utah. While they target other areas of the country as well, Defendants certainly target Utah and Utah youth both with targeted algorithms and by selling advertising targeted to Utah youth. The Defendants have a significant business presence in Utah, as alleged in the Complaint, to obtain Utah youth as customers, and harvest their data, which Defendants then sell and use to deliver advertisements directed at Utah youth.

The Defendants' arguments that they are not subject to the Court's jurisdiction lack any credibility. Utah has a strong interest in providing a forum to adjudicate its consumer protection laws, and it is entirely reasonable for the Defendants to expect that they would be haled into Utah court especially considering the extent to which the Defendants benefit from their business operations and customer base in Utah. So the Court concludes, with respect to personal jurisdiction, that based on the allegations of the Complaint (1) the Division has sufficiently distinguished *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017); (2) the Defendants purposefully availed themselves of the protection of Utah's laws, including by directing activities at the forum; (3) the Division's claims arise out of or relate to these forum-based contacts; and (4) the exercise of personal jurisdiction is fair and reasonable.

B.   **As Alleged, the Division's Claims Are Not Foreclosed by Section 230 of the CDA.**

Defendants next argued that they are immune from suit under Section 230 of the Communications Decency Act, 47 U.S.C. § 230. The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and provides immunity from state law causes

10

of action that would hold them liable for information originating with a third-party. *Id.* The Defendants argued that they were doing nothing other than acting as a funnel or a pass-through entity for third-party content.

However, the allegations in the Complaint, if true, could entitle the Division to relief on its claims without implicating Section 230. Looking at the Complaint in a light most favorable to the Division, the Division's claims do not seek to treat Meta as a publisher or speaker. Although Meta does disseminate third-party content, the Division's claims rest on the Defendants' own acts: their use of features and practices to target children into spending excessive amounts of time on their platforms and their misrepresentations about the safety of those platforms. The Complaint alleges that Meta used features like personalized content, serving algorithms, destructive notifications, infinite scroll, reels, ephemeral content, and auto-play. *Id.* ¶¶ 237–39. The use of these features is alleged to have amounted to a violation of Utah law. *Id.*

The Division also alleges that none of these features constitute traditional publishing activity, which generally involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content. The Complaint alleges that the methods of promotion in contrast to content moderation decisions are not publication. For example, the Division alleges that Meta's creation and use of content serving algorithms is not publishing, and the Court cannot conclude as a matter of law that that is an incorrect statement.

What is alleged goes well beyond typical publishing activities of reviewing, editing, and determining what content to publish or withdraw from a typical website or interactive computer service. As Judge Katzmann in the Second Circuit explained, "it strains the English language to say that in targeting and recommending [third-party content] to users—and thereby forging

11

connections, developing new social networks—Facebook is acting as 'the *publisher* of information provided by another information content provider.'" *Force v. Facebook, Inc.*, 934 F.3d 53, 76–77 (2d Cir. 2019) (Katzmann, C. J., concurring in part and dissenting in part) (quoting 47 U.S.C. § 230(c)(1)).

As to Count I: the content-serving algorithms and the use of notifications and alerts are not merely an act of publishing third-party content. As alleged, the notifications and alerts are Meta's own content. The use of infinite scroll and other features are likewise not only the publication of third-party content. Material contribution is also alleged sufficiently in the Complaint to put the Defendants on notice that the material contribution exception to Section 230 may be involved here if, as a factual matter, the content has been altered in a material way.

Count II of the Complaint alleges that Meta made material misrepresentations and omissions about the platforms' safety, which also does not seek to treat Meta as the publisher of third-party content.

The Court can envision situations where Defendants may be exactly right and that the algorithms, disruptive notification, or infinite scroll, *et cetera*, may be nothing more than publishing activity, but the Complaint alleges that they are not focused on publishing activity. In a motion for summary judgment where the facts are in front of the Court, these features might qualify for Section 230 immunity. But at this stage, the Court must treat the allegations of a Complaint as true and the Division is alleging that these features, including algorithms, disruptive notifications, and more, amount to a violation of Utah law. At least as alleged, Section 230 does not foreclose the Division's claims at this stage. Meta may renew its Section 230 arguments at summary judgment or at trial.

12

### C.     The First Amendment Does Not Bar the Division's Claims.

Defendants also argued that Count I violates their rights under the First Amendment. The Court agrees with the Division that the Complaint's allegations are content neutral. The Complaint is not focused on the substance of any third-party content, but instead is focused on the actions of the Defendants with respect to the addictive design features and with respect to their own misrepresentations. Count I does not seek to curtail any speech either of Meta or any third parties. The Court agrees that the Division adequately pled that the addictive design features for which the Division seeks to hold Meta liable are not even speech. They convey no message. They express no viewpoint. They use variable reward structures to feed content to each individual user. These are actions.

### D.     The Division Has Adequately Pled UCSPA Violations.

The Court finds that the Division has pled a cause of action under the UCSPA. First, Meta does not fall under the publisher and broadcaster exemption, Utah Code Section 13-11-22(1)(b). Similar to the CDA immunity argument, the Division's allegations do not seek to treat Meta as a publisher or a broadcaster or a printer of any third-party content. The Division is seeking to hold Meta liable for its use of the addictive design features and its own material misrepresentations and omissions.

Second, the Complaint also alleges a sale and/or a transfer sufficient to support a consumer transaction under the UCSPA, Utah Code Section 13-11-3(2)(a). The Division alleges facts that could support a conclusion the transaction involves a sale or transfer, including that Meta does not provide its products for free, that its business model allows it to turn attention into money, and that when users spend time on Meta's social media platforms, Meta harvests their

13

personal data (including interests, religion, beliefs, and what they like to watch or buy). The Complaint alleges that Utah consumers' personal data has value to the Defendants as Meta has built an entire business model on enticing users to give up their personal data and their time as consideration for their services on the Defendants' platforms. The Court does not read anything into the Legislature's passage of the Social Media Regulation Act that somehow alters or sends a message concerning the UCSPA.

Third, concerning the arguments surrounding Count I, the Division's unconscionability count: claims of unconscionability under the UCSPA require a gross disparity in terms that are so one sided as to oppress or unfairly surprise an innocent party. The Division alleges that Meta developed and continually refined addictive design features and that it knowingly exploited certain neurological vulnerabilities in children. It goes on to detail these addictive design features, including dopamine-manipulating personalization algorithms, audio-visual and haptic alerts sent at all times of day or night, and various content presentation formats designed to discourage children's attempts to self-regulate and to disengage from the platforms. Giving all reasonable inferences to the pleading party, manipulating children in these ways in order to maximize time spent on the platforms and thus advertising revenue generated could certainly be found to be unconscionable. Meta argues that users are not unfairly surprised or oppressed because they choose to use the service and are aware of the addictive design features, but the Complaint specifically alleges that Meta actively misrepresents and attempts to conceal that it manipulates children and exploits their neurological vulnerabilities with the addictive design features. So, as pled and giving all inferences to the Division, the Complaint does state a claim for unconscionability.

14

Regarding Count II, Meta argues that the Complaint's allegations fail to meet the heightened pleading standard for fraud, requiring that a party alleging deceptive conduct, "must state with particularity the circumstances constituting [the deceptive conduct]." Utah R. Civ. P. 9(c). The Court agrees that the rule on heightened pleading does apply, although not with respect to intent. That can be alleged generally. Much of the remainder of Defendants' arguments on this point are substantive attacks on what the evidence is or how it should be viewed, but at this stage, the Court must accept the allegations in the Complaint. After reviewing the Complaint, particularly Paragraphs 134 through 228, the Court finds that the Division has satisfied the heightened pleading standard for deceptive conduct allegations.

The Court is also convinced that restitution is a remedy under the UCSPA, and therefore, the Court would not dismiss that remedy at this stage.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss is DENIED in full.

## END OF ORDER

## OFFICIAL SIGNATURE APPEARS AT TOP OF FIRST PAGE

Approved as to form:

*/s/ Douglas Crapo*
Douglas Crapo, Assistant Attorney General, Utah Attorney General's Office

*For Plaintiff Utah Division of Consumer Protection*

15

 */s/ Megan Rodgers*
Megan Rodgers, Covington & Burling LLP

*For Defendants Meta Platforms, Inc., and Instagram, LLC*

16

**CERTIFICATE OF SERVICE**

I certify that I caused a true and correct copy of the foregoing **PROPOSED ORDER DENYING DEFENDANTS' MOTION TO DISMISS** to be delivered by the Court's electronic filing system, which electronically transmitted notice of the filing to all counsel this July 18, 2024.

*/s/ Douglas Crapo*

17