[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**JOINT STATUS REPORT ON DISCOVERY FOR AUGUST 8, 2024 DISCOVERY MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Discovery Management Order ("DMO") No. 2 (ECF 606), the Personal Injury ("PI") and School District and Local Government Entity ("SD") Plaintiffs, State Attorneys General ("State AGs"), and Defendants submit this agenda and joint statement in advance of the August 8, 2024, Discovery Management Conference ("DMC").

I.     **Status of Discovery and Parties' Progress in Meeting Discovery Deadlines**

    A.     **Plaintiffs' Written Discovery Served on Defendants**

The Parties provide below an update on the RFPs served by Plaintiffs on Defendants; Defendants' document productions in response to Plaintiffs' RFPs; and the Interrogatories ("Rogs") served by Plaintiffs on Defendants.

    1.     **RFPs Served; Defendants' Responses & Objections**

The PI/SD Plaintiffs and State AGs have served on **Meta** a total of 1,030 Requests for Production of Documents ("RFPs") (PI/SD Plaintiffs have served 367 common RFPs; State AGs have served 183 RFPs; nine of the twelve Bellwether PI Plaintiffs have each served 40 identical RFPs on Meta, for a total of 360 RFPs; the Bellwether SD Plaintiffs have each served 13 identical RFPs on Meta, for a total of 156 RFPs). Appendix A includes a chart that summarizes the status of each set of RFPs served by each set of Plaintiffs on **Meta** to date, including the date **Meta**'s Responses and Objections ("R&Os") were served or are due.

The PI/SD Plaintiffs have served 323 common RFPs on the **TikTok** Defendants. Certain Bellwether PI Plaintiffs have each served 40 RFPs on the **TikTok** Defendants, for a total of 1,040 RFPs. The Bellwether SD Plaintiffs have each served 13 RFPs on the **TikTok** Defendants, for a total of 156 RFPs. Collectively, 1,519 RFPs have been served on the **TikTok** Defendants.

The **TikTok** Defendants have served R&Os to all of the PI/SD Plaintiffs' RFPs with the exception of certain PI Bellwether Plaintiffs' RFPs due later this month. With respect to custodians, the parties have reached an agreement to add Alex Zhu as a custodian (for Musical.ly and TikTok U.S. from January 1, 2016 to May 31, 2020), Kelly Zhang as a custodian (for Douyin and TikTok U.S. from January 1, 2016 to March 31, 2020), and Yiming Zhang as a custodian (for Douyin and TikTok U.S. from January 1, 2016 to November 30, 2021).

**Snap** has served R&Os to all of the PI/SD Plaintiffs' RFPs, including the bellwether PI Plaintiffs' RFPs and the Bellwether SD plaintiffs' RFPs. Snap's R&Os to the PI/SD Plaintiffs' Interrogatory are due August 15, 2024.

The PI/SD Plaintiffs have served 148 common RFPs and one interrogatory on **YouTube**. The Bellwether PI Plaintiff Smith has served 40 RFPs on **YouTube**. The Bellwether SD Plaintiffs have served 14 RFPs on YouTube. **YouTube** has served R&Os to all of the PI/SD Plaintiffs' common RFPs, the Bellwether Plaintiff Smith's RFPs, and the Bellwether SD RFPs.

### 2.    Defendants' Document Productions

All Defendants have been producing documents in response to Plaintiffs' RFPs and will continue to make rolling productions.

**Meta** has produced 287,390 documents consisting of 1.6 million pages as of August 1, 2024. Meta has also produced certain structured data to the PI Plaintiffs.

The **TikTok** Defendants have produced 72,333 documents in response to the PI/SD Plaintiffs' RFPs.

**Snap** has produced 61,890 documents in response to a Rule 30(b)(6) deposition notice and the PI/SD Plaintiffs' RFPs, as well as 77,622 records of user account data. Snap and Plaintiffs also have an agreement regarding a cadence for Snap's rolling productions over the summer and agreed that Snap will produce complete custodial files for three potential early deponents by the latter part of August but need not otherwise prioritize productions by custodian ahead of the September 20, 2024 substantial completion deadline.

**YouTube** has produced more than 95,792 documents in response to the PI/SD Plaintiffs' RFPs and/or certain topics in the PI/SD Plaintiffs' 30(b)(6) deposition notice.

### 3.    Interrogatories Served; Defendants' Responses & Objections

The MDL and JCCP Plaintiffs are collectively allowed to serve 45 common Rogs on each group of Defendants under the Discovery Limitations Order. *See* ECF 702 ¶¶ 1-2.

Plaintiffs have served 2 of the 45 Rogs they are permitted to serve on **Meta**, and Meta has served R&Os to those Rogs.

Plaintiffs have served 1 Rog, with 6 subparts, on **Snap**, and Snap has served R&Os to that Rog.

Plaintiffs have served 4 Interrogatories on TikTok, and TikTok has served R&Os to those Rogs notice.

### 4.    Requests for Admissions Served; Defendants' Responses & Objections

Plaintiffs have served 7 RFAs on TikTok. TikTok will serve responses by August 22, 2024, when they are due.

### B.    Defendants' Written Discovery Served on MDL Bellwether PI Plaintiffs

The Parties provide below an update on the written discovery served by Defendants on the MDL Bellwether PI Plaintiffs; the MDL Bellwether PI Plaintiffs' document productions in response to Defendants' RFPs; the status of the Parties' conferrals; and an update on the imaging of Plaintiffs' routinely-used devices.

### 1.    Written Discovery Served; MDL Bellwether PI Plaintiffs' R&Os

*RFPs.*  Defendants have jointly served 81 unique RFPs in each of the 12 Bellwether PI cases in the MDL (972 RFPs total in the Bellwether PI cases).

*Rogs.*  Defendants are collectively allowed to serve 10 interrogatories for each minor (under age eighteen) bellwether PI Plaintiff and 7 interrogatories for all other bellwether PI Plaintiffs under the Discovery Limitations Order.  See ECF 702 ¶ 5.  Defendants have jointly served 5 to 7 unique Rogs in each of the 12 Bellwether PI cases in the MDL, including to each of the four Plaintiff parents in the D'Orazio, Hawthorne, Mullen, and Smith cases.

Appendix A includes a chart that summarizes the status of each set of RFPs and Rogs served by Defendants on the MDL Bellwether PI Plaintiffs to date, including the date Plaintiffs' R&Os were served or are due.

### 2.    MDL Bellwether PI Plaintiffs' Document Productions

The chart below sets forth the MDL Bellwether PI Plaintiffs document productions to date.  The MDL Bellwether PI Plaintiffs also provided authorizations to Defendants that allowed Defendants to request medical, employment, educational, workers' compensation, disability, Medicaid/Medicare, and insurance records when applicable.  The number of documents Defendants have collected with those authorizations are not included in the below chart.

| Plaintiff Group | Number of Documents Produced in Response to RFPs | Number of Documents Produced with PFS |
|---|---|---|
| MDL PI Bellwether Plaintiff Laurel Clevenger [1] | 39,397 | 4 |
| MDL PI Bellwether Plaintiff Klinten Craig [2] | 306 | 2 |
| MDL PI Bellwether Plaintiff B.S. on behalf of J.D. [3] | 19,201 | 2 |
| MDL PI Bellwether Plaintiff Jessica D'Orazio and Christine D'Orazio [4] | 23,592 | 1 |
| MDL PI Bellwether Plaintiff Maria Elena Rodriguez individually and on behalf of M.G. [5] | 2 | 3 |
| MDL PI Bellwether Plaintiff Lorine Hawthorne individually and on behalf of B.H. [6] | 14,546 | 4 |
| MDL PI Bellwether Plaintiff N.K. on behalf of S.K. [7] | 1,425 | 11 |
| MDL PI Bellwether Plaintiff Dymand McNeal [8] | 10,655 | 4 |
| MDL PI Bellwether Plaintiff David Melton [9] | 454 | 2 |
| MDL PI Bellwether Plaintiff Nuala Mullen and Elizabeth Mullen [10] | 40,106 | 29 |
| MDL PI Bellwether Plaintiff M.M. on behalf of B.M. [11] | 4,578 | 8 |
| MDL PI Bellwether Plaintiff Leslie Smith and Jessica Smith [12] | 25,685 | 2 [Defs' Count]; 3 [Pls' Count] |

### 3.    Status of Conferrals

The Parties have conducted and continue to conduct meet-and-confers regarding the MDL Bellwether PI Plaintiffs' R&Os to Defendants' RFPs, as well as their litigation hold lists, custodians, ESI repositories, and search terms to be applied by the MDL Bellwether PI Plaintiffs.

### 4.    Update on Imaging of Bellwether PI Plaintiffs' Routine Devices

On July 19, 2024, the Court issued DMO No. 8.  *See* ECF No. 1025.  The Bellwether PI Plaintiffs and Defendants provided their latest status report on July 26, 2024, *see* ECF 1034, and will submit an updated status report by separate cover today.

### C. Defendants' Written Discovery Served on MDL Bellwether SD Plaintiffs

The Parties provide below an update on the written discovery served by Defendants on the Bellwether SD Plaintiffs; the Bellwether SD Plaintiffs' document productions in response to Defendants' RFPs; and an update on the status of conferrals.

#### 1. Written Discovery Served; Bellwether SD Plaintiffs' R&Os

*RFPs.*  Defendants have jointly served 83 unique RFPs in each of the 12 Bellwether SD cases in the MDL, an additional 67 RFPs on DeKalb School District, an additional 39 RFPs on Saint Charles Parish Public Schools, and an additional 11 RFPs on the Jordan School District (1,113 RFPs total in the Bellwether SD cases).  The chart below sets forth the number of documents produced by each SD Bellwether Plaintiff to date.

*Rogs.*  Defendants are collectively allowed to serve 15 Rogs for each bellwether SD Plaintiff under the Discovery Limitations Order.  See ECF 702 ¶ 5.  Defendants have jointly served approximately 3 unique Rogs in each of the 12 Bellwether SD cases in the MDL.

| SD Bellwether Plaintiff | Number of Documents Produced for Priority Deponents or in Response to RFPs | Number of Documents Produced with PFS |
|---|---|---|
| The Baltimore City Board of School Commissioners | 0 | 185 |
| Breathitt County School District | 53 | 7 |
| Charleston County School District | 7,297 | 70 |
| School District of the Chathams | 634 | 17 |
| DeKalb County School District | 0 | 40 |
| Board of Education of Harford County | 133 | 151 |
| The School Board of Hillsborough County | 0 | 36 |
| Irvington Public Schools | 3,027 | 8 |
| Board of Education of Jordan School District | 6,927 | 7 |
| Spartanburg 6 School District | 16 | 5 |
| Saint Charles Parish School Board | 0 [Defs' Count]; 34 [Pls' Count] | 5 [Defs' Count]; 16 [Pls' Count] |
| Tucson Unified School District | 923 | 52 |

## 2.    Status of Conferrals

*Litigation Holds.*  Following Judge Kang's order that the State AGs issue litigation holds, Plaintiffs confirmed that all Bellwether (and non-Bellwether) SD Plaintiffs would be instructed to issue litigation holds to the extent they had not done so already regardless of the districts' preservation policies in place or mandated by regulation.  The Parties continue to engage in district-specific negotiations for the Bellwether SD Plaintiffs regarding whether particular individual custodians should be issued litigation holds.

*Written Discovery.*  The Parties have conducted and continue to conduct meet-and-confer conferences regarding the Bellwether SD Plaintiffs' Plaintiff Fact Sheets ("PFSs") and R&Os to Defendants' First Set of RFPs and First Set of Rogs.  The Parties engaged in numerous district-specific meet-and-confers in June and July related to PFSs, Supplemental PFSs, and Defendants' First Set of RFPs.  The Parties also conducted an all-Bellwether meet-and-confer on July 17 related to Defendants' First Set of Rogs.  On July 24, the Bellwether SD Plaintiffs sent Defendants an all-Bellwether, omnibus letter setting out their joint positions on a number of outstanding issues related to their responses to Defendants' First Set of RFPs and First Set of Rogs.

*Custodians/ESI Repositories.*  Ten of the Bellwether SD Plaintiffs (all but Baltimore and Dekalb) have provided to Defendants their initial lists of custodians and non-custodial ESI repositories.  The Parties are meeting and conferring.

*Damages Computations.*  Plaintiffs agreed to provide damages computations for past compensatory damages for all Bellwether SD Plaintiffs pursuant to Fed. R. Civ. P. 26(a) by August 22, obviating the need for letter-briefing on the subject.  The Parties are scheduled to meet and confer on August 5 regarding whether non-Bellwether SDs need to provide damages computations for past compensatory damages.

## D.    Meta's Written Discovery Served on MDL State AGs and Agencies

### 1.    Written Discovery Served

*RFPs.*  Meta served its first set of 45 RFPs on each of the 35 State AGs on February 27, 2024.  Meta served its second set of RFPs on the 35 State AGs on May 3, 2024.  There is a pending dispute

7

before the Court regarding whether the State AGs have control over State agencies' documents for purposes of discovery that was fully briefed, and argued on May 6, 2024. *See* ECF 738.

*Rogs.* The Meta Defendants are allotted a combined total of up to 32 identical Rogs for each State AG, and up to 6 additional State-specific Rogs for each State AG. Meta served its first set of 7 identical Rogs on each of the 35 State AGs on May 3, 2024.

Without waiving Meta's arguments and position that the State AGs have control over State agencies' documents, Meta has provided the State AGs with notice of Meta's intent to serve 80 Rule 45 subpoenas, and is in the process of serving the subpoenas on a subset of at-issue agencies, including in the following states: Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Montana, Nebraska, New York, New Jersey, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Virginia, Washington, West Virginia, and Wisconsin. Appendix A includes a chart summarizing Meta's Rule 45 subpoenas to state agencies, including a list of the 80 state agencies at issue.

After Meta served the first 26 of its Rule 45 subpoenas, the State AGs filed an Administrative Motion for Leave to File Supplemental Information to alert the Court of the development (Dkt. 1031). In its Response, Meta indicated that it did not object to the Administrative Motion, but reiterated its position (also asserted when notifying the State AGs of its intent to issue the subpoenas): that these subpoenas did not moot the pending dispute as to whether the State AGs have control over State agencies' documents (Dkt. 1035).

### 2. State AGs' R&Os

The State AGs served their collective R&Os to Meta's first 45 RFPs on March 28. The State AGs served their collective R&Os to Meta's second set of RFPs and first set of Rogs on June 3.

### 3. State AGs' Document Productions

The State AGs produced an initial tranche of 28 documents on April 29, 2024. The State AGs produced a second tranche of 885 documents on May 31, 2024. The State AGs are coordinating with their coalition to continue their rolling productions.

### 4.    Status of Conferrals

The Parties met and conferred on April 16, 2024, regarding the State AGs' R&Os to Meta's first 45 RFPs, as well as Meta's request that the State AGs identify custodians and search terms. At Meta's suggestion, the Parties discussed a subset of RFPs and agreed to exchange letters regarding the other RFPs. The Parties are continuing to engage in letter correspondence.

### 5.    Update on Litigation Hold Issue

On July 26, the State AGs provided an updated list of custodians who received litigation holds and the dates on which they received holds, confirming that all 35 States have implemented litigation holds within their AGs' offices following this Court's Order at the July 11 DMC.

### E.    Third-Party Written Discovery

The chart below summarizes the status of third-party subpoenas served by the PI/SD Plaintiffs to date.

| Third-Party Subpoena Recipient | Date Served |
|---|---|
| Multiplier (Mobius) | May 6, 2024 |
| Family Online Safety Institute (FOSI) | June 7, 2024 |
| Technology Coalition, Inc. | June 10, 2024 |
| NetChoice | July 5, 2024 |
| National Center for Missing and Exploited Children (NCMEC) | July 24, 2024 |

Appendix A includes charts summarizing the third-party subpoenas served by the PI/SD Plaintiffs and Defendants to date.

### F.    Depositions

The Parties will submit by email to the Court following this filing an updated Joint Deposition Status Chart. The Parties set forth below the status of Plaintiffs' notices of anticipated fact depositions to Defendants; Plaintiffs' 30(b)(6) deposition notices to Defendants; Defendants' notices of anticipated fact depositions to the MDL PI Bellwether Plaintiffs; an update on the treating provider protocol; and Defendant's notices of anticipated fact depositions to the SD Bellwether Plaintiffs.

### 1.    Plaintiffs' Notices of Anticipated Defendant Fact Depositions

9

To date, Plaintiffs have identified 37 Meta witnesses, 20 TikTok witnesses, 11 Snap witnesses, and 15 YouTube witnesses as anticipated deponents.

### a)    Meta

As of August 2, Plaintiffs have identified 39 current and former Meta employees whom they seek to depose.  In terms of scheduling, Plaintiffs have requested and Meta has confirmed dates for two witnesses in August, three witnesses in September, two witnesses in October, and two witnesses in November.  They have not yet requested dates for the remaining witnesses.

Plaintiffs have requested that each witness reserve two full days for their depositions (see ECF 742 at 5 (permitting two days); ECF 702 at 2 (permitting up to 12 hours for each deposition).  Defendants have asked Plaintiffs to "meet and confer in advance of each deposition regarding estimated time lengths," as required by the Discovery Limitations Order (ECF 706, para. 6) and Deposition Protocol (ECF 743, para II.A.1), but that conferral has not yet occurred.  Plaintiffs have told Meta that once Plaintiffs have received and had an opportunity to assess the full custodial file for each deponent, they will be in a better position to advise which depositions will not require a second day.  Plaintiffs will relay the information to Meta as soon as they are able.  Meta requests that this information be provided no later than ten days prior to the deposition, including because many witnesses are no longer Meta employees, so their circumstances will vary, with their employers having no relationship to this case.  The Parties continue to confer and will report to the Court if impasse is reached.

### b)    TikTok

In May, Plaintiffs identified 14 early deponents as to the TikTok Defendants.  On July 16, 2024, Plaintiffs added six additional early deponents (bringing the total to 20) and served their first deposition notices, for the depositions of three former employees, for placeholder dates in September.  TikTok did not provide alternative dates within 10 days, as contemplated by the deposition protocol.  ECF 742 at 7.  The parties disagree as to whether the 10-day language applies to former employees.  Nevertheless, the parties are working together on scheduling these depositions, with one already set for October.

On July 5, 2024, counsel for the TikTok Defendants provided notice to Plaintiffs, consistent with the Deposition Protocol, of 11 depositions of employees of the TikTok Defendants noticed in a Related

Action – *Arkansas v. TikTok Inc., et al.,* No. 12CV-23-65 (Arkansas Circuit Court, Cleburne County). On July 29, Plaintiffs informed TikTok that they were cross-noticing these depositions, and asked TikTok to confirm that the complete custodial files of these deponents would be timely produced in advance of these depositions. TikTok has not responded. Although Plaintiffs cross noticed these depositions as a prophylactic measure, Plaintiffs believe they should be relieved of any obligation to cross notice depositions that the Arkansas Attorney General has noticed for August 14 and 21 due to TikTok's failure to complete relevant custodial productions. According to TikTok, these depositions are in the process of being scheduled, and TikTok will coordinate with Plaintiffs on the timing of relevant custodial files vis-a-vis the depositions.

### c)    Snap

In April and May, Plaintiffs identified 11 potential early deponents as to Snap. Plaintiffs have since indicated that they intend to proceed with only three of those depositions before the September 20, 2024 substantial completion deadline. Plaintiffs have not yet served formal notices for any depositions as to Snap.

### d)    YouTube

In July, Plaintiffs requested deposition dates in late August, September, and October, for 12 custodians, including some of the individuals who were previously identified as anticipated deponents. The parties are working cooperatively to identify mutually agreeable deposition dates, and to coordinate associated productions for those deponents.

### 2.    PI/SD Plaintiffs' 30(b)(6) Deposition Notices to Defendants

Plaintiffs deposed the Meta Defendants' two 30(b)(6) witnesses on Plaintiffs' ESI topics on July 24 and July 31, 2024. On July 25, 2024, Meta served its R&Os to Plaintiffs' 30(b)(6) deposition on written questions.

Plaintiffs deposed the TikTok Defendants' two 30(b)(6) witnesses on Plaintiffs' ESI and preservation topics on May 7 and May 9, 2024.

### 3.    Defendants' Notices of Anticipated MDL PI Bellwether Plaintiff Fact Depositions

In connection with the MDL PI Bellwether cases, Defendants have requested the depositions of 60 witnesses (plaintiffs, family members, and treating clinicians).

### 4.    Update on Treating Provider Protocol

The Parties are near agreement on the parameters of a protocol for depositions of treating healthcare providers in PI Bellwether cases.  The Parties plan to submit their proposed protocol to the Court for consideration, and Defendants believe the parties should be coordinating with the JCCP Plaintiffs to agree on a uniform protocol (and have asked the JCCP Plaintiffs to so agree).

### 5.    Defendants' Notices of Anticipated MDL SD Plaintiff Fact Depositions

The Joint Deposition Status Chart submitted by email on the date of this filing shows the status of the MDL SD Bellwether Plaintiffs' productions of custodial files for identified priority deponents.

In connection with the SD Bellwether cases, Defendants have requested the depositions of 156 witnesses.  Some (but not all) of the Bellwether SD Plaintiffs have provided Defendants with short lists of what they claim are key witnesses for each of the MDL Plaintiff School Districts to help narrow the focus for purposes of identifying initial deponents.  The Parties continue to confer on the timing of depositions and the expected dates of custodial file productions.

**Defendants' Further Update:**

Defendants hope to begin depositions of Plaintiff School District employees in mid- to late September.  However, that will depend on having custodial files produced for the early identified deponents in a timely manner.  The School District Plaintiffs have not informed Defendants as to when they expect their productions to be complete.

### G.    MDL Plaintiff Fact Sheets and Initial Disclosures

### 1.    Personal Injury Plaintiff Fact Sheets

As of July 26, there are 260 individual MDL PI Plaintiffs that have filed a Short Form Complaint in this MDL.  190 PI Plaintiffs served PFSs by the April 1 deadline set forth in the PFS Implementation Order (ECF 596) and Case Management Order 10 (ECF 604).  Pursuant to the Court's April 10 Order (ECF 748), an additional 45 PI Plaintiffs were to provide PFSs by May 8.  Of those 45 Plaintiffs, 22 Plaintiffs failed to submit a PFS by the deadline, and 4 Plaintiffs submitted a PFS after the deadline.

Defendants have submitted a number of PFS deficiency letters and the PI Plaintiffs have responded, including by raising the validity of such alleged deficiencies, and/or amending their PFSs accordingly. There are, however, certain deficiency letters that have not been responded to within the 60-day period set forth in the PFS Implementation Order (ECF 596). Should the Parties reach an impasse on any of the individual deficiency letters, they will raise them with this Court. In addition, certain counsel for Plaintiffs with outstanding PFSs have informed Defendants that their clients have not been reachable, in which case the Parties will follow the procedures set forth in the Stipulated Order Regarding Withdrawal of Counsel. *See* ECF 1033.

### 2. School District Plaintiff Fact Sheet (PFS)

By Defendants' count, as of July 26, 2024, there are 195 individual SD Plaintiffs in this MDL. To date, 148 SD Plaintiffs have served PFSs: One-hundred and ten (110) SD Plaintiffs served PFSs by April 1, 2024. Since April 1, 2024, 38 SD Plaintiffs have served PFSs. PFSs for 47 SD Plaintiffs are not yet due under the Court's orders, and those 47 SD Plaintiffs have not yet served a PFS.

### H. JCCP Discovery Update

Following the JCCP Bellwether PI case selection, on June 27, 2024, the JCCP Court opened fact discovery in the PI Bellwether cases. On August 1, 2024, Judge Kuhl heard argument on the issue of whether the MDL Court or the JCCP Court will handle discovery issues specific to the bellwether cases selected in the JCCP, and ruled as follows:

(1) Judge Kuhl ordered that the MDL Court (Magistrate Judge Kang) will set numerical discovery limits for written discovery propounded by Plaintiffs to Defendants specific to Bellwether PI Plaintiffs in the JCCP.

(2) Judge Kuhl ruled that she would decide whether to allow additional written discovery (Rogs and Requests for Admission ("RFAs")) to be propounded to the JCCP PI Bellwether Plaintiffs concerning Defendants' affirmative defenses as applied to the JCCP PI Bellwether Plaintiffs. (At this time there are no affirmative defenses pleaded in the MDL.) Following argument, Judge Kuhl determined that five of the RFAs and accompanying California Form Rog No. 17.1 previously served by

each of the JCCP Bellwether PI Plaintiffs on Defendants must be responded to by Defendants, and indicated that she may later allow additional discovery regarding Defendants' affirmative defenses.

(3) Judge Kuhl ruled that she will handle disputes regarding the sufficiency of written discovery responses regarding JCCP bellwether specific discovery (including RFPs specific to JCCP Bellwether Plaintiff accounts); JCCP Bellwether specific deposition disputes; and Defense Medical Examinations of JCCP Bellwether Plaintiffs.

(4) Judge Kuhl ruled that she will handle disputes regarding third-party discovery taken by Defendants pertaining to the JCCP Bellwether Plaintiffs (unless there are numerical limits set for such third-party discovery by the MDL Court, in which case Defendants shall comply with those numerical limits).

(5) Judge Kuhl ordered that the issue of supervision of expert discovery will be addressed at a later date.

Judge Kuhl further advised that JCCP leadership counsel should participate in meet-and-confer discussions pertaining to all discovery issues to be addressed by the MDL Court.  Judge Kuhl stated that she will take into account the MDL Court's rulings even as to individualized bellwether issues in the MDL insofar as similar questions are presented to the JCCP court.

## II.    Ripe Discovery Disputes

### A.    Disputes Between PI/SD Bellwether Plaintiffs and Defendants

#### 1.    Discovery Limitations Applicable to MDL and JCCP PI/SD Bellwether Plaintiffs

**PI/SD Plaintiffs' Position:**

PI/SD Plaintiffs propose the following Bellwether case-specific discovery limits on discovery against Defendants:

- Each SD Plaintiff may serve up to 15 case-specific interrogatories and 17 RFAs per each Defendant group in each SD Bellwether case; and

- Each PI Plaintiff may serve up to 10 interrogatories and 15 RFAs per each named Defendant group in each PI Bellwether case.

Plaintiffs' proposed limits are the same as the limits the Court ordered for Defendants' discovery against Bellwether Plaintiffs (see ECF No. 672) and are aimed at ensuring a fair and efficient discovery process. By mirroring the limits on Defendants' discovery against Plaintiffs, Plaintiffs' proposal ensures that they will likewise have a meaningful opportunity to gather essential case-specific information, while ensuring proportionality. Thus, Plaintiffs' proposal balances Plaintiffs' right to pursue discovery on the specific facts and circumstances of each case with the goal of avoiding undue burden on Defendants.

Defendants, on the other hand, have attempted a game of "gotcha" by insisting that the limits on common liability discovery should also encompass all Bellwether case-specific discovery against Defendants. This is neither fair nor practical. Those limits were the result of extensive negotiations in early 2024 around common liability discovery limitations, which the Court subsequently ordered (ECF No. 672). The negotiations contemplated limits on common liability discovery served on Defendants and case-specific discovery served on Plaintiffs. That process did not address Bellwether case-specific discovery served against Defendants. At that time, Bellwether selection had not yet begun and a parallel process concerning the DFS was ongoing in the JCCP. As a result, it was neither feasible nor appropriate to negotiate written Bellwether case-specific discovery limits against Defendants at that stage. Plaintiffs appropriately raised the issue of Bellwether case-specific discovery immediately following the selection of Bellwether cases and provided their proposal to Defendants more than two-and-a-half months ago, on May 14. After hearing nothing from Defendants, Plaintiffs followed up on their proposal on May 23 and the parties held a meet and confer on May 28, during which Defendants said they needed "only a few days" to respond to Plaintiffs' proposal. Plaintiffs then followed up on multiple occasions, including on June 24, July 2, and July 9. Defendants stonewalled Plaintiffs, delaying their response by nearly 50 days until July 16, only to then propose unworkable limits of 2 interrogatories and 2 RFAs for each Bellwether case. Despite attempts to meet and confer on this matter, Defendants' subsequent changes did not meaningfully advance the discussions and the Parties are

therefore at an impasse.[1] Moreover, on August 1, in the parallel JCCP proceeding, Judge Kuhl ruled that the MDL Court will set limits on the JCCP Bellwether case-specific interrogatories and RFAs against Defendants, and so the JCCP's Plaintiffs' position should be taken into account. JCCP Plaintiffs strenuously opposes limits lower than Plaintiffs' proposal, which provides parity with Defendants.

Plaintiffs' right to pursue discovery in their specific cases should neither be further delayed nor arbitrarily limited.

**Defendants' Position:**

Introduction.  Several months ago, the Court entered an Order Governing Discovery Limitations ("DLO" or "Order") that placed limits on the number of discovery requests the Parties would be permitted to serve.  *See* ECF 702.  The Order limited the MDL and JCCP Plaintiffs to collective totals of 45 Rogs and 45 RFAs per Defendant.  *Id.* ¶¶ 1-2.  Recently, however, the MDL and JCCP Bellwether Plaintiff groups have both sought to serve—in contravention of the DLO—additional "case-specific" Rogs and RFAs that, if allowed, would place them far beyond the limits imposed by the Court.  Given that Plaintiffs' efforts to serve this additional discovery have no grounding in the Court's Order and are incompatible with the case schedule, the Court should (1) clarify that Plaintiffs remain bound by the previously-established limits and (2) order any case-specific discovery limits within the framework of the Order.

Background.  In February and March of this year, the Parties engaged in extensive negotiations regarding the limitations that would apply to fact discovery.  These discussions occurred in the context of negotiating a broader case schedule, given that the amount of discovery the Parties would be permitted to take would in turn inform the amount of time needed for fact discovery.  The Parties' negotiations culminated in the DLO, which the Court entered on March 7, 2024 and modified on March 21, 2024.  ECF 702.  The DLO sets specific allowances for the discovery that "Plaintiffs as a group (including the JCCP Plaintiffs)" may serve on Defendants.  ECF 702 ¶ 1.  For example, paragraphs 1

---

[1] In negotiating both sides reserved the right to present their original positions if resolution was not reached.

and 2 allow "Plaintiffs as a group (including the JCCP Plaintiffs)" to serve a combined total of up to 45 Rogs and 45 RFAs for each Defendant. There is no suggestion in the Order that these discovery limits apply only to some "general" category of discovery, and that more "case-specific" discovery would later be necessary. And neither the MDL Plaintiffs nor the JCCP Plaintiffs ever raised the need for additional "case-specific" Rogs or RFAs in the course of the Parties' extensive negotiations.

Nor can it be said that the "case-specific" aspect of these matters was not contemplated at the time. Indeed, the DLO set specific allowances for the discovery Defendants could serve on each bellwether PI and SD Plaintiff. For example, the Order allows Defendants up to 10 Rogs per minor bellwether PI Plaintiff, 7 Rogs for all other bellwether PI Plaintiffs, and 15 RFAs for each bellwether PI Plaintiff. The Order also provides allowances for Rogs and RFAs to be served on each bellwether SD Plaintiff. Notably, the genesis of the bellwether-specific discovery limitations ultimately set forth in the DLO was a detailed and comprehensive "Bellwether Protocol" that the MDL Plaintiffs insisted on submitting to the MDL Court in February 202—over Defendants' objection that "it is not feasible [at this time], and the Court did not order the Parties, to negotiate and submit a detailed proposed Bellwether Protocol." MDL ECF 595-1 at 2.

Despite these long-imposed limitations, the MDL Plaintiffs recently sought to reopen the issue, when they reached out to Defendants seeking to negotiate limits for additional case-specific Rogs and RFAs. Separately, in early July, the JCCP Bellwether PI Plaintiffs began serving three Special Rogs each on each Defendant, along with over ten RFAs, each accompanied by Form Rog 17.1—amounting to up to 399 Rogs and 336 RFAs per Defendant. Since Plaintiffs' actions flouted the DLO, and given that the Order applied to the MDL and JCCP Plaintiffs collectively, Defendants sought to meet and confer on the issue with both Plaintiff groups. As an initial compromise offer, and to avoid a Court dispute, Defendants offered the MDL and JCCP Bellwether Plaintiffs—on top of the limits imposed by the Order—two additional Rogs and two additional RFAs per Defendant (for each bellwether Plaintiff). In return, under Defendants' proposal, Defendants would receive two additional Rogs and two additional RFAs of their own, per bellwether Plaintiff, in each proceeding.

The MDL Plaintiffs rejected this offer, as did the JCCP Plaintiffs. The MDL Plaintiffs also claimed for the first time that they could not negotiate in tandem with the JCCP Plaintiffs. Further, they

responded with a counter-proposal that would unilaterally afford the MDL Plaintiffs—on top of the Discovery Limitations Order—eight additional Rogs and ten additional RFAs per MDL Bellwether PI Plaintiff, as well as 12 additional Rogs and 12 additional RFAs per MDL Bellwether SD Plaintiff, without any corresponding increase of Defendants' limits.

As an additional attempt at compromise, Defendants responded with an alternative proposal, whereby the Bellwether PI Plaintiffs would be permitted to collectively serve up to four of their 45 common Rogs (or up to five Rogs for the SD Bellwether Plaintiffs), and up to six of their 45 common RFAs, as case-specific Rogs and RFAs; Defendants would then answer the Rogs and RFAs for each Bellwether Plaintiff (to the extent named in the bellwether case)—even though each Rog and RFA would only count once against the allowed totals of four, five, or six. This proposal would maintain consistency with the DLO, while also giving Plaintiffs substantial flexibility to pursue case-specific discovery. Nevertheless, both Plaintiff groups rejected this second attempt at compromise, resulting in an impasse and requiring the Court's intervention. Specifically, the JCCP Plaintiffs maintained their Special Rogs and a number of their RFAs and accompanying Form Rog 17.1, and refused to coordinate with the MDL Plaintiffs on common bellwether discovery; meanwhile, the MDL Plaintiffs went backward, demanding 10 and 15 additional Rogs per PI and SD Plaintiff, respectively (up from 8 and 12, respectively); and demanding 15 and 17 additional RFAs per PI and SD Plaintiff, respectively (up from 10 and 12, respectively).[2] On August 1, 2024, Judge Kuhl directed that this Court enter written discovery limits for the JCCP Bellwether Plaintiffs (as well as the MDL Bellwether Plaintiffs).

Argument. The Court should reaffirm that the MDL and JCCP Plaintiffs remain bound by the limits in the DLO, which gives them the ability to collectively serve up to 45 Rogs and 45 RFAs—including for any case-specific discovery they believe they need. Many months ago, the MDL Plaintiffs negotiated fact discovery limits, with no indication that they would later seek separate limits for case-

---

[2] Contrary to Plaintiffs' assertion, Defendants did not "stonewall[]" Plaintiffs. Notably, the MDL Plaintiffs omit from their recitation of the Parties' negotiations the counteroffer they made to Defendants' initial proposal, and the further compromise offer Defendants made in response—even though the Court has previously instructed the Parties to report "their respective final compromise position for each [] issue." *E.g.*, ECF 936 at 4.

specific discovery, even though the existence of case-specific litigation was known at the time. Plaintiffs were well aware in February and March that the Parties would be selecting, and the Court would adjudicate, bellwether cases. Indeed, on February 8, Judge Gonzales Rogers issued CMO No. 10 (ECF 604), which set forth the Court's bellwether selection process, established a deadline of April 15 for the Parties to identify PI and SD Bellwether discovery pools, established deadlines for case-specific expert reports, and set deadlines related to the Bellwether trial pool. In addition, the DLO included case-specific limits applicable to Defendants. Under these circumstances, Plaintiffs cannot complain at this late date—and on an aggressive discovery timeline that they pushed for—that they anticipated establishing additional, case-specific limits further down the line.

Nor can the MDL Plaintiffs show any good faith need for additional case-specific discovery beyond the framework of the DLO. Defendants have already produced usage data and other relevant user-specific platform metrics for each MDL Bellwether PI Plaintiff in a process akin to the Defendant Fact Sheet ("DFS") data produced in the JCCP. Bellwether plaintiffs may also serve additional RFPs, which are not limited under the DLO, to supplement this DFS-type data. An Order requiring the MDL Plaintiffs to negotiate case-specific discovery limits within the framework of the DLO would be consistent with the Court's goal of expediting resolution of discovery disputes. *See* 4/22/24 MDL DMC Tr. 62:17-63:17. It would also be consistent with the Court's desire for targeted discovery, especially in light of Plaintiffs' insistence on a compressed discovery timetable. *See* 6/20/24 MDL DMC Tr. 27:13-28:11. Defendants have worked diligently with Plaintiffs on workable solutions—and are willing to continue to do so—but there is no basis at this point in an aggressive schedule for Plaintiffs to circumvent the reasonable limits the Court imposed over four months ago.

**2.    MDL Bellwether PI Plaintiffs' Responses to Defendants' RFPs**

The Parties have met and conferred regarding the R&Os for all MDL PI Bellwether Plaintiffs, culminating in an "H.2" conference of lead trial counsel on July 30. The Parties reached compromise positions on several RFPs, but are at an impasse with regard to RFP Nos. 1, 32, 33, 34, and 66. The

Parties have agreed to letter-brief these disputes for submission to the Court on Tuesday, August 6, so that they can be heard at the DMC.

### 3. Updates on JCCP Bellwether Discovery in DMC Statements

**Defendants' Position:**

Defendants believe it would be helpful to provide updates to this Court each month about discovery being served by and on the JCCP bellwether plaintiffs (and any disputes relating to that discovery), and included such updates in their initial draft of this Statement, but the MDL Plaintiffs refused to allow them to be included. Such updates are particularly appropriate given Judge Kuhl's recognition at the August 1, 2024 conference that this Court may rule on bellwether-specific discovery issues that are common across the MDL and JCCP, and that if the MDL bellwether plaintiffs are taking up such issues in the MDL, the parties (including the JCCP bellwether plaintiffs) should try to "get agreement there" (in the MDL) first, *see* Draft 8/1/24 JCCP Hr'g Tr. at 23:13-18; to that end, she instructed that the JCCP plaintiffs should be looped into any meet-and-confers on such issues, instructed a representative for one of the MDL PI/SD Plaintiffs' co-lead firms specifically to ensure her JCCP colleagues are included in MDL negotiations involving common bellwether discovery issues, and said she would take into account this Court's rulings on those issues, *id.* 22:12-15, 24:5-18, 24:24-27, 28:9-12. When the JCCP plaintiffs raised with Judge Kuhl at the August 1, 2024 JCCP conference that Defendants had "included a lot of information about the JCCP Plaintiffs, the discovery that's been served" in their draft DMC Statement, Judge Kuhl responded that "maybe it's useful for the MDL Judges to know those things." Draft 8/1/24 JCCP Hr'g Tr. at 34:3-19.

**Plaintiffs' Position:**

Judge Kuhl's Minute Order clearly states that she will be managing JCCP bellwether discovery (*see* Exhibit A), but Defendants nonetheless sought to dramatically increase the already lengthy DMC statement by providing details on JCCP PFS/DFS submissions and deficiencies, multiple charts summarizing the specific discovery being served on JCCP bellwethers, and details about disputes related to JCCP BW discovery. This information is not appropriate to include here given the JCCP court is handling these matters, and the time and effort required to compile, verify, and (in some instances) debate with Defendants the accuracy of the information is significant and better spent on addressing and

resolving disputes and litigating this case. In an attempt to reach a compromise with Defendants, and to avoid burdening this Court with unnecessary argument on JCCP discovery issues Judge Kuhl is handling, the PI/SD Plaintiffs proposed including a short paragraph updating this Court on the JCCP proceedings akin to what they have done in the CMC statements for some time and attaching the most recent JCCP CMC statement for Your Honor's review.

### B.    Disputes Between PI/SD Plaintiffs and Meta

#### 1.    PI/SD Plaintiffs' requests for documents related to investigations into Meta (RFPs 286-87)

Plaintiffs seek documents Meta provided to any foreign governmental authority, Congress, the White House, the U.S. Surgeon General, or any U.S. federal or state agency or regulator in connection with any formal or informal investigation "related to whether [Meta's] Platform [Instagram or Facebook] or business practices present risks to the health and safety of Children or Teens" (RFP 287), as well as the underlying subpoenas, CIDs, or requests for documents or information (RFP 286).  Meta has re-produced or agreed to re-produce to the MDL Plaintiffs all documents it produced to the Multistate AG coalition that Plaintiffs requested be re-produced in the MDL, but have otherwise objected to these Requests.  The Parties held a final meet and confer of lead counsel on July 29, 2024, and anticipate submitting joint letter briefing on this issue prior to the August DMC.

#### 2.  Meta's Production of Hyperlinked Documents

__Plaintiffs' Position:__

Plaintiffs are being prejudiced by Meta's failure to timely produce hyperlinked documents requested by Plaintiffs pursuant to the ESI Protocol. During the July 31, 2024, 30(b)(6) deposition of Meta concerning ESI, Plaintiffs learned that, subsequent to execution of the ESI Protocol in this case, Meta may have acquired the necessary software to collect documents that are hyperlinked in a responsive document as a family, similar to collecting emails and attachments with metadata associating them. If that is the case, or even if it is not, Plaintiffs informed Meta that they intend to seek amendment of the ESI Protocol to require Meta to collect hyperlinks in the first instance, if they are able, or to revise the process for requesting and producing hyperlinked documents to cure the ongoing prejudice to Plaintiffs as a result of not having hyperlinked documents, which are used extensively by Meta

employees.

**Meta's Position:**

Meta notes—and expressed to Plaintiffs—that it is inappropriate for Plaintiffs to include this topic in this DMC Statement, given that the Parties have not even begun conferring.

Although Plaintiffs asked for testimony regarding Meta's "[a]bility to collect, export, and produce internal or non-public Documents hyperlinked in other Documents," Plaintiffs did not ask Meta's 30(b)(6) witness on July 31, 2024, a single question about hyperlinks and only once referenced Google Vault in connection with Meta's Google Suite applications.  As is readily evident from publicly-available information, and as Defendants have repeatedly explained to Plaintiffs, Google Vault can only collect hyperlinks from emails sent *after* it is deployed, and only to the extent it is deployed in conjunction with Gmail,[3] and because Meta uses Microsoft Outlook, not Gmail, Google Vault cannot be used to collect hyperlinks from Meta employees' emails.

C.    **Disputes Between JCCP PI Plaintiffs and Meta: Meta Relevant Time Period**

**JCCP Plaintiffs' Position:**

As voiced during the June 20, 2024 DMC (Hr'g Tr. 79:5-83:8), the JCCP Plaintiffs' object to this Court's ruling with respect to the relevant time period applicable to Meta-related discovery.  The JCCP Plaintiffs' Co-Lead Counsel raised this objection with Judge Kuhl during the July 19, 2024, JCCP status conference, in which Judge Kuhl directed the JCCP Plaintiffs to readdress this issue with Your Honor first. To that end, the JCCP Plaintiffs and Meta provide their respective positions as outlined in the JCCP's Joint Status Conference Statement for July 19, 2024 Conference, *see* Exhibit B, at 29-42, which contains additional facts and arguments that were not presented to Your Honor at the June 20th DMC or the corresponding DMC statement.

As set forth therein, the JCCP Plaintiffs contend that this Court's prior ruling on this issue seriously prejudices the JCCP Plaintiffs because it improperly restricts discovery in light of the scope of

---

[3] See https://workspaceupdates.googleblog.com/2023/12/google-vault-export-hyperlinked-drive-content-from-gmail-messages.html.

the claims in the JCCP and the time periods of usage of Meta's platforms by certain JCCP bellwether plaintiffs. This Court's prior ruling omits from discovery entirely documents before 2012 (e.g., the first eight years of the company's existence) that directly bear upon critical issues of liability under Judge Kuhl's Demurrer rulings, including Meta's "course of conduct" as to its "platform" generally, and related issues of Meta's knowledge and notice of both the need for additional youth safeguards (age verification and parental controls as two examples) and harms and potential harms associated with youth use of its platforms. Another significant problem with prohibiting any discovery that is not feature-specific prior to 2012 is that certain bellwether plaintiffs in the JCCP began using Meta's platforms well before that date. For example, there are JCCP bellwether plaintiffs who began using Facebook in 2006, 2008, and 2009, respectively. Under this Court's current ruling, these plaintiffs would be permitted no discovery at all (unless explicitly tied to a specific feature) into the above issues for the first several years of their usage. Precluding discovery into these foundational issues over a considerable period of years during which these plaintiffs were using Meta's platforms is severely prejudicial to their claims. Accordingly, JCCP Plaintiffs respectfully requests relief from this Court's prior ruling

**Meta's Position:**

This Court should affirm its ruling as to the relevant time period(s) applicable to discovery of Meta. That ruling already requires Meta to collect and review documents for 122 agreed-to custodians over a twelve-year period (from 2012-2024), and to additionally collect documents hitting on 107 "feature-specific" search terms from December 31, 2011 back as far as 2006 (depending on the launch date of the feature). Those "feature-specific" search terms are so broad – e.g., ("underage* AND (abuse* OR exploit*); "teen* w/15 conversation*"; "youth w/15 message*"; "end* w/5 newsfeed*" – that they will likely encompass the broader information sought by the JCCP Plaintiffs during this earlier period; and Meta intends to produce responsive, non-privileged documents returned by those search terms *regardless of whether they relate to the features for which feature-specific discovery was authorized before 2012*. For this reason, the JCCP Plaintiffs are flatly incorrect in asserting that the Court's ruling "omits from discovery entirely documents before 2012 … that directly bear upon critical issues of liability under Judge Kuhl's Demurrer rulings"; they are also incorrect that JCCP bellwether

plaintiffs who began using Facebook in 2006-2009 "would be permitted no discovery at all (unless explicitly tied to a specific feature) into the above issues for the first several years of their usage."

The JCCP Plaintiffs fail to explain how a discovery period spanning nearly 20 years and returning millions of documents is not sufficient to prosecute their cases; nor could they, when they previously assured Judge Kuhl – in pressing for a highly accelerated case schedule and early trial date – that "[p]articularly for the Meta Defendants[,] . . . there is lots of information out there, and **we're going to use that to make sure our discovery is tailored and targeted**." 11/7/23 JCCP CMC Tr. 41:25-42:6 (emphasis added); *see also id.* 41:25-42:6 (Judge Kuhl admonishing JCCP Plaintiffs that they "have to know that getting to [an early trial] means **you are going to have to think about how much discovery you need**." (emphasis added)).  For these reasons and the additional reasons set forth in Meta's portion of the JCCP parties' July CMC Statement, attached hereto as Exhibit B, this Court should affirm its ruling as to the relevant time period(s) applicable to discovery of Meta.

> **D.    Disputes Between PI/SD Plaintiffs and TikTok**

> **1.    PI/SD Plaintiffs' RFPs 198, 200-202, 203-205 (Advertising)**

The parties have met and conferred regarding these requests and are at an impasse.  They plan to submit joint letter briefing on August 7, so that this matter can be heard at the upcoming August Discovery Management Conference.

## III.    Discovery Issues that Do Not Currently Require Court Action

> **A.    Unripe Issues Between Personal Injury Plaintiffs and All Defendants**

> **1.    Surgeon General Call for Warning Labels**

**PI/SD Plaintiffs' Position**

On July 17, 2024, the United States Surgeon's General called for warning labels on Defendants' social media platforms as set forth in the Opinion piece published in the *New York Times*.[4]   The PI/SD Plaintiffs followed up with Defendants to confirm that Defendants would be producing non-privileged

---

[4] https://www.nytimes.com/2024/06/17/health/surgeon-general-social-media-warning-label.html.

documents regarding this highly relevant development, including: (1) communications regarding the Surgeon General's call for warnings; (2) analysis and assessment of Defendants' platform's warnings (or lack of warnings) in light of the Surgeon's General's call for warnings; (3) proposed or suggested changes to Defendants' platform's warnings in response to the Surgeon General's call for warnings; and, (4) implemented changes to Defendants' platform's warnings in response to the Surgeon General's call for warnings, all of which would be responsive to preexisting RFPs Defendants have a duty to supplement (YouTube/Google RFP 52 and 53; Meta RFP 106 and 107; TikTok/ByteDance RFP 169 and 170; Snap RFP 39 and 40).  Defendants refused, and insist that the PI/SD Plaintiffs propound duplicative RFPs that would only result in delay.

### Defendants' Position

On June 25, 2024, in lieu of serving RFPs, Plaintiffs sent all Defendants a letter requesting that Defendants produce four new categories of documents related to Dr. Vivek H. Murthy's June 17 *New York Times* Opinion Guest Essay, as supposed "supplemental" productions purportedly responsive to previously-served RFPs.  These materials fall outside the scope of both the Relevant Time Periods for discovery against all Defendants previously ordered by this Court and Plaintiffs' prior RFPs, and thus do not "supplement" any prior served discovery; accordingly, and consistent with this Court's prior orders regarding the scope of permissible discovery and follow-up RFPs, Defendants asked Plaintiffs to serve specific, targeted document requests for the documents Plaintiffs seek so that Defendants could evaluate those requests, and offered to respond on an accelerated timeline.  Plaintiffs refused to do so, but nevertheless, in an effort to avoid burdening this Court with a dispute, Defendants have agreed to meet and confer with Plaintiffs about conducting targeted searches for responsive, nonprivileged information – including the small subset of existing custodians from whom documents may be produced and the time period for these requests – while maintaining their objections to Plaintiffs' informal requests and

reserving all rights not to respond to any additional requests, such as these, which fall outside the Court-ordered Relevant Time Periods and/or are not properly served.

### 2. Discovery as to MDL Loss of Consortium Plaintiffs

**PI Plaintiffs' Position**

To ensure efficiently prioritize document production, Plaintiffs' productions to date have concentrated on the most critical data sources within their possession. They have also diligently identified and gathered relevant data from Parent Plaintiffs, and expect to begin productions from those data sources shortly. Parent Plaintiffs, however, have not agreed to Defendants' demand for broad authorizations to release mental health records, where the Parent Plaintiffs have not alleged mental health injuries from using Defendants' platforms nor placed their mental health at issue in this litigation.

**Defendants' Position:**

To date, MDL PI Bellwether Plaintiffs who have asserted loss of consortium claims ("Consortium Plaintiffs") have failed to produce any documents, including, but not limited to, responsive documents they agreed to search for and produce.[5] Consortium Plaintiffs also have refused to sign targeted authorizations to disclose medical records reflecting the Consortium Plaintiffs' alleged mental and emotional damages. Plaintiffs agreed to produce some documents related to the user Plaintiff's allegations in the Consortium Plaintiff's possession, custody, and control but this does not resolve the entirety of the issue at this juncture.

### 3. Bellwether PI Plaintiff Search Terms and Data Sources

The Bellwether PI Plaintiffs and Defendants provided their respective positions with respect to this topic in their Joint Status Report on Forensic Imaging and Device Data (ECF 1034, at 2-3), which is further updated by separate cover today.

**Defendants' Additional Statement:**

---

[5] This includes: Jessica Smith in the *Smith* bellwether (Case No. 4:23-CV-05632).

Defendants respectfully request that the Court order a near-term deadline to complete negotiations over search terms, so that depositions may commence given the compressed discovery schedule in this case.

Defendants are also extremely concerned that the pace of forensic imaging; the lack of production of any forensic data for any Bellwether PI Plaintiff; and missing devices jeopardizes the Court's discovery schedule. Specifically, Plaintiffs have not performed a File System Extraction for any devices for 10 of the 12 MDL PI Bellwether Plaintiffs; Defendants have asked the JCCP Bellwether Plaintiffs to confirm that they will abide by DMO No. 8 in the JCCP, but have not yet received a response; and on July 18 and July 22, Defendants were informed (for the first time) that Plaintiffs Craig and Melton lost or destroyed six devices after filing their lawsuits, and that these devices had not been imaged previously.

**Plaintiffs' Additional Statement:**

As stated in the July 26, 2024, Joint Status Report (ECF 1034) and the August 2, 2024, Joint Status Report (ECF 1047), Plaintiffs continue to work in good faith to conclude search term negotiations as quickly as possible and provided Defendants with a counter proposal to their proposed search terms on July 31, 2024. Likewise, Plaintiffs are diligently working with their vendor to complete the forensic imaging as requested by Defendants, formatting the data for review and production, and have been transparent with Defendants throughout the process, including answering repeated questions from Defendants and consistently offering to meet and confer on datasets and form of production. Defendants only recently took Plaintiffs up on their offer to meet and confer on these issues, which is scheduled for August 5, 2024.

### 4.    PI Plaintiffs' Lost and Destroyed Devices and Litigation Holds

**PI Plaintiffs' Position:**

Counsel for the PI Bellwether Plaintiffs understand the obligation to preserve relevant evidence and have taken reasonable and appropriate measures, including litigation hold notices and other means of informing Plaintiffs of their preservation obligations. Defendants' July 26, 2024 correspondence conveyed preservation concerns raised by interrogatory responses provided by three Bellwether PI Plaintiffs. Plaintiffs intend to respond to Defendants' concerns in writing and the Parties are scheduled to meet and confer on Monday, August 5, 2024.

**Defendants' Position:**

On July 26, 2024, Defendants wrote to the Plaintiffs' Leadership Counsel after learning that several PI Bellwethers had failed to preserve the very devices that are at the center of this litigation. In light of that failure, Defendants have requested among other things, that: (1) Plaintiffs' Leadership Counsel disclose the dates on which each PI Bellwether Plaintiff was provided with a litigation hold notice or otherwise informed of their preservation obligations under Fed. R. Civ. P. 37(e); (2) the PI Bellwethers with lost or destroyed ESI agree to respond to five interrogatories related to the loss or destruction; and (3) the PI Bellwethers with lost or destroyed ESI agree to extend their depositions by 90 minutes to better understand the destruction or loss of the ESI. The letter requested a meet and confer regarding Defendants' proposals, which has been scheduled for Monday, August 5, 2024, and as of this writing, Defendants have not received a letter with Plaintiffs' position.

     **5.**     **PI Plaintiffs' Responses to Defendants' First Set of Interrogatories**

Defendants have received responses to their First Set of Rogs from each MDL PI Bellwether Plaintiff and each MDL PI Bellwether Plaintiff Parent. Defendants are in the process of reviewing Plaintiffs' responses, and the Parties will confer in good faith in an effort to resolve any disputes.

     **6.**     **PI Bellwether Plaintiffs' Family Members' Responses to Third-Party Subpoenas**

**PI Plaintiffs' Position:**

Over the past few weeks, Defendants have served a slew of subpoenas on non-party individuals, including minor siblings, grandparents, and a neighbor with no familial relationship to any Plaintiff. Defendants have failed to take any reasonable steps to avoid imposing undue burden and expense on these non-party individuals, and instead have served voluminous requests for broad categories of "all documents" that are: (1) duplicative of documents Plaintiffs have either produced or agreed to produce; (2) overly intrusive into the non-parties' personal lives; and/or (3) have little or no bearing on issues in this litigation (such as "all documents" related to a non-party's weight). Non-parties represented by Plaintiffs' counsel have explained to Defendants they are not opposed to producing relevant, non-duplicative documents in response to more targeted requests, provided Defendants work to narrow their requests for more specific information not obtainable through party discovery, but Defendants have

refused to tailor their requests appropriately to avoid undue burden and expense on Non-Parties.

**Defendants' Position:**

Defendants first served RFPs on PI Bellwether Plaintiffs in May seeking documents about Plaintiffs' life experiences and the claims made in this MDL, regardless of whether those documents were held by Plaintiffs or other members of their household, but Plaintiffs refused to commit to providing documents held by their family members (or even to state whether those documents were in the possession, custody, or control of Plaintiffs); insisting instead that Defendants serve Rule 45 subpoenas to obtain these materials. Now, through boilerplate, nearly-verbatim sets of objections, several of which are untimely and have been waived, those family members (through PI Bellwether Plaintiff counsel, who are also representing the family members), who were subpoenaed by Defendants because they were listed in Plaintiffs' PFSs, refuse to "undertake the burden" of searching for and have not produced even a single document in response to those subpoenas, claiming not to be able to "decipher" requests. In an effort to reduce the burden on third parties, Defendants served subpoena requests that largely mirror the requests made in Defendants' First RFPs to Plaintiffs and about which the Parties have met and conferred extensively, and Defendants offered to apply those same negotiated limitations to the family member subpoenas.

7. **Protocol for Forensic Imaging of Bellwether PI Plaintiffs' School-Issued Devices**

Defendants' subpoenas to Bellwether PI Plaintiffs' schools include requests to produce or inspect electronic devices issued by the schools to bellwether Plaintiffs during any academic year within the relevant time period. On July 19, the PI/SD Plaintiffs and Defendants met and conferred about how school-issued electronic devices would be treated in light of DMO No. 8 and are working toward a compromise for a proposed protocol for handling and preservation of school-issues devices. To date, at least one school district—which did not object to the subpoena—has disclosed in response to Defendants' subpoena that it has in its possession a responsive, school-issued device issued to a Bellwether Plaintiff, who has not identified that school-issued device as a routine device on her PFS or interrogatory response. The Parties continue to meet and confer.

### B.    Unripe Issues Between Plaintiffs and Meta Defendants

#### 1.    RFPs 68-70

**PI/SD Plaintiffs' Position:**

During review of Meta's documents, Plaintiffs discovered spreadsheets containing rosters of Meta employees, their job titles, job profiles, management hierarchies, and organizational hierarchies, which they believe are responsive to RFPs 68-70. Following written exchanges, on July 29, the Parties met and conferred, and Meta represented that it agreed to produce rosters for 140 teams in its response to DWQ 222 and requested that Plaintiffs withdraw their requests from their July 18 letter. To date, Plaintiffs are continuing to evaluate Meta's response to DWQ 222 and whether a withdrawal is appropriate or whether further compromise can be reached with Meta.

**Meta Defendants' Position:**

RFPs 68-70 seek organizational charts, directories and other documents sufficient to show executives, units and employees, particularly those involved with the Named Features or user safety, in response to which Meta pulled from a database and produced, for each year of the 12-year Relevant Time Period, reporting chain spreadsheets that disclosed for every one of the 122 agreed custodians and for every direct report of every custodian: name, hire date, termination date, job title, job profile, work location, number of direct reports, direct manager name, complete hierarchy above their manager, company grouping, allocation area, team group, team, and department.  In addition, in response to Plaintiffs' DWQ 222, Meta agreed to provide for each of 140 Meta teams identified by Plaintiffs, job details for all team members available from its employment enterprise management tool as of the first of each year for a 10-year period, materials that collectively provide detailed information significantly in excess of what would ordinarily be included in a typical organizational chart or directory, and are more than sufficient to show what was requested by these RFPs.  Plaintiffs have located in Meta's document productions spreadsheets created for particular purposes that contain additional fields, but these special purpose spreadsheets and additional fields do not undermine the sufficiency of Meta's productions responsive to these RFPs.

### 2.    RFP 124

**PI/SD Plaintiffs' Position:**

In December 2023, the PI/SD Plaintiffs served a discovery request (RFP 124) seeking user and third-party (*e.g.*, parental) complaints submitted to Meta and its responses thereto regarding adverse effects of its platforms on children, teens, and youth.Through a series of meet and confers, Meta has represented that such information is cataloged in a database and Meta has agreed, in principle, to produce responsive records. However, the information provided by Meta to date is highly technical and the PI/SD plaintiffs require additional information regarding complaint categories and the structure of the data in order to interpret it in a useful way.

**Meta's Position:**

RFP 124 seeks user complaints received by Meta regarding adverse effects to Youth safety, if any, and documents sufficient to show Meta's response to any such user complaints.  Meta has met and conferred with Plaintiffs to negotiate this RFP on multiple occasions and is currently in the process of investigating answers to Plaintiffs' questions and scoping what information is feasible to produce.  Meta believes it is close to agreement with Plaintiffs on this RFP.

### 3.    RFP 210/304

**PI/SD Plaintiffs' Position:**

Plaintiffs' RFP 210 seeks copies of Facebook's "Red Book," which has been described as "embod[ying] much of [Facebook's] corporate philosophy and as "espous[ing Facebook's] mission and ethos." The Red Book has been reported as being provided to every new Facebook employee, which underscores its relevance (and makes it responsive to RFP 304, which seeks onboarding materials). Because this is a readily identifiable and highly-relevant document, Meta should produce all versions and drafts thereof during the Relevant Time Period.

**Meta's Position:**Plaintiffs' quotations characterizing the purported importance and function of the Red Book are from an unidentified non-party source; moreover, there is no suggestion by Plaintiffs that the Red Book addresses teen mental health or any other issue in these cases.  While maintaining its objections that this RFP seeks information that is not relevant to the claims or defenses in this case, as a

31

good faith compromise offer to resolve this dispute, Meta informed Plaintiffs on July 26 that Meta would be willing to produce a copy of the Red Book, but not to search for drafts or multiple versions. The parties are still discussing this RFP and possible compromises.

### 4.    Meta's Answers to Plaintiffs' Interrogatories Set 1

**PI/SD Plaintiffs' Position:**

Meta Defendants responded to PI/SD Plaintiffs' First Set of Interrogatories to Meta on June 28, 2024, and after a careful review of Meta's response on the highly technical classifier issue, Plaintiffs sent a meet and confer letter on July 23, 2024.  In this letter, Plaintiffs raised issues with the Meta's response including overly broad objections, failing to address certain elements of the interrogatories, and improper withholding.  Plaintiffs have requested that a meet and confer take place on or before July 31, 2024, but the Meta Defendants advised that they are working on a written response to be sent within the same timeframe; we plan to meet and confer after receiving their response.

**Meta's Position:**

Plaintiffs' letter raises a number of meritless objections, premised on a misapprehension of how classifiers operate.  Plaintiffs seek information as to all integrity classifiers, even those irrelevant to the claims and defenses in this action; and information that is not reasonably available (such as the historical threshold values for all content actions, the date of creation, and the creator of integrity classifiers); or information that does not exist (such as "levels," official "plain language names," relative "weight" across classifiers).  While maintaining these objections, Meta is currently in the process of investigating the alphanumeric code names and the confidence intervals of the classifiers identified in its responses, and will supplement its responses if it identifies further information.

### 5.    Meta's R&Os to Plaintiffs' Rule 30(b)(1) Written Questions

**PI/SD Plaintiffs' Position:**

Meta served its R&Os to the PI/SD Plaintiffs' Rule 30(b)(1) written questions on Plaintiffs' 30(b)(6) Topics 3-6 on July 25, 2024. Meta's responses are largely deficient, including improperly asserting broad substantive objections and limitations.  Plaintiffs are drafting correspondence to Meta

that will identify and explain these deficiencies, and Plaintiffs will seek to meet and confer as soon as possible regarding same.

**Meta's Position:**

In response to Plaintiffs' service of hundreds of written deposition questions (some with a dozen or more subparts) that sought thousands of discrete pieces of information, Meta conducted a reasonable–indeed, expansive and highly burdensome–investigation and developed substantive answers to virtually all of Plaintiffs' questions.  Meta is glad to meet and confer about targeted issues and work constructively to resolve them, but Plaintiffs' vague gesture at deficiency is misplaced: Plaintiffs failed to follow the Court's instruction that the questions be "targeted to what you really need," May 23, 2024 DMC Tr. at 112:20–23, instead serving burdensome questions with multiple subparts often beyond the scope of Topics 3-6 that no witness could comprehensively answer (such as a request to describe "all current and historic actions" ever taken by all Meta employees related to well-being or safety).  Meta, by contrast, provided a substantial amount of information about issues of Meta's corporate structure, including the technical teams it is aware of that had responsibility for safety and well-being, the hundreds of employees on the 140 teams Plaintiffs themselves identified as relevant for the last decade,, details about the functions of dozens of specific teams, responses to dozens of questions about Meta's budgeting, information about the corporate entities subject to the deposition notice, and other information.

### 6.    Meta's Initial Disclosures to State AGs

The State AGs and Meta Defendants continue to meet and confer regarding the State AGs' RFPs, particularly the State AGs' RFP 2, which requests documents and communications relied upon by Meta in making its Initial Disclosures, and whether this RFP has received an adequate response.

### C.    Unripe Issues Between PI/SD Plaintiffs and TikTok

### 1.    Implementation of the Extraterritorial Order

**PI/SD Plaintiffs' Position:**

Within two days of Judge Kang's ruling that Plaintiffs are entitled to "technical and implementation documents" concerning Named Features on Toutiao and Douyin, age assurance on the French TikTok platform, and marketing documents concerning Musical.ly, Plaintiffs provided TikTok a

list of RFPs that should apply to foreign platforms, and the Parties are negotiating the scope of exterritorial application of these RFPs. The Parties have twice met and conferred, with TikTok noting that it intends to apply a narrow reading of "technical and implementation documents"; to date, however, it has not explained how it interprets those terms. On July 22, 2024, Plaintiffs proposed definitions and categories of "technical and implementation" documents for inclusion—a proposal that shows TikTok's statement that Plaintiffs seek "any conceivable document" is not accurate; they await a response from TikTok, which has not moved with dispatch but continues to claim it needs more time to investigate.

**TikTok Defendants' Position:**

Plaintiffs identified 19 document requests to which they want the TikTok Defendants to respond with information related to non-U.S. TikTok platforms, including many unrelated to "Named Features." Plaintiffs have since stretched the Court's ruling by demanding TikTok produce: (i) all marketing and advertising for all the non-U.S. platforms (not just marketing about "Named Features" on Musical.ly); (ii) documents unrelated to "Named Features," including documents regarding "user engagement," "addiction," and "warnings" on all non-U.S. platforms, (iii) documents regarding the TikTok platform in every country outside the United States (not limited to France), and (iv) reading the Court's language "technical and implementation" to encompass any conceivable document relating to the "Named Features" on non-U.S. platforms (including "emails about the implementation of named features," "post-implementation testing," "usage data," and more). Plaintiffs' broad reading contravenes the Court's ruling that Plaintiffs are not entitled to "wide ranging discovery that may tangentially touch on the features." Nonetheless, the TikTok Defendants have agreed to search for and produce documents responsive to the vast majority of Plaintiffs' requests, consistent with their responses and the Court's Order. The TikTok Defendants have also provided Plaintiffs with details on how they will search for responsive materials, and agreed to update Plaintiffs as the TikTok Defendants' investigation progresses.

### 2. Personnel File Productions for Deponents

**PI/SD Plaintiffs' Position:**

Plaintiffs have twice requested to meet and confer with the TikTok Defendants regarding any objection to producing targeted personnel materials for deponents, a process that has been routinely agreed to or ordered in similar MDLs, including the *Juul*, *National Prescription Opiates*, *3M Combat*

*Earplugs*, *CPAP*, *Invokana*, *Xarelto*, and *Pradaxa* MDLs. What's more, TikTok's suggestion that producing targeted personnel materials would somehow violate privacy rights ignores that there is a protective order in this case and that no blanket privilege exists. Plaintiffs are not purporting to depose all 50 of the TikTok Defendants' ESI custodians in this case, but instead asked for locations and translator needs and whether the witness was located outside the United States (and if so whether the TikTok Defendants intend to produce the witness for deposition), so Plaintiffs could make informed decisions about scheduling and which witnesses to depose and seek additional time for depositions where translators are required.

**TikTok Defendants' Position:**

Plaintiffs are seeking to prematurely manufacture a dispute about "personnel files" before the parties have had a single meet and confer and long before this issue needs to be decided. Plaintiffs first requested that the TikTok Defendants produce "personnel files" (defined to include detailed information about compensation, bonuses, performance reviews, and discipline records) for all deponents roughly two weeks ago as a document request accompanying placeholder deposition notices. At the same time Plaintiffs first requested this information be produced, they simultaneously demanded an H(2) conference between lead counsel, violating this Court's Standing Order. The parties have exchanged their preliminary positions on this issue and scheduled their first meet and confer set for August 6, 2024. While the TikTok Defendants look forward to a productive meet and confer with Plaintiffs, they object to Plaintiffs' request because it seeks highly sensitive, personal information that is not relevant to any claim or defense in these cases.

**3.      TikTok's Answers to Plaintiffs' Interrogatories Set 1**

Plaintiffs have asked TikTok to withdraw its objections and respond full to the discovery requests in RFP Set 15 and Rog Set 1 seeking information and documents concerning TikTok's using of ephemeral messaging and the deletion/recall of communications after custodians were placed on litigation hold. Plaintiffs have served targeted discovery requests to understand (1) the scope of evidence that may be unavailable as a result of this, (2) the extent to which destroyed messages may be recoverable, and (3) to understand the circumstances that lead to this issue. TikTok has promised to

respond by August 5, and a lead counsel meet and confer is anticipated for August 6, in the event the parties remain at an impasse.

**TikTok Defendants' Position**:

The TikTok Defendants have been cooperative in providing Plaintiffs discovery related to these requests, including presenting two 30(b)(6) witnesses whom Plaintiffs questioned on these topics. Plaintiffs are seeking yet still more discovery on this subject, which is not relevant to any claim, without any basis for doing so. Nevertheless, despite Plaintiffs' mischaracterizations the TikTok Defendants will continue to work cooperatively with Plaintiffs to attempt to resolve this dispute.

### 4.    Zoom Archive

**PI/SD Plaintiffs' Position:**

Plaintiffs proposed a narrowed set of search terms for TikTok to run across the Zoom Archive, culling the number of meetings from over 100,000 to 1,058. On July 30, 2024, TikTok produced a list of the 1,058 meetings that were responsive to search terms, and Plaintiffs are reviewing the list to identify the meetings that Plaintiffs believe should be produced.

**TikTok Defendants' Position:**

The TikTok Defendants have produced 123 non-privileged responsive Zoom meeting files produced in the multistate AG investigations to Plaintiffs and are currently reviewing an additional 396 Zoom meeting files (131 Zoom meetings) associated with the agreed-upon custodians. The TikTok Defendants further agreed to run Plaintiffs' proposed search terms across the available Zoom meeting index containing over 100,000 Zoom meetings and shared the search term results with Plaintiffs, including an index of the 1,058 Zoom meetings associated with the search term results. The TikTok Defendants have offered to collect and watch up to 50 additional Zoom meetings from the list of 1,058 for privilege and relevance, a more than reasonable number considering the TikTok Defendants' other agreements and the significant burden and cost required to collect, watch, and produce Zoom meeting files.

### 5.    Hyperlink Requests Nos. 8-165

**PI/SD Plaintiffs' Position:**

Plaintiffs identified 157 documents which contained highly relevant hyperlinks. The TikTok

Defendants responded, untimely, that they generally object to the total number of hyperlinked documents they would need to produce, but did not identify with particularity the hyperlink requests they consider to be burdensome. After meeting and conferring, TikTok agreed to identify the specific requests, and Plaintiffs agreed to review TikTok's specific objections to see if certain hyperlink requests could be narrowed.

**TikTok Defendants' Position:**

On June 8, 2024, Plaintiffs served the TikTok Defendants with a request to collect hyperlinks from 157 produced documents. Following extensive investigations into Plaintiffs' request, the TikTok Defendants determined that complying with Plaintiffs' request would require the manual collection of more than 3,100 hyperlinked documents. The TikTok Defendants have notified Plaintiffs of their objections and are working on identifying for Plaintiffs the particular hyperlinks that would be unreasonably burdensome to collect. The TikTok Defendants trust that the parties can resolve the issue.

### 6.   RFPs

#### a)   RFP 178 (Crisis Communications re Youth Safety)

TikTok has offered to search for and produce non-privileged communications regarding other lawsuits, investigations, and media inquiries responsive to this request from a limited number of previously agreed-to custodians using the parties' agreed-to search terms. The TikTok Defendants agreed to identify custodians as a starting place. Plaintiffs are awaiting TikTok's identification of the custodians it proposes to search for this information to ensure the information will be properly captured by existing search terms. The Parties are continuing to meet and confer.

#### b)   RFP 186 (Compensation)

On August 1, the TikTok Defendants offered to conduct a reasonable search for and produce documents sufficient to show compensation policies applicable to employees who work in Trust & Safety for the TikTok platform. Plaintiffs are considering TikTok's position.

#### c)   RFP 199 (Investor Communications)

**PI/SD Plaintiffs' Position:**

Request No. 199 seeks "Documents constituting or reflecting pitch decks, media kits, presentations, slideshows, or other similar presentations made to current or prospective investors in Your Platform, including Documents outlining the benefits and features of advertising on Your platform." As PI/SD Plaintiffs have articulated to TikTok, these documents are relevant to TikTok's knowledge and to show statements made to investors or potential investors regarding its platform, including about its features and advertising on its platform, and advertising targeting. Both Snap and Meta have agreed to search for and produce documents in response to these Requests, so Plaintiffs are at a loss as to why TikTok still refuses to do the same.

**TikTok Defendants' Position:**

This request seeks all presentations the TikTok Defendants (privately held companies) have given to current or potential investors, regardless of subject matter or relevance to the TikTok platform and these cases. Plaintiffs have not articulated why such highly confidential and sensitive information is relevant to any claims in this matter, nor why they cannot obtain the same information from other sources that do not include highly sensitive investor information–for example, documents to advertisers regarding the "benefits or features of advertising" on the TikTok platform that plaintiffs have also demanded. Regardless, the TikTok Defendants have offered Plaintiffs a compromise on this request and are waiting for Plaintiffs' response.

  d)  **PI/SD Plaintiffs' RFP 282, 295-296 (Investigations related to health and safety of children or teens)**

**PI/SD Plaintiffs' Position:**

These requests seek documents or information issued by any domestic or foreign governmental authority connected to whether TikTok's platform or business practices present risks to the health and safety of children or teens, as well as TikTok's responses to those requests. Plaintiffs offered to narrow these requests to investigations related to the allegedly defective features of TikTok at issue in this litigation, minor safety or wellbeing, TikTok's targeting of youth, or TikTok's collection of youth data. Despite this compromise, TikTok has refused to produce any documents beyond requests for information served by the State Attorneys General in connection with investigations directly related to

this litigation. Plaintiffs believe the full scope of investigatory documents is relevant to this litigation, and TikTok has not explained its refusal to produce such documents; the importance and relevance of these requests is underscored by the additional federal investigations that only recently became public. See also U.S. v. ByteDance LTD., et al., Case No. 2:24-cv-06535, ECF No. 1 (C.D. Cal.) (redacted complaint for permanent injunction, civil penalty judgment, and other relief filed on August 2, 2024).

**TikTok Defendants' Position:**

Consistent with Judge Gonzalez-Rogers' December 29, 2022 Order "Authorizing Narrow Production of Materials Previously Produced in Connection with State Investigations" [Dkt. 125], the TikTok Defendants agreed to produce, and have already produced, documents and responses to state attorney generals' investigative demands.  Plaintiffs' requests for "all documents" provided in response to other unspecified investigations is not reasonably particular, overbroad, and conflicts with this Court's June 20, 2024 Order (Dkt. 953) to the extent it seeks information on "foreign" investigations into platforms outside the United States.  The TikTok Defendants are already searching for and producing extensive discovery in response to Plaintiffs' over 300 other document requests, and Plaintiffs also have not provided any reason why, to the extent relevant to these cases, the same information would not already be included in the TikTok Defendants' responses to those requests.

D.    **Unripe Issues Between PI/SD Plaintiffs and Snap: RFP Set 9 (RFPs 140-157) and RFP Set 10 (RFPs 158-164, 167-174)**

The Parties continue to meet and confer regarding the scope of RFPs served as part of the PI/SD Plaintiffs' RFP Sets 9 and 10. Although these Sets remain unresolved, Plaintiffs are optimistic that the Parties will reach resolution without the need for Court intervention.

E.    **Unripe Issues Between PI/SD Plaintiffs and YouTube**

The Parties continue to meet and confer on YouTube's responses to PI/SD Plaintiffs' RFPs [Sets 1-9].  The Parties are meeting and conferring over YouTube's search methodology for production of documents, which includes the application of default start dates to custodial file collection, the application of search terms versus targeted collection for certain RFPs, and any other level of review that YouTube intends to apply.

Respectfully submitted,

DATED: August 2, 2024                By:  */s/ Lexi J. Hazam*
                                     LEXI J. HAZAM
                                     **LIEFF CABRASER HEIMANN &**
                                     **BERNSTEIN, LLP**
                                     275 BATTERY STREET, 29TH FLOOR
                                     SAN FRANCISCO, CA 94111-3339
                                     Telephone: 415-956-1000
                                     lhazam@lchb.com

                                     PREVIN WARREN
                                     **MOTLEY RICE LLC**
                                     401 9th Street NW Suite 630
                                     Washington DC 20004
                                     Telephone: 202-386-9610
                                     pwarren@motleyrice.com

                                     Co-Lead Counsel

                                     CHRISTOPHER A. SEEGER
                                     **SEEGER WEISS, LLP**
                                     55 CHALLENGER ROAD, 6TH FLOOR
                                     RIDGEFIELD PARK, NJ 07660
                                     Telephone: 973-639-9100
                                     cseeger@seegerweiss.com

                                     Counsel to Co-Lead Counsel

                                     JENNIE LEE ANDERSON
                                     **ANDRUS ANDERSON, LLP**
                                     155 MONTGOMERY STREET, SUITE 900
                                     SAN FRANCISCO, CA 94104
                                     Telephone: 415-986-1400
                                     jennie@andrusanderson.com

                                     Liaison Counsel

                                     EMILY C. JEFFCOTT
                                     **MORGAN & MORGAN**
                                     633 WEST FIFTH STREET, SUITE 2652
                                     LOS ANGELES, CA 90071
                                     Telephone: 213-787-8590
                                     ejeffcott@forthepeople.com

                                     JOSEPH VANZANDT
                                     **BEASLEY ALLEN**
                                     234 COMMERCE STREET

MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106

41

Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU

42

1

**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**

2

17 EAST MAIN STREET, SUITE 200

3

PENSACOLA, FL 32502
Telephone: 510-698-9566

4

mliu@awkolaw.com

5

JAMES MARSH

6

**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR

7

NEW YORK, NY 10001-2170
Telephone: 212-372-3030

8

jamesmarsh@marshlaw.com

9

JOSEPH E. MELTER

10

**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD

11

RADNOR, PA 19087
Telephone: 610-667-7706

12

jmeltzer@ktmc.com

13

HILLARY NAPPI

14

**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor

15

New York, New York 10016
Telephone: 212-213-8311

16

hnappi@hrsclaw.com

17

EMMIE PAULOS

18

**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600

19

PENSACOLA, FL 32502
Telephone: 850-435-7107

20

epaulos@levinlaw.com

21

RUTH THI RIZKALLA

22

**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500

23

MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915

24

rrizkalla@carlsonattorneys.com

25

ROLAND TELLIS

26

DAVID FERNANDES
**BARON & BUDD, P.C.**

27

15910 Ventura Boulevard, Suite 1600
Encino, CA 91436

28

Telephone: 818-839-2333

43

rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov


*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*

46

Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey*
*Division of Consumer Affairs*

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSON LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

49

Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

50

1

2    *Attorneys for Defendants YouTube, LLC and Google LLC*

3

4    MORGAN, LEWIS & BOCKIUS LLP
     By: */s/ Yardena R. Zwang-Weissman*

5    Yardena R. Zwang-Weissman (SBN 247111)
     300 South Grand Avenue, 22nd Floor

6    Los Angeles, CA 90071-3132
     Tel.: 213.612.7238

7    Email: yardena.zwang-weissman@morganlewis.com

8    Brian Ercole (*pro hac vice*)
     600 Brickell Avenue, Suite 1600

9    Miami, FL 33131-3075
     Tel.: 305.415.3416

10   Email: brian.ercole@morganlewis.com

11

12   Stephanie Schuster (*pro hac vice*)
     1111 Pennsylvania Avenue NW

13   NW Washington, DC 20004-2541
     Tel.: 202.373.6595

14   Email: stephanie.schuster@morganlewis.com

15   *Attorneys for Defendants YouTube, LLC and Google LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STATUS REPORT ON DISCOVERY FOR AUGUST 8, 2024 DISCOVERY MANAGEMENT CONFERENCE
4:22-md-03047-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>ATTESTATION</u>**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 2, 2024

By: /s/ *Ashley M. Simonsen*