UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING PLAINTIFFS' REQUESTS FOR PRODUCTION 286 AND 287 TO META DEFENDANTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, Plaintiffs and the Meta Defendants ("Meta") respectfully submit this letter brief regarding a dispute concerning Plaintiffs' Requests for Production 286 and 287 to Meta.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on July 29, 2024, via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: August 7, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF   CABRASER   HEIMANN   & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

i

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,**

**PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266

Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700

fu@dicellolevitt.com

*Attorneys for PI/SD Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

  */s/ Bianca E. Miyata*
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773,
*pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

  */s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)

Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General

State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division of Consumer Affairs*


COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP

One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**Plaintiffs' Position**

In RFPs 286 and 287, Plaintiffs ask Meta to produce "all subpoenas, civil investigative demands, or other requests for Documents or information issued by any foreign governmental authority, the United States Congress or any of its members, the White House, the United States Surgeon General, any federal agency or regulator, or any state agency or regulator in connection with any formal or informal investigation related to whether Your Platform or business practices present risks to the health and safety of Children or Teens," as well as documents Meta produced in response to those demands. Such documents are clearly relevant to Plaintiffs' claims, which allege that Meta's social media platforms are harmful to minor health and safety. Plaintiffs ask the Court to require Meta to comply with their discovery obligations and produce a full set of documents in response to these RFPs.

I. **Meta must produce documents concerning government investigations into child safety, as sought by RFPs 286 and 287.**

   A. **There is no exception to Rule 26 for investigatory documents.**

The scope of relevance in discovery "is broadly defined to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Humanmade v. SFMade*, 2024 WL 3378326, at *1 (N.D. Cal. July 10, 2024) (Kang, J.) (quoting *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)). Applying this standard, courts frequently require parties to produce relevant materials they exchanged with the government. *See, e.g.*, *Garner v. Amazon.com, Inc.*, 2023 WL 6038011, at *2 (W.D. Wash. Sept. 15, 2023) (granting motion to compel "documents and communications exchanged in response to government investigations" involving "conduct that is clearly at issue here"); *Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *5–9 (N.D. Cal. May 31, 2023) (requiring Google to comply with RFPs that sought "records that Google has produced in the prior ten years to governmental entities that have investigated or sued the firm"); *Munoz v. PHH Corp.*, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013) (ordering party to produce documents it produced to the CBPB "targeting the very same practices"); *see also In re Air Passenger Comput. Reservation Sys. Antitrust Litig.*, 116 F.R.D. 390, 391–93 (C.D. Ca. 1986) (civil investigative demands and transcripts of testimony are discoverable). Meta does not provide any case holding otherwise, nor could it. *Cf. infra* note 3 (admitting courts require re-production of relevant investigation documents).

   B. **The documents sought by RFPs 286 and 287 are relevant and proportional.**

RFPs 286 and 287 are tailored to request relevant investigatory documents. Plaintiffs allege facts relating to Meta's addictive design and harmful effects (ECF No. 494 ¶¶ 262–363), the ways Meta leverages the data it collects from minor users (*id.* ¶¶ 192–208), and Meta's insufficient approach to child exploitation on its platforms (*id.* ¶¶ 391B–430). Investigations on these topics, and other facts alleged, fit within RFPs 286 and 287 and thus are discoverable.

Meta complains it already produced some documents responsive to these RFPs, pointing to Discovery Order No. 1, which was issued over 18 months ago as a way to give Plaintiffs limited discovery for drafting the complaint. ECF 125. But it cannot be, as Meta now claims, that this "narrow set of initial discovery" (ECF 125 at 4) was the last word on whether Plaintiffs may seek investigatory materials. Contrary to Meta's representation, Plaintiffs have never indicated

that they are only seeking the "delta" between Meta's limited initial January 2023 production and all documents Meta provided to the Multistate AGs. Although Meta's productions to the Multistate AGs in their pre-suit investigation may have encompassed documents re-produced from a limited set of certain government investigations, RFPs 286 and 287 seek a broader set of materials from federal and foreign governmental authorities investigating the health and safety risks of Meta's Platforms to minors. While Plaintiffs prioritized the documents from the Multistate AG investigation because the depositions noticed by the Tennessee AG were fast approaching, and Plaintiffs needed to ensure access to the same information. Plaintiffs reserved their right to seek other investigatory documents, which they promptly did.

Regardless, Meta does not dispute its participation in other relevant investigations. For example, the European Commission has investigated Meta's compliance with, among other things, its "obligations on assessment and mitigation of risks caused by the design of Facebook's and Instagram's online interfaces, which may exploit the weaknesses and inexperience of minors and cause addictive behaviour, and/or reinforce so-called 'rabbit hole' effect." Ireland's Data Protection Commission fined Meta €405 million for mishandling data relating to minor users following a multi-year investigation into these practices.[1] And the U.S. Senate held a hearing concerning "how Instagram affects teenagers, how it handles children onto the platform, and other consumer protection matters related to Facebook" at which former Meta employee Frances Haugen testified. To be clear, Plaintiffs do not set forth these investigations as an exhaustive list of relevant actions.[2] Rather, Plaintiffs submit these as examples to illustrate Meta's participation in investigations seeking facts at issue. Meta briefly and vaguely says that responsive documents are unlikely to contain "uniquely or materially relevant information." But Meta does not seriously dispute that these investigations are directly relevant to this case, and the information responsive to these RFPs uniquely bears upon Meta's knowledge of and response to the serious issues with minor health and safety Plaintiffs allege in this case.

Finally, the Court should reject Meta's conclusory argument that it would be "highly burdensome" for it to respond to these RFPs. Meta's production of documents would come via running agreed-upon search terms on agreed custodians, a process that would impose little-to-no burden, as well as pulling investigatory materials Meta maintains in discrete sources on a "go get" basis and producing those not otherwise produced. *See Rumble*, 2023 WL 3751797, at *8.

## II. Meta's confidentiality concerns are mitigated by the Protective Order.

Meta also objects on the ground that information responsive to these RFPs may be confidential. Even if these documents are in some sense confidential, this does not protect them from discovery. *See, e.g.*, R&R at 10–13, *Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, No. 1:04-cv-20850 (S.D. Fla. July 20, 2005) (ECF 168) (rejecting argument that statutory privilege allowed private party to withhold civil investigative demands from discovery), *adopted*, *Gulf Grp.* (S.D. Fla. Sept. 6, 2005) (ECF 173); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 929 F. Supp. 723, 725–27 (S.D.N.Y. 1996) (rejecting confidentiality arguments and granting motion to

---

[1] The Ireland investigation and this case share a common nucleus of issues regarding Meta's mishandling of minor data.

[2] Meta has superior information about the investigations in which it has participated. Plaintiffs have asked Meta for a list of all such investigations in order to inform discussions on this topic, but Meta has thus far declined to provide this information.

compel governmental discovery requests and responses).

The cases Meta cites do not change this outcome. In two, courts denied discovery because the investigations were of "speculative relevance." *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014); *see Campbell v. Facebook*, 2015 WL 4463809, at *3 (N.D. Cal. July 21, 2015) (investigation "cited by Plaintiffs" did not concern product features at issue). RFPs 286 and 287 are tailored to seek only relevant information. In three others, governmental entities asked the court to limit discovery. *In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 2010 WL 3420517, at *4 (E.D..N.Y. Aug. 27, 2010); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 & n.2 (N.D. Cal. 2007); *In re Worldcom, Inc. Sec. Litig.*, 2003 WL 22953645, at *6–7 (S.D.N.Y. Dec. 16, 2003). No government has made such a request here. Finally, *In re National Prescription Opiate Litigation* concerned a limited request that the defendants be required "to identify the existence of any ongoing opioid-related federal investigation." Order at 2, No. 1:17-MD-2804 (N.D. Ohio Apr. 30, 2020) (ECF 3286). At the same time, however, the Special Master rejected the defendants' request to reconsider a previous stipulation requiring them to produce "discovery from all related state and federal cases, investigations, and so on." *Id.* at 4

In any event, Meta's confidentiality concerns are mitigated by the protective order (ECF 586). *See, e.g.*, *Arrow Elecs., Inc. v. Aetna Cas. & Sur.*, 2018 WL 4792014, at *2 (C.D. Cal. Apr. 12, 2018) (stating that a protective order "mitigates the disclosure" of confidential information).

**Meta's Position**

*Introduction*.  Plaintiffs have served 500 RFPs on Meta—over 1,000 if bellwether-specific RFPs are included.  The documents Meta is producing in response to these voluminous requests span a 12+-year Relevant Time Period ("RTP") and include documents associated with 122 agreed-to custodians hitting on broad search terms such as "child," "teen," and "youth."  Separately, Meta has reproduced over 50,000 documents that it produced to the Multistate AGs in their pre-suit investigations.  And Meta has now offered to provide *any* documents it produced pre-suit to *any* suing AG (both in this MDL and elsewhere)—including in response to the AGs' CID requests for documents produced to *other* regulators in connection with inquiries related to the same subject matter.  Yet Plaintiffs are now pushing for more, seeking any documents produced in ***any government investigation in the world*** touching on youth health and the underlying CIDs, even though: (a) many relevant documents produced in any such investigations are likely being produced through the broad productions underway; (b) any such investigations would be broader, pulling in irrelevant documents; and (c) complying would require Meta to disclose confidential non-public inquiries from regulators and, in some cases,  violate non-disclosure orders and statutory non-disclosure obligations.  The Court should reject these improper requests.

*Background*.  At the outset of this MDL, Plaintiffs broadly sought documents from other related matters, including confidential investigations.  After Judge Gonzalez Rogers expressed doubt that they "would be entitled to that," 11/9/22 CMC Tr. 124:24-25, Plaintiffs narrowed their request to documents produced by Meta in connection with pre-suit AG CIDs.  The Court examined the requests in each confidential CID for relevance and, after an "exacting" in-camera review, ordered Meta to reproduce only a **subset** of the previously produced materials (ECF 125 at 2) and to produce **redacted** CIDs (*see* 12/14/2022 CMC Tr. 50:17-24).  Meta also (1) agreed to produce documents from the Molly Russell U.K. coronial inquest, with Plaintiffs agreeing Meta

3

need not produce Ms. Russell's personal Instagram account data; (2) agreed that Motley Rice could share certain (relevant) materials taken by former employee Frances Haugen and given to Motley Rice with the rest of Plaintiffs' counsel (the "Shared Haugen Documents"); and (3) confirmed that no non-public documents were produced in connection with four legislative sessions identified by Plaintiffs—including the Senate hearing identified by Plaintiffs above. On January 17, 2023, Meta produced more than 44,500 documents, and supplemented those productions in December 2023, bringing the matter of investigations-related discovery to a close.

A year later, on April 9, Plaintiffs reopened the matter by serving RFPs 286-287, demanding copies of *all* requests from investigations by *any* federal, state, or foreign government authority "related to whether [Meta's] Platform or business practices present risks to the health and safety of Children or Teens," and any documents produced in connection with any such investigations. Meta objected to the requests on May 9 as overbroad, unduly burdensome, not relevant, and potentially violative of the confidentiality of government investigations. In follow-on meet-and-confers, Plaintiffs focused entirely on obtaining the "delta" between (a) Meta's January 2023 reproduction of the subset of AG materials the Court had ordered based on its in camera review of the AG CIDs and (b) the universe of *all* documents Meta had produced pre-suit to the AGs in response to those CIDs. Attempting to reach a compromise, Meta agreed to reproduce the subset of documents in the "delta" identified by the AGs as relevant, while excluding documents Plaintiffs conceded were irrelevant. But *the very next day*, Plaintiffs reverted to demanding all documents responsive to RFPs 286-287, including a European Commission ("EC") investigation that commenced in May 2024, *after* the end of the Court-ordered RTP. *See* 5/23/24 Hr'g Tr. 91:14-18; 6/20/24 DMC Tr. 64:20-65:3. Meta again offered a reasonable compromise, agreeing to provide all documents produced pre-suit to *any* of the 46 AGs now suing Meta (*i.e.*, including those suing outside the Multistate), including *all* documents in the "delta." Although Plaintiffs rejected this compromise, Meta stands ready to make such production on a reasonable timeline.

*Argument*. Plaintiffs' requests are disproportionate to the needs of the case, are unnecessarily broad and duplicative, and implicate investigative confidentiality concerns. *First*, in addition to the AG, Molly Russell, and Haugen materials Plaintiffs obtained in January 2023, Meta has already produced over 1.8 million pages of documents in response to Plaintiffs' 500+ RFPs, with productions continuing. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 69066, at *3-6 (N.D. Cal. Apr. 24, 2018) (denying request for investigation documents where defendant had already begun responding to specific requests). Meta is also now prepared to reproduce *all* documents produced pre-suit to *any* suing AG, including in response to the AGs' CID requests for documents produced to other regulators. Plaintiffs have described the AGs' investigations as "directly related and relevant to this MDL," 12/14/22 CMC Tr. 46:14-16—meaning that any documents those AGs obtained from other investigations are likely to be most relevant here. *See Capital Ventures Int'l v. J.P. Morgan Mortg. Acq. Corp.*, 2014 WL 1431124, at *2-3 (D. Mass. Apr. 14, 2014) (limiting investigative reproductions). Plaintiffs certainly do not need the CIDs, which have no probative value.[3]

---

[3] Plaintiffs' cases are distinguishable. Many involved orders to re-produce documents from *public* investigations (*Garner*, *Rumble*, *Munoz*), with the re-productions limited to *relevant* documents (*Garner*, *Rumble*), unless a *specifically-identified* investigation raised issues identical

*Second*, any marginal benefit to Plaintiffs from additional productions would be far outweighed by the burdens imposed on Meta.  *See* Fed. R. Civ. P. 26(b)(1); *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("duplicate searches"—"one for responsive documents in [defendant's] custody and control and one for all documents . . . previously produced"—"is definitionally unduly burdensome").  Responding in full to these RFPs would require Meta to identify all investigatory requests served on Meta across the globe relating to the broad topic of alleged risks "to the health and safety of Children or Teens"; identify and remove all irrelevant documents; and manually redact any remaining, relevant documents that implicate user privacy interests and, for ex-U.S. investigations, any foreign laws, such as the EU's GDPR.  *See Capital Ventures Int'l*, 2014 WL 1431124, at *2-3.

*Third*, responding in full to these RFPs could undermine the confidentiality of government investigations, including those abroad.  *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 17-2804-DAP (N.D. Ohio Apr. 30, 2020) (Dkt. 3286) (requiring disclosure of ongoing federal investigations "may . . . jeopardize the investigation or change its arc to ill effect"); *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 22953645, at *7 (S.D.N.Y. Dec. 16, 2003) ("Defendants have not pointed to any legal authority that would give them a right of access to ongoing government investigations."); *Capital Ventures Int'l*, 2014 WL 1431124, at *3 (recognizing that "[c]ommunications with regulators are . . . subject to numerous confidentiality and privilege issues").  Notably, in response to Meta's requests, the AGs repeatedly objected 38 times "to the extent [Meta's RFPs] call[] for documents received from other enforcement agencies … that are protected by any confidentiality obligation owed to a third party, covered by a confidentiality agreement or privilege, or otherwise protected from disclosure"; and the AGs have refused to produce documents from any investigations involving similar subject matter.  Confidentiality concerns are especially acute in the context of foreign investigations (such as the EC and Ireland inquiries Plaintiffs reference[4]) where, under principles of comity, courts recognize that foreign authorities should be able to conduct confidential investigations without disruption through U.S. civil discovery.  *See, e.g.*, *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081-84 (N.D. Cal. 2007) (denying requests for foreign investigation documents); *Campbell v. Facebook*, 2015 WL 4463809, at *2-5 (N.D. Cal. July 21, 2015) (same).  The Protective Order does not alleviate these concerns—and none of Plaintiffs' cases suggests otherwise.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2010 WL 3420517, at *10 (E.D.N.Y. Aug. 27, 2010) (a PO "would not sufficiently protect the EU's interest in keeping [confidential] the investigation").  Plaintiffs have shown no need to intrude on these confidentiality protections given they have other means of seeking the information they need to prosecute their claims.

---

to those raised in the litigation (*Munoz*)—a common occurrence in antitrust cases with parallel government investigations (*Air Passenger Comput. Reservation Systems*; *Nasdaq Market-Markers*).

[4] The Ireland inquiry does not even fall within the scope of RFPs 286-287.  That inquiry concerned compliance by Meta Platforms Ireland Limited (which is not a Defendant here) with the EU's GDPR (which does not apply to Meta's processing of U.S. users' data).

5

## **ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 7, 2024

By: /s/ *Lexi J. Hazam*