UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to: *All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION OF FURTHER INFORMATION IN RESPONSE TO REQUESTS FOR PRODUCTION NOS. 68-70 AND 290 TO META DEFENDANTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and the Meta Defendants (hereinafter the "Parties") respectfully submit this letter brief regarding Plaintiffs' request for production of further information in response to Plaintiffs' Requests for Production Nos. 68-70 and 290. The Parties have also attached an excerpted copy of the specific Requests and Meta's Responses and Objections (Attachment A) in an effort to help orient the Court on the Parties' dispute.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, correspondence, and telephone before filing this brief, with lead trial counsel in attendance, including by video conference on July 29, 2024, and on August 16, 2024. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: September 10, 2024

Respectfully submitted,

*/s/ Nelson Drake*_____
NELSON L. DRAKE
Motley Rice, LLC
401 9th St, Suite 630
Washington, DC 20004
Phone: (202) 849-4966
Email: ndrake@motleyrice.com

PREVIN WARREN
Motley Rice, LLC
401 9th St, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
Email: pwarren@motleyrice.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE
900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET

MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW
CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.

iv

**HENDY JOHNSON VAUGHN EMERY
PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER &
CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE
600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA

**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER &
CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**COVINGTON & BURLING LLP**

By: */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

vi

Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
        pschmidt@cov.com

Serena Saffarini, SBN 335943
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2533
Telephone: +1 (415) 591 6032
Email: ssaffarini@cov.com

*Attorney for Defendants Meta Platforms,
Inc. f/k/a Facebook, Inc.; Facebook
Holdings, LLC; Facebook Operations,
LLC; Facebook Payments, Inc.; Facebook
Technologies, LLC; Instagram, LLC;
Siculus, Inc.; and Mark Elliot Zuckerberg*

**ATTESTATION**

I, Nelson Drake, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document have been obtained from each signatory hereto.

Dated: September 10, 2024

_/s/ Nelson Drake_
Nelson Drake

**Plaintiffs' Position:** Plaintiffs served Requests for Production Nos. 68-70 on December 23, 2023 and Request No. 290 on April 9, 2024. These RFPs seek basic information from Meta—organizational charts and/or corporate directories that reflect relevant persons, teams, or other organizational structures within Meta responsible for (1) the development, design, and implementation of the features named in Plaintiffs' Master Complaint and (2) protecting the safety of users on Meta's platforms.

Despite having served the initial requests approximately nine months ago, and despite having served a Rule 31 deposition on Meta, Plaintiffs have had minimal success in obtaining this foundational information. Although Meta has conceded it can readily export data, including pictographic representations, from its Workday Enterprise System (hereinafter "Workday") to provide core information about its organizational units, Meta refuses to provide it in response to Plaintiffs' RFPs. In an effort to respond to Meta's objections concerning relevance and overbreadth, Plaintiffs have narrowed their requests for this information to concern specific teams and "allocation areas"[1] within the company. Meta has still refused to produce this information, which is essential to answering basic questions about how Meta's business is organized.

***Plaintiffs' request for pictographic representations of Meta's most recent in time organizational structure is highly relevant and not disproportionate to the needs of the case.*** On August 7, Meta disclosed, for the first time, that Workday was capable of generating a pictographic representation of Meta's most recent in time organizational structure. This was surprising given Meta's past insistence that Meta "does not maintain organizational charts or directories of the types [Plaintiffs] believe to be 'standard practice for human resource department [sic] or individual teams to maintain." Upon learning of this functionality, Plaintiffs formally requested that Meta produce such documents as responsive to Request Nos. 68-70 and 290.

Meta argues that Plaintiffs' requests are overbroad because they cover "employment information for thousands of additional individuals." But Meta's characterization is inaccurate. Plaintiffs have limited their request for a pictorial representation of Meta's organization to a subset of allocation areas, such as US Policy, Central Applied Science, and Instagram Safety Foundations Leadership, which are squarely relevant to Plaintiffs' claims. Additionally, many of these teams were identified by Meta itself as relevant. For example, the 335 teams subject to Plaintiffs request were identified in Meta's response to Plaintiffs' deposition by written questions ("DWQ"), No. 68, which, by Meta's own admission, are "technical organizational units that share responsibility for issues related to user safety, security, integrity, and well-being."

Meta also argues that these representations would "amount to the creation of new documents." However, courts "regularly require parties to produce reports from dynamic databases." *Apple Inc. v. Samsung Electronics Co. Ltd.*, 2013 WL 4426512 at *3 (N.D. Cal. Aug. 14, 2013). Plaintiffs further note that the visual organizational charts they seek are, by virtue of what is apparently available to Meta, limited to Meta's current organizational structure. This should further limit the number of documents at issue in the requests.

---

[1] According to Meta an allocation area is defined as "[a] collection of team groups structured around a top-level product, market, or long-term workstreams."

*Plaintiffs' request for additional exports from Workday is highly relevant and not disproportionate to the needs of the case.* As noted above, Meta represented during the meet and confer process that it "does not maintain organizational charts or directories of the types you believe to be 'standard practice for human resources department [sic] or individual teams to maintain.'" Not only did this turn out to be incorrect with respect to organizational charts, it also turned out to be incorrect with respect to directories.

Meta objects to the production of additional exports because "it would likely implicate thousands of individuals" over the course of the Relevant Time Period. However, this is not only unsurprising given the size of Meta and its subsidiaries, but also precisely why Plaintiffs require the exports. In the last five years alone, Meta has undergone serial personnel and organizational changes, experienced serial layoffs, and internal reorganizations in which employees (including Meta's custodians) have changed teams, managers, allocation areas, and even companies. For example, of the 140 teams that Meta provided directories for, 105 are currently "inactive" and an additional 22 were renamed from 2015 to 2024. In addition, despite claiming that Plaintiffs have "no proportionate need" to obtain exports for the 335 teams that "share responsibility for issues related to user safety, security, integrity, and well-being as of December 31, 2023," only 2 out of the 335 are contained within the custodial lines and employee directories Meta has produced thus far.

Likewise, 10 of the 24 allocation areas Plaintiffs identified, such as Trust and Safety, Central Integrity XFN, Protect and Care, and Integrity Investigations & Intelligence, are also nominally responsible for safety on its Platforms. In addition, another 9 of the 24 allocation areas, such as Instagram Creators & Reels, News Feed/Interfaces, and Core Growth, are responsible for Named Features, user engagement, or growth on Meta's platforms. Despite being clearly relevant to Plaintiffs case, Meta has not produced a single employee directory or custodial reporting line that covers any of these 19 allocation areas.

*Plaintiffs' request for all native fields within Workday is not unduly burdensome.* After discovering the existence of spreadsheets containing exports from Workday, Plaintiffs requested that Meta provide a comprehensive list of the data fields available on that interface, so that they could ascertain whether there were any additional relevant fields that Meta had not produced. This was reasonable given the discrepancy between the custodial reporting lines Meta had already produced and the Workday exports Plaintiffs identified in subsequent productions.

In response, Meta has maintained that it has "provided [Plaintiffs] with *all* of the fields that might be relevant to the case." However, Plaintiffs have already identified additional relevant workday fields that were not included in either the custodial reporting lines or Meta's response to DWQ No. 222. For instance, Meta has admitted that Workday contains a field for "pillars" that has been maintained since 2013. Plaintiffs have also identified, and Meta has agreed, that additional fields such as Cost Center and Talent Profile, are also relevant. Plaintiffs have even provided Meta with Workday exports generated by Meta's custodians that included fields related to "Planned Location Change," "tags," and "project" which appear to reflect the name of newly formed organizational units or employee-specific areas of expertise. None of these fields have been produced in Meta's custodial reporting lines or directories produced to date.

Given Meta's failure to include these fields initially, and the apparent existence of "tens of thousands of fields," it is not unreasonable for Plaintiffs to request an accounting of the Workday fields so that Plaintiffs can ascertain whether there are additional fields that should be disclosed.

***Meta has not responded to requests that would enable Plaintiffs to more narrowly tailor their requests.*** After Meta erroneously represented that it did not maintain documents responsive to Requests 68-70 and 290, Meta has taken the position that additional information would either be "unhelpful," duplicative, or irrelevant. In addition, despite complaining that Plaintiffs "have not attempted to craft follow-on targeted requests," Meta has thwarted such efforts by refusing to supply predicate information. For instance, Plaintiffs have repeatedly asked Meta to provide a "list of teams from a subset of the supplemental allocation areas identified by Plaintiffs," the extent of Workday's capabilities, and a list of additional "native data fields." Meta did not respond to any of these requests.

It strains credulity that Meta can simultaneously construe Plaintiffs' requests as overbroad while simultaneously withholding the very information that would enable Plaintiffs to narrow them further. Meta's proposed compromise would essentially require Plaintiffs to rely on individuals and teams they were able to identify before Meta had made any meaningful productions in this case. Therefore, Plaintiffs request that the Court order Meta to produce (1) pictographic representations for the 140 teams Plaintiffs identified in its response to DWQ Exhibit 11, 335 teams identified in Meta's response to DWQ 68, and the 24 allocation areas Plaintiffs identified on August 7; (2) a native export from Workday that reflects *all* of Workday's native fields for those same organizational units; and (3) reproductions of the custodial reporting lines and directories produced to date that have been updated to reflect *all* of Workday's native fields in response to Requests No. 68-70 and 290.

## Meta's Position

Meta already has provided, for nearly 5,000 Meta employees and contingent workers, detailed fields of employment data in response to Plaintiffs' RFPs 68-70 and 290 seeking organizational charts and directories "sufficient to identify" business units and individuals with responsibilities involving trust and safety or the Named Features. Plaintiffs' requests for *more* data fields for the 5,000 individuals already identified, and information for an *additional* 4,000-5,000 employees (plus graphical representations of all of this information), is of marginal if any relevance, disproportionate to the needs of the case, and should be denied. *See* Fed. R. Civ. P. 26(b)(1).

Specifically, the additional voluminous information Plaintiffs now seek would impose significant burdens on Meta to compile, despite the facts that: (a) the details already provided far exceed the scope of typical org charts/corporate directories *and* the scope of what was requested in Plaintiffs' RFPs; (b) it also far exceeds what Plaintiffs reasonably will need to prepare for the 39 fact depositions noticed to date; (c) Plaintiffs have rejected Defendants' suggestion that they craft follow-on targeted requests for any individuals or teams for whom they perceive a particular need for more information; and (d) the graphical representations of this information Plaintiffs now demand would require Meta to manually *create* burdensome, unwieldy, and difficult-to-understand documents that they have no obligation to create. The Court should reject Plaintiffs' improper, burdensome, no-end-in-sight follow-on requests under these RFPs.

**Background**.  During the Relevant Time Period, Meta did not regularly create and maintain historically comprehensive org charts in schematic form, nor regularly print and circulate an organizational directory.  However, Meta did and does use a third party enterprise management tool which can be queried to provide certain detailed reporting-line and team information.

Beginning on April 15, 2024, Meta produced reporting chain spreadsheets for each of the 122 agreed-to custodians and their direct reports.[2]  These spreadsheets were generated as of January 1 for each year over a 10-year time period and included the following fields: Name, Hire Date, Termination Date, Job Title, Job Profile, Location, Manager, a field listing all individuals in the reporting chain above that individual, Company Group, Allocation Area, Team Group, Team, and Department.  By means of this production, Meta produced detailed data about 1,514 unique individuals (204 individuals provided for 1/1/2015, 247 for 2016, 304 for 2017, 389 for 2018, 384 for 2019, 370 for 2020, 413 for 2021, 439 for 2022, 425 for 2023, and 372 for 2024).[3]

Based on these reporting chain spreadsheets, Plaintiffs identified 140 relevant teams; and in their Deposition by Written Question ("DWQ") Question 222, requested detailed employment information about any individual who had ever been on one of those teams.  In response, Meta provided spreadsheets for each year over a 10-year time period, showing—for each individual who was ever on one or more of these teams— fields of information similar to those listed above.  By means of this production, Meta produced detailed data about an additional 3,858 unique individuals (290 individuals provided for 1/1/2015, 435 for 2016, 578 for 2017, 670 for 2018, 940 for 2019, 916 for 2020, 983 for 2021, 1024 for 2022, 922 for 2023, and 894 for 2024).

Between these two sets of productions, Meta has provided reporting structure, team, and employment details for 4,840 individuals over a 10-year period.  These include custodians and those working with them, as well as all individuals working on 140 teams that Plaintiffs initially identified as relevant to this case.  Yet Plaintiffs now demand that their "sufficient to show" RFPs require still more employment data, including about *all* employees who have ever been on one or more of *335 additional teams*.  This request would implicate detailed data for 4,000-5,000 additional employees, likely none of whom will be deposed or who reported to any deponent.

During meet-and-confers and follow-up correspondence, Meta confirmed that it already had provided more than sufficient detail, for more than 4,800 employees, well beyond what is proportionate to the needs of this case.  Meta offered Plaintiffs a reasonable compromise that if, during document review or depositions, Plaintiffs learn of a handful of previously unidentified key individuals or can identify one or two additional teams for which they can show a need for additional details, Meta would consider in good faith such targeted requests.  Plaintiffs rejected that offer, wanting to push instead for information about thousands of additional employees.

**Argument**.  Plaintiffs' requests are disproportionate to the needs of the case, are unnecessarily broad, and should be rejected for four primary reasons.

*First*, there is no significant, proportionate benefit to Plaintiffs' follow-on requests for additional voluminous productions.  Having already received detailed data about more than 4,800

---

[2] On August 28, pursuant to the Parties' prior agreement, Plaintiffs designated five additional custodians.  Meta will provide the same reporting chain spreadsheets for these custodians.

[3] Because some individuals continued in positions for multiple years, the total number of unique individuals represented is less than the sum of the numbers represented in each year.

employees, and having noticed 39 fact depositions, Plaintiffs have no proportionate need to obtain employment data about thousands of additional employees across 335 additional teams. Had Plaintiffs articulated a targeted need for data about a small number of additional individuals or teams (for example, to understand a document or reporting relationship), the Parties could have negotiated a limited production to satisfy Plaintiffs' actual needs.

*Second*, any marginal benefit to Plaintiffs from additional productions is outweighed by the burdens that would be imposed on Meta.  *See* Fed. R. Civ. P. 26(b)(1); *Metalab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-mc-80153-MEJ, at *7 (N.D. Cal. Jan. 11, 2018) ("Requests are unduly intrusive and burdensome where they are not narrowly tailored, … and appear to be a broad fishing expedition for irrelevant information.").  The additional burdens are disproportionate given the voluminous, detailed information already provided and the great deal of manual effort required to provide more, when Plaintiffs cannot reasonably need, for purposes of prosecuting their case, anything more.  That is particularly so given the compromise Meta offered—namely, to consider targeted requests for information about specific individuals or a handful of additional teams.

*Third*, the scope of information Meta has provided for each of more than 4,800 employees significantly exceeds anything that would normally appear on an org chart or in an organizational directory, and more than satisfies Plaintiffs' sufficient-to-show RFPs.  As noted, Meta has provided 11 pertinent fields of information for each of those employees.  Plaintiffs have requested a listing of all available fields in Meta's personnel database as a menu so they might pick and choose which additional fields they would like to see.  But there are tens of thousands of fields, often differing by country, relating to citizenship, family, contact, pay and withholding, benefits, attendance, and other irrelevant and sensitive information.  Plaintiffs have not articulated any relevant and non-sensitive information they are missing and need, particularly about thousands of employees who will never be witnesses.  Plaintiffs have just now in this brief increased their request to seek all Workday fields for the employees about whom data already has been provided, which of course is patently absurd given that there are tens of thousands of such fields, containing all sorts of highly sensitive information.

*Fourth*, Plaintiffs' requests for "pictographic representations" of Workday data are unreasonably burdensome and not required by the text of their requests.  Rule 34(b)(2)(E)(iii) states that a party does not need to produce ESI in more than one form.  Plaintiffs' "sufficient to identify" requests do not require the production of pictographic representations, and are satisfied by the detailed spreadsheets Meta has already produced.  Moreover, Meta does not regularly create and circulate standard graphical representations of this data.  Instead, custom graphics can be created using a Workday tool, which is what Plaintiffs are asking Meta to do using parameters that Plaintiffs request.  But arranging that data and creating those graphics would amount to the creation of new documents, which Meta is not required to do; Plaintiffs can create their own graphics using the information Meta has provided.  *See Washington v. Garrett*, 10 F.3d 1421, 1437-38 (9th Cir. 1993) (upholding ruling that defendant "not required to create documents to satisfy [plaintiff's] discovery requests").  In addition, the requested graphics would show less detail than the spreadsheets already produced.  What exactly Plaintiffs are asking to see graphically also is a moving target; but as best Meta can determine, any graphics that might show (some of) the information Plaintiffs are requesting would be unwieldy and not-useful, and potentially hundreds of pages long.  For these reasons, the Court should reject Plaintiffs' improper, wide-ranging requests.