UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF ON SCHOOL DISTRICT PLAINTIFFS' SEARCH TERMS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to: | |
| *Baltimore County Board of Education v. Meta, et al.*, Case No. 24-cv-01561 | |
| *Board of Education Harford County v. Meta, et al.*, Case No. 23-cv-03065 | |
| *Board of Education of Jordan School District v. Meta, et al.*, Case No. 24-cv-01377 | |
| *Breathitt County Board of Education v. Meta, et al.*, Case No. 23-cv-01804 | |
| *Charleston County School District v. Meta, et al.*, Case No. 23-cv-04659 | |
| *Dekalb County School District v. Meta, et al.*, Case No. 23-cv-05733 | |
| *Irvington Public Schools v. Meta, et al.*, Case No. 23-cv-01467 | |
| *Saint Charles Parish Public Schools v. Meta, et al.*, Case No. 24-cv-01098 | |
| *School District of the Chathams v. Meta, et al.*, Case No. 23-cv-01466 | |
| *Spartanburg 6 School District v. Meta, et al.*, Case No. 24-cv-00106 | |
| *The School Board of Hillsborough County, Florida v. Meta, et al.*, Case No. 24-cv-01573 | |
| *Tucson Unified School District v. Meta, et al.*, Case No. 24-cv-01382 | |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the School District Plaintiffs and Defendants respectfully submit this letter brief regarding a dispute about the search terms to be used the School District Plaintiffs in processing documents for review and production.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On September 6, 2024, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

Attached are the following appendices:
- Appendix A - list the search terms in dispute;
- Appendix B - list Plaintiffs' proposed search terms;
- Appendix C - bar chart and table showing the document counts for each of the Parties' respective search term proposals.

Dated: September 11, 2024                             Respectfully submitted,

*/s/Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE, LLC**
401 9th St, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
Email: pwarren@motleyrice.com

Co-Lead Counsel for Plaintiffs

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100

cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER

**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**COVINGTON & BURLING LLP**

By:  */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
          pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**FAEGRE DRINKER LLP**
By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*

**FAEGRE DRINKER LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
**FAEGRE DRINKER LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro ha vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**MUNGER, TOLLES & OLSON LLP**
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
**WILSON SONSINI GOODRICH & ROSATI**
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

**WILLIAMS & CONNOLLY LLP**
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

**MORGAN, LEWIS & BOCKIUS LLP**
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541

Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

x

**Defendants' Position:** The 12 bellwether School District Plaintiffs ("Plaintiffs") collectively seek over $3 billion dollars in past damages (and likely billions more in purported "abatement") but also seek to avoid basic discovery obligations based on speculative assertions of burden. Defendants' proposed search terms are relevant and proportional to the needs of these cases, and Defendants have narrowed their requests in good faith during the meet-and-confer process. Plaintiffs now claim there is a 2.5 million document "budget cap" on the *total* number of documents their counsel can review across all 12 bellwethers before the substantial completion deadline—notwithstanding that the terms Defendants agreed to run (at Plaintiffs' insistence) will result in the likely review of tens of millions of Defendants' documents. This is a problem of Plaintiffs' own making, and remarkably, was not disclosed in the parties' submissions to the Court regarding a proposed extension of the discovery deadline. Because Plaintiffs have no factual basis for their relevance or burden arguments, this Court should order them to search for and produce documents using the disputed terms in Appendix A.

**Defendants' Search Terms Are Proportional to the Needs of the Cases.** Plaintiffs complain that the disputed terms are disproportionate to the needs of the cases, but these cases present novel questions of fact and law and implicate the many complicated factors associated with educational and mental health challenges faced by teens. Plaintiffs put these broad and complex topics at issue with their sweeping claims, and they seek billions of dollars in damages (in addition to an undisclosed amount in "abatement"). Plaintiffs claim that it is impossible to review the volume of documents that hit on Defendants' proposed terms, but that is plainly inaccurate and inconsistent with the position Plaintiffs took in negotiating terms for Defendants' documents. Indeed, Plaintiffs requested (and Defendants agreed) to run hundreds of search terms—including incredibly broad terms like "adolescen*" and "problematic w/5 use*"—resulting in the likely need to review tens of millions of documents across all Defendants. In high-stakes, high-dollar cases like this one, discovery often requires *both* parties to search for, review, and produce a large number of documents. *See Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09CV2319 BEN (NLS), 2011 WL 13100706, at *4 (S.D. Cal. Aug. 25, 2011) ("While considerable, the amount of documents to be searched does not appear unreasonable given the number of claims and defenses asserted, the nature of the case, the amount in controversy and the [issues] at stake.").

Despite the broad claims and defenses at issue, Defendants made every effort to refine their proposal and, when Plaintiffs belatedly provided hit reports, Defendants proposed cuts that reduced the volume of documents by *over 10 million*—in stark contrast with Plaintiffs, who have refused to agree to any increases whatsoever.[1]  Instead, Plaintiffs claim that they cannot review more than a total of 2.5 million documents given the case deadlines and their obligations under the Family Educational Rights and Privacy Act ("FERPA"). Split among the 12 districts, this cap would limit Plaintiffs' *review* to an average of only approximately 208,000 documents per district. Neither ground provides a basis for Plaintiffs to avoid their discovery obligations, and permitting Plaintiffs to rely on the cap to cabin relevant and proportional discovery is improper and highly prejudicial to Defendants as it would severely curtail Defendants' ability to defend Plaintiffs'

---

[1] In describing Defendants' third proposal as a "last-ditch effort," Plaintiffs omit important details: Plaintiffs repeatedly ignored Defendants' requests to identify problematic terms before and during meet and confers, refused to provide *any* hit reports for weeks—*despite the ESI Order*—and only sent hit reports for the first time within days (and for a few Plaintiffs, within just hours) of the parties' deadline to conclude negotiations. *See* Dkt. 690.

1

sweeping allegations. First, Plaintiffs cannot use the schedule upon which they insisted as a shield to stymie proper discovery. Plaintiffs never indicated to the Court or Defendants—including during negotiations on the recent schedule extension—that they could not substantially complete document production by November 5 unless such a cap was imposed. Notably, Plaintiffs did not speak up to raise this issue when the Court offered at the last status conference to place the school district cases on a separate, less expedited discovery timeline.

Second, Plaintiffs' newfound burden argument under FERPA lacks merit. Plaintiffs mentioned (for the first time) on the parties' September 6 deadline to conclude negotiations that their obligation to redact personally-identifiable student records renders Defendants' terms too burdensome because (they claim) FERPA requires them to manually review every document, which they claim they cannot do by the substantial completion deadline. Plaintiffs thus demand that Defendants drop over 90% of the disputed terms without (1) regard to the actual burden on individual school districts, (2) providing responsiveness sampling or other evidence that Defendants' terms yield a significant number of irrelevant documents, or (3) making any attempts to use technology to assist in the review (*e.g.*, to exclude false hits or identify PII).

Third, Plaintiffs cannot support their burden claims concerning Defendants' disputed terms on several key, and clearly relevant, search terms. For example, Plaintiffs refuse to run the names of Defendants' platforms (which lie at the very core of Plaintiffs' claims) because the terms result in a large number of documents, including (they claim) advertising and spam emails. But Plaintiffs have not explored with their vendor whether any exclusionary measures can be used to eliminate non-relevant domains (or categories of repetitive false hits) from the results. Because Plaintiffs made no attempts to exclude these false hits, they offer speculation in lieu of factual support for their claims of burden. Plaintiffs also identified a handful of purportedly "grossly overbroad" terms for the first time in their brief, but failed to offer any evidence (such as the results of responsiveness sampling)[2] to suggest that Defendants' terms are resulting in a significant number of *irrelevant* hits. To the contrary, several of the terms Plaintiffs challenge, such as misbehav\*, do not result in a large number of unique hits.[3]

Lastly, any assertion that Plaintiffs' status as school districts should excuse their discovery obligations is unpersuasive. Plaintiffs include (1) large institutions that employ thousands and have annual budgets exceeding hundreds of millions of dollars, and (2) districts that chose to be bellwethers. Plaintiffs' hit reports show that the relatively smaller school districts are not the drivers of substantial volume.[4] Moreover, Plaintiffs' counsel represented to the Court that they were prepared to invest substantial resources to litigate these cases. Dkts. 8, 25.

---

[2] On September 9, Plaintiffs provided examples of a small number of terms that returned a large number of non-responsive documents *and* (at Defendants' request) described the documents. Defendants offered solutions to narrow certain of those terms and agreed to drop others. Plaintiffs have not made *any* showing backed by examples that the remaining disputed terms would result in a large number of *non-responsive* documents.

[3] Plaintiffs, for example, highlighted a term beginning with "incident\* w/25" as purportedly overbroad, but Defendants had *already* narrowed that term as part of their counterproposal.

[4] Per Plaintiffs' hit reports, the agreed-upon *and* disputed terms on average implicate under 700,000 documents, *including* families, for the majority of bellwethers.

**Defendants' Search Terms Are Relevant.**  Because Plaintiffs attribute to Defendants the teen mental health crisis and myriad difficulties facing schools, Defendants appropriately seek discovery into the many other factors that may have caused Plaintiffs' alleged injuries, including drug, alcohol, and vaping abuse; sexual and physical violence; the Covid-19 pandemic and remote learning; and other socioeconomic factors and stressors.  Notably, Plaintiffs have agreed to produce documents responsive to many of these topics but are nevertheless refusing to apply relevant search terms that would identify those documents—and have done so without providing the necessary specificity to identify the specific terms they consider irrelevant.  The disputed terms (*see* Appendix A) relate to (1) other factors that may have caused the perceived decline in students' mental health and wellness; (2) the nature of students' use (and Plaintiffs' promotion) of Defendants' platforms, social media, and electronic devices; (3) school districts' use (or misuse) of funding and misconduct by employees, which are relevant to alternative causation and likely affirmative defenses; and (4) Plaintiffs' damages and non-privileged communications regarding this litigation and Plaintiffs' claims in other lawsuits (e.g., *JUUL*), where they have blamed other parties for the same alleged harms.  Plaintiffs' proposed terms, by contrast, are underinclusive and inadequate.  As one example, Plaintiffs have opposed *any* search that includes the term "Covid-19" or "pandemic," as well as certain terms concerning the impact of remote learning on students, despite the fact that these issues have been widely reported as significant causes of the harms Plaintiffs allege.

**Plaintiffs' Position:** It is axiomatic that search terms should be "reasonably calculated to retrieve the information responsive to [the document] requests." *Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 93 (D.D.C. 2017). Given the well-known limitations of search terms, parties must take care to construct narrowly tailored terms to avoid undue burden or delay in uncovering and producing the relevant and responsive documents. *See In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 833681, at *3 (N.D. Cal. Feb. 24, 2015) ("[A] problem with keywords is that they often are overinclusive, that is, they find responsive documents but also large numbers of irrelevant documents." (quotation marks omitted)). Despite this, Defendants' proposed search terms are not fashioned to retrieve the most relevant information and are not proportional to the needs of the case. Most important, it is not feasible for Plaintiffs to review the volume of documents Defendants' proposal would require under the case schedule deadlines.

**Defendants' proposed search terms are not well-tailored, and Plaintiffs as the responding party are in the best position to search and produce their own ESI.** Plaintiffs provided the history of the Parties' search term negotiations in the Joint Status Report (ECF 1120, at 23-25). In contrast to Plaintiffs' proposals, Defendants' proposals have been facially unreasonable, yielding staggering document hit counts. Even Defendants' last-ditch effort, which still includes approximately 240 terms in dispute, would require Plaintiffs to review over 8 million documents. This volume is two to six times as large as Plaintiffs' proposal, depending on the School District. *See* Appendix B (Pls' terms); Appendix C (document counts).

Plaintiffs provided hit reports showing that Defendants' terms capture an excessive number of irrelevant documents. Defendants ask that *school districts* run terms such as "misbehav*", or "misconduct". Of course, running these as standalone terms would return many irrelevant documents. Large search strings, which Defendants refused to deconstruct, include ("incident* w/25 ("social media" OR Instagram OR IG OR TikTok OR YouTube OR Snap* OR Facebook

3

OR FB OR student* OR scholar* OR pupil* OR teen* OR tween* OR kid* OR youth* OR child* OR juvenile* OR pre-teen* OR preteen* OR adolescent* OR minor*)") and ((school OR class) W/3 (absent* OR miss* OR skip* OR interrup* OR cut)). These search strings would hit on documents related to any incident with a student (e.g., a student getting sick in class), or a student missing any class for any reason, as happens multiple times every day at any school.

Although Plaintiffs have pointed out these issues, Defendants refuse to use discipline to properly narrow these terms and instead suggest the duty is on Plaintiffs to narrowly re-craft the 240 facially overbroad terms. This is not the standard. *See Lawson v. Love's Travel Stops & Country Stores, Inc.*, 2019 WL 7102450, at *2 (M.D. Pa. Dec. 23, 2019) ("[D]iscovery requests . . . should be as specific as possible. This duty of specificity applies to the formulation of search terms to be used in ESI searches."); *TVIIM, LLC v. McAfee, Inc.*, 2014 WL 5280966, at *2 (N.D. Cal. Oct. 15, 2014) (rejecting search terms that were "not sufficiently narrowed by other keywords to reduce the risk of overproduction"); *cf.* Fed. R. Civ. P. 26(g)(1)(B)(ii).

While Defendants may provide certain examples of relevant documents these terms may hit on, that is true of any term: what matters is whether the existing search terms are "reasonably calculated to retrieve the information responsive to [Defendants'] requests." *Prasad*, 323 F.R.D. at 93. Indeed, Plaintiffs, as the party responding to discovery, are "best situated to preserve, search, and produce [their] own ESI." *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 118 (2018). This principle, cited previously by Defendants, "is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production." *Id.* Consistent with that responsibility, Plaintiffs fashioned terms that are well-tailored to yield the sought information. Defendants' speculation to the contrary is not enough to meet the requirements of Rule 26(b)(1). *Prasad*, 323 F.R.D. at 93–94. Defendants' complaints that Plaintiffs did not provide responsiveness sampling results to Defendants, which would have required Plaintiffs to review tens-of-thousands of documents and taken months to complete, is not required by the ESI Protocol and is not something Defendants' conducted. Likewise, in speaking with their vendors, Plaintiffs learned Defendants' suggestion of using exclusionary methods would be a fool's errand that takes over a year given Defendants' platforms are ubiquitous commercial products and uniformity is lacking between the documents of different School Districts (i.e., they are not one company).

**<u>Defendants' proposed search terms are not proportional or reasonable.</u>** Defendants' proposed search terms do not satisfy the proportionality analysis. *See* Fed. R. Civ. P. 26(b)(1) (listing the proportionality factors courts must consider). The burden on Plaintiffs of Defendants' proposed terms would be grossly undue. For perspective, Defendants' final proposal would require Plaintiffs to review as much as *one-third of the entire agreed-to custodial files*. *See Rusoff v. Happy Grp.*, 2023 WL 114224, at *5 (N.D. Cal. Jan. 5, 2023) (high number of hits per custodian required "further tailoring of the search strings" and was "necessary to avoid unnecessary, burdensome discovery").[5]

---

[5] *Gen-Probe Inc.*, 2011 WL 13100706, the only case Defendants cite for their misguided argument that Rule 26(b)(1) is satisfied, is easily distinguishable. Plaintiffs here have asserted 2 claims (Master Compl., ECF 535-1), not 140 like in *Gen-Probe*, and are public entities, not a

It is simply not feasible or proportional to conduct a review of the magnitude that Defendants seek and adhere to the case schedule. Assuming each document reviewer can review 400 documents a day, in order to meet the November 5 deadline for substantial completion of document production, Plaintiffs would need to employ over *500 attorneys* devoting 8 hours a day to document review, which would cost many millions of dollars.[6] This would not include the time needed to redact any responsive documents pursuant to the Family Education Rights and Privacy Act (FERPA), 34 C.F.R. § 99 *et seq.*—as mentioned during the August 30 hearing with Judge Gonzalez Rogers (Hr'g Tr. 26:23-25)—which restricts the disclosure of student records with personally identifiable information.

Plaintiffs are not required to expend these significant additional resources for speculative (at most) benefit. "Perfection in ESI is not required; rather a producing party must take reasonable steps to identify and produce relevant documents." *Valentine v. Crocs, Inc.*, 2024 WL 2193321, at *10 (N.D. Cal. May 15, 2024) (Kang, J.) (alteration adopted). Plaintiffs have taken such "reasonable steps" here: they proposed over 200 search terms that are reasonably calculated to retrieve documents responsive to Defendants' requests for production. Defendants have not identified any categories of relevant documents that Plaintiffs' search terms do not include.[7] Given the "outsized price tag" to perform Defendants' searches as well as the "doubtful payoff," these additional burdens are not warranted. *Prasad*, 323 F.R.D. at 93. This conclusion is particularly apt in light of the Court's repeated instruction that the Parties find "ways to narrow the burden" of discovery in this action. May 23, 2024 DMC Tr. at 73:13.

Plaintiffs gave Defendants the opportunity to engage in meaningful meet and confers on terms that Plaintiffs would use to cull their responsive documents, including the budget cap approach the Parties successfully used with Meta's search terms. If this Court is inclined to order additional terms that would expand the hit counts significantly, or to order further meet and confers (which it should not), Plaintiffs respectfully request that the deadline for Plaintiffs' substantial completion of document production be extended to allow for same. The agreed-to extended schedule was based on proportional discovery, which is not what Defendants are requesting here. If this Court grants terms that significantly increase the volume of documents required to be reviewed by Plaintiffs' proposed terms, the case schedule will be in jeopardy.

---

"larger multi-national company" with "greater resources to conduct the discovery." *Id.* at *4. In addition, *Gen-Probe* concerned a prior agreement regarding discovery from which the moving party sought relief. There is no such agreement here.

[6] Defendants' claim that Plaintiffs have not provided transparency into the burden associated with Defendants' proposed terms is baseless. The above is simple math that Defendants can do with the numerous hit reports provided.

[7] Plaintiffs' proposed terms at 12-15, 18-21, 38, 58, 135-37, 149 in Appendix B will capture students' mental, social, emotional, or behavioral health, and academic achievements no matter the reason (COVID or otherwise), and Plaintiffs have agreed to produce district-wide policies regarding COVID-related closures; terms are not needed to be run against all custodians.

5

## ATTESTATION

      I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: September 11, 2024                                                                       */s/Lexi J. Hazam*
                                                                                                                              Lexi J. Hazam