UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.: 4:22-md-03047-YGR-PHK |

**JOINT LETTER BRIEF REGARDING BELLWETHER SCHOOL DISTRICT PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS (Set One)**

This Document Relates to:

*Baltimore County Board of Education v. Meta, et al., Case No. 24-cv-01561*
*Board of Education Harford County v. Meta, et al., Case No. 23-cv-03065*
*Board of Education of Jordan School District v. Meta, et al., Case No. 24-cv-01377*
*Breathitt County Board of Education v. Meta, et al., Case No. 23-cv-01804*
*Charleston County School District v. Meta, et al., Case No. 23-cv-04659*
*Dekalb County School District v. Meta, et al., Case No. 23-cv-05733*
*Irvington Public Schools v. Meta, et al., Case No. 23-cv-01467*
*Saint Charles Parish Public Schools v. Meta, et al., Case No. 24-cv-01098*
*School District of the Chathams v. Meta, et al., Case No. 23-cv-01466*
*Spartanburg 6 School District v. Meta, et al., Case No. 24-cv-00106*
*The School Board of Hillsborough County, Florida v. Meta, et al., Case No. 24-cv-01573*
*Tucson Unified School District v. Meta, et al., Case No. 24-cv-01382*

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the School District Plaintiffs and Defendants respectfully submit this letter brief regarding Plaintiffs' objections to Defendants' Requests for Production of Documents to the School Districts (Set One).

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that

i

they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On September 6, 2024, and again on September 17, 2024, lead trial counsel for the Parties involved in the dispute attended final conferrals. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Attached are the following appendices:
- Appendix A – undisputed RFPs that implicate disputed term "Online Media & Communications Services."
- Appendix B – chart of disputed RFPs and definition in their original and operative form as proposed by Defendants.

Dated: September 25, 2024                    Respectfully submitted,

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Laura Bernescu*

Laura Bernescu (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
320 S. Canal St.
Ste 47th Floor
Chicago, IL 60606-5707
Telephone: (312) 407-0700
Email: laura.bernescu@skadden.com

John H. Beisner (State Bar No. 81571)
Nina R. Rose (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
1440 New York Avenue, N.W.,
Washington, DC 20005
Telephone: (202) 371-7000
Email: John.Beisner@skadden.com
Email: nina.rose@skadden.com

Jessica Davidson (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West

ii

New York, NY 10001
Telephone: (212) 735-2588
Email: Jessica.Davidson@skadden.com

Jason David Russell (SBN 169219)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144
Telephone: (213) 687-5328
Email: jason.russell@skadden.com

Catherine Mullaley (*pro hac vice*)
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4851
Email: catherine.mullaley@skadden.com

**MUNGER, TOLLES & OLSON LLP**

*/s/ Jonathan H. Blavin*

Jonathan H. Blavin, SBN 230269
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*

Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc.; Facebook Holdings,
LLC; Facebook Operations, LLC; Facebook
Payments, Inc.; Facebook Technologies, LLC;
Instagram, LLC; Siculus, Inc.; and Mark Elliot
Zuckerberg*

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson, *pro hac vice*

**FAEGRE DRINKER LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
**FAEGRE DRINKER LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro hac vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

*/s/ Brian M. Willen*

Brian M. Willen (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

v

Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
**WILSON SONSINI GOODRICH & ROSATI**
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and
Google LLC*

**WILLIAMS & CONNOLLY LLP**

*/s/ Joseph G. Petrosinelli*

Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and
Google LLC*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Yardena R. Zwang-Weissman*

Yardena R. Zwang-Weissman (SBN 247111)

300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-
weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and
Google LLC*


*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

vii

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**

112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300

ix

Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK
LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706

x

jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK
LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203

Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**Defendants' Position:** Defendants and the School District Bellwether Plaintiffs ("Plaintiffs") are at an impasse with respect to Plaintiffs' refusal to search for or produce documents regarding: (1) the impact of non-defendant social media and communications services on Plaintiffs as a result of the disputed definition of "Online Media & Communications Services"; (2) arrests, criminal or disciplinary actions, or investigations of students and certain school employees for specified types of misconduct (RFPs 27, 28); and (3) teacher movement among schools (RFP 31). (*See* Appendix B.) The documents Defendants seek are highly relevant to causation—i.e., whether Defendants' platforms (as opposed to other factors) caused Plaintiffs' alleged harms—and the nature, scope and extent of Plaintiffs' alleged damages.

**Definition of "Online Media & Communications Services."** The RFPs in Appendix A seek documents related to "Online Media and Communications Services," including their uses, harms, costs and benefits to the Plaintiffs. The Parties fundamentally disagree on the proper definition and scope of the term: Defendants defined it to include communications services beyond Defendants' platforms, but Plaintiffs seek to limit the term to Defendants' platforms alone. Plaintiffs' own allegations make clear that Defendants' definition is the right one; after all, Plaintiffs allege that social media *generally*—not just Defendants' platforms—is contributing to purported harms to students and, by extension, the districts themselves. (*See* Compl. ¶ 22 ("[c]ompulsive social media use and addiction are negatively affecting student behavior"); *id.* ¶ 24 ("School districts nationwide have made substantial expenditures to combat the drain on learning caused by students' social media compulsive use and addiction.").) The information sought through Defendants' definition will speak directly to the alleged cause of Plaintiffs' claimed harm. *See Hukman v. Sw. Airlines Co.*, 2019 WL 566451, at *3 (S.D. Cal. Feb. 12, 2019) ("defendants should have access to evidence that the plaintiff[s'] [injuries were] caused by something else").[1]

If the term is limited to Defendants' platforms, it would not capture documents discussing alleged harms from other platforms. Plaintiffs may want to limit the scope of these cases to Defendants, but Defendants are entitled to discover information about other platforms that could be potential causes of Plaintiffs' alleged harms. Those other platforms are also widely used and have similar design features to certain Defendants' platforms; many of the non-party platforms allow for anonymous account creation, use algorithms to maximize engagement, and include direct messaging features. Indeed, one of the platforms included in Defendants' definition reportedly ceased operations during the Relevant Time Period due to bullying and harassment. (It has since been restored.) Moreover, many Plaintiffs maintain active accounts on one or more non-party platforms included in Defendants' definition and use such platforms to engage with their students and communities. Although Plaintiffs have chosen to sue only the owners and operators of a few communications services, that does not dictate the scope of information relevant to their claims.

**RFPs 27-28** seek documents sufficient to show: (1) any criminal or disciplinary action or investigation of certain school district employees; and (2) arrests or law enforcement investigations of students or certain School District employees, to the extent such actions or

---

[1]    Plaintiffs' argument about TikTok's objections to producing communications between TikTok and certain non-parties is a red herring. Plaintiffs put social media in general at issue, including the potential effects of other platforms on their students' mental health and wellbeing. Defendants are entitled to Plaintiffs' documents and communications about those other platforms. TikTok's (or any other Defendant's) communications with non-parties has no bearing on this issue.

investigations arise from misconduct involving "Student(s), parent(s), other School District employee(s), or that occurred on School District property or at any schools therein."

Plaintiffs refuse to search for and produce any responsive documents regarding criminal or disciplinary actions and related investigations of certain school district employees, even though the instances and prevalence of school district employees' misconduct sought by amended RFP 27 are directly relevant to Defendants' theories of alternative causation. Such misconduct, and the school districts' responses to it, speak not only to Plaintiffs' hiring and employment practices, and the competence of their employees, but also to the physical and mental wellbeing of students and the adequacy of Plaintiffs' efforts to protect that wellbeing. To the extent Plaintiffs are failing to protect students and the learning environment from their own employees, Defendants are entitled to test whether Plaintiffs are to blame for the very injuries and damages they allege in this litigation. Again, Plaintiffs assert that the cases are about only "Defendants' [alleged] role in the youth mental health crisis," but Defendants are entitled to defend the claims by pointing to other potential causes, including the schools and teachers themselves.

Although Plaintiffs agreed to produce reports concerning arrests of students only relating to *on-campus* activity, Plaintiffs' offer does not include reports of arrests or investigations that occur off-campus but nonetheless exist in Plaintiffs' files. Given the broad allegations that Defendants' platforms have caused mental illness and academic decline among Plaintiffs' schools, students, and the broader community, incidents of purported "off-campus" misconduct involving students and school district personnel may point to other explanations for Plaintiffs' claimed harms. There are many kinds of in-person misconduct that may occur off-campus and have nothing to do with Defendants' platforms, but that nevertheless affect schools and the mental health of students. If Plaintiffs have documents relating to off-campus arrests or investigations in their possession, custody, or control, it is likely because those incidents affected Plaintiffs or their students. Such information is relevant to this litigation and should be produced.

Plaintiffs argue that the requests are improper because they seek "documents about specific incidents involving particular individuals" intended to embarrass the implicated individuals. But Defendants do not want to harass or embarrass—they want relevant information to adequately defend against Plaintiffs' sweeping claims. To that end, Defendants already limited RFPs 27 and 28 to *documents sufficient to show* investigations, arrests, and disciplinary actions regarding specific types of misconduct by limited categories of individuals, which may not necessarily disclose any individual's identity. Moreover, the information sought is no more sensitive than other information being produced by all parties in this litigation subject to protective order. Plaintiffs notably have not expressed similar concerns over on-campus arrests, despite no logical distinction between the two.

**RFP 31** seeks documents regarding teacher turnover, retention and mobility. Plaintiffs agreed to produce certain responsive documents regarding these topics, but the parties disagree about the scope of discovery related to teacher mobility. While the parties agree that teacher mobility refers to "teachers transitioning from one school to another within the School District," Plaintiffs seek to narrow the request to transitions "due to job dissatisfaction concerning student behavior or lack of available student support resources," while Defendants seek information on transitions due to job dissatisfaction generally. Plaintiffs have not articulated any logical reason why Defendants' request should be limited to teacher transitions related to student behavior. Transitions arising from job dissatisfaction or inadequate resources more broadly would shine a light on potential alternative

causes for Plaintiffs' alleged harms. For example, significant teacher mobility could be indicative of systemic issues in the school district that implicate Plaintiffs' own conduct or policies, and undermine Plaintiffs' theory that Defendants bear responsibility for their complained-of harms.

Plaintiffs' refusal to produce documents on these topics at a school level is similarly flawed.[2] Defendants are entitled to investigate *which* schools in a given district are hiring, retaining or losing teachers. For example, if a school consistently loses teachers due to poor conditions, it would be important to understand whether those teachers moved to another school within the district or left the district altogether. This information would only be captured by documents related to teacher turnover, retention, and mobility within each school in a district, and *not* in documents regarding the district generally (as Plaintiffs proposed). This information is particularly relevant to the larger school districts, which contain hundreds of individual schools and service dozens of cities, and will help Defendants understand the extent to which the harms or damages Plaintiffs allege are concentrated in certain schools. It would also be relevant if Plaintiffs' alleged harms flow disproportionately from schools experiencing the highest turnover.

**School Districts' Position**: Defendants' requests violate the basic principles of proportionality, relevance, and burden. Rather than seeking important information that would help resolve the issues here, Defendants broadly seek information about an array of irrelevant technology, documents concerning specific students and staff that could only be sought to annoy and embarrass, and specific information about stand-alone incidents that, to the extent they are even relevant, are covered by the aggregate information that Plaintiffs have agreed to produce and that is publicly available. Moreover, Plaintiffs have proposed meaningful compromises, which Defendants have unreasonably rejected. Defendants' requests should be denied in their entirety.

**Defendants' Definition of "Online Media & Communications Services."** This litigation is about Facebook, Instagram, TikTok, Snap and YouTube. Yet, Defendants seek to improperly broaden the scope through a definition of "Online Media & Communications Services" that is unquestionably overly broad, unduly burdensome, and irrelevant because it purports to include several applications or products that do not reasonably relate to the issues in this action. The overbreadth of this definition is clearly shown by the nearly 30 examples of applications or products that Defendants identified as being encompassed by the definition.

As a reasonable compromise, Plaintiffs have proposed limiting "Online Media & Communications Services" to "social media"—defined as "websites or applications designed for social networking where users create online communities to share information"—and limiting the scope to "social media platforms at issue in this litigation." Defendants insist that Plaintiffs' proposal is too narrow, yet this limitation is precisely the limitation that the TikTok Defendants insisted on when it sought to narrow the scope of Plaintiffs' Request to Produce ("RFP") Nos. 211-212 related to industry communications. Defendants' assertion that Plaintiffs' general reference to "social media" in the Master Complaint opens the door to any online platform, regardless of whether it is a social media platform, that could possibly cause harm to users is non-sensical and clearly overbroad. While Defendants demand that the definition include multiple irrelevant platforms (*i.e.*, BeReal, Discord, GroupMe, iMessage, Kik, Omegle, Pinterest, Reddit, Slack, Telegram, Twitch, Tumblr,

---

[2]    Contrary to Plaintiffs' assertion, Defendants consistently requested documents on these topics "*within each school in a School District*," including in correspondence on August 9, 2024.

WhatsApp, X (formerly known as Twitter), and YikYak), Plaintiffs do not allege that *any* of these online platforms have contributed to the alleged harms, nor does the Master Complaint make *any* reference to Discord, GroupMe, iMessage, Kik, Omegle, Pinterest, Reddit, Slack, Telegram, Twitch, Tumblr or YikYak. The only mention of BeReal, WhatsApp, and Twitter are in hyperlinks to websites that do not discuss harm or potential harm that these platforms pose to users. Defendants arbitrarily selected these irrelevant online platforms and have failed to articulate any reasonable justification for why they have any bearing on the issues in this litigation.

Tellingly, Defendants have not provided any specific examples in support of their position. Defendants claim that some of the non-party platforms have similar features to *certain* Defendants' platforms, but have not identified which non-party platforms are implicated. Defendants also claim that one of the non-party platforms ceased operation during the Relevant Time Period. Plaintiffs cannot evaluate the legitimacy of this claim because Defendants have not disclosed which non-party platform is being discussed. Yet, by Defendants' admission, that unidentified platform is not relevant to this litigation because it was not operating during the Relevant Time Period. Defendants cannot conduct a fishing expedition based on the speculative belief that Plaintiffs' students *may* use a non-party platform. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'"). Plaintiffs' proposal is narrowly tailored to the disputed issues in this case by limiting the definition to the social media platforms at issue in this litigation and should be ordered by the Court.

**RPD Nos. 27-28**. Defendants' request for documents showing "any criminal or disciplinary action or investigation" (RPD No. 27) or "any arrests or law enforcement investigations" (RPD 28) into any non-party student, teacher, coach, or administrator that interacts directly with students and parents, involving student(s), parent(s), other School District employee(s), or that occurred on School District property or at any school(s), is not only similarly overbroad, disproportionate, and irrelevant, but also clearly intended to harass and embarrass. Defendants make no effort to even attempt to tie any of the alleged misconduct to the facts of this case, instead seeking documents about any arrests, investigation, or disciplinary action, regardless of the nature of underlying conduct, the ultimate resolution of the investigation or arrest, or whether it impacted Plaintiffs.

As such, this request has no bearing on resolving the issues at stake—namely Defendants' role in the youth mental health crisis gripping our nation—and falls outside of the discovery permissible under Rule 26(b)(1). To the extent Defendants seek to argue that crime generally is an alternative cause, there are far less burdensome and invasive ways to obtain this information, such as through aggregate crime reporting statistics. Indeed, Plaintiffs have already agreed to produce aggregate reporting concerning student on-campus drug, alcohol, or nicotine use in violation of District policy, students' crime rate, students' physical altercations and/or violence between students, gun violence impacting students, sexual violence impacting students, student suspensions and/or expulsions, and bullying incidents (RFPs 10, 29-30, 32-34, 72). But this is not what Defendants seek. Instead, Defendants ask that Plaintiffs produce documents *about specific incidents* involving *particular individuals* who are non-parties—regardless of what conduct was involved or if the claims were substantiated—without any showing of how or why any of those stand-alone incidents relate to the School Districts' staffing and expenditures addressing student mental health. To the extent Defendants truly seek information about Plaintiffs' hiring practices, that discovery should come through other sources—such as policies—rather than an invasive production of individual records and personnel files. Defendants' suggestion that Plaintiffs knowingly hired employees who

Plaintiffs thought would commit crimes or violence has no basis in fact and is, frankly, offensive. This request is clearly intended to embarrass students, staff, and schools regardless of whether misconduct allegations are true or not. This is not proper grounds for discovery. *See* Fed. R. Civ. P. 26(c) (recognizing that Court may issue protective order where discovery against "annoyance, embarrassment, oppression, or undue burden or expense").

Moreover, the information sought is so overbroad that it would inevitably lead to irrelevant, unnecessary, and burdensome mini-trials over a host of issues, such as whether the alleged conduct actually occurred, who was involved, and the extent to which the alleged conduct had any mental health implications. Courts have rightfully rejected discovery on such grounds. *See, e.g., ClearOne, Inc. v. RSM US LLP,* 2017 WL 6496447, at *2 (D. Utah Dec. 18, 2017) ("[T]he material sought invites speculation about whether RSM has committed other bad acts related to other clients...[and] the discovery will further confuse the issues in this case because the court will be forced to conduct mini trials about whether other related incidents involving RSM's alleged lack of independence had merit."). This case is about the enormous impact Defendants' platforms have had on School Districts' operations and Defendants' request for information about individual events untethered to the facts at issue in this case should be denied.

**RPD No. 31.** RPD No. 31 originally sought "Documents which address, mention, analyze, track, or otherwise reference teacher turnover (including voluntary and involuntary), teacher retention, and teacher mobility during the Relevant Time Period." During the Parties September 6 meet and confer, the parties appeared to agree to the production of "documents … show[ing] teacher turnover and discussion of reasons for teacher turnover within the district generally," which would encompass teacher retention, but disagreed on the relevance of teacher "mobility." The Parties subsequently agreed to the inclusion of teacher "mobility," but disagree on the definition. In addition, Defendants have reverted from their September 6 position to insist on the production of documents concerning these issues at individual schools, as opposed to within the District generally such that it may have had an impact on more than a single school site.

Plaintiffs propose the following definition for "mobility:" "Teacher mobility refers to teachers transitioning from one school to another within the School District due to job dissatisfaction concerning student behavior or lack of available student support resources." Defendants disagree, insisting that teachers moving from one school to another within the district is relevant regardless of the reason for the move. But Defendants' definition unnecessarily broadens the request to include irrelevant documents, such as a teacher transferring schools for personal reasons, like moving to a new home, wanting a larger classroom, or preferring a different grade level. Defendants speculate that such moves could impact student well-being. But Plaintiffs agree to produce documents concerning student well-being in response to multiple other Requests. The same holds true for teacher turnover and retention on a school site level—if such incidents impacted student well-being or were otherwise discussed by Plaintiffs' custodians, Defendants will get the documents. Plaintiffs' proposal to produce documents concerning teacher turnover, retention, and mobility related to relevant student behavioral issues or lack of support resources is reasonable. Defendants' insistence on documents concerning teacher mobility for irrelevant reasons and school-by-school information on turnover is overbroad and irrelevant. And their speculative concern about missing documents discussing an impact on student well-being is misplaced considering Plaintiffs' agreement to produce documents concerning well-being in response to other RPDs.

**ATTESTATION**

I, Laura Bernescu, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: September 25, 2024                    _/s/ Laura Bernescu_
                                             Laura Bernescu