1  [*Submitting Counsel on Signature Page*]

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**
                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9                              **OAKLAND DIVISION**

10

11  | People of the State of California, et al. | |
| v. | MDL No. 3047 |
12  Meta Platforms, Inc., Instagram, LLC, Meta
Payments, Inc., Meta Platforms Technologies,
13  LLC

Case No. 4:22-md-03047-YGR
             4:23-cv-05448-YGR
             4:23-cv-05885-YGR
14  --------------------------------------------------              4:24-cv-00805-YGR

15  Office of the Attorney General, State of Florida,
Department of Legal Affairs                         **STATE ATTORNEYS GENERAL'S**
16      v.                                            **REPLY IN SUPPORT OF MOTION FOR**
                                                     **RELIEF FROM NONDISPOSITIVE**
Meta Platforms, Inc., Instagram, LLC., Meta          **PRETRIAL ORDER OF MAGISTRATE**
17  Payments, Inc.                                    **JUDGE**

18  --------------------------------------------------  Judge: Hon. Yvonne Gonzalez Rogers

19  State of Montana, *ex rel.* Austin Knudsen,       Magistrate Judge: Hon. Peter H. Kang
Attorney General
20      v.

Meta Platforms, Inc., Instagram, LLC, Facebook
21  Holdings, LLC, Facebook Operations, LLC,
Meta Payments, Inc., Meta Platforms
22  Technologies, LLC, Siculus, Inc.

23  --------------------------------------------------

24  IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
25  PRODUCTS LIABILITY LITIGATION

26  THIS DOCUMENT RELATES TO:
4:23-cv-05448; 4:23-cv-05885; 4:24-cv-00805
27

28

Meta advances an extreme proposition here—that every time a state AG files a lawsuit in their independent enforcement capacity, that AG becomes responsible for the preservation and production of every potentially relevant document possessed by every state agency, department, division, officer, entity, board, or bureau, that the AG's office *in some states may* serve as counsel for in unrelated matters. No court in this country has made such a sweeping ruling. The ruling conflicts with basic principles of discovery and attorney obligations while undermining the dual-executive structure mandated by most state constitutions. There is no need for this extreme result—Meta has demonstrated it can obtain the documents it wants through Rule 45 subpoenas without disrupting the workings of state government. Meta's attempts to distract the Court with misleading and unrelated allegations of delay are unavailing. The AGs ask the Court to reject Meta's attempts to use party discovery to delay this case and to grant the AGs' Motion for Relief.

## I. Meta misstates the nature of the AG-state agency relationship.

Meta argues that because some AGs *may* represent some state agencies in *unrelated* matters or in certain cases in responding to third-party subpoenas here, those agencies' documents are subject to party discovery here. This argument misunderstands the law firm-client relationship. Much like a law firm's entire book of business is not subject to party discovery every time one of that firm's clients is involved in a lawsuit, not all state entities are subject to party discovery merely because they *may* be represented by an AG in unrelated matters.[1] Meta's argument is thus inconsistent with this circuit's legal control test. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

Imagine that the AGs sought to obtain documents from TikTok, who they have not sued in this action, through party discovery requests to Meta. True, Meta's counsel, Covington & Burling, represents TikTok in related matters.[2] And, it is undisputed that TikTok and Meta

---

[1] Even for the limited set of nonparty agencies who have retained other lawyers in AG's offices to represent them in responding to subpoenas, "the State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client." *U.S. v. Am. Express Co.*, No. 10CV04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011).

[2] *Litigators of the Week: Covington and DWT Push Back Against States' Legal Challenges to TikTok*, The Am Law Litigation Daily, https://www.cov.com/-/media/files/corporate/publications/2023/12/litigators-of-the-week-covington-and-dwt-push-back-
(continued…)

engage in "close coordination," Doc. 1117, p. 15, in this matter. But that does not mean that Covington, and by extension Meta, has legal control over TikTok's documents for the purposes of this case. Were the AGs to seek TikTok's documents through a party discovery request served on Meta, Covington would surely object and argue that the AGs must seek those documents through a third-party subpoena. *See, e.g.*, *Am. Express Co.*, 2011 WL 13073683, at *3 ("[T]he private firms here would strenuously object if in bringing a lawsuit on behalf of one client . . . their adversary sought documents belonging to another client as party discovery. They would properly insist on the use of Rule 45.").

The situation here is no different. While the AGs *may* represent state agencies in *unrelated* matters, they do not represent them as parties in this case.[3] Instead, the AG is typically both counsel *and* client when bringing an independent enforcement action. So, just as Covington would object to a party discovery request aimed at TikTok, the AGs object to party discovery requests aimed at governor's offices and other agencies that they do not represent in this case. The AGs no more have legal control over those agencies' documents than Meta has legal control over TikTok's documents. Far from asking for special treatment, the AGs are simply asking that their representation in this matter be considered with the same guardrails as any other law firm.

Meta's misunderstanding of the law firm-client relationship permeates the unavailing arguments in its response. For every argument raised by Meta, the Court can ask a simple question: "would Meta make the same argument if the AGs were seeking party discovery from TikTok or another Covington client?" In every case, the answer would be "no." This inconsistency reveals the fundamental flaws in Meta's position.

## II. Meta's counterarguments are otherwise incorrect and/or not determinative.

*First,* Meta incorrectly asserts that the order's holding that AGs control state agencies' documents is a factual determination subject to clear error review. Doc. 1181, p. 9. The determination of control was primarily a legal conclusion, and thus should be reviewed *de novo*.

against-states-legal-challenges-to-tiktok.pdf.

[3] As addressed in the AGs' motion, the Acting Director of the New Jersey Division of Consumer Affairs has brought this suit on behalf of that agency; none of the NJ state agencies from which Meta seeks documents are similarly situated. *See* Doc. 1168, pp. 10, n.4; pp. 34-35.

Meta submitted no evidence proving control, instead resting on legal arguments about the AGs' statutory relationships with state agencies, and the order made no factual findings. The Magistrate Judge weighed no evidence, heard no testimony, and made no credibility determinations, instead engaging in only legal work. *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018). The order even rejected the AGs' factual assertions about who would represent agencies in responding to subpoenas as "an error of law." Doc. 1117, pp. 44, 77, 104. Even if control could be a mixed question of law and fact, the order's exclusive reliance on legal analysis necessitates *de novo* review. *U.S. Bank*, 583 U.S. at 396 ("[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work."). Further, the order's disregard of constitutional principles of federalism and state sovereignty requires *de novo* review. *See Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 206 (N.D. Cal. 1983) (explaining that where a First Amendment defense to discovery was raised, the court must "review this 'mixed question of law and fact' under the same standard of deference as would apply to a 'pure' question of law"); *U.S. Bank*, 583 U.S. at 396 n.4.

*Second*, Meta argues that the order "placed the burden on Meta to demonstrate control." Doc. 1181, p. 10. However, the order repeatedly analyzed whether there is a "statutory, legal, or administrative rule" that "prohibits [an AG] from accessing the documents of the state agencies at issue." *See*, *e.g.*, Doc. 1117, p. 47. Indeed, when ordering briefing on this issue, the Magistrate Judge ordered the parties to use their limited space to identify state laws prohibiting AGs from accessing state agency documents. Mar. 21, 2024 DMC Tr. at 7:4-9:4. In doing so, the order's legal control analysis placed undue emphasis on the *absence* of state laws precluding AGs' access to state agencies' documents. Meta cites to a single unpublished out-of-circuit order as support for assigning a place of prominence to the *absence* of state law in this equation. Doc. 1181, p. 11 (citing *Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012), *supplemented*, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012)). However, Meta misreads that order, which merely noted that there was no *information* in the record belying a finding of control in that case. *Id.* Here, the Magistrate Judge presumed that Meta had met its burden of demonstrating control and shifted the burden to the AGs to identify

1    state laws rebutting that presumption. Such burden shifting is contrary to Ninth Circuit law. *U.S.*

2    *v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).

3              *Third*, Meta argues that the burden placed on state government by the order is an

4    "unfounded hypothetical." Doc. 1181, p. 12. But the AGs' concerns are already playing out here.

5    Meta has already asked the attorneys prosecuting this case to produce search terms and custodians

6    on behalf of state agencies. But Meta has failed to explain how, absent those agencies' voluntary

7    agreement, the prosecuting attorneys have authority to access the documents of those agencies to

8    determine search terms and custodians. Thus, the attorneys who have entered appearances on

9    behalf of the AGs in this case face an impossible choice: attempt to negotiate discovery on behalf

10   of third-party agencies they do not represent or face sanctions for refusing to do so.[4]

11             Again, imagine that the Court ordered the Covington attorneys representing Meta in this

12   case to negotiate search terms and custodians on behalf of TikTok. The Covington attorneys

13   would surely object because they have no authority to represent TikTok in those negotiations

14   absent TikTok's voluntary agreement.

15             *Fourth*, Meta argues that the cases cited by the AGs are inapposite. Doc. 1181, pp. 11-13.

16   Not so. The AGs' cited cases stand for the helpful proposition (ignored by the order) that many

17   courts faced with the same question have ruled against defendants because AGs "bring suit under

18   their own authority," *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, 2007 WL 9813287, at

19   *4 (D.D.C. May 8, 2007), and "agencies operate outside of the [AG]'s authority," *Am. Express*

20   *Co.*, 2011 WL 13073683, at *3. Moreover, the fact that both parties can draw good-faith

21   distinctions between related caselaw, and this case exposes the truth: the order is unprecedented.

22             *Fifth*, Meta argues "that the AGs represent the States as States, and, by extension, most

23   state agencies." Doc. 1181, p. 14. This argument improperly conflates bringing an independent

24   enforcement action with bringing an action on behalf of a specific state agency. The AGs have

25   _____

26   [4] While some AGs are, as a matter of courtesy, asking their states' agencies to agree to
     discuss this matter, and conferring with Meta regarding its discovery requests of agencies, this
     does not waive any objections to the order's holding that they have legal control over those
27   agencies' documents. And other state agencies have declined to voluntarily produce documents to
     AGs in these efforts, including the California Governor's Office, demonstrating that the AGs'
28   access to the agencies' documents is by no means a matter of right.

1    brought this action in an independent enforcement capacity, not on behalf of their states'

2    agencies. Instead, they bring this action to protect their citizen consumers. Multistate Complaint,

3    Doc. 73-2, ¶¶ 21, 12. Critically, the AGs have not named state agencies as parties to the case and

4    do not seek damages or other monetary recovery on behalf of state agencies.[5] Doc. 685, p. 8.

5         Meta's argument also violates federalism principles by disregarding the sovereign

6    prerogative of each "State and its Legislature to define how governmental entities are to be

7    separate and distinct and how they may relate to one another as a whole." *Am. Express Co.*, 2011

8    WL 13073683, at *2 (citation omitted). Under Meta's "broad and sweeping" argument, every

9    government official in 35 states would be subject to party discovery in this case, including even

10   state court judges. *U.S. v. Novartis Pharms. Corp.*, No. 11CV8196, 2014 WL 6655703, at *9

11   (S.D.N.Y. Nov. 24, 2014) (citation omitted).

12        *Sixth*, Meta argues that the AGs "do not explain why . . . recalcitrant state agencies . . .

13   would comply with a Rule 45 subpoena when they would resist discovery propounded under Rule

14   34." Doc. 1181, p. 15. This argument misses the point. Because the AGs, bringing this case in

15   their independent enforcement authority, do not represent those state agencies, the AGs cannot

16   guarantee that those agencies will comply with Rule 45 subpoenas. Instead, those agencies will

17   need to decide whether to object to the subpoenas in consultation with their own counsel. The

18   very fact that the AGs cannot guarantee agency compliance with Rule 45 subpoenas shows that

19   the AGs do not have control over those agencies' documents.

20        Again, imagine that the AGs asked Meta to produce TikTok's documents through party

21   discovery in this case. Covington would surely object and insist that the AGs issue Rule 45

22   subpoenas. Meta's counsel would not be able to guarantee that TikTok would comply with those

23   subpoenas. But it would nonetheless demand that the AGs follow the proper procedure in

24   attempting to obtain TikTok's documents. Likewise, Meta must comply with the proper

25   procedure to obtain discovery from third parties. Despite the Magistrate Judge reminding Meta

26   that it could issue Rule 45 subpoenas to obtain its desired information from state agencies, it

27        ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
       [5] True, some recovery may end up in general funds—which ultimately fund state
28   agencies—in some states. But that connection is far too attenuated to say that state agencies will
     benefit from this litigation.

waited months to do so. Feb. 22, 2024 DMC Tr. at 37:8-23; Apr. 22, 2024 DMC Tr. at 7:20-9:11; May 6, 2024 Hearing Tr. at 103:9-104:9. And despite having active negotiations with some of these agencies, many of whom had begun producing documents, after the order was issued, Meta informed state agencies that it was holding the Rule 45 subpoenas in abeyance. Meta's own actions have obviated any progress made in negotiations or productions from the recipient agencies. Therefore, Meta cannot say whether Rule 45 subpoenas would be effective because it has abandoned that option.

*Seventh*, Meta argues that "[n]o state agency . . . can lawfully refuse to comply with the Court's discovery order, even when not formally parties to this litigation." Doc. 1181, p. 15 (citing *Cooper v. Aaron*, 358 U.S. 1, 18-19 (1958)). Meta's citation to this civil rights case misses the mark in both substance and tenor. In *Cooper*, the Supreme Court explained the Arkansas governor was obligated to comply with the constitutional requirement to integrate schools regardless of whether he was party to that case—not the same as asserting a non-party must comply with discovery orders.[6]

*Eighth*, Meta argues that the order "relied on many authorities" other than *Perez v. Perry*, No. SA-11-CV-360, 2014 WL 1796661 (W.D. Tex. May 6, 2014) for the principle that a lawyer controls a client's documents, "many of which the States ignore here." Doc. 1181, p. 16. But the order particularly relies on *Perez*—an out-of-circuit case that wields a different standard for control—citing it 74 times. None of the other cases cited in the order cure the improper reliance on *Perez*. *Williams v. Hawn*, held that where an AG defended prison employees, it also had access to Michigan Department of Corrections documents. 2022 WL 22859198, at *2 (W.D. Mich. Aug. 26, 2022). *Love v. New Jersey Dept. of Corr.* is also a prison employee case and uses the incorrect "practical ability" test. 2017 WL 3477864, at *5-6 (D.N.J. Aug. 11, 2017). *Synopsys, Inc. v. Ricoh Co.* also held that a lawyer had control of a private client's documents under the incorrect "practical ability" test. 2006 WL 1867529, at *2 (N.D. Cal. July 5, 2006).[7] Thus, none

---

[6] In any event, the trial court did join the governor as a party before issuing orders against him. *Faubus v. U.S.*, 254 F.2d 797, 803 (8th Cir. 1958).

[7] The order relies on *In re NCAA Student-Athlete Name & Likeness Litig.*, 2012 WL (continued…)

1  of these cases highlighted by Meta stand for the conclusion that a lawyer-client relationship is

2  sufficient to show control under the *Citric Acid* test.

3      *Finally*, Meta argues that "an attorney-client relationship between an AG and an agency

4  supports finding that the AG has legal control over the agency's documents." Doc. 1181, p. 17.

5  This is a fundamental misinterpretation of the attorney-client relationship. Neither Meta nor the

6  order cite to any authority, and the AGs have found none, standing for the broad proposition that

7  a law firm, by virtue of its representation of a client, has on-demand legal control over the client's

8  documents. Meta is careful to point out, without further explanation, that what is good for the

9  goose would *not* be good for the gander. Meta explicitly cautions that this same misinterpretation

10  may not be applied to a private legal services provider. *Id.* In other words, Meta suggests that

11  Covington's representation of TikTok would not give rise to a presumption of legal control of

12  TikTok's documents, but here, the Court *should* treat government attorneys differently by

13  presuming a special relationship between AGs and their agency clients, which Meta argues

14  legally mandates access to documents even in the absence of statutory authority. *Id.* This Court

15  should decline to adopt Meta's arguments here, much less draw such a puzzling distinction.

16  **III. Meta's allegations regarding delay in this matter are inaccurate and misleading.**

17      Meta alleges the AGs have delayed discovery. Doc. 1181, p. 2. These allegations are

18  mostly unrelated to state agencies; are misleading; and do not support affirming the order.

19      *First*, the AGs' actions in this dispute were prompt and consistent with the procedures

20  required by the Magistrate Judge. Moreover, when Meta questioned the adequacy of the AGs'

21  preservation practices, the Magistrate Judge declined to find there had been "even the hint of any

22  kind of spoliation." July 11, 2024 DMC Tr. at 70:17-25. Meta mischaracterizes the AGs'

23  compliance with the Court's required procedures and timelines as undue delay.

24      *Second*, Meta complains about the AGs' efforts to take affirmative discovery. This

25  argument attempts to relitigate the Magistrate Judge's ruling denying Meta's request to

26  prematurely curtail written discovery. Meta also casts doubt on its own stipulation to extend the

27  161240, at *4 (N.D. Cal. Jan. 17, 2012) to assert that *Synopsys* did not necessarily rely on the
practical ability test and is therefore validly analogized to under the *Citric Acid* test. But *NCAA*

28  did not say this, and *Synopsis* employs the wrong standard.

1   parties' agreed upon discovery and case schedule by describing the rescheduling of certain fact

2   depositions as a unilateral decision of the AGs, rather than one necessitated by deadline

3   adjustments the parties had agreed upon. These arguments are misleading and, more importantly,

4   irrelevant: the issue before the Court is whether the order on state agency discovery was "clearly

5   erroneous" or "contrary to law." Fed. R. Civ. P. 72(a).

6       *Finally*, it is irrelevant whether the AGs suggested—much like the PI/SD plaintiffs did—

7   that a streamlined process could replace initial disclosures because the AGs do not have witnesses

8   with direct knowledge of the claims at hand here. Jan. 25, 2024 DMC Tr. at 114-17. Meta also

9   sought to waive its initial disclosures and agreed that "initial disclosures should be waived for all

10  Parties in all three sets of cases." Doc. 548-1 at 5-6. The AGs provided initial disclosures to Meta

11  eight months ago and those disclosures included no information about the state agencies at issue

12  here. Again, this procedural history has no bearing on the challenged order.

13  **IV. State Specific Arguments**

14      **1. Arizona:** Meta misconstrues the Arizona Attorney General's ("AGO") representations

15  related to the Arizona Department of Education ("ADE") and the Governor's Office of Strategic

16  Planning and Budgeting ("OSPB") by claiming that AGO has "stated it has chosen not to

17  represent those agencies." Doc. 1181, p. 18. AGO has not stated this, has not made such a choice,

18  and does not have the ability to do so. OSPB is not represented by AGO; it obtains legal counsel

19  from Counsel for the Governor's Office, over which AGO has not been found to have control by

20  the order. ADE employs its own counsel, and, not by virtue of any choice made by AGO, has not

21  been represented by AGO in connection with this matter at any time, despite Meta's service of a

22  subpoena on ADE in July, as AGO previously avowed would be the case. Doc. 736-1, p. 4; May

23  6, 2024 DMC Tr. at 4-11.)

24      At the very least, the order errs as to Arizona by relying entirely on statutory construction

25  divorced from the fact presented to the Court, unrefuted by Meta, that AGO, not through any

26  choice made by AGO, does not here represent ADE or OSPB.

27      **2. California:** Meta continues to fundamentally misapprehend the import of California's

28  dual-executive structure, in which the Attorney General and Governor are separate and

1   independently elected constitutional officers. "California" has not "threaten[ed] to violate" the

2   order. Doc. 1181, p. 20. Rather, Governor Newsom's office, a non-party and independent

3   executive officer, has simply declined to provide the Attorney General with access to agency

4   documents, as is the Governor's constitutional prerogative. On this, Meta's threatens "waive[r],"

5   *id.*, but the development post-dates the order and eviscerates any notion that the Attorney General

6   "exercise[s] legal control over state agency documents for purposes of discovery." *Id.* at 6. This

7   result is entirely consistent with controlling California authority, which the Attorney General has

8   cited from the outset. *People ex rel. Lockyer v. Superior Ct.*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct.

9   App. 2004) (agencies "are distinct and separate governmental entities, third parties under the

10  discovery statutes"). Meta's contrary protestations—that separate, independent agencies are

11  somehow parties to this law-enforcement action—are legally foreclosed, *see, e.g.*, *id.* at 336, and

12  deride federalism and state sovereignty, *see, e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

13          **3. Colorado:** Colorado stands on its original objections that the order misconstrues state

14  law and misstates the AG's position on privilege. Meta does no more than repeat those errors in

15  its response. Colorado's contention that the AG's office operates in distinct capacities as

16  affirmative law enforcement and agency counsel is not an "artificial distinction" or "false

17  dichotomy"—positions Meta supports only by citation to the flawed order—but is instead a

18  legally accurate description of distinct state laws providing distinct AG authority. Doc. 1168, p.

19  16. Meta claims, without record support, that Colorado has, earlier in this litigation, contradicted

20  its representation that consumer protection attorneys do not represent agencies. Not so. Colorado

21  has been consistent in its averments, and Meta's citations show no different. Doc. 738-1, p. 5

22  (Colorado submitting that agencies would be represented by the AGs office but that "these

23  lawyers would not be members of the prosecution team, but rather lawyers in other divisions of

24  the Attorney General's Office."); Doc. 738-4, p. 1 ("when the AG independently brings a CCPA

25  action, the enforcement team's communications with third parties, including state agencies, are

26  generally not privileged…").

27          **4. Connecticut:** Meta misconstrues a quote from *Bysiewicz v. Dinardo*, 6 A.3d 726 (Conn.

28  2010) to support its erroneous position that the Connecticut Attorney General ("AG") is the

1    exclusive legal representative for state agencies in Connecticut. *See* Doc. 1181, p. 31. The

2    inapposite *Bysiewicz* case stands for the premise that agency commissioners generally are not

3    actively practicing law. The court simply does <u>not</u> hold or imply that the CT AG is the only one

4    who can perform legal services on behalf of state agencies. Susan Bysiewicz was Secretary of

5    State and wanted to run for AG. Bysiewicz argued that serving as Secretary of State should count

6    toward the AG requirement of at least ten years of active law practice. The Connecticut Supreme

7    Court held that "[i]t is reasonable to conclude that the legislature conferred this responsibility on

8    the ["AG"] in recognition of the fact that a state officer responsible for administering a particular

9    statutory scheme typically will not have the legal status or experience to practice law. Thus, it is

10    implicit in [Conn. Gen. Stat.] § 3-125 that the legislature believes that agency heads …generally

11    are capable of carrying out their routine duties without having the high degree of legal skill …that

12    characterizes the practice of law." *Bysiewicz*, 6 A.3d at 748, internal citations omitted.

13        **5. Delaware:** Meta's Opposition is bereft of any response to the specific issues raised by

14    the Delaware AG in the Motion. For example, Meta quotes the order's clearly erroneous

15    interpretation of Title 29, Section 2508(b) of the Delaware Code to claim falsely that the

16    Delaware AG "ignores the Delaware Legislature's intention" in adopting the statute. Doc. 1181,

17    p. 22. The Motion reflects that the Delaware AG's primary focus was the Legislature's stated

18    intent: "that state agencies . . . have the discovery protections afforded to non-parties." Doc. 1168,

19    p. 18 (quoting S.B. 295, https://legis.delaware.gov/BillDetail?LegislationId=109498). This intention

20    is reflected in both the law's plain language and in the Legislature's public synopsis for the bill

21    enacting it. *Id.* Meta failed to acknowledge, let alone address, either the synopsis or the statutory

22    language. Doc. 1181, p. 21-22.

23        Meta also argues that Rule 34 would preempt Section 2508(b). *Id.* at 22. But Delaware

24    (like the AGs more generally) "concedes that Rule 34 governs." Doc. 1168, p. 19. As set forth in

25    the Motion, the question is not whether Rule 34 governs, but whether the Delaware AG has a

26    legal right to "access" documents belonging either to the Governor – the State's "supreme

27    executive" – or the state agencies operating under his direction. *Id.;* Del. Const. Art. III § 1. Meta

28    again sidesteps this issue. Meta and the order suggest that federal preemption means a complete

1  disregard of state law, state sovereignty, and the State's constitutional structure. This is clearly

2  erroneous and should be reversed.

3  **6. Florida:** Although Meta concedes that the Florida AG's action was *not* brought in the

4  name of the State of Florida, it continues to rely on the unreported, vacated *Freyre* opinion, which

5  specifically found the "State" was named as a defendant and held, before being vacated, that the

6  Governor has the authority to obtain state agency documents and information and "therefore has

7  'control' over agency documents for purposes of Rule 34. *Freyre v. Hillsborough Cnty. Sheriff's*

8  *Office*, Case No. 8-13-CV-02873T27TBM, 2016 WL 1029512, at *2 (M.D. Fla. Mar. 9, 2016),

9  *vacated*, 813CV02873T27TBM, 2016 WL 4502463 (M.D. Fla. July 6, 2016). Here, neither the

10  Governor, nor the State, is a party in Florida's action.

11  Meta will not incur additional burden by obtaining agency discovery directly through the

12  Rule 45 subpoenas that it has already issued and discussed with Florida agencies. Further,

13  contrary to Meta's assertion that the Florida AG's representation of agencies is automatic, agency

14  representation by the AG occurs through an optional contractual relationship that requires the

15  consideration, and execution, of a legal services agreement. Doc. 738-7, p. 1. Finally, Florida did

16  not waive but specifically made its argument to the Magistrate that agencies are not required to

17  retain the Florida AG when counsel is needed. *Id*.

18  **7. Georgia:** Georgia statute does not dictate that the Georgia Attorney General's Office

19  ("AGO") has legal control over all agency documents. First, Meta argues that statute does not

20  "expressly restrict" the AGO from accessing agency documents; but state agencies do not have

21  inherent power and instead derive power from the Constitution and from statute—not from the

22  absence of an "express restriction." *See Walker v. Ga. R. & P. Co.*, 146 Ga. 655, 656 (1917)

23  (holding that the Attorney General "has no authority to perform any act not legitimately within

24  the scope of [ ] statutory and constitutional provisions."). Second, Meta does not dispute that its

25  interpretation renders superfluous provisions like O.C.G.A. § 45-15-17 which grant the AGO the

26  power to subpoena agencies. *See R.D. Brown Contrs., Inc. v. Bd. of Educ. of Columbia Cty.*, 280

27  Ga. 210, 212-13 (2006). Finally, Meta does not dispute that its interpretation of Georgia law

28  renders unfeasible the AGO's tasks litigating against state agencies, investigating state agencies,

1   or representing agencies at legal odds with one another. *See Barton v. Atkinson*, 228 Ga. 733, 739

2   (1972) (rejecting interpretations that "would result in unreasonable or absurd consequences not

3   contemplated by the legislature"). It is inexcusable to interpret a sovereign state's statute to upend

4   its legal framework in favor of perceived "efficiency" in a federal court proceeding.

5       **8. Hawaiʻi:** Regardless of the capacity of the Hawaiʻi Attorney General's (HI AG)

6   representation, the HI AG lacks control over key legal decisions for its client agencies. *See Chun*

7   *v. Bd. of Trustees of Employees' Ret. Sys. of State of Hawaii*, 87 Haw. 152, 952 P.2d 1215 (1998).

8   Despite Hawaiʻi case law to the contrary, Judge Kang's Order conflates HI AG's mandatory

9   representation with legal control, and Meta's failure to address this key flaw is telling.

10      Likewise, both the Order and Meta present flawed readings the two cases concerning

11  agency discovery for Hawaiʻi. Not only did the *Lobisch* Court recognize that the "legal right"

12  standard as the applicable standard, *see Lobisch* at *1, both parties asserted arguments under said

13  standard in their respective letter briefs. *See* Brief for Plaintiffs at 3, *id.*, No. CV 20-00370 HG-

14  KJM, (Entry No. 87); Brief for Defendant at 4-5, *id.* (Entry No. 90).

15      Applying the reasoning for other states in *Generic Pharms. (II)* would be inappropriate

16  when Hawaii's framework was never examined, as the parties resolved the discovery dispute

17  outside of Court. There, Hawaiʻi agreed to produce agency discovery because it was explicitly

18  asserting claims on behalf of the agencies involved, unlike the present enforcement action.

19      **9. Idaho:** Meta improperly asserted that the Idaho OAG failed to explain why Judge

20  Kang's holding should be reversed. The Idaho OAG's response was made in addition to the

21  collective briefing. Judge Kang's holding turned on federal case law; issues that were well briefed

22  and explained. It was unnecessary to repeat that analysis. Meta also incorrectly implies the Idaho

23  OAG implicates other state agencies when it brings an enforcement matter under COPPA. The

24  Idaho OAG is enforcing a statute that other Idaho agencies are not authorized to enforce; those

25  entities are not implicated in this action. Finally, Meta improperly assumes that since Idaho has

26  no statutes depriving the Idaho OAG of access to agency documents that it has free access to such

27  documents. Meta's statement is incorrect and is belied by Judge Kang who correctly wrote,

28  "Idaho [OAG] may only demand documents from [state agencies] if explicitly permitted by

1  statute." Doc. 1117, p. 92. Judge Kang also found that Idaho OAG does not have legal control, for

2  the purposes of discovery, over the Idaho agencies in dispute. *Id.* at 92. The Idaho OAG does not

3  have free access to agency documents, even when it represents such agencies. Upholding Judge

4  Kang's order as it relates to Idaho would require the Idaho OAG to exceed the authority granted

5  to it by the Idaho State Legislature.

6       **10. Illinois:** As an initial matter, the factual issues in dispute—the AG's representation of

7  state agencies and the bounds of attorney-client privilege—were not ones the AG affirmatively

8  raised. The Magistrate explicitly ordered the AG to address these issues in one page and

9  subsequently used them as foundational support for his ultimate finding. In both instances, the

10  Magistrate ignored the AG's express representations for his own erroneous version of the facts.

11  First, it is *not* a foregone conclusion that the AG will represent all seven state agencies here. The

12  AG does represent state agencies, absent unique circumstances, when issues are *litigated* in the

13  courtroom, but state agencies receive and respond to *thousands* of subpoenas each year without

14  any involvement by the AG. Second, the AG explained the privilege issue within the dual

15  capacity construct. Where, as here, the AG acts as enforcer, he does not generally represent or act

16  on behalf of state agencies. For purposes of *this* litigation, where no joint effort occurred and no

17  pre-suit communications are known to exist, state agencies are most accurately conceptualized as

18  third parties. *See, generally, Monsanto*, 2023 U.S. Dist. LEXIS 106151 at *14-18.

19       **11. Indiana:** Meta's response advances an inaccurate interpretation of Indiana law on

20  which the Court's ruling rests. While the Attorney General represents agencies in litigation, there

21  are exceptions for each agency identified by Meta, and, importantly, the agencies are not parties

22  to this litigation. Doc. 1117, p. 99 (citing to Ind. Code § 4-6-3-2(a) re: Attorney General having

23  charge of all "civil actions" in the name of the State or any state agency). Meta's argument is

24  incorrect that *Generics II* had materially similar circumstances. *See* Doc. 1181, p. 27. In *Generics*

25  *II* the State sought damages on behalf of the identified agencies, unlike Indiana's position here.

26  The Indiana Attorney General may act as litigation counsel, not in-house counsel, for these

27  agencies, and by conflating these responsibilities, the Court erred.

28       The Court's reading of Indiana's CID statute, Ind. Code § 4-6-3-3, would equally apply to a

finding that Indiana has legal control over Meta's documents, where the 'mechanism' to compel a third party to produce documents is the authority to issue formal process requesting the records during a pre-suit investigation. *Id.* at 100-101 (asserting "the statutory scheme here indicates support (and a legal mechanism for) information sharing between Indiana agencies and the Indiana Attorney General").

**12. Kansas:** What Meta characterizes as a "minor factual misstatement"—that the Kansas Attorney General would represent state agencies in this litigation, when it actually stated exactly the opposite—Doc. 1181 p. 28 was strongly relied upon by the Court in its decision and repeated multiple times throughout the analysis, leading to a clearly erroneous factual finding. Doc. 1117, p. 104-05.

Finally, the Court focused on the statement that an attorney-client privilege would exist between the Kansas Attorney General's Office and the state agencies if such a relationship was established. But such a privilege would arise *if* the AG and agencies entered into an attorney-client relationship, which does not exist at this time. Agencies are able to request representation under Kansas law, but are not required to do so. K.S.A. 75-702(a). Should the Court order the AG to produce discovery from these agencies, other privileges such as attorney work product or common interest may arise. Doc. 738-13, p. 1.

**13. Kentucky:** Meta, like the MJ Order, errs by conflating the KYOAG's role as chief law officer under KRS 15.020 with *legal control* over state agency documents in any and all matters, even where KRS 12.220 controls with respect to agencies' counsel. *See* Ky. Rev. Stat. 12.230. Legal control has not been found to exist when the entities are legally separate and the right to obtain documents upon demand has not been expressly given. *Citric Acid Litig.*, at 1107 (citation omitted). The Kentucky statutory scheme clearly articulates this legal separation as the Kentucky AG and Governor are separately elected officials, and the heads of the agencies subject to Meta's discovery are appointed by the Governor. Ky. Const. § 91; Ky. Const. 70; Ky. Rev. Stat. § 12.040. Additionally, the lack of a bar from accessing agency documents does not give the KYOAG the right to obtain those documents on demand. Despite Meta's argument that the KYOAG paid "short shrift" to the language of Ky. Rev. Stat § 367.160 (Doc. 1181, p. 30),

1   principles of statutory construction cannot permit "cooperation" to be defined to include the right

2   to obtain documents from agencies when other provisions of the statute explicitly provide the

3   specific agencies for which the KYOAG *does* have access to agency documents. Ky. Rev. Stat. §

4   367.160 (2-3). *Expressio unius est exclusio alterius*. *See Hughes v. Wallace*, 118 S.W. 324, 326

5   (Ky. 1939) ("The enumeration of particular things excludes the idea of something else not

6   mentioned").

7       **14. Louisiana:** There are a couple issues with Meta's reply. First, this litigation differs

8   from the *Generic II* (699 F. Supp. 3d at 357) decision in an important way. In *Generic II*, states

9   brought claims on the behalf of certain state agencies. In this litigation, the LA AGO is not

10  bringing any claims on the behalf of any state agencies. Second, the LA AGO is not arguing that

11  consumer protection claims are not torts. Meta has not identified any torts directly involving the

12  identified state agencies in this litigation. The LA AGO has not alleged that Meta committed any

13  torts towards these state agencies, and Meta has not alleged that these state agencies committed

14  any torts against Meta. Once again, even if this suit arises from a tort, it does not arise from a tort

15  that directly involves the listed state agencies and, therefore, La. R.S. 49:257(A) does not apply.

16  Intent, historical use, and common sense show La. R.S. 49:257(A) applies when the tort directly

17  involves an agency. Meta did not cite any state authority that La. R.S. 49:257(A) applies when an

18  agency is not directly involved with the tort claim. That is because there are no reported cases

19  where the statute has been applied to an agency that was not directly involved in the tort.

20      **15. Maine:** Meta does not dispute that the finding of legal control was premised in part on

21  the erroneous holding that the Maine Attorney General is statutorily obligated to represent state

22  agencies in this action. Instead, Meta defends the finding of legal control based on (1) the Maine

23  Attorney General's representation of state agencies in responding to subpoenas issued by Meta

24  and (2) a truncated interpretation of an illustrative statute prohibiting the release of child

25  protective records. The deficiencies of the first premise are explained in the State Attorneys

26  General's common briefing, including the misplaced reliance on decisions in the *Generic*

27  *Pharms*, *Monsanto*, and *Perez* cases. The deficiency of the second premise is that it ignores the

28  plain language of Section 4008, which, contrary to the Order and Meta's contention, does not

1   create an exception to the rule prohibiting release of child protective records allowing release to

2   outside legal counsel, but instead establishes an additional layer of protection "within the

3   department" that limits access to such records to appropriate department personnel and counsel in

4   carrying out child protective functions only. *See* Me. Rev. Stat. Ann. tit. 22, § 4008.

5       **16. Maryland:** Meta misrepresents both the proper party for Maryland, which is the

6   Office of the Attorney General of Maryland (MOAG), and the arguments set forth by MOAG.

7   Meta acknowledges that MOAG occupies a unique role in this litigation but asserts that "a suit

8   brought by an agency on behalf of the State *qua* State is, in substance, a suit by the State itself."

9   Doc. 1181, n.8. This is simply not how Maryland State government or MOAG is structured or

10  authorized to act. When MOAG brings an enforcement action, whether it is an antitrust,

11  securities, consumer protection, or a case under COPPA, such action is not on behalf of all State

12  agencies. MOAG is not enforcing any statute that the other Maryland agencies Meta has

13  identified are charged with implementing and OAG lacks authority to compel those agencies,

14  operating under a different constitutional officer, to produce information. The MOAG has no

15  more control over the documents sought by Meta than counsel to Meta has over documents that

16  are possessed by unrelated third parties also represented by Covington. Meta has offered no

17  authority for the proposition that an attorney controls documents that are in possession of a client

18  otherwise uninvolved in the litigation who is represented by other attorneys at the same law firm.

19      **17. Michigan:** Meta's response to Michigan's position merely elaborates on the point that

20  Michigan's Department of Attorney General may, in the appropriate course and case, represent

21  certain subdivisions of state government. But a duty to represent state entities does not exist in a

22  contextual vacuum; it requires a dispute triggering a request for representation. *See* Mich. Comp.

23  Laws § 14.28 (representation arises as to individual actions). *Potential* representation does not

24  establish custody or control; to hold otherwise puts the cart before the horse.

25      Indeed, applying the Magistrate Judge's order here yields instant proof of its error, as well

26  as the importance of placing the attorney-client relationship into context: For those entities on

27  whom Rule 45 subpoenas were never served, there has been no event triggering a request for

28  representation of any extent. Surely, the Magistrate Judge lacks authority to order a non-party to

enter into an attorney-client relationship—yet, by surprise, the agency is now postured as though it had sued or been sued, contrary to Michigan law placing discretion to undertake the instant litigation exclusively in the hands of the Attorney General. *See Fieger v. Cox*, 734 N.W.2d 602, 613 (Mich. Ct. App. 2007). Even if proper creation of an attorney-client relationship grants attorneys a right of access to client-held documents—which grant of authority Michigan does not concede—short-circuiting that process is untenable as a matter of Michigan law and basic procedure.

**18. Minnesota:** First, Meta erroneously contends this enforcement action was brought on behalf of state agencies. Doc. 1181, p. 1. Not so. To reiterate, this lawsuit seeks to vindicate the public rights of the people of Minnesota; the MN AG does not represent agencies nor does it seek any agency relief. Second, Meta wrongly labels the MN AG as "akin to the State's in-house counsel." *Id.* at 34. But Minnesota's agencies employ their own in-house counsel that are not employed by the MN AG. While MN AG may serve as *outside* counsel for agencies, that separate and distinct function of the office is walled from the attorneys prosecuting this case who *do not* represent nor maintain any attorney-client relationship with such agencies. Indeed, the Minnesota Supreme Court and Minnesota Rules of Professional Conduct explicitly permit confining attorney-client relationships to different divisions and functions of the MN AG due to the AG's unique role. *State v. McLaren*, 402 N.W.2d 535, 543 (Minn. 1987); Minn. R. Prof'l Conduct Preamble. The Order's insistence that this reality is otherwise is clearly erroneous and contrary to the law. Likewise, the Order's interpretation of Minn. Stat. § 13.393 is clear error because that section only applies to "attorneys acting in a professional capacity *for a government entity*." (emphasis added). Here, the only government entity the attorneys are acting in a professional capacity for is the MN AG itself.

**19. Missouri:** Meta ignores the clear text of Missouri law and the position of the Missouri Attorney General ("MOAG") relative to state agencies, which are under control of the Governor. MOAG is not "supervis[ing] agencies in litigation" here. Doc. 1181, p. 35. Missouri state agencies are not parties in this matter. MOAG "is a separate entity" and "bring[s] the instant action exercising its own independent authority" rather than on behalf of any specific agency.

Doc. 1117, p. 144. Instead, Meta wants to convert the mere potential that an agency *might* (but might not) request representation from MOAG in response to a Rule 45 subpoena, and that the MOAG *might* (but might not) decide to represent them, into a finding of actual custody or control over these non-party documents. Potential representation does not establish custody or control. To hold otherwise puts the cart before the horse. It eviscerates the rights of Missouri agencies to retain their counsel of choice (including in-house counsel). It ignores the clear permissive text of Mo. Rev. Stat. § 27.060 (providing that the MOAG "may" choose to appear in actions). That there is no statute affirmatively "depriv[ing] the AG" of control of non-party documents is of no moment. MOAG is not representing those non-parties in this matter and it is Meta's burden to establish control.

**20. Montana:** Montana's position is not that it merely lacks "direct managerial supervision" over the Montana agencies from which Meta seeks discovery. Doc. 1181, p. 46, but that the Montana AG *lacks control over these agencies' documents*, both as a matter of state separation of powers principles and Montana statutory law. The agencies at issue (1) fall under the control of other executive branch officials, (2) their records are agency property, and (3) the Montana AG does not automatically represent the agencies as counsel under state law. Doc. 1168, p. 33. Meta's cited authority is not to the contrary. In *Shelby County*, 2012 WL 6003540, at *3, Tennessee law stated that "'[a]ll legal services required by'" the relevant agencies "'shall be rendered by, or under the direction of, the attorney general'" of Tennessee. Montana has no comparable statute, and indeed, the Montana AG is *not* representing any of the agencies in responding to Meta's discovery requests. Section 2-15-201(4) of Montana Code merely allows the governor to use the Montana AG as counsel for a claim against the state; it does not require the Montana AG to represent any state agency or even prefer that arrangement. And as Montana previously explained. Doc. 1168, pp. 32–33, the order's interpretation of Montana-specific caselaw was in error.

**21. Nebraska:** Meta's opposition continues in its flawed understanding of the practicalities of state government and the role of the Nebraska Attorney General in Nebraska's constitutional structure. Neb. Const. art. IV, § 6 (giving "supreme executive power" to the

1   Governor). Contrary to Meta's contention, Nebraska has never argued that its agencies would not

2   be represented by either agency counsel or by our office. As described in the State's previous

3   briefing, Doc. 738-22, p. 2, state agencies may elect to have the Legal Services and Civil

4   Litigation Bureaus from the Nebraska Department of Justice represent them in responding to

5   third-party subpoenas. That function is distinct, however, from the Consumer Protection Bureau's

6   (CPB) role as enforcers of state law. *Id.* Because of this, the CPB works with state agencies on an

7   arms-length basis unless seeking damages on their behalf. *Id.* Further, even if the CPB did have

8   control, Judge Kang's order and Meta's position blatantly disregard principles of state

9   constitutionalism and respect for federal-state comity. *Supra* at 3.

10       As to the subpoenas issued on state agencies in *U.S. et al. v. Google*, No. 1:23-cv-108-

11   LMB (E.D. Va.), Meta make's Nebraska's own point (at 37). Google never sought to obtain

12   documents from state agencies under Rule 34 party discovery presumably because it viewed those

13   agencies as third parties subject only to Rule 35 subpoenas. The fact that a major technology

14   company, in similarly structured state attorneys general litigation, did not even attempt to use

15   party discovery as a mechanism to collect documents from state agencies is highly instructive of

16   the proper approach when it comes to this case: Meta should serve Rule 45 subpoenas on state

17   agencies.

18       **22. New Jersey:** Meta's response continues to conflate the NJ AG's role as counsel with

19   his role as enforcer. It claims "no statutory support" exists for this dual authority, but state law

20   expressly establishes these roles. *Compare* N.J. Stat. § 52:17A-4(d) and (h) (affirmative civil

21   enforcement), *with* (g) (counseling role); *see also In re Advisory Comm. On Prof'l Ethics Op.*

22   *621*, 608 A.2d 880, 890 (1992) (NJ state government is "so varied, so multifaceted, so extensive

23   that to regard it as one unitary monolithic employer/client is unrealistic"). Likewise, Meta's cite

24   to N.J. Stat. § 52:17A-4(c) conveniently omits the part of the provision that limits the AG's

25   authority to "control" litigation to when he is acting as counsel to the State as a *party* or was

26   tasked by the other branches to decide a legal issue "submitted to him." *Id*. As neither is true here,

27   Meta—who bears the burden, not the NJ AG—fails to meet the Ninth Circuit's legal control test.

28   The NJ AG brought this action in his own name, with the Acting Director of DCA, to vindicate

1   claims they are uniquely authorized to bring. Because the Magistrate Judge's decision effectively

2   directs the AG to obtain documents he has no actual control over, from nonparty state agencies

3   who can neither enforce nor benefit from this litigation, it should be reversed.

4       **23. New York:** Meta's recitation of N.Y. Exec. Law §63(1) is incomplete: the OAG shall

5   "have charge and control of all legal business of the departments and bureaus of the state… in

6   order to protect the interest of the state." The OAG is not creating an unwritten exception: the

7   statute grants OAG representational authority in circumstances where it protects the interests of

8   the state, and Meta has not shown that OAG will conclude that interest is served here. The OAG's

9   comment that it *may* represent the state agencies at issue expressly noted that each entity would

10  have discretion over its representation—if an agency requested OAG representation, there would

11  be an assessment of how representation may protect the interests of the state. Doc. 738-1, p. 20.

12  Meta misplaces its reliance on a New York appellate case, which merely rejected a party's

13  argument that a state agency could not invoke attorney-client privilege in a case where OAG's

14  representation of an agency was undisputed. *See Morgan v. N.Y. State Dep't of Envt'l Cons.*, 9

15  A.D.3d 586, 587 (3d Dep't 2004). And courts substantively analyzing this issue have found that

16  the OAG does not gain control of agency documents simply by suing on behalf of the state. *See*

17  *U.S. v. Novartis Pharmaceuticals Corp.*, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014).

18      **24. North Carolina:** Meta's central argument for North Carolina is that state law

19  mandates that the AG will represent agencies in responding to a subpoena. This is legal error.

20  Although North Carolina statutes identify the AG as counsel for all state entities, the fact that all

21  state entities *can* rely on the AG as counsel does not mean that they are *required* to do so for

22  every legal matter, including responding to subpoenas. Doc. 1168, pp. 36-37. Nothing in Meta's

23  brief proves otherwise. *First*, though Meta fixates on N.C. Gen. Stat. § 147-17, that statute relates

24  only to an agency's decision to hire "private counsel" (*i.e.*, outside counsel). *See id.* § 114-2.3(d)

25  (defining "private counsel"). It has nothing to do with whether agencies can use their own in-

26  house counsel for subpoena requests and similar legal matters. *Second*, N.C. Gen. Stat. § 114-2

27  simply lists the duties of the AG—again, the fact that the AG has a responsibility to serve as

28  counsel for state agencies does not necessarily mean that those agencies have an obligation to use

1    the AG for all legal matters, including subpoena responses. Because neither of these statutes

2    *requires* agencies to use the AG as counsel in responding to a subpoena, the Court was wrong to

3    conclude that the AG necessarily enjoys "legal control" over all agency documents. He does not.

4        **25. North Dakota:** Meta's argument that because NDAG has the authority to sue on

5    behalf of state agencies, he must be bringing *this case* on behalf of state agencies, is unsound. N.

6    D. Cent. Code. § 54-12-17 provides the "consumer protection and antitrust division … shall act to

7    enforce the consumer fraud laws," and in this case the NDAG is acting in a *parens patriae* and

8    sovereign capacity to protect North Dakota's citizens and not on behalf of state agencies. The

9    NDAG would not be representing any other state agency relating to this matter *but for* Meta's

10   issuance of the Rule 45 Subpoenas. Since Rule 34 does not impose any obligation on non-parties,

11   *see* F. R. Civ. P 34(c), the state agencies do not have a legal obligation to cooperate with the

12   consumer protection and antitrust division. Meta's argument that "[n]o statute deprives the AG of

13   access to agency documents" does not carry its burden under Rule 34, because in state

14   government, a lack of prohibition on access does not equal a right to access, as a government

15   official only has such powers as prescribed in law. *See e.g.* N.D. Const. Art. V, §2. Control under

16   *In re Citric Acid Litig.*, requires a "legal right to obtain documents upon demand," and attempting

17   to create such a right via order is clearly erroneous and contrary to law. 191 F.3d 1090.

18       **26. Ohio:** Contrary to Meta's assertions, Ohio does not concede that the Attorney General

19   shall be legal counsel for all state agencies identified by Meta in discovery requests in this matter.

20   Conversely, Ohio used its limited space in the Objection to explain how the Magistrate's reliance

21   on Ohio antitrust statutes and unreported, unrelated caselaw was clearly erroneous when applied

22   to this case brought forth under Ohio's Consumer Protection Statute. Further, the Magistrate's

23   Order was contrary to law established by Ohio R.C. §109.02. While the statute states that,

24   generally speaking, the Attorney General shall be legal counsel for state agencies, this language

25   does not compel the Attorney General to bring every legal action that he files to be on behalf of

26   every state agency that is under the Office of the Governor's control pursuant to the executive

27   structure created by the Ohio Constitution. See Ohio Const. Art. III §5, and R.C. §121.02, 121.03.

28   For these reasons and due to the fact that the Ohio Attorney General lacks control over agency's

documents, Ohio asserts that we are not legal counsel for all state agencies in this matter and that we cannot compel production, nor should we be involved in responding to what should appropriately be defined as third-party discovery.

**27. Pennsylvania:** Despite claims of offering no authority, Pennsylvania has continually pointed to the Commonwealth Attorney's Act ("CAA") where the legislature gave the AG decision making authority regarding agency representation. 71 Pa. Stat. Ann. §732-204(c). It is a "cardinal rule that a statute is to be read as a whole…since the meaning of statutory language, plain or not, depends on context." *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004). Basic statutory construction principles require the CAA be read in its entirety, including the legislature's intent. *Id. see also Commonwealth v. Carsia*, 517 A.2d 956, 958 (Pa. 1986)(citing the 1978 *Joint State Gov't Com Report,* which in pertinent part states, "[P]ossibly most significant**,** the [AG] is authorized to delegate…when it is most efficient or otherwise in the best interests of the Commonwealth.").[8] Like Meta's argument, the MDJ order stops at the first sentence of §732-204(c), and errs by mandating OAG representation of the agencies. The remainder of §204(c), interpreted along with the Legislature's intent, dictate otherwise.

**28. Rhode Island:** Defendant, like the Order, ignores the plain language of R.I. Gen. Laws § 42-9-6 which leaves it to agency discretion to "request" that the Rhode Island Department of Attorney General ("RIAG") represent them or to bring claims on their behalf. *Cf. O'Rourke v. Power*, 690 A.2d 342, 344–45 (R.I. 1997) ("[A]n attorney is not presumed to represent *all* state agencies, boards, and departments merely because he or she represents a *particular* state agency, board, or department."). Additionally, to correct Defendant's assertions in fn.23, in *State v. BTTR LLC* the RIAG is currently prosecuting a Deceptive Trade Practices Act claim (as it is here) and served a third-party subpoena (attached hereto as Exhibit 1) on a state agency seeking information in support of that claim. And like in any other civil law enforcement action brought solely by the Attorney General, the RIAG would likewise issue a Fed. R. Civ. P. 45 subpoena to any state agency were it to seek discovery as part of this litigation.

---

[8] *Joint State Government Commission*, "Office of Elected Attorney General: Final Report," pg. 10 (Sept. 1, 1978), available at https://tinyurl.com/mvp52eua.

**29. South Carolina:** Meta sets aside the most recent and specific articulation of South Carolina law on this matter and continues to rely on *State of South Carolina v. Purdue Pharma, L.P.*, No. 2017-CP-40-04872, 2019 WL 3753945 (S.C. Com. Pl. July 05, 2019), decided before proviso 59.16 was passed and thus no longer good law in South Carolina.[9] Doc. 1181, p. 43. Meta also emphasizes that federal law controls the question, but then relies solely on older and vaguer statutes. Meta offers no substantive reasons to cast off the controlling law at issue. *Id*. The South Carolina Attorney General is not, in fact, choosing to ignore any authorities, but instead properly considering the most recent, specific, and relevant authority that bears on the issue of whether the South Carolina Attorney General has control over certain state agency documents. The other provisions of South Carolina law cited by Meta are simply no longer pertinent. The South Carolina General Assembly has clearly and unequivocally set forth how the government of the state operates on this exact question, and this cannot be ignored or waived off by references to federal law that are in fact solely references to inapposite state law.

**30. Virginia:** Meta's response to the Commonwealth's argument persists in its misapprehension of the role of the Office of the Attorney General ("OAG") in the present action, relative to the OAG's representation of state agencies. Contrary to its statement that the Commonwealth "never grapples with" its acknowledgment that the OAG would represent agencies, Doc. 1181, p. 45, Virginia's opposition pointedly argues that this fact is inapposite. Pursuant to the Virginia Consumer Protection Act, the OAG is empowered to bring an action to protect "the consuming public." Va. Code § 59.1-197; *see also* Va. Code §§ 59.1-203, 259.1-206. This authority is separate and distinct from any statutory mandate to represent state agencies, as the Commonwealth has articulated. Moreover, Meta's statement that "[n]o statute deprives the AG of access to agency documents," Doc. 1181, p.45, misunderstands the role of the OAG as

---

[9] The SCAG reiterates that under the current laws of South Carolina, when the Attorney General brings an enforcement action as he has against Meta, he acts in the "public interest of the State of South Carolina and not as the legal representative or attorney of any department or agency of state government[.]" 2024-25 Appropriation Act Part 1B Section 59.16. "Departments, agencies, or boards are not parties to these actions, and the documents or electronically-stored information of such departments, agencies, or boards are not in the possession, custody, or control of the Attorney General." *Id.*

counsel, and ignores that no statute *authorizes* the OAG to access those documents, either. Access and legal control of a client's documents is not a presumed element of the attorney-client relationship; the same is true when the attorney is the OAG, and the client is a state agency.

**31. Washington:** Meta's dismissal of the role state agencies played in *Geo* highlights how it conflates party and non-party discovery. Here, Meta is asking for party-like discovery from non-party state agencies. The court in *Geo* permitted such discovery from state agencies that played a party-like role due to affirmative defenses. *Wash. v. GEO Grp., Inc.,* 2018 WL 9457998 at *3 (W.D. Wash. Oct. 2, 2018). *Geo* should not be expanded to permit party discovery from state agencies that play no party-like role. Meta's response also ignores the State's related discussion of *Wilson*, acknowledging the importance of this distinction. As the State discussed, *Wilson* involved state agencies that were direct parties and closely related to direct parties. *Wilson v. Wash. et al.,* WL 518615, Doc. 22, at 6-14. That is not the case here. As such, the reasoning in *Geo* and *Wilson* are not applicable.

**32. West Virginia:** Meta still incorrectly assumes that because the Attorney General may *request* an agency's cooperation when he represents that *agency* in litigation that he can in turn *demand* agency obedience when he separately represents the *State*. Yet Meta never explains that obvious disconnect—let alone support it with West Virginia authority. In a footnote, Meta even appears to suggest that the Attorney General can somehow seize agency documents and produce them against his sometimes-clients' express instructions, Doc. 1181, p. 46 n.26, a remarkable (and unsupportable) proposition under just about any law. *Contra, e.g.*, *Wallace v. Davis*, 362 F.3d 914, 920 (7th Cir. 2004) (providing "legal assistance … differs from an entitlement (let alone an obligation) to override a client's instructions"). And though it insists otherwise, Meta's position folds together the Attorney General's distinct constitutional responsibilities to represent the State and the State's agencies—even though it seems to concede those roles must be separate. Lastly, Meta continues to muddle the issue of attorney-client privilege. If Meta has concerns with privilege, it may raise them at the appropriate time; it may not transform those concerns into a means to dragoon the Attorney General into asserting authority over documents he does not have or control.

**33. Wisconsin:** As to Wisconsin, both Meta and the Order rely on the same clearly erroneous conclusion, namely that the Wisconsin Attorney General ("WI AG") admitted he is representing the Governor in pursuing this lawsuit. Doc. 1181 p. 47; Doc. 1117 p. 243. To emphasize: he did not, and he does not. To the contrary, the statute Meta cites, Wis. Stat. § 165.25(1m), provides that the governor may request that the WI AG represent "the state" **or** specific state agencies, officials, or employees. In this case, the WI AG represents only the state, not the governor and not any other state agency. And while the governor's pre-suit communications with the WI AG regarding a request under § 165.25(1m) may be privileged, a request from the governor that the WI AG represent the state in a lawsuit does not create an ongoing attorney-client relationship for purposes of that case. This flawed premise underlies the Order's entire analysis as to Wisconsin.

Indeed, neither Meta nor the Order cites any alternative basis for concluding the WI AG has a legal right to obtain records from other agencies, and Wisconsin law demands there be statutory authority for the WI AG's actions. *See State v. City of Oak Creek*, 232 Wis. 2d 612, 634 (2000); *State v. Snyder*, 172 Wis. 415, 417 (1920) ("In this state the Attorney General has no common–law powers or duties.") In these respects, the Order is clearly erroneous and contrary to law, and must be set aside.

**V. Conclusion**

Meta's attempt to seek state agency discovery is a thinly veiled effort to introduce inefficiencies and delay by subjecting 275 state agencies to party discovery, despite Meta abandoning its efforts to obtain information from more than half of those agencies using Rule 45 subpoenas. Meta's arguments seeking to bolster the challenged order are unsupported by the facts, Ninth Circuit authority, and state laws. The AGs ask the Court to grant their Motion for Relief from the order and to direct Meta to pursue any discovery it wishes to take from non-party state agencies through Rule 45. The AGs further ask the Court to reject Meta's request to go further than the Magistrate Judge did and hold that state agencies are parties to this proceeding.

1   Dated: October 4, 2024                                      Respectfully submitted,

2   **KRIS MAYES**                                              **ROB BONTA**
    Attorney General                                           Attorney General
3   State of Arizona                                           State of California

4   */s/ Laura Dilweg*                                         */s/ Megan O'Neill*
5   Laura Dilweg (AZ No. 036066, CA No. 260663)                Nicklas A. Akers (CA SBN 211222)
    Chief Counsel - Consumer Protection and                    Senior Assistant Attorney General
6   Advocacy Section                                           Bernard Eskandari (CA SBN 244395)
    Nathan Whelihan (AZ No. 037560, CA No.                     Emily Kalanithi (SBN 256972)
7   293684), *pro hac vice*                                    Supervising Deputy Attorneys General
    Assistant Attorney General                                 Nayha Arora (CA SBN 350467)
8   Arizona Attorney General's Office                          Megan O'Neill (CA SBN 343535)
9   2005 North Central Avenue                                  Joshua Olszewski-Jubelirer
    Phoenix, AZ 85004                                          (CA SBN 336428)
10  Phone: (602) 542-3725                                      Marissa Roy (CA SBN 318773)
    Fax:    (602) 542-4377                                     Brendan Ruddy (CA SBN 297896)
11  Laura.Dilweg@azag.gov                                      Deputy Attorneys General
    Nathan.Whelihan@azag.gov                                   California Department of Justice
12                                                             Office of the Attorney General
13  *Attorneys for Plaintiff State of Arizona*                 455 Golden Gate Ave., Suite 11000
                                                               San Francisco, CA 94102-7004
14                                                             Phone: (415) 510-4400
    **PHILIP J. WEISER**                                       Fax: (415) 703-5480
15  Attorney General                                           megan.oneill@doj.ca.gov
    State of Colorado
16
                                                               *Attorneys for Plaintiff the People of the State*
17  */s/ Bianca E. Miyata*                                     *of California*
    Bianca E. Miyata (CO Reg. No. 42012),
18  *pro hac vice*
    Senior Assistant Attorney General
19  Lauren M. Dickey (CO Reg. No. 45773)
    First Assistant Attorney General
20  Elizabeth Orem (CO Reg. No. 58309)
21  Assistant Attorney General
    Colorado Department of Law
22  Ralph L. Carr Judicial Center
    Consumer Protection Section
23  1300 Broadway, 7th Floor
    Denver, CO 80203
24  Phone: (720) 508-6651
25  bianca.miyata@coag.gov

26  *Attorneys for Plaintiff State of Colorado, ex rel.*
    *Philip J. Weiser, Attorney General*
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Lauren H. Bidra*
Lauren H. Bidra
(CT Juris No. 440552), *pro hac vice*
Special Counsel for Media and Technology
 Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Marion M. Quirk*
Owen Lefkon
Director of Fraud and Consumer Protection
Marion Quirk, *pro hac vice*
Director of Consumer Protection
Ryan T. Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Deputy's Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8800
Marion.Quirk@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**ASHLEY MOODY**
Attorney General
State of Florida

*/s/ Victoria Ann Butler*
Victoria Ann Butler (FL Bar No. 861250),
*pro hac vice*
Director of Consumer Protection Litigation
3507 E. Frontage Road, Suite 325
Tampa, FL 33607
Telephone: (813) 287-7950
Victoria.butler@myfloridalegal.com

John M. Guard (FL Bar No. 374600),
*pro hac vice*
Chief Deputy Attorney General
PL-01 The Capitol
Tallahassee, FL 32399
John.guard@myfloridalegal.com

Nicholas J. Weilhammer (FL Bar No. 479322),
*pro hac vice*
Associate Deputy Attorney General for
Enforcement
PL-01 The Capitol
Tallahassee, FL 32399
Telephone: (850) 414-3861
Nicholas.weilhammer@myfloridalegal.com

Donna Cecilia Valin (FL Bar No. 96687),
*pro hac vice*
Special Counsel, Assistant Attorney General
135 West Central Blvd.
Orlando, FL 32801
Telephone: (407) 316-4840
Donna.valin@myfloridalegal.com

Karen E. Berger (FL Bar No. 72991)
*pro hac vice*
Special Counsel, Assistant Attorney General
110 SE 6th Street, 10th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 712-4600
Karen.berger@myfloridalegal.com

*Attorneys for Office of the Attorney General,
State of Florida, Department of Legal Affairs*

1   **CHRISTOPHER M. CARR**
2   Attorney General
    State of Georgia
3
    */s/ Melissa M. Devine*
4   Melissa M. Devine (GA Bar No. 403670),
    *pro hac vice*
5   Assistant Attorney General
6   Office of the Attorney General of the State of
    Georgia
7   2 Martin Luther King Jr. Drive, SE, Ste. 356
    Atlanta, GA 30334
8   Phone: (404) 458-3765
    Fax: (404) 651-9108
9   mdevine@law.ga.gov
10
    *Attorneys for Plaintiff State of Georgia*
11
12  **ANNE E. LOPEZ**
    Attorney General
13  State of Hawai'i
14
    */s/ Christopher T. Han*
15  Bryan C. Yee (HI JD No. 4050),
    *pro hac vice*
16  Supervising Deputy Attorney General
    Christopher T. Han (HI JD No. 11311),
17  *pro hac vice*
18  Deputy Attorney General
    Department of the Attorney General
19  Commerce and Economic Development Division
    425 Queen Street
20  Honolulu, Hawai'i 96813
    Phone: (808) 586-1180
21  Bryan.c.yee@hawaii.gov
22  Christopher.t.han@hawaii.gov
23  *Attorneys for Plaintiff State of Hawai'i*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

*/s/ Nathan Nielson*
Nathan H. Nielson (ID Bar No. 9234),
*pro hac vice*
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
nathan.nielson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

24
25
26
27
28

1   **KWAME RAOUL**
2   Attorney General
    State of Illinois

3    /s/ Matthew Davies
4   Susan Ellis, Chief, Consumer Protection Division
    (IL Bar No. 6256460)
5   Greg Grzeskiewicz, Chief, Consumer Fraud
    Bureau (IL Bar No. 6272322)
6   Jacob Gilbert, Deputy Chief, Consumer Fraud
    Bureau (IL Bar No. 6306019)
7   Adam Sokol, Consumer Counsel, Consumer Fraud
    Bureau (IL Bar No. 6216883)
8   Matthew Davies, Assistant Attorney General,
9   Consumer Fraud Bureau (IL Bar No. 6299608), *pro
    hac vice*
10  Emily María Migliore, Assistant Attorney General,
    Consumer Fraud Bureau (IL Bar No. 6336392)
11  Kevin Whelan, Assistant Attorney General,
    Consumer Fraud Bureau (IL Bar No. 6321715), *pro
12  hac vice*
13  Office of the Illinois Attorney General
    115 S. LaSalle Street
14  Chicago, Illinois 60603
15  312-814-2218
    Susan.Ellis@ilag.gov
16  Greg.Grzeskiewicz@ilag.gov
    Jacob.Gilbert@ilag.gov
17  Adam.Sokol@ilag.gov
    Matthew.Davies@ilag.gov
18  Emily.Migliore@ilag.gov
    Kevin.Whelan@ilag.gov
19
20  *Attorneys for Plaintiff the People of the State of
    Illinois*
21

**KRIS W. KOBACH**
Attorney General
State of Kansas

/s/ Sarah M. Dietz
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**LIZ MURRILL**
Attorney General
State of Louisiana

/s/ Asyl Nachabe
Asyl Nachabe (LA Bar No. 38846),
*pro hac vice*
L. Christopher Styron (LA Bar No. 30747),
*pro hac vice*
Assistant Attorneys General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov
StyronC@ag.louisiana.gov

*Attorneys for State of Louisiana*

22
23
24
25
26
27
28

1

**RUSSELL COLEMAN**

2

Attorney General
Commonwealth of Kentucky

3

/s/ *J. Christian Lewis*

4

J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*

5

Philip Heleringer (KY Bar No. 96748),
*pro hac vice*

6

Zachary Richards (KY Bar No. 99209),
*pro hac vice*

7

Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*

8

Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*

9

Assistant Attorneys General

10

1024 Capital Center Drive, Ste. 200

11

Frankfort, KY 40601
Christian.Lewis@ky.gov

12

Philip.Heleringer@ky.gov
Zach.Richards@ky.gov

13

Daniel.Keiser@ky.gov

14

Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300

15

Fax: (502) 564-2698

16

*Attorneys for Plaintiff the Commonwealth of*
*Kentucky*

17

18

19

20

21

22

23

24

25

26

27

28

**AARON M. FREY**

Attorney General
State of Maine

/s/ *Michael Devine*

Michael Devine, Maine Bar No. 5048,
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8829
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

**KEITH ELLISON**

Attorney General
State of Minnesota

/s/ *Caitlin Micko*

Caitlin Micko (MN Bar No. 0395388)
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its*
*Attorney General, Keith Ellison*

STATE ATTORNEYS GENERAL'S REPLY IN SUPPORT MOTION FOR RELIEF FROM
NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE
4:22-md-03047-YGR: 4:23-cv-05448-YGR; 4:23-cv-05885-YGR; 4:24-cv-00805-YGR

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney
General of Maryland*


**DANA NESSEL**
Attorney General
State of Michigan

*/s/ Daniel J. Ping*
Daniel J. Ping (P81482), *pro hac vice*
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
517-335-7632
PingD@michigan.gov

*Attorneys for Plaintiff State of Michigan*


**ANDREW BAILEY**
Attorney General
State of Missouri

*/s/ Michael Schwalbert*
Michael Schwalbert, *pro hac vice*
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Attorney for Plaintiff State of Missouri, ex rel.
Andrew Bailey, Attorney General*


**AUSTIN KNUDSEN**
Attorney General
State of Montana

*/s/ Anna K. Schneider*
Anna K. Schneider
Montana Attorney General's Office
Special Assistant Attorney General
Senior Counsel
Office of Consumer Protection
P.O. Box 201405
Helena, MT 59620-1405
(406) 444-4500
anna.schneider@mt.gov

David H. Thompson
Michael W. Kirk
Brian W. Barnes
Megan M. Wold
Athanasia O. Livas
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
dthompson@cooperkirk.com

*Council for Plaintiff, State of Montana*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Colin P. Snider*
Colin P. Snider (NE #27724)
Assistant Attorney General
*pro hac vice*
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-3840
Email: michaela.hohwieler@nebraska.gov
Email: colin.snider@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*


**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*pro hac vice*
Section Chief, Deputy Attorney General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorney for Plaintiffs Matthew J. Platkin, Attorney
General for the State of New Jersey, and Cari Fais,
Acting Director of the New Jersey Division of
Consumer Affairs*

**LETITIA JAMES**
Attorney General
State of New York

*/s/ Christopher D'Angelo*
Christopher D'Angelo, Chief Deputy Attorney
General, Economic Justice Division
(NY Bar No. 4348744), *pro hac vice*
Christopher.D'Angelo@ag.ny.gov
Clark Russell, Deputy Chief, Bureau of
Internet and Technology
(NY Bar No. 2848323), *pro hac vice*
Clark.Russell@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
Nathaniel.Kosslyn@ag.ny.gov
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
(212) 416-8262

*Attorneys for Plaintiff the People of the State
of New York*

1

**JOSHUA H. STEIN**
Attorney General
State of North Carolina

2

3

*/s/ Kevin Anderson*
Kevin Anderson (N.C. Bar No. 22635),
*pro hac vice*
Senior Counsel for Consumer Protection and
Multistate Litigation
Sarah G. Boyce
Deputy Attorney General & General Counsel
Jasmine S. McGhee
Senior Deputy Attorney General
Director, Consumer Protection Division
Josh Abram
Kunal Choksi
Special Deputy Attorneys General
Charles G. White
Assistant Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
kander@ncdoj.gov

4

5

6

7

8

9

10

11

12

13

14

15

16

*Attorneys for Plaintiff State of North Carolina*

17

18

19

20

21

22

23

24

25

26

27

28

**DAVE YOST**
Attorney General
State of Ohio

*/s/ Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999),
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost*

**ELLEN F. ROSENBLUM**
Attorney General
State of Oregon

*/s/ Jordan M. Roberts*
Jordan M. Roberts (Oregon Bar No. 115010),
*pro hac vice*
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone:    (971) 673-1880
Facsimile:    (971) 673-1884
E-mail: jordan.m.roberts@doj.state.or.us

*Attorneys for State of Oregon, ex rel. Ellen F. Rosenblum, Attorney General for the State of Oregon*

1

**DREW H. WRIGLEY**                          **ALAN WILSON**
2  Attorney General                          Attorney General
State of North Dakota                        State of South Carolina
3
*/s/ Elin S. Alm*                            */s/ Anna C. Smith*
4  Elin S. Alm, *pro hac vice*               C. Havird Jones, Jr.
(ND Bar No. 05924)                           Senior Assistant Deputy Attorney General
5  Director/Assistant Attorney General       Jared Q. Libet (S.C. Bar No. 74975),
Christopher G. Lindblad, *pro hac vice*      *pro hac vice*
6  (ND Bar No. 06480)                        Assistant Deputy Attorney General
Assistant Attorney General                   Anna C. Smith (SC Bar No. 104749),
7  Consumer Protection and Antitrust Division *pro hac vice*
8  Office of Attorney General                Assistant Attorney General
1720 Burlington Drive, Suite C               Clark C. Kirkland, Jr. (CA SBN 272522)
9  Bismarck, ND 58504-7736                   Assistant Attorney General
Telephone (701) 328-5570                     **OFFICE OF THE ATTORNEY**
10 ealm@nd.gov                               **GENERAL OF SOUTH CAROLINA**
clindblad@nd.gov                             P.O. Box 11549
11 *Attorneys for Plaintiff State of North Dakota, ex rel.* Columbia, South Carolina 29211
12 *Drew H. Wrigley, Attorney General*       Tel: (803) 734-0536
annasmith@scag.gov
13
**MICHELLE A. HENRY**                        *Attorneys for Plaintiff the State of South*
14 Attorney General                          *Carolina, ex rel. Alan M. Wilson, in His*
Commonwealth of Pennsylvania                 *Official Capacity as*
15                                            *Attorney General of the State of South*
16 */s/ Timothy R. Murphy*                    *Carolina*
Timothy R. Murphy
17 Senior Deputy Attorney General
(PA Bar No. 321294), *pro hac vice*          **MARTY J. JACKLEY**
18 Email: tmurphy@attorneygeneral.gov        Attorney General
19 Jonathan R. Burns                         State of South Dakota
Deputy Attorney General
20 (PA Bar No. 315206), *pro hac vice*       */s/ Jessica M. LaMie*
Email: jburns@attorneygeneral.gov           By: Jessica M. LaMie (SD Bar No. 4831),
21 Pennsylvania Office of Attorney General   *pro hac vice*
Strawberry Square, 14th Floor                Assistant Attorney General
22 Harrisburg, PA 17120                      1302 East Highway 14, Suite 1
23 Tel: 717.787.4530                         Pierre, SD 57501-8501
Telephone: (605) 773-3215
24                                            Jessica.LaMie@state.sd.us
*Attorneys for Plaintiff the Commonwealth of*
25 *Pennsylvania*                            *Attorneys for Plaintiff State of South Dakota*
26
27
28

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

*/s/ Joelle E. Gotwals*
Steven G. Popps
Chief Deputy Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr.
Senior Assistant Attorney General and Section Chief
Joelle E. Gotwals (VSB No. 76779),
*pro hac vice*
Assistant Attorney General
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:     (804) 786-8789
Facsimile:     (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia*
*ex rel. Jason S. Miyares, Attorney General*

**PATRICK MORRISEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267),
*pro hac vice*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia,*
*ex rel. Patrick Morrisey, Attorney General*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Colin R. Stroud*
Colin R. Stroud
Assistant Attorney General
WI State Bar #1119457, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224
stroudcr@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ROBERT W. FERGUSON**
Attorney General
State of Washington

*/s/ Alexandra Kory*
Alexandra Kory (WA Bar No. 49889),
*pro hac vice*
Joseph Kanada (WA Bar No. 55055),
*pro hac vice*
Rabi Lahiri
Gardner Reed
Assistant Attorneys General
Washington State Office of the Attorney
General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 389-3843
Alexandra.Kory@atg.wa.gov

*Attorneys for Plaintiff State of Washington*