# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF ON PLAINTIFFS' RFP NOS. 16 AND 18**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendants Google LLC and YouTube, LLC ("YouTube") respectfully submit this letter brief regarding a dispute as to YouTube's amended responses to Plaintiffs' Request for Production of Documents Nos. 16 and 18.[1]

Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference before filing this brief. The final conferral was on September 30, 2024, and was attended by lead trial counsel for the Parties involved in the dispute. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

This document is provisionally filed under seal, pursuant to the Order Granting Motion to File Under Seal: Setting Sealing Procedures. Dkt. 341.

Attached as **Exhibit A** is YouTube's Amended Responses and Objections to Plaintiffs' Request for Production Set 2, which includes Nos 16 and 18.

Dated: October 7, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between YouTube and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-DiscoveryStanding-Order-v1.2-2023_06_01-1.pdf.

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY LLP**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

*By: /s/ Christopher Chiou*
Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (State Bar No. 309075)
Samantha A. Machock (State Bar No. 298852)
WILSON SONSINI GOODRICH & ROSATI

One Market Plaza, Spear Tower, Suite 3300 San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
Matthew K. Donohue
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google LLC*

**WILLIAMS & CONNOLLY LLP**

By: /s/ *Joseph G. Petrosinelli*
Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashely W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google LLC*

**MORGAN LEWIS & BOCKIUS, LLP**

By: /s/ *Brian Ercole*
Brian Ercole (pro hac vice)
brian.ercole@morganlewis.com
Morgan Lewis & Bockius, LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
Morgan Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

*Attorneys for Defendants YouTube, LLC, Google LLC*

## **ATTESTATION**

I, Christopher Chiou, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 7, 2024

                                              By:  */s/  Christopher Chiou*
                                                   Christopher Chiou

## **PLAINTIFFS' POSITION**

Plaintiffs move to compel production of responsive documents to RFP Nos. 16 and 18. As set forth below, Plaintiffs' compromise positions on these requests are narrowly tailored to obtain relevant discovery, proportional to the needs of the case. In contrast, YouTube's refusals are unreasonable: YouTube's assertion that the requested discovery is irrelevant is belied by the plain allegations in the complaint, and any claimed undue burden is wholly unsubstantiated.

As an initial matter, YouTube states relevant discovery should be precluded at "this late stage of document production," implying delay on Plaintiffs' part. To be clear, RFP Nos. 16 and 18 were served as part of Set 2 in December 2023 and YouTube's initial responses were provided in February 2024. Thereafter, the Parties met and conferred, and YouTube served amended responses to RFP Sets 1-7 on July 3, 2024. Following review of these bulk amendments, Plaintiffs promptly requested meet and confers, with discussion of RFP Nos. 16 and 18 occurring on July 29, 2024. For the next *two months*, YouTube delayed providing any substantive response, instead claiming week after week that it was still investigating Plaintiffs' proposals. YouTube should not be rewarded for its gamesmanship in prolonging resolution on RFPs by falsely asserting "late stage" discovery. The requests were timely served and seek relevant and proportional discovery.

A.   THE DISCOVERY IS RELEVANT AND PROPORTIONAL

RFP Nos. 16 and 18 are relevant to YouTube's collection and leveraging of user data, a central allegation in this MDL. Specifically, Plaintiffs allege that YouTube harvests vast amounts of user data that is then used to classify and micro-target individuals for a variety of purposes, including user research, product promotion and growth, and advertising. *See, e.g.* Dkt. 494, ¶¶ 13-14 (pervasive data mining to categorize and exploit users for product development and advertising); *id.* ¶ 54 (defendants "generate a trove of data about [user] preferences, habits, and behaviors" to sell to advertisers); *id.* ¶ 55 (information acquired about userbase allows defendants to develop product designs specifically targeted at certain groups, *e.g.,* based on age and/or content); *id.* ¶ 76 (defendants leverage user data to generate and push algorithmically tailored "feeds"); *id.* ¶ 713 ("YouTube's collection and analysis of user data allows it to assemble virtual dossiers on its users, covering hundreds if not thousands of user-specific data segments"). Judge Gonzalez-Rogers acknowledged these core allegations, specifically noting allegations that defendants profit by selling advertising space and, to do so, "defendants possess vast data about users" that "enables them to target advertisements to specific audiences." Dkt. 430 at 3.

RFP No. 16 seeks documents sufficient to identify those audience categories. That is, documents sufficient to show "features, classifiers, data sets, dimensions, and/or demographics that [YouTube] use[s] to categorize users of, or accounts on [the YouTube Platform]." In the interest of compromise, Plaintiffs proposed that the request be limited to documents identifying categories related to three discrete areas: user research, advertising, and growth teams.[2]

YouTube rejected Plaintiffs' proposal, arguing that RFP No. 16 should be limited to (1) "demographic[] information requested from YouTube users in the [U.S.] who are minors and (2) inference data collected through YouTube's ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌." YouTube's Aug. 29, 2024 Letter. YouTube's proposal is unreasonable and illogical as it does not respond to the actual request. RFP No. 16 does not seek discovery of what was *requested from* users, nor does it inquire into data used for purposes of ▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌.[3] Rather, it seeks discovery of categories YouTube places its users into for purposes of user research, advertising, and product development and growth. YouTube continues to

---

[2] Unlike YouTube, other Defendants have agreed to produce responsive documents to this request. TikTok has agreed to produce responsive documents as requested, and Snapchat has agreed to the same compromise identified here.

[3] Further highlighting the unreasonableness of YouTube's position is the fact that YouTube imposes a "sub-13" limit. It is unclear how or why responsive documents to this Request should be restricted in this manner; particularly, as YouTube has agreed to withdraw this limiter with respect to all other RFPs in Set 2.

1

misinterpret this request in this briefing, arguing that it cannot produce "code architecture and the methods by which YouTube organizes relational database," as such information is "dispersed throughout computing systems[.]" To be clear, Request No. 16 does not seek the *methods* by which YouTube classifies users, nor the *code architecture*: it plainly seeks the categories YouTube uses to categorize users. YouTube's argument that it has already searched for documents such as research, surveys, and studies is likewise non-responsive to the *categories YouTube employs*. YouTube's attempts to reframe Plaintiffs' request should be rejected as transparent ploys to overcomplicate the request and manufacture the appearance of burdens.

Plaintiffs have explained that this request seeks explanatory documents to identify user categories, *e.g.,* protos, schemas, data sets, *or the like*. For example, YouTube's parent company, Google, publicly discloses some interest and demographic categories used in advertising. *See, e.g.,* Google Ads API, https://developers.google.com/google-ads/api/data/verticals (listing sample advertising "vertical" categories grouped by interests based on online activity); Google Ads API, Codes and Formats, https://developers.google.com/google-ads/api/data/codes-formats (listing "targeting criteria" that includes age, gender, income, language, device information); YouTube Help, About targeting for Video Campaigns (identifying different categories for audience targeting methods) at https://support.google.com/youtube/answer/2454017?hl=en. It is reasonable to expect that YouTube would have similar documents. Indeed, YouTube's current production confirms that it does, in fact, engage in categorizing users. *See, e.g.* GOOG-3047MDL-00123108 at 10 (presentation titled "██████████" referencing "██████████"); GOOG-3047MDL-00160509 at 10 (██████████); GOOG-3047MDL-00139350 at 5 (██████████); GOOG-3047MDL00125578 at 4 (██████████); GOOG-3047MDL-00123271 at 1 (██████████); GOOG-3047MDL-02148143 at tab "██████████" (██████████). YouTube should produce documents sufficient to identify the categorizations used.[4]

RFP No. 18 seeks documents that "constitute, identify, describe, or discuss any analysis of the demographics of users of Your Platform[.]" Plaintiffs have agreed to limit responsive documents to only analysis of age, gender, and race/ethnicity demographics. YouTube has agreed to produce analysis as to age and gender but refuses to produce as to race/ethnicity.

The narrowed request is relevant to allegations that YouTube leverages demographic information, obtained directly or indirectly from users, to target users for advertising and product engagement purposes. *See, supra,* Dkt. 494 ¶¶ 13-14, 54, 55, 76. Specifically, as to race/ethnicity, the complaint asserts disparate targeting and harms that result from YouTube's intentionally addictive design, including differentials in targeting between age groups, gender, and race/ethnicity. *See, e.g.* Dkt. 494, ¶ 88 (alleging design and product features result in racial biases); ¶ 102 (alleging disparate impact based on gender, *e.g.,* body image issues more prevalent in teen girls because algorithms directed more body image content to them). Accordingly, if YouTube has documents that analyze the race/ethnicity demographic of its users, including the disparate harms that result from its product design on said users (*e.g.,* differential treatment of algorithms feeding minority users more violent content or dangerous challenges), then those analyses should be produced. As noted above, YouTube's own document indicates that it does in fact analyze and categorize users based on race/ethnicity. *See, supra*, GOOG-2047MDL-00160509; GOOG-3047MDL-00139350; GOOG-3047MDL00125578; GOOG-3047MDL-00123271; GOOG-

---

[4] YouTube argues that Plaintiffs misconstrue these documents, but YouTube does not (1) dispute that it does in fact undertake the user categorizations and demographic research at issue, and (2) the plain language of the documents – which reference audience segmentation and demographic categories – clearly support Plaintiffs' position.

2

3047MDL-02148143. The narrowed discovery request is thus relevant and should be produced.

## B.   YOUTUBE HAS NOT SUBSTANTIATED ANY CLAIMED UNDUE BURDEN

During over *two months* of meeting and conferring, YouTube did not seriously dispute burden on any request, nor provide a single basis to substantiate such claim. *See In re XF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 19425956 at *3 (C.D. Cal. Jul. 25, 2022) (party who resists discovery on burden must "clarify[], explain[], and support[] its objections"); *Debeaubien v. California*, 2021 WL 1616111, at *2 (E.D. Cal. Apr. 26, 2021) (obligation to provide sufficient detail on burden in terms of time, money and procedure required). Even if it had properly supported its objections, the requests are proportional to the needs of the case, considering, among other things, relevance of the requests, YouTube's sole access to the evidence, and YouTube's financial resources minimizing burden of compliance. *See* Fed. R. Civ. P. 26(b)(1) (proportionality considerations include importance of the issues, parties' relative access to information, and parties' resources). As to RFP No 16, as noted above, YouTube's arguments are untethered from the actual scope of the request. And its vague assertion of information "dispersed throughout computing systems" is insufficient. *See, e.g., Gould v. Motel 6 Inc.*, 2011 WL 13128160, at *5 (C.D. Cal. Mar. 28, 2011) (rejecting burden of "hundreds of thousands" of reports and "hundreds of hours of work" as conclusory and unsubstantiated). YouTube is a tech company; *everything* it does is dispersed through computing systems, but this alone does not, and should not, preclude relevant and proportional discovery. *See, e.g., Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("[t]o allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules"); *Lou v. Ma Labs., Inc.*, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) ("that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information"); *Wesley v. Muhammad,* 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) (rejecting premise "institution may shield itself from discovery by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure").

## YOUTUBE'S POSITION

Plaintiffs have demanded that YouTube engage in a sprawling search for documents related to every way in which YouTube has "categorized" users throughout its entire business, without any meaningful connection to the plaintiffs or features at issue in this litigation. Especially at this late stage of document production, RFP Nos. 16 and 18 would impose a substantial burden, requiring broad, time-consuming searches for documents that would have (at most) marginal relevance, if any, to Plaintiffs' claims. Plaintiffs' demand should be denied.

**RFP No. 16** originally sought "documents sufficient to show all features, classifiers, data sets, dimensions, and/or demographics that You use to categorize users of, or accounts on, Your Platform." Plaintiffs revised the request to seek "documents sufficient to show all features, classifiers, data sets, dimensions, and/or demographics that You used in user research, marketing, and growth teams to categorize users of, or accounts on, the YouTube Platform, from the Relevant Time Period." But this request remains overbroad, disproportionate, and untethered from the claims and defenses in this case.

Plaintiffs' only articulation of relevance is that the request somehow goes to "collection and use of harvested data" to identify categories of users and "targeting" of particular users, but this is no connection to Plaintiffs' actual claims. The "features, classifiers, data sets, dimensions, and/or demographics" used to "categorize" all users for various purposes across YouTube's business only tangentially relate to Plaintiffs' allegations that YouTube "targets" advertising to

3

minor users or "targets" its service to appeal to younger users.[5] The documents misleadingly cited and summarized by Plaintiffs demonstrate the irrelevance of their request: none relates to collection or use of user data for the purpose of "targeting" users, let alone minor users specifically, through either advertising or product design.[6]

YouTube has already undertaken significant burden to search for and produce documents related to demographics or how YouTube may "categorize" users: research and studies including ████████████████████████████████████████████████████████, documents related generally to ████████████, YouTube's ████████ data, and research, literature reviews, and analyses regarding topics including ████████████████████████████████. YouTube has also agreed to a number of broad search terms related to research and testing metrics, academic analyses, the recommendations algorithm, age, generations (e.g. Gen Z, Gen A), and youth, which capture documents related to those topics and responsive to other requests. The result is that over ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Against this background, Plaintiffs' latest demand is "vastly disproportionate to the needs of the case." *See Ramirez v. Bank of Am., N.A.*, No. 22-CV-00859-YGR (RMI), 2024 WL 388123 at \*3-4 (N.D. Cal. Feb. 1, 2024)*, motion for relief from judgment denied,* No. 4:22-CV-00859-YGR, 2024 WL 3550393 (N.D. Cal. Apr. 3, 2024) (denying plaintiffs' motion to compel where defendants had already made productions responsive to the subject matter sought by the requests and the court agreed that document requests at issue were "vastly disproportionate to the needs of the case").

Nonetheless, in an effort to carve out a proportional part of Plaintiffs' request that may be relevant to their allegation that YouTube targets minors, YouTube offered to produce documents sufficient to show the nature of (1) demographics information requested from YouTube users in the United States who are minors and (2) age inference data collected through YouTube's detection and escalation of potential sub-13 United States users for age verification. Plaintiffs rejected YouTube's offer.

In meet and confer, Plaintiffs argued that YouTube should instead search for and produce "protos," "schemas," and "field descriptions." Those items relate to the intricacies of YouTube's code architecture in connection with data/event processing and the organization and storage of data within relational databases (i.e., databases that link together data from other data sources).

Plaintiffs' latest demand is even broader than their revised version of RFP No. 16: the

---

[5] Plaintiffs' targeting allegations relate specifically to alleged targeting of minors. *See* Dkt. No. 494 at 12 ¶ 55 ("Defendants' wrongfully acquired knowledge of their childhood userbase has allowed them to develop product designs to target **elementary school-age children**…."); *see also id.* at 207 ¶ 713 ("Advertisers purchase ad real estate space on users' feeds, which allow them to place the right ads in front of these micro-targeted segments of users--**including children**"); *see also id.* at 232 ¶ 813 ("Google targets **adolescent users** via advertising and marketing materials") (all emphasis added).

[6] Plaintiffs cite, for example: research into ████████████████████████████████████; discussion of whether survey responses were influenced by difficulty in locating representative content; a presentation of outside data regarding ████████████ (not "████████████" as Plaintiffs misrepresent); a page regarding ████████████████████████████████████████; a survey ████████████████████████████████; and a spreadsheet with no clear connection to the YouTube platform related to ████████████████████████████████. Plaintiffs' reliance on YouTube "not disputing" that it engages in certain user categorization and demographics research is misplaced. Whether YouTube engages in user categorization or demographics research has no obvious relevance to Plaintiffs' claims. Even assuming relevance, those inquiries are not the proper subject of additional document discovery.

4

methods by which YouTube structures, exchanges, and stores data are not relevant to alleged "targeting" of any particular users. Expansive discovery into YouTube's code architecture and the methods by which YouTube organizes relational databases is overbroad and disproportionate to Plaintiffs' asserted need to discover additional information related to YouTube's "targeting."[7]

To the extent these materials could conceivably be relevant, YouTube cannot reasonably identify which protos, schemas, and field descriptions to search for and review because they are, by their nature, dispersed throughout computing systems, defining the structure or organization of various databases. Critically, they are not stored and formatted in a consistent way across systems. The burden of locating protos, schemas, and field descriptions would be substantial, requiring extensive work in collaboration with YouTube engineers across YouTube's entire business.

The burden of searching for and producing the additional documents sought by Plaintiffs—to the extent YouTube would be able to identify those documents at all—is unjustified by Plaintiffs' strained theory of relevance.

**RFP No. 18** seeks "All Documents that constitute, identify, describe, or discuss any analysis of the demographics of users of Your Platform, including the actual or estimated numbers of Children or Teens using Your Platform."

YouTube agreed to search for "documents that constitute, identify, describe, or discuss analyses of aggregate metrics from the Relevant Time Period regarding the number of YouTube users in the United States who are minors, including metrics regarding the number of YouTube Kids Profiles or Supervised Experience accounts that use YouTube."

Plaintiffs demanded that YouTube include documents and data related to race, ethnicity, religion, education, and gender. YouTube explained that minor users would not be "categorized" by "education" and offered to search for documents sufficient to show (1) YouTube's estimate of the number of minors using YouTube on an annual basis during the Relevant Time Period and (2) aggregate data reflecting the self-reported gender for minor users on an annual basis during the Relevant Time Period. That offer is reasonably tailored to the issues in this case.

Plaintiffs have continued to demand that YouTube include documents and data related to race and ethnicity. But Plaintiffs have failed to demonstrate the relevance or proportionality of that information. *See RG Abrams Ins. v. Law Offs. of C.R. Abrams*, 2021 WL 10312431, at *11 (C.D. Cal. Dec. 22, 2021) ("The party seeking discovery bears the initial burden of establishing relevance."). While Plaintiffs have argued that these categories go to Plaintiffs' allegations regarding YouTube's ability to "target" minor users (and only minor users), that stretched interpretation of Plaintiffs' allegations does not justify the broad discovery that Plaintiffs seek, because the fact remains that Plaintiffs do not allege that YouTube targets users on the basis of race or ethnicity. Plaintiffs' contrary assertion is false.[8] It is not supported by the documents Plaintiffs misleadingly cite. None of the cited documents show use of any demographic to "target" users, nor do they show "use" or "analysis" of race/ethnicity data. *See* n.6, *supra*. Accordingly, discovery into those demographics is neither relevant nor proportional to the needs of this case. There is no basis to impose significant burden on YouTube to search for and produce these documents.

YouTube respectfully requests that the Court limit the scope of RFP Nos. 16 and 18 to the categories of documents that YouTube has already offered to search for and produce.

---

[7] Plaintiffs misconstrue the Google API documents they cite: those documents relate to Google's categorization of *webpages*, not users.
[8] Plaintiffs' citation of Dkt. 494 ¶ 88 is misleading. Its only reference to race relates to racially biased *standards of beauty* that Plaintiffs claim may be reflected in appearance-altering filters by "allowing users to remove blemishes, make bodies and faces appear thinner, and lighten skin-tone." It contains no allegation related to targeting of users at all, let alone targeting of users by race or ethnicity.