UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF ON SCHOOL DISTRICT PLAINTIFFS' SEARCH TERMS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to: | |
| *Baltimore County Board of Education v. Meta, et al.*, Case No. 24-cv-01561 | |
| *Board of Education Harford County v. Meta, et al.*, Case No. 23-cv-03065 | |
| *Board of Education of Jordan School District v. Meta, et al.*, Case No. 24-cv-01377 | |
| *Breathitt County Board of Education v. Meta, et al.*, Case No. 23-cv-01804 | |
| *Charleston County School District v. Meta, et al.*, Case No. 23-cv-04659 | |
| *Dekalb County School District v. Meta, et al.*, Case No. 23-cv-05733 | |
| *Irvington Public Schools v. Meta, et al.*, Case No. 23-cv-01467 | |
| *Saint Charles Parish Public Schools v. Meta, et al.*, Case No. 24-cv-01098 | |
| *School District of the Chathams v. Meta, et al.*, Case No. 23-cv-01466 | |
| *Spartanburg 6 School District v. Meta, et al.*, Case No. 24-cv-00106 | |
| *The School Board of Hillsborough County, Florida v. Meta, et al.*, Case No. 24-cv-01573 | |
| *Tucson Unified School District v. Meta, et al.*, Case No. 24-cv-01382 | |

3107312.5

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, Discovery Management Order No. 10 (Dkt. 1157), as extended by stipulation and order entered on September 19, 2024 (Dkt. 1163), and the October 2, 2024 Joint Status Report (ECF 1192), the School District Plaintiffs and Defendants respectfully submit this letter brief regarding a dispute about the search terms to be used the School District Plaintiffs in processing documents for review and production.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On October 2, 2024, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

Attached are the following exhibits:

Exhibit A: Plaintiffs' Proposed Search Terms;
Exhibit B: Disputed Terms;
Exhibit C: Sampling Terms;
Exhibit D: Document Count Charts for the Parties' Search Term Proposals;
Exhibit E: Hit Reports for Defendants' and Plaintiffs' Last Proposed Search Terms;
Exhibit F: Responsiveness sampling for the "Five Terms".

Given that the next Discovery Management Conference is less than two weeks prior to the substantial completion deadline, the Parties respectfully request an in-person interim hearing on this matter prior to the next Discovery Management Conference with a preferred date of October 16, 2024, or at the Court's convenience.

Dated: October 10, 2024                              Respectfully submitted,

*/s/Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

i

PREVIN WARREN
**MOTLEY RICE, LLC**
401 9th St, Suite 630
Washington, DC 20004
Phone: (202) 386-9610
Email: pwarren@motleyrice.com

Co-Lead Counsel for Plaintiffs

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*


**COVINGTON & BURLING LLP**

By: */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

vi

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
         pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**FAEGRE DRINKER LLP**

By: */s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
**FAEGRE DRINKER LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
**FAEGRE DRINKER LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

vii

David Mattern, *pro ha vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

**MUNGER, TOLLES & OLSON LLP**
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
**WILSON SONSINI GOODRICH & ROSATI**
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

**WILLIAMS & CONNOLLY LLP**
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

x

**MORGAN, LEWIS & BOCKIUS LLP**
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

x

**Defendants' Position:** The parties are at an impasse with respect to approximately 80 search terms. At the core of the dispute are five terms that seek highly relevant information: "**social media**," **Facebook**, **YouTube**, "**mental health**" and "**Covid* w/10 quarantine**" (the "Five Terms"). Plaintiffs' own responsiveness sampling shows that the Five Terms yield a significant number of *responsive* documents. (For the remaining disputed terms, Plaintiffs have not conducted sampling.) Given the importance of the disputed terms and the nature of Plaintiffs' claims—which seek billions of dollars in purported damages—Defendants' proposed terms are reasonable and proportional. This is especially true because Plaintiffs are using TAR 2.0 *after* applying search terms to cull their document review set—which Plaintiffs themselves already argued in this case reduces the prospect of reviewing non-responsive documents. If Plaintiffs are concerned about their ability to complete document review on schedule, then the solution is for them to seek an extension, not to stymie Defendants' ability to defend against their sweeping claims.

**Status of Search Term Negotiations and Remaining Disputes**. Since the September 12 DMC, Defendants have dropped or narrowed *hundreds* of proposed terms,[1] further reducing the total universe of documents that hit on those terms by nearly *2 million* documents. After rebuffing for weeks Defendants' requests for responsiveness sampling, Plaintiffs finally provided Defendants with responsiveness sampling results for the Five Terms on October 1—but for only one school district. On average, the unique responsiveness rate for the Five Terms was 14.3%—meaning that approximately *one in seven* documents in the sample set hitting on these terms is responsive and *would not otherwise be captured by any other agreed-to terms*. Nevertheless, Plaintiffs have asserted without elaboration that the responsiveness rates "do not support the use of these terms" despite the fact that Plaintiffs are using TAR 2.0. For several reasons, they are wrong.

**The Five Terms Seek Relevant Information and Are Proportional.** *First*, the Five Terms are plainly designed to capture highly relevant information, and without them large volumes of *known* relevant documents would be excluded from discovery. For example, Plaintiffs' responsiveness sampling revealed that one in five documents in the sample set hitting on the term "**social media**"—which lies at the very core of these cases—are both responsive and not otherwise captured by their proposed search terms.[2] Plaintiffs already agreed to run the names of most Defendants' platforms (limited to documents sent from school district domains); there is no compelling reason to treat "**Facebook**" and "**YouTube**" differently.

*Second*, when the shoe was on the other foot, Plaintiffs insisted that Defendants use terms that resulted in a demonstrably *lower* responsiveness rate than the Five Terms return. For example, when Meta conducted responsiveness sampling on hundreds of terms proposed by Plaintiffs, Meta determined that those terms (1) nearly *tripled* the total number of hits yet (2) returned documents with a responsiveness rate of only *3.8%*. *See* ECF No. 929. Nevertheless, Plaintiffs insisted, and Meta ultimately agreed, to add many of those terms, including the term "**mental health**"—one of

---

[1] Plaintiffs' assertion that they have agreed to "thousands" of terms is misleading: At Plaintiffs' request, Defendants manually deconstructed dozens of search strings to simplify the process for Plaintiffs' vendors. But it is not accurate to claim those deconstructed terms are true "separate" terms, and the deconstruction process had *no* impact on the volume of documents.

[2] Plaintiffs cite two unreported decisions addressing responsiveness rates; they are inapposite because neither involved multi-billion dollar claims or use of TAR 2.0.

1

the Five Terms Plaintiffs are refusing to run on their documents, despite the fact that it has a nearly 10% responsiveness rate across Plaintiffs' documents.[3]

*Third*, Plaintiffs will utilize technology-assisted review (TAR 2.0) after the application of search terms—meaning they will likely never have to review *all* documents identified by the terms, let alone "millions" of non-responsive documents. *See* The Sedona Conference, *TAR Case Law Primer, Second Edition*, 24 Sedona Conf. J. 1, 17 (2023) (with TAR 2.0, documents that are more likely to be responsive are prioritized while documents below the designated responsiveness threshold are not elevated for human review or produced). Notably, Plaintiffs successfully pushed Meta to include a large number of broad search terms based on the fact that Meta was also using TAR 2.0. As Plaintiffs' counsel explained at the time, "it is critical not to use narrow search strings with limiters that would exclude relevant documents" when using TAR combined with search terms. 5/13/24 Ltr. from A. Faes to A. Simonsen at 3 (TAR 2.0 "has been shown to … identify[] a greater number of relevant documents more quickly and with less human effort" so parties can "meet tight production timelines [and] leverage a limited staff of human reviewers"). Where, as here, the difference between the percentage of documents that hit on Defendants' terms as compared to Plaintiffs' terms is *less than 10%* for the majority of school districts[4] *and* sampling indicates that Defendants' terms are capturing a meaningful number of responsive documents, Plaintiffs' utilization of TAR 2.0 to further cull the review set fundamentally undermines their complaints about an alleged burden from reviewing non-responsive documents.[5]

*Finally*, any assertion that Plaintiffs' status as school districts should excuse reasonable and proportional discovery—or provides a reason why *Defendants* should bear the costs of Plaintiffs meeting their discovery obligations—is unpersuasive and unwarranted.[6] Plaintiffs include large institutions that employ thousands of individuals and have annual budgets exceeding hundreds of millions of dollars,[7] and most importantly, these districts *elected* to pursue sweeping litigation against Defendants, seeking billions of dollars in compensatory damages, plus an undetermined amount in "abatement." Plaintiffs' counsel represented to the Court that they were prepared to invest resources necessary to litigate these cases. *See, e.g.*, ECF Nos. 8 & 11. As such, their claims of burden ring hollow. If Plaintiffs believe there is insufficient time or resources to complete their review by the substantial completion deadline, the solution is not to curtail Defendants' ability to obtain clearly relevant and proportional discovery. Instead, Plaintiffs should take the Court up on

---

[3] Notably, Plaintiffs have not conducted any null set sampling to support their assertion that their proposed terms are adequately capturing relevant documents. While Plaintiffs observe that parties are best situated to craft reasonable search parameters, it is equally established that "[t]he application of proportionality should be based on information rather than speculation." *See* Sedona Conference on Principles of Proportionality, Principle 4.

[4] For example, Defendants' proposed terms hit on 16.6% percent of documents collected by Charleston and Plaintiffs' terms hit on 8.5% of these documents.

[5] Plaintiffs claim their FERPA obligations will impact the pace of their review. Yet, the parties' proposed modifications to the protective order, ECF 1202, relieve Plaintiffs from having to redact documents for student identifiable information, resolving this very issue.

[6] Plaintiffs cite two cases concerning cost-sharing; these cases are inapposite because they involve costs-sharing requests by *defendants* or *nonparties*.

[7] The school districts with the highest hit counts for both parties' proposals are also three of the largest bellwether school districts and have budgets close to or over a *billion* dollars.

2

its prior offer to place the school district cases on a separate schedule, including extending their substantial completion and related deadlines, to accommodate their review.

**The Remaining Terms Seek Relevant Information and Are Proportional.** The parties are also at impasse regarding additional terms, such as "**shooting\* w/10 school\***". For many of the same reasons, these terms are also reasonable, proportional, and important to Defendants' ability to defend against Plaintiffs' claims. And any assertion of burden is undercut by the fact that many of these terms do not result in substantial additional unique hits (*i.e.*, the number of documents that hit on a given term and only that term)—for example, **"threat w/5 school"** returns *on average* ~1,600 unique hits per bellwether school district. Furthermore, Plaintiffs' refusal to run these terms is based on volume alone rather than any cogent principle: for example, they have agreed to run "**crisis w/5**" of various terms, including "**youth**" and "**teen**," yet inexplicably refuse to run "**crisis w/5 student.**" Plaintiffs should be ordered to run the proposed terms set out in Defendants' September 26 counter-proposal without further limiters.[8] *See* Ex. B, Column A.

**Plaintiffs' Position:** The School District Plaintiffs' proposed search terms are a reasonable and proportional means to cull documents that are responsive to Defendants' requests for production. Plaintiffs have agreed to run *over 1230* search terms and strings that result in a universe of over *3.7 million documents*. *See* Ex. A (Plaintiffs' Terms). Defendants' insistence that Plaintiffs run even more and broader terms is not proportional, nor even feasible given the substantial completion deadline. *See* Ex. B (Disputed Terms, including Plaintiffs' proposed modifications or reasons for rejection). It would unduly burden Plaintiffs with reviewing an excessive number of unresponsive documents and delay the case schedule.

**Plaintiffs have provided a reasonable compromise.** It is generally accepted that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI]." *Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022) (quoting *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 1, 11, 123 (Principle 6)). Neither a requesting party nor a court should prescribe in detail the steps that a responding party must take to meet its discovery obligations. *See, e.g.*, *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *3 (S.D. Tex. Nov. 4, 2021) ("district court judges should not micro-manage the parties' internal review procedures"). Plaintiffs have gone above and beyond what is required under the ESI protocol and worked cooperatively with Defendants in negotiating search terms, including providing dozens of hit reports and conducting statistically significant responsiveness sampling.

In an effort to reach compromise, Plaintiffs conducted responsiveness sampling on 6 terms with extraordinarily high hit counts that Defendants identified as important to them. The responsiveness sampling yielded results from 0.09% to 22%.[9] These rates do not warrant running

---

[8] Many of Plaintiffs' proposed limiters would carve out any document that does not include Defendants' platform names. *See* Ex. B, Column B. As Plaintiffs argued in this case, it is *critical* not to use narrow limiters when applying TAR 2.0

[9] The terms included: "social media" (20%); "Facebook" (7.22%); "YouTube" (12.78%); "mental health" (9.71%); covid* w/10 "emergenc* (0.09%); covid* w/10 quarantine (22%). Defendants agreed to drop "covid* w/10 "emergenc*". Social media use is ubiquitous in our

3

"really broad search terms that end up in ridiculous numbers of unresponsive documents." *Lawson v. Spirit AeroSystems, Inc.*, 2019 WL 1877159, at *3 (D. Kan. Apr. 26, 2019) (finding a reasonable responsiveness rate to be 85%); *see also, e.g.*, *Gravitt v. Mentor Worldwide, LLC*, 2020 WL 7381479 (N.D. Ill. Dec. 15, 2020) (denying request to compel use of search terms that yielded a 27% responsiveness rate). Regardless, Plaintiffs proposed modifiers to narrow the terms to be more precise. *See* Ex. C. This is in addition to the terms that Plaintiffs have already proposed or accepted that are intended to capture the same sought after information (e.g., documents related to mental health, or Defendants' alternative causation defenses, such as COVID). It may be true that by not accepting Defendants' terms some responsive documents may be lost "somewhere along the way," *Lawson*, 2019 WL 1877159, at *3, but perfection in ESI is not the standard, *Valentine v. Crocs, Inc.*, 2024 WL 2193321, at *10 (N.D. Cal. May 15, 2024) (Kang, J.) ("Perfection in ESI is not required; rather a producing party must take reasonable steps to identify and produce relevant documents."); *Alivecor, Inc. v. Apple, Inc.*, 2023 WL 2224431, at *2 (N.D. Cal. Feb. 23, 2023) (same). Reasonableness is the standard; demanding that Plaintiffs run thousands of terms and review millions of nonresponsive documents so that nothing is left on the cutting room floor is not reasonable.

With respect to the other 74 terms in dispute (*see* Ex. B), Plaintiffs have either proposed modifiers that would anchor the terms to this litigation or have rejected the terms because they have agreed to *dozens* of other terms designed to capture the documents Defendants are seeking, including those that go to alternative causation. Defendants' claim that 1,600 unique hits on average does not demonstrate burden is inaccurate and misunderstands the hit reports. "Unique hits is the count of documents in the searchable set returned by only that particular term," and no other term.[10] This is not the total number of *documents* that would be generated by that particular term. The actual number of documents will fall somewhere between the total documents with hits (including family) and unique hits. "Threat* w/5 school*" has a total of 268,185 documents with hits (including family) and 19,728 unique hits across the districts (on average per district, 22,649 documents with hits (including family) and 1,644 unique hits), and the total number of documents to be reviewed lies between the two numbers. In short, although each individual term may not seem to have an extraordinary number of unique hits, in the aggregate the individual term can result in thousands of documents to be reviewed, many of which will be nonresponsive.[11] Narrowing these high hit count, low-richness terms is required to minimize wasteful review.

Concurrent with continuing efforts to reach a reasonable compromise, Plaintiffs have doubled-down on their efforts to review documents that hit on Plaintiffs' terms. Plaintiffs will keep the Court apprised if they need additional time to substantially complete production of documents past the November 5 deadline.

---

society and the term returned documents promoting school activities to parents (e.g., kinder-welcome week), which are marginally relevant at best as Plaintiffs discussed with Defendants.
[10] Relativity, Search Term Reports, https://help.relativity.com/RelativityOne/Content/Relativity/Search_terms_reports.htm#:~:text=Unique%20hits%20is%20the%20count,and%20only%20that%20particular%20term. The reason to run deconstructed terms instead of large search strings as proposed by Defendants is to understand the hit counts for each term, not for vendor ease.
[11] A term with high unique hits and high documents with hits suggest the term is over-inclusive.

3107312.5

**Defendants' request is not proportional or feasible under the case schedule.** Defendants' continue to demand that Plaintiffs run overly broad terms yielding a review volume that is not proportional to the needs of the case and is not possible with less than 30 days before the November 5 deadline. Specifically, if the Court orders Plaintiffs to use Defendants' proposed terms, Plaintiffs would be required to review *over 6.4 million documents* as shown in the chart in Exhibit D, which reflects the document counts taken from the hit reports (Ex. E).

Plaintiffs estimate that this would consume over 128,000 attorney hours for first-level review alone based on the assumption that each attorney reviews at least 400 documents a day and is working 40 hours a week,[12] amounting to a highly burdensome and costly review that is not warranted given Defendants' overbroad terms. It appears that Defendants are determined to seek terms that would necessitate delaying the schedule, but this burden is true whether the documents are produced by November 5 or at some later date.

Plaintiffs will employ TAR 2.0 to reduce review of irrelevant documents, but that does not warrant use of poorly crafted, low-richness terms in the first instance, and will not render Defendants' proposal proportional. Meta itself previously explained why use of broad or imprecise search terms is not warranted even with the employ of TAR 2.0. *See* ECF 929 (Meta Letter Brief re Search Terms). Specifically, TAR 2.0 does not negate the need for manual review, and broad terms requiring extensive additional review have no benefit when these terms have a low responsiveness rate. Even if TAR 2.0 cuts the review volume in half, a review of this magnitude would still not be proportional or feasible under the current case schedule. In short, the burden of Defendants' search terms is not outweighed by the benefit.

The proper path forward is for Plaintiffs to run the Parties' agreed-upon search terms to date, and if Defendants identify deficiencies in the productions, the Parties can meet and confer about them.[13] If the Court orders Plaintiffs to run Defendants' proposed terms, Plaintiffs request an extension of time for substantial completion of document production to January 10, 2025. Plaintiffs also request an order that Defendants bear the cost of the additional review required by their terms. *See* Fed. R. Civ. P. 26(c)(1)(B) (allowing the allocation of expenses for discovery). Cost sharing would be appropriate here to protect Plaintiffs from the undue expense of reviewing millions of nonresponsive documents. *See, e.g.*, *Diesel Power Source v. Crazy Carl's Turbos*, 2017 WL 721995, at *3 (D. Utah Feb. 23, 2017) ("Under the proportionality and cost sharing principles found in the discovery rules, Plaintiff is ORDERED to pay one-half the production costs for this discovery."); *Couch v. Wan*, 2011 WL 2551546, at *5 (E.D. Cal. June 24, 2011) (ordering the Parties to "share the costs of producing requested electronic data").

---

[12] Redactions to documents protected by the Family Educational Rights and Privacy Act (FERPA) will reduce the number of documents an attorney can review in a day. The pace of review to date, *without making FERPA redactions*, is on average 336 documents per day per attorney.

[13] Plaintiffs will also comply with the validation requirements in the ESI protocol, which does not require null set review and was not conducted during search term negotiations by any Defendant but Meta. *See* ECF 690, at § 11.

5

3107312.5

## ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 10, 2024                                                                 */s/Lexi J. Hazam*