UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR  (PHK) <br><br> **ORDER DENYING MOTION TO STAY ENFORCEMENT OF SEPTEMBER 6, 2024 ORDER** <br><br> Re: Dkt. 1167 |

Among the issues in this MDL, thirty-five state Attorneys General (AGs) have sued Meta. All discovery in the MDL has been referred to the undersigned. *See* Dkt. 426. The Court issued an Order on September 6, 2024 resolving a discovery dispute between the AGs and Meta. [Dkt. 1117]. More specifically, the Order resolved the Parties' dispute regarding the extent to which certain state agencies identified by Meta are subject to party discovery in this action. *Id*. On September 20, 2024, the AGs filed with the presiding District Judge a motion under Federal Rule of Civil Procedure 72(a) seeking relief from certain aspects of the Court's Order. [Dkt. 1168]. The AGs simultaneously filed with this Court the instant administrative motion requesting to stay enforcement of the September 6, 2024 Order pending District Court review. [Dkt. 1167]. Meta has filed an opposition to the motion to stay. [Dkt. 1173]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

"A stay is not a matter of right" but is instead "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672-73 (1926)); *see Maness v.*

*Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly.  If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").  "It is well-established law that the filing of an objection to a magistrate judge's order on a non-dispositive motion does not automatically stay that order's operation." *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1093 (D. Nev. 2022) (collecting cases); *Alvarez v. Larose*, No. 3:20-cv-00782-DMS-AHG, 2020 WL 5632659, at *1 (S.D. Cal. Sept. 21, 2020) ("Filing an objection pursuant to Rule 72 does not automatically stay the magistrate judge's order.").

"A motion to stay a magistrate judge's order pending review by the assigned district judge is evaluated under the same standard as a motion to stay pending appeal." *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-cv-02436-BLF, 2023 WL 7283886, at *1 (N.D. Cal. Nov. 2, 2023) (quoting *Forrest v. Facebook, Inc.*, No. 5:22-CV-03699-EJD, 2023 WL 1931356, at *1 (N.D. Cal. Jan. 18, 2023)); *see, e.g.*, *In re Rep. of Ecuador*, No. 11-mc-80171-CRB (NC), 2012 WL 13187177, at *2 (N.D. Cal. Mar. 30, 2012) ("The current motion is akin to a motion for stay pending appeal.").  Under this standard, the Court considers four factors to determine whether a stay is appropriate: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken*, 556 U.S. at 434).  "The first two factors are the most critical." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434) (alterations omitted).  The Court considers the remaining two factors only if the first two factors are satisfied. *Id.* (citing *Nken*, 556 U.S. at 435).  In applying these factors, the Court adheres to a "sliding scale" approach under which "the required degree of irreparable harm increases as the probability of success decreases." *Id.* (quoting *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008)); *accord Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

Imposing a stay is an intrusion into the ordinary processes of administration and judicial

2

1  review. *Nken*, 556 U.S. at 427. The party requesting a stay bears the burden of showing that the
2  circumstances justify an exercise of the Court's discretion. *Lair v. Bullock*, 697 F.3d 1200, 1203
3  (9th Cir. 2012) (quoting *id.* at 433-34). In the context of a motion to stay a magistrate judge's
4  non-dispositive discovery order, this burden "is a steep hill to climb." *PlayUp*, 635 F. Supp. 3d at
5  1095.

## ANALYSIS

Applying the *Nken* factors here, the Court finds that the AGs have not met their burden of showing that a stay is appropriate.

### 1. Likelihood of Success on the Merits

The first *Nken* factor considers whether the AGs have made a "strong showing" that success on the merits of their Rule 72(a) challenge is likely. *Mi Familia Vota*, 111 F.4th at 981. "[I]t is not enough that the likelihood of success on the merits is 'better than negligible' or that there is a 'mere possibility of relief.'" *Lair*, 697 F.3d at 1204 (quoting *Nken*, 556 U.S. at 434). The Ninth Circuit has identified several largely interchangeable iterations of the applicable standard, all of which require the moving party to show, at a minimum, that there is "a substantial case for relief on the merits." *Id.* at 1204 ("We have concluded that many of these formulations, including 'reasonable probability,' 'fair prospect,' 'substantial case on the merits,' and 'serious legal questions . . . raised,' are largely interchangeable.").

In evaluating the first *Nken* factor, the Court must be mindful of the standard of review that applies to the underlying challenge. *See Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 897 (9th Cir. 2009) (accounting for the "narrow and deferential standard of review" in finding a failure to demonstrate sufficient likelihood of success). Here, the AGs have a filed a motion seeking relief from a magistrate judge's non-dispositive discovery order.

Magistrate judges possess broad discretion in resolving discovery matters and their orders on such issues are entitled to significant deference. *See United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001) ("[T]he text of the Magistrates Act suggests that the magistrate judge's decision in such nondispositive matters is entitled to great deference by the district court."). "A non-dispositive order entered by a magistrate must be deferred to unless it is

'clearly erroneous or contrary to law.'" *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 241 (9th Cir. 1991) (citing Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A)).  This is a "formidable standard of review."  *PlayUp*, 635 F. Supp. 3d at 1096; *see Winns v. Exela Enter. Sols., Inc.*, No. 4:20-cv-06762-YGR, 2021 WL 5973049, at *1 (N.D. Cal. Nov. 4, 2021) ("Plaintiff has identified the proper legal standard for reviewing a nondispositive order. This standard is not easily satisfied because it affords the magistrate judge significant deference.").  As such, "a party seeking a stay pending resolution of its objection to a magistrate judge's non-dispositive ruling is generally unable to make a strong showing of likely success on the merits of the objection."  *PlayUp*, 635 F. Supp. 3d at 1096-97.

In the instant motion, the AGs argue that they have a "fair prospect" of persuading the District Court that this Court's September 6, 2024 Order "misapprehends the role of AGs acting as counsel to independent state agencies, misapplies controlling Ninth Circuit authority in shifting the burden to the AGs to demonstrate their lack of control, and disregards the structure of state governments and the substantial federal authority respecting states' sovereign structures." [Dkt. 1167 at 3].  The AGs argue that the issue presented by their Rule 72(a) challenge—whether certain state agencies may be subject to party discovery in civil enforcement actions brought by those States' attorneys general—is a matter of first impression in this Circuit. *Id.*  They likewise argue that their challenge to this Court's Order implicates "constitutional questions." *Id.*

On balance, the Court finds that the AGs have not made an adequate showing of likely success on the merits.  The AGs essentially make the same arguments already raised in their original briefing and oral argument to this Court on the underlying dispute which led to the September 6, 2024 Order.  The Court extensively addressed each of these arguments in the 248-page Order that is presently under District Court review.  *See Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2024 WL 1016069, at *2 (N.D. Cal. Feb. 6, 2024) ("UBH's arguments with respect to the likelihood that its appeal will be successful mirror the arguments it made in its briefing addressing the scope of the mandate. The Court rejected those arguments only after considering the parties' extensive briefing and offering detailed reasoning for its conclusions.").

More specifically, the Court's September 6, 2024 Order did not misapprehend the role of

the AGs as counsel to their respective state agencies. The AGs' sweeping reference to the agencies as "independent" is inaccurate. Some of the agencies are parties to this case and worked with their respective state AG prior to suit in preparation for this litigation. Some of the agencies are subject to state law requirements which allow the state AG to inspect and access the books and records of the agency; others are subject to open records laws under which the state AG has the legal right to access their records. Despite knowing of this discovery dispute for months, none of the state agencies chose to intervene, none have had separate counsel (from attorneys other than from the state AG's office) enter appearance, and none have appeared to date. In addition, many of the AGs have asserted the attorney-client privilege and work product doctrine with regard to pre-suit communications between the agencies and the applicable state AG's office.

Second, the September 6, 2024 Order did not shift the burden of proof to the AGs to demonstrate lack of legal control over the documents of the state agencies. The Order on its face set forth the burden of proof, imposed that burden on Meta, and applied the burden. This is demonstrated by the fact that the Order denied in part Meta's requests for relief. Where the AGs failed to adequately rebut Meta's showing (and where the Order discussed the facts relied upon by both Parties) is not the same thing as shifting the burden of proof.

Third, the September 6, 2024 Order did not disregard the structure of state governments. One of the reasons the Order exceeds 200 pages in length is because the AGs argued this very point and the Order analyzed each of thirty-five states' governmental structures. Further, the Order explains that, while notions of comity are recognized, it is ultimately federal law that governs the resolution of discovery disputes in federal court.

Fourth, the issue of a party's legal control over documents of a nonparty is not an issue of first impression in the Ninth Circuit. The September 6, 2024 Order applies and extensively analyzes Ninth Circuit precedent on this issue. The Order also extensively discusses district court decisions from throughout the Ninth Circuit deciding the issue of whether a state AG (or other governmental attorney's office) has legal control over state or local agency documents.

Finally, the alleged state constitutional issue raised by the AGs assumes that they lack legal control over state agency documents and that they all have the same "divided executive" structure.

The September 6, 2024 Order explains how several states cited incorrectly to local law which purported to limit the state AG's access to the documents at issue here, where upon examination no such applicable restriction exists. The Order explains how several AGs have express statutory rights to access, inspect, and obtain documents from their state agencies. The Order explains how other courts have likewise concluded that multiple state AGs (including many of the same AGs here) have legal control over their state agencies' documents for purposes of discovery without violating principles of federalism. The Order makes clear that its holding is limited to and based on the record presented to the Court for the agencies at issue in the context of this MDL and not a sweeping holding that ignores the structure of state governments.

Accordingly, the first factor does not support the imposition of a stay.

### 2. Irreparable Injury Absent Stay

The second *Nken* factor addresses the extent to which the party requesting a stay would be irreparably harmed absent a stay. *Mi Familia Vota*, 111 F.4th at 981. The moving party must demonstrate "that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007 (quoting *Nken*, 556 U.S. at 434). Simply showing some "possibility of irreparable injury" over the requisite interim period will not suffice. *Id*. A party "cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60.

Here, the AGs allege that they are likely to suffer the following irreparable injuries if the Court denies their motion to stay pending resolution of their Rule 72(a) challenge: (1) the Court's September 6, 2024 Order, in the interim, "is apt to create conflicts between the AGs and state executive agencies" because the Order "places the AGs in the impossible position of responding to discovery seeking documents to which they have no legal right to access, significantly impedes the functioning of state government, and imperils the ability of state AGs to bring enforcement actions in federal court;" (2) "the burden imposed by Meta's sweeping discovery request is substantial;" and (3) "if the AGs have to divert their attention to these extremely heavy and contested discovery obligations, progress on other critical and undisputed discovery tasks will be delayed, making it uncertain whether this enforcement action, aimed at protecting the most vulnerable of our citizens,

1    can remain on track." [Dkt. 1167 at 4].

2      The Court finds that the AGs have not made an adequate showing that this remaining
3    "critical" factor of irreparable harm supports a stay.  To the extent that the AGs argue that
4    enforcement of the Court's September 6, 2024 Order is "apt" to create conflicts between the AGs
5    and agencies, the AGs provide no specific details or supporting evidence concerning these
6    hypothetical conflicts.  *See Doe #1*, 957 F.3d at 1059-60; *Coalition on Homelessness v. City &*
7    *Cnty. of S.F.*, No. 22-cv-05502-DMR, 2023 WL 2775156, at *5 (N.D. Cal. Apr. 3, 2023).  As
8    explained in the September 6, 2024 Order, other courts have found state AGs to have legal control
9    over their state agencies' documents and the subsequent history of those cases reveals no conflicts
10   between the AGs and the agencies.

11     To the extent that the AGs argue that Meta's discovery requests are burdensome and
12   complain that they will be forced to divert their attention and resources to processing the discovery
13   requests, it is well-settled that the ordinary burdens of discovery do not constitute an irreparable
14   injury.  *See Al Otro Lado*, 952 F.3d at 1008 ("The key word in this consideration is irreparable.
15   Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . .
16   are not enough."); *Nationwide Biweekly Admin. Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir.
17   2017) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute
18   irreparable injury.").  Further, under the AGs' view, Meta should seek the discovery at issue by
19   subpoenas issued to each of the agencies—it is already clear from the record that the AGs will be
20   (or in some cases, already are) representing the agencies in responding to those subpoenas which
21   Meta prudentially served already.  Thus, the AGs' argument assumes incorrectly that Meta's
22   discovery will somehow go unanswered.  The fact that the AGs will necessarily negotiate
23   objections as to burden in the context of responding to document requests as opposed to document
24   subpoenas and ultimately produce documents from the agencies either in response to document
25   requests or subpoenas entirely undercuts the "distraction" argument.  And, as the September 6,
26   2024 Order recognized, the dispute resolved in that Order is limited to the issue of party
27   discovery.  Other disputes on the merits of the discovery requests (such as overbreadth or
28   burdensomeness) are not yet ripe and are subject to this Court's normal discovery dispute

resolution procedures, including the meet and confer requirements in the Court's Standing Order for Discovery and other Orders and statements directing the Parties on how to handle discovery disputes in this MDL.

Accordingly, the second factor does not support the imposition of a stay.

### 3. Remaining Factors

As noted, the first two *Nken* factors are "the most critical." *Mi Familia Vota*, 111 F.4th at 981. Because the AGs have not satisfied either of the first two factors, the Court need not address the remaining two factors. *Al Otro Lado*, 952 F.3d at 1007 ("[T]he last two [*Nken* factors] are reached only once an applicant satisfies the first two factors.") (alteration and internal quotation marks omitted); *Doe #1*, 957 F.3d at 1061 ("[I]f a stay applicant cannot show irreparable harm, 'a stay may not issue, regardless of the petitioner's proof regarding the other stay factors[.]'"); *Wit*, 2024 WL 1016069, at *2 ("Because UBH has not demonstrated it will suffer irreparable harm if the Court denies its request for a stay, the Court need not reach the remaining *Nken* factors.").

Even if the Court were inclined to analyze the third and fourth factors, they do not appear to be sufficient to reach a different conclusion here. As to the third factor (harm to the opposing party), Meta has already argued repeatedly that delay in the discovery from the state agencies prejudices Meta's ability to obtain discovery relating to its defenses. Indeed, both sides have argued to this Court at various times that, essentially, time is of the essence, that the deadlines are tight, or that the opposing side's tactics threaten to impact the overall fact discovery schedule. As noted previously, the Court encourages the Parties to reach compromise on discovery disputes in order to avoid delay and expects the Parties to continue in those efforts even where motions and/or appeals are pending.

As to the fourth factor (public interest), the AGs provide no explanation as to how the September 6, 2024 Order hampers their prosecution of this case. As noted, whether Meta seeks the discovery from the state agencies by subpoena or by document requests, that discovery is proceeding regardless. The agencies are going to respond to the discovery one way or another. The AGs are going to represent the state agencies in responding to the discovery. Again, the only way the September 6, 2024 Order could be construed as "hampering" this action is if somehow

reversal of that Order denied Meta any discovery from the state agencies at all, which is not the relief sought. Further, as discussed in the Order, many federal district courts have found state AGs to have legal control over their state agencies' documents, including in the context of an MDL. None of those rulings have impacted any state's ability to pursue enforcement actions. Finally, the reference to federalism assumes, again, that the September 6, 2024 Order did not consider state law (when it did, in detail, for each of the thirty-five states).

## CONCLUSION

For the foregoing reasons, the AGs' motion to stay [Dkt. 1167] is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 15, 2024

_____
PETER H. KANG
United States Magistrate Judge