[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**AGENDA AND JOINT STATEMENT FOR OCTOBER 25, 2024, CASE MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Case Management Order ("CMO") No. 1 (ECF 75), the Parties submit this agenda and joint statement in advance of the October 25, 2024 Case Management Conference ("CMC").

## I.   Update on Pending Motions

The Court has taken under submission Defendants' motions to dismiss the following:

- Personal Injury Plaintiffs' ("PI Plaintiffs") claims against Mark Zuckerberg;
- PI Plaintiffs' claims for non-product negligence (Count 5), wrongful death and survival claims (Counts 16-17), and parental claims for loss of consortium, loss of services, and medical expenses (Count 18), as well as claims alleging CSAM violations (Counts 12 and 14 asserted against Meta only) asserted in the Second Amended Master Complaint (ECF No. 494) ("Master Complaint");
- Claims asserted in certain PI Plaintiffs' short form complaints against Snap;
- Claims in the School District and Local Government Entities' Master Complaint; and
- Claims in Florida's Amended Complaint.

On October 15, 2024, the Court largely denied Defendants' motion to dismiss claims asserted in the Multistate AGs' Complaint and PI consumer protection claims and misrepresentation claims against Meta. ECF 1214.

## II.   Motion for Relief from State Agency Discovery Order

On September 20, 2024, the State AGs filed a Motion for Relief (ECF No. 1168) from Magistrate Kang's pretrial Order regarding state agency discovery (ECF No. 1117). Meta's Opposition (ECF No. 1181) was filed on September 27, 2024 and the State AGs replied on October 4, 2024 (ECF No. 1194), thereby completing briefing on the Motion.

The State AGs moved the Court to set a hearing on the Motion on October 16, 2024 (ECF No. 1218). The State AGs requested oral argument collectively and on behalf of numerous individual states. The Court will hear oral argument on October 25, 2024.

## III.   Scope of the Anticipated Dispositive and Rule 702 Motions

**Plaintiffs' Statement**: Plaintiffs do not currently anticipate filing any case-dispositive motions, but they reserve the right to do so based on the development of discovery in this litigation. Plaintiffs do

not anticipate seeking leave to depart from the Court's Standing Order in Civil Cases on Motions for Summary Judgment, subsection (b), which provides: "All issues shall be contained within one motion, may not exceed twenty-five pages in length, and shall conform to Civil Local Rule 7-2. Only one summary judgment motion may be filed collectively per side, absent leave of court."

At present, Plaintiffs anticipate that they will have a total of approximately 20 experts, with roughly half general liability and causation experts and half case-specific experts, for the 24 bellwether plaintiffs. Plaintiffs are not able to opine on the number or scope of potential Rule 702 motions, as they are unaware of the identity of Defendants' experts and those experts' opinions. Plaintiffs do not anticipate seeking leave to depart from the Court's Standing Order in Civil Cases on *Daubert* Motions, which provides: "Each side is limited to three *Daubert* motions throughout the entire case absent leave of court."  Defendants' preliminary efforts to seek such leave, as set forth below, include improper and premature argument and conjecture about the scientific evidence Plaintiffs intend to present. Such baseless speculation should not influence the schedule for this case. Before filing this CMCS, Plaintiffs made clear that they believed Defendants' premature Daubert briefing was improper, but Defendants refused to remove it from their position statement. In addition, Defendants mischaracterize the recent revisions to Rule 702, which, as this Court has previously recognized, "merely codified what was already the prevailing understanding of Rule 702's requirements." *United States v. Medtronic, Inc.*, 2024 WL 4002842, at *9 (C.D. Cal. July 22, 2024) (quotation marks omitted); *see id.* (stating that the 2023 amendments were "not intended to alter the application of the rule but instead to correct the misunderstanding of a narrow subset of 'courts that have failed to apply correctly its reliability requirements'" (alteration adopted) (quoting Fed. R. Evid. 702, adv. comm. note to 2023 Amendments)). These non-substantive changes do not justify Defendants' efforts to evade this Court's Standing Order.

**Defendants' Statement:** Summary judgment and Rule 702 motions will be important to streamline, if not resolve, this MDL.  Defendants cannot yet commit to the precise number or scope of these motions for several reasons:  motions to dismiss for some plaintiffs and claims are still pending, no plaintiff has yet to sit for a deposition, and Defendants are unaware of the specific opinions of Plaintiffs'

experts or their methodologies. Defendants have nevertheless tried to provide the Court with more information to facilitate scheduling.

For summary judgment motions, the existence of multiple cases likely means that several motions will be necessary. While one motion for each individual PI case and each SD case may be workable, Defendants may seek to reallocate the page-number limits between summary judgment motions where Defendants believe that doing so would be more efficient and expedient for the Court. The issues for summary judgment, and the pages needed to draft them, will also be significantly impacted by the claims asserted by a particular bellwether plaintiff and the Court's anticipated ruling on the pending motions to dismiss. Defendants may require more than 25 pages for any broader, cross-cutting summary judgment motions. In addition, Meta is likely to require more than 25 pages to address the state-law claims brought by 35 separate AGs.

As for Rule 702 motions, Defendants anticipate that several motions will be necessary given the number of experts Plaintiffs intend to rely on and the novelty and complexity of the scientific and medical causation issues involved in these cases. First, Plaintiffs reportedly intend to disclose over 20 experts. At present, the specific opinions of each expert and the methodologies underlying their opinions remain unknown, but Rule 702 was recently amended "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 (2023 Comm. Notes). Defendants will endeavor to be judicious in bringing expert challenges, but reserve their right to challenge those Plaintiffs' experts where Plaintiffs have not met their burden to demonstrate the expert's methods are "more likely than not" reliable and that each of their opinions follows from a reliable application of their methodology to the facts at issue.

Second, Defendants will likely need to file multiple Rule 702 motions because there is a dearth of scientific evidence to support Plaintiffs' novel claims. Plaintiffs bear the burden of providing reliable and relevant scientific evidence to prove that the specific features of Defendants' services they challenge cause both addiction and the specific disparate resulting injuries they allege (*e.g.*, depression, anxiety, eating disorders, suicidality, suicide, etc.). This burden presents significant challenges for Plaintiffs

because notwithstanding broad cultural discussion around social media use, the scientific literature does not establish that using Defendants' services causes mental health disorders.  Plaintiffs even acknowledge that "social media addiction" is not recognized by *The Diagnostic and Statistical Manual of Mental Disorders*, version 5 text rev. (DSM-5-TR), which is the standard classification of mental health disorders used by mental health professionals for the diagnosis and treatment of mental health disorders.  The absence of scientific support for the core theories alleged here therefore raises significant questions—for the Court to resolve—about whether Plaintiffs can meet their burden under Rule 702 of marshaling reliable expert testimony that the "design" features about which they complain are capable of causing a medically recognized condition of "addiction" and the claimed mental health disorders.

To the extent warranted, Defendants may be able to bring cross-cutting Rule 702  motions that address substantive problems across Plaintiffs' experts. However, departure from the Court's 3-motion limit for individual civil cases will almost certainly be necessary in these circumstances given the magnitude of this litigation, the state of the science, and the novel nature of the claims at issue.

Defendants are familiar with—and appreciate the efficiencies created by—the Court's Standing Orders for individual civil cases.  However, in the MDL setting, in which multiple civil cases will be litigated fully, with implications for an even larger case pool, additional motions for summary judgment and Rule 702 motions will likely be necessary.  Defendants will be better positioned to offer their views on the specifics of these issues following Plaintiffs' opening expert disclosures.[1]

## IV.    Revisions to Case Schedule in Light of JCCP Developments

**Plaintiffs' Statement**: The JCCP court has addressed the case schedule at three recent hearings, at which the MDL case schedule was also discussed, with MDL Co-Lead Counsel Lexi Hazam addressing the JCCP court on behalf of the MDL Plaintiffs. At the October 3 JCCP status conference, Judge Kuhl reiterated—as did both MDL and JCCP Plaintiffs—the importance of scheduling expert discovery so as "not [to] repeat depositions of experts" across the MDL and JCCP. Oct. 3, 2024 JCCP

---

[1] *See* Manual for Complex Litigation, Fourth, § 23.353 (emphasis added) (motions to exclude expert testimony "often will be accompanied by a motion for summary judgment. Regardless of the form, the movant should set forth specific deficiencies in the expert's report or proposed evidence so that the motion may be handled in an economic and expeditious fashion." (emphasis added)).

Hr'g Tr. (attached as **Exhibit A**) at 33. Judge Kuhl also stated her intention "to get the general causation *Sargon* motion briefed in August." *Id.* Judge Kuhl further indicated that to accomplish both these goals the MDL schedule would need adjustment, and asked the Parties to meet and confer regarding same and then address with the MDL Court. *See id.* at 33–34.

Throughout the litigation, both the MDL and JCCP courts have urged coordination for efficiency purposes,[2] and Plaintiffs in both litigations have made every effort to coordinate effectively, across plaintiff groups (including the AGs) and across courts (including state courts where AG claims are also pending). As just one example, Plaintiffs have made every effort to ensure that Meta fact witnesses will sit for deposition only once, with each deposition cross-noticed by all plaintiffs spanning at least four jurisdictions.  MDL and JCCP plaintiffs have also consistently asserted that it would be most efficient and effective for plaintiffs across both litigations to coordinate expert discovery, particularly given that a considerable number of experts are shared among plaintiffs. To that end, Plaintiffs believe that aligning the case schedules for expert discovery in the MDL and JCCP in a manner that accommodates Judge Kuhl's intention to hold a *Sargon* hearing in August 2025 would allow the courts and the Parties to continue to reap the efficiency gains from coordination.

Accordingly, Plaintiffs respectfully request that the Court modify the case schedule to align with the expert discovery dates proposed by the JCCP plaintiffs. Plaintiffs ask the Court to move up the deadline for non-case-specific expert reports to May 2, 2025 (from May 16, 2025), and the deadline for responsive reports to May 30, 2025 (from July 9, 2025 for Defendants' responsive reports and July 30 for Plaintiffs' rebuttal reports). Plaintiffs also ask the Court to make these report deadlines simultaneous. Reducing the number of report deadlines from three to two via simultaneous (rather than staggered) disclosures—which are provided for by the California code[3] and which Judge Kuhl indicated she viewed favorably here—would shorten the schedule and permit advancing the cut-off for expert discovery, to

---

[2] *See, e.g.*, ECF No. 457 (Nov. 16, 2023 Case Mgmt. Conf. Hr'g Tr.) at 79–84 (discussing coordination of discovery in MDL and JCCP); ECF No. 267-3 (May 3, 2023 JCCP Minute Order) at 2 ("Discovery in the MDL proceeding and in this JCCP proceeding should be coordinated.").

[3] Cal. Code Civ. Proc. § 2034.210(a) (requiring "a mutual and simultaneous exchange" of expert opinions).

July 18, 2025 (from August 27, 2025). This in turn would permit the JCCP court to hold a *Sargon* hearing on August 29, 2025, as proposed by the JCCP Plaintiffs in accordance with Judge Kuhl's guidance, and would also allow this Court to hold *Daubert* hearing(s) earlier than the Parties had previously proposed.

While this proposal differs from the recently-adjusted case schedule, Plaintiffs note that the Parties negotiated that schedule before the subsequent developments discussed herein. Indeed, one of the goals of the current case schedule was to ensure efficient coordination with the JCCP on expert discovery. It has only recently become clear based on JCCP hearings that this coordination is impossible under the Court's current schedule, including the provision for staggered expert disclosures. Given the benefits to the courts and parties of such coordination on expert discovery, and the inefficiencies and unfairness that would occur without it, Plaintiffs submit that their revised proposed schedule, including simultaneous disclosures, is warranted and should be adopted.

Plaintiffs also ask the Court to move up the identification of the bellwether trial pool to precede the exchange of expert reports, as is taking place in the JCCP. *See* Sept. 16, 2024 JCCP Minute Order at 2 (attached as **Exhibit B**) ("Selection of bellwether trial pool – March 7, 2025"). Plaintiffs propose that this hearing take place at the end of March 2025. This adjustment would yield efficiency gains by ensuring the Parties do not engage in unnecessary case-specific expert discovery, while still permitting case selection based on a fulsome factual record.

Finally, Plaintiffs ask the Court to adopt a two-step briefing process on Rule 702 motions: submission of fully briefed *Daubert* motions with respect to non-case-specific experts first, in September 2025, followed by *Daubert* motions with respect to case-specific experts and other summary judgment motions in October 2025.[4] Defendants try to make hay out of Plaintiffs' transparency

---

[4] Defendants again intimate that the Court should order that expert discovery on general causation take place prior to the close of fact discovery. Both this Court, ECF No. 581 (CMO 8) at 2, and the JCCP court have declined to adopt Defendants' proposal, which Plaintiffs assert would result in unfairness and inefficiency given the causation evidence that the Court has recognized is uniquely in Defendants' possession. Such a schedule would encourage gamesmanship in deposition scheduling and risk a need for redoing expert reports.

regarding their anticipated number of experts. What Defendants neglect to mention is that they will likely have at least as many experts, meaning Plaintiffs will have to abide by the exact same time constraints regarding expert discovery. Plaintiffs are ready and willing to do so in the interest of moving this litigation along as expeditiously and efficiently as possible.

These proposed modifications are set forth in the following table:

| Event | Plaintiffs' Proposed Deadline |
|---|---|
| Identification of Bellwether Trial Pools | March 21, 2025 |
| Hearing Re Identification of Bellwether Trial Pools | March 28, 2025, or at the Court's convenience |
| Joint Status Report on Protocol for Production of Expert-Related Documents | April 21, 2025[5] |
| **Non-Case Specific Expert Discovery and *Daubert*** | |
| Non-Case-Specific Experts: Opening Reports | May 2, 2025 |
| Non-Case-Specific Experts: Responsive Reports | May 30, 2025 |
| Close of Non-Case-Specific Expert Discovery | July 18, 2025 |
| Rule 702 (*Daubert*) Motions on Non-Case-Specific Experts: Opening Briefs | August 1, 2025 |
| Rule 702 (*Daubert*) Motions on Non-Case-Specific Experts: Opposition Briefs | August 22, 2025 |
| Rule 702 (*Daubert*) Motions on Non-Case-Specific Experts: Reply Briefs | September 5, 2025 |
| Hearing on Rule 702 (*Daubert*) Motions on Non-Case-Specific Experts | September 19, 2025[6] |
| **Case-Specific Expert Discovery and *Daubert*, and Other Dispositive Motions** | |
| Case-Specific Experts: Opening Reports | July 18, 2025 |
| Case-Specific Experts: Responsive Reports | August 15, 2025 |
| Close of Case-Specific Expert Discovery | September 12, 2025 |
| Rule 702 (*Daubert*) Motions on Case-Specific Experts and other Dispositive Motions: Opening Briefs | September 22, 2025 |
| Rule 702 (*Daubert*) Motions on Case-Specific Experts and other Dispositive Motions: Opposition Briefs | October 17, 2025 |
| Rule 702 (*Daubert*) Motions on Case-Specific Experts and other Dispositive Motions: Reply Briefs | October 29, 2015 |
| Hearing on Rule 702 (*Daubert*) Motions on Case-Specific Experts and other Dispositive Motions | November 7, 2025, or at the Court's convenience |

---

[5] This date is subject to modification by Judge Kang. ECF No. 1159 (CMO 17) at 2 n.1.

[6] For reference, JCCP plaintiffs have proposed briefing non-case-specific *Sargon* motions as follows: opening briefs due on July 25; opposition briefs due on August 15; reply briefs due on August 22; and a hearing before Judge Kuhl on August 29.

**Defendants' Statement**:

The Court should maintain the current expert case schedule in Case Management Order No. 17 and reject Plaintiffs' attempt to change it.  That schedule was extensively discussed and negotiated over many weeks and just entered last month.  Plaintiffs' proposal to simply undo what they previously agreed to and submitted to the Court would substantially prejudice Defendants in three significant ways: (1) by eliminating the previously negotiated sequential exchange of expert reports; (2) by shortening the already compressed period of eight weeks to a mere four weeks for Defendants to respond to Plaintiffs' more-than-20 anticipated expert reports; and (3) by advancing the date for selection of bellwether trial cases, further compressing the limited time afforded Defendants to take discovery of Plaintiffs.  The resulting prejudice is not limited to just Defendants, as this newly proposed, hyper-compressed schedule would leave the Court with a mere two weeks to review the Parties' Rule 702 motions before the proposed hearing date.  It also likely would involve more expert reports and reports that do not speak directly to one another (as sequential reports do).

The Court's first schedule—CMO 10 entered in February 2024— and the more recent schedule—CMO 17 entered on September 18, 2024—recognized that there should be staggered disclosures of expert witnesses.  ECF 604, ECF 1159.  Such staggered disclosures are standard in federal litigation and reflect the fact that Plaintiffs bear the burden of both proving their case and, under Rule 702, of establishing the admissibility of the experts they use to meet that substantive burden of proof.  As part of the latest modifications to the schedule, Defendants negotiated Plaintiffs' agreement to a sequential exchange of reports, as well as more time between Plaintiffs' disclosure of witnesses and Defendants' disclosures.  Such additional time is warranted by the novel theories those experts will be offering and the large volume of them that Plaintiffs have already disclosed through the Protective Order process.

A few weeks later, at the October 3 CMC in the JCCP, Judge Kuhl stated that her "goal is to get the general causation *Sargon* motion briefed in August [2025]."  10/3/2024 JCCP CMC Tr. at 33:8-12.  The MDL Plaintiffs now seek to use Judge Kuhl's stated intent to prioritize resolution of the focused issue of general causation in the JCCP to eliminate aspects of CMO 17 that caused Defendants to agree

to it, deprive Defendants of staggered reports, jam Defendants' ability to file Rule 702 motions directed at Plaintiffs' experts in the MDL, and cut short this Court's time to consider such motions.  Specifically, among other things, the MDL Plaintiffs' proposed schedule is flawed in three key respects:

**First**, as a threshold matter, MDL Plaintiffs ignore the complexities present in the MDL not present in the JCCP.  While Defendants are mindful that Judge Kuhl may set a different schedule in the JCCP where there is only a single personal injury track proceeding, here in the MDL, there are currently three different tracks of cases pending.

**Second**, Plaintiffs' proposed shrinking of the expert intervals is not practical.  By their own admission, Plaintiffs anticipate disclosing 20 experts, with roughly half covering general liability and general causation issues.  Yet Plaintiffs' proposed schedule provides: (1) only three months (May 2-August 1, 2025) for the Parties to complete all such general, "non-case-specific" expert reports, rebuttal reports, and depositions **and** to file any Rule 702 motions; (2) less than three months (May 2-July 18, 2025) for the Parties to depose dozens of experts; and (3) only two weeks (September 5-19, 2025) for the Court to digest the expert reports, depositions, and Rule 702 briefing.  These deadlines are not reasonable or workable.  Moreover, Plaintiffs' proposed schedule calls for simultaneous disclosures of experts and then provides for only four weeks before rebuttal reports (as opposed to CMO 17, which provides for two months after Plaintiffs' disclosures for Defendants to disclose their experts, followed by three additional weeks for rebuttal reports).

These cases raise novel scientific issues that require this Court to rule on never-before-litigated theories, including whether each Plaintiff can meet their burden of providing reliable and relevant scientific evidence to prove that the specific features of Defendants' services they challenge cause both addiction and the specific disparate resulting injuries they allege (e.g., depression, anxiety, eating disorders, suicidality, suicide, etc.).  The novelty and complexity of the scientific and medical causation issues alone will take time to explore, and the recently amended case schedule (CMO No. 17) accounts for that.  Indeed, a critical component of the Parties' negotiations which gave Plaintiffs four more months to complete fact discovery was Defendants' view that more time was needed for expert discovery and admissibility challenges.  Plaintiffs should not be permitted to backpedal and undo the

10

significant work that has gone into the current schedule.

*Third*, Plaintiffs' proposal is overbroad.  As noted above, Judge Kuhl intends to adjudicate *general causation* challenges early, and the Parties are working in the JCCP to submit a schedule to that end.  As this Court is aware, Defendants previously petitioned this Court to set early deadlines in the personal injury cases for the Parties' disclosure of general causation experts and for filing and adjudicating Rule 702 motions concerning the admissibility of those experts' testimony.  In fact, Defendants are open to the possibility of aligning the general causation expert reports and briefing schedules across the MDL and JCCP—so long as that early phase of the schedule focuses exclusively on general causation and allows sufficient time for the Parties to complete general causation expert reports, depositions, and Rule 702/*Sargon* motions and for the Courts to resolve those issues.

But through the above proposal, the MDL Plaintiffs are attempting to expand the concept of general causation to include general company liability issues.  Those issues exceed the scope of the limited question of general causation—whether the specific features of Defendants' services Plaintiffs challenge cause both addiction and the specific disparate resulting injuries Plaintiffs allege (subject to Section 230 and First Amendment limitations)—and therefore should be deferred to a later time.[7]  The Court should, therefore, reject Plaintiffs' proposal and proceed with the extensively negotiated case schedule set forth by the Court in CMO No. 17.

To date, the JCCP Court has not yet entered an expert schedule, though Judge Kuhl has expressed a desire for *Sargon* briefing on general causation to be completed in August 2025.[8]  The

---

[7] There is no reason to accelerate these non-general causation liability issues.  Indeed, the only purpose that taking up early company liability issues serves is to give Plaintiffs a basis to insist on fact discovery closing before they confront their burden to prove general causation, an issue of pure science that they can easily address before the close of fact discovery.  For example, Plaintiffs previously claimed that before they could address general causation, they needed information on the "nature of the relevant features in Defendants [sic] platforms and how those features affect interaction with the platform" and well as "Defendants' own testing, observations, and knowledge of how their platforms' features impact user behavior, mental health, and emotional states."  At this juncture, Defendants have already largely produced such "internal research," so to the extent the Court is inclined, it could accelerate the deadlines for disclosure of general causation experts to before the close of fact discovery.

[8] Defendants previously proposed that the JCCP Court adopt the negotiated MDL expert schedule.  This proposal has not been adopted by the JCCP Court.

parties' next joint statement in the JCCP is not due until November 12.  Defendants are still evaluating what a manageable JCCP expert schedule may look like to accommodate Judge Kuhl's directive (and given the progress of bellwether discovery there) and will update the Court following the submission of the Parties' competing proposals.  Ultimately, given Judge Kuhl's stated directive on the timing of *Sargon* general causation briefing, Defendants are prepared to proceed with prioritizing general causation in the JCCP without revisiting the MDL schedule that the Parties just renegotiated and that the Court just entered after extensive discussions and consideration.  Defendants, of course, will continue to work with JCCP and MDL leadership to coordinate across proceedings and to minimize unnecessary duplication of discovery and other pretrial efforts to the extent practicable.

## V.  Expert Report Certification

**Plaintiffs' Statement**: Plaintiffs endorse the Court's suggestion that the Parties' expert reports include a certification regarding experts' "overriding duty" to the Court which provides: "(1) It is the duty of experts to help the court on matters within their expertise. (2) This duty overrides any obligation to the person from whom experts have received instructions or by whom they are paid." *See* ECF No. 1159 at 6.

Plaintiffs believe Defendants misconstrue the Court's proposed certification in seeking to reframe it as a "Rule 11 requirement for experts" given the unique obligations Rule 11 imposes on attorneys as officers of the Court. In any event, the Court should not adopt Defendants' proposals in (c) and (d), below. This is an attempt to inject new standards not relevant to the Court's proposal at the last CMC and end run the Court's determination as to *Daubert* motions.

**Defendants' Statement**: Defendants appreciate the Court's concern about the volume of expert witnesses that may be disclosed in this case and the Court's related inquiry as to whether all experts required to provide reports under Rule 702 would be willing to sign an expert certification to facilitate the efficiency of these MDL proceedings, something akin to a Rule 11 requirement for experts. 9/13/2024 CMC Tr. at 77:14-19.

Defendants propose that each party-appointed expert offering opinions in this proceeding should include in his/her expert report a certification acknowledging that (a) they owe a primary and overriding

duty of candor to the Court in all submissions to, or testimony before, the Court; (b) their report and opinions are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (c) their opinions are warranted by existing science and are consistent with their published research and writings; and (d) their opinions on the application of existing science to the facts of this case, including regarding the condition or conduct of any party, are reliably based on evidentiary support.  Defendants do not support an express reference to or adoption of the UK rule to avoid unintended consequences that might have.  The UK judicial process, and the context for the UK rule, are different from our Federal Rules of Civil Procedure and Federal Rules of Evidence.  As one example, under Rule 706 of the Federal Rules of Evidence, the Court may appoint experts that owe duties only to the Court.

**VI.    Discovery Update**

A copy of the Parties' DMC Statement for the October 24, 2024 DMC, due this same date, will be sent by email to Judge Gonzalez Rogers after it is filed.

**VII.    JCCP Status Update**

On September 16, 2024, Judge Kuhl held a status conference to continue discussions regarding the JCCP case schedule and ordered various discovery deadlines as outlined in the attached Minute Order (Ex. B).  Judge Kuhl ordered the Parties to further meet and confer regarding deadlines that pertain to expert discovery and motions, which was further discussed at subsequent status conferences on September 25 and October 3, 2024.  *See* Minute Orders (Ex. C and D).  The Parties continue to meet and confer regarding the schedule for expert discovery and *Sargon* motions.  At a future status conference, the parties will present their positions on the expert discovery schedule for further consideration by the Court.

In addition, at the October 3, 2024, status conference, Judge Kuhl addressed ongoing discovery issues related to the bellwether plaintiff discovery pool.  During the conference, the Court directed counsel to continue working collaboratively on resolving the outstanding discovery matters, with a deadline of October 9, 2024, to complete conferrals.  Follow-up status conference were held on October 10 and 14, 2024, and Judge Kuhl heard from counsel on the remaining discovery disputes concerning the Defendants' responses to bellwether-specific requests for production (RFPs), the timing of Plaintiffs'

productions, and supplementation of Plaintiffs' interrogatory responses.  The Court has instructed the parties to resolve the remaining disputes expeditiously.

At the October 10, 2024, conference, Judge Kuhl also heard argument on Defendants' demurrer and motion to strike Plaintiffs' non-product negligent failure-to-warn claims which was taken under submission by the Court for a later ruling.

## VIII.   Discussions with Counsel in *Abraham*

**Boies Schiller's Position:** The *Abraham* class action seeks to represent the interests of millions of minors nationwide, who, at present, are not represented and have had no real voice in this litigation. While there are two other class actions in this case, there is little demonstrable progress in either of those, and they do not cover minors nationwide from ages 14 to 17.  Given that reality, a separate class action track in this MDL, a step that many other MDLs have taken, makes eminent sense.

MDL lead counsel's main arguments for why a separate class action track is unnecessary is that (1) the lawsuits filed by the Attorneys General of 35 states and the two prior-filed class actions would vindicate the rights of those covered by the *Abraham* class and (2) there has been lengthy fact discovery up to this point (which, they say, is nearing a close).[9]  This is not the case.

First, the leaders of the Plaintiffs' steering committee—made up entirely of counsel who represent individuals except for one attorney—have unsurprisingly focused on fact discovery and litigation steps that are appropriate for individual claims and suggest bellwether trials.  Obviously, the litigation of a class action is quite different, and as time has passed in this litigation (which counsel in *Abraham* readily admits) it has only become more apparent that (1) the type of class action brought by *Abraham* is necessary to vindicate the rights of minors nationwide and (2) that a separate track for such an approach will singularly aid the same.  Indeed, although two years into the MDL, the most recent case management order still includes no specific deadlines in its "Pretrial Schedule" for class certification or class-related discovery.  *See* Dkt. 1159 at 2–4.  That leaves class action cases on the

---

[9] It is, however, not closed, and there remains time to involve class action counsel in upcoming depositions and to keep fact discovery open for class-specific discovery.  Counsel in *Abraham* is committed to working on an expedited basis to avoid impacting the overall pace and schedule of the MDL.

backburner.  Instead, it is important to move swiftly on class actions that seek nationwide injunctive relief for all minors — relief that stops Meta from continuing its practices for all members of that class.

Discovery needs of the *Abraham* class are not being, and cannot be addressed, by counsel focused on an individual case approach.  Class action damages for the claims in the *Abraham* Complaint, including disgorgement under unjust enrichment, require specific data based on *all* minors (especially to show representativeness of the class claims) which would neither be a priority nor relevant to individual claimants in this MDL.  Also, discovery related to injunctive relief, including but not limited to the technical feasibility of the changes demanded by *Abraham*, will be a major part of both certification for an injunctive relief class and the Court's decision on ultimate relief.  As far as counsel for *Abraham* can ascertain, these issues are not being addressed in fact discovery.  While Meta argues at length in its portion of this CMC statement that these class actions are "unsuitable for class treatment," that has not been determined at this stage.  Indeed, it is only after proper discovery tailored to the needs of these class actions and briefing that the Court will consider if these class actions should be certified.  Meta's conclusory arguments on this point are neither relevant nor accurate.

*Abraham* class action counsel do not seek to re-tread any ground that has been covered to date nor to disrupt the current case proceedings.  The proposed separate track would allow counsel who are focused on litigating the full class of all U.S. minors to narrow in on what is needed in addition to what discovery is being taken in the other tracks.  For example, deposition questions related to issues relevant to class certification, technical feasibility of classwide injunctive relief, classwide damages[10], etc. *Abraham* class counsel can and will act cooperatively with the other tracks.  *Abraham* class counsel does not seek to simply benefit from the work of others by being completely stayed in the MDL, but to actively and zealously put in the work that is necessary to represent the needs of the class.

Meta repeatedly argues in its portion of this CMC statement that these differences between the individual actions and the class actions are "immaterial," but they fail to expand on why that is.  Indeed, they do not address the above arguments pertaining to class action discovery and briefing.  Instead, Meta

---

[10] Plaintiffs' lead counsel argues that the *Abraham* Complaint is not viable as it does not seek certification under 23(b)(3).  As they also state in their excerpt of this CMC statement, this is not an issue as Plaintiff may seek to amend the complaint to address this.

opts to selectively cite the transcript from the last case management conference instead of addressing *Abraham* class counsel's arguments in this CMC statement.

Separate tracks for class actions are appropriate and have been successful in other MDL matters. Although this MDL has already established a general structure, the Court should not hesitate to make "structural adjustments as the needs of the MDL evolve." *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16–MD–2724, MDL-2724, 315 F.Supp.3d 848, 855 (E.D. Pa. 2018). Indeed, separate tracks dedicated to class actions are not uncommon in large MDLs. For example, the MDL *In re Marriott International, Inc., Customer Data Security Breach Litig.,* MDL No. 19-md-2879, had five separate tracks: a consumer class action track, government track, financial institutions class action track, securities class action track, and a derivatives track. Several other courts managing MDLs also had one track for individual claims and another for class actions. *See, e.g.*, *In Re: Philips Recalled CPAP, Bi-Level Pap, and Mech. Ventilator Prods. Litig.*, 21-mc-01230, MDL No. 3014 (W.D. Pa. 2021) (economic loss class along with individual injury cases); *In re Domestic Drywall Antitrust Litig.,* Civil Action 15-cv-1712, MDL No. 13-2437*; In re Managed Care Litig.*, Case No. 1:00–MDL–1334; *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1251–52 (10th Cir. 2022); *Tech Data Corp. v. Au Optronics Corp.*, Case No: 8:11–cv–2454–T–33JSS, 2015 WL 12843886, at *1 (M.D. Fla. Oct. 22, 2015)*; In re: SoClean, Inc., Mktg., Sales Pracs., and Prods., Liab. Litig.*, Master Docket No. 22-mc-152, MDL No. 3021. Similarly, some courts create a separate MDL track for individual claimants that opt out of a class action settlement. *See, e.g.*, *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:17-md-2800-TWT, MDL Docket No. 2800.

Second, the *Abraham* class is not represented by the prior lawsuits. As an initial matter, 35 states are not all 50 states. But, more importantly, lawsuits brought by the state are not a complete replacement for private, class action litigation. Separate class action counsel can zealously pursue the rights of litigants in a manner that AGs cannot, including because of different budgetary and political constraints.

The prior class action lawsuits also do not represent all minors throughout the United States. The class action brought on behalf of minors, *V.P. v. Meta Platforms Inc.* (No. 22-cv-06617) ("*V.P.*"), limits its class to minors under 13, as opposed to *all* minors, while the other class action lawsuit brought

out of Louisiana, *Williams v. Meta Platforms, Inc.* (No. 23-cv-04154) ("*Williams*"), has a class definition focused on Facebook (not Instagram), only includes an adult named plaintiff, not a minor, and does not contain the precise pleading that suggests it would be a viable vehicle to represent the rights of the millions covered by the *Abraham* lawsuit.

There are also different claims in our complaint that are not present in either class action complaint. *V.P. v. Meta Platforms Inc.* (No. 22-cv-06617) ("*V.P.*"), at Dkt. 1 and *Williams v. Meta Platforms, Inc.* (No. 23-cv-04154) ("*Williams*"), at Dkt. 1. The *Abraham* Complaint includes claims involving negligence, design defect, several states' consumer protection laws, and unjust enrichment related to Meta's conduct. The *V.P.* Complaint includes claims under the Unruh Civil Rights Act, unjust enrichment, and several, mostly different, state consumer protection laws. The *Williams* Complaint includes claims related to intention and negligent inflection of emotional distress, fraud, negligence, failure to warn, design defect, medical monitoring, and one state-based consumer protection law (Louisiana Unfair Trade Practices and Consumer Protection Law). Additionally, the causes of action there appear to be under Louisiana law. *Williams* Complaint ¶ 72. The classes defined in *Abraham* Complaint include minors that used Instagram during the class period. *Abraham* Complaint ¶ 184. The classes in *V.P.* include people under the age of thirteen that have Facebook and Instagram accounts and used them for at least 25 hours at the time of class certification. *V.P.* Complaint ¶¶ 82–83. And in *Williams*, the lead plaintiff is an adult individual from Louisiana and the putative class includes "all individuals who used Facebook and suffered mental health issues as a result of the use of the Facebook Platform." *Williams* Compl. ¶ 11. While unclear, the *Williams* class action appears focused on just the "Facebook Platform," not Instagram.

While *Abraham* class counsel acknowledge that there is some overlap between the existing tracks and the class actions, there are several features of this class action that are inherently different. Critically, the *Abraham* Complaint does something no other case in this MDL does: seeks *nationwide* injunctive relief to prevent Meta from implementing certain features on the *Instagram* accounts of minors and conducting market research on minors. The state complaint does not (and cannot) do that; the *Williams* complaint does not either. That means *time is of the essence* for class members, as every month that passes means more minors on Instagram are irreparably harmed by the lack of such relief.

Given the aforementioned differences between this class action and the other cases in this MDL, and the fact that MDLs of this magnitude routinely set up a separate track for class action matters, an approach which includes a separate track for class actions would benefit all class members across the MDL.  That is especially true given the record of the three law firms who represent the *Abraham* plaintiff, a record that suggests that they will move this case forward in a way that benefits all victims of the issues presented by Instagram use while working cooperatively with the lead plaintiffs to not re-tread the same ground.

***

Accordingly, the *Abraham* counsel respectfully requests that the Court create a separate track in this MDL for class actions.

**PI/SD Plaintiffs' Statement**: In the previous Case Management Order, this Court "advised counsel for Abraham to consult with the MDL plaintiffs" and ordered the Parties to update the Court at this CMC. ECF No. 1159 at 5. MDL Co-Lead Counsel met and conferred with *Abraham* counsel and invited the latter to provide an insert for this CMCS. *Abraham* counsel then furnished the below four-page argument. Plaintiffs[11] respond to some of the points made therein, but Plaintiffs ask that if the Court requires more detail about *Abraham* counsel's proposal to restructure this MDL, it do so with the benefit of full briefing.

This case has been in active litigation for two years. During that time, Court-appointed Plaintiffs' leadership have fought hard to advance the claims of children and teens from across the country who suffered serious harms due to Defendants' addictive platforms. Leadership spent a year vigorously contesting complex motions and then nearly a year intensively pursuing liability discovery, bringing the Parties close to completion of document discovery. Depositions of Meta witnesses are already noticed and underway; they will come close to the total limits for the same set by Judge Kang.

Importantly, the work of Plaintiffs' leadership has necessarily been informed by and redounded to the benefit of each category of litigants raising claims against Meta, including personal injury plaintiffs,

---

[11] Mentions of "Plaintiffs" in this section refer only to PI/SD Plaintiffs. The State AGs have not been involved these conversations and take no position on the issue.

school district plaintiffs, and the existing class plaintiffs—all constituencies of current members of leadership—as well as the State Attorneys General Plaintiffs. Just as is the case with new filings in the other categories, this work does and will continue to apply to the new *Abraham* class case.

*Abraham* counsel could have sought to participate in this work alongside the over two dozen firms who have invested heavily in it to date,[12] but instead, they filed their case midway into this litigation, belying the necessity of a separate class track.[13] Creating such a track is not necessary in the near term and would risk delaying the aggressive case schedule the Court and Parties have strived for, as well as upsetting the litigation's carefully balanced leadership structure very late in the game. As *Abraham* counsel say, time is of the essence in vindicating the rights of kids harmed by Defendants' actions and omissions. But the way to do that is to allow Plaintiffs' counsel to rapidly and efficiently complete liability discovery. The Parties can reassess at that time whether and how class proceedings may advance the case further.

As *Abraham* counsel acknowledge, this MDL already includes two putative class action complaints. The first, *V.P. v. Meta Platforms, Inc.*, No. 4:22-cv-6617, was filed on September 27, 2022, and removed to federal court on October 27, 2022. This means that for nearly the entirety of this MDL (which was created on October 6, 2022), the *V.P.* complaint has been on file, and the counsel who filed it (Seeger Weiss LLP and Social Media Victims Law Center) have been in Court-appointed leadership positions. The second, *Williams v. Meta Platforms, Inc.*, No. 4:23-cv-4154, was filed the following summer, over a year ago.

*Abraham* counsel appear to wave away the significance of the existing and earlier-filed cases by pointing to purported differences between those complaints and the one they recently filed. These arguments misdescribe both the *Abraham* complaint and the existing class complaints, and their claims appear to disregard this Court's previous orders defining the scope of the litigation. The current *Abraham*

---

[12] If *Abraham* counsel wants to contribute to the existing workstreams alongside the many others doing so rather than seek changes to the structure of the litigation that will disrupt its efficient progress at this late juncture, Plaintiffs' leadership have indicated openness to same.

[13] Indeed, this approach differs from the cases they cite that involved a parallel "class action track." In those, the courts instituted such a structure at the beginning of the case—not years into litigation, in the middle of discovery.

complaint was not brought on behalf of all people who used Instagram when they were minors, as stated by counsel below; it was instead brought on behalf of "[a]ll minors . . . who use or have used Instagram during the Class Period." That definition is limited to people who are *currently* minors. (The class definition may change. *See* Fed. R. Civ. P. 23(c)(1)(B). But that rejoinder is equally available to *V.P.* and *Williams*.)

*Abraham* counsel also assert their complaint is the only one to seek "*nationwide*" relief. Not so. The *V.P.* complaint asserts claims for unjust enrichment on behalf of a nationwide class, including a request for nationwide injunctive relief. *V.P.* Compl. ¶ 114. And the Master Complaint as well as the State Attorneys' General complaint already seek injunctive relief that would require Defendants to adopt platform-wide changes (such as warning labels). ECF No. 494 at p.270. Relatedly, *Abraham* counsel claim they are the only parties seeking classwide damages for "disgorgement under unjust enrichment." Again, that is not correct. The *V.P.* Complaint seeks such relief. *V.P.* Compl. ¶ 9. In addition, many of the consumer protection claims—including those brought by the 35 State Attorneys General—seek similar "disgorgement of ill-gotten gains." ECF No. 1214 (Order Largely Denying Mot. to Dismiss) at 74. Thus, the interests of the putative class members in *Abraham* are protected by the litigation as it stands, and the discovery already sought covers all the *Abraham* claims and allegations.[14]

One final substantive point. It is unclear the extent to which the *Abraham* complaint as drafted is viable as a matter of law. For instance, while *Abraham* seeks compensatory damages (*Abraham* Compl. at p.80), the complaint does not seek certification under Rule 23(b)(3) as would be required for classwide certification of monetary damages. The complaint instead seeks certification only under Rule 23(b)(2) and (c)(4). While it is routine to amend complaints to resolve such defects, it does not make sense to upend the structure of the litigation simply because someone filed an initial complaint with a very broad class

---

[14] The only unique discovery class cases would require would be discovery on class representatives, which leadership submits is not necessary or appropriate at this time given the discovery on bellwether plaintiffs and the existing, aggressive case schedule.

definition seeking very broad claims. This is especially true because it is not clear from the *Abraham* Complaint whether they are accounting for this Court's prior rulings.[15]

In sum, the litigation posture and schedule, the comprehensiveness of discovery being sought from Meta as to all existing and new plaintiffs, the adequacy of Court-appointed Plaintiffs' leadership to continue pursuing that work zealously and effectively, and an assessment of the *Abraham* case as pled all weigh against the creation of a separate class action track at this juncture.

**Meta's Position:** The Court should not add an entirely new class track at this late date. *First*, none of the three class actions now pending in this MDL are suitable for class treatment—a conclusion that is apparent from the face of all three pleadings. *Second*, opening a class track would risk the progress of hundreds of complex cases—cases pending for years that are nearing the end of an intensive document discovery period—based on a single law firm's belated attempt to intervene. *Third*, any discovery needed by the putative class plaintiffs is adequately covered by the discovery being taken by the PI/SD and AG Plaintiffs.

### A.   The Putative Class Actions Are Fundamentally Unsuited to Class Treatment

As an initial matter, these cases are fundamentally unsuited to class treatment. Class treatment is particularly inappropriate in the context of the claims alleged here given the wide range of specific harms alleged by Plaintiffs, the individualized nature of the alleged use of the various platforms and features at issue, the divergent alternative causes for the alleged injuries in these cases, and other case-specific facts. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." (cleaned up)); *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005) (recognizing inherent barriers to certifying classes in personal injury cases). Indeed, that is precisely why the sophisticated law firms currently before the Court have filed hundreds of individual cases with plaintiff-specific allegations in this MDL.

At the same time, the single proposed class representative's personal injury claims can be effectively litigated through the existing process for pursuing personal injury claims. Only lawyer

---

[15] *Compare, e.g.*, *Abraham* Compl. at p.81 *with* ECF No. 1214 (Order Largely Denying Mot. to Dismiss) at 25.

interests are favored by instead trying to funnel her claims through a class action that will bring her no real individual benefit and instead hamper the more efficient progression of her case.

The unsuitability of these cases for class treatment alone justifies denying the untimely request for a separate class track.

**B.      Opening a Separate Class Track Could Risk the Progress of Hundreds of PI Cases**

Boies Schiller's request to set up a separate "class track" should be denied for the additional reason that the PI/SD cases and State actions before the Court in this MDL are far along and nearing the end of document discovery.  The first two PI cases currently in this MDL were filed nearly three years ago, and were coordinated before this Court two years ago.  *See Doffing v. Meta Platforms, Inc., et al.*, Case No. 4:22-cv-05892-YGR (N.D. Cal.), ECF 1 (January 2022 Complaint); ECF 1 (October 2022 JPML Transfer Order).  Since then, hundreds of individual cases have been filed by dozens of law firms and coordinated into this proceeding (and the JCCP).  That includes two putative class actions, one of which was filed by a co-lead firm for the PI/SD Plaintiffs, Seeger Weiss.  *See Williams v. Meta Platforms, Inc., et al.*, Case No. 4:23-cv-04154-YGR (N.D. Cal.); *V.P. v. Meta Platforms, Inc., et al.*, Case No. 4:22-cv-06617-YGR (N.D. Cal.).  The Court has heard multiple motions to dismiss, rendered legal rulings that will guide the cases going forward, and conducted extensive case management.  Plaintiffs and Defendants have engaged in weekly (and often near-daily) communications.

The discovery taken to date has been extensive and intensive.  Judge Kang has settled numerous formal discovery disputes and provided guidance on many other issues.  Meta alone, for instance, has produced more than 1.4 million documents (consisting of over 6 million pages).  The discovery schedule already required one extension, *see* ECF 1159 (CMO 17 setting modified schedule), and is weeks away from the November 5 substantial completion deadline.  And throughout, Boies Schiller has been absent. *See* 9/13/24 CMC Tr. at 57:22–23 (*Abraham* counsel conceding that "we need to get up to speed with all of the case management orders and what's gone on with the case").

It is simply not feasible at this late juncture to add an entirely new class track to these proceedings, which could jeopardize the overall case schedule, and the close coordination and progress made by the Parties to date.  Boies Schiller's response--that discovery is nearly closed but is not quite closed--is misplaced: this CMC Statement is being filed just a few weeks away from the November 5 substantial

completion deadline for document productions; there is no reasonable way to start and conclude a new round of Defendant discovery in that time.  And there is no warrant for doing so to accommodate one firm's belated attempt to take over a small portion of the suits via a complaint filed in *August 2024—* nearly two years after coordination, nearly a year after the Court's November 2023 order ruling on the first personal injury motion to dismiss, ECF 430, and years after two other putative class actions were already filed.

C.    **Any Discovery Needed by Putative Class Plaintiffs Is Covered by Existing Discovery**

What is more, while sizable variation in plaintiff-specific facts make these types of cases wholly unsuitable for class action treatment, any discovery that the putative class cases could reasonably need from Meta (if the cases survived a motion to dismiss) would be (and has been) covered by the existing suits and existing discovery.[16]  Not only are Boies Schiller's assertions to the contrary incorrect (as explained below); it also is unclear how they could possibly have a basis for their argument that the discovery so far is inadequate: they have been totally uninvolved and have little idea what discovery has been propounded and produced.

As the Court has already found, the common allegations against Meta mean that the existing MDL cases and *Abraham* "concern substantially the same parties, property, transaction, or event," and it "appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."  Civ. L.R. 3-12(a); *see* ECF 1099 (finding cases related under this standard).  The Complaint alleges that Meta attracts teen users to Instagram and includes "addictive" features such as the use of recommendation algorithms, "Likes," notifications, and others, and that those features allegedly cause certain mental health harms in teens.  In addition, the Complaint alleges that Meta did not adequately verify ages of users (and makes reference to COPPA) and or warn consumers about the alleged harms of Instagram.  *See generally* ECF 1081.

---

[16] Meta does not concede that the named plaintiffs in the putative class actions are adequate representatives for the proposed classes under Rule 23 and reserves all rights with respect to that issue. Discovery into the named plaintiffs can happen at a later phase, so any issues of individual adequacy can be dealt with later.  That is no reason to upend the status quo by adding a new track: *any* named plaintiff can be subject to adequacy challenges.

Indeed, the Boies Schiller Complaint appears to have copied many passages verbatim from the operative PI/SD and AG Complaints in this MDL, including from Meta's documents the Court ordered produced to the MDL Plaintiffs. The Complaint asserts claims for product liability, negligence, and violation of consumer protection statutes—all of which are asserted by the PI Plaintiffs or State AGs. The case is a putative class action in which the named plaintiff seeks to represent "[a]ll minors in the United States who use or have used Instagram during the Class Period" and all minors in certain states who have done so. The four Meta entities named as defendants in the Boies Schiller Complaint are all Defendants in this MDL. *See generally id.*

Those overlapping allegations are precisely what the discovery already conducted in these cases covers. Indeed, when the Court asked Boies Schiller to explain the purported differences between *Abraham* and existing MDL cases, counsel was unable to point to anything meaningful, answering: "[l]ike the nationwide injunctive relief for 18 and under. The other class is 13 and under. We think that's important. Also, you know, timing . . . . just preservation of data, you know, beyond certain bellwether Plaintiffs; you know, issues of representative data; you know, those types of things that I think make this case a little bit different." 9/13/24 CMC Tr. at 59:4–13. In this CMC Statement, Boies Schiller similarly attempts to build out immaterial variations across the complaints into reasons, wholly unpersuasive, as to why the discovery conducted so far does not adequately cover their complaint.

Many MDL Plaintiffs are between ages 13 and 18, and discovery has included information regarding Meta's platforms and users in that category; Boies Schiller's argument entirely ignores this reality. For that reason, Boies Schiller's myopic focus on the minor differences between their case and others misses the forest for the trees: regardless of those immaterial variations, the discovery they claim would flow uniquely from their complaint is adequately covered. In addition, the under-18 rationale is factually wrong: one of the two already-existing putative class actions has a proposed class of *all* Facebook users allegedly harmed, not just those under age 13. *See Williams*, Case No. 4:23-cv-04154-YGR, Complaint (ECF 1) ¶ 11. Further, other cases in the MDL seek injunctive relief—including the States,

which span the country.[17]  And as to the Boies Schiller preservation claim, that is no reason to allow an individual personal injury claim to masquerade as a diversionary class action.  In any event, the Parties held a year-long negotiations over a preservation order, and Boies Schiller was unable to coherently explain what additional preservation or discovery their individual claim merited when the Court asked them directly a second time at the last CMC.  *See* 9/13/24 CMC Tr. at 59:17–60:1.[18]

## IX.   Parties' Position Regarding Defendants Roblox and Discord

Plaintiffs' Counsel representing school districts and personal injury claimants with claims against Discord and Roblox have conferred with counsel for those defendants.  No claims against these defendants are included in any bellwether case.  Plaintiffs, Discord, and Roblox have agreed in principle to a stay of current and future claims against these defendants while bellwether cases against Meta, Snap, TikTok and Google are litigated.  Plaintiffs, Discord, and Roblox plan on submitting an agreed proposed order to the Court implementing a stay shortly.

Defendants Meta, Snap, TikTok, and Google have not been invited to these conferrals and have not yet formulated their position on the stay proposal they first learned about on October 17, 2024.

---

[17] In making this point, Meta does not concede that nationwide injunctive relief is appropriate based on the AGs' allegations and in light of limitations on state-law remedies.

[18] To the extent the Court is inclined to take action regarding the putative class actions, it should be addressing motions to dismiss—not full-blown discovery coordination.

Respectfully submitted,

DATED: October 18, 2024

By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET

MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106

27

Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU

**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333

rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Bianca E. Miyata_
Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*
Senior Assistant Attorney General
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

31

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*

32

Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General
and the New Jersey Division of Consumer Affairs
Matthew J. Platkin, Attorney General for the State of
New Jersey, and Cari Fais, Acting Director of the New
Jersey Division of Consumer Affairs*

AGENDA AND JOINT STATEMENT FOR OCTOBER 25, 2024, CASE MANAGEMENT CONFERENCE
4:22-md-03047-YGR

COVINGTON & BURLING LLP

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

KING & SPALDING LLP

By: */s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
          tharris@kslaw.com

Kristen R. Fournier, *pro hac vice*
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: kfournier@kslaw.com
David P. Mattern, *pro hac vice*

34

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc.,
TikTok Ltd., ByteDance Ltd., and TikTok LLC*

MUNGER, TOLLES & OLSON LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)

35

Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013

36

Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

AGENDA AND JOINT STATEMENT FOR OCTOBER 25, 2024, CASE MANAGEMENT CONFERENCE
4:22-md-03047-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 18, 2024

By: /s/ *Lexi J. Hazam*