UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*ALL PERSONAL INJURY ACTIONS* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING MDL BELLWETHER PLAINTIFFS' LOST DEVICES AND THE PRESERVATION OF NON-BELLWETHER MAIN DEVICES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the Personal Injury Bellwether Plaintiffs and Defendants respectfully submit this joint letter brief regarding their outstanding dispute over the preservation of non-bellwether Plaintiffs' main devices.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On August 5, 2024, October 7, 2024, and again on October 11, 2024, lead trial counsel for the Parties involved in the dispute attended final conferrals. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

The parties will be prepared to address these disputes at the Court's earliest convenience, including at the October 24, 2024 Discovery Management Conference.

Dated: October 21, 2024                  Respectfully submitted,

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Jessica Davidson*

Jessica Davidson (*pro hac vice*)

**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2588
Email: Jessica.Davidson@skadden.com

John H. Beisner (State Bar No. 81571)
Nina R. Rose (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
1440 New York Avenue, N.W.,
Washington, DC 20005
Telephone: (202) 371-7000
Email: John.Beisner@skadden.com
Email: nina.rose@skadden.com

Jason David Russell (SBN 169219)
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144
Telephone: (213) 687-5328
Email: jason.russell@skadden.com

Catherine Mullaley (*pro hac vice*)
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4851
Email: catherine.mullaley@skadden.com

**MUNGER, TOLLES & OLSON LLP**

*/s/ Jonathan H. Blavin*

Jonathan H. Blavin, SBN 230269
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*

Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**FAEGRE DRINKER LLP**

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson, *pro hac vice*
**FAEGRE DRINKER LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
**FAEGRE DRINKER LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro hac vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and*

4

*ByteDance Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

*/s/ Brian M. Willen*

Brian M. Willen (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
**WILSON SONSINI GOODRICH & ROSATI**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
**WILSON SONSINI GOODRICH & ROSATI**
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**WILLIAMS & CONNOLLY LLP**

*/s/ Joseph G. Petrosinelli*

Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com

5

680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Yardena R. Zwang-Weissman*

Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*


*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**

401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100

7

SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.

HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

## **ATTESTATION**

I, Jessica Davidson, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Pursuant to Section H of this Court's Standing Order in Civil Cases, lead counsel for Plaintiffs and each of the Defendants attended the final meet-and-confer on October 11, 2024, which was conducted via a videoconference Zoom meeting, as lead counsel were in attendance from locations across the country more than 100 miles apart.

Dated: October 21, 2024                                                                 /s/ Jessica Davidson
                                                                                                      JESSICA DAVIDSON

**Defendants' Position**: Plaintiffs' devices contain unique evidence of their digital lives (including use of non-defendant platforms and applications), information that is critical to their claims, as Plaintiffs themselves have admitted. (*See* 7/11/24 DMC Tr. 25:10-11 (Plaintiffs' counsel: "We agree that these devices will have certain types of data and information that the defendants are entitled to have," including "app usage data" and "device usage metrics").) The Court has recognized the importance of such evidence, by ordering forensic imaging and production of these data by the bellwether Plaintiffs. Nonetheless, and even though multiple bellwether Plaintiffs have now lost, wiped clean or traded in their devices, Plaintiffs have refused to: (1) identify when non-bellwether Plaintiffs in the MDL proceeding received a litigation hold notice; (2) explain the steps their counsel took to ensure that relevant electronically stored information ("ESI") and the devices they used to access Defendants' platforms were preserved; and (3) forensically image those devices. Instead, Plaintiffs' co-lead counsel threatened "swift retribution" for these requests.

As this Court has repeatedly recognized, Defendants have a right to forensically imaged data for the devices used by PI bellwether Plaintiffs to access Defendants' platforms because such data are directly "relevant to how the device user used that device during the relevant time period." (*See* Discovery Mgmt. Order No. 8, ECF No. 1025, at 6.) The data at issue would reveal how frequently Plaintiffs used the devices and whether other applications, notifications from those applications, and device settings played any role in those alleged harms. This information is highly relevant to causation and speaks directly to Plaintiffs' credibility and the nature of their claimed injuries—all of which Defendants have a right to challenge at trial. Defendants have no way to obtain this information except directly from Plaintiffs' devices.[1] Preservation is critical because usage data are regularly overwritten in the normal course of device usage (i.e., to make space for new data), including with respect to how much time Plaintiffs spend on non-Defendant platforms and applications. For this reason, simply retaining the devices is not enough. *See* 9/25/24 JCCP CMC Tr. 58:6-9 (Plaintiffs' counsel: "you could be talking about 30 to 60 days that the phones store this type of data in a lot of instances").

The Court's orders pertaining to forensic imaging of the bellwether Plaintiff devices underscore the importance of prompt and diligent preservation of key evidence ***by all Plaintiffs***. As this Court has recognized, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Floyd v. 24 Hour Fitness USA, LLC*, No. 23-CV-00871-EMC-PHK, 2024 WL 710617, at *3 (N.D. Cal. Feb. 21, 2024) (Kang, J.) (quoting *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018)). Moreover, where, as here, there is a risk that such a duty will not be followed and key evidence may be lost before trial, "[f]ederal courts have the authority to preserve evidence by issuing preservation orders." *Martin v. Johnson*, No. 2:20-CV-11342-SB-SHK, 2022 WL 17224707, at *1 (C.D. Cal. Jan. 19, 2022).

Recent developments highlight these risks with respect to the devices Plaintiffs have used to access Defendants' platforms and are the basis for Defendants' request. In July 2024, Defendants learned

---

[1] Plaintiffs have been on notice since 2022 that Defendants sought preservation of device data. *See* E-Mail from A. Simonsen, Sept. 17, 2022 (requesting confirmation that plaintiffs are "preserving all devices associated with any of the plaintiffs'/minors' Meta accounts").

13

that seven of the 12 MDL bellwether Plaintiffs lost, sold, destroyed, discarded, or gave away ten electronic devices containing highly relevant evidence *after filing their lawsuits*. (*See* Joint Status Report on Forensic Imaging and Device Data, ECF No. 1204 at 7-8.) In the JCCP, at least five of 20 bellwether Plaintiffs have done the same.[2] According to Plaintiffs, some of these losses occurred after Plaintiffs upgraded their devices to a new model. (*See id.*) This loss of critical evidence in the bellwether cases is also likely occurring in many non-bellwether cases, as Plaintiffs (a) upgrade their devices to new models or (b) lose, sell, or discard their devices. This is all the more true since many MDL Plaintiffs are teens or young adults who may not appreciate the significance of litigation hold notices, much less understand how to comply with them.

Even though Plaintiffs secured an order requiring Defendants to identify each custodian who received a litigation hold and when (*see* DMO 5, at 3, ECF No. 789), Plaintiffs' counsel are unwilling to confirm whether each Plaintiff in the MDL received such a notice, precluding Defendants from verifying whether the non-bellwether Plaintiffs understand their obligation to preserve ESI and their devices. As a result, there is a very high risk that devices used by non-bellwether Plaintiffs will be lost or destroyed, leaving Defendants without key evidence to defend themselves in those cases. Plaintiffs' counsel have also taken the position that forensically imaging all of Plaintiffs' main devices would be too expensive. This position fails for multiple reasons.

***First***, Plaintiffs' proposal to forensically image only the bellwether Plaintiffs' devices would not adequately protect Defendants' rights. Each non-bellwether Plaintiff is unique, and the circumstances surrounding their device usage vary from one Plaintiff to the next. Thus, each Plaintiff must ensure that their main devices, and the critical data on those devices, are preserved.

***Second***, while Plaintiffs point to the expense of forensic imaging,[3] that burden is "proportional to the needs of this case." *See France v. Chippewa Cnty.*, No. 2:20-cv-248, 2021 U.S. Dist. LEXIS 265098, at *6 (W.D. Mich. Nov. 22, 2021) (requiring forensic images despite cost where the relevant information was "not available through less-invasive means" and plaintiff sought substantial damages). Plaintiffs seek significant damages from Defendants based on the claim that the "design" of their platforms caused users to become addicted, leading to a variety of mental and other personal injuries. To fairly challenge that theory in any given trial, Defendants must have a complete and accurate picture of the usage behaviors, patterns, and history for the particular Plaintiff pressing that claim. The only way to ensure the availability of that key evidence is to require each non-bellwether Plaintiff to preserve the devices they used to access Defendants' platforms and subject those devices to forensic imaging.[4] The MDL leadership has repeatedly told

---

[2] The JCCP Plaintiffs brought this issue up at the JCCP CMC earlier this month, and Judge Kuhl advised Defendants to present the issue to Your Honor. *See* 10/9/24 JCCP CMC Statement at 11; *see also* 10/14/24 JCCP CMC Tr. 20:15-17, 37:3-6.

[3] It is unclear how Plaintiffs calculated costs whether they included paying for substitute phones while imaging is occurring or for CSAM review, which is unnecessary at the preservation stage.

[4] Defendants have asked Plaintiffs to explain how they are ensuring usage data is being preserved absent device imaging. Plaintiffs have refused.

the Court that they are prepared to devote the resources needed to prosecute these cases,[5] and they should be held to that commitment.

Plaintiffs' speculation that imaging would "have a chilling effect" on potential plaintiffs is also meritless. No bellwether Plaintiff has dropped out of the litigation upon being ordered to image their devices. In any event, "[w]hen a plaintiff files any court case," they "must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010).

Finally, Plaintiffs' counsel threatened to exact "swift retribution" on Defendants by seeking to forensically image Defendants' custodians' phones. This threat is highly improper. Defendants' employees are not parties to this litigation, and the manner in which they have used their devices (e.g., what platforms or applications they used) is not at issue. Thus, unlike the data contained on Plaintiffs' devices, full-file forensic images of Defendants' custodians' cellphones would be irrelevant to the claims and defenses in this litigation.[6] *See In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) (ordering forensic imaging only of plaintiffs' devices because they "actively put their devices at issue when they chose to sue Apple"). Litigation is a search for truth, not a war, and retribution is not a basis for preservation orders or discovery under the Federal Rules. In any event, Plaintiffs' allegations regarding Defendants' purported preservation failures are baseless, irrelevant and unripe.

**Plaintiffs' Position:** Defendants' demands concerning forensic imaging of non-bellwether Plaintiffs' devices and discovery into preservation efforts by Plaintiffs' counsel are wholly unjustified and should be denied in their entirety.

As a threshold matter, Defendants egregiously mischaracterize the state of the record even with respect to bellwether Plaintiff devices. That record plainly shows bellwether Plaintiffs and counsel understand their duty to preserve relevant data and have made good faith efforts to do so. Of the 10 devices at issue that were once used by 7 bellwether Plaintiffs:

- At least 3 devices[7] were Chromebooks or laptops that were not identified as "main" devices routinely used by the Plaintiff to use Defendants' platforms.[8]

- Another 4 devices[9] were iPhones for which data was either captured by creating a "logical image" for the litigation or the data was transferred to a new iPhone when the

---

[5] (*See, e.g.*, ECF No. 25 (committing Lieff Cabraser's "backing and resources"); ECF No. 29 (committing the "full support and resources of Motley Rice"); ECF No. 22 (Beasley Allen "will commit significant resources"); ECF No. 21 (similar for Morgan & Morgan).)

[6] Defendants have taken reasonable steps to preserve relevant information from custodians.

[7] For bellwether Plaintiffs Craig, J.D., and Mullen.

[8] One clarification as to Chromebooks: Plaintiffs' counsel understands from their technical experts that Chromebooks cannot be imaged given their design. Data concerning Chromebook use must be obtained by collecting the user's Google account. Thus, as Defendant Google plainly is aware, physical possession of a Chromebook does not impact access to usage data.

[9] For bellwether Plaintiffs Craig, B.H., and S.K.

15

      plaintiff replaced an old device.

- For each of the bellwether Plaintiffs at issue, one or more of the "main" devices they used have been fully forensically imaged.[10]

Mistakes happen. And some happened here for some bellwether Plaintiffs. But none of this comes remotely close to showing that any bellwether Plaintiffs' counsel failed to take seriously the duty to preserve evidence or failed to properly advise their bellwether Plaintiff clients of their obligations to preserve relevant data.[11]

If, after bellwether-Plaintiff-specific discovery, Defendants believe there has been spoliation of relevant data, they can attempt to seek appropriate relief with respect to that bellwether Plaintiff. That is the only recourse to which Defendants might even possibly be entitled.

What Defendants are not entitled to do is to upend the bellwether structure of this MDL to demand that the many hundreds of non-bellwether Plaintiffs—as to whom discovery is stayed and as to whom Defendants have only speculation and no actual evidence that any critical data has been lost—must undertake the expensive, cumbersome, and invasive process of having all of their primary devices forensically imaged, as opposed to simply retaining the devices.[12] None of what may or may not have happened with respect to any individual bellwether Plaintiffs as they went about their lives and dealt with their devices gives rise to any presumption, let alone actual evidence, of widespread spoliation by the non-bellwether Plaintiffs.

It is especially telling that, despite nearly a full year of negotiations on preservation issues and what information would be required of non-bellwether Plaintiffs thru PFSs, Defendants did not seek any forensic imaging of any Plaintiffs' devices—as opposed to simple retention of the devices—until this summer. Even then, Defendants served discovery only on bellwether Plaintiffs. Plaintiffs do not concede that Defendants genuinely need data that can be obtained only through a forensic image of a device. But Defendants' failure even to seek to preserve such data earlier—despite their assertion now that such data is routinely overwritten as retained devices are used—only calls into question whether the data is as critical (or relevant) as they claim.

The weakness of Defendants' belated demand for forensic imaging is decidedly outweighed by

---

[10] Craig (2 main devices with FFS extractions), Davidson (2 main devices with FFS extractions), B.H. (2 main devices with FFS extractions, plus a logical image of the missing iPhone), S.K. (4 main devices with FFS extractions, plus a logical image of the missing iPhone), Melton (7 main devices with FFS extractions), Clevenger (3 main devices with FFS extractions).

[11] Defendants also ignore that Plaintiffs have agreed to allow Defendants additional interrogatories and deposition time to explore the actual facts of what did or did not happen with respect to the limited number of bellwether Plaintiff devices they reference, many of which were logically imaged or were not devices that were "habitually, routinely, or regularly" used by the bellwether Plaintiff to access Defendants' platforms.

[12] None of the cases Defendants cite allowed forensic imaging of non-bellwether Plaintiffs where, as here (1) there is a stay of non-bellwether discovery and (2) forensic imaging was neither negotiated nor ordered as part of the Plaintiff Fact Sheets or other requirements for non-bellwether plaintiffs.

the costs and burdens of such a process. Plaintiffs estimate that forensic imaging process would cost many millions of dollars (for the imaging, CSAM scanning, and replacement phones). It also will likely have a chilling effect on many non-bellwether plaintiffs before any discovery from them is due—as well as on potential plaintiffs considering suing Defendants.

Notably, when Defendants sought to raise this issue in the JCCP proceedings, Judge Kuhl indicated she would not hear this issue until after the October 28th substantial completion deadline and instructed the parties to address this issue in a joint report at the November CMC. Hearing Transcript, 10/14/2024 JCCP CMC, 36:28-37:3. Nevertheless, Judge Kuhl stated that "I just don't feel Defendants have the facts that [they] need to bring a motion here. This is just kind of out in the ether to me. You don't have a specific situation." *Id.* at 36:8-11.

Judge Kuhl also noted Defendants' own preservation issues and that she felt this was "tit for tat." *Id.* at 36:24-26; 37:7-9.[13] On this, Plaintiffs have identified many ways in which Defendants have not complied with their own document and data preservation duties. This includes a record of failures to place vast swathes of key witnesses—including senior company officers—under timely litigation holds, failing to disclose and preserve personal email and other accounts routinely used for work purposes (including, again, by the most senior company officers), and allowing employees under litigation holds to continue to have access to ephemeral chat systems that did not preserve communications. Plaintiffs reserve the right to raise those failures with the Court and seek appropriate relief. We note them here because a child or teenager losing or replacing their phone pales in comparison to the multiple failures by these sophisticated Defendants with legion in-house and litigation counsel. As Plaintiffs' co-lead counsel clarified on the same call referenced by Defendants, it is important to ensure evenhandedness concerning preservation. *Finjan, Inc. v. Juniper Network, Inc.*, 2021 WL 75735, at *3 (N.D. Cal. Jan. 9, 2021) (confirming that "the rule of law embodies evenhandedness.").

Defendants' demands are fundamentally unfair and a patent attempt to strongarm Plaintiffs. The time will come when the non-bellwether Plaintiffs will have their opportunity to have their stories told and prove up their injuries. When that time comes, if Defendants believe they have actual facts showing actual spoliation of relevant data, they can try to seek appropriate relief. But there is no record, let alone legal basis, for Defendants to burden the non-bellwether Plaintiffs now with forensically imaging each of their primary devices. Nor is there any basis to demand proof that each non-bellwether Plaintiff was appropriately advised of their duty to preserve relevant evidence. Defendants' demands are an extraordinary overreach that threatens to distract and divert resources from discovery of actual, relevant facts as the parties finally enter the fact deposition phase in this case. Defendants' demands should be denied.

---

[13] Given the impact this issue would have on the JCCP (where there are over 1,700 personal injury cases and, therefore, where the costs and burden of forensic imaging, replacement phones, and CSAM scanning is even more extreme than it already would be for the MDL non-bellwethers), the JCCP Plaintiffs respectfully submit that Judge Kuhl should address Defendants' demands as to the JCCP plaintiffs, or be consulted before any forensic imaging is ordered for JCCP non-bellwether Plaintiffs.