UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 11 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF OCTOBER 24, 2024**<br><br><u>Upcoming DMC Dates:</u><br>November 21, 2024 at 1:00 pm<br>December 11, 2024 at 1:00 pm<br>January 16, 2025 at 1:00 pm |

On October 24, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkt. 1273. This Order memorializes and provides further guidance to the Parties, consistent with the Court's directions on the record at the October 24th DMC, regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

### I.   Meta Hyperlinked Documents

Plaintiffs seek guidance from the Court regarding Meta's production of hyperlinked documents (*i.e.,* documents which correspond to hyperlinks embedded or found in another document), particularly relating to depositions set to take place within the next thirty days. Plaintiffs acknowledge that they did not identify this issue as a ripe dispute in their briefing but argue that it is time-sensitive and urgent because of the upcoming depositions. Plaintiffs state that there have been recent depositions where all hyperlinked documents had not yet been produced (including one deposition where Meta objected to questions on the basis that the document at issue was not authenticated because it was "incomplete") and they raise concerns about having to recall

future deponents due to missing hyperlinked documents. Plaintiffs complain that Meta has not been receptive to their requests to meet and confer regarding the prioritization of hyperlink production for depositions set within the next thirty days.

Meta argues that: (1) Plaintiffs did not give them any notice that they would be raising this issue at the DMC; (2) Meta has been processing a tremendous volume of hyperlink requests since the last DMC (pursuant to the Court's previous directives on this issue), they are devoting huge amounts of manpower to processing them, they have in fact produced a large number of the hyperlinked documents at issue for the depositions, and they are doing the best they can to produce documents as quickly as possible; (3) many of Plaintiffs' hyperlink requests have been for documents already produced by Meta which Plaintiffs can easily find themselves; and (4) Meta has been adequately met and conferred with Plaintiffs on this issue.

The Court **ORDERS** Meta to continue to prioritize hyperlink requests for pending depositions set within the next thirty days. Meta shall promptly produce the hyperlinked documents, or, where such documents have already been produced, Meta shall promptly identify the documents by Bates number. Plaintiffs are directed to redouble their efforts to identify within the produced documents they have received any documents which correspond to the hyperlinked documents they seek, so as to minimize the number of hyperlink requests. The Parties shall continue to meet and confer on this issue to achieve a mutually agreeable resolution of any remaining disputes. The Court encourages the Parties to work out an agreement to cooperatively process informal requests made by Plaintiffs to Meta to confirm whether documents Plaintiffs found within the already-produced documents correspond to specific hyperlinks and whether any or all of such requests would not count against Plaintiffs' weekly cap on hyperlink requests.

The Court incorporates by reference its guidance on objections that may be raised during depositions, consistent with the Federal Rules of Civil Procedure. The Court assumes that smart lawyers will not waste time arguing or objecting over the authenticity of documents produced out of a company's files.

II.     **SD Bellwether Plaintiffs' Damages Computations**

Defendants ask the Court to order Plaintiffs to identify by Bates number the documents

that support their Rule 26(a)(1)(iii) damages computations. [Dkt. 1230 at 18-21].

Plaintiffs argue that this dispute is unripe, and even if it were ripe, Rule 26 does not require identification of damages documents by Bates number, only that the documents be produced in accordance with the requirements of Rule 34 (which also does not require identification by Bates number). *Id.* at 21-23.

The Parties confirm that the SD Bellwether Plaintiffs have provided lump sum damages computations under Rule 26. The SD Bellwether Plaintiffs have committed to provide updated damages disclosures which go beyond just a lump sum number by no later than November 15, 2024.

The SD Bellwether Plaintiffs state that the documents supporting their damages computations have either already been produced or will be produced soon. They argue that they should not be required to specifically identify the documents by Bates number because Rule 34 does not require identification by Bates number. Characterizing their damages computations as "very early preliminary estimates," the SD Bellwether Plaintiffs also argue that there is "no need" to specifically identify the documents supporting the calculations, because they might not even end up relying on those documents to support their damages claims at trial.

The Court finds that, while Rule 34 does not require identification of documents by Bates number, it also does not prohibit requiring such identification. *See, e.g.*, *Graham v. State Farm Auto. Ins. Co.*, No. 19-cv-00920-REB-NYW, 2021 WL 2092813, at *1 (D. Colo. Mar. 31, 2021); *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08-cv-408, 2015 WL 13048741, at *19 (S.D. Ohio Sept. 25, 2015). Rule 26's disclosure requirements are intended to afford Defendants the ability to understand and assess what their potential exposure is and on what grounds. *See Huawei Techs. Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02787-WHO, 2019 WL 655279, at *2 (N.D. Cal. Feb. 17, 2019) ("Rule 26(a) requires a party to provide information about the damages it seeks . . . so that the other side can 'understand the contours of its potential exposure and make informed decisions as to settlement and discovery.'"). The disclosure is intended to help promote the prospect of settlement, among other goals. This is why other courts, such as *Graham* and *Kline*, have required plaintiffs to identify by Bates number the damages documents relied upon for Rule 26 disclosures,

3

1  especially where ferreting out those documents from a much larger universe of produced
2  documents can be viewed as hiding or burying the information (and frustrating the goals of
3  disclosure under the Federal Rules).

4  Accordingly, the Court **ORDERS** the SD Bellwether Plaintiffs to identify by Bates
5  number the documents supporting their damages computations in their Rule 26 damages
6  disclosures and provide this information to Defendants, as part of their supplemental disclosure
7  due **November 15, 2024**. If and when Plaintiffs serve further supplemental Rule 26 damages
8  disclosures as this case proceeds, they shall also contemporaneously identify (and produce, if not
9  previously produced) by Bates number the documents or other materials on which each damages
10 computation is based. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii), (e)(1)(A)-(B).

11 **III.    JCCP Relevant Time Period as to Meta**

12 At the August DMC, the Court ordered the JCCP Plaintiffs and Meta "to meet and confer
13 for purposes of determining: (1) two or three sample search terms for the pre-2012 period that the
14 Parties agree will adequately address the JCCP Plaintiffs' concern about capturing documents
15 which discuss or evidence the alleged harms and/or risks of harm balanced within the general
16 framework of features (to avoid overbreadth and disproportionality); and (2) two custodians for
17 running searches of the sample terms." [Dkt. 1070 at 10].

18 The JCCP Plaintiffs complain that Meta unilaterally picked two custodians (without
19 reaching agreement at a meet and confer as to the custodians) and then ran hit reports for those
20 two individuals dating back only to 2006 (rather than date of hire). [Dkt. 1230 at 25-27]. The
21 JCCP Plaintiffs instead requested Meta to run hit reports (from date of hire) on the JCCP
22 Plaintiffs' two proposed custodians—Mark Zuckerberg and "C.C." At the October 24th DMC, the
23 JCCP Plaintiffs limited their request to just Mr. Zuckerberg.

24 Meta argues that, because the JCCP Plaintiffs waited almost a month before contacting
25 them regarding the proposed custodians, Meta went ahead and chose the custodians to run sample
26 hit reports because they were concerned about the discovery deadlines. *Id*. at 28-29. Meta argues
27 that Mark Zuckerberg is "the least representative" of the twelve or so custodians employed by
28 Facebook prior to 2012. Further, Meta argues that the JCCP Plaintiffs have not shown entitlement

4

1    to pre-2006 documents and that the Court has already ruled on relevant time frames for discovery.

2    The Court **ORDERS** Meta to promptly run the three agreed upon sample search terms for
the pre-2012 period across the custodial files of Mark Zuckerberg dating back to January 1,
2006.  The Parties are directed to meet and confer for purposes of determining how quickly Meta
can produce this information, whether they can agree on a narrowed set of pre-2012 custodians,
and whether they can agree on a narrowed set of targeted search terms for the 2006 to 2012
documents, keeping in mind the Court's directives at the DMC that these are the kinds of disputes
that experienced counsel are expected to work out between themselves using a prompt, iterative
process of regularly scheduled meet and confers.

### IV.    Snap's Response to Interrogatory No. 1

The Parties report a dispute as to the adequacy of Snap's response to Plaintiffs' Interrogatory No. 1 ("ROG 1") which seeks information regarding Snap's preservation of employee communications via Hip Chat, an instant messaging services used by Snap employees for internal communications up until late 2018.  [Dkt. 1230 at 31].

ROG 1, which was served on July 2, 2024, asks Snap to disclose, among other things, whether Snap has produced Hip Chat data in other litigations.  *Id.*  Snap did not provide this information as part of its August 15, 2024 response to the discovery request.  *Id.*

Plaintiffs argue that they have identified at least one other litigation in which Hip Chat data was likely produced.  *Id.*  They complain that Snap has yet to confirm whether Hip Chat data was actually produced in that case (or in any other cases).  *Id.* at 31-32.  Plaintiffs argue that this information is critically important to locate relevant Hip Chat data (if any exists in the files of such prior counsel or their ESI vendors), particularly given that Snap has represented that it is unable to decrypt the only identified collection of Hip Chat data stored on a USB drive.

Snap argues that it has been communicating with its outside litigation counsel to confirm whether Hip Chat data was produced in previous litigations, and if so, where the data might be found.  Snap argues that this has been a laborious process because their outside counsel recently moved offices.

The Court **ORDERS** the Parties to continue to meet and confer regarding this dispute.  As

1  part of that conferral, Snap shall provide Plaintiffs with weekly updates regarding the status of
2  their investigation into the production of Hip Chat data in other litigations.  The Court expects the
3  Parties to have made significant progress on this issue by the next DMC.  The Court notes that
4  counsel for Snap has had months to investigate this issue.  The Court expects Snap to work
5  diligently to complete its investigation, find out the facts, and communicate them in a transparent
6  manner to Plaintiffs' counsel promptly.

### V.  YouTube's Responses to RFP Nos. 16 and 18

The PI/SD Plaintiffs raise a dispute as to the adequacy of YouTube's amended responses to Plaintiffs' Request for Production ("RFP") Nos. 16 and 18, served on July 3, 2024.  [Dkt. 1197].

RFP No. 16

RFP No. 16 seeks documents sufficient to show "all features, classifiers, data sets, dimensions, and/or demographics that [YouTube] use[s] to categorize users of, or accounts on, [the YouTube] Platform."  [Dkt. 1198-3 at 11].

Plaintiffs argue that the request is relevant to their claims that YouTube harvests user data that is then used to classify and micro-target users for a variety of purposes, including user research, product promotion and growth, and advertising.  [Dkt. 1197 at 8].  Plaintiffs propose limiting the request to three "discrete" areas—user research, advertising, and growth teams.  *Id.*  Plaintiffs confirm that the three categories are mere descriptors of functional units within YouTube and do not correspond to actual teams, groupings, or department names used by YouTube.  Plaintiffs suggest that the categories may implicate "five or so teams."

YouTube argues that: (1) the three categories proposed by Plaintiffs are inherently vague, as they are not terms used within the company itself; (2) the request is overly broad and disproportionate because Plaintiffs' claims relate only to the targeting of minors and information regarding the other ways in which YouTube categorizes users (*e.g.,* "intellectuals" or "information seekers") is irrelevant; (3) the three categories potentially implicate numerous teams, including "a whole sector of the business that deals with advertising;" and (4) YouTube has already produced thousands of documents relating to user categorization and Plaintiffs have not shown why they

6

need more.

Plaintiffs argue that: (1) Plaintiffs' claims that YouTube targets minors relate not just to how YouTube uses specific user data to target specific minors, but also to how YouTube generally collects user data and categorizes users to ensure that each user is maximally engaged by giving recommendations based on those categories; (2) the request is limited to documents "sufficient to show" user categorizations; and (3) YouTube likely has "explanatory documents or schema" related to user categorization which YouTube can easily locate and produce from its databases.

RFP No. 18

RFP No. 18 seeks all documents that "constitute, identify, describe, or discuss any analysis of the demographics of users of [the YouTube] Platform[.]" [Dkt. 1198-3 at 18].

The Parties dispute whether YouTube should be required to produce responsive documents relating to analysis of users' race and/or ethnicity. [Dkt. 1197 at 9, 12]. YouTube argues that such information is irrelevant because Plaintiffs do not allege that YouTube targets users based on race or ethnicity. *Id.* at 12. The PI Plaintiffs argue that information regarding users' race and ethnicity is relevant as part of their general claims regarding how YouTube collects and uses user data to target users and increase engagement with the platform. The SD Plaintiffs argue that information regarding users' race and ethnicity is relevant to their allegations that youths of certain races and ethnicities have been disproportionately impacted at school and resulting damages to those school districts.

At the October 24th DMC, the Court **ORDERED** YouTube and Plaintiffs to submit a proposed order to memorialize the Court's verbal rulings on these disputes at the DMC. That proposed order was filed on October 30, 2024. [Dkt. 1293]. Per that filing, the Court entered the separate Order resolving these disputes on October 31, 2024, incorporated herein by reference. [Dkt. 1294].

This **RESOLVES** Dkt. 1197.

## VI. Preservation of MDL/JCCP Non-Bellwether PI Plaintiffs' Main Devices

Defendants demand that the MDL/JCCP Non-Bellwether PI Plaintiffs identify when they received litigation notices, explain the steps their counsel took to ensure ESI preservation from

those Non-Bellwether Plaintiffs' main devices, and require forensic imaging of all of those devices to preserve the temporary log files and data on those devices. [Dkt. 1237]. Defendants argue that the Non-Bellwethers PI Plaintiffs have critical information on their devices relevant to Defendants' defenses that needs to be preserved. They raise concerns regarding the destruction of this evidence through the passage of time (*e.g.,* "ephemeral data" that is overwritten every thirty to sixty days in certain log files), particularly given the number of Bellwether cases where main devices have been lost or destroyed.

Plaintiffs argue that: (1) they are "well aware" of their duty to preserve relevant information, this has been communicated directly by counsel to their clients, and the individual non-Bellwether Plaintiffs are each specifically aware of their obligation to preserve devices; (2) requiring forensic imaging of Non-Bellwether devices would upend the structure of this highly complex litigation, cost an unduly burdensome and nonproportional amount, and have a chilling effect on future plaintiffs bringing their claims; (3) the JCCP Plaintiffs would be disproportionately impacted given that there are more than 1,700 personal injury cases in the JCCP; and (4) Defendants concerns regarding spoliation are either unfounded or not proportional because other forms of user data for apps are stored on the servers for those app companies (like the Defendants) and the short-term log file data that is on the devices is nonproportional and duplicative of (or at least sufficiently similar to) non-ephemeral data stored elsewhere.

The Court **DENIES** Defendants' request to compel the Non-Bellwether PI Plaintiffs to submit their devices for full forensic imaging at this time, because such imaging is disproportionate to the needs of the case.

At the October 24th DMC, the Court **ORDERED** Defendants and Plaintiffs to submit a proposed order to memorialize the Court's verbal rulings on these disputes at the DMC. That proposed order was filed on October 28, 2024. [Dkt. 1286]. Per that filing, the Court entered the separate Order resolving these disputes on October 29, 2024, incorporated herein by reference. [Dkt. 1288].

This **RESOLVES** Dkt. 1237.

### VII. States' Production of Documents

The Parties report a dispute related to negotiations over Meta's document requests directed at the thirty-four States in this MDL. [Dkt. 1217].

<u>Search Terms and Custodians</u>

Meta has been meeting and conferring productively with twenty of the thirty-four States regarding proposed search terms and custodians. Meta has received proposed custodians and terms from three of those twenty States. Meta complains that fourteen "holdout" States (Arizona, California, Colorado, Delaware, Illinois, Kentucky, Maryland, Michigan, Minnesota, Missouri, New York, Oregon, Pennsylvania, and Rhode Island) either refuse to provide proposed search terms and custodians or have not responded to Meta's conferral attempts. Four of these "holdout" states (California, Colorado, Michigan, and Pennsylvania) have represented to Meta that they cannot engage in any meet and confer regarding search terms and custodians at all because their agencies refuse to provide documents as party discovery. Those agencies have taken the position that this Court's September 6, 2024 Order [Dkt. 1117] does not apply to them, that they disagree with that Order and thus refuse to obey it, and that this Court lacks jurisdiction over them.

The Parties report that Meta has also informed the state agencies that any subpoenas previously served by Meta on any agencies should be held in abeyance. At least one State AG reported that some of the agencies of that state had already collected documents and was preparing them for production but stopped that process in response to Meta's announcement to hold the subpoenas in abeyance.

The State AGs argue that the Court should reject Meta's "one-size-fits-all" demand for custodians and search terms across 270-plus states agencies. They argue that the issue is not ripe as to some of the fourteen States who have not given a "final answer" whether they will provide proposed custodians and search terms; that search terms should be negotiated on an agency by agency basis; and that Meta should meet and confer with them regarding whether documents sought have already been requested (or in some instances, produced) pursuant to Rule 45 subpoenas.

The Court **ORDERS** the twenty States that have already been engaging with Meta

regarding search terms and custodians to continue meeting and conferring with Meta on those issues. The Court **ORDERS** counsel for the fourteen so-called "holdout" States (Arizona, California, Colorado, Delaware, Illinois, Kentucky, Maryland, Michigan, Minnesota, Missouri, New York, Oregon, Pennsylvania, and Rhode Island) to promptly meet and confer with Meta regarding proposed search terms and custodians. Counsel for those fourteen States **SHALL** identify custodians and propose search terms by <u>**November 1, 2024**</u>. The Parties shall engage in meet and confers during the week of November 4, 2024 regarding search terms and custodians. If counsel for an agency needs to be involved in a meet and confer in order for the discussion to be productive and efficient, then such counsel **SHALL** also participate in the meet and confers and **SHALL** coordinate with the respective State AG for that state in scheduling and participation collaboratively in such meet and confers. All counsel (for Meta, the States, and the agencies) shall cooperate and coordinate scheduling of and participation in meet and confers so as to have all Parties present at one time, instead of requiring Meta to schedule and conduct hundreds of separate meet and confers across all of the agencies. To the extent possible, the State AG and any agency counsel shall appoint a lead negotiator for their side, to expedite negotiations.

<u>Litigation Holds</u>

Meta complains that eight States (Arizona, California, Colorado, Missouri, New York, Oregon, Pennsylvania, and Rhode Island) have refused to provide litigation hold information for state agency personnel.

The State AGs argue that this is not a ripe issue, the States have not disputed their obligations to provide litigation hold information, they have begun productions, and they will continue to make rolling productions as quickly as possible.

The Court **ORDERS** the States to provide Meta with weekly updates regarding the status of their production of litigation hold information and shall disclose to Meta whether any specific agencies are refusing to produce the information. The Court expects counsel will work diligently and be prepared to provide a report on substantive progress on this issue at the November DMC.

At the October 24th DMC, the Court **ORDERED** the State AGs and Meta to submit a proposed order to memorialize the Court's verbal rulings on these disputes at the DMC. That

10

proposed order was filed on October 28, 2024.  [Dkt. 1285].  Per that filing, the Court entered the separate Order resolving these disputes on October 29, 2024, incorporated herein by reference.  [Dkt. 1291].

This **RESOLVES** Dkt. 1217.

<u>Discovery Planning for State AGs and State Agencies</u>

Judge Gonzalez Rogers's Order regarding state agency discovery, dated October 30, 2024, is clear on its face.  [Dkt. 1292].  Meta, the State AGs, and the agencies **SHALL** meet and confer and work promptly to resolve any disputes over the scope of documents sought and to be produced, and to process documents for production on a rolling basis as diligently as possible.  In light of Judge Gonzalez Rogers's directives that time is of the essence and efficient resolution is paramount, the Court further **ORDERS** as follows:

In connection with the November DMC, the Parties (including all agencies) shall not merely report in the DMC Statement and verbally on the status of their discussions over objections and production of documents.  The Parties **SHALL** also present this Court with their Joint Plan to start rolling productions by the end of November 2024 and complete substantial production of documents from the agencies and the State AGs by the end of December 2024.  The Court expects the Parties to engage in robust and transparent discussions to reach compromises and understanding over the scope of documents sought, the identification of custodians, the use of "go get 'em" requests (where appropriate), and the diligent processing of documents for production.  The Parties are **ORDERED** to meet and confer on this Joint Plan for States' document productions, report on the plan in the November DMC Statement, and be prepared to discuss the plan at the November DMC.

In connection with the November DMC, the Parties **SHALL** also present the Court with a Joint Plan to schedule and conduct any depositions of state agencies (or individual employees thereof) within the planned schedule for all other depositions in this case.  The Parties **SHALL** propose a Joint Plan for a schedule to begin identifying potential state agencies' witnesses, serve Rule 30(b)(6) notices, resolve any disputes over depositions, and secure witnesses' availability sufficiently in advance so that any such depositions can be completed in an orderly and efficient

11

1  fashion before the fact discovery cutoff.  The Parties are **ORDERED** to meet and confer to
2  discuss and develop these Joint Plans, report on them in the November DMC Statement, and be
3  prepared to discuss them at the November DMC.
4  **IT IS SO ORDERED.**
5  Dated:  November 1, 2024

_____
PETER H. KANG
United States Magistrate Judge

12