UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART THE BELLWETHER SCHOOL DISTRICTS' MOTION TO COMPEL WITH REGARD TO THEIR REQUESTS FOR PRODUCTION (SET A) AS TO META**<br><br>Re: Dkt. 1314 |

This MDL has been referred to the undersigned for discovery purposes.  *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the School District ("SD") Plaintiffs and Meta regarding the MDL Bellwether SD Plaintiffs' Requests for Production ("RFP") Set A.  [Dkt. 1314].  The Court finds the dispute suitable for resolution without oral argument.  *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*  Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC),

2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

1   in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
2   discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its
3   inherent discretion and authority, the Court has broad discretion in determining relevancy for
4   discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)
5   (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to
6   crafting discovery orders that may expand, limit, or differ from the relief requested. *See*
7   *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to
8   tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may
9   limit the scope of any discovery method if it determines that "the discovery sought is unreasonably
10  cumulative or duplicative, or can be obtained from some other source that is more convenient, less
11  burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYSIS

13  The present dispute concerns Meta's responses to the MDL Bellwether SD Plaintiffs' Set
14  A RFPs. The SD Plaintiffs served Set A on July 2, 2024, after this Court granted the MDL
15  Plaintiffs leave at the June 20, 2024 Discovery Management Conference ("DMC") to propound
16  one set of bellwether-specific RFPs on Meta directed at discrete discovery issues for those MDL
17  school district bellwether cases. *See* Dkt. 969 at 3. The SD Plaintiffs complain that Meta has
18  refused to identify relevant custodians for these bellwether-specific RFPs or to add any search
19  terms or custodians beyond those already agreed to in response to earlier discovery requests served
20  prior to July 2, 2024. [Dkt. 1314 at 8]. The SD Plaintiffs argue that Meta's attempt to limit
21  custodians to those finalized on May 3, 2024 and to limit search terms to those finalized on June
22  26, 2024 is "unjustified," given that the initial bellwether selections were not even fully identified
23  until May 17, 2024, and this Court granted the MDL Plaintiffs leave to serve bellwether-specific
24  discovery only on June 20, 2024. *Id.*
25  The SD Plaintiffs argue that the proposed bellwether-specific search terms—comprising a
26  total of twelve additional text strings (one for each MDL Bellwether SD Plaintiff)—are narrowly
27  tailored to "nothing more than the name of each bellwether school district and its associated
28  URL." *Id.* They argue that the discovery sought is "highly relevant" to the individual bellwether

3

school district cases. *Id.* at 9. Stressing that the Set A RFPs were served on Meta "well before" the substantial completion deadline, the SD Plaintiffs argue that Meta should not be allowed "to run out the clock through its months-long refusal to perform an adequate search for responsive documents." *Id.* at 10.

Meta, in its portion of the joint letter brief, argues that the Parties' counsel (including counsel for the MDL Bellwether SD Plaintiffs) reached "global, final agreements" as to custodians and search terms, respectively on May 3, 2024 and June 26, 2024. *Id.* Meta contends that because all MDL Plaintiffs' "interests" were "fully represented" during the negotiations leading up to these "global, final agreements," the SD Plaintiffs should not be allowed to now "reopen those negotiations, on the eve of substantial completion, to add an unspecified number of additional, unnamed custodians, and a dozen new search strings[.]" *Id.* at 10-11. In addition, Meta argues that the SD Plaintiffs' discovery requests are unduly burdensome, given the stage of the litigation. *Id.* at 11. Meta argues that it "should be shifting its attention and resources away from document production and toward depositions and expert discovery" rather than "be required to pull, search, and review additional documents, from additional custodians, using additional search terms." *Id.*

## I.   Custodians

The SD Plaintiffs seek to compel Meta to identify relevant custodians for the Set A RFPs. They argue that Meta, as the party who is the target of discovery, is in the best position to identify the relevant custodians. *Id.* at 8. The SD Plaintiffs argue that Meta should not be allowed to refuse to disclose whether there are "additional" Meta employees who interacted with each bellwether school district and identify them as relevant custodians. *Id.* They stress that the Set A RFPs have been pending since July 2, 2024. *Id.* They argue that the "realities of the case schedule" warrant adding custodians. *Id.*

Meta argues that the Parties reached a global agreement on identifying custodians in May 2024, under which Plaintiffs had the option to name twenty-seven additional custodians by May 7, 2024 and an additional five custodians by August 30, 2024 (for a total of 127 custodians). *Id.* at 10. Meta stresses that the MDL Bellwether SD Plaintiffs were selected in mid-May, and the Set A RFPs were served on July 2, 2024, which was well before the August 30, 2024 deadline for

4

Plaintiffs to name five additional custodians. *Id.* Meta complains that Plaintiffs added five custodians by that deadline but then raised this issue of an unspecified number of additional custodians specific to the Set A RFPs by letter two days later. *Id.* Meta argues that its document production includes 72,000 documents that "hit[]" on search terms relating specifically to schools (which resulted from the Parties' search term negotiations) as well as organizational spreadsheets for Meta employees. *Id.* Meta states that, as of November 4, 2024, there are 1,654 documents that Meta has produced which hit on the disputed Set A proposed search terms (that is, documents that contain the names of the bellwether school districts). *Id.* at 11. Meta thus argues that the SD Plaintiffs have had opportunity and documents from which to identify the proposed "new" custodians and they could have included them in the final five added at the end of August. *Id.* at 10. Meta states that two existing Meta custodians (referred to by initials as D.G. and L.C.) "are involved in Meta partnerships in the education space and/or had interactions with educators." *Id.* at 12.

      The SD Plaintiffs do not satisfactorily explain why they failed to include any custodians directed to the Set A RFPs in the final five custodians added at the end of August, or why the previously produced Meta documents (such as those which hit on the new proposed search terms or the other school-related search terms) were insufficient to help identify custodians. Nor do they explain satisfactorily why the two custodians specifically named by Meta (D.G. and L.C.) are insufficient or inadequate custodians for purposes of searching for documents responsive to the Set A RFPs. The SD Plaintiffs nowhere discuss why they were unable to identify from their own files and emails the names of Meta employees who interacted directly with each of the twelve bellwether school districts. Plaintiffs do not discuss their own diligence in trying to identify such directly communicating Meta employees from their own records (which could have begun as soon as the bellwether school districts were identified in May as at least a starting point for transparent and collaborative discussions). The SD Plaintiffs had at least some information (both from their own records and employees and from Meta's earlier document productions) from which to at least propose custodians and engage in back-and-forth negotiations over identifying appropriate custodians, rather than simply demanding that Meta identify such custodians unilaterally. For

example, there is no indication that the SD Plaintiffs used the Meta employee directories to try to identify other Meta employees who worked with D.G. or L.C., or even tried to use LinkedIn or other public sources of information to identify other Meta employees who interacted with school districts. In light of the circumstances here, the Court finds that the SD Plaintiffs' demand for Meta to identify an unlimited number of additional custodians is duplicative (because two school-related custodians have already been identified) and disproportionate to the needs of the case.

### II.     Search Terms

The SD Plaintiffs seek to compel Meta to run one additional text string for each of the twelve MDL bellwether school districts directed at finding documents responsive to the Set A RFPs. *Id.* at 8. The additional search terms are the name of each bellwether school district and that school district's URL. *Id.*

Meta argues that Plaintiffs' request to add these new search terms now should be denied because the Parties negotiated and finalized search terms months ago. *Id.* at 11. Meta points out that those previously agreed upon search terms include dozens directed to schools and related terms, and thus when run against the documents of Meta's 127 custodians, "should capture any discussion of the [bellwether school districts] in relevant contexts." *Id.* There is no real dispute that the twelve new search terms at issue here are relevant—the primary dispute is whether adding these new search terms should be barred because the Parties had a finalized deal on search terms by the end of June 2024 and because adding new search terms is unduly burdensome at this late date.

As to burden, because the Court has concluded that there is insufficient cause shown to add more custodians for the Set A RFPs, the amount of burden is lessened significantly. There is no need for Meta to go find a new, previously unknown set of custodians to collect and process documents for the Set A RFPs.

In light of this mitigation of burden, the Court finds that running the twelve new search terms is both relevant and, as limited herein, proportional to the needs of the case. Meta **SHALL** use the twelve new search terms to search all documents for which either D.G. or L.C. is a custodian.

Notably, Meta states that "the Parties' agreed upon list of 127 custodians includes *at least* two custodians, D.G. and L.C., who are involved in Meta partnerships in the education space and/or had interactions with educators." *Id.* at 12 (emphasis added).  This phrasing implies that there could be other such custodians.  Accordingly, Meta **SHALL** promptly and expeditiously investigate and finally determine whether or not any of the other 125 named Meta custodians worked (or currently work) on "Meta partnerships in the education space and/or had interactions with educators" or if any of those other custodians worked (or currently work) with D.G. or L.C. on education-related matters.  Meta notes that it has produced employee directories from which this information should be readily accessible. *Id.* at 10.  Meta also has the option to make inquiry of D.G., L.C., or their managers and coworkers.  Meta shall complete this investigation promptly, and if any other of the 125 custodians are identified in this process, Meta **SHALL**: (1) identify to the SD Plaintiffs who those custodians are; and (2) use the twelve new search terms to search the documents of those identified custodians.  If Meta's investigation confirms that there are no additional custodians, Meta **SHALL** inform the SD Plaintiffs immediately upon completion of the investigation.

Finally, because the Court is cognizant that there is a set of *non-custodial* ESI and documents which Meta has already collected for this case, Meta **SHALL** also run the twelve new search terms across the already collected non-custodial documents.

After running these twelve new search terms as ordered herein (both from D.G. and L.C.'s custodial files, as well as from any additional custodians identified after investigation, and from the non-custodial files), Meta **SHALL** process and produce all such non-privileged documents resulting from the searches promptly on a rolling basis.  The Parties **SHALL** report on the status of the investigation as to custodians and the status of this document production at the November DMC.

## CONCLUSION

For the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the SD Plaintiffs' motion to compel Meta to identify new, additional custodians and to compel Meta to run twelve new search terms directed to finding documents responsive to the Set A RFPs.

7

This **RESOLVES** Dkt. 1314.

**IT IS SO ORDERED.**

Dated: November 12, 2024

_____
PETER H. KANG
United States Magistrate Judge