UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING JOINT LETTER BRIEF REGARDING PI/SD PLAINTIFFS RFPS 317, 325, 335, 344-346, AND 357 AS TO META**<br><br>Re: Dkt. 1316 |

This MDL has been referred to the undersigned for discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the Personal Injury/School District ("PI/SD") Plaintiffs and Meta regarding the PI/SD Plaintiffs' Request for Production of Documents ("RFP") Nos. 317, 325, 335, 344-346, and 357. [Dkt. 1316 (redacted version); Dkt. 1317-1 (unredacted version)]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC),

2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

2

1  in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
2  discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its
3  inherent discretion and authority, the Court has broad discretion in determining relevancy for
4  discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)
5  (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to
6  crafting discovery orders that may expand, limit, or differ from the relief requested. *See*
7  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to
8  tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may
9  limit the scope of any discovery method if it determines that "the discovery sought is unreasonably
10 cumulative or duplicative, or can be obtained from some other source that is more convenient, less
11 burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYSIS

13 The PI/SD Plaintiffs (hereinafter "Plaintiffs") move to compel Meta to produce documents
14 responsive to RFPs 317, 325, 335, 344-346, and 357. As an initial matter, Plaintiffs argue that the
15 Parties negotiated search terms directed to each of these RFPs, but complain that Meta is
16 restricting its production to responsive documents which not only hit on these agreed-upon search
17 terms but also relate generally to Named Features, youth safety, parental controls, or other issues
18 relevant to this case. [Dkt. 1316 at 8-9]. Meta argues that the Parties agreed on this scope of
19 relevance for the production of documents responsive to these requests in meet and confers earlier
20 this year, that these requests seek documents concerning matters which are not limited to issues
21 relevant to this case, and that requiring Meta to produce all documents which hit on the agreed-
22 upon search terms directed to only these requests (without also limiting them to documents which
23 relate to the youth issues relevant to this case) is overbroad, beyond the scope of permissible
24 relevance, and (given the case schedule) not proportional to the needs of the case. *Id.* at 11-12.
25 Plaintiffs argue that the agreement as to the scope of relevance was directed to certain RFPs (listed
26 in the correspondence), which according to Plaintiffs did not include these RFPs. *Id.* at 10. Meta
27 responds that the correspondence resolving this relevance issue referred to the Plaintiffs' "set 13"
28 RFPs served in May 2024, and that Plaintiffs agreed to limiting production of documents

3

responsive to this "set 13" to the extent they "also discuss the youth safety issues relevant here." *Id.*

The Court turns to each RFP at issue below.

**RFP 317**

Plaintiffs limit RFP 317 to the extent they seek production of Meta founder and CEO Mark Zuckerberg's internal comments regarding Meta's 4Q17 performance, primarily Meta's MSI ("Meaningful Social Interaction") metric and its effects on daily usage of the Facebook Platform. *Id.* at 8; *see* Dkt. 1317-2 at 7. MSI allegedly increases user engagement on Facebook for all users, including teens. [Dkt. 1316 at 8]. The Parties previously agreed on a search term ("meaningful social interaction") directed to this request. The issue is whether Meta should be required to search for and produce documents which hit on this search term alone, or whether Meta was correct to limit this request to documents which hit on this search term and also discuss issues relating to youth safety issues relevant to this case.

The Court finds that requiring Meta to search for all documents from all custodians which hit on this search term alone is not proportional to the needs of the case and would likely result in the production of a substantial number of documents unrelated to the youth safety issues in this case. There is, however, no real dispute that there is a scope of proper relevance for this request, and in the joint letter briefing, Plaintiffs focus on Mr. Zuckerberg's internal statements only. Accordingly, the Court **ORDERS** Meta to promptly search those documents for which Mr. Zuckerberg is the custodian, using only the "meaningful social interaction" search term, limited only to documents dated within the time period from December 31, 2017 to February 28, 2018, and to process and produce with reasonably prompt diligence any non-privileged documents which result from that time-limited search. The Court finds that limiting this request to the one custodian at issue, for the limited time frame, is proportional, not unduly burdensome, and not overbroad. The Parties **SHALL** report on the progress of this production in the DMC Statement for the December 2024 DMC, and subsequently until complete.

**RFP 325**

RFP 325 seeks data from Meta's Onavo product, specifically Onavo data comparing the

4

Facebook or Instagram platforms with the TikTok, Snapchat, or YouTube platforms from 2017 forward. [Dkt. 1317-2 at 9]. Onavo is a company involved in data compression and analytics for mobile apps, which Facebook acquired in 2013. [Dkt. 1316 at 12]. According to Meta, the Parties negotiated RFPs 324 and 325 together because both sought documents relating to Onavo. *Id.* With regard to RFP 324, the Parties agreed to limit production to documents which discuss Onavo "if the documents 'also discuss the youth safety issues relevant here.'" *Id.* For reasons not explained, that express agreement did not include RFP 325 even though the Parties apparently negotiated both RFPs together.

The Court finds that Plaintiffs' request to compel production of all documents which discuss Onavo since 2017, regardless of whether or not the documents discuss the youth safety issues in this case, is not proportional to the needs of the case. As both sides admit, Meta has been producing documents response to RFP 325 if those documents also discuss youth issues. *Id.* at 8. Meta appears to be complying with the agreement as to scope of relevance upon which its opposition relies. Accordingly, Meta is **ORDERED** to promptly confirm in a supplemental response to RFP 325 that Meta has produced all non-privileged documents (found after using the agreed-upon search terms) responsive to RFP 325 in which Onavo is discussed in any way that relates to a Named Feature or other relevant issue in this case, such as youth safety, problematic use, or parental controls.

Accordingly, the Court **DENIES** the motion to compel with regard to RFP 325.

**RFP 335**

RFP 335 seeks documents sufficient to show the results of all "backtests and/or uses of the Deltoid tool that measured the impact of product changes related to the Named Features on integrity metrics." [Dkt. 1317-2 at 11]. Meta's Deltoid tool is a product testing tool. [Dkt. 1316 at 9]. Plaintiffs argue that Meta has limited its production to backtests, which are tests that take place after a product is launched, whereas the Deltoid tool is used to test metrics pre-launch. *Id.* Meta does not dispute (or even address) this pre-launch versus post-launch issue, arguing instead that not all uses of Deltoid are relevant to the Named Features. *Id.* at 12.

Meta's arguments are orthogonal to the dispute here. RFP 335, on its face, is expressly

5

1  limited to "the impact of product changes related to the Named Features on integrity metrics."
2  [Dkt. 1317-2 at 11]. There appears to be no dispute that Meta has failed to produce documents
3  responsive to this request regarding uses of Deltoid for pre-launch tests.

Accordingly, the Court **ORDERS** Meta to use the agreed-upon search term(s) for this RFP to search for and produce all non-privileged documents responsive to RFP 335 sufficient to show the results of all uses of the Deltoid tool that measured the impact of product changes related to the Named Features on integrity metrics. Meta **SHALL** run the agreed-upon search term(s) directed to RFP 335 to search the files of all custodians previously agreed upon with regard to this RFP, if any were previously agreed to. If no such custodians were previously agreed to for this RFP, then Meta **SHALL** run the search term(s) directed to this RFP to search all custodial and non-custodial files (though the Parties are free to reach agreement to limit the search to specific custodians, if they so desire).

Accordingly, the Court **GRANTS** the motion to compel with regard to RFP 335 as set forth herein.

**RFP 344**

RFP 344 seeks documents relating to "Civic Integrity's development of the 'Break the Glass' measures" at Facebook. [Dkt. 1317-2 at 14]. Meta argues that the "Break the Glass" measures go beyond the issues relevant to this case and include (for example) changes made to Facebook in connection with the 2020 U.S. presidential election to mitigate the spread of voter disinformation. [Dkt. 1316 at 11]. As discussed above, Meta agreed to produce documents responsive to this request if such documents also discuss youth safety issues, Named Features, or other issues relevant to the claims in this case.

The Court finds that Plaintiffs' request to compel production of all documents which discuss "Break the Glass" measures, regardless of time frame and regardless of whether or not they discuss the youth safety issues or Named Features in this case, is not proportional to the needs of the case. Plaintiffs speculate that, if "Break the Glass" measures were implemented by Civic Integrity but never implemented for user well-being, such failure to implement could demonstrate that Meta could have taken steps to protect youth but chose not to. *Id.* at 9. The

defect in Plaintiffs' argument is that RFP 344, on its face, only seeks documents "discussing Civic Integrity's development of 'Break the Glass' measures," and thus, the speculation as to the absence of "Break the Glass" measures in other contexts (such as user well-being) is not sought by this RFP. Also, Plaintiffs have other discovery procedures available by which to take discovery to prove the negative, that is, to establish whether "Break the Glass" measures were not implemented for user well-being, such as by serving requests for admissions, or by deposing knowledgeable witnesses.

Accordingly, the Court **DENIES** the motion to compel with regard to RFP 344.

**RFPs 345 and 346**

RFPs 345 and 346 seek documents relating to the Minimum (or Minimal) Integrity Holdout population, a subset of users in a control group who do not have the full set of integrity rules. [Dkt. 1317-2 at 14-15]. Meta agreed to produce documents responsive to these requests if such documents also discuss youth safety issues, Named Features, or other issues relevant to the claims in this case. [Dkt. 1316 at 11]. Indeed, Meta quotes correspondence from Plaintiffs setting forth this understanding. *Id.*

The Court finds that the Plaintiffs' request to compel production of all documents which discuss "Minimum Integrity Holdout" regardless of whether or not the documents discuss MIH in any way that relates to a Named Feature or other relevant issue (such as youth safety, problematic use, or parental controls) is not proportional to the needs of the case. Plaintiffs do not dispute the understanding set forth in their correspondence regarding the scope of relevance agreed upon between the Parties with regard to these RFPs. Meta, of course, is bound by that agreement as well and is **ORDERED** to promptly confirm in supplemental responses to RFPs 345 and 346 that Meta has produced all non-privileged documents (found after using the agreed-upon search terms) responsive to RFPs 345 and 346 in which MIH (Minimum/Minimal Integrity Holdouts) are discussed in any way that relates to a Named Feature or other relevant issue(s) in this case, such as youth safety, problematic use, or parental controls.

Plaintiffs argue that it is "unclear" whether any of the Plaintiffs were "swept up" in the MIH population. *Id.* at 9. Meta's portion of the joint letter brief does not address this issue.

7

Accordingly, Meta is **ORDERED** to identify by Bates number documents sufficient to indicate whether any Bellwether PI Plaintiff has ever been part of the MIH population (and to produce such documents if not already produced). If no Bellwether PI Plaintiff has ever been part of the MIH population, Meta **SHALL** serve supplemental responses to RFPs 345 and 346 stating this fact and stating that this is the reason there exist no documents responsive to these requests which would show a Bellwether PI Plaintiff was part of an MIH population.

Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to compel with regard to RFPs 345 and 346.

### RFP 357

RFP 357 seeks documents relating to Meta's Net Ego Unit space on a user's homefeed and its relationship to ads on a user's homefeed. [Dkt. 1317-2 at 16]. Net Ego includes recommendations which are inserts into a user's feed, apparently to increase engagement. [Dkt. 1316 at 9]. Plaintiffs argue that because Net Ego is intended to increase engagement for all users (which includes teens), then all documents relating to testing, launching, and/or terminating Net Ego Unit Space should be produced. *Id.* Meta relies on the agreement regarding scope of relevance discussed above and argues that all uses of Net Ego Unit Space are not relevant to the claims and issues in this case. *Id.* at 12.

The Court finds that Plaintiffs' request to compel production of all documents which discuss Net Ego Unit space, regardless of whether or not the documents discuss Net Ego Unit Space in any way that relates to a Named Feature or other relevant issues (such as youth safety, problematic use, or parental controls), is not proportional to the needs of the case. Plaintiffs argue that Meta appears to be refusing to produce any documents responsive to this RFP. Meta, of course, is bound by the agreement as to scope of relevance upon which its opposition relies. Accordingly, Meta is **ORDERED** to promptly confirm in a supplemental response to RFP 357 that Meta has produced all non-privileged documents (found after using the agreed-upon search terms) responsive to RFP 357 in which Net Ego Unit Space is discussed in any way that relates to a Named Feature or other relevant issue in this case, such as youth safety, problematic use, or parental controls.

**CONCLUSION**

For the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to compel with regard to RFPs 317, 325, 335, 344-346, and 357.

This **RESOLVES** Dkt. 1316.

**IT IS SO ORDERED.**

Dated: November 21, 2024

_____
PETER H. KANG
United States Magistrate Judge

9