UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 12 FOLLOWING DISCOVERY MANAGEMENT CONFERENCE OF NOVEMBER 21, 2024**<br><br><u>Upcoming DMC Dates:</u><br>December 11, 2024 at 1:00 pm<br>January 16, 2025 at 1:00 pm<br>February 20, 2025 at 1:00 pm |

On November 21, 2024, this Court held a Discovery Management Conference ("DMC") in the above-captioned matter regarding the status of discovery. *See* Dkts. 1370, 1372. This Order memorializes and provides further guidance to the Parties, consistent with the Court's directions on the record at the November 21st DMC, regarding the deadlines and directives issued by the Court during that hearing (all of which are incorporated herein by reference).

**I.      Interim Discovery Deadlines for State AG Cases**

The Court has carefully considered the Parties' arguments and competing proposals regarding the schedule for their discovery plan and for the corresponding interim discovery deadlines governing the State AG cases against Meta. *See* Dkt. 1336 at 4-13. As stated at the November 21st DMC, the Court **ORDERS** the discovery deadlines in those cases modified as follows:

| **EVENT OR DEADLINE** | **DATE** |
|---|---|
| Start date for rolling productions of state agency documents requested pursuant to subpoenas | November 22, 2024 |

| | |
|---|---|
| Deadline for completion of conferrals re: Rule 34 state agency discovery | December 2, 2024 |
| Last date to file discovery letter briefs re: disputes concerning production of state agency documents (Rule 34 requests or subpoenas) | December 9, 2024 |
| Start date for rolling productions of state agency documents requested pursuant to Rule 34 | December 6, 2024 |
| Deadline for Rule 30(b)(6) subpoenas or notices to the State AGs and/or state agencies | December 13, 2024 |
| Substantial completion of production for State AG and state agency documents requested pursuant to Rule 45 subpoenas | December 23, 2024 |
| Last date for Parties to meet and confer re: scheduling of State AG and state agency Rule 30(b)(6) depositions (*and* to meet and confer re: any such disputes) | January 6, 2025 |
| Substantial completion of production for State AG and state agency documents requested pursuant to Rule 34 | January 10, 2025 |
| Last date for file discovery letter briefs re: disputes concerning scheduling or taking of any State AG and state agency Rule 30(b)(6) depositions | January 13, 2025 |
| Deadline for Parties to meet and confer to identify and commence scheduling State AG and state agency individual fact witness depositions (*and* to meet and confer re: any such disputes) | February 14, 2025 |
| Deadline for Meta to serve deposition notices for State AG and state agency individual fact witness depositions | February 21, 2025 |
| Last date to file discovery letter briefs re: any disputes concerning scheduling or taking of State AG and state agency fact witness depositions | February 21, 2025 |
| Dates for Rule 30(b)(6) depositions of State AGs and state agencies to be taken (unless otherwise agreed upon by the Parties) | February 3, 2025 through March 7, 2025 |
| Deadline for Meta to complete depositions of State AG and state agency fact witnesses | April 4, 2025 |

At the DMC, several of the State AGs (most notably, Arizona and Minnesota) raised concerns regarding their agencies' ability to meet the above deadlines due to insufficient funding, staffing, and technological capabilities. Meta, for its part, complained that multiple state agencies were refusing to provide hit reports. The Court admonishes the Parties to engage in prompt and

2

transparent negotiations for purposes of identifying reasonable search terms and custodians and exchanging hit reports. The Court has repeatedly advised the Parties to include their respective ESI vendors in such negotiations to address concerns and help resolve disputes regarding technological feasibility.

To the extent that state agencies have collected documents but refuse to provide Meta with search terms or hit reports, it is incumbent upon those agencies to tell Meta how the documents were collected. State agencies are expected to run and share hit reports on their own proposed search terms, at a minimum, assuming they used search terms. If state agencies collected documents for production using some other process, they are likewise expected to disclose transparently the processes used to locate the responsive documents. The Court strongly encourages Meta to work out informal deals with state agencies to facilitate document production, such as agreements to use "go get 'em" requests in lieu of search terms. The Court also strongly encourages the Parties to actively communicate and negotiate disputes regarding objections to document requests (whether by subpoena or Rule 34 requests) to avoid unnecessary delay.

## II.     State Agency "Holdouts"

As confirmed by the Parties, the following state agencies continue to refuse to meet and confer with Meta at all regarding search terms and custodians—in clear and direct contravention of this Court's Orders and Judge Gonzalez Rogers' Orders—because they apparently do not believe they are subject to party discovery in this case or the jurisdiction of this Court:

- California Office of the Governor
- California Governor's Office of Business and Economic Development
- California Department of Finance
- California Department of Public Health
- California Department of Consumer Affairs
- California Business, Consumer Services, and Housing Agency
- California Office of Data and Innovation
- South Carolina Office of the Governor

No counsel for these eight state agencies attended the November 21st DMC (either in

person or remotely).  As such, the Court **ORDERED** the State AGs to provide this Court with the names, bar numbers, and pertinent contact information for all counsel responsible for and representing these eight state agencies who have taken the position that they are entitled to refuse to comply with the Orders issued in this case and that they are not subject to this Court's jurisdiction in this action for purposes of discovery.  The California AG and the South Carolina AG each subsequently sent emails to the Court responding to the Court's Order in this regard, but they have not filed their responses on the docket.  On or before **December 2, 2024**, both the California AG and the South Carolina AG **SHALL** file their responses on the docket.

### III.    YouTube RFPs

The Parties report a dispute as to the adequacy of YouTube's amended responses to Request Nos. 62, 69, 71, 72, 76, and 79 in Plaintiffs' Request for Production ("RFP") Set 4.  [Dkt. 1305].

<u>RFP No. 62</u>

RFP No. 62 seeks documents concerning YouTube's "crisis management or crisis communication structure, organization" and/or policies for responding to "investigations, lawsuits, media inquiries, or government inquiries" related to the safety of minor users.  [Dkt. 1306-2 at 11].  Plaintiffs argue that information sought by this request—regarding how YouTube handles crises, investigations, lawsuits, and media and government inquiries, including who is involved, and the methods of communication—is highly relevant and crucial for Plaintiffs to establish "knowledge of relevant risks at YouTube's highest levels" and to select appropriate deponents.  [Dkt. 1305 at 8].

YouTube, in its portion of the joint letter brief, argues that it "has already provided 30(b)(6) testimony, produced documents, and served an interrogatory response that together provide Plaintiffs with the information sought by this request in the most reliable and comprehensive form in which it is available." *Id.* at 11.  Specifically, YouTube argues that: (1) Plaintiffs "elicited over four hours of testimony regarding YouTube's corporate structure" at a recent deposition, including testimony regarding the structure of the six teams directly responsible for YouTube's crisis management and the individuals within those teams; (2) YouTube produced

4

1  documents showing the structure of those six teams; and (3) YouTube provided "a detailed
2  summary of the reporting lines for each of YouTube's custodians" in response to Plaintiffs'
3  Interrogatory No. 1.  *Id.*  YouTube argues that Plaintiffs can readily ascertain the individuals
4  involved in crisis management and communications from the documents already produced.  *Id.*

5        At the November 21st DMC, Plaintiffs argued that YouTube still has not provided the
6  nonprivileged policies relating to crisis management or responding to investigations, lawsuits,
7  media inquiries, or government inquiries pertaining to the safety of minors.  YouTube, in
8  response, argued that no such policies exist.

9        Accordingly, the Court **ORDERS** YouTube to promptly produce all nonprivileged policies
10  (including any nonprivileged documents discussing such policies) responsive to Plaintiffs' request
11  at issue.  To the extent that YouTube does not possess any nonprivileged policies responsive to the
12  request, YouTube shall file a supplemental response to the request confirming that no such
13  policies exist.  YouTube shall log any otherwise responsive documents withheld on the grounds of
14  privilege on a timely privilege log.  The Court further **ORDERS** the Parties to meet and confer
15  regarding Plaintiffs' request for information regarding the methods of communication for these
16  crisis management teams, as it is clear that the Parties' dispute on this portion of the request is not
17  yet ripe.

18  <u>RFP No. 69</u>

19        RFP No. 69 seeks documents that "constitute, identify, or reflect" YouTube's "[p]olicies,
20  process, and criteria" used to "evaluate or determine compensation" for employees working in or
21  with units with responsibility for issues related to youth safety.  [Dkt. 1306-2 at 13].

22        Plaintiffs argue that "information regarding compensation, performance bonuses, and other
23  incentives that rewarded (or failed to reward) accomplishments by individuals responsible for
24  youth safety are relevant to the issue of whether YouTube prioritized user growth and engagement
25  over safety."  [Dkt. 1305 at 9].  Plaintiffs argue that YouTube's production thus far—"consisting
26  of five documents concerning generic Google-wide compensation policies"—is inadequate
27  because YouTube improperly limited its production to documents "sufficient to show" YouTube's
28  compensation policies and the documents produced do not show YouTube's compensation

policies specifically directed at youth safety. *Id.* YouTube argues that Plaintiffs have failed to explain how compensation policies are relevant to this case. *Id.* at 12. In addition, YouTube argues that it has not produced compensation documents specific to youth safety because no such policies exist. *Id.*

The Parties agree that this request does not seek compensation information for lower-level employees. At the DMC, counsel for YouTube stated that no documents exist which discuss the process or criteria by which the companywide policies are applied to those employees working on youth safety. Counsel for YouTube indicated they were in the process of confirming this. Assuming this to be the case, the Court **ORDERS** counsel for YouTube to promptly serve a supplemental response to RFP No. 69 which states that no such documents exist.

Remaining RFPs

RFP Nos. 71, 72, 76, and 79 seeks documents concerning YouTube's policies for facilitating, documenting, processing, reporting, and retaining complaints related to the safety of youth users of the YouTube platform. [Dkt. 1306-2 at 15-17, 20, 22].

The Parties confirm that their dispute on these requests is limited to: (1) whether YouTube should be required to produce final historical versions of internal policies for RFP Nos. 71, 72, 76, and 79; and (2) whether YouTube should be required to produce final historical versions of its public policies for RFP Nos. 72, 76, and 79.

As stated at the November 21st DMC, the Court **ORDERS** the Parties to meet and confer regarding this dispute and the specific policies at issue. The Parties reported at the DMC that they are in the process of evaluating a proposed stipulation which would resolve this dispute and therefore they are directed to file a joint stipulation and proposed order regarding this dispute.

This **RESOLVES** Dkt. 1305.

**IV. Meta Compensation Documents**

The PI/SD Plaintiffs ("Plaintiffs") move to compel Meta to produce documentation sufficient to show the compensation, bonus, and stock awards/options for eleven Meta witnesses. [Dkt. 1318]. Meta has already agreed to produce performance reviews and self-evaluations for these same eleven deponents. Plaintiffs argue that they also need documents showing specific

6

compensation amounts for each deponent to be able to get a "complete picture" regarding the extent to which Meta prioritized user engagement and business growth at the expense of youth safety. Meta argues that Plaintiffs' request for specific dollar figures should be denied because: (1) the specific compensation any particular Meta employee received is irrelevant to Plaintiffs' claims and theories as they have articulated them; (2) the "generally applicable compensation policies" and individual performance reviews already produced by Meta, when taken together, give Plaintiffs the same information that they seek from the compensation documents; and (3) the request for compensation documents violates the deponents' California constitutional right to financial privacy.

At the November 21st DMC, Meta confirmed that it has produced performance reviews for at least two of the eleven deponents at issue and that Meta will be producing the remaining reviews on a rolling basis. Plaintiffs reported that they have not yet had an opportunity to review these materials, and thus, could not speak to Meta's argument that the documents provide a commensurate level of detail as the actual dollar figure for compensation. The Parties are **ORDERED** to continue to meet and confer on this issue as directed by this Court. The Parties shall file a joint stipulation and proposed order regarding this dispute.

This **RESOLVES** Dkt. 1318.

### V. Miki Rothschild Deposition

At the November 21st DMC, the Parties raised a time-sensitive dispute regarding the clawback of three documents asserted to contain privileged communications, where that clawback has impacted and resulted in the last-minute cancellation of the noticed deposition of a senior-level Meta employee, Miki Rothschild. The Parties were directed to promptly file joint letter briefing on this dispute, which they have done. *See* Dkt. 1375.

The Parties **SHALL** promptly file on the docket a joint notice regarding the re-noticed date for Mr. Rothschild's deposition.

### VI. California v. TikTok

In light of the recent Order relating the California AG's civil enforcement action against TikTok to this MDL, the Parties are **ORDERED** to provide a brief status update and contingent

7

discovery plan in the January Joint DMC Statement regarding how they plan to complete discovery for TikTok in the event the case is not remanded.

### VII. Housekeeping Issues

The Parties are directed to reformat their monthly Joint DMC Statements going forward to more clearly delineate issues that are ripe for discussion at the next DMC and issues that are unripe. As such, the Joint DMC Statement should be divided into four sections: (1) administrative issues that the Parties would like to bring to the Court's attention which are not disputed and which do not require Court action; (2) administrative issues that are disputed and/or require Court action; (3) truly ripe discovery disputes for which joint letter briefing has already been filed or will be filed imminently; and (4) unripe discovery disputes. The Court reminds the Parties that any disputes for which the joint letter briefing is filed less than one week prior to the DMC will be addressed at that DMC in this Court's discretion.

**IT IS SO ORDERED.**

Dated: November 26, 2024

_____
PETER H. KANG
United States Magistrate Judge