UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.: 4:22-md-03047-YGR-PHK |
| | **JOINT LETTER BRIEF REGARDING WHETHER PLAINTIFFS' INTERROGATORIES EXCEED THE COURT'S LIMITS** |
| This Filing Relates to: | |
| *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

　　Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendants TikTok, Ltd., TikTok, LLC, TikTok, Inc., ByteDance Ltd., and ByteDance Inc. (collectively referred to in this submission as "TikTok") respectfully submit this letter brief regarding a dispute as to how to count the interrogatories that Plaintiffs served on TikTok in Set 4 (Ex. A) and Set 5 (Ex. B).

　　Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference and correspondence. The final conferral was by video conference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: December 6, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

ii

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY,
PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY,
PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

iv

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


**KING & SPALDING LLP**


*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
King & Spalding LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
       tharris@kslaw.com

Kristen R. Fournier, *pro hac vice*
King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: kfournier@kslaw.com

v

David P. Mattern, *pro hac vice*
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

*Attorneys for Defendants*
*TIKTOK INC., BYTEDANCE INC.,*
*TIKTOK LTD., BYTEDANCE LTD., TIKTOK*
*LLC*

**Defendants' Position:** On March 7, 2024, following extensive negotiations by the parties, this Court entered the parties' Stipulation and Order Governing Discovery Limitations (ECF No. 672). Therein, the TikTok Defendants agreed to respond to 20 interrogatories beyond the 25 typically permitted under Rule 33(a)(1). As all discovery limits were negotiated together at this time, the TikTok Defendants relied on this limit when making concessions on others. Now, deciding that the agreed-upon 45-ROG limit is insufficient, Plaintiffs have established a pattern of serving interrogatories that contain several, discrete subparts. This practice necessitates scrutiny because Plaintiffs are now repeatedly "drafting Rogs that have so many subparts they start to look like multiple Rogs jammed into one." (9/12/24 DMC Trans. at 147). While the TikTok Defendants have sought to resolve this issue without Court intervention, Plaintiffs will not adhere to the imposed ROG limits absent a further Court directive to do so.

As background, Plaintiffs have served 5 Sets of interrogatories on the TikTok Defendants to date. All 4 interrogatories in the First and Second Sets were compound. For example, one asked for the "names, roles, and responsibilities of all Your Units that addressed or worked on any issue relating to any of the Named Features, marketing, advertising, branding, and/or promotion of Your Platform, or on issues relating to Youth Safety, including describing how the Units relate to one another, how, if at all, those relationships have changed throughout the Relevant Time Period, and who led each Unit[,]" which necessitated an extensive investigation and identification of more than 100 employees. Nonetheless, the TikTok Defendants responded to both Sets without pushback. But when Plaintiffs served their Third Set seeking the basis for 10 RFA denials and identification of the PMK about each one, the TikTok Defendants advised Plaintiffs that their sole interrogatory constituted *at least* 20, citing, among other cases, *Loeber by & through Loeber v. United States*, 2023 WL 4703329, at *3 (N.D. Cal. July 24, 2023), and requested that Plaintiffs serve a revised Set, or the TikTok Defendants could count them as 20. Plaintiffs opted to withdraw all but the first 10, and the TikTok Defendants timely responded.

A mere few weeks later, however, Plaintiffs served on the TikTok Defendants their Fourth and Fifth Sets of Interrogatories (ROG Sets 4, 5). Exhibits A, B. More egregious than any prior sets, nearly each interrogatory ranges from having at least 3 to 39 discrete subparts each. Rule 33's Advisory Committee notes caution parties against joining as subparts questions that seek information about discrete separate subjects in an attempt to evade imposed numerical limitations. Fed.R.Civ.P. 33(a)(1) advisory committee note (1993 amendments). Discreteness "turns on a case-by-case assessment of the degree to which the subpart is logically related to the primary question in the interrogatory, as opposed to being separate and distinct." *Synopsys, Inc*., 319 F.R.D. at 295. In making this determination, courts also consider "how the subparts relate to each other. For example, in a non-contention interrogatory context, subparts which [are] unrelated to each other constitute[] discrete subparts." *Id.* at 297. In other words, subparts should be counted separately when a "full and complete answer" to one would not "necessarily entail" the information requested in another. *Id.* (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co*., 315 F.R.D. 191, 197 (E.D. Tex. 2016)), where the court found 2 discrete subparts in an interrogatory asking for a description of the mechanism underlying the pharmaceutical effects of a drug, and persons involved in its design, testing, or other aspects of its development. As a guiding principle, even if a subpart relates to the same issue as the primary question, the interrogatory is impermissibly compound if that subpart can stand alone. *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (request to identify expert witness, subject of testimony, and grounds for opinion constituted 3 interrogatories). An interrogatory seeking information about multiple products or services also counts as a separate interrogatory for each product or service. *Rambus Inc. v. NVIDIA*

*Corp.*, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011) ("An interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions."); *Collaboration Prop., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004).

Plaintiffs incorrectly claim that the TikTok Defendants are overcounting based on listed "examples," and that they are focused on the number of responses elicited, not the questions. In reality, the "examples" that Plaintiffs identify are actually discrete interrogatories—unrelated to one another and each requiring its own response—that Plaintiffs set forth under the umbrella of a single interrogatory. For example, ROG 1 in Set 4 specifically seeks *separate* estimates of a TikTok Platform user's "Lifetime Value" based on 3 buckets of user characteristics. Those are not "examples" of responsive information, but rather, individual demands that require independent investigation and responses. ROGs 2-6 likewise have no primary questions with clarifying examples, and instead seek responses for 5 different age categories of users. ROG 9 similarly asks for data for these same 5 categories of users *per* Safety Feature (of which there are *at least* 3 based on a preliminary investigation). Meanwhile, ROG 8 asks for a description of the development *and* implementation of each Safety Feature, and then lists 8 discrete inquiries per Safety Feature that have *no relation* to one another—not examples. ROG 10 has no primary questions or examples, but has 3 standalone requests for each of the TikTok Platform's 13 Named Features. And the 2 interrogatories in Set 5 each seek 6 different categories of information for each "Model Feature" (the number of which remains under investigation).

Plaintiffs cite *Cardenas* to support all Named (and by extension, all Safety and Model) Features being lumped into one interrogatory. But, in *Cardenas*, the defendant's contention interrogatory only sought the basis for plaintiffs' defective design claim, so the court reasoned that *plaintiffs'* identification of multiple defects did not turn this into multiple interrogatories. 231 F.R.D. at 619–20. Here, unlike *Cardenas*, ROG 10 specifically demands separate responses to three unrelated questions for each Named Feature. Plaintiffs also cite *Synopsys, Inc.*, which actually supports the TikTok Defendants' position that each Named Feature concerns a "distinct subject," as the court only determined that the interrogatory at issue counted as 1 because the patent holder represented that "all versions of the Aprisa/Apogee product are substantially similar with respect to the accused functionalities and infringe[d] the . . . claims in substantially the same way." 319 F.R.D. at 295-96. As does *Bryant*, 2007 WL 5432960, at *1–2 & n.1, where the court *agreed* that the interrogatory was compound because it asked for information about various products. Plaintiffs also rely on *Indacon, Inc.,* 2012 WL 12538968, at *8, but that court did not even address the compound objections in its decision. Plaintiffs' reliance on Rule 33's Advisory Committee Notes and *In re Lithium*, 2015 WL 1221924 is also misguided because those address whether *communications* of a particular type should be treated as a single interrogatory when it requests the time, place, and persons present—a far cry from Plaintiffs' interrogatories in these Sets. In sum, Plaintiffs' 12 interrogatories include at least 119 distinct questions.[1]

The TikTok Defendants attempted to engage with Plaintiffs to reach agreement on a more manageable scope for these Sets, but were unsuccessful.[2] Though acknowledging that a party may

---

[1] The TikTok Defendants count each of Plaintiffs' interrogatories in Set 4 as follows: ROG 1=3; ROGs 2-6=5 each; ROG 7=1; ROG 8=24 (assuming 3 Safety Features at this time); ROG 9=15; ROG 10=39. For the 2 interrogatories in Set 5=6 each (even assuming only 1 Model Feature).
[2] The TikTok Defendants initially took the position that an interrogatory seeking information from a range of years (Set 4, ROGs 2-7, 9) counts as a separate interrogatory for each year,

seek an expansion of the limits for good cause shown "on a case-by-case basis or in a specific instance," (ECF No. 672 at 14), Plaintiffs have not even attempted to meet this demanding standard.  *See* ND CA L.R. 33-3 (motion for leave to propound more interrogatories must explain "in detail" why it is necessary); *Smith v. Davis*, 2009 WL 2905794, at *1 (E.D. Cal. Sept. 4, 2009) (particularized showing by plaintiffs is required); Fed.R.Civ.P. 26(b)(2).  Instead, Plaintiffs seem to suggest that because a 45-ROG limit makes "little sense" in a complex case, they are somehow justified in packing several interrogatories into few. In so doing, Plaintiffs ignore their prior agreement and the fact they have already received nearly double the number allowed under Rule 33. Plaintiffs also superficially focus on the interrogatories in isolation, glossing over the myriad of other discovery vehicles available to them to obtain this information. Accordingly, the TikTok Defendants request that this Court deem ROG Sets 4 and 5 withdrawn and direct Plaintiffs to serve their 31 remaining interrogatories in compliance with Rule 33 and the Court's Order on Discovery Limitations.

**Plaintiffs' Position:** After TikTok answered 14 interrogatories (Sets 1-3), Plaintiffs served 12 more (Sets 4-5). TikTok counted these as 287 distinct questions, then upped its count to 334, and then dropped its count to 119 less than 24 hours before filing. The parties are briefing TikTok's recurring compound objection before it serves objections and responses.

TikTok's compound objection counts any interrogatory about certain features or user characteristics as a distinct question for each feature or characteristic. TikTok even counted a range of years as requiring a separate question for each year. But courts don't parse interrogatories as TikTok has. Courts instead count questions about a series of product features as one request. The 45-interrogatory limit would make little sense for this complex case if a single question about the core relevant features over the relevant time period would immediately exceed the cap. TikTok's objection should be overruled or the limits revisited.

***Questions about "Each Year" Count As A Single Interrogatory.*** TikTok would rather not talk about how it refused to answer more than one-and-a-half interrogatories because it multiplied its interrogatory count by eight for every question about "each year in the [eight-year] Relevant Time Period." *Contra Grateful Dead Prods. v. Sagan*, 2007 WL 3132666, at 5 (N.D. Cal. 2007) & ECF No. 82-1 at *5 (asking for information on a monthly basis is one question, not one per month). The night before filing, TikTok withdrew this objection as a "compromise." But Tiktok hasn't compromised. It maintains the same compound objection to other requests based on the same flawed theory of compoundness, a theory it applies with equal vigor to Named Features.

***Questions about Named Features Are A Single Interrogatory***. The tenth request in Set 4 asks TikTok to identify changes to Named Features over time. TikTok argues that any question about Named Features—thirteen in total—must be multiplied by 13 when counting interrogatories.

Courts considering compoundness reject a "bright line approach" where "the number of separate

---

relying in part on *Waterbury v. Scribner*, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008). As a good faith compromise, however, the TikTok Defendants are willing not to stand on that objection. The TikTok Defendants also offered to respond to the 31 interrogatories Plaintiffs had remaining in Set 4 pending this briefing on the remainder, but Plaintiffs opted to await the Court's guidance. The TikTok Defendants further agreed to respond to Set 5 while the parties briefed this issue as to Set 4, provided Plaintiffs would agree to count each interrogatory as 3. Plaintiffs similarly rejected this attempt to compromise.

interrogatories is determined strictly" based on a single factor, such as the number of product features in the request. *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, 2020 WL 10052402, at *6 (C.D. Cal. 2020). Instead, courts apply a 'relatedness' test that treats a request as a single interrogatory where its subparts are "logically or factually subsumed within and necessarily related to the primary question." *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 294 (N.D. Cal. 2016). Relatedness is a case-specific inquiry and a "matter of degree." *Id.* at 295.[3]

An interrogatory that seeks information "about multiple alleged design defects does not turn it into multiple interrogatories." *Cardenas v. Dorel Juv. Grp., Inc.*, 231 F.R.D. 616, 619–20 (D. Kan. 2005); *accord Synopsys*, 319 F.R.D. at 295–96 (counting question about multiple "functionalities" and products as as one request). "Multiple courts have determined that an interrogatory regarding a particular category constitutes 1 interrogatory, even though the category may contain multiple items." *Heritage-Nevada VIII, LLC v. World Mkt. Ctr. Venture, LLC*, 2009 WL 10693182, at *5 (D. Nev. 2009) (collecting cases). Here, questions about Named Features count as one request because they ask about a single category of features that are at-issue in Plaintiffs' design defect and failure to warn claims, and every accused feature is part of a single social media product. *See Indacon, Inc. v. Facebook, Inc.*, 2012 WL 12538968, at *8 (W.D. Tex. 2012) (overruling compound objection to question about each accused social media product).

***Questions about "Safety Features" or "Model Features" Are a Single Interrogatory.*** Set 4 no. 8 asks TikTok to describe each Safety Feature it implemented for minors, while the ninth asks TikTok to identify the percent of users who utilized each Safety Feature; and Set 5 asks about "Model Features," factors that TikTok's algorithm uses to rank and select videos. TikTok won't say how many Safety or Model Features it thinks there are, but counts each as its own question.

TikTok's "analysis for counting subparts is substantially flawed because it is based on an analysis of the number of responses that the interrogatory elicits." *The Mitchell Co. v. Campus*, 2008 WL 2468564, at *9 (S.D. Ala. 2008). "The proper test for determining whether subparts are discrete is to ask whether they are factually related to the primary question, not whether they elicit numerous responses." *Id.* This rule is sensible because parties cannot obey interrogatory limits unless they can determine in advance the number of interrogatories they are serving. Because the counting of interrogatories depends on the questions rather than the answers, and because Safety Features and Model Features are each about a single common theme, just as Named Features are, the Court should overrule TikTok's compound objection. *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *4 (N.D. Cal. 2015) (asking about each product at-issue was one question).

***Questions about User Characteristics Are A Single Interrogatory.*** Six interrogatories in Set 4 (nos. 2-6, 9) ask how various user characteristics on TikTok varied by age, and request that TikTok break down its response by five specific age categories that it already tracks: users with age gate data, users whose age is inferred by TikTok's algorithm, users with no age-gate data but with an

---

[3] TikTok is wrong to suggest that if a subpart could stand alone, then it necessarily counts as a separate request. That "overly restrictive reading of Rule 33's numerical limit would too quickly exhaust the propounding party's supply of interrogatories, and unnecessarily limit that party's fact-gathering ability." *Williams v. Taser Int'l, Inc.*, 2007 WL 1630875, at *2 (N.D. Ga. June 4, 2007). TikTok's approach would mean, for instance, that subparts asking "who, what, where, when" would be counted four times—but courts and the Advisory Notes disagree. *See infra*. Courts instead apply the 'relatedness' test pragmatically based on the circumstances of each case. *Synopsys*, 319 F.R.D. at 295 (N.D. Cal.).

inferred age, users with no age-gate data or inferred age, and users who identified themselves as adults on the age gate but TikTok has inferred they are minors. TikTok counts each group separately, but each relates to a single primary question about how a specific user characteristic varied by age. An age breakdown is necessary to answer the primary question. Even so, TikTok threatens to charge Plaintiffs 5 interrogatories per age group, only to respond all five times (as it said in a prior draft) that "the information requested in ROG 5 is not kept in the ordinary course of business." If a "no" answer obviates the need to respond to each subpart, the subparts are not separate questions. *In re Lithium*, 2015 WL 1221924, at *4.

***Providing Examples Does Not Convert One Request into Many.*** TikTok argues that giving examples to explicate a specific term counts as one request per example. The first interrogatory in Set 4 provides three examples of "user characteristics"; Set 5 gives three examples of "Model Features." Courts decline to count based on the mere giving of examples. *E.g., Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) ("unfair and draconian" to treat every example as multiple requests). Plaintiffs should not be punished for providing clarity, especially given TikTok's routine practice of objecting based on vagueness to any undefined term.

***Asking for Relevant Factual Context Does Not Convert One Request into Many.*** Request 10 in Set 4 asks TikTok about major changes to Named Features, including dates and people involved; and Set 5's interrogatories ask TikTok for the factors it uses to select and rank videos, including date developed, people involved, purpose, and weight given to each factor. These important contextual details are not each a separate interrogatory. An interrogatory is treated as a single question "even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33, Advisory Committee Notes (1993). Within a single interrogatory, a party may ask for the "who, what, when, and how." *Toor v. Berger*, 2022 WL 17990212, at *2 (D.D.C. 2022) (collecting cases). Plaintiffs' requests asking about Named Features and algorithmic factors thus should each count as one request even though these interrogatories ask about the underlying purpose, people involved, and dates. *In re Lithium*, 2015 WL 1221924, at *4 (asking about product features and purpose was one request); *Bryant v. Mattel, Inc.*, 2007 WL 5432960, at *1–2 & n.1 (C.D. Cal. 2007) (asking about people involved and dates was one request); *Theobles v. Indus. Maint. Co.*, 247 F.R.D. 483, 485 (D.V.I. 2006) (asking about decisionmaking factors, and the weight or influence of each, was one request).

***If the Court Finds Compoundness, It Should Increase The Limit.*** Courts generally allow compound subparts beyond the limits where substantive answers are warranted. *E.g., Warner Bros. Entm't Inc. v. Random Tuesday, Inc.*, 2021 WL 6882166, at *7 (C.D. Cal. 2021); *In re Lithium*, 2015 WL 1221924, at *4. Indeed, courts relax the limits where, as here, "interrogatories seek numerical data that may provide important evidence." *Thomas v. Yates*, 2009 WL 3273280, at *7 (E.D. Cal. 2009). If TikTok were right about what counts as compound, then the 45-interrogatory limit would make little sense for this complex case because Plaintiffs would almost immediately hit the cap. Not increasing the cap to require substantive responses to these pending requests *and* to allow Plaintiffs to serve additional interrogatories would "undermine[ ] the important function and utility of Interrogatories," which are "an efficient and cost-effective method of discovery and marshaling evidence for trial." *Saria v. Massachusetts Mut. Life Ins. Co.*, 228 F.R.D. 536, 538 (S.D.W. Va. 2005). If, however, the Court sustains TikTok's compound objection, it should do "so without prejudice to the resubmission . . . of more narrowly tailored interrogatories." *Software Rights Archive, LLC v. Facebook, Inc.*, 2013 WL 4396719, at *2 (N.D. Cal. 2013).

## <u>ATTESTATION</u>

I, Andre Mura, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 6, 2024                      By:   */s/ Andre M. Mura*
                                                        Andre M. Mura