UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK |
| This Filing Relates to:<br>ALL ACTIONS | **JOINT LETTER BRIEF ON JCCP PLAINTIFFS' REQUEST TO EXPAND PRE-2012 DOCUMENT DISCOVERY OF META**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the JCCP Plaintiffs ("Plaintiffs") and the Meta Defendants ("Meta") respectfully submit this letter brief regarding the JCCP Plaintiffs' request to expand pre-2012 document discovery of Meta. Attached as Exhibit A is a list of the Parties' agreed-to search terms for the "feature-specific" relevant time period referenced in Meta's portion of the Joint Letter Brief.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On November 20, 2024, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

Dated: December 6, 2024                     Respectfully submitted,

/s/ Joseph G. Vanzandt

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103

Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100 San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor New York, NY 10016 Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU AYLSTOCK WITKIN
**KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566 mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor New York,
New York 10016 Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107 epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER
& CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087

Telephone: 610-667-7706 myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700

*Attorneys for PI/SD Plaintiffs*


**COVINGTON & BURLING LLP**

By:  */s/ Ashley Simonsen*
Ashley M. Simonsen, SBN 275203
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
**COVINGTON & BURLING LLP**
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
         pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook Payments,*
*Inc.; Facebook Technologies, LLC; Instagram,*
*LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**Plaintiffs' Position:**

Plaintiffs respectfully ask the Court to order Meta to produce a limited number of documents from the time of Facebook's initial design and launch to 2012, the start of the general time period for document discovery, to ensure fulsome and fair discovery related to pending negligence claims. The design and implementation of Meta's products, including Meta's intent and notice of safety concerns, and the corporation's decisions on how to respond to those concerns are central issues in the case against Meta. Plaintiffs' request that Meta run five search strings across the custodial files of five Meta custodians is targeted and not burdensome.

This issue has been briefed by both parties and heard by this Court on multiple occasions. Plaintiffs will endeavor not to repeat arguments at length but give a brief history of the dispute. At the June 20, 2024, DMC, the Court set the relevant time period, extending from January 1, 2012- April 1, 2024, with additional limited pre-2012 discovery for specific features. *See* June DMC Tr. at 61. Plaintiffs objected to these parameters, particularly the extremely limited amount of pre-2012 discovery, at the August DMC. As an initial step towards resolution, the Court ordered the parties to confer and select two custodians whose files Meta would run three search strings across and produce hit reports. ECF 1070 at 10. The parties came to an agreement on search strings but could not reach agreement on custodians despite extensive discussions. Over Plaintiffs' objections, Meta unilaterally selected two custodians, L.B. and P.R., forcing Plaintiffs to return to Court in order to participate in the selection of the test pre-2012 custodians. ECF 1299 at 4. After a court order, Meta produced hit reports for the custodial file of Mark Zuckerberg, along with its previously selected custodians, L.B. and P.R. Notably, L.B. and P.R. had far fewer hits, a total of 11,817, compared to Zuckerberg, a total of 31,047 document hits.[1] Undermining any burden argument, if Meta were to produce all of these hits, it would equate to just over 2% of Meta's total document production to date.

At the October 24 DMC, the Court encouraged the parties to "meet and confer and figure out if you can, for example, limit the number of pre-2012 custodians to a very small number of key people who you think would be the ones that would have the documents, and limit the number of extra search terms -- right? -- to a very small number." *See* Oct. DMC Tr. at 60. Towards that end, Plaintiffs sent a narrow request to Meta, asking them to run five search strings across the custodial files of five employees, from the date of employment until January 1, 2012, and produce non-privileged, responsive documents. The five selected custodians include two picks by Meta and represent only 4% of the total list of agreed upon custodians. Meta refused, and when asked if narrowing the number of custodians or search terms would change their position, answered that it would not, making further negotiations futile and sending the parties back to Court. Plaintiffs have repeatedly tried to work with Meta on this matter but have been met with obstruction on every attempt.

To effectively prosecute their claims, Plaintiffs must understand Meta's state of mind and intent when designing the Facebook platform, including the many early expansions and additional features. What Meta knew, when they knew it, and what they did with that

---

[1] It should be noted that Mark Zuckerberg's file contains nearly three times as many document hits, despite Defendants previously labeling him an unrepresentative custodian on these issues.

1

information, are essential elements of Plaintiffs' claims. The pre-2012 hit reports using only three sample search terms confirm that material amounts of information relevant to Plaintiffs' claims, including non-feature specific documents relevant to Meta's intent and knowledge in designing the Facebook platform, predates 2012. Indeed, the sample search terms target documents concerning harms to children and Meta's attempts to capture and captivate the youth market generally, rather than limited feature-specific discussions. While this information is crucial to all Plaintiffs' claims, two JCCP bellwether candidates started using Meta platforms well before 2012 (2006 and 2009).[2] Continuing to withhold these known responsive documents, and others like them would severely impair Plaintiffs' ability to try these cases. There is good cause to open a limited subset of pre-2012 discovery. Plaintiffs' request that Meta run five search strings across approximately 4% of their custodians' files is reasonable, proportionate, and not burdensome.

Plaintiffs' offensive discovery will be used in both the federal and state court consolidations of the Social Media Adolescent Addiction cases. Even assuming the pre-2012 feature specific search terms are sufficient in the MDL (they are not), that argument misses the mark in the JCCP. Judge Kuhl has explicitly renounced such a feature specific framework on other matters, like expert discovery, stating:

> [T]here is sort of peripheral mention of the potential that experts may think about evaluation of general causation design feature by design feature and that might be -- that might be required in the MDL, you know, given the product liability ruling. And by the way, product liability was plaintiffs' idea. But, we do have and -- you know, that's another reason to look at jury instructions because we do have here a negligence theory that has more to do with the relationship of the parties.

*See* Sept. JCCP CMC Tr. at 30-31. The relationship between the parties is highly relevant to a negligence case, and two JCCP bellwether candidates started using the Platform well before January 1, 2012. Without this additional non-feature specific discovery into youth harms, and efforts to grow the base of youth users, Plaintiffs, and ultimately jurors, will have a limited view into the relationship between plaintiffs Lambert and Loach, and Meta Platforms. Plaintiffs are not asking for a "perfect" or complete set of pre-2012 discovery, but Plaintiffs cannot effectively prosecute these cases relying solely on pre-2012 documents that are incidentally produced as a byproduct of Meta's feature specific searches. Plaintiffs' request is narrow in scope, only two new custodians and three new search strings, amounting to five custodians and five search strings total. Even taking Meta's point on the individual terms contained within the search strings if broken out, which in modern E-Discovery is wholly irrelevant to burden, we are only asking Meta to run 11% of our total terms. Plaintiffs' request for a limited set of relevant pre-2012 documents will allow Plaintiffs to avoid severe prejudice to these claims, at minimal cost to Meta.

Plaintiffs' request is timely. The Court has repeatedly ordered both parties to meet and confer on additional pre-2012 discovery and has never foreclosed this issue. At the June DMC, the Court stated:

---

[2] Plaintiffs, Whitney Lambert and Jamie Loach.

2

> I'm not foreclosing it. If you've got evidence that you think there are documents – there's a universe of documents that predate 2013, for example, on age verification, or this specific subset of custodians who you think are critical to that that have documents preceding that, then I'm going to expect you to meet and confer and talk with Ms. Simonsen about, you know, trying to expand that date backwards in time, and I'm sure she'll be reasonable in discussing that with you.

June DMC Tr. at 76. At the August DMC, the Court ordered the parties to conduct such meet and confers, beginning the hit report exercise: "I would suggest very strongly that you continue to meet and confer on this as you get more information and run hit reports so you can talk intelligently about how much more work and how many more documents this is going to sweep in." *See* August DMC Tr. at 88. The Court again asked the parties to meet and confer at the October DMC. *See* Oct DMC Tr. at 60. Plaintiffs have complied, the hit reports were run, and we now have evidence of relevant pre-2012 documents from a small subset of custodians Plaintiffs believe are critical to this case. Finally coming to a deal on the production of a relatively small percentage of documents from five Meta custodians is the natural conclusion of this process. The Court should order Meta to run the five search strings across the five custodial files from date of employment to January 1, 2012, and produce responsive, non-privileged documents, concluding this process once and for all.

**Meta's Position.** Though the substantial completion deadline passed one month ago, the JCCP Plaintiffs seek to drastically expand the Meta Relevant Time Period ("RTP") by having Meta run five lengthy new search strings over the pre-2012 documents of five custodians going back to their dates-of-hire. The Court should deny this late-stage request, which is a motion for reconsideration of the Court's prior rulings ordering (1) a general relevant time period of January 1, 2012 through April 1, 2024, and (2) a "feature-specific" RTP dating back to January 1, 2006 ("Pre-2012 RTP") for certain features using hundreds of agreed-upon "feature-specific" search terms. ECF Nos. 969 at 5, 1070 at 9, 1299 at 5; *see* Ex. A (list of 107 feature-specific terms). Yet Plaintiffs do not even attempt to make the requisite showing of good cause, failing to explain how an overall RTP spanning nearly 20 years, resulting in 1.9 million documents produced to date (and counting), is inadequate. Nor could they, when they previously assured the JCCP Court, even before discovery was well underway, that "[p]articularly for the Meta Defendants[,] . . . there is lots of information out there, and we're going to use that to make sure our discovery is tailored and targeted." 11/7/23 JCCP CMC Tr. 41:25-42:6. Plaintiffs' request should be denied.

*Background.* On June 24, following briefing and argument, the Court ordered a default general start date for Plaintiffs' discovery requests to Meta of January 1, 2012, with feature-specific start dates ranging from January 1, 2006 to January 1, 2011. ECF 969 at 5. Since then, Plaintiffs have sought reconsideration. They originally cited a 2017 interview of an early Facebook employee, Sean Parker, as a purported basis to expand pre-2012 discovery. *See* ECF 940 at 15. The Court rejected that effort on June 24, reasoning that Plaintiffs would need to identify a "specific" need for such discovery after reviewing Meta's pre-2012 document productions. 6/20/24 DMC Tr. 64:24-65:3; ECF 1070 at 9. The Court also observed that Plaintiffs could request Mr. Parker's deposition, 6/20/24 DMC Tr. 80:10-19, which they have now done.

3

Nevertheless, to gather information about potential burden and in case it might moot Plaintiffs' request, on August 15 and November 1, the Court ordered Meta to run 3 sample search terms proposed by Plaintiffs over the files of 3 pre-2012 custodians (going back to 2006), and produce the hit reports. *See* 8/8/24 DMC Tr. 103:11-14 (ordering hit reports "so I can figure out how burdensome and how overbroad this is anyway. … [I]t could be five documents and everybody could be happy"); 10/24/24 DMC Tr. 64:3-6 ("maybe going back to 2006 tells us there's only a couple hundred documents or a few dozens of documents"); *see also* DMO 9 (ECF 1070) at 10; DMO 11 (ECF 1299) at 5. Those hit reports did *not* support a lack of burden. Instead, they confirmed the overbreadth of Plaintiffs' sample terms, which hit on 31,047 documents in Mr. Zuckerberg's pre-2012 files, and 11,817 documents in the other two custodians' pre-2012 files (post-deduplication; including families; excluding already-produced documents). Yet faced with these results, rather than narrowing their proposed search terms or requested custodians, Plaintiffs *expanded* their request to include five lengthy search strings (amounting to 185 separate search terms) to be run over five pre-2012 custodians' files going back to 2004.

*Plaintiffs' request to add 5 broad pre-2012 search terms should be denied.* Plaintiffs have made no showing of good cause to add essentially 185 more pre-2012 terms, beyond the 107 robust feature-specific terms Meta has already run over all 25 pre-2012 Meta custodians' files. Those broad terms were the product of negotiations that included the JCCP Plaintiffs and culminated in a "finalized deal on search terms" that the Parties agreed could *not* be expanded absent a showing of good cause (ECF 1320 at 6). Critically, Meta is and has been producing responsive, non-privileged documents returned by those terms going back to 2006 ***regardless of whether they relate to the features for which feature-specific discovery was permitted***, so long as they are otherwise relevant. As this Court explained, "those search terms are broad enough that [Plaintiffs] are probably getting some stuff," in which case "the system is working to some extent"; "discovery is not supposed to be [100%] perfect." 10/24/24 DMC Tr. 60:9-18. Notably, in permitting Plaintiffs to obtain hit reports on 3 sample search terms, the Court instructed that they should combine concepts of harm with feature-specific terms. ECF 1070 at 10. None of Plaintiffs' 5 proposed search strings complies with that instruction; and in any event, the pre-2012 terms are *broader*, targeting specific features *without requiring any tie-in to alleged harm*.

To date, Meta has produced 21,520 pre-2012 documents, with productions ongoing. And for the 5 custodians Plaintiffs seek to include in a broader pre-2012 search, Meta has produced over 55,000 documents spanning the nearly-20-year RTP. Plaintiffs have not identified any insufficiency in those productions supporting reconsideration of the Court's prior rulings.

*Plaintiffs' request for pre-2006 documents should be denied.* On June 24, this Court rejected Plaintiffs' original proposal for a "general default start date of January 1, 2010 and a 'date-of-hire' start date for six custodians of Plaintiffs' choice." ECF 969 at 5. The Court reasoned that requiring Meta to run the Parties' agreed-to general search terms over the pre-2012 RTP, or to run any terms before 2006, would be disproportionate to the needs of the case. *See* 6/20/24 DMC Tr. 64:18-65:7 ("I'm not going to have kind of a broad early, early, early default discovery date because at some point in time it starts getting—it starts getting unproportional I believe."). The Court also rejected Plaintiffs' request that Meta run their three sample terms back to date-of-hire, limiting the hit reports to documents Meta had already collected back to 2006. *See* ECF

4

969 at 4-5.  Plaintiffs have not shown good cause for reconsideration, and the balance the Court previously struck was the right one.  *See* 10/24/24 DMC Tr. 60:3-8 (Plaintiffs "are getting a lot of stuff anyway, even going back to 2006").  As such, Plaintiffs' request should be denied.

**Meta's Reply.**  Plaintiffs' only attempt to show good cause for their expanded request is to observe that "two JCCP bellwether candidates started using Meta platforms well before 2012 (2006 and 2009)."  Far from showing good cause, that only reinforces why the current Pre-2012 RTP, which goes back to January 1, 2006, is proportionate.  Plaintiffs articulate no basis for needing documents going back two years earlier, before any bellwether plaintiff even used the platforms.

Plaintiffs argue their expanded request is justified by the fact that Meta's hit reports showed hits comprising "just over 2% of Meta's total document production to date."  This argument fails on multiple levels.  First, this calculation is completely irrelevant to whether good cause exists to warrant further productions; Plaintiffs have not shown any.

Second, the "just over 2%" figure reflects nothing more than the enormity of Meta's productions to date; it says nothing about the additional burden on Meta from having to re-collect 5 custodians' files back to 2004, run Plaintiffs' 5 lengthy search strings on the resulting collections, conduct a TAR, relevance, and privilege review, and produce the resulting responsive, non-privileged documents plus families.[3]  Notably, Plaintiffs' demand comes at a time when depositions are well underway, and when Meta already is undertaking massive efforts to collect and produce post-RTP documents (from April 2024 through October 2024) in response to 5 RFPs Plaintiffs served in September relating to Instagram's recently-launched Teen Accounts.  Adding tens of thousands more documents to that review pool just to satisfy Plaintiffs' fishing expedition is unwarranted at this late stage.

Third, Plaintiffs' "just over 2%" figure is understated because it reflects hits on (a) only 3 of Plaintiffs' 5 proposed search terms, (b) only 3 of Plaintiffs' 5 proposed custodians, and (c) only 6 of the 8 pre-2012 years Plaintiffs propose to search.  Conservatively assuming Plaintiffs' 3 sample terms would return the same number of hits for their 2 additional proposed custodians as they did for P.R. and L.B. (11,817), and assuming their 2 additional proposed search terms would return the same average number of hits as their 3 sample terms did, the number of additional documents would be closer to 100,000 documents, or 5% of Meta's productions to date—a staggering amount.

Finally, the fact that Plaintiffs' 3 sample search strings produced a large number of hits does not "confirm that material amounts of information relevant to Plaintiffs' claims" exists, as Plaintiffs assert.  Given the breadth of those search strings, which include such broad component terms as **(data AND teen)**, **((parent w/5 control) AND kid)**, and **((age w/5 verif\*) AND "under-13")**, it is unsurprising that they produced large hit counts, which says nothing about the responsiveness of the document population returned.

---

[3] The number of custodians for whom Plaintiffs are demanding more pre-2012 documents (5), expressed as a proportion of Meta's total custodians (127), is irrelevant for the same reasons.

## ATTESTATION

      I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 6, 2024                                                */s/Ashley M. Simonsen*