UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING WHETHER PLAINTIFFS' INTERROGATORIES EXCEED THE COURT'S LIMITS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

      Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendant Snap Inc. ("Snap") respectfully submit this letter brief regarding a dispute as to how to count the interrogatories that Plaintiffs served on Snap in Sets One and Two (Exs. A and B).

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference and correspondence. The final conferral was by video conference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: December 9, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610

pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement
Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN
PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100

Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

iv

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

/s/ *Victoria A. Degtyareva*
Victoria A. Degtyareva (SBN 284199)
Rose L. Ehler (SBN 29652)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: victoria.degtyareva@mto.com
Email: rose.ehler@mto.com
Email: Ariel.Teshuva@mto.com

Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Lauren A. Bell (pro hac vice)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**Plaintiffs' Position**

***Background.*** This matter concerns Snap's continued failure to adequately respond to ten of Plaintiffs' eleven interrogatories ("ROGs"), raising baseless "counting" objections that undermine Plaintiffs' ability to conduct the discovery authorized by the Court.

Plaintiffs have served two sets of interrogatories on Snap in this case. *See* Exs. A & B. On July 2, 2024, Plaintiffs served their first set of interrogatories, which contained one ROG. Snap answered that ROG, but its response was incomplete, *see* Ex. C, and Plaintiffs were required to seek assistance from Your Honor to obtain an adequate response.[1] Plaintiffs served their second set of interrogatories, containing ten ROGs, on October 1, 2024. Snap requested and received an extension to respond to these ROGs after representing that it needed additional time to confer with Snap personnel. Despite taking more than 50 days to respond, Snap answered only one of ten ROGs and served objections to the rest. *See* Ex. D. Plaintiffs agreed to grant Snap an extension based on a good faith belief that Snap's request for additional time to consult with its client would lead to substantive answers. Snap's refusal to answer, and instead to raise meritless objections, deprived Plaintiffs of critical, discoverable information that they intended to use in depositions occurring over the next several weeks. This conduct has and continues to prejudice Plaintiffs.

To reiterate, Snap has fully answered one of eleven interrogatories, partially answered one, **and refused to answer another nine**.[2] Snap's primary objection is based on its claim that the ten ROGs in set two are "compound," and therefore Plaintiffs actually served over 200 ROGs. These objections are based on absurd counting tactics. For example, if a ROG seeks information on a common aspect of the Named Features, Snap counts every Named Feature as a separate ROG. Same is true with ROGs seeking information about common aspects of Safety Features. These tactics are incompatible with the complexity of this case, inconsistent with the law, and contrary to the 45-interrogatory limit negotiated by the parties and imposed by the Court *See* ECF No. 672. If Snap's tactics are permitted, Plaintiffs will effectively be unable to use interrogatories to discover information. That is not the intent of the Federal Rules or of the Court's order permitting 45 ROGs. Accordingly, Plaintiffs request that the Court overrule Snap's counting objections or significantly increase Plaintiffs' interrogatory limit.

In determining whether an interrogatory is compound, courts reject a "bright line approach" where "the number of separate interrogatories is determined strictly" based on a single factor, such as the number of products in the request (or the number of years). *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, 2020 WL 10052402, at *6 (C.D. Cal. June 22, 2020). Instead, courts apply a 'relatedness' test that treats a request as a single interrogatory where its subparts are "logically or factually subsumed within and necessarily related to the primary question." *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 294 (N.D. Cal. 2016).

***ROGs Seeking Information About User Metrics Are A Single Interrogatory.*** Seven

---

[1] Snap concedes that its response omitted responsive information sought by the ROG but it has yet to serve an amended answer. Thus, it has not answered this ROG.

[2] During joint letter briefing, Snap withdrew its objection to ROG 1 in Set 2, subpart (ii) of ROGS 8 and 10, and its objection that questions seeking information about each year in the Relevant Time Period constitute separate ROGs. The withdrawal of these objections, which accounted for the vast majority of Snap's objections, suggests the objections were not appropriate in the first place and raised simply to delay proceedings.

interrogatories in Set 2 (nos. 1-6, 9) ask how various user metrics on Snap varied by age, requesting that the responses be broken down into three age categories Snap already tracks: Null or Unknown Age, Reported Age, and Inferred Age. Snap argues that each age group should be counted as a separate interrogatory, but each relates to a single primary question about how Snap records and understands specific user metrics based on age. An age breakdown is necessary to answer the primary question. And these are categories that Snap already tracks. *Cancino Castellar v. McAleenan*, 2020 WL 1332485, at *10 (S.D. Cal. Mar. 23, 2020) ("Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.").

***ROGs Seeking Information About "Safety Features" Are a Single Interrogatory.*** The eighth ROG in Set 2 asks Snap to describe each Safety Feature it implemented for minors, while the ninth asks Snap to identify the percentage of users who utilized each Safety Feature. Inexplicably, Snap does not say how many Safety features there are, but it counts each undisclosed feature as a separate interrogatory. *Faglie v. Meritage Homes of Texas, LLC*, 2013 WL 1608727, at *2 (N.D. Tex. Apr. 15, 2013) ("The interrogatory is not converted into multiple interrogatories because [the] answer identifies multiple defects.") Snap's "analysis for counting subparts is substantially flawed because it is based on an analysis of the number of responses that the interrogatory elicits." *The Mitchell Co. v. Campus*, 2008 WL 2468564, at *9 (S.D. Ala. June 16, 2008). "The proper test for determining whether subparts are discrete is to ask whether they are factually related to the primary question, not whether they elicit numerous responses." *Id.* This rule is sensible because parties cannot obey interrogatory limits unless they can determine in advance the number of interrogatories they are serving. Because the counting of interrogatories depends on the questions rather than the answers, and because Safety Features are each about a single common theme, just as Named Features are, the Court should overrule Snap's compound objection. *In re Lithium Ion Batteries Antitrust Litig.*, 2015 WL 1221924, at *4 (N.D. Cal. Mar. 17, 2015).

***ROGs Seeking Information About Named Features Are a Single Interrogatory.*** Plaintiffs' tenth ROG asks Snap to identify the date when each Named Feature was implemented, the persons responsible for the Named Feature during each year of the Relevant Time Period, and how that feature changed over time. Snap claims this constitutes three interrogatories for each Named Feature. But an interrogatory that seeks information "about multiple alleged design defects does not turn it into multiple interrogatories." *Cardenas v. Dorel Juv. Grp., Inc.*, 231 F.R.D. 616, 619–20 (D. Kan. 2005); *accord Synopsys,* 319 F.R.D. at 295–96) (counting question about multiple "functionalities" and products as one request). "Multiple courts have determined that an interrogatory regarding a particular category constitutes 1 interrogatory, even though the category may contain multiple items." *Heritage-Nevada VIII, LLC v. World Mkt. Ctr. Venture, LLC*, 2009 WL 10693182, at *5 (D. Nev. Sept. 11, 2009) (collecting cases). Here, questions about Named Features count as a single request because they ask about a single category of features that are at issue in Plaintiffs' design defect and failure to warn claims, and every at-issue feature is part of a single social media product. *See Indacon, Inc. v. Facebook, Inc.*, 2012 WL 12538968, at *8 (W.D. Tex. Feb. 14, 2012) (overruling compound objection to interrogatory asking about each accused social media product); *Olen Properties Corp. v. ACE Am. Ins.* Co., 2017 WL 11635014, at *4 (C.D. Cal. Jan. 30, 2017) (interrogatory about each design in dispute counted as one).

***ROGs Seeking Information About Each Year in the Relevant Time Period Count As a Single Interrogatory.*** Snap refused to answer ROGs 2-6 and 9, contending that each year in the Relevant Time Period (2015-2024) represented a separate ROG; therefore, it argued each one of these ROGs included at least ten separate ROGs. Snap finally withdrew this objection—which represented over

80% of Snap's compound objections—as a "compromise" just one business day before this briefing was due, demonstrating that it understood the objection to be meritless and interposed it anyway to delay responding to Plaintiffs' ROGs. *See, e.g., Contra Grateful Dead Prods. v. Sagan*, 2007 WL 3132666, at 5 (N.D. Cal. Oct. 22, 2007) & ECF No. 82-1 at *5 (interrogatory asking for gross revenue on a monthly basis counted as a single interrogatory).

***Requested Relief.*** Plaintiffs have been judicious with their use of interrogatories thus far, propounding only eleven to date, all of which are appropriately suited to this discovery device. And the parties and Court anticipated that interrogatories would serve an essential discovery purpose when they agreed to a 45-interrogatory limit. Snap's counting objections render this limit useless. Indeed, Snap has only fully answered ***one interrogatory*** served to date (Set 2, ROG 7). Its instant objections demonstrate that it seeks to delay providing substantive responses to Plaintiffs' relevant inquiries for as long as possible—and certainly to delay providing those responses before Plaintiffs depose several key witnesses in December and early January.

Accordingly, Plaintiffs respectfully request that the Court overrule Snap's "compound" objections and order that it serve substantive responses to the Second Set of Interrogatories within seven days. And to remedy the prejudice already incurred due to Snap's inappropriate delay, Plaintiffs request permission to recall any witness deposed before Snap serves substantive responses to Set 2 so that Plaintiffs may properly question Snap's witnesses about the company's interrogatory responses.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Snap's Position:** After extended negotiations, the parties agreed to, and the Court ordered, limits to govern all discovery in the case, including that all Plaintiffs are allotted a combined total of 45 interrogatories ("ROGs") for each Defendant group. (ECF No. 672.) But Plaintiffs have served two sets of compound ROGs that far exceed those limits: one purports to consist of one ROG but contains six discrete subparts, and another purports to consist of 10 ROGs but contains over a hundred discrete subparts. (Exs. A & B.) Plaintiffs blatantly attempt to evade the limits to which they previously agreed, this Court's order, and the Federal Rules. *See* Fed. R. Civ. P. 33(a)(1), advisory committee note (1993 amendments) (cautioning against "joining as 'subparts' questions that seek information about discrete separate subjects" as a way to evade limits).

While Snap responded to Plaintiffs' first set of ROGs[3]—which even with subparts remained within the limit—responding to all of the subparts in the second set would result in Snap answering over a hundred ROGs, in contravention of this Court's order, and would unduly burden Snap. Snap objected to the ROGs as compound, as well as on other grounds, and sought to meet-and-confer. Snap offered to respond to the 45 highest priority ROGs and sought to engage Plaintiffs on its other objections. Plaintiffs refused.[4] Snap requests the Court hold that the Set 2 ROGs as written exceed Plaintiffs' limit, and that Snap need not respond to any ROGs that exceed that limit.[5]

---

[3] Plaintiffs incorrectly assert that Snap concedes its response to the Set 1 ROG is incomplete. Snap has fully responded to Set 1. If Plaintiffs disagree, they should request to meet-and-confer.

[4] Given Plaintiffs' refusal to substantively confer, their accusations of delay are unwarranted. Snap stands ready to respond to a revised set of ROGs that complies with this Court's order. Plaintiffs' request to recall witnesses for deposition is also improper. Plaintiffs could have served these non-specific ROGs far earlier in discovery, but instead waited until close to the start of depositions.

[5] As a compromise, Snap has withdrawn its compound objection to ROG No. 1, Set 2, and its objection that each year of the Relevant Time Period is a separate interrogatory. Snap's willingness

***Plaintiffs' Interrogatories Contain Numerous Discrete "Subparts" That Can Stand Alone.*** If each interrogatory subpart "can be fully answered without addressing the other subparts," the interrogatory is compound. *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020). "[D]iscrete or separate questions should be counted as separate interrogatories, notwithstanding [that] they are joined by a conjunctive word and may be related." *Sonista, Inc. v. Hsieh*, 2005 WL 8177499, at *1 (N.D. Cal. Nov. 7, 2005).

Under these principles, courts in the Ninth Circuit routinely find that interrogatories containing distinct subparts are compound, even if those subparts are related. For example, an interrogatory that asks "how [online posts] were created and when they were removed" constitutes "two different topics that are properly counted as two interrogatories." *Prolo v. Blackmon*, 2022 WL 2189643, at *13 (C.D. Cal. Mar. 25, 2022). And a request to identify each expert witness, the subject of their expected testimonies, and the grounds for their opinions counts as three separate interrogatories. *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006). Similarly, the majority of Plaintiffs' ROGs here contain numerous separate questions that can be fully answered without addressing the others; thus, they count as separate interrogatories.

***Set 1, No. 1.*** ROG No. 1 has **6** separate questions. While they all relate to Hipchat, each can be answered independently. For example, one asks for a list of all cases in which Hipchat data has been produced; another asks for an explanation of the circumstances that made Hipchat data inaccessible. (Ex. A at 8.) As each subpart "can be fully answered without addressing the other subparts," the interrogatory is compound. *Am. Bankers Ins. Co.*, 2020 WL 8996760, at *2.

***Set 2, Nos. 2-6.*** ROG Nos. 2-6 ask Snap to provide data for three categories of Snapchat users (Null or Unknown Age; Reported Age between 0 and 100; and Inferred Age between 0 and 100). (Ex. B at 8-9.) Snap does not in the ordinary course of business store the user metrics sought by these ROGs in the form requested by Plaintiffs. Each category would require "separate calculations" to respond to the ROG and, thus, ROG Nos. 2-6 each ask at least **3** "separate and distinct questions." *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 686 (D. Nev. 1997).

***Set 2, No. 8.*** ROG No. 8 seeks 8 separate categories of information about each of Snapchat's Safety Features, including a general description of the feature's intended purpose, the population of users or non-users to whom Snap made the feature available, and how Snap notifies users about or encourages users to adopt the feature. (Ex. B at 9.)

For each feature, these 8 questions can be fully answered without reference to one another. And the questions about each Safety Feature can be fully answered without reference to any question about any other feature. Courts have repeatedly held that an interrogatory that seeks information about separate items counts as a separate interrogatory for each item. *See Seoul Semiconductor Co. v. FEIT Elec. Co.*, 2024 WL 3086641, at *13 (C.D. Cal. May 23, 2024) (interrogatory seeking priority date "for each asserted claim" counts as "twelve interrogatories"); *Am. Bankers Ins. Co.*, 2020 WL 8996760, at *2 (compound where "each subpart seeks information regarding a different

---

to compromise does not indicate dilatory tactics or that its objections are meritless. Snap withdrew these objections as a proposed compromise to comply with the Court's standing order. *See* Standing Order for Discovery in Civil Cases before Mag. Judge Kang, at H(3) (June 1, 2023).

insurance policy"); *Rambus Inc. v. NVIDIA Corp.*, 2011 WL 11746749, at *14 (N.D. Cal. Aug. 24, 2011) ("An interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions."); *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D. Cal. 2004) (interrogatory seeking information about 26 accused products counts as 26 interrogatories); *Stamps.Com, Inc. v. Endicia, Inc., PSI Sys. Inc.*, 2009 WL 2576371, at *3 (C.D. Cal. May 21, 2009) ("interrogatories seeking facts relating to separate patents or separate accused products seek information concerning distinct subjects, and, therefore, constitute separate interrogatories").

Thus, ROG No. 8 asks *8* separate and distinct questions *for each Safety Feature*. The total number of ROGs depends on the number of Safety Features for which information is requested, of which there are many in light of *Plaintiffs'* overbroad and vague definition, not Snap's. (Ex. B at 4.)

*Set 2, No. 9.* ROG No. 9 asks for "the percentage rate of adoption" of each Safety Feature for four categories of individuals: users of Null or Unknown Age; users of each Reported Age between 0 and 100; users of each Inferred Age between 0 and 100; and non-users. (Ex. B at 9.) Thus, ROG No. 9 asks *4* distinct questions requiring separate calculations *for each Safety Feature*. The total number of ROGs again depends on the number of Safety Features for which this data is requested.

*Set 2, No. 10.* Finally, ROG No. 10 seeks at least 3 distinct categories of information for all Named Features, including the date the feature was first implemented, the persons with primary responsibility for the feature during each year, major modifications to each feature, and when each modification was implemented. (Ex. B at 9-10.) For each Named Feature—a term, like Safety Feature, defined *by Plaintiffs*[6]—each question is independent from the others, and the questions about each Named Feature are independent of the questions about other Named Features.

Plaintiffs attempt to portray this ROG as asking about a single category, but Plaintiffs do not allege (nor could they) that all the Named Features have the same "accused functionalities" nor that they allegedly cause harm in "substantially the same way." *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293, 295 (N.D. Cal. 2016). Rather, the Named Features are distinct and separate features that have "material differences"; a ROG asking about all Named Features "contains at least as many discrete subparts as there are [features] at issue." *Edge Systems LLC v. Image MicroDerm Inc.*, 2019 WL 2902492, at *2-3 (C.D. Cal. May 3, 2019). Thus, ROG No. 10 asks *3* separate questions *for each Named Feature.* Though Plaintiffs' definition of Named Features is disputed, by their and Snap's count there are many, which multiplies these three questions into many more ROGs.

Permitting Plaintiffs to propound these discrete subparts under the guise of single ROGs would be an end run around this Court's order. Snap stands ready to answer interrogatories up to the limit or to confer on a narrowed set.

---

[6] *Cardenas v. Dorel Juv. Grp., Inc.*, 231 F.R.D. 616, 619-20 (D. Kan. 2005), is inapposite: there, a party sought discovery into alleged design defects whose number was defined by the other party. Here, Plaintiffs seek discovery into allegations whose number is defined by Plaintiffs.

## <u>ATTESTATION</u>

I, Victoria A. Degtyareva, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 9, 2024

By: *<u>/s/ Victoria A. Degtyareva</u>*