# EXHIBIT B

1  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   Lexi J. Hazam
2  275 BATTERY STREET, 29TH FLOOR
   SAN FRANCISCO, CA 94111-3339
3  Telephone: 415-956-1000
   lhazam@lchb.com
4
   MOTLEY RICE LLC
5  Previn Warren
   401 9th Street NW Suite 630
6  Washington DC 20004
   T: 202-386-9610
7  pwarren@motleyrice.com

8  *Plaintiffs' Co-Lead Counsel*

9  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
10

11

12  | IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-md-03047-YGR |
13 | | MDL No. 3047 |
14 | | |
15 | This Document Relates to: | **PLAINTIFFS' SECOND SET OF INTERROGATORIES TO DEFENDANT SNAP INC.** |
16 | ALL ACTIONS | |

PROPOUNDING PARTY:     Plaintiffs

RESPONDING PARTY:      Defendant Snap Inc.

**SET NUMBER: Two (2)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs hereby deliver the following Second Set of Interrogatories to Defendant Snap Inc. Responses to these Interrogatories shall be delivered electronically to the undersigned within thirty (30) days of the date of service hereof or as otherwise mutually agreed by the parties.

I. **DEFINITIONS**

1. "**Child**" or "**Children**" means individual(s) under the age of thirteen (13).

2. "**Date**" means the exact day, month, and year, if ascertainable, or if not, the best approximation (including relationship to other events, with the indication that it is an approximation).

3. "**Daily App Session Count**" means the number of times a user initiates a Session on the Snapchat Platform in a single day.

4. "**Document**" and "**Documents**" are synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Civ. P. 34 and the Local Rules (and, as applicable, to the usage of the term "writing" in California Evidence Code 250) and include ESI and Communications.

5. "**Identify**" means to provide the Identity.

6. "**Identity**" means:

a. with respect to natural Person(s): (i) their full name; (ii) their present or last known address; (iii) all title(s)/position(s) and dates they held; (iv) their present and past place in Your structure/hierarchy including Units; (iv) the Identity of Person(s) to whom they report or reported directly or indirectly ("**Reporting Relationships**"); (v) the Identity of Person(s) that report or reported to them directly or indirectly ("**Supervisory Relationships**"); (vi) their present and past functions, duties, activities, and responsibilities ("**Duties**") and the Duties of the Unit in which they work or worked; (vi) their present or last known place of employment; and (vii) the

- 2 -

geographic location/address where they worked while holding each title/position otherwise identified ("**Working History**");

      b. with respect to non-natural Person(s), organizational Person(s), or Units: (i) their full name; (ii) their present or last known address; (iii) their place in the organization's structure/hierarchy over time including Reporting Relationships, Supervisory Relationships, and all changes thereto; (iv) their present and past Duties; and (v) their personnel, managers, supervisors and decision-makers, and any changes thereto over time;

      c. with respect to a document, its Bates number (including pin cites, as applicable), its title, its date, its location, its signatory, any authors and recipients, its description (e.g., memorandum, letter, contract, form), and the number of pages; and

      d. with respect to a number, the number as known to You with the greatest degree of precision available to You, and the source(s) of that number, including Persons and documents.

    7. "**Including**" means "including, without limitation" and "including but not limited to."

    8. "**Inferred Age**" means the age You believe a user to be based on Your own analysis, whether by machine learning, manual review, or any other method.

    9. "**Lifetime value**" means the net profit You estimate will be attributable to a given Snapchat user over the duration of their use of Snapchat, and/or the definition given to the term by Snap, as reflected in Snap's document production. *See, e.g.*, SNAP0774624 at -4635.

    10. "**Named Feature**" means any feature of Your Platform identified in ¶¶ 845 and 864 of the Second Amended Master Complaint (MDL), ECF No. 494, and/or in ¶¶ 838, 861, and 930 of the Master Complaint (JCCP).

    11. "**Null Age**" shall have the same definition as applied by Snap, and means the age of a user that does not have a Reported Age or Inferred Age. *See, e.g.*, SNAP0542582. "Null Age" shall have the same meaning as Unknown Age.

12. "**Person**" or "**Persons**" means any natural person, corporation, company, partnership, proprietorship, association, governmental or nongovernmental entity, agency, organization, or group, as well as any other business entity or association.

13. "**Policy**" or "**Policies**" mean all formal and informal policies, practices, guidelines, protocols, procedures, plans, systems, customs, or manners of conducting a specific task that are or were adopted, implemented, or used by You; and for each of the foregoing the terms, methods and means of implementation, and Identity of Persons responsible for their management and implementation.

14. "**Relating to**," "**relate to**," "**referring to**," "**refer to**," "**reflecting**," "**reflect**," "**concerning**," or "**concern**" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, involving, embodying, evaluating, reviewing, reporting on, commenting on, relating to, referring to in any way or manner, or impacting or connecting in any way logically or factually with the subject matter of the Request.

15. "**Reported Age**" means the age a user identifies to You during the account creation process.

16. "**Safety**" means wellbeing, safety, physical or mental health, and protection from risks of extortion, sextortion, trafficking, bullying, harassment, CSAM victimization or revictimization, and predation.

17. "**Safety Feature**" means any protection, tool, intervention, or feature You have implemented on the Snapchat Platform that is directed at the Safety of Youth.

18. "**Selected Financial Data**" means the categories of financial information that Snap discloses in Item 8 of its Form 10-K filings, including the categories disclosed in the tables labeled Consolidated Statements of Cash Flows, Consolidated Statements of Operations, Consolidated Statements of Comprehensive Income (Loss), Consolidated Balance Sheets, Consolidated Statements of Stockholders' Equity, and Notes to Consolidated Financial Statements.

19. "**Session**" means each time a user opens Snapchat, does something, and then leaves the app.

20. "**Snapchat Platform**" or "**Snapchat**" means any version of the Snapchat platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform.

21. "**Teen**," "**Adolescents**," or "**Teens**" means individuals between the ages of thirteen (13) and seventeen (17), inclusively.

22. "**Time Between App Sessions**" means the amount of time between Sessions in a day.

23. "**Time Spent**" is equal in meaning and scope as the usage of that term by Snap Inc. CEO, Evan Spiegel. *See* SNAP1289632, 34, 40, and 43.

24. "**Time Spent per App Session**" means the Time Spent by a user per Session.

25. "**Unidentified Age**" refers to the age of a user that does not have a Reported Age or Inferred Age.

26. "**You**," "**Your**," "**Defendant**," or "**Defendants**" means the above-named Responding Party or Parties (individually and, where applicable, collectively); each of their predecessor or successor business entities; each foreign or domestic governmental, nongovernmental, or private corporation or entity with which they are commonly owned, including subsidiaries and parent corporations; each of their former or present Units; and for each of the foregoing all former or present directors, officers, members, partners, principals, employees, contractors, agents, attorneys, experts, investigators, consultants, or other persons authorized to act on their behalf.

27. "**Youth**" means individuals under the age of twenty-two (22).

**II.   RULES OF CONSTRUCTION**

1. "Any," "all," and "each" shall be construed as any, all, and each.

2. The words "and/or," "or" and "and" are used inclusively, not exclusively. As such, "and/or", "or" and "and" should be construed so as to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," You should produce all information about A and all information about B, as well as all information about A and B collectively.

3. The singular form of a noun or pronoun includes the plural form and vice versa.

4. The use of any tense of any verb shall also include all other tenses of that verb.

5. A term or word defined herein is meant to include both the lower and upper case reference to such term or word.

6. Any Bates number referenced in these Requests shall be construed to refer not only to the specific page number identified but to the entirety of the document associated with that Bates number, inclusive of family members.

### III.  INSTRUCTIONS

1. In responding to these Interrogatories, You shall furnish all information in Your possession, custody, care, or control, including that which is available to You via reasonable inquiry to their employees, agents, or any person subject to Your control.

2. The duty to furnish information shall not be limited or affected by the availability of the same information through another source. All information not subject to objection and known by, possessed by, or controlled by You (including through Your employees, agents, or any person subject to their control) shall be furnished.

3. If You respond to any Interrogatory with the production of business records, such records shall be produced in accordance with the terms of Federal Rules of Civil Procedure Rule 34 and any applicable orders or agreements among the parties governing the production of Documents, in the above-captioned case.

4. If any document that You would have identified in response to any Interrogatory was, but is no longer, in Your possession or subject to Your control, You must identify the

Document, the reason for its loss, destruction, or unavailability, the name of each person known or reasonably believed by You to have present possession, custody, or control of the original and any copy thereof (if applicable), and a description of the disposition of each copy of the Document.

5.  If You assert an objection to any Interrogatory, You must nonetheless respond and identify any information that is not subject to the stated objection. If You object to part of an Interrogatory, You must specify the portion of the Interrogatory to which You object, and must identify information responsive to the remaining parts of the Interrogatory. To the extent You object to any Interrogatory or portion thereof, You shall state with specificity Your grounds for objecting to that Interrogatory or portion thereof, state whether you are refusing to provide an answer, and identify any information withheld based on such objection. It is not appropriate to simply object to any Interrogatory in its entirety and invite a conference of counsel.

6.  If a response to any requested Interrogatory is objected to on the grounds that the Request is unduly burdensome, specifically describe the burden or expense associated with the response.

7.  Insofar as You may object to an Interrogatory as vague, ambiguous, otherwise difficult to understand, or subject to multiple interpretations not all of which You believe are objectionable, Plaintiffs are willing to meet and confer in advance of Your deadline to respond to these Interrogatories to assist in providing clarity as to the nature and scope of information requested.

8.  If You assert that a portion of a response is privileged or otherwise protected from disclosure, You shall identify the basis for that privilege and fully respond to the remaining portion of the Interrogatory that does not call for privileged information.

9.  These Interrogatories are continuing in nature and require prompt supplemental response(s) whenever responsive information not previously furnished by You is obtained by You.

10. Unless otherwise indicated, the relevant time period for the information sought is from the date You first researched, designed, or developed Your social media platform or any of its predecessors to the present.

11. To the extent that information requested is not within Your personal knowledge, but as to which You have been informed or have formed a belief, state that such information is furnished on information and/or belief and state the source of the information and the grounds of Your belief.

12. The relevant time period for these interrogatories starts at the creation of Snapchat until the present, unless otherwise noted. Please answer each interrogatory separately for each year included in the relevant time period.

13. All references to defined terms shall have the same meaning regardless of whether they are capitalized.

## INTERROGATORIES

1. Identify Your estimate of a Snapchat user's Lifetime Value to You. To the extent this estimate varies based on user characteristics, including but not limited to Reported Age of first use, Inferred Age of first use, or other demographic criteria, identify each such estimate.

2. For each year in the Relevant Time Period, identify the number of domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

3. For each year in the Relevant Time Period, identify by decile the Time Spent Per App Session for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

4. For each year in the Relevant Time Period, identify by decile the Daily App Session Count for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

5. For each year in the Relevant Time Period, identify by decile the typical Time Between App Sessions for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

6. For each year in the Relevant Time Period, identify the average revenue per user for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

7. For each year in the Relevant Time Period, identify the Selected Financial Data for Snap.

8. Describe the development and implementation of each Safety Feature from the creation of Snapchat through the date of service of this interrogatory. For purposes of this interrogatory, "describe" means to identify the following for each Safety Feature: (i) the date on which the feature was first made available on Snapchat; (ii) the Person(s) with primary responsibility for the feature during each year of the Relevant Time Period; (iii) a general description of the feature's intended purpose; (iv) all names by which the feature has been known internally and/or promoted externally; (v) the population of users or non-users (e.g. parents without Snapchat accounts) to whom You made the feature available; (vi) whether the feature is applied by default or must be opted into by a user; (vii) whether and how You notify users about or encourage users to adopt the feature, either during account creation or at any other time; and (viii) whether the feature is still available to users on the Snapchat Platform.

9. For each year during the Relevant Time Period, identify the percentage rate of adoption for each Safety Feature by domestic users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100. To the extent a Safety Feature is made available only to non-users (i.e. parents or guardians) identify the percentage rate of adoption as kept by You in the ordinary course of business.

10. For each Named Feature, identify the following: (i) the date on which the Feature was first implemented on Your Platform; (ii) the Person(s) with primary responsibility for the

- 9 -

Feature during each year of the Relevant Time Period; and (iii) major modifications to each Named Feature and when each such modification was implemented on Your Platform. For purposes of this Interrogatory, "major modification" means any change that materially improves and/or alters the source code, capacity, functionality, and/or the method of operation.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail on October 1, 2024 to the following Counsel for Snap Inc.:

SnapNoticeofService@mto.com

*/s/ James Bilsborrow*
JAMES BILSBORROW