# EXHIBIT C

JONATHAN H. BLAVIN, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: Jonathan.Blavin@mto.com

ROSE L. EHLER, SBN 296523
VICTORIA A. DEGTYAREVA, SBN 284199
ARIEL T. TESHUVA, SBN 324238
FAYE PAUL TELLER, SBN 343506
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: Rose.Ehler@mto.com
Email: Victoria.Degtyareva@mto.com
Email: Ariel.Teshuva@mto.com
Email: Faye.Teller@mto.com

LAUREN A. BELL (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: Lauren.Bell@mto.com

*Attorneys for Snap Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, <br><br> This Document Relates to: <br><br> ALL ACTIONS | Case No. 4:22-MD-03047-YGR <br><br> MDL No. 3047 <br><br> **SNAP INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

PROPOUNDING PARTY:   MDL Personal Injury and Local Government Plaintiffs

RESPONDING PARTY:    Snap Inc.

SET NO.:             1

DATE OF SERVICE:        July 2, 2024

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Snap Inc. ("Snap") hereby objects and responds to Plaintiffs' Interrogatories, Set 1 ("Interrogatories"), as follows:

## **OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS, RULES OF CONSTRUCTION, AND DEFINITIONS**

The following objections apply to and are incorporated by reference into each and every response to the separately numbered Interrogatories as if set forth in full therein. From time to time a specific response may repeat one of these objections for emphasis or for some other reason. The failure to repeat any of these objections in any specific response shall not be interpreted as a waiver of any objection to that response.

1.      Snap's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that Plaintiffs seek to impose.

2.      Snap objects to and has not considered Plaintiff's "instructions" or "definitions" to the extent they purport to impose obligations on Snap inconsistent with or in addition to those required by the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any other applicable rules or law.

3.      Snap objects to the definition of the terms "Child or Children" because it rests on inaccurate assumptions; Snap does not allow users who it knows to be under the age of thirteen (13) to use its platform. However, unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

4.      Snap objects to the definition of the term "Named Features" as seeking the production of information that is not relevant to the claim or defense of any party and not proportional to the needs of the case to the extent the information sought includes documents or information pertaining to platform features that the Court may conclude or has already concluded cannot support a viable cause of action in this matter, because such allegations directly target Snap's role as a publisher of third-party content. Specifically, Snap objects to the extent the term

defines features for which allegations are barred by Section 230 or the First Amendment, including allegations held barred by this Court's decision on the Motion to Dismiss in its November 14, 2023 Order (ECF No. 430, "Motion to Dismiss Order") at 16–19, 22, and allegations implicated by any pending motions.

Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection. Snap reserves all rights with respect to the Section 230 and First Amendment issues implicated by the Court's Motion to Dismiss Order, Magistrate Judge Kang's guidance, and the scope of discovery.

5.  Snap objects to the definition of the terms "Person or Persons" as overly broad, unduly burdensome, and not proportional to the needs of this case. For purposes of responding to the Interrogatories, Snap construes the terms "Person or Persons" to mean "natural person." Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

6.  Snap objects to the definition of the terms "Policy or Policies" as overly broad, unduly burdensome, and not proportional to the needs of this case. Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

7.  Snap objects to the definition of the term "Safety" to the extent the term defines third-party harms for which allegations are barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order at 16-19, 22, and allegations implicated by pending motions. Because claims based on third-party harm are precluded as a matter of law, discovery into third-party actions on Defendants' platforms (e.g., grooming, sextortion, bullying and CSAM) is unwarranted. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). Snap further objects to the definition of the term "Safety" as vague, ambiguous, and overbroad in its use of the undefined terms "wellbeing," "safety," "physical or mental health," and "protection from risks." Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection. Snap reserves all rights with respect to the Section 230 and First Amendment issues

implicated by the Court's Motion to Dismiss Order, Magistrate Judge Kang's guidance, and the scope of discovery.

8. Snap objects to the definition of the term "User Data" as overly broad to the extent that it seeks users' personal identifying information and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws, including the Stored Communications Act. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law. Snap further objects to this term to the extent that it seeks materials relating to third parties that would require Snap to violate obligations to those third parties with respect to proprietary, confidential, or trade secret information. For purposes of responding to the Interrogatories, where otherwise responsive information is barred from disclosure, Snap will withhold that information under applicable privacy laws in accordance with the Court's ESI Order. Snap also objects to the definition to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

9. Snap objects to Plaintiffs' definition of the terms "You," "Your," "Defendant," and "Defendants" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Snap further objects to the definition to the extent it seeks information not currently in the possession, custody, or control of Snap. Snap will respond solely on behalf of itself (Snap Inc.) and not any other subsidiaries or affiliates, or any other person or entity. Snap further objects to the definition on the grounds that it includes Snap's attorneys and requires Snap to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Interrogatories, "You," "Your," "Defendant," and "Defendants" will be defined as Snap Inc. and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

Snap confirms that no Snap subsidiary or affiliate is involved with the Snapchat application. Accordingly, Snap will not search for or produce, and thus will withhold, information relating to Snap subsidiaries or affiliates.

10. Snap objects to the definition of the terms "Snapchat Platform" and "Your Platform" because they are directed to the Snapchat platform as a whole, rather than the specific features that the Court has concluded can provide the basis for a viable cause of action in this matter, and to the extent the information sought is not reasonably accessible to Snap upon reasonable diligence. Snap further objects that the term "Snapchat Platform" is vague, ambiguous, and overbroad in its use of the undefined terms "developed, tested, or made available for use," and "all features or surfaces accessible to some or all users of the platform." Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

11. Snap objects to the definition of the term "Youth" to include users aged eighteen (18) and over as overly broad in that it seeks information that is not relevant to the claims or defenses of any party. This litigation concerns social media use by adolescents and minors under eighteen (18) years of age. For purposes of responding to the Interrogatories, Snap construes "Youth" to mean users under the age of eighteen (18). For purposes of responding to the Interrogatories, Snap also construes "minors" as users under the age of eighteen (18). Unless otherwise stated in response to a specific Interrogatory, Snap will not withhold a response on the basis of this objection.

12. Snap objects to the definition of the term "Recommendation System Evaluation" as overly broad, unduly burdensome, and not proportional to the needs of the case. Snap further objects to the definition of the term to the extent it seeks information in support of allegations barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order and allegations implicated by any pending motions. Snap objects to this definition to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap also objects to this definition to the

extent that it calls for the production of proprietary, confidential, or trade secret information. For purposes of responding to these Interrogatories, Snap construes the term "Recommendation System" to mean the algorithms Snap uses to select content for display in Stories, Discover, Spotlight, and Quick Add.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify and describe (a) the time period during which Hipchat was used and/or available for use by any of Your employees; (b) the date Hipchat data was archived; (c) whether the archive encompasses all Hipchat data and, if not, the decision regarding what Hipchat data would not be archived and/or preserved; (d) the storage location(s) of the archived Hipchat data and whether it is exportable and searchable; (e) if any Hipchat data was produced in litigation, the case caption, status of litigation, and status of the Hipchat data; and (f) if Snap contends that any Hipchat data is not accessible, an explanation of the circumstances that led to the inaccessibility and all efforts to access and/or retrieve the Hipchat data.

**RESPONSE TO INTERROGATORY NO. 1:**

Snap objects that this Interrogatory is compound to the extent that it contains six sub-parts, each of which purports to require a separate response. Snap therefore counts this Interrogatory as six separate Interrogatories. *See Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020). Snap further objects to this Interrogatory on the grounds that it is overbroad, including as to time, unduly burdensome, and not proportional to the needs of the case, to the extent it seeks "all efforts to access and/or retrieve the Hipchat data." Snap further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, Snap responds as follows:

(a) Hipchat was available for use by Snap employees until September 14, 2018.

(b) On September 14, 2018, all but a few admin accounts were deactivated, and the tool was formally deprecated. The remaining admin accounts were deactivated approximately a month

later, on or about October 15, 2018. Hipchat data was purged upon deprecation of the tool, but all existing data was preserved in two Iron Keys.

(c) Each Iron Key contained a full copy of all the Hipchat data that existed at the time of deprecation. Based on Snap's retention policies, this would have included all data from October 13, 2017 until the date of deprecation, plus 30 additional days' worth of Hipchat Rooms data and 7 additional days' worth of Hipchat 1:1 chat data.

(d) The two Iron Keys are stored in a vault at Snap's headquarters in Santa Monica, California. Since summer of 2021, Snap has not been able to export or search the data on the Iron Keys.

(e) Hipchat data was produced in response to a 2017 Department of Justice investigation that was disclosed in Snap's public filings.

(f) In August and September 2021, in connection with unrelated litigation, Snap's eDiscovery vendor, Consilio, attempted to access the Hipchat data preserved on the two Iron Keys. Consilio was able to access the data in one of the two Iron Keys but was unable to decrypt and access the other. A limited set of the accessed data was copied from the Iron Key into a document review database. That database was later deleted in September 2021 in the ordinary course of business after the litigation was resolved. No Hipchat data was produced in that litigation. Between November 2022 and January 2023, Consilio attempted to access the data once more in connection with a different unrelated litigation. Despite following the same decryption procedure with the same passcodes used in 2021, and attempting to do so multiple times on multiple machines, Consilio was unable to decrypt and access the dataset again. On August 6, 2024, in response to this interrogatory, Snap again attempted to access the Iron Keys but was likewise unable to decrypt and access the dataset.

| | | |
|---|---|---|
| 1 | DATED: August 15, 2024 | MUNGER, TOLLES & OLSON LLP |
| 2 | | |
| 3 | | By:  _____ |
| 4 | | VICTORIA A. DEGTYAREVA |
| | | *Attorney for Snap Inc.* |

## VERIFICATION

I, Greg Egbuogu, am a Systems Administration Manager in the Information Technology department at Snap Inc. I am authorized to make this Verification for and on behalf of Snap Inc. I have read SNAP INC.'S RESPONSES AND OBJECTIONS TO MDL PERSONAL INJURY AND LOCAL GOVERNMENT PLAINTIFFS' FIRST SET OF INTERROGATORIES, and know the contents thereof. No single representative of Snap Inc. has personal knowledge of all of the factual matter stated in these Responses and Objections. These Responses and Objections were prepared after reasonable investigation with the assistance of counsel. To the extent that I do not have personal knowledge of the factual matter stated herein, I am informed and believe that information was provided by other authorized representatives of Snap Inc.

Subject to the foregoing, I declare under penalty of perjury under the laws of the United States that the information set forth in these Responses and Objections is true and correct to the best of my knowledge and belief.

Executed on August 14, 2024 in Santa Monica, California.

_____
Greg Egbuogu
*Manager, Systems Administration*
*Snap Inc.*