# EXHIBIT D

JONATHAN H. BLAVIN, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: Jonathan.Blavin@mto.com

ROSE L. EHLER, SBN 296523
VICTORIA A. DEGTYAREVA, SBN 284199
ARIEL T. TESHUVA, SBN 324238
FAYE PAUL TELLER, SBN 343506
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: Rose.Ehler@mto.com
Email: Victoria.Degtyareva@mto.com
Email: Ariel.Teshuva@mto.com
Email: Faye.Teller@mto.com

LAUREN A. BELL (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: Lauren.Bell@mto.com

*Attorneys for Snap Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION, | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>ALL ACTIONS | **SNAP INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES** |

PROPOUNDING PARTY:    MDL Personal Injury and Local Government Plaintiffs

RESPONDING PARTY:    Snap Inc.

SET NO.:        2

DATE OF SERVICE:            October 1, 2024

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Snap Inc. ("Snap") hereby objects and responds to Plaintiffs' Interrogatories, Set 2 ("Interrogatories"), as follows:

## OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS, RULES OF CONSTRUCTION, AND DEFINITIONS

The following objections apply to and are incorporated by reference into each and every response to the separately numbered Interrogatories as if set forth in full therein. From time to time a specific response may repeat one of these objections for emphasis or for some other reason. The failure to repeat any of these objections in any specific response shall not be interpreted as a waiver of any objection to that response.

1.      Snap's responses, regardless of whether they include a specific objection, do not constitute an adoption or acceptance of the definitions and instructions that Plaintiffs seek to impose.

2.      Snap objects to and has not considered Plaintiffs' "instructions" or "definitions" to the extent they purport to impose obligations on Snap inconsistent with or in addition to those required by the Federal Rules of Civil Procedure, the local rules of the Northern District of California, or any other applicable rules or law.

3.      Snap's responses reflect the current state of Snap's knowledge and information gained through its reasonable investigation in this action regarding the information Plaintiffs have requested. Snap's investigation and discovery in this action are ongoing, and Snap is continuing to evaluate what information may exist, how far back it is kept, and what burden may be associated with answering these Interrogatories and producing information (if it even exists). Snap may learn of additional information pertaining to the Interrogatories. Snap reserves the right to revise or supplement its responses to the Interrogatories without assuming any additional obligation to do so.

4.      A response to an Interrogatory shall not be deemed a waiver of any applicable objection, including privilege, immunity, or protection, or an admission of relevancy. Snap

responds on the condition that the inadvertent production and/or disclosure of privileged or

otherwise protected information does not waive any of Snap's rights to protect such information,

all of which are expressly reserved, and that Snap may withdraw any such information

inadvertently produced and/or disclosed as soon as identified. *See* ECF No. 248. By producing,

agreeing to produce, or identifying documents or information in response to any Interrogatory,

Snap does not concede that any aspect of Plaintiffs' claims related to those topics are permissible

under Section 230, the First Amendment to the United States Constitution and corresponding

provisions of applicable State constitutions, or are otherwise relevant to this litigation.

5.    Snap objects to the definition of the terms "Child or Children" because it rests on

inaccurate assumptions; Snap does not allow users who it knows to be under the age of thirteen

(13) to use its platform.

6.    Snap objects to the definition of the term "Daily App Session Count" to the extent

it purports to require Snap to produce or aggregate data in formats that do not already exist or are

not already maintained in the ordinary course of business.

7.    Snap objects to the definition of the term "Identity," and definition of the term

"Identify" incorporating it by reference, as overly broad, unduly burdensome, and not relevant or

proportional to the needs of the case to the extent it calls for the addresses of persons, all

titles/positions and dates each person has held, each of their present and past positions in Snap's

structure, the Identities of all persons to whom they report or have reported directly or indirectly,

Identities of all persons who report or reported to them directly and indirectly, their present and

past functions, duties, activities and responsibilities, their present place of employment, and the

location where they worked; and with respect to numbers, the source(s) of numbers provided.

For purposes of responding to these Interrogatories, Snap will define "Identity" to

mean, with respect to natural Persons: their full name, the title/position they held while in the

position at Snap pertinent to the corresponding Interrogatory, and the dates they held that position;

with respect to non-natural Persons, organizational persons, or Units: their full name and their

Snap lead; and with respect to a number, the number as known to Snap with the degree of

1  precision available to Snap as it is kept in the ordinary course of business and obtainable pursuant

2  to a reasonable search.

3         8.     Snap objects to the definition of the term "Inferred Age" as vague and ambiguous

4  to the extent it seeks the age Snap "believes a user to be." Snap objects to the definition of the

5  term "Inferred Age" to the extent it purports to require Snap to produce or aggregate data in

6  formats that do not already exist or are not already maintained in the ordinary course of business.

7  Snap specifically objects to providing data on users by specific Inferred Age, because in the

8  ordinary course of business, Snap only assigns an inferred age range to users rather than an

9  inferred specific age.

10         9.     Snap objects to the definition of the term "Lifetime value" as vague and ambiguous

11  to the extent the first definition of "the net profit You estimate will be attributable to a given

12  Snapchat user over the duration of their use of Snapchat" is inconsistent with the second definition

13  of "and/or the definition given to the term by Snap, as reflected in Snap's document production.

14  *See, e.g.*, SNAP0774624 at -4635." Snap further objects to the definition of the term "Lifetime

15  value" to the extent it purports to require Snap to produce or aggregate data in formats that do not

16  already exist or are not already maintained in the ordinary course of business.

17        10.    Snap objects to the definition of the term "Named Features" as vague and

18  ambiguous because the cited paragraphs (¶¶ 845 and 864 of the Second Amended Master

19  Complaint (MDL), ECF No. 494, and/or ¶¶ 838, 861, and 930 of the Master Complaint (JCCP))

20  do not contain lists of Snapchat features, but rather alternative designs Plaintiffs claim Defendants

21  failed to implement on their platforms. Snap objects to the definition of the term "Named

22  Features" as seeking information that is not relevant to the claim or defense of any party and not

23  proportional to the needs of the case to the extent the information sought pertains to platform

24  features that the Court may conclude or has already concluded cannot support a viable cause of

25  action in this matter, because such allegations directly target Snap's role as a publisher of third-

26  party content. Specifically, Snap objects to the extent the term defines features for which

27  allegations are barred by Section 230 or the First Amendment, including allegations held barred by

28  this Court's decision on the Motion to Dismiss in its November 14, 2023 Order (ECF No. 430,

"Motion to Dismiss Order") at 16–19, 22, and allegations implicated by any pending motions. Snap reserves all rights with respect to the Section 230 and First Amendment issues implicated by the Court's Motion to Dismiss Order, Magistrate Judge Kang's guidance, and the scope of discovery.

11.    Snap objects to the definition of the term "Null Age" to the extent it purports to require Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to the definition of the term "Null Age" to the extent it is inconsistent with the term's use in the document with Bates number SNAP0542582, as that document refers to "Null Inferred Age."

12.    Snap objects to the definition of the terms "Person or Persons" as overly broad, unduly burdensome, and not proportional to the needs of this case. For purposes of responding to the Interrogatories, Snap construes the terms "Person or Persons" to mean "natural person."

13.    Snap objects to the definition of the terms "Policy or Policies" as overly broad, unduly burdensome, and not proportional to the needs of this case.

14.    Snap objects to Plaintiffs' definition of the term "Reported Age" as "the age a user identifies … during the account creation process" because users 18 or over may change the date of birth information associated with their account using user settings. For the purposes of responding to the following Interrogatories, "Reported Age" means the age deducible from the most recent date of birth provided by the user at the time the user data is accessed.

15.    Snap objects to the definition of the term "Safety" to the extent the term defines third-party harms for which allegations are barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order at 16–19, 22, and allegations implicated by pending motions. Because claims based on third-party harm are precluded as a matter of law, discovery into third-party actions on Defendants' platforms (e.g., grooming, sextortion, bullying and CSAM) is unwarranted. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). Snap further objects to the definition of the term "Safety" as vague, ambiguous, and overbroad in its use of the undefined terms "wellbeing," "safety," "physical or mental health," and "protection from risks." Snap reserves all rights with

1  respect to the Section 230 and First Amendment issues implicated by the Court's Motion to

2  Dismiss Order, Magistrate Judge Kang's guidance, and the scope of discovery.

3        16.     Snap objects to the definition of "Safety Feature" as vague, ambiguous, overbroad

4  and unduly burdensome in that it seeks information on "any protection, tool, intervention, or

5  feature Snap has implemented" and is not limited as to time. Snap objects to the definition of the

6  term "Safety Feature" as vague and ambiguous in that it seeks information about features "directed

7  at" the Safety of Youth. Snap further objects to the definition of the term "Safety" that Plaintiffs

8  incorporate by reference to the extent the term defines third-party harms for which allegations are

9  barred by Section 230 or the First Amendment, including allegations held barred by this Court's

10 Motion to Dismiss Order at 16–19, 22, and allegations implicated by pending motions. Because

11 claims based on third-party harm are precluded as a matter of law, discovery into third-party

12 actions on Defendants' platforms (e.g., grooming, sextortion, bullying and CSAM) is unwarranted.

13 *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). Snap

14 further objects to the definition of the term "Safety" as vague, ambiguous, and overbroad in its use

15 of the undefined terms "wellbeing," "safety," "physical or mental health," and "protection from

16 risks." Snap further objects to the definition of the term "Youth" that Plaintiffs incorporate by

17 reference to include users aged eighteen (18) and over as overly broad in that it seeks information

18 that is not relevant to the claims or defenses of any party. This litigation concerns social media use

19 by adolescents and minors under eighteen (18) years of age. For purposes of responding to the

20 Interrogatories, Snap construes "Youth" to mean users under the age of eighteen (18). For

21 purposes of responding to the Interrogatories, Snap also construes "minors" as users under the age

22 of eighteen (18).

23       17.     Snap objects to the definition of the term "Selected Financial Data" to the extent

24 the information sought is already in the possession of Plaintiffs. The term is defined as information

25 contained in Snap's Form 10-K filings, which Snap has already produced to Plaintiffs.

26       18.     Snap objects to the definition of the term "Session" as vague and ambiguous to the

27 extent it is defined to include "each time a user …does something." Snap also objects to the

28 definition of the term "Session" to the extent it purports to require Snap to produce or aggregate

data in formats that do not already exist or are not already maintained in the ordinary course of business.

19.    Snap objects to Plaintiffs' definition of the terms "You," "Your," "Defendant," and "Defendants" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Snap further objects to the definition to the extent it seeks information not currently in the possession, custody, or control of Snap. Snap will respond solely on behalf of itself (Snap Inc.) and not any other subsidiaries or affiliates, or any other person or entity. Snap further objects to the definition on the grounds that it includes Snap's attorneys and requires Snap to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Interrogatories, "You," "Your," "Defendant," and "Defendants" will be defined as Snap Inc. and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

Snap confirms that no Snap subsidiary or affiliate is involved with the Snapchat application. Accordingly, Snap will not search for or produce, and thus will withhold, information relating to Snap subsidiaries or affiliates.

20.    Snap objects to the definition of the term "Time Between App Sessions" as vague and ambiguous and resting on inaccurate assumptions, to the extent it seems to suggest that the amount of time between each Session in a day is consistent for any given Session or user. Snap also objects to the definition of the term "Time Between App Sessions" to the extent it purports to require Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business.

21.    Snap objects to the definition of the term "Time Spent per App Session" as vague and ambiguous and resting on inaccurate assumptions, to the extent it seems to suggest that the time a user spends on Snapchat in a session is consistent across users. Snap objects to the definition of the term "Time Spent per App Session" to the extent it purports to require Snap to

1  produce or aggregate data in formats that do not already exist or are not already maintained in the

2  ordinary course of business.

3       22.    Snap objects to the definition of the term "Unidentified Age" to the extent it

4  purports to require Snap to produce or aggregate data in formats that do not already exist or are not

5  already maintained in the ordinary course of business.

6       23.    Snap objects to the definition of the terms "Snapchat Platform" and "Your

7  Platform" because they are directed to the Snapchat platform as a whole, rather than the specific

8  features that the Court has concluded can provide the basis for a viable cause of action in this

9  matter, and to the extent the information sought is not reasonably accessible to Snap upon

10 reasonable diligence. Snap further objects that the term "Snapchat Platform" is vague, ambiguous,

11 and overbroad in its use of the undefined terms "developed, tested, or made available for use," and

12 "all features or surfaces accessible to some or all users of the platform."

13      24.    Snap objects to the definition of the term "Youth" to include users aged eighteen

14 (18) and over as overly broad in that it seeks information that is not relevant to the claims or

15 defenses of any party. This litigation concerns social media use by adolescents and minors under

16 eighteen (18) years of age. For purposes of responding to the Interrogatories, Snap construes

17 "Youth" to mean users under the age of eighteen (18). For purposes of responding to the

18 Interrogatories, Snap also construes "minors" as users under the age of eighteen (18).

19      25.    Snap objects to the definition of the Relevant Time Period for the information

20 sought as overly broad and unduly burdensome. The Court has ordered that the Relevant Time

21 Period for Snap, to the extent Plaintiffs seek information from Snap unrelated to specific Named

22 Features in these cases, begins January 1, 2015, and the parties have agreed to April 1, 2024 as an

23 end date. *See* June 20, 2024 Order Resolving Discovery Dispute Letter Briefs, at 10 (ECF No.

24 953). To the extent these Interrogatories are unrelated to specific Named Features in these cases,

25 Plaintiffs' designation of a different time period violates that Order and the parties' agreement. For

26 purposes of responding to these Interrogatories, Snap will respond in accordance with the Court's

27 June 20, 2024 order and the parties' agreement: with respect to Interrogatories concerning one or

28 more of the Named Features, Snap construes the term "Relevant Time Period" to run from January

1 of the year the Named Feature was released on Snapchat to April 1, 2024. With respect to

Interrogatories that do not concern any of the Named Features, Snap construes the term "Relevant

Time Period" to be from January 1, 2015 to April 1, 2024.

**OBJECTIONS AND RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify Your estimate of a Snapchat user's Lifetime Value to You. To the extent this

estimate varies based on user characteristics, including but not limited to Reported Age of first use,

Inferred Age of first use, or other demographic criteria, identify each such estimate.

**RESPONSE TO INTERROGATORY NO. 1:**

Snap objects to the definition of the term "Lifetime value" as vague and ambiguous to the

extent the first definition of "the net profit You estimate will be attributable to a given Snapchat

user over the duration of their use of Snapchat" is inconsistent with the second definition of

"and/or the definition given to the term by Snap, as reflected in Snap's document production. *See,*

*e.g.*, SNAP0774624 at -4635." Snap incorporates by reference its objections to the definitions of

the terms "Reported Age" and "Inferred Age," in particular to the extent they purport to require

Snap to produce or aggregate data in formats that do not already exist or are not already

maintained in the ordinary course of business. Snap objects to the phrase "other demographic

criteria" as vague and ambiguous. Snap objects that this Interrogatory is overly broad, unduly

burdensome, and impermissibly compound in that it seeks information regarding at least three

separate categories of users (or more depending on the meaning of demographic criteria), each of

which purports to require a separate set of responses. *See Trevino v. ACB American, Inc.*, 232

F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co.*

*of Hartford*, No. 4:19-CV-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020)

(interrogatories are "compound" when "each subpart . . . can be fully answered without addressing

the other subparts"). Snap therefore counts this Interrogatory as at least three separate

Interrogatories. Snap objects to this Interrogatory to the extent it requires Snap to produce or

aggregate data in formats that do not already exist or are not already maintained in the ordinary

course of business. Snap objects to this Interrogatory to the extent it seeks detailed technical

information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or protection and will withhold as appropriate such information to the extent it exists. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap objects to this Interrogatory as unduly burdensome and not proportional to the needs of the case because the Interrogatory is not limited as to time.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden; and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as a separate Interrogatory against Plaintiffs' total allotment of Interrogatories for each demographic criteria included, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

**INTERROGATORY NO. 2:**

For each year in the Relevant Time Period, identify the number of domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

**RESPONSE TO INTERROGATORY NO. 2:**

Snap incorporates by reference its objections to the definitions of the terms "Reported Age," "Null Age," "Unknown Age," and "Inferred Age," in particular to the extent they purport to

require Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects that this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it seeks information regarding three separate categories of users for each of the ten years of the Relevant Time Period, each of which purports to require a separate set of responses. An interrogatory seeking information from a range of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 30 separate Interrogatories. Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow people who it knows to be under the age of thirteen (13) to use its platform and therefore does not have data on such users. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly

1   burdensome to the extent it seeks information beyond the Relevant Time Period established by the

2   Court and between the parties.

3          Subject to and without waiving these objections, Snap is willing to meet and confer with

4   Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be

5   reached under which Snap provides certain information responsive to this Interrogatory and

6   proportional to the needs of this case, in a manner that does not subject Snap to an undue burden;

7   and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding

8   that this Interrogatory will count as 30 Interrogatories against Plaintiffs' total allotment of

9   Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows

10  the categories of requested information. Snap will not respond to any Interrogatories that exceed

11  the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

12  **INTERROGATORY NO. 3:**

13         For each year in the Relevant Time Period, identify by decile the Time Spent Per App

14  Session for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and

15  100, and each Inferred Age between 0 and 100.

16  **RESPONSE TO INTERROGATORY NO. 3:**

17         Snap incorporates by reference its objections to the definitions of the terms "Time Spent

18  Per App Session," "Reported Age," "Null Age," "Unknown Age," and "Inferred Age," in

19  particular to the extent they purport to require Snap to produce or aggregate data in formats that do

20  not already exist or are not already maintained in the ordinary course of business. Snap objects to

21  the term "decile" as vague and ambiguous. Snap objects that this Interrogatory is overly broad,

22  unduly burdensome, and impermissibly compound in that it seeks information regarding three

23  separate categories of users for each of the ten years of the Relevant Time Period, each of which

24  purports to require a separate set of responses. An interrogatory seeking information from a range

25  of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-

26  0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in

27  a five-year range is "separate and distinct" and treating the interrogatory as "five separate

28  interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006);

*American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 30 separate Interrogatories. Moreover, this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because by serving 30 Interrogatories here, Plaintiffs will have exceeded the limit of 45 Interrogatories set by Judge Kang once Snap has provided this information for only one category of information for six years of the Relevant Time Period. Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow people who it knows to be under the age of thirteen (13) to use its platform and therefore does not have data on such users. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond the Relevant Time Period established by the Court and between the parties.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden;

and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as 30 Interrogatories against Plaintiffs' total allotment of Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

**INTERROGATORY NO. 4:**

For each year in the Relevant Time Period, identify by decile the Daily App Session Count for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

**RESPONSE TO INTERROGATORY NO. 4:**

Snap incorporates by reference its objections to the definitions of the terms "Daily App Session Count," "Reported Age," "Null Age," "Unknown Age," and "Inferred Age," in particular to the extent they purport to require Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to the term "decile" as vague and ambiguous. Snap objects that this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it seeks information regarding three separate categories of users for each of the ten years of the Relevant Time Period, each of which purports to require a separate set of responses. An interrogatory seeking information from a range of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 30 separate Interrogatories. Snap objects that this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by Judge Kang. Snap objects to this

Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow people who it knows to be under the age of thirteen (13) to use its platform and therefore does not have data on such users. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond the Relevant Time Period established by the Court and between the parties.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden; and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as 30 Interrogatories against Plaintiffs' total allotment of Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

**INTERROGATORY NO. 5:**

For each year in the Relevant Time Period, identify by decile the typical Time Between App Sessions for domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each Inferred Age between 0 and 100.

**RESPONSE TO INTERROGATORY NO. 5:**

Snap incorporates by reference its objections to the definitions of the terms "Time Between App Sessions," "Reported Age," "Null Age," "Unknown Age," and "Inferred Age," in particular to the extent they purport to require Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to the term "decile" as vague and ambiguous. Snap objects that this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it seeks information regarding three separate categories of users for each of the ten years of the Relevant Time Period, each of which purports to require a separate set of responses. An interrogatory seeking information from a range of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 30 separate Interrogatories. Snap objects that this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by Judge Kang. Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the

1  production and/or aggregation of which would be highly burdensome in ways that are

2  disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent

3  that it calls for the production of proprietary, confidential, or trade secret information. Snap

4  objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not

5  relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or

6  over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it

7  seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow

8  people who it knows to be under the age of thirteen (13) to use its platform and therefore does not

9  have data on such users. Snap incorporates by reference its objection to the Relevant Time Period

10  and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks

11  information beyond the Relevant Time Period established by the Court and between the parties.

12      Subject to and without waiving these objections, Snap is willing to meet and confer with

13  Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be

14  reached under which Snap provides certain information responsive to this Interrogatory and

15  proportional to the needs of this case, in a manner that does not subject Snap to an undue burden;

16  and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding

17  that this Interrogatory will count as 30 Interrogatories against Plaintiffs' total allotment of

18  Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows

19  the categories of requested information. Snap will not respond to any Interrogatories that exceed

20  the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

21  **INTERROGATORY NO. 6:**

22      For each year in the Relevant Time Period, identify the average revenue per user for

23  domestic Snapchat users of Null or Unknown Age, each Reported Age between 0 and 100, and each

24  Inferred Age between 0 and 100.

25  **RESPONSE TO INTERROGATORY NO. 6:**

26      Snap incorporates by reference its objections to the definitions of the terms "Reported

27  Age," "Null Age," "Unknown Age," and "Inferred Age," in particular to the extent they purport to

28  require Snap to produce or aggregate data in formats that do not already exist or are not already

maintained in the ordinary course of business. Snap objects that this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it seeks information regarding three separate categories of users for each of the ten years of the Relevant Time Period, each of which purports to require a separate set of responses. An interrogatory seeking information from a range of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 30 separate Interrogatories. Snap objects that this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by Judge Kang. Snap objects to the term "average revenue per user" as vague and ambiguous. Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow people who it knows to be under the age of thirteen (13) to use its platform and therefore does not have data on such

1  users. Snap incorporates by reference its objection to the Relevant Time Period and objects to this

2  Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond

3  the Relevant Time Period established by the Court and between the parties.

4    Subject to and without waiving these objections, Snap is willing to meet and confer with

5  Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be

6  reached under which Snap provides certain information responsive to this Interrogatory and

7  proportional to the needs of this case, in a manner that does not subject Snap to an undue burden;

8  and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding

9  that this Interrogatory will count as 30 Interrogatories against Plaintiffs' total allotment of

10  Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows

11  the categories of requested information. Snap will not respond to any Interrogatories that exceed

12  the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

13  **INTERROGATORY NO. 7:**

14    For each year in the Relevant Time Period, identify the Selected Financial Data for Snap.

15  **RESPONSE TO INTERROGATORY NO. 7:**

16    Snap incorporates by reference its objection to the definition of the term "Selected

17  Financial Data." "Selected Financial Data" is defined as information contained in Snap's Form 10-

18  K filings, which Snap has already produced to Plaintiffs from the Relevant Time Period. Snap thus

19  objects to this Interrogatory to the extent the information sought is already in the possession of

20  Plaintiffs, and is otherwise equally accessible through publicly-available sources. Snap objects that

21  this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it

22  seeks information as to each of the ten years of the Relevant Time Period. An interrogatory

23  seeking information from a range of years counts as a separate interrogatory for each year.

24  *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal.

25  May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the

26  interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232

27  F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co.*

28  *of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020)

1  ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore

2  counts this Interrogatory as ten separate Interrogatories. Snap objects that this Interrogatory is in

3  violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations

4  (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by

5  Judge Kang. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the

6  case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning

7  users aged 18 or over. Snap incorporates by reference its objection to the Relevant Time Period

8  and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks

9  information beyond the Relevant Time Period established by the Court and between the parties.

10      Subject to and without waiving these objections, Snap responds that the data Plaintiffs seek

11  can be found in its annual Form 10-K filings with the SEC, which are publicly available and

12  which Snap produced in Production Volume SNAP009 on April 24, 2024 with the following Bates

13  stamps: SNAP0003628; SNAP0003762; SNAP0003912; SNAP0004052; SNAP0004209;

14  SNAP0004358; SNAP0004527.

15  **INTERROGATORY NO. 8:**

16      Describe the development and implementation of each Safety Feature from the creation

17  of Snapchat through the date of service of this interrogatory. For purposes of this interrogatory,

18  "describe" means to identify the following for each Safety Feature: (i) the date on which the

19  feature was first made available on Snapchat; (ii) the Person(s) with primary responsibility for the

20  feature during each year of the Relevant Time Period; (iii) a general description of the feature's

21  intended purpose; (iv) all names by which the feature has been known internally and/or promoted

22  externally; (v) the population of users or non-users (e.g. parents without Snapchat accounts) to

23  whom You made the feature available; (vi) whether the feature is applied by default or must be

24  opted into by a user; (vii) whether and how You notify users about or encourage users to adopt the

25  feature, either during account creation or at any other time; and (viii) whether the feature is still

26  available to users on the Snapchat Platform.

27

28

**RESPONSE TO INTERROGATORY NO. 8:**

Snap objects to the definition of "Safety Feature" as vague, ambiguous, overbroad and unduly burdensome in that it seeks information on "any protection, tool, intervention, or feature Snap has implemented" and is not limited as to time. Snap objects to the definition of the term "Safety Feature" as vague and ambiguous in that it seeks information about features "directed at" the Safety of Youth. Snap further objects to the definition of the term "Safety" that Plaintiffs incorporate by reference to the extent the term defines third-party harms for which allegations are barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order at 16–19, 22, and allegations implicated by pending motions. Because claims based on third-party harm are precluded as a matter of law, discovery into third-party actions on Defendants' platforms (e.g., grooming, sextortion, bullying and CSAM) is unwarranted. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). Snap further objects to the definition of the term "Safety" as vague, ambiguous, and overbroad in its use of the undefined terms "wellbeing," "safety," "physical or mental health," and "protection from risks." Snap further objects to the definition of the term "Youth" that Plaintiffs incorporate by reference to include users aged eighteen (18) and over as overly broad in that it seeks information that is not relevant to the claims or defenses of any party. Snap further objects that this Interrogatory is overly broad, unduly burdensome and impermissibly compound in that it seeks eight categories of information for every Safety Feature on Snapchat, each of which purports to require a separate response. *See Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020). Snap therefore counts this Interrogatory as eight separate Interrogatories for each Safety Feature, and Snapchat has many more than one Safety Feature. Snap objects that this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by Judge Kang. Snap objects to the term "Person(s) with primary responsibility for the feature" as vague and ambiguous, and will construe the Interrogatory to seek "person(s) with responsibility for the feature." Snap objects to

the terms "development," "implementation," "made available" and "intended purpose" as vague and ambiguous. Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory to the extent it seeks information in support of allegations barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order and allegations implicated by pending motions. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or protection and will withhold or redact as appropriate such information to the extent it exists. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond the Relevant Time Period established by the Court and between the parties.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden; and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as eight Interrogatories per Safety Feature against Plaintiffs' total allotment of Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

**INTERROGATORY NO. 9:**

For each year during the Relevant Time Period, identify the percentage rate of adoption for each Safety Feature by domestic users of Null or Unknown Age, each Reported Age between 0

1    and 100, and each Inferred Age between 0 and 100. To the extent a Safety Feature is made

2    available only to non-users (i.e. parents or guardians) identify the percentage rate of adoption as kept

3    by You in the ordinary course of business.

4    **RESPONSE TO INTERROGATORY NO. 9:**

5           Snap objects to the definition of "Safety Feature" as vague, ambiguous, overbroad and

6    unduly burdensome in that it seeks information on "any protection, tool, intervention, or feature

7    Snap has implemented" and is not limited as to time. Snap objects to the definition of the term

8    "Safety Feature" as vague and ambiguous in that it seeks information about features "directed at"

9    the Safety of Youth. Snap further objects to the definition of the term "Safety" that Plaintiffs

10   incorporate by reference to the extent the term defines third-party harms for which allegations are

11   barred by Section 230 or the First Amendment, including allegations held barred by this Court's

12   Motion to Dismiss Order at 16–19, 22, and allegations implicated by pending motions. Because

13   claims based on third-party harm are precluded as a matter of law, discovery into third-party

14   actions on Defendants' platforms (e.g., grooming, sextortion, bullying and CSAM) is unwarranted.

15   *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense"). Snap

16   further objects to the definition of the term "Safety" as vague, ambiguous, and overbroad in its use

17   of the undefined terms "wellbeing," "safety," "physical or mental health," and "protection from

18   risks." Snap further objects to the definition of the term "Youth" that Plaintiffs incorporate by

19   reference to include users aged eighteen (18) and over as overly broad in that it seeks information

20   that is not relevant to the claims or defenses of any party. Snap incorporates by reference its

21   objections to the definitions of the terms "Reported Age," "Null Age," "Unknown Age," and

22   "Inferred Age," in particular to the extent they purport to require Snap to produce or aggregate

23   data in formats that do not already exist or are not already maintained in the ordinary course of

24   business. Snap objects that this Interrogatory is overly broad, unduly burdensome, and

25   impermissibly compound in that for each Safety Feature, it seeks information regarding four

26   separate categories of users from each of the ten years of the Relevant Time Period, each of which

27   purports to require a separate set of responses. An interrogatory seeking information from a range

28   of years counts as a separate interrogatory for each year. *Waterbury v. Scribner*, No. 1:05-CV-

0764 OWW DLB PC, 2008 WL 2018432, at *3 (E.D. Cal. May 8, 2008) (finding that each year in a five-year range is "separate and distinct" and treating the interrogatory as "five separate interrogatories"). *See also Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006); *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020) ("each subpart . . . can be fully answered without addressing the other subparts"). Snap therefore counts this Interrogatory as 40 separate Interrogatories for each Safety Feature, and Snapchat has many more than one Safety Feature. Moreover, Snap objects that this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of 45 Interrogatories set by Judge Kang. Snap objects to this Interrogatory as vague and ambiguous to the extent it relies on the phrase "percentage rate of adoption." Snap objects to this Interrogatory to the extent it requires Snap to produce or aggregate data in formats that do not already exist or are not already maintained in the ordinary course of business. Snap objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it calls for obtaining data out of cold storage. Snap objects to this Interrogatory to the extent it seeks detailed technical information or raw data that is irrelevant to this case, and the production and/or aggregation of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Snap objects to this Interrogatory to the extent it seeks information in support of allegations barred by Section 230 or the First Amendment, including allegations held barred by this Court's Motion to Dismiss Order and allegations implicated by pending motions. Snap objects to this Interrogatory to the extent that it calls for the production of proprietary, confidential, or trade secret information. Snap objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or protection and will withhold or redact as appropriate such information to the extent it exists. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap further objects to this Interrogatory as resting on inaccurate assumptions to the extent it

seeks information about Snapchat users under the age of thirteen (13), as Snap does not allow people who it knows to be under the age of thirteen (13) to use its platform and therefore does not have data on such users. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond the Relevant Time Period established by the Court and between the parties.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden; and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as 40 Interrogatories per Safety Feature against Plaintiffs' total allotment of Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

**INTERROGATORY NO. 10:**

For each Named Feature, identify the following: (i) the date on which the Feature was first implemented on Your Platform; (ii) the Person(s) with primary responsibility for the feature during each year of the Relevant Time Period; and (iii) major modifications to each Named Feature and when each such modification was implemented on Your Platform. For purposes of this Interrogatory, "major modification" means any change that materially improves and/or alters the source code, capacity, functionality, and/or the method of operation.

**RESPONSE TO INTERROGATORY NO. 10:**

Snap objects to the definition of the term "Named Features" as vague and ambiguous because the cited paragraphs - ¶¶ 845 and 864 of the Second Amended Master Complaint (MDL), ECF No. 494, and/or ¶¶ 838, 861, and 930 of the Master Complaint (JCCP) - do not contain lists of Snapchat features, but rather alternative designs Plaintiffs claim Defendants failed to implement on their platforms. Snap objects to the definition of the term "Named Features" as seeking information that is not relevant to the claim or defense of any party and not proportional to the

1  needs of the case to the extent the information sought pertains to platform features that the Court

2  may conclude or has already concluded cannot support a viable cause of action in this matter,

3  because such allegations directly target Snap's role as a publisher of third-party content.

4  Specifically, Snap objects to the extent the term defines features for which allegations are barred

5  by Section 230 or the First Amendment, including allegations held barred by this Court's Motion

6  to Dismiss Order at 16–19, 22, and allegations implicated by any pending motions. Snap objects

7  that this Interrogatory is overly broad, unduly burdensome, and impermissibly compound in that it

8  contains three distinct sub-parts for each Named Feature, each of which purports to require a

9  separate response. *See Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006);

10  *American Bankers Ins. Co. of Florida v. National Fire Ins. Co. of Hartford*, No. 4:19-cv-02237-

11  HSG (KAW), 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020). Snap therefore counts this

12  Interrogatory as at least three separate Interrogatories for each Named Feature. Snap objects that

13  this Interrogatory is in violation of Magistrate Judge Kang's March 7, 2024 Order Governing

14  Discovery Limitations (ECF No. 672 at 1), because Plaintiffs have already exceeded the limit of

15  45 Interrogatories set by Judge Kang. Snap objects to the definition of the term "major

16  modification" as vague, ambiguous, overly broad, and not relevant or proportional to the needs of

17  the case, in that it would appear to encompass changes made to the feature that had no effect on

18  user engagement or Safety. Snap objects to this Interrogatory as vague and ambiguous to the

19  extent it relies on the term "Person(s) with primary responsibility for the feature," and will

20  construe the Interrogatory to seek "person(s) with responsibility for the feature." Snap objects to

21  the term "implemented" as vague and ambiguous. Snap objects to this Interrogatory to the extent

22  requires Snap to produce or aggregate data in formats that do not already exist or are not already

23  maintained in the ordinary course of business. Snap objects to this Interrogatory to the extent it

24  seeks detailed technical information or raw data that is irrelevant to this case, and the production

25  and/or aggregation of which would be highly burdensome in ways that are disproportionate to the

26  legitimate needs of the case. Snap objects to this Interrogatory to the extent that it calls for the

27  production of proprietary, confidential, or trade secret information. Snap objects to this

28  Interrogatory to the extent it seeks information protected from disclosure by the attorney-client

privilege, work-product doctrine, and/or any other applicable privilege or protection and will withhold or redact as appropriate such information to the extent it exists. Snap objects to this Interrogatory as overbroad, not proportional to the needs of the case, and not relevant to any viable claim or defense to the extent it seeks discovery concerning users aged 18 or over. Snap incorporates by reference its objection to the Relevant Time Period and objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks information beyond the Relevant Time Period established by the Court and between the parties.

Subject to and without waiving these objections, Snap is willing to meet and confer with Plaintiffs regarding the scope of this Interrogatory to determine (1) whether an agreement can be reached under which Snap provides certain information responsive to this Interrogatory and proportional to the needs of this case, in a manner that does not subject Snap to an undue burden; and (2) whether Plaintiffs would like Snap to provide responsive information on the understanding that this Interrogatory will count as three Interrogatories per Named Feature against Plaintiffs' total allotment of Interrogatories, or whether Plaintiffs would like to serve an amended Interrogatory that narrows the categories of requested information. Snap will not respond to any Interrogatories that exceed the limit of 45 Interrogatories that Plaintiffs are permitted to serve.

DATED:  November 21, 2024                    MUNGER, TOLLES & OLSON LLP


                                             By:  _____
                                                     /s/ *Victoria A. Degtyareva*
                                                   VICTORIA A. DEGTYAREVA
                                                   *Attorney for Snap Inc.*