UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos.:   4:22-md-03047-YGR (PHK)<br>              4:23-cv-05448-YGR<br><br>**JOINT LETTER BRIEF ON STATE AGENCIES' PRODUCTION OF DOCUMENTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

      Pursuant to DMO 12, ECF No. 1380, Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and the State AGs respectfully submit this letter brief regarding disputes over discovery of documents of certain state agencies in Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Dakota, Washington, and Wisconsin.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.[1]

---

[1] Lead trial counsel for the California, Connecticut, Hawai'i, Indiana, Kentucky, Louisiana, Minnesota, Nebraska, North Carolina, and Washington AGs cannot certify that no agreement or negotiated resolution can be reached, as negotiations are ongoing and Meta has indicated that the parties are close to an agreement. Nevertheless, the AGs join in the letter briefing per the Court's schedule and to obtain guidance on current disputes. Meta notes that disagreements remain as to each of these States, that the court's conferral deadline has passed, that the letter briefing deadline is upon the parties, and that the States' substantial completion deadlines are upcoming, so negotiations must be brought to a close.

Dated: December 9, 2024

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/Ashley Simonsen*
Ashley Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

Dated: December 9, 2024

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Laura Dilweg*
Laura Dilweg (AZ No. 036066, CA No. 260663)
Chief Counsel - Consumer Protection and
Advocacy Section
Nathan Whelihan (AZ No. 037560, CA No.
293684), *pro hac vice*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:    (602) 542-4377
Laura.Dilweg@azag.gov
Nathan.Whelihan@azag.gov

*Attorneys for Plaintiff State of Arizona*


**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista F. Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309
Danny Rheiner, CO Reg. No. 48821
Assistant Attorney Generals
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*

Respectfully submitted,

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**ANDREW BAILEY**
Attorney General
State of Missouri

*/s/ Michael Schwalbert*
Michael Schwalbert, *pro hac vice*
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

Philip J. Weiser, *Attorney General*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Lauren H. Bidra*
Lauren H. Bidra
(CT Juris No. 440552), *pro hac vice*
Special Counsel for Media and Technology
 Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Marion Quirk*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8810
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*


*Attorney for Plaintiff State of Missouri, ex rel. Andrew Bailey, Attorney General*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Mark Snodgrass*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

4

**ANNE E. LOPEZ**
Attorney General
State of Hawaiʻi

*/s/ Christopher T. Han*
Bryan C. Yee (HI JD No. 4050),
*pro hac vice*
Supervising Deputy Attorney General
Christopher T. Han (HI JD No. 11311),
*pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawaiʻi 96813
Phone: (808) 586-1180
Bryan.c.yee@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawaiʻi*


**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Kevin Whelan*
Susan Ellis, Chief, Consumer Protection Division
(IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud
Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019)
Adam Sokol, Consumer Counsel, Consumer Fraud
Bureau (IL Bar No. 6216883)
Matthew Davies, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6299608), *pro hac vice*
Emily María Migliore, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6336392)
Kevin Whelan, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6321715), *pro hac vice*
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846),
*pro hac vice*
L. Christopher Styron (LA Bar No. 30747),
*pro hac vice*
Assistant Attorneys General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov
StyronC@ag.louisiana.gov

*Attorneys for State of Louisiana*


**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine, Maine Bar No. 5048,
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8829
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Adam.Sokol@ilag.gov
Matthew.Davies@ilag.gov
Emily.Migliore@ilag.gov
Kevin.Whelan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388)
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Colin P. Snider*
Colin P. Snider (NE #27724)
Assistant Attorney General
*pro hac vice*
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-3840
Email: michaela.hohwieler@nebraska.gov
Email: colin.snider@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**DANA NESSEL**
Attorney General
State of Michigan

/s/ *Daniel J. Ping*
Daniel J. Ping (P81482), *pro hac vice*
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
517-335-7632
PingD@michigan.gov

*Attorney for Plaintiff State of Michigan*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

/s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General

New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney
General and the New Jersey Division of Consumer
Affairs Matthew J. Platkin, Attorney General for the*

**LETITIA JAMES**
Attorney General
State of New York

/s/ *Christopher D'Angelo*
Christopher D'Angelo, Chief Deputy Attorney
General, Economic Justice Division
(NY Bar No. 4348744), *pro hac vice*
Christopher.D'Angelo@ag.ny.gov
Clark Russell, Deputy Chief, Bureau of
Internet and Technology
(NY Bar No. 2848323), *pro hac vice*
Clark.Russell@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
Nathaniel.Kosslyn@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262

*Attorneys for Plaintiff the People of the State
of New York*

*State of New Jersey, and Cari Fais, Director of the*
*New Jersey Division of Consumer Affairs*

**MICHELLE A. HENRY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Timothy R. Murphy
Senior Deputy Attorney General
(PA Bar No. 321294), *pro hac vice*
Email: tmurphy@attorneygeneral.gov
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of*
*Pennsylvania*

**ROBERT W. FERGUSON**
Attorney General
State of Washington

*/s/ Alexandra Kory*
Alexandra Kory (WA Bar No. 49889),
*pro hac vice*
Joseph Kanada (WA Bar No. 55055),
*pro hac vice*
Rabi Lahiri
Gardner Reed
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 389-3843
Alexandra.Kory@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**DAVE YOST**
Attorney General
State of Ohio

*/s/ Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
Kevin R. Walsh (Ohio Bar No. 0073999),
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney*
*General Dave Yost*

**JOSHUA H. STEIN**
Attorney General
State of North Carolina

/s/ Charles G. White
Charles G. White (N.C. State Bar No. 57735)
Special Deputy Attorney General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6889
cwhite@ncdoj.gov

*Attorney for Plaintiff, State North Carolina*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Jessica M. LaMie*
By: Jessica M. LaMie (SD Bar No. 4831),
*pro hac vice*
Assistant Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Jessica.LaMie@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Colin R. Stroud*
Colin R. Stroud
Assistant Attorney General
WI State Bar #1119457, *pro hac vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224
stroudcr@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

**Meta's Position:** After this Court largely compelled the state agency discovery that Meta has been seeking since at least February 2024, see ECF No. 1117, the States have continued to delay providing this Court-ordered discovery, violating several subsequent court orders in the process.

## I.    The States Have Violated Multiple Agency Discovery Court Orders and Directives.

Since September 6, the Court issued several directives on agency discovery, including that:

1. Agencies identified in the Court's September 6 order are "within the scope of party discovery." ECF No. 1117 at 2.

2. "Time is of the essence," and the parties must promptly confer after September 6 about a schedule "for the State agencies to substantially complete their respective productions of documents." *See* ECF Nos. 1117, 1292, 1299.

3. The Court's September 6 order "is not stayed" during the pendency of the States' objections to the order. *See* ECF No. 1292.

4. The parties should employ a process of negotiating search terms and custodians to complete agency discovery, with at least 14 "holdout" States opposing this process ordered to propose agency search terms and custodians by November 1. *See* ECF Nos. 1291, 1299.

5. States and their agencies should provide hit reports to Meta to facilitate search term negotiations. Hr'g. Tr. at 11:2-12 (Nov. 21, 2024) ("repeat[ing]" the "admonition" that "[w]hen you're doing negotiations over search terms, you should be voluntarily providing hit reports to each other"); *see also* ECF No. 1380 (requiring "the Parties to engage in prompt and transparent negotiations for purposes of identifying reasonable search terms and custodians and exchanging hit reports").

6. Discussions about search parameters should be "transparent" and in addition to search terms, include "the identification of custodians, the use of 'go get 'em' requests (where appropriate), and the diligent processing of documents for production." ECF No. 1299; *see also* ECF No. 1380.

7. The Parties must conclude negotiations by December 2, 2024. ECF No. 1380.

Meta has complied with this Court's directives. The States have not. To start, the States did not make themselves available to meet and confer about agency discovery until 11 days after this Court's September 6 order called for a "prompt" conferral. Some States then continued to take the position that their agencies fell outside of this Court's jurisdiction and were not bound by its orders—a position that this Court indicated threatens "the rule of law." 11/21/24 Hr'g. Tr. at 39:25-40:3. Thirteen of the 14 holdout States failed to propose search terms and custodians for all of their agencies by the November 1 court-ordered deadline. *See* ECF Nos. 1291, 1299. Others— including several holdout States—*still* declined to propose search terms and custodians to Meta for any agency that Meta subpoenaed—a position that this Court rejected at the last DMC. *See* Hr'g. Tr. at 107:23-108:2 (Nov. 21, 2024) (noting that "there needs to be equal effort made to getting those [agency] documents, you know, searched for and produced"). And still others

refused to provide hit reports to inform search term negotiations—a position that led to a Court "admonition" at the last DMC. *Id.* at 11:2-12.

While the States delay and violate court orders, Meta has made meaningful concessions to see if agreements with the States could be reached. Conservatively, Meta estimates that it has corresponded with individual States by phone or e-mail over 1,300 times since the Court's September 6 order. In these communications, Meta has (among other things): (a) agreed with at least 19 States to either remove certain agencies from the search term process based on conferrals, or rely principally on targeted "go-get" searches for responsive documents from certain agencies (60 agencies in total); (b) proactively proposed search terms to many States to move discussions forward, even though the States were obligated to make the first proposal, and then proactively narrowed those terms (before receiving proposals or counterproposals from the States); (c) conferred and continues to confer with State AGs and their agencies about ways to tailor searches or custodians to account for agency-specific concerns; and (d) agreed to negotiate search terms based off of incomplete hit reports, or hit reports that were run against the entire agency rather than specified custodians, to move negotiations forward without delay. Meta also continued negotiations with the States past the December 2 conferral deadline in an effort to further narrow disputes, with success as to specific states and agencies.

## II. The States' Delays Have Left Search Negotiations with 25 of 32 States Unresolved.

Meta has agreed to search terms and custodians with all agencies in South Carolina (including the Governor's office), Oregon, Montana, and Virginia, and has told the three States asserting only COPPA claims (Idaho, Maryland, and West Virginia) that they should focus on the COPPA-related discovery that Meta served on November 18, 2024. But despite Meta's best efforts, agency discovery disputes continue to exist with agencies in 25 of the 32 States remaining in this action. Agencies in these States fall into one of the following non-compliant categories:

<u>1. Agencies Refusing to Comply with this Court's Orders.</u>

Despite receiving at least seven emails from Meta's counsel since the last DMC, the New York Governor's office and Division of Budget remain unwilling to engage with Meta about agency discovery unless Meta separately subpoenas them, because they believe themselves outside of this Court's jurisdiction and not subject to its orders. Such direct defiance of a federal court's order violates the rule of law. This Court should refer agencies in the first category and/or their counsel to Judge Gonzalez Rogers for further proceedings, as it did with the California agencies that took the same position at the last DMC.

New York argues that Meta should issue new subpoenas to these two agencies. This Court already rejected a similar proposal from California, specifically noting that "at this point, in light of my order, subpoenas are not needed." *See* Hr'g. Tr. at 39:8–16 (Nov. 21, 2024). New York also invokes Michigan subpoenas that arose differently; for example, to secure those subpoenas, Michigan made assurances about future discovery compliance, which New York has not done.

New York's claim of court-orders compliance also is incorrect. One New York agency (Department of Education) has produced documents to Meta. Despite being directed to propose agency search terms and custodians to Meta by November 1 (ECF Nos. 1291, 1299), Meta received

such information for only one of nine agencies by that deadline. No other New York agency proposed custodians until the December 2 deadline to complete conferrals. That is not compliance.

<u>2. States with Agencies who Have Not Fully Complied with this Court's Orders.</u>

Other agencies have not stood on objections to this Court's jurisdiction but have nonetheless failed to comply with this Court's orders in the following ways.

*First*, agencies of Colorado, Connecticut, Illinois, Minnesota, Missouri, Nebraska, New Jersey, Pennsylvania, Rhode Island, and South Dakota[2] have not provided any of the following, even though they either agreed or were directed by the Court to provide such information: search terms, custodians, hit reports, or transparency about alternative search methods that they may be employing. For agencies in most of these states—Colorado, Illinois, Minnesota, Missouri, Pennsylvania, and Rhode Island—this is an express violation of at least two court orders (ECF Nos. 1291 and 1299), and for the others (Connecticut, Nebraska, New Jersey, and South Dakota) it reflects either an abandonment of, or failure to fulfill, an agreement they reached before the October DMC to avoid letter briefing and being subject to those orders.

These States were provided with at least Meta's narrowed and revised November 22 search term proposal in efforts to reach compromise, and Meta exchanged correspondence and sought to meet and confer with these States and agencies. But no substantive progress is being made. Pennsylvania has not provided custodians for any of its agencies. Two Nebraska agencies (Governor's office and Department of Economic Development) have not engaged in the search term and custodian negotiation process, and Nebraska disclosed for the first time on December 6 that the agencies would be collecting documents in the future through some unspecified search process. Other states (New Jersey, Minnesota, and Rhode Island) have maintained that some agencies have absolutely no responsive documents, without providing the transparency needed to support those claims, even after Meta pointed the States to public sources of clearly relevant material from those agencies that contradict their position. Missouri has provided no search terms, custodians, or hit reports, but has agreed to dismiss its case, subject to the parties memorializing their agreement in writing. And while certain of these States have raised concerns about burden, those concerns are unsubstantiated because the States have not provided hit reports.

---

[2] **CO:** Behavioral Health Admin., Dept. of Education, Governor's Office, Office of State Planning & Budgeting; **CT:** Dept. of Education; **IL:** Dept. of Public Health; **MN:** Dept. of Human Services, Governor's Office; **MO:** Dept. of Economic Development, Dept. of Elementary & Secondary Education, Dept. of Health & Senior Services, Dept. of Higher Education & Workforce Development, Dept. of Mental Health, Dept. of Social Services, Office of Administration, Office of the Child Advocate, Governor's Office; **NE:** Governor's Office, Dept. of Economic Development, Dept. of Health & Human Services; **NJ:** Dept. of Health, Dept. of the Treasury, Governor's Office; **PA:** Dept. of Communities & Economic Development, Dept. of Education, Dept. of Health, Dept. of Human Services, Governor's Office, Office of the Budget; **RI:** Dept. of Behavioral Healthcare, Developmental Disabilities & Hospitals, Executive Office of Health & Human Services; **SD:** Governor's Office of Economic Development.

As noted, these agencies' conduct violates this Court's orders on state agency discovery, including (for example) orders requiring disclosure of search terms and custodians by November 1 (for the 14 holdout States). *See* ECF Nos. 1291 and 1299. It also violates the Court's directive that discussion with Meta about search parameters be transparent, *see* ECF Nos. 1299 and 1380.

*Second*, agencies of Arizona, Colorado, Connecticut, Kansas, Minnesota, Nebraska, New York, Ohio, Rhode Island, South Dakota, Washington, and Wisconsin[3] were directed to or have agreed to provide search terms, custodians, and hit reports but have provided only partial information to Meta. In particular, some States (Colorado, Ohio and Washington) have provided search terms without custodians for at least some agencies. Others (Arizona, Connecticut, Nebraska, Ohio, South Dakota) have provided custodians but not search terms for certain agencies. And many of the agencies have not provided hit reports to support their claims that certain search terms are unreasonable. These States' incomplete compliance with this Court's orders has hindered the parties' ability to reach agreements about agency discovery. While Meta will continue to confer until the December 11 DMC, with the conferral deadline behind the parties, the letter briefing deadline upon the parties, and States' substantial completion deadlines upcoming, negotiations must be brought to a close.

*Remedy*: States that contain agencies that still have continued to provide Meta with incomplete search term, custodians, and hit report information (if any) should be subject to an order recommending that the States be taken off the current trial track, and their entire schedule adjourned, so that they can meaningfully engage and complete the agency document production process before their cases are allowed to proceed. Additionally, they should be required to accept the terms that Meta last proposed to the agencies, attached hereto as appendices, to be run on agency custodial documents (including email and other custodial data sources), and relevant non-custodial data sources, that cover the entire 12-year relevant time period (January 1, 2012 through April 1, 2024) that the States insisted that Meta apply to its document collection efforts. *See* DMO 7. To the extent any such agency has not proposed agency custodians that cover that time period and/or cover relevant topics, it should be directed to disclose such custodians to Meta within three business days. After being provided agency custodians for the entire time period and relevant topics, Meta should be permitted to select up to three additional custodians for each agency to be added to the custodians subject to search and collection efforts for production after review.

3. Agencies Unable to Complete Search Parameter Negotiations with Meta.

---

[3] **AZ:** Board of Education, Dept. of Health Services; **CO:** Colorado Dept. of Higher Education, Dept. of Human Services; **CT:** Dept. of Children & Families, Commission for Educational Technology; **KS:** Dept. of Children & Family Services, Dept. of Administration, Dept. of Commerce, Governor's Office; **MN:** Dept. of Education; **NE:** Dept. of Education, Children's Commission; **NY:** Dept. of Education, Office of Children & Family Services; **OH:** Dept. of Children & Youth, Dept. of Higher Education, Dept. of Job & Family Services, Office of Budget & Management; **RI:** Dept. of Health, Governor's Office; **SD:** Board of Regents, Bureau of Finance & Management, Dept. of Education, Dept. of Health, Dept. of Social Services, Governor's Office; **WA:** Dept. of Children, Youth, & Families, Dept. of Health, Health Care Authority, Board of Education, Board of Health, Dept. of Social & Health Services; **WI:** Dept. of Children & Families.

Agencies of Arizona, California, Connecticut, Delaware, Hawai'i, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Michigan, North Carolina, New Jersey, New York, Ohio, South Dakota, Washington, and Wisconsin[4] have provided search terms, custodians, and hit reports, but have not reached final agreements with Meta. Many of the remaining disputes concern burden and proportionality. But Meta has already made various concessions to reduce burden, including applying proximity limiters to searches that return higher numbers of hits, and removing certain terms that the States have deemed problematic for one reason or another. While Meta is willing to continue conferring until the December 11 DMC, with the conferral deadline behind the parties, the letter briefing deadline upon the parties, and States' substantial completion deadlines upcoming, negotiations must be brought to a close.

*Remedy:* The agencies with whom Meta has been unable to conclude negotiations should be required to accept the terms that Meta last proposed to the agencies, attached hereto as appendices, to be run on agency custodial documents (including email and other custodial data sources), and relevant non-custodial data sources, that cover the entire 12-year general relevant time period (January 1, 2012 through April 1, 2024) that the States insisted that Meta apply to its document collection efforts. *See* DMO 7. To the extent any such agency has failed to propose agency custodians that cover that time period and/or cover relevant topics, it should be directed to disclose such custodians to Meta within three business days. After being provided agency custodians for the entire time period and relevant topics, Meta should be permitted to select up to

---

[4] **AZ:** Dept. of Child Safety, Dept. of Education; **CA:** Dept. of Health Care Services, Health & Human Services Agency, Mental Health Services Oversight and Accountability Commission; **CT:** Office of the Governor; **DE:** Dept. of Services for Children, Youth & Families, Dept. of Education, Office of the Governor; **HI:** Dept. of Education, Dept. of Health, Dept. of Human Services, Budget & Finance, Dept. of Business, Economic Development, & Tourism, Development of Commerce & Consumer Affairs, State Council on Mental Health; **IL:** Board of Education, Dept. of Children & Family Services, Dept. of Human Services, Office of the Governor; **IN:** Dept. of Education, Dept. of Health, Dept. of Child Services, Family & Social Services Administration; **KS:** Board of Regents, Dept. for Aging & Disability Services, Dept. of Education, Dept. of Health & Environment; **KY:** Office of the Governor, Office of State Budget Director, Cabinet for Health & Family Services, Dept. for Behavioral Health, Developmental & Intellectual Disabilities, Dept. of Public Health; **LA:** Dept. of Children & Family Services, Dept. of Education, Dept. of Health, Dept. of Economic Development, Office of Planning & Budget, Office of the Governor; **ME:** Dept. of Education, Dept. of Health & Human Services, Division of Administrative & Financial Services, Governor's Office, Dept. of Education; **MI:** Dept. of Health & Human Services, Dept. of Lifelong Education, Advancement, & Potential, State Budget Office, Executive Office of the Governor; **NC:** Dept. of Health & Human Services, Dept. of Public Instruction, Governor's Office; **NJ:** Dept. of Children & Families, Dept. of Education, Dept. of Human Services; **NY:** Dept. of Health, Office of Mental Health; **OH:** Dept. of Education & Workforce, Dept. of Health, Dept. of Youth Services, Dept. of Mental Health & Addiction Services, Office of the Governor; **SD:** AG's office; **WA:** Dept. of Commerce, Office of Financial Management, Office of the Governor; **WI:** Dept. of Health Services, Dept. of Public Instruction, Office of Children's Mental Health, Governor's Office.

three additional custodians for each agency to be added to the list of custodians subject to search and collection efforts for production after review.

### III.    The States' Arguments Against Meta's Search Parameters Are Meritless.

The principal thrust of the States' brief is that Meta has been intransigent in negotiations and unwilling to compromise.  This claim, coming from parties who have repeatedly violated this Court's directives, is demonstrably false.  Meta has listened to States, proposed compromises and reached agreement with several States who have meaningfully engaged in negotiations and provided information necessary for Meta to evaluate their concerns regarding burden and proportionality—*i.e.*, in South Carolina, Oregon, Montana, North Carolina, and Virginia.  For these States, Meta has been able to reach either full agreement or agreement in principle on search terms.  Contrary to the States' arguments, those agreements have included deletion of terms, use of proximity limitations, and other modifications.  Unfortunately, the majority of States have not approached these negotiations with the same willingness to meaningfully engage in negotiations, reach compromises and provide information necessary to address concerns. Instead, these States are still refusing or delaying the provision of hit counts, and taking extremist and absolutist positions on terms and connectors, with some even telling Meta that they preferred forcing briefing rather than reaching a negotiated agreement.

The States' arguments against applying Meta's search parameters ignore the context of the parties' negotiations and are unpersuasive.  For example:

*1. Meta's November 22 Search Terms Are Not the End of the Story:*  Taking discussions out of context, the States complain about the breadth of the terms that Meta proposed on November 22.  But the States fail to mention that one day earlier this Court "admonish[ed]" them for failing to  provide Meta with any hit reports on any earlier Meta search term proposals.  Hr'g. Tr. at 11:2-12 (Nov. 21, 2024).  Meta should be credited—not faulted—for proactively attempting to narrow its proposed terms on November 22 to advance search term discussions even though it had to do this initial narrowing without hit reports.  And in ensuing discussions with States about Meta's narrowed terms, Meta has been willing to further narrow them, including (among other things) an openness to adjusting terms like "youth" and "child" if they hit on signature blocks of agencies.

The California agencies that the States reference are illustrative of Meta's iterative approach.  California's hit counts did not reflect de-duplication or unique hit counts, but Meta promptly met and conferred with California anyway to discuss narrowing strategies, and then proposed further terms within days of receiving California's hit reports.  As of today, Meta still has not received updated hit reports for its latest proposal to California.  Rather than focus on this broader context, the States cherry-pick terms and discussions to create the misimpression of Meta's intransigence.  As noted above, this misstates Meta's position and the compromises it has made.

*2. The States Already Agreed to Produce Critically Relevant Youth and Mental Health and Well-Being Documents that Do Not Mention Social Media:*  The States argue that they should not be required to run searches for documents that discuss youth mental health and well-being, without also some connection to social media.  But Meta expressly requested such materials, and the State agreed to produce them.  *See, e.g.*, States' Responses and Objections to Meta's RFP 31 (agreeing to product documents responsive" to Meta's request for "All Documents . . . Relating to the causes

or contributing factors to Young Users' Mental Health and Wellbeing issues, including causes other than the use of Social Media Platforms."); *see also* Meta RFPs 34, 35, and 36 (requesting additional documents relating to other specific alternate causes of youth mental health and well-being issues). And the States have purported to produce documents responsive to such requests from the AGs' own files. *See* States' August 30, 2024 Letter at 5 (noting that "the State AGs' production includes documents responsive to RFPs 34-36" because of "overlap" with "other RFPs to which the State AGs are responding" including "RFP 31"). Having agreed to produce documents responsive to these RFPs, the States cannot decline to run searches on agency files for this category of responsive material.

Documents like these that evidence alternate causes of teen mental health issues also are plainly necessary for Meta's defense of this case. For example, the Complaint alleges that "despite the strong and well-researched links between young people's use of Meta's Social Media Platforms and psychological and physical harm, Meta has continued to conceal and downplay its Platforms' adverse effects." MDL Compl. ¶ 7. Documents from State agencies showing that factors other than social media use are the cause of youth mental health issues would tend to disprove this and similar allegations in the Complaint, and thus are critical to Meta's defense. These are precisely the types of documents that would be located using searches for teen mental health and well-being issues, without any link to social media terms, and produced in discovery. *See, e.g.*, *Hernandez v. I.S.U.*, 2024 WL 4592355 at *3 (N.D. Cal. Oct. 28, 2024) (permitting discovery into "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case") (cleaned up). Indeed, this Court has ruled such alternate causation discovery (and associated search terms) relevant in the Personal Injury cases as well. *See* ECF No. 1070 at 5-6; *see also* Hr'g Tr. at 15:11-18 (Aug. 30, 2024) (agreeing that evidence of alternate causation "is totally probative and relevant to these cases").

*3. Meta Has Not Rejected Reasonable Limiters:* The States accuse Meta of rejecting reasonable proximity limiters. This is also not true. For example, the Connecticut Governor's office proposed that Meta apply a "within 200" limiter to various terms (which would capture references to two terms on roughly the same page), and Meta agreed to that approach.

The States' purported examples of Meta's unreasonableness are misleading. For Rhode Island, *the State itself* affirmatively proposed using "AND" connectors and only rejected that approach when Meta attempted to negotiate the specific terms to be included. On December 2, the State proposed terms that only included "AND" connectors between search strings. After Meta proposed one additional search to capture core documents relating to youth mental health, the State advised Meta on December 5 that it believed the additional string returned too many documents, rejected any approach that would include using "AND" connectors, indicated *for the very first time* that the State would request "within 10" connectors in letter briefing, and declared an impasse without offering any further negotiation. Meta *again* followed up with the State to explore a compromise, including by using some form of proximity connector. Rhode Island declined because it believed it would get protection from this Court. In other words, the State walked away from terms that it thought were reasonable to see if this Court might impose narrower terms.

For New Jersey, the negotiation history demonstrates the importance of hit reports to the process. Meta was willing to negotiate with the State even though the State provided incomplete hit count information across agencies. During these discussions, Meta asked the State to run

certain terms with a "within 25" limiter. That limiter resulted in returning less than 1,000 documents for three agencies, and *zero* documents for another. When Meta asked New Jersey to consider using "within 150" in light of those results, New Jersey failed entirely to respond or negotiate, instead choosing to decline and articulate its position for the first time in this briefing.

*4. Meta Has Not Rejected Reasonable Targeted Search Proposals:* As discussed above, Meta already has agreed with at least 19 States to either remove certain agencies from the search term process based on conferrals, or rely principally on targeted "go-get" searches for responsive documents from certain agencies (60 agencies in total). *See supra* p. 2. The States cannot elide those facts by citing to a few flawed examples that actually show that Meta is being reasonable.

Michigan. Michigan seeks to utilize unspecified targeted searches as a means of circumventing court orders and reward its own delay. This Court ordered Michigan to propose search terms and custodians by November 1. ECF Nos.1291, 1299. But the State did not propose custodians for all agencies until November 18, or provide any hit reports until December 3 (the day after the court-ordered conferral deadline). Those hit reports also were inaccurate because the State did not run Meta's terms correctly. Nonetheless, on December 4, Meta modified its search terms based on the parties' discussions. The next day, the State claimed without the purported cost detail now provided that its agencies "are unable to come anywhere close to meeting the Court's interim discovery deadlines" and requested that all agencies proceed with targeted searches. Meta agreed to do so for one agency (Department of Labor and Economic Opportunity), but not for the balance as it would deny Meta meaningful and important discovery from Michigan agencies, through the court-ordered process that Michigan largely ignored.

Illinois Department of Children and Family Services ("DCFS"). DCFS produced a total of 9 documents to Meta, without explaining how it located that materials as this Court has required. *See* ECF No. 1380 (requiring agencies "to disclose transparently the processes used to locate the responsive documents"). On a November 6 conferral, Meta also proposed narrowing strategies such as searching the files of managerial personnel who are less likely to possess sensitive individual case files (like other agencies are doing), such as DCFS's Deputy Director, Research & Child Wellbeing. DCFS has not implemented these strategies. On that same call, DCFS also admitted that it was a "consumer of research," indicating that it indeed is likely to possess responsive documents concerning teen mental health and well-being issues. Meta is entirely reasonable in insisting that DCFS employ search terms here.

Delaware Governor's office. The Delaware Governor's office was the only agency to conduct a responsiveness sample (375 documents). Meta narrowed its terms after receiving the sample information. And although Meta's narrowed terms resulted in an exceedingly reasonable 35,609 reviewable documents from the Governor's office, the office has refused to accept them. Again, the actual discussion history shows Meta's willingness to make informed concessions.

Wisconsin. While the State proposed search terms on November 7, it did not proceed to collect or review documents using those terms or take any other action in reliance on its opening proposal. Nonetheless, when Meta proposed different terms on November 22 and further narrowed those terms in the ensuing days in an attempt to reach agreement, multiple State agencies refused to engage, claiming that Meta's proposal was too late. Other agencies protested that it would be impossible to produce the requested discovery in the allotted time period without making

substantive arguments that Meta's requested discovery was irrelevant, thereby standing the discovery process on its head. If State agencies cannot produce the full scope of relevant discovery within the current deadlines, the solution is to move for an extension of time, not artificially limit their review and production efforts to deny Meta relevant discovery.

     *5. Meta Has Not Unreasonably Asked Certain Agencies to Undertake Additional Searches:* The States accuse Meta of asking subpoenaed agencies to start from scratch. Not true. The vast majority of subpoenaed agencies had produced no documents in response to the subpoenas prior to this Court's September 6 order. For those agencies who claimed to have undertaken searches, the States fault Meta for insisting on transparency and actually testing the adequacy of those purported searches where evidence of gaps existed. For example, after the Minnesota Governor's office claimed a lack of relevant information, Meta shared five examples of the Governor's involvement in youth mental health and well-being initiatives, including press releases announcing youth mental health investments, a "Governor's Task Force on Mental Health," and other Governor-appointed youth mental health advisory bodies. Similarly, when the Illinois Department of Public Health ("IDPH") certified that it had no documents in response to Meta's Rule 45 subpoena, Meta pointed out that the agency's Director was the co-chair of the Children's Mental Health Partnership, whose mission includes developing and implementing "short-term and long-term recommendations to provide comprehensive, coordinated mental health prevention, early intervention, and treatment services for children from birth through age 18." Despite this, Minnesota and Illinois insisted that these agencies have nothing else to produce. This strains credulity; indeed, in IDPH's case, the State has conceded that Meta "identified gaps" in the IDPH's original assessment.

     Arizona ignores its court-ordered obligations to paint an inaccurate picture of discovery compliance. This Court ordered Arizona to propose agency custodians and terms by November 1. ECF Nos. 1291, 1299. But on that date, Arizona proposed terms and custodians for only one of six agencies who were subject to party discovery under this Court's September 6 order. Arizona did not propose terms or custodians for another agency until November 15. Even after Meta agreed to remove two Arizona agencies from the Rule 34 search term and custodian process, Arizona did not propose custodians for all remaining agencies until December 3 (one day after the conferral deadline). Nor did Arizona's subpoenaed agencies "respond in a timely manner" to any Meta subpoena; agency productions did not begin until November 12—twelve days after Arizona let its court-ordered deadline to propose terms and custodians lapse.

     The State assertions about Minnesota agencies also are largely irrelevant. Meta agreed to remove three Minnesota agencies that the States reference from the search term process already (Department of Commerce, Office of Higher Education, and Department of Health), including the one who produced approximately 14,000 documents in response to Meta's subpoena. With respect to the Department of Human Services (who produced 451 documents), Meta never agreed to forgo search terms and custodians in August, as the State claims. Nor has the agency been transparent; it refused to answer basic questions about whether it searched for responsive documents concerning teen mental health that were unrelated to social media use. Absent such transparency, Meta has little choice but to insist upon the search term and custodian process that this Court specifically ordered for Minnesota. *See* ECF Nos. 1291, 1299.

*6. Meta's Requested Discovery Is Proportional to the Needs of this Case:*  The States complain about the burden of reviewing searches that return tens or hundreds of thousands of documents for review.  But Meta's searches are directed at obtaining discovery into core issues in this case, including teens' usage of social media platforms, the impact of such usage on teen mental health and well-being, and the impact of factors other than social media on teen mental health and well-being (e.g., the pandemic, gun violence, drug use, etc.).  *See* FRCP 26(b)(1) (allowing parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy," and other factors).

The States dispute the relevance and discoverability of the alternate causation documents that Meta seeks.  But as discussed above, such documents fall squarely within Meta RFPs to which the States have agreed to produce—and have actually produced—responsive documents, and that are critical to Meta's defense of the allegations in the States' Complaint.  *See supra* p. 2.

The States also sued Meta, and are allegedly each seeking at least hundreds of millions of dollars—if not billions of dollars—from Meta.  Each of the State AGs employs hundreds (and in some cases more than one thousand) of lawyers, with budgets ranging from hundreds of millions to over a billion dollars.  Requesting agencies within those States to review tens, and even hundreds of thousands, of documents brought up by searches directed at core-issue discovery is entirely proportional to the needs of the case.  The States' suggestion otherwise would render discovery improperly "one-sided."  See Hr.g Tr. at 72:2-21 (noting that "[t]he states are suing these defendants for hundreds of millions of dollars that you want to go into the states' co[ff]ers . . . [a]nd yet you want this to be one-sided").  Indeed, the States required Meta to run 316 search terms, across 127 custodians, over the same 12-year time period now sought from the States, resulting in Meta's production (so far) of nearly 2 million documents, totaling nearly 8.5 million pages.

In support of their burden arguments, the States submit declarations from certain agencies in nine States that they claim are allowed under this Court's rule permitting declarations "needed to support a specific claim of undue burden."  Discovery Standing Order H.3.  These declarations were not authorized by this Court's order on the form of this letter briefing.  ECF No. 1418.  They also underscore the States' disregard for the conferral process: they contain new information that was not shared with Meta before the December 2 conferral deadline, and were not shared with Meta until Sunday afternoon and today, December 8 and 9, in connection with the letter brief exchange.  And because the States believe these declarations necessary to support undue burden arguments, any agency who has not submitted one has waived their undue burden arguments.

*7. Meta Reasonably Seeks Reciprocity in the Applicable Time Period:*  Meta seeks to apply to the States the same default time period for discovery that the States applied to Meta:  January 1, 2012 to April 1, 2024.  After Meta served RFPs on the States, the States successfully petitioned this Court—over Meta's objections—for a default document discovery start date of January 1, 2012.  ECF No. 969 at 5.  The States also have placed a time period starting "no later than 2012" at issue in their pleadings.  See MDL Compl. ¶ 19 (alleging as the "Relevant Times" a period "beginning at a time unknown to the Filing States, but no later than 2012," and continuing "through the present").  Agencies from many States (including South Carolina, Oregon, Montana, and Virginia with which Meta has reached search parameter agreements) have agreed to reciprocity on the relevant time period with Meta.  Those who refuse to do so have no basis for their position.

**State AGs' Position:** The core disagreement driving nearly every dispute at issue here is Meta's insistence that the state agencies conduct sweeping one-size-fits-all document searches that are unduly burdensome and disproportionate to the needs of this case. Since this Court's September 2024 order regarding state agency discovery, the State AGs have diligently facilitated meet and confer negotiations between Meta and the hundreds of state agencies from whom Meta seeks documents, including custodians and search terms, as ordered by the Court. Meta raises events from earlier this fall to dredge up stale facts not relevant to the current letter brief in an attempt to obfuscate its own unwillingness to engage in meaningful negotiations since this Court's November instructions. Not until one day *after* the November 21, 2024, Discovery Management Conference at which the Court cautioned Meta to "narrow[] the number of search terms and the number of disputes here and work[] hard to finish" state agency discovery, Nov. 21, 2024 DMC Tr. at 12:7-8, did Meta send numerous states a revised list of exceedingly broad, stand-alone search terms that, for many state agencies, still captured more documents than could even be reviewed, let alone produced. Meta argues that the State AGs have delayed providing Court-ordered discovery, but any delay is the result of Meta's own intransigence, not the State AGs. Meta has reached agreement with only four out of thirty states that have been negotiating search terms on behalf of their state agencies, and among those has reached agreements with only a small handful of agencies to use "go get 'em" searches in lieu of search terms.[5] Meta is close to reaching agreement on search terms and custodians with several state agencies—despite refusing to reconsider its overbroad and overinclusive search terms—but instead of continuing those discussions and truly engaging with state agencies' proposals, Meta has insisted the parties brief this matter for the Court's resolution.

Even though state agencies have proposed various differing search terms and methods for collecting documents responsive to Meta's requests, Meta has almost uniformly rejected all of these bespoke compromise offers. Meta insists—without support—that simply because it was reasonable and proportionate for Meta (a technology company whose actions are the subject matter of the lawsuit) to engage in certain kinds or amounts of searching through search terms and custodians, this exact same process is required for the hundreds of state agencies at issue, which vary widely in terms of their size, technological sophistication, and mandate. As discussed below and reflected in the attached declarations from the states, Meta has (1) rejected reasonable edits and limits on Meta's search terms; (2) rejected agencies' proposals to conduct reasonable targeted searches; (3) rejected agencies' requests to be deprioritized or removed from Meta's requests because they have no relevant custodians or responsive data; and (4) insisted that agencies who had completed Rule 45 document searches and productions re-conduct their collection process from scratch irrespective of overlap with Meta's Rule 34 requests. This is exactly the overreach and gamesmanship the Court cautioned Meta to avoid, Nov. 21, 2024 DMC Tr. at 112:15-17, and

---

[5] Meta's claim to have either "remove[d] . . . from the search term process" or agreed to "rely principally on targeted 'go-get' searches" for "60 agencies in total" is misleading, and underscores Meta's unduly burdensome approach to discovery. It appears that the majority of these agencies were "deprioritized" by Meta, meaning that it has agreed to not seek discovery from them after realizing they had no relevant materials. Meta's decision to drop these agencies speaks little about its attempts to efficiently advance discovery but rather demonstrates that Meta selected numerous facially irrelevant agencies in its list of 275 targeted agencies, such as the California Department of Child Support Services that assists parents in collecting child support payments, and state economic development agencies. Outside of these "deprioritized agencies," Meta has agreed to targeted "go get 'em" searches for very few agencies.

which the Court should not permit.

Unfortunately, Meta's refusal to reasonably negotiate its November 22, 2024, search term proposal has resulted in disputes with nearly every state. The State AGs have endeavored to brief common issues that states have encountered in their meet and confers with Meta – issues that permeated meet and confers with states in all three groupings identified by Meta. Despite the common briefing, however, the specifics of each state agency's position are distinct from the next. State agencies are at different phases in the meet and confer process, and they are operating from different sets of search terms, custodians, and differing internal capabilities for managing the electronic discovery process. Even Meta's approach of categorizing agencies acknowledges differences within its own groupings, where Meta misleadingly and, in some cases, falsely represents agencies' efforts to cooperate in negotiations, as reflected throughout this letter brief in illustrative examples. The State AGs respectfully request that the Court deny the generalized and unjust relief Meta seeks. Instead, Meta should be ordered to comport with the search terms and methodologies proposed by state agencies, which are better suited to address their efficacy in producing responsive materials.

## <u>Meta's November 22 "Revised" Search Terms</u>

The "revised" search terms proposed by Meta to most, if not all, State AGs and state agencies on November 22, 2024, are overbroad and fail entirely to take into account the burden or the low likelihood of relevance to the claims or defenses in this case. For some states, the "revised" terms were far broader than what Meta had originally proposed to them. Although it would take too much space to reproduce here the entirety of Meta's proposed searches, they include the following just by way of example:

- Stand-alone common words, such as "polic*," "practice," "presentation," "initiative," "fine," "cancel," or "concern."
- Stand-alone terms purportedly regarding mental health that are completely untethered to social media, such as "wellness," "wellbeing," confidence," "mental health," "afraid," "treatment" or "angry."
- Stand-alone public health-related search terms, such as "Covid," "coronavirus," and "pandemic."
- Stand-alone search terms of social media platforms and companies, such as "Meta," Instagram," "Twitter," and "TikTok."

Over the last two weeks, State AGs and state agencies responded to Meta that these terms would be unworkable for agencies whose core functions include mental health or public health. For example, Meta's search term proposal to Delaware includes terms such as "youth" and "child" that are in the actual name of the agency itself, the Department of Services for Children, Youth & Their Families, and thus would hit all or most agency documents.

Still, Meta continued to demand that the agencies produce hit reports to substantiate their positions, much like it previously demanded searches for "phone*" or "cell*" before agreeing to drop those terms. In an effort to move forward with the meet and confer, agencies had to expend considerable time and resources to run hit reports proving what was obvious: Meta's terms were completely

untargeted and would sweep in an unworkably large number of documents. Contrary to Meta's assertion that its searches "return tens or hundreds of thousands of documents for review," Meta's blatantly overbroad terms often result in **millions,** or even **tens of millions,** hits for documents. When the California Health and Human Services Agency ran Meta's terms against the documents of their proposed custodians, it received over 3.7 million hits for one search string that included the commonly used words "practice," "presentation," "initiative," "fine," "cancel," or "concern," among others. Likewise, when the California Department of Health Care Services ran Meta's proposed terms, it came up with over twenty-one million hits. For Indiana state agencies, even if these hits were de-duplicated across only six custodians, Meta's search terms resulted in over two million documents for the two Indiana agencies that provided detailed hit reports.

With this hit report information in hand, State AGs and state agencies proposed various reasonable compromise solutions, examples of which are discussed below. Yet, for all but a handful of states, Meta rejected these solutions and continued to insist on overbroad terms producing vast numbers of hits.

## Meta Has Rejected Reasonable Edits to and Limits on Meta's Search Terms

A number of state agencies have suggested variations on Meta's hundreds of proposed search terms to try to focus on documents with some connection between social media and youth mental health. But these suggestions have been roundly rejected by Meta. Instead, Meta continues to insist on generalized mental health and wellbeing terms, such as terms involving youth bi-polar disorder, which is not alleged to be "caused" by social media use and has no articulable connection to any claim or defense in this case.

For example, during New Jersey's recent meet and confers, Meta suggested that New Jersey insert the "w/25" proximity limiter into Meta's November 22 search string proposal because the limiter would place the search strings within two sentences of each other. After Meta's suggestion, New Jersey agreed to run hit reports based on the "w/25" limiter and on December 5, 2024, New Jersey notified Meta in a conferral that it was willing to accept the "w/25" search string set as the best-and-final offer and in order to begin searches and production as soon as possible. Meta suddenly refused. Upon hearing that the w/25 searches turned up merely thousands of hits, Meta's counsel immediately declared that the hits were facially too few documents, insisted upon letter briefing this issue, and abruptly ended the conferral. Meta then followed up by email to demand New Jersey re-run the searches, now with an expanded "w/150" limiter. Meta's refusal to consider reasonable limitations of its proposed search terms has unreasonably delayed the ability of the state agencies to begin searching for, reviewing, and producing the documents Meta purports to need.

Similarly, Rhode Island has suggested a search string that requires some proximity between the categories of search terms in Meta's nearly universal November 22, 2024, proposals. Specifically, Rhode Island suggested a search string that would require at least one of Meta's proposed "social media" search terms (such as "Facebook", "Discord", or "Netflix") to be within ten words of at least one of their 119 health- or wellbeing-related terms (such as "misbehav\*" or "lonel\*"). *See* Rhode Island Search Term Proposal. As Rhode Island explained, this approach would ensure that documents have some likelihood of being responsive rather than hitting on every document where someone discusses their "diet\*," or the morning "traffic," or their "impression\*" of someone's

opinion (three of the so-called "mental health/wellbeing" searches proposed in Meta's November 22, 2024, proposal). Rhode Island's hit testing demonstrated that this proposed search returned, on average, over 1,500 results per custodian. Several other states made the same or largely similar proposal. Like other states, Meta rejected Rhode Island's proposed approach and insisted that they will only agree to a search term proposal that includes a generalized youth mental health or wellbeing search, such as youth attention-deficit/hyperactivity disorder or bi-polar disorder, regardless of the context, and regardless of whether those terms refer to actual mental health conditions or are only loosely connected to mental health (e.g., "misbehav*" and "traff*").

## Meta Has Largely Rejected State Agencies' Proposals to Conduct Reasonable Targeted Searches

Other agencies have proposed conducting reasonable targeted searches to find the documents that Meta purports to seek, in lieu of overly burdensome term searches. But Meta has largely refused to agree to these targeted searches, despite the Court's order "encourag[ing] Meta to work out informal deals with state agencies to facilitate document production, such as agreements to use "go get 'em'" requests in lieu of search terms." ECF No. 1380, at 3. Michigan's agency hit reports showed that running Meta's most recent November 22, 2024, search term proposal would result in **6,641,947 hits** comprising **5,322 GB (or 5.233 TB) of data** from the documents of twenty-two custodians across six agencies. By Michigan's estimation, this hit report would entail a discovery effort comprising six-to-seven million records after deduplication and threading; $9–10 million in costs; and seventy attorneys reviewing documents for one year. In response, Michigan countered with a proposal for each agency to do targeted searches, which Meta rejected, except as to a single agency. Likewise, the Illinois Department of Children and Family Services ("DCFS") explained to Meta that: (1) the agency has essentially no relevant materials not already publicly available; (2) due to the way the organization operates, inboxes across the organization contain highly sensitive personal details of abused and neglected children that would be caught in many of the proposed search terms; and (3) many "narrowing" terms proposed by Meta to limit hits do not actually limit the burden or irrelevant results for DCFS. Despite already producing a targeted collection, Meta has rejected additional "go get 'em" requests and is adamant that DCFS run its full search terms. It is unsurprising, then, that Meta's terms sweep up extremely high percentages of unresponsive documents. For example, Delaware's Office of the Governor ("OGOV") conducted responsiveness sampling on documents captured by Meta's proposed terms after Meta slightly narrowed its November 22, 2024 proposal. Based on its review, only 1% of the additional documents pulled by Meta's searches and not captured by OGOV's proposal were likely to be responsive. Meta has impeded discussions of the use of "'go get 'em' requests in lieu of search terms," ECF No. 1380, at 3, by refusing to identify which of its RFPs correspond to each of its proposed search strings. With this information, agencies could identify alternative means to obtain documents responsive to the RFPs linked to Meta's most overbroad search strings, such as interviewing custodians to locate responsive documents.

Nor has Meta effectively engaged with agencies' search term proposals. Meta faults certain agencies for not providing their own search term proposals by November 1, 2024. But almost without exception, Meta ignored any proposals—including those provided on or before November 1—and sent the same sets of search terms to essentially every state. In Wisconsin, attorneys at each agency manually gathered and reviewed responsive documents while simultaneously crafting

search term proposals designed to capture additional records not susceptible to manual retrieval. The Wisconsin AG provided these proposed search terms to Meta on November 7, 2024. By November 21, 2024, Wisconsin agencies had produced over 18,000 records, but Meta had not yet countered or responded to the agencies' search term proposals. Meta waited until after the close of business on November 22, 2024, to propose any search terms for Wisconsin agencies at all, and even then it responded with the same over-broad proposal that it sent to other states. Even after further rounds of negotiation, Meta's most recent one-size-fits-all proposal results in hundreds of thousands of hits at individual Wisconsin agencies. The Wisconsin Department of Health Services and the Office of Children's Mental Health found that just one of Meta's "narrowed" search strings hit on over 100,000 records just for the period of March 2023 to the present.

Meta's unwillingness to deviate from the structure of its one-size-fits-all search term proposal is especially problematic for state agencies, which vary widely in their technical capacity to run search terms and quickly generate highly sophisticated hit reports. Given the scale of Meta's proposals, searches often require multiple days to generate hit reports, and agencies' document management platforms may not instantly provide deduplicated results. As one example, the Wisconsin Department of Children and Families, after receiving Meta's search term proposal for the first time on November 22, provided data on November 27 showing that just one of Meta's proposed search strings returned more than 300,000 documents. Because of the agency's technical limitations, downloading just these results (a necessary step for deduplication) would have required making burdensome server adjustments to accommodate the data. The agency disclosed these limitations and promptly proposed revised search terms to advance the negotiation. Yet, Meta misleadingly places this agency in its second "grouping," apparently claiming that this agency has "not provided hit reports." In some cases, Meta has demanded hit counts for individual terms in its long strings before dropping overbroad terms, including hits for each custodian. Agencies have explained that to obtain hit count information for individual terms, the agencies would be required to run each term as its own search, resulting in thousands of searches. Meta has thus far failed to engage with state-agency-specific information regarding burden, as detailed in the attached declarations, or to explain how the documents it seeks are in any sense proportionate to this burden. By unnecessarily digging in its heels, Meta has impeded the state agencies' ability to identify any truly relevant documents and has all but insisted that agencies have so many documents to review that a delay in this case becomes inevitable.

### Meta Has Rejected State Agencies' Reasonable Requests to Deem their Discovery Obligations Fulfilled, After Explaining that They Have No Relevant Custodians or Responsive Documents.

Meta has also acted unreasonably by continuing to demand that agencies that have no regulatory oversight over social media or youth mental health issues identify custodians for their unduly burdensome search terms. But agencies in this category, such as the Minnesota Governor's Office, have repeatedly explained that there are no custodians likely to have responsive information within their agencies due to such agencies' duties and responsibilities. The Minnesota Governor's Office conducted a reasonable search and made reasonable inquiries in its effort to obtain responsive documents—including asking the head of policy and staff whether they had any documents relating to children's mental health generally, as well as related to social media. The Governor's Office does not implement, regulate, or oversee programs relating to children's mental health or

social media. As a result, and based on discussions with policy staff, it determined it has no custodians to offer in this matter. Yet, Meta has nonetheless unreasonably included the Governor's Office in this discovery dispute and refuses to acknowledge that the Governor's Office has fulfilled its obligations with regard to Meta's Rule 34 requests.

**Meta Has Insisted that Many Agencies Who Had Completed Rule 45 Document Searches Redo Their Searches From Scratch Using Meta's Search Terms**

The Court was clear that Meta should not require agencies that were served Rule 45 requests to start from scratch with duplicative Rule 34 requests. Meta has ignored this directive.

For example, all Arizona agencies still at issue have been placed in various categories and wrongly labeled by Meta as non-compliant, e.g., having not provided "search terms, custodians, hit reports, or transparency about alternative search methods that they may be employing." However, all of these agencies were served with Rule 45 subpoenas, responded in a timely manner, and have attempted repeatedly and without success to get Meta to engage in a productive dialogue regarding the Rule 45 subpoenas, the agencies' objections to those subpoenas, and their productions of responsive documents. Disappointingly, Meta is solely focused on Rule 34 discovery to the exclusion of previous production efforts, despite the fact that Meta's Rule 45 requests are nearly wholly duplicative of its Rule 34 requests. Meta refuses to provide feedback to the state agencies regarding the sufficiency of their production and, in Arizona, has not disclosed any review beyond counting the number of documents received.

The burden of concurrent discovery tracks is being carried solely by the states and no effort is being made by Meta to acknowledge, much less build upon, the work already completed pursuant to Rule 45 discovery. For example, the Minnesota Department of Human Services ("DHS") (reached preliminary agreement with Meta in August that DHS would not search using search terms and custodians and Meta never responded with any contrary understanding. Relying on this agreement, DHS completed its Rule 45 searches and productions, and—consistent with the Court's directive (Nov. 21, 2024 DMC Tr. at 98)—has been entirely transparent with Meta about the diligent and lengthy search process it employed. Yet, Meta refuses to acknowledge this work (and even conceded it had not fully reviewed the documents already produced by DHS) and instead is demanding DHS start its search and collection process entirely over with its unduly burdensome search terms. This is nearly identical to Nebraska's DHHS, which provided over 20,000 pages of documents in response to Meta's Rule 45 subpoena. Nebraska DHHS has also agreed to provide transparency about the process used to collect such documents. Regardless, Meta now asks the Court to order DHHS to start from scratch with search terms, threatening to waste countless hours of agency personnel time.

Similarly, the Illinois Department of Public Health independently responded to Meta's Rule 45 subpoena—without retaining the Illinois Attorney General's Office—by stating it had no responsive documents. The Illinois Attorney General subsequently provided Meta with additional information about the agency's search process, produced documents in response to identified gaps, and even made a last-ditch proposal to run limited terms. Meta now demands the agency run its full gamut of terms.

16

For all intents and purposes, Meta has twice restarted their discovery process: first in September 2024 with this Court's order, and again on November 22, 2024 (the day after this Court's November 21, 2024 discovery conference) when they served states with a more extensive and less focused list of search terms rendering any and all work – conferrals, negotiations, and production – meaningless. Agencies are being asked to start from scratch regardless of work already completed pursuant to Rule 45 subpoenas or otherwise. As Judge Gonzalez Rogers noted on October 25, 2024, holding the Rule 45 subpoenas in abeyance "hinder[s] the progress of this litigation." Oct. 25, 2024 CMC Tr. at 87:20. Meta agreed, and yet later disclosed that doing just that was their intent – either by delaying or duplicating work. Meta confirmed to Judge Gonzalez Rogers that for at least two Pennsylvania agencies, the documents provided pursuant to the Rule 45 subpoenas would not satisfy their Rule 34 discovery obligations. *Id.* at pp. 107-108.

## **Meta Seeks Documents that are Largely Irrelevant and, in any event, Disproportionate to the Needs of the Case**

Meta refuses to engage in the "careful thought, quality control, testing, and cooperation with opposing counsel" needed to collaboratively craft appropriate search terms in the discovery process. *L-3 Commc'ns Corp. v. Spartan Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015) (internal quotation omitted). The core disagreement driving nearly every dispute at issue here is Meta's insistence that the States conduct sweeping ESI searches wholly unrelated to Facebook, Instagram, or social media generally. Only three of Meta's Requests for Production lie at the core of this dispute:  Requests 34, 35, and 36 seek "[a]ll Documents, including but not limited to reports, studies, surveys, and articles" related to the impact of (respectively) electronics usage, the Covid-19 pandemic, and social, economic and political factors on youth mental health and wellbeing. Meta is now using these three Requests as the foundation for its position that it is entitled to any document that discusses any potential cause of harm to youth mental health or well-being.

Meta's purported justification for its position is that it seeks agency documents related to whether youth mental health problems had "alternate causes," such as the pandemic, tobacco, or drugs. These "alternate causes," however, go well beyond the complaint and even well beyond the RFPs themselves (which are defined by reference to the complaint). Meta has thus far rejected proposals to collect responsive studies related to youth mental health through custodial interviews and targeted searches, or limit these standalone "alternate cause" terms, such as by using close proximity limiters (e.g., w/5 words), even though their proposals are resulting in huge numbers of hits. Moreover, none of the potential alternate causes identified would exculpate Meta from liability for engaging in unfair practices with respect to its business model and features on its social media platforms, Meta's deceptive statements and conduct regarding the safety of said platforms, or that Meta violated COPPA by inappropriately collecting personal information of users under age thirteen. Documents hitting on some alternate cause search terms may be responsive—but not without any connection to Meta or social media platforms.  Meta's sweeping, standalone terms untethered to the specific claims and defenses in this case yield far too many documents to be justified by Meta's flimsy "alternate causes" reasoning. Meta's approach is contrary to the Court's counsel. Nov. 21, 2024 DMC Tr. at 21:5-8 (stating "if the environment is such that the search term is that you're demanding and the time frame you're demanding are pulling up a billion documents, that's not useful to anybody"). Meta's "alternate causes" justification for such broad search terms is a red herring. *See Weinstein v. Katapult Grp.*, No. 21-cv-05175-PJH, 2022 WL 4548798, at *2

(N.D. Cal. Sept. 29, 2022) ("Defendant's insistence on compelling [state agencies] to search for and review documents that solely mention broad generic terms . . . over a [twelve]-year period, without any reference to [D]efendant . . . is an improper fishing expedition, not proportional to the needs of the case.")

Based on the volume of hits generated from Meta's terms discussed above, the state agencies are clearly better suited than Meta to assess the appropriate document search method, set of search terms, or combination thereof, that is likely to capture responsive materials without the risk of collecting millions of documents and terabytes of nonresponsive chaff. *See Rusoff v. Happy Group, Inc.*, No. 21CV08084YGRLJC, 2023 WL 114224, at *5 (N.D. Cal. Jan. 5, 2023) (finding search term string returning 56,152 documents for one custodian and 68,908 for another to be overbroad and burdensome). The Court should therefore order Meta to accept the agencies' proposed terms. "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Id.* (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production,* 19 Sedona Conf. J. 1, Principle 6, 118 (2018)) (applying principle to search-term dispute). "Search terms must be reasonably tailored to identify responsive communications . . . [i]ndiscriminate terms . . . are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction." *Est. of Mann v. Cnty. of Stanislaus*, No. 121CV01098AWISKO, 2022 WL 4029571, at *2 (E.D. Cal. Sept. 2, 2022) (cleaned up).

Meta's attempts to paint its overbroad demands as proportionate fall flat. First, Meta points to its own document collection and review efforts in response to RFPs served by all three plaintiff groups in this MDL (the majority of which were served by the PI/SD Plaintiff leadership representing hundreds of personal injury and school district plaintiffs). Second, these nonparty agencies upon whom Meta seeks to impose this massive burden of document collection and review did not choose to file this law enforcement action – they did not participate in the investigation or decision to litigate these claims, the State AGs do not allege they were harmed by Meta's actions, and they are not entitled to share in any civil penalties that the State AGs may ultimately obtain from Meta.

Meta selectively misquotes the State AGs' Responses and Objections to Meta's Request 31, to suggest that the State AGs have conceded the relevance of alternate causes of harm to this case. Not only did the State AGs note that their answers did not apply to state agencies while orders were pending from this Court, but the State AGs also objected to Meta's Request 31 because it was "not proportional" to collect all documents relating to causes or contributing factors to mental health, "regardless of whether such documents have any bearing on Defendants, social media platforms," and because "causes of young users' mental health and wellbeing issues other than the use of Social Media Platforms are immaterial to the question of whether Defendants violated the law in this case." State AGs' Responses and Objections to Meta's RFP 31.

### **Meta Has No Basis for Relief Against New York's Office of the Governor or State Division of the Budget**

As Meta is well aware, the New York Office of the Governor (the "Executive Chamber") and New York State Division of the Budget ("Budget") are prepared to collect and produce documents

pursuant to the same process being followed by five other New York agencies. To facilitate that process, outside counsel for the Executive Chamber at Selendy Gay PLLC, have asked Meta to issue Rule 45 subpoenas to those agencies, something Meta has done for five other agencies in New York and more than 100 agencies across the country. Indeed, on November 27, 2024, Meta subpoenaed the Michigan State Budget Office in order to facilitate similar discovery. In the email serving the Notice, Meta explicitly stated that it "serves the attached subpoena as a courtesy only to assist with Michigan's internal processes and does not in any way waive its position on the status of the Michigan State Budget Office as being subject to party discovery pursuant to Judge Kang's Order of September 6, 2024 (ECF No. 1117)."

Extending a similar courtesy to the Executive Chamber and Budget is the most expeditious means of resolving the present dispute and avoids further imposition on Court resources. Meta would retain all rights under the Rule 34 requests, including its right to enforce this Court's September 6, 2024, Order if it determines the production is insufficient. Meta would continue to have a central point of contact, Selendy Gay, to coordinate discovery with the six Executive Agencies it is seeking documents from. In short, there would be little practical difference between the process for the Rule 34 subpoenas and Rule 45 subpoenas.

The Office of the New York State Attorney General ("OAG") has complied with the September 6, 2024, Order, as evidenced by the fact that five agencies are in the process of producing documents to Meta. As to the Executive Chamber and Budget, OAG has engaged in repeated and transparent attempts, with Meta's full participation, to obtain responsive documents. But OAG does not represent those agencies and does not control those agencies. Those agencies are instead represented by independent outside counsel. That fact alone undermines the primary grounds Meta cited for asserting that OAG had control over the files of those agencies. ECF No. 1117 at 169-70.

Meaning that at this point, Meta has as much access to the documents as OAG. And in such an instance there is no reason to order OAG to obtain documents Meta can just as easily obtain on its own. *See Mid-Century Ins. Co. v. AMCO Ins. Co.*, Civ. No. 14-2339, 2015 WL 12655598, at *1 (C.D. Cal. Aug. 13, 2015) ("MGFCI is not required to demand responsive documents from third parties who already have produced those documents to AMCO or from whom AMCO can obtain the documents as readily as MGFCI can."); *Shcherbakovskiy v. Da Capo Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("We also think it fairly obvious that a party need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents").

### **Meta Is Improperly Attempting to Rewrite Its Rule 34 Requests by Editing the Time Period from which it Seeks Documents from State Agencies**

Meta's Rule 34 requests to State AGs, which this Court has applied to state agency documents, define the relevant time period as beginning on January 1, 2015. But Meta has started taking a different position in meet and confers with state agencies by expanding the time period for their requests by three years. It makes no sense to allow Meta to retroactively edit the time period from which it seeks this discovery back three years to 2012—increasing the number of documents to be collected and reviewed—all while state agencies are already telling Meta that its overbroad search terms will yield terabytes of data containing millions of documents. Moreover, Meta delayed

raising this as an issue with multiple states until *after* the December 2 deadline to complete conferrals, even after reaching agreements on custodians, with full disclosure of the custodians' tenure. That the Court ordered Meta to produce documents dated back to 2012 merely reflects a judgment that *Meta* is likely to have responsive documents from that time and that searching for those documents is not unduly burdensome for Meta, given its company-specific claims of burden. That conclusion, as to Meta, does not *ipso facto* mean that the relevance and burden analysis for the hundreds of differently situated state agencies is the same. Meta's request to expand its requested time period should be rejected because it did not specify that time period in the operative request and because of the additional burden and delay associated with three additional years' worth of documents to review and collect.

### Meta's Relief Should Be Denied and the States' Proposed Searches Adopted

Leading up to the parties' first exchange of letter briefing on Sunday December 8, Meta refused to even disclose the relief it planned to seek, despite repeated requests from the State AGs. Meta's refusal to provide this notice is all the more remarkable given the scope of relief they are seeking – which includes an indefinite continuance of the trial schedule for some states. Such a remedy would be both unnecessary and patently unfair.[6] As described throughout this submission, the State AGs and state agencies have worked hard to attempt to reach agreements with Meta. Several State AGs and state agencies believe that they are very close to a final deal with Meta on search terms and custodians. Yet rather than finalizing agreements with these state agencies, Meta chose instead to letter brief the remaining issues with those states as well. If successful, the result will be to burden agencies with reviewing millions of nonresponsive documents and ultimately to delay discovery's completion. Setting aside the trial schedule would reward Meta's conduct and unfairly punish the State AGs who brought this action and have endeavored to facilitate document production from hundreds of their state agencies.

Meta is standing in the way of reasonable agreements to proceed with and complete state agency discovery on the schedule ordered by this Court. They are refusing to agree to "go get 'em" searches, tailored agency-proposed search terms, useful narrowing of Meta's search terms, or production of documents without a laborious responsiveness review. From any angle, it is clear that Meta's conduct, and not that of the State AGs or state agencies, is causing delay here. The State AGs respectfully request that the Court deny any relief sought by Meta related to the State AGs' and state agencies' production of documents, and that the Court order the agencies' proposed document search procedures detailed in the state-specific attachments.[7] If the Court does not order the adoption of the agencies' proposed searches, the State AGs ask the Court to order Meta to continue meet and confers to immediately and appropriately narrow searches.

---

[6] Meta also asks the Court to order that it be allowed to "select up to three additional custodians" for *each agency* in its second and third groupings. Meta provides no support for this arbitrary request.

[7] Many state agencies have proposed targeted searches to Meta during conferrals, which may not be reflected in the attached search term/custodian appendices.

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: December 9, 2024

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen