

Capitol Building
Room 241 South
Topeka, KS 66612

**Kansas**
Office of the Governor

Phone: (785) 296-3232
governor.kansas.gov

Laura Kelly, Governor

November 14, 2024

Sarah Dietz
Assistant Attorney General
Office of Kansas Attorney General Kris Kobach

RE: Subpoena issued under K.S.A. 50-631 as proxy for Discovery in Meta Litigation, *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 22-md-03047-YGR

Dear Ms. Sarah Dietz,

We are providing you with our objections to the subpoena we received from your office on November 1, 2024, pursuant to K.S.A. 50-631.

We ask that you withdraw your subpoena as we believe it is an *ultra vires* exercise of subpoena power under the Kansas Consumer Protection Act, K.S.A. 50-631, once a complaint has been filed, as is the case here when the complaint was filed on October 24, 2023. Without waiving any right for us to seek to quash the subpoena, in the alternative, we ask that you modify your subpoena as follows: 1) limiting the timeframe of the request from when Governor Kelly took office on January 14, 2019 to when the complaint in the above-reference litigation was filed on October 24, 2023; 2) limiting the requests to only those germane to alleged violations of the Kansas Consumer Protection Act, which we believe would be withdrawing all but request no. 8.

Further, we discussed the idea of using Boolean search terms as a proxy for complying with the subpoena, we ask that you limit the Boolean search terms as identified herein. Your proposed 57 Boolean searches resulted in 9,572 Outlook items, not including attachments, which far exceeds our ability to review and would create an undue burden on our office. Our proposed modification would entail using 22 of your 57 Boolean searches resulting in a less burdensome 424 responsive items, not including attachments.

Please note we are not intending to be obstructionist in that we believe the Attorney General's Office and Governor's Office are aligned in the legal concerns regarding party discovery in the above-referenced litigation. And we intend to assist where appropriate and reasonable. Nevertheless, to preserve all defenses and rights of our client and to ensure your request does not unduly burden the resources of our office at the expense of service to our client, we wish to make you aware of the following objections:

1. Where, as here, the Attorney General has joined a complaint alleging violations of the Kansas Consumer Protection Act, the investigatory subpoena power under that act is not available for use as a proxy for responding to discovery for what should have been a Rule 45 subpoena from the federal court.

At the outset, we note that unlike a discovery subpoena which would impose a burden on the Governor's Office to object in accordance with K.S.A. 60-245(c), an administrative subpoena such as the one you issued under K.S.A. 50-631 puts the burden on you to substantiate the subpoena furthers your investigation. *See, e.g., People ex rel. MacFarlane v. Am. Banco Corp.*, 194 Colo. 32, 38, 570 P.2d 825, 829 (1977)("The attorney general's subpoena, under the Colorado Consumer Protection Act, affords greater protection because the burden of

1



seeking court review is upon the attorney general. He must carry the burden of satisfying the court that reasonable grounds exist to believe the subpoena is necessary to terminate or prevent a deceptive trade practice. The court, therefore, is the protective barrier between the naked demand of the subpoena to produce and an enforceable court order.").

We did not locate any Kansas appellate case discussing the scope of the Attorney General's subpoena power under K.S.A. 50-631, but in looking at similar statutes in other jurisdictions, I have found support for the proposition that this administrative/investigatory subpoena ends once a lawsuit is initiated.

In *Cavalry SPV I, LLC v. Morrisey*, 232 W. Va. 325, 337, 752 S.E.2d 356, 368 (2013), the West Virginia Attorney General received complaints of violations of the West Virginia Consumer Credit and Protection Act and issued investigative subpoenas. The Attorney General's statutory subpoena power was as follows:

> If the attorney general has probable cause to believe that a person has engaged in an act which is subject to action by the attorney general, he may, and shall upon request of the commissioner, make an investigation to determine if the act has been committed and, to the extent necessary for this purpose, may administer oaths or affirmations, and, upon his own motion or upon request of any party, may subpoena witnesses, compel their attendance, adduce evidence, and require the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition and location of any books, records, documents or other tangible things and the identity and location of persons having knowledge of relevant facts, or any other matter reasonably calculated to lead to the discovery of admissible evidence.
> *Id.* at 332.

The court elaborated on the distinction between investigatory subpoena power and adjudicatory subpoena power, noting that once a complaint has been filed, investigatory subpoena power for violations alleged in the complaint cease.

> Once a complaint has been filed formally charging a party with statutory misconduct, however, the Attorney General no longer may rely upon his powers of investigation to elicit information to establish those specific consumer protection violations that form the basis of the complaint. Rather, upon the commencement of enforcement proceedings through the filing of a civil action by the Attorney General, the Attorney General's investigatory powers end as to those matters addressed in the complaint and are supplanted by the rules of discovery applicable to civil proceedings generally. *Id.* at 337.

*See also People ex rel. MacFarlane v. Am. Banco Corp.*, 194 Colo. 32, 38, 570 P.2d 825, 829 (1977) (noting that an attorney general vested with administrative subpoena power under a consumer protection statute "reflects a compromise that attempts to balance the public's interest in effective investigation at the *preliminary stage* against the individual's interest in being free from governmental intermeddling.") (emphasis added).

As you know, K.S.A. 50-631(a) provides "If, by the attorney general's own inquiries or as a result of complaints, the attorney general has reason to believe that a supplier has engaged in, is engaging in or is about to engage in an act or practice that violates this act, the attorney general, or any deputy attorney general or assistant attorney general, may administer oaths and affirmations, subpoena witnesses or matter and collect evidence." There is no time limitation in this provision, which may support some argument that the power survives past the filing of complaint. However, I don't think that argument carries the day. Clearly the plain language "has reason to believe that a supplier has engaged in, is engaging in or is about to engage in an act or practice that violates this act" indicates investigative intent in that it seeks to detect past or probable violations.

2

It does not speak to enforcement of violations post-complaint. Coupled with the civil remedy procedures under K.S.A. 50-632 such as an injunction, and the civil discovery mechanisms under K.S.A. Chapter 60, I think the mechanism for discovery post-complaint is party discovery or subpoenas from the court. The appropriate action would be either you or Meta issuing a Rule 45 subpoena.

Moreover, if the subpoena power was intended to persist past the investigatory process, we think the Legislature could have so provided. But it did not, likely leaving such post-investigation discovery to the long-established discovery processes of civil procedure.

We think that the power to subpoena records under K.S.A. 50-631 ceased upon your filing or joining of the complaint, at which time the proper discovery vehicle for further information was party discovery and Rule 45 subpoenas. The subpoena you issued to our office on November 1, 2024, was not in furtherance of an investigation. In fact, a comparison of the subpoena the Governor's Office received from the Attorney General shows the subpoena is near identical to the Rule 45 subpoena served by Meta on the Department for Children and Families. What the Governor's Office received is essentially Meta's Rule 45 discovery subpoena reproduced by the Attorney General as an investigatory subpoena under the Kansas Consumer Protection Act.

The Attorney General Office's presumably completed its investigation which led to the two counts of the violation of the Kansas Consumer Protection Act that it alleged in the complaint filed in the above-referenced litigation. Now, having been confronted with a legally dubious discovery order in federal court in the Northern District of California, the Attorney General attempts compliance with the order through use of its investigatory subpoena power. But the train on the investigation already left the station; the Attorney General is not investigating a violation. Rather, it is responding to discovery about an investigation completed as the precursor to it joining the above-referenced lawsuit.

Administrative subpoenas survive constitutional challenge for unreasonable search and seizure only if they meet the touchstone of reasonableness. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208, 66 S. Ct. 494, 505, 90 L. Ed. 614 (1946) ("The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable."); *see also People ex rel. MacFarlane v. Am. Banco Corp.*, 194 Colo. 32, 38, 570 P.2d 825, 829 (1977) ("In our view, the protections afforded persons served with an attorney general's subpoena are as full and as meaningful as those afforded persons served with a grand jury subpoena. Under both, the person from whom information is sought may refuse to submit to the demands of the subpoena if it is unreasonable.").

Here, it is unreasonable for the Attorney General to attempt to command production of documents sought in discovery from Meta (not even the Attorney General) of an already filed case under the guise of an investigatory subpoena from the Attorney General.

2. Even if the Kansas Consumer Protection Act permits the Attorney General to issue a subpoena post-investigation pursuant to K.S.A. 50-631, the subpoena issued is overly broad and unduly burdensome for the following reasons outlined below.

As applicable to all reasons, the resources of the Governor's Office are limited, consisting of a Chief Counsel and Deputy Chief Counsel and no legal support. So, while serving the legal needs of the Kansas Governor, we simply do not have a lot of additional bandwidth to conduct an extensive review of records. Further, we are technologically limited in that we do not have a centralized way of searching text messages, and I am not sure of our ability to search network drives. We can, as we have explained, perform simple Boolean searches of e-mails, and we are willing to conduct reasonable Boolean searches of e-mails. Moreover, any records that are retrieved will require legal review for any privilege before being produced to your office. As noted, there are

3

two attorneys for the Governor's Office, and we simply do not have the capacity for large scale document review.

       a. The subpoena seeks records from January 1, 2012, but Governor Kelly is not the custodian of records prior to her becoming Governor on January 14, 2019.

K.S.A. 75-104(e), generally, provides that the Governor's records at the end of the administration are transferred to the custody of the state historical society. It further provides "During the lifetime of the former governor, no person shall have access to any such records, correspondence or other papers which are not required to be disclosed under K.S.A. 45-221 and amendments thereto, except upon consent of the former governor, and the former governor shall be considered the official custodian of such records, correspondence and other papers which are not required to be disclosed."

Meta's instructions in its first set of requests for production said "unless otherwise specified, the time period for these request is January 1, 2015, to the date of production of documents." The subpoena from the Attorney General contained the exact same instruction at paragraph 9 of the instructions. Asking for nearly a decade's worth of records is too much, especially in light of the resource limitations identified above and the fact that Governor Kelly's administration is not the custodian of records of the prior administrations. We ask that you modify your subpoena so that it ranges from January 14, 2019, the date Governor Kelly assumed office, and the earlier of either the date the Kansas Attorney General completed its investigation and determined Meta had violated the Kansas Consumer Protection Act or the date the complaint initiating the action at issue was filed. Asking for records beyond the date of the AG's determination or complaint creates additional unwarranted burden on our resources and has no relevance to the AG's findings regarding violations or enforcement of the Kansas Consumer Protection Act.

For records prior to Governor Kelly's administration – January 1, 2015, to January 13, 2019 – we ask that you please direct your request to the Kansas historical society.

       b. The subpoena is overly broad and creates an undue burden on the Governor's Office

The subpoena contains 22 categories of requests *in addition to* 20 subcategories in request no 3., 3 subcategories in request no. 5, 8 sub-subcategories in request no. 5.c, 6 subcategories in request no. 12, and 2 subcategories in request no 22. As noted above, the Governor's Office resources are limited, and we are not in a position to comply by the requested time frame of November 21 (20 days from date of receipt).

You originally provided a list of 57! different Boolean searches to be run across the mailboxes of the 15 custodians we identified. We ran this search for the time period from when Governor Kelly took office, January 14, 2019, to the date the complaint against Meta was filed, October 24, 2023. Later, on November 8, 2024, you provided 195!! different Boolean searches.

Our Office of Information Technology Services reports the following responsive items to the 57-search list you provided:

| Search Criteria | No. Items |
|---|---|
| ("mental health") NEAR(7) ("youth") | 3576 |
| ("mental health") NEAR(7) ("child") | 3392 |
| ("mental health") NEAR(7) ("adolescent") | 513 |
| ("Facebook") NEAR(7) ("youth") | 224 |

| Query | Count |
|---|---|
| ("social media") NEAR(7) ("child") | 216 |
| ("mental health") NEAR(7) ("teen") | 197 |
| ("mental health") NEAR(7) ("social media") | 183 |
| ("wellbeing") NEAR(7) ("youth") | 162 |
| ("social media") NEAR(7) ("budget") | 155 |
| ("social media") NEAR(7) ("youth") | 148 |
| ("Facebook") NEAR(7) ("mental health") | 99 |
| ("complaint") NEAR(7) ("budget") | 75 |
| ("suicide") NEAR(7) ("social media") | 72 |
| ("social media") NEAR(7) ("behavior") | 69 |
| ("Facebook") NEAR(7) ("suicide") | 67 |
| ("complaint") NEAR(7) ("social media") | 59 |
| ("social media") NEAR(7) ("harm") | 58 |
| ("social media") NEAR(7) ("kid") | 53 |
| ("social media") NEAR(7) ("benefit") | 47 |
| ("anxiety") NEAR(7) ("social media") | 44 |
| ("mental health") NEAR(7) ("kid") | 37 |
| ("depression") NEAR(7) ("social media") | 26 |
| ("self-harm") NEAR(7) ("youth") | 24 |
| ("social media") NEAR(7) ("teen") | 17 |
| ("Facebook") NEAR(7) ("addiction") | 14 |
| ("Instagram") NEAR(7) ("youth") | 8 |
| ("social media") NEAR(7) ("filter") | 7 |
| ("addiction") NEAR(7) ("social media") | 6 |
| ("Instagram") NEAR(7) ("suicide") | 6 |
| ("Instagram") NEAR(7) ("mental health") | 5 |
| ("complaint") NEAR(7) ("cellphone") | 3 |
| ("Facebook") NEAR(7) ("anxiety") | 3 |
| ("social media") NEAR(7) ("adolescent") | 2 |
| ("wellbeing") NEAR(7) ("teen") | 2 |
| ("digital advertisement") NEAR(7) ("social media") | 1 |
| ("Instagram") NEAR(7) ("anxiety") | 1 |
| ("Instagram") NEAR(7) ("depression") | 1 |
| ("compulsive use") NEAR(7) ("social media") | 0 |
| ("digital advertisement") NEAR(7) ("facebook") | 0 |
| ("digital advertisement") NEAR(7) ("instagram") | 0 |
| ("Facebook") NEAR(7) ("compulsive use") | 0 |
| ("Facebook") NEAR(7) ("depression") | 0 |
| ("Facebook") NEAR(7) ("self-harm") | 0 |
| ("Facebook") NEAR(7) ("sleep disturb") | 0 |
| ("Instagram") NEAR(7) ("addiction") | 0 |
| ("Instagram") NEAR(7) ("compulsive use") | 0 |
| ("Instagram") NEAR(7) ("self-harm") | 0 |
| ("Instagram") NEAR(7) ("sleep disturb") | 0 |
| ("mental health") NEAR(7) ("young user") | 0 |

| | |
|---|---|
| ("self-harm") NEAR(7) ("social media") | 0 |
| ("sleep disturb") NEAR(7) ("social media") | 0 |
| ("sleep disturb") NEAR(7) ("youth") | 0 |
| ("social media") NEAR(7) ("compulsive") | 0 |
| ("social media") NEAR(7) ("physical health") | 0 |
| ("social media") NEAR(7) ("psychological health") | 0 |
| ("social media") NEAR(7) ("social health") | 0 |
| ("social media") NEAR(7) ("young user") | 0 |

Note: the NEAR(7) means 5 words separate the two end words, which we believe was comparable to "w/5" [within 5 words] search between the two end words. These items are outlook data files, most likely e-mails, and the count of responsive hits does not account for e-mail attachments, which would add attorney review time. This is a total of 9,572 items, not including attachments, and there is no way the Governor's Office legal team can review this number of items without it substantially interfering with our ability to provide counsel to our client Governor Kelly and the Governor's Office.

K.S.A. 60-245(c)(1) imposes a duty on the issuer of the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." In determining whether to enforce a subpoena, district courts are empowered to weigh equitable criteria as reasonableness and oppressiveness – it is a balancing of hardships and benefits. *Cessna Aircraft Co. Kansas Comm'n on C.R.*, 229 Kan. 15, 31, 622 P.2d 124, 137 (1981). In *Cessna Aircraft Co.*, the Kansas Supreme Court noted the Kansas Commission on Civil Rights did not have "unlimited subpoena powers and can subject an entire facility to demands and whims without some showing of relevancy to the *investigation*." *Id.* at 28 (emphasis added). Here, the investigation is done, and the complaint filed. There can be no credible argument that the Attorney General filed first and sought support after the fact, as that would raise ethical concerns as to whether the filing of the complaint was supported by facts at the time it was filed – the law does not countenance a file first, investigate later approach.

In reviewing the list above, we believe these would be more applicable search terms and reasonable number of items for review:

| | |
|---|---|
| ("complaint") NEAR(7) ("social media") | 59 |
| ("social media") NEAR(7) ("harm") | 58 |
| ("social media") NEAR(7) ("kid") | 53 |
| ("social media") NEAR(7) ("benefit") | 47 |
| ("anxiety") NEAR(7) ("social media") | 44 |
| ("mental health") NEAR(7) ("kid") | 37 |
| ("depression") NEAR(7) ("social media") | 26 |
| ("self-harm") NEAR(7) ("youth") | 24 |
| ("social media") NEAR(7) ("teen") | 17 |
| ("Facebook") NEAR(7) ("addiction") | 14 |
| ("Instagram") NEAR(7) ("youth") | 8 |
| ("social media") NEAR(7) ("filter") | 7 |
| ("addiction") NEAR(7) ("social media") | 6 |
| ("Instagram") NEAR(7) ("suicide") | 6 |
| ("Instagram") NEAR(7) ("mental health") | 5 |

| | |
|---|---|
| ("complaint") NEAR(7) ("cellphone") | 3 |
| ("Facebook") NEAR(7) ("anxiety") | 3 |
| ("social media") NEAR(7) ("adolescent") | 2 |
| ("wellbeing") NEAR(7) ("teen") | 2 |
| ("digital advertisement") NEAR(7) ("social media") | 1 |
| ("Instagram") NEAR(7) ("anxiety") | 1 |
| ("Instagram") NEAR(7) ("depression") | 1 |

This represents a far more reasonable 424 items, consistent with your obligation to ensure no undue burden on our office.

      c. The subpoena's requests are not reasonably relevant to an investigation of a Kansas Consumer Protection Act violation.

"To be valid, administrative subpoenas must satisfy three requirements: (1) The inquiry is one that the agency or board is authorized to make, (2) the demand must not be too indefinite, and (3) the information sought must be reasonably relevant to the purpose of the inquiry." *Hansa Ctr. for Optimum Health, LLC v. State*, 52 Kan. App. 2d 503, Syl. 4, 369 P.3d 977, 978 (2016).

Here, the Attorney General has issued this administrative subpoena under K.S.A. 50-631, which is limited to investigations of violations of the Kansas Consumer Protection Act. Yet, the subpoena requests the following documents:

Request No. 7: Policies proposed, recommended, or enacted by the Kansas Governor's Office regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

Unless the Attorney General is investigating these current or proposed policies, such policies are not relevant to alleged violations of the Kansas Consumer Protection Act.

Request No. 9: Complaints to the Kansas Governor's Office by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

Such complaints about "budget crises" have no bearing on an alleged violation of the Kansas Consumer Protection Act.

Request No. 10: Documents related to state assessments in Kansas, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or districts, and any other measures of school performance.

Measures of school performance are not relevant to an alleged violation of the Kansas Consumer Protection Act.

Request No. 11: Legislation or policies proposed by, proposed on behalf of, or testified on by the Kansas Governor's Office, regardless of such legislation or policies were enacted, regarding Young User's use of Social Media Platforms.

Proposed legislation or policies are not going to violate the Kansas Consumer Protection Act, which is itself a creature of statute. Legislation can override or supplement existing legislation. This request has no bearing on an alleged violation of the Kansas Consumer Protection Act.

Request No. 12: Mental, social, emotional, or behavioral health services provided by the Kansas Governor's Office to Young Users during the Relevant Period, including:

a. Counseling or therapy;
b. Psychiatric services;
c. Crisis intervention;
d. Inpatient short-term and long-term programs;
e. Resource centers; and
f. Services for Young Users dealing with substance abuse or addiction issues.

The provision of mental health services has no bearing on an alleged violation of the Kansas Consumer Protection Act.

The above are a few examples. And rather than relist the numerous requests in your subpoena, we will suffice with identifying which request we do think germane to an alleged violation of the Kansas Consumer Protection Act: Request No. 8, seeking "complaints to the Kansas Governor's Office by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones."

Respectfully,

Justin Whitten
Chief Counsel for Kansas Governor Laura Kelly