Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*
*Facebook, Inc.; Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook Payments, Inc.;*
*Facebook Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-TSH<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**NOTICE OF MOTION AND MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br><br>**Hearing:**<br>Date:    TBD<br>Time:    TBD<br>Place:   Oakland, California<br>Judge:   Hon. Yvonne Gonzalez Rogers |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at a hearing date and time to be determined in accordance with the Court's Case Management Order No. 5 (Dkt. 164), before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street in Oakland, California, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, Siculus, Inc., and Mark Elliot Zuckerberg; TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC; Snap Inc.; and YouTube, LLC, Google LLC, and Alphabet Inc. (each a "Defendant," and collectively the "Defendants"), respectfully move this Court, under 28 U.S.C. § 1292(b), for an order certifying the Court's Orders Granting in Part and Denying in Part Motions to Dismiss (Dkts. 1267, 1332) ("Orders") for interlocutory review.

This Motion is based on the Memorandum of Points and Authorities submitted herewith, any Reply Memorandum or other papers submitted in connection with the Motion, all other pleadings and papers on file in this action, any matter of which this Court may properly take judicial notice, and any information presented at argument.

DATED:      December 16, 2024      By:   _/s/ Phyllis A. Jones_
                                          Phyllis A. Jones

                                          *Attorneys for Defendants Meta Platforms,*
                                          *Inc. f/k/a Facebook, Inc.; Facebook*
                                          *Holdings, LLC; Facebook Operations, LLC;*
                                          *Facebook Payments, Inc.; Facebook*
                                          *Technologies, LLC; Instagram, LLC;*
                                          *Siculus, Inc.; and Mark Elliot Zuckerberg*

                                          *Additional parties and counsel listed on*
                                          *signature pages*

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ............................................................................ 1

I.       INTRODUCTION ........................................................................................................ 1

II.      BACKGROUND ........................................................................................................... 2

III.     ARGUMENT ................................................................................................................. 3

         A.       The Orders Involve Controlling Questions of Law.................................................. 4

         B.       Substantial Grounds Exist for Difference of Opinion............................................ 5

                  1.       There Is Substantial Ground for Difference of Opinion on Whether the
                           School Districts' Nuisance Claims are Viable. ........................................... 5

                  2.       There Is Substantial Ground for Difference of Opinion on Whether the
                           School Districts' Negligence Claims Are Viable. .................................... 12

                  3.       There Is Substantial Ground for Difference of Opinion on Whether the
                           School District Plaintiffs May Recover the Costs of Providing Mental
                           Health Care Treatment to Students. ......................................................... 15

         C.       Finally, Interlocutory Review May Materially Advance the Ultimate
                  Termination of the Litigation. ....................................................................... 18

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Washington Pub. Hosp. Dists. v. Philip Morris Inc.*,
241 F.3d 696 (9th Cir. 2001) ........................................................................... 15, 16, 17

*Bill v. Super. Ct.*,
187 Cal. Rptr. 625 (1982) ........................................................................... 13, 14

*In re Blue Cross Blue Shield Antitrust Litig.*,
2018 WL 3326850 (N.D. Ala. June 12, 2018) ........................................................ 20

*Boyle v. United Technologies Corp.*,
487 U.S. 500 (1988) ........................................................................................... 6

*Brickman v. Facebook, Inc.*,
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ............................................ 5, 9, 13

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ............................................................................ 4

*In re Cement Antitrust Litig.*,
673 F.2d at 1026–27 ........................................................................................ 19

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ................................................................ 6, 8, 12

*Cincinnati v. Beretta USA Corp.*,
768 N.E.2d 1136 (Ohio 2002) .......................................................................... 8

*City of Modesto Redevelopment Agency v. Super. Ct.*,
119 Cal. App. 4th 28 (2004) ............................................................................ 9

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002) ............................................................................ 17

*City of Pompano Horse Club et al. v. State*,
93 Fla. 415 (1927) ............................................................................................ 10

*City of San Diego v. U.S. Gypsum Co.*,
30 Cal. App. 4th 575 (1994) ............................................................................ 10

*Cunningham v. Anchor Hocking Corp.*,
550 So. 2d 93 (Fla. Dist. Ct. App. 1990) ........................................................ 11

*Davidson v. Apple, Inc.*,
2017 WL 3149305 (N.D. Cal. July 25, 2017) .................................................. 6, 7

*Day & Zimmermann, Inc. v. Challoner*,
  423 U.S. 3 (1975) .................................................................................................. 6

*De Filippo v. Nat'l Broad. Co., Inc.*,
  1980 WL 336092 (R.I. Super. Ct. June 8, 1980) ................................................ 14

*Del Webb Cmtys., Inc. v. Partington*,
  652 F.3d 1145 (9th Cir. 2011) .............................................................................. 6

*DeLuca v. Farmers Ins. Exch.*,
  2019 WL 4260437 (N.D. Cal. Sept. 9, 2019) ...................................................... 19

*Dukes v. Wal-Mart Stores, Inc.*,
  2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) ..................................................... 20

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*,
  124 F.3d 252 (1st Cir. 1997) .................................................................................. 6

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938) ......................................................................................... *passim*

*In re Firearm Cases*,
  126 Cal. App. 4th 959 (2005) ............................................................................... 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
  427 F.Supp.3d 374 (S.D.N.Y. 2019) ............................................................. 19, 20

*Gillespie v. Centerra Servs. Int'l, Inc.*,
  2022 WL 18584762 (C.D. Cal. Oct. 26, 2022) ................................................... 19

*Grieco v. Daiho Sangyo, Inc.*,
  344 So. 3d 11 (Fla. 4th DCA 2022) ............................................................... 12, 14

*Heaton v. Soc. Fin., Inc.*,
  2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ......................................................... 5

*Henley v. Jacobs*,
  2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) .................................................... 4, 5

*Hill v. Henderson*,
  195 F.3d 671 (D.C. Cir. 1999) ............................................................................ 20

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................................. 18

*State ex rel. Hunter v. Johnson & Johnson*,
  499 P.3d 719 (Okla. 2021) .................................................................................... 7

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) .............................................................................. 19

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) ............................................................................................ 9, 10

*Ileto v. Glock, Inc.*,
370 F.3d 860 (9th. Cir. 2004) ...................................................................................................... 9

*Jaco v. WinCo Holdings, Inc.*,
2019 WL 2615739 (E.D. Cal. June 26, 2019) ........................................................................... 19

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002) .................................................................................................... 12

*In re JUUL Labs, Inc., Mktg., Sales Practices, and Prod. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ......................................................................... 7, 16, 17

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
801 N.E.2d 1222 (Ind. 2003) ..................................................................................................... 8

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996) ........................................................................................................ 4

*McDonald v. Gen. Motors LLC*,
2024 WL 1601844 (C.D. Cal. Feb. 23, 2024) ............................................................................. 8

*In re Microsoft Corp. Antitrust Litig.*,
274 F. Supp. 2d 741 (D. Md. 2003) .......................................................................................... 20

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018) ............................................................................................... 12, 13

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ................................................................................................................. 15

*In re Multidistrict Vehicle Air Pollution*,
481 F.2d 122 (9th Cir. 1973) .................................................................................................... 20

*Nat'l Ass'n of African Am.-Owned Media v. Charter Comms.*,
2016 WL 10647193 (C.D. Cal. Dec. 12, 2016) ........................................................................... 4

*In re Nat'l Prescrip. Opiate Litig.*,
—N.E. 3d—, 2024 WL 5049302 (Ohio Dec. 10, 2024) ............................................................. 8

*In re Nat'l Prescription Opiate Litig.—West Boca*,
452 F. Supp. 3d 745 (N.D. Ohio 2020) ..................................................................................... 11

*NetChoice, LLC v. Bonta*,
2023 WL 6135551 (N.D. Cal. Sept. 18, 2023) .......................................................................... 14

*NetChoice, LLC v. Griffin*,
2023 WL 5660155 (W.D. Ark. Aug. 31, 2023) .......................................................................... 14

*NetChoice, LLC v. Reyes,*
    2024 WL 4135626 (D. Utah Sept. 10, 2024) ........................................................ 14

*NetChoice, LLC v. Yost,*
    716 F. Supp. 3d 539 (S.D. Ohio 2024) ................................................................ 14

*Olivia N. v. Nat'l Broad., Co.,*
    178 Cal Rptr. 888 (1981) ...................................................................................... 14

*Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.,*
    185 F.3d 957 (9th Cir. 1999) ................................................................................ 18

*Penelas v. Arms Tech., Inc.,*
    1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) ................................................ 11

*Perry v. Am. Tobacco Co.,*
    324 F.3d 845 (6th Cir. 2003) ................................................................................ 18

*Plaskett v. Wormuth,*
    18 F.4th 1072 (9th Cir. 2021) ................................................................................ 4

*In re Qualcomm Antitrust Litig.,*
    2023 WL 121983 (N.D. Cal. Jan. 6, 2023) ........................................................... 9

*Reese v. BP Expl. (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) ........................................................................ 4, 5, 19

*Rollins v. Dignity Health,*
    2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ............................................... 19, 20

*Roth v. Foris Ventures, LLC,*
    2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ..................................................... 4

*Ryan v. Santa Clara Valley Transportation Auth.,*
    2017 WL 3142130 (N.D. Cal. July 25, 2017) ....................................................... 9

*Sanders v. Acclaim Ent., Inc.,*
    188 F. Supp. 2d 1264 (D. Colo. 2002) ................................................................ 13

*Silbersher v. Allergan Inc.,*
    2021 WL 292244 (N.D. Cal. Jan. 28, 2021) .................................................. 19, 20

*In re Soc. Media,*
    2024 WL 4673710 .......................................................................................... 3, 15

*State of Sao Paulo of Federative Republic of Brazil v. Am. Tobacco Co.,*
    919 A.2d 1116 (Del. 2007) ................................................................................... 18

*Vasquez v. Coast Valley Roofing Inc.,*
    2007 WL 1660972 (E.D. Cal. June 6, 2007) .......................................................... 8

vi

*Williams v. Alameda Cnty.*,
    657 F. Supp. 3d1250 (N.D. Cal. 2023) ..................................................................... 4

*Zamora v. Columbia Broad. Sys.*,
    480 F. Supp. 199 (S.D. Fla. 1979) ............................................................... 13, 14

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................*passim*

**Other Authorities**

Public Nuisance Resulting in Economic Loss, Restatement (Third) of Torts: Liab. for
    Econ. Harm § 8 cmt. ................................................................................... 8

16 Wright & Miller, *Federal Practice & Procedure* § 3929 (3d ed. Apr. 2023 Update)............. 20

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) its Orders Granting in Part and Denying in Part Motions to Dismiss (Dkts. 1267, 1332), given the substantial grounds for difference of opinion on the following controlling questions of law:

1. Whether the School Districts' public nuisance claims should be dismissed in their entirety.

2. Whether Defendants owe the School Districts a cognizable duty.

3. Whether the School Districts' claims to recover the costs of providing mental health care treatment to students are impermissibly derivative.

## I.    INTRODUCTION

This Court has held that school district and local government plaintiffs ("School Districts") from 19 different states may assert claims for public nuisance, negligence, or both, based on allegations that their students' use of Defendants' online communications services caused those students to struggle with mental health issues, which in turn caused the School Districts to incur additional expense. Reasonable jurists could—and have—disagreed with several aspects of the Court's Orders. Because resolution of those questions of law could materially advance the termination of this multi-district litigation, an immediate appeal is warranted.

*First*, the Ninth Circuit has held that federal courts "should hesitate prematurely to extend the law in the absence of an indication from the state courts or the state legislature that such an extension would be desirable." While this Court recognized that public nuisance law has "historically been linked to the use of land by the one creating the nuisance," that most states' supreme courts have not addressed expansion of the doctrine to the provision of lawful goods or services, and that the Third Restatement counsels against such an expansion, it expanded the scope of state public nuisance claims except where a state's supreme court had expressly considered and rejected the expansion. Reasonable jurists could disagree on whether the Court's holding is consistent with the Ninth Circuit's admonition that federal courts should decline to expand novel theories of liability where no state authority expressly recognized those theories—particularly where the state courts expressly to have considered the issues have declined to expand the law in that way. Indeed, Judge Kuhl, a California judge, disagreed with this

Court in her order sustaining Defendants' demurrer to identical claims brought under California and Florida law.

*Second*, reasonable jurists could disagree with this Court's holding that School Districts can recover for harms that flow from alleged injuries to their students through negligence-based tort liability. Reasonable jurists have declined to expand negligence law to impose duties to third parties such as School Districts. Reasonable jurists have also found that the imposition of such a duty would impermissibly chill both Defendants' and users' First Amendment rights. Again, as to the claims of California and Florida School Districts, Judge Kuhl disagreed with this Court on identical claims.

*Third*, the Ninth Circuit has rejected common law claims by public hospital districts that sought to recover costs incurred by the hospitals to provide health care to patients who used the defendants' products because the claims were derivative of harms to the patients. Reasonable jurists could disagree on whether efforts by public school districts to recover from online communications services costs incurred to provide mental health care to students who use those services can be meaningfully distinguished from this controlling Ninth Circuit authority.

## II.    BACKGROUND

Defendants operate online interactive communication services: Facebook, Instagram, Snapchat, TikTok, and YouTube. The School Districts filed their consolidated Master Complaint on December 18, 2023, Dkt No. 504, which they amended on March 27, 2024, Dkt. No. 729, asserting claims for negligence and public nuisance under the laws of 19 different states.[1]

Defendants moved to dismiss all claims. Dkt. 601. Among other arguments, Defendants urged the Court not to permit the School Districts' public-nuisance claims to proceed because doing so would dramatically expand the law of public nuisance and put this Court at odds with the vast majority of courts that have declined to apply nuisance law to harms unrelated to land use. Defendants also asked the Court to dismiss the School Districts' negligence claims because—even assuming Defendants owe duties to individual users of their services—Defendants do not owe any duty to a school district to

---

[1] Those states are: Alaska, Arizona, California, Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Nevada, North Carolina, Pennsylvania, Rhode Island, South Carolina, Utah, and Virginia.

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

protect it from incurring increased expenses relating to the alleged harms. Defendants further explained that the public nuisance and negligence claims are entirely derivative of harms the School Districts contend were suffered by others and, in any event, the School Districts fail to allege proximate causation.

On October 24, 2024, the Court issued its first order granting in part and denying in part Defendants' motion to dismiss, which covered threshold issues applicable to both negligence and public nuisance, as well as the substantive elements of the negligence claims. Oct. 24, 2024 Order (Dkt. 1267), available at *In re Soc. Media*, 2024 WL 4673710, at *1. Then, on November 15, 2024, the Court issued an order granting in part and denying in part that motion as regarding the remaining public-nuisance issues. Nov. 15, 2024 Order (Dkt. 1332).

As relevant here, the Court's November 15, 2024 Order dismissed only those public-nuisance claims arising under the laws of Illinois, New Jersey, Rhode Island, and South Carolina. Dkt. 1332 at 27–28. It declined to "impose a land- or product-related limitation on a public nuisance cause of action under the laws of the remaining fifteen states." *Id*. at 28. In the absence of controlling laws from those jurisdictions, the Court construed silence from the state courts as permission to expand public nuisance law in those states and allow plaintiffs to proceed with their claims—and, in the cases at least of California and Florida, the Court permitted plaintiffs' claims to proceed in spite of state court authority rejecting such claims. *Id*. In its October 24, 2024 Order, the Court also deemed the derivative-injury rule inapplicable, reasoning that the School Districts' injuries are "related to, but unique from, the alleged injuries of their minor students." 2024 WL 4673710, at *13.

### III.    ARGUMENT

An immediate interlocutory appeal from an order is warranted where the order involves one or more controlling questions of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). For the reasons explained below, Defendants respectfully submit that these criteria are satisfied here and request certification of the Court's October 24, 2024 and November 15, 2024 Orders for immediate appeal.

**A.      The Orders Involve Controlling Questions of Law.**

The Orders necessarily involve questions of law because "[t]he adequacy of [a plaintiff's] claims under" Rule 12(b)(6) "raises a question of law." *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021). There is no doubt that those questions are controlling. Indeed, Judge Kuhl's contrary ruling in the JCCP on identical claims entirely resolved the school districts' claims in that matter.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981); *accord Roth v. Foris Ventures, LLC*, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (Gonzalez Rogers, J.) (same). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation" as a whole. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Williams v. Alameda Cnty.*, 657 F. Supp. 3d 1250, 1255 (N.D. Cal. 2023) (same); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (rejecting argument that "no question of law can be controlling unless it determines who will win on the merits"). Certification is proper if even "one question support[s] certification." *Nat'l Ass'n of African Am.-Owned Media v. Charter Comms.*, 2016 WL 10647193, at *4 (C.D. Cal. Dec. 12, 2016). Here, there are several controlling questions of law that would, at a minimum, materially advance the outcome of the litigation, and may even dispose of some School Districts' claims altogether.

*First*, whether the nuisance claims of School Districts are properly pleaded is a controlling question of law. This question is "a purely legal one that can be resolved quickly without delving into a particular case's facts." *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019). Disposing of all public nuisance claims in the MDL as a matter of law would materially affect the outcome of litigation because it would significantly narrow the claims in the cases and limit the available remedies.

*Second*, a Ninth Circuit holding that the First Amendment bars imposition of a duty in this context would foreclose Plaintiffs' negligence claims entirely.

*Third*, and finally, whether the School Districts' attempts to recover costs for providing mental health care treatment to students are impermissibly derivative of harms incurred by those students is a

4

1    controlling question of law. The question again is purely legal. *Henley v. Jacobs*, 2019 WL 8333448,

2    at *2 (N.D. Cal. Oct. 25, 2019). Moreover, because those claims represent the principal category of

3    alleged injuries that have survived the Court's motion to dismiss decisions, clarification that those

4    claims are foreclosed would materially advance the outcome of the litigation by significantly narrowing

5    the scope of damages that the School Districts may recover.

6         **B.    Substantial Grounds Exist for Difference of Opinion.**

7         A "substantial ground for difference of opinion exists where reasonable jurists might disagree

8    on an issue's resolution." *Reese*, 643 F.3d at 688. "One of the best indications that there are substantial

9    grounds for disagreement on a question of law" is where, as here, "other courts have, in fact, disagreed."

10   *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) (quoting *Heaton v.

11   Soc. Fin., Inc.*, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016)); *see also Reese*, 643 F.3d at 688

12   ("[A] novel issue may be certified for interlocutory appeal without first awaiting development of

13   contradictory precedent."). This second criterion of Section 1292(b) is satisfied here as there is a

14   substantial ground for difference of opinion on the Court's conclusions allowing the School District

15   claims to proceed.

16        **1.    There Is Substantial Ground for Difference of Opinion on Whether the

17             School Districts' Nuisance Claims are Viable.**

18        There is substantial ground for difference of opinion as to the Court's decision to allow the

19   majority of School Districts' public nuisance claims to proceed notwithstanding the absence of state

20   authority recognizing such claims. Reasonable jurists could disagree—and, in fact, have disagreed—

21   on whether this Court's decision to allow claims to proceed unless controlling state supreme court

22   authority expressly precluded the claims was an appropriate exercise of federal power under *Erie

23   Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Moreover, Judge Kuhl, in considering identical public

24   nuisance claims, made a contrary ruling from this Court under California and Florida law.

25        In largely denying Defendants' motion to dismiss the School Districts' nuisance claims, the

26   Court acknowledged that courts in six jurisdictions have expressly prohibited claims like those asserted

27

28

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

here.[2]  Order at 9, 11.  And in 13[3] jurisdictions, the Court recognized that state courts have yet to "directly address[] th[e] potential limitation[s]" to public nuisance claims raised by Defendants: (1) whether public nuisance law requires a nexus with defendants' use of land or property, and (2) whether public nuisance extends to claims based on the marketing or dissemination of consumer products or services.  Order at 4; *see also id.* at 13.  Rather than leave it to the state courts to decide whether to expand tort law in the novel way the School Districts request, the Court elected to permit the School Districts' claims to proceed because no state authority in those jurisdictions ***prohibited*** it.

That reasoning conflicts with the principles underlying *Erie* and Ninth Circuit precedent holding that plaintiffs in a "federal forum are not entitled to trailblazing initiatives under state law." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1043 (9th Cir. 2011) (alterations omitted) (quoting *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 262–63 (1st Cir. 1997)).  The *Erie* doctrine is "deeply rooted in notions of federalism."  *Boyle v. United Technologies Corp.*, 487 U.S. 500, 517 (1988).  The *Erie* Court recognized that when a federal court "declare[s]" a substantive rule of state law not firmly anchored in clear state legislative or decisional authority, it "invade[s] rights [that] … are reserved by the Constitution to the several States" and engages in "an unconstitutional assumption of [state] powers."  304 U.S. at 79-80.  Thus, a "federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications [that] may commend themselves to the federal court, but [that] have not commended themselves to the State in which the federal court sits." *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975).

In keeping with *Erie*, the Ninth Circuit has held that federal courts "should hesitate prematurely to extend the law in the absence of an indication from the state courts or the state legislature that such an extension would be desirable."  *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (alterations omitted).  Indeed, this Court acknowledged that other courts in this Circuit have held that "a federal court sitting in diversity should in general take a restrictive approach on unclear issues of state law."  Order at 8 (citing *Davidson v. Apple, Inc.,* 2017 WL 3149305, at *18 (N.D. Cal. July 25,

---

[2] Those jurisdictions are Illinois, New Jersey, Rhode Island, South Carolina, Oklahoma, and Connecticut.

[3] Those states are Alaska, Arizona, Colorado, Georgia, Indiana, Kentucky, Louisiana, Maryland, Nevada, North Carolina, Pennsylvania, Utah, and Virginia.

2017)).  Here, reasonable jurists could disagree as to whether the School Districts' novel public nuisance claims should proceed under *Erie* in the absence of state law recognizing such theories of liability.

As to the first issue—whether public nuisance law requires a nexus with defendants' use of land or property—the Court recognized that public nuisance claims have "historically been linked to the use of land by the one creating the nuisance" and that recognizing the School Districts' claims here would be to expand liability beyond those "traditional bounds."  Order at 3 (quoting *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 724 (Okla. 2021)).  But rather than adopting an interpretation that restricts liability, as the Ninth Circuit and other courts in this Circuit have counseled in similar circumstances for federal courts sitting in diversity, this Court chose to "align[] with the logic and approach" taken by a single district court that "permitted certain public nuisance claims in the absence of state case law to the contrary."  *Id.* (citing *In re JUUL Labs, Inc., Mktg., Sales Practices, and Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 647 (N.D. Cal. 2020));[4] *compare Davidson*, 2017 WL 3149305, at *18 ("[A] federal court sitting in diversity should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of [the state] decides differently.").[5]

The Court adopted a similarly expansive approach to the second issue—whether public nuisance law extends to the marketing or dissemination of consumer products or services.  The Court concluded that the high courts of 16 states have not addressed the question and that no binding authority in any jurisdiction at issue has extended public nuisance law to such circumstances.  Order at 13.  In fact, of the 19 states in which the School Districts reside, only three state supreme courts have squarely addressed whether public nuisance law can encompass claims based on consumer products or services, and all three concluded that it cannot.  Order at 10–11 (discussing Illinois, New Jersey, and Rhode

---

[4] The Court noted later in its opinion, in discussing whether the School Districts had sufficiently pled special injury, that "[e]very court that has held that school districts can bring public nuisance claims goes against defendants' proposition."  Order at 27.  But *JUUL* is the *only* case in the country to have allowed public nuisance claims by school districts to proceed in circumstances like the ones at bar.

[5] As the Court notes, Defendants concede that two states, California and Indiana, do not require a connection to a defendant's use of land.  Order at 3–4.  Defendants do not challenge the denial of the motion as to claims in those jurisdictions on those grounds.

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

Island law).[6]  And the latest Restatement disfavors such an extension of public nuisance liability in this context, confirming that public nuisance law remains limited to its traditional bounds.  Order at 18 (citing Public Nuisance Resulting in Economic Loss, Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. b, g (2020)).  Nonetheless, this Court chose to create a multifactor test regarding the "reasonableness of the interference" alleged—a test not previously articulated or used by any other court in any jurisdiction—to ultimately determine that the School Districts stated a cognizable claim. Order at 16–21.

Faced with similarly undecided areas of state law, other courts have reached the opposite conclusion: they have declined to expand novel theories of liability where no state authority expressly recognized such theories.  *See, e.g.*, *Cervantes*, 656 F.3d at 1043 (refusing to permit a "wrongful foreclosure cause of action" where the "state courts have not yet recognized one"); *Vasquez v. Coast Valley Roofing Inc.*, 2007 WL 1660972, at *9–10 (E.D. Cal. June 6, 2007) (noting that "[b]ased on the absence of any [state] authority, [and] the reasoning of the out-of-state cases" and other persuasive authorities, "[t]here is no reason to extend tort law" in conversion context); *McDonald v. Gen. Motors LLC*, 2024 WL 1601844, at *6 (C.D. Cal. Feb. 23, 2024) (holding fraudulent concealment claim barred by the economic loss rule where the applicability of the rule under state law was unclear because, "to

---

[6] As noted in Defendants' motion to dismiss briefing, of the sven state supreme courts to have considered public nuisance claims similar to those brought by the School Districts, five (Connecticut, Illinois, New Jersey, Rhode Island and Oklahoma) had rejected the expansion of public nuisance law, while two (Ohio and Indiana) had reached a contrary conclusion.  Dkt. 723 at 20.  The count is now *six* of the seven *against* expansion:  just last week, the Ohio Supreme Court held that *Cincinnati v. Beretta USA Corp.*, 768 N.E.2d 1136 (Ohio 2002), was abrogated by statute, and therefore the public nuisance claims brought by Ohio cities and counties in the *In re National Prescription Opiate Litigation* MDL should have been dismissed at the outset.  The court held:  "all public-nuisance claims alleging 'that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public' have been abrogated by the [Ohio Products Liability Act], including those seeking equitable relief."  *In re Nat'l Prescrip. Opiate Litig.*, —N.E. 3d—, 2024 WL 5049302, at *7 (Ohio Dec. 10, 2024).  Now only one state supreme court in the country has allowed public nuisance claims bearing any resemblance to the School Districts' claims—and even that case is distinguishable from Plaintiffs' claims here, because it arguably involved the community's ability to be physically safe in public places.  *See City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003).

There were no Ohio School District plaintiffs at the time of Defendants' motion to dismiss briefing, but several have recently filed suit.  Under the Ohio Supreme Court's order, the nuisance claims of any Ohio school district plaintiffs should be dismissed.

the extent any uncertainty" exists in state law, "it should be resolved so as to limit rather than expand liability"); *In re Qualcomm Antitrust Litig.*, 2023 WL 121983, at *18 (N.D. Cal. Jan. 6, 2023) (refusing to expand state antitrust law to "a new context" "[w]ithout any basis in caselaw"); *Ryan v. Santa Clara Valley Transportation Auth.*, 2017 WL 3142130, at *9 (N.D. Cal. July 25, 2017) (declining to recognize novel private right of action under state law "given the dearth of case law," noting "federal courts should 'hesitate prematurely to extend' state law").

As to California and Florida, not only is there "substantial ground for difference of opinion" as to whether the School Districts' claims are legally viable, "other courts have, in fact, disagreed" with this Court's holdings on those issues. *Brickman*, 2017 WL 1508719, at *3. Judge Kuhl dismissed identical nuisance claims brought by school districts from those jurisdictions, further demonstrating disagreement over this Court's "*Erie* guess" as to California and Florida law. *Soc. Media Cases*, No. JCCP 5255 (Cal. Super. Ct. June 7, 2024) ("JCCP Order") at 29–35.

As this Court recognized in its Order, "a split in authority exists in California" on the viability of School Districts' public nuisance claims, and "three California Court of Appeal cases found differently" than this Court. Order at 14. The Court relied on the Ninth Circuit's decision in *Ileto v. Glock Inc.*, 349 F.3d 1191, 1213 (9th Cir. 2003), to support its holding that California law recognizes product-based public nuisance claims. Order at 21. But not only was there a strong dissent issued in *Ileto*, *see Ileto v. Glock, Inc.,* 370 F.3d 860, 862 (9th. Cir. 2004) (Callahan, J., dissenting from denial of reh'g en banc), multiple California appellate decisions have disagreed with *Ileto*'s reasoning and purported application of California law. *See In re Firearm Cases*, 126 Cal. App. 4th 959, 991 (2005) (agreeing with "cogent policy reasons against extending nuisance liability" to manufacturers of allegedly dangerous products); *City of Modesto Redevelopment Agency v. Super. Ct.*, 119 Cal. App. 4th 28, 39–40 (2004) (explaining that "the law of nuisance is not intended to serve as a surrogate for ordinary products liability"); *see also* JCCP Order at 22 n.2 (noting that "the reasoning of [*Ileto*] subsequently was criticized by the California Court of Appeal in *In re Firearm Cases* (2005) 126 Cal.App.4th 959, which granted summary judgment in favor of gun manufacturers, distributors and retailers, relying on the reasoning articulated by the dissenting Ninth Circuit judges in *Ileto*").

1    Judge Kuhl, considering identical claims in the California JCCP, noted this authority and found

2    that "[t]he California courts … have held that a claim for public nuisance cannot be used by a private

3    person or entity to attempt to remedy the collective effects of individual injuries to health that arise from

4    distribution of products or from other actions by a defendant that may give rise to a duty toward the

5    defendant's customers."  JCCP Order at 29.  And "no prior [California] case law support[s] the notion

6    that nuisance could be based on harms caused by a product."  *Id.* at 29–30 (citing *City of San Diego v.*

7    *U.S. Gypsum Co.*, 30 Cal. App. 4th 575, 585-86 (1994).

8    This Court, on the other hand, "provide[d] more deference to the Ninth Circuit's approach in

9    *Ileto*" and gave little weight to California appellate courts on issues of California state law—authority

10    that the Court acknowledges is "binding" on California state courts and compels a contrary result to

11    that of this Court.  Order at 14 n.12.  Defendants respectfully submit that the California appellate courts

12    are entitled to the most deference on this issue, but at a minimum, this "split in authority," *id.*,

13    conclusively demonstrates that "reasonable jurists might [(and do)] disagree" about whether California

14    recognizes product-based[7] public nuisance claims.

15    Regarding Florida, the Court noted that the parties "offer[ed] competing authority" as to

16    whether Florida public nuisance law is strictly limited to land use and whether it can be based on

17    allegedly defective products.  Order at 4.  This demonstrates again that, at a minimum, reasonable

18    jurists could differ—and in fact have differed—on the issue.

19    There is also a substantial ground for a difference of opinion over whether authority on Florida

20    public nuisance law is actually "competing."  Only Defendants cited **Florida** court decisions on the

21    issue, citing a Florida Supreme Court holding that "a public nuisance … is an unlawful use of one's

22    own property in such way as to cause material annoyance, discomfort, or hurt to the public."  *City of*

23    *Pompano Horse Club et al. v. State*, 93 Fla. 415, 456 (1927).  Defendants also cited a Florida trial court

24    opinion (**affirmed on appeal**) rejecting a public nuisance claim concerning gun violence because

26    _____

[7] The Court stated that Defendants have taken contrary positions as to whether their platforms are
"products."  Order at 9. But Defendants have consistently maintained that their platforms are not
products and did not argue otherwise in their motion to dismiss the School Districts' claims.  Rather,
Defendants noted that the reasoning of the cases that refuse to expand nuisance liability to products
apply with even greater force to online communication services.  Dkt. 601 at 36.

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

"[p]ublic nuisance does not apply to the design, manufacture, and distribution of a lawful product," in part because a "separate body of law (strict product liability and negligence) has been developed to apply to the manufacture and design of products." *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001)).

Plaintiffs, in contrast, cited only an **Ohio** federal court's interpretation of Florida law. ECF No. 668 at 45 (citing *In re Nat'l Prescription Opiate Litig.—West Boca*, 452 F. Supp. 3d 745, 775 (N.D. Ohio 2020)). The Ohio court, however, ignored *Penelas* as an unpublished order and instead relied on a nuisance *per se* case that dealt with violation of an ordinance. Plaintiffs do not contend there is a nuisance per se, and *Estep v. State ex rel. Caro*, on which the Ohio court relied, does not establish that Florida allows for non-property-related claims outside of legislatively declared nuisances per se. *In re Nat'l Prescription Opiate Litig.—West Boca*, 452 F. Supp. 3d at 775 (citing *Estep*, 23 So. 2d 482, 483 (Fla. 1945)).

When faced with this same "competing" authority, Judge Kuhl noted that "Florida courts … have refused to recognize liability under a public nuisance theory when a plaintiff seeks recovery based on collective injuries to a group of people who have been injured by a defendant's conduct." JCCP Order at 33. Accordingly, the School Districts' public nuisance claims, which aggregate individualized injuries, "do[] not qualify as the sort of injury to the health of citizens in general that may give rise to a claim for public nuisance under Florida law." *Id.* at 34. In addition to *Penelas*, Judge Kuhl cited heavily to a Florida appellate decision in *Cunningham v. Anchor Hocking Corp.*, 550 So. 2d 93 (Fla. Dist. Ct. App. 1990), which explained further that a party lacks standing to sue for public nuisance when it has not suffered any damages in the exercise of a right common to the general public. JCCP Order at 33–35. As Judge Kuhl explained, even if the public health was injured by Defendants' platforms, the School Districts cannot assert a right common to the general public because "the School Districts are entities, not people" . . . [and] they cannot bring a nuisance claim under Florida law based on alleged harm to public health." *Id.* at 35. This Court did not acknowledge Judge Kuhl's contrary ruling or offer any attempt to distinguish her ruling.

* * *

In short, reasonable jurists could disagree as to whether this Court's decision to expand the public nuisance doctrine in states that have not clearly spoken to the issue was consistent with its obligations under *Erie* not to extend the law in the absence of an indication from the states that such an expansion would be warranted. Likewise, reasonable jurists could disagree with this Court's "*Erie* guess" as to California and Florida, given the minimal, non-binding support for the expansion in existing state law and the fact that Judge Kuhl reached a contrary conclusion in the face of the very same appellate authority.

## 2. There Is Substantial Ground for Difference of Opinion on Whether the School Districts' Negligence Claims Are Viable.

There is also substantial ground for difference of opinion as to the Court's imposition of a negligence-based duty owed to School Districts, notwithstanding the absence of state authority recognizing such claims. Indeed, in sharp contrast with this Court, Judge Kuhl expressly rejected the imposition of such a duty—specifically as to California and Florida. There is additional substantial ground for difference of opinion considering the myriad court cases that have enjoined, on First Amendment grounds, statutes that would impose the type of relief that the School Districts seek.

To start, reasonable jurists could disagree regarding whether the School Districts alleged a sufficiently close connection between Defendants' conduct and the School Districts' alleged injuries to give rise to a tort-based duty. At the very least, reasonable jurists could disagree with the Court's decision to impose such a duty in the absence of supporting authority. *See supra* at 6–7; *Cervantes*, 656 F.3d at 1043. The School Districts do not allege that they were injured as a result of their own use of Defendants' services. Instead, they allege, without accounting for other school district or life circumstances, that their students suffered some undefined injuries as a result of their use of Defendants' services and that the School Districts incurred expense in responding to their students' alleged injuries. Other courts have correctly rejected similar efforts to impose a duty in these circumstances as limitless and contrary to public policy. *E.g.*, *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 143 (2018); *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022). In particular, reasonable jurists have rejected the imposition of similar duties against websites, game manufacturers, broadcasters, and other publishers. *E.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 694

(6th Cir. 2002) (finding websites, video game manufacturers, and movie producers owed no duty to students shot and killed by classmate); *Sanders v. Acclaim Ent., Inc.*, 188 F. Supp. 2d 1264, 1273 (D. Colo. 2002) (finding video game makers and movie producers owed no duty under Colorado law to survivors of school shooting); *Zamora v. Columbia Broad. Sys.*, 480 F. Supp. 199, 200-01 (S.D. Fla. 1979) (finding broadcasting companies owed no duty "to avoid making 'violent' shows available"); *Bill v. Super. Ct.*, 187 Cal. Rptr. 625, 631 (1982) (defendants owed no duty to plaintiff injured by a third party allegedly incited to violence by defendants' broadcast).

As Judge Kuhl explained in rejecting the imposition of a duty in identical circumstances, "[u]nder the School Districts' theory of liability, any company that causes mental or emotional harm through interactions with a customer would be liable to any individuals or entities that are then harmed by that customer if a trier of fact might conclude that the mental or emotional harm played some role in causing the customer to 'act out' and harm those individuals or entities. Expanding tort law to allow for this and similar suits for harm caused by mentally or emotionally harmed customers 'would throw open the courthouse doors to a deluge of lawsuits that would be both hard to prove and difficult to cull early in the proceedings.'" JCCP Order at 19. A reasonable jurist could readily conclude that social media companies do not owe duties to third parties who allegedly incur increased costs as a result of others' use of their services.

As to California and Florida, again, "other courts have, in fact, disagreed" with this Court's imposition of a duty owed to School Districts under the laws of those states. *Brickman*, 2017 WL 1508719, at *3. Judge Kuhl found that neither California nor Florida would recognize a negligence-based duty owed to School Districts in these circumstances. Under California law, "[c]ourts ... invoke[ ] the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act." *Modisette*, 30 Cal. App. 5th at 143. Importantly, "foreseeability is not synonymous with duty; nor is it a substitute." *Id.* at 144. Rather, there must be a "sufficiently close connection" between the defendant's alleged conduct and the plaintiff's alleged injury in order for a duty to exist. *Id.* at 145, 140 (Apple owed no duty to a third party who was killed as a result of a driver's iPhone use, despite allegations that a "body of studies and data ... demonstrate the compulsive/addictive nature of smartphone use).") This Court's order does not cite or address

*Modisette*, despite its extensive focus in the briefing and at oral argument. Florida courts take a similar approach. For a duty to exist under Florida law, it is not enough for an alleged injury to be "within the realm of … conceivable possibility"; rather, it must be "objectively reasonable to expect the specific danger causing the plaintiff's injury." *Grieco*, 344 So. 3d at 23, 25 (compressed air manufacturer owed no duty to protect against a user getting high and causing a car accident; "a duty of reasonable care is not owed to the world at large but arises out of a relationship between the parties"). Judge Kuhl's contrary ruling to the Court's on these issues was not unreasonable.

There is also substantial ground for a difference of opinion as to this Court's decision to impose a duty despite the significant chilling effect it would have on free speech. Reasonable jurists have recognized that the right to free speech under the First Amendment (and state analogs) are an important public policy factor limiting tort-based duties. *Olivia N. v. Nat'l Broad., Co.*, 178 Cal Rptr. 888, 893 (1981) (declining to impose a duty in light of First Amendment considerations); *De Filippo v. Nat'l Broad. Co., Inc.*, 1980 WL 336092, *3 (R.I. Super. Ct. June 8, 1980) (similar); *Bill*, 187 Cal. Rptr. at 633 (similar); *Zamora*, 480 F. Supp. at 200 (similar); *see also* Third Restatement § 7(b) (describing that public policy limits tort liability). This Court's dismissal of any concerns about the chilling effect on users' First Amendment rights is in considerable tension with cases that have more robustly applied the First Amendment in this specific context—including the US Supreme Court's recent decision in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024). Federal courts in California, Arkansas, Ohio, and Utah have all recently enjoined state statutes that regulate many of the same aspects of social media platforms addressed by the school districts. *E.g.*, *NetChoice, LLC v. Bonta*, 2023 WL 6135551 (N.D. Cal. Sept. 18, 2023), *aff'd in part, vacated in part*, 113 F.4th 1101 (9th Cir. 2024) (enjoining provisions of California Age Appropriate Design Act requiring platforms to make disclosures about whether platform features could pose a risk to minors); *NetChoice, LLC v. Griffin*, 2023 WL 5660155, at *1 (W.D. Ark. Aug. 31, 2023) (enjoining a state law that would have required "social media companies to verify the age of all account holders who reside in Arkansas" and allow minors to use their services only with verified parental consent); *NetChoice, LLC v. Yost*, 716 F. Supp. 3d 539, 546 (S.D. Ohio 2024) (enjoining an Ohio law that similarly sought "to require certain website operators to obtain parental consent before allowing any unemancipated child under the age of sixteen to register or create

1   an account on their platform"); *NetChoice, LLC v. Reyes*, 2024 WL 4135626, at *15 (D. Utah Sept.

2   10, 2024) (enjoining on First Amendment grounds a state statute seeking to regulate social media

3   platforms on the theory that they "contain 'nicotine-like additives'—namely, seamless pagination,

4   autoplay, and push notification systems—designed to foster 'over-indulgence' and 'user addiction'").

5       Given the Supreme Court's recent pronouncement that, "[d]espite the relative novelty of the

6   technology," Defendants are no differently situated than a traditional publisher that "select[s] and

7   shape[s] other parties' expression into their own curated speech products," *Moody*, 603 U.S. at 717,

8   727, reasonable jurists could certainly differ as to whether the First Amendment bars imposing a duty

9   that would penalize Defendants for publishing and distributing content.

10          **3.      There Is Substantial Ground for Difference of Opinion on Whether the**

11                  **School District Plaintiffs May Recover the Costs of Providing Mental**

12                  **Health Care Treatment to Students.**

13      Finally, there is substantial ground for difference of opinion over whether the School Districts

14  may recover the costs of providing mental health care treatment to their students.

15      Most notably, the Court's ruling is arguably foreclosed by the Ninth Circuit's decision in *Ass'n*

16  *of Washington Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001) ("*Washington*

17  *Hospitals*"). There, public hospital districts ("Hospital Districts") sued "Tobacco Firms to recover their

18  increased costs for treating their patients' tobacco-related illnesses." *Id.* at 700. The Ninth Circuit

19  affirmed dismissal of the Hospital Districts' public nuisance and other common law claims on

20  proximate causation grounds, explaining that the Hospital Districts were impermissibly "attempting to

21  recover damages that are derivative of the injuries suffered by smokers." *Id.* at 703; *see also id.* at 707

22  ("The Hospital Districts' common law claims thus fail for the same reasons that their federal antitrust

23  and RICO claims failed: the Tobacco Firms' unlawful conduct was not the proximate cause of their

24  injuries."). Put another way, the Hospital Districts' claims failed because, "[w]ithout any injury to

25  smokers, plaintiffs would not have incurred the additional expenses in paying for the medical expenses

26  of those smokers." *Id.* at 703.

27      In its Order, the Court distinguished *Washington Hospitals* on the ground that "none of the

28  school district's claims are 'pass-through' costs" and the School Districts' alleged injuries were "borne

exclusively by the school districts." 2024 WL 4673710, at *13. But reasonable jurists could disagree about whether the School Districts' alleged harms are meaningfully different from those alleged by the Hospital Districts. In *Washington Hospitals*, the Hospital District plaintiffs sought to recover only for increased healthcare costs that ***they*** incurred—they did not seek to recover for any healthcare costs or other injuries borne by or passed through to their patients. *See* 241 F.3d at 700 (Hospital Districts sought "to recover ***their*** unreimbursed costs for treating patients" (emphasis added)); *see id.* (tobacco firms' alleged conduct "prevented the Hospital Districts from instituting more effective smoking cessation programs" and increased Hospital Districts' "costs for treating tobacco-related illnesses"). In other words, the Hospital Districts sought to recover only for injuries that were borne exclusively by the Hospital Districts themselves, just as do the School Districts.

The School Districts' alleged injuries, in fact, closely mirror the injuries that the Ninth Circuit deemed impermissibly derivative in *Washington Hospitals*. The School Districts allege that they have had to "expend[], divert[], and increas[e] resources to develop additional mental health resources" to treat students' mental health issues allegedly caused by the students' use of Defendants' services. Compl. ¶ 212(p); *see also, e.g., id.* ¶ 212(k) ("[h]iring additional mental health personnel"); ¶ 212(q); ¶ 238 ("offer[ing] … outpatient therapy [and] behavior health services"). The School Districts therefore allege that they have incurred increased costs to treat their students' mental health issues allegedly caused by those students' use of Defendants' services. That is materially indistinguishable from the Hospital Districts' allegations that they incurred increased costs to treat their patients' health issues allegedly caused by their patients' use of the tobacco firms' products. The costs that the Hospital Districts sought to recover were no more "passed on" than are the costs that the School Districts seek to recover here. It is clear that the School Districts could not have incurred increased mental health treatment costs without the alleged injury to their students.

Rather than follow the Ninth Circuit's binding decision in *Washington Hospitals*, the Court relied on *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 575 (N.D. Cal. 2020) ("*JUUL*"). Reasonable jurists, however, could disagree regarding the applicability of that non-binding decision. In *JUUL*, the school districts did not allege that they incurred any direct costs related to the ***treatment*** or ***care*** of tobacco-induced illnesses allegedly suffered by students. *See*

*id.* at 621 (noting this "significant distinction[]"). Instead, the school districts' alleged costs stemmed from preventative efforts to deter students from illegally using e-cigarettes at school, including "physical alterations to [school] properties to address and deter further e-cigarette use," "training staff address e-cigarette use," and developing "programs address e-cigarette use." *Id.* at 620–21. In contrast, the vast majority of the alleged harms suffered by the School Districts that remain at issue in these cases arose directly from the costs of ***treating*** students for alleged mental health harms. *See, e.g.*, Compl. ¶¶ 212(p), 212(k), 212(q), 238. Thus, the "significant distinction[]" identified by the *JUUL* court in fact cuts the other way here. At the least, reasonable jurists could disagree about whether the School Districts' attempt to recover mental health treatment costs is foreclosed by the Ninth Circuit's decision in *Washington Hospitals*.

This Court further relied on *JUUL* to conclude that the School Districts' claims may proceed because the damages they incurred are "distinct" from those suffered by personal injury plaintiffs. As noted above, however, the School Districts' alleged mental health care expenditures are no more distinct from their students' alleged injuries than were the Hospital Districts' alleged health care expenditures in *Washington Hospitals* distinct from their patients' alleged injuries. Moreover, it will almost always be the case that a treater-plaintiff's alleged damages will be in some ways "distinct" from the directly injured party's underlying harms; indeed, in every case dismissed on derivative injury grounds, the plaintiff sought to recover an economic injury that it (rather than its patient or insured) suffered. As the Ninth Circuit made clear, however, the determinative question is not whether the injuries are distinct but whether, "without any injury to [a third party]," the plaintiffs would "have incurred the additional expenses" that form the basis of their claims. *Wash. Hosp. Dists.*, 241 F.3d at 702. This standard is clearly met here. "[T]hat some of plaintiffs' damages are different from the damages suffered by direct victims … makes them no less derivative." *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 425 (3d Cir. 2002).

In addition to *Washington Hospitals*, other courts have dismissed comparable claims because the plaintiffs' alleged injuries were derivative of harms suffered by third parties. Indeed, "[m]ultitudinous other state and federal appellate courts have [held] that third-party payors or providers of medical services … have no cognizable claims under … state common law to recover medical

expenses from the tobacco companies, because the plaintiffs' alleged injuries were entirely derivative of the injuries to the smoker-consumers of the tobacco companies' products."  *State of Sao Paulo of Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1125 (Del. 2007); *see Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849 (6th Cir. 2003) (collecting decisions from eight federal courts of appeal "uniformly" holding that "such claims must fail because the alleged injuries are too remote"); *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) (dismissing claims because "without any injury to smokers, [insurers] would not have incurred the additional expenses in paying for the medical expenses of those smokers").  For the reasons explained above, a reasonable jurist could conclude that the School Districts' injuries—*i.e.*, increased costs they allegedly incurred to provide mental health care treatment to students—is no less remote than the increased costs that medical payors and providers incurred to provide health care treatment to smokers.

Finally, this Court's decision is in tension with Judge Kuhl's ruling on identical claims in the related California coordinated proceedings.  There, Judge Kuhl recognized that expanding "the common law in order to provide a remedy for those who are indirectly affected by the negative consequences of social media for youth would create a broad web of indeterminate liability that the common law has heretofore refused to impose."  JCCP Order at 2; *see id.* at 35 (rejecting effort "to use nuisance to expand liability beyond the immediate victims of Defendants' social media platforms").  It is precisely because of such concerns that, "at common law, … a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [i]s generally said to stand at too remote a distance to recover."  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268–69 (1992).  Reasonable jurists can and have disagreed about whether the School Districts impermissibly seek to recover for harms that flow from alleged injuries to their students.  An immediate appeal is therefore warranted.

### C.    Finally, Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.

The last criterion under Section 1292(b) is also met.  Interlocutory review of these issues would "materially advance the ultimate termination of the litigation," particularly in the context of an MDL comprising numerous individual cases, because getting an immediate answer to these threshold

questions "'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026–27). The Court need look no further than Judge Kuhl's contrary ruling in the JCCP, which entirely resolved the school district's claims in that matter. That is so for multiple reasons.

*First*, immediate appellate review would clarify the nature and scope of the remaining claims and could streamline discovery in significant ways. *See supra* Part III.A; *DeLuca v. Farmers Ins. Exch.*, 2019 WL 4260437, at *5 (N.D. Cal. Sept. 9, 2019) ("This factor is closely related to the question of whether an issue of law is 'controlling'" (quotation and alterations omitted)); *Rollins v. Dignity Health*, 2014 WL 6693891, at *4 (N.D. Cal. Nov. 26, 2014) ("the considerations of this factor overlap significantly with the first one"). This alone is more than enough to "materially advance" the litigation. *See, e.g.*, *Gillespie v. Centerra Servs. Int'l, Inc.*, 2022 WL 18584762, at *3 (C.D. Cal. Oct. 26, 2022) (resolving some, but not all, claims would materially advance litigation); *Rollins*, 2014 WL 6693891, at *4 (noting an immediate appeal would materially advance the litigation because certified issue "will clearly impact the course of further motions and discovery"); *Jaco v. WinCo Holdings, Inc.*, 2019 WL 2615739, at *5–6 (E.D. Cal. June 26, 2019) ("prevent[ing] a duplicative discovery process" materially advanced the litigation); *accord Reese*, 643 F.3d at 688 ("a final, dispositive effect on the litigation" is not required).

*Second*, numerous "[c]ourts within the Ninth Circuit have held that resolution of a question materially advances the termination of litigation" when an interlocutory appellate ruling could "save the courts and the litigants unnecessary trouble and expense." *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021); *see also, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F.Supp.3d 374, 391, 394 (S.D.N.Y. 2019) (recognizing certification would materially advance "complex and substantial multidistrict litigation" due to "the realities of litigation of this size and complexity"). If, for example, School Districts are permitted to continue litigating their cases based on alleged harms incurred to provide mental health treatment to their students, and the Ninth Circuit ultimately holds that those claims are impermissibly derivative, then the Court and the parties will have undergone massive wasted effort—in the form of fact and expert discovery, summary judgment

motions, as well as any trial.  *See, e.g.*, *Rollins*, 2014 WL 6693891, at *4 ("Importantly, if the Court were to deny certification now . . . but subsequently be reversed by the Ninth Circuit, the Court would then need to consider the remaining issues . . . that much later, after significant expense will have been incurred.").  These wasted efforts would be compounded in this MDL given that the parties must prepare for multiple bellwether trials.  Thus, an immediate appeal on these issues could "'minimiz[e] the total burdens of litigation on [the] parties and the judicial system by accelerating or at least simplifying trial court proceedings.'"  *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (quoting 16 Wright & Miller, *Federal Practice & Procedure* § 3930 at n.40 (2d ed.)).

*Third,* all of this is especially salient in the context of MDL proceedings, where certification of interlocutory orders is "favored."  *Hill v. Henderson*, 195 F.3d 671, 677 (D.C. Cir. 1999); *accord Cintas*, 2007 WL 1302496, at *2; 16 Wright & Miller, *Federal Practice & Procedure* § 3929 (3d ed. Apr. 2023 Update) ("interlocutory appeal is appropriate . . . in 'big' cases").[8]  That makes sense because, in MDLs, "the cost of discovery . . . will impose a heavy burden on the parties and the Court," and an immediate appeal "could result in a significant reduction of that burden or even eliminate it altogether."  *Silbersher*, 2021 WL 292244, at *3.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its Orders Granting in Part and Denying in Part Motions to Dismiss (Dkts. 1267, 1332) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

---

[8] *See also, e.g.*, *In re Multidistrict Vehicle Air Pollution*, 481 F.2d 122, 124 (9th Cir. 1973) (considering certified interlocutory appeal under § 1292(b) from pretrial proceedings in an MDL); *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d at 393 ("[B]ecause the Court's [order] arises in the context of an MDL, the efficiencies to be gained by interlocutory appeal are particularly substantial."); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) ("the need for § 1292(b) review is particularly compelling" due to "the nationwide scope and importance of this multidistrict litigation"); *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) ("Delaying [interlocutory] review would burden not only the parties, but the judicial system itself."), *appeal accepted*, No. 03-1817 (4th Cir. 2004).

20

1    Dated: December 16, 2024                    Respectfully submitted,

2

3                                                **COVINGTON & BURLING LLP**

4
                                                 */s/ Phyllis A. Jones*
5                                                _____
                                                 Christian J. Pistilli, *pro hac vice*
6                                                   cpistilli@cov.com
                                                 Paul W. Schmidt, *pro hac vice*
7                                                   pschmidt@cov.com
                                                 Phyllis A. Jones, *pro hac vice*
8                                                   pajones@cov.com
                                                 COVINGTON & BURLING LLP
9                                                One CityCenter
                                                 850 Tenth Street, NW
10                                               Washington, DC 20001-4956
                                                 Telephone: + 1 (202) 662-6000
11                                               Facsimile: + 1 (202) 662-6291

12
                                                 Emily Johnson Henn (State Bar No. 269482)
13                                                 ehenn@cov.com
                                                 COVINGTON & BURLING LLP
14                                               3000 El Camino Real
                                                 5 Palo Alto Square, 10th Floor
15                                               Palo Alto, CA 94306
                                                 Telephone: + 1 (650) 632-4700
16                                               Facsimile: +1 (650) 632-4800

17
                                                 *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
18                                               *Facebook, Inc.; Facebook Holdings, LLC;*
                                                 *Facebook Operations, LLC; Facebook Payments,*
19                                               *Inc.; Facebook Technologies, LLC; Instagram,*
                                                 *LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*
20

21

22

23

24

25

26

27

28

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KING & SPALDING LLP**

*/s/ Geoffrey M. Drake*

Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
          tharris@kslaw.com

Kristen R. Fournier, *pro hac vice*
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: kfournier@kslaw.com

David P. Mattern, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

**FAEGRE DRINKER LLP**

Andrea Roberts Pierson, *pro hac vice*
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

22

Amy R. Fiterman, *pro hac vice*
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**MUNGER, TOLLES & OLSEN LLP**

*/s/ Jonathan H. Blavin*
Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)
  Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
  Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
  Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILLIAMS & CONNOLLY LLP**
*/s/ Ashley W. Hardin*
Joseph G. Petrosinelli (*pro hac vice*)
Ashley W. Hardin (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Telephone:      +1 202 434 5900
Facsimile:      +1 202 434 5029
Email: jpetrosinelli@wc.com
Email: ahardin@wc.com

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

*/s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
  bwillen@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
  lwhite@wsgr.com
Carmen Sobczak (State Bar No. 342569)
  csobczak@wsgr.com
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou (State Bar No. 233587)
  cchiou@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
  mdonohue@wsgr.com
Wilson Sonsini Goodrich & Rosati
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ATTESTATION

I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED:     December 16, 2024          By:   */s/ Phyllis A. Jones*
                                            Phyllis A. Jones

DEFENDANTS' MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) — CASE NO. 4:22-MD-03047-YGR