# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING PRIVILEGE DETERMINATION IN CONNECTION WITH DEPOSITION OF MIKI ROTHSCHILD**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
|---|---|

Dear Judge Kang:

Pursuant to the Court's instruction at the Discovery Management Conference held on November 21, 2024, Plaintiffs and the Meta defendants respectfully submit this letter brief regarding their dispute as to the privileged nature of three slide decks produced as follows:

| **Original Bates Number** | **Beginning Bates Number of Reproduction with Redactions** | **Exhibit** |
|---|---|---|
| META3047MDL-035-00002871 | META3047MDL-085-00000104 | Meta Ex. A / Pls. Ex. A |
| META3047MDL-035-00004050 | META3047MDL-085-00000271 | Meta Ex. B |
| META3047MDL-073-00001477 | META3047MDL-085-00000211 | Meta Ex. C / Pl. Ex. B |

Meta concurrently files under seal redacted versions of Exhibits A, B, and C. To facilitate the Court's *in camera* review, Meta lodges with the Court and sends to chambers via email the unredacted versions of Exhibits A, B, and C.

Dated: November 25, 2024                    Respectfully submitted,

                                            **COVINGTON & BURLING LLP**

  */s/ Michael X. Imbroscio*
Michael X. Imbroscio, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  mimbroscio@cov.com

Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000
Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc.*


  */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF          CABRASER     HEIMANN     &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor San
Francisco, CA 94111-339 Telephone:
415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004

Telephone: 202-386-9610 pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660 Telephone: 973-639-9100
Facsimile: 973-679-8656 cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900 San Francisco, CA 94104 Telephone: 415-986-1400 jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW

v

**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100 San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300 Kansas City, MO 64112
Telephone: 816-701 1100 tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU **AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566

mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106

Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700

*Attorneys for PI/SD Plaintiffs*

v

**PHILIP J. WEISER**
Attorney General State
of Colorado

 /s/ *Krista F. Batchelder*

Krista F. Batchelder , CO Reg. No. 45066, pro hac vice
Deputy Solicitor General
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Megan Paris Rundlet, CO Reg. No. 27474 Senior Assistant Solicitor General Elizabeth Orem, CO Reg. No. 58309 Assistant Attorney General Colorado Department of Law Ralph L. Carr Judicial Center Consumer Protection Section 1300 Broadway, 7th Floor Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General State of
California

 /s/ *Megan O'Neill*
Nicklas A. Akers (CA SBN 211222) Senior Assistant Attorney General Bernard Eskandari (SBN 244395) Emily Kalanithi (SBN 256972) Supervising Deputy Attorneys General Nayha Arora (CA SBN 350467) Megan O'Neill (CA SBN 343535) Joshua Olszewski-Jubelirer (CA SBN 336428) Marissa Roy (CA SBN 318773) Brendan Ruddy (CA SBN 297896)

Deputy Attorneys General California Department of Justice Office of the Attorney General
455 Golden Gate Ave., Suite 11000 San Francisco, CA 94102-7004 Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GO V
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General

State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Assistant Section Chief, Deputy Attorney General Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiff New Jersey Division of Consumer Affairs*

**Meta's Position:** This privilege dispute concerns three related slide decks all incorporating the same legal analysis by Meta's in-house and outside counsel. In the course of its production, Meta produced a document at META3047MDL-022-00015380 containing a hyperlink. The target of the hyperlink was a document Meta withheld as privileged and had not produced. On November 5, 2024, Plaintiffs asked Meta whether the hyperlink corresponded to a separate, *produced* document—a slide deck at Bates number META3047MDL-035-00002871 (Meta's Ex. A). The hyperlink did not correspond to META3047MDL-035-00002871; nevertheless, Plaintiffs asked whether Meta would stand on its privilege objections with respect to the privileged hyperlink.

After Plaintiffs raised the produced slide deck (META3047MDL-035-00002871), Meta investigated it and determined that it had been inadvertently produced in full, without redactions, despite containing attorney-client privileged communications and analysis. In the course of that investigation, Meta identified two related slide decks, also inadvertently produced in full and also containing privileged information, at Bates numbers META3047MDL-035-00004050 (Meta's Ex. B) and META3047MDL-085-00000211 (Meta's Ex. C). After this review, Meta clawed back these three related slide decks, re-produced them in redacted form (at new Bates numbers identified in the chart preceding the parties' positions above), and issued a clawback notice for the three documents pursuant to the 502(d) Clawback Order entered in this case (ECF 248).

The attorney-client privilege protects communications between an attorney and client about "legal developments" and their implications, and communications about regulatory compliance. *See United States ex. rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *3 (E.D. Cal. Jan. 26, 2023) (holding documents privileged where they reflected attorney's "legal assessments of regulations," "discussions of initiatives related to regulatory compliance," and "communications made to the client to keep the client informed of legal developments"). Where, as here, the parties contest the privileged nature of redacted *portions* of a document, the Court must determine whether the primary purpose of the redacted portion (not the document overall) is to communicate legal advice. *See, e.g.*, *id.*

The redacted portions of the slide decks here are privileged because they reflect attorneys' analysis of regulatory developments, a legal analysis of Meta's services based on those developments, potential compliance risks, and strategies to mitigate those risks. To be clear, Meta does not contend the slide decks are privileged because they are marked "A/C priv" (*cf.* Pls. Ex. J) or because an attorney was copied (*cf.* Pls. Ex. K). Indeed, as Plaintiffs acknowledge, Meta has produced thousands of documents with such notation based on a determination that they did not meet the applicable legal test. To the contrary, as in-house Meta counsel Rachany Son and outside counsel Julian Lamm of White & Case LLP attest, the slide decks arose out of an initiative by Meta's in-house counsel to review existing and potential regulations in a multitude of jurisdictions as of the Spring of 2022. *See* Decl. of Rachany T. Son ("Son Decl.") ¶¶ 2-3; Decl. of Julian Lamm ("Lamm Decl.") ¶¶ 2-4.

The analysis contained in the slide decks in question was overseen by Ms. Son and other in-house counsel at Meta and covered regulatory compliance for Meta's Facebook, Instagram, and other services, as part of a broader company effort referred to as a Youth "State of the Union." *See* Son Decl. ¶ 4; Lamm Decl. ¶¶ 3-4. Part of that risk analysis was a comparison of Meta's services against those of other social media companies, based on the legal judgment of Meta's in-house

and outside counsel that such comparisons helped inform Meta's potential enforcement risk. *See* Son Decl. ¶ 4; Lamm Decl. ¶ 4. Meta's in-house and outside counsel did not compare Meta with other social media companies for primarily "business" purposes, such as generating additional revenue, growing market share, or other goals that might be described solely as "business" endeavors. *See* Son Decl. ¶ 11; *see Schmuckley*, 2023 WL 425841, at *4 ("factual findings" in spreadsheet were privileged where they "were gathered to assist [the attorney] in providing legal advice"). Rather, Meta's in-house counsel endeavored to review whether Meta's services complied with existing and anticipated future regulations in Europe, California, and elsewhere—and, if Meta's services were determined to be at risk of noncompliance, to analyze the specific compliance gaps and suggest strategies to mitigate that risk. *See* Son Decl. ¶¶ 3-4; Lamm Decl. ¶¶ 3-4.

Meta's in-house and outside counsel summarized this legal advice in slide decks for Meta's senior leadership. To draft the slide decks, Meta's in-house counsel worked closely with a team of four White & Case attorneys, who collectively spent more than 350 hours on the project between March 2022 and August 2022, including on necessary email communications, memoranda, and video calls. *See* Lamm Decl. ¶ 5. Meta's in-house counsel, Ms. Son, personally drafted and edited portions of the slide decks, and they were reviewed by Meta's outside counsel throughout the drafting process. *See* Son Decl. ¶¶ 5-6. Given the nature of the project, certain non-attorney personnel at Meta provided input on the slide decks, but they did so with Ms. Son's involvement and for the primary purpose of incorporating counsel's legal analysis on potential regulatory risks. *See id.* ¶ 7. Moreover, the slide decks were maintained at Meta with special protections to limit their access only to individuals whose access was necessary; persons without access could not open the slide decks. See id. ¶ 12. Plaintiffs are thus wrong that "none of the [slide decks'] goals are legal."

Plaintiffs cite unredacted portions of the slide decks (Pls. Exs. A, B) purportedly addressing potential business concerns and infer that the redacted portions also do. That is not the law. Even where both business and legal advice are "clearly present" in a document, the portions concerning legal advice do not become unprivileged by intertwined business issues and may remain redacted. *See City of Roseville Employees' Ret. Sys.*, 2022 WL 3083000, at *23 (applying the primary purpose test to "the redacted material" in emails and holding such portions addressed "legal advice rather than business concerns, though both were clearly present"). Here, Ms. Son and Mr. Lamm have reviewed the slide decks in redacted and unredacted form; they confirm that the redacted portions of the slide decks reflect the advice of Meta's in-house and outside counsel. *See* Son Decl. ¶ 9; Lamm Decl. ¶¶ 7-9.

Plaintiffs' other cited documents are not to the contrary. Non-privileged communications about starting weekly updates on the Youth "State of the Union" analysis (Pls. Ex. D), or the mere fact that more than 200 engineers "work around Youth privacy and product" generally (Pls. Ex. I), do not defeat the privileged nature of the slide decks' redacted legal advice. Accordingly, Meta has established the redacted portions of the slide decks contain legal analysis and advice, and are privileged. *See, e.g., Schmuckley*, 2023 WL 425841, at *3 ("redacted sections concern an internal regulatory compliance review and [an attorney's] impressions thereof").

Plaintiffs' cases are not on point. Unlike the producing party in *National Prescription Opiate*

*Litigation*, Meta's regulatory analysis addressed prospective compliance strategies and did not merely describe Meta's existing "internal audit process" for "audits apparently undertaken regularly" in the course of business. *See re National Prescription Opiate Litig.*, No. 1:17-MD-2804 (N.D. Ohio Nov. 16, 2024), at 5. Courts recognize that counsel's discussion of legal implications of a prospective activity is legal—not business—advice. *See Faloney v. Wachovia Bank*, N.A., 254 F.R.D. 204, 210 (E.D. Pa. 2008) (holding "plan to address [] concerns" about "legal exposure" was privileged); *cf. Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076, at *7 (E.D. Pa. Dec. 14, 2015) (distinguishing *Faloney* because party failed to show document "propos[ed] a course of action to address legal concerns"). This rule applies, of course, when the proposed course of action addresses potential legal and regulatory exposure. *See Schmuckley*, 2023 WL 425841, at *3.

Lastly, far from a "last-minute clawback of documents ahead of Michael Rothschild's deposition," Meta's prompt clawback and reproduction of the slide decks was consistent with the Court's 502(d) Clawback Order (ECF 248) and more than reasonable under the circumstances. Meta undertook a detailed, good-faith privilege review, the entire purpose of which was to *not* rely dispositively on the "A/C Priv" label. Well within the 30 days provided under the 502(d) Clawback Order, Meta promptly clawed back the inadvertently produced versions of the deck, after it was brought to Meta's attention via an email request from Plaintiffs challenging Meta's privilege designation of a substantially similar slide deck. Meta also responded to Plaintiffs' privilege challenge within the ten days provided under the Privilege Log Protocol (ECF 740), six days before the date noticed two months earlier for Mr. Rothschild's deposition, and four days before Meta's deadline under the Parties' agreement for accelerated hyperlink requests to confirm hyperlinks for upcoming depositions. In short, Meta's clawback was prompt, timely, and a model of exactly how this process should work.

**Plaintiffs' Position:** Meta's last-minute clawback of documents ahead of Michael Rothschild's deposition is premised on baseless assertions of privilege. The Court should order Meta to unredact the documents in full. Meta's argument appears to be that because its in-house counsel and one outside attorney provided regulatory advice on a business plan, the plan documents are almost entirely privileged. This position is unsupported by law.

Meta has the burden of showing that the documents at issue—Exhibits A and C to Meta's filing—are privileged. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* Where, as here, a document serves a business purpose, the proponent of attorney-client privilege must make "a 'clear showing' that the document was created primarily for a *legal* purpose." *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19CV02033YGRJCS, 2022 WL 3083000, at *23 (N.D. Cal. Aug. 3, 2022). Meta cannot meet this burden for several reasons.

*First*, the documents at issue reflect Meta's business plans, not the giving or seeking of legal advice. They discuss planning for Meta's "Youth State of the Union" and "Youth Plan & H2 Roadmap." *See Youth Update* (redacted), Exhibit A, at META3047MDL-085-00000105; *X-Meta Youth Strategy* (redacted), Exhibit B, at META3047MDL-085-00000211. In these documents Mr. Rothschild (a non-attorney) articulates Meta's "vision" concerning "experiences for youth and parents." *Id.* at 0213. They emphasize Meta's strategies to regain the confidence of youth

and their parents in light of its finding that the "[t]op reason why Early Teens in the U.S report not joining Instagram is because their parents are not okay with them using the app." Exhibit A at 0110. Put another way, these documents are built around business goals, not legal advice. Critically, "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause" for the communication. *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990). Meta's draft brief even states that "it was not apparent on the face of the documents to Meta's attorneys reviewing them … that they were privileged."

***Second***, while the declarations submitted by Meta claim that attorneys were advising it regarding the regulatory landscape, the law is clear that the attorney-client privilege "does not apply if the client seeks regulatory advice for a business purpose." *Fed. Trade Comm'n v. Abbvie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015); *see also In re National Prescription Opiate Litig.*, No. 1:17-MD-2804 (N.D. Ohio Nov. 16, 2024), Discovery Ruling, Exhibit C, at 5 (collecting cases and holding that "simple ongoing assessment of compliance with regulations is usually a business matter, not a legal one"); *City of Roseville*, 2022 WL 3083000, at *11 (holding that there is no bright-line rule on whether communications with attorneys related to regulatory compliance are privileged, and "the content and context of such communications must be considered in order to determine the primary purpose of the communication"); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("The privilege does not protect an attorney's business advice.").

The test governing privilege in this context measures the "primary purpose" of the communication or document at issue. *City of Roseville*, 2022 WL 3083000, at *3 (citing *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021); *id.* at *23 (noting defendants' burden to show that "the document was created primarily for a *legal* purpose"). The declarations submitted by Meta do not establish a primary legal purpose. At most, they establish that two attorneys—one of them in-house[1]—aided Meta's regulatory compliance. One slide from Meta's Youth State of the Union reveals Meta's business purpose by identifying "5 key areas" for the project, "based on input from users, regulators and external stakeholders: Teen Safety; Teen Well-Being; Teen Data Use; Age Appropriate Experience; Parental Supervision & Education." Exhibit A at 0112. So, while Meta consulted with "regulators," none of the goals are legal, and no attorneys are cited as providing input. *Id.* Meta's internal communications identified those same business-focused goals for the youth project. Exhibit D at META3047MDL-014-00322677. Meta also described the project as "advancing our external narrative," clearly a business purpose. Exhibit E at META3047MDL-020-00530220. Finally, Meta's business purpose is reflected in titles that appear on several otherwise redacted slides, such as "Competitive Analysis"; "Competition"; "Parents Perception: Earning parental trust is important"; and "Parental Supervision and education," with the subtitle of the latter stating "Objective: build tools to enable parents to support their teens on the platform." Exhibit A at 0140; Exhibit B at 0256, 0218, 0253.

***Third***, while Meta's brief presents the "Youth State of the Union" plan as attorney-driven—

---

[1] Claims of privilege related to in-house counsel "warrant heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Stirratt v. Uber Techs., Inc.*, No. 19-CV-06361-RS (DMR), 2024 WL 1723710, at *2 (N.D. Cal. Apr. 19, 2024) (cleaned up).

referencing an "initiative by Meta's in-house counsel to review existing and potential regulations in a multitude of jurisdictions as of the Spring of 2022"—Meta's own documents show that any regulatory advice was part of a larger business effort driven by non-attorneys. For instance, Mr. Rothschild's evaluation states that his role was to "craft and align on the X-Meta strategy and roadmap for building trust with teens, parents and stakeholders on our Safety, Privacy and Well-being practices." Exhibit F at META3047MDL-031-00265655. Meta executive Chris Cox further commented: "This is so wonderfully done. Are you sure you don't want to **keep driving it**." *Id.* (emphasis added). Another e-mail says that one of the attorneys "pointed me to a 'Youth State of the Union' … effort being **led by Miki and** ▮▮▮▮▮▮." Exhibit G at META3047MDL-047-00766939 (emphasis added). Neither Rothschild nor Fish is an attorney. Mr. Fish is also described as "driving" the project in Meta correspondence. Exhibit H at META3047MDL-020-00668988. This project, therefore, was employee-driven, not attorney-driven.

Meta also claims that attorneys spent 350 hours on the project, but without context, this number is meaningless. The Youth State of the Union/Meta-X project was massive. For instance, more than 200 software engineers were working on it, which would be unusual for a project with a legal focus. Exhibit I at META3047MDL-031-00117512. Meta gives no indication of the total personnel hours spent on the project, but states that it lasted five months. Most likely, attorney time represented a small portion of the total time Meta spent on the project, and thus legal compliance was not its primary purpose. *See Stirratt v. Uber Techs., Inc.*, No. 19-CV-06361-RS (DMR), 2024 WL 1723710 (N.D. Cal. Apr. 19, 2024). In *Stirratt*, the defendant argued that board meeting minutes were privileged because they reflected a discussion led by counsel. The court disagreed, holding that a party invoking attorney-client privilege "must show that the documents are 'so interwoven with the privileged communications that disclosure of the former leads irresistibly to disclosure of the latter.'" *Id.* at *5 (quoting *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977)). As shown above, the primary purpose of the Youth State of the Union/X-Meta plan was a business one.

***Fourth***, while these documents are labeled as privileged, a mere label is insufficient. *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09–md–2032–MMC (JSC), 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011). In this litigation, Meta has produced nearly 10,000 documents bearing this label, which is consistent with Judge Chhabria's determination that Meta has a culture of abusing the attorney-client privilege. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 926, 936 (N.D. Cal. 2023) (sanctioning Meta for its "sustained, brazen stonewalling campaign" in making excessive privilege claims). Mr. Rothschild himself appears to have engaged in this practice. *See* Exhibit J at META3047MDL-014-00356613 (stating that he "[r]eplied all such that it's A/C Priv ;)"); Exhibit K at META3047MDL-031-00174004 (responding to question about maintaining privilege by stating: "if you include ▮▮ (youth legal) and share with App leads that should be fine"). Given this history, the appearance of "A/C Priv" on a Meta document is not a basis to withhold a document from production, let alone claw it back on the eve of a deposition, particularly when Meta had produced the documents months earlier and only clawed them back after realizing that they were central to Plaintiffs' planned deposition. (*See* Cartmell Decl. at ¶¶ 4-16).

This Court should reject Meta's unfounded claim of privilege and require Meta to re-produce the documents at issue without redaction.

## ATTESTATION

I, Michael X. Imbroscio, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 25, 2024        By:   */s/ Michael X. Imbroscio*
                                                    Michael X. Imbroscio