Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.;*
*Instagram, LLC; Meta Payments, Inc.; and*
*Meta Platforms Technologies, LLC*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br> Case Nos. 4:22-md-03047-YGR-PHK<br><br> 4:23-cv-05448-YGR<br><br>**META DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DISCOVERY SANCTIONS REGARDING STATE AGENCIES**<br><br>Date: January 31, 2025<br>Time: 1:00 PM<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

1

## NOTICE OF MOTION AND MOTION FOR SANCTIONS

2   PLEASE TAKE NOTICE THAT, at 1:00 PM on January 31, 2025[1], before the Honorable Peter

3   H. Kang, in Courtroom F, Floor 15, of the United States District Court, Northern District of California,

4   located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Meta Platforms, Inc.;

5   Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") will

6   and hereby do move this Court, under Federal Rule of Civil Procedure 37 and the Court's inherent

7   authority, and pursuant to the leave granted at the December 11, 2024 Discovery Management Conference

8   ("DMC"),[2] for an order imposing discovery sanctions on 14 Plaintiff States.

9   This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities,

10   any Reply or other papers submitted in connection with the Motion, the accompanying Declaration of

11   Ashley M. Simonsen, and any other matters presented at the time of the hearing.

12

13   Dated:  December 23, 2024                      Respectfully submitted,

14                                                 **COVINGTON & BURLING LLP**

15

16   ───────────────

[1] On December 18, 2024, Meta filed an Administrative Motion (ECF 1471) seeking an expedited briefing
schedule on this Motion that would have the States' opposition due January 3, 2025, Meta's reply due
January 10, 2025, and the Motion heard at the January 16, 2025 DMC.  Since the Court has not yet ruled
on Meta's Administrative Motion, Meta has noticed this Motion for Friday, January 31, 2025 at 1:00 PM
– the first Friday (when Magistrate Judge Kang holds Law and Motion hearings) after the earliest notice
date of January 27, 2025 under the Local Rules.  In light of the States' opposition to Meta's Administrative
Motion (ECF 1481), Meta reached out to the States on December 23, 2024 to propose an alternative
proposed briefing schedule that would afford the States four additional days, until Tuesday, January 7,
2025, to prepare their opposition (while shortening Meta's time to prepare its reply, to Monday, January
13, 2025), while still allowing the Motion to be heard at the January 16, 2025 DMC.  Understandably
given the holidays, Meta has not heard back from the States on Meta's proposal; but if the Parties are able
to reach agreement on this alternative proposed briefing schedule, Meta would prepare and file later this
week a stipulation and proposed order to set that briefing schedule and to resolve the Administrative
Motion as moot.  Subject to the Court's preference and availability to review the briefing on Meta's
Motion in advance of the January 16, 2025 DMC, Meta would be amenable to the Court entering the
alternative proposed briefing schedule above (rather than the proposed schedule set forth in Meta's
Administrative Motion), should the Court wish to afford the States additional time to prepare their
opposition.
[2] *See* 12/11/24 DMC Tr. at 113:2–4 ("I understand [Meta's] concern and at some point, you know, you
come to the Court with whatever relief you think you need at whatever point"); *id.* at 115:23-25 ("certainly
procedurally [Meta] [is] free to do whatever they want and [the States are] free to obviously brief the
issues in opposition"); *see also id.* at 114:1–3, 114:5–12, 114:19–22.

1

2
     _/s/ Ashley M. Simonsen_

3
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP

4
1999 Avenue of the Stars
Los Angeles, CA 90067

5
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800

6
Email:  asimonsen@cov.com

7
*Attorneys for Defendants Meta Platforms, Inc.;*

8
*Instagram, LLC; Meta Payments, Inc.; and*
*Meta Platforms Technologies, LLC*

9
*Additional counsel listed on signature page*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

III.  LEGAL STANDARD .................................................................................................. 5

IV.   ARGUMENT .............................................................................................................. 5

    A.    Numerous States and Agencies Have Failed to Comply with Court Orders. ......... 6

        1.    States' and Agencies' Failure to Meet Court-Ordered Deadlines. ............. 6

        2.    States' and Agencies' Failures to Constructively and Promptly Negotiate. 7

        3.    States' and Agencies' Refusal to Produce Pre-2015 Documents. .............. 9

        4.    Prejudice to Meta. ......................................................................................... 9

    B.    The Court Should Impose Discovery Sanctions for States' Noncompliance. ...... 10

        1.    The Court Should Find that States Violated Court Orders. ..................... 10

        2.    The Court Should Require States to Use Meta's Custodian and Search Term Proposals. ......................................................................................... 10

        3.    The Court Should Require States to Produce All Responsive, Non-Privileged Documents Returned by the Searches, Overruling the States' Objections Without Further Litigation. ...................................................... 11

        4.    The Court Should Require Production of States' Pre-2015 Documents or Prohibit the States from Relying on Pre-2015 Documents or Conduct In Support of Their Claims. ............................................................................. 12

        5.    If States Fail to Complete Productions by January 10, 2025, Meta Should Be Granted Seven Further Hours of 30(b)(6) Deposition Time, and the States Required to Adequately Prepare. ...................................................... 13

        6.    The Court Should Direct States to Procure External eDiscovery Vendors Necessary to Complete Productions Promptly If they Assert Technical or Resource Constraints. ................................................................................. 13

        7.    The Court Should Impose Monetary Sanctions for Continued Failure to Comply. ...................................................................................................... 14

    C.    The Court Should Award Reasonable Fees and Costs. ....................................... 15

V.    CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akkawi v. Sadr*,
   2023 WL 1869179 (E.D. Cal. Feb. 9, 2023) ........................................................12

*David v. Hooker, Ltd.*,
   560 F.2d 412 (9th Cir. 1977) .............................................................................15

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) .............................................................................14

*Gay v. Parsons*,
   2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) ......................................................5

*Glob. Freight, Inc. v. Tremell*,
   633 F. Supp. 3d 985 (E.D. Mich. 2022) ...............................................................11

*Grimes v. City & Cnty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) .........................................................................14, 15

*Guifu Li v. A Perfect Day Franchise, Inc*,
   281 F.R.D. 373 (N.D. Cal. 2012) ....................................................................12, 13

*Innospan Corp. v. Intuit Inc.*,
   2011 WL 2669465 (N.D. Cal. July 7, 2011) ...........................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
   2018 WL 11264985 (N.D. Cal. July 2, 2018) (Gonzalez Rogers, J.) ....................13

*McMillion v. Rash Curtis & Assocs.*,
   2017 WL 8948951 (N.D. Cal. Sept. 7, 2017) ........................................................11

*In re Phenylpropanolamine (PPA) Products Liability Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .........................................................................9, 10

*Rusoff v. Happy Grp., Inc.*,
   2023 WL 114224 (N.D. Cal. Jan. 5, 2023) ...........................................................11

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
   2005 WL 8173278 (S.D. Cal., Aug. 19, 2005) ......................................................12

*Tacori Enterprises v. Beverlly Jewellery Co.*,
   253 F.R.D. 577 (C.D. Cal. 2008) ..........................................................................13

*The Sunrider Corp. v. Bountiful Biotech Corp.*,
   2010 WL 4590766 (C.D. Cal. Oct. 8, 2010) ..........................................................13

*VYSE Gelatin Co. v. Hicks*,
   2020 WL 12182759 (N.D. Ill. Feb. 11, 2020) ...................................................................11

*Williams v. City of Long Beach*,
   2022 WL 444840 (C.D. Cal. Feb. 14, 2022)........................................................................5

*Woodway USA, Inc. v. LifeCORE Fitness, Inc.*,
   2024 WL 890547 (S.D. Cal. Feb. 29, 2024) ......................................................................12

**Statutes**

28 U.S.C. § 636...............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 34 ..............................................................................................................1, 3, 6, 14

Fed. R. Civ. P. 37 ................................................................................................................ *passim*

Fed. R. Civ. P. 45 .........................................................................................................................3, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

It has been more than three months since this Court ordered the MDL State plaintiffs and their agencies to comply with Rule 34 discovery and engage in prompt conferrals over productions that Meta has been seeking for close to a year.  In that time, every State has violated at least one of this Court's orders to comply with discovery.  These delay tactics have seriously hindered Meta's ability to obtain Court-ordered discovery from state agencies on a timeline that is consistent with the accelerated case schedule the States demanded.

The State's dilatory conduct has forced Meta to devote meaningful resources to costly and protracted negotiations, with Meta conservatively estimating that it has corresponded with individual MDL States by phone or email over 2,000 times so far since the Court's September 6 order.  In these negotiations, and despite the States' widespread intransigence and lack of transparency, Meta has worked hard to find potential compromises, including by (i) affirmatively proposing search terms and custodians and then substantially narrowing its proposals based on agencies' (often unsubstantiated) claims of burden, (ii) voluntarily agreeing to remove more than 50 agencies from the search term process, and (iii) working with individual agencies to identify alternative methods of targeted collection and production where appropriate.  Those efforts have resulted in agreements regarding search parameters with 12 of 26 remaining States[3] with consumer protection claims as of the time of this filing—most after the Court raised Meta's ability to seek sanctions against noncompliant States at the last DMC, *see* 12/11/24 DMC Tr. at 113:2–4, 115:23-25.  The remaining 14 States ("Sanction States"),[4] which are at issue in this Motion, have not fully complied with the Court's directives or cooperated with Meta to meet their discovery obligations.  This delay has resulted in Meta receiving little state agency discovery, with less than three weeks remaining until substantial completion.

---

[3] Two states are in the process of dismissing their claims and therefore are not addressed in this Motion. To the extent those two states do not dismiss their claims, Meta reserves all rights to seek sanctions for their noncompliance with the Court's directives and failure to produce Court-ordered discovery.  Meta also reserves all rights to seek sanctions against the 12 states that have reached agreement if it becomes necessary to do so in the future—*e.g.*, if they fail to produce documents by the Court-ordered deadlines.

[4] The Sanction States at issue in this Motion are Arizona, California, Colorado, Delaware, Hawai'i, Illinois, Indiana, Kansas, Minnesota, Nebraska, New York, Ohio, Pennsylvania, and South Dakota.

The Sanction States' pattern of noncompliance and delay has imposed large and unnecessary costs on Meta, frustrated Meta's ability to fairly progress this case, and justifies the following sanctions:

1. The Court should enter a finding that there have been serial violations of Court-ordered deadlines, including to create a record for Judge Gonzalez Rogers, should Meta seek separate, appropriate remedies from the District Court. *See* ECF 1291, 1299, 1380, 969; 12/11/24 DMC Tr. at 120:19–121:2, 144:17–145:8, 169:16–17, 172:3–4

2. Agencies in the 14 Sanction States that have failed to comply with Court deadlines for custodian and search term negotiations should be required to run Meta's proposed search terms across the agency custodians proposed by Meta.

3. Those agencies should also be required to produce all responsive, non-privileged documents returned by the searches, without applying any further narrowing based on the States' (often improper) objections to Meta's RFPs (and without requiring Meta to litigate those objections).

4. Agencies in ten states that are either refusing or have not committed to produce documents from before 2015—despite alleging a "Relevant Time[]" that starts "no later than 2012," Compl. (Case No. 4:23-cv-5448, ECF 1) ¶ 9, and aggressively pursuing and winning a Court Order setting a January 1, 2012 start date for the "Relevant Time" applicable to discovery from Meta (ECF No. 969)—should be either (a) ordered to produce those documents by the substantial completion deadline or (b) prohibited from relying on Meta's pre-2015 documents or conduct to support their case.

5. If an agency claims that technical or resource constraints prevent it from substantially completing productions in a timely way, then to ensure prompt production, and to end the agencies' serial delays, they should be required to procure external eDiscovery vendors—at their own cost—to complete the collection and production by the substantial completion deadline.

6. If any agency in the Sanction States fails to complete the required productions by the January 10, 2025 substantial completion deadline, Meta should be provided an additional seven hours of 30(b)(6) deposition time, and the States should be required—in addition to completing those productions—to adequately prepare such 30(b)(6) witnesses to discuss the topics covered by Meta's RFPs, so that Meta has the opportunity to ask questions to fill the gaps created by the States' lack of productions.

7. The Court should impose daily monetary sanctions on the States that continue not to comply with any Order by this Court awarding this relief—*e.g.*, by failing to run Meta's proposed search terms and custodians, or to meet substantial completion deadlines—which would double every week of continued noncompliance.

8. As required by Rule 37 upon finding an unjustified violation, the Court should award fees and costs.

## II.     BACKGROUND

On February 27, 2024, Meta served discovery requests seeking documents and other information from the States and certain constituent agencies that engage in work relevant to this lawsuit—*e.g.*, departments of health, education, human services, and Governor's offices. *See* Simonsen Decl. ¶ 2. Although the States agreed to produce limited discovery from their Attorneys General's ("AGs") offices, they uniformly refused to produce documents from agencies, instead taking the erroneous position that

the AGs had no obligation or ability to produce discovery from their States' agencies, even though they were suing on behalf of their respective States (and therefore the agencies). *Id.* As a result, the States refused to engage with Meta on agency discovery for months. *Id.*

On September 6, 2024, following extensive briefing and oral argument at multiple hearings, the Court issued a 248-page order largely rejecting the MDL States' position and finding that the vast majority of agencies from which Meta sought discovery were subject to party discovery under Rule 34. *See generally* ECF 1117 ("September 6 Order"). The Court made clear in this Order, and subsequent ones, that it expected the MDL States to move "to avoid unduly multiplying the proceedings," and work promptly to "substantially complete their respective productions of documents in response to either the Rule 34 requests or, to the extent applicable, Rule 45 subpoenas." *Id.*

The States have done the opposite since. Instead of conferring promptly as this Court directed, *id.*, they waited 11 days. Simonsen Decl. ¶ 14. They sought a stay of the Court's order. When that failed, they continued to delay, prompting the Court to enter multiple Orders imposing specific deadlines to try to ensure compliance, including a November 1 deadline for search term and custodian proposals and a December 2 deadline to complete conferrals informed by document hit reports and other transparency. A few States have expressed open defiance of the Court, only to backpedal when faced with the prospect of sanctions. *See* 11/22/24 CMC Tr. at 30:16–18 ("I do not take lightly anybody's failure to comply with a federal court order. Something will happen . . . . I guarantee you, I will not let this stand."). The majority have more tacitly defied the Court, claiming in the run-up to or at hearings when confronted by the Court that they would comply, only to then violate the Court's compliance deadlines. This has resulted in repeated violations of Court orders and directives. Specifically:

- Eight of the Sanction States—Arizona, California, Colorado, Delaware, Illinois, Minnesota, New York, and Pennsylvania—were ordered to provide search terms and custodians for all agencies by November 1, 2024. *See* ECF 1291, 1299. All eight failed to do so.

- Seven of the Sanction States—Arizona, California, Colorado, Illinois, Minnesota, New York, and Pennsylvania—still have agencies that have not provided search terms, custodians, hit reports, or transparency about their alternative search methods, even though this Court directed the conclusion of conferrals informed by that information by December 2, *see* ECF 1380;

- All 14 Sanction States have agencies that have failed to come to agreement with Meta on search terms and custodians in violation of the Court-ordered deadline of completing these negotiations by December 2 (ECF No. 1380), and despite Meta's concessions, compromises, and outreach;

- One State—Kansas—has not produced a single agency document to date, nearly four months after the Court's September 6 Order and despite the court-ordered deadline to begin rolling production of agency documents by December 6, 2024, *see* ECF No. 1380 at 2;

- 45 agencies from the Sanction States failed to provide hit reports to inform ongoing discovery negotiations by the Court-ordered December 16 deadline, 12/11/24 DMC Tr. at 120:19–121:2, 144:17–145:8, 169:16–17, 172:3–4;

- Ten of the 14 Sanction States—Arizona, Delaware, Hawai'i, Illinois, Indiana, Nebraska, New York, Ohio, Pennsylvania, and South Dakota—have either refused or failed to confirm that they will produce documents from before 2015; and

- Certain agencies from New York, California, and Kansas continue to take the position that they are not bound by this Court's September 6 Order at all.

In the face of the States' and agencies' defiance of the Court's Orders and refusal to engage in discovery, Meta has taken costly efforts to move the process swiftly and to compromise. Meta conservatively estimates that it has corresponded with States and/or agencies by phone or email over 2,000 times on these issues since the September 6 Order. Simonsen Decl. ¶ 8. Meta has devoted significant resources to this project; dozens of outside counsel have spent significant time working on it. *Id.* Meta has not intentionally delayed this discovery, and its correspondence with the States and agencies has (despite the volume and variation necessitated by the States' approach) been prompt. *Id.* ¶ 9. Meta also worked hard to reach agreements where possible, including giving up significant ground in negotiations. *Id.* For instance, Meta affirmatively proposed search terms and custodians and then substantially narrowed its proposals based on agencies' (often unsubstantiated) claims of burden. *Id.* Meta also voluntarily removed from the search term process more than 50 agencies. *Id.* And Meta has worked with individual agencies to identify alternative methods of collection and production. *Id.* Meta's efforts have resulted in total agreement on search parameters with 12 States and 54 of the 134 agencies identified in footnotes 2, 3, and 4 of the Parties' December 9 briefing with which it previously disagreed (ECF 1430). Put simply, Meta is not the reason the Sanction States have failed to reach agreement; it is those States' intransigence and refusal to meet Court-ordered deadlines and other basic discovery requirements.

The result of the States' delays and noncompliance with Court Orders is that Meta has received an exceptionally low volume of discovery with less than three weeks remaining to the substantial completion deadline. By contrast to Meta's approximately two million documents (of approximately nine million pages), as of the day before this filing, the Sanction States as a whole have produced a paltry 32,604

documents, with their agencies producing only 21,317 documents of that volume. *Id.* ¶ 10.[5] Meta has not received *any* agency documents from one State (Kansas), and nine have only produced volumes in the tens or hundreds (Arizona, California, Colorado, Delaware, Hawai'i, Illinois, Indiana, New York, and Pennsylvania). *Id.* ¶ 10.

## III.    LEGAL STANDARD

"[T]he authority of Magistrate Judges to impose discovery sanctions is established by 28 U.S.C. § 636 and recognized by prior Ninth Circuit decisions." *Gay v. Parsons*, 2024 WL 4224893, at *2 (N.D. Cal. Sept. 17, 2024) (Kang, M.J.) (quoting *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)) (cleaned up). Magistrate judges may enter nondispositive discovery sanctions as orders (rather than reports and recommendations). *Id.*

FRCP 37 provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Courts can also issue sanctions for willful discovery misconduct under their inherent authority. *See Innospan Corp. v. Intuit Inc.*, 2011 WL 2669465, at *2 (N.D. Cal. July 7, 2011) (citing *Anheuser–Bush v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)). "Whether exercising its inherent power, or acting pursuant to Federal Rule of Civil Procedure 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Williams v. City of Long Beach*, 2022 WL 444840, at *1 (C.D. Cal. Feb. 14, 2022) (cleaned up). Rule 37 provides that, once noncompliance with a discovery order has been found, "[i]nstead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

## IV.    ARGUMENT

The Sanction States have failed to comply with the Court's orders and have delayed compliance at virtually every step, creating unnecessary burdens on the Court and Meta, and resulting in deficient document discovery that should already be substantially complete as of November 5. As a result, sanctions

---

[5] Certain documents have metadata suggesting they were produced on behalf of more than one State.

are warranted.  Meta has spent the past several months—and massive resources—attempting to resolve these issues.  Because the States have failed to comply with Court Orders, and with Meta now experiencing daily prejudice, sanctions are warranted under Rule 37(b) (or the Court's inherent authority).

**A.    Numerous States and Agencies Have Failed to Comply with Court Orders.**

Dozens of state agencies that this Court ordered to comply with Rule 34 discovery have failed to do so, including by repeatedly failing to meet Court-ordered deadlines to propose search terms and custodians, provide hit reports, and engage in and conclude search-term negotiations.

1.    <u>States' and Agencies' Failure to Meet Court-Ordered Deadlines.</u>

The agencies subject to this Motion have failed to comply with the Court's discovery Orders in at least three key ways.  ***First***, eight of the Sanction States were designated as discovery "holdouts" after effectively refusing to engage with Meta for nearly two months after the September 6 Order and were ordered to propose agency search terms and custodians by November 1, 2024.  *See* ECF 1291 at 2, 1299 at 10 (ruling that "holdout" States "**SHALL** identify custodians and propose search terms by **<u>November 1, 2024</u>**.")  All eight of those States failed to provide search terms and custodians for all of their agencies by the November 1 court-ordered deadline.  Simonsen Decl. ¶ 3.  Putting aside the deadline for "holdout" states, certain agencies of Arizona, California, Colorado, Illinois, Minnesota, New York, and Pennsylvania *still* have not provided search terms, custodians, hit reports, or transparency about alternative search methods used during document collection almost ***four months*** after the Court's September 6 agency discovery ruling.  *Id.* ¶ 4.  Remarkably, Pennsylvania has not provided custodians for *any* of its agencies with less than three weeks to go until the substantial completion deadline.  *Id*.  These States and agencies have violated Court orders.  *See* ECF 1291 at 2, 1299 at 10, 1380 at 2.

***Second***, the Sanction States failed to conclude search term negotiations by the Court-ordered deadline of December 2.  ECF 1380 at 2.  Although Meta made significant efforts to reach agreements with each of the States—including by making concessions such as voluntarily removing dozens of agencies from the search term negotiation process—none of the Sanction States completed conferrals by December 2 or provided the Court-ordered information necessary to do so.  Simonsen Decl. ¶¶ 5, 13.

***Third***, just two weeks later, 45 agencies from 10 of the Sanction States violated this Court's Orders at the December 11 DMC to provide hit reports on Meta's most recent proposals by December 16.[6] *See* 12/11/24 DMC Tr. at 120:19–121:2 ("repeat[ing]" the "admonition" that "[w]hen you're doing negotiations over search terms, you should be voluntarily providing hit reports to each other"); 144:17–145:8; 169:16–17; 172:3–4; ECF 1380 (requiring "the Parties to engage in prompt and transparent negotiations for purposes of identifying reasonable search terms and custodians and exchanging hit reports"); *see also* Simonsen Decl. ¶ 6.  Counsel for some South Dakota agencies represented that they were not even aware of the December 16 deadline, illustrating both that South Dakota violated the Court's September 6 Order (and Orders that the AGs should facilitate these negotiations), and underscoring South Dakota's (and other States') blasé approach to these negotiations and the Court's directives.  *Id.* ¶ 6.

2.    States' and Agencies' Failures to Constructively and Promptly Negotiate.

The Sanction States have disregarded numerous other Court directives.  Most acutely, notwithstanding the Court's and the District Court's admonitions that "time is of the essence," ECF 1292, 1299, the States have delayed negotiations.  In the September 6 Order, the Court ordered the Parties to "promptly meet and confer" on a schedule for the agencies to "substantially complete their respective productions of documents," September 6 Order at 248, but the States uniformly failed to make themselves available to meet and confer about agency discovery for 11 days after that Order issued.  Simonsen Decl.

---

[6] **AZ**: Department of Health Services, Board of Education; **CO**: Behavioral Health Administration, Department of Education, Department of Higher Education, Department of Human Services, Governor's Office, State Planning and Budgeting; **DE**: Department of Education, Department of Services for Children, Youth, and Their Families, Office of the Governor; **HI**: Department of Budget and Finance, Department of Business, Economic Development, and Tourism, Department of Commerce and Consumer Affairs, Department of Education, Department of Health, Department of Human Services, Office of the Governor, State Council on Mental Health; **IL**: Board of Education, Department for Children and Family Services, Department of Human Services, Department of Public Health, Office of the Governor; **KS**: Board of Regents, Department of Aging and Disability Services, Department of Children and Family Services, Department of Education, Department of Health & Environment, Governor's Office; **MN**: Department of Human Services, Department of Education; **NE**: Department of Health and Human Services, Department of Education, Governor's Office, Children's Commission; **NY**: Office of the Governor, State Division of Budget; **SD**: Department of Education, Department of Health, Department of Social Services, Board of Regents, Office of the Governor, Bureau of Finance and Management; Attorney General's Office.

¶ 14.  Counsel for some South Dakota agencies joined conferrals with Meta *for the first time* on December 16 despite requests for meet-and-confers by Meta on November 6 and 13 and December 2.  *Id.*

In addition, certain agencies in New York, California, and Kansas have continued to take the position that they are not bound by this Court's Orders *at all*,[7] *id.* ¶ 15 —a position this Court previously observed threatened "the rule of law," 11/21/24 DMC Tr. at 39:25–40:3.  Even now, eleven agencies have maintained in their communications with Meta that they are not subject to party discovery as this Court ordered.  *Supra* n.7  To be clear, this position defies the Court's contrary Orders regarding discovery.

Other States have delayed in obtaining the tools necessary to provide meaningful discovery in this case.  For example, on November 26, Arizona rejected Meta's suggestion that the AG either host agency data on the AG's eDiscovery platforms or hire an outside eDiscovery vendor to facilitate the discovery process, writing that the AG "d[id] not understand what 'data' [Meta] think[s] our office is capable of hosting" or "how or why nonparty state agencies should be expected to expend tax payer dollars hiring discovery vendors (if they are even able to do so)."  *Id.*, Ex. A.  But after being admonished for not providing hit reports to inform discussions, and failing to provide any schedule by December 18 for completing discovery as this Court directed (ECF No. 1479), Arizona revealed on December 18 that it had finally "engaged a discovery vendor."  ECF No. 1472 at 14.  Illinois revealed that it had not even *begun* its "export of custodial mailboxes" until *December 16*—3.5 months after this Court ordered Illinois to provide agency discovery, and 1.5 months after this Court's November 1 deadline for Illinois to propose custodians for all Illinois agencies (which Illinois failed to meet).  Kansas recently disclosed that it is just now taking steps to hire outside vendors to assist in providing discovery.  There is no reason why it should have taken months, multiple violations of court orders, and admonishments by this Court for States like Arizona and Illinois to take the steps necessary to comply with this Court's September 6 Order.

---

[7] Those agencies are as follows.  **NY**: Governor's Office, Division of Budget; **CA**: Office of the Governor, Governor's Office of Business and Economic Development, Office of Data & Innovation, Department of Finance, Department of Public Health, Department of Consumer Affairs, Business, Consumer Services and Housing Agency; **KS**: Governor's Office, Department for Aging & Disability Services.

3.    <u>States' and Agencies' Refusal to Produce Pre-2015 Documents.</u>

Ten Sanction States have either refused or failed to confirm that they will produce documents created before 2015 from their agencies.[8]  Yet these same States alleged a "Relevant Time[]" beginning "no later than 2012" (Multistate Compl. (Case No. 4:23-cv-5448, ECF 1) ¶ 19) and obtained a ruling from this Court ordering a general Relevant Time Period for Meta's document discovery that dates back to January 1, 2012, *see* ECF 969 at 4–5.  Indeed, this Court ordered that start date expressly because the State AGs had selected it as the earliest relevant start date for CIDs to Meta in connection with their pre-suit investigation.  *See* DMO 7 at 969; 6/20/24 DMC Tr. at 49:8-50:3.  Meta complied, producing more than two million documents (totaling around nine million pages) as of this month.

4.    <u>Prejudice to Meta.</u>

"Prejudice from an unreasonable delay in discovery responses is presumed," and failure to adequately respond to a discovery request or "to produce documents as ordered is sufficient prejudice for purposes of ordering discovery sanctions."  *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1236 (9th Cir. 2006).  Meta has experienced at least three forms of prejudice from the States' noncompliance with the Court's orders.  ***First***, the States' noncompliance has significantly delayed progression of the case.  Many States and agencies are over six weeks past the original substantial completion deadline and weeks away from the January 10 deadline, but have yet even to *begin* their document review, even as the case moves closer to the end of fact discovery and as more Meta witnesses are produced for deposition each day and questioned by States' attorneys who are failing to comply with their own discovery obligations.  The prejudice will only compound as the case moves forward, with future contingent deadlines, such as depositions of the States' witnesses, impacted.

***Second***, Meta has had to undertake burdensome efforts to negotiate with the States that would have been unnecessary had all agencies fully and in good faith engaged in discovery efforts and complied with the Court's orders.  Conservatively, Meta estimates that it has corresponded with individual MDL States over 2,000 times since the September 6 Order.  *Id.* ¶ 8.  Much of that effort would not have been

---

[8]  These States are: Arizona, Delaware, Hawai'i, Illinois, Indiana, Nebraska, New York, Ohio, Pennsylvania, and South Dakota.

necessary had the States and agencies simply engaged in discovery and followed court orders as parties do every day—for example, much of the correspondence would not have been necessary if the States had provided the information required by Court-ordered deadlines, and much of the rest came from negotiations that would have been unnecessary if the States had not delayed.

*Third*, Meta has been required to expend resources necessary to litigate issues that should have been settled without Court intervention. Meta should not have had to brief, and the Court should not have had to hear, disputes that boiled down to whether agencies needed to comply with the Court's orders.

### B. The Court Should Impose Discovery Sanctions for States' Noncompliance.

Because the Sanction States have failed to comply with this Court's orders, they should face discovery sanctions to bring them into compliance and ameliorate the prejudice to Meta. *See, e.g.*, *In re PPA*, 460 F.3d at 1236 (failure to comply with orders to produce documents is ground for discovery sanctions). Meta proposes below a measured and proportionate set of discovery sanctions that accomplish these goals. Meta's Proposed Order includes a chart reflecting the specific relief related to each agency.

### 1. The Court Should Find that States Violated Court Orders.

The Court should find that the Sanction States violated this Court's discovery orders. That finding is, as explained above, amply warranted. *Supra* III.A; *see* ECF 1291, 1299, 1380, 969; 12/11/24 DMC Tr. at 120:19–121:2, 144:17–145:8, 169:16–17, 172:3–4. It also permits an award of reasonable fees and costs. *Infra* III.C. And it would create a record to assist Judge Gonzalez Rogers in ruling on a motion for sanctions presented to her, which she has directed Meta to file. *See* ECF 1383 at 3.

### 2. The Court Should Require States to Use Meta's Custodian and Search Term Proposals.

One of the Sanction States' primary violations of the Court's orders is their failure to propose and negotiate custodians and search terms. *See supra* III.A.1. The Court should therefore order that: (1) all agencies that have failed to propose or negotiate custodians must use Meta's proposed custodians; (2) all agencies that have failed to propose or meaningfully negotiate search terms must use the search terms that Meta most recently proposed to that agency (as detailed more fully in the Parties' December 20 joint letter briefing, ECF 1482); and (3) all agencies that have objected to Meta's search terms proposal on burden

grounds but failed to provide Court-ordered hit reports corresponding to those search terms for all proposed custodians must use Meta's most recent proposed search terms.[9]

Meta has proposed reasonable search terms and custodians, and has worked hard to narrow them for the agencies at issue notwithstanding the agencies' failure to provide Court-ordered information necessary to inform negotiations. Accordingly, there is good cause to enter Meta's proposed search terms and custodians on the merits. But there is also cause to require adoption of Meta's proposed search terms and custodians as a discovery sanction. *See, e.g.*, *VYSE Gelatin Co. v. Hicks*, 2020 WL 12182759, at *6 (N.D. Ill. Feb. 11, 2020) (sanctioned party "waived their objections to the discovery requests when they did not provide a timely response"). Magistrate judges regularly impose custodians and search terms even in routine discovery disputes (as the Court has done in this case). *See, e.g.*, *Rusoff v. Happy Grp., Inc.*, 2023 WL 114224, at *8 (N.D. Cal. Jan. 5, 2023) (settling discovery dispute by selecting among competing search terms and custodians); *McMillion v. Rash Curtis & Assocs.*, 2017 WL 8948951, at *1 (N.D. Cal. Sept. 7, 2017) (denying appeal of MJ's order to produce documents held by custodians responsive to search terms). Here, the States' noncompliance warrants an order imposing Meta's proposals. *Cf. Glob. Freight, Inc. v. Tremell*, 633 F. Supp. 3d 985, 996 (E.D. Mich. 2022) (ordering party "to provide full and complete responses to these production requests, along with copies of the documents requested, on or before March 14, 2022, without objection and without promises of production at some future date").

> 3.    The Court Should Require States to Produce All Responsive, Non-Privileged Documents Returned by the Searches, Overruling the States' Objections Without Further Litigation.

For any of the Sanction States addressed in Section 2 above, the Court should deem any objections to Meta's RFPs waived or overruled without further briefing—requiring that the State produce all responsive, non-privileged documents, without applying any narrowing based on the States' objections, and without requiring Meta to engage in yet further litigation over the impropriety of those objections. This sanction flows naturally from the imposition of Meta's proposed search terms and custodians: If those search terms and custodians are imposed, the States have no valid basis to refuse to produce responsive, non-privileged documents returned from those searches. The States should not be permitted

---

[9] The full list of agencies that would be subject to this sanction is reflected in the Proposed Order.

to run out the clock on objection disputes with their noncompliance, only to turn around and stand on those objections after capitulating or being ordered to comply with the Court's Orders.

For example, the States should not be permitted to apply any narrowing in their responsiveness review based on their relevance objections; they should not be permitted to restrict the time period for which they produce documents based on their time-period objections; and they should not be permitted to withhold documents their experts *may* eventually rely on based on their objection that such "documents are not required to be disclosed until the parties' exchange of expert reports."[10]  The objections should be overruled as a sanction, without requiring Meta and the Court to incur additional expenditure of unnecessary resources litigating the propriety of the objections.  Due to these States' intransigence on running search terms or making document productions, there is simply no time left to litigate those objections.  Deeming the objections to RFPs waived or overruled is both an exercise of the Court's power to manage discovery, *Akkawi v. Sadr*, 2023 WL 1869179, at *3 (E.D. Cal. Feb. 9, 2023) (deeming objections waived), and also an appropriate evidentiary sanction for the States' misconduct, *cf. Guifu Li v. A Perfect Day Franchise, Inc*, 281 F.R.D. 373, 393 (N.D. Cal. 2012) (deeming facts alleged in the complaint established for trial, subject to rebuttal by the non-moving party).

> 4.   The Court Should Require Production of States' Pre-2015 Documents or Prohibit the States from Relying on Pre-2015 Documents or Conduct In Support of Their Claims.

As noted, agencies from ten Sanction States have refused to produce any pre-2015 documents, despite the general Relevant Time Period for Meta dating back to January 1 2012.  *See supra* III.A.3. Because these agencies have refused to produce documents from this same time-frame that they argued is relevant (and for which Meta was correspondingly required to produce documents), those States should either be required to produce these documents (by January 10, 2025) or they should be barred from relying on documents or conduct by Meta during that period.  Imposing this sanction ensures an even playing field.  Indeed, courts routinely impose evidentiary sanctions for discovery violations that prohibit reliance

---

[10] *See, e.g.*, *Woodway USA, Inc. v. LifeCORE Fitness, Inc.*, 2024 WL 890547, at *11 (S.D. Cal. Feb. 29, 2024) ("Plaintiff is not allowed to withhold [responsive] documents until it is ready to produce its expert report."); *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2005 WL 8173278, at *6 (S.D. Cal., Aug. 19, 2005) (same).

on evidence related to those violations. *See, e.g.*, *Guifu Li* , 281 F.R.D. at 394 (barring party from relying on witness's testimony and "other corporate deponent[s] on the [same topic]" for failure to produce deponent); *Tacori Enterprises v. Beverlly Jewellery Co.*, 253 F.R.D. 577, 584 (C.D. Cal. 2008) ("[A]n appropriate sanction, reasonably related to the subject of the discovery that was frustrated by sanctionable conduct, would be to preclude [a party] from presenting evidence regarding these four topics.").

5. <u>If States Fail to Complete Productions by January 10, 2025, Meta Should Be Granted Seven Further Hours of 30(b)(6) Deposition Time, and the States Required to Adequately Prepare.</u>

Meta is prejudiced by the States' and agencies' failure to produce documents in a timely way—as a result of the noncompliance with Court orders described above. If any Sanction State's agencies fail to substantially complete their productions by January 10, 2025, the Court should grant Meta seven hours of deposition time beyond those that will be provided, so that Meta can utilize that time to probe more fully the topics covered by its RFPs and for which the States have not substantially completed document production. In addition, each State should be required to adequately prepare such 30(b)(6) witnesses to competently testify to the topics covered by Meta's RFPs, so that Meta can at least explore the topics covered by those RFPs in a deposition. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 11264985, at *1-2 (N.D. Cal. July 2, 2018) (Gonzalez Rogers, J.) (discussing, with approval, Magistrate Judge's order for party to appear for a 30(b)(6) deposition). If the Sanction States have failed to substantially complete agency productions by the deadline, such sanction is warranted. *Cf. The Sunrider Corp. v. Bountiful Biotech Corp.*, 2010 WL 4590766, at *22 (C.D. Cal. Oct. 8, 2010) (ordering additional discovery to supplement where party "willfully disregarded" discovery obligation). For clarity, the agencies would still be obligated to complete their productions promptly in addition to these depositions, as 30(b)(6) testimony is not an adequate replacement for such production.

6. <u>The Court Should Direct States to Procure External eDiscovery Vendors Necessary to Complete Productions Promptly If they Assert Technical or Resource Constraints.</u>

The Court should direct the States to procure external eDiscovery vendors, at their own expense, in order to ensure their tardy productions are complete by no later than January 10, 2025, to the extent that they've indicated they cannot comply with discovery obligations due to a lack of technical capability. The

States' slow-walking of discovery must end. They must proceed expeditiously to collection and production, and given the States' noncompliance, they should not be permitted to escape their obligations by gesturing to technical or resource limitations of their systems or personnel. The States chose to bring suit, represented to the Court that they were prepared to move forward expeditiously, and sought an expedited case schedule. This Court has ruled they have discovery obligations—just as any party does. Meta has expended enormous effort to produce more than two million documents of more than nine million pages, in addition to voluminous data productions, all of which required major investments of both technical and human resources to complete on time. If the States cannot adequately participate in discovery with their existing systems, they must procure vendors who can.[11] Hiring external vendors that can fully and promptly meet discovery obligations when an entity cannot do so themselves is commonplace in modern litigation, so doing that same thing as a discovery sanction is certainly warranted.

7.    The Court Should Impose Monetary Sanctions for Continued Failure to Comply.

Courts  may impose prospective monetary sanctions to compel parties to comply with discovery orders. *See Grimes*, 951 F.2d at 240–41 (approving prospective monetary sanctions under Rule 37); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 n.10 (9th Cir. 1983) ("As in civil contempt, discovery sanctions may be imposed to compel compliance with an order . . . .").

Here, the Court should impose daily monetary sanctions on Sanction States until they begin fully complying with the Court's discovery orders. Daily monetary sanctions should accrue (as of the date of any Order by this Court awarding this relief) for any of the following ongoing violations: (a) failure to propose or reach agreement on search terms and custodians (or to run Meta's proposed search terms and custodians, if ordered); and (b) failure to meet substantial completion deadlines for Rule 34 and/or Rule 45 requests. Many States and agencies have shown that they will not comply with Court orders unless they are compelled to do so by sanctions or the threat of sanctions. For example, certain New York agencies (including the Governor's Office) told Meta that they were not subject to this Court's Orders, refused to engaged in discovery discussions unless Meta either issued a new subpoena or withdrew the motion that led to this Court's September 6 Order, and prior to the December DMC, "filed procedurally

---

[11] The States have already retained an eDiscovery vendor to host productions made by Meta.

improper letters with the Court, identifying themselves as 'nonparties' to this action, rehashing arguments that [the New York] AG does not exercise control over agency documents, insisting that they are not subject to the jurisdiction of this Court, and . . . requesting that the Court stay enforcement of its September 6, 2024 Order regarding document production." *See* ECF 1479 (citing ECF 1443). These agencies began to back away only after this Court invited Meta to move for sanctions in response. *See supra* II–III.A. Until a State's agencies come into compliance, that State should face a daily monetary sanction to "enforce compliance with a valid discovery order." *Grimes*, 951 F.2d at 241. This Court has discretion to fix the amount of these monetary sanctions, *id.*; a reasonable sanction is $200 per day, to double every week.

### C. The Court Should Award Reasonable Fees and Costs.

Once noncompliance with a discovery order has been found, the court "must" order reasonable fees and costs "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "[I]f a failure to comply has occurred, it becomes encumbent [sic] upon the disobedient party to show that his failure is justified or that special circumstances would make an award of expenses unjust." *David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th Cir. 1977). Here, given the violation of the Court's Orders, the Rule requires awarding Meta reasonable costs and fees.[12] It is the States' burden to show that their noncompliance was justified, and Meta will address any arguments they raise. But the States cannot meet their burden. Much of the noncompliance is the result of willful decisions to defy court Orders because States disagree with them. Most of it came from intentional attempts to avoid "the ordinary burdens of discovery." ECF 1213 at 7. And many of the belated, halfhearted attempts at compliance that *did* occur came only after threats of sanctions.

### V.   CONCLUSION

For the reasons set forth above, Meta respectfully requests that the Court impose the relief described in this Motion.

---

[12] Meta will submit a declaration documenting the fees it has incurred as a direct result of the States' non-compliance in a subsequent submission following the Court's ruling on this Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  December 23, 2024

Respectfully submitted,

**COVINGTON & BURLING LLP**

 */s/ Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com

Emily Johnson Henn (State Bar. No. 269482)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email:  ehenn@cov.com

Isaac D. Chaput (State Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: +1 (415) 591-6000
Facsimile: +1 (415) 591-6091
Email:  ichaput@cov.com

Gregory L. Halperin, *pro hac vice*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: +1 (212) 841-1000

Facsimile: +1 (212) 841-1010
Email:  ghalperin@cov.com

*Attorneys for Defendants Meta Platforms, Inc.;
Instagram, LLC; Meta Payments, Inc.; and
Meta Platforms Technologies, LLC*

META DEFENDANTS' NOTICE OF MOTION AND MOTION FOR DISCOVERY SANCTIONS REGARDING STATE AGENCIES