UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR  (PHK)<br><br>**ORDER RE: SCHEDULE FOR STATE AGENCY DOCUMENT PRODUCTION**<br><br>Re: Dkts. 1466 and 1472 |

This MDL has been referred to the undersigned for discovery purposes.  *See* Dkt. 426.  Now pending before the Court are joint letters submitted by Meta and the States regarding their proposed schedules for completing discovery from the state agencies in this action.  [Dkt. 1466; Dkt. 1471].  The Court ordered these Parties to submit these schedules at the December 11, 2024 Discovery Management Conference ("DMC") in response to the ongoing delays in finalizing search terms, custodians, and other search procedures for many of the state agencies' documents.

The Court reiterates the relevant legal standards for discovery.  Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*  Relevancy for purposes of discovery encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Throughout this litigation, the Court has encouraged (and continues to insist that) the Parties approach discovery in a collaborative and rational manner. *See* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment ("Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, *so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends*. But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. *Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure.*") (emphasis added). This Court has admonished all Parties in this case that counsel have a proactive duty to conduct discovery under the rules without requiring constant judicial intervention. *See Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 507 (D. Md. 2000) ("The rules of discovery must necessarily be largely self-enforcing. The integrity of the discovery process rests on the faithfulness of *parties and counsel* to the rules—both the spirit and the letter.") (emphasis added); *Hopei Garments (Hong Kong), Ltd. v. Oslo Trading Co.*, No. 87 CIV. 0932 (MBM), 1988 WL 25139, at *3 (S.D.N.Y. Mar. 8, 1988) ("[T]he discovery provisions of the Federal Rules are meant to function without the need for constant judicial intervention, and [] those Rules rely on the

honesty and good faith of counsel in dealing with adversaries."); *see also Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1331 (9th Cir. 1981) ("[E]mbroil[ing] the trial judge 'in day-to-day supervision of discovery . . . [is] a result directly contrary to the overall scheme of the federal discovery rules"); *cf. In re Google Litig.*, No. C 08-03172 RMW (PSG), 2011 WL 6951972, at *6 (N.D. Cal. July 8, 2011) (Parties should not be "free to flout their [discovery] obligations until a trial court utterly loses patience with them, and thereby embroil trial judges in day-to-day supervision of discovery.").

At the DMC held on December 11, 2024, and pursuant to Discovery Management Order No. 13 issued thereafter, the Court ordered Meta and the state agencies at issue to jointly submit final proposed schedules for getting state agency-related discovery finished within the currently set case schedule. *See* Dkt. 1479. The Parties promptly did so. *See* Dkts. 1466, 1472. The Court has carefully reviewed these submissions.

The Court attaches as an Appendix to this Order a marked-up version of the proposed schedules which indicates those proposed deadlines adopted by the Court, those proposed deadlines rejected by the Court, and modified deadlines as set by the Court in light of the tasks remaining in discovery, the time available, the current case schedule, and as an exercise of the Court's discretion to manage discovery.

Given the history of these Parties' inability to work out their differences in discovery, the Court was not shocked but nonetheless was disappointed at their failure to submit even *one* jointly proposed, fully agreed upon schedule as between Meta and the numerous state agencies at issue. All of the proposed schedules submitted were, at least to some extent, disputed. Further, despite this Court's explicit directives at the DMC for these proposed schedules to be submitted, two States failed to submit *any* proposed schedule for their agencies. Moreover, several States failed to counter propose a handful of specific dates for individual line-item deadlines or events, where Meta proposed dates for those specific events. The Court finds that failures by certain States to counter propose any schedule at all, or to counter propose a date in response to a specific date proposed by Meta, constitute a knowing waiver of rights.

The Court is likewise disappointed at the often times extreme positions set forth in the

4

Parties' competing proposed schedules. For example, one State proposed a highly truncated window of only one week in which depositions of the State's agencies could be taken. Meta, for its part, proposed for all States that the first date Meta could serve deposition notices would be December 30, 2024, with an additional proposal that all States object within three business days (*i.e.,* over the New Year's holiday) or that the States counter propose deposition dates within seven business days. Despite the Court's guidance at several DMCs to work things out rationally, these types of competing proposed schedules strain credulity. Given the relatively early first date for Meta to be able to serve deposition notices, there is no need to deviate from Section D of this Court's Standing Order for Discovery, which sets forth the requirements for the state agencies to object and counter propose alternate dates for depositions, if there are any objections. The Court expects counsel for all Parties to fully comply with the letter and spirit of Section D with regard to deposition scheduling.

The Court is further disappointed that the Parties' competing proposals included a number of cases in which the competing proposed deadlines differed only by about one or two weeks— experienced counsel on both sides of this dispute know better. The Court is discontented that seasoned attorneys for Meta and the States were incapable of reaching agreement on dates where the difference between the Parties was just a matter of days. At the last two DMCs, the Court heard repeatedly from lawyers for both sides that they were working hard to compromise, that they were trying their best, and that the failure to reach final agreements was the fault of the other side. At this point, such self-serving statements stand in stark contrast to what the Court has seen in the competing proposed schedules. Counsel on both sides should focus on actually compromising to resolve their disputes over search terms, custodians, and search procedures—results and actions will speak louder than generic arguments which strain credulity.

With regard to finalizing agreements on search terms and custodians, the Court is deeply concerned that several States included caveats in their proposed schedules (and a handful included argument about the alleged overbreadth of Meta's search terms). As noted in the attached Appendix, the Court **ORDERS** all of these Parties to finalize their agreements on search terms without any further undue delay. In the attached Appendix, the Court has set dates for the

5

|   |   |
|---|---|
| 1 | commencement of rolling productions by the state agencies, as well as dates for substantial |
| 2 | completion of such productions. As a matter of common sense and fair administration of |
| 3 | discovery, Meta and the States need to work backward from those dates to figure out for |
| 4 | themselves the deadlines by which they need to finalize search terms, custodians, and any other |
| 5 | disputed issues. Smart, experienced lawyers understand that they need to finish the search terms |
| 6 | negotiations sufficiently prior to the starting date for rolling productions so that rolling |
| 7 | productions can actually start by the deadlines set. |

As noted in the Appendix, the Court has set deadlines for the start of rolling productions. Meta's proposals included multiple such deadlines, which the Court **DENIES** as unnecessary because the concept of rolling productions (plural) is for documents to be continuously produced (in daily or at least weekly batches, as they are processed). The Court notes that several States proposed starting rolling productions much later in the process, which the Court **DENIES** as set forth in the Appendix. The requirement for the state agencies to start rolling productions means that the States are to roll the productions continuously as they are processed, so that productions meet the substantial completion date.

The Court has not set a specific date to finalize these negotiations because the Court assumes the Parties understand the practicalities here and will work to finalize by dates that work for the specific situation for each state agency. The Court expects counsel to resolve search terms and custodians without the need for the Court to parse individual search strings for the Parties—as the Court has stated at prior DMCs, counsel are far better suited to negotiate the search terms because of familiarity with the details of the case. Thus, as a practical matter, the Court expects agreements on all search terms and custodians to be finalized within a matter of days from the date of this Order, absent agreement by the Parties or other highly unusual circumstances.

Accordingly, Meta and the States **SHALL** file (for each State) a joint one-page status report, by no later than **January 6, 2025**, stating simply whether negotiations regarding search terms and custodians are finalized such that rolling productions can start by the deadline set by the Court for that State's agencies. Further, the status report for each State **SHALL** indicate whether any or all of the disputes involving that State in the joint discovery letter brief filed on December

6

20, 2024 [Dkt. 1482] have been resolved. If any disputes remain unresolved as between Meta and a particular State, the status report for that State shall identify (without further argument) which disputes in the joint letter brief [Dkt. 1482] remain unresolved. These status reports **SHALL NOT** include argument blaming the other side as to why search terms and custodians remain disputed—as far as this Court is concerned, any failure to finalize agreement is a failure by all counsel involved.

If a status report for a particular State indicates that search terms and custodians are still disputed (between Meta and one or more agencies of that State) as of January 6, 2025, the Court **ORDERS** that counsel for Meta, counsel for the state agency (or agencies) at issue, and counsel for the State Attorney General's office at issue working on this case **SHALL** meet and confer **in person** at a location mutually agreed upon, where that meet and confer shall take on or before **January 14, 2025**. The status report **SHALL** indicate for the Court the date, time, and location of the meet and confer, as well as the names and titles of all lawyers who will be participating in the meet and confer.

If the Parties are unable to agree on a schedule or location for this in-person meet and confer, then they **SHALL** jointly report **in person** to Courtroom F on the 15th Floor of the San Francisco courthouse (located at 450 Golden Gate Ave.) at 10:30 a.m. on a mutually agreed upon date chosen from January 7, 2025 through January 14, 2025 where they will receive instructions from the Court on completing their meet and confer at the courthouse. The status report **SHALL** indicate for the Court the names and titles of the lawyers who will appear and **SHALL** inform the Court of the date of their appearance in Courtroom F. If the Parties are unable even to agree upon a date to appear in this Court, then they **SHALL** so state in the status report and they **SHALL** jointly report **in person** to Courtroom F at 10:30 a.m. on January 7, 2025, unless otherwise ordered by the Court.

The Court again admonishes the Parties that they must work collaboratively and transparently to get all remaining discovery completed in a timely manner. The Court is disappointed that these Parties have proven incapable of working out their disagreements on this discovery resulting in failures to meet the deadlines previously set. The Court has made clear to

7

these Parties repeatedly that finishing this discovery on the current case schedule is imperative.

The Parties should not expect the Court to grant further extensions for completing this discovery, and the Court will view with a jaundiced eye failures to meet the deadlines set by this Order given the long pendency of this discovery, the extensive guidance previously provided by the Court, and the motions practice this discovery has inordinately spawned. The Court will take fully into account such failures to meet deadlines in evaluating further discovery disputes or other motions practice.

This **RESOLVES** Dkts. 1466 and 1472.

**IT IS SO ORDERED.**

Dated:  December 31, 2024

_____
PETER H. KANG
United States Magistrate Judge