[*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**AGENDA AND JOINT STATEMENT FOR JANUARY 17, 2025, CASE MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

I.     **Agenda for Case Management Conference ("CMC")**

The Parties offer the below proposed agenda for the CMC scheduled for January 17, 2025:

- Meta: Meta's Administrative Motion to Relate Insurance Coverage Matter (§ IV(D))

- PI/SD Plaintiffs and Defendants: Parties' proposals regarding inter-circuit assignments for directly-filed bellwether cases asserting *Lexecon* objections (§ V(A))

- PI/SD Plaintiffs: Plaintiffs' proposal to narrow Personal Injury ("PI") and School District ("SD") bellwether discovery pools (§ V(B))

- Meta: Relief sought with respect to California and South Carolina (§ V(C))

- State AGs: Dismissals while State AGs' objection to state agency order is pending (§ V(D))

- Meta: Anticipated request to place State AGs on separate trial track (§ V(E))

II.    **Joint JCCP Update**

At the last JCCP status conference, held December 17, 2024, Judge Kuhl (1) issued guidance and rulings with respect to various PI bellwether discovery issues; (2) issued a tentative schedule, including deadlines for general causation expert reports (April 18, 2025) and *Sargon* motions on general causation experts (July 28, 2025), and a first trial date of November 25, 2025; and (3) stated that a tentative ruling on the parties' competing proposed jury instructions on negligence and causation would be forthcoming.  Judge Kuhl invited the parties to submit comments on the Court's tentative schedule in their joint statement for the next CMC, which will occur on January 15; a copy of the parties' joint statement will be emailed to the Judge Gonzalez Rogers after it is submitted on January 13.  The JCCP Court's December 17, 2024 Minute Order and tentative schedule are attached as **Exhibits A** and **B**.

There are 17 plaintiffs remaining in the JCCP PI bellwether discovery pool, following voluntary dismissals by three bellwether plaintiffs.  In total, Defendants anticipate noticing 68 depositions of bellwether plaintiffs, family members, or treating physicians.  To date, the parties have cooperatively scheduled 56 of those depositions to take place between December 2024 and February 2025.  Depositions commenced on December 20.  As of January 10, 12 depositions have been completed.

As the Court is aware, Judge Kuhl sustained demurrers as to representative SD plaintiffs

from four states.  Thereafter, the court stayed the remaining SD cases in the JCCP pending

plaintiffs' appeal.  On January 6, the JCCP SD plaintiffs from all states other than the four states

at issue on the demurrer (approximately 400 SDs in total) filed a motion to lift the stay to allow

SD plaintiffs the opportunity to voluntarily dismiss their cases and re-file in this MDL.

Defendants intend to oppose that motion.

On January 8, Judge Kuhl issued an order (*see* **Exhibit C**) overruling Defendants'

demurrer to 7 JCCP plaintiffs' non-product negligent failure to warn claims under California law.

**III.    Joint Discovery Update**

A copy of the following submissions and orders, filed or issued after the last MDL CMC

held on November 22, will be sent by email to Judge Gonzalez Rogers after this CMC Statement

is filed: Discovery Management Order No. 12 (November 26, 2024, ECF 1380); Parties'

Discovery Management Conference ("DMC") Statement for December 11, 2024 DMC

(December 4, 2024, ECF 1408); Discovery Management Order No. 13 (December 20, 2024, ECF

1479); Order re Schedule for State Agency Document Production (December 31, 2024, ECF

1495); Parties' joint DMC Statement for January 16, 2025 DMC (January 10, 2025, ECF 1512).

**IV.    Joint Update on Appeals and Other Matters**

**A.    Defendants' Motions for Certification for Interlocutory Appeal**

On December 16, 2024, Defendants filed motions to certify for interlocutory appeal the

Court's School District Motion to Dismiss ("MTD") Orders.  *See* ECF 1460, 1462.  The PI/SD

Plaintiffs intend to oppose the motions.  Plaintiffs' oppositions are due January 14, 2025,

Defendants' replies are due January 28, 2025, and the motions will be heard at the February 12,

2025 CMC.  *See* ECF 1490.

**B.    State AGs' Anticipated 1292 Motion and Response to Defendants' 1292 Motion**

Meta filed a notice of conditional joinder in a supplemental motion filed by Snap and

YouTube to certify the Court's October 15, 2024 Order (ECF 1214).  ECF 1462, 1463.  The AGs

intend to file a response and a motion to certify the Court's order dismissing their unfairness

claims under Section 230.  The PI/SD Plaintiffs intend to oppose this motion given the rulings

contained in these orders on PI/SD Plaintiffs' consumer protection and misrepresentation claims.

**C.    Notices of Appeal of Failure-to-Warn MTD Orders at ECF 1214 and 1267**

On November 14, 2024, Meta filed a notice of appeal of the MTD Orders at ECF 1214 and 1267.  ECF 1330.  Since that time, TikTok has joined Meta's appeal (ECF 1389), and the AGs and PI/SD Plaintiffs have filed Notices of Conditional Cross-Appeals (ECF 1386, 1388) and motions in the Ninth Circuit to dismiss Meta's and TikTok's appeals.  Briefing on the MTDs, and any cross-MTDs the conditional cross-appeals, will be completed as of January 28, 2025.  The appeals have been consolidated, and deadlines for merits briefing are stayed pending resolution of the MTDs.

**D.    Meta's Administrative Motion to Relate Insurance Coverage Matter**

On January 7, Meta filed an administrative motion (ECF 1504) to consider whether a coverage action it filed on December 30 in N.D. Cal., in response to a declaratory relief action filed in Delaware by two of Meta's insurers, should be related to this MDL.  The insurers in Delaware seek to avoid their duty to defend Meta in the MDL on the purported grounds that Plaintiffs supposedly do not seek damages "because of" bodily injury, and that Plaintiffs' injuries supposedly were expected or intended.  Meta's coverage action asks this Court to suspend litigation between Meta and its insurers, including in Delaware.  The coverage action therefore satisfies the relatedness requirements under L.R. 3-12(a).

**V.    Parties' Additional Submissions**

**A.    InterCircuit Assignments for Bellwether Cases Asserting *Lexecon* Objections**

The Parties agree with this Court's suggested path to facilitate the intercircuit assignment of two bellwether cases asserting *Lexecon* objections that were directly filed in this MDL.  ECF 1383 at 3.  The Parties will prepare a stipulation setting forth the following: Plaintiffs Dymand McNeal (No. 23-cv-01092) and DeKalb County School District (No. 23-cv-05733) will re-file their cases in E.D. Pa. and the N.D. Ga., respectively.  Defendants will then tag the cases for transfer, without Plaintiffs' opposition, to this MDL.  Upon transfer, Plaintiffs will dismiss without prejudice the original, directly-filed cases, as replaced by the two newly-transferred actions.

### B.    PI/SD Plaintiffs' Proposal for Narrowing Bellwether Discovery Pools

**PI/SD Plaintiffs' Position.**  As previewed during the October (Hr'g Tr. 29:7-32:11) and November (Hr'g Tr. 7:23-8:8) CMCs, the Parties have been meeting and conferred regarding the potential narrowing of the PI and SD bellwether discovery pools before experts disclosures.  In light of the Court's guidance, the PI/SD Plaintiffs proposed that each side strike 2 bellwether cases from the cases it originally selected for the bellwether discovery pools one week after the Court's approval.  The remaining discovery pools would then include 7 PI bellwether cases[1] and 8 SD bellwether cases for remaining fact and expert discovery. On May 23, 2025 at 12:00 p.m. (CMO No. 18, ECF 1290), the Court would then select 5 cases from each bellwether discovery pool to form the bellwether trial pools, for a total of 10, consistent with Step 2 of the bellwether selection process outlined in CMO No. 10, at 4-5 (ECF 604).

Defendants are opposed to any narrowing of the bellwether pools prior to expert disclosures and have proposed, at most, each side striking one of the other side's SD bellwether picks. As previously explained to the Court, Plaintiffs' proposal to narrow the bellwether discovery pools now was made for efficiency purposes and to reduce the burdens for each side arising from conducting expert discovery on a total of 24 bellwethers.  Defendants hypothesize a parade of horribles that would ensue from this approach, but their concerns are hyperbole. Winnowing the pools in the limited manner Plaintiffs propose occurring now would not inhibit representative bellwether cases from being tried because it would only limit the discovery pool, not determine the ultimate trial pool. Thus the Court and the Parties would still have guidance from case-specific expert reports prior to additional narrowing to arrive at the trial pool (and to be clear, such guidance would in any event only be available from *Plaintiffs'* experts' reports under the Court's schedule (ECF 1290)).  Plaintiffs' proposal that each side strike its own picks also addresses the concern acknowledged *by Meta* at the prior CMC (Hr'g Tr. 30:17-31:21) that

---

[1] Plaintiffs advised Defendants that Plaintiff Hawthorne has decided to dismiss her action with prejudice.  Plaintiff Hawthorne just recently reached majority at which point she necessarily had to decide independently whether to continue her claim. As Plaintiffs advised Defendants, her father has recently been hospitalized with a life-threatening situation. No negative information recently came to light and Defendants' insinuation as to Plaintiff Hawthorne's motive to dismiss her case is baseless.

1  instead striking the other side's picks would result in the Parties simply targeting the strongest of

2  each other's picks.  Defendants are now in possession of hundreds of thousands of documents

3  from the bellwether Plaintiffs, and Meta's argument that Plaintiffs have more information on their

4  clients does not favor one method over the other. Plaintiffs' proposal that each Party would only

5  be permitted to strike its own picks is a self-executing process that avoids gamesmanship.

6  In addition, there is nothing about narrowing the discovery pools now that would cause a

7  plaintiff to decide to voluntarily dismiss their case.  While voluntary dismissals—or settlements—

8  may occur at any stage of litigation, PI Plaintiff bellwether depositions are scheduled and counsel

9  are not anticipating additional dismissals. If the Court nonetheless believes it necessary to address

10  Plaintiff Hawthorne's voluntary dismissal, Defendants could be permitted to veto one of

11  Plaintiffs' two strikes, meaning Plaintiffs would have to keep the vetoed strike and instead strike

12  another.

13  For the above reasons, Plaintiffs' proposal that each side strike 2 bellwether cases from

14  the cases it originally selected for the bellwether discovery pool should be adopted.

15  **Defendants' Position.**  Plaintiffs' proposal for narrowing the PI bellwether discovery

16  pool would contravene the existing Court-ordered process for exercising strikes; limit the Court's

17  ability to fashion representative trial pools; and deprive the Court and the Parties of guidance

18  from expert reports before the pool is narrowed.  As to the SD cases, where expert discovery is

19  expected to impose significant expense on the Parties, if the Court is inclined to allow additional

20  strikes before expert reports are due, each side should be allowed to strike one additional case

21  (beyond the single strike already allowed at bellwether trial selection), regardless of which Party

22  selected the case.  In addition, for every PI or SD bellwether case that Plaintiffs voluntarily

23  dismiss, Defendants should be permitted to strike one additional case (from the entire discovery

24  bellwether pool) during bellwether trial selection.

25  *First*, Plaintiffs' proposed approach to narrowing the bellwether discovery pools—by

26  having each side strike two of *its own picks* from each pool, and removing the Parties' ability to

27  exercise their existing strike on the other side's picks—is contrary to the method this Court

28  already ordered for selecting bellwether trial pools, and the opposite of how pool strikes

ordinarily are exercised in MDLs.  This Court previously ordered that each side could exercise one strike of its choice during trial bellwether selection, regardless of which side originally selected the case.  CMO 10 (ECF 604) at 4-5.  Plaintiffs' proposal would eliminate those strikes entirely, depriving Defendants of the ability to exercise *any* strikes of Plaintiffs' picks.  There is good reason why MDL courts do not limit parties to strikes of only that party's original picks: plaintiffs have unique information about which of their clients is most likely to proceed to trial (an insight their document productions shed no light on for Defendants); and the corresponding ability to voluntarily dismiss any case.  This effectively allows them to unilaterally strike any defense pick they no longer wish to pursue.  Plaintiffs' proposed approach therefore inflicts a one-sided disadvantage on Defendants, by forcing them to eliminate some of their own picks and precluding them from eliminating any of Plaintiffs', while Plaintiffs retain the ability to voluntarily dismiss, at any time, any defense picks.

Indeed, on January 3—after some significant negative information came to light about an individual Plaintiff's father—Plaintiffs informed Defendants that they plan to dismiss one of Defendants' original bellwether picks (*Hawthorne*), saying that the Plaintiff's father is facing an unspecified medical issue and "the Plaintiffs' immediate priority is Mr. Hawthorne's health." Especially given that dismissal, the Court should reject a proposal that would exacerbate Defendants' disadvantage by requiring them to strike another of their own picks now, and barring them from striking any of Plaintiffs' picks.  If anything, the Court should, during trial bellwether selection, permit Defendants to strike one additional case for every bellwether case Plaintiffs voluntarily dismiss.  That would counter-balance *Hawthorne* (and any other cases) falling out of the bellwether pool at Plaintiffs' election, maintaining a representative pool.[2]

*Second*, Plaintiffs' proposed approach would curtail the Court's ability to exercise its

---

[2] Plaintiffs suggest Defendants should instead be permitted merely to veto one of the two strikes that Plaintiffs would, under their proposal, be permitted to exercise on Plaintiffs' own picks - but with Plaintiffs then permitted to strike a different one of their picks.  But that would not offset the prejudice to Defendants from Plaintiffs having already (effectively) stricken one of Defendants' picks, because it would result in an imbalanced pool consisting (under Plaintiffs' approach) of 4 Plaintiff picks and only 3 Defendant picks.

1  discretion to narrow the bellwether discovery pools "organic[ally]" to form representative trial

2  pools. 3/22/24 CMC Tr. at 16:9-12. It would shrink the already-small PI bellwether discovery

3  pool (originally consisting of 12 cases) to only 7 cases,[3] in turn reducing the number of cases this

4  Court may remove from the pool—from 5 cases (under CMO 10), to only 2 cases.

5      *Third*, Plaintiffs' approach would prevent the Parties and Court from having the benefit of

6  expert reports *before* the discovery pools are narrowed to trial pools. This is the third time the PI

7  Plaintiffs have suggested moving bellwether trial selection *before* expert reports are due. *See*

8  2/23/24 CMC Tr. at 92:8-16; 10/25/24 CMC Tr. at 29:7-13. In both prior instances, the Court

9  clearly stated that it had purposefully set expert report deadlines to occur *before* bellwether trial

10  selection, to ensure the Parties and Court have fulsome information about all bellwethers before

11  cases are selected for the trial pool—including expert opinions regarding causation. *See* 2/23/24

12  CMC Tr. at 92:19-93:15; 10/25/24 CMC Tr. at 29:16-24. Nothing has changed that would

13  justify a new approach.

14      **C.    Relief Sought by Meta with Respect to California and South Carolina**

15      **Meta's Position.** At the November 22 CMC, the Court addressed the refusal of certain

16  agencies in California and South Carolina to engage in the Court-ordered meet-and-confer

17  process on Meta's requests for production of documents ("RFPs"). Following the CMC, the

18  Court issued CMO 19, noting that "one cannot refuse compliance because they disagree with a

19  court's decision and consequences will flow," ECF 1383 at 3, and directed Meta to submit a brief

20  as to what relief it was seeking. *Id.*

21      Meta has not yet submitted such a brief because, since the November 22 CMC, it has

22  continued to negotiate in good faith with the agencies at issue in an effort to resolve document

23  issues. These negotiations have involved substantial efforts and meaningful concessions on

24  Meta's part. Meta has reached agreements with the SC agencies on a document production

25  process that they will follow to meet their discovery obligations. Discussions with CA are still

26

27  [3] The PI bellwether pool will now consist of only 11 cases, following the January 3 decision by
   bellwether Plaintiff Hawthorne to dismiss her case. Notably, 3 JCCP bellwethers dismissed their

28  cases on the eve of depositions, raising the specter of additional MDL dismissals as depositions
   approach.

AGENDA AND JOINT STATEMENT FOR JANUARY 17,
2025, CASE MANAGEMENT CONFERENCE
4:22-md-03047-YGR

1    ongoing, including an in-person conferral that is scheduled for January 14.  Accordingly, Meta

2    does not at this time intend to seek sanctions from the District Court against CA or SC for these

3    specific agencies' earlier non-compliance, but reserves the right to do so in the future should

4    negotiations fail to yield a suitable resolution.

5            **California Executive Agencies' Position.**  On December 18, 2024, Meta served Rule 45

6    subpoenas on the California Executive Agencies; the agencies accepted service and have already

7    begun producing responsive documents on the schedule ordered by Magistrate Judge Kang.  The

8    California Executive Agencies have been meeting and conferring with Meta regarding the scope

9    and breadth of search terms and appropriate limiters that are tailored to the issues in the case, and

10   will continue to meet and confer in an effort to reach agreement.  In the meanwhile, the California

11   Executive Agencies continue to produce responsive, non-privileged documents.

12           **South Carolina AG's Position.**  The South Carolina Attorney General's Office reached

13   an agreement with Meta for obtaining the requested documents from the South Carolina

14   Governor's Office and other agencies.  We are in the process of reviewing those documents and

15   plan to produce the relevant and non-privileged documents within our deadline for substantial

16   completion.  The previous dispute over obtaining their documents is moot.

17           **D.      Dismissals While State AGs' Objection to State Agency Order Is Pending**

18           There were originally 35 State AGs with lawsuits pending in this MDL.  On September 6,

19   2024, Magistrate Judge Kang issued an order granting in part, and denying in part, Meta's motion

20   to compel discovery from state agencies.  ECF 1117.  The State AGs filed their objection on

21   September 20, 2024, and the Court heard argument on October 25, 2024.  Resolution of the AGs'

22   objection remains pending.  Since the order, four States—North Dakota, Georgia, Montana, and

23   Florida—have dismissed their cases against Meta (with two of them refiling in state court but

24   without COPPA claims).  Other State AGs—including Michigan and Missouri—are likewise

25   considering dismissing some or all of their claims against Meta as a result of the state agency

26   discovery order.  Another State—Maine—is in discussions with Meta about dismissing its state-

27   law claims (and asserting only a COPPA claim).  These dismissals, if effectuated, would leave 25

28   states that are still subject to the agency discovery at issue (all but the 4 states that would be

1    asserting only COPPA claims).

2        **E.    Meta's Anticipated Request to Place State AGs on Separate Trial Track**

3        **Meta's Position.**  Meta has undertaken enormous efforts to obtain from the States subject

4    to agency discovery compliance with the Court's discovery orders.  This has been challenging, as

5    the States and their agencies have repeatedly violated the Court's orders and missed deadlines for

6    proposing, negotiating, or agreeing on search terms and custodians for Meta's RFPs, *see* ECF

7    1291, 1292, 1299, 1380, 1479, among other issues, delaying progress.  As Meta proceeds to

8    depositions of State witnesses, the States have made clear that they will continue to resist

9    reasonable discovery.  Setting aside the extensive resources this has caused Meta to expend, this

10   delay has prejudiced Meta's ability to progress the States' cases.  For example, as of December

11   23, Meta had received only 32,604 documents total from 14 of the States at issue.[4]  Nine of those

12   14 States had produced volumes in only the tens or hundreds of documents; one had produced

13   none.  A number of States still have not agreed on basic parameters for document discovery,

14   including some that—after improperly delaying discovery for months—are now seeking to avoid

15   it on the purported ground that there is no time left.  Even those States that have agreed on

16   parameters are not required to substantially complete document productions until late January or

17   early February (ECF 1495.1)—nearly three months after Meta substantially completed its

18   production of documents, which now total 2 million.

19       The States' prior anemic production efforts, statements from individual State counsel

20   ───────────────

21   [4] That the *State AGs* substantially completed their (limited) productions last summer is beside the
     point.  Most of the relevant documents will come from the agencies—documents the State AGs
22   outright refused *for months* to provide.  Far from having "marginal relevance" the agency
     discovery Meta seeks is central to Meta's defense, as Magistrate Judge Kang has repeatedly
23   recognized.  *See, e.g.*, 12/11/24 DMC Tr. at 156:3-21 ("the scope of discovery is certainly broader
     than the scope of plaintiffs' claims," and "part of [Meta's] theory of defense is that there are these
24   alternate stressors," which are "within … the realm of discoverable information" from agencies).
     The States' continued mischaracterization of Meta's discovery as "extraordinarily broad" is thus
25   also incorrect, and ignores the enormous concessions Meta has made in negotiations by (i)
     proposing reasonable search terms and custodians to States that failed, despite being ordered, to
26   make those proposals; (ii) substantially narrowing Meta's proposals based on agencies' claims of
     burden (which those agencies must substantiate); (iii) removing more than 50 agencies from the
27   search term process; and (iv) working with agencies to identify alternative methods of targeted
     collections.
28

1    about their inability to comply with future deadlines, and past violations of prior substantial

2    completion deadlines all raise substantial questions about whether the States will meet the most

3    recent deadlines set by Magistrate Judge Kang.  But even if they do so, Meta already has been

4    prejudiced.  To illustrate, whereas the States had roughly five months between Meta's substantial

5    completion deadline and the States' deadline to depose Meta witnesses, Meta will have only

6    approximately two months to prepare for and complete potentially 100 State depositions.

7    (Because of the multitude of States suing, even a modest number of State depositions, such as

8    three per State, leads to a large number of total depositions.)  And this compressed deposition

9    period will occur at a time when the States are conducting a high volume of Meta witness

10   depositions, including the most senior Meta witnesses.

11        Meta has a pending request to seek relief from Magistrate Judge Kang for the States'

12   violations of the Court's orders (ECF 1471).  However, Judge Kang has made clear that requests

13   for relief from the schedule must be made with the District Court.  *See* 12/11/24 DMC Tr. at

14   114:1-22.  Accordingly, Meta seeks the Court's guidance on a timetable for seeking such relief—

15   which will include expanding the time for Meta to complete State depositions and,

16   correspondingly, the time by which the States may proceed to trial—so the Court may hear

17   argument if it wishes at the February CMC.  By then, the Parties will know whether at least some

18   States have met their late January/early February substantial completion obligations, the volume

19   of documents Meta will need to analyze to prepare for depositions, and the extent to which the

20   States' discovery positions have prejudiced Meta's ability to complete depositions.

21        **State AGs' Position.**  Meta's allegations are at best misleading and at worst patently

22   false.  The State AGs substantially completed production of documents from their own offices on

23   August 30, 2024, nearly four months ago, which is in no way an "anemic" effort.  And despite the

24   fact that Meta is seeking extraordinarily broad discovery with at best marginal relevance to the

25   issues in this case, the State AGs have worked diligently and collaboratively with state agency

26   counsel to satisfy Magistrate Judge Kang's orders regarding agency discovery.  The State AGs

27   and relevant agencies have made and continue to make significant progress in completing this

28   discovery; state agencies have generally begun document productions and are moving towards

1    substantial completion.

2          The State AGs are evaluating Meta's request regarding the discovery and trial schedule–

3    including Meta's detailed argument above, which the State AGs dispute. The State AGs will be

4    prepared to discuss Meta's request in person at the CMC.

Respectfully submitted,

DATED: January 10, 2025

By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET

1

2

MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

3

4

Federal/State Liaisons

5

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

6

7

8

9

10

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

11

12

13

14

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

15

16

17

18

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

19

20

21

22

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

23

24

25

26

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106

27

28

AGENDA AND JOINT STATEMENT FOR JANUARY 17,
2025, CASE MANAGEMENT CONFERENCE
4:22-MD-03047-YGR

1

2

Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

3

Plaintiffs' Steering Committee Leadership

4

5

6

7

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

8

9

10

11

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

12

13

14

15

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

16

17

18

19

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

20

21

22

23

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

24

25

26

27

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

28

SIN-TING MARY LIU

**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436

1
2

Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

3
4

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**

5
6

280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

7
8

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**

9
10

505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

11
12
13

Plaintiffs' Steering Committee Membership

14

*Attorneys for Individual Plaintiffs*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 17 -

4:22-MD-03047-YGR

1

2

**PHILIP J. WEISER**
Attorney General
State of Colorado

3

4

*/s/ Krista Batchelder*
Krista Batchelder (CO Reg.45066),
pro hac vice

5

Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542),

6

pro hac vice
Solicitor General

7

Elizabeth Orem (CO Reg. 58309), pro hac vice

8

Assistant Attorney General
Colorado Department of Law

9

Ralph L. Carr Judicial Center
Consumer Protection Section

10

1300 Broadway, 7th Floor
Denver, CO 80203

11

Phone: (720) 508-6384

12

krista.batchelder@coag.gov
Shannon.stevenson@coag.gov

13

Elizabeth.orem@coag.gov

14

*Attorneys for Plaintiff State of Colorado, ex rel.*

15

*Philip J. Weiser, Attorney General*

16

17

**ROB BONTA**
Attorney General

18

State of California

19

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)

20

Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)

21

Emily Kalanithi (SBN 256972)

22

Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)

23

Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)

24

Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)

25

Deputy Attorneys General
California Department of Justice

26

Office of the Attorney General

27

455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

28

Phone: (415) 510-4400

- 18 -

Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*


**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney

General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney
General and the New Jersey Division of
Consumer Affairs Matthew J. Platkin, Attorney
General for the State of New Jersey, and Cari
Fais, Acting Director of the New Jersey Division
of Consumer Affairs*

1          COVINGTON & BURLING LLP

2          By:  */s/ Ashley M. Simonsen*
3          Ashley M. Simonsen, SBN 275203
           COVINGTON & BURLING LLP
4          1999 Avenue of the Stars
           Los Angeles, CA 90067
5          Telephone: (424) 332-4800
           Facsimile: + 1 (424) 332-4749
6          Email: asimonsen@cov.com

7          Phyllis A. Jones, *pro hac vice*
8          Paul W. Schmidt, *pro hac vice*
           COVINGTON & BURLING LLP
9          One City Center
           850 Tenth Street, NW
10         Washington, DC 20001-4956
           Telephone: + 1 (202) 662-6000
11         Facsimile: + 1 (202) 662-6291
12         Email: pajones@cov.com

13         *Attorney for Defendants Meta Platforms, Inc.*
           *f/k/a Facebook, Inc.; Facebook Holdings,*
14         *LLC; Facebook Operations, LLC; Facebook*
           *Payments, Inc.; Facebook Technologies, LLC;*
15         *Instagram, LLC; Siculus, Inc.; and Mark Elliot*
16         *Zuckerberg*

17         KING & SPALDING LLP

18         By: */s/ Geoffrey M. Drake*
19         Geoffrey M. Drake, *pro hac vice*
           TaCara D. Harris, *pro hac vice*
20         1180 Peachtree Street, NE, Suite 1600
           Atlanta, GA 30309-3521
21         Telephone: (404) 572-4600
22         Facsimile: (404) 572-5100
           Email: gdrake@kslaw.com
23                  tharris@kslaw.com

24         Kristen R. Fournier, *pro hac vice*
           KING & SPALDING LLP
25         1185 Avenue of the Americas, 34th Floor
           New York, NY 10036-2601
26         Telephone: (212) 556-2100
           Facsimile: (212) 556-2222
27         Email: kfournier@kslaw.com
           David P. Mattern, *pro hac vice*
28

1   KING & SPALDING LLP
    1700 Pennsylvania Avenue, NW, Suite 900
2   Washington, DC 20006-4707
    Telephone: (202) 737-0500
3   Facsimile: (202) 626-3737
    Email: dmattern@kslaw.com
4

5   Bailey J. Langner (SBN 307753)
    KING & SPALDING LLP
6   50 California Street, Suite 3300
    San Francisco, CA 94111
7   Telephone: (415) 318-1200
    Facsimile: (415) 318-1300
8   Email: blangner@kslaw.com

9
    Andrea Roberts Pierson, *pro hac vice*
10  FAEGRE DRINKER LLP
    300 N. Meridian Street, Suite 2500
11  Indianapolis, IN 46204
    Telephone: + 1 (317) 237-0300
12  Facsimile: + 1 (317) 237-1000
    Email: andrea.pierson@faegredrinker.com
13

14  Amy R. Fiterman, *pro hac vice*
    FAEGRE DRINKER LLP
15  2200 Wells Fargo Center
    90 South Seventh Street
16  Minneapolis, MN 55402
    Telephone: +1 (612) 766-7768
17  Facsimile: +1 (612) 766-1600
    Email: amy.fiterman@faegredrinker.com
18

19
    *Attorneys for Defendants TikTok Inc., ByteDance*
20  *Inc., TikTok Ltd., ByteDance Ltd., and TikTok*
    *LLC*
21

22  MUNGER, TOLLES & OLSON LLP
23  By: */s/ Jonathan H. Blavin*
    Jonathan H. Blavin, SBN 230269
24  MUNGER, TOLLES & OLSON LLP
    560 Mission Street, 27th Floor
25  San Francisco, CA 94105-3089
    Telephone: (415) 512-4000
26  Facsimile: (415) 512-4077
    Email: jonathan.blavin@mto.com
27

28  Rose L. Ehler (SBN 29652)

                                    - 22 -

1                         Victoria A. Degtyareva (SBN 284199)

2                         Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)

3                         MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor

4                         Los Angeles, CA 90071-3426
Telephone: (213) 683-9100

5                         Facsimile: (213) 687-3702
Email: rose.ehler@mto.com

6                         Email: victoria.degtyareva@mto.com

7                         Email: Ariel.Teshuva@mto.com

8                         Lauren A. Bell (*pro hac vice forthcoming*)

9                         MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,

10                        Suite 500 E
Washington, D.C. 20001-5369

11                        Telephone: (202) 220-1100
Facsimile: (202) 220-2300

12                        Email: lauren.bell@mto.com

13                        *Attorneys for Defendant Snap Inc.*

14                        WILSON SONSINI GOODRICH & ROSATI

15                        Professional Corporation
By: */s/ Brian M. Willen*

16                        Brian M. Willen (*pro hac vice*)

17                        WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor

18                        New York, New York 10019
Telephone: (212) 999-5800

19                        Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

20

21                        Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)

22                        WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300

23                        San Francisco, CA 94105
Telephone: (415) 947-2000

24                        Facsimile: (415) 947-2099
Email: lwhite@wsgr.com

25                        Email: smachock@wsgr.com

26

27                        Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)

28                        WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100

1  Los Angeles, CA 90013
   Telephone: (323) 210-2900
2  Facsimile: (866) 974-7329
   Email: cchiou@wsgr.com
3  Email: mdonohue@wsgr.com

4
   *Attorneys for Defendants YouTube, LLC and*
5  *Google LLC*

6  WILLIAMS & CONNOLLY LLP
   By: */s/ Joseph G. Petrosinelli*
7  Joseph G. Petrosinelli (*pro hac vice*)
   jpetrosinelli@wc.com
8  Ashley W. Hardin (*pro hac vice*)
   ahardin@wc.com
9  680 Maine Avenue, SW
   Washington, DC 20024
10 Telephone.: 202-434-5000
   Fax: 202-434-5029
11

12 *Attorneys for Defendants YouTube, LLC and*
   *Google LLC*
13

14 MORGAN, LEWIS & BOCKIUS LLP
   By: */s/ Yardena R. Zwang-Weissman*
15 Yardena R. Zwang-Weissman (SBN 247111)
   300 South Grand Avenue, 22nd Floor
16 Los Angeles, CA 90071-3132
   Tel.: 213.612.7238
17 Email: yardena.zwang-
   weissman@morganlewis.com
18

19 Brian Ercole (*pro hac vice*)
   600 Brickell Avenue, Suite 1600
20 Miami, FL 33131-3075
   Tel.: 305.415.3416
21 Email: brian.ercole@morganlewis.com

22
   Stephanie Schuster (*pro hac vice*)
23 1111 Pennsylvania Avenue NW
   NW Washington, DC 20004-2541
24 Tel.: 202.373.6595
   Email: stephanie.schuster@morganlewis.com
25

26 *Attorneys for Defendants YouTube, LLC and*
   *Google LLC*
27

28

- 24 -

1

## **<u>ATTESTATION</u>**

2    I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

3  to the filing of this document has been obtained from each signatory hereto.

4  Dated: January 10, 2025

By: /s/ *Lexi J. Hazam*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AGENDA AND JOINT STATEMENT FOR JANUARY 17,
2025, CASE MANAGEMENT CONFERENCE
4:22-MD-03047-YGR