# EXHIBIT C

**FILED**
Superior Court of California
County of Los Angeles

JAN 08 2025

David W. Slayton, Executive Officer/Clerk of Court
By: L. M'Greene, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

***Social Media Cases***
***JCCP5255***
**(Lead Case: 22STCV21355)**

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**

**Defendants' Demurrer to Identified Amended Short-Form Complaints**

**Defendants' Motion to Strike Allegations from Identified Amended Short-Form Complaints**

**Meta Defendants' Motion to Seal (Plaintiffs' Opposition to Defendants' Demurrer to Identified Amended Short-Form Complaints and Accompanying Filings)**

Court's Ruling:  The Demurrer is overruled.  The Motion to Strike is granted solely with respect to the phrase "including but not limited to" in the fifth paragraph of the short-form complaints and as to the mention of "challenge videos" in the fifth paragraph of one short-form complaint.  The Motion to Strike is denied as to all other allegations.  The Motion to Seal is granted with directions as set forth below.


Plaintiffs in these coordinated proceedings are minor users of social media platforms (or parents of those users) who allege they have suffered various types of harm as a result of the use of the platforms.  Plaintiffs bring their claims against multiple Defendants that designed and operated the following social media platforms: Facebook, Instagram, Snapchat, TikTok, and YouTube.  Facebook and Instagram are owned, designed, and operated by a group of Defendants who are referred to collectively herein as "Meta."  Snapchat is owned, designed, and operated by Defendant Snap Inc. (Snap).  TikTok is owned, designed, and operated by multiple Defendants who are referred to collectively herein as "ByteDance."  YouTube is owned, designed, and operated by multiple Defendants referred

1

to collectively herein as "Google."

On May 16, 2023, Plaintiffs filed their Master Complaint.  The Master Complaint alleges 13 causes of action:

> (1) Strict Liability – Design Defect (against all Defendants);
> (2) Strict Liability – Failure to Warn (against all Defendants);
> (3) Negligence – Design (against all Defendants);
> (4) Negligence – Failure to Warn (against all Defendants);
> (5) Negligence (against all Defendants);
> (6) Negligent Undertaking (against all Defendants);
> (7) Fraudulent Concealment and Misrepresentation (against Meta);
> (8)  Negligent Concealment and Misrepresentation (against Meta);
> (9) Negligence per se (against all Defendants);
> (10) Sex and Age Discrimination (against all Defendants);
> (11) Wrongful Death (against all Defendants);
> (12) Survival Action (against all Defendants); and
> (13) Loss of Consortium and Society (against all Defendants).

Each Plaintiff or family also filed a short-form complaint that adopts some or all of the allegations of the Master Complaint, specifies each Plaintiff's injuries, and adds individual allegations concerning the social media platforms used by each Plaintiff and how those platforms injured him or her.

Plaintiffs allege that the social media platforms were designed "to addict minors and young adults, who were particularly unable to appreciate the risks posed by the products, and particularly susceptible to harms from those products." (Mast. Compl., ¶ 830.)  "[E]ach Defendant knew or, by the exercise of reasonable care, should have known that Plaintiffs would use these products without inspection for [their] addictive nature." (Mast. Compl., ¶ 832.)  "Each Defendant defectively designed its respective products to take advantage of the chemical reward system of users' brains (especially young users) to create addictive engagement, compulsive use, and additional mental and physical harms." (Mast. Compl., ¶ 833.)

"Each Defendant failed to test the safety of the features it developed and implemented for use on its respective products. When each Defendant did perform some product testing and had knowledge of ongoing harm to

2

Plaintiffs, it failed to adequately remedy its respective product's defects or warn Plaintiffs." (Mast. Compl., ¶ 834.)

"Each of the Defendant's respective products are likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of abuse, addiction, and compulsive use by youth which can lead to a cascade of harms. Those harms include but are not limited to dissociative behavior, withdrawal symptoms, social isolation, damage to body image and self-worth, increased risky behavior, exposure to predators, sexual exploitation, and profound mental health issues for young consumers including but not limited to depression, body dysmorphia, anxiety, suicidal ideation, self-harm, insomnia, eating disorders, death, and other harmful effects." (Mast. Compl., ¶ 836.)

Plaintiffs also allege harm related to Defendants' platforms' age verification—or lack thereof. "None of the Defendants conduct proper age verification or authentication. Instead, each Defendant leaves it to users to self-report their age. This unenforceable and facially inadequate system allows children under 13 to easily create accounts on Defendants' apps." (Mast. Compl., ¶ 57.) Plaintiffs thus seek to hold Defendants liable for "[f]ailing to implement effective protocols to block users under the age of 13." (Mast. Compl., ¶ 930(a).)

Plaintiffs also allege that Defendants' platforms are designed to make it difficult for minor users' parents to control their children's use of the platforms. Defendants have allegedly failed "to implement effective parental controls." (Mast. Compl., ¶ 930(c).) Plaintiffs allege that minor users are able to secretly make accounts without their parents becoming aware. (See, e.g., Mast. Compl., ¶ 493.) For example, Plaintiffs allege as follows with respect to Snapchat's "My Eyes Only" feature:

> This feature enables and encourages users to hide harmful content from their parents in a special tab that requires a passcode. Content cannot be recovered from "My Eyes Only"—allegedly even by Snap itself.

(Mast. Compl., ¶ 476.)

The Master Complaint also alleges harms that are caused by the content found on Defendants' platforms. For example, Plaintiffs allege that ByteDance allowed third parties to create and post "certain types of videos, such as performing a dance routine or a dangerous prank." (Mast. Compl., ¶ 608.) These videos are often referred to as "challenge videos." Plaintiffs allege that, after seeing such "challenge videos," minor users of TikTok are

encouraged to engage in physically dangerous activities. (See, e.g., Mast. Compl., ¶¶ 612-624.)

In addition to filing a Master Complaint, Plaintiffs have also filed individual, short-form complaints that provide more detail for the many individual minor users who allegedly were harmed by Defendants' platforms.

In an 89-page ruling issued on October 13, 2023, this court sustained a demurrer to the Master Complaint and three short-form complaints as to the First, Second, Third, Fourth, Sixth, Eighth and Ninth Causes of Action; and the court overruled the demurrer as to the Fifth and Seventh Causes of Action (October 2023 Ruling). (See *Social Media Cases*, 2023 WL 6847378 (Cal.Super.).) In the October 2023 Ruling, this court addressed at length Defendants' arguments that they are immune from liability for the harms asserted in the Master Complaint under Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (Section 230). Rather than providing a summary of the court's ruling and reasoning, the court here assumes that the reader is familiar with the October 2023 Ruling.

On July 19, 2024, after having requested and received further briefing and argument from counsel, this court granted in part and denied in part Defendants' prior motion to strike portions of the Master Complaint and of certain short-form complaints filed in January 2024 (July MTS Ruling). (See *Arlington v. TikTok Inc.*, 2024 WL 4003712, (Cal.Super.).) The court determined that Section 230 bars Plaintiffs from premising a negligence claim on Defendants' failure to remove CSAM and on Defendants' failure to create processes to report CSAM. (July MTS Ruling, 2024 WL 4003712, at *6-*7.) The court thus struck the following paragraphs from the Master Complaint: 382-384, 387-392, 394-400, 503-510, 512-513, 666-667, 679-681, 790-799, 801-802. (July MTS Ruling, at *7.) The court also concluded that, under binding precedent, Section 230 bars Plaintiffs from premising a negligence claim on Defendants' recommendations of content (including challenge videos), striking paragraphs 365-368, 372, 608-625, 767, and 784-789 from the Master Complaint. (July MTS Ruling, at *7-*9.)

The court then addressed claims based on affirmative acts that increase the risk of harm to minors from sexual exploitation by third parties. (July MTS Ruling, at *11-*18.) Before addressing particular features of the platforms, the court determined that Plaintiffs have adequately alleged a negligence claim under California law based on Defendants' affirmative conduct that allegedly increases the risk of injury to minor Plaintiffs:

> Plaintiffs have adequately pleaded that Defendants affirmatively developed and implemented features on their

> social media platforms that created dangerous conditions for minors by increasing the risk that vulnerable minors would be identified and sexually preyed upon by adult strangers. For purposes of California pleading standards, Plaintiffs have adequately alleged that the identified features materially contributed to the danger that minor would encounter and be injured by adult strangers on Defendants' social media platforms.

(July MTS Ruling, at *11.)  The court then determined that Section 230 does not provide Defendants with immunity related to the following features: (1) geolocation of minors (Mast. Compl., ¶¶ 380-381, 669); (2) the recommending of "friends" for minors (Mast. Compl., ¶¶ 172, 372, 481-483, 55); and (3) the sending/receiving of money and virtual gifts (Mast. Compl., ¶¶ 499 and 677).  The court concluded that section 230 barred liability premised on the following two features: (1) private direct messaging and private posting/communication of images; and (2) lack of age verification and default public setting for minors' profiles.  However, the court did not strike allegations related to these two features, given that such allegations might be relevant to Defendants' liability that is premised on other features of Defendants' platforms, such as lack of parental controls, the recommending of "friends," and the dangers of the platforms related to addiction.

There are seven short-form complaints that were relevant to a prior demurrer and motion to strike filed by Defendants:

(1) First Amended Short Form Complaint For Damages And Demand For Jury Trial, *A.S. ex rel. E.S. v. Meta Platforms, Inc., et al.*, Case No. 22STCV28202 (L.A. Super. Ct. filed Jan. 5, 2024) (referred to herein as "A.S. SFC").

(2) First Amended Short Form Complaint For Damages And Demand For Jury Trial, *GlennMills v. Meta Platforms, Inc., et al.*, Case No. 23SMCV03371 (L.A. Super. Ct. filed Jan. 5, 2024) (referred to herein as "Glenn-Mills SFC").

(3) First Amended Short Form Complaint For Damages And Demand For Jury Trial, *K.L. ex rel. S.S. v. Meta Platforms, Inc., et al.*, Case No. CIV SB 2218921 (L.A. Super. Ct. filed Jan. 5, 2024) (referred to herein as "K.L. SFC").

(4) First Amended Short Form Complaint For Damages And Demand For Jury Trial, *N.S. ex rel. Z.H. v. Snap Inc.*, Case No. 22CV019089 (L.A. Super. Ct. filed Jan. 5, 2024) (referred to herein as "N.S. SFC").

(5) First Amended Short Form Complaint For Damages And

Demand For Jury Trial, *P.F. ex rel. A.F. v. Meta Platforms, Inc., et al.*, Case No. 23SMCV03371 (L.A. Super. Ct. filed Jan. 5, 2024) (referred to herein as "P.F. SFC").
(6) Second Amended Short Form Complaint For Damages And Demand For Jury Trial, *J.S. and D.S. ex rel. L.H.S. v. Meta Platforms, Inc., et al.*, Case No. CV2022-1472 (L.A. Super. Ct. filed Jan. 9, 2024) (referred to herein as "J.S. SFC").
(7) Second Amended Short Form Complaint For Damages And Demand For Jury Trial, *K.K. ex rel. S.K. v. Meta Platforms, Inc., et al.*, Case No. 23SMCV03371 (L.A. Super. Ct. filed Jan. 17, 2024) (referred to herein as "K.K. SFC").

The court refers to these seven short-form complaints as the "January SFCs."

The January SFCs incorporated the allegations of the Master Complaint. (See, e.g., A.S. SFC, at p. 1.) The January SFCs alleged, inter alia, causes of action for (1) Sex and Age Discrimination, and (2) Non-Product Negligent Failure to Warn. (See, e.g., A.S. SFC, ¶¶ 6-7.) No failure to warn claim based on general negligence principles (as opposed to product liability) is alleged in the Master Complaint. There were no specific factual allegations provided in the January SFCs that were designated as supporting the negligent failure to warn claim. (See, e.g., A.S. SFC, ¶ 7.)

On March 27, 2024, this court sustained a demurrer by Defendants to the January SFCs as to the Tenth Cause of Action for Sex and Age Discrimination (without leave to amend) and sustained the demurrer with leave to amend as to the "additional count" of "Non-Product Negligent Failure to Warn." (Ruling, Mar. 27, 2024.) The latter ruling was based on the fact that there were no factual allegations presented by Plaintiffs in the January SFCs or specifically incorporated from the Master Complaint to support a new cause of action for negligent failure to warn outside of the product liability context. Plaintiffs were thus given an opportunity to provide such factual allegations in an amended pleading.

On May 10, 2024, Plaintiffs filed the following seven amended short-form complaints:

1. Amended Short Form Complaint For Damages And Demand For Jury Trial, A.S. and E.S. v. Meta Platforms, Inc. et al., Case No. 22STCV28202 (L.A. Super. Ct. filed May 10, 2024) (Amended A.S. SFC);
2. Amended Short Form Complaint For Damages And

Demand For Jury Trial, J.S. et al. v. Meta Platforms, Inc. et al., Case No. CV2022-1472 (L.A. Super. Ct. filed May 10, 2024) (Amended J.S. SFC);

3. Amended Short Form Complaint For Damages And Demand For Jury Trial, K.L. and S.S. v. Meta Platforms, Inc. et al., Case No. CIVSB2218921 (L.A. Super. Ct. filed May 10, 2024) (Amended K.L. SFC);

4. Amended Short Form Complaint For Damages And Demand For Jury Trial, N.S. and Z.H. v. Snap Inc., Case No. 22CV019089 (L.A. Super. Ct. filed May 10, 2024) (Amended Z.H. SFC);

5. Amended Short Form Complaint For Damages And Demand For Jury Trial, Glenn-Mills v. Meta Platforms, Inc. et al., Case No. 23SMCV03371 (L.A. Super. Ct. filed May 10, 2024) (Amended Glenn-Mills SFC);

6. Amended Short Form Complaint For Damages And Demand For Jury Trial, K.K. on behalf of S.K. v. Meta Platforms, Inc. et al., Case No. 23SMCV03371 (L.A. Super. Ct. filed May 10, 2024) (Amended K.K. SFC); and

7. Amended Short Form Complaint For Damages And Demand For Jury Trial, P.F. on behalf of A.F. v. Meta Platforms, Inc. et al., Case No. 23SMCV03371 (L.A. Super. Ct. filed May 10, 2024) (Amended P.F. SFC).

The court refers to these seven short-form complaints as the "Amended May SFCs."

The Amended May SFCs provide allegations for the "Supplemental Count 1" of "Negligence – Non-Product Failure to Warn." The May SFCs' allegations are substantially similar, though they raise the negligent failure to warn claim against different Defendants depending on each Plaintiff's use of the platforms. The Amended A.S. SFC alleges that "Defendants breached their duty to Plaintiff by failing to reasonably warn and instruct Plaintiff and their parents as to the risks associated with using their platforms," including but not limited to doing the following:

a. Failing to adequately warn Plaintiff and her parents about the physical and mental health risks posed by Defendants' platforms at any stage of Plaintiff's interaction with the apps from pre-creation of an account forward; see MC at ¶¶ 269, 403-405 [Meta]; ¶¶ 514-516, 522 [Snap]; ¶¶ 652-653, 660, 665 [TikTok]; ¶¶ 861(a), 861(f) [as applying to Meta, Snap, and TikTok].

b. Failing to adequately warn Plaintiff and her parents that

Plaintiff exhibited problematic signs of addiction to and compulsive use of Defendants' platforms, such as warning that Plaintiff's screen time reached harmful levels or Plaintiff used the platform frequently or habitually; see MC at ¶ 406 [Meta]; ¶¶ 519, 522 [Snap]; ¶¶ 663, 665 [TikTok]; ¶ 861(e) [as applying to Meta, Snap, and TikTok].

c. Failing to adequately warn Plaintiff and her parents about that Plaintiff's data was tracked, used to help build a unique algorithmic profile, and sold to Defendants' advertising clients, who in turn used the data to target and profile Plaintiff; see MC at ¶ 404 [Meta]; ¶¶ 517, 522 [Snap]; 661, 665 [TikTok]; ¶¶ 710, 806 [YouTube]; ¶¶ 861(b), 861(c); 861(g) [as applying to Meta, Snap, and TikTok].

d. Failing to adequately warn Plaintiff and her parents about which images have been altered or the mental health harms associated with the heavily filtered images; see MC at ¶ 407 [Meta]; ¶¶ 520, 522 [Snap]; ¶¶ 627-633 [TikTok]; ¶ 861(d) [as applying to Meta, Snap, and TikTok].

e. Failing to adequately warn Plaintiff and her parents before it facilitated adult connections and interactions with Plaintiff that adult predators used their platforms to target you [sic] children for sexual exploitation, sextortion, and CSAM; see MC at ¶¶ 518, 522 [Snap]; ¶¶ 861(h), 861(i), 861(j), 861(k), 861(l) [as applying to Snap].

f. Failing to provide any reasonable instruction to Plaintiff and her parents regarding safe youth use of the product at any stage of the user's interaction with the apps from pre-creation of an account forward; see MC at ¶ 408 [Meta], ¶ 518 [Snap]; ¶ 664 [TikTok].

(Amended A.S. SFC, ¶ 5.)  The Amended J.S. SFC offers the additional allegation that ByteDance failed "to adequately warn Plaintiff and his parents that participation in a 'challenge' video [found on TikTok] would cause harm … ."  (Amended J.S. SFC, ¶ 5(e).)

On July 16, 2024, Defendants filed their Demurrer and Motion to Strike related to the Master Complaint and the Amended May SFCs.

Defendants demur to the negligent failure to warn claim as alleged in all the Amended May SFCs on the grounds that (1) Plaintiffs fail to allege facts sufficient to constitute a cause of action for negligent failure to warn, (2) such a claim is not cognizable under California law, and (3) the claim is barred by the First Amendment, the California Constitution, and Section 230.

In a separate Motion to Strike, Defendants move to strike (1) paragraph 5 from all the Amended May SFCs, and (2) paragraphs 19-20, 403-408, 514-520, 522, 627-633, 652-653, 660-665, 710, 803-809, 861(a)-(f), of the Master Complaint.  As can be seen above in the long quotation of the Amended A.S. SFC, the fifth paragraph of each Amended May SFC provides the factual allegations that Plaintiffs believe support the conclusion that Defendants breached their duty to warn Plaintiffs and their parents.  With respect to the paragraphs of the Master Complaint enumerated above, the vast majority refer to Defendants' failure to warn about the harms associated with the use of their platforms.  (See, e.g., Mast. Compl., ¶¶ 403-408.)  Defendants also seek to strike allegations regarding ByteDance's implementation of "image-altering filters" on TikTok that "allow children to artificially change their appearance … ."  (Mast. Compl., ¶ 627, see also Mast. Compl., ¶¶ 628-633.)


## DEFENDANTS' DEMURRER

*The Negligent Failure to Warn Allegations Based on Dangers Created by the Defendants Themselves State a Claim Under California Law*

Defendants characterize Plaintiffs' failure to warn claims as based on Defendants' alleged negligence in failing to warn users about third-party conduct; in particular, failure to warn of third-party content posted on Defendants' social media platforms.  (See, e.g., Defs' Dem., at pp. 17, 20-21, 22; Defs' Reply ISO Dem., at pp. 9-10.) However, as Plaintiffs correctly state in their Opposition:  "The [negligent failure to warn] claims focus on the need to warn users that the Defendants' platforms are addictive and cause major mental health issues for users, among other problems. …  Only allegations of the failure to warn about targeted advertising and sexual predators involve third parties."  (Pls' Opp. Defs' Dem., at p. 7.)

The Amended May SFCs allege (1) Defendants "[f]ail[ed] to adequately warn Plaintiff and her parents about the physical and mental health risks posed by Defendants' platforms at any stage of Plaintiff's interaction with the apps from pre-creation of an account forward"; and (2) Defendants "[f]ail[ed] to adequately warn Plaintiff and her parents that Plaintiff exhibited problematic signs of addiction to and compulsive use of Defendants' platforms, such as warning that Plaintiff's screen time reached harmful levels or Plaintiff used the platform frequently or habitually … ." (Amended A.S. SFC, ¶ 5(a)-(b).)  Both of these allegations contend that Defendants failed to warn Plaintiffs of the dangers posed by the design and functioning of Defendants' platforms, which platforms are alleged to have been negligently designed and operated by Defendants.  The negligent

failure to warn claims cannot be characterized as based solely on a failure to warn about third-party actors or third-party content.

Insofar as Defendants acknowledge the existence of allegations that Defendants are liable for failure to warn of the consequences of their own conduct, Defendants contend that the Demurrer must be sustained because California law does not recognize a claim for negligent failure to warn outside of the context of product liability or premises liability.  (See, e.g., Defs' Dem., at pp. 15-16; Defs' Reply ISO Dem., at pp. 7-8.)  Defendants do not suggest any doctrinal basis for limiting tort liability for negligent failure to warn only to circumstances involving potentially harmful products or real estate.

The general principle recognized in California law and in tort law generally is that a person who is responsible for creating a dangerous condition has a duty to warn those who might potentially be injured by that condition.  "Due care may … require a warning of dangerous conditions or materials." (6 Witkin, Summary 11th Torts § 1038 (2024).)  As stated in Section 18 of the Restatement (Third) of Torts:

> (a) A defendant whose conduct creates a risk of physical or emotional harm can fail to exercise reasonable care by failing to warn of the danger if:
>
> > (1) the defendant knows or has reason to know: (a) of that risk; and (b) that those encountering the risk will be unaware of it; and
> >
> > (2) a warning might be effective in reducing the risk of harm.

(Rest.3d Torts, Phys. & Emot. Harm, § 18.)[1]  Notably, an earlier (but identical) version of this Restatement provision was cited by the California Supreme Court in support of its conclusion that a plaintiff can state a negligence claim against a person who knows or has reason to know that he is HIV positive and nevertheless has sex with the plaintiff without warning of the danger of contracting HIV.  (*John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1191, fn. 1 (*John B*).)  The California Supreme Court concluded that the plaintiff had stated a claim by alleging that the defendant owed the plaintiff a duty of care to disclose the fact that he was HIV positive.  (*Id*. at pp. 1183, 1193.)

Earlier California cases illustrate the principle recognized in *John B*.  In *Negra v. L. Lion & Sons Co.* (1950) 102 Cal.App.2d 453 (*Negra*), the Court of Appeal recognized a claim for negligence based on a contractor's failure to

---

[1] Section 18 is separate from the Restatement Third discussion of product liability.

warn a homeowner that the contractor had created a danger by removing a surface grating that ordinarily covered a hole in the floor of the plaintiff's home.  The court in that case held that a jury could "justifiably find" that the defendant's course of conduct was negligent where defendant's employee "did not warn [the plaintiff homeowner] that if she followed her apparent path she might step into the hole [created by defendant's removal of a grate] past the end of the door he was moving out of her way, although it was reasonably apparent to him she intended to walk there and that she was apparently oblivious of the danger confronting her." (*Id.* at pp. 459-460.)

In *McEvoy v. American Pool Corp.* (1948) 32 Cal.2d 295 (*McEvoy*), the California Supreme Court also found that a claim for negligence could be made out based on a failure to warn the plaintiff of a danger created by the defendant of which the defendant had superior knowledge.  The Supreme Court's analysis did not include any reference to principles of product liability.  The facts of *McEvoy* were that the defendants operated a pool-cleaning business and employed multiple "service men," to whom the defendants entrusted certain harmful chemicals.  "[Although] defendants knew that the chemicals were highly dangerous, the service men were not warned of this fact except that they were told to be careful not to get any of the chemicals in their eyes." (*Id.* at p. 297.)  "It was also known to defendants that third persons were carried in the cars when they were loaded, and no instructions were ever given to service men that this should not be done, or that they should unload their vehicles before carrying passengers." (*Id.*)  One of the service men was driving the plaintiff when he was involved in an accident with a third-party driver that caused the chemicals to come into contact with the plaintiff, "causing severe burns and other injuries." (*Id.*)  The Supreme Court of California concluded that the defendants could be held liable to the plaintiff (a third party not employed by the defendant) for their negligent failure to warn employees about the dangers involved in the employees' handling of the chemicals:

> The conclusion that certain conduct is negligent involves the finding both of a legal duty to use due care and a breach of such duty by the creation of an unreasonable risk of harm. [Citations.] … [The] defendants had superior knowledge of the inherently dangerous nature of the chemicals furnished to their service men, and knew that the glass jugs in which the chemicals were issued sometimes broke but treated the matter as being of no importance. [The employee], however, "was unaware that the stuff was dangerous." Defendants also knew that their employees often carried third persons in the cars which were loaded with the chemicals. They failed to notify their employees of the

danger to third persons and made no attempt to provide safe means of transporting the chemicals or to prevent the practice of carrying passengers. Under these circumstances, it cannot be said, as a matter of law, that defendants as reasonable men should not have foreseen an injury to a person in plaintiff's position or that their conduct showed due care.

(*Id.* at p. 298, internal citations omitted.)

Similarly, in *Brandenburg v. Pacific Gas & Elec. Co.* (1946) 28 Cal.2d 282, the California Supreme Court held that a streetcar company could be held liable for negligence in failing to warn a pedestrian in the marked safety zone surrounding the location where the streetcar turned around, that the streetcar could invade the zone of safety in making its turn.  In determining the defendant's duty toward an injured pedestrian, the Court stated:

> A decisive consideration in determining whether an act was negligent is whether the surrounding circumstances made it reasonably forseeable that there was a risk of injury. When this question depends on the foresight of another it becomes pertinent whether the other had reason to perceive danger, and whether alertness to the requirements of the situation could be expected of him. Thus an actor's duties vary according to whether he faces a child or an adult, a blind man or one who can see, one who sleeps or one who is awake. His duties also vary according to whether he may reasonably expect another to be aware of danger or must know that another's sense of security has been relaxed.

(*Id.* at p. 285.)

Plaintiffs here invoke these principles of general negligence by alleging that it was reasonably foreseeable that the operations of Defendants' social media platforms could cause addictive behavior and resulting injury, and that minors using Defendants' platforms did not have reason to perceive the danger, giving rise to a duty to warn as alleged in paragraphs 5(a) and 5(b) of the Amended May SFCs.  Although Defendants argue that Plaintiffs have not identified specific conduct that increased the risk of harm to them from using Defendants' platforms (Defs' Dem., at p. 19), Plaintiffs have specified multiple aspects of the operations of Defendants' social media platforms that Plaintiffs contend foreseeably caused them to become addicted to Defendants' platforms, resulting in injury. (See, e.g., Mast. Compl., ¶¶ 80-81, 84, 96, 107, 457-460, 833.)  The Amended May SFCs state a claim for

negligent failure to warn under California law.  Importantly, under the authorities cited above, liability can be asserted for negligent failure to warn even though there is no "special relationship" between the defendant and the plaintiff.

Defendants nevertheless argue that, under the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), public policy precludes recognition of a claim for negligent failure to warn based on the facts alleged by Plaintiffs.  In the October 2023 Ruling, this court determined that California tort law allows Plaintiffs to hold Defendants liable for their negligence in designing and operating their platforms.  (See October 2023 Ruling, 2023 WL 6847378, at *21-*24.)  For example, this court concluded that "[b]ecause all persons are required to use ordinary care to prevent others from being injured as the result of their conduct, Defendants had a duty not to harm the users of Defendants' platforms through the design and/or operation of those platforms." (October 2023 Ruling, at *23.)  The court's previous conclusion that the *Rowland* factors do not require a limitation of Defendants' duty of ordinary care with respect to negligence in designing and operating the platforms logically also applies with respect to the alleged failure to warn about the same dangerous or harmful design and operation of the platforms.  (See *id.* at *24-*28.)  Defendants have failed to demonstrate that the court's prior reasoning would somehow not apply to a failure-to-warn claim based on the design and operation of Defendants' platforms.

Defendants fault Plaintiffs for basing the negligent failure to warn claim on the same duty as the separate negligence claim (Fifth Cause of Action).  To be sure, the two claims are linked and relate to the same underlying conduct of designing and operating the platforms.  But liability under the negligent failure to warn claim is ultimately asserted for the additional failure to warn about the negligently designed and operated platforms.  Indeed, it is at least possible that Defendants could be liable for a failure to warn about the design of their platforms even if they were not negligent in so designing their platforms.  (See, e.g., *Negra*, *supra*, 102 Cal.App.2d 453 [the defendants were liable for failing to warn about the removal of the surface grating, even though the removal of the surface grating was not, itself, a negligent act].)

Defendants are also incorrect to compare the negligent failure to warn claim to an improper claim for negligent misrepresentation based on an omission.   "Negligent misrepresentation is a species of fraud or deceit specifically requiring a 'positive assertion' ([Civ. Code,] § 1572, subd. 2) or 'assertion' ([Civ. Code,] § 1710, subd. 2) of fact." (*Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306.)  The negligent

failure to warn claim sounds in negligence, not in fraud.  Civil Code sections 1572 and 1710 thus do not apply to the negligent failure to warn claim.

*The Negligent Failure to Warn Allegations Based on Dangers Created by the Defendants Themselves Are Not Barred by Section 230*

Defendants argue that the negligent failure to warn claim is barred by Section 230.  However, Defendants' arguments characterize Plaintiffs' allegations as being premised on a supposed duty to warn of third-party content.  [Defs' Dem., at pp. 21-22; Defs' Reply ISO Dem., at pp. 11-12.]  As discussed above, Plaintiffs do not solely, or even primarily, base their allegations on a failure to warn of the actions of third parties.  As to allegations based on failure to warn of the dangers of Defendants' own conduct, Defendants' arguments regarding Section 230 are rejected for the same reasons the Fifth Cause of Action for negligence was allowed to proceed when the court issued the October 2023 Ruling.  The court determined that Section 230 does not bar a negligence claim based on "features of Defendants' platforms that were designed to, and did in fact, maximize use of the platforms in ways leading to minors' addiction and resulting health consequences."  (October 2023 Ruling, 2023 WL 6847378, at *30.)  The court held "that Section 230 does not bar a claim based on features of a social media site that have an adverse effect on users apart from the content of material published on the site." (*Id.*)  Here, insofar as the negligent failure to warn claim is premised on a failure to warn about harmful features of the platforms (rather than about third-party content found on those platforms), Section 230 does not provide immunity. (See *id.* at *30-*35.)

Previously, this court also held that Section 230 does not bar a claim against a social media company for fraudulently concealing the potentially harmful effects of its platform operation.  The court's reasoning again was based on the conclusion that a social media company is not shielded from responsibility for its own conduct by Section 230, and that the remedy sought would not require the social media provider to remove or monitor any content.  (See, *id.* at *46.)  For the same reasons, Section 230 is not a bar to Plaintiffs' failure to warn claims based on dangers allegedly created by Defendants' own conduct.

*The Negligent Failure to Warn Allegations Based on Dangers Created by the Defendants Themselves Are Not Barred by the First Amendment*

Defendants' First Amendment arguments also are based in part on the characterization of Plaintiffs' claims as seeking to hold Defendants liable for the effects on Plaintiffs of the content of third-party speech.  (See, e.g.,

Defs' Dem., at pp. 25-27.)  Defendants rely on cases that this court already has found to be distinguishable, such as *Bill v. Superior Court* (1982) 137 Cal.App.3d 1002, and *Winter v. G.P. Putnam's Sons* (1991) 938 F.2d 1033. (October 2023 Ruling, 2023 WL 6847378, at *35-*37.)  This court reiterates its conclusion that "[t]he allegedly addictive and harmful features of Defendants' platforms are alleged to work *regardless* of the third-party content viewed by the users … [and] Defendants fail to explain how a requirement that Defendants change the design features of their platforms would have a chilling effect on third-party speech or the distribution of such speech." (*Id.* at *37, emphasis in original.)  The same conclusion holds with respect to the current claim insofar as it is based on a duty to warn of the allegedly harmful effects of the design features.  As this court stated in rejecting a First Amendment challenge to the fraudulent concealment claim alleged against Meta in the Master Complaint,

> … the First Amendment does not bar a claim of failure to warn of potential injuries from Meta's social media platform design. If a potential user were deterred from consuming content on Meta's platforms due to a warning about possible addiction, the deterrence would not be based on a government sanction of the content on the platforms. Therefore, the First Amendment is not implicated by failure to provide warnings concerning potential harms from features created by Defendants to maximize minors' usage.

(*Id.* at *47.)

Defendants also rely on *Moody v. NetChoice, LLC* (2024) 603 U.S. 707, to argue that, when a social media platform makes choices about what speech to display and how to display that speech, the curated compilations they create are the speech of the social media provider itself.  Ignoring the implications of this argument for Section 230 immunity (see *Anderson v. TikTok* (3d Cir. 2024) 116 F.4th 180), Defendants contend that they are entitled to First Amendment protection whenever they filter, prioritize, and label third party content.  (Defs' Dem., at p. 27.)  But insofar as the negligent failure to warn claim is based on Defendants' own conduct, it is not based on filters that decide what content to display, priorities in displaying content, or labels provided for content.  Rather, as previously explained by this court, "the allegedly addictive features of Defendants' platforms (such as 'endless scroll') cannot be analogized to how a publisher chooses to make a compilation of information," but rather are based on harm allegedly caused by design features that "affect how Plaintiffs interact with the platforms regardless of the nature of the third-party content viewed." (October 2023 Ruling, 2023 WL 6847378, at *38.)  Defendants also do not address the First

Amendment authorities that allow a person to avoid speech that intolerably invades privacy interests.  (*Id.* at *39.)

In their Reply brief, Defendants rely on *NetChoice, LLC v. Bonta* (9th Cir. 2024) 113 F.4th 1101 (*NetChoice v. Bonta*).  In that case, the Court of Appeals for the Ninth Circuit held that a statute requiring a social media provider to report to the government about the type and quantity of harmful content viewed by minors on their platform was likely to violate the First Amendment.  The court characterized the statute as placing providers of social media under a "statutory obligation to opine on and mitigate the risk that children may be exposed to harmful or potentially harmful content, contact, or conduct online." (*Id.* at p. 1116.)  "The problem here is that the risk that businesses must measure and disclose to the government is the risk that children will be exposed to disfavored speech online" (*id.* at p. 1121), thus being required to "serv[e] as censors for the State" (*id.* at p. 1118).

By contrast, Plaintiffs in the present case allege that Defendants have a duty to warn about the effect on minors of the harmful design or operating features of Defendants' platforms.  This alleged duty is more analogous to a statutory requirement that the Ninth Circuit in *NetChoice v. Bonta* found was not likely to be barred by the First Amendment.  Considering a statutory prohibition on "a user interface designed or manipulated with the substantial effect of subverting or impairing user autonomy, decisionmaking, or choice," the court stated it was "unclear" based on the record before it that the prohibited conduct "constitutes protected speech" and that it was "far from certain that such a ban should be scrutinized as a content-based restriction, as opposed to a content-neutral regulation of expression." (*Id.* at p. 1123.)

Even if a duty to warn of the potential effects of the operation of Defendants' social media platforms on minors could be characterized as a regulation of speech, Defendants do not address the factual complexities of the required evaluation for when regulation of commercial speech violates the First Amendment.  (See, e.g., *National Association of Wheat Growers v. Bonta* (9th Cir. 2023) 85 F.4th 1263, 1275 [articulating the requirements of the two levels of scrutiny governing First Amendment restrictions on compelled commercial speech].)  The First Amendment does not bar the Plaintiffs' duty to warn claims based on dangers allegedly created by Defendants in the operation of their platforms.

*The Demurrer to the Amended May SFCs is Overruled*

"[A] general demurrer may not be sustained … as to a portion of a cause of action."  (*Daniels v. Select Portfolio Servicing, Inc.* (2016) 246

Cal.App.4th 1150, 1167 disapproved of on other grounds by *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905.)  Thus, when a court finds that a "demurrer should have been overruled based on some of [the] factual allegations [present in the complaint], [the court] need not address the sufficiency of the other factual allegations contained in the complaint[]." (*Olson v. Hornbrook Community Services Dist.* (2019) 33 Cal.App.5th 502, 522.)  Having found that the allegations in paragraphs 5(a) and 5(b) of the Amended May SFCs state a claim under California law, and that the claim is not barred by Section 230 or by the First Amendment, the Demurrer to the Amended May SFCs is overruled.


DEFENDANTS' MOTION TO STRIKE

        In their Motion to Strike, Defendants move to strike (1) paragraphs 5 from all the Amended May SFCs, and (2) paragraphs 19-20, 403-408, 514-520, 522, 627-633, 652-653, 660-665, 710, 803-809, 861(a)-(f), of the Master Complaint.  The Motion to Strike is based on several arguments. Defendants argue that the repeated use of the phrase "including but not limited by" to preface Defendants' alleged bad acts is improper because it does not adequately notify Defendants of the nature and extent of Plaintiffs' claims.  Defendants argue that the identified allegations are barred by both Section 230 and the First Amendment.  Defendants argue that allegations pertaining to Plaintiffs' parents should be stricken because the parents are not alleged to be users of Defendants' platforms.  And Defendants argue that Plaintiffs have failed to allege causation regarding "data tracking."

*Allegation that Defendants Failed to Warn "About the Physical and Mental Health Risks Posed by Defendants' Platforms" or that "Plaintiff Exhibited Problematic Signs of Addiction to and Compulsive Use of Defendants' Platforms" – See Amended A.S. SFC, ¶ 5(a)-(b)*

        For the reasons given above in the ruling on Defendants' Demurrer, these allegations may properly support the negligent failure to warn claim. The Motion to Strike is therefore denied as to these allegations.

*Allegation that Defendants Failed to Warn "That Plaintiff's Data Was Tracked, Used to Help Build a Unique Algorithmic Profile, and Sold to Defendants' Advertising Clients" – See Amended A.S. SFC, ¶ 5(c)*

        Defendants raise two arguments for why the allegations regarding data tracking should be stricken.  First, Defendants argue that Plaintiffs have failed to allege any harm or causation regarding "data tracking."  Second,

Defendants make the factual claim that they provide adequate warnings regarding data tracking.  Neither argument justifies striking the allegations.

Under California's liberal pleading standards, Plaintiffs have adequately alleged that the failure to warn about data tracking and the use of data to create a "unique algorithmic profile" led to Plaintiffs' harm.  Plaintiffs allege that "Defendants' failure to adequately warn and instruct [about data tracking and the creation of a "unique algorithmic profile"] has proximately caused and/or was a substantial factor in causing significant harm to the mental and physical well-being of Plaintiff and all Plaintiffs in this case, in addition to the other injuries and harms claimed by Plaintiff."  (Amended A.S. SFC, ¶ 7.)  The use of data and the creation of a "unique algorithmic profile" forms part of "Defendants' studied efforts to induce young people to compulsively use their products ... ."  (Mast. Compl., ¶ 2.)  The use of data tracking can thus be viewed as one instance of Defendants creating "design features aimed at maximizing youth engagement to drive advertising revenue," which in turn led to the harms alleged in this action.  (Mast. Compl., ¶ 2.)  Now is not the time for the court to make the factual determination of whether a warning about data tracking and the creation of a "unique algorithmic profile" to target individual Plaintiffs and increase problematic use would have actually avoided the harm alleged here.  (*Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1411, fn. 3 [when ruling on a pleading challenge, the court must accept as true all of the factual allegations in the complaint].)

Similarly, in ruling on Defendants' pleading challenge, this court cannot resolve the factual dispute between the parties as to whether certain statements regarding data tracking—but not about the creation of a "unique algorithmic profile"—which Defendants claim were included in Defendants' Terms of Service and Privacy Policies were sufficient to alert Plaintiffs and their parents of the dangers related to the creation of a "unique algorithmic profile" to target individual Plaintiffs and increase problematic use.  That factual question must be resolved at a later date.

*Allegation that Defendants Failed to Warn "About Which Images Have Been Altered or the Mental Health Harms Associated with the Heavily Filtered Images" – See Amended A.S. SFC, ¶ 5(d); See Also Master Complaint ¶¶ 627-633*

In the October 2023 Ruling, this court ruled that allegations regarding Defendants' filter tools can form the basis of a claim that Defendants were negligent in the design and operation of their platforms.  When overruling Defendants' previous demurrer to the negligence cause of action, the court noted that "the allegations of the Master Complaint can be read to state that

… certain design features (such as filters) directly led to Plaintiffs' harm."
(October 2023 Ruling, 2023 WL 6847378, at *37.)  The court found that the
allegations regarding "filters" could survive attacks based on Section 230
and the First Amendment because they did not refer simply to Plaintiffs
being exposed to filtered images created by third parties, but instead also
referred to tools "provided to Plaintiffs for Plaintiffs themselves to produce
pictures … ." (*Id.* at *6.)  In other words, it is the provision of the filter tools
that causes harm to Plaintiffs—separate and apart from exposure to third-
party content.  In specifically concluding that the negligence claim was not
barred by Section 230, the court summarized the "filter" feature allegations
as follows:

> … the Master Complaint alleges harm from "filters" and
> "rewards" offered by Defendants. Plaintiffs allege, for
> example, that Defendants encourage minor users to create
> and post their own content using appearance-altering tools
> provided by Defendants that promote unhealthy "body
> image issues." (Mast. Compl., ¶ 94). The Master Complaint
> alleges that some minors spend hours editing photographs
> they have taken of themselves using Defendants' tools.
> (See, e.g., Mast. Compl., ¶ 318.)

(*Id.* at *31.)  In rejecting the argument that a negligence claim based on the
provision of filter tools is barred by the First Amendment, the court found
that "[d]esign features of the platforms (such as endless scroll or filters)
cannot readily be analogized to mere editorial decisions made by a
publisher. Here, the design features of Defendants' platforms affect how
Plaintiffs interact with the platforms regardless of the nature of the third-
party content viewed by Plaintiffs." (*Id.* at *38.)

Based on the reasoning set forth in the October 2023 Ruling, the court
rejects the arguments raised by Defendants in support of their position that
allegations regarding filter tools cannot support negligence liability.  If,
under California and federal law, Defendants can be liable for the design and
provision of the filter tools, then they can also be held liable for failing to
provide an adequate warning regarding these allegedly harmful filter tools.

In their Reply, Defendants again argue that the gravamen of the filter
tool allegations is that Defendants failed to warn of the potential risks of
interacting with certain kinds of user content.  (Defs' Reply ISO MTS, at pp.
6-7.)  But, as explained above, this court has already disagreed with that
argument.  To be sure, it is possible to read the allegations as seeking to
hold Defendants liable for having exposed Plaintiffs to filtered images
created by third parties; however, that is not the only possible reading of the

allegations.  Because the allegations can be read as seeking to hold Defendants liable for providing harmful filter tools directly to Plaintiffs which caused harm regardless of whether Plaintiffs viewed third-party content, the Motion to Strike is denied as to the allegations regarding filter tools.  (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1238 [California procedural law requires a court to liberally construe a complaint so as to "draw[] inferences favorable to the plaintiff, not the defendant"].)

*Allegation that Defendants Failed to Warn "Before It Facilitated Adult Connections and Interactions with Plaintiff" That "Adult Predators Used Their Platforms to Target Children for Sexual Exploitation, Sextortion, and CSAM" – See Amended A.S. SFC, ¶ 5(e)*

This court already has held that Defendants may be held liable for using its algorithms to connect underage users with other users when the recommendation results in harm to the user.  After analyzing the precedents interpreting Section 230, the court declined to strike the "paragraphs of the Master Complaint alleging liability based on Defendants' recommendation of contacts to minors."  (July MTS Ruling, 2024 WL 4003712, at *14-*15.)

The alleged duty to warn of the potential consequences of a contact that is "facilitated" by Defendants can be understood as a duty to warn of potential harms resulting from Defendants' own conduct.  Thus, the court's analysis above reviewing California law pertaining to a duty to warn of a dangerous condition created by a defendant itself pertains to this claim as well.  However, insofar as the alleged duty to warn of the potential dangers of a contact facilitated by Defendants is construed as a duty to warn of third-party conduct, breach of that duty also states a claim under California law.  When a person creates a circumstance that it knows presents a risk to others, and invites others to share in an activity under the circumstances the person has created, that person has a duty to protect others from the known risks of the circumstance created by the person.  Thus "a business or landowner with invited guests" has a special relationship to those invited guests "that may support a duty to protect against foreseeable risks."  (*Dix v. Live Nation Entertainment, Inc.* (*Dix*) (2020) 56 Cal.App.5th 590, 606, internal citations and quotation marks omitted; see also Rest.3d Torts, Phys. & Emot. Harm, § 40.)  The California courts have applied this rule to hold that the operator of a music festival had a special relationship with the festival attendees and thus a duty to provide adequate emergency medical care for persons who might ingest illegal drugs (*Dix, supra*), and that a Catholic Archdiocese had a special relationship with a child who attended catechism classes even though the child was not enrolled in the parish school and the catechism classes were held off school premises (*Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657).

Importantly, the court here does not find that Defendants have a special relationship with Plaintiffs regarding all aspects of their operation of the social media platforms, or even that Defendants have a special relationship with minor users when they recommend content.  As this court has held, it is bound by California precedent holding that Section 230 immunity bars Plaintiffs from premising a negligence claim on Defendants' recommendations of content.  (July MTS Ruling, 2024 WL 4003712, at *7-*9; *Wozniak v. YouTube, LLC* (2024) 100 Cal.App.5th 893, 916-918 (*Wozniak*).)  However, this court does hold that Defendants have a special relationship with minors giving rise to a duty to warn when Defendants affirmatively "suggest users for 'friending' to each other" (Mast. Compl., ¶ 172) or otherwise recommend that minors contact certain "friends" or "people you may know" (Mast. Compl., ¶ 555), and when there is a foreseeable risk that, as a result of such recommendation, an adult predator may target the child for sexual exploitation, sextortion, or the creation or sharing of child sexual abuse material.  (See Mast. Compl., ¶ 372 [alleging foreseeable risk of sexual exploitation from the connection of minors with other users of a social media platform].)

Defendants do not have to monitor third-party content on their platforms in order to know of the dangers to minors from recommending that they "friend" a stranger.  Plaintiffs allege that there is information from an outside source demonstrating the foreseeable risk to minors from such contacts.  (See, e.g., Mast. Compl., ¶ 372.)  In *Wozniak* the court of appeal recognized that, under the reasoning of Ninth Circuit precedent, a duty to warn a social media user about foreseeable, third-party conduct could arise when the "alleged duty to warn existed independent of any third party content on the defendant's platform." (*Wozniak*, *supra*, 100 Cal.App.5th at p. 914, citing *Doe v. Internet Brands, Inc.* (9th Cir. 2016) 824 F.3d 846, 851.)  Thus, for example, the duty to warn does not implicate any knowledge that Defendants might have of the existence of particular CSAM on their social media websites.  Rather, the duty is to make known to the minor user the foreseeable risk of the recommended stranger's future conduct, which might include using the minor to create CSAM.

The court denies the Motion to Strike the allegations of subsection (e) of paragraph 5 of the Amended May SFCs.

*Allegation that Defendants Failed to Provide Instruction "Regarding Safe Youth Use of the Product" – See Amended A.S. SFC, ¶ 5(f)*

Defendants fail to address this allegation with any specificity.  As with other negligent failure to warn allegations, the alleged failure to provide

instructions regarding the safe use of the platforms can be interpreted as being based on Defendants' design and operation of the platforms (i.e., on the features provided by Defendants to Plaintiffs). Thus, for the reasons expressed above, these allegations are not improper and are not stricken at this time.

*Allegation that Defendants Failed to Warn "That Participation in a 'Challenge' Video Would Cause Harm" – Amended J.S. SFC, ¶ 5(e)*

The allegation that Defendants failed to warn about harms stemming from "challenge videos" is found only in the Amended J.S. SFC. Defendants are correct that this allegation seeking to hold Defendants liable for the existence of challenge videos on their platforms is barred by Section 230. In the July MTS Ruling, this court reached this conclusion under binding California precedent:

> The challenge videos … are content created by the users of Defendants' platforms. … Section 230 precludes liability premised on the existence of these videos on Defendants' platforms. Plaintiffs allege that they seek to hold Defendants liable not as publishers of the videos but rather as active promoters of the third-party content appearing on their platforms. This proposed liability conflicts with binding California authority on the interpretation of Section 230. In [*Wozniak*], the California Court of Appeal held that recommendations by social media platforms are 'tools meant to facilitate the communication and content of others,' and thus the recommendation of third-party content is immune under Section 230.

(July MTS Ruling, 2024 WL 4003712, at *8.)[2] *Wozniak* also considered and rejected an argument that a social media provider has a duty to warn of dangers allegedly caused by third party content. "Plaintiffs' argument [that a negligent failure to warn claim does not implicate Section 230] would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn of such information published by a defendant. That construction of the law runs counter to the authority we have summarized above." (*Wozniak, supra*, 100 Cal.App.5th at pp. 914-915.)

---

[2] Since this court's ruling in July 2024, the United States Court of Appeals for the Third Circuit has held that Section 230 does not bar a claim for injury to a minor based on a social media provider's recommendation of a "challenge video." (*Anderson v. TikTok, Inc.* (2024) 116 F.4th 180.) This court remains bound by the contrary appellate authority articulated in *Wozniak*.

The Motion to Strike is granted as to subsection (e) of paragraph 5 of the J.S. SFC.

*Allegations that Defendants Failed to Warn Parents*

Defendants contend that the court should strike the allegations referring to Defendants' failure to warn Plaintiffs' parents.  According to Defendants, "Plaintiffs have failed to allege that Defendants owe any cognizable duty to Plaintiffs' parents, who are not alleged to be users of Defendants' platforms and have no direct relationship with Defendants."  (Defs' MTS, at p. 21.)

But Plaintiffs do not claim that the duty to warn is owed *to the parents*; rather, Plaintiffs clarify that the duty to warn is owed to minor Plaintiffs, but that this duty might be met by providing a warning to minor Plaintiffs' parents.  The allegations are thus not improper.  Even Defendants recognize that "a defendant can potentially discharge a duty to warn by making a warning to a third party who is responsible for conveying it onward."  (Defs' Reply Defs' MTS, at p. 10, fn. 4.)  For example, in *McEvoy*, *supra*, the duty to warn owed to the injured plaintiff could have been met by providing a warning to the third-party driver employed by the defendants.

Defendants thus have not demonstrated that the allegations regarding warnings to Plaintiffs' parents are improper.

*"Including But Not Limited To" Allegations*

Although the Amended May SFCs provide a list of the specific warnings Defendants allegedly failed to provide, Defendants fault Plaintiffs for alleging that the list was not necessarily exhaustive.  Plaintiffs preface the list with the language "including but not limited by."  Defendants contend that Plaintiffs, by including this language, have "failed to notify Defendants of the nature and extent of this claim."  (Defs' MTS, at p. 13, internal citations, quotation marks, and ellipses omitted.)

Defendants cite *Ludgate Ins. Co. v. Lockheed Martin Corp. (*2000) 82 Cal.App.4th 592 (*Ludgate*), where the court found that the plaintiff had pleaded its complaint to meet the "fair-notice test."  The court in *Ludgate* surveyed the relevant law as follows:

> The California Supreme Court has consistently held that "a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity

> sufficient to acquaint a defendant with the nature, source
> and extent of his cause of action. … If there is any
> reasonable possibility that the plaintiff can state a good
> cause of action, it is error to sustain a demurrer without
> leave to amend. … " [Citation.] "The particularity required
> in pleading facts depends on the extent to which the
> defendant in fairness needs detailed information that can be
> conveniently provided by the plaintiff; less particularity is
> required where the defendant may be assumed to have
> knowledge of the facts equal to that possessed by the
> plaintiff. … " [Citation.] There is no need to require
> specificity in the pleadings because "modern discovery
> procedures necessarily affect the amount of detail that
> should be required in a pleading." [Citation.]

(*Id.* at p. 608, internal citations and brackets omitted.)

Here Plaintiffs have adequately stated a claim under California common law. However, given the broad scope of immunity provided to Defendants by federal law, fairness requires that Plaintiffs set forth the specific warnings they contend should have been given. Any proposed warnings will require the parties and the court to analyze whether Section 230 provides a safe harbor for Defendants' conduct. This is not a situation where, in fairness, a totally new duty to warn could be proposed in a jury instruction immediately prior to or during trial. Defendants are entitled to notice of the duty and the nature of the warning that Plaintiffs contend was required. Here, by providing the specific types of warnings that Plaintiffs believe should have been given by Defendants, Plaintiffs have sufficiently apprised Defendants of the nature of the negligent failure-to-warn claim. But if they seek to allege a different type of duty to warn, they will need to seek leave to amend the Master Complaint or short-form complaints to articulate the additional or different warning that should have been given. It follows that "including but not limited to" should be stricken. The court thus grants the Motion to Strike as to these allegations.

*Remaining Allegations in the Master Complaint – Master Complaint ¶¶ 19-20, 140, 403-408, 514-520, 522, 652-653, 660-665, 710, 803-809, 861(a)-(f)*

These paragraphs of the Master Complaint refer to Defendants' failure to warn about the dangers involved with using their platforms. Defendants do not address any of these allegations with specificity. Instead, Defendants appear to seek to strike all allegations related generally to a failure to warn

about the dangers of using the platforms.  For all of the reasons given above, the Motion to Strike is denied as to these allegations.


META DEFENDANTS' MOTION TO SEAL (PLAINTIFFS' OPPOSITION TO DEFENDANTS' DEMURRER TO IDENTIFIED AMENDED SHORT-FORM COMPLAINTS AND ACCOMPANYING FILINGS)

Court's Ruling: The Motion is granted.  The clerk is directed to place Plaintiffs' Opposition in the public record.  But the declaration of Emily C. Jeffcott may remain under seal.  Within ten days, Meta shall file a properly redacted version of the declaration in the public record that redacts only those portions of the document which Meta has sought to seal here.


When opposing Defendants' Demurrer, Plaintiffs filed its Opposition and the supporting declaration of Emily C. Jeffcott (Jeffcott) under seal.  The Opposition and the body of the Jeffcott declaration contain redactions; the exhibits to Jeffcott declaration are sealed in their entirety.

Meta now moves to seal Exhibits A and B to Jeffcott's declaration (Exhibit A and Exhibit B, respectively).  Meta does not move to seal the redacted portions of either the Opposition or the body of Jeffcott's declaration.  Meta argues that certain portions of Exhibit A and Exhibit B should be sealed because they "contain the names of non-party, non-executive Meta employees, the public disclosure of which would invade their privacy interests … ." (Def's Not. Mot. Seal, at p. 2.)  "Meta moves to seal only a handful of names and email addresses of nonparty, non-executive Meta employees that appear on these exhibits, to protect their privacy interests and safety." (Def's Mot. Seal, at p. 5.)

The court may order that a record be filed under seal only if it expressly finds facts that establish:

> (1) There exists an overriding interest that overcomes the right of public access to the record;
> (2) The overriding interest supports sealing the record;
> (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;
> (4) The proposed sealing is narrowly tailored; and
> (5) No less restrictive means exist to achieve the overriding interest.

(Cal. Rules of Court, rule 2.550, subd. (d).) "The court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Cal. Rules of Court, rule 2.551, subd. (a).) A party's motion to seal "must be accompanied by a memorandum and a declaration containing facts sufficient to justify the sealing." (Cal. Rules of Court, rule 2.551, subd. (b)(1).)

In support of its Motion to Seal, Meta has submitted the declaration of Andre Suite (Suite), who is the Director of Global Security Threat Management and Privacy Response for Meta. (Suite Decl., ¶ 1.) Suite explains why placing the names and email addresses of non-parties in the public record in this case would be likely to prejudice those non-parties:

> 2. In my experience, it is common for Meta employees whose names are disclosed publicly in connection with hot-button social issues to face harassment, online threats, and/or suspicious phone calls, text messages, or emails. The risk of harassment, threats, and such contacts is materially greater if the employee is publicly connected to such issues, than if the individual is merely connected publicly to Meta (e.g., on LinkedIn) or even to a particular Meta team.
> 3. Once an individual's name is made public, it can often be easy for individuals wishing them harm to locate their home address and contact information on the internet. Accordingly, in the past, Comprehensive Security Support Plans have sometimes had to be put in place for the safety of the employee and their family.
> 4. Based on my experience, the allegations in the complaints in this case, including allegations that Meta has harmed the mental health of minors, are of the sort that could cause Meta employees to face harassment and/or threats if their names were publicly linked to those allegations.

(Suite Decl., ¶¶ 2-3.)

The names and email addresses of the non-parties at issue here are properly under seal for the purposes of this demurrer proceeding. The names and email addresses are in no way relevant to this court's adjudication of the issues currently before it; thus, the public interest in accessing this information is very low. And Meta has demonstrated both that (1) the non-parties have a privacy interest in their names and contact

information, and (2) placing such information in the record in this case may lead to harassment of the non-parties.

Date: 1/8/2025

_____

The Honorable Carolyn Kuhl
Judge of the Superior Court