UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.:  4:22-md-03047-YGR-PHK  4:23-cv-05448-YGR |
| This Filing Relates to: | **JOINT LETTER BRIEF ON STATE 30(B)(6) DEPOSITIONS** |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | Judge: Hon. Yvonne Gonzalez Rogers Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Pursuant to DMO 12 (ECF No. 1380), Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and the State AGs respectfully submit this letter brief regarding disputes over Meta's Rule 30(b)(6) deposition notices directed to the States.

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: January 13, 2025

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
Ashley Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms,
Inc.; Instagram, LLC; Meta Payments, Inc.;
and Meta Platforms Technologies, LLC*

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Laura Dilweg*
Laura Dilweg (AZ No. 036066 CA No. 260663)
Chief Counsel – Consumer Protection and
Advocacy Section
Nathan Whelihan (AZ No. 037560),
*pro hac vice*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:   (602) 542-4377
Laura.Dilweg@azag.gov
Nathan.Whelihan@azag.gov

*Attorneys for Plaintiff State of Arizona, ex rel.*
*Kris Mayes, Attorney General*


**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Lauren M. Dickey*
Lauren M. Dickey (CO Reg. No. 45773)
First Assistant Attorney General
Megan Paris Rundlet (CO Reg. No. 27474)
Senior Assistant Solicitor General
Elizabeth Orem (CO Reg. No. 58309)
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
lauren.dickey@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*


**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Megan O'Neill (CA SBN 343535)
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State*
*of California*


**RAÚL R. LABRADOR**
Attorney General
State of Idaho

*/s/ Nathan Nielson*
Nathan H. Nielson (ID Bar No. 9234),
pro hac vice
Deputy Attorneys General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
nathan.nielson@ag.idaho.gov


*Attorneys for Plaintiff State of Idaho*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Lauren H. Bidra*
Lauren H. Bidra
(CT Juris No. 440552), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Tess E. Shaw
(CT Juris No. 444175), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Krislyn.Launer@ct.gov
Tess.Shaw@ct.gov

*Attorneys for Plaintiff State of Connecticut*


**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Ryan T. Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan T. Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8810
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*


**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

4

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

/s/ Christopher T. Han
Bryan C. Yee (HI JD No. 4050),
*pro hac vice*
Supervising Deputy Attorney General
Christopher T. Han (HI JD No. 11311),
*pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Bryan.c.yee@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawai'i*


**KWAME RAOUL**
Attorney General
State of Illinois

/s/ Matthew Davies
Susan Ellis, Chief, Consumer Protection
Division (IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer
Fraud Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019)
Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*
Kevin Whelan, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6321715),
*pro hac vice*
Emily María Migliore, Assistant Attorney
General, Consumer Fraud Bureau (IL Bar No.
6336392)
Daniel B. Roth, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6290613)
Office of the Illinois Attorney General
115 S. LaSalle Street Chicago,
Illinois 60603
312-814-8554

**LIZ MURRILL**
Attorney General
State of Louisiana

/s/ Asyl Nachabe
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*


**AARON M. FREY**
Attorney General
State of Maine

/s/ Michael Devine
Michael Devine, Maine Bar No. 5048,
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*


**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ Caitlin Micko
Caitlin Micko (MN Bar No. 0395388),
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180

Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Kevin.Whelan@ilag.gov
Adam.Sokol@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Philip R. Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

**ANDREW BAILEY**
Attorney General
State of Missouri

By: /s/ *Michael Schwalbert*
Michael Schwalbert, *pro hac vice*
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Attorney for Plaintiff State of Missouri, ex rel. Andrew Bailey, Attorney General*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *pro hac vice*
Section Chief, Deputy Attorney General
Deputy Attorneys General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General

New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov

*Attorneys for Plaintiffs State of New Jersey*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney
General of Maryland*

**DANA NESSEL**
Attorney General
State of Michigan

*/s/ Daniel J. Ping*
Daniel J. Ping (P81482), *pro hac vice*
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
517-335-7632
PingD@michigan.gov

*Attorney for Plaintiff State of Michigan*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna Anderson*
Anna Anderson (NE #28080)
Assistant Attorney General

*Attorney General and the New Jersey Division
of Consumer Affairs*
*Matthew J. Platkin, Attorney General for the
State of New Jersey, and Cari Fais, Director
of the New Jersey Division of Consumer
Affairs*

**LETITIA JAMES**
Attorney General
State of New York

*/s/ Kevin Wallace*
Kevin C. Wallace, Senior Enforcement
Counsel
(NY Bar No. 3988482), *pro hac vice*
kevin.wallace@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8000

*Attorneys for Plaintiff the People of the State
of New York*

**DAVE YOST**
Attorney General
State of Ohio

*/s/ Kevin R. Walsh*
Melissa G. Wright (Ohio Bar No. 0077843)
Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
Melissa S. Smith (Ohio Bar No. 0083551)
Asst. Section Chief, Consumer Protection
Section
Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (Ohio Bar No. 0042206)
Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov

Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-2682
Email: anna.anderson@nebraska.gov

*Attorney for Plaintiff State of Nebraska*


**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No.
57735), *pro hac vice*
Assistant Attorney General
Josh Abram
Kunal Choksi
Special Deputy Attorneys General
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

**MICHELLE A. HENRY**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email: jburns@attorneygeneral.gov
Pennsylvania Office of the Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

Kevin R. Walsh (Ohio Bar No. 0073999)
*pro hac vice*
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost*


**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ John Dunbar*
John Dunbar (Oregon Bar No. 842100), *pro hac vice*
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone:    (971) 673-1880
Facsimile:    (971) 673-1884
E-mail: john.dunbar@doj.state.or.us

*Attorneys for State of Oregon, ex rel. Dan Rayfield, Attorney General for the State of Oregon*


**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Clark Kirkland, Jr.*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Clark C. Kirkland, Jr. (CA SBN 272522)
Assistant Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*


**JASON S. MIYARES**
Attorney General
Commonwealth of Virginia

*/s/ Joelle E. Gotwals*
Joelle E. Gotwals (VSB No. 76779),
*pro hac vice*
Assistant Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr. (VSB No. 34258),
*pro hac vice*
Senior Assistant Attorney General and
Section Chief
Chandler P. Crenshaw (VSB No. 93452)
*pro hac vice*
Assistant Attorney General and Consumer
Privacy Unit Manager
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:    (804) 786-8789
Facsimile:    (804) 786-0122
E-mail: jgotwals@oag.state.va.us


*Attorneys for the Plaintiff Commonwealth of
Virginia ex rel. Jason S. Miyares, Attorney
General*

Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
ckirkland@scag.gov
annasmith@scag.gov
803-734-0057

*Attorneys for Plaintiff the State of South
Carolina, ex rel. Alan M. Wilson, in His
Official Capacity as Attorney General of the
State of South Carolina*


**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Bret Leigh Nance*
By: Bret Leigh Nance (SD Bar No. 4831),
*pro hac vice*
Assistant Attorney General
Aaron Salberg (SD Bar No. 3289)
Assistant Attorney General
*pro hac vice*
Assistant Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
bretleigh.nance@state.sd.us

*Attorneys for Plaintiff State of South Dakota*


**PATRICK MORRISEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267),
*pro hac vice*
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404

**ROBERT W. FERGUSON**
Attorney General
State of Washington

*/s/ Alexandra Kory*
Alexandra Kory (WA Bar No. 49889),
*pro hac vice*
Joseph Kanada (WA Bar No. 55055),
*pro hac vice*
Rabi Lahiri
Gardner Reed
Claire McNamara
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 516-2997
Alexandra.kory@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West
Virginia, ex rel. Patrick Morrisey,
Attorney General*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Colin R. Stroud*
Colin R. Stroud
Assistant Attorney General
WI State Bar #1119457, *pro hac
vice*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224
stroudcr@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*

**Meta's Position:** Over 30 States have sued Meta for billions of dollars in this MDL. Notwithstanding this Court's prior orders regarding the relevance and discoverability of information from state agencies, the States are now attempting to sharply curtail Meta's ability to conduct meaningful depositions about the substance of their claims, even as the States actively seek similar Rule 30(b)(6) testimony from Meta. The States' objections fall into three main categories, each of which should be rejected.

*First*, after months of wrongfully refusing to provide Rule 34 discovery from state agencies, the States are now refusing to offer Rule 30(b)(6) testimony that flows from the Court's orders granting such agency discovery (which even now they assail as "not persuasive"), including testimony on information revealed through Court-ordered agency productions. Instead of conducting a single Rule 30(b)(6) deposition for each State, the States demand that Meta serve separate deposition subpoenas for each of the approximately 200 state agencies that are producing documents to Meta, each of which would then have an opportunity to litigate agency-specific objections before this Court. Even if that process could be completed before depositions are set to begin in early February, Meta would then be required to schedule and take hundreds of Rule 30(b)(6) depositions in the two months between substantial completion deadlines and the close of fact discovery, all while Meta is simultaneously defending dozens of its own witness depositions and taking depositions of numerous Plaintiff witnesses beyond these ones. This is contrary to Federal Rules and the Court's decisions on agency discovery, imposes massive burdens, and invites hundreds of disputes that the Court would have to resolve.

*Second*, the States seek to withhold *all* testimony on basic substantive topics like the factual basis for the States' claims based on the incorrect arguments that: (i) Meta is seeking testimony from attorneys (it is not); (ii) *some* of the responsive testimony *might* be privileged (which, even if true, is not a basis for a blanket refusal to testify); and (iii) other discovery like written interrogatory responses precludes Rule 30(b)(6) testimony (not true). Courts have squarely rejected these arguments, and they are inconsistent with the States' own service of Rule 30(b)(6) notices seeking even broader testimony about "all facts Meta will rely upon to prove [one of its] defense[s] in dispositive motions and/or trial." The States cannot seek testimony from Meta while refusing to provide reciprocal testimony in the same substantive areas.

*Third*, despite alleging that Meta made misstatements and engaged in unfair and deceptive conduct starting "no later than 2012," *see* Compl. ¶ 19, and seeking Rule 30(b)(6) testimony from Meta between "January 1, 2012 and the present," the States refuse to provide Rule 30(b)(6) testimony prior to September 2021 (the date the States purportedly began investigating Meta). There is no basis for allowing the States to avoid testifying about nine of the twelve-plus years that they have put at issue in this case.

**Background**

Pursuant to DMO 12, on December 13, 2024, Meta timely served Rule 30(b)(6) deposition notices on each of the remaining 31 States. Meta's notices seek testimony concerning the factual basis for the States' claims and purported injuries (*e.g.*, Topics 22–24, 29, 36–37, 39), the monetary and other relief sought by the States (*e.g.*, Topics 25–28, 38), and the State's communications with third parties (including former Meta employees) about this litigation (*e.g.*, Topics 41–42). Meta's notices also seek testimony about the topics covered by Meta's document requests to the state agencies that this Court ruled are subject to party discovery, ECF 1117, including the benefits and

alleged harms from teen use of social media (*e.g.*, Topics 8, 15); the States' efforts to encourage or discourage teen use of social media (*e.g.*, Topics 3, 4); alternate causes of teen mental health issues (*e.g.*, Topic 17); and the States' own use of, and relationships with, social media platforms and companies (*e.g.*, Topics 1, 2, 5, 13, 19). In response, the States refused to provide testimony on 34 of Meta's 42 noticed topics, and sought to severely limit many others.

## A.    The States As a Whole Are Properly Subject to 30(b)(6) Notices.

### 1.    The States Are Singular Entities Subject to Discovery.

As this Court has explained, in suits brought by states, "[c]ourts have found that discovery obligations extend to other government agencies even if they are non-parties based on the recognition that the State (or the government as a whole) is essentially the real party in interest and thus the discovery obligation extends to the entire government." ECF 1117 at 17 (collecting cases). Here, the States have sued under their *parens patriae* authority, using the States' power and resources to litigate on behalf of their States' interests. As a result, each State as a whole— including its component agencies—is properly subject to providing Rule 30(b)(6) testimony. That alone begins and ends this dispute.[1]

Equally decisive is the fact that the Court's prior ruling on agency discovery resolves the Rule 30(b)(6) question—notwithstanding the States' repeated attempts to relitigate that ruling. Federal courts frequently hold that 30(b)(6) obligations are coextensive with the question of an entity's "control" for purposes of Rule 34. *See, e.g.*, *Emhart Indus., Inc. v. Univar USA, Inc.*, 2009 WL 10675670, at *4 (W.D. Wash. Feb. 12, 2009) ("Information is 'reasonably available' to an organization when it is within the organization's control." (cleaned up)); *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2020 WL 8102054, at *9 (C.D. Cal. July 9, 2020) (explaining that a 30(b)(6) deponent should be prepared to testify as to information "in a document reasonably available to [the noticed entity] (for example documents in their possession, custody, or control)"); *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 2013 WL 627149, at *5 (D. Colo. Feb. 19, 2013) (noting that "[c]ourts have frequently used the 'control' standard of Rule 34(a)" to determine whether information is "reasonably available" to a 30(b)(6) deponent); *Erenler v. TJM Props., Inc.*, 2022 WL 18492699, at *6 (M.D. Fla. Nov. 7, 2022) ("The 'reasonably available' language of Rule 30(b)(6) can extend to information held by corporate affiliates if that information is within the deponent corporation's 'possession, custody, or control' as defined by case law interpreting Rule 34." (cleaned up)); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 38 (D. Mass. 2001) ("It therefore seems logical that the documents that are reasonably available [under Rule 30(b)(6)] are those documents that are in a party's control [under Rule 34]."). This Court already held the documents of the agencies at issue to be within State control under

---

[1] Only Maryland and New Jersey captioned their cases as brought by their AGs, but (as noted previously), a case by the AG on the state's behalf—however captioned—is a suit by the state. *See, e.g.*, *Bd. of Educ. of Shelby Cnty., Tenn. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012). The Court also already held that those States have discovery obligations extending to state agencies, *see* ECF 1117 at 124–31, 163–59, and all States assert COPPA claims, which can *only* be brought by the state as *parens patriae*, 15 U.S.C § 6504(a)(1).

Rule 34.  *See* ECF 1117.  Accordingly, the information held by those agencies is also subject to 30(b)(6) obligations.[2]

Finally, the States' own conduct should foreclose them from resisting 30(b)(6) discovery.  The States have delayed meeting their document discovery obligations for close to a year, immensely prejudicing Meta's ability to obtain reasonable discovery.  They have done so to the extent that multiple States have used their delay to argue for narrower document obligations because, they claim, their delay precludes them from completing reasonable discovery within the discovery period.  This improper delay should bar the States from resisting a key mechanism—30(b)(6) testimony—for Meta to obtain reasonable discovery.

The States argue that Meta should be required to serve individual subpoenas on each of the hundreds of agencies at issue rather than a single 30(b)(6) notice on the State.  That is wrong as a matter of law, and it is the same position this Court already rejected in the context of document discovery.  The Court has already held that the States as a whole are subject to discovery.  *See generally* ECF 1117.  Governments (and their agencies) are "entit[ies]" under Rule 30(b)(6) and are routinely subject to 30(b)(6) depositions—just as any entity can be.  *See, e.g.*, *United States v. Land O'Lakes, Inc.*, 2018 WL 11411337, at *1 (W.D. Okla. Oct. 24, 2018) (denying federal government's motion for protective order against 30(b)(6) notices directed to "the United States"); *SEC v. Merkin*, 283 F.R.D. 689, 693 (S.D. Fla. 2012) ("By its very terms, Rule 30(b)(6) applies to the Government.").  As one court has explained, "[l]ike any ordinary litigant, the Government must abide by the [FRCP].  It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action."  *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009); *see also Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 33–34 (D.D.C. 2015) ("[A] 'foreign government' is an 'entity' that fits comfortably within [Rule 30(b)(6)] as the list of specified entities includes both 'public corporations' and 'governmental agencies.'" (cleaned up)); *United States v. Fed. Res. Corp.*, 2012 WL 1623408, at *3 (D. Idaho May 9, 2012) (holding in a suit by the United States that government agencies must impose litigation holds).  In fact, one court has already held that, in a suit by Montana, the "appropriate route for obtaining testimony" was "a Rule 30(b)(6) notice of deposition on the State agencies. . . .  Then, ***the State*** may designate one or more officers, directors, or managing agents, or designate other persons who consent ***to testify on its behalf***."  *In re Zyprexa Prods. Liab. Litig.*, 2009 WL 10706285, at *2 (E.D.N.Y. Mar. 24, 2009) (cleaned up) (emphases added).  That goal is precisely what Meta has sought to accomplish by noticing the 30(b)(6) depositions of the Plaintiff States, and advising the States that the relevant agencies are those which this Court deemed subject to Rule 34 discovery (ECF 1117), minus those from which Meta is not seeking any documents.

The States cite almost no authority for their view that governments cannot be subject to 30(b)(6) notices, and they fail to grapple with the authority cutting against them (including by incorrectly arguing that the Court found that they had the practical ability, rather than the legal right, to obtain agency documents).  They primarily rely on *Benisek v. Lamone*, 2017 WL 659929 (D. Md. Feb.

---

[2] The States attack a strawman by quoting the portions of the Court's order holding it was not determining whether agencies needed to be joined as parties.  The Court's order was clear that *even if they are non-parties*, discovery obligations exist.  And aside from the Court's order, as explained in-text, it is entirely proper to direct 30(b)(6) notices to governments.

14, 2017), but that case merely held that two individually named government officials were improper 30(b)(6) targets because they were not "entities" and that a single *agency* had not been shown to possess knowledge of other agencies, state political parties, and a series of individuals. Here, the notices were directed **to the States** for knowledge within their possession, which this Court has already held includes the target agencies.  The States' other cases are even farther afield, dealing with, for instance, corporate families without showings of interrelated control.

### 2.    Agencies' Information Falls Within AGs' Ordinary 30(b)(6) Obligations Because It Is Reasonably Available to the AGs.

The AGs, representing the Plaintiff States, are obliged to educate 30(b)(6) witnesses regarding "information known or reasonably available," FRCP 30(b)(6), to the AGs.  Rule 30(b)(6) requires deponents to testify on not only "matters within [their] personal knowledge," but also those "reasonably known to the responding entity."  *Banks v. Off. of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007) (citation omitted).  And courts agree that, for purposes of 30(b)(6) depositions, "[i]nformation is 'reasonably available' to an organization when it is within the organization's control."  *Emhart Indus.*, 2009 WL 10675670, at *4 (emphasis added and citation omitted); *see also, e.g.*, *Santa Clarita Valley Water*, 2020 WL 8102054, at *9 (similar); *Teamsters*, 2013 WL 627149, at *5 (similar); *Erenler*, 2022 WL 18492699, at *6 (similar); *Calzaturficio*, 201 F.R.D. 33, 38 (similar).[3]

This Court already determined that the AGs have control over the relevant agency documents for purposes of Rule 34 discovery in this litigation.  *See generally* ECF 1117.  State agency information is thus "reasonably available" to the AGs because it is in their control, and the States have a concomitant "affirmative duty to educate and to prepare the designated representative for the deposition" on such agency information.  *Molex v. City & Cnty. of San Francisco*, 2012 WL 1965607, at *2 (N.D. Cal. May 31, 2012) (citations omitted).  As a result, even if the Court does not hold that the States as a whole are properly subject to the notices, the information Meta seeks about the identified agencies is certainly "reasonably available" to the AGs through that control, and they must prepare their 30(b)(6) designees accordingly.[4]

### 3.    The States' Piecemeal Deposition Approach Is Inefficient and Burdensome.

Meta's approach is not only warranted by the Rules and law, but also promotes efficiencies and fairness, and reduces burdens on the Court and parties.  As this Court observed, "the complexity of the multidistrict litigation creates a compounding impact on streamlining discovery.  Courts

---

[3] This is in accord with the "majority view" adopted by other federal courts.  *See Anstead v. Va. Mason Med. Ctr.*, 2022 WL 1641425, at *4 (W.D. Wash. May 24, 2022) (quoting *Teamsters*, 2013 WL 627149, at *5); *see also Oliver v. Greenwell*, 2023 WL 2524901, at *1 (E.D. Mo. Mar. 15, 2023); *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 82 (S.D.N.Y. 2019); *Coty Inc. v. Excell Brands, LLC*, 2016 WL 7187630, at *3 (S.D.N.Y. Dec. 9, 2016) (rejecting claim that party "was under no obligation to obtain information from . . . third parties" when it must "gather information from sources 'under its control'").

[4] At minimum, Meta respectfully requests that the Court expressly require the AGs to coordinate with the identified agencies in order to adequately prepare any 30(b)(6) witnesses.  *Cf.* ECF 1479 at 13–14 ("The Court again admonishes the AGs that they have been and continue to be ORDERED to coordinate with all of their state's agencies in this process.  The AGs have an obligation to facilitate this discovery from the state agencies.").

should also consider the goals of efficiency, preservation of . . . resources, and simplification of an already complex discovery landscape. Courts should consider the manner and process for pretrial discovery in order to reduce the expense, number of disparate disputes, and procedural complexity." ECF 1117 at 38. Just as "[d]ocument requests directed to one party are . . . typically more efficient and streamlined than multiple separate subpoenas each directed to non-parties," 30(b)(6) notices to one party (each State) are more efficient and streamlined than issuing over 150 separate 30(b)(6) subpoenas. The States' contrary approach means that "Meta would be required to issue [hundreds] of individual [30(b)(6)] subpoenas, and then negotiate the scope of each subpoena after receiving written responses and objections to each." *Id.* at 40. That, in turn, means that "there would be the potential for these parties to present [hundreds of] allegedly separate disputes over these subpoenas to this Court, with the potential for raising inconsistent or contradictory arguments." *Id.* If anything, these efficiency concerns are even more pressing in the context of depositions than document requests because scheduling and taking hundreds of individual depositions creates an extraordinary, unnecessary burden.

Meta has sought to reduce the burdens on the States of preparing 30(b)(6) witnesses—a process Meta has undergone multiple times in this litigation so far. Most notably, Meta has proposed that each State's deposition would be limited to 21 hours and would exclude the dozens of agencies from which Meta is not seeking documents. In total, this constitutes less than half of the approximately 1,400 hours of deposition time that Meta would be entitled to take if it had to subpoena each of approximately 200 agencies as the States propose.

In arguing otherwise, the States first claim that agencies may make statements against the AGs' interest. That is not a reason to bar depositions; it underscores the importance of state agency testimony by revealing the States' rightful concern that information from their own agencies will contradict the States' case theories. The States' argument also is reminiscent of the "conflicts" arguments this Court has twice rejected. *See* ECF 1117 at 12–16, 21–28; ECF 1213 at 7 (hypothetical, speculative conflicts between agencies and AGs do not bar agency discovery). Finally, the States once again claim that requiring preparation of witnesses will burden them by requiring them to learn basic information about their claims. This is another bid for special treatment and a transparent attempt to avoid "the ordinary burdens of discovery," ECF 1213 at 7, that apply equally to Plaintiffs. Preparing 30(b)(6) witnesses is what parties must do in litigation and holding otherwise here for the States would raise the same serious concerns—in this case and others—that inform decisions holding states and their agencies subject to party discovery. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 2022 WL 1540589, at *3 (W.D. Tex. May 16, 2022) (refusing to "endorse" position that Texas agencies were not subject to discovery when Texas was the party where it "would effectively mean that the United States could obtain only a minuscule portion of the universe of relevant documents by party discovery").

**B.    Meta Does Not Seek the Testimony of Opposing Counsel, and the States' Premature Privilege Objections Do Not Foreclose Valid 30(b)(6) Testimony.**

The States argue that Meta seeks the testimony of "opposing counsel." The States are wrong; Meta seeks testimony from the ***Plaintiff States***—not their counsel. Accordingly, the States' reliance on the *Shelton* test is a red herring: Meta's notices do not purport to require attorney testimony, and the States are free to designate whomever they wish to be their 30(b)(6) representatives, including State personnel who are not attorneys. But even if the States choose attorneys, courts have rejected the argument that it is categorically improper to take attorney 30(b)(6) testimony. *See, e.g.*, *C.R.*

*Dep't v. Grimmway Enters., Inc.*, 2023 WL 8477973, at *4 (E.D. Cal. Dec. 7, 2023) ("The court declines to prohibit the 30(b)(6) deposition in its entirety simply because in-house counsel are, per plaintiff, the only potential deponents.").

Relatedly, the States argue that Meta's notices implicate privileged or otherwise protected testimony and should be categorically limited on that basis. But courts also routinely "appl[y] 30(b)(6) to government agencies and have rejected sweeping arguments that a deposition could not go forward because of the possibility that some questions might seek protected information." *SEC v. Merkin*, 283 F.R.D. 689, 695 (S.D. Fla. 2012) (collecting cases). The proper procedure, as with any deposition, is to object to particular questions and resolve privilege disputes in the ordinary course. *See id.* The States' extraordinary position that ***no*** testimony should be allowed on certain topics because some privileged or otherwise protected information ***might*** be implicated is no reason to bar depositions on those topics entirely.

To be clear, the States seek to bar testimony about relevant, non-privileged, and essential information. For example, the States seek to prevent questioning on Meta's alleged misstatements, the purported reliance and materiality associated with such alleged misstatements, and Meta's alleged unfair conduct (Topics 22–24), as well as the basis for the States' contentions that Facebook and Instagram are directed to children, or that Meta had actual knowledge of under-13 use of those platforms (Topics 36–37). But those Topics include non-privileged factual information critical to the elements that the States must prove. *See* 15 U.S.C. § 6502(a)(1), 16 C.F.R. § 312.2 (website must be "directed to" minors under COPPA); ECF 1214 at 43–44 (recognizing states' consumer protection laws require that alleged misrepresentations be "material"). If privilege is implicated for a particular question or issue, objections should be made at the deposition. The States may not preemptively bar all questioning on these topics.

For example, the States attack as "blatantly" privileged information regarding "efforts to solicit outside counsel for this litigation"—but, of course, privilege is an exception to disclosure, and not all counsel solicitation details are privileged. They also claim there is something privileged about information related to a publicly available May 10, 2021 letter from 26 of 31 MDL State AGs to Mark Zuckerberg claiming that "research increasingly demonstrates that social media can be harmful to the physical, emotional, and mental well-being of children." Privilege does not shield the States from all testimony about the letter.[5] For these and any other topics, privilege objections can and should be raised on an individualized basis in the ordinary course if there is in fact a legitimate basis for such an objection. *See Stevens v. Corelogic, Inc.*, 2015 WL 8492501, at *4 (S.D. Cal. Dec. 10, 2015) ("[T]o the extent Defendant believes Plaintiffs' questions during the deposition impinge upon the attorney-client privilege, Defendant may make a proper objection to such questions.").[6]

---

[5] Even the States' other examples, such as other investigations and similar lawsuits, include non-privileged information, such as who had to approve of investigation or lawsuit commencement and which lawsuits and investigations were commenced (including ones publicly announced).

[6] *SEC v. Jasper*, 2009 WL 1457755 (N.D. Cal. May 26, 2009) does not suggest anything different. In *Jasper*, the court acknowledged that "attorneys of record are not automatically insulated from being deposed." *Id.* at *3. The court barred a deposition because, unlike here, it found that the

**C.    The States Cannot Substitute Other Discovery for 30(b)(6) Testimony.**

The States argue deposition testimony should be denied if they provided other types of discovery on related issues or where they (incorrectly) claim the Topic calls for expert discovery.  They are wrong.  Meta is "entitled to test assertions in questioning witnesses during depositions" and has a "fundamental" right to "simultaneously utilize any or all of the discovery mechanisms authorized by the rules." *U.S. ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009) (cleaned up) (granting defendants' motion to compel the federal government to produce a 30(b)(6) deponent).  Document productions and "[w]ritten interrogatories are rarely, if ever, an adequate substitute for a deposition." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 n.4 (D. Nev. 2016) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993)).  And 30(b)(6) depositions often complement written discovery by allowing parties to clarify and test the produced information.  *Cf. Kress v. Pricewaterhouse Coopers, LLP*, 2013 WL 2421704, at *5 (E.D. Cal. June 3, 2013) (observing that there are "strong reasons" that a party might opt for an "oral deposition," including the opportunity to assess "the spontaneity of witness responses" (citation omitted)).

The States also object that the Topics improperly solicit expert opinions.  But courts have rejected attempts to avoid depositions based on "conclusory arguments" that topics "are more appropriately directed at experts or individual witnesses with personal knowledge," explaining that these assertions are not a "convincing rationale [for] why it is more practicable to seek the information at issue from . . . a party deponent."  *Grimmway*, 2023 WL 8477973, at *3.  If the States have no knowledge on a topic because only their paid litigation experts have considered it, that alone is useful testimony that Meta is entitled to develop in its defense.

**D.    The States Must Provide Testimony for the Full Relevant Time Period.**

The States have no basis for seeking to limit their own 30(b)(6) depositions to a time period that is at least 75 percent *less* than the period that the States have put at issue in this case.  The States' Complaint alleges that the "Relevant Time[]" began "no later than 2012," Compl. ¶ 19, and successfully argued that this 12-year time period should be imposed on discovery provided by Meta, ECF No. 969.  Indeed, this Court ordered a 2012 general start date expressly because the State AGs had selected it as the earliest relevant start date for CIDs to Meta in connection with their pre-suit investigation.  *See* 6/20/24 DMC Tr. at 65:8–12; ECF 969 at 5.  If the States intend to put at issue facts and events that start in 2012, they should be required to provide 30(b)(6) testimony that covers that time period as well.  The States' counterargument misses the point: what is at issue is not just AGs' *investigation* of Meta, but rather their claims that appear to derive from alleged misconduct spanning a 12-year period.  The States would only be entitled to limit their deposition timeframe to September 2021 if they limited their claims to that same time period.

---

notice was targeted at SEC attorneys' mental impressions of witnesses.  *See id.*  ("[I]t appears that what defendant really seeks is [testimony] as to Gifford's (reconstructed) statements through the recollections of the SEC counsel[.]").  That court also made case-specific findings that are inapplicable here, such as the relatively low importance of that evidence.  Here, Meta's topics are key to the case and does not seek protected or privileged information.

**States' Position:** Meta served overbroad notices under Fed. R. Civ. P. 30(b)(6) ("Notices")[7] to 31 State AGs that are fundamentally improper because they seek testimony from 233 nonparty state agencies through State AGs themselves. That approach converts what should be third-party state agency testimony into binding party testimony on the State AGs, effectively making state agencies parties to this case. Meta claims this Court's September 6, 2024, Order Granting-In-Part and Denying-In-Part Meta's Request For Party Discovery Pursuant to Fed. R. Civ. P. 34 (ECF No. 1117) [hereinafter, "September 6 Order"] justifies this approach; but, the Court never examined the separate legal question about depositions or whether agencies are parties to this case. (*See* Sept. 6 Order at 42) ("To the extent the Parties frame their arguments or this dispute as to whether the agencies should be treated as 'parties' for this multidistrict litigation such arguments are, at best, imprecise."); *see also Shijiazhuang Hongray Group v. World Trading 23, Inc.*, Case No. EDCV 21-972-FWS (KKx), 2023 WL 4827099, at *5 (C.D. Cal. Feb. 28, 2023) ("[U]nlike the language of [Rule] 34 requiring production of all documents in the party's 'possession, custody, or control,' Rule 30 does not require a party to litigation to produce persons for deposition who are merely alleged to be in the party's control.") (citation omitted). Even if Meta's Notices are limited to the State AGs, their Notices are improper for at least[8] two additional reasons. First, essentially all of Meta's noticed Topics seek testimony regarding information that is privileged or protected which would require dozens of Plaintiffs' attorneys to take a seat in the witness's chair. Second, Meta's Topics are sweepingly broad, both in terms of scope and time period, and are not proportional to the needs of the case. If applied to the State AGs, counsel would be responsible for testimony regarding 42 Topics ranging from global warming to state advertising budgets going back to 2012, when the State AGs' investigation preceding this litigation did not begin until September 2021.

The State AGs thus respectfully request that the Court require Defendants to abide by the plain terms of Rule 30(b)(6) and seek testimony from agencies directly and to "describe with reasonable particularity" in its 30(b)(6) Notices the information each agency might possess related to this case. The State AGs further ask the Court to enter an order that testimony from state agencies is not "party" testimony; to limit Defendants' Topics directed to the State AGs to Topics proper for deposing a law enforcement agency; and to enter a protective order under Fed. R. Civ. P. 26(c)(1)(A) and (D) consistent with these requests.

## I.   Meta Cannot Compel Rule 30(b)(6) Testimony of Nonparty State Agencies through State AGs

In conferrals, Meta maintained that testimony provided pursuant to its Notices should be binding upon the entire state as a party to this litigation.[9] Meta thus misreads this Court's September 6 Order which "solely concern[ed] whether the State Attorneys General's offices have legally sufficient control such that, in responding to Meta's discovery requests, the state agencies' documents should be obtained and produced by the State Attorneys General in response to Fed. R. Civ. P. 34 document requests." (Sept. 6 Order at 42). Indeed, the September 6 Order is replete with

---

[7] Meta's Notices to the States appear identical, but Meta's 30(b)(6) Notice to Kentucky is provided in Appendix A as an example.

[8] The State AGs preserve Topic-specific objections to Meta's noticed Topics but focus on overarching issues in this joint-letter brief.

[9] The State AGs would not have information regarding Topic Nos.: 3, 7, 13, 14, 16, 18, 19, 20 and 21. Meta should thus seek related testimony from State agencies directly.

findings from this Court that, while not persuasive for its decision regarding documents, the State AGs and State agencies are separate entities, that State AGs brought this action pursuant to their independent authority, and that "legal control" is distinct from "operational control." (*See*, *e.g.*, Sept. 6 Order at 50, 59, and 63). Those factors are much more relevant in the context of Rule 30(b)(6) depositions.

Rule 30(b)(6) states, "a party may name as the deponent . . . *a governmental agency*, or other entity," and parties seeking such testimony "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6) (emphasis added). Nonparties can be deposed under Rule 30(b)(6), but the Rule advises that such notices should include a subpoena and that "persons designated must testify about information known or reasonably available to the organization." *Id*. Defendants' Notices thus fail to adhere to the plain letter of Rule 30(b)(6) by sweeping up 264 state agencies in 31 Notices. This contradicts the terms of Rule 30(b)(6) permitting testimony by "a" governmental agency or "entity"—singular, not plural. Courts have rejected Defendants' argument because Rule 30(b)(6) does not require one governmental agency to testify as to the knowledge of another agency. *See*, *e.g.*, *Bensiek v. Lamone*, No. JKB-13-3233, 2017 WL 659929, at *2 (D. Md. Feb. 14, 2017); *see also Covington v. Semones*, No. 7:06cv00614, 2007 WL 1052460, at *1 (W.D. Va. Apr. 5, 2007). And, the cases Meta cites for the proposition that "control" under Rule 34 is coextensive with "reasonably available" under Rule 30(b)(6) are distinguishable based on the information at issue in those cases. *See*, *e.g.*, *Emhart Indus., Inc. v. Univar USA, Inc.*, No. C09-120JLR, 2009 WL 10675670, at *4 (W.D. Wash. Feb. 12, 2009) (information held by current and former employees and documents available from a corporate merger); *Santa Clarita Valley Water Agency v. Whittaker Corp.*, CV 18-06825-GW-(RAOx), 2020 WL 8102054 (C.D. Cal. July 9, 2020) (information acknowledged in declaration by company's sole managing member).

Meta's Notices would also impose immense burden because attorneys representing the State AGs would be responsible for preparing witnesses on the intricacies of 233 separate state agencies. Meta's Notices contain 42 Topic headings, many consisting of several subparts. As examples, Meta seeks testimony about state advertising budgets and expenditures on Social Media Platforms for any reason; public health services; and policies related to state employees' use of Social Media Platforms. One Topic alone contains twenty-one subparts, including research concerning poverty, natural disasters, COVID-19, climate change, family trauma, nutrition, divorce, or discrimination.[10] "It is one thing to find [the State AGs] have the practical ability to obtain documents and basic information from nonparties, as the Court did in its [September 6 Order];" but under Rule 30(b)(6), "it is quite another to expect that they should immerse themselves into another state agency's records and be able to testify as to that other agency's knowledge." *Bensiek*, 2017 WL 659929, at *2.; *see also In re: Ski Train Fire of November 11, 2000 Kaprun Austria*, No. MDL 1428(SAS)THK, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006).

Meta indicated that it will need up to 21 hours per state to cover its Topics. By that math, Meta seeks 600-plus hours of testimony from 264 distinct state entities, 233 of which are not even parties to this case. This dwarfs discovery afforded to Plaintiffs collectively, which for Plaintiffs combined, amounts to 288 hours of testimony. Meta tries to distract from its problematic Notices

---

[10] Topic Nos. 2, 19, 6, and 17.

by painting the State AGs as refusing to do the work required to supports its billions-of-dollars case, but the State AGs neither sued on behalf of agencies nor seek damages. Instead, the State AGs seek injunctive relief and penalties to protect teens and their families who are harmed when Meta represents that their platforms are safe for youth, develops products that addict those youth, and illegally collects youth data—all while knowing its platforms cause mental health harms to young people. While reserving all rights, some State AGs have already shared Meta's Notices with counsel for agencies and asked them to begin considering which Topics for which they could provide testimony, but the State AGs should not be required to bear the immense burden necessary to prepare a collective 233 nonparty agencies for 30(b)(6) testimony. Discovery in this case is certainly expansive, but Rule 30(b)(6) "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation." *Apple Inc. v. Samsung Elecs.*, No. C 11-1846 LHK PSG, 2012 WL 1511901, at *2 & n. 7 (N.D. Cal. Jan. 27, 2012) (citations omitted).

Nor should those nonparty agencies' depositions be treated as party testimony in this case. Meta's Notices would prejudice the State AGs in prosecuting their case by having agencies make statements against the State AGs' interest under Fed. R. Evid. 804(b)(3). A party "*generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (citation omitted). The State AGs could face real obstacles in defending against a motion for summary judgment if Meta relies on nonparty agency testimony and even if not fully binding, would be required to defend impeachment challenges for positions they have never taken nor endorsed. *Id.* (citing *MKB Constructors v. Am. Zurich Ins.*, 49 F. Supp. 3d 814, 829 n. 11 (W.D. Wash. 2014) and *A.I. Credit Corp v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001)). These problems are compounded in light of Meta's Topics seeking research on complex, sophisticated issues forthcoming in expert testimony. *See United States v. HVI Cat Canyon, Inc.*, Case No. CV 11-5097 FMO (SSx), 2016 WL 11683593, at *10 (C.D. Cal. Oct. 26, 2016).

## II.  **Meta Cannot Seek Testimony from Opposing Counsel**

Meta's Notices will require opposing counsel to sit for depositions or extensively educate witnesses about those attorneys' mental impressions, legal theories, and strategies in this case.[11] As illustrative examples,[12] Meta's Topics seek blatantly attorney-client privileged information such as the State AGs' solicitation of outside counsel for this litigation or testimony regarding cost-sharing and other information protected by the State AGs' common-interest privilege, testimony about attorney mental impressions and deliberations informing years-long investigations, and any or all investigations against social media platforms and lawsuits relating to "similar" mental health harms, including the expansive JUUL and opioid litigations.[13]

---

[11] Meta claims the State AGs refuse to provide "reciprocal" testimony with respect to their 30(b)(6) Notices to Meta, but in doing so, Meta ignores the AGs' reservation therein that "contention-style topics are inappropriate [but] to the extent that Meta is permitted to [do so], the State AGs reserve the right to take similar contention-style topics of Meta."

[12] Meta's Notices effectively require opposing counsel testimony regarding Topic Nos.: 1, 2, 4, 5, 6, 8, 10, 11, 12, 22, 23, 24, 25, 26, 28, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, and 42.

[13] Topic Nos. 11, 12, 30, 31, 32, and 33.

For such Topics, any witnesses designated for deposition testimony by the State AGs would necessarily have to be prepared by State AG attorneys in order to comply with Meta's Notices, or alternately, Meta's Notices would require the State AG attorneys themselves to take a seat in the witness's chair. *See S.E.C. v. Jasper*, No. C07-06122 JW (HRL), 2009 WL 1457755, at *2 (N.D. Cal. May 26, 2009) (citing *S.E.C. v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003) ("The investigation in this matter was conducted by SEC attorneys and by SEC employees under the direction of attorneys. Thus, the 30(b)(6) notice would necessarily involve the testimony of attorneys assigned to this case, or require those attorneys to prepare other witnesses to testify.") and *S.E.C. v. Rosenfeld*, No. 97 CIV 1467 (RPP), 1997 WL 576021, at *2 (S.D.N.Y., Sept. 16, 1997) (same)). Meta's noticed Topics are overly broad, even if limited to the State AGs, but suggestions for how Meta about how to narrow its Topics went nowhere.

Ninth Circuit courts apply the three-part test from, *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986), to decide whether parties meet the high bar to depose opposing counsel. *See Jasper*, 2009 WL 1457755, at *2 (granting protective order against 30(b)(6) deposition of SEC as intruding on attorney work product under *Shelton*). Under *Shelton*, deposition testimony from State AGs should be limited to situations where Defendants demonstrate that "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* (citing *Shelton*, 805 F.2d at 1327). The burden is on a party seeking a protective order to show that the protection is warranted, *Jasper*, 2009 WL 1457755, at *2, but Meta bears the burden of overcoming the three elements in *Shelton* to obtain information requiring testimony from counsel or eliciting attorney mental impressions. *See Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (citing *American Cas. Co. of Reading, Pennsylvania v. Kreiger*, 160 F.R.D. 582, 585 (S.D. Cal. 1995) ("There are good reasons to require the party seeking to depose another party's attorney to bear the burden of establishing the propriety and need for the deposition.").

### (1) <u>Alternate Means to Obtain the Information</u>

Meta seeks information obtainable by other means. The State AGs have already produced the studies and underlying factual information the attorneys considered in filing suit.[14] The State AGs will be presenting forthcoming expert testimony about issues like Meta's conduct that they allege is unfair, statements the State AGs allege are deceptive and their position on reliance, why Meta's Platforms are directed at Young Users, and what types of relief they seek in this action.[15] *See HVI Cat Canyon*, 2016 WL 11683593, at *10. Furthermore, the State AGs have answered interrogatories relating to these Topics.[16] Meta thus has alternate means to access the information it seeks other than through deposing opposing counsel and fails the first element under *Shelton*.

### (2) <u>Information Must Both Be Relevant and Cannot Be Privileged</u>

---

[14] Topic Nos. 8, 11, 15, 17, and 29.

[15] Topic Nos. 22, 23, 24, 25, 26, 28, 34, 36, 37 and 38.

[16] *See* Response 6 from Meta's First Set of Interrogatories, dated May 3, 2024, and Interrogatory Response Nos. 1–9 from Meta's Second Set of Interrogatories, dated Nov. 18, 2024.

Much of the information for which Meta seeks testimony from the State AGs is irrelevant or privileged. *See Jasper*, 2009 WL 1457755, at \*2. On one hand, Topics like the use of Social Media Platforms for advertising by the State AG; the State AGs' solicitation or retention of outside counsel; cost-sharing and other financial arrangements amongst the State AGs; the State AGs' thoughts regarding any Social Media Platform under age 13; and the State AGs' involvement in prior lawsuits about JUUL and opioids;[17] bear little conceivable relation to claims or defenses in this case. On the other hand, Topics in Meta's Notice seeking information relating to the considerations and practices relating the investigations preceding this litigation;[18] testimony regarding legal interpretations or elements to the State AGs' claims and relief;[19] and testimony regarding the parties with whom the State AGs consulted as part of their investigation[20] are protected under at least the attorney-client, work product, and common-interest privileges; the deliberative process privilege; and the investigations and law enforcement privileges.

### a)  <u>Attorney-Client, Work Product and Common-Interest Privileges</u>

A government entity may invoke the attorney-client privilege in civil cases. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1045 (E.D. Cal. 2010) (collecting cases). "When legal advice of any kind is sought from a professional legal adviser in his or her capacity as such, the communications relating to that purpose, made in confidence by the client, are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the protection be waived." *United States v. Martin,* 278 F.3d 988, 999 (9th Cir. 2002) (cleaned up). Attorney work product similarly protects attorney mental impressions from disclosure, *Hickman v. Taylor*, 329 U.S. 495, 393 (1947); and relatedly, the common-interest privilege is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.* 679 F.3d 1121, 1129 (9th Cir. 2012). Parties asserting the common-interest privilege must show "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *See United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal 2003). For the common-interest privilege to apply, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. Common interest may be implied from conduct or by express agreement. *See United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012). Testimony on opinions regarding investigations attorneys employed by the State AGs conducted prior to litigation and efforts to seek outside counsel[21] necessarily involve attorneys providing legal advice to the Offices of the State AGs. Meta's Topics pertaining to research concerning the harms alleged in this case[22] would require attorneys to either testify or educate a witness regarding investigating attorneys' mental impressions and legal evaluations of that research in deciding to pursue litigation. To the extent Meta seeks testimony regarding elements of claims under state consumer protection laws and the relief sought in this case, any testimony beyond the information already provided in written responses, or to be provided in forthcoming expert testimony, would likewise involve attorneys

---

[17] Topic Nos. 2, 31, 30, 39, 40, and 33.
[18] Topic Nos. 4, 8, 11, 12, 15, 17, 27, 29, 32, 33, 39, and 40.
[19] Topic Nos. 22, 23, 24, 25, 26, 28, 34, 36, 37 and 38.
[20] Topic Nos. 5, 6, 10, 30, 31, 32, 41, and 42.
[21] Topic Nos. 10, 11, 12, 32, 33, and 31.
[22] Topic Nos. 8, 15, 17, and 29.

offering attorney thought mental impressions and legal evaluations.[23] But such thoughts from attorneys are "inviolate." *Hickman*, 329 U.S. at 393. Other Topics for which Meta seeks testimony implicate the communications and collaborations attorneys for multiple State AGs held in common interest while working together to jointly file this case.[24]

### b) Deliberative Process Privilege

Federal common law recognizes the deliberative process privilege, which protects advisory opinions and deliberations forming the process by which government decisions and policies are formulated. *FTC v. Warner Comm's., Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120 (N.D. Cal. 2003). Information is protected by the deliberative process privilege if it is both "predecisional" and "deliberative." *Carter v. United States DOC*, 307 F.3d 1084, 1089 (9th Cir. 2002). Information is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision" and "may include recommendations, draft documents, proposals, suggestions, and other subjective [information] which reflect the personal opinions of the [speaker] rather than the policy of the agency." *Carter*, 307 F.3d at 1090 (citation omitted). Information is "deliberative" if it contains "expressed opinions on legal and policy matters or has made recommendations," and although *purely* factual material is not protected by the deliberative process, the privilege applies "when the factual material is so interwoven with the deliberative material that it is not severable." *Warner*, 742 F.2d at 1161 (cleaned up). The key inquiry in finding information "deliberative" is to ask whether disclosure of the information would expose the decision-making process in such a way as to discourage candid discussion within the agency and undermine the agency's ability to function. *Carter*, 307 F.3d at 1090. Meta seeks testimony regarding the deliberative assessments the State AGs made in deciding whether file this case and what claims to assert.[25] Meta's Topics that seek testimony regarding research into the harms alleged in this case and the State AGs' views regarding the elements for the claims and relief in this case[26] are so inextricably intertwined with attorneys' mental impressions that the Court ought not risk the disclosure of privileged information through having attorneys take the stand. *See In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009) (quoting *Warner*, 742 F.2d at 1161).

### c) Investigative and Law Enforcement Privilege

Law enforcement agencies enjoy the investigatory privilege in both criminal and civil contexts based upon the "underlying premise . . . that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging frank discussion of legal or policy matters." *McKesson*, F.R.D. at 600 (citation omitted). Investigative privilege protects against revealing law enforcement techniques and procedures, confidential sources and witnesses, and protects against interference with investigations, not just presently, but in the future, too. *See United States v. City of Los Angeles*, No. 2:11-CV-00974-PSG-JC, 2023 WL 6370887, at *8 (C.D. Cal. Aug. 28, 2023). Thus,"[a]n investigation need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future

---

[23] Topic Nos. 22, 23, 24, 25, 26, 28, 36, 37, and 38.

[24] Topic Nos. 10, 30, 32, and 41.

[25] Topic Nos. 11, 12, 25, 27, 39, 32, 39 and 40.

[26] Topic Nos. 22, 23, 24, 25, 26, 28, 36, 37, and 38.

investigations may be seriously impaired if certain information is revealed." *City of Los Angeles*, 2023 WL 6370887, at *8. Meta seeks testimony regarding law enforcement techniques and methodologies[27] and confidential sources.[28] Further, Rule 26(4)(D) prohibits opposing parties from discovering facts or opinions of a retained expert who is not expected to be called as a trial witness, except in "exceptional circumstances." FED. R. CIV. P 26(4)(D), (ii). If the State AGs were stifled in this way, their ability to conduct informed investigations would be truncated to avoid learning of potentially unsupportive facts and would limit its ability to become knowledge on sophisticated subjects beyond the expertise of the State AGs' own offices.

(3) **None of the Information Meta Seeks in Testimony from State AGs is "Crucial"**

Nothing Meta seeks is truly "crucial to the preparation of the case." *Jasper*, 2009 WL 1457755, at *2. "Crucial" is distinct from "relevant"—"these terms are not synonymous." *Iovino v. Am. Tr. Fin. Servs., Inc.*, No. 2:22-CV-01974-APG-NJK, 2024 WL 4132729, at *3 (D. Nev. Sept. 9, 2024) (applying *Shelton*). "Helpful" testimony is not "crucial." *FMC Techs., Inv. v. Edwards*, No. C05-946C, 2007 WL 836709, at *5 (W.D. Wash. Mar. 15, 2007). "For information to be crucial, it must have some greater importance to the action than merely being relevant,' otherwise, the third *Shelton* factor' would be rendered 'redundant.'" *Serenity Invs. LLC v. Sun Hung Kai Strategic Cap. Ltd.*, No. 22CV01623YGRLJC, 2024 WL 517870, at *6 (N.D. Cal. Feb. 9, 2024). Information is crucial "if it is '*necessary* for the survival of a claim or defense.'" *Iovino*, 2024 WL 4132729, at *3 (citation omitted). State AG testimony is not crucial because document productions, written discovery, and expert reports supply the information Meta seeks without mixing in attorney mental impressions. *See Chao v. Aurora Loan Servs., LLC*, No. C-3118 SBA LB, 2012 WL 5988617, at *5 (N.D. Cal. Nov. 26, 2012) (applying *Shelton*). Nor has Meta adequately explained how the information it seeks is *necessary* for the survival of any claims or defenses—a burden which Meta bears in this instance. *See Iovino*, 2024 WL 4132729, at *3. Meta's attempts to obtain testimony that would require testimony from opposing counsel should thus be denied. Meta essentially seeks a "probing examination" of counsel prosecuting this matter regarding factual information that is "not easily segregated from those attorneys' thoughts, mental impressions, opinions or conclusions about this case." *Jasper*, 2009 WL 1457755, at *3. Meta claims it is being efficient, but "[i]t is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony." *Shelton*, 805. F.2d at 1327.

**III.  Relevant Time Period**

The claims in this case concern *Meta's* conduct going back to 2012, but the State AGs' investigation relating to this litigation did not begin until September 2021. Therefore, most of the information the State AGs would have in response to Meta's noticed Topics would be limited to that timeframe, save for certain exceptions such as consumer complaints or document retention policies which might predate that period. Meta's requested time frame is far in excess than what is justified given the little relevance such information would have to this case, discussed further in Sections I and II(2)(b) and (3), *supra*.

---

[27] Topic Nos. 5, 6, 10, 11, 12, 15, 16, 27, 29, 30, 31, and 32.
[28] Topic Nos. 5, 6, 10, 41, and 42.

## ATTESTATION

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: January 13, 2025

By: /s/ *Ashley M. Simonsen*
Ashley M. Simonsen
