UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All bellwether cases* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING FACT WITNESS DEPOSITIONS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

      Pursuant to the Court's Standing Order for Discovery in Civil Cases, Plaintiffs and Defendants respectfully submit this joint letter brief regarding fact witness depositions.

      Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On January 8, 2025, lead trial counsel for the Parties involved in the dispute attended the final conferral. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached.

      The parties will be prepared to address these disputes at the Court's earliest convenience, including at the January 16, 2025, Discovery Management Conference.

Dated: January 13, 2025                    Respectfully submitted,

                                        /s/  *Megan M. Egli*
                                        **SHOOK HARDY & BACON LLP**
                                        Megan M. Egli, *pro hac vice*
                                        2555 Grand Boulevard
                                        Kansas City, Missouri 64108
                                        megli@shb.com
                                        Telephone: 816.474.6550
                                        Fax: 816.421.5547

                                        **COVINGTON & BURLING LLP**
                                        Ashley M. Simonsen, SBN 275203

1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**FAEGRE DRINKER LLP**

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
**FAEGRE DRINKER LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com
Email: amy.fiterman @faegredrinker.com

Amy R. Fiterman, *pro hac vice*
**FAEGRE DRINKER LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 (612) 766-7768
Facsimile: +1 (612) 766-1600
Email: amy.fiterman@faegredrinker.com

Geoffrey Drake, *pro hac vice*
**KING & SPALDING LLP**

1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Tel.: 404-572-4600
Email: gdrake@kslaw.com
Email: dmattern@kslaw.com

David Mattern, *pro hac vice*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626-2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

/s/ *Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2588
Email: Jessica.Davidson@skadden.com

John H. Beisner (State Bar No. 81571)
Nina R. Rose (*pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
1440 New York Avenue, N.W.,
Washington, DC 20005
Telephone: (202) 371-7000
Email: John.Beisner@skadden.com
Email: nina.rose@skadden.com

Jason David Russell (SBN 169219)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071-3144
Telephone: (213) 687-5328
Email: jason.russell@skadden.com

Catherine Mullaley (*pro hac vice*)
**SKADDEN, ARPS, SLATE,**

MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 573-4851
Email: catherine.mullaley@skadden.com

**MUNGER, TOLLES & OLSON LLP**

Jonathan H. Blavin, SBN 230269
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com
*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
Wilson Sonsini Goodrich & Rosati PC
1301 Avenue of the Americas, 40th Floor

New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
Wilson Sonsini Goodrich & Rosati PC
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (947-2099
lwhite@wsgr.com
smachock@wsgr.com

Christopher Chiou
Matthew K. Donohue
Wilson Sonsini Goodrich & Rosati PC
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
cchio@wsgr.com
mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwangweissman@
morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW

5

NW Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
JOSEPH G. PETROSINELLI (*pro hac vice*)
ASHLEY W. HARDIN (*pro hac vice*)
680 MAINE AVENUE, SW
WASHINGTON, DC 20024
TEL.: 202-434-5000
JPETROSINELLI@WC.COM
AHARDIN@WC.COM

*Attorneys for Defendants YouTube, LLC and Google LLC*

*/s/ Previn Warren*
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**

155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
633 WEST FIFTH STREET, SUITE 2652
LOS ANGELES, CA 90071
Telephone: 213-787-8590
ejeffcott@forthepeople.com

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaisons

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

PAIGE BOLDT
**WALSH LAW**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@alexwalshlaw.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

SARAH EMERY

**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: 646-666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH E. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016

Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

*Attorneys for Individual Plaintiffs*

## **ATTESTATION**

I, Megan M. Egli, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Pursuant to Section H of this Court's Standing Order in Civil Cases, lead counsel for Plaintiffs and each of the Defendants attended the final meet-and-confer on January 8, 2025, which was conducted via a videoconference Zoom meeting, as lead counsel were in attendance from locations across the country more than 100 miles apart.

Dated: January 13, 2025                                                              /s/ *Megan M. Egli*

**Plaintiffs' Position:** Defendants seek to depose an impossible number of bellwether-specific, non-party fact witnesses in what appears to be an impermissible gambit to end-run Plaintiffs' trial witness list. The Court should not permit this improper attempt to harass and intimidate bellwether Plaintiffs through burdensome and costly discovery that is both unnecessary and in contradiction to this Court's orders and guidance. Defendants' actions are inappropriate for a variety of reasons.

Plaintiffs originally asked this Court to limit Bellwether-specific depositions to four fact witness depositions per Plaintiff. *See* ECF 595-1. While the Court declined to impose a hard limit at that time, it did offer guidance on the issue at the February 22, 2024 DMC hearing. At that hearing, Plaintiffs expressed concern "about [depositions] being divided too many ways and adding up to a very large number of depositions" DMC Tr. at 52 and the Court responded: "Because it hasn't occurred yet and it's somewhat hypothetical, I'm just going to ***admonish defendants not to split this up and start harassing***. . . .from what you've listed for me for individual plaintiffs it's like the plaintiff, him or herself, their treating physician, maybe one other person, right?" The Court went on to state "So that's four. . . . ***if you start noticing more than four or five depositions for each personal injury,*** especially for a minor, . . . the plaintiffs certainly can come to me on an emergency basis for a motion or a ruling on whether a particular deposition ought to be quashed or struck." The Court ended by noting "I'm expecting both sides to ***work within the hours limits to be reasonable in terms of number of depositions. But if I get the sense or if you come to me that one side or the other is abuse - - right? - - numbers of depositions, I'm not going to - - I'm going to take a different view to that.***" DMC Tr. at 53, emphasis added.

The risk the Court acknowledged nearly a year ago is no longer hypothetical. Directly converse to the assertion Defense Counsel made to the Court on that date that they "ha[d] no intention of abusing" the lack of a hard cap on depositions, Defendants have discarded the Court's guidance and have noticed or expressed intent to subpoena more than double the number of depositions the Court thought was reasonable in most cases. DMC Tr. at 53. The four deposition cap Plaintiffs requested and the Court agreed seemed reasonable is supported by the fact Judge Kuhl in the JCCP enforced a similar limitation of "2 percipient witnesses [and] 1 treating professional" with the option of Defendants choosing 1 percipient witness, and 2 treating professionals, in addition to the bellwether Plaintiff, for a total of four witnesses. JCCP 5255 Minute Order, Sept. 16, 2024.

Plaintiffs have worked closely with Defendants to ensure that all relevant and necessary depositions take place to allow Defendants plenty of time and opportunity to gather the information needed to assert defenses in their cases, including by already agreeing to up to seven depositions in some cases. Indeed, forty-seven fact witness depositions already have confirmed dates at present, with several others waiting only on mutually agreeable dates, times, and locations. Depositions are set to begin in the first MDL bellwether case on 1/14/2025 with others following consistently through mid-March. Additionally, Plaintiffs have worked with Defendants to make this process easier—in many cases, Plaintiffs' counsel have agreed to represent fact witnesses in a limited capacity for their depositions, accepting service of deposition notices and facilitating scheduling. Further, Plaintiffs agreed to provide Defendants the names of two "key" treaters Plaintiffs believe will provide the most relevant information for both parties, despite the fact that Defendants have Plaintiffs' medical records and will have their deposition testimony and the testimony of their closest percipient fact witnesses. Plaintiffs undertook this step in the spirit of negotiation, but were not met with similar good will. Instead, Plaintiffs received a flurry of emails

from Defendants naming multiple *non-treater* additional witnesses they intend to depose, stretching the reasonable plausibility of remaining within the 30 hour limit. Defendants, so far, have given their intent to depose *74 non-treater deponents* over 11 Plaintiffs. Assuming Defendants intend to depose at least one treater, (although they have indicated they will likely seek to depose at least two treaters) that would result in at least *85 bellwether-specific depositions.*

Plaintiffs have indicated throughout this process that if particular circumstances require, Plaintiffs will work with Defendants to depose witnesses beyond the Court's guidance of 4-5 witnesses total per Plaintiff. For instance, in the case of Plaintiff S.K., Plaintiffs agreed to Defendants' deposition of the Plaintiff, her mother, father, step-father, and step-mother in addition to the two "key" treaters Plaintiffs identified for Defendants. That already brings the deposition count to at least seven, but Defendants have now indicated they intend to depose three additional witnesses, bringing the deposition count to at least *ten* fact witnesses. S.K.'s case is not an outlier in this respect, in most of the cases Defendants have noticed or stated their intent to notice 8-12 individuals.[1] In addition to the sheer impracticability of deposing so many witnesses within the Court-ordered 30 hours limitation, and the blatant disregard of this Court's guidance, many of the witnesses named by Defendants appear intended to harass, intimidate, and place undue burden on the Plaintiff. At the very least, Defendants' conduct is the definition of seeking "unreasonable cumulative or duplicative" depositions seeking information that can easily "be obtained from some other source that is more convenient, less burdensome, or less expensive." FRCP 26(2)(C)(i). In the case of minor Plaintiff J.D., as just one example, Defendants have expressed their intent to depose *ten* fact witnesses, including J.D.'s estranged father, who has not had contact with J.D. or her family in more than a decade, meaning J.D. would have been around only six years old the last time she had contact with this person. While the circumstances of Plaintiff's home and family life may have some relevance, information about that relationship or lack thereof is much more easily attainable from J.D. herself and from any of the other family members Defendants have also noticed for deposition. It is worth noting as well that all of these additional witnesses added by Defendants are non-Parties. Defendants claim that "most" are family members, but that only further supports Plaintiffs' position that adding these deponents will be cumulative and duplicative.

Defendants claim that Plaintiffs' initial disclosures are too broad, and that they simply cannot know which witnesses will be most beneficial for them to litigate their cases, but that is neither true nor the standard. Plaintiffs worked from lists of hundreds of potential deponents, reviewed documents, conducted additional discovery and research, and were forced to allocate their hours in a strategic way to best determine which witnesses were most likely to provide non-duplicative, relevant information. That is how litigation works. Defendants *insisted* in most cases that Plaintiffs provide five names of people with knowledge about the Plaintiff's claims during the PFS process. Even in cases where Plaintiffs stated that only two or three people fit that definition, Defendants followed up with "deficiency" letters exhorting Plaintiffs to amend their PFSs to get that list of knowledgeable individuals to five names. Now, Defendants are attempting to say that they cannot possibly winnow down that pool of people from five fact witnesses and treating providers despite months of having access to Plaintiffs' entire forensic imaging of multiple devices, unfettered access to their social media accounts, and tens of thousands of documents produced from emails,

---

[1] A number that is particularly difficult for Plaintiffs to nail down because we do not know at this juncture how many treating providers Defendants intend to depose for each Plaintiff.

text messages, hard copies, and non-party productions. Defendants' initial disclosure argument is further belied by the fact that many of the additional depositions they now seek were never named on initial disclosures or in the PFS, including the examples listed above for J.D. and S.K.[2] . Additionally, what Defendants request of the Court misuses the purpose of initial disclosures and is tantamount to a premature disclosure of a trial witness list. *See e.g.*, *Makaeff v. Trump. Univ., LLC*, No. 10-CV-0940-GPC (WVG), 2014 U.S. Dist. LEXIS 167581, at *12-13 (S.D. Cal. Dec. 3, 2014) (In the context of a party requesting additional depositions, the Court held "[i]t is unreasonable for either party to reveal their trial witnesses at this time."). Initial disclosures serve a broader purpose than a trial witness list, and Defendants are neither entitled to force Plaintiffs to provide their hypothetical witness list months before it is due, nor should they be allowed to disregard hours limitations and guidance set by this Court.

Defendants seem to believe they are entitled to depose every family member, friend, ex-romantic partner, current romantic partner, school employee, and treater that may have tangential knowledge of Plaintiff's injuries, but that is not the standard set forth by Rule 26(C)(2)(i), this Court, nor the standard of practice in complex litigation. For all of the reasons discussed above, and to prevent additional harassment of Plaintiffs and non-Parties, unnecessary costs and burden, and to timely move this case forward in accordance with the schedule, Plaintiffs request the Court immediately intervene to require Defendants to comply with the Court's instruction, remove duplicative, cumulative, and inconvenient witnesses from their deposition lists, refrain from additional deposition notices and subpoenas, and revoke any outstanding subpoenas to such witnesses.

**Defendants' Position**: Defendants are in an untenable position. Before any discovery had commenced in earnest, the Court imposed a 30-hour limit for Defendants to take fact depositions in each bellwether case, yet the personal injury bellwether Plaintiffs have now identified more material fact witnesses in their Rule 26(a)(1) Initial Disclosures than Defendants can practically depose within the 30-hour limit and the compressed fact discovery period that Plaintiffs secured. Indeed, Plaintiffs have identified an average of 11 witnesses per case pursuant to Rule 26(a)(1)(A)(i), with some Plaintiffs disclosing as many as 16 witnesses. Each Plaintiff has disclosed 2–7 non-treater witnesses (with an average of 4.6 per case) and up to 10 treater witnesses (with an average of 6.3 per case). On top of these constraints, Plaintiffs now want to impose arbitrary limits on how many and which third-party witnesses Defendants may depose in each case.

Plaintiffs seek to presumptively limit Defendants to some undisclosed number of fact depositions per case (both treaters and non-treaters)—but significantly fewer than the number of depositions (*i.e.*, ten) that Rule 30(a) permits without leave of court—unless Plaintiff's counsel judges that the depositions are warranted. Based on this position, at least some counsel are unilaterally frustrating the scheduling of depositions by refusing to provide witness availability for witnesses they claim to represent. The Court already made clear that it is "not setting any hard numerical limits" on the number of witnesses Defendants may depose, and when setting a 30-hour

---

[2] One of the 3 additional witnesses listed by Defendants for S.K. was identified in the PFS, however Plaintiffs have already agreed and set dates for the other four individuals on that list and maintain deposing Plaintiff's aunt would be duplicative and unlikely to lead to unique relevant evidence, in addition to the burden it would place on Plaintiff and the non-party witness.

14

limit, the Court directed Plaintiffs to be "reasonable in terms of numbers of depositions." 2/22/24 DMC Tr. at 53:5–6, 53:18–19. Due process requires that Defendants have a fair opportunity to conduct the depositions of treaters and other percipient witnesses, including those named in Plaintiffs' Initial Disclosures. This is not harassment. It is a due process right. Defendants request that the Court reject Plaintiffs' attempt to restrict unilaterally the number of depositions that may be taken within the hours limit or otherwise refuse to cooperate with scheduling depositions of third-party witnesses Plaintiffs' counsel represent absent a duly filed motion for protective order.[3]

Defendants have sought the depositions of between 5 and 7 fact witnesses per bellwether case (with an average of 6 witnesses per case, excluding the user Plaintiff).[4] Those witnesses consist almost entirely of parents, guardians, siblings, and significant others, and 73% (49 of 67 requested witnesses) are listed on Plaintiffs' initial disclosures. Plaintiffs have no basis to object to the depositions of witnesses Plaintiffs inserted into the case by disclosing them under Rule 26(a)(1) as persons Plaintiffs "may use to support [their] claims." Defendants have a right to learn the information they possess to avoid trial by ambush. *See Amatrone v. Champion*, 2017 WL 3334889, at *4 (N.D. Cal. Aug. 4, 2017) ("Initial disclosures are necessary 'to avoid surprise [during trial] and the possible miscarriage of justice.'" (alteration in original)); *Bryant v. Mattel, Inc.*, 2007 WL 5416684, at *2 (C.D. Cal. Feb. 6, 2007) ("very purpose of initial disclosures" is "to put the party on notice of the witnesses that might testify against it and avoid 'trials by ambush'").

Defendants also are justified in deposing witnesses whom ***Defendants*** have identified through discovery as likely possessing discoverable information—even if ***Plaintiffs*** may not use those witnesses to *support* their claims (and thus have not disclosed them under Rule 26(a)(1). Plaintiffs do not unilaterally get to dictate which witnesses Defendants may depose to gather information to support their defenses. Fed. R. Civ. P. 26(b)(1) (allowing discovery into any matter relevant to a claim or defense). Plus, these witnesses are not the "minor friends of minor personal injury plaintiffs" that the Court admonished Defendants to avoid deposing. 2/22/24 DMC Tr. at 52:22–25.[5] There is no effort to harass Plaintiffs or increase costs. To the contrary, these individuals have or had central roles in Plaintiffs' lives during their formative years, including parents (6), siblings (6), aunts (1), nephews (1), significant others (2), close friends (1), and IEP case managers (1). It would be unfair to preclude Defendants from deposing individuals simply because Plaintiffs do not think they possess information helpful to ***Plaintiffs' case***.

J.D.'s father is the only witness whose deposition Plaintiffs identify as harassing. Plaintiffs, however, offer no explanation of how this deposition would actually be harassing to a witness Plaintiffs do not even claim to represent. It is also a textbook example of Defendants'

---

[3] The closely-related issue of the volume of treating providers on Plaintiffs' initial disclosures is being addressed in separate letter briefing being submitted today. Plaintiffs objected to briefing the issues together.

[4] Defendants have not yet sought the depositions of any treating physicians, as Plaintiffs disclosed their "key" treaters for the first time last Friday, nearly a month later than the date by which Defendants asked for this information. The numbers in Plaintiffs' insert appear to make assumptions about the volume of such depositions that may prove incorrect.

[5] Plaintiffs tellingly elide this portion of the Court's comments out of their letter brief.

entitlement to discovery. J.D.'s father was imprisoned for murder and recently released from prison. When he was released from prison, he reached out to J.D., potentially causing her further mental anguish. J.D. raised these issues with her therapist, including whether to try to have a relationship with her father. This is another alternative cause of Plaintiffs' alleged injuries. Defendants are entitled to depose J.D.'s father about the facts behind his imprisonment, his outreach to J.D., and any response thereto, rather than hearing only J.D.'s side of the story. This deposition can be short, but it is critical.

Defendants hope not all these depositions will be necessary. But the parties have worked collaboratively to schedule the depositions of the bellwether Plaintiffs on dates convenient for Plaintiffs, resulting in many Plaintiff depositions being deferred until February and even March. There is insufficient time in the schedule for Defendants to wait until those depositions are taken and then determine what knowledge each potential witness possesses before attempting to schedule depositions of third-party witnesses—many of whom Plaintiffs' counsel do not represent. Thus, given time constraints, the depositions should be calendared now for dates after each Plaintiff's deposition. Defendants are willing to meet and confer with Plaintiffs in good faith regarding taking down depositions once depositions commence and Defendants are able to evaluate whether the testimony of certain witnesses would be duplicative. Defendants respectfully request that the Court maintain its prior directive that Defendants are not limited to any specific number of percipient witness depositions.

Plaintiffs' arguments to limit Defendants' discovery are unavailing. As a threshold matter, Plaintiffs mischaracterize this Court's ruling regarding depositions. The Court did not impose a "4-5" deposition limit. Rather, the Court indicated that if depositions became harassing Plaintiffs were free to seek relief. Plaintiffs cannot articulate any basis for such relief before depositions begin. Moreover, the JCCP court has not "enforced a similar limitation." The JCCP court has set a two-stage discovery process, with limited "priority" discovery on all 17 remaining bellwether cases (depositions of plaintiff; a treating provider; and two additional percipient witnesses) at the outset, followed by additional discovery (including depositions) on the narrower set of cases selected for trial. See 9/16/24 JCCP Minute Order ("Note that when a bellwether discovery pool plaintiff is selected as a bellwether trial pool plaintiff additional discovery will be permitted according to a future order of the court."). This Court's bellwether discovery process, by contrast, is not bifurcated. Accordingly, Plaintiffs seek to hold Defendants in the MDL to approximately the same number of depositions to which Defendants are entitled in the JCCP in the first phase alone.

Additionally, Defendants did not dictate the number of witnesses on Plaintiffs' initial disclosures. As part of the Court-ordered Plaintiff Fact Sheet, ECF No. 596, Plaintiffs were required to identify the five non-treaters most familiar with their claims, see ECF No. 551.2, at 21-22. Rather than prepare separate initial disclosures identifying the individuals Plaintiffs "may use to support [their] claims," FRCP 26(a)(1)(a)(i), Plaintiffs elected merely to cross-reference all individuals they identified in their Fact Sheets. As a result, Defendants are now compelled to depose each of those individuals to avoid the risk of surprise at trial.

Finally, Plaintiffs' assertion that they "worked from lists of hundreds of potential deponents" to identify Defendants' employees they wished to depose is both misleading and

irrelevant. Meta's initial disclosure list, for example, identifies four witnesses, each of whom Plaintiffs have noticed for deposition. Moreover, unlike the 30-hour limit imposed on Defendants per case, Plaintiffs have significantly more time to depose each Defendant's employees. Put simply, the Court should reject Plaintiffs' effort to deprive Defendants of their due process right to take depositions of individuals identified on Plaintiffs Initial Disclosures or whom Defendants believe have relevant information to defend against Plaintiffs' claims.