# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Filing Relates to: <br><br> *All Actions* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF RE CERTAIN NONCUSTODIAL YOUTUBE DATABASES** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs ("Plaintiffs") and Defendants Google, LLC and YouTube, LLC ("YouTube") respectfully submit this letter brief regarding a dispute as to Certain Noncustodial YouTube Databases.[1]

Pursuant to that Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference before filing this brief. The final conferral was on January 8, 2025, and was attended by lead trial counsel for the Parties involved in the dispute. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

This document is provisionally filed under seal, pursuant to the Order Granting Motion to File Under Seal: Setting Sealing Procedures. Dkt. 341.

Attached as **Exhibit A** is Appendix A to YouTube's October 25, 2024, correspondence describing its search of non-custodial sources.

Dated: January 14, 2025

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between YouTube and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-DiscoveryStanding-Order-v1.2-2023_06_01-1.pdf.

Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104

Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY LLP**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*By: /s/ Christopher Chiou*
Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Attorneys for Defendants YouTube, LLC, Google LLC

WILLIAMS & CONNOLLY LLP

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashely W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Fax: 202-434-5029

Attorneys for Defendants YouTube, LLC, Google LLC

MORGAN LEWIS & BOCKIUS, LLP

Brian Ercole (pro hac vice)
brian.ercole@morganlewis.com
Morgan Lewis & Bockius, LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
Morgan Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Attorneys for Defendants YouTube, LLC, Google LLC

## **ATTESTATION**

I, Christopher Chiou, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: January 14, 2025

By: */s/  Christopher Chiou*
    Christopher Chiou

**PLAINTIFFS' POSITION**

Plaintiffs have diligently met and conferred with YouTube regarding its search and production from non-custodial sources containing user complaints, alternative designs, and product launches for nearly six months. Nonetheless, as a direct result of YouTube's ongoing failure to provide timely and accurate information, the Parties have yet to resolve disputes concerning YouTube's search and production from these critical sources. Accordingly, this Court should enter an order (1) requiring an individual with comprehensive knowledge of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓ to attend a meet and confer within five (5) days; (2) entering Plaintiffs' proposed sampling procedure for YouTube's search of ▓▓▓ and (3) setting January 24, 2024 for YouTube to provide information on the remaining disputed custodial sources.

Plaintiffs first asked YouTube on July 31, 2024 to confirm it would search each of the above non-custodial sources, provide a timeline for production, and explain its basic search methodology. YouTube delayed and obfuscated for months.[1] Thus, it was not until October 25, 2024 – eleven days before the substantial completion deadline and almost six months after Plaintiffs' request – that YouTube disclosed that (1) YouTube would limit its search of ▓▓▓ and ▓▓▓ to confirmed Bellwether i.d.s ("GAIAs") and email addresses and (2) YouTube was not searching ▓▓▓ or ▓▓▓[2] As set forth below, each of these sources contains highly relevant information, and YouTube's proposed searches are unreasonable and would be materially deficient. Accordingly, Plaintiffs have diligently sought additional information to enable the Parties to negotiate well-crafted and targeted searches. After months of back and forth, it is clear that YouTube's approach to determining an appropriate search methodology is either lax or uninformed; answers to basic questions take weeks, and the information provided is often incomplete and contradictory.



There is no question that complaints received by YouTube regarding the adverse effects of YouTube on the well-being, safety, and physical or mental health of minor users ("User Complaints") and YouTube's responses are central to Plaintiffs' claims, including to show YouTube's knowledge of the risks posed by its platform. Indeed, YouTube has already agreed to search custodial files for documents responsive to Plaintiffs' request for production of User Complaints (RFP 70).

YouTube initially claimed that a more fulsome search of ▓▓▓ would be unduly burdensome because, it claimed, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Exh A. But when pressed to respond to Plaintiffs' questions on these issues, YouTube slowly revealed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Further, ▓▓▓

---

[1] After initially representing it was in the process of gathering the requested information, YouTube did an about-face in early September, stating it no longer intended to confirm in writing the limited information provided on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and would not provide information on ▓▓▓▓▓ At the brink of impasse, YouTube ostensibly reversed its position once more. But YouTube's long-awaited correspondence failed to specify if it would search ▓▓▓▓▓▓▓
Thus, despite that the ESI Order requires the Parties to "meet and confer" regarding the sources to be searched, any assertion that requested ESI is "not 'reasonably accessible' or "otherwise unnecessary,'" (see Dkt. §§ 5, 6, 8), it was not until after the Parties' exchanged briefing in advance of the October DMC that YouTube agreed to provide a written response to Plaintiffs' request.

[2] While YouTube had previously indicated its current search of ▓▓▓ and ▓▓▓ were so limited, YouTube explained that this limitation was based on its then existing untenable position (since revised) that it was refusing to produce additional complaints from *any* source.

1

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In short, **none** of the stated "limitations" actually prevent YouTube from searching for and producing relevant complaints.

Despite this shifting landscape, Plaintiffs have now provided YouTube with a list of search terms and a proposed sampling procedure to determine whether aggregate analysis of complaints can shed sufficient light on the number and frequency of relevant complaints and when YouTube was put on notice of the hazards alleged in the complaint. YouTube has indicated it is agreeable to Plaintiffs' methodology but not on timing. While Plaintiffs have proposed two weeks for YouTube to provide Plaintiffs with the complaints selected for sampling (limited to 4,000), YouTube claims it will take "eight weeks" to review the complaints for privilege and redact any personal identifying information. YouTube has not explained why such a lengthy period is required in light of (1) the Protective Orders and Privilege Orders entered in this case, and (2) Plaintiffs offer to stipulate that the sample be used for negotiations only and/or viewed in a secured environment. Paired with YouTube's prior estimate of "eight weeks" to provide sample complaints from ▇▇▇ (due to exportability issues) and contemporaneous suggestion the complaints would be reviewed by a *single* reviewer, it appears this timeline is intended to prevent iterative sampling and timely production. YouTube should be ordered to adopt Plaintiffs' proposed sampling methodology and provide Plaintiffs the sampled messages within fourteen calendar days.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is evident from YouTube's production that "feedback" in ▇▇▇▇ includes User Complaints responsive to RFP 70. *See e.g.*, GOOG-3047MDL-02938010 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). Plaintiffs have also requested, and YouTube agreed to produce from non-custodial sources, survey research (RFP 63). Survey research concerning the use of YouTube or other social media platforms by minor users, including the number of YouTube users, their patterns of use, and the impact that the use of social media has on their mental health is similarly relevant to YouTube's knowledge regarding addictive and compulsive use and the effects thereof. YouTube subsequently took about a month to answer questions regarding search syntax and was then unable to answer simple follow-up questions, such as whether wildcards could be used. This meant Plaintiffs had to draft multiple sets of complex search inquiries, significantly delaying Plaintiffs' ability to provide an alternative search methodology.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Such information is critical to Plaintiffs' ability to identify key witnesses and to prove their claims for defective design and is responsive to numerous discovery requests to which YouTube has agreed to produce responsive documents from non-custodial sources. (*e.g.*, RFPs 34, 42, 43, 46-49). YouTube claims that ESI from ▇▇▇ need not be produced because this information can be gleaned from "▇▇ notification" emails or by requesting hyperlinks from documents in custodial productions. But the emails contain incomplete information and are limited Google's short retention policies and the hyperlink process is unworkable. YouTube also claims that it is "unduly burdensome" to determine the "relevant team calendars," but this claim is belied by its subsequent proposal to identify relevant calendars by reviewing the incomplete ▇▇ notification emails. Nonetheless, Plaintiffs understood that the dispute regarding ▇▇ was nearing resolution as YouTube indicated three weeks ago that it could likely perform a complete review using "YouTube" as the relevant calendar and producing all relevant fields. But YouTube reversed this position at the recent H(2), claiming it was technologically infeasible and instead offered to produce an even smaller subset of calendars and a limited number of fields that omitted teams (e.g., Shorts) and relevant fields (e.g., those related to approvals) that Plaintiffs have repeatedly emphasized.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ YouTube documents demonstrate that these correspond with User Complaints and safer alternative designs, respectively. *See e.g.*, GOOG-3047MDL-02328073 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); GOOG-3047MDL-

00418469 (███████████████████████████████████). YouTube initially represented that searching █████ was unduly burdensome as users must (1) identify a particular ██████ to effectively search ████████ (2) ████████████████████████████████, and (3) the ████████████████████████████████ Yet YouTube has refused to provide a list of ████████████████ instead suggesting the use of ████████████████ After stonewalling Plaintiffs for nearly two months, YouTube provided Plaintiffs with links to certain help articles concerning an "Issue Tracker" Google makes available to API developers on the eve of the H(2). YouTube claimed these links provided the ████████ search query language and glossary of fields. But when YouTube's response on whether AND, OR, and NOT queries could be run on ████████ appeared to conflict with the "Issue Tracker" page, YouTube was unable to verify which version was correct or state if the search capabilities of "Issue Tracker" and ████████ were consistent.

**Attendance by Knowledgeable Individual:** Based on the above, Plaintiffs repeatedly requested, and YouTube refused, to (1) identify a designated "Discovery Liaison" with adequate knowledge as required by Section 4 of the ESI protocol and (2) ensure that an individual with more knowledge of the functionality of the at-issue non-custodial sources attends future meet and confers. Contrary to YouTube's assertions, these requests do not amount to "discovery on discovery."[3] Instead, they simply ask that YouTube comply with the requirements of the ESI order, which is premised on the mutual exchange of information and informed discussions. Given YouTube's record of incomplete and contradictory information, the best and most efficient way to complete negotiations is to ensure that experts with actual knowledge of each system are included in the meet and confer process. In the absence of agreement, Plaintiffs respectfully request this court order it to do so.

## YOUTUBE'S POSITION

YouTube has been forthright and transparent throughout the discovery process, fielding months of demands for further information regarding noncustodial sources, including the four at issue here: ████████████████ and ████████ and many more beyond. Plaintiffs' latest demands—to produce YouTube's engineers (or another person with "comprehensive knowledge" of these sources) to participate in meet and confer between counsel, and to order Plaintiffs' proposed sampling procedure of ████ specifically—serves only to further delay YouTube's production from these sources as Plaintiffs challenge the sufficiency of a production that has yet to occur while complaining of a delay of their own making. Pulling key engineers away from their critical work responsibilities imposes an undue burden on YouTube and is disproportionate to the needs of the case. And Plaintiffs' proposed sampling procedure of ████ simply *is not technically feasible—it cannot be done on the aggressive timeline Plaintiffs demand*. Plaintiffs' requests should be denied.

### YouTube Has Granted Plaintiffs Extraordinary Access to Noncustodial Source Information

YouTube has provided extensive information regarding over 20 different noncustodial sources and has explained in detail the parameters of noncustodial searches previously conducted. YouTube also provided comprehensive testimony through its June 26, 2024 Rule 30(b)(6) deposition, during which a corporate representative testified regarding the relevant data sources and their contents, and Plaintiffs had the opportunity to question that corporate representative about each source on the record. Documents produced in connection with that deposition further detailed the nuances of each source, their limitations, and their searchability and syntax requirements. YouTube has fielded Plaintiffs' myriad demands for information on noncustodial sources for months, resulting in at least eight separate letters laying out additional information and hours of meet and confer discussions (October 20, 2023; April 8, 2024; June 13, 2024; July 2, 2024; August 29, 2024;

---

[3] *Jensen v. BMW of North Am.*, LLC, 328 F.R.D. 557 (2019), is distinguishable as it did not involve an existing ESI Protocol requiring disclosure and here Plaintiffs have identified clear deficiencies.

September 30, 2024; October 25, 2024; November 6, 2024). That is in addition to the parties' weekly meet and confers at which noncustodial issues were routinely discussed.

Plaintiffs' description mischaracterizes the sequence of events. As YouTube has repeatedly reiterated, the complexity of the data stores and good faith efforts to collaborate with Plaintiffs mean that YouTube's investigation has been ongoing and iterative. YouTube provided the information Plaintiffs requested regarding YouTube's searches of each and every noncustodial source by the October 25, 2024 stipulated deadline. YouTube has continued to provide additional details to inform further meet and confer and search for reasonable compromise solutions given Plaintiffs' overbroad demands. YouTube should not be faulted for delay caused by Plaintiffs' failure to accept an appropriately tailored search methodology in the first instance. Indeed, the overbreadth of Plaintiffs discovery demands have illuminated technical limitations that were previously not understood, because these sources are not used in the ordinary course of business to retrieve and export exceptionally large volumes of information. For example, Plaintiffs' accusations of a reversal in position with respect to the ▮▮▮▮▮ system are unfounded. Plaintiffs sought such a large data set that export was technologically infeasible. YouTube flagged this risk and followed up to discuss alternatives. Plaintiffs refused to engage in that discussion, insisting on proceeding to briefing.

Plaintiffs persist in their effort to intrude on YouTube's discovery process and challenge the sufficiency of a production that has yet to occur. Plaintiffs are not entitled to do so. *See Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored."); *Rg Abrams Ins. v. Law Offs. of C.R. Abrams*, 2021 WL 10312431, at *12 (C.D. Cal. Dec. 22, 2021) ("A party should not be required to provide discovery about its e-discovery process without good cause."). And this effort is especially improper at this stage in the proceedings. The time has come to let discovery move forward.

**Plaintiffs Have No Basis to Challenge YouTube's Good Faith or Methodology**

Especially in light of this history, Plaintiffs have no grounds to doubt that YouTube will proceed in good faith to conduct a reasonable search and produce responsive information. YouTube has already agreed in principle to conduct appropriately tailored searches of the relevant repositories and to produce documents and data responsive to Plaintiffs' requests. YouTube's consistent cooperation throughout the discovery process demonstrates its commitment to fulfilling its obligations in good faith.

Plaintiffs' own examples demonstrate that YouTube's substantial custodial and non-custodial productions have yielded the information sought (*see, e.g.,* GOOG-3047MDL-02328073 and GOOG-3047MDL-00418469 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)). Further, YouTube has produced responsive documents from the contested source when Plaintiffs have identified with particularity what they are looking for, e.g., via hyperlink requests. These examples demonstrate that Plaintiffs' demands for additional detailed information and substantial non-custodial searches are unnecessary, and Plaintiffs have no basis for arguing that YouTube's productions have been (much less will be) deficient.

With respect to ▮▮▮▮▮ Plaintiffs seek broad discovery into potential user complaints of low marginal probative value given that YouTube has *already produced* documents analyzing and taking action on such feedback. In the spirit of compromise, YouTube has nevertheless agreed in principle to a search above and beyond the bellwether-specific searches previously performed. YouTube has repeatedly explained the technological limitations associated with performing a search and export of the scope contemplated by Plaintiffs in this redundant pursuit. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As an alternative, YouTube proposed searching a subset of the data contained within ▮▮▮▮▮ which is more readily susceptible to searches of the scope and complexity demanded by Plaintiffs. But that data must still be carefully reviewed for privilege and personal identifying information, which is necessarily

4

throughout the entire repository given that it contains communications with users. The relief Plaintiffs seek, with production in 14 days, is simply technologically infeasible.

YouTube is best positioned to locate relevant information within its own systems. Plaintiffs have no basis to challenge the sufficiency of any production that has not yet occurred, nor to demand additional information about the structure and organization of underlying sources in an attempt to preemptively second guess YouTube's searches before they have even taken place. For example, Plaintiffs demand that YouTube explain—before production and in agonizing detail—specific categories of information that YouTube would exclude from production on the basis that that data is irrelevant to this case and not responsive to any request for production. But YouTube's discovery obligations do not require that YouTube itemize everything that YouTube is *not* obligated to produce under the Federal Rules. Absent "indication that a party's discovery has been insufficient or deficient," *Jensen*, 328 F.R.D. at 566, "neither a requesting party nor the court should prescribe or detail the steps that a responding party must take," Sedona Principles, 3d. ed., 19 Sedona Conf. J. 1, Principle 6, 123; *accord id.* at 127 ("[P]arties should not be required to produce documentation of their discovery processes unless there has been a showing of a specific deficiency."); *see id.* at 131 (requesting party has burden of proving discovery processes "were inadequate").

**Plaintiffs' Demands Are Unduly Burdensome, Disproportionate, and Result in Excessive Delay**

Plaintiffs operate under the misconception that there exists a single expert at YouTube with authoritative knowledge of the functionality of each distinct data storage system and how to operationalize a search (and data export) appropriate for legal discovery tailored to Plaintiffs' claims, and that YouTube has been withholding those persons. On the contrary, each system is operated by a host of specialized engineers on various distinct teams and used by the business in ways that do not encompass a familiarity with litigation searches. Their time is valuable and nonexpendable, and attendance at attorney meet and confers diverts important resources away from core responsibilities. Jenna Stokes of Wilson Sonsini Goodrich & Rosati is YouTube's Discovery Liaison per Section 4 of the ESI protocol and has been present at every meet and confer on this issue.[4] In that role, she has conferred with the appropriate individuals at YouTube to investigate, gather, and consolidate the information presented to Plaintiffs.

Plaintiffs' demands also delay the discovery process unnecessarily. Plaintiffs continue to raise threshold issues that should have been resolved months ago. While YouTube has worked collaboratively with Plaintiffs to address their myriad threshold questions, it is now clear that this process will never transition to collection and production if Plaintiffs are permitted to continue prolonging burdensome threshold negotiations. Plaintiffs' demands should be denied.

---

[4] YouTube notes that Plaintiffs have not designated a Discovery Liaison.