UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING JOINT LETTER BRIEF REGARDING TIMELINE FOR PRODUCTION OF SNAP QUIPS**<br><br>Re: Dkt. 1539 |

This MDL has been referred to the undersigned for discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the Personal Injury/School District Plaintiffs ("Plaintiffs") and Snap regarding Snap's production of Quips records. [Dkt. 1539]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

With regard to the scope of discovery in federal civil actions, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally

recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

1  in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
2  discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  As part of its
3  inherent discretion and authority, the Court has broad discretion in determining relevancy for
4  discovery purposes.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)
5  (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  The Court's discretion extends to
6  crafting discovery orders that may expand, limit, or differ from the relief requested.  *See*
7  *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to
8  tailor discovery narrowly and to dictate the sequence of discovery").  For example, the Court may
9  limit the scope of any discovery method if it determines that "the discovery sought is unreasonably
10 cumulative or duplicative, or can be obtained from some other source that is more convenient, less
11 burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

## ANALYSIS

Quips is a collaborative productivity software tool used by Snap employees during product or product feature development, including privacy and legal review.  [Dkt. 1539 at 8].  Snap product managers use Quips to communicate and discuss changes to platform features.  *Id.* at 7.  Plaintiffs identified Quips as a non-custodial source of documents sought in discovery in Fall 2023.  *Id.*  In October 2024, the Parties finalized negotiations for a search approach for Quips records and data.  *Id.* at 8.  After applying search terms, apparently the search resulted in 157,000 Quips which Snap has been processing, reviewing for privilege, and preparing for production.  *Id.*  Snap avers that it has produced over half of the Quips records it expects to produce: Snap has produced a total of 36,000 Quips and expects to produce 33,000 more (with an estimated 8,500 Quips to be produced during the week of January 13, 2025).  *Id.*

The current dispute is focused on the timing and completion of Snap's production of Quips.  Plaintiffs argue that Snap missed the deadline for substantial completion of document production of November 5, 2024 with regard to the Quips records, because the first production of Quips occurred on January 3, 2025.  *Id.* at 7.  Plaintiffs argue that the belated production of large volumes of Quips is disruptive and impedes Plaintiffs' ability to schedule and take depositions of Snap employees (two of whose depositions were adjourned in December 2024).  *Id.*  Plaintiffs

seek an order setting a substantial completion deadline for production of Quips, as well as sanctions in the form of reimbursement for the costs associated with the additional personnel reviewing and processing Snap's production of Quips. *Id.*

Snap argues that it has devoted over one hundred reviewers to the review and production of Quips and states that it commits to produce participant Quips for each Snap deponent at least one week in advance of the deposition of each such witness (which it avers to have done with regard to a Snap witness deposed on January 10, 2025). *Id.* at 8. Snap argues that there has not been, and will not be, any prejudice flowing from the rate of its production of Quips. *Id.* Snap argues that discovery sanctions are unwarranted, pointing the finger at the School District Plaintiffs for alleged discovery deficiencies (which are not the subject of this joint letter brief). *Id.*

Plaintiffs request that the Court order Snap to substantially complete production of all responsive Quips on or before January 24, 2025, arguing that such completion is necessary to schedule, prepare for, and take depositions. *Id.* at 7. Snap argues that this deadline is not feasible and states that it committed to produce all Quips authored and/or edited by a deponent ("participant Quips") prior to all upcoming depositions, make rolling productions of Quips, and substantially complete production of Quips by February 15, 2025. *Id.* at 8.

Essentially, then, the dispute boils down to nothing more than timing. Plaintiffs want Snap to substantially complete production of Quips by January 24, 2025; Snap wants to substantially complete production of Quips by February 15, 2025. A mere *three weeks* separate the Parties' proposals.

The Court is disappointed that the Parties were incapable of resolving such a dispute through the meet and confer process. This is a particularly egregious failure by counsel given the Court's repeated admonitions to work out scheduling disputes where the differences are just a matter of several days, most recently in the Court's December 31, 2024 Order: "The Court is further disappointed that the Parties' competing proposals included a number of cases in which the competing proposed deadlines differed only by about one or two weeks—experienced counsel on both sides of this dispute know better. The Court is discontented that seasoned attorneys for Meta and the States were incapable of reaching agreement on dates where the difference between the

4

1  Parties was just a matter of days." [Dkt. 1495 at 5].  In light of this Court's prior guidance to
2  counsel in this MDL, the Court here is even more discontented that seasoned attorneys for the
3  Plaintiffs and Snap were incapable of reaching agreement on this substantial completion deadline
4  where the dispute between the Parties was a difference of three weeks.  The Parties' inability to
5  resolve this dispute themselves raises serious doubt as to both sides' lead counsel and their joint
6  certification that they meaningfully participated in the meet and confer for this dispute.  Smart,
7  experienced lawyers should know better than to spend the time and resources required for the
8  instant joint letter brief, rather than work out a deal to compromise on a three-week difference of
9  opinion on a deadline.  Plainly, the process failed here.

## CONCLUSION

As discussed above, under applicable legal standards, the Court has broad discretion to manage discovery, including scheduling and timing issues.  In the full exercise of the Court's discretion, and because the Parties were incapable of sorting this out for themselves, the Court accordingly **ORDERS** as follows:

1. Snap shall substantially complete production of all responsive, non-privileged Quips records by no later than **February 3, 2025**.

2. Plaintiffs' request for sanctions in the form of "reimbursement" for the costs associated with review of Snap's production of Quips is **DENIED WITH PREJUDICE**.  First, Plaintiffs' motion for discovery sanctions does not comply with Civil Local Rules 7-8 and 37-4, and thus, is procedurally defective.  Second, Plaintiffs' request for sanctions assumes myopically that Plaintiffs' position on the merits of this dispute was so correct that a one-line request for sanctions (without citation to case law) added at the end of its portion of the brief was appropriate.  If anything, that request further eroded Plaintiffs' counsel's credibility.  Further, Snap counsel's retort on this issue, which consisted of finger-pointing in return and complaints about other alleged discovery deficiencies by the School District Plaintiffs, further eroded that counsel's credibility.  This improvident request for sanctions and the opposition thereto were an additional waste of Party resources and the Court's resources.  Such time is better spent on completing discovery.

5

3. Because of the failure of the meet and confer process here, the Court further **ORDERS** all of the lead counsel for the Parties who were involved in the meet and confers leading to the filing of this joint letter brief as follows: (a) each such lead counsel who participated in the meet and confers here **SHALL** personally deliver a copy of this Order to their respective clients by email by January 17, 2025 (in the case of the Personal Injury Plaintiffs, delivery shall be made to the Bellwether Personal Injury Plaintiffs), and (b) by January 21, 2025, each such lead counsel **SHALL** file a declaration under oath explaining (i) how long the meet and confers leading to this letter brief lasted; (ii) what percentage of time during the meet and confers leading to this joint letter brief they spoke for their side (as compared to the percentage of time spent by other attorneys on their side); (iii) whether they spoke directly to opposing lead counsel during the meet and confers and, if so, for what length of time; (iv) what compromise proposals they personally made on the deadline for substantial completion; (v) whether, at the time this Court's Standing Order for Discovery became applicable to this case, they read the Northern District of California's Guideline for Professional Conduct No. 3 ("Scheduling") as required by Section A of this Court's Standing Order for Discovery; and (vi) confirming whether they have delivered a copy of this Order to their clients per (a) above.

4. The Court has previously warned counsel for all Parties in this MDL regarding potential consequences for demonstrated failures to reasonably and professionally negotiate disputes that able counsel should be able to resolve without the need for judicial intervention. The Court will consider imposing additional meet and confer procedures for future discovery disputes, including but not limited to requiring any counsel directly involved in any of the meet and confers to meet and confer in person; requiring in-person meet and confers by lead trial counsel with no other attorneys present regardless of lead counsels' geographic proximity; requiring meet and confers to take place in-person at the San Francisco courthouse or other location; requiring in-house counsel, a Party, or Party representatives (including officers and/or directors) to attend all meet and confers; and/or any other procedures the Court deems appropriate in the circumstances.

This **RESOLVES** Dkt. 1539.

**IT IS SO ORDERED.**

Dated: January 16, 2025

_____
PETER H. KANG
United States Magistrate Judge