# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK) <br><br> **ORDER RESOLVING DISPUTE REGARDING PRIVILEGE DETERMINATION IN CONNECTION WITH DEPOSITION OF MIKI ROTHSCHILD** <br><br> Re: Dkt. 1375 |

This MDL has been referred to the undersigned for discovery purposes.  *See* Dkt. 426.  Now pending before the Court is a joint letter brief regarding a dispute between Plaintiffs and Meta as to whether Meta has properly redacted three documents produced in this litigation on the grounds that the redacted material is subject to the attorney-client privilege.  [Dkt. 1375].  The Parties presented preliminary oral argument on this dispute at the Discovery Management Conference ("DMC") held on November 21, 2024, shortly after which the Parties filed the instant joint letter brief.  *See* Dkt. 1380 at 7.  The deposition which precipitated this dispute has been rescheduled by the Parties for January 21-22, 2025.  [Dkt. 1404].  Because of the asserted importance of the three documents at issue for that deposition and the relative shortness of time, the Court finds the dispute suitable for resolution without further oral argument.  *See* Civil L.R. 7-1(b).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information

1  need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly
2  defined to encompass "any matter that bears on, or that reasonably could lead to other matter that
3  could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535,
4  539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978));
5  *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-2843 VC (JSC),
6  2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy
7  for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

8  While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*
9  *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes
10 of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").
11 Information, even if relevant, must be "proportional to the needs of the case" to fall within the
12 scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1)
13 emphasize the need to impose reasonable limits on discovery through increased reliance on the
14 commonsense concept of proportionality: "The objective is to guard against redundant or
15 disproportionate discovery by giving the court authority to reduce the amount of discovery that
16 may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality
17 requirement] is intended to encourage judges to be more aggressive in identifying and
18 discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015
19 amendment. In evaluating the proportionality of a discovery request, a court should consider "the
20 importance of the issues at stake in the action, the amount in controversy, the parties' relative
21 access to the information, the parties' resources, the importance of the discovery in resolving the
22 issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."
23 Fed. R. Civ. P. 26(b)(1).

24 The party seeking discovery bears the burden of establishing that its request satisfies the
25 relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,
26 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the
27 discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons
28 why the request at issue is objectionable and may not rely on boilerplate, conclusory, or

2

speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). The privilege attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

Attorney-client privilege is "narrowly and strictly construed," and the party asserting it has the burden of proving that the privilege applies. *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citations omitted). The privilege protects only communications and not underlying

3

facts. *Upjohn v. United States*, 449 U.S. 383, 396 (1981) (holding that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney").

"When dual-purpose communications are involved, there are two potential tests that courts have adopted: the 'primary purpose' test and the 'because of' test." *Grand Jury*, 23 F.4th at 1091. The "primary purpose" test requires the Court to evaluate "whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *Id.* (citing *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). The "because of" test, by contrast, "considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 1091-92 (quoting *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 908 (9th Cir. 2004)).

## ANALYSIS

The instant dispute concerns three documents which were originally produced by Meta in discovery without redactions and then more recently clawed back due to attorney-client privilege issues, pursuant to the Clawback Order entered in this action. *See* Dkt. 248. Meta then reproduced these three documents with redactions on certain pages, on the grounds that the redacted material is protected from discovery based on the attorney-client privilege. [Dkt. 1375 at 10]. Meta's filings in support of the motion to seal this joint letter brief provided copies of the redacted versions of the documents. [Dkt. 1376-5 (Exhibit A); Dkt. 1376-7 (Exhibit B); Dkt. 1376-9 (Exhibit C)]. At the November 21st DMC at which this issue was discussed, counsel for Plaintiffs asked for *in camera* review of the three documents in unredacted format. In connection with filing the joint letter brief, Meta lodged unredacted copies of the three documents (designated as Exhibits A, B, and C) with the Court's chambers to avoid waiver of privilege by filing or serving them. [Dkt. 1375 at 1]. The three documents at issue start with Bates numbers as follows:

4

| Original Bates Number | Beginning Bates Number of Reproduction with Redactions | Exhibit |
|---|---|---|
| META3047MDL-035-00002871 | META3047MDL-085-00000104 | Meta Ex. A / Pls. Ex. A |
| META3047MDL-035-00004050 | META3047MDL-085-00000271 | Meta Ex. B |
| META3047MDL-073-00001477 | META3047MDL-085-00000211 | Meta Ex. C / Pl. Ex. B |

*Id.*

The Court will refer to these documents as Exhibits A, B, and C, respectively, where appropriate herein. Because the three unredacted versions of Exhibits A, B, and C which Meta lodged with chambers did not bear any Bates numbers, the Court instructed counsel for Meta to lodge Bates-labeled versions of the unredacted documents for ease of the Court's review and comparison of the redacted versions as compared to the unredacted versions. On November 26, 2024, counsel for Meta lodged (via email to the Court's staff) unredacted versions of the three documents at issue bearing Bates numbers corresponding to the produced, redacted versions. Because the three Meta documents at issue are designated as Highly Confidential under the Protective Order, this Order is filed under seal.

Exhibit A is a forty-nine-page color slide deck, titled "Youth Update (A/M review)," and dated April 2022. Exhibit B is a forty-nine-page black and white slide deck, titled "Youth X-Meta Planning: Phase II kickoff with APP POCs," and dated April 2022. Exhibit C is a sixty-page black and white slide deck, titled "x-Meta Youth Strategy," and dated May 2022. All three documents bear the label "A/C Priv" on the title page. At the November 21st DMC, counsel for Plaintiffs argued and Meta agreed that simply putting "Attorney Client Privilege" on a document does not determine whether a document is privileged. [Dkt. 1397 at 134:7-14]. Similarly, in the briefing, Meta stated unequivocally that it "does not contend the slide decks are privileged because they are marked 'A/C priv' . . . or because an attorney was copied." [Dkt. 1375 at 10].

In support of the assertion of privilege as to the redacted portions of these documents, Meta relies on the declaration of Rachany Son, in-house counsel for Meta, and Julian Lamm,

outside counsel for Meta. [Dkts. 1376-2 and 1376-3].

Meta does not contend that lawyers drafted the entirety of the three documents at issue (which is why only portions of each are redacted). Meta relies on the declarations submitted by Ms. Son and Mr. Lamm to establish that all of the redacted portions are subject to the privilege, because they either constitute, or "reflect" or "integrate," privileged communications from Meta's in-house and/or outside counsel to Meta executives. Meta does not argue that the redactions constitute communications from Meta personnel (as client) to any attorneys. The Court finds that these documents are mixed-use documents. Because these are mixed-use documents, it should come as no surprise, especially upon *in camera* review, that the redacted portions are a mixture of privileged and nonprivileged materials as detailed below.

Meta's in-house counsel, Ms. Son, states that she personally drafted portions of these slide decks but does not specify which pages or portions. [Dkt. 1376-3 at 2-3 ¶ 6]. Meta's in-house counsel states that the slides "reflect and extensively integrate the legal advice provided by Meta's outside counsel" and asserts that all of the redactions "reflect" that same legal advice. *Id.* at 3 ¶ 9. She states that consideration of legal and regulatory risks was "a core component of the presentations." *Id.* at 3 ¶ 8.

Meta's outside counsel, Mr. Lamm, states that he and his law firm were retained to provide certain legal advice on regulatory issues to Meta in the time frame of these three documents. [Dkt. 1376-2 at 2 ¶ 4]. From the declarations, it is clear that this work for Meta was a larger engagement which went beyond reviewing the three documents at issue here—it involved other privileged communications which are not part of the present dispute. Meta's outside counsel states that he recalls "drafting contents" of these slides but does not identify the pages or portions. *Id.* at 2-3 ¶ 6. Mr. Lamm states that he recalls reviewing and commenting on these slides but does not identify which pages or portions. *Id.* He states that he "recognize[s] conclusions and descriptions" his law firm had provided Meta regarding existing and proposed regulations in foreign and domestic jurisdictions, but again does not identify which pages or portions of the slides contains this material which he "recognizes." *Id.* at 3 ¶ 8. Mr. Lamm states that he "recognize[s], within the redacted portions of the presentations," unspecified "charts and tables

6

1    that are similar" to charts and tables his law firm was asked by Meta's in-house counsel to create,
2    but again does not identify which pages of the slides contain these charts and tables. *Id.* at 3 ¶ 9.

3        The declarations do not establish that lawyers drafted the entirety of the redacted portions
4    of the three documents at issue.  The Court notes that Meta's in-house counsel does not state that
5    she (or any other in-house lawyer) drafted the entirety of the redacted materials.  Meta's in-house
6    counsel nowhere states that the redacted materials contain her or any identified in-house lawyer's
7    legal advice to Meta—the only specific legal advice attested to by Meta's in-house counsel is the
8    legal advice from outside counsel to Meta.  And the only portions of the redacted materials
9    identified by Meta's outside counsel which "reflect" his law firm's legal advice to Meta are the
10   unspecified "charts and tables" in the slides.  Meta's outside counsel does not state that he
11   recognizes *all* of the charts and tables in the redacted portions; he does not state that he drafted,
12   edited, or reviewed *all* of the charts and tables in the redacted portions; and he does not state that
13   *all* of the redacted charts and tables contain his law firm's legal advice.  As is common with slide
14   decks, many of the pages contain charts and tables, and Meta provides insufficient information to
15   explain which ones are similar to those authored by outside counsel.  Meta likewise provides
16   insufficient explanation of the ways in which the charts and tables are similar or the degree of such
17   similarity.  Meta has thus not met its burden of proving that each and every redacted portion of the
18   slides are protected by the attorney-client privilege.

19       Moreover, as discussed below, the redacted portions of the slides contain text describing
20   factual matters.  Meta's outside counsel states that, as part of his law firm's analyses, his lawyers
21   "reviewed certain aspects of Meta's services" and "reviewed public-facing disclosures and then-
22   existing product functionalities offered by other companies and services." *Id.* at 2 ¶ 4.  Similarly,
23   Meta's in-house counsel states that she worked with a small team of other Meta employees on
24   these slides, but she does not identify these individuals or indicate which (if any) are lawyers.
25   [Dkt. 1376-3 at 2-3 ¶ 6].  Meta's in-house counsel further states that the team working on the
26   slides "drew upon" the expertise of an unspecific number of other non-lawyer Meta personnel,
27   including Miki Rothschild, the non-lawyer witness whose deposition precipitated the instant
28   dispute. *Id.* at 3 ¶ 7.  Meta's in-house counsel states that the slides were prepared with input from

other departments within Meta but she makes clear that the legal department led the effort. *Id.* at 3 ¶ 8.

To the extent the redacted portions contain discussion of factual matters, the assertion of privilege is not supported. "A company cannot shield from discovery facts learned by an attorney in the course of an investigation because the attorney-client privilege protects communications, not facts." *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798-HSG(DMR), 2016 WL 913377, at *2 (N.D. Cal. Mar. 10, 2016); *see also Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2022 WL 767088, at *2 (N.D. Cal. Mar. 11, 2022) (applying California privilege law and finding that "factual information . . . is not privileged"). As noted, Meta's outside counsel reviewed and provided descriptions of factual matters, and Meta's in-house counsel worked with non-lawyers regarding factual matters. While "communications *about* facts that relate to potential legal liability may constitute legal advice," the law recognizes that "the underlying facts are not privileged." *City of Roseville Emps. Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *14 (N.D. Cal. Aug. 3, 2022) (emphasis in original).

To the extent Meta relies on these declarations to support the assertion of privilege with respect to all of the redactions in all three documents, the declarations are insufficient to justify and support the assertion of privilege on a blanket basis across all redacted materials (comprising redactions spanning dozens of pages). As noted, the fact that counsel drafted some of the material does not mean that all of the redacted materials are privileged. Not every single thing a lawyer drafts is privileged. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 72 (1st Cir. 2011) ("Not every piece of an attorney's work product falls within the attorney-client privilege."). The fact that in-house and outside counsel "recognized" portions of the slides as being in some way similar to other unidentified attorney-client communications does not support the assertion that every redacted portion is privileged. And statements that the redacted portions "reflect" or "integrate" legal advice are vague and, in light of the Court's *in camera* review, insufficient to support the assertion of privilege as to the entirety of all of the redactions.

Finally, both of Meta's declarants opine from their "perspective" either that the primary purpose of the documents was to communicate legal advice within Meta or that the "conclusions

8

and descriptions" in the slides "appear to incorporate or otherwise reflect" legal advice from outside counsel. [Dkt. 1376-2 at 3 ¶ 8; Dkt. 1376-3 at 3 ¶ 11]. These are in essence legal opinions on ultimate legal conclusions. As such, they are not the proper subject of fact witness declarations. *See* Fed. R. Evid. 702. Further, as discussed below, the "perspectives" of these witnesses are overbroad and not sufficiently specific in that they purport to blanket all of the redactions with the attorney-client privilege. The Court's *in camera* review of the documents demonstrates that portions of the redacted materials are not privileged.

The Court has undertaken a lengthy and detailed *in camera* review of both the unredacted and redacted versions of all three documents, page by page, keeping in mind the pertinent legal standards discussed above. Based on the Court's review of these documents and the declarations submitted by Meta, the Court finds that certain portions of the redacted materials are privileged because they constitute or relay attorney-client communications regarding legal advice concerning regulatory compliance and legal risks.

However, the Court finds that certain portions of the redacted materials—regarding factual matters such as product features, planned feature ship dates, and other business information—set forth facts which themselves are not privileged. Meta relies on *United States ex rel. Schmuckley v. Rite Aid Corp.*, No. 2:12-cv-01699-KJM-JDP, 2023 WL 425841 (E.D. Cal. Jan. 26, 2023) for the proposition that facts alone can be privileged. *Schmuckley* is inapposite—there, the spreadsheets at issue were compiled by non-lawyers and sent to a lawyer specifically to assist that lawyer in providing legal advice (and thus, would constitute requests for legal advice sent from client to lawyer) and the spreadsheets were attachments to an email from counsel to the client regarding an internal investigation. *Id.* at *4. Here, the documents at issue are not communications from Meta to its lawyers created to assist the lawyers to provide legal advice—the source documents from Meta to its counsel which resulted in the three slide decks at issue here would be the analog to the documents in *Schmuckley*. The nonprivileged portions of the slides set forth facts without attribution as to source of the facts (whether from lawyers or non-lawyers), and thus, disclosure of those factual matters does not encompass any legal advice about those facts (and as discussed below, the Court's *in camera* review determined that certain redacted portions shall remain

9

redacted because they are covered by the attorney-client privilege). Unlike *Schmuckley*, the facts here are more analogous to the *Nathu* case in which discovery was sought and ordered (overruling a privilege objection) on facts and figures in a set of PowerPoint slides, and not the legal advice regarding those facts. *See Nathu v. City of Oakland*, No. 4:20-cv-05242-SBA (LB), 2022 WL 2716522, at *4 (N.D. Cal. July 13, 2022).

Because these are mixed-purpose documents, Meta produced portions of the documents unredacted and those unredacted materials are clearly not privileged. (Indeed, if the unredacted portions were privileged, Meta would have waived privilege as to those materials.) For example, Meta produced unredacted portions of pages stating that Meta performed a competitive analysis, yet redacted portions of other pages which stated that Meta performed a competitive analysis. *See, e.g.*, Dkt. 1376-9 at 46. Similarly, Meta produced unredacted portions of pages naming competitors and discussing them in comparisons across the industry, yet redacted portions of other pages listing these same competitors by name again. *See, e.g.*, Dkt. 1376-5 at 8. Meta also produced a page with unredacted lines of text setting forth business questions, yet redacted this exact same text where it appears on other pages in the slides. *See, e.g., id.* at 48. Accordingly, to the extent Meta's redacted portions claimed privilege as to text or information which was produced in unredacted form in other pages of these documents, the assertion of privilege as to those redactions is not sufficiently supported.

Contrary to Meta's argument that all of the redactions are privileged, the Court finds that portions of the redacted materials relate to business issues or other nonprivileged matters. Meta admits that non-lawyers were involved in drafting these documents. [Dkt. 1375 at 11]. And, as Plaintiffs argue, other documents show that the underlying purpose of the project for which these documents were produced was, at least in part, to "advanc[e] our external narrative." [Dkt. 1376-16 at 4]. Meta documents show that this "Youth State of the Union" project (which apparently led to the creation of these three slide decks) was led by Mr. Rothschild and Mr. ▮▮▮▮▮▮▮, neither of whom is an attorney, and that over two hundred software engineers worked on the project. [Dkt. 1376-20].

The fact that certain pages of the documents at issue remain wholly unredacted shows that,

10

consistent with the Court's careful review of the redacted portions, the documents contain both business and legal communications (sometimes on the same page). For example, Meta produced unredacted pages discussing Meta's work on a strategy for "comms and external engagement," which in context are directed to public-facing communications, yet redacted portions of other pages discussing these non-legal, business issues. *See, e.g.*, Dkt. 1376-7 at 7. Similarly, Meta produced unredacted pages discussing marketing and a strategy to build trust with teens and parents, yet redacted portions of other documents discussing product features/tools and specific outreach to parents. *See, e.g.*, Dkt. 1376-9 at 61. Further, while Meta produced unredacted pages discussing business issues such as staffing, certain portions redacted by Meta contain text clearly relating to these same or similar business issues, and thus, are not privileged on their face. *See, e.g.*, Dkt. 1376-5 at 5. And, as discussed above, Meta produced unredacted pages discussing competitors, competitive analyses, and industry positions, yet redacted portions of other pages discussing these same business issues (including portions of pages discussing facts about the features of products and services, anticipated ship dates for new features, and other product development facts).

The revised redactions of the three documents, which are appended to this Order, are the result of edits implemented by Meta pursuant to this Court's directions in preparation for issuing this Order. The revised redactions show where the Court has determined, based on an *in camera* review, on a page-by-page and line-by-line basis, whether and to what extent the assertion of privilege was not supported (in some places) and was supported (in other places) in the documents. Given the length of the three documents and number of redactions, the Court has not discussed every revision line by line in this Order. The revisions now show those identified portions of the three documents which were originally redacted by Meta during discovery but which the Court now **ORDERS** to be unredacted because Meta has not met its burden to show that these portions are privileged consistent with the analysis and discussion herein.

Similarly, where the attachments to this Order contain material which was originally redacted by Meta during discovery and where those portions are *not* further revised, those redactions are to remain unchanged because the Court finds that the assertion of privilege as to

11

those portions has been sufficiently supported pursuant to the legal standards and analysis discussed herein.

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to compel production of fully unredacted versions of the three Meta documents (and the corresponding motion to confirm that the entirety of the redactions are proper due to the attorney-client privilege). The Court **FINDS** that these are mixed-use documents; that portions of the redacted materials have been sufficiently shown to be subject to the attorney-client privilege, and that other portions of the redacted materials have not been sufficiently shown to be subject to the attorney-client privilege.

To avoid waiver of privilege, the Court has endeavored to draft this Order in such a manner as to avoid quoting text from or otherwise revealing the substance of text from the three documents which the Court finds is subject to the attorney-client privilege. To the extent any such material is referenced herein, the Court has summarized it in a way which would be found, for example, in a privilege log. Therefore, there shall be no argument regarding waiver of privilege with regard to discussion of any of the redacted material herein.

As noted, the three Meta documents were designated as Highly Confidential under the Protective Order. Accordingly, the Clerk of Court is **DIRECTED** to file this Order **UNDER SEAL**. Within fifteen (15) business days of the date of this Order, counsel for Meta and Plaintiffs are **ORDERED** to meet and confer to identify and reach agreement on those portions of this Order which should remain sealed pursuant to the Protective Order and which portions of this Order can be unredacted. Within five (5) business days of that meet and confer, the Parties **SHALL** file a Joint Stipulation and proposed Order for filing a public version of this Order, including an agreed-upon proposed redacted version of this Order for filing on the public docket.

This **RESOLVES** Dkt. 1375.

12

1  **IT IS SO ORDERED.**

2  Dated: December 20, 2024

4  PETER H. KANG
United States Magistrate Judge