UNITED STATES DISTRICT COURT

*ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| IN RE: SOCIAL MEDIA | ) | **Further Case Management** |
| ADOLESCENT ADDICTION/ | ) | **Conference** |
| PERSONAL INJURY PRODUCTS | ) | |
| LIABILITY LITIGATION | ) | NO. C 22-03047 YGR |
| | ) | |
| | ) | |
| ALL ACTIONS | ) | Pages 1 - 30 |
| | ) | |
| _____ | ) | Oakland, California |
| | | Friday, January 17, 2025 |

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

APPEARANCES:

For Plaintiffs:            Lieff, Cabraser, Heimann &
                              Bernstein
                           275 Battery Street, 30th Floor
                           San Francisco, California  94111
                  BY:   LEXI J. HAZAM, ATTORNEY AT LAW

                           Andrus Anderson LLP
                           155 Montgomery Street, Suite 900
                           San Francisco, California  94104
                  BY:   JENNIE LEE ANDERSON, ATTORNEY AT LAW

                  (Appearances continued next page)

Reported By:          Raynee H. Mercado, CSR No. 8258

     Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

```
 1                    A P P E A R A N C E S  (CONT'D.)

 2

 3    For Plaintiffs:          Motley Rice LLC
                               401 9th Street NW Suite 630
 4                             Washington, DC  20004
                          BY:  PREVIN WARREN, ATTORNEY AT LAW
 5
                               Motley Rice LLC
 6                             28 Bridgeside Boulevard
                               Mt. Pleasant, South Carolina  29464
 7                        BY:  ANNIE E. KOUBA, ATTORNEY AT LAW

 8

 9                             Levin Sedran & Berman LLP
                               510 Walnut Street, Suite 500
10                             Philadelphia, Pennsyvlania  19106
                          BY:  MICHAEL M. WEINKOWITZ, ATTORNEY AT LAW
11
                               Kessler Topaz Meltzer Check LLP
12                             280 King of Prussia Road
                               Radnor, Pennsylvania  19087
13                        BY:  MELISSA L. YEATES, ATTORNEY AT LAW

14    For Plaintiff Abraham:   Boies Schiller Flexner LLP
                               44 Montgomery Street, 41st Floor
15                             San Francisco, California  94104
                          BY:  NICHOLAS A. SANTOS,
16                             JOSHUA STEIN, ATTORNEYS AT LAW

17

18    For Plaintiff State      California Department of Justice
      of California:           1515 Clay Street, 20th Floor
                               Oakland, California  94612-0550
19                        BY:  MEGAN O'NEILL,
                               JOSHUA E. OLSZEWSKI-JUBELIRER,
20                             BRENDAN RUDDY,
                                 DEPUTY ATTORNEYS GENERAL
21

22    For Plaintiff State of   Colorado Department of Law
      Colorado:                1300 Broadway, 6th Floor
23                             Denver, Colorado  80203
                          BY:  KRISTA BATCHELDER,
24                               DEPUTY SOLICITOR GENERAL

25
```

```
 1                  A P P E A R A N C E S (CONT'D.)

 2


 3   For State of New York:   New York State Office of the Attorney
                              General
 4                           28 Liberty Street, 23rd Floor
                             New York, New York  10005
 5                      BY:  KEVIN C. WALLACE, ATTORNEY AT LAW

 6   For Plaintiff            Office of the Kentucky Attorney
     Commonwealth of           General
 7   Kentucky:                1024 Capital Center Drive, Suite 200
                              Frankfort, Kentucky  40601
 8                      BY:  PHILIP R. HELERINGER,
                              ASSISTANT ATTORNEY GENERAL
 9
     For New Jersey           New Jersey Office of the Attorney
10   Plaintiffs:               General, Division of Law
                              124 Halsey Street, 5th Floor
11                            Newark, New Jersey  07101
                        BY:  VERNA J. PRADAXAY,
12                            DEPUTY ATTORNEY GENERAL

13   For Plaintiff State of   Office of the Arizona Attorney General
     Arizona:                 Consumer Protection and Advocacy
14                             Section
                              2005 N. Central Avenue
15                            Phoenix, Arizona 85004
                        BY:  NATHAN WHELIHAN,
16                            ASSISTANT ATTORNEY GENERAL

17   For the Meta             Covington & Burling LLP
     Defendants:              One City Center
18                            850 Tenth Street, NW
                              Washington, DC  20001-4956
19                      BY:  PAUL W. SCHMIDT,
                              ASHLEY M. SIMONSEN, ATTORNEYS AT LAW
20

21   For Defendant Snap       Munger, Tolles & Olson
     Inc.:                    560 Mission Street, 27th Floor
22                            San Francisco, California  94105
                        BY:  JONATHAN H. BLAVIN, ATTORNEY AT LAW
23

24

25
```

```
 1                 A P P E A R A N C E S (CONT'D.)

 2

 3   For Defendant TikTok    King & Spalding LLP
     Inc.; ByteDance, Inc.:  1180 Peachtree Street, N.E.
 4                           Suite 1600
                             Atlanta, Georgia  30309-3521
 5                      BY:  GEOFFREY M. DRAKE, ATTORNEY AT LAW

 6                           O'Melveny & Myers LLP
                             400 South Hope Street, Suite 1900
 7                           Los Angeles, California  90071
                        BY:  LAUREN KAPLAN, ATTORNEY AT LAW
 8

 9   For Defendant Alphabet  Wilson, Sonsini, Goodrich & Rosati
     Inc.; Google, LLC;      One Market Plaza
10                           Spear Tower, Suite 3300
     YouTube, Inc.:          San Francisco, California  94105-1126
11                      BY:  JENNA K. STOKES, ATTORNEY AT LAW

12   For Defendant Alphabet  Williams & Connolly LLP
     Inc.; Google, LLC;      680 Main Avenue, SW
13   YouTube, Inc.:          Washington, DC  20024
                        BY:  JOSEPH G. PETROSINELLI,
14                             ATTORNEY AT LAW

15

16   ALSO PRESENT:           Brocksted Mandalas Federico
                             2850 Quarry Lake Drive, Suite 220
17                           Baltimore, Maryland  21209
                        BY:  MATTHEW P. LEGG, ATTORNEY AT LAW
18

19                           Hendy Johnson Vaughn
                             2380 Grandview Drive
20                           Fort Mitchell, Kentucky  41017
                        BY:  SARAH EMERY, ATTORNEY AT LAW
21

22

23                           --O0O--

24

25
```

```
 1    Friday, January 17, 2025                          9:00 a.m.
 2                          P R O C E E D I N G S
 3                               --o0o--
 4
 5         THE CLERK:  Your Honor, we're calling MDL 22-03047 In
 6    Re: Social Media Adolescent Addiction, slash, Personal Jury
 7    Products Liability litigation.
 8       Please step forward and state your appearances for the
 9    record, please.
10         THE COURT:  Okay.  Nikki, I didn't hear that last
11    part, but what we do is we just docket --
12         THE CLERK:  Okay.
13         THE COURT:  -- the list so that we don't spend any
14    time --
15         THE CLERK:  Perfect.
16         THE COURT:  -- having everybody make individual
17    appearances.
18       As you come to the mic, if you'll please remember to
19    restate your name for the record.
20       Okay.  We had a debate in chambers about whether it's
21    still okay to say "Happy New Year."  I'm going to say "Happy
22    New Year."  I usually do -- like, for me, cut off is MLK Day.
23                          (Laughter.)
24         THE COURT:  So Happy New Year.
25       Appreciate your indulgent last month in terms of moving
```

1     that CMC.  I reviewed your case management order.  And it

2     seems as if things will go relatively quickly today.  But

3     let's just get started from the top.

4         So I have and I did receive an email from Judge Kuhl,

5     who's doing an incredible job, especially given the fires down

6     there, who still had carved out time to send me an update

7     about what was going in LA.

8         I know at least, Ms. Simonsen, you're from LA.  There are

9     others of you I think from LA, so our prayers and thoughts go

10    out to all of you and all your neighbors and everyone.

11        I've got family down there myself, so it's a really

12    difficult situation.

13        We've reached out to the chief ourselves here in the

14    Northern District and are ready to stand by and help to any --

15    to the extent that we can.

16        So it takes -- takes all of us to get through these

17    tragedies.

18        In any event, so the first part of your statement related

19    to what was going on in the JCCP.

20        Does anybody else want to add anything?  Is there anything

21    else I need to know?

22        I -- I understand she's got her schedule with respect to

23    the state equivalent of *Daubert*s on general causation.

24        Again, we're just coordinating.  I don't think that

25    there's anything that impacts this schedule, but happy to hear

```
 1    if there's more that you want to say.
 2                      (No response.)
 3          MS. SIMONSEN:  Good morning, Your Honor.  Ashley
 4    Simonsen, Covington & Burling, for the Meta defendants.
 5       I don't think there's much to add.  Judge Kuhl did confirm
 6    when we were at the JCCP CMC on Wednesday that the first-phase
 7    experts to be disclosed on April 18th will be focused on the
 8    question of general scientific medical causation.
 9          THE COURT:  Right.  And it's not all causation.  It's
10    just that kind of one slice that we're all kind of focused on,
11    is my understanding.
12          MS. SIMONSEN:  That is my understanding as well.
13          MS. HAZAM:  Your Honor, it is plaintiffs'
14    understanding that the reports or the disclosures due in April
15    which are simultaneous are for general causation and not all
16    general liability questions, if that makes sense.
17          THE COURT:  Yes.  That's what I understood.
18       And in terms of impact on this schedule, again, I don't
19    see that there is anything -- an impact, but it's more
20    informative than anything else.
21          MS. HAZAM:  Nothing for plaintiffs, Your Honor.
22          MS. SIMONSEN:  Agreed, Your Honor.
23          THE COURT:  Okay.
24       All right.  So then the next issue on the agenda related
25    to the administrative motion to relate the coverage cases.
```

1    When I -- when I read the motion and the objection, the reason

2    that I issued the text order that I did was because I just

3    wanted you all to talk to each other.

4        It wasn't clear that there was -- that people were talking

5    to each other.  I now have now a slew of -- of filings on the

6    docket, which is, again, the reason why I sent another text

7    message or text entry to everyone that I don't usually have

8    argument on these motions.

9        We decide these motions all the time as a matter of

10   course.  And so that everybody is aware and so that I am

11   transparent, my issue is always is this more efficient for the

12   court generally or not?  Is it related or not?  Are there --

13   is there overlap or not?

14       Those are the questions that I'm always asking.  So I will

15   look at it and I will decide and you will hear back from me.

16           **MS. SIMONSEN:**  Thank you, Your Honor.

17           **THE COURT:**  Okay.  Thank you.

18   Next, you gave me an update on the intercircuit assignment

19   issues regarding the cases that were actually -- that were

20   direct filed and not actually filed in the -- in the original

21   districts.

22       So when is that going to happen so that I can let the

23   administrator know and we can work on trying to -- to get the

24   intercircuit assignment process moving again?

25           **MS. HAZAM:**  Your Honor, that process is being handled

1    by plaintiffs' counsel in those particular cases who I

2    understand has been conferring with defense counsel about the

3    appropriate stipulation.  I don't have a specific date for you

4    presently, but I believe it would be as soon as possible.

5        I don't know if defense counsel has any further

6    information.

7            **MR. DRAKE:**  Geoffrey Drake, King & Spalding, for the

8    TikTok defendants.  Good morning, Your Honor.

9            **THE COURT:**  Good morning.

10           **MR. DRAKE:**  I don't have any more specific update,

11   but I agree with Ms. Hazam and we should -- why don't we

12   aspire to get that stipulation taken care of next week and

13   then we can get the filings done and the rest of the

14   administrative process in movement.

15           **THE COURT:**  Okay.  If somebody could just -- maybe,

16   Ms. Simonsen, if you could send a chamber's email copy --

17   Ms. Anderson -- just so that we know it's there.  And then we

18   can take some additional steps.

19       We get so many emails, so many filings, that I would like

20   someone to just pull it out and let us know so that we can get

21   to and track down what we need to track down.  And then we can

22   get the process moving again.

23           **MS. SIMONSEN:**  Will do, Your Honor.

24           **MR. DRAKE:**  Sounds good.

25           **THE COURT:**  Okay.  Great.  Thank you.

```
1          There was a request in the statement to narrow the

2    bellwether discovery pools.  I then saw that that request was

3    withdrawn.  Is that correct?  And if so, sounds like there's

4    nothing to discuss.

5          MS. HAZAM:  Lexi Hazam for plaintiffs.

6          Yes, that's correct, Your Honor.  That request was

7    withdrawn, and I -- I do not believe that there is anything

8    more to discuss at the present time.

9          THE COURT:  Okay.  Anything from the defense?

10         MR. DRAKE:  We concur with that, Your Honor.

11         THE COURT:  Okay.  Great.  See how fast we're moving?

12                    (Laughter.)

13         THE COURT:  Okay.  I then got the update regarding

14   discovery with the AGs.  You should know that I know that I've

15   not ruled on that motion.  And it's on the list to be ruled

16   on.  I mean, I -- I don't know what else to tell you.  There's

17   lots of people who are waiting for me to do some things, and

18   we are getting through it all as fast as we can.  Okay?

19         Is there anybody who wants to say anything more on that

20   issue?  I'm assuming you had -- from all of the filings, you

21   had a lot of discussion about that with Judge Kang yesterday.

22         MR. SCHMIDT:  Yes, we did, Your Honor.

23         I'm sorry.  Paul Schmidt for Meta defendants.  Apologize.

24         I'm pleased to report we've largely resolved the document

25   discovery issues.  We think Judge Kang gave guidance that also
```

1    resolves the 30(b)(6) issues.  But we'll see how that plays

2    out in the depositions.

3        In terms of the docket issues, yesterday at the start of

4    the day, we had agreements with every state in whole or in

5    part with the exception of three agencies.  That's the "in

6    part."

7        And I think we resolved one of those, and the other two

8    are before Judge Kang, so it's a very, very narrow dispute.

9        And that resolution includes -- relevant to some of the

10   statements Your Honor has made in an order that Your Honor

11   issued that includes California and the California agencies

12   that were noncompliant, and it includes South Carolina and the

13   South Carolina agencies that were noncompliant.

14       Your Honor had asked us to submit some requested relief as

15   to those agencies.

16       We are -- biggest interest, of course, is getting

17   documents, being able to progress the case.  So Your Honor's

18   order I think was really, really quite helpful in terms of us

19   reaching that agreement, and we're happy to have reached that

20   agreement.

21            THE COURT:  Yeah.  In terms of -- I'm sorry.  Go

22   ahead.

23            MS. BATCHELDER:  Krista Batchelder with the state

24   attorneys general.

25            THE COURT:  Let me -- let me -- with the Colorado --

```
 1                MS. BATCHELDER:  Colorado, correct.

 2                THE COURT:  We have lots of different states, so --

 3                MS. BATCHELDER:  Sorry.

 4                THE COURT:  That's okay.

 5                MS. BATCHELDER:  So Counsel's correct that we have --

 6     that the state AGs have managed to cobble together an ability

 7     to comply with the Court's September order with regards to

 8     document discovery.

 9         However, the -- Magistrate Kang did rely on the issue of

10     control in the September order in order to pull that into our

11     issues with the 30(b)(6) depositions and we feel actually

12     pushed that order further.  And so this issue is still very

13     much ripe, very much an issue for the coalition.

14         Since the September order just related to the document

15     piece, six states have left the coalition, and while I'm not

16     authorized to speak on behalf of the four states that -- that

17     have dismissed outright, prior to that order, we were a

18     unified coalition working towards litigating this case.

19     Following the order, they dismissed.

20         And so it is very much a ripe issue and one that is of

21     importance to not just the members of this coalition who are

22     litigating the case but also the state agencies who have been

23     pulled in as outside parties because they are aware that we

24     have appealed and that this order is outstanding.

25                MR. SCHMIDT:  May I say two things on that, Your
```

1    Honor?

2         **THE COURT:**  You may.

3         **MR. SCHMIDT:**  As to the 30(b)(6) ruling, I don't know

4    that that's before Your Honor.  But I also don't think it's

5    accurate the way it was characterized.

6         What I heard Judge Kang say on the 30(b)(6) issues is the

7    states are the parties.  They need to put up witnesses who can

8    testify about their knowledge, which is a pretty unremarkable

9    proposition.

10        In the course of arguing that, several of the AGs, as they

11   have repeatedly done, reasserted arguments that he had

12   rejected, and he rejected them again.

13        But I don't know that the 30(b)(6) ruling is -- is quite

14   as Counsel described it.

15        As to the six states that have -- have left, that is

16   accurate.  I think the number is four have left, and two are

17   in the process of leaving.

18        From our perspective, it's pretty notable that when

19   parties bring claims and are subject to the normal obligations

20   of discovery and they immediately abandon those claims, that

21   says something about those claims.

22        That, to us, is the only relevance of -- of them leaving.

23        **THE COURT:**  Okay.

24        Like I said, I understand it's still an issue.

25        **MS. BATCHELDER:**  Yeah.

```
 1            And if I may, Your Honor, I would point out that finding

 2      that the states are the parties is -- is exactly what

 3      Magistrate Kang did not ultimately rule on in the original

 4      September 6th order.  It was primarily with regards to control

 5      of the documents.  And I believe it was explicitly stated that

 6      he was not taking it so far as to find that these states, as a

 7      whole, are the party.

 8            But following yesterday's hearing, he made it very clear

 9      on the record that he is finding that the states are the

10      parties.  And that is where the -- the crux of this issue

11      lies.

12            MR. SCHMIDT:  That's how they pled their complaint,

13      Your Honor, in the name of the State of California, in the

14      name of the State of Colorado.

15            THE COURT:  Okay.

16            MR. OLSZEWSKI-JUBELIRER:  Excuse me, Your Honor.

17            THE COURT:  Your name, please?

18            MR. OLSZEWSKI-JUBELIRER:  Josh Olszewski-Jubelirer

19      for the People of the State of California.

20            Just to correct the record, the complaint with respect to

21      the California Attorney General's Office is pled on behalf of

22      the People of the State of California, not the state of

23      California.  This is a law enforcement action brought by the

24      Attorney General.  Excuse me.

25            On behalf of the people, not on behalf of the state or any
```

```
 1    agencies.
 2            MR. SCHMIDT:  From our perspective, the state is the
 3    people, and that's consistent with how they've pled their
 4    claims.
 5            THE COURT:  Okay.
 6            MR. SCHMIDT:  Thank you, Your Honor.
 7            MR. OLSZEWSKI-JUBELIRER:  Thank you.
 8            THE COURT:  So one further issue on that, there is a
 9    request to place the AGs on a separate trial track.
10        And with respect to that request, I can't -- I guess -- I
11    can't make an informed decision until I know whether there has
12    been substantial completion or not and when substantial
13    completion is being afforded.
14        It seems to me that the other plaintiffs are far ahead of
15    the states and that because of this issue, it may make sense
16    to push the states back, but thoughts on that topic.
17            MR. SCHMIDT:  Yeah, we have the same -- we grapple
18    with the same point, that we think we're already there but we
19    don't know -- in terms of the delay we've already incurred,
20    but we don't know how much more will be there.  And so what
21    we've been talking with the states about is trying to find
22    some sweet spot briefing where we do have some information, as
23    Your Honor flagged on substantial completion.
24        We had productive conferrals on that point.  What we would
25    propose, recognizing this is an unusual briefing schedule and
```

1    we'll do -- we'll do whatever is useful to the Court, is that

2    the defendants file a 15-page -- proper briefs of double --

3    double-spaced on February 3rd, plaintiffs respond on

4    February 7th, and we reply on February 10th with a five-page

5    reply.  And that would let it be ready for the February CMC,

6    if that's suitable to Your Honor, or Your Honor could readily

7    roll it till the March CMC.

8        The challenge we have is that we now have different

9    substantial completion dates for the states.  They tend to

10   fall at the end of January or the beginning of February, so we

11   tried to pick that as a sweet spot when we could get

12   not-too-far-term guidance because I think the immediate thing

13   it impacts is when we do the state depositions by also so we

14   would have some date on substantial completion.

15           MS. O'NEILL:  Megan O'Neill for the state AGs.

16       If I may respond, Mr. Schmidt is correct that we have

17   agreed to a briefing schedule, but I do just want to point out

18   a few things.

19       First, we, of course, are going to oppose Meta's request

20   for a trial track extension.  We don't think that's necessary.

21       Just want to point out that the AGs substantially

22   completed production of documents from our offices way back

23   several months ago, last year, in August actually.

24       And there is this difficulty of the substantial completion

25   dates.  Not all of those dates will have run by the time we

```
 1    have proposed that briefing, so --

 2              THE COURT:  So when -- when is the -- is there a list

 3    of dates somewhere as to when substantial completion is

 4    supposed to have occurred?

 5              MS. O'NEILL:  There is, Your Honor.  I don't have the

 6    docket number, but my understanding is that substantial

 7    completion for some states begins as early as today but for

 8    some, runs as late as February 10th, I believe.

 9              THE COURT:  Is that your understanding, Mr. Schmidt?

10              MR. SCHMIDT:  Yes.

11              THE COURT:  And can someone find me the docket so I

12    can look at the list?

13              MR. SCHMIDT:  It's ECF, I believe, 1495 -- 1495.1.

14              THE COURT:  1495.

15              MR. SCHMIDT:  .1.

16              THE COURT:  .1.

17              MR. SCHMIDT:  I think it was an attachment to an

18    order where Judge Kang annotated the parties' proposals on

19    scheduling state to state.

20              THE COURT:  And when are depositions supposed to have

21    occurred?

22              MR. SCHMIDT:  Pretty much right away, which is our

23    concern.  We're looking at depositions February and March

24    before the April 4th deadline, which is why we will benefit

25    from some near-term guidance because that's the first deadline
```

1    that's going to be a real difficulty.

2           MS. O'NEILL:  Your Honor, and I will just point out

3    that, as we've said, the substantial completion dates are

4    rolling, and we believe that the depositions can be similarly

5    rolling.  But, again, we agreed to this briefing if it is

6    acceptable to your -- to Your Honor.

7           MR. SCHMIDT:  And, Your Honor, one -- one small

8    thing.  The -- because of the way the parties submitted

9    proposed dates state by state and Judge Kang ruled on that

10   basis, it's a bit of a burden to track through the attachments

11   to figure out the dates.

12       If it would help, we'll confer with the states and submit

13   a joint filing that just lists every state and the date.

14           MS. O'NEILL:  Yeah.

15           THE COURT:  Oh, so what I was about to pull up is not

16   a list.  It's a -- it's a -- it's multiple pages.

17           MR. SCHMIDT:  Yeah, it's a series of -- I think some

18   are two -- but mostly one-page submissions the parties made

19   with proposed dates where Judge Kang annotated it state by

20   state, so it's going to be a large number of states with

21   annotations.

22       If it would help, we could put in just a simple list of

23   the dates.

24           THE COURT:  That would be helpful for me.

25       And then have you negotiated the dates of depositions?

1   So, one, I need to know when the substantial completion dates

2   are.  Two, I need to know what the proposed dates are with

3   respect to all of the various states' depositions.

4       The states argue in the CMC statement that the relevance

5   of all of those other productions is low.  And I don't know

6   one way or the other.

7       So if -- if the relevance is marginal, then that suggests

8   that I shouldn't move trial dates.  If it's substantially much

9   more relevant to a defense for something else, then that would

10  impact my decision-making, so I'll also need to know that

11  information.

12      I don't know that you're going to have all that

13  information for me by the 3rd.

14          **MR. SCHMIDT:**  We will not have -- I don't think we'll

15  have deposition dates.  What we do have also in that series of

16  orders is meet-and-confer dates for the states regarding

17  depositions, so it might be useful if we also included those

18  dates on a separate sheet in the joint submission we make to

19  the Court so the Court has that sense.

20          **THE COURT:**  Okay.  And then has the issue of

21  relevance been litigated in front of Judge Kang?

22          **MR. SCHMIDT:**  Yes.  And he's ruled against the

23  states.

24          **THE COURT:**  Well, I've got folks over here on the

25  right side shaking their head vociferously "no."

1        **MR. SCHMIDT:**  Okay.

2        **MS. O'NEILL:**  Your Honor, we've had disputes over

3    search terms and custodians that have largely been agreed upon

4    through the negotiations.

5        But the issue of the relevance and burden has not directly

6    been litigated.

7        **MR. SCHMIDT:**  The reason I disagree with that, Your

8    Honor, is we have not -- granularly, that is correct --

9    litigated those issues.

10       On a few occasions including not yesterday but the CMC --

11   the DMC before, a state presented the argument that I think

12   was what Your Honor was referring to that the core or a big

13   piece of discovery we want that these agencies will have,

14   which is what they have to say about social media and what

15   they have to say about alternate causes of teen mental health

16   issues.

17       He did not make a relevance finding, but he made a

18   discoverability finding on that that, that was in fact

19   discoverable and rejected the argument that discovery should

20   be limited in that way.

21       **MS. O'NEILL:**  And, Your Honor, that is only one small

22   part of the issues with relevance and proportionately and

23   burden that the state AGs and agencies have with Meta's

24   request.

25       **THE COURT:**  Okay.  But all of those things are being

1   litigate or resolved by negotiation?

2        **MS. O'NEILL:**  Your Honor, you're correct.  The search

3   terms and custodians that the states -- state agencies are

4   running have, with one exception, been agreed upon by the

5   parties.  And the last dispute was submitted to Magistrate

6   Judge Kang yesterday.

7        **THE COURT:**  Okay.

8        **MR. SCHMIDT:**  But the point -- if I may, Your Honor,

9   the point I would want to make is there have been broad-scale

10  objections.  The states have made, like, the alternate cause

11  objection I -- I alluded to.  They made a broad-sweeping --

12  they get a different, much narrower time period for their

13  discovery than they demanded from us.

14     Judge Kang spoke to that issue yesterday against them.

15  Some of these broad-based objections have been addressed by

16  Judge Kang.  They continue to be reasserted in different

17  contexts, but he has spoken on some of the cross-cutting

18  issues.

19        **MS. O'NEILL:**  I will just say that Judge Kang --

20  Magistrate Judge Kang has not made -- even on the issue that

21  Mr. Schmidt was discussing regarding alternative cause,

22  discoverability, of course, is not the same thing as relevance

23  and proportionately.  And those examinations have not been

24  made by Judge Kang.  And as your -- as we have discussed, we

25  have come to agreements among the parties and among the

```
 1    agencies as to what kind of terms are going to be run.

 2        But those particular issues have not been litigated or

 3    decided by Magistrate Judge Kang.

 4            MR. SCHMIDT:  And I agree with that.  I tried to make

 5    that clear in what I said.  He has ruled on discoverability,

 6    and admissibility usually comes before trial, if not earlier.

 7            THE COURT:  Okay.

 8        So let me -- let me look at your list before I give you a

 9    schedule.  I am currently heading into back-to-back trials and

10    am trying to figure out whether I'm going to be able to

11    maintain your February 12th date.  Currently we are set in the

12    morning, and I'm in trial.

13        Now, I think most trials should resolve.  And sometimes

14    they resolve on the eve of trial, as you all know.  So that

15    may -- you know, I may still see you on the 12th.  If that

16    trial does not resolve, I will not see you on the 12th.

17        So I'm looking for some, you know, alternative time to see

18    you.  But in the interim -- so I'm just giving you a heads-up

19    that that might have to change.

20        I could advance you a week, but that doesn't really help.

21    And -- the schedule's just really tight right now.

22        So get me that information.  Let me also talk to Judge

23    Kang.  And as I'm looking -- I mean, right now, you've got a

24    close of fact discovery April 4th.

25        Well, at least that's for -- is that for all sides?
```

1          **MR. SCHMIDT:**  Yes, Your Honor.

2          **MS. O'NEILL:**  Yes, Your Honor.

3          **THE COURT:**  And are the AGs going to be able to

4    comply with the depo notice and get substantial completion

5    prior to that date?

6          **MS. O'NEILL:**  My understanding is that all of the AGs

7    and agencies are working toward those dates.  I don't have

8    very detailed information for each of those agencies as I

9    stand here today, but we are working towards those dates and

10   think that they can hold.

11         **MR. SCHMIDT:**  And on the defense side, we're

12   understandably skeptical given where we are to date and

13   reinforcing that as we've been negotiating, we have been told

14   by a large number of states that if they have to do any

15   meaningful production, they will not be able to -- to meet the

16   dates.  I think some of those states have indicated the same

17   on the record before Judge Kang.

18         **THE COURT:**  Okay.

19         Well, it may be that given my trial schedule, I'll have to

20   ask him to make some recommendations because he'll be able to

21   spend more time with you and get more of the detail.  So I

22   really hate giving dates that aren't based on some, you know,

23   rational basis of why we're giving the dates, and I don't like

24   to move dates unless there's a reason to do that.  So I'll be

25   in touch on the issues.

```
 1              MR. SCHMIDT:  Okay.

 2              MS. O'NEILL:  Thank you, Your Honor.

 3              MR. SCHMIDT:  And if it works for Your Honor, we'll

 4      get those -- and it works for the states, we'll get those

 5      lists to you Tuesday.

 6              THE COURT:  That would be great.

 7              MS. O'NEILL:  And just to clarify to make sure that I

 8      understand exactly what Your Honor would like, I have that

 9      we're -- we'll be providing a list of dates for substantial

10      completion for each of the states, along with dates for

11      meet-and-confers for depositions.

12          And is there anything else that would be helpful to Your

13      Honor?

14              THE COURT:  I -- all I'm looking for, final dates on

15      all these discovery issues --

16              MS. O'NEILL:  Okay.

17              MR. SCHMIDT:  Okay.

18              THE COURT:  -- in one chart and one place so that I

19      don't have to create it myself.

20              MS. O'NEILL:  Understood.  We can definitely do that.

21              THE COURT:  Okay.  Terrific.  All right.  Great.

22          Okay.  Those are all the issues that I had on our list.  I

23      know Judge Kang and I try to do back-to-back conferences to

24      minimize your travel to the Bay Area and make things more

25      efficient.
```

1        This has been a pretty short conference, but my view,

2    there's no reason to have a long conference if one doesn't

3    need a long conference.  We all have things to do.

4        Is there anything else that anybody wants to talk about?

5            **MS. O'NEILL:**  (Shakes head.)

6            **MR. SCHMIDT:**  No.

7            **THE COURT:**  Okay.  There are -- I see someone

8    standing.

9        There are a couple of people in the audience, I

10    understand, who are seeking appointment to the plaintiffs' --

11    and I'm happy to meet you if you're here.

12        Mr. Legg?  Ms. Emery?

13            **MR. RUDDY:**  Good morning, Your Honor.  Brendan Ruddy

14    on behalf of the People of the State of California in regards

15    to the action -- excuse me -- *People v. TikTok, Inc., et al.*

16        We -- just because Your Honor raised the possibility of

17    having to change the date of the February case management

18    conference, that date is also the hearing date for a motion to

19    remand, that -- the opposition brief has come in, and the

20    reply brief should be filed shortly.

21        I know Your Honor typically rules on the paper for those

22    matters, and I understand Your Honor's schedule.  The people

23    just wanted to remind Your Honor that that is on the calendar

24    for that date and are anxious to return to state court.

25            **THE COURT:**  Okay.  Thanks for the reminder.

1          **MR. RUDDY:**  Yeah.

2          **MR. WARREN:**  Good morning, Your Honor.  Previn Warren

3     for the personal injury and school district plaintiffs.

4          Following up on Mr. Ruddy's comment, I believe February

5     12th is also the hearing date for certain motions brought

6     under 1292.

7          Plaintiffs would have no objection to having those heard,

8     you know, at the next case management conference, whenever

9     that gets scheduled.

10          **THE COURT:**  Yeah, those ones I knew were set.

11          Again, if I can keep it on, then I intend to keep it on.

12     It's just a question of -- just a question of whether or not

13     I'm in trial.

14          **MR. WARREN:**  Understood.  Thank you, Your Honor.

15          **THE COURT:**  Okay.

16          Mr. Legg here?  You want to come forward.

17          And then let's see, who else do I have?  Ms. Emery.

18          **MR. LEGG:**  Morning, Your Honor.

19          **THE COURT:**  Good morning.

20          **MR. LEGG:**  Matt Legg.  It's nice to meet you, and I'm

21     here to answer any questions you might have.

22          **THE COURT:**  Well, I didn't have any questions, but

23     you are here.  Do you want to add anything to your

24     application?

25          I understand that -- that the chairs are -- are supportive

1    of elevating you to the -- to the leadership.

2            **MR. LEGG:**  Yep.  Nothing to add.  This case is

3    obviously important to me, and I'm fully committed to it

4    and -- and appreciate being here.

5            **THE COURT:**  And then my -- let's see.  You're working

6    on which of the various teams?

7            **MR. LEGG:**  I'm sorry, Your Honor?

8            **THE COURT:**  I was just looking back at your -- at

9    your application.  So you're from Baltimore.

10            **MR. LEGG:**  I'm from Baltimore, and I represent 2 of

11    the 12 bellwether school districts.

12            **THE COURT:**  Right.  Okay.

13        And how is Mr. Warren and Ms. Hazam doing in your view?

14            **MR. LEGG:**  I think they're -- they are doing a

15    remarkable job.

16                        (Laughter.)

17            **THE COURT:**  Okay.

18        Ms. Emery, how about you?

19            **MS. EMERY:**  Nothing to add to my application, Your

20    Honor.  I'm just very grateful to you last year -- school

21    district committee.  I valued that experience immensely.  I've

22    enjoyed work on this litigation and look forward to continuing

23    to do so regardless of how you rule.

24        Just very much appreciate that.  And echo the compliments

25    to both Mr. Warren and Ms. Hazam as well as to Mike Weinkowitz

1    and -- of course, my [sic] name is blanking -- Melissa -- on

2    how they've been running the school district side of things.

3        **THE COURT:**  And, you know, I had a conversation with

4    the coleads yesterday about the -- about the applications.

5    And perhaps it was -- I didn't draft my order properly.  I

6    always felt like the school district leadership group was part

7    of the steering committee membership.  But I guess there's

8    some uncertainty about that, so I will clarify it.

9        I've always felt like you're a part of it but will make it

10   explicit that that subcommittee is in fact part of the -- part

11   of the plaintiffs' steering committee membership.  So thank

12   you for all you're doing.

13       And you'll hear from me on -- on all the applications, but

14   you'll hear back from me soon.

15           **MS. EMERY:**  Thank you, Your Honor.

16           **MR. LEGG:**  Thank you, Your Honor.

17           **THE COURT:**  You're welcome.

18       **MR. STEIN:**  Your Honor, Josh Stein from Boies

19   Schiller Flexner on behalf of the *Abraham* plaintiff.

20       Mr. Boies was planning to attend today.  We informed

21   Ms. Hazam that he was hoping to attend to answer any questions

22   the Court may have.

23       Ms. Hazam responded that the Court typically informs

24   applicants if they do have any questions.  And -- and with

25   that information, he is -- is not attending today, as you can

1   see.  But he's happy to answer any questions that you might

2   have directly.

3        **THE COURT:**  I appreciate hearing that.  I -- like,

4   obviously didn't see him on the list.  That's why I called up

5   the two that I did see.  There are a number of people.  I

6   have, you know, a three-page single-spaced document here with

7   everybody's names and the applications, et cetera.  And not

8   everybody who's seeking reappointment or appointment is here.

9        I'm probably not inclined at this point to -- to include

10  Mr. Boies and the Schiller firm -- Boies Schiller firm in the

11  leadership for many of the same reasons I indicated with

12  respect to the class action.

13       So, you know, I'm still thinking about it, but the answer

14  is probably no.

15       **MR. STEIN:**  Understood, Your Honor.

16       I think with the dates coming up in February and April

17  with respect to discovery, our chief concern is being bound

18  within the four corners of that discovery after it's completed

19  without any sort of meaningful participation.

20       **THE COURT:**  Well, the -- that's all the more reason

21  to say no, which is then you'll have the time to litigate

22  that.  And you can litigate it within the context of your own

23  lawsuit.

24       **MR. STEIN:**  I appreciate that, Your Honor.  And --

25  and we'd be happy to help alongside leadership but also do it

1    the way you just described.

2    **THE COURT:**  Okay.

3    **MR. STEIN:**  Thank you, Your Honor.

4    **THE COURT:**  Thank you.

5    All right.  Anything else?

6    **MS. HAZAM:**  Your Honor, Lexi Hazam for plaintiffs.

7    I just wanted to make the Court aware that there were some

8    applicants who could not attend today.  One of them, Felicia

9    Craig, is available via Zoom should you wish to speak to her.

10    Just informing you of that.

11    **THE COURT:**  Okay.

12    **MS. HAZAM:**  Thank you.

13    **THE COURT:**  Thank you.

14    Okay.  Open mic.  Anybody else want to come to the

15    microphone?  No?

16    All right.  Well, then I'm going to take this extra time

17    and go work on more orders --

18                        (Laughter.)

19    **THE COURT:**  -- so that I can get to your orders.  And

20    appreciate everything that everyone's doing.

21    Be safe.  And we'll see you in about a month.

22    (Proceedings were concluded at 9:38 A.M.)

23                        --o0o--

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Friday, January 24, 2025