Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google, LLC*

*Additional parties and counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR-TSH<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**REPLY OF GOOGLE/YOUTUBE AND SNAP DEFENDANTS IN SUPPORT OF SUPPLEMENTAL MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>**Hearing:**<br>Date:  TBD<br>Time:  TBD<br>Place:  Oakland, California<br>Judge:  Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

Plaintiffs' Opposition and the State AGs' Response[1] to Google and Snap's Supplemental Motion only highlight why certification of key issues for interlocutory review is appropriate at this stage of the litigation.[2] Now that the Court and the parties have completed multiple rounds of pleadings motions, several central legal issues have come into focus. As the Google/YouTube and Snap Defendants ("Movants") explained, one such critical legal question is whether Section 230 bars claims for failure to warn of an alleged design defect where the statute bars the underlying defect claims, an issue addressed previously in this Court's October 15 and 24, 2024 Orders (Dkts. 1214, 1267) (the "FTW Rulings"). Plaintiffs do not, and cannot, dispute that the answer to this question will have a significant impact on the resolution of this matter, including a myriad of issues involved in litigating summary judgment motions and conducting trials in these cases (such as, e.g., the content of jury instructions, in limine motions, the number of witnesses, and the scope of witness testimony and admissible evidence).

The Court already has indicated an interest in revisiting this question at the summary judgment stage, Dkt. 1214 at 36-37, and Movants remain prepared to address the issue further at that time. However, given the active movement for appellate review in the cases—Meta's and TikTok's collateral order appeals, Defendants' joint motion to certify aspects of the Court's orders addressing the School Districts' claims, and, now, the State AGs' own motion to certify—Movants respectfully submit that the time is right for the Court to certify this additional important issue as well.

---

[1] The "Opposition" refers to the PI and SD Plaintiffs' Opposition to Google and Snap's Supplemental Motion to Certify (Dkt. 1546). The "AG Response" refers to the State AGs' non-opposing "Response" to the same (Dkt. 1535).

[2] The AGs' request for certification of a broader set of Section 230 questions only underscores that the more limited Section 230 question raised by Movants warrants certification. Movants further note that any interlocutory appeal based on the AGs' motion would not be limited to the AGs' artificial framing, which seeks review of this Court's holding that certain non-failure to warn claims and theories are barred by Section 230; that motion necessarily encompasses other non-failure to warn claims and theories that the Court found are *not* barred by Section 230. Thus, if the AGs' motion is granted, Movants reserve their right to ask the Ninth Circuit to review the broader question of whether Section 230 bars all claims against Snap and YouTube that seek to hold them liable for the ways that their platforms bring users into contact with third-party content and allegedly facilitate harms inextricably intertwined with the publication of such content.

All the requirements for certification are plainly met: The question at issue is a controlling question of law, substantial grounds for difference of opinion exist, and immediate appellate review would materially advance the resolution of this MDL. *See* 28 U.S.C. § 1292(b).

## II.     ARGUMENT

**A.     The FTW Rulings Present a Controlling Question of Law**

The State AGs acknowledge that the FTW Rulings involve controlling questions of law on the application of Section 230. *See* AG Response at 4. For their part, Plaintiffs do not dispute that the question is controlling, but argue that it is too fact-bound for certification. Opp. 2-3. But Plaintiffs do not explain what factual record would be necessary to decide whether Section 230 applies equally to failure-to-warn claims as it does to underlying defect claims. That question (especially as presented here on a motion to dismiss that assumed as true the facts alleged in the Master Complaint) is purely legal.

The Court already determined, as a matter of law, that many of Plaintiffs' alleged "defect" claims are barred by Section 230. Dkt. 430 at 16-19. No factfinding or development of a factual record is necessary to decide if the same analysis applies when the claim is framed as one for a failure to warn. If anything, that question is *less* fact-bound, because it does not even require consideration of the individual defects, which the Court has already addressed. Other courts, including the Ninth Circuit, have resolved this issue on the pleadings, belying any need for a developed factual record. *See Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179 (9th Cir. 2024) (affirming dismissal under Section 230 of "products liability claims under a failure to warn theory"); *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 915 (2024) (trial court properly sustained demurrer, under Section 230, to products liability claims "pleaded as a failure to warn"); *see also infra*, Part II.B (discussing *Bride* and *Wozniak*). Because the question "can be resolved quickly without delving into a particular case's facts," it is suitable for certification. *Silbersher v. Allergan Inc.*, 2021 WL 292244, at *2 (N.D. Cal. Jan. 28, 2021) (quoting *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019)).

Plaintiffs point to the Court's prior statement that it would revisit the failure-to-warn claims at the summary judgment stage. Opp. 2. But that is not at all inconsistent with granting certification now. Whether Section 230 should bar claims based upon the failure to warn about an alleged design defect

when it bars the underlying design defect claims is a pure question of law. Discovery in individual cases might provide *additional* bases to find that Section 230 bars failure to warn claims in those cases, but the threshold legal question is "controlling" and needs no factual record for appellate review.

Plaintiffs also suggest that certification is inappropriate because they are aware of no case in this MDL that is proceeding solely on a failure-to-warn theory. But "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.* 673 F.2d 1020, 1026 (9th Cir. 1981). The Ninth Circuit has rejected the notion that certification "requires that the interlocutory appeal have a final, dispositive effect." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see Silbersher v. Allergan Inc.*, 2021 WL 292244, at *2 (N.D. Cal. Jan. 28, 2021) (granting certification on issue related to FCA public disclosure bar, even though Plaintiff could still "escape the public disclosure bar" regardless of court's ruling); *Juarez v. Jani-King of California, Inc.*, 2012 WL 525511, at *1 (N.D. Cal. Feb. 16, 2012) (granting certification because an appellate ruling "could affect the outcome of the summary decision" on one of several claims at issue). Even if a ruling for Defendants might not dispose of *entire* cases, it would no doubt "materially affect the outcome of litigation" by significantly narrowing the scope of numerous cases and reducing the set of features and the scope of claims Plaintiffs can proceed upon at summary judgment and trial. *See infra*, Part II.C.

**B.     Substantial Grounds for Difference of Opinion Exist**

As the Court recognized in its October 15, 2024 Order, Plaintiffs' claims rest on "novel theories [that] test the boundaries of an area of law in some flux." Dkt. 1214 at 36. Plaintiffs do not even acknowledge this statement. The presence of such "novel and difficult questions" is grounds for certification on its own. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). But beyond that threshold reason, the fact that "other courts have, in fact, disagreed" about how to apply Section 230 to related design defect and failure to warn claims further supports certification. *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) (quoting *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016)). The Court's well-placed "skepticism" that Plaintiffs' failure-to-warn claims premised upon protected publishing activity could survive Section 230 at summary

judgment in light of recent Ninth Circuit authority, Dkt. 1214 at 37, only underscores the potential for difference of opinion on these issues.

Plaintiffs' response is simply to argue that "no court has disagreed" with this Court's ruling. Opp. 3. That is incorrect. *See* Mot. 6; *Bride*, 112 F.4th at 1179; *Wozniak*, 100 Cal. App. 5th at 915. But even if that were true, it would not stand in the way of certification: "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688.

More significantly, though, in their haste to gloss over any disagreement, Plaintiffs misread or ignore this Court's own prior orders and the relevant Section 230 case law. As Movants explained, the Ninth Circuit's decision in *Bride* and the California Court of Appeal's decision in *Wozniak* (both of which were decided after this Court's initial ruling on Defendants' motion to dismiss the priority claims) expressly hold that Section 230 applies equally to claims presented under a failure to warn theory as those presented under a design defect theory. Mot. 6; *accord Bride*, 112 F.4th at 1180 (Section 230 bars "failure to warn claims" that "fault[] [Defendants] for not mitigating, in some way, the harmful effects of" the alleged design defects that would impose publisher liability); *Wozniak*, 100 Cal. App. 5th at 914-15 (rejecting argument that "would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn of such information published by a defendant"). Insofar as this Court has held otherwise, there is a conflict that merits certification.

Trying to escape that conclusion, Plaintiffs assert that—unlike in *Bride* and *Wozniak*—their "claims do not seek to hold Defendants' liable for 'publishing third party content.'" Opp. 5 (quoting Dkt. 430 at 20). But whether or not Plaintiffs' failure to warn claims implicate Defendants' roles as publishers is *itself* the relevant question. Indeed, the Court already found that a number of Plaintiffs' "alleged design defects directly target defendants' roles as publishers of third-party content" and therefore fall within the scope of Section 230. Dkt. 430 at 16. The question now is whether the outcome should be any different when Plaintiffs seek to challenge the failure to warn about those same supposed defects. *Bride* and *Wozniak* say no, and Plaintiffs cannot evade those rulings simply by proclaiming that they do not challenge Defendants' role as publishers.

Plaintiffs also continue to misread the Ninth Circuit's decision in *Internet Brands* as somehow exempting failure to warn claims from Section 230. Opp. 3-4; *see Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). But *Bride* already corrected this misreading. As *Bride* explains, the holding in *Internet Brands* was not that failure to warn claims categorically escape Section 230, but instead that the specific theory of liability alleged in that case "had no bearing on [the defendant's] decision to publish any information on its site." *Bride*, 12 F.4th at 1180–81. That was because (1) the third-party bad actors who harmed the plaintiffs never "posted anything to the website," *Internet Brands*, 824 F.3d at 851; and (2) the defendant was "not alleged to have learned of the predators' activity from any monitoring of postings on the website," *id*. Moreover, *Internet Brands* had no occasion to address design defect and failure to warn claims based on the same underlying conduct or website features, so it says nothing about whether Section 230 treats those classes of claims differently, while both *Bride* and *Wozniak* answer that question directly.

Plaintiffs' position also finds no support in the JCCP court's recent rulings addressing plaintiffs' negligent failure to warn claim. *Contra* Opp. 4. To the contrary, Judge Kuhl specifically applied Section 230 to strike allegations "that Defendants failed to warn about harms stemming from 'challenge videos'"—precisely because parallel negligence claims based on such third-party videos targeted the platforms' protected publishing activity (the algorithmic recommendation and publication of such content), and thus were barred by Section 230. *See* JCCP Order on Demurrer and Motion to Strike (Dkt. 1546-1) at 22-23. In so holding, the JCCP court relied on *Wozniak*'s conclusion that treating failure to warn claims differently "would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn." *Id.* at 22 (quoting *Wozniak*, 100 Cal. App. 5th at 914-915). Though the JCCP court did not grant Defendants' motion to strike the failure to warn claims in full, that is because the court was treating the negligent failure to warn claims as otherwise targeting conduct *not* protected by Section 230, just as it had concluded with respect to the underlying negligence claims—that is, because Plaintiffs had based their cause of action on allegations that the court concluded were not barred by Section 230, the claim as a whole survived demurrer. *See id.* at 14 ("As to allegations based on failure to warn of the dangers of Defendants' own conduct, Defendants' arguments regarding Section 230 are rejected for the same reasons the Fifth Cause of

Action for negligence was allowed to proceed when the court issued the October 2023 Ruling"). While Movants disagree with aspects of the JCCP court's feature-specific rulings (which also differ from those of this Court), those are unrelated to the question on which Movants seek certification. On that issue, the JCCP ruling, like *Wozniak* and *Bride*, merely underscores the grounds for difference of opinion as to the FTW Rulings.

**C.  Appellate Review Would Materially Advance the Ultimate Termination of This Litigation**

A ruling for Defendants eliminating claims related to a failure to warn about the same features the Court already found barred as design defect claims would substantially reduce the work for both the Court and the parties by narrowing the set of issues to be decided at summary judgment and at trial. *Supra*, Part II.B; Mot. 6-7. Plaintiffs contend that this is irrelevant because "Plaintiffs would continue to possess other significant claims." Opp. 5. Again, however, that is not the standard: Certification is appropriate if an answer from the Court of Appeals could "'appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022) (quoting *In re Cement*, 673 F.2d at 1027). It need not "have a final, dispositive effect." *Reese*, 643 F.3d at 688.

The Opposition ignores that a ruling from the Ninth Circuit finding that failure to warn claims are barred to the same extent as defect claims would significantly limit the scope of admissible testimony for both fact and expert witnesses, thereby narrowing the scope of summary judgment motions and reducing *in limine* and Rule 702 motions practice. It may even remove the need to call certain witnesses at trial entirely, including expert witnesses designated to opine on certain features that, if the Ninth Circuit applies Section 230 to Plaintiffs' failure to warn claims, may no longer be part of this case at all. A case addressing Defendants' use of algorithms (a theory remaining in this case only because of the failure to warn claims), for example, would look substantially different (and take much longer to try) than one focusing only on features the Court has found not to be barred by Section 230, like "[n]ot providing effective parental controls." *Id.* at 21. At a minimum, a ruling by the Ninth Circuit that Section 230 bars claims related to certain features, regardless of whether styled as a defect

or failure to warn, would make this complex proceeding, including any trial, significantly more streamlined and manageable.

Because a ruling would substantially limit the scope of issues in play, it is irrelevant that some Plaintiffs would still possess some un-barred failure to warn claims. *See* Opp. 4-5.[3] In a patent case, for example, if a court finds that five of the asserted claims are barred by prior art, but three are not, there is no question the case has been "appreciably shorten[ed]" even though there are still claims to be tried. The same is true here. Indeed, Plaintiffs' own cited authority highlights that Plaintiffs' focus on categories of claims, rather than whether certification would narrow this litigation, is misplaced. In *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, the plaintiffs were proceeding in tandem with claims under Section 11 of the federal Securities Act of 1933 and Section 90.570 of the Nevada Securities Act, which the district court noted were "remarkably similar." 966 F. Supp. 2d 1031, 1046 (C.D. Cal. 2013). Thus, the court reasoned, an appeal as to the Section 11 claims alone would not materially advance the litigation, because it would "proceed in largely the same fashion," regardless of which statute provided the basis for liability. *Id.* Plaintiffs' cited passage from *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014), involved essentially the same consideration: The court noted that a resolution on any one of the legal theories being challenged would not necessarily affect the litigation because the plaintiffs advanced several different claims "predicated upon the same underlying factual events," which would remain at issue even if the legal theories of liability were reduced. *Id.* at 532.

The situation here is the inverse: While a ruling for Defendants would not necessarily dispose of *all* failure to warn claims in this litigation, it would make such claims coextensive with the other design defect claims and therefore substantially narrow the litigation by reducing the scope of claims

---

[3] Plaintiffs also misapprehend why a ruling for Defendants would reduce the need for complex and potentially confusing jury instructions in these cases. Opp. 5 n.3; *see* Mot. 7. If a case proceeds to trial with claims related to some features being permissible under design defect or failure to warn, and others permissible *only* under failure to warn, the Court would need to provide jury instructions that clearly delimit which features the jury may consider as to each claim–and it is a certainty that the parties would disagree on the content of such instructions, requiring litigation of that dispute. This effort would be significantly more complicated and difficult than merely providing a generic failure to warn instruction. *Contra* Opp. 5 n.3

1   available to Plaintiffs at summary judgment and trial.  That would no doubt "shorten the time, effort,
2   or expense" of these proceedings going forward.  *ICTSI Or.,* 22 F.4th at 1130–31.

3   **D.      Case Management Concerns Support Movants' Request**

4   When Defendants first moved this Court to certify its motion-to-dismiss ruling for interlocutory review, Plaintiffs argued that the motion was premature because several categories of claims remained to be addressed in the multi-step process the Court followed in addressing pleading motions.  *See* Dkt. 527 at 19-20.  Now Plaintiffs argue that Movants' request is too *late*, despite this motion coming on the heels of the Court's last major ruling on those motions.  *See* Opp. 6-7.  The Court expressly stated in denying Defendants' earlier certification motion that certification should be addressed after the Court ruled on the pleadings motions.  Dkt. 590 at 1-2, 5-6.  That has now occurred.

Notably, while Plaintiffs gesture generally to discovery coordination with the JCCP as a reason to avoid certification, Opp. 6-7, they ignore that Movants have not sought a stay of discovery.  Just the opposite, Movants have specifically proposed that discovery may "continue in the bellwether cases while the appeal is pending."  Mot. 7.  Movants' request would not require any delay in the close of fact discovery or related deadlines.[4]  Nor do Plaintiffs explain why, if the Ninth Circuit may already be addressing some issues related to these cases in the context of Meta's and TikTok's collateral-order appeal (or another certified issue), it would not be most efficient for the Ninth Circuit to address the failure-to-warn claims at the same time, in order to avoid precisely the sort of "piecemeal appeals" that this Court previously indicated a desire to avoid.  Dkt. No. 590 at 5.  The easiest course for the parties and for the courts is to have this critical threshold issue decided early, all the more so if other appeals will be ongoing in any event.

### III.      CONCLUSION

For all these reasons, the Court should certify the FTW Rulings for appeal under § 1292(b).

---

[4] Plaintiffs point to statistical data to suggest that, in 2023, the median time from an appeal to an Order in the Ninth Circuit was 13.7 months.  This number includes *all* appeals and does not account for the fact that Movants' request involves a single, purely legal issue that can be resolved without reference to an extensive factual record.  Certainly, no one can predict when the Ninth Circuit might rule.  In any event, if Meta's and TikTok's appeals proceed, or the Court certifies any of the other issues presented to it, then resolution of the issue presented in Movants' request would have no appreciable effect on the overall timeline for resolution of these cases regardless of the length of the appellate process.

| | |
|---|---|
| Dated: January 28, 2025 | Respectfully submitted, |
| | **WILSON SONSINI GOODRICH & ROSATI**<br>**Professional Corporation** |
| | */s/ Brian M. Willen*<br>Brian M. Willen, (*Pro Hac Vice*)<br>bwillen@wsgr.com<br>1301 Avenue of the Americas, 40th Floor<br>New York, New York 10019<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5899 |
| | Lauren Gallo White (State Bar No. 309075)<br>lwhite@wsgr.com<br>Carmen Sobczak (State Bar No. 342569)<br>csobczak@wsgr.com<br>One Market Plaza, Spear Tower, Suite 3300<br>San Francisco, CA  94105<br>Telephone: (415) 947-2000<br>Facsimile: (415) 947-2099 |
| | Christopher Chiou (State Bar No. 233587)<br>cchiou@wsgr.com<br>Matthew K. Donohue (State Bar No. 302144)<br>mdonohue@wsgr.com<br>953 East Third Street, Suite 100<br>Los Angeles, CA 90013<br>Telephone: (323) 210-2900<br>Facsimile: (866) 974-7329 |
| | *Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.* |
| | **WILLIAMS & CONNOLLY LLP** |
| | Joseph G. Petrosinelli (pro hac vice)<br>jpetrosinelli@wc.com<br>Ashley W. Hardin (*Pro Hac Vice*)<br>ahardin@wc.com<br>680 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone.: (202) 434-5000<br>Facsimile: (202) 434-5029 |
| | *Attorneys for Defendants YouTube, LLC and Google LLC* |

| | |
|---|---|
| 1 | **MORGAN, LEWIS & BOCKIUS LLP** |
| 2 | |
| 3 | Yardena R. Zwang-Weissman (SBN 247111)<br>yardena.zwang-weissman@morganlewis.com |
| 4 | 300 South Grand Avenue, 22nd Floor<br>Los Angeles, CA 90071-3132 |
| 5 | Telephone: (213) 612.7238 |
| 6 | Brian Ercole (*Pro Hac Vice*) |
| 7 | brian.ercole@morganlewis.com<br>600 Brickell Avenue, Suite 1600 |
| 8 | Miami, FL 33131-3075<br>Telephone: (305) 415.3416 |
| 9 | |
| 10 | Stephanie Schuster (*Pro Hac Vice*)<br>stephanie.schuster@morganlewis.com |
| 11 | 1111 Pennsylvania Avenue NW<br>NW Washington, DC 20004-2541 |
| 12 | Telephone: (202) 373.6595 |
| 13 | *Attorneys for Defendants YouTube, LLC and Google LLC* |
| 14 | |
| 15 | **MUNGER, TOLLES & OLSEN LLP** |
| 16 | */s/ Jonathan H. Blavin* |
| 17 | Jonathan H. Blavin (State Bar No. 230269)<br>  Jonathan.Blavin@mto.com |
| 18 | MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, 27th Floor |
| 19 | San Francisco, CA  94105-3089<br>Telephone: (415) 512-4000 |
| 20 | Facsimile: (415) 512-4077 |
| 21 | Rose L. Ehler (State Bar No. 296523) |
| 22 | Rose.Ehler@mto.com<br>Victoria A. Degtyareva (State Bar No. 284199) |
| 23 | Victoria.Degtyareva@mto.com<br>Ariel T. Teshuva  (State Bar No. 324238) |
| 24 | Ariel.Teshuva@mto.com<br>MUNGER, TOLLES & OLSON LLP |
| 25 | 350 South Grand Avenue, 50th Floor |
| 26 | Los Angeles, CA  90071-3426<br>Telephone:  (213) 683-9100 |
| 27 | Facsimile:  (213) 687-3702 |
| 28 | Lauren A. Bell, (*Pro Hac Vice*) |

Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**ATTESTATION**

I, Brian M. Willen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: January 28, 2025         By:   */s/ Brian M. Willen*
                                       Brian M. Willen