Phyllis A. Jones (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a*
*Facebook, Inc.; Facebook Holdings, LLC; Facebook*
*Operations, LLC; Facebook Payments, Inc.;*
*Facebook Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.; and Mark Elliot Zuckerberg*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR-TSH |
| THIS DOCUMENT RELATES TO: | Honorable Yvonne Gonzalez Rogers |
| ALL ACTIONS | **REPLY IN SUPPORT OF MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |
| | **Hearing:**<br>Date:    February 12, 2025<br>Time:    9:00 a.m.<br>Place:   Oakland, California<br>Judge:   Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT ....................................................................................... 3

    A.      Defendants Seek Certification of Pure Questions of Law. ..................................... 3

    B.      Substantial Grounds for Difference of Opinion Exist............................................ 5

        1.      Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts' Public Nuisance Claims May Proceed. .......................................... 5

        2.      Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts' Negligence Claims May Proceed. ............................................... 8

        3.      Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts May Recover Increased Health Care Costs. ....................................... 9

    C.      Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation. ................................................................................. 10

III.    CONCLUSION ................................................................................... 13

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Association of Washington Public Hospital Districts v. Philip Morris, Inc.*,
    241 F.3d 696 (9th Cir. 2001) ........................................................................................... 9, 10

*In re Blue Cross Blue Shield Antitrust Litig.*,
    2018 WL 3326850 (N.D. Ala. June 12, 2018) ...................................................................... 11

*Brickman v. Facebook, Inc.*,
    2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) ................................................................ 4, 7, 9

*In re Cintas Corp. Overtime Pay Arb. Litig.*,
    2007 WL 1302496 (N.D. Cal. May 2, 2007) ........................................................................ 12

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ............................................................................................. 6, 7

*Day & Zimmermann, Inc. v. Challoner*,
    423 U.S. 3 (1975) .................................................................................................................... 5

*Del Webb Cmtys., Inc. v. Partington*,
    652 F.3d 1145 (9th Cir. 2011) ................................................................................................ 5

*Doe v. Meta Platforms, Inc.*,
    2024 WL 4375776 (N.D. Cal. Oct. 2, 2024) .......................................................................... 3

*Fazio v. City & Cnty. of San Francisco*,
    125 F.3d 1328 (9th Cir. 1997) ................................................................................................ 4

*Gallion v. Charter Commc'ns Inc.*,
    287 F. Supp. 3d 920 (C.D. Cal. 2018) .................................................................................... 4

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ................................................................................................. 3

*In re JUUL Labs, Inc., Mktg., Sales Practices, and Prod. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) .................................................................................... 6

*MCI Commc'ns Servs., Inc. v. Skanska-Traylor-Shea*,
    2021 WL 2170333 (C.D. Cal. May 18, 2021) ...................................................................... 12

*Plaskett v. Wormuth*,
    18 F.4th 1072 (9th Cir. 2021) ................................................................................................. 3

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .................................................................................................. 8

ii

*In re Snap Inc. Sec. Litig.*,
   2018 WL 3816764 (C.D. Cal. Aug. 8, 2018) ........................................................... 6

*State v. Exxon Mobil Corp.*,
   406 F. Supp. 3d 420 (D. Md. 2019) ...................................................................... 6

*Steering Comm. v. United States*,
   6 F.3d 572 (9th Cir. 1993) ................................................................................ 11

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ............................................................................. 11

*Steshenko v. Gayard*,
   2014 WL 7204784 (N.D. Cal. Dec. 16, 2014) ...................................................... 7

*United States v. $209,815 in United States Currency*,
   2015 WL 537805 (N.D. Cal. Feb. 9, 2015) ........................................................... 7

*Wang v. Zymergen Inc.*,
   2024 WL 5116962 (N.D. Cal. Dec. 16, 2024) ...................................................... 3

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................... *passim*

DEFENDANTS' REPLY IN SUPPORT OF MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) —
CASE NO. 4:22-MD-03047-YGR

## I.    INTRODUCTION

The School Districts fail to overcome Defendants' showing that an immediate appeal is warranted.

*First*, the School Districts' assertion that Defendants are seeking review of mixed questions of law and fact is simply incorrect.  Each of the three issues on which Defendants seek an immediate appeal involves a pure question of law, *i.e.*, whether threshold legal defects doom the School Districts' public nuisance and negligence claims.  None of the cases cited by the School Districts shows anything to the contrary, and none of the factual allegations made in their complaint—accepted as true at the pleadings stage—is relevant to the pure legal questions on which Defendants seek certification.

*Second*, substantial ground for difference of opinion exists regarding all three of those questions.  The School Districts assert that Defendants seek appellate review merely because they disagree with the Court's decision and complain that Defendants rely on the same basic arguments and authority as they did in their motion to dismiss.  But this is not a motion for reconsideration, and there is nothing surprising or improper about Defendants' reliance on many of the same arguments and authorities referenced in the motion to dismiss briefing (as is typical in all requests for an immediate appeal).  Defendants plainly disagree with the Court's ruling, but are not asking the Court to change its ruling or seeking to re-litigate those issues before this Court.  Rather, Defendants now rely on those authorities to establish that other reasonable jurists could (and have) reached different conclusions on the same controlling legal questions.

As to the public nuisance claims, this Court chose to extend the doctrine beyond its traditional and limited bounds unless the highest court of a state had expressly rejected such an expansion.  Reasonable jurists could disagree regarding whether that was a proper exercise of this Court's powers under *Erie*, which counsels federal courts to take a restrictive approach on unclear issues of state law.  That reasonable jurists could disagree with this Court's holding is further reinforced by the facts that (1) the Restatement expressly rejects the approach adopted by the Court, (2) six of the seven state supreme courts to address the issue also reject that approach, and (3) Judge Kuhl rejected that approach, including as to the Florida and California claims, on identical allegations.

As to the negligence claims, whether to impose a duty is indisputably a question of law—particularly where, as here, that inquiry implicates novel First Amendment considerations. The School Districts do not seriously dispute that other jurists have declined to impose tort-based duties in similar circumstances, including as to social media companies. And though the School Districts seek to cabin some of those decisions as involving statutes rather than common law rules, that is not a material difference.

As to the School Districts' attempt to recover increased costs of providing mental health care to students, a substantial ground for difference of opinion exists in light of binding Ninth Circuit precedent rejecting analogous attempts by public hospital districts to recover increased costs of providing health care to patients.

*Finally*, the School Districts are wrong to assert that the relatively advanced state of discovery means that resolution of these threshold legal issues could not materially advance the termination of this litigation. Obtaining prompt appellate rulings on core legal questions that could impact *all* of the School District cases in these MDL proceedings will plainly advance the proceedings more than undertaking the lengthy process of trying individual bellwether cases. This is especially so given that it is far from certain that any appeals in those individual bellwether cases would resolve the threshold legal questions on which Defendants seek certification.

Moreover, since Defendants filed their motion for interlocutory review, over 400 school districts in the JCCP have sought leave of court to dismiss their claims in the JCCP and re-file them in the MDL precisely because of this Court's order.[1] Under these circumstances, achieving prompt appellate clarity on these threshold legal issues—where this Court and the JCCP have reached diametrically opposite conclusions—will help to avoid this sort of procedural gamesmanship by school districts and avoid imposing further (and perhaps unnecessary) burdens on this Court's time and effort.

---

[1] In July 2024, after dismissing the cases of four representative bellwether school district plaintiffs, the JCCP court stayed the remaining school district cases pending appeal of the dismissal order. *See* Minute Order, *Social Media Cases*, JCCP 5255 (Cal. Sup. Ct. July 2, 2024). On January 6, 2025, less than two months after this Court issued its orders on Defendants' motion to dismiss the School Districts' claims, the school district plaintiffs in the JCCP filed a motion to lift the stay on their cases so that they would have "time to dismiss their cases and re-file the in the MDL." *See* Exhibit A (Motion for Leave) at 2.

## II.    ARGUMENT

### A.    Defendants Seek Certification of Pure Questions of Law.

The School Districts contend that the questions presented in Defendants' Section 1292(b) petition are actually mixed questions of fact and law and suggest that certification would impermissibly throw open the appellate courthouse doors. They are incorrect.

The authority cited by the School Districts to argue that interlocutory review is reserved for questions "of law—not fact" does not support their assertion that Defendants improperly seek review of factual issues. For instance, *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1132 (9th Cir. 2022), concerned whether plaintiffs had proven *at trial* that the defendant "became a primary employer under the circumstances of this case (a question of fact)." Similarly, in *Doe v. Meta Platforms, Inc.*, 2024 WL 4375776, at *1 (N.D. Cal. Oct. 2, 2024), the court denied an immediate appeal based on its view that the question presented was whether the plaintiff "adequately plead[ed] intent" under an undisputed legal standard.[2] None of the cited cases involved threshold legal questions like those at issue here.[3]

For similar reasons, the School Districts attack a straw man when they assert that "Defendants' argument would subject every ruling on a motion to dismiss to automatic review by an appellate court." Opp. 6. The test has two other parts—not only that there be a controlling question of law, but that the question be one on which there are substantial grounds for difference of opinion and that resolution of the question materially advances the termination of the litigation. *See* 28 U.S.C. § 1292(b). Moreover, as demonstrated below, the questions on which Defendants seek certification involve threshold legal issues, not the sufficiency of the pleadings under an undisputed legal standard. That Judge Kuhl held

---

[2] *Wang v. Zymergen Inc.*, 2024 WL 5116962 (N.D. Cal. Dec. 16, 2024) is even further from the mark. There, the court *agreed* that defendants sought review of a "pure legal question," but declined to certify that question because it would not "materially affect the outcome of the litigation." *Id.* at *5.

[3] The School Districts take issue with Defendants' citation of *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021), suggesting that reliance on this binding precedent is misplaced because its procedural posture did not implicate Section 1292(b). *Plaskett* holds that some pleadings challenges—like the ones Defendants have raised—target the legal sufficiency of a plaintiff's claim, and so the "adequacy of [the plaintiff's] claims under [the motion to dismiss] standards raise[] [] question[s] of law," not questions of fact. 18 F.4th at 1083. Clarifying that certain types of pleadings challenges implicate questions of law, as *Plackett* does, is undoubtedly relevant to the analysis under Section 1292(b), and the holding in *Plaskett* controls that analysis in the instant case.

that school districts' public nuisance and negligence claims were not legally cognizable under the laws of the same jurisdictions—and considering identical factual allegations—confirms that these are pure questions of law.

*First*, the School Districts entirely ignore the legal question controlling their public nuisance claim—namely, whether a federal court should expand a state's law to encompass a public nuisance claim that (i) has no nexus to defendants' use of land and (ii) concerns alleged widespread social problems purportedly caused by the distribution of products or services.  Whether such a claim is legally cognizable in the absence of any state law authority recognizing such an expansion is undoubtedly a pure question of law.  The School Districts identify questions of fact (Opp. 7) in an attempt to muddy the waters, but the underlying legal question is antecedent—and unrelated—to those alleged fact issues.

*Second*, it cannot be disputed—and the School Districts do not dispute—that the question of whether a legal duty exists for the School Districts' negligence claim is also a pure question of law. The legal nature of this question is further bolstered by the role of the First Amendment in this case and whether it bars the imposition of a legal duty.  Indeed, this one question alone justifies certification. Courts have routinely certified questions presented by a First Amendment defense because a litigation could take a "decidedly different path" depending on the outcome of this question of law.  *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *2 (N.D. Cal. Apr. 27, 2017).[4]  The circumstances that justify review here will not result in a certification for review of every decision resolving a motion to dismiss a run-of-the-mill negligence claim.

*Third*, the School Districts seek to reframe the controlling legal question of whether their attempts to recover costs for providing mental healthcare treatment to students are impermissibly derivative.  Their argument amounts to a contention that they alleged sufficient facts to survive a motion to dismiss *on the assumption that the law is as they say it is*.  But the question raised is not one of

---

[4] *See also Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 931 (C.D. Cal. 2018), *aff'd sub nom.*, *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019) (similar); *Fazio v. City & Cnty. of San Francisco*, 125 F.3d 1328, 1330 (9th Cir. 1997) (similar); *Nat'l Ass'n of Afr.-Am. Owned Media*, 2016 WL 10647193, at *4–5 (similar).

factual sufficiency.  The question, instead, is whether a derivative injury is legally cognizable in light of binding Ninth Circuit precedent.  That is a pure question of law.

In short, each of the issues for which Defendants seek certification involve controlling questions of pure law, not mixed questions of law and fact.

### B.    Substantial Grounds for Difference of Opinion Exist.

#### 1.    Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts' Public Nuisance Claims May Proceed.

The School Districts do not dispute that there is an absence of state authority recognizing the type of broad public nuisance claims the School Districts assert, or that such claims expand beyond the bounds of traditional tort liability.  *See* Opp. 9–10.  Instead, the School Districts misconstrue the basis of Defendants' Motion, asserting that Defendants "seek to impose new limitations on the School Districts' public nuisance claims *with no basis in state authority*."  *Id.* 10 (alteration in original).  In so arguing, the Districts flip the *Erie* doctrine on its head.  Defendants seek review of the Court's ruling because the Court allowed novel public nuisance claims to proceed in the *absence of clear state authority recognizing them*.  As the Court itself acknowledged, the vast majority of states at issue "have not directly addressed" such nuisance theories.  Order at 3–4; *see also id.* at 13.  Reasonable jurists could disagree as to whether this Court, sitting in diversity, should have permitted the School Districts' expansive public nuisance claims to proceed merely because no state authority in those jurisdictions expressly prohibited them.

The School Districts have no answer to the case law marshalled in the Motion (Mot. 8–9) establishing that federal courts "should hesitate prematurely to extend the law in the absence of an indication from the state courts or the state legislature that such an extension would be desirable."  *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (alterations omitted).  Such cases embody the principles of *Erie*: a "federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications [that] may commend themselves to the federal court, but [that] have not commended themselves to the State in which the federal court sits."  *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975).  This Court itself acknowledged that others in this Circuit have held that "a federal court sitting in diversity should in general take a restrictive approach on unclear issues

5

of state law." Order at 8 (citing *Davidson v. Apple, Inc.*, 2017 WL 3149305, at \*18 (N.D. Cal. July 25, 2017)).

Tellingly, the School Districts do not address any of these cited authorities, instead relying predominantly on just one, inapposite Ninth Circuit case, *Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010). *See* Opp. 8, 10. The Ninth Circuit in *Couch* determined that there was *no* substantial ground for difference of opinion because the district court had resolved the underlying motion by relying on four "leading California" appellate cases addressing the issue, with "no California law to the contrary." 613 F.3d at 632.[5] That is a sharp difference from these cases, where there is no state law at all recognizing the underlying claims. Similarly, the School Districts cite *In re Snap Inc. Sec. Litig.*, 2018 WL 3816764 (C.D. Cal. Aug. 8, 2018), a case where there was no substantial ground for difference of opinion because "the overwhelming majority of the courts in this and other Circuits" agreed on the issue. *Id.* at \*2.

These cases merely prove Defendants' point. This Court concluded that the state appellate courts in 13 jurisdictions have *not* addressed the pertinent questions of public nuisance law, including (1) whether public nuisance law requires a nexus with defendants' use of land or property and (2) whether nuisance may extend to claims based on the marketing or dissemination of consumer products or services. Order at 4, 13; *see* Mot. 7–8. In fact, the only six jurisdictions whose appellate courts have considered such claims *rejected* them. Order at 9, 11; *see* Mot. 7–8.[6]

---

[5] Given the amount of decisions adjudicating the issue presented in *Couch,* the district court there recognized that "its legal ruling did *not* present a legal question on which there is a substantial ground for difference of opinion," but it still incorrectly certified its ruling for interlocutory review based on "interests of comity," which is "not one of [the federal courts'] statutory bases for jurisdiction over less than final judgments." 611 F.3d at 634 (emphasis added).

[6] The School Districts gesture to *In re JUUL Labs, Inc., Mktg., Sales Practices, and Prod. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020), a single case that "permitted certain public nuisance claims in the absence of state case law to the contrary," Order at 8, and to *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420 (D. Md. 2019). In *Exxon Mobile*, the court permitted a public nuisance claim to proceed after concluding that Maryland courts have generally rejected the "exclusive control" limitation to such claims. 406 F. Supp. 3d at 468. Setting aside whether *Exxon Mobile* is actually analogous to the circumstances presented here, the School Districts' suggestion that two courts may have chosen to entertain new theories of liability in the absence of state law permitting them only further demonstrates that reasonable jurists could disagree as to whether the *Erie* doctrine allows federal courts sitting in diversity to recognize such claims.

And while the School Districts are wrong in flipping the *Erie* presumption on its head by suggesting that expanding public nuisance law is permissible as long as there is "no basis in state authority" for prohibiting such claims, Opp. 10, they are also incorrect because there *are* bases in state law for rejecting their claims.  As noted in the Motion, not only does the latest Restatement expressly disfavor such an extension of public nuisance liability in this context, *see* Order at 18 (citing Public Nuisance Resulting in Economic Loss, Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmts. b, g (2020)), but six of the seven state supreme courts to have considered public nuisance claims similar to those brought by the School Districts have also rejected them.  *See* Mot. at 8 & n.6.  The absence of the extension of public nuisance law in those states is itself also a basis for concluding that the state's law does not expand as far as the School Districts urge.  Thus, there are multiple strong reasons to believe that the states that have not yet squarely addressed these expansive public nuisance claims would ultimately reject them, further demonstrating a substantial ground for difference of opinion.

With respect to California and Florida specifically, the substantial ground for difference of opinion over whether Plaintiffs' public nuisance claims are legally valid is not, as Plaintiffs contend, based "entirely on Judge Kuhl's non-binding opinion."  Opp. 10.  Judge Kuhl's contrary opinion on identical school district claims is certainly conclusive evidence that "other courts have, in fact, disagreed" with this Court's holdings.  *Brickman*, 2017 WL 1508719, at *3 (citation omitted).  But Judge Kuhl's is not the only one.  This Court itself recognized that there is "a split in authority … in California" on the public nuisance claim and that "three California Court of Appeal cases found differently" than this Court and the Ninth Circuit in *Ileto*.  Order at 14.  The same is true for Florida, another jurisdiction in which this Court recognized there is "competing authority."  *Id.* at 4.[7]  The

---

[7] Plaintiffs' cited cases are therefore all distinguishable.  In *Couch* and *Steshenko*, the moving party had not cited *any* authority contrary to the decision of the district court.  *See Couch*, 611 F.3d at 633 ("[D]efendants have not provided a single case that conflicts with the district court's construction or application of [a California statute].")"; *Steshenko v. Gayard*, 2014 WL 7204784, at *2 (N.D. Cal. Dec. 16, 2014) ("*every other court to have addressed this issue* has concluded" the same way as the district court) (emphasis added)).  And in *United States v. $209,815 in United States Currency*, 2015 WL 537805, at *2 (N.D. Cal. Feb. 9, 2015), the party had cited only non-binding authority from other circuits, whereas *binding* precedent in the Ninth Circuit "foreclosed" his legal argument.  In contrast, this Court expressly found that *Ileto* is *non*-binding authority.  It simply noted that it "provides more *deference* to the Ninth Circuit's approach in *Ileto*."  Order at 14 n.12 (emphasis added).

7

weight of that competing authority favors Defendants' position; indeed, the *only* Florida authority favors Defendants' position and is contrary to the Court's ruling here. Mot. 10–11.

In short, it cannot be disputed that substantial ground for difference of opinion exists on the viability of the School Districts' public nuisance claims in California, Florida, and the remaining states.

> ### 2. Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts' Negligence Claims May Proceed.

In opposing Defendants' Section 1292(b) motion concerning the School Districts' negligence claim, the School Districts again mischaracterize disputes as about the application of settled law to facts, rather than disputes over pure questions of law. Those arguments, again, are meritless.

Defendants identified numerous cases, Mot. 12-14, that show that reasonable jurists might disagree—indeed, *have* disagreed—about how to resolve the legal questions underlying the School Districts' negligence claim. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). As Defendants explained, *Modisette v. Apple Inc.* is a clear example of an existing difference of opinion in which this Court is on one side and the courts of California are on another. *See* Mot. 13–14; 30 Cal. App. 5th 136 (2018). There, the California Court of Appeal rejected the notion that foreseeability alone suffices to impose a duty where the source of plaintiff's alleged harm is a third-party user of a defendant's service. 30 Cal. App. 5th at 144. The School Districts' attempt to manufacture factual distinctions from that case is unavailing. Opp. 13. The School Districts contend that the *Modisette* opinion turned on legislative decisions and public policies not present in these cases. But just as the *Modisette* court explained how the legislature had not banned all cell-phone use in moving vehicles despite some dangerous use being foreseeable, here, the California legislature "has elected not to ban" social-media services, instead "choosing to allow" social-media use. *See* 30 Cal. App. 5th at 150. Similarly, the public policy in favor of the First Amendment expression facilitated by Defendants' services is at least as strong as any public-policy justification for allowing mobile-phone usage while operating a vehicle. *See id.*

Indeed, Defendants identified a significant (and growing) body of case law enjoining, on First Amendment grounds, the enforcement of statutes that seek to regulate social-media services. Mot. 14 (collecting cases). The School Districts seek to hold Defendants liable for many of the same aspects

8

of Defendants' services that those courts have ruled are protected by the First Amendment.  Those rulings—at odds with this Court's determination that the First Amendment does not bar the imposition of a duty—reflect a "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).

That is why the School Districts again miss the mark in contending that Judge Kuhl's opinion reflects merely a different application in the JCCP cases of the same underlying legal rule this Court applied.  *See* Opp. 14.  There, Judge Kuhl—assessing materially identical allegations by plaintiffs identically situated to the School Districts here—concluded that California law does not impose a tort duty of care to safeguard third parties and that doing so would allow "any company that causes mental or emotional harm through interactions with a customer [to] be liable to any individuals or entities that are then harmed by that customer."  JCCP Order at 19.  Judge Kuhl's holding establishes that reasonable jurists *did*, in fact, disagree on the resolution of the *same* issues.  *See Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017) ("One of the best indications that there are substantial grounds for disagreement on a question of law" is where, as here, "other courts have, in fact, disagreed.").  Judge Kuhl's order, in short, is not a reflection of the application of a single, settled rule to different sets of facts, but a reflection of a fundamental disagreement about the law itself in California (and Florida).

The School Districts would read Section 1292(b) review out of existence.  They argue both that cases that are factually distinguishable are inapposite and do not support 1292(b) review but also that cases that are factually identical do not support review because those cases merely reflect divergent *application* of the underlying legal rule, no matter how differently the courts involved articulate that rule.  That heads-I-win, tails-you-lose position cannot be credited.  Because Defendants have identified substantial grounds for difference of opinion on the controlling legal questions underlying the School Districts' negligence claim, this Court should certify its Order for interlocutory appeal.

### 3. Plaintiffs Fail To Show That There Are No Substantial Grounds for Difference of Opinion with the Conclusion That School Districts May Recover Increased Health Care Costs.

Contrary to the School Districts' arguments, the Ninth Circuit's decision in *Association of Washington Public Hospital Districts v. Philip Morris, Inc.*, 241 F.3d 696 (9th Cir. 2001) establishes a substantial ground for difference of opinion.

9

The School Districts have argued that *Washington Public Hospital Districts* is distinguishable because that case involved "pass-through" costs, and this Court accepted that argument. *See* Dkt. 1267 at 21. Defendants do not now, as the School Districts contend, seek to relitigate that issue before this Court, but the reasoning of *Washington Public Hospital Districts* demonstrates at a minimum that there is substantial ground for difference of opinion on that argument. For the unrebutted reasons set forth in Defendants' Motion, reasonable jurists could disagree with this Court's conclusion that the health care costs that the hospital districts sought to recover in *Washington Public Hospital Districts* are distinguishable from the mental health care costs that the School Districts seek to recover here. Mot. 16. In both cases, the costs were "*directly* borne by" the districts. Opp. 16; *see Washington Public Hospital Districts*, 241 F.3d at 700 ("The Hospital Districts commenced this action against the Tobacco Firms to recover *their increased costs* for treating their patients' tobacco-related illnesses…." (emphasis added)). Just as the hospital districts alleged that defendants' conduct caused them to incur increased costs to provide health care to treat their patients, the School Districts allege that Defendants' conduct caused them to incur increased costs to provide mental health care services to treat their students. Given the Ninth Circuit's holding, there is a substantial ground for difference of opinion as to whether such claims are impermissibly derivative and should be dismissed as a matter of law, *see id.* at 703, 707—irrespective of whether, as the School Districts allege, Defendants "targeted" them. Opp. 17.

### C.    Interlocutory Review May Materially Advance the Ultimate Termination of the Litigation.

The School Districts fail to overcome Defendants' showing that an immediate appeal could materially advance the ultimate resolution of these MDL proceedings.

Plaintiffs are wrong that "the multidistrict nature of this litigation" is not a relevant consideration. The Ninth Circuit has held that, in "multiparty negligence cases, *particularly cases involving multidistrict litigation*," interlocutory review "serve[s] the congressional purposes underlying § 1292(b)." *Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) (emphasis added) (relying in part on the "multidistrict, multiparty" status of case to accept mixed question of law and fact for immediate appeal). The reasons for this are obvious: resolving core legal questions that will necessarily

10

impact and clarify the scope of hundreds of cases in one fell swoop will advance the overall litigation more than undertaking the lengthy process of trying individual cases and waiting for whatever appellate guidance those individual cases might or might not provide for the run of cases consolidated in this MDL.

For these same reasons, Plaintiffs are wrong to suggest that an immediate appeal would not materially advance the litigation because substantial discovery has already taken place. Even following anticipated trials in these cases, the absence of a determination by the Court of Appeals regarding whether Defendants' overriding legal challenges have merit could be a meaningful impediment to exploring resolution. *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (recognizing that interlocutory review to address cross-cutting issues is appropriate in these circumstances); *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 3326850, at *6 n.5 (N.D. Ala. June 12, 2018) (similar).

It is unclear when the first School District bellwether trial will occur and, even then, there is no guarantee that any one trial will provide appellate clarity regarding the threshold legal defenses that Defendants believe are dispositive. For instance, a grant of summary judgment for Defendants or a defense verdict at trial likely would not provide a vehicle for appellate review of these threshold legal issues. Nor even is it certain that an appeal from a plaintiff trial verdict would do so, as there may be other defects that require remand for a new trial before resolution of those legal issues. And, in any event, a post-trial appellate ruling could be years away. Accordingly, significant time, effort and expense in the overall effort to resolve the hundreds of separate school district claims pending in this MDL would be saved by facilitating quicker appellate review of these threshold legal issues in parallel with the existing bellwether trial process.[8]

Next, the School Districts are simply wrong to assert that Defendants fail to explain how interlocutory review would "streamline discovery" and the litigation. *See* Mot. 18-19. If, for instance,

---

[8] The School Districts' attempts to distinguish *In re Cintas Corp. Overtime Pay Arb. Litig.*, 2007 WL 1302496 (N.D. Cal. May 2, 2007) are unavailing. There, the court held that "certification is particularly appropriate in the context of MDL proceedings," explaining that an immediate appeal to the Ninth Circuit could avoid burdening the MDL court, transferor courts, and multiple courts of appeals. *See id.* at *2, *3. Contrary to the School Districts' suggestion, the fact that the threshold legal question there was jurisdiction was not relevant to that conclusion.

Defendants are right that the School Districts may not recover based on alleged harms incurred to provide mental health treatment to their students, the resulting narrowing of Plaintiffs' cognizable harms would streamline discovery, expert work, summary judgment motions, and trial preparation in all future cases. Similarly, a rejection of the School Districts' public nuisance claims would render unnecessary in all future cases the discovery, expert work, summary judgment motions and trial preparation regarding an "abatement" remedy.

Plaintiffs' assertion that "federal appellate review of state-law questions … cannot advance this litigation" likewise misses the mark. As an initial matter, several of the legal issues for which Defendants seek review—such as whether this Court correctly applied *Erie* principles in expanding the public nuisance doctrine or the First Amendment in holding that Defendants owe the School Districts tort duties—are *not* state law issues. Moreover, courts often grant Section 1292(b) certification to orders presenting unsettled questions of state law. *E.g.*, *MCI Commc'ns Servs., Inc. v. Skanska-Traylor-Shea,* 2021 WL 2170333, at *3 (C.D. Cal. May 18, 2021). That the Ninth Circuit might decide to certify certain issues to state supreme courts does not mean that an immediate appeal could not materially advance this litigation, as any clarification from the state supreme courts would likewise advance this litigation (and others). In any event, how the Ninth Circuit may ultimately decide unresolved issues of state law—including whether to certify questions of state law to the state supreme court—is best determined by the Ninth Circuit itself and is not relevant in resolving the instant Section 1292(b) motion.

Finally, as the Court is aware, Judge Kuhl issued an opinion on four "representative" school district cases, whose reasoning is broadly applicable to the claims of all school districts, holding that each of the representative school districts' public nuisance and negligence claims failed as a matter of law. Since then, over 400 school district plaintiffs have sought leave of court to dismiss their claims in the JCCP and re-file them in this MDL, precisely because of this Court's ruling. *See* Exhibit A; *supra* n.1. Achieving prompt appellate clarity on the threshold legal issues raised in this Motion— where this Court and the JCCP have reached diametrically opposite conclusions—may help to avoid this sort of blatant forum shopping and gamesmanship by school districts and, thus, avoid imposing further (and perhaps unnecessary) burdens on this Court's time and effort.

### III.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening brief, Defendants respectfully request that the Court certify its Orders of October 24, 2024 and November 15, 2024 Granting in Part and Denying in Part Motions to Dismiss (Dkts. 1267, 1332) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

1    Dated: January 28, 2025                     Respectfully submitted,

2

3                                                **COVINGTON & BURLING LLP**

4
                                                 */s/ Phyllis A. Jones*
5                                                _____
                                                 Christian J. Pistilli, *pro hac vice*
6                                                  cpistilli@cov.com
                                                 Paul W. Schmidt, *pro hac vice*
7                                                  pschmidt@cov.com
                                                 Phyllis A. Jones, *pro hac vice*
8                                                  pajones@cov.com
                                                 COVINGTON & BURLING LLP
9                                                One CityCenter
                                                 850 Tenth Street, NW
10                                               Washington, DC 20001-4956
                                                 Telephone: + 1 (202) 662-6000
11                                               Facsimile: + 1 (202) 662-6291

12
                                                 Emily Johnson Henn (State Bar No. 269482)
13                                                 ehenn@cov.com
                                                 COVINGTON & BURLING LLP
14                                               3000 El Camino Real
                                                 5 Palo Alto Square, 10th Floor
15                                               Palo Alto, CA 94306
                                                 Telephone: + 1 (650) 632-4700
16                                               Facsimile: +1 (650) 632-4800

17
                                                 *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
18                                               *Facebook, Inc.; Facebook Holdings, LLC;*
                                                 *Facebook Operations, LLC; Facebook Payments,*
19                                               *Inc.; Facebook Technologies, LLC; Instagram,*
                                                 *LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*
20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) —
CASE NO. 4:22-MD-03047-YGR

1

**KING & SPALDING LLP**

2

*/s/ Geoffrey M. Drake*

3

Geoffrey M. Drake, *pro hac vice*
  gdrake@kslaw.com

4

TaCara D. Harris, *pro hac vice*
KING & SPALDING LLP

5

1180 Peachtree Street, NE, Suite 1600

6

Atlanta, GA 30309-3521
Telephone: (404) 572-4600

7

Facsimile: (404) 572-5100
Email: gdrake@kslaw.com

8

        tharris@kslaw.com

9

Kristen R. Fournier, *pro hac vice*
KING & SPALDING LLP

10

1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601

11

Telephone: (212) 556-2100
Facsimile: (212) 556-2222

12

Email: kfournier@kslaw.com

13

David P. Mattern, *pro hac vice*

14

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900

15

Washington, DC 20006-4707
Telephone: (202) 737-0500

16

Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

17

Bailey J. Langner (SBN 307753)

18

KING & SPALDING LLP

19

50 California Street, Suite 3300
San Francisco, CA 94111

20

Telephone: (415) 318-1200
Facsimile: (415) 318-1300

21

Email: blangner@kslaw.com

22

23

24

25

26

27

28

15

DEFENDANTS' REPLY IN SUPPORT OF MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) —
CASE NO. 4:22-MD-03047-YGR

FAEGRE DRINKER LLP

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson, *pro hac vice*
  andrea.pierson@faegredrinker.com
Amy Fiterman, *pro hac vice*
  amy.fiterman@faegredrinker.com
Faegre Drinker LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000


*Attorneys for Defendants TikTok Inc., ByteDance*
*Inc., ByteDance Ltd., TikTok Ltd., and TikTok LLC*


MUNGER, TOLLES & OLSEN LLP

/s/ Jonathan H. Blavin
Jonathan H. Blavin (State Bar No. 230269)
  Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-3089
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077

Rose L. Ehler (State Bar No. 296523)
  Rose.Ehler@mto.com
Victoria A. Degtyareva (State Bar No. 284199)
  Victoria.Degtyareva@mto.com
Ariel T. Teshuva  (State Bar No. 324238)
  Ariel.Teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Lauren A. Bell, *pro hac vice*
  Lauren.Bell@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone:  (202) 220-1100

16

Facsimile:  (202) 220-2300

*Attorneys for Defendant Snap Inc.*

**WILLIAMS & CONNOLLY LLP**
*/s/ Ashley W. Hardin*
Joseph G. Petrosinelli (*pro hac vice*)
Ashley W. Hardin (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Telephone:      +1 202 434 5900
Facsimile:      +1 202 434 5029
Email: jpetrosinelli@wc.com
Email: ahardin@wc.com

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
*/s/ Brian M. Willen*
Brian M. Willen, *pro hac vice*
  bwillen@wsgr.com
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Lauren Gallo White (State Bar No. 309075)
  lwhite@wsgr.com
Carmen Sobczak (State Bar No. 342569)
  csobczak@wsgr.com
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Christopher Chiou (State Bar No. 233587)
  cchiou@wsgr.com
Matthew K. Donohue (State Bar No. 302144)
  mdonohue@wsgr.com
Wilson Sonsini Goodrich & Rosati
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

17

1

**ATTESTATION**

2          I, Phyllis A. Jones, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to

3   the filing of this document has been obtained from each signatory hereto.

4

5   DATED:          January 28, 2025          By:    _/s/ Phyllis A. Jones_
6                                                    Phyllis A. Jones

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOT. TO CERTIFY UNDER 28 U.S.C. § 1292(B) —
CASE NO. 4:22-MD-03047-YGR