Case No. 25-584

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*In re* THE PEOPLE OF THE STATE OF CALIFORNIA

*Petitioner.*

THE PEOPLE OF THE STATE OF CALIFORNIA

*Petitioner - Plaintiff,*

– v. –

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA,

*Respondent,*

THE PEOPLE OF THE STATE OF CALIFORNIA, et al.,

*Real-Parties-In-Interest – Plaintiffs,*

– v. –

META PLATFROMS INC., et al.,

*Real-Parties-In-Interest – Defendants.*

## MOTION TO INTERVENE/JOIN THE STATE OF CALIFORNIA'S
## PETITION FOR A WRIT OF MANDAMUS

PHILIP J. WEISER
Attorney General

SHANNON STEVENSON
Solicitor General
  *Counsel of Record*

Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
Email: Shannon.Stevenson@coag.gov

KRISTA BATCHELDER
Deputy Solicitor General

DANNY RHEINER
Assistant Solicitor General

LANE TOWERY
Assistant Attorney General Fellow

*Attorneys for State of Colorado*

*(Additional counsel on signature page)*

January 29, 2025

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ...................................................... XIII

INTRODUCTION ................................................................................... 1

RELIEF SOUGHT .................................................................................. 1

ISSUE PRESENTED ............................................................................... 2

FACTS NECESSARY TO UNDERSTAND THE ISSUE

   PRESENTED BY THE PETITION ..................................................... 2

REASONS WHY THE WRIT SHOULD ISSUE ........................................... 3

  I.  The Order is clearly erroneous as a matter of law. ........................... 3

    A. The order misapplies this Court's *Citric Acid* test.......................... 3

    B. The Order erroneously concludes that each State AG sues as

       a representative of all state government, which it can bind

       and control. ...................................................................... 6

    C. Lawyers do not have a right to obtain their clients' documents

       on demand. ....................................................................... 12

  II. The magistrate judge erroneously interpreted the laws of states

     with elected AGs. ................................................................ 13

  III. The magistrate judge erroneously interpreted the laws of

     states with appointed AGs. ..................................................... 32

CONCLUSION....................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

*Attorney General Jeff Landry v. Governor John Bel Edwards.*, 2021 WL 5984187 ................................................................. 19

*B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024) ............. 30

*Blumenthal v. Barnes*, 261 Conn. 434 (2002) ............................................. 15

*Brown v. Barkley*, 624 S.W.2d 616 (Ky. 1982) .......................................... 18

*Cavalry SPV I, LLC v. Morrisey*, 752 S.E.2d 356 (W. Va. 2013) ............... 31

*Colorado v. Warner Chilcott Holdings Co. III*, No. CV 05-2182, 2007 WL 9813287 (D.D.C. May 8, 2007) ....................................... 8, 13

*Commonwealth ex rel. Hancock v. Paxton,* 516 S.W.2d 865 (Ky. 1974) 18, 19

*Conn. Comm'n on Special Revenue v. Conn. Freedom of Info. Comm.*, 387 A.2d 533 (1978) .................................................................. 15

*Envtl. Prot. Agency v. Pollution Control Bd.*, 69 Ill. 2d 394 (1977) ...... 16, 17

*Holcomb v. Bray*, 187 N.E. 3d 1268 (Ind. 2022) ........................................ 17

*Humphrey on Behalf of State v. McLaren*, 402 N.W.2d 535 (Minn. 1987) ........................................................................................ 21

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ......................... 3, 4, 6

*In re Perle*, 725 F.3d 1023 (9th Cir. 2013) ................................................. 12

*Johnson Bros. Cont. v. Blevins*, 190 Wash. App. 1015 (2015) .................... 30

*Koschkee v. Evers*, 2018 WI 82 ................................................................... 31

*Lobisch v. United States*, No. CV 20-00370 HG-KJM, 2021 WL 6497240 (D. Haw. Aug. 19, 2021) ............................................. 34

*Lund v. Pratt*, 308 A.2d 554 (Me. 1973) ....................................... 34

*Martin v. Thornburg*, 359 S.E.2d 472 (N.C. 1987) ..................................... 23

*Matter of Muse*, 956 N.W.2d 1 (Minn. Ct. App. 2021) ................................. 21

*New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006) ........................................................ 8, 22

*People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324 (Cal. Ct. App. 2004) .................................................................. 7

*People ex rel. Scott v. Briceland*, 65 Ill. 2d 485 (1976) ................................ 17

*Ramirez v. Commonwealth*, 20 Va. App. 292 (1995) .................................... 28

*Salazar v. Davidson*, 79 P.3d 1221 (Colo. 2003) ......................................... 14

*Shefa v. Ellison*, 968 N.W.2d 818 (Minn. 2022) .......................................... 21

*State ex rel. Brnovich v. Ariz. Bd. of Regents*, 476 P.3d 307 (Ariz. 2020) ..................................................................... 13

*State ex rel. Caryl v. MacQueen*, 385 S.E.2d 646 (W. Va. 1989) ........... 30, 31

*State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W. Va. 2013) .................................................................. 31

*State ex rel. Fahlgren Martin, Inc. v. McGraw*, 438 S.E.2d 338 (W. Va. 1993) .................................................................. 30

*State ex rel. Johnson v. Bauman*, 7 Or. App. 489, 492 P.2d 284 (Or. App. 1971) ................................................................ 24

*State ex rel. McGraw v. Burton*, 569 S.E.2d 99 (W. Va. 2002) ................... 30

*State ex rel. Peterson v. City of Fraser*, 254 N.W. 776 (Minn. 1934) ........... 21

*State v. City of Oak Creek*, 2000 WI 9 ........................................................ 31

*State v. Johnson & Johnson*, King Co. Sup. Ct. No. 16-2-12186-1
    (Mar. 10, 2017) ....................................................................................... 29

*State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428 (R.I. 2008) ......................... 26

*State v. TVI, Inc.*, King Co. Sup. Ct. No. 17-2-32886-3 (Mar. 7, 2019) ....... 29

*Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197 (Me. 1989) ................. 35

*United States v. Am. Express Co.*, No. 10CV04496, 2011 WL
    13073683 (E.D.N.Y. July 29, 2011) ......................................................... 7

*United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314 (D.D.C. 1978) ....... 9

*United States v. Int'l Union of Petroleum & Indus. Workers, AFL-
    CIO*, 870 F.2d 1450 (9th Cir. 1989) ........................................................ 4

## STATUTES

15 U.S.C. § 6504 ........................................................................................... 15

A.R.S. § 41-192(A)(1) (2024) ....................................................................... 13

A.R.S. § 41-192(A)(5) (2024) ....................................................................... 13

A.R.S. § 41-192(A)(6) (2024) ....................................................................... 13

A.R.S. § 41-193 (2024) ................................................................................. 14

C.R.S. § 24-1-102–138 (2024) ...................................................................... 14

C.R.S. § 24-31-101(1)(i)(II) (2024) .............................................................. 14

C.R.S. § 24-31-102 (2024)...........................................................................14

C.R.S. § 24-37-102 (2024)...........................................................................14

C.R.S. § 24-47-101 (2024)...........................................................................14

C.R.S. § 27-50-102 (2024)...........................................................................14

C.R.S. § 6-1-103 (2024) ...............................................................................14

Conn. Gen. Stat. § 3-125 (2024)..................................................................15

Conn. Gen. Stat. § 42-110m (2024)..............................................................15

Del. Code Ann. tit. 29, § 2508(b) (2024) .....................................................16

Ind. Code § 24-5-0.5-4(c) (2024) .................................................................17

Ind. Code § 4-3-6 (2024) ..............................................................................17

Ind. Code § 4-6-1-2 (2024) ...........................................................................17

Ind. Code § 4-6-3-2(a) (2024).......................................................................17

Ind. Code § 4-6-4-1 (2024) ...........................................................................17

Ind. Code § 4-6-5-3 (2024) ...........................................................................17

K.S.A. 75 (2024) ..........................................................................................18

Ky. Rev. Stat. § 12.040 (2024) .....................................................................18

Ky. Rev. Stat. § 15.020 (2024) .....................................................................18

Ky. Rev. Stat. § 367.120 (2024) ...................................................................19

Ky. Rev. Stat. § 367.160 (2024) ...................................................................19

La. R.S. 49:257(A) (2024) ........................................................................... 19

Minn. Stat. § 127A.05 (2024) ...................................................................... 21

Minn. Stat. § 8.15, subd. 3 (2024) ............................................................... 21

N.C.G.S. § 114-1 (2024) ............................................................................... 23

N.C.G.S. § 115C-19 (2024) .......................................................................... 23

N.C.G.S. § 143A-8 (2024) ............................................................................ 23

N.C.G.S. § 143B-10(f) (2024) ...................................................................... 23

N.C.G.S. § 143B-6(2) (2024) ....................................................................... 23

N.C.G.S. § 143B-6(9) (2024) ....................................................................... 23

N.C.G.S. § 143B-9(a) (2024) ....................................................................... 23

N.C.G.S. § 143C-2-1(a) (2024) .................................................................... 23

N.C.G.S. § 147-17 (2024) ............................................................................. 23

N.C.G.S. § 75-15 (2024) ............................................................................... 23

N.J. Stat. Ann. § 52:17A-4(d) (2024) .......................................................... 33

N.J. Stat. Ann. § 52:17A-4(g) (2024) .......................................................... 33

N.J. Stat. Ann. § 52:17A-4(h) (2024) .......................................................... 33

N.J. Stat. Ann. § 52:17B-120 (2024) ........................................................... 33

N.J. Stat. Ann. § 52:17B-124 (2024) ........................................................... 33

Neb. Rev. Stat. § 43-4202 (2024) ................................................................ 22

Neb. Rev. Stat. § 59-1608 (2024) ................................................................. 22

Neb. Rev. Stat. § 81-1103 (2024) ................................................................. 22

Neb. Rev. Stat. § 81-3114 (2024) ................................................................. 22

Neb. Rev. Stat. § 84-202 (2024) ................................................................... 22

Neb. Rev. Stat. § 87-303.05 (2024) .............................................................. 22

Ohio Rev. Code §107.13(A) (2024) .............................................................. 24

Ohio Rev. Code §109.02 (2024) .................................................................... 24

Ohio Rev. Code §121.02 (2024) .................................................................... 24

Ohio Rev. Code §121.03 (2024) .................................................................... 24

Or. Rev. Stat. § 180.020 (2024) .................................................................... 24

Or. Rev. Stat. § 180.060(1) (2024) ............................................................... 25

Or. Rev. Stat. § 180.060(9) (2024) ............................................................... 25

Or. Rev. Stat. § 180.210 (2024) .................................................................... 25

Or. Rev. Stat. § 180.220 (2024) .................................................................... 25

Or. Rev. Stat. § 180.510 (2024) .................................................................... 24

Or. Rev. Stat. § 646.605(5) (2024) ............................................................... 24

Or. Rev. Stat. § 646.632 (2024) .................................................................... 24

R.I. Gen. Laws § 42-72-8(b)(7) (2024) ........................................................ 26

R.I. Gen. Laws § 42-73-10 (2024) ............................................................... 26

S.D.C.L. §1-11-10 (2024) ................................................................... 27

Va. Code § 2.2-1 (2024) ..................................................................... 28

Va. Code § 2.2-109 (2024) ................................................................. 28

Va. Code § 2.2-5 (2024) ..................................................................... 28

Va. Code § 2.2-517(A) (2024) ............................................................ 29

Va. Code § 59.1-197 (2024) ............................................................... 29

Va. Code § 59.1-203 (2024) ............................................................... 29

Va. Code § 59.1-206 (2024) ............................................................... 29

W. Va. Code § 5-3-1 (2024) ............................................................... 30

W. Va. Code § 5-3-2 (2024) ............................................................... 30

Wash. Rev. Code § 28A.305.011(1) (2024) ....................................... 30

Wash. Rev. Code § 41.05.901 (2024) ................................................. 30

Wash. Rev. Code § 43.06.010 (2024) ................................................. 30

Wash. Rev. Code § 43.10.040 (2024) ................................................. 30

Wash. Rev. Code § 43.17.010 (2024) ................................................. 30

Wash. Rev. Code § 43.17.020 (2024) ................................................. 30

Wash. Rev. Code § 43.20.030 (2024) ................................................. 30

Wash. Rev. Code § 43.41.050 (2024) ................................................. 30

Wis. Stat. § 165.25(1m) (2024) .......................................................... 31

## OTHER AUTHORITIES

Delaware Senate Bill 295, 151st Gen. Assemb., (Del. 2022)
      https://legis.delaware.gov/BillDetail?LegislationId=109498..................16

H. 5100, 125th Sess., 2024–25 Appropriation Act Part 1B § 59.16 ...........27

*In re Advisory Comm. On Prof'l Ethics Op. 621*, 620 A.2d 880 (1992) .......33

*Opinion of the Justs.*, 112 A.3d 926 (Me. 2015)...........................................35

## RULES

Fed. R. App. 21(a)(1) ......................................................................................1

Fed. R. App. 21(b)(1) ......................................................................................1

Fed. R. App. 28(i) ...........................................................................................1

Fed. R. Civ. P. 34 ............................................................................................3

MODEL RULES OF PRO. CONDUCT r. 1.15A (AM. BAR ASS'N 2024)................30

MODEL RULES OF PRO. CONDUCT r. 1.2(a) (AM. BAR ASS'N 2024)................12

MODEL RULES OF PRO. CONDUCT r. 1.6 (AM. BAR ASS'N 2024) ....................32

## CONSTITUTIONAL PROVISIONS

Colo. Const. art. 4, § 3...................................................................................14

Colo. Const. art. IV 4, § 1..............................................................................14

Conn. Const. amend. I ....................................................................................14

Conn. Const. art. IV .......................................................................................14

Del. Const. art. III § 1.....................................................................................15

Ill. Const. art. V, § 1 .................................................................16

Ill. Const. art. V, § 2 .................................................................16

Ind. Const. art. 5, § 1 ................................................................17

Kan. Const. art. 1, § 1 ...............................................................18

Ky. Const. § 70 ...........................................................................18

Ky. Const. § 91 ...........................................................................18

Md. Const. art. II .......................................................................20

Md. Const. art. V .......................................................................20

Me. Const. art. IX, § 11 .............................................................34

Minn. Const. art. V, § 1 .............................................................21

N.C. Const. art. III, § 1 .............................................................23

N.C. Const. art. III, § 7 .............................................................23

N.Y. Const. art. IV § 1 ..............................................................22

N.Y. Const. art. V § 1 ...............................................................22

Neb. Const. art. IV, § 1 .............................................................22

Neb. Const. art. IV, § 6 .............................................................21

Neb. Const. art. VII, § 3 ...........................................................22

Ohio Const. art III § 5 ..............................................................23

Or. Const. art. V, Sec. 1 ...........................................................24

S.C. Const. art. I, § 8 .................................................................27

S.C. Const. art. VI § 7 ..............................................................27

Va. Const. art. V, § 1 ................................................................28

Va. Const. art. V, § 15 ..............................................................28

Va. Const. art. V, § 9 ................................................................28

Va. Const. art. V, §2 .................................................................28

Va. Const. art. V, §7 .................................................................28

W. Va. Const. art. VII, § 1 ........................................................30

Wash. Const. art. 20 § 1 ...........................................................29

Wash. Const. art. 3 § 1 .............................................................29

Wash. Const. art. 3 § 21 ...........................................................29

Wash. Const. art. 9 § 2 .............................................................29

Wis. Const. art. V, § 1 ..............................................................31

Wis. Const. art. V, § 3 ..............................................................31

Wis. Const. art. VI, § 1 .............................................................31

Wis. Const. art. VI, § 3 .............................................................31

Wis. Const. art. X, § 1 ..............................................................31

## STATEMENT OF RELATED CASES

The following related cases are pending in this court:

*People of the State of California v. Meta Platforms, Inc.*, 24-07032

*Personal Injury Plaintiffs v. Meta Platforms, Inc.*, 24-07037

*State of Colorado v. Meta Platforms, Inc.*, 24-07265

*Multistate Attorney General Plaintiffs v. Meta Platforms, Inc.*, 24-07300

*Personal Injury Plaintiffs v. Meta Platforms, Inc.*, 24-07304

*Personal Injury Plaintiffs v. TikTok LLC*, 24-07312

## INTRODUCTION

Pursuant to Fed. R. App. 28(i) the undersigned Attorneys General ("AGs") respectfully this joinder in the entirety of the California AG's Petition for a Writ of Mandamus and adopt those arguments in their entirety. In the alternative, the AGs request that the Court treat this pleading as their response in support of the California AG's Petition. Fed. R. App. 21(b)(1); *see also* Fed. R. App. 21(a)(1).

## RELIEF SOUGHT

Like California, the AGs ask this Court to order the district court to grant the AGs' objection to the magistrate judge's order ("Order"), which allowed Meta to obtain the documents of independent state agencies through party discovery. Also, like California, the AGs ask that the Order be stayed while the Court addresses this issue.

The Order is clearly erroneous as a matter of law and has wreaked havoc on the AGs' enforcement action against Meta—causing multiple states to drop out of the litigation and disrupting state government relations. It has placed the AGs in the untenable predicament of seeking cooperation from independent state actors that

they do not control in order to avoid sanctions threatened by Meta and the Court.

## ISSUE PRESENTED

Whether the magistrate judge's conclusion that the AGs can obtain the documents of independent state agencies on demand is clearly erroneous as a matter of law.

## FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED BY THE PETITION

The AGs have filed an enforcement action alleging that Meta violated their respective state's consumer protection laws by designing its social media platforms to induce excessive use by young users and by deceptively downplaying the health and safety risks of those platforms. The AGs further allege that Meta collected data from users under the age of thirteen in violation of the Children's Online Privacy Protection Act. During the course of this litigation, Meta requested that the AGs produce documents held by more than 270 independent nonparty state agencies—including state governors—through party discovery. These agencies are not parties to this lawsuit, had no role in the filing of this lawsuit, and have no right to any relief the AGs might

obtain in this lawsuit. Nevertheless, the magistrate judge granted

Meta's request, concluding that the AGs, even when acting in their

independent enforcement capacity, have legal control over the

documents of independent state agencies. The AGs timely objected to

the Order. Despite hearing argument on the objection, the district

court has yet to rule.

## REASONS WHY THE WRIT SHOULD ISSUE

## I.   The Order is clearly erroneous as a matter of law.

The Order is clearly erroneous as a matter of law for several

reasons: (1) it plainly misapplies this Court's standard for determining

legal control of documents; (2) it tramples over the principles of

federalism and state sovereignty by ignoring the role of independently

elected AGs; and (3) it misapprehends the nature of the attorney client-

relationship.

### A.   The order misapplies this Court's *Citric Acid* test.

In response to a valid discovery request, a party must produce

only what is within its "possession, custody, or control." Fed. R. Civ. P.

34. "Control is defined as the legal right to obtain documents upon

demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999)

(citation omitted). "Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents." *Id.* at 1108. "The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). The Order engages in improper burden shifting and fails to identify any vehicle by which the AGs could obtain agency documents.

*First*, the Order improperly shifted the burden and, rather than requiring Meta to establish that the AGs had control over agency documents, required the AGs to establish a lack of control. *See*, *e.g.*, App., p. 61 ("[T]here is no statutory, legal, or administrative rule cited which prohibits the Colorado Attorney General from accessing the documents of the state agencies at issue."). The fact that the AGs might not be legally *prohibited* from obtaining state agency documents does not mean that the AGs have the legal right to obtain those documents on demand. Because the magistrate judge never identified

4

any legal authority by which the AGs could obtain state agency documents, the Order was contrary to law.

*Second*, the Order erroneously held that AGs had control over agency documents because some AGs sometimes serve as outside counsel to state agencies. As discussed below, the conclusion ignored the dual executive structure of states and misapprehended the rights of lawyers representing their clients. And the subsequent discovery proceedings in this case have confirmed that the AGs do not have the right to obtain agencies' documents on demand. After the magistrate judge entered the Order, the AGs were not able to simply request relevant documents from state agencies and turn them over to Meta. Take New York, where the Governor is represented by independent outside counsel (despite the Order concluding the AG would represent agencies, App. at 170) and has taken the position that the Order "is inconsistent with the New York State Constitution and the New York Executive Law, which do not require the Executive Agencies to provide documents to Meta or the NYAG without issuance of a non-party subpoena." App. at 287. In light of that position, the New York AG took the extraordinary step of issuing Rule 45 subpoenas to two agencies to

facilitate production. *See, e.g.,* Dkt. No. 1495-1 at 19. That an AG was required to issue a subpoena against its own state government—a mechanism available to Meta from the beginning—is dispositive of the question of legal control.

Further, contrary to the magistrate judge's assumption, App. at 17–18, multiple agencies are not represented by AGs offices in this discovery dispute, but instead by independent outside counsel, including the agencies of Kansas, App. at 268, Kentucky, App. at 265, New York, App. at 284 Ohio, App. at 321, South Dakota, the South Carolina Governor, Dkt. No. 1390-1 at 1-4, and certain agencies in Arizona and Illinois, Dkt. No. 1430, p. 25.

The magistrate judge's order requiring the AGs to produce state agency documents is therefore "futile . . . because the [AGs] ha[ve] no certain way of getting those documents." *In re Citric Acid Litig.*, 191 F.3d at 1108.

### B. The Order erroneously concludes that each State AG sues as a representative of all state government, which it can bind and control.

As argued in California's petition, the dual executive structure of state governments' makes AGs independent of the rest of state

executive government. In addition, the Order failed to recognize that AGs serve two distinct and separate roles. On the one hand, AGs bring lawsuits, such as this one, in their independent enforcement capacities. On the other hand, some AGs are statutorily mandated to represent certain state agencies. AGs have different rights and obligations depending on the function they perform.

When AGs are exercising their independent enforcement authority, they are not acting as agency counsel and do not have any legal right to obtain agencies' documents. *See United States v. Am. Express Co.*, No. 10CV04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011) ("[T]he State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client."); *see also People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct. App. 2004)[1] ("[S]tate agencies . . . are distinct and separate governmental entities . . . that can be compelled to produce documents only upon a subpoena.").

Courts should defer to states' decisions, made in statute and constitution, to assign these dual roles to AGs. *Colorado v. Warner*

---

[1] While *Lockyer* is a California state court opinion, its reasoning applies to all AGs.

*Chilcott Holdings Co. III*, No. CV 05-2182, 2007 WL 9813287, at *4
(D.D.C. May 8, 2007) ("For reasons of federalism and comity, [courts]
give great deference to the State and its Legislature to define how
governmental entities are to be separate and distinct and how they
relate to one another as a whole." (citation omitted)). Specifically,
courts should respect that states have chosen to make AGs
independent elected officials, who have the right to bring enforcement
actions without seeking permission from their states' governors.
Relatedly, courts should respect that states have chosen to establish
executive branch agencies that report directly to those states'
governors—not to the AGs.

The Order fails to grapple with the how states have chosen to
structure their governments, instead holding that if one lawyer in an
AG's office represents an agency, the entire office—including lawyers
bringing independent enforcement actions—represents that agency. If
the Order is upheld, every state agency would be subject to
burdensome party discovery every time an AG initiated a consumer
protection action. *See New York ex rel. Boardman v. Nat'l R.R.
Passenger Corp.*, 233 F.R.D. 259, 266 (N.D.N.Y. 2006) (warning of

absurd, unduly burdensome, and untenable results if state agencies were subject to discovery requests any time the state brought a lawsuit). And if an agency justifiably refused to provide documents outside of established discovery procedures (i.e. Rule 45 subpoenas), the AG would be at risk for sanctions for failing to produce so-called "party" discovery. This would leave independent enforcement actions "vulnerable to a virtual veto by one or more independent [state] agencies." *United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1336 (D.D.C. 1978).

This concern is not hypothetical. Since the magistrate judge issued the order, six AGs—those of Florida, Georgia, Missouri, Michigan, Montana, and North Dakota—have dismissed, or are in the process of dismissing their claims against Meta.[2] In other words, agencies in those states have effectively exercised a virtual veto over those AGs' claims against Meta: forcing the prosecuting AGs to either risk sanctions for violating an unlawful order or dismiss the case.

---

[2] While the Florida AG dismissed its case in response to an adverse motion to dismiss ruling, the other five AGs are believed to have dismissed their complaints due to the state agency order and the burden it placed on their states' governments.

And in states which have not dismissed their cases, the Order has led to absurd results and sometimes intractable intergovernmental conflicts. In Kansas, for example, it precipitated a constitutional crisis between the AG and Governor. There, the AG attempted to break through an impasse by issuing a subpoena to the Governor, but the Governor deemed the subpoena invalid under Kansas law. The timing of discovery in this case made a lawsuit between the AG and the Governor an impracticality. In mid-December, the AG and Governor submitted dueling letters to the district court reflecting their competing positions on discovery. *See* App. at 268. Only when the AG facilitated retention of outside counsel for both the AG and Governor did document production begin.

Despite these facts, both the magistrate judge and the district court have repeatedly threatened sanctions against AGs and non-party agency counsel. Take, for example, South Carolina. There, the Governor—who has his own non-AG counsel—expressly declined to provide the AG with access to his office's documents. Dkt. No. 1390-1, at 1-4. The magistrate judge ordered the AG to publicly file on the case docket the name, contact information, and bar number of Governor

10

McMaster and two other attorneys employed by the Governor's Office
as the "counsel responsible for and representing the[] . . . state agencies
who have taken the position that they are entitled to refuse to comply
with the Orders issued in this case and that they are not subject to this
Court's jurisdiction in this action for purposes of discovery." App. at
252. On December 2, 2024, the AG complied with this demand, publicly
posting their bar numbers and contact information. Dkt No. 1390 at 1–
2. The court has further threatened to sanction the AGs, other elected
officials, and agencies for failing to comply with the Order. App. at
363:13-22; 364:14-16.

The magistrate judge made it abundantly clear to every single
prosecuting AG and every single one of the over 200 agencies identified
by Meta and their attorneys that maintaining their position as
independent entities and refusing to waive their rights while the
objection to the order was pending could not only be fatal to the case
but could have enduring negative professional implications.

Even if some AGs and their state agencies manage to survive
through document discovery, these problems are not going away. Meta
has now issued notices for 30(b)(6) depositions, served only on the

State AGs, that purport to require testimony on behalf of the entire
state, including independent agencies. The magistrate judge has
already indicated his agreement that requiring state AGs to produce
witnesses to testify on behalf of the entire state, including agencies, is
with his Order on control of documents. App. at 479.

### C. Lawyers do not have a right to obtain their clients' documents on demand.

The Order further erroneously concluded that "an attorney is
presumed to have control over documents in its client's possession."
App. at 31. This proposition is unsupported by Ninth Circuit caselaw
and mischaracterizes the attorney-client relationship. While a lawyer
has a duty to supervise even an uncooperative client's collection of
documents, there is no authority providing a lawyer with the legal
right to obtain their client's documents. Indeed, the professional duties
of lawyers prohibit them from forcibly taking their client's documents
and providing them to another party. *See* ABA Model Rule of
Professional Conduct 1.2(a) ("[A] lawyer shall abide by a client's
decisions concerning the objectives of representation and . . . shall
consult with the client as to the means by which they are to be
pursued."); *see also In re Perle*, 725 F.3d 1023, 1027 (9th Cir. 2013)

("Ordinarily, a lawyer is a client's agent."). Therefore, even if the AGs prosecuting this case represented the independent state agencies—which they generally do not—they would not have a right to obtain the agencies' documents on demand.

## II. The magistrate judge erroneously interpreted the laws of states with elected AGs.

In addition to the common arguments made above, the following AGs argue that the Order erroneously interpreted their respective state laws. *See Warner Chilcott Holdings Co. III*, 2007 WL 9813287, at *4 (courts should consider whether party requesting discovery has made a "showing of how, *state by state*, the office of the Attorney General and the . . . agency relate to one another such that, for discovery purposes, they may treated as the same entity." (emphasis added)).

**Arizona**: The Arizona AG's Office possesses no common law authority; its powers "must be found in statute." *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 476 P.3d 307, 310, ¶ 8 (Ariz. 2020). The Office may represent political subdivisions and other governmental entities in specific circumstances; no statute provides that the Office may obtain any state agency's documents. *See* A.R.S. § 41-192(A)(1), (5), & (6); *id.* §

41-193. Nor is there any constitutional provision, contractual agreement, established practice, or other arrangement that grants the AG a legal right to obtain documents upon demand.

**Colorado**: The Colorado AG is an independent elected official, separate from the rest of the executive branch. Colo. Const. art. 4, §§ 1, 3. The AG filed this case as a civil law-enforcement action in his independent capacity under the Colorado Consumer Protection Act and *not* in his representative capacity on behalf of any state agency. C.R.S. §§ 24-31-101(1)(i)(II), 6-1-103. The AG may exercise his independent law enforcement powers against even agencies that he may represent in other capacities because the AG brings suit "in the interests of the people to promote the public welfare." *Salazar v. Davidson*, 79 P.3d 1221, 1229–30 (Colo. 2003). None of the Colorado agencies identified by Meta are under the AG's control: they are distinct agencies, each managed by an executive director who reports to the Governor. §§ 24-1-102 through 138, 24-31-102, 24-37-102, 24-47-101, and 27-50-102, C.R.S.

**Connecticut**: The Connecticut AG is an independently elected state official. Conn. Const. art. IV and amend. I. Connecticut General

Statutes Section 3-125, which prescribes the AG's duties, does not

instill the AG with blanket authority to obtain documents controlled by

the Governor or executive branch agencies. *See Blumenthal v. Barnes*,

261 Conn. 434, 463 (2002). The AG represents "the broader interests of

the state" and can sue executive branch agencies, further supporting

the fact that the AG does not have control over agency documents. *See*

*Conn. Comm'n on Special Revenue v. Conn. Freedom of Info. Comm.*,

387 A.2d 533, 537 (1978). The AG brought this law enforcement action

in the name of the State of Connecticut pursuant to his statutory

authority to enforce federal children's online privacy protection law

and state consumer protection law.  *See* 15 U.S.C. § 6504; Conn. Gen.

Stat. § 42-110m. The AG does not assert claims on behalf of any state

agency.[3]

   **Delaware**: Delaware has a constitutionally divided executive

branch with the Governor established as the State's "supreme

executive." Del. Const. art. III § 1. The AG does *not* have a right of

---

[3] The Commissioner of the Department of Consumer Protection ("DCP") must
authorize the AG to bring Unfair Trade Practices Act enforcement actions. Conn.
Gen. Stat. § 42-110m. Even so, there exists no statute granting the AG control over
DCP documents. *See Barnes,* 261 Conn. at 463. Further, DCP is not a party here.

access to the documents of Delaware state agencies, or the Governor's Office, "for purposes of discovery in any civil actions brought by . . . the Attorney General." Del. Code Ann. tit. 29, § 2508(b). That bill was expressly enacted "to ensure that state agencies, . . . [and] officers, . . . will have the discovery protections afforded to non-parties in such litigation by applicable rules of civil procedure or state or federal law." Delaware Senate Bill 295, 151st Gen. Assemb., (Del. 2022) https://legis.delaware.gov/BillDetail?LegislationId=109498. Contrary to the statute's plain language and intent, the Order found that Section 2508(b), "simply provides that the Delaware [AG] cannot rely on this statute as a substitute for discovery in that action." App. at 69. This finding is clearly erroneous.

**Illinois**: The Illinois AG and the Governor are independently elected; they serve different roles, enjoy unique rights and responsibilities, and have control over separate governmental functions. *See* Ill. Const. art. V, §§ 1, 2. Illinois courts do not treat the State as a monolith and recognize the unique roles and capacities of the AG. *See Envtl. Prot. Agency v. Pollution Control Bd.*, 69 Ill. 2d 394, 401 (1977). The AG may sue state agencies, *People ex rel. Scott v.*

16

*Briceland*, 65 Ill. 2d 485, 503 (1976), and may represent two agencies in suit against each other, *Envtl. Prot. Agency,* 69 Ill. 2d at 401. Such rulings are inconsistent with the proposition that the AG and the rest of State government can be treated as a cohesive whole.

**Indiana**: The Indiana AG is a statutorily created independently elected office. Ind. Code § 4-6-1-2.  The Indiana Governor is a constitutional officer and directs the executive branch of government, including the identified agencies. Ind. Const. art. 5, § 1; Ind. Code § 4-3-6. The AG is charged with the duty of legal representation in litigation in the name of the State or any state agency but does not exert generalized control over the agencies or their documents. Ind. Code § 4-6-3-2(a); Ind. Code § 4-6-4-1. This action is brought under the AG's independent law enforcement authority to seek relief on behalf of consumers. It is not brought on behalf of any state agency, nor does this action seek any remedies on behalf of any state agency. Ind. Code § 24-5-0.5-4(c). The nonparty agencies identified by Meta have a mechanism for employing their own counsel, and representation by the AG is not strictly mandatory. *See* Ind. Code § 4-6-5-3; *Holcomb v. Bray*, 187 N.E. 3d 1268 (Ind. 2022).

**Kansas**: The Order is contrary to how the Kansas Executive Branch is organized. The Kansas AG is a distinct constitutional officer. Kan. Const. art. 1, § 1; *see also* K.S.A. Ch. 75. The AG does not control the Governor's Office or other state agencies and does not have legal authority to obtain those entities' documents without their consent. Despite their various other disagreements concerning this case, the AG, the Governor, and affected agencies all agree that the Order misunderstands the allocation of power within the Kansas state government.

**Kentucky**: The Kentucky AG and Governor are separately elected, independent, constitutional officers and the heads of the agencies at issue are appointed by the Governor. Ky. Const. § 91; Ky. Const. § 70; Ky. Rev. Stat. § 12.040. The AG is not "under the control or supervision of the Governor," and vice versa. *Brown v. Barkley*, 624 S.W.2d 616, 622 (Ky. 1982). To be sure, the AG is the "chief law officer of the Commonwealth." Ky. Rev. Stat. § 15.020. But Kentucky law distinguishes between "the Commonwealth, the body politic," and "its officers, departments, commissions, or agencies." *Commonwealth ex rel. Hancock v. Paxton,* 516 S.W.2d 865, 868 (Ky. 1974). The Attorney

18

General's "primary obligation" is to the former, "rather than to the
machinery of government." *Id.* at 867–68. The AG is responsible for
enforcing the Consumer Protection Act ("CPA") "to protect the public
interest and well-being of . . . the consumer public." Ky. Rev. Stat. §
367.120. CPA actions are therefore on behalf of the public, not the
government writ large or state agencies. And while "[a]ll departments,
agencies, officers and employees of the Commonwealth" are required to
cooperate with the AG in carrying out the CPA, "access to material
evidence and information" is only granted in two specific instances not
applicable here. Ky. Rev. Stat. § 367.160.

**Louisiana**: The Louisiana AG's Office has been in legal
opposition with state agencies in the past. For example, the AG's Office
and the Louisiana Governor's Office have sued each other multiple
times over the last 10 years. *See Attorney General Jeff Landry v.
Governor John Bel Edwards.,* 2021 WL 5984187. La. R.S. 49:257(A)
requires the AG to "represent the state and all . . . agencies . . . in all
litigation arising out of . . . tort or contract." The Order found that
consumer protection claims are torts and therefore, trigger La. R.S.
49:257(A). Even if this suit arises from a tort—which it does not—it

does not arise from a tort involving state agencies and, therefore, La. R.S. 49:257(A) does not apply.

**Maryland**: The Office of the Attorney General of Maryland (MOAG) brought this case solely in its own name and capacity, alleging only COPPA claims against Meta. The MOAG's claims were not brought by the State or on behalf of any state agency, nor could they be, as the right to allege a COPPA claim lies only with a state AG. Further, the AG and the Governor are separate constitutional officers. *See* Md. Const. arts. II, V. The AG has no control over the agencies identified by Meta, as those agencies report to the Governor. There is no statute that authorizes the MOAG to obtain documents from the Governor or executive agencies.[4]  MOAG is not enforcing any statute that the identified agencies are charged with implementing and MOAG lacks authority to compel those agencies to produce information. While the MOAG can *request* documents from the agencies, the MOAG does not have a legal right to obtain documents upon demand from those agencies.

---

[4] While the AG acts as legal advisor to certain agencies, such duty is fulfilled by attorneys who act only as counsel for a particular agency. The enforcement attorneys, who brought this action do not represent agencies.

**Minnesota**: The Minnesota Governor and AG are independent elected officials. Minn. Const. art. V, § 1. Only the Governor can compel agencies to act—including producing documents in their possession, custody, or control—because the Governor appoints agency commissioners who serve at his pleasure. *See, e.g.*, Minn. Stat. § 127A.05. In contrast, the AG has exclusive authority to determine what litigation to pursue on behalf of the public interest. *State ex rel. Peterson v. City of Fraser*, 254 N.W. 776, 778 (Minn. 1934). Sometimes the AG's is opposed to the Governor or an executive agency in litigation. *See, e.g.*, *Shefa v. Ellison*, 968 N.W.2d 818 (Minn. 2022); *Matter of Muse*, 956 N.W.2d 1 (Minn. Ct. App. 2021). Even when the AG acts in an outside counsel role for agencies, this representation is not mandatory, *see* Minn. Stat. § 8.15, subd. 3, and is handled by attorneys that are walled-off from the AG's public interest litigation. *See Humphrey on Behalf of State v. McLaren*, 402 N.W.2d 535 (Minn. 1987).

**Nebraska**: The "supreme executive power" and oversight of the executive branch is vested in the Governor. Neb. Const. art. IV, § 6. Each of the identified agencies is under the direction of the governor or

a governing board selected by the Governor. Neb. Const. art. VII, § 3;
Neb. Rev. Stat. § 43-4202, § 81-3114, § 81-1103. The Nebraska AG is
an *independently* elected constitutional officer. Neb. Const. art. IV, § 1.
The order misunderstands the structure of Nebraska's government. It
relies on the notion that other attorneys at the NE DOJ serve as legal
counsel to state agencies. Neb. Rev. Stat. § 84-202. However, the NE
DOJ did not bring this action as counsel to any state agency. Instead, it
brings claims under its independent authority to enforce consumer
protection laws. Neb. Rev. Stat. § 59-1608; § 87-303.05. In this role, the
NE DOJ acts in the interests of Nebraska's citizens, not in the
interests of any agency.

**New York:** The New York State constitution contemplates a
"separation of powers within the executive branch of the government."
*New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D.
259, 263 (N.D.N.Y. 2006). The AG and the Governor are separately
elected officials who operate independently of one another, with
separate powers, duties, and obligations. *See*, *e.g.*, N.Y. Const. art. IV §
1, art. V § 1.

**North Carolina**: State law establishes each of the identified agencies separately from the AG and places them, and their records, under the control of other independently elected constitutional officers. *See* N.C. Const. art. III, § 1; N.C.G.S. §§ 143C-2-1(a); 143B-9(a); 143B-6(2), (9); N.C. Const. art. III, § 7; N.C.G.S. § 115C-19. State law unmistakably grants the heads of these principal departments—not the Attorney General—"legal custody of all books, papers, documents and other records of the department." N.C.G.S. §§ 143A-8; 143B-10(f). The AG is a separately elected constitutional officer who oversees the NC DOJ and is empowered to bring consumer protection actions to vindicate the public interest. *See* N.C. Const. art. III, § 7; N.C.G.S. §§ 75-15, 114-1. Though NC DOJ attorneys represent state agencies in many matters, this representation does not give the AG access to and control of all agency documents. Moreover, the Governor can hire outside counsel, *Martin v. Thornburg*, 359 S.E.2d 472, 480 (N.C. 1987), and agencies may also rely on in-house counsel to handle routine tasks like responding to subpoenas, *see* N.C.G.S. § 147-17.

**Ohio**: The Ohio Governor and AG are separately elected officials with separate duties. *See* Ohio Const. art III § 5; Ohio Rev. Code

§109.02. The Governor appoints the heads of state agencies, who all serve at his pleasure. Ohio Rev. Code §121.02; Ohio Rev. Code §121.03. The Ohio AG has no oversight of these agencies. Further, the Governor may retain counsel other than from the AG for matters that affect his office's official business or in any challenge to constitution or statute that is an important matter of statewide concern. Ohio Rev. Code §107.13(A).

**Oregon**: The Oregon AG is an independently elected official, Or. Rev. Stat. § 180.020, who sues here under the Unlawful Trade Practices Act. The Act gives the AG the power to "bring suit in the name of the State of Oregon," Or. Rev. Stat. § 646.632, § 646.605(5), § 180.510, but no other agency or official has that power and none is a party to this action. The AG has certain statutory powers, as well as "the common law powers of that office, except where they are limited by statute or conferred upon some other official." *State ex rel. Johnson v. Bauman*, 7 Or. App. 489, 492 P.2d 284 (Or. App. 1971). Here, that limit is imposed by the Constitution, which confers chief executive power over other state agencies on the Governor. Or. Const. art. V, Sec. 1. While the AG has general control over civil actions in which the

State is a party, "[f]ull charge and control of all of the legal business" of state agencies, Or. Rev. Stat. § 180.210, § 180.220, and shall appear for the state "when required by the Governor or the legislature" or "when requested by any state officer, board or commission," the AG "may not appear…on behalf of an officer, agency, department board or commission without the consent" of that body. Or. Rev. Stat. § 180.060(1), (9). Other state agencies are not parties to this action. There is no statute or case that grants the AG authority to compel a state agency—even an agency he represents—to  provide documents in an action in which that agency is not a party.

**Pennsylvania**: The Pennsylvania Attorney General ("AG") is an independent agency.  71 P.S. § 732-201(a)("CAA"); See also *Com v. Carsia*, 517 A.2d 956, 958 (Pa. 1986). In this action, the agencies are represented by the executive branch's Office of General Counsel ("OGC"). The Commonwealth determined that it was in its best interests for OGC to represent the agencies. 71 Pa. Stat. Ann. § 732-204(b); See also *Carsia* at 958 citing 1978 *State Gov't Com Report* at 10 ("[P]ossibly most significant**,** the [AG] is authorized to delegate…when it is most efficient or otherwise in the best interests of the

Commonwealth.")(https://tinyurl.com/mvp52eua). The AG does not have the legal right to obtain agency documents because the agencies (1) are not a party to litigation and (2) not a subject or target of an investigation. *See* 71 Pa. Stat. Ann. § 732-208.[5]

**Rhode Island**: The RI AG is elected and the Office of the AG is an independent branch of state government. *E.g.*, *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 474 (R.I. 2008). As a separate branch of government, the AG does not have legal possession, custody, or control over documents in the control of any other branch of government (including agencies in the executive branch), nor can it unilaterally obtain files the identified state agencies. *See, e.g.*, R.I. Gen. Laws § 42-72-8(b)(7) (enabling disclosures from the Department of Children, Youth, and Families to the AG when the office is "engaged in the investigation of, or prosecution of, criminal conduct"); *id.* § 42-73-10 (records maintained by the Office of the Child Advocate "pertaining to the care and treatment of a child" can only be shared with the AG pursuant to a court order).

---

[5] Duties under the CAA have also not been triggered because the AG is not investigating the identified agencies. CAA §§'s 205-206 and 208.

**South Carolina**: Article I, Section 8 of the South Carolina Constitution provides that "[i]n the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct…," and Article VI, Section 7 establishes the AG as an independently elected constitutional officer. The AG lacks any legal authority to demand the documents of the identified state entities. These entities do not share a common executive or legal authority with the AG. The legislature has issued a proviso explicitly stating that, when the AG brings an action on behalf of the State in the public interest, other state agencies "are not parties to [the action], and the documents or electronically-stored information of such departments, agencies, or boards are not in the custody, or control of the [AG]." H. 5100, 125th Sess., 2024–25 Appropriation Act Part 1B § 59.16.

**South Dakota**: The AG may obtain agency records, with the consent of the Governor, for the purpose of an investigation. S.D.C.L. §1-11-10 The AG is not conducting an investigation of an agency in this matter. The AG also has subpoena powers, with consent of the Governor. It would be unethical for the AG to both represent the

agency, as is ordered in this case, and also issue a subpoena as an adversary.

**Virginia**: The Governor and the AG are separately elected constitutional officers with distinct duties and authorities. *Compare* Va. Const. art. V, §§ 1, 2, 7, 9 and Va. Code, Tit. 2.2, Chapt. 1 (Governor) *with* Va. Const. art. V, § 15, Va. Code, Tit. 2.2, Chapt. 5 (Attorney General). The identified agencies are either under the control of the Governor or governing boards whose membership are set by statute. *See, e.g.,* Va. Code §§ 32.1-16 and 32.1-17; § 2.2-1500; §§ 63.2-200 and 63.2-201; § 2.2-2648. The Governor has plenary authority to obtain state records. Va. Code § 2.2-109. In contrast, the AG has no similar authority to "require the production" of state records on demand. Indeed, the AG does not have control over the Governor or the other state agencies *or* their documents. Moreover, although the party to the present action is identified as "the Commonwealth," that does not render all agencies and employees of the Commonwealth parties for purposes of discovery. *See, e.g., Ramirez v. Commonwealth*, 20 Va. App. 292, 296 (1995) (state and local agencies and employees become a "party to the action" and subject to applicable discovery rules only

when they are "involved in the investigation or prosecution" of a
particular case). This action was not brought on behalf of, or at the
direction of, the Governor or any state agency or with their assistance,
but pursuant to the AG's own statutory authority. The AG
"represent[s] the interests of the people as consumers," and is
empowered to bring civil enforcement actions in the name of the
Commonwealth to protect "the consuming public." Va. Code §§ 2.2-
517(A), 59.1-197, 59.1-203, 59.1-206.

**Washington**: The AG provides counsel to state agencies. But
affirmative litigation by the AG—as undertaken by the AG's Consumer
Protection Division here—does not subject the entire state and of
agencies to party discovery. *E.g.*, Order Granting Plaintiff State of
Washington's Motion for Prot. Order, at 2, *State v. Johnson & Johnson*,
King Co. Sup. Ct. No. 16-2-12186-1 (Mar. 10, 2017); Order Denying (in
Part) TVI's Motion to Compel, *State v. TVI, Inc.*, King Co. Sup. Ct. No.
17-2-32886-3 (Mar. 7, 2019). The Governor and the AG are separately
constitutionally created, elected, executive offices, and the agencies at
issue here are controlled by the Governor, not the AG. *See* Wash.
Const. art. 3 §§ 1, 21, art. 9 § 2, art. 20 § 1; Wash. Rev. Code

§§ 28A.305.011(1), 43.20.030, 43.17.010, 43.17.020, 41.05.901, 43.41.050, 43.06.010. Although the AG provides counsel to state agencies, *see* Wash. Rev. Code § 43.10.040, documents obtained from agencies in the course of representation belong to the client agencies, must be safeguarded, and are subject to return upon the client's demand. *See, e.g.*, RPC 1.15A; *Johnson Bros. Cont. v. Blevins*, 190 Wash. App. 1015, at *6 (2015).

**West Virginia:** The Governor controls state agencies, while the AG—an independently elected official—can act as their legal advisor. W. Va. Const. art. VII, § 1. At most, these provisions create an attorney-client relationship between the AG and state agencies. *cf. State ex rel. Fahlgren Martin, Inc. v. McGraw*, 438 S.E.2d 338, 345 (W. Va. 1993); *see also State ex rel. McGraw v. Burton*, 569 S.E.2d 99, 116 (W. Va. 2002); *see also, e.g.*, *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024). The AG's role as sometimes-counsel for state agencies, *see* W. Va. Code §§ 5-3-1 and -2, does not vest him with control over state agency documents. As with any attorney-client relationship, state agencies need not accept the AG's advice. *See State ex rel. Caryl v. MacQueen*, 385 S.E.2d 646, 648 (W. Va. 1989). The

30

decision on whether to produce documents lies with the agencies alone. *See id*. To the extent the Order relied on unstated powers of the AG to force agencies to act, no such powers exist. Save common-law powers not relevant here, *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 645 (W. Va. 2013), "the [AG]'s power is conferred by law through statute and the Constitution," *Cavalry SPV I, LLC v. Morrisey*, 752 S.E.2d 356, 363 (W. Va. 2013).

**Wisconsin**: In accordance with Wis. Stat. § 165.25(1m), the AG filed this action on behalf of the state, not any other agency or officer. The Wisconsin Constitution creates distinct, separately-elected officers, including a Governor, an AG, and a Superintendent. *See* Wis. Const. art. V, §§ 1, 3, art. VI, §§ 1, 3, art. X, § 1. The AG has no common law powers, meaning his authority to act must be authorized by statute. *See State v. City of Oak Creek*, 2000 WI 9, ¶ 33, 232 Wis. 2d 612, 605 N.W.2d 526. Moreover independent constitutional officers must be free to assert legal positions contrary to the AG. *See Koschkee v. Evers*, 2018 WI 82, ¶¶ 13-14, 382 Wis. 2d 666, 913 N.W.2d 878. The Order thus errs by (1) ascribing a power to the AG not provided for in any Wisconsin statute (the legal right to compel production of

documents held by state agencies) and (2) precluding the Governor and
the Superintendent from asserting their own legal positions vis-à-vis
discovery in this litigation by deeming them under AG "control."

### III.  The magistrate judge erroneously interpreted the laws of states with appointed AGs.

While New Jersey, Hawai'i, and Maine's AGs are appointed by
the legislature or Governor—not elected like the other state AGs—they
similarly lack possession, custody, or control over documents held by
the identified agencies.

**New Jersey:** Under New Jersey's constitution, the NJAG is a co-
equal cabinet member with, and therefore lacks the authority to direct,
the other state agencies at issue here. Ignoring this, the Order
concludes that the NJAG has "legal control" over other agencies'
documents because the NJAG is their "primary legal representative."
App. at 163. But as explained above, an attorney does not have a
general right to demand a client's documents.

That is especially true where, as here, the client's documents are
sought for a matter that is unrelated to the lawyer's representation of
the client. *See* RPC 1.6 ("[a] lawyer shall not reveal information
relating to representation of a client unless the client consents after

consultation[.]") Under New Jersey law, the NJAG's role as counsel to the state's agencies is entirely distinct from his civil enforcement role. *Compare* N.J. Stat. Ann. § 52:17A-4(d) (enforcement of laws), 4(h)) with § 52:17A-4(g) (counseling and defensive representation).  The NJAG exercised his civil enforcement authority in this case solely on behalf of himself and the Director of the Division of Consumer Affairs—the two named New Jersey plaintiffs—because they are the only state agency heads authorized to enforce the consumer protection laws at issue. *See* N.J. Stat. Ann. §§ 52:17B-120, -124.  That the NJAG provides general representation to other agencies on a range of matters does not convert those agencies into parties in this matter. In ignoring this distinction, the Order contravenes well-settled New Jersey law holding that the state government is "so varied, so multifaceted, so extensive that to regard it as one unitary monolithic employer/client is unrealistic." *In re Advisory Comm. On Prof'l Ethics Op. 621*, 620 A.2d 880, 890 (1992).

That state agencies must be represented by the AG in responding to third-party discovery, Dkt. No. 1117 at 168, does not give the AG any greater control over those agencies' documents for purposes of party discovery in this case. The Order does not cite any authority for

the notion that a third-party discovery target incurs the discovery obligations of a party simply because they share legal counsel.

**Hawaii:** The Order ignores applicable Hawaiʻi caselaw such as *Lobisch v. United States*, No. CV 20-00370 HG-KJM, 2021 WL 6497240 (D. Haw. Aug. 19, 2021). Lobsich addressed the issue of whether a party is entitled to conduct discovery on any government agency pursuant to F.R.C.P. Rule 34, which the Court answered in the negative. *See id*. at *1. There, the party seeking discovery attempted to argue that Defendant USA exercised legal control over its Navy as a matter of law. The Order attempts to distinguish the case by pointing to the failure of the party seeking discovery to show control. Ironically enough, Meta likewise failed to show control and relied on the Hawaiʻi Attorney General's statutory authority to claim legal control. Additionally, Hawaiʻi  brought this case in its sovereign capacities, not on behalf of any state agency.

**Maine:** The independence of the AG from the executive branch is well-established. The AG is elected by the Legislature, *see* Me. Const. art. IX, § 11, is the chief law enforcement officer of the State, *Lund v. Pratt*, 308 A.2d 554, 558 (Me. 1973), and is independent from the

Governor, who is vested with "the supreme executive power of this State," *Opinion of the Justs.*, 112 A.3d 926, 931 (Me. 2015). "The [AG] acts independently and is not explicitly a part . . . the Executive Branch, which is governed by article V of the Maine Constitution and title 2 of the Maine Revised Statutes." *Opinion of the Justs.*, 112 A.3d at 931. The independence of the AG from the executive branch is further confirmed by the discretion he retains to decline to represent executive branch agencies, even where a statute directs him to represent them. *See Superintendent of Ins. v. Att'y Gen.*, 558 A.2d 1197, 1200 (Me. 1989). This independence includes the right to intervene in agency litigation and take positions adverse to the agency. *Id*. at 1203-1204.

As a direct result of the Order, Maine intends to dismiss its state law claim due to the burdens resulting from the Order's erroneous holding that the AG has legal control of state agency documents.

## CONCLUSION

For these reasons, and the reasons outlined in the California AG's Petition, the AGs ask this Court to order the district court to

grant the AGs' objection to Order. The AGs also ask Court to stay the

Order pending resolution of this matter.


Dated: January 30, 2025

                                       Respectfully Submitted,

                                       PHILIP J. WEISER
                                       Attorney General

                                        */s/Shannon Stevenson*
                                        Shannon Stevenson* CO Bar No. 35542
                                        Solicitor General
                                        Krista Batchelder
                                        Deputy Solicitor General
                                        Danny Rheiner
                                        Assistant Solicitor General
                                        Lane Towery
                                        Assistant Attorney General Fellow
                                        1300 Broadway, 10th Floor
                                        Denver, CO 80203
                                        Telephone: (720) 508-6000
                                        Email: Shannon.Stevenson@coag.gov
                                        *Attorneys for the State of Colorado ex rel.*
                                        *Philip J. Weiser, Attorney General*
                                        *Counsel of Record

**KRIS MAYES**
Attorney General
State of Arizona

/s/ Laura Dilweg
Laura Dilweg (AZ No. 036066, CA
No. 260663)
Chief Counsel - Consumer
Protection and Advocacy Section
Nathan Whelihan (AZ No.
037560, CA No. 293684), *pro hac
vice*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Laura.Dilweg@azag.gov
Nathan.Whelihan@azag.gov
*Attorneys for Plaintiff State of
Arizona ex rel. Kris Mayes,
Attorney General*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Krislyn Launer*
Krislyn M. Launer (CT Juris No.
440789)
Assistant Attorney General
Connecticut Office of the
Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Krislyn.Launer@ct.gov

*Attorney for Plaintiff State of
Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Marion Quirk*
Marion Quirk (DE Bar 4136)
Director of Consumer Protection
Ryan Costa (DE Bar 5325)
Deputy Director of
Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8810

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

*/s/ Christopher T. Han*
Christopher J.I. Leong (HI JD No.
9662), *pro hac vice*
Supervising Deputy
Attorney General
Christopher T. Han (HI JD No.
11311), *pro hac vice*
Deputy Attorney General
Department of the
Attorney General

Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for the State of
Delaware*

Commerce and Economic
Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of
Hawai'i*

**KWAME RAOUL**
Attorney General
State of Illinois

/s/ *Alex Hemmer*
ALEX HEMMER
Deputy Solicitor General
Office of the Illinois
Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 590-7932
alex.hemmer@ilag.gov

*Attorney for Plaintiff the People of
the State of Illinois*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Corinne Gilchrist*
Corinne Gilchrist
Section Chief, Consumer
Litigation
IN Atty No. 27115-53

Office of the Indiana
Attorney General
Indiana Government
Center South
302 West Washington St.,
5th Floor
Indianapolis, IN 46203
Telephone: (317) 233-6143
Corinne.Gilchrist@atg.in.gov

*Attorney for Plaintiff State of
Indiana*

**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah Dietz, Assistant
Attorney General
(KS Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant
Attorney General
(KS Bar No. 27700), *pro hac vice*
Office of the Kansas Attorney
General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for the State of Kansas*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
Consumer Protection Section
1885 N. Third St.
Baton Rouge, LA 70802
Tel: (225) 326-6400
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ John H. Heyburn*
John H. Heyburn
Principal Deputy
Solicitor General
Office of Kentucky
Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Jack.Heyburn@ky.gov

*Attorney for Plaintiff the*
*Commonwealth of Kentucky*

**AARON M. FREY**
Attorney General
State of Maine

/s/ Jillian O'Brien
Jillian O'Brien (CA SBN 251311)
Assistant Attorney General
Office of the Maine
Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
jill.obrien@maine.gov

*Attorney for Plaintiff State of*
*Maine*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

/s/ *Elizabeth J. Stern*
Elizabeth J. Stern (Maryland
CPF No. 1112090003),
Assistant Attorney General
Office of the Attorney
General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-7226
Fax: (410) 576-6566
estern@oag.state.md.us

*Attorney for Plaintiff Office of the
Attorney General of Maryland*

**KEITH ELLISON**
Attorney General
State of Minnesota

/s/ Evan Romanoff
Evan Romanoff (MN Bar No.
0398223)
Assistant Attorney General
Office of the Minnesota Attorney
General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Tel: (651) 728-4126
evan.romanoff@ag.state.mn.us

*Attorney for State of Minnesota, by
its Attorney General, Keith Ellison*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

/s/ *Anna Anderson*
Anna Anderson (NE #28080)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska
Attorney General
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-2682
Email:
anna.anderson@nebraska.gov

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey
/s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No.
016752008)

*Attorney for Plaintiffs New Jersey
Attorney General
and the New Jersey Division of
Consumer Affairs
Matthew J. Platkin, Attorney
General for the State of
New Jersey, and Cari Fais,
Director of the New*

*Attorney for Plaintiff State of Nebraska*

**LETITIA JAMES**
Attorney General
State of New York

**/s/ Kevin Wallace**
Kevin Wallace (NY Bar No. 3988482)
Senior Enforcement Counsel
kevin.wallace@ag.ny.gov
Office of the New York State
Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262

*Attorney for the State of New York*

*Jersey Division of Consumer Affairs*

**JEFF JACKSON**
Attorney General
State of North Carolina

/s/ Charles White
Charles G. White
Assistant Attorney General
N.C. State Bar No. 57735
cwhite@ncdoj.gov
Kunal J. Choksi
Senior Deputy Attorney General
N.C. State Bar No. 55666
kchoksi@ncdoj.gov
Joshua Abram
Special Deputy Attorney General
N.C. State Bar No. 57205
jabram@ncdoj.gov
N.C. Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: (919) 716-6889
cwhite@ncdoj.gov

*Attorneys for the State of North Carolina*

**DAVE YOST**
Attorney General
State of Ohio

/s/ Kevin R. Walsh
MELISSA G. WRIGHT (0077843)
Section Chief, Consumer
Protection Section
Melissa.Wright@ohioago.gov
MELISSA S. SMITH (0083551)
Asst. Section Chief, Consumer
Protection Section
Melissa.S.Smith@ohioago.gov
MICHAEL S. ZIEGLER
(0042206)
Principal Assistant Attorney
General
Michael.Ziegler@ohioago.gov
KEVIN R. WALSH (0073999)
Kevin.Walsh@ohioago.gov
Senior Assistant Attorney
General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031

*Attorneys for the State of Ohio*

**DAVID W. SUNDAY, JR.**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Email:
jburns@attorneygeneral.gov

**DAN RAYFIELD**
Attorney General
State of Oregon

/s/ John Dunbar
John J. Dunbar (Oregon Bar No.
842100)
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884
E-mail:
john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel. Dan Rayfield, Attorney General*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Alex Carnevale*
Alex Carnevale (R.I. Bar No.
10724) (Admitted 9th Cir.
2/21/2021)
Special Assistant Attorney

Pennsylvania Office of Attorney
General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.645.7269

*Attorneys for Plaintiff the*
*Commonwealth of Pennsylvania*

General
Rhode Island Office of the
Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x 1895
acarnevale@riag.ri.gov

*Attorneys for the State of Rhode*
*Island*

**ALAN WILSON**
Attorney General
State of South Carolina

/s/ Jared Q. Libet
Jared Q. Libet (SC Bar No.
74975)
Assistant Deputy Attorney
General
OFFICE OF THE ATTORNEY
GENERAL OF SOUTH
CAROLINA
P.O. Box 11549
Columbia, South Carolina 29211
Tel: (803) 734-5251
jlibet@scag.gov

*Attorneys for Plaintiff the State of*
*South Carolina, ex rel. Alan M.*
*Wilson, in His Official Capacity as*
*Attorney General of the State of*
*South Carolina*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller
*pro hac vice*
Assistant Attorney General 1302
East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us

*/s/ Bret Leigh Nance*
By: Bret Leigh Nance
*pro hac vice*
Assistant Attorney General 1302
East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
bretleigh.nance@state.sd.us

*Attorneys for Plaintiff State of*
*South Dakota*

43

**COMMONWEALTH OF VIRGINIA**
*Ex rel.* Jason S. Miyares, Attorney General

/s/  Joelle E. Gotwals
Joelle E. Gotwals (VSB No. 76779)
Assistant Attorney General
Office of the Attorney General of Virginia
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
E-mail: jgotwals@oag.state.va.us

**NICHOLAS W. BROWN**
Attorney General
State of Washington

*/s/ Alexandra Kory*
Alexandra Kory
(WA Bar No. 49889)
Joseph Kanada
(WA Bar No. 55055)
Rabi Lahiri (WA Bar No. 44214)
Claire McNamara
(WA Bar No. 50097)
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 516-2997
Alexandra.Kory@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

44

**JOHN B. MCCUSKEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*
Laurel K. Lackey
(WVSB No. 10267)
Abby G. Cunningham
(WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection &
Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov
abby.g.cunningham@wvago.gov

*Attorneys for Plaintiff State of
West Virginia, ex rel. John B.
McCuskey, Attorney General*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Colin R. Stroud*
Colin R. Stroud
Assistant Attorney General
WI State Bar #1119457
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224
stroudcr@doj.state.wi.us

*Attorney for the State of Wisconsin*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 21(d)(1) and Ninth Circuit rules 21-(2)(c) and 32-3(2) [no more than 7800 words].

☒     This document contains **7142** words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6):

☒     This document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type.

This document has been submitted in compliance with the court's ECF requirements.

/s/ *Shannon Stevenson*
Shannon Stevenson

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing motion upon all parties herein by e-filing with the CM/ECF system maintained by the Court, this 30th day of January 2025. The trial-court judge and magistrate judge have also been provided a copy of this motion pursuant to Fed. R. App. P. 21(a).

<u>/s/ *Shannon Stevenson*</u>
Shannon Stevenson