UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING SNAP'S ASSERTION OF PRIVILEGE IN CONNECTION WITH 14 REDACTED DOCUMENTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and Defendant Snap Inc. respectfully submit this letter brief regarding Snap's assertion of privilege over certain communications.

| Beginning Bates Number of Challenged Redacted Record | Snap's Exhibit |
|---|---|
| SNAP3160953 | A |
| SNAP3182499 | B |
| SNAP3202222 | C |
| SNAP3245340 | D |
| SNAP3307049 | E |
| SNAP5288226 | F |
| SNAP1141054 | G |
| SNAP1157465 | H |
| SNAP1151790 | I |
| SNAP5288836 | J |
| SNAP4928443 | K |
| SNAP3628554 | L |
| SNAP3664752 | M |
| SNAP4801937 | N |

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on January 7, 2025 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

i

Snap concurrently files under seal redacted versions of the Exhibits listed above. To facilitate the Court's *in camera* review, Snap further sends to chambers via email the unredacted versions of these Exhibits.

Dated: January 14, 2025                                                  Respectfully submitted,

/s/ Jennie Lee Anderson
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN**

**PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK,
LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


*/s/ Laura M. Lopez*
Jonathan H. Blavin (SBN 230269)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Ariel T. Teshuva (SBN 324238)
Laura M. Lopez (SBN 313450)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426

Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com
Email: Laura.Lopez@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

**Plaintiffs' Position**: Plaintiffs challenge redactions to 14 Snap documents. All of the documents are internal communications among Snap personnel. The documents at issue can be grouped into three primary categories: 1) Snap's investigation of bad events that occurred on the Snapchat platform; 2) Snap's investigation of users who may be under the age of 13; and 3) communications among non-lawyers. The challenged redactions are unsupported and should be removed.

**1.     Snap's investigation of bad events that occurred on the Snapchat platform.** Four exhibits fall into this category: (i) SNAP5288226 (**Ex. F**), (ii) SNAP1141054 (**Ex. G**),[1] (iii) SNAP1157465 (**Ex. H**), and (iv.) SNAP3182499 (**Ex. B**). In each of these documents, a bad event occurring on the Snapchat platform is reported to Snap's CEO or communication team who then elevate the report to multiple personnel and at least one member of the legal department. For example, **Exhibit H** REDACTED Several emails exchanged after the initial report appear to relate to the continuing investigation but are redacted entirely. **Exhibits B** and **H** relate to responses to a press inquiry and getting ahead of bad press, which is inherently business and public relations strategy, not legal advice.

The attorney-client privilege "only protects disclosure of ***communications*** between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication." *State Farm Fire & Cas. Co. v. Super. Court*, 54 Cal. App. 4th 625, 639 (1997) (emphasis in original; citation omitted).[2] The privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *In re Cathode Ray Tube Antitrust Litig.*, 2015 WL 12953930, at *3 (N.D. Cal. July 22, 2015) (quoting *Upjohn* 449 U.S. at 395. "[F]acts discovered by a corporation's counsel during an internal investigation are part of the corporation's knowledge because its employees' knowledge is imputed to the corporation." *Id.* (citation omitted). *See also Doe v. Uber Techs., Inc.*, 2022 WL 767088, at *2 (N.D. Cal. Mar. 11, 2022) (applying California privilege law; finding that "factual information . . . is not privileged"). The work product doctrine may protect material prepared by an attorney or their agent in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). For the doctrine to apply, "there must be an identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared." *Fox v. Cal. Sierra Fin. Serv's*, 120 F.R.D. 520, 525 (N.D. Cal. 1988).

Here, the communications relate to investigations and business strategy undertaken by Snap employees in the regular course of business, not for the purposes of rendering legal advice, and are, thus, not protected. (*See also* Section 2, *infra*.) However, even if they are deemed to include legal advice or work product, the underlying facts regarding the incidents, the investigations, and any remedial action taken are the proper subject of discovery and should be produced.[3]

---

[1] For **Exhibits F** and **G** Snap claims both work product and attorney client privilege.
[2] Federal courts sitting in diversity apply state law when assessing attorney-client privilege and federal law regarding the work product doctrine. *See Favell v. Univ of So. Cal.*, 2024 WL 3009328, at *7, 11 (S.D. Cal. May 9, 2024) (applying California privilege law citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).
[3] *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *4 (E.D. Cal. Jan. 26, 2023), cited by Snap, applies federal law and is distinguishable because the information at issue there was gathered specifically to assist counsel in providing legal advice.

**2.     COPPA investigations of users under the age of 13 are not privileged.** Six documents fall within this category: (i) SNAP1151790 (**Ex. I**), (ii) SNAP3628554 (**Ex. L**), (iii) SNAP3664752 (**Ex. M**), (iv) SNAP4801937 (**Ex. N**), (v) SNAP4928443 (**Ex. K**); and (vi) SNAP5288836 (**Ex. J)**. **Exhibit N** appears to set forth the structure and operation of Snap's COPPA compliance protocols. In the other communications, Snap Trust & Safety personnel receive a report that a user is under the age of 13. Snap is required to remove users under 13 from its platform as a matter of compliance with the COPPA. After Snap Trust & Safety personnel receive a report of an under-13 user, they elevate the report to other Snap personnel, both lawyers and non-lawyers, to determine whether to terminate the user's account. It also appears that further factual investigation may have occurred after the reports are elevated.

Communications are not privileged when in-house counsel is acting predominantly as a business agent. *In re 3DFX Interactive, Inc.* 347 B.R. 394, 403 (N.D.Cal.2006) (quoting *Chicago Title Ins. Co. v. Super. Court*, 174 Cal. App. 3d 1142, 1151, (1985)). To qualify for protection, Snap must establish that the dominant purpose of the communication was to secure or render legal advice. *Id.* (citing *Montebello Rose Co., Inc. v. Ag. Labor Rel. Bd.*, 119 Cal.App.3d 1, (1981)).[4]

 Advice regarding regulatory compliance is routinely determined to be business advice, not legal, and, therefore, not entitled to protection. *See Ward v. Equilon Enters.,* LLC, 2011 WL 13257271, at *5-6 (N.D. Cal. Feb 24, 2011) (applying California law and finding the dominant purpose of investigations and reports conducted for regulatory compliance, and pursuant to company policy, is business, not legal). Courts across the country are in accord. *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5279169, at *3 (N.D. Ohio Nov. 16, 2024) ("[A]ssessment of compliance with regulations is usually a business matter, not a legal one.") (internal citation omitted) (citing *Ciccio v. SmileDirectClub, LLC*, 2022 WL 2182301 at *5 (M.D. Tenn June 16, 2022) (documents not privileged because "they involved regulatory, and not legal advice"); *FTC v Abbvie, Inc*., 2015 WL 8623076 at *9 (E.D. Pa. Dec. 14, 2015) (advice from in-house counsel regarding regulatory strategy is unprotected business advice); *Rowe v. E.I. duPont de Nemours & Co*., 2008 WL 4514092 at *9 (D.N.J. Sept. 30, 2008) (in-house counsel's advice on ongoing regulatory dispute not privileged)). Similarly, advice on the "structure [of the defendant's] business operations to ensure compliance with regulatory requirements…is business advice [and]…not protected by the attorney-client privilege." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5279169 at *4.  Here, Snap bears the burden of presenting facts sufficient to show the communications with in-house counsel were for the purpose of obtaining legal advice, rather than compliance with regulatory policy. *Fisher v. Kohl's Dept. Stores, Inc.*, 2012 WL 2377200, at *2 (E.D. Cal. June 22, 2012) (citing *Costco Wholesale Corp. v. Super. Court*, 47 Cal. 4th 725, 733 (2009)).

Snap's reliance on *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) is misplaced for the reasons highlighted in *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *10-11,18 (N.D. Cal. Aug. 3, 2022). The *Roth* Court found that communications with in-house counsel regarding the drafting of an SEC Form 10-K were privileged based on the complex legal nature of the regulatory requirements, which "require[] extremely detailed financial, legal and structural information… and disclosure of legal proceedings." 254 F.R.D. at 540-541. By contrast, the communications here documents involve Snap employees conducting routine investigations to determine whether a user is under 13 pursuant to Snap's fact-based compliance policies. No legal

---

[4] Federal law similarly holds that advice rendered primarily for business purposes does not qualify as attorney-client privilege. *See In re Grand Jury,* 23 F.4th 1088, 1091 (9th Cir. 2021).

expertise is needed to investigate the age of an individual or to identify and report potential CSAM. Snap has failed to offer any showing to the contrary.

Because regulatory compliance is predominantly a business function here, the communications are not entitled to protection. To the degree the redactions obscure underlying facts, those must be produced also for reasons set forth in Section 1, *supra.*

**3.     Communications among nonlawyers regarding business matters are not privileged.**

Four documents are communications among Snap policy personnel that do not include any lawyers: (i) SNAP3160953 (**Ex. A)**, (ii) SNAP3202222 (**Ex. C**), (iii) SNAP3245340 (**Ex. D**), and (iv) SNAP3307049 (**Ex. E**). In each of these documents, Snap policy personnel are discussing certain features or practices on the Snapchat platform. In one, Snap has redacted the factual description of a video posted on Spotlight; in another, Snap personnel discuss demographics that can be used to target users by age; a third redacts certain items on a list of prohibited depictions in ads hosted on Snapchat.

On their face, these communications relate exclusively to business functions, and no attorneys are included in any of them. Snap does not cite any applicable California law, but even if federal law applied, the cases it cites are uncompelling. Plaintiffs do not contend that documents created by or sent to/from non-attorneys can never qualify for attorney-client privilege, but it is Snap's burden to provide facts necessary to make that determination. The party asserting the attorney-client privilege must show that the communication in question has been made in confidence during the course of the attorney-client relationship. *In re 3DFX,* 347 B.R. at 401-402 (citations omitted). Snap has had every opportunity to proffer evidence to try to explain how these documents may reflect legal advice and has failed to do. The unredacted documents should be produced.

**Snap's Position:**[5]  Plaintiffs improperly challenge redactions of 14 Snap records that contain requests for legal advice and/or reflect the substance of legal guidance or attorney work product by in-house counsel.[6] The redactions fall into the following (at times overlapping) categories:[7]

    **Compliance with the Children's Online Privacy Protection Rule ("COPPA"):**[8] Nearly half of the challenged redactions pertain to communications between Snap Trust and Safety employees and in-house counsel seeking (and receiving) legal guidance regarding Snap's COPPA compliance, in the course of responding to reports of accounts opened by users that may be under 13 years of age.[9] Ex. N describes Snap's COPPA compliance protocols, with redacted legal guidance from attorneys analyzing prospective legal risks of predicted scenarios.

---

[5] Regardless of whether California or federal law applies, Snap's privilege claims should be upheld. Although Snap cites to federal authorities, its privilege claims are even stronger under California law. *See, e.g., Costco Wholesale Corp. v. Sup. Ct.*, 47 Cal.4th 725, 736 (2009) ("[W]hen the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged."). If the Court finds the choice of law to be determinative, Snap requests further briefing on the issue.
[6] Should the Court require more context, Snap is willing to provide supplemental declarations.
[7] Only the narrow redaction at Ex. C, which discusses draft legal guidance from an attorney (Matt Stratton) pertaining to copyright implications, falls outside these categories.
[8] COPPA prescribes, *inter alia*, when and how commercial websites and online service providers may collect information from users under 13 years of age. *See* 15 U.S.C. § 6501 *et seq.*
[9] Ex. I; Ex. L; Ex. M; Ex. N; Ex. K; Ex. J.

**Compliance with CSAM reporting obligations, the Stored Communications Act ("SCA"), and litigation-related inquiries:** Several redactions pertain to communications between Snap Trust and Safety employees and in-house counsel relating to Snap's legal obligations triggered by reports or requests for investigation into accounts with potentially illegal content, including CSAM or other abusive content related to the death of an individual user. These redacted discussions are about, *inter alia*, Snap's statutory obligation to report and/or preserve accounts potentially containing CSAM, including under 18 U.S.C. § 2258A *et seq.*; certain prohibitions against Snap's disclosure of user information under the SCA, 18 U.S.C. §§ 2701 *et seq.*; other legal obligations as to law enforcement investigations; and litigation risks.[10]

**Compliance with regulations governing advertisements and/or sponsored content:** A smaller subset of the challenged redactions pertain to communications between Snap employees and in-house counsel that reflect legal guidance provided during the review and approval process for proposed advertising content, including age-gating decisions. Myriad regulations, both federal and state, restrict the age groups to which products can be advertised.[11]

In their challenge, Plaintiffs take a number of untenable positions. ***First***, Plaintiffs take the all-or-nothing position that factual investigations are never privileged. But "factual findings" are privileged where they "were gathered to assist [the attorney] in providing legal advice." *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *4 (E.D. Cal. Jan. 26, 2023). Moreover, Plaintiffs miss the point; they assume, based on ***unredacted*** factual information in the records, that the ***redacted*** portions must also involve pure facts. To the contrary, those redactions protect requests for legal guidance arising in the course of investigations. As the Supreme Court made clear, "the [attorney-client] privilege exists to protect not only the giving of professional advice . . . but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Plaintiffs cite cases that are inapposite, or, in fact, supportive of Snap's privilege claims. For example, Plaintiffs rely on *In re Cathode Ray Tube (CRT) Antitrust Litig.* to suggest that Snap improperly asserts privilege over underlying facts in attorney-client communications. 2015 WL 12953930 (N.D. Cal. July 22, 2015). But that case involved an unrelated issue about a 30(b)(6) witness, and even then, the court recognized that memoranda which "reflect the attorneys' mental impressions, opinions … of the information provided … may be attorney-client privileged." *Id.* at *3. The redacted exchanges here are precisely that—communications reflecting counsel's legal opinions about Snap's legal compliance and risks.

***Second***, Plaintiffs' assertion that communications relating to regulatory or legal compliance are *de facto* business communications because they occur in the regular course of business is incorrect. "[T]here is no bright-line rule that communications related to regulatory compliance are per se business or legal communications." *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *11 (N.D. Cal. Aug. 3, 2022). And Plaintiffs have cited no Ninth Circuit authority in support of their absolutist position. To the contrary, courts in this Circuit routinely uphold claims of attorney-client privilege when an attorney advises its client regarding regulatory compliance. *See id.* at 12 (communications seeking legal advice about regulatory compliance issues for an investor letter)*; see also Rite Aid*, 2023 WL 425841, at *3 (meeting

---

[10] Ex. G; Ex. H; Ex. D; Ex. F.
[11] Ex. A; Ex. B; Ex. E.

minutes reflecting legal advice about "legal interpretation and analysis of Medi-Cal … rules and regulations" and emails about an "internal investigation related to Rite Aid's compliance with pharmacy rules and regulations"); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) (consultation with counsel "as to how best to legally comply with SEC regulations" in drafting Form 10-K). Other cases Plaintiffs cite are easily distinguishable on their facts. *See, e.g.*, *Ward v. Equilon Enterprises, LLC*, 2011 WL 13257271, at *6 (N.D. Cal. Feb. 24, 2011) (privilege claim denied because "dominant [business] purpose of the RCA investigation and report was to determine the cause of the incident and prevent similar incidents"); *Fed. Trade Comm'n v. Abbvie, Inc.,* 2015 WL 8623076 at *6, *8–9 (E.D. Pa. Dec. 14, 2015) (privilege claim denied regarding communications where in-house counsel "referenced pending litigation to estimate when competitors will likely enter the market" and consideration of "a regulatory strategy" regarding "'competitive intelligence' information about rival products"). The circumstances of those cases are far afield from the redacted communications that Plaintiffs challenge here. As discussed, most of these communications are directed to in-house counsel for the explicit purpose of seeking legal advice or involve responses from in-house counsel providing legal advice. That Snap employees sought legal counsel in an effort to comply with COPPA (or CSAM reporting regulations, the SCA, etc.) does not reflect a "business concern," and the guidance from Snap's in-house counsel in response was legal, not business-oriented. The Court therefore should reject Plaintiffs' challenge to the redactions.

*Third*, Plaintiffs insist that several records concern business purposes, and then erroneously conclude that the ***redacted portions*** of those documents are therefore not privileged. But that is not the law. Where the "redacted material relate[s] primarily to legal advice rather than business concerns," a privilege claim is valid, even if "both [purposes] were clearly present." *Roseville*, 2022 WL 3083000, at *16. These principles make clear that the redacted documents at issue are privileged. The content and context of the redacted exchanges demonstrate that their primary purpose was to seek legal advice to ensure compliance with statutes and regulations like COPPA. *See In re Grand Jury*, 23 F.4th at 1091 ("When dual-purpose communications are involved … courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business … advice."). These communications implicate the "potential existence of legal obligations and compliance" or "advice on whether [the party] had a certain legal obligation and how to communicate ... regarding that issue." *LD v. United Behav. Health*, 2022 WL 17408010, at *15 (N.D. Cal. Dec. 2, 2022). Seven of the redacted exchanges involve communications with in-house counsel providing legal guidance to Snap employees about their legal (not business) obligations. Six additional records "memorialize[] and reflect[] legal advice rendered in a privileged conversation" from counsel to Snap employees. *Chrimar Sys. Inc v. Cisco Sys. Inc.*, 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016). And the remaining communication contains an explanation of a request for legal advice revealing the substance of the advice sought. *Wagner Aeronautical, Inc. v. Dotzenroth*, 2022 WL 4004188, at *1 (S.D. Cal. Sept. 1, 2022). Two of the 14 documents also bear work-product redactions; their context makes clear that Snap employees contacted in-house counsel "because of" the prospect of litigation. *In re Grand Jury*, 23 F.4th at 1091–92. Plaintiffs cannot dispute whether Snap has met its burden: Snap has offered the ultimate evidence in support of its privilege assertion by providing *in camera* versions to the Court. *In re Meta Pixel Healthcare Litig.*, 2024 WL 3381029, at *2 (N.D. Cal. July 10, 2024) (burden may be met through declarations, briefs, in camera review). The Court should reject Plaintiffs' challenge.

## **ATTESTATION**

I, _____Laura M. Lopez_____, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: January 14, 2025

By: */s/ Laura M. Lopez*_____