1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR   (PHK)

**ORDER RESOLVING JOINT LETTER
BRIEF ON STATE 30(B)(6)
DEPOSITIONS**

Re: Dkt. 1671

This MDL has been referred to the undersigned for discovery purposes. *See* Dkt. 426.
Now pending before the Court is a joint letter brief regarding a dispute between the so-called State
Attorneys General Plaintiffs (herein referred to for simplicity as the "States" or "State Plaintiffs")
and Meta regarding certain topics in Meta's Rule 30(b)(6) amended deposition notices served on
the States. [Dkt. 1671]. The Court previously ruled on a similar dispute regarding Meta's original
30(b)(6) notices directed to the States and provided guidance on the issue at the January 14, 2025
Discovery Management Conference ("DMC"). *See* Dkts. 1578, 1646. Because the instant dispute
is a follow-on to the previous dispute, the Court finds this dispute suitable for resolution without
further oral argument. *See* Civil L.R. 7-1(b).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar.
Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude
in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of
discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's
discretion extends to crafting discovery orders that may expand, limit, or differ from the relief

1     requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

2     discretion to tailor discovery narrowly and to dictate the sequence of discovery").

3          Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

4     regarding any nonprivileged matter that is relevant to any party's claim or defense and

5     proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.*

6     Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or

7     that reasonably could lead to other matter that could bear on, any issue that is or may be in the

8     case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer*

9     *Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer*

10    *Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

11    Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader

12    than relevancy for purposes of trial.") (alteration omitted).

13         While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v.*

14    *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes

15    of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

16    Information, even if relevant, must be "proportional to the needs of the case" to fall within the

17    scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1)

18    emphasize the need to impose reasonable limits on discovery through increased reliance on the

19    common-sense concept of proportionality: "The objective is to guard against redundant or

20    disproportionate discovery by giving the court authority to reduce the amount of discovery that

21    may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

22    requirement] is intended to encourage judges to be more aggressive in identifying and

23    discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015

24    amendment. In evaluating the proportionality of a discovery request, a court should consider "the

25    importance of the issues at stake in the action, the amount in controversy, the parties' relative

26    access to the information, the parties' resources, the importance of the discovery in resolving the

27    issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

28    Fed. R. Civ. P. 26(b)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

The instant dispute concerns Meta's Rule 30(b)(6) amended deposition notices directed to the State Plaintiffs. [Dkt. 1671]. As summary background: Meta timely served Rule 30(b)(6) deposition notices on each of the remaining thirty-one State Plaintiffs, seeking testimony on forty-two topics. The States, in their responses, objected to thirty-four of Meta's forty-two noticed topics and sought to limit several other topics. After hearing argument at last month's DMC, the Court resolved several disputes regarding Meta's original 30(b)(6) notices, including objections that certain topics improperly sought contention testimony and/or improperly sought testimony on topics protected from the discovery by the attorney-client privilege and/or the work product doctrine. *See* Dkts. 1578, 1646.

On January 22, 2025, Meta served amended 30(b)(6) deposition notices on the States which are all substantially identical for purposes of this dispute. [Dkt. 1671 at 11]. The Parties attached a representative copy of one such amended 30(b)(6) notice as an exhibit to the instant joint letter brief. [Dkt. 1671-1].

As to the first disputed issue presented, the States object to Topics 20-24 and 29-32 on the grounds that these topics seek 30(b)(6) testimony on these Plaintiffs' contentions. [Dkt. 1671 at 13-14]. The States also object that these topics seek testimony on attorney mental impressions, as well as testimony on the subject of anticipated experts. *Id.* Meta contends that the States' objections are incorrect because most of these topics seek testimony on the "facts" which form the bases for the State Plaintiffs' "beliefs" as to several identified issues in the case. *Id.* at 11.

"A 30(b)(6) deposition—a reference to Federal Rule of Civil Procedure 30(b)(6)—gives a litigant the opportunity to question an organization's representative about a specified topic. The organization has 'a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'" *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F. Supp. 3d 899, 916 (N.D. Cal. 2023) (citation omitted). However, so-called "contention" depositions under Rule 30(b)(6) are objectionable. As discussed by the Court in DMO No. 14, it is more appropriate for a party such as Meta to take discovery on an opponent's

3

United States District Court
Northern District of California

1    contentions using appropriately framed contention interrogatories, not contention deposition topics

2    under Rule 30(b)(6). *See McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286-

3    87 (N.D. Cal. 1991) (discussing considerations weighing against proposed deposition of fact

4    witness regarding patent infringement contentions and holding, as a matter of discovery

5    management in a complex case, that contention interrogatories are a more appropriate vehicle for

6    obtaining such information), *overruled on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991); *see*

7    *also Yahoo!, Inc. v. MyMail, Ltd.*, No. 16-cv-07044-EJD (SVK), 2017 WL 2177519, at *3 (N.D.

8    Cal. May 18, 2017) ("MyMail seeks a deposition to explore the basis for the allegations in

9    Yahoo's complaint in the California action, which derive at least in part from MyMail's own

10   allegations in the Texas action. In the unique circumstances of this case, these topics are better

11   explored, at least in the first instance, through contention interrogatories than through deposition

12   of Yahoo corporate representatives."); *3M Co. v. Kanbar*, No. C06-01225 JW (HRL), 2007 WL

13   1794936, at *2 (N.D. Cal. June 19, 2007) (granting protective order regarding contention

14   deposition topics more appropriately addressed through contention interrogatories).

15        **Topics 20-24 and 29-30—The "Factual Basis" Alleged Contention Topics:**

16        Most of the disputed deposition topics in the amended 30(b)(6) notice are drafted

17   following the same formulation: these topics each seek testimony on "[t]he factual basis for the

18   State's belief that" followed by different subject matter for each such topic and "belief." *See* Dkt.

19   1671-1 at 9-10.  The Parties dispute whether these deposition topics constitute contention

20   deposition topics or not.

21        Topics 20-24 and 29-30 are set forth below:

22
23        20.    The factual basis for the State's belief that Defendants have made
          misrepresentations to the State or State residents during the Relevant Period,
          including but not limited to the identification of such misrepresentation, when and
24        where the misrepresentation was made, who made it, and the factual basis for the
          State's belief that such misrepresentation was material to the State or the State
25        residents.

26        21.    The factual basis for the State's belief that Defendants engaged in unfair,
27        deceptive, or unconscionable practices during the Relevant Period, including but not
          limited to any assessment or evaluation of such practices by the State.

28

4

22.  The factual basis for the State's belief that the State or State residents suffered harm related to the use of Social Media Platforms by individuals under the age of 18 during the Relevant Period, including but not limited to any assessment or evaluation by the State of such harm.

23.  The factual basis for the relief that the State seeks in this case, including but not limited to statutorily defined methodologies or formulas cited in this case as supporting requested relief (as offered by the MDL State Plaintiffs in a January 6, 2025 e-mail to Meta).

24.  The factual basis for any expenses or costs incurred by the State or State residents related to the use of Social Media Platforms by individuals under the age of 18 during the Relevant Period, including but not limited to any assessment or evaluation of such expenses or costs by the State.

29.  The factual basis for the State's belief that individual(s) under the age of 13 used Instagram or Facebook during the Relevant Period, including but not limited to any assessment or evaluation by the State of such use.

30.  The factual basis for the State's belief that the State or State residents have suffered harm related to the use of Instagram or Facebook by any individual(s) under the age of 13 during the Relevant period, including but not limited to any assessment or evaluation of such harm by the State.

[Dkt. 1671-1 at 10-11].

The State Plaintiffs argue that each of these topics improperly seek the factual bases for the States' contentions (or beliefs) on several elements of claims and relief in this litigation, and thus, are more properly the subject of contention interrogatories under case law. [Dkt. 1671 at 14]. The State Plaintiffs rely on *McCormick-Morgan* and the cases discussed above. *Id.* The State Plaintiffs argue that Meta simply inserted the word "factual" before the word "basis" and replaced the word "contention" with the word "belief" in the original topics for which this Court previously sustained the objections. *Id.* at 13.

Meta distinguishes the case law cited by arguing that those cases involved complex intellectual property issues, such as patent infringement. *Id.* at 11. Meta also argues that other cases allowed 30(b)(6) deposition topics on facts concerning certain allegations in the complaint. *Id.* at 12 (citing *FTC v. DirecTV, Inc.*, No. 15-cv-01129-HSG (MEJ), 2015 WL 7775274, at *5-6 (N.D. Cal. Dec. 3, 2015); *Silgan Containers v. Nat'l Union Fire Ins.*, No. C 09-09571 RS (LB), 2010 WL 5387748, at *4 (N.D. Cal. (Dec. 21, 2010); *EEOC v. Caesars Ent., Inc.*, 237 F.R.D. 428,

1    434 (D. Nev. 2006)).  The States distinguish *DirecTV* on the grounds that that decision did not

2    address the "contention deposition" line of cases.  *Id*. at 14.  The States appear to distinguish

3    *Silgan* on the grounds that, as an insurance coverage dispute involving defective tomato cans, it

4    was more straightforward than the current case, and thus, inapposite.  *Id.* at 14-15.  The States do

5    not expressly address *Caesars Entertainment* other than to argue broadly that all cases relied on by

6    Meta are not persuasive.  *Id.*

7        To the extent Meta argues or suggests that the case law regarding the impropriety of

8    contention deposition topics should be limited to "complex intellectual property" cases, that

9    argument is not persuasive.  First, one of the cases cited by both Parties, *Yahoo*, is a breach of

10   contract case and not a patent case as alleged by Meta.  *See* 2017 WL 2177519, at *1 ("In this

11   lawsuit (the 'California action'), Yahoo alleges that MyMail breached two online agreements

12   governing use of certain Yahoo software.").  There is no basis in the law to limit the concerns

13   about contention deposition topics solely to complex IP cases.

14       Second, to the extent Meta argues that this case is more "straightforward" than a "complex

15   IP" case and thus should permit contention deposition testimony, that argument is not well taken.

16   *McCormick-Morgan* made clear the type of "straightforward" case in which contention deposition

17   testimony might be allowed: "a case arising out of a traffic accident."  134 F.R.D. at 287.  This

18   MDL involves multiple claims alleging myriad violations of different laws and seeking various

19   forms of relief; the issues here involve technical, business, financial, and health-related matters

20   surrounding the use and promotion of social media.  Meta cannot credibly argue that this case is

21   straightforward like a traffic accident case.  The complexity here is more analogous, at least in its

22   scope and complexity, to so-called "soft IP" cases such as the two cited by Meta.  *See* Dkt. 1671 at

23   11 (citing *3M Co. v. Kanbar*, No. C06-01225 JW (HRL), 2007 WL 1794936 (N.D. Cal. June 19,

24   2007); *Lenz v. Universal Music Corp.*, No. C 07-03783 JF (PVT), 2010 WL 1610074 (N.D. Cal.

25   Apr. 20, 2010)).

26       Meta's argument that these deposition topics are not contention topics because they seek

27   "factual" bases for "beliefs" is not persuasive.  As argued by Plaintiffs, the Court has compared

28   these amended topics with the topics found by the Court to be objectionable in Meta's original

United States District Court
Northern District of California

30(b)(6) deposition notice, and it is apparent that Meta simply word-smithed the topics to replace the word "contention" with the word "belief." Meta does not propose (and it is difficult in this context to discern) a substantive difference in this context between a "contention" in a litigation as opposed to a "belief" as to an issue in dispute in that litigation. Deposition topics such as these which seek "factual bases" for an opposing party's "beliefs" as to issues in dispute are, by a plain reading, seeking the facts supporting that party's contentions on those issues.

Accordingly, the Court **SUSTAINS** the objections to Topics 20-24 and 29-30 because they are contention deposition topics, which are inappropriate in this MDL. As discussed by *McCormick-Morgan* and other cited cases, the testimony sought by these topics is better sought by carefully crafted contention interrogatories instead of by 30(b)(6) testimony.

However, the Court is not persuaded by the State Plaintiffs' arguments that these topics are also objectionable because they seek privileged information that is protected from discovery. [Dkt. 1671 at 14]. Just because a deposition topic may implicate information protected from discovery because of the attorney-client privilege or work product doctrine is not necessarily a basis to foreclose that entire topic—the applicability of a privilege objection will often depend on the specific question asked. Additionally, whether or not a 30(b)(6) deposition topic touches on topics that an expert witness may in future testify about is not necessarily a basis to foreclose questioning on that entire topic (which might be drafted to encompass to factual matters as opposed to expert opinion). Whether a question is objectionable because it seeks expert opinion testimony from a lay fact witness will depend on the specific phrasing of the topic and the questions asked of the deponent.

Meta argues, in the alternative, that, in the event the Court sustains the States' objections to these topics, Meta should be allowed to serve additional contention interrogatories as to these topics. *Id.* at 12. Meta further requests that these additional contention interrogatories not count towards Meta's limit on the number of interrogatories it can serve (thus asking for additional interrogatories over and above the limits previously set), and that the States be required to respond to such additional interrogatories by no later than thirty days before the close of fact discovery. *Id.* The Court notes that the State Plaintiffs' portion of the joint letter brief does not directly object to

United States District Court
Northern District of California

7

1    these specific requests, but rather argues broadly that Meta should not be entitled to unlimited

2    contention interrogatories.  *Id.* at 14.

3            Meta's request for additional interrogatories is curious because Meta argues that these

4    contention deposition topics should be allowed precisely because Meta has already received

5    allegedly inadequate responses to its previously served contention interrogatories.  *Id.* at 12.  The

6    fact that Meta has already served contention interrogatories undercuts its request for additional

7    contention interrogatories, because presumably Meta's able counsel already drafted and previously

8    served contention interrogatories which were directed at the State Plaintiffs' contentions that were

9    prioritized by Meta for earlier discovery.  The Parties here have demonstrated ample ability to

10   raise discovery disputes with the Court, and the Court expects the Parties to work collaboratively

11   and reasonably to resolve disputes over allegedly deficient responses to previously served

12   contention interrogatories.

13           Further, neither side indicates whether Meta has served up to the limit of its total number

14   of interrogatories yet.  Accordingly, as the moving party, Meta has not presented the Court with

15   sufficient grounds to consider whether Meta has any need at this time for additional

16   interrogatories.  Nor have the Parties discussed whether or not they have sufficiently met and

17   conferred on the issue of increasing the limits on the number of interrogatories.  Accordingly,

18   Meta's request for additional contention interrogatories which would not count against the limit is

19   **DENIED** as premature.  At this point in the litigation, the Parties know the procedures for meeting

20   and conferring as required for discovery disputes, and the Court expects the Parties to reasonably

21   discuss and negotiate any reasonable increase in interrogatories, if good cause exists for such

22   increase.  Because the Court denies Meta's request for additional contention interrogatories, the

23   request for a deadline for the State Plaintiffs to respond to any such additional interrogatories is

24   **DENIED AS MOOT**.

25           <u>**Topics 31-32—Other Alleged "Contention" Topics**</u>

26           The State Plaintiffs assert the same objections to Topics 31 and 32, arguing that they are

27   "contention" topics which should be stricken from the amended 30(b)(6) notices.  *Id.* at 13-14.

28   Topics 31 and 32 read as follows:

1

2      31.    The State's consideration, analysis, or views regarding any Social Media
Platform directed at children under the age of 13, including without limitation a
3      potential version of Instagram for children under the age of 13.

4      32.    The State's May 10, 2021 letter to Mark Zuckerberg regarding "Facebook's
Plans to Develop Instagram for Children Under the Age of 13," including without
5      limitation any consultation with any other State regarding this letter.

6      [Dkt. 1671-1 at 11].

7             Unlike the topics discussed above, Topics 31 and 32 do not follow the formulation seeking

8      "factual bases" for the Plaintiff's "beliefs" as to issues in dispute.  The analysis of these topics

9      therefore turns on their specific drafting.

10            Topic 31 seeks each State Plaintiff's "consideration, analysis, or views regarding any

11     Social Media Platform directed at children under the age of 13."  Topic 32 refers to a letter from

12     the States to Mark Zuckerberg.  The State Plaintiffs incorrectly argue that Topic 31 seeks

13     "information about the State AGs' 'views' regarding social media platforms for users under age

14     13" and that Topic 32 seeks "the same information" by way of the correspondence from May

15     2021.  [Dkt. 1671 at 13].  This objection by the State Plaintiffs is based on the mistaken position

16     that a 30(b)(6) notice directed to a party plaintiff is somehow a 30(b)(6) notice seeking testimony

17     from counsel for that plaintiff.  As discussed at length in DMO No. 14, the States' prior objections

18     to the original 30(b)(6) notice rested on similarly erroneous views on how Rule 30(b)(6) works.

19            The States' objection that the amended deposition notice served by Meta is an improper

20     attempt to take discovery of the "views" of each State AG is unfounded and legally erroneous

21     under Rule 30(b)(6).  The States' AGs are not the entities who received the 30(b)(6) notices; the

22     party Plaintiffs are the entities who are the target of the notices.  Indeed, at last month's DMC,

23     Meta made clear that its 30(b)(6) notices are seeking testimony from each Plaintiff as a Party, not

24     from agencies of each State such as the State AGs' offices.  *See* Dkt. 1578 at 65:20-21 ("[I]t's not

25     that we're taking a deposition of the agency because if we had wanted that, we would have done

26     that via 30(b)(6)[.]").

27            Accordingly, the States' objection that Topics 31 and 32 improperly attempt to take

28     discovery from all of the State AGs on their "views" is **OVERRULED**.

1    The Court notes that Topics 31 and 32, as drafted, could be construed to implicate some

2 information protected from discovery by either the attorney-client privilege or the work product

3 doctrine.  However, whether an objection as to privilege is properly raised will almost surely

4 depend on the specific question asked.  While the States may have some nonprivileged

5 considerations, analyses, or views regarding social media platforms, it is also possible (if not

6 likely) that privileged materials exist as well.  Thus, while the Court does not sustain the objection

7 to Topics 31 and 32 as a whole, the Court directs Meta to carefully phrase deposition questions to

8 avoid unnecessarily probing into attorney-client privileged or work product materials, directs the

9 State Plaintiffs (and their counsel) to only assert properly founded privilege objections at the

10 depositions, and directs the Parties to reasonably and promptly meet and confer to negotiate

11 resolutions of any privilege disputes.

12    **Topics 11 and 12—State Confidentiality Statutes**

13    The State Plaintiffs object to Topics 11 and 12 on the grounds that these topics seek

14 testimony on areas which are confidential under various state laws.  [Dkt. 1671 at 15].  Topics 11

15 and 12 provide:

16    11.  Any investigations or inquiries by the State into Social Media Platforms for
possible violations of the State's consumer protection laws during the Relevant
17    Period.

18    12.  Any State effort to suspend, revoke, fine, or otherwise sanction Defendants or
19    any other company owning or operating a Social Media Platform for possible
violations of the State's consumer protection laws during the Relevant Period.
20

21 [Dkt. 1671-1 at 7].

22    The State Plaintiffs object that these topics seek testimony on investigations by State AGs

23 into other social media platforms (not just Meta), that various state laws foreclose public

24 disclosure of information obtained by State AGs in consumer protection investigations, and that

25 there exist "in some cases" barriers to public disclosure for law enforcement purposes or because

26 of unspecified public interest.  [Dkt. 1671 at 15].  The States also assert a privilege they refer to as

27 the "investigatory privilege" as a basis to object to Topics 11 and 12.  *Id.* (citing *FTC v. Warner*

28 *Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *United States v. City of L.A.*, No. 2:11-cv-

United States District Court
Northern District of California

1    00974-PSG-JC, 2023 WL 6370887, at *8 (C.D. Cal. Aug. 28, 2023)).

2    In the briefing, the State Plaintiffs do not discuss the impact of the Protective Order in this

3    case, which would protect from public disclosure any testimony properly designated as

4    confidential.  Nor do they explain whether they sought, proposed, or tried to negotiate any

5    necessary amendments to the Protective Order to specifically address a state law on

6    confidentiality.  The Court notes that, previously in this case, the Illinois Department of Children

7    and Family Services made similarly sweeping objections to document production based on

8    confidentiality concerns under state law, without seeking by motion an amendment to the

9    Protective Order.  *See* Dkt. 1646 at 13.  Asserting a state law on confidentiality may be a basis to

10    amend the Protective Order, because it is well-known that protective orders can be drafted in ways

11    which satisfy fully confidentiality requirements under other statutory schemes (such as HIPAA).

12    The Court addressed those confidentiality concerns at last month's DMC and is disappointed that

13    the State Plaintiffs and Meta here did not follow that guidance.  The fact that there are asserted

14    confidentiality issues under state law is not a basis to object to an entire 30(b)(6) topic and the

15    States cite no law supporting the assertion that state confidentiality laws can trump the Federal

16    Rules of Civil Procedure.  *Cf.* U.S. CONST. art. VI, cl. 2.

17    As to the alleged "investigatory privilege" asserted by the State Plaintiffs, that assertion is

18    both legally and temporally uncertain.  The case law cited by the States recognizes the

19    "deliberative process privilege" which "permits the government to withhold documents that reflect

20    advisory opinions, recommendations and deliberations comprising part of a process by which

21    government decisions and policies are formulated." *Warner Commc'ns*, 742 F.2d at 1161.  The

22    information sought must meet two requirements for the deliberative process privilege to apply: (1)

23    "the document must be predecisional—it must have been generated before the adoption of an

24    agency's policy or decision;" and (2) "the document must be deliberative in nature, containing

25    opinions, recommendations, or advice about agency policies." *Id.* (citations omitted).

26    Furthermore, the deliberative process privilege is not absolute.  "The deliberative process

27    privilege is a qualified one. A litigant may obtain deliberative materials if his or her need for the

28    materials and the need for accurate fact-finding override the government's interest in non-

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    disclosure." *Id.* Factors to be considered in determining whether a litigant may obtain

2    deliberative materials notwithstanding the assertion of the deliberative process privilege include:

3    (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role

4    in the litigation; and (4) the extent to which disclosure would hinder frank and independent

5    discussion regarding contemplated policies and decisions." *Id.* (citations omitted).

6         Here, it is evident from the face of Topics 11 and 12 that these topics might implicate

7    information subject to the deliberative process privilege, but these topics also cover a scope which

8    might implicate information not properly protected by that privilege. Furthermore, it may be

9    possible that the qualified nature of the privilege does not foreclose questioning as to some

10   quantum of specific questions subsumed by these two topics.

11        As with the assertion of privilege objections discussed above, the assertion of the

12   deliberative process privilege here is both premature (because proper assertion of the privilege will

13   depend on the specific question asked) and overbroad in that the assertion of the privilege is not a

14   sufficient basis to foreclose all questioning under Topics 11 and 12 entirely. The State Plaintiffs

15   have not shown a sufficient legal basis to foreclose entire 30(b)(6) topics altogether based on an

16   assertion of the deliberative process privilege *ex ante*.

17        Accordingly, the States' objections to Topics 11 and 12 are **OVERRULED**. To the extent

18   the existing Protective Order is reasonably considered insufficient to address specific state

19   confidentiality laws, the Court **ORDERS** the Parties to promptly meet and confer and resolve that

20   concern by submitting a jointly proposed amendment to the Protective Order. If, in lieu of

21   modifying the Protective Order, the relevant state confidentiality law can be satisfied by court

22   order requiring the testimony, this Order **SHALL** be so construed as requiring such testimony.

23   *See* Dkt. 1646 at 13. To the extent the deliberative process or alleged investigatory privilege may

24   be properly asserted will depend on the specific questions asked at the depositions, and the Court

25   incorporates herein its previous admonitions to the Parties regarding reasonably questioning

26   deponents and asserting well-founded objections, and to meet and confer to resolve such disputes

27   reasonably and promptly.

28

1      **Topic 26—States' Activity in Bringing Suit**

2          The final disputed topic, Topic 26, reads as follows:

3          26.    The State's activity related to bringing this lawsuit, including (i) timing,
           procedures, decision making process, and approval for filing the Complaint, and (ii)
4          the State's consultation, collaboration, or agreements with outside entities or people.

5

6      [Dkt. 1671-1 at 11].

7          The State Plaintiffs argue that Topic 26 seeks information protected by the attorney-client

8      privilege and the work product doctrine, and also seeks information subject to the deliberative

9      process privilege or the investigatory privilege.  [Dkt. 1671 at 15].  Meta argues, without citation

10     to law, that some questions which would fall under this topic "do not appear to be privileged." *Id.*

11     at 12.  Meta argues that the States should raise privilege objections to specific questions instead of

12     striking the entire topic.  *Id.*

13         From a plain reading of Topic 26's introductory clause and subsection (i) ("The State's

14     activity related to bringing this lawsuit, including (i) timing, procedures, decision making process,

15     and approval for filing the Complaint"), it is clear that most if not all of that portion of the topic

16     implicates either the attorney-client privilege or the work product doctrine.  While Meta argues

17     that the timing of the filing of suit and the approval process for filing the suit does not "appear" to

18     be privileged, there is no legal support for that assertion.  Indeed, the two cases cited later in that

19     paragraph by Meta do not address this assertion and are readily distinguishable: one case involved

20     a motion under Rule 30(b)(1) to depose an in-house attorney, not a 30(b)(6) deposition; the other

21     case involved 30(b)(6) contention topics, not topics implicating privilege objections.  *Id.* (citing

22     *Stevens v. Corelogic, Inc.*, No. 14cv1158 BAS (JLB), 2015 WL 8492501, at *4 (S.D. Cal. Dec. 10,

23     2015) (prohibiting with only limited exception the questions to be posed to the in-house attorney

24     deponent); *Caesars Ent.*, 237 F.R.D. at 434 (allowing 30(b)(6) deposition because topics are not

25     privileged)).

26         A State's "activity related to bringing this lawsuit" is directly tied to this very litigation and

27     thus facially sweeps in a potentially wide swath of privileged information.  The Court finds that

28     the introductory clause and subsection (i) of Topic 26, on their face, are drafted so as to be

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    inextricably intertwined with (and call for testimony as to) information virtually all of which is

2    likely to be protected by the attorney-client privilege and/or the work product doctrine. As a

3    practical matter, these portions of Topic 26 are likely to elicit multiple, repeated privilege

4    objections and multiple disputes, which will render the deposition time-consuming with limited

5    benefit; as such, this part of Topic 26 is not proportional to the needs of the case. As discussed

6    above, the application of the deliberative process or investigatory privilege (which is qualified in

7    any event) requires a showing of multiple factors which are not present in the existing record.

8    Accordingly, the States' objections to Topic 26's introductory clause and subsection (i) on the

9    grounds of the attorney-client privilege and work product doctrine are **SUSTAINED** and all other

10    objections are **OVERRULED**.

11        As drafted, subsection (ii) of Topic 26 ("the State's consultation, collaboration, or

12    agreements with outside entities or people") has a scope which implicates some information that

13    would not be protected from discovery by either the attorney-client privilege or the work product

14    doctrine. As a general matter, third parties are typically not part of an attorney-client relationship

15    because, by definition, they are third parties or "outside" of that relationship. That is, if for some

16    reason a State Plaintiff consulted with a third party which was not covered by any privilege, then

17    by definition such consultation would not be privileged. Whether or not any such nonprivileged

18    consultation exists is properly the subject of discovery. With regard to subsection (ii), the

19    applicability of the attorney-client privilege and work product doctrine will be both fact-specific

20    and dependent on the particular question asked. As with the other portions of Topic 26 discussed

21    above, the objections based on the deliberative process and investigatory privilege are premature

22    and not supported on the current record. The States have not demonstrated sufficient grounds to

23    foreclose entirely all questioning under subsection (ii) of Topic 26. Accordingly, the State

24    Plaintiffs' objections to subsection (ii) of Topic 26 are **OVERRULED**. The Court's admonitions

25    regarding proper questioning and proper assertion of privilege objections, discussed above, apply

26    with equal force here however.

27

28

14

1          This **RESOLVES** Dkt. 1671.

2

3    **IT IS SO ORDERED.**

4    Dated: February 12, 2025

5    _____
     PETER H. KANG
6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

15