UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION**<br><br>This Document Relates to:<br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:23-cv-05448-YGR<br><br>**ORDER RE STATE ATTORNEYS GENERAL'S MOTION FOR RELIEF FROM MAGISTRATE JUDGE'S ORDER ON STATE AGENCY DISCOVERY** |
| **People of the State of California,** *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**Meta Platforms, Inc.,** *et al.,*<br><br>Defendants. | Re: Dkt. No. 1168 in<br>Case No. 22-md-03047 |

This order addresses a disagreement regarding plaintiff-states' discovery obligations. Importantly, the standard of review matters. Here, the Court has reviewed Magistrate Judge Peter Kang's 248-page Order Granting-in-Part and Denying-in Part Meta's Request for Party Discovery on Third-Party State Agencies et al. (Dkt. No. 1117, "Order"). All states' attorneys general (the "States" or "AGs") object, and the issue has been fully briefed and argued.

The Court has reviewed the Order and objections carefully. The Court finds the Order correct, well-reasoned, and thorough, and rejects most objections. The Order was contrary to law or reflected clear error with respect to Delaware, Kansas, Louisiana, Missouri, Nebraska, Rhode Island, and South Carolina. North Carolina and Wisconsin might be relieved of their obligations under the Order, depending on the content of their additional submissions required by the Court, as set forth herein.

## I.     STANDARD OF REVIEW

The parties dispute whether this Court must review the Order's determinations *de novo* or

United States District Court
Northern District of California

1    as *clearly erroneous or contrary to law*.[1]

2    　　　　The district court's review of a magistrate judge's order is governed by federal statute and

3    rules of civil procedure.  "The power of federal magistrate judges is limited by 28 U.S.C. § 636."

4    *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (quoting *Est. of Conners by Meredith*

5    *v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993)).  Pursuant to 28 U.S.C. § 636(b)(1)(A), when a

6    district judge "designate[s] a magistrate judge to hear and determine any pretrial matter pending

7    before the court," the district judge "may reconsider any pretrial matter under this

8    subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or

9    contrary to law."  By contrast, under 28 U.S.C. § 636(b)(1)(B), when a district judge "designate[s]

10   a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of

11   the court proposed findings of fact and recommendations for the disposition," then the district

12   judge "shall make a de novo determination of those portions of the report or specified proposed

13   findings or recommendations to which objection is made."

14   　　　　Thus, "[p]retrial orders of a magistrate under 636(b)(1)(A) are reviewable under the

15   'clearly erroneous and contrary to law' standard; they are not subject to *de novo* determination" as

16   are a magistrate judge's proposed findings of fact and recommendations under 636(b)(1)(B).

17   *Grimes*, 951 F.2d at 241 (quoting *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th

18   Cir. 1981)).  Under that standard, deference is afforded the non-dispositive order.  *Id.* (citing Fed.

19   R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "The reviewing court may not simply substitute its

20   judgment for that of the deciding court."  *Id.*

21   　　　　Operating within this statutory framework, Federal Rule of Civil Procedure 72

22   distinguishes between "nondispositive matters" and "dispositive motions" handled by a magistrate

23   ────────────────

24   　　　　[1] In their opening brief, the States do not discuss the appropriate standard of review—the
     brief lacks any reference to "de novo," and to the contrary makes reference to the "clearly
25   erroneous" and "contrary to law" standard on many occasions, notably in its introduction and
     conclusion.  *E.g.*, Dkt. No. 1168 at 2, 4, 16, 18 n.12, 19 & n.13, 27, 32, 38, 48 (citing Fed. R. Civ.
26   P. 72).  While Meta notes in opposition that the States appear to contend in effect that the
     magistrate judge's "control analysis is somehow contrary to law," Dkt. No. 1181 at 20, the States
27   on reply argue, for the first time, that "[t]he determination of control was primarily a legal
     conclusion, and thus should be reviewed *de novo*," Dkt. No. 1194 at 2.

28

judge. Fed. R. Civ. P. 72. As to "a pretrial matter not dispositive of a party's claim or defense . . . referred to a magistrate judge to hear and decide," the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). On the other hand, when a magistrate judge is "assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense," the "magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). In that circumstance, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

District courts routinely refer discovery matters to magistrate judges which are typically considered non-dispositive. *See Houseton v. Kirk*, No. 23-CV-06887, 2024 WL 3468742, at *5 (C.D. Cal. June 20, 2024) (quoting *United States v. Hansen*, 233 F.R.D. 665, 669 (S.D. Cal. 2005)). As in *Houseton*, plaintiff-States have cited no cases to the contrary.[2] Thus, this Court considers timely objections and will modify or set aside any part of the order that is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## II.    OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

The States object to every component of the Order: collectively, to the shared portions and conclusion of the Order, and individually, to each portion of the Order addressing each respective State. The Court reviews each set of objections.

### A.    Arguments Common to All States

The States levy a series of arguments against Judge Kang's determination that they have legal control over state agency documents under Ninth Circuit law. The primary focus of the objections centers on the AGs' roles as independents state officials. The Court describes each

---

[2] The States' citation to *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983) does not persuade otherwise. Even accepting that the "contrary to law" component of the standard of review "allows independent, plenary review of purely legal determinations by the magistrate judge," *Sundby*, 2020 WL 4015694, at *2, such plenary review under the "contrary to law" standard is not equivalent to "de novo" review.

United States District Court
Northern District of California

1    objection and assesses whether the objections, independently or collectively, "show[] that the

2    magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

3        The Federal Rules of Civil Procedure require a party to produce relevant documents within

4    its "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  The parties agree that, under Ninth

5    Circuit law, "[c]ontrol is defined as the legal right to obtain documents upon demand."  *In re*

6    *Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting *United States v. Int'l Union of*

7    *Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)).  "Ordering a party

8    to produce documents that it does not have the legal right to obtain will oftentimes be futile,

9    precisely because the party has no certain way of getting those documents."  *Id.* at 1108 (holding

10   that a party lacked legal control over an entity's documents where "there is no mechanism for [the

11   party] to compel [the entity] to produce th[e] documents" and the entity "could legally—and

12   without breaching any contract—continue to refuse to turn over such documents").

13       "[T]he inquiry for control is fact-specific" and requires the court to assess "the totality of

14   circumstances" when determining whether "one governmental entity has control over the

15   documents of another governmental agency."  (Order at 9.)  As the Order explains, factors in that

16   totality of circumstances most relevant here include (i) state government structure, specifically, the

17   legal relationship between the AG and third-party state entities as counsel or otherwise, the role of

18   an AG as an independent official, and any statutory restrictions on access to documents; (ii)

19   whether and in what capacity the state is a party to the suit; and (iii) the third-party state entities'

20   involvement in the litigation and prospective benefit from successful suit.

21       The States object to the Order's findings on numerous grounds, often retreading arguments

22   across multiple objections.  The States common objections focus on the Order's determinations

23   relating to (i) the impact of separation of powers principles and the dual-executive structure of

24   state governments, (ii) whether and how an AG's authority can confer authority to obtain state

25   agency documents, and (iv) the Order's application of the burden of proof.

26           **1.    Separation of Powers and the Dual-Executive State Government**

27       The States argue that finding an AG has control over state agency documents upends the

28   "dual executive" structure of certain state governments and separation of powers principles.

United States District Court
Northern District of California

4

1    Some courts have focused on separation of powers and dual-executive considerations and

2    held that an AG does not have legal control over state agencies by virtue of fact that the AG and a

3    given state agency are both part of the executive branch.  *See United States v. Novartis Pharms.*

4    *Corp.*, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) ("[T]he mere fact that a state or a state

5    agency sues does not mean that the records of all state agencies may be discovered using

6    Rule 34's tools."); *United States v. Am. Express Co.*, 2011 WL 13073683, at *2 (E.D.N.Y. July

7    29, 2011) ("[S]tate agencies—even those that are part of the executive branch—are neither subject

8    to common executive control nor interrelated with the State Attorneys General, and so should not

9    be aggregated together for discovery purposes."); *Colorado v. Warner Chilcott Holdings Co. III,*

10    *Ltd.*, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007) (noting, among other considerations, that

11    "where two government agencies are neither interrelated nor subject to common executive control,

12    they will not be aggregated together for purposes of discovery" and that "[a]lthough the . . .

13    agencies may be subject to control by their Governors, the State Attorneys General are not subject

14    to discipline or removal by their Governors and bring suit under their own authority"); *New York*

15    *ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 266 (N.D.N.Y. 2006)

16    (Following defendants' "argument to its logical conclusion, any lawsuit brought by the State of

17    New York would subject all twenty-two executive agencies, the legislature, the judiciary, quasi-

18    state agencies, and possibly public authorities to disclosure scrutiny, notwithstanding their relative

19    remoteness to the issue of the case.").[3]

20    Citing these cases, the States explain that, on the one hand, AGs bring lawsuits in their

21    independent enforcement capacity, and on the other, AGs can and sometimes must serve as

22    outside counsel to state agencies.  (Dkt. No. 1168 at 5–6.)  These two roles, the States stress, are

23    separate and distinct, and the AGs "have different authority, rights, and obligations depending on

24    the function they perform."  (*Id.* at 6.)  Taking that as true—and the Court sees nothing

25

26    ───────────────

    [3] *See also People ex rel. Lockyer v. Superior Ct.*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct. App.
27    2004) ("[S]tate agencies, in the ordinary course of their duties, are distinct and separate
    governmental entities, third parties under the discovery statutes that can be compelled to produce
28    documents only upon a subpoena.").  *Lockyer* did not apply Rule 34.  *See* Order at 14.

objectionable in that characterization—the States miss the point.  An entity *can* still have legal

control over the documents of an entirely independent entity, as the Order explains:

> These arguments ignore the reality that the "legal control" issue for discovery arises when there are two legally distinct or separate entities.   If the mere fact that two separately constituted or formed entities were enough to defeat control, then there would almost never be a finding of control.   Indeed, in the analogous situation where two "sister corporations" are involved, courts have found control of one entity over the documents of another.  *See Uniden*, 181 F.R.D. at 307–08 (finding control as between two "sister corporations" where neither was under the corporate authority of the other).   This illustrates the point: if one of two "sister corporations" can be found to have control over documents of the other, then for the same reasons, one of two parts of a split or dual executive can be found to have control of documents of the other.
>
> . . .
>
> The existence of a separation of powers between a state Attorney General and a Governor may be a factor in the control analysis, but that factor does not necessarily preclude the Attorney General's legal right to access to state agency documents.  The logical fallacy of the "separation of powers" argument is that this concept concerns distinct spheres of governmental authority to act within their roles as arms of the government and does not necessarily impact whether or not there is control of documents for purposes of discovery. . . .

(Order at 13–14.)  Thus, "[w]hether or not there is a 'dual executive' or separation of powers is not

by itself dispositive of the control issue."  (*Id.* at 13.)

The Order does not, as the States contend, conflate these two roles in a legally

impermissible manner for purposes of "control" under Rule 34.  Instead, the Order recognizes that

separation of powers principles, or an AG's role in the "dual executive" structure, neither defeats

nor permits a finding of "control."  The question is whether there is some mechanism that confers

on a given AG the legal right to obtain documents of a state agency on demand, discussed *infra*

with respect to the state-specific arguments.  The States' authority stands for the unobjectionable

proposition that courts cannot find that state agency documents are subject to an AG's control

merely because both entities are housed within the executive branch.  In each of those cases, the

party seeking production of state-agency documents failed to identify and explain the mechanism

and authority that entitled the AG to obtain documents of that state agency.  Not so here.

Additionally, the States proffer that, under this approach, any payday lender sued by an AG could demand access to the governor's documents through party discovery, even if the governor's office declined to provide those documents,[4] because the AG might represent the governor in a different capacity.  This hypothetical does not persuade.  For one, the Order limits its scope to state offices and entities for which the attorney general has a legal right to obtain documents.  A state agency's willful violation of federal discovery rules, i.e., an order from the court, does not change whether the AG has "control" as a matter of law.  Further, party subpoenas are nonetheless bounded by traditional discovery limits of relevance, proportionality, and undue burden that would limit this hypothetical payday lender from perusing a governor's files.

In this respect, the States have not shown that the magistrate judge's order is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

## 2.    Attorney General Authority to Obtain State Agency Documents

Having addressed the States' objections as to separation of powers and the dual-executive structure of certain state governments, the Court arrives at the core of the issue: whether and how an AG can have legal control over state agency documents.

In this regard, the Order considered a variety of factors that, depending on the totality of the circumstances, may confer upon an AG a right to access certain state agency documents.  This Court does not address every factor laid out in the Order (*see* Order at 8–41) but rather focuses on the factors most central to the Order or those repeatedly disputed in the States' objections.  Those factors include: (a) whether the AG brings suit in the name of the state, the AG, or as *parens patriae*; (b) whether an AG as legal counsel to state agencies has "control" over its clients' documents; and (c) the state-specific statutory structure of assigning state-agency representation,

---

[4] *Cf. Johnson & Johnson v. Wilson*, No. S-1-SC-39284, 2025-NMSC-003, ¶ 38 (N.M. Oct. 21, 2024) ("The State's 'virtual veto' theory claims that involving the OAG in discovery targeting non-party executive agencies would jeopardize state-interest civil litigation brought by the Attorney General by encouraging interference from the Governor or the agencies themselves.  Yet, at the same time, the State concedes that the OAG has exclusive authority over initiating state-interest civil litigation, which directly contradicts the State's claim that such authority could be undermined by gubernatorial or agency actions.").

in particular, whether the AG can require that a state agency utilize the AG's legal services.  The Court concludes this section by reviewing two illustrative cases, *Generic Pharmaceuticals* and *Monsanto*.

a)  **"Named" Parties to the Action**

In thirteen cases, the States themselves are the named plaintiffs and the AGs are not named as co-plaintiffs, but rather counsel representing the plaintiff state.[5]  In nineteen cases, both the State and AG as relator are the named plaintiffs, and thus are both entities are parties to the suit represented by the AG.[6]  In every case, "the State itself is a party to the suit."  (Order at 17.)

The Order found that "[c]ourts have found that discovery obligations extend to other government agencies even if they are non-parties based on the recognition that the State (or the government as a whole) is essentially the real party in interest and thus the discovery obligation extends to the entire government."  (*Id.*)  The Order quotes from, among other cases, *Harvey Aluminum (Inc.) v. NLRB*, in which the Ninth Circuit wrote that "[t]he rationale of the rule" that requires the government to provide a defendant with access to impeachable testimony of a government witness "applies with equal vigor whether the statements are in the possession of the agency conducting the hearing or of another agency of the government. . . .  In a criminal prosecution the Department of Justice would scarcely be heard to say that it was not required to produce statements otherwise within the rule simply because the documents rested in the hands of another federal agency, and we perceive no valid distinction, for this purpose, between that case and this one."  335 F.2d 749, 754 (9th Cir. 1964) (footnote omitted); *see also Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) ("When an agency of government institutes suit, any obligation to disclose relevant information extends to the

---

[5] Order at 16–17 (listing California, Connecticut, Idaho through its Attorney General, Illinois, Indiana, Kentucky, Louisiana, Maine, Minnesota by its Attorney General, New York by its Attorney General, Pennsylvania by its Attorney General, Rhode Island, and Wisconsin as plaintiffs).

[6] Order at 17 (listing the Attorney Generals of Arizona, Colorado, Delaware, Georgia, Hawai'i, Kansas, Michigan, Missouri, Nebraska, North Carolina, North Dakota, Ohio, Oregon, South Carolina, South Dakota, Virginia, Washington, and West Virginia).

United States District Court
Northern District of California

1    government Qua [sic] government requiring disclosure of all documents in its possession, custody

2    or control, not just those materials in the immediate possession of the particular agency-

3    plaintiff.").[7]

4        However, the Order recognizes that other courts have refused to "aggregate separate state

5    governmental agencies" for discovery purposes. *Colorado v. Warner Chilcott Holdings Co. III,*

6    *Ltd.*, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007). Thus, the Order considers the fact that the

7    States are parties as part of "the totality of the circumstances for evaluating control for each state."

8    (Order at 19.) That approach reflects neither clear error nor is contrary to law.

9        Additionally, the Order discusses how "courts have found when a state Attorney General

10    initiates litigation on behalf of the state, and thus exercises authority to file a lawsuit *parens*

11    *patriae*, that Attorney General has legal control over agency documents." (Order at 20.) *See, e.g.,*

12    *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) ("In this

13    Court's view, where the plaintiff is the State of Washington, discovery addressed to the State of

14    Washington includes its agencies. Because the AGO is the law firm to the State of Washington,

15    the AGO should respond to and produce discovery on behalf of the State of Washington, including

16    its agencies."); *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum*

17    *Co.*, 105 F.R.D. 16, 35 (S.D.N.Y. 1984) ("When an agency of government institutes suit, any

18    obligation to disclose relevant information extends to the government qua government requiring

19    disclosure of all documents in its possession, custody or control, not just those materials in the

20    immediate possession of the particular agency-plaintiff." (quoting *Ghana Supply Comm'n v. New*

21    *England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979))). Here, because every AG brings a

22    claim under the Children's Online Privacy Protection Act ("COPPA"), each brings suit under its

23    *parens patriae* authority. *See* 15 U.S.C. § 6504(a)(1). The States, quite simply, ignore this fact in

24    their papers.[8]

25

26    _____

27        [7] The Order then collected cases where "state agencies have been found to be agents of
    their respective States," thus placing them under control of the state. Order at 18.

28        [8] A few even seem to believe that they are not before this court in any *parens patriae*

United States District Court
Northern District of California

1    These considerations, thus, weighs in favor of finding a control with respect to *all* AGs.

2    Other state-specific factors may demonstrate the AG in fact lacks control, discussed *infra*

3    Section II.B.

4                    **b)    Attorney General as Counsel for State Agencies**

5    As to almost all states, the Order centrally relies on the fact "that a state Attorney General,

6    presumptively counsel for its state agencies, has legal duties to supervise the collection of (and

7    possibly directly obtain) documents from those agencies for discovery leads logically to the

8    conclusion that the state Attorneys General have the legal right to access those documents. That

9    is, counsel's legal duty to ensure collection of documents from a client is a different aspect of (and

10   correlates juridically to) a legal right to access those documents, and thus supports the conclusion

11   of control for purposes of discovery." (Order at 27.)

12   The Order did not tread new ground in so holding. *See, e.g.*, *Bd. of Educ. of Shelby Cnty.,*

13   *Tenn. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012)

14   ("Based upon these statutory duties to handle 'all legal services,' 'direct and supervise' all

15   litigation, and 'represent' the State of Tennessee, one such responsibility [of the AG] must be to

16   respond appropriately to discovery requests on behalf of the entities of the state government that

17   he represents as required by the Federal Rules of Civil Procedure."); *In re Generic Pharms.*

18   *Pricing Antitrust Litig.*, 699 F. Supp. 3d 352, 357–58 (E.D. Pa. 2023). The Order further relied on

19   numerous other authorities which, although not all decided under the right-to-obtain test, are

20   nonetheless illustrative. (Order at 28–30.) *See, e.g.*, *Perez v. Perry*, 2014 WL 1796661, at *2

21   (W.D. Tex. May 6, 2014) ("In general, an attorney is presumed to have control over documents in

22   its client's possession. . . . [I]t is inconsistent for the State to argue that on one hand the Attorney

23   General represents these individuals, but that for discovery purposes the United States must resort

24   to Federal Rule of Civil Procedure 45."); *Love v. NJ Dep't of Corr.*, 2017 WL 3477864, at *6

25   (D.N.J. Aug. 11, 2017) ("[T]he Court takes judicial notice that the Attorney General is obligated

26   to defend State employees against civil claims . . . . [T]he Court finds that State has a significant

27   _____

28   capacity. Dkt. No. 1168 at 22–23 (Idaho), 28 (Maryland), 42 (South Dakota).

10

United States District Court
Northern District of California

stake in the outcome of this suit and that [plaintiff] has met his burden to prove that the Northern

State Officers have 'control', albeit through their attorney, over the records and information at-

issue." (footnotes omitted)); *Williams v. Hawn*, 2022 WL 22859198, at *2 (W.D. Mich. Aug. 26,

2022) ("Courts have considered the existence of a principal-agent relationship sufficient to satisfy

the 'possession, custody, or control' requirement. . . .  Here, Defendants are represented by the

Michigan Attorney General, which has demonstrated access to [Michigan Department of

Corrections] documents and materials in many cases before this Court."); *cf. Synopsys, Inc. v.

Ricoh Co.*, 2006 WL 1867529, at *2 (N.D. Cal. July 5, 2006) ("Although the Court acknowledges

that voluntary cooperation between a party and a third party does not automatically establish

control, the facts here suggest that there is more than just voluntary cooperation.  It is especially

telling that [a third-party entity] agreed to be represented by [defendant's] counsel for purposes of

discovery . . . .").[9]

The States object to the premise that AGs have the legal right to obtain state agency

documents where it acts as counsel for a state agency, arguing the Order misunderstands the "two

distinct and separate roles" of an attorney general: one, as an independent enforcement officer, and

the other, as statutorily mandated counsel for certain agencies and other officials in circumstances

specified by state law.  (Dkt. No. 1168 at 5.)[10]  Yet, the authorities cited above and discussed in

the Order rebut the AGs' concerns about an intractable conflict between the two roles.  As the

---

[9] The Order notes that one court found that the holding in *Synopsis* "did not fundamentally rely on the 'practical ability' test."  (Order at 29.)

[10] For example, the States represent that certain AGs offices can and do represent state agencies that are adverse to one another (*see, e.g.*, Dkt. No. 738-9 ("In fulfilling these multiple functions, [the Hawai'i AG] may even both represent a state employee in one case and prosecute that same employee in another.")), and can and do act adverse to state agencies they may otherwise represent (Dkt. Nos. 738-8 (describing how certain of Georgia's "elected officials—including the Governor and the AG—can have different interests and litigate against each other"); 738-14 ("[T]he [Kentucky AG] on occasion finds itself in direct legal conflict with these agencies."); 738-26 ("Such a right [of access to state agency documents] would lead to absurd results, particularly in situations where the [North Dakota AG] represents one state government branch or agency in litigation adverse to another state government branch or agency.")). (Dkt. No. 1168 at 7.)

United States District Court
Northern District of California

1    Order explains, if a state agency's use of the AG as counsel is not mandatory but relies on that

2    agency's consent, the control analysis may depend on factors such as whether the agency has

3    committed to being represented by the AG or the agency cannot avoid the AG's representation.

4    (Order at 29.)  Often, the agency's ability to choose representation "is subject to the discretion of

5    the state [AG] or some other restriction (such as a conflict of interest)."  (*Id.* at 30.)  Nothing about

6    the Order's nuanced assessment of these factors and the circumstances of the AGs' relationship

7    with the relevant state agencies—legal and factual—reflects clear error or is demonstrably

8    contrary to law.[11]

9          Critically, the record presented in this case underscores these AGs' exercise of their broad

10   directive as the chief legal supervisors of their respective states and how many have acted as

11   presumptive counsel for state agencies.  As the Order explains:

12              [A]t hearings in this Multi-District Litigation which involves some
               states where the state agency may have some ability to be represented
13              by counsel other than the state Attorney General, this Court has
               inquired of and suggested to the State Attorneys General that they
14              discuss this litigation and confirm whether or not the agencies at issue
               will rely on their local state Attorney General.  *See* Dkt. 818.  The
15              Court notes that, to date, no separate counsel has entered appearances

16

17   ───────────────────────────

18         [11] The States further argue that even if an AG acted as outside counsel to a nonparty
     agency, the attorney-client relationship cannot provide the legal right to access nonparty clients'
19   documents, much in the same way that the States could not serve Rule 34 subpoenas on defense
     counsel to obtain documents of their other clients.  Dkt. No. 1168 at 9; *see Am. Express Co.*, 2011
20   WL 13073683, at *3 ("Without question, the private firms here would strenuously object if in
     bringing a law suit on behalf of one client (or even in their own name) their adversary sought
21   documents belonging to another client as party discovery.").  Meta suggests in response that "[i]n
     cases dealing with private counsel, this factor"—the close coordination underlying an attorney-
22   client relationship—"may not tip the balance in favor of finding that the private legal services
     provider has control over a non-party client's documents."  (Dkt. No. 1181 at 17.)  As the Order
23   explains, "the Court is not holding broadly that the law requires finding a legal right of access to
     and thus control over third party client documents in every case involving a legal services provider
24   as a party.  However, this factor is one of the totality of factors which impact the control inquiry
     and here, because the state Attorneys General are either parties themselves or at least are counsel
25   for a party, and because the state Attorneys General will represent the state agencies for discovery,
     this factor takes on particular significance."  Order at 34.  In the same vein, the States' analogy to
26   private legal service providers is particularly unpersuasive because defense counsel does not share
     the same constitutional, statutory, and common-law authority to manage their private clients' legal
27   affairs as does an AG with respect to the governance of state legal affairs.

28

for any of the state agencies at issue, and the state Attorneys General previously indicated that they have either chosen not to or (at minimum) simply failed to confer with their state agencies, even as a courtesy. However, a number of State Attorneys General have voluntarily sent litigation hold notices to their respective identified agencies, and pursuant to this Court's Order, the State Attorneys General who did not voluntarily do so have sent litigation hold notices to their respective agencies. [Dkt. 1025]. Despite having notice of this litigation and the fact that they may be the subject of discovery, none of the state agencies at issue have moved to intervene to advance their own alleged interests in not being subject to party discovery. And no state agencies (where they would have the ability to do so under state law) have indicated that they retained private or separate counsel (such as agency counsel) to represent their interests without the benefit of otherwise free legal representation from their State Attorney General. Thus, the current record submitted to this Court for decision indicates that no state agencies have confirmed they will retain separate counsel (as none has entered appearance), and the Court analyzes the issues for the states below with the factual record as the State Attorneys General have chosen to submit.

(Order at 29–30.)

"[T]he upshot is that, on the current record before the Court, it appears that all (or virtually all) of the state Attorneys General will represent both the named plaintiff and the state agencies at issue for purposes of discovery in this case." (Order at 31.)

The district court—both the magistrate and district judges moving the case forward—are limited by the facts and law before it. By Judge Kang's determination, the AGs and the agencies at issue provided no timely indication these agencies would be represented by counsel other than the AGs' offices.[12] That certain AGs decided not to confer with those agencies on this question of representation, and that those state agencies' decided not to advocate for themselves despite being sent litigation hold notices, was either a gamble with risky payoff or further indication these agencies have actually relied on the AGs as counsel. It is particularly dilatory for these agencies

---

[12] For instance, separate counsel for the Office of the Governor of the State of New York noticed their appearance in the MDL and informed the Court of their representation on December 11, 2024, many months after this dispute began. (Dkt. Nos. 1440, 1443.) The parties filed their joint discovery letter brief on this issue on March 15, 2024 (Dkt. No. 685), the States filed their individual supplemental briefs on April 1, 2024 (Dkt. No. 738), and the Order issued on September 6, 2024.

United States District Court
Northern District of California

1    to sit back and rely on their AG to effectively act as their counsel by advocating on their behalf

2    over months of litigation, now to disclaim any such association with their AG.  Where the agency

3    has benefitted from the AG's control of their litigation, it should come as no surprise that such

4    control comes with corresponding burdens.[13]

5         As a closing note, similar to their arguments with respect to separation of powers, the

6    States allude to possible conflicts of interest between the AGs and state agencies.  This specter of

7    potential conflicts of interest does not persuade.  The only apparent reason for a conflict between

8    the AGs and certain state agencies on the record before the Court is that some agencies simply do

9    not want to comply with these discovery requests or would prefer to elect the more burdensome

10   procedures of third-party discovery.  Three issues.  One, no party or third party gets to decide what

11   discovery process they are subject to.  Here, that is a matter of federal law.  Two, certainly, there

12   can be genuine conflicts between state entities that merit separate counsel.  *See, e.g.*, *D'Amico v.*

13   *Bd. of Med. Examiners*, 520 P.2d 10, 17 n.5 (1974) (noting that, while the AG was statutory

14   counsel for two *co-defendants*, it identified a possible conflict of interest, and one defendant

15   consequently retained separate counsel).  There is no support in the record to show such

16   circumstances are present.  Three, the AGs are perfectly competent to lodge any agencies'

17   objections to requests for production and can calibrate the strenuousness of that objection to their

18   clients' preference—which, in fact, they have already been doing.[14]  Ultimately, the state agencies

19   _____

20        [13] Separately, many states object to the Order's interpretation of their representations with
     respect to whether communications between the AG and an agency are privileged.  Many AGs
21   represented that *if* they engage with an agency in a representative capacity, those communications
     would be privileged.  *E.g.*, Dkt. No. 738-4 at 1 ("[W]hen the [Colorado] AG is serving as legal
22   counsel for a state agency, his attorneys' communications with the agency are privileged.").  The
     Order did *not* interpret these statements to mean that a given AG *will* represent an agency in all
23   circumstances.  Rather, the Order merely notes that "[a]ssertion of the attorney-client privilege
     requires, as a prerequisite, the existence of an attorney-client relationship."  Order at 60.  That is,
24   these statements largely confirm that when a state agency is represented by the AG, it is in a legal
     capacity, and thus in that circumstance the AG *would* have control.  Of course, this all begs the
25   underlying question—when and whether an AG acts as the legal representative to a state agency.

26
          [14] For similar reasons, the Court finds the States' objections on the grounds that different
27   legal personnel other than the enforcement attorneys pursuing this litigation would represent state
     agencies unpersuasive.  The AG exercises control over its department.  The Order's balance of
28   these considerations under the totality of the circumstances neither reflects clear error nor is

United States District Court
Northern District of California

1    protesting discovery miss the point: whether by party or third-party discovery, if a document is

2    relevant, it will be produced.  In federal court, federal law dictates the process by which that

3    occurs.

4                    **c)      Statutory Structure of State Agency Representation**

5            In almost every circumstance, each state provides by statute who may represent a state

6    agency under what circumstances.  While each state is different, the vast majority share materially

7    similar approaches.  The Court assesses the States' objections to the Order's construction of each

8    state's statutes *infra* Section II.B, but a few preliminary comments are appropriate given certain

9    repeat objections.

10           Many states provide that the AG is charged to supervise the general legal affairs of the

11   state and that state agencies may not obtain separate counsel without "the written consent of the

12   Attorney General." *See, e.g.*, Cal. Gov't Code § 11040(c).  In other words, the AG has the

13   effective authority to mandate that it represent the agency in connection with this litigation.  Many

14   States argue that, notwithstanding such provisions, the agencies have discretion to obtain separate

15   counsel or, as discussed above, an AG's exercise of its authority in this way runs roughshod over

16   separation of powers and the dual-executive state structure.  In the Court's view, these are political

17   considerations.  The Order identified that, as a matter of federal law, this mechanism provides an

18   AG with the authority to control this litigation on behalf of state agencies and by extension have a

19   right to access relevant documents in their possession for purposes of discovery.  Under this

20   deferential standard of review, the Court cannot say that such determination is contrary to law or

21   clearly erroneous.

22           However, "[i]f a state agency's use of the state Attorney General as legal counsel is not

23   mandatory but relies on consent of the state agency" or is otherwise conditional, "the analysis of

24   legal control over the agency's documents may rely on other factors such as whether, in a given

25   case, the state agency has already committed in fact to be so represented, or if there are no

26   conditions for the state agency to avoid relying on the free legal services of the state attorney

27   _____

28   contrary to law.

United States District Court
Northern District of California

general." (Order at 29.)  The Court discerns no error.  For example, this is precisely the case with respect to the Maine AG, whose representation of an agency is conditional but has in fact confirmed it will represent the relevant AGs.  *See infra* Section II.B.13.

As to the numerous other, idiosyncratic elements of each state's statutory structure, the Court reviews the Order's assessment *infra* Section II.B.  While these general principles apply as to the majority of states, some do not, and the Court grants the motion for relief as to those states.

### d)    *Generic Pharmaceuticals* and *Monsanto*

To illustrate the kind of assessment that the Order undertakes, the Court reviews two key cases relied upon in the Order:  *Generic Pharmaceuticals* and *Monsanto*.

*Generic Pharmaceuticals.*  Central to the Order and the parties' briefing is *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. I*"), 571 F. Supp. 3d 406 (E.D. Pa. 2021).  In *Generic Pharms. I*, defendants sought to compel production from Pennsylvania's "state agencies whose alleged purchases of, or reimbursements for, generic drugs form the basis of Pennsylvania's claims."  *Id.* at 407.  A special master determined that Pennsylvania's Office of the Attorney General ("OAG") "has the authority under Pennsylvania law to assert antitrust claims on behalf of the Commonwealth and to require state agencies to produce documents to support the claims."  *Id.* Pennsylvania objected on numerous grounds, most relevant here arguing that (i) the OAG has no control over the agency documents at issue because "the OAG only has such power when it is either investigating potentially unlawful behavior by Commonwealth agencies or litigating claims on behalf of Commonwealth agencies," neither of which was the case, and (ii) such finding would have the effect "of making each Commonwealth agency a party subject to Rule 26 discovery in every litigation brought by or against the OAG."  *Id.* at 408.

The court recognized that while "the Commonwealth is a distinct entity from Commonwealth agencies," "'the Office of the Attorney General is charged with representing Commonwealth agencies' as well as the Commonwealth."  *Id.* at 410 (quoting *Piehl v. City of Philadelphia*, 987 A.2d 146, 149 (Pa. 2009)).  Further, "Pennsylvania statutes address the relationship between the Office of the Attorney General and Commonwealth agencies with regard to the right to obtain documents."  *Id.*  Section 208 of the Commonwealth Attorneys Act provides in full that "[t]he

1    Office of Attorney General shall have the right to access at all times to the books and papers of

2    any Commonwealth agency necessary to carry out his duties under this act." *Id.* at 410–11

3    (quoting 71 Pa. Stat. § 732-208).  Because this broad "authorization remains qualified only by

4    what is 'necessary,'" *id.* at 411 (quoting *In re Thirty-Third Statewide Investigating Grand Jury*, 86

5    A.3d 204, 216 (Pa. 2014)), and "[b]ecause Pennsylvania has put into this suit the relevance of

6    documents from the agencies that paid for generic drugs," the court held that obtaining these

7    documents was "necessary to [the OAG's] duties in complying with the Federal Rules of Civil

8    Procedure in the litigation of the MDL," *id.*  "[T]he OAG therefore has access to the documents

9    under Pennsylvania law." *Id.*

10       Two years later, ten other AGs objected, on similar grounds,[15] to a finding that they had

11   control over state agency documents for purposes of discovery.  *See In re Generic Pharms.*

12   *Pricing Antitrust Litig.* ("*Generic Pharms. II*"), 699 F. Supp. 3d 352, 356 (E.D. Pa. 2023).  The

13   court explained that the actions were brought in the names of their states, "not in the names of the

14   AGOs," and that "[g]eneral arguments regarding a possible conflict between the AGO and the

15   governor of a State with authority over state agencies are not sufficient," particularly where those

16   agencies hold many relevant documents and stand to benefit from the AG's success.  *Id.*  The

17   court then discussed the scope of each AG's authority and found that each had a right to obtain

18   state agency documents relevant to the MDL.

19       For instance, as to Arizona, while the AG argued that "state agencies may withdraw their

20   consent to be represented by the AGO in antitrust cases," "here the claim is pursued on behalf of

21   the State of Arizona, and . . . the AGO provides legal representation and legal services both to the

22   State of Arizona and to state agencies." *Id.* at 357.  Arizona failed to identify any provision of law

23   that would prohibit the AG from obtaining documents from state agencies, and so based on the

24

25       [15] Specifically, these AGs—from Arizona, Connecticut, the District of Columbia,
26   Massachusetts, Michigan, Missouri, North Carolina, Ohio, Oregon, and Wyoming—argued the
     request for production "should be limited to apply only to the [AGs] and the agencies for which
27   the Objecting Plaintiff States seek damages and from whom they have already produced
     documents." *Generic Pharms. II*, 699 F. Supp. 3d at 356.
28

17

AG's responsibility as the legal services provider to the state, the court held the AG had the right to obtain responsive documents from state agencies. *Id.* at 357–58. The court likewise considered the authority conferred on the other AGs and, finding no prohibitions to the contrary, held that these AGs had the authority to obtain responsive documents from state agencies.[16]

*Monsanto.* In *Illinois ex rel. Raoul v. Monsanto Co.*, defendant Monsanto sought to compel responsive documents in the possession of Illinois' state agencies under Rule 34. 2023 WL 4083934, at *1 (N.D. Ill. June 20, 2023). In response, the State argued that (i) the relief sought would infringe on separation of powers principles between the AG and the Illinois governor, (ii) the court could not make state agencies party to the case, and (iii) the AG "does not have an unfettered legal right to obtain documents from non-party state agencies." *Id.* at *1.

The *Monsanto* court rejected the State's arguments. As to the AG's right to obtain documents from non-party state agencies, the court pointed to the AG's constitutional authority as the chief legal officer of the state and the AG's "common law authority to direct the legal affairs of the state, which includes 'the competence to control all litigation on behalf of the State including intervention in and management of all such proceedings.'" *Id.* at *5 (quoting *People v. Massarella*, 382 N.E.2d 262, 264 (Ill. 1978)). These "broad statutory and common law powers to control and manage legal affairs on behalf of state agencies" conferred the legal right to obtain responsive documents of state agencies "referenced in the Complaint." *Id.*[17] Rather than endorse

---

[16] As another example, for Connecticut, the *Generic Pharms. II* court relied on the Supreme Court of Connecticut's description of the AG's authority: "The Attorney General's responsibility is not limited to serving or representing the particular interests of State agencies, including opposing State agencies, but embraces serving or representing the broader interests of the State. *This responsibility will occasionally, if not frequently, include instances where State agencies are the opposing parties.* It seems to us that if the Attorney General is to have the unqualified role of chief legal officer of the State, he or she must be able to direct the legal affairs of the State and its agencies." *Generic Pharms. II*, 699 F. Supp. 3d at 358 (emphasis supplied) (quoting *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Info. Comm'n*, 387 A.2d 533, 537 (Conn. 1978)).

[17] The AGs argue that *Monsanto* is distinguishable because there the state agencies were involved in preparing the complaint and stood to benefit from the suit. This is not dispositive, but one consideration in the totality of the circumstances.

United States District Court
Northern District of California

United States District Court
Northern District of California

unfettered access to state agency records, the court explained that "[c]onsidering the specific circumstances of this litigation," the AG had a legal right to obtain documents of state agencies "identified in the Complaint, who have necessarily supplied the information necessary for the Attorney General to prepare his Complaint, and have a significant interest in the Attorney General's success in the matter." *Id.*

*        *        *

As noted, there are other factors which may weigh in favor of finding that an AG has a right to obtain state agency documents, which the Court does not exhaustively recite here (*e.g.*, statutes related to document and information sharing). The bottom line is the Order conducts a careful analysis of the specific parameters of an AG's authority and whether and how each AG specifically has authority to obtain state agency documents under the circumstances of this MDL. The Order joins a number of other cases in finding that AGs can, and under specific circumstances do, have a right to obtain state agency documents.

In these respects, the States have not shown that the magistrate judge's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

### 3.    Burden of Proof

The States argue that Order commits legal error by shifting the burden of proving "control" away from Meta and placing it on the States. (Dkt. No. 1168 at 8–9.) Here, the States point to instances where the Order notes that a given AG does not provide authority indicating the AG is prohibited from accessing or obtaining the state-agency documents at issue. (*E.g.*, Order at 57 ("[T]here is no statutory, legal, or administrative rule cited which prohibits the California Attorney General from accessing the documents of the state agencies at issue. Nor is there citation to any statutory or legal prohibition on the California Attorney General's representing the state agencies in this matter for purposes of discovery.").) There is no improper burden-shift here, but merely a discussion of argument: the Order explains the mechanism providing for a given AG's control as to specific agencies—affirmatively identified by the court and Meta—and then explains the inadequacies of the States' opposition.

In this respect, the States have not shown that the magistrate judge's order is "clearly

1    erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

2        **B.    Arguments Specific to Each State**

3        By and large, the States' individual arguments repeat the their common arguments with

4    specific application.  Thus, with the principles articulated above in mind, the Court considers each

5    State's objection to the Order's assessment of each AG's relationship with the relevant state

6    agencies.[18]

7            **1.    Arizona**

8        "The Arizona statute is clear on its face that six of the agencies at issue are prohibited

9    completely from retaining separate counsel."  (Order at 43–44 (citing Ariz. Rev. Stat. § 41-

10   192(D)).)

11       Arizona solely challenges the Order's finding that the Arizona AG has control over

12   documents in possession of the Arizona Department of Education ("ADE") and the Arizona

13   Governor's Office of Strategic Planning and Budgeting ("OSPB").  The AG explains that "in

14   reality, ADE *does* employ its own legal counsel," and "there is an ongoing legal conflict between

15   ADE and AGO," referring to an unrelated suit regarding an aspect of school instruction.

16   (Dkt. No. 1168 at 14.)  As to OSPB, the AG notes it is a part of and receives counsel through the

17   governor's office, which is excepted from Ariz. Rev. Stat. § 41-192(D)'s requirement to employ

18   the AG, and was created by the governor.  (*Id.* at 15.)

19       Arizona has failed to show that the Order reflects clear error or is contrary to law.  As to

20   ADE, the Court is confined to Ariz. Rev. Stat. § 41-192(D), which requires the ADE to employ

21   the AG, irrespective of whether they retain separate legal counsel.  Similarly as to OSPB, whether

22   that agency receives counsel from the governor's office and was created by the governor is

23

24        [18] North Dakota, Florida, and Montana have voluntarily dismissed their actions without
25   prejudice, *see* Case No. 23-cv-05448, Dkt. No. 124 (North Dakota); Case No. 23-cv-5885,
     Dkt. No. 48 (Florida); Case No. 24-cv-805, Dkt. No. 37 (Montana), Michigan has dismissed its
26   action by joint stipulation without prejudice, *see* Case No. 23-cv-05448, Dkt. No. 169, and
     Georgia has dismissed its action with prejudice by joint stipulation, which also explicitly withdrew
27   subpoenas served under Rule 45 to certain state agencies, *see* Case No. 23-cv-05448, Dkt. No. 144
     (Georgia).  The Court does not assess and deems moot these States' objections to the Order.
28

ultimately irrelevant to the fact that OSPB is subject to Ariz. Rev. Stat. § 41-192(D).  (*See* Order at 44 ("[T]o be clear, despite its name, the Arizona Governor's Office of Strategic Planning and Budgeting is an agency outside the Arizona Governor's office, has duties to advise both the Governor and Legislature, and is statutorily situated within the Act defining the Arizona Department of Administration.").  The motion for relief as to Arizona is **DENIED**.

### 2.    California

In California, the "Attorney General has charge, as attorney, of all legal matters in which the State is interested," Cal. Gov't Code § 12511, and no agency may obtain counsel other than the AG without "the written consent of the Attorney General," with certain exceptions not relevant here, Cal. Gov't Code § 11040(c).[19]  In this case, "the California Attorney General confirmed that its office could represent all of the California agencies at issue, if Meta were to serve those agencies with a subpoena in this matter," and "[i]n acting as counsel, the California Attorney General would necessarily have access to and thus control over the relevant documents needed to respond to discovery requests."  (Order at 50, 55–56.)

*First*, California argues that the Order "is a direct affront to California's sovereignty," by "run[ning] roughshod over California's dual-executive structure."  (Dkt. No. 1168 at 15.)  As elaborated above and extensively in the Order, California's contentions with respect to its dual-executive structure, separation of powers, and now sovereignty are simply unfounded and misplaced.

*Second*, California argues the Order commits legal error by holding that because the AG can sometimes act as outside counsel to state agencies, the AG necessarily has "control" over agencies' documents.  (Dkt. No. 1168 at 15.)  California fails to rebut the Order's assessment of California's statutory scheme.

---

[19] *See also* Cal. Gov't Code § 11042 ("No state agency shall employ any in-house counsel to act on behalf of the state agency or its employees in any judicial or administrative adjudicative proceeding in which the agency is interested, or is a party as a result of office or official duties, or contract with outside counsel for any purpose, unless the agency has first obtained the written consent of the Attorney General pursuant to Section 11040.").

United States District Court
Northern District of California

*Third*, the AG notes that conflicts may arise that require agencies to retain separate counsel, pointing to *D'Amico v. Bd. of Med. Examiners*, 520 P.2d 10, 17 n.5 (1974), which noted that while the AG was statutory counsel for the medical board as well as the osteopathic board, the AG determined there was a possible conflict between the two in that case, and so the latter board retained private counsel. California does not explain how that conflict arises in this case. In *D'Amico*, the medical and osteopathic boards were defendants in the same action, *id.* at 15, and presumably may have had to take adverse positions with respect to each other in that litigation. Here, the AG fails to identify any comparable conflict between themselves and any state agency— pertinently, the governor's office, which has stated it refuses to comply with this Court's orders.[20] The AG is perfectly competent to lodge the governor's objections to any requests for production issued by defendants; it must simply lodge such objections under Rule 34. That the governor's office disagrees with this Court's decision as to the appropriate procedure for discovery is not a justifiable basis to refuse to comply.[21] The motion for relief as to California is **DENIED**.

### 3. Colorado

"[T]he Colorado Attorney General must statutorily act as the Colorado agencies' counsel." (Order at 59 (citing Colo. Rev. Stat. § 24-31-101 (The Colorado AG "[s]hall act as the chief legal representative of the state and be the legal counsel and advisor of each department, division,

---

[20] At the September 13, 2024 case management conference, counsel for the California AG's office conveyed the following: "The California Department of Justice has been in communication with Governor Newsom's office, and I have been authorized to convey the position of the California Governor's Office. The Governor's Office and the agencies under its control will not comply with the order regarding State agencies and will not provide the Attorney General with access to documents because the Governor's Office [believes] [i]t is not a party to this litigation and the Court lacks jurisdiction over it. The Governor's Office would like the opportunity to formally present its position through a submission to the Court. . . ." Dkt. No. 1170, Tr. of September 13, 2024 Case Management Conference at 72:1–12. As defense counsel was quick to point out, the fact that the California AG communicated the governor's position underscores his apparent months-long reliance on the AG for legal representation on this issue.

[21] Similarly, on reply the AG describes the governor's refusal to provide the AG with access to agency documents as his "constitutional prerogative." (Dkt. No. 1194 at 9.) No explanation is provided.

United States District Court
Northern District of California

office, board, commission, bureau, and agency of state government . . . .")).)  No exceptions apply. (*Id.* at 59–60)  "[T]he Colorado Attorney General confirmed that its office will represent all of the Colorado agencies at issue if Meta were to serve those agencies with a subpoena in this matter." (*Id.* at 60.)[22]

Colorado lodges three objections to the Order.  *First*, it argues the Order ignores that the AG and its attorneys and operate in distinct capacities authorized by distinct statutes, and here the AG brings this suit solely in its enforcement, rather than representative, capacity.  (Dkt. No. 1168 at 16.)  Other attorneys employed by the AG who do not enforce Colorado's consumer-protection law will represent the at-issue agencies.  (*Id.*)  This fails to rebut the core premise—and factual finding—of the Order: that members of the Colorado AG's office must and will represent these agencies if served with a subpoena in this matter.

*Second*, Colorado argues that the Order misreads an information-sharing statute, Colo. Rev. Stat. § 6-1-116, which requires the AG to enter into information-sharing agreements with licensing agencies in enforcement actions, to support its holding.  The Order simply notes that this statute, cited initially by Colorado, does not prohibit the AG from obtaining agency documents, and may support finding that the AG in fact has access to agency documents.  (Order at 61.) Ultimately, the Order does not rely on this statute in its decision.

*Third*, Colorado argues the Order misstates the AG's position by saying the AG would assert privilege over communications with the agencies and relies on that misinterpretation. (Dkt. No. 1168 at 17.)  Rather, Colorado avers that the AG stated when it brings a consumer-protection action, the enforcement team's communications are generally *not* privileged.  (*Id.*)  Yet, Colorado has represented that "when the AG is serving as legal counsel for a state agency, his attorneys' communications with the agency are privileged."  (Dkt. No. 738-4 at 1.)  In that representative capacity, the AG would control the state agency's conduct in litigation.

The motion for relief as to Colorado is **DENIED**.

---

[22] In *Generic Pharms. II*, Colorado was able to resolve the issue of control over state agency documents by stipulation.  *See Generic Pharms. II*, 699 F. Supp. 3d at 356 n.5.

United States District Court
Northern District of California

### 4.     Connecticut

The Connecticut AG "shall appear for . . . all heads of departments and state boards, commissioners, agents, inspectors, committees, auditors, chemists, directors, harbor masters, and institutions . . . in all suits and other civil proceedings . . . in which the state is a party or is interested . . . in any court or other tribunal, as the duties of his office require . . . ." Conn. Gen. Stat. § 3-125.  The *Generic Pharms. II* court found that the Connecticut AG's "broad grant of authority undercuts the argument that in the prosecution of an action on behalf of the State of Connecticut, the AGO cannot obtain documents from state agencies." *Generic Pharms. II*, 699 F. Supp. 3d at 358.  In this case, the Order found that "the Connecticut Attorney General confirmed that its office will represent all of the Connecticut agencies at issue if Meta were to serve those agencies with a subpoena in this matter.  Accordingly, it appears undisputed that under the Connecticut statutory scheme each will be represented by the Connecticut Attorney General in this matter for discovery."  (Order at 64 (citation omitted).)

*First*, Connecticut objects that the scope of its authority as described in the Order and *Generic Pharms. II* does not confer blanket authorization to obtain documents in possession of state agencies and relates only to the AG's duties of defensive representation of state entities. (Dkt. No. 1169.)  That objection is not ultimately responsive to the Order's assessment of Connecticut's statutory scheme.

*Second*, Connecticut argues that, contrary to the Order's findings, the AG indicated that agencies would have discretion to utilize in-house counsel or retain outside counsel, with the exception of the Connecticut Department of Consumer Protection, which the AG concedes would be represented by attorneys from the AG's office.  (Dkt. No. 1169 at 17–19; Dkt. No. 738-1 at 6–7.)  Even so, Connecticut fails to explain how this representation squares with the statutory prescription that the AG "shall appear" for relevant agencies, *see* Conn. Gen. Stat. § 3-125, among the other factors considered in the Order, and so fails to show that the Order's analysis is contrary to law or reflects clear error.  The motion for relief as to Connecticut is **DENIED**.

### 5.     Delaware

Delaware law provides that "[n]o . . . agency . . . shall employ any person to act as

attorney" to the agency without "the approval of the Attorney General and the Governor upon such terms and conditions as the Attorney General and the Governor may prescribe." Del. Code tit. 29, § 2507.  The scope of the Delaware AG's right of access to the documents in possession of state agencies is defined by statute:  "The Attorney General shall have the right of access at all times to the books, papers, records and other documents of any officer, department, board, agency, instrumentality or commission of the state government.  The Attorney General shall not have this right of access for purposes of discovery in any civil actions brought by or on the relation of the Attorney General other than for the books, papers, records, and documents of the Department of Justice."  Del. Code tit. 29, § 2508(b).  Delaware has represented that its at-issue state agencies have discretion to utilize in-house or retain outside counsel, which could include the AG. (Dkt. No. 738-1 at 7.)

Delaware objects on the grounds that the Order misreads Section 2508(b), which expressly precludes the Delaware AG from accessing agency documents in enforcement actions.  The Court agrees.

*First*, while Section 2508(b) confers on the Delaware AG a general right of access of all documents in all state agencies' possession, a plain reading of Section 2508 indicates the Delaware legislature carved out of this broad grant of authority situations where state agencies are subpoenaed in enforcement actions brought by the AG—i.e., precisely this circumstance.  The Order interprets the two sentences of Section 2508(b) to mean that "the statute simply provides that the Delaware Attorney General cannot rely on this statute as a substitute for discovery in that action."  (Order at 69.)  Yet, when a defendant seeks to obtain documents from a Delaware state agency in an AG enforcement action, Section 2508(b) revokes that broad right of access to obtaining those documents.

To make sense of Delaware's statutory scheme, however, the Court interprets Section 2508(b) to effectively prohibit the AG from representing an agency in response to a subpoena issued in connection with an enforcement action.  As detailed in the Order, attorneys are presumed to have control of relevant documents in their clients' possession.  (Order at 28–30.)  If the Delaware AG has no right of access to agency documents sought for production in an

enforcement action pursuant to Section 2508(b)—as the statute again plainly indicates—then the AG cannot effectively serve as counsel for its agency client.  If, however, the AG ultimately represents any of the identified agencies irrespective of Section 2508(b), those agencies will be subject to party discovery.  Delaware may constrain the authority of its AG, but it may not constrain federal law.

*Second*, the Order buttresses its interpretation of Section 2508(b) with the Supremacy Clause, arguing that even if the AG's interpretation was correct, "that state statute cannot preempt federal law."  (Order at 72.)  The Court disagrees.  The control inquiry under Rule 34 looks to some source of right that confers on a party the right to obtain documents; Rule 34 does not itself confer a right of access.  The Order relies on Delaware's statutory scheme to situate the AG's right to obtain agency documents, and that statutory scheme also revokes the AG's right to obtain agency documents in this circumstance.  Absent some other source of a right to obtain documents, there is none.

The motion for relief as to Delaware is **GRANTED**.

### 6.    Hawai'i

By statute, the Hawai'i AG "shall administer and render state legal services" and "represent the State in all civil actions in which the State is a party."  Haw. Rev. Stat. § 26-7; *see also* Haw. Rev. Stat. § 28-4.  The Supreme Court of Hawai'i has instructed that the AG "has a statutory duty . . . to provide legal counsel to state agencies . . . ."  *In re Water Use Permit Applications*, 9 P.3d 409, 437 (Haw. 2000) (citing Haw. Rev. Stat. § 26-7).  As such, the Hawai'i AG has represented it "will act as counsel for the Hawai'i agencies if the agencies receive a subpoena from Meta."  (Order at 88; Dkt. No. 738-1 at 9–10.)

Hawai'i objects *first* that the Order ignores the differences between the Hawai'i AG's role as legal enforcer and its role as general counsel.  (Dkt. No. 1168 at 21–22.)  Generally, the Court has rejected objections that an AG's twin roles preclude it from having a right to obtain relevant state agency documents.  More specifically, Hawai'i points to *State v. Klattenhoff*, 801 P.2d 548, 552 (1990), which held that an AG may represent a state employee in civil matters while investigating and prosecuting him in criminal matters, as long as the AG staff assigned are

independent and appropriate firewalls are in place.  No such conflict of interest appears present in this case.  Rather, the AG has confirmed that it *will* represent the relevant state agencies in *this* case.

*Second*, Hawaiʻi argues that the AG does not have authority over its client agencies on key decisions, and that while it is obligated to represent the state agency, the client makes key litigation decisions and that should apply to discovery requests.  (Dkt. No. 1168 at 22.)  Nothing in the Order wrests the AG's clients' ability to make key decisions about the conduct of their litigation, e.g., what they say in response to a request for production.  Rather, the Order decides what discovery procedure is appropriate for such document requests under federal law, which litigants do not get to decide.[23]  The motion for relief as to Hawaiʻi is **DENIED**.

### 7.  Idaho

In Idaho, "it is the duty of the attorney general" "[t]o perform all legal services for the state and to represent the state and all departments, agencies, offices, officers, boards, commissions, institutions and other state entities in all courts and before all administrative tribunals or bodies of any nature."  Idaho Code § 67-1401.  With exceptions not relevant here, "no department, agency, office, officers, board, commission, institution or other state entity shall be represented by or obtain its legal advice from an attorney at law other than the attorney general . . . ."  *Id.* § 67-1406.

Idaho objects solely on the ground that it brings only a claim under the Children's Online Privacy Protection Act ("COPPA"), which is not brought by Idaho state agencies which have no right to assert a COPPA claim.  This objection is not responsive to the Order's assessment of Idaho's statutory framework.[24]  The motion for relief as to Idaho is **DENIED**.

---

[23] Hawaiʻi also argues that the Order misinterprets *Lobisch v. United States*, 2021 WL 6497240 (D. Haw. Aug. 19, 2021), and that in *Generic Pharms. II*, 699 F. Supp. 3d 352, Hawaiʻi sought damages on behalf of injured state agencies, while here it only seeks penalties in its role as an enforcer.  The Order found *Lobisch* distinguishable and determined that the fact a state does not seek damages on behalf of injured state agencies not to be dispositive of a finding of control under the totality of the circumstances.  The Court discerns no clear error in those findings.

[24] The Court perceives an errant "*not*" in the Order and disregards as a typographical error.  (Order at 92.)

United States District Court
Northern District of California

United States District Court
Northern District of California

### 8. Illinois

"The Illinois Constitution of 1970 requires the Attorney General to represent the State, and this duty extends to the representation of State agencies." *People ex rel. Sklodowski v. State*, 642 N.E.2d 1180, 1184 (Ill. 1994). Illinois has confirmed that it could represent all agencies at issue in response to subpoenas (Dkt. No. 738-1 at 11–12), and the Order determined that "it appears that under the Illinois Constitutional scheme each [agency] will likely be represented by the Illinois Attorney General in this matter for discovery." (Order at 95.)

Illinois advances two objections. *First*, Illinois argues that the Order fails to respect the legal distinction between the Illinois AG's enforcement and representational capacities. Generally, the Court has rejected objections that an AG's twin roles preclude it from having a right to obtain relevant state agency documents. Illinois also argues that *Monsanto*, which held that the Illinois AG controlled certain state agencies for discovery purposes, did so because the suit was filed as a "joint effort" between the AG's office and state agencies and brought for their benefit. *See Monsanto*, 2023 WL 4083934, at *6. These distinguishing elements do not alone reflect that the Order commits clear error or is otherwise contrary to law.

*Second*, Illinois takes issue with the Order's representation that the AG will likely provide legal representation in this litigation to all state agencies. Illinois argues the chart submitted to the magistrate judge identifying whether an AG will or will not represent a given agency "stressed that certain Illinois agencies possess the 'discretion to utilize [their] in-house counsel or retain outside counsel which could include the [OAG]' such that the AG 'cannot speculate as to how [those agencies] may choose to exercise [their] discretion.'" (Dkt. No. 1168 at 23 (alterations in original) (quoting Dkt. No. 738-1).) Illinois provides no authority for the proposition that agencies may reject the Illinois AG's constitutional duty to represent state agencies, or that the AG may not obtain relevant agency documents pursuant to its constitutional prerogatives.[25] As with many

---

[25] Illinois also notes on reply that "state agencies receive and respond to *thousands* of subpoenas each year without any involvement by the AG." Dkt. No. 1194 at 13. For the same reason, that agencies may sometimes act without assistance of the AG does not bear on the AG's right to obtain documents necessary to its responsibilities as chief legal officer of the state.

1    states, this is precisely the "broad grant of authority [that] undercuts the argument that in the

2    prosecution of an action on behalf of the State . . . the AGO cannot obtain documents from state

3    agencies." *Generic Pharms. II*, 699 F. Supp. 3d at 358.[26]

4         The motion for relief as to Illinois is **DENIED**.

5              **9.    Indiana**

6         In Indiana, the AG "shall have charge of and direct the prosecution of all civil actions that

7    are brought in the name of the state of Indiana or any state agency," Ind. Code § 4-6-3-2(a), and

8    "[n]o agency, except as provided in this chapter, shall have any right to name, appoint, employ, or

9    hire any attorney or special or general counsel to represent it or perform any legal service in behalf

10   of the agency and the state without the written consent of the attorney general," Ind. Code

11   § 4-6-5-3.  *See also Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 474 (Ind. 1988)

12   (Shapard, C.J., concurring) ("The Attorney General's authority to represent the State, its agencies

13   and officers is nearly exclusive, and agencies may not employ any attorney without the written

14   consent of the Attorney General.")  The Order found that "the Indiana Attorney General's

15   arguments do not negate the fact that all of the Indiana agencies at issue here are barred by Indiana

16   law from obtaining counsel other than the Indiana Attorney General . . . ."  (Order at 99.)

17        Indiana objects that Indiana Code Section 4-6-5-3 provides an "exception" for each at-

18   issue Indiana agency "[b]ecause agencies are permitted to employ legal counsel with the consent

19   of the Indiana [AG]," and so the AG's "representation is not mandatory."  (Dkt. No. 1168 at 24.)[27]

20

21        [26] Illinois also argues that the Order errs in stating it represented that "any past or future

22   communications between . . . the Illinois Attorney General and these state agencies, if they are
     responsive to Meta's discovery requests, would be covered by the attorney-client privilege."

23   (Order at 95.)  While Illinois previously represented that "few, if any, pre-suit communications
     between the AG and State agencies would be subject to privilege claims," it also represented that

24   "any past or future communications responsive to Meta's requests that fall within the

25   representational attorney-client paradigm would be privileged."  Dkt. No. 738-11 at 1.  It is
     unclear what distinction Illinois is attempting to make.

26

27        [27] Indiana also cites to *Holcomb v. Bray*, which held that the Governor did not need to
     obtain the AG's consent to hire counsel because, among other reasons, "another statute—Indiana

28   Code section 4-3-1-2—explicitly gives the Governor power to hire outside counsel irrespective of
     the Attorney General's consent."  187 N.E.3d 1268, 1288 (Ind. 2022).  Meta does not seek to

United States District Court
Northern District of California

That the AG's representation is not mandatory, while true, misses the point. By the terms of the statute, the AG has exclusive authority to determine whether it will represent a state agency. In other words, the AG can mandate that it will represent an agency. The Order does not err in holding that this factor supports finding the Indiana AG's right to control relevant state agency documents.

Indiana further discusses its previous statement as to if and when it may invoke privilege with respect to representative relationships with state agencies and concludes by stating the Order incorrectly conflates the AG's role as outside litigation counsel with in-house counsel.[28] As described above, it does not. The motion for relief as to Indiana is **DENIED**.

### 10.    Kansas

Kansas argues in key part that the Order commits legal error by finding that it is required by statute to represent the relevant state agencies. The Court agrees.

"In Kansas, the Attorney General's powers are as broad as the common law unless restricted or modified by statute. At common law, the attorney general was entrusted with the management of all legal affairs." *Kobach v. U.S. Election Assistance Comm'n*, 2014 WL 494801, at *2 (D. Kan. Feb. 6, 2014). Section 75-702(a) of the Kansas Statutes provides that "[t]he attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals and in all federal courts, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense." Kan. Stat. Ann. § 75-702(a). By contrast, Section 75-703 provides that "[t]he attorney general shall, at the request of the governor, secretary of state, state treasurer, or state board of education, . . . prosecute or defend for the state all actions,

---

obtain documents from the Indiana Governor's Office. (*See* Order at 98.)

[28] Indiana also argues that the Order misinterpreted Indiana law regarding civil investigative demands, which are the pre-suit mechanism by which the AG conducts its investigations. Dkt. No. 1168 at 24 (citing Ind. Code 4-6-3-3). The Order simply discussed this provision to illustrate that nothing in the statutory scheme indicates civil investigative demands "is the exclusive manner by which the Indiana [AG] can obtain documents from state agencies." (Order at 100.)

United States District Court
Northern District of California

civil or criminal, relating to any matter connected with their departments." Kan. Stat. § 75-703.

The Kansas AG has argued that Section 75-702(a) is inapposite because it only requires the AG to appear on behalf of the state, not distinct agencies (Dkt. No. 738-13 at 1), and Sections 75-702 and 75-703 only permit agencies to *request* the AG's representation in an action, rather than confer authority on the AG to require its representation (Dkt. No. 1168 at 25; Dkt. No. 1194 at 14). The AG provided no judicial interpretation of either contention.

Nonetheless, based on the plain language, the Court agrees with the AG's interpretation. Section 75-703, which requires the AG to represent certain agencies upon request, would be redundant if the AG were already obligated to provide legal services to the agency under Section 75-702(a).[29] This finding is underscored by the fact that, unlike the vast majority of states, the Kansas AG has represented that it will *not* represent any of the relevant agencies in response to any subpoenas issued by Meta in this litigation. (Dkt. No. 738-1 at 12.)

Thus, Kansas has shown that the Order is contrary to law in finding that the Kansas AG has control over the relevant state agencies. The motion for relief as to Kansas is **GRANTED**.

### 11. Kentucky

Kentucky law provides that the AG "is the chief law officer of the Commonwealth of Kentucky and all of its departments, commissions, agencies, and political subdivisions, and the legal adviser of all state officers, departments, commissions, and agencies, . . . and shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." Ky. Rev. Stat. § 15.020(1). Further, the AG "shall also commence all actions or enter an appearance in all cases, hearings, and proceedings . . . and attend to . . . any litigation or legal business that any state officer, department, commission, or agency may have in connection with, or growing out of, his, her, or its official

---

[29] The Court declines to endorse defendants' proposed construction of Section 75-703. The phrase "at the request of the governor, secretary of state, state treasurer, or state board of education" most sensibly applies to both the clauses "prosecute any official bond or any contract in which the state is interested, upon a breach therof," as well as the clause "prosecute or defend for the state all actions, civil or criminal, relating to any matter connected with their departments."

United States District Court
Northern District of California

United States District Court
Northern District of California

1   duties, except where it is made the duty of the Commonwealth's attorney or county attorney to

2   represent the Commonwealth." Ky. Rev. Stat. § 15.020(3). Sections 12.210 and 12.220 permit

3   agencies to employ attorneys with the approval of the governor. *See* Ky. Rev. Stat. §§ 12.210,

4   12.220.

5          Kentucky makes three objections. *First*, Kentucky contends that the Order misconstrues

6   this statutory scheme, arguing that Kentucky agencies "may employ . . . attorneys for legal

7   services." Ky. Rev. Stat. § 12.210; *see also Johnson v. Commonwealth ex rel. Meredith*, 165

8   S.W.2d 820, 829 (Ky. 1942) ("[T]he General Assembly may withdraw those powers and assign

9   them to others or may authorize the employment of other counsel for the departments and officers

10  of the state to perform them."). This is unpersuasive, for two reasons. One, that Kentucky

11  agencies may employ other attorneys upon the governor's consent under Section 12.210, does not

12  abrogate the otherwise clear mandate that the AG shall "enter an appearance in all cases . . . and

13  attend to . . . any litigation . . . that any state . . . agency may have." Ky. Rev. Stat. § 15.020(3);

14  *see also* Ky. Rev. Stat. § 12.230. Two, Kentucky's citation to *Johnson* is unpersuasive because

15  that case clearly refers to the General Assembly's authority to withdraw the scope of the AG's

16  power by statute. *See* Ky. Rev. Stat. § 15.020(1). The Court does not interpret Section 12.210's

17  grant of permission for agencies to hire counsel to effectively abrogate the AG's responsibilities

18  under Section 15.020 when a given agency decides to task its own counsel on a given matter.

19  Rather, the General Assembly must withdraw the AG's responsibility by statute.[30]

20         *Second*, Kentucky objects that the Order misreads Ky. Rev. Stat. § 367.160(1), which

21

22         [30] This interpretation is consistent with the way courts have approached Section 15.020.

23  *See Com. v. Johnson*, 423 S.W.3d 718, 723 (Ky. 2014) ("KRS 15.020 therefore reaffirms the
    common law authority of the OAG, stating that the General Assembly may modify such authority,

24  and then proceeds to express one such limitation."); *EMW Women's Surgical Ctr., P.S.C. v.
    Beshear*, 920 F.3d 421, 445 (6th Cir. 2019) ("Kentucky law does not require the Attorney General

25  to represent the Commonwealth 'where it is made the duty of the Commonwealth's attorney or
    county attorney' instead." (quoting Ky. Rev. Stat. § 15.020(3))). Section 15.020(1) confers

26  authority on the General Assembly to modify the scope of the AG's responsibilities. The most
    sensible reading of subsection 15.020(1) alongside 15.020(3) indicates that it is the General

27  Assembly, not an agency upon consent of the governor under Section 12.210, who decides when
    the AG's responsibilities are "made the duty" of another attorney.

28

1    provides that "[a]ll departments, agencies, officers, and employees of the Commonwealth shall

2    fully cooperate with the Attorney General in carrying out" enforcement of its consumer protection

3    laws."  The Order determined that this statute affords the Kentucky AG "the legal right to obtain

4    documents from state agencies when enforcing state consumer protection laws."  (Order at 111.)

5    The Court agrees.  Irrespective of past disagreements within Kentucky's executive branch (*see*

6    Dkt. No. 738-14 at 1 & n.1), it is difficult to read the statute otherwise.  Kentucky's argument that

7    subsection 367.160(2) operates to limit subsection 367.160(1) is unpersuasive because on its face

8    those two subsections operate independently.

9         *Third*, Kentucky argues that the Order's finding that the AG is likely to represent the state

10   agencies in this matter reflects clear error.  It does not.  The motion for relief as to Kentucky is

11   **DENIED**.

### 12.    Louisiana

13        In Louisiana, "the attorney general shall represent the state and all departments and

14   agencies of state government in all litigation arising out of or involving tort or contract."  La. Stat.

15   § 49:257(A).  The Order found that because consumer protection claims sound in tort under

16   Louisiana law, the AG's representation of state agencies in this MDL is required by

17   Section 49:257(A).  (Order at 115.)

18        Louisiana argues that the Order reflects clear error and is contrary to law because Section

19   49:257(a) only requires the AG to represent state agencies if the at-issue torts or contracts in a

20   litigation "directly involv[e] the identified agencies in this litigation," which is not the case here.

21   (Dkt. No. 1168 at 27.)  The Court agrees.

22        The implication of Section 49:257(A), while not explicit, is that the Louisiana AG will

23   "represent" state agencies in *their* tort and contract litigation.  The Order's construction of the

24   statute is certainly plausible but in this Court's view would extend the scope of the AG's

25   responsibilities in a manner not supported by any authorities provided as to reflect clear error.[31]

26

27        [31] There appears to be no authority endorsing the Order's approach.  The only authority
     available is consistent with the AG's contention that it is only required to provide substantive
28   defense or prosecution in litigation involving that agency's conduct.  *See, e.g.*, *Molinario v. Dep't*

United States District Court
Northern District of California

1    Meta argues that Louisiana provides no authority for its reading, but neither does Meta, beyond

2    the fact that consumer protection claims sound in tort.

3         The motion for relief as to Louisiana is **GRANTED**.

### 13.    Maine

5         The Maine AG is "the chief law officer of the State," *In re Thompson's Est.*, 414 A.2d 881,

6    890 (Me. 1980), and "shall appear for . . . agencies of the State in all civil actions and proceedings

7    in which the State is a party or interested . . . in all the courts of the State and in those actions and

8    proceedings before any other tribunal when requested by the Governor or by the Legislature or

9    either House of the Legislature.  All such actions and proceedings must be prosecuted or defended

10   by the Attorney General or under the Attorney General's direction."  Me. Rev. Stat. tit. 5,

11   § 191(3).  "All legal services required . . . must be rendered by the Attorney General or under the

12   Attorney General's direction.  The officers or agencies of the State may not act at the expense of

13   the State as counsel, nor employ private counsel except upon prior written approval of the

14   Attorney General."  *Id.* § 191(3)(B); *see also Michalowski v. Head*, 2010 WL 2757359, at *6 (D.

15   Me. July 12, 2010) (The Maine AG "is required by law to provide legal representation to state

16   agencies.").

17        Maine objects *first* that the Order errs by holding that Maine law requires the AG to

18   represent state agencies in this Court, because it may only do so in out-of-state tribunals when

19   requested by the governor or legislature.  *See* Me. Rev. Stat. tit. 5, § 191(3).  The Court agrees that

20   the Maine AG's authority to represent agencies in out-of-state tribunals is conditional on the

21   governor's or legislature's request, and so in the abstract the AG does not automatically have

22   control over state agencies documents for discovery purposes in all out-of-state litigation.

23   However, to the extent the Order erred in this regard, such error is immaterial.  Here, the Maine

24   AG has represented that it *will* represent the state agencies at issue, and thus as counsel will have

*of Pub. Safety & Corr.*, 700 So. 2d 992, 995 (La. Ct. App. Sept. 23, 1997) ("The Attorney General was legally required to provide a defense for [defendant Department of Public Safety and Corrections].").

control over the relevant agencies' documents.  (Dkt. No. 738-1 at 14.)  Maine does not address this fact in either its objection or in its reply after it is raised by Meta.  (Dkt. No. 1168 at 28; Dkt. No. 1194 at 15–16.)

*Second*, Maine objects to the Order's discussion of Me. Rev. Stat. tit. 22, § 4008, which creates confidentiality restrictions preventing the public disclosure of documents held by one agency containing a child's personally identifying information in certain circumstances.  (Order at 121.)  Because Maine has confirmed that it will represent the state agencies at issue, whether Section 4008 separately confers on the attorney general a right of access on these documents does not alter the result, and so the Court declines to address this objection.

The motion for relief as to Maine is **DENIED**.

### 14.    Maryland

In Maryland, the AG "has general charge of the legal business of the State" and "is the legal adviser of and shall represent and otherwise perform all of the legal work for each officer and unit of the State government."  Md. Code, State Gov't § 6-106(a)–(b).

Maryland's objections do not engage with the specifics of its statutory framework and focus instead on common arguments this Court has found unpersuasive—e.g., that the AG does not bring claims on behalf of the state or any agency,[32] that the legal personnel assigned as counsel to an agency are distinct from enforcement counsel, and that cases on which the Order relies are distinguishable.  Maryland has failed to show the Order makes clear error or is contrary to law. The motion for relief as to Maryland is **DENIED**.

### 15.    Minnesota

Minnesota lodges three objections to the Order.  None persuade.

*First*, Minnesota argues that the Order misunderstands the nature of this action: i.e., because the AG is acting as a civil prosecutor whose only client is the people of Minnesota, not a

---

[32] Maryland also contradictorily argues that it could not have brought a claim on behalf of agencies because they cannot assert COPPA claims, while in the same paragraph asserting that it does not bring claims in *parens patriae* authority even though it does so by asserting a COPPA claim.

United States District Court
Northern District of California

state agency, the Order ignores the AG's unique constitutional role. This is unpersuasive for the same reasons addressed in the common arguments section.[33]

    *Second*, Minnesota argues the Order relies on the erroneous legal assumption that the AG's office is a "firm" or "legal services organization." (*See* Order at 137, 139.) Notwithstanding the argument, there is no genuine dispute that the AG provides legal services. It is unique, certainly, but regardless, at a minimum, the Order's authority with respect to law firms and other legal services organizations can be persuasive as analogies depending on the circumstances of the case. The AG's own authorities support this approach. *See Humphrey on Behalf of State v. McLaren*, 402 N.W.2d 535, 543 (Minn. 1987) ("[A] government legal department is not a 'firm' under Rule 1.10 . . . . We think, however, for the purposes of Rule 3.7, . . . it should be presumed that the attorney general's staff is a 'firm' . . . .").[34] That an analogy was made does not render the analysis contrary to law.

    *Third*, Minnesota objects to the Order's assessment of the Minnesota Data Practices Act. (Order at 141–42 (citing Minn. Stat. § 13.05(9) ("A responsible authority shall allow another responsible authority access to data classified as not public only when the access is authorized or required by statute or federal law.")).) As the Order explains, this statute does not prevent authorized access to relevant agency documents under appropriate circumstances.

    The motion for relief as to Minnesota is **DENIED**.

---

[33] Minnesota's citations are not to the contrary. *See, e.g.*, *Energy Pol'y Advocs. v. Ellison*, 980 N.W.2d 146, 156 (Minn. 2022) ("[T]he practical duties of the office mean that the Attorney General often conducts litigation in which no discrete 'client' is readily ascertainable.")

[34] *McLaren* explains how the attorney-client relationship is different for the government, as opposed to private, practitioner, and that the imputation of conflicts does not apply to a government office in the same way as at a private legal services organization. *See McLaren*, 402 N.W.2d at 543 ("The Rules [of professional conduct] recognize the different status of the public attorney. For example, the preamble states that lawyers on an attorney general's staff 'may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients.'"). This underscores again why the States' assertion of potential conflicts is unpersuasive.

United States District Court
Northern District of California

### 16.    Missouri

The Missouri AG "may . . . appear and interplead, answer or defend, in any proceeding or tribunal in which the state's interests are involved."  Mo. Ann. Stat. § 27.060.  The AG "may, at the request of any . . . agency of the state, assign assistant attorneys general to perform the duties prescribed by law before or upon behalf of such . . . agency . . . ."  Mo. Ann. Stat. § 27.020(2).  "In legal actions on behalf of the state, only the Attorney General may represent the state with sovereign power."  *Neel v. Strong*, 114 S.W.3d 272, 275 (Mo. Ct. App. 2003).

Missouri objects that the Order erroneously construes its discretionary ability to intervene on behalf of the state to mean that it can exercise control over state agencies with respect to this litigation.  The Court agrees.

As always, the Court construes state law in a manner that minimizes potential conflicts among a state's statutes.  That the Missouri AG "may" appear in any proceeding involving the state's interests, *see* Mo. Ann. Stat. § 27.060,[35] does not mean that the AG exercises control over state entities other than its own office in so appearing.  Unlike many other states which require agencies to obtain the AG's consent prior to hiring counsel, Missouri only permits the AG to represent agencies "at the[ir] request."  Mo. Ann. Stat. § 27.020(2).  Thus, until an agency requests representation of the AG for this action, the AG has no tool to require it serve as counsel for that agency in this litigation, and thus cannot control that agency's discovery in this case.  (*See* Dkt. No. 738-20 at 1 ("[T]he [Missouri] AG does not represent any agencies *in this action* . . . .").)

Missouri has shown that the Order was contrary to law in finding that its AG controls the relevant state agencies for discovery purposes in this action.  Should the AG ultimately represent one of the relevant Missouri agencies in this proceeding, that agency will be subject to party

---

[35] Missouri also cites *State ex rel. McKittrick v. Missouri Pub. Serv. Comm'n*, 175 S.W.2d 857, 862 (Mo. 1943) (en banc), for the proposition that the AG cannot control an agency by way of its right to intervene.  The Order did not address *McKittrick*, although it was cited before the magistrate judge.  *See* Dkt. No. 738-20 at 1.  Given the above ruling, the Court need not address *McKittrick*'s applicability, although it notes that *McKittrick* involved the Missouri Public Service Commission, which "is an administrative tribunal" and has unique provisions regarding appointment of its counsel.  *See McKittrick*, 175 S.W.2d at 862.

1    discovery.  The motion for relief as to Missouri is **GRANTED**.

2            **17.    Nebraska**

3            Nebraska's "Department of Justice ["DOJ"] shall have the general control and supervision

4    of all actions and legal proceedings in which the State of Nebraska may be a party or may be

5    interested, and shall have charge and control of all the legal business of all departments and

6    bureaus of the state, or of any office thereof, which requires the services of attorney or counsel in

7    order to protect the interests of the state."  Neb. Rev. Stat. § 84-202.  Additionally, the AG "is

8    authorized to appear for the state and prosecute and defend, in any court . . . , any cause or matter,

9    civil or criminal, in which the state may be a party or interested."  Neb. Rev. Stat. § 84-203.

10           Nebraska explains that while some attorneys in the Nebraska DOJ provide legal counsel to

11   state agencies, the AG serves as legal counsel only when called upon by an agency under

12   Section 84-202.[36]  The Order focuses on Section 84-202's language that the AG has "the general

13   control and supervision of all actions and legal proceedings in which the State of Nebraska may be

14   a party" and "shall have control of all the legal business of all departments" without any analysis

15   as to the clause, "which requires the services of attorney or counsel."  (Order at 156.)  On its face,

16   it is unclear how this statutory authority functions as applied to this case.[37]  Unlike many other

17   state statutes discussed herein, it is not clear that the Nebraska AG must or can require that it serve

18   as counsel to state agencies in this litigation under Section 84-202.

19           This ambiguity is particularly salient where the Nebraska AG has represented that agencies

20   may elect not to rely on the AG's legal services[38] (evidently, without the AG's consent), and that

21

22           [36] Nebraska actually argues that Section 84-202 is irrelevant and focuses instead on its
     state constitutional structure and the fact that it brings suit in its enforcement capacity.  The Court
23   considers those objections, as well as Nebraska's other objections, entirely unpersuasive, but does
24   consider the scope of authority conferred by Section 84-202 to be the relevant question.

25           [37] It is unclear whether the AG can determine when an agency "requires [its] services," or
     whether that determination is left to the agency's discretion.
26
27           [38] Most states have made this same representation.  However, many other states' statutory
     conferrals of authority make it clear that the AG can require it serve as counsel to an agency,
28   overriding those representations.

the Nebraska governor *will not* be represented by the AG in this litigation.  (*See* Dkt. No. 738-1 at

18–19; Dkt. No. 738-22 at 1.)  In this light, the Court considers it clear error that the Order

determined the Nebraska AG has control over these state agencies for discovery purposes.  Should

the AG ultimately represent one of the relevant Nebraska agencies in this proceeding, that agency

will be subject to party discovery.

The motion for relief as to Nebraska is **GRANTED**.

### 18.    New Jersey

The New Jersey AG "shall exclusively attend to and control all litigation and controversies

to which the State is a party or in which its rights and interests are involved."  N.J. Stat. § 52:17A-

4(c).  Further, the AG shall "[a]ct as the *sole* legal adviser, attorney or counsel . . . for all officers,

departments, boards, bodies, commissions and instrumentalities of the State Government in all

matters," with exceptions not relevant here, "and shall . . . otherwise control their legal activities."

*Id.* § 52:17A-4(e) (emphasis supplied).  "No special counsel shall be employed for the State or for

or by any officer, department, board, body, commission or instrumentality of the State

Government except by authority of the [AG], and then only with the approval of the

Governor . . . ."  N.J. Stat. § 52:17A-13.[39]  New Jersey has said it *will* represent all but two

agencies—its Office of the Governor and the Economic Development Authority—which it

maintains have discretion to utilize other counsel.  (Dkt. No. 738-1 at 19–20.)  As such, New

Jersey effectively concedes the issue except as to those two agencies.

New Jersey objects on two primary grounds.  *First*, it argues that the Order improperly

conflates the AG's advisory and enforcement roles, and that only the AG can enforce New

Jersey's Consumer Fraud Act and COPPA.  As discussed, these arguments were addressed by the

Order and are unpersuasive.[40]

---

[39] The statute further explains no special counsel shall be employed "and provided that
appropriations have been made therefor, unless the matter be of such an emergency and shall be so
declared by the Governor."  N.J. Stat. § 52:17A-13.

[40] New Jersey's disagreement with the Order's discussion of *Love v. NJ Dept of Corr.*,
2017 WL 3477864, at *1 (D.N.J. Aug. 11, 2017); *see also* Order at 168–69, is unpersuasive for the

United States District Court
Northern District of California

*Second*, New Jersey argues that the Order improperly relied on the absence of outside counsel to conclude that the AG must control all agencies' documents at all times. The Court disagrees. The Order relies, among other factors, on (i) the AG's role as the "sole legal advisor" for all state entities, and (ii) the fact that no special counsel may be employed by any agency without consent of the AG. The Order did not find that the AG must control all agencies' documents at all times, but rather that under the statutory scheme and based on the AGs' representations, the AG would represent the relevant agencies in *this* litigation. (Order at 164.) As to the Governor's office and the Economic Development Authority,[41] the Order explains that there is no indication in the record that the AG has authorized separate counsel for those agencies for these purposes and so, under the statutory scheme, these agencies would have to rely on the AG as counsel. (Order at 164.) The motion for relief as to New Jersey is **DENIED**.

### 19.    New York

New York's AG shall "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state, or of any office thereof which requires the services of attorney or counsel, in order to protect the interest of the state . . . ." N.Y. Exec. Law § 63(1). The AG "is obligated to prosecute, defend and control all legal business of state agencies." *Morgan v. New York State Dep't of Env't Conservation*, 779 N.Y.S.2d 643, 645 (N.Y. App. Div. 2004). Pursuant to this authority, some courts have found that the AG has the authority to obtain documents of state agencies. For example, *In re Opioid Litigation* concerned "a dispute concerning which New York State offices and agencies the Attorney General is required to search for documents responsive to defendants' document demands." 2019 WL 4120096, at *1 (N.Y. Sup. Ct. Aug. 14, 2019). The

_____

same reasons.

[41] New Jersey also cites to N.J. Stat. § 34:1B-5(s), which provides that the Economic Development authority is empowered "to employ . . . attorneys . . . to carry out the purposes" of various state laws. For instance, the first law referenced is the New Jersey Economic Development Act, P.L.1974, N.J. Stat. § 34:1B-1 *et seq.* New Jersey provides no explanation how employing an attorney to respond to subpoenas in this enforcement action serves "to carry out the purposes" of this or other cited state laws.

United States District Court
Northern District of California

court held, over the AG's objections, that the "State shall search and produce documents from agencies likely to possess responsive documents, including those identified" by defendants and that "[d]efendants are not required to subpoena specific state agencies or departments as suggested by the Attorney General." *Id.* at *1–2.

New York's objections serve to confirm that the scope of its authority encompasses control of agencies involved in this litigation. New York argues that the AG "*may* participate or join" in the matter *if* the AG determines the State's interests warrant the representation. (Dkt. No. 1168 at 35.) In other words, the New York AG has the authority to determine whether it will exercise its authority to take "charge and control" in this matter.[42] Notably, while New York advances its own interpretation of Section 63(1), it makes no attempt to address *Morgan*, *In re Opioids*, or any of the cases on which the Order relies. (*See* Order at 173–74.) New York has failed to show that the Order reflects clear error or is contrary to law. The motion for relief as to New York is **DENIED**.

### 20.    North Carolina

North Carolina law provides that "it shall be the duty of the" AG "[t]o represent all State . . . agencies." N.C. Gen. Stat. § 114-2(2). "No . . . agency . . . shall employ private counsel, except with the approval of the Governor. The Governor shall give his approval only if the Attorney General has advised him . . . that it is impracticable for the Attorney General to render the legal services." *Id.* § 147-17(a). Additionally, "[i]n any case . . . in which the State of North Carolina is interested, the Governor may employ private counsel as he may deem proper or necessary to represent the interest of the State . . . ." *Id.*

North Carolina argues that the statute concerns *private counsel*, not *separate counsel* as the Order found. (Order at 175–76.) *See* N.C. Gen. Stat. § 114-2.3(d) (definition of "private counsel" does not include DOJ or in-house agency counsel). North Carolina stresses that state agencies

---

[42] Because, under Section 63(1), the AG shall "have charge and control" only "in order to protect the interest of the state," New York argues that its representation is not warranted here because "Meta has not shown that OAG representation of the relevant state agencies would protect the interests of the state." (Dkt. No. 1168 at 35.) The Court finds this argument unpersuasive. *See also infra* Section II.B.25 (South Dakota).

United States District Court
Northern District of California

often rely on in-house counsel to respond to subpoenas rather than the AG.  While the Court has no reason to doubt that, as the Order acknowledges, "[t]here is nothing in the North Carolina Attorney General's submissions to this Court indicating that the North Carolina Attorney General has advised the Governor that representing the agencies is impracticable here, and there is nothing in the record to indicate that the Governor has approved separate counsel being retained by the state agencies."  (Order at 175–76.)

Additionally, North Carolina also argues that Section 147-17(a) explicitly excepts the Governor's office from restrictions on hiring private counsel.  The Court agrees: a plain reading of Section 147-17(a) appears to permit the Governor to employ private counsel in any case in which the State "is interested" and as he "may deem proper or necessary."  However, the Order notes there is nothing in the record indicating that the Governor has in fact approved retention of separate counsel.  Order at 175–76.

In short, the record established by North Carolina's submissions indicates it retains its duty, under state law, to represent the relevant agencies.  The Order did not err in so finding. However, if the conditions in Section 147-17(a) were triggered, North Carolina would be relieved of its obligations as counsel to these agencies and consequently the agencies would not be subject to party discovery.  The North Carolina AG shall file a notice on the docket within three (3) days of this order to clarify whether at the time the Order was issued either (i) the AG had certified to the governor that it is impracticable for the AG to represent agencies in this matter, and the Governor approved retention of private counsel, or (ii) the Governor has employed private counsel to represent his office or any state agencies.  If either condition was present, the motion for relief is **GRANTED**; if not, the motion is **DENIED**.

### 21.    Ohio

The Ohio AG "is legal counsel for all state agencies."  *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 925 N.E.2d 641, 658 (Ohio Ct. App. 2009) (citing Ohio Rev. Code § 109.02), *aff'd*, 941 N.E.2d 745 (Ohio 2010).[43]  With exceptions not relevant here, "no state

---

[43] *See also* Ohio Rev. Code § 109.02 ("The attorney general is the chief law officer for the

42

United States District Court
Northern District of California

officer or board, or head of a department or institution of the state shall employ, or be represented

by, other counsel or attorneys at law." *Id.* § 109.02.  The Order found that this "statutory scheme

makes plain the Ohio Legislature's mandate (and not mere preference) that the Ohio Attorney

General will represent state agencies in cases such as this" MDL.  (Order at 189.)

Ohio's objection ignores this authority and focuses instead on the Order's reliance on Ohio

Rev. Code § 1331.16(N) and *Bivens v. Lisath*, 2007 WL 2891416 (S.D. Ohio Sept. 28, 2007).  In

light of the Ohio AG's clear mandate to serve as counsel for all agencies, any error in the Order

with respect to these citations is harmless.[44]  The motion for relief as to Ohio is **DENIED**.

### 22.    Oregon

Oregon's objection acknowledges that the Order "properly quotes Oregon state law" but

disagrees with its conclusions for the reasons asserted in the States' common arguments.  The

Order reviewed the statutory scheme which confers full control of the legal business of Oregon's

state entities on the AG (Order at 195) and the Oregon AG has indicated that it will represent all of

the relevant agencies (Dkt. No. 738-1 at 23).  Because Oregon asserts no state-specific arguments

and relies on the common arguments this Court has rejected, it has failed to show the Order

commits clear error or is contrary to law.[45]  The motion for relief as to Oregon is **DENIED**.

### 23.    Pennsylvania

The Pennsylvania AG "shall represent the Commonwealth and all Commonwealth

agencies."  71 Pa. Stat. § 732-204(c).  Pennsylvania's Commonwealth Attorneys Act provides that

---

state and all its departments . . . .").

[44] The Court will note that the Order clearly erred in finding that Section 1331.16(N) confers a right of access on the AG to agency documents in all cases.  *See* Order at 188. Section 1331.16 is situated within Ohio law concerning monopoly and antitrust violations, and the Court disagrees the right of access conferred by that chapter should extend outside that context. *See Borden, Inc. v. State*, 413 N.E.2d 848, 848 (Ohio Ct. App. 1979) (Section 1331.16 "empowers the Ohio Attorney General to obtain documentary material, answers to written interrogatories, and to take testimony with regard to suspected violations of R.C. Chapter 1331 (Antitrust), prior to the filing of any complaint alleging an antitrust violation.").

[45] Oregon failed to specifically reply to Meta's opposition.

43

the "Office of Attorney General shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties" under the act.  *Id.* § 732-208.  The court in *Generic Pharms. I* found this statutory structure conferred a right of access to the AG on agency documents.

Pennsylvania objects *first* that the legislature never intended Section 732-208 to have the result of making Pennsylvania agencies subject to party discovery in AG enforcement actions.  (Dkt. No. 1168 at 39–40.)  Pennsylvania provides no authority to support this extra-textual limitation on an otherwise explicit broad right of access.  *Second*, Pennsylvania argues that under Section 732-204(c), it has the discretion to determine whether it will represent the relevant state agencies.  That is the point: the AG has the authority to determine that it will serve as counsel to these agencies for discovery purposes in this litigation.  None of the Order's findings in these respects reflect clear error or are contrary to law.  The motion for relief as to Pennsylvania is DENIED.

### 24.    Rhode Island

Rhode Island's AG, "whenever requested, shall act as the legal adviser of the individual legislators of the general assembly, of all state boards, divisions, departments, and commissions and the officers thereof," as well as certain other state officers.  42 R.I. Gen. Laws § 42-9-6; *see also Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 17 (1st Cir. 2020).

Rhode Island argues the Order commits clear error and is contrary to law because the Order ignores the fact that the AG shall act as legal adviser to agencies only "whenever requested."  (*See* Dkt. No. 1168 at 40.)  The Court agrees.  Any authority the Rhode Island AG may have as counsel for an agency's legal matter is conditional upon a request for assistance.  While the Order notes that the AG "confirmed that its office could represent all the agencies at issue" if served with a subpoena in this matter and that "no separate counsel has entered appearance on behalf of Rhode Island state agencies" (Order at 213) these facts should be accorded no weight where Rhode Island cannot exercise any authority as counsel to these agencies

absent their request.[46]  To underscore the point, Rhode Island represents that, as of the objection's

filing, "agencies have already received subpoenas from Defendant and not one has requested

representation by [the AG] and undersigned counsel has learned that at least two agencies have

completed their response."  (Order at 40.)  Should one of these agencies request the AG's

representation in this litigation, it will be subject to party discovery.[47]

       The motion for relief as to Rhode Island is **GRANTED**.

### 25.    South Carolina

       South Carolina law provides that the AG "shall conduct all litigation which may be

necessary for any department of the state government or any of the boards connected therewith,

and all these boards or departments are forbidden to employ any counsel for any purpose except

through the Attorney General and upon his advice."  S.C. Code § 1-7-80(1).  South Carolina's

recent appropriations bill included the following provision:

> [W]hen the Attorney General institutes or defends an action on behalf
> of the State of South Carolina . . . , he acts in the public interest of the
> State of South Carolina and not as the legal representative or attorney
> of any department or agency of state government, including the
> executive, legislative, or judicial branches, or boards.  Departments,
> agencies, or boards are not parties to these actions, and the documents
> or electronically-stored information of such departments, agencies, or
> boards are not in the possession, custody, or control of the Attorney
> General.

General Appropriations Bill for Fiscal Year 2024-2025, H. 5100, 125th Sess., § 59.16 (S.C.

2024).[48]

_____

[46] As indicated throughout, these facts may be relevant where state law provides that the
AG has the authority or duty to serve as counsel to agencies involved in this litigation.

[47] Rhode Island also argues that the order mistakenly assumes that the AG's representation
of an agency in one matter provides the AG with a right of access to that agency's documents in
this litigation.  (Dkt. No. 1168 at 41 (citing Order at 213–17).)  The Court disagrees that the Order
so holds.  Rather, the Order simply recognizes that "[i]n acting as counsel, the Rhode Island
Attorney General would necessarily have access to and thus control over the relevant documents
needed to respond to discovery requests."  (Order at 215.)

[48] While this provision only applies "[i]n the current fiscal year," the provision was
identical in the 2023-2024 appropriations bill.  *See* General Appropriations Bill for Fiscal Year

1    South Carolina objects on the ground that the Order failed to acknowledge Section 59.16 at

2    all, which forecloses the AG's ability to access agency documents in connection with this

3    litigation.  For similar reasons as to Delaware, the Court agrees.

4    The South Carolina legislature has explicitly revoked the AG's authority to access any

5    documents in possession of a state agency when the AG institutes an action on behalf of the state,

6    which includes the enforcement action before this Court.[49]  Meta in opposition asserts similar

7    arguments under the Supremacy Clause as it did with respect to Delaware, which the Court found

8    unpersuasive.  South Carolina has shown that the Order is contrary to law and the AG lacks a right

9    of access to agency documents in the context of this enforcement action.

10    As with Delaware, however, to make sense of South Carolina's provision, the Court

11    interprets the restriction to effectively prohibit the AG from representing an agency in response to

12    a subpoena issued in connection with an enforcement action.  If a similar provision was not

13    authorized for 2025-26, the analysis would change.

14    As noted earlier and detailed in the Order, attorneys are presumed to have control of

15    relevant documents in their clients' possession.  (Order at 28–30.)  If the South Carolina AG has

16    no right of access to agency documents sought for production in an enforcement action—as the

17    provision plainly indicates—then the AG cannot effectively serve as counsel for its agency client.

18    If, however, the AG ultimately represents any of the identified agencies irrespective of this

19    provision, those agencies will be subject to party discovery.  South Carolina may constrain the

20    authority of its AG, but it may not constrain federal law.

21    The motion for relief as to South Carolina is **GRANTED**.

22

23

24    _____

2023-2024, H. 4300, 125th Sess., § 59.19 (S.C. 2023).

25

26    [49] South Carolina acknowledges that its statutory provisions relating to when an agency hires counsel were central to the case on which the Order relies, *State of South Carolina v. Purdue Pharma L.P.*, 2019 WL 3753945, at *1 (S.C. Com. Pl. July 5, 2019).  (*See* Order at 219–20.)

27    However, that case predates this appropriations bill, and South Carolina for its part represents that this provision was enacted because of the *Purdue Pharma* decision.  Dkt. No. 1168 at 42.

28

### 26.    South Dakota

In South Dakota, "[i]t is the duty of the attorney general: (1) To appear for the state and prosecute and defend all actions and proceedings, civil or criminal, in the Supreme Court, in which the state shall be interested as a party," and "(2) When requested by the Governor or either branch of the Legislature, or whenever, in the judgment of the attorney general, the welfare of the state demands, to appear for the state and prosecute or defend, in any court or before any officer, any cause or matter, civil or criminal, in which the state may be a party or interested . . . ."  S.D. Codified Laws § 1-11-1.  The Order found that the South Dakota AG has confirmed its office could represent the agencies at issue and no separate counsel have entered appearances.  (Order at 225.)

South Dakota argues that the Order "defiles" the state's statutory and constitutional scheme.  (Dkt. No. 1168 at 42.)  The Court disagrees.  *First*, the Court finds the AG's arguments relating to its status as an independent state entity unpersuasive for the reasons discussed in the common arguments section as to separation of powers and the dual-executive structure.

*Second*, as to its statutory concerns, South Dakota argues that the use of "may" in Section 1-11-1 indicates the AG is not required to litigate "except when the welfare of the state demands."  South Dakota does not contest that it has the discretion under this clause, and thus the authority, to represent agencies in this action.  That is all that is needed here.  The Court nonetheless notes that, presumably, the efficient conduct of discovery in this enforcement action is in the State's interest, as to minimize waste of taxpayer funds in litigation costs and provide relief for the "welfare of the state" sooner, rather than later.  The effect of the state's position would be to increase costs and likely delay relief, should the state succeed on the merits.

South Dakota has failed to show that the Order reflects clear error or is contrary to law.[50] The motion for relief as to South Dakota is **DENIED**.

### 27.    Virginia

In Virginia, "[a]ll legal service in civil matters for the Commonwealth, the Governor, and

---

[50] South Dakota failed to specifically reply to Meta's opposition.

every state . . . agency, [or] entity . . . , shall be rendered and performed by the Attorney General

. . . .  No regular counsel shall be employed for or by the Governor or any state . . . agency, [or]

entity . . . ."  Va. Code § 2.2-507(A); *see also id.* § 2.2-510 (permitting special counsel in certain

circumstances, including by Governor's "exemption" or AG's "written recommendation").  As the

Order recognizes, the Virginia AG *will* represent the relevant state agencies in connection with

this litigation.  (Order at 229; Dkt. No. 738-1 at 28.)

Virginia objects on the same grounds asserted in the States' common arguments—e.g., that

the AG brought this action in its own independent enforcement capacity, state entities are separate

under the law, and its authority to serve as counsel for agencies does not confer a right of access to

relevant documents in their possession.  These objections are unpersuasive for the same reasons

discussed above, and as a consequence Virginia has failed to show that the Order reflects clear

error or is contrary to law.  The motion for relief as to Virginia is **DENIED**.

### 28.     Washington

The Washington AG "shall . . . represent the state and all officials, departments, boards,

commissions and agencies of the state in the courts . . . ."  Wash. Rev. Code § 43.10.040.  "[T]he

attorney general has a statutory duty to represent" agencies.  *See Black v. Dep't of Lab. & Indus. of

the State of Wash.*, 933 P.2d 1025, 1029 (Wash. 1997) (en banc) (citing Wash. Rev. Code

§ 43.10.040).  As the Order recognizes, the Washington AG *will* represent the relevant state

agencies in connection with this litigation.  (Order at 233; Dkt. No. 738-34 at 1.)

*First*, Washington objects that the Order ignores key distinguishing factors in two cases on

which it relies: *Washington v. GEO Grp., Inc.*, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2,

2018) ("[W]here the plaintiff is the State of Washington, discovery addressed to the State of

Washington includes its agencies.  Because the AGO is the law firm to the State of Washington,

the AGO should respond to and produce discovery on behalf of the State of Washington, including

its agencies."); *Wilson v. Washington*, 2017 WL 518615, at *1 (W.D. Wash. Feb. 8, 2017).  Every

case is unique.  The Order's assessment, which only considered these cases "instructive," does not

reflect clear error.  (*See* Order at 236–38.)

*Second*, Washington objects that the AG lacks legal control of all client documents.  Here,

as legal representative to the state agencies in *this* matter, counsel would be charged to have control over the documents relevant to this litigation, as explained above with respect to the States' common arguments.

The motion for relief as to Washington is **DENIED**.

### 29.    West Virginia

The West Virginia AG "shall appear as counsel for the state in all causes pending . . . in any federal court, in which the state is interested." W. Va. Code § 5-3-2. "[I]t is unlawful" for the State "to expend any public funds of the state of West Virginia for the purpose of paying any person, firm, or corporation for the performance of any legal services . . . ." *Id.* § 5-3-1. The West Virginia AG "remains the legal representative of the State and its agencies unless specifically exempted by statute." *State ex rel. Caryl v. MacQueen*, 385 S.E.2d 646, 650 (W. Va. 1989).

West Virginia objects on two primary grounds. *First*, West Virginia argues that the Order assumes the AG always represents state agencies whereas, in reality, "State executive branch and related entities may in some circumstances employ and use lawyers who are not employees of the Attorney General . . . ." *State ex rel. McGraw v. Burton*, 569 S.E.2d 99, 116 (W. Va. 2002). *Burton* does not appear in the State's briefing before Judge Kang. (*See* Dkt. No. 738-35 at 1.) Nonetheless, *Burton* is not to the contrary. The question is whether the relevant agencies are "specifically exempted by statute." *See MacQueen*, 385 S.E.2d at 650. West Virginia makes no proffer as to why these agencies are exempted, or otherwise why its authority to represent these agencies is specifically displaced.

*Second*, West Virginia argues that the Order runs afoul of separation of powers considerations and its dual executive structure. As discussed above, these concerns are unpersuasive.

The motion for relief as to West Virginia is **DENIED**.

### 30.    Wisconsin

The Wisconsin AG shall, "[i]f requested by the governor or either house of the legislature, appear for and represent the state, any state department, agency, official, employee or agent . . . in any court . . . any cause or matter . . . in which the state or the people of this state may be

1    interested."  Wis. Stat. § 165.25(1m).

2         Wisconsin objects that the Order errs by holding Wisconsin law requires the AG to

3    represent state agencies in this Court, because Section 165.25(1m) only provides that the AG *may*

4    represent state agencies and officials only upon the Governor's request.  The Court agrees.  The

5    Wisconsin AG's authority to represent agencies in this court is permitted only "[i]f requested by

6    the governor" or legislature.  Wisconsin represents that no request to represent other agencies or

7    officials under Section 165.25(1m) was made to the AG in connection with this case.[51]

8    (Dkt. No. 1168 at 47.)  Thus, on the current record, the AG will not serve as counsel for any of the

9    relevant agencies in connection with this litigation, with the possible exception of the Governor's

10   office.  The motion for relief as to Wisconsin agencies is **GRANTED** except as to the Governor's

11   office.

12        Wisconsin additionally objects to the Order's finding that the AG represents the Governor

13   in this case.  As the Order notes, Wisconsin previously represented that "with respect to this

14   litigation and with the exception of the governor, the AG has not acted as counsel to any of the

15   agencies identified."  (Dkt. No. 738-36 at 1.)  It is difficult to read this statement to mean anything

16   other than that the AG has represented the governor in connection with this litigation.  However,

17   while the Order did not err in so finding, the Court recognizes that because the AG's

18   representation of the governor is contingent on his consent, the AG lacks authority to require it

19   represent the governor in this action.

20        At the same time, the Court will not entertain discovery gamesmanship: either the AG

21   represents the governor, or it does not.  The Wisconsin AG shall file a notice on the docket within

---

[51] The Order reaches its conclusion by finding that, because the Wisconsin AG indicated it represents the Governor in connection with this litigation, and because all secretaries of agencies are appointed by the Governor who serve at the governor's pleasure, "their choices of counsel will clearly be determined by the Governor."  Order at 244.  Therefore, because the Wisconsin AG "has been and will represent the Governor in this case already and no other counsel has entered appearance for the state agencies, it is not surprising that the Wisconsin [AG] would also thus represent these state agencies."  *Id.*

The Court finds this constitutes clear error.  Section 165.25(1m) is triggered by a request for representation by the governor or either house of the legislature.

24 hours of this order to clarify whether it will continue to represent the Governor for remainder of this litigation.  If so, the motion for relief as to Wisconsin is **DENIED**.  If not, the motion is **GRANTED**.

*       *       *

By and large, the state-specific arguments repeat the States' common arguments with specific application.  Those aside, the Order largely relied on the same mechanism as to each state as a predominant factor in establishing control.  With some exceptions, most States' law provides that an agency must obtain the written consent of the AG in order to obtain counsel other than the AG.  The agencies at-issue here are by and large not so excepted, and oftentimes an AG's broad constitutional and statutory prerogatives as the chief legal officer provide further support for finding they enjoy a right of access to relevant state agency documents.  In these respects, the States have not shown that the magistrate judge's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

However, as to Delaware, Kansas, Louisiana, Missouri, Nebraska, Rhode Island, South Carolina, the Order was contrary to law or reflected clear error in its assessment of the unique statutory provisions that explicitly or in effect limited the scope of their AGs' control over state agencies.  North Carolina and Wisconsin might be relieved of their obligations under the Order, depending on the content of their additional submissions required by the Court as described above.

## III.    CONCLUSION

The States ask this Court to conduct a full de novo review of Judge Kang's order in an apparent attempt to have a second bite at the apple.  That is not this Court's role.  Here, the States must show that the magistrate judge's order is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  With some exceptions, the States have failed to meet their burden under this deferential standard.  Despite protestations to the contrary, the issues among the various states have significant overlap.  Magistrate Judge Kang painstakingly analyzed the mechanism providing for each AG's legal control as to each state office or agency from which Meta seeks documents and determined whether the AG in this circumstance has the legal right to obtain those documents.  In federal court, federal law governs the scope of discovery.  The States

cannot employ the benefits of an MDL without the attendant burdens.

This terminates Dkt. No. 1168 in Case No. 22-md-03047.

**IT IS SO ORDERED.**

Dated: March 6, 2025

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

52