UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION**<br><br>This Document Relates to:<br>All Actions | MDL No. 3047<br><br>Case No. 4:22-md-3047-YGR<br><br>**ORDER RE MOTIONS TO CERTIFY INTERLOCUTORY APPEAL**<br><br>Re: Dkt. Nos. 1460, 1462, and 1463 in Case No. 22-md-3047; and<br><br>Dkt. No. 166 in Case No. 23-cv-5448. |

Before the Court are three separate motions to certify interlocutory appeal: all defendants move to certify questions related to this Court's orders on the school districts' claims (Dkt. No. 1460); Google, YouTube, and Snap's move to certify the issue of Section 230's application to plaintiffs' failure-to-warn theories (Dkt. No. 1462), to which Meta has conditionally joined (Dkt. No. 1463); and the state attorneys general ("States") move to certify the issue of Section 230's application to their unfairness claims (Dkt. No. 1534; *see also* Case No. 23-cv-5448, Dkt. No. 166).

For the reasons set forth in this Order, based on a careful review of the briefing submitted by the parties as well as oral argument, the Court **DENIES** defendants' motions to certify interlocutory appeal questions related to the Court's orders on the school districts' claims, and **DENIES WITHOUT PREJUDICE** the motions concerning Section 230 pending resolution of similar issues currently pending before the Ninth Circuit.

## I.  LEGAL STANDARD

"Under section 1292(b), a federal district court may certify a non-dispositive order for interlocutory review where: (1) the order 'involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Roth v. Foris Ventures, LLC*, No. 21-CV-4288-YGR, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (quoting 28 U.S.C. § 1292(b)); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1021 (9th Cir. 1981).[1]

## II.  CERTIFICATION OF SECTION 230 ISSUES

The Google, YouTube, and Snap defendants seek to certify one question for interlocutory appeal:  "Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars claims for failure to warn of an alleged design defect where the statute bars claims targeting the same underlying alleged defective design." (Dkt. No. 1462 at 2.)  Meta has joined the motion on a conditional basis, given that it believes its collateral order appeal of the same issue is appropriate. (Dkt. No. 1616.)

The state attorneys general move to certify for interlocutory appeal the following questions of law:

> Whether Section 230 of the Communications Decency Act shields Meta from liability for claims stemming from its own unfair and unconscionable acts and practices ("unfairness claims") to craft, disseminate, and promote (1) infinite scroll and autoplay features; (2) ephemeral content features; (3) disruptive audiovisual and vibration notifications and alerts; (4) quantification and display of "Likes"; and (5) algorithmic service of content according to "variable reinforcement schedules" ("Harmful Features").

(Dkt. No. 1534 at 4.)  In other words, the States believe the nature of their unfairness claims merits different treatment under Section 230.

This Court previously held these motions in abeyance until resolution of the motion to

---

[1] "[W]hen an order is certified for appellate review, 'appellate jurisdiction applies to the order certified . . . and is not tied to the particular question formulated by the district court.'" *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (second alteration in original) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

dismiss the collateral order appeals of those identical questions pending before the Ninth Circuit. (Dkt. No. 1702, Case Management Order No. 21 at 1.)  On March 3, 2025, the Ninth Circuit denied the motions to dismiss without prejudice to renewal in the merits briefing which is scheduled to complete on May 30, 2025 or approximately 21 days thereafter.  (Dkt. No. 1744.) Given the Ninth Circuit has denied the motions to dismiss without prejudice, the Court **DENIES WITHOUT PREJUDICE** the instant motions to certify interlocutory appeal, until the Ninth Circuit resolves the pending appeal.

### III. CERTIFICATION OF SCHOOL DISTRICT ISSUES

All defendants seek certification of three questions of law in the Court's orders on the school districts' negligence and public nuisance claims: (1) whether the school districts' public nuisance claims should be dismissed in their entirety because they (a) lack a nexus to defendants' use of land and (b) concern problems arising from the distribution of products or services; (2) whether defendants owe the school districts a cognizable duty, specifically, whether the First Amendment bars imposition of a duty; and (3) whether the school districts' claims to recover the costs of providing mental health care treatment to students are impermissibly derivative.[2]

#### A. Controlling Question of Law

"With respect to the first question of whether the issue to be certified is a 'controlling question of law,' the moving party must show that 'resolution of the issue on appeal could materially affect the outcome of litigation in the district court.'" *Roth*, 2022 WL 21777087, at *1 (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026).  Interlocutory review is reserved for questions "of law—not fact." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).  "The application of a legal standard to the facts of the case is not by itself appropriate for certification." *Wang v. Zymergen Inc.*, 2024 WL 5116962, at *4 (N.D. Cal. Dec. 16, 2024) (cleaned up).

---

[2] *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, 2024 WL 4673710 (N.D. Cal. Oct. 24, 2024), Dkt. No. 1267 (threshold issues and negligence claims); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. 22-md-3047 (N.D. Cal. Nov. 15, 2024), Dkt. No. 1332 (public nuisance claims).

All three questions involve controlling questions of law. Should any jurisdiction prohibit public nuisance claims that lack a nexus to defendants' use of land or concern the distribution of products or services, the school districts' public nuisance claims would not be cognizable. Similarly, if the First Amendment protects defendants' conduct, or if resource expenditures related to the mental health impact of defendants' platforms on students is impermissibly derivative, the school districts' claims would be materially limited if not foreclosed.[3]

### B. Substantial Ground for Difference of Opinion

"An absence of controlling authority does not mean an issue is so difficult or controversial as to warrant interlocutory appeal. Indeed, this Court frequently is tasked with deciding issues on which the Ninth Circuit has not yet opined." *C.W. v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 6064422, at *3 (N.D. Cal. Oct. 14, 2020). Disagreement among trial courts on the assessment of the law or its application to the facts alleged is insufficient to demonstrate substantial grounds for difference of opinion. *See Herrera v. Fargo*, 2020 WL 7051097, at *4 (C.D. Cal. Oct. 8, 2020) ("[E]ven assuming the Court agrees with Herrera that the cases he cites are directly at odds with each other, the fact that district courts have applied" a precedent "differently is insufficient to find a substantial grounds for a difference in opinion," particularly where the district court opinions "are merely persuasive authority for this Court").

#### 1. Public Nuisance

The Court recognized that several state high courts have addressed potential land or product-based limitations and generally aligned with defendants' approach, albeit often with a more nuanced and case-specific assessment than defendants have characterized in their briefs. *See, e.g.*, *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 721 (Okla. 2021); *In re Lead Paint Litig.*, 924 A.2d 484, 495, 499 (N.J. 2007); *Lead Indus., Ass'n, Inc.*, 951 A.2d at 454; *City of*

---

[3] Plaintiffs argue that interlocutory review is reserved for questions "of law—not fact," *ICTSI Oregon, Inc.*, 22 F.4th at 1130, and because claims of public nuisance and negligence, as well as allegations of derivative harm, depend on the facts alleged, the issues defendants seek to certify present mixed question of law and fact. The Court disagrees. Defendants do not ask the Ninth Circuit to reapply plaintiffs' allegations under the legal standard applied by the Court; they ask the Ninth Circuit to modify or provide a different legal standard.

4

*Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1117 (Ill. 2004). However, other courts—including state high courts as well as the Ninth Circuit—have taken an approach that aligns with that of this Court. *See, e.g.*, *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1233 (Ind. 2003); *Cincinnati v. Beretta USA Corp.*, 768 N.E.2d 1136, 1141, 1140 (Ohio 2002); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1213 (9th Cir. 2003).[4] Because thirteen jurisdictions at issue in the order have not addressed the proposed land or product-based limitations on public nuisance, both parties ironically point to an absence of case law in the other's favor to support their position.

The Court agrees with defendants that these differences among state high courts and the Ninth Circuit present substantial ground for a difference of opinion. While each grounds its holding in the specific circumstances of the public nuisance alleged, their conclusions as to the permissible scope of a public nuisance indicate clear differences of opinion. This applies likewise to the thirteen states that have not addressed these issues, even though plaintiffs are technically correct that there is not a substantial disagreement of opinion within those jurisdictions.[5]

---

[4] As noted *infra*, *Beretta* remains persuasive authority for common-law interpretation of public nuisance and discussion of the Second Restatement.

[5] Defendants' other bases for substantial disagreement are unpersuasive. Contrary trial court opinions are insufficient to present substantial grounds for a difference of opinion, *see Herrera*, 2020 WL 7051097, at *4, and the Court disagrees with defendants' characterization of *Erie*. Notably, there is not a single citation to *Erie* in defendants' motion to dismiss the school district claims. Defendants now argue that "[t]he *Erie* Court recognized that when a federal court 'declare[s]' a substantive rule of state law *not firmly anchored in clear state legislative or decisional authority*, it 'invade[s] rights [that] . . . are reserved by the Constitution to the several States' and engages in 'an unconstitutional assumption of [state] powers." Dkt. No. 1460 at 6 (emphasis supplied) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Not quite. *Erie* was concerned with the application of "federal general common law" being used to *override* state law. *Erie*, 304 U.S. at 78. *Erie* focused on concerns that "judges have fallen into the habit of repeating this doctrine" of federal general common law "as a convenient mode of brushing aside the law of a state *in conflict with their views*." *Id.* (emphasis supplied). Thus, contrary to defendants' characterization, *Erie* did *not* concern situations where there is an *absence* of state-law authority; rather, *Erie* was focused on federal courts overriding established state laws and rules of decision. That a state court has not yet assessed novel factual circumstances as applied to an existing cause of action does not mean the state would—or a federal court should on that basis alone—reject that theory of relief, as the Court explained in its order, following among other cases, the Ninth Circuit's approach in *Ileto*. *See* Dkt. No. 1332 at 17 n.17.

5

### 2. Negligence

As to the Court's assessment of negligence, defendants advance two principal arguments which reassert the same arguments presented in their motion to dismiss. These are insufficient as a basis for substantial grounds for disagreement, but the Court nonetheless addresses each briefly.

*First*, defendants focus on First Amendment concerns in imposing a duty in this case. They rely on the same cases as in their motion—focusing particularly on cases addressing statutes regulating social media companies which have been found to infringe on free speech—which remain inapposite and are not themselves a sufficient basis for certification. Defendants also point to foreseeability concerns regarding an indeterminate class of potential plaintiffs, which this Court distinguished and found unpersuasive.[6]

*Second*, defendants argue the JCCP court found that a duty could not exist with respect to the school districts. A contrary trial court's opinion alone is insufficient to present substantial grounds for disagreement. At any rate, the JCCP court's and this Court's decisions are not as at odds with each other as defendants represent.[7]

---

[6] Here, defendants focus on *Modisette v. Apple Inc.*, 241 Cal. Rptr. 3d 209, 216 (Cal. Ct. App. 2018), which the Court addressed in its order on personal injury plaintiffs' non-priority claims. *See* Dkt. No. 1730 at 13–14. *Modisette* concerned whether Apple should be liable for not imposing sufficient safeguards on users' access to their iPhones while driving. *See Modisette*, 241 Cal. Rptr. 3d at 216–17. The policy concerns animating *Modisette* are undercut by the intentional conduct and knowledge of resulting harm alleged in this case. While the court in the parallel Judicial Council Coordination Proceedings ("JCCP") relied on *Modisette*'s discussion of foreseeability and potential unlimited liability, this Court found potential liability sufficiently bounded by foreseeability. *Compare Social Media Cases*, JCCP No. 5255, at 20 (Cal. Sup. Ct. June 6, 2024) ("It is hard to imagine how any business or institution could function—or reasonably insure itself against potential losses—if its liability extends to all those who could reasonably be expected to interact with the individuals that are caused emotional harm by that business or institution."), *with In re Social Media*, 2024 WL 4673710, at *20 (N.D. Cal. Oct. 24, 2024) ("Defendants urge that the duty would potentially expose them to tenuous claims from unbounded categories of plaintiffs. The doomsday view is a dramatic overstatement. The claims are no more expansive than defendants' own intentional and targeted actions to specific schools, especially given the narrowing of the claims which have excluded those claims based on third-party conduct.").

[7] The JCCP court took two steps with respect to negligence, which defendants conflate somewhat. First, that court found—as did this Court—that a negligence claim could not lie as alleged for third-party physical harm to the school districts. Then, as to the remaining, "economic" injury, the JCCP court found the economic loss rule applied, with which this Court

6

### 3. Derivative Harms

As to derivative harms, defendants argue again that the Ninth Circuit's opinion in *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001) forecloses this Court's decision with respect to derivative harm. Defendants provide some new caselaw in this vein articulating the same principles.[8] Nothing has changed here: the case is inapposite.

\* \* \*

In sum, defendants present substantial grounds for difference of opinion as to the public nuisance questions for which they seek certification. As to the legal questions of negligence and derivative harms, defendants relitigate the same distinguishable concerns as presented in their motions to dismiss, which do not serve as a substantial ground for difference of opinion.

### C. Materially Advance the Ultimate Termination of the Litigation

"[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). Some courts have found that interlocutory appellate certification is "favored" prior to re-transfer of cases in an MDL. *See Hill v. Henderson*, 195 F.3d 671, 678 (D.C. Cir. 1999) ("An appeal before re-transfer enhances the likelihood of achieving the coordination benefits sought by § 1407 (the 'just and efficient conduct' of multidistrict actions), as the circuit of the § 1407 transferee court can give the issues a unified

---

disagreed, and for which defendants do not seek interlocutory review.

[8] For instance, defendants provide as supplemental authority the recent opinion *E. Me. Med. Ctr. v. Walgreen Co.*, No. BCD-23-73, 2025 ME 10, at *13 (Me. Feb. 6, 2025) ("We have never held, however, that a hospital that treats a victim injured by a negligent act can assert its own negligence claim for the cost of treatment directly against the person who caused the injury."); *see also* Dkt. No. 1667. The case is inapposite as to the derivative injury rule, for the reasons previously discussed. *See In re Social Media*, 2024 WL 4673710, at *13. The *E. Me. Med. Ctr.* Court also found that the plaintiffs' public nuisance claims failed to state a claim because plaintiffs complaint "does not allege that the defendants caused a nuisance that interfered with a separate right of the Hospital[]" defendants, or one that caused injuries to the plaintiffs different "*in kind* from the injury to the public," circumstances this Court has found not present in this case. *See E. Me. Med. Ctr.*, No. BCD-23-73, 2025 ME 10, at *21.

7

treatment, and its interlocutory decision is likely to be accepted as binding law of the case once the cases are transferred back to their courts of origin.").[9]

In *Couch v. Telescope Inc.*, even though the district court "concluded that its legal ruling did not present a legal question on which there is a substantial ground for difference of opinion," it nonetheless certified its order for Section 1292(b) interlocutory review in the "interests of comity" with respect to state courts. 611 F.3d 629, 634 (9th Cir. 2010). The Ninth Circuit concluded it lacked jurisdiction to entertain the appeals given the district court concluded there was no substantial grounds for a difference of opinion and rejected arguments otherwise. *Id.*; *see also In re Snap Inc. Sec. Litig.*, 2018 WL 3816764, at *2 (C.D. Cal. Aug. 8, 2018) ("The fact that a question of law is merely 'uncertain' is insufficient to justify immediate appellate review."). However, the Ninth Circuit made a few relevant observations as to the state-law questions presented: (i) "§ 1292(b) certification does not further the interests of comity—it merely trades one federal forum for another," (ii) "[f]ederal rulings on state-law issues generally don't affect the state's law," and (iii) "while we . . . can certify questions of California state law to the California Supreme Court . . . , we invoke the certification process only after careful consideration and do not do so lightly." *Couch*, 611 F.3d at 634.

Whether certification of the public nuisance questions will materially advance this litigation is a complex consideration. On the one hand, the school districts' claims of negligence

---

[9] *See also In re Cintas Corp. Overtime Pay Arb. Litig.*, No. M06-CV-01781-SBA, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007) (finding "certification is particularly appropriate in the context of MDL proceedings" where "to require respondents to appeal 70 separate cases in 11 courts of appeals simply to obtain review of the MDL Court's single order covering each of the consolidated cases" on an issue of federal subject-matter jurisdiction); *Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) ("In multiparty negligence cases, *particularly cases involving multidistrict litigation*, the court [has] found that interlocutory review of liability determinations served the congressional purposes underlying § 1292(b) . . . ." (emphasis supplied)). Plaintiffs argue that this contention is misguided, that defendants mischaracterize *Hill*, which noted that certification is preferable prior to re-transfer, and that *In re Cintas* was focused on a subject-matter issue that would dispose of 70 specific cases. Additionally, in *Steering Comm.*, interlocutory appeal was certified *after* a trial on liability. *See Steering Comm.*, 6 F.3d at 574. Nonetheless, the Court agrees that interlocutory review can serve the efficiency considerations underlying MDL coordination, under appropriate circumstances where the question sought to be certified does not unwind and fragment the MDL itself.

remain so the litigation will proceed. The Court considers any pause created by an immediate interlocutory appeal of the school districts' public nuisance claims prejudicial to their otherwise facially plausible claims of negligence. Further, fact discovery closes in less than a month, summary judgment is around the corner, and the Court anticipates trial on bellwethers to commence in 2026.

Despite defendants' insistence, the kind of clarity they seek will not materialize unless, and until, state high courts render decisions. Further, given the fact-intensive inquiries and some of the inconsistent positions the defendants have taken (i.e., that the claims concern products and therefore do not fall within nuisance, while at the same time arguing that the claims do not concern products for purposes of products liability), the Court maintains that having a fully developed record would provide a better platform for the various courts to address the issues raised.

On the other hand, as defense counsel explained, recent developments in the *Opiates* litigation are instructive. (*See* Dkt. No. 1705, Tr. of February 12, 2025 Case Management Conference at 13:9–16:7.) In 2002, the Ohio Supreme Court, "[r]elying on the Restatement of Law Second," "permitted a public-nuisance suit to proceed based on the manufacture, marketing, distribution, and sale of firearms." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *3 (Ohio Dec. 10, 2024) (discussing *Cincinnati v. Beretta USA Corp.*, 768 N.E.2d 1136 (Ohio 2002)).[10] In 2005, the Ohio legislature added enacted amendments to the Ohio Product Liability Act ("OPLA"), "in an apparent response to . . . *Beretta*" and one other decision, which were "intended to abrogate all common law product liability causes of action." *Id.* Then, in 2006, the Ohio legislature enacted a further amendment to specify that these "product liability claims" include any public nuisance claim alleging a public nuisance arising from the distribution of products. *Id.* at 4.

---

[10] The Court relied on the *Beretta* decision in its interpretation of the Second Restatement. Because the Supreme Court of Ohio in *In re Nat'l Prescription Opiate Litig.* found that its legislature abrogated common-law public nuisance claims relating to the distribution of products, the *Beretta* opinion remains persuasive authority as to states which lack any such legislative pronouncement and have relied on the Second Restatement.

Faced with these developments in 2018, the court in the *Opiates* MDL determined that these legislative amendments did not preclude Ohio government-entity plaintiffs from asserting common-law public nuisance claims relating to the opioid crisis. *See In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804, 2018 WL 6628898, at *1, 12–14 (N.D. Ohio Dec. 19, 2018); *see also id.* at *14 ("To conclude that all public nuisance claims, including those seeking equitable remedies, are subsumed by the OPLA would effectively be a substantive change in the law in contravention of the General Assembly's express intent that the amendment not be substantive."). After the case went to trial and a jury rendered a verdict in plaintiffs' favor, the defendant pharmacies appealed, and the Sixth Circuit certified to the Ohio Supreme Court the question of whether the OPLA abrogates common law claims of "public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek equitable abatement, including both monetary and injunctive remedies." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *2. On December 10, 2024, the Ohio Supreme Court agreed. *See id.* at *8.[11]

The path of Ohio plaintiffs in the *Opiates* litigation indicates that the law of public nuisance may not develop in a uniform matter, as past experience has already indicated.[12] While the Court recognizes that appellate certification of these questions *to a state supreme court* would clarify the scope or permissibility of plaintiffs' public nuisance claims, this Court cannot do so. The Court must acknowledge the Ninth Circuit's admonitions in *Couch* along those lines: interlocutory review does not further the interests of comity but merely trades one federal forum for another, and federal rulings do not generally affect a state's law. *See Couch*, 611 F.3d at 634.

Essentially, this Court would be asking the Ninth Circuit to certify these questions of public nuisance's scope to the supreme courts of 15 states, namely Alaska, Arizona, California,

---

[11] *But see In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *8 (Stewart, J., concurring in part and dissenting in part) ("I concur in the majority's analysis of this certified question except that I would hold that public-nuisance claims seeking equitable relief are not abrogated by the" OPLA.).

[12] However, defendants did not present any comparable legislative abrogation of the instant plaintiffs' claims of public nuisance in the at-issue states.

10

Colorado, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland, Nevada, North Carolina, Pennsylvania, Utah, and Virginia, let alone any other states for which new school district plaintiffs assert claims. *See Couch*, 611 F.3d at 634 ("[W]hile we . . . can certify questions of . . . state law . . . , we invoke the certification process only after careful consideration and do not do so lightly."). This MDL, which currently benefits from coordination among plaintiffs from numerous states, would quickly splinter and fragment. Defendants will have to raise these questions for appellate consideration after full development of the record.

## IV.   CONCLUSION

Defendants' motion to certify for interlocutory appeal questions relating to the scope of public nuisance claims is **DENIED**. The parties' motions to certify for interlocutory appeal questions relating to Section 230 are **DENIED WITHOUT PREJUDICE**.

This terminates Dkt. Nos. 1460, 1462, and 1463 in Case No. 22-md-3047; and Dkt. No. 166 in Case No. 23-cv-5448.

**IT IS SO ORDERED.**

Dated: March 11, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**