# EXHIBIT C

E-Served: Mar 5 2025 2:45PM PST Via Case Anywhere

FILED
Superior Court of California
County of Los Angeles

MAR 05 2025

David W. Slayton, Executive Officer/Clerk of Court
By: L. M'Greene, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
**JCCP5255**
**(Lead Case: 22STCV21355)**

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**
**Date of Hearing: February 19, 2025**

**Motion to Lift the Stay on Cases with School District Plaintiffs from Outside of California, Florida, Washington, and Rhode Island**

Court's Ruling: The Motion is granted.

      Plaintiffs in this coordinated proceeding are individuals and public-school districts that allege they have suffered various types of harm as a result of minors using Defendants' social media platforms. Plaintiffs bring their claims against multiple Defendants that designed and operated the following social media platforms: Facebook, Instagram, Snapchat, TikTok, and YouTube. Facebook and Instagram are owned, designed, and operated by a group of Defendants who are referred to collectively in these proceedings as "Meta." Snapchat is owned, designed, and operated by Defendant Snap Inc. (Snap). TikTok is owned, designed, and operated by multiple Defendants who are referred to collectively in these proceedings as "ByteDance." YouTube is owned, designed, and operated by multiple Defendants referred to collectively in these proceedings as "Google."

      In early 2024, Defendants demurred to the complaints of four school districts who had alleged causes of action under the common law of their respective states: California, Florida, Washington, and Rhode Island. The court sustained each demurrer without leave to amend on June 7, 2024 (June 7, 2024 Ruling). Surveying the common law of each of the four states at issue, the court determined that school districts could not state a

claim either in negligence or in nuisance to hold social media platforms liable for the harm suffered by third-party students as a result of using those platforms.

Immediately following this court's ruling on the demurrers to the school district complaints, Defendants requested by motion that this court "implement" the court's ruling by, inter alia, dismissing all of the claims of school district plaintiffs from California, Rhode Island, Washington and Florida, and requiring that school district plaintiffs from other states be required to seek leave to dismiss without prejudice by "showing cause" why their claims should not be dismissed pursuant to the June 7, 2024 Ruling. Plaintiffs at that juncture argued that judicial economy would be better served by facilitating appeal of the June 7, 2024 Ruling and waiting for the outcome of the appeal of that Ruling before incurring the additional expense of proceeding with litigation of the other school district cases.

On June 27, 2024, by Minute Order, this court held, with respect to additional cases from the four states whose laws were considered in the June 7, 2024 Ruling, that judicial economy would best be served by awaiting an appellate ruling on the four specific cases before the appellate court in part because "[i]n this court's view, it will not enhance the appellate process to have 228 cases [from California, Florida, Rhode Island and Washington] as part of a coordinated appeal." As to the cases involving the laws of other states, this court reasoned:

> [I]n its June 7, 2024 Ruling, the court considered separately the law of the four states that were the subject of that motion. To be sure, there are important doctrinal consistencies in the common law of these four states. But nothing in this court's decision provides a basis for concluding that no other State's common law would differ from that of the States analyzed in the June 7, 2024 Ruling. The court is not of the view that it would be efficient to decide a demurrer under the relevant law of each additional State represented in this proceeding while the appeal of the court's June 7, 2024 Ruling moves forward.

(Minute Order, June 27, 2024, at p. 2.)

Subsequently, in the multi-district litigation in federal court concerning similar claims (MDL), Judge Gonzalez Rogers determined that certain claims by school district plaintiffs may proceed against Defendants. (See, *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* (N.D. Cal., Oct. 24, 2024, No. 4:22-MD-3047-YGR) 2024 WL

2

4673710; Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the School District and Local Government Entities' Claims of Public Nuisance, filed in the MDL on Nov. 15, 2024, attached as Exhibit B to Notice of Errata Re: Declaration of Joseph Vanzandt ISO Plaintiffs' Motion to Lift Stay, filed Feb. 13, 2025.)

The current Motion is brought by all school district plaintiffs in this coordinated proceeding who do not bring claims under California, Florida, Washington, or Rhode Island law (Moving Plaintiffs). Moving Plaintiffs request that the court now lift the stay that the court imposed on June 27, 2024. Moving Plaintiffs do not seek to lift the stay so that the court can proceed to decide whether Moving Plaintiffs' claims survive under the laws of states other than the four states whose laws were the subject of the June 7, 2024 Ruling. Rather, Moving Plaintiffs are commendably candid that they seek to lift the stay so that they may voluntarily dismiss their cases without prejudice and re-file their claims in the MDL. Thus, as Moving Plaintiffs state, "the Motion … implicates the standards for voluntary dismissal." (Pls' Mot., at p. 2.)

## Discussion

All parties agree that California state procedure applies to the issue of whether Moving Plaintiffs may at this point voluntarily dismiss their claims without prejudice. California Code of Civil Procedure section 581, subdivision (c) states in broad terms: "A plaintiff may dismiss his or her complaint or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial." Despite this seemingly broad power of a plaintiff to dismiss its case without prejudice in the California courts, longstanding case law holds that "[t]he right of a plaintiff to voluntarily dismiss an action before commencement of trial is not absolute … . A plaintiff is precluded from voluntarily dismissing an action without prejudice under various circumstances short of a full trial." (*Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 66 (*Groth*).)

Appellate courts have interpreted the legislature's use of the phrase "commencement of trial" to refer to other "procedures that effectively dispose of the case." (*Id.*, internal citations and quotation marks omitted.) For example, in *Herbert Hawkins Realtors, Inc. v. Milheiser* (1983) 140 Cal.App.3d 334, the plaintiffs were not permitted to voluntarily dismiss their case after the defendants had prevailed in arbitration. In *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168, the court held that the plaintiff could not voluntarily dismiss his claims after the defendants filed a motion for terminating sanctions as a result of continuing discovery abuses. In *Wells v.*

3

*Marina City Properties, Inc.* (1981) 29 Cal.3d 781 (*Wells*), the plaintiff was not permitted to voluntarily dismiss its case after (1) a general demurrer was sustained with leave to amend and (2) the plaintiff had failed to amend the complaint within the time authorized by the court. In *Miller v. Marina Mercy Hospital* (1984) 157 Cal.App.3d 765 voluntary dismissal was not permissible after (1) the plaintiffs' failure to respond to requests for admission resulted in the court deeming admitted all the matters contained in the requests for admission, and (2) the defendants filed a motion for summary judgment based on the deemed admissions.

Appellate decisions interpreting section 581 to preclude dismissal without prejudice in circumstances other than when a trial on the merits is about to commence have taken into account the interests of the defendant in not being subjected to "annoying and continuous litigation." (*Goldtree v. Spreckels* (1902) 135 Cal. 666, 671  The appellate authorities express even greater concern about "the wasting of the time and money of the people in a fruitless proceeding in the courts . . . ." (*Wells, supra,* 29 Cal.3d at p. 786, internal citations and quotation marks omitted.)  Applying those principles, courts have held that a dismissal without prejudice cannot be filed after a court makes public a ruling that would dispose of the case, even if the ruling is not final.  A case may not be dismissed without prejudice "in the light of a public and formal indication by the trial court of the legal merits of the case … ."  (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 200.)

In *Groth*, these policies led the Court of Appeal to conclude that the plaintiff's voluntary dismissal request should have been denied because the trial court had issued a tentative ruling to sustain a demurrer without leave to amend, even though the request for dismissal was filed before the trial court's formal ruling on the merits of the demurrer. (*Groth, supra,* 97 Cal.App.4th at p. 64.)[1]  The appellate court reasoned that allowing a voluntary dismissal under these circumstances would waste the time and resources of the court and other parties, promote "annoying and continuous litigation" and undermine the tentative ruling system. (*Id.* at p. 70.)  Thus, under the holding in *Groth*, a request for voluntary dismissal should be denied, even where the court has not formally entered an order disposing of the plaintiff's case, if the court has given a public and formal indication of the outcome of the legal merits of the case.  See also, *Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765, holding it would be improper to allow the plaintiff to voluntarily dismiss its case after the trial court had (1) issued

---

[1] Because the plaintiff was able to voluntarily dismiss its claims, the defendant was found not to be entitled to mandatory indemnity under Corporations Code section 317, given that "a voluntary dismissal did not meet the statutory requirement of 'success on the merits' for the purposes of triggering mandatory indemnification." (*Id.*)

4

a tentative ruling granting the defendants' summary judgment motions, but (2) provided the plaintiff with a continuance to present additional evidence.

In this coordinated proceeding, all parties agree that the law of the home state of each School District applies to the claims for negligence and nuisance pleaded based on similar facts in each School District case. The court's June 7, 2024 Ruling sustained without leave to amend the demurrers to the complaints of School Districts from four states. As stated in the June 27, 2024 Minute Order, "the court considered separately the law of the four states that were the subject of the motion" and there was no "basis for concluding that no other State's common law would differ from that of the States analyzed in the June 7, 2024 Ruling." (Minute Order, June 27, 2024, at p. 3.)

To be sure, "there are important doctrinal consistencies in the common law of [the] four states" the court did consider in its June 7, 2024 Ruling. (Minute Order, June 27, 2024, at p. 3.) And in this court's June 7, 2024 Ruling, there are general statements concerning common law doctrines and this court's general reluctance "[t]o expand the common law in order to provide a remedy for those who are indirectly affected by the negative consequences of social media for youth [by] creat[ing] a broad web of indeterminate liability that the common law has heretofore refused to impose." (June 7, 2024 Ruling, at p. 2.) And one cannot overlook the fact that the basis for Moving Plaintiffs' Motion is a recognition that this court's demurrer ruling, if upheld on appeal, may serve as an adverse precedent in future rulings applying the laws of some states that were not considered in the June 7, 2024 Ruling. Indeed, this is precisely why Moving Plaintiffs seek to have the claims filed in the MDL.

Nevertheless, although Moving Plaintiffs have observed rulings by this court that appear adverse to their interests, the court must specifically consider the law of a particular state before dismissing a School District's claims based on the laws of that state. In our federal system, when choice of law principles dictate that a particular state's law applies in a given situation, the court cannot rely on conflicting law from a different state to void the legal authority of the governing state's law. (*Cf., State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 53 U.S. 408, 422 ["A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders …"].)

In *321 Henderson Receivables Origination LLC v. Red Tomahawk* (2009) 172 Cal.App.4th 290 (*321 Henderson*), the Court of Appeal held that "[a]n unfavorable ruling in another case is not a 'public and formal indication' by the trial court of the legal merits of the instant case." (*Id.* at

5

p. 303.) In *321 Henderson*, the appellate court ruled that a plaintiff that had received an unfavorable ruling from a particular judge in a prior case could dismiss without prejudice a subsequently filed case pending before the same judge at any time before a dispositive ruling was made in the second case. (*Id.*)[2]

Defendants argue that application of section 581(b)(1) encourages forum shopping. Indeed, it does. The legislature has decided that a plaintiff has a procedural right to take the measure of a judge's pretrial rulings and dismiss its case without prejudice at any time prior to either the start of trial or a public and formal indication of a ruling that would dispose of the case. Some California courts have attempted to discourage local forum shopping through rules providing that when a voluntarily dismissed case is re-filed, it will be assigned to the same judge. (See, e.g., Local Rules, rule 3.3, subd. (d) ["A party must not dismiss and then refile a case for the purpose of obtaining a different judge. Whenever a case is dismissed by a party or by the court prior to judgment and a new action is later filed containing the same or essentially the same claims and the same or essentially the same parties, the new action will be assigned, unless the Supervising Judge for good cause orders otherwise, to the judge to whom the first case had been assigned"].) Similarly, if an action dismissed from a coordinated proceeding were re-filed in a California Superior Court other than the court in which the coordinated proceeding had been pending, any party could file an add-on petition in the coordinated proceeding seeking to add the re-filed action back into the coordination. (See California Rules of Court, Rule 3.544.) But if a plaintiff can find another forum (other than a California court) that has jurisdiction over the case, the plaintiff is unconstrained from re-filing elsewhere (unless the statute of limitations precludes the litigation in the second forum).

The federal courts have stricter restrictions on voluntary dismissal, but it is far from clear that the Federal Rules of Civil Procedure would preclude voluntary dismissal of cases in a procedural posture similar to that presented

---

[2] It is worth clarifying that the holding in *321 Henderson* does not support the argument that Plaintiff School Districts located in California, Florida, Washington, or Rhode Island should be permitted to voluntarily dismiss their cases from this litigation. The June 7, 2024 Ruling necessarily applies to cases brought under California, Florida, Washington, and Rhode Island law, given that there are not relevant differences in the various School Districts' theories of recovery. In this sense, the June 7, 2024 Ruling is best analogized as a tentative ruling issued by this court that, if upheld, effectively disposes of the claims of School District Plaintiffs located in California, Florida, Washington, and Rhode Island. The court in *321 Henderson* did not consider whether voluntary dismissal is proper after a tentative decision has been issued in a proceeding, such as a coordinated proceeding, where, because of the commonalities of fact and law within a case grouping, the court is considering together claims filed as separate lawsuits.

6

here. Federal Rule of Civil Procedure 41 provides that a plaintiff may dismiss an action without a court order until an answer or motion for summary judgment is filed. (Fed. Rules Civ.Proc., rule 41, 28 U.S.C.A., subd. (a)(1)(A)(i).) The dismissal is without prejudice unless the plaintiff previously dismissed a federal or state court action based on the same claim. (Fed. Rules Civ.Proc., rule 41, subd. (a)(1)(B).) No answer has been filed in the cases brought by the Moving Plaintiffs in this JCCP proceeding, although Defendants state that some of the Moving Plaintiffs originally filed their claims in the MDL.

Defendants argue that this court should preclude annoying and continuous litigation and waste of time and money by creating a procedural rule particular to this JCCP proceeding that would preclude the Moving Plaintiffs, who began litigating the viability of negligence and nuisance claims before this court, from withdrawing from the litigation after having obtained a seemingly unfavorable ruling. Defendants rely on *Isaak v. Superior Court* (2022) 73 Cal.App.5th 792 (*Isaak*), in which the court held that a judge presiding over a coordinated proceeding has authority under California Rule of Court 3.504 to override procedural statutes and to "provide another suitable manner of proceeding" "if the law applying to [coordinated] civil actions cannot be followed in a particular action." (*Id.* at p. 798.) In *Isaak*, the trial court had established a "preference protocol" in order to fairly sequence bellwether cases among those cases in which the plaintiff claimed a trial preference pursuant to Code of Civil Procedure section 36. (*Id.*) The appellate court upheld the process put in place by the coordination trial judge because the legislature, in Code of Civil Procedure section 404.7, had provided that the Judicial Council could enact court rules of practice and procedure for coordinated proceedings "[n]othwithstanding any other provision of law." (*Id.* at pp. 798-799.)

In *Isaak*, however, "there [was] no dispute that respondent trial court complied with [California Rule of Court] 3.504 ... ." (*Id.* at p. 800.) Subdivision (c) of Rule 3.504 states in part: "[I]f the prescribed manner of proceeding cannot, with reasonable diligence, be followed in a particular coordination proceeding, the assigned judge may prescribe any suitable manner of proceeding that appears most consistent with those statutes and rules." Here, the "prescribed manner of proceeding" is the rule set forth in Code of Civil Procedure section 581(b)(1), which requires that dismissals before start of trial be allowed without prejudice. Defendants do not explain how or why that "prescribed manner of proceeding" cannot be followed in this JCCP. In any case, this court has not prescribed some alternative "suitable manner of proceeding" regarding voluntary dismissals.

7

If this court were to set up a case management order specific to this JCCP proceeding under the authority of Rule 3.504, fairness and the creation of an "even playing field" would counsel that the case management rule be put in place *before* the occurrence of events to which the case management rule would apply. If, *before* the demurrers to the School District cases from four states had been heard, Defendants had suggested that Moving Plaintiffs should not be permitted to dismiss cases from other states if all four demurrers ultimately were sustained without leave to amend, then Moving Plaintiffs would have had a chance to object before the event. Moreover, Moving Plaintiffs almost certainly would have asked for some sort of reciprocal restriction that would have applied if the court had overruled all initial School District demurrers. The trial court that was affirmed in *Isaak* set up a case management rule that differed from the general provisions of Code of Civil Procedure to govern bellwether selection going forward. Defendants ask the court to make a case management rule that changes the consequences under the Code of Civil Procedure of events that already have taken place.

Finally, Defendants argue that collateral estoppel should bar the Moving Plaintiffs from dismissing their School District complaints without prejudice. Five prerequisites govern application of judicial estoppel. The doctrine of judicial estoppel applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) Defendants rely on several statements from Plaintiffs' leadership counsel arguing that the court should first rule on School District demurrers involving the laws of states that Plaintiffs believed were most favorable to them. None of these statements represents that School District Plaintiffs would not have different arguments in their favor based on other states' laws.

In any event, for judicial estoppel to apply, a party that is to be estopped must *benefit* from the position it took. "The factor of success – whether the court in the earlier litigation adopted or accepted the prior position as true – is of particular importance" in applying the doctrine of judicial estoppel. (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170.) Here, Moving Plaintiffs decidedly did *not* benefit from the court's decision to allow initial demurrers to go forward based on the laws of the states urged by Plaintiffs' leadership counsel. The clarity in their favor Plaintiffs' leadership hoped would emerge from the first demurrers yielded precisely

8

the opposite result.  Judicial estoppel does not apply under these circumstances.

Date: 3/5/2025

_____
The Honorable Carolyn Kuhl
Judge of the Superior Court