UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos.:   4:22-md-03047-YGR (PHK)<br>4:23-cv-05448-YGR<br><br>**JOINT LETTER BRIEF ON META'S AMENDED 30(b)(6) NOTICE TO COPPA STATES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and the State AGs that are exclusively pursuing COPPA claims in this litigation (collectively, the "COPPA States")[1] respectfully submit this letter brief regarding outstanding disputes relating to the scope and propriety as to the COPPA States of the Amended 30(b)(6) Notice served by Meta.

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference for an H.2 conferral on March 4, 2025, and continued to confer in writing and by videoconference thereafter. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

---

[1] For purposes of this Joint Letter Brief, the "COPPA States" are Arizona, Hawai'i, Idaho, Maine, Maryland, Ohio, Rhode Island, South Dakota, Washington, and West Virginia. Four of these states never asserted state consumer protection claims (ID, MD, SD, WV), and six are currently in the process of negotiating a stipulation with Meta to dismiss their state consumer protection claims with prejudice (AZ, HI, OH, ME, RI, and WA), leaving only COPPA claims (Count I of the Complaint) against Meta. Meta reserves all rights to seek additional discovery of these States to the extent they fail to dismiss their consumer protection claims with prejudice or later seek to assert consumer protection claims in any way.

Dated: March 17, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　**COVINGTON & BURLING LLP**

　　　　　　　　　　　　　　　　　　　　*/s/   Ashley Simonsen*
　　　　　　　　　　　　　　　　　　　　Ashley Simonsen (State Bar. No. 275203)
　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　1999 Avenue of the Stars
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90067
　　　　　　　　　　　　　　　　　　　　Telephone: (424) 332-4800
　　　　　　　　　　　　　　　　　　　　Facsimile: + 1 (424) 332-4749
　　　　　　　　　　　　　　　　　　　　Email: asimonsen@cov.com

　　　　　　　　　　　　　　　　　　　　Phyllis A. Jones, *pro hac vice*
　　　　　　　　　　　　　　　　　　　　Michael X. Imbroscio, *pro hac vice*
　　　　　　　　　　　　　　　　　　　　Stephen Petkis, *pro hac vice*
　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　One City Center
　　　　　　　　　　　　　　　　　　　　850 Tenth Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20001-4956
　　　　　　　　　　　　　　　　　　　　Telephone: + 1 (202) 662-6000
　　　　　　　　　　　　　　　　　　　　Facsimile: + 1 (202) 662-6291
　　　　　　　　　　　　　　　　　　　　Email: pajones@cov.com
　　　　　　　　　　　　　　　　　　　　Email: mimbroscio@cov.com
　　　　　　　　　　　　　　　　　　　　Email: spetkis@cov.com

　　　　　　　　　　　　　　　　　　　　Paul W. Schmidt, *pro hac vice*
　　　　　　　　　　　　　　　　　　　　Christopher Y.L. Yeung, *pro hac vice*
　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　　　The New York Times Building
　　　　　　　　　　　　　　　　　　　　620 Eighth Avenue
　　　　　　　　　　　　　　　　　　　　New York, NY 10018-1405
　　　　　　　　　　　　　　　　　　　　Telephone: + 1 (212) 841-1262
　　　　　　　　　　　　　　　　　　　　Facsimile: + 1 (202) 662-6291
　　　　　　　　　　　　　　　　　　　　Email: pschmidt@cov.com
　　　　　　　　　　　　　　　　　　　　Email: cyeung@cov.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants Meta Platforms, Inc.;*
　　　　　　　　　　　　　　　　　　　　*Instagram, LLC; Meta Payments, Inc.; and Meta*
　　　　　　　　　　　　　　　　　　　　*Platforms Technologies, LLC*

**KRIS MAYES**
**Attorney General State of Arizona**

   /s/ Laura Dilweg
Laura Dilweg (AZ No. 036066, CA No. 260663)
Chief Counsel – Consumer Protection and Advocacy Section
Nathan Whelihan (AZ No. 037560),
*pro hac vice*
Assistant Attorney General
Arizona Attorney General's Office 2005 North Central Avenue Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:    (602) 542-4377
Laura.Dilweg@azag.gov
Nathan.Whelihan@azag.gov

*Attorneys for Plaintiff State of Arizona, ex rel. Kris Mayes, Attorney General*


**ANNE E. LOPEZ**
**Attorney General State of Hawai'i**

   /s/ Christopher T. Han
Christopher J.I. Leong (HI JD No. 9662),
*pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649),
*pro hac vice*
Christopher T. Han (HI JD No. 11311),
*pro hac vice*
Deputy Attorneys General
Department of the Attorney General
Commerce and Economic Dev. Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawai'i*

**RAÚL R. LABRADOR**
**Attorney General**

   /s/ Nathan H. Nielson
Nathan H. Nielson (ID Bar No. 9234)
Deputy Attorney General
Idaho Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
Phone: (208) 334-4543
nathan.nielson@ag.idaho.gov

*Attorney for Plaintiff State of Idaho*


**AARON M. FREY**
**Attorney General State of Maine**

   /s/ Michael Devine
Michael Devine (Maine Bar No. 5048),
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

**ANTHONY G. BROWN**
**Attorney General State of Maryland**

  /s/ *Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No. 9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Div.
Elizabeth J. Stern (Maryland CPF No. 1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*


**DAVE YOST**
**OHIO ATTORNEY GENERAL**

  /s/ *Kevin R. Walsh*
Melissa G. Wright (0077843)
Section Chief, Consumer Protection Section
Melissa S. Smith (0083551)
Asst. Section Chief, Consumer Protection
Michael S. Ziegler (0042206)
Principal Assistant Attorney General
Kevin R. Walsh (0073999)
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031
Melissa.Wright@ohioago.gov
Melissa.S.Smith@ohioago.gov
Michael.Ziegler@ohioago.gov
Kevin.Walsh@ohioago.gov

*Attorneys for Plaintiff State Ohio*


**PETER F. NERONHA**
**Attorney General State of Rhode Island**

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435), *pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorney for Plaintiff State of Rhode Island*


**MARTY J. JACKLEY**
**Attorney General State of South Dakota**

  /s/ *Bret Leigh Nance*
Amanda Miiller  (Bar # 4271), *pro hac vice*
Bret Leigh Nance  (Bar # 5613),  *pro hac vice*
Assistant Attorneys General
Attorney General State of South Dakota
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
amanda.miiller@state.sd.us
bretleigh.nance@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**NICHOLAS W. BROWN**
**Attorney General**

  /s/Alexandra Kory
Alexandra Kory, WSBA No. 49889
Joseph K. Kanada, WSBA No. 55055
Gardner U. Reed, WSBA No. 55630
Claire E. McNamara, WSBA No. 50097
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744
alexandra.kory@atg.wa.gov
joe.kanada@atg.wa.gov
gardner.reed@atg.wa.gov
claire.mcnamara@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOHN B. MCCUSKEY**
**ATTORNEY GENERAL**
**STATE OF WEST VIRGINIA**

  /s/ Laurel K. Lackey
Laurel K. Lackey (WVSB No. 10267)
Abby G. Cunningham (WVSB No. 13388)
*Assistant Attorneys General*
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov
abby.g.cunningham@wvago.gov

*Attorneys for Plaintiff State West Virginia, ex rel. John B. McCuskey, Attorney General*

**Meta's Position:** The COPPA States told Meta that "teen mental health is not relevant to proving or disproving a COPPA claim," so Meta significantly lessened their discovery burden, including by (i) largely releasing them from producing agency documents and (ii) dropping over half of the topics from Meta's Amended 30(b)(6) Notice. Meta currently seeks testimony from the COPPA States on only 15 topics, most of which concern basic facts bearing on the States' own theories about how Meta's services are "directed to children" within COPPA's meaning (Topics 1-3, 10, 13, 31), and the States' awareness and actions relating to allegedly impacted users (Topics 4-6).

The COPPA States still seek to provide even less Rule 30(b)(6) testimony because they claim the "directed to children" inquiry is "focuse[d] solely on Meta's platforms and practices." But the States' own litigation conduct belies that claim. For example:

- In the Complaint, the States allege that various third-party advertisements and accounts show that Instagram is child-directed. *See* Compl. ¶¶ 758-66, 796.

- The States secured a ruling (above Meta's objections) that "third-party content hosted by a platform can be considered when determining whether the platform, or a portion thereof, is 'directed to children' under COPPA." ECF 1214 at 21 (emphasis added).

- On June 7, 2024, the States requested that Meta produce communications with 49 third-party account holders "concerning the actual, projected, or anticipated engagement of Youth Users with these accounts".

- This past Friday, March 14, 2025, the States noticed an intent to subpoena a third-party production company for (among other things) "ALL Documents Relating to the age of [the third-party's] intended audience; the age of the audience [the third-party's] content is directed to; or the age of [the third-party's] actual audience."

Meta agrees with the States that it is "undisputed . . . that not all Meta content is child-directed." But if the States will attempt to show that Facebook and Instagram contain enough child-directed third-party content to render those services "directed to children" under COPPA, then the States cannot refuse to provide discovery into their own social media use relating to, and awareness of, under-13 users for the same time period the States chose to put at issue in this matter. If the States do not use Meta's services to target individuals under 13, that provides important context around attempts to prove the services' child-directed nature through a few cherry-picked examples. And if the States used those services to target individuals under 13, it shows the States' complicity in any purported COPPA violations, and could impact their entitlement to any of the equitable relief sought. The States cannot refuse to provide discovery critical to developing these points.

Topics 1-3, 10, 13: To prevail on their claims, the States will attempt to show that Facebook and Instagram are not "general audience" services, but instead are "directed to children" under COPPA. *See* ECF 599 at 20 (alleging the services are "directed to children"). The States apparently will try to satisfy that burden by relying on a few examples of purportedly child-directed third-party content, and have served party and third-party requests in search of such examples.

Having chosen to litigate their claims in this manner, the States are in no position to strike Topics 1-3, 10, and 13. Each Topic seeks testimony about the COPPA States' own real-world use and

1

understanding of the target audience for Facebook, Instagram, and other social media platforms including: policies and procedures (Topic 1), actual use, including through advertisements (Topic 2), efforts to encourage or discourage use (Topic 3), any meetings regarding the platforms (Topic 10), and any financial entanglement with the platforms (Topic 13). This testimony is relevant for many reasons, including to demonstrate that *the COPPA States themselves* treat Facebook and Instagram as directed at general audiences rather than children. For example, if a State's social media policies (Topic 1), use, advertisements, and promotional efforts (Topics 2 and 3) reflect treatment of Facebook and Instagram as means to target individuals over 13, that bolsters arguments that the services are not "directed to children" as defined by COPPA, including by rebutting the notion that any isolated examples of purportedly child-directed content the States identify can render those services child-directed. And in the unlikely event that the States prevail on their COPPA claims, the States' own use and understanding of, and financial entanglements with, Meta's services could impact their entitlement to, and amount of, equitable relief they seek.

The COPPA States' contrary view essentially seeks an abstract *in limine* ruling about the types of evidence Meta can introduce at trial. But that issue is not properly before the Court now, and there is no evidentiary record for the Court to even begin to conduct the multi-factorial weighing necessary for an admissibility determination. The States' position is a continuation of their failed attempt to seek early adjudication of contested legal issues, which the District Court rejected last week. ECF 191, Case No. 4:23-cv-05448 (denying motion to strike Meta's affirmative defenses).

The States cannot curtail Meta's efforts to obtain discovery directed at refuting the States' own case theories, and similar to discovery that the States themselves seek from Meta and third-parties. The COPPA States' own use and understanding of social media—including whether Facebook and Instagram are "directed to children"—is discoverable. *See* FRCP 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

Topics 4-6: Topics 4-6 are limited to the under-13 individuals covered by COPPA and put at issue by the States' claims. For example, Topic 4 seeks testimony regarding the COPPA States' efforts to discourage *or* encourage under-13 use of social media services. That testimony is highly relevant to this case, including because it might (i) impeach the States' litigation position (if they had an informed view that Facebook and Instagram were not child-directed), or (ii) impact the proper measure of equitable relief—*e.g.*, the States should not recover in equity for any under-13 individuals the States encouraged to use social media.

Topics 5 and 6 are relevant for similar reasons. They seek highly relevant testimony regarding the States' interactions with Meta and others regarding under-13 use. If any COPPA State had no such interactions, there is no undue burden on the States and no need to strike the topics. But if there were interactions, Meta should be entitled to develop that evidence in discovery, and already has agreed to endeavor to provide examples to address burden concerns.

Topic 31: This Court already overruled the COPPA States' prior effort to strike Topic 31. ECF 1679 at 8-9. The COPPA States now take a second bite at the apple, arguing that their views on a potential version of Instagram directed at individuals under 13 is *completely irrelevant* to claims that depend on proof that existing versions of Facebook and Instagram are directed to that same age group. The COPPA States' position is difficult to understand and even harder to square with discovery principles. This Court already held that Meta can explore the States' views regarding

the potential under-13 version of Instagram. ECF 1679 at 9. If anything, Topic 31 is even *more* relevant to the COPPA States, given their claims' focus on use by under-13 individuals.

Topic 25: Topic 25 seeks testimony regarding the financial arrangements relating to the States' prosecution of this action, including for example any agreements regarding cost allocation. This topic is directly relevant in defending against some States' requests for attorneys' fees, costs, and "other compensation"—Meta must understand all of the arrangements that might impact the calculation or availability of those amounts. Meta has no intention to belabor questioning on this topic; if there are no such arrangements the witness can simply say so. If the COPPA States believe that Meta's questions implicate privilege, they should object at the deposition. But the possibility of privilege issues is not a valid basis for denying Meta discovery wholesale.

There Exists No Undue Burden on the States: The COPPA States' burden concerns are entirely unsupported[2] and rely on arguments already rejected—including by the District Court—that Meta's notices require testimony from state agencies instead of Plaintiff States as parties. ECF 1646, 1766. Each State "may designate whomever it chooses—or several different people—to testify." ECF 1646 at 18. The States do not need to interview every state employee, as they claim. The relevance of Meta's topics also far outweighs the States' conclusory burden claims, especially when the States seek hundreds of millions—if not billions—of dollars from Meta.

**COPPA-Only State AGs' Position:** The Court should strike Topics 1-6, 10, 13, 25, and 31 from Meta's Amended 30(b)(6) Notice (Exhibit A) for ten states with only one claim—that Meta violated Children's Online Privacy Protection Act (COPPA). COPPA prohibits collection of children's online data without parental consent. It applies to operators of online platforms that are "directed to children" or to those with actual knowledge of child data collection. 16 C.F.R. §312.3. Meta is subject to COPPA because its platforms "both as a whole, *as well as portions thereof*, are child-directed." ECF 599. Whether Meta is directed to children or had actual knowledge it was improperly collecting data of children necessarily focuses solely on Meta's platforms and practices. The challenged 30(b)(6) topics are irrelevant to these inquiries. Meta fails to cite any defense or legal authority supporting the relevancy of these topics to COPPA because none exist.

The Court may strike 30(b)(6) topics to prevent undue burden or expense and when topics are vague or irrelevant. Fed. R. Civ. P. 26(c)(1); *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19 CV 226 (ILG) (CLP), 2022 WL 2702378, at *2 (E.D.N.Y. Feb. 11, 2022). When a discovery request is facially "overly broad" or "when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 542 n.20 (D. Kan. 2006). Meta cannot meet this standard.

 **A. The challenged 30(b)(6) topics are irrelevant to any COPPA claim or defense.**

A party is not entitled to discovery unless it seeks information that "is relevant to any party's claim or defense." *Barnes v. Tumlinson*, 597 Fed. App'x 798, 799 (5th Cir. 2015) (citation omitted); Fed. R. Civ. P. 26(b)(1)); *see also In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (noting 2015 Amendment to Rule 26(b)(1) "eliminated" the phrase "any matter that bears on, or

---

[2] A few COPPA States attach supposed burden declarations shared with Meta about two hours before filing. Those should be struck as untimely if Meta is not given an opportunity to respond.

that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" from discovery relevance standard, and clarifying the "matter sought must be 'relevant to any party's claim or defense.'").

The challenged topics seek testimony concerning the *plaintiff states'*: use of social media, and related policies, programs, and communications; meetings regarding social media platforms; investment in or financial benefit from such platforms; and views about social media. None of these topics are relevant, or could be relevant, to COPPA. The State AGs are incapable of transforming Meta's platforms or practices through their "consideration" "views" or communications and policies about, social media. Meta's platforms and practices are what they are, and they either violate COPPA or they do not.

Whether a website is "directed" or "targeted" to children such that COPPA is implicated depends primarily on the site's content:

> subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 C.F.R. § 312.2. "[C]ompetent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience" may also be considered. *Id*. Judge Gonzalez-Rogers recognized these factors, which are repeated in COPPA case law. Dkt. 1214 at 19; *see also New Mexico ex rel. Balderas v. Tiny Lab Prods*., 457 F. Supp. 3d 1103, 1114 (D.N.M. 2020) ("[t]he factors identified in the COPPA Rule for evaluating whether an app is directed or targeted to children…<u>focus on the substance of the app itself</u>."), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021).

Meta is correct that the State AGs seek information from third parties about the child-directed content they place on Meta's platforms, because this information is relevant to whether Meta hosts child-directed content on its websites. That any state uses social media has no bearing on whether the platforms contain child-directed content such that COPPA applies. Similarly, state analyses, policies, initiatives, and meetings provide no "empirical evidence" regarding the audience composition of the platforms. 16 C.F.R. § 312.2. The reasons why a state posts content, or a state's "views" of the platforms, also has no bearing on whether *Meta's platforms, or any portions thereof,* are directed at children.

Meta's platforms either contain child-directed content such that COPPA applies, or they do not. If COPPA applies, Meta violated it or not. There is no authority for affirmative defenses in statute or case law. Indeed, Meta's sole defense that *may* relate to COPPA—unclean hands—is asserted "in relation to misconduct *by users*" of the platforms for violating Meta's terms of service (i.e. children who lied about their age), not state conduct. Dkt. 181 at 5. The information sought by the challenged 30(b)(6) topics is irrelevant to any COPPA claim or defense.

    **B. The burden to prepare for these vastly overbroad, irrelevant topics is disproportionate to the needs of the case.**

As the Court has already stated, Rule 30(b)(6) requires Meta, as the party seeking the deposition to "take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute[.]" Dkt. 1646 at 23 (citation omitted). Despite this Order and repeated requests from the COPPA-only AGs to do so, Meta has failed to provide topics relevant or proportional to the COPPA claim.

Meta misrepresents the scope of the challenged topics as seeking only "basic facts" about the State AGs' theories. This is false. For example, in Topic 2 Meta would require the COPPA-only AGs to testify about any and all social media use by state employees going back to 2012(ostensibly to establish <u>the undisputed point</u> that not all Meta content is child-directed). Washington State alone employs over 70,000 people. It is a practical impossibility to prepare a witness to testify about every use of social media by thousands of state employees, going back 12 years, and vastly disproportional to the needs of the case. As discussed, this testimony can have no impact on the disposition of the COPAA claims. Moreover, Meta obviously already has unfettered access to content posted on its platforms, including anything posted by any State employee on behalf of the State.

In addition, Meta's refusal to narrow the topics to the state agencies Meta previously had to identify for discovery purposes further disproportionately increases the burden. Consistent with this Court's prior rulings, the State AGs asked Meta to confirm that it seeks testimony only on behalf of the State agencies from which it took document discovery. Meta has refused to so confirm, apparently expecting the COPPA-only AGs to prepare witnesses to testify on behalf of every agency and every employee. Again, this is a practical impossibility, and absurdly out-of-proportion to the needs of the case regarding the COPPA-only AGs. The State AGs submit with this briefing several declarations attesting to the burden that would be required. (Exhibits B-F.)

For example, Topic 10 seeking testimony about "[a]ny public or non-public meetings" related to any social media platform and use by those under 13 over the last decade, thus implicating virtually any conversation between any state employee and another person on those topics. The State cannot be expected to identify every such conversation that may have occurred since 2012 and prepare testimony, nor again would such testimony be relevant to any COPPA claim or defense. Notwithstanding <u>two</u> meet and confers, however, Meta refused to even consider limiting the scope. Topics 1-6 and impose immense burdens to review vast studies, policies, financial statements, files, and the wide-ranging conduct of numerous agencies. Topic 6 alone seeks testimony about six different types of actions by "the State" "related to" or "directed at" social media use by those under 13. Topics 13 and 25 similarly concern wide-ranging financial information about state dealings with many entities – in a format not even kept by many states. And topic 31 is so overbroad and vague written that it would require guesswork by the COPPA-only AGs as to who and what information is within its scope. And again, none of the information sought, under any of these topics, has any bearing on the COPPA claims. Contrary to Meta's arguments, the Court previously only made a narrow ruling regarding Topic 31 that it does not improperly seek the State AG's Office's views. Finally, Meta's suggestion that the States' use, understanding of, or financial entanglements with Meta or other social media companies could impact the equitable relief we seek is patently false and has no basis in law.

Meta fails to justify the disproportionality of the burden imposed by its vague and overbroad topics. The challenged topics should be stricken.

5

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 17, 2025

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen