# EXHIBIT F

1
2
3
4
5
6
7
8         IN THE UNITED STATES DISTRICT COURT
9      FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| People of the State of California, et al. | MDL No.    3047 |
| v. | Case Nos.   4:23-cv-05448-YGR |
| Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; Meta Platforms Technologies, LLC, | **DECLARATION OF CLAIRE MCNAMARA IN SUPPORT OF THE COPPA-ONLY ATTORNEYS GENERALS' JOINT LETTER BRIEF REGARDING UNDUE BURDEN FROM META'S 30(B)(6) TOPICS** |
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION THIS DOCUMENT RELATES TO: | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| 4:23-cv-05448 | Magistrate Judge: Hon. Peter H. Kang |

I, Claire McNamara, hereby declare and state as follows:

1.     I am an Assistant Attorney General in the Consumer Protection Division of the Washington State Attorney General's Office. I am one of the attorneys of record for Plaintiff State of Washington in this matter. I am an active member in good standing with the Washington State bar and eligible to practice law in the State of Washington. The information included in this Declaration is based on my personal knowledge of the files and records in this case.

2.     Meta served our office with its Amended Deposition Notice Pursuant to Federal Rule of Civil Procedure 30(b)(6) on January 21, 2025.

1

2
3.     On January 28, 2025, our office sent a letter to Meta's counsel regarding the

3
Notice topics and our objections thereto. Within this letter was the request for how much time

4
Meta anticipated devoting to each topic, so that we could appropriately prepare, coordinate and

5
sequence testimony among what might have to be multiple witness designees. To date, we have

6
never received a response to that letter.

7
4.     I participated in a meet-and-confer with Meta's counsel, Michael Kennedy on

8
January 31, 2025. During that meeting, we told Mr. Kennedy that though our office had thus far

9
facilitated the production of over 520,000 documents to Meta from a limited-group of agreed-

10
upon Washington State agencies, the remaining potential document sets contained records from

11
many health-related agencies, including the State Healthcare Authority. Releasing those records

12
to defendants in accordance with the timelines and directions of the Court's Orders posed serious

13
risks of disclosing private, protected information of tens of thousands of Washington residents,

14
without their consent as required by law. We recognized the Court determined this material may

15
be relevant to Defendants' alternative causation consumer protection act theories. Accordingly,

16
Washington agreed to withdraw those state law claims and proceed only with a Children's Online

17
Privacy Protection Act (COPPA) claim. Mr. Kennedy agreed that all Washington State agency

18
productions could cease, and no further discovery would be made upon Washington State

19
agencies if Washington agreed to dismiss its state law claims with prejudice. Our office has since

20
communicated our agreement to that dismissal of our state law claims with prejudice.

21
5.     During that January 31, 2025, meet and confer, Mr. Kennedy told us that Meta's

22
30(b)(6) deposition topics could likewise be "narrowed significantly" since Washington would be

23
proceeding only with a COPPA claim. I sent Mr. Kennedy an email summarizing this exchange

24
on the same day, including that averment from Mr. Kennedy. I included Meta's other counsel

25
Chris Yeung and Nicholas Xenakis on the email. None of Meta's counsel ever responded to that

26
correspondence to dispute the accuracy of the summation of our meet and confer.

27
6.     On February 6, 2025, I participated in another meet and confer with Meta's

28
counsel, Mr. Yeung, along with other COPPA-Only State Assistant Attorneys General. By then

1

2    Meta had communicated that it believed Topics 1-6, 10, 13, 25-26, 28, and 31-34 were

3    appropriate for the COPPA-Only State AGs' offices to respond to. During that meet and confer,

4    we expressed concerns about the burden and scope of terms like "State" within the Amended

5    30(b)(6) Notice. We requested authority supporting the relevance of these remaining topics to a

6    COPPA claim or any existing defense to the COPPA claim. The COPPA-Only State AGs issued

7    Supplemental Responses and Objections to Counsel for Meta reflecting our objections on

8    relevance and burden grounds on February 7, 2025, as well as a summary of our meet and confer.

9        7.    By February 21, 2025, counsel for Meta had not responded to that summary, nor

10   the COPPA-Only State AGs' Supplemental Responses and Objections. Accordingly, my

11   colleague Assistant Attorney General Alexandra Kory followed up that day, again via email. She

12   wrote again requesting legal authority supporting the relevancy of Meta's requests to the COPPA-

13   claim and expressing willingness to discuss the scope and logistics of responding to them should

14   Meta be able to explain the relevance of these topics to COPPA.

15       8.    Counsel for Meta responded that day, on February 21, 2025, but provided no legal

16   authority beyond that supporting the general proposition that third-party content may be evidence

17   of whether a website is child-directed. Meta's counsel offered no clarification or concrete

18   suggestions for narrowing of the terms in the 30(b)(6) notices that we had discussed during the

19   prior meet and confer. Meta's counsel instead requested we send them legal authority regarding

20   what evidence is relevant to a COPPA claim, which AAG Kory did on March 3, 2025 via email.

21   Meta provided no additional legal authority to support the relevancy of their requests in response.

22       9.    I participated in our final meet-and-confer with Meta's counsel Chris Yeung and

23   Steve Petkis on March 4, 2025. During that meeting and in correspondence following it, Meta's

24   counsel again provided no legal authority supporting the relevance of their requests. Instead,

25   counsel for Meta made vague offers of being willing to later "discuss" how to address the States'

26   burden concerns (ignoring that that was the purpose of the meet and confer, and without any

27   concrete proposals of how Meta would do so) but only if the States first agreed to provide

28   testimony on the Topics. In response, on March 7, 2025, AAG Kory requested a revised

Amended 30(b)(6) topics list for the COPPA-Only State AAGs to confirm what if any topics Meta was proposing to revise or narrow. Meta's counsel Mr. Petkis responded that Meta was only offering the COPPA-Only State AAGs the same limitation proposals made to all Plaintiff State AAGs on March 7, 2025, and would not be providing an Amended Notice or revised topics list specific to the COPPA-Only State AAGs.

10.    Even with Meta's limited proposed revisions, Meta's 30(b)(6) requests still include a 'Relevant Period' of inquiry from January 1, 2012 to April 1, 2024.

11.    The Notice seeks information for that twelve-year period from Washington State. Meta designated "Washington State" as "including, but not limited to the executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, agents, employees, boards, instrumentalities, vendors (to the extent the State has possession, custody, or control over them), administrators, and other persons or entities acting on behalf of the State, including, but not limited to, the agencies and other entities whose information has been deemed within the State's control for the purposes of discovery in Magistrate Judge Kang's September 6, 2024 order (ECF No. 1117) and any other related entities." Meta has not narrowed this definition of 'State' since issuing the 30(b)(6) Notice.

12.    The most recent workforce headcount reflects that Washington State has 76,966 employees across 100 agencies. Washington State Office of Financial Management, Number of Employees and Headcount Trends, Dec. 31, 2024, *available at* https://ofm.wa.gov/state-human-resources/workforce-data/workforce/number-employees-and-headcount-trends. I last visited this website on March 17, 2025.

13.    Meta's definition of 'State' encompasses all these 100 Washington agencies, as well as wide-ranging entities such the legislative branch and vendors Washington State has contracted with. Because the Notice also states the definition is "including, but not limited to" the listed entities and Meta has refused to provide any clarification during meet and confers or in correspondence, our office is left to guess what other Washington State entities Meta might wish to inquire about in the 30(b)(6) deposition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14.     The "State" term appears in Topics 1-6, 10, 13, 25-26, 28, and 31-34 which Meta asserts are still appropriate for the COPPA-Only State AGs' offices to respond to as of the time of this filing. Accordingly, to attempt to properly prepare a consenting representative or multiple representative witnesses, our office would somehow have to survey all these public entities and vendors regarding each of these topics for the designated twelve-year period.

15.     Accomplishing this level of witness preparation will require our office to contact all State entities and State vendors and it is likely thousands of private vendors and public employees will then have to cease their own work (taxpayer-funded work in the case of public employees) to review these topics and communicate any comments or questions to our office. These outside vendors and public employees will then have to research each of these topics and the existence of any information relevant thereto, including by communicating within and amongst their offices, entities, and agencies. These individuals will then have to communicate with our office any such information they discover, likely on a rolling ongoing basis.

16.     As an example, Meta's Topic 1 seeks any operative policies, procedures, and practices applicable to the State (including without limitation to employees of the State and its agencies) regarding the use of any Social Media Platforms. Appropriately preparing for this topic would thus require, at minimum, attempting to identify any such policy, procedure, or practice within each of Washington State's 100 agencies, the legislature, and any other Washington public entities for the last twelve years. To do so in a fulsome way would further require interviewing staff and identifying the persons involved at each of these agencies or entities who drafted or implemented such polices so that a 30(b)(6) representative would be prepared to answer any questions about them. Meta's counsel Mr. Petkis has also communicated that for this topic Meta expects that the 30(b)(6) witness or witnesses would need to be prepared to speak to "any informal practices that may have existed that are not reflected in produced documents." This would further expand the inquiry and necessitate the staff interviews to ensure the 30(b)(6) witness could speak to whether any such informal practices exist and if so, how they operate.

17.     Meta's other broad topics, such as Topic 3's request for any State programs,

initiatives, efforts or actions involving the State to address the use of Social Media Platforms—whether limited to under 18 users as Meta has now proposed or not—will likewise require a very broad search by numerous public entities and private vendors as it encompasses many different types of potential actions.

18. Given twelve-year range in Meta's Notice, and the sheer number of Washington State agencies, employees therein, vendors, and other yet to be determined public entities or officials which could be implicated by Meta's 30(b)(6) topics, attempting to designate and properly prepare one witness or several to appropriately respond will be extremely burdensome, time-consuming, and challenging, if not impossible.

19. Further, Meta's Notice requests production of any documents or things that in any way refer to or concern any of the topics noticed. In addition to the burdens described above, identifying, collecting, and producing the scope of documents covered by the topics would exacerbate the already massive burden on the State of Washington the topics would create. Any new requests for documents in the 30(b)(6) notice are also untimely.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 17, 2025, in Seattle, Washington.


Claire McNamara