UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **JOINT LETTER BRIEF ON META'S RESPONSE TO STATE ATTORNEYS GENERALS' REQUEST FOR PRODUCTION NUMBER 102**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>**PUBLIC REDACTED** |

Dear Judge Kang:

The State AGs and Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") respectfully submit this letter brief regarding disputes over Meta's production of structured data requested in the State AGs' Request for Production No. 102. The full text of RFP 102 is attached as Exhibit A and the full text of Meta's objections and responses to RFP 102 is attached as Exhibit B.[1]

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

---

[1] In the joint letter brief, the parties cite certain materials produced in discovery by Bates number. As required by the Court's Discovery Standing Order's general prohibition on attachments to letter briefs, Order § H.3, the cited documents are not attached. The parties are prepared to file the cited materials or otherwise provide them to the Court, at the Court's request.

Dated:  March 18, 2025                    Respectfully submitted,


**ROB BONTA**
Attorney General
State of California

  /s/ Joshua Olszewski-Jubelirer
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Joshua.OlszewskiJubelirer@doj.ca.gov

*Attorneys for Plaintiff the People of the State of*
*California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

  /s/ Krista Batchelder
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor

2

Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),

3

*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General
and the New Jersey Division of Consumer Affairs
Matthew J. Platkin, Attorney General for the State of
New Jersey, and Cari Fais, Director of the New
Jersey Division of Consumer Affairs*


**COVINGTON & BURLING LLP**

  */s/ Ashley Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com
Isaac D. Chaput  (State Bar. No. 326923)
COVINGTON & BURLING LLP
415 Mission Street,
San Francisco, CA 94105
Telephone: + 1 (415) 591-7020
Facsimile: +1 (415) 591-6091
Email:  ichaput@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**State AGs' Position:** Court assistance is needed to address Meta's continued refusal to search for and produce critical data directly related to the State AGs' Children's Online Privacy Protection Act ("COPPA") claims. *See* AGs' RFP 102 (served June 7, 2024), attached as Exhibit A. Despite months of correspondence and conferrals, Meta still will not produce two discrete categories of information, readily available to Meta, that directly support the State AGs' COPPA claims. Among other things, this data is specifically probative of Meta's actual knowledge of children under 13 using its platforms, the magnitude of such child use, the "child directed" nature of Meta's platforms, and Meta's failure to delete child accounts as required by COPPA. *See* 15 U.S.C. § 6502(a)(1); 16 CFR §§ 312.2, 312.3. With the end of fact discovery less than three weeks away, the need for court intervention is manifest.

Data reflecting multiple accounts owned by child users, and whether Meta permitted those accounts to remain after determining that users were children – RFP 102(e). COPPA forbids Meta from allowing children under 13 on its platforms without parental consent – consent Meta admits it never seeks. The State AGs allege Meta violated COPPA by failing to delete accounts it knew were owned by children when it received reports about the child's *other* accounts and determined that those other accounts belonged to a child. *See* Multistate AG Complaint ¶¶ 677-684. Meta knows the same child may have multiple accounts on its platforms. Sometimes users themselves identify multiple accounts as their own (i.e., "hard linking"). ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ *E.g.*, META3047MDL-146-00072867; -146-00073117. If Meta identifies a child and suspends that child's account, Meta must also suspend that child's other accounts to comply with COPPA. ████████████████████ ████████████████████████████████████████ META3047MDL-053-00012717. ████████████████████████████████████ META3047MDL-034-00397296.

To identify each of Meta's COPPA violations in this area, the State AGs have requested Meta produce structured data in its possession generated by its account matching processes (hard-linking and soft-matching) reflecting each account associated with a user reported to be under 13 or determined by Meta to be likely under 13, and data reflecting whether Meta deleted each account. This data will show each time that Meta deleted only some of a child's accounts, thereby violating COPPA. Meta, however, has refused to produce data reflecting accounts it did not delete that were associated with children it identified, claiming that such account matching data is only retained for 50-90 days, and thus exists outside the "Relevant Time Period," in addition to asserting unspecified burden objections. Meta's failure to retain such data, nearly 17 months following the filing of the AGs' complaint alleging Meta's failure to delete children's matched accounts,[2] cannot justify its refusal to produce what it still possesses now showing its ongoing violations. Nor has Meta met

---

[2] Meta revealed its failure to retain the data for the first time less than a week ago, after months of conferrals, including the AGs' expressly noting in December 2024 that data on multiple accounts owned by children that was not used for enforcement would be responsive and probative. Following further factual development, the State AGs may seek appropriate relief.

its burden to substantiate its burden objection. *See Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); ECF 1646, at 10. Meta must promptly produce this highly probative data.

Structured Data identifying users as celebrating a birthday under age 13. Meta uses models to estimate user ages. These models rely on signals such as "people wishing you a happy birthday and the age written in those messages, for example, 'Happy 21st Bday!'. . .." https://about.fb.com/news/2021/07/age-verification/. ████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████████ META3047MDL-003-00022246.

The State AGs have requested Meta produce data from these compilations reflecting users who were under age 13. This data is obviously probative of Meta's knowledge about the existence and magnitude of users under the age of 13 on its platforms. Critically, Meta admits that it does not use this data to delete children's accounts, thereby violating COPPA. However, Meta has refused to produce this data, claiming that to do so would violate the Stored Communications Act, in addition to asserting unspecified burden objections. In an attempt to accommodate Meta's concerns and avoid the need for court involvement, the State AGs have proposed two compromises, both of which Meta has rejected. Meta could produce only the responsive rows from these tables (i.e., rows associated with users celebrating a birthday under age 13) while completely removing the contents of any of the messages. In the alternative, Meta could produce only the responsive rows that were drawn from public posts. The Court should order Meta to accept one of the compromises and produce the data promptly.

**Meta's Position:** Meta has made extensive efforts over four months to respond to Plaintiffs' ever-expanding demands for data purportedly related to State AG RFP 102. Ex. B. Meta has produced over 485 GB of data and will produce additional data, including (i) data regarding user reports of potential under 13 ("U13") accounts; (ii) data regarding potential U13 accounts placed in an age checkpoint; (iii) data regarding accounts Meta disabled due to being linked to a U13 account that Meta also disabled; and (iv) data regarding accounts that were disabled for suspected U13 use. Unsatisfied, the State AGs demand that Meta use data from outside the Relevant Time Period to create new data. Even if Meta were to undertake this burdensome task, the resulting bespoke datasets would be highly unreliable, irrelevant, and/or would violate the SCA. The burden associated with creating them is disproportionate in light of their limited value.

Additional "Linked Accounts" Data. This dispute is untimely. The parties held an H.2 conference in advance of the November 12, 2024 deadline to brief outstanding disputes and this issue was not raised. Plaintiffs' own follow-up email memorialized "Happy Birthday" posts as the sole open issue: "Meta will also investigate whether it can produce the "Happy Birthday" post data described in the RFP. Meta and the State AGs will continue to negotiate this RFP."

On the merits, Meta has already agreed to produce the historical data it has located regarding linked accounts: actions taken on accounts that were linked to accounts disabled as potentially U13. Plaintiffs now demand that Meta create data sets not maintained in the ordinary course, asking Meta to merge current linked account data (from the last 50 to 90 days) to the historic U13 data Meta is producing from the Relevant Time Period of 1/1/12 through 4/1/24. But data reflecting current account linking can shed no light on the relationship between accounts during the Relevant

Time Period. Plaintiffs' alternative proposal—that Meta produce additional U13 reporting and enforcement data from 2025 in order to match the time frame of the current linking data—is similarly deficient. Data from outside the Relevant Time Period is not relevant and cannot support speculation regarding events within the Relevant Time Period. In either case, these newly-created datasets will be rife with speculative assumptions.

These bespoke datasets would not be proportionate to the needs of the case, because the non-existent benefit is vastly outweighed by the significant burden of creating such data. Meta would need to create entirely new datasets by combining more than four different data sources through a complex set of queries. MJ Dec. ¶ 6. Specifically, Meta would need to filter 745 billion rows of data from (a) tables containing data on user reports (with an estimated size of 27 TB) and actioned accounts (246 TB), and combine with (b) tables containing a record of linked accounts for all users (with a combined volume of more than 17.6 TB and over 12 trillion rows). *Id.* ¶¶ 2–4; 6. Moreover, document requests cannot require a party "to produce what does not exist." *Williams v. Gyrus ACMI, LP*, 2016 WL 7013042, at *1 (N.D. Cal. Dec. 1, 2016).

<u>Happy Birthday Data</u>. Plaintiffs seek to demonstrate that Meta purportedly had knowledge of U13 users from posts wishing "Happy Birthday" to users. Meta disputes the merit of this argument but was unable to find responsive data sources during the Relevant Time Period. Instead, Meta identified tables containing all posts and comments from the last 90 days with a two-digit number. But these tables include any content with a two digit number, including irrelevant references to dates, sports scores, and myriad others. Undeterred, Plaintiffs requested that Meta search these tables for content containing the numbers 10, 11, or 12 within five words of "Happy" and "Birthday." This request should be rejected.

First, the data is irrelevant. The only data available is from the past 90 days—outside the Relevant Time Period. That alone should end the inquiry. Such data cannot reliably be extrapolated to infer what data may have existed during the Relevant Time Period, as Plaintiffs intend. Moreover, any results from the keyword search would be highly unreliable, containing countless false hits. The numbers 10, 11, or 12 may be used for many reasons other than identifying a user's age (e.g., "Please wish [user] a happy birthday on March 10," or a post regarding the user's child's birthday). Plaintiffs wish to use this manufactured data to artificially inflate the number of U13 accounts on Meta's platforms. Finally, the data is irrelevant and non-responsive to RFP 102 because keyword searches designed to artificially pluck, from a massive table, purported inferences that a user is U13 after the Relevant Time Period cannot demonstrate Meta's contemporaneous actual knowledge of specific U13 users.

Second, the Stored Communications Act ("SCA") bars providers of electronic communication services from disclosing the contents of their users' communications, such as the posts at issue. 18 U.S.C. § 2702(a)(1); *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1114 (N.D. Cal. 2018). There is no express or implied exception in the SCA for civil discovery. *See* 18 U.S.C. § 2702(b); *O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 89 (Cal. Ct. App. 2006). Nor do any of the SCA exceptions apply. *See* 18 U.S.C. § 2702(b). Because Facebook and Instagram posts are "content" under the SCA, and no exception applies, Meta cannot disclose the contents of the posts to Plaintiffs. *See* 18 U.S.C. § 2510(8) ("content" is "information concerning the substance, purport or meaning of that communication"); *Facebook, Inc. v. Pepe*, 241 A.3d 248, 252 (D.C. 2020)

(Instagram stories are content). Plaintiffs' proposal to omit the text of each post does not avoid the SCA, because the search hits would necessarily disclose the contents of communications, *i.e.*, that they contained the words "happy," "birthday," and a two-digit number. *See Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, 2013 WL 256771, at *2 (N.D. Cal. Jan. 23, 2013) (request to produce metadata associated with emails identified via a search of the emails' content "would necessarily reveal . . . information concerning the 'substance, purport, or meaning' of the communications"). Plaintiffs' alternative proposal that Meta only produce public comments/posts is not workable, because these tables do not indicate which comments are public.

Third, querying and producing this data would be highly burdensome and thus not proportional to the needs of the case in light of the irrelevance of the data. These sources contain more than 1,000,000 GB of data. Meta engineers would need to write new, custom code to run this text search over the 3 trillion rows of data. MJ Dec. ¶ 8. This would require both substantial human engineering effort and data processing power that would be diverted from Meta's work to respond to additional requests in this litigation. *Id.*

**State AGs' Response:** Meta misrepresents the parties' negotiations. The parties agreed to leave open certain disputes for further negotiation, including specifically RFP 102. Meta even cites the memorializing email. Meta's distortion is puzzling. Meta also misconstrues the Court's "default" "Relevant Time Period" order for Meta's document collections. It did not find that structured data or events after April 2024 are irrelevant. ECF 969, at 4. Meta, at its own suggestion, has produced other "90-day" data after April 2024 in response to the AGs' RFPs. It should do so here.

Contrary to Meta's protestations, neither request requires Meta to "create new data." True, Meta has to "query an existing dynamic database for relevant information." *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013). No matter: "Courts regularly require parties to produce reports from dynamic databases, holding that 'the technical burden ... of creating a new dataset for the instant litigation does not excuse production.'" *Id.* (citation omitted). Meta is simply refusing to run the queries to collect the responsive data.

Meta also misrepresents the volume of data involved in the account-match request. Only a tiny fraction of the "485 GB" of data Meta has produced so far is responsive to RFP 102. Almost all was unrelated to children and produced in response to PI/SD RFP 124, *see* MJ Dec. ¶ 4. Meta fails to quantify the burden in producing the responsive data for the period it exists—just 50-90 days; the "full scope of information on user reports" for unrelated violations, MJ Dec. ¶ 2, is unnecessary.

On "Happy Birthday" data, Meta fails to substantiate its undue burden claims. ███████████
████████████████ *See* META3047MDL-003-00022246 (describing ████████
████████). The AGs are simply asking Meta to do the opposite. That a tech giant "would need to write new, custom code" to run a query cannot justify Meta's refusal to produce data which is probative of Meta's actual knowledge of child users and provides "empirical evidence of . . . audience composition," 16 CFR § 312.2 ("directed to children").

Meta's SCA arguments fail. Meta's compilations of Happy Birthday posts are not "in electronic storage" and thus not covered by the rules for an electronic communication service ("ECS"). 18 U.S.C. §§ 2702(a)(1); 2510(17). "[O]nly copies . . . held by the ECS pending initial delivery to the

addressee or held thereafter for backup purposes are protected." *Juror No. One v. Superior Ct.*, 206 Cal. App. 4th 854, 861 (2012); *accord Theofel v. Farey-Jones*, 359 F.3d 1066, 1075–76 (9th Cir. 2004) ("We see many instances where an ISP could hold messages not in electronic storage. . ..").  These copies are neither; they are stored for only 90 days ███████████ ███████████████  And Meta's interpretation of "contents" reaches too far. If disclosing that the table contains posts with "happy," "birthday," and a number violates the SCA, Meta has done so here. Moreover, Meta routinely publishes information about the contents of users' messages in its Community Standards Enforcement Reports, including the numbers of posts that contain hate speech and nudity. *See* https://transparency.meta.com/reports/community-standards-enforcement/hate-speech/facebook/. Meta cannot reveal information about users' posts to create a favorable narrative but conceal that which indicates children on its platforms. In any event, Meta does not dispute that public posts pose no SCA issue. 18 U.S.C. §§ 2701(c)(2), 2702(b)(3). Meta implies it cannot identify which are private; if true, it cannot meet its burden to prevent their production. ECF 1646 at 10 (resisting party "has the burden to show that the discovery should not be allowed"). But in any event, it must know which recent posts are public to display them to users. Meta may simply determine which in these tables are public, and produce the responsive ones.

**Meta's Response:** Plaintiffs' brief ignores the core flaw in their demands: a bespoke dataset from 2025 has no relevance to the Relevant Time Period ("RTP"), ending in 2024. Plaintiffs' demand that Meta run burdensome queries to create data covering the last 50-90 days just fuels their speculative extrapolations about events (and Meta's alleged knowledge) during the RTP.

Plaintiffs falsely suggest that Meta failed to preserve linked account data: *Meta preserved and is producing historical linked accounts data as it relates to U13 reports and enforcement*, per RFP 102(e). What Plaintiffs claim should have been preserved are large, dynamic tables containing current, generic linking data about all accounts—not data on U13 enforcement. Meta had no reason to expect Plaintiffs' demand to create new datasets "about" historic U13 accounts using these current tables (which would be speculative), based on an RFP served after the data was already largely unavailable for the RTP. Plaintiffs' demand for linked account data incorrectly presumes that linked accounts belong to the same individual (but, e.g., parent and youth accounts may be linked) and thus reflect Meta's failure to disable known U13 accounts. Plaintiffs are also incorrect about soft-matched accounts, for which any assumption about user identity is even more tenuous.

███████████████████████████████████████████████████ but the tables sought by Plaintiffs in this motion are not the tables used for this purpose. Instead, Plaintiffs demand that Meta use a keyword search to create a list of posts for an irrelevant, inaccurate dataset (see above) that did not exist in the ordinary course and would not demonstrate Meta's actual knowledge of specific U13 users. Plaintiffs do not dispute that the SCA bars production of users' posts. But neither of their "compromises" fixes the problem. A keyword search still reveals by inference a portion of the text in violation of the SCA. *See Optiver*, 2013 WL 256771, at *2. The alternative "compromise"—limiting the production to public posts—also fails. The relevant tables do not indicate which posts are public, and determining this from other sources would be extremely difficult, if even possible: Meta would need to combine the two-digit tables with additional data tracking the history of privacy settings for every piece of content and the accounts that own the content. And neither "compromise" would render the resulting data relevant.

## **ATTESTATION**

I, Ashley Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated: March 18, 2025

By: /s/ *Ashley Simonsen*

Ashley Simonsen