# Exhibit A
# (Redacted)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br>**NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF DEFENDANTS YOUTUBE, LLC AND GOOGLE LLC PURSUANT TO FED. R. CIV. P. RULE 30(b)(6)** |

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
UNLIMITED JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 3.550)<br><br>**SOCIAL MEDIA CASES**<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Judicial Council Coordination Proceeding No. 5255<br><br>Judge: Carolyn B. Kuhl<br>Dept. 12 |

| | |
|---|---|
| ISSUING PARTY: | Personal Injury and Local Government Entity Plaintiffs |
| TO: | Defendants YouTube, LLC and Google LLC (collectively referred to as "Google") c/o: |

Christopher Chiou
cchiou@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013

Lauren Gallo White
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105

Brian M. Willen
bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022

*Attorneys for Defendants Google LLC and YouTube, LLC*

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6) and the Deposition Protocol in the above-referenced matter (ECF No. 742), the Personal Injury and Local Government Entity Plaintiffs, by and through the undersigned counsel, will take the videotaped deposition of:

| NAME: | DATE AND TIME: | LOCATION |
|---|---|---|
| The Person(s) most qualified to testify to the Topics on Schedule A | | Lieff Cabraser Heimann & Bernstein 275 Battery Street, Suite 2900 San Francisco, CA 94111; or such other time or location as is agreed upon by the parties including Zoom or some other agreed upon video-teleconference platform |

**PLEASE TAKE NOTICE** that in addition to the attorneys below, the primary points of contact for this deposition are:

| NAME(S) | ADDRESSES | PHONE NUMBER | EMAIL |
|---|---|---|---|
| Ellyn Hurd | Simmons Hanly Conroy<br>112 Madison Avenue,<br>7th floor<br>New York, NY 10016 | (212) 257-8482 | plaintiffmdlandjccpgoogleteam@simmonsfirm.com<br><br>EHurd@simmonsfirm.com |

**PLEASE TAKE FURTHER NOTICE** that the deposition will be videotaped.

**NOTICE IS FURTHER GIVEN** that pursuant to Fed. R. Civ. P. 30(b)(6) Defendants shall designate and produce a representative or representatives, as may be required, to testify on behalf of Google, concerning the topics identified in *Schedule A* attached hereto, and are directed to produce the documents identified on *Schedule B*. The definitions on *Schedule C* apply to both the topics and document requests.

**NOTICE IS FURTHER GIVEN** that the deposition shall be recorded by stenographic and audiovisual means, as well as a webcast to a remote location provided by Golkow Litigation Services (https://www.golkow.com/) and taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed. The remote deposition will be coordinated by Golkow Litigation Services, with an address of 1650 Market St, Suite 5150, Philadelphia, PA 19103. A link and any necessary credentials will be provided in advance of the deposition.

**NOTICE IS FURTHER GIVEN** that if the witness intends to respond to questions in a language other than English, immediately (but no later than 15 days before the deposition) notice should be given to the undersigned so that the parties may select an interpreter consistent with the Deposition Protocol. (ECF No. 742, pp. 8-9).

# SCHEDULE A
# DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), Defendants Google LLC and YouTube LLC (together, "Defendants") shall designate and produce for deposition one or more of their officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the following subject matters:[1]

**I. ACCOUNT CREATION, ACCESS, EXPERIENCE, AND DELETION.** Defendants' policies and procedures regarding Account creation, access and deletion, and how and why that changed over time, including but not limited to:

1. What information is expressly requested by Defendants from users in order for a user to create an Account, access an Account, and delete an Account.

2. What information is collected by Defendants about users when a user creates an Account, accesses an Account, and deletes an Account.

3. What information is provided by Defendants to users during Account creation, Account access, and Account deletion, including any information that Defendants contend conveys consent to and notice of the conduct alleged in the Master Complaint.

4. What action(s) is taken when a user is identified to have violated any Account creation, access, or deletion policy.

5. How Defendants detect and address instances where users have or may have violated any Account creation, access, or deletion policy.

6. Defendants' knowledge and understanding about how children circumvent or bypass Account creation, access, or deletion policies, including but not limited to knowledge about:

    a. The reliability of a declared age in the Account creation and access process;

    b. The ability of Children who initially enter a birthdate indicating they are under 13 to restart the Account creation process and bypass the age gate by re-entering a birthdate that makes them 13 or older;

    c. The ability of Children to bypass and circumvent age verification by using login credentials from third-party services like Google;

    d. The ability of Children to use the platform without the need to create an Account including browsing as a guest or without logging in; and,

    e. Any other way that Children have evaded age-related Account creation and access policies.

7. What information is provided by Defendants to users and/or Parents when a user reaches the declared age of 13.

---

[1] Key terms are defined in Schedule C.

8. Changes in user experience between Accounts, including access to content, availability of Named Features.

9. The ability of Children to bypass and circumvent parental controls and/or default user options in YouTube Kids or of SupeX accounts.

II. **NAMED FEATURES.** For each Named Feature (*see* Schedule C), the purpose, development, implementation, and operation of that Named Feature, including:

   1. **OPERATION**

      a. <u>Operation</u>: How each Named Feature functions both from the user's perspective and internally at Google/YouTube, including any modifications to the operation, whether implemented or merely considered.

      b. <u>Technological Tools</u>: Any technologies or methodologies (*e.g.,* algorithms, AI, machine learning) employed with respect to each Named Feature; if not employed, the reasons why they were not.

      c. <u>Third-Party Services</u>: The use or non-use of third-party services for each Named Feature.

      d. <u>Alternative Designs</u>: Consideration of any alternative designs, whether implemented or merely considered.

      e. <u>Timeline</u>: The timeline and details of the Named Feature and modifications made, including its implementation and the reason for each modification.

   2. **POLICIES AND PROCEDURES**

      a. <u>Policies and Procedures</u>: Policies and procedures related to each Named Feature, including both external facing policies (e.g. policies provided to the users, third parties, etc.) and internal policies.

      b. <u>Tracking:</u> Systems used for tracking and analyzing launches or alternative designs related to each Named Feature, including but not limited to:

         i. The creation, maintenance, and review of "████████" in ████████████, including the fields used by the YouTube, YouTube Youth, Identity, Kids and Families, and Account Experiences teams;

         ii. The creation, maintenance, accessibility, and review of "████" in ████████ related to feature requests by Defendants' employees or customers.

      c. <u>Policy Changes</u>: The timeline and details of changes to policies and procedures related to each Named Feature, and what prompted any such changes.

      d. <u>Impact of Updates</u>: The impact, if any, of any recent modifications on the accuracy and effectiveness of each Named Feature.

3. **COMPLIANCE WITH LEGAL REQUIREMENTS**

   a. <u>COPPA Compliance</u>: Whether the Named Feature implicates the Children's Online Privacy Protection Act (COPPA) in the U.S. and how Defendants ensure compliance with COPPA.

   b. <u>GDPR Considerations</u>: Whether the Named Feature implicates the General Data Protection Regulation (GDPR) in the E.U. and how Defendants handle compliance with the GDPR.

   c. <u>AADC Compliance</u>: Whether the Named Feature implicates the Age-Appropriate Design Code Act in California (AADC) or the AADC in the U.K. and how Defendants ensure compliance with the AADC.

   d. <u>Data Protection Commission:</u> Whether the Named Feature implicates the Data Protection Commission Fundamentals for a Child-Oriented Approach to Data Processing Protection (Fundamentals) in Ireland and how Defendants handle compliance with the Fundamentals.

   e. <u>Other Laws Regarding Minors and Data Collection</u>: Whether the Named Feature implicates any other law or regulation in the U.S., the E.U., and Australia, and how Defendants handle compliance with those laws.

4. **VARIATIONS**

   a. <u>Geographic Variations</u>: Variations between how the Named Feature operates within the U.S. and outside of the United States (e.g. E.U. and Australia), whether that changed over time, and the reasons for those differences.

   b. <u>Platform vs. App Variations</u>: Variations between how the Named Feature operates on the mobile app and the web version, whether that changed over time, and the reasons for any such differences.

5. **EFFECTIVENESS / LACK OF EFFECTIVENESS**

   a. <u>Assessing / Measuring / Analyzing Effectiveness</u>: The details of how Defendants assess/measure/analyze the effectiveness of the Named Feature, and any changes or adjustments made as a result, and when and why each change was implemented. This includes:

   i. A/B Testing;

   ii. User Experience Studies, Surveys, and Research;

   iii. Expert analysis or consultation;

   iv. Surveys and discussions with Key Opinion Formers;

   v. Third-Party Studies and Research regarding the impact of the Named Feature on users.

 b. <u>External Audits</u>: Any external audit and analysis of the Named Feature, and if so, the details of same, including any findings.

 c. <u>Usage Metrics/Data</u>: Usage metrics and data regarding how often the Named Feature is used by users, and who is using the Named Feature (e.g. broken down by age, gender, geographic location).

**6. PARTNERSHIPS AND COLLABORATION**

 a. <u>Industry Collaboration</u>: Any collaborations or communications by Defendants with other tech companies or industry groups to improve or change the Named Feature, including industry standards, details of those collaborations or communications, and any discussions of the same.

 b. <u>Government and NGO Engagement</u>: Any engagement by Defendants with governments, NGOs, or child safety organizations regarding the Named Feature, details of those engagements, and any discussions of the same.

**7. FUTURE PLANS**

 a. <u>Planned Innovations</u>: Any innovations or updates that Defendants are assessing, considering, or planning to implement with respect to the Named Feature and the reasons for those innovations or updates.

 b. <u>Long-Term Strategy</u>: How the Named Feature fits into Defendants' long-term strategy for user safety and platform integrity.

**8. USER COMPLAINTS**

 a. <u>Reported Incidents</u>: Complaints or concerns that users raised regarding the Named Features, either individually or in combination (the YouTube Platform), including any adverse impact on users' mental health and wellbeing, and any discussions of the same.

 b. <u>Response to Incidents</u>: Any response by Defendants to issues reported by users and any discussions of the same, including any thresholds for YouTube's consideration of complaints received and/or escalations thereof.

 c. <u>Tracking</u>: Systems used for tracking and analyzing user complaints and responses thereto, including but not limited to:

   i. The creation, maintenance, accessibility, and review of "Tickets" in ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ or any preceding customer relationship management tools ("CRM"), including all available fields;

  ii. The creation, maintenance, accessibility, and review of ▮▮▮▮ related to user complaints or customer issues in ▮▮▮▮, including all available fields;

  iii. The creation, maintenance, accessibility, and review of user feedback and/or surveys in ▮▮▮▮ including all available fields;

  iv. The creation, maintenance, accessibility, and review of social media interactions in any social media CRM, including all available fields.

9. **USER IMPACT:** Defendants' knowledge regarding impact on users related to the Named Feature, including:

 a. Impact on users' screentime addiction (e.g., habitual use, problematic use, unintended use);

 b. Impact on users' mental health and wellbeing;

 c. Impact on users' performance in daily tasks and activities, including performance at school, work, or extracurricular activities.

10. **DATA COLLECTION**

 a. <u>Data Collection</u>: The specific data collected on Children from the Named Feature.

 b. <u>Data Storage</u>: Where the data is stored, how long the data stored, and who has access to it.

 c. <u>Data Policies and Security</u>: What policies are in place to regarding access and use of the data collected, and how Defendants ensure compliance with those policies.

 d. <u>Data Use</u>: How data collected about Children from the Named Feature is used by Defendants.

11. **MARKETING AND DISCLOSURES**

 a. <u>Marketing</u>: Defendants' development and implementation of marketing regarding the Named Feature, including strategy documents discussing the intended audience for the Named Feature and opportunities for growth.

 b. <u>Disclosures</u>: Defendants' disclosures regarding the Named Feature, included statements related to the risks and benefits of the Named Feature.

III. **DATA COLLECTION/PRIVACY GENERALLY**

1. To the extent not covered above (re Named Feature), the data collected on Children by Defendants when Children are using the YouTube Platform.

2. To the extent not covered above (re Named Feature), the where the data is stored, how long the data stored, and who has access to it.

3. To the extent not covered above (re Named Feature), what policies are in place to regarding access and use of the data collected, and how Defendants ensure compliance with those policies.

4. To the extent not covered above (re Named Feature), how data collected about Children from the Named Features is used by Defendants.

IV. **MARKETING AND DISCLOSURES**

1. To the extent not covered above (re Named Feature), Defendants' development and implementation of marketing regarding the YouTube Platform, including strategy documents discussing the intended audience, how that changed over time and why.

2. To the extent not covered above (re Named Feature), Defendants disclosures regarding the YouTube Platform, included statements related to the risks and benefits of using the YouTube Platform, any warnings made regarding the risks and benefits.

3. To the extent Defendants' claim that they obtained lawful consent as to any conduct that occurred on the YouTube Platform (either by users or by Defendants), the development and implementation of those consent documents, how it changed over time, and why.

V. **CORPORATE KNOWLEDGE.** Defendants' knowledge of impact and risk of harm on users as a result of the engagement with the YouTube Platform, including:

1. Impact on users' problematic, addictive, or compulsive use (e.g., overuse, habitual use, problematic use, heavy use, unintended use, or late night use).

2. Impact on users' mental health and wellbeing.

3. The factual allegations in Personal Injury Plaintiffs' Second Amended Master Complaint, including Paragraphs 836-965 (Dkt. 494).

4. The factual allegations in Local Government and School District Plaintiffs First Amended Master Complaint, including Paragraphs 836-965 (Dkt. 729).

5. Any threshold applied by YouTube in determining when a complaint is termed a "complaint" and the factors or considerations applied by YouTube in determining when escalation of a complaint will occur.

VI. **REVENUE.** How Defendants estimate, calculate, project, and account for gross and net revenue arising out of the YouTube Platform, by month, quarter and year, including:

1. Generation of revenues and profit attributable users on the YouTube Platform.

2. The costs attributed to operating the YouTube Platform.

3. The costs and profits attributed to any agreement with advertisers regarding the YouTube Platform, and in particular to any agreement related to advertising to minors.

4. The impact to revenues and profit of eliminating accounts suspected to be owned or operated by users (a) under the age of 13, and (b) between the ages of 13-17.

5. The impact to revenues and profit of restricting access to accounts suspected to be owned or operated by users (a) under the age of 13, and (b) between the ages of 13-17.

6. Consideration, monetary or otherwise, that Defendants receive for sharing or sending information about users of the YouTube Platform to a third-party, including children, whether directly or indirectly (e.g. through any ad services).

7. With regard to Defendants' advertising business, revenue and profits derived from data or information collected about users, Defendants' creation of user profiles, user verticals, user demographics, the individuals responsible for their creation and calibration, and how such profiles, verticals, demographics and the like are used by Defendants in advertising products, including but not limited to the YouTube Platform.

8. How Defendants calculate the value, monetary or otherwise, of monthly, weekly, and daily active users on the YouTube Platform, including but not limited to conclusions reached by any auditors, whether contracted with Defendants, or their parent company, Alphabet, Inc.

## VII. CORPORATE GOALS AND OBJECTIVES & KEY RESULTS (OKRs)

1. The policies and procedures in place regarding how Defendants determined and defined their core goals and mission statements, identification of those goals and mission statements, identification of the key decision makers, the strategy and purpose behind those goals and mission statements, the metrics for success, and whether those goals changed over time and why.

2. The policies and procedures in place regarding how Defendants determined their annual and quarterly OKRs, identification of those OKRs in the areas of child safety, digital wellbeing, and user growth, identification of the key decision makers, the strategy and purpose behind those OKRs, the metrics for success, and whether those OKRs changed over time and why.

3. Defendants' business plans and strategies regarding competition with other social media platforms, e.g. Instagram, TikTok, Snapchat.

4. Defendants' business plans and strategies regarding opportunities for growth in the youth market.

## VIII. USER AND USAGE METRICS

1. The amount of YouTube Time spent per Child or Youth User per Session, and any changes thereto during the Relevant Time Period, including:

   a. The average YouTube Time per Child or Youth User per Session;

   b. The average YouTube Time per Child or Youth User per Session for each decile of contribution to total daily YouTube Time;

   c. The average YouTube Time per Child or Youth User per Session per decile for the top 20% of Child or Youth Users.

2. The amount of YouTube Time spent per Child or Youth User per Visit, and any changes thereto during the Relevant Time period, including:

    a. The average YouTube Time per Child or Youth User per Visit;

    b. The average YouTube Time per Child or Youth User per Visit for each decile of contribution to total daily YouTube Time;

    c. The average YouTube Time per Child or Youth User per Visit per decile for the top 20% of Child or Youth User.

3. The number of Visits per Child or Youth User in a Session, and any changes thereto during the Relevant Time period, including:

    a. The average number of Visits per Child or Youth User per Session;

    b. The average Visits per Child or Youth User per Session per decile for the top 20% of Child or Youth Users;

    c. for the top 20% of Time per Child or Youth User per Visit for each decile of contribution to total daily YouTube Time.

4. Use time metrics for Child and Youth Users.

5. The tracking and accessibility of each of the above metrics.

# SCHEDULE B
## DOCUMENTS TO BE PRODUCED

Produce legible copies of the following in Your Possession, Custody, and Control:

1.     Separately for each matter identified in the Notice above, all Documents constituting, containing, or reflecting the matter.

2.     For each matter identified in the Notice above, please separately produce and identify all Documents reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

3.     Documents sufficient to show the production format for YouTube's anticipated productions from ███████████████████████████ and Social Media Customer Relationship Management tool.

4.     For each deponent, please produce a copy of his or her current resume or CV, as well as a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

5.     All notes taken by any witness in preparation for the deposition.

# SCHEDULE C
# DEFINITIONS

1. "You," "Your," "YouTube" or "Defendant" refers to, without limitation, Defendants Google, LLC and YouTube LLC, both collectively and individually, as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants. The terms "You" or "Your" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors or other representatives. The terms "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint ventures or other representatives.

2. "Age Verification" means utilizing one or more methods for checking the truth or accuracy of a User's claimed or reported age or birthdate, such as (a) by requiring users to upload a government-issued identification or other proof of age, answering knowledge-based authentication questions, using credit card information, biometric verification, social security number checks, parental consent, document uploads (i.e., birth certificates, passports), (b) using external third-party age-verification services; or (c) other means to cross-check user information, including through machine learning, algorithms, classifiers and signals. "Age Verification" includes but is not limited to age gating, age assurance, age and identify verification, age estimation, age inference, age modeling, age approximation, and age profiling.

3. "Child" or "Children" means individual(s) under the age of thirteen (13).

4. "Parent" means the lawful mother, father, or legal guardian of a person.

5. "Teen" or "Teens" means individuals between the ages of thirteen (13) and seventeen (17), inclusive.

6. "User" means any User or potential User of the YouTube Platform, including, but not limited to, the parents or guardians of any User.

7. "Document" or "Documents" shall mean Documents, electronically stored

information, "Communications," and tangible things, including without limitation all writings as used in this Request is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34 and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. Consistent with the above definition, the term Document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, emails, text-messages, or any communication on any collaborative system/hub like SLACK, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, deposition or other testimony transcripts, or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in, or generated on any electronic transfer or storage system, any preliminary versions, drafts, or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf. Documents include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM, and ROM, on or in any other vehicle for digital data storage and/or transmittal. Electronic data includes information on collaborative hubs, *i.e.*, SLACK or any other on-line cloud-based collaborative resource, including, but not limited to, BOX, Dropbox, and ShareFile. Documents also include the file, folder tabs, and/or containers and labels appended to or associated with any physical storage device associated with each original and/or copy. Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of You or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of You, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on Your behalf.

8. "Electronically Stored Information" or "ESI" shall mean the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, metadata, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI exists in an active file, deleted file, or file fragment. ESI include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. ESI also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

9. "Communication" and/or "correspondence" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between you and any other person or entity.

    a. "Person" or "Persons" means any natural person, corporation, partnership, proprietorship, association, governmental entity, agency, group, organization, or group of persons as well as any other corporate entity.

    b. "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including Documents attached to or used in the preparation of or concerning the preparation of the Documents.

10. "Communication" and/or "Correspondence" refer broadly to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, minutes, notes conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between you and any other person or entity.

11. "Identify" or "Identity" has broad meaning including but not limited to:

    a. with respect to natural Person(s): (i) full name, present or last known address; (ii) all title(s)/position(s) and dates held; (iii) place in the organizations' structure/hierarchy including departments, teams, working groups, divisions or other named units (hereinafter "Units"); (iv) the Identity of Person(s) to who the Person(s) report directly or indirectly; (v) the Identity of the Person(s) that report to the Person(s) directly or indirectly (hereinafter "Supervisory and Reporting Relationships"); (vi) a description of the functions, duties, activity and responsibilities ("hereinafter "Duties") of each Person and Unit; and (vii) the present or last known place of employment and the geographic location/address where the Person(s) worked while holding each title/position (hereinafter "Employment / Working history").

    b. with respect to organizational Person(s) and each Unit in an organization: (i) full name, present or last known address, (ii) place in the organizations' structure/hierarchy over time including but not limited to the Unit(s) and Person(s) that report directly or indirectly into the Unit and the Unit(s) and

|   |   |
|---|---|
| 1 | Person(s) that it reports directly or indirectly into and all changes to the Reporting Relationship over time; (iii) the Duties of each Unit and any changes over time; (iv) the purpose and function of each Unit and any changes over time; (v) each Units activity and any changes to that activity over time; and (vi) each Units personnel, managers, supervisors, and decision-makers, and any changes over time. |

12.  "Named Features" means any feature of the YouTube Platform identified in the Master Complaint, including:

    a.    age verification (Master Compl. ¶ 845(a))

    b.    parental controls (Master Compl. ¶ 845(b)–(c))

    c.    default protective limits (Master Compl. ¶ 845(e) and 845(h))

    d.    user options (Master Compl. at ¶ 845(f)–(h), ¶ 845(m))

    e.    endless scroll (Master Compl. at ¶ 845(i))

    f.    algorithmic recommendations (Master Compl. at ¶ 845(j))

    g.    image filters (Master Compl. at ¶ 845(k), ¶ 864(d))

    h.    notifications (Master Compl. at ¶ 845(l))

    i.    user-complaint protocols (Master Compl. at ¶ 845(p))

    j.    CSAM-reporting protocols (Master Compl. at ¶ 845(p))

    k.    geolocation (Master Compl. at ¶ 845(t))

    l.    friend recommendations (Master Compl. at ¶ 845(u))

    m.    short-form and ephemeral content (Master Compl. at ¶ 864(l))

    n.    intermittent variable rewards (Master Compl. at ¶ 727 *et seq.*)

13.  "Possession, custody, or control" shall mean and refer to any Documents in Your possession, custody, or control. A document is deemed to be in your "possession, custody or control" if is in your physical custody, or if it is in the physical custody of another person or entity and you: (a) own such document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so. Such Documents shall include, without limitation, Documents that are in the custody of your

1    attorney(s), employees, staff, representatives, and agents.

2          14.    "Policy," "Policies" or "Policy or Practice" include all formal and informal policies, guidelines, practices, procedures, and customs and means any standard policy, procedure, practice, protocol, plan, manual, system, or manner of conducting a specific task, whether formal or informal, that is or was adopted, implemented or used by You including the terms of any such "Policy," "Policies" or "Policy or Practice," the methods and means used for carrying out such "Policy," "Policies" or "Policy or Practice," the implementation of such "Policy," "Policies" or "Policy or Practice" and the identity of those "Persons" responsible for managing and/or implementing such "Policy," "Policies" or "Policy or Practice."

      15.    The "YouTube Platform" or "Platform" means any version of the YouTube Platform developed, tested, or made available for use, including versions for use on mobile devices or by accessing a URL on the internet, with or without logging into an account, and including all features or surfaces accessible to some or all users of the platform. For avoidance of doubt, "YouTube Platform" includes YouTube Kids and YouTube Shorts.

      16.    Reference to the singular in any of these requests shall also include a reference to the plural, and reference to the plural shall also include a reference to the singular.

      17.    The present tense of a verb includes its' past tense and *vice versa*.

      18.    "Or" and "and" will be used interchangeably and shall be construed conjunctively or disjunctively as necessary to make the requests inclusive rather than exclusive.

      19.    "Including" shall be construed to mean "without limitation."

      20.    "All" and "Any" mean each and every.

      21.    Unless otherwise indicated, the "relevant period" for the information sought is 2015 to the present.

      22.    "YouTube Time" means Active Time and Watch Time (i.e. time that a user is actively using YouTube).

      23.    "Sessions" means 24-hour periods of viewing.

      24.    "Visit" means a when a user access and watches videos or interacts with the site (+ non-zero YouTube Time).

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail on February 13, 2025 the following, Counsel for Defendants:

Christopher Chiou
cchiou@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013

Lauren Gallo White
lwhite@wsgr.com
Samantha A. Machock
smachock@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105

Brian M. Willen
bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022

*Attorneys for Defendants Google*

/s/ Ellyn Hurd
Ellyn Hurd