# Exhibit D
# (Redacted)

# SIMMONS HANLY CONROY

ELLYN HURD
EHURD@SIMMONSFIRM.COM
(212) 257-8482

# SOCIAL MEDIA VICTIMS LAW CENTER

GLENN S. DRAPER
GLENN@SOCIALMEDIAVICTIMS.ORG
(800) 687-1855

February 28, 2025

**VIA E-MAIL**

Christopher Chiou, cchiou@wsgr.com
Andrew T. Kramer, akramer@wsgr.com
Samantha Machock, smachock@wsgr.com
Eli B. Richlin, erichlin@wsgr.com
Brian M. Willen, bwillen@wsgr.com
**Wilson Sonsini Goodrich & Rosati PC**

Ashley W. Hardin, ahardin@wc.com
Joseph G. Petrosinelli,
jpetrosinelli@wc.com
**Williams & Connolly LLP**

Brian Ercole,
brian.ercole@morganlewis.com
Stephanie Schuster,
stephanie.schuster@morganlewis.com
Yardena R. Zwang-Weissman,
yardena.zwang-
weissman@morganlewis.com
**Morgan, Lewis & Bockius LLP**

Re:    *In Re: Social Media Adolescent Addiction/Personal Injury Prod. Liab. Litig.*
       MDL No. 3047 and JCCP 5255
       Correspondence Regarding Plaintiffs' 30(b)(6) Deposition Notice

Dear Counsel:

Plaintiffs write in response to your letter dated February 25, 2025, regarding Plaintiffs' Rule 30(b)(6) Deposition Notice served on February 13, 2025. We note that a separate 30(b)(6) Deposition Notice, related to School District Topics, was served on February 7, 2025.

## YOUTUBE'S PRELIMINARY OBJECTIONS

YouTube's preliminary objections are nothing more than boilerplate and conclusory statements that ignore the actual detailed requests set forth in both 30(b)(6) notices. Indeed, contrary to YouTube's contention that Plaintiffs do not "describe 'with reasonable particularity the matters for examination," the notices in fact set forth detailed categories requested, including sub-categories for clarification. While YouTube criticizes the "sheer scope" of the notices, it fails to acknowledge that this case involves complex technology and design regarding at least two different platforms, multiple modes of access, over ten different relevant features, and a patch work of design and implementation that varies across age groups, accounts, and geographic regions. That Plaintiffs endeavored to identify, with precision, the testimony sought is not an overreach but rather a reflection of the attempt to provide the "reasonable particularity" that YouTube seeks.

**SIMMONS HANLY CONROY**
**SOCIAL MEDIA VICTIMS LAW CENTER**

February 28, 2025
Page 2

On timing, there is nothing improper about service of 30(b)(6) notices within the fact discovery period, with months to spare. And, insofar as YouTube seeks additional time to prepare its designee(s), Plaintiffs are open to that conversation. The Parties have already agreed to push at least one deponent beyond the April 4, 2025 discovery deadline and are well capable of agreeing to others.

## YOUTUBE'S 30(B)(6) PROPOSALS

On February 18, 2025, the Parties held a meet and confer regarding the 30(b)(6) notices. At that time, YouTube indicated that it sought to negotiate the scope and time limits with respect and would provide written correspondence to that end. As stated during that call, Plaintiffs are open to these negotiations, provided that the proposals are made in good faith. It is thus disappointing to see that the written proposal provided by YouTube is neither reasonable nor proportionate.

On time limits, YouTube proposes limiting the 30(b)(6) testimony to **seven hours**. This is patently unreasonable. Indeed, YouTube requests that Plaintiffs drop the depositions of two fact witnesses – which would comprise at least 20 hours of testimony – in lieu of 30(b)(6) testimony, and yet simultaneously maintains that Plaintiffs be restricted to seven hours total for the entirety of all negotiated 30(b)(6) topics. **The seven-hour limit is a non-starter. Please let us know if YouTube is standing firm on the seven-hour limit. If so, we are at impasse and should proceed to briefing.** Should YouTube be open to negotiation on time limits, Plaintiffs will engage in those discussions with the caveat that reasonable time limits cannot be effectively negotiated without knowing the final topics and number of designated witnesses.

On the scope of topics, as set forth below, YouTube's proposals are unduly restrictive and would preclude highly relevant 30(b)(6) testimony. We provide our counter proposals below, with reference to topics aligning to those set forth in the February 17, 2025 30(b)(6) Notice.

We note that YouTube's letter does not appear to address the topics identified in the School District 30(b)(6) Notice. **If YouTube intends to limit the School District 30(b)(6) Notice to only the topics identified in its February 25 letter, Plaintiffs are not in agreement, and thus the Parties are at impasse. If further discussion is warranted, please let us know. Otherwise, we will proceed to briefing.**

## TOPIC I
## ACCOUNT CREATION, ACCESS, EXPERIENCE AND DELETION

YouTube seeks to limit this topic to only:

a. The types of Google accounts available to parent and Youth users accessing YouTube Main or Kids;
b. The reliability of declared age in the account creation process; and
c. The ability of Children who initially enter a birthdate indicating they are under 13 years old to change their birthdate during the account creation process.

2

**SIMMONS HANLY CONROY**
**SOCIAL MEDIA VICTIMS LAW CENTER**

February 28, 2025
Page 3

Plaintiffs disagree. YouTube's proposal entirely ignores the types of information requested when creating or accessing an account and ignores the account deletion process. In the interest of compromise, Plaintiffs propose the below modifications.

---

**I. ACCOUNT CREATION, ACCESS, EXPERIENCE, AND DELETION.** Defendants' policies and procedures regarding Account creation, access and deletion, and how and why that changed over time, including but not limited to:

1. What information is expressly requested by Defendants from users in order for a user to create an Account, access an Account, and delete an Account.

2. What information is collected by Defendants about users when a user creates an Account, accesses an Account, and deletes an Account.

3. What information is provided by Defendants to users during Account creation, Account access, and Account deletion, including any information that Defendants contend conveys consent to and notice of the conduct alleged in the Master Complaint.

4. What action(s) is taken when a user is identified to have violated any Account creation, access, or deletion policy.

5. How Defendants detect and address instances where users have or may have violated any Account creation, access, or deletion policy.

6. Defendants' knowledge and understanding about how children circumvent or bypass Account creation, access, or deletion policies, including but not limited to knowledge about:

　　a. The reliability of a declared age in the Account creation and access process *[consistent with YouTube's proposal at subsection (b)]*;

　　b. The ability of Children who initially enter a birthdate indicating they are under 13 years old to ~~restart the Account creation process and bypass the age gate by re-entering a birthdate that makes them 13 or older~~ change their birthdate during the account creation process *[consistent with YouTube's at subsection (c)]*;

　　~~c. The ability of Children to bypass and circumvent age verification by using login credentials from third-party services like Google;~~

　　d. The ability of Children to use the platform without the need to create an Account including browsing as a guest or without logging in; and,

　　~~e. Any other way that Children have evaded age-related Account creation and access policies.~~

7. What information is provided by Defendants to users and/or Parents when a user reaches the declared age of 13.

~~8. Changes in user experience between Accounts, including access to content, availability of Named Features.~~

~~9. The ability of Children to bypass and circumvent parental controls and/or default user options in YouTube Kids or of SupeX accounts.~~

---

## TOPIC II
## <u>NAMED FEATURES</u>

YouTube seeks to limit this topic to the following:

<u>Parental Controls.</u>

a.  What parental controls and user protective settings (including digital wellbeing features) are available on YouTube (Main and Kids) related to the Named Features, and when the parental control or setting was implemented.

b.  YouTube's efforts to prevent Children from bypassing or circumventing parental controls and/or default protective settings related to the Named Features (to the extent applicable) while using YouTube Kids or the SupEx experience.

<u>Age Inference/Estimation/Verification.</u>

a.  Defendants' efforts to detect and prevent unsupervised Children from using YouTube in the United States without parental consent in violation of Google's and YouTube's terms of service.

b.  How Defendants' age inference (age assurance) modeling works, and what protections apply to users inferred as likely to be under 18 years of age in the European Union.

c.  Defendants' February 2025 announcement to expand its age assurance model to the United States, including the reasons for the announcement and why Defendants have historically taken a different approach to age assurance in the United States and Europe.

d.  How Defendants' age verification processes work, including the circumstances under which users are prompted to age verify, and how users may verify their age.

<u>Named Features, Risks, and Disclosures.</u>

a.  Defendants' knowledge regarding alleged risks of mental health harm to users related to (i) unintentional overuse, or (ii) late night use.

Plaintiffs disagree. YouTube's proposal omits key features, and critical issues regarding operation, implementation, design, efficacy, and usage. In the interest of compromise, Plaintiffs are agreeable to limiting Topic II to the following Named Features:

**Age Verification**

**Parental Controls**

**User Protective Settings** (which includes digital wellbeing features, autoplay settings, privacy settings, and ability to delete search and watch history)

**Endless Scro**ll (which includes Autoplay, Infinite Feed, Infinite Playback);

**Notifications**;

**Algorithmic Recommendations**;

February 28, 2025
Page 5

---

**Short-form and ephemeral content** (which includes YouTube Shorts and Stories); and

**Intermittent variable rewards** (including likes, dislikes, shares, subscribes, comments, and direct messaging).

In addition, Plaintiffs agree to limit the sub-topics on Named Features to the below.

---

**II. NAMED FEATURES.** For each Named Feature (see Schedule C), the purpose, development, implementation, and operation of that Named Feature, including:

**1. OPERATION**
  a. Operation: How each Named Feature functions both from the user's perspective and internally at Google/YouTube, including any modifications to the operation, whether implemented or merely considered.
  b. Technological Tools: Any technologies or methodologies (e.g., algorithms, AI, machine learning) employed with respect to each Named Feature; if not employed, the reasons why they were not.
  c. Third-Party Services: The use or non-use of third-party services for each Named Feature.
  d. Alternative Designs: Consideration of any alternative designs, whether implemented or merely considered.
  e. Timeline: The timeline and details of the Named Feature and modifications made, including its implementation and the reason for each modification.

**2. POLICIES AND PROCEDURES**
  a. Policies and Procedures: Policies and procedures related to each Named Feature, including both external facing policies (e.g. policies provided to the users, third parties, etc.) and internal policies.
  b. Tracking: Systems used for tracking and analyzing launches or alternative designs related to each Named Feature, including but not limited to:
  i. The creation, maintenance, and review of ███████████ in ██████████████████, including the fields used by the YouTube, YouTube Youth, Identity, Kids and Families, and Account Experiences teams;
  ii. The creation, maintenance, accessibility, and review of ████████ in ██████████ related to feature requests by Defendants' employees or customers.[1]
  ~~c. Policy Changes: The timeline and details of changes to policies and procedures related to each Named Feature, and what prompted any such changes.~~
  ~~d. Impact of Updates: The impact, if any, of any recent modifications on the accuracy and effectiveness of each Named Feature.~~

---

[1] This Topic is not intended to resolve issues related to the authentication of YouTube's completed production from these non-custodial sources, which will be addressed under separate cover.

**3. COMPLIANCE WITH LEGAL REQUIREMENTS**

   a. COPPA Compliance: Whether the Named Feature implicates the Children's Online Privacy Protection Act (COPPA) in the U.S. and how Defendants ensure compliance with COPPA.

   b. ~~GDPR Considerations: Whether the Named Feature implicates the General Data Protection Regulation (GDPR) in the E.U. and how Defendants handle compliance with the GDPR.~~

   c. ~~AADC Compliance: Whether the Named Feature implicates the Age-Appropriate Design Code Act in California (AADC) or the AADC in the U.K. and how Defendants ensure compliance with the AADC.~~

   d. ~~Data Protection Commission: Whether the Named Feature implicates the Data Protection Commission Fundamentals for a Child-Oriented Approach to Data Processing Protection (Fundamentals) in Ireland and how Defendants handle compliance with the Fundamentals.~~

   e. ~~Other Laws Regarding Minors and Data Collection: Whether the Named Feature implicates any other law or regulation in the U.S., the E.U., and Australia, and how Defendants handle compliance with those laws.~~

**4. VARIATIONS**

   a. Geographic Variations: Variations between how the Named Feature operates within the U.S. and outside of the United States (e.g. E.U. and Australia), whether that

   b. changed over time, and the reasons for those differences.

   c. Platform vs. App Variations: Variations between how the Named Feature operates on the mobile app and the web version, whether that changed over time, and the reasons for any such differences.

**5. EFFECTIVENESS / LACK OF EFFECTIVENESS**

   a. Assessing / Measuring / Analyzing Effectiveness: The details of how Defendants assess/measure/analyze the effectiveness of the Named Feature, and any changes or adjustments made as a result, and when and why each change was implemented. This includes:
   i. A/B Testing;
   ii. User Experience Studies, Surveys, and Research;
   iii. Expert analysis or consultation;
   iv. Surveys and discussions with Key Opinion Formers;
   v. Third-Party Studies and Research regarding the impact of the Named Feature on users.

   b. External Audits: Any external audit and analysis of the Named Feature, and if so, the details of same, including any findings.

   c. Usage Metrics/Data: Usage metrics and data regarding how often the Named Feature is used by users, and who is using the Named Feature (e.g. broken down by age, gender, geographic location).

6. ~~PARTNERSHIPS AND COLLABORATION~~
   a. ~~Industry Collaboration: Any collaborations or communications by Defendants with other tech companies or industry groups to improve or change the Named Feature, including industry standards, details of those collaborations or communications, and any discussions of the same.~~
   b. ~~Government and NGO Engagement: Any engagement by Defendants with governments, NGOs, or child safety organizations regarding the Named Feature, details of those engagements, and any discussions of the same.~~

7. **FUTURE PLANS**
   a. Planned Innovations: Any innovations or updates that Defendants are assessing, considering, or planning to implement with respect to the Named Feature and the reasons for those innovations or updates.
   b. ~~Long Term Strategy: How the Named Feature fits into Defendants' long-term strategy for user safety and platform integrity.~~

8. **USER COMPLAINTS**
   a. Reported Incidents: Complaints or concerns that users raised regarding the Named Features, either individually or in combination (the YouTube Platform), including any adverse impact on users' mental health and wellbeing, and any discussions of the same.
   b. Response to Incidents: Any response by Defendants to issues reported by users and any discussions of the same, including any thresholds for YouTube's consideration of complaints received and/or escalations thereof.
   c. Tracking: Systems used for tracking and analyzing user complaints and responses thereto, including but not limited to:
      i. The creation, maintenance, accessibility, and review of "Tickets" in ███████████ ████, or any preceding customer relationship management tools ("CRM"), including all available fields;
      ii. The creation, maintenance, accessibility, and review of ████ related to user complaints or customer issues in ███████ including all available fields;
      iii. The creation, maintenance, accessibility, and review of user feedback and/or surveys in ████, including all available fields;
      iv. The creation, maintenance, accessibility, and review of social media interactions in any social media CRM, including all available fields.[2]

9. **USER IMPACT**: Defendants' knowledge regarding impact on users related to the Named Feature, including:
   a. Impact on users' screentime addiction (e.g., habitual use, problematic use, unintended use);
   b. Impact on users' mental health and wellbeing;

---

[2] This Topic is not intended to resolve issues related to the authentication of YouTube's completed production from these non-custodial sources, which will be addressed under separate cover.

---

c.  Impact on users' performance in daily tasks and activities, including performance at school, work, or extracurricular activities.

~~**10. DATA COLLECTION**~~
~~a.  Data Collection: The specific data collected on Children from the Named Feature.~~
~~b.  Data Storage: Where the data is stored, how long the data stored, and who has access to it.~~
~~d.  Data Policies and Security: What policies are in place to regarding access and use of the data collected, and how Defendants ensure compliance with those policies.~~
~~e.  Data Use: How data collected about Children from the Named Feature is used by Defendants.~~

~~**11. MARKETING AND DISCLOSURES**~~
~~a.  Marketing: Defendants' development and implementation of marketing regarding the Named Feature, including strategy documents discussing the intended audience for the Named Feature and opportunities for growth.~~
~~b.  Disclosures: Defendants' disclosures regarding the Named Feature, including statements related to the risks and benefits of the Named Feature.~~

**TOPICS III AND IV**
**DATA COLLECTION/PRIVACY GENERALLY**
**AND MARKETING AND DISCLOSURES, RESPECTIVELY**

Subject to agreement as to the above regarding Topic II, which contemplates removing data collection, privacy, marketing and disclosures with respect to Named Features individually, Plaintiffs are agreeable to the below modifications to Topics III and IV.

**III. DATA COLLECTION/PRIVACY GENERALLY**
1.  To the extent not covered above (re Named Feature), the data collected on Children by Defendants when Children are using the YouTube Platform.
2.  ~~To the extent not covered above (re Named Feature), the where the data is stored, how long the data stored, and who has access to it.~~
3.  To the extent not covered above (re Named Feature), what policies are in place to regarding access and use of the data collected, and how Defendants ensure compliance with those policies.
4.  To the extent not covered above (re Named Feature), how data collected about Children from the Named Features is used by Defendants.

**IV. MARKETING AND DISCLOSURES**
1.  To the extent not covered above (re Named Feature), Defendants' development and implementation of marketing regarding the YouTube Platform, including strategy documents discussing the intended audience, how that changed over time and why.

2. To the extent not covered above (re Named Feature), Defendants disclosures regarding the YouTube Platform, included statements related to the risks and benefits of using the YouTube Platform, any warnings made regarding the risks and benefits.

3. To the extent Defendants' claim that they obtained lawful consent as to any conduct that occurred on the YouTube Platform (either by users or by Defendants), the development and implementation of those consent documents, how it changed over time, and why.

### TOPICS V & VII
### CORPORATE KNOWLEDGE AND CORPROATE GOALS AND OBJECTIVES & KEY RESULTS (OKRS), RESPECTIVELY

YouTube seeks to limit these topics to the following:

<u>Named Features, Risks, and Disclosures.</u>

a. Defendants' knowledge regarding alleged risks of mental health harm to users related to (i) unintentional overuse, or (ii) late night use.

<u>Corporate Objectives & Key Results ("OKRs").</u>

a. YouTube's general process for setting and measuring progress towards company OKRs related to Youth and, at a high level, YouTube's goals and strategies related to the Youth market from 2015-2025, and how those goals changed over time.

Plaintiffs disagree. There is no sound basis to limit Topic V to only certain types of problematic use. In the interest of compromise, Plaintiffs are agreeable to the below modifications on Topics V.

**V. CORPORATE KNOWLEDGE.** Defendants' knowledge of impact and risk of harm on users as a result of the engagement with the YouTube Platform, including:

1. Impact on users' problematic, addictive, or compulsive use (e.g., overuse, habitual use, problematic use, heavy use, unintended use, or late night use).

2. Impact on users' mental health and wellbeing.

3. The factual allegations in Personal Injury Plaintiffs' Second Amended Master Complaint, including Paragraphs 836-965 (Dkt. 494).

4. The factual allegations in Local Government and School District Plaintiffs First Amended Master Complaint, including Paragraphs 836-965 (Dkt. 729).

5. Any threshold applied by YouTube in determining when a complaint is termed a "complaint" and the factors or considerations applied by YouTube in determining when escalation of a complaint will occur.

Likewise, as to Topic VII, YouTube's position is unduly restrictive and seeks to preclude large swaths of relevant information. Nonetheless, in the interest of compromise, Plaintiffs will

agree to YouTube's proposal subject to the inclusion of company-wide OKRs related to engagement (e.g., WT, YTT, SEU, DAU, and DAV), to fully resolve Topic VII.

---

**VII. CORPORATE GOALS AND OBJECTIVES & KEY RESULTS (OKRs)** [All sub-topics resolved subject to above agreement].

1. The policies and procedures in place regarding how Defendants determined and defined their core goals and mission statements, identification of those goals and mission statements, identification of the key decision makers, the strategy and purpose behind those goals and mission statements, the metrics for success, and whether those goals changed over time and why.

2. The policies and procedures in place regarding how Defendants determined their annual and quarterly OKRs, identification of those OKRs in the areas of child safety, digital wellbeing, and user growth, identification of the key decision makers, the strategy and purpose behind those OKRs, the metrics for success, and whether those OKRs changed over time and why.

3. Defendants' business plans and strategies regarding competition with other social media platforms, e.g. Instagram, TikTok, Snapchat.

4. Defendants' business plans and strategies regarding opportunities for growth in the youth market.

---

**TOPIC VI**
**REVENUE**

YouTube's proposal omits **all** 30(b)(6) testimony regarding revenue. This is entirely unreasonable. **Please let us know if YouTube intends to maintain this position. If so, the Parties are at impasse, and we will proceed to briefing on this issue.** If, however, YouTube is open to negotiating in good faith, then Plaintiffs propose the following modifications to Topic IV.

---

**VI. REVENUE.** How Defendants estimate, calculate, project, and account for gross and net revenue arising out of the YouTube Platform, by month, quarter and year, including:

1. Generation of revenues and profit attributable users on the YouTube Platform.

2. ~~The costs attributed to operating the YouTube Platform.~~

3. ~~The costs and profits attributed to any agreement with advertisers regarding the YouTube Platform, and in particular to any agreement related to advertising to minors.~~

4. The impact to revenues and profit of eliminating accounts suspected to be owned or operated by users (a) under the age of 13, and (b) between the ages of 13-17.

5. The impact to revenues and profit of restricting access to accounts suspected to be owned or operated by users (a) under the age of 13, and (b) between the ages of 13-17.

---

6. Consideration, monetary or otherwise, that Defendants receive for sharing or sending information about users of the YouTube Platform to a third-party, including children, whether directly or indirectly (e.g. through any ad services).

7. With regard to Defendants' advertising business, revenue and profits derived from data or information collected about users, Defendants' creation of user profiles, user verticals, user demographics, the individuals responsible for their creation and calibration, and how such profiles, verticals, demographics and the like are used by Defendants in advertising products, including but not limited to the YouTube Platform.

8. How Defendants calculate the value, monetary or otherwise, of monthly, weekly, and daily active users on the YouTube Platform, including but not limited to conclusions reached by any auditors, whether contracted with Defendants, or their parent company, Alphabet, Inc.

## TOPIC VIII
## USER AND USAGE METRICS

YouTube's proposal omits **all** 30(b)(6) testimony regarding user and usage metrics. This is entirely unreasonable. **Please let us know if YouTube intends to maintain this position. If so, the Parties are at impasse, and we will proceed to briefing on this issue.** If, however, YouTube is open to negotiating in good faith, then Plaintiffs are open to discussing ways in which to narrow this topic.[3]

**VIII. USER AND USAGE METRICS**

1. The amount of YouTube Time spent per Child or Youth User per Session, and any changes thereto during the Relevant Time Period, including:

  a. The average YouTube Time per Child or Youth User per Session;

  b. The average YouTube Time per Child or Youth User per Session for each decile of contribution to total daily YouTube Time;

  c. The average YouTube Time per Child or Youth User per Session per decile for the top 20% of Child or Youth Users.

2. The amount of YouTube Time spent per Child or Youth User per Visit, and any changes thereto during the Relevant Time period, including:

  a. The average YouTube Time per Child or Youth User per Visit;

  b. The average YouTube Time per Child or Youth User per Visit for each decile of contribution to total daily YouTube Time;

  c. The average YouTube Time per Child or Youth User per Visit per decile for the top 20% of Child or Youth User.

---

[3] We note that we are still awaiting YouTube's responses to interrogatories on related topic, the responses to which may inform this discussion.

**SIMMONS HANLY CONROY**
**SOCIAL MEDIA VICTIMS LAW CENTER**

February 28, 2025
Page 12

---

3. The number of Visits per Child or Youth User in a Session, and any changes thereto during the Relevant Time period, including:

    a. The average number of Visits per Child or Youth User per Session;

    b. The average Visits per Child or Youth User per Session per decile for the top 20% of Child or Youth Users;

    c. for the top 20% of Time per Child or Youth User per Visit for each decile of contribution to total daily YouTube Time.

4. Use time metrics for Child and Youth Users.

5. The tracking and accessibility of each of the above metrics.

Sincerely,

Ellyn Hurd        Glenn S. Draper

cc: MDL and JCCP Leads
    MDL and JCCP YouTube Discovery Teams