# Exhibit E
# (Redacted)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

Case No. 4:22-MD-03047-YGR

MDL No. 3047

**3rd REVISED DRAFT NOTICE OF ORAL AND VIDEOTAPED DEPOSITION OF DEFENDANTS YOUTUBE, LLC AND GOOGLE LLC PURSUANT TO FED. R. CIV. P. RULE 30(b)(6)**

This Document Relates to:

ALL ACTIONS

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**
**UNLIMITED JURISDICTION**

Coordination Proceeding Special Title (Rule 3.550)

**SOCIAL MEDIA CASES**

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Judicial Council Coordination Proceeding No. 5255

Judge: Carolyn B. Kuhl
Dept. 12

ISSUING PARTY:          Personal Injury and Local Government Entity Plaintiffs

TO:                     Defendants YouTube, LLC and Google LLC (collectively referred to
                        as "Google") c/o:

                        Christopher Chiou
                        cchiou@wsgr.com
                        WILSON SONSINI GOODRICH & ROSATI
                        953 East Third Street, Suite 100
                        Los Angeles, CA 90013

                        Lauren Gallo White
                        lwhite@wsgr.com
                        Samantha A. Machock
                        smachock@wsgr.com
                        WILSON SONSINI GOODRICH & ROSATI
                        One Market Plaza, Spear Tower,
                        Suite 3300
                        San Francisco, CA 94105

                        Brian M. Willen
                        bwillen@wsgr.com
                        WILSON SONSINI GOODRICH & ROSATI
                        1301 Avenue of the America, 40th Floor
                        New York, NY 10019-6022

                        *Attorneys for Defendants Google*

    **PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6) and the

Deposition Protocol in the above-referenced matter (ECF No. 742), the Personal Injury and Local

Government Entity Plaintiffs, by and through the undersigned counsel, will take the videotaped

deposition of:

| NAME: | DATE AND TIME: | LOCATION |
|---|---|---|
| The Person(s) most qualified to testify to the Topics on Schedule A | _____ | Lieff Cabraser Heimann & Bernstein 275 Battery Street, Suite 2900 San Francisco, CA 94111 or such other time or location as is agreed upon by the parties including Zoom or some other agreed upon video-teleconference platform |

**PLEASE TAKE NOTICE** that in addition to the attorneys below, the primary points of contact for this deposition are:

| NAME(S) | ADDRESSES | PHONE NUMBER | EMAIL |
|---|---|---|---|
| Ellyn Hurd | Simmons Hanly Conroy 112 Madison Avenue, 7th floor New York, NY 10016 | (212) 257-8482 | plaintiffmdlandjccpgoogleteam @simmonsfirm.com EHurd@simmonsfirm.com |

**PLEASE TAKE FURTHER NOTICE** that the deposition will be videotaped.

**NOTICE IS FURTHER GIVEN** that pursuant to Fed. R. Civ. P. 30(b)(6) Defendants shall designate and produce a representative or representatives, as may be required, to testify on behalf of Google, concerning the topics identified in *Schedule A* attached hereto, and are directed to produce the documents identified on *Schedule B*. The definitions on *Schedule C* apply to both the topics and document requests.

**NOTICE IS FURTHER GIVEN** that the deposition shall be recorded by stenographic and audiovisual means, as well as a webcast to a remote location provided by Golkow Litigation Services (https://www.golkow.com/) and taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed. The remote deposition will be coordinated by Golkow Litigation Services, with an address of 1650 Market St, Suite 5150, Philadelphia, PA 19103. A link and any necessary credentials will be provided in advance of the deposition.

**NOTICE IS FURTHER GIVEN** that if the witness intends to respond to questions in a language other than English, immediately (but no later than 15 days before the deposition) notice should be given to the undersigned so that the parties may select an interpreter consistent with the Deposition Protocol. (ECF No. 742, pp. 8-9).

1
2

**SCHEDULE A**
**DEPOSITION TOPICS**

3       Pursuant to Rule 30(b)(6), Defendants Google LLC and YouTube LLC (together,

4  "Defendants") shall designate and produce for deposition one or more of their officers, directors,

5  managing agents, or other persons who consent to testify on its behalf concerning the following

6  subject matters:[1]

7  **I.    MEANS OF ACCESS TO THE YOUTUBE PLATFORM**

8       1.  The general types of Google accounts available to Youth Users to access the YouTube
9           Platform (hereinafter the "Accounts"), and how that has changed over time. "Youth"
            means minors under the age of 18.

10      2.  The ability to access the YouTube Platform as a guest or without logging in to an Account.
11          to bypass any need to declare an age or otherwise provide age verification, and what
12          information is provided by Defendants to Users when accessing as a guest or without
            logging in, and how that changed over time, including any information that conveys
13          consent to and notice of the conduct alleged in the Master Complaint.

    **II.   ACCOUNT CREATION**

14      1.  **[PROPOSAL – Subject to Written Testimony – see comment]** What information is
15          expressly requested by Defendants from Users when creating each type of Account, and
            how that changed over time.

16      2.  **[PROPOSAL – Subject to Written Testimony – see comment] What** information is
17          provided by Defendants to Users when creating each type of Account, and how that
            changed over time, including any information that conveys consent to and notice of the
18          conduct alleged in the Master Complaint.

19      3.  The reliability of declared age in the account creation process; and

20      4.  The ability of Children who initially enter a birthdate indicating they are under 13 years
            old to change their birthdate during the account creation process.

21  **III.  CHILD AND TEEN USE OF THE YOUTUBE PLATFORM**

22      1.  Defendants' efforts to detect and prevent unsupervised Children from using YouTube in
23          the United States without parental consent in violation of Google's and YouTube's terms
            of service.

24      2.  How Defendants' age inference (age assurance) modeling works, and what protections
            apply to Users inferred as likely to be under 18 years of age in the European Union.

25      3.  Defendants' February 2025 announcement to expand its age assurance model to the
26          United States.

27

28  _____
    [1] Key terms are defined in Schedule C.

> **Commented [EH1]:** PISD will agree to withdraw Topics
> II.1 and II.2 as oral 30b6 topics if YouTube agrees to
> stipulate to the authenticity, accuracy, and completeness of
> the third party videos concerning account creation as well as
> provide written testimony providing, for each year, and for
> each Google Account identified in I.1, a list of the type of
> information a User must provide to create such an Account,
> the information shown to a user when asked to confirm
> agreement to Terms of Service and Privacy Settings,
> including the information provided in any drop-down
> options, (e.g., "More information") and whether and when
> information regarding "personalization settings"
> demonstrated in the 2022 account creation video was shown
> to US users when creating an account.

4. How Defendants' age verification processes work, including the circumstances under which Users are prompted to age verify, and how Users may verify their age.

5. **[PROPOSAL – Subject to Written Testimony – see comment]** The data collected on Children by Defendants when Children are using the YouTube Platform.

6. What information is provided by Defendants to Users of an Account when a User reaches the declared age of 13.

**IV.    FEATURES AND SETTINGS**

7. For each Named Feature:

   a.  When it was launched.

   b.  The purpose of the launch.

   c.  ~~How Defendants assessed, measured, and analyzed its effectiveness.~~ Defendants' position as to whether the Named Feature achieved its purpose and, if so, how Defendants determined that.

   d.  ~~Usage Metrics and Data on how the Named Feature is used by Users, and who is using it (e.g. broken down by age, gender, geographic location).~~

   e.  Whether ~~The process for responding to, tracking, and analyzing~~ User Complaints ~~(Complaints or concerns that Users raised~~ regarding the Named Features, ~~either individually or in combination, including any adverse impact on Users' mental health and wellbeing, and any discussions of the same). For this purpose, tracking and analyzing User complaints and responses thereto means the creation, maintenance, accessibility and review of Tickets in~~ were tracked and analyzed through one or more of ▓▓▓▓s (and its preceding tools, such as ▓▓▓▓), of ▓▓▓ in ▓▓▓▓, feedback and surveys in ▓▓▓ and social media interactions in YouTube's social media CRM.

8. What parental controls and user protective settings (including digital wellbeing features) are available ~~to U.S. Users~~ on YouTube (Main and Kids) ~~Platform related to the Named Features~~ and when ~~each~~ the parental control or ~~user protective~~ setting was implemented, ~~which~~ the general types of users to which the controls and settings ~~do they~~ apply ~~to and/or were~~ intended for, and how, if at all, the available parental controls and user protective settings vary depending on the device being used or whether YouTube is accessed by app or website.

9. ~~What parental controls and user protective settings (including digital wellbeing features) are available to E.U. and Australia Users on the YouTube Platform related to the Named Features, when each parental control or user protective setting was implemented, which types of users do they apply to and/or intended for, which types of app or device do they operate on, and which feeds or types of videos they operate on.~~

10. ~~How Defendants assessed, measured, and analyzed the effectiveness of each parental controls and user protective settings (including digital wellbeing features) effectiveness.~~ Defendants' contention as to whether the available parental controls and user protective setting were effective and, if so, how Defendants determined that.

11. ~~At a high level,~~ the feature ~~and recommendation enhancements and/or~~ modifications ~~intended to provide an additional safety layer of protection for Child or Teen Users, as~~ discussed in the blog posts: Investing to protect teen wellbeing on YouTube across Europe

Commented [EH2]: PISD will agree to withdraw Topics III.5 as oral 30b6 topics if YouTube agrees to provide response via written testimony

5

CASE NO. 4:22-MD-03047-YGR

and globally, published March 3, 2025, Continued support for teen wellbeing and mental health on YouTube, published November 2, 2023, and Expanding our support for teen wellbeing on YouTube across Europe, published September 5, 2024, New safety and digital wellbeing options for younger people on YouTube and YouTube Kids, published August 10, 2021.

**V.    ACCOUNT DELETION**

1. **[PROPOSAL – Subject to Written Testimony – see comment]** What information is expressly requested by Defendants from Users when deleting each type of Account, and how that changed over time.

2. **[PROPOSAL – Subject to Written Testimony – see comment] What** information is provided by Defendants to Users when deleting each type of Account, and how that changed over time, including any information that conveys consent to and notice of the conduct alleged in the Master Complaint.

**VI.    RISKS AND WARNINGS**

1. Defendants' knowledge regarding alleged impact and risk of harm on Users resulting from the Named Feature (or combination thereof) or engagement with the YouTube platform, including:

   a. Impact on Users' problematic, addictive, or compulsive use (e.g., overuse, habitual use, problematic use, heavy use, unintended use, or late night use) and

   b. Impact on Users' mental health and wellbeing.

2. Defendants' position as to whether, when, and how it provided disclosures provided to Users of the YouTube Platform regarding the risks of and benefits overuse, habitual use, problematic use, heavy use, unintended use, or late night use or negative impact on mental health and wellbeing from of using the YouTube Platform and any warning regarding the same.

**VII.    REVENUE AND CORPORATE GOALS AND OBJECTIVES & KEY RESULTS (OKRs)**

1. YouTube's general process for setting and measuring progress towards company OKRs related to Youth and engagement. at a high level, YouTube's goals and strategies related to the Youth market from 2015-2024 (including its efforts to market the YouTube Platform to Children and Teens), how the company sets and tracks and company-wide OKRs related to watching (WT) and/or YouTube Time (YTT) engagement (e.g. WT, YTT, SEU, DAU, and DAV), and how those goals OKRs changed over time.

2. Generation of revenues and profit attributable Users on the YouTube Platform.

3. Whether How Defendants calculate the value, monetary or otherwise, of monthly, weekly, and daily active Users on the YouTube Platform, and if so, a basic description of how it calculates such values. including but not limited to conclusions reached by any auditors, whether contracted with Defendants, or their parent company, Alphabet, Inc.

4. The impact to revenues and profit of eliminating accounts or restricting access to accounts suspected to be owned or operated by Users (a) who are Children, and (b) who are Teens.

5. Defendants' knowledge of and tracking of the amount of time spent on the YouTube Platform by its heaviest Child or Teen User.

Commented [EH3]: PISD will agree to withdraw Topics V.1 and V..2 as oral 30b6 topics if YouTube agrees to stipulate to the authenticity, accuracy, and completeness of the third party videos concerning account deletion as well as for each Google Account identified in Topic I.1, a list of the steps necessary to delete each Account, including what notices are provided to User, either on screen during the process or in an email, at each step, Whether a user is or was able to delete a YouTube account without deleting their Google Account during the relevant time period, the account/data types included when a user is required to confirm deletion of their account, and whether the account deletion process is consistent between devices

Case 4:22-md-03047-YGR    Document 1778-10    Filed 03/18/25    Page 8 of 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SCHEDULE B
## DOCUMENTS TO BE PRODUCED

Produce legible copies of the following in Your Possession, Custody, and Control:

1.      Separately for each matter identified in the Notice above, all Documents constituting, containing, or reflecting the matter.

2.       For each matter identified in the Notice above, please separately produce and identify all Documents reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

3.      For each deponent, please produce a copy of his or her current resume or CV, as well as a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

4.      All notes taken by any witness in preparation for the deposition.

1
2

### SCHEDULE C
### DEFINITIONS

3    1.    "You," "Your," "YouTube" or "Defendant" refers to, without limitation, Defendants
4    Google, LLC and YouTube LLC, both collectively and individually, as well as all of their partners,
5    directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors or
6    other representatives, including all corporations and entities affiliated with Defendants. The terms
7    "You" or "Your" shall also include all predecessor business entities, as well as any predecessor's
8    partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party
9    contractors or other representatives. The terms "You" or "Your" shall also include all foreign
10   subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies'
11   partners, directors, officers, employees, servants, agents, attorneys, joint ventures or other
12   representatives.

13   2.    "Age Verification" means utilizing one or more methods for checking the truth or
14   accuracy of a User's claimed or reported age or birthdate, such as (a) by requiring users to upload a
15   government-issued identification or other proof of age, answering knowledge-based authentication
16   questions, using credit card information, biometric verification, social security number checks,
17   parental consent, document uploads (i.e., birth certificates, passports), (b) using external third-party
18   age-verification services; or (c) other means to cross-check user information, including through
19   machine learning, algorithms, classifiers and signals. "Age Verification" includes but is not limited
20   to age gating, age assurance, age and identify verification, age estimation, age inference, age
21   modeling, age approximation, and age profiling.

22   3.    "Child" or "Children" means individual(s) under the age of thirteen (13).

23   4.    "Parent" means the lawful mother, father, or legal guardian of a person.

24   5.    "Teen" or "Teens" means individuals between the ages of thirteen (13) and seventeen
25   (17), inclusively.

26   6.    "User" means any User or potential User of the YouTube Platform, including, but not
27   limited to, the parents or guardians of any User.

28   7.    "Document" or "Documents" shall mean Documents, electronically stored

information, "Communications," and tangible things, including without limitation all writings as used in this Request is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34 and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. Consistent with the above definition, the term Document shall include, without limitation, any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, emails, text-messages, or any communication on any collaborative system/hub like SLACK, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, deposition or other testimony transcripts, or communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in, or generated on any electronic transfer or storage system, any preliminary versions, drafts, or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of you, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf. Documents include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM, and ROM, on or in any other vehicle for digital data storage and/or transmittal. Electronic data includes information on collaborative hubs, *i.e.*, SLACK or any other on-line cloud-based collaborative resource, including, but not limited to, BOX, Dropbox, and ShareFile. Documents also include the file, folder tabs, and/or containers and labels appended to or associated with any physical storage device associated with each original and/or copy. Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of You or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of You, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on Your behalf.

8.    "Electronically Stored Information" or "ESI" shall mean the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, metadata, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI exists in an active file, deleted file, or file fragment.  ESI include without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal.  ESI also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

9.      "Communication" and/or "correspondence" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between you and any other person or entity.

        a.      "Person" or "Persons" means any natural person, corporation, partnership, proprietorship, association, governmental entity, agency, group, organization, or group of persons as well as any other corporate entity.

        b.      "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including Documents attached to or used in the preparation of or concerning the preparation of the Documents.

10.      "Communication" and/or "Correspondence" refer broadly to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, minutes, notes conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between you and any other person or entity.

11.      "Identify" or "Identity" has broad meaning including but not limited to:

        a.      with respect to natural Person(s): (i) full name, present or last known address; (ii) all title(s)/position(s) and dates held; (iii) place in the organizations' structure/hierarchy including departments, teams, working groups, divisions or other named units (hereinafter "Units"); (iv) the Identity of Person(s) to who the Person(s) report directly or indirectly; (v) the Identity of the Person(s) that report to the Person(s) directly or indirectly (hereinafter "Supervisory and Reporting Relationships"); (vi) a description of the functions, duties, activity and responsibilities ("hereinafter "Duties") of each Person and Unit; and (vii) the present or last known place of employment and the geographic location/address where the Person(s) worked while holding each title/position (hereinafter "Employment / Working history").

        b.      with respect to organizational Person(s) and each Unit in an organization: (i) full name, present or last known address, (ii) place in the organizations' structure/hierarchy over time including but not limited to the Unit(s) and Person(s) that report directly or indirectly into the Unit and the Unit(s) and

Person(s) that it reports directly or indirectly into and all changes to the Reporting Relationship over time; (iii) the Duties of each Unit and any changes over time; (iv) the purpose and function of each Unit and any changes over time; (v) each Units activity and any changes to that activity over time; and (vi) each Units personnel, managers, supervisors, and decision-makers, and any changes over time.

12.   For this Notice, "Named Features" means any feature of the YouTube Platform constituting:

   a.   ~~Endless scroll,~~ Autoplay, Infinite Scroll, Infinite Playback

   b.   Algorithmic Content recommendations

   c.   image filters

   d.   notifications

   e.   YouTube Shorts ~~and YouTube Stories~~

   f.   visible "likes" and view numbers ~~intermittent variable rewards~~

13.   "Possession, custody, or control" shall mean and refer to any Documents in Your possession, custody, or control. A document is deemed to be in your "possession, custody or control" if is in your physical custody, or if it is in the physical custody of another person or entity and you: (a) own such document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so. Such Documents shall include, without limitation, Documents that are in the custody of your attorney(s), employees, staff, representatives, and agents.

14.   "Policy," "policies" or "Policy or Practice" include all formal and informal policies, guidelines, practices, procedures, and customs and means any standard policy, procedure, practice, protocol, plan, manual, system, or manner of conducting a specific task, whether formal or informal, that is or was adopted, implemented or used by You including the terms of any such "Policy," "policies" or "Policy or Practice," the methods and means used for carrying out such "Policy," "policies" or "Policy or Practice," the implementation of such "Policy," "policies" or "Policy or Practice" and the identity of those "Persons" responsible for managing and/or implementing such

1    "Policy," "policies" or "Policy or Practice."

2        15.    The "YouTube Platform" or "Platform" means any version of the YouTube Platform

3    developed, tested, or made available for use, including versions for use on mobile devices or by

4    accessing a URL on the internet, with or without logging into an account, and including all features

5    or surfaces accessible to some or all users of the platform. For avoidance of doubt, "YouTube

6    Platform" is comprised on YouTube Main, YouTube Kids and YouTube Shorts.

7        16.    Reference to the singular in any of these requests shall also include a reference to the

8    plural, and reference to the plural shall also include a reference to the singular.

9        17.    The present tense of a verb includes its' past tense and *vice versa*.

10       18.    "Or" and "and" will be used interchangeably and shall be construed conjunctively or

11   disjunctively as necessary to make the requests inclusive rather than exclusive.

12       19.    "Including" shall be construed to mean "without limitation."

13       20.    "All" and "Any" mean each and every.

14       21.    Unless otherwise indicated, the "relevant period" for the information sought is 2015

15   to the present.

16

17                        **CERTIFICATE OF SERVICE**

18

19       The undersigned hereby certifies that a copy of the foregoing was served via electronic mail

20   on March 18, 2025 the following, Counsel for Defendants:

21       Christopher Chiou
         cchiou@wsgr.com
22       WILSON SONSINI GOODRICH & ROSATI
         953 East Third Street, Suite 100
23       Los Angeles, CA 90013

24
         Lauren Gallo White
25       lwhite@wsgr.com
         Samantha A. Machock
26       smachock@wsgr.com
         WILSON SONSINI GOODRICH & ROSATI
27       One Market Plaza, Spear Tower,
         Suite 3300
28

---

14                                    CASE NO. 4:22-MD-03047-YGR

San Francisco, CA 94105

Brian M. Willen
bwillen@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the America, 40th Floor
New York, NY 10019-6022

*Attorneys for Defendants Google LLC and YouTube, LLC*

*/s/ Ellyn Hurd*
Ellyn Hurd

---

15                                    CASE NO. 4:22-MD-03047-YGR