UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos.:    4:22-md-03047-YGR (PHK)<br>                 4:23-cv-05448-YGR<br><br>**JOINT LETTER BRIEF ON META'S AMENDED 30(b)(6) NOTICE TO STATE PLAINTIFFS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and the State AGs that are pursuing consumer protection claims in this litigation (collectively, the "Consumer Protection States" or the "States")[1] respectfully submit this letter brief regarding disputes over the following Topics included in Meta's Amended 30(b)(6) Notice to the States: Topics 2-8, 10, 15, 17-19, and 31. An example of Meta's amended notice to the States is attached as Exhibit A. A document setting forth Meta's narrowing of the disputed topics and agreement to provide advance notice of representative documents and information is attached as Exhibit B.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference for an H.2 conferral on March 14, 2025, and continued to confer in writing and by videoconference thereafter. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

---

[1] For purposes of this Joint Letter Brief, the "Consumer Protection States" (or, alternatively, the "States") are California, Colorado, Connecticut, Delaware, Illinois, Indiana, Kansas, Kentucky, Louisiana, Minnesota, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Virginia, Oregon, South Carolina, and Wisconsin. As set forth in prior letter briefing, Meta reserves all rights to seek additional discovery of States not included in this list to the extent they fail to finalize dismissal of their consumer protection claims with prejudice or later seek to assert consumer protection claims in any way.

Dated: March 28, 2025

Respectfully submitted,

**COVINGTON & BURLING LLP**

*/s/  Ashley Simonsen*
Ashley Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Michael X. Imbroscio, *pro hac vice*
Stephen Petkis, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email: mimbroscio@cov.com
Email: spetkis@cov.com

Paul W. Schmidt, *pro hac vice*
Christopher Y.L. Yeung, *pro hac vice*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com
Email: cyeung@cov.com

*Attorneys for Defendants Meta Platforms, Inc.;
Instagram, LLC; Meta Payments, Inc.; and Meta
Platforms Technologies, LLC*

**PHILIP J. WEISER**
Attorney General State
of Colorado

*/s/ Lauren M. Dickey*
Lauren M. Dickey (CO Reg. No. 45773)
First Assistant Attorney General
Megan Paris Rundlet (CO Reg. No. 27474)
Senior Assistant Solicitor General
Elizabeth Orem (CO Reg. No. 58309)
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section 1300
Broadway, 7th Floor Denver, CO
80203
Phone: (720) 508-6651
lauren.dickey@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.
Philip J. Weiser, Attorney General*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Tess E. Shaw*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Tess E. Shaw
(CT Juris No. 444175), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General 165
Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Krislyn.Launer@ct.gov

Tess.Shaw@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**ROB BONTA**
Attorney General State of
California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Megan O'Neill (CA SBN 343535)
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Joshua Olszewski-Jubelirer (CA
SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General California
Department of Justice Office of the
Attorney General
455 Golden Gate Ave., Suite 11000 San
Francisco, CA 94102-7004 Phone: (415)
510-4400
Fax: (415) 703-5480
megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

**THEODORE E. ROKITA**
Attorney General
State of Indiana

*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82),
*pro hac vice*
Chief Counsel and Director of Consumer
Protection
Corinne Gilchrist (IN Atty No. 27115-53),
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49),
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Marion Quirk*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan T. Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection Delaware
Department of Justice
820 N. French Street, 5th Floor Wilmington,
DE 19801
Phone: (302) 683-8810
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Matthew Davies*
Susan Ellis, Chief, Consumer Protection
Division (IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud
Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019)
Matthew Davies, Supervising Attorney,
Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*
Kevin Whelan, Supervising Attorney, Consumer
Fraud Bureau (IL Bar No. 6321715), *pro hac vice*
Emily María Migliore, Assistant Attorney
General, Consumer Fraud Bureau (IL Bar No.
6336392)
Daniel B. Roth, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6290613)
Office of the Illinois Attorney General
115 S. LaSalle Street Chicago,
Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov

302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**KRIS W. KOBACH**
Attorney General
State of Kansas

*/s/ Sarah M. Dietz*
Sarah M. Dietz, Assistant Attorney General (KS
Bar No. 27457), *pro hac vice*
Kaley Schrader, Assistant Attorney General (KS
Bar No. 27700), *pro hac vice*
Office of the Attorney General 120 SW
10th Avenue, 2nd Floor Topeka,
Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
Email: sarah.dietz@ag.ks.gov

*Attorneys for Plaintiff State of Kansas*

**LIZ MURRILL**
Attorney General State of
Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*Pro hac vice*
Assistant Attorney General Louisiana
Department of Justice Public Protection
Division Consumer Protection Section
1885 N 3rd Street, 4th Floor Baton Rouge,
LA 70802
Tel: (225) 326-6438
NachabeA@ag.louisiana.gov

*Attorney for State of Louisiana*

Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Kevin.Whelan@ilag.gov
Adam.Sokol@ilag.gov
Emily.Migliore@ilag.gov
Daniel.Roth@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Philip R. Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*


**KEITH ELLISON**
Attorney General State of
Minnesota

/s/ *Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388),
*pro hac vice*
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*


**MATTHEW J. PLATKIN**
Attorney General State
of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *pro hac vice*
Section Chief, Deputy Attorney General Deputy Attorneys General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General

New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor Newark,
NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov

*Attorneys for Plaintiffs State of New Jersey*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna Anderson*
Anna Anderson (NE #28080) Assistant
Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General 2115
State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-2682
Email: anna.anderson@nebraska.gov

*Attorney for Plaintiff State of Nebraska*

**JEFF JACKSON**
Attorney General
State of North Carolina

*/s/ Charles White*
Charles G. White (N.C. State Bar No.
57735), *pro hac vice*
Assistant Attorney General
Kunal Choksi
Senior Deputy Attorney General
Josh Abram
Special Deputy Attorney General
N.C. Department of Justice Post
Office Box 629
Raleigh, North Carolina 27602 Telephone:
(919) 716-6006
Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

**LETITIA JAMES**
Attorney General State
of New York

*/s/ Kevin Wallace*
Kevin C. Wallace, Senior Enforcement Counsel
(NY Bar No. 3988482), *pro hac vice*
kevin.wallace@ag.ny.gov
Alex Finkelstein, Assistant Attorney General
NY Bar No. 5609623), *pro hac vice*
alex.finkelstein@ag.ny.gov
Nathaniel Kosslyn, Assistant Attorney General
(NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
New York Office of the Attorney General 28
Liberty Street
New York, NY 10005
(212) 416-8000

*Attorneys for Plaintiff the People of the State of New York*

**DAVID W. SUNDAY**
Attorney General Commonwealth
of Pennsylvania

*/s/ John M. Abel*
John M. Abel
Senior Deputy Attorney General
(PA Bar No. 47313), *pro hac vice*
Jonathan R. Burns
Deputy Attorney General
(PA Bar No. 315205), *pro hac vice*
Email: jabel@attorneygeneral.gov
Email: jburns@attorneygeneral.gov
Pennsylvania Office of the Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.645.7269

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ John Dunbar*
John Dunbar (Oregon Bar No. 842100), *pro hac vice*
Assistant Attorney General Oregon
Department of Justice Consumer
Protection Section
100 SW Market Street Portland,
Oregon 97201
Telephone:        (971) 673-1880
Facsimile:        (971) 673-1884
E-mail: john.dunbar@doj.state.or.us

*Attorneys for State of Oregon, ex rel. Dan Rayfield, Attorney General for the State of Oregon*


**JASON S. MIYARES**
Attorney General Commonwealth
of Virginia

*/s/ Joelle E. Gotwals*
Joelle E. Gotwals (VSB No. 76779),
*pro hac vice*
Assistant Attorney General
Thomas J. Sanford
Deputy Attorney General
Richard S. Schweiker, Jr. (VSB No. 34258),
*pro hac vice*
Senior Assistant Attorney General and
Section Chief
Chandler P. Crenshaw (VSB No. 93452)
*pro hac vice*
Assistant Attorney General and Consumer
Privacy Unit Manager
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:        (804) 786-8789
Facsimile:        (804) 786-0122
E-mail: jgotwals@oag.state.va.us
*Attorneys for the Plaintiff Commonwealth of Virginia ex rel. Jason S. Miyares, Attorney General*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Clark Kirkland, Jr.*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Clark C. Kirkland, Jr. (CA SBN 272522)
Assistant Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov ckirkland@scag.gov
annasmith@scag.gov
803-734-0057

*Attorneys for Plaintiff the State of South Carolina, ex rel. Alan M. Wilson, in His Official Capacity as Attorney General of the State of South Carolina*

**JOSHUA L. KAUL**
Attorney General State of
Wisconsin

*/s/ Colin R. Stroud*
Colin R. Stroud
Assistant Attorney General
WI State Bar #1119457, *pro hac vice*
Wisconsin Department of Justice Post Office
Box 7857
Madison, Wisconsin 53707-7857
(608) 261-9224
stroudcr@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*

**Meta's Position:** Meta has worked to address the Consumer Protection States' scope and burden concerns, including by offering to (i) provide advance notice of representative documents and information, and (ii) materially narrow the disputed topics in dispute in other ways (as reflected in the attached Exhibit B). The States completely fail to note those substantial concessions in arguing that Meta's topics are "vague, overbroad, and unduly burdensome." Instead, the States seek further unreasonable limitations. For example:

● Despite alleging broadly that "social media" has caused teen mental health issues, the States seek to avoid questioning on any platforms other than Facebook and Instagram, frustrating Meta's ability to defend against non-specific allegations of harm.

● The Consumer Protection States seek to impose limitations "consistent with the March DMC," but disregard that the March DMC exclusively involved COPPA claims that the COPPA-only States conceded "had nothing to do with" teen mental health.

● The States seek to avoid providing testimony by deferring to experts, but disregard that (i) Meta has a right to obtain the *States'* knowledge on issues separate from its experts and (ii) if the State lacks knowledge on a topic, it can say so during the deposition

● The States seek to prevent questioning on topics this Court has repeatedly determined are relevant and discoverable, including potential alternate causes of teen mental health issues (Topic 17). *See* ECF 1479 at 16–17.

The States' objections to Meta's substantially narrowed 30(b)(6) topics should be denied.

### 1. Topics About Other Platforms and "Social Media" Generally Should Be Allowed.

The States' consumer protection claims rely on broad allegations about the purportedly harmful effects of social media *generally*, including non-Meta services. *See, e.g.*, Compl. ¶508-26 (alleging that "[i]ncreased use of social media platforms, including those operated by Meta" result in harms). As such, Topics 2–6, 8, 10, and 31 match the scope of the States' claims by seeking information relating to "Social Media Platforms" generally.[2] In response to the States' burden and scope concerns, Meta agreed to limit its questioning to six specific platforms that have been involved in teen mental health litigation: Facebook, Instagram, TikTok, Snapchat, YouTube, and Twitter/X. Meta offered to further limit its topics to Facebook and Instagram, but only *if* the States would be willing not to use documents referring generally to "social media" harms without specific attribution. The States refused.

Information about other platforms and "social media" generally is relevant to Meta's defenses, particularly if the States intend to use general evidence. For example, if the States encouraged the use of Twitter, Snapchat, or TikTok to improve teen mental health during the pandemic, or discouraged use of one service but not others, that evidence rebuts the States' causation theories.

---

[2] The Consumer Protection States argue that the Court's COPPA-only ruling should apply to them. But unlike here, the COPPA-only states confirmed that their statutory claims do not relate to "social media" generally or teen mental health, but instead just to Facebook and Instagram.

Similarly, Meta should be allowed to ask about any State-related studies that discuss social media's benefits to teen mental health even if they are general or cover other platforms.

**2. The States' Topic-Specific Objections Should Be Denied.**

Topic 2: Topic 2 originally sought testimony about the States' "use" of Social Media Platforms. In response to the States' (and the Court's) concerns, Meta agreed to limit Topic 2 to three types of use: (i) advertisements, (ii) promotions, and (iii) posts. Meta also agreed to identify exemplar documents in advance, to ease the States' preparation burden. These narrowed forms of use are critically relevant: efforts to advertise to teenagers or posts extolling the benefits of social media could undermine the credibility of the States' claims that social media causes teen mental health issues (which is a core issue in their consumer protection claims). Even though some of this information may be publicly available, Meta should still be permitted to ask the Plaintiff States *questions* about their advertisements and posts–*i.e.*, to get testimony about purposes and content. The States' arguments are not reasons to strike the narrowed Topic 2 entirely.

Topic 5: Meta agreed to narrow Topic 5 in three respects: (i) deleting "communications," (ii) limiting it to "collaborations" that target social media use, and (iii) identifying any Facebook- or Instagram-specific collaborations in advance. Even if some of this information is in Meta's possession (collaborations with other platforms is not), Meta should be permitted to develop testimony regarding *the States'* knowledge and understanding of their half of the collaboration— *e.g.*, if the State agrees that their collaboration with a platform *improved* teen mental health. The States ignore these points.

Topic 7: Meta has agreed to narrow Topic 7 by focusing on *State-directed* efforts (as opposed to purely local or county-directed efforts) and excluding colleges, but there is no basis to arbitrarily exclude State-directed efforts to make internet or devices available through elementary, middle, or high schools or their libraries. Among other things, internet access and devices increase access to social media, and it is relevant if State efforts increased social media use or if the States made technology available without limiting social media access (including after filing this case).

Topics 8 and 15: Meta agreed to (i) limit these topics to studies, research, tests, etc. that the States "created, considered, relied on, or contributed to in any way" and (ii) identify specific examples in advance (which should address the States' prep burden concerns). The States still refused, demanding that these topics be further limited to research the States "conducted and/or directly funded." The States' demand is too narrow; among other things, it would exclude studies that a State closely reviewed or made meaningful contributions to if there was no "direct funding"-- something Meta may not even be able to discern without a deposition. It would also unjustifiably exclude research that the States considered or chose to rely (or not rely) on when taking action on core social media or teen mental health issues. That information is critically important to Meta's defenses–*e.g.*, if State mental health policy decision-makers disagreed with conclusions concerning a purported link between social media and teen mental health in a way that undermines the State's current litigation position or the positions taken by its experts.

Topic 10: Meta has agreed to limit the scope of Topic 10 to "public or *identified* non-public" State meetings on Social Media Platforms. The States claim it would be "infeasible" to prepare a State witness on this topic, but there is nothing infeasible about preparing a witness to testify about

meetings that happened publicly or that Meta specifically identifies in advance. There is no basis to further limit this Topic, and the States tellingly do not suggest anything specific.

Topic 17: This topic exclusively seeks the States' *factual* knowledge of factors besides social media that may have negatively impacted teen mental health, an issue this Court has repeatedly held is relevant and discoverable. The States claim that it would be too hard to prepare a State witness on this topic because information might reside with employees, but the Court has also repeatedly rejected that argument, including at the most recent DMC. *See* 3/20 DMC Tr. at 41:24–42:2 (excusing the States from "drilling down to each individual employee"). Moreover, it makes no difference if the States may later offer expert evidence on these issues. Right now, Meta is only seeking *the States'* knowledge; if the States don't have any knowledge, it is important to Meta's defense that the States say so. Finally, the States' suggestion that this is a "contention" topic is wrong for several reasons: (i) the States have not made any contentions here about alternate causes of teen mental health harms, (ii) the topic as written only seeks the States' factual knowledge and bears no resemblance to topics that this Court previously struck, and (iii) the States' tellingly did not include Topic 17 in prior briefing on contention issues.

Topic 18: This topic seeks testimony about teen mental health services. The States seek to limit this topic to "direct services," but that would carve out broad swathes of relevant services that States provide indirectly, such as the youth mental health services that the Kentucky Department of Behavioral Health provides "through contracts with the regional Community Mental Health Centers and other entities." The States' limitation also would exclude analyses of State services, such as State conclusions about the sufficiency of its funding of teen mental health services. Meta should be entitled to develop testimony about relevant State services even if those services were not "directly" to patients. Moreover, Meta's agreement to identify representative services and documents in advance allays any potential burden or preparation concerns.

Topic 19: Meta will not ask witnesses to recite budgets or expenditures from memory, but it should be permitted to ask clarifying questions about financial documents that have been produced. The States have noticed Meta's Rule 30(b)(6) testimony on audited financial statements, so there is no basis for the States to resist reciprocal testimony.

**Plaintiffs' Position:** Despite this Court's instructions advising that Rule 30(b)(6) topics require "painstaking specificity," Meta refuses to adequately narrow vague and overbroad topics served on State Plaintiffs. "The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection." *Grano v. Sodexo Mgt., Inc.*, 335 F.R.D. 411, 414 (S.D. Cal. 2020) (citation omitted). "While [Rule] 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, courts have limited discovery where the breadth of subjects and number of topics identified in a [Rule] 30(b)(6) deposition notice renders a responding party's efforts to designate a knowledgeable person unworkable." *Luken v. Christensen Grp. Inc.*, 2018 WL 1994121, at *2 (W.D. Wash. Apr. 27, 2018) (internal quotations omitted); *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012). As stated more fully below, the State AGs thus respectfully request this Court to issue a Protective Order under Fed. R. Civ. P. 26(c) limiting the scope of Meta's Amended Topics as follows: (a) to entirely strike Topics 2, 5, 15, 17, and 19; and (b) to narrow Topics 3, 4, 6, 7, 8, 10 and 18, and 31, including as relevant, to pertain only to the platforms at issue in the State AGs' action, Facebook and Instagram.

## I.     Topics that Should be Stricken Entirely (Topics 2, 5, 15, 17, and 19)

Meta seeks testimony for how each State has "used" social media platforms and has only offered to identify examples of such use. (Topic 2). At the March Discovery Management Conference ("DMC"), Meta identified posts by a specific Washington State agency as an example of "use" per this Topic. Regarding Meta Defendants, such "use" information is more readily within Defendants' possession, and this Topic is unsuited for examination given the breadth of the term, "use." (Mar. DMC Tr.50:16-51:22). Meta's further request for testimony regarding "use" of *other* social media platforms also lacks foundation. Whether and how State Plaintiffs (not to mention state agencies or employees) *used other* platforms has no bearing on whether Meta's platforms were directed to children, whether Meta deceived the public, or whether Meta's features unfairly exploited or harmed young users. Meta's request for the State's collaborations with both Defendants and other, nonparty social media platforms (Topic 5) is similarly improper. Meta does not need a witness to tell it how States have collaborated with Meta, (Mar. DMC Tr. 56:15-21), and Meta has no basis to seek 30(b)(6) testimony regarding States' work with an entire industry.

Meta seeks 30(b)(6) testimony regarding research, investigations, tests, studies, surveys, reports, evaluations, or analysis "to address"[3] harms of social media platforms generally, which in conferrals, Meta claimed to include research state employees may have "considered" (Topic 15), as well as the Plaintiff's "knowledge and/or understanding" of the mental health impacts of twenty-one-plus sophisticated subtopics. (Topic 17(a)-(u)). In conferrals, Meta claimed it could not narrow Topic 17 because it needs to be able to ask Plaintiffs if they "believe" (i.e., contend) that various issues harm youth. First, the practical reality is that any testimony about Plaintiffs' "knowledge and/or understanding" would need to be derived from individual employees. Second, the Topics amount to improper contention topics seeking the Plaintiffs' beliefs regarding alternate explanations of harm and issues of causation and relatedly, third, these Topics seek expert testimony on the mental health impacts of sophisticated issues for which designated experts will provide reports and testimony. Meta will undoubtedly confront Plaintiffs' experts on these issues, so deposing 30(b)(6) designees about Plaintiffs' contentions and beliefs about such complex, science-based issues is unproductive. *U.S. v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *7 (C.D. Cal. Oct. 26, 2016) (collecting cases).

Meta seeks testimony regarding budgeted and actual expenditures for health services to minors. (Topic 19). Much like the Court recognized at the March DMC, and much like how Meta has agreed to rely on documents or financial statements for investments and revenues, Topic 19 is better suited for review of publicly available information or documents. The State AGs agreed to identify such information, but Meta insists that, by flagging specific budget documents and promising not to "quiz" witnesses, the Topic should be acceptable. It is not, because relevant information for budgets would be best reflected in documents themselves, and requiring a 30(b)(6) deponent to provide further details would be unduly burdensome given any marginal relevance.

## II.     Topics Requiring Specific Limitations (3, 4, 6, 7, 8, 10, 18 and 31)

---

[3] Meta omits "to address" from Topic 15 in its argument, but doing so actually broadens rather than narrows that already disproportionately broad Topic.

**State Research (Topic 8):** The State AGs seek to make Topic 8 proportionate and feasible for 30(b)(6) testimony by limiting it to the State's *own* research or studies it conducted regarding the use, harms or benefits of Defendants' social media platforms to persons under age 18. Meta refused, claiming that Topic 8 includes any research or study a state employee "considered" or "relied on." Preparing for a 30(b)(6) deposition becomes "less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *HVI Cat*, 2016 WL 11683593, at *7 (cleaned up). It is not feasible to identify, much less prepare a designee on what research state employees considered or knew, as opposed to the Plaintiff States' own studies or research. Further, if any such other studies are relied upon by the States' experts, the cross-examination and probing of those scientific findings are for expert discovery. *Id*.

**Limitations Consistent with the March DMC (Topics 3, 4, 6, 10, and 31):** Meta has partially agreed to limit Topic 6 consistent with the Court's instructions during the March 20 DMC relating to striking "communications" and agreeing to limit questioning to "actual or identified potential" programs. But Meta still seeks to question the Plaintiffs about *other* social media platforms on this Topic. Like set forth above, that has no bearing on issues in this case, and to the extent they seek the States' beliefs via this Topic, that amounts to seeking alternate explanation contentions more suited for expert testimony. The same arguments apply to Topic 10, which Meta has agreed to limit to "identified non-public meetings," but that is still infeasible for preparing the State party witness on the contents of internal conversations between State employees within their respective agencies, and meetings regarding *other* social media platforms are similarly improper. Meta likewise refuses to limit its definition of "Social Media Platforms" in Topics 3, 4 and 31 because, supposedly, the States' (but not individual agencies' or employees') views about other social media are relevant for defeating or limiting liability as alternate explanations of alleged harms. But it is hard to understand how State programs or efforts to "encourage, promote, or discourage the use of" *other* platforms or States' "views" about *non*-Meta platforms directed to kids under age 13, are probative of alternate causes of harm, or again, substantive contentions on subjects being addressed by experts. (Topics 3, 4 and 31).[4]

**Topics Regarding Large State Administrative Programs (Topics 7 and 18):** Meta's Topic 7 about efforts "involving the State" to provide telecommunication services or devices to young people is overly broad and vague as it implicates States' broad and complex education systems and their relationships with localities across each State, even if funding or resources are provided at the State level. The State AGs asked to exclude programs or funding of local schools and libraries, but Meta refused and did not explain how testimony about state education systems providing schools with access to technology is relevant, much less proportionate to the burden of preparing a designee on this vast and complex area of state government. Similarly, the State AGs asked Meta to confirm that Topic 18 did not call for testimony regarding administrative programs by which States do not directly provide health services to patients. Meta refused, claiming that even a State's Medicaid programs would be covered as to the behavioral health services delivered through third-party providers to youth. Given this disproportionate burden and marginal relevance, Topics 7 and 18 should be limited to the State's direct provision of telecommunication services, devices or behavioral health treatments to youth.

---

[4] Meta has agreed to limit Topic 31 to the "relevant period" (January 1, 2012 – April 1, 2024).

## <u>ATTESTATION</u>

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: March 28, 2025

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen

6