UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE REGARDING YOUTUBE'S AMENDED RULE 26(a) INITIAL DISCLOSURES**<br><br>Re: Dkt. 1803 |

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the Personal Injury/School District ("PI/SD") Plaintiffs and YouTube regarding discovery from two YouTube employees—Jennifer O'Connor and "K.K."—identified for the first time as witnesses in YouTube's Amended Initial Disclosure dated February 7, 2025. [Dkt. 1803]. The Court finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARDS

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

discretion to tailor discovery narrowly and to dictate the sequence of discovery").

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The relevant portions of the initial disclosure requirements under Rule 26 are as follows:

2

> (A) In General. Except . . . as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]
>
> * * *
>
> (E) Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case[.]
>
> * * *
>
> (e) Supplementing Disclosures and Responses.
>
> (1) In General.  A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

See Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii), (E), (e)(1)(A).

## DISCUSSION

**A.  Custodial Files of the Two YouTube Witnesses (O'Connor and K.K.)**

The Parties first dispute is whether YouTube should be required to produce the custodial files of these two YouTube employees—Ms. O'Connor and an employee identified by their initials, "K.K."—recently added to YouTube's Initial Disclosures in a supplement dated February 7, 2025.  YouTube argues that it has already produced thousands of documents from other custodians "relating to" these two witnesses and that there has been no showing of prejudice by Plaintiffs caused by the lack of their custodial files.  [Dkt. 1803 at 11].  Plaintiffs argue that, had

3

these two witnesses been properly listed on YouTube's original Initial Disclosures, their custodial files would have been requested at the time of the negotiations over custodial files earlier in discovery. *Id.* at 9.

Rule 26(a)(1)(A) states that a party "must" provide to the other parties the identities "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Under Rule 26(e)(1)(A), a party "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Plaintiffs raised the issue of timeliness of disclosure, demanded production of the custodial files, and began the meet and confer process on February 24, 2025, about two weeks after these two witnesses were added to YouTube's Amended Initial Disclosures. [Dkt. 1803 at 8]. In addition to the argument that YouTube already produced thousands of other documents relating to these two witnesses, YouTube's primary argument in response now is that it commits that it has not and will not use or rely upon any documents in the custodial files of either of these two witnesses, and thus, that there is no prejudice to Plaintiffs. *Id.* at 11.

YouTube's addition of these two individuals to its Amended Initial Disclosures is an express representation that they each are likely to have knowledge of information to support YouTube's defenses. Certainly, in the briefing on this issue, YouTube does not disclaim any intention to rely on either witness's testimony to support its defenses. Thus, the flaw in YouTube's argument is that, while YouTube may be willing to forego reliance on any documents in the custodial files of either of these two witnesses, the failure to produce the files deprives Plaintiffs of the opportunity to determine whether there are documents in those custodial files which substantively contradict, undercut, rebut, or merely even weaken YouTube's defenses. The failure to disclose these two individuals earlier in discovery impeded Plaintiffs from seeking their custodial files prior to the substantial completion deadline. YouTube's explanation for the disclosure late in discovery is simply that they were added due to YouTube's ongoing

4

investigation, without any further details.

Because Plaintiffs are neither seeking to strike these two witnesses from YouTube's Amended Initial Disclosures nor seeking a Rule 37 sanction to bar YouTube from relying on their testimony, the issue here is simply whether the documents of these witnesses are relevant (within the scope of relevance for discovery) and proportional. YouTube makes no argument that the custodial files of these two witnesses lack relevance or proportionality. Indeed, it would appear difficult to make such an argument, given that they were added by YouTube to the Amended Initial Disclosures (presumably for good reason). YouTube's reliance on lack of prejudice assumes, based solely on numerosity of previously produced documents, that lack of those custodial files does not harm Plaintiffs. However, without those custodial files, Plaintiffs are prevented from reviewing documents (not previously produced) to see whether such documents could have led to other discovery. *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-HSG (EDL), 2019 WL 12038882, at *3 (N.D. Cal. Sept. 9, 2019) ("Plaintiff was prejudiced by Defendant's belated disclosure [of witness Ms. Campbell] because it did not have the opportunity to timely obtain documents and testimony from Ms. Campbell that it otherwise would have. Ms. Campbell's testimony and documents could have led to other witnesses with knowledge."). At a minimum, the failure to produce the custodial files deprived Plaintiffs of the opportunity to review those documents to determine if any impeachment material for these two individuals and other witnesses are in those files. Because the custodial files have not been produced, YouTube is at best hypothecating that there is nothing useful in those files which has not already been produced previously from other custodians' files. YouTube may or may not be correct in its estimation that nothing of any import is in those custodial files (compared to what has already been produced), but the risk of any error in YouTube's guesswork from not having the custodial files falls almost entirely on Plaintiffs. Accordingly, YouTube's proposal not to rely on these individuals' custodial files does not cure the prejudice to Plaintiffs. For similar reasons, YouTube's argument that thousands of other documents "relating to" these two witnesses were already produced does not cure the prejudice flowing from the lack of documents that have not been produced.

The Court is not persuaded by YouTube's final argument that it is burdensome to search

for and produce the custodial files of these two witnesses now that the fact discovery period is about to close. [Dkt. 1803 at 12]. As noted, these witnesses were first added to YouTube's Amended Initial Disclosures on February 7, 2025, and Plaintiffs initiated the meet and confer process two weeks later. The Parties spent weeks attempting to schedule and conduct meet and confers to try to resolve this dispute without judicial intervention, and Plaintiffs explain, without rebuttal from YouTube, that the delay in filing the instant letter brief was, at least in part, caused by YouTube. *Id.* at 8. The fact that this dispute was raised at this time is in large part a function of YouTube's unexplained generalized excuse that it only identified these witnesses late in the discovery period due to ongoing investigation. YouTube's argument here is undercut by its argument on the lack of prejudice issue that Plaintiffs have known about these two individuals from other documents for many months. *Id.* at 11-12. If these individuals were known to Plaintiffs since at least last November due to document productions, they were also known to YouTube since last year as well. In large part, YouTube's burden argument is a result of its timing of the disclosure of these two people in the Amended Initial Disclosures, and YouTube cannot benefit from a situation its timing created. *See Lou v. Ma Labs., Inc.*, No. 12-cv-05409 WHA (NC), 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) ("The Court finds that the burden defendants claim excuses them from producing such documents is of their own making, and thus not compelling. . . . [H]ad defendants taken class discovery seriously from the outset, they would not have had to produce as much information in such a relatively short timeframe, thus also reducing their burden."). Further, the Parties have reached agreements to conduct certain limited "clean up" fact discovery after the official fact discovery cut-off date, and the production of these custodial files is clearly in the same vein. Therefore, the Court **OVERRULES** YouTube's burden objection.

Accordingly, the Court **FINDS** that relevant, non-privileged documents from the custodial files of these two YouTube witnesses, Ms. O'Connor and K.K., **SHALL** be produced. The Court however is mindful of the current schedule for the case, and notes YouTube's representation that many documents relating to these witnesses have already been produced. Accordingly, the Court **ORDERS** counsel for the Parties to meet and confer by videoconference to negotiate reasonably

and in good faith an agreed-upon sub-set of search terms (from among the already previously agreed-upon search terms for YouTube custodians) to be used to search for documents within the custodial files of these two witnesses, with the overall goal of mitigating at least some appreciable amount of potential inefficiency from duplication of documents already previously produced. The Parties **SHALL** also meet and confer to reach agreement on a schedule for the production of the documents from these custodial files, to reach an agreeable schedule for production which does not risk impacting other already-scheduled discovery or the case schedule. In any production of the custodial files, the Court expects YouTube to deduplicate the production to remove documents that have already been previously produced. This meet and confer process **SHALL** be completed by no later than **April 11, 2025**.

If this meet and confer process does not result in an agreed-upon subset of search terms to use, then the Court **ORDERS** all counsel for the Parties who were involved in the videoconference meet and confers to report to Courtroom F on the 15th Floor of the San Francisco courthouse on **Monday, April 14, 2025 at 9:00 a.m.** to complete the meet and confer process in-person. No remote appearance will be granted. If for some reason counsel are incapable of reaching agreement on the subset of search terms for these custodial files at the April 14, 2025 in-person meet and confer, then the Court **ORDERS** lead trial counsel for YouTube and lead trial counsel for Plaintiffs to report to Courtroom F on the 15th Floor of the San Francisco courthouse on **Tuesday, April 15, 2025 at 9:00 a.m.** to complete the meet and confer process in-person. No other attorneys, other than the lead trial counsel, shall attend this April 15, 2025 meet and confer, and no remote appearances for any lead trial counsel will be granted.

**B. Depositions of YouTube's Two Witnesses (O'Connor and K.K.)**

The next dispute concerns Plaintiff's request that they be permitted to take the depositions of either or both of these YouTube witnesses at a later date, on the condition that the depositions go forward if YouTube relies on either witness for expert reports, in summary judgment or *Daubert* briefing, or at trial. [Dkt. 1803 at 10]. YouTube argues that Plaintiffs have known about these two individuals for months (based on other documents produced) and never previously sought their depositions, and are not actually seeking to depose them now. *Id.* at 11. YouTube

7

argues, essentially, that Plaintiffs are not serious about wanting to depose these witnesses, even now, since they did not attempt to schedule their depositions after they were identified in the Amended Initial Disclosures on February 7, 2025. *Id.* YouTube also points out that K.K. is already being deposed as a Rule 30(b)(6) designee. *Id.* at 12 n.5.

As to Ms. O'Connor, the Court previously provided analogous guidance at the January 16, 2025 DMC regarding a similar dispute over "non-key treater" potential witness depositions. *See* Dkt. 1646 at 5-7. The Court is dissatisfied with the Parties' evident failure here to take that clear guidance into account in their ineffective attempts to resolve this dispute during the meet and confer process.

In connection with the January 16, 2025 DMC, the MDL Bellwether PI Plaintiffs and Defendants raised a dispute about whether (and when) Defendants would be permitted to take the depositions of certain non-key treaters for each bellwether case. Defendants argued that they were already going to depose "key" treaters, and should only take up the Parties' time with depositions of non-key treaters if a bellwether Plaintiff relied on a declaration from a non-key treater in connection with expert reports or summary judgment briefing. These non-key treaters had been identified in supplemental Initial Disclosures, and Defendants argued that they should not be required to take multiple depositions of people who ultimately may never be relied upon for any substantive purpose in these cases. On the other hand, Plaintiffs argued that they should not be preemptively foreclosed from relying on a declaration from a non-key treater should an unexpected issue arise in connection with expert discovery or summary judgment which requires a declaration from such witness.

In resolving that dispute, the Court wrote as follows:

> Nevertheless, to address Defendants' concerns regarding unfair surprise through Plaintiffs' introduction of affidavits from non-deposed treaters, in the event Plaintiffs do use a non-"key" treater's declaration or affidavit to support their briefing in Rule 702 or summary judgment motions practice, Plaintiffs **SHALL** make that individual available for deposition by no later than **seven (7) calendar days** before the response brief is due to allow Defendants sufficient time to take the deposition and then use the transcript in any responsive briefing. While Plaintiffs have stated unequivocally that they do not intend presently to submit declarations from non-"key" treaters, if they choose to do so, they are further **ORDERED** to pre-

8

> clear and reserve deposition dates for such non-"key" treaters consistent with this Order. Because the selection of witnesses from whom to submit declarations and affidavits is within each Party's control, counsel will not be credibly heard later to express inability to make such witnesses available for deposition within the time frame required.

[Dkt. 1646 at 6].

Significantly, for purposes of the present dispute, the undersigned made clear that this ruling was applicable to Defendants in analogous situations as well:

> Further, as stated at the DMC, this ruling on non-deposed witnesses whose declarations and affidavits are used in later Rule 702 or summary judgment motions applies equally to Defendants should Plaintiffs file their own such motions. That is, should Defendants rely on declarations or affidavits from non-deposed defense witnesses to respond to Plaintiff's Rule 702 or summary judgment motions, Defendants are **ORDERED** to make such declarants or affiants available for deposition by no later than **seven (7) calendar days** before Plaintiffs' responsive briefing is due.

*Id.* at 7.

As to witness Ms. O'Connor, the Court resolves the instant dispute following its own previous analogous ruling and for the same reasons. In the event a YouTube expert considers or relies on a declaration or statement from, or information from, or discussions with Ms. O'Connor, YouTube **SHALL** make Ms. O'Connor available for deposition by no later than **seven (7) calendar days** before any corresponding responsive expert report is due (or before the deposition of any such expert relying on Ms. O'Connor). In the event YouTube relies on or submits a declaration or affidavit from Ms. O'Connor in connection with expert discovery, Rule 702 motions, or summary judgment motions, YouTube **SHALL** make Ms. O'Connor available for deposition by no later than **seven (7) calendar days** before any corresponding response brief is due to allow Plaintiffs sufficient time to take the deposition and then have the opportunity to use the transcript in responsive briefing. In the event YouTube identifies Ms. O'Connor as a trial witness, YouTube **SHALL** make Ms. O'Connor available for deposition at the earliest available date agreed upon by the Parties but in any event by no later than **seven (7) calendar days** before the first day of trial. Because the selection of witnesses to support a party's expert or submit a declaration or testify at trial is within that sponsoring party's control, counsel for YouTube will not be credibly heard later to express inability to make Ms. O'Connor available for deposition

within the time frame required by this Order. Because Plaintiffs have explicitly sought the ability to take Ms. O'Connor's deposition at a later date (if one of these conditions precedent arises), and have not sought to strike Ms. O'Connor from YouTube's Amended Initial Disclosure, Plaintiffs' counsel will not be credibly heard later to express inability to take Ms. O'Connor's deposition in the time frame established by this Order.

For clarity, nothing in this Order is intended to address or impact any objections to or issues concerning Ms. O'Connor's testimony properly presented to Judge Gonzalez Rogers in connection with later proceedings.

With regard to witness K.K., the situation differs from Ms. O'Connor. Plaintiffs do not explain why they did not raise the issue of taking the deposition of K.K. in their individual capacity since that person is already sitting for deposition as a Rule 30(b)(6) designee of YouTube. The Court notes that it is common in discovery to combine a witness's personal deposition with their deposition as a Rule 30(b)(6) designee in one sitting. *See, e.g.*, *Network Appliance Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2009 WL 2761924, at *9 (N.D. Cal. Aug. 31, 2009) (granting motion to compel witnesses for deposition and listing multiple combined 30(b)(6) and individual depositions to proceed); *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273-LJO-BAM, 2013 WL 492103, at *3 (E.D. Cal. Feb. 8, 2013) (Plaintiff "requested that the Rule 30(b)(6) depositions with these witnesses be completed at the same time as their individual depositions. The next day, [defendant] Rehrig agreed to conduct the individual and Rule 30(b)(6) depositions together."). In light of the fact that K.K. had been identified as a Rule 30(b)(6) designee, *and* was identified in the Amended Initial Disclosures two months prior to the fact discovery cutoff, *and* was named in documents produced by YouTube, Plaintiffs had opportunity to raise scheduling K.K.'s deposition in their individual capacity in combination with their Rule 30(b)(6) deposition, but chose not to do so. The fact that K.K. is a Rule 30(b)(6) designee sets K.K. apart from Ms. O'Connor. While combining depositions is not required under the Federal Rules, there are well-recognized practicalities for parties to combine a Rule 30(b)(6) deposition with a deposition of the designee in their individual/personal capacity, to reduce costs and for efficiencies. *See, e.g., Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, No. 2:05-CV-

0889, 2007 WL 1026439, at *1 (S.D. Ohio Mar. 30, 2007) ("Nabi's only objection appears to be that it would have been a better use of the parties' resources to schedule the individual and Rule 30(b)(6) depositions at the same time and that because Roxane failed to do so, it should not now be permitted to conduct its discovery in a less efficient manner.  Nabi makes a valid practical point.  It would have been a much better use of the parties' time and resources to have coordinated the individual and Rule 30(b)(6) depositions so that the same witnesses could have been deposed either simultaneously or back-to-back and at an earlier time in the litigation."); *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, No. 20-2795, 2021 WL 7708668, at *3 (E.D. La. July 30, 2021) ("Although parties regularly combine an individual's deposition with the Rule 30(b)(6) deposition for which that same individual is the corporate designee, the Federal Rules of Civil Procedure do not require a party to combine those depositions.").

        The salient point is that when YouTube identified K.K. in the Amended Initial Disclosure *and* also identified K.K. as a Rule 30(b)(6) designee, Plaintiffs would have been more than reasonably expected to at least raise the issue of deposing K.K. in K.K.'s individual capacity (either combined with the Rule 30(b)(6) deposition or separately) while the fact discovery period was still open.  Having had more than sufficient notice of the relevance of K.K. as a potential witness, the Court finds that Plaintiffs made an informed decision not to seek to depose K.K. in their individual capacity.  The fact that Plaintiffs merely ask now for the potential opportunity to take the deposition under certain conditions further undercuts the request as to K.K.  Accordingly, in light of the totality of the circumstances, the Court **DENIES** Plaintiffs' request to be permitted the conditional opportunity to take the deposition of K.K. at a later date.

        This **RESOLVES** Dkt. 1803.

**IT IS SO ORDERED.**

Dated:  April 4, 2025

PETER H. KANG
United States Magistrate Judge