Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

*Additional parties and counsel listed on signature page*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br><br>4:23-cv-05448-YGR<br><br>**META AND CALIFORNIA GO-BIZ'S STIPULATION AND [PROPOSED] ORDER REGARDING GO-BIZ'S PRODUCTION OF DOCUMENTS TO META**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to Civil Local Rule 7-12, the California Governor's Office of Business and Economic Development ("GO–Biz"), Snap Inc. ("Snap"), and Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta," and together with GO-Biz and Snap, the "Parties"), through their undersigned counsel, hereby stipulate as follows:

1. Meta and GO-Biz have met and conferred over the scope of a limited document production from GO-Biz relating to the grants and other incentives to social media companies. GO-Biz has informed Meta that, from January 1, 2012 through April 1, 2024, (a) the only social media recipients of GO-Biz's grants and tax credits were Snap and Microsoft, and (b) only one other social media company ("Social Media Co. 1") applied for GO-Biz's grants or tax credits, but Social Media Co. 1 did not receive a grant or tax credit. Meta and GO-Biz agreed that GO-Biz will not need to search for or produce any documents solely related to Microsoft's application.

2. On January 9, 2025, GO-Biz produced to Meta the only publicly available documents that relate to Snap's receipt of the California Competes Tax Credit and Grant: a California Competes Tax Credit Allocation Agreement and a California Competes Grant Agreement.

3. Section 23689(k)(1) of the Revenue and Tax Code (RTC) (California Competes Tax Credit) and section 12096.6.5 of the Government Code (California Competes Grant) both state that RTC section 19542 "shall apply to all information obtained by the Franchise Tax Board and GO-Biz" for purposes of administering the Cal-Competes Tax Credit (section 23689(k)(1)) and Cal-Competes Grant Program (section 12096.6.5). Accordingly, GO-Biz contends that Revenue and Taxation Code section 19542 prohibits GO-Biz from disclosing Snap's application materials, Social Media Co. 1's application materials, and documentation of GO-Biz's decision-making process concerning these applications. Section 19542 provides in relevant part that "it is a misdemeanor for the Franchise Tax Board . . . or other officer or employee of the state . . . who in the course of their employment or duty has or had access to returns, reports, or documents required to be filed under this part, to disclose or make known in any manner information as to the amount of income or any particulars, including the business affairs of a corporation, set forth or disclosed therein." GO-Biz also represented to Meta that (i) GO-Biz has consistently taken the position throughout the existence of the tax credit and grant programs that section 19542 prohibits the

disclosure of all materials relating to these programs except the agreements GO-Biz executes with the recipients of its tax credits and grants, *i.e.*, the agreements that GO-Biz has provided to Meta; and (ii) California Competes applicants are informed that section 19542 specifically prohibits the release of the application and application materials submitted as part of the application process, but that information contained in any successful applicants' agreement with GO-Biz would be posted on GO-Biz's website. *See, e.g.*, page 12 of https://business.ca.gov/wp-content/uploads/2023/06/California-Competes-Tax-Credit-FAQ-11-20-24.pdf.

4. GO-Biz further contends that disclosure of documents concerning GO-Biz's decision-making process relating to Snap and Social Media Co. 1 would harm the State's interest in operating a tax credit and grant program that effectively promotes job creation in California because it would provide other states operating similar programs with insight into GO-Biz's deliberative processes.

5. Meta does not agree with GO-Biz's contentions or GO-Biz's suggestions that GO-Biz's selective quotations of the RTC or the Government Code are an accurate statement of the law. Meta nevertheless has narrowed its request for production from GO-Biz. Specifically, Meta requested that GO–Biz produce all documents relating to any incentives considered or provided to any social media company, including without limitation (1) the California Competes Tax Credit provided to Snap; (2) the California Competes Grant provided to Snap; (3) any social media company whose request for any tax credit or grant was declined; and (4) all documents concerning the decision-making for the foregoing (the "Requested Discovery");

6. Meta contends that the discovery is relevant to its defenses in this action, including whether the Plaintiff State of California promoted the use of social media through the provision of incentives to social media companies operating within the State, the reasons for providing such incentives, and why certain social media companies may have been provided such incentives and not others. GO-Biz contends that these statements are overbroad with respect to relevance. Meta and GO-Biz agree to meet and confer, if necessary, over the relevance of particular documents or portions of documents. Meta also has informed GO-Biz of its contention that any confidentiality concerns, including any protections provided in Article 2 of the California Revenue and Tax Code (including with respect to responsive information that Snap

provided to GO-Biz), can be addressed with proper confidentiality designations made pursuant to the Protective Order in this case (ECF 1209);

7. GO-Biz contends that GO-Biz would commit a misdemeanor under section 19542 if it willingly provided Meta with the Requested Discovery utilizing the confidentiality designations under the Protective Order given that section 19542 does not provide any exceptions for limited disclosures. GO-Biz contends that, under State law, GO-Biz cannot provide Meta with the Requested Discovery. GO-Biz will therefore only provide the Requested Discovery over this objection in compliance with a court order.

8. Furthermore, GO-Biz contends that it has already provided Meta with non-protected information demonstrating that the State does not use these programs to promote the use of social media. Specifically, Revenue and Taxation Code section 23689 identifies the criteria that GO-Biz must use to evaluate applications for the California Competes Tax Credit, and those criteria evaluate whether the applicant would create good-paying jobs with generous benefits and training opportunities for workers in high poverty and low-income regions. The criteria do not mention social media, nor do they favor any particular kind of business or industry. Furthermore, in the twelve-year time period encompassed by Meta's request, GO-Biz has awarded one tax credit to one social media company (Snap), out of the 1,201 businesses receiving tax credits. See https://business.ca.gov/california-competes-tax-credit/awardee-list/ (identifying businesses). GO-Biz contends that these facts underscore that GO-Biz uses this program to promote jobs, not the use of social media. GO-Biz also contends that the California Competes Grant program, a three-year program that no longer exists, is similar. This program was designed to attract businesses that could not use the tax credit, including start-ups that have no income tax liability because their profits are less than their costs or businesses with other tax credits that would not be able to use a California income tax credit. Successful applicants had to (a) create 500 or more jobs, (b) invest over $10 million, and (c) expand in a high poverty and low-income region. The criteria from section 23689 were then applied. The grant program resulted in only 23 grant agreements, including one grant for a social media company (Snap).

9.      GO-Biz has also informed Meta, in response to questions from Meta, that one other social media company has applied for the California Competes Tax Credit – Social Media Co. 1 – but that application was not successful.

10.     GO-Biz maintains that the publicly available information is sufficient to demonstrate that the State's tax credit and grant programs were not created for the purpose of promoting the use of social media, and have not in fact been used for that purpose.  Accordingly, GO-Biz contends that any interest Meta may have in further document production from GO-Biz is both minimal and outweighed by the State's strong policy prohibiting disclosure set forth in section 19542.

11.     Meta disagrees with GO-Biz's contentions, but in light of GO-Biz's willingness to produce responsive documents pursuant to this so-ordered stipulation, will not belabor the point.  Suffice it to say that, among other things, Meta contends that even if GO-Biz's programs were aimed at promoting job growth, documents discussing whether grants, tax credits, or other incentives should be given to social media companies and why may still be relevant to issues in this case, including whether social media causes teen mental health issues.  Indeed, Meta contends that an internal document that decides to award a social media company such incentives without referring to, or considering the potential existence of, any causal link between social media and teen mental health would seem to undermine the State of California's claim that such a link exists.  GO-Biz disputes these contentions.

12.     GO-Biz and Meta have engaged in ongoing efforts to resolve any disagreements about GO-Biz's responses.  Following those discussions, GO-Biz maintains that it would produce documents only if ordered to do so by the Court, and it enters into this stipulation for the sole purpose of narrowing any production that the Court might order.  Meta has agreed that it would only request such a Court order pursuant to the terms of this Stipulation which ensures that Snap has an opportunity to object to the disclosure of its protected information and that any disclosure is strictly limited in both scope and distribution.

13.     Snap does not take a position on any contention by GO-Biz or Meta in this stipulation, including any contention with respect to Meta's defenses or GO-Biz's legal obligations with respect to Snap's protected information.

14. Meta, GO-Biz, and Snap stipulate and agree as follows, if the Court so orders in response to Meta's request:

   a. GO-Biz shall conduct a reasonable search for all documents relating to any incentives considered or provided to any social media company, including without limitation (1) the California Competes Tax Credit provided to Snap; (2) the California Competes Grant provided to Snap; (3) any social media company whose request for any tax credit or grant was declined; and (4) all documents concerning the decision-making for the foregoing. Such reasonable search shall include searches for documents discussing whether to provide any social media company with incentives (e.g., grant or tax credit applications, internal GO-Biz discussions about whether to grant or deny such applications, the criteria considered or applied, etc.), any benefits of social media companies, and any decision about whether to provide any social media company with incentives.

   b. GO-Biz shall produce all responsive non-privileged documents located pursuant to the search set forth in Paragraph 14(a) above on or before 30 days following the Court's entry of this Stipulation.

   c. All such documents shall be designated "Highly Confidential" pursuant to the Protective Order in this action (ECF 1209), and, except as provided in Paragraph 14(h), Meta shall be the only Receiving Party. For the avoidance of doubt, Meta's status as the Receiving Party shall not impact Meta's ability to disclose or utilize in any manner such documents or the information contained therein in this litigation against any Plaintiff (including California) as permitted under the terms of the Protective Order or any other court order.

   d. GO-Biz shall redact from its production the name and any and all identifying information of any social media company other than Snap in a manner that indicates that information about a social media company was redacted, and identifies by letter or number each different social media company redacted (e.g., "Social Media Co. 1").

6
META AND CALIFORNIA GO-BIZ'S STIPULATION AND [PROPOSED] ORDER REGARDING DOCUMENT PRODUCTION

Such redactions need not be included in any privilege log that may otherwise be provided.

e. GO-Biz shall redact from its production any information that is both protected by the deliberative process privilege and which is not relevant to whether California promoted the use of social media through the provision of incentives to social media companies operating within the State. GO-Biz shall do so in a manner that indicates the redactions were made pursuant to this paragraph. Such redactions need not be included in any privilege log that may otherwise be provided. Meta reserves all rights to challenge GO-Biz's application of such redactions, including (without limitation) the application of the deliberative process privilege to any document.

f. GO-Biz reserves the right to invoke any and all other privileges, including but not limited to the attorney-client or work product privilege, applicable to documents produced pursuant to this stipulation. Except as otherwise provided in this Stipulation, any responsive documents withheld or redacted on the basis of privilege shall be logged in accordance with the Privilege Log Protocol in this case (ECF 740). Meta reserves all rights to challenge GO-Biz's invocation of any privileges.

g. If GO-Biz determines that any document it intends to produce pursuant to the terms of this Stipulation is a document received from Snap, or is a document which contains information received from Snap, that GO-Biz believes is protected under Article 2 of the California Revenue and Tax Code (the "Snap Review Documents"), GO-Biz will provide written notice to the Parties ("Snap Notice") of GO-Biz's intent to produce the Snap Review Documents by the later of (i) the production deadline set forth in Paragraph 14(b) of this Stipulation, or (ii) 15 days after the date GO-Biz provides the Snap Notice. For the avoidance of doubt, the Parties agree that any document that references any grants to Snap actually provided by or contemplated by GO-Biz shall be considered a Snap Review Document. The Parties also agree that the Snap Review

       Documents will be provided to Snap in the manner in which they will ultimately be produced to Meta, without additional redactions or other alterations.

   h. The Snap Notice provided to Snap (but not Meta) shall give Snap access to the Snap Review Documents so that Snap has an opportunity prior to production to review the Snap Review Documents and provide written notice to GO-Biz and Meta of any objections by Snap to the production of the Snap Review Documents ("Snap Objections").

      i. If Snap does not provide Snap Objections on or before 14 days of GO-Biz's provision of the Snap Notice, then GO-Biz shall produce the Snap Review Documents to Meta with any redactions permitted by this Stipulation.

      ii. If Snap does provide Snap Objections on or before 14 days of GO-Biz's provision of the Snap Notice, the Parties shall meet and confer about a potential resolution to the Snap Objections, and apply for judicial relief should no resolution be reached. GO-Biz shall not be required to produce the Snap Review Documents to Meta until such Snap Objections are resolved, either by agreement or court order.

      iii. If, within 14 days of GO-Biz's provision of the Snap Notice, Snap determines that it requires additional time to review the Snap Review Documents, the Parties shall meet and confer about an extension of the allotted period for review.

      iv. For the avoidance of doubt, this subparagraph 14(h) does not impact GO-Biz's document production obligations except with respect to the Snap Review Documents.

   i. All notices required by this Stipulation shall be sent by email to each of the undersigned counsel for each of the Parties, and at the email addresses listed for each counsel. Such notices shall be deemed provided on the date they were sent.

      j.    For the avoidance of doubt, GO-Biz shall have no obligations under the Stipulation unless the Stipulation is so-ordered by the Court. Should the Court decline to enter this Stipulation, Meta shall not seek any additional document discovery from GO-Biz in connection with this action brought by the Plaintiff State of California.

**IT IS SO STIPULATED AND AGREED.**

Respectfully submitted,

DATED: April 14, 2025                            By:  */s/ Margaret R. Prinzing*

                                                  **OLSON REMCHO, LLP**

                                                  Margaret R. Prinzing (CA SBN 209482)
                                                  Kristen Mah Rogers (CA SBN 274672)
                                                  Olson Remcho, LLP
                                                  1901 Harrison Street, Suite 1550
                                                  Oakland, CA 94612
                                                  Phone: (510) 346-6200
                                                  Fax: (510) 574-7061
                                                  Email: mprinzing@olsonremcho.com
                                                  Email: krogers@olsonremcho.com

                                                  *Attorneys for Non-Party the Governor's Office of Business and Economic Development*

                                        By:  */s/ Ashley M. Simonsen*

                                                  **COVINGTON & BURLING LLP**

                                                  Ashley M. Simonsen, SBN 275203
                                                  COVINGTON & BURLING LLP
                                                  1999 Avenue of the Stars
                                                  Los Angeles, CA 90067
                                                  Telephone: (424) 332-4800
                                                  Facsimile: + 1 (424) 332-4749
                                                  Email: asimonsen@cov.com

                                                  Phyllis A. Jones, *pro hac vice*
                                                  Paul W. Schmidt, *pro hac vice*
                                                  COVINGTON & BURLING LLP
                                                  One City Center
                                                  850 Tenth Street, NW
                                                  Washington, DC 20001-4956

Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

By: */s/ Jonathan H. Blavin*

**MUNGER, TOLLES & OLSON LLP**

Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

*Attorneys for Third-Party Snap, Inc.*

**SIGNATURE CERTIFICATION**

Under Civ. L.R. 5-1(h)(3), I, Ashley M. Simonsen, hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: April 14, 2025  /s/ *Ashley M. Simonsen*
Ashley M. Simonsen

*Counsel for Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: April 15, 2025

_____
PETER H. KANG
UNITED STATES MAGISTRATE JUDGE