UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE REGARDING DEPOSITION OF FELICIA CANNON**<br><br>Re: Dkt. 1829 |

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between PI/SD Plaintiff Nualla Mullen ("Mullen") and Defendants regarding the location and scheduling of the deposition of Plaintiff Mullen's witness, Felicia Cannon ("Cannon"), a citizen of the United States who resides in Switzerland. [Dkt. 1829]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

Ordinarily, "the deposition of a party may be noticed wherever the deposing party designates, subject to the Court's power to grant a protective order." *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008). "Once their protection is sought, district courts have wide discretion to establish the time and place of depositions. Courts consider the relative convenience of and hardships to the parties when determining whether there is good cause to grant a protective order." *Id.* (citation omitted).

An individual's preference that their deposition be taken near their residence "is normally respected." *Ameris Bank v. Russack*, No. CV614-002, 2015 WL 4770190, at *2 (S.D. Ga. April 1, 2015) (citing *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010)). "[T]his presumption applies with no less force when [that witness] is domiciled in another country." *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 607 (N.D. Fla. 2019) (quoting *Outsidewall Tire*, 267 F.R.D. at 471). However, such presumption can be overcome where taking the deposition of a witness residing outside of the United States would be illegal under the law of the nation of residence of that witness. Thus, in such situations, courts have the authority to order depositions of foreign witnesses be taken in the United States, away from the witness's country of residence. *See, e.g.*, *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 430 (N.D. Cal. 2008) (ordering four Brazilian-resident witnesses to be deposed in Atlanta, Georgia, where the party seeking to depose the foreign witnesses persuasively argued that there was good cause to hold the deposition in the United States rather than Brazil, because "according to the U.S. Department of State, it apparently

1   is illegal for American lawyers to take depositions in Brazil and they do so at risk of
2   imprisonment").

## **DISCUSSION**

There is no dispute that the deposition of Ms. Cannon falls within the scope of relevance for purposes of discovery in this matter. As Plaintiffs note, "Ms. Cannon, age 20, is Ms. Mullen's first cousin and longtime friend. Ms. Cannon has knowledge of Ms. Mullen's social media addiction and her struggle with anorexia." [Dkt. 1829 at 10]. Ms. Cannon was first identified as a fact witness on Plaintiff Mullen's Plaintiff Fact Sheet, submitted to Defendants on March 28, 2024. *Id.* Plaintiffs state that "Ms. Cannon—a third-party fact witness with relevant information material to the case—has expressed willingness to provide testimony through reasonable, alternative means." *Id.* at 11. Indeed, Ms. Cannon is more than tangentially relevant to this case for purposes of discovery, because, as reported by Defendants without contradiction by Plaintiffs, "Plaintiffs' counsel further indicated that they do intend to call Ms. Cannon as a witness at trial." *Id.* at 7.

The Parties dispute then centers on the location and timing of the deposition of Ms. Cannon. The underlying issue here is that, according to Defendants, Article 271 of the Swiss Criminal Code makes it illegal for non-Swiss counsel to attempt to take a deposition or serve process in Switzerland without legal authorization, which can potentially lead to criminal charges in Switzerland against such counsel. *Id.* at 7-8 & n.2. Defendants argue that the Hague Convention process is complex and takes time (which is limited given the fact discovery cutoff has passed). *Id.* at 8.

Plaintiffs argue that Swiss law would not criminalize the taking of a voluntary deposition by foreign counsel of a witness residing in Switzerland, because Article 271 has been narrowly construed by Swiss authorities to be limited to "egregious encroachments on Swiss sovereignty," such as "service without the intervention of the Swiss authorities." *Id.* at 11 (citing *Laitram Corp. v. Hale*, 438 So. 2d 269, 273 (La. Ct. App. 1983)).

During the meet and confer process, Defendants' counsel proposed either that: (1) Ms. Cannon travel to London (or some other location in Europe) where local law does not forbid or

3

criminalize depositions to be taken in connection with a lawsuit venued in the United States; or (2) Plaintiffs agree not to call Ms. Cannon as a witness at trial. *Id.* at 7. Plaintiffs countered either of four options: (1) Ms. Cannon would sit for a voluntary deposition in Zurich without the need for a subpoena; (2) she would agree to be deposed by video conference (where she would be in Switzerland, but the court reporter and, presumably, the deposing attorney would be physically in the United States); (3) she would agree to a transcribed "interview not under oath" with the stipulation that Defendants may use her interview at trial under Federal Rule of Evidence 801(b)(1)(A) if she testifies at trial inconsistently; or (4) Plaintiffs would waive objection to timeliness and agree to have Ms. Cannon sit for deposition in the United States when she returns (at some unknown time) to the United States prior to trial. *Id.* at 10-11.

Having been unable to work out a negotiated resolution of this dispute, Defendants ask the Court to either order Ms. Cannon to appear for deposition somewhere "outside of Switzerland by April 30, 2025," or, if she is not deposed, order that she be barred from providing testimony at trial due to unfair prejudice under Federal Rule of Evidence 403. *Id.* at 9. Plaintiffs, for their part, ask the Court to order that Ms. Cannon provide testimony under one of the four counterproposals discussed above. *Id.* at 12.

It is apparent from the briefing that able counsel on both sides assumed that this Court's power to issue a deposition subpoena is entirely limited geographically to those persons residing, employed, or regularly transacting business in California. *See* Fed. R. Civ. P. 45(c)(1). It is equally apparent that counsel ignored the Court's authority under Federal Rule of Civil Procedure 45(b)(3), which states that "28 U.S.C. §1783 governs issuing and serving a subpoena directed to a United States national or resident who is in a foreign country." Here, there is no dispute that Ms. Cannon is a United States national who is in a foreign country. *See* Dkt. 1829 ("Ms. Cannon . . . [is] a U.S. citizen who has lived near Zurich, Switzerland[] her entire life"). Thus, the Court finds that she falls within the scope of Rule 45(b)(3) and 28 U.S.C. § 1783.

Section 1783 provides, in relevant part:

> A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States

4


> who is in a foreign country . . . if the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance[.]

28 U.S.C. § 1783(a).

The Ninth Circuit has recognized that the statute gives district courts "the power to issue subpoenas to witnesses outside the United States." *Bacon v. United States*, 449 F.2d 933, 940 (9th Cir. 1971). Accordingly, the Court "may order the issuance of a subpoena requiring the appearance as a witness before it . . . a national or resident of the United States who is in a foreign country" where two conditions are met: (1) the testimony sought "is necessary in the interest of justice;" and (2) "it is not possible to obtain [the] testimony in admissible form without [the witness's] personal appearance." 28 U.S.C. § 1783(a); *MedImmune, LLC v. PDL Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010 WL 2179154, at *1 (N.D. Cal. May 27, 2010). "Whether to issue a subpoena under this statute is left to the sound discretion of the Court." *Johnson v. Bay Area Rapid Trans. Dist.*, No. C-09-0901 EMC, 2014 WL 2514542, at *2 (N.D. Cal. June 4, 2014) (citing *MedImmune*, 2010 WL 2179154, at *1).

Here, the first prong under § 1783(a) is easily satisfied. "Testimony is 'necessary in the interest of justice' if it is relevant under the liberal standards set forth in Federal Rule of Civil Procedure 26(b)." *MedImmune*, 2010 WL 2179154, at *1 (quoting *SEC v. Sabhlok*, No. C 08-4238 CRB (JL), 2009 WL 3561523, at *3 (N.D. Cal. Oct. 30, 2009)). Here, Plaintiffs do not dispute that Ms. Cannon has knowledge of facts relevant to Plaintiff Mullen's claims. The identification of this witness in this Plaintiff's Fact Sheet is a representation that she is a witness believed to possess "the most significant information" concerning Plaintiff Mullen's use of social media and alleged injuries. [Dkt. 1829 at 8]. Indeed, as noted above, Plaintiffs have represented that they intend to call Ms. Cannon as a witness at trial. Further, Ms. Cannon is represented by Plaintiffs' counsel in this matter. *Id.* at 7. Based on the undisputed facts presented, there is a sufficiently compelling showing that Ms. Cannon's deposition would more than meet the liberal standard for discoverability of relevant information under Rule 26.

The second prong under § 1783(a) is also satisfied. Under the second prong of the statute,

5

the Court considers "whether it is 'impractical' to obtain the information sought from the witness—sheer impossibility is not required." *Johnson*, 2014 WL 2514542, at *2 (citing *MedImmune*, 2010 WL 2179154, at *1).  "Impracticality occurs, for example, where resort to alternative methods is unlikely to produce the relevant evidence in time to meet impending discovery deadlines." *MedImmune*, 2010 WL 2179154, at *1 (citation omitted).  Here, there is no indication that Ms. Cannon has testified under oath previously concerning this case, and thus, it does not appear possible to obtain her testimony in admissible form without her personal appearance.  *Cf. Johnson*, 2014 WL 2514542, at *3-4 (denying § 1783 subpoena for overseas witness where that witness was previously deposed in connection with the underlying facts and that testimony under oath was admissible without the witness's personal appearance).  While there is dispute about the reach and application of Article 271 of the Swiss Criminal Code by Swiss governmental authorities, it is at least impractical for Defendants' counsel to risk potential criminal sanctions by attempting to take Ms. Cannon's deposition in Switzerland absent authorization under the Hague Convention (or letters rogatory), procedures which could take months to complete (rendering such procedures further impractical here given the case schedule).

Accordingly, because the statutory requirements are satisfied here, the Court **ORDERS** the issuance of a deposition subpoena directed to Ms. Cannon pursuant to the Court's authority under Federal Rule of Civil Procedure 45(b)(3), 28 U.S.C. §1783(a), and the Court's discretion to manage discovery.  The Court, therefore, **DENIES** Plaintiffs' alternative requests for Ms. Cannon to either sit for a deposition without a subpoena or sit for a transcribed interview not under oath.

The Court next addresses the location of the deposition.  Defendants' request that the Court order Ms. Cannon to appear for deposition in London (or some other location in Europe where a deposition relating to a civil case venued in the United States is allowed by local law, such as Finland, the Netherlands, Belgium, or Spain, all identified as alternative locations by Defendants) is based on practicality and not supported by citation to law.  Similarly, Plaintiffs' request that Ms. Cannon be deposed from Switzerland by videoconference is proposed based on the Parties' meet and confer proposals and is equally unsupported by citation to law.

Section 1783 confers a court with authority to order "issuance of a subpoena requiring the

6

appearance as a witness *before it, or before a person or body designated by it*[.]" (emphasis added). By the statute's express terms, therefore, the Court has the authority to order Ms. Cannon be deposed in this Court (*i.e.*, "before" this Court)—it is not unheard of for witnesses to be deposed at a courthouse. *See, e.g., LaFreniere v. Prada U.S.A. Corp.*, No. C-12-3701-EDL, 2013 WL 3187412, at *3 (N.D. Cal. June 21, 2013). A certified court reporter, who is empowered to administer oaths, is a typical person designated by the Court before whom a witness would appear for deposition. The statute does not place express geographical limits on where the "designated" person must be, and thus, where the deposition could take place.

The Seventh Circuit has held that a district court erred in ordering depositions of German-resident witnesses under § 1783 to take place in New York as a sanction, where the parties in that case had previously agreed that the depositions would take place in Amsterdam. *In re Petition of Boehringer Ingelheim Pharms, Inc.*, 745 F.3d 216, 219-20 (7th Cir. 2014). Because the parties in that case agreed that the depositions could go forward in Amsterdam, the Seventh Circuit reasoned that the testimony was obtainable in admissible form because of that agreement, and thus, that § 1783 did not apply. *Id.* Here, however, the Parties most certainly do *not* agree that Ms. Cannon's deposition can go forward in any location in Europe—Ms. Cannon objects to travelling to London or anywhere else in Europe for deposition, and Defendants object to travelling to Switzerland to take that deposition because of the uncertainty and risks under Swiss law. As noted above, the Court finds that § 1783 *does* apply and has been satisfied here, and thus, *Boehringer Ingelheim* is inapposite (in addition to the fact that it is not controlling law).

Courts analyzing this issue have stressed the importance of a court having proper jurisdiction to enforce its discovery orders and supervise discovery. *Sabhlok*, 2009 WL 3561523, at *5-7. If the deposition of a third-party witness under § 1783 was ordered to take place in London or somewhere else in Europe, there is at least a question as to whether this Court's supervision of or any later enforcement rulings as to that deposition would be considered exercises of this Court's powers in Europe. In *Sabhlok*, the court discussed at length a D.C. Circuit opinion, which recognized that "the first and foremost restriction imposed by international law upon a State is that failing the existence of a permissive rule to the contrary it may not exercise its powers in

7

any form in the territory of another State." *Id*. at *5 (quoting *FTC v. Compagnie De Saint–Gobain–Pont–A–Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980)) (alteration omitted). The *Compagnie* opinion, in turn, relies upon the Restatement (Second) of Foreign Relations Law of the United States at § 7(1) (1965), which states that "[a] state having jurisdiction to prescribe a rule of law does not necessarily have jurisdiction to enforce it in all cases," and provides the following illustration: "X is a national of state A residing in state B.  A has jurisdiction to prescribe a rule subjecting X to punishment if he fails to return to A for military service.  X does not return.  A has no jurisdiction to enforce its rule by action against X in the territory of B." *Id.* at *6 (quoting *Compagnie*, 636 F.2d at 1316-17).

However, it is worth noting that § 7(2) of the Restatement advises that "[a] state does not have jurisdiction to enforce a rule of law prescribed by it unless it had jurisdiction to prescribe the rule."  That provision would appear to militate in favor of a finding of jurisdiction.  Specifically, here Congress has the jurisdiction to "prescribe the rule" by passing § 1783.  The Supreme Court has ruled that the predecessor version of the statute, including the provisions for enforcement of the statute, is constitutional.  *Blackmer v. United States*, 284 U.S. 421, 436-41 (1932).  Under *Blackmer* and § 7(2) of the Restatement, because there is proper jurisdiction to prescribe the rule of § 1783, there is also proper jurisdiction to enforce that rule.  Neither *Sabhlok* nor *Compagnie* address § 7(2) of the Restatement or the express finding by the Supreme Court in *Blackmer* that the enforcement of the predecessor of § 1783 is constitutional.

Accordingly, the Court finds that it would not necessarily lack jurisdiction to supervise or enforce rulings relating to a § 1783 deposition ordered to take place overseas, though the Court recognizes that there is at least a basis to consider whether such jurisdiction would be proper.  As *Sabhlok* recognized, "even where such jurisdictional issues are not squarely at issue, the Court should ensure that it can feasibly supervise ordered discovery." 2009 WL 3561523, at *6. Assuming the Court ordered that the deposition of Ms. Cannon take place in London (or one of the other locations in Europe) the time difference between California and Europe would make the Court's supervision of that deposition impractical and infeasible (should real-time judicial intervention be necessary).  *Id.* at *7 ("[T]he Court rejects counsel's proffer at the hearing that his

8

client would be willing to submit to the Court's guidance should issues arise during his deposition if it were taken in Hong Kong. The nine-hour time difference alone makes such a contention disingenuous at best, with all due respect."). Thus, this judicial oversight issue further informs the location of deposition issue.

Accordingly, for all of the reasons discussed herein, the Court exercises its discretion and **ORDERS** that the deposition of Ms. Cannon **SHALL** take place at a mutually agreeable location in the United States. If Ms. Cannon and the Parties are unable to agree on a location, then the deposition **SHALL** take place at the San Francisco courthouse, located at 450 Golden Gate Ave. in San Francisco, California. The Court **DENIES** Defendants' request that the deposition be ordered to take place in London or some other location in Europe. The Court **DENIES** Plaintiffs' request that the deposition take place by videoconference where the witness would be in Switzerland, and for this additional reason, **DENIES** Plaintiffs' request that the deposition take place in Zurich without the need for a subpoena.

The final issue in dispute is the timing of the deposition. Defendants request that the deposition be ordered to take place by April 30, 2025. [Dkt. 1829 at 9]. Plaintiffs request that, if the deposition takes place in the United States, that it be taken at a later date immediately before trial when Ms. Cannon would be scheduled to travel to the United States. *Id.* at 11. In the exercise of its discretion and inherent authority to manage discovery, the Court finds neither proposal to be proportional to the needs of the case. As a practical matter, it is highly questionable whether travel could be arranged and the deposition taken by April 30, 2025. And as a matter of rational pre-trial case and discovery management, it makes little sense to delay this deposition until potentially the eve of trial. The Court notes that Plaintiffs have not identified any specific date or range of dates when Ms. Cannon would be scheduled to travel to the United States, and Defendants indicate that during the meet and confers it appeared that the travel dates could be on the eve of trial in this matter. *Id.* at 9. As Defendants point out, bellwether trial selection will take place long before trial in this matter, and completing this deposition earlier than the eve of trial makes sense in light of the pretrial preparations needed.

Accordingly, the Court **ORDERS** that the deposition of Ms. Cannon **SHALL** take place

on a mutually agreeable date on or before **June 6, 2025**. The Parties have reached agreements to conduct certain limited "clean up" fact discovery after the official fact discovery cut-off date, and the Parties here do not dispute whether Ms. Cannon should be deposed—both sides have proposed different approaches for the timing and location of that deposition. The Court **DENIES** Plaintiffs' request for Ms. Cannon's deposition to be taken at a (as yet unknown) date which could be up to the eve of trial.

Next, the Court notes that the statute requires the party seeking to take the deposition to tender the estimated travel and attendance expenses to the witness. 28 U.S.C. § 1783(b). Accordingly, the Court **ORDERS** Defendants to tender those expenses to Ms. Cannon without undue delay. Because of the admitted inconvenience of long-distance international travel and the relatively short amount of time for travel arrangements to be made, the Court admonishes Defendants to make allowance for expenses for the witness to travel with enough reasonable time in advance of the deposition to prepare and adjust to the time difference. Further, if the Parties fail to agree on a location for the deposition such that it will take place at the San Francisco courthouse (as opposed to a location on the East Coast, which is closer to Europe), the Court advises that reasonable travel in such circumstances could include business class air fare for the witness. In the meet and confers to regarding logistical arrangements for this deposition, the Court advises counsel for all Parties to take heed of Rule 45's admonition to avoid undue burden for non-party witnesses. Fed. R. Civ. P. 45(d)(3)(A)(iv).

Finally, as noted, § 1783 sets forth the specific requirements and authorizations for this Court to resolve this dispute. However, to be clear, nothing in this Order prevents the Parties from negotiating and reaching an agreement on Ms. Cannon's voluntarily sitting for deposition at a different location, or for splitting costs of travel and attendance differently than as ordered. *See, e.g.*, *Ameris*, 2015 WL 4770190, at *2 (S.D. Ga. April 1, 2015) ("[T]he parties may elect to share the costs of a video conferenced deposition."); *cf. Casimir-Chery v. JTI (US) Holding Inc.*, No. 20-CV-62568-BLOOM/VALLE, 2021 WL 2290680, at *1 (S.D. Fla. June 3, 2021) ("Swiss law does not preclude *voluntary* discovery where a party would be subject only to procedural consequences rather than criminal sanctions."). If, in light of this Order, the Parties opt to negotiate different,

mutually agreeable terms for the location or other logistics for the deposition of Ms. Cannon, they **SHALL** submit a stipulation and proposed order promptly. However, in no event shall the Parties reschedule the deposition at such a late date that would create serious scheduling issues for bellwether trial selection or other pretrial proceedings.

The Court is mindful of the current schedule for the case, and the concomitant need for the Parties to finish fact discovery timely in order to move on to expert discovery and pre-trial readiness preparations. Accordingly, the Court **ORDERS** counsel for the Parties to meet and confer by videoconference to negotiate reasonably and in good faith regarding the location, date, logistics, and estimated expenses for the deposition of Ms. Cannon. This meet and confer process **SHALL** be completed by **May 2, 2025**.

If this meet and confer process does not result in an agreed-upon date and location for the deposition, then the Court **ORDERS** all counsel for the Parties who were involved in the videoconference meet and confers to report to Courtroom F on the 15th Floor of the San Francisco courthouse on **May 5, 2025 at 9:00 a.m.** to complete the meet and confer process in-person. No remote appearance will be granted.

If, for some reason counsel are incapable of reaching agreement on the logistics for this deposition at the May 5, 2025 in-person meet and confer, then the Court **ORDERS** lead trial counsel for each of the Defendants and lead trial counsel for Plaintiffs to report to Courtroom F on the 15th Floor of the San Francisco courthouse on **May 6, 2025 at 9:00 a.m.** to complete the meet and confer process in-person. No other attorneys, other than the lead trial counsel, shall attend this meet and confer, and no remote appearances for any lead trial counsel will be granted.

For clarity, because the Court is ordering the deposition of Ms. Cannon to go forward, Defendants' alternative request to bar testimony from Ms. Cannon at trial is **DENIED AS MOOT**. Further, nothing in this Order is intended to address any objections to or issues concerning Ms. Cannon's testimony properly presented to Judge Gonzalez Rogers in connection

1  with any later proceedings in this matter.

2      This **RESOLVES** Dkt. 1829.

3  **IT IS SO ORDERED.**

4  Dated: April 22, 2025

_____
PETER H. KANG
United States Magistrate Judge