UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Filing Relates to: <br><br> *All Actions* | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR-PHK <br><br> **JOINT LETTER BRIEF REGARDING DISCOVERY DISPUTE OVER SARAH WYNN-WILLIAMS'S DEPOSITION** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and Plaintiffs respectfully submit this letter brief regarding disputes over the deposition of Sarah Wynn-Williams.

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by teleconference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via teleconference. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated: April 30, 2025

                                                                        Respectfully submitted,

                                                                        **COVINGTON & BURLING LLP**

                                                                        */s/ Ashley M. Simonsen*
                                                                        Ashley M. Simonsen (State Bar. No. 275203)
                                                                        COVINGTON & BURLING LLP
                                                                        1999 Avenue of the Stars
                                                                        Los Angeles, CA 90067
                                                                        Telephone: + 1 (424) 332-4800
                                                                        Email: asimonsen@cov.com

                                                                        Paul W. Schmidt, *pro hac vice*
                                                                        COVINGTON & BURLING LLP
                                                                        The New York Times Building

620 Eighth Avenue
New York, NY 10018-1405
Telephone: + 1 (212) 841-1262
Facsimile: + 1 (202) 662-6291
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel and Ombudsperson

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

ELLYN HURD
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 212-257-8482
ehurd@simmonsfirm.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

AELISH M. BAIG
**ROBBINS GELLER RUDMAN & DOWD LLP**
1 MONTGOMERY STREET, #1800
SAN FRANCISCO, CA 94104
Telephone: 415-288-4545
AelishB@rgrd.com

PAIGE BOLDT
**ANAPOL WEISS**
130 N. 18TH STREET, #1600
PHILADELPHIA, PA 19103
Telephone: 215-929-8822
pboldt@anapolweiss.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

FELICIA CRAICK
**KELLER ROHRBACK LLP**
1201 THIRD AVENUE, SUITE 3400
SEATTLE< WA 98101
Telephone: 206-623-1900
fcraick@kellerrohrback.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-600-6725
semery@justicestartshere.com

KIRK GOZA
**GOZA HONNOLD**
9500 NALL AVE. #400
OVERLAND PARK, KS 66207
Telephone: 913-412-2964
Kgoza @gohonlaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KT 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

MATTHEW P. LEGG
**BROCKSTEDT MANDALAS FEDERICO, LLC**
2850 QUARRY LAKE DRIVE, SUITE 220
BALTIMORE, MD 21209
Telephone: 410-421-7777
mlegg@lawbmf.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212-213-8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaison

*Attorneys for PI/SD Plaintiffs*


**PHILIP J. WEISER**
Attorney General
State of Colorado

 */s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

7

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*


**ROB BONTA**
Attorney General
State of California

 */s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),

*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey
Attorney General and the New Jersey
Division of Consumer Affairs Matthew J.
Platkin, Attorney General for the State of
New Jersey, and Cari Fais, Director of the
New Jersey Division of Consumer Affairs*

**Meta's Position**: The Court should quash Plaintiffs' deposition subpoena for Sarah Wynn-Williams. Plaintiffs noticed her deposition on March 12, less than a month before the April 4, 2025 close of fact discovery. The Court allowed her deposition out-of-time if Ms. Wynn-Williams accepted service of the subpoena and "voluntarily appears," but ruled that if Ms. Wynn-Williams "is unwilling to sit for the deposition or if she's going to object to the subpoena or insist on Hague Convention or international discovery procedures, it's too late," and that "the deposition will not go forward." Transcript of March 20, 2025 DMC at 73:3-15, 17-18.

Following the DMC, Plaintiffs informed Meta that Ms. Wynn-Williams's counsel had accepted service on her behalf. Meta then attempted to serve Ms. Wynn-Williams with a subpoena requesting a limited set of documents relating solely to the chapter in Ms. Wynn-Williams's book to which the deposition is limited. In response, Ms. Wynn-Williams's counsel refused to accept service of Meta's subpoena and refused to confirm to Meta whether Ms. Wynn-Williams had accepted service from Plaintiffs. And he has refused to provide any potential dates for her deposition to either party. Under these facts, Ms. Wynn-Williams's deposition should not be permitted to proceed for two reasons.

*First*, Ms. Wynn-Williams's selective acceptance of only Plaintiffs'—but not Meta's—subpoena does not meet the requirements set out by the Court for this deposition to proceed. As the Court made clear, Ms. Wynn-Williams's deposition proceeding after the discovery period had closed was conditioned on her voluntarily appearing and not objecting to subpoenas. Transcript of March 20, 2025 DMC at 73:3-15. Accepting service of only one party's subpoena while refusing to accept service of another party's subpoena—and refusing even to confirm that service of the other party's subpoena was accepted—is not "voluntary," and it violates fundamental fairness.[1] Because Ms. Wynn-Williams is a U.K. resident, and because her counsel refuses to accept service of Meta's subpoena, Meta will be forced to go through the Hague to effect service, a lengthy and onerous process. The discovery period has already closed, and, as the Court stressed, it is "too late" for "any involvement with the Hague Convention or international discovery procedures." Transcript of March 20, 2025 DMC at 73:3-15.

Further, to have Ms. Wynn-Williams's deposition proceed before Meta can obtain the requested documents would be unfairly prejudicial to Meta. Plaintiffs' explanation for seeking Ms. Wynn-Williams's deposition out of time is that Plaintiffs want to question Ms. Wynn-Williams on Chapter 44 of her recent memoir, which discusses an alleged advertising issue in 2017 in Australia. *See* ECF No. 1781 at 10; Transcript of March 20, 2025 DMC at 70:17-18. Accordingly, Meta's targeted document subpoena seeks only Ms. Wynn-Williams's documents related to that chapter: (1) documents she "relied upon or consulted in any way in drafting Chapter 44"; (2) documents "relating in any way to the allegations made in Chapter 44" and (3) "Communications You have had relating in any way to Chapter 44."[2] In Chapter 44, Ms. Wynn-Williams makes detailed reference to events that purportedly occurred 8 years ago, including providing direct quotes from

---

[1] Tellingly, Plaintiffs did not serve a subpoena for documents that would substantiate Ms. Wynn-Williams's claims.

[2] Meta proposed attaching the subpoena, which is a "specifically disputed discovery request or material," Standing Order § H(3), but Plaintiffs objected. Meta can provide the subpoena to the Court if useful.

1

unsourced documents. Meta's request for documents is thus justified and necessary to discover the factual basis for Ms. Wynn-Williams's claims in Chapter 44 and, contrary to Plaintiffs' likely response, are not otherwise within Meta's control. And it is only because of Plaintiffs' late noticing of Ms. Wynn-Williams's deposition that Meta does not have time to go through the Hague process and obtain these documents.

***Second***, the parties still have no proposed dates—or even a general time frame, such as whether it would occur in the coming months—for when Ms. Wynn-Williams's deposition might conceivably take place. Ms. Wynn-Williams's deposition is already set to take place well outside the close of discovery, while the parties are already engaging in the next stages of discovery. The parties have no certainty as to when, or even whether, it will actually take place, yet must devote resources to preparing for a tangential, third-party deposition that may not occur and for which Ms. Wynn-Williams has refused to accept service. Given the lack of any proposed dates, and the fact that the discovery period has already closed, no further deposition should be permitted.

**Plaintiffs' Position**: At the March 2025 discovery management conference, this Court—over Meta's objection—ruled that Plaintiffs' deposition of former Meta employee Sarah Wynn-Williams could proceed. The Court found that Plaintiffs had established "a sufficient basis" to seek her testimony and concluded that the deposition would go forward as long as Ms. Wynn-Williams "agrees to sit" for it. 3/20/25 DMC Tr. at 73. Meta, unsatisfied with this ruling, now seeks another bite at the apple when it comes to avoiding the testimony of its former employee. That Ms. Wynn-Williams has not yet provided a deposition date or accepted service of Meta's document subpoena is irrelevant to whether she can sit for a deposition. The Court should reject Meta's continued efforts to silence Ms. Wynn-Williams.

***Meta can show no prejudice from the fact that Ms. Wynn-Williams' deposition has not yet been scheduled***. Plaintiffs first became aware of Ms. Wynn-Williams' relevance to this case on March 11, 2025, when she published her memoir *Careless People: A Cautionary Tale of Power, Greed, and Lost Idealism*. As discussed in Plaintiffs' prior briefing, Ms. Wynn-Williams' book contains a chapter entitled "Emotional Targeting" in which she describes how Meta "commercializes and exploits [its] youngest users" and uses its teenage users' data "to target young people when they're vulnerable." ECF No. 1781 at 1. Since that time, Ms. Wynn-Williams has dealt with arbitration proceedings brought against her by Meta. She also testified before the U.S. Senate Judiciary Committee's Subcommittee on Crime and Counterterrorism.

Any delay in scheduling Ms. Wynn-Williams' deposition is Meta's own doing, from which it should not be allowed to benefit. Ms. Wynn-Williams has expressed trepidation about giving testimony in this case due to the "legal gag order" Meta has sought to impose on its former employee through arbitration proceedings.[3] As noted during Ms. Wynn-Williams' Senate testimony, Meta wants to force Ms. Wynn-Williams to pay "$50,000 in liquidated damages for

---

[3] *See A Time for Truth: Oversight of Meta's Foreign Relations and Representations to the United States Congress: Hearing Before the Subcomm. on Crime & Counterterrorism, S. Comm. on the Judiciary*, 119th Cong. (Apr. 9, 2025) (statement of Sarah Wynn-Williams), https://www.techpolicy.press/transcript-former-exec-sarah-wynnwilliams-testifies-on-facebooks-courtship-of-china/.

each so-called disparaging comment, true comment, which they regard as unfavorable to them even when [she] tell[s] the truth about their misconduct."[4] Meta cannot scare its former employee into silence, and then use her silence as grounds for reconsideration of the Court's previous order. If and when Ms. Wynn-Williams is willing to provide her testimony, Plaintiffs stand ready to take it—full stop.

Furthermore, Meta can show no prejudice from the fact that Ms. Wynn-Williams' deposition has not yet been scheduled. There are three other Meta fact witnesses—including Meta 30(b)(6) deponents—whose depositions have not yet occurred, and summary judgment briefing and witness list exchanges do not occur until the fall. Also, as explained on the record, Plaintiffs do not "anticipat[e] it being a long deposition." 3/20/25 DMC Tr. at 75. That is because Ms. Wynn-Williams is not a custodian, Meta has not produced but a few documents that mention her, Meta's counsel does not represent her so will not have to spend time preparing her, and her testimony will focus on facts relevant to the brief "Emotional Targeting" chapter from her book.

The Court should put an end to Meta's sideshow and let the deposition of Ms. Wynn-Williams proceed, if and when it is scheduled at an agreeable time for the witness.

***Meta's subpoena-related dispute cannot prevent Ms. Wynn-Williams' deposition***. Meta says that even though Ms. Wynn-Williams accepted service of Plaintiffs' deposition subpoena, the Court should prevent her deposition until she also accepts service of Meta's document subpoena, which the company sent to her on March 25, 2025.[5] That dispute is irrelevant to her deposition. Plaintiffs' counsel does not represent Ms. Wynn-Williams, and thus have no control over whether and how she responds to Meta's subpoena. Meta should not be allowed to interpose its own, separate dispute with Ms. Wynn-Williams in an effort to derail her deposition.

Additionally, Meta is suffering no prejudice from Ms. Wynn-Williams' not having accepted service of its document subpoena. Ms. Wynn-Williams is a former Meta employee who worked at the company for the entirety of the period described in her "Emotional Targeting" chapter. Therefore, Meta presumably already has possession, custody, or control over documents relating to the relevant allegations in her book. Given that, Meta's document requests appear calculated to harass Ms. Wynn-Williams and delay her deposition, rather than seek information necessary for the company to prepare.

Finally, Meta's arguments do not address the core concern this Court already noted: "if the depositions are going forward anyway . . . as a practical matter, why object?" 3/20/25 DMC Tr. at 69. Regardless of Meta's scheduling quibbles, if Ms. Wynn-Williams is willing to sit for the deposition, the State AGs who are not litigating in the MDL will get to participate. There is still no reason to preclude the MDL Plaintiffs' participation, if so.

---

[4] *Id.* (statement of Sen. Richard Blumenthal); *see id.* (discussion between Ms. Wynn-Williams and Sen. Blumenthal regarding Meta's warning that she could be forced to pay $50,000 each time anybody, including legislators or aides, publicly repeats one of her true statements).

[5] Plaintiffs note that Meta did not transmit its subpoena until nearly two weeks after Plaintiffs first declared their intention to depose Ms. Wynn-Williams, and five days after the DMC.

**Meta's Reply:** Meta seeks to enforce the Court's ruling that Ms. Wynn-Williams's late-noticed deposition could proceed after the close of discovery only if she voluntarily appeared and did not object to subpoenas. 3/20/25 DMC Tr. at 73:3-15, 17-18. Thus, it is not "irrelevant," as Plaintiffs claim, that Ms. Wynn-Williams has selectively refused to accept service of Meta's subpoena, and that she has declined to provide any deposition date or even indicate a general timeframe in which the deposition might occur. To the contrary, Ms. Wynn-Williams's refusal to accept service of Meta's subpoena or to provide any deposition date violates the requirements set out by the Court for this deposition to proceed.[6]

Nor is Ms. Wynn-Williams's refusal to provide a deposition date somehow "Meta's own doing," or the result of a "legal gag order," as Plaintiffs wrongly claim. Ms. Wynn-Williams's severance agreement states that the non-disparagement clause does not cover testimony given truthfully under oath or required by other legal proceeding. And Meta has never asserted that the agreement prevents Ms. Wynn-Williams from giving truthful testimony under oath, whether that be to Congress or as a part of this litigation. The fact that Ms. Wynn-Williams accepted Plaintiffs' subpoena in this case while arbitration was ongoing only further refutes the claim of a "legal gag order" that would prevent her participation in a deposition.

Likewise, Plaintiffs cannot merely wave away the fact that Ms. Wynn-Williams has selectively refused to accept service of only *Meta's* document subpoena. As Plaintiffs note, their deposition is limited to a single chapter in her book that makes various factual claims, including purporting to quote documents. As a matter of fairness, Meta is entitled to learn the basis Ms. Wynn-Williams has for that chapter, and its subpoena is limited to documents relating to that chapter. This is not a broad request "to harass . . . and delay" but rather a narrow and targeted request for documents Plaintiffs have put at issue and which Meta may not have or be able to readily identify.

Plaintiffs say they "have no control over whether and how she responds to Meta's subpoena," but that is precisely the point: that is why the Court's order was conditioned on Ms. Wynn-Williams's acceptance being voluntary, and not contingent on gamesmanship her counsel might undertake. Meta, too, has no control over whether and how Ms. Wynn-Williams responds to Meta's subpoena, absent going through the time-consuming Hague process. It is fundamentally unfair to Meta, and inconsistent with the Court's truth-seeking function, for this deposition to proceed while the witness selectively accepts one party's subpoena but not the other's.

Finally, Plaintiffs' argument that the deposition is "going forward anyway" in state-court AG cases is incorrect. Meta is aware of only one state-court AG who has purported to serve a subpoena on the witness (the Tennessee AG), and the discovery period in that case is now closed.

**Plaintiffs' Reply**: Meta rests its objection to Ms. Wynn-Williams' deposition almost entirely on a misrepresentation of the record of this dispute. It says: "Ms. Wynn-Williams' deposition proceeding after the discovery period had closed was conditioned on her voluntarily appearing and not objecting to **subpoenas**." *Supra* at 1 (emphasis added). That is incorrect. The Court held that

---

[6] This delay prejudices Meta. Discovery deadlines exist so that the parties can dedicate their attention and resources to the next phase of the case. That phase is upon the parties, with expert discovery now underway in the JCCP and starting shortly in the MDL.

4

Ms. Wynn-Williams' deposition can proceed as long as she does not object to **Plaintiffs' deposition subpoena**. 3/20/25 DMC Tr. at 73 (noting that the deposition should not proceed "if she is unwilling to sit for the deposition or if she's going to object to **the subpoena**" (emphasis added)). Ms. Wynn-Williams accepted service of the deposition subpoena, *id.* at 81, so that barrier to her testimony no longer exists.

Indeed, the Court could not have conditioned Ms. Wynn-Williams' deposition on her acceptance of Meta's document subpoena given that Meta's subpoena did not exist and never came up during the DMC.[7] As Plaintiffs noted above, the DMC occurred on March 20, but Meta did not transmit its subpoena to Ms. Wynn-Williams until March 25. Meta's counsel also did not mention the forthcoming document subpoena once during the hearing. Given this, the Court can reject out of hand Meta's implausible conjecture that the Court conditioned Ms. Wynn-Williams' deposition on her acceptance of future hypothetical subpoenas.

Meta's claims of prejudice also do not pass muster. It says it needs access to documents Ms. Wynn-Williams quotes in her "Emotional Targeting" chapter. Left unsaid is the fact that the quotes at issue apparently came from internal Meta documents and communications, to which Meta should already have access. Curiously, Meta faults Plaintiffs for not "serv[ing] a subpoena for documents that would substantiate Ms. Wynn-Williams's claims." *Supra* note 1. Plaintiffs are unaware of any requirement in the Federal Rules of Civil Procedure that they serve a witness with a document subpoena before taking her deposition, nor have they done so with any prior former Meta employee witnesses.

Finally, Meta complains it will have to "devote resources to preparing for a tangential, third-party deposition." *Supra* at 2. The Court already rejected Meta's argument about the relevance of Ms. Wynn-Williams' testimony when it granted Plaintiffs' request to take her deposition. 3/20/25 DMC Tr. at 73 ("[A]s to Ms. Williams, I think there has been a sufficient basis, assuming she agrees and agrees to sit."). Meta could remove the uncertainty about the timing of her deposition by withdrawing its arbitration proceeding against her. But Meta is more than happy to continue the pressure campaign against its former employee while running out the clock on her testimony. The Court should not countenance such tactics.

---

[7] Plaintiffs objected to Meta's attachment of the document subpoena, which is not "specifically disputed" in this Joint Letter Brief. *Cf.* Standing Order for Discovery in Civil Cases § H.3.

5

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: April 30, 2025

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen