# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR (PHK)<br><br>**ORDER RE PRIVILEGE ASSERTION RE TWO DOCUMENTS CLAWED BACK BY PLAINTIFF JESSICA SMITH**<br><br>Re: Dkts. 1751, 1761<br><br>**FILED UNDER SEAL** |

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between Plaintiff Jessica Smith ("Plaintiff Jessica"—to distinguish her from her daughter and co-Plaintiff Leslie Smith) and Defendants regarding two documents Plaintiff Jessica has clawed back and withheld from discovery based on an assertion of the therapist-patient privilege. [Dkt. 1751]. During discovery, Plaintiff Jessica produced two documents reflecting communications with her therapist, and then later clawed them back after asserting applicability of the privilege. The Court previously resolved the Parties' dispute as to (i) whether the Court should conduct an *in camera* review of these two disputed documents, and (ii) whether the Court should allow further briefing which discusses the contents of those documents. [Dkt. 1759]. In light of that Order, the Parties submitted supplemental briefing, along with supporting exhibits (including the two documents at issue and excerpts of Plaintiff Jessica's deposition transcript). [Dkt. 1761]. The Court finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

1  **LEGAL STANDARDS**

2  A party seeking discovery bears the burden of establishing that its request satisfies the relevancy and proportionality requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Whether to conduct an *in camera* review of allegedly privileged documents is an issue of federal law and procedure. *See Young v. Safeco Ins. Co. of Am.*, No. 20-CV01816-LK, 2022 WL 1061940, at *2 (W.D. Wash. Apr. 8, 2022) ("Federal law, which governs the procedural aspects of this case, rests the determination of when to conduct in camera review in the sound discretion of the court."); *Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHXDWL, 2020 WL 5846606, at *1 n.1 (D. Ariz. Oct. 1, 2020) ("Although state law determines the scope of [] privilege . . . in diversity actions, federal law governs here because the propriety of in camera review is a procedural matter.") (internal citation omitted).

As an initial matter, long ago the United States Supreme Court concluded that "no express

2

provision of the Federal Rules of Evidence bars such use of *in camera* review, and that it would be unwise to prohibit it in all instances as a matter of federal common law." *United States v. Zolin*, 491 U.S. 554, 565 (1989). The "practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection" is "well established in the federal courts." *Id.* at 569 (citation omitted). Indeed, as noted by Defendants, this Court has previously conducted *in camera* review of documents to resolve privilege disputes in this MDL without objection from any party. *See, e.g.*, Dkts. 1547, 1620. "*In camera* review does not destroy the privileged nature of the contested communications[.]" *Zolin*, 491 U.S. at 569.

*Zolin* sets forth the standard required to show that an *in camera* review is appropriate. First, the party seeking *in camera* review must make an initial showing of "a factual basis adequate to support a good faith belief by a reasonable person" that the materials at issue are being improperly withheld as privileged. *Id.* at 572. Although this "evidentiary threshold" is "relatively minimal," it "must first be met by the party requesting review before the court may exercise its discretion." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). The threshold showing "may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Zolin*, 491 U.S. at 575.

Once that threshold showing is made, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* at 572. "The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.*

The Parties agree that Illinois law is the source for the assertion of the privilege at issue here. *See* 740 ILCS 110/10(a) ("Except as provided herein, in any civil . . . proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications."). The Illinois Supreme Court "has recognized, the therapist-recipient

3

Case 4:22-md-03047-YGR    Document 1881 *SEALED*    Filed 06/04/25    Page 14 of 13

1  privilege, like other privileges, is not absolute." *D.C. v. S.A.*, 687 N.E.2d 1032, 1041 (Ill. 1997)
2  (collecting cases). In *D.C.*, the Illinois Supreme Court recognized an exception to the therapist-
3  patient privilege, referred to as the "fundamental fairness" doctrine. *Id.* at 1040-41. This
4  fundamental fairness exception to the privilege applies where the allegedly privileged materials at
5  issue "may be entirely decisive of defendants' liability, that it is relevant, probative, admissible,
6  not obtainable elsewhere, not unduly prejudicial, and the interests favoring disclosure outweigh
7  protection of the therapist-recipient relationship[.]" *Id.* at 1041.

## ANALYSIS

### A. Defendants Have Established Sufficient Cause for the Court to Conduct *In Camera* Review of and Receive Substantive Briefing on the Two Documents at Issue.

Defendants request that the Court conduct an *in camera* review of the two documents at issue in order to evaluate whether the fundamental fairness doctrine applies, so as to allow the Court to determine whether Plaintiff Jessica's privilege objection to disclosure should be sustained. [Dkt. 1751 at 11]. As an initial matter, Plaintiff Jessica argues that Defendants have not established sufficient cause for the Court to conduct *in camera* review and further objects to briefing which discusses the substance of the two documents. *Id.* at 15-16.

Under *Zolin*, Defendants are required to make a threshold showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the fundamental fairness exception to the therapist-patient privilege applies here. 491 U.S. at 572. As summarized by Defendants, Plaintiff Jessica "asserts her own claim for 'medical expenses' that is derivative of Leslie Smith's claims and requires Jessica Smith 'to successfully establish an underlying claim.'" [Dkt. 1751 at 12]. Defendants argue that Plaintiff Jessica must therefore "show that Defendants' platforms caused [her daughter] Leslie Smith's alleged injuries and, as a result, her own alleged injuries." *Id.* They argue that "[t]he two documents at issue are potentially dispositive of these claims, including alternative causation." *Id.* They further argue that the documents "carry the potential to refute causation of Plaintiffs' claims, and, at a minimum, reinforce Defendants' contributory negligence defense." *Id.* Because the documents have been clawed back, Defendants' arguments are based

4

1   on their recollection of the two documents. *Id.* at 11 n.2.

2   As noted, Defendants have lodged excerpts of Plaintiff Jessica's deposition transcript,
3   which Defendants argue contradicts the information contained in the two documents. *See* Dkts.
4   1761-4, 1761-5. Plaintiff Jessica does not object to the submission of this deposition testimony.
5   *See* Dkt. 1761-1 at 11. Defendants argue that the deposition testimony makes clear that there is no
6   other source of information contained in the two disputed documents, because at deposition
7   Plaintiff Jessica testified under oath in a manner which contradicts statements contained in the two
8   disputed documents. *Id.* at 12.

9   In this case, co-Plaintiff Leslie Smith seeks damages for harms resulting from depression,
10  anxiety, various eating disorders, suicidal behavior, a sleep disorder, significant constipation, and
11  social media addiction. *Id.* at 12 n.1. In the excerpts of her deposition testimony, Plaintiff Jessica
12  denied acknowledging that "████████████████████████████████████████
13  ████████████████████." [Dkt. 1761-4 at 11]. Additionally, Plaintiff Jessica testified that she
14  did not recall "████████████████████████████████████████████████."
15  [Dkt. 1761-5 at 4]. Further, Plaintiff Jessica testified that she did not recall "████████
16  ████████████████████████████████," and did not recall "████████
17  ████████████████████████████████████████████████████████████
18  ████." *Id.*

19  Defendants argue, based on their counsel's recollection of the two documents at issue, that
20  the documents here would be the only known source of information that can disprove Plaintiff
21  Jessica's testimony in which she denied the following: that she "████████████████
22  ████████████████████████████████████████████████████;" that
23  "████████████████████████;" that "████████████████████████
24  ████████████████;'" and that ████████████████████████████" [Dkt. 1761-
25  1 at 12 (alterations in original)]. Defendants argue that these two documents "may be entirely
26  decisive" of liability (both as to Leslie's claim and as to Jessica's derivative claim) based on
27  alternative causation, and may allow a jury to find for Defendants on their contributory negligence
28  defense under Illinois law. *Id.* (citing 735 I.L.C.S. § 5/2-1116); *see also* Dkt. 1751 at 12.

5

1    Based on the Court's review of the relevant factors and in light of the totality of the circumstances presented here, the Court finds that Defendants have made a sufficient showing to warrant *in camera* review of the two documents at issue. First, the volume of documents is very small. Second, Defendants have shown from the deposition testimony that the two documents are of sufficient relevance to the case, because the documents allegedly contradict Plaintiff Jessica's testimony on causation (and the most rational way for the Court to resolve that issue is to examine the documents *in camera*). Finally, as discussed below, the Court finds that the *in camera* review, together with other available evidence before the Court, will establish whether or not the fundamental fairness exception does apply. *Zolin*, 491 U.S. at 572. Further, because the standard for holding *in camera* review is not stringent and does not require rigid independent evidence, *id.* at 572-74, the Court exercises its discretion and concludes that Defendants' showing here meets that non-stringent standard to support a request for *in camera* review.

The Court accordingly **OVERRULES** Plaintiff's objections to the *in camera* review and to the briefing which discusses the substance of the two documents at issue. "[D]isclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege." *Id.* at 568.

Having resolved this threshold issue, the Court proceeds to analyze—using all materials submitted by the Parties (including copies of the two documents at issue and excerpts of Plaintiff Jessica's deposition transcript)—the substance of the dispute here: whether the documents are properly clawed back and withheld as privileged. As discussed below, the Court has conducted the *in camera* review (and reviewed all other materials submitted) to reach a determination as to whether the fundamental fairness exception to the therapist-patient privilege applies in this case.

**B. The Fundamental Fairness Exception to the Therapist-Patient Privilege**

Defendants argue that the two documents at issue should be ordered produced in discovery under the fundamental fairness exception to the therapist-patient privilege under Illinois law. [Dkt. 1751 at 11-12; Dkt. 1761-1 at 12]. Plaintiff Jessica argues that the documents are, at best, relevant to the alternative causation issue and not truly exculpatory. [Dkt. 1751 at 15; Dkt. 1761-1 at 11]. She argues that the law does not allow circumventing the privilege merely because

6

1 documents might be helpful to the defense case. [Dkt. 1761-1 at 11 (citing *Reda v. Advocate Health Care*, 765 N.E.2d 1002, 1009 (Ill. 2002)].

The facts of *D.C* are instructive as to why the documents which were ordered to be disclosed had "the potential to fully negate the claim." 687 N.E.2d at 1041. In *D.C.*, the plaintiff, who was hit by a car driven by the defendant, alleged that he used ordinary care and caution for his safety, and that he was injured as a result of defendant's negligence. *Id.* at 1034. In the answer, the defendant pled comparative negligence. *Id.* During discovery, the defense subpoenaed the hospital where the plaintiff was treated after the incident for the plaintiff's medical and psychiatric records. *Id.* at 1034-35. Discovery revealed that the plaintiff was referred to the psychiatric unit of the hospital for evaluation "because of an indication by [the] plaintiff that he might have been attempting suicide at the time of the accident." *Id.* at 1035. The plaintiff objected to the production of his medical and psychiatric records. *Id.* In resolving the motion to compel, the trial court conducted an *in camera* review and ultimately ordered production of relevant portions of the psychiatric records. *Id.*

The Illinois Supreme Court, on appeal, summarized the factors which justified disclosure of the redacted psychiatric records under the fundamental fairness doctrine: (1) "the information plaintiff seeks to protect potentially contradicts his assertion that defendants were negligent and caused the accident;" (2) "[t]he information has the potential to completely absolve defendants from any liability;" (3) "the information meets the criteria for disclosure under section 10(a)(1);" (4) "the information is relevant as it pertains to plaintiff's conduct and actions at the time of the accident;" (5) "[t]he information is probative as well because it appears to provide a possible explanation of how the accident occurred;" (6) "the information does not appear to be unduly prejudicial, as it does not concern plaintiff's psychiatric treatment or progress, but refers only to his purported conduct at the time of the accident and various assessments by plaintiff's treaters of those purported events;" (7) "the record reflects . . . that defendants' counsel unsuccessfully attempted to obtain other information regarding plaintiff's referral to Linden Oaks Hospital from other sources; and there is no argument that the information is not otherwise clearly admissible;" and (8) "disclosure of this small amount of information, which does not concern plaintiff's

7

1 psychiatric diagnosis, treatment, or progress, but which concerns plaintiff's possible conduct and
2 motivation specifically at the time of the accident, is more important to the interests of substantial
3 justice in this case than protecting plaintiff or the relationship he holds with his therapist." *Id.* at
4 1041.

5       As to the first *D.C.* factor, *viz.,* whether the information the plaintiff seeks to protect
6 potentially contradicts the assertion of the defendant's liability, the information in the documents
7 at issue here is, broadly speaking, relevant to Defendants' alternate causation defense, and thus,
8 potentially contradicts Plaintiff Jessica's assertion of liability. However, as to the second *D.C.*
9 factor, *viz.,* whether the information has the potential to completely absolve the defendant of any
10 liability, the information in the documents alone does not have that potential. Unlike in *D.C.*—
11 where the psychiatric records were potentially determinative of the plaintiff's claim because they
12 could show the plaintiff caused the accident—here the information in Plaintiff Jessica's notes to
13 her therapist is not alone sufficient to defeat her derivative claim. The notes at best relate only to
14 █████████████████; they do not discuss—and thus, have no potential to completely absolve
15 Defendants of liability for—other harms her daughter Leslie alleges she experienced, including
16 depression, anxiety, suicidal behavior, sleep disorder, or constipation. Indeed, the disputed
17 documents at issue do not even mention social media, much less social media addiction. *See*
18 *Reda*, 765 N.E.2d at 1011 ("[T]here is absolutely no indication that anything that might be
19 revealed in [the plaintiff]'s mental-health records would completely bar his recovery and absolve
20 defendants of liability.").

21       Further, as to the third *D.C.* factor, *viz.,* whether the documents at issue are properly
22 disclosed under § 10(a) of the Illinois Mental Health and Developmental Disabilities
23 Confidentiality Act ("Act"), 740 ILCS 110/10(a), the disputed documents at issue here do not
24 meet one of the basic requirements of the statute. Under § 10(a)(1) of the Act, which sets forth
25 multiple conditions to be met before disclosure is required, the first condition for disclosure is that
26 the "[r]ecords and communications may be disclosed in a civil . . . proceeding in which the
27 recipient introduces his mental condition or any aspect of his services received for such condition
28 as an element of his claim or defense[.]" Here, Plaintiff Jessica has not introduced her mental

8

condition as an element of her claim. Rather, because Jessica's claim is entirely derivative of her daughter Leslie's claim, the only person whose mental condition is relevant here is Leslie's, not Jessica's. *See Reda*, 765 N.E.2d at 1008 ("If the recipient has not placed his mental health at issue, disclosure of the records or communications is not permitted.").

The situation in *Reda* is analogous to the facts here. In *Reda*, the primary plaintiff, Emilio Reda, sued the defendants for medical malpractice, while the co-plaintiff, Emilio's wife, Mary Reda, sued for loss of society and companionship. *Id.* at 1004. The Illinois Supreme Court held that "while Mary had her own case for loss of society, she could not place Emilio's mental condition at issue in his case. To waive the statutory privilege, the Act requires the 'recipient' of mental-health services to introduce his or her mental condition." *Id.* at 1009-10 (quoting 740 ILCS 110/10(a)(1)). Likewise, even though Plaintiff Jessica has her own derivative claim, as the recipient of mental-health services, she has not put her own mental health condition at issue in this case. To the extent that the disputed documents are records and communications regarding Jessica's own mental health treatment (as opposed to her daughter Leslie's), the documents are not subject to disclosure under the Illinois statute.

As to the fourth and fifth *D.C.* factors, *viz.,* whether the information is relevant and probative, as discussed above, the information in the disputed documents is within the broad scope of relevant discovery under Rule 26 because the documents are, broadly viewed, relevant to the defense theory of alternate causation for one subset of Plaintiff Leslie's asserted harms. However, the Illinois Supreme Court has made clear that relevancy alone is not sufficient to order disclosure. *Reda*, 765 N.E.2d at 1009 ("Even if, as defendants maintain, the psychiatric records have a bearing on causation, relevancy is not decisive of whether a plaintiff has introduced his mental condition as an element of his claim."). The documents are similarly probative, in that they appear to provide at least a possible explanation of one subset of Plaintiff Leslie's alleged harms.

As to the sixth *D.C.* factor, *viz.,* undue prejudice, the two disputed documents here are unduly prejudicial because they relate directly to Plaintiff Jessica's treatment and progress. Further, to the extent the documents discuss Jessica's treatment and progress, it would be unduly prejudicial to order disclosure where Jessica's mental health or condition are not even at issue in

this case.

As to the seventh *D.C.* factor, *viz.,* whether the information sought can be obtained from other sources, Defendants here have had ample opportunity to take discovery from Plaintiff Leslie or other sources (such as her treaters) regarding her mental condition and causes for her harms. *See Reda*, 765 N.E.2d at 1011 ("[I]nformation regarding Emilio's injuries is available from several additional sources. The record contains references to Emilio's medical records maintained by the hospital and various physicians. Defendants may question and contest all opinions and conclusions contained therein. Specifically regarding Emilio's mental condition, defendants may have Emilio tested or examined by a mental-health expert and present a defense based on the expert's opinion."). The disputed documents at issue here primarily concern Plaintiff Jessica's treatment, and these documents are not the only source of information available through discovery about her daughter Leslie's mental condition.

Defendants' argument that these documents are the only source of information available to impeach or contradict Plaintiff Jessica are unavailing. *See* Dkt. 1761-1 at 12. Much of the testimony Defendants allege would be contradicted by these documents consists of Jessica being deposed about statements in a *different* document (apparently an email Leslie wrote to Jessica), and in response to most of that testimony, Jessica testified that the questioning lawyer would have to ask Leslie about those issues since they dealt with Leslie's state of mind, not Jessica's. *See, e.g.,* Dkt. 1761-5 at 6-9 (deposing Jessica about an email Leslie sent to Jessica).

Defendants argue that, at deposition, Jessica denied certain other facts, and that these disputed documents are the only source of information to contradict those denials. [Dkt. 1761-1 at 12]. However, in much of that deposition testimony, Jessica did not *deny* factual matters; rather, she expressed no recollection or ability to testify about what her daughter Leslie thought. *See, e.g.,* Dkt. 1761-5 at 3 ("I can't say what Leslie thought."), 4 ("I don't recall that."). A careful comparison of the documents at issue also shows that, in other portions, the disputed documents do not directly contradict Jessica's deposition testimony because the questions asked are phrased using some select words from the documents without asking the same thing set forth in the document. *Compare id.* at 10 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), *with*

10

Dkt. 1761-2 at 2 ("████████████████████████").

Finally, as to the eighth *D.C.* factor, *viz.,* whether the disputed document is more important to the interests of substantial justice in the case than protecting the plaintiff or the relationship he holds with his therapist, because the documents here are not entirely decisive of Defendants' liability, they are not more important than the Illinois stated policy of protecting Jessica or the relationship she holds with her therapist.

In *D.C.*, the Illinois Supreme Court held that the scope of the fundamental fairness exception is narrow:

> We do not utilize our powers in this area lightly, yet under the facts of the present case, the interests of justice demand that we tip the balance in favor of disclosure and truth. In this case, the interests of fundamental fairness and substantial justice outweigh the protections afforded the therapist-recipient relationship where plaintiff seeks to utilize those protections as a sword rather than a shield to prevent disclosure of relevant, probative, admissible, and not unduly prejudicial evidence that has the potential to fully negate the claim plaintiff asserted against defendants and absolve them of liability.

687 N.E.2d at 1041. In this case, there is no indication that Jessica, the mother of the primary plaintiff, is trying to use the therapist-patient privilege as a sword rather than a shield.

The Illinois Supreme Court has made clear that upholding application of a privilege is not the kind of unfairness that dictates disclosure:

> Although defendants might be denied access to information that could benefit their case, any 'unfairness' is the same that is present any time a privilege against disclosure is exercised. Evidentiary privileges, generally, 'are not designed to promote the truth-seeking process, but rather to protect some outside interest other than the ascertainment of truth at trial.

*Reda*, 765 N.E.2d at 1009 (citations omitted). The Illinois Supreme Court has likewise made clear that application of the fundamental fairness exception to the therapist-patient privilege requires "truly extraordinary circumstances." *Norskog v. Pfiel*, 755 N.E.2d 1, 17 (Ill. 2001); *see also Bilek v. Menard, Inc.*, No. 11 C 4951, 2012 WL 3487082, at *2 (N.D. Ill. Aug. 9, 2012) (In crafting the Act, "the legislature restricted disclosure to that 'which is necessary to accomplish a particular purpose' and [] exceptions are 'narrowly crafted.' This means that anyone seeking the release of mental health records faces a 'formidable challenge.'") (quoting *Reda*, 765 N.E.2d at 1010).

11

**CONCLUSION**

For all the reasons discussed herein, the Court **FINDS** that the two disputed documents are protected from discovery by the Illinois therapist-patient privilege; that the documents were properly clawed back under the procedures applicable in this MDL; that *in camera* review and briefing about the substance of the documents is appropriate; that disclosure of the documents is not appropriate under § 10(a) of the Act (and thus, the statutory exceptions to the privilege do not apply); and that the fundamental fairness exception to the therapist-patient privilege is not satisfied under the facts and circumstances presented on the record here. Accordingly, the Court **DENIES** the Defendants' motion to compel production of the two disputed documents, and, for the same reasons, **DENIES** Defendant's request for an order compelling production of a "limited set of Jessica Smith's medical records related to Leslie Smith's health or well-being." *See* Dkt. 1751 at 11.

To avoid arguments about waiver of privilege and out of consideration for the Protective Order, the Court has endeavored to draft this Order in such a manner as to attempt to minimize quoting text from, or otherwise revealing the substance of text from, the two disputed documents at issue and from the deposition transcript of Jessica Smith. To the extent that the Court discusses the substance of the two documents at issue, the Court has endeavored to describe the text in a way consistent with (and no more revealing than) the descriptions used by Defendants' counsel in their briefing based on their recollection of the two documents. Because the Court is filing this Order under seal, there **SHALL** be no argument regarding waiver of privilege or confidentiality with regard to discussion of any of the privileged or confidential material herein.

Further, the Court **GRANTS** the [Dkt. 1761] administrative motion to file under seal the joint briefing and exhibits submitted for this dispute.

Accordingly, the Clerk of Court is **DIRECTED** to file this Order **UNDER SEAL**. By no later than **April 25, 2025**, the Parties' counsel **SHALL** meet and confer to identify and reach agreement on those portions of this Order which should be redacted and thus remain sealed either for privilege purposes or pursuant to the Protective Order, and conversely, reach agreement on those portions of this Order that can be filed publicly. Within **five (5) business days** of that meet

12

and confer, the Parties **SHALL** file a joint stipulation and proposed order for filing a public version of this Order, including an agreed-upon proposed redacted version of this Order for filing on the public docket.

This **RESOLVES** Dkts. 1751 and 1761.

**IT IS SO ORDERED.**

Dated: April 4, 2025

PETER H. KANG
United States Magistrate Judge