UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING NARRATIVE DATA IN SYNERGY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*<br>Case No. 4:24-cv-01382-YGR | |

Dear Judge Kang:

    Pursuant to the Court's Standing Order for Discovery in Civil Cases, Plaintiff Tucson Unified School District ("TUSD") and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; Mark Elliot Zuckerberg; TikTok Inc.; ByteDance Inc.; Snap Inc.; YouTube, LLC; Google LLC; and Alphabet Inc. ("Defendants") respectfully submit this letter brief regarding their dispute as to TUSD's production of narrative data from the Synergy data source.

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. Because counsel were located more than 100 miles apart, the final conferral was held on April 30, 2025 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

Dated:  May 7, 2025                                  Respectfully submitted,


*/s/ Michael Cutler*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-339
Telephone: 415-956-1000

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

*Counsel to Co-Lead Counsel and Settlement Counsel*

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jenni@andrusanderson.com

*Liaison Counsel*

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

*Federal/State Liaison Counsel*

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE
ZIMMERMANN
**DICELLO LEVITT**
505 20th St North, Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*

*/s/ Paul W. Schmidt*
Paul W. Schmidt, *pro hac vice*
pschmidt@cov.com
Phyllis A. Jones, *pro hac vice*
pajones@cov.com
Christian J. Pistilli, *pro hac vice*
cpistilli@cov.com
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

Emily Johnson Henn (State Bar No. 269482)
ehenn@cov.com
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
Telephone: + 1 (650) 632-4700
Facsimile: +1 (650) 632-4800

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

*/s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
gdrake@kslaw.com
TaCara D. Harris, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: + 1 (404) 572-4600
Facsimile: + 1 (404) 572-5100

David Mattern, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Ave, NW, Suite 900
Washington, D.C. 20006- 4707
Telephone:  +1 202 737 0500
Facsimile:  +1 202 626 3737

Andrea Roberts Pierson, *pro hac vice*
andrea.pierson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: +1 (317) 237-1000

Amy Fiterman, *pro hac vice*
amy.fiterman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, MN  55402
Telephone: + 1 (612) 766-7000

*Attorneys for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

*/s/ Victoria A. Degtyareva*
Victoria A. Degtyareva (State Bar No. 284199)
Victoria.Degtyareva@mto.com
Rose L. Ehler (State Bar No. 296523)
Rose.Ehler@mto.com
Rowley J. Rice (State Bar No. 313737)
Rowley.Rice@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Stephany Reaves, *pro hac vice*
Stephany.Reaves@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

Laura Bernescu, *pro hac vice*
**SKADDEN, ARPS, SLATE,**
**MEAGHER & FLOM LLP**
320 South Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
Email: Laura.Bernescu@skadden.com

Jessica Davidson, *pro hac vice*
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
Email: Jessica.Davidson@kirkland.com

*Attorneys for Defendant Snap Inc.*

*/s/ Joseph G. Petrosinelli*
JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

x

**Defendants' Position:** Plaintiff TUSD has refused to produce large swaths of narrative data from its main student information system, Synergy—even though the data is directly responsive to Defendants' RFPs[1] and TUSD's 30(b)(6) witness repeatedly relied on such data—directly undermining Defendants' ability to test the foundation of the district's claims. Specifically, the 30(b)(6) witness testified, on behalf of the district, that unproduced "narrative" information stored in Synergy supports TUSD's assertions that student behavioral and mental health problems are caused by social media and that the majority of records would show ties to social media. *See, e.g.*, Shivanonda Tr. at 48:20-49:3; *id.* at 220:7-23. TUSD's testimony contravenes a core principle of discovery: that a party should have the opportunity to review the evidence underlying its opponent's claims. TUSD cannot rely on Synergy narratives to support its claims of causation, while simultaneously denying Defendants any opportunity to examine the underlying narratives and test the accuracy of TUSD's testimony.

Synergy maintains students' records, including disciplinary records, records regarding interventions by TUSD staff, and records of conversations between TUSD staff and students or parents.[2] Those records include both quantitative information—i.e., the number of disciplinary incidents—and qualitative narrative information—i.e., descriptions of the conduct that led to student discipline, notes from staff regarding the basis for their interventions, and notes from conversations with students and parents. *E.g.*, Shivanonda Tr. at 28:15-22, 90:21-91:22, 92:11-19.

From the beginning of discovery, Defendants have consistently asked for such "narrative" student records. Regardless of whether a particular narrative expressly mentions "social media," the overall narratives are relevant to whether *other* trends in the district, such as substance abuse, bullying, or violence, have caused the alleged harm. Contrary to TUSD's claims, Defendants never conceded that such information was not discoverable, but expressly reserved "their rights to request additional information once a review of Plaintiffs' productions is substantially completed and to the extent such information is necessary." 8/9/24 Dfts.' Ltr. Now it has become necessary.

To date, TUSD has produced a total of seven records from Synergy, which include only aggregate data on disciplinary incidents, aggregate absentee rates, and the number of students with Section 504 plans and individualized education programs. They contain no data whatsoever relating to Defendants' platforms. Accordingly, based on TUSD's representations that their claims were based on "aggregate data," at deposition Defendants sought to establish that the aggregate data did not show any link to Defendants' platforms. In response, TUSD's 30(b)(6) designee repeatedly testified that review of the aggregate data alone was insufficient and that unproduced Synergy narrative data supported TUSD's claims that social media has caused severe student mental health and disciplinary problems. The following are just a few examples of such testimony:

- When asked about disciplinary incidents, TUSD testified that "for the majority of these a lot of the sexual offenses would also have a tie to social media" and "we did see a high number of threats also occurring via the use of social media." Shivanonda Tr. at 219:13-

---

[1] *E.g.*, RFP 51 (agreement to produce "documents concerning Students' use of Online Media & Communications Services"); RFP 57 (agreement to produce documents "discussing the impact of Online Media & Communications Services on [Plaintiff's] schools and Students").

[2] These records are housed within different portions of Synergy, including the disciplinary platform, the multi-tiered system of support ("MTSS") platform, and Student Conference.

1

- 220:6. TUSD's representative explained that the connection to social media was not evident "just looking at these numbers," (referring to the aggregate Synergy data that TUSD produced), but "it's in the details . . . and the majority of these offenses do have some causal link or direct tie to a social media platform of some sort." *Id.* at 220:7-14. The narratives in Synergy "would be one place" where those "details" could be found. *Id.* at 220:15-23.

- TUSD testified that administrators investigating disciplinary incidents can add investigation notes into Synergy. From those notes, TUSD can "identify the majority of our discipline practices are somehow connected to the use of social media." *Id*. at 48:20-49:3.

- When asked about property damage that TUSD claims is "directly caused by social media," TUSD testified that the disciplinary narratives in Synergy may contain information about such property damage. *Id.* at 139:6-140:5.

*See also, e.g.*, *id.* at 92:23-93:2 (agreeing that "the Student Conference data and the MTSS portion of Synergy . . . may contain information about students' use of social media"); *id.* at 236:14-17 (MTSS platform in Synergy "might contain reports relating to harm caused by social media"). TUSD claims Defendant misrepresent TUSD's testimony but declined Defendants' suggestion that the parties request Court permission to submit the transcript as an exhibit. Further, TUSD's testimony is consistent with public statements from TUSD's superintendent: "We keep meticulous records on student disciplinary situations, especially when they involve violence, fights, threats harassment—we have very detailed narratives about the specific situations that originated on social media, and if we go into litigation, we are ready to present all that information."[3]

Contrary to TUSD's arguments, it does not matter whether TUSD's designee reviewed the narrative data to prepare for deposition. She was designated by TUSD to testify to any analysis underlying the district's claims that Defendants' platforms have harmed the district.[4] Defendants noticed those topics to determine what evidence TUSD might rely on at trial to support its claims of causation. In response, TUSD's designee testified broadly that disciplinary incidents, school disruptions, and mental health problems are connected to social media—despite no apparent connection in the aggregate data produced to date—and that the connection to social media is documented in Synergy narratives. *See, e.g.*, Shivanonda Tr. at 89:22-92:19, 139:6-140:5, 150:22-152:12. While TUSD's representative also referenced conversations with other administrators, she explained such conversations often rely on those administrators' investigation of the underlying incidents; the notes from such investigations are often contained in Synergy. *Id.* at 48:20-49:3; 49:20-22; 150:22-151:25. Hence, TUSD's suggestion that Defendants rely on fact depositions from Ms. Shivanonda (TUSD's designee) or other administrators fails—without access to the underlying narrative data, Defendants are unable to test the accuracy of TUSD's claim that social media harmed TUSD's students.

---

[3] Buckmaster Show, 9/28/2023, https://www.buckmastershow.com/2023/09/28/buckmaster-show-9-28-2023-tusd-to-sue-social-media-companies/.

[4] *E.g.*, Topics 3 ("The identification and conclusions of any analysis of any alleged causal link between the use of . . . Defendants' platforms . . . and Students' and/or young peoples' (a) mental, emotional, social, or behavioral health."), 49 ("[D]iscplinary [trends] . . . related to Student use of . . . Defendants' platforms . . ., including the identification and content of any report, study, or analysis prepared, commissioned or relied upon by the School District regarding the same.").

TUSD has not met its burden of showing that production of narrative records would be *unduly* burdensome—a high standard given that these records go to the heart of TUSD's case. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2018 WL4378727, at *2 (N.D. Cal. Apr. 25, 2018) ("a burden objection requires a showing of *actual* burden."). To the contrary, TUSD testified that virtually any report could be pulled from Synergy. *See* Shivanonda Tr. at 215:21-216:4 ("We have hundreds of reports that are available in Synergy, so it really just depends on what the administrator is looking for, whether they're looking for specifics around a specific discipline type, whether it's a year, whether it's year over year."); *id.* at 216:6-17 (technology team works "closely with Synergy to create reports, and then if there is a report that's not available, they can potentially look into seeing if it's something that could be created if it's a need"). Moreover, Synergy itself advertises the ability to "analyze any data within Synergy—including custom fields—without the need for advanced technical skills" and to generate reports from custom queries. *See* https://edupoint.com/Why-Synergy/Accessible-Data. Synergy similarly boasts of "[e]xtensive data analysis and reporting options," including "more than 350 customizable standard reports" and "powerful ad hoc reporting." *Id.*

Nor has TUSD proposed any alternative approach, despite Defendants' repeated requests. While Defendants believe that production of all narrative information from Synergy is necessary to test TUSD's claims—for example, to assess whether the "majority" of disciplinary incidents "have some causal link" to social media, as TUSD's representative testified—Defendants are open to considering alternative proposals, such as, e.g., running search terms. But TUSD has refused to provide information on what searches may be possible in Synergy or even consider search terms. The Court should order TUSD to produce all Synergy narrative data as soon as possible.

**Plaintiffs' Position:** Defendants seek to unwind months of discovery negotiations and document production to now demand *all* student-specific "narratives" contained in Tucson Unified School District's ("TUSD") student information system, Synergy. Counsel for TUSD and Defendants negotiated the scope of production, including from TUSD's Synergy, months ago. Defendants' attempt to upend those agreements after the April 4 discovery cutoff should be denied.

TUSD's Synergy contains a broad range of student information, including grades, class schedules, health information, and discipline records. As relevant here, when a TUSD staff member records a violation of TUSD's Code of Conduct, he or she may include a "narrative" description of the incident. Narratives are inherently subjective and vary widely. They are not required or standardized. When evaluating discipline trends, TUSD staff rely on the type of data TUSD has produced, aggregate reporting showing the number of kids disciplined, the outcome or disposition, and the basis for the discipline, e.g., bullying, alcohol, fighting. TUSD has produced this detailed information for ten years, broken down by school, amounting to thousands of entries.

As repeatedly discussed among counsel, rather than thousands of individual student records, production of aggregate data from Synergy is proportionate and provides all the relevant information. TUSD's claims do not rely on harm to a particular student, but rather harm sustained by TUSD as an aggregation of individual occurrences throughout the district. Defendants' discovery requests recognize this distinction, seeking only documents sufficient to show, for example, "the number of students disciplined for bullying" or "drugs or alcohol use."

Now, Defendants demand TUSD produce *all* narratives from Synergy, without regard to the narrative type or reason. Defendants' justification is 30(b)(6) testimony from TUSD's Director of

3

SEL and Development, Julie Shivanonda, in which Defendants wrongly contend that Ms. Shivanonda testified that she and TUSD as a whole were analyzing and relying on narratives not produced in discovery to determine that violations of TUSD's Code of Conduct and resulting discipline were caused by social media platforms and support TUSD's claims. But that was not her testimony.

Instead, Ms. Shivanonda testified repeatedly that she reviewed and relied on aggregate data and her conversations with other school district employees with general knowledge of incidents and discipline trends based on their own conversations and experience. TUSD 30(b)(6) Dep. (4/8/25) at 26:16-28:2; 28:23-29:22. Ms. Shivanonda testified that TUSD does not collect routinely explicit data connecting increased disciplinary incidents and social media. *Id*. at 35:4-36:8. Thus, determining from Synergy whether an incident is related to social media is tricky because of the way incidents are documented, typically by the highest level of infraction, e.g., a fight would be categorized as a fight even if it had a connection to social media. *Id*. at 48:4-49:19. Through discussions with administrators, school counselors, and regional assistant superintendents, both as part of her day-to-day responsibilities at TUSD and in preparation for her deposition, Ms. Shivanonda has determined that a common element or "through line" in many of TUSD's disciplinary incidents is social media. *Id*. As Ms. Shivanonda testified, if she wanted to find out whether a particular incident related to social media, she would look at overall discipline data within Synergy and have conversations with administrators. *Id*. at 50:21-51:19. Importantly, Defendants are scheduled to depose the Director of Student Relations and four Regional Assistant Superintendents – individuals Ms. Shivanonda identified as those with whom she would have discussions to determine the impact of social media on disciplinary incidents at the school district.

To be clear, Ms. Shivanonda acknowledges that some narratives in Synergy may contain references to social media. But that is not new information to Defendants, and it certainly does not justify a new collection of thousands of individual student narratives, the vast majority irrelevant to this litigation, and the ensuing review and redaction. TUSD agreed to produce documents discussing reasons for student discipline if returned by the parties' agreed 1,200+ search terms run against the nearly 20 agreed TUSD custodians. Indeed, TUSD has already produced scores of documents containing responsive discipline events showing the use of Defendants' platforms.[5]

Defendants' brief highlights their position's deficiencies, misrepresenting testimony and citing partial answers and answers without questions to try to convince the Court to reopen discovery at

---

[5] *See, e.g.*, SM_TUSD_00420301(investigation by Tucson Police Department after student posted suicidal threat on Instagram); SM_TUSD_00134819 (email thread describing threat issued via TikTok requiring law enforcement response and additional support resources at Tucson High School); SM_TUSD_00003640 (email from Miles Exploratory Learning Center principal to parents regarding students' inappropriate use of TikTok, Instagram, and Snapchat); SM_TUSD_00416309 (email thread regarding anonymous Sahuaro High School Instagram page used to bully students); SM_TUSD_00402975 (incident report involving a death threat made on Snapchat); SM_TUSD_00234117 (email thread regarding Pistor Middle School Instagram fight page); SM_TUSD_00423549 (email thread describing anonymous school shooting threats made by a student on Instagram);SM_TUSD_00408196 (email thread regarding anonymous Hollinger Middle School Instagram page cyberbullying students; SM_TUSD_00005399 (email thread regarding anonymous Sabino High School Instagram page used for malicious gossip).

4

TUSD's burden and expense. Defendants assert that "TUSD's 30(b)(6) witness repeatedly relied on such data to support the district's claims," when, as noted above, Ms. Shivanonda repeatedly testified she and the district rely on aggregate data and conversations with administrators, counselors, and others in the school district to understand the issues TUSD faces and their causes.

Defendants trivialize Plaintiffs' Synergy report production, which includes aggregate data on disciplinary incidents, aggregate absentee rates, and students with Section 504 plans and individualized education plans.[6] Plaintiff's Synergy production of aggregate disciplinary data details violations by year, category, school site, and resulting discipline or other outcome for ten years, totaling 186,842 violations in more than 65,000 spreadsheet rows. SM_TUSD_00595044.

Ms. Shivanonda's 30(b)(6) testimony does not support Defendants' demand for narratives on each of the more than one million disciplinary data and MTSS system entries.[7] Defendants' citations to partial answers demonstrate the tenuousness of their request. In reality, Defendants' own citations point to Ms. Shivanonda testifying that the district uses aggregate data and conversations within schools (220:7-14), that conversations show social media has a tie to a majority of offense categories in the discipline data (219:13-21), that Synergy and its MTSS platform "might contain reports relating to harm caused by social media" (236:14-17), and that there are hundreds of possible "reports" (like the ones produced by TUSD) available through Synergy (215:21-216:17).

Defendants also insist that TUSD has not demonstrated the burden involved with producing all narrative records from Synergy. Defendants' argument is again disingenuous. The burden is evident; TUSD would be required to collect and individually review and redact more than a million "narratives" (not including Student Conference notes about "anything related to a student"). Also evident is the lack of evidence that the burden is proportionate. Ms. Shivanonda's knowledge of social media's "through line" in TUSD's disciplinary events and impact on the district comes from her daily work as SEL Director, review of aggregate data like that produced by TUSD, and her conversations with people like those Defendants are currently deposing in the litigation. TUSD is not "relying" on or using narratives in the litigation. Defendants' request to upend discovery after discovery closed, based on no new information, is unwarranted and should be denied.

---

[6] After Ms. Shivanonda's 30(b)(6) testimony, Defendants requested and Plaintiffs produced data from Synergy's MTSS platform detailing aggregate observations by category (e.g., Absenteeism, Academic, Defiance, Disrespect, Disruption, Dress Code, Health, Positive, etc.) between 2021 and 2024, totaling **832,352** "observations," where teachers or staff may make notes about students' behavior or academic needs. Defendants' current request seeking *all* Synergy "narratives" would include these observations, most categories of which are irrelevant to the litigation. Review of notes in the observations would, like discipline narratives, require line by line review and redaction of each of the 832,352 observations. And, like the discipline narratives, Defendants did not elicit any testimony from Ms. Shivanonda indicating that the narrative notes related to each "observation" are used or relied on by TUSD to support its claims, only that they in fact exist.

[7] These figures do not include Student Conference notes in Synergy, which exceed the total of disciplinary and MTSS entries and include notes on "anything related to a student. So if a counselor had a conversation with a parent and the parent had concerns and they were asking for maybe more counseling services, that might be noted in the Student Conference." 30(b)(6) dep. at 90:21-91:22.

## **ATTESTATION**

I, Rowley J. Rice, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: May 7, 2025

By: */s/ Rowley J. Rice*