1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR   (PHK)

**ORDER RESOLVING DISPUTE RE:
DOCUMENT SUBPOENAS TO
NONPARTIES BEJAR AND
JAYAKUMAR; DENYING META'S
ADMINISTRATIVE MOTION FOR
LEAVE TO FILE SUPPLEMENTAL
BRIEFING RE: SAME**

Re: Dkts. 1764, 1765, 1815

## **INTRODUCTION**

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426.

Presently before the Court is a dispute between Meta and two nonparties, Mr. Bejar and Ms.

Jayakumar, regarding document subpoenas Meta served on those individuals. *See* Dkts. 1764,

1765. The Court heard oral argument from the Parties as to the objections to the subpoenas on

March 20, 2025. *See* Dkt. 1787. Upon careful review of the briefing and argument of counsel, the

Court ruled verbally at that hearing, sustaining the objections in full as to Request for Production

("RFP") No. 2 (directed to Mr. Bejar) and RFP No. 1 (directed to Ms. Jayakumar). The Court

directed counsel for these Parties to meet and confer to submit a joint stipulation and proposed

order memorializing the Court's rulings and addressing the scope of RFP No. 10 (directed to Mr.

Bejar) and RFP No. 2 (directed to Ms. Jayakumar). Counsel proved unsuccessful in following

these directions. Instead of submitting a joint stipulation and proposed order based on the Court's

ruling from the bench, Meta filed an administrative motion seeking leave to submit "supplemental

1    briefing regarding the application of the Whistleblower Statutes and the First Amendment to

2    Meta's document subpoenas." [Dkt. 1815 at 3]. Mr. Bejar and Ms. Jayakumar oppose Meta's

3    administrative motion, arguing that it is in reality a motion for reconsideration, and further arguing

4    that neither reconsideration nor supplemental briefing have been shown to be appropriate. [Dkt.

5    1837 at 3-6]. In support of its administrative motion, Meta has also filed a notice of supplemental

6    authority which includes additional arguments. [Dkt. 1887].

7        As noted, the Court heard oral argument on the underlying joint letter briefs, and the Court

8    finds the dispute regarding Meta's administrative motion suitable for resolution without oral

9    argument. *See* Civil L.R. 7-1(b).

10                                    **LEGAL STANDARDS**

11        The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar.*

12   *Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

13   in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of

14   discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's

15   discretion extends to crafting discovery orders that may expand, limit, or differ from the relief

16   requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

17   discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example,

18   the Court may limit the scope of any discovery method if it determines that "the discovery sought

19   is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

20   convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

21       Federal Rule of Civil Procedure 45 permits a party to serve a subpoena on a nonparty

22   requiring, among other things, the production of "documents, electronically stored information, or

23   tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 41(a)(1)(A)(iii).

24   The scope of discovery allowed under a Rule 45 subpoena is generally the same as the scope of

25   discovery permitted under Rule 26(b). *In re Subpoena to Apple, Inc.*, No. 5:14-cv-80139-LHK,

26   PSG, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014); *see* Fed. R. Civ. P. 45 advisory

27   committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same

28   as that applicable to Rule 34 and the other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may

United States District Court
Northern District of California

2

1    serve on any other party a request within the scope of Rule 26(b).").

2         In this MDL, the Court has repeatedly stated the relevant legal standards.  Rule 26(b)(1)

3    delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain

4    discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

5    proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*

6    Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or

7    that reasonably could lead to other matter that could bear on, any issue that is or may be in the

8    case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer*

9    *Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer*

10   *Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

11   Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader

12   than relevancy for purposes of trial.") (alteration omitted).

13        While the scope of relevance is broad, discovery is not unlimited.  *ATS Prods., Inc. v.*

14   *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes

15   of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

16   Information, even if relevant, must be "proportional to the needs of the case" to fall within the

17   scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1)

18   emphasize the need to impose reasonable limits on discovery through increased reliance on the

19   commonsense concept of proportionality: "The objective is to guard against redundant or

20   disproportionate discovery by giving the court authority to reduce the amount of discovery that

21   may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

22   requirement] is intended to encourage judges to be more aggressive in identifying and

23   discouraging discovery overuse."  Fed. R. Civ. P. 26 advisory committee's note to 2015

24   amendment.  In evaluating the proportionality of a discovery request, the Court considers "the

25   importance of the issues at stake in the action, the amount in controversy, the parties' relative

26   access to the information, the parties' resources, the importance of the discovery in resolving the

27   issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

28   Fed. R. Civ. P. 26(b)(1).

United States District Court
Northern District of California

3

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.; see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court likewise has discretion whether to grant a motion to compel compliance with, or conversely, whether to quash, a Rule 45 subpoena for documents. *Garrett v. City & Cnty. of S.F.*, 818 F.2d 1515, 1519 (9th Cir. 1987). Further, Rule 45 expressly states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty[.]" Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.") (emphasis added).

A nonparty commanded to produce documents pursuant to a Rule 45 subpoena may challenge the subpoena in one of three ways: (1) by written objection; (2) by moving to quash or modify the subpoena; or (3) by moving for a protective order. *See* Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 45(d)(2)(B), (d)(3). If a nonparty responds to a Rule 45 subpoena with objections, the party who served the subpoena may move for an order compelling compliance. Fed. R. Civ. P. 45(d)(2)(B)(i).

The party seeking to compel compliance with a subpoena bears the burden of establishing that its request seeks relevant information and thus falls within the appropriate scope of discovery.

*iSabre GLBL, Inc. v. Kimpton Hotel & Rest. Grp., LLC*, No. 21-mc-80053-MMC (JSC), 2021 WL 1839689, at *2 (N.D. Cal. May 6, 2021) ("[T]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."). The objecting party, in turn, has the burden of persuasion to show that the discovery should not be allowed. *Id.* ("Generally, the party moving to quash under Rule 45(d)(3) bears the burden of persuasion[.]"). Accordingly, "a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)).

Under this District's Civil Local Rules, a party may file a motion for administrative relief directed to miscellaneous administrative matters, not otherwise governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge. Civil L.R. 7-11. The Local Rules provide two examples of this type of motion: "These motions would include matters such as motions to exceed otherwise applicable page limitations or motions to file documents under seal." *Id.*

A party seeking reconsideration of an interlocutory court order must first seek leave to file such a motion. Civil L.R. 7-9(a). The moving party must specifically show one of the following:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know of such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the Court. Civil L.R. 7-9(c).

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISCUSSION

## I.    MOTION TO COMPEL RE: SUBPOENAS TO BEJAR AND JAYAKUMAR

As noted, the Court previously ruled from the bench on the motion to compel Mr. Bejar and Ms. Jayakumar to produce documents responsive to certain disputed requests in the subpoenas issued to each of them by Meta.  The Court incorporates by reference its rulings from the bench relating to these disputes.

The Parties' fundamental dispute concerns whether Mr. Bejar and Ms. Jayakumar should be required to produce their communications with current and former Meta employees (both identified and unidentified) regarding social media platforms and the health of minors.  As the Parties' briefing and the public record makes clear, Mr. Behar and Ms. Jayakumar are both former Meta employees involved in youth issues.  They have each spoken out publicly and/or testified regarding their views about Meta and youth health issues.  It is not hyperbole to characterize their publicly stated views as generally not laudatory of Meta.  *See, e.g.*, *Social Media and the Teen Mental Health Crisis: Hearing Before the S. Subcomm. on Priv., Tech. & the Law*, 118TH CONG. (2023) (written testimony of Arturo Bejar, Former Director of Engineering for Protect and Care, Facebook), available at https://www.judiciary.senate.gov/imo/media/doc/2023-11-07_-_testimony_-_bejar.pdf (last visited May 15, 2025).

Meta's RFP No. 2 in the Bejar subpoena seeks "[a]ll Documents and Communications with current and/or former Meta employees, regarding Social Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual exploitation of persons under the age of 18."  RFP No. 1 in the subpoena to Ms. Jayakumar is identical.

As stated at the hearing, the Court **DENIES** Meta's motion to compel Mr. Bejar and Ms. Jayakumar to produce their communications with current Meta employees and all unidentified former Meta employees in response to Bejar subpoena RFP No. 2 and Jayakumar subpoena RFP No. 1.  Mr. Bejar and Ms. Jayakumar timely raised objections to these requests on First Amendment grounds, arguing that the requests will have the effect of chilling their First Amendment associational rights and deterring the exercise of protected activities.  [Dkt. 1764 at 6 (citing *Chevron Corp. v. Donziger*, No. 13-mc-80038 CRB (NC), 2013 WL 1402727, at *2, *7

1    (N.D. Cal. Apr. 5, 2013)].

2        In *Chevron*, the plaintiff issued a Rule 45 subpoenas for documents to Amazon Watch, a

3    non-profit organization which "organize[d] campaigns to raise awareness of the impact that

4    industrial development in the Amazon Rain Forest has on the world as a whole," and which was

5    alleged to be "a mouthpiece for pressure and smear campaigns in the United States against

6    Chevron, in furtherance of [the named defendants'] conspiracy to defraud Chevron of billions of

7    dollars." 2013 WL 1402727, at *1. Amazon Watch sought to quash the subpoenas, arguing that

8    "responding to Chevron's subpoenas w[ould] chill participation in [Amazon Watch's] campaigns

9    by its staff and its constituents and w[ould] infringe upon its right to associate." *Id.* at *2.

10       As noted by Judge Cousins in *Chevron*, a claim of First Amendment associational

11   privilege in a discovery dispute is subject to a two-part test. *Id.* (citing *Perry v. Schwarzenegger*,

12   591 F.3d 1126, 1140 (9th Cir. 2010)). First, the party asserting the privilege must make a *prima*

13   *facie* showing "of arguable First Amendment infringement." *Perry*, 591 F.3d at 1140 (quoting

14   *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988)). This

15   *prima facie* showing requires the party "to demonstrate that enforcement of the discovery requests

16   will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2)

17   other consequences which objectively suggest an impact on, or 'chilling' of, the members'

18   associational rights." *Id.* (quoting *Brock*, 860 F.2d at 350) (alteration omitted). The *prima facie*

19   showing "turns not on the type of information sought, but on whether disclosure of the

20   information will have a deterrent effect on the exercise of protected activities." *Id.* at 1141.

21   (citations omitted).

22       Once a party makes a *prima facie* showing that the discovery sought is protected by the

23   First Amendment, the evidentiary burden shifts to the party seeking the discovery to show that: (1)

24   "the information sought is highly relevant to the claims or defenses in the litigation—a more

25   demanding standard of relevance than under [Rule] 26(b)(1);" (2) the request is "carefully tailored

26   to avoid unnecessary interference with protected activities;" and (3) the information is not

27   "otherwise unavailable." *Id.* at 1141.

28       In this case, Mr. Bejar, Ms. Jayakumar, the current Meta employees, and the unidentified

7

United States District Court
Northern District of California

1   former Meta employees all have First Amendment associational rights which are implicated by the

2   subpoenas at issue.

3          The First Amendment "protects political association as well as political expression," and

4   the "freedom to associate with others for the common advancement of political beliefs and ideas

5   lies at the heart of the First Amendment." *Id.* at 1139. "[T]he government must justify its actions

6   not only when it imposes direct limitations on associational rights, but also when governmental

7   action would have the practical effect of discouraging the exercise of constitutionally protected

8   political rights." *Id.* (citations and internal quotation marks omitted). "Such actions have a

9   chilling effect on, and therefore infringe, the exercise of fundamental rights. Accordingly, they

10  'must survive exacting scrutiny.'" *Id.* (citation omitted). "Disclosures of political affiliations and

11  activities that have a 'deterrent effect on the exercise of First Amendment rights' are therefore

12  subject to this same 'exacting scrutiny.'" *Id.* at 1139-40 (citation omitted). "A party who objects

13  to a discovery request as an infringement of the party's First Amendment rights is in essence

14  asserting a First Amendment *privilege*." *Id.* at 1140 (emphasis in original).

15         Mr. Bejar and Ms. Jayakumar argue that enforcing disclosure of the communications with

16  current Meta employees and with unidentified former Meta employees will result in discouraging

17  other such employees from speaking or associating with them. They also argue that requiring the

18  disclosure of these communications will have a chilling effect on the associational rights of the

19  current and former Meta employees, because the current and former Meta employees, if identified,

20  would fear adverse employment actions and/or the risk of being "blackballed" in the industry. Mr.

21  Bejar and Ms. Jayakumar argue that, given Meta's size and reach within the industry, discovery of

22  the communications poses unjustifiable risks which ultimately chill the associational rights that

23  they and the Meta employees possess.

24         Meta's arguments stress that Mr. Bejar, Ms. Jayakumar, and the Meta employees are not

25  part of any formal political party or organization, and thus, they do not have the claimed

26  associational rights under the First Amendment. Meta interprets "associational" rights to require

27  some sort of organizational entity or "association," such as the non-profit entity, Amazon Watch,

28  in *Chevron*. This argument is not well supported in law. While organizations might have standing

to assert associational rights, those rights flow from the organizations' individual members. *See Brock*, 860 F.2d at 349 ("The district court's emphasis on organizational structure is misplaced. It does not matter whether the Fund is totally independent from the Union, as appellants claim, or merely a bank account of the Union, as the district court found. If the Fund is sufficiently independent of the Union to be considered in its own right, it can attempt to show infringement of its members' first amendment rights. If the Fund is merely an extension of the Union, then the Union can make the attempt. Associational rights are implicated either way.").

In *Perry*, a group of five individuals and one organization were the "Proponents" of California's Proposition 8, and that group of Proponents objected to discovery requests on First Amendment grounds. 591 F.3d at 1132. The Ninth Circuit held that the Proponents demonstrated that they had First Amendment associational rights, and there was no dispute that the individuals somehow lack such rights because they were not part of a formal organization. *Id.* at 1142-43. As the Ninth Circuit recognized, "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private." *Id.* at 1142.

Accordingly, the Court finds that the subpoenaed parties here, *viz.,* Mr. Bejar and Ms. Jayakumar, have sufficiently demonstrated that they have First Amendment associational rights with the current and former Meta employees implicated by the subpoenas. The Court further finds that the subpoenaed parties have each made the requisite *prima facie* showing of First Amendment infringement. More specifically, the Court finds that Mr. Bejar and Ms. Jayakumar have demonstrated that enforcement of the subpoenas will, at the very least, have an impact and chilling effect on the associational rights at issue here.

Because Mr. Bejar and Ms. Jayakumar have made the necessary *prima facie* showing, the burden shifts to Meta to demonstrate an interest in obtaining the discovery sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of free association.

At the hearing, Meta argued that it needs the discovery sought in order to determine whether Mr. Bejar and Ms. Jayakumar discussed Meta's tools and features at issue in this MDL with any current or former Meta employees. Meta proffered that the reason such communications

are relevant to this case is to determine whether the communications are inconsistent with the opinions and views of Mr. Bejar and Ms. Jayakumar, so as to impeach them or otherwise attack their credibility.  Meta also speculated that Plaintiffs may seek to use Mr. Bejar and Ms. Jayakumar as expert witnesses in this case, and thus argued that the communications with current and former Meta employees would be relevant to testing the bases for and credibility of any such expert opinions.

In its notice of supplemental authority, Meta brought to the Court's attention that Plaintiffs in the parallel JCCP proceedings recently filed their "Plaintiffs' General Causation Expert Designation."  *See* Dkt. 1887-2.  The JCCP Plaintiffs' Designation first lists nine expert witnesses on general causation, and then states, in relevant part:

> Pursuant to California Code of Civil Procedure section 2034.210, et seq., Plaintiffs state that they may call one or more witnesses at trial who are not retained experts and are not required to provide written reports but whose testimony may include information that could be considered "expert testimony." If called, the following witnesses are expected to testify as to their respective backgrounds, professional observations, experiences and training, and consistent with the deposition testimony previously given in this action[.]

*Id.* at 4.  The first two witnesses listed under this part of the JCCP Plaintiffs' Designation are Mr. Bejar and Ms. Jayakumar.

At the second step of the two-part analysis, the Ninth Circuit requires that courts "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure, to determine whether the interest in disclosure outweighs the harm[.]'"  *Perry*, 591 F.3d at 1140 (alterations, citations, and quotation marks omitted).  Relevant factors to this inquiry include: (1) the importance of the litigation; (2) the centrality of the information sought to the issues in the case; (3) the existence of less intrusive means of obtaining the information; (4) the substantiality of the First Amendment interests at stake.  *Id.*  As noted above, the party seeking the discovery must show that: (1) "the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than under [Rule] 26(b)(1);" (2) the request is "carefully tailored to avoid unnecessary interference with protected activities;" and (3) the information is not "otherwise unavailable."  *Id.* at 1140-41.

Here, Meta has not shown that the interest in disclosure outweighs the burdens imposed on

United States District Court
Northern District of California

1    the individuals at issue.  First, while the Court assumes that the documents sought by Meta have

2    some relevance to this litigation, neither the personal views and opinions of Mr. Bejar and Ms.

3    Jayakumar, nor the bases for those personal views and opinions, are central to the issues in the

4    case.  A desire to obtain information to potentially impeach these witnesses is certainly not central

5    to the issues in this case.

6         Further, as the former employer of both Mr. Bejar and Ms. Jayakumar, Meta has in its

7    possession and/or control all communications that Mr. Bejar and Ms. Jayakumar had with other

8    Meta employees during their respective terms of employment, as well as their respective work

9    files (which would include documents on Meta's tools and features).  Similarly, Meta has

10   possession and/or control of any communications that current and former Meta employees have

11   had with Mr. Bejar and/or Ms. Jayakumar, to the extent any such communications were conducted

12   using Meta's email or other communication systems.  Meta also has access to public documents,

13   testimony, and publications by Mr. Bejar and Ms. Jayakumar.  Mr. Bejar and Ms. Jayakumar have

14   not, in briefing on this dispute, objected to producing documents responsive to the other requests

15   in their respective subpoenas which do not implicate communications with current and former

16   Meta employees.  Importantly, Meta deposed both Mr. Bejar and Ms. Jayakumar and presumably

17   took those opportunities to explore the bases for their views, using all documents available to

18   Meta to prepare for and take those depositions.  Additionally, Meta has apparently deposed several

19   of its former employees who communicated with Mr. Bejar and/or Ms. Jayakumar.

20        Given all of these other sources of information and documents from or concerning Mr.

21   Bejar and Ms. Jayakumar available to Meta, and particularly in light of the fact that Meta has been

22   able to identify and obtain discovery from at least some former Meta employees who have had

23   communications with Mr. Bejar and/or Ms. Jayakumar, the Court finds that there exist less

24   intrusive means of obtaining the information sought.  And, at least as to former Meta employees,

25   the information sought is not otherwise unavailable.

26        The Court also finds that the documents sought do not meet the "more demanding standard

27   of relevance" required to overcome the First Amendment privilege.  To the extent that Meta

28   justifies its discovery requests on the grounds that they may result in the production of documents

11

1    which may go to credibility issues, the Court finds that a mere desire for potentially impeaching

2    documents does not alone meet the more exacting relevance standard in the First Amendment

3    context.  To the extent that Meta justifies these requests on the grounds that they may result in

4    production of communications regarding Meta's tools or features, the Court finds that the requests

5    are not proportional to the needs of the case and would be unnecessarily duplicative, because Meta

6    and Plaintiffs have each taken extensive discovery unrelated to Mr. Bejar and Ms. Jayakumar as to

7    Meta's tools and features at issue.

8         For similar reasons, the Court is not persuaded by Meta's argument that the requests are

9    justified because of some possibility that Mr. Bejar and Ms. Jayakumar may testify as fact

10   witnesses in the JCCP as to information that may be characterized as "expert testimony."  First,

11   because the JCCP Plaintiffs' Designation explicitly states that Mr. Bejar and Ms. Jayakumar are

12   not retained as expert witnesses (and presumably will not be submitting the required expert reports

13   in the JCCP under the California Code of Civil Procedure), the argument that the documents are

14   needed to probe the bases of these non-experts' "opinions" is inapposite.  The JCCP Plaintiffs

15   have taken the position that these two witnesses will not be proffering expert opinions in the

16   JCCP.  Thus, because the JCCP Plaintiffs have expressly represented that Mr. Bejar and Ms.

17   Jayakumar are *not* expert witnesses, it will be a matter for the trial judge in the JCCP to decide,

18   based on her discretion, whether those witnesses will be allowed to testify as to any "opinions" at

19   all, or whether they will be appropriately limited to percipient fact testimony.  *See Kalaba v. Gray*,

20   95 Cal. App. 4th 1416, 1421-24 (Cal. Ct. App. 2002) (holding that, under California law, "treating

21   physicians are not 'retained experts' within the meaning of section 2034, and no expert declaration

22   is required when a party intends to call a treating physician for the purpose of eliciting expert

23   testimony; it is sufficient if a treating physician is identified by name and address in the

24   proponent's designation of expert witnesses"); *see also In re Marriage of Zucker*, 75 Cal. App. 5th

25   1025, 1029 (Cal. Ct. App. 2022) ("Here, the trial court did not abuse its discretion by limiting Ms.

26   Scharf's testimony to percipient observations.  Kim failed to designate Ms. Scharf as an expert.").

27        Second, the need for these documents is further diminished by the fact that Meta has access

28   to multiple other sources of information which can be used to probe the views of Mr. Bejar and

12

Ms. Jayakumar, as detailed above.  As noted in the opposition to Meta's administrative motion, Meta has access to over six hundred pages of Mr. Bejar's subpoenaed testimony, fifty pages of his public essays, and has deposed him.  [Dkt. 1837 at 6].  Ms. Jayakumar has already been deposed for two days and has appeared for informal interviews with Meta.  *Id.*  In sum, because Meta has deposed Mr. Bejar, Ms. Jayakumar, and a number of former Meta employees who have apparently communicated with one or both of them, Meta has had the opportunity to cross-examine them on the information and factual matters which relate to the issues in this case.  The documents sought by these specific requests are of diminished importance in light of these other sources of discovery produced and available in this case, and accordingly, the discovery sought is not proportional to the needs of the case (in addition to being of less than the necessary level of relevance).

Finally, while this Court and the JCCP court have coordinated discovery for purposes of rational and efficient case management, it should go without saying that a Designation of Experts under California procedural law in the JCCP is not applicable in this MDL.  The JCCP Plaintiffs' Designation is not by itself a compelling basis for enforcing these subpoenas in this federal action.

Taking into consideration all arguments and materials submitted by the Parties, the Court therefore finds that the balance of harms to the First Amendment associational rights here are not outweighed by the interest in disclosure of communications with current or unidentified former Meta employees, as sought by these requests in the subpoenas to Mr. Bejar and Ms. Jayakumar.

Additionally, with regard to the request for communications with Meta employees, Mr. Bejar objected to the subpoena on the grounds that the requests violate those employees' rights under both federal and California whistleblower statutes, specifically 18 U.S.C. § 1514A ("Sarbanes-Oxley") and California Labor Code § 1102.5(b)(d).  Ms. Jayakumar opposes enforcement of the subpoena against her under Sarbanes-Oxley.

Section 1102.5(b) of the California Labor Code provides, in relevant part, that:

> An employer . . . shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to . . . another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to . . . any public body conducting an investigation, . . . if the employee has reasonable cause to believe that the

information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Similarly, under Sarbanes-Oxley, a publicly traded company, such as Meta, may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee" with regard to their terms and conditions of employment where that employee has lawfully taken actions "to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of . . . any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by . . . any Member of Congress or any committee of Congress[.]"  18 U.S.C. § 1514A(a)(1)(B).

The record here shows that Mr. Bejar has testified before Congress regarding Meta.  To the extent that Mr. Bejar had communications with Meta employees regarding information disclosed to Congress, Sarbanes-Oxley and the California Labor Code prohibit Meta from retaliating against those employees.  Mr. Bejar argues that requiring him to disclose communications with individuals who have assisted him in providing information to governmental bodies risks retaliation against those individuals and "sets them up for post-employment blacklisting."  [Dkt. 1765 at 5].  While Meta argues that Mr. Bejar's objection relies on the risk of potential blacklisting or retaliation (as opposed to evidence of actual blacklisting or retaliation), that argument ignores the discouraging effect of the fear of retaliation or blacklisting.  *See Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 710 F.3d 443, 446 (2d Cir. 2013) (Sarbanes-Oxley Act "seeks to combat what Congress identified as a corporate 'culture, supported by law, that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally.'").

Accordingly, the Court finds that Mr. Bejar's objections to the subpoena directed to him under Sarbanes-Oxley and the California Labor Code are additional bases to deny Meta's motion to compel disclosure of his communications with Meta employees.

By contrast, there is no argument and no evidence that Ms. Jayakumar has testified before Congress or any other public body, nor that she has provided information to any governmental

United States District Court
Northern District of California

1    investigation into Meta.  For that reason, Ms. Jayakumar does not object to her subpoena on these

2    grounds, and she does not argue that she received information from any Meta employees which

3    was assistance for any testimony before any public body or in connection with any governmental

4    investigation.  Unlike Mr. Bejar, Ms. Jayakumar makes only oblique reference to Sarbanes-Oxley

5    in her briefing and does not support her objection to the subpoena with any submissions which

6    would establish the necessary predicates for either whistleblower statute to apply.  Accordingly,

7    the Court finds that Ms. Jayakumar's objections to the subpoena directed to her under Sarbanes-

8    Oxley and the California Labor Code are not sufficiently supported.

9         RFP No. 10 in the subpoena to Mr. Bejar seeks "[a]ll Documents and Communications

10   between You and Frances Haugen, Vaishnavi Jayakumar (aka 'Vaishnavi J'), Kang-Xing Jin (aka

11   'KX Jin' or 'Robert Jin'), Samir Patel, Margaret Gould Stewart, and Alison Lee concerning Social

12   Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual

13   exploitation of persons under the age of 18."  RFP No. 2 in the subpoena to Ms. Jayakumar is

14   almost identical, except this request swaps Mr. Bejar's name for Ms. Jayakumar's and adds Aza

15   Raskin: "All Documents and Communications between You and Arturo Bejar, Frances Haugen,

16   Kang-Xing Jin (aka 'KX Jin' or 'Robert Jin'), Margaret Gould Stewart, Samir Patel, Aza Raskin,

17   and Alison Lee concerning Social Media Platforms."  According to counsel's representations at

18   the hearing on this dispute, all but one of these named individuals are former Meta employees

19   (Mr. Raskin is apparently not a former Meta employee).

20        It is self-evident that the identities of these individuals named in RFP No. 10 (directed to

21   Mr. Bejar) and RFP No. 2 (directed to Ms. Jayakumar) are known to Meta and some of them have

22   been deposed.  Thus, to the extent that Mr. Bejar and Ms. Jayakumar have argued that disclosing

23   communications would reveal Meta employees' identities and thus would expose them to potential

24   retaliation or blacklisting in the industry, that objection appears moot at this point with regard to

25   these named individuals, since their identities are known.

26        That said, these named individuals' First Amendment associational rights are nevertheless

27   implicated by the subpoenas (as are Mr. Bejar's and Ms. Jayakumar's First Amendment rights) for

28   the reasons discussed above.  The discovery requests, as drafted, broadly seek "all" documents and

United States District Court
Northern District of California

United States District Court
Northern District of California

communications with the named individuals, without limitation as to timeframe, subject matter, or burden in terms of retrieval and search. Thus, even if their identities are known, compelling disclosure of all of their communications risks a chilling effect on their associational rights and on the associational rights of Mr. Bejar and Ms. Jayakumar, as discussed above with regard to Meta employees generally.

As discussed above, under the governing legal standard, "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1141. Because these named individuals' identities are known, the Court gave Meta the opportunity to meet and confer post-hearing with counsel for Mr. Bejar and Ms. Jayakumar to attempt to identify any "highly relevant" documents responsive to these requests in the subpoenas and to submit a proposed order if any agreement could be reached. As noted above, the Parties failed to submit a proposed order, and instead, Meta sought leave to file further briefing on the First Amendment issue.

On the record submitted to the Court, Meta has not identified or described any "highly relevant" documents or communications with these named individuals. Meta had the opportunity to do so in the original briefing, at oral argument, and even in its motion for leave to file further briefing. The Court finds that Meta has not met its burden to identify highly relevant documents sought by these requests to Mr. Bejar and Ms. Jayakumar, and accordingly, the Court **SUSTAINS** the objections to these requests on First Amendment grounds.

Further, Mr. Bejar has argued, both at the hearing and in briefing, that Sarbanes-Oxley protections extend to post-termination activity by former employees. [Dkt. 1837 at 6 (citing *Kshetrapal v. Dish Network, LLC*, 90 F. Supp. 3d 108, 114 (S.D.N.Y. 2015)]. In *Kshetrapal*, the court concluded, after analyzing the text of § 1514A and other sources for statutory interpretation, "that the term 'employee' as used in [§ 1514A] includes 'former employees.'" 90 F. Supp. 3d at 113. Mr. Bejar argues that his communications with former Meta employees are therefore also protected from discovery by those former employees' rights under Sarbanes-Oxley. [Dkt. 1837 at 6].

United States District Court
Northern District of California

1    Meta, citing *Tides v. The Boeing Co.*, 644 F.3d 809 (9th Cir. 2011), argues that its

2    employees' communications with Mr. Bejar and Ms. Jayakumar are not protected activities under

3    the statutory schemes because Mr. Bejar and Ms. Jayakumar are themselves former Meta

4    employees.  [Dkt. 1815 at 4-5].  In *Tides*, the Ninth Circuit held that communications by current

5    employees with members of the media are not protected by Sarbanes-Oxley.  644 F.3d at 815.

6    However, there was no discussion in *Tides* as to whether a former employee has rights under

7    Sarbanes-Oxley, because the communications at issue there were completed when the individuals

8    claiming protection under the statute were current employees of Boeing.  In *Tides*, the plaintiffs

9    contended that their disclosures to the media were protected by Sarbanes-Oxley, because such

10   disclosures to the media "may eventually" have caused information to be provided to Congress or

11   some other public body.  *Id.*  Here, by contrast, there was an actual disclosure to Congress by Mr.

12   Bejar, not a potential or hypothetical disclosure which was unprotected in *Tides*.  Thus, Meta's

13   reliance on *Tides* is misplaced—the issue in dispute here is whether communications from former

14   Meta employees to Mr. Bejar and from him to Congress are protected.

15   Because, as noted, Mr. Bejar has testified before Congress, to the extent former Meta

16   employees assisted him and provided information which he disclosed to Congress, those former

17   employees' rights under the whistleblower statutes are implicated.  The fact that Mr. Bejar is

18   himself a former Meta employee does not obviate the fact that he was ultimately a witness in a

19   congressional hearing, and thus, does not negate applicable whistleblower protections the former

20   Meta employees have under Sarbanes-Oxley to provide information through Mr. Bejar to a

21   governmental body.  Thus, for this additional reason, the Court **SUSTAINS** Mr. Bejar's objections

22   to the subpoena directed to him to the extent the requests seek communications with former Meta

23   employees (including the named former Meta employees listed in RFP No. 10).

24   The Court notes that Mr. Bejar did not expressly argue that former Meta employees are

25   entitled to whistleblower protections under the California Labor Code, referring only to

26   "employees" in that context (where, by contrast, Mr. Bejar referred to both current and former

27   employees explicitly when discussing Sarbanes-Oxley).  *See* Dkt. 1765 at 4-5.  In opposition to

28   Meta's administrative motion, Mr. Bejar argues only that Sarbanes-Oxley protections extend to

1    post-employment activities by former employees.  [Dkt. 1837 at 6].  In its administrative motion,

2    Meta cites case law indicating that the California Labor Code's whistleblower protections do not

3    apply to post-employment conduct by former employees.  [Dkt. 1815 at 5-6 (citing *Gjovik v.*

4    *Apple, Inc.*, No. 23-cv-04597-EMC, 2024 WL 4369656, at *7 n.6 (N.D. Cal. Oct. 1, 2024); *Bitz v.*

5    *Stockton Unified Sch. Dist.*, C094249, 2023 WL 4992594, at *7 (Cal. Ct. App. July 31, 2023)].

6    Mr. Bejar does not address this case law.  Therefore, to the extent that Mr. Bejar's arguments

7    might be broadly construed as objections to the subpoena on the grounds of the whistleblower

8    protections under the California Labor Code, the Court finds any such objections are not

9    adequately supported.

10        For the same reasons discussed above with regard to current Meta employees, to the extent

11    that Ms. Jayakumar objects to the subpoena's request for communications with former Meta

12    employees on Sarbanes-Oxley grounds, the Court finds that objection unsupported by the record.

13    **II.    META'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

14        Meta argues that "more fulsome" briefing is required on the First Amendment issues, and

15    in particular, on the Ninth Circuit's *Perry* opinion.  [Dkt. 1815 at 3].  Meta argues that *Perry* was

16    not discussed in the Parties' original briefing and that the Court raised that opinion by name for

17    the first time during oral argument.  Mr. Bejar and Ms. Jayakumar point out that the Parties

18    extensively briefed *Chevron*, which applied the *Perry* legal standard.  [Dkt. 1837 at 4 n.2].  The

19    Court notes that the Parties extensively argued the First Amendment issues at the hearing on the

20    underlying dispute.

21        In light of the record and the Parties' presentation of their positions on the underlying

22    dispute, the Court finds that Meta has not shown good cause for further briefing on the First

23    Amendment issues.  As discussed above, the *Chevron* opinion extensively quotes and follows

24    *Perry*—this is not a situation where the Parties' briefing failed to fully address the First

25    Amendment issues.  That Meta would prefer to submit more argument on these issues does not

26    mean that there was a failure to address the issues fulsomely in the original briefing.  Meta

27    suggests that it felt constrained by the Court's page limits for briefing.  However, that argument is

28    weakened by the fact that the Parties have in the past asked for leave to file longer briefs *before*

United States District Court
Northern District of California

United States District Court
Northern District of California

1   submitting a joint letter brief, and thus, Meta knows very well the procedure to seek leave to file

2   more fulsome briefs before the hearing.  Here, Meta chose not to seek such leave at the usual time

3   and its arguments here are undercut by that choice—particularly where Meta now only seeks leave

4   after having lost on the underlying motion.

5           For similar reasons, Meta's request for leave to file additional briefing on the

6   whistleblower statutes is not adequately supported.  In its administrative motion, Meta does not

7   even attempt to show a material change in law or fact; rather, Meta briefs its substantive

8   arguments as to why the whistleblower statutes should not bar the discovery requested here.  [Dkt.

9   1815 at 3-5].  In particular, Meta cites (for the first time) the *Tides* opinion discussed above for the

10  proposition that the Mr. Bejar and Ms. Jayakumar are not engaged in protected activity under the

11  whistleblower statutes because they are former Meta employees.  *Id.* at 4.  Meta nowhere explains

12  in its administrative motion why, in the exercise of diligence, it could not have cited *Tides* in its

13  original briefing.  Meta instead proceeds to brief the arguments directly.  In any event, the Court

14  has directly addressed Meta's new arguments (including those relating to *Tides)* in this Order, and

15  thus, additional briefing is not warranted.

16          Meta's administrative motion also briefs, in substance, its arguments why the

17  whistleblower statutes should not apply to former Meta employees.  *Id.* at 5-6.  Again, Meta

18  does not attempt to show a material change in law or fact, and does not explain why, in the exercise of

19  diligence, it could not have cited these cases and briefed these arguments in its underlying motion.

20  Further, as detailed above, the Court directly addresses the substantive arguments on whether

21  Sarbanes-Oxley protections extend to former Meta employees, and thus, further briefing on the

22  issue is unnecessary.  And, as discussed above, the Court also addresses the issue of the California

23  Labor Code and former Meta employees, rendering further briefing on that issue unwarranted as

24  well.

25          To the extent that Meta's administrative motion is in substance a motion for leave to file a

26  motion for reconsideration, the administrative motion does not address and does not satisfy the

27  standards for a motion for leave to file a motion for reconsideration.  *See* Civil L.R. 7-9(b).

28  Meta's administrative motion does not demonstrate a *material* difference in law or fact from that

1  which was presented to the Court originally.  Because Meta's administrative motion seeks

2  additional briefing (as opposed to highlighting something overlooked in the original briefing),

3  there is no argument that there was a manifest failure by the Court to consider material facts or

4  dispositive legal arguments presented on the underlying motion.

5        In its notice of supplemental authority filed in support of the administrative motion, Meta

6  raises the JCCP Plaintiffs' Expert Designation discussed above.  [Dkt. 1887 at 2].  Meta's notice

7  of supplemental authority includes argument as to why the JCCP Plaintiffs' Designation supports

8  the need for further briefing.  *Id.*  As discussed in detail above, this is not a new *material* fact

9  which changes the outcome or determination of this matter.  In the underlying joint letter briefing

10  and at the hearing, the Parties discussed whether the subpoenas were justified in light of concerns

11  that Mr. Bejar and/or Ms. Jayakumar might be proffered as expert witnesses (or somehow would

12  provide information that would be supplied to Plaintiffs' expert witnesses to help those experts in

13  their presenting of their opinions).  In any event, the Court took notice of this new development

14  and discussed the JCCP Plaintiffs' Designation in this Order.  To the extent that Meta seeks

15  additional briefing because of the JCCP Plaintiffs' Designation, such additional briefing is not

16  warranted.

### CONCLUSION

18        For the foregoing reasons, the Court **DENIES** Meta's motion to compel with regard to

19  RFP Nos. 2 and 10 in the Bejar subpoena, and with regard to RFP Nos. 1 and 2 in the Jayakumar

20  subpoena.  Those Requests are **QUASHED** pursuant to Federal Rule of Civil Procedure 45.

21        In the full exercise of its discretion, the Court **DENIES** Meta's administrative motion for

22  leave to file further briefing on the underlying dispute.

23        This **RESOLVES** Dkts. 1764, 1765, and 1815.

25  **IT IS SO ORDERED.**

26  Dated:  May 19, 2025

                                                _____
                                              PETER H. KANG
                                              United States Magistrate Judge

United States District Court
Northern District of California