UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE REGARDING META'S AMENDED 30(b)(6) NOTICE TO STATE PLAINTIFFS**<br><br>Re: Dkt. 1807 |

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between Meta and the States pursuing consumer protection claims ("Consumer Protection States" or "States") concerning certain topics in Meta's amended Rule 30(b)(6) deposition notice served on those States. [Dkt. 1807]. The Court finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARDS

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example,

the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The generally applicable legal standards for discovery are well-known. Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the

1   issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

2   Fed. R. Civ. P. 26(b)(1).

3         The party seeking discovery bears the burden of establishing that its request satisfies the

4   relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,

5   285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the

6   discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons

7   why the request at issue is objectionable and may not rely on boilerplate, conclusory, or

8   speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

9   1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to

10   carry a heavy burden of showing why discovery was denied.").

11         As part of its inherent discretion and authority, the Court has broad discretion in

12   determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d

13   625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

## DISCUSSION

### I. META'S AMENDED 30(b)(6) NOTICE TO THE STATES

16         This is the latest in a series of disputes between Meta and the States concerning Meta's

17   Rule 30(b)(6) deposition notice to the States. *See, e.g.*, Dkts. 1525, 1671, 1770. The Court has

18   issued multiple Orders on these disputes and provided guidance at monthly Discovery

19   Management Conferences, and to their credit, the Parties have resolved some of these disputes by

20   negotiation and stipulation. *See, e.g.*, Dkt. 1863. The present dispute over the amended Rule

21   30(b)(6) deposition notice has delayed scheduling the depositions because of the States' objections

22   to designating a Rule 30(b)(6) witness at all on certain topics. Given the fact discovery cutoff and

23   because seeking judicial intervention can entail delays before resolution, the Court encourages the

24   Parties to continue to work out and negotiate resolution of any disputes in order for these

25   depositions to be scheduled, taken, and concluded as efficiently as possible.

26         The Parties' dispute here concerns numerous topics in Meta's amended Rule 30(b)(6)

27   deposition notice served on those States which are pursuing consumer protection claims against

28   Meta, *viz.,* California, Colorado, Connecticut, Delaware, Illinois, Indiana, Kansas, Kentucky,

Louisiana, Minnesota, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Virginia, Oregon, South Carolina, and Wisconsin. While differing slightly as to certain topics, in general, the States' objections to these noticed topics go to breadth, whether a topic is within a Party's knowledge or only amenable to expert testimony, and relevance.

The deposition notices to each of the relevant States are identical. *See* Dkt. 1807-1. The States seek an order striking Topics 2, 5, 15, 17, and 19, in their entirety. [Dkt. 1807 at 11]. They also seek specific limitations as to Topics 3, 4, 6, 7, 8, 10, 18 and 31. *Id.* at 11-12. Meta has offered to narrow the topics to address the overbreadth issues, both as to certain proffered global limitations and as to advance notice of representative documents and information it intends to inquire about. *Id.* at 8.

The Court addresses each category of the disputes in turn below.

## II.    SCOPE OF THE TERM "SOCIAL MEDIA PLATFORMS"

The first global dispute which impacts most, if not all, of the topics at issue is the breadth of the term "Social Media Platforms" as used in the deposition notice. For example, Topics 2 and 3 of the deposition notice seek testimony on the following topics:

> 2. The State's use of Social Media Platforms including but not limited to advertisement or promotion of, or by, the State or the State's programs on Social Media Platforms during the Relevant Period.
>
> 3. Programs, initiatives, efforts, or actions considered, proposed, taken by, and/or involving the State (including without limitation any State agency) to encourage, promote, or discourage the use of Social Media Platforms during the Relevant Period.

[Dkt. 1807-1 at 6].

The States argue that the term "Social Media Platforms" should be limited to only Facebook and Instagram, because those are the platforms at issue in these States' cases against Meta. [Dkt. 1807 at 10]. Meta has offered to limit this term to just the social media platforms of the defendants at issue in this MDL: Facebook, Instagram, TikTok, Snapchat, YouTube, and Twitter/X. *Id.* at 8. Meta argues that, for liability, these State plaintiffs have not disclaimed an intent to use general evidence about "social media" harms without specific attribution to a

particular platform. *Id.* Meta also argues that evidence that the States encouraged some platforms to improve teen mental health during the pandemic, or discouraged one platform over another, would be directly relevant to causation. *Id.* And, Meta argues that any State-related studies which discuss benefits of social media to teen mental health generally or as to other platforms is relevant to its defenses. *Id.* at 8-9.

Both sides' arguments rely on a broad-brush approach to the breadth of "Social Media Platforms." However, as the two sample topics above illustrate, the term is used in the deposition notice in two general ways: as in Topic 2, the term is used to refer to social media platforms unrelated to the use of the platform by minors (that is, unrelated to liability or causation directly); or as in Topic 3, the term is used to refer specifically to the use of a social media platform by end-users or members of the public (including teens). Because in some of the topics the term is used outside of the context directly tied to causation or liability for use of social media by teens, Meta's arguments as to relevance are inapplicable and the States' objections as to proportionality are thus stronger. That is, while Meta's argument for a broader interpretation because the States may try to prove liability or causation by discussing evidence as to social media generally, Meta's argument holds no (or at least lesser) weight for topics which are not directed to the use of social media generally by teens (such as Topic 2, which is directed to the use of social media by the State itself).

Accordingly, balancing relevance with proportionality in light of the legal standards and arguments presented, the Court finds that the term "Social Media Platforms" shall be limited to only Facebook and Instagram for those topics which are not limited to, and thus not directed squarely at, the use of social media by teens or minors, *viz.,* Topics 1, 2, 3, 8, 10, 11, 12, 13, 18, 19, 27, and 31. The Court is cognizant that some of these topics (such as Topics 10, 18, 19, and 31) are drafted broadly to refer to any social media platform and then include a modifier, such as "including without limitation," which then refers explicitly to include use of a social media platform by a minor. That type of limiting clause is insufficient to alter the conclusion as to these topics at issue. Because these topics are drafted to broadly reach any social media platform without expressly limiting the topic to use by a minor (but try to include that subset of information

in the larger topic), these topics are equally disproportionate and lacking in relevance as topics such as Topic 1 which is wholly unrelated to use of a social media platform by a minor.

And as a corollary, the Court finds that the term "Social Media Platform" shall be limited to the social media platforms at issue in this MDL, *viz.,* Facebook, Instagram, TikTok, Snapchat, YouTube, and Twitter/X, for those topics which are limited to and directed to use of a social media platform by a minor, *viz.,* Topics 4, 5, 6, 9, 14, 15, and 17.

## III. TOPIC 2—STATES' USE OF SOCIAL MEDIA PLATFORMS

The States argue that Topic 2 should be stricken entirely because of overbreadth (and thus, the burden of preparing a Rule 30(b)(6) witness as to all possible "uses" of social media) and the availability of such information in Meta's possession. [Dkt. 1807 at 11]. Meta argues that Topic 2 should not be stricken, stressing that it has offered to limit "use" to just three specific types of use: (1) advertisements; (2) promotions; and (3) posts. *Id.* at 9. Meta has also agreed to identify exemplar documents in advance of each deposition to address the burden of preparation. *Id.*

Topic 2's use of the term "use" is overbroad and disproportionate to the needs of this case. The Court finds that Meta's limitation of "use" to only three specific types of "use" (advertisements, promotions, and posts) in the Relevant Time Period is appropriate, but only when combined with further procedures to address burden and proportionality.

Accordingly, the Court **ORDERS** that no later than five business days prior to each Rule 30(b)(6) deposition, Meta **SHALL** serve on counsel for the State being deposed a copy of every document constituting or describing an advertisement, promotion, and post which Meta in good faith expects to ask the witness about at the corresponding deposition. Counsel for the State shall prepare the witness to be deposed on any such timely served documents. At such deposition, Meta **SHALL NOT** ask questions about any other specific documents constituting or describing an advertisement, promotion, or post which were not served timely prior to the deposition. However, if a Plaintiff's counsel questions a deponent on redirect concerning an advertisement, promotion, or post not included in the documents served pre-deposition by Meta (and thus opens the door), then on recross, Meta shall be entitled to question the witness about any such advertisement, promotion, or post raised by Plaintiff's counsel. Nothing in this ruling prohibits the Parties from

6

reaching agreement on allowing Meta to question a witness on an advertisement, promotion, or post document not served timely pre-deposition.

### IV.    TOPICS 3, 4, 6, 10, AND 31—SCOPE OF "SOCIAL MEDIA PLATFORMS"

The States and Meta repeat their respective arguments about whether these Topics should be limited to just Facebook and Instagram, or not. *Id.* at 8, 12. The Court's ruling above resolves the disputes as to these topics.

With regard to Topic 31, the Court adopts and thus **ORDERS** the Parties to comply with their agreement that Topic 31 shall be limited to the Relevant Time Period. *Id.* at 12 n.4.

### V.    TOPIC 5—COLLABORATIONS

Meta has agreed to limit Topic 5 by deleting the term "communications" and limiting it to "collaborations that target social media use," and further by agreeing to identify Facebook and Instagram collaborations with each State in advance of each corresponding deposition. *Id.* at 9. The States argue that, even as limited, Topic 5 is overbroad because of the breadth of "Social Media Platforms." *Id.* at 11. The Court's ruling above on the "Social Media Platforms" issue resolves the disputes over the States' objections.

In view of the concerns as to breadth and proportionality, the Court further adopts Meta's agreement and thus **ORDERS** that Topic 5 shall be limited to "collaborations" as opposed to "communications."

Per Meta's agreement, the Court additionally **ORDERS** Meta to identify (via email to counsel of record for the corresponding State whose deposition is upcoming, including the counsel expected to defend that deposition) the Facebook- and/or Instagram-related collaborations which Meta reasonably and in good faith intends to ask about at the corresponding Rule 30(b)(6) deposition for that State. Meta shall make that identification of the Facebook- and/or Instagram-related collaborations no later than five business days prior to the corresponding Rule 30(b)(6) deposition. Counsel for the State shall prepare the witness to be deposed on any such timely identified collaborations. At such deposition, Meta **SHALL NOT** ask questions about any other collaborations which were not identified timely prior to the deposition. However, if a Plaintiff's counsel questions a deponent (such as on redirect) concerning any collaboration not included in

1  the identification sent pre-deposition by Meta (and thus opens the door), then on recross, Meta
2  shall be entitled to question the witness about any such collaboration raised by Plaintiff's counsel.
3  Nothing in this ruling prohibits the Parties from reaching agreement on allowing Meta to question
4  a witness on any other collaboration even if not identified timely pre-deposition.

**VI.    TOPIC 7—PROVIDING INTERNET ACCESS AND DEVICES TO MINORS**

The States argue that Topic 7 is overbroad because programs for providing Internet access through programs or funding to local schools and libraries is a "vast and complex area of state government." *Id.* at 12. The States argue that Topic 7 (and Topic 18 which implicates similar objections) should be limited to "the State's direct provision of telecommunication services, devices, or behavioral health treatments to youth." *Id.*

Meta argues that it has agreed to limit Topic 7 to purely State-directed efforts, and agrees to exclude purely local or county-directed efforts, and further, to exclude colleges. *Id.* at 9. Meta argues that making Internet access or telecommunications devices available to minors via schools or their libraries is relevant, because States may have increased social media use by such efforts. *Id.*

Topic 7, as drafted, is broadly directed to any "studies, reports, programs, initiatives, efforts, or actions proposed, taken by, or involving the State" to provide Internet access or devices to minors. [Dkt. 1807-1 at 7]. The Parties' briefing has focused on (and Meta's relevance arguments center on) actual programs which actually resulted in providing telecommunications devices and Internet access to minors. Accordingly, balancing concerns as to relevance and proportionality, the Court finds that limiting Topic 7 to actual State-wide programs which resulted in actual provision of Internet access or telecommunications devices to minors is appropriate. Further, the Court adopts Meta's agreement and limits Topic 7 to programs which are or were wholly or purely State-directed, and excludes from Topic 7 programs which were conducted jointly with or entirely by a local or county-directed effort (or in any way involving a college or university). The limitation of Topic 7 to State-wide programs is intended to further avoid programs which were limited in scope to a particular school district or an individual library, and to make sure this topic is appropriately limited to purely State-directed programs which were

applicable to the State as a whole.

## VII. TOPICS 8 AND 15—STUDIES ON SOCIAL MEDIA USE AND HEALTH

Topic 8 seeks testimony on any studies or research on the use of social media, and in particular, the potential benefits and/or harms or health-related effects of such use. *Id.* at 7. Topic 15 similarly seeks testimony on studies regarding the health of minors. *Id.* at 8. The States repeat their objection to Topic 15 on the breadth of "Social Media Platforms" grounds resolved above. [Dkt. 1807 at 11]. The States argue that the request for a witness to testify on any study or research that a State employee ever considered or relied on is overbroad, and they argue that Topics 8 and 15 should be limited to studies and research conducted or funded directly by the State itself (and that it is infeasible to prepare a Rule 30(b)(6) designee to testify on every single third-party study or research read or relied on by every single State employee). *Id.* at 12.

Meta argues that it agreed to limit Topics 8 and 15 to only studies, research, and tests that the States created, considered, relied on, or contributed to in any way, as well as to provide specific examples in advance of each corresponding deposition (to address the burden issues). *Id.* at 9. Meta argues that excluding studies or research which a State closely reviewed or made meaningful contributions to is too limiting. *Id.* Meta's concern is that limiting these topics as the States propose could exclude studies or research which contradicts positions taken by the States' experts or taken by the States as Parties to the case. *Id.*

The Court finds that Topics 8 and 15, as drafted, are overbroad and not proportional to the needs of the case. The Court finds that these topics are appropriately limited to research or studies which were created, conducted by, or funded directly in whole or in part by a State, or authored (or co-authored) by a State employee in their official capacity. Given the resources Meta has devoted to the defense of this case and given Meta's incentives here, the Court finds it unlikely that Meta is unaware of, or unable to find from public records, any studies or research which are inconsistent with the contentions of a State in this MDL.

To the extent that Meta is aware of a study or research which does not meet the criteria for questioning above but which Meta reasonably and in good faith believes a State made meaningful contributions to or closely considered (even if the State did not directly fund or conduct the study

9

itself), then Meta may serve on counsel for the State being deposed a copy of that study or research no later than five business days prior to the corresponding Rule 30(b)(6) deposition of that State. If Meta serves a copy of such study or research timely prior to the deposition, then Meta may ask questions of the Rule 30(b)(6) witness on that study or research (and counsel for the State shall prepare the witness to be deposed on that study or research). At such deposition, Meta **SHALL NOT** ask questions about any other studies or research which were not served timely prior to the deposition, or which do not meet the criteria discussed above for studies or research conducted by that State. However, if a Plaintiff's counsel questions a deponent on redirect concerning a study or research not included in the documents served pre-deposition by Meta or not otherwise properly within the criteria above for questioning by Meta on cross-examination (and thus opens the door), then on recross, Meta shall be entitled to question the witness about any such study or research first raised by Plaintiff's counsel. Nothing in this ruling prohibits the Parties from reaching agreement on allowing Meta to question a witness on a study or research not otherwise meeting the criteria above.

## VIII.   TOPIC 17—FACTORS THAT IMPACTED MINORS' MENTAL HEALTH

Topic 17 seeks testimony on each State's "knowledge and/or understanding" of factors that impacted the mental health of minors and how a list of twenty-one listed factors (which includes "Social Media Platforms") impacted such mental health. [Dkt. 1807-1 at 8-9]. The States argue that it is overly burdensome to try to prepare a Rule 30(b)(6) designee on this long topic and each of its subtopics. [Dkt. 1807 at 11]. The States also argue that this is an improper contention deposition topic because it seeks the States' beliefs on alternate causation issues (where the list of twenty-one factors are all evidently potential alternate causes for negative impacts on teen mental health, such as "[u]se of drugs and alcohol" and "[p]overty, homelessness, lack of health insurance, and/or food insecurity"). *Id.* Finally, the States argue that these are topics better suited for expert testimony. *Id.*

Meta argues that Topic 17 seeks facts as to the "factors" which may have negatively impacted teen mental health (other than social media). *Id.* at 10. Meta argues that, if the States have no knowledge of or about these factors, then their designees can simply say so. *Id.* Meta

also argues that preparing a Rule 30(b)(6) designee to testify on behalf of a State on Topic 17 does not require speaking with every single State employee. *Id.* Meta argues that, because Topic 17 seeks facts and not opinions, the topic is not an improper contention topic and is not somehow preempted by expert discovery. *Id.*

The Court finds that Topic 17, as drafted, is overbroad and not proportional to the needs of the case. The word "factors" encompasses an overbroad range of phenomena that renders preparation of a Rule 30(b)(6) designee impractical. Further, listing twenty-one exemplary factors (without limitation as to other unlisted factors) essentially transforms this deposition topic into twenty-one different topics.

As an initial matter, the Court finds that Topic 17 shall be appropriately limited to the twenty-one specific factors listed. The Court assumes that this lengthy list represents all, or virtually all, of the other "factors" Meta intends to argue are potential alternate causes for negative impacts on teen mental health, and it is unduly burdensome (and virtually impossible) to require the States to prepare a Rule 30(b)(6) designee on an unidentified, unbounded set of other potential "factors."

Second, as drafted, Topic 17 seeks testimony on each State's knowledge of "how" each factor impacted teen mental health, and depending on the phrasing of questions, the topic, as drafted, could encompass either contentions or expert testimony. To limit the questioning to factual matters (as Meta asserts it seeks only here), the Court adopts the same procedure as with several of the other deposition topics above: no later than five business days prior to the corresponding Rule 30(b)(6) deposition of each State, Meta **SHALL** serve on counsel for that State being deposed a copy of no more than two documents which Meta reasonably believes in good faith ae relevant to that State's knowledge or understanding of each of the twenty-one listed factors (for a total of no more than forty-two documents for this Topic 17). Meta shall identify which of the twenty-one listed factors each served document corresponds to. If Meta serves a copy of such documents timely, then Meta may ask questions of the Rule 30(b)(6) witness regarding how each corresponding document relates to that State's knowledge or understanding on how the corresponding factor impacted teen mental health (and counsel for the State shall prepare

the witness to be deposed on such documents). At such deposition, Meta **SHALL NOT** ask questions about any documents relating to any of the listed factors which were not served timely prior to the deposition. However, if a Plaintiff's counsel questions a deponent on redirect concerning any factors which impacted teen mental health or questions a deponent on any documents relating to any factors which impacted teen mental health (where such documents were not served pre-deposition by Meta), and thus opens the door, then on recross, Meta shall be entitled to question the witness about any such factors or documents first raised by Plaintiff's counsel. Nothing in this ruling prohibits the Parties from reaching agreement on allowing Meta to question a witness on any factors or documents not otherwise meeting the criteria above.

## IX.   TOPIC 18—PROVIDING MENTAL HEALTH SERVICES TO MINORS

Similar to Topic 7, the States argue that Topic 18 is overbroad because programs for mental and behavioral health services to minors is a vast and complex area of state government. *Id.* at 12. The States argue that Topic 18 should be limited to "the State's direct provision of . . . behavioral health treatments to youth." *Id.*

Meta argues that limiting Topic 18 to purely State-directed efforts would exclude "broad swathes" of other relevant mental health services which States provide indirectly, such as through contract with regional mental health centers or other vendors. *Id.* at 10. Meta argues that its agreement to identify representative services and documents in advance of each deposition alleviates the burden concerns of the States. *Id.*

Topic 18, as drafted, is broadly directed to "[m]ental, social, emotional, or behavioral health services" provided by a State to minors. [Dkt. 1807-1 at 9]. As with Topic 7, the Court finds that Topic 18 is, in general, limited to programs which are or were wholly or purely State-directed or State-funded, and (subject to the provisions below) excludes from Topic 18 programs which were conducted entirely or funded entirely by a regional, local, county, or municipality-directed effort (or in any way involving a college or university).

To resolve the dispute over mental health services provided indirectly by a State through contracts with a regional center or vendor, the Court adopts the same procedure as with several of the other deposition topics above: no later than five business days prior to the corresponding Rule

30(b)(6) deposition of each State, Meta **SHALL** serve on counsel for that State being deposed a copy of documents which Meta reasonably believes in good faith are relevant to that State's indirect provision of mental, social, emotional, or behavioral health services through contracts with a regional center or vendor (limited to one document per regional center or vendor).  If Meta serves a copy of such documents timely, then Meta may ask questions of the Rule 30(b)(6) witness about how each corresponding document relates to that State's indirect provision of mental, social, emotional, or behavioral health services through contracts with each regional center or vendor identified in the documents (and counsel for the State shall prepare the witness to be deposed on such documents).  At such deposition, Meta **SHALL NOT** ask questions about any documents relating to the State's indirect provision of such mental health services which were not served timely prior to the deposition.  However, if a Plaintiff's counsel questions a deponent (such as on redirect) concerning that State's indirect provision of mental, social, emotional, or behavioral health services to minors with any regional centers or vendors (or in any other way) not identified in the documents served by Meta's counsel, and thus opens the door, then on recross, Meta shall be entitled to question the witness about any such indirect provision of mental, social, emotional, or behavioral health services to minors (including new documents concerning the same) first raised by Plaintiff's counsel.  Nothing in this ruling prohibits the Parties from reaching agreement on allowing Meta to question a witness on any State's program for the indirect provision of mental, social, emotional, or behavioral health services to minors or documents not otherwise meeting the criteria above.

## X.   TOPIC 19—EXPENDITURES ON TEEN MENTAL HEALTH SERVICES

Topic 19 seeks testimony on each State's budgeted and actual expenditures on mental, social, emotional, or behavioral health services for minors.  [Dkt. 1807-1 at 10].  The States argue that Topic 19 is not appropriate for a deposition, because financial budgets and expenditures are more appropriately produced and reviewed in documents.  [Dkt. 1807 at 11].  The States agree to identify such information in the produced documents or in publicly available information or documents.  *Id.*

Meta argues that it should be allowed to ask clarifying questions, and agrees that it will not

quiz witnesses on the details of the financial documents. *Id.* at 10. Meta also argues that its agreement to identify documents in advance of each deposition alleviates the burden concerns of the States. *Id.* Meta argues that the States have noticed a Rule 30(b)(6) deposition of Meta regarding its audited financial statements, and thus seeks reciprocal testimony. *Id.*

The Court adopts the Parties' agreements and **ORDERS** that each State identify to Meta either in produced documents by Bates number, or identify by webpage URL, or serve copies of public information or documents where each State's budgeted and actual expenditures for mental, social, emotional, or behavioral health services for minors are set forth. Such identification or service of information and documents shall be completed no later than seven business days prior to the deposition of that State. The States shall prepare their Rule 30(b)(6) designees to be able to be deposed on the information or documents so identified or served by that State.

The Court further **ORDERS** that Meta shall not quiz a Rule 30(b)(6) witness on the details of a State's budgets or expenditures as if this were a memory test, and Meta shall not question a Rule 30(b)(6) witness on this topic without showing the relevant corresponding information or documents identified by the relevant State to the witness. Further, the Court **ORDERS** that Meta's questioning on Topic 19 shall be directed to seeking clarification of information set forth in the documents identified by each State.

Additionally, to the extent that Meta has documents relating to Topic 19 which are not identified or served by the States, the Court adopts the same procedure as with several of the other deposition topics above: no later than five business days prior to the corresponding Rule 30(b)(6) deposition of each State, Meta **SHALL** serve on counsel for that State being deposed a copy of documents which Meta reasonably believes in good faith set forth that State's budgeted and actual expenditures for mental, social, emotional, or behavioral health services for minors. If Meta serves a copy of such documents timely, then Meta may ask questions of the Rule 30(b)(6) witness about that State's budgeted and actual expenditures for teen mental health in the context of those documents (and counsel for the State shall prepare the witness to be deposed on such documents). At such deposition, Meta **SHALL NOT** ask questions about any documents relating to each State's budgeted and actual expenditures for teen mental health which were not either identified or

14

served timely by each State or by Meta prior to the deposition. However, if a Plaintiff's counsel questions a deponent (such as on redirect) concerning that State's budgeted and actual expenditures for teen mental health using a document or information which was not identified or served timely prior to the deposition (or without using any documents at all), and thus opens the door, then on recross, Meta shall be entitled to question the witness about that State's budgeted and actual expenditures for teen mental health using any such new documents (if any were used), or within the scope of questions first raised by Plaintiff's counsel (if no documents were used). Nothing in this ruling prohibits the Parties from reaching agreement on allowing Meta to question a witness on any State's budgeted and actual expenditures for teen mental health using information or documents not otherwise meeting the criteria above.

This **RESOLVES** Dkt. 1807.

**IT IS SO ORDERED.**

Dated: May 19, 2025

PETER H. KANG
United States Magistrate Judge