1

2

*[Submitting Counsel on Signature Page]*

3

4

5

6

7

8

9    **IN THE UNITED STATES DISTRICT COURT**

10    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12   IN RE: SOCIAL MEDIA ADOLESCENT          No. 4:22-md-03047
     ADDICTION/PERSONAL INJURY
13   PRODUCTS LIABILITY LITIGATION           MDL No. 3047

14   ───────────────────────────────         **BRIEF IN OPPOSITION TO**
                                             **DEFENDANTS' "MOTION TO**
15   This Document Relates To:               **PRECLUDE PLAINTIFFS FROM**
                                             **RELYING ON LATE-DISCLOSED**
16   *The School Board of Hillsborough County,*   **SCHOOL DISTRICT WITNESSES"**
     *Florida v. Meta Platforms, Inc. et al.*, No. 24-
17   cv-01573
                                             Judge: Hon. Yvonne Gonzalez Rogers
18   *Board of Education of Jordan School District v.*
     *Meta Platforms, Inc., et al.*, No. 24-cv-01377   **Date:** June 13, 2025
19                                           **Time:** 9 a.m.
                                             **Courtroom:** 1
20   *Tucson Unified School District v. Meta*
     *Platforms, Inc., et al.*, No. 24-cv-01382

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

   I.      STATEMENT OF THE ISSUES ................................................................ 1

   II.     BACKGROUND .......................................................................................... 2

   III.    ARGUMENT ............................................................................................... 3

        A.    Defendants' Motion Violates this District's Local Rules and this Court's Standing Orders. ........................................................................ 3

           1.  The parties have not met and conferred. ....................................... 4

           2.  Defendants' discovery motion should have been filed with Judge Kang. .......... 4

        B.    Defendants' Motion Also Fails Substantively, as Plaintiffs Complied with Rule 26(e), and Any Alleged Non-Compliance Was Harmless. ..................... 5

           1.  Plaintiffs timely supplemented their initial disclosures. ................................. 5

           2.  Plaintiffs' April 4 disclosures have not prejudiced Defendants, as they will have ample opportunity to depose the five remaining witnesses at issue. ........ 8

           3.  Alternatively, the relief sought by Defendants is excessive. ........................... 11

           4.  None of Defendants' cited cases are even close to being on point. ................ 12

   IV.    CONCLUSION ......................................................................................... 13

CERTIFICATE OF SERVICE ......................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3    *Aguilera v. Molina*, No. 18-CV-03389-HSG, 2021 WL 1845534 (N.D. Cal. Jan. 22, 2021) ........4

4    *Baird v. Blackrock Institutional Tr. Co., N.A.*, 330 F.R.D. 241 (N.D. Cal. 2019) .................12-13

5    *City & County of San Francisco v. Tutor–Saliba*, 218 F.R.D. 219 (N.D. Cal. 2003).................11

6    *Finjan, Inc. v. Proofpoint, Inc.*, No. 313CV05808HSGHRL, 2015 WL 9900617
        (N.D. Cal. Oct. 26, 2015) ............................................................................................. 12
7

8    *Homyk v. ChemoCentryx, Inc.*, No. 21-CV-03343-JST (LJC), 2024 WL 5150447
        (N.D. Cal. Aug. 8, 2024) ..........................................................................................12-13
9

10   *In re Lemos*, 243 B.R. 96 (Bankr. D. Idaho 1999) ....................................................... 11

11   *Jackson v. Am. Fam. Mut. Ins. Co.*, No. 2:10-CV-01874-LRH, 2012 WL 845646
        (D. Nev. Mar. 12, 2012) ............................................................................................12-13
12

13   *K.D. v. United Airlines, Inc.*, No. 217CV02825RFBNJK, 2018 WL 6028694 (D. Nev.
        Nov. 16, 2018) ........................................................................................................... 11

14   *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390 (C.D. Cal. 2022)...........................7

15   *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705 (9th Cir. 2010) ...........................................8

16   *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership,* 187 F.3d 988 (8th Cir.1999)..........11

17   *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012)...........................11

18   *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604 (C.D. Cal. 2013)...............................10-11

19   *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237 (D. Nev. 2017)............................................5-6

20   *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200 (N.D. Cal. June 3, 2011) ..............7, 12-13

### **Rules**

21   Fed. R. Civ. P. 26(a) ...........................................................................................................5

22   Fed. R. Civ. P. 26(e) ......................................................................................................5, 7

23   Fed. R. Civ. P. 26(e), Advisory Comm. Notes....................................................................7

24   Fed. R. Civ. P. 37(a) ...........................................................................................................4

25   Fed. R. Civ. P. 37(c) ......................................................................................................5, 8

26   N.D. Cal. Local Rule 7.1(b) ................................................................................................4

27   N.D. Cal. Local Rule 37-1(a) .............................................................................................4

28

N.D. Cal. Local Rule 37-4(b) ............................................................................................4

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs[1] respectfully submit this Brief in Opposition to Defendants' "Motion to Preclude Plaintiffs from Relying on Late-Disclosed School District Witnesses." This Court should deny the Motion for multiple reasons, summarized as follows:

- Defendants' Motion is procedurally improper, as it was filed without a meet-and-confer process, and after Magistrate Judge Kang instructed the parties to try to reach a resolution. It should have been presented to Judge Kang.

- Plaintiffs timely supplemented their interrogatory responses after learning that the five witnesses at issue—not seventeen, as Defendants contend—would potentially testify in this matter.

- Despite Defendants' efforts to invent prejudice, there is none. Plaintiffs have offered all of the witnesses for depositions. This Court has stipulated procedures, in place for exactly the circumstances raised in Defendants' motion,[2] should either of the districts at issue be selected as a trial bellwether case.

### I.    STATEMENT OF THE ISSUES

**A.** Should Defendants' Motion be denied as procedurally improper where they did not meet and confer with Plaintiffs about this motion to exclude witnesses, and where the rules required the Motion to be filed with Magistrate Judge Kang?

**B.** Should Defendants' Motion be denied where they allege untimely disclosures and Plaintiffs' counsel first spoke with every potential witness at issue within one month of disclosure, and all but one within 18 days of disclosure?

**C.** Should Defendants' Motion be denied due to lack of prejudice where Defendants already have extensive document discovery from the only two custodians who

---

[1] In this brief, "Plaintiffs" refers to the Plaintiffs at issue based on the motion, specifically the Jordan, Hillsborough County, and Tucson school districts. Defendants' brief refers to this group of Plaintiffs as the "Wagstaff Plaintiffs."

[2] *See* Dkt. 1750 (Stipulation and Order Regarding Rule 26(A)(1)(A)(I) Identification of Priority Witnesses in School District Cases).

1    remain at issue, and where the Plaintiffs have offered to produce the five witnesses

2    who remain at issue for depositions if their district is chosen as a trial bellwether?

3    **II.    BACKGROUND**

4    The genesis of this dispute is as follows. On April 4, 2025, the Hillsborough County (Fla.),

5    Jordan (Utah), and Tucson (Ariz.) school districts supplemented their interrogatory responses. In

6    doing so, they identified a combined seventeen witnesses who potentially had knowledge relevant

7    to their cases. (Brane Decl., ¶ 4.) All of these witnesses are fact witnesses who observed the impact

8    of social media within their respective school districts—as students, teachers, or school-based

9    administrators. (Brane Decl., ¶ 5.)

10    On April 16, 2025, the parties conferred about the scope and timing of additional discovery

11    relevant to these potential witnesses. (Brane Decl., ¶ 6.)

12    On April 22, Defense counsel raised the issue during a hearing before Judge Kang. Plaintiffs'

13    counsel noted that these individuals were merely **potential** witnesses who had relevant information,

14    and that the deadline to identify **actual** witnesses was not until September. (Brane Decl., ¶ 7;

15    Discovery Hearing Tr., 4/22/25, at 16:5-17:3, Ex. A to Brane Decl.) After further discussion, the

16    Court instructed the parties that "if you all think these people are important enough for future

17    ongoing purposes in the case, then I would encourage you to come up with a joint plan to figure out

18    how to get the discovery done that … is needed." (*Id.* at 18:23-19:3; *see also id.* at 19:17-22 (Court:

19    "I'm not saying discovery is needed. But if discovery is needed, you'll work out a way to get it done

20    as quickly as possible and narrowing the number of people that were actually involved.")

21    Plaintiffs' counsel took that directive to heart. On April 25, following an April 24 meet and

22    confer, counsel identified nine out of the seventeen individuals previously identified in the

23    supplemental interrogatory responses whom Plaintiffs would not rely on, obviating the need for

24    Defendants to depose them. (Brane Decl., ¶ 8.) Plaintiffs' counsel further agreed to produce the

25    remaining eight individuals for depositions. Plaintiffs also agreed to facilitate additional discovery,

26    including producing the custodial files of the two staff members among this group of eight. (Brane

27    Decl., ¶ 9.)

28

-2-

1    Four days later, Defendants' counsel e-mailed Plaintiffs' counsel with a new, greatly

2    expanded list of discovery demands, similar to those set out in pages 12-13 of Defendants' Motion.

3    (Langner e-mail of 4-29-25, Brane Decl. ¶ 10 and Ex. B.) This list moved far beyond discovery from

4    the eight individuals at issue, taking the parties further away from, rather than closer to, a

5    compromise. While Plaintiffs' counsel was still digesting the expanded scope of Defendants'

6    demands, Defense counsel e-mailed again on May 8, stating that, actually, "no amount of additional

7    discovery can cure the prejudice to Defendants, and certainly not under the current schedule."

8    (Langner e-mail of 5-8-25, Brane Decl. ¶ 11 and Ex. B.) Defense counsel further indicated their

9    plans to file, the next day, "a motion to exclude the untimely disclosed witnesses in the Hillsborough,

10    Jordan, and Tucson school district cases." (*Id.*) Defendants never initiated a meet-and-confer process

11    regarding their motion to exclude witnesses. (Brane Decl., ¶ 16.)

12    Subsequently, Defendants used their single peremptory strike to remove Hillsborough

13    County from the trial bellwether pool, mooting the need for any additional discovery as to three of

14    the eight witnesses originally at issue in this motion. (Brane Decl., ¶ 12.) This leaves just five

15    relevant individuals remaining who could be called at a bellwether trial: (1) a Jordan teacher, (2) a

16    Tucson administrator, (3) a current Jordan student, (4) a former Jordan student, and (5) a current

17    Tucson student. (Brane Decl., ¶ 13.)

18    For the reasons set forth below, the Court should deny Defendants' sweeping request for

19    relief predicated on Plaintiffs' disclosure of these five individuals.

20    **III.    ARGUMENT**

21    **A.    Defendants' Motion Violates this District's Local Rules and this Court's**

22    **Standing Orders.**

23    Defendants' motion is procedurally defective and can be denied on this basis alone. There

24    was no meet-and-confer process as to the issue now before this Court, as the rules require (and as

25    Judge Kang instructed). Further, Defendants should have brought their motion to Judge Kang

26    (having already previewed it at the Discovery Master Conference on April 22, 2025), rather than

27    improperly burdening the Court with this discovery dispute.

28

*1. The parties have not met and conferred.*

All motions made under Federal Rule of Civil Procedure 37(a) "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* N.D. Cal. Local Rule 37-1(a). Where no such certification exists, that provides the court with a basis to deny the motion. *Aguilera v. Molina*, No. 18-CV-03389-HSG, 2021 WL 1845534, at *1 (N.D. Cal. Jan. 22, 2021). And where, as here, a party moves to exclude witnesses, N.D. Cal. Local Rule 37-4(b)(2) requires a declaration "describing in detail the efforts made by the moving party to secure compliance without intervention by the Court." Yet, Defendants never conferred with Plaintiffs about filing a motion to exclude and have provided no declaration about their efforts to resolve the dispute. (Brane Decl., ¶ 16; *see also generally* Dkt. No. 1952-1.)

*2. Defendants' discovery motion should have been filed with Judge Kang.*

Defendants also improperly filed their Motion with this Court rather than before Judge Kang. Local Rule 7.1(b) requires that "motions must be directed to the Judge to whom the action is assigned ... ." In this matter, discovery issues are assigned to Magistrate Judge Kang. Thus, motions regarding discovery disputes should be directed to Judge Kang. Instead, Defendants filed their Motion in this Court, thereby skirting Judge Kang's discovery dispute resolution process. (*See* Judge Kang Standing Order, § H.2 (requiring final meet and confer followed by letter to the court identifying the matters still in dispute, a description of each side's position, and description of each side's proposed compromise on each issue).)[3] This Court's Standing Order further provides that even when the District Court supervises discovery—which is not the case in this MDL—the parties must obtain leave of Court to file a motion about a discovery dispute. (Judge Gonzalez Rogers Standing Order, § 8.) Defendants did not seek leave to file a motion in this Court.

Defendants may argue that their framing of the Motion as a motion to preclude evidence

---

[3] Initially, Defendants requested a final meet and confer under § H.2 regarding additional discovery, and the parties discussed a joint letter brief schedule, which Defendants said they would propose. They never did.

takes it out of the "discovery" realm. But any such assertion would lack merit. This dispute derives from Plaintiffs' supplementation of **discovery**. Defendants' Motion is based on **discovery** rules within the Federal Rules of Civil Procedure. (*See* Mot. at 6 (citing Rules 26(a), 26(e), and 37(c) as the foundation for Defendants' argument).) And clearly, Defense counsel understood that this dispute was a discovery dispute, because they first raised it with Judge Kang. (Discovery Hearing Tr., 4/22/25, at 14:1-15:4, Ex. A to Brane Decl.) Defendants cannot transform this into an evidentiary dispute simply by asking that a discovery sanction preclude evidence.

**B.      Defendants' Motion Also Fails Substantively, as Plaintiffs Complied with Rule 26(e), and Any Alleged Non-Compliance Was Harmless.**

*1.   Plaintiffs timely supplemented their initial disclosures.*

The first reason that this Court should reject Defendants' Motion is that Plaintiffs have not violated any rules. Defendants' argument is based on Rule 26(e), which requires parties to supplement their initial disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Previously, the rule required that responses be amended "at appropriate intervals" or "seasonably." The Advisory Committee Notes indicate that "[t]he fine distinction between these phrases has not been observed in practice." Fed. R. Civ. P. 26, Advisory Comm. Notes, 2007 Amendment. There is also "no bright line rule that such supplementation is improper if made after the expert disclosure deadline or even after the close of discovery." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017). "Instead, the key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff." *Id.*

Defendants' claim that Plaintiffs have violated this rule is baseless. First, Defendants claim that Plaintiffs gave them the impression that they would not rely on any school-specific staff members or students. But their argument is unsupported by **any** statement to that effect from Plaintiffs or their counsel. Defendants cite a letter opposing mass production of students' individual

records,[4] initial discovery responses that focus on district-level employees, and the fact that Plaintiffs' claims are not based on harms to particular individuals. (Mot. at 2-4.) But Defendants cannot cite any statement, orally or in writing, in which Plaintiffs' counsel disclaimed the right to rely on teachers or students as witnesses.[5] Clearly, even if Plaintiffs' claims are based on collective harms—which they are—teachers and students are important eyewitnesses to those harms. Plaintiffs have not "reversed course" by identifying individuals who might have knowledge relevant to their claims. (*See id.* at 4.) Nor are Plaintiffs presenting any new legal theories through these potential witnesses. (Brane Decl., ¶ 18.)

Defendants also incorrectly claim that Plaintiffs hid these potential witnesses from Defendants. In reality, Plaintiffs' counsel did not make first contact with any of these individuals until March 4, 2025, when counsel first spoke with Andrea Hinojosa, a teacher in the Jordan district. (Brane Decl., ¶ 19.) The dates of first contact for the other four potential witnesses remaining at issue are: March 21 (Clarindo Rubio, Dean of Students at Tucson Magnet School), March 28 (Maizie Hendrych, Tucson student), April 3 (Logan Dunford, Jordan student), and April 4 (Ian Sullivan, Jordan former student). (Brane Decl., ¶¶ 20-23.) Thus, Plaintiffs' counsel disclosed these names 31, 14, seven, one, and zero days after first speaking with them. Again, the key question is whether the timing of these disclosures was "reasonable based on when the information was available to the plaintiff." *Silvagni*, 320 F.R.D. at 241. It was.

---

[4] Plaintiffs' position that students are relevant witnesses does not contradict their position against broad discovery of student records, as Defendants suggest. Individual student records are immaterial to a case that is based on the general effect of social media use, but individual students and teachers are witnesses to that general effect in their schools. Moreover, Plaintiffs offered to stipulate that none of the individual students would testify about any harms they may have suffered from their social media. Defendants flatly ignored Plaintiffs' stipulation offer and continued to demand individual student records.

[5] To the contrary, as Defendants' Motion acknowledges, Plaintiffs stated they would be identifying some school-level custodians or sources of relevant information, e.g., testimony. And other bellwether school districts have identified school-level custodians and/or witnesses, including among their Priority Witnesses, without any similar cries of foul play or allegations of a change in legal theory or the scope of relevance.

The overbroad interrogatory at issue asked for "every Person likely to have discoverable information related to Plaintiffs' claims," (Mot. at 2), so arguably every student in every district is implicated. The provision of Rule 26(a) that Defendants rely on is narrower, though, in that it requires the identification of individuals who are likely to have discoverable information that the party may use to support its claims. (Mot. at 6 (citing *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011)). Plaintiffs' counsel did not know what specific information the individuals at issue possessed, or whether they had any willingness to participate in this litigation, until speaking with them—in some cases, more than once. (Brane Decl., ¶ 24.)

Defendants are correct about one thing: Plaintiffs initially focused their efforts on district-wide witnesses. (Brane Decl., ¶ 25.) Plaintiffs agree that these are important witnesses, and as Defendants' numbers reflect, Plaintiffs' counsel were not dilatory. Regarding the three districts raised by Defendants' motion, Plaintiffs named 76 individuals in June 2024, and then named additional individuals in September 2024. (Mot. at 2-3.) There was then a focus on discovery related to those district-level witnesses. (Brane Decl., ¶ 25.) But over the course of the discovery period, Plaintiffs' counsel's ongoing investigation led them to identify school-level witnesses who could provide a different perspective from that of district administrators, albeit on the same issues. (Brane Decl., ¶ 26.) That additional investigation led to the names produced on April 4.

This order of operation, beginning with district-level witnesses and focusing later on school-specific witnesses, is logical and helpful to Defendants. District-level employees require more discovery, as they have more custodial documents and a broader range of topics to address at depositions. (Brane Decl., ¶ 27.) Once Plaintiffs' counsel determined the school-specific individuals who had relevant knowledge, and who might potentially participate in the case, they shared that information in a "timely manner." Fed. R. Civ. P. 26(e); *see also* Advisory Comm. Notes, 2007 Amendments (indicating that, in practice, responses must be supplemented "at appropriate intervals" or "seasonally"). The fact that April 4 was the last day of the discovery period is immaterial to whether Plaintiffs' supplementation was "timely," as supplementation is permitted—and even required—at all times, including after discovery has closed. *See, e.g.*, *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022).

-7-

1      Defendants speculate that Plaintiffs' supplementation could not have been timely because
2   Bryce Dunford, the father of a Jordan student, told his son he may be a witness. (Mot. at 8 & Ex.
3   L.) But Mr. Dunford did not get that suggestion from any attorney at Wagstaff & Cartmell, any of
4   the undersigned law firms, or any member of a law firm representing any plaintiff for purposes of
5   this MDL. (Brane Decl., ¶¶ 28-29.) Defendants offer no information to suggest that Plaintiffs'
6   counsel had any level of knowledge about any of these witnesses that would have required
7   supplemental discovery responses any earlier than they were made.

8          *2.  Plaintiffs' April 4 disclosures have not prejudiced Defendants, as they will have*
9              *ample opportunity to depose the five remaining witnesses at issue.*

10     Plaintiffs' disclosures have not prejudiced Defendants. Defendants already have ample
11  document discovery as to the two staff members who remain at issue. Plaintiffs have produced
12  approximately 500 custodial documents for Tucson administrator Clarinda Rubio, as well as more
13  than 300 custodial documents for Jordan administrator Andrea Hinojosa.[6] (Brane Decl., ¶ 14.). Thus,
14  Defendants already have nearly all available document discovery as to the relevant individuals. The
15  only remaining discovery to be completed is five depositions, each of which will only be necessary
16  if a particular district—Tucson or Jordan—is picked as a trial bellwether. Again, Plaintiffs have
17  offered to produce these five individuals for depositions, and the Court has time built into the
18  schedule for additional discovery. (Brane Decl., ¶ 9; CMO No. 17, Dkt. No. 1159.)

19     A late disclosure—which, for the avoidance of doubt, this was not—may be excused where
20  it was justified or harmless. Fed. R. Civ. P. 37(c)(1). The test for excusing a late disclosure considers
21  these four issues: "(1) prejudice or surprise to the party against whom the evidence is offered; (2)
22  the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad
23  faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty,*
24  *Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). All of these factors support denying relief in this case.

25

26

27  ───────────────
[6] Plaintiffs applied the same scope of discovery to these individuals' custodial files, e.g., relevant
28  time period and search terms, as all other agreed custodians.

The first three elements are related. There is no prejudice to Defendants because they are able to take the depositions of the five potential witnesses at issue, and they have the documents they need to take those depositions, thereby curing any potential prejudice and preventing any disruption of trial. Plaintiffs offered all of these depositions, both during the meet-and-confer process and after Defendants filed their Motion. (Brane Decl., ¶ 9; *see also* Mot. at 9.) The MDL schedule allows for limited additional discovery prior to trial. Specifically, CMO No. 17 sets September 22, 2025, as the date to meet and confer regarding any additional discovery. (CMO No. 17, Dkt. No. 1159, at 3.) If Tucson is a trial bellwether, then two depositions may be required. If Jordan is a trial bellwether, then three depositions may be required. Plaintiffs are willing to accommodate these depositions promptly, so that there will be no prejudice to Defendants and— addressing the third element—no disruption to those trials.

Presumably recognizing the lack of actual prejudice, Defendants have attempted to manufacture prejudice by devising a lengthy list of discovery they claim to need, predominantly on **additional** individuals. (*See* Mot. at 12-13.) Examples include custodial files for **all** similarly situated individuals—i.e., teachers and staff—at every school in the district, unredacted disciplinary records for all students, and attorney-client communications with all students, teachers, or staff members at any school in the affected districts. (*Id.*) There are some other items on Defendants' list that could potentially be agreed upon, beginning with depositions, but Defendants never conferred with Plaintiffs' counsel about the information on their list. Instead, they abruptly ended the meet-and-confer process regarding potential discovery related to these additional individuals. (Brane Decl., ¶ 11, 16 and Ex. B.) Other parts of the list are grossly overbroad and, taken at face value, suggest that no amount of discovery would satisfy Defendants.

Again, Defendants' argument is based on faulty premises. Their primary premise is that Defendants need this broad discovery because the Plaintiffs' witnesses are "cherry picked." (*See* Mot. at 5.) This overlooks the obvious: with tens of thousands of students, some form of selection is necessary. Defendants also have had ample opportunity to identify their own witnesses in these districts. Board meetings are public in both Jordan and Tucson—with agendas, minutes, and (for Jordan) videos of past meetings available online. (Brane Decl., ¶ 33.) Indeed, at a recent deposition,

1   defense counsel played a clip from a January 2024 Jordan board meeting. (Anderson Dep., 4/17/25,

2   at 116:23-117:8, Brane Decl. ¶ 33 and Ex. C.)

3       Discovery produced by Plaintiffs also provides a fruitful source for Defendants to have

4   undertaken their own investigation. Plaintiffs have produced dozens of messages sent to the Jordan

5   and Tucson school boards, expressing various viewpoints about phone use in schools and social

6   media. (Brane Decl., ¶ 31.) Plaintiffs have also produced dozens of communications with various

7   staff at the Jordan and Tucson districts from third parties, primarily parents, expressing displeasure

8   with the districts, including as to issues impacting students' mental health. (Brane Decl., ¶ 32.)

9   Finally, Defendants have had ample opportunity to obtain discovery regarding district-wide

10  information, which they could attempt to use to rebut the observations of individual teachers and

11  students. (*See* Mot. at 2-3 (noting the identification of 76 witnesses in June 2024).)

12      There is simply no need for the "months" of additional discovery proposed by Defendants.

13  (Mot. at 13.) There is, however, ample opportunity for full discovery as to the five potential

14  witnesses at issue. And it is undisputed that Plaintiffs have agreed to provide that discovery.

15  Defendants have not been prejudiced by the addition of these potential witnesses, any conceivable

16  prejudice can be cured, and the trial will not be disrupted if they are permitted to testify.

17      As to the fourth and final element of the Ninth Circuit test, there is no evidence that

18  Plaintiffs' counsel are proceeding in bad faith. Again, Plaintiffs' counsel timely revealed all of the

19  potential witnesses at issue once counsel determined they had relevant information and might be

20  willing to participate in the case. Plaintiffs' counsel met and conferred in good faith and agreed to

21  cut more than half of the seventeen witnesses originally named, five days after Judge Kang

22  admonished the parties to try to work things out. (Brane Decl., ¶ 8.) Plaintiffs have produced

23  additional custodial documents for the two school staff witnesses, and they remain willing to

24  produce any of the five potential witnesses at issue for depositions. (Brane Decl., ¶ 9.) While

25  Plaintiffs do not admit errors, it is worth noting that "'[i]t is improper to infer nefarious intent or bad

26  faith' from 'ordinary discovery errors.'" *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615

27  (C.D. Cal. 2013) (quoting *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership,* 187 F.3d 988,

28  993 (8th Cir.1999)).

1    For these reasons, this Court should conclude that any late disclosure was justified and/or

2    harmless, and it should deny Defendants' request for relief. *See In re Lemos*, 243 B.R. 96, 98 (Bankr.

3    D. Idaho 1999) (excusing late discovery responses where defendants were not prejudiced).

4              *3.   Alternatively, the relief sought by Defendants is excessive.*

5    The primary relief sought by Defendants is to preclude Plaintiffs from relying on the

6    seventeen potential witnesses disclosed on April 4 "for any purpose." (Mot. at 13.) But Plaintiffs

7    have already agreed not to rely on nine of these potential witnesses. (Brane Decl., ¶ 8.) And

8    Defendants recently struck Hillsborough County as a trial bellwether district, thereby eliminating

9    three more potential witnesses whom Plaintiffs had not already cut. (Brane Decl., ¶¶ 12-13.) Thus,

10   the motion should be denied as moot for twelve of the seventeen witnesses previously at issue.

11   As to the remaining five potential witnesses, the relief sought is excessive. "In practice,

12   exclusion sanctions are generally limited to 'extreme situations.'" *K.D. v. United Airlines, Inc.*, No.

13   217CV02825RFBNJK, 2018 WL 6028694, at *3 (D. Nev. Nov. 16, 2018) (quoting *City & County*

14   *of San Francisco v. Tutor–Saliba*, 218 F.R.D. 219, 222 (N.D. Cal. 2003); *see also R & R Sails, Inc.*

15   *v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247–48 (9th Cir. 2012).

16   This situation is far from "extreme." If Tucson or Jordan is picked as a trial bellwether, then

17   either two or three fact witnesses can be deposed. If both are picked, then the total number is five—

18   hardly an extreme situation. These witnesses will be small parts of long and complex trials. As laid

19   out above, there is no prejudice to Defendants from letting them testify. Further, striking these

20   potential witnesses would prevent the jury from getting a site-level perspective as to the harms

21   caused by social media in these districts. Seeing this testimony and Defendants' cross-examination

22   will give jurors a better understanding of the issues at stake in this litigation.

23   The alternative requests for relief are equally untenable. This Court should not remove two

24   districts from the bellwether pool—indeed, the only two districts west of the Mississippi—over a

25   dispute about a small handful of potential fact witnesses, among dozens. Defendants' argument is

26   the equivalent of trying to strike potentially unfavorable jurors for cause without an adequate

27   showing. Exclusion of these witnesses would unfairly tilt the process in Defendants' favor. Finally,

28   the request to push back the entire schedule by 90 to 120 days is unfounded, given the limited

1  discovery that **may** need to be conducted as to these five individuals. Unless both districts are picked

2  as trial bellwethers, that number will reduce to three, two, or none. This claim of needing three or

3  four months is based on Defendants' conception as to what additional discovery needs to be

4  conducted, but that conception is overbroad, as discussed above.

5          This Court, therefore, should reject all sanctions proposed by Defendants.

6                  *4.  None of Defendants' cited cases are even close to being on point.*

7          The inquiry that Defendants' motion necessitates is inherently fact- and case-specific. While

8  the legal standards from caselaw are important, no case has a fact pattern close to this one.

9  Defendants claim important similarities to two cases, citing three more in a footnote, but all five are

10 easily distinguishable.

11         One obvious distinction, noted above, is that none of the five cases derive from MDLs where,

12 as here, it is unknown whether the case will be picked for trial, and it appears that none had a built-

13 in window for additional discovery. *See generally Jackson v. Am. Fam. Mut. Ins. Co.*, No. 2:10-CV-

14 01874-LRH, 2012 WL 845646 (D. Nev. Mar. 12, 2012); *Vieste, LLC v. Hill Redwood Dev.*, No. C-

15 09-04024 JSW DMR, 2011 WL 2181200 (N.D. Cal. June 3, 2011); *see also Homyk v.*

16 *ChemoCentryx, Inc.*, No. 21-CV-03343-JST (LJC), 2024 WL 5150447 (N.D. Cal. Aug. 8, 2024);

17 *Baird v. Blackrock Institutional Tr. Co., N.A.*, 330 F.R.D. 241 (N.D. Cal. 2019); *Finjan, Inc. v.*

18 *Proofpoint, Inc.*, No. 313CV05808HSGHRL, 2015 WL 9900617 (N.D. Cal. Oct. 26, 2015).

19         Another key distinction is that all witnesses at issue in the cases Defendants cite were well

20 known to the late-disclosing party long before the time of disclosure. *See Jackson*, 2012 WL 845646,

21 at *3 (witnesses were friends of plaintiffs before the accident at issue); *Vieste, LLC*, 2011 WL

22 2181200, at *2 (six witnesses known from the beginning of the case were disclosed at the last

23 minute); *Homyk*, 2024 WL 5150447, at *2 (individual was disclosed as potential witness more than

24 a year after being subpoenaed); *Baird*, 330 F.R.D. at 243 (corporation would have known which

25 employees were involved from the beginning but disclosed witness late); *Finjan, Inc.*, 2015 WL

26 9900617, at *2-3 (witnesses in patent case had been well known to late-disclosing party). Here, as

27 described above, Plaintiffs' counsel did not locate and speak with the five potential witnesses at

28 issue until the month before disclosure.

While those are critical distinctions, Defendants' cases have additional factors that separate them from the instant matter. In *Jackson*, 2012 WL 845646, at *3, for instance, the court had previously extended discovery and admonished the parties that it would not do so again, meaning there was no opportunity to cure prejudice. In *Vieste, LLC*, 2011 WL 2181200, at *3-4, the late-disclosing party made no effort to justify the timing of the disclosure, and there were several other discovery abuses at play. And in *Homyk*, 2024 WL 5150447, at *5, the defendants failed to produce documents from an organization that conducted the clinical trial at the heart of the case. *See also Baird*, 330 F.R.D. at 248 (late-disclosing party offered no explanation for its delay).

Defendants have cited no case with circumstances similar to this one. They have cited no case where the witnesses at issue are a small subset of the fact witnesses; where the witnesses were disclosed quickly after being identified by counsel; where plaintiffs met and conferred in good faith but the defendants did not respond in kind; and where there is time built into the schedule for depositions, which have been offered by the plaintiffs.

## IV.     CONCLUSION

As laid out above, Plaintiffs did not violate Rule 26(e), and Defendants have not been prejudiced by the timing of Plaintiffs' disclosure of five fact witnesses. This Court should deny Defendants' motion.

**Dated:** May 23, 2025                    */s/ Austin Brane*

Austin Brane, SBN 286227
Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
abrane@wcllp.com
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
James Lampkin (*pro hac vice*)
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
James. Lampkin@BeasleyAllen.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

***Counsel for Plaintiff***

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that I filed the foregoing on May 23, 2025, using the Court's ECF filing

3

system, thereby sending notice of the filing to all counsel of record in this matter.

4

5

                    */s/ Austin Brane*_____

                    **Counsel for Plaintiffs**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28