# **<u>EXHIBIT A</u>**

Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Peter H. Kang, Magistrate Judge

```
IN RE:  SOCIAL MEDIA          )
ADOLESCENT ADDICTION/PERSONAL )
INJURY PRODUCTS LIABILITY     )
LITIGATION.                   )
                              )  NO. 22-MD-03047 YGR (PHK)
_____)
```

San Francisco, California
Tuesday, April 22, 2025

**APPEARANCES:**

For Plaintiffs:

        LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
        275 Battery Street, 29th Floor
        San Francisco, California 94111
   BY:  **LEXI J. HAZAM, ATTORNEY AT LAW**

For Plaintiffs:

        SOCIAL MEDIA VICTIMS LAW CENTER
        600 1st Avenue, Suite 102
        Seattle, Washington 98104
   BY:  **GLENN DRAPER, ATTORNEY AT LAW**

For Plaintiff Jefferson County School District R-1:
        WAGSTAFF & CARTMELL LLP
        4740 Grand Avenue, Suite 300
        Kansas City, Missouri 64112
   BY:  **AUSTIN P. BRANE, ATTORNEY AT LAW**

For Plaintiff State of California:
        CALIFORNIA DEPARTMENT OF JUSTICE
        455 Golden Gate Avenue, 11th Floor
        San Francisco, California 94102
   BY:  **MEGAN O'NEILL, DEPUTY ATTORNEY GENERAL**

     **(APPEARANCES CONTINUED ON FOLLOWING PAGE.)**

REPORTED BY:  Kendra A. Steppler, RPR, CRR
        Official United States Reporter

**APPEARANCES:** (CONTINUED)

For Plaintiff State of California:
          CALIFORNIA DEPARTMENT OF JUSTICE
          1515 Clay Street, Suite 2000
          Oakland, California 94612
     BY:  **JOSHUA E. OLSZEWSKI-JUBELIRER**
          **DEPUTY ATTORNEY GENERAL**

For Plaintiff State of Colorado:
          COLORADO DEPARTMENT OF LAW
          1300 Broadway, 6th Floor
          Denver, Colorado 80203
     BY:  **KRISTA BATCHELDER**
          **DEPUTY SOLICITOR GENERAL**

For Plaintiff Commonwealth of Kentucky:
          KENTUCKY OFFICE OF THE ATTORNEY GENERAL
          Office of Consumer Protection
          1024 Capital Center Drive, Suite 200
          Frankfort, Kentucky 40601
     BY:  **GARY THOMPSON**
          **ZACHARY RICHARDS**
          **ASSISTANT ATTORNEYS GENERAL**

For Plaintiff State of Arizona:
          ARIZONA OFFICE OF THE ATTORNEY GENERAL
          2005 North Central Avenue
          Phoenix, Arizona 85004
     BY:  **REAGAN HEALEY**
          **ASSISTANT ATTORNEY GENERAL**

For Defendant Meta:
          COVINGTON & BURLING LLP
          1999 Avenue of the Stars, Suite 3500
          Los Angeles, California 90067
     BY:  **ASHLEY M. SIMONSEN, ATTORNEY AT LAW**

For Defendant Meta:
          COVINGTON & BURLING LLP
          The New York Times Building
          620 Eighth Avenue
          New York, New York 10018
     BY:  **CHRISTOPHER YEUNG, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE.)**

1    **APPEARANCES:** (CONTINUED)

2    For Defendant Meta:

3                         COVINGTON & BURLING LLP
                          One City Center
                          850 Tenth Street, NW
4                         Washington, D.C.  20001
                     BY:  **PAUL W. SCHMIDT, ATTORNEY AT LAW**
5
     For Defendant Meta:
6
                          SHOOK, HARDY & BACON LLP
                          2555 Grand Boulevard
7                         Kansas City, Missouri 64108
                     BY:  **GABRIEL P. EGLI, ATTORNEY AT LAW**
8
     For Defendant Snap:
9
                          MUNGER, TOLLES & OLSON LLP
                          350 South Grand Avenue, 50th Floor
10                        Los Angeles, California 90071
                     BY:  **FAYE PAUL TELLER, ATTORNEY AT LAW**
11
     For Defendant TikTok:
12
                          KING & SPALDING LLP
                          50 California Street, Suite 3300
13                        San Francisco, California 94111
                     BY:  **BAILEY J. LANGNER, ATTORNEY AT LAW**
14
     For Defendant TikTok:
15
                          KING & SPALDING LLP
                          1180 Peachtree Street NE, Suite 1600
16                        Atlanta, Georgia 30309
                     BY:  **MARK A. SENTENAC, ATTORNEY AT LAW**
17
     For Defendant YouTube:
18
                          WILSON, SONSINI, GOODRICH & ROSATI
                          1 Market Street
19                        San Francisco, California 94105
                     BY:  **JENNA K. STOKES, ATTORNEY AT LAW**
20
     For the Office of the Governor and Executive Agencies:
21                        OLSON REMCHO, LLP
                          1901 Harrison Street, Suite 1550
22                        Oakland, California 94612
                     BY:  **MARGARET R. PRINZING, ATTORNEY AT LAW**
23

24

25

| | |
|---|---|
| 1 | **<u>Tuesday - April 22, 2025</u>**                    <u>1:14 p.m.</u> |
| 2 | <u>P R O C E E D I N G S</u> |
| 3 | ---o0o--- |
| 4 | **THE COURTROOM DEPUTY:**  Please remain seated and come |
| 5 | to order.  Court is now in session, the Honorable Peter H. Kang |
| 6 | presiding. |
| 7 | We're going to set up the Zoom for Judge Kang.  But before |
| 8 | we do that, just a reminder, we do have a remote reporter.  So |
| 9 | please speak really closely into the microphones and try not to |
| 10 | move them so that we get a good audio.  And always state your |
| 11 | name before you speak. |
| 12 | (Pause in proceedings.) |
| 13 | **THE COURTROOM DEPUTY:**  Now calling 22-MD-3047-YGR, |
| 14 | In Re Social Media Adolescent Addiction and Personal Injury |
| 15 | Products Liability Litigation. |
| 16 | Counsel, please approach when speaking, and state your |
| 17 | appearances clearly into the record.  Thank you. |
| 18 | **THE COURT:**  All right.  This is the first time we've |
| 19 | done a fully -- where I'm on camera too -- on the Zoom.  And I |
| 20 | guess I don't really follow, strictly, the provisions of Local |
| 21 | Rule 77-3.  I assume -- and we've been doing it this way -- |
| 22 | nobody has any objections to doing remote access of these |
| 23 | proceedings, as we've been doing by videoconference; correct? |
| 24 | **MS. HAZAM:**  No, Your Honor. |
| 25 | **THE COURT:**  Okay.  And I'd just remind everyone |

1   watching on Zoom, as well as in the courtroom, Local

2   Rule 77-3(d) prohibits persons with remote access to the

3   proceedings from -- you're prohibited from recording,

4   photographing, or retransmitting these proceedings.

5        As I've done at other prior discovery management

6   conferences, I am encouraging all the lawyers watching and all

7   the lawyers in the room to sign up for pro bono cases in the

8   court.

9        Currently, we have two opportunities for trial down in the

10  San Jose courthouse.  One is a 1983 civil rights action for a

11  state inmate at Salinas Valley State Prison.  The other is also

12  a full trial opportunity, also a 1983 case, from the same

13  prison but different plaintiff.  And then there's a 1983 case

14  up here in this division before Judge Orrick involving also an

15  inmate at Salinas Valley State Prison.

16       So, remember, please encourage your friends, your family,

17  your colleagues to sign up for pro bono cases.  They're great

18  opportunities.  As you can tell, there's opportunities to go to

19  trial and there are opportunities to serve the community.

20       Okay.  I guess, going administratively first, any updates

21  on the dismissals?  Anybody want to...

22           MR. YEUNG:  Chris Yeung from Convington for Meta.

23       We've connected with Missouri's counsel.  They were unable

24  to file the dismissal papers today before the DMC, but they

25  have told me that they're forthcoming.  So they should be --

1    that should be done soon.

2         **THE COURT:**  Okay.  What about the other states?

3         **MR. YEUNG:**  That's the only state that is dismissing

4    all of their claims.  With respect to the states that are

5    dismissing their consumer protection claims, I think we're

6    still negotiating -- there's -- we got some feedback, I think

7    on Monday, that we're planning on responding to, that I think

8    there's just one issue outstanding.  But I think we're close.

9         **THE COURT:**  Okay.  And then I saw, in your CMC

10   statement to Judge Gonzalez Rogers, you're working out -- so

11   you already filed some limited expert discovery protocol.  And

12   I think she must have raised the issues of planning and

13   scheduling expert discovery as we move to that phase of the

14   case.  I just want to get an update on that and see if there's

15   anything I need to be apprised of.

16        **MS. SIMONSEN:**  Ashley Simonsen, Covington & Burling,

17   for the Meta defendants.

18        Your Honor, we have been in discussions with the state AGs

19   about a possible extension of four of the AG's AG-specific

20   experts and are hoping to reach an agreement or identify the

21   areas where there isn't agreement this week.  It may be that

22   Judge Gonzalez Rogers wants to speak with us about the expert

23   schedule tomorrow.  I don't think that we've been made aware of

24   that necessarily.

25        **THE COURT:**  Okay.

1          **MS. O'NEILL:**  And Megan O'Neill for the state AGs.

2          **THE COURT:**  Yeah.

3          **MS. O'NEILL:**  That is my understanding, as well.

4          **THE COURT:**  Okay.  Because I was curious -- because, I

5     mean, we didn't really -- we've only lightly touched on the

6     imminence of expert discovery coming.  So we haven't talked

7     about that.  So I was -- I saw the limited protocol for the

8     document production on the docket.

9          **MS. HAZAM:**  Your Honor, Lexi Hazam for plaintiffs.

10         Yes, that is a protocol called for in Judge Gonzalez

11    Rogers' original scheduling order.  We were supposed to discuss

12    productions of expert materials and submit a status report by

13    yesterday.  And we made some progress in reaching agreement on

14    that; reported it to the Court on same.  There are a few issues

15    as to which we're still meeting and conferring.

16         **THE COURT:**  Okay.  That led me to believe that you

17    were in active discussions with Judge Gonzalez Rogers about the

18    contours and timing and planning for expert discovery.  So I

19    take it I assumed too much.

20         **MS. HAZAM:**  Well, no, Your Honor.  You assumed

21    correctly, in the sense that Judge Gonzalez Rogers does have,

22    in her scheduling CMOs 10, 17, and 18, various dates governing

23    expert discovery.  So when initial reports are due, responsive

24    reports, rebuttal reports, close of expert discovery, there are

25    dates for all of that in her schedule.  And this was another

 1  date she had.  That before those disclosures happened, we would

 2  discuss how we would handle production of expert materials

 3  associated with their disclosures.

 4      **THE COURT:**  Okay.  All I would ask then is if -- maybe

 5  in the next EMC statement -- update me if there's anything I

 6  need to worry about, in terms of expert discovery, whether it's

 7  contours, deadlines, whatever.  Okay?

 8      **MS. HAZAM:**  Of course, Your Honor.

 9      **MS. SIMONSEN:**  Okay.

10      **THE COURT:**  All right.  So last the docket was

11  checked, the motion to compel that was supposed to be

12  transferred in from the Eastern District of Tennessee hasn't

13  hit our docket yet.  Is that my -- am I missing something or --

14  you're all nodding.

15      **MS. HAZAM:**  It looks like we're in agreement that, as

16  far as we know, that transfer has not yet occurred.  I did

17  confirm that with plaintiffs' counsel this morning.

18      **MS. SIMONSEN:**  That's right.

19      **THE COURT:**  Okay.  Well, I was going to hit this at

20  the end.  So does that mean we need a DMC in May then or I'm

21  going to handle this as a separately noticed motion?  How do

22  you want to handle it?

23      **MS. SIMONSEN:**  Your Honor, for the defendants, I think

24  we probably could handle it as a separately noticed motion and

25  follow up with the Court if it makes sense to schedule a

1   broader DMC.  But as we are moving into the expert discovery

2   phase, I think probably just any kind of lingering discovery

3   disputes that may exist on fact discovery can probably be teed

4   up on a one-off basis.

5          **MS. HAZAM:**  I don't disagree.  It may depend on how

6   many such issues there are.  I don't know that we know right

7   now today.  If there are a number of issues, maybe it makes

8   sense to have a single date in May, if Your Honor has

9   availability to have a status conference.  And I have not

10  checked with the plaintiffs' counsel on this particular matter.

11  I would just want to do so.  But I don't necessarily object to

12  what Ms. Simonsen is suggesting.

13         **THE COURT:**  My recollection is at the -- when we last

14  met, we all reached consensus there was no need to set a DMC in

15  May.

16         **MS. HAZAM:**  That's right.

17         **THE COURT:**  And there's still no need -- sitting here

18  today, there's no need to set one in May?

19         **MS. HAZAM:**  I don't think so.  It may make sense to

20  revisit that at the end of this hearing.  There may be some

21  issues that are discussed that could impact that.

22         **THE COURT:**  All right.

23         **MS. HAZAM:**  I don't think so at this moment.

24         **THE COURT:**  Okay.

25         **MS. O'NEILL:**  And just if I may quickly?  Megan

1   O'Neill, again, for the state AGs.

2       I think there are a number of issues that the state AGs

3   are working on with Meta.  And we're hopeful to reach

4   resolution on those issues.  And these are all related to fact

5   discovery.  But I think it may make sense to set a date -- or

6   at least a tentative date -- so that we have something that

7   we're working towards.

8           **THE COURT:**  Do we know when this M.G. motion is going

9   to -- does that mean the initials of the plaintiff I take it or

10  is that --

11          **MS. SIMONSEN:**  I think that's right, Your Honor.

12          **THE COURT:**  Yeah.  Do we know when that's going to hit

13  our docket?

14          **MS. HAZAM:**  I don't think -- Your Honor, Lexi Hazam

15  for plaintiffs.  I'm not sure anyone knows for sure.

16          **THE COURT:**  Because if it doesn't come in for another

17  month, then setting a control date in May doesn't make any

18  sense.  But if it comes in tomorrow, that might.

19      People are approaching, so...

20          **MS. SIMONSEN:**  I think just to give more detail on the

21  fact that we don't know when that motion's coming in.  But I'll

22  defer to my colleague, Mr. Egli.

23          **MR. EGLI:**  Yeah, that's right.  Gabriel Egli from

24  Shook, Hardy & Bacon for Meta defendants.

25      I think we expect the briefing to finish up in the next

1  two weeks, Your Honor, though the transfer motion is

2  uncontested.

3        **THE COURT:**  Okay.

4        **MR. EGLI:**  But we don't know how long it will take the

5  court to transfer it.

6        **THE COURT:**  Okay.  Why don't we do it this way then:

7  I'm not going to set a DMC for May.  But as motions come in,

8  whenever they come in, I'll set them for a hearing.  And if I

9  can combine them into one hearing date, I will.  And if they're

10  separated by time or maybe there's too many or for some reason,

11  I'll exercise my discretion to set separate hearings and some

12  subset of you, I'm sure, will have to do multiple trips here.

13  Okay?

14        **MS. HAZAM:**  That's fine with plaintiffs, Your Honor.

15        **MS. SIMONSEN:**  Yes, good by defendants.  Thank you,

16  Your Honor.

17        **THE COURT:**  Okay.  And then since we're talking about

18  scheduling, last time we met, we, as a control, set a DMC for

19  June, because you were going to come back anyway for a CMC.

20  But I know that was left open to the question of do we really

21  need it.  So we're a month closer to June than we were last

22  month.  Do we think we still need that June date?

23        **MS. HAZAM:**  I --

24        **MS. SIMONSEN:**  I think, Your Honor -- from defendants'

25  perspective, I think, to the extent that there are disputes

1  that we want to tee up, we can do just as you've suggested for

2  May, which is set them for a hearing, if needed.  And I think

3  certainly the parties could confer, and if we decide it makes

4  sense to have a DMC, come back to Your Honor to ask that one be

5  set for June.

6      MS. HAZAM:  I think that's fine with plaintiffs, Your

7  Honor.  It may be the case that if some of these issues we

8  might be anticipating being teed up for May take longer, then a

9  June date makes sense.  But I think we can take it as we come.

10     THE COURT:  Okay.  Let's keep that as a hearing date

11  in June, just as a backup in case we need it, just so it

12  doesn't -- your own schedules don't get -- don't override that

13  date since it's already there.  And if we get really close to

14  it, and nothing is needed, and we've resolved everything that's

15  been teed up in the meantime, then I'll take it off calendar at

16  that point.  Okay?

17     MS. HAZAM:  Thank you, Your Honor.

18     MS. SIMONSEN:  Thank you.

19     THE COURT:  All right.  So the only -- I hope you saw

20  it.  I issued the order this morning on the Mullen deposition.

21  So we all got that?

22     MS. SIMONSEN:  Yes.  Thank you, Your Honor.

23     MS. HAZAM:  We did, Your Honor.  Thank you.

24     THE COURT:  So the only disputed discovery dispute to

25  discuss is Docket 1879, the States' responses to Meta's fourth

1    set of requests for production.

2         **MS. SIMONSEN:**  And on that issue, Your Honor -- again,

3    Ashley Simonsen for the Meta defendants -- we -- if you'll

4    indulge us, we think we are close to reaching a deal that would

5    take that dispute off the table and obviate the need for

6    argument.

7         **THE COURT:**  Okay.

8         **MS. SIMONSEN:**  We think we need maybe about 15 minutes

9    to see if we can hammer out the details of the deal.

10        **THE COURT:**  Okay.

11        **MS. SIMONSEN:**  If, with Your Honor's leave and

12   permission, we could see if we can do that and then come back

13   to Your Honor to --

14        **THE COURT:**  You know I'm all about making deals.  So

15   if you can work that out, that would be great.

16      Then -- we've covered -- I think we've covered everything

17   I was going to talk about with you today.

18        **MS. SIMONSEN:**  That's right, Your Honor, from our

19   perspective.

20        **THE COURT:**  Why don't we take a 15-minute -- 15,

21   20-minute recess.  And then you can just let my staff know if

22   you want us to take the bench again.

23        **MS. SIMONSEN:**  Very good, Your Honor.  I see a

24   colleague of mine approaching.

25        **THE COURT:**  Okay.  So maybe there are other issues.

1          **MS. LANGNER:**  Good afternoon, Your Honor.  Bailey

2     Langner, from King & Spalding, for the TikTok defendants.

3          Your Honor, there is one additional item we'd like to

4     bring to your attention from the unripe section of the

5     disputes.  It is Section IV(B)(1).

6          **THE COURT:**  IV(B)(1):  Jordan, Tucson, and

7     Hillsborough SD's belated amended responses to Rog 1?

8          **MS. LANGNER:**  Yes, correct, Your Honor.

9          We are still in the process of meeting and conferring,

10    Your Honor, with the plaintiffs, but we find ourself in a very

11    difficult situation.  These three School District plaintiffs,

12    on April 4th, the close of fact discovery, amended their

13    responses to Defendants' Interrogatory Number 1, which asked

14    for witnesses likely to have discoverable information.

15         These three Districts identified between five and seven

16    new witnesses each.  We do not have any custodial files for

17    these individuals.  It's a mix of School District personnel as

18    well as individual students, current and former, and their

19    parents.

20         You know, frankly, Your Honor, we are in a very tough

21    position with this late disclosure.  There's no way that we can

22    conduct the necessary discovery into these individuals before

23    the May 23rd briefing deadline for the bellwether trial pool.

24    We've asked that plaintiffs withdraw these individuals, you

25    know, as witnesses, and they have refused to do so.

1          We are continuing, like I said, to meet and confer, but

2   wanted to advise Your Honor that this could be coming down the

3   pipeline and is something that could significantly impact the

4   School District's schedule.

5               **MS. BRANE:**  Good afternoon, Your Honor.  Austin Brane,

6   of Wagstaff & Cartmell, for the School District Plaintiffs and

7   specifically for the Jordan, Tucson, and Hillsborough School

8   Districts.

9          As my colleague mentioned, we are still meeting and

10  conferring.  We met and conferred last week.  We hope to meet

11  and confer again in the next few days.  We understand the

12  time-sensitive nature of the dispute.  We, of course, hope to

13  resolve it.

14         If we're unable to or if there are issues that remain, we

15  would anticipate having those before you next week.  We're very

16  committed to -- in a joint letter brief.  And we're committed

17  to trying to resolve it as quickly as we can.  We understand

18  the sensitive nature.

19         I'm happy to go in further or respond to some of my

20  colleague's points if the Court's interested or happy to defer

21  that to letter briefing if that's necessary.

22              **THE COURT:**  Well, I'm just going to encourage you to

23  try to work this out.  I will remind you -- I think I've

24  reminded the parties, since day one -- of your obligations

25  under Rule 26 to supplement initial disclosures.  So if there

1    was a very late identification of witnesses in response to an

2    interrogatory, the question, in my mind, that leaps immediately

3    to my mind is why weren't they listed in the initial

4    disclosures?

5         **MS. BRANE:**  Yeah.  Candidly, Your Honor, that's how we

6    viewed and have informed our colleagues is why we did

7    supplement.  Just through ongoing investigations, including

8    meeting with our clients to prepare for depositions, we felt we

9    identified additional names that were responsive to that

10   interrogatory, which the word "witness" has been thrown around

11   a bit.  To be clear, these are not necessarily witnesses.  I've

12   informed our colleagues.  We, of course, had not -- are not at

13   the trial witness type of list stage.  There's a specific

14   deadline for that in September.

15        There also happens to be a procedure by which, if

16   defendants feel that additional discovery is needed at that

17   time, we are to meet and confer.  That's in CMO 17, where

18   there's a process laid out for that meet and confer in coming

19   up with a plan for additional discovery.

20        So these are just folks that we felt were responsive to

21   that interrogatory.  They were identified later in discovery by

22   us, as well, and disclosed shortly after that.  And we felt --

23   to the point of withdrawing them, as we've informed them.  I

24   don't know that we could under our obligations to list them

25   responsive.  I think the issue is more what happens with those

```
 1   names, discovery and otherwise.  But that's why we -- we did
 2   amend.  We felt we had an obligation to do so under Rule 26,
 3   Your Honor.
 4           THE COURT:  Okay.
 5           MS. BRANE:  But we do hope to resolve it.
 6           THE COURT:  All right.  Well --
 7           MS. HAZAM:  If I may add just one brief point, Your
 8   Honor.
 9        These are witnesses that -- including students -- that
10   purportedly have information about the impact -- you know --
11   their use and impact of social media.  In particular, the
12   plaintiffs in the Jordan School District identified the mother
13   of a suicide victim, which is a very big issue in that
14   particular case.  There was, unfortunately, a suicide cluster
15   in that School District during the relevant time period.
16        And so just -- these are not folks that we can wait until
17   later, on the eve of trial, if they are added to the trial
18   witness list.  These are people that we need to understand now
19   what kind of testimony they might provide if called as
20   witnesses.
21           THE COURT:  I'm sure you will work out a plan to take
22   any follow-up or clean-up discovery that's needed if those
23   witnesses are truly part of the case.  I mean, I think the
24   plaintiffs and defendants have -- as to treaters -- have come
25   up with a way to identify key witnesses versus non-key
```

```
 1   witnesses --

 2            MS. BRANE:  Mm-hm.

 3            THE COURT:  -- even though you're not listing people

 4   for trial purposes.  I mean, I think that's one thing to think

 5   about.  I'm not telling you to work out the deal.

 6            MS. BRANE:  Well --

 7            THE COURT:  But what I'm hearing from you is these

 8   people may or may not be key people for the plaintiffs.  And so

 9   whether or not they're responsive for discovery purposes is

10   different from whether or not you actually need to take

11   discovery from them and --

12            MS. BRANE:  And, candidly, Your Honor, the parties did

13   come up with a process through which we identified priority

14   witnesses for the School District bellwethers.  And we have not

15   changed that.  That's a work in progress.  And there's a

16   procedure in place for if we were to change that.  They'd get

17   some additional discovery.  So that's our thinking.  But, of

18   course, we'll keep talking and do so quickly.

19            THE COURT:  Okay.  But if you've read my order on the

20   Mullen deposition, I'm not a big fan of waiting until the eve

21   of trial --

22            MS. BRANE:  Sure.

23            THE COURT:  -- for discovery.  So I know what's in the

24   CMO, but, in terms of discovery management, if you all think

25   these people are important enough for future ongoing purposes
```

1    in the case, then I would encourage you to come up with a joint

2    plan to figure out how to get the discovery done that, you

3    know, is needed.

4           **MS. BRANE:** Understood.

5           **MS. LANGNER:** We will do our best, Your Honor. But,

6    again, if you're talking about individual students and their

7    personal use and impact, this opens up a giant can of worms.

8    You know, we need to understand these student records. We

9    potentially need to get their medical records. See -- are

10   they -- you know -- what other apps are they using? The type

11   of disclosures that have happened in the PI cases, you know,

12   related to their usernames for defendants' platforms.

13       This has just, again, opened up a very big can of worms --

14   or has the potential to open up a very big can of worms -- and

15   we are four weeks away from the briefing deadline for the trial

16   pool bellwethers.

17          **THE COURT:** Hopefully you won't open a huge can of

18   worms and you'll be able to narrow the scope of any discovery.

19   I'm not saying discovery is needed. But if discovery is

20   needed, you'll work out a way to get it done as quickly as

21   possible and narrowing the number of people that were actually

22   involved. Okay?

23          **MS. BRANE:** Yep. Understood, Your Honor.

24          **MS. LANGNER:** Thank you, Your Honor.

25          **MS. BRANE:** Thank you.

1          THE COURT:  More people approaching.  Another issue?

2          MR. OLSZEWSKI-JUBELIRER:  Good afternoon, Your Honor.

3  Josh Olszewski-Jubelirer for the People of the State of

4  California.

5          We just wanted to alert the Court of a brewing dispute

6  that we have with Meta over the scope of Meta's 30(b)(6)

7  testimony in response to one of our notices.  The parties

8  are -- and I should say, specifically, the dispute is about the

9  time period to be covered in the scope of that -- certain of

10  those topics.  The parties are working to resolve the issue as

11  expeditiously as possible.  And I just spoke with my

12  counterpart, who's on the negotiations at Covington just before

13  the hearing.

14          I will say, if we're unable to resolve the dispute, we may

15  need to file a brief on it as early as Friday.  And we

16  particularly wanted to alert the Court of the issue, because it

17  affects the scope of testimony for a deposition that was just

18  recently scheduled for May 8th.  In order to expedite the

19  resolution of the dispute, should we need to present it to the

20  Court, I think we -- we anticipate we would forgo the request

21  for oral argument on it.  But we just wanted to alert the Court

22  of the issue and that we are working to resolve it, if we can.

23          THE COURT:  Is that what unripe item (E)(4) is

24  referring to?

25          MR. OLSZEWSKI-JUBELIRER:  With apologies, Your Honor,

1  I don't have the DMCS in front of me right now.  But there is

2  an item in the DMCS about the scope of our notice to Meta.  I

3  think it's the State AG's --

4        **THE COURT:**  Yeah.  It's the State AG's 30(b)(6)

5  deposition notice to Meta.

6        **MR. OLSZEWSKI-JUBELIRER:**  Yes.  Yes, Your Honor.  This

7  is one of the disputes with regard to that deposition.

8        **MS. SIMONSEN:**  And I have nothing further to say --

9        **THE COURT:**  For the record --

10        **MS. SIMONSEN:**  Ashley Simonsen for the Meta

11  defendants.  Nothing further to say.  I do understand that we

12  hope to resolve this.  And if we don't, we've agreed to tee it

13  up for briefing in time to have it resolved sufficiently in

14  advance of the deposition date.

15        **THE COURT:**  Okay.  Well, if it comes in quickly, I'll

16  try to resolve it quickly.  And it may not be the world's best

17  drafted order, but I'll try to get you something on it.

18        **MS. SIMONSEN:**  Thank you, Your Honor.

19        **MR. OLSZEWSKI-JUBELIRER:**  Thank you, Your Honor.

20        **THE COURT:**  Okay.  But hopefully you can work it out.

21        **MR. OLSZEWSKI-JUBELIRER:**  Absolutely.  Thank you.

22        **THE COURT:**  All right.  Before I let you go for your

23  break, at the last month's DMC, I ruled on -- and verbally

24  ruled on -- a number of the then-pending discovery disputes and

25  asked the parties to submit stips and proposed orders to

 1    reflect what I had ruled on.

 2        The three that -- putting -- I'm going to put aside the

 3    dispute regarding the subpoenas to Mr. Bejar and Ms. Jayakumar,

 4    because I understand there's other stuff going on there.

 5        But the three that, according to my records, we don't have

 6    anything on are Docket 1775, which is the clarification of what

 7    to do about highly confidential documents to former Meta

 8    employees; Docket 1781, the depos of the three former Meta

 9    employee witnesses; and Docket 1773, which is also 1774-1

10    unredacted, which is Meta's responses to State AG's RFP

11    Number 102.

12        Where are those stips?  Or are you just going to stand on

13    what I said in the transcript?  Are you going to say it's all

14    in the transcript?

15        **MS. SIMONSEN:**  Your Honor, Ashley Simonsen for the

16    Meta defendants.

17        We have been going back and forth with plaintiffs on those

18    stipulations.  And I do apologize that it has taken some time

19    to get them in.  I know I just got some comments from

20    plaintiffs on one of them earlier this week.  So I would hope

21    that we could get those wrapped up in the next week or so.

22        I think part of it was just that we were nearing the close

23    of fact discovery around the time those orders were due, and,

24    with apologies, I think folks were focused on getting discovery

25    wrapped up.

```
 1            THE COURT:  I did it that way with the assumption that
 2   it would be quicker and not take longer.  As to those three, at
 3   least, I assume -- there's -- you're not disputing the
 4   substance of my rulings from the bench, I take it.  It's just a
 5   matter of wordsmithing the stips?
 6            MS. HAZAM:  Your Honor, if I may, Lexi Hazam for
 7   plaintiffs.
 8        On the deposition issue, there were three depositions.
 9   One of them has already taken place.  I don't know that a
10   stipulation is required as to that one, in light of that,
11   although, if Your Honor would like us to still do so, we could.
12        A second one is taking place on Friday.  And I think the
13   same thing would apply.
14        The third one, we're still waiting a date from her
15   counsel.  And there is an unripe dispute that the parties are
16   planning to brief next week if the facts regarding it do not
17   change in the meantime.
18            THE COURT:  Just to clear up the docket then, I'm
19   probably going to issue something just saying that those three
20   are resolved pursuant to my verbal directions at the last DMC.
21   And the parties are still ordered to submit any necessary stip
22   and proposed order on them, you know, as further needed.  Okay?
23   Just so we can take the gavel off those.
24            MS. HAZAM:  That's fine.
25            MS. SIMONSEN:  That makes sense, Your Honor.  Thank
```

 1  you.

 2          **MS. HAZAM:**  Thank you, Your Honor.

 3          **THE COURT:**  Okay.  Okay.  So you need -- you need 15

 4  minutes or do you want 20?  How much time do you need?

 5          **MS. SIMONSEN:**  I think 15 would be fine.

 6      Yeah, 15.

 7          **THE COURT:**  15.  Okay.  You don't have to tell my

 8  staff.  I'll just come back in 15.

 9          **MS. SIMONSEN:**  Okay.  Thank you.

10          **THE COURTROOM DEPUTY:**  We're off the record in this

11  matter.  Court is in recess until 1:55.

12                  (Recess taken at 1:40 p.m.)

13                  (Proceedings resumed at 1:56 p.m.)

14          **THE COURTROOM DEPUTY:**  Please remain seated and come

15  to order.  Court is now back in session, the Honorable Peter H.

16  Kang presiding.

17      Back on the record in 22-3047, In Re Social Media

18  Adolescent Addiction and Personal Injury Products Liability

19  Litigation.

20      As a reminder, please speak directly into the microphones

21  and state your appearances each time you speak.

22          **THE COURT:**  You're both smiling, so you worked it out.

23          **MR. THOMPSON:**  We were both just so excited to get up

24  and say we did reach an agreement, Your Honor.

25      Gary Thompson of behalf of State AGs.

1          **MS. SIMONSEN:**  Ashley Simonsen for the Meta

2    defendants.

3        We've reached an agreement.  Thank you, Your Honor.

4          **THE COURT:**  Great.  So just for the record then, that

5    means Docket Number --

6          **MR. THOMPSON:**  I believe it's 1879, Your Honor.

7          **MS. SIMONSEN:**  I believe it's 1879, Your Honor.

8          **THE COURT:**  1879 is withdrawn as moot; right?

9          **MS. SIMONSEN:**  Yes.

10         **MR. THOMPSON:**  Yes, Your Honor.

11         **THE COURT:**  Okay.  This could be our last DMC.

12         **MS. SIMONSEN:**  Hopefully we will all get along well

13   enough that that is the case.

14         **THE COURT:**  That's great.  Continue to work things

15   out, and good luck with expert discovery.

16         **MS. SIMONSEN:**  Thank you so much.

17         **MR. THOMPSON:**  Thank you, Your Honor.

18         **THE COURT:**  Thank you.

19         **MS. HAZAM:**  Thank you, Your Honor.

20         **THE COURTROOM DEPUTY:**  We're off the record in this

21   matter.  Court is in recess.

22              (Proceedings adjourned at 1:58 p.m.)

23                    ---oOo---

24

25

1

2

3                          <u>**CERTIFICATE OF REPORTER**</u>

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Thursday, April 24, 2025

8

9

10     _____

11              Kendra A. Steppler, RPR, CRR

12           Official Reporter, U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25