UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING YOUTUBE'S SEARCH AND PRODUCTION FROM NONCUSTODIAL SOURCE "B"**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Pursuant to the Court's Standing Order for Discovery in Civil Cases, the PI/SD Plaintiffs and YouTube Defendants (collectively referred to in this submission as "YouTube") respectfully submit this letter brief regarding a dispute concerning YouTube's production from noncustodial source "B."[1]

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on May 15, 2025 via videoconference and was attended by lead trial counsel for the Parties involved. Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

    This document is provisionally filed under seal, pursuant to the Order Granting Motion to File Under Seal: Setting Sealing Procedures. Dkt. 341.

Dated: May 23, 2025

                                                     Respectfully submitted,

                                                     */s/ Lexi J. Hazam*
                                                     LEXI J. HAZAM
                                                     **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
                                                     275 Battery Street, 29th Floor
                                                     San Francisco, CA 94111-3339
                                                     Telephone: 415-956-1000
                                                     lhazam@lchb.com

---

[1] Pursuant to the Court's standing order, the Parties have equally divided five single-spaced pages between YouTube and Plaintiffs to address their respective positions. *See* https://www.cand.uscourts.gov/wp-content/uploads/judges/kang-phk/PHK-Final-DiscoveryStanding-Order-v1.2-2023_06_01-1.pdf.

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 Challenger Road, 6th floor
Ridgefield Park, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

JOSEPH G. VANZANDT
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

EMILY C. JEFFCOTT
**MORGAN & MORGAN**
220 W. Garden Street, 9th Floor
Pensacola, FL 32502
Telephone: 850-316-9100
ejeffcott@forthepeople.com

Federal/State Liaison Counsel

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 Second Avenue, Suite 2100
Seattle, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
Telephone: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY LLP**
112 Madison Ave, 7th Floor
New York, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY, PSC**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Telephone: 888-606-5297
semery@justicestartshere.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
Telephone: (646) 666-8908
carrie@cagoldberglaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY, PSC**
600 West Main Street, Suite 100
Louisville, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

SIN-TING MARY LIU

**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th floor
New York, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: 212.213.8311
hnappi@hrsclaw.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, P.C.**
1500 Rosecrans Ave., Ste. 500
Manhattan Beach, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH

**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
Telephone: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
JOSEPH H. MELTZER
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com
jmeltzer@ktmc.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

*Attorneys for Plaintiffs*


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Christopher Chiou*
Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street
Los Angeles, CA 90071-2048
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com

Brian M. Willen
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Email: bwillen@wsgr.com

Attorneys for Defendants YouTube, LLC, Google LLC

WILLIAMS & CONNOLLY LLP

Joseph G. Petrosinelli
jpetrosinelli@wc.com
Ashely W. Hardin
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: 202-434-5000
Fax: 202-434-5029

Attorneys for Defendants YouTube, LLC, Google LLC

MORGAN LEWIS & BOCKIUS, LLP

Brian Ercole (pro hac vice)
brian.ercole@morganlewis.com
Morgan Lewis & Bockius, LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
Morgan Lewis & Bockius, LLP
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

*Attorneys for Defendants YouTube, LLC, and Google LLC*

**<u>ATTESTATION</u>**

    I, Christopher Chiou, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: May 23, 2025

                                                                 By: */s/ Christopher Chiou*
                                                                         Christopher Chiou

**PLAINTIFFS' POSITION**

Plaintiffs have diligently met and conferred with YouTube regarding its production from ▮▮▮▮▮ ("Source B") since July 31, 2014.[2] Despite a January Order admonishing YouTube for failing to provide timely and accurate information and requiring YouTube to include individuals knowledgeable in the meet and confer process, YouTube has continued its pattern of obstruction. As detailed below, YouTube has improperly withheld relevant information from its production of Source B metadata and failed to complete its production of all requested individual tickets by May 12, 2025, as required under the Parties Joint Stipulation and Order on Non-Custodial Source (Dkt. 1861). Accordingly, Plaintiffs request an Order (1) requiring YouTube to complete its production of individual tickets previously identified no later than May 30, 2025; (2) requiring YouTube to reproduce 12 (of 112) metadata CSVs without redaction to determine whether a more fulsome unredacted production is necessary; (3) permitting Plaintiffs to request up to 120 additional individual tickets for production; and (4) permitting Plaintiffs' experts to supplement their reports.

Source B is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such communications are relevant and highly responsive to numerous discovery requests. *See, e.g.*, RFPs 34, 42, 43, 46-49, 70. Under the terms of the Parties agreement, YouTube was required to (1) search Source B using a set of search terms provided by Plaintiffs and produce an agreed upon set of metadata for up to ▮▮▮ tickets hitting on each term, and (2) produce a PDF for up to ▮▮▮ tickets timely identified by Plaintiffs from the produced metadata. YouTube did not complete its production of metadata until April 3, 2025, one day before the close of fact discovery and nearly three weeks after it had agreed to do so. Even then, many of the CSVs were improperly formatted, rendering them illegible. Accordingly, YouTube provided a revised overlay on April 8, 2025. Shortly thereafter, Plaintiffs timely identified ▮▮ individual tickets for full production. YouTube made an initial production of individual tickets, however, YouTube has yet to complete its production of individual tickets, due to be completed May 12, 2025. Accordingly, YouTube should be ordered to complete its production expeditiously, and no later than May 30, 2025.

Plaintiffs performed a preliminary review in the brief interim between YouTube's first and "revised" metadata productions and identified a number of individual tickets they intended to request for full production. Alarmingly, a number of improperly formatted tickets, identifiable only via strings of text, that were included in first production were absent from YouTube's final production. Plaintiffs included a request that YouTube produce the tickets associated with the text below and explain why these tickets were omitted in its revised production when identifying tickets for production:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (appearing on GOOG-3047MDL-05728899);
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (appearing on GOOG-3047MDL-05728905); and
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (appearing on GOOG-3047MDL-05725452);
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (appearing on GOOG-3047MDL-05728934).

YouTube has agreed to produce all four omitted tickets but has only completed its production of the first two. In the first ticket, dated June 11, 2019, 

---

[2] YouTube's failure to provide timely and accurate information through January is detailed in the Parties' Joint Letter Brief on YouTube's Search and Production from Non-Custodial Databases Containing User Complaints, Alternative Designs, and Product Launches. *See* Dkt. 1540.

1

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████[3] *See* GOOG-3047MDL-05872628
(emphasis added).

YouTube initially claimed that "these four [tickets] were redacted in error in the process of correcting the formatting issues," but now admits that the snippets of text were "inadvertently revealed" in the first production and that it intentionally redacted these plainly and highly relevant tickets. At best, YouTube's intentional redaction of four highly relevant tickets, paired with the excessive number of relevance redactions throughout each of its noncustodial productions, demonstrates overzealousness and poor judgment in its entirely unnecessary application of relevance redactions. *See e.g.*, GOOG-3047MDL-05728899 (440 of 500 tickets redacted for relevance). At worst, it demonstrates that YouTube has intentionally withheld relevant information in bad faith. In either event, it is apparent that highly relevant tickets have been excluded from YouTube's production of metadata and their complete contents shielded from identification and production.[4] And there is nothing to suggest that YouTube's improper relevance redactions are limited to precisely the four tickets YouTube happened to "inadvertently reveal" and that Plaintiffs were able to quickly identify in an illegible and improperly formatted CSV. Nor has YouTube's prior discovery conduct, including its prior inconsistent and unlikely explanation, given Plaintiffs any reason to believe that this is the case. Accordingly, Plaintiffs requested a reproduction of all Source B metadata without relevance redactions. YouTube refused, claiming reproduction would be unduly burdensome as a result of YouTube's determination to apply redactions sequentially. In the interest of compromise, Plaintiffs proposed reproduction of a sample of 12 randomly selected CSVs to determine the extent of YouTube's improper redactions, and for the ability to identify up to 120 new tickets for full production. YouTube still refused.

"In general, courts frown upon the practice of redacting irrelevant information from documents based on one party's unilateral assessment of relevance." *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *3 (N.D. Cal. Feb. 7, 2018); *see also Live Nation Merch., Inc. v. Miller,* 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (finding that "unilateral redaction" of information based on relevance, privacy interests, and confidentiality concerns was "disfavored, and a protective order could ensure the confidentiality of sensitive information"); *Medeva Sec. Litig.*, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) (noting that unilateral redactions based on relevance create more work for parties and the court as "[e]ven when implemented with restraint and good faith, the practice [of relevance redactions] gives rise to suspicion has been obscured").

Accordingly, courts often order reproduction of documents in an unredacted format where the documents have been redacted for relevance. *Medeva,* 1995 WL 943468, at *3 (ordering production of unredacted copies of documents that had been redacted for relevance if parties could not independently arrive at such arrangements); *see also Nguyen v. City of Garden Grove,* 2023 WL 2558536, at *3 (C.D. Cal. 2023) (ordering production of unredacted documents where redactions were made on basis of relevance); *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 12230960, at *1 (N.D. Cal. Mar. 15, 2013) (ordering defendants to produce "any documents that they have redacted for lack of relevance and/or responsiveness in their un-redacted form.") This is true even where the parties have agreed to redactions on the basis of relevance. *Amyndas Pharm., S.A. v. Alexion Pharm., Inc.*, 2024 WL 1346428, at *1-2 (D. Mass. Mar. 29, 2024) (ordering party to remove redactions for relevance despite the parties' prior agreement allowing for them).

---

[3] This language would also be available in the metadata, rendering redaction entirely inexcusable.

[4] Plaintiffs disagree with YouTube's assertion the Parties never intended for the metadata to be relied upon in its own right. To the extent that the Court adopts this position, Plaintiffs note that there is even less of a reason for YouTube's redactions for relevance and PII.

Here, far from a "fishing expedition" the examples above provide ample evidence that YouTube has not applied its relevance redactions "with restraint and good faith" but has used them to withhold relevant information. YouTube's inconsistent explanation as to why the text was omitted exacerbates Plaintiffs' mistrust. While YouTube claims undue burden, the burden associated with the rereview of only twelve CSVs is minimal. And any burden is the result of YouTube's own determination to apply redactions sequentially and to overzealously apply redactions for relevance and PII, which were never required in the first place. *See e.g., Ahmed v. HSBC USA, Nat' l Ass'n*, 2017 WL 7000271, at *2 (C.D. Cal. Dec. 27, 2017) (PII redactions not required where a protection order is in place); *Leprino Foods Co. v. Avani Outpatient Surgical Ctr., Inc.*, 2024 WL 44887711, at *14 (C.D. Cal. Sept. 30, 2024) (ordering party to produce unredacted versions of documents produced in a redacted form based on relevance, privacy, or third-party privacy – including HIPAA). Finally, while YouTube argues that "a quarter" of its Source B productions include redactions for privilege, it has yet to produce any privilege log, and there is no reason to suspect that the limited information provided in the metadata would be privileged.[5]

In addition, because YouTube has withheld relevant Source B metadata and has not yet completed its production of individual tickets identified by Plaintiffs, Plaintiffs' experts were unable to utilize such information in forming their opinions. Plaintiffs should be granted leave to supplement their expert reports. *See e.g. Intex Recreation Corp. v. Bestway USA, Inc.*, 2024 WL 4796235 (C.D. Cal. Mar. 26, 2024) (granting motion to supplement expert's report where new opinions were based on information previously unavailable as a result of opposing party's conduct).

## YOUTUBE'S POSITION

YouTube has produced massive quantities of metadata from ▓▓▓▓▓. On occasion, ▓▓▓▓▓—but those are generally addressed and separately stored in custodial data like emails and presentations, which Google has produced throughout hundreds of thousands of documents from dozens of custodians.

The Court should deny Plaintiffs' demand that YouTube re-review and produce metadata determined to be irrelevant. Doing so would amount to producing material of no "relevan[ce] to any party's claim or defense" in direct contradiction of FRCP 26(b)(1), and would impose the significant burden on YouTube of reviewing thousands of rows of metadata to redact privileged communications and PII of thousands of individuals who are not parties to this case.

**YouTube Has Already Undertaken Significant Burden to Search ▓▓▓▓▓ in Response to Plaintiffs' Demands**

In February 2025, the parties came to an agreement with respect to a search of ▓▓▓▓▓, including that YouTube would search agreed-upon portions of ▓▓▓▓▓ using Plaintiffs' proposed search terms and produce metadata for bugs hitting on those terms (from which Plaintiffs could select up to ▓▓▓ bugs that YouTube would then collect and review for responsiveness and production). The parties agreed that YouTube would redact both ▓▓▓▓▓ metadata and bugs selected by Plaintiffs for relevance, privilege, and PII. YouTube followed through with executing the agreed-upon search, which hit on more than 50,000 entries, and reviewed and produced the agreed-upon metadata for *over ten thousand* hits.

The complex nature of this data and unforeseeable technical issues with the export process during production resulted in technical errors impacting the accuracy of the applied redactions, with

---

[5] The cases relied upon by YouTube are inapposite. *See e.g.*, *Larsen v. Coldwell Banker Real Estate Corp.*, 2012 WL 359466 (C.D. Cal. Feb. 2, 2012) (allegations of mismatched metadata and missing documents based on produced correspondence logs); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012) (cited language relates to court's finding that claimed burden was excessive as a substantial portion of its time estimate was attribute to unnecessary quality control).

certain redactions shifted to incorrect locations within the metadata files. When Plaintiffs brought this issue to YouTube's attention, YouTube promptly reproduced the corrected metadata, from which Plaintiffs selected ▮ bugs for production pursuant to the parties' agreement—79 fewer bugs than the parties' agreement allowed. This process required review of both the bugs themselves as well as, in some cases, hundreds of attachments per bug. On May 12, YouTube produced those bugs and their corresponding attachments.

After production of the corrected metadata, Plaintiffs identified four bugs that were inadvertently left visible in the first production but redacted in the second.[6] While these bugs were intended to be redacted for relevance,[7] YouTube nevertheless agreed to produce them without any redactions, as a courtesy in response to Plaintiffs' request, so that the parties could move on.

Plaintiffs make the false and unsupported accusation that YouTube improperly redacted *other* purportedly relevant bugs, citing disagreement with the redaction of those four bugs out of thousands reviewed. To be clear, the parties had intended for the metadata sheets to serve merely as an intermediary step—to allow Plaintiffs to select individual bugs they found relevant for production—and YouTube followed through by providing Plaintiffs with the individual bugs they requested from their review of the metadata sheets.

Plaintiffs now take a new and contrary position, demanding reproduction of 12 data-intensive spreadsheets, each with 500 individual bug entries (with relevance redactions lifted) and the option to select 120 additional individual bugs for YouTube to produce further information (potentially consisting of hundreds of attachments for just one bug). Most troubling, Plaintiffs demand these 12 spreadsheets not as a final resolution, but as a means "to determine whether a more fulsome unredacted production is necessary." This demand is so burdensome as to be infeasible. Google has ***already expended approximately*** ▮ ***attorney hours*** reviewing and redacting the ▮ production. And because YouTube applied redactions to these sheets sequentially, bugs determined to be irrelevant in the first instance were not reviewed for privilege and PII. To reproduce these sheets with relevance redactions lifted would therefore require the re-review of each sheet for privilege and PII—a process that would be extremely burdensome, costly, time-consuming, and ultimately unnecessary given that Plaintiffs have already received productions of relevant individual bugs.

Plaintiffs' cases regarding redaction for relevance are inapposite. Plaintiffs *agreed* to these redactions as a compromise to conduct Plaintiffs' overbroad searches and move forward to production. To the extent Plaintiffs disagreed with that procedure, the time to raise it was before YouTube spent thousands of hours executing the agreed upon search and production. And in contrast to *Amyndas Pharmaceuticals, S.A. v. Alexion Pharmaceuticals, Inc.*, 2024 WL 1346428 (D. Mass. Mar. 29, 2024), the metadata files are not themselves "otherwise responsive" documents, but rather the mechanism by which Plaintiffs could request bugs that YouTube would then collect and review for responsiveness.

**Plaintiffs Have No Basis to Challenge YouTube's Good Faith or Methodology**

YouTube reviewed each bug for relevance, and counsel performed thorough QC to mitigate any errors with the same review process YouTube has used to yield over 700,000 produced files to date. After Plaintiffs identified four bugs of potential relevance revealed in the first production but redacted in the second, YouTube agreed to produce those bugs—reflecting approximately

---

[6] After learning of the formatting problem, YouTube QCed all of the metadata files, implemented the necessary corrections, and reproduced all 112 files.

[7] Plaintiffs mischaracterize the four bugs. For example, the bug containing the quote "▮" relates to ▮ and does not reflect a "user complaint" related to the claims in this litigation.

4

0.007% of the metadata reviewed.[8] YouTube then conducted *another* QC of its redactions.

In sum, YouTube has gone above and beyond to ensure the accuracy of its review process. Plaintiffs accuse YouTube of withholding "highly relevant information from its metadata production." This is patently false. Disagreements about edge cases or errors with respect to just a few individual relevance calls do not justify the massive burden of removing redactions and re-reviewing all ▮▮▮▮▮▮ metadata sheets. *See Larsen v. Coldwell Banker Real Estate Corp.*, 2012 WL 359466, at *8 (C.D. Cal. Feb. 2, 2012) (rejecting request to redo production on assertion of only "a few alleged discrepancies"). YouTube has demonstrated its good faith in discovery throughout this litigation; indeed, YouTube's other productions, ***including those that reference content within*** ▮▮▮▮▮▮, demonstrate that YouTube has no intention of concealing relevant, responsive material. YouTube's review of all documents, including those retrieved from ▮▮▮▮▮▮, has proceeded in that same good faith.

**Plaintiffs' Demands Are Unduly Burdensome and Disproportionate**

While FRCP 26(b)(1) sets the scope of discovery to matter "relevant to any party's claim or defense and proportional to the needs of the case," relevancy should be construed "liberally and with common sense." *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992). Plaintiffs' request for unredacted ▮▮▮▮▮▮ metadata is a fishing expedition that imposes an unnecessary and disproportionate burden on YouTube for information of little to no relevance. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (district courts need not condone "fishing expedition[s].") (citation omitted); *see also Bluestone Innovations LLC v. LG Elecs. Inc.*, No. C-13-01770, 2013 WL 6354419, at *2, (N.D. Cal. Dec. 5, 2013) (party not allowed to explore matter which "does not presently appear germane on the theory that it might conceivably become so.") (citation omitted). Plaintiffs' speculation that all relevant documents were not produced or properly redacted fails to justify imposing that significant burden on YouTube. *Mizrahi v. Google LLC*, 732 F. Supp. 3d 1068, 1070 (N.D. Cal. 2024); *see also In re Pioneer Corp.*, No. CV 18-4524, 2019 WL 5401015, at *6 (C.D. Cal. Jan. 9, 2019).

To comply with Plaintiffs' demand, YouTube would have to re-review at least 12 (and as many as 112) ▮▮▮▮▮▮ metadata sheets containing thousands of bug entries, many of which involve privilege and/or sensitive PII across up to 16 different columns of data. Given the ▮▮▮▮▮▮ attorney hours already spent on the ▮▮▮▮▮▮ review in the first instance, the re-review would be duplicative, unduly burdensome, and not proportionate to the needs of the case. This is especially so considering the information YouTube already provided from ▮▮▮▮▮▮ for Plaintiffs' requests—e.g., information on their selected ▮ individual bugs and the corresponding attachments. *See Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630, 2013 WL 4426512, at *3 (N.D. Cal. Aug. 14, 2013) (refusing, on grounds of proportionality, to order "herculean effort" to produce data that requesting party "is able to do without"); *Oracle USA, Inc. v. SAP A.G.*, 264 F.R.D. 541, 543-44 (N.D Cal. 2009) (case requires "cooperation in prioritizing discovery" and awareness of "the proportionality requirement of [Rule] 26"). Plaintiffs' request for leave to supplement expert reports is similarly unjustified. YouTube has not "withheld relevant … metadata," and that metadata is not itself responsive information. Plaintiffs show no prejudice from the delay in receiving copies of four individual bugs that Plaintiffs demonstrate in their position that they are able to cite and rely upon.

Disagreement over four responsiveness calls is insufficient reason to call into question the sufficiency of YouTube's entire process and require additional burdensome, costly, and disproportionate reproduction of metadata intended to serve merely as an intermediary step. Plaintiffs' demands are unjustified and should be denied.

---

[8] Discovery is not required to be perfect: some documents are subjective, borderline, or not clearly relevant, and reasonable minds can differ. *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) ("[T]he standard for the production of ESI is not perfection.")