**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-md-03047-YGR<br><br>MDL No. 3047 |

This Document Relates to:

> *Instagram LLC et al. v. Hartford Casualty Insurance Co. et al.*, No. 4:24-cv-09500
>
> *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 4:25-cv-03193

**ORDER GRANTING HARTFORD'S MOTION TO REMAND, DENYING MOTION TO DISMISS, AND GRANTING MOTION TO STAY**

Re: Dkt. Nos. 66 and 67 (Insurance Action, No. 24-cv-9500)

Re: Dkt Nos. 1866, 1868, and 1913 (MDL, No. 22-md-3047)

Instagram LLC and Meta Platforms, Inc. (collectively "Meta") and its general liability insurers are embroiled in a years-long dispute about the insurers' duty to defend and indemnify Meta in the instant *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* ("Social Media Cases" or "MDL"). Hartford Casualty Insurance Company ("Hartford"), Sentinel Insurance Company Ltd., and Federal Insurance Company ("Chubb") (collectively, the "Insurers") argue that the policies that they executed with Meta exclude Meta's intentional conduct. Meta counters that the Insurers' argument narrowly reads the claims at issue in the MDL and presumes liability for intentional conduct, which Meta vigorously contests.

Pending before the Court are the Insurers' motion to remand, the Insurers' motion to dismiss, and Meta's motion to stay.

Having carefully considered the parties' briefing and argument on April 23, 2025, the Court **GRANTS** the Insurers' motion to remand, **GRANTS** the Insurers' motion to dismiss, and **DENIES** as moot Meta's motion to stay.[1]

---

[1] The Court also grants Meta's Requests for Judicial Notice. Dkt. Nos. 67-2, 83-1, and 85-1. The Court may take judicial notice of court filings and other matters of the public record. Fed. R. Evid. 201.

I.    **BACKGROUND**

This MDL consolidates hundreds of actions brought on behalf of adolescents and school districts alleging that that several social media companies, including Meta, designed their platforms to foster compulsive use by minors.

In February 2023, Meta contacted its general liability insurers, including Hartford, about defense coverage in this case. (Delaware Am. Complaint, Dkt. No. 67-3, ¶ 16.) For months, Hartford denied that it had any duty to defend or indemnify Meta. (California Complaint, Dkt. No. 1, ¶¶ 7–8, 50–51.) Hartford backpedaled in June 2023 by acknowledging that it would cover certain of Meta's cases, which Harford would later identify for Meta. (*Id.*) Hartford instructed Meta to await further correspondence. (*Id.* ¶ 51.)

On November 1, 2024, Hartford sent its decision letter to Meta. It then coordinated with Sentinel to file a declaratory judgment lawsuit in Delaware superior court (Meta's state of incorporation) against Meta and Meta's other general liability insurers Chubb, Old Republic Insurance Company, Starr Indemnity and Liability Company, and Zurich American Insurance Company. Hartford and Sentinel sought declaratory relief that they had no duty to defend or indemnify Meta in connection with the MDL.

On December 18, 2024, Hartford and Sentinel amended the Delaware complaint. (Dkt. No. 67-3.) Defendant Chubb answered the amended complaint and coordinated with three other insurers[2] who were not previously involved in the action to assert (i) counterclaims against Hartford and Sentinel, (ii) cross claims against Meta, Old Republic, Starr, Zurich, and (iii) third-party claims against 22 other new insurance companies (five of which have since been voluntarily dismissed) that might have issued relevant umbrella-policies with Meta.[3] (Dkt. No. 67-4.)

---

[2] Third-party plaintiffs are Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, and Ace Property and Casualty Insurance Company.

[3] New third-party defendants are Allianz Global Corporate and Specialty SE, Arch Insurance Company, Argo Group US, Aspen American Insurance Company, Canopious US Insurance Company, Endurance American Specialty, Fireman's Fund Indemnity Corporation, Gemini Insurance Company, Great American Insurance Company, Great American Spirit Insurance Company, Interstate Fire & Casualty Company, Ironshore UK, Liberty Mutual Insurance Europe LTD, The London Market Insurers, National Fire & Marine Insurance Company, National Union Fire Insurance Company of Pittsburgh PA, RSUI Indemnity Company, Starr Surplus Lines Insurance Company, StarStone Specialty Insurance Company, Steadfast

United States District Court
Northern District of California

On December 27, 2024, Meta removed the Delaware action, arguing that the Delaware District Court either had diversity jurisdiction once the parties were realigned, or in the alternative, proper jurisdiction once the court dismissed or severed the fraudulently joined insurer defendants. (Dkt. No. 67-5.)  Further, upon removing the action to federal court, Meta tagged the Delaware action for inclusion in the MDL. (Dkt. No. 67-7.) On January 16, 2025, the Insurers moved to remand. Before the Delaware District Court ruled on the pending remand motion, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the Delaware action to this MDL.

Meanwhile, Meta also filed a second suit against the initial insurers (Hartford, Sentinel, Chubb, Old Republic, Starr, and Zurich) in the Northern District of California. (Dkt. No. 1.) Like in the Delaware action, Meta sought declaratory relief, but in addition, asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.*) The Court related this second insurance action to the MDL given the similarity of the issues. (Dkt. No. 37.) On March 5, 2025, the initial insurers filed a motion to dismiss in favor of the first-filed Delaware action (Dkt. No. 66) while Meta filed a motion to stay. (Dkt. No. 67.) The parties also filed supplemental remand briefing. (MDL Dkt. Nos. 1866, 1868.)

All three motions are now pending before this Court.

## II.    LEGAL FRAMEWORK

### A.    Law to Apply in an MDL

In an MDL, the transferee court applies the law of its circuit to issues of federal law, but on issues of state law it applies the state law that would have been applied to the underlying case as if it had never been transferred into the MDL. *In re Anthem, Inc. Data Breach Litig.*, 2015 WL 5286992, at *2 (N.D. Cal. Sept. 9, 2015) (collecting Ninth Circuit cases).

### B.    Motion to Remand Standards

Removal statutes are strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the "heavy" burden to rebut the presumption against removal. *Id.* The "court resolves all ambiguity in favor of remand to state

---

Insurance Company, and XL Insurance America, Inc.

United States District Court
Northern District of California

1    court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). "Federal jurisdiction

2    must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.

3    2d at 566.

4        Diversity jurisdiction exists (1) where the amount in controversy exceeds $75,000 and (2)

5    the controversy is between citizens of different states. 28 U.S.C. § 1332(a). "Only state-court

6    actions that originally could have been filed in federal court may be removed to federal court by

7    the defendant." *Caterpiller Inc. v. Williams*, 482 U.S. 386, 392 (1987).

8        **C.    Motion to Dismiss Standards**

9        The standard under Federal Rule of Civil Procedure 12(b)(6) is well-known and not in

10    dispute. "To survive a motion to dismiss for failure to state a claim after the Supreme Court's

11    decisions in *Iqbal* and *Twombly*, plaintiffs' allegations must suggest that their claim has at least a

12    plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134–35 (9th Cir. 2014) (cleaned

13    up). The district court must assume that the plaintiffs' allegations are true and draw all reasonable

14    inferences in their favor. The court need not, however, construe as true conclusory statements or

15    unreasonable inferences. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). These

16    well-established standards apply with equal force in MDL proceedings. *See In re Optical Disk*

17    *Drive Antitrust Litig.*, 2011 WL 3894376, at *8–9 (N.D. Cal. Aug. 3, 2011) (applying such

18    standard in the context of an MDL); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 2017 WL

19    1458193, at *5 (D. Mass. Apr. 24, 2017) (the "creation of an MDL proceeding does not suspend

20    [or change] the requirements of the Federal Rules of Civil Procedure").

21    **III.    MOTION TO REMAND DELAWARE ACTION TO STATE COURT**
22    **(MDL DKT. NOS. 1866, 1868)**

23        Meta advances several mix-and-match removal theories based on a combination of

24    realignment, equitable estoppel, and fraudulent joinder. The Court addresses each.

25        **A.    Removal Theories Involving Realignment.**

26        Meta insists that complete diversity exists once the parties are "realigned" according to

27    their primary interests.[4] Here, Meta urges that it should be realigned as a *plaintiff* (insured vs.

28    ───────────────

[4] Both Hartford and Chubb are citizens of Indiana.  Hartford and Sentinel named Chubb as

4

United States District Court
Northern District of California

insurers) rather than the Court realigning the other defendants (insurers vs. insured). According to Meta, it can select its preferred forum as a plaintiff. On the other hand, if Meta remains a realigned defendant, Meta argues that it could invoke equitable estoppel to remove, despite that it is a defendant and a citizen of the state where the lawsuit was filed (Delaware). The Insurers respond that Meta's proposed realignment theories are unprecedented and a transparent effort to evade the forum defendant rule. The Court agrees that the Insurers have the better argument.

Supreme Court and Ninth Circuit precedent allows courts to "realign parties, according to their ultimate interests, whether the realignment has the effect of conferring or denying subject matter jurisdiction on the court." *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1133 (9th Cir. 2006); *see also City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941) ("It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute.") In doing so, a court "must align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in dispute." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000).

The Court acknowledges that here the actions primarily concern whether Meta's insurers owed Meta a duty to defend or indemnify it in the Social Media Cases. Although the Insurers may dispute how to allocate Meta's claims between them, that dispute is secondary to whether those Insurers owed any duty to Meta. A court in this district reached a similar conclusion in *Ace Property and Casualty Insurance Company v. McKesson Corporation*. 2021 WL 908350 (N.D. Cal. Mar. 10, 2021). There, insurer Ace sought a declaration from a California court stating that Ace had no duty to defend or indemnify McKesson for lawsuits that it faced related to the opioid epidemic. *Id.* Ace named 25 other insurance companies as defendants, some of which were citizens of the same state as Ace. *Id*. McKesson removed, arguing that complete diversity existed once the parties were properly aligned. *Id*. The *McKesson* court applied the "principal purpose test" to determine that the primary dispute was the insurers' obligations (if any) to McKesson,

a defendant in the Delaware action. (Dkt. No. 1 at ¶¶ 8, 13, 15.)

United States District Court
Northern District of California

1    while the disputes between insurers were secondary, hypothetical issues. *Id*. at *6. The court then

2    realigned the parties such that all insurers were plaintiffs while McKesson remained the defendant.

3    *Id.* at *8. It denied Ace's motion to remand because complete diversity existed between

4    McKesson and the plaintiff-insurers. The Court agrees with that analysis.

5          Meta, however, pushes that analysis one step further by requesting that the Court realign

6    Meta *as the sole plaintiff*, despite that Hartford and Sentinel, not Meta, filed the lawsuit. Meta's

7    argument that it is the "natural" or "proper" plaintiff does not persuade.  If that were the case,

8    insurers could never bring declaratory claims against insureds. That regularly happens, including

9    in the cases that Meta affirmatively cites. In its briefing and when asked at oral argument, Meta

10   did not cite a single case where a court realigned the parties as Meta suggests. This Court declines

11   to be the first. Rather, for purposes of analyzing diversity jurisdiction, the Court will realign all

12   insurers[5] as plaintiffs opposite Meta, who will remain the defendant.[6]

13         Meta cannot remove once realigned because the forum defendant rule prevents a defendant

14   from removing based on diversity jurisdiction where any defendant is "a citizen of the State in

15   which such action is brought." 28 U.S.C. § 1441(b).  Meta is incorporated in Delaware and is a

16   citizen of Delaware, so it cannot remove based on diversity jurisdiction.

17         To sidestep the forum-defendant hurdle, Meta argues that the Court should overlook that

18   "non-jurisdictional" rule and equitably estop the Insurers from moving to remand because

19   Hartford (and only Hartford) acted inequitably. Meta cries gamesmanship because Hartford raced

20   to file suit in Meta's home state the same day that it notified Meta that it would not cover certain

21   claims, and after years of negotiations. Meta suspects that Hartford did so to avoid unfavorable

22

23         [5] A handful of the insurers that Chubb asserted third-party claims against are incorporated
24   in Delaware. Meta argues that those third-party defendants should be severed, or in the alternative,
     that the Court should exercise supplemental jurisdiction over those "crossclaims" under 28 U.S.C.
25   § 1367. Meta overlooks that Chubb's claims against those 22 insurers are third-party claims, not
     crossclaims. After Chubb is realigned as a plaintiff, under 28 U.S.C. §1367(b), a district court does
26   not have supplemental jurisdiction under subsection (a) over claims made by persons under Rule
     14, 19, 20, or 24 of the Federal Rules of Civil Procedure.

27         [6] Even if Meta were repositioned as a plaintiff in the litigation, plaintiffs cannot remove
28   cases to federal court, nor did defendants consent to removal.

United States District Court
Northern District of California

1  California law. Hartford responds that Meta had the opportunity to litigate at every turn, including

2  when Hartford denied Meta coverage in March, June, and November of 2023.

3  Meta has not identified in its briefing, or at oral argument, any authority that suggests a

4  court applied equitable estoppel in a similar scenario. The Insurers, to the contrary, cite cases from

5  this District that suggest that equitable estoppel would not apply. *Parker v. California*, 1999 WL

6  111889, at *2, n. 3 (N.D. Cal. Feb. 26, 1999) ("[E]quitable estoppel is not a recognized exception

7  to the requirement that all defendants must join or consent in the petition for removal. . . .

8  Furthermore, there is no authority for applying equitable principles to the strictly applied removal

9  statute."); *Aetna Inc. v. Gilead Scis., Inc.*, 599 F.Supp.3d 913, 918 (N.D. Cal. 2022) (declining to

10  apply equitable estoppel to overcome the forum defendant rule and noting that "the Ninth Circuit

11  has not made any ruling as to estoppel.")

12  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

13  first instance." *Gaus*, 980 F.2d at 566. Meta elected to incorporate in Delaware. It cannot now use

14  equitable estoppel to shield it from a lawsuit in its home jurisdiction. The Court finds that Meta

15  cannot remain in federal court based its realignment theory because Meta, as a citizen of

16  Delaware, cannot remove to the Delaware District Court.

17  **B.    Removal Theories Involving Fraudulent Joinder.**

18  Alternatively, Meta argues that complete diversity exists because Hartford, Sentinel, and

19  Chubb fraudulently joined nondiverse defendants to defeat diversity jurisdiction.[7] Insurers reply

20  that it is common practice to bring into the litigation all insurers that might have a stake in the

21  outcome, in part because Delaware law requires it. The Court agrees.

22  To establish fraudulent joinder, a party must plead "(1) actual fraud in the pleading of

23  jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

24  diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548

25  (9th Cir. 2018). Inability to plead includes "whether a deficiency in the complaint can possibly be

26

27  [7] Several of the 22 entities against whom Chubb advances third-party claims are incorporated in Delaware, like Meta and Instagram. Chubb and Hartford are both citizens of Indiana. (Dkt. No. 63-4.)

28

1    cured by granting the plaintiff leave to amend." *Id.* at 550. Should fraudulent joinder apply, the

2    district court "may disregard the citizenship of a non-diverse defendant who has been fraudulently

3    joined." *Id.* (quoting *Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146 (1914).) There is a

4    "general presumption against fraudulent joinder," and defendants who assert that a party is

5    fraudulently joined carry a "heavy burden." *Hunter*, 582 F.3d at 1046.

6         Here, Meta fails to do so. Although Meta argues that Hartford and Sentinel do not press

7    claims against any other insurer, the amended complaint proves otherwise. Hartford, Sentinel, and

8    Chubb seek declaratory relief from all insurers as they seek to allocate coverage (if required)

9    between the parties. (Dkt. No. 67-3, -4.) Even if that were not the case, the parties could certainly

10   amend to add whatever claims Meta suggests are missing, against the umbrella insurers, co-

11   defendant insurers, or otherwise.

12        Nor can Meta show that it has no relationship to the other insurers. Meta concedes in the

13   California insurance action that it executed relevant policies with several of the insurers (Zurich,

14   Starr, Old Republic, and Chubb) that it now argues were fraudulently joined in Delaware. (Dkt.

15   No. 1.) At the hearing, Chubb explained that it identified the third-party defendant insurers from

16   Meta's own corporate disclosure statement in the MDL, which disclosed a "policy schedule that

17   listed the different insurers that [Meta] had identified as relevant to the action." (Dkt. No. 1923,

18   April 23, 2025 Tr. at 32:24–33:9.) According to Insurers, Delaware state courts routinely

19   determine the allocation of liability suits among insurers. *See e.g. Massachusetts Mut. Life Ins. Co.*

20   *v. Certain Underwriters at Lloyd's of London*, 2010 WL 3724745, at *4 (Del. Ch. Sept. 24, 2010);

21   *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369 (Del. 2014), *as revised* (Nov. 10,

22   2014)*. Meta has not alleged any facts, or pointed to any law, that suggests that Hartford, Sentinel,

23   and Chubb could *never* state a claim against nondiverse insurer defendants.

24        The Court is not persuaded by Meta's fraudulent joinder arguments. In any event,

25   fraudulent joinder would not allow Meta to bypass the forum defendant rule.

26        Accordingly, the Court **GRANTS** the Insurers' motion to remand.

27   **IV.    MOTION TO DISMISS CALIFORNIA ACTION (DKT. NO. 66)**

28        The Insurers moved to dismiss the California action in favor of the Delaware action under

United States District Court
Northern District of California

1   the first-to-file rule and on the merits. Because the Court will grant the Insurers' motion to dismiss

2   under the first-to-file rule, the Court does not reach the merits of Meta's underlying claims.

3   **A.    First-to-File Rule**

4   The Insurers argue that under the first-to-file rule, Meta's suit is duplicative of the

5   Insurers' Delaware suit. Meta disagrees and offers that the Social Media Cases before this Court

6   constitute the first-filed action. Meta argues that the Insurers engaged in gamesmanship in attempt

7   to avoid the MDL.

8   The first-to-file rule allows a district court to stay proceedings if a similar case with

9   substantially similar issues and parties was previously filed in another court. *Kohn L. Grp., Inc. v.*

10  *Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237 (9th Cir. 2015). The purpose of the rule is to

11  "maximize economy, consistency, and comity." *Id.* To determine whether to apply the rule, courts

12  must consider the "chronology of the lawsuits, similarity of the parties, and similarity of the

13  issues." *Id.* at 1240. The parties and issues in each action "need not be identical, only substantially

14  similar." *Id.* at 1240–41.  Applying the first-to-file rule is "discretionary" and "exception[s] to the

15  first-to-file rule typically . . . include bad faith, . . . anticipatory suit, and forum shopping."

16  *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

17  Meta's argument does not persuade. Although the Social Media Cases were filed earlier

18  and may address overlapping issues about Meta's intentional conduct, the Insurers were not party

19  to any case in, or related to, the MDL. Meta argues that the Insurers share an interest with the

20  plaintiffs in the MDL, and are therefore substantially similar, but the cases Meta cites suggest the

21  opposite. Those cases involved individuals vying to be the class representative or companies that

22  committed the same misconduct. *See Hoyt v. Amazon.com, Inc.*, 2019 WL 1411222, at *5 (N.D.

23  Cal. Mar. 28, 2019) (individual class plaintiffs substantially similar); *Weinstein v. Metlife, Inc.*,

24  2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006) (same); *Tex. Ins. Co. v. Ares Ins. Managers*

25  *LLC*, 2023 WL 8237113, at *6 (W.D. Wash. Nov. 28, 2023) (companies accused of the same

26  misconduct were substantially similar).  None analyze the similarity of interests between an

27  insurer or corporation and an individual plaintiff. One can easily envision a scenario where a

28  plaintiff in the MDL and an insurer's interests might diverge.

United States District Court
Northern District of California

Meta next argues that two exceptions to the first-to-file rule apply: (1) bad faith, because Hartford raced to the courthouse after it ended negotiations, and (2) forum shopping, because Insurers filed in Delaware state court to avoid California law. Neither applies.

With respect to the issue of bad faith, Meta makes much of the fact that Hartford mailed its decision letter to Meta so that Hartford could supposedly jump Meta in a race to the courthouse. The factual record reveals a different picture. After the hearing, the Court ordered Hartford to file its relevant communications with Meta. (Dkt. Nos. 1912 and 1913.)[8] Those communications show that Hartford mailed *and emailed* Meta—copying Meta's outside counsel in this case—Hartford's denial letter. (*Id.*) Before that, Hartford, Meta, and Meta's outside counsel communicated about the coverage dispute by email and mail. Meta cannot seriously argue that Hartford acted in bad faith in filing suit in Delaware, particularly where Meta was on notice that a suit could be looming.

Moreover, Meta's bad faith arguments are against Hartford alone. Meta does not allege any facts that show that other removing defendants, like Chubb, acted in bad faith. Meta does not satisfy the bad faith exception to the first-to-file rule.

Nor is the Court persuaded by Meta's argument that the Insurers forum shopped by filing a lawsuit in Delaware—Meta's state of incorporation. That is, again, the natural consequence of Meta's decision to incorporate in Delaware.

The Court **GRANTS** the Insurers' motion to dismiss under the first-to-file rule. The Court will not reach the Insurers' claims as to the merits of Meta's claims.

## V.    MOTION TO STAY ALL ACTIONS (DKT. NO. 67)

The Court need not reach the merits of Meta's motion to stay because it has granted the Insurers' motion to remand and motion to dismiss. Accordingly, the Court **DENIES** Meta's motion to stay as moot.

## VI.    CONCLUSION

For the foregoing reasons and as set forth herein, the Court **GRANTS** the Insurers' motion to remand, **GRANTS** the Insurers motion to dismiss, and **DENIES** Meta's motion to stay.

---

[8] The Court grants Hartford's motion to seal. (Dkt. No. 1913.)

The clerk of the court is ordered to remand *Hartford Casualty Insurance Co. et al. v. Instagram LLC et al.*, No. 4:25-cv-03193 to the Delaware state court and to close *Instagram LLC et al. v. Hartford Casualty Insurance Co. et al.*, No. 4:24-cv-09500 as dismissed.

This terminates Dkt. Nos. 66 and 67 (24-cv-9500) and Dkt No. 1913 (22-md-3047).

IT IS SO ORDERED.

Dated: May 27, 2025

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

11