UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR   (PHK)

**ORDER RESOLVING DISPUTE RE: "TIME PERIOD" TO BE COVERED IN STATE AGS' RULE 30(B)(6) DEPOSITION OF META**

Re: Dkt. 1956

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between certain of the State Attorneys General and the Meta entities regarding the Rule 30(b)(6) deposition of Meta. [Dkt. 1956]. Because of the upcoming scheduled start of Meta's Rule 30(b)(6) deposition, the Parties have agreed to forego oral argument on this dispute. *Id.* at 1. The Court finds the instant dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARDS

The generally applicable legal standards for discovery are well-known. The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See*

1   *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.; see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

## **DISCUSSION**

The State AGs served on Meta a Rule 30(b)(6) deposition notice, dated January 31, 2025, listing nineteen topics for which deposition testimony is sought. The instant dispute centers on Topics 1-6 and 15-18, and more specifically, on the time period for which Meta's designee(s) should be prepared to testify for each of these topics. Meta argues that its designee(s) should be prepared to testify as to facts covering the time period commensurate with the time period for Meta's document production relevant to each topic (generally cutting off on April 1, 2024, with some exceptions). The State AGs argue that Meta's Rule 30(b)(6) witness(es) should be prepared to testify on facts covering not just that time period, but also covering the time period up to the

3

present.

The Parties both rely on this Court's ruling at the June 20, 2024 Discovery Management Conference ("DMC"), where the Parties presented argument about a previous dispute over the appropriate time frame for discovery from Meta in this MDL. *See* Dkt. 888. Discovery Management Order ("DMO") No. 7, which memorialized the Court's rulings from that DMC, addresses the issue of the time period for discovery as follows:

> The Parties dispute the Relevant Time Period governing Plaintiffs' discovery requests directed at Meta and Meta's search, collection, and review of responsive documents. [Dkt. 888]. The Parties confirm that they have reached agreement as to the default end date: "April 1, 2024, with the exception of non-Email/Workchat files, for which the end date is the date of collection (which generally falls between January and April 2024 for the 122 of 127 total agreed-to custodians identified to date by Plaintiffs)." [Dkt. 940 at 11]. Accordingly, the Court **ORDERS** the default end date to be as so indicated and agreed-upon by the Parties.

[Dkt. 969 at 4].

The State AGs argue that DMO No. 7 only set an end date for the collection of documents in response to requests for production directed to Meta. [Dkt. 1956 at 5]. Meta argues that the text of DMO No. 7 expressly states that the Relevant Time Period governs "Plaintiffs' discovery requests directed at Meta" and that a Rule 30(b)(6) deposition notice is a discovery request directed at Meta. *Id.* at 6.

The State AGs argue that testimony on facts responsive to Topics 1-6 and 15-18 is "directly relevant in establishing the appropriateness and scope of injunctive relief in this action." *Id.* at 5. Meta argues, in response, that it is premature for Plaintiffs to take discovery directed to their potential remedies sought, given that liability has not yet been established. *Id.* at 9. In addition, Meta argues that, even assuming liability is established, whether any particular discovery is appropriate for purposes of establishing the scope of an injunction requires knowing the contours of the injunction actually being sought. *Id.* Meta argues that the Complaint does not describe the requested injunctive relief with the specificity required by Federal Rule of Civil Procedure 65, and the lack of specificity does not allow for a rational determination of the appropriate scope of any discovery directed to whatever injunctive relief Plaintiffs might seek later

in the case. *Id.*

Meta also argues that the unfairness and burden in preparing witness(es) to respond to facts post-dating April 1, 2024 (the end date of the previously ordered Relevant Time Period) outweighs the need for the discovery. *Id.* at 7. Because (with some exceptions, discussed below) Meta's document collection and production cutoff on April 1, 2024, there are few documents post-dating April 1, 2024 which are available for Meta to use for witness preparation on facts occurring in the time frame. If required to prepare a witness to testify as to facts post-dating April 1, 2024, Meta argues it would be required to search for more documents in that latter time period to help prepare its designee(s) to testify, leading to further disputes over production of these post-April 1, 2024 documents—and thus circumventing DMO No. 7's cutoff date for document discovery. *Id.*

In response, Plaintiffs argue that Meta need not collect more documents to prepare its witnesses, that Meta and its lawyers can speak verbally with other personnel to prepare, and that the alleged burden is not sufficiently established to bar the discovery sought. *Id.* at 8. Plaintiffs argue that Meta itself has sought discovery post-dating April 1, 2024 from the State AGs, and thus, when propounding discovery covering that time frame Meta presumably believed that seeking such discovery would not violate DMO No. 7 and would not be burdensome. *Id.*

<u>The Parties' Agreements</u>

The Court's resolution of this dispute is informed by the fact that the Parties agree on certain issues. First, the Parties agree that Meta need *not* provide Rule 30(b)(6) designees to testify on facts post-April 1, 2024 in response to Topics 8-14 in the deposition notice. *Id.* at 5 n.2. As the Parties have requested in connection with prior discovery issues, the Court **ORDERS** the Parties to comply with and abide by this agreement as to the time frame for Topics 8-14.

Next, Plaintiffs represent that "Meta has also agreed to provide testimony on tools and features it considered, but did not adopt, to protect young users from harm." *Id.* at 8. Meta does not dispute this agreement in its portion of the briefing. Again, in conformity with the Parties' practice in this MDL, the Court **ORDERS** the Parties to comply with and abide by this agreement.

As noted above, there are three topics or areas of questioning for which Meta has agreed to provide Rule 30(b)(6) witnesses to testify about facts post-dating April 1, 2024 responsive to any

5

of the noticed topics "to the extent that any of those topics seeks testimony concerning Teen Accounts, Reset Recommendations, or the interpretation of post-April 1, 2024 data produced by Meta." *Id.* at 7. Because Meta does not object as to these three topics or areas of inquiry with regard to time frame, the Court accordingly **ORDERS** Meta to prepare its Rule 30(b)(6) designees to testify as to these three topics.

With regard to the datasets produced by Meta, Plaintiffs argue that Meta is narrowly construing Topic 7 with regard to Meta's agreement to provide post-April 1, 2024 testimony. *Id.* at 6 n.3. Topic 7 states: "The interpretation and meaning of the structured data that Meta has produced or will produce in this action responsive to Personal Injury/School District Plaintiffs' Request for Production of Documents (RFP) No. 124, or State AGs' RFP Nos. 100, 102, 107, 112, 113, 118, 121-123, 148-153, 159-164." [Dkt. 1956-1 at 8]. As noted above, Meta has agreed to prepare and provide a witness to testify in response to Topic 7 without limitation as to time period. Plaintiffs argue that "while Meta has agreed to testify as to the 'interpretation and meaning' of recent datasets (Topic 7), it refuses to testify to anything 'outside the datasets themselves' such as the techniques used to create the data or the purposes for which they were used (e.g., Topics 4(i), 6)." [Dkt. 1956 at 6 n.3]. The weakness in Plaintiffs' argument is that neither Topic 4(i) nor Topic 6 explicitly seeks testimony on "techniques used to create the data or the purposes for which they were used." [Dkt. 1956-1 at 7-8]. While the techniques used to create the data or the purposes for which they were used might in some way be responsive to some questions (depending on how they are phrased) which might generally fall under the umbrella of Topics 4(i) and (6), neither topic is limited or directed to those issues in particular. To the extent Plaintiffs are re-drafting Topics 4(i) and 6, their motion to compel Rule 30(b)(6) testimony post-dating April 1, 2024 as to those specific topics is **DENIED** (subject to the discussion below regarding exhibits). Further, Meta has not objected to Plaintiffs' asking Meta's witness(es) properly framed questions under Topics 4(i) or (6) (or even Topic 7) which are directed to the techniques used to create the datasets or the purposes for which they were used for the time period prior to April 1, 2024. And, as discussed further below, if Meta produced documents post-dating April 1, 2024 which discuss these topics, Plaintiffs can question the designee(s) about such documents.

6

The Parties' briefing also indicates that there is no substantive dispute as to Topic 3 in the deposition notice. Topic 3 states: "Meta's official, written policies for complying with COPPA for its Instagram and Facebook platforms during the Relevant Time Period." [Dkt. 1956-1 at 7]. Plaintiffs represent that "on Topic 3 (written COPPA compliance policies), Meta has confirmed that aside from its ban on users under 13 in its terms of service and terms of use, such written policies 'do not exist.'" [Dkt. 1956 at 8]. Meta does not dispute this in the briefing. As Plaintiffs point out, assuming the situation as it existed prior to April 1, 2024 continues to the present date, there should be no burden for Meta to prepare a witness to testify that no such "official, written policies" exist which post-date April 1, 2024 other than the ban in Meta's terms of service and terms of use. *Id.* Accordingly, Meta is **ORDERED** to prepare its Rule 30(b)(6) designee(s) to testify as to Topic 3 in the deposition notice for the time frame post-April 1, 2024.

Post-April 1, 2024 Deposition Testimony

In resolving the instant dispute, the Court is mindful of both DMO No. 7 and the remaining schedule in this case. Courts routinely set a logical or temporal end point to fact discovery—otherwise a party could insist on pursuing fact discovery on myriad issues right up to the eve of trial, thereby hindering other pretrial proceedings and, ultimately, the orderly preparation of a case for trial.

Plaintiffs argue that Meta is improperly "cherry picking" post-April 1, 2024 topics to testify about and limiting its agreement only to those topics which are favorable to Meta's defense. *Id.* at 5, 8. Meta responds that the agreement to provide testimony post-April 1, 2024 for these three topics is based on the previously resolved dispute over whether Meta should produce documents on the three topics covering that time period. *Id.* at 9. That is, because Plaintiffs sought documents post-April 1, 2024 on these topics and because Meta ended up producing those documents, Meta argues that the temporal scope of the testimony should coincide with the scope of the document production. *Id.*

While there is conceptual consistency in Meta's position that the temporal scope of testimony should match the scope of documents produced, there is no logical reason to limit the use of produced documents to just the three topics agreed to by Meta. That is, while the impetus

7

1  to demand and then produce post-April 1, 2024 documents may have been those three topics,
2  given the scope of document production and discovery in this case, there is no guarantee that
3  every single post-April 1, 2024 document Meta has produced is limited to those three topics.
4  Accordingly, the Court further **ORDERS** that Plaintiffs may question Meta's Rule 30(b)(6)
5  designee(s) concerning any produced documents which post-date April 1, 2024 as long as the
6  questions about such documents (or the contents therein) reasonably fall within the scope of any of
7  Topics 1-6 or 15-18 in the deposition notice.

8        To address Meta's concerns about fairness and burden in preparing a witness for post-April
9  1, 2024 facts, the Court adopts a remedy similar to the resolution of other recent deposition
10 disputes. The Court assumes from the Parties' briefing that Meta's Rule 30(b)(6) deposition will
11 require multiple sessions and/or multiple designated witnesses. Accordingly, the Court **ORDERS**
12 that no later than five business days prior to a session of the Rule 30(b)(6) deposition, Plaintiffs
13 **SHALL** serve on counsel for Meta a copy of every document dated after April 1, 2024 which a
14 Plaintiff's counsel or State AG in good faith expects to ask about or use as an exhibit at the
15 upcoming deposition session. Meta **SHALL** prepare their Rule 30(b)(6) designee(s) to testify
16 about any such documents produced timely prior to the upcoming deposition session. At such
17 deposition session, Plaintiffs **SHALL NOT** ask questions about any other specific documents
18 dated after April 1, 2024 which were not served timely prior to the deposition session. However,
19 if Meta's counsel opens the door and questions a Rule 30(b)(6) designee on redirect concerning a
20 document not included in the documents served pre-deposition by Plaintiffs, then on recross,
21 Plaintiffs shall be entitled to question the witness on re-cross about any such documents used as an
22 exhibit or raised by Meta's counsel. Further, if Meta's counsel opens the door and questions a
23 Rule 30(b)(6) designee on redirect concerning factual topics post-dating April 1, 2024, then on
24 recross, Plaintiffs shall be entitled to question the witness on re-cross about any such factual topics
25 post-dating April 1, 2024 raised by Meta's counsel. Nothing in this ruling prohibits the Parties
26 from reaching agreement on allowing any Party to question a Rule 30(b)(6) designee of Meta
27 concerning any document dated after April 1, 2024 not served timely pre-deposition, or from
28 reaching agreement on allowing any Party to question a Rule 30(b)(6) designee of Meta on any

factual topics or occurrences post-dating April 1, 2024.

Other than as explicitly ordered herein, Meta's motion for a protective order to bar any questioning about post-April 1, 2024 facts in response to Topics 1-6 and 15-18, and Plaintiffs' motion to compel Meta to prepare and present its Rule 30(b)(6) witness(es) about any post-April 1, 2024 facts in response to those topics, are both **DENIED**. The net effect of the rulings and directives set forth herein is more nuanced than the blanket approach both sides urged this Court to undertake. The Court has taken into account its responsibility to rationally manage discovery, to ensure the cases move forward on the current schedule, and to balance both relevance and proportionality. Given the scope of the agreements the Parties reached on certain sub-issues herein, the Court is disappointed that counsel were incapable of resolving the instant dispute through the meet and confer process, and the Court expects counsel to likewise keep the case schedule and needs of the case in mind as they approach the completion of Meta's Rule 30(b)(6) deposition (as well as any other "cleanup" discovery being taken after the fact discovery cutoff) collaboratively and with renewed emphasis on finding solutions as opposed to insisting on across-the-board positions.

Plaintiffs argue that Meta itself has elicited testimony from other Meta witnesses regarding Teen Accounts and facts which post-date April 1, 2024, and that fairness dictates that Plaintiffs should be allowed to question witnesses about other initiatives post-April 1, 2024 which Meta implemented or considered but did not implement. [Dkt. 1956 at 5, 8]. There is no indication in the record as to whether Meta (after apparently opening the door) instructed any fact witnesses to refrain from testifying as to post-April 1, 2024 facts at those other depositions, and Plaintiffs do not explain why expanding the temporal scope of Rule 30(b)(6) testimony now is needed to address what did or did not happen at those other depositions. What may or may not have occurred at those other depositions is not germane to the instant dispute. In any event, nothing in this Order is intended to make any findings or even address any objections to or issues concerning admissibility of any Meta witness testimony (particularly objections to testimony as to post-April 1, 2024 events) properly and timely presented to the presiding judge in connection with any later proceedings in this matter. Further, nothing in this Order precludes Plaintiffs from requesting

discovery directed to injunctive remedies issues at an appropriate time. To the extent Plaintiffs' motion here is denied, such denial is without prejudice to such a later request presented to the presiding judge for the very type of remedies-focused discovery Meta argues would at best be appropriate at a later stage in this case. *Id.* at 9.

This **RESOLVES** Dkt. 1956.

**IT IS SO ORDERED.**

Dated: May 29, 2025

_____
PETER H. KANG
United States Magistrate Judge