UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE RE PLAINTIFF TUCSON UNIFIED SCHOOL DISTRICT ("TUSD") NARRATIVE DATA FROM SYNERGY PLATFORM**<br><br>Re: Dkt. 1949 |

### INTRODUCTION

This MDL has been referred to the undersigned for discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between Plaintiff Tucson Unified School District ("TUSD") and Defendants regarding TUSD's production of "narrative information" stored in its data platform called Synergy. [Dkt. 1949]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

### LEGAL STANDARDS

The generally applicable legal standards for discovery are well-known. The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to

tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the

1  issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."
2  Fed. R. Civ. P. 26(b)(1).
3    The party seeking discovery bears the burden of establishing that its request satisfies the
4  relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,
5  285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the
6  discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons
7  why the request at issue is objectionable and may not rely on boilerplate, conclusory, or
8  speculative arguments. *Id.; see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.
9  1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to
10 carry a heavy burden of showing why discovery was denied.").
11    As part of its inherent discretion and authority, the Court has broad discretion in
12 determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d
13 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly,
14 a district court's determination as to proportionality of discovery is within the district court's
15 discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding
16 district court did not abuse discretion on proportionality ruling).
17    Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion
18 of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D.
19 Cal. Oct. 14, 2020).

## DISCUSSION

21 TUSD uses a student information system called Synergy which "contains a broad range of
22 student information, including grades, class schedules, health information, and discipline records."
23 [Dkt. 1949 at 13]. As described by TUSD, "when a TUSD staff member records a violation of
24 TUSD's Code of Conduct, he or she may include a 'narrative' description of the incident." *Id.*
25 The Synergy system stores both quantitative and aggregate data, which was already produced in
26 discovery. *Id.* ("TUSD staff rely on the type of data TUSD has produced, aggregate reporting
27 showing the number of kids disciplined, the outcome or disposition, and the basis for the
28 discipline, e.g., bullying, alcohol, fighting. TUSD has produced this detailed information for ten

3

years, broken down by school, amounting to thousands of entries."). The Parties having previously reached agreements on the production of the quantitative or aggregate data from Synergy, they now dispute whether TUSD should produce the narrative data from Synergy as well.

Defendants argue that "the overall narratives are relevant to whether *other* trends in the district, such as substance abuse, bullying, or violence, have caused the alleged harm." *Id.* at 11. In particular, Defendants argue that TUSD's Rule 30(b)(6) witness testified recently at deposition "that unproduced Synergy narrative data supported TUSD's claims that social media has caused severe student mental health and disciplinary problems." *Id.* Defendants argue that "TUSD's designee testified broadly that disciplinary incidents, school disruptions, and mental health problems are connected to social media—despite no apparent connection in the aggregate data produced to date—and that the connection to social media is documented in Synergy narratives." *Id.* at 12. Additionally, Defendants argue that "[w]hen asked about property damage that TUSD claims is 'directly caused by social media,' TUSD testified that the disciplinary narratives in Synergy may contain information about such property damage." *Id.*

TUSD, in its portion of the joint letter brief, argues that the Parties negotiated the scope of discovery from Synergy months ago, and that it is now too late and burdensome to try to "upend those agreements after the April 4 discovery cutoff." *Id.* at 13. While noting that its Rule 30(b)(6) designee "acknowledges that some narratives in Synergy may contain references to social media," TUSD argues that this "is not new information to Defendants, and it certainly does not justify a new collection of thousands of individual student narratives[.]" *Id.* at 14. Arguing against the import of the narrative data, TUSD contends that its Rule 30(b)(6) witness "testified repeatedly that she reviewed and relied on aggregate data and her conversations with other school district employees with general knowledge of incidents and discipline trends based on their own conversations and experience." *Id.* TUSD argues that the Rule 30(b)(6) witness testified that "if she wanted to find out whether a particular incident related to social media, she would look at overall discipline data within Synergy and have conversations with administrators." *Id.* Fundamentally, TUSD argues that it "is not 'relying' on or using narratives in the litigation," and

4

1  that, therefore, requiring collection and production of narratives on the many disciplinary entries
2  in Synergy is disproportionate to the needs of the case. *Id.* at 15.

3  According to TUSD, after the Rule 30(b)(6) deposition at issue, "Defendants requested and
4  Plaintiffs produced data from Synergy's MTSS [Mult-Tiered System of Supports] platform
5  detailing aggregate observations by category (e.g., Absenteeism, Academic, Defiance, Disrespect,
6  Disruption, Dress Code, Health, Positive, etc.) between 2021 and 2024, totaling 832,352
7  'observations,' where teachers or staff may make notes about students' behavior or academic
8  needs." *Id*. at 15 n.6. TUSD argues that Defendants' request for all narrative data now would
9  include these already-produced "observations," as well as an untold number of irrelevant
10 narratives, including an allegedly large number of "Student Conference notes in Synergy"—all of
11 which would have to be reviewed and processed for production (including potential redactions).
12 *Id.* at 15 n.6 & n.7. TUSD argues that it has already agreed to produce aggregate data from
13 Synergy, as well as "documents discussing reasons for student discipline if returned by the parties'
14 agreed 1,200+ search terms run against the nearly 20 agreed TUSD custodians." *Id.* at 14.
15 Further, TUSD argues that Defendants are scheduled to take five more depositions of TUSD
16 employees who are among the individuals the Rule 30(b)(6) witness identified as persons with
17 whom there would be "discussions to determine the impact of social media on disciplinary
18 incidents at the school district." *Id.*

19 It is clear from the Parties' briefing that Defendants rely on the Rule 30(b)(6) testimony as
20 the basis for seeking the narrative information now. Because the Parties' briefing presented
21 competing descriptions of that testimony, the Court ordered the Parties to submit a copy of that
22 deposition transcript for the Court's review. *See* Dkt. 1995. It is clear from the deposition
23 transcript that the Rule 30(b)(6) witness acknowledged that the narrative information could
24 contain notes added to a disciplinary entry in Synergy and that "through those we [TUSD] are then
25 able to identify the majority of our discipline practices are somehow connected to the use of social
26 media." [Dkt. 1995-1 at 14]. When asked about a produced spreadsheet containing the aggregate
27 data from Synergy, the witness testified: "However, looking at this, when we look at data it's not
28 necessarily as black and white as numbers on a spreadsheet, so, again, what I talked about before,

5

kind of the idea of soft data of when we have conversations. So this would just be the overall number, and then potentially do a deeper dive into some more of the verbiage in discipline." [Dkt. 1995-2 at 8]. The witness further testified: "[J]ust looking at these numbers, no, we can't necessarily, but, I mean, it's in the details as we continue to look at these and then have conversations around what is actually happening in our schools, and the majority of these offenses do have some causal link or direct tie to a social media platform of some sort." *Id.* at 9. When subsequently asked about those "details," the witness testified as follows:

> 15  Q.  And those details, you have to look
> 16  at again the other information in Synergy, that
> 17  narrative section that explains further details
> 18  of the violation to see if it had a link to
> 19  social media?
> 20       MR. CUTLER: Object to form.
> 21       THE WITNESS: Yes, that would be one
> 22  place, and then again through those
> 23  conversations.

*Id.* When questioned about a chart TUSD provided in response to an interrogatory regarding alleged property damage, the 30(b)(6) designee testified as follows:

> 5   Q.  How did TUSD identify the incidents
> 6  that were -- that it attributed to social media?
> 7   A.  Again, part of the reporting process
> 8  to request a facilities or maintenance request,
> 9  there are specific components in the requests,
> 10 so school staff will denote a reason behind why
> 11 they need a particular facility's request to be
> 12 completed.
> 13  Q.  And where is the data about those
> 14 requests stored?
> 15  A.  That would be within our facilities
> 16 and maintenance database.

[Dkt. 1995-1 at 35]. Defendants asked no follow-up questions on that facilities and maintenance database, and there is no indication whether that database is linked in any way to Synergy. When asked about "potential other property damage" *not* listed in TUSD's chart in its interrogatory response, the Rule 30(b)(6) designee testified that disciplinary data from Synergy "may or may not be included" in the chart, and she agreed that "sort of in the narrative section of Synergy that there would be a tie to social media." *Id.* at 37.

With regard to relevance, the Rule 30(b)(6) testimony establishes that some of the narrative information in Synergy would be within the scope of relevance for discovery purposes, specifically with regard to the issue of whether disciplinary issues are linked to social media. TUSD's witness testified that it is "tricky" to look at the aggregate data and numbers alone and that, through the narrative notes, TUSD is "then able to identify the majority of our discipline practices are somehow connected to the use of social media." [Dkt. 1995-1 at 14]. When asked how TUSD would determine if a particular incident was related to social media, the witness testified that "we would look at the overall discipline data within Synergy, and then have conversations with administrators." *Id.* at 15. And the witness confirmed that part of "this discipline data that you're relying on for this is the Synergy data, the narrative sections of the Synergy data." *Id.* at 40.

To be clear, however, while some narrative information from Synergy would be within the scope of relevance for discovery, the Court finds that Defendants have not shown that *all* Synergy narrative information is relevant. The Rule 30(b)(6) testimony makes clear that the narrative information can include a wide range of information, including information unrelated to disciplinary actions or causation issues. The testimony likewise makes clear that there is no standardized way or practice for entering narrative information into Synergy.

Additionally, Defendants have not established that the Synergy narrative information is within the scope of relevance for discovery with regard to TUSD's allegations of property damages. It is clear from the Rule 30(b)(6) testimony that the basis for TUSD's charted interrogatory response for property damage is the facilities and maintenance database, not the narrative information in Synergy (and indeed, there is no basis to conclude that Synergy has

7

anything to do with that facilities and maintenance database).

As noted above, the determination as to relevance is not the end of the inquiry. The primary dispute here is whether the requested discovery is proportional. The Court finds that the requested discovery is *not* proportionate to the needs of the case.

First, TUSD has already produced data from Synergy's MTSS platform for several hundred thousand "observations" spanning multiple categories for students' behavior or academic needs. [Dkt. 1949 at 15 n.6]. TUSD asserts that the narrative information from Synergy would include these observations, and Defendants nowhere explain why the request for all narrative information from Synergy is not cumulative to this production of Synergy MTSS "observations." Cumulative discovery requests are generally disproportionate to the needs of a case. *See, e.g.*, *Cooley v. C.R. Bard, Inc.*, No. 3:22-cv-1754-MMA-KSC, 2023 WL 4191414, at *5 n.3 (S.D. Cal. June 26, 2023) ("[E]ven to the extent the discovery at issue here is relevant to proving a potential breach of the post-sale duty to warn, it is cumulative and thus disproportionate to the needs of the case."). Further, Defendant do not address why these Synergy MTSS observations are insufficient for the very purposes Defendants seek the narratives, that is, to explore and challenge the Rule 30(b)(6) testimony on the different bases for student disciplinary issues.

As TUSD points out, it has also produced (or agreed to produce) documents outside of Synergy from "nearly 20" custodians which hit on over 1,200 agreed upon search terms, including the reasons for student disciplinary action. [Dkt. 1949 at 14]. And Defendants have the opportunity to depose five TUSD employees who are the kinds of persons identified by the Rule 30(b)(6) designee as the persons with whom they would have conversations to discuss whether a particular incident was related to social media. *Id.*; *see also* Dkt. 1995-1 at 15. Defendants have other sources of discovery to probe and challenge that bases for disciplinary actions, thus diminishing the proportionality of the requested discovery of the Synergy narrative information.

Finally, while Defendants apparently attempted to negotiate or propose searching the Synergy narrative information using search terms, the relief requested now is to require TUSD to produce all narrative data within Synergy, apparently for the entire relevant discovery time period. The Court finds that the requested relief is not proportional to the needs of the case. Even if the

8

fact discovery cutoff had not already passed, the record does not justify the kind of complete data dump of every narrative from Synergy for all students in all schools within TUSD for multiple years.  Counsel for the Parties are well aware of the time and effort required to search and process ESI for discovery, and the production of Synergy MTSS observations (viewed in the context of the other discovery taken or to be taken by Defendants) underscores the lack of proportionality in the request for all narrative information.  Finally, Defendants' argument that the Synergy vendor boasts multiple "data analysis" and "reporting options" does not render the requested relief less proportional—those appear to be tools for academic administrators and teachers to use, and there is nothing in the record to indicate that Synergy has features allowing for Boolean search terms (such as those used in this litigation and typically used as search terms for ESI in litigation) of the narrative information.

The Court has taken into account its responsibility to rationally manage discovery, to keep the cases moving forward on the current schedule, and to balance both relevance and proportionality.  The Court expects counsel to keep the case schedule and needs of the case in mind as they approach the completion of "cleanup" discovery, and encourages an emphasis on finding solutions as opposed to insisting on across-the-board positions.  Accordingly, because of the lack of proportionality (balanced against limited relevance for just a portion of the narrative information in Synergy), the Court finds that the requested relief is not appropriate and **DENIES** the Defendants' motion to compel.

Because there are further depositions of TUSD witnesses scheduled, nothing in this ruling prohibits the Parties from reaching further agreements on production of any additional TUSD documents, data, or information from Synergy (or other sources).  The Court encourages the Parties to include their respective consultants or personnel knowledgeable about Synergy's search capabilities in any further discussions.  Further, nothing in this Order is intended to make any findings or even address any objections to or issues concerning admissibility of any TUSD witnesses' testimony, properly and timely presented to the presiding judge in connection with any later proceedings in this matter.

**CONCLUSION**

Pursuant to the discussion and analysis herein, the Court **DENIES** Defendants' motion seeking to compel TUSD to produce all narrative information from TUSD's Synergy platform, subject to and in conformity with the detailed directives and discussion herein.

This **RESOLVES** Dkts. 1949 and 1995.

**IT IS SO ORDERED.**

Dated: June 2, 2025

_____
PETER H. KANG
United States Magistrate Judge