# Exhibit 8

## Colombo, Jessica

| | |
|---|---|
| **From:** | Colombo, Jessica |
| **Sent:** | Tuesday, July 9, 2024 10:11 PM |
| **To:** | Connolly, Daniel J.; Andrews, Patrick I. |
| **Cc:** | MDL3047_PIBellwethers; SocialMediaPI; Tanner, John Joseph; Defendants-MDL3047JCCP5255@skaddenlists.com; MDL 3047 Co-Lead Firms |
| **Subject:** | RE: Meet and Confer on RFP Set 1 |
| **Attachments:** | 2024-07-09 PI BWs Letter re 7-2 M&C and RFP Set 1.pdf |

Dan and Joe,

See attached.

Best,
Jessica

**From:** Connolly, Daniel J. <daniel.connolly@faegredrinker.com>
**Sent:** Wednesday, July 3, 2024 5:26 PM
**To:** Colombo, Jessica <jcolombo@motleyrice.com>; Andrews, Patrick I. <pandrews@lchb.com>
**Cc:** MDL3047_PIBellwethers <MDL3047_PIBELLWETHERS@listserv.motleyrice.com>; SocialMediaPI <SOCIALMEDIAPI@skaddenlists.com>; Tanner, John Joseph <joe.tanner@faegredrinker.com>
**Subject:** Meet and Confer on RFP Set 1

CAUTION:EXTERNAL

Jessica and Patrick:

Thank you for participating in the H2 conference yesterday on Plaintiffs' Responses to Defendants RFP Set One.  Here are the key items discussed:

- **Rolling productions**: Plaintiffs intend to make rolling productions in response to Defendants' RFP Set One.  Plaintiffs agreed to advise Defendants as to when the rolling production will be completed, so that Defendants can accurately evaluate the sufficiency of the responses.  Plaintiffs will respond to Defendants with an anticipated end date for productions in each bellwether case no later than July 10 (next Wednesday).

- **Search terms, databases, and custodial files**: Plaintiffs represent that they are producing custodial files and RFP responsive information discovered largely through the application of Plaintiffs' search terms to the Plaintiffs' data sources.  Plaintiffs disclosed the data sources and the search terms to Defendants on June 19, 2024.  Some, but not all of the plaintiff data sources include hard copy documents. For hard copy documents all responsive information is being produced without the use of search terms.

  But search terms are being used on all other data sources, notwithstanding Defendants' position that search terms are an insufficient means to identify all responsive information, particularly one-size fits all search terms that are not crafted for the unique circumstances of each plaintiff.  Defendants will further review Plaintiffs' proposed search terms, databases and productions to date, and will provide Plaintiffs with their position next week.

- **Request 3**: Plaintiffs stand on their objections to Request 3 concerning internet access provider information and will not produce any responsive information or execute the authorizations to allow Defendants to collect that information. Plaintiffs are not opposed to a narrowed request that focuses only on the plaintiffs' social media use, and Plaintiffs will discuss whether a narrowed production limited to Plaintiffs' devices only could be acceptable (if it is possible to limit the production at all). Defendants will consider whether it is possible (or feasible) to narrow the request to Plaintiff-only information (without other family or household data).

- **Requests 5 and 6**: Plaintiffs take the position that use of streaming services is not relevant as they did not understand the meaning of "streaming services." Plaintiffs agree to reconsider their position on these requests in light of the defined term "streaming services" in the RFPs.

- **Other Specific Requests**
    - **Request 50** – Information on alcohol, drugs, tobacco, substance use: Plaintiffs have agreed to produce police records and arrest-related records, and cite the production of medical records. Plaintiffs note that their clients also have potential 5th amendment defenses. However, Plaintiffs agree to reconsider their refusal to produce further documents in response to these requests, and in particular documents that are not related to police involvement, and will report back to Defendants.
    - **Requests 52 and 53** - Information on discrimination, violence, abuse, threats, etc.: Plaintiffs agree to produce police records, incident reports and arrest-related records, and cite the production of medical records. However, Plaintiffs agree to reconsider their refusal to produce further documents in response to these requests, especially documents that are not related to police involvement, and will report back to Defendants.
    - **Requests 61 and 62** – Information on communications with crisis hotline or exposure to another person's suicide or self-harm etc. Plaintiffs will reconsider their objections.
    - **Request 66** – Romantic breakups and rejections: Plaintiffs object because they view this information to be of marginal relevance, but Plaintiffs agree to reconsider their objections.
    - **Request 68** – Homelessness: Plaintiffs object because they view this information to be of marginal relevance, but Plaintiffs agree to reconsider their objections.
    - **Other requests**
        - **Request 23 -** Yearbooks: Plaintiffs have agreed to produce pages featuring plaintiffs. We asked that you simply produce the entire yearbook, given it is public and it is much less burdensome to simply provide it. We understand your objection is rooted in concerns for third-parties depicted in the yearbook, but Plaintiffs will reconsider.
        - **Request 31** - Employment history, workers comp, etc.: Plaintiffs have agreed to provide for plaintiffs and their parents, and we clarified we are not seeking this information of parents of parents.
        - **Request 32** - Criminal investigations: Plaintiffs agree to produce.
        - **Request 33** – Civil proceedings/investigation: Plaintiffs agree to produce.
        - **Request 34** - CPS, family services, foster care, etc.: Plaintiffs have agreed to produce reports or findings. We asked for plaintiffs to identify what is being withheld, and especially documents that are not a report or finding. Plaintiffs will let us know if information exists that they are withholding.

- **Documents held by family members** – Plaintiffs are willing to search and produce for certain family members, but believe the definition is overbroad and unduly burdensome. Both sides agree to think about this issue in terms of (1) Tier 1 Family Members: parents, guardians, caretakers, siblings, people that live with plaintiffs, and (2) Tier 2 Family Members: aunts, uncles, cousins, nieces, nephews, and grandparents to the extent they to do not live with plaintiffs. The parties agreed to consider producing family tier information for the following requests
    - Request 2 - Mental illness: Tier 1
    - Request 35 - Correspondence regarding the plaintiffs' mental health condition, and the injuries alleged in these lawsuits etc.: Tier 1 and Tier 2

- o   Request 48 - Addictions/usage of alcohol, drugs, gambling etc.:  Tier 1
- o   Request 67 - Deaths:  Tier 1 and Tier 2
- o   Request 68 – Homelessness:  Tier 1
- **Privilege Log** -- Plaintiffs will produce a privilege log.  Plaintiffs do not yet have a date by which it will be produced.
- **Loss of Consortium Discovery** – Defendants asked for clarification on Plaintiffs' position on what information will be produced in relation to loss of consortium claims. Up to now, Plaintiffs have taken the position they will not produce medical records for emotional/psychological conditions or their relationship with the Plaintiffs.  Plaintiffs stated that they would reconsider this position but were unwilling to provide a time frame for that decision.  Defendants noted that given the compressed discovery schedule, we need an answer in the very near future.  Currently, this is listed as an unripe issue in the DMC statement.

Please let us know if you have any questions,

Thank you,
 Joe Tanner
 Dan Connolly

Daniel J. Connolly | Direct: +1 612 766 7806 | Fax: +1 612 766 1600
faegre drinker | 2200 Wells Fargo Center | 90 South 7th Street | Minneapolis, MN 55402

3



One Corporate Center
20 Church St., 17th Floor
Hartford, CT 06103
o. 860.882.1681  f. 860.882.1682

**Jessica C. Colombo**
*Licensed in CT, NY*
direct: 860.218.2739
jcolombo@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

July 9, 2024

**VIA EMAIL ONLY**
Daniel J. Connolly (daniel.connolly@faegredrinker.com)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402

John Joseph Tanner (joe.tanner@faegredrinker.com)
Faegre Drinker Biddle & Reath LLP
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204, USA

Re:   *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* (MDL No. 3047) – Personal Injury Bellwether Plaintiffs' Responses & Objections to RFP Set 1

Counsel,

We write in response to your July 3, 2024 email and to summarize and respond to discussions that occurred during the parties' July 2 meet and confer, which your email purports to summarize.

As an initial matter, and as we expressed during the call, Personal Injury Bellwether Plaintiffs ("Plaintiffs") agreed to an "H2" conference because Defendants requested one, but given that that meet and confer was the first time during which Defendants engaged with Plaintiffs regarding any individual request, we disagree that the issues discussed are ripe for resolution by the Court.  Plaintiffs are willing to continue to work in good faith to reach compromises with Defendants where possible, and are hopeful that Defendants will not impede that process by prematurely raising unripe issues.

### 1.     Rolling Productions

You are correct that Plaintiffs are making rolling productions, with the majority of Plaintiffs having made initial productions on July 1.

July 9, 2024
Page 2

### 2. Search Terms, Databases, and Custodial Files

It is incorrect, as Plaintiffs have explained numerous times, to say that "search terms are being used on all other data sources" except hard copy documents. By way of example (and as we explained to you during our call), where Plaintiffs know that responsive electronic documents exist—such as, responsive electronic school records—Plaintiffs are collecting and producing those documents without the application of search terms. *See* ESI Order (ECF 690) at § 7. Likewise, Plaintiffs do not intend on using search terms with respect to device usage data, as discussed during a meet and confer regarding Defendants' request for a forensic image protocol.

Approximately three weeks ago, on June 19, Plaintiffs provided Defendants proposed search terms, to which Defendants have not responded. Plaintiffs have used these search terms to begin review and production. Plaintiffs are also in the process of ascertaining whether Plaintiff-specific search terms are necessary, which Plaintiffs will disclose accordingly.

### 3. Specific Requests for Production

#### a. *Request for Production 3 (internet usage and activity from internet access providers)*

Plaintiffs are standing on their objections to this Request, namely that this Request is unduly burdensome and overbroad in that it seeks information about all internet usage of Plaintiffs and any number of unnamed third parties. As we explained, we would be willing to consider a narrowed request that addresses Plaintiffs' concerns regarding the overbreadth and intrusiveness of this Request. Although Defendants expressed some unwillingness to narrow this Request, Defendants agreed to consider it.

#### b. *Requests for Production 5-6 (screen time from all household devices and streaming services)*

Plaintiffs are standing on their objections to these Requests. Defendants have failed to articulate the relevance of Plaintiffs' streaming activity relative to the burden and intrusiveness of identifying and providing documents and data relating to "all" streaming services used over multiple years (and, in many cases, over a decade). In addition, as we explained, because Plaintiffs were minors for much or all of the Relevant Time Period, access to streaming services likely occurred through unnamed third parties' accounts, and Defendants' Requests would encompass documents and data pertaining to those third

July 9, 2024
Page 3

parties as well. The documents and data sought are far from proportional to the needs of this case.

### c.     Request for Production 23 (yearbooks)

Subject to and without waiving Plaintiffs' previously asserted objections to this Request, Plaintiffs will permit inspection and copying of the entirety of Plaintiffs' yearbooks for schools Plaintiffs attended during the Relevant Time Period, to the extent that they are within Plaintiffs' possession, custody, or control.[1]

### d.     Request for Production 34 (CPS documents)

Subject to and without waiving Plaintiffs' previously asserted objections to this Request, in addition to reports and findings from child protective services or similar proceedings involving Plaintiffs, Plaintiffs will search for and produce documents responsive to this Request to the extent that they are within Plaintiffs' possession, custody, or control.

### e.     Request for Production 50 (use of alcohol, tobacco, nicotine, or drugs)

Subject to and without waiving Plaintiffs' previously asserted objections to this Request, in addition to searching for and producing police reports or arrest-related documents concerning Plaintiffs and illicit drugs during the Relevant Time Period, Plaintiffs will agree to search for documents responsive to this Request. If Defendants have additional search terms to propose, Plaintiffs will consider them.

### f.     Requests for Production 52-53 (discrimination or abuse)

Subject to and without waiving Plaintiffs' previously asserted objections to this Request, in addition to searching for and producing: (1) incident reports, police reports, or arrest-related documents concerning Plaintiffs' involvement in an incident involving discrimination or harassment on the basis of race/ethnicity, national origin, sex, sexual orientation, gender identity, transgender status, or disability during the Relevant Time Period (RFP 52); and (2) police reports or arrest-related documents concerning physical abuse, physical assault, violence, threats of violence or physical neglect involving Plaintiffs during the Relevant Time

---

[1] Plaintiffs define possession, custody, and control pursuant to the "legal right" standard applicable in the Ninth Circuit. *See, e.g.*, *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12–cv–2582 CW (JSC), 2013 WL 1767960, at *1 (N.D. Cal. Apr. 15, 2013).



July 9, 2024
Page 4

Period (RFP 53), Plaintiffs will agree to search for documents responsive to this Request. If Defendants have additional search terms to propose, Plaintiffs will consider them.

### g. Requests for Production 61-62 (crisis hotlines)

Subject to and without waiving Plaintiffs' previously asserted objections to these Requests, in cases where there are allegations regarding death by suicide, attempted suicide, suicidal ideation, or self-harm, Plaintiffs will agree to search for and produce documents responsive to this Request. If Defendants have additional search terms to propose, Plaintiffs will consider them.

### h. Request for Production 66 (romantic break ups or rejections)

Defendants assert that they are entitled to discovery about "any break ups or rejections" Plaintiffs have experienced during the Relevant Time Period, which, in many cases, began at age 7. Plaintiffs are standing on their objections to this Request, namely that it is overbroad, seeks irrelevant information, and is disproportionate to the needs of the case. As we explained, to the extent that Defendants are seeking documents concerning the impact of break ups or rejections on a Plaintiffs' mental health, those documents will be encompassed by other Requests and Plaintiffs will not withhold them on the basis that they pertain to a break up or rejection.

### i. Request for Production 68 (correspondence re Plaintiffs' mental health)

Subject to and without waiving Plaintiffs' previously asserted objections to this Request, Plaintiffs will agree to search for documents responsive to this Request. If Defendants have additional search terms to propose, Plaintiffs will consider them.

### 4. Documents Held by Family Members

Defendants defined the term "Family" to refer to Plaintiffs' "parents, legal guardians, caretakers, siblings, aunts, uncles, cousins, grandparents, nieces, and/or nephews." Plaintiffs agree to Defendants' proposal to "tier" family members, and will agree to the following proposal:

- Tier 1: parents, legal guardians, caretakers, siblings, or any Tier 2 family members who live or have lived with Plaintiffs during the Relevant Time Period

July 9, 2024
Page 5

- Tier 2: aunts, uncles, cousins, grandparents, nieces and/or nephews, to the extent that they do not live with Plaintiffs

With regards to the specific Requests implicated by Defendants' proposal, for Requests 35 and 67, Plaintiffs will agree to search for and produce responsive documents as they relate to Tier 1 and Tier 2 Family members, to the extent that they are in the Plaintiffs' possession, custody, or control. For Requests 2 and 48, Plaintiffs will agree to search for and produce responsive documents as they relate to Tier 1 Family members, to the extent that they are in the Plaintiffs' possession, custody, or control.

With respect to Request 68, Plaintiffs stand on their objections to producing documents concerning "any period of homelessness or displacement" for individuals other than Plaintiffs. As we have previously explained, these documents seek extremely sensitive information that is likely to have little (if any) probative value.

### 5. Loss of Consortium Discovery

As we explained, Plaintiffs are in the process of reevaluating their loss of consortium claims in light of the exchange with the Court at the June 21 Case Management Conference, and are continuing to consider Defendants' Requests in the context of that evaluation.

* * *

We remain available to discuss any questions or concerns you may have.

Very truly yours,

Jessica C. Colombo

CC: mdl3047_pibellwethers@listserv.motleyrice.com
mdl3047coleadfirms@listserv.motleyrice.com
defendants-mdl3047jccp5255@skaddenlists.com