EXHIBIT C

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| _____ *Plaintiff* | ) ) ) |
| v. | ) Civil Action No. 4:22-md-03047-YGR-PHK |
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJ. PRODS. LIAB. LITIG. _____ *Defendant* | ) ) ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Vaishnavi Jayakumar
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See Attachment A.

| Place: Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, California 90067.  Electronic production to and is preferred. | Date and Time: 03/07/2025 8:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     02/28/2025
_____

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ *Signature of Clerk or Deputy Clerk* | /s/ Ashley Simonsen _____ *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Meta Platforms, Inc et al. _____ , who issues or requests this subpoena, are:

Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, California 90067.

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:22-md-03047-YGR-PHK

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5   IN RE: SOCIAL MEDIA ADOLESCENT              Case No. 4:22:MD-03047-YGR
    ADDICTION/PERSONAL INJURY
6   PRODUCTS LIABILITY LITIGATION               MDL No. 3047

7                                               **ATTACHMENT A TO SUBPOENA TO
    THIS DOCUMENT RELATES TO:                   PRODUCE DOCUMENTS, INFORMATION,
8                                               OR OBJECTS IN A CIVIL ACTION
    *All Actions*                               DIRECTED TO VAISHNAVI JAYAKUMAR**

9

10

11          Pursuant to Federal Rule of Civil Procedure 45, Defendants Meta Platforms, Inc. f/k/a

12  Facebook, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC

13  (collectively, "Meta") hereby request that Vaishnavi Jayakumar produce the documents,

14  electronically stored information, and/or objects, set forth below on or before March 6, 2025.

15  Meta requests production via email and/or electronic share file sent to:

16  MetaNoticeofService@cov.com, with counsel for plaintiffs copied at

17  social_media_mdl@csdisco.com and counsel for co-defendants copied at the following email

18  addresses: SnapNoticeofService@mto.com; TikTokNoticeofService@faegredrinker.com; Service-

19  Youtube-Inresocialmediam@list.wsgr.com.  Alternatively, production may be made to Covington

20  & Burling LLP at 1999 Avenue of the Stars, Los Angeles, California 90067.

21

22

23

24

25

## GENERAL DEFINITIONS AND INSTRUCTIONS

**1.** The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

**2.** In accordance with the ESI Protocol attached hereto as Attachment C, "document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include a) Hard Copy Documents, meaning Documents existing in paper form at the time of collection; and b) Electronically stored information ("ESI") as defined in Federal Rules of Civil Procedure 26 and 34.

**3.** "You", "you", "Your" and "your" means Vaishnavi Jayakumar.

**4.** "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associating with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

**5.** "And" includes "or", and vice versa.

**6.** The singular form of a word or term includes the plural, and vice versa.

**7.** The present tense of a verb includes the past tense, and vice versa.

**8.** The use of the article "the" shall not be construed as limiting the scope of any request.

**9.** "Including" means "including without limitation."

**10.** "Any" includes "all", and vice versa.

**11.** The capitalized version of a word or term includes the lower-case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Messenger, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

14.    These Requests are intended to cover any and All documents in Your possession, custody, or control, to the extent not privileged.

15.    In accordance with the Order Regarding Protected Counsel Communications and Governing Privilege Log Protocol attached hereto as Attachment B, if You object to furnishing any of the documents or information requested by these Requests based on a claim of attorney-client privilege, work product protection, or any other applicable privilege or claim of protection, such information should be redacted and/or logged in accordance with the Order Regarding Protected Counsel Communications and Governing Privilege Log Protocol entered in this action. *See* ECF No. 740.

16.    If You object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that You claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which You provide a response.

17.    If You cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying Your inability to respond to the remainder and providing whatever information or knowledge You have concerning the portion not responded to.

18.     In accordance with the ESI Protocol attached hereto as Attachment C, all responsive electronic documents shall be produced in the format agreed upon by the parties in the ESI Protocol.

19.     Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## DOCUMENT REQUESTS

Identify and produce the following in Your possession, custody, or control:

1.     All Documents and Communications with current and/or former Meta employees, regarding Social Media Platforms and the mental, social, emotional, or behavioral health, safety, or the sexual exploitation of persons under the age of 18.

2.     All Documents and Communications between You and Arturo Bejar, Frances Haugen, Kang-Xing Jin (aka "KX Jin" or "Robert Jin"), Margaret Gould Stewart, Samir Patel, Aza Raskin, and Alison Lee concerning Social Media Platforms.

3.     All Documents received from and Communications with attorneys or any individuals working on behalf of attorneys, including but not limited to investigators and investigation firms, at Motley Rice, LLP; Seeger Weiss, LLP; Lieff Cabraser Heimann & Bernstein, LLP; Morgan & Morgan; and the offices of various State Attorneys General, Including but not limited to the offices in California, Massachusetts, Vermont, Nebraska, New Mexico, Nevada, and Tennessee, among others.

4.     All Communications with Jeff Horwitz of the Wall Street Journal from November 2020 through the present.

# Attachment B

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: *Social Media Adolescent*              Case No.:   4:22-md-03047-YGR
     *Addiction/Personal Injury Products Liability*
12   *Litigation*                                  MDL No. 3047

13   This document relates to:                     **STIPULATION AND [PROPOSED]**
     All Actions                                   **ORDER REGARDING PROTECTED**
14                                                  **COUNSEL COMMUNICATIONS AND**
                                                    **GOVERNING PRIVILEGE LOG**
15                                                  **PROTOCOL**

16

17

18          This Stipulation and Order Regarding Protected Counsel Communications and Governing

19   Privilege Log Protocol ("Order") shall apply to certain protected communications between

20   counsel or govern the procedures for withholding documents from discovery based on a

21   recognized claim of privilege or protection of responsive documents that would otherwise be

22   subject to discovery. This Order applies equally to all parties, who for the purposes of below

23   shall be designated in their various roles as either the "Producing Party" or "Receiving Party"

24   (defined below). All deadlines and timeframes in this order that reference "days" are referring to

25   calendar days and not business days.

26   **I.     DEFINITIONS**

27          All capitalized terms are defined as in the Protective Order (ECF No. 665) entered in the

28   Action unless otherwise defined below.

A.     <u>JCCP 5225</u>: JCCP 5225 shall refer to the actions currently included in JCCP 5225, any other action hereafter added or transferred to JCCP 5225, and all actions later remanded to their respective transferor courts from JCCP 5225.

B.     <u>Discovery Material</u>: all items, documents, or other information, regardless of the medium or manner in which it is generated, stored, or maintained, that is subject to discovery.

C.     <u>Government Counsel</u>: attorneys, as well as their support staff, supervisors, law clerks, investigators, and any other employees of a government law office or consumer protection agency that represents a Party to the Action, JCCP 5225, or a Related Litigation.

D.     <u>Non-Filing Government Counsel</u>: attorneys, as well as their support staff, supervisors, law clerks, investigators, and any other employees of a government law office or consumer protection agency, that were part of the multistate coalition investigating the claims and allegations related to this Action and Related Litigation, and that have not brought suit in this Action or a Related Litigation.

E.     <u>Outside Legal Counsel</u>: attorneys, as well as their support staff to whom it is reasonably necessary to disclose the information for this Action or JCCP 5225 (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators), who are not employees of a Party to this Action, JCCP 5225, or a Related Litigation but are retained to represent a Party to this Action, JCCP 5225, or a Related Litigation or to advise a Party with respect to this Action, JCCP 5225, or a Related Litigation.

F.     <u>Privileged Material</u>: Discovery Material to the extent it is protected from discovery based on a claim of attorney-client privilege, work product protection, or any other applicable privilege or claim of protection.

G.     <u>Receiving Party</u>: a Party that receives Discovery Material or a description of Discovery Material which is designated as whole or in part as Privileged Material.

H.     <u>Related Litigation</u>: litigations listed by caption in Appendix A, or as supplemented.

## II.     **PROTECTED COUNSEL COMMUNICATIONS**

Cooperation by and among Plaintiffs' Outside Legal Counsel, including Government

- 2 -

Counsel, and by and among Defendants' Outside Legal Counsel, is essential for the orderly and expeditious resolution of this Action and JCCP 5225. The communication of information (A) among and between Plaintiffs' Outside Legal Counsel, including Government Counsel, and (B) among and between Defendants' Outside Legal Counsel, shall not be deemed a waiver of the attorney-client privilege or the protections afforded for attorney work product. Nothing contained in this provision shall be construed to limit the rights of any party or counsel to assert the attorney-client privilege or attorney work-product doctrine.

### III.  PRIVILEGE LOG PROTOCOL

To the extent that Discovery Material is withheld from production on the basis of a good faith claim that it contains Privileged Material, the Producing Party shall produce a privilege log as set forth below within 45 days of the date by which the documents would otherwise have been produced if not for the claim of privilege or protection, unless another time is agreed to by the parties. Privilege logs shall be produced on a rolling basis.

A.  Exclusions from Logging Documents Reflecting Privileged Communications or Work Product:  To the extent that they contain Privileged Material, the following materials presumptively need not be logged on a privilege log:

1.  Communications with Counsel, including Government Counsel, expressly regarding this Action, JCCP 5225, or a Related Litigation after date of initial complaint filing;[1]

2.  Communications exclusively between and among any Plaintiffs' Outside Legal Counsel expressly regarding this Action or JCCP 5225, including pre-filing investigations regarding the allegations and claims asserted therein;

3.  Communications between and among Government Counsel and Non-Filing Government Counsel, including their Outside Legal Counsel, during the period encompassing the pre-suit investigation that culminated in this matter and Related Litigation regarding their investigations of the allegations and

---

[1] "[E]xpressly regarding this Action, JCCP 5255, or a Related Litigation" means a communication about the litigation activities themselves, not the subject matter of the lawsuits.

claims asserted in this Action. This exclusion from logging also applies to their pre-suit investigations of other Defendants related to allegations and claims asserted in this Action and Related Litigation, regardless of whether any Government Counsel names the Defendant in a complaint.

4. Work product regarding this Action, JCCP 5225, or a Related Litigation, created by an attorney or at the direction of an attorney, who is part of a Party's Counsel, including Government Counsel;

5. Communications expressly regarding this Action, JCCP 5225, or a Related Litigation exclusively between a Party and their Outside Legal Counsel or Government Counsel;

6. Communications expressly regarding this Action, JCCP 5225, or a Related Litigation exclusively between and among either a Party's Outside Legal Counsel or Government Counsel, including their Outside Legal Counsel, and their Experts or professional vendors, and attorney work product created by Experts or professional vendors, except (with respect to Communications between and among a Party's Outside Legal Counsel or Government Counsel, including their Outside Legal Counsel, and their testifying Experts) to the extent the Communications:

    a. relate to compensation for the Expert's study or testimony;

    b. identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed;

    c. identify assumptions that the party's attorney provided and that the expert relied on in forming opinions to be expressed.

Notwithstanding the foregoing, if a Party asserts that communications regarding interactions or communications with any regulator or government agency, if any, are Privileged Material, other than communications included in Section III.A.3, and those subject to the common interest privilege such as those between Plaintiffs' counsel and State Attorneys General, such communications shall be logged, irrespective of the involvement of counsel, including Outside

Legal Counsel who were retained for this Action. Nothing herein prohibits a Party from requesting a privilege log for materials presumptively excepted from logging upon a showing of good cause.

  B. <u>Redacted Documents</u>.  Any Discovery Material that contains both Privileged Material and non-privileged material must be disclosed with the purportedly privileged portion redacted. The redacted portion shall be indicated on the Discovery Material itself with the appropriate redaction type reflected in the metadata.  The Parties will not be required to log privilege redactions.

  C. <u>Format</u>.  Privilege logs shall be produced in Excel format that allows for text searching, sorting, and organization of data, and shall be produced in a cumulative manner, so that each subsequent privilege log includes all privilege claims from prior logs. No listings, therefore, shall be deleted from the log. If a privilege claim is withdrawn in whole or in part, the listing shall indicate that the claim was withdrawn in whole or in part.  The correspondence accompanying each privilege log shall indicate the document production volume(s) and Bates range(s) to which the privilege log applies.

  D. <u>Identification of Counsel</u>.  The Producing Party shall identify on the privilege log the attorney, legal staff or personnel with an "ATTY" or exclamation mark.

  E. <u>Metadata-Plus-Topic Log</u>. For documents withheld on the basis of privilege or work product, the Producing Party shall provide a metadata log containing the below metadata fields (as defined in the ESI Order, ECF 690), a field or column indicating the privilege log volume, a category/topic field for the Privileged Material (*see* Appendix B), and a column to indicate if an entry was downgraded, modified, or withdrawn (*see* Section IV, *supra*).  The Producing Party shall review and analyze each document for privilege and will not rely solely on the metadata to make the determination.

   1. PRIV LOG ID

   2. BEGBATES

   3. ENDBATES

4.  BEGATTACH

5.  ENDATTACH

6.  ALLCUSTODIANS

7.  PRIV TYPE (e.g., Attorney-Client Privilege, Attorney Work Product, Common Interest)

8.  FILENAME

9.  EMAILSUBJECT

10. AUTHOR

11. TO/FROM/CC/BCC

12. DATETIMESENT

13. DATETIMERECEIVED

14. DOCDATE

15. DOCUMENT TYPE

16. HASHVALUE

17. ALLFILEPATHS

18. DATELASTMODIFIED

19. THREADID

F.    Narrative Log. Alternatively, a Producing Party may elect to produce a narrative privilege log for documents withheld from production, which would contain a description field describing each document and the basis for the privilege assertion, in addition to the metadata fields listed in Section III.E above. Appendix B shall not apply to narrative logs.

G.    Listserv or Group Email. To the extent that Listserv or group email addresses are identified on the privilege log, the Producing Party shall work in good faith to identify individuals and/or groups of individuals and/or groups of individuals who make up such Listserv or group email upon request, which may follow the production of the log.

H.     Families of Discovery Material. If an attachment (parent or child) to a Discovery Material or communication is being withheld, such attachment(s) shall be identified in the privilege log as separate entries. Families of Discovery Material shall be logged together in sequence with the parent document followed by any other withheld documents in the Discovery Material family to the extent multiple family members are privileged. A Producing Party shall not assert that Discovery Material constitutes Privileged Material on the sole basis that it is part of a family containing other Privileged Material or is attached to a communication with Outside Legal Counsel or its In-House Legal Department.

I.     Lesser Inclusive Emails. A Producing Party need not log lesser inclusive emails within the same email chain so long as the most-inclusive email record is logged.

J.     To the extent documents require a log format that differs from the requirements outlined above, the parties will meet and confer in good faith, and endeavor to agree upon an appropriate log format for such documents.

## IV.     PRIVILEGE CHALLENGE PROTOCOLS

Resolution of disputes regarding claims of privilege shall be in accordance with Section H of the Court's Standing Order for Discovery in Civil Cases.

A.     Challenges to Privilege Claims: Following the receipt of a privilege log or documents that have been redacted for privilege, a Receiving Party may identify, in writing (by PRIV LOG ID or Bates number), the particular documents that it believes require further explanation. The Producing party shall use reasonable efforts to respond to requests within 10 days for challenges totaling 50 documents and under. If the challenge exceeds 50 documents, the Parties will meet and confer regarding a response time frame. The Parties shall meet and confer to try to reach a mutually agreeable solution.

B.     Changes to Redactions or Privilege Designations: To the extent that any privilege assertions are downgraded, modified, or withdrawn by the Producing Party as a result of meet and confer in accordance with the process above, the Producing Party shall within 14 days, or within a time frame as agreed to by the Receiving and Producing Parties, produce any such downgrades as production overlays and indicate the same in the production cover letter to be served with a "key"

1   that indexes the privilege identification number with the assigned Bates Number for each

2   downgraded document. In the event any privilege assertion is downgraded, modified, or

3   withdrawn by the Producing Party with respect to documents to be used in an upcoming

4   deposition, the Parties shall meet and confer and the Producing Party shall use reasonable efforts

5   to produce the documents in advance of the deposition.

6   **V.**    **MODIFICATION**

7       This Order may be modified at any time by the Court on its own motion, for good cause

8   shown on motion of a party, or by agreement of the parties with the Court's approval.

9   Compliance with this Protocol satisfies the Producing Party's obligations under Federal Rule of

10   Civil Procedure 26(b)(5) to expressly claim a privilege or protection and describe the nature of

11   Privileged Material for other parties to assess the claim.

12

13   **IT IS SO STIPULATED**, through Counsel of Record.

14   DATED: April 1, 2024            Respectfully submitted,

15                              */s/ Lexi J. Hazam*
                              LEXI J. HAZAM

16                              **LIEFF CABRASER HEIMANN &**
                              **BERNSTEIN, LLP**

17                              275 BATTERY STREET, 29TH FLOOR

18                              SAN FRANCISCO, CA 94111-3339
                              Telephone: 415-956-1000

19                              lhazam@lchb.com

20

21                              PREVIN WARREN
                              **MOTLEY RICE LLC**

22                              401 9th Street NW Suite 630
                              Washington DC 20004

23                              T: 202-386-9610
                              pwarren@motleyrice.com

24

25                              Co-Lead Counsel

26                              CHRISTOPHER A. SEEGER
                              **SEEGER WEISS, LLP**

27                              55 CHALLENGER ROAD, 6TH FLOOR
                              RIDGEFIELD PARK, NJ 07660

28                            Telephone: 973-639-9100

Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

RON AUSTIN
**RON AUSTIN LAW**
400 Manhattan Blvd.
Harvey LA, 70058
Telephone: (504) 227–8100

raustin@ronaustinlaw.com
MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

- 9 -

T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

1

**PHILIP J. WEISER**

2

Attorney General
State of Colorado

3

*/s/ Bianca E. Miyata*

4

Bianca E. Miyata, CO Reg. No. 42012,
*pro hac vice*

5

Senior Assistant Attorney General

6

Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General

7

Megan Paris Rundlet, CO Reg. No. 27474
Senior Assistant Solicitor General

8

Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General

9

Colorado Department of Law

10

Ralph L. Carr Judicial Center
Consumer Protection Section

11

1300 Broadway, 7th Floor
Denver, CO 80203

12

Phone: (720) 508-6651
bianca.miyata@coag.gov

13

14

*Attorneys for Plaintiff State of Colorado, ex rel.
Philip J. Weiser, Attorney General*

15

**ROB BONTA**

16

Attorney General
State of California

17

*/s/ Megan O'Neill*

18

Nick A. Akers (CA SBN 211222)

19

Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)

20

Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)

21

Joshua Olszewski-Jubelirer
(CA SBN 336428)

22

Marissa Roy (CA SBN 318773)

23

Nayha Ahora (CA SBN 250467)
Deputy Attorneys General

24

California Department of Justice

25

Office of the Attorney General
455 Golden Gate Ave., Suite 11000

26

San Francisco, CA 94102-7004
Phone: (415) 510-4400

27

Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

28

PROTECTED COUNSEL COMMUNICATIONS AND
PRIVILEGE LOG ORDER
MDL NO. 3047

1

*Attorneys for Plaintiff the People of the State of California*

2

3  **RUSSELL CAMERON**
Attorney General

4  Commonwealth of Kentucky

5  */s/ J. Christian Lewis*

6  J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*

7  Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*

8  Zachary Richards (KY Bar No. 99209),
*Pro hac vice*

9  Daniel I. Keiser (KY Bar No. 100264)
*Pro hac vice*

10  Assistant Attorneys General

11  1024 Capital Center Drive, Suite 200
Frankfort, KY 40601

12  CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV

13  ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV

14  Phone: (502) 696-5300
Fax: (502) 564-2698

15

16  *Attorneys for Plaintiff the Commonwealth of Kentucky*

17

18

19

20

21

22

23

24

25

26

27

28

- 13 -

1   COVINGTON & BURLING LLP

2   By:  */s/ Ashley M. Simonsen*
    Ashley M. Simonsen, SBN 275203
3   COVINGTON & BURLING LLP
    1999 Avenue of the Stars
4   Los Angeles, CA 90067
    Telephone: (424) 332-4800
5   Facsimile: + 1 (424) 332-4749
    Email: asimonsen@cov.com
6

7   Phyllis A. Jones, *pro hac vice*
8   Paul W. Schmidt, *pro hac vice*
    COVINGTON & BURLING LLP
9   One City Center
    850 Tenth Street, NW
10  Washington, DC 20001-4956
    Telephone: + 1 (202) 662-6000
11  Facsimile: + 1 (202) 662-6291
    Email: pajones@cov.com
12

13  *Attorney for Defendants Meta Platforms, Inc.*
    *f/k/a Facebook, Inc.; Facebook Holdings,*
14  *LLC; Facebook Operations, LLC; Facebook*
    *Payments, Inc.; Facebook Technologies, LLC;*
15  *Instagram, LLC; Siculus, Inc.; and Mark Elliot*
16  *Zuckerberg*

17  FAEGRE DRINKER LLP
18  *By: /s/ Andrea Roberts Pierson*
    Andrea Roberts Pierson, pro hac vice
19  FAEGRE DRINKER LLP
    300 N. Meridian Street, Suite 2500
20  Indianapolis, IN 46204
    Telephone: + 1 (317) 237-0300
21  Facsimile: + 1 (317) 237-1000
    Email: andrea.pierson@faegredrinker.com
22

23  Amy R. Fiterman, pro hac vice
    FAEGRE DRINKER LLP
24  2200 Wells Fargo Center
    90 South Seventh Street
25  Minneapolis MN 55402
    Telephone: +1 (612) 766 7768
26  Facsimile: + 1 (612) 766 1600
    Email: amy.fiterman@faegredrinker.com
27

28  Geoffrey M. Drake, pro hac vice

PROTECTED COUNSEL COMMUNICATIONS AND
PRIVILEGE LOG ORDER
MDL NO. 3047

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd. and TikTok LLC.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler, SBN 2965
Victoria A. Degtyareva, SBN 284199
Laura M. Lopez, SBN 313450
Rowley J. Rice, SBN 313737
Ariel T. Teshuva, SBN 324238
Faye Paul Teller, SBN 343506
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: laura.lopez@mto.com
Email: rowley.rice@mto.com
Email: ariel.teshuva@mto.com
Email: faye.teller@mto.com

Lauren A. Bell (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP

- 15 -

601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW

PROTECTED COUNSEL COMMUNICATIONS AND
PRIVILEGE LOG ORDER
MDL NO. 3047

Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

PURSUANT TO STIPULATION,
**IT IS SO ORDERED** that the foregoing Agreement is approved.

DATED: April 2, 2024

PETER H. KANG
UNITED STATES MAGISTRATE JUDGE

1    **<u>Appendix A</u>**

2    The Parties agree the below litigations are within the scope of Related Litigation*:

3    <u>Meta</u>

4    - *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Meta Platforms, Inc.;*

5      *Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc.; Facebook*

6      *Technologies, LLC; Instagram, LLC; and Siculus, Inc.*, Case No. 57CV-23-47 (Arkansas

7      Circuit Court, Polk County).

8    - *District of Columbia v. Meta Platforms, Inc. and Instagram, LLC*, Case No. 2023 CAB

9      006550 (D.C. Superior Court).

10   - *Commonwealth of Massachusetts* v. *Meta Platforms, Inc. and Instagram, LLC*, Case No.

11     2384CV02397 (Massachusetts Superior Court, Suffolk County).

12   - *State of Mississippi, ex rel. Lynn Fitch, Attorney General v. Meta Platforms, Inc.;*

13     *Instagram, LLC; Meta Payments, Inc., and Meta Platforms Technologies, LLC*, Case No.

14     25CH1:23-cv-01205 (Mississippi Chancery Court, First Judicial District).

15   - *State of New Hampshire v. Meta Platforms, Inc., and Instagram, LLC*, Case No. 217-

16     2023-CV-00594 (New Hampshire Superior Court, Merrimack, SS).

17   - *State of Oklahoma, ex rel. Gentner Drummond, Attorney General of Oklahoma v. Meta*

18     *Platforms, Inc., and Instagram, LLC*, Case No. CJ-2023-00180 (Oklahoma District

19     Court, Osage County).

20   - *State of Tennessee, ex rel. Jonathan Skrmetti, Attorney General and Reporter v. Meta*

21     *Platforms, Inc., and Instagram, LLC*, Case No. 23-1364-IV (Tennessee Chancery Court,

22     Davidson County).

23   - *Utah Division of Consumer Protection v. Meta Platforms, Inc., and Instagram, LLC*,

24     Case No. 230908060 (Utah Third District Court, Salt Lake County).

25   - *State of Vermont v. Meta Platforms, Inc., and Instagram, LLC*, Case No. 23-CV-04453

26     (Vermont Superior Court, Chittenden County).

27   - *State of New Mexico, ex rel. Raul Torrez, Attorney General v. Meta Platforms, Inc.;*

28     *Instagram, LLC; Meta Payments Inc.; Meta Platforms Technologies, Inc; and Mark*

*Zuckerberg*, Case No. D-0101-CV-202302838 (New Mexico First Judicial District Court, Santa Fe County).

- *State of Nevada v. Meta Platforms, Inc., and Instagram, LLC*, Case No. A-24-886110-B (Nevada District Court, Clark County).

- *State of Nevada v. Meta Platforms, Inc., and Instagram, LLC*, Case No. A-24-886115-B (Nevada District Court, Clark County).

- *State of Nevada v. Meta Platforms, Inc., and Instagram, LLC*, Case No. A-24-886120-B (Nevada District Court, Clark County).

- *M.G. v. Meta Platforms, Inc.; Instagram, LLC; Facebook Payments, Inc.; Siculus, Inc.; Facebook Operations, LLC; and Tory Dwanell Saidstuart* , Case No. 3:23-cv-01861 (D. Or.).

- *Norma Nazario, individually and as Administrator of the Estate of Zackery Nazario v. Bytedance LTD.; Bytedance, INC.; TikTok, Inc.; Meta Platforms, Inc., Metropolitan Transportation Authority, and New York City Transit Authority*, Case No. 0151540/2024 (N.Y. Supreme Ct., New York County).

<u>Snap</u>

- *State AG Nevada v. Snap, Inc.,* A-24-886113-B (Nevada District Court, Clark County)
- *Kennedy Harris, et al v. Snap,* 05251 LACV044283 (Iowa District Court, Dallas County)
- *Linda Blea v. Snap,* D-412-CV-2022-00236 (New Mexico – 4th Judicial District, San Miguel County)
- *V.V. and E.Q., individually and as next friends to minor C.O., v. Meta, et al.,* FBT-CV-23-5050779-S (Conn. Superior Court, Judicial District of Fairfield at Bridgeport); 3:23-cv-00284-SVN (D. Conn.); UWYCV235032685S (Conn. Superior Court, Complex - Waterbury Dist.)
- *Cody Dahl and Tonya Cole Dahl v. Alphabet, Inc.,  et al.,* 4:23-cv-9472 (W.D. Tex.)

PROTECTED COUNSEL COMMUNICATIONS AND
PRIVILEGE LOG ORDER
MDL NO. 3047

## TikTok

- *Nasca, et al. v. ByteDance Ltd., et al.*, No. 2:23-cv-02061 (E.D.N.Y.)
- *Anderson, et al. v. TikTok Inc., et al.*, No. 2:22-cv-01849-PD (E.D. Pa.), *appeal docketed*, No. 22-3061 (3d Cir.)
- *Bogard, et al. v. TikTok Inc., et al.*, No. 3:23-cv-00012 (S.D. Ind.)
- *Nazario, et al. v. ByteDance Ltd., et al.*, No. 151540/2024 (New York Supreme Court, New York County)
- *Nevada v. TikTok Inc., et al.*, No. A-24-886127-B (Nevada District Court, Clark County)
- *Utah v. TikTok Inc., et al.*, No. 230907634 (Utah Third District Court, Salt Lake County)
- *Arkansas v. TikTok Inc., et al.*, No. 12CV-23-65 (Arkansas Circuit Court, Cleburne County)
- *Iowa v. TikTok Inc., et al.*, No. 24-1522 (Iowa District Court, Polk County)
- *Kansas v. TikTok Inc., et al.*, (Kansas District Court, Shawnee County)
- *Indiana v. TikTok Inc., et al.*, No. 23A-PL-03110 (Ind. Ct. App.)

## YouTube

- *Cody Dahl et al. v. Alphabet, Inc. et al.*, Case No. 1:23-cv-01496 (W.D. Tex.) (removed December 11, 2023)

\* Upon agreement between the Plaintiffs and Defendants, this list may be updated without leave of Court and by serving it on all Parties.

## **Appendix B**

The Parties list below the agreed-upon topics for the topic field for the privilege log option in Section III.E.  A Party is only required to choose one topic for each withheld document, but may choose multiple.

1.  acquisitions, sales, or divestitures

2.  advertising and marketing

3.  board of directors meeting agendas, presentations, and/or draft meeting minutes

4.  compliance with foreign laws and regulations

5.  compliance with U.S. laws and regulations

6.  contract drafting or evaluation

7.  drafting of, implementation of, or compliance with company policies or procedures

8.  foreign government hearings, investigations, or inquiries

9.  U.S. government hearings, investigations, or inquiries

10. human resources/employee issues

11. identity and age verification issues

12. intellectual property and patent issues

13. legal hold

14. the current litigation (MDL 3047), JCCP 5225, and Related Litigation

15. litigation other than the MDL 3047, JCCP 5225, and Related Litigation

16. periodic regulatory filings

17. product features

18. review of proposed communications re public and media appearances, press releases, or other published statements

19. user safety

20. [a logging party may add additional categories as appropriate during review, which will be disclosed to the Requesting Party.]

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: April 1, 2024                    */s/ Ashley M. Simonsen*
                                        Ashley M. Simonsen

# Attachment C

1
2
3
4
5

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

## 1.   PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2.   DEFINITIONS

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.      COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.      LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.      IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1  Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2  been served, the parties will meet and confer regarding those custodians and custodial and non-

3  custodial data sources from which Documents and ESI will be collected for search and review for

4  potential production in this litigation. The custodian and data source exchanges will include brief

5  explanations of the rationale for their selections; for example, for custodians, their current job

6  titles and descriptions of their work, and for data sources, location information and description.

7        **6.**     **INACCESSIBLE OR UNUSABLE ESI**

8          If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9  accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14        **7.**     **KNOWN RESPONSIVE DOCUMENTS**

15          Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21        **8.**     **SEARCH METHODOLOGIES**

22          The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

potential disputes over their respective ESI productions.

### 9.      HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive

ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

meet and confer regarding any disputes over the disclosed search terms. In the event that a

Producing Party claims burden with respect to modified and/or additional search terms proposed

by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

shall provide a hit report for the document collection where the terms were applied, including the

following with respect to each proposed or modified search term in the collection:

a) The number of documents with hits for that term; and

b) The number of unique documents, i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

may reasonably request a further hit report which includes:

c) The number of family members, including the documents with hits, of the documents with hits for that term; and

d) The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the

number of family members and unique family members, then the Producing Party shall provide

such further hit report. The Parties (including the person most knowledgeable about the

capabilities of the Producing Party's ESI tool and the Requesting Party's person most

knowledgeable about technical issues from its ESI service provider) shall meet and confer

regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their

application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

**10.    TECHNOLOGY ASSISTED REVIEW (TAR)**

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.

- Disclose the name of the TAR tool or service used to all other Party/Parties.

**11.    VALIDATION**

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

**12.    UNSEARCHABLE DOCUMENTS**

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

**13.    SYSTEM FILES**

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14. DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

1  and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include

2  Bcc" as an additional field to add to the default ones.

3      The Parties shall not withhold from production near-duplicates without meeting and

4  conferring on this issue.

5      The names of all custodians who were either identified as custodians for purposes of

6  collection for this matter (or otherwise known by the Producing Party to have been in possession

7  or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS

8  metadata field for the produced version of a document that has duplicates removed from

9  production. The original file paths (if any exist) of a document prior to deduplication will be

10  populated in the ALL FILE PATHS metadata field of the produced document.

11      **15.    EMAIL THREADING**

12      The Parties may use analytics technology to identify email threads and shall produce the

13  unique most inclusive copy and related family members. Where multiple email messages are part

14  of a single chain or "thread," a Party is only required to produce the most inclusive copy of an

15  email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email

16  messages or "thread members," provided that the tool or software service being used to perform

17  threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of

18  the most inclusive email message in the thread, where the entire body of each of those lesser

19  inclusive copies is included within the Last in Time Email. The Producing Party will honor

20  reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier

21  chains of emails otherwise excluded by email thread suppression.

22      The Parties shall treat new or different email chains or threads pursuant to further

23  agreement on safeguards or guidelines for defining emails threads which reasonably take into

24  account the capabilities of the email threading/dethreading/hyperthreading tools used by each

25  Defendant (which shall be disclosed to Plaintiffs).

26      **16.    SOURCE CODE**

27      The Parties will meet and confer to address the production and/or inspection of source

28  code and entering into a separate order governing the same if needed.

**17.   PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

**18.   PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**19.   MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g*., hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language

documents responsive to document requests that a Party reasonably knows as the

result of a reasonable investigation have been translated into the English language

using human translators or through machine translation for its own purposes, except to

the extent such translation is protected by attorney-client or work-product privileges,

the Producing Party shall produce the translation of the original document with the

original. The parties will meet and confer as necessary concerning procedures for

using translations at depositions and at trial. In the event the Parties cannot reach

agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

Non-Party should produce Documents in response to the subpoena to all Parties; and

(2) the Parties to this Litigation have requested that Third Parties produce Documents

in accordance with the specifications set forth herein. If the subpoenaed Non-Party

produces Documents to the Issuing Party but does not produce those Documents to

other Parties, the Issuing Party shall produce such Documents to those other Parties

within 14 days of receiving the Documents, except where the Documents are to be

used in a deposition, in which case the Issuing Party shall produce such Documents to

all other Parties no later than three (3) days prior to the deposition, or as soon as

reasonably practicable if such production occurs thereafter. Nothing in this Order is

intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

Parties or Third Parties to object to a subpoena. If the Non-Party production is not

Bates-stamped, the Parties will meet and confer to agree upon a format for designating

the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

the number of requests for admission, this Order establishes a rebuttable presumption

that documents produced by the Parties are authentic, if said documents were either

created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: March 15, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

 */s/ Megan O'Neill*
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

1
2            **RUSSELL COLEMAN**
            Attorney General
3            Commonwealth of Kentucky

4            */s/ J. Christian Lewis*
            J. Christian Lewis (KY Bar No. 87109),
5            *Pro hac vice*
            Philip Heleringer (KY Bar No. 96748),
6            *Pro hac vice*
            Zachary Richards (KY Bar No. 99209),
7            *Pro hac vice app. forthcoming*
            Daniel I. Keiser (KY Bar No. 100264),
8            *Pro hac vice*
            Matthew Cocanougher (KY Bar No. 94292),
9            *Pro hac vice*
            Assistant Attorneys General
10            1024 Capital Center Drive, Suite 200
            Frankfort, KY 40601
11            CHRISTIAN.LEWIS@KY.GOV
            PHILIP.HELERINGER@KY.GOV
12            ZACH.RICHARDS@KY.GOV
            DANIEL.KEISER@KY.GOV
13            MATTHEW.COCANOUGHER@KY.GOV
            Phone: (502) 696-5300
14            Fax: (502) 564-2698

15
16            *Attorneys for Plaintiff the Commonwealth of*
            *Kentucky*
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

1                                   *Attorneys for Defendant Snap Inc.*

2

3                                   WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*

4                                   Brian M. Willen (*pro hac vice*)

5                                   WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

6                                   Telephone: (212) 999-5800

7                                   Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

8

9                                   Lauren Gallo White
Samantha A. Machock

10                                  WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300

11                                  San Francisco, CA 94105
Telephone: (415) 947-2000

12                                  Facsimile: (415) 947-2099
Email: lwhite@wsgr.com

13                                  Email: smachock@wsgr.com

14

15                                  Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100

16                                  Los Angeles, CA 90013
Telephone:  (323) 210-2900

17                                  Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

18

19                                  *Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

20

21                                  WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*

22                                  Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com

23                                  Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com

24                                  680 Maine Avenue, SW
Washington, DC 20024

25                                  Telephone.: 202-434-5000
Fax: 202-434-5029

26

27                                  *Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

28

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and
Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____March 18, 2024_____     _____
                                          MAGISTRATE JUDGE PETER H.  KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a)   an ASCII delimited data file (.DAT) using standard delimiters;

    b)   an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c)   single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d)   and document level .TXT files for all documents containing extracted full text or OCR text.

    e)   Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f)   If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

1   any documents.

2       **3)  Data Load Files/Image Load Files.** Each TIFF in a production must be

3   referenced in the corresponding image load file. The total number of documents referenced in a

4   production's data load file should match the total number of designated document breaks in the

5   image load file(s) in the production. The total number of pages referenced in a production's

6   image load file should match the total number of TIFF files in the production. All images must

7   be assigned a unique Bates number that is sequential within a given document and across the

8   production sets. The Bates Numbers in the image load file must match the corresponding

9   documents' beginning Bates numbers in the data load file. The total number of documents in a

10  production should match the total number of records in the data load file. Load files must not

11  vary in format or structure within a production, or from one production to another except by

12  agreement of the Parties.

13      **4)  Metadata Fields.** Each of the metadata and coding fields set forth below that can

14  be extracted should be produced for each document, except that if the field contains privileged

15  information, that privileged information may be redacted. However, to the extent that metadata

16  does not exist, is not available for any documents produced, this provision shall not be read to

17  require any Party to extract, capture, collect, manually populate, or produce such metadata, with

18  the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d)

19  ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h)

20  REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l)

21  TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties

22  will make reasonable efforts to ensure that metadata fields automatically extracted from the

23  documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
|  | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5)　　**TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6)　　**Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

15) **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

16) **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

17) **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

18) **Redactions**.

a) A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b) No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c) The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d) Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e) Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f) Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g) All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h) Color. Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**19)** **Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20)** **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.