UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **JOINT LETTER BRIEF ON CERTAIN REQUESTS FOR ADMISSISION SERVED BY THE STATES ON THE META DEFENDANTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, the State AGs and Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") respectfully submit this letter brief regarding three remaining disputes related to the State AGs' Requests for Admissions Set 1 (served February 14, 2025, covering RFA Nos. 9 through 17) and Plaintiffs' Requests for Admission Set 3 (served February 21, 2025 covering RFA Nos. 18-48). This letter brief covers disputes over the relevant time period to be applied; Meta's objections to RFA No. 16; and Meta's objection and response to RFA No. 46.

The parties have attached copies of the RFAs at issue as well as Meta's responses for the Court's convenience.[1]

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, email, and correspondence on numerous occasions before filing this brief. On May 22, 2025, lead counsel for the Parties involved in the dispute attended final conferrals. Because all lead counsel are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference. Lead trial counsel have concluded that no agreement or further negotiated resolution can be reached. The parties will be prepared to address these disputes at the Court's earliest convenience.

---

[1] In the joint letter brief, the parties cite certain materials produced in discovery. As required by the Court's Discovery Standing Order's general prohibition on attachments to letter briefs, Order § H.3, only the RFAs and responses are attached; other cited materials are not attached. The parties are prepared to file the cited materials or otherwise provide them to the Court, at the Court's request.

Date: June 6, 2025

        Respectfully submitted,

        **ROB BONTA**
        Attorney General
        State of California

        */s/ Joshua Olszewski-Jubelirer*
        Nicklas A. Akers (CA SBN 211222)
        Senior Assistant Attorney General
        Bernard Eskandari (SBN 244395)
        Emily Kalanithi (SBN 256972)
        Supervising Deputy Attorneys General
        Nayha Arora (CA SBN 350467)
        David Beglin (CA SBN 356401)
        Megan O'Neill (CA SBN 343535)
        Joshua Olszewski-Jubelirer (CA SBN 336428)
        Marissa Roy (CA SBN 318773)
        Brendan Ruddy (CA SBN 297896)
        Deputy Attorneys General
        California Department of Justice
        Office of the Attorney General
        455 Golden Gate Ave., Suite 11000
        San Francisco, CA 94102-7004
        Phone: (415) 510-4400
        Fax: (415) 703-5480
        Joshua.OlszewskiJubelirer@doj.ca.gov

        *Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado
 /s/ Krista Batchelder
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ Philip Heleringer
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV

3

MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698
*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Matthew J. Platkin, Attorney General for the State of New Jersey, and Cari Fais, Director of the New Jersey Division of Consumer Affairs*

                              **COVINGTON & BURLING LLP**
<u>/s/ Ashley M. Simonsen</u>
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email: asimonsen@cov.com
*Attorney for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

**State AGs' Position:** This dispute involves three issues related to RFAs served on Meta: the relevant time period, RFA No. 16, and RFA No. 46.

**Relevant Time Period.** First, Meta seeks to avoid responding to numerous RFAs with any information that post-dates April 1, 2024. In the instructions provided for RFA Nos. 9 through 48 the relevant time period was clearly and concisely set forth as "2012 to the present." *See* Attachments 1, 2. The RFAs impacted by Meta's misapplication of the time period are RFA Nos. 9, 10, 16, 17, 18, 19, 20, 21, 46, 47, 48, which address Meta's collection and use of personal information and data of users, including Child users, and necessarily go to the core of Meta's systematic, ongoing violations of the Children's Online Privacy Protection Act ("COPPA") and state consumer protection laws—violations that the State AGs' complaint plausibly alleges are continuing through present. Much as it has done in its objections to the State AGs' 30(b)(6) notices, Meta objected to this definition and instruction and stated their responses were limited to "January 1, 2012 - April 1, 2024, generally *with other time periods for specific features"* (emphasis added). *See* Attachment 3, p.7. In doing so, Meta attempts to unilaterally choose when it is to their benefit to respond with information dating past April 1, 2024, and conversely to limit the time period when detrimental. It continues to assert that the Court's order on the "default" "Relevant Time Period" for "Meta's search, collection, and review of responsive *documents*," ECF 969 at 4 (emphasis added), somehow bars any admissions on events after that date.

This Court has already addressed the relevant time period dispute in Doc. 1990 as it related to 30(b)(6) depositions and the reasoning equally applies here. Meta's original responses to RFA Nos. 9, 10, 17, 46, 47, and 48 linked to its current Privacy Policy, dated November 14, 2024, on its website. *See* Attachments 3, 4. When the State AGs pointed out the lack of burden in responding through the present, Meta amended its responses to refer to a copy of the Privacy Policy that had been produced in discovery. *See* Attachments 5, 6. It is unclear what, if any, burden exists given that responses post-dating April 1, 2024, were already, and so easily, provided. RFA Nos. 18 through 21, which ask Meta to admit it does not take certain actions to comply with COPPA, are resolved because these RFAs are analogous to Deposition Topic 3, already addressed by this Court; specifically, "Meta's official, written policies for complying with COPPA for its Instagram and Facebook platforms during the Relevant Time Period." The Court has Ordered Meta to respond to this deposition topic for the post-April 1, 2024, period [Doc. 1990, p.7] and the same reasoning applies: Meta had confirmed that aside from its ban on users under 13 in its terms of service and terms of use, there is nothing else to provide. If a qualified denial is applicable through present that should be so indicated, and the State AGs request that responses be amended accordingly.

**RFA No. 16.** Narrowing of topics is a common outcome of conferrals to move the case forward and avoid court involvement. RFA No. 16 reads: Admit that you use personal information collected from users of your Platforms to develop, train, or validate algorithms or models.

Meta's initial response denied the RFA in its entirety with the following offer: "Meta is available to meet and confer with Plaintiffs to discuss a potential narrowing of the Request." *See* Attachment 3, p.12. With a clear understanding of the basis for Meta's objections and what the State AGs seek to achieve through the RFA the State AGs have made several proposals that achieve both parties' objectives. However, during at least two conferrals on the issue, Meta rested on its original objections and denial and declined to engage in any meaningful attempt to narrow the

1

Request. The most recent proposal which the State AGs would accept as an alternative to original RFA No.16, is as follows:

- Admit that You use personal information collected from users of your Platforms to train models used to inform the pieces of content displayed to users of Your Platforms.

- Admit that You use personal information collected from users of your Platforms to train models used to inform the advertisements displayed to users of Your Platforms.

Any argument the above narrowed request remains too broad or burdensome to admit or deny fails. There are three possible responses to a request for admission pursuant to Rule 36: admit, deny, or state that the responding party lacks sufficient information to admit or deny. *Morgan v. Rohr, Inc.,* 320CV00574GPCAHG, 2023 WL 2620146, at *2 (S.D. Cal. Mar. 23, 2023). Rule 36 further provides in part: "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Here, Meta has denied the Request but did not respond to the substance of the matter when it is obligated to do so.

**RFA No. 46.** Lastly, the State AGs request this Court order Meta to amend its response to RFA No. 46 with respect to users who are under 13. Meta attempts to redefine the term "User" to exclude users under 13, because it asserts that users under 13 years of age are not permitted users of Facebook and Instagram. *See* Attachment 5, p.13. But Meta cannot redefine the request to avoid admitting that it collects the same data from all users and uses such data for advertising purposes. Meta should be ordered to respond to the Request as posed and that data from users who are under the age of 13 cannot be excluded from an admission.

**Meta's Position:** The States seek improperly, and belatedly, to require supplemental answers to RFAs covering periods beyond the court-ordered relevant time period (RTP). The States also seek to compel a response to RFA 16, a multi-part request that is not appropriate subject matter for an RFA. And the States seek to compel Meta to delete an objection preceding a substantive response to RFA 46, which seeks an admission that Meta "targets" ads to U13s when that is simply not true.

*The States' Application for Extended Discovery Period.* The Parties litigated the RTP issue over a year ago, and the Court ordered that the "default end date" applicable to "Plaintiffs' discovery requests directed at Meta" would be April 1, 2024. *See* ECF 969 (DMO No. 7). The Court did not exempt RFAs from the "default end date." *See also* ECF 1990 (limiting post-4/1/24 30(b)(6) testimony to only produced documents). Not only does the States' position flout the clear terms of the Court's orders, but also the States move to expand the RTP for these RFAs too late.

The relevant sets of RFAs each include an instruction (as the States regularly include) that "the relevant time period … is 2012 to the present." Meta served responses that include objections (as Meta regularly includes) that "Meta will construe the relevant time period as the period(s) ordered by Judge Kang in DMO No. 7 (i.e., January 1, 2012 – April 1, 2024 generally with other time periods for specific features)." On March 27 and April 7, the States sent Meta lists describing purported deficient responses to 24 RFAs, which the Parties met and conferred about on March 28, April 9, and April 15. No issue was raised up to this point with respect to the RTP.

Meanwhile, the States' time to brief discovery disputes was set to expire on April 11. *See* L.R. 37-3. The States therefore requested on April 9, and Meta agreed, to extend the States' deadline for RFA issues then being discussed that might turn into disputes. Because the RTP issue had not previously been raised, the briefing deadline for any dispute regarding it therefore was not extended. It was not until April 18 that the States raised a time-period issue for six RFAs for the first time. A month later, the States raised a time-period issue for five additional RFAs.

The States' effort to expand the RFA time period also would create disproportionate burdens and practical problems. Under Rule 36, a party must make a reasonable inquiry and respond based on information it knows or can readily obtain. Here, a discovery record has been amassed consisting of millions of documents from the Court-ordered RTP. But to answer RFAs beyond the RTP, Meta would potentially need to search for and gather large quantities of additional documents; and even if individuals with knowledge could be located, they would potentially need to confirm their knowledge with documents. This could allow the States to evade the Court-ordered RTP.

*RFA 16*. "Requests for admission must be 'simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.' ... Requests for admission must be limited to singular relevant facts ... [and] 'may not contain compound, conjunctive, or disjunctive … statements.[']" *E & J Gallo Winery v. Encana Energy Servs., Inc.*, 2004 WL 7342780, at *2 (E.D. Cal. Sept. 16, 2004); *see also City of Colton v. Am. Promotional Events, Inc.*, 2012 WL 13013378, at *1 (C.D. Cal. Jan. 27, 2012) (RFA "should be 'phrased simply and directly so that it can be admitted or denied without explanation'"); *Runway TV, LLC v. DeGray*, 2020 WL 6712253, at *2 (C.D. Cal. Sept. 15, 2020) (similar).

In gross violation of these principles, RFA 16 asks Meta to "Admit that you use personal information collected from users of your Platforms to develop, train, or validate algorithms or models." The States define "personal information" by reference to 16 CFR § 312.2 to mean individually identifiable information inclusive of at least 10 specifically listed items. The RFA therefore asks whether each of at least 10 pieces of information is used to develop or train or validate (3 verbs) any of a large number of unnamed algorithms or models, resulting in a huge number of combinations that would each need to be investigated. The States' proposed narrowed RFA still asks about 10 types of personal information, across two categories of models (identified only vaguely by function, which itself would require investigation). Moreover, the models undoubtedly changed over the course of the RTP, requiring still further investigation. Neither the original nor the narrowed RFA can be easily and coherently admitted or denied, and (considering subparts) breaches the RFA limits set by the Court. *See* ECF 702 at PDF p. 43 ¶ 2.

*RFA 46*. RFA 46 asks "Admit that Meta uses the personal information it gathers about Users, *regardless of age*, to better *target* its advertising services" (emphases added), with the States defining Users to mean individuals with or without an account. The States complain that Meta's response includes an objection to the defined term "Users," and a statement that Meta "interprets 'Users' as referring only to individuals with an account … *and to individuals at least 13 years of age, as individuals under 13 years of age are not permitted users of Facebook and Instagram*" (emphasis added). The States seek to have the italicized portion of Meta's objection stricken. But Meta has made this same objection repeatedly across its discovery responses because Meta defines Users as individuals with authorized accounts, and U13s are not authorized under Meta's policies to have accounts. The States point out that Meta did not include this objection in response to a

3

different RFA, RFA 10. But RFA 10 does not include "Users" as an uppercase (incorrectly) defined term. More importantly, RFA 46 speaks of "Users, regardless of age" and "target[ing]" ads to them. The "target[ing]" language connotes intentionality. Meta strongly denies that ads are "target[ed]" to U13s (who are not authorized Users), and therefore denies that ads are "target[ed]" to Users "regardless of age." Meta's objection is necessary to accurately qualify its response.

**State AG Reply:**

**Relevant Time Period:** Meta continues to rely on the same categorically overbroad reading of DMO 7 (ECF 969) that the Court rejected in ECF 1990. As evidenced in its objection to the time period for these Requests, Meta wants to pick and choose when going beyond the April 2024 date is in its favor. For example, Meta relied on recent events to deny three RFAs, specifically, RFA Nos. 41, 42, and 43 by referring to Teen Accounts which were implemented after April 1, 2024. Attachment 4. Yet when the post-April 2024 does not appear to be in its favor, Meta refuses to respond through the instructed "present" date. Following the Court's analogous order on the 30(b)(6) time period, Meta rejected the State AGs' further compromise proposal to limit Meta's response to RFA 16 to the pre-April 2024 period (where burden is possible, though not undue), and otherwise respond to the present (where burden is absent). Meta need not gather any additional documents; it can simply refer to the websites it cited to in its initial responses and its admitted lack of COPPA compliance policies.

**RFA No. 16:** Meta is incorrect that the use of the term 'personal information' is overbroad and renders the request compound. Meta has managed to provide responses to other requests using the same "personal information" term, and asserting it is so compound as to render a request unanswerable is inconsistent (see responses to RFA Nos. 6, 7, 9, 10 and 11). For example, in responding to RFA Nos. 9 and 10 Meta admits it collects certain information from people who visit Facebook or Instagram webpages, regardless of whether they have logged into an account. Meta did not need to separate out the 10 different types of information to respond. It is wholly inconsistent to later argue that the same approach cannot be applied to RFA 16: subject to its standing objections, Meta should be able to admit that personal information it has already admitted it collects is then used to train models to inform (1) content and (2) advertisements displayed to users. The State AGs have narrowed the Request to one verb, one tool and one target. The AGs further offered to limit the time period to April 1, 2024, rather than present to address their concern about models potentially changing over the time period and the increased burden this would purportedly impose. Despite its professed commitment to negotiate a narrowing, Meta has refused to offer any compromise where it would response to this RFA.

**RFA No. 46:** This RFA is designed to demonstrate that Meta uses the personal information of anyone who uses the platform – regardless of their age or whether they are "authorized" to be on the platform – to better target its advertising services. Meta has already admitted that it collects personal information from its users in response to RFA 10, where it lodged a similar objection, but did not refuse to respond with respect to users under 13. And the Privacy Policy that Meta points to in its response to RFA 46 details how it uses users' personal information to personalize which ads are displayed to its users. The RFA simply seeks an admission that personal information collected is used for advertising services "regardless of age." Meta's attempt to gerrymander its response to avoid the group of users central to the State AGs' COPPA claim should be rejected.

**Meta's Reply**. *RFAs 9-10, 17, 46-48*. Ironically, the States contend that the Court's 30(b)(6) RTP ruling (ECF 1990), which largely upheld the RTP as ending on April 1, 2024 (with limited exceptions for documents actually produced), resolves these disputed RFAs in their favor. The States argue that because Meta's original responses to these RFAs (which objected to the States' instruction extending the RTP) included an active link to Meta's privacy policy, the RTP should be expanded up to the present. This logic fails. First, Meta did not "unilaterally choose" to respond with post-April 1, 2024 evidence because it purportedly was to Meta's benefit; rather, Meta provided substantive responses to the requests and included a link to its privacy policy for reference. Meta included the link merely as a matter of convenience since substantially the same policy was in place during the RTP. Second, the linked policy allows users to toggle back to previous versions of the policy in effect during the RTP. Third, Meta supplemented its responses to instead cite to produced versions of the privacy policy from the RTP. Finally, mere citation to an active link to reference a policy used during the RTP does not waive Meta's RTP objection.

*RFAs 18-21*. The States contend that the Court's 30(b)(6) RTP ruling resolves these RFAs in their favor "because these RFAs are analogous to Deposition Topic 3." They are not analogous. 30(b)(6) Topic 3 is directed at "Meta's official, written policies for complying with COPPA for its Instagram and Facebook platforms during the Relevant Time Period." The Court decided that Meta's witness should testify concerning post-April 1, 2024 official, written COPPA policies because the Court understood these policies to be the same before and after the RTP, so the testimony would likely consist simply of a confirmation that the official, written policies remain the same. By contrast, RFAs 18-21 (which Meta objected to as vague on multiple grounds) do not reference Meta's "official, written policies," and instead request admissions that implicate a host of nuanced data collection and use practices that extend far beyond the scope of "official, written policies." Unlike 30(b)(6) Topic 3, supplementing these RFAs to cover the period beyond the RTP would require further investigation, document and data gathering, and rewriting.

*RFA 16*. Fed. R. Civ. P. 36(a)(4) states that "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Neither the original nor the States' proposed compromise formulation of RFA 16 allows Meta to easily and coherently admit or deny the substance of the matter. *See E & J Gallo Winery*, 2004 WL 7342780, at *2. Even the States' compromise formulation is multi-part and complex, asking about at least 10 types of personal information, and whether Meta used this information to train various models described vaguely by function, and if so, at what points during the RTP.

*RFA 46*. The objection the States seek to strike is necessary to make clear that Meta does not permit advertisers to "target" ads to U13s (who are not authorized Users), and therefore ads are not "target[ed]" to Users "regardless of age." Meta has repeatedly made this objection across its discovery responses. The objection is particularly important here as RFA 46 explicitly references "Users, regardless of age" and "target[ing]" ads to them. The "target[ing]" language connotes intentionality, so Meta in response to RFA 46 made eminently clear that ads are not "target[ed]" to U13s nor, therefore, to Users "regardless of age." Meta did not "redefine the request to avoid" it; rather, the objection allows Meta to fully and accurately answer the RFA.

5

## **ATTESTATION**

I, Krista Batchelder, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: June 6, 2025

By: /s/ *Krista Batchelder*