UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case No.:  4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING META'S DEPOSITION OF FORMER EMPLOYEE FRANCES HAUGEN AND META'S DOCUMENT SUBPOENA TO MS. HAUGEN**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |
| This Filing Relates to:<br><br>*All Actions* | |

Dear Judge Kang:

Pursuant to the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. (collectively, "Meta") and non-party (former employee) deponent Frances Haugen respectfully submit this letter brief regarding their disputes over Ms. Haugen's requested limitations to the scope of her deposition and Meta's subpoena for documents issued to Ms. Haugen.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, counsel for Meta and counsel for Ms. Haugen attest that they met and conferred by videoconference before filing this brief.  The final conferral on May 13, 2025, was attended by lead trial counsel for Meta and counsel for Ms. Haugen.  Because lead trial counsel for Meta and counsel for Ms. Haugen are not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.  Lead trial counsel for Meta and counsel for Ms. Haugen have concluded that no agreement or negotiated resolution can be reached.

Counsel for Meta and Ms. Haugen respectfully request oral argument on the issues raised in the joint letter brief.

Dated:  June 17, 2025                              Respectfully submitted,


**DAVIS POLK & WARDWELL LLP**

*/s/ Antonio J. Perez-Marques*
James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
Antonio J. Perez-Marques (*pro hac vice*)
antonio.perez@davispolk.com
Corey M. Meyer (*pro hac vice*)
corey.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

**COVINGTON & BURLING LLP**

Ashley M. Simonsen (State Bar. No. 275203)
asimonsen@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (650) 632-4800

Phyllis A. Jones (*pro hac vice*)
pajones@cov.com
Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
*Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

2

**LEVY FIRESTONE MUSE LLP**

*/s/ Joshua A. Levy*
Joshua A. Levy (*pro hac vice* admission
pending)
Christina M. Lamoureux (*pro hac vice*
admission pending)
jal@levyfirestone.com
christinal@levyfirestone.com
900 17th Street NW, Suite 605
Washington, DC 20006
Telephone: (202) 261-6564
Facsimile: (202) 595-8253

**KAUFHOLD GASKIN LLP**

Jonathan Gaskin (State Bar No. 203625)
jgaskin@kaufholdgaskin.com
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3191
Facsimile: (415) 298-0477

*Attorneys for Respondent Frances Haugen*

**Frances Haugen's Statement**

Non-party Frances Haugen, a Meta whistleblower, respectfully moves under Fed. R. Civ. P. 45(d)(3)(A) to modify the subpoenas for documents and for deposition testimony served on her by Meta, or for a protective order under Fed. R. Civ. P. 26(c)(1). Meta's subpoenas are designed to retaliate against Ms. Haugen for blowing the whistle on Meta. Ms. Haugen has already made a satisfactory production of documents, and the remaining 20 document requests demand irrelevant documents spanning 13 years (even though Ms. Haugen only worked at Meta for two years). Ms. Haugen has also agreed to sit for a deposition, but objects to its scope because Meta indicated that the scope of the deposition will be coextensive with the document requests.

The subpoenas at issue here are part of Meta's campaign of retaliation against its whistleblowers. *See, e.g.*, Sen. Josh Hawley, A Time for Truth: Oversight of Meta's Foreign Relations and Representations to the United States Congress Before the Subcomm. on Crime & Terrorism,  (Apr. 9, 2025) ("Stop trying to silence her [Sarah Wynn Williams], stop trying to gag her, stop trying to hide behind your lawyers, and millions of dollars of legal fees you are trying to impose on her. Stop threatening other whistleblowers"), *available at* https://www.judiciary.senate.gov/committee-activity/hearings/a-time-for-truth-oversight-of-metas-foreign-relations-and-representations-to-the-united-states-congress.

"Under Rule 45(d)(3)(A)(iv), a district court must quash or modify a subpoena that 'requires disclosure of privileged or other protected matter' or 'subjects a person to undue burden.'" *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 2582097, at *1 (N.D. Cal. June 9, 2014). Where a party has raised a legitimate claim of First Amendment privilege, "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under [Fed. R. Civ. P.] 26(b)(1)." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1141 (9th Cir. 2010).

It is also the law of this case that demands on former Meta employees for their communications with third parties, including other Meta employees (past and present), are protected by the First Amendment under *Perry*, 591 F.3d at 1161, and should not be produced if they are not "highly relevant." Tr. Hrg., *In re: Social Media Adolescent Addition/Personal Injury Products Liability Litig.*, No. 22-MD-03047 YGR (PHK) (N.D. Cal. Mar. 20, 2025) at 112-13. This Court recently affirmed that, pursuant to their First Amendment privileges as well as Sarbanes-Oxley protections for former employees who have testified before Congress, former Meta employees should not be compelled to produce such communications. *See* [ECF No. 1963].

The documents subpoena demands documents protected by Ms. Haugen's First Amendment privileges. Nearly every one of Meta's requests implicates her First Amendment privileges against compelled disclosure of information that would chill and infringe upon her free exercise of speech, association, and her right to petition the government. The First Amendment protects against compelled disclosure of "internal communications and communication among various groups" where such disclosure would have the "potential 'for chilling the free exercise of political speech and association guarded by the First Amendment,'" as it would here. *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454–55 (D.D.C. 2002) (quotation omitted). Here, the documents subpoena demands *all* of a whistleblower's confidential communications about her whistleblowing activity with: former Meta employees (Requests 1, 2, 16); the press (Requests 1, 3,  8-9, 12-13, 16); Congress (Requests 1, 6-7, 16); Congress and government regulators (Requests 1, 3, 7, 10, 16); law enforcement (Requests 1, 10, 16); non-profits and advocacy groups (Requests 1, 14, 16, 17,

19); and "lobbying firms" (Requests 1, 11, 16), among others (Requests 15, 16). Meta also seeks all drafts and work product related to her independent research about Meta, her book about Meta, her press statements about Meta, and her remarks about Meta. These requests are designed to chill and intimidate Ms. Haugen from engaging in these communications and activities. If she is compelled to disclose any of them, she will refrain from engaging in them. Other Meta whistleblowers will also be chilled.

The documents subpoena demands privileged communications. Request 21 impermissibly seeks Ms. Haugen's communications with her lawyers at Whistleblower Aid. Request 20 seeks her communications with lawyers for parties in this case and other litigation adverse to Meta. Those communications are all protected by the attorney-client privilege and the work product doctrine.

The documents subpoena is overbroad and demands documents outside the scope of permissible discovery. Meta has Ms. Haugen's Meta documents (*see* Requests 1-2, 4-5). Ms. Haugen has produced documents in response to Requests 5, 22 and 23. Nothing else Meta seeks from her is relevant. Understanding, for example, the circumstances of how Ms. Haugen acquired company documents that she disclosed as a Sarbanes-Oxley whistleblower (Request 4) has no bearing on whether the company is liable here. Nor would Ms. Haugen's communications with nonprofits, government agencies, and lawyers years after she blew the whistle (*e.g.*, Requests 2-3 & 6-21) help a jury determine whether Meta is liable in this lawsuit. The same is true for requests concerning the development of Ms. Haugen's own book (Request 18), her work at her nonprofit (Request 19), research she has independently conducted (Request 16), and expenses for her speaking engagements (Request 15). Instead, such requests are geared towards harassing and retaliating against a non-party whistleblower, who is not at all "central" to the case, contrary to Meta's claims in meet and confers: Ms. Haugen is mentioned in less than ten of the 1,093 paragraphs in the Complaint. Ms. Haugen is an individual of modest means. Collecting and reviewing the amount of data requested will require Ms. Haugen to spend considerable time and funds, straining her finances, and will interfere with her non-profit work researching the impact of social media on the common good. *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 61 (D.D.C. 2023) (holding that the substantial costs that compliance with the subpoena would impose on the nonparty "further tips the scales in favor of establishing that the Subpoena" imposed an undue burden).

The same objections apply to the deposition subpoena. Ms. Haugen requests an order limiting the scope of her deposition to the only topic that is highly relevant and thus possibly overcomes her First Amendment privilege claims: her knowledge of Meta's conduct regarding the allegations in this Complaint and her communications at Meta regarding this alleged conduct. To be clear, as Ms. Haugen's counsel has reiterated in numerous meet and confers, Ms. Haugen does not object to proper questions on these topics. Topics outside of that scope (*e.g.*, her First Amendment-protected communications with others, research, and drafts) are not relevant to this action, are not proportional to the needs of the case, violate First Amendment and common law privileges and her rights under the Sarbanes-Oxley Act, and would impose an undue burden on Ms. Haugen.

Compelling Ms. Haugen's testimony without a protective order would cause specific harm and prejudice to her by requiring her to testify about 13 years of information, most of which concerns irrelevant privileged communications and documents, and thus cannot outweigh the burden imposed on her. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). Under Fed. R. Civ. P. 45(d)(3)(A)(iii), a court must quash or modify a subpoena that

requires disclosure of privileged or other protected matter. The deposition's scope, like the document requests, is designed to chill, intimidate, and harass Ms. Haugen, as described above. "A motion for a protective order, rather than objections during a deposition, is [] the appropriate mechanism for [] a challenge" to the scope of a deposition, *James Lee Construction, Inc. v. Gov't Emps. Ins. Co.*, 339 F.R.D. 562, 568-69 (D. Mont. 2021). Ms. Haugen should not be required to sit for an unbounded deposition during which Meta's counsel will continuously seek to elicit privileged information.

## Meta's Opening Statement

Ms. Haugen is a uniquely prominent witness in this litigation.  Prior to her departure from Meta in 2021, she worked with a *Wall Street Journal* reporter to take Meta documents, including over 100 internal documents on teen issues, which form the backbone of Plaintiffs' complaints.  After making the documents public, Ms. Haugen revealed her identity on *60 Minutes* and provided over 11 hours of testimony to Congress.  Ms. Haugen has since launched a career based on her disclosure of Meta's documents, including by writing a book that includes in its title "Why I Blew the Whistle on Facebook," widely disseminating the documents, and making numerous public appearances, often focusing on the alleged impact of social media on teens.  Ms. Haugen also founded an organization that advocates for litigation against social media, and entered into consulting agreements with the State AGs with respect to this case.  Only Meta's CEO is mentioned more frequently in the PI Plaintiffs' Master Complaint.  Plaintiffs have relied extensively on the documents Ms. Haugen took and identified her as a fact witness on whom they may rely.

Yet now, Ms. Haugen—despite her extensive cooperation with plaintiffs—objects to discovery, arguing on First Amendment ("1A") grounds that her deposition should be drastically limited, and objecting to producing teen mental health ("TMH")-related documents responsive to nearly all of Meta's requests.

Her objections rely on the false premise that any of her documents relating to a matter of public interest are (i) protected 1A activity and (ii) categorically exempt from discovery.  That position is contrary to the law, has never been adopted by any court, and conflicts with this Court's recent ruling on communications of former Meta employees, which recognized testimony as an appropriate "less intrusive" means of discovery.  Ms. Haugen's objections fail, and the Court should order her to testify and to produce the disputed documents.

<u>There Is No Basis to Limit the Scope of Ms. Haugen's Deposition.</u>  Ms. Haugen's request to limit her deposition should be denied in full.  She has demanded limiting her deposition to exclude 12 possible topics, all of which relate to her role in this case and her communications on TMH issues. Ms. Haugen seeks to prevent questioning on her (i) gathering TMH-related documents, (ii) communications regarding TMH issues with Congress, the press, PR professionals, government officials, non-profit organizations, plaintiffs' lawyers, and former Meta employees, (iii) book, and (iv) payments for speaking about Meta.  There is no legal basis to limit her deposition in this manner.

First, the Court should reject her broad request as premature.  At heart, Ms. Haugen's request seeks to upend routine fact deposition procedures under which "evidence objected to shall be taken subject to objections." *Detoy v. City & Cnty. of S.F.*, 196 F.R.D. 362, 365-66 (N.D. Cal. 2000). Should courts countenance requests for sweeping protective orders before fact depositions, they

3

will be inundated with scope disputes regarding fact depositions. The F.R.C.P.'s already provide a well-conceived and narrow means for limiting deposition testimony, which does not apply here. *See* Fed. R. Civ. P. 30(d)(3)(A) (providing circumstances under which a deposition can be limited).

Second, the Court should reject her request as unsupported by the law. Ms. Haugen has not identified to Meta any legal privilege or doctrine that supports limiting her fact deposition. Ms. Haugen has variously invoked rights to free speech and to petition the government, but identified no case in which a Court has limited deposition testimony in the manner she seeks. Meta's deposition questions will not impact those rights because her deposition testimony does not limit or interfere with speech in other contexts. To credit the purported impact Ms. Haugen claims would allow any person who has commented publicly on a matter to claim interference with 1A rights should that person be deposed on that matter. That is not the law. This Court previously recognized deposition testimony as an appropriately "less intrusive" means of exploring even communications that the Court determined *do* implicate 1A rights. ECF. No. 1963 at 10. The topics Ms. Haugen seeks to exclude are, moreover, highly relevant, as described below. Similarly, no whistleblower statute permits refusing to answer questions at a deposition, no case has limited a deposition on such grounds, and Meta's questioning will not interfere with any rights under such statutes because there is no right to limit testimony about the subject of claimed whistleblower disclosures. Providing deposition testimony is a routine part of whistleblower activity. *See, e.g.*, *Al Otro Lado, Inc. v. Wolf*, 2020 WL 4551687, at *3-4 (S.D. Cal. Aug. 6, 2020).

Rule 26 permits the issuance of "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Ms. Haugen cannot meet her burden to show "specific prejudice or harm will result if no protective order is granted." *Rabin v. Google LLC*, 702 F. Supp. 3d 880, 881 (N.D. Cal. 2023) (citation omitted). Ms. Haugen has opined frequently on TMH topics and submitted to questioning by hundreds of legislators, media entities, and others. Denying defendants a full deposition would be all the more inappropriate, and grossly unfair, given that Plaintiffs enjoy full access to her information, including through a consulting agreement she executed with the State AGs. Affording Meta a reasonable opportunity for discovery is neither annoying, embarrassing, oppressive, nor burdensome. Meta has already agreed to limit its deposition questioning to six hours on the record.

Third, her request should be rejected because the topics she seeks to preclude are highly relevant. For example, Ms. Haugen's efforts to take documents from Meta are relevant to assessing the basis for her claimed knowledge about TMH issues. Her communications on TMH issues are likewise relevant to the extent and basis of her purported knowledge regarding TMH issues. Ms. Haugen's book is relevant because, in it, she discusses, among other things, her experience working at Meta, her scope of responsibility, and her views on how Meta operated, all of which are highly relevant to the basis for her claims about social media and TMH that inform the complaints in these actions.

<u>Ms. Haugen Should Produce the Disputed Documents.</u> Ms. Haugen has categorically refused to produce any documents in response to 17 of Meta's document requests. Each of those requests is highly relevant to the claims and Meta's defenses in this MDL because responsive documents will evidence Ms. Haugen's views on TMH issues, reveal information she has relied on in making claims about social media, demonstrate her bias, and provide context for Ms. Haugen's statements on which plaintiffs rely in bringing their claims.

Ms. Haugen has refused to substantiate her burden objection even after Meta narrowed or dropped multiple requests. She neither identified the volume of responsive documents nor demonstrated

that Parties possess all the responsive documents. Even if she had, "there is no general rule that [a party] cannot seek nonparty discovery of documents likely to be in [another party's] possession." *Viacom Int'l, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008).

Ms. Haugen's 1A objection is unfounded. The 1A only protects communications between members of an expressive association which, in substance, involve the members of the association "expressing the views that brought them together." *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 579 (9th Cir. 2023) (quotation omitted). Ms. Haugen cannot shield the communications requested on 1A grounds, as they are between Ms. Haugen and other third parties, not members of an association expressing shared views. Even so, when asserting 1A associational privilege in a discovery dispute, a party must offer evidence to support a prima facie showing of "First Amendment infringement." *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2010) (quotation omitted). In other words, Ms. Haugen must submit evidence to demonstrate discovery "will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* (cleaned up). She has offered none. Regardless of the Court's prior ruling on 1A privilege (ECF No. 1963), Ms. Haugen must meet her prima facie burden as to each request. Instead, Ms. Haugen asserts a nearly limitless protection without establishing any chilling effect.

Ms. Haugen's whistleblower objection is similarly unsupported. Ms. Haugen has not identified any case in which whistleblower statutes shielded a fact witness from discovery. That is because they do not. The Sarbanes-Oxley Act ("SOX") applies only to discrimination "in the terms and conditions of employment," i.e., not to civil discovery. 18 U.S.C. § 1514A(a); *see also EMC Corp. v. Sha*, 2014 WL 12955756, at *2 (N.D. Cal. Jan. 14, 2014) (no "statutory direction" reflects that SOX limits discovery). In any event, producing a claimed whistleblower's documents does not interfere with whistleblowing, and discovery into whistleblowers is routine in whistleblower lawsuits. *See, e.g.*, *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 880 (N.D. Cal. 2019).

Even if Ms. Haugen had met her prima facie burden (she does not), Ms. Haugen is a witness of unique prominence whose statements on TMH issues are of paramount importance to Meta's defenses. Ms. Haugen's dissemination of and testimony about teen-related Meta documents were a catalyst of this case, as evidenced by the fact that she is the second-most-mentioned person in the PI Plaintiffs' Complaint. Her knowledge and communications must be subject to full discovery.

## Ms. Haugen's Response

Although Meta has championed the First Amendment when it comes to protecting *itself* from lawsuits, *see, e.g.*, *Blumenthal to Meta CEO*, Sen. Richard Blumenthal (Jan. 31, 2024) ("Zuckerberg's lawyers argue that the First Amendment provides him with constitutional protections against any liability for his statements to Congress about kids online safety, even if his statements are false") (citing [ECF No. 518]), Menlo Park sings a different tune when it comes to Meta's whistleblowers. Meta's brief proves Ms. Haugen's point: they are retaliating against her. Their brief smears her and distorts her positions, mischaracterizing Ms. Haugen as someone who has blown the whistle for fame and fortune ("launched a career"), when the opposite is true – after having a crisis of conscience about her once-lucrative work at Meta, she lives a modest life working at a non-profit. Nor is she obstructing discovery when she has already produced documents and agreed to be deposed. Ms. Haugen objects to Meta's pursuit of years of irrelevant

and marginally relevant communications (e.g., *how* she blew the whistle and discussions with others about matters of public interest), the disclosure of which would chill and intimidate her and others from engaging in First Amendment-protected activity.[1] They have done so while inflating Ms. Haugen's status in this litigation as "central," when in fact, Plaintiffs have offered to remove Ms. Haugen as a witness to help prevent Meta's retaliation against her; however, Meta refused.

Documents Subpoena: Ms. Haugen's counsel has repeatedly informed Meta that its demand of 13 years of documents covering over 20 document requests is overbroad; it is broader than any subpoena Meta has served on other former employees. *See, e.g.*, [ECF No. 2006-5] (Bejar document subpoena included 15 requests seeking documents dating from 2012); [ECF No. 2006-6] [Jayakumar subpoena included four requests, same timeframe]. A reasonable set of search terms in Ms. Haugen's emails yielded over 14,000 hits that would require significant time and resources for her counsel to review, as well as time and resources notifying counsel for the dozens of third parties listed in the subpoena about potential productions. *See* Ex. A, Haugen Decl.; Ex. B, Levy Decl. Ms. Haugen's counsel has repeatedly asked Meta to identify documents and communications it seeks that are "highly relevant." Yet even after this Court ruled against Meta regarding their document subpoenas served on other former employees, *see* [ECF No. 1963], Meta has refused to narrow any requests, and has only withdrawn one: for privileged communications with her counsel.

Meta's minimization of Ms. Haugen's First Amendment privileges is misplaced. Meta has tried to narrow the application of this Court's ruling to Ms. Haugen, shrinking its First Amendment protections only to those confidential communications with others who were "expressing views that brought them together." Ms. Haugen need not meet Meta's narrow standard, *see Pebble Ltd. P'ship v. EPA*, 310 F.R.D. 575, 583 (D. Alaska 2015) (quashing subpoenas served on non-parties who had no formal association, but were communicating with many others about their opposition to a mining project in Alaska), but she does: What Meta seeks are Ms. Haugen's confidential communications with others expressing views that brought them together: former Meta employees, congressional offices, reporters, authors, nonprofits, lawyers, and others communicating critically about Meta and the harm their algorithms have caused people and society.

Deposition Subpoena: Ms. Haugen has never opposed Meta's request to receive documents from Ms. Haugen before deposing her. But Meta has repeatedly refused to resolve disputes over the document requests; has set artificially brief timeframes for Ms. Haugen to search for and produce documents when Ms. Haugen has requested at least 30 days from the resolution of any dispute to do so; and has only withdrawn one improper request. Meta temporarily offered not to pursue certain requests, but indicated it would "reassert" those requests after their appeal of this Court's ruling that Meta's unlawful document requests to other former employees violated their rights under the First Amendment and the Sarbanes Oxley Act. *See* [ECF No. 1963]. Ms. Haugen has sought to resolve these document request disputes, which would inform the scope of her deposition. Her request for a protective order would serve the same function and results from Meta's refusal to compromise.

If past is prologue, Meta will harangue Ms. Haugen at her deposition with questions designed to require her to divulge otherwise confidential communications and facts protected by her First Amendment privileges. Indeed, in meet and confers, Meta's lawyers conflated the difference

---

[1] While Ms. Haugen understands that the Court's discovery order (*see, e.g.*, [ECF No. 426]) prevents a declaration attesting to this chilling impact as part of this process, Ms. Haugen would be happy to provide one in the future.

between asking about Ms. Haugen's understanding of what occurred at Meta (permissible) and forcing her to divulge and discuss her confidential discussions with others about what occurred at Meta (impermissible). Without a protective order, Ms. Haugen is likely to face further litigation over her counsel's objections and instructions not to respond during the deposition, creating additional hassle and expense for Ms. Haugen. *See, e.g.*, *Detoy v. City & Cnty. of S.F.*, 196 F.R.D. 362, 366 (N.D. Cal. 2000) (upholding instructions not to answer questions "where serious harm would be caused," such as an answer "revealing privileged material or other confidential material") (cited by Meta). That is the very thing from which Rule 26 allows courts to protect a non-party and which Meta falsely claims is unnecessary. *See* Fed. R. Civ. P. 26(c)(1). There is, of course, legal authority for seeking a protective order regarding the scope of a deposition, as Ms. Haugen cited. *See James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, 339 F.R.D. 562, 568-69 (D. Mont. 2021).

The topics that Meta lists as being "highly relevant" are not. <u>First</u>, "Ms. Haugen's efforts to take documents from Meta" have no relevance, tell a jury *nothing* about Meta's alleged conduct in this lawsuit, and shed no light on "her claimed knowledge about TMH issues." <u>Second</u>, Ms. Haugen's confidential "communications on TMH issues" are not highly relevant—certainly when compared to what she learned about "TMH issues" while working at Meta. Although Meta complains that "Ms. Haugen has opined frequently on TMH topics," testifying before Congress about the safety of Meta's platform is not the same as being harassed by Meta for blowing the whistle on them. <u>Third</u>, Ms. Haugen has no objections to proper questions about her public statements or the basis for her understanding something she wrote or said, but does object to probing her confidential communications and drafts. Meta's cited authority for the proposition that "[p]roviding deposition testimony is a routine part of whistleblower activity" concerned sealing and redacting a transcript where testimony about "port operations" (not First Amendment-protected activities) would reveal the whistleblower's identity. Ms. Haugen's identity is public, and it is unclear what relevance this case has other than the bare fact that a whistleblower testified in one case. *Al Otro Lado, Inc. v. Wolf*, No. 17-cv-02366-BAS-KSC, 2020 WL 4551687, at *3-4 (S.D. Cal. Aug. 6, 2020). Meta's rationale for why these topics are "highly relevant" amounts to challenging her credibility. Seeking to discredit Ms. Haugen does not meet the high standard of being highly relevant to the litigation. *See, e.g.*, *Nat'l Res. Def. Council, Inc. v. Illinois Power Res., LLC*, No. 13–cv–1181, 2015 WL 4910204, at *6 (C.D. Ill. Aug. 17, 2015) ("Because [the witness'] credibility is not at issue, the Court finds that this discovery is not highly relevant to an essential element of the case."). Further, it is wildly speculative, and inaccurate, to claim that Plaintiffs, who have not requested anywhere near the amount of information Meta demands here, "enjoy full access to her information." Plaintiffs have also offered a clear and limited scope of Ms. Haugen's deposition—something Meta has consistently refused to do.

### <u>Meta's Reply Statement</u>

Meta's document requests and intended deposition questions are entirely commensurate with Ms. Haugen's heightened role in this litigation. In addition to what's noted above, Plaintiffs' counsel feature Ms. Haugen's <u>name</u> and <u>story</u> on their websites to solicit plaintiffs. Plaintiffs have cited Ms. Haugen's congressional testimony as *the* purported disclosure that triggered the applicable statute of limitations. To now claim that her documents are irrelevant strains credulity. Her bases for objecting to Meta's requests and limiting her deposition should not be credited.

<u>Ms. Haugen's Allegation of Retaliation Is Unfounded.</u> Ms. Haugen first advances the baseless accusation that seeking documents related to her deposition constitutes retaliation. This is

frivolous.  Plaintiffs, not Meta, brought Ms. Haugen into this litigation—by relying on her and her documents in their complaints; by noticing her deposition and disclosing her as a witness on whom they may rely; and, as to the State AGs, by entering into a consulting agreement with her.  There is nothing improper, much less retaliatory, in seeking documents from a witness who has been relied on, subpoenaed, disclosed as a trial witness, and retained by the opposing party.

Ms. Haugen Fails to Meet Her Burden to Assert the 1A Privilege.  Ms. Haugen's claim that producing documents in this case will chill 1A activity cannot be credited under binding Ninth Circuit precedent.  The Ninth Circuit has long recognized that "arguing, rather than factually documenting, an alleged chill of associational freedom does not" suffice to invoke the 1A privilege.  *Dole v. Loc. Union 375*, 921 F.2d 969, 974 (9th Cir. 1990).  "[T]he party asserting [this] privilege must demonstrate"—by "offer[ing] evidence"—"that enforcement of the discovery requests will result in . . . 'chilling' of[] members' associational rights."  *Perry I*, 591 F.3d at 1140.  Ms. Haugen has not done so.  Her conclusory argument that she and others will be chilled cannot be countenanced without supporting evidence.  Ms. Haugen's specific argument—that if she must disclose "any" TMH-related communications, she will abandon such communications—is, in any event, not credible from a witness who, for years, has devoted such extensive energy to these issues and proclaimed the "strength" it has taken to do so.

Setting aside that Ms. Haugen has not offered evidence (as she must), her argument fails because the right she purports to invoke is not part of the narrow class of associational rights protected by the 1A privilege.  The 1A privilege applies only to members of a demonstrated "group" that has "an official policy or an official stance" that aims to "advance shared beliefs" and spread them to others, and thus qualifies as an "expressive association."  *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 579-80 (9th Cir. 2023) (quotation omitted).  Ms. Haugen has identified none.

Ms. Haugen's invocation of the law of the case is misplaced.  The 1A privilege must be proven as to each communication for which protection is claimed, so the Court's analysis of other communications is of no moment.  In *Perry I*, the Ninth Circuit "emphasize[d] that [the privilege] is limited to *private*, *internal* . . . communications . . . among the core group of *persons* engaged" in the association's activities "concerning *the formulation of* [the association's] *strategy and messages*."  591 F.3d at 1144 n.12.  All "other communications"—such as with non-members, or communications merely "soliciting active support" for the association's ideas—were "not deemed protected."  *Id.* at 1132, 1144 n.12.  Here, Ms. Haugen has not demonstrated that the privilege applies to any of her communications, and, even if she had, the documents sought are highly relevant as explained above.  Ms. Haugen has provided no evidence that there are other putative whistleblowers—nor contended that all of her communications involve putative whistleblowers.

Requests 20 and 21 are irrelevant because they have been dropped.

The Document Requests Are Relevant.  Ms. Haugen's contentions regarding relevance are unavailing.  Nearly all of the requests on their face can only apply to events that transpired since 2021, not the last 13 years.  Meta needs to know what Ms. Haugen said privately on these topics to test what she has said publicly and what she may express in testimony.  For instance, the reporter she worked with to take Meta's documents revealed in his book that he discussed "questions about Instagram's effects on teenage mental health" with Haugen, without further detail on their discussions.  Ms. Haugen writes in her book that congressional staffers' areas of interest differed from her own, because the staffers "were most interested in the mental health of teenage girls."  Her work on her book, at her nonprofit, on TMH research, and speaking about TMH issues are

relevant to bias, the basis of her knowledge on TMH issues, and her role in this case.  Indeed, her book's jacket features a whole paragraph on TMH issues, her nonprofit includes a page on suing social media companies, her research will likely undergird testimony solicited by plaintiffs, and her renumeration for speaking about social media is highly relevant to motive.  For instance, even while objecting to producing documents to Meta, Ms. Haugen served as the keynote speaker at "Mass Torts Puerto Rico," supported and sponsored by numerous Plaintiffs' law firms.

Ms. Haugen's burden objection should not be countenanced.  Meta has offered to narrow its requests, solicited information from her counsel regarding the volume of responsive documents, and even proposed putting off document production until after her deposition—all to no avail.  She refused to proceed with her deposition without limiting 12 enumerated topics, declined to produce any further documents whatsoever before adjudicating this dispute, and yet has made no showing that the narrowed requests present actual burden.

<u>Ms. Haugen Fails to Establish a Basis for Limiting Her Deposition.</u>  Ms. Haugen's proposed  scope limitation is unworkable and would interfere with Meta's right to mount a defense.  *Cf. Weldon v. Dyer*, 2015 WL 1012371, at *4-5 (E.D. Cal. Mar. 6, 2015) ("Defendants' right to conduct discovery stems from their right of due process to mount a defense against Plaintiff's claims.").  It would prevent Meta from exploring her deposition prep, her extensive cooperation with plaintiffs, her bias in speaking about Meta, how she came to focus on TMH issues, her writings and statements about Meta and TMH issues, and numerous other highly relevant topics.

Ms. Haugen has cited no case permitting such extensive limitations to a fact deposition.  The single case she cites is inapposite because it concerns a 30(b)(6) deposition, which is limited to noticed topics.  *See James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, 339 F.R.D. 562, 568-69 (D. Mont. 2021).  There is no basis for treating this fact deposition like a 30(b)(6) deposition—doing so would only set a precedent inviting disputes over topics for all fact depositions.

Ms. Haugen's 1A privilege objection fails for the reasons set forth above, and for the additional reason she has not identified any case limiting a deposition on broad topics based on the 1A privilege.  Her basis for relief is untenable because, if credited, witnesses would seek to avoid testimony by claiming that speaking about past communications will chill future communications.

As to burden, she cites no case in which a court has held that topics of a fact deposition can be burdensome.  Deposition witnesses are routinely questioned about decades of information they do not consider relevant, but that does not make a deposition unduly burdensome.  It strains credulity for Ms. Haugen to write an entire book about publicly revealing Facebook's internal documents, offer herself as a public speaker about social media, fly around the world to speak to foreign governments about social media, but then claim that offering six hours of testimony is a bridge too far.

## <u>ATTESTATION</u>

I, Antonio J. Perez-Marques, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: June 17, 2025

By: */s/ Antonio J. Perez-Marques*