Joseph G. Petrosinelli, *pro hac vice*
Ashley W. Hardin, *pro hac vice*
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Telephone: +1 (202) 434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorneys for Defendants YouTube, LLC,*
*Google LLC, and Alphabet Inc.*

*Additional parties and counsel listed on*
*signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To: | Judge:  Hon. Yvonne Gonzalez Rogers |
| *The School Board of Hillsborough County, Florida v. Meta Platforms, Inc., et al.*, No. 24-cv-01573 | **DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS FROM RELYING ON LATE-DISCLOSED SCHOOL DISTRICT WITNESSES** |
| *Board of Education of Jordan School District v. Meta Platforms, Inc., et al.*, No. 24-cv-01377 | Date:  June 13, 2025 |
| *Tucson Unified School District v. Meta Platforms, Inc., et al.*, No. 24-cv-01382 | Time:  9:00 AM Courtroom:  1 |

1

**NOTICE OF MOTION AND MOTION**

2       PLEASE TAKE NOTICE that, at the previously scheduled June 13, 2025 conference before

3   the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District

4   Court, Northern District of California, located at 1301 Clay Street in Oakland, California,

5   Defendants Meta Platforms, Inc. f/k/a Facebook, Inc., Facebook Holdings, LLC, Facebook

6   Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC,

7   Siculus, Inc., and Mark Elliot Zuckerberg; TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok

8   Ltd., and TikTok LLC; Snap Inc.; and YouTube, LLC, Google LLC, and Alphabet Inc. (each a

9   "Defendant," and collectively the "Defendants"), will and hereby do move this Court, under Federal

10  Rule of Civil Procedure 26 and 37, for an order granting Defendants' Motion to Preclude Plaintiffs

11  from Relying on Late-Disclosed Witnesses.

12      Defendants notice this motion for hearing before Judge Gonzalez Rogers, rather than before

13  Magistrate Judge Kang, because Defendants (i) principally seek to preclude Plaintiffs from relying

14  on late-disclosed witnesses for any purpose, including at summary judgment and trial; and (ii)

15  alternatively seek relief that would affect the bellwether selection process and/or case schedule.

16      This Motion is based on the Memorandum of Points and Authorities submitted herewith,

17  any Reply Memorandum or other papers submitted in connection with the Motion, all other

18  pleadings and papers on file in this action, any matter of which this Court may properly take judicial

19  notice, and any information presented at argument.

20  Dated:  May 9, 2025                    By:  */s/ Ashley W. Hardin*
                                            Ashley W. Hardin, *pro hac vice*
21                                          WILLIAMS & CONNOLLY LLP
                                            680 Maine Avenue, SW
22                                          Washington, DC 20024
                                            Telephone: +1 (202) 434-5000
23                                          ahardin@wc.com

24
                                            *Attorney for Defendants YouTube, LLC,*
25                                          *Google LLC, and Alphabet Inc.*

26
                                            *Additional parties and counsel listed on*
27                                          *signature pages*

28                          - 2 -                    Case No. 4:22-MD-03047-YGR

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED .......................................................... 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 6

      A.    Plaintiffs Should Not Be Allowed To Rely on the Late-Disclosed Witnesses Because the Disclosures Are Untimely and Prejudicial......................................... 6

      B.    In the Alternative, Defendants Require the Removal of the Wagstaff Districts from the Bellwether Pool or, at a Minimum, a Reasonable Extension of the Case Schedule. ......................................................................................................... 11

IV.    CONCLUSION ........................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Baird v. Blackrock Institutional Trust Co.*,
    330 F.R.D. 241 (N.D. Cal. 2019)............................................................................... 7

*Finjan v. Proofpoint*,
    2015 WL 9900617 (N.D. Cal. Oct. 26, 2015) ........................................................... 7

*Homyk v. ChemoCentryx*,
    2024 WL 5150447 (N.D. Cal. Aug. 8, 2024) ............................................................ 7

*Jackson v. Am. Family Mut. Ins. Co.*,
    2012 WL 845646 (D. Nev. Mar. 12, 2012) .............................................................. 7

*Ollier v. Sweetwater Union High Sch. Dist.*,
    768 F.3d 843 (9th Cir. 2014) ............................................................................... 6, 11

*Vieste, LLC v. Hill Redwood Dev.*,
    2011 WL 2181200 (N.D. Cal. June 3, 2011)............................................................ 6, 7

**Rules**

Fed. R. Civ. P. 37(c)(1) ......................................................................................................... 6

1

**INTRODUCTION**

2     Over the last year, three bellwether School District Plaintiffs (Hillsborough County, Jordan,

3  and Tucson)—all represented by the same counsel (Wagstaff & Cartmell, LLP)—have consistently

4  represented that their claims will turn on evidence from district-level (rather than school-level)

5  witnesses; they repeatedly claimed that they are not seeking to recover for alleged harms to

6  individual students; and they resisted efforts by Defendants to obtain student-level information

7  during discovery.  On the last day of fact discovery, these Plaintiffs suddenly reversed course,

8  disclosing several school-level witnesses whom they contend are "likely to have material

9  knowledge of Plaintiff's allegations in this action,"[1] including current and former students,

10  teachers, middle and high school principals, a behavior specialist, a Dean of Students, the son of a

11  school board member and a parent whose child died by suicide in 2017.  Defendants respectfully

12  move the Court to preclude Plaintiffs from relying on these witnesses for any purpose because they

13  are untimely and highly prejudicial.  Defendants have calibrated their discovery and work-up of

14  these cases based on Plaintiffs' representations that their claims would be litigated and tried

15  primarily on district-level evidence.  Plaintiffs cannot justify upending the parties' longstanding

16  approach to discovery by injecting a completely new layer of school-level and individual-specific

17  evidence into these cases, particularly given that Plaintiffs have known who these witnesses are

18  from the outset of this litigation.  By contrast, Defendants would be unfairly prejudiced by having

19  to conduct discovery with respect to these 17 witnesses and then retool their defenses to account

20  for that discovery.  That prejudice would be compounded by the domino effect this development is

21  likely to have on the broader bellwether pool, as other Plaintiffs employ similar tactics,

22  undermining the orderly conduct of discovery.

23     If the Court denies this request, Defendants request, at a minimum, ample time to conduct

24  the additional discovery necessitated by Plaintiffs' belated disclosures, including deposing these 17

25
26
27

[1] *See* Ex. A (April 4, 2025 Plaintiff's Third Amended Answers to Defendants' Interrogatories to the School Board of Hillsborough County, Florida (Set 1)); Ex. B (April 4, 2025 Plaintiff's Third Amended Answers to Defendants' Interrogatories to Board of Education of Jordan School District (Set 1)); Ex. C (April 4, 2025 Plaintiff's Third Amended Answers to Defendants' Interrogatories to the Tucson Unified School District (Set 1)).

28

individuals and obtaining all necessary corresponding documents and other written discovery related to these witnesses.  The most sensible and practical way to ensure that opportunity without disrupting the broader bellwether process is to remove these three School District Plaintiffs from the bellwether trial pool.  Otherwise, Defendants request that the entire schedule (after bellwether selection) be extended 90 to 120 days (depending on how quickly the relevant School Districts produce supplemental discovery) to account for the late-disclosed witnesses and allow Defendants to review relevant documents and marshal appropriate rebuttal witnesses and evidence.

### STATEMENT OF THE ISSUE TO BE DECIDED

Whether the Court should enter an order precluding the School District Plaintiffs Hillsborough County, Jordan, and Tucson from relying for any purpose on the 17 witnesses disclosed in their April 4, 2025 amendments to their responses to Interrogatory No. 1.

Whether the Court should alternatively remove the three cases from the bellwether pool or extend discovery in the bellwether cases to allow Defendants sufficient time to respond to the late addition of witnesses.

### BACKGROUND

Almost exactly one year ago, Defendants served Interrogatory No. 1 on each of the bellwether School District Plaintiffs, requesting the following:

> Identify every Person likely to have discoverable information related to Plaintiff's claims, including Persons (a) likely to have personal knowledge that supports or contradicts a position or claim that You have taken or intend to take in this Action, or (b) upon whom You intend to rely in proving Your claims, and for each such Person, describe that personal knowledge.

In their original responses, served on June 6, 2024, the School Board of Hillsborough County ("Hillsborough"), the Board of Education of Jordan School District ("Jordan"), and Tucson Unified School District ("Tucson") (collectively, the "Wagstaff Districts") identified a combined 76 individuals who they asserted had "material" knowledge of these Plaintiffs' claims.  All of those individuals were district-level witnesses—*i.e.*, none of the Wagstaff Districts identified any specific

students, teachers, or school principals in their initial responses.[2]  In September 2024, Tucson and Hillsborough amended their responses to add only additional district-level employees.  Jordan made no amendments to its Interrogatory No. 1 response prior to the last day of discovery.  None of the Wagstaff Districts identified the 17 individuals in any other capacity at any time before the last day of discovery on April 4.  None of these individuals appear on the Wagstaff Districts' initial disclosures or their initial, amended, or supplemental Plaintiff Fact Sheets.[3]

Consistent with their initial interrogatory responses, Plaintiffs have long taken the position that the most relevant individuals (and the only ones from whom they initially agreed to preserve documents) were "those individuals, administrators, departments, committees, and boards whose primary responsibility and role is to address issues concerning students' use of social media, including to provide health and physical safety supports for students, including policy development, enforcement, treatment, funding, and information technology support."[4]  Later, in negotiations related to Defendants' Requests for Production of Documents ("RFPs"), the bellwether School District Plaintiffs, including the Wagstaff Districts, agreed to disclose only "*some* school-level custodians or sources [the School District Plaintiffs] believe have potentially relevant information."[5]

---

[2] *See* Ex. D (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to the School Board of Hillsborough County, Florida (Set 1)); Ex. E (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to Board of Education of Jordan School District (Set 1)); Ex. F (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to Tucson Unified School District (Set 1)).

[3] Plaintiffs filed their Rule 26(a) initial disclosures on February 22, 2024.  *See* Ex. G (February 22, 2024 School District Plaintiffs' Initial Disclosure Statement Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)).  Instead of providing names of individuals likely to have discoverable information, Plaintiffs referred Defendants to Plaintiff Fact Sheets ("PFS").  In April 2024, Plaintiffs began serving their individual PFS, followed by Amended and Supplemental PFS.

[4] Ex. H (July 21, 2023 Ltr. from M. Weinkowitz) at 5; Ex. I (Dec. 7, 2023 Ltr. from M. Weinkowitz, M. Yeates, and D. Kawamoto) at 3 ("[T]he GE Plaintiffs have reasonably focused on the individuals with the primary responsibilities and roles for providing health and physical safety supports, and their custodial and non-custodial sources.").

[5] Ex. J (July 24, 2024 Ltr. from M. Weinkowitz) at 4 (emphasis added).

Similarly, in negotiations over Defendants' RFPs, the bellwether School District Plaintiffs, including the Wagstaff Districts, resisted attempts by Defendants to obtain individual student records or student-identifying information. In a July 24, 2024 letter, Plaintiffs stated:

> Unlike the personal injury claims, the School Districts' claims do not involve harm to a particular individual, but instead concern harm sustained by the School Districts and thus in the aggregate of individual or specific occurrences. As such, ***the production of aggregate data, instead of individual student records, is appropriate***. . . .[6]

In opposing Defendants' motion to dismiss the School Districts' claims, Plaintiffs argued—and the Court agreed—that they were not seeking to recover for harms allegedly sustained by students, but instead sought compensation for the allegedly direct injuries of "diverting and increasing financial resources to address the disruptive forces of defendants' social media products in school; hiring mental health personnel and developing mental health resources; implementing new information technology and physical resources to limit access to and mitigate risks caused by defendants' platforms; and repairing property damage."[7]

After spending the last year representing that their claims will turn primarily on district-level evidence and resisting disclosure of student-specific information, the Wagstaff Districts reversed course on the last day of fact discovery, disclosing students, teachers, parents, and multiple individual school-level employees as persons with material knowledge whom they might use to support their claims:

- Hillsborough identified **<u>seven</u>** new witnesses (added to its existing list of 20): two high school seniors, one high school graduate, a high school principal, a teacher, a high school counselor, and a behavior specialist, all to discuss the "impact of social media use" or similar issues.

---

[6] *Id.* at 6 (emphasis added).

[7] ECF No. 1267 (Oct. 27, 2024 Order) at 19–20.

- Jordan identified **six** new witnesses (added to its existing list of 21): a current student of the District, two graduates of the District, a parent of a former student who died by suicide, an assistant principal, and a teacher, all to discuss the "prevalence and impact of social media use" or similar issues.

- Tucson identified **four** new witnesses (added to its existing list of 35): a junior in high school, a middle school principal, a high school principal, and the Dean of Students at a high school, all to discuss the "prevalence and impact of social media use."

Plaintiffs have not identified what material knowledge, if any, the 17 late-disclosed individuals have that the previously disclosed witnesses do not also possess, and why they were not identified sooner. The Wagstaff Districts identified nearly every one of the originally named 76 individuals as someone with material knowledge about the "impact of students' use of social media on" school and district "operations."[8]

Defendants immediately raised these late disclosures with School District Plaintiffs' leadership and the Wagstaff Districts. As part of the meet-and-confer process, the Wagstaff Districts offered not to rely on certain of the witnesses, but reserved their rights to rely on eight of the witnesses, which notably include many of the students, one teacher, and one Dean of Students. Plaintiffs agreed to produce all of them for deposition, and for the school employees, to produce their custodial files. But the parties could not come to agreement on the appropriate scope of discovery regarding the students and former students or the broader scope of discovery that Defendants would need to address the cherry-picked nature of these witnesses.

---

[8] *See* Ex. D (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to the School Board of Hillsborough County, Florida (Set 1)); Ex. E (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to Board of Education of Jordan School District (Set 1)); Ex. F (June 6, 2024 Plaintiff's Answers to Defendants' Interrogatories to Tucson Unified School District (Set 1)).

DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS FROM
RELYING ON LATE-DISCLOSED SCHOOL DISTRICT WITNESSES

1

2

3

**ARGUMENT**

**A.     Plaintiffs Should Not Be Allowed To Rely on the Late-Disclosed Witnesses Because the Disclosures Are Untimely and Prejudicial.**

4

5

6

The Court should preclude the Wagstaff Districts from relying on any of the 17 witnesses for any purpose because the disclosures are untimely, without substantial justification, and prejudicial.

7

8

9

10

11

12

13

14

15

16

17

"Rule 26(a) requires parties to disclose the names and contact information of individuals 'likely to have discoverable information' that the disclosing party may use to support its claims or defenses, as well as the subject of the information known by the individuals." *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *2 (N.D. Cal. June 3, 2011).  Further, "Rule 26(e) imposes an affirmative obligation on a party to supplement its initial disclosures '***in a timely manner***' if the party learns that the disclosures are incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* (emphasis added).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

18

19

20

21

22

23

As the Ninth Circuit has explained, this "[o]rderly procedure requires timely disclosure so that trial efforts are enhanced and efficient, and the trial process is improved.  The late disclosure of witnesses throws a wrench into the machinery of trial," requiring the opposing party "to scramble to make up for the delay" and "impair[ing] the ability of every trial court to manage its docket." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862–63 (9th Cir. 2014) (criticizing "last-minute discovery" and affirming exclusion of late-disclosed fact witnesses).

24

25

26

27

For these reasons, a party who may rely on particular fact witnesses at trial cannot wait until the final day of the fact discovery period to disclose that possibility.  Rather, that party must diligently do so as soon as it comes to believe that the individuals possess information that supports its claims so that the opponent has time to conduct discovery with respect to those witnesses. *See,*

28

- 6 -

Case No. 4:22-MD-03047-YGR

*e.g.*, *Jackson v. Am. Family Mut. Ins. Co.*, 2012 WL 845646, at *3 (D. Nev. Mar. 12, 2012) (granting defendants' motion to strike testimony of three witnesses disclosed on the last day of discovery because it was "too late for Defendant to conduct formal or informal discovery" on those individuals); *Vieste*, 2011 WL 2181200, at *2 (precluding defendants from calling at trial four witnesses who were not disclosed until two weeks before the close of fact discovery; "[h]ad Defendants properly disclosed [the] four . . . witnesses, either in their initial disclosures or in a timely supplementation pursuant to Rule 26(e), Plaintiffs would have been adequately informed that these individuals possessed discoverable information that supported Defendants' case and could have made educated choices about how best to use their discovery resources").[9]

Plaintiffs have not complied with this standard.  The amended interrogatory answers were made in response to the very first interrogatory that Defendants served on Plaintiffs a year ago. Plaintiffs initially responded to that interrogatory in June 2024, and Tucson and Hillsborough amended their responses in September 2024.  At no time over the ensuing year did the Wagstaff Districts suggest that any (much less 17) school-level witnesses may have information that supports their claims.  Instead, they waited until the very last day of fact discovery to apprise Defendants of that critical fact.  This is neither substantially justified nor harmless.

**Plaintiffs' untimely disclosures are not substantially justified**.  Plaintiffs cannot justify failing to disclose these 17 witnesses much earlier.  Plaintiffs have not asserted that these people (e.g., principals, teachers, students and parents) were unknown to them until recently.  Nor would such a claim be credible.  The relevant inquiry—as Plaintiffs themselves posited in another

---

[9] *See also, e.g.*, *Homyk v. ChemoCentryx, Inc.*, 2024 WL 5150447, at *2 (N.D. Cal. Aug. 8, 2024) (finding that "late disclosure" of 11 witnesses disclosed *seven weeks before the close of fact discovery* was "not [] harmless": "Even if [] Plaintiff had immediately dived into obtaining discovery from the eleven witnesses after Defendants served their Rule 26(a) supplemental disclosures, approximately seven weeks of fact discovery is not enough time to conduct discovery for eleven witnesses"); *Finjan v. Proofpoint*, 2015 WL 9900617, at *2–3 (N.D. Cal. Oct. 26, 2015) (supplemental disclosure of two witnesses made two business days before the close of fact discovery was not harmless because "it was not reasonable to expect plaintiff to divert time and resources to prepare for and take the depositions of [the two witnesses], who were disclosed at the eleventh hour"); *Baird v. Blackrock Institutional Trust Co.*, 330 F.R.D. 241, 246–48 (N.D. Cal. 2019) (striking 10 witnesses disclosed with only weeks left in fact discovery period).

instance—is whether the Wagstaff Districts can "claim that [they] were unaware last year that [prevalence and impact of social media use]—issues that lie at the heart of the PISD complaints—would be relevant to [their claims]." [10]  They cannot.  Indeed, nearly every one of the 76 witnesses Plaintiffs did timely disclose was identified as having knowledge about *that precise issue*.[11]  And testimony taken just this week confirms that the Wagstaff Districts were not only aware of one former student in particular, but counsel told that former student's parent—who also happens to be a school board member—***in July 2024*** that they expected the son to be a trial witness.[12]

The Wagstaff Districts' dilatory disclosures are especially egregious in light of their vigorous attempts to block student- and teacher-level discovery.  For example, Plaintiffs have argued since the beginning of these cases that individual students, parents, and teachers were not the proper custodians and witnesses for these cases.  They also produced only aggregate,

---

[10]  ECF No. 1803 at 9.  When Defendant YouTube amended its initial disclosures *two months before the close of fact discovery* to add a mere *two* witnesses, Plaintiffs objected, calling YouTube's timely disclosures "trial by ambush."  *Id.*  Plaintiffs have now turned around and *months later* disclosed nearly *nine times* as many new witnesses with no explanation.  Plaintiffs did not move to strike the two witnesses from YouTube's initial disclosures, but they noted that "the Court *could* preclude these two late witnesses," citing many of the cases Defendants cite herein.  *Id.* at 8–9.  Magistrate Judge Kang ordered YouTube to provide all of the discovery that Plaintiffs sought with regard to those two witnesses, except he denied a deposition of one of them because Plaintiffs did not take advantage of the opportunity to conduct the fact deposition when they were already deposing the witness as a Rule 30(b)(6) witness within the fact discovery period.  ECF No. 1840.

[11] When the parties met and conferred about the Wagstaff Districts' late disclosures, Plaintiffs' counsel told Defendants that Defendants should have known that the bellwether School District Plaintiffs would seek to use students as trial witnesses because they were some of the best witnesses for plaintiffs in the *JUUL* trial.  This is essentially blaming Defendants for Plaintiffs' actions.  Wagstaff & Cartmell also represented the school districts in the *JUUL* litigation, and thus, if anything, the *JUUL* experience confirms that Plaintiffs well knew they would use such witnesses far earlier than the last day of fact discovery.  *JUUL* is also distinguishable.  There, the school district plaintiff also disclosed the student witnesses late, and Judge Orrick originally struck them as untimely disclosed.  *See* Ex. K (Oct. 7, 2022 Tr., *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 19-md-02913) at 6 ("I am not going to allow the two Unified School District students, who were just disclosed two months ago or less, one month ago, to testify.  It's too late.").  Judge Orrick then allowed the students to testify only because he also found that one of the defendants in the *JUUL* litigation had also made a late disclosure of a trial witness shortly before trial.  *Id.* at 81.  There are no corresponding facts here.

[12] *See* Ex. L (May 7, 2024 Tr. B.D. Deposition) at 96:23–103:15.

anonymized school records and delayed document production because they claimed that they could not produce any student-identifying data without giving students notice.[13]  As to school-level employees such as teachers, principals, behavior specialists, and Deans of Students, Plaintiffs refused to even put them on litigation holds and preserve their documents, instead claiming that they only needed to preserve documents for district-level employees who had "primary responsibility . . . to address issues concerning students' use of social media, including to provide health and physical safety supports for students."[14]

**Plaintiffs' untimely disclosures are not harmless.**   The prejudice to Defendants is significant and likely incurable at this late stage of discovery.  Defendants had no opportunity to take the extensive discovery necessary for these witnesses.  Plaintiffs have indicated their willingness to make the witnesses available for deposition, but even though depositions of School District witnesses can continue through May 15,[15] Defendants are already scheduled to take more than 120 school district depositions between April 4 and May 15.  On some days, the parties have scheduled as many as seven depositions.  There is simply no reasonable opportunity to take 17 additional depositions in that time period—or to take them before the Court's May 23 deadline for the parties to brief bellwether trial selections.  Defendants also have a 35-hour cap on deposition time in each bellwether School District, which they carefully planned the use of before the late disclosure of these witnesses.  There is no time for Defendants to complete the unanticipated depositions in that already tight hours-cap.

This is all the more true because Defendants would need document discovery to take these depositions.  The Wagstaff Districts have indicated that the current and former students would not testify about their own social media use or any "addiction" or personal injuries allegedly caused by

---

[13] *See* Ex. J (July 24, 2024 Ltr. from M. Weinkowitz) at 6; ECF No. 1132 at 5.

[14] *See* Ex. H (July 21, 2023 Ltr. From M. Weinkowitz) at 5.

[15] Fact discovery closed on April 4, 2025 for all cases, but the Court previously granted an extension for Defendants to take depositions of the bellwether School District Plaintiffs because of significant delays in the School Districts' production of documents.  *See* ECF No. 1249 at 2.

their use of Defendants' platforms. Instead, the students, teachers, and school-level employees would be akin to "eyewitnesses" who would testify about the impact of social media use on their classrooms and the prevalence of social media use at their schools. But there are, for example, almost 40,000 students and 10 high schools in the Tucson Unified School District. If Tucson can hand-select **one** high school junior out of those 40,000 to provide "eyewitness" testimony, then Defendants would need discovery about not only that one student but also discovery regarding other students to address potential cherry-picking—*i.e.*, to determine whether that one student's experiences are representative. That would include (at least) the identities of some other students, de-anonymized data regarding school disciplinary issues, and communications with students, teachers, principals and the School District or individual schools regarding relevant issues.

The same is true for school principals. Not only would Defendants need the custodial files of the disclosed principals (which the Wagstaff Districts agreed to produce),[16] but they would need the files of other school principals and vice principals in the district to combat potential cherry-picking. It would take Defendants months to confer with the School District Plaintiffs about the necessary scope of discovery, brief any disputes before Magistrate Judge Kang, receive and review the material and depose the 17 late-disclosed witnesses plus any others implicated by the additional discovery.

Finally, if the Wagstaff Districts are permitted to proceed with their 17 late-disclosed witnesses, that will likely invite other bellwether Plaintiffs to employ similar tactics, compounding the prejudice discussed above. Indeed, on April 28, 2025—***three weeks after the close of fact discovery***—bellwether Plaintiff St. Charles Parish School District ("St. Charles") amended its answer to Interrogatory No. 1 to add 19 additional persons with discoverable information, including ***seven*** disclosed for the first time.[17] Among the late-disclosed witnesses are a middle school student,

---

[16] Just this week, Defendant Tucson produced documents for the late-disclosed Dean of Students.

[17] *See* Ex. M (April 28, 2025 Plaintiff's Supplemental Answers to Defendants' Interrogatories to St. Charles Parish School District (Set 1)).

a high school student, several principals, and a "community advocate."  St. Charles has offered no reason for its untimely disclosures.[18]  This development confirms that the Wagstaff Districts' dilatory conduct may just be the tip of the iceberg.  Judicial intervention would not only ensure an "[o]rderly procedure" in these three cases; it would prevent Defendants from having "to scramble" more broadly in the other bellwether cases.  *See Ollier*, 768 F.3d at 862–63.

In short, the most fair and workable way to avoid opening this Pandora's box of discovery and imposing significant prejudice on Defendants is for the Court to rule that the Wagstaff Districts may not rely on the 17 late-disclosed witnesses for any purpose.

**B.      In the Alternative, Defendants Require the Removal of the Wagstaff Districts from the Bellwether Pool or, at a Minimum, a Reasonable Extension of the Case Schedule.**

If the Wagstaff Districts are permitted to rely on their 17 (or even eight) additional witnesses in their expert reports, at summary judgment, or at trial, Defendants respectfully request that these cases be removed from the bellwether pool so that Defendants can propound and obtain discovery with respect to these individuals.[19]  Alternatively, Defendants request that the Court extend the entire schedule (after bellwether selection) by 90 to 120 days to account for the late-disclosed witnesses and allow Defendants to marshal appropriate rebuttal witnesses and evidence.

Under the Court's current schedule, the deadline to brief bellwether trial pools is May 23, 2025, and the trial pool selection issue is set for hearing on June 13, 2025.  As described above, if Plaintiffs are permitted to rely on these late-disclosed witnesses, substantial additional discovery will be required, including significant amounts of written and document discovery and many additional depositions.  Plaintiffs have provided no information about why they chose the seven

---

[18] Defendants twice requested a meet and confer with St. Charles about the untimely amendments, but St. Charles' counsel responded only yesterday, and a meet and confer is set for May 12, 2025.  For the reasons stated herein, St. Charles should not be allowed to rely on any witnesses that it disclosed for the first time in that amended interrogatory response.

[19] Defendants are prepared to take up the appropriate scope of discovery before Magistrate Judge Kang.

students and one parent[20] (out of hundreds of thousands), the two teachers (out of thousands), or the five principals or two counselors/behavior specialists (out of dozens).[21]  Defendants could not possibly have known which of the thousands of students, teachers, parents, or principals might testify in favor of the Wagstaff Districts or—given Plaintiffs' representations and prior disclosures—that *any* would testify in their favor.  The clear asymmetry in access to student- and school-level witnesses is fundamentally unfair.  Regardless of whether a few students or teachers could prove the district-wide harm claimed or offer appropriate non-hearsay testimony at trial, fairness demands that if they are allowed to testify, Defendants receive additional discovery.  This requires, at minimum:

- Custodial files not only for the school employees, but custodial files for similarly-situated individuals (e.g., custodial files for all Deans of Students (or equivalent) of Tucson's 10 high schools and principals and vice principals of Jordan's eight high schools);

- Communications between school- and district-level employees and students and parents regarding the issues relevant to the litigation;

- School disciplinary, academic, and attendance records and any relevant guidance or mental health records for the disclosed students and former students;

- Unredacted school disciplinary and attendance records for all students;

- Communications between the 17 individuals with Plaintiffs' lawyers related to this matter;

---

[20] As part of their compromise offer, the Wagstaff Districts offered not to rely on the one parent.

[21] The unfairness of at least some of the selected individuals is self-evident.  For example, one of the former students disclosed by Jordan is L.D., the son of Jordan School Board member, B.D. L.D. claims that social media use caused him to have a "toxic mentality" and that his "mental health" improved once he voluntarily gave up social media, consistent with B.D.'s public sentiment that Defendants' platforms have "adverse effects" on young people.  *See* Bridger Beal-Cvetko, *"We Kind of Lost Him": Why Jordan School District Was Named Lead Plaintiff in Suit Against Meta, TikTok*, KSL.COM (July 29, 2024, 4:22 PM), https://www.ksl.com/article/51082565/we-kind-of-lost-him-why-jordan-school-district-was-named-lead-plaintiff-in-suit-against-meta-tiktok.  L.D. is therefore not just any former student who is going to give a fair and balanced "eyewitness" account of the issues.

- Communications between Plaintiffs' lawyers and any other students, teachers, school principals, or deans of students related to this matter;

- Personal emails and texts of the witnesses on topics related to this litigation;

- Depositions of the 17 witnesses and any other relevant individuals discovered through those depositions; and

- Additional deposition time in which to accommodate the additional depositions.

It would take months to complete the appropriate level of discovery. Defendants appreciate the breadth of this discovery, but it is the Wagstaff Districts that have willingly put this type of information at issue by reversing their prior litigation position and choosing to make school-level evidence part of these cases. If these Plaintiffs are allowed to proceed in such a manner, Defendants must be allowed an opportunity to pursue discovery to put these witnesses in context and offer competing evidence. The only way to guarantee Defendants sufficient time to conduct this critical discovery is to remove the Wagstaff Districts' cases from the bellwether trial pool. Such relief would also avoid the need to disrupt the schedule for the entire bellwether pool.

If the Court is unwilling to remove these cases from the bellwether pool, Defendants respectfully request that the entire schedule (after bellwether selection) be extended 90 to 120 days (depending on how quickly the relevant School Districts produce supplemental discovery). Such an extension would be necessary for Defendants to account for the late-disclosed witnesses and allow Defendants to marshal appropriate rebuttal witnesses and evidence. Otherwise, Defendants will not be able to conduct the extensive and time-consuming discovery necessary to respond to the late-disclosed witnesses, resulting in significant prejudice to their ability to defend these cases.

## CONCLUSION

For the reasons given herein, the Court should enter an order that the Wagstaff Districts may not rely for any purpose on the 17 witnesses disclosed in their April 4, 2025 amendments to their responses to Interrogatory No. 1. In the alternative, the Court should remove the Wagstaff Districts from the trial pool or extend the schedule by 90-120 days (depending on how quickly the relevant School Districts produce supplemental discovery).

- 13 -    Case No. 4:22-MD-03047-YGR

Dated:  May 9, 2025                      Respectfully submitted,

                                         COVINGTON & BURLING LLP

                                         */s/ Phyllis A. Jones*
                                         Paul W. Schmidt, *pro hac vice*
                                         pschmidt@cov.com
                                         Phyllis A. Jones, *pro hac vice*
                                         pajones@cov.com
                                         Christian J. Pistilli, *pro hac vice*
                                         cpistilli@cov.com
                                         COVINGTON & BURLING LLP
                                         One CityCenter
                                         850 Tenth Street, NW
                                         Washington, DC 20001-4956
                                         Telephone: + 1 (202) 662-6000

                                         Emily Johnson Henn (State Bar No. 269482)
                                         ehenn@cov.com
                                         COVINGTON & BURLING LLP
                                         3000 El Camino Real
                                         5 Palo Alto Square, 10th Floor
                                         Palo Alto, CA 94306
                                         Telephone: + 1 (650) 632-4700

                                         *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
                                         *Facebook, Inc.; Facebook Holdings, LLC; Facebook*
                                         *Operations, LLC; Facebook Payments, Inc.;*
                                         *Facebook Technologies, LLC; Instagram, LLC;*
                                         *Siculus, Inc.; and Mark Elliot Zuckerberg*


                                         KING & SPALDING LLP

                                         */s/ Geoffrey M. Drake*
                                         Geoffrey M. Drake, *pro hac vice*
                                         TaCara D. Harris, *pro hac vice*
                                         King & Spalding LLP
                                         1180 Peachtree Street, NE, Suite 1600
                                         Atlanta, GA 30309-3521
                                         Telephone: (404) 572-4600
                                         Facsimile: (404) 572-5100
                                         Email: gdrake@kslaw.com
                                                 tharris@kslaw.com

                                         Kristen R. Fournier, *pro hac vice*
                                         King & Spalding LLP

- 14 -                                                    Case No. 4:22-MD-03047-YGR

1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: kfournier@kslaw.com

David P. Mattern, *pro hac vice*
King & Spalding LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

FAEGRE DRINKER BIDDLE & REATH  LLP

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, *pro hac vice*
andrea.pierson@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300

Amy Fiterman, *pro hac vice*
amy.fiterman@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone: + 1 (612) 766-7000

*Attorneys for Defendants TikTok Inc., ByteDance
Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

MUNGER, TOLLES & OLSON LLP

*/s/ Jonathan H. Blavin*

- 15 -                          Case No. 4:22-MD-03047-YGR

Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: +1 (415) 512-4000

Victoria A. Degtyareva (State Bar No. 284199)
Victoria.Degtyareva@mto.com
Rowley Rice (State Bar No. 313737)
Rowley.Rice@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: +1 (213) 683-9100

Lauren A. Bell, *pro hac vice*
Lauren.Bell@mto.com
Stephany Reaves, *pro hac vice*
Stephany.Reaves@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, D.C. 20001-5369
Telephone: +1 (202) 220-1100

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

Laura Bernescu, *pro hac vice*
Laura.Bernescu@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
320 South Canal Street
Chicago, IL 60606
Telephone: +1 (312) 407-0709

KIRKLAND & ELLIS LLP

Jessica Davidson, *pro hac vice*
Jessica.Davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 (212) 446-4723

*Attorneys for Defendant Snap Inc.*

- 16 -                          Case No. 4:22-MD-03047-YGR

DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS FROM
RELYING ON LATE-DISCLOSED SCHOOL DISTRICT WITNESSES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLIAMS & CONNOLLY LLP

/s/ *Ashley W. Hardin*
Joseph G. Petrosinelli, *pro hac vice*
jpetrosinelli@wc.com
Ashley W. Hardin, *pro hac vice*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Telephone: +1 (202) 434-5000

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

- 17 -                    Case No. 4:22-MD-03047-YGR

1

**LOCAL RULE 5-1(i)(3) ATTESTATION**

2

I, Joseph Sandoval-Bushur, hereby attest in accordance with Local Rule 5-1(i)(3) that

3

each signatory has concurred in the filing of the document.

4

Dated:  May 9, 2025                                      By:  */s/ Joseph Sandoval-Bushur*

5

Joseph Sandoval-Bushur, *pro hac vice*

6

*Attorney for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS FROM
RELYING ON LATE-DISCLOSED SCHOOL DISTRICT WITNESSES