# EXHIBIT B

## FILED UNDER SEAL

1    Thomas P. Cartmell (*pro hac vice*)
     Jonathan P. Kieffer (*pro hac vice*)
2    Austin Brane, SBN 286227
     **WAGSTAFF & CARTMELL LLP**
3    4740 Grand Avenue, Suite 300
     Kansas City, MO 64112
4    Tel: (816) 701-1100
     tcartmell@wcllp.com
5    jpkieffer@wcllp.com
     abrane@wcllp.com
6
     *Attorneys for Plaintiff* (additional
7    counsel on signature page)

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11   IN RE: SOCIAL MEDIA ADOLESCENT          Case No.  4:22-MD-03047-YGR
     ADDICTION/PERSONAL INJURY
12   PRODUCTS LIABILITY LITIGATION,          MDL No. 3047

13   ─────────────────────────────────       **PLAINTIFF'S THIRD AMENDED**
                                             **ANSWERS TO DEFENDANTS'**
14   This Document Relates to:               **INTERROGATORIES TO BOARD OF**
                                             **EDUCATION OF JORDAN SCHOOL**
15   Board of Education of Jordan School     **DISTRICT (SET 1)**
     District v. Meta Platforms Inc., et al.
16
     Case No.: 4:24-cv-1377
17

18

19

20

21

22

23

24

25

26

27

28

1  PROPOUNDING PARTY:    DEFENDANTS

2  RESPONDING PARTY:    BOARD OF EDUCATION OF JORDAN SCHOOL DISTRICT

3  SET NO.:    ONE (1)

4  DATE OF SERVICE:    April 4, 2025

5      Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of this judicial

6  district, the Board of Education of Jordan School District ("Plaintiff"), hereby provides these third

7  amended answers and objections to the Defendants' Interrogatories to Board of Education of Jordan

8  School District (Set 1) (the "**Interrogatories**").

9                          **PRELIMINARY STATEMENT**

10      Plaintiff has undertaken a reasonable effort to provide the information requested by these

11  Interrogatories to the extent the requested information is not subject to objection, but Plaintiff has

12  not yet received complete discovery from Defendants, and Plaintiff has not completed its

13  investigation of the facts relating to this Action. Discovery is ongoing and additional information

14  may be obtained that may alter these responses. The following responses and objections are based

15  upon information that has been collected and reviewed to date for the purpose of these

16  Interrogatories and are not prepared from any personal knowledge of any single individual.

17  Accordingly, all the following responses are given without prejudice to, and with the express

18  reservation of, Plaintiff's right to supplement or modify its responses and objections to address

19  additional information, and to rely upon any and all such information and documents at trial or

20  otherwise.

21                          **OBJECTIONS TO DEFINITIONS**

    The following applies to each Interrogatory.

22
    1.    Plaintiff objects to Defendants' definition of "Alleged Harm" on the grounds that it

23
    calls for a legal conclusion or Expert Opinion. Further, as discovery is just beginning, and the

24
    factual record is not yet complete, additional injury and harm may need to be supplemented during

25
    fact discovery or expert discovery.

26
    2.    Plaintiff objects to Defendants' definition of "Relevant Time Period" as it is

27
    overbroad, calls for a legal conclusion or Expert Opinion, and is inconsistent with the relevant time

28

frame thus far established in this litigation. "Relevant Time Frame" shall mean, as agreed by the Parties, from August 1, 2014 to April 1, 2024 or the date of collection, whichever is earlier. Plaintiff reserves the right to change or modify the Relevant Time Frame based on further investigation or fact and/or expert discovery.

3.      Plaintiff objects to Defendants' definition of "Plaintiff," "You," and "Your," as overly broad, unduly burdensome, and seeking the production of information that is not relevant to the claims or defenses of any party, not proportional to the needs of the case, and not reasonably accessible to Plaintiff upon reasonable diligence. Furthermore, the definition of these terms is over broad to the extent it would require Plaintiff to respond to these Interrogatories for people "purporting to act on its behalf" and to the extent it purports to include any of the persons identified in their personal capacities rather than as officers and employees of Plaintiff.  Plaintiff objects further to this definition as seeking Privileged Information because the definition includes Plaintiff's attorneys.

4.      Plaintiff's answers are made without waiving its right to object (on the grounds of relevance, hearsay, materiality, competency, or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

5.      If Plaintiff, in response to any Interrogatory, inadvertently produced information that is or could be the subject of the objections stated herein, such production is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information provided or withheld.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

Identify every Person likely to have discoverable information related to Plaintiff's claims, including Persons (a) likely to have personal knowledge that supports or contradicts a position or claim that You have taken or intend to take in this Action, or (b) upon whom You intend to rely in proving Your claims, and for each such Person, and for each such Person, describe that personal knowledge.

**RESPONSE:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Plaintiff to identify "every Person" whether employed by Plaintiff or third parties, or any other Person who may have any knowledge concerning the claims in the action. Plaintiff objects further to this Interrogatory to the extent it calls for the mental impressions of counsel, the identity of non-testifying experts, the premature disclosure of the identity of testifying experts, or otherwise seeks information protected from disclosure by the attorney-client privilege or work product doctrine. Plaintiff will make appropriate expert disclosures pursuant to deadlines set by the Court and in accordance with the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, Plaintiff states, based on the information currently available to it, that the following persons currently or formerly employed by Plaintiff may have material knowledge of Plaintiff's allegations in this action and can be contacted through Plaintiff's counsel:

| Last | First | Title | Subject Matter |
|---|---|---|---|
| Anderson | Michael | Associate Superintendent | The impact of social media use on district operations–allocation of limited resources–particularly around staffing, administrative capability, and community impact. |
| Brothers | Joshua | Assistant Principal, Rose Creek Elementary School | Prevalence and impact of student social media use on district operations, including impact on student learning. |
| C▮▮ | S▮ | Herriman High School Graduate | Prevalence and impact of student social media use. |
| Curtis | Cody | Admin of Schools, Middle | The impact of social media use on district operations and operations particularly around their area of stewardship (middle school), impacts on school staffing/training, school safety, crisis events, patron concerns, and student discipline. |

| | | | |
|---|---|---|---|
| Dunford | Bryce | Jordan School District Board Member | The impact of social media use on district operations from the perspective of the Board of Education, including Board decisions on using limited resources to address social media and Board decisions to increase taxes, and provide information on patron attitudes regarding related issues. |
| D███ | L██ | Bingham High School Graduate | Prevalence and impact of student social media use. |
| Franco | Fulvia | Student Services, Guidance Consultant | The impact of social media use on district operations, particularly regarding providing counseling services to students across the district. |
| Gaydosh | April | Admin of School, Elementary | The impact of social media use on district operations and operations particularly around their area of stewardship (elementary school), impacts on school staffing/training, school safety, crisis events, patron concerns, and student discipline. |
| Godfrey | Anthony | Superintendent | The impact of social media use on district operations. Information regarding district decisions and actions in response to social media related issues, district/school employees, students, and schools (beyond the district's boundaries), and information regarding using limited resources to address social media and Board decisions to increase taxes and provide information on patron attitudes regarding related issues. |
| Gough | Carolyn | Teaching & Learning, Admin | The impact of social media use on district operations and operations particularly as it pertains to student instruction and learning. |
| Hamblin | Travis | Director, Student Services | The impact of social media use on district operations, particularly as it relates to student services (i.e., discipline, health and wellness, and administrative staffing). |
| Hinojosa | Andrea | Teacher, Copper Hills High School | Prevalence and impact of student social media use on district operations. |
| Jameson | Ben | Director; Evaluation, Research & Accountability | The impact on social media use and district operations, particularly research and accountability. |

| Jensen | Sharon | Student Services, Student Intervention Consultant | The impact of social media use on district operations, particularly student discipline. |
|---|---|---|---|
| Kirk | RaeAnna | Nursing Services, Team Leader | The impact of social media use on district operations, particularly the mental and physical health of the students. |
| Larsen | John | Business Admin | The impact of social media use on district finances, particularly around budgeting for extra FTEs to provide mental health services for students and the need to seek additional tax revenues to pay for it. |
| Olsen | Caleb | Enrollment Consultant, Planning & Enrollment | The impact of social media use on district operations and operations particularly around student records. |
| Peart | Steve | Director of Custodial/Energy | Information regarding damage of district property related to social media. |
| Robinson | Lisa | Admin of School, Elementary | The impact of social media use on district operations, particularly around their area of stewardship (elementary school), impacts on school staffing/training, school safety, crisis events, patron concerns, and student discipline. |
| Rostrom | Dave | Facility Services, Director | Information regarding facility modifications to address social media and district facilities' direct and indirect costs. |
| Sorensen | Brad | Admin of Schools, High | The impact of social media use on district operations, particularly around their area of stewardship (high school), impacts on school staffing/training, school safety, crisis events, patron concerns, and student discipline. |
| S█████ | █ | Current Student at Copper Hills High School | Prevalence and impact of student social media use. |
| Thomas | Scott | Administrator of Auxiliary Services | Information regarding facility modifications and repairs to address social media and district facilities' direct and indirect costs. |

| Voutaz | Catherine | Parent of former Jordan School District Student | Prevalence and impact of student social media use. |
|---|---|---|---|
| Withers | McKinley | Health & Wellness, Specialist | The impact of social media use on district operations from the perspective of student health and wellness, including mental health, available resources, and additional staffing and programs. |
| Worthen | Stacee | Student Services, Counseling Consultant | The impact of social media use on district operations from the perspective of student health and wellness, including mental health, available resources, and additional staffing and programs. |
| Williams | Glenn | 504 Teacher Specialist | Information about mental health counseling for students on 504 Plans. |

**INTERROGATORY NO. 2:**

For each Defendant, state the years during which You claim such Defendant engaged in conduct for which You seek damages, as well as the time period for any abatement or other equitable relief.

**RESPONSE:**

Plaintiff objects to the Interrogatory as premature to the extent it seeks information about subjects of ongoing discovery, including expert discovery. Plaintiff's investigation is ongoing, Plaintiff has not received sufficient discovery from Defendants, and the factual record is incomplete. Plaintiff objects to the Interrogatory to the extent it calls for expert opinion. Plaintiff objects further because the Interrogatory is compound, consisting of multiple subparts relating to 1) years of Defendants' relevant harmful conduct for which damages are sought and 2) the time period for abatement or other equitable relief.

Subject to and without waiving the foregoing objections, Plaintiff states, based on the information currently available, that Defendants have engaged in conduct over the following time frames which has led to the Plaintiff's damages and/or requires abatement or other equitable relief. For the Meta Defendants, at least back to 2004. For the TikTok Defendants, at least back to 2012. For the YouTube Defendants, at least back to 2005. For Defendant Snap Inc., at least back to 2011.

Based on the information currently available, Plaintiff anticipates seeking damages from at least the 2016-2017 academic year. Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory as more information becomes available. Plaintiff states further that it will make appropriate expert disclosures concerning damages and abatement or other equitable relief in accordance with the deadlines set by the Court and the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 3:**

Separately identify and describe (including the date, location, nature and extent, and cost of repair or replacement) every instance of vandalism, property damage, or criminal action You contend occurred as a result of Online Media & communications Services.

**RESPONSE:**

Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Plaintiff to identify and describe every instance of vandalism, property damage, or criminal action that occurred as a result of social media regardless of whether Plaintiff intends to claim such damage as damages in this action. Plaintiff objects further to the Interrogatory as vague and ambiguous because the phrase "property damage" is subject to multiple interpretations and may call for a legal conclusion. Plaintiff objects further to the Interrogatory as premature to the extent it seeks expert opinion and because discovery is in its early stages. Plaintiff's investigation is ongoing, Plaintiff has not received sufficient discovery from Defendants, and the factual record is incomplete. Plaintiff objects further because the Interrogatory is compound, consisting of multiple subparts relating to 1) vandalism, 2) property damage, or 3) criminal action.

Subject to and without waiving the foregoing objections, Plaintiff states it has incurred costs and expenses resulting from Defendants promoting, developing, or participating in the creation of social media platforms which promote addictive and compulsive use by Plaintiff's students, such as bathroom heists, resulting in damages to its facilities and property, including the theft of soap dispensers and paper towel dispensers, tearing mirrors off the walls, bathroom stall damage, toilet paper theft, and other thefts and vandalism. Student social media use has also resulted in property

damage outside of the bathroom, including broken windows, sprinkler heads, locker room benches, chairs, desks, and furniture. In addition, over the last several years, Plaintiff has had to modify or alter existing spaces to address harms resulting from students' social media use. These modifications include remodeling or eliminating existing educational spaces to create student wellness spaces to address increases in student anxiety, depression, agitation, and disruptive behavior. While the cost for these modifications varies, some projects have cost approximately $50,000-$60,000. In addition to the expense and labor required, educational space is lost, forcing Plaintiff to find alternate spaces and accelerating the need for building new educational spaces. Plaintiff estimates it has lost the equivalent of 60-70 classrooms due to these modifications. Furthermore, Plaintiff has been forced to increase its student support staff numbers, including social workers and school site administrators. This necessitates creating additional office space for the increased staffing, which requires financial and human resources to achieve and reduces space available for education. Such incidents include, but are not limited to:

| Date | School Site | Description | Approximate Expense |
|---|---|---|---|
| 2/2/2021 | Antelope Canyon | Remodel storage room into a small office | $1,550.00 |
| 4/23/2021 | Riverton Elementary | Remodel for Social Emotional Wellness classroom | $4,510.00 |
| 10/6/2021 | South Jordan Middle | Estimated to remodel storage into an office space for school psychologist. | $1,160.00 |
| 2/18/2022 | Midas Creek Elementary | Converted storage room to new sensory room | $1,510.00 |
| 6/16/2022 | Antelope Canyon | Change storage room into an occupied space for new counselor. | $1,700 |
| 8/10/2022 | Butterfield Canyon | Replace wall carpet in old computer lab that is turning into a wellness room. | $1,000.00 |
| 8/16/2022 | Eastlake Elementary | Install wall dividing a classroom to create a wellness room and resource room. | $11,560.00 |
| 10/22/2022 | Jordan Ridge Elementary | Rewire two lights in wellness room | $550.00 |
| 4/25/2023 | West Jordan HS | Bathroom stalls damaged with graffiti. | $140 |
| 4/27/2023 | Falcon Ridge Elementary | Convert old off-track closet into an office for a full-time assistant principal. | $1,730.00 |
| 5/8/2023 | West Jordan | Football field damaged with graffiti. | $110 |

| | HS | | |
|---|---|---|---|
| 5/17/2023 | Hidden Valley MS | Window broken. | $500 |
| 7/12/2023 | Terra Linda Elementary | Convert storage room into cool down room. | $1,760.00 |
| 7/14/2023 | West Jordan HS | Connex damaged with graffiti. | $260 |
| 7/25/2023 | South Jordan Elementary | Turn storage room into school Psychologist office. | $1,700.00 |
| 8/9/2023 | Mountain Creek MS | Four windows broken. | $750 |
| 8/22/2023 | Mountain Ridge | Fench by football stadium damaged. | - |
| 8/29/2023 | Rose Creek Elementary | Remodel computer lab to create wellness room and counseling center. | $7,450.00 |
| 9/26/2023 | Valley HS | Bathroom faucet broken in boys' bathroom. | - |
| 10/2/2023 | Mountain Ridge | Gate at main entrance of football stadium damaged. | $75 |
| 10/13/2023 | Bingham | Sink pulled off wall and broken. | $325 |
| 12/7/2023 | Bingham | Bench seat broken off and needed repair. | $230 |
| 2/26/2024 | Majestic Elementary | Build wall in literacy room to create new separate room for resource. | $11,680.00 |
| 3/12/2024 | West Jordan HS | Girls' restroom wall damaged with graffiti. | $35 |

The above list includes information Plaintiff was able to discern following a reasonably diligent investigation. Where information is not included, Plaintiff has been unable to confirm that information. Plaintiff has reason to believe that each of the above identified incidents was caused by Defendants' conduct. In addition to the expenses identified above, Plaintiff has expended significant human resources to address these harms. In many instances, no direct expense is tracked because the damage was remediated by Plaintiff's staff using existing maintenance inventory or did not require direct expense but, rather, staff time to remediate. In addition, these incidents prevent Plaintiff from full use and enjoyment of its property.

///

| | |
|---|---|
| 1 | Dated: April 4, 2025 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: April 4, 2025

**WAGSTAFF & CARTMELL LLP**

*/s/ Austin Brane*
Austin Brane

Thomas P. Cartmell (*pro hac vice*)
Jonathan P. Kieffer (*pro hac vice*)
Austin Brane, SBN 286227
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1100
tcartmell@wcllp.com
jpkieffer@wcllp.com
abrane@wcllp.com

Kirk J. Goza (*pro hac vice*)
Brad Honnold (*pro hac vice*)
**GOZA & HONNOLD LLC**
9500 Nall Ave., Ste 400
Overland Park, KS 66207
Tel. (913) 451-3433
kgoza@gohonlaw.com
bhonnold@gohonlaw.com

Joseph G. VanZandt (*pro hac vice*)
Davis Vaughn (*pro hac vice*)
Jennifer Emmel (*pro hac vice*)
Clinton Richardson (*pro hac vice*)
Seth Harding (*pro hac vice*)
**BEASLEY ALLEN CROW
METHVIN PORTIS & MILES, LLC**
234 Commerce Street
Montgomery, AL 36103
Tel: 334-269-2343
Joseph.VanZandt@BeasleyAllen.com
Davis.Vaughn@BeasleyAllen.com
Jennifer.Emmel@BeasleyAllen.com
Clinton.Richardson@BeasleyAllen.com
Seth.Harding@BeasleyAllen.com

***Counsel for Plaintiff***

PLAINTIFF'S ANSWERS TO DEFENDANTS'
INTERROGATORIES 4:22-MD-03047-YGR