UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

<u>CHAMBERS ORDER</u>

| Case No.:  22-md-03047-YGR (PHK) | Date:  June 17, 2025 |
|---|---|
| **Case Title:  *IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION*** | |
| Magistrate Judge:  Peter H. Kang | |
| Hearing Date:  June 12, 2025 | Court Reporter:  Kendra Steppler |

**Attorney for PI/SD Plaintiffs:** Audrey Siegel

**Attorney for Defendant YouTube:** Jenna Stokes

**PROCEEDINGS (IN CHAMBERS):  ORDER re YouTube Source "B"**

On May 23, 2025, the Parties filed a Joint Discovery Letter Brief regarding a dispute concerning YouTube's production of documents from a non-custodial source referred to as "source B" (for purposes of confidentiality).  The Court held a hearing on this matter on June 12, 2025.

In sum, the dispute centered on whether YouTube has been improperly redacting information about otherwise relevant (for purposes of discovery) documents from source B.  The Parties had previously negotiated a protocol under which YouTube would use Plaintiffs' search terms to search the metadata records for electronic files within source B.  The metadata resulting from those searches was compiled into charts similar to spreadsheets (referred to as CSVs, or text charts of "comma separated values").   Because of the volume and apparently to avoid prolonged negotiations over the search terms, the Parties here agreed that YouTube could redact these charts to redact privileged material, personally identifying information (PII), and (most importantly) for relevance.  After redaction, the CSVs were produced to the PI/SD Plaintiffs, who then had the option to select up to 1,000 documents from the resulting charts for actual production.

The dispute here arose because the first round of CSV charts provided by YouTube were improperly formatted.  YouTube reports that the redactions to that first round of charts were misapplied, resulting in illegibility and issues reading the charts.  After fixing the CSV charts and re-producing them with the redactions formatted correctly, Plaintiffs noted that some legible entries in the CSV charts which were originally unredacted were now redacted.  Plaintiffs brought four specific documents to YouTube's attention.  YouTube avers that one of the entries

on the CSV chart was redacted in error, and that the other three entries were redacted for relevance.  Plaintiffs disagree and contend that YouTube improperly redacted for relevance the other three entries in the chart—Plaintiffs argue that those three entries are within the scope of relevance for discovery and never should have been redacted. While maintaining that the redaction of the three documents was done properly, YouTube produced the four documents in order to avoid further dispute as to these documents.  Now concerned as to the scope of YouTube's redactions for relevance, Plaintiffs seek to negotiate a process for YouTube to unredact more CSV charts, so that Plaintiffs can determine whether YouTube undertook its redactions for relevance properly.  YouTube opposes this request, and argues that because the CSV charts were redacted for relevance, those redacted entries would need to be re-reviewed for privilege and PII.  YouTube argues that finding four documents out of thousands is not evidence of a widespread problem with YouTube's redactions and does not justify Plaintiffs' request, because unredacting will undoubtedly yield wholly irrelevant information and is not proportional to the needs of the case.

After hearing oral argument from counsel listed above, the Court resolved the dispute by verbal Order.  The Court hereby incorporates by reference the transcript of the hearing and Orders the Parties to abide by the verbal rulings of June 13, 2025.  This Order does not intend to alter those verbal rulings.

The Court finds that Plaintiffs' request for the production of twelve unredacted CSVs (randomly selected) and then the ability to seek production of up to 120 new documents from those CSVs is disproportionate to the needs of the case.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality:  "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse."  Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling).  Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

The fact that Plaintiffs have identified one document (out of thousands) that YouTube admits was redacted in error and identified three other documents which Plaintiffs argue are within the scope of relevance for discovery, does not justify the large-scale reopening of discovery from Source B requested. As represented by YouTube, unredacting the redacted entries in a CSV is not necessarily a simple matter, because the redacted entries would still need to be reviewed for privilege and PII. Each CSV has approximately 400 to 500 rows of entries, each spanning fifteen columns, with one column which can contain extensive notes. The expense, time, and delay in completing discovery stemming from Plaintiffs' requested relief outweighs the needs of the case, particularly where Plaintiffs have received productions from YouTube of many thousands of custodial documents and other non-custodial sources of documents. At the hearing on this dispute, Plaintiffs' counsel explained that the requested relief was simply based on a mathematical choice to obtain an additional ten percent of the CSVs in unredacted form and another then percent of the documents or tickets from those CSVs. That ten percent choice is not based on anything specifically tied to the substance of the CSVs themselves or the contents of the documents already produced, but appears to be a proposal to seek a roughly reasonable number of unredacted CSVs for further inspection.

The Parties' briefing devotes argument as to the propriety of redactions for relevance. The dispute here is distinguishable from most, if not all, of the case law cited by the Parties, because here the Parties themselves agreed on a procedure which included redactions for relevance. Had the issue been raised at the outset of discovery or implemented unilaterally by YouTube, that case law would be more germane to the dispute at hand. *See Magana-Munoz v. W. Coast Berry Farms, LLC*, 2022 WL 6584545, at *2 (N.D. Cal. Sept. 29, 2022) ("'Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive.' Redactions are highly disfavored where there is a protective order in place.") (citations omitted). However, the fact that Plaintiffs and YouTube agreed to this process provides further context, and militates caution before proceeding down a path that would risk undoing that agreement entirely. The fact that Plaintiffs seek 12 unredacted CSVs and 120 additional documents is all predicated on the assumption that there is a widespread problem here, based on suspicion that a substantial number of the redactions were implemented incorrectly—or worse, either recklessly or intentionally—so as to avoid production of otherwise relevant documents. Viewed in the context of the record presented, Plaintiffs suspicions do not justify the extent of the requested relief. As YouTube has pointed out, at least one court has recognized that the production of ESI is not held to a standard of perfection. [Dkt. 1974 at 12 (citing *Chen-Oster v. Goldman Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012)].

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other

source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P.
26(b)(2)(C)(i).

YouTube has admitted that one document was redacted in a CSV in error and YouTube
produced it after the issue was raised by Plaintiffs' counsel.  At the June 13, 2025 hearing, the
Parties notified the Court that they agreed to unredact the descriptions and excerpts of the four documents which were the genesis of this dispute.  The CSV entry
which YouTube admits was redacted in error states in part, "I find youtube recommendations
extremely distracting because they often encourage me to watch more videos than I originally
intended, which generally reduced my productivity" (CSV entry for GOOG-3047MDL-
05728899), and the produced document corresponding to this CSV entry states, "If we really put
the user first, it seems like [making YouTube recommendations configurable] would give people
a valuable option to help them balance online time and curb excessive watching behavior. This
seems especially useful and important for young people, who may have yet developed the skills
to moderate the attention investment."  [Dkt. 1975-1 at 8-9 (quoting ticket GOOG-3047MDL-
05872628)].  Plaintiffs pointed out that this document was not produced from any other
custodian or non-custodial source, and thus argue that the only source of this highly relevant
document is YouTube source "B."  Because of the relevance Plaintiffs attribute to this CSV entry
and its corresponding document, Plaintiffs mistrust YouTube's approach to redacting for
relevance across all of the CSVs produced.

In briefing and at oral argument, YouTube emphasized that it undertook two rounds of
quality checking to address any potential issues in the procedures and team of personnel involved
in performing the redactions here.  However, YouTube had no information on whether the
quality control process used twice by YouTube (and its counsel and eDiscovery vendor Consilio)
included investigating why this particular CSV entry for this document was redacted (where
YouTube agrees the redaction was an error), under what standard or justification the redaction
was made, whether any corrective training or other action was taken to ensure a change in any
erroneous practices by the contract attorney and supervising attorneys involved, or whether there
was any specific review or quality check of any of the other redactions implemented by the
person directly involved to determine if other documents were also improperly redacted.

While Plaintiffs' specifically requested relief is rejected, the Court is concerned at the
lack of information about the quality checking process here and understands why suspicions may
arise about the scope of redactions for relevance.  *Kellman v. Whole Foods Mkt. Calif., Inc.*,
2021 WL 4476779, at * 2 (N.D. Cal. Sept. 30, 2021) ("[U]nilateral redaction of irrelevant or
nonresponsive material from otherwise responsive documents gives rise to suspicion that
relevant material harmful to the producing party has been obscured and tends to make documents
confusing or difficult to use.") (quoting *Doe v. Trump*, 329 F.R.D. 262, 279 (W.D. Wash. 2018));
*see also Magana-Munoz*, 2022 WL 6584545, at *2 ("[U]nilateral redactions [for relevance] do
little more than breed suspicion between the parties, generate discovery disputes, and invite
unnecessary intervention by the court.").

Accordingly and in light of the record presented, as directed at the June 13, 2025 hearing,
the Court **ORDERS** as follows:

1) With regard to admittedly erroneous redactions to the CSV entry for GOOG-3047MDL-05728899 (which apparently correspond to ticket GOOG-3047MDL-05872628), identify in the declaration the names, titles, and employers/affiliation of both the person(s) who redacted that entry erroneously and the person(s) who supervised and trained the person(s) who made the redactions.  Also, counsel shall attest to whether any corrective training or other actions specific to the persons involved in making this redaction were taken, and whether or not there was any specific review or quality check of any of the other redactions implemented by the person(s) directly involved to determine if other documents were also erroneously redacted by such person(s).

2) Plaintiffs were granted leave to identify five CSVs to YouTube.  YouTube was ordered to lodge both the redacted and unredacted versions of those CSVs with the Court for *in camera* review by June 16, 2025.  *See, e.g., Beauchem v. Rockford Prods. Corp.*, 2002 WL 1870050, at *2 (N.D. Ill. Aug. 13, 2002) (district court conducted *in camera* review of documents redacted for relevance).  As of the date of this Order, the Parties have already complied with these directives.

3) At the hearing, the Court **ORDERED** counsel for YouTube (who argued this dispute and who was apparently involved in training and supervising the team of lawyers conducting the review and redactions) to personally review those five CSVs identified by Plaintiffs and the redactions thereto.  By no later than **June 23, 2025**, counsel for YouTube is **ORDERED** to file a declaration under oath and as an officer of the Court addressing the following:

   a. Whether counsel has personally reviewed each of the redacted entries and the corresponding unredacted original text of each, in the five identified CSVs;

   b. Whether counsel reasonably believes each of the redactions in those five CSVs was proper and in accordance with an objectively reasonable, good faith standard for redacting material for lack of relevance (for purposes of discovery);

   c. An explanation of the basis for counsel's belief that each of the redactions for relevance was proper;

   d. What standard for "relevance" counsel used to evaluate the propriety of the redactions; and

   e. If counsel avers that, after review, any of the redactions in these five CSVs was in error, counsel shall identify in the declaration the names, titles, and employers/affiliation of the person(s) who redacted any such entry erroneously, and of the person(s) who supervised and trained those who made

the redactions.

4) In briefing and at oral argument, counsel for Plaintiffs further requested leave to serve supplemental expert reports which could take into account and cite the YouTube Source B documents. Any such request to add to the case expert discovery schedule should be directed to the presiding District Judge. To the extent Plaintiffs have addressed this requested relief to alter the case schedule to the undersigned, the request is **DENIED WITH PREJUDICE**.

5) Except as addressed otherwise by this Order, the remainder of Plaintiffs' motion to compel here is **DENIED WITHOUT PREJUDICE**.

6) Nothing in this Order prohibits the Parties from reaching agreement on production of a different number of unredacted CSVs from source B (with any appropriate clawback provision to address concerns about inadvertent production of privileged or PII material) and additional tickets from such CSVs. As the Parties are well aware, the Court encourages the Parties to negotiate and attempt in good faith to reach reasonable resolutions of discovery disputes.

**IT IS SO ORDERED.**

Dated: June 23, 2025

