1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN FRANCISCO DIVISION

7

8  IN RE: SOCIAL MEDIA ADOLESCENT          Case No. 22-md-03047-YGR   (PHK)
   ADDICTION/PERSONAL INJURY
9  PRODUCTS LIABILITY LITIGATION           **ORDER RE: ELECTRONICALLY
                                           STORED INFORMATION FROM
10                                         BELLWETHER PLAINTIFFS'
                                           ADDITIONAL ONLINE ACCOUNTS**
11
                                           Re: Dkt. 1957
12

13

14

15                          **INTRODUCTION**

16          This Multi-District Litigation ("MDL") has been referred to the undersigned for discovery

17  purposes.  *See* Dkt. 426.  During discovery in this action, the Court addressed, and the Parties

18  resolved, a prior dispute over the production of electronically stored information ("ESI") from the

19  online and mobile app accounts of the Bellwether Plaintiffs, as reflected in Discovery Management

20  Order ("DMO") No. 8.  Dkt. 1025 (DMO No. 8).  That dispute involved identifying the relevant

21  apps and accounts, followed by a selection process to prioritize discovery from certain apps and

22  accounts.  *Id.*  Now pending before the Court is a joint letter brief between the Bellwether Plaintiffs

23  and the Defendants regarding whether the Bellwether Plaintiffs should be required to produce ESI

24  from their online accounts for various additional apps and services.  [Dkt. 1957].  The Court finds

25  the dispute suitable for resolution without oral argument. Civil L.R. 7-1(b).  For the following

26  reasons, the Court **DENIES** Defendants' request to compel discovery.

27                          **LEGAL STANDARDS**

28          The generally applicable legal standards for discovery are well-known.  The Court has broad

United States District Court
Northern District of California

United States District Court
Northern District of California

1    discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d

2    1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and

3    their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S.

4    Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The Court's discretion extends to crafting

5    discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v.

6    Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery

7    narrowly and to dictate the sequence of discovery").  For example, the Court may limit the scope of

8    any discovery method if it determines that "the discovery sought is unreasonably cumulative or

9    duplicative, or can be obtained from some other source that is more convenient, less burdensome,

10   or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

11          Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

12   regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

13   to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*  Relevancy

14   for purposes of discovery is broadly defined to encompass "any matter that bears on, or that

15   reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *In

16   re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v.

17   Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User

18   Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021)

19   ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for

20   purposes of trial.") (alteration omitted).

21          While the scope of relevance is broad, discovery is not unlimited.  *ATS Prods., Inc. v.

22   Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of

23   discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

24   Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope

25   of permissible discovery.  Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1)

26   emphasize the need to impose reasonable limits on discovery through increased reliance on the

27   commonsense concept of proportionality: "The objective is to guard against redundant or

28   disproportionate discovery by giving the court authority to reduce the amount of discovery that may

1    be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

2    requirement] is intended to encourage judges to be more aggressive in identifying and discouraging

3    discovery overuse."  In evaluating the proportionality of a discovery request, the Court considers

4    "the importance of the issues at stake in the action, the amount in controversy, the parties' relative

5    access to the information, the parties' resources, the importance of the discovery in resolving the

6    issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

7    Fed. R. Civ. P. 26(b)(1).

8        The party seeking discovery bears the burden of establishing that its request satisfies the

9    relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285

10   F.R.D. 481, 485 (N.D. Cal. 2012).  Further, "a party seeking discovery of relevant, non-privileged

11   information must show, before anything else, that the discovery sought is proportional to the needs

12   of the case."  *Gilead Sciences, Inv. v. Merck & Co.*, 2016 WL 146574 at *1 (N.D. Cal. Jan. 14,

13   2016).

14       The resisting party has the burden to show that the discovery should not be allowed.  *La.*

15   *Pac.*, 285 F.R.D. at 485.  The resisting party must specifically explain the reasons why the request

16   at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments.  *Id.*;

17   *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal

18   discovery principles of the Federal Rules defendants were required to carry a heavy burden of

19   showing why discovery was denied.").

20       As part of its inherent discretion and authority, the Court has broad discretion in determining

21   relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th

22   Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  Similarly, a district court's

23   determination as to proportionality of discovery is within the district court's discretion. *See Jones*

24   *v. Riot Hospitality Group LLC*, 95 F.4th 730, 737–38 (9th Cir. 2024) (finding district court did not

25   abuse discretion on proportionality ruling).  "[T]he timing, sequencing and proportionality of

26   discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, 2020 WL 6108643 at *1

27   (N.D. Cal. Oct. 14, 2020).

28                                **DISCUSSION**

United States District Court
Northern District of California

1     This discovery dispute originates from an issue that was addressed over a year ago and has

2   been managed since that time.  The context of this dispute illuminates the outcome.  Starting on July

3   10, 2024, the Parties filed a Joint Discovery Brief addressing a dispute concerning the Bellwether

4   Plaintiffs' electronic devices.  [Dkt. 999].  In that brief, Defendants argued that they required full

5   forensic imaging of all the electronic devices (such as smartphones, tablets, and laptops) that the

6   Bellwether Plaintiffs used routinely.  *Id.* at 10–12.  One reason asserted for that scope of discovery

7   was that "[f]orensic imaging is also necessary to understand how Plaintiffs used device-specific

8   features and controls, and other non-Defendant applications.  While Plaintiffs admit using other

9   apps—including other social media, video game and streaming services—they have not disclosed

10  the apps they used or the extent of their usage." *Id.* at 11.  Plaintiffs opposed the requested relief on

11  several grounds, including lack of proportionality.  *Id.* at 12–14.

12     The Court held a hearing on this dispute on July 11, 2024, and subsequently issued DMO

13  No. 8 on July 19, 2024.  [Dkt. 1025].  While the Court denied Defendants' requests for full forensic

14  imaging of every device, the Court addressed the identification of apps used by the Bellwether

15  Plaintiffs as follows:

16         [T]he PI Plaintiffs are **ORDERED** to provide a full list and chart to
           the Defendants of all the applications which are currently on the
17         relevant Bellwether PI Plaintiffs' devices.  Because each app
           developer (and the operating system it interacts with) can differ in
18         terms of the types and naming conventions for user logs, data bases,
           and relevant app data, providing that list is proportional, relevant, and
19         necessary for the Parties to meaningfully discuss the files and data
           sought from each device.
20
           With this information in hand, the Parties are **ORDERED** to meet
21         and confer to determine which data sets are to be produced from the
           PI Plaintiffs devices which includes: application usage data, browser
22         history data, location data, communication logs, media files,
           metadata, application settings, and other data files reasonably and in
23         good faith identified by Defendants as relevant to how the device user
           used that device during the relevant time period.
24
    *Id.* at 6.
25
       The Court further directed the Parties to engage in continued meet and confer efforts to
26
    facilitate the collaborative production of ESI from the Bellwether Plaintiffs' devices:
27
           The [Personal Injury] Plaintiffs are **ORDERED** to be forthcoming in
28         producing and identifying the various relevant settings for each

United States District Court
Northern District of California

1
2

> device and what databases are on the devices in order to allow for meaningful meet and confers and in order to avoid a full forensic turnover. Defendants are admonished not to overreach unreasonably in their request for data and files from the devices.

3      *Id.*

4          The Court ordered the Parties to file Status Reports on the production of ESI from these

5      devices. *Id.* at 7. In the July 19, 2024, Status Report, the Parties reported that:

6
7
8
9

> Plaintiffs produced a spreadsheet to Defendants that Plaintiffs represent to includes device model numbers and the application lists available to Plaintiffs for nearly all Plaintiffs' devices . . . . Because the spreadsheet was only recently received, Defendants are reviewing and will evaluate the information just produced. The Parties intend to meet and confer further on the identification of relevant devices and applications.

10     [Dkt. 1026 at 2]. In the July 26, 2024, Status Report, the Parties reported that "Plaintiffs produced

11     a list of the applications currently on all currently accessible Main Devices (23 out of 27) of the

12     Plaintiffs' Main Devices along with an 'identifier' on July 19." [Dkt. 1034 at 9]. In their August 2,

13     2024, Joint Status Report, the Parties reported that:

14
15
16
17
18
19

> Plaintiffs have agreed to (1) investigate the application data Plaintiffs are able to retrieve themselves, (2) consider the application data Defendants may retrieve by use of authorizations, and (3) consider providing additional information for each application (e.g., installation date, and amount of application data) so that the Parties can explore the best means of collecting this information. Thereafter, the Parties will meet and confer to determine whether authorizations are required, and if so, the content of the authorization that would allow Defendants to request third-party application data for the applications used by Plaintiffs during the Relevant Time Period.

20     [Dkt. 1047 at 7].

21          After the Discovery Management Conference held on August 8, 2024, the Court ordered:

22
23
24
25
26
27

> the Parties to meet and confer by no later than August 16, 2024, regarding what should be included in the chart of missing device identifying information, after which Plaintiffs should begin supplementing the chart of agreed upon information. Based on Defendants' representations, the identifying information should consist of each device's make, model, current operating system, and currently loaded apps. The Parties are free to negotiate further information—with the understanding that if Defendants insist on more information (such as information that can only be gleaned after full forensic imaging, e.g., prior operating systems) they must accept longer delay before receiving the information.

Dkt. 1070 at 2–3 (DMO No. 9).

28

United States District Court
Northern District of California

1    In the August 19, 2024, Status Report, the Parties reported that "[a]s of August 16, Plaintiffs

2    have provided[] . . . [a] list of applications on 20 devices." [Dkt. 1075 at 4]. The Parties also

3    reported that:

4    Plaintiffs provided a list of all applications on the Main Devices in
     Appendix A. Plaintiffs are currently working with their forensics
5    vendor to identify the best way to compile various app usage data
     points from these device images in an effort to assist in identification
6    of relevant applications in discussions with Defendants.

7    *Id.*

8    In their September 6, 2024, Status Report, the Parties reported that Plaintiffs' list of

9    applications now covered 21 devices. [Dkt. 1121 at 4]. By the September 20, 2024, Status Report,

10   that "complete list of applications" covered 34 of the Bellwether Plaintiffs' devices. [Dkt. 1166 at

11   4]. Those 34 devices constitute the "Main Devices" ordered by the Court to be the subject of ESI

12   discovery from the Bellwether Plaintiffs at issue at the time. *Id.* at n.1.

13   In parallel with the production of information concerning apps on the Bellwether Plaintiffs'

14   Main Devices, the Court also ordered Plaintiffs to create full forensic images of these devices and

15   then use agreed-upon search terms to produce non-privileged, responsive electronic documents

16   stored on these devices. *See* Dkt. 1070 at 2–3 (DMO No. 9). In the Parties' Status Report of

17   November 14, 2024, the production of text-searchable ESI from all Plaintiffs' Main Devices was

18   reported to be substantially complete. [Dkt. 1329 at 3].

19   The Court provides the details of the prior Court Orders and the Parties' prior discovery

20   efforts because this context informs the current dispute. Here, Defendants now argue that they need

21   discovery from specific data sources regarding the Bellwether Plaintiffs' accounts with "other social

22   media applications like Reddit, Discord, and Twitch; video games; and dating and wellness

23   applications." [Dkt. 1957 at 10]. Defendants argue that they received redacted forensic images of

24   Plaintiffs' devices on November 5, 2024, and from that time until February 2025, Defendants

25   worked with their consultants to review those device images. *Id.* at 12. Defendants argue that this

26   review led to their current request for ESI regarding these new data sources, that is, these apps and

27   accounts. *Id.*

28   Plaintiffs object and point out that Defendants did not make the explicit request for this

6

1    additional ESI until approximately one week before the close of fact discovery.  *Id.*  Plaintiffs argue

2    that Defendants could have raised this request for ESI from these other apps and accounts months

3    earlier, because Plaintiffs identified all apps downloaded on their devices earlier in 2024.  *Id.* at 13.

4    Plaintiffs oppose Defendants' motion on the grounds that it is untimely (because Defendants waited

5    too long to raise these other apps), seeks discovery that is not proportional to the needs of the case,

6    is unduly burdensome, and seeks data that is not shown to be relevant (such as Defendants' request

7    for ESI from music streaming services and a language-learning app).  *Id.* at 13–14.

8          The Court **DENIES** Defendants' motion and the requested relief.  As the record makes clear,

9    the Court engaged with the Parties from mid- to late 2024 to implement an iterative process for the

10   production of ESI from the Bellwether Plaintiffs' Main Devices.  This process included providing

11   a complete list of all apps downloaded on those devices, which Defendants have had for all 34

12   devices since September 2024 (and which they had for 23 devices since July 2024).  Defendants'

13   assertion that post-November 2024 consultant review of the forensic images was necessary to

14   identify the recently disclosed apps and accounts is unpersuasive.  They had knowledge of the apps

15   loaded on each Main Device for several months prior.

16         Further, as noted above, the Parties were directed, and confirmed in August 2024, that they

17   had engaged in meet and confer efforts to establish a process for identifying those apps (and app

18   vendors) from whom data could be obtained directly or through written authorizations.  With the

19   list of apps loaded on each device in hand, Defendants could have raised any of the 200 apps for

20   which they now seek new discovery.

21         Finally, as noted above, the Parties engaged in a process to agree upon search terms to be

22   run against full forensic images of Plaintiffs' Main Devices.  Those search terms were developed

23   with the knowledge of which apps were loaded on those devices.  Again, with the list of apps on the

24   Main Devices in hand, Defendants could have (and presumably did) include search terms that

25   covered ESI from any app or account stored on the devices, including the 200 apps newly identified.

26         Defendants' argument that discovery from these accounts and apps was sought by document

27   requests first served in May 2024, and that Plaintiffs' responses to those document requests are

28   insufficient to bar discovery now, is chronologically retrograde.  [Dkt. 1957 at 10].  As detailed

United States District Court
Northern District of California

7

1    above, the entire original dispute over forensic imaging and scope of ESI discovery from the

2    Bellwether Plaintiffs' devices stemmed from the dispute over those very document requests.

3           A full page of Defendants' argument in the present brief overlooks the Court's detailed

4    written orders and verbal directives regarding the completion of ESI discovery from the Bellwether

5    Plaintiffs' devices.  To the extent Defendants are essentially seeking reconsideration of the Court's

6    resolution of the ESI discovery issues involving the Bellwether Plaintiffs' devices, the instant

7    motion is procedurally improper and **DENIED** under Civil L.R. 7-9.

8           The Court finds that Defendants have failed to demonstrate how data from apps such as

9    music streaming services or language-learning apps fall within the scope of relevance in this case.

10   Defendants do not address each app or even each category of app separately—their only argument

11   as to relevance is that "many of the sources are social media platforms that contain features similar

12   to Defendants' platforms; others are applications that forensic analysis has shown Plaintiffs spend

13   a substantial amount of time using, including streaming services and gaming applications." [Dkt.

14   1957 at 11].  At a broad level, Plaintiffs allege that social media addiction, not general smartphone

15   or tablet use, harmed them.  There is a logical disconnect in Defendants' assertions here because

16   Defendants do not explain how the requested discovery is relevant to alternate causation in situations

17   where a person uses their device to listen to music over a streaming service for a substantial amount

18   of time.

19          Fundamentally, Defendants' motion seeks discovery that is not shown to be proportional to

20   the needs of the case.  The untimeliness of Defendants raising these specific 200 apps undercuts

21   their requested relief.  As discussed above, Defendants have possessed discovery identifying all the

22   apps on Plaintiffs' devices since mid-2024.  *See, e.g.*, Dkts. 2002-2 through 2002-8 (copies of June

23   19, 2024, correspondence from Plaintiffs to Defendants disclosing apps on their devices).  The Court

24   ordered Plaintiffs to submit the actual correspondence disclosing their apps on their devices.  [Dkt.

25   1993].  The Court has reviewed those disclosures made in June 2024, and they include express

26   disclosure of other social media apps identified by Defendants, such as Reddit and Discord; gaming

27   apps such as Steam and Boardgamearena; and wellness apps such as Fitbit.  *Id.*  Further, Bellwether

28   Plaintiffs' correspondence shows that some Plaintiffs disclosed to Defendants the streaming services

United States District Court
Northern District of California

1    or apps they used and produced data from streaming apps such as AppleTV in September 2024.

2    [Dkts. 2002-10 through 2002-12].

3          The Court ordered Defendants to submit copies of the correspondence in which they

4    requested ESI from the newly identified data sources and has reviewed that correspondence. [Dkt.

5    1993]. Defendants made those requests on March 26 and March 27, 2025, just a week before the

6    formal close of fact discovery. [Dkt. 2004]. Defendants had many months during the fact discovery

7    period to use the disclosed information to craft search terms, seek discovery from third-party app

8    vendors, request that Plaintiffs obtain and produce data downloaded from the app accounts, and

9    obtain authorizations from Plaintiffs to access such data from vendors. They also had ample time to

10   review the produced ESI, which was substantially complete by the end of 2024, and to make follow-

11   up requests well before the close of fact discovery.

12         Further, Defendants have not explained how or why the search terms they negotiated for

13   searching Plaintiffs' forensic images were insufficient to capture some, if not many, of the ESI

14   documents now sought, especially given that Defendants possessed the complete list of apps

15   downloaded on each device. Finally, Defendants' receipt of forensic images that included usage

16   data for the newly identified apps, and their reliance on those images to support the additional

17   discovery sought, underscores that the requested discovery now risks duplication. Dkt. 1957 at 11

18   ("others are applications that forensic analysis has shown Plaintiffs spent a substantial amount of

19   time using").

20         The Court acknowledges Defendants' representation that Judge Kuhl has ruled that some of

21   the discovery requested here should proceed in the JCCP matter. However, as Plaintiffs point out,

22   the fact discovery schedule in that matter is on a different track and involves different phases than

23   the fact discovery schedule here, which has closed except for certain agreed-upon or Court-ordered

24   exceptions. Fundamentally, Defendants' argument relying on recent JCCP rulings does not explain

25   why they failed to include the requested discovery in their 2024 discussions about search terms or

26   vendor/third-party authorizations—or, to the extent the 2024 discovery efforts did capture these

27   apps, why raising the requests now is non-duplicative.

28         Since the close of fact discovery, the Court has urged counsel to focus on completing agreed-

United States District Court
Northern District of California

United States District Court
Northern District of California

1    upon "clean up" depositions and other discovery. These efforts are essential to keeping the cases on

2    schedule for pre-trial and trial.  Defendants' decision to raise issues regarding 200 newly identified

3    apps and voluminous new ESI data just before the close of fact discovery, despite having had months

4    to do so, is disappointing and raises the specter of gamesmanship.  The Court would be even more

5    concerned if Defendants had relied on these ESI requests to unduly delay final depositions or to

6    argue for extensions of expert discovery.  *HDMI Licensing Adm'r, Inc. v. Availink, Inc.*, No. 22-

7    CV-06947-EKL (PHK), 2025 WL 799036, at *10 (N.D. Cal. Mar. 13, 2025) ("The Court is not

8    blind to the tactical use made by [Defendant's] timing of raising this [discovery] dispute [in an

9    attempt to extend the case schedule].").

10         Fact discovery must come to an end, even in the most complex cases.  The Parties would be

11   well-served to focus their efforts on finalizing all outstanding discovery and preparing for trial.

**CONCLUSION**

12         For all the reasons discussed herein, the Court **DENIES** Defendants' motion to compel.

13   This **RESOLVES** Dkt. 1957.

14

15

16   **IT IS SO ORDERED.**

17   Dated: July 17, 2025

18   _____
     PETER H. KANG
19   United States Magistrate Judge

20

21

22

23

24

25

26

27

28