## Exhibit 6

| From: | Yeung, Christopher |
|---|---|
| To: | Matthew Nussbaum; Kevin Closs; Claire O"Brien |
| Cc: | Faith Gay; Franicevic, Zora F; Lange, Nathan; Nelson, Christine A; Simonsen, Ashley M |
| Subject: | RE: Social Media MDL, N.D. Cal. No. 22-03047 |
| Date: | Monday, July 21, 2025 2:41:00 PM |

Matt,

Thank you for speaking on Friday.  Your email below does not accurately capture our discussion.  To avoid belaboring the issue, I write simply to note the following:

- Your claim that the NY Executive Agencies have complied with the agreement they struck in January merely by running searches is incorrect.  The NY Executive Agencies agreed to review the hits and family members for responsiveness so that productions can be made.  It is nonsensical that we would have announced to Judge Kang the resolution of the our discovery disputes if the NY Executive Agencies' only obligation were to run terms, without any commitment to review the documents that were brought up by the hits.

- The suggestion that we have not diligently sought to confer, or are not taking the NY Executive Agencies' burden, relevance, proportionality, and privilege concerns under consideration, is inaccurate.  We had extensive discussions about those topics in prior conferrals, and the NY Executive Agencies' considerations were accounted for in the document discovery agreement that was struck in January 2025.

- Your position that Section H.2 of Judge Kang's Standing Order does not apply to third parties makes no sense.  As an initial matter, numerous disputes with third parties (or entities that claimed to be third parties, including the New York Executive Agencies), have been presented to Magistrate Judge Kang consistent with Section H of his Standing Order.  Indeed, just last week Judge Kang heard argument on a dispute submitted in accordance with Section H of his Standing Order between Meta and third-party Frances Haugen.  Indeed, Section H.1 makes clear that third parties are included in all of Section H's references to "Parties": "1. Counsel for all Parties (or third parties) involved in the dispute shall undertake reasonably diligent efforts to confer and attempt to negotiate a resolution of the dispute . . . ."  It would be nonsensical for H.1 to set forth requirements for discovery-related conferrals among the Parties and/or third parties, but then not subject those same third parties to the requirements of H.2 through H.4, which set forth the procedures that would follow if an H.1 conferral does not resolve the discovery dispute.

- Because the NY Executive Agencies are refusing to engage in the joint letter briefing process set forth in Judge Kang's rules, we will (as we told you on Friday) be filing an administrative motion early this week asking Judge Kang to confirm that the NY Executive Agencies must comply with Section H of the Court's Standing Order, including participating in the filing of a joint letter brief in the MDL, and to set a deadline for the brief.  As explained Friday, we will note in the administrative motion that the NY Executive Agencies' position is that they are not subject to Judge Kang's discovery standing order, including the letter briefing requirement or discovery disputes, because they claim to be "third parties."

Best,

Chris

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Saturday, July 19, 2025 4:16 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

[EXTERNAL]
Chris,
Thank you for taking the time to meet and confer yesterday. We write to memorialize what was discussed.
First, we offered to discuss, agency-by-agency, the type of relevant, non-privileged discovery which Meta seeks and that is likely to be found within the Executive Agencies. We referenced, by way of example, the OMH training materials you mentioned in your July 16 email and our willingness to conduct targeted searches to identify such documents. You declined to engage in such a discussion. Meta never wavered from its position that the Executive Agencies must review all documents that hit on Meta's search terms and their family members and was unwilling to discuss any reasonable negotiations in light of the burden, irrelevance, proportionality, and privilege concerns that the Executive Agencies raised. Meta's position is that, regardless of these concerns, the Executive Agencies must review the 633,000 documents classified as "presumptively privileged."
Second, we noted our position that the conferral was undertaken pursuant to FRCP 45. We expressed our disagreement with Meta's position that the conferral was a "formal H.2. conferral" under Judge Kang's standing discovery order. We pointed out that, while H.1 makes specific reference to "third parties" – which the Executive Agencies are – H.2 applies only to

parties. Not only is this evidenced by the explicit reference to "Parties" but also to the requirement that an H.2. conferral take place between "lead trial counsel." As third parties, the Executive Agencies do not have "lead trial counsel." Furthermore, any H.2 conferral would have had to take place in person and could only follow "reasonably diligent efforts to confer and attempt to negotiate a resolution of the dispute" – as noted above, Meta has made no such efforts.

Third, we explained that we have adhered to the agreement reached by Meta and the Executive Agencies in January regarding the maximum total number of hits that could be generated by Meta's search terms. Search terms were ultimately agreed to with hit counts within that maximum and, pursuant to that agreement, the Executive Agencies have reviewed nearly 200,000 documents at great expense, and produced nearly 11,000. We noted that both sides reserved all rights at the time the agreement was made. We also noted that Meta took the position throughout that it was entitled to party discovery pursuant to FRCP 26 and 34. We explained at the time why that position was wrong. Recent legislation has clarified the point. Fourth, to the extent Meta seeks to compel discovery, we explained that the proper venue is in federal court in New York, pursuant to FRCP 45.

We remain willing to reach a mutually agreeable compromise without court intervention that ensures Meta obtains the relevant, non-privileged materials it needs, if any, that are located within the Executive Agencies, that are proportional to the needs of the case, and that can be identified without placing significant burden on the non-party agencies.

Thank you,
Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
--------------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Thursday, July 17, 2025 12:15 PM
**To:** Kevin Closs <kcloss@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

We have circulated a calendar invite with dial-in information for 4 pm ET tomorrow.  We will be deeming the call an H.2 conferral, and if we end up briefing the issue, you can

note your objection to it being so designated in your section of the joint letter brief.

With respect to your questions, please explain their relevance. The NY Executive Agencies reached an agreement about their document discovery obligations (which I remind you again, resolved separate sets of document requests served pursuant to Rules 34 and 45). The issue now is whether the NY Executive Agencies should be permitted to unilaterally decide not to follow through with that agreement. How do any of the questions that you pose relate to that issue?

With respect to the recent statute passed by the NY State Legislature, can you please explain how you believe it "rejected" Judge Kang's order, or the District Court's subsequent affirmation of Judge Kang's order as to New York? To the extent you believe that the recent statute acts as such a rejection, do the NY Executive Agencies intend to ask Judge Kang for relief from that order based on the new statute?

Best,

Chris

**From:** Kevin Closs <kcloss@selendygay.com>
**Sent:** Wednesday, July 16, 2025 5:23 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

<mark>[EXTERNAL]</mark>
Chris,

We disagree with much of your email and note that you have still not responded to many of our points—in particular, your continued refusal to acknowledge that Judge Kang's September 6 Order has been rejected in statute by the New York State Legislature. We are continuing to review the substance of your email and reserve all rights to respond as necessary or appropriate to provide our positions in writing or to correct the record.

To ensure there is no delay for scheduling a productive discussion regarding reasonable discovery, we are available to meet and confer on the Rule 45 subpoenas at 4 PM on Friday, July 18. For the record, we do not agree that this is a formal H.2. conferral. Please send a link.

In advance of the meet-and-confer, in order to facilitate our conversations with our client

about the path forward, please provide the following information: 1) a description of the type of documents Meta believes are relevant to its defenses, with specific references to the Complaint and Meta's answer, and the basis for believing the agencies possess such documents; 2) the number of documents produced by the various agencies of the states of each other state attorney general plaintiff, broken down by agency; 3) the number of agency witnesses who have been deposed, the agencies at which they work, and their identities; and 4) Meta's position as to when fact discovery closes and its justification for that position.

We continue to be willing to reach a mutually agreeable compromise.

We reserve all rights.

**Kevin Closs**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
-----------------------------------------------
+1 212.390.9082  [O]
+1 732.687.4547  [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Wednesday, July 16, 2025 1:55 PM
**To:** Kevin Closs <kcloss@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

It is disappointing, though not surprising, that the NY Executive Agencies seem intent on unnecessarily relitigating settled issues and causing delay, rather than fulfilling their agreed-upon discovery obligations.  Indeed, rather than accept any of the 10.5 hours-worth of availability that we offered across three different days for our H.2 conferral, the NY Executive Agencies have countered with a single time – over a week after I requested the conferral – that overlaps with a Case Management Conference in this case.

Because of the overlapping court conference, we are unavailable for an H.2 conferral at 2 pm ET on Friday.  We are, however, available from 3:30 pm – 4:30, or 5 - 6 pm ET on Friday, July 18.  Please let us know if one of those works for you.  Again, please be prepared on our call to discuss a letter briefing schedule should our call not resolve the NY Executive Agencies' refusal to honor their document discovery agreements.

We also write briefly to address your specious substantive points:

- Jurisdiction of the MDL Court:  Counsel for the NY Executive Agencies has appeared in the MDL court for the purposes of litigating the document discovery sought by Meta, including filing a letter asking that Judge Kang stay his discovery order (ECF 1443), filing a status report identifying the then-existing discovery disputes between Meta and the NY Executive Agencies (ECF 1548), and appearing in-person through counsel at the January 16, 2025 Discovery Management Conference to report to Judge Kang that all disputes had been resolved through agreement (*e.g.*, DMC Tr. at 26:24-27:3 ([Claire] O'Brien: . . . . I'm pleased to report that we have resolved our issues . . . .")).  There is no legitimate basis for the NY Executive Agencies to now claim that the MDL court lacks jurisdiction over their attempt to breach the discovery agreement that they announced to the MDL court. While you point to FRCP 45, that offers the NY Executive Agencies no salvation. "[I]t is widely accepted that [the MDL's court's] authority extends to all pretrial proceedings, including governance of non-party, extra-district subpoenas." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 9065791, at *1 (S.D.N.Y. May 8, 2020).

- Ripeness:  There is no serious question that this dispute is ripe for an H.2 conferral.  Again, the NY Executive Agencies reached an agreement in January 2025 concerning their discovery obligations to Meta, but are now refusing to complete the agreed-upon task.  The NY Executive Agencies' attempt to re-trade on the agreement has been the subject of extensive written exchanges, as well as at least one videoconference conferral.  And to be clear, the document discovery agreement reached with the NY Executive Agencies provided the NY Executive Agencies with full transparency about the number the documents that would be subject to review before the NY Executive Agencies agreed to search terms, and nothing in Judge Kang's orders require Meta to re-negotiate a pre-existing discovery agreement with the NY Executive Agencies because the NY Executive Agencies have apparently changed their minds about the agreement they reached.

- Relevance:  In case it was not clear before, Meta believes that the NY Executive Agencies have highly relevant information, and are withholding from production some of the most relevant material.  For example, teen mental health issues are of core relevance to the litigation, and the NY Executive Agencies include several agencies whose primary responsibilities include teen mental health (e.g., the Office of Mental Health, Department of Health, the Office of Children and Family

Services, etc.).  The one OMH witness deposition we have taken already also has confirmed the agency's possession of highly relevant documents; for instance, the witness testified that she routinely conducts student mental health-related trainings for New York schools.  These training materials are not publicly available, have not been produced to Meta, and have no apparent basis for being withheld on the basis of any privilege.  For these and other reasons, we disagree completely with your claim that the agreed-upon search parameters have yielded only a small percentage of relevant, non-privileged documents.

- Privilege:  The NY Executive Agencies incorrectly claim that Meta has not engaged with or disputed the NY Executive Agencies' privilege claims.  For one, we have consistently noted the impropriety of the NY Executive Agencies decision to withhold as "presumptively privileged" nearly 82 percent of the documents that hit on Meta's search terms, without any human review, and based solely on search criteria like the mere presence of certain words like "privilege," and "Section 33.13."  The additional list of "presumptively privilege" search criteria – such as the search terms Edit*, Comment*, and Feedback – merely underscore the issue. As another example, the NY Executive Agencies are apparently withholding as "presumptively privileged" each and every piece of inter- or intra-agency communication, claiming that those documents may be protected by the deliberative process privilege.  But the deliberative process privilege does not offer such blanket protection, nor can the NY Executive Agencies make any showing about why the privilege should protect these documents, including because the NY Executive Agencies have not even reviewed those "presumptive privileged" documents that are being withheld yet.

- Meta Depositions of OMH and OCFS Personnel:  The NY Executive Agencies argue that because two of the five agencies have agreed to produce a total of three employees for depositions somehow excuses the NY Executive Agencies from honoring their document discovery agreements.  Not true.  If anything, the NY Executive Agencies refusal to honor their discovery agreements is preventing Meta from identifying witnesses with relevant information; two of the three deponents were alternative deponents that OMH and OCFS (respectively) offered in lieu of others that Meta noticed, and that Meta agreed to take in the spirit of compromise, and with a full reservation of rights in light of the significant deficiencies in the NY Executive Agencies' document productions.

Best,

Chris

---

**From:** Kevin Closs <kcloss@selendygay.com>
**Sent:** Tuesday, July 15, 2025 9:00 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Claire O'Brien <cobrien@selendygay.com>;
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

<mark>[EXTERNAL]</mark>

Chris,

We write in response to your July 10 email, purporting to demand a "formal H.2 conferral" with the Executive Agencies.

We reject your accusation that the Executive Agencies refuse "to honor the document production agreements that they reached with Meta." We continue to try to reach a resolution in good faith; you refuse to do so. Our January 16 agreement concerned the number of hits that would ultimately be brought in by search terms, and we at all times reserved all rights. The agreement did not contemplate the privilege issues the Executive Agencies have raised, i.e., that the bulk of documents are presumptively privileged and present a significant burden to review. Since May, we have explained to you that, following our review of nearly 200,000 documents from Meta's search terms, there has been very little, if any, relevant material yielded—a fact Meta has never denied. It would be unduly burdensome, unreasonable, and disproportionate for the Executive Agencies to conduct a privilege review of nearly 650,000 documents, particularly when no litigation party can even articulate the type of relevant, non-privileged information it expects to identify.

There are several additional issues with your email, which we outline below.

***First***, as a threshold matter, Discovery Standing Order ("DSO") section H.2 does not apply to the Executive Agencies. The Executive Agencies are non-parties participating in discovery pursuant to FRCP 45. The New York Legislature and Governor have confirmed that the Executive Agencies are non-parties to this litigation, and that the New York Attorney General does not control their documents, contrary to Judge Kang's erroneous September order and Judge Gonzalez Rogers' erroneous opinion affirming it. Per FRCP 45(d)(1), any purported litigation to enforce document subpoenas against the non-party Executive Agencies is appropriate in "[t]he court for the district where compliance is required." As the Executive Agencies are in New York, the Northern District of California does not have jurisdiction to adjudicate a discovery dispute in relation to the FRCP 45 subpoenas served on the Executive Agencies. The plain language of DSO section H.2 confirms that "a formal H.2 conferral" is the proper process for resolving disputes amongst "the Parties," not third parties. The preceding paragraph makes plain that third parties as distinct entities from "Parties."

***Second***, even if section H.2 did apply to the non-party Executive Agencies (which it does not), there is no basis for Meta to demand a "formal H.2 conferral," and the Executive Agencies object to Meta's attempt to summarily demand one. The DSO requires Meta to "undertake reasonably diligent efforts to confer and attempt to negotiate a resolution of the dispute" before purporting to request a "formal H.2 conferral" or filing any discovery motion. Meta has not done so. The record speaks for itself.

Meta now declines to provide any TAR cutoff to reduce the discovery universe or pay for the extensive privilege review it seeks.  As we explained at the June 17 meet-and-confer and our follow up correspondence, the Executive Agencies will have human reviewers conduct a privilege review, so identifying a TAR cutoff score of documents that are deemed non-responsive would materially reduce the burden of the review.   Meta also declined to pay for the privilege review it seeks, claiming that they are entitled to retroactive cost breakdowns from the Executive Agencies.  As we stated before, if Meta is open to discussing cost sharing for a privilege review, then we can consider sharing more detailed cost information.  Moreover, at no point has Meta ever engaged with – or even acknowledged – the recently-enacted legislation and New York State court ruling that confirmed the Executive Agencies' position on the applicable law.  Meta also never engaged with the Executive Agencies' positions on privilege, objected to those positions, or even explained what types of relevant documents it believes have been withheld.  Nor has Meta ever contested that the Executive Agencies' documents have very little if any relevance to the case.  Thus, the purported demand for a "formal H.2 conferral" on July 10 was deficient, even if the DSO did apply (it does not), as Meta has failed entirely to comply with its obligations under H.1.

***Third***, Meta's recent deposition of a non-party employee of the non-party Office of Mental Health ("OMH") demonstrates that Meta's positions on further document discovery from the Executive Agencies is patently unreasonable.  OMH has already facilitated an employee's deposition and has another scheduled; the non-party Office of Children and Family Services has also facilitated the scheduling of an employee's deposition.  Any insinuation that the non-party Executive Agencies have not participated in FRCP 45 discovery in good faith is false.

The Executive Agencies remain willing to voluntarily cooperate pursuant to the process outlined in FRCP 45 and reserve all rights. Consistent with what is stated above, we are available to meet and confer on Friday, July 18 at 2 p.m.

**Kevin Closs**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------------
+1 212.390.9082 [O]
+1 732.687.4547 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Tuesday, July 15, 2025 10:36 AM
**To:** Kevin Closs <kcloss@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin and Claire,

On Thursday, we offered conferral times of the next three business days but have yet to receive even the courtesy of a response.  Can you please let us know if you are available

for an H.2 conferral today at any of the times that we offered?  If not, please propose alternate times for our consideration.

Best,

Chris

**From:** Yeung, Christopher
**Sent:** Monday, July 14, 2025 1:10 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; 'Claire O'Brien' <cobrien@selendygay.com>
**Cc:** 'Faith Gay' <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; 'Matthew Nussbaum' <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin and Claire,

I still have received no response to my email from Thursday requesting an H.2 conferral. Can you please let us know if any of the proposed times work for you?  If none do, please propose alternate times.

Best,

Chris

**From:** Yeung, Christopher
**Sent:** Friday, July 11, 2025 12:21 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; 'Claire O'Brien' <cobrien@selendygay.com>
**Cc:** 'Faith Gay' <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; 'Matthew Nussbaum' <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin and Claire,

I am following up to see if the NY Executive Agencies are available at any of the times that I offered for today, Monday, or Tuesday to conduct the H.2 conferral.  Please let me know.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Thursday, July 10, 2025 8:43 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>; Simonsen, Ashley M <asimonsen@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

Thank you for your email.  Pursuant to Judge Kang's Discovery Standing Order, we write to request a formal H.2 conferral in an attempt to resolve our discovery dispute without judicial intervention.  We are available at the following times:
- 7/11: 12 pm – 2 pm; 3 pm – 5:30 pm
- 7/14: 2:30 – 3 pm; 4 pm – 5:30 pm
- 7/15: 12 pm – 2 pm; 3 pm – 5:30 pm

Please let us know what times work for you.  Please also be prepared to discuss on our call a schedule for exchanging our respective joint letter brief sections should we be unable to resolve our dispute.

As discussed previously, the NY Executive Agencies' refusal to honor the document production agreements that they reached with Meta and reported to the Court earlier this year is improper.  Your email confirms that the NY Executive Agencies are simply refusing to review two-thirds of the documents brought up by the searches they agreed to run based on (among other things) highly questionable "presumptive privilege" criteria.

We also decline your request that we propose TAR cutoff criteria at this time.  On our last call, Claire told us that she did not think TAR could be used to assist with privilege review, and insisted that such privilege review must be completed through human review.  If the NY Executive Agencies are unwilling to use TAR to conduct privilege review, it is unclear why we should propose TAR cutoff criteria.

Likewise, Meta declines your request that the company pay for a privilege review.  The NY Executive Agencies already agreed earlier this year to review the universe of documents that are at issue.  There is no basis for the NY Executive Agencies to now insist that Meta pay for the NY Executive Agencies to complete that document review,

especially when the NY Executive Agencies have refused to share both the amount of fees incurred to date solely for document review, or the basis for their estimate for completing their review.

Best,

Chris

---

**From:** Kevin Closs <kcloss@selendygay.com>
**Sent:** Friday, June 27, 2025 1:42 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Claire O'Brien <cobrien@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

<mark>[EXTERNAL]</mark>
Chris,

Thank you for meeting with us last week. We note that your June 17 email did not include Meta's promised follow-up items, namely: (1) a proposed cutoff score for using technology assisted review ("TAR") to meaningfully reduce the review universe and (2) whether Meta will pay for a privilege review.  Please confirm that you will provide that information.

We also write to ensure there is an accurate written record of our discussion, which covered many of the questions in your June 2 email, as well as follow-up questions:

- First, we summarized the significant efforts and cost that the Executive Agencies have expended as non-parties to produce documents to Meta, reviewing, at least at the 1L level, 189,049 documents and producing 11,205 documents spanning 60,903 pages. We explained that the burden of completing the privilege review associated with Meta's search parameters was too burdensome and disproportionate for third parties, and explained that there is extensive caselaw providing for cost-shifting when non-parties are asked to conduct a privilege review.

- Second, we explained that there are approximately 633,000 documents that are presumptively privileged.  This universe of documents consists of (1) inter- and intra-agency or legislative communications; and/or (2) communications that hit on a curated list of terms identified as highly likely to hit on privileged documents.  You asked us to provide the list of privileged search terms, which we agreed to do.

- Third, we explained that there are four categories of privilege and confidentiality issues presented in these documents: (1) "executive privileges," i.e., deliberative process privilege/decision-making privilege/inter-agency privilege/intra-agency privilege; (2) legislative privilege, which extends to executive agencies for activity that concerns legislation; (3) attorney-client privilege; and (4) confidential information.  We explained that each of the approximately 633,000 presumptively privileged documents is potentially subject to one or more of these privilege and confidentiality issues, and that there is no way to "bucketize" documents without reviewing them.  We reiterated that there is no way for us to identify a sub-set of documents that are subject to only confidentiality concerns but not privilege concerns, and vice versa, nor is there a way to identify a sub-set of documents subject to  one  specific privilege.  You asked for our position on whether the Court's Rule 502(d) clawback order would address these privilege and confidentiality concerns (or at least the confidentiality concerns).  We agreed to review that order (as no party to the litigation had ever raised it with us previously). We previewed, however, that because there is no way to separate confidentiality issues from privilege issues, and because the order merely addressed a process for clawing back documents already produced, it would not address the significant burden of conducting a privilege review in the first place.  You also asked if the Executive Agencies could identify the specific "policies" or "decisions" that are the basis for executive privileges.  We explained that there is no way to identify the policies or decisions absent reviewing each document.   You also asked us to confirm if our email from May 21 outlines all criteria applied to deem a document presumptively privileged.

- Fourth, we explained that we have already utilized TAR to expedite review of documents most likely to be relevant.  We asked you if Meta had a proposal for utilizing technology to materially minimize the presumptively privileged review universe, including, for example, identifying a cut-off TAR score for review.  You said you weren't certain if Meta would be amenable to any cut-off TAR score but agreed to let us know this week.

- Fifth, we explained that the Executive Agencies do not intend to provide privilege logs, as it is unduly burdensome and disproportionate to the needs of the case to require non-parties to conduct an extensive privilege review and privilege log for approximately 633,000 documents presumptively subject to one or more significant, sensitive, and fact-intensive privileges.

- Sixth, we explained that to date, the Executive Agencies have spent more than $3 million, including on extensive discovery negotiations with Meta, document review, and needless discovery litigation.  We explained that we did not believe a third party is

required to share more granular information and asked you to provide case law to the contrary (to the extent such case law exists) or confirm that Meta would be willing to pay for a privilege review. You agreed to tell us this week if Meta would pay for a privilege review. We reiterated that the $3 million+ expenditure is highly relevant to the discovery burden imposed on the Executive Agencies and the likely cost of a privilege review, especially because on May 9 the New York Governor signed legislation re-confirming our longstanding position that the Attorney General does not have possession, custody, or control of Executive Agency documents. *See* L 2025, ch 55 § 1 part RR. This has already been upheld by a New York court. *People of the State of New York v. Tiktok Inc. et. al*, Index No. 452749/2024, Dkt. No. 122 at 1 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2025).

- Finally, we remind you that we represent the Office of the Governor of New York. We do not represent the agencies in Governor Hochul's administration but have been authorized to facilitate production from those agencies for Meta's convenience.

Below, please find the information that we agreed to provide to Meta during our June 17 meet-and-confer:

We confirm that my email from May 21 outlines all criteria that we applied to deem a document presumptively privileged.

The approximately 633,000 presumptively privileged documents consist of the following (there may by overlap between the two categories):

- <u>Government Email Domains</u>: As we indicated in my May 21 email and at the meet-and-confer, emails sent within and between government email domains are considered presumptively privileged because of the strong possibility that such documents implicate executive/deliberative process privilege or legislative privilege.

- <u>Terms Likely to be Privileged</u>: Based upon our review of nearly 190,000 documents, we have found the following terms likely to implicate privileged information:
    - Privileged
    - "counsel"
    - Edit*
    - Budget
    - Comment*
    - Feedback
    - "State of the State" or SOTS
    - Briefing
    - "Date of Birth"

"Section 33.13"
- ○ ACP
- ○ The names of specific individuals in the Office of Governor's Counsel:
  - ■ Elizabeth W/3 Fine
  - ■ Joshua W/3 Norkin OR "Joshua Norkin"
  - ■ Bella W/3 Satra
  - ■ Chad W/3 Gholizadeh
  - ■ Roger W/3 Maldonado
  - ■ Sabrina W/3 Bierer
  - ■ Starishevsky
  - ■ Pei Pei W/3 Cheng de-Castro
  - ■ "Chad H. Gholizadeh"
  - ■ Tracy W/3 Cole
  - ■ "Sabrina Margret Bierer"

Finally, we have reviewed the FRE 502(d) Clawback Order dated April 25, 2023. The Order does not ameliorate our concerns about the fact-intensive document review required to address complicated issues of executive/deliberative process privilege or legislative privilege. *First*, the Order only covers attorney-client privileged materials and materials protected by the work product doctrine. *Second*, even if the Order did apply to other privileges, the clawback process depends on a party discovering it has produced protected materials, which we would not be able to do without reviewing all 633K presumptively privileged documents. As we stated during the meet-and-confer, our client is not amenable to producing sensitive internal agency documents without conducting a proper privilege review.

Please let us know if Meta wishes to cover the costs of a document-by-document privilege review. We remain willing to run highly targeted additional searches or to discuss other mutually agreeable compromises.

We reserve all rights.

**Kevin Closs**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
-----------------------------------------------
+1 212.390.9082  [O]
+1 732.687.4547  [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Tuesday, June 17, 2025 11:54 PM
**To:** Claire O'Brien <cobrien@selendygay.com>

**Cc:** Faith Gay <fgay@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>; Kevin Closs <kcloss@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Claire,

Thank you for speaking earlier today:

- You confirmed that the NY Executive Agencies withheld as "presumptively privileged" documents falling within one or more of the following four categories of "privilege":  (1) executive/deliberative process privilege; (2) legislative privilege; (3) attorney-client privilege; and (4) confidential personal information.
- You confirmed that the NY Executive Agencies withheld all inter- and intra-agency communications as presumptively within the executive/deliberative process privilege.  Currently, there are approximately 633K such documents.
- You would get back to me if your client(s) would be amenable to utilizing non-Selendy Gay reviewers or technology assisted review to complete the review of the 633K "presumptively privileged" documents.
- You would be getting back to me about whether Kevin Closs's email from May 21 states all the criteria that the NY Executive Agencies applied to deem any document "presumptively privileged."
- You confirmed that you would not be providing Meta with any answer to any of the questions posed in my June 2 email.
- As discussed, I attach the clawback order in this case.  Please let me know if the NY Executive Agencies are amenable to utilizing the process in the clawback order to streamline the review of documents that fall under any of the four categories of "presumptively privileged" documents withheld by the NY Executive Agencies.  Please also let me know if the combination of the clawback order and confidentiality order in this case is sufficient to address your clients' concerns about confidential personal information.
- Selendy Gay was unwilling to disclose to Meta the amount of attorneys' fees incurred to date solely for reviewing documents (as opposed, for example, to litigating document discovery disputes with Meta), or how any of the agencies estimated the cost of completing a privilege and responsiveness review.
- The NY Executive Agencies do not plan to produce a privilege log to Meta.
- For the follow-up items discussed on today's call, you said that you would aim to get us a response by next week.

Best,

Chris

---

**From:** Kevin Closs <kcloss@selendygay.com>
**Sent:** Wednesday, June 11, 2025 2:14 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Yeung, Christopher <cyeung@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

<mark>[EXTERNAL]</mark>
Chris,

We write ahead of Tuesday's 10 a.m. meet-and-confer.

While you do not explicitly reference it, Meta's legal position is clearly premised on the Magistrate Judge's erroneous September 6 order. That order has now been expressly rejected by the New York Legislature and a New York court: The Executive Agencies are non-parties whose documents are outside the control of the plaintiff Office of the Attorney General. *See* L 2025, ch. 55 § 1 part RR; *see also People of the State of New York v. Tiktok Inc. et. al*, Index No. 452749/2024, Dkt. No. 122 at 3 (Sup. Ct. N.Y. Cty. May 20, 2025) ("Defendants are statutorily precluded from compelling Plaintiff to turn over discovery held or generated by the State's executive agencies."). The Magistrate Judge's erroneous order is likewise the subject of a mandamus petition pending before the Ninth Circuit.

Despite their confirmed non-party status, the Executive Agencies have worked proactively, voluntarily, and in good faith with Meta to reach a reasonable compromise for non-party discovery since mid-September 2024, when the Executive Agencies were first given notice of Magistrate Judge Kang's erroneous September 6 order.  Throughout 2024, Meta refused to serve or pursue Rule 45 subpoenas and refused to work together to craft an appropriate scope of discovery for these non-parties that was targeted to information, if any, that might be relevant to Meta's litigation—relying solely on the Magistrate Judge's erroneous order. Instead, Meta demanded the Executive Agencies run search terms that were untethered to the substance of your litigation and proceeded to take weeks to finalize those terms.

As we explained in January 2025, Meta's imposed search terms and document demands were extremely broad and would both result in a volume of hits that included numerous irrelevant documents and place an extreme burden on the non-party Executive Agencies.  The result was that thousands of hours and millions of dollars were spent responding to document demands that are unreasonably burdensome for non-parties and unlikely to yield relevant, responsive documents. The non-party Executive Agencies reviewed hundreds of thousands of documents, and produced 11,205 documents totaling 60,903 pages. This is a significant volume in any context, but especially from non-parties who have nothing to do with your

litigation.  Moreover, the Executive Agencies made these productions in a mere five months—quicker than party discovery in most cases, and despite the accompanying distraction from public-facing duties that this non-party discovery has caused the Executive Agencies.

As predicted, the Executive Agencies' expensive review yielded nothing relevant to your litigation—a fact you have never denied.  Thus, the significant time and cost for the non-party Executive Agencies to collectively review the remaining 632,924 presumptively privileged documents is not justifiable. Non-party discovery must consider "the time and labor required to comply with the subpoena," *Hickey v. Myers*, 2013 WL 2418252, at *6 (N.D.N.Y. June 3, 2013), and Meta must "minimize the burden on non-parties," *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012). We therefore made the reasonable and commonplace proposal that if Meta would like the non-party Executive Agencies to conduct a document-by-document privilege review of all remaining presumptively privileged documents, Meta must cover the cost of that review. Courts generally require the subpoenaing party to bear the cost of extensive privilege review when a broad subpoena is pursued against a non-party.  *See, e.g., In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019) (requiring litigation party to bear the cost of non-party privilege review of 25,000 documents).

We note that you have failed to engage with any substantive law surrounding executive and legislative privileges.  These well-established privileges will apply to the vast majority of documents at issue.

We reserve all rights.

Thank you,

**Kevin Closs**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
--------------------------------------------------
+1 212.390.9082 [O]
+1 732.687.4547 [M]

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Wednesday, June 11, 2025 11:35 AM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Franicevic, Zora F <ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A <CNelson@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Thanks, Chris. Talk to you then.

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
---------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Wednesday, June 11, 2025 11:34 AM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Kevin Closs <kcloss@selendygay.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Franicevic, Zora F
<ZFranicevic@cov.com>; Lange, Nathan <NLange@cov.com>; Nelson, Christine A
<CNelson@cov.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Got it.  Let's speak at 10 am on Tuesday, then.

Best,

Chris

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Wednesday, June 11, 2025 11:03 AM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>; Nelson,
Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

[EXTERNAL]
Chris,

Sorry for any confusion – we are available Tuesday any time *other than* 11:45 – 1:15.

Thanks,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
---------------------------------------------
+1 212.390.9062 [O]

+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Wednesday, June 11, 2025 12:31 AM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Kevin Closs <kcloss@selendygay.com>;
Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Thanks Matt.  Let's go with 11:45 on Tuesday.

Best,

Chris

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Tuesday, June 10, 2025 5:45 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>; Nelson,
Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

[EXTERNAL]
Thanks, Chris. On Tuesday, we can make any time work other than 11:45-1:15. If that does not
work, we can try to move things around on Monday.

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
----------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Tuesday, June 10, 2025 5:26 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Kevin Closs <kcloss@selendygay.com>;
Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Thank you, Matt.  Unfortunately, I am in court Friday morning during the window that you

offered.  What times work for you on Monday or Tuesday?

Best,

Chris

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Tuesday, June 10, 2025 4:16 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

<mark>[EXTERNAL]</mark>
Chris,

We are available on Friday morning between 9am and noon. We are also available early next week. We will provide a substantive response to your email below in advance of our meet-and-confer.

Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Tuesday, June 10, 2025 4:09 PM
**To:** Matthew Nussbaum <mnussbaum@selendygay.com>; Kevin Closs <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Matt and Kevin,

I am checking in on the below again to see if we can schedule a conferral for this week.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Monday, June 9, 2025 10:52 PM
**To:** 'Matthew Nussbaum' <mnussbaum@selendygay.com>; 'Kevin Closs' <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** 'Faith Gay' <fgay@selendygay.com>; 'Claire O'Brien' <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Matt and Kevin,

I am writing again to check on your availability to confer.  Please let me know when you are available to speak this week.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Friday, June 6, 2025 12:04 PM
**To:** 'Matthew Nussbaum' <mnussbaum@selendygay.com>; Kevin Closs <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Matt,

Thank you.  I'll be interested in seeing what you believe is inaccurate in my email.  In the meantime, could you please let us know when you are available for a call to confer?  I don't know that we need to wait for your response to put some time on the calendar for a call.  When are you available?

Best,

Chris

---

**From:** Matthew Nussbaum <mnussbaum@selendygay.com>
**Sent:** Friday, June 6, 2025 11:54 AM
**To:** Yeung, Christopher <cyeung@cov.com>; Kevin Closs <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

[EXTERNAL]

Chris,

We emailed you regarding substantial completion on May 21. You did not respond until the afternoon of June 2. Your response contained a number of misstatements and inaccuracies. We intend to respond soon.

Thank you,

Matt

**Matthew Nussbaum**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
------------------------------------------------
+1 212.390.9062 [O]
+1 856.534.8606 [M]

---

**From:** Yeung, Christopher <cyeung@cov.com>
**Sent:** Friday, June 6, 2025 11:27 AM
**To:** Kevin Closs <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

It has now been a week since I asked for your availability this week to confer about the NY Executive Agencies' improper refusal to comply with their discovery obligations.  Despite my following up each day this week, you have not responded.  I would appreciate the courtesy of a response today that provides some potential conferral times that work for you and your team.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Thursday, June 5, 2025 3:58 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** 'Faith Gay' <fgay@selendygay.com>; 'Claire O'Brien' <cobrien@selendygay.com>; 'Matthew Nussbaum' <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

I'm following up again about your availability to confer.  Please let me know.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Wednesday, June 4, 2025 4:58 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** 'Faith Gay' <fgay@selendygay.com>; 'Claire O'Brien' <cobrien@selendygay.com>; 'Matthew Nussbaum' <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

I am following up on the below.  Please let us know your availability to confer.

Best,

Chris

---

**From:** Yeung, Christopher
**Sent:** Monday, June 2, 2025 2:16 PM
**To:** 'Kevin Closs' <kcloss@selendygay.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** RE: Social Media MDL, N.D. Cal. No. 22-03047

Kevin,

We are surprised to receive your email.  Based on the information that you have shared, it does not appear that the NY Executive Agencies have made a good faith effort to comply with the discovery agreements that each reached to resolve Meta's discovery requests, regardless of whether those obligations stem from Rule 30 requests or the Rule 45 subpoenas that each Executive Agency received.  Instead, the agencies appear to have employed overbroad "privilege" presumptions to shield from review and production the most relevant and responsive documents from their files.

To start, your numbers indicate that the Executive Agencies deemed more than <u>82 percent</u> of the total hits and family members brought up by the agreed-upon searches as "Presumptively

Privileged." If the Executive Agencies intended to withhold the vast majority of such potentially responsive and relevant documents as "Presumptively Privileged," that should have been disclosed to Meta well before six business days ago, so that we could confer and seek appropriate judicial relief if needed. Indeed, the Executive Agencies had plenty of opportunity to do so in our many written, telephonic, and in-person communications since we first began discussing their discovery obligations in September 2024.

In fact, the Executive Agencies' "Presumptively Privileged" categories do not appear to be constructed in good faith. For example:

- Documents hitting on the term "privileged": Our communications with OMH and OCFS counsel (to which you were copied) reveal that the word "privileged" is contained in the standard OMH and OCFS email signature block. Accordingly, relying solely on such a search term hit is not a sufficiently accurate indicator of whether a document in the Executive Agencies' files could reasonably even be presumed to contain privileged information.

- "Communications between and within government agencies": Documents from four agencies (CCF, DOH, OMH, and OCFS) account for nearly 98 percent of the hits to our agreed-upon search parameters, and nearly 99 percent of all hits and families. None of these four agencies are primarily legislative agencies such that a legislative privilege could arguably apply broadly to their documents. Nor do we understand how any executive privilege could broadly apply. And if it is the Executive Agencies' intention to broadly shield all internal and intra-agency communications from production based on claims of deliberative process and intra-agency privilege, there has been no showing that such privileges apply so broadly to these agencies' internal and intra-agency communications to permit any "presumptive privilege" treatment.

- "Documents containing personal information of private citizens," and document that hit on the word "Section 33.13": As an initial matter, the State incorrectly identifies purported confidential information in such documents as "presumptively privileged." Further, not all documents that contain the words "Section 33.13" implicate confidential clinical records. For those that do – and for others that may contain personal information of private citizens – the confidentiality order in this case provides fulsome protection. Additionally, Meta is negotiating parameters for the clawback of purportedly statutorily protected information by the States and/or their agencies, and in the interim has honored such clawback requests of inadvertently produced documents that the states and/or their agencies believe contain irrelevant and non-responsive statutorily protected information. These protections – and not the State's proposed overbroad and inaccurate application of "presumptive privilege" withholding – have

been sufficient to address personal information concerns for the State attorney generals and the hundred-plus state agencies who have produced documents to Meta, including the New York Department of Education.

Your suggestion that the Executive Agencies have only had since April 4 to review documents also is misleading. The Executive Agencies took nearly two months to provide Meta with their first full set of search terms following the search parameter agreement that the Executive Agencies and Meta reported to the Court: Meta proposed search terms on January 14, 2025, and received the Executive Agencies' hit reports on March 3, 2025. By March 10, 2025, Meta had proposed acceptable search terms for more than half of the Executive Agencies. In reality, the Executive Agencies have had anywhere from one to four months each to complete their review and production of the documents brought up by the searches they agreed to run, but appear to have only reviewed a total of less than 33 percent of those documents by today – long after the production deadline in this case passed.

Review of less than one-third of the documents identified by the agreed-upon searches is not "substantial completion." We also suspect the number of the most potentially relevant documents that the Executive Agencies actually reviewed is much lower, since the Executive Agencies have not disclosed how many document hits they reviewed (as opposed to family members without any search term hit).

Please let us know your availability to meet and confer this week so that we can promptly address the Executive Agencies' failure to comply with their discovery obligations. Prior to that call, please disclose the following to Meta:

- Please promptly produce a privilege log for any responsive documents over which the Executive Agencies are withholding on the basis of confirmed privilege. To date, not one of the Executive Agencies has produced any log – further obscuring its approach to "privilege."

- Please let us know if the Executive Agencies have utilized technology assisted review thus far.

- Please let us know of any reason the Executive Agencies believe they cannot utilize technology assisted review to complete their document review.

- Please let us know which agencies are refusing to complete discovery based on the agency's identification of documents it has deemed "Presumptively Privileged." Please also specify for each such agency the number or percentage of withheld documents that are incorrectly being withheld for confidentiality concerns.

Please disclose all criteria that each agency used to deem a document "Presumptively Privileged."

- Please explain why the Executive Agencies' incorrectly labeled "privilege concerns" regarding confidential information cannot be addressed by the confidentiality and clawback orders in this case, as well as Meta's interim willingness to permit clawbacks of purportedly statutorily protected information inadvertently produced by the State and/or its agencies while Meta and the States negotiate a formal clawback stipulation, as described above.

- Please disclose the portion of the $3 million that the Executive Agencies purportedly spent on outside counsel "to respond to discovery issues in this matter" was actually incurred solely for document review since reaching discovery agreements with Meta on January 15, 2025.

- Please disclose how the Executive Agencies are calculating their $5.5 million estimate for completing a document-by-document review.

Meta reserves all rights.

Best,

Chris

---

**From:** Kevin Closs <kcloss@selendygay.com>
**Sent:** Wednesday, May 21, 2025 8:29 PM
**To:** Yeung, Christopher <cyeung@cov.com>; Nelson, Christine A <CNelson@cov.com>
**Cc:** Faith Gay <fgay@selendygay.com>; Claire O'Brien <cobrien@selendygay.com>; Matthew Nussbaum <mnussbaum@selendygay.com>
**Subject:** Social Media MDL, N.D. Cal. No. 22-03047

==[EXTERNAL]==
Chris,

We write to inform you that the executive agencies have substantially completed production of documents that have not been designated presumptively privileged.

The non-party executive agencies have produced 11,205 documents spanning 60,903 pages across five distinct non-party agencies and 79 custodians.  These non-parties worked painstakingly to respond to the Rule 45 subpoenas issued by Meta and the NYAG and have been making voluntary productions as efficiently as possible. As you know, these agencies are thinly staffed, under resourced, and focused on providing crucial government to New Yorkers.

For example, CCF only has 25 total employees and only one attorney on staff and has been tasked with reviewing 69,168 documents. The review therefore had to be conducted by outside, private counsel. As of the date of this letter, the non-party agencies have spent more than $3 million to respond to the discovery issues in this matter.

Despite these challenges, the non-party executive agencies substantially completed production of non-presumptively privileged documents just six weeks after Meta finally proposed search terms for all agencies that resulted in hit counts under the previously agreed upon targets on April 4.

These documents indicate there is very little material relevant to Meta's defenses within the agencies:

- The CCF documents produced include emails sent from distribution lists of non-profit organizations with links to community dates and public resources, and documents discussing the mental health benefits of the NYS Mentoring Program, amongst other documents.

- The Executive Chamber documents produced include emails sent from distribution lists of news organizations such as Politico and Law360, communications from external community partners, and emails sent from distribution lists of non-profit organizations, amongst other documents.

- The DOH documents produced include emails from distribution lists of non-profit organizations with links to community dates and public resources, and reports assessing the Comprehensive Adolescent Pregnancy Prevention (CAPP) program, amongst other documents.

- The OCFS documents produced include emails sent from distribution lists of non-profit organizations regarding publicly available academic research, and outreach from Continuing Education organizations offering online certification courses regarding youth mental health, amongst other documents.

- The OMH documents produced include emails sent from distribution lists of non-profit organizations, such as the School Mental Health Resource and Training Center, with links to community dates and public resources, training opportunities from non-profit organizations such as The Evidence-Based Treatment Dissemination Center, and applications to Governor Hochul's Youth Mental Health Listening Tour.

As of the date of this letter, we have also reviewed 138,609 presumptively privileged

documents for responsiveness. Documents with this designation include:

- Communications between and within government agencies, which are very likely to implicate issues of executive privilege, legislative privilege, deliberative process privilege, inter- or intra-agency privilege, and attorney-client privilege. *See Dorchester Master Ltd. P'ship*, 521 N.Y.S.2d at 210-11 (privilege over pre-decisional and deliberative internal government communication "protects the decision-making and judgmental processes of administrators empowered to render decisions from revealing the mental or deliberative considerations which entered into such decisions"); *see also Citizens United of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 161-62 (S.D.N.Y. 2017) (applying legislative privilege to inter-agency communications that reflect legislative activities).

- Documents that hit on terms likely to implicate one of the aforementioned privileges. These terms include "privileged," "Section 33.13" (concerning confidential clinical records), and "State of the State" (concerning drafts of Governor Hochul's address to the Legislature), amongst other terms.

- Documents containing personal information of private citizens. *See United States ex rel. Sasaki v. New York Univ. Med. Ctr.*, 2011 WL 13257693, at *5 (S.D.N.Y. Aug. 23, 2011) (refusing to force a non-party to engage in the necessary process of "manually redact[ing] patients' names, addresses, Social Security numbers, birth dates and other identifying information.").

There are 632,924 presumptively privileged documents left to be reviewed, and we expect a document-by-document privilege review to cost at least $5.5 million. The executive agencies have no duty to bear this extreme cost to conduct a privilege review of documents that are unlikely to be relevant to Meta's defenses, especially given their non-party status. *See Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 58 (N.D. Tex. 2015) ("[A] subpoenaed parties['] reasonable attorneys' fees is mandated where the party issuing the subpoena failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *see also In re Subpoena to Loeb & Loeb LLP, 20*19 WL 2428704, at *5 (S.D.N.Y. June 11, 2019) ("Cost sharing is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties.")

In fact, the New York State Legislature recently re-confirmed this non-party status in legislation signed into law by the Governor on May 9, 2025. That law clarifies what we and the NYAG have said all along: that the NYAG does not have possession, custody, or control over, nor the practical ability to obtain, the executive agencies' documents.  *See* L 2025, ch 55 § 1 part RR ("Notwithstanding any other law to the contrary, in any civil enforcement action

initiated by the attorney-general, neither the attorney-general nor the department of law has, or shall be deemed to have, possession, custody, or control of, or the right, authority, or practical ability to obtain documents, communications, other information, or personnel of any agency, entity, or authority other than the department of law."). This new legislation reinforces our longstanding position that Meta must pursue discovery against the executive agencies pursuant to a Rule 45 subpoena and cognizant of the heightened protections afforded non-parties.

As a New York court ruled this week: "The plain language of the amendment, which was signed into law by Governor Kathy Hochul on May 9, 2025, establishes that this Court cannot compel the OAG to produce documents and other information within the possession and custody of State agencies." *People of the State of New York v. Tiktok Inc. et. al*, Index No. 452749/2024, Dkt. No. 122 at 1 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2025). As to the legislation's retroactive application, the Court ruled: "[I]t is manifest that the Legislature intended that Executive Law § 63(18) be applied retroactively, including to the pending matter. Thus, Defendants are statutorily precluded from compelling Plaintiff to turn over discovery held or generated by the State's executive agencies." *Id.* at 3.

If Meta insists the non-party executive agencies conduct a document-by-document privilege review of all remaining 632,924 presumptively privileged documents, Meta must cover the cost of that review.

We are available for a meet and confer and reserve all rights.

**Kevin Closs**
Associate  [Email]
Selendy Gay PLLC  [Web]
Pronouns: he, him, his
----------------------------------------------
+1 212.390.9082 [O]
+1 732.687.4547 [M]