SELENDY GAY PLLC
Faith E. Gay
Claire E. O'Brien
1290 Avenue of the Americas
New York, NY 10104
Tel: 212-390-9000
fgay@selendygay.com
cobrien@selendygay.com

*Attorneys for Non-Party Office of the Governor of the State of New York*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS FILING RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos.: 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>**NON-PARTY OFFICE OF THE GOVERNOR OF THE STATE OF NEW YORK'S OPPOSITION TO META DEFENDANTS' ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NY EXECUTIVE AGENCIES** |

Pursuant to Civil Local Rule 7-11(b), the non-party Office of the Governor of the State of New York respectfully submits this opposition to Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC's (together, "Meta") administrative motion, ECF No. 2128, to compel five non-party New York agencies[1] to participate in letter briefing under Section H.3 of this Court's Discovery Standing Order ("DSO"). The Court should deny Meta's motion for two independent reasons. *First*, there is no ripe discovery dispute, as the Executive Agencies have complied with their hit count agreement with Meta, and Meta refuses to engage in reasonable negotiations regarding review of hundreds of thousands of documents hitting on Meta's search terms that bear indicia of multiple fact-intensive privileges. The Executive Agencies have been working and will continue to work cooperatively with Meta regarding production of relevant, non-privileged discovery. *See infra* § I. *Second*, any such purported dispute must be brought in a New York federal court under Federal Rule of Civil Procedure ("FRCP") 45, including because a recently-enacted New York law has re-confirmed that the Executive Agencies are non-parties and the New York Attorney General ("NYAG") does not control their documents. *See infra* § II.

**I.    There is no Ripe Discovery Dispute Between the Executive Agencies and Meta**

    **A.    The Executive Agencies Have Complied with the January Agreement**

Briefing is not warranted because the Executive Agencies are in compliance with their discovery agreement with Meta. On January 16, 2025, to avoid costly and unnecessary litigation over Meta's overbroad search terms, the Executive Agencies reached an agreement with Meta for a maximum number of hit counts for each agency. ECF No. 2128-4. The hit count cap was 75,000 for Chamber, 95,000 for DOH, 95,000 for OMH, 95,000 for CCF, and 75,000 for OCFS. ECF No. 2128-4. Meta would thereafter create search terms that yielded "hits" within the agreed-upon cap for each agency. *Id.* As the agreement was framed by Meta itself, the Executive Agencies

---

[1] The Office of the Governor ("Chamber"), the Council on Children and Families ("CCF"), the Department of Health ("DOH"), the Office of Mental Health ("OMH"), and the Office of Children and Family Services ("OCFS") (together, the "Executive Agencies").

and Meta preserved all "arguments regarding relevance, burden, and proportionality, or based on information learned through document productions." ECF No. 2128-5 at 1. Meta and the Executive Agencies also agreed to work together if large numbers of family members were included by Meta's search terms. ECF 2128-4. As Meta had not yet created search terms, the documents for review were not yet identified, and the scope of any privilege review was unknown.

It took four months for Meta to finalize search terms that complied with the hit count caps.[2] The final terms yielded approximately 800,000 documents with family members. ECF 2128-7 at 29-30. The Executive Agencies prioritized reviewing documents that did not bear indicia of privilege, and began making rolling productions of approximately 11,000 documents spanning 60,000 pages, at the cost of millions of dollars—all borne by New York taxpayers. *See* Decl. of Faith E. Gay, Ex. 1 (the Executive Agencies' document production letters).[3]

On May 21, 2025, the Executive Agencies informed Meta that they substantially completed production of all documents yielded from Meta's search terms that do not bear indicia of privilege. ECF No. 2128-7 at 28-31. At the same time, the Executive Agencies explained there were approximately 630,000 additional documents in the review universe that bore indicia of multiple privileges and protections—attorney-client privilege, executive privileges (e.g., decision-making, intra-agency, inter-agency, and deliberative process privileges), legislative privilege,[4] and confidential information. *Id.* Because such privileges are highly fact-specific, the Executive Agencies explained that a privilege review would be costly and burdensome. *Id.* The Executive Agencies also explained that such a privilege review was disproportionate to the needs of the case, as the material reviewed and produced thus far yielded little, if any, relevant information (and Meta had never articulated any relevance). *Id.* The Executive Agencies previewed that they had

---

[2] Meta finalized search terms for CCF on January 16, 2025; for Chamber on January 30, 2025; for DOH on March 10, 2025; for OMH on March 31, 2025; and for OCFS on April 4, 2025.

[3] In addition to document discovery, one non-party Executive Agency employee has been deposed; two more are scheduled to sit for depositions.

[4] Under New York law, the legislative privilege extends to legislative acts taken by Executive Agencies and their employees and officers. *See, e.g.*, *Campaign for Fiscal Equity v. State*, 179 Misc. 2d 907, 911-12 (Sup. Ct. N.Y. Cnty. 1999).

NON-PARTY OFFICE OF THE GOVERNOR OF THE STATE OF NEW YORK'S OPPOSITION TO META DEFENDANTS' ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NY EXECUTIVE AGENCIES - 4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

2

1 conducted a preliminary review of approximately 140,000 documents that bore indicia of privilege, which reinforced that the continued review of over 630,000 additional documents was not likely to yield relevant, non-privileged information. *Id.* In the alternative, the Executive Agencies explained that Meta should bear the cost of a privilege review. *Id.*

The Executive Agencies are in compliance with their January 16, 2025 hit count agreement with Meta. That agreement was to facilitate the selection of *search terms*—which Meta and the Executive Agencies did. The hit count caps were used to create search terms, which resulted in the production of approximately 11,000 documents spanning 60,000 pages at a substantial taxpayer cost. Thereafter, consistent with the agreement as framed by Meta itself, based on the information learned in document review—namely, the significant volume of documents bearing the indicia of multiple privileges and the lack of any relevance of the reviewed and produced material to Meta's case—the Executive Agencies explained to Meta that additional review was unduly burdensome, irrelevant, and not proportional to the needs of the case.

### B.     Meta Refused To Engage In Timely, Substantive Negotiations

Even if there was a discovery dispute that could be resolved under the DSO, briefing is premature, as Meta has failed to comply with its obligations to "undertake reasonably diligent efforts" to resolve the dispute. DSO § H.1. After the Executive Agencies declared substantial completion on May 21, 2025 and explained that conducting a privilege review of hundreds of thousands of documents was unduly burdensome and disproportionate to the needs of the case, Meta did not respond for nearly two weeks. ECF 2128-7 at 25-28. On June 2, 2025, Meta emailed with questions regarding the Executive Agencies' document review procedures. *Id.* The Executive Agencies and Meta conferred on June 17, 2025, during which the Executive Agencies explained the fact-intensive nature of the multiple privileges at issue in the remaining review universe. *Id.* at 14, 17. At that meet-and-confer, in the interest of compromise and in an effort to reduce taxpayer burden, the Executive Agencies asked Meta (1) to provide a proposed cut-off score for Technology Aided Review ("TAR") so that the Executive Agencies could assess the feasibility of a limited privilege review, and (2) whether Meta would pay for a privilege review.

*Id.* at 13.  The Executive Agencies also asked Meta for additional proposals to narrow or focus the review universe.  Meta did not provide that information.  Instead, Meta asked additional questions about review processes.

On June 27, 2025, the Executive Agencies provided Meta with information Meta had requested and again requested a TAR cutoff and asked whether Meta would pay for a privilege review.  *Id.* at 13-16.  Meta did not respond until two weeks later, on July 10, 2025.  *Id.* at 12.  It declined to provide a TAR cutoff or to pay for a privilege review, nor did Meta offer any other compromise for narrowing the privilege review universe and reducing the consequent burden on taxpayers.  Instead, Meta summarily demanded an H.2 conferral—a conferral that, by its plain terms, is for "Parties" (not non-parties like the Executive Agencies), must take place between lead trial counsel, and must be held in person.  *Id.*; DSO § H.2.  The Executive Agencies agreed to meet and confer to continue working toward a compromise, but explained that any such meeting would not be a formal H.2 conferral.  ECF 2128-7 at 9-10.

The Executive Agencies met and conferred with Meta on July 18, 2025.  *Id.* at 3-4.  The Executive Agencies offered to go agency-by-agency to discuss the type of relevant, non-privileged discovery that Meta seeks.  *Id.*  The Executive Agencies likewise offered to conduct targeted searches to identify the kinds of documents Meta seeks.  *Id.*  Meta declined both offers.  *Id.*  When pressed for a theory of relevance, Meta provided none.  Meta simply maintained the position it has taken since the Executive Agencies declared substantial completion in May: that, regardless of relevance, burden, cost to taxpayers, proportionality, and privilege, the Executive Agencies must review every single document returned by Meta's search terms.

The Executive Agencies remain willing to reach a compromise.  Meta has not made "diligent efforts" to resolve its purported dispute as required by Section H.1 of the DSO – refusing to budge one's position one iota is not a diligent or reasonable effort at compromise.  Instead, Meta has demanded nothing less than its maximal position for over two months and refused to engage in negotiations regarding compromise offers proposed by the Executive Agencies.

NON-PARTY OFFICE OF THE GOVERNOR OF THE STATE OF NEW YORK'S OPPOSITION TO META DEFENDANTS' ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NY EXECUTIVE AGENCIES - 4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

4

## II. The Proper Venue for Purported Discovery Disputes is Federal Court In New York

A New York law signed on May 9, 2025 re-confirmed that, "[n]otwithstanding any other law to the contrary, in any civil enforcement action initiated by the attorney-general," the NYAG does not have "possession, custody, or control of, or the right, authority, or practical ability to obtain" the Executive Agencies' documents. *See* Gay Decl. Ex. 2 (L 2025, ch 55 § 1 part RR). A New York court recently held that the law bars a defendant in an enforcement action brought by the Attorney General, like this case, from demanding party discovery from non-party agencies. Gay Decl., Ex. 3 (*People of the State of New York v. TikTok Inc.*, Index No. 452749/2024, Dkt. No. 122 at 1 (N.Y. Sup. Ct. N.Y. Cty. May 20, 2025)). The New York court also ruled that the law applies retroactively, including to pending matters. *Id.* at 3. This statute, binding as to this case, brings New York squarely within the reasoning of Judge Gonzalez Rogers' March 6 Order as to Delaware and South Carolina, which have similar statutes. Dkt. 1741 at 24-26, 45-46.

Meta must bring any purported discovery disputes where subpoena compliance is required pursuant to FRCP 45—here, in New York. While an MDL court "may exercise the powers of a district judge in any district for the purpose of conducting pretrial *depositions* in such coordinated or consolidated pretrial proceedings," 28 U.S.C. § 1407(b) (emphasis added), several California District courts, including in this District, have confirmed that this authority does not automatically extend to non-party document discovery disputes. Instead, such disputes are properly handled in the court where compliance is required under FRCP 45. *See, e.g.*, *VISX, Inc. v. Nidek Co.*, 208 F.R.D. 615, 616 (N.D. Cal. 2002); *In Re ZF-TRW Airbag Control Units Products Liability Litig.*, 2022 WL 19425937, at *6 (C. D. Cal. Apr. 18, 2022). In fact, the single case Meta cites supports the Executive Agencies' position: the MDL court held it would hear non-party discovery disputes only "where (1) the responding nonparty consents to having the dispute filed in the first instance and adjudicated in this Court; (2) the JPML has transferred the motion to this Court; or (3) the district in which compliance is required has transferred the motion to this Court pursuant to [FRCP 45]." *In re Uber Technologies Inc., Passenger Sexual Assault Litig.*, 2024 WL 3559730, at *1 (N.D. Cal. July 27, 2024). None of those three is satisfied here.

NON-PARTY OFFICE OF THE GOVERNOR OF THE STATE OF NEW YORK'S OPPOSITION TO META DEFENDANTS' ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NY EXECUTIVE AGENCIES - 4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

5

| | |
|---|---|
| Dated: July 28, 2025 | Respectfully submitted,<br><br>**SELENDY GAY PLLC**<br><br>/s/ *Faith E. Gay*<br>Faith E. Gay<br>Claire E. O'Brien<br>1290 Avenue of the Americas<br>New York, NY  10104<br>Tel: 212-390-9000<br>fgay@selendygay.com<br>cobrien@selendygay.com<br><br>*Attorneys for Non-Party Office of the Governor of the State of New York* |

NON-PARTY OFFICE OF THE GOVERNOR OF THE STATE OF NEW YORK'S OPPOSITION TO META
DEFENDANTS' ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NY EXECUTIVE
AGENCIES - 4:22-md-03047-YGR-PHK | 4:23-cv-05448-YGR

6