1 | Michael Ward (SBN 146484)
michael.ward@bakerbotts.com
2 | BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
3 | Palo Alto, California 94304
Telephone: 650-739-7557
4 | Facsimile: 650-739-7699

5 | Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
6 | BAKER BOTTS L.L.P.
101 California Street, Suite 3200
7 | San Francisco, California 94111
Telephone: 415-291-6200
8 | Facsimile: 415-291-6300

9 | *Counsel for Respondents ARTURO
BEJAR and VAISHNAVI JAYAKUMAR*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
|---|---|
| | Case Nos.: 4:22-md-03047-YGR-PHK |
| | **NONPARTIES ARTURO BEJAR AND VAISHNAVI JAYAKUMAR'S OPPOSITION TO META'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
| THIS FILING RELATES TO: *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Magistrate Judge Kang correctly held that First Amendment and/or whistleblower protections shield communications Arturo Bejar and Vaishnavi Jayakumar have had with current and former Meta employees from discovery. ECF 1963 (the "Order"). Mr. Bejar and Ms. Jayakumar are advocates for greater teen safety on Meta's platform, and this dispute arises from Meta's attempt to seek their communications with current or former employees regarding shared criticism of Meta's platform. On June 2, 2025, Meta filed a motion for relief. ECF 2006 (the "Motion"). Because "no order denying the motion or setting a briefing schedule [was] made" by June 16, 2025, "within 14 days of filing the motion," this Court need not consider Meta's Motion at all. Civ. L.R. 72-2.[1] But Meta's Motion also fails on the merits. Most of Meta's arguments have already been considered and properly rejected by the Court, and its few new arguments also fail. The Court should deny Meta's Motion in full.

## I.   LEGAL STANDARD

A magistrate judge's legal conclusions are reviewed *de novo* "to determine whether they are contrary to law." *Perry v. Schwarzenegger (Perry I)*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). Their factual determinations are reviewed for clear error and can only be overturned upon a "definite and firm conviction that a mistake has been committed." *Id.* This standard is highly deferential. The district court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## II.  THE COURT SHOULD DENY META'S MOTION FOR RELIEF

### A.   Judge Kang Correctly Found First Amendment Protections Apply

Judge Kang's ruling that Mr. Bejar, Ms. Jayakumar, and the former and current Meta employees with whom they corresponded to share critical views of Meta have First Amendment associational rights over that correspondence is well supported in fact and law. Notably, Meta does not contend that it met the more demanding standard of relevance required when discovery implicates First Amendment rights. *See* Motion at 2. Indeed, it has not and cannot meet this burden. Rather, Meta takes issue with: (1) Judge Kang's finding that current and former employees of Meta (including Mr.

---

[1] This Court has denied motions for relief on this basis. *See Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.,* No. C 20-04808 WHA, 2023 WL 4687202, at *3 (N.D. Cal. July 21, 2023) (motion for relief already deemed denied under Rule 72-2); *AMEC Env't & Infrastructure, Inc. v. Integral Consulting, Inc.*, No. 12-CV-01735-SC, 2014 WL 6601960, at *2 (N.D. Cal. Nov. 19, 2014) (same).

Bejar and Ms. Jayakumar) can and do have associational rights subject to First Amendment protections; and (2) that Plaintiffs made the requisite *prima facie* showing of harm without submitting declarations. *Id*. at 2. The Order is not contrary to law or clearly erroneous on either point.

Judge Kang—citing the Ninth Circuit's opinion in *Perry v. Schwarzenegger (Perry II)*, 591 F.3d 1126 (9th Cir. 2009)—correctly notes that individuals can have associational rights even when they are not part of a formal organization provided they come together for a shared purpose, such as to advance "shared political beliefs," which includes the "right to exchange ideas and formulate strategy and messages, and to do so in private." Order at 9 (quoting *Perry II*); *see also Sullivan v. University of Washington*, 60 F.4th 574, 579-580 (9th Cir. 2023) (holding that associational rights apply where individuals "join with others" to pursue "social purposes," including to "advance shared views" or "engage[] in 'collective effort on behalf of shared goals'"). The standard stated in *Sullivan*—which Meta also cites—is the same standard (as articulated in *Perry II*) that Judge Kang applied. Order at 9. Meta's contention that the Order "broadens the First Amendment associational privilege beyond recognition" is thus simply absurd. *See* Mot. at 2.

After extensive briefing and oral argument, Judge Kang correctly found that this standard applies to the communications Mr. Bejar and Ms. Jayakumar had with current and former Meta employees "***implicated by the subpoenas.***" Order at 9 (emphasis added).[2] Meta's characterization of the communications as akin to those of a "a couple out on the town" or reflecting generalized social association, (citing *Dallas v. Stanglin*, 490 U.S. 19 (1989) about dancehall patrons), is disingenuous to what they are seeking and misreads Judge Kang's ruling, which is not so broad. *See* Mot. at 3; Order at 9. Meta seeks communications between (and the identities of) individuals who joined together to advance a position critical of Meta on high profile social issues, implicating First Amendment rights.[3]

---

[2] Mr. Bejar noted that the subpoena "is aimed at identifying people who assisted Mr. Bejar or expressed support for his testimony before political bodies such as the Senate on the major social and public policy issue of social media's impact on child safety." ECF 1765 (Bejar Discovery Letter) at 6-7. Ms. Jayakumar noted that the subpoena sought "to identify current and former employees who may have critical views of Meta" and with whom she had corresponded. ECF 1764 (Jayakumar Discovery Letter) at 6. Indeed, Mr. Bejar has already produced hundreds of documents in response to Meta's requests, including numerous communications with named employees. Meta explored only a handful of these documents at Mr. Bejar's protracted depositions. Instead, Meta continued to demand that Mr. Bejar provide the identities of employees who assisted him.

[3] Meta suggests that any disagreement in these communications erodes First Amendment protection, but it cites no authority in support, and its position makes no sense. *See* Mot. at 3. The First

1    Judge Kang also correctly found that Mr. Bejar and Ms. Jayakumar made a *prima facie* case
2  "of arguable First Amendment infringement." Order at 7-9. Meta argues for the first time in this
3  Motion that Mr. Bejar and Ms. Jayakumar did not provide sufficient evidence to support Judge Kang's
4  underlying factual determination that disclosure of the communications would have a chilling effect
5  on the associational rights at issue (*see* Order at 9), and that the Court should thus find Judge Kang's
6  ruling "contrary to law." Mot. at 3-4. As a preliminary matter, Meta applies the wrong standard—it
7  must show that Judge Kang's factual determination is clearly erroneous, not contrary to law. *See Perry*
8  *I*, 268 F.R.D. at 348. And, regardless, Meta's argument fails for at least three reasons.

*First*, as noted above, prior to this Motion Meta had multiple opportunities to but never once raised an issue with the sufficiency of evidence in support of Mr. Bejar or Ms. Jayakumar's First Amendment claims. Meta provides no explanation why it did not raise this argument sooner. Meta has thus waived the argument and cannot raise it now. *See In re Google RTB Consumer Priv. Litig.*, No. 4:21-CV-02155-YGR, 2024 WL 5700872, at *2 (N.D. Cal. Aug. 13, 2024) (a party may not "move for relief from a prior order in an attempt to make arguments it should have made in the first instance").

*Second*, and relatedly, Meta is wrong that Mr. Bejar and Ms. Jayakumar did not provide evidentiary support for the factual determination that producing the communications would have a chilling effect. Mr. Bejar stated in his portion of the discovery of the letter brief that "conversations initiated with Mr. Bejar after his employment were made ***under the understanding of anonymity***." Bejar Joint Discovery Letter at 4 (emphasis added). Ms. Jayakumar also stated that having to reveal the requested communications would "have a negative impact on Ms. Jayakumar's—and others'— ability to freely discuss these issues without fear of retaliation, which in turn would also negatively impact her livelihood." Jayakumar Joint Discovery Letter at 6. These factual assertions were not provided in the form of a declaration for good reason—Judge Kang instructs that joint letters should not be accompanied by declarations, unless needed to support claims of burden. Judge Kang's Civil Discovery Standing Order at H.3. Mr. Bejar and Ms. Jayakumar would have sought leave to provide declarations if Meta had raised this issue sooner. Further, the expectation that the anonymous

---

Amendment protects all "private, internal communications regarding formulation of strategy and messages," which inherently reflects debate between individuals. *See Perry II*, 591 F.3d at 1150.

3

OPP. TO MOTION FOR RELIEF                           CASE NOS.: 4:22-MD-03047-YGR-PHK

1  communicators (whose identities Mr. Bejar and Ms. Jayakumar's First Amendment objections are
2  meant to protect) would submit declarations (or that Mr. Bejar and Mr. Jayakumar would create a log
3  identifying specific communications with them) makes no sense. The whole idea is to protect these
4  individuals' identities from disclosure to Meta.

*Third*, a court can find harassment and/or a chilling effect absent declarations or extrinsic evidence when that chilling effect is self-evident. *See Perry II*, 591 F.3d at 1143. In *Perry II*, the Ninth Circuit found a *prima facie* showing of first amendment infringement was made even though the evidence provided was lacking in particularity, when there was a "self-evident conclusion that important First Amendment interests are implicated by the [] discovery requests." *Id*. Indeed, "unduly strict requirements of proof [to show chilling effect] could impose a heavy burden." *Brock v. Loc. Union 375*, 860 F.2d 346, 350 n.1 (9th Cir. 1988) (citing *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)).

Here, Judge Kang found that the intended and actual effect of these requests is to chill speech through "the fear of retaliation or blacklisting," an effect widely acknowledged in whistleblower caselaw, (Order at 14), and onerous document requests "without limitation as to timeframe, subject matter, or burden," (*id*. at 16). Particularly because Meta has no legitimate need for these communications, (*id*. at 11-13), this finding was not clearly erroneous.

### B. Whistleblower Protections Apply to Certain of Mr. Bejar's Communications

Judge Kang's finding that the Sarbanes-Oxley Act, 18 U.S.C. § 1514 ("SOX") provides an independent basis to prohibit discovery into Mr. Bejar's communications with employees assisting Mr. Bejar with his testimony before Congress is consistent with the law. *See* Order at 14. Meta argues that: (1) SOX only protects whistleblowers raising securities laws violations; and (2) whistleblower protections do not apply to prohibit discovery. Mot. at 4-5. Meta is wrong on both accounts.

*First*, Judge Kang relied directly upon the statutory text of SOX, specifically 18 U.S.C. § 1514A(a)(1)(B), to find that Meta may not harass or discriminate against an employee who has taken actions "to provide information, cause information to be provided, or otherwise assist in an investigation" regarding "***any provision of Federal law relating to fraud against shareholders***," when the information or assistance is provided to a Member of Congress or congressional committee. Order at 14 (quoting 18 U.S.C. § 1514A(a)(1)(B)) (emphasis added). It is not disputed that Mr. Bejar testified

4

1  to Congress that Meta has repeatedly made false claims about the safety of its products; as information
2  which is material for investors to make sound investment decisions, Mr. Bejar's testimony thus falls
3  within the scope of SOX. *See, e.g., In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D.
4  Cal. 2014) (holding that false statements about product safety are sufficient to state a securities law
5  claim). Even Meta's cited case, *Gjovik v. Apple Inc.*, acknowledges that false statements about
6  environmental and labor practices may fall within the scope of SOX. 2024 WL 2309100, at *12 (N.D.
7  Cal. May 20, 2024). Further, under the plain language of 1514A(a)(1)(B) these protections apply to
8  employees who provided Mr. Bejar with information, including former employees. *See Kshetrapal v.*
9  *Dish Network, LLC*, 90 F. Supp. 2d 108, 113 (S.D.N.Y. 2015) (noting that employee as used in §
10 1514A includes former employees); Order at 16.[4]

11 *Second*, Judge Kang correctly found that compelling Mr. Bejar to produce the sought-after
12 communications could result in the blacklisting and retaliation that the SOX whistleblower statute is
13 intended to combat. Order at 14 (citing *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab*, 710 F.3d 443,
14 446 (2d Cir. 2013). The issue properly framed is thus not whether discovery is prohibited under SOX's
15 whistleblower statutes, but whether revealing these communications and the identities of the
16 participants is prohibited. Meta cites no relevant authority to the contrary. Mr. Bejar has produced
17 hundreds of other documents in response to Meta's subpoena (including relevant correspondence with
18 already named former employees) and is merely objecting to Meta's fishing expedition for more
19 collaborators that it can retaliate against.

20 The Court should uphold Judge Kang's ruling that whistleblower protections also apply to
21 prohibit the production of Mr. Bejar's documents.

22 **III.    CONCLUSION**

23 For these reasons, Mr. Bejar and Ms. Jayakumar respectfully request that the Court deny the
24 Motion.

25
26
---
27 [4] Meta continues to mischaracterize *Tides v. The Boeing Co.*, which found that SOX was inapplicable to individuals leaking information to the media even though that information "may ultimately fall" into the hands of Congress. 644 F.3d 809, 810–11 (9th Cir. 2011). Judge Kang correctly held that the
28 link between employees assisting Mr. Bejar with his testimony before Congress and Mr. Bejar's testimony before Congress is not so tenuous. Order at 17.

| | | |
|---|---|---|
| 1 | DATED: July 30, 2025 | Respectfully Submitted, |
| 2 | | */s/ Karan Singh Dhadialla* |
| | | Karan Singh Dhadialla (SBN 296313) |
| 3 | | karan.dhadialla@bakerbotts.com |
| | | BAKER BOTTS L.L.P. |
| 4 | | 101 California Street, Suite 3200 |
| | | San Francisco, California 94111 |
| 5 | | Telephone: 415-291-6200 |
| | | Facsimile: 415-291-6300 |

Michael Ward (SBN 146484)
michael.ward@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Telephone: 650-739-7557
Facsimile: 650-739-7699

*Counsel for Respondents ARTURO BEJAR and VAISHNAVI JAYAKUMAR*