PREVIN WARREN
pwarren@motleyrice.com
401 9th Street NW, Suite 630
Washington, DC 20004
Telephone: (202) 386-9610
Facsimile: (202) 578-6281

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

MDL No. 3047
CASE NO.: 4:22-md-03047-YGR

**PLAINTIFFS' AFFIRMATIVE LETTER BRIEF EXPLAINING GROUNDS FOR ANTICIPATED *DAUBERT* MOTIONS**

Honorable Yvonne Gonzalez Rogers
Honorable Peter H. Kang

Pursuant to CMO No. 25 (ECF 2124) and in anticipation of the pre-filing conference to be held on August 22, 2025, Plaintiffs file this letter brief setting forth the bases of their anticipated *Daubert* motions. Plaintiffs are mindful of the Court's advice regarding the appropriate and circumscribed use of *Daubert* motions. PISD Plaintiffs propose four motions challenging 6 out of 58 of Defendants' experts, and the AG Plaintiffs propose an additional motion challenging 5 other experts on limited grounds. PISD Plaintiffs do not intend to seek summary judgment.

**1. Anticipated Motion #1: Plaintiffs' Exclusion of "Content Moderation" Opinions of Drs. Ferrara, Mattmann, and Chatterjee[1]**

When this Court ruled that Defendants cannot be held "liable for their content moderation activities," it laid down a marker: "theor[ies] of harm…must…not take issue with defendants' choices as to what content to take down or censor." ECF 430 n. 58. Three experts proposed by Meta, TikTok, and Snap did not get the memo. They all opine about "defendants' choices as to what content to take down or censor" and seek to show that these Defendants made excellent choices. *Contra id*. This is a brazen attempt to take the content-moderation shield and wield it as a sword: these companies seek to introduce expert evidence that their content-moderation choices were *beneficial*, when Plaintiffs cannot show that their choices were in fact *harmful*. That would leave Plaintiffs in an untenable position and result in a one-sided trial. The Court should not allow these proposed expert opinions to disrupt this litigation. Plaintiffs' focus has always been on Defendants' product features—not their choices to leave up or take down content.

**Dr. Emilio Ferrara**, a Professor of Computer Science with a doctorate in machine learning, offers the central opinion that "Meta's content moderation systems are robust, reasonably designed, and continuously improving in ways that are consistent with both academic best practices and industry standards." (¶ 274). Indeed, his report is *exclusively* concerned with Meta's purportedly excellent content moderation policies and practices: It is (i) "technically advanced"; (ii) subject to "robust mechanism for evaluating the effectiveness of content moderation"; (iii) "proactive"; (iv) "transparent"; (v) "designed to evolve"; and (vii) "reasonably designed, and continuously improving." (¶¶ 21-27 (Opinions 1-7)). Even Ferrara's sixth opinion, which purports to rebut portions of Plaintiffs' expert reports, conflates Meta's recommendation algorithm (the topic of Plaintiffs' report) with Meta's content moderation practices (the topic of Ferrara's)—two distinct systems. Improving content moderation cannot fix the addictiveness of a recommender system, any more than improving a steering system will not fix a broken transmission.

**Dr. Chris Mattmann**, TikTok's proposed expert, also holds a doctorate in Computer Science and now works as a social media researcher. Dr. Mattmann offers similar opinions to Dr. Ferrara, claiming that TikTok's content moderation is "industry leading" in "scale and efficacy." (¶ 20). He devotes a lengthy section his report (aptly titled "Content Moderation") to why TikTok's content moderation practice should exculpate it in this case (¶¶ 66-172). **Dr. Sandeep Chatterjee**, Snap's proposed expert, holds a doctorate in Computer Science and is currently the CEO of a technology consulting company. One section of his report engages in the same gambit as Drs. Ferrara and Mattman, opining that Snap "bar[s] a number of types of content" (¶ 88), has "implemented multiple layers of moderation" to "address potentially sensitive or suggestive material" (¶ 90), and has "actively adjusted policies to exclude inappropriate material" (¶ 91).

[1] The MDL AGs join this motion only with respect to Dr. Ferrara.

Drs. Ferrara, Mattmann, and Chatterjee should not be permitted to offer one-sided opinion evidence on issues the Court's prior rulings place out of bounds. PISD Plaintiffs' core theories have always focused on the addictive design of Defendants' products and their recommendation systems, and their failure to warn children and parents about the risks to children of using their products. The inherently harmful nature of that design also underlies the AGs' consumer protection claims and the School Districts' claims of negligence and nuisance. Content moderation, on the other hand, does not affect the addictiveness of Defendants' design of their apps or their recommendation algorithms. Nor does it affect whether Meta, TikTok, or Snap failed to warn children and parents of the risks of using their apps.

Meta, TikTok, and Snap seek to weaponize this Court's Section 230 ruling by selectively using evidence about content moderation to show that their practices benefited children, while invoking the law to prevent Plaintiffs from challenging those moderation practices. The law does not permit Defendants to "use[]…excluded evidence both to shield [themselves] from potentially damaging evidence and as a sword to slice through the foundation of Plaintiffs' case." *See Sidibe v. Sutter Health*, 103 F.4th 675, 701 (9th Cir. 2024); *Columbia Pictures Television v. Krypton Broad. of Birmingham*, 259 F.3d 1186, 1196 (9th Cir. 2001) (a party cannot shield information from discovery then selectively introduce portions of that information in its own case in chief).

If Defendants are nonetheless permitted to present evidence that their content moderation was effective, then Plaintiffs must be allowed to rebut that evidence—including, and necessarily, by showing the jury that content was not appropriately moderated. *Contour Ip Holding, LLC*, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021) (Orrick, J.) (where one party "opens the door" by discussing previously-excluded evidence at trial, the other party "may introduce [the same types of otherwise excluded] evidence to rebut that statement or implication."); 75 Am. Jur. 2d Trial (2025) § 277 ("If a defendant presents in its case in chief affirmative matter to support its defense, the plaintiff then has the right to introduce evidence in rebuttal as to such affirmative matter.").[2]

Consider the inevitable effect of permitting Meta, TikTok, and Snap to premise their defense on expert opinion testimony that their content moderation prevents bad content from making its way onto their apps. Most obviously, it would change the focus of trial, as Plaintiffs would respond in kind with evidence that these deficient practices expose youth to harmful content. Plaintiffs would also want an opportunity to have their experts weigh in. Ultimately, indulging Meta, TikTok, and Snap inoffering these opinions will have serious ramifications on trial. Plaintiffs thus welcome the Court's guidance at the August 22 case management conference.

**2. <u>Anticipated Motion #2</u>: PISD Plaintiffs' Exclusion of "Moral Panic" Opinions of Dr. Hampton**

**Dr. Keith Hampton** is a "sociologist and professor of media and information" (¶ 1). His first proffered opinion is: "The reaction by some to social media bears remarkable similarities and parallels to other moral panics over the last four centuries which directed claims of harm toward other forms of communication and technologies, including concerns about an impact on youth,

[2] This would not cure the prejudice associated with Defendants being permitted to present affirmative defense evidence on issues for which Plaintiffs were not permitted full discovery.

gender, community and overall mental health" (¶ 10). This opinion is ripe for exclusion under *Daubert*. Past supposed "moral panics" have nothing to do with whether social media's design features cause harm to adolescent mental health. Whether moral panics have existed during, for example, the Industrial Revolution (an issue Dr. Hampton examines at some length) answers no questions relevant to this litigation, which unspools in the here and now. Dr. Hampton's leap in asserting that alleged past "panics" somehow prove that Plaintiffs' concerns about social media are unfounded will create a prejudicial sideshow that will confuse the issues and mislead the jury.

**3. Anticipated Motion #3: PISD Plaintiffs' Exclusion of "Private Litigation" Opinion of Dr. Hutt**

**Dr. Ethan Hutt**, a proffered expert in the history of education policy, opines that public schools should not be allowed to use "private litigation" to remedy the impacts of Defendants' conduct. While he acknowledges that schools historically have been expected to respond to issues comparable to the impact of social media—what he dismisses as "educationalizing" (¶ 2)— he opines that those responses "have been initiated through democratic governance and policy making channels, and the public has always borne the cost" (¶ 4). According to Dr. Hutt, "school subjects should be a matter—as they always have—of public debate not private litigation and public funding not corporate subsidy." *Id.* ¶135. Dr. Hutt's opinion is *ipse dixit*, unmoored to documents or testimony from either party let alone an objective methodology. *See General Elec. Co. v. Joiner*, 522 U.S. 136 (1997). It should also be excluded as improper and unhelpful because it asks the jury to substitute Hutt's personal policy preferences of what "should" be allowed for the Court's instructions on what the law actually allows. This Court has already ruled that the school district plaintiffs may seek relief via a lawsuit. It would confuse the jury and prejudice Plaintiffs to hear from an expert whose opinions contradict that ruling. *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1362 (N.D. Ga. 2017), *aff'd sub nom. Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018) (excluding economist's opinion on what "should" be permitted under antitrust law; opinion threatened "jury nullification").

**4. Anticipated Motion #4: PISD Plaintiffs' Exclusion of "Device Data" Opinions of Mr. Hammerquist**

**Mr. Erik Hammerquist** is a Senior Director at a consultancy that advises on forensic analysis of computer data. He was asked by Meta, Snap, and TikTok to analyze "each Plaintiff's devices to understand how each was used over time" and to "generate statistics to identify how much time was devoted to actively using each application, visiting websites, and receiving notifications" (¶ 9). However, Mr. Hammerquist relies on data of such short retention periods that conclusions about historical usage cannot be reliably drawn. Meanwhile, he ignores comprehensive sources of usage data despite having access to them. Dr. Hammerquist's failure to validate his findings using industry-standard methodology, his omission of other more robust sources of data on Plaintiffs' devices, and his lack of source file documentation render his conclusions unverifiable and scientifically deficient. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 983 n.12 (9th Cir. 2021); *In re Live Concert Antitrust Litigation*, 863 F. Supp. 2d 966, 990–91 (C.D. Cal. 2012).

**5. Anticipated Motion #5: MDL AGs' Exclusion of Non-Relevant Opinions of Drs. Birnholtz, Memon, Rogers, Shear, Mr. Starr**

The MDL AGs anticipate challenging portions of responsive expert reports submitted by Drs. Birnholtz, Memon, Rogers, and Shear, as well as by Mr. Starr, on the grounds that those portions seek to respond to experts offered by PISD Plaintiffs, but not by the MDL AGs. To the extent that Meta's experts offer opinions as to issues raised by experts not in the MDL AGs' case, those opinions should be excluded. In addition, to the extent that Meta's experts offer opinions critical of experts that are in the MDL AGs' case but the criticism extends only to non-MDL AG specific issues, those opinions should also be excluded.

Meta's expert Dr. Jeremy Birnholtz offers responsive testimony for PISD-only experts Mr. Estes and Ms. Istook. Meta's expert Dr. Nasir Memon offers responsive testimony for PISD only experts Dr. Chandler, Dr. Drumwright, and Mr. Estes. Meta's expert Dr. Marcus Rogers offers responsive testimony for PISD-only experts Dr. Drumwright, Mr. Estes, Ms. Istook, and Dr. Noar. Meta's expert Dr. Matthew Shear offers responsive testimony for PISD-only expert Dr. Christakis. Meta's expert Mr. John Starr offers responsive testimony for PISD-only experts Dr. Chandler, Dr. Christakis, Dr. Cingel, Dr. Drumwright, Mr. Estes, Dr. Goldfield, Dr. Hoover, and Ms. Istook, and Noar.

The MDL AGs have not offered expert opinions from Chandler, Christakis, Cingel, Drumwright, Estes, Goldfield, Hoover, Istook, or Noar. It appears that Meta's experts recycled their reports from the PISD case, rather than tailoring them to respond to the specific experts retained by the AGs. Moreover, portions of these expert reports (Rogers and Starr) discuss topics not encompassed by the AGs' case, such as CSAM and child exploitation. By contrast, those topics are relevant to the claims brought by PISD Plaintiffs. The nonresponsive portions of these reports do not hold any "valid . . . connection to the pertinent inquiry," nor do they "employ any reliable methodology, [or] help the trier of fact to understand the evidence or to determine a fact in issue." *Lin v. Solta Medical, Inc.*, 2024 WL 5199905, at *4 (Dec. 23, 2024) (applying Fed. R. Evid. 702(a)). The testimony outlined above is facially irrelevant to the AGs' case and should be excluded, even while relevant, responsive and non-objectionable testimony from these same expert witnesses may be offered.

Respectfully submitted,

Dated: August 8, 2025

*<u>/s/ Previn Warren</u>*
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

Co-Lead Counsel for Personal Injury and School District Plaintiffs

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ Krista Batchelder
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

/s/ Megan O'Neill
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General

455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109), *Pro hac vice*
Philip Heleringer (KY Bar No. 96748), *Pro hac vice*
Zachary Richards (KY Bar No. 99209), *Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264), *Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*

Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Matthew J. Platkin, Attorney General for the State of New Jersey, and Elizabeth Harris, Acting Director of the New Jersey Division of Consumer Affairs*