# KING & SPALDING

**VIA ECF**                                                                                    August 8, 2025

Honorable Yvonne Gonzalez Rogers
U.S.D.C., Northern District of California
Oakland Courthouse
1301 Clay Street, Courtroom 1, 4th Floor
Oakland, CA 94612

**Re:**    ***In re Social Media Adolescent Addiction/Personal Injury Products Liability
Litigation,* MDL No. 3047: Defendants' Summary Judgment and Rule 702 Motions**

Dear Judge Gonzalez Rogers,

Defendants submit this letter outlining the Rule 702 and summary judgment arguments they currently anticipate making with respect to the six school district ("SD") bellwethers ("BWs") and five personal injury ("PI") BWs.[1]

**Rule 702 Motions.** Plaintiffs have disclosed 32 experts, whose 75+ reports span thousands of pages. Defendants propose filing largely joint (i.e., all-Defendant) motions targeted to specific Plaintiff experts, who fall into four categories: (1) general causation ("GC") experts; (2) SD experts; (3) PI case-specific experts; and (4) design/marketing/other non-case specific experts. Exhibit A lists each of Plaintiffs' experts, organized by category, detailing which Plaintiff(s) disclosed them and as to which Defendant(s). Depositions of these experts, the majority of which have yet to occur, may alter the number and scope of Rule 702 motions Defendants ultimately file, and Defendants will be prepared to discuss at the August 22 conference ways to combine their challenges as to specific experts into one or more consolidated briefs.

**MSJs.** Plaintiffs pursue claims related to dozens of different features of Defendants' platforms under various causes of actions across multiple BW cases. Defendants propose filing: (1) one joint motion addressing why Section 230 and the First Amendment bar Plaintiffs' failure-to-warn claims in the PI and SD cases; (2) one joint motion in each of the six SD cases addressing the remaining nuisance and negligence claims; and (3) Defendant-specific motions in each of the five PI cases so that Defendants can address Defendant-specific issues as to Plaintiffs' remaining design defect, warnings, negligence, consumer protection, and negligence per se claims.

## I.    <u>Rule 702 Motions.</u>

**A.    General Causation Experts.** Each set of Plaintiffs must prove general causation— namely, that the at-issue features of each Defendant's platform (as opposed, *e.g.*, to content) are capable of causing so-called "social media addiction," and that such addiction, in turn, is capable of causing each of the mental and physical health disorders alleged. But the scientific consensus is that "social media addiction" does not exist; the lead diagnostic manual for mental disorders does not recognize it; and Plaintiffs' fourteen GC experts cite no peer-reviewed study or literature

---

[1] This includes Meta's arguments as to 6 experts disclosed by the AGs for whom Meta's Rule 702 motions are due September 24 (including 2 AG-only GC experts), but not the AG-specific experts for whom its Rule 702 motions (and MSJs) are due December 12. *See* 7/18/25 CMC Tr. at 36.

establishing that the platforms' accused features cause any of the disorders Plaintiffs allege. Defendants anticipate raising two global challenges to Plaintiffs' GC experts.

*First*, Plaintiffs' GC experts expressly rely on the effects of third-party content or otherwise fail to disaggregate the impact of content and other activity barred from challenge by Section 230 and the First Amendment from features and theories on which the Court held they may proceed. Courts rightly exclude expert opinions that do not separate conduct protected by federal law from conduct that can be the basis of liability. *E.g.*, *Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1503–04 (5th Cir. 1985) (excluding expert opinions relying on conduct protected by the *Noerr-Pennington* doctrine); *Malden Transp., Inc. v. Uber Techs. Inc.*, 404 F. Supp. 3d 404, 424 (D. Mass. 2019), *aff'd*, 8 F.4th 1 (1st Cir. 2021) (similar).

*Second*, Plaintiffs' GC experts commit a range of other methodological errors requiring exclusion. They over-extrapolate from studies that do not and cannot determine causality, reaching causal conclusions that are "speculative" and "inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014). They employ unreliable methodologies—cherry-picking studies, assessing endpoints that do not align with Plaintiffs' alleged injuries, ignoring studies' limitations, and not ruling out confounders or alternative explanations. *See, e.g.,In re Acetaminophen Prods. Liab. Litig.*, 707 F. Supp. 3d 309, 336 (S.D.N.Y. 2023); *In re Zantac Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1099 (S.D. Fla. 2022). Many of Plaintiffs' experts also have never subjected their opinions to peer review. Some have even acknowledged publicly that causation cannot be determined on the available evidence. Many resort to relying on Defendants' internal documents or company witness depositions, even while admitting they would not rely on such materials in their ordinary practice. Still others lack the necessary qualifications to opine on general causation, too.

    **B.**    **School District Experts.** Among other problems, Plaintiffs' six SD experts. offer opinions that fail to separate: (1) each platform's purported effects, as opposed to the effects of "social media," cell phones, or "screen time" writ large; (2) the role of the non-foreseeable bad acts of third parties; (3) the role of content and the design features that the Court found barred by Section 230 and the First Amendment; and (4) other potential causes of the alleged harms that underlie the SDs' purported injuries. *Sclafani v. Air & Liquid Sys. Corp.*, 14 F. Supp. 3d 1351, 1357 (C.D. Cal. 2014) (excluding expert who opined that a class of products broadly, as opposed to "exposure to the particular products supplied by" the defendants specifically, caused the injury).

Other errors also merit Rule 702 exclusion. Survey expert Klein conducted unreliable surveys of teachers that improperly asked them to retroactively quantify, going back over a decade, how much time they spent addressing "social media concerns;" employed biased/leading language, context, and structure; and used unrepresentative and small subjects. *See, e.g.*, *In re: Autozone, Inc.*, 2016 WL 4208200, at \*17–19 (N.D. Cal. Aug. 10, 2016), *aff'd*, 789 F. App'x 9 (9th Cir. 2019) (excluding survey because of small response size, biased responses, and imprecise recollections). Damages expert Ward relies on the results of the inadmissible Klein survey and estimates past damages based upon the value of "lost time" spent by teachers and others addressing "social media concerns," even though lost time is not a valid measure of compensatory damages. *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 307 (S.D.N.Y. 2018). Both Ward's estimate of "lost time" damages and Meyers's calculation of out-of-pocket costs rely on declarations from SD employees or interrogatory responses based on unreliable personal

recollections/impressions, often made without personal knowledge, and are not the kinds of materials on which experts would reasonably rely. Hoover's "strategic plans" (and Leslie's calculations based on them) are not tailored to "abating" harms from Defendants' actionable conduct. Further, Hoover as well as Osborne offer opinions that are unsupported or contradicted by the evidence, impermissibly convey hearsay without application of expertise, and amount to pure speculation.

      **C.**     **PI Case-Specific Experts.** Defendants also expect to seek to exclude the opinions of four experts offering specific causation opinions in the PI cases: Lowenthal (*Melton*), Murray (*Clevenger*, *D'Orazio*, and *Mullen*), and Sobalvarro (*Smith*).[2] These experts' opinions are not the product of reliable methods: they all fail to distinguish among specific platforms and features, inappropriately use screening tools to assess mental health disorders retrospectively, ignore medical records and case documents in favor of self-reporting, and fail to disentangle the role of content and publishing features from the role of pure-design features on Plaintiffs' alleged injuries. In addition, Lowenthal and Bagot offer opinions that social media caused certain conditions like depression despite the BW at issue having never been diagnosed with those conditions. Murray disregards multiple established risk factors such as genetics, family history, family dynamics, and adverse childhood experiences to reach his litigation-driven conclusion that social media is responsible for Clevenger's, D'Orazio's, and Mullen's conditions. And Sobalvarro does not appear to be qualified to opine that Smith has a social media addiction.

      Defendants also anticipate seeking to exclude user-data expert McCarron's opinions that Defendants' data, which show Plaintiffs' time spent on platforms, should be disregarded due to supposed "discrepancies" in certain data sets, because her opinions: (1) utilize a made-up standard that no data set could ever meet; and (2) do not have a valid methodological basis. Defendants reserve the right to also move as to rebuttal expert Karabiyik.

      **D.**     **Design/Marketing/Other Experts.** Plaintiffs have disclosed nine experts on platform design, marketing, and other non-case-specific issues (warnings, corporate conduct, and Defendants' financial condition). Defendants expect to seek to exclude (selectively) at least some of those experts' opinions, though it will depend on what those experts say in deposition in response to defense questioning on methodological issues. But to preview, it appears that many of these experts offer opinions about features for which the Court held Defendants cannot be held liable under Section 230 and the First Amendment. *See, e.g.*, Estes Rep. (May 16, 2025) at 16-25 (opining about notifications, algorithms, infinite scroll, autoplay, likes, and ephemerality). Others offer opinions on alternative designs without explaining how they could be implemented or demonstrating that they are feasible. Still others appear to lack necessary qualifications, do not base their opinions on sufficient facts and data, and/or offer no discernable methodology at all.

## II.    <u>Motions for Summary Judgment.</u>

      **A.**     **Joint MSJ as to Failure-to-Warn Claims.** Defendants plan to file a cross-cutting

---

[2] Plaintiffs submitted a "rebuttal" report on behalf of another expert, Bagot, in the *Melton* case that is in fact an untimely opening report. Defendants intend to move to strike that report. If that motion is denied, they will seek to exclude Bagot under Rule 702.

MSJ on the PI and SD Plaintiffs' failure-to-warn claims.[3] This Court held that Section 230 and the First Amendment bar Plaintiffs' claims to the extent they are based on enumerated features that implicate Defendants' roles and conduct as publishers of third-party content. The Court declined to dismiss Plaintiffs' failure-to-warn claims based on those otherwise-barred features (ECF 430, 1214), but invited Defendants to raise this issue again on summary judgment (ECF 1214 at 37). In their MSJ, Defendants will argue that Plaintiffs seek to impose on them a duty to warn of alleged harms arising from their own publishing activities—activities this Court has already found protected under Section 230. The Ninth Circuit has repeatedly—and recently—held that, absent allegations giving rise to a duty to warn that is *separate* from a defendant's status or conduct as a publisher, Section 230 precludes failure-to-warn claims seeking to hold a defendant liable in its role or for its activities as a publisher of third-party content. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride v. Yolo Techs., Inc.*, 112 F. 4th 1168, 1179-82 (9th Cir. 2024). It has also held that compelled disclosures about the risks of speech (i.e., warnings) violate the First Amendment. *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024).

**B.    Joint MSJs as to Each SD Bellwether.** Defendants anticipate addressing the following issues in their joint MSJs as to each of the six SD BWs:

*Section 230/First Amendment.* No SD has carried its burden to proffer evidence even remotely establishing that Defendants' actionable conduct regarding the at-issue features—as opposed to the publication of content, third-party bad acts, or students' alleged property damage—caused their alleged harm, including because they have failed to show that Defendants "facilitate[d] or "promoted" any "dangerous challenges," ECF 1267 at 25. *E.g.*, *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, *Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009); *Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882, 885 (N.D. Cal. 2024).

*No Causation.* No SD has demonstrated that any of Defendants' platforms caused its purported injuries—let alone "substantially interfered" with a public right. The SDs lack evidence on key threshold points that are needed to establish a causal link between Defendants' platforms and the alleged harm, *e.g.*, how many of their students use social media platforms at all, the frequency and duration of use by those who do, which platforms and features they use, whether or how that use is connected to any SD's harms, the number of disciplinary incidents involving social media in the SD, and the number of student mental health issues purportedly linked to Defendants' platforms. Finally, the Court held that SDs had alleged proximate causation based in part on their allegation that Defendants "targeted" schools; but no record evidence, or proffered expert testimony, supports those allegations.

*SD-Specific Failure to Warn.* Defendants do not have a duty to warn SDs directly that students' use of their platforms may lead to adverse health effects that, in turn, may cause downstream harm to SDs. Nor do Defendants owe a duty to SDs to warn others, such as students or parents, about alleged adverse health effects. *E.g.*, *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. Ct. App. 2008). The SDs have adduced no evidence of what a warning to SDs should look like, or

---

[3] Defendants have several additional overlapping legal arguments and are amenable to combining their briefing as to those arguments, if it would be helpful to the Court.

that different warnings to SDs, parents, or students would have made any difference in terms of their alleged injuries.

*Past Damages.* The SDs have proffered no evidence of the damages categories this Court held were recoverable for non-derivative injuries. ECF 1267 at 19-21. First, "lost time" spent by staff addressing "social media concerns" is not recoverable. *See supra* I.B. Second, there is no evidence that any SD hired additional mental health personnel, developed new mental health resources, or increased financial resources because of Defendants' platforms as opposed to other, unrelated factors. Third, the alleged property damage identified in discovery was caused by the wrongful acts of third parties, for which the SDs cannot recover (*see* ECF 1267 at 45).

*Abatement/Future Damages.* The SDs cannot receive funding for their voluntary "strategic plans" to address anticipated student mental health issues under either an abatement or future damages theory. First, because the Court dismissed the public nuisance claim in *Irvington* and *Charleston*, those SDs are not entitled to abatement. Second, the SDs seek as "abatement" the payment of significant sums of money to fund a voluntary plan to address anticipated student mental health issues in the future—regardless of whether Defendants' actionable conduct caused those issues. That is not proper: abatement is an equitable remedy that has been limited to injunctions to stop the nuisance-causing conduct and courts limit abatement to measures necessary to mitigate the source of harm. *E.g.*, *City of Atlanta v. Wolcott*, 240 Ga. 244 (1977); *Ajamian v. N. Bergen Twp.*, 103 N.J. Super. 61, 80 (Law. Div. 1968). Third, the SDs' abatement plan is impermissibly derivative. *Ass'n of Wash. Public Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001). Fourth, the SDs may not recover the costs of their "strategic plans" as "future damages" because the plans do not attempt to measure costs the SDs are reasonably certain to incur in the future. *E.g.*, *Ajamian*, 103 N.J. Super. at 80.

**C.    Defendant-Specific MSJs as to 5 PI Bellwethers.** In addition to the joint MSJs noted above, each Defendant plans to file one MSJ in each PI case, where named.

*YouTube.* YouTube intends to seek summary judgment as to all remaining claims asserted by Plaintiffs Leslie Smith and her mother Jessica Smith—the only BW PI case involving YouTube. Leslie Smith disclaimed most of the harms she asserted from YouTube and its features, and her only remaining theories of liability—that she was originally injured by (1) viewing the content of particular YouTube videos; (2) receiving notifications about third-party content; and (3) viewing videos suggested by YouTube's search and recommendation algorithms—are barred by Section 230 and the First Amendment under the Court's prior orders (and established law). Plaintiffs also cannot prove causation: there is insufficient evidence that YouTube's at-issue features were the factual and legal cause of Smith's alleged injuries. Finally, Plaintiffs' failure-to-warn, consumer protection, and negligence per se claims, along with Jessica Smith's derivative loss-of-consortium claim, fail for lack of evidence on additional core elements.

*Snap.* Snap intends to seek summary judgment as to all remaining claims asserted by Clevenger, Melton, D'Orazio, and Smith—emphasizing in these motions that Plaintiffs primarily used Snapchat for messaging, which undermines Plaintiffs' causal theories and also cannot give rise to a viable claim under Section 230. 702 F. Supp. 3d 809, 833 (N.D. Cal. 2023) (claims challenging "private messaging" barred by Section 230). Snap will seek summary judgment for these claims as they arise from third-party content and protected publisher functions (which are

barred by Section 230 and the First Amendment) and from Snap's own speech (which are barred under the First Amendment). Snap also will assert Plaintiff-specific arguments. Specifically, Clevenger's claims are time-barred: a healthcare provider told Plaintiff that their alleged injuries were related to use of social media in 2016, yet Clevenger did not sue until three years after the statute of limitations expired. Clevenger also only used Snapchat, on average, for 38 minutes per day, which refutes any claim of "addiction." Melton has no diagnosed mental health disorders other than ADHD, and no expert has tied that diagnosis to use of Snapchat. D'Orazio primarily used Snapchat as a messaging platform and acknowledged that it was her primary form of communication with her friends. Using Snapchat as a vehicle for messaging does not support a claim for addiction. Finally, Smith's disordered eating behavior began at age 4, and she was diagnosed with an eating disorder at age 11, predating her use of Snapchat.

*TikTok.* Plaintiffs' "defect" design claims fail because TikTok offered the tools sought by Plaintiffs (such as opt-in screentime tools or parental controls) during the period in which each Plaintiff claims to have used TikTok—and Plaintiffs do not show that any of their proposed designs are feasible or would not infringe federal law. Likewise, there is no "defect" to warn about, TikTok already disclosed the kinds of information Plaintiffs seek through warnings (like privacy policies or guidelines on using TikTok features). There is also no triable issue as to whether TikTok's features caused Plaintiffs' claimed injuries. For example, Smith's multiple mental health diagnoses precede using TikTok, as do the injuries claimed by D'Orazio, Mullen, and Clevenger. Melton specifically testified that he was not exposed to harmful content on TikTok and did not claim harm from TikTok features. Plaintiffs cannot allege negligence per se claims against TikTok: D'Orazio, Melton, Smith, and Clevenger first used TikTok over the age of 13, and no PI BW alleges CSAM violations. Moreover, the specific ways each Plaintiff alleges interactions with features of TikTok violate Section 230 and the First Amendment, because their injuries hinge on TikTok's compilation and dissemination of third-party content, and Plaintiffs have made no effort to disentangle the harm stemming from content from the features themselves. Finally, Clevenger's claims are time-barred. And the consumer protection claims fail because they are inapplicable and unsupported by the evidence.

*Meta.* Plaintiffs' challenges to specific features of the Instagram and Facebook platforms are largely barred by Section 230 and the First Amendment for reasons already articulated, and Plaintiffs lack evidence that any features *not* barred from challenge caused their injuries. Plaintiffs' design defect and failure-to-warn claims fail also because Meta offered the tools and/or disclosures Plaintiffs seek (to the extent not barred from challenge by Section 230) during the Relevant Time Period and/or Plaintiffs admitted they would not have used the requested tools. Plaintiffs' California Consumer Protection claims fail because the statutes at issue do not apply extraterritorially to Meta's alleged conduct—including the purported omission of facts that allegedly should have been disclosed to Plaintiffs in their resident states. Plaintiffs' fraudulent and negligent concealment and misrepresentation claims (asserted only against Meta) fail for lack of evidence that Plaintiffs relied on any alleged misrepresentation or would have acted differently had alleged material facts been disclosed, and because the concealment theories are not recognized under applicable state law. Plaintiffs' negligence per se claims, meanwhile, cannot be based on the federal statutory duties upon which Plaintiffs seek to base them under applicable state law. Finally, Clevenger's claims are time-barred, D'Orazio's tort claims fail because they have been subsumed by the New Jersey Product Liability Act, and other individual BW claims fail against Meta for additional case-specific reasons, including those articulated by other Defendants above.

Dated:  August 8, 2025                    **KING & SPALDING LLP**


By:*/s/ Geoffrey M. Drake*
    Geoffrey M. Drake, *pro hac vice*
    gdrake@kslaw.com
    TaCara D. Harris, *pro hac vice*
    tharris@kslaw.com
    KING & SPALDING LLP
    1180 Peachtree Street, NE, Suite 1600
    Atlanta, GA 30309
    Tel.: (404) 572-4600

    David P. Mattern, *pro hac vice*
    dmattern@kslaw.com
    KING & SPALDING LLP
    1700 Pennsylvania Ave., NW, Suite 900
    Washington, DC 20006-4707
    Tel.: (202) 737-0500

    Bailey J. Langner (SBN 307753)
    blangner@kslaw.com
    KING & SPALDING LLP
    50 California Street, Suite 3300
    San Francisco, CA 94111
    TEL.: (415) 318-1200

    *Attorneys for Defendants*
    *TikTok Inc., ByteDance Inc., TikTok Ltd.,*
    *ByteDance Ltd., and TikTok LLC*

**COVINGTON & BURLING LLP**


By:*/s/ Ashley M. Simonsen*
    ASHLEY M. SIMONSEN, SBN 275203
    asimonsen@cov.com
    COVINGTON & BURLING LLP
    1999 Avenue of the Stars
    Los Angeles, CA 90067
    Tel.: 424-332-4800

    PHYLLIS A. JONES, *pro hac vice*
    pajones@cov.com
    PAUL W. SCHMIDT, *pro hac vice*
    pschmidt@cov.com
    COVINGTON & BURLING LLP
    One City Center
    850 Tenth Street, NW
    Washington, DC 20001-4956
    Tel.: 202-662-6000

*Attorneys for Defendants Meta Platforms, Inc., Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC, Instagram, LLC, and Siculus, Inc.*

**MUNGER, TOLLES & OLSON LLP**


By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Tel.: 415-512-4000

Rose L. Ehler, SBN 29652
rose.ehler@mto.com
Victoria A. Degtyareva, SBN 84199
victoria.degtyareva@mto.com
Ariel T. Teshuva, SBN 324238
ariel.teshuva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Tel.: 213-683-9100

*Attorneys for Defendant Snap Inc.*

**KIRKLAND & ELLIS LLP**


By: */s/ Jessica Davidson*
JESSICA DAVIDSON, *pro hac vice*
JOHN NOLAN, *pro hac vice*
jessica.davidson@kirkland.com
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: 212-446-4800

ALLISON M. BROWN, pro hac vice
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: 215-268-5000

CATHERINE MULLALEY, pro hac vice
catherine.mullaley@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116

*Attorneys for Defendant Snap Inc.*

**WILSON SONSINI GOODRICH &
ROSATI LLP**

By: */s/ Brian M. Willen*
    Brian M. Willen, *pro hac vice*
    bwillen@wsgr.com
    WILSON SONSINI GOODRICH &
    ROSATI LLP
    1301 Avenue of the Americas, 40th Floor
    New York, New York 10019
    Tel.: (212) 999-5800

    Lauren Gallo White SBN 309075
    lwhite@wsgr.com
    Samantha A. Machock (SBN 298852)
    smachock@wsgr.com
    WILSON SONSINI GOODRICH &
    ROSATI LLP
    One Market Plaza, Spear Tower, Suite
    3300
    San Francisco, CA 94105
    Tel.: (415) 947-2000

    Christopher Chiou (SBN 233587)
    cchiou@wsgr.com
    Matthew K. Donohue (SBN 302144)
    mdonohue@wsgr.com
    WILSON SONSINI GOODRICH &
    ROSATI LLP
    953 East Third Street, Suite 100
    Los Angeles, CA 90013
    Tel.: (323) 210-2900

    *Attorneys for Defendant YouTube, LLC, and
    Google LLC*

**WILLIAMS & CONNOLLY LLP**

By: */s/ Joseph G. Petrosinelli*
    JOSEPH G. PETROSINELLI, *pro hac
    vice*

jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: 202-434-5000

*Attorneys for Defendant YouTube, LLC, and Google LLC*

**MORGAN, LEWIS & BOCKIUS LLP**

By:*/s/ Yardena R. Zwang-Weissman*
YARDENA R. ZWANG-WEISSMAN,
(SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
yardena.zwang-
weissman@morganlewis.com

BRIAN ERCOLE (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
brian.ercole@morganlewis.com

STEPHANIE SCHUSTER (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: 202.373.6595
stephanie.schuster@morganlewis.com

*Attorneys for Defendant YouTube, LLC, and Google LLC*

## ATTESTATION

I, Geoffrey M. Drake, hereby attest, pursuant to N.D. Cal. Civil L.R. 5–1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 8, 2025                   By:   */s/ Geoffrey M. Drake*
                                                  Geoffrey M. Drake

EXHIBIT A

**Exhibit A: MDL Plaintiffs' Experts**

| Expert<br>* = listed more than once<br>(multiple opinions) | Short Description of Opinion/<br>Expertise | Defendants for Which<br>Opinions Are Offered | Opinion Offered by PI<br>Plaintiffs [if Case-Specific,<br>by Which BWs] | Opinion Offered by SD<br>Plaintiffs [if Case-Specific, by<br>Which BWs] | Opinion Offered by<br>MDL AGs (for<br>Meta) |
|---|---|---|---|---|---|
| Bejar, Arturo* | General Causation | Meta | PI | SD | AGs |
| Christakis, Dmitri | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Cingel, Drew | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Goldfield, Gary | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Hale, Lauren (Rebuttal Expert) | General Causation | Meta | | | AGs |
| Hoover, Sharon* | General Causation | Meta, Snap, TT, YT | | SD | |
| Lembke, Anna | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Mojtabai, Ramin | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Murray, Stuart* | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Prinstein, Mitch | General Causation | Meta | | | AGs |
| Rubaek, Lotte | General Causation | Meta | PI | SD | AGs |
| Telzer, Eva | General Causation | Meta, Snap, TT, YT | PI | SD | |
| Twenge, Jean | General Causation | Meta, Snap, TT, YT | PI | SD | AGs |
| Zicherman, Bradley | General Causation | Meta | | | AGs |
| Hoover, Sharon* | School District | Meta, Snap, TT, YT | | SD [Breathitt, Charleston, DeKalb, Harford, Irvington, Tucson] | |
| Klein, Robert | School District | Meta, Snap, TT, YT | | SD [Breathitt, Charleston, DeKalb, Harford, Irvington, Tucson] | |

**Exhibit A: MDL Plaintiffs' Experts**

| Expert * = listed more than once (multiple opinions) | Short Description of Opinion/ Expertise | Defendants for Which Opinions Are Offered | Opinion Offered by PI Plaintiffs [if Case-Specific, by Which BWs] | Opinion Offered by SD Plaintiffs [if Case-Specific, by Which BWs] | Opinion Offered by MDL AGs (for Meta) |
|---|---|---|---|---|---|
| Leslie, Douglas | School District | Meta, Snap, TT, YT | | SD [Breathitt, Charleston, DeKalb, Harford, Irvington, Tucson] | |
| Meyers, Jeffrey | School District | Meta, Snap, TT, YT | | SD [Breathitt, Charleston, DeKalb, Harford, Irvington, Tucson] | |
| Osborne, Brian | School District | Meta, Snap, TT, YT | | SD | |
| Ward, Bryce | School District | Meta, Snap, TT, YT | | SD [Breathitt, Charleston, DeKalb, Harford, Irvington, Tuscon] | |
| Bagot, Kara (Rebuttal Expert) | Specific Causation | Meta, Snap, TT, YT | Melton | | |
| Lowenthal, Sarah | Specific Causation | Meta, Snap, TT | Melton | | |
| Murray, Stuart* | Specific Causation | Meta, Snap, TT, YT | Clevenger, D'Orazio, Mullen | | |
| Sobalvarro, Sarah | Specific Causation | Meta, Snap, TT, YT | Smith | | |
| Karabiyik, Umit (Rebuttal Expert) | User Data | Meta, Snap, TT, YT | PI | | |
| McCarron, Meredith | User Data | Meta, Snap, TT, YT | PI | | |
| Bejar, Arturo* | (1) Design; (2) Corporate Social Responsibility | Meta | PI | SD | AGs |
| Chandler, John | Marketing | Meta, Snap, TT, YT | PI | SD | |
| Drumwright, Minette | (1) Corporate Social Responsibility; (2) Marketing | Meta, Snap, TT, YT | PI | SD | |
| Estes, Tim | Design | Meta, Snap, TT, YT | PI | SD | |
| Gray, Colin | Design | Meta, Snap, TT, YT | PI | SD | AGs |
| Istook, Brooke | Design | Meta, Snap, TT, YT | PI | SD | |

**Exhibit A: MDL Plaintiffs' Experts**

| Expert<br>* = listed more than once<br>*(multiple opinions)* | Short Description of Opinion/ Expertise | Defendants for Which Opinions Are Offered | Opinion Offered by PI Plaintiffs [if Case-Specific, by Which BWs] | Opinion Offered by SD Plaintiffs [if Case-Specific, by Which BWs] | Opinion Offered by MDL AGs (for Meta) |
|---|---|---|---|---|---|
| Johnson, Robert | Defendants' Financial Condition | Meta, Snap, YT | PI | SD | |
| Narayanan, Arvind | Design | Meta, Snap, TT, YT | PI | SD | AGs |
| Noar, Seth | Warnings | Meta, Snap, TT, YT | PI | SD | |