UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All matters* | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br><br>**JOINT LETTER BRIEF REGARDING PLAINTIFFS' MOTION TO COMPEL META TO PRODUCE TRANSCRIPTS OF ALL DEPOSITIONS TAKEN AND DOCUMENTS PRODUCED IN STATE-COURT AG ACTIONS AFTER MDL CLOSE OF FACT DISCOVERY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

    Pursuant to the Court's Standing Order for Discovery in Civil Cases, the MDL PISD Plaintiffs ("Plaintiffs") and Meta Defendants ("Meta") respectfully submit this letter brief regarding Plaintiffs' motion to compel Meta to produce transcripts of all depositions taken and documents produced in state-court AG actions after the MDL close of fact discovery.

    Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they met and conferred by video conference, correspondence, and telephone before filing this brief. The final conferral was held on August 5, 2025 by telephone, with a prior conferral attended by lead trial counsel for Plaintiffs and Meta held on July 27, 2025 via videoconference.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

    The Parties respectfully defer to the Court regarding whether oral argument would be helpful in resolving this dispute.


Respectfully submitted,


DATED: August 9, 2025                      By: */s/ Previn Warren*
                                                         PREVIN WARREN
                                                         **MOTLEY RICE LLC**
                                                         401 9th Street NW Suite 630
                                                         Washington DC 20004

Telephone: 202-386-9610
pwarren@motleyrice.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

*Counsel to Co-Lead Counsel and Settlement Counsel*

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

*Liaison Counsel and Ombudsperson*

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

ELLYN HURD
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 212-257-8482
ehurd@simmonsfirm.com

ANDRE MURA
**GIBBS MURA, A LAW GROUP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Plaintiffs' Steering Committee Leadership*


**COVINGTON & BURLING LLP**

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*

iii

Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

**PISD Plaintiffs Position:** PISD Plaintiffs are entitled to (1) the deposition transcripts and exhibits and (2) non-duplicative document productions in the non-MDL State Attorneys General (hereinafter "AG") cases that occurred after the close of fact discovery. Starting with the transcripts, these documents are squarely covered by Plaintiffs' Request for Production ("RFP") 224[1] and PISD Plaintiffs made timely requests to Meta to meet and confer to discuss their production. Likewise, given the overlap in factual issues between Plaintiffs' case and the non-MDL AGs' cases, Plaintiffs are entitled to supplemental productions of non-duplicative documents that were not already produced in this case. Despite Meta's arguments to the contrary, withholding these documents is both unjustified and unsupported by the law.

Under Rule 26(e)(1), a party is obligated to supplement its response to an RFP if they discover that the disclosure or response is "incomplete or incorrect" and the corrective information was "not otherwise made known to the other parties." Fed. R. Civ. Proc. 26(e)(1). Courts have explained that "parties are expected to supplement and/or correct their disclosures… without the need for a request from opposing counsel or an order from the Court." *Jones v. Travelers Casualty Ins. Co. of Am.*, 304 F.R.D. 677, 679 (N.D. Cal. 2015) (citation omitted). In addition, "once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions" under Fed. R. Civ. Proc. 37. *Id* (citation omitted). Thus, it is Meta's burden to show why its refusal to produce these transcripts and documents does not violate its discovery obligations.

Meta's primary justification for its refusal to produce this information is that the depositions and non-duplicative document productions at issue occurred after the close of fact discovery (April 4, 2025) in this case. At the core of this argument is Meta's belief that production of these documents would amount to an "end around" to the deposition and discovery limits set by the Court. However, courts addressing this issue have routinely dismissed this argument. *See Apple, Inc. v. Samsung Electronics Co. Ltd.*, 2012 WL 1232267 at *5 (N.D. Cal. Apr. 12, 2012) (dismissing Apple's argument that the production of deposition transcripts from related actions were an "end-run around the 250-hour limit on depositions in this case"). As the court in *Apple* explained, when materials "fall squarely within the scope of [an] RFP" then the "relevance [of those materials] is substantial enough to justify the burden to Apple of producing them." 2012 WL 1232267 at *6 (N.D. Cal. Apr. 12, 2012). This is particularly true where a party previously agreed to the scope of a particular request. *See id.* at *5 (ordering Apple to produce "all relevant deposition transcripts based on the [technological nexus] standard that it itself proffered").

Here, RFP 224 seeks the production transcripts and audiovisual recordings of deposition testimony taken in cases that involve conduct by Meta that is substantially related to the issues in Plaintiffs' case. During initial meet and confers between the Parties, the scope of this RFP was narrowed to cover the list of "Related Actions" identified in Appendix A of the Stipulated Deposition Protocol. *See* Stipulated Deposition Protocol, ECF No. 742 at p. 31-32. Those include the actions at issue here.

In an effort to avoid involving the Court, PISD Plaintiffs reached out to Meta in May notifying them of (1) PISD Plaintiffs' position with respect to their continuing discovery obligations and (2)

---

[1] Request No. 224 seeks "[c]opies of the transcripts and audiovisual recordings of testimony given in the [Related Actions]." *See* Ex. A: Copy of RFP 224.

reach an agreement on a "reasonable schedule" for the production of these documents. Rather than negotiate in good faith, Meta stalled PISD Plaintiffs efforts for nearly two months before declaring that they would refuse to produce the requested transcripts on the basis that the depositions were taken after the close of discovery in this case. Meta refused to even provide Plaintiffs with a "list of all such depositions that have occurred since [the close of discovery]" (but confusingly agreed to meet and confer to discuss "one-off" productions provided PISD Plaintiffs' could "show good cause"—a standard PISD Plaintiffs could not possibly meet given Meta's refusal to provide basic information about the discovery that has been withheld).

With respect to document productions beyond the deposition transcripts, Meta has unequivocally refused to reproduce documents produced to the non-MDL AGs but not made in this case. Far from being "an overbroad and untimely attempt at a fishing expedition for documents bearing no relationship to this case," these productions would constitute further coordination of discovery between the MDL and non-MDL AG cases. *See* 2012 WL 1232267 at *6. Notably, the MDL AGs already have access to these productions as well as non-MDL AG deposition transcripts through their joint law enforcement sharing provision, resulting in a pointless and unworkable disconnect in access between the Plaintiffs in the MDL itself. Further, despite Meta's arguments to the contrary, the mere fact that these productions were made to the non-MDL AGs after the April 4 cutoff is not grounds to avoid their continuing discovery obligations. This is particularly true when considering that Meta has not contested that these documents are responsive to some or all of the 367 RFPs that Plaintiffs served to Meta during the discovery period. Again, the rule is clear: "A party who has … responded to a[] request for production … must supplement or correct its disclosure … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete… and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. Proc. 26(e)(1). "The duty to supplement continues even after the discovery period has closed," and "[c]onsistent with this obligation, a motion to enforce Rule 26(e)'s supplementation requirement may also be brought after the close of discovery." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022) (cleaned up); *accord Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS (TSH), 2019 WL 5565942, at *2 (N.D. Cal. Oct. 29, 2019) (collecting cases).

Finally, while Meta has not claimed burden during any of the parties' discussions leading up to the filing of this joint letter brief, it bears mentioning that any argument to that effect would be specious. Meta has already produced these transcripts and documents—meaning it has already incurred the cost of reviewing, marking, and redacting them for privilege and confidentiality. All that PISD Plaintiffs request here is that Meta, in effect, forward these productions to a new set of recipients.

Based on the arguments above, this Court should compel Meta to produce all deposition transcripts, exhibits, and audiovisual recordings from the non-MDL AG actions pursuant to Plaintiffs RFP 224, Rule 26(e), and Rule 37(a)(3)(A).

**Meta's Position:** Plaintiffs' demand for all documents produced and transcripts of all depositions taken in ongoing state-court AG actions, *after* the close of fact discovery here, should be denied for procedural, practical, and substantive reasons. It would upend the finality of a capped discovery record that both sides agreed to and need to prepare the MDL/JCCP cases for trial.

Local Rule 37-3 defines a "discovery cut-off' as "the date by which all responses to written discovery are due and by which all depositions must be concluded." "The purpose of a discovery cutoff date is to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately for trial." *L.A. News Serv. v. CBS Broadcasting, Inc.*, 305 F.3d 924, 933 (9th Cir. 2002).

Here, MDL/JCCP Plaintiffs purposefully negotiated for an earlier fact discovery cut-off than in the state-court AG actions so that they could get to trial sooner. The MDL Court then set the fact discovery cut-off as April 4, 2025, and the JCCP Court set the first case for trial in November 2025. Meta complied with its discovery obligations during this discovery period. Meta ran hundreds of agreed search terms over documents collected from over 125 agreed custodians over a Court-ordered Relevant Time Period that ended on April 1, 2024. Meta also executed targeted searches in response to various document requests, as narrowed by objections, agreement, or Court order. With a handful of carefully delineated exceptions, the discovery record resulting from efforts of both types of document searches is complete.[2]

The Parties need the finality of a defined discovery record in order to prepare these cases for trial. *See FDIC v. BayOne Real Estate Inv. Corp.*, 2017 WL 1316888, at *2 (N.D. Cal. Apr. 10, 2017) (discovery after cut-off date would prejudice defendant because universe of relevant documents would not be settled prior to trial). "[O]therwise," as this Court recently held in sustaining MDL Plaintiffs' objection to further discovery into their accounts, "a party could insist on pursuing fact discovery on myriad issues right up to the eve of trial, thereby hindering other pretrial proceedings and, ultimately, the orderly preparation of a case for trial." ECF 1990 at 7. Indeed, the JCCP Plaintiffs have resisted the same further discovery into their accounts, "[c]onsistent with the MDL court's emphasis that fact discovery must 'come to an end, even in the most complex cases,'" arguing that "the comprehensive collection and review efforts already completed provide a sufficient discovery record for Defendants[] to prepare for trial." Plaintiffs cannot have their cake and eat it too, keeping open a one-way street in which they continue to obtain discovery they did not themselves seek, in cases they wanted to beat to trial. "[T]o conclude otherwise would be to invite rolling discovery in a way that would unfairly burden [Meta] and indefinitely postpone trial." *Our Children's Earth v. Leland Stanford Junior Univ.*, 2015 WL 12964638, at *3 (N.D. Cal. Oct. 29, 2015).

That Meta previously agreed (in response to RFP No. 285) to reproduce to MDL/JCCP Plaintiffs documents produced in state-court cases (to the extent relevant) is beside the point; any reproduction obligation in response to that RFP ended when the fact discovery period in the MDL closed. Any future reproductions, moreover, would not be proportional to Plaintiffs' needs given the amount of discovery already received and the high likelihood that further reproductions would either be cumulative of the over-2.5 million documents already produced to MDL/JCCP Plaintiffs, or not relevant. *Cf. Barnhill v. Bos. Sci. Corp.*, 2021 WL 424441, at *2 (D. Neb. Feb. 8, 2021) (denying supplemental discovery after transfer of case from MDL when plaintiffs had already received millions of documents in discovery). Moreover, the disputed materials are beyond the scope of the agreed and litigated scope of discovery here; the documents implicate different custodians, different search terms, different requests for targeted searches (including for state-

---

[2] Meta acknowledges that the Parties have negotiated a handful of exceptions to the cut-off for one-off issues. None of those exceptions applies to Plaintiffs' sweeping demands here.

3

specific data and documents), and different relevant time frames. To be sure, much of the alleged conduct in the non-MDL state cases is also at issue here. But the state-court cases involve at least some additional, state-specific issues and state-specific facts (as well as different witnesses, testifying in sometimes different capacities). And critically, fact discovery in this case has, with limited exceptions, closed. Experts have relied on that fixed record, as have lawyers, who need such finality in order to move these cases to trial.[3]

Plaintiffs' request for deposition transcripts, moreover, violates carefully negotiated discovery limitations entered by this Court after extensive argument. Under the Order Governing Discovery Limitations (ECF 702), the MDL and JCCP PI/SD Plaintiffs were allowed 240 hours, and the MDL AGs were allowed an additional 48 hours, to question Meta company witnesses in deposition (the "MDL Budget"). The Deposition Protocol, meanwhile, required Meta to give notice to Plaintiffs within 10 days after being served with a deposition notice in separate state-court "Related Actions." ECF 742 § II(H)(2). Plaintiffs then had 21 days to cross-notice the deposition, or they waived the right to later seek that witness's deposition absent a showing of good cause. *Id.* § II(H)(3). The Deposition Protocol carefully delineated how such cross-noticed depositions would count against the MDL Budget. *Id.* § II(H)(4). Plaintiffs' request for transcripts of all depositions taken in these Related Actions after the April 4, 2025 close of fact discovery would render meaningless these carefully crafted limits and protocols.

A Stipulation later entered by the Parties reinforces the impropriety of Plaintiffs' request. That Stipulation (ECF 1672) specifically provided for how depositions jointly noticed by the MDL/JCCP Plaintiffs and certain Non-MDL "Coordinated AGs" (MA, TN and AR), and conducted between February 11, 2025 *and April 4, 2025*, would count against the MDL Budget. The Stipulation required Meta to provide Plaintiffs with transcripts of any depositions of Meta witnesses taken "*on or before April 4, 2025*" by "Non-Coordinated AGs," whether or not Plaintiffs had cross-noticed or appeared at such depositions (which Meta has now done). ECF 1672 ¶ 5. The Parties reserved their rights with respect to depositions conducted by Non-MDL *Non-Coordinated* AGs after April 4, 2025, ECF 1672 ¶6, but *not* with respect to such depositions conducted by Coordinated AGs. These agreements were carefully structured, agreed upon, and ordered by the Court, with consideration and compromises in both directions. They should be upheld.

**PISD Plaintiff Rebuttal:** Meta's recitation of various stipulations is wrong. The Stipulations relating to deposition limits (ECF 667 and 742) place limits on *taking* depositions by the MDL Plaintiffs. They do not address or limit the scope of RFP 224 (or any other RFP) and therefore do not address whether Meta must produce deposition transcripts. The Stipulation at ECF 1672 does not address the issue at bar, and expressly states (in a paragraph Meta ignores): "With respect to depositions noticed by Non-MDL Non-Coordinated AGs conducted after April 4, 2025, the Parties reserve their rights and will endeavor to further meet and confer on this issue." ECF 1672 ¶ 6.

---

[3] Notably, Plaintiffs did not request continuing reproductions of Meta's state-court document productions (as opposed to deposition transcripts) until over three months *after* the close of MDL/JCCP fact discovery, reinforcing that this request is an afterthought at best. Indeed, when Meta confirmed during the Parties' conferral on deposition transcripts that it had stopped making those document reproductions as of April 4, 2025, Plaintiffs' counsel responded that they were not even aware that Meta had previously been making them.

The cases that Meta relies on are irrelevant. *FDIC* denied the Plaintiff's motion to compel on the basis that the discovery requests were served *after* the close of fact discovery. 2017 WL 1316888 at *1. *Our Children's Earth* denied the Plaintiffs' motion after finding they were not "diligent" after waiting "nearly five months" before moving to compel. 2015 WL 12964638, at * 2. Neither set of facts applies here. RFP 224 was served before the close of discovery and Plaintiffs promptly notified Meta of their intention to seek the production of the documents at issue. (Indeed, this issue was expressly known to Meta at least as of February 11, 2025, as indicated by Plaintiffs' reservation of rights. *See* ECF 1672 ¶ 6.) This is particularly true given that any non-duplicative documents produced to the non-MDL non-coordinated AGs should have already been produced in this case *prior* to the April 4 deadline.

As for the transcripts, Plaintiffs could not have moved to compel sooner since the transcripts at issue did not exist until after the close of fact discovery. Finally, Meta argues that this dispute amounts to either an attempt to circumvent the 240 hours that the Court allotted to the PISD Plaintiffs in ECF 667 or the close of fact discovery in ECF 1672. But this question was addressed squarely by the court in *Apple*. *See supra* at p. 1.

**Meta's Reply:** Plaintiffs observe that the MDL AGs have access to Meta's document productions and deposition transcripts in the "Related Actions," but that is beside the point; those productions and transcripts are not part of the discovery record in the MDL/JCCP. Nor does the Parties' negotiated resolution of RFP No. 224 support Plaintiffs' position. Under that negotiated resolution, Meta *did not agree* to produce transcripts of depositions taken in the Related Actions; Meta agreed only to *meet and confer* with Plaintiffs about requests for transcripts of such depositions, to the extent not cross-noticed by Plaintiffs, in the future, with no commitment to produce such transcripts. *See, e.g.*, *U.S. v. Crescendo Bioscience, Inc.*, 2021 WL 4129779, at *5 (N.D. Cal. Sept. 10, 2021) (when party "understood . . . and believed that" limit on discovery "was reasonable at the time" of initial production, there is no continuing duty to supplement beyond the initial agreement).[4] Meta remains willing to consider, once witness lists are exchanged for trial, whether a particular transcript of an identified trial witness, taken in the same capacity and addressing relevant issues, should be provided to MDL/JCCP Plaintiffs. But Plaintiffs' wholesale request for all such transcripts now should be denied.

---

[4] In *Apple*, by contrast, the plaintiffs sought to enforce a prior court order to produce transcripts and other materials from "prior cases." 2012 WL 1232267 at *4. Here, there is no prior court order Plaintiffs seek to enforce, and the discovery sought is not from "prior cases"; rather, it is being produced in the state-court cases after the fact discovery cut-off here. In *L.A. Terminals*, meanwhile, the court denied the requested discovery because, as here, no duty to supplement was triggered given that prior discovery responses were not incomplete when made.