UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 22-md-03047-YGR   (PHK) |
| | **ORDER GRANTING META'S ADMINISTRATIVE MOTION TO COMPEL JOINT LETTER BRIEFING BY NEW YORK STATE AGENCIES** |
| | Re: Dkt. 2128 |

This MDL has been referred to the undersigned for discovery. *See* Dkt. 426. Now pending before the Court is Meta's administrative motion to compel five New York agencies—the Governor's Office, the Council on Children and Families, the Department of Health, the Office of Mental Health, and the Office of Children and Family Services (collectively, "the New York agencies")—to participate in joint letter briefing regarding an apparent dispute as to those agencies' compliance with document discovery agreements previously entered into with Meta relating to this litigation. [Dkt. 2128]. The New York Governor's Office, on behalf of all five New York agencies, has filed an opposition to the motion. [Dkt. 2141]. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## ANALYSIS

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). Accordingly, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v.*

*Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").

The context of the instant motion relates to document discovery agreements reached between Meta and the New York agencies at the Discovery Management Conference ("DMC") held on January 16, 2025.  Meta argues that the New York agencies have since reneged on those agreements "by refusing to review two-thirds of the documents that they previously agreed to review unless Meta renegotiated and paid the [New York agencies'] review costs purportedly estimated using methodology that they declined to share."  [Dkt. 2128 at 2].  Meta argues that it has made good faith attempts to engage in the meet and confer process with the New York agencies, in accordance with this Court's mandatory discovery dispute resolution procedures.  *Id.* at 3; *see* Discovery Standing Order at § H.  Meta reports that the New York agencies have altogether refused to participate in joint letter briefing as to the instant dispute, asserting that they are not parties to this litigation, that they are not subject to the provisions of the Discovery Standing Order, and that this Court lacks jurisdiction to hear disputes relating to their discovery agreements with Meta.  [Dkt. 2128 at 3-4].

In their consolidated opposition to Meta's administrative motion, the New York agencies argue, first, that there is no ripe discovery dispute between the Parties, and second, that any such dispute (even if ripe) must be brought in New York federal court under Rule 45.  [Dkt. 2141 at 2]. The New York agencies argue that Rule 45 governs discovery sought from them because they are third parties.  *Id.*  They argue that a recently enacted New York law has "re-confirmed" that they are not parties to this litigation and also "re-confirmed" that the New York Attorney General does not control their documents.  *Id.* at 6-7.

This is not the first time these New York agencies have argued that this Court lacks jurisdiction to preside over their discovery disputes with Meta.  *See, e.g.,* Dkt. 1443.  Like many of the state agencies, the New York agencies have argued, repeatedly and at length during months of earlier proceedings in this case, that they are not subject to party discovery under *Citric Acid* and

United States District Court
Northern District of California

1    applicable legal doctrines.  *See, e.g.*, Dkt. 738-24; Dkt. 1168 at 35-36.  And based on that

2    assertion, the New York agencies have previously argued that this Court lacks jurisdiction to

3    adjudicate discovery disputes as to those agencies, that those agencies are not bound by Orders of

4    this Court, and that under Rule 45 the venue for any such disputes is federal court in New York.

5    *See, e.g.*, Dkt. 685 at 9; Dkt. 1443.

6          The current dispute thus creates a sense of *déjà vu*.  On September 6, 2024, in a 248-page

7    Order, the undersigned found the New York agencies are subject to party discovery.  [Dkt. 1117 at

8    169-174].  On March 6, 2025, in a fifty-two page Order, Judge Gonzalez Rogers denied the New

9    York agencies' request for relief from the Order issued by this Court on September 6, 2024, and,

10   in so doing, rejected the bases for the New York agencies' lack of jurisdiction argument.  [Dkt.

11   1741 at 40-41].  These rulings that the New York agencies are subject to party discovery are law

12   of the case and binding on all Parties (including the New York agencies) unless the rulings are

13   reconsidered by a properly presented motion for reconsideration or unless they are reversed by the

14   Ninth Circuit.  *See, e.g.*, *Monplaisir v. Integrated Tech Grp., LLC*, No. C 19-01484 WHA, 2021

15   WL 810259, at *2 (N.D. Cal. Mar. 3, 2021) (holding that the court's previous order compelling

16   arbitration was "the law of the case" which bound the parties and putative class members); *see

17   also TDN Money Sys. v. Everi Payments, Inc.*, 796 F. App'x 329, 332 (9th Cir. 2019) ("We have

18   long held that the law-of-the-case doctrine does not prevent district courts from reconsidering

19   pretrial orders[.]"); Civil L.R. 7-9 ("No party may notice a motion for reconsideration without first

20   obtaining leave of Court to file the motion.").

21         Here, the New York agencies argue that the promulgation of a "new" statute by the New

22   York legislature allows them to ignore the previous rulings issued in this case.  [Dkt. 2141 at 6].

23   The flaw in the New York agencies' argument is that they have not raised this issue in a properly

24   noticed motion for leave to seek reconsideration of Judge Gonzalez Rogers' March 6, 2025 Order.

25   The New York agencies have not sought leave to file a motion for reconsideration at all and have

26   not even attempted to satisfy the procedural and substantive requirements of Civil Local Rule 7-9.

27   Rather, in an unfounded exercise in self-help, they have taken the position that Judge Gonzalez

28   Rogers' March 6, 2025 Order is "erroneous" and thus not applicable to them, all without the

1    benefit of any court order.  And based on their self-proclaimed conclusion that Judge Gonzalez

2    Rogers' March 6, 2025 Order is no longer effective, they have argued that (a) they are not required

3    to formally meet and confer with Meta regarding these discovery disputes, (b) they are not subject

4    to this Court's Discovery Standing Order and the procedures therein for briefing such disputes,

5    and (c) they are not subject to this Court's jurisdiction to hear and adjudicate any such disputes.

6    *See* Dkt. 2141 at 6-7; *see also* Dkt. 2128-7 at 9 ("Discovery Standing Order ('DSO') section H.2

7    does not apply to the Executive Agencies.  The Executive Agencies are non-parties participating

8    in discovery pursuant to FRCP 45.  The New York Legislature and Governor have confirmed that

9    the Executive Agencies are non-parties to this litigation, and that the New York Attorney General

10   does not control their documents, contrary to Judge Kang's erroneous September order and Judge

11   Gonzalez Rogers' erroneous opinion affirming it.").

12        Fundamentally, the New York agencies' argument that this Court lacks jurisdiction to

13   adjudicate the underlying discovery dispute presupposes that the New York agencies were granted

14   leave to seek reconsideration from Judge Gonzalez Rogers of her March 6, 2025 Order,

15   presupposes that they would be granted such leave, and further presupposes that they would

16   prevail on the merits of the reconsideration arguments.  None of this has happened.  It is evident

17   that there are several hurdles which must be overcome before there is any substantiation of the

18   New York agencies' bald assertion that Judge Gonzalez Rogers' March 6, 2025 Order is

19   "erroneous."  As one example, it is unknown whether the "new" statute from New York would be

20   given retroactive effect by this Court.  The undersigned makes no findings or recommendations on

21   how any motion for leave to file a motion for reconsideration should be resolved, because no such

22   motion has been presented.  But to be clear, opposing Meta's administrative motion here is most

23   assuredly not the proper procedural or substantive vehicle to address whether the prior rulings are

24   correct, it is not the proper basis to refuse to obey a currently effective Order of this Court, and it

25   is, simply put, not a persuasive or proper opposition to the administrative motion.  And it should

26   be without question that the mere fact that Judge Gonzalez Rogers' March 6, 2025 Order is

27   currently on appeal does not give the New York agencies the right to ignore the previous rulings.

28   *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all

1   orders and judgments of courts must be complied with promptly.  If a person to whom a court

2   directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must

3   comply promptly with the order pending appeal.  Persons who make private determinations of the

4   law and refuse to obey an order generally risk criminal contempt even if the order is ultimately

5   ruled incorrect.").

6          The New York agencies' arguments as to lack of jurisdiction and venue are therefore

7   rejected as legally and procedurally erroneous.

8          None of the other arguments presented by the New York agencies are sufficient to warrant

9   denial of Meta's administrative motion.  To the extent that the New York agencies argue that they

10  are not bound by the Discovery Standing Order requirements because they are "third parties," that

11  argument is flatly rejected.  *See* Dkt. 2141 at 5; Dkt. 2128-7 at 3-4.  The Discovery Standing Order

12  expressly states that counsel for any parties, including third parties, are required to meet and

13  confer in accordance with the procedures set forth therein.  *See* Discovery Standing Order, § H.1

14  ("Counsel for all Parties (or third parties) involved in the dispute shall undertake reasonably

15  diligent efforts to confer and attempt to negotiate a resolution of the dispute[.]").  Labelling an

16  entity as a "third party" is not a basis to refuse to meet and confer or to refuse to participate in

17  joint letter briefing of discovery disputes.  The Discovery Standing Order, by its terms, covers *all*

18  discovery disputes—there is no basis for a person, entity, or governmental agency to argue that

19  they are not bound by the Discovery Standing Order when there is a discovery dispute involving

20  that person, entity, or government agency referred to this Court.  *Id.* §§ A, H.

21         Nor is it reasonable for the New York agencies to argue that they are somehow exempt

22  from the meet and confer and briefing requirements because they are "third parties" who lack

23  "lead trial counsel."  *See* Dkt. 2128-7 at 4.  Surely, the New York agencies' lawyers know that

24  third parties frequently and often are required to appear at trials and have their own trial counsel

25  representing their interests at that trial (and in pretrial proceedings).  It is obvious in context that

26  "lead trial counsel" in the Discovery Standing Order refers to the lead attorney in charge of the

27  team of lawyers representing the person, entity, or governmental agency at issue.  The New York

28  agencies' interpretation of the Discovery Standing Order is incorrect, overly pedantic, and not in

5

accord with the dictates of Federal Rule of Civil Procedure 1 or with the letter and spirit of this Court's many Orders providing guidance on the proper conduct of discovery in this MDL expected of professionals.

To the extent that the New York agencies argue that Meta's administrative motion should be denied because there has been an inadequate meet and confer, that argument is not a sufficient basis to refuse to brief the actual discovery dispute to the Court.  [Dkt. 2141 at 5].  Parties sometimes choose to include in their briefing on discovery disputes a recitation of the attempts to meet and confer to resolve the dispute, and unfortunately sometimes accuse and counter-accuse each other of "inadequate" efforts to meet and confer in good faith.  That is, whether there was an adequate meet and confer is not a basis to refuse to brief a discovery dispute, but rather can be included in the briefing on the discovery dispute itself.  Able counsel will use their judgment as to whether such arguments on the conduct of the meet and confers are persuasive or productive, as opposed to briefing the actual merits of the dispute.

## CONCLUSION

For all the reasons discussed herein, Meta's administrative motion [Dkt. 2128] is **GRANTED**.  The New York agencies **SHALL** comply fully with all provisions of this Court's Discovery Standing Order, including Section H, with regard to all discovery requests served on them in connection with this litigation.  As part of that compliance, counsel for the New York agencies **SHALL** appoint or designate their "lead trial counsel" for purposes of Section H of the Discovery Standing Order and **SHALL** identify such attorney to counsel for Meta on or before **August 15, 2025**.  Further, the Parties (which, to avoid myopic misinterpretation, refers herein to the Meta entities and the New York agencies collectively) are **ORDERED** to file their joint letter brief on the underlying discovery dispute regarding the New York agencies' documents on or before **August 15, 2025**.

The Court is gravely concerned that document discovery involving these New York agencies has been delayed this far.  The Parties reported to the undersigned at the January 2025 DMC that they had reached agreement on document discovery.  As Judge Gonzalez Rogers ordered in October 2024 with regard to discovery from state agencies:

6

1
2
3
4
5
6

> In this action, time is of the essence. . . . The AGs shall facilitate productions for and negotiations on behalf of the agencies in their respective states. . . . Further, the Court directs counsel for all the Parties to focus their efforts to discuss and negotiate discovery disputes in good faith, and to attempt to resolve and narrow as many disputes as possible without requiring intervention of the Court. . . . [T]o the extent Rule 45 subpoenas were not issued, the parties shall comply with Magistrate Judge Kang's orders regarding timing and procedures to complete this discovery, including finalizing relevant custodians, search terms, and the scope of relevant documents. Efficient resolution of this issue is paramount.

7 [Dkt. 1292 at 1-2].  That Order remains in full force and effect.

8      Able and experienced attorneys, particularly the senior members of the teams of attorneys

9 for all of the Parties here, are expected to and should know how to resolve disputes of the kind

10 discussed herein and how to resolve them efficiently and without undue delay.  The New York

11 agencies' arguments on this administrative motion raise the specter of foot-dragging—it is

12 disappointing that the dispute on the instant motion is over whether the Parties should be required

13 to brief the actual, underlying discovery dispute.  If the Parties demonstrate an inability to resolve

14 their disputes in a reasonable manner consistent with Rules 1 and 26, as well as this Court's

15 directives and Orders, the Court will consider imposing additional meet and confer procedures for

16 future discovery disputes, including but not limited to requiring any counsel directly involved in

17 any of the meet and confers to meet and confer in person regardless of geographic location;

18 requiring in-person meet and confers by lead trial counsel regardless of lead counsels' geographic

19 proximity; requiring meet and confers to take place in person at the San Francisco courthouse or

20 other location; requiring in-house counsel or Party representatives (including agency counsel) to

21 attend all meet and confers; the imposition of appropriate sanctions (including monetary

22 sanctions) for failure to adequately and reasonably meet and confer; the issuance of reports and

23 recommendations to Judge Gonzalez Rogers as to potential dispositive sanctions; and/or any other

24 sanction or other procedure the Court deems appropriate in the circumstances.

25 **IT IS SO ORDERED.**

26 Date:  August 11, 2025

27

28                                                      PETER H. KANG
                                                     United States Magistrate Judge

United States District Court
Northern District of California