UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br><br>*All Actions* | MDL No. 3047<br><br>Case No.:  4:22-md-03047-YGR-PHK<br><br>**DEFENDANTS' LETTER BRIEF OPPOSING PLAINTIFFS' ANTICIPATED RULE 702 MOTIONS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to CMO No. 25 (ECF 2124), Defendants respectfully submit this letter-brief outlining, at a high level, arguments they anticipate making in opposition to the Rule 702 arguments previewed by Plaintiffs in their August 8 letter-brief (ECF 2172) ("Pl. Br."). None of Plaintiffs' five anticipated motions has merit. And that Plaintiffs seek to file a purportedly limited number of motions is not, as they claim, a show of restraint: it is an indication of the strength of Defendants' experts and their opinions.

As an overarching point, Plaintiffs repeatedly argue that Defendants should not be permitted to present certain opinions because, they say, those opinions are based on legally barred or irrelevant matter—for instance, opinions about content and content moderation, child exploitation, and CSAM. Plaintiffs' argument proves too much: it is *Plaintiffs* who should not be permitted to introduce evidence on those topics as part of their case-in-chief, and *Plaintiffs'* experts who should not be permitted to offer opinions premised on such legally barred matters. But if Plaintiffs *are* permitted to present evidence and expert testimony on these issues, Defendants must be given a full and fair opportunity to rebut that evidence, including through responsive expert opinions. Defendants address each of Plaintiffs' anticipated motions below.

Of course, Defendants are open to conferring with Plaintiffs regarding any Rule 702 motions they file to streamline this process and reduce the burden placed on this Court.

1.      **Plaintiffs' Anticipated Motion #1: Exclusion of Rebuttal "Content Moderation" Opinions of Drs. Ferrara, Mattmann, and Chatterjee**

Drs. Ferrara, Mattmann, and Chatterjee's opinions about "content moderation" are rebuttal opinions that respond directly to *Plaintiffs' claims and evidence* (including their experts' opinions) regarding the kinds and impact of third-party content available on Defendants' platforms. To be clear: Defendants contend that Section 230 and the First Amendment bar certain of Plaintiffs' experts' opinions because they impermissibly rely on third-party content and protected publishing activity, *see* ECF 2173 at 2, and if Plaintiffs are precluded from presenting evidence regarding

third-party content, protected publishing activities, and content moderation, Defendants would have no need to (and would not) present expert evidence on these issues. But if such evidence is *not* excluded, Defendants will need a full opportunity to respond to it, including through their own experts' opinions on these issues.

As Defendants explained in their affirmative letter brief, many of Plaintiffs' experts impermissibly opine that harmful third-party content and Defendants' publication of it causes the alleged mental health issues, requiring exclusion of their opinions. *See* ECF 2173 at 2. Indeed, Plaintiffs' own letter brief provides the best evidence that Plaintiffs' theories seek to hold Defendants liable for third-party content and protected publishing activity. That letter brief candidly admits that Plaintiffs' theories target Defendants' content "recommendation algorithm[s]" and "recommendation systems." *See* Pl. Br. 1, 2. But this Court has squarely held that "[t]he publishing conduct covered by Section 230 immunity includes recommending content to users" and that algorithmic recommendations are protected on that basis. ECF 430 at 17–19; *see also* ECF 1267 at 13–14. Any attempt to argue that recommendation systems are different from content moderation ignores reality: both are aspects of publishing activity—choosing what to publish and not publish, to recommend and not recommend—and both are equally protected.

To the extent *Defendants'* experts discuss content moderation, they do so only in response to *Plaintiffs'* evidence, including Plaintiffs' experts' impermissible opinions on this topic. And those opinions follow Plaintiffs taking extensive fact discovery from Defendants on the topic of content moderation. While Defendants intend to move to exclude Plaintiffs' expert opinions and other evidence based on content and protected activities, if the Court rejects Defendants' arguments, Defendants' experts must be able to rebut that evidence. As Defendants will explain in opposing Plaintiffs' Rule 702 motions, Plaintiffs' *ex ante* attempt to exclude Defendants' experts' opinions would leave Plaintiffs' experts free to opine on topics barred by Section 230, while Defendants are prevented from responding.

To take one example, Plaintiffs claim that being recommended certain content caused them to have eating disorders (as Dr. Christakis opines). If the Court permits this argument, then it is relevant and admissible to point out that Meta prohibits content promoting eating disorders and has developed robust systems for detecting and removing such content at scale (as Dr. Ferrera explains). To take another example, the AGs have claimed that Meta's publicly reported content moderation statistics are false or misleading. Because the Court has permitted that claim to proceed, Meta must be able to defend against it by presenting expert evidence that those statistics are transparent, rigorous, reliable, and appropriate metrics of Meta's content moderation systems.

None of this "opens the door," Pl. Br. 3 (cleaned up), to Plaintiffs being able to *impose liability* for Defendants' purported failures to remove or moderate this content, because Section 230 immunity still applies. This is not an inequitable "sword-and-shield" approach to excluding evidence on the one hand while making use of it on the other: it is the equitable and natural consequence of the interplay between (1) Plaintiffs' particular theories in this case, which inescapably focus on content and publishing, and (2) a statutory immunity for content and publishing.

2. **Plaintiffs' Anticipated Motion #2**: Exclusion of "Moral Panic" Opinions of Dr. Hampton

Plaintiffs' arguments about Dr. Hampton's "moral panic" opinions fail to present any valid ground for exclusion under Rule 702. When it comes to qualifications, Dr. Hampton is a tenured professor and leading scholar in sociology, social networks, and the effect of technology on society. Dr. Hampton based his opinions on a comprehensive review of the scientific literature, historical analysis, and empirical data that applies accepted social-science methodologies.

Dr. Hampton's opinions are relevant and reliable. His opinions provide context on how technology is being vilified—and thereby blamed for social harms—under what is generally known as "moral panic." Moral panics refer to a "disproportionate, widespread fear" that a new "technology poses a threat to society." Hampton Rep. at 14, 17. This fear results in "isolated events and decontextualized evidence [becoming] accepted as commonplace in people's memories and contributes to a heightened and disproportionate sense of risk." *Id*.; *see also id*. at 17. In other words, moral panics lead to concerns that a new media or technology is harming society without valid scientific data. Dr. Hampton's opinions are relevant and helpful to the jury in making factual determinations on the important issue of general causation, not least in view of the unscientific positions taken by a number of Plaintiffs' experts using data that does not support their claims. For one, social media is the latest in a long line of similar "moral panics" (such as newspapers, radios, or telephones) that were once claimed to be harming youth and/or society as a whole despite a lack of scientific data to support these claims. Hearing testimony about this evidence (or lack thereof) no doubt will assist the factfinder in deciding general causation. For another, Plaintiffs are wrong to suggest that similar attempts to cast blame throughout history have "nothing to do with" this latest attempt as this is the very heart of what a moral panic is. *See* Pl. Br. 4. Specifically, each moral panic follows a familiar pattern: (1) a new technology is defined by some as a threat; (2) the threats are sensationalized and exaggerated to provoke an emotional response; (3) public concern/fear increases; (4) certain individuals emerge to respond to this "threat" and provide "expert" advice; and (5) the panic subsides as evidence contradicts the exaggerated claims. Hampton Rep. at 17. Then the cycle repeats itself, as the evidence demonstrates. Dr. Hampton—who Plaintiffs do not dispute is a qualified expert on this subject—explains in detail why, in his expert opinion, these past events *do* impact the current moral panic surrounding teen social media use. Plaintiffs' disagreement with his assessment provides no ground for exclusion under Rule 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

3. **Plaintiffs' Anticipated Motion #3**: Exclusion of "Private Litigation" Opinion of Dr. Hutt

Dr. Ethan Hutt is a professor and expert on the history of American education, education policy, and school reform who will provide the jury with valuable opinions about American education and its history. His core opinion (which Plaintiffs do not address) is that American public schools have a long history of being asked to address emerging social issues—whether related to technology, health, safety, or morality—often through new curricula, programs, or interventions. Dr. Hutt's research shows that schools' responses to these issues have been public policy decisions.

Dr. Hutt's testimony provides the jury with critical historical and policy context. It helps the jury understand that the expansion of school responsibilities in response to new societal challenges is not unique to social media but a recurring feature of American education. This context is relevant to the issues of foreseeability, proximate causation, and the reasonableness of the SD Plaintiffs' claimed damages. It also helps the jury distinguish between harms that actually arise from broader social trends or policy choices, as opposed to Defendants' platforms, as Plaintiffs allege. Dr. Hutt thus provides the jury a framework to evaluate whether the costs and harms alleged by the school districts are proximately caused by Defendants' services or are alternatively caused by societal factors and the independent, discretionary decisions by school boards and policymakers. And, contrary to Plaintiffs' argument, it does not matter that the Court permitted some SD claims to proceed past the pleadings stage: Dr. Hutt's opinion will help the jury determine whether *liability* is warranted.

4.   **Plaintiffs' Anticipated Motion #4**: PISD Plaintiffs' Exclusion of "Device Data" Opinions of Mr. Hammerquist

Plaintiffs seek to exclude the device usage data opinions of Erik Hammerquist—which respond to Plaintiffs' experts' opinions regarding platform usage—based on an argument that he analyzed data with too short a retention period. But that is the classic example of an issue that goes to (if anything) weight, not admissibility: Mr. Hammerquist opines that the data he used from images of devices created by Plaintiffs' vendor was reliable for these purposes, which renders it admissible, and Plaintiffs can raise this issue on cross-examination.

Contrary to Plaintiffs' claims, Mr. Hammerquist did not render any "historical" opinions about Plaintiffs' device usage outside of the period for which data was available. In addition, Mr. Hammerquist used well-recognized, industry-standard databases that are built for the purpose of identifying active application usage on devices, and industry-standard practices for validating that data. In contrast, the databases that Plaintiffs suggest Mr. Hammerquist should have used have significant limitations, which Mr. Hammerquist explained led to his decision not to rely on them—for instance, those databases cannot distinguish between active application usage and background processes and/or lose data when applications are removed from devices. In other words, Plaintiffs would have Mr. Hammerquist use *less* reliable data (while failing to challenge the accuracy of the data that was used). The duration of the available data Mr. Hammerquist used is, to be sure, limited. But that is a function of device design and operation, as well as the constraints of data collection from Plaintiffs' devices in this litigation. These ordinary constraints on data do not render Mr. Hammerquist's conclusions inadmissible. Mr. Hammerquist has fully explained his methodology for analyzing the data he had access to, and explained why that methodology, and the data itself, is reliable.

5.   **Plaintiffs' Anticipated Motion #5**: MDL AGs' Exclusion of Opinions of Drs. Birnholtz, Memon, Rogers, Shear, and Mr. Starr

These five experts, offered by Meta in the AG cases, all provide relevant, admissible opinions in those cases. It is unclear exactly what portions the AGs seek to exclude, but regardless, they seek to do so on the thinnest of bases: that they offer the same opinions in the PI/SD cases

(and sometimes, while doing so, respond to PI/SD-only experts). But that does not change the relevance of the opinions to the AGs' cases, and their portion of the letter brief fundamentally asks for early relevance rulings about specific experts based only on the vaguest, most general argument.

The experts that the AGs challenge all potentially offer relevant, helpful testimony *in the AG cases* (as they do for the PI/SD cases, which is why there is overlap). Because of the sequencing of the expert reports, Meta only had one round of reports and was obligated to include all affirmative and rebuttal opinions in those reports. The reports that the AGs reference present opinions regarding (and responsive to) both the PI/SD Plaintiffs and the AGs. Meta served those opinions in one report for the sake of efficiency and because of the substantial overlap between those sets of claims. Indeed, because of the overlap of the opinions of the PI/SD Plaintiffs and the AGs, Meta's responses to these opinions are substantially similar and intertwined in these reports.

The examples cited by the AGs only highlight this overlap and the efficiency of responding in a consolidated fashion. For example, the AGs argue that Dr. Memon improperly offers responsive testimony to three PI/SD-only experts, but Dr. Memon's responsive testimony on those points is part of his discussion of Meta's age verification processes. *See, e.g.*, Memon July 9 Rep. ¶¶ 47–48, 62–63, 87. That issue is core to the AG cases, regardless of whether the AGs put forward specific experts about them. To take another example, the AGs argue that any testimony by Dr. Rogers responsive to PI/SD-only experts Dr. Drumwright, Mr. Estes, Ms. Istook, and Dr. Noar should be excluded. Yet Dr. Rogers's rebuttal mentions opinions by Drs. Drumwright and Noar only in footnotes as points adjunct to those made above the line. *See, e.g.*, Rogers July 9 Rep. ¶¶ 176 n.313, 212 n.367, 215 n.371, 224 n.380, 88 n.472. Dr. Rogers's responsive testimony to Dr. Estes is part of a broader discussion of the resources and tools available to parents on Meta's platforms. *See, e.g.*, *id.* ¶¶ 262–65. And Dr. Rogers's responsive testimony to Dr. Istook is part of a set of opinions on safety controls, *id.* ¶ 176, and resources for parents, *id.* ¶¶ 257–60. So too with the experts reports of Dr. Birnholtz, Dr. Shear, and Mr. Starr. These issues all go "to the heart of [the AG] case." *Tekoh v. County of L.A.*, 75 F.4th 1264, 1266 (9th Cir. 2023) (reversing exclusion of such opinions under Rule 702).

Finally, the AGs claim in passing that issues related to "CSAM and child exploitation" are not relevant to their case. Pl. Br. 5. They should be held to that promise: evidence related to those issues should be excluded from their case-in-chief. But, at this stage, it is unclear what Plaintiffs believe qualifies as "CSAM and child exploitation" and what does not, including because they challenge as misleading Meta's public statements that it works to make its platforms "safe" for users. As a result, exclusion of responsive evidence at this point would be premature and decisions about such exclusion should be made at a later, more appropriate juncture.

DATED:  August 15, 2025         **COVINGTON & BURLING LLP**

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen

ASHLEY M. SIMONSEN, SBN 275203
asimonsen@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel.: 424-332-4800

PHYLLIS A. JONES, *pro hac vice*
pajones@cov.com
PAUL W. SCHMIDT, *pro hac vice*
pschmidt@cov.com
MICHAEL X. IMBROSCIO, *pro hac vice*
mimbroscio@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Tel.: 202-662-6000

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc.*

**MUNGER, TOLLES & OLSON LLP**

By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin

JONATHAN H. BLAVIN, SBN 230269
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel.: 415-512-4000

ROSE L. EHLER, SBN 29652
Rose.Ehler@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: 213-683-9100

*Attorneys for Defendant Snap Inc.*

**KIRKLAND & ELLIS LLP**

ALLISON BROWN, *pro hac vice*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4757
Email: Alli.Brown@kirkland.com

JESSICA DAVIDSON, *pro hac vice*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723
Email: Jessica.davidson@kirkland.com

*Attorneys for Defendant Snap Inc.*

**KING & SPALDING LLP**

By: */s/ Geoffrey M. Drake*
     Geoffrey M. Drake, *pro hac vice*
     TaCara D. Harris, *pro hac vice*
     1180 Peachtree Street, NE, Suite 1600
     Atlanta, GA 30309-3521
     Telephone: (404) 572-4600
     Facsimile: (404) 572-5100
     Email: gdrake@kslaw.com
           tharris@kslaw.com

     David P. Mattern, *pro hac vice*
     KING & SPALDING LLP
     1700 Pennsylvania Avenue, NW, Suite 900
     Washington, DC 20006-4707
     Telephone: (202) 737-0500
     Facsimile: (202) 626-3737
     Email: dmattern@kslaw.com

     Bailey J. Langner (SBN 307753)
     KING & SPALDING LLP
     50 California Street, Suite 3300
     San Francisco, CA 94111
     Telephone: (415) 318-1200
     Facsimile: (415) 318-1300
     Email: blangner@kslaw.com

     *Attorneys for Defendants TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance Ltd., and TikTok LLC*

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

By:  */s/ Brian M. Willen*
Brian M. Willen (pro hac vice)
Wilson Sonsini Goodrich & Rosati PC
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
Wilson Sonsini Goodrich & Rosati PC
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (947-2099
lwhite@wsgr.com
smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
Wilson Sonsini Goodrich & Rosati PC
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
cchio@wsgr.com
mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**MORGAN LEWIS & BOCKIUS LLP**

By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-7238
yardena.zwang-weissman@morganlewis.com

Brian Ercole (pro hac vice)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: (305) 415-3416
brian.ercole@morganlewis.com

Stephanie Schuster (pro hac vice)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Telephone: (202) 373-6595
stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

**WILLIAMS & CONNOLLY LLP**

*/s/ Ashley W. Hardin*
JOSEPH G. PETROSINELLI (pro hac vice)
ASHLEY W. HARDIN (pro hac vice)
680 Maine Avenue, SW
Washington, DC 20024
Tel.: 202-434-5000
jpetrosinelli@wc.com
ahardin@wc.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

DEFENDANTS' LETTER BRIEF OPPOSING PLAINTIFFS' ANTICIPATED RULE 702 MOTIONS

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 15, 2025

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen