1    LEXI J. HAZAM
     lhazam@lchb.com
2    275 Battery Street, 29th Floor
     San Francisco, CA 94111-3339
3    Telephone: (415) 956-1000

4    PREVIN WARREN
     pwarren@motleyrice.com
5    401 9th Street NW, Suite 630
     Washington, DC 20004
6    Telephone: (202) 386-9610

7    *Co-Lead Counsel for Plaintiffs*

8

9
                    UNITED STATES DISTRICT COURT
10
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                        OAKLAND DIVISION
12

13
     IN RE: SOCIAL MEDIA ADOLESCENT          )    MDL No. 3047
14   ADDICTION/PERSONAL INJURY               )    CASE NO.:  4:22-md-03047-YGR-PHK
     PRODUCTS LIABILITY LITIGATION           )
15                                           )
                                             )
16                                           )    **PLAINTIFFS' RESPONSE TO**
     THIS DOCUMENT RELATES TO:               )    **DEFENDANTS' LETTER BRIEF RE**
17   ALL ACTIONS                             )    **ANTICIPATED *DAUBERT* /**
                                             )    **SUMMARY JUDGMENT MOTIONS**
18                                           )
                                             )
19                                           )    Honorable Yvonne Gonzalez Rogers
                                             )    Honorable Peter H. Kang
20                                           )
                                             )
21   _____)

22

23

24

25

26

27

28

Plaintiffs followed this Court's directive that the Parties show their cards: They identified narrow legal challenges to specific defense experts—6 of 58.[1] Defendants instead held their cards, often declining to identify specific challenges to specific experts while reserving the right to challenge all of them on scattershot grounds that go beyond the Court's gatekeeping role. Defendants' explanation of anticipated summary judgment motions is similarly devoid of specifics and unduly focused on factual disputes inappropriate for summary adjudication.

Defendants' refusal to be specific and selective presages a tsunami of motion practice—precisely Defendants' tack in the JCCP. But the "interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system[.]" *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). Given their kitchen-sink approach, the Court should consider limiting the number of motions Defendants can bring, and/or summarily denying motions without a response, or requiring responses only as ordered by the Court.

## 1. **Defendants' General Rule 702 Motions**

*General Causation.* PI/SD Plaintiffs' eight[2] (and AG Plaintiffs' three) general-causation experts are leaders in their fields: psychiatric epidemiology, addiction, psychology, eating disorders, generational trends, adolescent and brain development, pediatrics, and public health. Defendants state their intent to seek to exclude general causation testimony but fail to identify a single expert by name. ECF 2173 at 1–2. That leaves Plaintiffs to assume that Defendants will challenge all of them—just as they did in the JCCP. At most, Defendants provide skeletal reasons that boil down to disagreements over conclusions and quibbles over scientific literature. Such factual disagreements are reserved for the trier of fact; they go to weight rather than admissibility.

Defendants first take aim at the causal relationship between social media and mental health harms to children by questioning whether excessive or problematic social media use can qualify as a behavioral addiction if not listed as such in the Diagnostic and Statistical Manual of Mental Disorders (DSM). But courts don't limit expert testimony based on the DSM when evaluating mental illnesses. *See U.S. v. Finley*, 301 F.3d 1000, 1012 (9th Cir. 2002) (rejecting *Daubert* challenge of diagnosed mental disorder where condition was unlisted in DSM); *Peña v. Clark Cnty.*, 2023 WL 3293093, at *4–5 (W.D. Wash. May 5, 2023). Defendants' disagreement is at best an issue of fact for the jury. *See S.M. v. J.K.*, 262 F.3d 914, 921–22 (9th Cir. 2001). Moreover, Defendants' skewed recitation of the evidence ignores longitudinal studies, meta-analyses, and more—far from the "'junk science' Rule 702 was meant to exclude." *Wendell*, 858 F.3d at 1237.

Next, Defendants insist that Plaintiffs' experts' opinions rely on content or fail to "disaggregate" it from the design of their platforms. But this gets the law and the facts wrong. Courts "do not require that an expert be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable. It is enough that a medical condition be a substantial causative factor." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014). Nor does Section 230 mean that content can play no role in the injuries at issue. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) (Section 230 "does not declare a general immunity from liability deriving from third-party content") (internal quotation marks and citation omitted); *Lemmon v. Snap, Inc.*,

---

[1] The AG Plaintiffs proposed challenging 5 other experts on the grounds that portions of those expert reports respond to opinions not offered by AG experts.

[2] The AG Plaintiffs share one of these experts with PI/SD Plaintiffs.

995 F.3d 1085, 1093 (9th Cir. 2021) ("publishing content is a but-for cause of just about everything" a social media company does) (internal quotation marks omitted); ECF 430 at 11–12. And Plaintiffs' expert opinions are amply supported by literature documenting that the more an adolescent is engaged with social media, the more likely they are to experience mental health harms. This literature is content-agnostic and supports Plaintiffs' expert opinions that Defendants' apps, which encourage excessive and recurring use through the connective tissue of various features, are a substantial factor in causing Plaintiffs' injuries.

Lastly, Defendants vaguely gesture at what they call methodological errors in suggesting that Plaintiffs' expert opinions (in their view) misunderstand the evidence or failed to consider some of it. But this is not a basis to exclude. It is well-established that a balanced review of the pertinent peer-reviewed literature provides a sound basis for an expert's conclusions. *Hardeman v. Monsanto Co.*, 997 F.3d 941, 967 (9th Cir. 2021) (expert's methodology underlying his conclusion was sound where, *inter alia*, he relied on "his clinical experience and reviewed scientific literature"). Plaintiffs' experts did just this by considering *hundreds* of on-point studies in forming their opinions. Defendants' suggestion that Plaintiffs' experts must be excluded because, for example, they needed to consider every single article on a topic, *contra McBroom v. Ethicon, Inc.*, 2021 WL 2709292, at *3 (D. Ariz. July 1, 2021), or rule out every possible alternative cause or confounding factor, *contra Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999); *Dugger v. Union Carbide Corp.*, 2019 WL 4750568, at *5 (D. Md. Sept. 30, 2019), is not the law or an accurate portrayal of what these experts did. Indeed, unlike Defendants' general causation experts, many of Plaintiffs' experts have published on social media use and adolescent mental health, some extensively and prior to this litigation (*e.g.* Dr. Jean Twenge).

***School Districts* (SD Plaintiffs only)**. Despite the Court's instruction to exercise discretion in bringing Rule 702 motions, Defendants seek to exclude all six "SD Experts" based on generalized, opaque objections that prevent Plaintiffs and the Court from knowing the scope of Defendants' forthcoming motions. Even when Defendants are more specific, their challenges either go to weight rather than admissibility, or appear to challenge "fit" despite this Court's clear instruction not to raise such challenges.

Start with Defendants' challenge to SD expert Klein's survey. Defendants call his survey flawed and unrepresentative, but Ninth Circuit law is clear that such criticisms are for the trier of fact and do not support exclusion. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("[W]e have made clear that 'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'"). And it is not flawed or unrepresentative: Dr. Klein—an expert with over fifty years' experience and more than one thousand studies—used appropriate sample sizes and a methodologically sound design.

Defendants also criticize SD expert Dr. Ward (a Harvard economics Ph.D.) for estimating damages based on lost time. Yet Defendants' sole authority for this criticism, *In re General Motors LLC Ignition Switch Litigation*, itself found that in the majority of states a plaintiff "can recover for lost time in the form of lost earnings or wages." 339 F. Supp. 3d 262, 275 (S.D.N.Y. 2018).[3] Dr. Ward's calculations address the lost and diverted working hours of SD employees, and it is

---

[3] That the *GM* court did not allow the plaintiffs there to recover lost "free" or "personal" time is immaterial because Plaintiffs here have not sought such relief. *See id.*

well settled that "lost employee time is a proper measure of compensatory damages." *Suncor Stainless, Inc. v. Structural Hardware & Supply, Inc.*, 172 F. App'x 755, 756 (9th Cir. 2006).

Defendants' other arguments attack the weight of testimony rather than admissibility. For example, Defendants plan to challenge Dr. Ward and Dr. Meyers for relying on sworn oral and written testimony, even though such reliance is proper. *See Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781, 786 (9th Cir. 1982) (finding "individual employees' estimates made under oath on how they spent their time" was appropriate evidence to rely on when determining damages).They similarly claim Dr. Hoover and Dr. Osborne rely on "pure speculation," but again, this argument goes to weight, not admissibility: "Rule 702 does not license a court . . . to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022). And again, the criticism is baseless: Dr. Hoover's and Dr. Osborne's opinions are firmly grounded in extensive peer-reviewed literature and their substantial experience, not speculation.

Defendants also make improper challenges to "fit." For example, they claim Dr. Hoover's strategic plan is not "*tailored* to 'abating harms from Defendants' actionable conduct.'" ECF 2173 at 3 (emphasis added). That is a "fit" argument if ever there was one, and it is unfounded. Dr. Hoover—a licensed clinical psychologist, Professor of Child and Adolescent Psychiatry at the University of Maryland School of Medicine, former co-director of the National Center for School Mental Health, and a clinician, researcher, and educational consultant with over twenty-five years of experience—designed plans specifically to address harms Defendants caused to the BW SDs. She provided sound opinions on the negative impacts of Defendants' platforms on schools and crafted individualized plans for each BW SD to remedy those harms. Her strategic plans are thus tailored to the harms at issue in this litigation.

Defendants' other "fit" arguments are skeletal and conclusory. Without identifying a single expert or opinion, Defendants claim the experts failed to "separate" the effects of Defendants' platforms from social media, cell phones, screen time generally, or other potential causes. That is baseless: each SD Expert explains the methodology and case-specific facts and data supporting their opinions. Defendants also argue the experts did not account for hypothetical "non-foreseeable bad acts of third parties" or the "role of content and the design features the Court found barred." These too are improper fit challenges that raise disputed facts and invite the Court to weigh competing evidence—something Rule 702 does not permit.[4]

***PI Case-Specific Experts*** (**PI Plaintiffs only**). In another example of their scattershot approach, Defendants seek to exclude all the medical and psychological specific-causation opinions related to the PI Plaintiffs. For many of the same reasons articulated in the section addressing general causation above, Defendants' reasoning falls well short of grounds for exclusion. Each of these experts are highly qualified medical doctors, a fact Defendants do not dispute, apart from their unexplained assertion that Dr. Sobalvarro alone "does not appear to be qualified to opine that Smith has a social media addiction." ECF 2173 at 3.

Defendants' critiques of Plaintiffs' specific causation experts mischaracterize the methodological rigor underlying the experts' opinions. Far from ignoring medical records, each

---

[4] *Sclafani v. Air & Liquid Systems Corp.*, involved a specific rule for medical causation in asbestos exposure cases; it is inapplicable here. 14 F. Supp. 3d 1351, 1354–55 (C.D. Cal. 2014).

expert named reviewed relevant medical records and detailed them in their reports. Additionally, each expert applied methodologies (including psychometrically validated clinical assessments, tools that no defense expert employed) consistent with those widely accepted in their fields. The use of screening tools and self-reporting are not only common but necessary in the assessment of mental health, particularly when corroborated by collateral information and clinical judgment. *Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 790 (D. Ariz. 2017) ("when a doctor offers a reasonable medical opinion, grounded in their relevant experience, appropriate analysis, and in the medical literature, their opinions should not be excluded."). Plaintiffs' experts then considered alternative causes and performed differential diagnoses for each individual PI Plaintiff—a practice courts have consistently found reliable.[5]

Defendants' assertion that Plaintiffs' experts disregarded key medical information or failed to address the relevant features and platforms at issue is also unfounded, as Plaintiffs' experts evaluated available records in conjunction with direct clinical assessments (including questions specifically pertaining to features of social media platforms). Any perceived shortcomings are matters appropriate for cross-examination, not exclusion. Defendants' claims that Drs. Bagot and Lowenthal attribute the use of social media to mental health conditions not previously diagnosed in Plaintiff Melton are similarly issues for the jury and well within the appropriate realm of specific causation expert opinion. *See Martinez v. United States*, 33 F.4th 20, 32–33 (1st Cir. 2022). In sum, these are clearly qualified individuals using well-accepted medical methodologies, and Defendants' indiscriminate arguments for their exclusion lack merit.

Defendants' argument to exclude the opinions of Ms. Merridith McCarron are similarly misplaced and untethered to the law, and are absurd in relation to the opinions proffered by their own "user data experts." Ms. McCarron does not offer a "made up standard" but instead relies on established industry standards of data validation. That stands in sharp contrast to Defendants' experts, none of whom offer any standard at all, and simply accept Defendants' limited data as reliable with no further probing. Ms. McCarron describes her methodological basis in detail in her reports, and Defendants' proposed 702 motion is nothing more than an attempt to exclude testimony that is unfavorable for them.

**"*Design/Marketing/Other*" Experts.** Defendants also want to exclude "some . . . opinions" from nine other general liability experts, without identifying which opinions, from which experts, or on which *Daubert* grounds they will move. ECF 2173 at 3. Plaintiffs cannot meaningfully respond to the vague claim that unidentified experts may lack qualifications, lack sufficient facts, and/or do not explain their methodology, so must wait to see what Defendants actually include in their motion(s), should the Court permit them.

Defendants also suggest certain unnamed expert opinions should be excluded because they do not opine on the feasibility of design. Putting aside that several Plaintiffs' experts *do* offer opinions on alternative design feasibility, this is really an attack on the merits of Plaintiffs' claims, not a *Daubert* challenge. "Given that the judge is 'a gatekeeper, not a fact finder'" when considering a *Daubert* challenge, it is neither necessary nor appropriate for the Court to exclude

---

[5] Dr. Murray did consider potential alternative causes in his analysis, see, e.g., Murray Specific Causation Rebuttal Report (Mullen) at 16-18; Murray Specific Causation Rebuttal Report (D'Orazio) at 16-17; Murray Specific Causation Rebuttal Report (Clevenger) at 11-12 (all referring to sections in Opening Specific Cause Reports and responding to Defendant Experts).

an expert's opinion because a defendant challenges a claim on the merits. *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010) (citation omitted). Plus, "the *defendant* bears the burden to prove the lack of feasible safety devices." *Conroy v. Ridge Tool Co.*, 2022 WL 911138, at *4 (N.D. Cal. Feb. 3, 2022) (Gonzalez Rogers, J.) (rejecting argument that expert offered no admissible opinion about feasibility) (citation omitted). The same is true of Defendants' challenges to Plaintiffs' expert opinions on failure to warn. Such challenges go to the merits, not the propriety of expert testimony.

### 2. <u>Defendants' First MSJ</u>: Omnibus Failure-to-Warn (PI/SD Plaintiffs only)

Defendants fail to explain what new law or facts would support a renewed challenge to Plaintiffs' failure-to-warn claim as to either personal-injury plaintiffs or school districts, and there is none. Defendants appear to take as a given that the failure to warn claim will be summarily adjudicated if it has any relation to a design feature the Court previously held could not provide a direct basis for a product defect claim. But that is contrary to the Court's prior ruling, which held that failure to warn seeks to hold Defendants "liable for conduct other than publishing of third-party content and that [Defendants] could address their duty without changing what they publish. The duty arises not from their publication of conduct [sic], but from their knowledge, based on public studies or internal research, of the ways that their products harm children." ECF 430 at 20.

No other case—and Defendants identify none—holds that failure-to-warn claims are necessarily barred because Section 230 bars some other claim involving a different duty. Courts "inspect the alleged legal duty underlying a plaintiff's claim" to determine whether Section 230 applies. *Doe 1 v. Twitter, Inc.*, No. 24-177, 2025 WL 2178534, at *4 (9th Cir. Aug. 1, 2025); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 741 (9th Cir. 2024); *see also Lemmon*, 995 F.3d at 1092–94 (looking to the duty alleged to have been breached to find Section 230 did not apply). Here, Defendants' duty to warn arises not from their status as publishers, but from their role as product manufacturers. Defendants knew their products were addictive and caused mental health harms, then concealed the risk of those known harms. Complying with their duty would not require Defendants to monitor or remove content its users post, but to warn about the harms from Defendants' design choices. *See Lemmon*, 995 F.3d at 1094 (Section 230 does not give internet companies "absolute immunity," it prohibits claims which "blame" companies "for the content" users create). Recent authority says the same. *E.g.*, *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025) (distinguishing barred claims alleging breached duty "to prevent the harmful sharing of messages between users," from non-barred claims that did not depend on what messages, if any, users send); *Estate of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024) (barring claims that company should have "mitigat[ed], in some way" users' harassing messages).

Defendants fail to explain the basis for their renewed First Amendment challenge, merely citing two recent compelled-speech cases (ECF 2173 at 4) which are distinguishable. ECF 337 at 21–22. But no case (recent or otherwise) finds that a failure to warn about product harms is somehow constitutionally protected speech; indeed, the case law is to the contrary. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 25 F. Supp. 2d 837, 848 (N.D. Ill. 1998). At most, Defendants seek to raise a host of factual disputes about their apps under the guise of Section 230 and the First Amendment, but disputes of fact are not resolvable on summary judgment.

### 3. <u>Defendant's Second Set of MSJs</u>: SD Bellwethers (SD Pls only)

Defendants propose an unknown number of "joint MSJs" for each of the six BW SDs, without providing an adequate basis for the proposed motions.

*Causation.* Defendants, unsupported by facts or law, intend to seek summary judgment on causation based on a purported failure to demonstrate a made-up standard: the impact on certain student metrics. This Court has noted that "the expenditure of resources to manage youth mental health and addiction issues" is "both a sufficiently direct . . . and a foreseeable consequence of the defendants' deliberate design of their platforms to foster compulsive use in minors." ECF 1267 at 24. As set forth above, evidence supporting causation of the harms alleged abounds and is for the trier of fact. For the SDs that evidence also includes (among other things) that Defendants targeted schools and students, causing disruptions and requiring them to divert resources.

*Failure to Warn.* Defendants' assertion that there was no duty to warn SDs is unfounded. Defendants owed them a duty of care based on (1) the foreseeability that addicting youth and promoting social media use in schools would lead to the harms suffered by the SDs, and (2) public policy considerations that support requiring Defendants to avoid addicting youth and disrupting public education and public health. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 655 (N.D. Cal. 2020). And there is no real dispute that Defendants did not warn the BW SDs about the numerous harms caused by student use of Defendants' platforms.

*Past Damages.* As this Court explained, the injury to SDs of "diverting and increasing financial resources to address the disruptive forces of defendants' social media products in school" is "related to, but unique from, the alleged injuries of their minor students." ECF 1267 at 20. There is substantial evidence establishing the past damages incurred by the BW SDs, including lost employee time and expenditures to address Defendants' harms, as experts Dr. Ward and Jeffrey Meyers will address.

*Abatement/Future Damages.* Defendants' assertion that the BW SDs may not receive funding for the strategic plans proposed by Dr. Hoover to address harms to the BW SDs is baseless. As a preliminary matter, in addition to abatement for those SDs with live nuisance claims, the plans also serve as a measure of future damages under their negligence claims. *See, e.g., Rodriguez v. N.J. Dep't of Corr.*, 2019 N.J. Super. Unpub. LEXIS 2460, at *15 (Super. Ct. App. Div. Dec. 4, 2019). Moreover, Dr. Hoover's strategic plans are specifically tailored to prevent and mitigate harms to SDs caused by Defendants' platforms, as schools are on the front lines addressing the youth mental health crisis and expending resources to do so. *See People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 134 (2017) (upholding abatement award requiring defendant to prefund remediation costs); *U.S. v. Price*, 688 F.2d 204, 213 (3d Cir. 1982). Further, this Court has already rejected Defendants' derivative injury argument, holding that "the school districts' alleged injuries are 'distinct' from harms allegedly suffered by students in their respective school districts." ECF 1267 at 20; *see also JUUL Labs,* , 497 F. Supp. 3d at 665. Finally, while Defendants describe the plans as "voluntary," Dr. Hoover opines that the plans are necessary to adequately address the significant harms caused by Defendants.

**4. Defendants' Third Set of Summary Judgment Motions: PI Bellwethers (PI Pls only)**

Finally, Defendants indicate that they will seek summary judgment in every Personal Injury Bellwether case. ECF 2173 at 5–6. Their reasons, however, appear to be entirely based on factual disputes inappropriate for summary adjudication. *Id.* (arguing over time spent on the app, particular third-party content, preexisting conditions, and other hotly disputed factual issues). These arguments are inextricably entwined with questions for the ultimate factfinder. *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1277 (9th Cir. 2017).

1                                               Respectfully submitted,

2   Dated:  August 15, 2025               */s/ Lexi J. Hazam*
                                          LEXI J. HAZAM
3                                         **LIEFF CABRASER HEIMANN &**
                                          **BERNSTEIN, LLP**
4                                         275 Battery Street, 29th Floor
                                          San Francisco, CA 94111-3339
5                                         Telephone: 415-956-1000
                                          lhazam@lchb.com
6

7                                         PREVIN WARREN
                                          **MOTLEY RICE LLC**
8                                         401 9th Street NW Suite 630
                                          Washington DC 20004
9                                         Telephone: 202-386-9610
                                          pwarren@motleyrice.com
10

11                                        *Co-Lead Counsel for Personal Injury and School*
                                          *District Plaintiffs*
12

13                                        **PHILIP J. WEISER**
                                          Attorney General
14                                        State of Colorado

15                                        */s/ Elizabeth Orem*
                                          Krista Batchelder, CO Reg. No. 45066,
16                                        *pro hac vice*
                                          Deputy Solicitor General
17                                        Shannon Stevenson, CO Reg. No. 35542,
                                          *pro hac vice*
18                                        Solicitor General
                                          Elizabeth Orem, CO Reg. No. 58309,
19                                        *pro hac vice*
                                          Assistant Attorney General
20                                        Colorado Department of Law
                                          Ralph L. Carr Judicial Center
21                                        Consumer Protection Section
                                          1300 Broadway, 7th Floor
22                                        Denver, CO 80203
                                          Phone: (720) 508-6651
23                                        krista.batchelder@coag.gov
                                          Shannon.stevenson@coag.gov
24                                        Elizabeth.orem@coag.gov

25                                        *Attorneys for Plaintiff State of Colorado, ex*
                                          *rel. Philip J. Weiser, Attorney General*
26

27

28

1   **ROB BONTA**
    Attorney General
2   State of California

3     _/s/ Emily Kalanithi_
    Nicklas A. Akers (CA SBN 211222)
4   Senior Assistant Attorney General
    Bernard Eskandari (SBN 244395)
5   Emily Kalanithi (SBN 256972)
    Supervising Deputy Attorneys General
6   Nayha Arora (CA SBN 350467)
    Megan O'Neill (CA SBN 343535)
7   Joshua Olszewski-Jubelirer (CA SBN 336428)
    Marissa Roy (CA SBN 318773)
8   Brendan Ruddy (CA SBN 297896)
    Deputy Attorneys General
9   California Department of Justice
    Office of the Attorney General
10  455 Golden Gate Ave., Suite 11000
    San Francisco, CA 94102-7004
11  Phone: (415) 510-4400
    Fax: (415) 703-5480
12  Megan.Oneill@doj.ca.gov

13  *Attorneys for Plaintiff the People of the State of*
    *California*
14

15  **RUSSELL COLEMAN**
    Attorney General
16  Commonwealth of Kentucky

17  _/s/ Philip Heleringer_
    J. Christian Lewis (KY Bar No. 87109),
18  *Pro hac vice*
    Philip Heleringer (KY Bar No. 96748),
19  *Pro hac vice*
    Zachary Richards (KY Bar No. 99209),
20  *Pro hac vice*
    Daniel I. Keiser (KY Bar No. 100264),
21  *Pro hac vice*
    Matthew Cocanougher (KY Bar No. 94292),
22  *Pro hac vice*
    Assistant Attorneys General
23  1024 Capital Center Drive, Suite 200
    Frankfort, KY 40601
24  CHRISTIAN.LEWIS@KY.GOV
    PHILIP.HELERINGER@KY.GOV
25  ZACH.RICHARDS@KY.GOV
    DANIEL.KEISER@KY.GOV
26  MATTHEW.COCANOUGHER@KY.GOV
    Phone: (502) 696-5300
27  Fax: (502) 564-2698

28  *Attorneys for Plaintiff the Commonwealth of*
    *Kentucky*

1

2

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

3

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

4

5

6

7

8

9

10

11

12

13

14

*Attorneys for Plaintiffs New Jersey Attorney
General and the New Jersey Division of Consumer
Affairs Matthew J. Platkin, Attorney General for the
State of New Jersey, and Elizabeth Harris, Acting
Director of the New Jersey Division of Consumer
Affairs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ATTESTATION**

2      I, Andre M. Mura, hereby attest, pursuant to N.D. Cal. L.R. 5-1, that the concurrence to the

3  filing of this document has been obtained from each signatory hereto.

4  Dated: August 15, 2025

5                                                    By: */s/ Andre M. Mura*
                                                         Andre M. Mura
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28