# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 <br><br> Case Nos.: 4:22-md-03047-YGR (PHK) <br> 4:23-cv-05448-YGR |
| This Filing Relates To: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **JOINT LETTER BRIEF ON NEW YORK EXECUTIVE AGENCIES' PRODUCTION OF DOCUMENTS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

  In accordance with Your Honor's Order dated August 11, 2025 (ECF 2176) requiring the undersigned to file a joint letter brief regarding their discovery dispute pertaining to the New York agencies' document productions, and pursuant to Rule H of the Court's Standing Order for Discovery in Civil Cases, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") and the Office of the Governor of the State of New York respectfully submit this joint letter brief regarding the document discovery obligations of the Executive Agencies.[1] In particular, Meta seeks an order compelling the Executive Agencies to, within four weeks (i) complete their review and production of the responsive, non-privileged documents brought up by the search parameters that they agreed to run; and (ii) serve a privilege log that complies with the Privilege Log Protocol (ECF 740).

  Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the undersigned attest that they met and conferred before filing this brief, including through a Rule H.2 conferral that was attended on July 18, 2025. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference.

---

[1] The Executive Agencies refer collectively to the New York Council on Children and Families ("CCF"), Department of Health ("DOH"), Office of Children and Family Services ("OCFS"), Office of Mental Health ("OMH"), and Office of the Governor (the "Executive Chamber").

| | |
|---|---|
| Dated: August 15, 2025 | Respectfully submitted, |
| **SELENDY GAY PLLC** | **COVINGTON & BURLING LLP** |
| */s/ Faith E. Gay* <br> Faith E. Gay <br> Claire O'Brien <br> 1290 Avenue of the Americas <br> New York, NY 10104 <br> Tel: 212-390-9000 <br> fgay@selendygay.com <br> cobrien@selendygay.com <br><br> *Attorneys for the Office of the Governor of the State of New York* | */s/ Ashley Simonsen* <br> Ashley Simonsen (State Bar. No. 275203) <br> COVINGTON & BURLING LLP <br> 1999 Avenue of the Stars <br> Los Angeles, CA 90067 <br> Telephone: +1 (424) 332-4800 <br> Facsimile: + 1 (424) 332-4749 <br> Email: asimonsen@cov.com <br><br> Phyllis A. Jones, *pro hac vice* <br> Paul W. Schmidt, *pro hac vice* <br> COVINGTON & BURLING LLP <br> One City Center <br> 850 Tenth Street, NW <br> Washington, DC 20001-4956 <br> Telephone: + 1 (202) 662-6000 <br> Facsimile: + 1 (202) 662-6291 <br> Email: pajones@cov.com <br> Email: pschmidt@cov.com <br><br> *Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC* |

**Meta's Position:** Meta seeks to compel the Executive Agencies to honor the document discovery agreements announced to this Court on January 16, 2025. ECF 2128-2; ECF 2128-3 at 26:9–27:3.

As this Court is aware, these agreements were the result of extensive negotiations over several months. The agencies promised to review all documents identified by search parameters proposed by Meta, as long as the number of hits fell below agreed-upon thresholds. *See* ECF 2128-4 (Jan. 16, 2025 email confirming the agencies' agreement to certain terms in Meta's Jan. 9 email); ECF 2128-5 (Jan. 9, 2025 email). The agreements contained no fee shifting to Meta, nor did the agencies reserve rights to pursue any fees later. And because they resolved disputes over both the agencies' Rule 34 and Rule 45 obligations, the agreements are unaffected by any new laws or decisions about only Rule 34 discovery (*e.g.*, the Ninth Circuit's order staying this Court's September 6 order).

On March 3, 2025, the Executive Agencies provided initial hit reports for search parameters that Meta proposed back on January 14, 2025. ECF 2128-6 at 23–28. Because the hits fell below the agreed-upon thresholds, the Executive Agencies said that they were "actively reviewing the documents at [Executive] Chamber and CCF that hit on Meta's January 14 terms." *Id*. at 21. On March 10, DOH accepted Meta's revised search terms, stating that "[w]e will now begin actively reviewing the DOH documents that hit on these final terms." *Id*. at 15. And by April 4, the remaining two agencies accepted terms, each stating that "[w]e will review the documents hitting on these search terms as final." *Id*. at 2 (OCFS), 7 (OMH). None of these acceptance emails reserved any rights to seek costs, or to renegotiate any search parameters later.

On May 21, after ignoring requests for an estimated production completion date, and one day after a state trial court excused them from party discovery in New York's teen mental health litigation against TikTok, the Executive Agencies breached their agreements here. Specifically, the agencies disclosed that the agreed-upon review was less than 33 percent complete, but they would not review about 633,000 remaining documents. ECF 2128-7 at 28–31. They demanded that Meta pay $5.5 million to complete review, purportedly to cover review costs. *Id.*

To justify their breach, the Executive Agencies claimed that the 633,000 unreviewed documents were "presumptively privileged." No human reviewed these documents. They were so-designated based on overbroad search criteria, including (a) status as an inter- or intra-agency communication; or (b) the mere presence of words like "edit," "comment," "feedback," "Section 33.13" (a reference to a confidentiality obligation), or "privileged." ECF 2128-7 at 13–16, 28–31. Based on this overbroad criteria, such a designation was applied to more than 82 percent of the review universe.

The Executive Agencies have no basis for reneging on their document discovery agreements. *First*, the Executive Agencies' "presumptive privilege" arguments are specious. Not every piece of inter- or intra-agency communication is privileged; the executive privileges upon which the Executive Agencies rely are "qualified" privileges and involve a specific showing (which the agencies have not made) that, *inter alia*, ties withheld documents to specific agency decisions. *See, e.g.*, *Citizens Union of City of N.Y. v. Att'y Gen.*, 269 F. Supp. 3d 124, 158 (S.D.N.Y. 2017) (detailing requirements for the deliberative process privilege "which is also referred to as the executive privilege"). The agencies' arguments as to other privileges are equally misplaced. At least OMH, DOH, OCFS, and CCF are not focused on legislation such that legislative privilege concerns might be pervasive. And the Executive Agencies do not explain why any other concerns are not addressed by this Court's confidentiality and privilege orders.

Nor is the mere presence of the Executive Agencies' "presumptive privilege" terms a basis for skipping actual review. Words like "edit" and "comment" are commonly used without any privilege implications. Words like "privileged" regularly appear in Executive Agency employee signature blocks from non-privileged communications.

*Second*, the agencies claim disproportionate burden. But the January 2025 agreement resolved any burden and proportionality disputes by ensuring that the Executive Agencies knew the exact number of documents they were agreeing to review; indeed, the Executive Agencies only accepted final search parameters after they generated hit reports with both "Hits" and "Total With Families." *See* ECF 2128-6 at 2, 7, 15, 21 and 27.

The Executive Agencies offer no new information to satisfy their burden of demonstrating disproportionality. None of the privileges they invoke are new. They could have devised and run their overbroad "presumptive privilege" criteria before accepting Meta's proposed terms. At most, they complain about not identifying *enough* relevant documents during their limited review. But the agencies cannot unilaterally decide against reviewing 633,000 documents likely to be highly relevant (like emails among agency personnel about teen mental health- and social media-related issues), and then claim irrelevance based on the smaller pool that they *did* review.

The Executive Agencies accuse Meta of not articulating relevance or using enough agency-produced documents in depositions. Neither is true. *E.g.*, ECF 2128 at 7–8 (describing "Relevance" and identifying unproduced training materials mentioned by an OMH witness). New York's interrogatory responses listed OMH, DOH, OCFS, and CCF as responsible for addressing teen mental health and social media use—core subjects in this case. Public documents show that the Executive Chamber is active in teen mental health- and social media-related matters, including (without limitation) a 2023 Youth Mental Health Listening Tour with OMH and OCFS relating to the mental health concerns of New York teens. Meta used Executive Agency-produced documents at depositions as needed, including to question about the causes of teen mental health issues, and cannot be blamed for not using materials that the agencies are improperly withholding.

*Third*, the Executive Agencies claim they reserved their rights to renegotiate "based on new information learned during review." That misconstrues an email reserving rights of Meta—*not* any agency—when Meta proposed a compromise before a conferral. ECF 2128-5 at 2 ("[I]n the interest of seeing if we can reach a compromise that addresses your burden concerns in the time that we have left – and without waiver of our arguments regarding relevance, burden, and proportionality, or based on information learned through document productions – Meta proposes . . . ."). The email is clear: Meta referred to "your burden concerns" when discussing the agencies, and "our arguments" when discussing Meta. And Meta had rights to reserve: Meta was negotiating and receiving agency productions to review across many states, and did not want a mere proposal to prejudice its ability to contest the sufficiency of any agencies' production efforts.

The Executive Agencies ignore the very next sentence: "Meta would expect that the agencies would review the hits and the family members of documents with hits for responsiveness, privilege, and confidentiality." *Id*. The agencies also ignore that they set only one condition when accepting Meta's proposal: "if the search terms are yielding outsized family members without hits then we will work collaboratively to solve that issue." ECF 2128-4 at 2. But the Executive Agencies do not seek to excuse review due to "outsized family members without hits."

2

Tellingly, after the parties' January 2025 agreement, the Executive Agencies never reserved renegotiation rights in (a) any of their emails accepting search parameters and beginning review (ECF 2128-6 at 2, 7, 15, 21 and 27); (b) the May 21, 2025 email where they said they would stop their document review (ECF 2128-7 at 28–31); or (c) any of the ten emails they sent afterwards to Meta before Meta sought relief from this Court (ECF 2128-7 at 3–4, 5–6, 9–10, 13–16, 18–22, 24). The first time the Executive Agencies claimed to reserve renegotiation rights was in papers filed on July 28, 2025 to oppose this Court's jurisdiction over this dispute. ECF 2141 at 2–3. Their theory is simply an *ex post facto* attempt to justify their breaches before this Court.

*Fourth*, the Executive Agencies ask this Court to order further negotiations. But countless written, videophonic, and in-person conferrals already preceded the now-breached discovery agreements, and these agencies should have completed their promised document review months ago. ECF 1696 (setting April 4, 2025 production completion deadline). The Executive Agencies also have a history of using tactics that this Court recently remarked "raise the specter of foot-dragging." ECF 2176 at 7 (granting Meta's administrative motion); *see also* ECF 1548 at 3 (January 2025 status report noting court-ordered discovery deadlines that the agencies missed by months). Indeed, in conferrals about the present dispute, the Executive Agencies refused Meta's suggestions, insisting that Meta either pay them millions or forgo review of large volumes of search term hits and families. *E.g.*, ECF 2128-7 at 12 (noting that the agencies "did not think TAR could be used to assist with privilege review"); *id.* at 14–16 (rejecting Meta's privilege clawback order proposal).

This Court's guidance is needed to stop the delays. The Executive Agencies must complete their review of the 633,000 unreviewed documents, produce all non-privileged responsive documents, and log any withheld documents per the Privilege Log Protocol (ECF 740), in four weeks.[2]

**The Agencies' Position**: The Agencies made the January 16 agreement ("Agreement"), as framed in Meta's January 9 proposal, to avoid litigation over search terms and for discovery to proceed without prejudicing arguments on their non-party rights.[3] The Agreement was for hit count caps, Dkt. 2128-5 2, with Meta and the Agencies agreeing to "work collaboratively to solve that issue" if the review universe exceeded those caps, Dkt. 2128-4 2, and preserving objections based on relevance, burden, proportionality, and information learned during review, Dkt. 2128-5 2. The

---

[2] The agencies' claims about a May 2025 New York law are red herrings. Meta subpoenaed each agency, and the January 2025 agreements resolved both Rule 34 and 45 issues, including Rule 45 burden, proportionality, and costs. The new law does not impact those agreements or this dispute.

[3] The Ninth Circuit has stayed the Court's September 6 Order pending appeal, which Meta incorrectly asks the Court to treat as irrelevant here despite the Order's express application to New York. The Agencies maintain all non-party rights and jurisdictional objections, which they have never abandoned, waived, or resolved. The Agencies likewise maintain that the New York law enacted May 9, which "reconfirm[ed] New York law" and applies "to all pending actions," applies to this dispute. Dkt. 2141-3 4; L 2025, ch 55 § 1 part RR; *Cervantes-Gonzalez v. INS*, 244 F.3d 1001, 1005 (9th Cir. 2001). While Meta says the standard is the same under Rule 34 or 45, that is wrong, as "Rule 45 directs courts to minimize the burden on non-parties." *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019); *United States ex rel. Sasaki v. New York Univ. Med. Ctr.*, 2011 WL 13257693, at *5 (S.D.N.Y. Aug. 23, 2011) (finding request requiring non-party to redact PII overly broad and unduly burdensome). "Cost sharing is particularly appropriate" under Rule 45. *Loeb*, 2019 WL 2428704 at *5.

3

Agencies honored the Agreement. Spending over $2 million, the Agencies produced 11,205 documents totaling 60,903 pages. And the Agencies made employees available for non-party depositions.

Although Meta waited until August to seek Court relief, Meta admits the Agencies notified Meta on May 21 that the remaining hundreds of thousands of documents yielded by Meta's terms bear indicia of multiple fact-intensive privileges and do not appear likely to yield relevant, non-privileged information, rendering continued review unduly burdensome and disproportionate. As contemplated in the Agreement, the Agencies proposed multiple options for completing discovery. Instead of negotiating as required by the Agreement, DSO H.1., and the FRCP, Meta refused to consider or counter-propose any compromise and maintained its position that the Agencies must review all documents yielded by its terms regardless of relevance, burden, or proportionality. Meta refused to identify with specificity the kinds of relevant, non-privileged information it seeks. The Agencies believe "agreement or negotiated resolution can be reached," DSO H.3, and are prepared to find a prompt path forward consistent with the Ninth Circuit's stay Order and applicable law. The Agencies are ready to discuss if Meta disagrees with indicia of privilege or has ideas about economizing review to yield production of relevant, non-privileged information.

**The Agencies Are Honoring the Agreement**: In January, the Agencies agreed Meta would craft terms to yield results within hit count caps per agency—75,000 for Chamber, 95,000 for DOH, 95,000 for OMH, 95,000 for CCF, and 75,000 for OCFS, for a hit count total of 435,000. Dkt. 2128-4 2. The Agencies never blindly promised to review all documents yielded by those terms. To the contrary, if Meta's terms captured large family numbers, the Agreement required that Meta "will work collaboratively to solve that issue." *Id.* In addition, as framed by Meta on January 9, the Agencies and Meta maintain "our arguments regarding relevance, burden, and proportionality, or based on information learned through document productions." Dkt. 2128-5 2. Meta's contention that only Meta—which *is not* reviewing documents—has those rights and objections, but that the Agencies—which *are* reviewing documents—do not, belies logic and reason (and the Agreement).

On April 4, Meta provided its final terms. Dkt. 2141 2 n.2. The results totaled nearly 950,000 documents with families—more than double the cap. The Agencies reviewed tens of thousands and substantially completed production of documents that did not bear indicia of privilege. On May 21, the Agencies wrote to continue negotiations, as contemplated by the Agreement, invoking "arguments regarding relevance, burden, and proportionality, or based on information learned through document productions," Dkt. 2128-5 2, and offered to confer, Dkt. 2128-7 28-31.

Through May 21 and June 27 emails, and June 17 and July 18 conferrals, the Agencies tried to negotiate a path forward. The Agencies explained the bases for privileges that could apply; Meta did not engage with the law or facts. *Id.* 25-28. The Agencies asked for a "TAR" cutoff for review; offered to go agency-by-agency to discuss relevant, non-privileged information Meta seeks; offered to conduct targeted searches to identify documents of interest (***explicitly including the OMH training materials Meta references, which Meta refused***); suggested Meta pay for privilege review; and asked Meta for proposals. *Id.* 3-4, 5-6, 13-14. Despite the Agencies' requests for input and offers of compromise, Meta failed to respond for weeks at a time, declined all proposals, and never offered alternatives. *Id.* Meta would not specify the non-privileged documents it believes are relevant, or why further review is necessary. Meta does not deny this. That is inconsistent with good faith negotiation required by the Agreement, the DSO, and the FRCP.

**Continued Custodial Review is Irrelevant, Unduly Burdensome, and Disproportionate**: The remaining documents are primarily internal emails bearing indicia of multiple privileges and protections, including executive privilege (*i.e.*, decision-making, deliberative process, inter-agency, and intra-agency privilege), legislative privilege, attorney-client privilege, and confidential information. The Agencies agree these privileges cannot be blanketly asserted; the determination of whether any one or multiple of them apply to documents in the remaining review universe requires fact-intensive scrutiny of each of these more than 600,000 documents. *See, e.g.*, *Citizens Union of City of New York v. Att'y Gen.*, 269 F. Supp. 3d 124, 158-66 (S.D.N.Y. 2017). That is precisely why the extensive and costly review Meta demands is not justified; but (as noted) the Agencies remain open to approaches that economize or tailor the process.

The review Meta is demanding would be even more burdensome than reviewing an attorney's files. Beyond attorney-client privilege and confidential information, executive privilege covers pre-decisional and deliberative documents and communications within and among agencies. *Dorchester Master Ltd. P'ship v. Cabot Pipeline Corp.*, 521 N.Y.S.2d 209, 210-11 (Sup. Ct. N.Y. Cnty. 1987) (explaining executive privileges protect "mental or deliberative considerations which entered into [agency] decisions"). That requires document-by-document assessments of whether "the agency treats the document as its final view on the matter" or a "tentative position … that leaves agency decisionmakers free to change their minds." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). Similarly, legislative privilege protects communication between agencies and the legislature, and communications and work product within agencies related to legislative acts. *See Campaign for Fiscal Equity v. State*, 179 Misc. 2d 907, 911-12 (Sup. Ct. N.Y. Cnty. 1999) (applying legislative privilege to a State Education Department employee). As explained to Meta at the June 17 conferral, legislative privilege can apply to any document from any agency depending on context and Meta cites no law for its new assertion that an agency must be focused on legislation for this privilege to present a concern.

In contrast, any benefit to Meta (if there is one) appears minimal and remains unclear. Meta's arguments (advanced for the first time here) do not justify its all-or-nothing position. The key question is whether review is likely to yield ***relevant, non-privileged*** information.

As for relevance, when deposing Agency representatives, Meta relied entirely on substantive information made publicly available by the Agencies for all but three exhibits (of the 11,205 Agency-produced documents) in a deposition of one agency witness. The New York Attorney General's interrogatory responses likewise refer to publicly available information, and Meta does not say why uncontested, general descriptions of agency roles show continued review will yield non-privileged information relevant to the claims or defenses in this case. And as for the volume of documents bearing indicia of privileges, while Meta takes issue with the Agencies' historical process for prioritizing documents that do not bear indicia of privilege, Meta never disputes that these privileges require a fact-intensive, document-by-document review, nor the astronomical costs that would entail. The Agencies offered to discuss process with Meta and work together to identify a reasonable review universe, and Meta refused.

We respectfully request Meta's request for relief be denied. The Ninth Circuit's stay Order reinforces the extraordinary nature of the burden Meta's absolutist position would impose. At a minimum, it should be held in abeyance, and the Court should direct Meta to negotiate in good faith to resolve this reasonably and consistent with applicable law.

## **ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: August 15, 2025

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen