# EXHIBIT A

PANISH | SHEA | RAVIPUDI LLP
BRIAN J. PANISH, State Bar No. 116060
   *panish@panish.law*
RAHUL RAVIPUDI, State Bar No. 204519
   *ravipudi@panish.law*
JESSE CREED, State Bar No. 272595
   *jcreed@panish.law*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Tel: (310) 477-1700

KIESEL LAW LLP
MARIANA A. MCCONNELL, State Bar No. 273225
   *mcconnell@kiesel.law*
8648 Wilshire Blvd.
Beverly Hills, CA 90211
Tel: (310) 854-4444

BEASLEY ALLEN
JOSEPH VANZANDT (admitted *pro hac vice*)
   *joseph.vanzandt@beasleyallen.com*
218 Commerce Street
Montgomery, AL 36104
Tel: (334) 269-2343

*Co-Lead and Co-Liaison Counsel for Plaintiffs*

*[Additional Counsel Listed on Signature Page]*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| **COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.400]** | **JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5255** |
| **SOCIAL MEDIA CASES** | For Filing Purposes: 22STCV21355 |
| **THIS DOCUMENT RELATES TO:** | Judge: Hon. Carolyn B. Kuhl SSC-12 |
| *All Cases* | **JOINT STATUS CONFERENCE STATEMENT FOR AUGUST 6, 2025 CONFERENCE** |
| *(Christina Arlington Smith, et al., v. TikTok Inc., et al., Case No. 22STCV21355)* | Date:   August 6, 2025 Time:   1:45 PM |

1

**TABLE OF CONTENTS**

I.      Confidentiality/Sealing Issues ..................................................................2

    A.      K.G.M. Initials ................................................................................2

    B.      Defendants' Request for Confirmation They May File MSJs, Case-Specific
        Sargon Motions, and MILs Without Redactions for PI BW Plaintiff
        Confidential Information ....................................................................2

II.     Defendants' Order to Show Cause re Plaintiff Fact Sheets..........................4

III.    PI BW Deposition Issues............................................................................5

    A.      Supplemental Deposition of K.G.M.'s Mother ................................5

    B.      P.M.-Y. Supplemental Deposition ...................................................7

    C.      Deposition of Martha McLemore (K.G.M. Treater) .........................7

IV.     CFS Audit..................................................................................................9

V.      Expert Issues ...........................................................................................10

    A.      Defendants' General Causation Sargon Motions Filed July 28 .................10

    B.      GC Sargon Motions Filed July 28 and Related Issues ................................11

    C.      Plaintiffs' July 24 Letter Signaling Intent to Submit Expert "Rebuttal"
        Declarations With GC Sargon Oppositions ..................................................12

    D.      Non-GC Sargon Motions ..................................................................14

        1.      August 29, 2025 Deadline to File All Remaining Sargon Motions .14

        2.      Page-Limit Structure for Remaining Sargon Motions ...................14

    E.      Plaintiffs' Additional Injury Allegations in SC Expert Reports .................16

VI.     Trial-Related Issues.................................................................................17

    A.      Clarification on Non-*Sargon* MIL Deadlines.................................17

    B.      Proposed Parameters for Non-Sargon MILs ...............................18

    C.      Plaintiffs' Trial 1 Time Estimate....................................................19

    D.      Parties' Agreement to Modify Trial 2 Pool Expert Report Deadlines .........20

VII.    JCCP PI BW-Specific Discovery Issues ...................................................20

    A.      Plaintiffs' April 21, 2025 Written Discovery Requests (for Trial Group 1)
        and Follow-On Requests and PMQ Notices (for Trial Group 2) .................20

    B.      Completion of Account Collection ...............................................21

VIII.   MDL UPDATE.........................................................................................23

    A.      Case Management Updates ...........................................................23

    B.      Discovery Updates .........................................................................24

The Parties, through Lead and Liaison Counsel, provide the Court with this Joint Status Conference Statement regarding *Social Media Cases*, Judicial Council Coordinated Proceeding No. 5255 ("*Social Media JCCP*"), as directed by the Court's June 30, 2025, Minute Order.  As of August 1, 2025, by Plaintiffs' count, in the JCCP there are 2,929 personal injury plaintiffs ("PI Plaintiffs"), 637 school district plaintiffs and 6 local government plaintiffs ("SD Plaintiffs"), and 6 complaints filed by tribal entities.  As of August 1, 2025, 1,510 PI Plaintiffs have completed Plaintiff Fact Sheets. Plaintiff Fact Sheets are not yet due for 886 plaintiffs.

## I.    Confidentiality/Sealing Issues

### A.    K.G.M. Initials

At the June 30, 2025 Case Management Conference ("CMC"), the Court continued this matter to the next CMC.  6/30/25 CMC Tr. at 32:16-27.  On July 16, Plaintiffs filed a Motion to Seal K.G.M.'s First Amended Short Form Complaint and a Portion of K.G.M.'s Second Amended Short Form Complaint.  Defendants filed their Opposition to the Motion to Seal on July 24.  The Parties will be prepared to address this matter at the August 6 CMC.

### B.    Defendants' Request for Confirmation They May File MSJs, Case-Specific Sargon Motions, and MILs Without Redactions for PI BW Plaintiff Confidential Information

#### Defendants' Position:

Defendants respectfully request that the Court confirm that Defendants may file their motions for summary judgment ("MSJs"), case-specific *Sargon* motions, and motions in limine ("MILs") without redactions for information designated confidential by PI Bellwether ("BW") Plaintiffs.[1]  The Court has noted at prior CMC hearings that, if minor Plaintiffs are referred to by

---

[1] Plaintiffs claim they told Defendants that certain of Plaintiff I.P.'s materials need not be filed under seal in connection with Defendants' MSJs in that case, but that is not the full context. Plaintiffs' initial response to Defendants' outreach on this issue was that Defendants should also agree to waive Confidentiality over Defendants' documents—even though this Court has previously recognized that Defendants will need to maintain Confidentiality over certain materials, even at trial (*see* **Exhibit H**, 4/15/25 CMC Tr. at 8:7-13 (recognizing there may be sealing issues "with the discovery from defendants" such as "information about algorithms and all that sort of thing").  It was only after Defendants narrowed the materials they were requesting to file with

their initials in filings, redactions are not required because the trials will be open to the public under the same circumstances.  **Exhibit A**, 6/16/25 CMC Tr. at 8:17–9:2; *see also* **Exhibit B**, 6/30/25 CMC Tr. at 24:12–25:3, 26:24–27:1, 27:16–22; *NBC Subsidiary (KNBC-TV), Inc. v. Super. Ct.*, 20 Cal. 4th 1178 (1999).  The Court previously told the Parties to "recognize that [guidance] now in what [the Parties are] filing with the [C]ourt" and to "take it as a given now that if we're referring to Plaintiffs by their initials, we're not redacting."  **Exhibit A**, 6/16/25 CMC Tr. at 8:22–9:1.  For PI Bellwether Plaintiffs who are adults and are not referred to by their initials, Defendants respectfully request that the Court confirm that redactions are similarly not required.[2]

**Plaintiffs' Position:**

Defendants must comply with the Stipulated Protective Order and Cal. Rules of Court 2.550 and 2.551. Plaintiffs remain available to meet and confer in good faith about whether certain identified documents should be filed provisionally under seal. For example, Defendants inquired whether Plaintiffs' experts' deposition transcripts and reports needed to be filed under seal. Plaintiffs said no. Defendants inquired whether certain documents they intended to file in support of their Motion for Summary Judgment in the I.P. case needed to be filed provisionally under seal. Plaintiff said no.

On the other hand, however, Defendants insisted on all their expert reports and deposition testimony be filed provisionally under seal. Plaintiffs did so, but do not believe that Defendants can meet the requirements of CRC 2.550. This issue will be fully briefed for the Court in the near future.

The Court has indicated that we are going to have an open trial – this applies to both Plaintiffs and Defendants' documents and testimony. If Defendants want to waive the protections of the Stipulated Protective Order for the remainder of the case, Plaintiffs will engage in that discussion.

---

their I.P. MSJs that Plaintiffs consented to their public filing.

[2] Plaintiffs' experts' reports and deposition transcripts contain *Defendants'* Confidential information—not Plaintiffs'—so Defendants did not, contrary to Plaintiffs' suggestion below, need to seek Plaintiffs' permission to file certain excerpts from those expert materials publicly with Defendants' *Sargon* motions.  Instead, Defendants informed Plaintiffs as a courtesy that they would be doing so, while making clear that they were not waiving Confidentiality over the *entirety* of the reports and deposition transcripts.  Accordingly, when Plaintiffs asked if they could file the entirety of those reports and transcripts publicly, Defendants said no.

**II.    Defendants' Order to Show Cause re Plaintiff Fact Sheets**

**Defendants' Position:**

On April 15, 2025, the Court ordered that "all past-due Plaintiff Fact Sheets are to be substantially completed and filed within 90 days," and stated that it would "issue Orders to Show Cause re Dismissal for Plaintiffs who have not filed substantially complete Plaintiff Fact Sheets within 90 days of the date of [the Minute] Order." **Exhibit C**, 4/15/25 Minute Order at 3.  Consistent with that Order, Defendants plan to file a Motion for Order to Show Cause for Failure to Serve Plaintiff Fact Sheets.  Following a meet-and-confer, Defendants sent Plaintiffs the list of 366 cases subject to the Motion on July 29, and Plaintiffs have stated they intend to respond.  On July 30, Defendants sought to reach agreement about a hearing date, and proposed September 3 or 4 consistent with Plaintiffs' request to set a hearing at least 30 days out.  Because Plaintiffs have yet to respond regarding the list of cases or proposed hearing date, Defendants respectfully request that the Court (1) require a response to Defendants' case list by Friday, August 8, and (2) set a hearing date for the Motion at the Court's convenience (potentially on September 3 or 4, or the next CMC on September 15, 2025).

**Plaintiffs' Position:**

The parties met and conferred on Defendants' proposed Motion and Defendants exchanged the list of plaintiffs subject to the potential OSC. Counsel for Plaintiffs are still investigating, but a preliminary review reveals several issues with the list including: 1) Plaintiffs who have already been dismissed and 2) Plaintiffs who have served fact sheets. All parties have an interest in ensuring that the list is accurate, and until it is, Plaintiffs request that no OSC be set. If Defendants file an Order to Show Cause, Plaintiffs request at least 30 days before an OSC hearing, to ensure accuracy of the cases Defendants move on and to provide time for Plaintiff counsel to provide written notice to each plaintiff subject to the motion.

Plaintiffs have also requested a meet and confer with Defendants regarding streamlining the Plaintiff's Fact Sheet so that they can be prepared more quickly without loss of data, and creation of an administrative docket for cases where claimants are unable to complete the Plaintiff Fact Sheet,

1    but Defendants have not responded.[3]

2    **Defendants' Further Position:**

3    During a meet-and-confer on Defendants' anticipated Motion on July 28, 2025, Glenn

4    Draper, a lawyer who was speaking only on behalf of his clients (not all Plaintiffs in the JCCP or

5    the JCCP Co-Leads), raised the possibility of "streamlining" the Plaintiff Fact Sheet, including

6    because it can be difficult for some of his clients to fill it out, and placing Plaintiffs who've failed

7    to complete PFSs on an "administrative docket."  Defense counsel immediately informed Mr.

8    Draper that there would likely be no appetite for these proposals, as the PFS has been used for over

9    a year in both the MDL and JCCP, was heavily negotiated between the Parties, and was ordered by

10   both the JCCP and MDL Courts.  Nor is an "administrative docket" for Plaintiffs "unable" to

11   complete the PFS warranted; of course, a plaintiff has no right to file a lawsuit and decline to

12   meaningfully participate in that lawsuit by completing Court-ordered forms on the claim that re-

13   living their alleged injuries is traumatizing.  For any Plaintiff unable or unwilling to comply with

14   Court-ordered deadlines for whatever reason, dismissal is the proper remedy.  Finally, these issues

15   are not related to Defendants' Motion, were not properly disclosed as topics for this CMC, and are

16   not ripe; as a result, it is neither appropriate nor timely for Plaintiffs to be raising them now, and the

17   requests should be rejected.

18   **III.    PI BW Deposition Issues**

19       **A.    Supplemental Deposition of K.G.M.'s Mother**

20       **Defendants' Position:**

21   This Court has repeatedly recognized the importance of usage data on Plaintiffs' devices,

22   yet essential relevant data from the time period during which K.G.M. used an iPhone as her primary

23   device has been destroyed.  *See, e.g.*, **Exhibit D**, 9/25/24 CMC Tr. at 54:4-58:3.  K.G.M. stated in

24   Interrogatory responses that she used an iPhone 6S as her primary device from November 2018 to

---

26   [3] Plaintiffs have simply informed the Court of the status of Plaintiffs' request and do not
27   substantively respond here to Defendants' 'Further Position' which was added just shortly before
     the filing of this report. Plaintiffs are prepared to meet with Defendants regarding their concerns
28   and will bring any unresolved matter before the court at a later status conference.

December 2021 and an iPhone 11 as her primary device from December 2021 to June 2024; and her counsel represented that they provided preservation instructions in 2022, and that K.G.M.'s mother collected both devices in July 2024 and maintained possession of them until they were imaged by CFS. However, between July to September 2024, while purportedly in K.G.M.'s mother's possessions, both devices were used to access the following applications, which overwrote and destroyed "Screen Time" data from June 2024 (when the iPhone 11 was K.G.M.'s primary device): FaceTime (July 26 and 27), Notes (July 24, August 4 and 28, and September 5), Photos (July 25 and 26), Phone (July 21 and 22, August 4 and 27, September 4 and 6), Messages (July 7, 21, 22, and 24, August 4, 27, and 28, and September 4, 5, and 6), Outlook (July 7, 21, 22, and 24), and Safari web browser (July 7, 22, and 24, and August 28). *See* Expert Report of Erik Hammerquist—K.G.M. Case at ¶¶ 25, 27 (**Exhibit E**). This "Screen Time" data is the most objective evidence of K.G.M.'s complete device usage because it produces daily and weekly reports on a user's device usage for the prior seven days, including a summary of how much time each application is active. Because counsel for K.G.M. has represented that they provided preservation instructions in 2022 and that the devices were in her mother's possession between July-September 2024 before being imaged by CFS, Defendants respectfully request an additional two hours of deposition time with K.G.M.'s mother to address the following discrete issues: (1) the custody and use of both devices, (2) CFS's requests for information about the devices and applications, and (3) whether and when K.G.M.'s mother was instructed how to preserve evidence on the devices.

**Plaintiffs' Position:**

Defendants' request is premature and demands relief disproportionate to the concerns raised. First, Defendants rely entirely on the report of its forensic data expert, Erik Hammerquist, to suggest that data has been lost or overwritten; however, Mr. Hammerquist has yet to be deposed, and his technical opinions have not yet been tested and critiqued. Second, even assuming Mr. Hammerquist is correct about the devices being accessed, only seven days of screen time data is lost for each device, as the last existing histogram report is overwritten by a new one. See Hammerquist Report at 5 (*"[w]hen present and enabled, Screen Time produces two reports—daily and weekly histogram reports for which the data is only available to the user for seven days."*) Far from being "the most

objective evidence of K.G.M.'s complete device usage" as defendants claim, the iOS screen time data is truncated at best, as it was unavailable prior to 2018 and many of KGM's identified social media accounts were opened years earlier.  Third, Defendants provide no support for the implication that Plaintiff was under a duty not to turn on and access any of the phones, primary or otherwise, as they never requested request that plaintiffs be instructed not to turn on non-primary devices.

**B.     P.M.-Y. Supplemental Deposition**

Defendants requested a supplemental deposition of Plaintiff relating to recent Download Your Data (DYD) productions from non-Defendant platforms (e.g., Discord and Reddit) and third-party productions made in this case.  The Parties are negotiating the scope, location, and timing of the supplemental deposition.

**Defendants' Additional Position:**

Based on review of the recent productions from the additional applications/sources mentioned above, Defendants are seeking a two-hour deposition of P.M.-Y. that will address alternative causation and credibility issues relating to her reported sexual assault and online engagement with content relating to grooming and pedophilia, self-harm, and her self-admittedly faked amnesia.

**Plaintiff's Additional Position:**

Plaintiff P.M.Y. objects to the description of the recent productions which includes numerous assumptions and mischaracterizations.

**C.     Deposition of Martha McLemore (K.G.M. Treater)**

**Defendants' Position:**

On June 25, 2025, the Parties started the deposition of Ms. Martha McLemore, one of K.G.M.'s treaters, but Defendants held Ms. McLemore's deposition open because Ms. McLemore asserted privilege and refused to answer any substantive questions related to her treatment of K.G.M. It is undisputed—and Defendants have repeatedly reminded Plaintiffs' counsel—that (i) Ms. McLemore's employer at the time of K.G.M.'s treatment, Victory Community Support Services, has expressly waived privilege as to K.G.M.; (ii) VCSS has produced K.G.M.'s treatment records and 5 other VCSS therapists have openly testified about their treatment of K.G.M., and (iii) K.G.M.

impliedly waived any privilege with regard to her mental health by bringing this litigation. *See Wilson v. Super. Ct.*, 63 Cal. App. 3d 825, 829 (1976). Although this waiver was clear at Ms. McLemore's deposition, Plaintiff's counsel did not correct Ms. McLemore's misunderstanding that privilege prohibited her from testifying. Defendants have asked Plaintiff whether Plaintiff will call Ms. McLemore as a trial witness—if she is not a witness, Defendants' concern is moot—but Plaintiff's counsel has thus far refused to answer. Defendants therefore request the Court's assistance to clarify that the privilege with regard to Ms. McLemore's treatment of KGM has been waived and to compel Ms. McLemore to complete her deposition in which she substantively answers questions about her treatment of KGM.[4]

### Plaintiffs' Position:

Despite knowing of Ms. McLemore's intent to invoke privilege *at least* 25 days in advance of the deposition, Defendants neither alerted Plaintiff to this issue nor requested a signed waiver, even though they had previously requested signed privilege waivers in advance of other treater depositions, plaintiff's counsel had provided them, and those witnesses testified without issue. **Exhibit** U, Dep. of Martha McLemore at 32:24-33:11 (noting Ms. McLemore alerted defense counsel to her intent to claim privilege when they spoke over the phone in May). Defendants offer no authority to suggest that Plaintiff's counsel was obligated at the deposition, *without any request by Defendants on the record*, to "correct Ms. McLemore's misunderstanding that privilege prohibited her from testifying." What happened here is clear: Ms. McLemore advised defense

---

[4] Plaintiff notably does not dispute that K.G.M. has waived patient/treater privilege here and, importantly, even now continues to sidestep the central question of whether she intends to call Ms. McLemore at trial (a possibility that would be entirely unfair when Defendants were deprived of a substantive deposition by Plaintiff's counsel's failure to inform Ms. McLemore during her deposition that K.G.M. was not asserting privilege). Instead, Plaintiff focuses on the artificial dispute over whether Ms. McLemore raised privilege prior to her deposition. But that is irrelevant as to whether Plaintiff waived privilege (she has) or whether the Parties should resume her deposition after the Court clarifies the status of K.G.M.'s waived privilege (which both Parties held open—in Plaintiff's words—"in the event that the privilege issues are resolved"). Regardless, Ms. McLemore did not preview any intent to assert privilege with defense counsel but only indicated that she was no longer employed at Victor Counseling, where she treated K.G.M. Should the Court find it helpful, Defendants will provide a declaration from the counsel for TikTok who spoke with Ms. McLemore before her deposition.

1    counsel of her intent to invoke privilege more than three weeks in advance, yet defense counsel

2    failed to act to timely resolve the issue and proceeded with the deposition.  Now, the deadline to

3    complete fact discovery has long since passed, and the parties must turn their attentions to trial

4    preparation.  Defendants' blunder here was understandable, but the consequences must be borne by

5    Defendants, not Plaintiff.

6    **IV.    CFS Audit**

7            **Defendants' Position:**

8            Because the work performed by Plaintiffs' former ESI vendor, CFS, presents foundational

9    issues regarding essential evidence in this litigation—evidence from Plaintiffs' devices and

10   accounts—this Court previously ordered Plaintiffs "to provide to Defendants a declaration

11   explaining what was done in the audit [of CFC] and the outcomes."  **Exhibit F**, 4/15/25 Minute

12   Order at 4.  However, the single-page Declaration provided two and a half months later is critically

13   deficient and fails to provide even basic information necessary to assess the scope or sufficiency of

14   the audit undertaken (i.e., "what was done in the audit") to address whether CFS properly collected

15   and preserved this core evidence.  *See* Declaration of Wes Johnson Regarding Audit of CFS

16   Collections (**Exhibit G**).  For example, the Declaration states that Forensic Discovery "audit[ed]

17   key forensic activities through a sample review of various collection types," but fails to describe (1)

18   the key forensic activities, (2) the sample collection types, tools, or sources, or (3) how the audit

19   was performed (i.e., the specific steps taken to validate prior work).  *Id.*  The Declaration also states

20   that "[d]ata was preserved in a forensically sound manner," but fails to describe or provide any

21   information about the preservation or the steps taken to assess the "integrity and authenticity of the

22   preserved evidence."  *Id.*  Because Plaintiffs failed to provide an adequate declaration in the first

23   instance, and have refused Defendants' request for an amended version, Defendants respectfully

24   request that Plaintiffs be required to submit a revised Declaration by August 13, 2025 that describes

25   the scope of work performed in the audit, including (1) identification of the sample collection types,

26   tools, and sources (including the devices), (2) a description of the specific steps taken to validate the

27   key forensic activities referenced and to reach the conclusion that they were "conducted in

28   accordance with widely accepted digital forensic and eDiscovery best practices," and (3) a

1  description of the steps taken to assess the integrity, authenticity, and storage of the preserved

2  evidence.[5]

3  **Plaintiffs' Position:**

4  Plaintiffs respectfully oppose Defendants' request for a revised declaration, as the current

5  declaration fully complies with this Court's April 15, 2025 order requiring Plaintiffs to "provide to

6  Defendants a declaration explaining what was done in the audit and the outcomes." Plaintiffs

7  undertook this expensive and time-consuming audit process solely due to controversy surrounding

8  their previous forensics vendor—controversy that, as the Court is aware, did not directly relate to or

9  impact the work performed in this matter and arose without any prior indication that the work in this

10 case was compromised in any way. The Court-approved vendor, Forensic Discovery, has provided

11 a declaration confirming that their audit found nothing of concern and that the data was preserved

12 in a forensically sound manner, which fully satisfies the Court's order and addresses any theoretical

13 concerns about the foundational integrity of the evidence. Defendants' demand for additional

14 detailed technical specifications goes beyond what this Court ordered and lacks any factual basis,

15 as no actual concern has ever been raised regarding the specific forensic work performed in this

16 matter. Defendants' reservation of rights to depose the non-designated forensics vendor is entirely

17 inappropriate and represents an improper attempt to expand discovery beyond the scope of the

18 Court's limited remedial order.

19 **V.    Expert Issues**

20 **A.    Defendants' General Causation Sargon Motions Filed July 28**

21 **Defendants' Position:**

22 On July 28, 2025, Defendants filed twelve *Sargon* motions challenging Plaintiffs' General

23 Causation ("GC") experts: one 15-page "common-issues" (or "omnibus") motion addressing cross-

24 cutting issues, and eleven 15-page expert-specific motions.  As noted in the motions, Defendants

25 are available to present further evidence on these issues through a Section 402 hearing if the Court

26 is so inclined.

27

28

---

[5] Defendants reserve all rights, including with respect to deposing Wes Johnson.

JOINT STATUS CONFERENCE STATEMENT FOR AUGUST 6, 2025 CONFERENCE

1   Defendants note that the current deadline to file replies in support of GC *Sargon* motions is

2   September 1, 2025, which is Labor Day. Defendants respectfully request that the deadline be moved

3   later to Wednesday, September 3, 2025 (if it is not otherwise continued in light of the issues

4   discussed *supra* Part V.C).

5   **Plaintiffs' Position:**

6   Plaintiffs' do not oppose Defendants' request.

7   **B.      GC Sargon Motions Filed July 28 and Related Issues**

8   **Defendants' Position:**

9   On July 28, 2025, Plaintiffs filed 12 *Sargon* motions challenging Defendants' GC experts:

10  one "omnibus" motion seeking exclusion of "all opinions by Defendants' experts asserting that

11  scientific studies, and expert opinions relying on those studies, should be discounted because they

12  study self-reported injuries that have not been medically diagnosed"; 10 expert-specific motions

13  presenting this same argument as to those specific experts;[6] and a motion to exclude all of the

14  opinions of Defendants' expert Dr. Keith Hampton on three separate grounds.

15  The Court previously authorized 15 pages to oppose each *Sargon* motion filed by the other

16  side. *See* 6/16/26 CMC Tr. at 22:16-22 (explaining that Plaintiffs could either (a) file a 15-page

17  opposition to Defendants' omnibus motion plus 15-page oppositions to each of Defendants' eleven

18  expert-specific motions, or (b) respond to each of the expert-specific motions "with 15 pages each

19  and then have an additional 15 pages that you could spread over those oppositions as you wish").

20  Although this page-limit structure would translate to 180 pages of opposition briefing by

21  Defendants, Defendants anticipate being able to present their arguments in opposition to Plaintiffs'

22  GC *Sargon* motions in just two briefs—but seek the Court's leave to enlarge the page limits for one

23  of those briefs to 25 pages from 15 pages. Specifically, Defendants would file one 25-page

24  opposition brief addressing the argument presented in Plaintiffs' omnibus motion, including as it

25  relates to the ten experts for whom Plaintiffs also filed expert-specific motions (rather than filing

26  ten separate 15-page oppositions to each of those expert-specific motions); and one 15-page

27

28  [6] Dr. Auerbach, Dr. Galvan, Dr. Gibbons, Dr. Gotlib, Dr. Honaker, Dr. Krishna, Dr. Pfeifer, Dr. Platt, Dr. Schwartz, Dr. Shear.

11

1    opposition brief addressing Plaintiffs' motion directed to Dr. Hampton.

2         In addition, Defendants request confirmation that the Court has stayed the deadline for

3    sealing motions regarding the information redacted from Plaintiffs' *Sargon* motions for 30 days

4    (Plaintiffs' omnibus motion erroneously indicates that a motion to seal needs to be filed within 10

5    days).

6         **Plaintiffs' Position:**

7         Defendants should be held to the same 15-page limit that Plaintiffs were required to follow

8    when responding to Defendants' omnibus motion. The ten expert-specific satellite motions are

9    merely administrative supplements to the omnibus motion that identify which specific opinions

10   should be stricken based on the legal argument presented in the omnibus. They contain no additional

11   substantive argument requiring extended response. Defendants' request for 25 pages to address what

12   is essentially one legal argument contradicts the CCP's established page limits. Granting

13   Defendants' request would create an unfair procedural advantage and undermine the Court's page

14   limit structure.

15   **C.    Plaintiffs' July 24 Letter Signaling Intent to Submit Expert "Rebuttal"**

16   **Declarations With GC Sargon Oppositions**

17        **Defendants' Position:**

18        At the June 30 CMC, the Court told Plaintiffs that if their experts file declarations criticizing

19   Defendants' GC experts with their oppositions to Defendants' GC *Sargon* motions due August 20—

20   notwithstanding those experts' election not to file rebuttal opinions by the May 16 and July 3

21   deadlines and evasiveness in response to defense questioning on those opinions[7]—they risked a

22   continuance of those motions and "blowing the trial date." **Exhibit B**, 6/30/25 CMC Tr. at 15:9-16,

23   20:25-27. Nevertheless, on July 24, Plaintiffs sent Defendants a letter putting Defendants "on notice

24   that Plaintiffs' experts will present comprehensive criticisms of defense expert methodologies and

25   conclusions in their testimony and related [*Sargon*] briefing."

26        Defendants respectfully submit that, to the extent Plaintiffs respond to Defendants' GC

27

28
_____
[7] *See* 6/26/25 Joint Statement for June 30, 2025 CMC at 2-3.

1  *Sargon* motions with a host of new opinions or criticisms, in circumvention of the Court's

2  Scheduling Order and the Court's plan, Defendants will need to request prompt relief, whether that

3  is an extension of the Pretrial Schedule and trial date, new depositions, and/or granting of motions

4  to strike the new opinions.[8]  Indeed, the Court previously explained to Plaintiffs that the only way

5  to get a trial date in 2025 was to do two phases of *Sargon* briefing, with the first phase focused on

6  GC experts; to the extent Plaintiffs disclose new opinions for the first time in opposition to

7  Defendants' GC *Sargon* motions, thus requiring a continuance of those motions, they will

8  effectively be defeating the two-phase *Sargon* process that the Court previously told Plaintiffs was

9  necessary to get to trial in 2025.  *See* **Exhibit D**, 9/25/24 CMC Tr. at 20:21-21:13 (Court instructing

10  Plaintiffs that having only one expert phase "leads to a trial not in 2025, period, end of story").

11      **Plaintiffs' Position:**

12      There is no justification for moving the trial date. Defendants fundamentally mischaracterize

13  both the Court's rebuttal deadline and their own deposition conduct - . The Court's May 16 and July

14  3 deadlines for "rebuttal" experts under California Code of Civil Procedure refer to identifying new

15  rebuttal experts, not filing rebuttal opinions, and the Court specifically instructed Defendants that

16  they needed to conduct thorough depositions to adequately probe all expert opinions, including

17  rebuttal opinions. Plaintiffs' experts made clear during their depositions that they held rebuttal

18  opinions, and Defendants were provided more than adequate time to probe those opinions, often

19  beyond the default time limits, but Plaintiffs cannot control how Defendants use their deposition

20  time. Further, the opinions offered by Plaintiffs' experts (including ones that could be characterized

21  as rebuttal) stem from their underlying, fundamental opinions - nothing should be shocking or

22  surprising, even where Plaintiffs' experts disagree with Defendants' experts. There is no surprise,

---

[8] The Court already rejected Plaintiffs' argument that their experts' evasiveness at deposition in response to defense questioning is somehow Defendants' fault.  *See* 6/30/25 CMC Tr. at 17:9-13 ("I really don't want to get into the gamesmanship of 'what was the question exactly, and did the [Plaintiff] expert have a chance to review the [defense expert's] opinion'"); *id.* at 21:21-26 ("if [Plaintiffs'] rebuttal … is 'well, [Defendants] used their time inefficiently,' I'm sorry, that gives me a headache."); 21:1-3 ("Plaintiffs' Counsel … would be better served by … saying these depos are two-day depos th[a]n creating the uncertainty.") (single quotation marks added).

1    no prejudice, and simply no justification to disrupt the trial schedule.

2       **D.    Non-GC Sargon Motions**

3       There are two general categories of experts for whom *Sargon* practice remains: case-specific

4    experts opining on Specific Causation and data-related issues for the three Trial 1 Plaintiffs ("Case-

5    Specific Experts"); and all remaining non-case-specific experts, who opine on such topics as Design,

6    Warnings, Corporate Social Responsibility, Marketing, and Defendants' Financial Condition

7    ("Non-GC Experts").  Defendants raise two issues with respect to these motions below.

8       **1.    August 29, 2025 Deadline to File All Remaining Sargon Motions**

9       **Defendants' Position:**

10       The JCCP expert discovery period closes on August 27, 2025, and the deadline to file all

11    remaining *Sargon* motions is two days later, on August 29, 2025.  Between the JCCP and the MDL,

12    the Parties have over 70 days of depositions scheduled in August.  To allow the Parties sufficient

13    time to draft *Sargon* motions as to experts whose depositions are scheduled late in the expert

14    discovery period, Defendants asked Plaintiffs to stipulate to an extension of the *Sargon* deadline to

15    September 12 for any experts deposed on or after August 15.  Plaintiffs agreed to that extension but

16    *only* for experts (i) deposed on or after August 25 or (ii) who are opining on data issues (including

17    Meredith McCarron).  Defendants respectfully request that the Court order the extension to

18    September 12 for any experts deposed on or after August 15 or who are opining on data issues.

19       **Plaintiffs' Position:**

20       Plaintiffs do not believe that any change is needed but do not oppose Defendants' request as

21    long as there is no change to the scheduled trial date.

22       **2.    Page-Limit Structure for Remaining Sargon Motions**

23       **Defendants' Position:**

24       ***Case-Specific Experts.***  By the August 29 deadline, Defendants expect to file one joint 15-

25    page *Sargon* motion for each of Plaintiffs' five Specific Causation ("SC") Expert reports[9] (i.e., five

26    motions total).  Defendants are still evaluating Plaintiffs' data-related expert, Meredith McCarron,

27

28

---

[9] KGM (Bagot); Moore (Bagot); Moore (Murray); RKC (Bagot); RKC (Murray).

1   for whom all deadlines were extended by agreement of the Parties (including an extension to

2   September 12 of Defendants' deadline to serve *Sargon* motions as to Ms. McCarron), subject to

3   Court approval.

4       ***Non-GC Experts.***   Defendants are still evaluating the ten Non-GC Experts for whom

5   Plaintiffs have submitted reports[10] (whose depositions have not yet occurred), but do not currently

6   expect to file separate 15-page *Sargon* motions as to each of those experts.  Accordingly, while

7   reserving all rights, Defendants respectfully request permission, instead of filing ten separate *Sargon*

8   motions, to file one joint omnibus motion of no more than 25 pages presenting cross-cutting bases

9   to exclude multiple of Plaintiffs' Non-GC Experts' opinions (while reserving the ability to file joint

10  expert-specific motions as to specific experts not addressed in the omnibus motion as needed).  To

11  the extent Defendants' 25-page omnibus motion addresses any of the Non-GC Experts for whom

12  the Parties have agreed, subject to Court approval, to extend Defendants' *Sargon* deadline to

13  September 12, 2025, Defendants respectfully request that the Court permit Defendants to file the

14  omnibus motion on that same date.

15      **Plaintiffs' Position:**

16      Plaintiffs do not object to Defendants filing separate 15-page motions against each case-

17  specific expert, as this approach aligns with the established rules and procedures. However,

18  Defendants' request for a 25-page omnibus motion against Non-General Cause Experts while

19  simultaneously "reserving the ability to file joint expert-specific motions as to specific experts as

20  needed" is fundamentally unfair and should be rejected. Plaintiffs would only agree to a 25-page

21  omnibus motion if Defendants commit to forgoing any individual expert-specific motions against

22  those same Non-General Cause Experts covered in the omnibus motion. There is no justification for

23  allowing Defendants both an expanded omnibus motion and the continued right to file additional

24  individual motions against the same experts. The Court should require Defendants to choose

25  between filing standard 15-page individual motions or a single 25-page omnibus motion that

26  precludes any further expert-specific challenges to the covered experts.

27

28  [10] Tim Estes, Colin Gray, Brooke Istook, Arvind Narayanan, Sarah Roberts, Jingwen Zhang, Seth
    Noar, Minette Drumwright, John Chandler, and Robert Johnson.

1    **E.**     **Plaintiffs' Additional Injury Allegations in SC Expert Reports**

2    **Meta's Position:**

3         In two of the Trial Pool 1 bellwether cases (Moore and K.G.M.), Plaintiffs alleged for the

4    first time in their SC Expert reports that Defendants' platforms caused or exacerbated injuries that

5    Plaintiffs *did not identify in their pleadings* (either in their Short Form Complaints or their Plaintiff

6    Fact Sheets)—specifically, opinions related to cannabis use disorder for Plaintiff Heaven Moore,

7    and to obsessive-compulsive disorder (OCD) and attention-deficit/hyperactivity disorder (ADHD)

8    for Plaintiff KGM.  Plaintiffs failed to disclose these claimed injuries in their SFCs and PFSs despite

9    those forms including specific sections requiring disclosure of any and all claimed injuries, and

10   despite each Plaintiff alleging several different injuries in their pleadings and repeatedly amending

11   their pleadings, including to identify additional injuries.[11]  Plaintiffs' attempt to inject additional

12   injuries into their case at this belated juncture, after their depositions have already been taken and

13   fact discovery has closed, is prejudicial, particularly in light of the highly accelerated case schedule

14   the Parties are on, with trial approaching in November.  Without conceding that these injuries are

15   appropriately even at-issue, but in recognition of the current case schedule, Meta requests a further

16   90-minute deposition of each of these Plaintiffs to explore these new injury claims, and the

17   opportunity to discuss this issue further with Your Honor at the August 6 CMC.

18   **Plaintiffs' Position:**

19        The conditions identified by Plaintiffs' experts fall squarely within the mental health harms

20   already alleged in Plaintiffs' pleadings and disclosed in their Plaintiff Fact Sheets. These expert

21   opinions reflect the cascading effects and manifestations of the core mental health injuries that

22   Plaintiffs have consistently alleged were caused by Defendants' social media platforms. Defendants

23   have had ample opportunity through medical records review, treating physician depositions, and

24   extensive fact discovery to understand the full scope of Plaintiffs' mental health conditions and their

25   interconnected nature. The specific conditions now complained of by Defendants are direct

26

27   _____

[11] For example, Moore has amended her PFS seven times, adding exacerbated bipolar disorder to
28   the list of injuries she alleges were caused or worsened by Defendants' platforms in her fifth
     amended PFS, but never claiming cannabis use disorder.  Moore Fifth Amended PFS § VII.A.

consequences of the very mental health harms that Plaintiffs have alleged throughout this litigation, and Defendants' claim of surprise is disingenuous given their comprehensive access to Plaintiffs' medical histories and treating physician testimony. Plaintiffs' expert opinions merely provide the scientific and medical framework explaining how the pleaded mental health injuries caused by social media use manifested in these specific, related conditions.

## VI.    Trial-Related Issues

### A.    Clarification on Non-*Sargon* MIL Deadlines

**Plaintiffs' Position:**

Plaintiffs respectfully seek the Court's clarification regarding the deadline for filing non-*Sargon* Motions in Limine. While the Trial 1 Scheduling Order indicates that all Motions in Limine should be fully briefed by the October 16, 2025 Final Status Conference, Plaintiffs understood the August 29 deadline to apply specifically to *Sargon* motions on non-general cause/case-specific experts, with remaining non-*Sargon* motions to be filed closer to the Final Status Conference consistent with traditional California state court practice. The parties are conferring regarding a proposed schedule whereby all non-Sargon Motions in Limine would be filed on September 19, with Oppositions due October 8 and no Reply briefs, which would ensure full briefing well in advance of the Final Status Conference, while adhering to customary state court procedures. Pursuant to standard California practice where Motions in Limine are typically heard at the Final Status Conference on statutory notice, with Courts often dispensing with reply briefs, Plaintiffs believe this approach would serve judicial efficiency while maintaining proper notice requirements. We respectfully request the Court's guidance on this scheduling matter to ensure compliance with the Court's expectations and applicable procedural requirements.

**Defendants' Position:**

Plaintiffs have requested clarification that the August 29 deadline for all remaining Trial Group 1 *Sargon* motions does not apply to non-*Sargon* MILs; and that the deadline for non-*Sargon* MILs is September 19, 2025. The Court previously made clear that it intended the August 29 deadline to include not only all remaining *Sargon* motions, but also all MILs. *See* **Exhibit I**, Pretrial Case Schedule; **Exhibit J**, 2/19/25 CMC Tr. at 62:4-8 ("I am not inclined to break out the [MILs]

17

in any way other than we have got a schedule for the *Sargon* general causation briefing. All the other [MILs], in my judgment, should be briefed together."). Nevertheless, Defendants do not oppose Plaintiffs' request to continue the deadline for non-*Sargon* MILs, but respectfully request that such deadline be set for September 12, 2025, with oppositions due October 1, 2025, to afford the Court additional time to consider the motions before the final pretrial conference. Defendants are willing to forgo reply briefs on MILs to accommodate Plaintiffs' requested extension.

### B.    Proposed Parameters for Non-Sargon MILs

**Defendants' Position:**

Given the significant number of factual issues involved in this litigation, the number of Defendants and Plaintiffs, and the broad range of evidence that Plaintiffs may introduce at trial with respect to each of those issues, Defendants anticipate filing a relatively large number of MILs (currently due August 29, but requested above to be extended to September 12), and Plaintiffs may likewise file a large number of MILs. Defendants wish to apprise the Court that, to streamline the process, they generally intend to limit themselves to no more than 5 pages per MIL, with the exception of 5-10 MILs for which they may need up to 10 pages. Defendants welcome the opportunity to further discuss possible MIL briefing parameters at the August 6 CMC.

**Plaintiffs' Position:**

An overall cap on the number of pages for non-Sargon Motions in Limine would better serve the parties and the Court. While Defendants' proposal limits the pages on individual motions, it would not prevent hundreds of pages of MIL briefing if, for example, each side were to file 30 MILs at 5 or 10 pages each. Instead, Plaintiffs propose that each side file a single Motion in Limine of up to 50 pages, which each side can divide however it chooses. Each individual motion would be numbered, have its own heading, and indicate whether it is addressed to all of the Group 1 bellwether cases or only to a specific case. If, however, the Court prefers to implement page limits on individual motions (as Defendants propose), Plaintiffs propose a three-page limit for MILs, with each side having up to five MILs that can be as long as five pages. Responses should be the same length as the motion to which they respond, and there should be no replies unless ordered by the Court.

1        **C.        Plaintiffs' Trial 1 Time Estimate**

2        **Defendants' Position:**

3        Consistent with this Court's guidance that "a shorter trial is a better trial," **Exhibit A**, 6/16/25

4    CMC Tr. at 56:20–21, Defendants continue to believe that any trial in 2025 should be completed by

5    the Holiday break.  To that end, last Friday Defendants shared with Plaintiffs a proposed schedule

6    for pretrial deadlines, including witness and exhibit lists and the exchange of trial-stamped exhibits.

7    But Defendants' efforts to streamline the pretrial process and arrive at a schedule that respects the

8    time of the Parties, the Court, and the members of the jury have been hampered by Plaintiffs'

9    continued refusal to provide even a high-level estimate for the amount of time they anticipate

10   requiring to present their case.   The Court made clear over a month ago that it expected Plaintiffs

11   to provide this basic information "in short order," *id.* at 58:8, and Plaintiffs have provided no

12   explanation for their delay; notably, the MDL Plaintiffs were able to provide such an estimate to

13   Judge Gonzalez Rogers at the July 18 MDL CMC (4 weeks to present Plaintiffs' case).  *See infra*

14   Part VIII(A).  Defendants submit the point has come for Plaintiffs to inform Defendants and the

15   Court how long they expect Trial 1 to last.[12]

16       **Plaintiffs' Position**

17       The parties' positions regarding trial length remain unchanged - Defendants arbitrarily assert

18   that the trial should be completed by "the Holiday Break"; Plaintiffs maintain that it is premature

19   for specific arbitrary limits given unresolved issues with respect to both witnesses and documents

20   but believe the trial can be completed in January 2026. Your Honor stated that a trial time budget

21   would be issued upon review of a *joint* witness list, acknowledging that with Sargon motions and

22   "all kinds of other things going on" the Court wouldn't expect anything reliable for some period of

23   time. (June 30 CMC Tr. 9:20-10:11; 35:15-20.) Plaintiffs cannot be more precise at this time, as

24   Defendants demand half of the allotted trial time for their defense, without providing any

25   information about the number or identify of their witnesses, and Defendants refuse to engage in

26   _____

27   [12] Plaintiffs raised their request for a 402 hearing "regarding the admissibility of Defendants'
     documents" for the first time less than 1 business day before this Joint Statement was due, in their

28   *responsive* position statement on a defense topic.  To the extent the Court nonetheless wishes to
     discuss this prematurely-raised issue at the CMC, Defendants will be prepared to address it then.

meaningful discussions regarding the admissibility of Defendants' internal documents. Rather than arbitrary posturing, Plaintiffs believe the parties and the Court should focus on resolving issues regarding witnesses and documents that will allow for more precise time estimates. In this regard, Plaintiffs request a 402 hearing in mid-September regarding the admissibility of Defendants' documents, which may give rise to stipulations regarding admissibility, dramatically reduce the number of witnesses necessary at trial, and enable the parties to provide reliable trial time estimates.

### D.    Parties' Agreement to Modify Trial 2 Pool Expert Report Deadlines

The Parties have agreed, subject to the Court's approval, to extend the Case Track 2 deadlines, as set forth below.  This extension staggers the end of Track 1 depositions and the service date for Case Track 2 reports.  Because this proposal does not change the deadline for briefing, and moreover will not impede progression towards trial readiness for Case Track 2.  Attached hereto as **Exhibit K** is a Proposed Order implementing this schedule change, which the Parties respectfully request that the Court enter.

| Event | Deadline | Proposed Adjustment |
|---|---|---|
| Opening reports | August 28 | September 11 |
| Rebuttal reports | September 18 | October 9 |
| End of expert discovery | November 18 | November 21 |
| Opening Sargon briefs | December 11 | *No change* |

## VII.    JCCP PI BW-Specific Discovery Issues

### A.    Plaintiffs' April 21, 2025 Written Discovery Requests (for Trial Group 1) and Follow-On Requests and PMQ Notices (for Trial Group 2)

On July 21, 2025, the Parties reached an agreement to resolve the Trial Group 1 Plaintiffs' April 21, 2025 discovery requests.  Pursuant to that agreement, Defendants will by August 25, 2025 serve responses and objections to six special Interrogatories ("ROGs") and ten Requests for Admission ("RFAs") for specified Trial Group 1 BW Plaintiffs and, for any RFA denial, will provide a statement of the general factual basis, including any specific facts that are readily-available, and will produce (or identify by Bates Number if already produced) any documents

referenced therein.  In exchange, The Trial Group 1 Plaintiffs agreed to withdraw all other written discovery requests that they served on April 21, 2025 and agreed that any requests served for the Trial Group 2 and 3 Plaintiffs will be mostly similar in style and number to those agreed-to for Trial Group 1.  Defendants have reserved their right to object to any such further requests from the Trial Group 2 and 3 Plaintiffs, and the Parties have agreed that Defendants' deadline to serve responses and objections to Plaintiffs' Trial Group 2 requests (served on July 14 and July 15, 2025) will, subject to further conferrals about those requests, be 45 days after the agreed August 25 deadline to serve responses and objections to the Trial Group 1 requests.

On July 14, Plaintiffs also served another set of PMQ notices on data issues for the Trial Group 2 Plaintiffs; Defendants do not believe further PMQs are warranted, but are considering Plaintiffs' suggestion that the PMQs be held in abeyance until after Defendants have responded to Plaintiffs' discovery requests served the same date.

**B.      Completion of Account Collection**

**Plaintiffs' Position:**

Plaintiffs respectfully submit that the additional account collection process has run its course and no further collection efforts are warranted. Plaintiffs have undertaken extensive collection efforts across all requested accounts for the Group 1 and 2 trial cases, successfully collecting from dozens of applications and platforms while making reasonable efforts to obtain materials from inaccessible accounts.[13] The cost and burden of these collection efforts have been substantial, while the relative yield of responsive materials has been minimal, indicating that further collection activities would be disproportionate to any potential benefit and unlikely to result in the discovery of relevant evidence. Additionally, the recent ruling by Judge Peter H. Kang in the MDL (**Exhibit L**) provides clear guidance that the requests for additional applications are not proportional to the needs of the case, potentially duplicative of already-produced discovery, and lacking in

---

[13] Plaintiffs have also notified Defendants that they have completed all collections in Group 1 and 2 trial cases, including implementing the suggestions, like testing additional email addresses, made by Defendants before the last status conference. Defendants position statement is simply inaccurate and ignores what Plaintiffs have communicated.

1  demonstrated relevance. Consistent with the MDL court's emphasis that fact discovery must "come

2  to an end, even in the most complex cases," Plaintiffs submit, and ask for Court confirmation, that

3  the comprehensive collection and review efforts already completed provide a sufficient discovery

4  record for Defendants' to prepare for trial.

5          **Defendants' Position:**

6          Plaintiffs' obligations with respect to additional application/account productions are defined

7  by existing orders and agreements dating back to March and April, and Plaintiffs fail to provide any

8  compelling reason to revisit them.  *See* 3/19/25 CMC Tr. at 9:14-22, 12:1-22; Joint Statements for

9  the April 15, May 5, and June 16 CMCs.  Contrary to Plaintiffs' assertion, the resulting productions

10  have yielded critical evidence, including (for example) ChatGPT data for R.K.C. (which the Court

11  previously recognized warranted a further deposition), and Discord and Reddit data for P.M.-Y. (as

12  outlined in Section III.B).  *See* 6/16/25 Minute Order at 2.  Given the demonstrated relevance of

13  productions from additional applications/accounts, there is no basis for Plaintiffs' claim that further

14  efforts are "unlikely to result in the discovery of relevant evidence," and Plaintiffs fail to offer one.

15  Further, Plaintiffs do not state that their efforts are complete, and the status of those efforts remains

16  unclear because (1) Plaintiffs initially attempted only one email address/phone number combination

17  for "inaccessible accounts" for Trial Pool 1 Plaintiffs, and have not confirmed that numerous other

18  login options—including usernames and passwords that exist in password managers, are stored in

19  web browsers, or were identified by Defendants—have been tried; (2) Defendants have not had the

20  opportunity to adequately evaluate Plaintiffs' June 24 representations about which

21  applications/accounts of Trial Pool 2 Plaintiffs are inaccessible or have pending collection requests;

22  and (3) Plaintiffs have not provided information regarding collection efforts for Trial Pool 3 or other

23  bellwether Plaintiffs.  Finally, Plaintiffs' request to avoid further collection and production efforts

24  should also be denied because nothing in Judge Kang's order alters Plaintiffs' obligations under the

25  existing orders and agreements in the JCCP (or under California law), his conclusions regarding

26  relevance are demonstrably inconsistent with the productions made in these cases, and he expressly

27  relied on differences in the discovery processes and procedural posture of MDL cases (which, unlike

28  the JCCP, did not contemplate "Phase 2" discovery periods)  to reach a different result.

## VIII.    MDL UPDATE

As of August 1, 2025, by Defendants' count, in the MDL there are approximately 705 personal injury plaintiffs, 1,105 school district plaintiffs, 21 local government and tribal plaintiffs, and one complaint filed by a total of 29 State Attorney Generals.

### A.    Case Management Updates

Since the last JCCP CMC, the MDL Court has held one CMC, on July 18, 2025.  The Court issued guidance on following issues:

*Trials.*  Judge Gonzalez Rogers ordered the parties to meet and confer further on proposed trial sequencing, but said she is inclined to set the SD BW cases for trial first in the MDL, starting next Summer.  Judge Gonzalez Rogers intends to have all five PI Trial BW and all six SD Trial BW cases prepared to go to trial.  On SD trial sequencing, Judge Gonzalez Rogers said she might set two groups of SD BW cases for trial one week apart.

*Dispositive Motions.*  Judge Gonzalez Rogers confirmed the parties should move forward with filing MSJs and Rule 702 motions for all 5 PI BW and all 6 SD BW cases on September 24, 2025 as scheduled.[14]  She ordered the Parties to file a 6-page single-spaced letter-brief outlining the arguments they expect to present in all MSJs and Rule 702 motions by August 8, with responses due on August 15 (though Plaintiffs indicate that they do not expect to file any MSJs or Rule 702 motions); the Parties and Court will then discuss those potential motions at the August 22 CMC.  Judge Gonzalez Rogers confirmed that the MSJs will be ripe for decision by November 25, and set argument on the motions for January 9, 2026 at 9:00 a.m. PT.

*Expert Issues.*  In their MDL CMC Statement preceding the CMC, Defendants had requested a 6-week extension of the August 27, 2025 deadline to complete expert depositions, with commensurate extensions of the remaining pretrial deadlines, and requested guidance on their dispute with Plaintiffs regarding time allowances for depositions of Plaintiffs' experts.  At the July 18 CMC, Judge Gonzalez Rogers referred both issues to Magistrate Judge Kang for resolution.

---

[14] The September 24, 2025 deadline applies to MSJs and Rule 702 motions for the PI and SD cases only; MSJs and Rule 702 motions as to the State AGs' cases and AG-specific experts are now on a later track.

1   Following the CMC, the MDL parties reached agreement on and filed a stipulation to extend the

2   deadline to complete MDL expert depositions for certain experts from August 27, 2025 to

3   September 17, 2025.  *See* **Exhibit M (Stipulation and Order)**.  On July 23, 2025, the parties

4   submitted a joint letter brief to Magistrate Judge Kang regarding the parties' dispute on time

5   allowances for expert depositions, and included charts listing all MDL Plaintiff Experts and MDL

6   Defense Experts with their proposed limits for each one, attached hereto as **Exhibits T1** (joint letter

7   brief), **T2** (chart of MDL Plaintiff experts), and **T3** (chart of MDL Defense experts).

8       Attached hereto as **Exhibits N and O** are the MDL parties' Joint CMC Statement for the

9   July 18 CMC (Ex. N) and the MDL Court's Case Management Order (CMO) No. 25 following that

10  CMC (Ex. O).

11      **B.     Discovery Updates**

12      On July 17, 2025, Magistrate Judge Kang heard argument on disputes between Meta and

13  former Meta employee Frances Haugen regarding the scope of Ms. Haugen's deposition and her

14  objections, including under the First Amendment, to producing certain documents requested in

15  Meta's document subpoena.  *See* **Exhibit P** (joint letter brief).  Following argument, Magistrate

16  Judge Kang allowed Ms. Haugen to submit a declaration substantiating her First Amendment

17  privilege claim and ordered supplemental briefing on the scope and application of the journalist's

18  privilege to certain of Meta's document requests.  *See* **Exhibit Q** (Minute Entry); **Exhibit R**

19  (Haugen declaration); **Exhibit S1-S2** (Meta's and Haugen's supplemental briefs).[15]

20  Also on July 17, Magistrate Judge Kang heard initial argument from the Parties regarding their

21  disputes over the length of MDL depositions and ordered the further briefing which the Parties

22  filed on July 23, 2025 referenced above.

23

24

25

26  _____

[15] On July 23, Judge Gonzalez Rogers ordered former Meta employees Arturo Bejar and
Vaishnavi Jayakumar to file an opposition to Meta's motion for relief from an earlier ruling by
27  Magistrate Judge Kang, which sustained certain of those former employees' First Amendment
objections to producing communications with other former and current Meta employees in
28  response to Meta's document subpoenas.

# EXHIBIT B

E-Served: Aug 12 2025  3:30PM PDT  Via Case Anywhere

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

JCCP5255                                                           August 6, 2025
**Social Media Cases**                                                  1:45 PM

Judge: Honorable Carolyn B. Kuhl            CSR: Gail Davidson CSR# 12823
Judicial Assistant: L. M'Greene              ERM: None
Courtroom Assistant: M.Miro                  Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

Other Appearance Notes: (See Appearances Below)

**NATURE OF PROCEEDINGS:** Hearing on Motion to Strike Costs, or in the Alternative, to Modify the Costs Order on Behalf of Plaintiffs (22STCV21355); Further Status Conference All Cases ; Hearing - Other Pseudonym Issue; Hearing on Motion to Seal First Amended Short Form Complaint and a Portion of Second Amended Short Form Complaint (23SMCV03371)

The matter is called for hearing.

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Gail Davidson CSR# 12823, certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

Appearances:

Plaintiffs – Present
Joseph G VanZandt, Molly Campbell, Mariana A McConnell, Justin Olson, Michael Akselrud.

Plaintiffs – LACourtConnect
Lucy Malone, Thomas P. Cartmell, Annie Kouba, Josh Autry, Soo Seok Yang, Anna Katz, Adam Davis, Sydney Lottes, David McLendon, Davis Vaughn, Kimberly Horsley, Beth Bilsborrow,
Adam Bergeron, Lexi Hazam, Daniel Leathers.

Defendants – Present
Christopher Chiou, Maddie Dolan, Ashley M Simonsen, Luis Li, Melissa Mills, Yardena R Zwang-Weissman, Christian Pistilli, Rachel Young, Geoffrey M Drake, Sierra Elizabeth, Cailynn D Hayter,
Brian M Ercole, Victoria A Degtyareva, Lennette W Lee.

Defendants – LACourtConnect

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

**JCCP5255**                                                    August 6, 2025
**Social Media Cases**                                              1:45 PM

Judge: Honorable Carolyn B. Kuhl            CSR: Gail Davidson CSR# 12823
Judicial Assistant: L. M'Greene             ERM: None
Courtroom Assistant: M.Miro                 Deputy Sheriff: None

Gabriel Egli, Michael Imbroscio, Isaac Chaput, Catherine Irene Mullaley, Gregory L Halperin, Stephanie Schuster, Daniel White, Key'Toya Burrell.

Other – LACourtConnect
Reagan Thomas, Narmeen Nkeiti, Rachel Lanier, Brenton Stanley, Brian Willen, Lauren Kiesel, Lindsay Stevens, Meg Thompson, Andrew Holcomb, Kristin Westphal, Cherisse Cleofe.

Further Status Conference is called.

Court and counsel discuss protection of information designated as confidential by Plaintiffs. Plaintiffs' leadership counsel confirms that as to those Plaintiffs who are permitted to be identified only by initials and first names in this litigation, no documents and evidence need be filed under seal. As to those Plaintiffs who are identified by name in this litigation, and as to all Defendants, parties are to comply with the protective order and with CRC 2.550 when filing documents. As to the Sargon general causation motions, counsel have 30 days from filing to file motions to seal information that is redacted in those motions and accompanying papers. The court will consider further Defendants' suggestions regarding the form of papers to be filed to seek to seal information in accordance with CRC 2.550.

Defendants have provided Plaintiffs' leadership counsel with a list of Plaintiffs that Defendants contend have not served Plaintiff Fact Sheets in accordance with this court's orders. Plaintiffs leadership counsel are to respond within 30 days to Defense counsel, indicating whether or not Plaintiffs leadership counsel agree that each Plaintiff identified by Defendants has not served a Plaintiff Fact Sheet. As to those Plaintiffs that Defendants and Plaintiffs leadership counsel agree have not filed Plaintiff Fact Sheets, Defense counsel may thereafter file a Proposed Order requesting that the court set an OSC re dismissal of those Plaintiffs for failure to comply with this court's discovery orders. Such Proposed Order shall include a declaration by Defense counsel regarding compliance with the procedure set forth above. The court will thereafter set an OSC re dismissal no less than 45 days in the future, with opposition to the OSC due 5 court days prior to the OSC hearing.

Regarding the deposition issues raised in the Joint Status Report, after discussion with the parties, (a) the court indicates that no additional deposition time is appropriate regarding the mother of KGM, (b) Plaintiffs' counsel has agreed to additional deposition time for PMY, and (c) the court indicates that if Ms McLemore (a treater for KGM) testifies at trial for Plaintiffs, she cannot invoke privilege and if Plaintiffs do intend to call her they must provide Defendants with a renewed deposition to allow questioning on topics she refused to address in her first

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

**JCCP5255**                                                                August 6, 2025
**Social Media Cases**                                                           1:45 PM

| | |
|---|---|
| Judge: Honorable Carolyn B. Kuhl | CSR: Gail Davidson CSR# 12823 |
| Judicial Assistant: L. M'Greene | ERM: None |
| Courtroom Assistant: M.Miro | Deputy Sheriff: None |

deposition.

Regarding the CFS Audit, Plaintiffs must allow a Defense expert to discuss with a representative of Forensic Discovery (off the record) the details and outcomes of the work done regarding the CFS Audit.

Regarding the Plaintiffs' Sargon motions addressing Defendants' general causation experts, the rules governing briefing for Defendants' general causation Sargon motions shall apply to the Oppositions and Reply briefs.

Regarding the potential that Plaintiffs will present "comprehensive criticisms" of defense expert methodologies in opposing Defendants' general causation Sargon motions, any objections should be raised in the briefing on those motions.

Concerning the remaining Sargon motions, and other motions in limine, the regular briefing process and limits on length of briefs as set forth in CRC 3.1113 will apply. The court will consider a stipulated alternative schedule that will allow some motions to be filed later than the deadline set forth in the Order of 3/11/25 so long as Reply briefs are filed by October 8, 2025.

A joint witness list and a joint exhibit list must be filed by Sept. 30, 2025. The court indicates on the record the format and required content for such lists.

The court declines to alter its previous directives regarding the "account collection process" pertaining to apps used by bellwether trial Plaintiffs other than the Defendants' apps.

All motions currently set for 9/17/2025 at 1:45 PM are advanced and continued to 9/17/2025 at 9:30 AM.

Further Status Conference (All Cases) is scheduled for 09/17/2025 at 09:30 AM in Department 12 at Spring Street Courthouse on cases 22-CIV-03178, 22-CIV-03731, 22-CV-066, 22CV019089, 22CV409251, 22SMCV02834, 22SMCV02838, 22SMCV02875, 22STCV21355, 22STCV24332, 22STCV26778, 22STCV26829, 22STCV28200, 22STCV28201, 22STCV28202, 22STCV28204, 22STCV31543, 22STCV36006, 22STCV36184, 22STCV37068, 22STCV38197, 22STCV38204, 22STCV38670, 22STCV38918, 22STCV38956, 22STCV39250, 22STCV39268, 22STCV40543, 22STCV40977, 23-CIV-01287, 23-CIV-04600, 23CV421466, 23SMCV00026, 23SMCV00659, 23SMCV03371, 23SMCV04270, 23STCV00707, 23STCV01417, 23STCV01440, 23STCV01481, 23STCV01857, 23STCV02183, 23STCV02260, 23STCV02372, 23STCV03094,

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

JCCP5255                                                              August 6, 2025
**Social Media Cases**                                                      1:45 PM

Judge: Honorable Carolyn B. Kuhl           CSR: Gail Davidson CSR# 12823
Judicial Assistant: L. M'Greene            ERM: None
Courtroom Assistant: M.Miro                Deputy Sheriff: None

---

Notice is provided by Plaintiff's Liaison Counsel.

The Court and counsel argue the motions entitle above.

The Further Status Conference All Cases scheduled for 08/06/2025 is 'Held'.

The Hearing - Other Pseudonym Issue scheduled for 08/06/2025 is 'Held - Motion Granted'.

The Hearing on Motion to Seal First Amended Short Form Complaint and a Portion of Second Amended Short Form Complaint (23SMCV03371) scheduled for 08/06/2025 is 'Held - Motion Granted' for case 23SMCV03371.


The Court takes the Hearing on Motion to Strike Costs, or in the Alternative, to Modify the Costs Order on Behalf of Plaintiffs (22STCV21355) under submission as to case 22STCV21355.

A copy of this minute order will append to the following coordinated cases under JCCP5255: 22-CIV-03178, 22-CIV-03731, 22-CV-066, 22CV019089, 22CV409251, 22SMCV02834, 22SMCV02838, 22SMCV02875, 22STCV21355, 22STCV24332, 22STCV26778, 22STCV26829, 22STCV28200, 22STCV28201, 22STCV28202, 22STCV28204, 22STCV31543, 22STCV36006, 22STCV36184, 22STCV37068, 22STCV38197, 22STCV38204, 22STCV38670, 22STCV38918, 22STCV38956, 22STCV39250, 22STCV39268, 22STCV40543, 22STCV40977, 23-CIV-01287, 23-CIV-04600, 23CV421466, 23SMCV00026, 23SMCV00659, 23SMCV03371, 23SMCV04270, 23STCV00707, 23STCV01417, 23STCV01440, 23STCV01481, 23STCV01857, 23STCV02183, 23STCV02260, 23STCV02372, 23STCV03094, 23STCV03690, 23STCV04303, 23STCV05370, 23STCV05371, 23STCV06277, 23STCV07277, 23STCV07763, 23STCV08004, 23STCV08659, 23STCV08891, 23STCV10105, 23STCV12341, 23STCV12373, 23STCV12916, 23STCV12931, 23STCV12935, 23STCV14241, 23STCV14496, 23STCV14527, 23STCV14577, 23STCV14585, 23STCV14622, 23STCV14629, 23STCV14795, 23STCV14901, 23STCV15036, 23STCV15055, 23STCV15197, 23STCV15655, 23STCV15691, 23STCV15704, 23STCV15710, 23STCV15785, 23STCV15788, 23STCV15859, 23STCV15860, 23STCV15866, 23STCV15909, 23STCV15912, 23STCV15920, 23STCV15930, 23STCV15955, 23STCV15961, 23STCV15975, 23STCV15991, 23STCV16011, 23STCV16012, 23STCV16016, 23STCV16023, 23STCV16025, 23STCV16027, 23STCV16028,