1  Antonio J. Perez-Marques, *pro hac vice*
2  DAVIS POLK & WARDWELL LLP
   450 Lexington Avenue
3  New York, NY 10017
   Telephone: (212) 450-4559
4  Email: antonio.perez@davispolk.com

5  *Attorneys for Defendants Meta Platforms, Inc.;*
   *Facebook Holdings, LLC; Facebook Operations,*
6  *LLC; Facebook Payments, Inc.; Facebook*
   *Technologies, LLC; Instagram, LLC; and Siculus,*
7  *Inc.*

8  *Additional counsel listed on signature pages*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL MATTERS | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR-PHK<br><br>**DEFENDANT META PLATFORMS, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Magistrate Judge Kang (the "M.J.") held that the First Amendment ("1A") and journalist privilege shield from discovery relevant documents and communications between Meta's former employee, Frances Haugen, and the press, government officials (including congressional staffers), and other current or former employees. *See* ECF 2197 (the "Order"). As such, the M.J. blocked Meta from obtaining relevant communications from Haugen that directly bear on Plaintiffs' claims in this litigation and Meta's ability to defend against them. The Order is contrary to law and should be modified or set aside under Fed. R. Civ. P. 72(a) and Civ. L.R. 72-2.

I.   **Background**

Meta's defense requires a fair opportunity to take discovery from Haugen. Plaintiffs have represented that "Haugen is important to this case because she is the first person not only to observe Meta's misconduct but to bring it to public attention, and that was eventful." July 17, 2025 DMC Tr. 47:20-22. Meta has a right to explore whether Haugen's communications contradict Plaintiffs' allegations, including with respect to the limitations of Haugen's alleged "observ[ations]" and the role played by others in shaping and promoting her narrative with respect to Meta. The AG Plaintiffs have engaged Haugen as a consultant, and the PI/SD Plaintiffs have confirmed that they intend for their version of Haugen's story to "eventually come out at trial." *Id.* at 48:1-2. In these circumstances, Meta requested Haugen's communications relating to teen mental health with the press, current and former Meta employees, and the government—each of which is relevant to the narrative Plaintiffs have proffered that they intend to put before the Jury, and Meta's ability to defend against the claims.[1] Haugen objected, arguing the requests infringe on her 1A rights (ECF 2061 at 4-5) and seek information protected by the journalist privilege (ECF 2136 at 3; July 17, 2025 DMC Tr. 17:8-11). On August 19, 2025, the M.J. issued an order that (1) sustained Haugen's objections to Request Nos. 1-3 and 8-19 in full, and (2) sustained her objections to Request Nos. 6-7 in part. Order at 28.[2]

---

[1] Meta's document requests, as modified, are attached to the M.J.'s Order as ECF 2197-Ex. 1.

[2] The M.J. also noted that the remaining requests (Request Nos. 4-5 and 20-23) were resolved or withdrawn. *See id.* at 6.

II.  **Portions of Order to Which Meta Objects**

Meta objects to the following portions of the Order, which are contrary to law: (1) quashing requests seeking Haugen's communications with the press (Request Nos. 8, 12), (2) quashing requests seeking Haugen's communications with government officials (Request Nos. 6-7, 10), and (3) quashing the request seeking Haugen's communications with current or former Meta employees (Request No. 2).

III.  **Statement of Court Action Requested**

Meta asks the Court to hold the legal conclusions identified above are "contrary to law," Fed. R. Civ. P. 72(a), and to modify the Order so that Haugen's objections under the 1A, relevance, and proportionality as to Request Nos. 2, 6-7, 8, 10, and 12 are overruled in full. Meta also requests oral argument.

IV.  **Statement of Reasons and Authority Supporting the Motion**

The Order is "reviewable under the 'clearly erroneous and contrary to law' standard." ECF 1741 at 2 (quotation omitted). Under that standard, the Order should be reversed.

1. **Haugen's Communications with the Press and Government Are Not 1A Privileged**

The 1A privilege protects confidential *internal* communications of expressive associations. *Perry v. Schwarzenegger* (*Perry I*), 591 F.3d 1126, 1144 n.12 (9th Cir. 2009). The M.J. erred in applying that privilege to *external* communications, specifically those with the press and government officials. Tellingly, neither the M.J. nor Haugen cited a single case applying the 1A associational privilege to such external communications.[3]

In *Perry I*, the Ninth Circuit "emphasize[d] that [the privilege] is limited to *private, internal* . . . communications . . . among the core group of *persons* engaged" in the association's activities "concerning the *formulation of* [the association's] *campaign strategy and messages*." 591 F.3d at 1144 n.12. Haugen's communications with the press and government are inherently external and outside the private sphere of whatever association Haugen contends that she is part of. *See id.* (describing communication that is "not a private, internal formulation of strategy or message" as "thus far afield" of 1A privilege

---

[3] On that basis the M.J. quashed Request Nos. 8 (documents and communications related to Haugen's interview with 60 Minutes), 12 (documents and communications with reporters, journalists, and editors), and 6-7 and 10 (documents related to Haugen's governmental testimony and communications with government entities). *See* Order at 20.

protection). Such external messages comprise, at most, the communication of Haugen's views, not their "internal" "formulation." *Id.* As the Ninth Circuit has held, the privilege "certainly does not apply to documents or messages . . . for purposes such as persuasion, recruitment or motivation . . . ." *Id.*

The M.J. also erred in finding Haugen's communications with congressional staffers or other government officials are protected by the right to petition. Again, neither Haugen nor the M.J. identified any cases precluding the disclosure of documents on such basis. That is because the 1A does not shield Haugen's petitioning of, or communications with, the government from discovery. *See, e.g.*, *Wal-Mart Stores, Inc. v. City of Turlock*, 2005 WL 8176352, *3 (E.D. Cal. Sept. 23, 2005). While there is a 1A right to petition the government, there is "no First Amendment right to lobby *in secret*, and disclosure of . . . communications with [government] officials does not impinge upon . . . First Amendment interests." *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556, 577 (S.D.N.Y. 2024); *accord Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 513-14 (D. Ariz. 2023); *Wal-Mart Stores, Inc.*, 2016 WL 5922315, at *7. *Pebble Ltd. v. EPA*, merely applied the *Perry I* protection of "internal campaign communications" and did not specifically rule that communications with the government were 1A privileged. 310 F.R.D. 575, 579-80 (D. Alaska 2015).

**2. Haugen's Communications with the Press Do Not Implicate the Journalist Privilege**

The M.J. further erred in ruling that Haugen could invoke the journalist privilege with respect to communications in which she was acting as the *source*. *See* Order at 21-22. Even if Haugen were entitled to invoke the journalist privilege with respect to the authorship of her own memoir, the journalist privilege is "that of the reporter, not the informant." *Branzburg v. Hayes*, 408 U.S. 665, 695 (1972) (noting that if the source were identified, "neither his own reluctance to testify nor the objection of the newsman would shield him from grand jury inquiry."). Since *Branzburg*, courts have drawn a sharp dichotomy between journalist and source, repeatedly and consistently ruling that the journalist privilege can be invoked only by the journalist, not by the source. *See, e.g.*, *Cal. Sportfishing Prot. All. v. Pac. Bell Tel. Co.*, 2024 WL 402495, at *3 (E.D. Cal. Feb. 2, 2024); *In re Terrorist Attacks on September 11, 2001*, 2021 WL 4319428, at *5 (S.D.N.Y. Sept. 23, 2021); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 494 (C.D. Cal. 1981); *accord* 81 Am. Jur. 2d Witnesses § 495. The person invoking the journalist privilege must have "had 'the intent to use material—sought, gathered or received—to disseminate

information to the public'"—in their capacity as a *journalist* (rather than a *source*)—"and such intent [must have] existed at the inception of the newsgathering process." *Cal. Sportfishing*, 2024 WL 402495, at *3 (E.D. Cal. Feb. 2, 2024) (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 143 (2d Cir. 1987)). Allowing Haugen to invoke the journalist privilege with respect to communications in which she was acting as a *source* was plainly erroneous and should be reversed.[4]

### 3. Haugen's Communications with Current and Former Employees Are Not 1A Privileged

In quashing Meta's request for relevant communications between Haugen and current and former Meta employees (Request No. 2), the M.J. adopted an expansive definition of "expressive association" that is contrary to Ninth Circuit law.[5] To invoke the privilege, Haugen must "furnish . . . information from which a functional interpretation of [an inter-organizational] core group . . . could be derived." *See Perry v. Schwarzenegger (Perry II)*, 602 F.3d 976, 981 (9th Cir. 2010). Haugen did not meet this burden; accordingly, the M.J. erred in holding Haugen's communications immune from discovery.

Haugen has not established that all current and former employees she communicated with are part of a core group engaged in formulation of strategy, such that their communications are subject to the 1A privilege. The associational privilege provides a narrow protection against discovery only for members of a demonstrated "group" that has "an official policy or an official stance" that aims to "advance shared beliefs" and spread them to others, and thus qualifies as an "expressive association." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 579-80 (9th Cir. 2023) (quotation omitted). That privilege applies to "the core group of persons engaged in the formulation of strategy and messages." *Perry I*, 591 F.3d at 1144 n.12. The M.J. relied on *Pebble*, 310 F.R.D., and *Beinin v. Ctr. for the Study of Popular Culture*, 2007 WL 1795693 (N.D. Cal. June 20, 2007), for the notion that individuals can assert associational rights even if they are not part of a formal association. Though the group in *Pebble* was not *formal*, it was nevertheless

---

[4] The ruling that Haugen could invoke the privilege as to her own authorship is itself dubious, given that her book—The Power of One: How I Found the Strength to Tell the Truth and Why I Blew the Whistle on Facebook—is a memoir, not a piece of investigative journalism. *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993).

[5] Meta hereby incorporates all arguments made in its pending appeal of the M.J.'s order, ECF 1963, which quashed subpoenas regarding former Meta employees Arturo Bejar and Vaishnavi Jayakumar on similar grounds. ECF 2006.

an articulable core group engaged in the formulation of strategy—conservation organizations and those associated with them. 310 F.R.D. at 579-80. *Beinin* also pertained to a specific core group—*supporters* of Beinin's efforts in the litigation. 2007 WL 1795693, at *2. Here, Haugen has not claimed all current and former employees she has corresponded with are her supporters (or part of any other articulable core group) or that the communications are not "for purposes such as persuasion, recruitment, or motivation," which are explicitly outside the privilege. *Perry I*, 591 F.3d at 1144 n.12. As Haugen has provided no evidentiary basis to ascertain who is in or out of the claimed association, the privilege does not apply. *See Perry II*, 602 F.3d at 981. Additionally, to "cast such a wide net" "significantly undercuts [a] claim to protection under the First Amendment." *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *9 (N.D. Cal. Aug. 22, 2013).

An "association" cannot be inferred merely from the fact that current and former employees communicated about a particular topic of public interest. *See La Union Del Pueblo Entero v. Abbott*, 2022 WL 17574079, at *8 (W.D. Tex. Dec. 9, 2022) (holding "no[] presum[ption] that a protected associational relationship exists between a party and every other person or entity with whom they share common beliefs or goals"). Neither the M.J. nor Haugen cited a case supporting that sweeping proposition.

**4. Request Nos. 2, 6-8, 10 and 12 Are Relevant and Proportional to the Needs of the Case**

The M.J.'s conclusion that Request Nos. 2, 6-8, 10, and 12 are disproportionate to the needs of the case is contrary to law and ignores that Plaintiffs have confirmed that they intend to put their version of the Haugen story before the jury, presenting her as "the first person not only to observe Meta's misconduct but to bring it to public attention." July 17, 2025 DMC Tr. 47:20-22. Meta has a right to explore whether Haugen's communications with others contradict this narrative, demonstrating both the limitations of her knowledge and the role of others in pushing the narrative of a connection between social media and teen mental health. AG Plaintiffs, who have retained Haugen as a consultant, have declined to rule out calling her as a trial witness, and Meta indeed may wish to call her as a witness to undercut Plaintiffs' claims even if Plaintiffs do not call her. Meta should have a full and fair opportunity to take discovery from Haugen in order to defend against the claims in this litigation.

**V.    Conclusion**

The Order should be modified such that Haugen's objections described herein are overruled.

| | | |
|---|---|---|
| 1 | DATED: September 2, 2025 | Respectfully submitted, |

**DAVIS POLK & WARDWELL LLP**

  /s/ Antonio J. Perez-Marques
Antonio J. Perez-Marques, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, NY 10017
Telephone: + 1 (212) 450-4559
Email:  antonio.perez@davispolk.com
Email:  corey.meyer@davispolk.com

**COVINGTON & BURLING LLP**

Ashley M. Simonsen (State Bar No. 275203)
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email:  asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
David N. Sneed, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email:  pajones@cov.com
Email:  pschmidt@cov.com
Email:  dsneed@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc.*