[Parties and Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| This Document Relates To: | **AGENDA AND JOINT STATEMENT FOR SEPTEMBER 19, 2025, CASE MANAGEMENT CONFERENCE** |
| ALL ACTIONS | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

## I.    Proposed Agenda for Case Management Conference

- Joint Update: Stipulated Proposed Modifications to Case Schedule (Part V)

- Proposed Trial Sequence Regarding School District ("SD") Bellwethers ("BWs") (Part VI)

- Update Regarding Conferrals Between Meta and State AGs Regarding Jury Instructions and Verdict Forms (Part VII)

- Update Regarding AG Anticipated 702 Motion Regarding Drs. Birnholtz, Memon, Rogers, Shear, Mr. Starr (Part VIII)

- Meta and State AGs' Request to Set Deadline for Pre-Motion Letters for AG-specific Rule 702 Motions & MSJs (Part IX)

- Meta's Motion for Relief from Non-Dispositive Ruling re Haugen Subpoena and Dep. (Part X)

## II.    Joint JCCP Update

Judge Kuhl will hear the early motions for summary judgment ("MSJs") in one trial BW case, set for early resolution to test Defendants' statute of limitations defense, on September 15. She will hold a CMC and oral arguments on the parties' general causation *Sargon* motions on September 17. Both parties have filed various additional *Sargon* motions, motions for summary judgment/adjudication, and motions *in limine*.  Judge Kuhl will hear oral arguments on those motions and hold a final pretrial conference on October 28 and 29. Jury selection in the first bellwether trial is scheduled to begin on November 19.

## III.    Joint Discovery Update

A copy of the following discovery-related submissions and orders, which were (or will by September 19 have been) filed or issued since the last CMC Statement was filed, will be sent by email to Judge Gonzalez Rogers after this CMC Statement is filed (numbers refer to ECF docket numbers):

- Order Resolving Dispute re Meta's Subpoenas Served on Nonparty Frances Haugen (ECF 2197); *see* ECF 2239 (Meta's motion pursuant to Fed. R. Civ. P. 72(a) and Civ. L.R. 72-2 for relief).

- Order Regarding YouTube's Production from Noncustodial Sources (ECF 2214); *see* ECF 2212 (Evidentiary Stipulation).

- Joint Letter Brief ("JLB") Re Meta Witnesses' Preparedness for State AGs' 30(b)(6) Deposition Topics and Related Discovery Requests (ECF 2218).

- Order Re Dispute Concerning New York Executive Agencies' Production of Documents (ECF 2227); *see* ECF 2187 (JLB).

- Orders Extending Deadlines to Complete the Rule 30(b)(6) Depositions of Pennsylvania (ECF 2222), the State of New York (ECF 2230), New Jersey Office of the Attorney General and Division of Consumer Affairs (ECF 2233), and Oregon (ECF 2237) and Wisconsin Fact Witness Casie Sulzle's Deposition (ECF 2235); *see also* ECF 2221, 2229, 2231, 2234, 2232 (Stipulations)

- Joint Status Report Re Frances Haugen Document Production and Deposition (ECF 2248).

## IV.    Joint Update: Appeals

Briefing on the collateral order appeal and the cross-appeals in the Ninth Circuit is scheduled to be completed as of October 14, 2025. On September 8, 2025, the Ninth Circuit notified the Parties that the case is being considered for oral argument in either December 2025 or January 2026.

## V.    Joint Update: Stipulated Proposed Modifications to Case Schedule

In CMO No. 26, the Court set briefing schedules and page limits on (1) MSJs in the SD BW cases and (2) Rule 702 motions on General Causation experts and School District experts, and reset the hearing on those motions from January 9, 2025 to January 26, 2026. ECF 2208. The Court ruled that "[a]ny remaining motions, including motions specific to the personal injury plaintiffs, if appropriate, shall be decided in the next phase of this litigation." *Id.* In light of these scheduling orders, and pursuant to the Court's guidance at the August 22, 2025 CMC, Plaintiffs and Defendants have met and conferred about the timing of witness lists and jury instructions, as well as certain other case management deadlines. The Parties have agreed, subject to Court approval, that it will benefit all sides' trial readiness, particularly in light of the significant briefing deadlines occurring throughout this fall, to make minor adjustments to these deadlines, as set forth in the Parties' Joint Stipulation and Proposed Order filed concurrently herewith (ECF 2256), and respectfully ask that the Court enter the Proposed Order.

## VI.    Proposed Trial Sequence Regarding School District Bellwethers

In CMO 26, the Court ordered that the School District Bellwether trials "will follow a ABBAAB pattern (meaning one side picks the first trial, the other side picks the next two, and so on)." The Parties met and conferred about the proposed trial sequencing but were unable to reach agreement. In accordance with CMO 26, the Parties submit their proposed SD bellwether trial sequencing here.

### **SD Plaintiffs' Statement:**

Plaintiffs propose the SD bellwether cases be tried in the following order: (1) *Tucson* [Plaintiffs' pick]; (2) *Irvington* [Defendants' pick]; (3) *DeKalb* or *Breathitt* [Defendants' pick]; (4) *Charleston*

2

[Plaintiffs' pick]; (5) *Harford* [Plaintiffs' pick]; and (6) *DeKalb* or *Breathitt* [Defendants' pick]. Plaintiffs' proposed sequence aligns with the Court's prior rulings that *DeKalb* and *Breathitt* will not be tried first, and accomplishes several important objectives, as discussed further below. It prioritizes the most representative cases. It takes account of the fact that the viability of *Harford's* nuisance claim depends on a pending Maryland Supreme Court decision unlikely to be resolved until well into 2026, in effect meaning that it is not trial-ready. Most importantly, it guarantees that the first bellwether trial delivers the most meaningful guidance for resolving this MDL by covering all the core claims.

 ***Tucson* should be tried first**. The first bellwether must be both representative and trial-ready, and *Tucson* is the only case that satisfies those criteria. Like nearly 80% of the 1,000+ SD cases in this MDL (*Figure 1*), *Tucson* asserts both negligence and public nuisance claims,[1] ensuring that the Court



*Figure 1*

and the parties receive meaningful guidance on abatement and other remedies central to resolution.

 As the Federal Judicial Center has observed, bellwether cases "must be representative of the range of cases in the MDL if they are to provide reliable information about the strengths and limitations of claims, defenses, and settlement value." Fed. Judicial Ctr., *Bellwether Trials in MDL Proceedings* 22 (2019). *Tucson* does exactly that, making it the best—and only—candidate to lead this sequence.

 The same cannot be said for all the SD trial pool cases. *Irvington*, which Defendants propose as the first SD BW case to be tried, does not have a public nuisance claim,[2] and *Harford*'s nuisance claim is

---

[1] Notwithstanding Defendants' statements to the contrary, Plaintiffs' 80% figure does not include cases from Illinois, New Jersey, Rhode Island, or South Carolina, for which the public nuisance count was dismissed pursuant to the Court's motion to dismiss order.

[2] This court dismissed *Irvington* and *Charleston*'s public nuisance claims, leaving only their negligence claims. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 5694360, at *6 (N.D. Cal. Nov. 15, 2024). As discussed below, the viability of *Harford*'s public nuisance claim depends on a pending appellate issue.

uncertain until the Maryland Supreme Court resolves the governing law. Ensuring that the first bellwether includes both negligence and nuisance provides the Court and the Parties with the fullest picture of the claims and remedial issues at stake in the substantial majority of school district cases in the MDL.

Defendants downplay the importance of this goal, hypothesizing that some of the SD Plaintiffs from states the Court has not analyzed may yet have their public nuisance claims dismissed. That theoretical possibility does not change the fact that a large majority of the SD Plaintiffs currently have viable public nuisance claims, and it is highly likely most (if not all of them) will continue to do so throughout this litigation.[3] Beginning the bellwether process with a case that omits nuisance (*Irvington*) or turns on unsettled nuisance law (*Harford*) would be inefficient and risk producing results that are incomplete, uncertain, and potentially inaccurate for settlement purposes. By contrast, *Tucson* offers the Court and the parties the first reliable test of the claims that truly dominate this litigation.

It is also appropriate for *Tucson* to be the first case tried as it is the only remaining SD bellwether



located west of the Mississippi River. As shown in *Figure 2* (left), nearly half of the states with SD cases in the MDL are from the western part of the country.

Since Plaintiffs bear the burden of proof,[4] it is fair for the first BW trial to reflect that reality by beginning with a Plaintiff-selected case. Defendants contend that the Court should prioritize one of their selections

*Figure 2*

---

[3] Defendants also argue that the distinction between negligence and public nuisance is illusory, ignoring the basic fact that these claims differ completely in their elements. How a jury assesses each of these causes of action will thus provide useful information for this litigation that one of these claims, in isolation, could not.

[4] In footnote 9, Defendants argue that Plaintiffs' burden of proof is irrelevant to sequencing, but the opposite is true. Bellwethers are meant to test the dominant claims, and that test only has value if it shows whether Plaintiffs can carry their burden on both negligence and nuisance. *Tucson* provides that test; *Irvington* does not.

because the other two defense picks "are ineligible for the first trial, as they will be tried outside of Oakland." Yet it was Defendants' own decision to proceed with an SD BW plaintiff that preserved its *Lexecon* rights, and that tactical choice should not give them any advantage in the trial schedule.

**Irvington should be tried second.** If a Plaintiffs' pick goes first, then in keeping with the Courts' ABBAAB scheme, a defense pick should be tried second. However, the Court has identified "unique circumstances in trying" two of Defendants' three SD trial pool cases, *DeKalb* (because of its *Lexecon* objection) and *Breathitt* (because of its rural nature and venue at the Eureka courthouse). CMO 26 at 2. The only remaining defense pick is *Irvington*, which does not present these logistical issues. As such it should be prioritized second for trial. *Irvington* is an appropriate choice for other reasons. It is clearly an acceptable early bellwether from Defendants' perspective (given that they seek to try it first).[5] It is located in New Jersey, in the northeast U.S., where 38% of the SD Plaintiffs in this MDL are located. Finally, as a SD with only a negligence claim remaining, it will help the parties value that subset of SD cases.

**Harford should be tried fifth.** *Harford* should be set for trial as late as possible because it is furthest from being trial-ready. In April 2025, the Maryland Supreme Court granted certiorari in a case that raises important questions about public nuisance under Maryland law. *Mayor & City Council of Balt. v. B.P. P.L.C.*, 334 A.2d 827 (Md. 2025). That case is set to be argued October 6, 2025. It is Plaintiffs' expectation that a decision may not be issued until well into 2026, which may require last-minute changes to trial planning or moot an outcome at trial. Trying *Harford* before that decision would risk wasting judicial and party resources on a verdict that could later be undercut or rendered irrelevant.[6] To ensure

---

[5] Defendants claim *Irvington* is "the most representative" case, yet they place it second to *Breathitt* if a Plaintiff pick is first, arguing it would be "fundamentally unfair" for Plaintiffs "to select their favorite defense pick to be tried second." This inconsistency reflects gamesmanship rather than a good-faith effort to propose a sensible and representative trial sequence.

[6] In footnote 10, Defendants cite decisions from other state courts rejecting nuisance claims. That is a red-herring. The sequencing issue here is not what other courts have said in different contexts, but the specific and immediate uncertainty created by the pending Maryland Supreme Court appeal. Until Maryland resolves whether a nuisance claim exists under its law, *Harford* cannot provide reliable guidance, and placing it early in the sequence would risk wasting judicial and party resources.

that this open question is resolved sufficiently in advance, *Harford*'s case should be sequenced for trial as late as possible. Given the Court's ABBAAB structure, this would place *Harford* fifth in the queue.

Defendants' attempt to portray *Harford* as the most representative of Plaintiffs' cases is unconvincing. They assert that it "covers a mixture of suburban and rural areas," but in reality *Harford* is overwhelmingly suburban. Plaintiffs' other selections also reflect a genuine mix of communities—*Tucson* and *Charleston* both include urban, suburban, and some rural populations. Regardless, Defendants' claim rests on nothing but *ipse dixi*t; they fail to identify any legitimate basis for treating *Harford's* community composition as more representative than Plaintiffs' selections. Defendants also contend that *Harford* "is the closest to the mean and median size of the districts in the MDL pool," but this is simply an effort to manufacture a distinction. *Harford's* size is nearly identical to Plaintiffs' other picks—differing from *Tucson* by only about 2,000 students. That small difference is eclipsed by the more pressing reality that Maryland's public nuisance law remains unsettled and may still be unresolved when SD BW trials begin next year. The remaining slots fall into place naturally given the above. A Plaintiffs' pick must occupy the fourth slot, and the only remaining choice is *Charleston*. The third and sixth slots must be occupied by defense picks, which would be either *Breathitt* or *DeKalb*.

**Ensuring a Meaningful First Trial.** Ultimately, Defendants' effort to put *Irvington* or *Harford* first misses the central purpose of a bellwether: to generate meaningful guidance for resolving this MDL. As the Federal Judicial Center explains, representativeness turns on whether a case reflects the claims and issues that dominate the pool. *Tucson* does exactly that, presenting both negligence and public nuisance claims—the combination asserted by the vast majority of school district plaintiffs. *Irvington*, by contrast, will never test nuisance, making it inherently incomplete. *Harford* fares no better: its nuisance claim remains uncertain until the Maryland Supreme Court resolves unsettled law, a threshold problem fundamentally different from the ordinary appellate risk all trials face. Neither case provides the kind of dependable data the Court and parties need to guide future trials or settlement.

Defendants' reliance on size and geography is equally unpersuasive. Their "mean/median" argument is self-contradictory: *Irvington,* with nearly 8,000 students, is four times larger than the median district in the MDL, while *Harford*, with over 38,000 students, ranks among the very largest. Neither

resembles the typical plaintiff. By contrast, *Tucson* both reflects the claims asserted by the majority of school districts and adds essential geographic breadth as the only western district in the bellwether pool.

Finally, Defendants' administrative argument is overstated. The Court has already accounted for the unique circumstances surrounding *DeKalb* and *Breathitt,* and Defendants' own decision to select a bellwether that preserved its *Lexecon* rights should not give them any advantage in sequencing. Meaningful progress toward resolution requires beginning with a case that squarely tests the dominant claims. If the first bellwether omits nuisance or rests on unsettled law, there is a real risk that the verdict may undercut the trial's ability to assist in the resolution of this litigation. *Tucson* ensures that the first result provides the kind of complete, reliable, and representative guidance necessary to advance this MDL.

For these reasons, Plaintiffs respectfully request that the Court adopt Plaintiffs' sequencing proposal, with *Tucson, Irvington*, and either *DeKalb* or *Breathitt* as Group 1, and *Charleston, Harford*, and either *DeKalb* or *Breathitt* as Group 2. This approach is consistent with the Court's ABBAAB framework, prioritizes both composition and geographic breadth, and provides fair and representative bellwethers that will generate meaningful guidance for resolution of this litigation.

**Defendants' Statement:**

The Court should select Irvington Public Schools for the first trial. The Court determined that two of Defendants' bellwether selections—Breathitt County School District and DeKalb County School District—are ineligible for the first trial because they will be tried outside of Oakland. Only one Defense selection, Irvington, is therefore eligible for the first trial. Irvington is a representative selection for the pool of school districts in this MDL and should be tried first.[7]

If not Irvington, the Court should select Harford County Public Schools for the first trial as the most representative of the Plaintiffs' picks in the bellwether trial pool. In particular, Harford is more representative than Charleston County School District when it comes to size and more representative than Tucson Unified School District when it comes to geography as well as size.

---

[7] Defendants' complete proposed trial sequence is: (i) Irvington, (ii) [Plaintiff pick], (iii) [Plaintiff pick], (iv) Breathitt, (v) Harford County Public Schools, (vi) [Plaintiff pick]. If any defense pick in this sequence is dismissed, Defendants should be permitted to replace it with a selection of their choice and seek costs for the dismissed action.

### A.    The Court Should Select Irvington Public Schools for the First Trial

Irvington will inform the parties' assessment of the strengths, weaknesses, and value of the claims asserted in the litigation given its size and geography, rendering it an ideal candidate for the first trial. *See, e.g.*, Federal Judicial Center, *Bellwether Trials in MDL Proceedings*, at 22 (2019) (Bellwether case selections "must be representative of the range of cases included in the MDL proceeding"). Moreover, trying a defense pick first will best help inform the value of the school district cases, a primary purpose of these bellwether trials. Because Defendants view Irvington as the most representative of the available cases, the verdict in that case will best inform their views of the value of the bellwether cases, if any. On the contrary, Defendants will view any result in a less representative case (like Tucson or Charleston) to be an outlier for determining the value of any potential broader resolution.[8]

*Size.* Irvington's size counsels in favor of it being the first case for trial. The majority of the MDL school district cases are districts at or around the 2,000-student mark, with a small number of extremely large districts driving the overall average closer to 9,000 students. There are nearly 8,000 students enrolled in 12 Irvington schools, making it by far the closest of the bellwether trial cases to the size of the average district in this MDL (mean of 8,784 students and 15 schools) and the closest available district to the pool's median figures (2,184 students and 5 schools). District size significantly impacts the overall amount of damages the districts seek, perhaps more than any other district characteristic or demographic. Selecting a district that is close to the average size in the pool would therefore be most informative.[9]

| Statistics on District Size | | |
|---|---|---|
| | **Student Population** | **Number of Schools** |
| **DeKalb - *ineligible for first trial*** | 96,460 | 127 |
| **Charleston** | 50,400 | 88 |
| **Tucson** | 39,927 | 88 |
| **Harford** | 38,106 | 54 |
| **Largest 6%** | **31,610** | **53** |
| **Mean** | **8,784** | **15** |
| **Irvington** | 7,982 | 12 |

---

[8] That Plaintiffs bear the burden of proof at trial has no bearing on bellwether trial sequencing or selection. The process of selecting bellwether trials is about selecting the most representative case to try first to educate the parties and the Court about key legal and factual issues.

[9] Items in the following chart highlighted in blue denote statistics from the overall MDL pool as of 9/8/2025 for the 858 districts that submitted Plaintiff Fact Sheets with this information.

| Median | 2,184 | 5 |
|---|---|---|
| **Breathitt - *ineligible for first trial*** | 1,579 | 4-5 |

***Geography.***  Irvington's location is also representative of the geography of the larger pool.  This MDL is *overwhelmingly* comprised of school districts located in the eastern United States.  Even adopting the broadest possible definition of the "west" (that is, states including and west of Texas, Oklahoma, Kansas, Nebraska, and the Dakotas), less than 18% of cases have been brought by districts located in that half of the country, compared to *more than 82% of districts, which are in the east*.  As such, Irvington's location on the east coast will provide an important data point for advancing the parties' understanding of the merits and value of the broader pool of cases.  Although Plaintiffs attempt to spin the facts in their favor, it is irrelevant that cases have been filed in many western states, as cases have also been filed in many eastern states.  What matters is the *volume* of cases filed in those states.  As discussed above, given that more than 82% of the MDL cases are in the eastern United States, the first trial pick should be from the east.  Furthermore, as Plaintiffs concede, Irvington is representative of the 467 districts—38% of the overall pool—that are located in the tri-state area of New Jersey, New York, or Pennsylvania.  In fact, there are more districts hailing from Irvington's neighboring state, New York (295), than all the western United States combined (231).  Of course, Plaintiffs also readily admit that there are more states in the eastern half of the country with pending matters but then nonsensically argue that Tucson should go first because it is the only western case.



***Administrative Considerations.***    Selecting Irvington would also promote the orderly administration of this MDL and conserve judicial and party resources.  If a Plaintiff case is selected for the first trial, then the next two trials will consist of Defense selections, at least one of which would be DeKalb or Breathitt.  The trial of one of those cases—DeKalb in the Northern District of Georgia, and Breathitt in the Eureka Division—would impose burden on the Court and the parties because neither will

9

be tried in Oakland.  If the Court, however, tries Irvington first, the next two trials will consist of Plaintiff selections, allowing for all three of the initial bellwether trials to be tried in Oakland.

***Public Nuisance.***  The fact that Irvington does not have a public nuisance claim does not disqualify it from being set as the first trial case.  One-third of cases in the trial pool do not have a viable public nuisance claim (Charleston, along with Irvington), and Plaintiffs themselves are seeking recovery (disputed by Defendants) for the same recommended "strategic plan" in all six trial cases.  Further, Plaintiffs' cited statistic that "80% of the 1000+ cases in this MDL[] assert claims of negligence *and* public nuisance" is misleading and says nothing about how many districts will ultimately be permitted to pursue public nuisance.  Plaintiffs' 80% figure includes cases for which the public nuisance count was dismissed pursuant to the Court's motion to dismiss order.  But the Court's MTD decision considered the law of only 19 states; the Court has not yet analyzed or ruled on the viability of public nuisance claims in cases from the 23 additional states where cases have since been filed.[10]  As such, there is a strong likelihood that the number and percentage of districts with only negligence claims will rise.

## B.    If a Plaintiff Pick is Selected for the First Trial, the Court Should Select Harford

If the Court does not select Irvington for the first trial, it would necessarily be selecting a Plaintiff pick.  Among them, the Court should select Harford County Public Schools as the most representative among the Plaintiff bellwether selections.[11]  Harford covers a mixture of suburban and rural areas on the outskirts of the Baltimore metropolitan area.  Perhaps not surprisingly, all of the Plaintiff picks are substantially larger than the average district in the MDL, but Harford is the most representative of the three based on both size and geography.  On the contrary, neither Tucson nor Charleston is representative when it comes to these key selection factors and, therefore, neither should be the first case set for trial.

First, Harford is closer to the mean and median district size in the MDL pool than Charleston and Tucson.  With more than 50,000 students, Charleston is among the largest 7% of schools in the United

---

[10] As Defendants explained previously, the vast majority of state supreme courts to consider the viability of public nuisance claims like those asserted here have rejected them.  ECF 1460 n. 6.  Thus, a case without a public nuisance claim is likely to be representative of a significant portion of the overall trial pool.

[11] In addition, if the Court determines that *none* of Defendants' selected cases is suitable as the first BW, Defendants respectfully submit that the first trial would be both fairer and more representative if the Court does not allow Plaintiffs to select their favorite from among their three eligible picks—as they propose.

States,[12] and among the largest 5% of districts in the MDL pool, a far cry from the average sized district in this litigation with just under 9,000 students. Although Harford and Tucson currently have similar student populations (with Harford's being the smaller of the two), Tucson started the relevant time period with almost 8,000 more students than it has today.[13] For much of the relevant time period, Tucson was a materially larger district than Harford. As such, Harford's relatively smaller size compared to both Charleston and Tucson weighs in favor of putting it first.

Second, compared to Tucson, Harford is also more geographically representative of this MDL given its location on the east coast and, in particular, the middle Atlantic region. Tucson, by contrast, is part of less than 18% of the cases located in the west and is therefore not representative of the vast majority of districts in the MDL. No amount of spin by Plaintiffs changes the fact that this is an east coast-centric MDL and, as such, an east coast case should be tried first.

Finally, contrary to Plaintiffs' claims, Harford is just as trial-ready as any other case in the bellwether trial pool. Fact discovery is complete, and expert discovery is almost done, the same as for the other five trial pool cases. The fact that there is a Maryland public nuisance case on appeal that *might* impact the Harford case does not preclude it from being tried first. The outcome in all of these cases is very likely to be appealed and some of the Court's legal rulings might be overturned in such an appeal. But that possibility is not driving bellwether selection, and what may or may not happen on appeal in another matter certainly should not determine bellwether selection here.

### C.    If Plaintiffs Are Permitted to Pick First, Defendants Should Select the Next Two Cases

Finally, pursuant to the ABBAAB format ordered by the Court, if the Court determines that a Plaintiff pick will be tried first, Defendants should be permitted to select the next two cases. In those circumstances, Defendants would select Breathitt and then Irvington.[14] Although Plaintiffs erroneously

---

[12] Table 215.30 Enrollment, poverty, and federal funds for the 120 largest school districts, by enrollment size in 2021: School year 2019-20 and fiscal year 2022, Digest of Education Statistics, National Center for Education Statistics (2022), https://nces.ed.gov/programs/digest/d22/tables/dt22_215.30.asp.

[13] *Tucson Unified School District Spending Analysis—Fiscal Year 2024,* Arizona Auditor General (2024), https://sdspending.azauditor.gov/District/Tucson%20Unified%20School%20District.

[14] Under this scenario, Defendants proposed lineup would be: (i) [Plaintiff pick], (ii) Breathitt, (iii) Irvington, (iv) [Plaintiff pick], (v) [Plaintiff pick], (vi) DeKalb.

claim that Breathitt cannot go second due to "unique circumstances," this Court has never said that Breathitt cannot go second. CMO 26 at 2. Moreover, it would be fundamentally unfair if Plaintiffs were permitted to select their clear favorite case (Tucson) to be tried first, and then be permitted also to select their favorite defense pick to be tried second.

## VII. Joint Update Regarding Conferrals Between Meta and State AGs Regarding Jury Instructions and Verdict Forms

Meta and the State AGs met and conferred on September 4, 2025 regarding the jury instructions and verdict form due on October 10, 2025, and are coordinating on the draft submission. It is the Parties' understanding that the purpose of submitting instructions on October 10, 2025, is to assist the Court with trial planning. Accordingly, the Parties seek the Court's guidance on the extent to which the Parties should, in this submission, follow this Court's Standing Order re: Pretrial Instructions in Civil Cases.

## VIII. AGs' Anticipated 702 Motion Regarding Drs. Birnholtz, Memon, Rogers, Shear, Mr. Starr

Meta and the AGs conferred prior to and immediately following the August CMC and Meta has agreed to one of two possible paths for resolution. Specifically, the AGs have agreed not to pursue a Rule 702 Motion regarding these five experts based on Meta's agreement to either (1) re-serve expert reports that remove references to, and substantive discussion of, PISD-only experts, or (2) provide the AGs with redacted versions of those PISD experts' reports, which Meta will do by no later than Friday's CMC.

## IX. Meta and State AGs' Request to Set Deadline for Pre-Motion Letters for AG-specific Rule 702 Motions & MSJs

The deadline for AG-specific Rule 702 and summary judgment motions is a few months away, and Meta and the State AGs believe it would be useful for planning purposes to set a schedule for pre-motion letters for those motions, page limits for the letters, and a date for the pre-filing conference on the anticipated motions. The Parties are also happy to confer and propose a schedule if helpful to the Court.

## X. Meta's Motion for Relief from Non-Dispositive Ruling re Haugen Subpoena and Deposition

On September 2, Meta filed a Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge (ECF 2239), to the extent the Magistrate Judge's Order (ECF 2197) quashed certain of Meta's document requests to Frances Haugen. The parties' understanding is that, pursuant to Local Rule 72-2(d), the Court may order a response to Meta's motion, and no response need be filed unless ordered.

Respectfully submitted,

DATED: September 12, 2025    By: */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel and Ombudsperson

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**

700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

ELLYN HURD
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 212-257-8482
ehurd@simmonsfirm.com

ANDRE MURA
**GIBBS MURA, A LAW GROUP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

AELISH M. BAIG
**ROBBINS GELLER RUDMAN & DOWD LLP**
1 MONTGOMERY STREET, #1800
SAN FRANCISCO, CA 94104
Telephone: 415-288-4545

14

AelishB@rgrd.com

PAIGE BOLDT
**ANAPOL WEISS**
130 N. 18TH STREET, #1600
PHILADELPHIA, PA 19103
Telephone: 215-929-8822
pboldt@anapolweiss.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

FELICIA CRAICK
**KELLER ROHRBACK LLP**
1201 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
Telephone: 206-623-1900
fcraick@kellerrohrback.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-600-6725
semery@justicestartshere.com

KIRK GOZA
**GOZA HONNOLD**
9500 NALL AVE. #400
OVERLAND PARK, KS 66207
Telephone: 913-412-2964
Kgoza @gohonlaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

MATTHEW P. LEGG
**BROCKSTEDT MANDALAS FEDERICO, LLC**
2850 QUARRY LAKE DRIVE, SUITE 220
BALTIMORE, MD 21209

15

Telephone: 410-421-7777
mlegg@lawbmf.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**AWK ATTORNEYS**
1133 WESTCHESTER AVE, SUITE N-224
WHITE PLAINS, NY 10604
Telephone: 914-468-4840
hnappi@awk-saa.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES

16

**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaison

*Attorneys for Individual Plaintiffs*

**PHILIP J. WEISER**
Attorney General
State of Colorado

 _/s/ Krista Batchelder_
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*


**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480

18

Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),

19

*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General
and the New Jersey Division of Consumer Affairs
Matthew J. Platkin, Attorney General for the State of
New Jersey, and Elizabeth Harris, Acting Director of
the New Jersey Division of Consumer Affairs*

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

DAVIS POLK & WARDWELL LLP

By: */s/ James P. Rouhandeh*
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

KING & SPALDING LLP

By: */s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
          tharris@kslaw.com

David P. Mattern, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc.,*
*TikTok Ltd., ByteDance Ltd., and TikTok LLC*

MUNGER, TOLLES & OLSON LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100

22

Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

## ATTESTATION

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: September 12, 2025

By: */s/ Lexi J. Hazam*