Sam Ferguson (270957)
  *sam@fergusonlawpc.com*
Katharine Kates (155534)
  *katharine@fergusonlawpc.com*
Ann Cappetta (354079)
  *annie@fergusonlawpc.com*
FERGUSON LAW PC
1816 5th Street
Berkeley, CA 94710
Tel. (510) 548-9005

Attorneys for Proposed Intervenor
TIME USA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>**TIME USA, LLC'S NOTICE OF MOTION AND MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF PROTECTING ACCESS TO COURT RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br><u>Hearing</u>:<br><br>Date: October 21, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 1, Fourth Floor |

## NOTICE OF MOTION AND MOTION

Please take notice that on October 21, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, at the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, proposed intervenor TIME USA, LLC ("TIME" or "Proposed Intervenor") will and hereby does move to intervene under Federal Rule of Civil Procedure 24(b)(2) for the limited purposes of participating in this case's bespoke sealing procedure and protecting access to court records. Specifically, TIME requests (1) that it be served with all proposed redacted documents, (2) that the Parties in the case provide TIME with an explanation of the basis for proposed redactions or sealing requests, and (3) that TIME be permitted to file briefs alongside the parties in the Court's omnibus briefing schedule regarding sealing.

This Motion is based on (1) this motion, (2) the accompanying Memorandum of Points and Authorities, (3) the declaration of Charlotte Alter filed in support of this Motion, and (4) the entire record in this action.

On September 11, 2025, counsel for TIME sent emails to all counsel in this action advising of TIME's intent to file this Motion. Counsel for the individual and school district Plaintiffs responded that they will not oppose the Motion to Intervene. Counsel for the State Attorneys General advised that they will provide their position by September 17, 2025. Counsel for Defendants agreed to meet and confer regarding intervention with the undersigned counsel but were unable to provide a position by the time of filing.

DATED: September 16, 2025    Respectfully submitted,

             FERGUSON LAW PC

             By: _/s/ Sam Ferguson_
               Sam Ferguson
               Ann Cappetta
               Attorneys for Proposed Intervenor

1

## **Table of Contents**

2  I.      INTRODUCTION ................................................................................................6

3  II.     INTERESTS OF MOVANTS .............................................................................7

4  III.    BACKGROUND ON THE CURRENT SEALING PROTOCOL .......................7

5  IV.     STANDARD ON MOTION TO INTERVENE FOR PUBLIC ACCESS............9

6  V.      ARGUMENT ....................................................................................................10

7          A.      Federal Courts Grant Media Intervention to Preserve First Amendment and
                   Common Law Rights of Access, and Judicial Integrity............................10
8
           B.      TIME's Motion to Intervene is Timely .................................................11
9
           C.      The Public Interest in this Landmark Addiction Litigation is Significant ..............13
10
   VI.     SPECIFIC PROPOSED AMENDMENTS TO SEALING PROCEDURE ........15
11
   VII.    CONCLUSION .................................................................................................16

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO INTERVENE

1

## Table of Authorities

2

**Cases**

3

*ACLU of N. Cal. v. United States DOD*,

4

    2006 U.S. Dist. LEXIS 36888 (N.D. Cal. May 25, 2006) ........................................................ 10

5

*Ayala v. Armstrong*,

6

    2017 U.S. Dist. LEXIS 137277 (D. Idaho Aug. 24, 2017) ................................................... 13

7

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ............................................... 9

8

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) ............. 11

9

*Bradley v. Ackal*, 954 F.3d 216 (5th Cir. 2020) ........................................................................ 14

10

*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165 (6th Cir. 1983)......................... 11, 14

11

*Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*,

12

    No. 23-cv-04155 (N.D. Cal. July 26, 2024) .................................................................... 10

13

*Cipollone v. Liggett Grp., Inc.*, 106 F.R.D. 573 (D.N.J. 1985)......................................................... 14

14

*Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793 (9th Cir. 2019) ................................. 9

15

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ................................................. 6, 10

16

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975) ............................................................................... 6

17

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) ................................. 13

18

*Father M. v. Various Tort Claimants* (*In re Roman Catholic Archbishop*),

19

    661 F.3d 417 (9th Cir. 2011)............................................................................................. 13

20

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ....................................... 12

21

*Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596 (1982) .......................................................... 11

22

*Greer v. County of San Diego*, 2023 WL 4479234 (S.D. Cal. July 10, 2023)............................. 9, 11

23

*Hernandez v. County of Monterey*, 2023 WL 5418753 (N.D. Cal. Aug. 21, 2023)......................... 9

24

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008)............................................................... 12

25

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) ...................... 10, 11, 12

26

27

28

*Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635 (6th Cir. 2019) ............................................ 14

*Lipman v. Budish*, 974 F.3d 726 (6th Cir. 2020) ........................................................................ 15

*Mendez v. City of Gardena*, 222 F. Supp. 3d 782 (C.D. Cal. 2015) ............................................. 10

*Muhaymin v. City of Phoenix*, 2021 U.S. Dist. LEXIS 211707 (D. Ariz. Nov. 3, 2021) ............... 12

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................................................... 13

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) ......................................................... 10, 11

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ..................................................... 13

*Pub. Citizen v. Liggett Grp.*, Inc., 858 F.2d 775 (1st Cir. 1988) ................................................... 14

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ..................................................... 10

*San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096 (9th Cir. 1999) ...................... passim

*Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016) .................................... 15

**Other Authorities**

*Largest Market Cap*, Yahoo! Finance, https://finance.yahoo.com/research-
    hub/screener/largest_market_cap/ (last visited Sept. 9, 2025) ................................................. 13

**Rules**

Civil L.R. 79-5(g)(3) ................................................................................................................... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

TIME moves to intervene in this multidistrict litigation ("MDL") to assure public access to the evidence regarding "Defendants' [alleged] addictive and dangerous social media products" that have allegedly fueled "an unprecedented mental health crisis" amongst children. Dkt. 494 at ¶ 1. As one of the oldest and most well-recognized weekly newsmagazines in the country — with more than 15 million print readers and more than 50 million followers across social media channels — TIME is a critical source of information for the public. TIME has provided consistent coverage of social media's impact on kids, teenagers and schools. As a consequence, TIME has a clear interest in the records filed for adjudication in this case and seeks to intervene to ensure that its right to access (and, by extension, the public's right of access) is properly weighed in any request by any of the parties that seeks to seal records.

At this time, TIME does not seek to unseal any particular records. Instead, it seeks intervention to participate in the bespoke sealing protocol that the Court has set for this complex MDL. The protocol requires a meet and confer between the parties and an omnibus brief on disputed requests to seal. Dkt. 341. Specifically, TIME requests that (1) it be provided with all proposed redacted documents during the meet and confer process, (2) the parties provide TIME with an explanation for proposed sealing requests during the meet and confer process, and (3) it be permitted to file its own 5-page brief as part of the Omnibus sealing motion. *See generally infra* Section VI and [Proposed] Order.

"What transpires in the court room is public property." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). As a consequence, media entities are routinely granted intervention to ensure access to court records. *See, e.g., San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100-01 (9th Cir. 1999); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786–87 (9th Cir. 2014). As the public's interest in courtroom access is high, the bar for media intervenors who request access is correspondingly low. TIME more than meets that bar and requests that the Court grant its request to intervene.

## II.    INTERESTS OF MOVANTS

TIME is a global media brand and one of the oldest and most well-recognized weekly newsmagazines in America. Alter Decl. at ¶ 1. With more than 15 million print readers and more than 50 million followers across social media channels, TIME is a critical source of information for the public. *Id.* TIME regularly relies on access to public documents, including court records, in its reporting. It has a demonstrated commitment to protecting freedom of the press and government transparency. *Id.* at ¶ 6.

TIME Senior Correspondent Charlotte Alter is an award-winning journalist who has written 18 cover stories and won numerous awards during her 12-year career at TIME, including three Newswomen's Club Awards and a GLAAD Award. *Id.* at ¶¶ 1–2. She has covered presidential elections, Covid, youth activism around climate change, and gun violence — to name just a few of her general-assignment topics. *Id.* at ¶ 2. She regularly appears on television to discuss her reporting. *Id.* For most of the last year, her reporting has focused on the impact of social media on kids and teenagers, including coverage of allegations at issue in this MDL. *Id.* at ¶ 3. For example, Alter wrote a story about MDL Plaintiff Taylor Little, who has claimed that she learned everything she learned about suicide from Instagram. *Id.* at ¶ 3. Alter has also written about studies documenting the mental health risks associated with social media use, and legislative efforts to curb cellular phone use in schools. *Id.* at ¶¶ 3–4. Alter believes that access to information filed in this case that may be subject to requests to seal will further her efforts to report on and inform the public about this litigation, the health impacts of social media use on children, and any actions social media companies have taken to induce or prevent such harms. *Id.* ¶ 7.

## III.    BACKGROUND ON THE CURRENT SEALING PROTOCOL

On October 6, 2022, the United States Judicial Panel on Multidistrict Litigation entered a transfer order consolidating pretrial proceedings in 28 cases then-pending in 17 districts against various companies operating some of the world's most used social media companies: Meta (owner of Facebook and Instagram), Google (owner of YouTube), ByteDance (owner of TikTok), and

Snapchat.[1] *See* Dkt. 1 at 1. Since then, additional tag-along actions have joined the MDL, which now centralizes pretrial procedures for "hundreds of actions brought on behalf of children and adolescents, school districts and local government entities, and state attorneys general and state attorneys alleging that" these social media companies "designed their platforms to foster compulsive use by minors, resulting in a variety of harms to children, local governments, and the public health." Dkt. 1214 at 2.

Because of the complexity of this case, on August 1, 2023, the Court established a bespoke sealing protocol to streamline sealing disputes. Dkt. 341 at 1. Under this procedure, a party seeking to file any document under seal in connection with a motion must file a Temporary Sealing Motion that states the reasons for sealing and identifies each attachment proposed for sealing in a chart by docket number. *Id.* at 1–2. Then, the filing party "serve[s] all documents to be sealed upon all parties and on any designating third party whose confidential information is included." *Id.* at 3:2–4. Within 10 calendar days after such service, the parties are required to meet and confer to determine the scope of any dispute over proposed sealing. *Id.* at 3:4–6. During this meet-and-confer process, the designating party may permit the filing party to file documents with fewer or no redactions. *Id.* at 3:9–17. If the designating party agrees to fewer redactions, it must provide the filing party with a less-redacted (or unredacted) version for later filing. *Id.* But the less-redacted (or unredacted) version does not immediately appear on the public docket; it is only filed when the parties file an omnibus sealing motion 14 days after briefing on the substantive motion for which the conditionally sealed material was lodged is completed. *Id.* at 2–3, 5:4–8.[2]

---

[1] For clarity, the primary defendants in this litigation are Alphabet, Inc.; ByteDance, Inc.; Facebook Holdings, LLC, Facebook Operations, LLC, Facebook Payments, Inc., Facebook Technologies, LLC (collectively, "Facebook"); Google LLC; Instagram, LLC; Meta Platforms, Inc., Meta Payments, Inc., Meta Technologies, LLC (collectively, "Meta"); TikTok, Inc., TikTok, LLC, TikTok, Ltd. (collectively, "TikTok"); Snap, Inc. ("Snap"); and YouTube, LLC.

[2] Specifically, while the Temporary Sealing Motion is pending, contested records or portions thereof are provisionally under seal and unavailable to the public. *Id.* at 2–3. It is not until "14 days following the conclusion of briefing on the motion or other filing for which the sealing requests were made," that the parties must file an "Omnibus Sealing Stipulation" and "Omnibus Motions on Sealing Disputes," which the court considers in adjudicating whether any document can be permanently sealed in whole or in part. *Id.* at 4–5 (emphasis added). If the designating party agrees

1    TIME anticipates that there will be considerable activity under this sealing protocol in the

2  coming months. Under the current briefing schedule, opening briefs for the first dispositive and

3  Rule 702 ("*Daubert*") motions are due September 24, 2025, and briefing on those motions will be

4  complete by November 25, 2025. *Id.* at 4. Undoubtedly, the parties will propose to seal evidence

5  that is filed in support of or in opposition to dispositive and *Daubert* motions. TIME requests the

6  ability to intervene so that it may timely view all proposed redacted documents and participate in

7  the negotiations over sealing. TIME, however, does not request access to unredacted documents

8  that are exchanged during the sealing meet-and-confer process.

9    **IV.    STANDARD ON MOTION TO INTERVENE FOR PUBLIC ACCESS**

10    Federal Rule of Civil Procedure 24(b) governs permissive intervention by a non-party.

11  Typically, a court may grant permissive intervention if the movant presents "(1) an independent

12  ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between

13  the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

14  F.2d 470, 473 (9th Cir. 1992). However, "a party who seeks to intervene solely to unseal filed

15  documents only needs to show timeliness." *Greer v. County of San Diego*, No. 19-cv-378-JO-

16  DEB, 2023 WL 4479234, at *3 (S.D. Cal. July 10, 2023), *rev'd in part on other grounds*, 127

17  F.4th 1216 (9th Cir. 2025); *Hernandez v. County of Monterey*, No. 13-CV-02354-BLF, 2023 WL

18  5418753, at *2 (N.D. Cal. Aug. 21, 2023) (same); *Beckman Indus.*, 966 F.2d at 473–74 ("[A]n

19  independent jurisdictional basis is not required because intervenors do not seek to litigate a claim

20  on the merits…. There is no reason to require such a strong nexus of fact or law when a party

21  seeks to intervene only for the purpose of modifying a protective order."); *Cosgrove v. Nat'l Fire

22  & Marine Ins. Co.*, 770 F. App'x 793 (9th Cir. 2019) ("A third party seeking permissive

23  intervention purely to unseal a court record does not need to demonstrate independent jurisdiction

24  or a common question of law or fact"). When considering if a motion to intervene is timely, courts

25  _____

26  during the meet-and-confer process that a document can be filed with fewer redactions or unsealed,
    the filing party must file the less redacted or unredacted version as an exhibit to the Omnibus
    Sealing Stipulation. *Id.* at 5:4–8. A party opposing any sealing can then file an opposition within 5
27  business days of the Omnibus Motions being filed, and the moving party may file a reply 5
    business days after oppositions are filed. *Id.* at 6:1–6. After this briefing is complete, the Court
28  issues an order on the parties' omnibus stipulation and motion(s) to seal. *Id.* at 6.

1  consider "(1) the stage of the proceeding at which [the] applicant seeks to intervene; (2) the

2  prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News,*

3  *Inc.*, 187 F.3d at 1100–01.

4  <center>**V.    ARGUMENT**</center>

5  TIME seeks intervention to participate in the sealing procedure — including receiving

6  service of proposed redacted versions of court records, meeting and conferring with the parties

7  regarding proposed sealing, and submitting omnibus motions if necessary — to protect "the

8  media's interest in quickly disseminating breaking, general-interest news" and with it, the people's

9  right to know. *See ACLU of N. Cal. v. United States DOD*, No. C 06-01698, 2006 U.S. Dist.

10  LEXIS 36888, at *23 (N.D. Cal. May 25, 2006); *Courthouse News Serv.*, 750 F.3d at 786 ("The

11  news media's right of access to judicial proceedings is essential not only to its own free

12  expression, but also to the public's"). The Court should allow TIME to intervene for the limited

13  purpose of asserting its First Amendment and common law rights of access.

14  **A.    Federal Courts Grant Media Intervention to Preserve First Amendment and Common Law Right of Access, and Judicial Integrity**

15  The Ninth Circuit has "recognized that the right of access to public records and

16  proceedings is 'necessary to the enjoyment' of the right to free speech," and is "thus protected by

17  the First Amendment." *Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 788 (C.D. Cal. 2015)

18  (cleaned up) (quoting *Courthouse News Serv.*, 750 F.3d at 786–87). "This right is justified by the

19  interest of citizens in 'keeping a watchful eye on the workings of public agencies.'" *Kamakana v.*

20  *City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner*

21  *Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "Such vigilance is aided by the efforts of newspapers

22  to 'publish information concerning the operation of government.'" *Id.* (quoting *Nixon*, 435 U.S. at

23  598). "People in an open society do not demand infallibility from their institutions, but it is

24  difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc.*

25  *v. Virginia*, 448 U.S. 555, 572 (1980) (plurality opinion). Accordingly, "the Ninth Circuit has

26  recognized the media's right to intervene to protect the public's right to access court records."

27  *Mendez*, 222 F. Supp. 3d at 788 (citing *San Jose Mercury News, Inc.*, 187 F.3d at 1103). This

28

Court has also recently granted media intervention for the limited purposes of unsealing and protecting access to proceedings in complex litigation. *See Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*, No. 23-cv-04155, slip op. at 1–2 (N.D. Cal. July 26, 2024) (Gonzalez Rogers, J.) (granting motion to intervene to protect access to court proceedings brought by news organization The Appeal Inc., freelance journalist Victoria Law, and advocacy organizations dedicated to press freedom in complex prison-abuse litigation).

In this way, media intervention "provides a check on courts," *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983), and is "an essential component in our structure of self-government," *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982). Further, media participation in court proceedings promotes "true and accurate fact finding." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1178. "When information is disseminated to the public through the media, previously unidentified witnesses may come forward with evidence. Witnesses in an open trial may be less inclined to perjure themselves. Public access creates a critical audience and hence encourages truthful exposition of facts, an essential function of a trial." *Id.* TIME has reported and will continue to report on this MDL, serving the important purpose of disseminating information to aid the public in "keeping a watchful eye on the workings of public agencies," *Nixon*, 435 U.S. at 598, and promoting "true and accurate fact finding," *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1178. *See* Alter Decl. at ¶¶ 2, 7. Granting this motion therefore serves the press' and public's First Amendment interests.

**B.    TIME's Motion to Intervene is Timely**

When a party intervenes solely for the purpose of seeking access to court records or proceedings it need only show timeliness. *Greer,* 2023 WL 4479234, at *3. To determine timeliness, the court considers "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay," *San Jose Mercury News*, 187 F.3d at 1101. All these factors indicate that TIME's motion to intervene is timely. TIME took prompt action to file this motion before the parties' deadline to file dispositive motions and Rule 702 motions, when TIME anticipates that the parties will first file evidence for adjudication of the merits. *See* Dkt. 1290; *Kamakana*, 447 F.3d at 1179 ("[B]ecause

1   the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of

2   the interest in ensuring the 'public's understanding of the judicial process and of significant public

3   events[,]'… 'compelling reasons' must be shown to seal judicial records attached to a dispositive

4   motion[,]… even if the dispositive motion, or its attachments, were previously filed under seal or

5   protective order.") (cleaned up); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann*

6   *LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("[W]here documents 'directly affect an adjudication,' or

7   are used to determine litigants' substantive legal rights, the presumption of access is at its zenith,

8   and thus can be overcome only by 'extraordinary circumstances'") (cleaned up). Given the stage of

9   the proceedings, TIME has not delayed. *See San Jose Mercury News, Inc.*, 187 F.3d at 1101

10  ("Indeed, delays measured in years have been tolerated where an intervenor is pressing the public's

11  right of access to judicial records.") (collecting cases).

12      TIME's intervention also promotes judicial economy. TIME proposes amendments to the

13  existing sealing protocol so that it may participate in the Court's mandated meet-and-confer

14  process with the parties. This will preserve judicial resources by streamlining sealing disputes and

15  prevent separate motions from TIME after the parties themselves have met and conferred and

16  presented their positions to the Court. *Cf.* Civil L.R. 79-5(g)(3) (permitting "[p]arties or non-

17  parties" to "file a motion requesting that the Court unseal a document" "at any time").

18      Finally, granting this Motion would not prejudice the parties. Any party that moves for

19  sealing has an existing burden to establish that there are compelling reasons for keeping court

20  records sealed or hearings closed. *See, e.g.*, *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir.

21  2008) (explaining the First Amendment presumption of access can only be "overcome by a

22  compelling governmental interest"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135

23  (9th Cir. 2003) (explaining the common law "strong presumption in favor of access to court

24  records," which can only be overridden if the party seeking to seal can establish there are

25  "sufficiently compelling reasons for doing so"). So, "[t]he mere fact that [the moving party] will

26  need to explain why the relevant records should remain sealed" sufficient to overcome the public

27  interest in disclosure "is not, itself, unduly prejudicial." *Muhaymin v. City of Phoenix*, No. CV-17-

28  04565-PHX-DLR, 2021 U.S. Dist. LEXIS 211707, at *2 (D. Ariz. Nov. 3, 2021).

**C.    The Public Interest in this Landmark Addiction Litigation is Significant.**

While a party need not show that their intervention will serve a substantial public interest — as access to Court documents is itself a substantial public interest — TIME's intervention will nevertheless serve an important public interest. As a media organization with broad reach, TIME's intervention will facilitate the dissemination of important information in this high-profile case.

The public interest in records of this MDL is weighty, given that it involves allegations of a widespread public health crisis in children. The "public has a strong interest in the well-being of children." *Ayala v. Armstrong*, No. 1:16-cv-00501-BLW, 2017 U.S. Dist. LEXIS 137277, at *15 (D. Idaho Aug. 24, 2017); *see also Father M. v. Various Tort Claimants* (*In re Roman Catholic Archbishop*), 661 F.3d 417, 428 (9th Cir. 2011) (holding that the public has "a weighty interest in public safety and in knowing who might… abuse children") (citing *New York v. Ferber*, 458 U.S. 747, 756–63 (1982) (recognizing the government's compelling interest in "safeguarding the physical and psychological well-being" of children)); *see also Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 528–29 (3d Cir. 2018) ("The Supreme Court has regularly held that the state has a compelling interest in protecting the physical psychological well-being of minors[, and w]e have similarly found that the government has a compelling interest in protecting and caring for children in various contexts"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) ("Circumstances weighing against confidentiality exist when confidentiality is being sought over information important to public health and safety").

Additionally, this action involves some of the most ubiquitous products in the world — i.e., popular social media platforms. The owners of these products are some of the most powerful companies in the world. *E.g.*, *Largest Market Cap*, Yahoo! Finance, https://finance.yahoo.com/research-hub/screener/largest_market_cap/ (last visited Sept. 9, 2025) (listing Google and Meta parent companies among the top 10 companies in the United States by market capitalization, at $2.89 and $1.917 trillion, respectively). The evidence to be filed in connection with dispositive and *Daubert* motions has the potential to cause a nationwide shift in the way the public uses social media and perceives its potential harms. Conversely, the evidence could vindicate Defendants and assuage public concern about the safety of these popular products.

1   Either way, public access to the court records will empower individuals to make fully informed,

2   personal decisions about using these products and any impact on their health.

3          The alleged harms perpetrated against children in this litigation are also important to

4   taxpayers writ large. *See generally* Dkts. 494, 729. Indeed, state Plaintiffs allege that taxpayers are

5   footing the bill for the alleged harms, as public entities are "expend[ing], divert[ing], and

6   increase[ing] resources (including tax dollars)" to combat and treat social media addiction in

7   children. *See* Dkt. 729 at ¶¶ 4, 6; *Bradley v. Ackal*, 954 F.3d 216, 233 (5th Cir. 2020) (vacating

8   sealing orders where "disclosure will allow the public to monitor the expenditure of taxpayer

9   money"). This MDL is therefore closely analogous the tobacco litigation of the 1980s and 1990s,

10  during which courts guarded public access to court records despite tobacco companies'

11  confidentiality objections and fears of embarrassment. Just like in the tobacco cases, granting

12  public access to Court records will facilitate "community catharsis," even — and especially — if

13  Defendants prevail. *See Brown & Williamson Tobacco Corp.*, 710 F.2d at 1178; *see also Cipollone*

14  *v. Liggett Grp., Inc.*, 106 F.R.D. 573, 587 (D.N.J. 1985) ("What are the risks of smoking; what the

15  tobacco industry knew of those risks; and what action it took or did not take with that knowledge

16  are matters of great public concern. It is difficult to envision that any of those matters involve

17  'secrets' in the traditional sense, worthy of protection against public scrutiny. Indeed they may be

18  secrets in the sense that the industry would prefer them to remain confidential, but not in the sense

19  that their concealment from the press and public would be consistent with the First Amendment."),

20  *overruled on other grounds by* 785 F.2d 1108, 1120 (3d Cir. 1986); *Pub. Citizen v. Liggett Grp.*,

21  Inc., 858 F.2d 775, 787 (1st Cir. 1988) (granting intervention to public health organizations to

22  challenge a protective order shielding a tobacco company's research in part because there was "a

23  strong public interest in the documents at issue, which concern an important public health issue"),

24  *superseded by statute in part on other grounds*.

25         By its nature, the consolidation of cases across the country into an MDL highlights the

26  public interest in access: the case involves common facts, allegations, and defenses between many

27  litigants and across geographic barriers. *Cf. Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635,

28  638 (6th Cir. 2019) ("[T]he interests of public health and safety will often outweigh any

-14-                                    Case No. 4:22-md-03047-YGR
NOTICE OF MOTION AND MOTION TO INTERVENE

1   confidentiality interests that might be implicated. … This is particularly true in class actions,

2   where, because of the interest of a broader public outside of the named parties, the standards for

3   overcoming the presumption of openness 'should be applied … with particular strictness.'").

4          "[T]he greater the public interest in the litigation's subject matter, the greater the showing

5   necessary to overcome the presumption of access." *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825

6   F.3d 299, 305 (6th Cir. 2016); *see also Lipman v. Budish*, 974 F.3d 726, 753 (6th Cir. 2020)

7   (holding "Defendants' argument for sealing … is brief, perfunctory, and patently inadequate….

8   especially evident given the public interest in this case, which involves the critical work of a

9   government agency and life-and-death consequences for a young child). Accordingly, the Court

10  should grant TIME's motion to intervene.

11        **VI.    SPECIFIC PROPOSED AMENDMENTS TO SEALING PROCEDURE**

12         TIME seeks amendments to the sealing procedure in this case to allow its participation in

13  the (1) the meet-and-confer process regarding initial sealing designations, (2) exchange of agreed

14  less-redacted and unredacted versions of documents during the meet-and-confer process, and (3)

15  omnibus briefing on sealing disputes. Specifically, TIME moves for the following amendments to

16  the Court's order setting sealing procedures, Dkt. 341:[3]

17         1.      Section I.B.1., which currently requires the filing party to serve all documents to be

18  sealed upon all parties and designating third parties, be amended to require that the filing party also

19  serve the redacted versions of conditionally sealed documents on Intervenor. To be clear, TIME

20  does not request any amendments that would require the filing party to serve unredacted

21  documents or portions thereof on TIME.

22         2.      Section I.B.2., which currently requires that each designating party or third party

23  communicate with the filing party regarding sealing designations within 10 days of receiving

24  service of the Temporary Sealing Motion, be amended to require that each designating party or

25  third party also communicate with Intervenor regarding the sealing designations during the same

26

27  _____

28  [3] The precise language that TIME proposes be amended and added is detailed in the proposed
    order filed contemporaneously with this Notice of Motion and Motion.

time frame. These communications shall include discussion of the asserted bases of confidentiality and general descriptions of the nature and content of the documents at issue sufficient for TIME to evaluate the grounds for sealing. Again, TIME does not seek amendments that would require the designating parties to reveal the specific content of any information proposed to be sealed.

3.      Sections I.B.2(b)–(c), which currently allows the designating party to de-designate confidential documents or portions thereof and provide the filing party with a less-redacted or unredacted version of the document, be amended to require that the designating party also promptly provide any less-redacted or unredacted document to Intervenor. Without this amendment, Intervenor must potentially wait weeks or months to access portions of records that the Parties have agreed do not warrant sealing.

4.      Section II.A.2(a), which currently allows each party to file one motion addressing all sealing disputes, be amended to include the opportunity for Intervenor to file such a motion on the same schedule as the parties.

5.      Section II.A.3, which currently allows each party to file one opposition to the sealing-dispute motions, be amended to include the opportunity for Intervenor to file such an opposition on the same schedule as the parties.

TIME also reserves the right to move to unseal court documents previously filed under seal as they become the basis for adjudication.

## VII.    CONCLUSION

For the foregoing reasons, TIME respectfully requests that the Court grant this motion to intervene for the limited purposes of participating in the sealing procedure and protecting access to court records.

DATED:  September 16, 2025                    Respectfully submitted,

FERGUSON LAW PC

By: _/s/ Sam Ferguson_____
                Sam Ferguson
                Katharine Kates
                Ann Cappetta
                Attorneys for Proposed Intervenor