| | |
|---|---|
| 1 | Ashley M. Simonsen (Bar No. 275203) |
| 2 | COVINGTON & BURLING LLP |
| | 1999 Avenue of the Stars |
| 3 | Los Angeles, California 90067 |
| 4 | Telephone: (424) 332-4800 |
| | Facsimile: (424) 332-4749 |
| 5 | Email: asimonsen@cov.com |

*Attorney for Defendants Meta Platforms, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC; and Instagram, LLC*

[Additional counsel listed on signature pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No.: 4:23-cv-05448-YGR |
| This Document Relates To: | **META DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MITCH PRINSTEIN** |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |
| | Date: January 26, 2026 |
| | Time: 8:00 AM |
| | Place: Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, at 8:00 AM on January 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants Meta Platforms, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC; and Instagram, LLC (collectively, "Meta" or the "Meta Defendants") will and hereby do move this Court, under Federal Rule of Evidence 702, for an order excluding the Attorneys General expert Dr. Mitch Prinstein who opines on general causation.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Ashley M. Simonsen and exhibits thereto, which include Dr. Prinstein's report and deposition; any Reply Memorandum or other papers submitted in connection with the Motion; any matter of which this Court may properly take judicial notice; and any information presented at argument.

DATED: October 3, 2025

Respectfully submitted,

By: /s/ Ashley M. Simonsen

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC; and Instagram, LLC*

[Additional counsel listed on signature pages]

# TABLE OF CONTENTS

I.    INTRODUCTION & BACKGROUND ........................................................................1

II.    ARGUMENT ...................................................................................................................1

        A.    Dr. Prinstein's General Causation Opinions Are Impermissibly Based on Defendants' Publication of Third-Party Content and Protected Features. ................................1

        B.    Dr. Prinstein's Conclusions that Social Media Use Contributes to Mental Health Harms Are Based on an Unreliable Methodology ...........................................................4

                1.    Dr. Prinstein opines that "emerging data" supports his causation opinions, but he either mischaracterizes or cannot identify the relevant "data," making his opinions unreliable ............................................................4

                2.    Dr. Prinstein applies different standards in his non-retained expert work regarding causation. ............................................................6

                3.    Dr. Prinstein relies on studies that address social media in general rather than Defendants' platforms specifically. ............................................................6

III.    CONCLUSION ................................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..................................................................................................5, 6

*Force v. Facebook*,
    934 F.3d 53 (2d Cir. 2019)..........................................................................................3, 4

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)....................................................................................................3, 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................................................6

*In re Nexium Esomeprazole*,
    662 F. App'x 528 (9th Cir. 2016) ....................................................................................5

*Open Text S.A. v. Box, Inc.*,
    2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ................................................................4, 5

*Perry v. Novartis Pharms. Corp.*,
    564 F. Supp. 2d 452 (E.D. Pa. 2008) ...............................................................................5

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ...........................................................................................2

*Sanderson v. Int'l Flavors & Fragrances, Inc.*,
    950 F. Supp. 981 (C.D. Cal. 1996) ..................................................................................6

**Other Authorities**

47 U.S.C. § 230..................................................................................................................1, 2, 3

Fed. R. Evid. 702 .......................................................................................................................2

## I. INTRODUCTION & BACKGROUND

Dr. Mitch Prinstein is a psychologist and professor at the University of North Carolina at Chapel Hill and the Chief of Psychology, Integration and Strategy, of the American Psychology Association. Ex. 1, Prinstein Rep. ¶ 6.[1] In this litigation, he offers five general causation–related opinions:

*Opinion 1*: Meta's features exploit adolescents' hypersensitivity to social feedback, automatic behaviors, and underdeveloped impulse control, which lead them to be "especially susceptible to . . . the count of likes, followers, comments, and notifications." *Id.* ¶ 1.

*Opinion 2*: "[Meta's] platform features encourage problematic social media use, consistent with clinical dependency." *Id.* ¶ 2.

*Opinion 3*: Using social media prevents users from developing healthy relationships with peers and disrupts their sleep, leading to a host of alleged harms. *Id.* ¶ 3.

*Opinion 4*: Social media exposes users to "harmful content and create[s] stress that contributes to mental health symptoms." *Id.* ¶ 4.

*Opinion 5*: Social media encourages users to compare themselves to others, lowering their self-image. *Id.* ¶ 5.

All five of Dr. Prinstein's general causation opinions (1) are barred by Section 230 and the First Amendment, (2) are riddled with methodological flaws, and (3) are not specific to Meta's platforms. They should be excluded.[2]

## II. ARGUMENT

### A. Dr. Prinstein's General Causation Opinions Are Impermissibly Based on Defendants' Publication of Third-Party Content and Protected Features.

This Court has already dismissed claims against Meta that were based on Meta's publishing activities or features otherwise protected by Section 230 and the First Amendment. *See* ECF 430.

---

[1] All exhibits are to the accompanying Declaration of Ashley M. Simonsen.

[2] Dr. Mitch Prinstein was deposed on Friday, September 26th, by agreement of the Parties. Because that deposition occurred close in time to when this motion was due, the State AGs and Meta agreed, and the Court so-ordered, that Meta could file a separate 10-page motion as to Dr. Prinstein on October 3, 2025. *See* Case No. 4-22-md-03047-YGR, ECF 2256 at 3 n.5 (Sept. 12, 2025), so-ordered at ECF 2274 (Sept. 23, 2025).

Dr. Prinstein's opinions, however, do not control for those activities and features and do not answer the question of whether any alleged harm flows from Meta's *actionable* conduct. His opinions are therefore not relevant and will not "help the trier of fact to understand the evidence or to determine *a fact in issue*." Fed. R. Evid. 702(a) (emphasis added); *see also id.* 702(d) (requiring "a reliable application of the principles and methods *to the facts of the case* (emphasis added)); *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). This argument is further explained in Defendants' Motion to Exclude Plaintiffs' Experts' General Causation Opinions for Failure to Account for Section 230 and the First Amendment (ECF 2292) the arguments and legal standard of which Meta incorporates by reference.

This Court has identified eight features that cannot give rise to liability. *See* ECF 430 at 16–19. Yet many of these features are precisely the ones Dr. Prinstein relies upon to conclude that Meta's platforms cause harm. For example, the Court held that Section 230 bars liability for likes. *Id.* at 18. But, Dr. Prinstein relies on likes to draw the following causal conclusions:

- "[C]ount of likes" hooks teens who especially crave social approval, Ex. 1, Prinstein Rep. ¶¶ 1, 4, 31, 60, 65; and
- "[C]ount of likes" for exposing them to harmful content, *id.* ¶ 56 n.96.

The Court also held that Section 230 immunizes Meta's use of algorithms to determine when to show users third-party content and what content is shown. ECF 430 at 18. But Dr. Prinstein also relies on algorithms to draw causal conclusions:

- Social media focuses on "videos and pictures rather than text, creat[ing] a fertile ground for social comparisons," Ex. 1, Prinstein Rep. ¶¶ 5, 60, 69;
- Social media addicts users by allowing third parties to offer "social reward[s] . . . such as . . . followers, comments, and notifications," which encourages them to seek additional approbation, *id.* ¶¶ 30–31;
- Social media exposes some users to third-party "images depicting illegal, immoral, dangerous, and unethical behavior, *id.* ¶ 49;
- Social media disrupts teens' sleep by showing them "emotionally salient content" posted by others, *id.* ¶ 54;

- Social media exposes teens to other users' filtered images resulting in unhealthy comparisons, *id.* ¶ 45;
- Social media creates dependency through "[Meta's] algorithmic recommendation system," *id.* ¶ 42.

These conclusions, which underpin all of Dr. Prinstein's opinions, improperly depend on harms directly resulting from viewing third-party content published on online platforms or from the way Meta organizes and disseminates such content. *See Force v. Facebook*, 934 F.3d 53, 66 (2d Cir. 2019) ("Accepting plaintiffs' argument would eviscerate Section 230(c)(1); a defendant interactive computer service would be ineligible for Section 230(c)(1) immunity by virtue of simply organizing and displaying content exclusively provided by third parties."); *see also* ECF 430 at 14–19, 21–22 (identifying which of Plaintiffs' claims are barred by Section 230 or the First Amendment).

Dr. Prinstein's testimony confirms that his opinions do not disentangle the effects of protected activities and Meta's actionable conduct. At deposition, Dr. Prinstein testified, "if you are getting content that you didn't ask for, in the form of an advertisement, then that is coming to you through the way that the platform was built, and therefore it's a feature or a function of the platform. Ex. 2, Prinstein Dep. 234:21–25. In other words, whether a photo or text is content or a feature depends on whether it is solicited by the user: "seeing content from people that [users] did not ask to see content from" is a feature of the platform. *Id*. at 233:1–9. Under that analysis, the same photo or textual message could be content or considered a feature depending on whether it was solicited. As a result, Dr. Prinstein is attributing harm to what is unambiguously protected content simply because that content was unsolicited. For example, Dr. Prinstein testified that unwanted photos or discriminatory posts are features of social media—rather than content—because all of these things are being pushed onto teenagers and are not solicited. *Id*. at 296:5–19. Dr. Prinstein has no methodology for piecing apart any impact from content or protected features from that from at-issue features—his attempts to offer opinions specific to features rather than content are the result of pure *ipse dixit*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (recognizing that a court may not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). Moreover, Dr. Prinstein's failure to disentangle the potential impacts of features from the potential impacts of content risks "eviscerat[ing]" Section 230 by improperly allowing Meta to

be held liable for "organizing and displaying content exclusively provided by third parties." *Force*, 934 F.3d at 66.

### B. Dr. Prinstein's Conclusions that Social Media Use Contributes to Mental Health Harms Are Based on an Unreliable Methodology.

Dr. Prinstein's opinions about the impacts of social media use are based on an unreliable methodology and should be excluded for several reasons. *First*, Dr. Prinstein testified about a scientific consensus based on "emerging data" sufficient to make causal claims, but the two examples that he identified do not bear the weight Dr. Prinstein puts on them and he has failed to identify any of the other purportedly supporting data. *Second*, Dr. Prinstein is applying a different standard in this litigation than he is outside of it, demonstrating the fundamental unreliability of his opinions. *Third*, Dr. Prinstein relies on studies that address social media—or even screen time—in general rather than Meta's platforms specifically, and so his opinions are irrelevant and unhelpful to the jury in answering the relevant question about whether Meta's platforms caused the claimed harm.

#### 1. Dr. Prinstein opines that "emerging data" supports his causation opinions, but he either mischaracterizes or cannot identify the relevant "data," making his opinions unreliable.

Dr. Prinstein bases his opinion that social media causes mental health harms on undisclosed, unspecified "emerging data" that Dr. Prinstein is largely unable to identify. The two studies he was able to identify do not actually support his opinions. As such, his opinions are unsupported or rest on a "black box" of uncertain and inaccessible data that Meta cannot probe. *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015). Either way, they should be excluded.

At deposition, Dr. Prinstein stated that "emerging data from randomized clinical trials allows us to now make more causal statements about the relationship between social media exposure and youth mental health." *See* Ex. 2, Prinstein Dep. 175:8–11. When asked to describe those data, Dr. Prinstein identified only a 2025 meta-analysis that post-dates his report and an APA advisory. *See* Ex. 3, Burnell et al., "The Effects of Social Media Restriction" (2025) [hereinafter Burnell] (the meta-analysis); Ex. 2, Prinstein Dep. 122:10–16, 135:8–18; Ex. 4, APA, Health Advisory on Social Media Use in Adolescents ("APA Advisory"); Ex. 2, Prinstein Dep. 179:2–3. However, neither the meta-analysis nor the advisory support Dr. Prinstein's claims of a growing consensus of causation between social media and teen mental

health harm based on "emerging data." As to the meta-analysis, none of the studies in the meta-analysis involved under-18 individuals: "The average age across studies was limited to emerging/early adulthood (M = 23.38 years, SD = 3.87; Minimum = 18.80, Maximum = 34)." Ex. 3, Burnell 5; *see also* Ex. 2, Prinstein Dep. 210:7–212:24. As the authors of the meta-analysis themselves noted, "it may not be appropriate to draw causal conclusions on how social media affects adolescent subjective well-being when these studies remain absent." Ex. 3, Burnell 10; *see also* Ex. 2, Prinstein Dep. 211:2–213:3; 222:24–223:4. Dr. Prinstein does "not explain how he came to a different conclusion than the stud[y's] authors." *In re Nexium Esomeprazole*, 662 F. App'x 528, 530 (9th Cir. 2016). Likewise, the health advisory notes as one limitation, "findings suggesting causal associations are rare, as the data required to make cause-and-effect conclusions are challenging to collect." Ex. 4, APA Advisory 3. In other words, of the two available sources that Dr. Prinstein could identify, one did not involve adolescents and the other cautioned against inferring causation. Dr. Prinstein's opinions that those sources form part of a consensus based on "emerging data" that social media use can cause mental health harm in adolescents amounts to "unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also Perry v. Novartis Pharms. Corp.*, 564 F. Supp. 2d 452, 467–68 (E.D. Pa. 2008) ("In cases where no adequate study shows the link between a substance and a disease, expert testimony will generally be inadmissible, even if there are hints in the data that some link might exist.").

That paper and its underlying studies aside, Dr. Prinstein described "general knowledge from conversations with investigators and data they're beginning [to] collect or have collected or are beginning to analyze"—data that he also conceded were unpublished. Ex. 2, Prinstein Dep. 176:11–15. When asked who those investigators were, Dr. Prinstein responded: "A great many people. I don't know how to . . . respond to that precisely." *Id.* at 177:6–7. Insofar as Dr. Prinstein's opinions are based on "emerging data" that Dr. Prinstein has not disclosed and cannot even identify, his opinions are unreliable and should be excluded. An expert whose "method is a 'black box into which data is fed at one end and from which an answer emerges at the other'" does not permit the jury to "see how the pieces fit together or how the data drives the conclusion." *Open Text S.A.*, 2015 WL 349197, at *6 (citation omitted). Not only is the *method* Dr. Prinstein is using to draw his conclusions from "emerging data" unknown, the data are unknown as well. Dr. Prinstein thus offers nothing more than *ipse dixit* about the nature, reliability, and

content of those data, as well as the conclusions they support. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999).

### 2. Dr. Prinstein applies different standards in his non-retained expert work regarding causation.

Dr. Prinstein's opinions should be excluded because he has not applied the same scientific rigor he employs outside of court in forming his opinions in this case. *See Kumho Tire*, 526 U.S. at 152 (noting that experts "must employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Prior to this litigation, Dr. Prinstein has not written that social media causes harm to teenagers—indeed, at his deposition, he acknowledged that he has never written that social media "causes" mental health problems in anything he has written, including his expert report in this case. Ex. 2, Prinstein Dep.102:16–18, 104:24–25. But in his deposition, Dr. Prinstein testified that "we absolutely know for certain more than not that there is a direct and clear and, yes, causal relationship between what adolescents are engaging with on the features and functions on social media and their own mental health problems down the line." *Id.* at 119:5–10.

Dr. Prinstein even admits that outside of court, scientists apply a different standard for causation than he applied in this case. *See id.* at 51:2–9. And Dr. Prinstein testified that "[i]n academic journals, when we talk about causation, we are applying a standard of mechanistic-level connection that is—you know, it is, in this case, unrealistic and impossible" and "an unnecessary standard." *Id.* at 106:9–13, 179:15–180:6. Dr. Prinstein's disregard for the well-established scientific principles that he embraces in his *academic* work does not demonstrate that "good science" informs his opinions, as is required. *Daubert*, 509 U.S. at 593.

### 3. Dr. Prinstein relies on studies that address social media in general rather than Defendants' platforms specifically.

Dr. Prinstein rests his opinions on studies that assess time spent on devices generally, but fails to distinguish between time spent on Meta's platforms and time spent on other applications. That provides him with no basis to opine on the impact of Meta's platforms specifically, let alone the features of Meta's platforms.

In order for expert testimony to be relevant and admissible, it must establish that "each defendant caused [the plaintiff] to suffer injury." *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981,

987–88 (C.D. Cal. 1996); *see also Gen. Elec.*, 522 U.S. at 146–47 (affirming exclusion where expert relied on studies that did not isolate exposure of specific agent in question). Yet Dr. Prinstein's methodology suffers that very flaw, failing to distinguish between different social media platforms. His opinions are not based on an examination of Meta's platforms or their specific features, and he never explains how any of them are capable of causing the harms alleged. In fact, he testifies the study he cites has "no sentence" or "no finding" that is relevant at all "compared to what we now know from the general consensus of far more research." Ex. 2, Prinstein Dep. 280:4–9. He even acknowledges that his research could not attest to Meta's algorithm being "different or more harmful than the algorithm for a different social media platform." *Id.* at 76:7–10. Instead of focusing individually on the platforms at issue, Dr. Prinstein's opinions not only aggregate those five platforms but unknown others, providing a further basis to exclude his opinions.

### III.    CONCLUSION

For the foregoing reasons, this Court should exclude the following paragraphs of Dr. Prinstein's expert report: ¶¶ 1–5, 31, 34–41, 44–51, 53–70.

DATED: October 3, 2025

Respectfully submitted,

By:    */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Email: pajones@cov.com
Email: pschmidt@cov.com

*Attorneys for Defendants Meta Platforms, Inc.; Meta Payments Inc.; Meta Platforms Technologies, LLC; and Instagram, LLC*