1
2
3
4                        UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6                          SAN FRANCISCO DIVISION
7

8    IN RE: SOCIAL MEDIA ADOLESCENT          Case No. 22-md-03047-YGR   (PHK)
     ADDICTION/PERSONAL INJURY
9    PRODUCTS LIABILITY LITIGATION           **ORDER RESOLVING DISPUTE RE
                                             CERTAIN REQUESTS FOR
10                                           ADMISSION SERVED BY THE
                                             STATES ON META**
11
12                                           Re: Dkt. 2012
13
14

15                              **INTRODUCTION**

16          This MDL has been referred to the undersigned for all discovery purposes.  *See* Dkt. 426.

17   Now pending before the Court is a joint discovery letter brief regarding a dispute between the

18   States and Meta regarding certain requests for admission served on Meta and the responses

19   thereto.  [Dkt. 2012].  The Court finds the dispute suitable for resolution without oral argument.

20   *See* Civil L.R. 7-1(b).

21                             **LEGAL STANDARD**

22          The Court has broad discretion and authority to manage discovery.  *U.S. Fidelity & Guar.*

23   *Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude

24   in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of

25   discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The Court's

26   discretion extends to crafting discovery orders that may expand, limit, or differ from the relief

27   requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

28   discretion to tailor discovery narrowly and to dictate the sequence of discovery").  For example,

*United States District Court*
*Northern District of California*

1    the Court may limit the scope of any discovery method if it determines that "the discovery sought

2    is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

3    convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

4        Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery

5    regarding any nonprivileged matter that is relevant to any party's claim or defense and

6    proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*

7    Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or

8    that reasonably could lead to other matter that could bear on, any issue that is or may be in the

9    case."  *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer*

10   *Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer*

11   *Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

12   Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader

13   than relevancy for purposes of trial.") (alteration omitted).

14       While the scope of relevance is broad, discovery is not unlimited.  *ATS Prods., Inc. v.*

15   *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes

16   of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

17   Information, even if relevant, must be "proportional to the needs of the case" to fall within the

18   scope of permissible discovery. Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1)

19   emphasize the need to impose reasonable limits on discovery through increased reliance on the

20   commonsense concept of proportionality: "The objective is to guard against redundant or

21   disproportionate discovery by giving the court authority to reduce the amount of discovery that

22   may be directed to matters that are otherwise proper subjects of inquiry.  The [proportionality

23   requirement] is intended to encourage judges to be more aggressive in identifying and

24   discouraging discovery overuse."  Fed. R. Civ. P. 26 advisory committee's note to 2015

25   amendment.  In evaluating the proportionality of a discovery request, the Court considers "the

26   importance of the issues at stake in the action, the amount in controversy, the parties' relative

27   access to the information, the parties' resources, the importance of the discovery in resolving the

28   issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

United States District Court
Northern District of California

Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.; see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within its discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020). In particular, "[r]equests for admission are an area in which the court has broad discretion." *Fernandez v. City of S.F.*, No. C-93-2597, 1996 WL 162993, at *5 (N.D. Cal. Mar. 18, 1996).

The Ninth Circuit has made clear that the "purpose" of requests for admission is "to narrow the issues for trial and avoid litigation of unessential facts." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981). Further, the burden is on the proponent of requests for admission to set forth properly framed and phrased requests for admission:

> Because admissions are designed to limit factual issues in a case, the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. To facilitate clear and succinct responses, the facts stated in the request must be singularly, specifically, and carefully detailed. Moreover, requests for admissions should not contain "compound, conjunctive, or disjunctive . . . statements." However, "when the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-

3

technical reading of the request." Finally, requests for admissions should not be used to establish "facts which are obviously in dispute," to "demand that the other party admit the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask the party to admit facts of which he or she has no special knowledge.

*James v. Maguire Corr. Facility*, No. C 10-1795 SI (pr), 2012 WL 3939343, at *4 (N.D. Cal. Sept. 10, 2012) (citations omitted).

Additionally, a mere objection that requests for admission may be characterized as "compound" is unpersuasive, because Rule 36 allows responding parties to "qualify an answer or deny only a part of a matter" as long as the answer specifies the part admitted and qualifies or denies the rest. *Pecover v. Elec. Arts, Inc.*, No. 08-cv-02820 CW (NC), 2012 WL 12921363, at *4 (N.D. Cal. Mar. 23, 2012) (quoting Fed. R. Civ. P. 36(a)(4)). "Indeed, Rule 36 requires responding parties to 'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'" *Id.* (quoting *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994)).

## DISCUSSION

The Parties present three discrete disputes. First, the Parties dispute whether Meta should be required to respond to several of the requests for admissions with regard to the time period which postdates April 1, 2024 (which this Court previously ruled was the presumptive cutoff date for the relevant time period for fact discovery). Second, the Parties dispute whether Meta has adequately responded to RFA 16 ("Admit that you use personal information collected from users of your Platforms to develop, train, or validate algorithms or models"). Third, the Parties dispute whether Meta has adequately responded to RFA 46 ("Admit that Meta uses the personal information it gathers about Users, regardless of age, to better target its advertising services") because of Meta's objection that children under age thirteen are not authorized account holders and thus cannot be "users" of Meta's services or platforms.

The Court addresses each dispute in turn.

### A. **Relevant Time Period**

This dispute centers on Request for Admission Nos. 9 to 48, which include in their "Instructions" a statement that the "relevant time period" for the information sought by these

United States District Court
Northern District of California

4

1    requests runs from "2012 to the present" unless the request otherwise indicates.  [Dkt. 2012-1 at 4;

2    Dkt. 2012-2 at 5].  The dispute here is not on the start date for this period—rather the Parties

3    dispute whether Meta's responses should include the time period "to the present."  This is, by the

4    undersigned's count, at least the third time the Parties have raised a dispute as to the relevant time

5    period for discovery from Meta.

6         Resolution of this discovery dispute and careful review of the briefing is informed by the

7    fact that over a year ago, when the fact discovery period was open, the Court ruled that the

8    relevant time period for discovery from Meta ended on April 1, 2024.  [Dkt. 969 at 4].  That end

9    date was the result of an agreement between the Parties reached at the time.  *Id*.  Discovery

10   Management Order ("DMO") No. 7, which memorialized the Court's rulings from that hearing,

11   addressed the issue of the time period for discovery as follows:

12
> The Parties dispute the Relevant Time Period governing Plaintiffs' discovery requests
13   directed at Meta and Meta's search, collection, and review of responsive documents.  [Dkt. 888].
14   The Parties confirm that they have reached agreement as to the default end date: "April 1, 2024,
15   with the exception of non-Email/Workchat files, for which the end date is the date of collection
16   (which generally falls between January and April 2024 for the 122 of 127 total agreed-to
17   custodians identified to date by Plaintiffs)."  [Dkt. 940 at 11].  Accordingly, the Court **ORDERS**
18   the default end date to be as so indicated and agreed-upon by the Parties.

19   [Dkt. 969 at 4].

20         The States argue that Meta's "overbroad reading of DMO 7" was rejected by the Court in

21   its subsequently issued Order, dated May 29, 2025, which resolved a separate dispute as to time

22   frame for deposition testimony from Meta's Rule 30(b)(6) witnesses.  [Dkt. 2012 at 9]; *see* Dkt.

23   1990.  Meta responds that the States' argument relying on the May 29, 2025 Order is "ironic[]",

24   because that Order largely upheld the April 1, 2024 discovery cutoff date "with limited exceptions

25   for documents actually produced."  [Dkt. 2012 at 10].

26         The Court notes that the May 29, 2025 Order directed deposition testimony after the April

27   1, 2024 default discovery end date for multiple Rule 30(b)(6) topics, either because the Parties

28   reached agreement on the issue or because Meta did not object to preparing and presenting a

United States District Court
Northern District of California

witness on that topic with a later relevant time period. *See, e.g.*, Dkt. 1990 at 5. The Court also allowed Plaintiffs to ask Meta's witnesses questions on documents which were produced in discovery, which postdate April 1, 2024, and which were provided to Meta in advance of the deposition. *Id.* at 8. As to two deposition topics which were actually disputed, the Court denied the States' motion to compel Meta to provide a Rule 30(b)(6) witness to testify on the time period after the April 1, 2024 cutoff date. *Id.* at 6. As stated in that May 29, 2025 Order, the Court resolved the disputes using an analysis which was "more nuanced than the blanket approach both sides urged this Court to undertake." *Id.* at 9.

Here, the States adopt a similarly blanket-like approach to argue that the April 1, 2024 discovery cutoff date should not apply. As the moving party on this issue, the States fail to demonstrate why the Court should deviate from the April 1, 2024 discovery cutoff date here. A review of the requests for admission in dispute does not demonstrate that there is anything unique or particular sought by any of them which warrants expanding the relevant time period to the post-April 1, 2024 time frame. Unlike the dispute resolved in the May 29, 2025 Order, there is no agreement on the issues here and there is no showing that other Meta discovery responses or documents postdating April 1, 2024 underlie the discovery requests at issue.

The States' final argument is that Meta improperly and selectively chose to respond to three requests for admission by referring to a document which postdated April 1, 2024. [Dkt. 2012 at 6]. In response, Meta explains that it linked to its privacy policy as a reference, and that linked policy allows users to toggle back to a previous version of the policy in effect during the default discovery period. *Id.* at 10. Meta also supplemented its responses to these three requests for admission to cite to produced versions of its privacy policy which fell within the relevant time period. *Id.*

The States argue that Meta's linking to the post-April 1, 2024 privacy policy in the original responses somehow waived Meta's objection as to time frame for not just these three requests for admission but for every other request for admission at issue. That argument by the States is an overreach because there is no indication that the responses to these three requests are necessarily linked to the responses to the other requests, and thus, there is no basis to extend this waiver

6

argument to every single request for admission.  And, as to the three requests for admission relied on by the States, the Court finds that Meta has not been shown to have waived its objection to responding to these requests for the time period after April 1, 2024 based on the record submitted.

Accordingly, the Court **DENIES** the States' motion to compel Meta to respond to any of the requests for admission in dispute using a relevant time period which includes the time period after the previously ruled upon default discovery cutoff of April 1, 2024.

**B.  RFA 16**

Request for Admission No. 16 states: "Admit that you use personal information collected from users of your Platforms to develop, train, or validate algorithms or models."  [Dkt. 2012-1 at 16].  The "Definitions" included in RFA 16 define "personal information" to have "the same meaning as the term is defined in 16 CFR § 312.2."  *Id.* at 14.

Meta objects that this definition of "personal information" (from the regulations for the Children's Online Privacy Protection Rule) renders RFA 16 irresolvably compound and complex, thus relieving Meta of the obligation to respond, even in part, to the request.  Section 312.2 states:

> Personal information means individually identifiable information about an individual collected online, including:
>
> (1) A first and last name;
>
> (2) A home or other physical address including street name and name of a city or town;
>
> (3) Online contact information as defined in this section;
>
> (4) A screen or user name where it functions in the same manner as online contact information, as defined in this section;
>
> (5) A telephone number;
>
> (6) A government-issued identifier, such as a Social Security, State identification card, birth certificate, or passport number;
>
> (7) A persistent identifier that can be used to recognize a user over time and across different websites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;
>
> (8) A photograph, video, or audio file where such file contains a child's image or voice;
>
> (9) Geolocation information sufficient to identify street name and name of a city or town;
>
> (10) A biometric identifier that can be used for the automated or semi-automated recognition of an individual, such as fingerprints; handprints; retina patterns; iris

United States District Court
Northern District of California

7

patterns; genetic data, including a DNA sequence; voiceprints; gait patterns; facial templates; or faceprints; or

(11) Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.

16 CFR § 312.2.

The States argue that Meta should have accepted one of the States' alternatively proposed versions of RFA 16, or that Meta should have proposed its own compromise. [Dkt. 2012 at 6]. The States further argue that Meta's position on RFA 16 is inconsistent, because Meta was able to respond to other requests for admission which also included the term "personal information." *Id.* at 9.

Meta responds that even the States' proposed compromise reformulations of RFA 16 are multi-part and complex such that Meta cannot "easily and coherently admit or deny the substance of the matter." *Id.* at 10. Further, a review of the States' proposed compromise versions of RFA 16 shows that these proposals did not in any way alter or address the objected-to term "personal information," but rather retained that term as fully defined and instead proposed narrowing as to different terms (which are not currently part of the dispute presented here). *Id.* at 7.

In resolving this dispute, the Court is mindful of the allocation of burdens here. "[T]he requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. . . . Moreover, requests for admissions should not contain 'compound, conjunctive, or disjunctive . . . statements.'" *James*, 2012 WL 3939343, at *4 (citations omitted). The States do not back away from their definition of "personal information" which incorporates all the information set forth in the cited regulation, even in their proposed compromise rewriting of the request. [Dkt. 2012 at 7]. As drafted, RFA 16 is compound because it facially incorporates a multi-part and compound definition of "personal information."

Also, the States ignore that the regulation which they rely upon to define "personal information" is open ended, further complicating Meta's ability to respond: "Personal information means individually identifiable information about an individual collected online, *including*" eleven

8

subcategories of information—the term "including" makes clear that the eleven following paragraphs are not limiting.  16 C.F.R.  § 312.2 (emphasis added).  Subcategory 3 is in turn compound and open-ended: "Online contact information means an email address *or any other substantially similar identifier* that permits direct contact with a person online, *including but not limited to*, an instant messaging user identifier, a voice over Internet Protocol (VOIP) identifier, a video chat user identifier, or a mobile telephone number provided the operator uses it only to send text messages to a parent in connection with obtaining parental consent." *Id.* (emphasis added). Subcategory 7 is further compound and open-ended: "(7) A persistent identifier that can be used to recognize a user over time and across different websites or online services. Such persistent identifier *includes, but is not limited to,* a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier." *Id.* (emphasis added).  Subcategory 10 is also compound: "A biometric identifier that can be used for the automated or semi-automated recognition of an individual, such as fingerprints; handprints; retina patterns; iris patterns; genetic data, including a DNA sequence; voiceprints; gait patterns; facial templates; or faceprints." *Id.*  And subcategory 11 is facially drafted as compound in ten additional alternative combinations: "Information concerning the child or the parents of that child that the operator collects online from the child *and combines with an identifier described in this definition*." *Id.* (emphasis added).

The States chose to define "personal information" in RFA 16 in a manner that is explicitly compound.  By presenting the request in this manner (even as narrowed with regard to other terms, but not as to "personal information), the States have not shown that RFA 16 can be answered with a simple admit or deny without an explanation.  While the States argue that Rule 36 requires Meta to "qualify an answer or deny only a part of a matter" and "specify the part admitted and qualify or deny the rest," the rule imposes this obligation only "when good faith requires." Fed. R. Civ. P. 36(a)(4).  Here, where the request at issue includes a term defined explicitly as open-ended in multiple ways and defined in explicitly compound fashion in at least eleven dimensions, the Court finds that good faith does not require Meta to admit in part and qualify or deny the rest.  RFA 16, even as redrafted by the States, runs afoul of the legal standards discussed

United States District Court
Northern District of California

9

1  above.

2          Accordingly, the Court **DENIES** the States' motion to compel Meta to provide a further

3  response to RFA 16.

4          **C.  RFA 46**

5          The final dispute concerns Request for Admission No. 46, which states "Admit that Meta

6  uses the personal information it gathers about Users, regardless of age, to better target its

7  advertising services."  [Dkt. 2012-2 at 11].  Meta's objection to this request states, in part: "Meta

8  interprets 'Users' as referring only to individuals with an account on either Facebook or

9  Instagram, as Facebook and Instagram are the only social media services at issue in Plaintiffs'

10  operative complaint, and to individuals at least 13 years of age, as individuals under 13 years of

11  age are not permitted users of Facebook and Instagram. . . . Meta objects to the terms to the extent

12  that they assume Meta knowingly collects personal information from individuals under the age of

13  13."  [Dkt. 2012-4 at 31-32].  The States seek an order striking this objection because "Meta

14  cannot redefine the request to avoid admitting that it collects the same data from all users and uses

15  such data for advertising purposes."  [Dkt. 2012 at 7].  Meta responds that "RFA 46 speaks of

16  'Users, regardless of age' and 'target[ing]' ads to them.  The 'target[ing]' language connotes

17  intentionality.  Meta strongly denies that ads are 'target[ed]' to U13s (who are not authorized

18  Users), and therefore denies that ads are 'target[ed]' to Users 'regardless of age.'  Meta's objection

19  is necessary to accurately qualify its response."  *Id.* at 9.

20          Rule 36 provides that, in responding to a request for admission, "the answer must

21  specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."

22  Fed. R. Civ. P. 36(a)(4).  As detailed above, Meta's response does "state in detail why the

23  answering party cannot truthfully admit" the request for admission.  As drafted, RFA 46 is

24  directed to a liability issue which the Parties hotly dispute.  The request uses terms which, as

25  drafted and defined by the States, Meta objects to and fundamentally denies—as the briefing

26  makes clear, Meta denies that it "targets" persons "regardless of age."  While it is clear that the

27  States (like any plaintiff) would prefer that a defendant admit a disputed liability issue, there is

28  nothing in Rule 36 that requires a responding party to admit issues which assume facts or

United States District Court
Northern District of California

10

definitions that are disputed in good faith in the litigation.  The Court notes that it is incongruous for the States to complain here that Meta has essentially objected and proposed a compromise version of RFA 46 and responded in part according to that compromise, whereas by contrast, in connection with the dispute above regarding RFA 16, the States complain that Meta failed to propose a compromise redrafting of RFA 16 and failed to respond even in part.

Accordingly, the Court **DENIES** the States' motion to seeking to strike Meta's objections and response to RFA 46 and **DENIES** the States' motion to compel Meta to provide a further response to RFA 46.

### CONCLUSION

For all the reasons discussed herein, the Court **DENIES WITH PREJUDICE** the States' motion seeking to strike Meta's objections to the request for admission in dispute and the Court **DENIES WITH PREJUDICE** the States' motion to compel Meta to serve further responses to the requests for admission discussed herein.

This **RESOLVES** Dkt. 2012.

**IT IS SO ORDERED.**

Dated:  October 6, 2025

_____
PETER H. KANG
United States Magistrate Judge