Sam Ferguson (270957)
  sam@fergusonlawpc.com
Katharine Kates (155534)
  katharine@fergusonlawpc.com
Ann Cappetta (354079)
  annie@fergusonlawpc.com
FERGUSON LAW PC
1816 5th Street
Berkeley, CA 94710
Tel. (510) 548-9005

Attorneys for Proposed Intervenor
TIME USA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>**TIME USA, LLC'S REPLY IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF PROTECTING ACCESS TO COURT RECORDS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br><u>Hearing</u>:<br><br>Date: October 24, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 1, Fourth Floor |

## I.    INTRODUCTION

TIME has moved to intervene in the Court's bespoke sealing protocol cognizant of the need to preserve judicial resources and promote efficiency in this complex MDL. The core of TIME's motion makes two requests: that TIME (1) be provided prompt access to records administratively filed under seal if the parties agree sealing is not necessary (which happens privately between the parties 10 days after briefs are filed), and (2) be given an opportunity participate in the Omnibus briefing procedure.

After conferring with Defendants and considering Defendants' opposition, TIME is willing to narrow its request for intervention to minimize the burden on the parties. To that end, TIME no longer seeks to participate in the sealing meet and confer process between the parties. Instead, TIME will rely on the charts introduced by the parties filed concurrently with their Omnibus motions to seal, as those charts and motions must contain the parties' reasons for requesting to seal documents. Dkt. 341 at 4–5 (sections II.A.1.a. and II.A.2.b.). So long as the sealing charts filed with Omnibus motions sufficiently articulate the parties' bases for requesting to seal records, TIME should be able to meaningfully respond to the requests to seal (or file its own motion). Under this modified proposal, TIME requests that it be permitted to file a brief within five days after the parties file their own Omnibus motions and sealing charts, as TIME will not have been provided with the parties' reasons for sealing until the briefs and charts are filed. This should minimize the burden on the parties while preserving the press's and public's right to meaningfully participate in the Court's consideration of requests to seal.

Moreover, TIME clarifies that it does not seek to intervene in every sealing decision going forward, but rather only to participate proactively in the sealing protocol as to dispositive and *Daubert* motions.[1]

Defendants do not dispute the abundant authority that permits media intervention on behalf of public access. Defendants instead argue that TIME's intervention should be delayed until after sealing disputes on dispositive motions have been decided by the Court. There is no reason to

---

[1] TIME, however, wishes to reserve its right to challenge past sealing decisions if previously sealed material becomes relevant to adjudicated issues in the case.

1  delay TIME's participation and require an unnecessary duplication of briefing when the

2  administrative demands on the Court are already high.

3      Defendants also argue that they already have TIME's interest at heart, because they "have

4  been targeted, careful, and narrow in their sealing requests…[,] take the public's interest in access

5  seriously and are committed to litigating these cases in public view." Dkt. 2287 at 10:17–20.

6  Despite that representation, they appear to have completely failed to comply with the Court's

7  sealing protocol with respect to their six motions for summary judgment against the school district

8  bellwether plaintiffs: there is no evidence related to Defendants' motions for summary judgment

9  on the docket at the moment, sealed or otherwise.[2] Additionally, Defendants filed the majority of

10  their evidence related to their *Daubert* motions under seal: 45 out of 98 exhibits related to general

11  causation experts and 60 out of 96 exhibits related to school district experts are completely under

12  temporary seal. *See generally* Dkts. 2297 & 2298. This is neither "targeted," nor "careful" nor

13  "narrow."

14      Defendants finally speculate that if TIME is granted intervention, a flood of other media

15  organizations will also seek to intervene. Yet at the same time, they point out that not a single

16  media organization has sought to intervene in this case during three years of pending litigation,

17  suggesting that their concern about a flood of other intervenors is overstated. Dkt. 2287 at 9:21–22.

18  If other media organizations ultimately seek to intervene, the Court can easily appoint a lead

19  intervenor and liaison counsel to minimize burden. Unfounded speculation about future

20  intervenors should not deter the Court from granting TIME's motion.

21      As a critical source of information for the public, TIME represents the unique perspective

22  of the press and public in support of timely access to court records. In a recent meet and confer,

23  defense counsel dismissed a months-long delay in access to court records as inconsequential,

24  highlighting that the parties do not have the same interests as the press and public in seeking access

25

26

27  _____

28  [2] TIME understands that the evidence was served on Plaintiffs. TIME does not know why it was not filed.

1   to court records. TIME seeks to intervene to ensure access to court records is effective and prompt.

2   Therefore, TIME respectfully requests the Court grant its motion to intervene.

3                    **II.    FURTHER FACTUAL BACKGROUND**

4         Defendants' primary argument against permitting TIME's intervention is that it will create

5   an undue burden. A close look at the mechanics of the sealing process in ordinary cases and this

6   case demonstrates that TIME's request is modest and Defendants' concerns are overstated.

7         In an ordinary case, parties are required to file a motion to seal simultaneously with any

8   brief they file that contains documents they wish to seal. Local Rule 79-5(B). The motion to seal is

9   required to include "a specific statement of the applicable legal standard <u>and</u> the reasons for

10  keeping a document under seal, including an explanation of: [¶] (i) the legitimate private or public

11  interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less

12  restrictive alternative to sealing is not sufficient." *Id.* at subsec. (C)(1) (emphasis in original). If a

13  party files documents that have been marked confidential by another party and the designating

14  party wishes to maintain them under seal, they must file a motion to seal within 7 days of the

15  motion. *Id.* at subsec. (F)(3). Thus, in the ordinary case, the public is presented with a party's basis

16  for sealing records on the same day it files evidence provisionally under seal and is provided with a

17  designating party's basis for sealing records within seven days.

18        In this case, this procedure has been modified to minimize the number of motions to seal.

19  Dkt. 341 at 1. The parties are not required to file a motion to seal on the same day that documents

20  are presented to be sealed; instead, documents are filed under seal accompanied by a Temporary

21  Sealing Motion that includes a chart noting which party has designated documents as confidential.

22  Dkt. 341 at 2 (section I.A.2.a.2). The reasons for requesting to seal documents are presented later

23  in an Omnibus motion to seal that is filed 14 days after briefing on the underlying motion is

24  complete and the parties have had a chance to meet and confer. *Id.* (section I.A.2.a.1 (the

25  Temporary Sealing Motion in this case is required to state that "the reasons for sealing will be

26  addressed in a forthcoming omnibus motion"), *id.* at 4–6 (section II). In this case, this means that

27  while dispositive motions were filed on September 30, 2025, the public will not be presented with

28

1    any party's basis for requesting to seal documents until December 19, 2025 (i.e. 14 days after

2    replies are filed). *See* Dkt. 2274.

3        The Omnibus Motion procedure contains two documents wherein the public is presented

4    with the parties' reasons to seal documents: (1) a chart presented as part of an Omnibus Sealing

5    Stipulation, which must contain "the basis for sealing" where the parties agree to keep records

6    under seal and seek Court approval to do so, Dkt. 341 at 4 (section II.A.1.a); and (2) a chart in the

7    parties' Omnibus Proposed Order on motions to seal, which accompanies competing Omnibus

8    Motions to seal, *id.* at 5 (section II.A.2.b).

9        This is a significant departure from the ordinary procedure — the public is not presented

10   with the parties' reasons for requesting to keep documents under seal for several months.

11       During the period in which documents are temporarily under seal, two steps occur. First,

12   within ten days after the Temporary Sealing Motion is filed, the designating party is instructed to

13   notify the filing party if it does not wish to keep any of its own documents (or portions thereof)

14   under seal; it then provides the filing party with a copy of the less-redacted (or unredacted)

15   documents for filing. Dkt. 341 at 2–3 (section I.B.2). Thus, within 10 days, many of the documents

16   that were initially filed under seal may not be subject to any request to seal, but they will not be

17   publicly filed until 14 days after Omnibus Sealing Motions are filed. *Id.* at 5 (section II.A.1.b).

18   This means that by October 9, 2025, the parties may have agreed that dozens of the documents that

19   Defendants filed (or failed to file) under seal may not need to be sealed, but these documents will

20   not be publicly filed until December 19, 2025. Second, within the 14-day period between the

21   completion of the motion being fully briefed and the date Omnibus Sealing Motions are due, the

22   parties must meet and confer over requests to seal, and jointly file charts with undisputed and

23   disputed sealing requests. *Id.* at 4–5 (sections II.A.1.a and II.A.2.b).

24       Without intervention, TIME will not be permitted to view any of the evidence placed under

25   seal until December 19 (at the earliest), even if the parties agree on October 9 that documents need

26   not remain under seal. And while in the ordinary course of events the public is provided with the

27   parties' reasons for requesting that information be kept seal within a week of the papers being

28   filed, TIME will not know the purported reasons for keeping information under seal in this case

1  until mid-December. TIME requests modifications of the proposed sealing order to ensure its

2  timely access to documents that are not subject to dispute and to make sure it is in a position to

3  meaningfully participate in the Court's briefing schedule on sealing.

4                      **III.      ARGUMENT**

5       **A.      TIME's Request for Intervention is Narrow and Efficient.**

6            There is no dispute that "courts routinely permit the media to intervene for the purpose of

7  unsealing judicial records." *In Re: Nat'l Sec. Agency Telecomms. Recs. Litig.*, No. 06-1791, 2007

8  U.S. Dist. LEXIS 14473 (N.D. Cal. Feb. 20, 2007). Defendants do not contest the press's right to

9  intervention to unseal court records, nor the compelling public interest in access to evidence in this

10  case, effectively conceding that TIME should be permitted to intervene if the Court enters any

11  sealing orders that TIME seeks to oppose. Dkt. 2287 at 6–7, 9:6–7, 10:15–16. Instead, Defendants

12  request that TIME file separate sealing motions after the parties have briefed sealing issues and the

13  Court has ruled on those briefs. *Id.* at 10:15–16 ("At that juncture, media outlets like TIME could

14  petition the Court to challenge any sealing order"). Defendants' proposed alternative is

15  burdensome and "would bog down the Court's current and well-designed, efficient process" far

16  more than permitting TIME's proactive participation in the briefing on sealing in first instance.

17  *See id.* at 9:13–14. TIME proposes there be one briefing schedule for all sealing issues on

18  dispositive motions.

19            TIME's proposal is efficient and ensures prompt public access.

20            First, TIME proposes Section I.B.1. of the sealing order be amended to require that the

21  filing party serve the redacted versions of all partially-redacted documents to be sealed on TIME,

22  in addition to the other parties in this case. This proposed amendment adds no burden because

23  Section I.A. of the Sealing Protocol requires public filing of all nonconfidential and partially

24  redacted items associated with the Primary Entry as attachments to the Temporary Sealing

25  Motion, so electronic service of those filings via ECF is sufficient to meet this requirement — the

26  Court must simply authorize TIME's intervention and the parties must simply comply with the

27  filing requirements in the Sealing Protocol.

28

1    Second, TIME proposes amendments to Section I.B.2(b)–(c) to require the parties to

2  promptly serve it with less-redacted or unredacted versions of documents as soon as they reach an

3  agreement that the documents or portions thereof are not entitled to protection. These proposed

4  amendments address the practical problem that even though the parties may all agree that

5  documents should be public within 10 calendar days of the Temporary Sealing Motion, those

6  documents are still sealed and not publicly available until 14 days after the conclusion of briefing

7  on the underlying motion, delaying public access by several months. This proposed amendment

8  poses only marginal additional burden (if any), because all this request requires is that the parties

9  provide TIME with a copy of the less-redacted and unredacted versions of documents that they are

10  providing to one another.[3] TIME's intervention adds just another recipient on the service list.

11  Given that many documents have been or will be filed under temporary seal in their entirety,

12  TIME's ability to promptly receive less-redacted versions would also clarify for TIME the scope

13  of remaining sealing disputes before Omnibus briefs are filed. This modification is also consistent

14  with the spirit of public-access caselaw, which highlights that *prompt* access is required. *See*

15  *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the

16  values which the presumption of access endeavors to promote, a necessary corollary to the

17  presumption is that *once found to be appropriate*, access should be *immediate and*

18  *contemporaneous*"), citing *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539 (1976)) (emphasis

19  added); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("[A] necessary

20  corollary of the right to access is a right to timely access").

21    Finally, TIME proposes amendments to Section II.A. to permit TIME to file an Omnibus

22  brief regarding sealing disputes. While TIME's intervention adds some additional pages for the

23  Court to read to determine disputed sealing issues to adequately consider the public's interests,

24  there is no additional burden on the parties, who must already prepare arguments for their

25  Omnibus sealing stipulations and motions. *See Muhaymin v. City of Phoenix*, No. CV-17-04565-

26  _____

27  [3] In the alternative, the sealing protocol could be amended to require the parties to file
    documents 10 days after the Temporary Sealing Motion is filed where they have agreed to
28  less-restrictive redactions. This would ensure prompt public access.

PHX-DLR, 2021 U.S. Dist. LEXIS 211707, at *2 (D. Ariz. Nov. 3, 2021) ("The mere fact that [the moving party] will need to explain why the relevant records should remain sealed" sufficient to overcome the public interest in disclosure "is not, itself, unduly prejudicial"). Even if Defendants were correct that TIME's proposal would be burdensome, efficiency is not the determinative factor when it comes to ensuring the press and public's First Amendment right of access. *See In re Associated Press*, 172 F. App'x 1, 5–6 (4th Cir. 2006) ("Ultimately, while we are sympathetic to the administrative burdens faced by the district court, we cannot agree that the incremental rise in those burdens that would be caused by providing access justifies the denial of access, until after the completion of trial, to all documentary exhibits that have been admitted into evidence and fully published to the jury."). Given the public interest in this MDL, permitting TIME to file a five-page brief on the same schedule as the parties is a minimal burden to protect the public right of access.

> **B.      Disputes Between the Parties' and TIME's Interests in Access to Court Records are Concrete and Imminent.**

While Defendants argue that TIME did not have a concrete need for intervention when it filed its opening motion, it now clearly has concrete concerns with Defendants' compliance with the sealing protocol and the over-designation of material to be placed under seal. Defendants did not file any evidence with their motions for summary judgment (instead they apparently only served the evidence on Plaintiffs), and they filed dozens of documents entirely under seal in connection with their *Daubert* motions. *See* Dkts. 2297 & 2298. They have also redacted innocuous content from their briefs, such as pincites. *See, e.g.*, Dkt. 2289 at 29:15. TIME now clearly has a concrete need to intervene: the parties should not be permitted to effectively close the courthouse doors for the public to view evidence submitted in connection with motions for summary judgment.

In any event, Defendants are incorrect that media intervenors may only be granted access once a document has been sealed. Courts routinely grant ongoing — i.e. prospective — intervention to media organizations to participate in sealing disputes. *See e.g.*, *Cahill v. Nike, Inc.*, No. 3:18-cv-01477, 2022 U.S. Dist. LEXIS 182366 at *37–39 (D. Or. Sep. 30, 2022) (granting

media intervention "to provide further briefing to the Court regarding the insufficiency of the parties' justification for agreed-upon redactions" in documents filed supporting a motion for class certification); *Cahill v. Nike Inc.*, No. 3:18-cv-01477, 2025 LX 268834, at *21–22 (D. Or. Feb. 5, 2025) (acknowledging media intervenors' ongoing role in access disputes years after initial intervention on class certification and that "the Court will analyze any future request to seal or redact in its particular context, mindful that this case is now in the trial phase and binding precedent determines that the compelling reasons standard presumptively applies moving forward."); *cf. Brown v. Maxwell*, 929 F.3d 41, 46–47 (2d Cir. 2019) (remanding individualized review of sealed materials to the district court with media intervenors' ongoing participation).

In one MDL, the Court denied the media's particular motion to unseal records related to a non-dispositive preliminary injunction motion but nonetheless granted media entities' motion to intervene in the MDL for ongoing participation recognizing "the distinct perspective the media entities offer to this litigation" and that "the court may revisit" access issues when a stronger presumption of access attaches "at a later point in the litigation." *In re NSA Telcoms. Records Litig.*, No 06-1791, 2007 U.S. Dist. LEXIS 14473, at *46–47 (N.D. Cal. Feb. 20, 2007). While the potential for those access issues to arise at a later point would have been, under Defendants theory, speculative at that time and insufficient to permit intervention, the Court nonetheless found intervention justified to protect the unique interests of the press and public.

**C.    The Parties Do Not Represent the Interests of the Press and Public.**

The parties have not and will not adequately represent the interests of the press and public in sealing determinations. *See Parson v. Farley*, 352 F. Supp. 3d 1141, 1150 (N.D. Okla. 2018) (recognizing that a party "lacks the same incentive to invest time and resources in the 'public access' issue, given that he already has access to the… related judicial records"). One of the primary reasons TIME seeks intervention is to protect prompt access to court records filed in connection with dispositive motions as soon as they are not subject to any sealing dispute. *See supra* Sections I.–II. The Ninth Circuit has recognized that reporting on court records "must be timely to be newsworthy and to allow for ample and meaningful public discussion regarding the functioning of our nation's court systems." *Courthouse News Serv.*, 947 F.3d at 594. A "ban on

1  reporting news 'just at the time [the] audience would be most receptive' would be effectively

2  equivalent to 'a deliberate statutory scheme of censorship.'" *Id.* (quoting *Bridges v. California*,

3  314 U.S. 252 (1941)). In fact, "'news' is not even 'news' if it is not timely, that is, immediate and

4  contemporaneous," and "the need for immediacy of reporting news 'is even more vital in the

5  digital age,' where timeliness is measured in terms of minutes or seconds." *Id.* In opposition to this

6  motion, Defendants seek to needlessly delay TIME's access to the court docket (and with it, the

7  public's access to information). Indeed, the parties met and conferred on September 26, 2025,

8  during which counsel for the Meta Defendants told the undersigned that a three-month delay in

9  public access to records was not a concern, highlighting the parties' inability to adequately protect

10  the press and public's interests in timely reporting on this MDL. TIME's intervention would

11  remedy this gap of representation of the media's interest in timely newsworthy information.

12       Moreover, the evidence — or lack thereof — that Defendants filed with their motions for

13  summary judgment and *Daubert* motions directly contradicts their contention that "Defendants

14  have been targeted, careful, and narrow in their sealing requests…[,] take the public's interest in

15  access seriously and are committed to litigating these cases in public view." Dkt. 2287 at 10:17–

16  20. As stated above, Defendants have failed to file any evidence in connection with their six

17  motions for summary judgment, and they indiscriminately placed 45 out of 98 exhibits related to

18  general causation experts and 60 out of 96 exhibits related to school district experts entirely under

19  temporary seal, *see* Dkt. 2297–98. Defendants cannot defend this restricted access on the basis that

20  these seals are temporary, because even temporary indiscriminate sealing on dispositive evidence

21  that is not reasonably subject to dispute violates the media's First Amendment right of access.

22  *Courthouse News Serv.*, 947 F.3d at 594 ("To delay or postpone disclosure undermines the benefit

23  of public scrutiny and may have the same result as complete suppression. Each passing day may

24  constitute a separate and cognizable infringement of the First Amendment."). TIME's intervention

25  would ensure compliance with the Sealing Protocol's "robust safeguards," Dkt. 2287 at 10:4, and

26  ensure the case is "litigated… in public view," *id.* at 10:17–22.

27

28

### D.    The Burden of Additional Media Entities' Theoretical Intervention is Entirely Speculative and Overstated.

Defendants finally warn that granting intervention to TIME will open the floodgates of intervention to other media entities. But they fail to cite a single case where this has ever happened, nor do they cite any evidence in support of this argument. To the contrary, they have noted that over three years of litigation, not a single media outlet has moved to intervene in this case. Dkt. 2287 at 9:21–22. Defendants' concern about an army of media entities pounding on the door of the courthouse seems unlikely. Even in the high-profile defamation litigation of Jeffrey Epstein victim Virginia Giuffre against Epstein associate Ghislaine Maxwell, only three media entities — the Miami Herald, one its reporters and a freelance journalist — sought and obtained intervention. *See Brown*, 929 F.3d at 46. Other media entities who were interested in access in that case limited their participation to filing a single joint amicus brief in support of the district court's unsealing order on appeal; they did not choose to duplicate the efforts of the media intervenors. *See* Brief of Amici Curie Reporters Committee for Freedom of the Press and 34 Media Organizations in Support of Intervenors, Dkt. 91 in Case No. 20-2412 (2d. Cir Sept. 10, 2020), on file at https://www.rcfp.org/wp-content/uploads/2020/09/2020-09-10-RCFP-amicus-brief-in-Giuffre-v.-Maxwell.pdf.

The Court and the parties have effectively managed the burdens of communicating with and serving many parties so far in the litigation with strategies such as appointing liaison counsel for and steering committees of aligned interests. TIME would not oppose the Court applying such strategies to minimize additional burdens on the off chance too many other media entities also seek to intervene at a later stage.

## IV.    CONCLUSION

For the foregoing reasons, TIME respectfully requests that the Court grant this motion to intervene for the limited purposes of participating in the Sealing Protocol and protecting access to court records.

DATED:  October 7, 2025

Respectfully submitted,

FERGUSON LAW PC

By:  /s/ Sam Ferguson

Sam Ferguson
Katharine Kates
Ann Cappetta
Attorneys for Proposed Intervenor

TIME'S REPLY IN SUPPORT OF MOTION TO INTERVENE