UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br>*All matters* | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE RE: PLAINTIFFS' MOTION TO COMPEL META TO PRODUCE DEPOSITION TRANSCRIPTS AND DOCUMENTS PRODUCED IN OTHER AG LAWSUITS AFTER CLOSE OF MDL FACT DISCOVERY**<br><br>Re: Dkt. 2174 |

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Now pending before the Court is a joint letter brief regarding a dispute between the Personal Injury/School District ("PI/SD") Plaintiffs and Meta regarding whether Meta should be compelled to produce, in this MDL, discovery produced by Meta in other pending state court actions after the close of fact discovery in this MDL. [Dkt. 2174]. Plaintiffs specifically request an order compelling Meta to produce all deposition transcripts from, and all Meta documents produced in, state lawsuits filed against Meta which are not part of this MDL. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

**LEGAL STANDARD**

The generally applicable legal standards for discovery are well-known. The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to

crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

## ANALYSIS

The context of this dispute is of note—this MDL involves a large number of actions filed against Meta by individuals (personal injury plaintiffs), school districts (school district plaintiffs), and states (either in their own name or, in some cases, by a state agency such as a state attorney general). However, this MDL does not cover or include the entire universe of all litigations filed against Meta by states or state agencies. There exist a number of other currently pending actions around the nation filed by other states against Meta in various state courts, which are not part of this MDL, referred to as the "Related Actions." *See* Dkt. 742 at 1 and Appendix A. In the Related Actions, at a high level, the plaintiffs' allegations are based on generally the same basic assertion

that Meta's social media platform and services have harmed youth or other identified plaintiffs (although admittedly the specific legal theories or bases for causes of action, including state-specific factual and legal issues, differ from case to case).

Discovery in this MDL has, unsurprisingly, run concurrently with discovery pursued in the Related Actions. While the fact discovery period was open in this MDL, the Parties reached accommodations on trying to cross-notice depositions between this MDL and the Related Actions, as well as producing discovery from the Related Action in this MDL. The current dispute has arisen because fact discovery in this MDL closed on April 5, 2025, while discovery in at least some, if not all, of the Related Actions has continued past that cutoff date, because the fact discovery schedules in the Related Actions are not coordinated to be conterminal with this MDL. Accordingly, after the fact discovery cutoff in this MDL, Meta has apparently produced documents in the Related Actions and depositions of Meta witnesses have been taken in the Related Actions. The Plaintiffs here seek an order compelling Meta to produce those post-April 4, 2025 Meta documents produced in, and the Meta witness deposition transcripts from, the Related Actions. Meta opposes these requests.

As an initial matter, the undersigned notes that this is yet another dispute between the Parties based on whether discovery should continue past a deadline set by the Court. As the undersigned has noted in previous orders, at this stage of the MDL, these Parties should be (and are likely) focusing on pretrial matters and trial preparation. It is hoped that, if there exist anymore of these types of disputes, the Parties are either resolving them informally or withdrawing them so that they can focus on pretrial and trial preparation going forward.

**Transcripts of Meta Witnesses' Depositions Taken After April 5, 2025**

The PI/SD Plaintiffs' primary legal argument in support of their request for the post-April 5, 2025 deposition transcripts is based on *Apple Inc. v. Samsung Electronics Co.*, No. C 11-1846 (LHK) PSG, 2012 WL 1232267 (N.D. Cal. Apr. 12, 2012). In *Apple*, Samsung and Apple were involved in multiple, co-pending patent lawsuits. The magistrate judge in *Apple* had previously granted an earlier Samsung motion to compel Apple to produce deposition transcripts from other cases, with the limitation that those cases have a "technological nexus" to the case at bar in *Apple*.

4

Apple had proposed, and the court adopted, the "technological nexus" standard to reasonably limit the scope of other cases from which deposition transcripts would be produced. Under that standard, a "technological nexus" includes "prior cases involving the patents-in-suit or patents covering the same or similar technologies, features, or designs as the patents-in-suit." *Id.* at *4-5 (The *Apple* court "drew the line at cases having a 'technological nexus' to this suit in order to manage the reasonable production of relevant and discoverable deposition transcripts from other actions."). The dispute in *Apple* stemmed from Apple's application of a "technological nexus" standard to each individual deposition transcript, and on that basis, Apple chose not to produce a number of deposition transcripts because some witnesses allegedly only testified on financial issues (and not technological issues). The *Apple* court rejected Apple's reformulation of the "technological nexus" standard—which was to be applied to identify cases from which all deposition transcripts were to be produced and not applied on a deposition-by-deposition basis. *Id.* at 5.

Based on this detailed review, it is apparent that the *Apple* decision relied on by the PI/SD Plaintiffs here arose from a different procedural context than the situation here. First, unlike in *Apple*, there is no previous order from this Court requiring Meta to produce deposition transcripts from the Related Actions. Second, unlike in *Apple*, there is no "technological nexus" test here (or similar standard) previously ordered which serves "to manage the reasonable production of relevant and discoverable deposition transcripts from other actions." *Id.* at 5. Indeed, in a later order clarifying the cited *Apple* opinion, the same magistrate judge explained that the "technological nexus" test came about based on "Apple's proposed definition" and the court found that that standard was "an appropriate measure under the balancing provisions of Fed. R. Civ. P. 26(b)(2)(C)(iii) for the production of relevant employee testimony from other actions." *Apple Inc. v. Samsung Elec. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 2862613, at *2 (N.D. Cal. July 11, 2012).

Here, unlike in *Apple*, there is no preexisting or previously ordered standard to balance the provisions of Rule 26(b)(2)(C)(iii) to identify deposition transcripts that are properly within the scope of discovery here. Rule 26(b)(2)(C)(iii) limits discovery to the scope permitted by Rule

5

26(b)(1), including considerations based on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Meta concedes that, "[t]o be sure, much of the alleged conduct in the non-MDL state cases is also at issue here." [Dkt. 2174 at 8]. However, Meta argues that "the state-court cases involve at least some additional, state-specific issues and state-specific facts (as well as different witnesses, testifying in sometimes different capacities)." *Id.*

The Court finds that the *Apple* case cited by the PI/SD Plaintiffs, while instructive, is not wholly dispositive of the issue here because it is distinguishable for the reasons discussed. Most significantly, the lack of any standard (such as the "technological nexus" standard) to identify cases from which deposition transcripts would be within the balanced scope of discovery required by Rules 26(b)(1) and 26(b)(2)(C)(iii) here distinguishes the *Apple* rationale from the case at hand.

The Parties' other arguments are primarily procedural. The PI/SD Plaintiffs argue that their Request for Production No. 224 covers the sought-after deposition transcripts and that the Parties negotiated narrowing that request to the Related Actions—and thus would hold Meta to that agreement, including for the post-discovery cutoff date depositions. [Dkt. 2174 at 5]. Plaintiffs argue that Meta has a continuing duty to supplement productions of documents such as the transcripts under Rules 26(e) and 37. *Id.* The PI/SD Plaintiffs further argue that there is no burden on Meta to produce these transcripts since they are already in the discovery record in the Related Actions, insisting that "[a]ll that PISD Plaintiffs request here is that Meta, in effect, forward these productions to a new set of recipients." *Id.* at 6.

Meta avers that, in negotiating RFP 224, Meta did not unequivocally agree to produce any deposition transcripts. *Id.* at 9 ("Under that negotiated resolution, Meta *did not agree* to produce transcripts of depositions taken in the Related Actions; Meta agreed only to *meet and confer* with Plaintiffs about requests for transcripts of such depositions, to the extent not cross-noticed by Plaintiffs, in the future, with no commitment to produce such transcripts."). As support, Meta cites *United States v. Crescendo Bioscience, Inc.*, No. 16-cv-02043-TSH, 2012 WL 4129779

6

(N.D. Cal. Sept. 10, 2021). *Id.* There, the court denied a motion to compel production of documents after the fact discovery cutoff based on a Rule 26(e) supplementation argument, where the party resisting the discovery made clear months before that it would not produce the full scope of documents sought by the requestor, reasoning that "a response is not incomplete if you refuse to produce something during fact discovery and then continue to refuse to produce it after the close of fact discovery. That's called refusing to produce, and the other side's remedy is a motion to compel." *Crescendo*, 2012 WL 4129779, at *5.

Indeed, a case cited by the PI/SD Plaintiffs here for the proposition that supplementation under Rule 26(e) is required even after the close of fact discovery held that "it is axiomatic that the duty to supplement is triggered only if the materials requested would have been responsive to a discovery request in the first instance." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022). In *L.A. Terminals*, the court denied the motion to compel production after the close of fact discovery because the documents sought were not called for by the requests for production, when read in light of the "reasonable particularity" standard. *Id.* at 397. Similarly, here, Meta never committed to produce all deposition transcripts from the Related Actions, even when the fact discovery period was open, and thus the refusal to produce put the PI/SD Plaintiffs on notice that the Related Action deposition transcripts were at best merely going to be the subject of further meet and confer, not automatic responsive production.

The other case cited by the PI/SD Plaintiffs to support their Rule 26(e) supplementation argument—*Gamevice, Inc. v. Nintendo Co.*, No. 18-cv-01942-RS (TSH), 2019 WL 5565942 (N.D. Cal. Oct. 29, 2019)—is inapposite, because in that case the target of the discovery agreed during the discovery period to produce the scope of documents sought, but only changed position after the fact discovery period closed in a "bait and switch" which justified the order to compel production and supplementation after the fact discovery period. *Id.* at *3.

Meta's arguments in opposition rely not only on the court-ordered fact discovery cutoff, but also the fact that the PI/SD Plaintiffs here argued for and received an earlier schedule than the other cases such as the Related Actions and the JCCP proceedings pending in Los Angeles County Superior Court. Meta also argues that the production of Related Action deposition transcripts

would be an end-around of the time limits on depositions taken in the MDL, as well as a violation of the Parties' negotiated protocols for cross-noticing depositions as between this MDL and any Related Actions. [Dkt. 2174 at 8].

Meta's argument that producing the deposition transcripts from Related Actions would "render meaningless these carefully crafted limits and protocols" for deposition time budgets in this MDL is not legally supported. In *Apple*, the court rejected the same argument asserted by Apple to resist producing deposition transcripts from other cases: "Nor does the production of these deposition transcripts after the fact create an end-run around the 250–hour limit on depositions in this case. If this were the case, the production of deposition transcripts—or for that matter any form of discovery response—from other related actions from which Apple readily agreed to produce transcripts similarly would threaten the limits imposed by the court and the federal rules on discovery in the instant action." 2012 WL 1232267, at *5.

It is not unusual for parties to produce, in one case, discovery responses or deposition transcripts from a relevant, second case. As the *Apple* court held, simply producing those discovery materials from the other case does not "count" against discovery limits (such as time limits or hours budgets) in the case. Otherwise, a producing party could tactically and unilaterally attempt to force an unwanted reduction of all or a large part of an opponent's budgeted deposition hours by voluntarily producing a multitude of deposition transcripts under the guise that they are allegedly relevant to the case, and then claiming that they "count" against the opponent's time for taking depositions. As a purely procedural matter, a deposition transcript from another case is sought by a request for production (as was done here), and the production of that transcript is, at the discovery stage at the time of production, the production of a document—any testimonial use of the transcript is determined at a later stage of the proceedings after the production.

The above analysis demonstrates that whether deposition transcripts from other cases are required to be produced as a supplement to discovery responses after the close of fact discovery under Rule 26(e) is highly fact-intensive and determined on a case-by-case basis. As noted by the *Apple* court and other cited cases, the duty to supplement is read in conjunction with the proper scope of discovery under Rules 26(b)(1) and 26(b)(2)(C)(iii), because it would be incongruous to

8

allow for supplementation of discovery after the fact discovery cutoff under Rule 26(e) to have a broader scope than fact discovery during the fact discovery period.

The PI/SD Plaintiffs' briefing focuses primarily on the lack of burden issue and asserts generally that the deposition transcripts are within the scope of relevance under Rule 26(b)(1). However, the PI/SD Plaintiffs' briefing does not explain why these Related Action deposition transcripts are important in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1). Nor does the briefing explain how even the allegedly minimal burden on Meta would not outweigh the likely benefit of producing the deposition transcripts. *Id*.

Further, the duty to supplement under Rule 26(e) is, by the express language of the rule, required "if the party learns that *in some material respect* the disclosure or response is *incomplete* or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Here, Meta's refusal to produce deposition transcripts after the fact discovery cutoff is certainly "incomplete" in the literal sense that those Related Action transcripts are currently absent from the discovery record in this MDL. But, as the moving party, the PI/SD Plaintiffs have not shown in *what material respect* the failure to produce those deposition transcripts is incomplete or incorrect. For the duty to supplement under Rule 26(e) (which is the basis asserted by Plaintiffs), a showing of incompleteness or incorrectness in a material respect is required—and here, there is insufficient basis for concluding that the absence of these transcripts is incomplete in a material respect.

Meta represents that it is "willing to consider, once witness lists are exchanged for trial, whether a particular transcript of an identified trial witness, taken in the same capacity and addressing relevant issues, should be provided to MDL/JCCP Plaintiffs." [Dkt. 2174 at 9]. Thus, Meta recognizes that its failure to produce Related Action deposition transcripts would likely be held to be incomplete in a material respect with regard to depositions of persons expected to testify at trial in this MDL. Plaintiffs are entitled to a fair opportunity to cross-examine and test credibility of Meta's witnesses. It is not unusual to obtain, in discovery in one case, the deposition or even trial testimony of adverse witnesses from other cases, for purposes of cross-examination and to establish facts based on a witness' conflicting or inconsistent factual testimony or admissions from a related or similar matter. Indeed, in the *Apple* case, Apple argued (and

9

Samsung did not appear to dispute) that in negotiations "Samsung agreed to narrow its request to transcripts that would allow it to assess the credibility of Apple's witnesses in this case." 2012 WL 1232267, at *5.

Accordingly, the Court **DENIES** the PI/SD Plaintiffs' motion to compel Meta to produce all deposition transcripts from all Related Actions for depositions of all Meta witnesses taken after the close of fact discovery in this MDL. However, the Court **GRANTS-IN-PART** the PI/SD Plaintiffs' motion as follows: The Court **ORDERS** Meta to produce to the PI/SD Plaintiffs deposition transcripts of Meta witnesses from any Related Actions (for depositions taken after the close of fact discovery in this MDL), but only to the extent that any such Meta witnesses are listed on any trial witness list (or other pretrial filing in which trial witnesses are proposed or identified even preliminarily), submit any declarations on any dispositive motions or other pretrial motions, or are named or identified in any expert report as persons with whom any experts communicated directly or indirectly in connection with that expert's work in this MDL. For clarity, the Court rejects Meta's proposal to limit the scope of Meta witnesses to only transcripts of those Meta witnesses "taken in the same capacity and addressing relevant issues." Also, the term "Meta witnesses" includes Meta employees, officers, directors, agents, representatives, any other witnesses under Meta's control, and witnesses for whom Meta has asserted the common interest privilege, attorney-client privilege, or work product privilege (including witnesses who are represented by or whose depositions were defended by a lawyer from any law firm acting as counsel for Meta in this MDL or in any Related Action or in the JCCP). As soon as any such Meta witnesses are identified as discussed above, Meta **SHALL** promptly (and no later than three business days after the witness' identification) produce to the PI/SD Plaintiffs a copy of any deposition transcript (including copies of deposition exhibits) of such Meta witness. If no such deposition transcripts exist for any Meta witness, by that same deadline, counsel for Meta shall serve on counsel for the PI/SD Plaintiffs a certification that no such deposition transcript for that Meta witness exist.

Because these witnesses are under Meta's control and identifying them as persons who are going to provide testimony in some fashion (or work with experts) will be known internally to

Meta long before any such witnesses are identified to the PI/SD Plaintiffs, Meta is further **ORDERED** to take all preparatory steps necessary to allow for the timely production of deposition transcripts from the Related Actions, including obtaining any necessary third-party consents well ahead of time, or otherwise undertaking steps (such as obtaining modifications) to address or avoid limitations on timing of production due to a Protective Orders applicable in a Related Action.

### Meta's Documents Produced in the Related Actions After April 5, 2025

The PI/SD Plaintiffs request an order compelling Meta to produce in this MDL all nonduplicative documents produced by Meta in discovery in a Related Action after the fact discovery cutoff here. [Dkt. 2174 at 5]. Meta opposes.

The arguments of the Parties with regard to the documents are virtually the same as those with regard to the deposition transcripts, and accordingly, the same analysis applies. In addition, and specific to the documents sought, Meta asserts an additional argument that producing the documents "would not be proportional to Plaintiffs' needs given the amount of discovery already received and the high likelihood that further reproductions would either be cumulative of the over-2.5 million documents already produced to MDL/JCCP Plaintiffs, or not relevant." *Id.* at 7. Meta further argues that "the documents implicate different custodians, different search terms, different requests for targeted searches (including for state-specific data and documents), and different relevant time frames." *Id.* at 7-8.

As detailed above, whether documents from other cases are required to be produced as a supplement to discovery responses after the close of fact discovery under Rule 26(e) is highly fact-intensive and determined on a case-by-case basis. As noted, the duty to supplement is necessarily to be read in conjunction with the proper scope of discovery under Rules 26(b)(1) and 26(b)(2)(C)(iii), because the Federal Rules would not function rationally if supplementation of the same responses to discovery requests *after* the fact discovery cutoff is required to be broader in scope than the original responses to those same requests *during* the fact discovery period.

As discussed, the PI/SD Plaintiffs' briefing focuses primarily on the lack of burden issue and asserts generally that the documents sought are within the scope of relevance under Rule

11

26(b)(1). However, Plaintiffs' briefing does not explain why the documents produced by Meta in a Related Action are important in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1). A desire to have the documents, even if relevant, does not fully explain importance—there is, in every hotly litigated case, some set of relevant documents which are not important to resolve issues in dispute (either because they are duplicative or only barely relevant, for example). Nor does the PI/SD Plaintiffs' briefing explain how even the allegedly minimal burden on Meta would not outweigh the likely benefit of producing the documents now sought. *Id.*

Further, as noted, the duty to supplement under Rule 26(e) is, by the express language of the rule, required "if the party learns that *in some material respect* the disclosure or response is *incomplete* or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Here, Meta's refusal to produce the nonduplicative documents after the fact discovery cutoff is "incomplete" in the literal sense that those nonduplicative documents are currently absent from the discovery record in this MDL. But, as the moving party, the PI/SD Plaintiffs have not shown in *what material respect* the failure to produce those documents is incomplete or incorrect. For the duty to supplement under Rule 26(e) (which again is the basis asserted by Plaintiffs), a showing of incompleteness or incorrectness in a material respect is required, in addition to proper scope of relevance and proportionality under Rule 26(b)(1). Here, the PI/SD Plaintiffs have made an insufficient showing that the absence of these documents is incomplete in a material respect. This is a particularly significant issue in light of the fact that Meta has already produced millions of documents in this MDL.

Accordingly, the Court **DENIES** the PI/SD Plaintiffs' motion to compel Meta to produce all nonduplicative documents which Meta produced in discovery in any Related Actions after the close of fact discovery in this MDL.

## CONCLUSION

For all the reasons discussed herein, the Court **DENIES** the PI/SD Plaintiffs' motion to compel Meta to produce all deposition transcripts from all Related Actions for depositions of all Meta witnesses taken after the close of fact discovery in this MDL. The Court **GRANTS-IN-PART** the PI/SD Plaintiffs' motion to compel Meta to produce certain deposition transcripts of

Meta witnesses deposed in a Related Action after the fact discovery cutoff date here, as discussed herein.

Further, the Court **DENIES** the PI/SD Plaintiffs' motion to compel Meta to produce here all documents Meta produced in any Related Actions after the fact discovery cutoff in this MDL.

This **RESOLVES** Dkt. 2174.

**IT IS SO ORDERED.**

Dated: October 8, 2025

_____
PETER H. KANG
United States Magistrate Judge