# Preliminary Proposed Jury Instructions by State

# **Table of Contents**

**Page**

Count I: Alleged Violation of the Children's Online Privacy Protection Act ................... 6

    Instruction 1 ................................................................................................................... 6

Count III: Alleged Violation of California Business and Professions Code Section 17500 (California's False Advertising Law) ................................................................................ 16

    Instruction 2 ................................................................................................................. 16

Count IV: Alleged Violation of California Business and Professions Code Section 17200 (California's Unfair Competition Law) ............................................................................. 18

    Instruction 2.1 .............................................................................................................. 18

Count V: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices)........................................................................................................................... 21

    Instruction 3 ................................................................................................................. 21

Count VI: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices – Misrepresentation)....................................................................................... 25

    Instruction 3.1 .............................................................................................................. 25

Count VII: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices) ...................................................................................................................... 29

    Instruction 3.2 .............................................................................................................. 29

Count VIII: Alleged Violation of the Colorado Consumer Protection Act (Deceptive and Unfair Acts or Practices)................................................................................................... 33

    Instruction 3.3 .............................................................................................................. 33

Count IX: Alleged Violation of the Connecticut Unfair Trade Practices Act (Unfair and Deceptive Acts or Practices)............................................................................................ 37

    Instruction 4 ................................................................................................................. 37

Count X: Alleged Violation of the Delaware Consumer Fraud Act................................. 41

    Instruction 5 ................................................................................................................. 41

Count XI: Alleged Violation of the Delaware Deceptive Trade Practices Act ................ 47

    Instruction 5.1 .............................................................................................................. 47

Count XV: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Deceptive Acts or Practices) ..................................................................... 50

    Instruction 6 ................................................................................................................. 50

Count XVII: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Deceptive Trade Practices Under the Illinois Uniform Deceptive Trade Practices Act)..................................................................................................................... 56

Instruction 6.1 ................................................................................................ 56

Count XVI: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Unfair Acts or Practices) ................................................. 61

Instruction 6.2 ................................................................................................ 61

Count XVIII: Alleged Violation of the Indiana Deceptive Consumer Sales Act ............. 66

Instruction 7 ................................................................................................... 66

Count XIX: Alleged Knowing Violation of the Indiana Deceptive Consumer Sales Act and Incurable Deceptive Acts ................................................................. 71

Instruction 7.1 ................................................................................................ 71

Count XX: Alleged Violation of the Kansas Consumer Protection Act, K.S.A. § 50-626 (Deceptive Acts or Practices) ........................................................................... 74

Instruction 8 ................................................................................................... 74

Count XXI: Alleged Violation of the Kansas Consumer Protection Act, K.S.A. § 50-627 (Unconscionable Acts or Practices) ................................................................... 77

Instruction 8.1 ................................................................................................ 77

Count XXII: Alleged Violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Chapter § 367 et seq. ...................................................................................... 80

Instruction 9 ................................................................................................... 80

Count XXIII: Alleged Violation of Louisiana Unfair Trade Practices and Consumer Protection Act (Unfair or Deceptive Acts or Practices) .......................................... 89

Instruction 10 ................................................................................................. 89

Count XXVI : Alleged Violation of Minnesota Uniform Deceptive Trade Practices Act (Deceptive Trade Practices) ............................................................................. 93

Instruction 11 ................................................................................................. 93

Count XXVII: Alleged Violation of Minnesota Uniform Deceptive Trade Practices Act (Unfair or Unconscionable Acts or Practices) ...................................................... 98

Instruction 11.1 .............................................................................................. 98

Count XXIX: Alleged Violation of the Nebraska Consumer Protection Act (Deceptive Acts or Practices) ........................................................................................... 101

Instruction 12 ................................................................................................. 101

Count XXX: Alleged Violation of the Nebraska Consumer Protection Act (Unfair Acts or Practices) .................................................................................................. 103

Instruction 12.1 .............................................................................................. 103

Count XXXI: Alleged Violation of the Nebraska Uniform Deceptive Trade Practices Act (Deceptive Acts or Practices) .......................................................................... 104

Instruction 12.2 .............................................................................................. 104

Count XXXII: Alleged Violation of the Nebraska Uniform Deceptive Trade Practices Act (Unconscionable Acts or Practices) ................................................................. 106

    Instruction 12.3 ................................................................................................. 106

Count XXXIII: Alleged Violation of the New Jersey Consumer Fraud Act (Commercial Practices in Violation of the Act) .................................................................. 108

    Instruction 13 .................................................................................................... 108

Counts XXXIV, XXXV New York ................................................................................... 115

    Instruction 14-P ................................................................................................. 115

Counts XXXVI, XXXVII, XXXVIII New York ............................................................. 119

    Instruction 14.1-P .............................................................................................. 119

Count XXXIV: Alleged Violation of N.Y. Gen. Bus. Law § 349 (Deceptive Acts and Practices) ............................................................................................................ 121

    Instruction 14-D ................................................................................................ 121

Count XXXV: Alleged Violation of N.Y. Gen. Bus. Law § 350 (False Advertising) ... 123

    Instruction 14.1-D ............................................................................................. 123

Count XXXVI: Alleged Violation of Repeated and Persistent Fraud in Violation of N.Y. Exec. Law § 63(12) ................................................................................................ 126

    Instruction 14.2-D ............................................................................................. 126

Count XXXVII: Alleged Violation of Repeated and Persistent Illegality in Violation of N.Y. Exec. Law § 63(12) .............................................................................................. 128

    Instruction 14.3-D ............................................................................................. 128

Count XXXVIII: Alleged Violation of FTC Act § 5 in Violation of N.Y. Exec. Law § 63(12) ................................................................................................................... 129

    Instruction 14.4-D ............................................................................................. 129

Count XXXIX Alleged Violation of the North Carolina Unfair or Deceptive Trade Practices Act ............................................................................................................ 131

    Instruction 15 .................................................................................................... 131

Count XLVII: Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Deceptive Acts or Practices) ............................................. 137

    Instruction 16-P ................................................................................................. 137

Count XLVII: Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Deceptive Acts or Practices) ............................................. 139

    Instruction 16-D ................................................................................................ 139

Count XLVIII: Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Unfair Acts or Practices) ................................................. 142

    Instruction 16.1-D ............................................................................................. 142

Count L: Alleged Violation of the South Carolina Unfair Trade Practices Act ............. 144

    Instruction 17 ...................................................................................................... 144

Count LI: Alleged Violation of the Virginia Consumer Protection Act (Deceptive Acts or Practices) ................................................................................................................. 150

    Instruction 18 ...................................................................................................... 150

Count LIV: Alleged Violation of Wisconsin Deceptive Trade Practices Act (Deceptive Acts or Practices) ..................................................................................................... 156

    Instruction 19 ...................................................................................................... 156

**Count I: Alleged Violation of the Children's Online Privacy Protection Act**[1]

**Instruction 1**

The State Attorneys General allege that Meta violated the Children's Online Privacy Protection Act, which is known as COPPA., through Facebook and Instagram.[2] For the State Attorneys General to prevail on their claim under COPPA, the State Attorneys General must prove the following elements by a preponderance of the evidence:

1. Meta is an operator of a website or online service;
2. Meta's website or online service, or a portion thereof, was directed to children (i.e., individuals under the age of 13)[3] or that Meta had actual knowledge that it collected personal information from an individual child under the age of 13; and
3. Meta collected or maintained personal information from an individual child under the age of 13 without providing the protections required by COPPA.[4]

**Definitions**

*Child*

"Child" in this context means an individual under the age of 13. "Children" means people under the age of 13.

*Operator of a Website or Online Service*

---

[1] These preliminary instructions are not intended to be a complete or final set of instructions, and Meta reserves all rights with respect to any jury instructions to be used in any trial that may be scheduled in these cases.  In accordance with the Court's guidance, these preliminary instructions do not address affirmative defenses, remedies, or violation counting.  Meta also expressly does not waive any objection or argument that it may raise in opposition to any jury demand or argument by the State AGs that any of the State AGs' claims should be tried to a jury.

[2] *See* Multistate Compl., Dkt. 207 ¶ 632.

[3] The State AGs appreciate Meta's attempt to clarify the definition of "child." To address this concern, we propose a separate definition below, following the language of 16 C.F.R. § 312.2. This change fits the general format of the instructions by defining key terms in the elements and generally streamlines the instructions.

Because the definition of "child" and "children" under COPPA deviates substantially from the common understanding of the terms "child" and "children," Meta's position is that using COPPA's unique definition of those terms will limit jury confusion.

[4] These elements come from 15 U.S.C. § 6502(a)(1); 16 C.F.R. §§ 312.3, 312.10.

An "operator of a website or online service" is a person, including a corporation, who operates a commercial website or online service and collects or maintains personal information from or about users of or visitors to the website or online service.[5] Social networking sites and apps are websites or online services for the purposes of COPPA.[6]

### *Directed to Children*

"Directed to children" means the website or online service was targeted to individuals under the age of 13 children.[7] A website or online service as a whole can be directed to individuals under 13 children, or portions of the website or online service can be directed to individuals under 13 children.[8] A website or online service can be directed to children even if it does not target children as its primary audience.[9]

To determine whether a website or online service, or a portion of a website or online service, is directed to individuals under 13 children, you should look to the totality of the circumstances, including[10] consider its:

---

[5] 16 C.F.R. § 312.2.

[6] *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

[7] 16 C.F.R. § 312.2.

[8] 16 C.F.R. § 312.2.

[9] Meta objects to the inclusion of the proposed language because it misrepresents FTC guidance. A website or online service that does not target children as its primary audience cannot automatically be considered as being directed to children. These are, instead, "mixed audience" websites or online services set with considerably different obligations, including that COPPA only applies to users who identify themselves as, or whom the operator has actual knowledge of being, under the age of 13. 16 C.F.R. § 312.2.

The inclusion of the proposed language here does not misrepresent FTC guidance. A "mixed audience website or online service" is a website or online service that is directed to children but that does not target children as its primary audience (and which complies with particular age-gating practices). *See* 16 C.F.R. § 312.2. This is also the definition Meta itself provides below. The FTC considers such "'mixed audience' sites and services as a subset of the 'child-directed' category of websites or online services." Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16920 (April 22, 2025). It follows from this definition that a website or online service can be directed to children even if it does not target children as its primary audience.

[10] *See, e.g.,* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16937 (April 22, 2025) ("[T]he Commission reiterates that the inquiry in determining child-
(….continued)

- subject matter
- visual content,
- use of animated characters or child-oriented activities or incentives,
- music or other audio content,
- age of models,
- presence of child (i.e., under-13) celebrities or celebrities who appeal to children individuals under 13,
- language or other characteristics of the website or online service,
- language or other characteristics of advertising promoting or appearing on the website or online service, and

---

directness requires consideration of the totality of circumstances."); Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3984 (Jan. 17, 2024) (describing "the Rule's totality of the circumstances standard" and the 2013 amendments "[t]o make clear that [the FTC] will look to the totality of the circumstances to determine whether a site or service is directed to children…"). The State AGs note that the COPPA Rule merely identifies a list of factors that the FTC considers when assessing whether websites or online services are directed to children. *See* 16 C.F.R § 312.2.

Meta's proposal matches the explicit regulatory language from the FTC. *See* 16 CFR § 312.2 ("In determining whether a website or online service, or a portion thereof, is directed to children, the Commission will consider . . . ."). Conversely, the State AGs derive their suggested language from the FTC's response to comments specifically concerned with newly proposed factors for evaluating *intended audience* when determining child-directedness. *See* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16937 (April 22, 2025) ("In response to these comments, the Commission reiterates that the inquiry in determining child-directedness requires consideration of a totality of the circumstances. Depending on the facts, reviews or the age of users on similar websites or online services may receive little weight in determining audience composition or the intended audience of a website or online service."). The FTC's response to comments does not alter its explicit regulatory language regarding child-directedness. Furthermore, it does not support the State AGs' "including" language, and the State AGs do not cite to anything else that does.

8

- competent and reliable empirical evidence regarding[11] audience composition and intended audience.[12]

Third-party content hosted by a website or online service can be considered when determining whether the website or online service, or a portion thereof, is directed to individuals under 13 children under COPPA.[13]  "Third-party content" means words, pictures, video, audio, or any other form of communication that is not spoken or created by Meta.[14][15]

---

[11] The State AGs reject this insertion and propose simplifying this factor to better fit the language of the sentence that introduces the list of factors. Instructions concerning the competency and reliability of evidence are better suited for other parts of the jury instructions.

The State AGs reject language of 16 CFR § 312.2, which they, otherwise, fully incorporate. *See* 16 CFR § 312.2 ("The Commission will also consider *competent and reliable empirical evidence* regarding audience composition and evidence regarding the intended audience, including marketing or promotional materials or plans, representations to consumers or to third parties, reviews by users or third parties, and the age of users on similar websites or services." (emphasis added)). The FTC explicitly qualifies evidence regarding audience composition and intended audience while omitting the qualification for other factors, such as subject matter, visual content, and promotion. Additionally, as the State AGs themselves cite in the footnote above, interested parties have objected to the FTC's introduction of new evidentiary factors for intended audience on the basis that these factors are not "competent and reliable," emphasizing the importance of this phrasing for interpreting the law. *See* Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918, 16937 (April 22, 2025).

[12] 16 C.F.R. § 312.2.

[13] *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878 (N.D. Cal. 2024), appeal dismissed sub nom. Fla. Off. of Att'y Gen. v. Meta Platforms, Inc., No. 24-7019, 2024 WL 5443167 (9th Cir. Dec. 16, 2024), and motion to certify appeal denied, No. 4:22-MD-3047-YGR, 2025 WL 1182578 (N.D. Cal. Mar. 11, 2025).

[14] For the avoidance of doubt, Meta preserves its objection to the consideration of third-party content in determining whether a website or online service is directed to children and disputes that the jury should be so instructed.

[15] The State AGs reject this insertion because it is an inappropriate place to relitigate an issue the Court has already decided. Moreover, the State AGs disagree with the scope of this definition and with adding additional definitions that unnecessarily complicate the issues for the jury.

(….continued)

In addition, a website or online service is directed to children individuals under 13 if the operator has actual knowledge that it is collecting personal information directly from users of another website or online service that is directed to individuals under 13 children. This means that if you find an operator of a website or online service Meta has such actual knowledge that Instagram and/or Facebook is collecting personal information directly from users of another website or online service that is directed to individuals under 13, you should conclude that the operator's website or online service such service is directed to children, regardless of the factors listed above.[16] [17]

If you find that Instagram, Facebook, or a portion thereof, are directed to individuals under 13, you must additionally determine if either service is a "mixed audience" website or online service. If a A mixed audience website or online service is one that is directed to individuals under 13children but does not target individuals under 13children as its primary audience, then it[18] A mixed audience website or online service may not collect personal information from visitors unless it first collects age information from visitors in a neutral manner that does not default to a set age of 13 or older or encourage visitors to falsify age information. If the website or online service collects age information in a neutral manner, it shall not be deemed Mixed audience websites are not directed to individuals under 13 children with regard to visitors who identify themselves as 13 or older,[19] but it must still comply with COPPA's required protections with regard to those visitors who identify themselves as under 13 years old, as well as visitors for whom the operator has actual knowledge are under 13 years old.[20]

If the website or online service does not meet the criteria for being directed to individuals under 13, it is considered a "general audience" website or online service, and the

---

If the jury is instructed to consider third-party content as the AGs request, then Meta believes the jury needs to be instructed as to the meaning of "third-party content."

[16] 16 C.F.R. § 312.2 ("A website or online service shall be deemed directed to children when it has actual knowledge that it is collecting personal information directly from users of another website or online service directed to children.").

[17] The State AGs reject the insertions, but propose the following edits to make clear that the issue is whether the operator has the relevant actual knowledge, not the websites or online services themselves.

[18] *See* 16 C.F.R. § 312.2.

[19] *See id.*

[20] *Id.*; Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918 (Apr. 22, 2025); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

requirements of COPPA do not apply unless the operator has actual knowledge that it collected personal information from an individual under 13.[21] [22]

***Actual Knowledge***

"Actual knowledge" in this context means that an The operator of a website or online service was aware, understood, or perceived that it has "actual knowledge" that it collected personal information from an individual under 13 child.[23] if it has direct and

---

[21] *Complying with COPPA: Frequently Asked Questions*, FED. TRADE COMM'N, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 26, 2025).

[22] The State AGs reject framing the issues in terms of "mixed audience" and "general audience" websites or online services because doing so adds unnecessary jargon and overly complicates the questions on which these issues turn. *See* Judge Gonzalez Rogers' Standing Order re: Pretrial Instructions in Civil Cases at p. 6 ("Instructions shall be brief, clear, written in plain English…"). The State AGs' proposed instruction accurately represents the COPPA Rule for websites or online services that are directed to children but that do not have children as their primary audience (sometimes referred to by the FTC as "mixed audience" websites or online services).

Meta objects to the State AGs' assertion that defining the regulatory terms "mixed audience" and "general audience" is unnecessary given that important obligations hinge on *how* they are defined. The State AGs themselves misconstrued COPPA's commands in omitting the category of "mixed audience" website or online service above. *See supra* note 9. Whether a website or online service is directed to children, a mixed audience service, or a general one carries significant regulatory implications, including whether and to whom COPPA applies.

[23] *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023). (describing "actual knowledge" as involving an awareness of something, and approvingly quoting Black's Law Dictionary definitions "'to understand,' or 'the perception of the truth'")). Meta initially proposed an instruction that an operator "has actual knowledge that it collected personal information from an individual under 13 *if it was aware of doing so*." (emphasis added.) Despite Meta's assertion that "[c]ourts routinely define actual knowledge as being 'aware of' information," Meta's new proposed instruction, unlike the State AGs' proposed definition, does not include this language. Meta instead replaced it by "reaching for extraneous language" from a secondary source, as Meta claimed was improper in the State AGs' proposed instruction.

Courts routinely define actual knowledge as being "aware of" information, rendering reaching for extraneous language from secondary sources unnecessary. *See U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) ("[T]he term 'actual knowledge' refers to whether a person is 'aware of' information."); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 89 U.S. 178, 185 ("[T]o have "actual knowledge" of a piece of information, one must in fact be aware of it."); *Unicolors, Inc. v. H&M Hennes &*
(….continued)

clear knowledge of doing so.[24] Actual knowledge can be inferred based on the surrounding circumstances.[25] Actual knowledge may also be proved by showing that an operator acted with willful disregard.[26] It is not sufficient that Meta believes or suspects there are individuals under the age of 13 who use its services for COPPA to apply.[27] [28]

Whether an operator of a website or service has actual knowledge that it collected personal information of an individual under 13 child is highly fact-specific and can vary

---

*Mauritz, L.P.*, 595 U.S. 178, 184 (2022) ("Both case law and the dictionary tell us that 'knowledge' has historically meant and still means 'the fact or condition of being *aware* of something.' (emphasis in original)); *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F.Supp.3d 1103, 1112-13 (D. N.M. Apr. 29, 2020) (finding that "the COPPA Rule reserves liability only for those ad networks with a direct and clear awareness, as opposed to an awareness attributed to them based on what they reasonably should have known" and approvingly quoting Black's Law Dictionary definition of "[d]irect and clear knowledge, as distinguished from constructive knowledge").

[24] *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) ("[T]he term 'actual knowledge' refers to whether a person is 'aware of' information." (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 89 U.S. 178, 184 (2020))).

[25] The Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Jury Instruction 17.7, Comment (2017 ed., Mar. 2025); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187-88 (2022).

[26] Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024); The Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, Jury Instruction 17.7, Comment (2017 ed., Mar. 2025); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187-88 (2022).

[27] *See* Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 (proposed Jan. 11, 2024) ("The Commission declines to change the Rule to bring operators of general audience sites and services under COPPA's jurisdiction based on constructive knowledge. As the Commission noted in 2011, Congress has already rejected a constructive knowledge approach with respect to COPPA."); *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F.Supp.3d 1103, 1112-13 (D. N.M. Apr. 29, 2020).

[28] Meta's proposed instruction is not supported by the sources it cites and is misleading. Both of Meta's sources merely state that "constructive knowledge" is not sufficient. *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1113 (D.N.M. 2020) (rejecting "an awareness attributed to [operators] based on what they reasonably should have known"), *on reconsideration,* 516 F. Supp. 3d 1293 (D.N.M. 2021); Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 (proposed Jan. 11, 2024) (declining to change the COPPA rule to incorporate "constructive knowledge"). Neither source rejects consideration of what an operator "believes or suspects."

based on the case.[29] Some examples of facts that would establish that an operator has actual knowledge include, but are not limited to, the following:

- Where an operator of a website or service learns of an under-13 child's individual's age or grade from a concerned parent.[30]
- Where a child user enters age information indicating they are under 13.[31]
- Where a child under-13 individual announces their age in a post on a website or online service and the operator of that website or service monitors user posts.[32]
- Where an under-13 child individual announces their age in a post on a website or online service and a responsible member of the operator's organization sees the post or the operator is made aware of the post by someone else.[33]
- Where an operator willfully disregards the fact that an child individual is under the age of 13.[34]

Conversely, if an individual under 13 reveals age-identifying information, but no one in Meta's organization is aware of the individual's post, announcement, or disclosure, Meta may not have actual knowledge.[35][36]

---

[29] Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3978 (Jan. 17, 2013).

[30] Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59892 (Nov. 3, 1999); *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

[31] *Complying with COPPA: Frequently Asked Questions*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 2, 2025).

[32] *Id.*

[33] *Id.*

[34] Children's Online Privacy Protection Rule, 89 Fed. Reg. 2034, 2037 n.46 (proposed Jan. 11, 2024).

[35] *Complying with COPPA: Frequently Asked Questions*, FED. TRADE COMM'N, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last visited Sept. 26, 2025).

[36] The State AGs reject this insertion because it is likely to confuse jurors and misrepresents the FTC COPPA guidance. In particular, it is vague, applies only to one example in the preceding list of examples of facts that can establish actual knowledge, and does not account for the alternative ways that Meta could be found to have actual knowledge in the scenario it contemplates.

(….continued)

***Protections Required by COPPA***

The "protections required by COPPA" for any operator of a website or online service, or portion thereof, that is directed to individuals children under the age of 13 or any operator of a website or online service who has actual knowledge that it collects the personal information of an individual under 13 child are:

- Provide notice on its website or online service of what information it collects from individuals under 13 children, how it uses such information, and its disclosure practices for such information. Providing notice includes the following specific requirements:[37]
    - o  the operator must make reasonable efforts to provide notice directly to parents, taking into account available technology;[38] and,
    - o  the operator must also post a prominent and clearly labeled link to an online notice of its information practices with regard to individuals under children on the home or landing page or screen of its website or online service, as well as at each area of the website or online service where personal information is collected from individuals under 13 children.[39]
- Obtain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from individuals children under the age of 13.[40]
- Provide a reasonable means for a parent to review the personal information collected from a individuals child under the age of 13 and to refuse to permit its further use or maintenance.[41]
- Not condition an under-13 individual a child's participation in a game, the offering of a prize, or another activity on the under-13 individual child disclosing more personal information than is reasonably necessary to participate in such activity.[42]

---

The AGs' position is unfounded.  There is no basis for including only those examples that the AGs believe favor their position and excluding those examples that the AGs believe do not favor their position.  Omitting this example will present an overbroad definition of actual knowledge.  Contrary to the AGs' assertion, this example applies to nearly all preceding examples.

[37] 16 C.F.R. § 312.3.

[38] 16 C.F.R. § 312.4.

[39] *Id.*

[40] 16 C.F.R. § 312.3.

[41] *Id.*

[42] *Id.*

- Establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from individuals children under the age of 13.[43]
- Not retain personal information collected from individuals children under the age of 13 longer than is reasonably necessary to fulfill the purpose for which the information was collected.[44]

If you find that Meta operated a website or online service that was directed to individuals children under the age of 13 or that Meta had actual knowledge that it collected the personal information of any individuals children under the age of 13, then Meta was required to collect the personal information of those individuals children in a way that was consistent with these protections. Any failure to do so was a violation of COPPA.

### *Personal Information*

"Personal information" means individually identifiable information about an individual collected online, including:

- first and last names;
- a home or other physical address, including street name and name of a city or town;
- online contact information, such as an email address or other similar identifier that permits direct contact with a person online;
- a screen name or username that functions in the same manner as online contact information;
- a telephone number;
- a persistent identifier that can be used to recognize a user over time and across different websites or online services, including identifiers in cookies, an IP address, a processor or device serial number, or a unique device identifier;
- a photograph, video, or audio file where such file contains an individual under 13 child's image or voice;
- geolocation information sufficient to identify street name and name of a city or town; or
- information concerning the individual under 13 child or the parents of that individual under 13 child that the operator collects online from the individual under 13 child and combines with an identifier described in this definition.[45]

---

[43] *Id.*

[44] 16 C.F.R. § 312.10.

[45] 16 C.F.R. § 312.2.

**Count III: Alleged Violation of California Business and Professions Code Section 17500 (California's False Advertising Law)**[46]

**Instruction 2**

The People of the State of California ("California") allege that Meta violated California's False Advertising Law, which prohibits corporations from making or causing to be made untrue or misleading statements to the public.

For the People of the State of California to prevail on their its claim under the False Advertising Law, you must find that the People of the State of California have has proven each of the following elements by a preponderance of the evidence:[47]

1.  Meta made a statement that was viewable by or available to the public of California;[48]

---

[46] Meta's position is that the issue of whether Meta's alleged conduct constitutes a violation of the California False Advertising Law is a question of law for the court. *See Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 462 P.3d 461, 464–65 (Cal. 2020) ("UCL and FAL causes of action …are properly tried by the court rather than by a jury."). However, to the extent that the Court determines it would be appropriate for the jury to decide this issue, Meta believes that the proposed instructions as revised by Meta are sufficient.

Meta has demanded a jury trial in this federal case. *See* Meta's Amended Answer to the Multistate Attorneys General Complaint, Dkt. No. 167, at 93. The State AGs' position is that it is inappropriate to include argument as to whether certain claims are triable to the jury or judge in the context of this jury instructions exercise. To the extent Meta attempts to withdraw its jury demand in the future, the State AGs reserve all rights.

[47] *People v. Johnson & Johnson*, 77 Cal.App.5th 295, 317 (Ct. Cal. App. 2022).

[48] Where, as here, violations of the False Advertising Law ("FAL") emanate from California, the California Attorney General has authority to prosecute such violations regardless of whether those statements were directed to residents of California or another state. *See People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 522 (Cal. Ct. App. 2024) (upholding trial court's imposition of civil penalties nationwide based on FAL violations that occurred within California and stating that "the Legislature did not signal an intent to limit the Attorney General's authority to prosecute violations of the UCL or FAL to cases involving false or misleading statements directed at California residents.").

Meta disagrees that the State of California has the authority to seek penalties or any other recovery based on the purported harms of residents of states other than California. Because the parties agreed that violation counting will be addressed separately, it is premature to address this issue now. Meta reserves all rights.

2. The statement was made about Meta's services or for purposes of inducing the public to use Meta's services;
3. At the time it was made, the statement was untrue or misleading; and
4. At the time Meta made the statement, it knew or should have known the statement was untrue or misleading.

The People of the State of California do not need to prove any of the following: (1) that any individual relied on Defendant's statement; (2) that Defendant's statement caused any individual injury or harm; or (3) that Defendant intended to deceive the public.[49] Separate disclosures or disclaimers by Defendant cannot cure an untrue or misleading statement.[50][51]

**Definitions**

*Untrue or Misleading Statement*

A statement is untrue or misleading if it is actually false or likely to deceive a reasonable consumer.[52]

---

[49] *Chern v. Bank of America*, 544 P.2d 1310, 1316 (1976); *People v. Overstock.com, Inc.,* 12 Cal.App.5th 1064, 1079 (Cal. Ct. App. 2017); *People v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508, 532 (Cal. Ct. App. 2002); *Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 332 (Cal. Ct. App. 1998).

[50] *Chern v. Bank of America* 1 544 P.2d 1310, 1316 (Cal. 1976); *Prata v. Superior Court*, 91 Cal. App. 4th 1128, 1145 (Cal. Ct. App. 2001).

AGs reject this deletion. Meta does not dispute the accuracy of this description of California law. This short instruction will add clarity to the jury regarding the elements that must be proven by the People of the State of California.

[51] This instruction should be excluded because the instructions already make clear that California only needs to prove the above-listed elements, and it would confuse the jury to introduce additional concepts that are not elements of the False Advertising Law claim brought by the State.

[52] *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) ("Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'") (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 319 (Cal. Ct. App. 2022) ("The FAL 'substantively overlap's with the fraudulent prong of the UCL and the 'burden under these provisions is the same: To prevail on a claim under the false advertising law, the plaintiff must show that members of the public are likely to be deceived'. . . In assessing the likelihood of deception, the challenged advertisement or practice is typically viewed 'through the eyes of the 'reasonable consumer'—that is, the 'ordinary consumer acting

(….continued)

**Count IV: Alleged Violation of California Business and Professions Code Section 17200 (California's Unfair Competition Law)**

**Instruction 2.1**

The People of the State of California ("California") allege that Meta violated California's Unfair Competition Law, which prohibits corporations from engaging in unfair competition through unlawful, unfair, or fraudulent business acts or practices.

For the People of the State of California to prevail on their its claim under the Unfair Competition Law, you must find that the People of the State of California have has proven each of the following elements by a preponderance of the evidence:

1. Meta engaged in a business act or practice; and
2. The act or practice is either unlawful, unfair, or fraudulent.

The Unfair Competition Law imposes strict liability. It is not necessary for the People of the State of California to show that Defendant intended to injure anyone.[53] [54]

**Unlawful**

To prove a violation of the unlawful prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a business act or practice that violated COPPA (Count I) or the California False Advertising Law (Count III).[55] If the People of the State of California

---

reasonably under the circumstances." (citations removed) (cleaned up)); *Nationwide Biweekly Admin., Inc. v. Superior Ct.*, 9 Cal. 5th 279, 318 (Cal. 2020) ("Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." (citations omitted)).

[53] *Hewlett v. Squaw Valley Ski Corp.*, 54 Cal.App.4th 499, 520 (Cal. Ct. App. 1997). The State AGs reject this deletion. Meta does not dispute the accuracy of this description of California law. This short instruction will add clarity to the jury regarding the elements that must be proven by the People of the State of California.

[54] This instruction should be excluded because the instructions already make clear that California only needs to prove the above-listed elements, and it would confuse the jury to introduce additional concepts that are not explicit elements of the Unfair Competition Law claim brought by the State, which includes the concept of strict liability.

[55] *Abbott Labs. v. Superior Court*, 467 P.3d 184, 188 (Cal. 2020); *Nationwide Biweekly Admin., Inc. v. Superior Court*, 462 P.3d 461, 473 (Cal. 2020); *People v. Ashford Univ., LLC.* 100 Cal.App.5th 485, 507 (Cal. Ct. App. 2024).

have proven by a preponderance of the evidence that Defendant violated Count I or Count III, then the People have also proven by a preponderance of the evidence that Defendant violated the unlawful prong of the California Unfair Competition Law.[56][57]

## Unfair

To establish a violation of the unfair prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a business act or practice for which the harm to consumers outweighs the utility of the conduct.[58]

## Fraudulent

To establish a violation of the fraudulent prong of the California Unfair Competition Law, the People of the State of California must prove by a preponderance of the evidence that Meta engaged in a business act or practice that is likely to deceive members of the

---

[56] AGs disagree with the deletion of this language. The unfair competition law "'borrows' violations of other laws and treats them as unlawful practices independently actionable." *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1103 (Cal. Ct. App. 1996). "[T]he UCL specifically provides that that any practice that violates the FAL is also prohibited by the UCL." *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 462 P.3d 461, 473 (Cal. 2020). Not only are violations of other laws independently actionable as separate violations of the UCL, the remedies that the California Attorney General can seek under the UCL are cumulative. *See Ashford Univ., LLC*, 100 Cal. App. 5th at 508; *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 317 (Cal. Ct. App. 2022).

[57] This instruction should be excluded because the instructions already make clear that California only needs to prove the above-listed elements. Further, this proposed addition is unduly repetitive of the preceding sentence.

[58] *Progressive West Ins. Co. v. Superior Court,* 135 Cal.App.4th 263, 285 (Cal. Ct. App. 2005) ("Determination of whether a business practice or act is 'unfair' within the meaning of the UCA entails examination of the impact of the practice or act on its victim... *In brief,* the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." (emphasis added)); *Motors, Inc. v. Times Mirror Co.,* 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1980) ("To these open-ended definitions of unfairness, we would add this obvious thought: that the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim.... *In brief,* the court must weigh the utility of the defendant's conduct against the gravity of the harm to the plaintiff a weighing process quite similar to the one enjoined on us by the law of nuisance." (emphasis added)).

public. You are to consider the effect the alleged business act or practice would have on a reasonable consumer.[59]

The People of the State of California do not need to prove any of the following: (1) that any individual relied on Defendant's statement; (2) that Defendant caused any individual injury or harm; (3) that Defendant knew or should have known its statements were deceptive; or (4) that Defendant intended to deceive the public.[60][61]

---

[59] *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("A business practice is fraudulent under the UCL if members of the public are likely to be deceived. The challenged conduct 'is judged by the effect it would have on a reasonable consumer.'") (citations removed)).

[60] *Chern v. Bank of America*, 544 P.2d 1310, 1316 (Cal. 1976); *People v. Overstock.com, Inc.,* 12 Cal.App.5th 1064, 1079 (Cal. Ct. App. 2017); *People v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508, 532 (Cal. Ct. App. 2002); *Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 332 (Cal. Ct. App. 1998).

[61] This instruction should be excluded because the instructions already make clear that California only needs to prove the above-listed elements, and it would confuse the jury to introduce additional concepts that are not elements of the Unfair Competition Law claim brought by the State.

AGs disagree with this exclusion. Meta does not dispute the accuracy of this description of California law. This short instruction will add clarity to the jury regarding the elements that must be proven by the People of the State of California.

20

**Count V: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices)**

**Instruction 3**

The State of Colorado alleges that Meta violated the Colorado Consumer Protection Act ("CCPA"), which prohibits persons from engaging in unfair, or deceptive acts or practices in the course of their business.[62]  Colorado claims that Meta engaged in four types of violations of the CCPA.

Colorado claims that Meta violated the CCPA by making false representations about the characteristics of its goods or services.  For Colorado to prevail on its claim under the CCPA based on false representations about the characteristics of goods or services, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:[63]

1. Meta knowingly or recklessly made a false representation as to the characteristics, uses, benefits, alterations, or quantities of goods, or services, or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;[64]

2. The false representation occurred in the course of Meta's business; and

3. For conduct occurring before May 23, 2019: the false representation significantly impacted the public as actual or potential consumers of Meta's goods or services.[65]

---

[62] Colo. Rev. Stat. §§ 6-1-101 to -115.

[63] CJI-Civ. 29:1-2; *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1276 (10th Cir. 2020) (listing the elements of a claim under the CCPA).

[64] Colo. Rev. Stat. § 6-1-105(1)(e).

[65] Meta objects to the inclusion of this instruction because CCPA actions "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  Colo. Rev. Stat. § 6-1-115.

AGs object to this argument. The State of Colorado has alleged that Meta engaged in a years-long series of unfair and deceptive acts and practices dating back to at least 2012. Thus, the instruction is appropriate as to conduct occurring before May 23, 2019. Colorado is open to additional discussions but requires further information regarding the basis for Meta's objection.

(….continued)

21

**Definitions**

***Misrepresentation or False Representation***

A misrepresentation or false representation is a false statement that has the capacity or tendency to attract consumers, or has the capacity to deceive the recipient even if it did not.[66] However, a statement that is mere puffery—an exaggerated statement upon which no reasonable consumer would rely—is not actionable under the CCPA.[67] [68]

---

Meta's objection is based on the applicable statute of limitations for CCPA actions. *See F.T.C. v. Dalbey*, 2012 WL 32927, at *2 (D. Colo. Jan. 5, 2012) ("[A]cts or practices by Defendants which Plaintiffs cannot show were part of a series of acts or practices, the last of which occurred within the limitations period, may be barred by the CCPA's three-year limitations period."). To be within the three-year statute of limitations, the plaintiff must show that the defendant's series of separate acts "accumulate[d] into a single injury over the course of time." *Herrara v. City of Espanola*, 32 F.4th 980, 1000 (10th Cir. 2022).

[66] CJI-Civ. 29:3; This instruction is supported by *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142 (Colo. 2003).

[67] *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) ("[T]he CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." (quoting *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.,* 155 P.3d 427, 435-36 (Colo. Ct. App. 2006))).

[68] AGs object to this insertion. However, if the term "puffery" is included, the State of Colorado proposes the following definition: "Puffery" is defined as "a statement of opinion, the meaning of which would depend on the speaker's frame of reference." *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 436 (Colo. App. 2006). "If sellers make any 'statements of value or quality' with the 'purpose of having them accepted as a fact,' then they must be treated as representations of fact.'" *Renfro v. Champion Petfoods USA, In*c., 25 F.4th 1293, 1302 (10th Cir. 2022).

Meta's proposed definition of puffery is consistent with Colorado case law, and Meta objects to the AGs' proposed definition. *See 2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 2013 WL 5729932, at *4 (D. Colo. Oct. 18, 2013) ("Puffery, or a statement of opinion that no reasonable person would rely on as an assertion of fact, does not constitute an actionable statement of misrepresentation."). In *Park Rise*, the court cites to Black's Law Dictionary, which defines puffery "as the 'expression of an exaggerated opinion—as opposed to factual representations—with the intent to sell a good or service.'" 155 P.3d at 436 (quoting Black's Law Dictionary 1247 (8th ed.2004)); *see also Pappas v. Frank Azar & Assocs., P.C.*, 2007 WL 2683549, at *5 (D. Colo. Sept. 7, 2007) (recognizing that the court in *Park Rise* defined puffery as "the seller's own 'expression of an exaggerated opinion' of its goods or services").

*Knowingly/Recklessly*

A claim under the CCPA requires that the defendant knowingly or recklessly engaged in an unfair or deceptive trade practice and with an intent to mislead and deceive another.[69][70]  A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.[71]  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.[72]

**Significant Impact on the Public:**[73]

For conduct occurring before May 23, 2019, the deceptive trade practice must have significantly impacted the public as actual or potential consumers of the defendant's

---

[69] *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 63, 442 P.3d 986, 1001, *as modified* (Nov. 1, 2018) ("a misrepresentation [is] a false or misleading statement made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive [another]'" (quoting *Rhino Linings*, 62 P.3d at 147)).

[70] AGs object to this addition. In the State of Colorado, mental state provisions vary across different CCPA provisions, and the CCPA does not categorically require "knowing or reckless" conduct, or a specific intent to deceive. Because some of our specific claims do, however, require a "knowing" or "reckless" state of mind, it is appropriate to define those terms in the instructions.

Meta disputes the AGs' objection to this addition.  The CCPA provisions under which the AG brings its claims have a "knowing or reckless" requirement.  Additionally, Colorado courts interpret the CCPA to require intent to deceive.  *See Crowe*, 126 P.3d at 204 ("The crux of a CCPA claim is a deceptive trade practice, which, by definition, must be intentionally inflicted on the consumer public."); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("To be a deceptive trade practice under the CCPA, 'a false or misleading statement' must be made 'with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, *and* with an intent to mislead and deceive the plaintiff.'" (emphasis added) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003))).

[71] *Crowe*, 126 P.3d at 204; *Robert J. Hopp & Assocs., LLC*, 442 P.3d at 1001.

[72] *Id.*; C.R.S. § 6-1-105(4)(b).  .

[73] *Rhino Linings USA, Inc. v. Rocky Mtn. Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003); *Martinez v. Lewis,* 969 P.2d 213 (Colo. 1998).

goods or services.  In determining whether the challenged trade practice(s) significantly impacted the public as actual or potential consumers of the defendant's services, you shall consider all of the following:

- The number of consumers directly affected by the challenged trade practices;
- The relative sophistication of the consumers directly affected by the challenged trade practices;
- The bargaining power of the consumers directly affected by the challenged trade practices;
- Evidence that the challenged trade practices have previously impacted other consumers; and
- Evidence that the challenged trade practices have a significant potential to impact other consumers in the future.[74] [75]

No single factor is determinative, nor is it necessary that all be present.[76]

---

[74] Meta objects to the inclusion of this instruction because CCPA actions "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  Colo. Rev. Stat. § 6-1-115.

[75] AGs object to this argument. The State of Colorado has alleged that Meta engaged in a years-long series of unfair and deceptive acts and practices dating back to at least 2012. Thus, the instruction is appropriate as to conduct occurring before May 23, 2019. Colorado is open to additional discussions but requires further information regarding the basis for Meta's objection.

Meta's objection is based on the applicable statute of limitations for CCPA actions.  *See F.T.C. v. Dalbey*, 2012 WL 32927, at \*2 (D. Colo. Jan. 5, 2012) ("[A]cts or practices by Defendants which Plaintiffs cannot show were part of a series of acts or practices, the last of which occurred within the limitations period, may be barred by the CCPA's three-year limitations period.").  To be within the three-year statute of limitations, the plaintiff must show that the defendant's series of separate acts "accumulate[d] into a single injury over the course of time." *Herrara v. City of Espanola*, 32 F.4th 980, 1000 (10th Cir. 2022).

[76] *Shekarchian v. Maxx Auto Recovery, Inc.,* 481 P.3d 1026, 1034 (Colo. App. 2019).

If this instruction is to be included, Meta agrees to this insertion so long as "nor is it necessary that all be present," is deleted, as that phrase is not found in Colorado case law.  *See id.*; *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011); *Christenson v. Citimortgage, Inc.*, 2016 WL 7868812, at \*4 (D. Colo.

(….continued)

**Count VI: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices – Misrepresentation)**

**Instruction 3.1**

Colorado claims that Meta violated the CCPA by making misrepresentations about the standard, quality, grade, style, or model of its goods or services.  For Colorado to prevail on its claim under the CCPA based on misrepresentations about the standard, quality, grade, style, or model of goods or services, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:

1. Meta represented that goods, or services, are of a particular standard, quality, or grade, or that goods are of a particular style or model;

2. Meta knew or should have known that its goods or services are of another particular standard, quality, or grade, or that its goods are of another particular style or model than what was represented;[77]

3. The misrepresentation occurred in the course of Meta's business; and

4. For conduct occurring before May 23, 2019: the misrepresentation significantly impacted the public as actual or potential consumers of Meta's goods or services.

**Definitions**

*Misrepresentation or False Representation*

A misrepresentation or false representation is a false statement that has the capacity or tendency to attract consumers, or has the capacity to deceive the recipient even if it did

---

June 7, 2016); *Bernal v. Maximum Auto Search Corp.*, 2015 WL 5032049, at *3 (D. Colo. Aug. 26, 2015).

[77] Colo. Rev. Stat. § 6-1-105(1)(g).

not.[78]  However, a statement that is mere puffery—an exaggerated statement upon which no reasonable consumer would rely—is not actionable under the CCPA.[79] [80]

### Knowingly/Recklessly

A claim under the CCPA requires that the defendant knowingly or recklessly engaged in an unfair or deceptive trade practice and with an intent to mislead and deceive another.[81]

---

[78] CJI-Civ. 29:3; This instruction is supported by *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142 (Colo. 2003).

[79] *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) ("[T]he CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." (quoting *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 435-36 (Colo. Ct. App. 2006))).

[80] AGs object to this insertion. However, if the term "puffery" is included, the State of Colorado proposes the following definition: "Puffery" is defined as "a statement of opinion, the meaning of which would depend on the speaker's frame of reference." *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 436 (Colo. App. 2006). "If sellers make any 'statements of value or quality' with the 'purpose of having them accepted as a fact,' then they must be treated as representations of fact.'" *Renfro v. Champion Petfoods USA, In*c., 25 F.4th 1293, 1302 (10th Cir. 2022).

Meta's proposed definition of puffery is consistent with Colorado case law, and Meta objects to the AGs' proposed definition. *See 2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 2013 WL 5729932, at *4 (D. Colo. Oct. 18, 2013) ("Puffery, or a statement of opinion that no reasonable person would rely on as an assertion of fact, does not constitute an actionable statement of misrepresentation."). In *Park Rise*, the court cites to Black's Law Dictionary, which defines puffery "as the 'expression of an exaggerated opinion—as opposed to factual representations—with the intent to sell a good or service.'"  155 P.3d at 436 (quoting Black's Law Dictionary 1247 (8th ed.2004)); *see also Pappas v. Frank Azar & Assocs., P.C.*, 2007 WL 2683549, at *5 (D. Colo. Sept. 7, 2007) (recognizing that the court in *Park Rise* defined puffery as "the seller's own 'expression of an exaggerated opinion' of its goods or services").

[81] *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 63, 442 P.3d 986, 1001, *as modified* (Nov. 1, 2018) ("a misrepresentation [is] a false or misleading statement made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive [another]'" (quoting *Rhino Linings*, 62 P.3d at 147)).

[82] A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.[83]  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.[84] The phrase "knew or should have known" is satisfied by actual or constructive knowledge, meaning the knowledge that one exercising reasonable diligence should have.[85] [86]

***Significant Impact on the Public***

For conduct occurring before May 23, 2019, the deceptive trade practice must have significantly impacted the public as actual or potential consumers of the defendant's goods or services.  In determining whether the challenged trade practice(s) significantly impacted the public as actual or potential consumers of the defendant's services, you shall consider all of the following:

- The number of consumers directly affected by the challenged trade practices;

---

[82] AGs object to this addition. In the State of Colorado, mental state provisions vary across different CCPA provisions, and the CCPA does not categorically require "knowing or reckless" conduct, or a specific intent to deceive. Because some of our specific claims do, however, require a "knowing" or "reckless" state of mind, it is appropriate to define those terms in the instructions.

Meta disputes the AGs' objection to this addition.  The CCPA provisions under which the AG brings its claims have a "knowing or reckless" requirement.  Additionally, Colorado courts interpret the CCPA to require intent to deceive.  *See Crowe*, 126 P.3d at 204 ("The crux of a CCPA claim is a deceptive trade practice, which, by definition, must be intentionally inflicted on the consumer public."); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("To be a deceptive trade practice under the CCPA, 'a false or misleading statement' must be made 'with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, *and* with an intent to mislead and deceive the plaintiff.'" (emphasis added) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003))).

[83] *Crowe*, 126 P.3d at 204; *Robert J. Hopp & Assocs., LLC*, 442 P.3d at 1001.

[84] *Id.*; C.R.S. § 6-1-105(4)(b).

[85] *Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008).

[86] Meta objects to the AGs' insertion.  The *Lombard* case they cite was not discussing the "knowingly or recklessly" requirement of CCPA claims.  Rather, *Lombard* does not deal with consumer protection claims—it was brought under a premises liability statute.

- The relative sophistication of the consumers directly affected by the challenged trade practices;
- The bargaining power of the consumers directly affected by the challenged trade practices;
- Evidence that the challenged trade practices have previously impacted other consumers; and
- Evidence that the challenged trade practices have a significant potential to impact other consumers in the future.[87] [88]

No single factor is determinative, nor is it necessary that all be present.[89]

---

[87] Meta objects to the inclusion of this instruction because CCPA actions "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  Colo. Rev. Stat. § 6-1-115.

[88] AGs object to this argument. The State of Colorado has alleged that Meta engaged in a years-long series of unfair and deceptive acts and practices dating back to at least 2012. Thus, the instruction is appropriate as to conduct occurring before May 23, 2019. Colorado is open to additional discussions but requires further information regarding the basis for Meta's objection.

Meta's objection is based on the applicable statute of limitations for CCPA actions.  *See F.T.C. v. Dalbey*, 2012 WL 32927, at *2 (D. Colo. Jan. 5, 2012) ("[A]cts or practices by Defendants which Plaintiffs cannot show were part of a series of acts or practices, the last of which occurred within the limitations period, may be barred by the CCPA's three-year limitations period.").  To be within the three-year statute of limitations, the plaintiff must show that the defendant's series of separate acts "accumulate[d] into a single injury over the course of time." *Herrara v. City of Espanola*, 32 F.4th 980, 1000 (10th Cir. 2022).

[89] *Shekarchian v. Maxx Auto Recovery, Inc.,* 481 P.3d 1026, 1034 (Colo. App. 2019).

If this instruction is to be included, Meta agrees to this insertion so long as "nor is it necessary that all be present," is deleted, as that phrase is not found in Colorado case law.  *See id.*; *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011); *Christenson v. Citimortgage, Inc.*, 2016 WL 7868812, at *4 (D. Colo. June 7, 2016); *Bernal v. Maximum Auto Search Corp.*, 2015 WL 5032049, at *3 (D. Colo. Aug. 26, 2015).

**Count VII: Alleged Violation of the Colorado Consumer Protection Act (Deceptive Acts or Practices)**

**Instruction 3.2**

Colorado claims that Meta violated the CCPA by failing to disclose material information about its goods or services.  For Colorado to prevail on its claim under the CCPA based on failure to disclose material information about goods or services, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:[90]

1.  Meta failed to disclose information concerning goods, or services,

2.  Meta knew this information at the time of the advertisement or sale of the goods or services;

3.  The non-disclosed information was material;

4.  Meta omitted this information with the intent to induce consumers to enter into a transaction;

5.  The failure to disclose occurred in the course of Meta's business; and

6.  For conduct occurring before May 23, 2019: the failure to disclose significantly impacted the public as actual or potential consumers of Meta's goods or services.

**Definitions**

*Knowingly/Recklessly*

A claim under the CCPA requires that the defendant knowingly or recklessly engaged in an unfair or deceptive trade practice and with an intent to mislead and deceive

---

[90] Colo. Rev. Stat. § 6-1-105(1)(u); *Warner v. Ford Motor Co.*, 2008 WL 4452338, at *10 (D. Colo. Sept. 30, 2008) ("The plain language of section 6–1–105(1)(u) suggests that a plaintiff must prove the following four facts in order for a failure to disclose to be a deceptive trade practice actionable under the CCPA: (1) that the defendant failed to disclose information concerning goods, services or property to consumers; (2) that the defendant knew this information at the time of the advertisement or sale of the goods, services or property; (3) that the non-disclosed information was material; and (4) that the defendant did not disclose this information with the intent to induce the consumer to enter into a transaction.").

another.[91][92]  A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.[93]  A misrepresentation or false representation is recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.[94]

*Materiality*

For claims that Meta failed to disclose information concerning goods or services, you must find that the omitted information was material, which means that the omission concerns information that is important to consumers and is likely to affect their decisions or conduct regarding a good or service.[95] A fact is material if a reasonable person under the circumstances would regard it as important in deciding what to do. A fact may also be material even though a reasonable person might not regard it as important, if the person

---

[91] *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 63, 442 P.3d 986, 1001, *as modified* (Nov. 1, 2018) ("a misrepresentation [is] a false or misleading statement made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive [another]'" (quoting *Rhino Linings*, 62 P.3d at 147)).

[92] AGs object to this addition. In the State of Colorado, mental state provisions vary across different CCPA provisions, and the CCPA does not categorically require "knowing or reckless" conduct, or a specific intent to deceive. Because some of our specific claims do, however, require a "knowing" or "reckless" state of mind, it is appropriate to define those terms in the instructions.

Meta disputes the AGs' objection to this addition.  The CCPA provisions under which the AG brings its claims have a "knowing or reckless" requirement.  Additionally, Colorado courts interpret the CCPA to require intent to deceive.  *See Crowe*, 126 P.3d at 204 ("The crux of a CCPA claim is a deceptive trade practice, which, by definition, must be intentionally inflicted on the consumer public."); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("To be a deceptive trade practice under the CCPA, 'a false or misleading statement' must be made 'with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, *and* with an intent to mislead and deceive the plaintiff.'" (emphasis added) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003))).

[93] *Id.*

[94] *Id.*; C.R.S. § 6-1-105(4)(b).

[95] *See Warner*, 2008 WL 4452338 at *9-10; *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *6 (D. Colo. Dec. 17, 2010).

concealing it knows that the person receiving the information would regard it as important in deciding what to do. [96][97]

## *Significant Impact on the Public*

For conduct occurring before May 23, 2019, the deceptive trade practice must have significantly impacted the public as actual or potential consumers of the defendant's goods or services.  In determining whether the challenged trade practice(s) significantly impacted the public as actual or potential consumers of the defendant's services, you shall consider all of the following:

- The number of consumers directly affected by the challenged trade practices;
- The relative sophistication of the consumers directly affected by the challenged trade practices;
- The bargaining power of the consumers directly affected by the challenged trade practices;
- Evidence that the challenged trade practices have previously impacted other consumers; and
- Evidence that the challenged trade practices have a significant potential to impact other consumers in the future.[98][99]

---

[96] Colorado Civil Pattern Jury Instructions, Section 19:4.

[97] Meta disputes the AGs' replacement of Meta's proposed definition of materiality.  Meta's proposed definition comes from cases analyzing CCPA claims, whereas the AGs' proposed definition comes from a model jury instruction for fraud, not the model instruction for CCPA claims.

[98] Meta objects to the inclusion of this instruction because CCPA actions "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice."  Colo. Rev. Stat. § 6-1-115.

[99] AGs object to this argument. The State of Colorado has alleged that Meta engaged in a years-long series of unfair and deceptive acts and practices dating back to at least 2012. Thus, the instruction is appropriate as to conduct occurring before May 23, 2019. Colorado is open to additional discussions but requires further information regarding the basis for Meta's objection.

Meta's objection is based on the applicable statute of limitations for CCPA actions.  *See F.T.C. v. Dalbey*, 2012 WL 32927, at *2 (D. Colo. Jan. 5, 2012) ("[A]cts or practices by Defendants which Plaintiffs cannot show were part of a series of acts or practices, the last of which occurred within the limitations period, may be barred by the CCPA's three-year limitations period.").  To be within the three-year statute of

(….continued)

No single factor is determinative, nor is it necessary that all be present.[100]

---

limitations, the plaintiff must show that the defendant's series of separate acts "accumulate[d] into a single injury over the course of time." *Herrara v. City of Espanola*, 32 F.4th 980, 1000 (10th Cir. 2022).

[100] *Shekarchian v. Maxx Auto Recovery, Inc.,* 481 P.3d 1026, 1034 (Colo. App. 2019).

If this instruction is to be included, Meta agrees to this insertion so long as "nor is it necessary that all be present," is deleted, as that phrase is not found in Colorado case law. *See id.*; *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011); *Christenson v. Citimortgage, Inc.*, 2016 WL 7868812, at *4 (D. Colo. June 7, 2016); *Bernal v. Maximum Auto Search Corp.*, 2015 WL 5032049, at *3 (D. Colo. Aug. 26, 2015).

**<u>Count VIII: Alleged Violation of the Colorado Consumer Protection Act (Deceptive and Unfair Acts or Practices)</u>**

**Instruction 3.3**

Colorado claims that Meta violated the CCPA by engaging in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices.  For Colorado to prevail on its claim under the CCPA based on unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts or practices, you must find that Colorado has proven each of the following elements by a preponderance of the evidence:

1. Meta knowingly or recklessly engaged in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice;[101]

2. The act or practice occurred in the course of Meta's business; and

3. For conduct occurring before May 23, 2019: the act or practice significantly impacted the public as actual or potential consumers of Meta's goods or services.

**<u>Definitions</u>**

***Misrepresentation or False Representation***

A misrepresentation or false representation is a false statement that has the capacity or tendency to attract consumers, or has the capacity to deceive the recipient even if it did not.[102]  However, a statement that is mere puffery—an exaggerated statement upon which no reasonable consumer would rely—is not actionable under the CCPA.[103] [104]

---

[101] Colo. Rev. Stat. § 6-1-105(1)(rrr).

[102] CJI-Civ. 29:3; This instruction is supported by *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142 (Colo. 2003).

[103] *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) ("[T]he CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." (quoting *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.,* 155 P.3d 427, 435-36 (Colo. Ct. App. 2006))).

[104] AGs object to this insertion. However, if the term "puffery" is included, the State of Colorado proposes the following definition: "Puffery" is defined as "a statement of opinion, the meaning of which would depend on the speaker's frame of reference." *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co*., 155 P.3d 427, 436 (Colo. App. 2006). "If sellers make any 'statements of value or quality' with the 'purpose of having them accepted as a fact,' then they must be treated as representations of fact.'" *Renfro v. Champion Petfoods USA, In*c., 25 F.4th 1293, 1302 (10th Cir. 2022).

(….continued)

33

*Knowingly/Recklessly*

A claim under the CCPA requires that the defendant knowingly or recklessly engaged in an unfair or deceptive trade practice and with an intent to mislead and deceive another.[105][106]   A misrepresentation or false representation is knowingly made when it is made with knowledge of its untruth.[107]  A misrepresentation or false representation is

---

Meta's proposed definition of puffery is consistent with Colorado case law, and Meta objects to the AGs' proposed definition.  *See 2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 2013 WL 5729932, at *4 (D. Colo. Oct. 18, 2013) ("Puffery, or a statement of opinion that no reasonable person would rely on as an assertion of fact, does not constitute an actionable statement of misrepresentation.").  In *Park Rise*, the court cites to Black's Law Dictionary, which defines puffery "as the 'expression of an exaggerated opinion—as opposed to factual representations—with the intent to sell a good or service.'"  155 P.3d at 436 (quoting Black's Law Dictionary 1247 (8th ed.2004)); *see also Pappas v. Frank Azar & Assocs., P.C.*, 2007 WL 2683549, at *5 (D. Colo. Sept. 7, 2007) (recognizing that the court in *Park Rise* defined puffery as "the seller's own 'expression of an exaggerated opinion' of its goods or services").

[105] *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) ("A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice."); *State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 63, 442 P.3d 986, 1001, *as modified* (Nov. 1, 2018) ("a misrepresentation [is] a false or misleading statement made 'either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive [another]'" (quoting *Rhino Linings*, 62 P.3d at 147)).

[106] AGs object to this addition. In the State of Colorado, mental state provisions vary across different CCPA provisions, and the CCPA does not categorically require "knowing or reckless" conduct, or a specific intent to deceive. Because some of our specific claims do, however, require a "knowing" or "reckless" state of mind, it is appropriate to define those terms in the instructions.

Meta disputes the AGs' objection to this addition.  The CCPA provisions under which the AG brings its claims have a "knowing or reckless" requirement.  Additionally, Colorado courts interpret the CCPA to require intent to deceive.  *See Crowe*, 126 P.3d at 204 ("The crux of a CCPA claim is a deceptive trade practice, which, by definition, must be intentionally inflicted on the consumer public."); *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) ("To be a deceptive trade practice under the CCPA, 'a false or misleading statement' must be made 'with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, *and* with an intent to mislead and deceive the plaintiff.'" (emphasis added) (quoting *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003))).

[107] *Crowe*, 126 P.3d at 204; *Robert J. Hopp & Assocs., LLC*, 442 P.3d at 1001.

34

recklessly made when it is made without regard to the truth or falsity of a statement or advertisement.[108]

### *Significant Impact on the Public*

For conduct occurring before May 23, 2019, the deceptive trade practice must have significantly impacted the public as actual or potential consumers of the defendant's goods or services. In determining whether the challenged trade practice(s) significantly impacted the public as actual or potential consumers of the defendant's services, you shall consider all of the following:

- The number of consumers directly affected by the challenged trade practices;
- The relative sophistication of the consumers directly affected by the challenged trade practices;
- The bargaining power of the consumers directly affected by the challenged trade practices;
- Evidence that the challenged trade practices have previously impacted other consumers; and
- Evidence that the challenged trade practices have a significant potential to impact other consumers in the future.[109]

No single factor is determinative, nor is it necessary that all be present.[110]

### *Unfair Act or Practice[111]*

---

[108] *Id.*; C.R.S. § 6-1-105(4)(b).

[109] Meta objects to the inclusion of this instruction because CCPA actions "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred or within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Colo. Rev. Stat. § 6-1-115.

[110] *Shekarchian v. Maxx Auto Recovery, Inc.,* 481 P.3d 1026, 1034 (Colo. App. 2019).

If this instruction is to be included, Meta agrees to this insertion so long as "nor is it necessary that all be present," is deleted, as that phrase is not found in Colorado case law. *See id.*; *One Creative Place, LLC v. Jet Ctr. Partners, LLC*, 259 P.3d 1287, 1290 (Colo. App. 2011); *Christenson v. Citimortgage, Inc.*, 2016 WL 7868812, at *4 (D. Colo. June 7, 2016); *Bernal v. Maximum Auto Search Corp.*, 2015 WL 5032049, at *3 (D. Colo. Aug. 26, 2015).

[111] *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972).

35

An act or practice is "unfair" under the CCPA if it:

1. Offends public policy as it has been established by statutes, the common law, or otherwise, even if it the act or practice was not previously considered "unlawful";

2. Is immoral, unethical, oppressive, or unscrupulous; or

3. It causes substantial injury to consumers.

If a practice satisfies even one of these factors, it is unfair.[112][113]

---

[112] *See, e.g., State ex rel. Shikada v. Bristol-Myers Squibb Co.*, 526 P.3d 395, 443 (Haw. 2023); *Long v. Dell, Inc.*, 93 A.3d 988, 1001 (R.I. 2014); *Rohrer v. Knudson*, 2009 MT 35, 203 P.3d 759, 764; *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002).

[113] Meta objects to the AGs' addition of this entire section. The AGs have failed to point to any Colorado case law analyzing what constitutes an unfair act or practice under the CCPA. The cases that the AGs cite from Hawaii, Rhode Island, Montana, and Illinois are not relevant to Colorado—they apply the *Sperry* test under their respective consumer protection laws. Meta is not aware of any case defining "unfairness" within the meaning of the CCPA, and Meta reserves all rights with respect to any argument on the unfairness standard the jury should be instructed on.

**Count IX: Alleged Violation of the Connecticut Unfair Trade Practices Act (Unfair and Deceptive Acts or Practices)**

**Instruction 4**

The State of Connecticut claims that Meta violated the Connecticut Unfair Trade Practices Act ("CUTPA")[114] by engaging in an[115] unfair method of competition or an unfair or deceptive act or practice in the conduct of trade or commerce.[116]

For Connecticut to prevail on its claim under CUTPA, you must find that Connecticut has proven each of the following elements by a preponderance of the evidence: [117]

1.  Meta's actions were carried out in the course of trade or commerce;

2.  Meta's act or practice was either unfair or deceptive.[118]

**Unfair Practice**

Certain guidelines have been established as to what constitutes an unfair trade practice. To prove Meta engaged in an unfair trade practice, Connecticut must establish that Meta's conduct meets at least one of the three following criteria:

- It offends public policy as it has been established by statutes, the common law, or other established concept of unfairness; or

- It is immoral, unethical, oppressive, or unscrupulous; or

- It causes substantial injury to consumers, competitors, or other business persons.[119]

---

[114] Conn. Gen. Stat. §42-110b *et seq.*

[115] Conn. Jud. Branch Civ. Jury Instructions § 5.2-1.

[116] Conn. Gen. Stat.  § 42-110b(a).

[117] Conn. Jud. Branch Civ. Jury Instructions § 5.2-1.

[118] Conn. Jud. Branch Civ. Jury Instructions § 5.2-1.

[119] *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013).

All three criteria do not need to be satisfied to support a finding of unfairness.[120] A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.[121]

**Deceptive Practice**

To establish that Meta engaged in a deceptive practice, you must find that Connecticut has proven each of the following elements by a preponderance of the evidence.

1. Meta made a representation, or omission, or engaged in another practice, likely to mislead consumers. Connecticut does not have to prove that Defendant intended to deceive customers or that Defendant knew that its statement or act was false.[122][123]

2. Consumers interpreted the message reasonably under the circumstances; and

3. The misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct.[124]

**Definitions:**

---

[120] Meta's position is that this language is repetitive of the instruction above. The instruction already makes clear that Connecticut only needs to establish that Meta's conduct meets at least one of the three criteria.

AG's reject deletion. Meta does not dispute the accuracy of this description of Connecticut law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Connecticut.

[121] *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013).

[122] *Associated Inv. Co. Ltd. Partnership v. Williams Assocs. IV*, 230 Conn. 148, 156 (1994).

[123] This instruction should be excluded because the instructions already make clear that Connecticut only needs to prove listed elements, and it would confuse the jury to introduce additional concepts when those are not elements of the CUTPA claim brought by Connecticut.

This language is included in Conn. Jud. Branch Civ. Jury Instructions § 5.2-7 (Deceptive Acts or Practice), reflects CT case law, See *Associated Inv. Co. Ltd. Partnership v. Williams Assocs. IV*, 230 Conn. 148, 156 (1994), and will help ensure the jury understands this element.

[124] *Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990).

### Trade or Commerce

An action is carried out in Meta's trade or commerce if it is part of the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in Connecticut.

### Offends public policy

Connecticut asserts that Meta's conduct constituted an unfair trade practice because it offends public policy. The public policy of the State of Connecticut is to protect minors from harms and protect the privacy and safety of minors online. [*established public policy X*].[125][126] You must decide whether Meta's conduct offended that public policy. Violation of a statute does not automatically result in a CUTPA violation.[127]

### Immoral, unethical, oppressive, or unscrupulous

Connecticut asserts that Meta's conduct constituted an unfair trade practice because it was immoral, unethical, oppressive and unscrupulous. You need to determine whether Meta's conduct was "immoral, unethical, oppressive or unscrupulous."

### Substantial injury

---

[125] Meta's position is that Connecticut has the burden to establish the applicable public policy as a matter of law in order to submit this issue to a jury.

[126] AGs can accept the edit with modifications as added in red. This reflects the policy as articulated in the Complaint.

Meta maintains its objection to Connecticut's proposed instruction on public policy. Meta's position is that Connecticut has failed to establish the applicable public policy as a matter of law. In the Complaint, Connecticut alleged that Meta offended "public policy pertaining to the protection of minors from the harms of addiction as well as protecting the privacy and safety of minors online as embodied in COPPA." Multistate Compl., Dkt. 207 ¶ 896. Connecticut cannot rely on a federal statute that is primarily about data and privacy protections for minors, and not "harms" or "safety," to establish that the public policy as drafted is the public policy of the State of Connecticut. *See* 15 USC § 6501 *et seq.*; 16 C.F.R. § 312.1 *et seq.* And Connecticut cites to no other authority in support of that proposition.

[127] Conn. Jud. Branch Civ. Jury Instructions § 5.2-4.

Connecticut asserts that Meta committed an unfair trade practice because its conduct caused substantial harm to consumers. Connecticut must prove that Meta's conduct caused an injury that is: substantial.[128]

### Reasonably

As you consider whether consumers interpreted Meta's services descriptions reasonably, you are to consider that representations that are mere puffery—that is, exaggerations or overstatements expressed in broad, vague language—are not actionable under Connecticut law.[129][130]

### Willfulness

Connecticut is entitled to civil penalties for CUTPA violations only if those violations were engaged in willfully.[131] You may only consider whether Meta engaged in a willful violation of CUTPA if you have already determined that Connecticut has proven a CUTPA violation by a preponderance of the evidence.

A "willful" violation occurred if Meta knew or should have known that the conduct was deceptive or unfair in violation of CUTPA.[132]

---

[128] *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 622 n.13 (2015); *Kent Literary Club v. Wesleyan Univ.*, 338 Conn. 189, 231-32 (2021).

[129] *See NetScout Systems, Inc. v. Gartner, Inc.*, 334 Conn. 396, 424 n.15 (2020).

[130] AGs object to this inclusion and reserve all rights to further argument on the issue. If included, we can accept the definition with the edits proposed. *See NetScout Systems, Inc. v. Gartner, Inc.,* 334 Conn. 396, 424 n.15 (2020).

[131] Meta's position is that the issue of whether Meta's alleged conduct constitutes a willful violation of CUTPA is a question of law for the court. *See* Conn. Gen. Stat. § 42-110o(b) ("In any action brought under section 42-110m, if *the court finds…*" (emphasis added)). Furthermore, Connecticut is required to establish intent in order to be entitled to civil penalties. To the extent that civil penalties are not being presented as a question to the jury, it would be prejudicial for a jury to hear evidence on intent when Connecticut's claims otherwise do not require intent.

However, to the extent that the Court determines it would be appropriate for the jury to decide this issue, Meta believes that the proposed instructions as revised by Meta are sufficient.

[132] Conn. Gen. Stat. § 42-110o(b).

**Count X: Alleged Violation of the Delaware Consumer Fraud Act**

**Instruction 5**

The State of Delaware alleges that Meta violated the Delaware Consumer Fraud Act ("CFA"), which prohibits persons from engaging in unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within Delaware.[133] The CFA must be liberally construed and applied.[134] [135]

*Affirmative Acts*

For Delaware to prevail on its claim under the CFA, you must find that Delaware has proven each of the following elements by a preponderance of the evidence:

1.  Meta, a person;
2.  Engaged in any deception, fraud, false pretense, false promise, misrepresentation, or unfair practice;[136]
3.  In connection with the sale, lease, receipt, or advertisement of any merchandise;
4.  In part or wholly within the State of Delaware.[137]

Vague and unreliable statements intended to boost the appeal or service of a product do not qualify as fraud or misrepresentation.[138]  Moreover, an expression of opinion, when

---

[133] 6 *Del. C.* § 2512.

[134] 6 Del. C. § 2512

[135] Meta objects to this instruction. The instructions already explain the requirements for establishing a DCFA claim. It is unnecessary and misleading to instruct the jury to construe and apply the DCFA liberally, particularly when interpreting the law is the province of the Court.

[136] Given the many ways in which a CFA violation can occur, Meta proposes a separate instruction specifically on omissions to help simplify and clarify the elements. This instruction is included below.

[137] Meta's position is that Delaware must also prove that the alleged conduct occurred in part or wholly within Delaware. *See Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *4 (Del. Super. Ct. July 27, 2010) ("Thus, a DCFA claim is available only when at least some part of the defendant's alleged fraudulent conduct occurred in Delaware."). Delaware also acknowledges this requirement in the first sentence of its instructions.

[138] To provide guidance on what constitutes actionable misrepresentation or fraud, Meta proposes an instruction on puffery. *See Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC,* 318 A.3d 450, 463 (Del. Ch. 2024) (finding puffery "refers to a
(….continued)

clearly made as such, is not considered fraud or misrepresentation even if the opinion or speculation turns out to be untrue.  But if an opinion or speculation is false and made with the intent to deceive, then it is fraudulent just as a misstatement of fact is fraudulent.[139][140]

*Omissions*

---

vague statement boosting the appeal of a service or product that, because of its vagueness and unreliability, is immunized from regulation. Under Delaware law, a counterparty's optimistic statements praising its own skills, experience, and resources are mere puffery and cannot form the basis for a fraud claim" (citations and quotations omitted)); *Solow v. Aspect Res., LLC*, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004) (stating that, under Delaware law, a company's optimistic statements praising its own "skills, experience, and resources" are "mere puffery and cannot form the basis for a fraud claim").

[139] *See* Del. P.J.I. Civ. § 16.2 (2000) (citing *Consol. Fisheries Co. v. Consol. Solubles Co.*, 112 A.2d 30, 37 (Del. 1955); *Scott Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 317 (Del. Super. Ct. 1973); *Traylor Eng'g & Mfg. Co. v. Nat'l Container Corp.*, 70 A.2d 9, 13-14 (Del. Super. Ct. 1949)); *see also Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (holding that a sincerely held opinion or belief is not a false representation).

[140] AGs object to this insertion. None of the cited cases interpret the CFA and are not applicable. The Jury Instruction that Meta references does not apply to the CFA and should not be followed here.   Delaware's Civil Pattern Jury Instructions contain the following disclaimer: "The following jury instructions were compiled as a reference guide for the benefit of practitioners in Superior Court. The instructions are merely advisory and the practitioner should not use these instructions without also reviewing the applicable statutes, court rules, and case law." Del. P.J.I. Civ. At -i- (2000)"

Meta's position is that the cited cases are applicable for interpreting the DCFA. In *Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharms. LP*, the Supreme Court of Delaware identified the "three ways in which the Delaware Consumer Fraud Act differs from traditional legal and equitable actions for fraud, misrepresentation, and deceit" and held that "[i]n all other respects, 'the statute must be interpreted in light of established common law definitions and concepts of fraud and deceit.'" 136 A.3d 688, 693 (Del. 2016) (quoting *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)). Thus, it is appropriate to consider cases analyzing puffery under common law fraud and misrepresentation for purposes of interpreting the DCFA.  Moreover, at least one case interpreting the DCFA acknowledges that puffery is nonactionable. *See Fishlock v. Glob. Plasma Sols. Inc.*, 2024 WL 1156719, at *2 (D. Del. Mar. 18, 2024) (agreeing that certain statements are not actionable for fraud and DCFA claims because the statement are puffery or not clearly false).

42

The concealment, omission, or suppression of a material fact can also violate the CFA. To find that Meta violated the CFA by a concealment, omission, or suppression of fact, Delaware must prove by a preponderance of the evidence that:

1. Meta, a person;

2. Concealed, suppressed, or omitted a material fact;

3. With intent that others rely upon such concealment, suppression, or omission;

4. Any such conduct was in connection with the sale, lease, receipt, or advertisement of any merchandise; and

5. The conduct occurred in part or wholly within the State of Delaware.[141]

To find Meta liable under the CFA for a concealment, suppression, or omission, you must find by a preponderance of the evidence that Meta intended for others to rely on the concealment, suppression, or omission, and specifically in the case of an omission, that Meta had a duty to speak.[142] The concealed, suppressed, or omitted fact must also be

---

[141] *See Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *4 (Del. Super. Ct. July 27, 2010) ("Thus, a DCFA claim is available only when at least some part of the defendant's alleged fraudulent conduct occurred in Delaware.").

[142] *See Arcelik A.S. v. EI DuPont de Nemours & Co.*, No. 22-2634, 2023 WL 3862506, at *5 (3d Cir. June 7, 2023) ("[U]nder the DCFA—just as with the common law—omitting a material fact must occur 'in the face of a duty to speak.'" (quoting *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("[T]he only intent requirement of the Act is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment.").

Reject this insertion. This does not accurately reflect law. *S&R Assocs., L.P. v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. Ct. 1998). See also *Barba v. Carlson*, 2014 WL 1678246, at *6 (Del. Super. Ct. Apr. 8, 2014) (listing the requirements of fraudulent concealment which included duty to speak and then listening the requirements of the CFA and not including duty to speak); *Edwards v. William H. Porter, Inc.*, 1991 WL 165877, at *7 (Del. Super. Ct. July 26, 1991) (mentioning the existence of a duty to speak as a requirement of common law fraud but not in the context of the CFA.); *Sykes v. Jos. O'Neal & Sons Auctioneers & Appraisers*, 2009 WL 2449259, at *5 (Del. Com. Pl. Aug. 11, 2009) (mentioning and finding a duty to speak with regard to common law fraud but not mentioning it w/r/t the CFA)

Meta disagrees but has revised the instruction to avoid any confusion. The statute makes clear that to establish liability for a concealment, suppression, or omission, Delaware must establish that Meta intended for others to rely on the omission or
(….continued)

43

material, meaning that the omission would significantly affect a person's decision-making. [143][144]

It is not necessary to demonstrate that consumers relied upon Defendants' unfair or deceptive conduct. [145][146]

*Civil Penalties*

---

concealment and that the omitted or concealed fact must be material. 6 Del. C. § 2513(a); *see also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("the only intent requirement of the [DCFA] is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment"). Delaware provides no basis for why the instructions on these points should be stricken.

To the extent that Delaware is disputing the duty to speak requirement in the context of omissions, *Arcelik A.S. v. EI DuPont de Nemours & Co.*, squarely addresses this issue. 2023 WL 3862506, at *5 (3d Cir. June 7, 2023). The Third Circuit held that "under the DCFA—just as with the common law—omitting a material fact must occur "in the face of a 'duty to speak.'" *Id.* (quoting *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987)). None of the cases cited by Delaware expressly address whether a duty to speak is required for establishing liability by omission under the DCFA.

[143] *See, e.g., Omission*, Black's Law Dictionary (12th ed. 2024).

[144] Reject. The first part of the sentence is a mere restatement of the second element and unnecessary. The second half of the sentence does not rely on the Delaware court's interpretation of the CFA and would likely confuse jurors as inconsistent with the following statement, which Meta proposes to delete, but is an accurate statement of Delaware law.

[145] 6 Del. C. § 2513(a); *State ex rel. Brady v. Wellington Homes, Inc.*, 2001 Del. Super. LEXIS 73, at *5(Del. Super. Ct. Jan. 23, 2001).

[146] This instruction should be excluded because the instructions already make clear that Delaware only needs to prove the above-listed elements, and it would confuse the jury to introduce concepts of reliance when those are not elements of a CFA claim brought by the State.

Disagree. This clarifies an important aspect of the law. Meta does not dispute the accuracy of this description of Delaware law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Delaware.

While Delaware does not need to prove that Meta acted willfully to establish a violation of the CFA, Delaware is entitled to civil penalties only for CFA violations that were willful.[147]

**Definitions:**

*Person*

Means an individual, corporation, government, or governmental subdivision or agency, statutory trust, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity.[148]

*Advertisement*

Means the attempt by publication, dissemination, solicitation, or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise.[149]

*Merchandise*

Means any objects, wares, goods, commodities, intangibles, real estate, or services.[150]

*Unfair*

An act or practice is "unfair" when it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, violations of public policy as established by law, regulation, or judicial decision applicable in this State may be considered as evidence of substantial injury.[151][152]

---

[147] Del. Code Ann. tit. 6, § 2522. Meta rephrases for consistency with other Counts.

[148] 6 *Del.C.* §2511(7).

[149] 6 *Del. C.* § 2511(1).

[150] 6 *Del. C.* § 2511(6).

[151] 6 *Del. C.* § 2511(9).

[152] Meta objects to the inclusion of this language. The mention of unspecified public policies, regulations, and judicial decisions is likely to confuse and mislead the jury. Meta's position is that Delaware has the burden to specify and prove any violations (….continued)

*Willfulness*

To recover civil penalties under the CFA against Meta, Delaware must show that Meta's conduct was "willful." A "willful" violation occurs when the party committing the violation knew or should have known that the conduct was of the nature prohibited by the CFA.[153]

---

of public policies, regulations, or judicial decisions it intends to rely on as evidence of substantial injury and that such public policies, regulations, or judicial decision must have been properly pled in the Complaint. Meta's position is that any instruction to the jury must also instruct on the purportedly relevant public policy.

AG's object to the deletion. This language comes directly from the statute and its inclusion is appropriate. There was no requirement to identify violations of specific public policies in the complaint. That is not the pleading standard.

[153] 6 *Del. C.* § 2522(b); *State ex rel. Brady v. Wellington Homes, Inc.*, 2001 Del. Super. LEXIS 73, at *5(Del. Super. Ct. Jan. 23, 2001)

**Count XI: Alleged Violation of the Delaware Deceptive Trade Practices Act**

**Instruction 5.1**

The State of Delaware alleges that Meta violated the Delaware Deceptive Trade Practices Act (DTPA) which prohibits persons from engaging in conduct which creates a likelihood of confusion or of misunderstanding.[154]

For Delaware to prevail on its claim under the DTPA, you must find that Delaware has proven, by a preponderance of the evidence, that Meta, in the course of its business, engaged in at least one of the following deceptive practices:[155]

1. Meta, a person[156]
2. Represented that its goods or services have approval, characteristics, uses, benefits, or quantities that they did not have; or
3. Advertised goods or services with intent not to sell them as advertised; or
4. Engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

Vague and unreliable statements intended to boost the appeal of a service or product do not violate the DTPA.[157]  Moreover, an expression of opinion, when clearly made as such, is not considered fraud or misrepresentation even if the opinion or speculation turns out to be untrue. But if an opinion or speculation is false and made with the intent to deceive, then it is fraudulent just as a misstatement of fact is fraudulent.[158]

---

[154] 6 *Del. C.* § 2531 *et seq.*

[155] 6 *Del. C.* §§ 2532 (a)(5), (9), (12).

[156] 6 *Del. C.* § 2533(e).

[157] To provide guidance on what constitutes actionable misrepresentation, Meta proposes an instruction on puffery. *See Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC,* 318 A.3d 450, 463 (Del. Ch. 2024) (stating that puffery "refers to a vague statement boosting the appeal of a service or product that, because of its vagueness and unreliability, is immunized from regulation. Under Delaware law, a counterparty's optimistic statements praising its own skills, experience, and resources are mere puffery and cannot form the basis for a fraud claim" (citations and quotations omitted)); *Solow v. Aspect Res.*, LLC, 2004 WL 2694916, at *3 (Del. Ch. Oct. 19, 2004) (stating that, under Delaware law, a company's optimistic statements praising its own "skills, experience, and resources" are "mere puffery and cannot form the basis for a fraud claim").

[158] Del. P.J.I. Civ. § 16.2 (2000) (citing *Consol. Fisheries Co. v. Consol. Solubles Co.*, 112 A.2d 30, 37 (Del. 1955); *Scott Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 317 (Del. Super. Ct. 1973); *Traylor Eng'g & Mfg. Co. v. Nat'l Container Corp.*, 70 A.2d 9, 13-14 (Del. Super. Ct. 1949)); *see also Accenture Glob. Servs. GMBH v.*
(….continued)

47

It is not necessary to demonstrate an intent to deceive. You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers.[159]

It is not necessary to demonstrate that Defendants' deceptive actions[160] harmed any consumers or caused them to lose money.[161]

It is not necessary to demonstrate that Defendants' deceptive actions caused consumers actual confusion or misunderstanding.[162][163]

---

*Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (holding that a sincerely held opinion or belief is not a false representation).

AGs object to this insertion. None of the cited cases, except one, interpret the DTPA and are otherwise not applicable or support the statements made.    The Jury Instruction that Meta references does not apply to the DTPA and should not be followed here.   Delaware's Civil Pattern Jury Instructions contain the following disclaimer: "The following jury instructions were compiled as a reference guide for the benefit of practitioners in Superior Court. The instructions are merely advisory and the practitioner should not use these instructions without also reviewing the applicable statutes, court rules, and case law." Del. P.J.I. Civ. At -i- (2000).—

Meta disagrees. Delaware acknowledges that *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) is applicable to the DTPA, and this case holds that a sincerely held opinion or belief does not violate the DTPA. Therefore, Meta's position is that an instruction on expression of opinion is appropriate and references Delaware's Civil Pattern Jury Instructions on this concept. Del. P.J.I. Civ. § 16.2 (2000). Delaware does not provide any rationale for why the model instruction would not similarly apply to a DTPA claim involving an alleged misrepresentation and provides no alternative language.

[159] 6 *Del. C.* § 2533(a).

[160] Meta objects to Delaware's phrasing of "Defendants' deceptive actions" throughout the instructions because it presumes that Meta committed deceptive conduct.

[161] 6 *Del. C.* §§ 2532(b), 2533(a).

[162] 6 *Del. C.* §§ 2532(b).

[163] These three instructions on intent, harm, and causation should be excluded because the instructions already make clear that Delaware only needs to prove one of the enumerated violations, and it would confuse the jury to introduce concepts of intent, harm, and causation when those are not elements of a DTPA claim brought by the State.

AG's object to deletion. These instructions clarify an important aspect of the law. Meta does not dispute the accuracy of this description of Delaware law. This short

(….continued)

*Civil Penalties*

While Delaware does not need to prove that Meta acted willfully to establish a violation of the DTPA, Delaware is entitled to civil penalties only for DTPA violations that were willful.[164]

**Definitions**

*Person*

Means an individual, corporation, government, or governmental subdivision or agency, statutory trust, business trust, estate, trust, partnership, unincorporated association, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity.[165]

*Willfulness*

To recover civil penalties under the DTPA against Meta, Delaware must show that Meta's conduct was "willful." A "willful" violation occurs when the party committing the violation knew or should have known that the conduct was of the nature prohibited by the Act.[166]

---

instruction will add clarity to the jury regarding the elements that must be proven by the State of Delaware.

[164] 6 Del. Code Ann. tit. 6, § 2533(e). Meta rephrases for consistency with the other Counts.

[165] 6 *Del. C.* § 2531(5).

[166] 6 *Del. C.* § 2533(e).

**Count XV: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Deceptive Acts or Practices)**

**Instruction 6**

The People of the State of Illinois alleges that Meta violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which prohibits persons from engaging in deceptive acts or practices in the conduct of any trade or commerce.

Illinois alleges that Meta violated the ICFA by engaging in deceptive acts, practices, and omissions.

For the People of the State of Illinois to prevail on its claim under the ICFA based on deceptive acts or practices, you must find that Illinois proved each of the following elements[167] by a preponderance of the evidence:

1.    Meta engaged in a deceptive act or practice;
2.    Meta engaged in the deceptive act or practice with the intent that consumers rely on the deceptive act or practice; and
3.    The deceptive act or practice occurred in the course of conduct involving trade or commerce.[168]

The State of Illinois need not establish that any person has in fact been misled, deceived, or damaged[169] nor that any consumer was harmed.[170][171]

---

[167] 815 ILCS 505/2; *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996); *People ex rel. Madigan v. United Constr. of Am.*, 367 Ill. Dec. 79, 86 (2nd Dist. 2012).

[168] *See People ex rel. Madigan v. United Constr. of Am.*, 2012 IL App (1st) 120308, ¶ 16, 981 N.E.2d 404, 411.

[169] 815 ILCS 505/2; *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002) (quoting 815 ILCS 505/2).

[170] This instruction should be excluded because the instructions already make clear that Illinois only needs to prove the above listed elements, and it would confuse the jury to introduce concepts that are not included in the elements.

AG's object to deletion. These instructions clarify an important aspect of the law, specifically, 815 ILCS 505/2 ("[deceptive practices] are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."). Meta does not dispute the accuracy of this description of Illinois law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Illinois.

[171] *People ex rel. Madigan v. United Constr. of Am.*, 367 Ill. Dec. 79, 86 (2nd Dist. 2012).

**Deceptive Act or Practice**

A deceptive act or practice includes, but is not limited to the use or employment of any:

- deception;
- fraud;
- false pretense;
- false promise;
- misrepresentation; or
- concealment, suppression or omission of any material fact

The People of the State of Illinois need only show that Defendant engaged in any one of the above deceptive acts or practices.[172]

The People of the State of Illinois must prove that the alleged act or practice possessed capacity to deceive, or created the likelihood of deception.[173][174] For both affirmative

---

[172] This instruction could unnecessarily confuse the jury. Per the language of the statute, the acts listed are nonexclusive examples of violative conduct. *See* 815 ILCS 505/2.

AGs object to the deletion of this sentence.

[173] *Lopez v. Castro,* 2025 IL App (1st) 231536-U, ¶ 32*; Aliano v. Ferriss*, 370 Ill. Dec. 392, 400 (1st Dist. 2013); *Garcia v. Overland Bond & Inv. Co.*, 218 Ill. Dec. 36, 40 (1st Dist. 1996); *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill. App. 3d 843, 857 (2nd Dist. 1991).

[174] *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive.").

misrepresentations and omissions, Illinois must prove that Meta misrepresented or omitted a *material* fact.[175][176]

*Materiality*

A material fact exists where a reasonable consumer would have acted differently knowing the information, or if it concerned the type of information upon which a consumer would be expected to rely in making a decision.[177] Claims that are stated explicitly or

---

[175] *See Heastie v. Cmty. Bank of Greater Peoria*, 690 F. Supp. 716, 718 (N.D. Ill. 1988) ("The Seventh Circuit, along with Illinois appellate courts, has adopted the position that, in affirmative misrepresentation or omission cases, plaintiffs must allege the misrepresentation of a material fact."); *Total Staffing Sols., Inc. v. Staffing, Inc.*, 2023 IL App (1st) 220533, ¶ 54, 227 N.E.3d 14, 31 ("Where the deception is based on a misrepresentation, that misrepresentation must be material and must relate to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question." (quoting *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 857, 213 Ill.Dec. 304, 658 N.E.2d 1325 (1995))); *Vanzant v. Hill's Pet Nutrition Inc.*, 2025 WL 296062, at *8 (N.D. Ill. Jan. 24, 2025) ("Where an ICFA claim is based on misrepresentations or omissions in statements made to consumers, the misrepresentation or omissions 'must also be material to reasonable consumers.'" (quoting *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 n.6 (7th Cir. 2024))).

[176] AGs can accept this sentence if materiality is limited to omissions. Otherwise, we object to the insertion.

Meta's instruction as proposed is consistent with the case law, and Meta objects to the AGs' proposed deletion.

[177] *Connick v. Suzuki Motor Co.*, 221 Ill.Dec. 389, 400 (1996); *Kitzes v. Home Depot, U.S.A., Inc.,* 374 Ill.App.3d 1053, 1061 (1st Dist. 2007).

significantly involve health are presumed material.[178][179] Statements that are puffery—that is, statements reasonably to be expected of a seller as to the degree of quality of his or her good or service, the truth or falsity of which cannot be precisely determined—are not actionable under the ICFA.[180][181] Vague statements about safety are non-actionable puffery.[182][183]

**Intent That the Consumer Rely on the Deception**

Should you find that Meta engaged in deceptive acts or practices, to prove that Meta violated the ICFA, the People of the State of Illinois must prove that Meta intended for consumers to rely on the deceptive acts or practices.[184]

---

[178] *Aliano v. Ferriss*, 370 Ill. Dec. 392, 400 (1st Dist. 2013); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (claims that significantly involve health are presumptively material); *FTC v. NPB Advertising*, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that, because an express claim inherently misleads a consumer, an express claim is presumptively material); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190-91 (N.D. Ga. 2008) (applying the presumption of materiality to claims that dietary supplements were effective to treat weight loss and sexual dysfunction); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 965 (N.D. Ill. 2008) (stating that a medical, health related claim is material). Illinois statute explicitly points to FTC. 815 ILCS 505/2 ("In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.").

[179] Meta's position is that this statement is a confusing, inappropriate instruction to the jury. The cases cited by the AG deal with claims brought by the FTC under the FTC Act. There is no authority to support instructing the jury on a presumption of materiality for the purpose of evaluating whether there has been a violation of the ICFA.

[180] *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005); *Mabry v. Standard Indus., Inc.*, No. 20 C 376, 2020 WL 2112372, at *4 (N.D. Ill. May 4, 2020).

[181] AGs can agree with the deletion only if the additional language following is also deleted. Otherwise, we object to the deletion of the sentence, "Claims that are stated explicitly or significantly involved health are presumed material" and object to the proposed insertion that follows. Meta rejects the AGs' proposed changes.

[182] *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 841 (N.D. Ill. 2024).

[183] AG's object to this addition and reserve all rights.

[184] *See* 815 ILCS 505/2; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012).

Evidence about the facts and circumstances surrounding Meta's conduct may be used to establish intent.[185] In deciding whether the Defendant acted with this intent, you may consider the nature of the Defendant's statements or conduct including whether the representations are the types of representations a consumer would rely upon, what the Defendant knew or should have known at the time, and the natural consequences of the Defendant's actions.[186][187]

While Illinois does not need to prove Meta acted with an intent to defraud consumers to prove Meta violated the ICFA, Illinois is entitled to additional civil penalties only for ICFA violations that were entered into with an intent to defraud.[188]

**Conduct of Trade or Commerce**

Should you find that Meta engaged in deceptive acts or practices, to prove that Meta violated the ICFA, the People of the State of Illinois must prove that Meta engaged in any deceptive acts or practices in the course of conduct involving trade or commerce. An action is carried out in Meta's trade or commerce if it is part of the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the People of the State of Illinois.[189]

---

[185] *See Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (2d Dist. 1992).

[186] *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 752 (1st Dist. 1990); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 197 Ill. App. 3d 948, 953 (1st Dist. 1990); *Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (2nd Dist. 1992); *Miller v. William Chevrolet*, 326 Ill. App. 3d 642, 657-659 (1st Dist. 2001).

[187] This sentence seems to elaborate on types of circumstantial evidence that may be considered, but these specific examples are not explicitly discussed by the cases cited.

AGs object to removal of this section, disagree with Meta's statement regarding the interpretation of the case law, and reserve all rights.

[188] *See* 815 ILCS 505/7(b).

[189] 815 ILCS 505/1(f).

The phrase "trade or commerce" is to be given a liberal construction so that the broad purposes of the Illinois Consumer Fraud Act ICFA might be achieved.[190][191]

---

[190] 815 ILCS 505/11a; *Oliveira v. Amoco Oil Co.*, 267 Ill. Dec. 14, 29 (2002); *People ex rel. Fahner v. Walsh*, 122 Ill. App. 3d 481, 486 (2nd Dist. 1984); *People ex rel. Daley v. Datacom Systems Corp.*, 176 Ill. App. 3d 697, 708 (1st Dist. 1988); *People ex rel. Hartigan v. Maclean Hunter Publishing Corp.,* 119 Ill. App. 3d 1049, 1053-54 (1st Dist. 1983).

[191] Meta's position is that this instruction is both unnecessary and unduly suggestive.  The jury's role is not statutory interpretation, which is a question of law.

AG's object to the deletion of this instruction as it is consistent with Illinois law. 815 ILCS 505/7(b).

**Count XVII: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Deceptive Trade Practices Under the Illinois Uniform Deceptive Trade Practices Act)**

**Instruction 6.1**

Illinois also alleges that Meta violated the ICFA by engaging in prohibited practices under Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA").

For the People of the State of Illinois to prevail on its claim under Count XVII the ICFA based on deceptive acts or practices, you must find that Illinois has proven each of the following elements by a preponderance of the evidence:

1.    Meta engaged in a deceptive act or practice;
2.    Meta engaged in the deceptive act or practice with the intent that consumers rely on the deceptive act or practice; and
3.    The deceptive act or practice occurred in the course of conduct involving trade or commerce.[192]

**Deceptive Act or Practice**

The ICFA provides that a deceptive act or practice includes any practice described in Section 2 of the UDTPA.

The People of the State of Illinois need only show that Defendant engaged in any one of the above deceptive acts or practices[193]

The People of the State of Illinois must prove that the alleged act or practice possessed capacity to deceive, or created the likelihood of deception.[194][195] For both affirmative

---

[192] *See People ex rel. Madigan v. United Constr. of Am.*, 2012 IL App (1st) 120308, ¶ 16, 367 Ill. Dec. 79, 86, 981 N.E.2d 404, 411 (1st Dist. 2012).

[193] This instruction could unnecessarily confuse the jury. Per the language of the statute, the acts listed are nonexclusive examples of violative conduct. *See* 815 ILCS 505/2.

[194] *Lopez v. Castro,* 2025 IL App (1st) 231536-U, ¶ 32*; Aliano v. Ferriss*, 370 Ill. Dec. 392, 400 (1st Dist. 2013); *Garcia v. Overland Bond & Inv. Co.*, 218 Ill. Dec. 36, 40 (1st Dist. 1996); *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill. App. 3d 843, 857 (2nd Dist. 1991).

[195] *See Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive.").

misrepresentations and omissions, Illinois must prove that Meta misrepresented or omitted a *material* fact.[196][197]

### *Materiality*

A material fact exists where a reasonable consumer would have acted differently knowing the information, or if it concerned the type of information upon which a consumer would be expected to rely in making a decision.[198] Claims that are stated explicitly or significantly involve health are presumed material.[199][200] Statements that are puffery—that

---

[196] *See Heastie v. Cmty. Bank of Greater Peoria*, 690 F. Supp. 716, 718 (N.D. Ill. 1988) ("The Seventh Circuit, along with Illinois appellate courts, has adopted the position that, in affirmative misrepresentation or omission cases, plaintiffs must allege the misrepresentation of a material fact."); *Total Staffing Sols., Inc. v. Staffing, Inc.*, 2023 IL App (1st) 220533, ¶ 54, 227 N.E.3d 14, 31 ("Where the deception is based on a misrepresentation, that misrepresentation must be material and must relate to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question." (quoting *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 857, 213 Ill.Dec. 304, 658 N.E.2d 1325 (1995))); *Vanzant v. Hill's Pet Nutrition Inc.*, 2025 WL 296062, at *8 (N.D. Ill. Jan. 24, 2025) ("Where an ICFA claim is based on misrepresentations or omissions in statements made to consumers, the misrepresentation or omissions 'must also be material to reasonable consumers.'" (quoting *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 n.6 (7th Cir. 2024))).

[197] AGs can accept this sentence if materiality is limited to omissions. Otherwise, we object to the insertion.

Meta's instruction as proposed is consistent with the case law, and Meta objects to the AGs' proposed deletion.

[198] *Connick v. Suzuki Motor Co.*, 221 Ill.Dec. 389, 400 (1996); *Kitzes v. Home Depot, U.S.A., Inc.,* 374 Ill.App.3d 1053, 1061 (1st Dist. 2007).

[199] *Aliano v. Ferriss*, 370 Ill. Dec. 392, 400 (1st Dist. 2013); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (claims that significantly involve health are presumptively material); *FTC v. NPB Advertising*, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that, because an express claim inherently misleads a consumer, an express claim is presumptively material); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1190-91 (N.D. Ga. 2008) (applying the presumption of materiality to claims that dietary supplements were effective to treat weight loss and sexual dysfunction); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 965 (N.D. Ill. 2008) (stating that a medical, health related claim is material).

[200] Meta's position is that this statement is a confusing, inappropriate instruction to the jury.  The cases cited deal with claims brought by the FTC under the FTC Act. (….continued)

is, statements reasonably to be expected of a seller as to the degree of quality of his or her good or service, the truth or falsity of which cannot be precisely determined—are not actionable under the ICFA.[201][202]  Vague statements about safety are non-actionable puffery.[203][204]

**Practices Described in Section 2 of the UDTPA[205]**

The acts and practices described in Section 2 of the UDTPA are specific examples of deceptive acts and practices and, as relevant to Illinois's claims, include:

- Representing that goods or services have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
- Representing that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; and
- Engaging in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

**Intent That the Consumer Rely on the Deception**

Should you find that Meta engaged in deceptive acts or practices, to prove that Meta violated the ICFA, Illinois must prove that Meta intended for consumers to rely on the deceptive acts or practices.[206]

---

There is no authority to support instructing the jury on a presumption of materiality for the purposes of evaluating whether there has been a violation of the ICFA.

[201] *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005); *Mabry v. Standard Indus., Inc.*, No. 20 C 376, 2020 WL 2112372, at *4 (N.D. Ill. May 4, 2020).

[202] AGs can agree with the deletion only if the additional language following is also deleted. Otherwise, we object to the deletion of the sentence, "Claims that are stated explicitly or significantly involved health are presumed material" and object to the proposed insertion that follows.  Meta rejects the AGs' proposed changes.

[203] *Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 841 (N.D. Ill. 2024).

[204] AGs object to this insertion.

[205] 815 ILCS 510/2.

[206] *See* 815 ILCS 510/2; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012).

Evidence about the facts and circumstances surrounding Meta's conduct may be used to establish intent.[207] In deciding whether the Defendant acted with this intent, you may consider the nature of the Defendant's statements or conduct including whether the representations are the types of representations a consumer would rely upon, what the Defendant knew or should have known at the time, and the natural consequences of the Defendant's actions.[208][209]

While Illinois does not need to prove Meta acted with an intent to defraud consumers to prove Meta violated the ICFA, Illinois is entitled to additional civil penalties only for ICFA violations that were entered into with an intent to defraud.[210]

**Conduct of Trade or Commerce**

Should you find that Meta engaged in deceptive acts or practices, to prove that Meta violated the ICFA, Illinois must prove that Meta engaged in any deceptive acts or practices in the course of conduct involving trade or commerce.  An action is carried out in Meta's trade or commerce if it is part of the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of the State of Illinois.[211]

---

[207] *See Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (2d Dist. 1992).

[208] *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 752 (1st Dist. 1990); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 197 Ill. App. 3d 948, 953 (1st Dist. 1990); *Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (2nd Dist. 1992); *Miller v. William Chevrolet*, 326 Ill. App. 3d 642, 657-659 (1st Dist. 2001).

[209] This sentence seems to elaborate on types of circumstantial evidence that may be considered, but these specific examples are not explicitly discussed by the cases cited.

[210] *See* 815 ILCS 510/7(b).

[211] 815 ILCS 505/1(f).

The phrase "trade or commerce" is to be given a liberal construction so that the broad purposes of the Illinois Consumer Fraud Act IFCA might be achieved.[212][213]

---

[212] 815 ILCS 505/11a; *Oliveira v. Amoco Oil Co.*, 267 Ill. Dec. 14, 29 (2002); *People ex rel. Fahner v. Walsh*, 122 Ill. App. 3d 481, 486 (2nd Dist. 1984); *People ex rel. Daley v. Datacom Systems Corp.*, 176 Ill. App. 3d 697, 708 (1st Dist. 1988); *People ex rel. Hartigan v. Maclean Hunter Publishing Corp.,* 119 Ill. App. 3d 1049, 1053-54 (1st Dist. 1983).

[213] Meta's position is that this instruction is both unnecessary and unduly suggestive.  The jury's role is not statutory interpretation, which is a question of law.

AG's object to the deletion of this instruction as it is consistent with Illinois law.

**Count XVI: Alleged Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Unfair Acts or Practices)**

**Instruction 6.2**

The People of the State of Illinois alleges that Meta violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which prohibits persons from engaging in unfair acts or practices in the conduct of any trade or commerce.

For the People of the State of Illinois to prevail on its claim under the ICFA based on unfair acts or practices, you must find that Illinois has proven each of the following elements by a preponderance of the evidence:

1. Meta engaged in an unfair act or practice;
2. Meta engaged in the unfair act or practice with the intent that consumers rely on the unfair act or practice; and[214]
3. The unfair act or practice occurred in the course of conduct involving trade or commerce.[215]

---

[214] AG's object to this element and argue that that there is not an intent element for this claim. See *Roberts v. Smith & Wesson Brands, Inc.*, 2025 Ill. Cir. LEXIS 7, *31.

The court in *Roberts* cites to no authority for the proposition that there is no intent to rely requirement for ICFA claims based on unfair acts or practices, and Meta is not aware of, nor did the AGs cite to, any other case holding as much. To the contrary, the presence of an intent requirement for unfairness claims, in addition to deceptiveness claims, is amply supported by the case law. *See, e.g., Clark v. Receivables Mgmt. Partners, LLC,* 2022 WL 767149, at *3 (N.D. Ill. Mar. 14, 2022) ("[T]he 'intent' requirement under ICFA remains the same for *both* 'unfair act' and 'deceptive practice' claims." (emphasis added)); *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Litig.*, 718 F. Supp. 3d 800, 822 (N.D. Ill. 2024) ("[F]or purposes of their ICFA claim, Plaintiffs need not allege intent to deceive, but instead only 'that the defendant committed a deceptive *or unfair act* and intended that the plaintiff rely on that act.'" (emphasis added) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)); *Walgreen Co. v. Peters*, 2025 WL 1725160, at *7 (N.D. Ill. June 20, 2025) ("The intent element requires that the defendant intended for the plaintiff to rely on the deceptive *or unfair* practice" (emphasis added)).

[215] *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) ("The elements of a claim under the ICFA are: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.").

AGs object to the inclusion of the above cited case law in this footnote. *Wigod* discusses ICFA claims generally and is not clearly applicable to the dispute as to whether
(….continued)

**Unfair Act or Practice**

The concept of an unfair act or practice a flexible one,[216] is defined on a case-by-case basis.[217] To establish that any given act or practice is unfair, Illinois must prove that Meta's conduct does at least one of the following:[218]

a) offends public policy;[219]
b) is immoral, unethical, oppressive or unscrupulous; or
c) causes substantial injury to consumers.

---

an unfairness only count (as opposed to a deception based count) requires intent to rely. The seminal case on the elements for unfairness is *Robinson* which, although it does not expressly disclaim intent to rely as an element for unfairness, does not include intent to rely when discussing the elements. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61 (Ill. 2002).

Nothing in *Wigod* suggests that the intent to rely element is limited to claims based on deceptiveness. In fact, *Wigod* explicitly defines the second element under the ICFA as "the defendant's intent that the plaintiff rely on the deceptive *or* unfair practice." 673 F.3d at 574 (emphasis added). The use of the disjunctive "or" makes clear that the intent to rely requirement applies to both deceptive *and* unfair acts or practices claims. And, as the AGs point out, nothing in *Robinson* suggests otherwise. *See also Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010) (citing to *Robinson*, 775 N.E.2d at 960 for the court's articulation of the elements of an ICFA claim, including the intent that the plaintiff rely on the "deceptive *or* unfair practice" (emphasis added)).

[216] Meta's position is that this description is unduly prejudicial and mischaracterizes the unfairness standard, which sets out parameters for what constitutes unfair acts or practices.

AGs reject deletion. This language is directly from two Illinois Supreme Court cases: *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 290, 430 N.E.2d 1012, 58 Ill. Dec. 761 (1981); *Laughlin v. Evanston Hosp.*, 133 Ill. 2d 374, 393, 140 Ill. Dec. 861, 869, 550 N.E.2d 986, 994 (1990); *see also Demitro v. GMAC*, 388 Ill. App. 3d 15, 20, 327 Ill. Dec. 777, 782, 902 N.E.2d 1163, 1168 (1st Dist. 2009)

[217] *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1018 (1981); *Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 20 (1st Dist. 2009)

[218] *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014).

[219] Meta's position is that the State has the burden to establish the applicable public policy as a matter of law in order to submit that issue to a jury.

AGs do not concede this position and reserve the right to further discuss and raise our position with the Court regarding the same.

62

All three of the criteria do not need to be satisfied to support a finding of unfairness. Rather, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.[220]

**Intent That the Consumer Rely on the Deception**[221]

Should you find that Meta engaged in unfair acts or practices, to prove that Meta violated the ICFA, Illinois must prove that Meta intended for consumers to rely on the unfair acts or practices.[222]

Evidence about the facts and circumstances surrounding Meta's conduct may be used to establish intent.[223]  Although Illinois is not required to establish an intent to defraud in order to prove Meta violated the ICFA, if you find that Meta engaged in unfair acts or practices with an intent to defraud, then Illinois may seek additional civil penalties.[224][225]

**Conduct of Trade or Commerce**

Should you find that Meta engaged in unfair acts or practices, to prove that Meta violated the ICFA, Illinois must prove that Meta engaged in any deceptive acts or practices in the course of conduct involving trade or commerce.  An action is carried out in Meta's trade or commerce if it is part of the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of the State of Illinois.[226]

---

[220] *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61 (Ill. 2002); *Demitro v. General Motors Acceptance Corp.,* 388 Ill.App.3d 15, 20 (1st Dist. 2009).

[221] Consistent with the inclusion of intent in the listed elements, this section is consistent with the format of the instructions for Counts XV and XVII.

[222] *See* 815 ILCS 505/2; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012).

[223] *See Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 903 (2d Dist. 1992).

[224] *See* 815 ILCS 505/7(b).

[225] AGs object to this inclusion and assert that intent is not an element to an unfairness claim brought by the People of the State of Illinois. See *Roberts v. Smith & Wesson Brands, Inc.*, 2025 Ill. Cir. LEXIS 7, *31

*See supra* notes 214-215.

[226] 815 ILCS 505/1(f).

The phrase "trade or commerce" is to be given a liberal construction so that the broad purposes of the Illinois Consumer Fraud Act IFCA might be achieved.[227][228]

**Definitions:**

*Offends Public Policy*

An act or practice offends public policy if it violates a standard of conduct contained in an existing, relevant[229] statute or common law doctrine that typically applies to such a situation.[230] Inferred public policies are not enough.[231] The People of the State of Illinois claim that Illinois has expressed a public policy goal of protecting youth from the harms of addiction and related afflictions.[232][233]

---

[227] 815 ILCS 505/11a; *Oliveira v. Amoco Oil Co.*, 267 Ill. Dec. 14, 29 (2002); *People ex rel. Fahner v. Walsh*, 122 Ill. App. 3d 481, 486 (2nd Dist. 1984); *People ex rel. Daley v. Datacom Systems Corp.*, 176 Ill. App. 3d 697, 708 (1st Dist. 1988); *People ex rel. Hartigan v. Maclean Hunter Publishing Corp.,* 119 Ill. App. 3d 1049, 1053-54 (1st Dist. 1983).

[228] Meta's position is that this instruction is both unnecessary and unduly suggestive. The jury's role is not statutory interpretation, which is a question of law.

AG's object to the deletion of this instruction as it is consistent with Illinois law.

[229] *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1074 (N.D. Ill. 2016).

[230] *Elder v. Coronet Ins. Co.*, 201 Ill. App. 3d 733, 743 (1st Dist. 1990); *Ekl v. Knecht,* 223 Ill.App.3d 234, 242 (2d Dist. 1991); *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortgage Loan Trust, Series 2003-1,* 2011 WL 1374986 at *3 (N.D.Ill. Apr. 12, 2011) (citing *3525 N. Reta, Inc. v. FDIC,* 2011 WL 62128 at *6 (N.D.Ill. Jan. 6, 2011).

[231] *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1075 (N.D. Ill. 2016).

[232] Juvenile Court Act of 1987, Article IV ("Addicted Minors"), 705 ILCS 405/4-1 et seq.; Juvenile Drug Court Treatment Act, 705 ILCS 410 (recognizing public policy goal of reducing juvenile addiction to drugs); Illinois Gambling Act, 230 ILCS 10 et seq. (recognizing policy issues related to "[c]ompulsive gambling" and prohibiting minors from casino gambling).

[233] Meta's position is that the State has the burden to establish the applicable public policy as a matter of law in order to submit that issue to a jury. Illinois has failed to identify or otherwise plead a public policy in its Complaint and cannot amend its Complaint to do so through these jury instructions. Illinois cannot base its stated public policy goals on statutes that have nothing to do with this case – namely, drugs and gambling. However, to the extent that the Court determines it would be appropriate for

(….continued)

64

*Oppressive*

An act or practice is oppressive when the consumer is left with little or no meaningful choice but to submit to the practice.[234]

---

the jury to decide whether the alleged practice offends public policy, Meta believes that the proposed revisions would assist the jury in understanding the standard and that any applicable public policy should be specified in the instruction.

AG's object to the claim that "inferred public policies are not enough" and would cite to ¶954 of the Complaint in support of maintaining the remainder of the language in this definition.

[234] *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002); *Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 313 (1st Dist. 1996).

**Count XVIII: Alleged Violation of the Indiana Deceptive Consumer Sales Act**

**Instruction 7**

The State of Indiana alleges that Meta violated the Indiana Deceptive Consumer Sales Act ("DCSA") which broadly[235] prohibits unfair, abusive, or deceptive acts, omissions, or practices in connection with consumer transactions.[236] The Indiana DCSA must be "liberally construed and applied."[237]

For Indiana to prevail on its claim under the DCSA, you must find that Indiana has proven each of the following elements by a preponderance of the evidence:

1. Meta is a supplier;
2. Meta committed unfair, abusive, or deceptive acts, omissions, or practices, whether implicit or explicit; and
3. Such acts, omissions, or practices occurred in connection with a Consumer Transactions.

It is not necessary to demonstrate an intent to deceive. You may find Defendants liable even if there is no evidence that Defendants intended to deceive consumers.

It is not necessary to demonstrate that Defendants' deceptive actions harmed any consumers[238] [239]

---

[235] Meta objects to the use of the word "broadly" to characterize the prohibited conduct. To say that a statute broadly prohibits certain conduct is misleading and different from the concept that the act should be broadly construed.

AGs will accept the deletion of "broadly" if the last sentence of this paragraph that "DCSA must be liberally construed and applied' is added.

[236] Ind. Code 24-5-0.5-3(a) [general unfair, abusive or deceptive acts]; -3(b)(1); -3(b)(2) violations.

[237] See Ind. Code 24-5-0.5-1(a).

Meta objects to this instruction. The instructions already explain the requirements for establishing a DCSA claim. It is unnecessary and misleading to instruct the jury to construe and apply the DCSA liberally, particularly when interpreting the law is the province of the Court.

[238] This is based on the difference in the statutory language between a violation that can be alleged by a person for damages under IC 24-5-0.5-4(a) versus the authority provided to the Attorney General under IC 24-5-0.5-4(c).

[239] These instructions should be excluded because the instructions already make clear that Indiana only needs to prove the three above-listed elements, and it would
(….continued)

66

*Acts Considered to be Unfair, Abusive, or Deceptive*[240]

The DCSA prohibits any unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction, whether implicit or explicit. The IDCSA must be liberally construed and applied.[241] The terms unfair act, omission, or practice are not defined in the DCSA.[242]

In addition to general unfair, abusive, and deceptive acts, the following are considered two additional categories of prohibited deceptive acts for purposes of the DCSA that Indiana alleges Meta engaged in:

1. A Supplier representing that its products and/or services had sponsorship, approval, performance, characteristics, accessories, uses, or benefits they did not have which the supplier knows or should reasonably know they do not have; or

---

confuse the jury to introduce concepts of intent or harm when those are not elements of a DCSA claim brought by the State.

AGs object to deletion. These instructions clarify an important aspect of the law. Meta does not dispute the accuracy of this description of Indiana law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Indiana.

[240] AGs do not object to including descriptors of the three types of UDAP claims asserted by Indiana; however, it is necessary to add the description for unfair, deceptive, or abusive under 3(a); Meta only included the enumerated violations.

Meta objects to inclusion of the first paragraph under this subheading as unnecessary. The instructions already explain the requirements for establishing a DCSA claim. It is also unnecessary and misleading to instruct the jury to construe and apply the DCSA liberally, particularly when interpreting the law is the province of the Court.

[241] Ind. Code 24-5-0.5-1(a).

[242] *State v. TikTok Inc.,* 245 N.E.3d 681, 696 (Ind. Ct. App. 2024), transfer denied, 262 N.E.3d 818 (Ind. 2025), and transfer denied, 262 N.E.3d 818 (Ind. 2025). There is no statutory definition for unfair, abusive or deceptive in Indiana law. Leaving the term "unfair" undefined reflects an intent to provide the court flexibility to recognize unfairness in its infinite forms. *Cf. F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972) (noting that Congress declined to define "unfair" in an analogous federal statute because "[i]t is impossible to frame definitions which embrace all unfair practices [because] [t]here is no limit to human inventiveness in this field").

2.  A Supplier representing that its products and/or services were of a particular standard, quality, grade, style, or model, if they were not and if the Supplier knows or should reasonably know that they are not.

Implied misrepresentations are actionable under the DCSA. Implied misrepresentations in the consumer-protection context may take the form of a statement of opinion as to facts not disclosed and not otherwise known to the recipient[243] where it is reasonable to be interpreted by a consumer as an implied statement that the facts known to the maker of the statement are not incompatible with his opinion or that he knows facts sufficient to justify him in forming it.  In determining whether a statement of opinion may reasonably be so interpreted, the recipient's belief as to whether the maker has an adverse interest is important. Empty superlatives on which no reasonable person would rely or meaningless

---

[243] *State v. TikTok*; State v. TikTok Inc., 245 N.E.3d 681, 696 (Ind. Ct. App. 2024), transfer denied, 262 N.E.3d 818 (Ind. 2025), and transfer denied, 262 N.E.3d 818 (Ind. 2025).

Meta objects to the AGs' proposed definition as incomplete.  The AGs rely on *State v. TikTok Inc.*, 245 N.E.3d 681, 696 (Ind. Ct. App. 2024), for the definition of implied misrepresentation, but the court in *TikTok* did not aim to provide a full definition of implied misrepresentation.   Instead, the court in *TikTok* partially quoted the Restatement (Second) of Torts in discussing the meaning of implied misrepresentations in the consumer protection context.  *TikTok*, 245 N.E.3d at 696 ("As the Restatement (Second) of Torts makes clear, implied representations in the consumer-protection context may take the form of '[a] statement of opinion as to facts not disclosed and not otherwise known to the recipient.'" (quoting Restatement (Second) of Torts § 539 (Am. L. Inst. 1977)).  As such, any jury should be instructed on the full definition of implied misrepresentation from the Restatement (Second) of Torts, as Meta has proposed.

sales patter do not violate the DCSA.[244] [245] Nor do unverifiable opinions, whose truth or falsity cannot be precisely determined.[246]

---

[244] Given the imprecise definition of unfair, abusive, or deceptive conduct, Meta's position is that the jury should be instructed on the outer limits of what constitutes unlawful conduct under the DCSA, including an instruction on puffery. *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013); *see also State v. TikTok Inc.*, 245 N.E.3d 681, 695-96 (Ind. Ct. App. 2024) (finding *Kesling's* holding on nonactionable puffery to still be good law after subsequent amendments to the statute).

[245] *Kesling* is not an accurate citation for Meta in the previous FN due to its overruling by the 2014 Amendments to the DCSA.  "Our General Assembly's 2014 amendments to the DCSA had two obvious consequences. First, insofar as *Kesling* had reserved the question of whether implied misrepresentations were actionable under the DCSA, the amended statutory language made clear that they are. *See* I.C. § 24-5-0.5-3(a) (2024)."  *State v. TikTok Inc.*, 245 N.E.3d 681, 695–96 (Ind. Ct. App. 2024), *transfer denied*, 262 N.E.3d 818 (Ind. 2025).

Meta does not dispute that an implied misrepresentation is actionable under the DCSA.  Meta's position is that puffery is not actionable, and Meta has proposed including the instruction to address that point.  *State v. TikTok* held that "*Kesling*'s assessment that statements 'on which no reasonable person would rely' are nonactionable remains good law" even after the 2014 Amendment.  245 N.E.3d 681, 695-96 (Ind. Ct. App. 2024) (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013)). Therefore, the citation to this portion of *Kesling* remains good law, and Meta's instruction on puffery is consistent with Indiana law.  Meta further objects to Indiana's proposed insertion that "[i]mplied misrepresentations are actionable under the DCSA" as unnecessary and duplicative of the instruction above that the unfair, abusive, or deceptive conduct can be implicit or explicit.

[246] *See Zylstra v. DRV*, 8 F.4th 597, 610 (7th Cir. 2021) (statements that RV "offers all the comforts of home, all the conveniences of a residential kitchen and the peace of mind knowing that you've chosen the best construction on the market today" are "statements of 'unverifiable opinion'" and "not actionable under the IDSCA").

AGs object to this insertion. The case law cited does not support this interpretation, and this instruction improperly suggests we have a burden to demonstrate falsity, where there is no support for in the law. In contrast to the 7th circuit opinion cited by Meta, Indiana's Court of Appeals recent decision made clear that "*Kesling*'s distinction between actionable representations of fact and nonactionable assertions of opinion is no longer good law under the DCSA, and the trial court erred when it relied on that distinction." State v. TikTok Inc., 245 N.E.3d 681, 696 (Ind. Ct. App. 2024), transfer denied, 262 N.E.3d 818 (Ind. 2025), and transfer denied, 262 N.E.3d 818 (Ind. 2025).

69

**Definitions**

*Consumer Transaction*

A Consumer Transaction means a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things. A Consumer Transaction need not involve the exchange of money.[247]  a consumer spending time on an app to provide a Supplier with opportunities to sell advertisements to the consumer is a Consumer Transaction under Indiana law.[248] [249]

*Supplier*

A Supplier is a seller or other person, including an individual, corporation, or any other legal entity[250], who regularly engages in or solicits consumer transactions.[251]

---

[247] *State v. TikTok, Inc., et al.*, 245 N.E.3d 681, 693 (Ind. Ct. App. 2024), *trans. denied*.

[248] Meta objects to the inclusion of this language. The jury must decide, based on facts presented at trial, whether a consumer transaction exists between Meta and its users. This instruction (wrongly) assumes that any consumer spending time on any app to provide a Supplier the opportunity to sell advertisements is a consumer transaction, which misconstrues and substantially broadens the holding of *TikTok*. The court in *TikTok*, relying on the particular facts of that case, held that because TikTok sells "access to TikTok's content library for the end-user's personal data[,] TikTok's business model is therefore a consumer transaction under the DCSA." *State v. TikTok, Inc., et al.*, 245 N.E.3d 681, 693 (Ind. Ct. App. 2024), *trans. denied*. It is Indiana's burden to prove that Meta's business model would also qualify as a consumer transaction. Indiana cannot alleviate its burden by broadly claiming to the jury that any consumer use of any app which displays advertisements constitutes a consumer transaction as a matter of law.

[249] AGs object to this deletion and argue this is consistent with the Court's characterization that "An app providing an exchange for valuable consideration, such as users' time or personal data, is a consumer transaction."

[250] Ind. Code 24-5-0.5-2(a)(2).

[251] Meta's position is that the term supplier should be explicitly defined because Indiana must prove Meta is a supplier to prevail. *See* Ind. Code § 24-5-0.5-2(a)(3).

70

**Count XIX: Alleged Knowing Violation of the Indiana Deceptive Consumer Sales Act and Incurable Deceptive Acts**

**Instruction 7.1**

The State of Indiana alleges that Meta violated the Indiana Deceptive Consumer Sales Act ("DCSA") which broadly[252] prohibits unfair, abusive, or deceptive acts, omissions, or practices in connection with consumer transactions.[253] The Indiana DCSA must be "liberally construed and applied."[254]

If you find Meta liable under Count XVIII for violating the DCSA, the DCSA permits Indiana to recover civil penalties if Indiana also proves, by a preponderance of the evidence, a knowing or incurable violation of the Act. Each type of violation is addressed in turn.[255]

*Knowing Violations*

To establish an entitlement to civil penalties for a knowing violation of the DCSA, Indiana must prove each of the following elements by a preponderance of the evidence:
1. That Meta violated the DCSA, pursuant to Count XVIII; and
2. That Meta engaged in the conduct which violated the DCSA knowingly.[256]

---

[252] Meta objects to the use of the word "broadly" to characterize the prohibited conduct. To say that a statute broadly prohibits certain conduct is misleading and different from the concept that the act should be broadly construed.

AGs will accept the deletion of "broadly" if the last sentence of this paragraph that "DCSA must be liberally construed and applied' is added.

[253] Ind. Code 24-5-0.5-3(a) [general unfair, abusive or deceptive acts]; -3(b)(1); -3(b)(2) violations.

[254] See Ind. Code 24-5-0.5-1(a).

Meta objects to this instruction. The instructions already explain the requirements for establishing a DCSA claim. It is unnecessary and misleading to instruct the jury to construe and apply the DCSA liberally, particularly when interpreting the law is the province of the Court.

[255] Meta inserts the added language to provide additional context for the jury and to understand the relationship between Count XIX and Count XVIII.

[256] Ind. Code 24-5-0.5-4(g); *McKinney v. State*, 693 N.E.2d 65, 69 (Ind. 1998).

71

Civil penalties are not available based solely on proof that Meta should reasonably have known that a representation was false.[257]  Indiana must prove that Meta knew of the violation. Knowingly means conduct engaged in with an awareness or understanding of a fact or circumstance.[258]

You do not need to find that Defendants committed "incurable" unfair, abusive, or deceptive acts to find that the Defendants committed knowing unfair, abusive, or deceptive acts.[259][260]

### *Incurable Deceptive Acts*

To establish an entitlement to civil penalties for an incurable deceptive act in violation of the DCSA, Indiana must prove each of the following elements by a preponderance of the evidence:
1. That Meta violated the DCSA, pursuant to Count XVIII; and
2. That the conduct which violated the DCSA was part of a scheme, artifice, or device with intent to defraud.[261]

If you find that the Defendants' unlawful conduct[262] was committed as part of a scheme, artifice, or device with intent to defraud or mislead, then your verdict must be that the Plaintiff is entitled to recover additional  penalties against the Defendants.[263] A finding that the Defendants did not commit "incurable" acts does not negate any determination

---

[257] *McKinney v. State*, 693 N.E.2d 65, 69 (Ind. 1998).

[258] KNOWLEDGE, Black's Law Dictionary (12th ed. 2024).

[259] *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).

[260] These instructions should be excluded because the preceding instructions already make clear that Indiana only needs to prove the two above-listed elements for a knowing violation, and incurable violations are separately explained below.

AGs object to deletion. These instructions clarify an important aspect of the law. Meta does not dispute the accuracy of this description of Indiana law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Indiana.

[261] Ind. Code 24-5-0.5-2(a)(8).

[262] For the same reasons as above, Meta objects to the phrase "Defendants' unlawful conduct" because it presumes Meta's conduct was unlawful.

[263] Meta objects to including this language because the preceding instructions adequately explain the requirements to recover civil penalties for incurable acts.

that unfair, abusive, or deceptive acts, omissions, or practices were committed by the Defendants.[264][265] You do not need to find that Defendants committed knowing unfair, abusive, or deceptive acts to find that the Defendants committed "incurable" unfair, abusive, or deceptive acts.[266]

---

[264] *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).

[265] Meta objects to including this sentence. The language above already makes clear that Indiana does not need to prove an incurable deceptive act in order to prove a violation of the DCSA, and the determination that an act was incurable is only applicable for recovering civil penalties.

[266] Meta objects to this language as unnecessary and confusing. The preceding instructions make clear the sole requirements for finding an incurable act.

AGs object to deletion of this entire paragraph. These instructions clarify an important aspect of the law. Meta does not dispute the accuracy of this description of Indiana law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Indiana.

73

**Count XX: Alleged Violation of the Kansas Consumer Protection Act, K.S.A. § 50-626 (Deceptive Acts or Practices)**

**Instruction 8**

The State of Kansas alleges that Meta violated the Kansas Consumer Protection Act ("KCPA") which prohibits persons' unfair, abusive, or deceptive acts, omissions, or practices in connection with consumer transactions.

To establish a violation of the KCPA based on deceptive acts or practices, Kansas must prove each of elements 1 and 2 and at least one of either elements 3 or 4 by a preponderance of the evidence:

1. Meta was a supplier; that
2. Solicited or engaged in consumer transactions; and
3. Willfully represented to consumers, orally or in writing, representations of a material fact that Meta knew or should have known to be inaccurate or false[267] OR
4. Willfully failed to state, concealed, suppressed, or omitted material facts.[268]

Intent to deceive is a necessary element. You may not find Meta liable unless Kansas proves by a preponderance of the evidence that Meta intended to deceive consumers.[269]

An act may constitute a deceptive act or practice whether or not the consumer has in fact been misled.[270][271]

---

[267] Kan. Stat. Ann. § 50–626(b)(2).

[268] Kan. Stat. Ann. § 50–626(b)(3).

[269] *See Gonzales v. Assocs. Fin. Serv. Co. of Kansas*, 967 P.2d 312, 328 (Kan. 1998) (finding that no violation under the KCPA where there was "no showing in the record that [defendants] either purposely withheld relevant information or misstated facts with the intention of deceiving [plaintiff]"); *Cornelison v. Denison State Bank*, 315 P.3d 278, 2014 WL 37682, at *11-12 (Kan. Ct. App. 2014) ("Intent to deceive is a required element of KCPA claims under K.S.A.2012 Supp. 50–626(b)(2) and (b)(3)").

[270] K.S.A. 50-626(b). An action for common-law fraud requires an element of reliance upon the misrepresentation. One of the important distinctions of the Kansas Consumer Protection Act is that reliance upon the deceptive act or practice is not required.

[271] This instruction should be excluded because the instructions already make clear that Kansas only needs to prove the above-listed elements, and it would confuse the jury to introduce other concepts that are not elements of a KCPA claim brought by the State.

(….continued)

74

**Definitions**

*Consumer transaction*

"Consumer transaction" means a sale, lease, assignment or other disposition for value of property or services within the state of Kansas to a consumer or a solicitation by a supplier with respect to a sale, lease, assignment or other disposition for value of property or services within the state of Kansas to a consumer.[272]

*Supplier*

A "supplier" is a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.[273]

*Material*

A matter is "material" when a reasonable person would attach importance to it in determining how to act regarding a particular transaction. Statements or representations of vague generalities or exaggerated opinions on which no reasonable person would rely on as assertions of fact—i.e., puffery—do not violate the law.[274]

---

AGs object to deletion. This instruction clarifies an important aspect of the law. Further, it is part of the statute when determining deception. Meta does not dispute the accuracy of this description of Kansas law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Kansas. *See* KSA 50-626(b).

[272] Pattern Inst. Kan. Civil 129.01.

[273] Pattern Inst. Kan. Civil 129.01.

[274] *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 786-87 (10th Cir. 2016) (citing *Alpine Bank v. Hubbell,* 555 F.3d 1097, 1106 (10th Cir. 2009)).

AGs object to this insertion regarding "puffery." The case cited by Meta is interpreting the Lanham Act, not the KCPA. Courts discussing materiality in KCPA cases have not expressly added this puffery qualification. The previous sentence already clarifies that a matter is material only when a *reasonable* person would attach importance. *See Tufts v. Newmar Corp.*, 1999, 53 F.Supp.2d 1171 (interpreting K.S.A. 50-626(b)(3)); *York v. InTrust Bank, N.A.*, 1998, 265 Kan. 271, 962 P.2d 405 (interpreting K.S.A. 60-626(b)(2)).

(….continued)

75

*Willful*

"Willful" conduct is intentionally or purposefully doing wrong or causing injury to another.[275]

---

The court's discussion of puffery in *Intermountain* is not limited to the Lanham Act. There, the court first determined whether statements were material false or misleading representations of fact before turning to the Lanham Act and concluding that the statements could not form the basis of a false advertising claim under that statute. 638 F. App'x at 785. The definition of "puffing' on which the court relied in that case also was derived from Black's Law Dictionary, which in turn quotes a criminal law text with no connection to the Lanham Act. *Id.* at 786-87. Moreover, Kansas courts have recognized that the KCPA does not apply to puffing. *See, e.g.*, *Ormsby v. Imhoff & Associates, P.C.*, 2014 WL 4248264, at *10 (Aug. 27, 2014) (citing *Baldwin v. Priem's Pride Motel*, 224 Kan. 432, 435, 580 P.2d 1326 (1978)) ("[I]t is clear that a number of plaintiffs' KCPA claims are not actionable as puffery. The 1975 Kansas Comment to K.S.A. 50–626 indicates that the KCPA is only 'intended to cover those cases where the supplier goes beyond innocent 'puffing' expected by the consumer.' The Kansas Supreme Court has made clear that claims based upon 'innocent puffing' are not within the purview of the KCPA." (emphasis added)). Finally, the reference to a "reasonable" person does not adequately clarify puffery. The Tenth Circuit has recognized that "[t]he hallmarks of puffery are broad, vague, and commendatory language, as well as subjective claims ... which cannot be proven either true or false." *Intermountain*, 638 F. App'x at 786. Further, puffery is defined as ""[t]he expression of an exaggerated opinion—as opposed to a factual misrepresentation-with the intent to sell a good or service." *Id.* at 787 (citing Puffing, Black's Law Dictionary (10th ed. 2014)). The fact that a "reasonable" person would not attach importance to these statements does not necessarily mean such person would not rely on them as assertions of fact, so it is necessary to draw that distinction here.

[275] Pattern Inst. Kan. Civil 103.04.

**Count XXI: Alleged Violation of the Kansas Consumer Protection Act, K.S.A. § 50-627 (Unconscionable Acts or Practices)**

**Instruction 8.1**

The State of Kansas alleges that Meta violated the Kansas Consumer Protection Act ("KCPA") which prohibits unconscionable acts and practices in connection with consumer transactions.[276]

To establish a violation of the KCPA based on unconscionable acts and practices, Kansas must prove the following elements by a preponderance of the evidence:[277]

1. Meta was a supplier; and
2. That Meta engaged in an unconscionable act or practice in connection with a consumer transaction.

*Unconscionable Act or Practice*

For an act or practice to be unconscionable, Kansas must prove that there was supplier deception and unequal bargaining power between the parties. [278]  The KCPA enumerates specific examples of unconscionable circumstances.  In determining whether the alleged

---

[276] Meta's position is that the issue of whether Meta's alleged conduct constitutes an unconscionable act or practice is a question of law for the court.  Kan. Stat. Ann. § 50-627(b). However, to the extent that the Court determines it would be appropriate for the jury to decide this issue, Meta believes that the proposed instructions as revised by Meta are sufficient.

Meta has demanded a jury trial in this federal case. *See* Meta's Amended Answer to the Multistate Attorneys General Complaint, Dkt. No. 167, at 93. The State AGs' position is that it is inappropriate to include argument as to whether certain claims are triable to the jury or judge in the context of this jury instructions exercise. To the extent Meta attempts to withdraw its jury demand in the future, the State AGs reserve all rights.

[277] KS 50-627; *In re Motor Fuel Temperature Sales Practices Litigation*, 2012, 867 F.Supp.2d 1124.

[278] *Doe v. Lyft, Inc.*, 756 F. Supp. 3d 1110, 1125 (D. Kan. 2024).

conduct is unconscionable, you should consider whether Meta knew or had reason to know that:[279] [280]

1. Meta took advantage of the inability of the consumer reasonably to protect the consumer's best interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement, or similar factor;
2. Meta made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; or
3. Meta induced the consumer to enter into a transaction that was excessively one-sided in favor of the supplier.

An unconscionable act or practice violates the KCPA whether it occurs before, during or after the transaction. In determining whether an act or practice is unconscionable, you shall consider circumstances of which the supplier knew or had reason to know.[281]

**Definitions**

***Consumer transaction***

"Consumer transaction" means a sale, lease, assignment or other disposition for value of property or services within the state of Kansas to a consumer or a solicitation by a supplier with respect to a sale, lease, assignment or other disposition for value of property or services within the state of Kansas to a consumer.[282]

---

[279] Kan. Stat. Ann. § 50-627(b).  The Supreme Court of Kansas has interpreted these enumerated provisions as "an illustrative, nonexclusive list of circumstances that a court 'shall consider' in determining whether an act or practice is unconscionable." *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 867 (Kan. 2013); *see also State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 38 P.3d 707, 712 (Kan. 2002) ("It is clear the legislature intended the original subsections of (b)(1) through (b)(6) to be a guide in determining what kind of conduct should be found unconscionable without expressly limiting the court to the statutory examples.").

[280] AGs are agreeing to the inclusion of the definition of Unconscionable Act or Practice for the purposes of this exercise, but reserve all rights to renew an objection at a later date.

[281] KS 50-627 forbids unconscionable advertising techniques, unconscionable contract terms, and unconscionable debt collection practices. As under the UCC (K.S.A. 84-2-302), unconscionability typically involves conduct by which a supplier seeks to induce or to require a consumer to assume risks which materially exceed the benefits to him of a related consumer transaction. It involves over-reaching, not necessarily deception. "Knowledge or reason to know" often will be established by a supplier's course of conduct.

[282] Pattern Inst. Kan. Civil 129.01.

*Supplier*

A "supplier" is a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.[283]

---

[283] Pattern Inst. Kan. Civil 129.01.

**Count XXII: Alleged Violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Chapter § 367 et seq.**

**Instruction 9**

The Commonwealth of Kentucky alleges that Meta violated the Kentucky Consumer Protection Act ("KCPA"), which prohibits persons from engaging in unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.[284]

For Kentucky to prevail on its claim under the KCPA, you must find that Kentucky has proven each of the following elements by a preponderance of the evidence:

1. Meta used an unfair, false, misleading, or deceptive act or practice;
2. Meta's actions in committing the unfair, false, misleading, or deceptive act or practice were either intentional or grossly negligent;[285][286]

---

[284] Ky. Rev. Stat. § 367.170; *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 904 & n.11 (Ky. 2008); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988).

[285] The proposed language is consistent with courts' interpretation of the elements that must be proven to establish a KCPA violation. *See Capitol Cadillac Old, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) ("The [KCPA] requires some evidence of 'unfair, false, misleading or deceptive acts' and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present."); *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) (same); *Hollon v. Consumer Plumbing Recovery Ctr.*, 2006 WL 1360805, at *4 (E.D. Ky. May 15, 2006) (same); *Ali v. Allstate Northbrook Indem., Co.*, 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (same).

[286] AGs object to this insertion. Every case cited in Meta's preceding footnote purporting to require the *Kentucky Attorney General* to demonstrate "either intentional or grossly negligent" conduct actually concerns *private litigants* pursuing claims relating to breach of contract and warranties claims where there is privity of contract and the remedies sought are necessarily under private plaintiff-specific sections of the KCPA, namely, §367.220. Those cases merely stand for the proposition that private litigants must demonstrate something excessive beyond simple breach of contract-style claims in pursuing claims under the KCPA. *See, e.g.*, *Ali v. Allstate Northbrook Indem.*, 2024 WL 1199023, at *1 (W.D. Ky. Mar. 20, 2024) (private plaintiff suing auto-insurer for breach of warranties, fraud, unjust enrichment, and tort claims, in addition to KCPA claims); *Capitol Cadillac*, 813 S.W. 3d 287 at 288–89 (Ky. 1991) (private plaintiff suing automobile dealer for breach of warranties and negligence in addition to KCPA claims)*; Re/Max Allstar Realty*, 55 S.W.3d 343 at 345–46 (Ky. Ct. App. 2000) (homebuyers suing sellers, extermination company, and real estate agents for breach of contract, negligence, breach of fiduciary duties in addition to KCPA claims); *Hollon v. Consumer Plumbing*, 2006 WL 1360805, at *1–2 (private plaintiff suing mobile home and plumbing company for breach of warranty, breach of contract, and product liability in addition to KCPA (….continued)

80

3.  Meta's unfair, false, misleading, or deceptive act or practice occurred in the conduct of any trade or commerce;[287] and

claims). But it is inappropriate to impute requirements private litigants must meet in cases where there is privity with defendants to apply to the *Kentucky Attorney General* acting in his law enforcement and *parens patriae* capacities for the safety and protection of Kentucky consumer writ large. *See* KRS §§ 367.190 & 367.990. Furthermore, it is inappropriate to conflate and intertwine the requirements the Kentucky Attorney General must meet regarding civil penalties with the requirements he must show to obtain equitable relief. As the United States District Court for the Eastern District of Texas recently noted in discussing the KCPA, KRS §§ 367.190 and 367.990, the injunctive components of relief under the KCPA and the Act's punitive components are *not* inextricably intertwined. *Cf. Texas v. Google LLC*, --F.Supp. 3d--, 2025 WL 1713256, at *48 (E.D. Tex. ) ("As to intertwinement, the equitable remedies sought by Kentucky do not negate the right to a jury trial on the State's civil-penalty claims."); *Id*. at *49 ("The right to jury trial on a legal claim cannot be impaired 'by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action[.]'") (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)). Therefore, the question of whether the statute itself has been violated and injunctive relief is warranted (the contours of which are left to the Court as equitable relief) is a separate and distinct question on one hand, and on the other, the question of whether that conduct was intentional is separate only applies to determine whether penalties are warranted for the violation. *Compare* KRS 367.190 ("Upon application of the Attorney General, a restraining order shall be granted whenever it reasonably appears that any person will suffer immediate harm, loss or injury from a method, act or practice prohibited by KRS 367.170.") *and* KRS 367.990 ("In any action brought under KRS 367.190, if the court finds that a person *willfully* using or has *willfully* [violated] KRS 367.170, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth, a civil penalty. . . .")(emphasis added).

Meta disagrees with the AGs' objection. None of the cases the AGs cite in this footnote hold that the "intentional or grossly negligent" requirement applies only to claims brought by private litigants. In any event, even if that requirement applied only to KCPA claims between parties in privity, it should still be included in the instructions to the extent any theories of liability are based on alleged interactions between Meta and consumers concerning services for which consumers accept terms of service agreements. The AGs' appeal to *Texas v. Google* is inapposite. The cited portion of *Texas v. Google* concerns Kentucky's right to a jury trial on Kentucky DTPA claims when it seeks both civil penalties and equitable relief, not what Kentucky must prove on the merits when it brings Kentucky DTPA claims. *See Texas v. Google LLC*, 2025 WL 1713256, at *49.

[287] Ky. Rev. Stat. §§ 367.170, 367.190(1).

81

4.    This proceeding is in the public interest.[288] [289]

Kentucky is not required to show that anyone relied on,[290] or was actually deceived by,[291] Meta's conduct in order for you to find that Meta violated the KCPA.  However,

---

[288] The proposed language is consistent with the KCPA's statutory requirements. *See* Ky. Rev. Stat. § 367.190(1) ("Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by KRS 367.170 to be unlawful, ***and that proceedings would be in the public interest***, he may immediately move in the name of the Commonwealth in a Circuit Court for a restraining order or temporary or permanent injunction to prohibit the use of such method, act or practice." (emphasis added)).  Language in Kentucky case law also delineates the public interest requirement as an element.  *See Commonwealth ex rel. Stephens v. N. Am. Van Lines, Inc.*, 600 S.W.2d 459, 460-61 (Ky. Ct. App. 1979) ("[T]he plain wording of the Act authorizes the Attorney General to proceed on behalf of the Commonwealth in his law enforcement authority when (1) he has reason to believe that any person is using, has used or is about to use any method, act or practice declared to be unlawful, and (2) that said proceeding would be in the public interest.").

[289] AGs reject this insertion as it incorrectly mischaracterize statutory text authorizing the Kentucky Attorney General to initiate proceedings based on his own assessment as somehow speaking to an element relevant to the question of whether Meta has engaged in an "[u]nfair, false, misleading, or deceptive act[] or practice[] in the conduct of any trade or commerce[.]" (KRS 367.170).

Meta disagrees with the AGs' objection.  The AGs cite no authority holding that the question of whether the proceeding is in the public interest is not an element that Kentucky must prove, and at least one AG enforcement action indicates that it is a required element.  *See Commonwealth ex rel. Stephens v. N. Am. Van Lines, Inc.*, 600 S.W.2d 459, 460-61 (Ky. Ct. App. 1979) ("[T]he plain wording of the Act authorizes the Attorney General to proceed on behalf of the Commonwealth in his law enforcement authority when (1) he has reason to believe that any person is using, has used or is about to use any method, act or practice declared to be unlawful, and (2) that said proceeding would be in the public interest.").

[290] *Corder v. Ford Motor Co.*, 869 F. Supp 2d 835, 837 n.1, 838-39 (W.D. Ky. 2012).

[291] *Telcom Directories, Inc. v. Com. ex rel. Cowan*, 833 S.W.3d 848, 850 (Ky. App. 1991).

82

Kentucky must establish that the conduct is false, misleading, and deceptive to a reasonable consumer.[292] [293]

Kentucky must also establish that Meta's actions were either intentional or grossly negligent to find Meta liable.[294] Gross negligence is the wanton or reckless disregard for the safety of other persons.[295] Stated differently, Meta must have intentionally engaged in the unfair, false, misleading, or deceptive conduct or have at least engaged in a

---

[292] Kentucky courts have recognized a reasonable consumer limitation to KCPA claims. *See Craig & Bishop, Inc. v. Piles*, 2005 WL 3078860, at *5 (Ky. Ct. App. Nov. 18, 2005), *aff'd in part, rev'd in part other grounds*, 247 S.W.3d 897 (Ky. 2008) ("Deceitful practices and misrepresentations of future or existing facts are actionable if done for the purpose of inducing the reasonable consumer to purchase the seller's goods or services …."); *Corder v. Ford Motor Co.*, 285 F. App'x 226, 228-29 (6th Cir. 2008) (noting the FTC defines an act as deceptive under the analogous Federal Trade Commission Act if the deceptive practice "is likely to mislead consumers acting reasonably under the circumstances" and finding "[a] jury could find from this evidence that a reasonable purchaser would have considered the improvements Ford made to the 2004 engine material to his choice of truck"); *Johnson v. Taylor Auto Sales, Inc.*, 2024 WL 116310, at *2 (W.D. Ky. Jan. 10, 2024) (denying summary judgment motion because there was "a genuine issue of material fact as to whether a 'reasonably prudent person of common intelligence would have understood'" defendant's conduct to be false, misleading, or deceptive) (quoting *Maynard v. Am. Med. & Life Ins. Co.*, 2012 WL 2571160, at *3 (W.D. Ky. July 2, 2012)).

[293] While the AGs agree that there is a "reasonable listener" standard for deception claims, it disagrees with the preceding footnote insofar as it cites cases discussing requirements for private plaintiffs under the KCPA to apply to the Kentucky Attorney General in public enforcement actions, such as the requirements of privity or contract.

Meta has proposed a revision to the citation to *Craig & Bishop* in footnote 292to address and resolve this disagreement, and believes footnote 293can now be deleted.

[294] *See supra* note 285.

[295] *Ali v. Allstate Northbrook Indem., Co.*, 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (Kentucky law defines gross negligence as "wanton or reckless disregard for the safety of other persons."); *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) ("Gross negligence is a conscious and voluntary act or omission which is likely to result in grave injury when in the face of clear and present danger of which the alleged tortfeasor is aware.").

conscious and voluntary act or omission which Meta knew was likely to result in grave injury.[296][297]

Kentucky must prove that Meta willfully used an unfair, false, misleading, or deceptive method, act, or practice in order to recover civil penalties.[298]   Kentucky is not required to show that Meta intended to deceive consumers;[299] a willful violation may occur if Meta acted with careless disregard as to whether or not it had the right to so act.[300] [301] [302]

---

[296] *See supra* note 285; *see also Harman v. Sullivan Univ. Sys., Inc.*, 2005 WL 1353752, at *6 (W.D. Ky. June 6, 2005) ("[T]he plaintiff has presented evidence that [defendant] intended to deceive her or that it at least made a conscious and voluntary act or omission . . . [t]hus, summary judgment on this claim is inappropriate with regard to [defendant].").

[297] See footnote discussing why intentional or grossly negligent is inapplicable to claims pursued by the Kentucky Attorney General.

See Meta's response in footnote 286, *supra*.

[298] The proposed language is simplified and consistent with the statutory language.  *See* Ky. Rev. Stat. § 367.990(2).

[299] The red language on intent is confusing given that Kentucky case law does recognize a certain intent requirement to find a violation of the KCPA beyond the willfulness requirement to award civil penalties.  *See supra* notes 285-286and accompanying text.

[300] *Couch v. Nat. Resources and Envtl. Protec. Cabinet*, 986 S.W.2d 158, 159, 163 (Ky. 1999) *as amended* (Feb. 22, 1999).

[301] The red language is not applicable because it analyzes willfulness under a separate statute.  *See Couch v. Nat. Resources & Env't. Protec. Cabinet*, 986 S.W.2d 158, 159, 163 (Ky. 1999) *as amended* (Feb. 22, 1999) (defining willfulness under Ky. Rev. Stat. § 350.990(9)).

[302] AGs object to striking this language regarding willfulness and intent. *See American Nat'l University of Kentucky, Inc. v. Commonwealth of Kentucky ex. rel. Andy Beshear*, 2019 WL 2479608, at *4 (Ky. App. 2019) (unpublished) (in discussing willful under the KCPA, noting that "it is settled that a showing of evil purpose or criminal intent is not a necessary prerequisite to a determination of statutory liability in a civil proceeding, and that a 'wilful' statutory violation may occur when the conduct in question is simply marked by careless disregard whether or not one has the right to so act.") (citing *Couch v. Natural Resources and Environmental Protection Cabinet*, 986 S.W.2d 158, 163 (Ky. 1999)). Meta incorrectly cites *Kirschner* to argue the Kentucky Supreme Court precedent recognizes willfulness as an element to prove a violation of KRS 367.170, it is incorrect. *Kirschner* case does not discuss KRS 367 et seq. at all, but instead discusses KRS 381.232, a KY statute about intentional trespass. Any guidance
(….continued)

**Definitions**

***"Trade" and "commerce"*** under KCPA means the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and includes any trade or commerce directly or indirectly affecting the people of Kentucky.[303]

---

that *Kirschner* may provide for defining willfulness in the penalties provision of KRS 367.990 does not translate to there being a willfulness/intent element under KRS 367.170.

Meta disagrees with the AGs' objection. With respect to willfulness, that term is already defined in the definition section and need not be defined separately here. In addition, the case the AGs cite in this footnote is designated "not to be published," and citation to it is "disfavored" under Kentucky's Rules of Appellate Procedure, particularly given that there is a Kentucky Supreme Court case analyzing willfulness under the KCPA. *See Kirschner v. Louisville Gas & Electric Company*, 743 S.W.2d 840, 842 (Ky. 1988); Ky. Rules App. Proc. 41(A) ("A party may cite to and rely on a 'Not To Be Published' opinion for consideration if: (1) it was rendered after January 1, 2003, (2) it is final under RAP 40(G), (3) *there is no published opinion of the Supreme Court or the Court of Appeals that would adequately address the point of law argued by the party*, and (4) the party clearly states that the opinion is not binding authority." (emphasis added)).

With respect to intent, it is confusing to include the language in red saying that intent is not required, given that the instructions make clear intent is required to recover on civil penalties.

[303] Ky. Rev. Stat. § 367.110(2).

You should give the terms *"false," "misleading," and "deceptive"* their ordinary meaning as understood by a reasonably prudent person of common intelligence.[304] Deceptive acts include omissions of material fact.[305] [306] [307]

An *"unfair"* act or practice is one that is unconscionable.[308]  "Unconscionable" means manifestly unfair or inequitable.[309] as used in the statute refers to any business practice

---

[304] *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008); *Stevens v. Motorist Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988); *Dare To Be Great, Inc. V. Com. ex. rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974).

[305] *Naiser v. Unilver U.S., Inc.*, 975 F. Supp. 2d 727, 741–42 (W.D. Ky. 2013).

[306] The red language is not supported by the case law.  In the single case that Kentucky cites, the court denies a motion to dismiss finding that a KPCA claim can be based on defendants' "alleged failure to disclose the product's defect and warn consumers of its risk of producing adverse effects." *See Naiser v. Unilver U.S., Inc.*, 975 F. Supp. 2d 727, 741–42 (W.D. Ky. 2013).  As to whether the warning defendants provided on their hair product was sufficient, the court found that it is a question of fact that is "improper to resolve such a question on a motion to dismiss." *Id.*

[307] AGs disagree with striking this language. Meta does not refute that omissions can be tried by jury for KCPA claims.

Meta believes the language in red should be removed because it is confusing and incorrect to suggest that all omissions of material fact are deceptive acts under the KCPA.

[308] Ky. Rev. Stat. § 367.170(2).

[309] *Cf. Wilhoit v. Wilhoit*, 506 S.W.2d 511, 513 (Ky. 1974); *Snardon v. Snardon*, No. 2007-CA-002114-MR, 2009 WL 2059094, at *2 (Ky. App. July 17, 2009); *see also*, *e.g., Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988); *Com. ex rel Stephens v. North American Van Lines, Inc.,* 600 S.W.2d 459, 462 (Ky. App. 1979); *Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 55 (Ky. App. 1999).

that misuses a seller's superior resources or bargaining power. to enforce grossly unfair terms or conditions on a buyer after formation of a contract.[310][311]

_____

[310] The proposed language is consistent with how courts have analyzed unconscionable under the KCPA.  *See Watson v. Progressive Direct Ins. Co.*, 2022 WL 18027628, at *6 (E.D. Ky. Dec. 30, 2022) (quoting *Garrett v. State Auto & Prop. Cas. Ins. Co.*, 2009 WL 5125812, at *5 (W.D. Ky. Dec. 21, 2009).  None of the cases the AGs cite analyze or define unconscionable under the KCPA.  The only cases cited that even address unconscionability are factually distinct.  *See Wilhoit v. Wilhoit*, 506 S.W.2d 511, 513 (Ky. Ct. App. 1974) (defining unconscionable under a separate statute related to modification of child support); *Snardon v. Snardon*, No. 2007-CA-002114-MR, 2009 WL 2059094, at *2 (Ky. App. July 17, 2009) (defining when a contract is unconscionable).

[311] AGs have amended this definition and request the red language remain and oppose language imputing contractual requirements on AG claims. Meta again imputes requirements to the Kentucky Attorney General in scenarios where there are private litigants in privity with Defendants, often involving breach of contract claims. *See Cole v. Mariner Finance, LLC* 673 F. Supp. 3d 867, 869 ("That [private remedy] provision requires that 'privity of contract exist between the parties in a suit alleging a violation of the [KCPA]") (collecting cases). The KCPA defines "unfair" as "unconscionable," but does not otherwise elaborate on what constitutes an unconscionable trade practice under the statute.  KRS 367.170(2).  "Where no specific definition is provided for terms contained in a statute, Kentucky law instructs that words of a statute shall be construed according to their common and approved usage[.] . . ." *Johnson v. Branch Banking and Trust Co.*, 313 S.W.3d 557, 559 (Ky. 2010) (internal quotation marks omitted).  A contract is not inherent to the common understanding of the word "unconscionable" with respect to the KCPA when the attorney general is acting in his public enforcement capacity, but it does apply to private litigants pursuing claims under relevant provisions of that statute. *See Commonwealth of Kentucky v Marathon Petroleum Co., LP.*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016)("The Kentucky Attorney General's power to bring consumer-protection suits falls outside of § 367.220, and thus privity is not necessary."); *Arnold v. Microsoft Corp.*, 2001 WL 1835377, at *7 (Ky Ct. App. 2001) (finding privity required in private suit); *see also Com. ex. rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 707 (Ky. Ct. App. 1981). Imputing a contractual requirement in public enforcement actions pursued by the Kentucky Attorney General runs contradictory to the Kentucky legislature's intention that the KCPA be given "the *broadest* application in order to give Kentucky consumers the *broadest possible* protection for allegedly illegal acts." *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) (emphasis added).

Meta believes the language in blue is a necessary clarification of the meaning of "unconscionable."  That the only case specifically analyzing the meaning of the term "unconscionable" under the KCPA happens to be in the context of a contractual relationship does not mean that the case's holding is not generally applicable.  *See Watson v. Progressive Direct Ins. Co.*, 2022 WL 18027628, at *6 (E.D. Ky. Dec. 30, 2022) ("While Kentucky courts have not provided a precise definition of

(….continued)

*"Willful"* means conduct that is intentional, wanton, or reckless.[312]

---

[312] *Kirschner v. Louisville Gas & Electric Company*, 743 S.W.2d 840, 842 (Ky. 1988)*; Com. V. Alpharma USPD, Inc.*, No. 04-CI-1487, 2011 WL 5512891 (Ky. Cir. Ct. Jan. 19, 2011).

**Count XXIII: Alleged Violation of Louisiana Unfair Trade Practices and Consumer Protection Act (Unfair or Deceptive Acts or Practices)**

**Instruction 10**

The State of Louisiana alleges that Meta violated the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), which prohibits persons from engaging in unfair or deceptive acts or practices in the conduct of any trade or commerce.[313]

For Louisiana to prevail on its claim under the LUTPA, you must find that Louisiana has proven each of the following elements by a preponderance of the evidence:

1.  Meta engaged in an act or practice that was unfair or deceptive; and

2.  That the unfair or deceptive act or practice occurred in the conduct of trade or commerce.

The language of the statute does not specify particular violations.[314]  However, the range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.[315]  In order to

---

[313] La. Stat. § 51:1405(A).

[314] 1 Louisiana Jury Instructions - Civil and Criminal § 18.05 (2025); *see also Moses v. Wells Fargo Bank, N.A.*, No. CV 25-546, 2025 WL 2319968, at *6 (E.D. La. Aug. 12, 2025) ("Acts constituting unfair or deceptive trade practices are not specifically defined in the statute, but are determined by the courts on a case-by-case basis.").

[315] 1 Louisiana Jury Instructions - Civil and Criminal § 18.05 (2025); *see also Quality Env't Processes, Inc.,* 144 So. 3d at 1025 (quoting *Cheramie.* 35 So.3d at 1060).

AGs object to this insertion and the phrasing of "extremely narrow". The phrasing of "not mere negligence" may falsely flag that a knowledge requirement is needed. The Louisiana AG does not need to prove knowledge when bringing a LUTPA claim. The only time knowledge is mentioned in LUTPA is solely for private claims attempting to get treble damages in La R.S. 1409(A)

In addition to being directly from Louisiana's model jury instructions, Meta's proposed instruction is supported by Louisiana case law.  *See, e.g.*, *625 LaBarre Rd., LLC v. Parish of Jefferson*, 330 So. 3d 1201, 1208 (La. Ct. App. 2021) ("Allegations of mere negligence are insufficient to state a claim under LUTPA."); *Renton Props., LLC v. 213 Upland, LLC*, 304 So. 3d 1083, 1095 (La. Ct. App. 2020) ("LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence."); *J.A. Davis Props., LLC v. Martin Operating P'ship, LP*, 224 So. 3d 39, 43 (La. Ct. App. 2017) (….continued)

recover under LUPTA, Louisiana must prove some element of fraud, misrepresentation, deception, or other unethical conduct.[316]

Conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.[317]  Moreover, LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions.[318]  Businesses are still free to pursue profit, so long as the means used are not egregious.[319]

---

(LUTPA "prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence").

[316] *S. Marsh Collection, LLC v. S. Proper Co., LLC*, 771 F. Supp. 3d 852, 860 (M.D. La. 2025) ("To prevail on a LUTPA claim, a plaintiff must prove 'some element of fraud, misrepresentation, deception or other unethical conduct.'" (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994))).

AGs object to this insertion. The case Meta quotes is about a private claim under La. R.S. 1409 which has different elemental requirements than the AG's powers. La. R.S. 1409 requires the plaintiff to show damages just to bring the claim and knowledge to obtain treble damages. Fraud indicates intent and knowledge, two things that the AG is not required to prove in a LUTPA claim.

Meta maintains that its proposed instruction is appropriate.  The AGs point to no Louisiana case law suggesting that the instruction is inapplicable to government enforcement actions.

[317] 1 Louisiana Jury Instructions - Civil and Criminal § 18.05 (2025); *see also Quality Env't Processes*, 144 So. 3d at 1025.

[318] *Cheramie*, 35 So. 3d at 1060 ("LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions.  The statute does not forbid a business to do what everyone knows a business must do: make money.  Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious." (quoting *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993))).

AGs object to the inclusion of this paragraph in its entirety as not an appropriate elemental instruction – this is a defense to be raised either in argument or as an affirmative defense (if appropriate).

[319] *Id.*

90

While Louisiana does not need to prove that Meta acted with an intent to defraud consumers, Louisiana is entitled to additional civil penalties only for LUTPA violations that were entered into with an intent to defraud.[320]

**Definitions**

*Unfair Act or Practice*

An act or practice is considered unfair if it offends [*established public policy X*][321] and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[322]

---

[320] La. Stat. Ann. § 51:1407(B).

AGs object to Meta's interpretation of the statute. The intent to defraud requirement is only for enhanced penalties. La. R.S. 51:1407(B) states "In addition to the remedies provided herein, the attorney general may request and the court may impose a civil penalty against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter."

Meta's proposed instruction is consistent with the statute. *See* La. R.S. 51:1407(B) ("In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation.").

[321] Meta's position is that the burden is on the State to establish the applicable public policy as a matter of law in order to submit that issue to a jury. Louisiana has failed to identify or otherwise plead a public policy in its Complaint and cannot amend its Complaint to do so through these jury instructions. However, to the extent that the Court determines it would be appropriate for the jury to decide whether the alleged practice offends public policy, Meta believes that the proposed revisions would assist the jury in understanding the standard.

AGs object to this position and maintain that we are not required to name a specific public policy.

[322] 1 Louisiana Jury Instructions - Civil and Criminal § 18.05 (2025); *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F. Supp. 2d 688, 700 (E.D. La. 2013) ("Louisiana courts have restrictively defined unfair practices as conduct which offends established public policy and which is unethical, oppressive, unscrupulous, or substantially injurious." (internal quotation marks omitted)), *aff'd sub nom. Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015); *Cupp Drug Store, Inc. v. Blue Cross and Blue Shield of Louisiana, Inc.*, 161 So.3d 860 (La.App. 2 Cir., 2015); *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 245 So.3d 1088 (La.App. 2 Cir., 2017).

*Deceptive Act or Practice*

An act or practice is deceptive if it amounts to fraud, deceit, or misrepresentation.[323]

*Trade or Commerce*

 "Trade" or "commerce" means the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.[324]

---

[323] *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F. Supp. 2d 688, 700 (E.D. La. 2013), *aff'd sub nom. Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015); *Indest-Guidry, Ltd. v. Key Office Equipment, Inc.*, 997 So.2d 796 (La. App. 3 Cir. 2008).

[324] 1 Louisiana Jury Instructions - Civil and Criminal § 18.05 (2025); La. Stat. Ann. § 51:1402(10).

**Count XXVI : Alleged Violation of Minnesota Uniform Deceptive Trade Practices Act (Deceptive Trade Practices)**

**Instruction 11**

The State of Minnesota alleges that Meta violated the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA"), which broadly [325][326] prohibits persons from engaging in deceptive acts or practices in the course of business.

For Minnesota to prevail on its claim under the UDTPA based on deceptive trade practices, you must find that Minnesota has proven by a preponderance of the evidence that Meta:

1.      Meta, a person;
2.      Engaged in an act or practice or omission that was deceptive; and
3.      The deceptive act or practice occurred in the course of business.[327]

The State of Minnesota need not prove actual confusion or misunderstanding.[328][329] To recover disgorged profits or civil penalties, Minnesota must prove one additional

---

[325] Meta's position is that including the qualifier "broadly" is both unnecessary and unduly suggestive.  The jury's role is not statutory interpretation, which is a question of law.  *See State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000).

[326] AGs reject the deletion of the term "broadly." Minnesota's consumer protection laws have consistently been interpreted broadly by Minnesota courts in favor of consumers because of their remedial purpose. *See State by Humphrey v. Phillip Morris, Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) ("These statutes are generally very broadly construed to enhance consumer protection.").

[327] Minn. Stat. § 325D.44, subd. 1.

[328] Minn. Stat. § 325D.44, subd. 2.

[329] This instruction should be excluded because the instructions already make clear that Minnesota only needs to prove the three above-listed elements, and it would confuse the jury to introduce concepts of actual confusion or misunderstanding when those are not elements of a Minnesota UDTPA claim brought by Minnesota.

AGs object to deletion. This instruction clarifies an important aspect of the law and is pulled directly from Minn. Stat. § 325D.44, subd. 2. Meta does not dispute the accuracy of this description of Minnesota law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Minnesota.

93

element: that a causal nexus exists between the allegedly deceptive conduct and harm suffered by consumers.[330]

---

[330] *Grp. Health Plan v. Philip Morris Inc.*, 621 N.W.2d 2, 14 (Minn. 2001). Meta's position is that Minnesota must prove a causal nexus between harm suffered by consumers and allegedly deceptive conduct to recover civil penalties, damages, and/or disgorgement.

AGs object to this insertion as being incorrect as a matter of law. Meta confuses the nature of the equitable remedies of restitution vs. disgorgement. Causal nexus is only required to recover the equitable remedy of restitution, because this remedy is measured based on the loss of consumers, which has a causal nexus to the violations at issue. In stark contrast, disgorgement is a separate and distinct equitable remedy that is measured by the gains the violator received in connection with a violation. See *Cox & Peterson, Public Compensation for Public Enforcement*, 39 Yale J. on Reg. 61, 77-78 (2022). Because disgorgement is measured based on the gains of the violator, there is no need to establish a causal nexus between the violations and loss to consumers.

*Group Health* is distinguishable because it related to a private party's recovery of damages, not the equitable remedy of disgorgement or the AG's unique authority to obtain civil penalties.

Meta also misstates Minnesota law relating to civil penalties. No Minnesota court has required establishing causal nexus before awarding the State of Minnesota civil penalties for proven violations of Minnesota's consumer protection laws. Instead, civil penalties are awarded by the Court for each occurrence of a violation by balancing four equitable factors as established in *State by Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 896-97 (Minn. App. 1992) (establishing these 4 factors are: the good or bad faith of the defendant; injury to the public; the defendant's ability to pay; and the desire to eliminate the benefits derived by the violation)

The AGs are incorrect to draw a distinction between "restitution" and "disgorgement" to avoid Minnesota law's requirement of a causal nexus to harm suffered by consumers. Whether Minnesota calls the money it seeks "disgorgement" or "restitution," or focuses on profits rather than harm, makes no difference. Federal law controls the availability of equitable relief in federal court, state statutes notwithstanding: "state statute does not change the nature of the federal courts' equitable powers." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020) (internal quotation omitted). Federal law is clear that disgorgement and restitution are different names for the same remedy. *See Liu*, 591 U.S. at 79 (noting that "depriv[ing] wrongdoers of their net profits from unlawful activity" has "gone by different names," such as "restitution," "disgorgement," and an "accounting"); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 135 F.4th 683, 690–91 (9th Cir. 2025) (applying *Liu*, which concerned what the SEC called "disgorgement," to assess the remedy the CFPB called "restitution"). Accordingly,

(….continued)

**Definitions**

*Deceptive Trade Practice*

Deceptive conduct is conduct that tends to deceive or mislead a person. Minnesota must prove the falsity of any allegedly deceptive statements by Meta.[331]  In addition, deceptive trade practices may also include the concealment or omission of material information, which is information that would have naturally affected consumers' judgment or decisions had the consumer known about it.[332] Deceptive trade practices include:

---

*Group Health Plan's* requirement of a causal nexus applies to Minnesota's claim for "disgorgement."

The four factors enumerated in *Alpine Air Products* concern "the size of a civil penalty," not the availability of such.  490 N.W.2d at 896–97.  That is a question "to be determined by the court," not a jury.  *Id.* at 896 (quoting Minn. Stat. § 8.31, subd. 3).  The AGs cite no case in which civil penalties were submitted to a jury.

[331] *Nelson v. Am. Fam. Mut. Ins. Co.*, 262 F. Supp. 3d 835, 862 (D. Minn. 2017) ("'The burden is upon a plaintiff to prove the falsity of the allegedly deceptive statements.'  If there is no evidence that the statements at issue are 'provably false,' an MDTPA claim must be dismissed." (citation omitted) (quoting *McClure v. Am. Fam. Mut. Ins. Co.*, 223 F.3d 845, 855 (8th Cir. 2000))).

AGs object to addition of this language. While proving falsity of a statement is sufficient to establish a violation it is not required and Meta overstates what the State must prove here. Instead, the standard under the Deceptive Trade Practices Act is whether Meta's conduct had the tendency or capacity to deceive consumers. See *State v. Directory Pub. Services, Inc.*, 1996 WL 12674 at *4-5 (Minn. App. Jan. 16, 1996); *State ex rel. Swanson v. Am. Family Prepaid Legal Corp.*, 2012 WL 2505843 at *5-6 (Minn. App. July 2, 2012).

*Nelson* squarely held that a UDTPA claim must be dismissed if the plaintiff does not prove that the alleged deceptive statements were false.  *See* 262 F. Supp. 3d at 862 (citing *McClure,* 223 F.3d at 855).  Neither case cited by the AGs abrogates that falsity requirement.

[332] MINN. STAT. § 325D.44, subds. 1, 2; *Simonsen v. BTH Prop.*, 410 N.W.2d 458, 461 (Minn. 1987) (finding it was "natural conclusion" that an ad for a six-unit building meant six legally rentable units, though seller of building omitted the fact that it was zoned for five units only); *Yost v. Millhouse*, 373 N.W.2d 826, 830 (Minn. Ct. App. 1985) ("A statement of fact is material if it would *naturally affect* the conduct of the party addressed.") (emphasis added); *Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1343 & n.3 (8th Cir. 2022) (noting that misrepresentation under section 325D.44 and other consumer protection statutes can be shown through material omissions); *Minnesota*
(….continued)

1. Representing that goods or services have sponsorship, approval, characteristics, ingredients[333], uses, benefits, or quantities that they do not have;
2. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or
3. Engaging in deceptive acts, practices, or omissions that caused a likelihood of confusion or of misunderstanding among Minnesota consumers.

### Duty to Disclose

Meta cannot be liable for an omission unless it had a duty to disclose the omitted facts. Under Minnesota law, there is normally no duty to disclose material facts to another person. A duty to disclose can exist if: (1) a person speaks, in which case it must say enough to prevent its words from misleading the other person, or (2) a person has special knowledge of material facts that the other person is unable to get.[334][335]

---

*ex rel. Hatch v. Fleet Mortg. age Corp.*, 158 F. Supp. 2d 962, 967 (D. Minn. 2001) (stating the CFA and MDTPA support omissions as violations).

[333] While Meta reserves any further objections to the applicability of this definition, Meta has stricken this provision because it is clearly inapplicable to the State's claims.

AGs reject the deletion and seek to maintain the full statutory language.

[334] Duty to Disclose Material Facts, 4 Minn. Prac., Jury Instr. Guides - Civil 57.30 (6th ed.). Minnesota's consumer fraud protection statutes, including the UDTPA, do not abrogate the common law requirement that omission-based claims require special circumstances that trigger a duty to disclose the omitted facts. *See Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695–96 (Minn. 2014); *see also Wilcox v. State Farm Fire & Cas. Co.*, 2015 WL 927093 at *8 (D. Minn. Jan. 16, 2015), *report and recommendation adopted in part, rejected in part*, 2015 WL 927342 (D. Minn. Mar. 4, 2015), *certified question answered*, 874 N.W.2d 780 (Minn. 2016). Meta's position is that the Court must instruct the jury on how a duty to disclose arises under Minnesota law if Minnesota advances an omission theory at trial.

[335] The AGs object to the entire inclusion of "Duty to Disclose" Graphic Communications only held that Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. 325F.69, et seq. ("CFA") (based on its unique language providing liability for "fraud, false pretense, false promise, misrepresentation, misleading statement, or deceptive practice") required showing the common law elements of special circumstances to permit a material omission basis for liability. Minnesota, however, has not asserted a CFA claim in this action. Instead, here, Minnesota has asserted violation of the Uniform Deceptive Trade Practices Act, Minn. Stat. 325D.44, et seq. The DTPA contains far broader language than the CFA. For example, it provides a basis for liability of "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (….continued)

### Person

"'Person'" may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations." Minn. Stat. § 645.44, subd. 7. Additionally, Minnesota's Consumer Fraud Act defines "person" as "any natural person or a legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." Minn. Stat. § 325F.68, subd. 3.

### Causal Nexus

A "causal nexus" is a causal connection between allegedly fraudulent statements and the State of Minnesota's claimed injuries.[336] To consider whether a causal nexus exists, you must consider all the facts surrounding the trade practice, such as: (1) whether the deceptive trade practice was longstanding, pervasive, and widespread in communications directed to consumers of the product; (2) whether Meta intended and understood that consumers would rely on the deceptive trade practice; and (3) whether the information was of a kind on which consumers would typically rely.[337][338]

---

Unlike the CFA, this broad language clearly encapsulates the conduct of material omissions and thus, abrogates any common law special circumstances standard that would otherwise apply. **For this reason, Meta's added "duty to disclose" paragraph misstates the law under the DTPA and should be struck**.

Meta disputes the AGs' assertion that UDTPA claims do not require a showing of a duty to disclose. *See Wilcox*, 2015 927093, at *8 ("While *CVS Caremark Corp.* only addressed whether the CFA requires a plaintiff to plead that the defendant had a duty to disclose certain information, the Court finds its reasoning equally applicable to Plaintiffs' DTPA claim."). The AGs cite no case holding that the UDTPA abrogated the common law requirement of a duty to disclose.

[336] *Cedillo v. Igbanugo*, 2019 WL 2168766, at *3 (Minn. Ct. App. May 20, 2019).

[337] *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 137 (Minn. 2019). Meta's position is that the Court should instruct the jury on the requirement for a causal nexus under Minnesota law because Minnesota seeks disgorgement and civil penalties.

[338] AGs move to strike as it is not necessary to prove causal nexus. See above comment re: restitution vs. disgorgement. This misstates the law and this paragraph is unnecessary and would be an error of law to include because Minnesota is not seeking equitable restitution in this case.

See Meta's response in footnote 330, *supra*.

**Count XXVII: Alleged Violation of Minnesota Uniform Deceptive Trade Practices Act (Unfair or Unconscionable Acts or Practices)**

**Instruction 11.1**

The State of Minnesota alleges that Meta violated the Minnesota Uniform Deceptive Trade Practices Act which broadly [339][340] prohibits persons from engaging in unfair or unconscionable acts or practices in the course of business.

For Minnesota to prevail on its claim under the UDTPA based on unfair or unconscionable acts or practices, you must find that Minnesota has proven by a preponderance of the evidence that Meta:

1. Meta, who is a person;
2. Engaged in an act or practice or omission that was unfair or unconscionable; and
3. The unfair or unconscionable act or practice occurred in the course of business.[341]

To recover disgorged profits or civil penalties Minnesota must also prove that a causal nexus exists between the allegedly unfair or unconscionable act or practice and harm suffered by consumers.[342][343]

---

[339] Meta's position is that including the qualifier "broadly" is both unnecessary and unduly suggestive. The jury's role is not statutory interpretation, which is a question of law. *See State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000).

[340] AGs reject the deletion of the term "broadly." Minnesota's consumer protection laws have consistently been interpreted broadly by Minnesota courts in favor of consumers because of their remedial purpose. *See State by Humphrey v. Phillip Morris, Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) ("These statutes are generally very broadly construed to enhance consumer protection.").

[341] Minn. Stat. § 325D.44, subd. 1(13); *id.* § 325D.44, subd. 2(b); *id.* § 325F.69, subd. 8.

[342] *Grp. Health Plan v. Philip Morris Inc.*, 621 N.W.2d 2, 14 (Minn. 2001). Meta's position is that Minnesota must prove a causal nexus between harm suffered by consumers and allegedly deceptive conduct to recover civil penalties, damages, and/or disgorgement.

[343] AGs object to inclusion. Incorrect as a matter of law. Minn. Stat. section 8.31, subd. 3 provides that the AGO is entitled to recover civil penalties from any person "found to have violated" the law – the statute lays out the entitlement upon a finding of liability; there is no causal nexus prerequisite.

(….continued)

**Definitions**

*Unconscionable or Unfair Act or Practice*

An unfair or unconscionable act or practice is any method of competition, act, or practice that: (1) offends public policy as established by the statutes, rule or common law of Minnesota; (2)[344] is unethical, oppressive, or unscrupulous; or (32) is substantially injurious to consumers.[345]

*Person*

"'Person'" may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations." Minn. Stat. § 645.44, subd. 7. Additionally, Minnesota's Consumer Fraud Act defines "person" as "any natural person or a legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." Minn. Stat. § 325F.68, subd. 3.

*Causal Nexus*

A "causal nexus" is a causal connection between allegedly fraudulent statements and the plaintiff's claimed injuries.[346] To consider whether a causal nexus exists, you must consider all the facts surrounding the trade practice, such as: (1) whether the deceptive or unfair trade practice was longstanding, pervasive, and widespread in communications directed to consumers of the product; (2) whether Meta intended and understood that

---

*See* Meta's response in footnote 330, *supra*. Nothing in Minn. Stat. section 8.31, subd. 3 alters the underlying requirements for a finding of liability with respect to actions brought by the Minnesota Attorney General.

[344] Meta's position is that Minnesota has the burden to establish the applicable public policy as a matter of law to submit that issue to a jury. Minnesota has failed to identify or otherwise plead a public policy in its Complaint, and it cannot amend its Complaint to do so through these jury instructions.

AGs object to striking this provision. Definition is set by statute and should be included.

[345] MINN. STAT. §§ 325D.44, subds. 1(13); 325D.44, subd. 2(b); 325F.69, subd. 8.

[346] *Cedillo v. Igbanugo*, 2019 WL 2168766, at *3 (Minn. Ct. App. May 20, 2019).

consumers would rely on the deceptive or unfair trade practice; and (3) whether the information was of a kind on which consumers would typically rely.[347][348]

---

[347] *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 137 (Minn. 2019).  Meta's position is that the Court should instruct the jury on the requirement for a causal nexus under Minnesota law because Minnesota seeks disgorgement and civil penalties.

[348] AGs object. This is incorrect as a matter of law. Minn. Stat. section 8.31, subd. 3 provides that the AGO is entitled to recover civil penalties from any person "found to have violated" the law – the statute lays out the entitlement upon a finding of liability; there is no causal nexus prerequisite.

See Meta's response in footnote 343, *supra*.

**<u>Count XXIX: Alleged Violation of the Nebraska Consumer Protection Act</u>**
**<u>(Deceptive Acts or Practices)</u>**

**Instruction 12**

The State of Nebraska alleges that Meta violated the Nebraska Consumer Protection Act ("NE CPA"), which prohibits persons from engaging in deceptive acts or practices in the conduct of any trade or commerce.

To establish a violation of the NE CPA based on a deceptive act or practice, Nebraska must prove each of the following elements by a preponderance of the evidence:

1. That Meta engaged in an act or practice or omission that was deceptive;
2. The deceptive act or practice occurred in the conduct of trade or commerce; and
3. The deceptive act or practice had an impact upon the public interest.[349]

It is not necessary to demonstrate an intent to deceive. You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers.[350][351]

**Definitions**

***Deceptive Act or Practice***

---

[349] *Nelson*, 605 N.W.2d at 141-42 ("To be actionable under the CPA, therefore, we conclude that the unfair or deceptive act or practice must have an impact upon the public interest.").

[350] *See* Court's Charge to the Jury at 18, *Wounded Warrior Project, Inc. v. Wounded Warriors Family Support*, No. 8:07-CV-00370 (D. Neb. Sep. 9, 2025), ECF No. 321.

[351] This instruction should be excluded because the instructions already make clear that Nebraska only needs to prove the above-listed elements, and it would confuse the jury to introduce concepts of intent when it is not an element of Nebraska's CPA claim. The cited jury charge is not instructive here because it is not a model jury instruction, and it is from a private cause of action.

AGs object to deletion. This instruction clarifies an important aspect of the law. Meta does not dispute the accuracy of this description of Nebraska law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Nebraska.

A deceptive act or practice is one that possesses the tendency or capacity to mislead or creates the likelihood of deception.[352]

***Trade or Commerce***[353]

Trade or commerce means the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska.[354]

---

[352] *Raad v. Wal–Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998); *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 115, 742 N.W.2d 243, 249 (2007); *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 276 Neb. 481, 489, 755 N.W.2d 583, 591 (2008).

[354] Neb. Rev. Stat. § 59–1601(2).

## Count XXX: Alleged Violation of the Nebraska Consumer Protection Act (Unfair Acts or Practices)

**Instruction 12.1**

The State of Nebraska alleges that Meta violated the Nebraska Consumer Protection Act ("NE CPA"), which prohibits persons from engaging in unfair acts or practices in the conduct of any trade or commerce.

To establish a violation of the NE CPA based on an unfair act or practice, Nebraska must prove each of the following elements by a preponderance of the evidence:

1. That Meta engaged in an act or practice that was unfair;
2. The unfair act or practice occurred in the conduct of trade or commerce; and
3. The unfair act or practice had an impact upon the public interest.

**Definitions**

***Unfair Act or Practice***

An unfair act or practice is one that either (1) falls within some common law, statutory, or other established concept of unfairness[355] or (2) is immoral, unethical, oppressive, or unscrupulous.[356]

***Trade or Commerce***

Trade or commerce means the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska.[357]

---

[355] Meta's position is that Nebraska has the burden to establish the relevant law, statute, or established concept of unfairness in order to submit this issue to a jury. It would be inappropriate for the jury to speculate as to whether the unfair act or practice "falls within some common law, statutory, or other established concept of unfairness."

AGs disagree with the above statement and it is consistent with Nebraska state law. Nebraska reserves the right to further discuss and raise our position with the Court regarding the same

[356] *Stenberg*, 276 Neb. at 489, 755 N.W.2d at 591.

[357] Neb. Rev. Stat. § 59–1601(2).

**Count XXXI: Alleged Violation of the Nebraska Uniform Deceptive Trade Practices Act (Deceptive Acts or Practices)**

**Instruction 12.2**

The State of Nebraska alleges that Meta violated the Nebraska Uniform Deceptive Trade Practices Act ("NE UDTPA"), which prohibits persons from engaging in deceptive acts or practices in the course of business.[358]

To establish a violation of the NE UDTPA based on a deceptive trade practice, Nebraska must prove each of the following elements by a preponderance of the evidence:

1. Meta engaged in a deceptive trade practice; and
2. That deceptive trade practice occurred in the course of its business, vocation, or occupation.;[359]

It is not necessary to demonstrate an intent to deceive. You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers.[360][361]

**Definitions**

*Deceptive Trade Practice*

---

[358] Neb. Rev. Stat. § 87-302(a) ("A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, . . .").

[359] Neb. Rev. Stat. § 87-302(a).

[360] Neb. Rev. Stat. §87-303(a)

[361] This instruction should be excluded because the instructions already make clear that Nebraska only needs to prove the above-listed elements, and it would confuse the jury to introduce concepts of intent when it is not an element of a UDTPA claim by the State.

AGs object to deletion. This instruction clarifies an important aspect of the law. Meta does not dispute the accuracy of this description of Nebraska law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of Nebraska.

The following, which when conducted in the course of business, constitute deceptive trade practices.[362] As relevant to Nebraska's claims, Meta engaged in a deceptive trade practice if it did any one or more of the following:[363]

- Caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
- Represented that goods or services have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

---

[362] Neb. Rev. Stat. § 87-302(a).

[363] *Id.* at § 87-302(a)(2), (5), (7), (9) and (14).

**<u>Count XXXII: Alleged Violation of the Nebraska Uniform Deceptive Trade Practices Act (Unconscionable Acts or Practices)</u>**

**Instruction 12.3**

The State of Nebraska alleges that Meta violated the Nebraska Uniform Deceptive Trade Practices Act ("NE UDTPA"), which prohibits persons from engaging in unconscionable acts or practices in the course of business.[364]

To establish a violation of the NE UDTPA based on an unconscionable trade practice, Nebraska must prove each of the following elements by a preponderance of the evidence:[365]

1. Meta is a supplier;
2. Meta engaged in unconscionable acts or practices; and
3. The unconscionable acts or practices were in connection with a consumer transaction.

To prove that Meta engaged in an unconscionable act or practice, Nebraska must prove by a preponderance of the evidence that Meta engaged in an act or practice that, in light of all the surrounding circumstances, was so one-sided as to be unconscionable.[366][367]

---

[364] Meta's position is that the issue of whether Meta's alleged conduct constitutes an unconscionable act or practice is a question of law for the court.  Neb. Rev. Stat § 87–303.01(2).  However, to the extent that the Court determines it would be appropriate for the jury to decide this issue, Meta believes that the proposed instructions as revised by Meta are sufficient.

Meta has demanded a jury trial in this federal case. *See* Meta's Amended Answer to the Multistate Attorneys General Complaint, Dkt. No. 167, at 93. The State AGs' position is that it is inappropriate to include argument as to whether certain claims are triable to the jury or judge in the context of this jury instructions exercise. To the extent Meta attempts to withdraw its jury demand in the future, the State AGs reserve all rights.

[365] Neb. Rev. Stat § 87-303.01(1).

[366] *See Fuentes v. Woodhouse Ford, Inc.*, No. A-02-1102, 2004 WL 1243589, at *10 (Neb. Ct. App. June 8, 2004) (relying on contract law principles to analyze unconscionability under the NE UDTPA due to the lack of case law discussing unconscionability in the UDTPA's context (citing *T.V. Transmission, Inc. v. City of Lincoln*, 374 N.W.2d 49, 56 (Neb. 1985))).

[367] AGs object to the inclusion of this statement in the instructions. The cited case is unpublished and not appropriate for citation under Nebraska rules. If included, AGs would propose  the Black's Law Dictionary definition: "(Of an act or transaction) showing no regard for conscience; affronting the sense of justice, decency, or

(….continued)

reasonableness. " And: "Unconscionability is determined in the light of all circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Adams v. American Cyanamid Co.*, 1 Neb. App. 337, 358, 498 N.W.2d 577, 590 (1992).

While Meta maintains that unconscionability is a question of law under the NE UDTPA, Meta disputes the AGs' objection to Meta's proposed definition of unconscionability and objects to the AGs' proposed alternative.  Meta's proposed language comes directly from a Nebraska Supreme Court decision (*T.V. Transmission*, 374 N.W.2d at 56) and was quoted in *Adams*, 1 Neb. App. 337 at 358.  The AGs' proposed alternative definition incorporates aspects of contract law that are unnecessary and likely to confuse the jury.

Regarding Meta's reliance on *Fuentes*, Nebraska rules provide that unpublished opinions may be cited "if the opinion has persuasive value on a material issue and no published opinion of the Court of Appeals or another court would serve as well or when such case is related."  Neb. Ct. R. App. § 2-102(E).  Meta is not aware of, and the AGs have not cited, any other decision defining "unconscionability" under the NE UDTPA. Regardless, the AGs cite no case holding that this Court cannot consider unpublished opinions as *persuasive* authority on Nebraska law.

107

**Count XXXIII: Alleged Violation of the New Jersey Consumer Fraud Act (Commercial Practices in Violation of the Act)**

**Instruction 13**

The Attorney General of the State of New Jersey, Matthew Platkin, and Acting Director of the New Jersey Division of Consumer Affairs, Elizabeth Harris[368] (collectively, "New Jersey"), alleges that Meta violated the New Jersey Consumer Fraud Act ("NJ CFA") which prohibits persons from engaging in unconscionable and deceptive acts or practices. There are three possible bases for liability under the NJ CFA.[369]

*Affirmative Acts*

The first type of violation relates to affirmative acts under the NJ CFA. An aAffirmative acts may include an abusive commercial practice[370], an unconscionable or abusive[371] commercial practice, deception, fraud, false pretense, false promise, or misrepresentation.[372] For New Jersey to prevail on its claim under the NJ CFA on an affirmative acts theory, you must find that New Jersey has proven each of the following elements by a preponderance of the evidence:

---

[368] These additional Plaintiffs have been stricken as unnecessary and to better align with the format of other states. AG objects. The NJ AG pled their case with particularity as to the named plaintiff in the action.

[369] N.J. Civ. Jury Instructions 4.43(A); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("To violate the [NJ CFA], a person must commit an 'unlawful practice' as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations.").

[370] AGs agree with this language so long as we add in "abusive commercial practice" and note that "abusive" and "unconscionable" are separate things. We can agree to Meta's language and the strikethrough (already accepted) with this addition.

Meta can agree to including "abusive" but objects to the AGs' phrasing. "May include" is inconsistent with the statute. *See Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *2 (3d Cir. Apr. 28, 2025) ("The CFA deems six types of affirmative acts unlawful."). Additionally, per Meta's subsequent edit, "an abusive commercial practice" is not a separate unlawful act listed in the statute.

[371] Meta proposes the addition of "abusive" commercial practices be consistent with the language of the statute. *See* N.J. Stat. Ann. § 56:8-2; *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *2 (3d Cir. Apr. 28, 2025) (explaining the CFA "deems 'unconscionable or abusive' commercial practices" unlawful).

[372] N.J. Civ. Jury Instructions 4.43(B).

1. That Meta used an abusive commercial practice,[373] unconscionable or abusive[374] commercial practice, deception, fraud, false pretense, false promise, or misrepresentation; and
2. That Meta did so in connection with the sale or advertisement of any merchandise.[375]

**Definitions**[376]

*Unconscionable Commercial Practice*
An "unconscionable commercial practice" is an activity which is basically unfair or unjust which materially departs from standards of good faith, honesty in fact and fair dealing in the public marketplace.[377]  To be unconscionable, there must be factual dishonesty and a lack of fair dealing.

*Deception*
"Deception" is conduct or advertisement which is misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer.  It does not matter that at a later time it could have been explained to a more knowledgeable and inquisitive consumer.  It does not matter whether the conduct or advertisement actually have misled consumers.  The fact that Meta may have acted in good faith is irrelevant.  It is the capacity to mislead that is important.[378]

*Fraud*
"Fraud"[379] is a perversion of the truth, a misstatement or a falsehood communicated to another person creating the possibility that that other person will be cheated.

---

[373] AGs agree with the modifications to this portion of the instruction so long as "abusive commercial practice" is included.

[374] Meta proposes the addition of "abusive" commercial practices be consistent with the language of the statute.  *See* N.J. Stat. Ann. § 56:8-2; *Antar v. BetMGM, LLC*, No. 24-1364, 2025 WL 1219316, at *2 (3d Cir. Apr. 28, 2025) (explaining the CFA "deems 'unconscionable or abusive' commercial practices" unlawful).

[375] N.J. Stat. Ann. § 56:8-2; N.J. Civ. Jury Instructions 4.43(B).

[376] N.J. Civ. Jury Instructions 4.43(B).

[377] *See D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 29 (App. Div. 1985) for illustrative criteria in evaluating unconscionability.

[378] *See* NJ Consumer Fraud Act; Charge 4.43(B) (approved 5/1998; Revised 01/2025).

[379] The terms "fraud," "false pretense," "false promise" and "misrepresentation" have traditionally been defined in this State as requiring an awareness by the maker of the statement (….continued)

109

*False Pretense*

"False pretense" is an untruth knowingly expressed by a wrongdoer.

*False Promise*

"False promise" is an untrue commitment or pledge, communicated to another person, to create the possibility that that other person will be misled.

*Misrepresentation*

A "misrepresentation" is an untrue statement made about a fact which is important or significant to the sale/advertisement, and is communicated to another person to create the possibility that other person will be misled. A "misrepresentation" is a statement made to deceive or mislead.

*Person*

A "person" includes not only a human being or the individual's legal representative but also a partnership, corporation, company, trust, business entity, association as well as the individual's agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee or beneficiary of a trust.

*Sale*

A "sale" includes transfer of ownership; rental; distribution; offer to sell, rent, or distribute; and attempt to sell, rent or distribute, either directly or indirectly. The legislature intends "to provide the broadest protection to NJ consumers; a stilted definition of the concept of "sales" by limiting such transactions only to monetary consideration is not in keeping with that intent."[380]

*Advertisement*

---

of its inaccuracy accompanied by an intent to mislead. However, in *Fenwick v. Kay Amer. Jeep, Inc*., 72 *N.J*. 372, 377 (1977), the Supreme Court noted that "the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact." *See also D'Ercole Sales, Inc. v. Fruehauf Corp*., 206 N.J. Super. at 22 (App. Div. 1985). Therefore, the definitions provided for these four terms do not require either intent or knowledge.

[380] *Platkin, et al. v. TikTok Inc., et al.,* ESX-C-228-24 (N.J. Super. Sep. 26, 2025). NOTE: this was not included in the original exchange as the opinion had not been released.

Meta objects to this addition as unnecessary because the definition as currently drafted, which comes directly from New Jersey's model jury instructions, is sufficient. Additionally, the addition is merely an excerpt of a court decision that is not in the form of a definition for jury instructions, which will only serve to confuse the jury. Further, the case the AGs cite is a New Jersey trial court order, not controlling law.

110

An "advertisement" is a notice designed to attract public attention.    Modes of communication include the attempt, directly or indirectly, by publication, dissemination, solicitation, endorsement, circulation or in any way to induce any person to enter or not enter into an obligation, acquire any title or interest in any merchandise, increase the consumption of any merchandise or make any loan.

### *Merchandise*

"Merchandise" includes any objects, wares, goods, commodities, services or anything offered directly or indirectly to the public for sale. ~~The legislature intends "to provide the broadest protection to NJ consumers; a stilted definition of the concept of "sales" by limiting such transactions only to monetary consideration is not in keeping with that intent."[381]~~

### *Acts of Omissions*

The second type of violation relates to the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission.[382]    For New Jersey to prevail on its claim under the NJ CFA based on an omissions theory, you must find that New Jersey has proven each of the following elements by a preponderance of the evidence:

1.  That Meta knowingly concealed, suppressed, or omitted a material fact;
2.  That Meta did so purposely or with the intent that others would rely on that concealment, suppression, or omission; and
3.  That Meta did so in connection with the sale or advertisement of any merchandise.[383]

The fact that Meta acted knowingly or with intent is an essential element for omissions under the NJ CFA, meaning that New Jersey must prove Meta acted with knowledge or intent for any violation based on an omission.[384] It is not necessary that any consumer be,

---

[381] *Platkin, et al. v. TikTok Inc., et al.,* ESX-C-228-24 (N.J. Super. Sep. 26, 2025). NOTE: this was not included in the original exchange as the opinion had not been released.

Meta objects to this addition as unnecessary because the definition as currently drafted, which comes directly from New Jersey's model jury instructions, is sufficient.  Additionally, the addition is merely an excerpt of a court decision that is not in the form of a definition for jury instructions, which will only serve to confuse the jury.  Further, the case the AGs cite is a New Jersey trial court order, not controlling law.

[382] N.J. Stat. Ann. § 56:8-2; N.J. Civ. Jury Instructions 4.43(C).

[383] N.J. Stat. Ann. § 56:8-2

[384] N.J. Civ. Jury Instructions 4.43(C).

in fact, misled or deceived by another's conduct.[385] Where the alleged consumer fraud can be viewed as either an omission or an affirmative act, Meta is liable for the conduct as an act of omission only where Meta committed a consumer fraud by omission and intent is shown.[386]

**Definitions**[387]

***Knowingly***

A person acts "knowingly" if the person is aware that the person's conduct is of a nature that it is practically certain that the person's conduct will cause a particular result. The person acts with knowledge, consciously, intelligently, willfully or intentionally.

***Conceal***

To "conceal" is to hide, secrete, or withhold something from the knowledge of others or to hide from observation, cover or keep from sight or prevent discovery of. "Concealment" is a withholding of something which one is bound or has a duty to reveal so that the one entitled to be informed will remain in ignorance.

***Suppress***

To "suppress" is to put a stop to a thing actually existing, to prohibit or put down, or to prevent, subdue, or end by force. "Suppression" is the conscious effort to control or conceal unacceptable impulses, thought, feelings or acts.

***Omission***

An "omission" is neglecting to perform what the law requires. Liability must be imposed for an omission if there is a duty to act under the circumstances.[388]

---

[385] Meta's position is that the instruction makes clear to the jury what New Jersey must prove to establish a violation by omission, and it is unnecessary and confusing to instruct the jury on what New Jersey does not need to prove.

[386] *Id.*

AGs do not object to the inclusion of this last sentence only if the inserted language immediately preceding is also included.

As noted above, Meta objects to the AGs' proposed insertion.

[387] *Id.*

[388] *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J. 2012) ("Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase . . . . [T]here can be no [unlawful conduct], or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place" (alteration in original) (quoting *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009))); *Hughes v. Panasonic Consumer Elecs.* (….continued)

112

*Material*

A fact is "material" if either (1) a reasonable consumer would attach importance to it in making their decisions or determining their conduct or (2) if the speaker knows or has reason to know that consumers are likely to consider the fact important in making their decisions or determining their conduct.[389]

*Purposely*

A person acts "purposely" if it is the person's conscious object to engage in conduct that of a certain nature or cause a particular result and the person is aware of hopes or believes that the attendant circumstances exist.

*Intent*

"Intent" is a design, resolve, or determination with which a person acts. It refers only to the state of mind existing when an act is done or omitted.

*Sale* (See Affirmative Acts Definition)

*Advertisement* (See Affirmative Acts Definition)

*Merchandise* (See Affirmative Acts Definition)

<u>Violation of Federal Law</u>

The third type of violation relates to violations of federal law.[390] For New Jersey to prevail on its claim under the NJ CFA based on a violation of federal law, you must find that New Jersey has proven each of the following elements by a preponderance of the evidence:

1. That Meta violated Count I on or after August 5, 2022[391]; and

---

Co., a Div. of Panasonic Corp. of N. Am., No. CV 10-846 (SDW), 2012 WL 12905614, at *4 (D.N.J. Apr. 19, 2012)..

[389] *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 88 (N.J. Super. Ct. App. Div. 2012) ("A statement or matter is material if: '(a) a reasonable man would attach importance to its existence in determining his choice of action . . . ; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.'" (quoting *Restatement (Second) of Torts* § 538(2) (1977))).

[390] N.J. Stat. Ann. § 56:8-4(b).

[391] The provision of the NJ CFA prohibiting violations of other state or federal laws did not become effective until August 5, 2022. *See id.* Thus, any conduct purported to violate N.J. Stat. Ann. § 56:8-4(b) must have occurred after this date.

(….continued)

113

2.  That Meta's violation of Count I had the capacity to mislead consumers.[392]

---

AGs object to this insertion. Prior to the amendment, it was still considered a violation of the CFA, but following the amendment, it became a conclusively presumed violation.

Meta disputes the AGs' objection, which they do not support with any legal authority.  Prior to the enactment of § 56:8-4(b), § 56:8-4 only included what is now § 56:8-4(a), which permits the Attorney General to promulgate rules and regulations necessary to accomplish the NJ CFA's objectives.  Although before the enactment of § 56:8-4(b) violations of specific regulations promulgated under the Act were unlawful, *see Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994), that is distinct from § 56:8-4(b)'s declaration that "any commercial practice that violates State or federal law is conclusively determined to be an unlawful practice under section 2."  *See* N.J. Stat. Ann. § 56:8-4(b).

[392] The enactment of N.J. Stat. Ann. § 56:8-4(b) "did not eliminate the requirement that for conduct to be unconscionable under the NJCFA, it must have the capacity to mislead." *Fed. Trade Comm'n v. Amazon.com, Inc.*, 2025 WL 871715, at *3 (W.D. Wash. Mar. 20, 2025) (rejecting New Jersey's argument that because it stated a claim under the New Jersey Antitrust Act, it also stated a claim of unconscionability under the NJCFA, where the defendant was able to show that its use of its algorithm "does not have the capacity to mislead consumers").

AGs object to this insertion. It is wholly inconsistent with NJ state law. Further, it is irrelevant how W.D. Wash interpreted NJ statute.

Meta disputes the AGs' objection, which they do not support with any legal authority.  New Jersey state courts recognize "[t]he capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 647 A.2d 454, 462 (N.J. 1994).  Because there is a lack of New Jersey case law interpreting N.J. Stat. Ann. § 56:8-4(b) given its recent enactment, the W.D. Washington case is instructive.

114

**Counts XXXIV, XXXV New York**

**Instruction 14-P**

The New York Attorney General alleges that Defendants violated New York General Business Law which broadly prohibits persons from engaging in deceptive acts or practices and false advertising in the conduct of commercial practice. The New York Attorney General contends that representations made by Defendants were false or misleading, and/or were not substantiated at the time the representations were made, and that Defendants failed to disclose material facts to consumers.

To establish a violation of the NY General Business Law based on an affirmative misrepresentation, the New York Attorney General must prove each of the following elements by a preponderance of the evidence:

1. Representations were conveyed in Defendants' consumer oriented statements;
2. The representations had the capacity to mislead or deceive a reasonable person acting reasonably under the circumstances;
3. The representations were material[393], and
4. Meta's deceptive act or practice occurred in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

To establish a violation of the NY General Business Law based on an omission, the New York Attorney General must prove each of the following elements by a preponderance of the evidence:

1. Defendants possessed material information relevant to consumers;
2. That information was not conveyed to consumers;
3. Defendants alone possessed the information or consumers could not have reasonably obtained it;[394] and
4. Meta's deceptive act or practice occurred in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

---

[393] See N.Y. GBL §§ 349 & 350; Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (N.Y. 2012); People v. Gen. Elec. Co., 302 A.D.2d 314, 315 (N.Y. App. Div. 2003).

[394] See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995); Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016); Paradowski v. Champion Petfoods USA, Inc., No. 22-962-CV, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023).

115

It is not necessary to demonstrate an intent to deceive or that consumers relied on Defendants' representations.[395]

It is not necessary for liability to demonstrate that a person actually be misled or deceived by another's conduct. It is not necessary for the State of New York to show that Defendants' intended that their conduct should deceive. What is important is that the affirmative act or omission must have had the potential to mislead or deceive when it was performed.

**Definitions**
*Representations Conveyed: Net Impressions/Express and Implied Representations[396]*

---

[395] See People v. Trump Entrepreneur Initiative LLC, 137 A.D.3d 409, 417 (N.Y. App. Div. 2016); People v. Gen. Elec. Co., 302 A.D.2d 314, 315 (N.Y. App. Div. 2003) (noting intent to deceive not required under N.Y. GBL § 349); People v. Apple Health & Sports Clubs, Ltd., 206 A.D.2d 266, 267 (N.Y. App. Div. 1994) (noting intent not required for N.Y. Exec. Law § 63(12) fraud).

[396] See FTC v. NPB Advertising, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that it is the overall impression of an ad, not an isolated word or phrase, that determines representation conveyed); FTC v. Nat'l Urological Grp., 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008) (stating that the court must look to the net impression rather than literal truth or falsity of the words in the ad; if an ad explicitly states claims, there is no need to look to extrinsic evidence); FTC v. Bronson Partners, LLC, 564 F. Supp. 2d 119, 125 (D. Conn. 2008) ("It is therefore necessary in these cases to consider the advertisement in its entirety . . . . The entire mosaic should be viewed rather than each tile separately.") (quoting FTC v. Sterling Drug, Inc., 317 F.2d 669, 675 (2d Cir. 1963))); FTC v. Med. Billers Net., 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (stating that "each representation must stand on its own merit, even if other representations contain accurate, non-deceptive information") (citing FTC v. Gill, 71 F. Supp. 2d 1030, 1044 (C.D. Cal. 1999))); Kraft, Inc. v. FTC, 970 F.2d 311, 319 (7th Cir. 1992) (the "Miser" example); Kraft, Inc., 114 F.T.C. 40, 121-22 (Jan. 30, 1991) (stating that the primary evidence of what claims an ad can convey to reasonable consumers consists of the ad itself, and that, if the court can't conclude with confidence that a particular message was conveyed, it will not find that claim without extrinsic evidence; such extrinsic evidence can include reliable results from a methodologically sound survey); Thompson Med. Co., 1984 FTC LEXIS 6, at *312-13 (Nov. 23, 1984) (stating that express claims are directly stated, that implied claims are any claims that are not express, and that if a claim can't be discerned, one then looks to extrinsic evidence); Bristol-Myers Co, 1983 FTC LEXIS 64, at *123 (July 5, 1983) (stating that an ad is capable of conveying more than one impression); FTC v. Colgate-Palmolive Co., 380 U.S. 374, 391-92 (1965) (stating that it is not necessary for the Commission to conduct a survey of the viewing public before it can determine that commercials had a tendency to mislead); People v. Orbital Publishing Group, Inc., 169 A.D.3d 564, 566 (N.Y. App. Div. 2019) (finding disclaimer insufficient to negate a solicitation's "overall misleading impression"); People v. Charter Communications, Inc., (….continued)

116

To determine whether the claims identified by Plaintiff were conveyed by the consumer-oriented statements concerning the Platforms, you must assess the overall net impression of the statements, not an isolated phrase or word or the literal truth or falsity of the words in the statements. A claim can be express or implied. An express claim is one that is stated explicitly, which itself establishes the meaning of the claim. An implied claim is one that is made indirectly. To illustrate, suppose a certain car gets poor gas mileage, say, 10 miles per gallon. One advertisement boasts that this car gets 30 miles per gallon while another identifies the car as the "Miser," depicts it rolling through the countryside past one gas station after another, and proclaims that the car is inexpensive to operate. Both ads make deceptive claims as to good gas mileage; the first does so expressly, the second does so impliedly.

You may find that a statement contains a claim even if the statement contains other claims, as well. If a statement is capable of conveying more than one impression to the consumer and any one of them is false or misleading, the statement may be found to be false or misleading. In addition, speaker can be liable for misleading claims made through consumer testimonials or endorsements.

If the statement makes an express claim or an implied claim that is reasonably clear on its face, you need not look to other evidence to ascertain whether the advertisement made the claim. Plaintiff is not required to put forth any evidence of statement's meaning in the form of consumer research or surveys.

If you find that Plaintiff has proven that the claims in the New York Executive Law and New York General Business Law counts were conveyed by Defendants' statements concerning the Platforms, then you must consider the second element of proof.

**Likely to Mislead – Reasonable Consumer[397]**

---

162 A.D.3d 553, 554 N.Y. App. Div. 2018) (finding lower court correctly reviewed disclosures in light of other statements made in advertisement); People v. Applied Card Sys., Inc., 27 A.D.3d 104, 107-108(N.Y. App. Div. 2005) (reviewing solicitation offers "as a whole").

[397] *See* ECM BioFilms, Inc. v. FTC, 851 F.3d 599, 610-11 (6th Cir. 2017) (an ad conveys a claim "if consumers acting reasonably under the circumstances would interpret the advertisement to contain that message") (citing Pom Wonderful v. FTC, 777 F.3d 478, 490 (D.C. Cir. 2015))); FTC v. Fleetcor Technologies, Inc., No. 1:19-CV-5727, 2022 WL 3273286, at *6 (N.D. Ga. Aug. 9, 2022) (stating that the FTC is not required to prove that customers were actually deceived); FTC v. Washington Data Res., 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) ("Advertising deception is evaluated from the perspective of the reasonable prospective purchaser, that is, a reasonable consumer in the audience targeted by the advertisement."); FTC v. Nat'l Urological Grp., 645 F. Supp. 2d 1167, 1188 (N.D. Ga. 2008) (stating that an ad is deceptive if it is likely to mislead customers acting reasonably under the circumstances); People v. Gen. Elec. Co., 302 A.D.2d 314, 315 (N.Y. App. Div. 2003) (to establish claim under GBL § 349, "the
(….continued)

Whether a representation is likely to mislead is evaluated from the perspective of the reasonable consumer in the audience targeted by the speaker. Plaintiff does not need to show that consumers were actually deceived. Rather Plaintiff only needs to show that the representation was likely to mislead consumers acting reasonably under the circumstances.

### Mislead[398]

A representation is material if it involves information important to consumers and is likely to affect their conduct regarding a product, such as influencing a decision to buy or use a product. Claims that are stated explicitly or significantly involve health are presumed material.

### Consumer Oriented[399]

A statement is consumer oriented if it is aimed at a larger class of individuals or entities, rather than a one-off statement provided only to given individuals, or if it has a broad impact on consumers at large.

---

deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" (citation omitted); accord People v. Applied Card Sys., Inc., 27 A.D.3d 104, 106 (N.Y. App. Div. 2005).

[398] See Kraft, Inc. v. FTC, 970 F.2d 311, 322 (7th Cir. 1992) (claims that significantly involve health are presumptively material); FTC v. NPB Advertising, 218 F. Supp. 2d 1352, 1358 (M.D. Fla. 2016) (stating that, because an express claim inherently misleads a consumer, an express claim is presumptively material); FTC v. Washington Data Resources, 856 F. Supp. 2d 1247, 1272 (M.D. Fla. 2012) (stating a representation is material if likely relied upon by a reasonable prospective consumer); FTC v. Nat'l Urological Group, Inc., 645 F. Supp. 2d 1167, 1190-91(N.D. Ga. 2008) (applying the presumption of materiality to claims that dietary supplements were effective to treat weight loss and sexual dysfunction); FTC v. QT, Inc., 448 F. Supp. 2d 908, 965 (N.D. Ill. 2008) (stating that a medical, health related claim is material); FTC v. Transnet Wireless Corp., 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007) (stating that a representation is material if it is the kind relied upon by a reasonable person); People v. Image Plastic Surgery, LLC, No. 450389/19, 2022 N.Y. App. Div. LEXIS 6082, at *2 (N.Y. App. Div. Nov. 3, 2022) (accepting the substance of defendants' misrepresentations as evidence of materiality).

[399] Plavin v. Grp. Health Inc., 35 N.Y.3d 1, 11, 146 N.E.3d 1164 (2020); New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 320 (1995).

**Counts XXXVI, XXXVII, XXXVIII New York**

**Instruction 14.1-P**

The New York Attorney General alleges that Defendants violated New York Executive Law which broadly prohibits persons from engaging in repeated fraudulent or illegal acts through the making of fraudulent representations in their public statements without adequate substantiation and by illegally making deceptive statements and engaging in unfair acts or practices.

To establish a violation of the NY Executive Law based on repeated fraudulent acts, the New York Attorney General must prove each of the following elements by a preponderance of the evidence[400]:

1. Representations were conveyed, whether expressly or impliedly, in Defendants' public statements;
2. The representations were repeated or persistent (i.e. they were made more than once or to more than one consumer);
3. The representations had the capacity or tendency to deceive not only the average consumer, but also the ignorant, the unthinking, and the credulous, or created an atmosphere conducive to fraud.

It is not necessary to demonstrate an intent to deceive; that consumers relied on Defendants' representations; or that the claims were material.

A representation may have the capacity to deceive because it was made without the disclosure of information necessary to prevent the statement from being misleading. Not all omissions are deceptive, even if providing the information would benefit consumers.

It is not necessary for liability to demonstrate that a person actually be misled or deceived by another's conduct. It is not necessary for the State of New York to show that Defendants' intended that their conduct should deceive. What is important is that the affirmative act must have had the potential to mislead or deceive when it was performed.

---

[400] See N.Y. Exec. Law § 63(12); People v. Trump, No. 452564/2022, 2023 N.Y. Misc. LEXIS 5705, at *40 (N.Y. Sup. Ct. 2023) ("It is settled that a standalone cause of action under Executive Law § 63(12) does not require demonstration of materiality"); People v. Trump Entrepreneur Initiative LLC, 137 A.D.3d 409, 417 (N.Y. App. Div. 2016); People v. Gen. Elec. Co., 302 A.D.2d 314, 314 (N.Y. App. Div. 2003) (noting that § 63(12) protects "not only the average consumer, but also 'the ignorant, the unthinking and the credulous'") (quoting Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 273 (N.Y. 1977)); People v. Apple Health & Sports Club, Ltd., 206 A.D.2d 266, 267 (N.Y. App. Div. 1994).

To establish a violation of the NY Executive Law based on repeated illegal acts, the New York Attorney General must prove, by a preponderance of the evidence, that Defendants engaged in a persistent or repeated violation of State or federal law.[401]  In this case, violations of the New York General Business Law's prohibition on deceptive acts or practices or false advertising and Section 5 of the Federal Trade Commission Act's prohibition on unfair acts and practices are conclusively presumed to be unlawful practices. In accordance with the previous definitions and the definition of unfair acts and practices below, you must decide whether Plaintiff has proven that Defendants' conduct is conclusively presumed to constitute an unlawful practice under the New York's Executive Law.

**Definitions**

*Capacity to Deceive[402]*

Whether a representation has the capacity to deceive is evaluated from the perspective of the credulous, or gullible, consumer, who is more likely to believe something than the average consumer. Plaintiff does not need to show that any consumers were actually deceived. Rather, Plaintiff only needs to show that the representation was likely to mislead consumers. The New York Attorney General's Executive Law Counts protects not only the average consumer but also the ignorant, the unthinking, and the credulous.

*Unfair Acts or Practices[403]*

A commercial practice violates Section 5 of the FTC Act if the practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, you may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.

*Representations Conveyed: Net Impressions/Express and Implied Representations*

See Definitions for Instruction 14-P

---

[401] *See* People ex rel. Spitzer v. Applied Card Sys., Inc., 27 A.D.3d 104, 109 (2005) FTC v. Shkreli, 2022 U.S. Dist. LEXIS 7715, at *94 (S.D.N.Y. Jan. 14, 2022).

[402] See N.Y. Exec. Law § 63(12); People v. Gen. Elec. Co., 302 A.D.2d 314, 314 (N.Y. App. Div. 2003) (noting that § 63(12) protects "not only the average consumer, but also 'the ignorant, the unthinking and the credulous'") (quoting Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 273 (N.Y. 1977))).

[403] 15 U.S.C. § 45(a)(1).; 15 U.S.C. § 45(n).

**Count XXXIV: Alleged Violation of N.Y. Gen. Bus. Law § 349 (Deceptive Acts and Practices)** [404]

**Instruction 14-D**

The New York Attorney General alleges that Meta violated New York General Business Law ("NY GBL") Section 349, which prohibits persons from engaging in deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York. [405]

To prevail on its claim under GBL Section 349, New York must prove each of the following elements by a preponderance of the evidence: [406]

1. Meta's act or practice was consumer-oriented;

2. Meta's act or practice was deceptive in a material way;

3. Meta's act or practice occurred in the conduct of any business, trade or commerce or in the furnishing of any service in New York; [407] and

4. Meta's conduct caused injury to consumers. [408]

---

[404] Meta's position is that the jury should be instructed on each count separately.

[405] N.Y. Gen. Bus. Law § 349(a).

[406] N.Y. Pattern Jury Instructions–Civil 3:20(IX); 4F Robert L. Haig, New York Practice Series – Commercial Litigation in New York State Courts § 127:41 (5th ed.); *see also People ex rel. Spitzer v. Applied Card Sys., Inc.*, 27 A.D.3d 104 (3d Dep't 2005) (applying these elements to claims brought by the New York Attorney General under GBL Sections 349 and 350).

[407] *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002) ("[t]he reference in section 349(a) to deceptive practices in 'the conduct of any business, trade or commerce or in the furnishing of any service *in this state*' unambiguously evinces a legislative intent to address commercial misconduct occurring within New York."); *4 K & D Corp. v. Concierge Auctions, LLC*, F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York.").

[408] *Spitzer*, 27 A.D.3d at 106-07 ("As to the claims alleging deceptive business practices or false advertising under General Business Law §§ 349 and 350, the Attorney General was required to establish that respondents engaged 'in an act or practice that is deceptive or misleading in a material way and that [the consumer] has been injured by reason thereof'" (alteration in original)); *People ex rel. Schneiderman v. One Source* (….continued)

Where the alleged deceptive conduct is based on an omission, New York must prove that Meta alone possessed material information that is relevant to consumers and failed to provide this information, or that consumers could not reasonably obtain this information.[409]

**Definitions**

*Consumer-Oriented*

An act or practice is "consumer-oriented" if it is aimed at the consumer public and has a broad impact on consumers at large.[410]

*Deceptive Conduct*

Conduct is "deceptive in a material way" if it is likely to mislead a reasonable consumer acting reasonably under the circumstances.[411]

*Materiality*

---

*Networking, Inc.*, 3 N.Y.S.3d 505, 508 (4th Dep't 2015) (listing "injury as a result of [a] deceptive act" as an element in a suit brought by the Attorney General).

[409] N.Y. Pattern Jury Instructions–Civil 3:20(IX); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (holding that an omission can constitute a deceptive act or practice for purposes of GBL § 349 "where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); *Woods v. Maytag Co.*, No. 10-CV-0559 ADS WDW, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) ("[W]hen a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice."); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (requiring a plaintiff to show why an omission is deceptive by alleging that the information omitted "was solely within [the defendant's] possession or that a consumer could not reasonably obtain such information").

[410] N.Y. Pattern Jury Instructions–Civil 3:20(IX); 4F Robert L. Haig, New York Practice Series – Commercial Litigation in New York State Courts § 127:41 (5th ed.); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169 (2021).

[411] *Dwyer v. Allbirds, Inc.,* 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022) ("New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (quoting *Matthew Bender & Co.*, 37 N.Y.3d at 178).

"Material" information is information that is important to consumers and likely to affect their choices.[412]

### Count XXXV: Alleged Violation of N.Y. Gen. Bus. Law § 350 (False Advertising)

**Instruction 14.1-D**

The New York Attorney General alleges that Meta violated New York General Business Law ("NY GBL") Section 350, which prohibits false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.[413]

To prevail on its claim under GBL Section 350, New York must prove each of the following elements by a preponderance of the evidence:[414]

1. Meta's advertising was consumer-oriented;

2. Meta's advertising was deceptive in a material way;

3. Meta's advertising occurred in the conduct of any business, trade, or commerce or in the furnishing of any service in New York; [415] and

4. Meta's advertising caused injury to consumers.[416]

---

[412] *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 314 (N.D.N.Y. 2022) (applying New York law).

[413] N.Y. Gen. Bus. Law § 350.

[414] N.Y. Pattern Jury Instructions – Civil 3:20(IX); 4F Robert L. Haig, New York Practice Series – Commercial Litigation in New York State Courts § 127:41 (5th ed.); *Spitzer*, 27 A.D.3d at 106-07 (applying these elements to claims brought by the New York Attorney General under GBL Sections 349 and 350).

[415] *Goshen*, 98 N.Y.2d at 324, n.1 (explaining that "[t]he reference in section 349(a) to deceptive practices in 'the conduct of any business, trade or commerce or in the furnishing of any service *in this state*' unambiguously evinces a legislative intent to address commercial misconduct occurring within New York" and subsequently noting that "[t]he standard for recovery under . . .§ 350, while specific to false advertising, is otherwise identical to section 349"); *4 K & D Corp.*, F. Supp. 3d at 547 ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York.").

[416] *Spitzer*, 27 A.D.3d at 106-07 ("As to the claims alleging deceptive business practices or false advertising under General Business Law §§ 349 and 350, the Attorney General was required to establish that respondents engaged 'in an act or practice that is deceptive or misleading in a material way and that [the consumer] has been injured by (….continued)

123

Where the alleged false advertisement is based on an omission, New York must prove that Meta alone possessed material information that is relevant to consumers and failed to provide this information, or that consumers could not reasonably obtain this information.[417]

**Definitions**

*Consumer-Oriented*

An act or practice is "consumer-oriented" if it is aimed at the consumer public and has a broad impact on consumers at large.[418]

*Deceptive Conduct*

Conduct is "deceptive in a material way" if it is likely to mislead a reasonable consumer acting reasonably under the circumstances.[419]

*Materiality*

---

reason thereof'" (alteration in original)); *Schneiderman*, 3 N.Y.S.3d at 508 (listing "injury as a result of [a] deceptive act" as an element in a suit brought by the Attorney General).

[417] N.Y. Pattern Jury Instructions – Civil 3:20(IX); *Oswego Laborers' Loc. 214 Pension Fund,* 647 N.E.2d at 745 (holding that an omission can constitute a deceptive act or practice for purposes of GBL § 349 "where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); *Woods*, 2010 WL 4314313, at *16 ("[W]hen a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice."); *Pelman*, 237 F. Supp. 2d at 529 (requiring a plaintiff to show why an omission is deceptive by alleging that the information omitted "was solely within [the defendant's] possession or that a consumer could not reasonably obtain such information").

[418] N.Y. Pattern Jury Instructions–Civil 3:20(IX); 4F Robert L. Haig, New York Practice Series – Commercial Litigation in New York State Courts § 127:41 (5th ed.); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021).

[419] *Dwyer v. Allbirds, Inc.,* 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022) ("New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'") (quoting *Matthew Bender & Co.*, 171 N.E.3d at 1198).

"Material" information is information that is important to consumers and likely to affect their choices.[420]

---

[420] *Dunham v. Sherwin-Williams Co.*, 636 F. Supp. 3d 308, 314 (N.D.N.Y. 2022) (applying New York law).

**Count XXXVI: Alleged Violation of Repeated and Persistent Fraud in Violation of N.Y. Exec. Law § 63(12)**

**Instruction 14.2-D**

The New York Attorney General alleges that Meta violated Section 63(12) of the New York Executive Law ("NYEL"), which makes unlawful repeated fraudulent or illegal acts or persistent fraud or illegality in the carrying on, conducting, or transaction of business.[421]

To prevail on its claim of repeated and persistent fraud under Section 63(12) of the NYEL, New York must establish, by a preponderance of the evidence, that:[422]

1. Meta engaged in fraud or fraudulent conduct;

2. Meta's conduct was repeated and/or persistent; and

3. Meta's conduct occurred in the carrying on, conducting, or transaction of business in New York.

**Definitions**

*Fraud or Fraudulent*

"Fraud" or "fraudulent" means any device, scheme, or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise, or unconscionable contractual provisions.[423]  Conduct violates Executive Law § 63(12) if it has the capacity or tendency to deceive or creates an atmosphere conducive to fraud.[424]

*Persistent Fraud*

"Persistent fraud" means the continuance or carrying on of any fraudulent act or conduct.[425]

*Repeated*

---

[421] N.Y. Exec. Law § 63(12)

[422] *Id.*

[423] *Id.*

[424] *See People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 523 (N.Y. App. Div. 2003*); People by James v. N. Leasing Sys., Inc.*, 142 N.Y.S.3d 36, 42 (N.Y. App. Div. 2021).

[425] N.Y. Exec. Law § 63(12).

"Repeated" means the repetition of any separate and distinct fraudulent act or conduct which affects more than one person.[426]

---

[426] *Id.*

**Count XXXVII: Alleged Violation of Repeated and Persistent Illegality in Violation of N.Y. Exec. Law § 63(12)**

**Instruction 14.3-D**

The New York Attorney General alleges that Meta violated Section 63(12) of the New York Executive Law ("NYEL"), which makes unlawful repeated fraudulent or illegal acts or persistent fraud or illegality in the carrying on, conducting, or transaction of business.[427]

To prevail on its claim of repeated and/or persistent illegality under Section 63(12), New York must establish, by a preponderance of the evidence, that:

1. Meta engaged in illegality by violating any of the following:

    a. <u>Count I</u>: COPPA;

    b. <u>Count XXXIV</u>: GBL Section 349; or

    c. <u>Count XXXV</u>: GBL Section 350.

2. Meta's violations were repeated; and

3. Meta's violations took place in the carrying on, conducting, or transaction of business in New York.

**Definitions**

***Illegality***

"Illegality" means the continuance or carrying on of any illegal act or conduct.[428]

***Repeated***

"Repeated" means the repetition of any separate and distinct fraudulent act or conduct which affects more than one person.[429]

---

[427] *Id.*

[428] *Id.*

[429] *Id.*

128

**Count XXXVIII: Alleged Violation of FTC Act § 5 in Violation of N.Y. Exec. Law § 63(12)**

**Instruction 14.4-D**

The New York Attorney General alleges that Meta violated Section 63(12) of the New York Executive Law ("NYEL"), which makes unlawful repeated fraudulent or illegal acts or persistent fraud or illegality in the carrying on, conducting, or transaction of business.[430]

To prevail on its claim of repeated and/or persistent illegality under Section 63(12), New York must establish, by a preponderance of the evidence, that:

1. Meta engaged in illegality by engaging in unfair acts or practices in violation of Section 5(a) of the Federal Trade Commission Act;

2. Meta's violations were repeated; and

3. Meta's violations occurred in the carrying on, conducting or transaction of business in New York.

**Definitions**

*Unfair Acts or Practices in Violation of Section 5(a) of the FTC Act*

An act or practice is unfair if:

1. It causes or is likely to cause substantial injury to consumers,

2. That substantial injury is not reasonably avoidable by consumers, and

3. Such substantial injury is not outweighed by countervailing benefits to consumers or to competition.[431]

*Illegality*

"Illegality" means the continuance or carrying on of any illegal act or conduct.[432]

*Repeated*

---

[430] *Id.*

[431] 15 U.S.C. § 45(n).

[432] N.Y. Exec. Law § 63(12).

"Repeated" means the repetition of any separate and distinct fraudulent act or conduct which affects more than one person.[433]

---

[433] *Id.*

**Count XXXIX Alleged Violation of the North Carolina Unfair or Deceptive Trade Practices Act**

**Instruction 15**

The State of North Carolina alleges that Meta violated the North Carolina Unfair or Deceptive Trade Practices Act ("NC UDTPA"), which prohibits unfair or deceptive acts or practices in or affecting commerce.[434]

For North Carolina to prevail on its claim under the NC UDTPA, you must find that North Carolina has proven each of the following elements by a preponderance of the evidence:

1.  That Meta employed an unfair or deceptive act or practice[435] [436] and
2.  That such act or practice was in or affecting commerce.

If North Carolina fails to prove any one of these elements then your verdict on this claim must be for Meta.[437]

---

[434] N.C.G.S. §75-1.1(a). N.C. Gen. Stat. § 75-1.1(a); *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981), *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E.2d 610 (1980), *State ex. rel. Edmisten v. J. C. Penny Co.*, 292 N.C. 311, 233 S.E.2d 895 (1977) and *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975).

[435] Meta proposes moving the cite in footnote 4, *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond,* 80 F.3d 895, 903 (4th Cir. 1996), here to account for Meta's revisions.

[436] Meta's position is that the issue of whether a defendant's alleged conduct constitutes an unfair or deceptive trade practice is a question of law for the judge. *See Gilbane Bldg.,* 80 F.3d at 902 ("Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." (citing *Hardy v. Toler*, 218 S.E.2d 342, 346-47 (N.C. 1975))); N.C.P.I. - Civil 813.05.  However, to the extent that the Court determines it would be appropriate for the jury to decide this issue, Meta believes that the instructions proposed and/or revised by Meta herein are sufficient.

[437] Meta's position is that the instructions should list each element of a NC UDTPA claim rather than the various ways in which the NC UDTPA may be violated (i.e., either an unfair or deceptive act). This format is more consistent with North Carolina's Pattern Jury Instructions. *See* N.C.P.I. – Civil 813.05.

It is not necessary to demonstrate Defendants acted with an intent to deceive, bad faith, or willfulness. You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers.[438][439]

North Carolina also seeks civil penalties against Meta. To recover civil penalties, North Carolina must also prove that, when committed, any conduct which violated the NC UDTPA was knowingly violative of [*Statute X*].[440] [441]

---

[438] *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981); *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 452. 678 S.E.2d 671, 683-84 (2009).

[439] This instruction should be excluded because the instructions already make clear that North Carolina only needs to prove the two above-listed elements, and it would confuse the jury to introduce concepts of intent and bad faith when those are not elements of a NC UDTPA claim brought by the State.

AGs object to deletion, which could add confusion. This instruction clarifies an important aspect of the law. Meta does not dispute the accuracy of this description of North Carolina state law. This short instruction will add clarity to the jury regarding the elements that must be proven by the State of North Carolina.

Meta maintains its objection. It is unnecessarily confusing to instruct the jury on elements it need not find, and it is unfairly prejudicial to instruct the jury that it can find Meta liable "even if there is no evidence." North Carolina's proposed language is not found in North Carolina's model instruction. *See* N.C.P.I – Civil 813.05.

[440] N.C. Gen. Stat. § 75-15.2. It is Meta's position that North Carolina must allege a violation of a specific statute in its Complaint in order to seek civil penalties under the NC UDTPA. To the extent that the Court determines that North Carolina has alleged a violation of a specific statute for the recovery of civil penalties and that the jury should decide whether such violation was knowing, Meta believes that the proposed revisions would assist the jury in understanding the standard.

[441] AGs object to this addition. Consistent with N.C. Gen. Stat. § 75-15.2, the jury should at most be instructed to consider whether Meta's unfair or deceptive acts or practices were, when committed, knowingly violative of a statute. A knowing violation of the NC UDTPA would be sufficient - the plain language of section 75-15.2 requires a knowing violation of "a statute," not a knowing violation of an additional statute. *See Marshall v. Miller*, 47 N.C. App. 530, 544, 268 S.E.2d 97, 104 (1980) (recognizing that "a defendant who knowingly violates G.S. 75-1.1" is subject to a civil penalty).

North Carolina does not dispute that civil penalties require knowing violation of a statute, but North Carolina is incorrect on the applicability of dicta from *Marshall v. Miller*. North Carolina quotes language from a hypothetical contemplating a defendant *already* subject to a court order prohibiting him from further violations of N.C. Gen. Stat. § 75-1.1, which the North Carolina Supreme Court remarked would place him "thereafter

(….continued)

132

**Definitions**

***Unfair Practice***

Unfairness cannot be reduced to a precise definition, rather the determination depends upon the facts of each case and the impact the practice has in the marketplace.[442] A practice is unfair when it offends [*established public policy X*][443][444] as well as when the

---

on notice that civil penalty may be imposed should his conduct *continue.*" *Marshall*, 268 S.E.2d at 104 (emphasis added). That hypothetical has no bearing here, where there is no court order that any alleged conduct by Meta violated North Carolina law. North Carolina does not allege knowing violation of *any* law, much less N.C. Gen. Stat. § 75-1.1, *see* Multistate Compl., Dkt. 207 ¶¶ 1085–88, and it cannot amend its Complaint to do so through these jury instructions.

[442] *Marshall*, 276 S.E.2d at 403; *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 584 (N.C. Ct. App. 1984).

[443] Meta's position is that North Carolina has the burden to establish the applicable public policy as a matter of law in order to submit that issue to a jury. North Carolina alleges that "[f]ailing to comply with the Children's Online Privacy Protection Act, 15 U.S.C. § 6501 *et seq.*, as alleged in Count I, [violates] public policy." Multistate Compl., Dkt. 207. ¶ 1087. Therefore, North Carolina has the burden to establish that a violation of COPPA offends established public policy under North Carolina law before the issue can be submitted to the jury. Meta's position is that COPPA is not an established public policy under North Carolina law. However, to the extent that the Court determines it would be appropriate for the jury to decide whether the alleged practice offends public policy, Meta believes that the proposed revisions would assist the jury in understanding the standard.

[444] AGs disagree that it is necessary to specify particular public policies in the jury instructions. Further, to the extent Meta suggests the public policy prong of the standard is limited to North Carolina law and does not encompass federal law such as COPPA, that is erroneous. *See, e.g., In re Hinson,* 481 B.R. 364, 376 (Bankr. E.D.N.C. 2012) (violation of regulations implementing federal Home Affordable Modification Program supported determination of unfairness on public policy prong, even though federal statute provided no private right of action) *RF Micro Devices, Inc. v. Xiang*, 2015 WL 3892416 at * 5 (M.D.N.C. July 14, 2016) (federal criminal misappropriation of trade secrets statute supported determination of unfairness based on public policy prong).

Meta maintains its objection to asking the jury to determine whether alleged conduct violates some general notion of public policy based on the jury's lay understanding of the term. Under North Carolina law, whether conduct constitutes an unfair practice is not a question for the jury. *See Gilbane Bldg.*, 80 F.3d at 902 ("Occurrence of the alleged conduct, damages, and proximate cause are fact questions for
(….continued)

133

practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[445] A practice is also unfair if it represents an inequitable assertion of power or position.[446]

### Deceptive Practice

A practice is deceptive if it has the capacity or tendency to deceive the consumer. The State of North Carolina need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail.[447]

A misrepresentation could be considered deceptive conduct. However, overly vague or general statements upon which no reasonable person would rely are not deceptive for

---

the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." (citing *Hardy v. Toler*, 218 S.E.2d 342, 346–47 (N.C. 1975))). In any event, North Carolina cites no authority for the proposition that a violation of COPPA satisfies the public policy prong; both of its cases concern statutes protecting distinctly economic interests, one of which is a *criminal* law. *See In re Hinson*, 481 B.R. at 377 (describing the Home Affordable Modification Program as "establish[ing] public policy in favor of protecting struggling homeowners" from foreclosure); *RF Micro Devices*, 2016 WL 3892416, at *6 (discussing prior guilty plea by defendant who "misappropriate[d] trade secrets"). COPPA protects privacy interests, not economic interests, and it does not allow for criminal penalties.

[445] *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. *Accord Johnson*, 300 N.C. at 263, 266 S.E.2d at 621.

[446] *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000).

[447] *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403; *see also Johnson*, 300 N.C. at 265-66, 266 S.E.2d at 622.

purposes of the NC UDTPA. Nor are unverifiable opinions, whose truth or falsity cannot be precisely determined.[448] [449]

### Commerce

Commerce "includes all business activities, however denominated[.]"[450] Business activities encompass the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized.[451] Conduct "affects

---

[448] Given the imprecise definitions of deceptive and unfair conduct, Meta's position is that the jury should also be instructed on the type of conduct which would not violate the NC UDTPA, specifically puffery. *See Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 412-13 (E.D.N.C. 2015) (holding that statements that a credential was "prestigious," required rigorous coursework, was available only to providers with "a high level of knowledge and ability," and involved some "examination of credentials" were "too vague and general to amount to anything more than mere puffery"); *Glob. Hookah Distribs. v. Avior, Inc.*, 401 F. Supp. 3d 653, 659 (W.D.N.C. 2019) (holding, under North Carolina law, that "[t]he line between corporate optimism and material statements falls where the statements at issue were specific factual allegations that were not simply sales pitches but rather can be proven true or false — and, if properly supported, could be found material by a reasonable jury" (quotations omitted)); *id.* at 660 (holding that "puffery cannot form the basis of fraud or UDTPA claims").

[449] AGs disagree with the inclusion of this instruction. The existing instruction adequately defines deceptive conduct and these definitions are better suited for inclusion with Meta's defenses.

Meta objects to deletion of this instruction, which will cause confusion. North Carolina does not dispute the accuracy of Meta's proposed language as a matter of law, and it is incorrect in asserting that puffery is an affirmative defense. Puffery negates an element of the claim; it is not an affirmative defense. *See Cummings v. Carrol*, 841 S.E.2d 555, 574 (N.C. Ct. App. 2020) (holding statement that was "vague puffing" to be "inadequate as an allegation of fraud"), *rev'd on other grounds*, 866 S.E.2d 675 (N.C. 2021); *see also Global Hookah Distribs.*, 401 F. Supp. 3d at 660 (holding puffery is "unactionable" under the NC UDTPA); *Solum*, 148 F. Supp. 3d at 412 ("[P]uffery is not actionable under the UDTPA . . . ." (quoting *McKee v. James*, 2014 WL 7534078, at *10, 16 (N.C. Super. Ct. Dec. 31, 2014))).

[450] N.C. Gen. Stat. § 75-1.1(b).

[451] *HAJMM Co. v. House of Raeford Farms, Inc.,* 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991).

135

commerce" whenever a business activity is adversely and substantially affected.[452] Neither a contractual relationship nor monetary payment are required to establish that Meta's conduct was in or affecting commerce.[453]

---

[452] Meta's position is that the instruction on commerce should also include an explanation of what it means to "affect commerce." The added language comes from the North Carolina Pattern Jury Instructions. *See* N.C.P.I. – Civil 813.05.

AGs disagree with this addition. North Carolina's proposal was premised on controlling North Carolina Supreme Court caselaw. Meta, by contrast, cites no North Carolina UDTPA cases defining "affects commerce" in this manner. While Meta draws on N.C.P.I. - Civil 813.05, that pattern instruction's definition of "affects commerce" likewise cites no controlling and instead draws on federal caselaw under the Sherman act. *See* N.C.P.I. - Civil 813.62 n. 4 (citing *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738 (1976)).

Meta cites the model jury instruction for the very statutory cause of action at issue. *See* N.C.P.I – Civil 813.05. That North Carolina's model instructions look to antitrust law to interpret the phrase "affects commerce" comes as no surprise when the statute prohibits both "unfair or deceptive acts or practices in or affecting commerce" and "[u]nfair methods of competition in or affecting *competition*" within a single provision. N.C. Gen. Stat. § 75-1.1(a) (emphasis added). Indeed, "the body of law applying the Sherman Act, although not binding upon this Court . . . is nonetheless instructive in determining the full reach of [N.C. Gen. Stat. § 75-1]." *Rose v. Vulcan Mats. Co.*, 194 S.E.2d 521, 530 (N.C. 1973); *see also DKH Corp. v. Rankin-Patterson Oil Co.*, 506 S.E.2d 256, 258 (N.C. Ct. App. 1998) ("Chapter 75, entitled 'Monopolies, Trusts and Consumer Protection,' was modeled after the Sherman Act and many of Chapter 75's provisions closely resemble it."). North Carolina cites no case to justify departing from the model instruction's language.

[453] *J.M. Westall & Co. v. Windswept View of Asheville, Inc.*, 97 N.C. App. 71, 75, 387 S.E.2d 67, 69 (1990); *Winston Realty Co. v. G.H.G., Inc.*, 70 N.C. App. 374, 381, 320 S.E.2d 286, 290-91 (1984), *aff'd*, 314 N.C. 90 (1985).

**Count XLVII: Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Deceptive Acts or Practices)**

**Instruction 16-P**

The State of Pennsylvania alleges that Meta violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) which broadly prohibits persons from engaging in unfair or deceptive acts or practices in or affecting commerce.

To establish a violation of the UTPCPL[454], Pennsylvania must prove each of the following elements by a preponderance of the evidence:

1.      Meta used an unfair, false, misleading, or deceptive act or practice; and
2.      Meta did so while in the conduct of any trade or commerce

It is not necessary to demonstrate an intent to deceive. You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers.

If you find that any one of these elements has not been proved, then your verdict on this claim must be for the defendant.

On the other hand, if you find that all of these (number) elements have been proved, (then your verdict must be for the plaintiff) (then you must consider defendant's affirmative defense of [insert any affirmative defense that would be a complete defense to plaintiff's claim]).

If you find that defendant's affirmative defense has been proved by a preponderance of the evidence, then your verdict must be for the defendant.

---

[454] *Com., by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 826 (Pa. 1974); 73 P.S. § 201-2(4)(xxi); 73 Pa. Stat. Ann. § 201-2; *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018); 73 P.S. § 201-3(a); *Garcia v. Foot Locker Retail, Inc.*, 2023 WL 2487256, at *3 (Pa. Super. Ct. Mar 14, 2023); 73 P.S. § 201–4; *Weinberg v. Sun Co.*, 777 A.2d 442, 445 (Pa. 2001); *Commonwealth of Pennsylvania v. Think Fin., Inc.*, No. 14-CV-7139, 2016 WL 183289, at *22 (E.D. Pa. Jan. 14, 2016); *McDonough v. State Farm Fire and Casualty Company*, 365 F. Supp. 3d 552 (E.D. Pa. 2019) (applying Pennsylvania law); *Krishnan v. Cutler Group, Inc.,* 171 A.3d 856 (PA Super 2017); *Anadarko Petroleum Co. v. Commonwealth*, 206 A. 3d 51 (Pa. Commw. Ct. 2019); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 650 (Pa. 2021); 73 P.S. § 201–8; *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003) (citing *Navickas v. Unemployment Comp. Review Bd.*, 787 A.2d 284, 288 (Pa. 2001)); *Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 633 (Pa. 1976); *Com. v. Monumental Properties*, 329 A.2d 812, 816 (Pa. 1974) (CPL should be liberally construed to achieve its express purpose). *Weinberg v. Sun Co. Inc.*, 777 A.2d 442, 446 (Pa. 2001) (same).

However, if you find that the affirmative defense has not been proved, then your verdict must be for the plaintiff.

**Definitions**
*Unfair Act or Practice*[455]

An act or practice is "unfair" when it is offensive to public policy or when it is immoral, unethical, oppressive or unscrupulous. An act or practice need not be deceptive in order to be declared unfair.

*Capacity to Deceive*[456]

An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive. Neither the intention to deceive nor actual deception must be proved. It need only be shown that the acts and practices are capable of being interpreted in a misleading way. Any conduct which creates a likelihood of confusion or misunderstanding is actionable whether committed intentionally, carelessly, or with the utmost care.

---

[455] 18A Summ. Pa. Jur. 2d Commercial Law § 20:19 (2d ed.); *Com. ex rel. Zimmerman v. Nickel,* 26 Pa. D. & C.3d 115, 120–21 (Pa. Com. Pl. 1983).

[456] *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018); *Gregg v. Ameriprise Fin., Inc.,* 245 A.3d 637, 646-648 (Pa. 2021)(quoting Golden Gate, with approval, that "[a]n act or a practice is deceptive or unfair if it has the capacity or tendency to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way."); *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. 2007); *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 154 (PA Super 2012); 201-2(4)(xxi); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 650 (Pa. 2021).

**Count XLVII:  Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Deceptive Acts or Practices)**

**Instruction 16-D[457]**

The State of Pennsylvania alleges that Meta violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by engaging in deceptive acts or practices.[458]

Pennsylvania claims that Meta engaged in deceptive acts or practices by:

1. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;[459]

2. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;[460] and

3. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.[461]

A deceptive act or practice is one that has the capacity or tendency to deceive.[462]  For Pennsylvania to prevail on its claim, you must find that Pennsylvania has proven each of the of the following elements by a preponderance of the evidence:[463]

1. That Meta made the representation or omission that is challenged;

---

[457] Meta's position is that each count brought by the State should have its own separate jury instructions and verdict form.

[458] 73 Pa. Stat. Ann. § 201-3; *id.* at § 201-2(4)(xxi).

[459] 73 Pa. Stat. Ann. § 201-2(4)(ii).

[460] 73 Pa. Stat. Ann. § 201-2(4)(vii)

[461] 73 Pa. Stat. Ann. § 201-2(4)(xxi).

[462] *See Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649 (Pa. 2021).

[463] *Fed. Trade Comm'n v. Am. Future Sys., Inc.*, No. CV 20-2266, 2024 WL 1376026, at *16 (E.D. Pa. Mar. 29, 2024) ("The legal test for deceptive conduct [under the FTCA and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")] is the same." (citing *Gregg*, 664 Pa. at 647)); *see also id.* at *17 ("To prove a violation of the FTC Act or UTPCPL, a plaintiff must establish: (1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material.").

2. That the representation or omission is likely to mislead a consumer acting reasonably under the circumstances;

3. That the representation or omission is material; and

4. That the representation or omission was made in the conduct of any trade or commerce.[464]

While it is not necessary that Pennsylvania demonstrate an intent to deceive, Pennsylvania is entitled to civil penalties only for UTPCPL violations that were willfully engaged in, which means with an intent to deceive consumers.[465]

**Definitions**

*Materiality*

A representation or omission is material if it concerns information that is important to consumers and is likely to affect their decisions or conduct regarding a product.[466] Statements that are mere puffery—that is, exaggerated, patently hyperbolic, or excessively vague statements upon which no reasonable consumer would rely—are not actionable under the UTPCPL.[467]

*Trade or Commerce*

Trade or commerce means the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other

---

[464] 73 Pa. Stat. Ann. § 201-3.

[465] 73 Pa. Stat. Ann. § 201-8(b); *see also In re Styer*, No. 08-21348REF, 2013 WL 6234621, at *8 (Bankr. E.D. Pa. Dec. 2, 2013) ("The question whether Debtor acted 'willfully' under the Pa. Unfair Trade Practices Act when she engaged in deceptive conduct, as that phrase is used therein, is identical to the issue whether Debtor acted with intent to deceive . . . .").

[466] *See F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (citing *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984)).

[467] *See Fed. Trade Comm'n v. Amazon.com, Inc.*, No. 2:23-CV-01495-JHC, 2024 WL 4448815, at *18 (W.D. Wash. Sept. 30, 2024) ("Where the impression created by a statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery under the [UTPCPL]." (cleaned up) (quoting *Piccioli v. Faust Heating & A/C Co.*, 299 A.3d 877 (Pa. Super. Ct. 2023))); *see also id.* ("Statements that are patently hyperbolic or excessively vague are not actionable under the [UTPCPL]." (quotations omitted)).

140

article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of Pennsylvania.[468]

---

[468] 73 Pa. Stat. Ann. § 201-2(3).

**Count XLVIII:  Alleged Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Unfair Acts or Practices)**

**Instruction 16.1-D**

Pennsylvania also claims that Meta engaged in unfair acts or practices in violation of the UTPCPL.[469]  For Pennsylvania to prevail on its claim, you must find that Pennsylvania has proven each of the of the following elements by a preponderance of the evidence:

1.  That Meta's conduct was unfair; and

2.  That Meta's conduct was in the conduct of any trade or commerce.

Certain guidelines have been established as to what constitutes an unfair trade practice. In order to prove that Meta's conduct was unfair, Pennsylvania must establish that Meta's conduct meets at least one of the following criteria:

1.  It offends [*established public policy X*];[470]

2.  It is immoral, unethical, oppressive, or unscrupulous; or

3.  It causes substantial injury to consumers.[471]

While it is not necessary that Pennsylvania demonstrate an intent to deceive, Pennsylvania is entitled to civil penalties only for UTPCPL violations that were willfully engaged in, which means with an intent to deceive consumers.[472]

**Definitions**

---

[469] 73 Pa. Stat. Ann. § 201-3; *id.* at § 201-2(4)(xxi).

[470] Meta's position is that the burden is on the State to establish the applicable public policy as a matter of law in order to submit that issue to a jury.  Pennsylvania has failed to identify or otherwise plead a public policy in its Complaint and cannot amend its Complaint to do so through these jury instructions.  To the extent that the Court determines it would be appropriate for the jury to decide whether the alleged practice offends public policy, Meta believes that the proposed revisions would assist the jury in understanding the standard.

[471] 18A Summ. Pa. Jur. 2d Commercial Law § 20:19 (2d ed.); *Com. ex rel. Zimmerman v. Nickel,* 26 Pa. D. & C.3d 115, 120–21 (Pa. Com. Pl. 1983) (quoting *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5 (1972)); *Telebrands Corp. v. VindEx Sols. LLC*, No. 21-CV-00898-BLF, 2022 WL 1062051, at *7 (N.D. Cal. Apr. 8, 2022); *FTC v. Amazon*, 2024 WL 4448815, at *18.

[472] 73 Pa. Stat. Ann. § 201-8(b); *see also In re Styer*, 2013 WL 6234621, at *8.

***Trade or Commerce*** (See Count XLVII Definition)

Trade or commerce means the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of Pennsylvania.[473]

---

[473] 73 Pa. Stat. Ann. § 201-2(3).

**Count L: Alleged Violation of the South Carolina Unfair Trade Practices Act**

**Instruction 17**

The State of South Carolina alleges that Meta violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), which broadly[474][475] prohibits persons from engaging in unfair or deceptive acts or practices in the conduct of any trade or commerce.[476]

For South Carolina to prevail on its claim under the SCUTPA, you must find that South Carolina has proven each of the following elements by a preponderance of the evidence:

1. Meta used an unfair, false, misleading, or deceptive act or practice;
2. Meta did so while in the conduct of any trade or commerce; and
3. The deceptive or unfair act or practice that Meta used has an adverse impact upon the public interest.[477]

---

[474] The word "broadly" here is not supported by the statutory language and is unduly prejudicial.

[475] AGs do not agree with deletion of "broadly." It is expressly supported by case law and it is not unduly prejudicial. See *City of Charleston, SC v. Hotels.com, LP*, 487 F. Supp. 2d 676, 679 (D.S.C. 2007); *Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 291 (4th Cir. 1998).

Meta maintains its objection. Whether the language is accurate is irrelevant because statutory interpretation is a question of law, not a duty of the jury. *See Lightner v. Hampton Hall Club, Inc.*, 798 S.E.2d 555, 558 (S.C. 2017); *United States v. Hardeman*, 598 F. Supp. 2d 1040, 1048 (holding that "a question of statutory interpretation" is "not a 'fact' for the jury"). Whether SCUTPA is broad enough to reach any of South Carolina's allegations is, thus, not a question the jury must decide. Should the Court permit South Carolina to submit any of its allegations to a jury, the inclusion of "broadly" will serve no purpose aside from confusion or suggesting to the jury that South Carolina's burden of proof is lower because the relevant statute is "broad."

[476] This instruction could confuse the jury because it differs from the language in the statute declaring what constitutes a violation. *See* S.C. Code Ann. § 39-5-20(a).

[477] The requirement of an adverse impact on the public interest has been recognized as a distinct element in jury instructions issued in South Carolina. *See* Transcript of Proceedings at 894, *Oakwood Products, Inc. v. Acumatica, Inc.*, 9:22-cv-01538-DCN (D.S.C. May 16, 2025), Dkt. No. 185 (instructing the public interest inquiry as a distinct element of a SCUPTA claim).

144

Whether an act or practice is unfair or deceptive, within the meaning of the act, depends upon the facts and circumstances surrounding what someone has done and the impact of that act or transaction on the marketplace.[478]

While South Carolina does not need to prove that the unfair, false, misleading, or deceptive act or practice was engaged in willfully to find Meta liable, South Carolina is entitled to civil penalties only for willful SCUPTA violations.[479] If you do find that the conduct was engaged in willfully, Plaintiffs are entitled to civil penalties. [480]

Proof of common law fraud is not required to establish a violation.  However, to be actionable under the Act, the unfair or deceptive act or practice complained of must have an adverse[481] impact on the public interest.  Unfair or deceptive acts or practices in the

---

[478] This language reflects the law of South Carolina and is present in jury instructions issued in South Carolina.  *See Hosch v. United Bank, Inc.*, No. 4:09-cv-1490-TLW-TER, 2012 WL 6638103 (D.S.C. Aug. 10, 2012) (jury instructions in private enforcement action under the SCUTPA with this language); Transcript of Proceedings at 895, *Oakwood Products, Inc. v. Acumatica, Inc.*, 9:22-cv-01538-DCN (D.S.C. May 16, 2025) (Dkt. No. 185) (same); *see also State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 188, 196 (S.C. 2015) (affirming jury instructions in a SCUPTA AG enforcement action with this language).

[479] The revised language more clearly articulates that willfulness is only relevant to this issue of civil penalties.

[480] AGs object to deletion of this last sentence.

Meta objects to the last sentence because it is irrelevant to the jury, as the court will determine civil penalties.  *See* S.C. Code § 39-5-110(a) (providing for civil penalties "[if] *a court* finds that any person is willfully using or has willfully used . . . ." (emphasis added)).  It is also incorrect as a matter of law to say that a finding of willfulness "entitle[s]" South Carolina to civil penalties.  *See id.* (specifying that "the Attorney General, upon petition to the court, *may* recover on behalf of the State a civil penalty . . . ." (emphasis added)).  To the extent South Carolina's proposed language has a plausible reading that is not irrelevant to the jury and incorrect as a matter of law, it is redundant to the preceding sentence.

[481] The revised language is consistent with courts' articulation of the type of impact that must be shown by South Carolina.  *See* Transcript of Proceedings at 894, 897, *Oakwood Products, Inc. v. Acumatica, Inc.*, 9:22-cv-01538-DCN (D.S.C. May 16, 2025) (Dkt. No. 185) (instructing jury that "to be actionable under SCUPTA, the unfair method of competition or the unfair or deceptive act or practice must have an ***adverse*** impact upon the public interest" (emphasis added)); *Hosch v. United Bank, Inc.*, No. 4:09-cv-1490-TLW-TER, 2012 WL 6638103 (D.S.C. Aug. 10, 2012) (same); *see also* Ralph King Anderson, Jr., South Carolina Requests to Charge – Civil, 2016, § 34-5 ("To be actionable under the Unfair Trade Practices Act, the unfair method of competition or the

(….continued)

145

conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition.  The potential for repetition may be shown in two ways:

1.  By showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or
2.  By showing the company's procedures create a potential for repetition of the unfair and deceptive acts.

When the State South Carolina brings a claim under the Act, there is no actual impact requirement, and the State is not required to show any adverse impact, injury-in-fact, or reliance in order to obtain relief.[482] [483]

---

unfair or deceptive act or practice must have an ***adverse*** impact upon the public interest." (emphasis added)).

[482] This language is confusing and repetitive of the instruction regarding actual impact. South Carolina courts have recognized that there is not an actual impact requirement.  *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 189, 192 (S.C. 2015) ("[I]n an enforcement action brought by the Attorney General, there is no actual impact requirement.").  Further, the language that the "state is not required to show any adverse impact" is confusing because the state must show an adverse impact on the public interest in order to prevail.  *See supra* notes 477, 481.

[483] AGs object to the deletion of this language. "Where the Attorney General files suit on behalf of the State, he is not required to show any injury-in-fact to recover a civil penalty.*" State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc*., 414 S.C. 33, 63, 777 S.E.2d 176, 192 (2015). "Where the Attorney General files suit on behalf of the State, he is not required to show any injury-in-fact to recover a civil penalty." *Id.* "If the Attorney General determines that an enforcement action "would be in the public interest," he is statutorily authorized to proceed without making any such showing of injury-in-fact or reliance. S.C. Code Ann. § 39–5–50(a). As noted above, the Attorney General must establish that a defendant's conduct has a tendency to deceive."

Meta maintains its objection.  Even assuming *arguendo* that South Carolina is correct about the elements it must prove, it would be confusing and repetitive to instruct the jury on *four* elements that South Carolina concedes are irrelevant to its cause of action.

**Definitions**

*Act or Practice is Unfair*[484]

An act or practice is "unfair" when it is offensive to public policy [*established public policy X*][485] or when it is immoral, unethical, or oppressive.

*Capacity to Deceive*[486]

---

[484] Roger L. Couch, *South Carolina Requests to Charge – Civil*, 2011; Ralph King Anderson, Jr., *South Carolina Requests to Charge – Civil*, 2009, § 34-2; *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 56, 777 S.E.2d 176, 188 (2015); *Gentry v. Yonce*, 337 S.C. 1, 522 S.E.2d 137 (1999); *Adams v. G.J. Creel and Sons, Inc.*, 320 S.C. 274, 465 S.E.2d 84 (1995); *Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486 (Ct. App. 2006); *Wogan v. Kunze*, 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct. App. 2005).

[485] Meta's position is that South Carolina has the burden to establish the applicable public policy as a matter of law in order to submit that issue to a jury. South Carolina has failed to identify or otherwise plead a public policy in its Complaint and cannot amend its Complaint to do so through these jury instructions. However, to the extent that the Court determines it would be appropriate for the jury to decide whether the alleged practice offends public policy, Meta believes that the proposed revisions would assist the jury in understanding the standard.

AGs do not agree. Meta's position that this is being plead through jury instructions is incorrect. The statement, as originally drafted, is consistent with controlling case law as already cited for *Act or Practice is Unfair*, and Meta's attempt to add an additional step through this language is unwarranted.

Meta maintains its objection. South Carolina does not contest that it failed to plead any articulable public policy beyond conclusory allegations of unfairness. *See* Multistate Compl., Dkt. 207. ¶ 1147 ("An act or practice may be unfair if it offends public policy; is immoral unethical, oppressive, unconscionable or causes injury to consumers. Meta's acts or practices as alleged in this Complaint are unfair.").

[486] Roger L. Couch, *South Carolina Requests to Charge – Civil*, 2011; Ralph King Anderson, Jr., *South Carolina Requests to Charge – Civil*, 2009, § 34-3; *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 414 S.C. 33, 57, 777 S.E.2d 176, 188 (2015); *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189 (4th Cir. 1985) (the Act may be violated if there is a claim or representation that had the capacity or effect or tendency to deceive; plaintiff need not show intentional deception under South Carolina UTPA, but a plaintiff cannot prevail without showing at least a potential of deception); *Gentry v. Yonce*, 337 S.C. 1, 522 S.E.2d 137 (1999) (an act is deceptive when it has a tendency to deceive); *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 363 S.E.2d 691 (1988); *Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486 (Ct. App. 2006); *Wogan* (….continued)

147

A deceptive act or practice is one which has a tendency to deceive. It is not necessary to demonstrate an intent to deceive. You may find Meta liable even if there is no evidence that Meta intended to deceive consumers, but South Carolina can only prevail if it shows South Carolina cannot prevail unless it shows[487] that the representation had the capacity, effect, or tendency to deceive.  Even a truthful statement may be deceptive if it has a capacity or tendency to deceive.[488]

---

*v. Kunze*, 366 S.C. 583, 606, 623 S.E.2d 107, 120 (S.C. Ct. App. 2005); *DeBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 536 S.E.2d 399 (Ct. App. 2000); *Dowd v. Imperial Chrysler-Plymouth, Inc.*, 298 S.C. 439, 381 S.E.2d 212 (Ct. App. 1989); *Potomac Leasing Co. v. Bone*, 294 S.C. 494, 366 S.E.2d 26 (Ct. App. 1988).

[487] The proposed language provides clarity on South Carolina's burden.  *See Oakwood Prods., Inc. v. SWK Techs., Inc.*, 774 F. Supp. 3d 734, 745 (D.S.C. 2025) (quoting *Clarkson v. Orkin Exterminating Co., Inc.*, 761 F.2d 189, 191 (4th Cir. 1985)).

[488] Meta objects to South Carolina's proposed instruction because it includes unnecessary elements, which are confusing.  Meta also objects to South Carolina's proposed, unfairly prejudicial, instruction that the jury can find Meta liable "even if there is no evidence."  Meta's proposed language accurately reflects the element South Carolina *must* prove and correctly allocates the burden of proof to South Carolina.

If the Court decides to include language about whether it is necessary to show an intent to deceive, Meta would propose the following language instead of what is shown above in red: "There is no need to show that a representation was intended to deceive, or that any individual was actually deceived, but only that the representation had the capacity, effect, or tendency to deceive."  South Carolina had originally proposed this language, and responded to Meta's addition of "South Carolina cannot prevail unless it shows" by replacing the language proposed in this footnote with the language shown above in red.

148

South Carolina must prove that the act or statement had the capacity or effect or the tendency to deceive.[489]   However, this does not include acts, practices, or representations that are nothing more than dealer talk, trade talk, or what is called puffing.[490][491]

### *Willfulness*[492]

To recover civil penalties under the Unfair Trade Practices Act against Meta, South Carolina must show that Meta's unlawful conduct was "willful."  A "willful" violation occurs when the party committing the violation knew or should have known that the conduct was a violation of the Act

---

[489] This addition is necessary to make clear what South Carolina does need to be show.  *See Oakwood Prods., Inc. v. SWK Techs., Inc.*, No. 9:20-cv-04107-DCN, 2025 WL 2200957, at *5 (D.S.C. Aug. 1, 2025) ("'under the statute, there is no need to show that a claim or representation was intended to deceive but only that it had the capacity, effect, or tendency to deceive' . . . . In other words, '[t]he plaintiff need not show intentional deception, but a plaintiff cannot prevail without showing at least a potential of deception.'" (internal citation omitted) (quoting *Young v. Century Lincoln-Mercury, Inc.*, 396 S.E.2d 105, 108 (S.C. Ct. App. 1989), *aff'd in part, rev'd in part on other grounds*, 422 S.E.2d 103 (S.C. 1992) and *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985))).

[490] This language is consistent with South Carolina jury instructions on what constitutes deceptive conduct.  *See State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015) (affirming jury instructions with this language about puffery); Transcript of Proceedings at 896, *Oakwood Products, Inc. v. Acumatica, Inc.*, 9:22-cv-01538-DCN (D.S.C. May 16, 2025) (Dkt. No. 185) (instructing jury on puffery in SCUTPA claim).

[491] Language combined for clarity.

[492] Roger L. Couch, *South Carolina Requests to Charge – Civil*, 2011; *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 414 S.C. 33, 63, 777 S.E.2d 176, 192 (2015); *State ex rel. Medlock v. Nest Egg Soc'y Today, Inc.*, 348 S.E.2d 381, 383-84 (S.C. Ct. App. 1986); S.C. Code Ann. § 39-5-110(c).

**Count LI: Alleged Violation of the Virginia Consumer Protection Act (Deceptive Acts or Practices)**

**Instruction 18**

The Commonwealth of Virginia alleges that Meta violated the Virginia Consumer Protection Act ("VCPA"), which prohibits suppliers from engaging in fraudulent false, misleading, or deceptive[493] acts or practices in connection with a consumer transaction.[494] Virginia alleges that Meta engaged in three types of violations of the VCPA.[495]

[*Va. Code § 59.1-200(A)(5): Good or Service's Certain Quantities, Characteristics, Uses, or Benefits*]

The first type of violation relates to statements about a good or service's quantities, characteristics, uses, or benefits. For Virginia to prevail on its claim under the VCPA based on statements about a good or service's quantities, characteristics, uses, or benefits, you must find that Virginia has proven each of the following elements by a preponderance of the evidence:

1. That Meta made a false or misleading statement;

2. That the statement was about a good or service's certain quantities, characteristics, uses, or benefits; and

3. That the statement was made by Meta as a supplier in connection with a consumer transaction.[496]

---

[493] AGs do not agree with the use of the word fraud and the case law cited in the footnote to the extent they seek to conflate common law fraud and the VCPA.

Meta objects to the replacement of the blue language with the red language. "Fraudulent" comes directly from the statute. *See* Va. Code Ann. § 59.1-200(A).

[494] Va. Code Ann. § 59.1-200(A); *Berl v. BMW of N. Am., LLC*, No. 3:24-CV-00066, 2025 WL 2496319, at *4 (W.D. Va. Aug. 29, 2025) ("To properly state a cause of action under the VCPA, a plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction.").

[495] Meta's position is that the jury should be instructed on each provision of the VCPA that Virginia alleges Meta violated separately.

[496] *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44, 2020 WL 12991889, at *4 (2020) ("Under subsection (A)(5) of Virginia Code § 59.1-200, there are only three elements needed to state a cause of action: (1) a false or misleading statement; (2) about a goods' characteristics, uses, or benefits; and (3) made in connection with a consumer transaction.").

119

[*Va. Code § 59.1-200(A)(6): Good or Service's Particular Standard, Quality, Grade, Style, or Model*]

The second type of violation relates to statements misrepresentations about a good or service's standard, quality, grade, style, or model.  For Virginia to prevail on its claim under the VCPA based on statements about a good or service's standard, quality, grade, style, or model, you must find that Virginia has proven each of the following elements by a preponderance of the evidence:

1.  That Meta made a false or misleading statement; misrepresentations;[497]

2.  That the statement misrepresentation was about a good or service's particular standard, quality, grade, style, or model; and

3.  That The statement misrepresentation was made by Meta as a supplier in connection with a consumer transaction.

[*Va. Code § 59.1-200(A)(14): Other Deception, Fraud, False Pretense, False Promise, or Misrepresentation*]

The third and final type of violation relates to deception, fraud, false pretense, false promise, or misrepresentation.  For Virginia to prevail on its claim under the VCPA based on deception, fraud, false pretense, false promise, or misrepresentation, you must find that Virginia has proven each of the following elements by a preponderance of the evidence:

1.  That Meta used deception, fraud, false pretense, false promise, or misrepresentation, and

2.  That Meta did so as a supplier in connection with a consumer transaction.[498]

---

[497] AGs are unaware of any case law to support adding "false or misleading statement" to an A(6) violation.

Meta disputes the AGs' objection.  "Misrepresenting" under the VCPA, as made clear by *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44, 2020 WL 12991889, at *4 (2020), means making a "false or misleading statement."

AGs note that the *Teva* case refers only to an A(5) violation, not an A(6) violation. These are different subsections of the VCPA, and there is no case law to support the use of statement for A(6) specifically.

[498] *Id.* ("[S]ubsection (A)(14) only requires two elements: (1) a false, misleading, or deceptive statement, or a false promise or pretense; (2) made in connection with a consumer transaction.").

151

To prevail on Count LI, Virginia must prove by a preponderance of the evidence that Meta committed at least one If Virginia proves that Meta committed *any* of these three (3) violations. by a preponderance of the evidence, you must find that Meta has violated the VCPA.[499]

Conduct in connection with a consumer transaction encompasses more than direct sales to consumers.[500][501]

A misrepresentation is actionable under the VCPA only if it is of an existing fact, and not the mere expression of an opinion.[502] Commendatory statements, trade talk, and puffing are mere expressions of opinion and are not actionable under the VCPA.[503] Whether misrepresentations constitute fact or opinion depends on the relative knowledge of the parties dealing, their intentions and all of the surrounding circumstances.[504] A matter of

---

[499] AGs agree to Meta addition to opening paragraph in instruction on the condition that it is made clear that Virginia need only prove a violation of ONE of these provisions to prevail.

Meta objects to the proposed phrasing of the red language and has proposed alternative phrasing in blue.

[500] *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44, 49 (Richmond City Cir. Ct. 2020).

[501] This instruction is unnecessary here because "consumer transaction" is already defined under "Definitions." Further, because the plain language of the statutory definition of "consumer transaction" encompasses more than just "direct sales to consumers," this instruction is unnecessary and would be confusing to a jury. AGs will only agree to the deletion here IF it is included below in the definition of consumer transaction later in this instruction.

Meta maintains its objection to this instruction as unnecessary because the plain language of the statutory definition of "consumer transaction" encompasses more than just "direct sales to consumers."

[502] *Graham v. RRR, LLC*, 202 F. Supp. 2d 483, 490 (E.D. Va. 2002), *aff'd sub nom. Graham v. Geneva Enters., Inc.*, 55 F. App'x 135 (4th Cir. 2003) (citations omitted).

[503] *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 192 (E.D. Va. 2005) (quoting *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 713 (2001)).

[504] *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 562-63 (1956).

Meta objects to the insertion of the red language as unnecessary and potentially confusing. Meta also notes that the *Packard* case dealt with a fraud claim, not a VCPA

(….continued)

152

opinion may nevertheless give rise to a violation where the parties are not dealing upon equal terms, and one of them has, or is presumed to have, means of information not equally open to the other.[505]

It is not necessary to demonstrate knowledge or an intent to deceive for affirmative misrepresentations or deception.[506] You may find Defendants liable even if there is no evidence that the Defendants intended to deceive consumers when making express misrepresentations.[507] However, proof of misrepresentation by nondisclosure or omission requires evidence of a knowing and deliberate decision not to disclose a material fact.[508] A fact is material if it is important to consumers and is likely to affect their decisions or conduct.[509] [510]

---

claim. The AGs' position is unclear because the AGs object to the reliance on *Packard* for this reason elsewhere but nonetheless cite it here.

[505] *Grim v. Byrd,* 73 Va. 293, 301-02 (1879); see also *Mears v. Accomac Banking Co.*, 160 Va. 311, 316, 321-22 (1933); *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 631 (1985).

Meta objects to the insertion of the red language as unnecessary and potentially confusing. Meta also notes that the *Grim*, *Mears*, and *Patterson* cases dealt with fraud claims, not VCPA claims. As noted above, the AGs' proposed additions directly conflict with AGs' objection to the reliance on fraud cases elsewhere in the instructions.

[506] *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014).

[507] This instruction should be excluded because it is duplicative of the preceding sentence and not supported by case law.

AGs disagree and believe it should remain.

[508] *Lambert v. Downtown Garage*, 262 Va. 707, 714 (2001) (*citing Spence v. Griffin,* 236 Va. 21, 28, (1988).

[509] *See Glaser v. Enzo Biochem, Inc.,* 126 F. App'x 593, 600 (4th Cir. 2005) ("A fact is material if it 'influences a person to enter into a contract,' or if it 'deceives him and induces him to act,' or if 'without it the transaction would not have occurred.'" (quoting *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 95 S.E.2d 207, 211-12 (1956))).

[510] AGs object to this insertion. This statement relies on a common law fraud case, not a VCPA case. We do not concede that the standards articulated under fraud can be applied to the VCPA.

Meta disputes the AGs' objection. There is no definition of materiality under the VCPA. While "the VCPA's proscription of conduct by suppliers in consumer transactions extends considerably beyond fraud," *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014), federal courts require a showing of "fraud" under

(….continued)

Virginia does not need to prove that a violation of the VCPA is willful; however, civil penalties are only recoverable for willful acts or practices in violation of the VCPA.[511]  A defendant acts "willfully" when it acts with a knowing and intentional disregard of the protections afforded to consumers.[512][513]

**Definitions**

*Supplier*

A defendant is a supplier if the defendant is a seller, lessor, licensor, or professional that advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor that advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions.[514]

---

the VCPA.  *See Berl v. BMW of N. Am., LLC,* 3:24-CV-00066, 2025 WL 2496319, at *4 (W.D. Va. Aug. 29, 2025) ("To properly state a cause of action under the VCPA, a plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction."). Therefore, the common law fraud definition of materiality is instructive.

The *Owens* and *Ballagh* cases in the Virginia Supreme Court make clear that the VCPA does not require a showing of fraud. The *Ballagh* case expressly provides that the legislature's decision "to define the elements of the VCPA using terms of art already familiar to the bench and bar from common law fraud is insufficient to express an intent" to invoke common law fraud standards. 290 Va. at 125. The *BMW* case cited misstates the law and, as a federal trial court case, does not trump the state supreme court's interpretation of the statute's express language.

[511] Va. Code § 59.1-206.

[512] *Kindred v. McLeod*, No. 3:08CV00019, 2010 WL 4814360, at *10 (W.D. Va. Nov. 19, 2010) ("Willful violations are those that involve knowing and intentional disregard of the protections afforded consumers." (quoting *Synergistic Intern., LLC v. Korman,* 402 F. Supp. 2d 651, 666 (E.D. Va. 2005), *vacated on other grounds,* 470 F.3d 162 (4th Cir. 2006))).

[513] AGs object to this language. The cited case refers to willful violations under the private right of action, not the civil penalties portion subject to government enforcement.

Meta disputes the AGs' objection.  The AGs point to no authority supporting the proposition that the *Kindred* definition of "willfully" does not apply to claims brought by the AG.

[514] Va. Code § 59.1-198.

154

***Consumer Transaction***

For Virginia to prevail on any of its claims, it must prove that Meta's actions were carried out in connection with a consumer transaction.  Conduct in connection with a consumer transaction encompasses more than direct sales to consumers.[515] A consumer transaction means any of the following:[516]

1. The advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes;
2. Transactions involving the advertisement, offer, or sale to an individual of a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged;
3. Transactions involving the advertisement, offer, or sale to an individual of goods or services relating to the individual's finding or obtaining employment;
4. A layaway agreement, whereby part or all of the price of goods is payable in one or more payments subsequent to the making of the layaway agreement and the supplier retains possession of the goods and bears the risk of their loss or damage until the goods are paid in full according to the layaway agreement;
5. Transactions involving the advertisement, sale, lease, or license, or the offering for sale, lease, or license, of goods or services to a church or other religious body; and
6. Transactions involving the advertisement of legal services that contain information about the results of a state or federal survey, inspection, or investigation of a nursing home or certified nursing facility as described in subsection E of § 32.1-126.

If you do not find that the conduct occurred in connection with a consumer transaction, you must find that there was no VCPA violation.

---

[515] *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44, 49 (Richmond City Cir. Ct. 2020).

Meta objects to this instruction as unnecessary because the plain language of the statutory definition of "consumer transaction" encompasses more than just "direct sales to consumers."

[516] AGs will agree to this introductory language with the inclusion of the scope of a consumer transaction as indicated. Otherwise, we object to this introductory language as amended.

As noted above, Meta objects to the red language describing the scope of a consumer transaction.

**Count LIV: Alleged Violation of Wisconsin Deceptive Trade Practices Act (Deceptive Acts or Practices)**

**Instruction 19**

The State of Wisconsin alleges that Meta violated the Wisconsin Deceptive Trade Practices Act ("WIS DTPA") which prohibits persons from making representations that are untrue, deceptive, or misleading.

For Wisconsin to prevail on its claim under the WIS DTPA, you must find that Wisconsin has proven each of the following elements by a preponderance of the evidence:[517]

1.      Meta made, published, or placed before one or more members of the public an advertisement, announcement, statement, or representation concerning the use of its platforms. A representation can be oral or written. It can appear in a newspaper, magazine, or other publication, or it can be made by telephone or over radio or television. It may take the form of a notice, handbill, circular, pamphlet, letter, or any other means of disseminating it. It may also take the form of a face-to-face communication.[518] For this first element to be met, Wisconsin must prove that Meta made an affirmative statement; non-disclosure does not constitute a representation for the purposes of WIS DTPA.[519] [520]  A misrepresentation is actionable under the WIS DTPA only if it

---

[517] *Novell v.* Migliaccio, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553 (2008); *State v. Talyansky*, 2023 WI App 42, 409 Wis.2d 57, ¶42, 995 N.W.2d 277 (2023), citing *State v. American TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 295, 430 N.W.2d 709 (1988).

[518] WIS JI-CIVIL 2418B (2025).

[519] *See Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 169-171 (Wis. 2004) ("[N]ondisclosure is not an 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1). Silence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1). The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading. To permit a nondisclosure to qualify as an actionable 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1) would expand the statute far beyond its terms.").

[520] AGs reject this insertion. This language is not in WI model jury instructions or the statute. It also misconstrues the court's decision as creating an additional "affirmative" element to prove, when the decision found that nondisclosure was not an actionable assertion, representation, or statement. The model jury instructions footnote more accurately summarizes the premise of the cited case: A non-disclosure does not constitute an "assertion, representation or statement of fact" under Wis. Stat. § 100.18(1). See WIS
(….continued)

156

is of an existing fact, and not the mere expression of an opinion.[521] Statements that are not capable of being substantiated or refuted such as commendatory

---

JI-CIVIL 2418B (2025). None of misrepresentations alleged under 100.18 were non-disclosures or silence. This language will only confuse a jury.

Meta's proposed language finds support in the highest court in Wisconsin interpreting the statute creating Wisconsin's cause of action to "prohibit[] only affirmative assertions, representations, or statements of fact." *Tietsworth*, 270 Wis. 2d at 170 (addressing Wis. Stat. § 100.18(1)); *see also id.* at 244 ("The DTPA does not purport to impose a duty to disclose . . . ."). And Wisconsin is incorrect in arguing that it does not allege nondisclosures or silence. Wisconsin plainly incorporated "each of the allegations" of the Complaint. *See* Multistate Compl., Dkt. 207. ¶ 1169 ("Wisconsin realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1 through 850 as though fully alleged in this cause of action."). Those allegations are riddled with alleged omissions, nondisclosures, and silence. *See, e.g.*, *id.* ¶¶ 151-90 (discussing alleged nondisclosures related to Meta's algorithms); *id.* ¶ 172 (alleging that "Meta does not disclose" without any corresponding affirmative statement); *id.* ¶ 205 (alleging that "Meta does not adequately disclose" certain alleged risks, without any corresponding affirmative representations by Meta); *id.* ¶ 224 (alleging Meta has "knowledge that . . . Meta does not disclose"); *id.* ¶ 586 (alleging that "Meta either implemented insufficient half-measures *or failed to act*" (emphasis added)); ¶ 935 (alleging Meta "failed to disclose").

[521] *See United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc.*, 349 Wis. 2d 587, 607 (Wis. 2013) ("To explain, the reason that a valid defense of puffery defeats a Wis. Stat. § 100.18 suit is that the defense undermines part of the statute's first element: that the defendant related a misrepresentation of *fact*. This is so because a salesperson who simply declares that his product is the 'best' or the like, is not representing a fact at all, let alone misrepresenting one. Rather, he is merely delivering a nebulous, abstract, highly *generalized* pitch for his wares.") (citations omitted) (emphasis in original).

157

statements, trade talk, and puffing are mere expressions of opinion and are not actionable under the WIS DTPA.[522] [523]

2.    The advertisement, announcement, statement, or representation contained a statement that was untrue, deceptive, or misleading. A representation is untrue if it is false, erroneous, or does not state or represent things as they are. A representation is deceptive or misleading if it causes a reader or listener to believe something other than what is in fact true or leads to a wrong belief.[524] It is not necessary to demonstrate knowledge of falsity or an intent to defraud or deceive, so long as the statement was made with the intent to sell or distribute, or increase the consumption of the platforms or with the intent to induce the use of the platforms.

---

[522] *See Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 171-72 (2004) (defining puffery as "exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined" and explaining that statements that "[o]ne reason for excluding commercial puffs from the scope of actionable misrepresentations is that they are 'not capable of being substantiated or refuted.'" (quoting *State v. Am. TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 302 (1988))); *see also Bakery Bling v. Matrix Packaging Mach.,* 685 F. Supp. 3d 718, 752 (E.D. Wis. Aug. 2, 2023) ("[C]ommercial puffery is not within the ambit of legally actionable misrepresentation because it is the opinion of the speaker and not capable of being substantiated or refuted." (quotations omitted)).

[523] AGs reject this insertion. This language is not in WI statute or model jury instructions. It also does not accurately summarize the cases cited or use the puffery definitions given in the cases cited. And the misrepresentations alleged under 100.18 here are not puffery as a matter of law, making it an inappropriate issue to put before the jury. *See United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc.,*, 349 Wis. 2d 587, 610 (Wis. 2013).

Wisconsin's assertion that *United Concrete* supports treating puffery as a matter of law here is incorrect.  "[P]uffery is ordinarily a matter of fact," and "*as will often be the case*, it should go to the jury." *United Concrete*, 349 Wis. 2d at 613 (emphasis added).  *United Concrete* also recognized that "nebulous, abstract, highly generalized pitch[es]" are puffery.  *Id.* at 607.  The jury must be instructed on puffery because it must determine whether any of the statements Wisconsin alleges are inactionable puffery.

[524] Wis JI-Civil 2418B (2025).