[Parties and Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**AGENDA AND JOINT STATEMENT FOR OCTOBER 24, 2025, CASE MANAGEMENT CONFERENCE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

## I.     Proposed Agenda for Case Management Conference

- Argument on TIME Motion to Intervene

- Breathitt's request to move the trial to Oakland

- Defendants' anticipated request for additional time to file school district ("SD") motion for summary judgment ("MSJ") replies

- Brief continuance of SD jury instructions exchange and submission deadlines

- State AGs and Meta's joint draft jury instructions and verdict forms filed October 10, 2025

- State AGs request for trial setting

## II.     Joint Updates

### A.     Joint JCCP Update

**General Causation *Sargon* Rulings.** Judge Kuhl issued rulings on the parties' *Sargon* motions as to general causation experts on September 22, following a hearing held September 17. Judge Kuhl largely denied the parties' *Sargon* motions with a few exceptions: Judge Kuhl excluded the following opinions from plaintiffs' retained experts: (1) Dr. Gary Goldfield's opinions regarding what Defendants "knew or should have known" and (2) Dr. Kara Bagot's opinions regarding Defendants' intent; she denied Defendants' motions as to Dr. Drew Cingel, Dr. Anna Lembke, Dr. Dimitri Christakis, Dr. Ramin Mojtabai, Dr. Eva Telzer, and Dr. Jean Twenge. *See* **Ex. 2**, 9/22/25 Ruling on Defendants' *Sargon* Motions. Judge Kuhl excluded the following opinions from plaintiffs' non-retained experts: (1) all general causation opinions from Lotte Rubaek[1] and (2) Arturo Bejar's opinions regarding causation of specific mental health harms.[2] Judge Kuhl excluded the following opinions from Defendants' experts: Dr. Keith Hampton's opinions regarding "moral panics" and testimony that "there is no evidence that social media use causes mental health harm"; she denied Plaintiffs' motions as to Auerbach, Gotlib, Honaker, Platt, Shear, Galvan, Gibbons, Schwartz, Krishna, and Pfeifer. *See* **Ex. 4**, 9/22/25 Ruling on Plaintiffs' Motion to Exclude the Opinions of Dr. Keith Hampton, and **Ex. 3** Ruling on Plaintiffs' *Sargon* Motions.

---

[1] The JCCP Plaintiffs subsequently withdrew their disclosure of Ms. Rubaek as a non-retained expert.

[2] There is a second round of *Sargon* briefing with respect to Mr. Bejar that has not yet been ruled on.

**Hearing on Remaining *Sargon* Motions.** On November 10, Judge Kuhl will hear argument on the remaining *Sargon* motions, directed to plaintiffs' non-retained expert Bejar (non-general causation opinions) and retained experts Bagot (KGM, RKC), Chandler, Drumright, Istook, Johnson, McCarron, Murray (RKC), Noar, and Roberts, as well as to defense experts Asinski and Ackert. **Ex. 6**, 10/6/25 Minute Order.

**Ruling on Early MSJ re Statute of Limitations Defense.** The Meta, Snap, and TikTok Defendants requested and were granted leave to file an early MSJ on the issue of statute of limitations for Trial Pool 3 plaintiff Jamie Loach. Argument was held on September 15, and Judge Kuhl denied the MSJ on September 16, finding there were factual disputes regarding when Loach discovered or should have discovered her alleged injuries and their connection to the defendants' conduct, and that these disputes are for a jury to resolve, not for summary judgment. *See* **Ex. 5**, 9/16/25 *Loach* MSJ Order.

**MSJ Hearing Set for October 28, 2025.** On October 28, 2025, Judge Kuhl will hear argument on MSJs or motions for summary adjudication for Trial Pool 1 Plaintiffs. This will include four motions regarding K.G.M., four motions regarding R.K.C., and two motions regarding Moore. The Court will also hear argument on Defendants' omnibus motion to seal as to the general causation *Sargon* motions. **Ex. 6** [10/6/25 Minute Order].

**Hearing on Discovery Motions and Motions to Quash.** On October 20, Judge Kuhl will hear argument on two discovery motions filed by plaintiffs and one discovery motion filed by defendants, as well as motions to quash notices to appear at trial filed by Meta (for Mark Zuckerberg and Adam Mosseri) and Snap (for Evan Spiegel).  Plaintiffs' discovery motions concern Meta "taps" data and Defendants' user account identification.  Defendants' discovery motion concerns content deleted from Defendants' platforms for plaintiff R.K.C.  **Ex. 6** [10/6/25 Minute Order].

**Motions in Limine.** The parties filed non-*Sargon* motions in limine ("MILs") on September 5. On September 25, following conferrals, the parties filed a joint notice of withdrawal of certain MILs as to which they had worked out a stipulation or other resolution, and each side identified its 4 top priority MILs, second 4 priority MILs, and third 4 priority MILs. Judge Kuhl has indicated that she will hear argument on the parties' priority MILs in early December. **Ex. 6** [10/6/25 Minute Order].

**Updated Trial Schedule.** Trial Pool 1 plaintiff Heaven Moore's case was previously set for trial on November 17, 2025. However, due to developments in the case (related to new allegations that she was the victim of sexual predation and assault when she was 15-17 years old), Judge Kuhl changed the order of the Trial Pool 1 bellwether trials and set a schedule for supplemental discovery to be taken in *Moore*. And due to plaintiff trial counsel availability issues, Judge Kuhl vacated the original (November 17, 2025) trial date. Jury selection for the first bellwether trial is now set for January 27, 2026, and the new order of cases for Trial Pool 1 is (1) K.G.M, (2) R.K.C., and (3) Heaven Moore. **Ex. 6** [10/6/25 Minute Order]; *see also* **Ex. 7** [9/17/25 Minute Order]. Judge Kuhl also reset the first Trial Pool 2 trial for April 13, 2026, and the first Trial Pool 3 trial for June 8, 2026. *Id.* The parties are conferring on revised pre-trial deadlines for Trial Pools 2 and 3.

**Witness and Exhibit Lists.** The parties have exchanged initial witness lists for the K.G.M. and R.K.C. cases and initial exhibit lists for all three Trial Pool 1 cases. At an October 6 conference, Judge Kuhl instructed the parties to exchange revised witness lists, separating witnesses into "will call" and "may call" categories, and limiting the number of hours of direct and cross examination of "will call" witnesses to 40 hours per side. **Ex. 6** [10/6/25 Minute Order]. The parties have agreed to submit updated witness lists on November 12.

**Jury Instructions.** On November 21, the parties will file Trial 1 verdict form proposals and proposed jury instructions separated into three groups: (1) agreed-upon instructions, (2) plaintiffs' additional instructions, and (3) Defendants' additional instructions. Judge Kuhl will hear argument on the proposed jury instructions on December 12. **Ex. 6** [10/6/25 Minute Order].

B.    **Joint Discovery Update**

A copy of the following discovery-related submissions and orders, which were (or will by October 24 have been) filed or issued since the last CMC Statement was filed, will be sent by email to Judge Gonzalez Rogers after this CMC Statement is filed (numbers refer to ECF docket numbers):

- Supplemental Joint Letter Brief ("JLB") and Status Report on NY Executive Agencies' Production of Documents (ECF 2258)

- Response re Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge on Discovery Letter Brief re Frances Haugen Document Production and Deposition (ECF 2260); see ECF 2197 (Discovery Letter Brief); see ECF 2239 (Motion).

- Order Resolving JLB re Certain Requests for Admissions Served by the States on Meta Defendants (ECF 2308); see ECF 2012 (JLB)

- Order Resolving JLB re Plaintiffs' Motion to Compel Meta to Produce Transcripts of All Depositions Taken and Documents Produced in State Court AG Actions After MDL Close of Fact Discovery (ECF 2310); see ECF 2174 (JLB)

- Joint Status Report on Results of Meet-and-Confer on Additional and Unanticipated Discovery on Disclosed Witnesses (ECF 2312)

- JLB Re Plaintiffs' Motion to Compel TikTok and YouTube to Produce the Custodial Files of TikTok Witness Samantha Kersul and YouTube Witness Tom Saffell, Both Listed on Defendants' September 24 Preliminary Trial Witness List (ECF 2314)

- JLB re Disputes Over the Additional of Sarah Wynn-Williams and Jason Sattizahn to Plaintiffs' Witness List (ECF 2315)

### C.    Appeals

Briefing on the collateral order appeal and the cross-appeals in the Ninth Circuit was completed as of October 14, 2025.  On October 8, 2025, the Ninth Circuit notified the Parties that the case is being considered for oral argument in either January or February 2026.

### D.    Additional & Unanticipated Discovery on Disclosed Witnesses

As set forth in the Parties' Joint Status Report on Results of Meet and Confer on Additional and Unanticipated Discovery (ECF 2312), the Parties conferred about three categories of witnesses identified on their respective preliminary witness lists, exchanged September 24, 2025. The Parties provide updates on the scheduling of further depositions for each of those categories of witnesses below.

**New School District Witnesses.** Three of the SD bellwether Plaintiffs disclosed a total of 8 new witnesses on their preliminary witness lists exchanged September 24. In the course of conferrals, Plaintiffs withdrew one of those witnesses. Consistent with a stipulation entered by the Parties in March 2025 (ECF 1752), Plaintiffs have agreed to make each of the 7 remaining new witnesses available for a 4.5-hour deposition and to produce their custodial files, and are in the process of producing the custodial files that Defendants did not previously have. For any of these new witnesses who are submitting MSJ declarations,

Defendants may request additional time to take those depositions and, if necessary, commensurate adjustments to their December 5 MSJ reply deadline. *See infra* Section III.A.2. Plaintiffs intend to oppose as improper and unnecessary any request for a delay from Defendants, given that these additional depositions were expressly contemplated by the Parties' stipulation and the Court's prior orders.

For any new witnesses not submitting such declarations, the Parties are in agreement that the witnesses can be deposed at mutually convenient times in December or early 2026. For new witnesses who submit declarations, Plaintiffs will offer deposition dates sufficiently prior to Defendants' reply deadline.

**Defendant-Employee Witnesses Listed on Defendants' Preliminary Witness Lists.** Defendants are meeting and conferring with Plaintiffs and expect to schedule defense-side depositions, to the extent Defendants have agreed to produce the witness for further deposition, at a mutually convenient time sometime between now and early 2026.

**Former Meta Employee Witnesses Listed on Plaintiffs' Preliminary Witness Lists.** PISD Plaintiffs listed two former Meta employee witnesses on their preliminary witness lists who were not previously deposed in any capacity in the MDL: Sarah Wynn Williams and Jason Sattizahn. The State AGs also listed Jason Sattizahn. Meta has moved to strike these two witnesses from Plaintiffs' witness lists, which Plaintiffs opposed. ECF 2315. Meta reserves its right to seek depositions of these witnesses and further documents if they are not stricken.

**E.    State AGs Jury Instructions and Verdict Forms filed October 10, 2025**

Pursuant to the Court's direction at the August and September 2025 CMCs, the State AGs and Meta jointly filed draft jury instructions and verdict forms for the purpose of informing trial-planning discussions. In addition, Meta and the State AGs each submitted a brief statement regarding the proposed instructions and verdict forms. The Parties are prepared to discuss the jury instructions and verdict forms with the Court.

III.    **Other Issues**

    A.    **School District Cases**

        1.    **Breathitt's Request That its Trial be Held in Oakland, not McKinleyville**

**Plaintiffs' Position:** Breathitt County Board of Education ("Breathitt") respectfully requests that its bellwether trial be held in Oakland. Breathitt waived *Lexecon* with the expectation that its case would be tried in Oakland. Breathitt appreciates that Plaintiffs' leadership did not previously object to a change in venue to McKinleyville. Breathitt, however, raised with the Court the possibility of instead having the trial in Kentucky in its home jurisdiction, which the Court declined. (9/19/2025 CMCS at 2-6; Tr. CMC 7/18/25 at 19-21). While Breathitt was consulting further regarding venue, the Court issued an Order stating that Breathitt would not go first in the sequence, *see* CMO No. 26, removing immediate urgency to the issue. Now that the Court has issued its CMO No. 27 placing Breathitt first in the sequence, Breathitt objects to trial in McKinleyville for two reasons: 1) relocating it to McKinleyville would impose substantial, unwarranted hardship on a small, resource-constrained school district; and 2) the Oakland courthouse provides the accessibility and infrastructure needed to conduct a trial of this magnitude.

        a.    **Reassigning Trial to McKinleyville Would Impose Undue Hardship**

Breathitt is appreciative of the intention behind the Court's *sua sponte* decision to conduct its bellwether trial in McKinleyville, California. However, this move would create additional hardship for a school district that is already significantly burdened by having to try a multi-week case in California.

Breathitt did not waive its *Lexecon* rights lightly.  As the Court is aware from past briefing, Breathitt is one of the smallest and poorest school districts in the country. It survives on a shoe-string budget and is located in a rural and remote area of Eastern Kentucky far from any major airports. The nearest major airport—Cincinnati/Northern Kentucky International (CVG)—is approximately a two-and-a-half-hour drive from Jackson, Kentucky. The Lexington airport, about one hour and forty-five minutes away, is a small regional facility with limited service. Because of these distances and flight schedules, district witnesses must stay overnight near the airport before early morning departures, adding at least one travel day on each end of any trip. Although the actual flying time from Kentucky to San Francisco and to Arcata is similar, the difference in accessibility and cost is substantial. From both Lexington and

Cincinnati, there are multiple one-stop flights each day to San Francisco on several major airlines. By contrast, only a single daily flight operates to Arcata–Eureka Airport on one carrier (United). Cincinnati also offers direct flights to San Francisco on several days each week—at roughly half the cost and with far less travel time. Travel to McKinleyville therefore requires longer and less reliable connections, substantially higher costs, and greater disruption to the district's operations.

A majority of the fact witnesses that Breathitt expects to call live to testify are current district employees—teachers, administrators, and staff whose contracts are limited to the academic year. Participating in a summer trial would require these employees to work outside their contracted days, which means the district, which is already financially strained, must secure additional funds to compensate these individuals. Any such expenditures require advanced approval from the school board. In short, holding trial in a remote location like McKinleyville would force the district to incur costs and seek approvals that were not contemplated when it agreed to waive *Lexecon*.

Defendants' assertion that travel costs are comparable between McKinleyville and Oakland is not supported by the evidence. Current airfare data show that round-trip travel from Kentucky to Arcata–Eureka Airport averages between $1,700 and $1,800 for June 2026, compared to $500 to $750 for flights to San Francisco International Airport, with significantly more daily flight options and greater schedule flexibility for the latter. Moreover, Cincinnati now offers direct flights on Breeze Airways to San Francisco several days each week for less than $500 round-trip, reducing travel time and expense even further.[3] These differences are material and underscore the substantial, unanticipated hardship that relocation would impose on the district and its witnesses. Breathitt agreed to waive *Lexecon* based on the understanding that any trial would take place before this Court in Oakland. Breathitt did not contemplate relocation to another division with a fundamentally different jury pool, limited facilities, and reduced public access. Shifting the trial to the Eureka Division would alter the assumptions underlying the District's waiver, and impose additional burdens on the parties, witnesses, and the public.

---

[3] Breeze's calendar only extends a few months into the future, which may be why Defendants are not finding these flights.

Defendants' suggestion that Breathitt acquiesced to trial in McKinleyville may reflect a misunderstanding of the record. The prospect of conducting bellwether trials in McKinleyville was first mentioned by the Court *sua sponte* during in June, well before any case was sequenced for trial. To the extent any earlier comments by Plaintiffs' leadership could be read as expressing general agreement were not made with Breathitt's specific authorization. Breathitt itself never consented to trial outside Oakland. When the Court later indicated that Breathitt's trial would be held in McKinleyville, Breathitt's trial counsel sought to address the issue at the July CMC, including the possibility of holding trial in Kentucky, but the Court declined to hear further discussion on venue at that time. Clearly Breathitt had objections. After the July CMC, Breathitt did not press the issue further because the Court subsequently advised that Breathitt's case would not be tried first, rendering the question of venue premature at that time. Breathitt's limited *Lexecon* waiver—given in good faith and with the understanding that trial would occur before this Court in Oakland—was not intended to encompass a proceeding in a remote division that would significantly increase the district's burden.

Defendants also insinuate that Breathitt intends to dismiss its case if its request to have trial in Oakland is not granted. Breathitt has no intention of dismissing its case and never has. In fact, Breathitt waived *Lexecon* rather than have trial in the location most convenient to it so that the Court would retain its ability to try in Oakland as many of the Parties' bellwether selections as possible.

Breathitt respectfully submits that trial should remain in Oakland, consistent with its waiver and the fair, efficient administration of this bellwether proceeding.[4]

**b.  The Oakland Courthouse Provides the Infrastructure, Accessibility, and Public Transparency Necessary for a National MDL Trial.**

The Federal Courthouse in Oakland is designed and equipped to host complex, multi-party litigation of national scope that is likely to draw national press attention. It has full-sized trial courtrooms,

---

[4] It also bears noting that Defendants selected Breathitt as a bellwether plaintiff. Only after that selection did Defendants file a motion for summary judgment against Breathitt on statute of limitations grounds. Defendants' have so moved only as to Breathitt—they did not move on this basis against any of the other five districts, and did not raise this issue as to Breathitt in briefing regarding selection of bellwethers or sequencing of trials.

extensive jury facilities, and secure and sophisticated technological infrastructure. The courthouse sits at the center of the Bay Area's transportation network—served by all major airlines, BART, AC Transit, and major interstates—making it accessible to the parties and the witnesses, and to jurors from across the division. It is also within walking distance of hotels, restaurants, and counsel offices, allowing for an efficient and orderly trial process.

By contrast, the Eureka–McKinleyville courthouse operates as a small satellite facility intended primarily for local civil and misdemeanor proceedings. It maintains limited hours, has only a small number of jury-capable courtrooms, and lacks the space and technology infrastructure necessary to accommodate the logistical demands of a high-profile MDL trial involving multiple parties, extensive evidence, expert testimony, and national media attention. The limited size of the courthouse, its distance from major airports, and the lack of public transit in the surrounding region would impose substantial burdens on witnesses and court personnel alike.

Trying the case in McKinleyville would also complicate jury management, increasing the risk of disruption from logistical constraints entirely unrelated to the merits of the case. Jurors drawn from the Eureka Division may face longer commutes and therefore greater hardship. (The Eureka Courthouse draws jurors from as far north as Smith River (a 1.75 hour drive) and as far south as Mendocino (a 3.5 hour drive). The limited transportation network and dispersed population base make it significantly more difficult for jurors to appear consistently and on time, particularly for a trial expected to last multiple weeks. These factors increase the likelihood of hardship excusals and the need for replacement jurors, undermining the stability of the panel and risking delays mid-trial.

For these reasons, Breathitt respectfully requests that the Court try its case in the San Francisco–Oakland Division of the Northern District of California.

Plaintiffs recognize that the current shutdown may necessitate postponement of the next Case Management Conference. (Dkt. No. 2303). Plaintiffs' Co-Lead Counsel, the Co-Chairs of the School Districts Committee, and Plaintiffs' counsel for Breathitt are jointly available to address this matter at the Court's convenience by Zoom on any day except on October 30 and 31, 2025.

**Defendants' Position:**

Defendants oppose Plaintiffs' request to move the location of the *Breathitt* trial from Eureka/McKinleyville to Oakland for three reasons.

*First*, this Court's prior determination remains correct: trying *Breathitt*—which is located in a rural jurisdiction in Kentucky—in another rural community would provide the parties with helpful information. *See* June 13, 2025 CMC Tr. at 40:24–41:5.  As the Court noted in selecting *Breathitt* as a trial bellwether, over 40% of the school district plaintiffs in the MDL are from rural communities.  *Id.* at 10:9–19; *see* ECF 1971 at 7.  Notably, as recently as the September CMC, Plaintiffs' leadership unequivocally agreed with that determination:

> MR. WEINKOWITZ: I think it's **important that that case be tried in a location that's more rural**, and I think that that's why you did it, and I think that **that's a fine thing to do**.

September 19, 2025 CMC Tr. at 29:17–20 (emphasis added).  Moving *Breathitt* to Oakland—an urban center many times more populous than Breathitt or Eureka/McKinleyville—would not accomplish this goal.

*Second*, Plaintiffs repeatedly declined to object to this venue, and in fact endorsed it, when the Court presented this possibility at several conferences.  Instead, as Plaintiffs forthrightly admit, their belated objection comes only after the Court selected Breathitt as the first trial.

The Court first indicated that it would try *Breathitt* in Eureka over four months ago, at the June CMC:

> THE COURT: … The Breathitt School District case, which is a rural composition or geographic area, I anticipate that what I will do for that case is try it up in Eureka….  It is rural….
>
> MR. WEINKOWITZ: No objection to that, Your Honor.
>
> THE COURT:  I don't think you could object.

June 13, 2025 CMC Tr. at 41:2–7.  At the July CMC, lead counsel for Breathitt appeared in person but again made no objection to trying the case in Eureka.  *See* July 18, 2025 CMC Tr. at 6:23–24, 19:14–16. At the August CMC—during which the Court indicated that it did not intend to select *Breathitt* as the first

trial due to the planned venue, *see* August 22, 2025 CMC Tr. at 55:13–16—Plaintiffs again raised no objection to trying that case in Eureka. And in September, after the Court specifically inquired about the suitability of Eureka for the *Breathitt* trial, Plaintiffs' counsel affirmatively represented that "it's important that [*Breathitt*] be tried in a location that's more rural." September 19, 2025 CMC Tr. at 29:17–20.[5]

It was only *after* the Court selected *Breathitt* as the first trial that counsel reversed position and objected to the trial venue. In short, so long as they viewed it as an impediment to trying *Breathitt* first, Plaintiffs' counsel repeatedly *supported* Eureka as the venue. They should not be permitted to switch positions now.

*Third*, Plaintiffs' proffered reasons for their belated objection ring hollow. Breathitt elected to file this lawsuit, and lawsuits necessarily involve costs to both sides. Breathitt, of course, could have asserted its *Lexecon* rights to ensure that any trial of its case would have taken place in Kentucky. Yet it knowingly relinquished those rights, presumably in the hopes that it would secure it an earlier trial, thereby voluntarily submitting itself to a trial in the Northern District of California. It cannot now reasonably complain about being "significantly burdened by having to try a multi-week case in California." Nor can it be heard to complain that "[p]articipating in a summer trial would require these employees to work outside their contracted days." That would be true no matter where the trial is held, and certainly Breathitt would not prefer a trial during the school year.

Breathitt's never-before-mentioned concerns about "a fundamentally different jury pool, limited facilities, and reduced public access" to the McKinleyville courthouse are also meritless. It again bears note that—for so long as they believed that a trial in Eureka would prevent *Breathitt* from being the first trial—Plaintiffs' counsel did not voice these or any other concerns and instead repeatedly *endorsed* the Court's venue proposal. Plaintiffs' newfound concerns about the "dispersed population" of the Eureka area fall flat—the venue's rural character is exactly why this Court determined it would be valuable to the bellwether process. Many courts successfully navigate jury pools that may reach individuals living a few hours away. In any event, Defendants have already begun planning for an efficient trial in Eureka and are

---

[5] To the extent Breathitt now means to suggest that the repeated statements by Plaintiffs' leadership in support of a Eureka trial were unauthorized or inaccurate, Breathitt's counsel had ample opportunity to correct the record over the past four months. It did not.

confident that the large number of sophisticated and well-resourced counsel on Plaintiffs' side will be able to do the same.

While Breathitt now asserts that it would be burdensome and expensive for its witnesses to travel to Eureka, there is *no material differenc*e between travel to Eureka and to Oakland. Defendants' research indicates that both sets of flights on June 30, 2026, take approximately the same time for approximately the same cost.[6] But even if Plaintiffs correctly assume that there are (currently unscheduled) flights that are several hundred dollars cheaper, that slight difference is likely to be outweighed by extended hotel stays, and—in any case—cannot possibly be material here given the massive sums that the parties are spending on this litigation. Moreover, Plaintiff has the ability to structure its case presentation in a way that would be most convenient for its witnesses. In a case where Breathitt seeks to recover over $62 million from Defendants and in which all parties (or their counsel) have incurred—and will continue to incur—enormous litigation costs, the difference between Oakland and Eureka in either cost or travel time for a small handful of witnesses is vanishingly small.

_____

[6] There are flights on United that depart Lexington at 9:00 am (late enough that an overnight stay would not be required), connect through Denver, and arrive in Arcata/Eureka in approximately 7.5 hours, for less than $1200 round trip. On that same day, the fastest route from either Cincinnati or Lexington to San Francisco involves flights on American that depart Lexington at around 8:00 am, connect through Dallas, and arrive in San Francisco in approximately 7 hours, for an almost identical price. Although Plaintiffs suggest that there are direct flights from Cincinnati to San Francisco in June 2026, Defendants have not been able to corroborate that claim. Instead, the fastest available route from Cincinnati to San Francisco on June 30 would be a 6.5-hour route with a layover, again at a comparable price—but which ultimately involves a *longer* total travel time, taking into account increased driving time from Breathitt to Cincinnati. To be clear, Plaintiffs' statement that "only a single daily flight operates to Arcata–Eureka Airport on one carrier (United)" refers to the number of one-stop flights to Arcata/Eureka from Lexington or Cincinnati. The total number of daily flights to Arcata/Eureka is far greater, including four daily direct flights from San Francisco and daily direct flights from Denver and Los Angeles. (The round-trip prices set forth above are based on a July 2 return date.)

12

Finally, Defendants are concerned that Plaintiffs' recent complaints about trying the *Breathitt* case in Eureka or in California generally is a prelude to dismissing *Breathitt* and manipulating which bellwether gets tried first. Plaintiffs should affirm their intention to try the *Breathitt* case. If Plaintiffs instead dismiss Breathitt before trial, the Court should not reward gamesmanship and instead should replace Breathitt with a defense pick.

**2.     Defendants' Anticipated Request for Additional Time to File MSJ Replies**

<u>**Defendants' Position:**</u> Plaintiffs have informed Defendants that some or all of the 7 new SD witnesses listed on their preliminary witness lists (or other witnesses) may submit declarations in support of Plaintiffs' oppositions to Defendants' MSJs in the SD bellwether cases, due November 7. As alluded to in Section II.D. above, depending on the number of declarations ultimately submitted from SD witnesses and the content of those declarations, as well as the timing of custodial file productions for those witnesses, Defendants may need, and expressly reserve the right to request, additional time to prepare their replies in support of their MSJs, currently due December 5, to allow time for depositions of those witnesses; and expressly reserve the right to challenge Plaintiffs' use of those declarations to the extent they present new facts after the close of fact and expert discovery and the filing of MSJs.

<u>**Plaintiffs' Position:**</u> Plaintiffs intend to oppose as improper and unnecessary any request for a delay from Defendants, given that these additional depositions were expressly contemplated by the Parties' stipulation and the Court's prior orders.

**3.     Brief Continuance of SD Jury Instructions Exchange and Submission Deadlines**

The Parties have agreed, subject to Court approval, to a 1-week continuance of the October 20 deadline to exchange jury instructions for the SD cases, and a 1-week continuance of the December 8 deadline to submit jury instructions for the SD cases. The new deadlines would be October 27 (exchange) and December 15 (submit). The Parties respectfully request that the Court so-order this brief continuance at the October 24 CMC. A Stipulation and [Proposed] Order is attached hereto as **Ex. 1**.

**B.     State AG's Trial Sequencing**

The State AGs renew their request for the Court to set their trial after the first school district bellwether trial. See ECF No. 2191, at 9-10. Meta renews its objection to that request. See ECF No. 2191, at 10-11. The Parties are prepared to discuss this issue with the Court.

**C.      Update on Sullivan v. Meta Platforms, Inc., et al (25-cv-05081-YGR)**

At the September 19, 2025 hearing, the Court requested an update regarding the outstanding motion to dismiss in *Case No. 25-05081*. See Sept. 19, 2025 Hr'g Tr. at 44. Counsel for Defendants Southeastern Pennsylvania Transit Authority and Robert Millison, and counsel for Sullivan have conferred and agreed to extend Plaintiff's deadline to respond to the motion to dismiss. Counsel for Sullivan will have Fourteen (14) days from the date the stipulation is entered, but not later than October 31, 2025 to respond. A stipulation memorializing this agreement is being filed on the docket on October 17, 2025, and is attached hereto as **Ex. 8** for the Court's convenience.

Respectfully submitted,

DATED: October 17, 2025

By:  */s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel and Settlement Counsel

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel and Ombudsperson

MATTHEW BERGMAN
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
jbilsborrow@weitzlux.com

ELLYN HURD
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 212-257-8482
ehurd@simmonsfirm.com

ANDRE MURA
**GIBBS MURA, A LAW GROUP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

Plaintiffs' Steering Committee Leadership

RON AUSTIN
**RON AUSTIN LAW**
400 MANHATTAN BLVD.
HARVEY, LA 70058
Telephone: 504-227–8100
raustin@ronaustinlaw.com

AELISH M. BAIG
**ROBBINS GELLER RUDMAN & DOWD LLP**
1 MONTGOMERY STREET, #1800
SAN FRANCISCO, CA 94104
Telephone: 415-288-4545
AelishB@rgrd.com

PAIGE BOLDT
**ANAPOL WEISS**
130 N. 18TH STREET, #1600
PHILADELPHIA, PA 19103
Telephone: 215-929-8822
pboldt@anapolweiss.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: 816-701-1100
tcartmell@wcllp.com

FELICIA CRAICK
**KELLER ROHRBACK LLP**
1201 THIRD AVENUE, SUITE 3400
SEATTLE, WA 98101
Telephone: 206-623-1900
fcraick@kellerrohrback.com

SARAH EMERY
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202

16

Telephone: 859-600-6725
semery@justicestartshere.com

KIRK GOZA
**GOZA HONNOLD**
9500 NALL AVE. #400
OVERLAND PARK, KS 66207
Telephone: 913-412-2964
Kgoza @gohonlaw.com

RONALD E. JOHNSON, JR.
**HENDY JOHNSON VAUGHN EMERY PSC**
600 WEST MAIN STREET, SUITE 100
LOUISVILLE, KY 40202
Telephone: 859-578-4444
rjohnson@justicestartshere.com

MATTHEW P. LEGG
**BROCKSTEDT MANDALAS FEDERICO, LLC**
2850 QUARRY LAKE DRIVE, SUITE 220
BALTIMORE, MD 21209
Telephone: 410-421-7777
mlegg@lawbmf.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

JOSEPH H. MELTER
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 KING OF PRUSSIA ROAD
RADNOR, PA 19087
Telephone: 610-667-7706
jmeltzer@ktmc.com

HILLARY NAPPI
**AWK ATTORNEYS**

17

1133 WESTCHESTER AVE, SUITE N-224
WHITE PLAINS, NY 10604
Telephone: 914-468-4840
hnappi@awk-saa.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

RUTH THI RIZKALLA
**THE CARLSON LAW FIRM, PC**
1500 ROSECRANS AVE., STE. 500
MANHATTAN BEACH, CA 90266
Telephone: 415-308-1915
rrizkalla@carlsonattorneys.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205-855-5700
fu@dicellolevitt.com

Plaintiffs' Steering Committee Membership

JOSEPH VANZANDT
**BEASLEY ALLEN**
234 COMMERCE STREET
MONTGOMERY, LA 36103
Telephone: 334-269-2343
joseph.vanzandt@beasleyallen.com

Federal/State Liaison

*Attorneys for Individual Plaintiffs*

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Krista Batchelder_
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*


**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480

19

Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),

20

*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General*
*and the New Jersey Division of Consumer Affairs*
*Matthew J. Platkin, Attorney General for the State of*
*New Jersey, and Elizabeth Harris, Acting Director of*
*the New Jersey Division of Consumer Affairs*

COVINGTON & BURLING LLP

By: */s/ DRAFT*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

DAVIS POLK & WARDWELL LLP

By: */s/ James P. Rouhandeh*
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

KING & SPALDING LLP

By: */s/ Geoffrey M. Drake*
Geoffrey M. Drake, *pro hac vice*
TaCara D. Harris, *pro hac vice*
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: gdrake@kslaw.com
        tharris@kslaw.com

David P. Mattern, *pro hac vice*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: dmattern@kslaw.com

Bailey J. Langner (SBN 307753)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: blangner@kslaw.com

*Attorneys for Defendants TikTok Inc., ByteDance Inc.,*
*TikTok Ltd., ByteDance Ltd., and TikTok LLC*

MUNGER, TOLLES & OLSON LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI

23

One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

## **ATTESTATION**

I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: October 17, 2025

By: */s/ Lexi J. Hazam*