UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Filing Relates to:<br>*All Personal Injury Actions* | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE RE PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM TIKTOK RE: THIRD PARTY EUGENIA COONEY**<br><br>Re: Dkts. 2179, 2180-1, 2181 |

## INTRODUCTION

This MDL has been referred to the undersigned for all discovery purposes. *See* Dkt. 426. Plaintiffs and the TikTok Defendants ("TikTok") filed a joint letter brief seeking resolution of a dispute regarding additional discovery sought by Plaintiffs from TikTok regarding third party Eugenia Cooney. [Dkt. 2179; Dkt. 2180-1 (unredacted confidential version); Dkt. 2181 (corrected joint letter brief)]. Upon careful review of the briefing and submissions, the Court resolves the disputes as to the additional discovery sought from TikTok as set forth herein. The Court finds the dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief

requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). A district court may limit discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* at 26(c).

The relevant legal standards for discovery are well-known. Federal Rule of Civil Procedure 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and

discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information — perhaps the only information — with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding

3

district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

Under Rule 26, a party "who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). Further, a party "must supplement or correct its disclosure or response . . . as ordered by the court." Fed. R. Civ. P. 26(e)(1)(B). The 1993 amendment to Rule 26(e) "clarifies that the obligation to supplement responses to formal discovery requests applies to interrogatories, requests for production, and requests for admissions, but not ordinarily to deposition testimony." *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Further, "[t]he obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition[.]" *Id.*

"[I]t is axiomatic that the duty to supplement is triggered only if the materials requested would have been responsive to a discovery request in the first instance." *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 396 (C.D. Cal. 2022). In *L.A. Terminals*, the court denied a motion to compel after the close of fact discovery because the documents sought were not called for by the requests for production, when read in light of the "reasonable particularity" standard. *Id.* at 397. By contrast, in a situation where the target of the discovery agreed during the fact discovery period to produce the scope of documents sought, but changed position after the close of the fact discovery period, that "bait and switch" justified an order to compel production and supplementation after the close of the fact discovery period. *Gamevice, Inc. v. Nintendo Co.*, No. 18-cv-01942-RS (TSH), 2019 WL 5565942, at *3 (N.D. Cal. Oct. 29, 2019). Further, a district

4

court has the discretion to consider or reject any discovery motions filed after the close of the fact discovery period, as well as the discretion to allow additional related discovery after the close of fact discovery if the interests of justice so require. *Baird v. Charter Commc'ns, Inc.*, No. 2:19-cv-10621-FLA (KSx), 2023 WL 11113852, at *3 (C.D. Cal. Sept. 8, 2023). Ultimately, a district court has discretion to deny further discovery after the close of the fact discovery period, such as when the request for additional discovery is based on speculation or when the party seeking the belated discovery was not diligent in seeking the discovery. *O'Hagan v. Hartford Fire Ins. Co.*, 628 F. App'x 501, 502 (9th Cir. 2015); *Seaton v. Shatzer*, 230 F.3d 1367, 2000 WL 1175579, at *1 (9th Cir. 2000) (mem.).

As part of its inherent discretion and authority, a district court also has discretion in resolving disputes over whether to grant motions to compel compliance with or to quash Rule 45 subpoenas. *See Garrett v. City & Cnty. of S.F.*, 818 F.2d 1515, 1519 (9th Cir. 1987). Further, Rule 45 expressly states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty[.]" Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) ("On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.") (emphasis added). "Discovery restrictions may be even broader where the target is a non-party." *Shieh v. Ebershoff*, 15 F.3d 1089, 1993 WL 540289, at *1 (9th Cir. 1993) (mem.). "While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery. As one district court has noted, '(t)here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.'" *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

## DISCUSSION

The Parties' fundamental dispute concerns: (1) whether TikTok should be required to

produce additional documents relating to a nonparty, Eugenia Cooney ("Cooney"); (2) whether Plaintiffs should be granted leave to take an additional deposition of a specified TikTok witness previously deposed in February 2025 (whose name the Parties have redacted for confidentiality and who, therefore, the Court will refer to in this public Order as "the TikTok witness"); and (3) whether Plaintiffs should be granted leave to take the deposition of Cooney.

As the Parties' briefing and the public record discloses, Cooney is a TikTok influencer or creator "who routinely posts on TikTok and has 2.8 million followers." [Dkt. 2181 at 4]. Cooney is "a TikTok creator suffering from anorexia" and, according to Plaintiffs, her photographs and postings indicate that she "is suffering from an obvious serious eating disorder." *Id.* During the fact discovery period, TikTok produced over 300 documents referencing Cooney, its relationship with her, and user complaints about her. *Id.* TikTok's relationship with Cooney was a topic during the deposition of the TikTok witness taken in February 2025. *Id.*

## I. REQUEST FOR DOCUMENTS FROM TIKTOK RE: COONEY

After the close of fact discovery, Cooney apparently fell ill during a livestream broadcast on TikTok on May 23, 2025. *Id.* Cooney also apparently visited TikTok's offices in New York around this same date. *Id.* at 4-5. After learning of these events, Plaintiffs requested TikTok to produce supplemental documents concerning Cooney. The Parties did not reach agreement on this issue, resulting in the instant letter briefing.

In the instant brief, Plaintiffs seek an order requiring TikTok to produce two broadly phrased categories of documents concerning Cooney, comprising multiple sub-parts:

1. New documents/communications discussing TikTok's relationship with Ms. Cooney.
    - Communications between TikTok and Ms. Cooney; Internal communications about Ms. Cooney; Any communications with third party organizations, including the National Alliance for Eating Disorders, about Ms. Cooney; Contracts or agreements between TikTok and Ms. Cooney; Communications or documents related to Ms. Cooney's visit to TikTok's New York City headquarters or other offices; and Advertising/marketing or other promotional material related to Ms. Cooney.
2. New documents/communications discussing user concerns related to Cooney.
    - User feedback or complaints about Ms. Cooney's relationship to the TikTok platform; User feedback or complaints about Ms. Cooney's health; Internal communications, analysis, investigations, and decisions related to those complaints; Communications, analysis, and investigations that went into the decision to block users from searching for Ms. Cooney's profile and instead showing a message directing users to the National Alliance for Eating Disorders; and Communications, analysis, and investigations that went into the decision to reverse the block on users searching for Ms. Cooney's profile

*Id.* at 5.

Plaintiffs argue that these supplemental productions are required under Rule 26(e) because these requested documents are responsive to Documents Request Nos. 169, 175, 176, 178, 179, 185, 187, and 189. *Id.* at 6; *see also* Dkt. 2180-2 (copies of document requests at issue). Plaintiffs argue that these new events involving Cooney and TikTok are relevant to TikTok's "knowledge of the mental health harms caused by its platforms." [Dkt. 2181 at 5].

TikTok argues that none of these document requests call for the documents now sought. *Id.* at 8. TikTok further argues that Plaintiffs and TikTok negotiated agreements to narrow the scope of these agreements last year, which included limiting production to certain agreed-upon custodians and using agreed-upon search terms. *Id.*

Further, TikTok argues that Plaintiffs are explicitly asking for an order requiring TikTok to reproduce documents that TikTok already produced, specifically relating to certain restrictions and changes made to Cooney's account and its accessibility. *Id.* at 7-8.

TikTok argues that Plaintiffs have known of Cooney since at least the February 2025 deposition of the TikTok witness discussed above. *Id.* TikTok argues that there were past creator events at TikTok's offices in 2024, similar to the event in May 2025 which Cooney attended, and Plaintiffs never sought documents concerning Cooney's participation in those earlier events. *Id.* Further, TikTok points out that Plaintiffs served completely different sets of documents requests (Nos. 249-252) which directly sought documents concerning creators on the TikTok Platform, and

none of those requests sought documents relating to Cooney. *Id.*; *see also* Dkt. 2180-3 (copies of Document Request nos. 249-252). TikTok thus argues that the requests now are untimely and not justified by the claim that Plaintiffs only recently learned of the events which gave rise to these requests.

As noted, there are two events which occurred after the close of fact discovery which triggered this dispute: Cooney's May 2025 livestream during which she apparently fell ill; and Cooney's visit to TikTok's offices in May 2025 for a creator event. While these two events themselves may be within the scope of relevance for purposes of discovery, Plaintiffs have not demonstrated how discovery beyond these two events requires supplementing, nor have Plaintiffs shown how these two events justify the broad scope of document requests now proposed (which, as quoted above, go far beyond these two events).

Further, even if there was some scope of relevance beyond these two events for purposes of discovery, Plaintiffs have not shown how the two broad categories of documents sought, each with at least six sub-parts, are proportional to the needs of the case. The multiple categories of documents now sought go far beyond these two events involving Cooney. It is clear Plaintiffs are seeking to reopen broad areas of discovery into TikTok's handling of not just these two events, but anything having to do with Cooney, and more generally, comprehensive inquiries into TikTok's internal and external communications, analyses, and documents regarding Cooney or complaints about Cooney.

More tellingly, the documents requested now are not limited as to time period, which facially demonstrates that: (1) Plaintiffs had every opportunity to seek most of these documents before the close of fact discovery and chose not to; and (2) the requests for documents now are not adequately linked to the events in May 2025 which initiated this dispute (except for the sole sub-category which specifically seeks documents relating to Cooney's visit to TikTok's offices in May 2025—but even that request seeks documents concerning her visits to any other TikTok office without limitation as to time period). After taking the February 2025 deposition of the TikTok witness, Plaintiffs could have sought every category of document now sought (except the one request specifically directed to Cooney's visit to TikTok's offices in May 2025). These factors

demonstrate that the requests for documents now are not proportional to the needs of the case.

Further, the fact that Plaintiffs served document requests which are specifically directed to creators, yet omitted Cooney, is additional support for the conclusion that the requests asserted now are not proportional to the needs of the case. Plaintiffs knew about Cooney during the fact discovery period, and could have decided to include her in the creator-directed document requests. If documents about Cooney were deemed by Plaintiffs not to be important enough to pursue in response to requests regarding creators during fact discovery, the events in May 2025 do not materially alter the conclusion that such broadly sought documents about Cooney are proportional now, because there is no explanation as to how those events suddenly made those documents that much more important to the needs of the case now. If the documents were not important enough to pursue during fact discovery, they are not important enough to require their wholesale production now (particularly in light of the lack of an adequate showing by Plaintiffs). The mere fact that Plaintiffs would like to have these documents now because of the recency of the events surrounding Cooney is simply not sufficient.

Plaintiffs do not respond to TikTok's assertion that Plaintiffs are seeking reproduction of documents which TikTok has already produced concerning Cooney (regarding restrictions on her account). This factor also demonstrates that the requests, as presented now, are not proportional to the needs of the case, because they are apparently duplicative and seek to pose unnecessary and undue costs and burdens on TikTok.

Accordingly, the Court finds that Plaintiff's requests for documents now, as presented, are not relevant (to the extent they seek reproduction of documents already produced because, by definition, duplicative documents do not themselves add any relevant information that is not already previously produced) and are not within the proper scope of proportionality for discovery. Plaintiffs have shown that, at best, there may exist a modest scope of relevance and proportionality for documents relating to the two events which gave rise to this dispute, *viz.,* Cooney's May 2025 livestream and her May 2025 visit to TikTok's offices.

However, as discussed above, there is only a duty to supplement a discovery response under Rule 26(e) if the request called for the discovery now sought. Accordingly, even if the two

events that occurred in May 2025 involving Cooney may be within some scope of relevance and proportionality, the scope of document requests that require supplementation is limited to those which would fairly call for the production of documents concerning those two May 2025 events.

The Court has reviewed the document requests which Plaintiffs argue now call for the supplemental production of documents. The only document request which even addresses meetings is Document Request No. 176 which seeks "[a]ny meeting agendas, presentation materials, handouts, background materials, or other Documents concerning any actual or potential adverse impact of Your Platform . . . on the Safety of Children, Teens, and Youth users that were discussed, tested, proposed, or implemented by any of Your Unit(s) responsible in whole or part for the Safety of Your users." [Dkt. 2180-2 at 23]. This document request does not seek all documents concerning any meeting, of course. Based on the Parties' submissions, it is not known but at least possible, that Cooney's visit to TikTok's offices in May 2025 could have included any meeting agendas or other documents "concerning any actual or potential adverse impact" that TikTok might have on users safety, and it appears equally unknown whether any such materials were "discussed, tested, proposed, or implemented" by persons working on user safety issues for TikTok.

With regard to Cooney's May 2025 livestream, none of the document requests listed by TikTok call for anything directed to a creator's livestream. Document Request No. 175 seeks "[a]ll documents concerning any actual or proposed analyses" by TikTok "concerning the topics of . . . problematic use, or Safety of Youth users on Your Platform." *Id.* Based on the submissions of the Parties, it is unknown but at least conceivable that TikTok may have documents concerning analyses of whether Cooney's livestream in May 2025 on TikTok was problematic or impacted youth users' safety.

Document Request No. 178 seeks "[a]ll Communications by or with" TikTok "concerning investigations, lawsuits, media inquiries, or government inquiries related to the Safety of Children, Teens, and Youth who use Your Platform." *Id.* Further, Document Request No. 185 seeks documents "reflecting Communications with Your employees, contractors, or vendors regarding when, whether, and how they should discuss the topic of whether use of" TikTok is "associated

with adverse effects on user Safety, including . . . problematic use." *Id.* at 24-25. The Parties' briefing has cited to media coverage of Cooney's falling ill during her May 2025 livestream on TikTok. [Dkt. 2181 at 4 n.1]. There is thus a basis to conclude that TikTok received media inquiries (if not other investigations or other government inquiries) related to user safety based on or stemming from Cooney's May 2025 livestream event. Similarly, there is a basis to conclude that TikTok sent communications to employees and contractors/vendors (such as a public relations firm) on when, whether, or how to discuss whether Cooney's May 2025 livestream event was problematic and whether that use was associated with any adverse effects on user safety.

Finally, Document Request No. 187 seeks all documents received by TikTok "regarding any adverse effect on the Safety of a Child, Teen, or Youth user" of TikTok and TikTok's response. [Dkt. 2180-2 at 25]. Based on the submissions of the Parties, it is unknown but at least conceivable that TikTok may have received user complaints in response to Cooney's TikTok livestream in May 2025 with regard to an adverse effect on youth users' safety.

In light of the above analysis of the proper scope of relevance and proportionality, and further in light of the analysis of which (if any) of the identified document requests seek documents relating to the two events in May 2025 involving Cooney, the Court concludes as follows:

TikTok is **ORDERED** to perform a reasonable search for, and make inquiry for documents from, a reasonable number of custodians who either were directly involved in Cooney's visit to TikTok's New York offices in May 2025 or were directly involved in any user safety, media inquiry, or user complaint issues concerning Cooney's May 2025 TikTok livestream event. The Court **ORDERS** TikTok to include among those custodians the TikTok witness who was deposed in February 2025.

By no later than **November 10, 2025**, TikTok **SHALL** serve supplemental responses to Document Requests Nos. 175, 176, 178, 185, and 187, and in such responses shall indicate whether, after a good faith, reasonable inquiry of those custodians called for by this Order, any non-privileged responsive documents exist which (for Document Request No. 176) relate to Cooney's May 2025 visit to TikTok's New York offices or which (for Document Request Nos.

175, 178, 185, and 187) relate to Cooney's May 2025 TikTok livestream event (and its immediate aftermath). When making inquiry of custodians and searching for documents in compliance with this Order, TikTok shall specifically include (but not be limited to) inquiry about and searching for the types of documents discussed by the Court above which may conceivably, possibly, or potentially exist.

If TikTok's responses indicate that responsive, non-privileged documents exist for any of the listed document requests, TikTok **SHALL** produce such documents on a rolling basis, starting in the first week after the service of the supplemental responses to the document requests, and continuing with at least weekly interim productions, until completed. TikTok **SHALL** complete production of any such responsive, non-privileged documents by no later than **December 4, 2025**.

The Parties are **ORDERED** to coordinate and collaborate on filing a two-page weekly joint status report on the status of the supplemental response to these listed document requests and the status of any document productions starting on **November 17, 2025**, and continuing on a weekly basis until any supplemental document production is completed (or otherwise directed by the Court).

## II.  DEPOSITIONS OF TIKTOK AND COONEY

In addition to the documents sought, Plaintiffs request that the Court issue an order granting Plaintiffs leave to take a further deposition of a specific TikTok witness and a deposition of Cooney herself. [Dkt. 2181 at 4, 6]. TikTok opposes this request because it is untimely, and because there was no meet and confer on this issue. *Id.* at 9.

As noted above, Plaintiffs' motion is based on the argument that Rule 26(e) requires supplementing the discovery responses previously served by TikTok. But, as discussed above, the amendments to Rule 26(e) "clarif[y] that the obligation to supplement responses to formal discovery requests applies to interrogatories, requests for production, and requests for admissions, but not ordinarily to deposition testimony." *See* Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. There is thus no legal basis to request a "supplementing" deposition under Rule 26(e).

Accordingly, the Court **DENIES** Plaintiffs' request to order a further deposition of TikTok

or a deposition of Cooney. With regard to Cooney, the Court notes that she is a third party and has not appeared in this action. Indeed, no leave to serve a subpoena was requested, and she may be wholly unaware that her deposition was even sought by Plaintiffs. As noted above, the Court is particularly aware of its obligation to enforce the duty imposed on a party or attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Sacks Holdings, Inc. v. Vaidya*, No. 24-mc-80197-PHK, 2024 WL 4730424, at *2 (N.D. Cal. Nov. 7, 2024) (quoting Fed. R. Civ. P. 45(d)(1)). Cooney's interests as a third-party potential target of discovery in this case have been addressed at least in part by TikTok's opposition, but nothing in this Order is intended to or makes any findings as to any objections Cooney herself may have as a third party.

## CONCLUSION

Accordingly, for all the reasons discussed herein, the Court **GRANTS-IN-PART** Plaintiffs' motion to compel TikTok to serve supplemental responses to specific document requests and produce non-privileged, responsive documents, if any exist, as discussed above. Further, the Court **DENIES** Plaintiffs' request for leave to take a further deposition of the TikTok witness and **DENIES** Plaintiffs' request for leave to take Cooney's deposition.

Counsel for the TikTok Defendants and Plaintiffs are **ORDERED** to file joint status reports on the schedule as detailed above.

This **RESOLVES** Dkts. 2179.

**IT IS SO ORDERED.**

Date: October 20, 2025

_____
PETER H. KANG
United States Magistrate Judge