#### IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
#### CIVIL DIVISION

| | |
|---|---|
| **DISTRICT OF COLUMBIA,**<br>　　　**Plaintiff,**<br><br>　　v.<br><br>**META PLATFORMS, INC., et al.,**<br>　　　**Defendants.** | **2023　CAB　006550**<br><br>**Judge Yvonne Williams** |

### ORDER GRANTING THE DISTRICT'S OPPOSED MOTION FOR AN ORDER FINDING NO PRIVILEGE OVER CLAWED-BACK DOCUMENTS

Before the Court is Plaintiff the District of Columbia (the "District")'s Opposed Motion for an Order Finding No Privilege Over Clawed-Back Documents and for *In Camera* Review ("Motion"), filed on August 18, 2025. Defendants Meta Platforms, Inc. and Instagram, LLC (collectively, "Meta") opposed the District's Motion on September 2, 2025. On September 8, 2025 and September 11, 2025, the District filed its Reply and Supplemental Authority, to which, Meta filed its Sur-Reply on September 17, 2025. For the reasons set forth below, the District's Motion is **GRANTED**.

**I.　　BACKGROUND**

The District initiated this action against Meta on October 24, 2023 alleging past and ongoing violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 to 28-3913 ("CPPA"). Pursuant to the Parties' discovery obligations, Meta began producing documents to the District in January 2024. Mot. at 2. Between March 9, 2025 and August 6, 2025, the District brought the following four documents (collectively, the "Documents") to Meta's attention because they contained potential attorney-client communications: (i) METADCAG-008-01392318 ("Document 1"); (ii) METADCAG-008-01082201 ("Document

1

2"); (iii) METADCAG-010-00353309 ("Document 3"); and (iv) METADCAG-022-00471540 ("Document 4"). Meta subsequently clawed-back the Documents asserting attorney-client and work product privilege between March 10, 2025 and August 7, 2025. *See id.* at 3-5.

On August 18, 2025, the District filed the instant Motion requesting that the Court enter an order: (i) confirming that the Documents are not privileged; and (ii) requiring Meta to produce the Documents to the District. *See generally* Mot. Meta filed its Opposition to the District's Motion on September 2, 2025. On September 3, 2025, the Parties appeared before the Court for their Remote Status Hearing, at which, the Court informed the Parties that it would conduct an *in camera* review of the Documents prior to entering an order. On September 8, 2025 and September 11, 2025, the District filed its Reply and Supplemental Authority, to which, Meta filed a Sur-Reply on September 17, 2025. The Court has conducted an *in camera* review of the Documents. Accordingly, the District's Motion is ripe for adjudication.

## II.    LEGAL STANDARD

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications…and privileged communications are traditionally deemed worthy of maximum legal protection." *In re Public Defender Serv.*, 831 A.2d 890, 900 (D.C. 2003) (citations and quotation marks omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Wender v. United Servs Auto. Asso*, 434 A.2d 1372, 1373 (D.C. 1981) (internal citation omitted). The existence of the attorney-client privilege encourages clients to make such unguarded and ill-advised suggestions to their lawyers. *In re Public Defender Serv.*, 831 A.2d at 901. The lawyer is then obliged, in the interests of justice and the client's own long-term best interests, to

urge the client, as forcefully and emphatically as necessary, to abandon illegal conduct or plans. *See id.* (citing D.C. R. Prof'l Conduct § 3.3 (b)). Indeed, "[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *Id.* (quoting *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198, 201-02 (7th Cir. 1983) (attributed to Elihu Root)).

But the privilege should be narrowly construed to protect only the purposes which it serves. *Wender*, 434 A.2d at 1373-74. "Thus the privilege applies only in the following circumstances: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Jones v. United States*, 828 A.2d 169, 175 (D.C. 2003) (citation omitted). Moreover, the party asserting the attorney-client privilege has the burden of proving that communications are protected by that privilege. *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. 1998).

### III. DISCUSSION

The District's Motion is granted. The District argues that it is entitled to an order confirming that Meta has not established that the Documents are privileged and requiring Meta to produce the Documents because: (i) Meta failed to sufficiently log the Documents in a privilege log; (ii) Meta has waived privilege over the entire subject of whether its counsel instructs researchers to alter, hide, or delete unfavorable research; and (iii) any privilege asserted over communications in the Documents is mooted because of the crime-fraud exception. Mot. at 1-2. The Court will address each of the District's arguments in turn.

### A. **Meta's Insufficient Privilege Log**

The District first argues that Meta failed to sufficiently log the Documents in a privilege log and, therefore, lost its right to assert any privilege over the Documents. Mot. at 8. The Court rejects the District's privilege log argument.

The District correctly asserts that Meta "bears the burden of asserting the privilege over the documents it withholds or has clawed back." Mot. at 7 (citing D.C. Super. Ct. Civ. R. 26(b)(5)(B)). Indeed, Meta's privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable [the District] to assess the claim." D.C. Super. Ct. Civ. R. 26(b)(5)(B).

The Court has conducted an *in camera* review of the Documents. Further, the Parties appear to agree that, despite the insufficiency of Meta's privilege log, the Documents generally contain privileged communications. *See* Mot. at 1 ("The documents are communications between internal Meta researchers that show Meta's counsel advised company researchers…"); *id.* at 2 ("Based on the District's recollection, the documents reflect Meta's counsel directing internal researchers…"); *id.* at 4 ("According to the District's recollection, Documents 1 and 2 contain communications between Meta researchers…recounting guidance from Meta's outside counsel…."); *see generally* Opp'n. Accordingly, because the Court has conducted an *in camera* review of the Documents and the Parties agree that the Documents generally contain privileged communications, the Court rejects the District's argument that for the purposes of this Motion,[1]

---

[1] The Court is, nevertheless, perplexed by Meta's contention that the entry of a privilege log protocol in a separate, albeit related, multidistrict litigation (the "MDL Privilege Log Protocol") generally vitiates Meta's Rule 26 obligations in this matter. *See generally* Opp'n. at 4-6. Indeed, despite Meta's insinuations to the contrary, the Court notes that Meta concedes that "the District has previously indicated its belief that the MDL Privilege Log Protocol does not apply to this action…". *Id.* at 7 n.4.

Meta's failure to sufficiently log the Documents in a privilege log eliminates any privilege asserted over the Documents. The Court will, therefore, assume *arguendo* that the Documents are generally privileged. *See Jones*, 828 A.2d at 175. As such, at issue is whether the District successfully challenges Meta's claw back of the Documents pursuant to any waiver of or exception to said privilege.

### B. Waiver

The District argues that even if the Court concludes that the communications contained in the Documents are privileged, Meta, nevertheless, waived its privilege by making public statements about the general topics discussed in the Documents and by permitting its researchers to provide deposition testimony contradicting their communications in the Documents. Mot. at 14-15. For its part, Meta contends that its public statements and deposition testimony from its researchers do not constitute subject-matter waiver because: (i) its public statements were "business statement[s]", "clearly not made in litigation", and "did not refer to or disclose legal advice"; and (ii) "none of Meta's statements identified by the District—either to the public or in depositions—refer to any of the redacted statements in the [Documents]." Opp'n. at 12. The Court agrees with Meta.

The attorney-client privilege is not absolute. *Adams v. Franklin*, 924 A.2d 993, 999 (D.C. 2007). Indeed, "the attorney-client privilege protects only communications from a client to an attorney that are, at the time they are communicated, intended to be confidential." *Id.* Further, "[i]n certain circumstances, where application of the attorney-client privilege would not serve the purpose for which it is intended, courts have deemed the privilege waived." *Wender*, 434 A.2d at 1374. "An important consideration in assessing the issue of waiver is fairness." *Id.* (citation omitted). "The privilege which attaches to a confidential communication between attorney and

client is waived when the substance of that communication is related to a nonprivileged party." *Bundy v. United States*, 422 A.2d 765, 767 n.4 (D.C. 1980). When a party authorizes disclosure of otherwise privileged materials, the privilege must be treated as waived. *See Flynn Co. v. LaVay*, 431 A.2d 543, 551 (D.C. 1981). "Once a party has waived the attorney-client privilege, the other party should receive access to the remaining relevant withheld materials." *Id.*

Subject-matter waiver may occur when a party "reveals part of a privileged communication in order to gain an advantage in litigation." *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 257 (D.D.C. 2004) (citation omitted). This "'implied waiver' or 'subject matter waiver' rule arises out of the concern that a party will selectively disclose documents to obtain a tactical advantage." *Id.* Thus "[s]ubject matter waiver prevents a party from selectively disclosing materials to confuse and mislead an adverse party." *The Navajo Nation v. Peabody Holding Co.*, 255 F.R.D. 37, 47 (D.D.C. 2009) (citing *Bowles*, 224 F.R.D. at 257). "The doctrine of subject matter waiver [also] dictates that once a party waives privilege over a document, an adverse party may discover all documents and communications arising out of the same transaction." *Id.*

The District first argues that Meta waived its privilege over the communications in the Documents because "Meta's then-President of Global Affairs in an October 2021 interview specifically denied that Meta 'commission[s] research and then deliberately brush[es] it under the carpet, because we don't like the implications of that research[.]'" Mot. at 14 (citation omitted). According to the District, Meta cannot invoke privilege to hide contrary evidence in the Documents after permitting its executives, including its former President of Global Affairs, to make such public statements. *See id.* The District, however, does not allege that Meta selectively disclosed any of its public statements to gain an advantage in this litigation, or in any other. *See Bowles*, 224 F.R.D. at 257. Nor does the District persuasively allege that Meta disclosed protected

6

communications in any of its public statements such that would constitute waiver of its privilege. *See Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 9 (D.D.C. 2021) (delineating between "general conclusions" and "protected communication[s]" in determining that public statements about the latter waive privilege, while public statements about the former do not). At most, the District insinuates that Meta and its executives made such public statements to stoke the court of public opinion. *See generally* Mot. Thus, because the District does not allege that Meta's public statements were made to gain an advantage in litigation, the Court rejects the District's argument that Meta waived its privilege over the Documents by making public statements contrary to the communications contained in the Documents. *See Bowles*, 224 F.R.D. at 257.

Moreover, the District argues that Meta waived its privilege by permitting the same researchers who appeared in the Documents to provide deposition testimony contradicting their communications in the Documents. Mot. at 14-15. The District contends that in so doing, Meta invoked its privilege "as a sword as well as a shield" by clawing back the Documents that would dispute the deposition testimony of Meta's researchers. *Id.* at 15. Meta, however, contends that its researchers "were asked general questions by the District in depositions about attorney involvement in research at the company. The [researchers'] answers to these general questions—while specifically declining to disclose the contents of any communications from attorneys—do not waive the privilege of these communications." Opp'n. at 13. Accordingly, Meta argues that it could not have waived its privilege over the communications in the Documents because it "has not put any specific communications by attorneys at issue in this litigation." *Id.*

The District does not allege that Meta's researchers referenced in their deposition testimony any specific legal advice offered by Meta's counsel. *See generally* Mot. "Waiver does not occur merely because a party's disclosure covers the 'same topic' on which it sought legal

7

advice." *See Vasquez*, 302 F. Supp 3d at 8 (quoting *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697 (4th Cir. 2020) (internal quotations omitted)). Indeed, absent disclosure of a specific protected communication with counsel, the privilege is not waived. *Id.* Thus, because the District does not allege that the deposition testimony of Meta's researchers identified any specific protected communications with Meta's counsel, the Court concludes that Meta did not waive its privilege over the Documents by allowing its researchers to provide deposition testimony allegedly contradicting their communications in the Documents. As such, the Court rejects the District's waiver arguments.

### C. The Crime-Fraud Exception

Finally, the District contends that the Documents are not shielded by the attorney-client privilege due to the crime-fraud exception, given that probable cause exists to believe that Meta engaged in a crime, fraud, and/or misconduct by acting on advice of its counsel to "block[] research and instruct[] researchers to alter research to stymie law enforcement investigations." Mot. at 9. Meta argues in response that the crime-fraud exception does not apply to the Documents because "the District has failed entirely to establish 'probable cause' that 'the attorney-client communications in question [in the Documents] were in furtherance of an ongoing or future crime or fraud.'" Opp'n. at 11 (quoting *In re Public Defender Serv.*, 831 A.2d at 904). The Court agrees with the District.

"By encouraging clients to be open with their attorneys, the privilege of confidentiality for attorney-client communications is intended to enhance the ability of lawyers to dissuade their clients from committing frauds." *In re Public Defender Serv.*, 831 A.2d at 901. Indeed, "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law[; h]e must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15 (1933).

Thus, "[t]he justification for the privilege evaporates when the attorney-client communication works to further a fraud instead of to prevent one." *Id.* The crime-fraud exception to the attorney-client privilege, therefore, "assures that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citations and quotation marks omitted).

To invoke the crime-fraud exception, a party must show probable cause that (i) "the client consulted a lawyer for the purpose of obtaining assistance to engage in a crime or fraud" and (ii) "the lawyer's advice or other services were misused." *In re Public Defender Serv.*, 831 A.2d at 910. Indeed, to fall within the crime-fraud exception, the communication must "further a crime, fraud or other misconduct." *United States v. White*, 887 F.2d 267, 271 (D.C. 1989). The label of the "crime-fraud" exception may be misleading because the exception applies to any crime, fraud, or "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982); *see also Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 228 (E.D. Va. 2004) (persuasive, if not controlling: "[M]any courts have applied the exception to situations falling well outside the definitions of crime or fraud.") (internal citation omitted)).

Notably, Meta has been engaged in a related, albeit separate, multidistrict litigation since at least October 6, 2022. *See* Opp'n. at Ex. A (citing MDL Privilege Log Protocol for *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1377 (N.D. Cal. 2022)). The Documents are dated between November 12, 2022 and July 7, 2023. *Id.* at Exs. A-1, A-2, A-4, A-7. The Court, therefore, notes that Meta's counsel provided the advice so

referenced in the Documents while Meta's conduct—*vis a vis* the mental health of teen users of its platforms—was the subject of a related multidistrict litigation.

Meta does not challenge the veracity of the communications contained in the Documents. *See generally* Opp'n.; Sur-Reply. Documents 1 and 2 contain communications between Meta researchers relaying advice from Meta's counsel that researchers should remove portions of research showing Meta's knowledge of teen users' developmental vulnerability because the research could be used by government enforcers investigating Meta. Mot. at Exs. A-1, A-2. Document 3 contains communications between Meta researchers about efforts of Meta's counsel to block or redesign research about teen mental health harms due to litigation risks in lawsuits against Meta. *Id.* at Ex. A-4. Finally, Document 4 contains communications between Meta researchers recounting legal advice and attorney work product related to a presentation about teens' exposure to harmful content on Meta's platforms that the researchers had planned to provide to Meta's executives. *Id.* at Ex. A-7. The Court notes that Meta's counsel explicitly advised Meta researchers to "remove," "block," "button[] up," "limit," and "update" their research. *Id.* at Exs. A-1, A-2, A-4, A-7. Meta's counsel offered such legal advice to specifically limit Meta's potential liability, while Meta was already the subject of a related multidistrict litigation. *Id.*

The communications in the Documents speak for themselves. Following the initiation of the related multidistrict litigation, Meta's counsel informed Meta's researchers to amend their research to limit Meta's potential liability. *See* Mot. at Exs. A-1, A-2, A-4, A-7. Far from "dissuad[ing]…[Meta]… from committing frauds," *In re Public Defender Serv.*, 831 A.2d at 901, Meta's counsel instead offered legal advice potentially clouding Meta's conduct and liability—*vis a vis* the mental health of teen users of its platforms. *See* Mot at Exs. A-1, A-2, A-4, A-7. By any interpretation, the communications in the Documents would, "warrant a reasonable and prudent

10

person in the belief that the attorney-client communications in question were in furtherance of an ongoing or future crime[,] [] fraud[, or misconduct]," *i.e.*, obfuscating the adjudication of Meta's liability in the related multidistrict litigation. *See In re Public Defender Serv.*, 831 A.2d at 904. The Court will not permit Meta to proactively invoke its privilege to claw back communications in the Documents that are "fundamentally inconsistent with the basic premises of the adversary system." *Id.* Thus, the Court finds that given the totality of the facts and circumstances, the communications in the Documents establish sufficient probable cause[2] to show that Meta sought and heeded the advice of its counsel to obfuscate its potential liability during the related multidistrict litigation, or in other words, to engage in a crime, fraud, or any "other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *Id.* Accordingly, the Court concludes that application of the crime-fraud exception to the communications in the Documents is warranted. As such, the District's Motion is **GRANTED** and Meta is prohibited from invoking its privilege to claw back the Documents from the District.

Accordingly, it is this 23rd day of October, 2025, hereby,

**ORDERED** that the District's Opposed Motion for an Order Finding No Privilege Over Clawed-Back Documents and for *In Camera* Review is **GRANTED**; and it is further

**ORDERED** that Meta is prohibited from invoking its privilege to claw back the following documents from the District: (i) METADCAG-008-01392318; (ii) METADCAG-008-01082201; (iii) METADCAG-010-00353309; and (iv) METADCAG-022-00471540 (collectively, the "Documents"); and it is further

---

[2] The Court concludes only that the District has established probable cause that Meta acted upon the advice of its counsel to engage in a crime, fraud, or misconduct. Whether Meta, in fact, acted upon the advice of its counsel to engage in a crime, fraud, or misconduct is not a question before the Court. *See Davis v. United States*, 781 A.2d 729, 734-35 (D.C. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.")); *see also In re Public Defender Serv.*, 831 A.2d at 904 (adopting probable cause standard for establishing the crime-fraud exception).

11

**ORDERED** that Meta must produce the Documents to the District within 7 days of the entry of this Order, on or before October 30, 2025.

**IT IS SO ORDERED**.

**Judge Yvonne Williams**

Date: October 23, 2025

Copies to:

Demi A. Moore
Jimmy R. Rock
Kevin Vermillion
*Counsel for the District*

John DeBoy
Lindsey Barnhart
Isaac D. Chaput
Amber M. Charles
David Haller
Gregory Halperin
Timothy C. Hester
Michael X. Imbroscio
Phyllis A. Jones
Christian J. Pistilli
Paul W. Schmidt
David N. Sneed
*Counsel for Meta*