United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Case No. 22-md-03047-YGR   (PHK)<br><br>**ORDER RESOLVING DISPUTE RE: THE ADDITION OF SARAH WYNN-WILLIAMS AND JASON SATTIZAHN TO PLAINTIFFS' PRELIMINARY WITNESS LISTS**<br><br>Re: Dkt. 2315 |

## <u>INTRODUCTION</u>

This MDL has been referred to the undersigned for all discovery purposes.  *See* Dkt. 426. Presently before the Court is a joint letter brief regarding a dispute between Plaintiffs and Meta concerning the addition of two former Meta employees, Sarah Wynn-Williams and Jason Sattizahn, to Plaintiffs' preliminary witness lists.  [Dkt. 2315].  The Parties filed Statements of Recent Decision in connection with this dispute as well.  [Dkt. 2332; Dkt. 2345].  The Court finds the dispute suitable for resolution without oral argument.  *See* Civil L.R. 7-1(b).

## <u>LEGAL STANDARD</u>

The Court has broad discretion and authority to manage discovery.  *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad

United States District Court
Northern District of California

1  discretion to tailor discovery narrowly and to dictate the sequence of discovery").  For example,

2  the Court may limit the scope of any discovery method if it determines that "the discovery sought

3  is unreasonably cumulative or duplicative, or can be obtained from some other source that is more

4  convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

5      In this MDL, the Court has repeatedly stated the relevant legal standards.  Rule 26(b)(1)

6  delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain

7  discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

8  proportional to the needs of the case."  Information need not be admissible to be discoverable.  *Id.*

9  Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or

10  that reasonably could lead to other matter that could bear on, any issue that is or may be in the

11  case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer*

12  *Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer*

13  *Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal.

14  Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader

15  than relevancy for purposes of trial.") (alteration omitted).

16      While the scope of relevance is broad, discovery is not unlimited.  *ATS Prods., Inc. v.*

17  *Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes

18  of discovery, is defined broadly, although it is not without ultimate and necessary boundaries.").

19  Information, even if relevant, must be "proportional to the needs of the case" to fall within the

20  scope of permissible discovery. Fed. R. Civ. P. 26(b)(1).  The 2015 amendments to Rule 26(b)(1)

21  emphasize the need to impose reasonable limits on discovery through increased reliance on the

22  commonsense concept of proportionality: "The objective is to guard against redundant or

23  disproportionate discovery by giving the court authority to reduce the amount of discovery that

24  may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality

25  requirement] is intended to encourage judges to be more aggressive in identifying and

26  discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015

27  amendment.  In evaluating the proportionality of a discovery request, the Court considers "the

28  importance of the issues at stake in the action, the amount in controversy, the parties' relative

United States District Court
Northern District of California

1  access to the information, the parties' resources, the importance of the discovery in resolving the

2  issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

3  Fed. R. Civ. P. 26(b)(1).

4       The party seeking discovery bears the burden of establishing that its request satisfies the

5  relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*,

6  285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the

7  discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons

8  why the request at issue is objectionable and may not rely on boilerplate, conclusory, or

9  speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

10 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to

11 carry a heavy burden of showing why discovery was denied.").

12                                    **DISCUSSION**

13      Meta argues that Plaintiffs have improperly listed former Meta employees, Ms. Wynn-

14 Williams and Mr. Sattizahn, on Plaintiffs' preliminary trial witness lists, exchanged on September

15 24, 2025. [Dkt. 2315 at 11]. Meta argues that both individuals should be stricken from Plaintiffs'

16 preliminary trial witness lists, because Plaintiffs failed to depose them within the fact discovery

17 period or even out-of-time with leave of the Court, despite ample opportunity to do so. *Id.* Meta

18 argues that the potential prejudice at issue is "real," in that "Meta may be limited in its ability to

19 pursue any further documentary or other possible evidence to contradict testimony from these two

20 individuals." *Id.*

21      Plaintiffs, in their portion of the joint letter brief, oppose Meta's request to strike Ms.

22 Wynn-Williams and Mr. Sattizahn from their preliminary trial witness lists. *Id.* at 12-14. Both

23 individuals are former Meta employees who have either spoken publicly or written accounts of

24 their time at Meta in ways which are allegedly critical of Meta. The Court addresses each

25 individual in turn.

26  **I.      Jason Sattizahn**

27      Meta argues that Mr. Sattizahn's knowledge is of no relevance to this action because he

28 was employed to work on virtual reality (VR) products while at Meta. *Id.* at 12. Meta argues that

3

VR products are not at issue in this MDL, and that adding Mr. Sattizahn to the trial witness lists unfairly opens up a completely new area of alleged liability for a category of products which have never before been the subject of discovery in this case.  *Id.*

Plaintiffs argues that, during his employment with Meta, Mr. Sattizahn worked on "an intimate collaboration with the Instagram Youth team" relating to the collection of "accurate age data" across products.  *Id.* at 13.  They argue that age verification is an issue directly at issue in this MDL, and thus, Mr. Sattizahn's work (and presumably his proposed testimony) is not limited to VR products.  *Id.*

Plaintiffs further argue that they were unaware of Mr. Sattizahn's identity or his relevance to this case until September 8, 2025, when Mr. Sattizahn allegedly came forward as a whistleblower against Meta and testified before the United States Senate Judiciary Committee, Subcommittee on Privacy, Technology and Law.  *Id.* at 12.  Plaintiffs argue that Mr. Sattizahn's inclusion in their preliminary trial witness lists is justified because Mr. Sattizahn's testimony before the Senate concerned two "extremely important" topics—first, the age verification work he did in collaboration with the Instagram Youth Team discussed above; and second, that Meta engaged in a pattern and practice of evidence spoliation relating to evidence on research into user safety and children's mental health.  *Id.* at 12-13.

Plaintiffs make clear that they are not seeking to depose Mr. Sattizahn, they are not seeking his custodial file, and they are not seeking "any other discovery about him from Defendants."  *Id.* at 13.  Plaintiffs argue that any prejudice to Meta is "easily curable," stressing that they have offered to facilitate Meta's taking of Mr. Sattizahn's deposition.  *Id.*  Plaintiffs note that Meta has access to Mr. Sattizahn's documents from the time period of his employment at Meta and that Meta is at liberty to search and review those documents to prepare.  *Id.*

In response to Meta's argument that it is too late for Plaintiffs to disclose Mr. Sattizahn as a trial witness, Plaintiffs point out that, when Meta identified a Meta employee on Meta's own trial witness list who had never been deposed, had never been disclosed under Rule 26, and was not a document custodian, Plaintiffs did not move to strike that witness from Meta's trial witness list.  *Id.* at 15.  Plaintiffs and Meta reached agreement for the production of this Meta employee's

1    custodial file and for the taking of his deposition.  *Id.*  Plaintiffs argue that the same procedure

2    should be used for Mr. Sattizahn, as opposed to striking him from the trial witness lists.  *Id.*

3           As an initial matter, the Court finds that the two subjects of Mr. Sattizahn's knowledge

4    identified by Plaintiffs are within the broad scope of relevance for purposes of discovery.  The

5    Court is not persuaded by Meta's characterization that Mr. Sattizahn's knowledge is strictly

6    limited to VR products.  To be clear, the Court expresses no views or findings on whether any of

7    Mr. Sattizahn's knowledge or testimony would or would not be relevant or even admissible for

8    purposes of trial.

9           Further, the Court notes that, while the Parties disputed whether Mr. Sattizahn's

10   knowledge would be relevant for purposes of discovery, neither Party here has argued that taking

11   any discovery from Mr. Sattizahn would fall outside the scope of proportionality for purposes of

12   discovery.  Thus, the Court finds that the Parties have, by their silence on the issue, conceded that

13   any deposition of Mr. Sattizahn would be proportional to the needs of the case.

14          Without citing Rule 37(c) in its briefing, Meta's argument seeking to strike Mr. Sattizahn

15   falls directly under the provisions of that discovery rule: "If a party fails to provide information or

16   identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information

17   or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

18   substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  As the Ninth Circuit has

19   recognized, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1): The information

20   may be introduced if the parties' failure to disclose the required information is substantially

21   justified or harmless."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th

22   Cir. 2001).  Here, as the party proponent for the late-disclosed witness, Plaintiffs have the burden

23   of proof as to harmlessness and substantial justification.  *Id.* at 1106-07 ("Implicit in Rule 37(c)(1)

24   is that the burden is on the party facing sanctions to prove harmlessness.").  Further, there is no

25   requirement for this Court to make a finding of bad faith or willfulness to exclude evidence or a

26   witness such as Mr. Sattizahn under Rule 37(c)(1).  *Hoffman v. Constr. Protective Servs., Inc.*, 541

27   F.3d 1175, 1180 (9th Cir. 2008).  Finally, the Ninth Circuit has noted that "although we review

28   every discovery sanction for an abuse of discretion, we give particularly wide latitude to the

district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106. In exercising the wide latitude of its discretion here, the Court recognizes that "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure.'" *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment).

As to the issue of whether the late disclosure of Mr. Sattizahn is substantially justified, the Court finds that the timing of Mr. Sattizahn's apparently voluntary decision to come forward publicly was not the fault of Plaintiffs. There is nothing presented to indicate that Plaintiffs knew of Mr. Sattizahn prior to the close of fact discovery but nevertheless hid his identity until only recently, unlike the cases cited by Meta. *Cf. Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. CV F 10-0148 LJO JLT, 2011 WL 3348056, at *8 (E.D. Cal. Aug. 2, 2011) (striking declarations submitted in support of summary judgment motion from witnesses identified without explanation or justification one day prior to the close of fact discovery); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D. 339, 344 (S.D. Cal. 2010) (striking thirty-eight witnesses disclosed on the eve of trial where the majority were employees of the party disclosing them prior to the discovery cutoff). This is not a situation where Plaintiffs knew of and could have interviewed Mr. Sattizahn earlier and simply failed to do so. *Cf. Bookhamer v. Sunbeam Prods., Inc.*, No. C-09-6027 EMC (DMR), 2012 WL 5269677, at *5 (N.D. Cal. Oct. 23, 2012) (striking late-disclosed witnesses where proponent party "had long known of and had access to both men and simply failed to ask them the relevant questions in previous interviews"). The fact that Mr. Sattizahn testified before the Senate and identified himself publicly as a potential witness after the close of fact discovery is, to some extent, inconvenient. But the chronology of Plaintiffs' identifying Mr. Sattizahn after he publicly identified himself demonstrates that the late disclosure is substantially justified.

As to the second issue under Rule 37(c)(1), the fact that Meta was deprived of the ability to pursue its own investigation and discovery into Mr. Sattizahn during the fact discovery period imposes some level of prejudice on Meta. However, contrary to Meta's assertions, the cure to whatever level of harm or prejudice flows from the late identification of Mr. Sattizahn is not to

6

United States District Court
Northern District of California

strike him from Plaintiffs' trial witness lists. As Plaintiffs note, there are months remaining before the first bellwether trials in this MDL. And, as Plaintiffs argue, the Parties reached agreement on taking out-of-time discovery of a late-disclosed trial witness on Meta's trial witness list (instead of arguing a motion to strike that witness). Further, the Court notes that Meta itself stated to Judge Gonzalez Rogers that Meta would want to take further discovery regarding Mr. Sattizahn in the event that Mr. Sattizahn was not stricken from Plaintiffs' witness lists. *See* Dkt. 2312 at 4 ("PISD Plaintiffs listed two former Meta employee witnesses on their preliminary witness lists who were not previously deposed in any capacity in the MDL: Sarah Wynn Williams and Jason Sattizahn. The State AGs also listed Jason Sattizahn. . . . Meta reserves its right to seek depositions of these witnesses and further documents if they are not stricken.").

This is not the first time a witness is disclosed late in a case, nor is it the first time a party sought to strike such a late-disclosed witness from a trial witness list. When examining whether late disclosure is harmless under Rule 37(c)(1), courts look to whether any alleged harm can be cured by allowing for deposition or interview of the late-disclosed witness—as recognized by one of the very cases cited by Meta. *See Faulk v. Gen. Elec. Co.*, No. CV 23-05132-MWF (MAAx), 2025 WL 2020010, at *3-5 (C.D. Cal. July 3, 2025) (denying motions to strike multiple witnesses where these late-disclosed individuals either had been or could be interviewed, deposed, or subject of informal discovery). As with here, courts have found that allowing for a deposition of a late-disclosed witness can cure the prejudice suffered by the opposing party (rather than striking the witness entirely). *See, e.g., David v. Caterpillar*, 324 F.3d 851, 856-57 (7th Cir. 2003) (affirming district court denial of motion to strike witness where, among other factors, the opposing party interviewed the witness prior to trial); *Johnson v. Statewide Investigative Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at *13 (N.D. Ill. Mar. 4, 2021) ("[T]he Court declines to impose the 'extreme and harsh' sanction of exclusion. . . . The prejudice to Plaintiff can be easily remedied by affording Plaintiff the time necessary to depose the newly disclosed witnesses."). Courts have found that, where the party belatedly disclosing a witness does not object to the opposing party taking the deposition of that witness, the curative effects of reopening discovery to allow for a deposition ameliorates the alleged prejudice and thus renders the late disclosure harmless for

purposes of Rule 37(c)(1). *See, e.g., Bradley v. Rhema-Northwest Operating, LLC*, No. 14-cv-13364, 2015 WL 5996403, at *4 (E.D. Mich. Oct. 15, 2015) ("Defendant filed its initial witness list on time in accordance with the Scheduling Order and diligently filed a supplemental witness list upon the close of discovery, which was over five months before the scheduled trial date. Instead of seeking leave to conduct depositions outside of the discovery deadline, Plaintiff chose to file the present Motion. As Defendant points out, prejudice is lacking where Defendant has no objection to Plaintiff conducting the deposition of either witness and Plaintiff had ample time and opportunity to conduct those depositions prior to trial."). Further, while a finding of bad faith is not required to trigger Rule 37(c)(1)'s sanction as discussed above, a finding of a lack of bad faith has been found relevant to a finding that the late disclosure is harmless. *See Cummings v. Dart*, No. 20 C 3753, 2022 WL 461987, at *3 (N.D. Ill. Feb. 15, 2022) ("[T]he Court finds no evidence of bad faith. The proper resolution and exercise of discretion here is to permit Defendants to depose [late-disclosed witness] Halfpap, if they so desire.").

Accordingly, the Court concludes that the late disclosure of Mr. Sattizahn by Plaintiffs is both substantially justified and harmless in light of the Court's conclusion that Meta be granted leave to take Mr. Sattizahn's deposition. Meta's motion to strike Mr. Sattizahn from Plaintiffs' preliminary trial witness lists is **DENIED WITHOUT PREJUDICE**. The motion is denied without prejudice in recognition of the possibility that Mr. Sattizahn might refuse to appear for deposition (as is the situation with Ms. Wynn-Williams, discussed below), or in recognition of the (presumably less likely) possibility that Plaintiffs might seek to avoid their commitment to reasonably and in good faith facilitate the taking of Mr. Sattizahn's deposition.

## II.    Sarah Wynn-Williams

The situation with regard to Ms. Wynn-Williams is more straightforward. There is no question that all Parties have been aware of Ms. Wynn-Williams since prior to the fact discovery cutoff. As the Parties are well aware, in resolving two previous discovery disputes, the undersigned twice granted Plaintiffs' request for leave to take Ms. Wynn-Williams' deposition out-of-time. *See* Dkts. 1781, 1927. The Court granted such leave if Ms. Wynn-Williams agreed to appear at an agreeable location for her deposition because it was represented to the Court that

United States District Court
Northern District of California

1   Ms. Wynn-Williams resides outside the United States and is outside the subpoena power of the

2   federal courts.  [Dkt. 1781 at 12 n.8].  Plaintiffs never sought to pursue her deposition using the

3   Hague Convention or any form of international discovery procedures, due to the delay such

4   procedures require.  *Id.*  Thus, the practical way for Ms. Wynn-Williams' deposition to go forward

5   would have been if she agreed to sit voluntarily.

6          However, Plaintiffs represent now that they have not been able to obtain Ms. Wynn-

7   Williams' voluntary agreement to sit for that deposition despite apparently attempting to negotiate

8   such a deposition since the date of the Court's Orders granting leave cited above.  Plaintiffs argue

9   that Meta sued Ms. Wynn-Williams in an arbitration, in which Meta apparently seeks monetary

10  damages for her public comments about Meta.  [Dkt. 2315 at 14].  Plaintiffs argue that Ms. Wynn-

11  Williams is alleged to be on the verge of bankruptcy due to Meta's efforts and that she has

12  allegedly been silenced by an order stemming from the pending arbitration.  *Id.*

13         Nevertheless, Plaintiffs insist that "circumstances may change," and they argue that there is

14  no good reason to permanently foreclose Ms. Wynn-Williams' ability to testify at trial.  While Ms.

15  Wynn-Williams has apparently expressed through her counsel that she is unwilling to sit for a

16  voluntary deposition, Plaintiffs oppose striking her from their trial witness lists in the apparent

17  hope that she changes her mind.  *Id.* at 15.  According to Plaintiffs, if Ms. Wynn-Williams

18  willingly provides deposition testimony at some point in the future, Plaintiffs should be permitted

19  to offer her as a trial witness.  *Id.*

20         Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a)

21  or (e), the party is not allowed to use that information . . . at a trial, unless the failure was

22  substantially justified or is harmless."  Unlike the situation with Mr. Sattizahn—where the issue

23  was the failure to "identify a witness" under Rule 37(c)(1) as discussed above—here, the issue is

24  the failure to provide information in the form of Ms. Wynn-Williams' sworn deposition testimony

25  (despite the Court's granting leave for that deposition to go forward if Ms. Wynn-Williams

26  appeared voluntarily).  As discussed above, the failure to provide information by a timely

27  supplementation requires striking that information unless the failure was substantially justified or

28  harmless.  Fed. R. Civ. P. 37(c)(1).

United States District Court
Northern District of California

1    While the failure to provide Ms. Wynn-Williams' testimony may arguably not be

2    Plaintiffs' fault (in the sense that Ms. Wynn-Williams is the cause of the failure), the fact that Ms.

3    Wynn-Williams refused to appear at deposition is at best an explanation, not a "substantial

4    justification" for the failure.  In other words, her refusal to appear for deposition voluntarily does

5    not substantively justify the failure to obtain the testimony.

6    Further, the inability to depose Ms. Wynn-Williams is plainly harmful.  As discussed

7    above at length with regard to Mr. Sattizahn, the ability to depose a late-disclosed witness may, in

8    appropriate circumstances, cure alleged prejudice and render the late disclosure harmless.  But

9    here, there has been no apparent ability to depose Ms. Wynn-Williams, and thus, no ability to cure

10    any alleged harm or prejudice to Meta.

11    As noted above, the situation here is not whether Plaintiffs failed to timely identify Ms.

12    Wynn-Williams as a potential witness in the case—Meta has known about Plaintiffs' desire for

13    her to testify since before the fact discovery cutoff date.  *See* Dkt. 1781 at 12 (discovery dispute

14    with regard to Ms. Wynn-Williams raised March 12, 2025).  Under Rule 26(e), a party need only

15    serve a supplement to a Rule 26(a) initial disclosure or discovery response "if the additional or

16    corrective information has not otherwise been made known to the other parties during the

17    discovery process or in writing[.]"  Fed. R. Civ. P. 26(e)(1)(A).  Here, the identification of Ms.

18    Wynn-Williams as a witness was made known to Meta during the discovery process and in

19    writing.  There is, therefore, no basis under Rule 37 to strike Ms. Wynn-Williams as an

20    unidentified witness.  Accordingly, the Court **DENIES** Meta's motion to strike Ms. Wynn-

21    Williams from Plaintiffs' trial witness lists

22    However, as noted, Rule 37 explicitly applies not just to "identification of witness" but

23    also to "information" which was not provided in a supplement to a disclosure or discovery

24    response.  As discussed, any information Ms. Wynn-Williams might offer at trial has not been

25    provided to Meta yet and may never be provided.  Accordingly, on the record presented to the

26    Court, Plaintiffs may not use any information Ms. Wynn-Williams would provide at trial under

27    Rule 37(c)(1), because the failure to provide that information has neither been substantially

28    justified nor shown to be harmless.  Accordingly, in the exercise of the Court's wide latitude of

1    discretion under Rule 37 and in light of the legal standards discussed above, the Court **ORDERS**

2    under Rule 37(c)(1) that Plaintiffs may not use Ms. Wynn-Williams's testimony at trial.  This

3    **ORDER** is **WITHOUT PREJUDICE** to Plaintiffs filing a further motion seeking leave to use

4    Ms. Wynn-Williams's testimony at trial if and when she is deposed (if ever) and if Plaintiffs can

5    demonstrate that the other factors under Rule 37(c) are satisfied at the appropriate time.

6                                                              <u>**CONCLUSION**</u>

7           For all the reasons discussed herein, the Court **DENIES WITHOUT PREJUDICE**

8    Meta's motion to strike Mr. Sattizahn from Plaintiffs' preliminary trial witness lists.  The Court

9    further **DENIES** Meta's motion to strike Ms. Wynn-Williams from Plaintiffs' preliminary trial

10   witness lists.  But, as noted, the Court **ORDERS WITHOUT PREJUDICE** that Plaintiffs may

11   not use Ms. Wynn-Williams's testimony at trial, pursuant to Rule 37(c)(1).

12          Meta is **GRANTED** leave to take Mr. Sattizahn's deposition and **GRANTED** leave to

13   serve a deposition subpoena on Mr. Sattizahn, if Meta so chooses.  If (as it appears) Meta intends

14   to take Mr. Sattizahn's deposition, Meta **SHALL** inform Plaintiffs and Mr. Sattizahn of that

15   intention (and serve any deposition subpoena) by <u>**November 7, 2025**</u>.  Plaintiffs are **ORDERED**

16   to use reasonable, good faith efforts to facilitate the scheduling and logistics for taking any such

17   deposition of Mr. Sattizahn.  The Parties (including Mr. Sattizahn) are **ORDERED** to coordinate

18   and collaborate reasonably on the scheduling and logistics for any such deposition.  That

19   deposition, if it proceeds, **SHALL** be taken by <u>**December 11, 2025**</u>.  Nothing in this Order

20   prohibits the Parties (including Mr. Sattizahn) from modifying any of the deadlines set herein by

21   agreement or stipulation.

22          Plaintiffs are further **ORDERED** to email a copy of this Order on counsel for Mr.

23   Sattizahn (if he is represented by counsel) and to Mr. Sattizahn himself immediately.  If Mr.

24   Sattizahn is represented by counsel, such counsel is **ORDERED** to enter appearance in this MDL

25   so that they may receive electronic notice of any further relevant filings via the Court's ECF

26

27

28

United States District Court
Northern District of California

system.

This **RESOLVES** Dkt. 2315.

**IT IS SO ORDERED.**

Dated:  October 31, 2025

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California