Ronald E. Johnson, Jr. (*pro hac vice*)
Sarah N. Emery (*pro hac vice*)
**HENDY JOHNSON VAUGHN**
2380 Grandview Drive
Ft. Mitchell, KY 41017
Tel: 859-578-4444
rjohnson@justicestartshere.com
semery@justicestartshere.com

*Attorneys for Plaintiffs Breathitt
County Board of Education*

[Additional counsel listed on signature pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION,** | **MDL No. 3047**<br><br>Case No. 4:23-cv-1804-YGR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ No. 1)** |
| **THIS DOCUMENT RELATES TO:**<br><br>Breathitt County School District, By and Through the Breathitt County Board of Education v. Meta Platforms Inc., et al.<br><br>Case No.: 4:23-CV-1804 | Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: January 26, 2026<br>Time: 8:00 AM<br>Place: Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 1

    A.    Defendants' Conduct Has Caused Unprecedented Harm to Breathitt. ................................ 1

    B.    Breathitt Struggles to Address these Widespread Injuries Caused by Defendants with its Limited Resources ................................................................................................................ 3

    C.    Breathitt Needs Additional Resources to Combat the Continuing Harms Caused by Defendants' Conduct ........................................................................................................ 5

    D.    Defendants Mischaracterize Breathitt's Limited and Responsible Use of Social Media ..... 5

III.  ARGUMENT ...................................................................................................... 6

    A.    Defendants' Conduct Harmed BCSD. ................................................................. 6

    B.    Defendants' Conduct Has Forced Breathitt to Spend and Divert Resources. ..................... 9

    C.    The Evidence Shows Breathitt and Its Staff Would Have Acted Differently If Warned ... 11

IV.   CONCLUSION ................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Adler v. Elk Glenn, LLC*,
  986 F. Supp. 2d 851 (E.D. Ky. 2013) ........................................................ 11

*Bailey v. N. Am. Refractories Co.*,
  95 S.W.3d 868 (Ky. App. 2001) ................................................................ 6

*Brundige v. Sherwin Williams Co.*,
  551 S.W.2d 268 (Ky. Ct. App. 1977 ........................................................ 10

*Campbell v. Grand Trunk W. R.R. Co.*,
  238 F.3d 772, 775 (6th Cir. 2001); .......................................................... 15

*Curry v. Bennett*,
  301 S.W.3d 502 (Ky. App. 2009) .............................................................. 10

*Curry v. Bennett*,
  301 S.W.3d 502, 506 (Ky. App. 2009) ..................................................... 10

*Fluke Corp. v. LeMaster*,
  306 S.W.3d 55, 60 (Ky. 2010) .................................................................. 15

*Fuller v Idaho Dep't of Corr.*,
  865 F.3d 1154 (9th Cir. 2017) .................................................................... 9

*Gassaway Const. Co. v. Gentry*,
  264 S.W.2d 658 (Ky. App. 1954) .............................................................. 12

*Gonzalez v. Johnson*,
   581 S.W.3d 529, 534 (Ky. 2019) ............................................................... 7

*Hatcher v. Cnty. of Alameda*,
  2011 WL 1225790, at *3 (N.D. Cal. Mar.31, 2011) ................................. 12

*Holland v. United Servs. Auto Ass'n*,
  707 S.W.3d 541, 556 (Ky. App. 2025) ................................................... 7, 9

*Holley v. Gilead Scis., Inc.*,
  379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) .............................................. 11

*In re: GM LLC Ignition Switch Litig.*,
  339 F. Supp. 3d 262 (S.D. N.Y. 2018 ....................................................... 12

*James v. Meow Media, Inc.*,
  300 F.3d 683, 690 (6th Cir. 2002). ........................................................... 13

iii

*Louisville Trust Co. v. Johns-Manville Prods. Corp.*,
   580 S.W.2d 497, 501 (Ky. 1979)................................................................................. 15

*Moreno v. Ross Island Sand & Gravel Co.*,
   2015 WL 5604443, at *5 (E.D. Cal. Sept. 23, 2015) .............................................. 12

*Reidinger v. Trans World Airlines, Inc.*,
   463 F.2d 1017, 1021 (6th Cir. 1972). ........................................................................ 6

*Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*,
   226 F. Supp. 3d 828 (W.D. Ky. 2016) ...................................................................... 10

*Snawder v. Cohen*,
   804 F. Supp. 910 (W.D. KY 1992)............................................................................ 14

*Tolan v. Cotton*,
   572 U.S. 650, 656 (2014) ............................................................................................ 6

*Wiseman v. Alliant Hosps., Inc.*,
   37 S.W.3d 709, 712 (Ky. 2001).................................................................................. 15

**Treatises**

Ky. C.R. 8.03 ...................................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **I.    INTRODUCTION**

2      Breathitt County School District ("Breathitt" or "BCSD") is a district of five schools serving

3  one of the poorest communities in rural, Appalachian Kentucky. With limited staff and funding,

4  BCSD must stretch every resource to meet student needs and challenges. Breathitt's harsh realities

5  include generational poverty, flooding, and COVID-19. They also include Defendants' conduct.[1]

6      Contrary to Defendants' assertion otherwise, under Kentucky law, BCSD's pre-existing

7  vulnerabilities do not absolve Defendants of responsibility for the widespread, significant harm

8  they have caused to Breathitt and its students. Defendants' efforts to target and addict vulnerable

9  school-aged children to their platforms have resulted in Breathitt students suffering attention

10  dysregulation, sleep disruption, emotional distress, and peer conflict; have foreseeably disrupted

11  and harmed BCSD's learning environment and school functioning; and have caused the district to

12  expend and divert resources to address these harms. Ex.[2] 1 ¶ 63. Defendants' negligent conduct and

13  creation and perpetuation of the youth mental health crisis have stretched BCSD's already limited

14  staff and resources to their breaking point. This is exactly the kind of harm and unreasonable

15  interference with the public rights to health, safety, and education that gives rise to liability under

16  Kentucky negligence and public nuisance law.

17      Additionally, Defendants' statute of limitations argument is procedurally improper, and

18  Defendants offer no evidence showing when Breathitt knew or should have known that its injuries

19  were caused by Defendants' wrongful conduct. This omission is fatal to their argument.

20  **II.    FACTUAL BACKGROUND**

21      **A.    Defendants' Conduct Has Caused Unprecedented Harm to Breathitt.**

22      As experts like Dr. Sharon Hoover will testify, Defendant's social media platforms have

23  caused extensive harm to school districts, including BCSD, by increasing distraction, diminishing

24  focus, heightening anxiety and depression, and eroding in-person social skills in students, in

25  addition to disrupting school operations, harming the school environment and causing BCSD to

26  expend and divert resources. Ex. 2 ¶¶ 3-4; Ex. 1 ¶ 6. BCSD Superintendent Phillip Watts testified

27
28
---
[1] Breathitt incorporates by reference the entirety of Plaintiffs' Omnibus Brief in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Omni. Opp."), filed concurrently herewith.
[2] All exhibits are attached to the Declaration of Sarah Emery filed concurrently herewith.

that social media addiction has become a daily, pervasive reality for Breathitt: "As a school system, we're just seeing more and more. It's every day. It drives some of the decisions that I … make…. It's just something that we've not had to always deal with and … it's a reality." Ex. 3 at 25:25–26:8. The problem reaches even the youngest students. Sebastian Elementary School ("SES") Principal Jeremy Hall testified that "nearly every fifth and sixth grader student who walks into our schools is dealing with an issue related to social media." Ex. 4 at 19:4–9. (This, despite Defendants insisting that users under the age of 13 are not allowed on their platforms. *See* Pls.' Omni. Opp. at §§ III.A.2.a.5.j, III.A.2.b.5.b, III.A.2.c.5.a, IIIA.2.d.5.d).

BCSD principals and counselors report a "growing problem of addictive, compulsive, and problematic social media use." Ex. 5 ¶ 8. Principal Hall testified that students are "just scrolling … being like almost what I would call addicted to it…. They spend way too much time on these platforms." Ex. 6 at 70:20–71:2. Breathitt High School ("BHS") Principal Daphne Noble testified, "the kids are addicted to the social media, and they want to be a part of what was going on there. They wanted to get their likes up." Ex. 7 at 74:15–18. In 2021, a Kentucky survey asked Breathitt students how often they checked social media. The responses of BCSD students confirm compulsive use: 19.2% of 6th graders, 35.6% of 8th graders, 29.7% of 10th graders, and 23.7% of 12th graders report checking social media every couple of minutes, and another 13.7%, 15.1%, 14.3%, and 27.1%, respectively, report checking it about every 10–15 minutes. Ex. 8 at -1537. The evidence shows that Defendants' platforms drive compulsive use by Breathitt students and fuel disruption, distress, and distraction in BCSD schools.

Social media disrupts Breathitt's schools every day. Ex. 6 at 69:11–20 (Use of social media disrupts SES on a daily basis.); Ex. 9 at 42:5–8 (BHS guidance counselors "deal with social media daily from students. It's … one of the largest issues that they bring to my office."). Teachers and counselors report "distracted students during class, increased student anxiety and stress," and negative impacts to students' "social interactions and skills." Ex. 10, ¶ 47. Students scroll through social media during class instead of engaging in instruction. *E.g.*, Ex. 11 at 40:4–8 (Teachers say BHS students are "scrolling on social media" during class.); Ex. 4 at 45:17–20 (SES students are "on, like, YouTube on their devices … when they're not supposed to be…."); Ex. 6 at 56:4–13; Ex.

2

10 ¶ 50. Superintendent Phillip Watts confirmed that "most of the problems that the teachers talk about that they're dealing with [from phones] stem from social media." Ex. 3 at 71:23–72:5. Parents echo these concerns: 86% of BHS parents identified social media as a social or emotional issue interfering with learning. Ex. 12 at -7977. The crisis is so widespread that BCSD lacks the staff to record every incident of social media disruption. Ex. 13 at 33:1–17; Ex. 1 ¶ 14.

BCSD is on the front lines of this crisis, providing the mental and behavioral services its students need as a result of Defendants' conduct. Students are experiencing "anxiety, depression, exhaustion, and social withdrawal linked to social media exposure." Ex. 10 ¶¶ 48, 47, 50; *see also* Ex. 5 ¶ 9 ("I have also observed an alarming rise in student anxiety and depression which I believe is tied to social media."). Defendants' platforms have also eroded students' ability to focus. *E.g.*, Ex. 3 at 63:23 – 64:4 (Kids "seem to have a hard time putting [devices] down to focus."); Ex. 10 ¶ 50 (Students "are watching reels non-stop and it makes it so hard for teachers to introduce new concepts and keep their attention."). While BCSD staff have identified 200–220 students with mental health issues tied to social media, this number captures only a fraction of the problem. *E.g.*, Ex. 14 at 104:1 - 5; Ex. 1 ¶ 14 (School level data "only scratches the surface of what is actually happening with respect to student mental health….").

"Social media has also exacerbated [problems like] violence, bullying, and … negative impacts on students' emotional wellbeing." Ex. 10 ¶ 47. Students who come to BHS guidance counselor Kera Howard will first "turn their phone around and say, look at this. And it's always – it's normally a social media platform." Ex. 14 at 105:19–23. "The ongoing, real-time nature of social media use and the students' increasing dependency, if not outright addiction to it, has added a layer of complexity to every aspect of [counseling] work." Ex. 5 ¶ 19. Defendants' conduct–-not isolated incidents involving third party conduct or content–-is the main cause of this widespread, ongoing harm to BCSD.

**B.    Breathitt Struggles to Address these Widespread Injuries Caused by Defendants with its Limited Resources.**

Breathitt spends and redirects its already limited resources as it struggles to address the injuries caused by Defendants. *See* Ex. 10 ¶ 4 (Social media has required BCSD "to expend and

3

1    redirect already limited resources."). Breathitt schools have had policies prohibiting cellphone use

2    during class since 2015. Ex. 15 at -9547–48. However, these policies have not succeeded in

3    preventing students from using Defendants' platforms during class. BHS and SES recently revised

4    their policies in a further effort to decrease student use of social media during class time. Ex. 16 ¶¶

5    7–8 (BHS developed a new policy for the 2023–2024 school year.); Ex. 17 ¶ 8 (SES developed a

6    new policy for the 2024–2025 school year.). For instance, as part of the newly revised policy, BHS

7    now requires students to store cell phones in caddies and over the door pouches during instructional

8    time. Ex. 7 at 58:12–15 (BHS purchased containers for cell phone storage during class.); Ex. 16 ¶

9    7. Superintendent Phillip Watts testified that BCSD "probably would not have bought those cell

10   phone caddies … if it was not for social media." Ex. 18 at 16:9–14.

11       Breathitt blocks Facebook, Instagram, Snapchat, and TikTok from devices issued by BCSD

12   or connected to BCSD Wi-Fi through its web filter. Ex. 19 ¶ 7. BCSD also uses Google settings to

13   block access to YouTube for grades PK–1 and restrict use for grades 2–12. *Id.* ¶ 8. In an attempt to

14   prevent students from bypassing these controls, BCSD blocks numerous VPNs. *Id.* ¶ 9. BCSD also

15   uses Hapara software that allows teachers to monitor school-issued devices and disconnect "kids

16   from … websites like Facebook or other social media websites during class, to keep them on task."

17   Ex. 20 at 148:18–21; Ex. 14 at 128:11–22.

18       Breathitt also works with students and parents to "raise awareness about the risks of social

19   media." Ex. 10 ¶ 32; Ex. 21 ¶ 7. Breathitt hosts an annual Cyber Safe Week, paying experts to

20   speak to students about the dangers of online activity and social media use. Ex. 3 at 46:23–47:14.

21   Students are also required to take digital citizenship lessons which provide information about taking

22   breaks from social media. Ex. 14 at 132:25–133:1. BHS has also introduced restorative groups that

23   meet multiple times each week to help students resolve social media issues. Ex. 5 ¶ 19.

24       While each of these efforts are necessary due to Defendants' platforms, they come at a

25   significant cost. Implementing these programs and policies "ha[s] often come at the expense of

26   other critical responsibilities, including direct instruction and broader mental health supports." Ex.

27   10 ¶ 85. Teachers spend valuable class time monitoring student use of social media. *Id.* ¶¶ 49, 58.

28   Because technology staff devote so much time to managing social media problems, BCSD has more

4

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ NO. 1)
4:22-md-03047-YGR

technology staff than it otherwise would. Ex. 19 ¶ 12.

### C.    Breathitt Needs Additional Resources to Combat the Continuing Harms Caused by Defendants' Conduct.

Even with new policies and interventions, Defendants' platforms continue to disrupt learning. "[W]e still battle the fact that students are distracted, and that … the teachers say … kids are bringing in an extra phone. The kids are finding … a way around what we did." Ex. 11 at 30:7–17. Superintendent Phillip Watts acknowledged that BCSD lacks the capacity to fully police social media use: "[W]hat resources would we use to police this? And … how could we ever equip our staff to be able to teach along with policing this and dealing with this because it's something that all teachers deal with every day." Ex. 3 at 66:15–24. Despite their best efforts, Breathitt's resources remain "insufficient to address the complex impacts of social media on students' mental health, learning, and the school environment." Ex. 10 ¶ 7. The shortfall reflects the sheer "magnitude of the social media crisis." *Id.* ¶ 53. BCSD cannot afford to hire the additional guidance counselors and teaching aides it needs. E.g., Ex. 17 ¶ 15; Ex. 16 ¶ 15; Ex. 5 ¶ 20; Ex. 21 ¶ 15.

To prevent and mitigate ongoing and future harms, Breathitt will need more resources and staff to develop and enforce social media policies, expand mental health supports, improve digital and mental health literacy, add life-skills and restorative programming, implement anti-cyberbullying initiatives, and strengthen family engagement. Ex. 10 ¶¶ 5–9.

### D.    Defendants Mischaracterize Breathitt's Limited and Responsible Use of Social Media.

As discussed *supra*, Defendants' assertion that BCSD permits student access to social media at school is inaccurate and unsupported by the record. ECF No. 2288 ("Mot.") at 2. BCSD's own use of social media is limited, purposeful, and responsible. BCSD uses it primarily to share essential information with parents and the community—an expectation in modern school communication, due in part to Defendants' years-long campaign to embed their products in school communities. Ex. 3 at 23:19–22, 33:6–12; Pls.' Omni. Opp. at §§ III.A.2.a.3, b.3, c.3, d.3. The harms impacting Breathitt and its students stem from Defendants' platforms—their addictive design, harmful features and relentless engagement algorithms–as well as Defendants' failure to warn about them.

1   Breathitt's careful and restricted use of social media to communicate with parents or to manage

2   school operations is irrelevant and, as Dr. Sharon Hoover confirms, not a contributing cause of the

3   harms at issue. Ex. 1 ¶¶ 75, 84–85. If ceasing its limited social media use could end these harms,

4   Breathitt would do so. Ex. 9 at 24:22–25; Ex. 22 at 9:24–10:4; Ex. 3 at 33:6–12. At most, Breathitt's

5   use of social media presents a disputed issue of material fact that should be decided by the jury. It

6   is not grounds for summary judgment. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[C]ourts may

7   not resolve genuine disputes of fact in favor of the party seeking summary judgment.").

8   ## III.    ARGUMENT

9        Defendants' arguments in favor of summary judgment – including their statute of

10   limitations defense – all boil down to disputes of material fact. They are not a proper basis for

11   granting summary judgment. *Tolan*, 572 U.S. at 656.

12   ### A.    Defendants' Conduct Harmed BCSD.

13        Defendants' argument that "Breathitt lacks *evidence* that any Defendant's actionable

14   conduct caused it injury" fails on both the law and the facts. Mot. at 12. As a preliminary matter,

15   under Kentucky law, "the existence of legal cause is a question of fact for the jury. It only becomes

16   a question of law for the Court where the facts are undisputed and are susceptible of but one

17   inference." *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 872 (Ky. App. 2001). It "is the rare

18   negligence case that can be resolved by summary judgment." *Reidinger v. Trans World Airlines,*

19   *Inc.*, 463 F.2d 1017, 1021 (6th Cir. 1972). Given the ample evidence that BCSD's injuries were

20   caused by Defendants' wrongful conduct, this is not such a rare case.

21        Kentucky tort law allows a plaintiff to recover where multiple concurrent causes contribute

22   to their injuries. Since Kentucky's adoption of the substantial factor test to determine legal

23   causation, "a defendant's conduct 'need not be the sole cause or even the primary cause' of a

24   plaintiff's injury but must only be 'a material element.'" *Holland v. United Servs. Auto Ass'n*, 707

25   S.W.3d 541, 556 (Ky. App. 2025) (quoting 57 Am. Jur. 2d Negligence § 443 (2022). Thus, "a jury

26   need only find that a defendant's actions were a substantial factor in bringing about the harm."

27   *Gonzalez v. Johnson*, 581 S.W.3d 529, 534 (Ky. 2019); *see* Pls.' Omni Opp. § III.B.

28        As discussed in Plaintiffs' omnibus brief, school-aged children overwhelmingly use

6

Defendants' platforms. Pls.' Omni Opp. § II.A.2.a.2, b.2, c.2, d.2. Breathitt students are no exception. As discussed above, BCSD students' use of Defendants' platforms is pervasive, problematic, and extremely disruptive. In addition to fact witness testimony, Dr. Sharon Hoover will testify that Defendants' wrongful conduct was a "significant and substantial contributing factor" in causing BCSD's injuries:

> Social media platforms, by design, encourage compulsive checking, emotional dysregulation, and disrupted sleep patterns, all of which interfere with students' ability to engage in sustained learning and maintain peer and adult relationships. These effects are not just theoretical; they have been documented in national data and described by Breathitt staff during interviews as contributing to increased peer conflict and emotional volatility; classroom distractions and behavioral incidents stemming from social media use; and difficulty sustaining attention, particularly in digital-rich environments.

Ex. 1 ¶¶ 54, 97. In fact, Defendants knew through their own research that the design and use of their platforms was causing significant mental and physical health problems for school-aged children in school districts across the country. *See generally* Pls.' Omni. Opp. § III.A.2. It was entirely foreseeable that Defendants' failure to disclose what they knew, and their active targeting of schools and school-aged children to increase their profits, would harm BCSD. *See* Pls.' Omni.Opp. § II.A.1.b. These facts present genuine issues of material fact as to causation, precluding summary judgment.

While Defendants argue that poverty, flooding, and other social challenges are the cause of BCSD's injuries, these issues have always existed for school districts and merely create disputed issues of fact on causation. They do not absolve Defendants of liability. As set out above, BCSD is experiencing harm to the school environment and extensive school and classroom disruption due to students' compulsive and problematic use of Defendants' platforms. Ex. 16 ¶ 11 (There is "a growing problem of compulsive and problematic use of social media among [BHS] students."); Ex. 17 ¶ 11 (The same problem exists at SES.); Ex. 10 ¶ 10 ("social media's design and use among students contributes to tangible and widespread challenges to Breathitt…."); Ex. 1 ¶ 54; Ex. 11 at 10:11–15 (BHS students are "using social media, scrolling, while the teacher is teaching…."); Ex. 3 at 72:12-16 ("Well they can't put it down. They keep constantly scrolling."); Ex. 18 at 13:22–25, 23:2–9 (The focus is on "keeping [students] off their social media and then also keeping them off

7

videos, YouTube videos…"). The problem is not poverty or general internet browsing or texting. The problem is students are constantly scrolling on and unable to disengage from Defendants' platforms—a pattern directly tied to Defendants' design and marketing decisions to promote continuous engagement, as well as their failure to warn. BCSD witnesses confirm that "most of the problems that the teachers talk about … stem from social media." Ex. 3 at 71:23–72:5.

These harms reach even into BCSD's elementary schools, where students under 13 also compulsively use Defendants' platforms. SES Principal Jeremy Hall testified that many 5th and 6th graders exhibit compulsive social media use. Ex. 17 ¶ 11; Ex. 6 at 70:20-71:2. Data from the 2021 KIP Survey confirms this pattern: nearly 20% of 6th graders report checking social media every few minutes, and another 13.7% report checking every 10–15 minutes. Ex. 8 at -1537.

Defendants argue that BCSD's injuries must be fully independent of content to pass muster under Section 230. But the law does not so require. Pls. Omni. Opp. § III.B.2. While content plays a role, it is students' compulsive use that amplifies anxiety, depression, exhaustion, and social withdrawal. Ex. 10 ¶ 48 ("Students experience anxiety, depression, exhaustion, and social withdrawal linked to social media exposure."), ¶ 50 ("Students often arrive at school fatigued after staying up late online, leading to disengagement and decreased academic performance."); Ex. 5 ¶¶ 9, 8,10–11 ("I have also observed an alarming rise in student anxiety and depression which I believe is tied to social media.")

Nor must Breathitt quantify individual student usage or parse the effects of each Defendant's platform. Instead, BCSD need only show that Defendants' conduct is a substantial factor in causing BCSD's injuries. *See* Pls.' Omni. Opp. § III.B.1; *Holland v. United Servs. Auto Ass'n*, 707 S.W.3d 541, 556 (Ky. App. 2025). The evidence shows BCSD's students compulsively use all of Defendants' platforms. Ex. 10 ¶ 50 ("They are watching reels [a Facebook and Instagram feature] non-stop and it makes it so hard for teachers to introduce new concepts and keep their attention."); Ex. 20 at 148:18–21 (Teachers use Hapara to keep students off Facebook.); Ex. 5 ¶ 13 ("Instagram pages targeting students at Breathitt High School and within Breathitt County Schools" are creating "fear, anxiety, embarrassment, and, in some cases, long-term damage to self-esteem and peer relationships."); Ex. 6 at 59:10–21 ("What we find is the kids are using Snap probably the

8

1  most …" including to bully children in 5th and 6th grade.); Ex. 7 at 74:14–19 ("I think they just

2  wanted to be a part of the whole TikTok…. [T]he kids are addicted to the social media, and they

3  want to be a part of what was going on there."); Ex. 18 at 23:2-9 (It's difficult to keep "them off

4  videos, YouTube videos…."), 26:16–20 (the "biggest challenge that teachers across all grade levels

5  [have] … is keeping kids off YouTube….").  The apportionment of liability among the Defendants

6  is plainly a question for the jury, and not appropriate as a basis for granting a motion for summary

7  judgment. Pls.' Omni. Opp. § III.B.1.

8      Given that the record is replete with fact and expert evidence demonstrating that

9  Defendants' conduct was a substantial factor in causing harm to BCSD, summary judgment should

10  be denied. *Fuller v Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017).

11      **B.    Defendants' Conduct Has Forced Breathitt to Spend and Divert Resources.**

12      Under Kentucky law, "[w]here it is reasonably certain that damage has resulted, mere

13  uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision

14  awarding damages." *Curry v. Bennett*, 301 S.W.3d 502, 506 (Ky. App. 2009). "Accordingly, while

15  damages may not be determined by sheer speculation or guesswork, 'it will be enough if the

16  evidence shows the extent of damages as a matter of just and reasonable inference, although the

17  result may only be an approximate one.'" *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F.

18  Supp. 3d 828, 846 (W.D. Ky. 2016) (quoting *Brundige v. Sherwin Williams Co.*, 551 S.W.2d 268,

19  270 (Ky. Ct. App. 1977).

20      Here, the evidence shows that BCSD has suffered legally cognizable damages including

21  expenditures for hard costs, diversion of resources, and the need to implement a 15-year strategic

22  plan to prevent and mitigate the harm. Breathitt has incurred expenses directly caused by students'

23  compulsive social media use. *See supra* § II.B; Ex. 18 at 16:11–14 (BCSD would not have

24  purchased cell phone caddies "if it was for not social media."); Ex. 19 ¶ 12 (BCSD employs more

25  technology staff because of social media use). Superintendent Phillip Watts identified the share of

26  educational initiatives and programs, such as Hapara, attributable to social media. Ex. 21 ¶ 9. These

27  hard costs were independently reviewed and confirmed. Ex. 23 ¶¶ 1, 14, 20–24.

28      Breathitt has also incurred a substantial diversion of resources due to Defendants' conduct.

9

1    This lost-time is recoverable under Kentucky law. *See* Pls.' Omni. Opp. § III.C.2 (discussing

2    Kentucky cases). Further, Dr. Klein's survey of Breathitt staff provides reliable and credible

3    evidence of staff time lost to Defendants' platforms. *See* Pls. Omni. Opp. § III.C.iii. In addition,

4    BCSD technology director, William Noble, submitted a sworn affidavit, which was used as a basis

5    for expert Dr. Bryce Ward's opinion, describing how much time technology staff spends addressing

6    issues stemming from Defendants' platforms.

7        Defendants argue in a footnote that Mr. Noble's affidavit addressing staff time should be

8    struck because he could not recall with whom he spoke when preparing his estimates. This

9    argument was insufficiently developed and therefore waived. *Holley v. Gilead Scis., Inc.*, 379 F.

10   Supp. 3d 809, 834 (N.D. Cal. 2019) ("Arguments raised only in footnotes, or only on reply, are

11   generally deemed waived and need not be considered." (cleaned up)). Moreover, during his

12   deposition, Mr. Noble testified that he based his estimates on his "conversations with [his] staff"

13   identified as Michael Strong, Tony Noble, and Aaron McIntosh, who was used "as a reference for

14   a lot of … this information…." *See* Ex. 24 at 27:22–28:10; 30:10–15; 31:12–20. Further, while Mr.

15   Noble could not recite the precise questions asked in each conversation at his deposition, that hardly

16   undermines the reliability of his estimates (which, of course, Defendants can still probe at cross-

17   examination.) *Id.* at 26:24–27:2; 28:3–5; 30:10–19.

18       Defendants' argument ignores the well-settled exception permitting experts like Dr. Ward

19   to rely on hearsay where, as here, it is of a kind that experts in a "particular field would reasonably

20   rely on." *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851, 859 (E.D. Ky. 2013) (discussing Rule 703).

21   It also ignores well established law that hearsay objections are premature at summary judgment

22   where, as here, such testimony can be converted to an admissible form at trial through witness

23   testimony. *See e.g. Moreno v. Ross Island Sand & Gravel Co*., 2015 WL 5604443, at *5 (E.D. Cal.

24   Sept. 23, 2015) (citing *Fraser*, 342 F.3d at 1036 (declining to exclude hearsay statements because

25   in alternate form the testimony could be admitted at trial)); *Hatcher v. Cnty. of Alameda*, 2011 WL

26   1225790, at *3 (N.D. Cal. Mar.31, 2011) (same).

27       Defendants argue that Kentucky law does not permit the recovery of lost time damages, but

28   its cases are readily distinguishable. Defendants rely on a two-page opinion from 1954, *Gassaway*

*Const. Co. v. Gentry*, 264 S.W.2d 658 (Ky. App. 1954). In *Gassaway*, the plaintiff, unlike BCSD, had only "sparse" evidence of lost time. *Id.* at 659. This case does not stand for the broad premise that lost-time damages are as a rule unavailable under Kentucky law. Defendants also rely on the Southern District of New York's analysis of Kentucky law in *In re: GM LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262 (S.D. N.Y. 2018). Critically, that court was analyzing whether Kentucky would allow for "lost *personal* time to be compensable." *Id.* at 309 (*emphasis* added). In fact, the *GM* Court found that Kentucky was a state "with relevant authority demonstrating that [Kentucky's] courts have traditionally treated lost time as lost income." *Id.* And the time that Breathitt's staff lost was not personal time, it was lost time from BCSD employment, which is a harm to BCSD.

Defendants try to discredit Breathitt's evidence on lost time by erecting unattainable goalposts, suggesting BCSD's estimates are invalid because they are not based documents and numerical analyses that Defendants do not identify or show to exist. In fact, Breathitt employees do not keep time logs detailing and separating time spent dealing with the far-reaching impacts of Defendants' platforms. Ex. 11 at 47:8 – 12; Ex. 4 at 40:19 – 21. Nor could they, as students' use of Defendants' platforms impacts teachers, counselors, technology staff, and administrators on a daily basis, and BCSD is already stretched thin in performing its basic functions. Unlike Defendants, BCSD is not a multibillion dollar company with unlimited resources. Further, the level of specificity requested by Defendants is not required by Kentucky law. *See* Pls.' Omni. Opp. § III.B.1.

Taken together, the evidence shows that Defendants' conduct caused concrete, compensable losses, which are sufficient to allow a jury to estimate BCSD's damages, creating genuine issues of material fact that preclude summary judgment.

## C. The Evidence Shows Breathitt and Its Staff Would Have Acted Differently If Warned.

As described in Pls. Omni. Opp. § III.A.2, Defendants were aware of the consequences of their conduct, including to students and schools. Instead of providing warnings, they failed to disclose and indeed concealed the risks associated with their platforms. Kentucky law imposes a "universal duty of care," under which "every person owes a duty to every other person to exercise

11

ordinary case in his activities to prevent foreseeable injury." *James v. Meow Media, Inc.*, 300 F.3d 683, 690 (6th Cir. 2002). This includes a duty to warn. In this case, Defendants owed such a duty to those that they reasonably knew may foreseeably be harmed by their platforms, including BCSD, its students, and their parents. It is undisputed that Defendants provided no warnings, failing to act in accordance with this duty. *See* Pls. Omni. Opp. § V.A.i.

In an attempt to sidestep the fact that no warning was given, Defendants claim there is a lack of evidence showing a warning would have changed BCSD's behavior. But that argument ignores Kentucky's heeding presumption. Under Kentucky law, BCSD is "entitled to a rebuttable presumption that [it] would have heeded a warning and acted to minimize the risk." *Snawder v. Cohen*, 804 F. Supp. 910, 911 (W.D. KY 1992). Defendants' single, irrelevant citation—Principal Daphne Noble's statement that BHS maintains a Facebook page for communication, *see* Mot. 36—does nothing to rebut the presumption that BCSD would have acted differently if warned. Under Kentucky's heeding presumption, Breathitt is entitled to the presumption that had it been warned, it would have acted to minimize the risks and damages. This could have meant implementing the revised cell phone policies and purchasing the cell phone holders, discussed *supra* at II.B, years earlier. It may have led to the above-described educational efforts being more specifically tailored to the risks that were disclosed by Defendants. This is supported by the analysis set out in Plaintiffs' omnibus brief. Pls. Omni. Opp. § III.A.1. Because the presumption remains unrebutted and the evidence supports it, genuine issues of material fact exist, precluding summary judgment.

In addition to their failure to warn BCSD directly, Defendants' failure to warn students and their parents of the known risks associated with the use of Defendants' platforms is independently actionable by Breathitt. Defendants cite no Kentucky law precluding a failure to warn claim where harm flows to a third party. They instead rely on two out-of-state cases that run contrary to Kentucky's "universal duty of care." *James*, 300 F.3d at 690. Under Kentucky law, the question is not whether BCSD was a user of Defendants' platforms, but instead, whether it was reasonably foreseeable that school districts like BCSD would have been harmed by Defendants' failure to warn students and their parents of the known risks of harm of their social media platforms. Because there is evidence that BCSD's harm was foreseeable, summary judgment is inappropriate.

**D.    Defendants Have Not Met their Burden to Establish that the Statute of Limitations Has Expired.**

As the Court noted during the October case management conference, Defendants failed to raise their statute of limitations argument as to Breathitt during the preview briefing ordered by the Court. That is grounds to strike this argument.

On the merits, Defendants have not met their burden to prove their affirmative defense: that the statute of limitations bars BCSD's claims. Defendants must establish when the limitations period began and that it has expired. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001); Ky. C.R. 8.03. They have done neither. Instead, Defendants misunderstand Kentucky's discovery rule and ignore the critical question of when BCSD knew or should have known that Defendants' conduct caused a legally cognizable injury. Because Defendants failed to make this showing, their statute-of-limitations defense is not a basis to grant summary judgment.

Kentucky applies the discovery rule in cases where a plaintiff's awareness of the harm and its causal link to wrongful conduct do not occur simultaneously. *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979); *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). Kentucky follows the Restatement's distinction: **harm** is "the existence of loss or detriment in fact of any kind," while **injury** is "the invasion of any legally protected interest." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2001). In Kentucky, awareness of harm alone is not enough to trigger the statute of limitations; only discovery of a legally cognizable injury is. *Id.*; *Louisville Trust*, 580 S.W.2d at 501 (The statute of limitations does not begin to run until the plaintiff discovers "not only that he has been injured but also that his injury may have been caused by the defendant's conduct.").

Defendants have identified nothing in the record that establishes when Breathitt knew or reasonably should have known that its students' addictive use of social media was caused by Defendants' wrongful conduct, specifically their platform designs and failure to warn. Defendants had every opportunity to discover this information from Breathitt – including when negotiating and receiving two Plaintiff Fact Sheets, issuing three sets of interrogatories, and taking eighteen depositions (twelve 30(b)(1) and six 30(b)(6)) – yet they never once asked. Nowhere in their motion

13

1  do they identify a date by which BCSD discovered or should have discovered that Defendants'

2  wrongful conduct was the basis for its claims. Their silence on that critical question underscores

3  the absence of any evidence supporting their limitations defense. The testimony and interrogatory

4  response cited by Defendants (estimating that Breathitt's social media harms began around 2016 to

5  2018) "does not demonstrate causation" or awareness at that time of Defendants' wrongful conduct,

6  it only speaks to BCSD's general awareness that "social media was having effects in the

7  classroom," as Defendants admit. Mot. at 39. The cited evidence reflects only BCSD's **present day**

8  **awareness** of harm and estimates of when that harm began, not a years' earlier awareness of a

9  legally cognizable injury or its cause. To start the limitations clock, Defendants need to demonstrate

10  when Breathitt knew that the harms it suffered were the result of wrongful conduct on the part of

11  the Defendants. They have not done so.

12  Defendants' failure to identify when BCSD discovered both its injury and Defendants' role

13  in causing it is fatal to their statute-of-limitations defense. Summary judgment must therefore be

14  denied.

15  **IV.    CONCLUSION**

16  For the foregoing reasons, Defendants' Motion should be denied.

17  Dated: November 7, 2025                    Respectfully submitted,

18                                             /s/Ronald E. Johnson, Jr.

19                                             Ronald E. Johnson, Jr.
                                               Sarah N. Emery

20                                             **HENDY JOHNSON VAUGHN**
                                               2380 Grandview Drive

21                                             Ft. Mitchell, KY 41017
                                               Tel: 859-578-4444

22                                             rjohnson@justicestartshere.com

23                                             semery@justicestartshere.com

24                                             *Attorneys for Plaintiffs Breathitt County*

25                                             *Board of Education*

26

27

28

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

MELISSA YEATES
**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District*
*Committee*
*Plaintiffs' Steering Committee*
*Leadership*

15

**<u>ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27</u>**

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED: November 7, 2025              By: /s/Ronald E. Johnson, Jr.
                                     Ronald E. Johnson, Jr.
                                     Sarah N. Emery
                                     **HENDY JOHNSON VAUGHN**
                                     2380 Grandview Drive
                                     Ft. Mitchell, KY 41017
                                     Tel: 859-578-4444
                                     rjohnson@justicestartshere.com
                                     semery@justicestartshere.com

                                     *Attorneys for Plaintiffs Breathitt*
                                     *County Board of Education*

16

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that a copy of the foregoing was served via electronic

3

mail on November 7, 2025, to Counsel for Defendants:

4

MetaNoticeofService@cov.com

5

SnapNoticeofService@mto.com

6

TikTokNoticeofService@faegredrinker.com

7

SERVICE-YOUTUBE-INRESOCIALMEDIAM@LIST.WSGR.COM

8

mdl3047coleadfirms@listserv.motleyrice.com

9

pscservicemdl3047@motleyrice.com

10

11
/s/Ronald E. Johnson, Jr.
Ronald E. Johnson, Jr.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ NO. 1)
4:22-md-03047-YGR