1    [*Submitting Counsel on Signature Page*]

2

3

4

5

6

7

8
## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

9

10   **IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION**

11

12   This Document Relates to:

13   *Charleston County School District v. Meta Platforms Inc., et al.*

14   *Case No.: 4:23-cv-04659-YGR*

15

16

Case No. 4:22-md-03047-YGR
MDL No. 3047

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (CHARLESTON) (SD MSJ No. 3)**

Judge Yvonne Gonzalez Rogers

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 1

A.    Defendants' Social Media Platforms Proximately Caused Harm to Charleston...... 1

    1.    Proximate Causation Is a Question for the Jury to Resolve......................... 1

    2.    The Existence of Other Social Media Platforms Does Not Negate Any One Defendant's Liability if a Jury Finds Its Conduct Was a Substantial Factor in Causing Harm. ...................................................................................... 5

    3.    Defendants Had a Duty to Warn Charleston, a Reasonably Foreseeable Party, About the Dangers of Their Platforms. ............................................. 6

    4.    It Was Foreseeable that Charleston Would Sustain Actionable Harm from Defendants' Failure to Warn Youth and Their Parents of the Risks Associated with the Use of Defendants' Platforms...................................... 8

B.    Charleston's Damages Are Supported by Ample Record Evidence and Are Compensable Pursuant to South Carolina Law......................................................... 9

    1.    Charleston's Past Damages Are Supported and Compensable. .................. 9

    2.    Charleston Has Produced Evidence of Compensable Costs Directly Caused by Defendants' Conduct............................................................................. 10

    3.    Lost Employee Time Is a Compensable Form of Damages Pursuant to South Carolina Law............................................................................................. 11

    4.    The Affidavits of Lisa Allison and Anita Huggins Proffered by Charleston Are Reliable and Competent Evidence. ..................................................... 12

    5.    Future Damages May Be Recovered Under South Carolina Tort Law Where There Is Reasonable Certainty that the Damages Will Occur.................... 13

III.    CONCLUSION ................................................................................. 14

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Allen v. Greenville Hotel Partners, Inc.*, 2006 WL 1817804 (D.S.C. June 30, 2006) ................... 1

4
*Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468 (S.C. 2013) ................................................ 12

5
*Ballou v. Sigma Nu Gen. Fraternity*, 352 S.E.2d 488 (S.C. Ct. App. 1986)................................ 1

6
*Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 455 S.E.2d 183 (S.C. Ct. App. 1995) ...... 11

7
*Brown v. Nat'l Oil Co.*, 105 S.E.2d 81 (S.C. 1958) ..................................................................... 9

8
*Carroll v. Isle of Palms Pest Control, Inc.*, 918 S.E.2d 532 (S.C. 2025) ..................................... 11

9
*Charleston Lumber Co. v. Miller Hous. Corp.*, 458 S.E.2d 431 (S.C. Ct. App. 1995) ................. 11

10
*Chestnut v. AVX Corp.*, 776 S.E.2d 82 (S.C. 2015)..................................................................... 12

11
*Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088 (2005) ........................................................... 8

12
*Doremus v. Atl. Coast Line R. Co.*, 130 S.E.2d 370 (S.C. 1963)................................................. 13

13
*Dorrell v. South Carolina Dept. of Transp.*,  312 S.E.2d 12 (S.C.2004) ..................................... 8

14
*Faile v. South Carolina Dept. of Juvenile Justice*, 566 S.E.2d 536 (S.C. 2002) .......................... 6

15
*Gauld v. O' Shaugnessy Realty Co.*, 548 S.E.2d 79 (Ct. App. 2008)........................................... 10

16
*Gause v. Smithers*, 742 S.E.2d 644 (S.C. 2013) ......................................................................... 1

17
*Gourdine v. Crews*, 955 A.2d 769 (Md. 2008) ........................................................................... 8

18
*Gray v. S. Facilities, Inc.*, 183 S.E.2d 438 (S.C. 1971). .............................................................. 9

19
*Hall v. Palmetto Enters. II, Inc.*, 317 S.E.2d 140 (S.C. Ct. App. 1984) ................................ 13, 14

20
*Haltiwanger v. Barr*, 186 S.E.2d 819 (S.C. 1972)..................................................................... 13

21
*Hardee v. Bio-Medical Applications of S.C., Inc.*, 636 S.E.2d 629 (2006).................................. 8

22
*Hughes v. Children's Clinic, P. A.*, 237 S.E.2d 753 (S.C. 1977) ................................................. 1

23
*Jones v. Duke Energy Corp.*, 2025 WL 2243769 (D.S.C. Aug. 6, 2025) ...................................... 6

24
*Kelly v. Brazell*, 172 S.E.2d 304 (S.C. 1970)............................................................................. 13

25
*Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730 (S.C. 1989) ..................................... 11

26
*Koester v. Carolina Rental Ctr.*, 443 S.E.2d 392 (S.C. 1994) .................................................... 2

27
*Mack v. Wal-Mart Stores, Inc.*, 2007 WL 3177000 (D.S.C. Oct. 26, 2007) 1978) ................. 8, 9

28

*Matthews v. Porter*, 124 S.E.2d 321 (S.C. 1962) ................................................................ 3

*McKnight v. S.C. Dep't of Corr.,* 684 S.E.2d 566 (S.C. Ct. App. 2009 ...................................... 2, 3

*Pearson v. Bridges*, 544 S.E.2d 617 (S.C. 2001) ................................................................ 13

*Pratt v. Amisub of S.C., Inc.*, 912 S.E.2d 268 (S.C. Ct. App. 2025) ......................................... 5

*Sapp v. Ford Motor Co.*, 687 S.E.2d 47 (S.C. 2009) ........................................................... 11

*Sherrill v. Southern Bell Tel. & Tel. Co.*, 197 S.E.2d 283 (1973). ................................................ 12

*Singleton v. Sherer*, 659 S.E.2d 196 (S.C. Ct. App. 2008) ...................................................... 2

*State v. Hutto*, 481 S.E.2d 432 (S.C. 1997) ...................................................................... 12

*State v. Slocumb*, 521 S.E.2d 507 (Ct. App. 1999) ............................................................. 12

*Stone v. Bethea*, 161 S.E.2d 171 (S.C. 1968) .................................................................... 2

*Treanor v. Charleston Harbor Marina, Inc.*, 2007 WL 2022197 (D.S.C. July 9, 2007) ................. 1

*Vaughn v. Nissan Motor Corp. in U.S.A.*, 77 F.3d 736 (4th Cir. 1996) ..................................... 3

*Whisenant v. James Island Corp.*, 281 S.E.2d 794 (S.C. 1981) .............................................. 9

*Wickersham v. Ford Motor Co.* 853 S.E.2d 329 (S.C. 2020). ................................................. 2

*Wickersham v. Ford Motor Co.*, 2022 WL 1523043 (D.S.C. May 13, 2022) ............................... 2

*Williams v. Chesterfield Lumber Co.*, 230 S.E.2d 447 (S.C. 1976) .......................................... 5

*Young v Tide Craft*, 242 S.E.2d 671 (S.C. 1978) .............................................................. 2

**Statutes**

S.C. Code Ann. § 15-38-15 (c). ................................................................................. 5

11 S.C. Jur. Damages § 5 ...................................................................................... 10

**Other Authorities**

The South Carolina Law of Torts § 2.B.3.a … ................................................................ 3

§ 9:6. Burden of proof—Damages, Trial Handbook for South Carolina Lawyers
§ 9:6 (5th ed.) … ......................................................................................... 9, 10

## I.     INTRODUCTION

Through the testimony of its personnel, the opinions of its experts, and evidence described in Plaintiffs' omnibus brief, Plaintiff Charleston County School District ("Charleston" or "CCSD") has established genuine issues of material fact as to Defendants' liability for harms caused to Charleston. Specifically, Charleston has adduced substantial evidence that Defendants' platforms target and addict school-aged youth, including the students it serves. It has further adduced evidence that this conduct caused mental health harms to Charleston's students, disruption to the learning environment, and diversion of district-wide resources away from Charleston's core mission of instruction and student development. Finally, Charleston has established genuine issues of material fact concerning the need for a district-wide strategic plan to mitigate ongoing injury.

Defendants erroneously recast South Carolina law on proximate cause as requiring that Charleston disaggregate its negligence cause of action into subsidiary claims tied to "at issue features." That misconstrues the relevant standards of proof and ignores evidence establishing disputed material facts within the jury's purview. Summary judgment should be denied.

## II.     ARGUMENT

### A.     Defendants' Social Media Platforms Proximately Caused Harm to Charleston.
#### 1.     Proximate Causation Is a Question for the Jury to Resolve.

In South Carolina, causation can only be resolved on a motion for summary judgment in "rare or exceptional cases." *Allen v. Greenville Hotel Partners, Inc.*, 2006 WL 1817804, at *6 (D.S.C. June 30, 2006) (quoting *Ballou v. Sigma Nu Gen. Fraternity*, 352 S.E.2d 488, 493 (S.C. Ct. App. 1986)). "The question of proximate cause is ordinarily a question of fact"—meaning, it is a question for the jury to answer. *Treanor v. Charleston Harbor Marina, Inc.*, 2007 WL 2022197, at *2 (D.S.C. July 9, 2007). Defendants' conduct need not be the sole, proximate cause of Charleston's injuries; "plaintiff is required only to prove that the negligence on the part of the defendant was at least one of the proximate, concurring causes of his injury." *Hughes v. Children's Clinic, P. A.*, 237 S.E.2d 753, 757 (S.C. 1977); *Gause v. Smithers*, 742 S.E.2d 644, 649 (S.C. 2013).

Defendants' argument that Charleston has "insufficient" evidence to establish Defendants' conduct as the proximate cause of Charleston's injuries ignores the extensive and compelling evidence that Defendants intentionally targeted school-aged children, despite knowing their platforms inflicted significant harms on young users. The harms suffered by Charleston— significant disruptions to school operations and the learning environment arising from heightened student anxiety, depression, and distraction—were entirely foreseeable consequences of Defendants' conduct. They were the "natural and probable consequences of the complained of act." *Young v Tide Craft*, 242 S.E.2d 671, 675 (S.C. 1978).

Under South Carolina law, foreseeability is the *sine qua non* of proximate cause. *Koester v. Carolina Rental Ctr.*, 443 S.E.2d 392, 394 (S.C. 1994); *accord* ECF. No. 430 at 49 ("PI Order") ("whether proximate cause exists hinges on whether the harm alleged is a foreseeable result of the at-issue conduct). Defendants' authority is inapposite because in those cases there were clear breaks in the chain of causation that do not exist here. In *Singleton v. Sherer,* the plaintiff placed a raccoon in his sister's home and then sued her after he was bitten. 659 S.E.2d 196, 204 (S.C. Ct. App. 2008). In *Stone v. Bethea*, a car owner left his keys in the ignition, the car was stolen, and then the thief had an accident and hit the plaintiff. 161 S.E.2d 171, 172 (S.C. 1968). In both cases, there were unforeseeable intervening acts of others—the plaintiff in *Singleton* and the thief in *Stone*—that broke the causal chain, which are not present here. *Wickersham v. Ford Motor Co.* provides even less support for Defendants' argument, given that court found that the "intervening act" was *insufficient* to prevent liability. 853 S.E.2d 329 (S.C. 2020). Indeed, the Court rejected the defendant's effort to overturn a verdict in the plaintiff's favor, "agree[ing] with plaintiff that she has provided sufficient evidence for a jury to find in her favor on the issue of foreseeability." *Wickersham v. Ford Motor Co.*, 2022 WL 1523043, at *5 (D.S.C. May 13, 2022).

Defendants' reliance on *McKnight v. S.C. Dep't of Corr.*, is also misplaced. In *McKnight*, the causal chain was broken by time: the inmate received inadequate medical care at the defendant's prison, was transferred to another facility, and died by suicide a year later. 684 S.E.2d 566, 570 (S.C. Ct. App. 2009). Here, Defendants identify no comparable lapse in time between their conduct

1    and Charleston's harm, let alone evidence sufficient to eliminate a genuine dispute over material

2    facts. Charleston has alleged and proffered evidence that Defendants' wrongful conduct is ongoing.

3        Notably, Defendants fail to connect the case law they cite on intervening cause to any

4    evidence that an intervening cause broke the causal chain in *this* case. To exculpate a negligent

5    defendant, an intervening cause "must be one which breaks the sequence or causal connection

6    between the defendant's negligence and the injury alleged," *Matthews v. Porter*, 124 S.E.2d 321,

7    325 (S.C. 1962), and it "must be unforeseeable," *McKnight*, 684 S.E.2d at 569. Defendants instead

8    cherry-pick evidence of general social challenges in the Charleston student body -- such as

9    violence, racism, and poverty –none of which sever causation as a matter of law. Defs.' Br. at 3-5

10   & Ex. 2 (insinuating districtwide conditions based on a single email from a single counselor about

11   a single middle school can be imputed to all). Even if these issues pervade the district, they are

12   neither new nor "unforeseeable" (in Charleston, or elsewhere). Defendants knew or should have

13   known—and the record demonstrates they did know (*see* Pls.' Omnibus Opp. § III.A.2)-that

14   students' compulsive use of their platforms would have especially severe effects in school

15   communities burdened by longstanding social problems. South Carolina law is clear that "if

16   [defendant] breached its objective duty of care, it must take its victim as it finds her." *Vaughn v.*

17   *Nissan Motor Corp. in U.S.A.*, 77 F.3d 736, 738 (4th Cir. 1996); *see also* The South Carolina Law

18   of Torts § 2.B.3.a (discussing application of "egg-shell or thin skull" rule in South Carolina).

19       Defendants' "intervening cause" argument collapses under the weight of the record. Their

20   reliance on speculative facts and inapposite law cannot erase the evidence showing that Defendants'

21   own conduct directly harmed Charleston's students, schools, and the district. Testimony from

22   district witnesses, including its Director of Nursing, links Defendants' platforms to serious mental

23   and physical effects such as lost sleep, heightened anxiety and depression, and body dysmorphia,

24   all consequences of the addictive features Defendants chose to employ and fail to warn about. Ex.

25   7 at 95:13–96:16, 99:19–101:2. Charleston's CFO, as Plaintiff's 30(b)(6) representative, testified

26   that Charleston has experienced "an uptick in the need for interventionists…because of the level of

27   distraction that's happening where we just weren't seeing it before." Ex. 3 at 67:17-68:2.

28

Charleston's superintendent testified that *middle school* students in the heart of affluent Old Mount Pleasant were "hooked," that parents could not get their kids off Defendants' platforms ("you know, 'Snapchat' 'He's watching YouTube all night,' et cetera."), and that this was negatively impacting student academic performance. Ex. 1 at 72:9-25; *see id.* at 56:11-57:1; Ex. 21 at 196:4-14, *id.* at 202:15-203:9; Ex. 2 at ¶ 17 ("we often hear from parents that their children are experiencing these issues because of their inability to stop engaging with social media no matter how strictly parents attempt to monitor and control usage."). One former principal described students' addictive and compulsive use as "almost like an extension of their…hand or their arm. They can't get past not sitting there looking at what's going on on social media." Ex. 4 at 166:20-167:3.

Importantly, contrary to Defendants' claim, these problems are not confined to the district's poorest zip codes. *See* Ex. 1 at 123:8-17 (superintendent testifying that Charleston's affluent schools experience social-emotional issues related to anxiety and depression, arising from a desire to "create a life on social media that things are perfect."). That evidence alone dismantles Defendants' claim that socioeconomic conditions or violence serve as intervening causes.

Defendants attempt to evade liability by attributing the harms sustained by Charleston solely to other challenges such as violence, racism and homelessness, is specious. While these issues impact some students and indeed Charleston proactively works to address them, [1] it could not have foreseen the severe disruptions to school operations, the school environment, learning and student well-being caused by Defendants' failure to warn of the risks of its deliberately addictive platforms.

Finally, Defendants' argument that Charleston lacks granular data regarding "how much time its students spend on social media, which platforms they use at any given time, how much time they spend on their phones, or what they do on their phones" is unavailing. Defs.' Br. at 5. Defendants cite no South Carolina law suggesting that proof of this nature is required to establish negligence. Nor do Defendants attempt to explain, as a practical matter, how this made-up evidentiary standard could ever be satisfied. In any event, Defendants' argument does not negate

---

[1] See for example Ex. 6 at 83:9-18 (describing department devoted to supporting students and families who are homeless).

the substantial evidence Plaintiff has proffered, *see supra*, let alone eliminate a genuine dispute of material fact. The question on summary judgment is not whether Charleston has individualized proof of use, as Defendants claim is required, but whether the evidence is sufficient to enable a jury to find causation. *Williams v. Chesterfield Lumber Co.*, 230 S.E.2d 447, 448 (S.C. 1976).

> **2.  The Existence of Other Social Media Platforms Does Not Negate Any One Defendant's Liability if a Jury Finds Its Conduct Was a Substantial Factor in Causing Harm.**

Defendants argue that causation has not been parsed sufficiently to attribute harm to specific entities or to each Defendant's actionable conduct. *See, e.g.*, Defs.' Br. at 20. This argument ignores that under South Carolina law the jury is entrusted to apportion fault among multiple defendants. *Pratt v. Amisub of S.C., Inc.*, 912 S.E.2d 268, 283 (S.C. Ct. App. 2025) (affirming submission of apportionment of liability to the jury); S.C. Code Ann. § 15-38-15 (c) (establishing role of jury in apportioning damages). As discussed in section III.B of Plaintiffs' omnibus brief, even where there are multiple contributing causes—including other social media platforms—that does not absolve any one Defendant of liability where its own conduct was a substantial factor in causing the harm.

Moreover, contrary to Defendants' assertion, Defendants' platforms are overwhelmingly the cause of the harm sustained by Charleston. Indeed, within the district, the term "social media" has become synonymous with Defendants' platforms. Charleston's Associate Superintendent Dr. Shavonna Coakley testified that Charleston has seen "a pervasive issue with incidents involving social media" and that a lot of manpower is spent on "what has occurred through the social media platforms of TikTok, Instagram, Snapchat, YouTube because students are using those platforms really more so for their social media access." Ex. 8 at 119:19-120:11. Superintendent Anita Huggins testified that during any presentation on cell phones by her staff, "9 out of 10 times, when cell phones are being discussed in schools, social media, Snapchat, YouTube, something surfaces." Ex. 1 at 52:13-21. She also testified that, "whereas the presentation may not start about the defendants' platforms per se, it – conversations from cell phones typically evolve into conversations that talk about the defendants' platforms." *Id.* at 52:22-53:1. Other examples in the record abound. *See, e.g.*, Ex. 4 at 106:6-21 (testifying that student phones show Snapchat, TikTok, Facebook, and YouTube

are often at issue); Ex. 9 at 46:19-47:22 (testifying about complaints by parents related to students' use of YouTube at school and at home on school-issued devices), *id*. at 41:23-42:20 (testifying that YouTube's Restricted Mode filter on the moderate setting failed to filter as promised), *id*. at 86:21-87:25 (testifying regarding a parent concerned that YouTube was taking their child down a "rabbit hole" only tangentially related to child's initial search); Ex. 10 at -3852-53 (email regarding a request from a parent seeking restrictions on children's YouTube access on CCSD-issued devices).

These examples also belie Defendants' claim that Charleston's problems emanate from phones in general, and not their platforms in particular. Superintendent Huggins distinguished social media-related disruptions from those related to cellphones generally, underscoring that social media uniquely triggers referral volumes "significantly higher than any other use of cell phones." *See* Ex. 1 at 54:4-58:16. In short, there is a clear record of testimonial and documentary evidence that supports a jury finding that Defendants' platforms were responsible for students' mental health challenges and major disruptions of school activity experienced in Charleston, as well as the resulting expenditure of resources to address these harms.

### 3. Defendants Had a Duty to Warn Charleston, a Reasonably Foreseeable Party, About the Dangers of Their Platforms.

As described in Plaintiffs' omnibus brief, Defendants owed a duty to warn school districts of the known risks their platforms posed. They failed to disclose, and indeed concealed these risks from the public, young users, their parents, and school districts, including Charleston. Defendants do not dispute this omission. Their argument rests entirely on the mistaken claim that they owed no duty to warn. In fact, pursuant to South Carolina law, Defendants *did* have a duty to warn those, including school districts, they reasonably should have known were at risk of harm from their platforms. *Faile v. South Carolina Dept. of Juvenile Justice*, 566 S.E.2d 536, 546 (S.C. 2002) (duty to warn foreseeable third parties likely to be injured where defendant created the dangerous condition); *Jones v. Duke Energy Corp.,* 2025 WL 2243769, at *6 (D.S.C. Aug. 6, 2025) ("Defendants had a duty to warn [plaintiffs] …because they … negligently created the risk of harm."); Pls.' Omnibus Opp. § III.A.1. Had Defendants disclosed rather than concealed the risks

their platforms created, Charleston could and would have acted sooner and more decisively to protect its students and mitigate the harms they sustained due to Defendants' platforms.

Cell phone bans do not provide a "magical fix" to the problems caused by Defendants' platforms. *See* Ex. 1 at 70:24-82:8 (testifying regarding the ways excessive and compulsive use of social media by students continued to negatively affect students despite a ban on cell phones at Moultrie Middle School). Nonetheless, available data show that such bans can have "positive impacts." Ex. 20 at 39:13-21. Beginning in March 2021, certain Charleston schools piloted bans while others implemented the use of Yondr pouches—magnetic locking pouches in which students are required to deposit their phones. Ex. 17 at -4377 (email listing schools using Yondr pouches as of November 21, 2023); Ex. 13 (Meyers Report) at Appx. C, Ex. 1at A.1 (reflecting the first payment to Yondr on March 2, 2021). Superintendent Anita Huggins testified, as a 30(b)6) representative, that  prior to the district-wide ban being implemented,  "…in schools where we saw a limited use of cell phones and other things that -- and platforms, because, inevitably, students would get on their phones and access platforms that would inevitably cause distraction -- in such schools, we saw increased performance of students, academically and behavioral [sic]." Ex. 20 at 40:25-41:1-6.

Indeed, Charleston and its stakeholders take protective measures for students when provided with the information necessary to understand the risks they face. Had Defendants been transparent with the public and disclosed the risks of harm associated with their social media platforms, Charleston would have been empowered with the information needed to overcome community resistance and enable it to adopt a district-wide cell phone ban much earlier. *See* Ex. 23. Indeed, once Defendants' own research and its implications became public, states like South Carolina moved swiftly to pass laws requiring schools to restrict or ban cell phone use during the school day. *See* Ex. 18 (S.C Act No. 273, Part IB, § 1.103 (S.C. 2024) (enacted as Act No. 273)); Ex. 19 (*EducationWeek* article). Act No. 273 requires South Carolina school districts to adopt a policy prohibiting access to personal electronic communication devices during the school day,

1    which bolstered Charleston's ability to act effectively on this issue. Disclosure and warnings by

2    Defendants would have hastened that process.

3          **4.      It Was Foreseeable that Charleston Would Sustain Actionable Harm from Defendants' Failure to Warn Youth and Their Parents of the Risks Associated with the Use of Defendants' Platforms.**

4

5          Beyond Defendants' failure to warn Charleston, their failure to warn young users and their

6    parents of the known risks associated with the use of their platforms is independently actionable.

7          Defendants cite no South Carolina authority precluding a claim by a party for failing to

8    warn a non-party. The cases they do cite are also both distinguishable (see Pls.' Omnibus Br. §

9    III.A.1.c) and contrary to South Carolina law. *See* Defs.' Br. at 43 (citing two Maryland cases,

10   *Gourdine v. Crews*, 955 A.2d 769 (Md. 2008) and *Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088

11   (2005)). South Carolina recognizes a common- law duty to exercise due care to avoid damage or

12   injury to foreseeable plaintiffs. *Mack v. Wal-Mart Stores, Inc.*, 2007 WL 3177000 (D.S.C. Oct. 26,

13   2007) (alleged facts, if proved, were sufficient to give rise to a duty to warn and exercise due care

14   to avoid injury or damage to foreseeable third- party plaintiffs) (citing *Dorrell v. South Carolina*

15   *Dept. of Transp.,* 605 S.E.2d 12, 15 (S.C. 2004)) (recognizing common law duty to exercise due

16   care to avoid damage or injury to foreseeable plaintiffs).

17         Defendants' failure to warn students and their parents of the foreseeable risks associated

18   with its platforms exposed school districts, including Charleston, to harm. In *Hardee*, the South

19   Carolina Supreme Court expressly recognized a duty to warn where such a warning would prevent

20   harm to "reasonably foreseeable third parties." 636 S.E.2d 629, 631-32 (2006). There, a medical

21   provider owed a duty to warn a patient of treatment risks that could endanger others. The same

22   principle applies here. The relevant inquiry is whether school districts like Charleston were

23   reasonably foreseeable third parties at risk of harm from Defendants' failure to warn students and

24   parents of known platform dangers. There is abundant evidence that Defendants deliberately

25   targeted students, knowing their platforms would expose them to harm. In fact, they did so knowing

26   that kids spend the majority of their day in school. Schools must then deal with and address the

27   consequences by providing mental and behavioral health services, among other things, to students.

28

Pls.' Omnibus Opp. § III.A.1; *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84–85 (S.C. 1958) (a defendant need not foresee the exact manner of injury, only that negligence would likely cause harm). At the very least, these facts create genuine issues of material fact that bar summary judgment. As in *Mack v. Walmart*, Defendants have not "met [their] burden of demonstrating that there is no possibility that the plaintiff can establish a cause of action." 2007 WL 3177000, at *4.

**B.**    **Charleston's Damages Are Supported by Ample Record Evidence and Are Compensable Pursuant to South Carolina Law.**

**1.**    **Charleston's Past Damages Are Supported and Compensable.**

Defendants set an unduly high bar for the proof required to establish Charleston's past damages – one that finds no support in South Carolina law. *See, e.g.*, Defs.' Br. at 27 (arguing that evidence of lost employee time relied upon by Charleston's experts should be rejected as "vague, anecdotal, post hoc, [and] non-specific"). Defendants rely on two South Carolina cases, *Whisenant v. James Island Corp.*, 281 S.E.2d 794 (S.C. 1981), and *Gray v. S. Facilities, Inc.*, 183 S.E.2d 438 (S.C. 1971). Neither support Defendants' argument. In fact, reading just beyond the selective quotations Defendants cherry-pick shows that South Carolina law embraces a flexible, common-sense approach to calculating damages. As *Gray* explains (with the language omitted by Defendants underlined): "<u>While proof, with mathematical certainty, of the amount of loss or damage is not required, in order for damages to be recoverable</u> the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." *Gray*, 183 S.E.2d at 444. *Whisenant* includes the same language, again ignored by Defendants. 281 S.E.2d at 796 ("proof with mathematical certainty of the amount of loss or damage is not required").

The testimony from Charleston's personnel relied on by Plaintiff's experts is based on their professional experience and personal knowledge. As *Whisenant* makes clear, such estimates may be used as the basis for calculating damages under South Carolina law regardless of whether they result in "mathematical certainty." *Id.* Proof of damages is sufficient "if a reasonable basis of computation is afforded, even though the result may be only approximate, or to adduce evidence which is the best the case is susceptible of under the circumstances, and which will permit a reasonably close estimate of the loss." § 9:6. Burden of proof—Damages, Trial Handbook for South

Carolina Lawyers § 9:6 (5th ed.) (citing *Gauld v. O' Shaugnessy Realty Co.*, 380 S.C. 548, 671 S.E.2d 79 (Ct. App. 2008)). 11 S.C. Jur. Damages § 5.

### 2. Charleston Has Produced Evidence of Compensable Costs Directly Caused by Defendants' Conduct.

Fact witness testimony, expert opinions and documentation in support thereof link Defendants' conduct to costs and expenditures incurred by Charleston. Charleston CFO Daniel Prentice testified (as a 30(b)(6) representative) that the purchase of Yondr pouches in 2021 was directly linked to Charleston's efforts to curb students' social media use. Ex. 3 at 58:1-22 (testifying to multiple reports from school praising the efficacy of Yondr pouches "in terms of students being able to disengage with social media and apply focus to the classroom" and subsequent student test score improvements). Charleston also licensed and screened the film *Screenagers*, a documentary designed to help students and their families understand the dangers of navigating "the landscape of substance abuse in a digital age." Ex. 22 at 86:1-6. Again, this cost is directly attributable to Defendants' conduct. Ex. 2 at ¶ 31.

Lisa Allison testified to Charleston's increased use of Second Step, a social-emotional learning curriculum the District began adopting in October 2016, which is taught in preschool through eighth grade. Ex. 22 at 95:1-6; Ex. 13 at Appx. C, Ex. 1 at A.5. Allison discussed the bullying kits purchased (for kindergarten through fifth grade) and lessons included (for middle school) as part of the Second Step curriculum and attributed a percentage of the associated cost to Defendants' conduct. Ex. 22 at 95:16-22; Ex. 2 at ¶ 29. Finally, Allison testified about Charleston's restorative practice programs aimed at helping students build relationships and interact positively in real life and attributed forty percent of the cost of these programs (applicable to students only) directly to dealing with issues related to social media. Ex. 11 at 200:15-202:16; Ex. 2 at ¶ 24.

None of these expenses would have been incurred but for the negligent actions and inactions of Defendants. *See generally* Ex. 13 (Meyers Report) & at ¶¶ 20-21 (itemizing hard, past damages incurred by Charleston); Ex. 12 at ¶ 6 (May 14, 2025, Affidavit of Daniel Prentice ("Prentice Aff.")) (describing chart of "actual invoiced amounts that have been fully paid to the respective vendors").

### 3.  Lost Employee Time Is a Compensable Form of Damages Pursuant to South Carolina Law.

South Carolina law recognizes lost employee time as a compensable element of damages. *Charleston Lumber Co. v. Miller Hous. Corp.*, where the Court of Appeals of South Carolina squarely stated that "[w]e find that employee time is a compensable damage." Contrary to Defendants' unsupported assertion, there is no indication that *Charleston Lumber*'s holding was limited to fraud claims. 458 S.E.2d 431, 437 (S.C. Ct. App. 1995); *see also* Pls.' Omnibus Opp. § III.C.2.

Notwithstanding Defendants previously agreement that the rule does not apply, See ECF No. 1267 at 35 n.29, Defendants' disingenuous and erroneous reading of South Carolina law continues.  Defendants cite several cases concerning the economic loss rule to argue that lost employee time is not a compensable item of damages. *See* Defs.' Br. at 24-25 (citing, *inter alia*, *Kennedy v. Columbia Lumber & Mfg. Co.*, 384 S.E.2d 730, 734 (S.C. 1989) and *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 50 (S.C. 2009)).  Indeed, the South Carolina Supreme Court recently clarified "a few things about the economic loss rule," holding that "the rule applies only in the product liability context and when the only injury is to the product itself. In such instances, the loss is economic or commercial, and the remedy is limited to the laws of contract or warranty." *Carroll v. Isle of Palms Pest Control, Inc.*, 918 S.E.2d 532, 537 (S.C. 2025), *reh'g denied* (Aug. 11, 2025) (citing *Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 455 S.E.2d 183, 188–89 (S.C. Ct. App. 1995)). The Court went on to "stress what the economic loss rule is not. It is not a doctrine that says economic damages may not be recovered in tort." *Carroll*, 918 S.E.2d at 537.

*Kennedy* and *Sapp* are entirely consistent with this holding. *See Kennedy*, 384 S.E.2d at 734 ("The 'economic loss rule' simply states that there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself."); *Sapp*, 687 S.E.2d at 49 (S.C. 2009) ("Under the rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself."). Neither case provides support for a generalized rule that economic losses (such as diverted time and resources) are not recoverable in negligence actions.

Finally, Defendants cite to *Babb v. Lee Cnty. Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013) to argue that tort liability lies only where there is physical injury or property damage. *Babb* does not support their argument. It was a certified question case concerning whether damages based on foul odors were recoverable in negligence; finding in the affirmative, the court in *Babb* found that, to prevail on a negligence claim, a plaintiff must establish duty, breach, causation and damages. *Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 481 (S.C. 2013) (citing *Sherrill v. Southern Bell Tel. & Tel. Co.*, 197 S.E.2d 283, 285 (1973)). Notably, *Babb* does not bar recovery for economic damages. *See Chestnut v. AVX Corp.*, 776 S.E.2d 82, 84 (S.C. 2015) (declining to apply *Babb* to bar a claim for "stigma damages" allegedly rendering property valueless). Charleston has presented evidence of damages, and in so doing, clearly demonstrated that there are disputed issues of material fact.

### 4.    The Affidavits of Lisa Allison and Anita Huggins Proffered by Charleston Are Reliable and Competent Evidence.

Defendants' argument that Charleston's evidence of lost time is not based on reliable or contemporaneous evidence[2] is neither factually, nor legally correct. First, the affidavits in question are based on consultations with multiple Charleston personnel, including assistant principals, principals, school psychologists and social workers. Second, it ignores the fact that they were used as a basis for the opinions of its expert Bryce Ward. *See generally* Ex. 15 (Second Amended Report of Dr. Bryce Ward Report) and Ex. 16 (Amended Expert Report of Douglas L. Leslie, Ph.D. for Charleston County School District), it being well-settled law that an expert may base an opinion on hearsay evidence so long as it is of a type reasonably relied upon by other experts in the field. *See State v. Slocumb*, 521 S.E.2d 507, 518 (S.C. Ct. App. 1999); *State v. Hutto*, 481 S.E.2d 432, 433 (S.C. 1997) To the extent Defendants argument is one of admissibility, disposition thereof is not one for summary judgement.

_____

[2] Defendants' characterization of Charleston's evidence as not "competent" confirms, rather than eliminates, the presence of a genuine factual dispute for the jury.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (CHARLESTON)
CASE NO. 4:22-MD-03047-YGR

1

2

**5.    Future Damages May Be Recovered Under South Carolina Tort Law Where There Is Reasonable Certainty that the Damages Will Occur.**

3    Defendants again mistake the relevant standard of proof when addressing Charleston's

4    claims for future damages. South Carolina case law requires that future damages be "reasonably

5    certain" to occur. *See e.g.*, *Pearson v. Bridges*, 544 S.E.2d 617 (S.C. 2001).  What must be proven

6    to a degree of reasonable certainty is that the damages *will* occur, not necessarily the amount of

7    those damages. "The fact that difficulty may be involved in determining future damages, does not

8    prevent the granting of such relief where damages with reasonable certainty and probability will

9    follow." *Doremus v. Atl. Coast Line R. Co.*, 130 S.E.2d 370, 382 (S.C. 1963) (future damages based

10    on lost earnings capacity could be submitted to jury despite lack of evidence regarding what

11    plaintiffs' uninjured earnings capacity would have been).

12    This is true, for example, where "future medical expense might conceivably be small and

13    are difficult to estimate": that situation "would not deprive the plaintiff of the right to have the jury

14    determine whether any award for future medical be made, and if so, what amount." *Kelly v. Brazell*,

15    172 S.E.2d 304, 306 (S.C. 1970). As with past damages, South Carolina law allows for flexibility

16    and permits damages based on reasonable estimates, recognizing that future damages may not be

17    provable to a "mathematical certainty." *Hall v. Palmetto Enters. II, Inc.*, 317 S.E.2d 140, 144 (S.C.

18    Ct. App. 1984). Indeed, "[q]uite often, a verdict involving future damages must be approximated."

19    *Id.* South Carolina law recognizes that, in computing future damages, "[a] wide latitude is allowed

20    the jury." *Haltiwanger v. Barr*, 186 S.E.2d 819, 821 (S.C. 1972).

21    There is little doubt that the pervasive harms caused by Defendants' platforms will continue

22    to require Charleston to incur significant costs. *See generally* Ex. 14 (Amended Expert Report of

23    Dr. Sharon A. Hoover, PhD, outlining future damages). As Dr. Hoover explains, Charleston is

24    increasingly tasked with addressing students' mental health challenges arising from social media

25    use, educating students on the risks associated with social media, and on responsible use, and

26    managing behaviors that result from social media use, such as emotional dysregulation and

27    addiction. Ex. 14 at ¶ 4. As a result of these increasing responsibilities arising from Defendants'

28

conduct, Charleston will have to "expend and redirect already limited resources." *Id*. Accordingly, it is "reasonably certain" that such damages will occur in the future, which is sufficient to submit them for determination by a jury. Dr. Hoover's plan need not determine Charleston's future damages to a mathematical certainty in order to be considered competent evidence from which a jury might determine an amount to award. *Hall*, 317 S.E.2d at 144.

## III.    <u>CONCLUSION</u>

For the reasons set forth herein, and in Plaintiffs' omnibus brief filed concurrently herewith, the Court should deny summary judgment and allow Charleston's case to proceed to trial.


Dated:  November 7, 2025

Respectfully Submitted,

/s/ Previn Warren
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
*Attorneys for Plaintiff*, *Co-Lead Counsel*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com*Co-Lead Counsel*

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

MELISSA YEATES
**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
myeates@ktmc.com

*Co-chair School District Committee*
*Plaintiffs' Steering Committee*
*Leadership*

*Co-chair School District Committee*
*Plaintiffs' Steering Committee*
*Leadership*

## **ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27**

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED: November 7, 2025

By: /s/ Previn Warren
PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com
*Attorneys for Plaintiff, Co-Lead Counsel*

1

## **FILER'S ATTESTATION**

2

I, Previn Warren, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

3

to the filing of this document has been obtained from each signatory hereto.

4

5

DATED: November 7, 2025          By: /s/ Previn Warren
                                                      PREVIN WARREN

6                                                     **MOTLEY RICE LLC**

7                                                     401 9th Street NW Suite 630
                                                      Washington DC 20004

8                                                     Telephone: 202-386-9610

9                                                     pwarren@motleyrice.com
                                                      *Attorneys for Plaintiff, Co-Lead Counsel*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (CHARLESTON)
CASE NO. 4:22-MD-03047-YGR

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   The undersigned hereby certifies that a copy of the foregoing was served via electronic mail on November 7, 2025, to Counsel for Defendants:

4

5   MetaNoticeofService@cov.com

6   SnapNoticeofService@mto.com

7   TikTokNoticeofService@faegredrinker.com

8   SERVICE-YOUTUBE-INRESOCIALMEDIAM@LIST.WSGR.COM

9   mdl3047coleadfirms@listserv.motleyrice.com

10   pscservicemdl3047@motleyrice.com

11

12                                   /s/ Previn Warren
                                     Previn Warren
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (CHARLESTON)
CASE NO. 4:22-MD-03047-YGR