[Parties and Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR (PHK) |
| This Document Relates To: | **PLAINTIFF DEKALB COUNTY SCHOOL DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (SD MSJ NO. 5)** |
| *DeKalb County School District v. Meta Platforms, Inc., et al.* | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| Case No. 4:25-cv-02310-YGR | Magistrate Judge: Hon. Peter H. Kang |
| | Date: January 26, 2026 |
| | Time: 8:00 AM |
| | Place: Courtroom 1, 4th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ...................................................................................................................... 1
    A. DeKalb Has Produced Evidence to Show That Defendants Have Created a Public Nuisance. .................................................................................................. 2
        1. Defendants' Conduct Has Substantially Contributed to Widespread Disruption of DeKalb's School Environment and Related Harms. .......... 2
        2. Defendants Disregard the Evidence, Mischaracterize the Record, and Misstate the Law on Causation, Platform Features, and Their Duty to Warn. ................................................................................................... 5
    B. DeKalb Has Presented Sufficient Evidence of Damages. .................................... 6
        1. DeKalb Can Recover for the "Lost Time" Damages It Incurred Due to Defendants' Wrongful Conduct. ............................................................... 6
        2. DeKalb's Evidence Is Sufficient to Present Lost-Time Damages to a Jury. .......................................................................................................... 7
        3. DeKalb Has Presented Sufficient Evidence of Additional Costs. ............. 9
        4. The Referenced Testimony Is Not Hearsay. ........................................... 10
    C. DeKalb's Strategic Plan Is Appropriate Under Georgia Law. ............................. 10
        1. The Plan Is Not "Derivative," and Even If It Were, That Is No Basis for Summary Judgment. .............................................................................. 11
    D. Defendants' Motion for Summary Judgment on DeKalb's Failure to Warn Claim Should Be Denied. .................................................................................. 12
III. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Atlanta Obstetrics & Gynecology Group v. Coleman*,
    398 S.E.2d 16-17 (Ga. 1990) .................................................................................................... 5

*Barrett Props., LLC v. Roberts Capitol, Inc.*,
    729 S.E.2d 621 (Ga. Ct. App. 2012) ......................................................................................... 5

*City of Richmond Hill v. Maia*,
    800 S.E.2d 573 (Ga. 2017) ....................................................................................................... 2

*Convoy Co. v. Sperry Rand Corp.*,
    672 F.2d 781 (9th Cir. 1982) ................................................................................................. 6, 7

*Dossie v. Sherwood*,
    707 S.E.2d 131 (Ga. Ct. App. 2011) ......................................................................................... 8

*Dunn Appraisal Co. v. Honeywell Info. Systems, Inc.*,
    687 F.2d 877 (6th Cir. 1982) ................................................................................................. 6, 7

*French v. Dilleshaw*,
    723 S.E.2d 64 (Ga. Ct. App. 2012) ........................................................................................... 8

*Jones v. Holland*,
    773 S.E.2d 797-798 (Ga. Ct. App. 2015) .................................................................................. 5

*Kroger Co. v. Perpall*,
    125 S.E.2d 511 (Ga. Ct. App. 1962) ..................................................................................... 6, 8

*Kuhlke Constr. Co. v. Mobley, Inc.*,
    285 S.E.2d 236 (Ga. Ct. App. 1981) ......................................................................................... 8

*MCI Comms. Servs. v. CMES, Inc.*,
    728 S.E.2d 649 (Ga. 2012) ....................................................................................................... 6

*Moccia v. Sea Ray Boats Div. of Brunswick Corp.*,
    2016 WL 4061291 (N.D. Ga. 2016) ......................................................................................... 8

*Momon v. State*,
    294 S.E.2d 482 (Ga. 1982) ..................................................................................................... 10

*Moore v. Sears, Roebuck and Co.*,
    683 F.2d 1321 (11th Cir. 1982) .............................................................................................. 10

*Pool Markets South, Inc. v. Coggins*,
    392 S.E.2d 552 (Ga. Ct. App. 1990) ......................................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

|  | Page |
|---|---|
| *Pottinger v. Cross*, 317 S.E.2d 850 (Ga. Ct. App. 1984) | 8 |
| *Sumitomo Corp. of America v. Deal*, 569 S.E.2d 608 (Ga. Ct. App. 2002) | 2 |
| *Sw. R. Co. v. Vellines*, 82 S.E. 166 (Ga. Ct. App. 1914) | 6 |
| *Whitley v. Comcast of GA.*, 2007 WL 737529 (M.D. Ga. 2007) | 8 |

**Statutes**

| | |
|---|---|
| Ga. Code Ann. § 51-12-3 | 12 |

**Court Rules**

| | |
|---|---|
| Federal Rule of Evidence 602 | 10 |

## I.   INTRODUCTION

The DeKalb County School District ("DeKalb"), established in 1873, is the 30th largest school district in the U.S. today. It is the third-largest school district in Georgia, serving more than 91,000 students across 138 schools and centers. DeKalb is the most diverse district in the state and is a Title 1 district given high levels of poverty amongst its student population.

DeKalb's students were especially vulnerable to the harms caused by Defendants' platforms—compulsive use by students and the resulting classroom distraction, emotional instability, worsening mental health crisis, and harm to the school environment. Defendants knew about these dangers but failed to warn of them. Their own internal research confirmed that school-aged users, particularly in high-need districts, were suffering the same harms as DeKalb. Rather than warn about or remove these dangers, Defendants chose to exploit them—prioritizing youth engagement and their own profit over student safety and school well-being, and causing foreseeable harm to DeKalb. Defendants seek to shift the blame to diversity and systemic challenges such as poverty, community violence, and lack of funding, but the law does not permit them to escape liability so easily. Under the "eggshell plaintiff" rule, a defendant takes the victim as found. Vulnerability magnifies harm, it does not absolve responsibility.

While every district faced pandemic-related disruption, that shared hardship does not erase Defendants' liability for the distinct and foreseeable harms their platforms imposed on already strained school systems. Their conduct foreseeably undermined learning, damaged student well-being, disrupted school operations and forced DeKalb to divert staff and resources from its educational mission. That interference—substantial, systemic, and ongoing—is exactly the kind of unreasonable disruption of public rights that gives rise to liability under public nuisance law.

## II.   ARGUMENT

Defendants' wrongful conduct breached their duty of care to DeKalb and created a substantial interference with the public rights to health, safety and education, as set out in Pls.' Omnibus Opp. § III.A.1-3. That conduct was a substantial factor in causing DeKalb's past and ongoing damages. Because genuine issues of material fact exist as to evidence of causation, damages, and Defendants' failure to warn, summary judgment is improper and should be denied in its entirety.

**A.     DeKalb Has Produced Evidence to Show That Defendants Have Created a Public Nuisance.**

As established in the Plaintiffs' Omnibus Opposition, DeKalb's claims are not impermissibly based on content and are within the scope of those permitted by the Court's prior ruling.  Pls.' Omnibus Opp. § III.B.2.b. DeKalb need only present evidence of both cause in fact and proximate cause to support its negligence claim. *City of Richmond Hill v. Maia*, 800 S.E.2d 573, 577 (Ga. 2017). For the public nuisance claim, DeKalb must only establish that Defendants are "either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." *Sumitomo Corp. of America v. Deal*, 569 S.E.2d 608, 613 (Ga. Ct. App. 2002). DeKalb has sufficiently made this showing for both negligence and nuisance.

**1.     Defendants' Conduct Has Substantially Contributed to Widespread Disruption of DeKalb's School Environment and Related Harms.**

Youth use of Defendants' platforms is pervasive, as set out in Plaintiffs' Omnibus brief. DeKalb is no exception. The record establishes that DeKalb students' use of Defendants' platforms—both on campus generally and in classrooms—is widespread, problematic, and highly disruptive.

As expert Dr. Sharon Hoover shows, Defendants' platforms have caused extensive harm to DeKalb by increasing distraction, diminishing focus, heightening anxiety and depression, and eroding in-person social skills in students. Ex. 1 at ¶¶ 3–4. Dr. Kishia Towns, Chief of Wrap Around Services and 30(b)(6) representative for DeKalb, testified that Defendants' platforms present a constant challenge to the learning environment. Ex. 2 at 191:24–192:6. DeKalb is now compelled to redirect resources originally earmarked for academic instruction and student support to managing the adverse effects of Defendants' platforms use in schools. Ex. 2 at 195:21–196:4. Dr. Towns further testified that teachers have consistently reported an increase in student phone use during class, with the overwhelming majority of that use being on Defendants' platforms. This behavior has had a demonstrably negative effect on classroom dynamics and student engagement. Ex. 2 at 181:5–182:14.

Dr. Deborah Moore-Sanders was the Deputy Superintendent at DeKalb from 2019-2023. During her tenure, she regularly met and spoke with teachers to hear about the issues they faced in the classroom. She estimated that approximately 10-20 percent of teachers' time in the classroom was spent dealing with

distractions related to Defendants' platforms. Ex. 3 at 180:2–182:3. Dr. Darnell Logan, the Director of Student Relations at DeKalb, testified that social media use has increased in the last 10 years, leading to more distractions, students becoming more disengaged, teachers having to use more time to complete a lesson, and causing more student discipline issues. Ex. 4 at 222:25–224:4.

In the past decade, Dr. Logan has seen a significant and concerning increase in the role social media is playing in student academic discipline issues. This is consistent with the information he has received from teachers, school staff, and discussions with parents. Ex. 4 at 98:12–99:4. For example, teachers say that students are more disengaged and more distracted, and that they are having to take more time to complete lessons due to these distractions. Ex. 4 at 223:12–25. Soon after he became Director of Student Relations, Dr. Logan requested that his staff compile a report from Infinite Campus, DeKalb's student information system, on the number of discipline infractions related to social media. He wanted to look at this data because, after speaking with due process hearing officers, he was concerned about the prevalence of social media in discipline issues. Ex. 4 at 78:9–22. His review of the records of these hearings showed "consistent screenshots of social media" put into evidence. Ex. 4 at 75:13–18. This represented "the vast majority" of cases. Ex. 4 at 74:11–17.

Additionally, beginning in 2016, DeKalb noticed an increase in discipline referrals for anxiety, depression, isolation, and feelings of worthlessness. Dr. Moore-Sanders received reports from employees that the reactions from students when asked to put their phones away indicated a significant issue with social media. Ex. 3 at 182:10–23. Dr. Moore-Sanders referenced the warnings by the Surgeon General and other health authorities that increased use of social media has "a causal impact" on youth mental health. Ex. 3 at 144:19–146:22. Denise Revels, Director of Wrap Around Services, supervises the social work department and regularly receives concerns about students' social media use. Ms. Revels testified when she was coordinator of social work services from 2016-2022, and she had monthly meetings with DeKalb social workers at which social media consistently came up in discussion of student problems. Ex. 5 at 208:24–209:23. After students returned from COVID, Ms. Revels had meetings with Dr. Moore-Sanders, as well as counseling and psychological services coordinators, to handle behavioral problems related to social media use, such as it causing suspensions. Ex. 5 at 121:21–124:3.

While Defendants claim that DeKalb cannot attribute mental health harms to their platforms, witness-after-witness described how Defendants' wrongful conduct has caused behavioral and mental health challenges for the district. In addition to Dr. Logan's testimony, Ex. 4 at 28:10–23; 74:8–22; 78:9–22, Dr. Moore-Sanders and Ms. Revels both testified that social media addiction became a mental health problem at DeKalb prior to COVID. Ex. 3 at 182:10–183:4 (referencing an uptick in referrals for anxiety, depression, feelings of worthlessness, and isolation *beginning in 2016*, and how surrounding circumstances pointed to social media as the culprit); Ex. 5 at 208:24–209:23 (referencing social media concerns from social workers between 2016 and 2022). Ms. Revels also testified that DeKalb needs more social workers to deal with mental health challenges stemming from social media addiction and scrolling. Ex. 5 at 218:7–25. After speaking with key DeKalb employees, expert Dr. Sharon Hoover also concluded that social media causes harm to student mental health, particularly noting that the number of DeKalb students receiving mental health services increased substantially for the 2023 and 2024 school years. Ex. 6 at ¶¶ 4, 30, 47-49; *see* Ex. 7 at 129:7–24.

Despite the evidence above, Defendants assert they are entitled to summary judgment because, in their view, the evidence fails to connect their platforms—rather than cell phone use generally—to the harms suffered by DeKalb. That argument fails.

*First,* as explained in Pls.' Omnibus Opp. § III.A.2, Defendants' platforms are uniquely dominant among school-aged youth—a dominance they deliberately designed, promoted, and exploited.

*Second*, DeKalb's issues are not from phone usage generally. Dr. Towns testified how text messages are different, how social media is intended to keep students' attention, how students scroll and scroll, "with likes", and don't want to miss out on anything. She also testified how social media is on during the school day, but should be off. Ex. 2 at 326:22–327:14; 92:2–13 (lack of age verification and parental controls). Dr. Logan also testified that the implementation of Yondr pouches and cell phone lockers was a direct response to classroom studies revealing the large number of social media notifications students were receiving during class, and that these measures were necessary to address the constant distractions caused by Defendants' platforms. Ex. 4 at 82:10–85:3; 97:2–18; 143:3–145:10; Ex. 8 at ¶¶ 13–14.

*Third,* DeKalb witnesses identified Defendants' specific platforms—not social media or cell phone use generally—as the source of disruption. Dr. Towns testified about students' use of Defendants platforms saying, "most often they are using Instagram; they're using Snapchat, because things disappear on Snapchat; they're using TikTok, participating in challenges … but Facebook as well." Ex. 2 at 272:10–16; *see also* Ex. 9 (students attempting to bypass Lightspeed filter to access YouTube); and Ex. 10 (students attempting to bypass Lightspeed filter to access Instagram, TikTok, and Facebook).

### 2. Defendants Disregard the Evidence, Mischaracterize the Record, and Misstate the Law on Causation, Platform Features, and Their Duty to Warn.

Defendants disregard DeKalb's evidence and misstate the record and controlling law. Their claim that DeKalb lacks "competent" causation evidence is unfounded. *First,* under Georgia law, DeKalb is only required to produce "evidence that raises a genuine issue of material fact." *Jones v. Holland*, 773 S.E.2d 797-798 (Ga. Ct. App. 2015). DeKalb's burden is not insurmountable, as Defendants make it seem; all it must do is offer causation evidence that amounts to more than a possibility, or show that its theory is not just "pure speculation or conjecture." *Barrett Props., LLC v. Roberts Capitol, Inc.*, 729 S.E.2d 621, 624 (Ga. Ct. App. 2012). *Second,* it is the jury's role to judge the sufficiency of evidence. *See Atlanta Obstetrics & Gynecology Group v. Coleman*, 398 S.E.2d 16-17 (Ga. 1990). DeKalb's testimony and documentary evidence provide ample admissible evidence from which a jury could find that Defendants' platforms and conduct contributed to the District's harm.

Defendants also attempt to avoid liability by claiming there is no evidence that certain features of their platforms contributed to DeKalb's harm. That argument erroneously construes the law of this case, under which *all* platform features are relevant as part of DeKalb's "failure to warn" theory. ECF 1214 at 45 (Section 230 does not "bar[] liability predicated on a failure to warn of known risks of addiction attendant to any platform features or as to platform construction in general."). Further, Defendants ignore the extensive factual record and expert testimony detailed in Plaintiffs' Omnibus Opposition and summarized herein. The evidence permits a reasonable jury to find that Defendants' conduct was the cause in fact, proximate cause, and/or concurrent cause of DeKalb's harm. DeKalb also incorporates the argument that Defendants mischaracterize the record by conflating third-party content with their own

1   actionable design choices, which fall outside Section 230 and First Amendment protections in Pls.'
2   Omnibus Opp. § III.B.2.

### B. DeKalb Has Presented Sufficient Evidence of Damages.

#### 1. DeKalb Can Recover for the "Lost Time" Damages It Incurred Due to Defendants' Wrongful Conduct.

As fully explained in Plaintiffs' Omnibus Response, damages such as lost time are recoverable under Georgia law. *See* Pls.' Omnibus Opp. § III.C.2; Pls.' SD Daubert Opp. § III.D. It is well settled under Georgia law that those who are "responsible for a negligent act must answer 'for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force.'" *Kroger Co. v. Perpall*, 125 S.E.2d 511, 514 (Ga. Ct. App. 1962) (affirming "loss of time" as a recoverable element of damages)*; Sw. R. Co. v. Vellines*, 82 S.E. 166 (Ga. Ct. App. 1914) (holding that loss of time may be recovered as consequential damages necessarily resulting from a tort).

Defendant's reliance on *MCI Comms. Servs. v. CMES, Inc.*, 728 S.E.2d 649 (Ga. 2012) is misplaced. The facts in that case clearly demonstrate there was no actual sustained loss of time caused by the defendant's wrongful conduct. The Georgia Supreme Court noted the plaintiff's claimed loss of use damages were based on "the theoretical rental value" of the severed communication cable. *Id.* at 651. Moreover, the court there noted that MCI never lost the ability to provide communication services because the services were rerouted. In contrast, DeKalb has presented evidence that it lost valuable instruction time daily because of Defendants' platforms.

Also instructive are several federal court decisions affirming lost time is a cognizable damage. For example, in *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781 (9th Cir. 1982), the Ninth Circuit, applying Oregon law, affirmed a verdict awarding the plaintiff damages for "the costs of hours its salaried personnel spent supervising the unsatisfactory computer system. *Id.* at 785. The court rejected the argument that those costs could not be recovered because the plaintiff would have paid the salaries even without the defendant's wrongful conduct. *Id.* The court also rejected an argument that the damages were too speculative because they were based on estimate provided by the plaintiff's employees. *Id.* at 786. Similarly, in *Dunn Appraisal Co. v. Honeywell Info. Systems, Inc.*, 687 F.2d 877 (6th Cir. 1982), the Sixth

Circuit, relying on *Convoy Co.,* affirmed an award of damages for lost time of the plaintiff's CEO, who testified that he spent approximately 20% of his time dealing with problems caused by the defendants' wrongful conduct. *Dunn Appraisal Co.*, 687 F.2d at 883-884.

### 2. DeKalb's Evidence Is Sufficient to Present Lost-Time Damages to a Jury.

Contrary to Defendants' arguments, the record contains substantial evidence, including deposition testimony and contemporaneous documentation, establishing that DeKalb's injuries are directly linked to Defendants' platforms.

Monika Davis, DeKalb's Chief Information Officer from 2020 to 2024, testified that DeKalb's Lightspeed internet filter is designed to block access to social media platforms such as Facebook, Instagram, noninstructional YouTube videos, Snapchat, and TikTok. Ex. 11 at 143:2–24. Ms. Davis further explained that students have persistently attempted to bypass these filters, a problem that was consistent throughout her tenure. Ex. 10; Ex. 9; and Ex. 12 at ¶ 10. She estimated that approximately 30% of her and her staff's time was devoted to combating social media-related issues, including efforts to address students' attempts to circumvent the filter and access the very platforms and features at issue in this litigation. Ex. 12 at ¶ 15.

As previously mentioned, Dr. Moore-Sanders testified that, based on her regular communications with teachers, approximately 10–20% of classroom time was lost to social media distractions. Ex. 3 181:21–182:3. Dr. Towns confirmed that social media presents a constant challenge within the learning environment, requiring the district to redirect resources away from academic instruction and student support for other issues to manage the adverse effects of social media use. Ex. 2 at 189:15–190:5; 226:13–227:23; 289:3–15; 330:19–331:7.

DeKalb's evidence further demonstrates that Defendants' platform design choices—such as endless scrolling and frequent notifications, the lack of robust age verification, and ineffective parental controls are substantial factor in the harms suffered by the district. For example, Dr. Towns testified that social media holds students' attention with features such as endless scrolling and likes that create a fear of missing out. Ex. 2 at 326:25–327:10. She also testified that students are using their phones "mostly for social media" and are constantly scrolling on social media Ex. 2 at 101:5–13; 230:12–231:6; 193:14–22; *see also* 92:2–13 (lack of age verification and parental controls). Dr. Logan testified that Yondr Pouches

7

and cell phone lockers were introduced to address the frequent social media notifications distracting students during class. Ex. 4 at 82:10–85:3; 97:2–18; 143:3–145:10; Ex. 8 at ¶¶ 13–14. Further, just for the 2024-2025 school year, the Yondr program and cell phone lockers came at a price of over $400,000 to DeKalb. Ex. 13; Ex. 15 at ¶ 20.

This testimony is not generalized speculation about "cell phone use" or "technology" in the abstract; it is specific, detailed, and directly ties to Defendants' features and platforms to the costs and time lost by DeKalb in this case. Expert evidence also reinforces these findings. Market-research expert Robert Klein surveyed DeKalb secondary teachers and found that instruction time was diverted due to use of Defendants' platforms. Ex. 14 at ¶¶ 1–3.

Defendants' argument that DeKalb's evidence is deficient because some incidents may involve other platforms or Section 230-protected content fails for the reasons stated above. *See* Pls.' Omnibus Opp. § III.B.2. The record overwhelmingly shows that DeKalb's harms arise from students' compulsive or problematic use of Defendants' platforms, and that evidence should go to a jury.

Defendants also (incorrectly) argue that DeKalb has not produced competent evidence to justify an award for lost time. The fact that Defendants disagree with the evidence does not render the evidence "incompetent." For example, Georgia law does not require evidence of damages to a level of mathematical certainty, which is what Defendants are really asserting. Rather, Georgia law requires evidence sufficient to show the "ability to '*estimate damages to a reasonable certainty*'" and "mere difficulty in fixing the exact amount will not be an obstacle to the award." *Pottinger v. Cross*, 317 S.E.2d 850, 852 (Ga. Ct. App. 1984).[1]

*Finally,* Defendants' challenge to Plaintiffs' expert opinions misstates the law and the record. As explained in Pls.' Omnibus Opp. and Pls.' SD Daubert Opp., expert testimony may properly be relied upon

---

[1] *See also French v. Dilleshaw*, 723 S.E.2d 64, 68 (Ga. Ct. App. 2012) (same); *Dossie v. Sherwood*, 707 S.E.2d 131, 134 (Ga. Ct. App. 2011) (same); *Pool Markets South, Inc. v. Coggins*, 392 S.E.2d 552, 554 (Ga. Ct. App. 1990) (same); *Kuhlke Constr. Co. v. Mobley, Inc.*, 285 S.E.2d 236, 239-240 (Ga. Ct. App. 1981) (same); *Kroger Co.*, 125 S.E.2d at 515 (same); *Moccia v. Sea Ray Boats Div. of Brunswick Corp.*, 2016 WL 4061291, * 4 (N.D. Ga. 2016) (same); *Whitley v. Comcast of GA.*, 2007 WL 737529, *2 (M.D. Ga. 2007) (same).

to defeat summary judgment. Here, DeKalb's factual evidence corroborates—and does not contradict—its experts' opinions regarding lost-time damage.

In short, the record leaves no genuine dispute: DeKalb has provided ample testimonial, documentary, and expert evidence establishing a reasonable basis to quantify its damages. Defendants are free to attack the evidence before the jury, but the evidence is admissible. Under Georgia law, that showing defeats summary judgment.

### 3. DeKalb Has Presented Sufficient Evidence of Additional Costs.

DeKalb has presented ample evidence of costs directly attributable to Defendants' conduct, including personnel, training, and program expenditures.

DeKalb has incurred at least $4,322,496 in past expenditures for programs necessitated by Defendants' conduct. Ex. 15 at ¶ 20. Defendants' assertion that these costs are unrelated to their platforms ignores the record. Each identified expenditure is supported by documentation and testimony showing that Defendants' conduct was a substantial factor in its necessity. Ex. 15 at App. B; Ex. 8 at ¶ 13; and Ex. 12 at ¶ 15.

Defendants' assertion that DeKalb "admitted" it did not hire additional teachers or staff as a result of Defendants' conduct is both misleading and contrary to the record. DeKalb has produced extensive testimony about, for example, its need for more mental health professionals, including key personnel such as psychologists and social workers, who are needed to provide an increase in mental health services due to student social media addiction use. Ex. 2 at 329:3—329:25; Ex. 5 at 218:13–25. DeKalb has been clear it does not have the funds to hire and maintain these personnel, but would if it had the funds. Ex. 5 at 219:1–4; Ex. 16 at 103:21–104:7. In addition to mental health support personnel, DeKalb needs additional spaces to provide mental health services such as Safe Centers. Ex. 2 at 330:1–331:7. The inability to hire needed personnel because resources are already strained by Defendants' conduct is itself a compensable harm.

In sum, DeKalb's evidence of specific expenditures and personnel costs provides a reasonable basis for computing additional damages. The law requires no more. These costs are directly traceable to Defendants' conduct and independently preclude summary judgment.

9
PLAINTIFF DEKALB COUNTY SCHOOL DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
4:22-md-03047-YGR

### 4. The Referenced Testimony Is Not Hearsay.

Defendants' repeated assertion that DeKalb's evidence is inadmissible hearsay is legally and factually unsupported. The testimony of DeKalb's personnel—including Ms. Davis, Dr. Moore-Sanders, Dr. Towns, and Dr. Logan—is based on their personal knowledge and direct experience in their official capacities. Federal Rule of Evidence 602 provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Ms. Davis's statements regarding the reports she received from teachers and staff are not offered for the truth of the underlying reports, but rather to explain the context in which she and her department acted—specifically, the regular and substantial efforts required to address social media issues. These statements are admissible for the non-hearsay purpose of explaining the basis for her actions and the district's resource allocation. *See Momon v. State*, 294 S.E.2d 482, 484 (Ga. 1982) (holding that an out of court statement may be offered as nonhearsay to explain a person's conduct when: (1) the out-of-court statement may have had an effect on the person that explains his subsequent conduct; and (2) explaining that person's conduct is a matter "concerning which the truth must be found" at trial); *see also Moore v. Sears, Roebuck and Co.,* 683 F.2d 1321 (11th Cir. 1982) and Ctrm. Hbook. Ga. Evid. H2 (2025 ed.)

Moreover, the reports referenced by Ms. Davis were received and acted upon in the ordinary course of business, further supporting their admissibility. Ex. 11 at 84:8–25, 147:21–148:11.

Defendants also attempt to minimize and discredit Ms. Davis's characterization of Lightspeed-related costs (Ex. 12 at ¶ 15; Ex. 15 at ¶¶ 21–22), but their relegation of this point to a footnote underscores the existence of a genuine factual dispute.

### C. DeKalb's Strategic Plan Is Appropriate Under Georgia Law.

Defendants' challenges to Dr. Hoover's Strategic Plan and its role in addressing the harms caused by Defendants' platforms are addressed in Pls.' Omnibus Opp. § III.D. and Pls.' SD Daubert Opp. § III.F. Defendants created a public nuisance by targeting schools and students and designing and marketing their platforms to students in ways that encourage compulsive use, despite knowing their platforms were harmful to adolescents. This has fundamentally disrupted education and has harmed the school environment and school districts, including DeKalb. The "manifestation" of that conduct is (1) student distraction and negative impact on student academic focus, learning, and performance; (2) a decline in

student social skills and face to face interactions; (3) a negative impact on teaching effectiveness, classroom dynamics, teacher morale, and job satisfaction; (4) disrupted student sleep, (5) increases in student anxiety, depression, self-harm, and negative body image; and (6) an overall burden on constrained school resources. Ex. 1 at ¶¶ 3–5, 8, 58. The Strategic Plan directly addresses these harms caused by Defendants' by treating them, reducing them, and preventing their continuation, and thus constitutes a proper abatement remedy under Georgia law. Ex. 6 at ¶¶ 2, 5.

Again, invoking their refrain that DeKalb lacks "competent" evidence,[2] Defendants argue that DeKalb cannot recover for the strategic plan as future damages because the district has not yet hired the recommended personnel or demonstrated it will do so, and therefore, those costs are "speculative" and "uncertain." As previously mentioned, DeKalb has produced extensive testimony about, for example, its need for more mental health professionals, including key personnel such as psychologists and social workers, who are needed to provide an increase in mental health services due to social media addiction. Ex. 2 at 329:3—329:25; Ex. 5 at 218:13–219:4. DeKalb has testified it does not have the funds to hire and maintain these personnel but would do so if it could. Ex. 16 at 102:1–104:7. In addition to mental health support personnel, DeKalb needs additional spaces to provide mental health services, such as Safe Centers, which are rooms in some DeKalb high schools that include calming or decompressing areas for students (also referred to as "zen dens.") Ex. 2 at 303:24–304:4. These personnel and resources are a critical part of the Hoover Plan's costs. Ex. 6 at ¶ 97. In sum, DeKalb has provided ample evidence of its need for Dr. Hoover's plan.

            1.    **The Plan Is Not "Derivative," and Even If It Were, That Is No Basis for Summary Judgment.**

*Finally,* Dr. Hoover's plan is not "derivative," and even if it were, that is no basis for summary judgment. As explained in Pls.' Omnibus Opp. § III.D, the plan addresses harms directly inflicted on DeKalb itself—not on third parties. Even if some aspects were deemed derivative, that would not preclude recovery. Georgia law permits compensation for foreseeable and direct consequences of defendants'

---

[2] Defendants' labeling of the evidence as "incompetent" itself suggests a factual dispute—precisely the kind of issue that must be resolved by a jury, not on summary judgment.

11
PLAINTIFF DEKALB COUNTY SCHOOL DISTRICT'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
4:22-md-03047-YGR

misconduct, particularly where, as here, the conduct foreseeably causes harm to schools. Ga. Code Ann. § 51-12-3.

### D. Defendants' Motion for Summary Judgment on DeKalb's Failure to Warn Claim Should Be Denied.

As set forth Pls.' Omnibus Opp. § III.A.1, Defendants breached their duty by failing to warn students, parents, the public, and school districts, including DeKalb, and Defendants' duty to warn DeKalb is not impermissibly derivative of their duty to warn DeKalb's students.

Defendants speculate that DeKalb would have ignored any warning, had Defendants given one. But it is undisputed that no warning was given. Ex. 2 at 73:14–74:5; 76:7–78:11; 78:23–79:24. And if one had been given, the record demonstrates DeKalb would have acted. DeKalb has presented evidence supporting its failure to warn claim a reasonable inference that warnings from Defendants could have lessened the injuries sustained by DeKalb. Had Defendants given DeKalb adequate warnings, it would have undertaken efforts to prevent and mitigate the negative effects of Defendants' platforms. With an adequate warning from Defendants, DeKalb could have prioritized:

- providing more education and communication to parents (e.g., through regular meetings such as town halls, back-to-school nights, additional social media guidelines) to help them manage or limit student access to Defendants' platforms;
- further updating student handbooks or acceptable use policies to include social media–specific warnings and restrictions;
- developing additional age-appropriate curriculum on social media safety, mental health impacts, and responsible digital citizenship;
- integrating more social media awareness into health, wellness, or advisory programs;
- partnering with additional community organizations or state agencies to run assemblies or workshops addressing harms from Defendants' platforms;
- providing additional training for teachers, counselors, and administrators to recognize harms related to Defendants' platforms and ways to respond effectively;
- partnering with local health systems to support interventions for students exhibiting social media–related distress;
- joining or supporting broader coalitions advocating for stronger online protections for minors;
- prioritizing professional development and training for staff on social media risks and student well-being; and

- implementing or expanding digital literacy programs for staff, students, and parents. (Ex. 17 at ¶ 11).

This rebuts Defendants' speculation that DeKalb would have failed to respond to warnings, and defeats summary judgment.

### III. CONCLUSION

DeKalb has raised sufficient evidence showing that Defendants' conduct foreseeably, substantially, and unreasonably disrupted the District's operations, diverted educational resources, and caused measurable harm. Genuine disputes as to causation and damages foreclose summary judgment, and DeKalb is entitled to present its case to a jury.

DATED: November 7, 2025

Respectfully submitted,

BY:   */s/ Davis Vaughn*
Davis Vaughn
Joseph VanZandt
James Lampkin
Burton Walker
Slade Methvin
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
234 Commerce Street
Montgomery, AL 36103
Tel.: 334-269-2343
davis.vaughn@beasleyallen.com
joseph.vanzandt@beasleyallen.com
james.lampkin@beasleyallen.com
burton.walker@beasleyallen.com
slade.methvin@beasleyallen.com

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

*Co-Lead Counsel*

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
Telephone: 202-386-9610
pwarren@motleyrice.com

*Co-Lead Counsel*

| | |
|---|---|
| MICHAEL M. WEINKOWITZ<br>**LEVIN SEDRAN & BERMAN, LLP**<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106<br>Telephone: 215-592-1500<br>mweinkowitz@lfsbalw.com<br><br>*Co-chair School District Committee*<br>*Plaintiffs' Steering Committee Leadership* | MELISSA YEATES<br>**KESSLER TOPAZ MELTZER & CHECK LLP**<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: 610-667-7706<br>myeates@ktmc.com<br><br>*Co-chair School District Committee*<br>*Plaintiffs' Steering Committee Leadership* |

**ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27**

I, Davis Vaughn, attest that the evidence cited herein fairly and accurately supports the facts as asserted.

Dated: November 7, 2025              By:    /s/ Davis Vaughn

**FILER'S ATTESTATION**

I, Davis Vaughn, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: November 7, 2025              By:    /s/ Davis Vaughn

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronic mail on November 7, 2025, to Counsel for Defendants:

MetaNoticeofService@cov.com

SnapNoticeofService@mto.com

TikTokNoticeofService@faegredrinker.com

SERVICE-YOUTUBE-INRESOCIALMEDIAM@LIST.WSGR.COM

mdl3047coleadfirms@listserv.motleyrice.com

pscservicemdl3047@motleyrice.com

/s/ *Davis Vaughn*
Davis Vaughn