# Exhibit 3

FILED
Superior Court of California
County of Los Angeles
11/05/2025
David W. Slayton, Executive Officer / Clerk of Court
By: _____L. Ennis_____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

*P.F., et al. v. Meta Platforms, Inc., et al.*
23SMCV03371

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: October 28, 2025

**Meta's Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication (K.G.M.)**

Court's Ruling: The Motion is denied.

      Meta moves for summary judgment as to K.G.M. Alternatively, Meta moves for summary adjudication of K.G.M.'s claims against Meta for (1) negligence and (2) negligent failure to warn. After filing the Motion, Meta filed a "First Supplemental Memorandum of Points and Authorities" (Meta's Supp. Mem.). Herein, the court relies on and (where necessary) cites this supplemental memorandum.

      Before addressing Meta's request for summary judgment/adjudication as to entire causes of action, the court must first reject Meta's improper attempt to have this court adjudicate issues regarding particular "injuries," particular "features," or particular "warnings." Meta has requested adjudication as to 20 different injuries, features or warnings. For example, Meta seeks a ruling finding that "Plaintiff's claims of harm from recommended content are inextricably tied to third-party content and Meta's publishing activities, and are therefore barred by Section 230 of the Communications Decency Act or the First Amendment to the U.S. Constitution." (See Defs' Not. Mot., at p. iii.) Meta's request is improper

1

under California procedural law.  A party cannot move for summary adjudication of an *issue* within a cause of action when adjudication of that issue would not completely dispose of that cause of action.  (See, e.g., *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1103.)  As the Code of Civil Procedure makes clear, "[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."  (Code Civ. Proc., § 437c, subd. (f)(1).)

Meta raises four main arguments in support of its claim that K.G.M.'s claims fail.  First, Meta argues that Section 230 bars K.G.M.'s claims.  Meta essentially re-litigates questions that were decided by this court when it ruled on Defendants' pleading challenges.  The court directs the reader to this court's rulings as to Section 230.  (See Ruling on Defendants' Demurrer to Master Complaint and Three Short Form Complaints, Oct. 13, 2023 [an 89-page order addressing, *inter alia*, Defendants' argument that Section 230 bars Plaintiffs' claims in their entirety]; see also Court Ruling on Defendants' Motion to Strike Third-Party Misconduct and Online Challenge Allegations from Identified Short-Form Complaints, July 19, 2024 [order addressing which types of features on the platforms cannot, as a result of Section 230, serve as a basis for Defendants' liability].)  Here, Meta has failed to present new argument or new authority persuading this court that it should revise its prior conclusions.

Meta argues that K.G.M.'s claims impermissibly seek to hold Meta liable as a publisher for harms stemming from the third-party content on Meta's platforms.  For example, Meta argues that K.G.M. cannot assert liability based on the "infinite scroll" design feature because this feature merely led Plaintiff to watch content.  (See Meta's Supp. Mem, at pp. 9-10.)  However, the fact that a design feature like "infinite scroll" impelled a user to continue to consume content that proved harmful does not mean that there can be no liability for harm arising from the design feature itself.  (See Ruling on Defendants' Demurrer to Master Complaint and Three Short Form Complaints, Oct. 13, 2023, at p. 59 [harm from "infinite scroll" feature may give rise to a cause of action that is not barred by Section 230].)  Here, there is evidence suggesting that the design feature of "infinite scroll" itself harmed K.G.M.  Meta does not dispute that K.G.M. has testified that she suffered harm from using the "infinite scroll" feature.  (See Meta's Resp. K.G.M.'s Sep. St., at p. 113, Pl's Fact No. 225.)  Moreover, Meta does not object to this specific testimony.  (See Def's Objs., at p. 6, Obj. 13.)  This evidence is sufficient to preclude a conclusion that there is no disputed question of fact as to whether K.G.M.'s claims are based on harm stemming from third-party content.  Meta's Section 230 argument does not justify an order granting the Motion.

2

Meta again argues, as it did in briefing the Defendants' Motion to Strike certain allegations from particular Short-Form Complaints, that the "gravamen" of the claims asserted is injury caused by content of social media services.  (See Court Ruling on Defendants' Motion to Strike Third-Party Misconduct and Online Challenge Allegations from Identified Short-Form Complaints, July 19, 2024, at p. 24.)  As discussed above, Meta certainly may argue to the jury that K.G.M.'s injuries were caused by content she viewed.  But Plaintiff has presented evidence that features of Instagram that draw the user into compulsive viewing of content were a substantial factor in causing her harm.  Courts have repeatedly "rejected use of a 'but-for' test that would provide immunity under [Section 230] solely because a cause of action would not otherwise have accrued but for the third-party content."  (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 256.)

For similar reasons, K.G.M.'s testimony that she used Instagram and not Facebook because she liked the content she saw on Instagram does not require that the court (or the jury) ignore other evidence regarding K.G.M.'s usage of Instagram.  The reason why K.G.M. initially used Instagram may be relevant to the cause of K.G.M.'s injury, but there also is evidence that the manner in which Instagram interacted with K.G.M. over time – the features that affected her continued use of the social media platform – contributed to K.G.M.'s injury.

Meta's second argument is that the First Amendment bars K.G.M.'s claims because those claims "directly target Meta's protected expressive activity—its choices about how to organize and present third-party speech—and would force Meta to alter the ways in which it curates and organizes content."  (Meta's Supp. Mem., at p. 12.)  This court already has considered Meta's arguments based on the United States Supreme Court decision in *Moody v. NetChoice, LLC* (2024) 602 U.S. 707.  As previously explained, "the allegedly addictive features of Defendants' platforms (such as endless scroll) cannot be analogized to how a publisher chooses to make a compilation of information, but rather are based on harm allegedly caused by design features that affect how Plaintiffs interact with the platforms regardless of the nature of the third-party content viewed."  (Ruling on Defendants' Demurrer to Identified Amended Short-Form Complaints, Jan. 8. 2025, at p. 15, internal citations and quotation marks omitted.)  As with the Section 230 argument, Meta claims that the First Amendment bars K.G.M.'s claims because it is the third-party content that caused K.G.M.'s harms.  But, again, there is evidence in the record that K.G.M. was harmed by design features.  The cause of K.G.M.'s harms is a disputed factual question that must be resolved by the jury.

Meta's third main argument is that K.G.M. cannot prove the elements of her claim.  With respect to the negligence cause of action, this argument is a restatement of Meta's argument that K.G.M. is unable to show that design features caused her harm.  As explained above, there is a factual dispute as to whether the design features caused K.G.M.'s harm.  As for the claim for negligent failure to warn, Meta argues that the claim fails because K.G.M. cannot show that her harms would have been avoided or lessened had Meta issued the requested warnings.  Meta notes that K.G.M. did not read Instagram's terms of service before creating Instagram accounts.  But K.G.M.'s claim also deals with the nature of the warnings.  K.G.M. does not assert that Meta should have simply provided warnings hidden in the text of Instagram's terms of service.  Plaintiffs' "warnings expert" has offered his opinion that warnings should be "large" and "prominently placed."  (Meta's Resp. Pl's Sep. St., at pp. 62-63, Pl's Fact No. 52.)  It is undisputed that "[n]either K.G.M. nor her mother ever saw any statements or warnings about the safety of Instagram … ."  (Meta's Resp. Pl's Sep. St., at pp. 122-123, Pl's Fact No. 272.)  The following fact is also undisputed:

> K.G.M.'s mother only learned of the dangers of social media from a "60 Minutes" program long after her daughter had been using the apps. She testified that had she known of the harms earlier, she "would have never given K.G.M. a phone and things would be different."

(Meta's Resp. Pl's Sep. St., at p. 123, Pl's Fact No. 273, internal brackets omitted.)  Clearly, there are disputed questions of fact.

Meta's fourth argument is that certain Meta-affiliated Defendants should be dismissed from this litigation because they had no involvement in K.G.M.'s injuries.  Meta claims:

> Only Meta Platforms, Inc. operates Instagram. SS ¶ 59. The other Meta Defendants—Meta Payments Inc. f/k/a Facebook Payments Inc., Siculus LLC f/k/a Siculus, Inc., Facebook Operations, LLC, Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC, Facebook Holdings, LLC, and Instagram LLC (the "Non-Operating Defendants")—do not. SS ¶¶ 60–62.

(Meta's Supp. Mem., at p. 20.)  In support of this argument, Meta cites to its own Responses and Objections to Plaintiffs' Rule 30(b)(6) Written Questions to Meta Defendants.  (Simonsen Decl. Ex. 8.)  Plaintiff objects to this proffered evidence on the grounds that the person who verified the

4

responses for Meta does not claim to have personal knowledge of the facts set forth in the Rule 30(b)(6) responses, and that Plaintiff has not had an opportunity to test the responses by cross examination in a deposition.

The court sustains the Plaintiff's objection. Under California law, a party may not offer its own interrogatory responses as evidence – those responses only may be used to impeach the party that answered the interrogatories.

> At the trial or any other hearing in the action, so far as admissible under the rules of evidence, the propounding party or *any party other than the responding party* may use any answer or part of an answer to an interrogatory *only against the responding party.*" (Code Civ. Proc., § 2030.410, italics added.) Thus, the responding party may not use its own interrogatory responses in its own favor. The trial court did not abuse its discretion in sustaining plaintiff's objection to defendant's use of its own interrogatory responses as evidence supporting its statement of undisputed facts.

(*Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 450.)

At oral argument, Meta's counsel argued that responses to a deposition by written questions conducted under Federal Rule of Civil Procedure section 31 should be treated like testimony given in a deposition rather than like interrogatory responses. Counsel cited in support of this proposition *United States v. Salim* (1988) 855 F.2d 944 (*Salim*). In that case, the court considered whether Federal Rule of Civil Procedure 15 allowed the submission in a criminal proceeding of a deposition conducted by French authorities. The court described the deposition taken in France as similar to a deposition on written questions conducted pursuant to Federal Rule of Civil Procedure 31. The court further noted that Rule 31 allows the submission of both direct and cross-examination questions in writing. (*Id.* at p. 951.) It was important to the court's determination that the foreign deposition testimony was admissible in the criminal trial that the party who opposed admission of the evidence had had "ample opportunity to pose new questions to the witness after reviewing her responses to the earlier ones." (*Id.* at p. 954.)

In the current posture of this case, this court did not supervise the discovery that Plaintiffs were allowed to take of Meta (the MDL court supervised that discovery), and the court is unaware of whether Plaintiffs

5

had the opportunity to follow-up on the responses to the deposition by written questions in order to pose additional questions and to probe the reliability of Meta's written responses.  Further, unlike the circumstances in *Salim*, where the foreign deposition involved an identified individual, the testimony at issue here was taken pursuant to Federal Rule of Civil Procedure section 31(a)(4) – questions directed to an organization in accordance with Rule 30(b)(6) – and Meta was required to designate a person to testify about information known or reasonably available to the organization.  Plaintiff objects that the person who verified the interrogatory responses did not claim personal knowledge.  The Declaration verifying the responses was signed by Nicole Lopez, but nothing in the excerpt provided with Meta's Motion indicates the title of the witness or gives any assurance that she possessed the requisite information necessary to qualify as a witness pursuant to Rule 30(b)(6), as required by Rule 31(a)(4).  The court sustains Plaintiff's objection to Exhibit 8 to the Simonsen Declaration.  Meta's Motion for Summary Judgment as to the Meta-affiliated Defendants is therefore denied.

**Defendants YouTube, LLC and Google LLC's Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication on Plaintiff K.G.M.'s Remaining Causes of Action**

Court's Ruling:  The Motion is denied.

Google moves for summary judgment or summary adjudication as to K.G.M.'s remaining causes of action for negligence and negligent failure to warn.  Google also moves for "summary adjudication" of the following four allegedly wrongful acts committed by Google:

> 1. Exposing Plaintiff to third-party content that she found objectionable via comments, content recommendations, and Autoplay;
> 2. Providing to Plaintiff the ability to receive (or not receive) comments and/or likes from third parties on her YouTube videos;
> 3. Presenting curated YouTube feeds that Plaintiff used to watch videos; and
> 4. Failing to implement "stricter age restrictions" on YouTube.

6

After filing the Motion, Google filed an Amended Memorandum of Points and Authorities (Google's Am. Mem.). Herein, the court relies on and (where necessary) cites this amended memorandum.

As explained above in connection with Meta's Motion, a request for this court to enter summary adjudication as to discrete issues (i.e., whether Google caused K.G.M. legally cognizable harm by presenting curated YouTube feeds) is procedurally improper. A party cannot move for summary adjudication of an *issue* within a cause of action when adjudication of that issue would not completely dispose of that cause of action. (See, e.g., *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1103.) As the Code of Civil Procedure makes clear, "[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

Google's principal argument is that K.G.M.'s claims fail because they are barred by Section 230 and the First Amendment. In short, Google argues this court should conclude that there is no disputed question of material fact as to whether K.G.M. was harmed by design features, or instead harmed by non-actionable third-party content.

The parameters of the restrictions required by Section 230 and the First Amendment have been analyzed previously by this court and are outlined again above in discussing Meta's Motion for Summary Judgment. K.G.M. has introduced evidence that her use of YouTube's design features caused her harm. K.G.M. testified that she used YouTube, and that she believes that YouTube "contributed to [her] social media addiction." (Olson Decl., Ex. 1, at 248:22-25.) She testified that YouTube's "autoplay" feature contributed to her social media addiction. (Olson Decl., Ex. 1, at 249:16-20.) K.G.M. has testified that social media use "contributed to [her] anxiety and [her] depression and caused [her] to feel more insecure about [herself]." (Olson Decl., Ex. 1, at 252:3-5.) Moreover, K.G.M., like other Plaintiffs, also relies on evidence submitted by expert witness Bagot, who concludes that certain design features on Google's platform YouTube were capable of causing the type of mental harms allegedly suffered by K.G.M. (See, e.g., Olson Decl., Ex. 37, at 62:7-15; see also Bagot Gen. Causation Rept., at p. 51 [addressing how "autoplay" contributes to a social media platform's addictive nature].) Although Google has challenged the admissibly of Bagot's general causation testimony, this court has determined that Bagot may testify at trial. Ultimately, the critical question of causation is one that must be determined by the jury.

7

Google's second principal argument is similar to its first. Google argues that K.G.M. "fails to carry her burden of creating a jury issue on causation." (Google's Am. Mem., at p. 21.) Google is correct that "[t]he causation issues in this case are undeniably complex." (Google's Am. Mem., at p. 21.) Those "causation issues" must be resolved by a jury after all admissible evidence is presented at trial. Again, this court has already rejected Defendants' argument that Bagot cannot provide testimony regarding causation at trial.

Google argues that the failure to warn claim fails because K.G.M. is unable to present any evidence to show that any warning would have prevented the harm suffered by K.G.M. However, this issue also must be decided by the jury. The following is undisputed for the purposes of this motion:

> K.G.M.'s mother only learned of the dangers of social media from a "60 Minutes" program long after her daughter had been using the apps. She testified "I was not aware, I didn't know if there was any dangers," "I didn't realize the harm it could do," and that had she known of the harms earlier, she "would have never given K.G.M. a phone and things would be different."

(YouTube's Resp. Pl's Sep. St., at p. 136, Pl's Fact No. 226, internal brackets omitted.)

**Motion for Summary Judgment or, in the Alternative, Summary Adjudication** (filed by ByteDance against K.G.M.)

Court's Ruling: The Motion is denied.

ByteDance moves for summary judgment or summary adjudication as to K.G.M.'s claims for negligence and negligent failure to warn relating to his use of TikTok.

As noted above in regard to the motions filed by other Defendants, this court cannot resolve discrete "issues." This court can only grant the Motion if it determines that one or more of K.G.M.'s *causes of action* fail.

ByteDance argues that K.G.M.'s claims fail as a matter of law because there is no factual dispute that TikTok's design features did not cause K.G.M.

8

harm. In making this argument, ByteDance suggests that the expert testimony of Bagot (1) is inadmissible, and (2) insufficiently demonstrates TikTok's liability. This court has already determined that Bagot may provide causation testimony. Moreover, whether Bagot's opinions regarding whether TikTok is capable of causing K.G.M.'s harms are sufficient to prove liability at trial is a factual question that must be determined by the jury. Testimony by Bagot as to design features that were employed on TikTok as well as on other social media platforms is directly relevant to the question of whether those design features cause the type of harms allegedly suffered by K.G.M. here. There is no dispute that K.G.M., when using TikTok, was exposed to these features. Indeed, it is undisputed here that K.G.M. has claimed that she was harmed from design features on TikTok, such as "endless scrolling." (ByteDance's Resp. Pl's Sep. St., at p. 82, Pl's Fact No. 164.) K.G.M. testified that TikTok's endless scrolling feature made TikTok addictive and interfered with K.G.M.'s sleep. (ByteDance's Resp. Pl's Sep. St., at p. 82, Pl's Fact No. 165.) The jury must therefore determine whether these design features on TikTok were the cause of K.G.M.'s harm. Moreover, because the question of whether TikTok's design features caused K.G.M.'s harm must be resolved by the jury, this court cannot grant summary adjudication under Section 230 or the First Amendment.

ByteDance insists that it could not be liable because K.G.M. already suffered mental health harms before she began using TikTok. However, the question of whether subsequent TikTok use contributed to or increased such harms is a factual question for the jury. The complicated factual question of whether TikTok's design features were a substantial cause of any of K.G.M.'s harms cannot be decided by way of summary judgment.

ByteDance also argues that K.G.M.'s claim for negligent failure to warn fails. In short, ByteDance argues that K.G.M. cannot show that the failure to warn actually caused K.G.M.'s harms stemming from use of TikTok. This issue cannot be resolved through summary judgment. ByteDance stresses the fact that neither K.G.M. nor her mother read TikTok's terms of service or privacy policy. But a claim for failure to warn might still be valid even if a harmed minor's parents did not read certain documents issued by the defendant. K.G.M.'s expert has offered testimony suggesting that any warning from ByteDance, in order to be effective, could not merely be included among the text of TikTok's terms of service. (See ByteDance's Rep. Pl's Sep. St., at p. 90, Pl's Fact No. 183.) Here, ByteDance does not dispute that it failed to issue certain warnings, such as a warning that a minor's use of TikTok's endless scroll feature could cause certain mental health harm. A trier of fact might conclude from the available evidence that, if ByteDance *had* issued such warnings, such warnings may have served to

9

eventually alert K.G.M. and/or her mother about the dangers associated with K.G.M.'s use of TikTok.

**Defendant Snap Inc.'s Motion for Summary Judgment, or, in the Alternative, Summary Adjudication**

Court's Ruling: The Motion is denied.

Snap moves for summary judgment and/or adjudication on three grounds: (1) K.G.M. does not have admissible expert evidence showing that her use of Snapchat caused her alleged injuries; (2) K.G.M.'s experts' opinions cannot support causation, even if admissible, because of the many other documented causes of K.G.M.'s claimed injuries; and (3) K.G.M.'s claims are preempted by Section 230, and barred by the First Amendment

Before addressing these three arguments, the court must again make clear that it can only grant summary adjudication as to an entire cause of action.  The court must therefore reject Snap's invitation to adjudicate "aspects of K.G.M.'s claims." (Snap's Supp. Not. Mot., at p. 2.)  As explained above in connection with other Defendants' motions, such a request is procedurally improper.  Harm from one design feature on a social media platform does not give rise to a "separate and distinct cause of action" from a claim for harm caused by another design feature of that same social media platform.

The first, second, and third arguments made by Snap can be summarized together as follows: Snap believes that there is no evidence to show that Snapchat's design features caused K.G.M.'s injuries.  Snap's Motion is denied because K.G.M. has submitted evidence to dispute Snap's factual claims.  It is undisputed that K.G.M. used Snapchat.  And K.G.M.'s expert has concluded that Snapchat's design features can cause the types of harms suffered by K.G.M.  "In her general causation report, Dr. Bagot offers the opinion that Snapchat employs features such as intermittent reinforcement mechanisms (including Snapstreaks), ephemeral messaging, infinite scroll, and appearance-altering filters and lenses that are specifically designed to maximize adolescent engagement, promote appearance-based social comparison, and increase the risk of psychiatric harms including anxiety, eating disorders, and compulsive use." (Snap's Reply Pl's Sep. St., at p. 141, Pl's Fact No. 222.)  Because there is evidence that (1) K.G.M. used Snapchat, and (2) Snapchat's design features caused the types of harms allegedly suffered by K.G.M., a trier of fact could conclude that

Snapchat's design features caused K.G.M.'s alleged harms. Snap's causation arguments do not bar Plaintiff's claims from proceeding to trial.

      Snap again argues that Section 230 and the First Amendment bar its liability. But these arguments already have been addressed by the court. In the Ruling on Defendants' Demurrer to Master Complaint and Three Short Form Complaints, Oct. 13, 2023, the court affirmed that liability could be premised on appearance-altering tools and reward systems designed to keep users checking social media sites in ways that contribute to social pressure and anxiety. (Ruling, Oct. 13, 2023, at p. 60.) Snap cites the Ninth Circuit's recent ruling in *NetChoice, LLC .v Bonta* (9th Cir. 2025) 152, F.4th 1002, 1016-1017 (*NetChoice v. Bonta*), as authority in support of its position. That case found that state legislation prohibiting social media platforms from displaying the number of likes that a user's post has received regulated the content of a social media provider's speech, and that regulation of "the like-count default setting is not the least restrictive way to advance California's interest in protecting minors' mental health." (*Id.* at p. 19.) But in this litigation Plaintiffs have not sought to ban Snap from displaying the number of likes and have not premised liability on such display. Rather, Plaintiffs premise liability on notification features that allegedly manipulate the time spent by Plaintiffs on a Defendant's social media platform. Nothing in the Ninth Circuit's decision in *NetChoice v. Bonta* persuades this court that its prior rulings on the applicability of the First Amendment to the claims alleged in this case were incorrect.

Date:11/05/2025

                                                         Carolyn B. Kuhl / Judge
The Honorable Carolyn Kuhl
Judge of the Superior Court