# Exhibit 4

FILED
Superior Court of California
County of Los Angeles

11/05/2025

David W. Slayton, Executive Officer / Clerk of Court

By: _____L. Ennis_____ Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

*R.K.C. v. Meta Platforms, Inc., et al.*
23STCV31485

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**
**Date of Hearing: October 28, 2025**

**Meta's Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication (R.K.C.)**

Court's Ruling: The Motion is denied.

     Meta moves for summary judgment as to R.K.C.  Alternatively, Meta moves for summary adjudication of each of R.K.C.'s remaining claims against Meta, which are for (1) negligence, (2) non-product negligent failure to warn, and (3) fraudulent concealment.  After filing the Motion, Meta filed a "First Supplemental Memorandum of Points and Authorities" (Meta's Supp. Mem.) on September 8, 2025.  Herein, the court relies on and (where necessary) cites this supplemental memorandum.

     Before addressing Meta's request for summary judgment/adjudication as to entire causes of action, the court must first reject Meta's improper attempt to have this court adjudicate issues regarding particular "injuries," particular "features," or particular "warnings."  Meta has requested adjudication as to 17 different injuries, features or warnings.  For example, Meta seeks rulings finding that "Plaintiff has adduced no evidence that Meta caused Plaintiff's alleged sleep disorder," or that "Plaintiff's claims of harm from notifications are inextricably tied to third-party content and Meta's publishing activities, and are therefore barred by Section 230 of the Communications Decency Act or the First Amendment to the U.S.

1

Constitution." (See Defs' Not. Mot., at pp. ii-iii.) Meta's request is improper under California procedural law. A party cannot move for summary adjudication of an *issue* within a cause of action when adjudication of that issue would not completely dispose of that cause of action. (See, e.g., *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1103.) As the Code of Civil Procedure makes clear, "[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

Meta raises four main arguments in support of its claim that R.K.C.'s claims fail. First, Meta argues that Section 230 bars R.K.C.'s claims. Meta essentially re-litigates questions that were decided by this court when it ruled on Defendants' pleading challenges. The court directs the reader to this court's rulings as to Section 230. (See Ruling on Defendants' Demurrer to Master Complaint and Three Short Form Complaints, Oct. 13, 2023 [an 89-page order addressing, *inter alia*, Defendants' argument that Section 230 bars Plaintiffs' claims in their entirety]; see also Court Ruling on Defendants' Motion to Strike Third-Party Misconduct and Online Challenge Allegations from Identified Short-Form Complaints, July 19, 2024 [order addressing which types of features on the platforms cannot, as a result of Section 230, serve as a basis for Defendants' liability].) Here, Meta has failed to present new argument or new authority persuading this court that it should revise its prior conclusions.

Meta again argues, as it did in briefing the Defendants' Motion to Strike certain allegations from particular Short-For Complaints, that "Section 230 bars R.K.C.'s claims because the 'gravamen' of his claims are [sic] based on user-generated content and 'design features' protected by Section 230 or the First Amendment." (Meta's Supp. Mem., at p. 1. See Court Ruling on Defendants' Motion to Strike Third-Party Misconduct and Online Challenge Allegations from Identified Short-Form Complaints, July 19, 2024, at p. 24.) But the real question for this court is whether there is any evidence that creates a disputed question of material fact as to whether design features of Meta's social media platforms were a substantial factor in causing R.K.C.'s injuries. There is such evidence. For example, R.K.C. has presented his own deposition testimony that he was distracted, anxious and deprived of sleep due to the urge to check notifications sent by Meta. (See Pl's Resp. Meta's First Supp. Sep. St. No. 16, at p. 7 [quoting R.K.C.'s testimony].)[1] This disputed factual question must be decided by the jury.

---

[1] See Pl's Resp. Meta's First Supp. Sep. St. No. 20, at pp. 8-9, recounting disputes about data concerning the amount of time R.K.C. interacted with Meta platforms.

Meta's second argument is that the First Amendment bars R.K.C.'s claims because those claims "directly target Meta's protected expressive activity—its choices about how to organize and present third-party speech—and would force Meta to alter the ways in which it curates and organizes content." (Meta's Supp. Mem., at p. 11.)  This court has already explained that "the allegedly addictive features of Defendants' platforms (such as endless scroll) cannot be analogized to how a publisher chooses to make a compilation of information, but rather are based on harm allegedly caused by design features that affect how Plaintiffs interact with the platforms regardless of the nature of the third-party content viewed." (Ruling, Jan. 8. 2025, at p. 15, internal citations and quotation marks omitted.)  As with the Section 230 argument, Meta claims that the First Amendment bars R.K.C.'s claims because it is the third-party content that caused R.K.C.'s harms.  But, again, there is evidence in the record that R.K.C. was harmed by design features.  The cause of R.K.C.'s harms is a disputed factual question that must be resolved by the jury.

Meta's third argument that R.K.C. cannot prove the elements of his claim is, in reality, a restatement of its prior arguments.  Meta argues that the negligence claim fails because R.K.C. "has no admissible evidence to establish that Instagram and Facebook's 'features' had 'an adverse effect on him apart from the content of the material published on the site.' " (Meta's Supp. Mem., at p. 15, internal citations and brackets omitted.)  As explained above, there is a factual dispute as to whether the design features caused R.K.C.'s harm.  As for the claims for failure to warn and fraudulent concealment, Meta argues that these claims fail because R.K.C. "would have suffered the same alleged harm had Meta given the additional warnings" or disclosed the concealed facts. (Meta's Supp. Mem., at p. 15.)  But there is evidence in the record that disputes Meta's factual claim: there is testimony by R.K.C.'s father suggesting that, if he had received certain warnings regarding the dangers of social media platforms, he would have taken actions to prevent R.K.C. from being harmed by those platforms.  (See Pl's Resp. Meta's Sep. St., Pl. Add'l Fact No. 153, at pp. 58-59, Autry Decl., Ex. 5, at 414:7-15, 419:1-20.)  Meta's First Amendment arguments and the cases cited have been addressed previously by this court. (Ruling of Jan. 8, 2025, addressing Plaintiffs' negligent failure to warn claims, at pp. 14-16.)[2]

Meta's fourth argument is that certain Meta-affiliated Defendants should be dismissed from this litigation because they had no involvement in R.K.C.'s injuries.  Meta claims:

---

[2] The court notes that Meta again has not addressed to factual complexities of the First Amendment evaluation required by *National Association of Wheat Growers v. Bonta* (9th Cir. 2023) 85 F.4th 1263, 1275.)

3

> Only Meta Platforms, Inc. operates Instagram and Facebook. SS ¶ 37. The other Meta Defendants—Meta Payments Inc. f/k/a Facebook Payments Inc., Siculus LLC f/k/a Siculus, Inc., Facebook Operations, LLC, Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC, Facebook Holdings, LLC, and Instagram LLC (the "Non-Operating Defendants")—do not. SS ¶¶ 38–40.

(Meta's Supp. Mem., at p. 20.) In support of this argument, Meta cites to its own Responses and Objections to Plaintiffs' Rule 30(b)(6) Written Questions to Meta Defendants. (Simonsen Decl. Ex. 11.) Plaintiff objects to this proffered evidence on the grounds that the person who verified the responses for Meta does not claim to have personal knowledge of the facts set forth in the Rule 30(b)(6) responses, and that Plaintiff has not had an opportunity to test the responses by cross examination in a deposition.

The court sustains the Plaintiff's objection. Under California law, a party may not offer its own interrogatory responses as evidence – those responses only may be used to impeach the party that answered the interrogatories.

> At the trial or any other hearing in the action, so far as admissible under the rules of evidence, the propounding party or *any party other than the responding party* may use any answer or part of an answer to an interrogatory *only against the responding party.*" (Code Civ. Proc., § 2030.410, italics added.) Thus, the responding party may not use its own interrogatory responses in its own favor. The trial court did not abuse its discretion in sustaining plaintiff's objection to defendant's use of its own interrogatory responses as evidence supporting its statement of undisputed facts.

(*Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 450.)

At oral argument, Meta's counsel argued that responses to a deposition by written questions conducted under Federal Rule of Civil Procedure section 31 should be treated like testimony given in a deposition rather than like interrogatory responses. Counsel cited in support of this proposition *United States v. Salim* (1988) 855 F.2d 944 (*Salim*). In that case, the court considered whether Federal Rule of Civil Procedure 15 allowed the submission in a criminal proceeding of a deposition conducted by French authorities. The court described the deposition taken in France as

4

similar to a deposition on written questions conducted pursuant to Federal Rule of Civil Procedure 31.  The court further noted that Rule 31 allows the submission of both direct and cross-examination questions in writing.  (*Id.* at p. 951.)  It was important to the court's determination that the foreign deposition testimony was admissible in the criminal trial that the party who opposed admission of the evidence had had "ample opportunity to pose new questions to the witness after reviewing her responses to the earlier ones." (*Id.* at p. 954.)

In the current posture of this case, this court did not supervise the discovery that Plaintiffs were allowed to take of Meta (the MDL court supervised that discovery), and the court is unaware of whether Plaintiffs had the opportunity to follow-up on the responses to the deposition by written questions in order to pose additional questions and to probe the reliability of Meta's written responses.  Further, unlike the circumstances in *Salim*, where the foreign deposition involved an identified individual, the testimony at issue here was taken pursuant to Federal Rule of Civil Procedure section 31(a)(4) – questions directed to an organization in accordance with Rule 30(b)(6) – and Meta was required to designate a person to testify about information known or reasonably available to the organization.  Plaintiff objects that the person who verified the interrogatory responses did not claim personal knowledge.  The Declaration verifying the responses was signed by Nicole Lopez, but nothing in the excerpt provided with Meta's Motion indicates the title of the witness or gives any assurance that she possessed the requisite information necessary to qualify as a witness pursuant to Rule 30(b)(6), as required by Rule 31(a)(4).  The court sustains Plaintiff's objection to Exhibit 11 to the Simonsen Declaration.  Meta's Motion for Summary Judgment as to the Meta-affiliated Defendants is therefore denied.

**Defendants YouTube, LLC and Google LLC's Motion for Summary Judgment, or, in the Alternative, For Summary Adjudication on Plaintiff R.K.C.'s Remaining Causes of Action**

Court's Ruling:  The Motion is granted as to R.K.C.'s negligent failure to warn claim against Google related to YouTube.  The Motion is denied as to R.K.C.'s negligence claim.

Google moves for summary judgment or summary adjudication as to R.K.C.'s remaining causes of action for negligence and negligent failure to

5

warn.  Google also moves for "summary adjudication" of the following four allegedly wrongful acts committed by Google:

> 1. Exposing Plaintiff to negative comments posted by third parties on some of Plaintiff's videos;
> 2. Providing to Plaintiff the ability to receive (or not receive) comments and/or likes from third parties on his YouTube videos;
> 3. Presenting to Plaintiff short-form videos displayed in curated feeds through YouTube Shorts; and
> 4. Providing to Plaintiff the ability to receive notifications about third-party content posted on YouTube.

After filing the Motion, Google filed an Amended Memorandum of Points and Authorities (Google's Am. Mem.).  Herein, the court relies on and (where necessary) cites this amended memorandum.

As explained above in connection with Meta's Motion, a request for this court to enter summary adjudication as to discrete issues (i.e., whether Google caused Plaintiff legally cognizable harm by sending notifications about third-party content) is procedurally improper.  A party cannot move for summary adjudication of an *issue* within a cause of action when adjudication of that issue would not completely dispose of that cause of action. (See, e.g., *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1103.)  As the Code of Civil Procedure makes clear, "[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

This court's prior rulings have addressed arguments concerning the scope of permissible liability under Section 230 and the First Amendment.  In its briefing, Google cites a recent Fourth Circuit case, *M.P. by and through Pinckney v. Meta Platforms Inc.* (4th Cir. 2025) 127 F.4th 516, 526, for the proposition that a social media provider's arrangement and sorting of content are integral to the publishing function.  But in the Fourth Circuit case, liability was premised on the defendant's recommendations of content that allegedly caused radicalization of the minor and the minor's violence against her father.  (*Id.* at p. 520.)  This court already has ruled that, at least under precedents that currently bind this court, Section 230 immunity bars Plaintiffs from premising a negligence claim on Defendants' recommendations of content. (Ruling on Defendants' Motion to Strike Third-Party Misconduct and Online Challenge Allegations from Identified Short-Form Complaints, July 19, 2024, at pp. 11-14.)  By contrast, here R.K.C. presents evidence, as discussed below, from which a finder of fact could

conclude that YouTube's design features were a substantial factor in causing R.K.C.'s alleged harm.

Google's principal argument is that R.K.C.'s claims fail because they are barred by Section 230 and the First Amendment. In short, Google argues that this court should conclude that there is no disputed question of material fact as to whether R.K.C. was harmed by design features, or instead harmed by non-actionable third-party content.

Google's argument must be rejected, given that R.K.C. has introduced evidence that his use of YouTube's design features caused R.K.C.'s harms. R.K.C. has testified that he was harmed by Defendants' platforms, and that this harm was not based on any of the content that he saw on the platforms. (Autry Decl., Ex. 2, at 373:15—374:23.) Moreover, R.K.C. also relies on evidence submitted by expert witness Bagot, who concludes that certain design features on Google's platform YouTube were capable of causing the type of mental harms allegedly suffered by R.K.C. Although Google has challenged the admissibly of Bagot's general causation testimony, this court has determined that Bagot may testify at trial. Ultimately, the critical question of causation is one that must be determined by the jury.

Google's second principal argument is similar to its first. Google argues that R.K.C. "fails to carry his burden of creating a triable issue against [Google] on the core issue of causation." (Google's Am. Mem., at p. 22.) Google is correct that "[t]his case presents an especially thorny set of causation issues." (Google's Am. Mem., at p. 23.) Those "causation issues" must be resolved by a jury after all of the admissible evidence is presented at trial. Again, this court has already rejected Defendants' argument that Bagot cannot provide testimony regarding causation at trial.

Google argues that the failure to warn claim fails because R.K.C. is unable to present any evidence to show that any warning would have prevented the harm suffered by R.K.C. Importantly, both of the relevant experts have stated that they are not providing any opinion on warnings that could have been issued by Google regarding YouTube. (Defs' fact No. 44.) Google argues that the lack of any failure-to-warn testimony from the expert witnesses "is especially salient given the undisputed facts that Plaintiff opened his first YouTube account at the direction of his father, SS ¶ 45, that his father directed Plaintiff to open another YouTube account the day before filing this lawsuit so they can post (and watch) videos together on YouTube, SS ¶ 46, and Plaintiff continues to use YouTube even after filing this lawsuit, see R.K.C. Depo Tr. 35:13-16." (Google's Am. Mem., at p. 26.) R.K.C. fails to present any evidence to dispute these facts. Instead, R.K.C. objects to the introduction of testimony by R.K.C.'s father. The objection is overruled.

Moreover, in his Opposition, R.K.C. fails to address Google's argument that R.K.C. is unable to present evidence showing that Google's failure to warn about YouTube caused R.K.C.'s harm. Thus, the Motion is granted as to the failure to warn claim raised against Google.

**Motion for Summary Judgment, or, in the Alternative, Summary Adjudication** (filed by ByteDance against R.K.C.)

Court's Ruling: The Motion is denied.

ByteDance moves for summary judgment or summary adjudication as to R.K.C.'s claims for negligence and negligent failure to warn relating to his use of TikTok.

In addition to seeking adjudication of R.K.C.'s two causes of action, ByteDance (like other Defendants) appears to seek "summary adjudication" of certain issues, the resolution of which would not dispose of an entire cause of action. As explained above, such a request to resolve discrete "issues" is procedurally improper under California law. This court can only grant the Motion if it determines that one or more of R.K.C.'s *causes of action* fail.

ByteDance argues that R.K.C.'s claims are time-barred. ByteDance contends that Florida's four-year statute of limitations period applies to bar R.K.C.'s claims. The parties dispute whether Florida or California law applies. Because R.K.C. is still a minor, his claims against TikTok would not be time-barred under California law. (Cal. Code Civ. Proc., § 352, subd. (a).) However, R.K.C. has failed to demonstrate that section 352 would apply to his claims. It is undisputed that "R.K.C. has lived his entire life in Florida, which is where he claims to have used TikTok and experienced injuries resulting from that use." (Defs' Fact No. 2.) Under California law, a plaintiff's cause of action arises where the plaintiff is harmed. (*Cossman v. DaimlerChrysler Corp.* (2003) 108 Cal.App.4th 370, 378.) R.K.C.'s claims thus arose in Florida.

By statute in California, "[w]hen a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued." (Code Civ. Proc., § 361.)

8

R.K.C. fails to address section 361 in his Opposition. R.K.C. appears to argue that, as a factual matter, the cause of action arose in California because "TikTok committed its wrongs here." (Pl's Opp., at p. 10.) One problem with this argument is that there is no factual support for it: R.K.C. cites to the allegations in the Master Complaint (which do not constitute evidence), as well as to articles suggesting that TikTok opened a Los Angeles office in Culver City, and that TikTok, Inc. filed for corporate status in California in 2015. However, the presence in California of TikTok, Inc. would not allow a trier of fact to conclude that the harm suffered by R.K.C. was the result of an act occurring in California. R.K.C. fails to present any evidence or argument to suggest that harm occurring in Florida should be viewed as occurring in California whenever the defendant is legally domiciled in California. Accordingly, if R.K.C.'s claims are time-barred under Florida law, they must be dismissed.

ByteDance's argument regarding Florida's statute of limitations is based on the factual claim that R.K.C. began using TikTok in 2018. However, there is evidence that at least some of R.K.C.'s harms arose or developed later. For example, R.K.C. testified that he became addicted to TikTok in 2022. (Autry Decl., Ex. 2, at 304:8-9; see also Pl's Addt'l Fact No. 98.) Indeed, ByteDance itself questions the reliability of the factual claim that R.K.C. used TikTok before February 2022. (See ByteDance's Mot., at p. 22.) Under Florida, law, "a cause of action accrues when the injury occurs and the damage is sustained." (*Department of Transp. v. Soldovere* (Fla. 1988) 519 So.2d 616, 617.) Thus, the trier of fact could conclude that R.K.C.'s claims against ByteDance, which were filed in December 2023, are not time-barred.

ByteDance next argues that R.K.C.'s claims fail as a matter of law because there is no factual dispute that TikTok's design features did not cause R.K.C. harm. In making this argument, ByteDance contends that the expert testimony of Bagot (1) is inadmissible, and (2) insufficiently demonstrates TikTok's liability. This court has already determined that Bagot may provide causation testimony. Moreover, whether Bagot's opinions regarding whether TikTok is capable of causing R.K.C.'s harms are sufficient to prove liability at trial is a factual question that must be determined by the jury. Testimony by Bagot as to design features that were employed on TikTok as well as on other social media platforms is directly relevant to the question of whether those design features caused the type of harms allegedly suffered by R.K.C. here. There is no dispute that R.K.C., when using TikTok, was exposed to these features. The jury must therefore determine whether these design features on TikTok were the cause of R.K.C.'s harm. Moreover, because the question of whether TikTok's design

features caused R.K.C.'s harm must be resolved by the jury, Section 230 immunity does not bar R.K.C.'s claims against ByteDance.

ByteDance suggests that R.K.C.'s use of TikTok is too limited to be a substantial cause of his alleged harm. This argument is based on the factual claim that R.K.C. has used TikTok an average of 16 minutes per day. (See ByteDance's Mot., at p. 23.) However, the amount of time R.K.C. spent on TikTok is a disputed factual issue. (Pl. Sep. St. Nos. 26-27, at pp. 8-10.)

ByteDance argues that the failure to warn claim fails for the additional reason that "R.K.C. and his father would not have read the requested warnings." (ByteDance's Mot., at p. 25.) This factual claim is based on the fact that neither R.K.C. nor his father read TikTok's terms of service, privacy policy, community posts, or guidance for parents. But a claim for failure to warn might still be valid even if a harmed minor's parents did not read certain documents issued by the defendant. Here, ByteDance does not dispute that it failed to issue certain warnings, such as a warning that a minor's use of TikTok could cause certain mental health harm. A trier of fact might conclude from the available evidence that, if ByteDance *had* issued such warnings, such warnings may have served to alert R.K.C. and/or his father of the dangers allegedly associated with R.K.C.'s use of TikTok. R.K.C.'s father has testified that, if he had known about the dangers of Defendants' platforms, he would have attempted to help his son in some way. (See Autry Decl., Ex. 5, at 414:7-15.)

ByteDance's final argument is that the First Amendment bars R.K.C.'s claims. This court has already explained that "the allegedly addictive features of Defendants' platforms (such as endless scroll) cannot be analogized to how a publisher chooses to make a compilation of information, but rather are based on harm allegedly caused by design features that affect how Plaintiffs interact with the platforms regardless of the nature of the third-party content viewed." (Ruling, Jan. 8. 2025, at p. 15, internal citations and quotation marks omitted.) The First Amendment thus does not immunize ByteDance if its design features harm TikTok's users. As with the Section 230 argument, ByteDance claims that the First Amendment bars R.K.C.'s claims because it is the third-party content that caused R.K.C.'s harms. But, again, there is evidence in the record that R.K.C. was harmed by design features. The cause of R.K.C.'s harms is a disputed factual question that must be resolved by the jury.

**Defendant Snap Inc.'s Supplemented Motion for Summary Judgment, or, in the Alternative, Summary Adjudication**

Court's Ruling:  The Motion is denied.

Snap moves for summary judgment and/or adjudication on three grounds: (1) R.K.C.'s use of Snapchat was de minimis, and thus could not have been a substantial factor in causing his harm; (2) R.K.C.'s specific causation experts fail to provide admissible evidence on causation because they (a) rely on accounts that R.K.C. disavowed ever using, (b) credit self-reported use of Snapchat that is belied by Snap's data, and (c) did not undertake reliable causation inquiries; and (3) R.K.C.'s claims are barred by Section 230 and the First Amendment.

Before addressing these three arguments, the court must again make clear that it can only grant summary adjudication as to an entire cause of action.  The court must therefore reject Snap's invitation to adjudicate "certain aspects of R.K.C.'s claims."  (Snap's Supp. Not. Mot., at p. 2.)  As explained above in connection with other Defendants' motions, such a request is procedurally improper.

The first, second, and third arguments made by Snap can be summarized together as follows: Snap believes that there is no evidence to show that Snapchat's design features caused R.K.C.'s injuries.  Snap's Motion must be denied because R.K.C. has submitted evidence to dispute Snap's factual claims.  R.K.C. doubts the reliability of the dataset upon which Snap relies to claim that R.K.C.'s total use of Snapchat before filing this lawsuit was less than four minutes spread out over two non-consecutive days in 2022.  For example, Plaintiffs' expert witness Meredith McCarron, who offers testimony regarding analysis of large datasets, user behavior metrics, and digital evidence forensics, has concluded that "Snap's time spent and sessions data can now be considered to represent a reliable floor (*but not ceiling*) for the group one trial bellwethers' usage (a) for the accounts produced and (b) over the time periods covered by the data."  (McConnell Decl., Ex. 9, ¶ 3, emphasis added.)  The reliability of Snap's data is thus a disputed question of fact.  There also are disputed fact issues regarding R.K.C.'s claim that he opened Snapchat accounts in addition to the account referred to in Snap's data. R.K.C. has claimed that he used Snapchat "7 days per week, approximately 15 times per day, for approximately 240 minutes per day."  (See Pl's Fact No. 102.)  And R.K.C. has submitted evidence that could call into question Snap's claim that R.K.C. only used Snapchat on two days in 2022.  (See R.K.C.'s Third Amended Plaintiff Fact Sheet, Autry Decl., Ex. 3, at pp. 63-64; see also Autry Decl.,

11

Ex. 22, at 80:2-9 [evidence suggesting that R.K.C. used social media platforms every night]; Autry Decl., Ex. 2, at 254:11-20 [R.K.C. testified that he began using Snapchat in 2018].) In ruling on a motion for summary judgment, a court may not weigh a plaintiff's evidence against a defendant's as though the court were sitting as a trier of fact. "[I]f the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, [the court] must conclude its consideration and deny the defendants' motion." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.) Such is the case here.

      R.K.C. also offered testimony that could support a conclusion that R.K.C. was addicted to Snapchat. (See Autry Decl., Ex. 2, at 370:24—371:2.) Because there is evidence that (1) R.K.C. used Snapchat and there is a substantial dispute over the amount of time R.K.C. used Snapchat, and (2) Snapchat's design features caused the types of harms allegedly suffered by R.K.C., a trier of fact could conclude that Snapchat's design features were a substantial factor in causing R.K.C.'s alleged harms. Snap's causation arguments do not bar R.K.C.'s claims from proceeding to trial. This court has addressed Snap's Section 230 and First Amendment arguments in prior opinions and in the concurrent Ruling on Snap's Motion for Summary Judgment as to K.G.M.

      Snap also argues that R.K.C.'s failure to warn claim fails because there is no evidence that Snap's alleged failure to warn caused R.K.C.'s harms. This factual claim is based on the fact that R.K.C. has opened Snapchat accounts since the filing of this litigation. However, because this case alleges social media addiction, it is not necessarily correct to judge the efficacy of a warning when hypothetically given *after* that addiction has developed. Here, the trier of fact might conclude from the available evidence that, if Snap *had* issued appropriate warnings before and/or shortly after R.K.C. began using Snapchat, such warnings may have served to alert R.K.C. and/or his father of the dangers associated with R.K.C.'s use of Snapchat. R.K.C.'s father has testified that, if he had known about the dangers of Defendants' platforms, he would have attempted to help his son in some way. (See Autry Decl., Ex. 5, at 414:7-15.) Summary adjudication of Plaintiff's failure to warn claim is denied.

Date: 11/05/2025

                                              Carolyn B. Kuhl / Judge
                                              The Honorable Carolyn Kuhl
                                              Judge of the Superior Court