Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments, Inc. f/k/a Facebook Payments, Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Breathitt County Board of Education v. Meta Platforms, Inc., et al.* No. 23-cv-01804<br><br>*Charleston County School District v. Meta Platforms, Inc., et al.* No. 23-cv-04659<br><br>*DeKalb County School District v. Meta Platforms, Inc., et al.* No. 25-cv-02310<br><br>*Board of Education of Harford County v. Meta Platforms Inc., et al.*, No. 23-cv-03065<br><br>*Irvington Public Schools v. Meta Platforms, Inc., et al.* No. 23-cv-01467<br><br>*Tucson Unified School District v. Meta Platforms, Inc., et al.*, No. 24-cv-01382 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR (PHK)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE CONFIDENTIAL EXHIBITS ATTACHED TO SCHOOL DISTRICT PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date: November 19, 2025<br>Time: 2:00 PM<br>Place: Courtroom 1, 4th Floor |

**NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE THAT, at 2:00 P.M. on November 19, 2025, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants will and hereby do move this Court, under the Federal Rules of Civil Procedure and the Court's inherent authority, for an order striking exhibits attached to Plaintiff School Districts' Omnibus Opposition to Defendants' Motions for Summary Judgment.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, any Reply or other papers submitted in connection with the Motion, and any other matters presented at the time of the hearing.

*[Counsel listed on signature pages]*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. THE COURT HAS INHERENT POWER TO STRIKE IRRELEVANT AND OVERBROAD EXHIBITS. ............................................................................................... 2

III. THE COURT SHOULD STRIKE THE CONFIDENTIAL EXHIBITS ATTACHED TO PLAINTIFFS' OMNIBUS OPPOSITION IN FULL OR IN PART. ............................... 4

    A. The Court Should Strike All 1,073 Confidential Exhibits Attached to the Omnibus Opposition. .................................................................................................... 4

    B. In the Alternative, the Court Should Strike the "Breach" Exhibits in Their Entirety and Order Plaintiffs to Refile Only the Relevant and Cited Excerpts of Other Exhibits. ........................................................................................................ 9

IV. CONCLUSION .................................................................................................................. 11

I.    INTRODUCTION

At the last Case Management Conference, the Court warned that it would "sanction [a party] if [it] think[s] that [the party is] attaching documents [to briefs] for the sake of … getting something out there"—in other words, "that [the party is] using a backdoor" to unseal another party's confidential material. 10/24/25 CMC Tr. at 59:20–25.  The Court's admonition came in response to the concern expressed by Defendants that Plaintiffs may "attach hundreds of documents to their summary judgment oppositions in an effort to try to get those documents unsealed[,] whether they have something to do with the summary judgment motion or not." *Id.* at 58:17–20.  Plaintiffs, in response, assured the Court that "any document [they] attach to [their] summary judgment [opposition] will be pertinent to the summary judgment motion." *Id.* at 60:5–12.  They represented to the Court that they were "not just going to use this as a dumping ground for the press to go hunting." *Id.* at 60:13–14.

Just two weeks later, Plaintiffs filed their Omnibus Opposition to Defendants' Motions for Summary Judgment (the "Omnibus Opposition" or "Brief") (ECF 2414-1 (corrected version)) and attached ***1,187 exhibits***, 1,073 of which contain material that was designated Confidential by Defendants (the "**Confidential Exhibits**").  The vast majority of the exhibits are cited in a 173-page section of Plaintiffs' Brief that does not relate to any issue raised in Defendants' summary judgment motions. *Id.* at 12–185 (arguing there is a genuine dispute of material fact whether Defendants *breached* a duty, when Defendants did not seek summary judgment on the grounds that there were no disputed material facts on the issue of breach).  Fifty-one of the exhibits are not cited in the Brief at all.  And while Plaintiffs cite to specific pages of the exhibits in their Brief using pin-cites, they generally filed the exhibits in full—without any attempt to excerpt relevant portions of deposition transcripts or company documents, many of which are hundreds of pages long.  For example, in citing a witness's answer to one question in a two-day deposition, Plaintiffs attached the entire deposition as an exhibit.  As a result, Plaintiffs have, through their Brief, injected approximately ***70,000 pages of Defendants' designated Confidential material*** into

the record.  The exhibits to the Brief are so voluminous that Plaintiffs had to spread most of them out across 29 different docket entries that took a full business day to file.[1]

"Inundating the trial court with [a] deluge of confidential materials," as Plaintiffs have done here, "[is] brute litigation overkill."  *Overstock.com, Inc. v. Goldman Sachs Grp., Inc.*, 231 Cal. App. 4th 471, 499 (2014).  Unsurprisingly, other courts confronting this same issue have admonished this type of behavior in the strongest terms and held that "courts need not, and should not, put up with this kind of abuse."  *Id.*  Defendants respectfully submit that in these circumstances, Plaintiffs' conduct is sanctionable, and the appropriate sanction is to strike all 1,073 of the Confidential Exhibits attached to their Brief without leave to re-file.  In the alternative, the Court should (1) strike the Confidential Exhibits cited in support of Plaintiffs' facially irrelevant "breach" argument and (2) order that Plaintiffs re-file the remainder of the Confidential Exhibits—to the extent actually necessary to oppose Defendants' summary judgment arguments—limited to only the excerpts cited in the Omnibus Opposition plus a reasonable number of adjoining pages if needed to provide context.[2]

## II.   THE COURT HAS INHERENT POWER TO STRIKE IRRELEVANT AND OVERBROAD EXHIBITS.

"[D]istrict courts have inherent power to control their docket," which "includes the power to strike items from the docket as a sanction for litigation conduct."  *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).  Courts regularly exercise this power to strike exhibits filed in response to summary judgment motions when they have no material connection to the issues raised in those motions—and so are irrelevant and inadmissible.  *See*, *e.g.*, *Fairfield v. Khoo*, 2021 WL 1178261, at *1 (E.D. Cal. Mar. 29, 2021) ("Because defendants' summary judgment motion is limited to the issue of administrative exhaustion . . . all [plaintiff's] exhibits unrelated to exhaustion will be stricken from the record.");

---

[1] ECF Nos. 2358, 2361, 2362, 2363, 2364, 2365, 2367, 2371, 2372, 2374, 2375, 2376, 2377, 2378, 2379, 2380, 2381, 2383, 2386, 2387, 2388, 2390, 2391, 2393, 2394, 2396, 2397, 2398, 2399.

[2] Defendants seek to strike *only* those exhibits containing *Defendants'* Confidential material; they do not seek to strike the exhibits containing only Plaintiffs' Confidential material or exhibits that contain only public material.  Nor are Defendants moving to strike any of the other material filed by Plaintiffs on November 7, including any of the exhibits attached to Plaintiffs' six school district-specific oppositions or their three Rule 702 oppositions—which Defendants estimate to be over 15,000 pages of exhibits.

1   *Carrasco v. N.M. Dep't of Workforce Sols.*, 2013 WL 12092509, at **10–13 (D.N.M. Mar. 19, 2013)
2   (striking numerous exhibits submitted with response to summary judgment motion because they were
3   "irrelevant to any summary judgment issues"); *see also Hawn v. Exec. Jet Mgmt., Inc.*, 2007 WL 1381618,
4   at *3 (D. Ariz. May 9, 2007) (granting motion to strike exhibits because they were irrelevant and "given
5   the nature and quantity of the [exhibits], . . . their prejudicial value substantially outweighs their probative
6   value"), *aff'd*, 615 F.3d 1151 (9th Cir. 2010).

7         Courts should especially exercise their authority to strike irrelevant exhibits in circumstances like
8   those presented here: when a party needlessly files a significant number of exhibits, which will in turn
9   impose significant sealing-related burdens. In *Overstock*, for example, the plaintiffs "submitted a veritable
10  mountain of confidential materials in opposition to defendants' motions for summary judgment,"
11  including that "[e]ntire documents were submitted, when only a page or two were identified as containing
12  matter relevant to the issues" and "[m]ultiple documents were submitted to support a claim, when one
13  would have sufficed." 231 Cal. App. 4th at 498–99. The "plaintiffs submitted large swaths of 16
14  deposition transcripts and all 791 of defendants' responses to requests for admission, but cited only
15  minimal excerpts of the transcripts and a handful of mundane responses authenticating documents. They
16  similarly submitted entire documents, but cited only a page or two, sometimes only a line or two." *Id.* at
17  498 n.16. The Court of Appeal described those antics as "brute litigation overkill." *Id.* at 499.

18        This type of conduct, the Court of Appeal explained, is particularly problematic because, in light
19  of the rules governing when documents may be sealed, parties (and the Court) must undergo an extensive
20  process to determine when documents have been properly filed under seal. "As every court to consider
21  the question has observed, the right of access applies only to discovery materials that are *relevant* to the
22  matters before the trial court." *Id.* at 497 (emphasis in original). "It does not extend to irrelevant materials
23  submitted to the court out of laziness in reviewing and editing evidentiary submissions, or worse, out of a
24  desire to overwhelm and harass an opponent." *Id.* at 500. And so, "the mere act of submitting discovery
25  materials in support of or in opposition to a pretrial motion" does not "imbue[] the materials with
26  constitutional import, triggering the sealed records rules." *Id.* When a party (as here) engages in the type
27  of conduct in *Overstock*, it requires other parties to undertake vast, burdensome, and unnecessary sealing
28  analysis—and requires the Court to rule on all of it. Accordingly, "courts need not, and should not, put

up with this kind of abuse" and parties should be "as sparing as possible in their use of protected materials." *Id.* at 499.  An order striking filed materials is appropriate when, rather than being judicious, a party elects to dump, onto the docket, a significant number of "unnecessary," "irrelevant," and duplicative exhibits.  *Id.* at 499–500.  Indeed, "when a party submits a tsunami of discovery materials subject to a protective order, the trial court should welcome a well-honed motion to strike to winnow down the material to that which is *relevant* to the contentions advocated by the proffering party."  *Id.* at 500 (emphasis in original).

### III. THE COURT SHOULD STRIKE THE CONFIDENTIAL EXHIBITS ATTACHED TO PLAINTIFFS' OMNIBUS OPPOSITION IN FULL OR IN PART.

Despite the Court's warning, Plaintiffs used their Omnibus Opposition as a "backdoor" to try to get a significant number of Defendants' Confidential documents "out there."  10/24/25 CMC Tr. at 59:20–60:25.  Many of those documents are entirely irrelevant to the issues raised in Defendants' summary judgment motions, and Plaintiffs decision to nonetheless file them will impose significant sealing-related burdens on Defendants and the Court.  The Court should strike all 1,073 Confidential Exhibits attached to Plaintiffs' Omnibus Opposition as a sanction for Plaintiffs' improper conduct.  *See Ready Transp.*, 627 F.3d at 404.  In the alternative, the Court should (1) strike the Confidential Exhibits cited in support of Plaintiffs' irrelevant "breach" argument, and (2) order Plaintiffs to re-file the remaining exhibits limited to only the relevant/cited excerpts.

#### A. The Court Should Strike All 1,073 Confidential Exhibits Attached to the Omnibus Opposition.

The Court should strike the Confidential Exhibits in full for at least three reasons.  *First*, Plaintiffs' Omnibus Opposition attaches a vastly overbroad number of exhibits containing Defendants' Confidential information.  The sheer number of Confidential Exhibits—1,073—speaks for itself.  Notably, 51 of the exhibits attached to Plaintiffs' Omnibus Opposition are not cited *anywhere* in the Brief.  This contradicts Plaintiffs' assurance to the Court at the October CMC that "any document we attach to our summary judgment motion … will be cited in that opposition brief so that it's clear why it's relevant."  10/24/25 CMC Tr. at 60:7–12.  It also contravenes basic standards governing the attachment of documents to briefing.  *See Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, 2019 WL 3804667, at *5 (N.D. Cal. Aug. 13, 2019) (refusing to consider "thousands of pages of documents" attached to briefs when

"relatively few of those documents [were] actually cited in the parties' briefs"; instead only considering the portions of the record "that [were] pin-cited or otherwise identified with particularity").

Plaintiffs have now conceded that striking these 51 uncited exhibits is appropriate,[3] but they downplay the significance of their decision to file those exhibits at all.  They note that 51 exhibits constitute only a modest fraction of the total number of exhibits they filed—which says more about the astronomical number of exhibits they filed—but regardless, 51 documents, in absolute terms, is a staggering amount.  More importantly, these arguments entirely miss the point: Plaintiffs' decision to file 51 patently irrelevant documents demonstrates that they engaged in "brute litigation overkill."  *Overstock*, 231 Cal. App. 4th at 499.[4]

*Second*, although Plaintiffs *cited* to specific pages of certain exhibits in their Brief, they generally attached **the entirety of every single exhibit**, including 127 full deposition transcripts, to their Omnibus Opposition—no matter how lengthy the exhibit, and regardless of whether the pin-cite was to **just one or two pages** of the exhibit.  For example, Plaintiffs attached a 186-page Confidential YouTube document as Exhibit 776.  *See* ECF 2387-1 (filed under seal).  Plaintiffs' Brief cites that exhibit once, quoting only a single sentence on a single page.  *See* ECF 2414-1 at 168; *see also, e.g.*, ECF 2414-1 at 154 & ECF 2397-2 (attaching a 445-page deposition transcript as Exhibit 1052 despite citing only two pages of the transcript); ECF 2414-1 at 28, 31-32 & ECF 2365-28 (attaching a 141-page Highly Confidential Meta document as Exhibit 128 despite citing to only five pages); ECF 2414-1 at 31 & ECF 2365-30 (attaching a 552-page deposition transcript as Exhibit 130 despite citing only two pages of the transcript); ECF 2414-1 at 137 & ECF 2390-23 (attaching a 440-page Confidential Snap document as Exhibit 848 despite citing only 12 pages and never quoting the document); ECF 2414-1 at 97, 99 & ECF 2377-31 (attaching a highly confidential 101-page TikTok document as Exhibit 481 despite only citing one page).  Likewise, where a deposition stretched over multiple days, Plaintiffs attached *both* volumes of the transcript, even while only citing testimony from one day.  *See, e.g.*, ECF 2414-1 at 131 & ECF 2391-19 (attaching a 901-page, two-

---

[3] The Parties are working on a filing that would effectuate the striking or withdrawal of these exhibits.

[4] Plaintiffs also overlook that these 51 exhibits remained attached to their Brief even *after* they took the opportunity to file a "corrected" version two days after the original Brief was filed (to remove YouTube Confidential material they had mistakenly filed on the public docket).  *See* ECF 2413, 2414.

1    volume deposition transcript as Exhibit 869 despite citing only two pages from the second volume). Quite
2    simply, "[t]his tactic of bulk-filing superfluous, unexcerpted exhibits is improper." *Hughes v. Stryker*
3    *Sales Corp.*, 2010 WL 1961051, at *3 n.6 (S.D. Ala. May 13, 2010) (citing cases), *aff'd sub nom. Hughes*
4    *v. Stryker Corp.* 423 F. App'x 878 (11th Cir. 2011); *see also* Fed. R. Civ. P. 56(c)(1)(A) (party asserting
5    that a fact is genuinely disputed must support the assertion by "citing to *particular parts* of materials in
6    the record" (emphasis added)).[5]

7        Plaintiffs declined Defendants' request for them to withdraw the exhibits and re-file only the
8    cited/relevant excerpts. Plaintiffs asserted that they provided pin-cites directing the Court to the relevant
9    pages, but their practice of attaching entire documents—while conceding (via pin-cites) that only a few
10   pages of each of those documents is even potentially relevant—shows that the vast majority of the material
11   they have dumped into the record is not relevant to the issues presented in Defendants' motions. *See*
12   *Overstock*, 231 Cal. App. 4th at 499 n.16 (recommending that exhibits be stricken where the plaintiffs
13   "similarly submitted entire documents, but cited only a page or two, sometimes only a line or two").

14       Nor can Plaintiffs argue that they attached the entirety of each exhibit to provide the Court with
15   the necessary "context." As an initial matter, as discussed above, Plaintiffs' argument is foreclosed by
16   the principle that parties should cite the relevant portions of documents, explain why they were relevant,
17   and then file only those relevant portions. They cannot indiscriminately file entire documents based on
18   an unsubstantiated need to provide "context."

19       In any event, Plaintiffs fail to explain how each and every page of a 300+ page deposition transcript
20   (for example) could possibly provide necessary or even helpful "context" for understanding a quote that
21   appears on just one page of the transcript. And even assuming a few extra pages on either side of the
22   quoted or relied-upon material (or located elsewhere in the transcript), Plaintiffs should append those

---

[5] Plaintiffs have referenced the *JUUL* litigation, claiming that the plaintiff there attached 300+ exhibits to their summary judgment oppositions, which they claim is comparable to what they did here because the six districts essentially filed 200 exhibits each. That is a specious argument, at best. First, the school districts did not each file 200 exhibits—each one filed all 1,200+ exhibits (more than three times what the plaintiff in *JUUL* filed) because each one incorporates the Omnibus Opposition in full in its individual opposition. Second, it bears noting that it appears that the *JUUL* plaintiff excerpted its exhibits and did not file whole documents and transcripts. *See* Simonsen Decl., Ex. 1.

additional pages, not the entirety of every document, no matter how long, and no matter how narrow the pin-cite. Nor can Plaintiffs justify their tactics by assuming (without basis) that Defendants will accuse them of "cherry-picking."[6] At bottom, to the extent Plaintiffs seek to defeat Defendants' motions by referring the Court to selective excerpts from Defendants' Confidential material, it is *they* who should do the work of identifying the other portions of that material that provide the necessary context. Instead, in an apparent effort to bury the necessary context in a sea of paper, they submitted the entirety of each exhibit and have suggested the *Court* may go hunting for it.

*Third*, Plaintiffs' brazen overuse of Confidential exhibits will impose extraordinary burdens on the Court and Defendants due to sealing motion practice. Plainly, requiring Defendants to analyze 70,000 pages of (largely irrelevant) material to determine whether it meets sealing standards, and securing declarations substantiating any sealing claims made, is an abuse of process. The Court and its staff will also eventually be required to expend resources needlessly resolving all resulting sealing requests—many of which, again, will pertain to documents, or large portions of documents, that have no bearing on the summary judgment motions. Courts properly strike exhibits in precisely these types of circumstances where, given the "nature and quantity" of the exhibits, "their prejudicial value substantially outweighs their probative value." *Hawn*, 2007 WL 1381618, at *3.

Plaintiffs have pointed to Defendants' minimal redactions to date in an effort to downplay the significant sealing burden on Defendants, but this argument, again, has it entirely backwards: to determine whether a document warrants unsealing in its entirety or near-entirety, Defendants must closely analyze every single word of every single line of the document, ensuring no competitively sensitive or trade-secret information, or information that could enable bad actors to evade detection systems, is unwittingly revealed.[7] Defendants make these points only to underscore the *reason* it is an abuse of litigation to attach

---

[6] Plaintiffs' argument also overlooks that Defendants can, of course, address any "cherry-picking" concerns by supplying the Court with any necessary additional pages from the same exhibit on reply.

[7] Contrary to Plaintiffs' assertion, while OCR technology and AI can help identify some straightforward candidates for redaction, like the names of *known* lower-level employees or known PII (like email addresses, phone numbers and the like), it cannot be relied upon to comprehensively identify every piece of sensitive material that defense counsel are responsible, as stewards of their clients' Confidential documents, for protecting.

tens of thousands of pages of the other side's confidential material to a summary judgment brief. "As every court to consider the question has observed, the right of access applies only to discovery materials *that are relevant* to the matters before the trial court," *Overstock*, 231 Cal. App. 4th at 497 (emphasis altered); forcing Defendants to undertake sealing determinations for tens of thousands of documents having no relevance to the issues before the Court is unwarranted, and sanctionable.

Plaintiffs also seek to downplay the burden their approach imposes on Defendants by suggesting Defendants may already have applied redactions to some of these documents in the JCCP. As an initial matter, whether a document has been unsealed in another proceeding is irrelevant to whether Plaintiffs are justified in attaching the document here. And, in any event, Plaintiffs are mistaken. The only documents for which redactions have already been prepared in the JCCP are the parties' general causation expert reports and deposition transcripts (and the relatively small number of exhibits cited by the parties in their *Sargon* motions as to general causation experts). Those reports and deposition transcripts aren't attached to the Omnibus Opposition; they're attached to Plaintiffs' Rule 702 oppositions (which Defendants aren't moving to strike). The JCCP parties and court are still in the midst of sealing practice as to every other major set of Trial Pool 1 motions, including Defendants' motions for summary judgment and plaintiffs' motions for summary adjudication. Furthermore, Judge Kuhl has suspended Meta's deadline to move to seal the 4,000 pages of exhibits that JCCP plaintiffs attached to their oppositions to Meta's summary judgment motions, pending a decision on a motion to strike those exhibits that Judge Kuhl granted Meta leave to file.

In short, striking the Confidential Exhibits in their entirety is an appropriate and tailored sanction for Plaintiffs' misconduct. And, for clarity, Plaintiffs' *brief* itself will remain on the docket, preserving Plaintiffs' arguments and the public's access to the core of the dispute.[8]

---

[8] Defendants have agreed, at Plaintiffs' insistence, to meet and confer on proposed redactions to the Omnibus Opposition by November 19 (Meta and YouTube) and November 21 (Snap and TikTok), so that it can be filed on the docket by the end of the week if the Parties agree that it may be unsealed. *See* CMO 28 at 2 (requiring parties to "unseal information immediately once the parties agree that a document, or information redacted from a document, should not be sealed"). In exchange, Plaintiffs have agreed to stipulate to a stay of the parties' sealing-related conferral deadline, and briefing deadlines, with respect to (continued…)

**B.    In the Alternative, the Court Should Strike the "Breach" Exhibits in Their Entirety and Order Plaintiffs to Refile Only the Relevant and Cited Excerpts of Other Exhibits.**

If the Court does not strike the entirety of the 1,073 Confidential Exhibits attached to Plaintiffs' Omnibus Opposition, it should still (1) strike the Confidential Exhibits cited in support of Plaintiffs' irrelevant "breach" argument without leave to re-file and (2) order Plaintiffs to re-file only the relevant or cited excerpts of the remainder of the Confidential Exhibits (to the extent they are actually necessary to oppose Defendants' summary judgment arguments).

The vast majority of the Confidential Exhibits attached to Plaintiffs' Brief are cited in a section of the Omnibus Opposition titled: "Defendants breached their duty of care." ECF 2414-1 at 12–185.[9] But Defendants did not move for summary judgment on whether Defendants breached a duty of care to students, parents, or School Districts. Defendants raised four principal arguments in their motions:

1. School Districts "lack[] competent evidence of causation";
2. School Districts "cannot show [they are] entitled to past damages";
3. Their "proposed 15-year 'strategic plan' is not a cognizable remedy under the law"; and
4. Defendants do not owe School Districts a duty to warn, and Schools Districts lack evidence of causation on their failure-to-warn claims.

*See, e.g.*, Dkt. 2288 (Breathitt MSJ) at 12, 20, 27, 34–35.[10]

Thus, Plaintiffs' arguments for why Defendants breached their duty of care attack a strawman. Defendants made no argument in those motions about the issue of breach. *See Fairfield*, 2021 WL 1178261, at *1 (striking all of the plaintiff's exhibits "unrelated to exhaustion" where "defendants'

---

the Omnibus Opposition exhibits pending the Court's resolution of this Motion to Strike. Of course, that stay alone does not relieve Defendants of the burdens associated with Plaintiffs' decision to file a large number of irrelevant exhibits. Absent relief, once the stay is lifted, Defendants would have to make sealing determinations for the 70,000 pages of Confidential Exhibits at issue, confer with Plaintiffs on those determinations, and brief any disputes with the Court. Plaintiffs have agreed to allow Defendants 30 days to make those determinations if the Court denies their motion, but Defendants should not have to make those determinations at all—or, at least, for anything other than the cited/relevant pages.

[9] If the Court grants the motion to strike as to these exhibits, Defendants can file a revised proposed order listing the specific exhibits.

[10] In *Breathitt*, Defendants also moved on their affirmative defense of statute of limitations, *id.* at 38, and in all cases, Meta also moved for summary judgment as to specific non-operating Meta entities.

summary judgment motion is limited to the issue of administrative exhaustion"); *Carrasco*, 2013 WL 12092509, at **10–13 (striking numerous exhibits that were "irrelevant to any summary judgment issues"). Defendants did question whether there is any duty to begin with, or whether any alleged breach caused any damages. But documents purportedly showing that Defendants *did* breach an alleged duty, or *did* fail to warn of the risks Plaintiffs' claim, are not relevant to and will not aid the Court in resolving those issues.

During the meet-and-confer on this motion, Plaintiffs claimed that the exhibits cited in the "breach" section of their Omnibus Opposition are relevant to showing that Defendants allegedly interfered with the public right to health, safety, and education (despite being described and cited in the "breach" section). But this is likewise irrelevant to Defendants' arguments for summary judgment. Defendants argued that Plaintiffs lacked evidence that Defendants' purportedly actionable conduct caused a nuisance in any specific bellwether district. ECF 2288 (Breathitt MSJ) at 12. Causation turns entirely on whether Plaintiffs can show that a particular bellwether plaintiff has suffered harm from Defendants' purportedly actionable conduct; Defendants' documents, none of which mention anything about the specific bellwether districts, are necessarily irrelevant to that question. No matter how Defendants designed, operated, and maintained their platforms, whether negligently or not, if Plaintiffs cannot show effects in their districts, their claims fail. To demonstrate those effects in their districts, Plaintiffs should have provided applicable evidence from their own files and witnesses (to the extent any exists), rather than general evidence from Defendants which makes no specific claim regarding Plaintiffs' districts. Plaintiffs, however, failed to offer any evidence that a single student in a single bellwether jurisdiction ever used the features at issue, much less that those features are the cause of the School Districts' alleged expenditure of financial resources. *See, e.g.*, ECF 2288 (Breathitt MSJ) at 2, 5–6, 9–13. Plaintiffs' decision to instead cite to *over 1,000* exhibits in support of a strawman argument is facially improper. *See Overstock*, 231 Cal. App. 4th at 498–99 (recommending striking summary judgment exhibits where "[m]ultiple documents were submitted to support a claim, when one would have sufficed"). Because the documents

are irrelevant to any issue now before the Court, they should be stricken without leave to re-file. *See Fairfield*, 2021 WL 1178261, at *1; *Carrasco*, 2013 WL 12092509, at *10–13.[11]

Finally, in addition to striking the Confidential Exhibits cited in support of Plaintiffs' "breach" argument, the Court should strike the remaining Confidential Exhibits and order Plaintiffs to re-file them, but limited *only* to the relevant/cited pages (and whatever surrounding context, selected in a targeted manner, Plaintiffs believe is necessary to present the quoted or relied-upon material in an even-handed way). *See supra* Part III.A. This will ensure the only materials before the Court are *relevant* materials.

IV. **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to strike the Confidential Exhibits attached to Plaintiffs' Omnibus Opposition without leave to re-file. Alternatively, the Court should (1) strike the Confidential Exhibits cited in support of Plaintiffs' irrelevant "breach" argument without leave to re-file; and (2) strike the remaining Confidential Exhibits with instructions to Plaintiffs to re-file only the relevant and cited excerpts.

---

[11] To the extent the Court wishes to review the full summary judgment briefing before determining that the exhibits are irrelevant and thus should be stricken, Defendants respectfully submit that the Court could simply defer resolution of this motion until after it has resolved the summary judgment motions; in that case, however, Defendants would respectfully request that their sealing deadlines with respect to the Confidential Exhibits be suspended until the Court resolves the motion to strike. And to the extent the Court declines to strike in their entirety the exhibits concerning breach-of-duty, it should nonetheless still require Plaintiffs to re-file those exhibits, but shortened to include only the precise excerpts Plaintiffs expressly rely upon.

| | | |
|---|---|---|
| 1 | DATED: November 14, 2025 | COVINGTON & BURLING LLP |
| 2 | | By: /s/ Ashley M. Simonsen |
| 3 | | Ashley M. Simonsen, SBN 275203<br>COVINGTON & BURLING LLP |
| 4 | | 1999 Avenue of the Stars<br>Los Angeles, CA 90067 |
| 5 | | Telephone: (424) 332-4800 |
| 6 | | Facsimile: + 1 (424) 332-4749<br>Email: asimonsen@cov.com |
| 7 | | |
| 8 | | Phyllis A. Jones, *pro hac vice*<br>Paul W. Schmidt, *pro hac vice* |
| 9 | | COVINGTON & BURLING LLP<br>One City Center |
| 10 | | 850 Tenth Street, NW<br>Washington, DC 20001-4956 |
| 11 | | Telephone: + 1 (202) 662-6000<br>Facsimile: + 1 (202) 662-6291 |
| 12 | | Email: pajones@cov.com |
| 13 | | *Attorney for Defendants Meta Platforms, Inc.* |
| 14 | | *f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook* |
| 15 | | *Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot* |
| 16 | | *Zuckerberg* |
| 17 | | KING & SPALDING LLP |
| 18 | | By: /s/ Geoffrey M. Drake |
| 19 | | Geoffrey M. Drake, *pro hac vice* |
| 20 | | TaCara D. Harris, *pro hac vice*<br>1180 Peachtree Street, NE, Suite 1600 |
| 21 | | Atlanta, GA 30309-3521<br>Telephone: (404) 572-4600 |
| 22 | | Facsimile: (404) 572-5100<br>Email: gdrake@kslaw.com |
| 23 | |         tharris@kslaw.com |
| 24 | | David P. Mattern, *pro hac vice* |
| 25 | | KING & SPALDING LLP<br>1700 Pennsylvania Avenue, NW, Suite 900 |
| 26 | | Washington, DC 20006-4707<br>Telephone: (202) 737-0500 |
| 27 | | Facsimile: (202) 626-3737<br>Email: dmattern@kslaw.com |
| 28 | | |

1
2           Bailey J. Langner (SBN 307753)
          KING & SPALDING LLP
3           50 California Street, Suite 3300
          San Francisco, CA 94111
4           Telephone: (415) 318-1200
          Facsimile: (415) 318-1300
5           Email: blangner@kslaw.com

6           *Attorneys for Defendants TikTok Inc., ByteDance Inc.,*
7           *TikTok Ltd., ByteDance Ltd., and TikTok LLC*

8
9           MUNGER, TOLLES & OLSON LLP
          By: */s/ Jonathan H. Blavin*
10          Jonathan H. Blavin, SBN 230269
          MUNGER, TOLLES & OLSON LLP
11          560 Mission Street, 27th Floor
          San Francisco, CA 94105-3089
12          Telephone: (415) 512-4000
          Facsimile: (415) 512-4077
13          Email: jonathan.blavin@mto.com

14
          Rose L. Ehler, SBN 29652
15          Victoria A. Degtyareva, SBN 284199

16          MUNGER, TOLLES & OLSON LLP
          350 South Grand Avenue, 50th Floor
17          Los Angeles, CA 90071-3426
          Telephone: (213) 683-9100
18          Facsimile: (213) 687-3702
          Email: rose.ehler@mto.com
19          Email: victoria.degtyareva@mto.com

20
21          ALLISON BROWN, *pro hac vice*
22          KIRKLAND & ELLIS LLP
          2005 Market Street, Suite 1000 Philadelphia, PA 19103
23          Tel.: (215) 268-5000
          Email: alli.brown@kirkland.com
24
25          JESSICA DAVIDSON, *pro hac vice*
          JOHN J. NOLAN, *pro hac vice*
26          KIRKLAND & ELLIS LLP
          601 Lexington Avenue New York, NY 10022
27          Tel.: (212) 446-4800
          Email: jessica.davidson@kirkland.com
28          Email: jack.nolan@kirkland.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
<u>By: /s/ Brian M. Willen</u>
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White (SBN 309075)
Samantha A. Machock (SBN 298852)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: cchiou@wsgr.com
Email: mdonohue@wsgr.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000

Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC and Google LLC*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Yardena R. Zwang-Weissman*
Yardena R. Zwang-Weissman (SBN 247111)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238
Email: yardena.zwang-weissman@morganlewis.com

Brian Ercole (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416
Email: brian.ercole@morganlewis.com

Stephanie Schuster (*pro hac vice*)
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: 202.373.6595
Email: stephanie.schuster@morganlewis.com

*Attorneys for Defendants YouTube, LLC and Google LLC*

## ATTESTATION

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: November 14, 2025

By:     */s/ Ashley M. Simonsen*
        Ashley M. Simonsen