[Parties and Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3084 |
| | Case No. 4:22-md-03047-YGR (PHK) |

This document relates to:

*Breathitt County Board of Education v. Meta Platforms, Inc., et al. No. 23-cv-01804*

*Charleston County School District v. Meta Platforms, Inc., et al. No. 23-cv-04659*

*DeKalb County School District v. Meta Platforms, Inc., et al. No. 25-cv-02310*

*Board of Education of Harford County v. Meta Platforms Inc., et al., No. 23-cv-03065*

*Irvington Public Schools v. Meta Platforms, Inc., et al. No. 23-cv-01467*

*Tucson Unified School District v. Meta Platforms, Inc., et al., No. 24-cv-01382*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CONFIDENTIAL EXHIBITS ATTACHED TO SCHOOL DISTRICT PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Judge: Hon. Yvonne Gonzalez Rogers

Magistrate Judge: Hon. Peter H. Kang

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

   A.   Plaintiffs' exhibits respond to arguments made in Defendants' summary
        judgment motions........................................................................................... 2

        1.   Plaintiffs' exhibits respond to Defendants' arguments that they owe
             Plaintiffs no duty. .............................................................................. 3

        2.   Plaintiffs' exhibits respond to Defendants' arguments that Plaintiffs
             cannot prove general causation. ................................................... 4

        3.   Plaintiffs' exhibits respond to Defendants' arguments that Section
             230 bars liability.............................................................................. 5

        4.   Plaintiffs' exhibits respond to Defendants' arguments that it owes
             no duty to warn. ............................................................................... 6

        5.   Plaintiffs' exhibits respond to Defendants' arguments that there is
             no significant interference with the public rights to health, safety,
             and education. .................................................................................. 6

   B.   Plaintiffs cited their exhibits with particularity and explained their
        relevance. ....................................................................................................... 7

   C.   The at-issue exhibits are proportional to the size and complexity of this
        case. ................................................................................................................ 8

   D.   It was not improper to provide full documents and transcripts............................ 11

   E.   The exhibits do not present an undue burden...................................................... 14

   F.   Defendants' requested remedies are unwarranted................................................ 16

II.  CONCLUSION ............................................................................................................ 17

- i -

# TABLE OF AUTHORITIES

Page

**Cases**

*Arguedas v. Carson*,
2024 WL 253644 (S.D. Cal. Jan. 22, 2024) .................................................................... 9

*Bearden v. Cnty. of San Mateo*,
2008 WL 2705085 (N.D. Cal. July 8, 2008) ................................................................. 13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 12

*Burch v. Regents of the University of California*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006) .......................................................................... 7

*Carmen v. SFUSD*,
237 F.3d 1026 (9th Cir. 2001) ...................................................................................... 13

*Carrasco v. N.M. Dep't of Workforce Sols.*,
2013 WL 12092509 (D.N.M. Mar. 19, 2013) ........................................................... 9, 10

*Fairfield v. Khoo*,
2021 WL 1178261 (E.D. Cal. Mar. 29, 2021) .......................................................... 9, 10

*Fox v. Gen. Motors LLC*,
2019 WL 13060199 (N.D. Ga. Aug. 14, 2019) ............................................................ 16

*Goss Graphics Sys., Inc. v. DEV Indus., Inc.*,
267 F.3d 624 (7th Cir. 2001) ........................................................................................ 16

*Hawn v. Exec. Jet Mgmt., Inc.*,
2007 WL 1381618 (D. Ariz. May 9, 2007) .................................................................. 10

*Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
2019 WL 3804667 (N.D. Cal. Aug. 13, 2019) .................................................... 7, 9, 11

*Hughes v. Stryker Sales Corp.*,
2010 WL 1961051 (S.D. Ala. May 13, 2010), *aff'd sub nom. Hughes v. Stryker
Corp*. 423 F. App'x 878 (11th Cir. 2011) ...................................................................... 9

*In re JUUL Labs, Inc., Mktg., Sales Practices, and Product Liability Litig.*,
19-md-02913-WHO, Dkts. (Sept. 12, 2022) ............................................................ 9, 12

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ...................................................................................... 16

*Meinnert v. Holley*,
2022 WL 16527724 (D. Nev. Oct. 28, 2022) ................................................................. 3

**TABLE OF AUTHORITIES**
(continued)

Page

*Microsoft Corp. v. EEE Bus. Inc.*,
    2008 WL 4369773 (N.D. Cal. Sept. 23, 2008) .......................................................... 1

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ..................................................................................... 12

*Overstock.com, Inc. v. Goldman Sachs Grp., Inc.*,
    231 Cal. App. 4th 471 (2014) ................................................................................... 10

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
    627 F.3d 402 (9th Cir. 2010) ..................................................................................... 10

*In re Uber Technologies, Inc., Passenger Sexual Assault Litig.*,
    23-md-03084-CRB ..................................................................................................... 12

*In re ULLICO Inc. Litig.*,
    237 F.R.D. 314 (D.D.C. 2006) .................................................................................. 16

*United States v. E.I. Du Pont De Nemours and Co.*,
    10 F.R.D. 618 (D. Del. 1950) .................................................................................... 10

**Court Rules**

Fed. R. Civ P. 56 ....................................................................................... 1, 9, 12, 13

Fed. R. Civ. P. 56(a) ............................................................................................... 1

Fed. R. Civ. P. 56(c) ............................................................................................ 1, 3

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................... 12

Fed. R. Civ. P. 56(c)(3) ................................................................................. 8, 12, 17

## I.    **INTRODUCTION**

Summary judgment can be granted only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In this case, the discovery record contains extensive evidence establishing genuine disputes—over whether Defendants owed the six school district bellwether plaintiffs ("Plaintiffs") a duty to exercise reasonable care and/or to warn of harm, whether Defendants' conduct placed Plaintiffs in the zone of foreseeable risk, whether Defendants were capable of causing Plaintiffs harm, and whether Defendants significantly interfered in the public rights to health, safety, and education. Having defended over 200 depositions in this matter, and produced over 7.5 million documents, Defendants surely knew about this evidence and surely knew about these disputes. They moved for summary judgment anyway.

Plaintiffs opposed Defendants' motions by doing exactly what Rule 56 calls for: demonstrating that "there is sufficient evidence for a reasonable fact finder to find for the non-moving party," *Microsoft Corp. v. EEE Bus. Inc*., 2008 WL 4369773, at *1 (N.D. Cal. Sept. 23, 2008), by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

Having seen Plaintiffs' cards—and, apparently, fearing the outcome of the game—Defendants now file a motion to strike the exhibits attached to Plaintiffs' omnibus opposition brief. Dkt. 2449 ("Mot."). Their extraordinary request that the Court simply snap its fingers and disappear relevant evidence is without persuasive let alone binding legal support. As detailed below, the motion should be denied for the following reasons: (A) Plaintiffs' evidence responds to numerous arguments made in Defendants' summary judgment motions; (B) Plaintiffs upheld their promises to the Court and followed the letter of Rule 56 by citing specific parts of the evidence in support of their arguments; (C) the amount of evidence cited is proportional to the size and complexity of this MDL and the number of parties whose rights are implicated; (D) Plaintiffs acted in conformance with the rules and case law in providing full documents and transcripts; (E) Defendants' claims of sealing-related burden are either disingenuous or premised on an inappropriate view of what should

1   be sealed at this stage of the case; and (F) the drastic remedy Defendants seek is disproportionate

2   and unwarranted.

3        **A.    Plaintiffs' exhibits respond to arguments made in Defendants' summary
              judgment motions.**

4

5        Plaintiffs' omnibus opposition brief includes an extensive section detailing the misconduct

6   of each Defendant. *See* Pls.' Omnibus Opp. § III.A.2. This is the section that cites to and relies on

7   the exhibits that Defendants move to strike.[1]

8        The section is titled "Defendants breached their duty of care" and Defendants make much

9   of this heading. But there is nothing improper about Plaintiffs identifying genuine disputes of

10  material fact over Defendants' breach of a duty. Defendants' motions for summary judgment

11  nowhere indicated that they conceded this issue. To the contrary, Defendants represented that they

12  "seek summary judgment in their favor on ***all*** causes of action" that Plaintiffs assert against

13  Defendants. Defs.' Breathitt MSJ at 40; *accord* Defs.' Tucson MSJ at 50; Defs.' Irvington MSJ at

14  39; Defs.' DeKalb MSJ at 44; Defs.' Harford MSJ at 47. All causes of action means all the elements

15  contained within them, not just the ones Defendants chose to focus on.

16       In any event, title notwithstanding, the section of the brief at issue self-evidently addresses

17  far more than just the "breach" element of Plaintiffs' negligence claim.[2] As the Table of Contents

18  alone makes clear, the section includes detailed subsections explaining how each Defendant

19  targeted both school-aged children and schools, how each knew or was willfully blind to the harms

20  caused by their platforms, how specific non-protected features of each Defendant's platforms (like

21  age verification and beauty filters) caused harm, and how each Defendant failed to warn parents,

22

---

23  [1] Defendants target 1,073 such exhibits but their count is wrong. Of the 1,187 filed exhibits, 65 are
    publicly available, 24 are deposition transcripts or affidavits of school district witnesses, and 38 are
24  bellwether-specific reports by Plaintiffs' experts—none of which contain Defendants' confidential
    information. Another 47 exhibits did contain such information but are pending withdrawal by
25  agreement of the parties. (The remaining 4 of the 51 withdrawn exhibits contained no confidential
    information.). Finally, an additional 9 were also included as exhibits to Plaintiffs' other opposition
26  briefs (because Plaintiffs were unable to find a technical solution allowing hyperlinking across
    briefs). Defendants do not seek to strike these exhibits in the context of those filings. Thus, the total
27  number of at-issue exhibits is **1,004**.

    [2] To avoid further nomenclature disputes, Plaintiffs refer to this section as the "evidence section"
28  in the duration of this brief.

educators, and schools about the known mental health risks of platform usage. Pls.' Omnibus Opp. at i-ii. Those issues are material to at least five other elements of Plaintiffs' causes of action that Defendants contest: the existence of a duty, general causation, Section 230, failure to warn, and significant interference with public rights. Where, as here, Plaintiffs' exhibits "respond to the arguments that Defendant included" in its motion, they should not be struck. *Meinnert v. Holley*, 2022 WL 16527724, at *4 (D. Nev. Oct. 28, 2022).

**1.    Plaintiffs' exhibits respond to Defendants' arguments that they owe Plaintiffs no duty.**

Defendants' summary judgment motions question whether they owe Plaintiffs a duty of care. *See* Mot. at 10 (acknowledging that "Defendants did question whether there is any duty to begin with"). As the Court has previously explained, analysis of whether a defendant owes a plaintiff a duty depends in large measure on "the foreseeable consequences and reasonableness of defendants' alleged risk-creating conduct." Dkt. 1267 at 27. As such, it was incumbent on Plaintiffs to demonstrate that there are material disputes over these issues, by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). That is precisely what Plaintiffs did in the evidence section and the exhibits cited therein. In particular, subsections bearing titles like "Meta's targeting of schools" and "TikTok's targeting of school-aged children" explain Defendants' course of conduct and why Defendants should have foreseen that Plaintiffs were brought within the zone of risk. *See, e.g.*, Pls.' Omnibus Opp. §§ III.A.2.a.3, b.3. Not surprisingly, Plaintiffs' discussion of the "duty" issue expressly calls back to the evidence section for support. *See* Pls.' Omnibus Opp. at 5, 6; Dkt. 2384 at 12 (Irvington Opp.); Dkt. 2373 at 3 (Charleston Opp.); Dkt. 2360 at 5 (Breathitt Opp.).

Defendants' argument that evidence of school and student targeting is irrelevant cannot be squared with the Court's motion to dismiss order. In its own examination of foreseeability, the Court cited some of the ***very same evidence*** that Defendants now move to strike as irrelevant. *Compare* Dkt. 1267 at 31 (discussing TikTok document acknowledging that it sends notifications to users during the school day) *with* Pls.' Omnibus Opp. at 92-93 & Ex. 540 at 1075 (discussing same document). The same document cannot be relevant to the existence of a duty at the motion to

1    dismiss stage (when presented via pleadings) but somehow irrelevant to the existence of a duty at

2    summary judgment (when presented via an actual exhibit). To state this argument is to refute it.

3              **2.    Plaintiffs' exhibits respond to Defendants' arguments that Plaintiffs
                        cannot prove general causation.**
4

5         Defendants' summary judgment motions question Plaintiffs' ability to prove that their

6    platforms are capable of causing harm to Plaintiffs and their students. The exhibits cited in the

7    evidence section take this on, establishing a genuine dispute of material fact over general causation.

8    Plaintiffs' discussion of causation repeatedly and expressly cross-references the evidence section,

9    underscoring its relevance to the causation inquiry. *See* Pls.' Omnibus Opp. at 188, 190.

10        In their motion to strike, Defendants suggest that this evidence is irrelevant because their

11   motions for summary judgment address only *specific* causation: "Causation turns entirely on

12   whether Plaintiffs can show that a particular bellwether plaintiff has suffered harm from

13   Defendants' purportedly actionable conduct; Defendants' documents, none of which mention

14   anything about the specific bellwether districts, are necessarily irrelevant to that question." Mot. at

15   10. But this is an attempt to rewrite history. Defendants *did* contest general causation in their

16   summary judgment motions. They couldn't have said that more plainly: "Because Breathitt cannot

17   establish general causation, Defendants are entitled to summary judgment." Dkt. 2288 at 17

18   ("Defs.' Breathitt MSJ").[3]

19        Indeed, Defendants went further, insisting that Plaintiffs "ha[ve] no competent evidence

20   that each Defendant's specific platform(s) in fact caused (***or are even capable of causing***)

21   compulsive use on the part of its students." Defs.' Breathitt MSJ at 19 (emphasis added); *see* Defs.'

22   Tucson MSJ at 24 (same); Defs.' Charleston MSJ at 22 (same). Likewise, they claimed that "the

23   scientific evidence actually does *not* support the theory that Defendants' platforms can cause youth

24   to engage in the type of "compulsive use" alleged." Defs.' Charleston MSJ at 20 (emphasis in

25   original); *see* Defs.' Harford MSJ at 20 (same); Defs.' Breathitt MSJ at 17 (similar).

26

27   ---
     [3] Defendants say the same thing in their briefs concerning the other bellwethers. *See* Dkt. 2289 at
     17 ("Defs.' DeKalb MSJ"); Dkt. 2290 at 21 ("Defs.' Tucson MSJ"); Dkt. 2293 at 20 ("Defs.'
28   Charleston MSJ"); Dkt. 2294 at 18 ("Defs.' Irvington MSJ"); Dkt. 2296 at 20 ("Defs.' Harford
     MSJ").

1    The exhibits discussed in the evidence section include dozens of Defendants' own internal

2    studies and sworn testimony from their own researchers, which contradict these claims. That raises

3    a genuine dispute of material fact over general causation that must be resolved by a jury. *See, e.g.*,

4    Pls.' Omnibus Opp. § III.A.2.a.4 (discussing Meta's knowledge of harms caused by Instagram and

5    Facebook). Notably, this Court has recognized that foreseeability is a touchstone not just of the

6    duty analysis but also of the proximate causation analysis—and "is bolstered by allegations of

7    defendants' own knowledge." Dkt. 1267 at 24.

8    Finally, just as with the duty issue, Defendants move to strike documents the Court itself

9    considered in denying Defendants' motion to dismiss on the causation issue. For instance, the Court

10    cited a part of the Complaint "quoting [an] internal Meta presentation that '[h]igh school is the key

11    driver of U.S. teen social activity and occupied 6+ hours per day.'" Dkt. 1267 at 24 (citing Dkt.

12    729 ¶ 214). That same presentation is Exhibit 37 of Plaintiffs' omnibus brief—one of the exhibits

13    Defendants insist is irrelevant. *Compare* Dkt. 729 ¶ 214 (citing document as META3047MDL-

14    003-00134688) *with* Dkt. 2357 ¶ 37 (identifying META3047MDL-003-00134688 as Exhibit 37).

15    Again, it is blindly illogical to insist that evidence does not matter at the summary judgment stage

16    when pleadings discussing that same evidence *did* matter at the motion to dismiss stage.

17    **3.    Plaintiffs' exhibits respond to Defendants' arguments that Section 230**
**bars liability.**

18

19    Defendants extensively argue in their summary judgment motions that Plaintiffs have failed

20    to tie their harms to specific features of specific platforms, thus triggering the protections of Section

21    230 (and the First Amendment, though Defendants mention it only glancingly). They claim, for

22    example, that Plaintiffs' "allegations of specific harms all impermissibly rely on third party content

23    and protected publishing activities," *e.g.*, Defs.' Breathitt MSJ at iii, and that Plaintiffs "ha[ve] no

24    evidence of mental health harms tied to any defendant's specific platform," *e.g.*, Defs.' Tucson

25    MSJ at ii, 24. They represent that "Harford and its experts have … focus[ed] broadly on social

26    media use," instead of disentangling "alleged harms flowing from third party content and protected

27    publishing activity." Defs.' Harford MSJ at 23.

28    Plaintiffs respond to these arguments in the evidence section by discussing the documents

and testimony demonstrating the foreseeable harms arising from non-protected features of Defendants' platforms. The evidence section specifically includes subsections for each Defendant entitled "age verification, "parental controls," and "beauty filters," among others. *See, e.g.*, Pls.' Omnibus Opp §§ III.A.2.c.(a), (b), (i) (discussing these features as to Snap). The purpose of those subsections is not just to argue that Defendants breached their duty of care through the design of these features, but also to establish that Defendants' Section 230 defense is the subject of genuine disputes that a jury must resolve. The evidence section makes this clear on its face. For example: "Meta argues that some of its users are, at most, addicted to and hurt by *the content* on Instagram and Facebook, not by the platforms themselves. That is a convenient defense, invoking Section 230. But it is not true. And there is substantial evidence, coming again from Meta's internal documents and research, proving that point." Pls.' Omnibus Opp. at 33. Not surprisingly, the section of Plaintiffs' omnibus brief rebutting Defendants' disentanglement argument cross-references the evidence section for support. *See id.* at 190.

> **4.    Plaintiffs' exhibits respond to Defendants' arguments that it owes no duty to warn.**

Defendants argue that Plaintiffs "lack[] evidence supporting its failure-to-warn claim." Defs.' Irvington MSJ at ii; *see also* Defs.' Breathitt MSJ at 3 (same); Defs.' Tucson MSJ at 46 (same); Defs.' Charleston MSJ at 41 (same); Defs. Harford MSJ at 43 (same); Defs.' DeKalb MSJ at 41 (same). These contentions are taken up directly in subparts of the evidence section titled "Snap failed to warn parents, educators, and schools about known mental health risks," "TikTok failed to warn parents, educations, and schools about known mental health risks," "YouTube's failure to warn," and "Meta's misrepresentations and manipulations." Defendants offer no argument, let alone a convincing one, why the evidence in these sections should be shorn from the record.

> **5.    Plaintiffs' exhibits respond to Defendants' arguments that there is no significant interference with the public rights to health, safety, and education.**

In their motions for summary judgment as to Breathitt, DeKalb, Harford, and Tucson, Defendants criticize those plaintiffs for failing to "come forward with evidence that each Defendant's actionable conduct was a direct cause of a *significant* interference with a public right."

1    Defs.' Breathitt MSJ at 12; *accord* Defs.' Tucson MSJ at 15; Defs.' DeKalb MSJ at 13; Defs.'

2    Harford MSJ at 15. That Defendants advanced their "interference" argument in only cursory form

3    does not obviate Plaintiffs' need to respond to it forcefully. *See* Pls.' Omnibus Opp. 186 (arguing

4    that Defendants waived their argument by failing to develop it sufficiently).

5        This is precisely what the evidence section accomplishes, which is why it is incorporated

6    by reference in Plaintiffs' discussion of substantial interference: "In the preceding pages, the

7    Districts have illustrated the scale of Defendants' wrongdoing. Defendants' conduct breaches their

8    duty of care to the Districts and is legally negligent. It also constitutes a significant interference

9    with the public's right to health, safety, and education." Pls.' Omnibus Opp. at 185.

10                                       * * *

11        Defendants' argument that the at-issue exhibits are "irrelevant"—the foundation on which

12    their entire motion to strike rests—is, at the end of the day, nothing more than an opportunistic

13    effort to exploit the title of a heading in Plaintiffs' brief. But "summary judgment is not a game of

14    'Gotcha!' in which missteps by the non-movant's counsel, rather than the merits of the case, can

15    dictate the outcome." *Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1120

16    (E.D. Cal. 2006).

17        **B.    Plaintiffs cited their exhibits with particularity and explained their relevance.**

18        At the last CMC, Plaintiffs confirmed that "any document we attach to our summary

19    judgment motion will be pertinent to our summary judgment motion and it will be cited in that

20    opposition brief so that it's clear why it's relevant." 10/24/25 CMC Tr. at 60:5-17. Plaintiffs have

21    done exactly what they promised to do. Each and every exhibit follows a sentence for which it

22    provides evidentiary support. Each and every exhibit is pincited—meaning, Plaintiffs denoted the

23    specific page or slide that is particularly important. (Defendants concede this point. *See* Mot. at 1

24    ("Plaintiffs cite to specific pages of the exhibits in their Brief using pin-cites")). Many, if not most,

25    exhibit citations include a parenthetical quote further expanding on the relevance of the evidence.

26    In short, Plaintiffs have respected the fact that "[s]pecific citations, not bulk references, are essential

27    to pinpoint key facts and factual disputes." *Home Depot, U.S.A., Inc. v. E.I. DuPont de Nemours &*

28    *Co.*, 2019 WL 3804667, at *5 (N.D. Cal. Aug. 13, 2019). This is completely different from the

1   lazy, shotgun approach criticized in *Overstock*.

2       Defendants make much of 51 exhibits that inadvertently lacked associated citations in

3   Plaintiffs' brief, disingenuously burying the lede that the parties reached an agreement last week to

4   withdraw these documents. This is, at best, a further waste of the Court's time. Plaintiffs first

5   received notice that there were any such non-cited exhibits on November 11, 2025. Plaintiffs

6   promptly asked Defendants to itemize those exhibits so that they could be evaluated. Defendants

7   did so on November 12, and on November 13 Plaintiffs presented a non-argumentative stipulation

8   agreeing to remove those exhibits from the docket.[4] Despite near-immediate resolution of the issue,

9   Defendants have withheld their consent to filing the stipulation.

10      Process aside, Defendants' suggestion that these 51 exhibits were an illicit effort by

11  Plaintiffs to smuggle evidence to the press is incorrect. Fifteen are duplicates of other exhibits; their

12  inclusion was plainly the result of clerical error. Six concern an issue that was mooted on the day

13  Plaintiffs' opposition filings were due.[5] The remaining 30 are artifacts of the drafting process,

14  pertinent to sections or sentences that were removed. Even acknowledging these as technical

15  mistakes, the number of non-cited exhibits is 0.4% of the total (=51/1178) and would have dropped

16  to 0% last week had it not been for Defendants' unexplained delay in finalizing the stipulation.

17      **C.    The at-issue exhibits are proportional to the size and complexity of this case.**

18      This is a big and complicated case. The claims of thousands of plaintiffs are at stake. The

19  conduct of four extremely large companies is at issue. The JPML consolidated this action into an

20  MDL so that a massive amount of pretrial discovery could be conducted once, and presented to a

21  Court for purposes of summary judgment once, thereby "conserv[ing] the resources of the parties,

22  their counsel, and the judiciary." Dkt. 1 at 2. Doing this once means doing it right. Doing it right

23  means putting forward the evidence sufficient to surmount summary judgment. Plaintiffs have been

24  mindful that this is their first opportunity—and, potentially, their last—to "put up or shut up."

25

26  [4] Plaintiffs readily agreed to strike these exhibits even though doing so is unnecessary under the
    rules. *See* Fed. R. Civ. P. 56(c)(3) ("[t]he court need consider only the cited materials.").

27  [5] On November 7, 2025, Plaintiffs and the Meta Defendants reached a stipulation concerning the
    dismissal of certain Meta affiliates, obviating the need for Plaintiffs to brief that issue and rendering
28  those supporting exhibits immaterial. *See* Dkts. 2359, 2401.

1    *Arguedas v. Carson*, 2024 WL 253644, at *2 (S.D. Cal. Jan. 22, 2024).

2        Given this context, it is hardly surprising that the amount of evidence presented is sizable.

3 Even still, the volume is less than meets the eye. While Defendants breathlessly cite (in bold and

4 italics) to "*1,187 exhibits*" and "*70,000 pages of Defendants' designated Confidential material*,"

5 Mot. at 1, this obscures the fact that the exhibits are split across *four defendants*. The 1,004 exhibits

6 actually at issue, *see supra* n.1, consist of 375 exhibits assertedly containing Meta confidential

7 information, 240 exhibits assertedly containing TikTok confidential information, 192 exhibits

8 assertedly containing Snap confidential information, 180 exhibits assertedly contain YouTube

9 confidential information, and 17 expert reports or deposition transcripts assertedly containing

10 confidential information from multiple Defendants.

11        Moreover, these exhibits are offered on behalf of *six* bellwether plaintiffs, meaning the

12 exhibits at issue average out to less than 170 per bellwether plaintiff. These numbers are in line

13 with past MDLs. By point of comparison, the single school district bellwether in the *JUUL* MDL

14 filed 354 exhibits in connection with a summary judgment opposition where only one company's

15 vaping product was at issue. *See In re JUUL Labs, Inc., Mktg., Sales Practices, and Product*

16 *Liability Litig*., 19-md-02913-WHO, Dkts. 3447-3457 (Sept. 12, 2022).

17        Defendants rely on cases that were not MDLs and necessarily did not present the same level

18 of complexity. The cases are distinguishable on other grounds as well. *Home Depot, U.S.A., Inc. v.*

19 *E.I. DuPont de Nemours & Co*., 2019 WL 3804667 (N.D. Cal. Aug. 13, 2019) and *Hughes v.*

20 *Stryker Sales Corp.*, 2010 WL 1961051 (S.D. Ala. May 13, 2010), *aff'd sub nom. Hughes v. Stryker*

21 *Corp*. 423 F. App'x 878 (11th Cir. 2011) both addressed courts' refusal to consider exhibits that

22 were not cited in the parties' briefs. That is not the circumstance here. As noted, pincites were

23 provided for all of the exhibits at issue, and the exhibits Plaintiffs did not cite they promptly agreed

24 to remove. Far from shirking or shifting their Rule 56 burden in the manner those courts have

25 admonished, *see Hughes* at *3, Plaintiffs carefully and precisely directed the Court and parties to

26 the portions of each exhibit supporting their arguments.

27        *Fairfield v. Khoo*, 2021 WL 1178261 (E.D. Cal. Mar. 29, 2021) and *Carrasco v. N.M. Dep't*

28 *of Workforce Sols.*, 2013 WL 12092509 (D.N.M. Mar. 19, 2013) are just as off base. Both of those

1    cases concerned the Court's striking of exhibits that were irrelevant to the issues at hand. In

2    *Fairfield*, the defendant's motion challenged only whether the plaintiff had exhausted

3    administrative remedies before seeking federal relief—justifying the court's striking of exhibits

4    that spoke only to merits issues (such as the plaintiff's medical records and the defendant's policies

5    and practices). 2021 WL 1178261 at *1. In *Carrasco*, the court struck a handful of exhibits that

6    were "not relevant to the issues in this litigation" or fell outside the relevant time period. 2013 WL

7    12092509 at *11. Here, as detailed above (*see* section I.A), the evidence Defendants move to strike

8    bears directly on numerous issues of significant relevance to their motions for summary judgment.

9         Defendants cite *Hawn v. Exec. Jet Mgmt., Inc*., 2007 WL 1381618, at *3 (D. Ariz. May 9,

10    2007), but that case involved the filing of prejudicial documents that clearly did not show what

11    Plaintiffs claimed they did. Defendants appropriately have not raised any allegation that Plaintiffs

12    have misconstrued or mischaracterized the evidence (and any such allegation would lack merit).

13    Similarly, *Ready Transp., Inc. v. AAR Mfg., Inc*., 627 F.3d 402 (9th Cir. 2010) involved the

14    improper filing of a confidential settlement agreement on the public docket. Here, there is no

15    credible allegation of similar "abusive conduct." *See id*. at 404. Plaintiffs complied with the

16    applicable rules and filed under seal all information that Defendants claim is confidential. The one

17    exception—the filing of a single YouTube exhibit on the public docket due to a clerical error—was

18    addressed promptly by Plaintiffs. *See* Dkts. 2411, 2415. The YouTube Defendants do not dispute

19    that Plaintiffs addressed that issue diligently and professionally.

20         At the end of the day, Defendants have one, and really only one, case to point to in support

21    of their motion, *Overstock.com, Inc. v. Goldman Sachs Grp., Inc*., 231 Cal. App. 4th 471 (2014),

22    which explains why they return to it again and again. But *Overstock* is a California case that is not

23    binding on this Court, and it concerned the trial court's application of California sealing rules that

24    do not apply here. *Id*. More to the point, *Overstock* sits in tension with more persuasive federal

25    authority. In *United States v. E.I. Du Pont De Nemours and Co.*, 10 F.R.D. 618 (D. Del. 1950), the

26    District of Delaware permitted the Antitrust Division of the U.S. Department of Justice to file "32

27    volumes containing approximately 2,500 exhibits," *id.* at 620, holding that "a court should be

28    careful not to thwart the privilege of a litigant to make an offer of proof," *id.* at 622.

1    In denying defendants' motion to strike, the court made several observations that should

2    ring true here. "It appears the totality of documents making up plaintiff's proffer represents less

3    than 2% of all documents read and considered in the course of its investigation." *Id.* "Plaintiff states

4    in shrinking its documentary proof every effort has been exerted to avoid cumulation, duplication,

5    repetition and trivia. In good faith, says plaintiff, it believes this effort has been successfully carried

6    out; moreover, a reading and consideration of each of its documents will demonstrate they are of

7    such nature with relation to the issues involved that it would be impossible to direct the court's

8    attention to any segment of its evidence and state that it is more deserving of attention than the

9    remainder." *Id.* at 620.

10    Times have changed since 1950—but in a way that makes the District of Delaware's holding

11    in *DuPont* more persuasive, not less. Whereas the evidence proffered by the government in *DuPont*

12    was necessarily furnished on paper—requiring the court to physically review copies of 2,500

13    exhibits—here, no such burden exists. Plaintiffs' exhibits were both e-filed and hyperlinked within

14    Plaintiffs' Opposition, requiring a single click to get to the pincite within the relied-upon source.

15    Whereas lead counsel for the defendant in *DuPont* (Covington and Burling) was similarly required

16    to sift through "copies of documents on which [the government] intends to rely," *id.* at 620, here

17    lead counsel for the Meta Defendants (also Covington and Burling) can utilize advanced forms of

18    technology to conduct its review. Finally, whereas the evidence proffered by the government in

19    *DuPont* constituted "less than 2%" of the evidence considered, here the numbers are even more

20    favorable to the Plaintiffs. Defendants in this case produced over 7.5 million documents, meaning

21    the 1,004 exhibits at issue here constitute just 0.013% of the total volume of produced material.

22    In short, *DuPont* is the only relevant federal court precedent either party has cited

23    addressing a mass motion to strike of the kind Defendants attempt here. That motion failed, in an

24    era when the burdens on the court and litigants were substantially greater. The Court should follow

25    the precedent set in *DuPont* and "be careful not to thwart the privilege of a litigant to make an offer

26    of proof." *Id.* at 622.

27    **D.    It was not improper to provide full documents and transcripts.**

28    Defendants insist that Plaintiffs were required to file excerpts of exhibits rather than full

1  documents, but they provide no rule or law to support this contention. Rule 56 suggests the

2  opposite. Specifically, Rule 56(c)(1)(A) states that a party asserting a fact is genuinely disputed

3  "must support the assertion by citing to particular parts of materials in the record, including

4  depositions, documents, electronically stored information, affidavits or declarations…admissions,

5  interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). At the same time, Rule

6  56(c)(3) states that "[t]he court need consider only the cited materials, *but it may consider other*

7  *materials in the record*." Fed. R. Civ. P. 56(c)(3) (emphasis added). Taken together, these

8  provisions indicate that "the cited materials" identified by a non-movant constitute a *subset* of

9  "materials in the record" that may be presented to and considered by the Court. That is the only

10 logical interpretation of Rule 56(c)(3), and it is underscored by its title ("Materials Not Cited") and

11 accompanying 2010 advisory committee note ("a court may consider record materials not called to

12 its attention by the parties").

13     Defendants' suggestion that it is not only impermissible, but indeed sanctionable, to attach

14 full exhibits rather than cited portions to a summary judgment opposition brief would read Rule

15 56(c)(3) out of existence. But "the traditional tools of statutory construction [apply] to interpret[ing]

16 the Federal Rules of Civil Procedure," and that includes the well-worn canon against superfluity.

17 *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125-26 (9th Cir. 2017) (applying canon against

18 superfluity in interpreting Rule 23). Not surprisingly, Defendants' perspective cannot be squared

19 with precedent. In *Orr v. Bank of Am., NT & SA*, the Ninth Circuit discussed the appropriate

20 measures for authenticating "[a] deposition *or* an extract therefrom" attached to a motion for

21 summary judgment, indicating that attaching either would have been permissible. 285 F.3d 764,

22 774 (9th Cir. 2002) (emphasis added). And in at least one other MDL, parties have filed full

23 documents during late-stage briefing. *See, e.g.*, *In re Uber Technologies, Inc., Passenger Sexual*

24 *Assault Litig.,* 23-md-03084-CRB, Dkts. 4337-4351, 4358 (Nov. 10, 2025) (filing full deposition

25 transcripts and expert reports with *Daubert* motions).

26     Defendants note that in *JUUL*, the plaintiff elected to excerpt its exhibits. That may be true,

27 but it does not prove that excerpting is either required or necessary where (as here) the filing party

28 takes measures to alleviate potential burden on the parties and the Court. *See In re JUUL*, 19-md-

02913-WHO, Dkt. 3447 (Sept. 12, 2022) (not hyperlinking cited exhibits). As noted, Plaintiffs provided pincites to the specific portion of each exhibit that supported each factual assertion. *See Carmen v. SFUSD*, 237 F.3d 1026, 1030–31 (9th Cir. 2001) ("Rule 56 may be adequately satisfied by a lawyer designating where . . . the critical evidence can be found and what it says[.]"). And, per the Court's instructions, Plaintiffs hyperlinked each pincite to the relevant location within each document. That format should obviate any concern that receiving complete exhibits has burdened the Court with undue volume. *Cf. Bearden v. Cnty. of San Mateo*, 2008 WL 2705085, at *3 (N.D. Cal. July 8, 2008) (excluding a full deposition transcript where counsel provided no pincites).

Finally, Plaintiffs needed to file full rather than partial versions of their exhibits to avoid the accusation that excerpts were "cherry-picked" and lacking necessary context. Defendants suggest that Plaintiffs' fear is "without basis" but that is incorrect. Mot. at 7. When the *Wall Street Journal* reported on internal Meta company documents disclosed by whistleblower Frances Haugen—some of which are included in the set of exhibits Defendants move to strike—Defendants went on record to complain of "cherry-picking selective quotes from individual pieces of leaked material."[6] Similarly, when the New Mexico Attorney General's complaint against Meta was unsealed, revealing additional internal documents—some of which are, again, at issue in this set of exhibits—Meta once more responded that these consisted of "selective quotes and cherry-picked documents."[7]

The Court should not allow Defendants to put Plaintiffs in the impossible position of either defending against a sanctions motion (for attaching too much evidence) or defending against accusations of cherry-picking (for attaching too little). Rule 56 does not require Plaintiffs to divine, or allow Defendants to demand, some magic amount of *exactly* sufficient evidence, as in *no more and no less*. And Defendants' assurance that it could simply remedy any cherry-picking concerns by itself "supplying the Court with any necessary additional pages from the same exhibit," Mot. at

---

[6] Nick Clegg, *What the Wall Street Journal Got Wrong*, Facebook (Sept. 19, 2021), https://about.fb.com/news/2021/09/what-the-wall-street-journal-got-wrong/

[7] Morgan Sung, *Unredacted Meta documents reveal 'historical reluctance' to protect children*, TechCrunch (Jan. 17, 2024) https://techcrunch.com/2024/01/17/unredacted-meta-documents-reveal-historical-reluctance-to-protect-children-new-mexico-lawsuit/ (quoting Meta spokesperson).

1  7, would make the docket more, not less, congested, worsening the problem Defendants claim they
2  are trying to cure.

3          **E.      The exhibits do not present an undue burden.**

4          As noted above, the 1,004 at-issue exhibits are split across *four defendants*. This means the
5  actual "burden" facing each Defendant is substantially less than the total number suggests on its
6  own: 375 exhibits for Meta, 240 exhibits for TikTok, 180 exhibits for YouTube, 192 exhibits for
7  Snap, and 17 expert reports or deposition transcripts containing assertedly confidential information
8  from multiple Defendants.

9          Review of this number of exhibits is eminently doable in light of the army of attorneys at
10 the Defendants' disposal. Plaintiffs' review of the docket shows that Defendants are currently
11 represented in this litigation by no fewer than 229 attorneys. (Plaintiffs have not included in this
12 count attorneys who have been terminated from the case or attorneys working at non-primary firms
13 who Defendants could argue are not positioned to make confidentiality assessments.) Specifically,
14 Meta is currently represented by 96 attorneys, TikTok by 40, Snap by another 40, and YouTube by
15 35. Simple math indicates that each Defendant's sealing review could be completed if each attorney
16 were assigned to review just five or six exhibits each. That is a day's work, maybe two at most.

17         Plaintiffs haven't insisted on anything approaching that timeline, of course. Instead, the
18 parties have negotiated and agreed on a stipulation that provides Defendants 30 days after the
19 Court's denial of the motion to strike to propose redactions to the at-issue exhibits and to confer
20 with Plaintiffs about their propriety. *See* Dkt. 2451 at 3. In other words, Defendants are prepared to
21 get the job done in a month. The "significant sealing-related burdens" Defendants complain of turn
22 out to not be so significant after all. Mot. at 3.

23         Defendants' particular concerns are as overblown as their general one. Defendants
24 complain, for example, that, "in citing a witness's answer to one question in a two-day deposition,
25 Plaintiffs attached the entire deposition as an exhibit." Mot. at 1; *see id.* at 5-6. This erroneously
26 suggests that Defendants are now required to review, from scratch, the entirety of each cited
27 deposition transcript for purposes of their sealing review. But that is not the case. Defendants were
28 previously required to designate portions of deposition transcripts as "confidential" and "highly

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE
CASE NO. 4:22-MD-03047-YGR

confidential" under the governing Protective Order. Dkt. 1209 at 8. Presuming they approached that task in good faith, all that remains is an assessment of those limited page-line designations to determine which to lift.

Similarly, Defendants complain about the need to review expert reports and documentary evidence. But they have already undertaken a confidentiality review of many such materials in the JCCP. As that proceeding approaches the eve of trial, in just a matter of weeks, Judge Kuhl has made clear that now is the time to complete the sealing (or, more accurately, unsealing) process for such evidence. *See* Ex. A (11/10/25 JCCP CMC Tr. at 56:12-61:3 ("They're going to use [the exhibits] at trial anyway, so let's figure out what I'm going to seal. That's my opinion.").[8] In other words, in both matters, the work of lifting Defendants' initially overbroad confidentiality designations must occur.

The sealing analysis that lies ahead will only "impose extraordinary burdens" on Defendants, Mot. at 7, if they attempt to claim confidentiality over information that should be made public. Defendants already hint this is their intention. For example, Defendants appear poised to disregard the direction this Court has provided as to whether the names of employees are fair game for sealing. *Compare* Mot. at 7 n.7 ("AI can help identify some straightforward candidates for redaction, like the names of known lower-level employees") (emphasis omitted) *with* 10/24/25 Tr. 57:4-19 ("there's no need for the public to have internal persons' emails as long as we can tell who is on the email…a jury is going to need to know who is on the email.").

Similarly, Defendants reference the inability of OCR technology and AI to "comprehensively identify every piece of sensitive material that defense counsel are responsible, as stewards of their clients' Confidential documents, for protecting." Mot. at 7 n.7. It is entirely unclear what Defendants have in mind by the amorphous phrase "sensitive material." This is not an intellectual property case in which the evidentiary record is replete with company trade secrets, nor was source code made part of the discovery record for three out of the four defendants.

---

[8] Defendants raise Judge Kuhl's "grant[ing] Meta leave to file" a motion to strike, Mot. at 8, but leave out the fundamentally different context of that motion, which concerns hundreds of exhibits attached to an errata filed several weeks after Plaintiffs' opposition brief. Whatever fairness or due process principles animate that motion are simply not present here.

Amorphous "sensitivity" is an insufficient basis to keep evidence sealed at this stage. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (explaining that the sealing of material at the dispositive motion and trial stages requires a showing of "compelling reasons," which is higher than the "good cause" showing that attaches to discovery materials). It follows that the alleged difficulty of identifying "sensitive" material for sealing is an insufficient ground to strike Plaintiffs' exhibits.

The bottom line is this: The world's most sophisticated technology companies can and should use widely-available technology like OCR and AI to find and redact the limited categories of information that are actually appropriate to redact at this stage, such as phone numbers and email addresses. That is easy, not hard; Defendants have ample attorneys standing by to do the work; and Defendants have conceded the work can get done in thirty days. Defendants' burden argument is a red herring and an insufficient basis to justify the extraordinary relief requested.

### F.    Defendants' requested remedies are unwarranted.

Defendants' first choice remedy is for the Court to strike "all 1,073 Confidential Exhibits attached to Plaintiffs' Omnibus Opposition as a sanction." Mot. at 4. That relief would be grossly out of step with federal court precedent addressing motions to strike. Federal courts uniformly reject wholesale striking where only a small fraction of materials is allegedly defective. *Fox v. Gen. Motors LLC*, 2019 WL 13060199, at *4 (N.D. Ga. Aug. 14, 2019) ("wholesale striking of GM's exhibit list is unwarranted"). Courts apply proportionality and impose targeted remedies. *See Goss Graphics Sys., Inc. v. DEV Indus., Inc*., 267 F.3d 624, 627–28 (7th Cir. 2001) ("proportionality is the cornerstone of a rational system of sanctions"). Even in cases of extreme misconduct—such as improperly designating 99% of 60,000 documents as confidential—courts have ordered corrective relief, not exclusion. *In re ULLICO Inc. Litig*., 237 F.R.D. 314, 317–20 (D.D.C. 2006). Here, with no prejudice, no delay, no willful misconduct, and no identifiable violation of any binding rule or federal precedent, striking all of Plaintiffs' exhibits would be grossly disproportionate and present serious due process concerns. The Court should decline Defendants' invitation to turn summary judgment into a vehicle for erasing unfavorable evidence.

Defendants' second choice remedy is for the Court to order Plaintiffs to re-file *just* the cited

1   portions of their exhibits. But that remedy creates more, not less, work for the Court, and with no

2   purpose. The rules already allow the Court to "consider only the cited materials" in Plaintiffs'

3   opposition. Fed. R. Civ. P. 56(c)(3). If the Court agrees those are the only portions of the exhibits

4   that should have been filed, it can just consider those portions and disregard the remainder.

5           There is, of course, a more appropriate remedy that will ease any burdens to the Court while

6   curing Defendants' sealing concerns: deny Defendants' motions for summary judgment outright.

7   Given the plain existence of disputed material facts—indeed, given Defendants' ultimate concern

8   that there is *too much evidence* of their misconduct in the record—that is the shortest way home.

9   **II.      CONCLUSION**

10          Defendants' motions for summary judgment are baseless: The extensive evidentiary record

11  establishes beyond reproach that there are genuine disputes of material fact on every key issue of

12  liability and damages. Defendants' motion to strike compounds that first error with a second. It is

13  a frivolous motion lacking a firm legal basis and should be denied.

14

15

16  Dated: November 17, 2025              By:  /s/ *Previn Warren*

17                                         PREVIN WARREN
                                           **MOTLEY RICE LLC**
18                                         401 9th Street NW Suite 630
                                           Washington DC 20004
19                                         Telephone: 202-386-9610
                                           pwarren@motleyrice.com
20
                                           LEXI J. HAZAM
21                                         **LIEFF CABRASER HEIMANN &**
                                           **BERNSTEIN, LLP**
22                                         275 BATTERY STREET, 29TH FLOOR
                                           SAN FRANCISCO, CA 94111-3339
23                                         Telephone: 415-956-1000
                                           lhazam@lchb.com
24
                                           *Co-Lead Counsel for School District Plaintiffs*
25

26

27

28

1

## <u>ATTESTATION</u>

2

3      I, Lexi J. Hazam, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

4  to the filing of this document has been obtained from each signatory hereto.

5

6  Dated: November 17, 2025                    By: */s/ Lexi J. Hazam*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28