Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
michael.esser@kirkland.com

*Attorney for Respondent*
*Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION*<br><br>Case to be considered related:<br>*In re: Subpoena to Meta Platforms, Inc., No. 3:25-mc-80352* | Case No. 4:22-md-03047-YGR<br><br>**RESPONDENT META PLATFORMS, INC.'S OPPOSITION TO PETITIONERS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

## INTRODUCTION

Over the past four years, Petitioners (collectively, "Florida" or the "state") have suffered a string of setbacks in their defense of the blatantly unconstitutional S.B. 7072. And after two recent adverse discovery rulings from the Northern District of Florida, the state evidently hopes to achieve better results from this Court. But neither Florida's motion to compel nor the underlying litigation, *NetChoice v. Uthmeier*, has anything to do with this MDL. Aside from the involvement of Meta Platforms, Inc. ("Meta"), none of Local Rule 3-12's indicia of relatedness are satisfied: Compared to this MDL, Florida's motion to compel involves different underlying "events," different causes of action, and different legal and factual issues in dispute. Accordingly, the Court should deny Florida's relation motion.

Alternatively, should the Court grant the state's motion, it should also grant Meta's motion to transfer (attached as Exhibit 1) so that the Northern District of Florida can determine the scope of discovery in the case that it has managed for over four years. That court has the "better understanding" of the issues and will be best equipped to avoid "conflicting results." Doc. 2447 ("Florida Mot.") at 5.

## BACKGROUND

This dispute involves Florida's attempt to relate this MDL to a motion to compel discovery for use in *NetChoice*, a totally different case challenging the constitutionality of a Florida statute. *See* No. 4:21-cv-0220 (N.D. Fla.). In 2021, two trade associations, NetChoice and the Computer & Communications Industry Association, sued to enjoin a Florida statute that aimed to "tak[e] back the virtual public square" from "the leftist media and big corporations." *See id.*, Doc. 1 ("Compl.") ¶ 4 (quoting the governor's press statement upon signing). In service of this objective, the statute compels companies offering social-media services to host content they would prefer to remove or make less prominent—even highly objectionable or illegal content. *See id.* ¶ 1.

Every court to assess the constitutionality of Florida's statute has found it deficient. The Northern District of Florida preliminarily enjoined the state from enforcing most of the statute, *see NetChoice v. Moody*, 546 F. Supp. 3d 1082, 1085 (N.D. Fla. 2021), and the Eleventh Circuit affirmed in substantial part, *see NetChoice v. Att'y Gen., Fla.*, 34 F.4th 1196, 1205 (11th Cir. 2022). The Supreme Court agreed that social-media services have a First Amendment right "to remove, label or demote messages they disfavor," but remanded for additional fact-finding regarding the statute's sweep so that the lower courts

can properly assess the facial validity of the law. *See Moody v. NetChoice*, 603 U.S. 707, 736 (2024). Notwithstanding its remand, the Court was clear that Meta's "Community Standards … make a wealth of user-agnostic judgments about what kinds of speech, including what viewpoints, are not worthy of promotion. And those judgments show up in Facebook's … main feeds." *Id.* at 736 n.5.

The Northern District of Florida is actively managing post-remand discovery, having already resolved two discovery disputes. In May, the court denied Florida's motion to compel discovery from the trade association plaintiffs, ruling that "the detailed information the defendants seek about other covered members will almost surely make no difference in resolving the issues." *NetChoice*, No. 4:21-cv-0220, Doc 209 at 41. Then, after the state served Meta and other nonparties with subpoenas, the court resolved a protective-order dispute in favor of Meta and Google. *See id.*, Doc. 240 at 1.

Following those losses, Florida moved to compel a reproduction of documents from this MDL while opposing transfer of the motion-to-compel proceeding to the Northern District of Florida, *see* Doc. 2447-1 ¶ 6. Now, the state moves to relate its motion to compel to this MDL.

## LEGAL STANDARD

This Court may not order an action related under Local Rule 3-12 unless "[t]he actions concern substantially the same parties, property, transaction, or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." L.R. 3-12(a).

## ARGUMENT

Florida cites no authority—and Meta can find none—for the notion that a motion-to-compel proceeding brought as a miscellaneous case can be related to ***any*** other case, let alone a multidistrict litigation such as this one. Indeed, the requirement for a relation motion to be filed "in the lowest-numbered case," L.R. 3-12(b), would not make sense in that context, because a miscellaneous case (docket prefix "mc") might have a higher case number than an earlier-filed civil or multidistrict case (docket prefixes "cv" or "md"). But even setting aside this threshold defect, the state's motion does not satisfy the requirements of Local Rule 3-12(a).

**I.     Florida's motion to compel does not involve the same events or parties as the MDL.**

Florida's motion to relate its motion to compel in *NetChoice* to this MDL fails at every step of the Local Rule 3-12 standard. To start, the *NetChoice* motion-to-compel proceeding and the MDL do not "concern substantially" the same "event" or underlying facts. L.R. 3-12(a). The motion-to-compel proceeding concerns a discovery dispute in *NetChoice*, which is a constitutional challenge to a Florida statute. The MDL, by contrast, involves claims that various companies purportedly designed their social-media services "to foster compulsive use by minors, resulting in a variety of harms to children, local governments, and the public health." Doc. 1214 at 2. Although the MDL and *NetChoice* include an overlapping common issue regarding Meta's content-recommendation systems, that is only one issue, and the cases address that single issue in entirely different ways: the MDL is concerned with plaintiffs' allegations that certain "design" elements of Meta's platforms, including its content-recommendation systems, are allegedly addictive to teens, while *NetChoice* addresses whether the First Amendment bars the state's effort to regulate Meta's editorial discretion, including when that discretion is carried out via content-recommendation systems. On top of that, the Supreme Court has already answered the relevant legal question in *NetChoice*, explaining that Meta makes "expressive choices" when it uses its "Community Standards" "to decide which third-party content [its Feed] will display, or how the display will be ordered and organized." *Moody*, 603 U.S. at 740. That is so even though Meta relies on "algorithms to implement those standards." *Id.* at 735.

Nor do the *NetChoice* motion to compel and the MDL "concern substantially the same parties." The MDL concerns hundreds of actions brought by individuals, school boards, and twenty-nine state attorneys general. Although Florida was once a party in the MDL, Florida dismissed its complaint from the MDL. No party is common to the MDL, the motion-to-compel proceedings, and *NetChoice*. Meta is a party to the MDL and motion-to-compel proceedings, but a nonparty in *NetChoice*. A single common party is not sufficient to establish that these cases "concern substantially the same parties." L.R. 3-12(a); *see Hill v. Goodfellow Top Grade*, 2019 WL 2716487, at *1 (N.D. Cal. June 28, 2019) (denying relation although "both Hill and Monroe have named Goodfellow as the Defendant").

Courts within this district have denied motions to relate cases that have far more in common. In *Nozolino v. Hartford Life & Acc. Ins. Co.*, for instance, the district court denied a motion to relate two

ERISA cases brought against Hartford Insurance because the same cause of action brought against the same defendant is "insufficient to find that the actions concern substantially the same parties, transaction, or event." 2013 WL 2468350, at *1 (N.D. Cal. June 7, 2013). And in *Univ. of Cal. v. Eli Lilly & Co.*, the district court denied a motion to relate two cases involving Eli Lilly despite the presence of numerous commonalities, including "a common issue" regarding the legal effect of a settlement agreement, "the presence of both UC and Lilly in each case," and "the fact that both actions involve the same basic recombinant DNA technology and involve many of the same researchers." 1991 WL 332056, at *10 (N.D. Cal. Nov. 4, 1991). The *Lilly* Court reasoned that the cases involved two different patents, and that only one case involved the presence of Genentech. Here, the case for relation is even weaker than in *Nozolino* and *Lilly*. *NetChoice* and the MDL concern entirely different bodies of law—a difference far more profound than simply "different patents."

**II.     Relation would not promote judicial efficiency or reduce the risk of conflicting results.**

Nor would relation avoid "an unduly burdensome duplication of labor and expense" or reduce the risk of "conflicting results." L.R. 3-12(a). The principal issue raised by Florida's motion to compel is whether the documents it seeks from the MDL are relevant to Florida's defense of its statute in light of the Supreme Court's decision in *Moody*. For this inquiry, the subject matter of the MDL is not in dispute. It is therefore of no consequence whether "Judge Yvonne Gonzalez Rogers and Magistrate Judge Peter H. Kang have a better understanding of the complex, yearslong multidistrict litigation than the Magistrate Judge Thomas S. Hixson." Florida Mot. at 5. The actual disputed issue—indeed, the central question raised by Florida's motion to compel—is the relevance of specific documents cited in certain MDL expert reports to the First Amendment challenge to Florida's statute.

Because of that, no ruling of Judge Hixson on a collateral discovery issue concerning a different underlying case could create inconsistency with any order from this Court pertaining to the MDL. To the contrary, the greater risk of inconsistent results is disposition of the motion to compel by any court other than the *NetChoice* court, which has managed the underlying litigation for over four years. The most efficient course is for the *NetChoice* court to decide the relevance of specific documents to the issues before it, setting rules that will govern all of the parties—as well as the multiple nonparties—to that case. As Meta argued in its Rule 45(f) motion to transfer, Florida's motion to compel implicates substantive

First Amendment issues already considered by the Northern District of Florida in its 2021 decision granting the trade associations' motion for a preliminary injunction against the state, *see NetChoice*, 546 F. Supp. 3d 1082, and discovery issues recently considered on remand from the Supreme Court, *see id.*, No. 4:21-cv-220, Doc 209.  Because Meta's forthcoming opposition brief will "implicate consideration of the scope of relevant discovery in the Florida action," the Northern District of Florida "is in a better position than this Court to consider those arguments."  *In re Google LLC*, 2024 WL 217842, at *2 (N.D. Cal. Jan. 19, 2024).

If Florida can manufacture relation ***to*** the MDL merely by seeking documents ***from*** the MDL, then any motion-to-compel petitioner could pick the judge of its choosing by including a request for documents from a case on that judge's docket.  This would be especially concerning in districts like this one, where companies like Meta often have litigation pending before nearly every active judge in the district.  That result would be contrary to the purpose of related-case notices, which is to "***prevent*** plaintiffs from 'judge shopping.'"  Hon. Lee Smalley Edmon & Hon. Curtis E. A. Karnow, *Cal. Practice Guide: Civ. Proc. Before Trial* ¶ 12:38 (2025) (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should deny Florida's Administrative Motion.

DATED:  November 18, 2025              Respectfully submitted,

*/s/ Michael P. Esser*
Michael P. Esser (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
michael.esser@kirkland.com

*Attorney for Respondent Meta Platforms, Inc.*