UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>         4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **META'S AFFIRMATIVE LETTER BRIEF REGARDING ANTICIPATED SUMMARY JUDGMENT AND RULE 702 MOTIONS IN MULTISTATE AG CASE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to ECF Nos. 2271 and 2274, Meta submits this letter setting forth its anticipated summary judgment and Rule 702 arguments as to the State Attorneys General ("AGs") action.

**I.     Motion for Summary Judgment**

**A.  Consumer Protection Claims**

***Deception Claims.***  The allegedly deceptive statements—which relate to (1) addiction, (2) "time spent" and (3) safety and well-being—are inactionable.  The AGs' core theory underlying their deception claims is that Meta intentionally misled consumers about whether its platforms are "addictive" or induce "compulsive and extended use."  (Multistate AG Complaint ("Compl.") ¶ 846.)  The AGs have identified—through their complaint and interrogatory responses—only three **statements that reference addiction**: (1) Mark Zuckerberg told Congress that he disagreed with the characterization that Meta "make[s] money off creating an addiction to [its] platforms" (*id.* ¶ 191); (2) Meta told the BBC that "at no stage does wanting something to be addictive factor into" Meta's platform design process (*id.* ¶ 374); and (3) Adam Mosseri said to Congress that he did not "believe [the] research suggests that our products are addictive" (*id.* ¶ 427).  But the AGs have identified no admissible evidence that Meta's platforms are actually addictive and therefore cannot show the statements were false as required or considered by 16 states.  (CA, CO, DE, IL, IN, KS, KY, LA, MN, NE, NJ, NY, PA, SC, VA, and WI.)  Nor is there any evidence that either Mr. Zuckerberg or Mr. Mosseri believed—let alone knew—that Meta's products are addictive.  Accordingly, for 10 of the states, the AGs cannot prove the requisite intent.  (CA, CO, IL, IN, KS, KY, LA, NJ, PA, and VA.)

The discovery record confirms that **statements about "time spent"** on the platforms are also inactionable.  The AGs identify two statements on this topic, both made at a single point in time—March 2021: Mr. Zuckerberg's congressional testimony on March 25, 2021, explaining that Meta does not have a "team goal" around increasing time spent by users on the platforms (*id.* ¶ 137); and Nick Clegg's statement in a magazine article on March 31, 2021 that the "goal" of Facebook's algorithm was not to keep users "glued" to their smartphone "for hours on end" but to "make sure [users] see what [they] find most meaningful" (*id.* ¶ 168).  The AGs have adduced no evidence that Meta had a "goal" to increase "time spent" on its platforms at the time these statements were made.

Alleged **statements about safety and well-being**, including profits over safety, also suffer from multiple defects that render them inactionable.  For example, the AGs rely on a statement by Sheryl Sandberg on an investor earnings call where, in discussing Facebook's commitment to helping small businesses reach customers and grow, she noted that "we also have to keep people safe and give them control over their experience on our apps.  And we are." (*Id.* ¶ 122.)  The AGs have no evidence that Ms. Sandberg—whom they did not even depose in this case—did not actually hold this opinion.  Similarly, the AGs allege that "Instagram Director of Fashion Partnerships Eva Chen publicly stated that Meta's 'entire focus is focusing on the wellbeing of the community.'" (*Id.* ¶ 125.)  But the AGs misquote Ms. Chen, who, when discussing *Meta's Wellbeing Team*, said "[*the team's*] entire focus" was well-being, and they have no evidence that she knew her statement was false.  *See* Sangeeta Singh-Kurtz, *Instagram is building a team to stop people from feeling bad on Instagram*, Quartz (Apr. 3, 2018), https://archive.ph/Wvh7k.  The absence of evidence of falsity, intent, and tendency to deceive renders numerous other statements inactionable.

1

All of the foregoing statements and others are inactionable on numerous additional grounds, including that they are: (i) *inactionable puffery* (*e.g.*, *2-BT, LLC v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 2013 WL 5729932, at *4 (D. Colo. Oct. 18, 2013)) (*e.g.*, Compl. ¶ 331 (Meta's statement that it "want[s] the time people spend on Instagram and Facebook to be intentional, positive and inspiring" is clear inactionable puffery as an aspirational statement); *id.* ¶ 222 (Mr. Zuckerberg's statement that Facebook's focus in 2018 was "making sure Facebook isn't just fun to use, but also good for people's wellbeing" is puffery, not deception about whether Meta prioritizes profits over safety as the AGs allege)); (ii) *statements of opinion* protected by the First Amendment (*see Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985)) (*e.g.*, Compl. ¶ 427 (Mr. Mosseri's statement to Congress, "I don't believe that research suggests that our products are addictive" is an inactionable statement of opinion)); (iii) *statements not directed to consumers or made in connection with a consumer transaction* (*e.g.*, Va. Code § 59.1-200(A)(5)), *in the course of Meta's business* (*see, e.g.*, Minn. Stat. § 325D.44, subd. 1), or *in the conduct of any trade or commerce* (*see, e.g.*, Ky. Rev. Stat. § 367.170(1)) (*e.g.*, Compl. ¶ 122 (Ms. Sandberg's statement on an investor earnings call was not directed to consumers)); and (iv) *statements made to Congress, or in another qualifying legislative or judicial context*, which are inactionable under the *Noerr-Pennington* doctrine (*see Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)) (*e.g.*, Compl. ¶ 128 (Antigone Davis's statement to Congress that "[w]e have put in place multiple protections to create safe and age-appropriate experiences for people between the ages of 13 and 17," as the AGs concede, was meant to "persuade lawmakers")).[1]

Finally, to the extent the AGs seek to hold Meta liable for *pure omissions*—such as the alleged failure to publicly release surveys of Instagram users (*see* Compl. ¶¶ 482, 491-92), the deception claims fail because the AGs have no evidence that Meta had a duty to disclose or that the allegedly omitted information was material. *See, e.g.*, *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 961 (Conn. 2005); N.J. Stat. Ann. § 56:8-2. Compelling Meta to make controversial and unproven statements would also violate the First Amendment. *See, e.g.*, *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117, 1121-22 (9th Cir. 2024).

***Unfairness Claims.*** Meta is entitled to summary judgment on the unfairness and unconscionability claims. In light of the motion to dismiss decision, these claims are premised on three remaining features: (i) time restrictions offered on Meta's platforms; (ii) the "multiple accounts" function; and (iii) appearance-altering filters. ECF No. 1214 at 29-31, 96-97.

As a threshold matter, the record confirms that Section 230 bars such claims as to these features, which are tools through which Meta makes third-party content available. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009). The AGs have not put forth any evidence to the contrary. The First Amendment also bars these claims to the extent they challenge Meta's editorial judgment on publication of third-party content or Meta's own speech. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 728-29, 731-32 (2024).

These claims also fail because the AGs have no evidence that these features are actionable under the applicable states' laws. For the appearance-altering filters, the only

---

[1] The AGs also fail to offer evidence to meet a panoply of other state-specific requirements, including, but not limited to, causation and harm standards such as causal nexus, injury, public impact requirements, and unequal bargaining power.

surviving theory of liability is that users are harmed by creating and seeing their own altered images.  ECF No. 1214 at 29-30.  For time restrictions, the AGs' theory is that the features do not adequately enable users to restrict time spent on the platform.  (Compl. ¶¶ 578, 582.)  And for multiple accounts, the theory is that allowing users to register for more than one account encourages them to "continuously engage with Instagram."  (*Id.* ¶ 370.)  The AGs have no evidence that these features have caused or even *can* cause harm.[2]  And for the eight states[3] that consider whether the feature "offends public policy" or is "immoral, unethical, oppressive, or unscrupulous," the AGs have no evidence of harm that would constitute a violation of public policy, and such standards are unconstitutionally vague.  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984).  In addition, the AGs have no evidence of supplier deception (KS), unequal bargaining power (KS and KY), unconscionable one-sidedness (NE), or a departure from standards of good faith (NJ).  And for the four states that require intent for unfairness claims (CO, IL, KS, and KY), the AGs have no evidence of such intent.  The AGs' claims are also not cognizable to the extent they target alleged harms outside the scope of the statutes' protected interests.

   ***Additional Limitations on the Deception and Unfairness Claims.***  Even if any of the AGs' consumer protection claims could survive summary judgment, any recovery must be limited, including on the following grounds (as applicable in each state): statute of limitations; laches; retroactive application of law; extraterritoriality; inability to seek disgorgement; inability to seek civil penalties; and consent, to the extent violations are counted on a per-consumer basis.[4]

   **B.  COPPA**

   Meta is entitled to summary judgment on the COPPA claim and any consumer protection claims predicated on a COPPA violation or other allegations relating to under-13 users.  The AGs have no evidence that Meta's platforms are targeted at children under 13 as their primary audience.  Even if the AGs could point to a disputed issue of fact as to whether either Facebook or Instagram is a mixed audience online service pursuant to 16 C.F.R. § 312.2, it is undisputed that the platforms' age-gating processes are sufficient to qualify for the COPPA exception for mixed audience services.  *See id.*; Children's Online Privacy Protection Rule, 90 Fed. Reg. 16918 (Apr. 22, 2025).  Nor is there evidence showing that Meta had actual knowledge of under-13 users on Facebook or Instagram.  15 U.S.C. § 6502(a)(1); 16 C.F.R. § 312.3.  The only evidence on which the AGs rely in support of their actual knowledge argument is expert analysis of generalized data to draw statistical conclusions.  But an expert opinion alone cannot create an issue of fact.  *See, e.g.*, *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856-57 (9th Cir. 2019).  And the underlying factual evidence on which the expert relies does not create any issue of fact

---

[2] Nine states require or consider such proof: CA, CT, DE, IL, LA, MN, NC, NY, and PA.

[3] CT, IL, LA, MN, NC, NE, PA, and SC.

[4] Because Meta does not yet know the AGs' monetary relief theories, Meta reserves the right to make additional arguments as to such relief, including violation counting.  Pursuant to the Court's guidance at the August 22, 2025, Case Management Conference, Meta does not address, and also reserves, its Section 230 arguments relating to failure-to-warn claims while that issue is on appeal in the Ninth Circuit.

as to actual knowledge.  Moreover, any recovery on the COPPA claim must be limited by the applicable statute of limitations and the AGs' inability to obtain disgorgement.

In addition, summary judgment as to all claims should be granted for the subsidiaries of Meta Platforms, Inc. because the undisputed evidence shows they are not responsible for the platforms' development and operation.

II.   **Rule 702 Motions**[5]

**Dr. Adam Alter.**  Certain opinions in Alter's nearly 400-page report should be excluded. First, Alter's opinion that Meta's statements are false or have a tendency to mislead merely compares how consumers supposedly would understand the statements at issue with contrary factual assumptions provided by counsel, which assumes the ultimate issue and does not offer any specialized expertise or knowledge that would assist the jury in determining whether a statement is false or misleading.  Second, Alter's opinion that consumers were exposed to Meta's statements is not based on any reliable methodology or qualifications.  Third, Alter's opinion that Meta's platforms, in whole or in part, are "directed to children" does not apply the relevant legal standard and therefore draws legally impermissible conclusions.  Furthermore, Alter limits his review to features and content he says are directed at children without considering the numerous ways in which the platform is not directed to children.  *See Engilis v. Monsanto Co.*, 151 F.4th 1040, 1052-55 (9th Cir. 2025) (excluding opinion because expert failed to consider countervailing evidence).  Fourth, Alter repeatedly and impermissibly opines on Meta's state of mind or intent.  Fifth, significant portions of Alter's report engage in extensive and impermissible factual narrative untethered to his expert opinion.  *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR, 2023 WL 4556765, at *5 (N.D. Cal. July 17, 2023) (excluding opinion summarizing documents that "merely serves as a conduit for attorney argument" and "substitute[s the expert's] own judgment for [the jury's]").  Meta reserves the right to amend or raise additional grounds to exclude Alter's opinions based on information learned through his forthcoming deposition and/or to exclude opinions set forth in his forthcoming rebuttal report.

**Dr. Ravi Iyer.**  Iyer, a moral and social psychologist, opines that a set of changes to Meta's services would "sufficiently mitigate" what he calls "unwanted, negative, and harmful experiences" of teen users.  At his deposition, Iyer was unable to define what he meant by "sufficient" mitigation, or why the numerous measures Meta has already taken to improve teens' experiences were "insufficient."  Nor could he provide any benchmark for anyone to tell whether his combination of design changes—which have never before been implemented—actually would mitigate harms, as he asserts.  For at least these reasons, Iyer's opinions should be excluded in their entirety.

---

[5] Pursuant to ECF Nos. 2208 and 2274, on September 30, 2025, Meta filed Rule 702 motions as to certain of the AGs' experts, and, pursuant to ECF Nos. 2271 and 2274, Meta will file separate letter-briefs on January 5, 2026, as to AG experts whose opening reports are still forthcoming. In the event the AGs disclose new expert opinions or additional experts after the filing of this letter, Meta reserves the right to file a supplemental letter-brief.

Dated:  November 19, 2025	Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

  /s/ *James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
Antonio J. Perez-Marques (*pro hac vice*)
antonio.perez@davispolk.com
Caroline Stern (*pro hac vice*)
caroline.stern@davispolk.com
Corey M. Meyer (*pro hac vice*)
corey.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

**COVINGTON & BURLING LLP**

  /s/ *Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
asimonsen@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (650) 632-4800

Phyllis A. Jones (*pro hac vice*)
pajones@cov.com
Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc.*