# EXHIBIT F



ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street - 5th Floor
P.O. Box 45029
Newark, New Jersey 07102
*Attorney for New Jersey Division of Consumer Affairs*

By:    Kashif T. Chand
       Deputy Attorney General
       (609) 433-4473

## ADMINISTRATIVE ACTION
## SUBPOENA DUCES TECUM

**THE STATE OF NEW JERSEY to:**    Meta Platforms, Inc.
                                    1601 Willow Road
                                    Menlo Park, California 94025

**YOU ARE HEREBY COMMANDED** to produce to the New Jersey Division of Consumer Affairs, through Kashif T. Chand, Deputy Attorney General, at Division of Law, 124 Halsey Street, 5th Floor, Newark, New Jersey 07102, on or before **December 9, 2021 at 10:00 a.m.**, all Documents requested in the attached "Schedule of Subpoenaed Documents." Your obligations with respect to the production of the Documents are explained in the "Definitions" and "Instructions."

In lieu of your appearance, you may produce the Documents and information requested in the attached Schedule on or before the return date at the address listed above by Certified Mail, Return Receipt Requested, addressed to the attention of Kashif T. Chand, Deputy Attorney General. You may, at your option and expense, provide certified, true copies in lieu of the original Documents identified in the attached Schedule by completing and returning the Certification appended hereto. Please also complete and return the Certification of Compliance, in accordance with the Instructions herein, indicating that Your production of Documents and information is complete and correct as well as accurate and truthful to the best of Your knowledge and belief.

This Subpoena is issued in connection with an official investigation conducted by the New Jersey Division of Consumer Affairs.  You have an obligation to retain and continue to maintain the requested Documents.

Failure to comply with this Subpoena may render you liable for contempt of court and such other penalties as provided by law.  This Subpoena is issued pursuant to the authority of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., specifically N.J.S.A. 56:8-3 and 56:8-4.

ANDREW J. BRUCK
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:_____
          Kashif T. Chand
          Deputy Attorney General

DATED:  November 18, 2021

## <u>DEFINITIONS</u>

1.  The terms "**and**" and "**or**" are terms of inclusion and not of exclusion and shall be construed either disjunctively or conjunctively as necessary to obtain the broadest meaning possible and bring within the scope of this subpoena any document or information that might otherwise be construed to be outside its scope.

2.  The term "**any**" shall be construed as "any and all."

3.  "**Communication**" means any oral or written communication of any kind, including but not limited to face-to-face communications, telephone communications (including voice mail, text messages, or any other means of communication utilizing a telephone), letters, memoranda; emails, instant messages, internet relay chat logs, enterprise communication tools (such as, but not limited to, Workplace), dashboards, or other transmittal of documents or data through the use of a computer, and includes any document that digests, memorializes, or records a communication.

4.  "**Document**" includes, without limitation, any written, printed or graphic matter of any kind, including writings, drawings, graphs, charts, calendars, photographs, sound recordings, images; and any electronic data transmission or compilation, including documents stored in personal computers, portable computers, tablets, smartphones, workstations, minicomputers, mainframes, servers, cloud computing servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Your premises.  "Document" includes copies if the copy bears any other marking or notation of any kind, and each such document shall include all attachments, enclosures, appendices, exhibits, and drafts of each such document, that are in Your actual or constructive possession, custody, or control.

5.  "**Identify**" **(with respect to Persons)** means to state, to the extent known, the full name, job title, affiliation, last known mailing address, telephone numbers and email address.

6.  "**Identify**" **(with respect to third party entities)** means to state, to the extent known, the name and any D/B/As, the mailing and physical addresses of the entity's headquarters or primary location, web address, an individual point of contact, and the telephone numbers and email address of that individual.

7.  "**Minor**" means a Person that You know or have reason to know is under the age of 18 years of age.

8.  "**Person**" means a natural person and includes Minors.

9.  "**Product**" means the online or mobile features, platforms, or services referred to as Instagram and Instagram for Kids and includes all related features or functions.

10.    "**Relating To**" means in whole or in part constituting, containing, concerning, discussing, commenting upon, describing, analyzing, identifying, stating, regarding, pertaining to, referring to, or forming the basis of.

11.    "**Relevant Period**" refers to January 1, 2015 to the present date, 2021, except where otherwise indicated.

12.    "**User**" means a Person that has one or more account(s) with Your Product.

13.    "**You**," "**Your**," or "**Meta**" refers to Meta and any D/B/As, affiliated entities, predecessor entities, successor entities, entities owned or controlled directly or indirectly by You, including but without limitation Instagram.  "You" and "Your" also encompasses agents and all other business entities acting, or purporting to act, on Your behalf.

14.    "**Young User**" refers to Users that are either Minors or Young Adults.

15.    "**Young Adult**" means a Person that You know or have reason to know is 18 years of age or older but under the age of 24.

## <u>INSTRUCTIONS</u>

1.   The Subpoena requests that follow are continuing in nature, and thus, You have a continuing obligation to timely serve supplemental responses if You locate or obtain additional, more complete, or new information or Documents after Your response is due.

2.   This Subpoena is directed to Meta, as well as its owners, officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, attorneys, corporations, divisions, subsidiaries, affiliates, successors, assigns or any other Person(s) or entity(ies) acting or purporting to act on its behalf.

3.   Unless otherwise specifically stated, the period of time encompassed by this Subpoena shall be from January 1, 2015, up to and including the date of Your response to the Subpoena.

4.   No Subpoena request(s) should be construed to limit the scope of any other Subpoena request(s), or of any Definition set forth below, and no subpart of any Subpoena request should be construed to limit the scope of any other subpart of such Subpoena request.

5.   Unless otherwise specifically stated, capitalized terms are defined as set forth in the Definitions above.  All definitions shall be construed to extend to all forms, tenses, capitalizations, and conjugations of the defined word.  The use of the singular form of any word includes the plural and vice versa.

6.   You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit, or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate, or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit, or otherwise vary Your preservation obligations under law shall be construed in any way to narrow, qualify, eliminate, or otherwise diminish such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless a Deputy Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

7.   This Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, shareholders, founders, managers, agents, servants, employees, representatives, attorneys, corporations, divisions, affiliates, subsidiaries, successors, assigns, or any Persons from whom You could request Documents or information.  If Documents or information responsive to a request in this Subpoena are in Your control, but not in Your possession or custody, You shall promptly Identify the

Person with possession or custody and instruct such Person to furnish such Documents and information to You for production.

8.    If there are no Documents responsive to any particular Subpoena request, You shall so certify in writing in the Certification of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned.

9.    When a Subpoena request requires both privileged and non-privileged Documents, the non-privileged Documents shall be produced to the fullest extent possible without thereby disclosing the privileged Documents.  When a response includes Documents that have been redacted or otherwise altered on the basis of privilege, any redaction or alteration shall be clearly visible on the Document.

10.    If a Subpoena request requires the production of Documents the form and/or content of which has changed over the relevant period, identify the period of time during which each such Document was used and/or otherwise was in effect.

11.    All Documents responsive to this Subpoena, regardless of whether produced or withheld on the basis of a legal privilege or doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page with a unique, sequential, identifying, and consecutive Bates Number.  The Bates Number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying, and consecutive number, but such Bates Number shall not disrupt or alter the form, sequence, organization, or other order or layout in which such Documents were maintained before production.  The Person making such production shall identify the corresponding Subpoena request number(s) to which each Document or group of Documents responds and the Custodian of each document.

12.    Electronically Stored Information should be produced in the format specified in the attached **Exhibit A**.

13.    Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization, or other order or layout in which it was maintained before production, including production of any Document or other material indicating filing or other organization.  Such production shall include any file folder, file jacket, cover, or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

14.    For each Document withheld from production on the basis of a legal privilege or doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same Bates Number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

15. If one or more Documents or any portions thereof requested herein are withheld or redacted on the basis of a legal privilege or doctrine, identify each Document or portion thereof as to which the objection is made, together with the following information:

    a. The Bates Number, or range of Bates Numbers, of the Document(s) or portion thereof as to which the objection is made;

    b. Identify each author or maker of the Document;

    c. Identify each addressee or recipient of the Document or Person(s) to whom its contents were disclosed or explained;

    d. The date thereof;

    e. The title or description of the general nature or subject matter of the Document and the number of pages;

    f. The present location of the Document;

    g. Identify each Person who has possession, custody, or control of the Document;

    h. The legal ground for withholding or redacting the Document; and

    i. If the legal ground is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

16. In the event that any Document that would have been responsive to this Subpoena was formerly in Your possession, custody, or control but is no longer available, no longer exists, or has been misplaced, destroyed, discarded, or transferred, identify that Document and also include:

    a. A detailed description of the general nature or subject matter of such Document and its contents;

    b. Identify the Person(s) who prepared such Document and its contents;

    c. Identify the Person(s) who have seen or had possession of such Document;

    d. The date(s) on which such Document was prepared, transmitted, or received;

    e. The date(s) on which such Document became unavailable;

    f. The reason why such Document is unavailable, including whether it was misplaced, destroyed, discarded or transferred;

g.      For each such Document destroyed, discarded, or transferred, the conditions of and reasons for destroying, discarding, or transferring the Document and Identity the Person(s) requesting and/or involved in destroying, discarding, or transferring the Document; and

h.      Identify all Persons with knowledge of any portion of the contents of the Document.

17.    A copy of the Certification of Compliance provided herewith shall be completed and executed by all natural Persons supervising or participating in compliance with this Subpoena, and You shall submit such executed Certification(s) of Compliance with Your response to this Subpoena.

18.    In a schedule attached to the Certification of Compliance provided herewith, You shall Identify the natural Person(s) who prepared or assembled any productions or responses to this Subpoena. You shall further Identify the natural Person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred. You shall further Identify all other natural Person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such Person's knowledge and belief; and (b) that any Documents produced are authentic, genuine, and what they purport to be.

19.    You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena. For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

## CERTIFICATION OF COMPLIANCE

I _____, certify as follows:

1.  I am employed by Meta Platforms, Inc. ("Meta"), in the position of _____;

2.  Meta's productions and responses to the Subpoena of the Attorney General of the State of New Jersey, dated November 18, 2021 (the "Subpoena"), were prepared and assembled under my personal supervision;

3.  I made or caused to be made a diligent, complete, and comprehensive search for all Documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena;

4.  Meta's production and responses to the Subpoena are complete and correct to the best of my knowledge and belief;

5.  No Documents or information responsive to the Subpoena have been withheld from Meta's production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

6.  All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the Subpoena;

7.  The Documents contained in Meta's productions and responses to the Subpoena are authentic, genuine and what they purport to be;

8.  Attached is a true and accurate record of all natural Persons who prepared and assembled any productions and responses to the Subpoena, all natural Persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all natural Persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such natural Person's knowledge and belief; and (b) that any Documents produced are authentic, genuine, and what they purport to be; and

9.  Attached is a true and accurate statement of those requests under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:

_____
Name (signature)

_____
Name (print)

_____
Title or Position

## <u>CERTIFICATION OF TRUE COPY</u>

I certify that the copies of all Documents produced in compliance with this Subpoena served upon Meta Platforms, Inc., with the return date of December 9, 2021 are true copies of the original Documents requested in the Schedule attached to the Subpoena.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:

_____
Name (signature)


_____
Name (print)


_____
Title or Position

## SCHEDULE OF SUBPOENAED DOCUMENTS

1.      Any Documents that show, for each month of the Relevant Period, the number and state of residence for: (1) all Users, (2) Minor Users, and (3) Young Adult Users, and the number of Minor Users and Young Adult Users that engage with Your Product at least once a month and at least once a day.

2.      Any Documents constituting or sufficient to identify all processes, policies, methods, procedures, training, technologies, and parameters for identifying the ages of Users of the Product, including whether a User or prospective User is under the age of 13, under the age of 18, or under the age of 24.

3.      Any Documents constituting or Relating To investigations, reports, analyses, or presentations Relating To the number of Users under the age of 13.

4.      Any Documents showing Your efforts to grow or retain the number of Young Users.

5.      Any Documents showing Your efforts to increase engagement or interaction with, or use of, Your Product by Young Users.

6.      Any Documents showing on a periodic basis over the Relevant Period aggregate metrics for engagements with Your Product by Young Users, such as, for example and without limitation, likes, comments, shares, views, time spent online, content created, or advertisement click-through-rates.

7.      Any Documents showing Your projections of the market for use of Your Products by Young Users.

8.      Any Documents that Identify all Persons, teams, groups, or divisions responsible for maintaining or increasing the number or activity of Young Users on Your Product during the Relevant Time Period, including but not limited to Your "Marketing Insights," "Product Marketing," and "Core Data Science" teams, groups, or divisions.

9.      Any Communication between, by, or with the teams, groups, or divisions (or any members thereof) identified in **Request No. 8** Relating To efforts to maintain or increase the number and activity of Young Users on Your Product.

10.     Any Documents constituting or reflecting employee payment or salary schedules or structures, bonus or other incentive payments, or promotions Relating To an employee's efforts to maintain or increase the number and activity of Young Users on Your Product.

11.     Any Documents Relating To Your development and testing of techniques, strategies, or features designed to increase the use of Your Products by Young Users, including, but not limited to, the age-up strategy identified in the document titled "Teens & Young Adults on IG & FB." This Request includes but is not limited to Documents reflecting the design, methodology, running of, and results of all testing (including without limitation, diary studies, A/B or multivariate testing,

or experiments) of Your Products and any Product features concerning Young Users, and expenditures for such testing.

12.     Any Documents that Identify all Persons, teams, groups, or divisions that during the Relevant Period were involved in designing, running, or interpreting tests of the Product or Product features Relating To Young Users.

13.     Any Communication sent or received by the Persons and members of the teams, groups, or divisions identified in **Request No. 12** Relating To the evaluation of current or future use of Your Products by Young Users.

14.     Any Documents Relating To studies, testing, research, risk analyses, or investigations (including without limitation "Proactive Risk Investigations") into mental or physical health impacts or effects Relating To the use of Your Products by Young Users, including all draft, annotated, and final reports, research papers, analyses, white papers, slide decks, presentations, synopses, blog posts, talking points, or memoranda reflecting the results of such testing, studies, risk analyses, or investigations.  Such studies include, but are not limited to:

    a.     "Problematic Facebook use: When people feel like Facebook negatively affects their life";

    b.     "Beyond the Individual User: Understanding our Products through the Household Ecosystem";

    c.     "Expanding Messenger Kids to More Countries and Adding New Features";

    d.     "Eating Disorders PRI Analysis Document";

    e.     "Teen Mental Health Deep Dive";

    f.     "Hard Life Moments-Mental Health Deep Dive";

    g.     "Prioritization – Which issues come on top and what should we care about?";

    h.     "The Role of the Teen in Shaping a Household's Experience of Instagram";

    i.     "Sizing Negative Social Comparison on IG: Baseline Data from Daisy Controls Wave 1";

    j.     "Appearance-based social comparison on Instagram";

    k.     "How the topics people see are linked to appearance comparison on IG";

    l.     "Teen Girls Body Image and Social Comparison on Instagram – An Exploratory Study in the US";

    m.     "Social comparison on Instagram – Results from a 100k person survey + behavioral data";

    n.     "The Power of Identities: Why Teens and Young Adults Choose Instagram";

    o.     "What We Know About Body Image (Literature Review)";

    p.     "Mental Health Findings – Deep Dive into the Reach, Intensity, IG Impact, Expectation, Self-Reported Usage and Support of mental health issues. Overall analyses and analysis split by age when relevant";

    q.     "Expression and Authenticity – Marketing Insights, Instagram Public Policy";

    r.     "Teen Communication – Jobs To Be Done – 13 Year Old Analysis";

    s.     "Defining Body Image Issues";

    t.     "Hard Life Moments - Subjective Well-being on Instagram";

    u.     "Likes and social comparison on Instagram";

> v.      "Social Comparison, like counts, and Project Daisy";
> w.     "Selfies, filters, and social comparison on Instagram";
> x.     "Social comparison on Facebook, Feedback, positivity, and opportunities for comparison";
> y.     "Country differences in social comparison on social media"; and
> z.     Household Ecosystem project.

15.    Any Documents and Communications Relating To "soft interventions," "soft options," interventions, or Product changes discussed or implemented in response to indicators or concerns of harm that may result from Young Users' use of Your Product, including the issues identified in the Documents responsive to **Request No. 14**. This request includes, but is not limited to, Documents and Communications Relating To "Project Daisy."

16.    Any Documents identifying, and Communications to or from, all Persons that designed, conducted, researched, studied, advised, analyzed, received, commented on, or authored the tests, studies, research, risk analyses, or investigations identified in **Request No. 14**.

17.    Any Documents showing Your overall expenditures during the Relevant Period for researching or studying mental or physical health impacts or effects Relating To the use of Your Products by Young Users.

18.    Any Documents sufficient to show all Persons, teams, divisions, or groups that, during the Relevant Period, studied, researched, or responded to mental or physical health impacts or effects Relating To the use of Your Products by Young Users.

19.    Any Documents and Communications Relating To the Research fund announced in December 2017 at https://about.fb.com/news/2017/12/hard-questions-kids-online/ (last visited Nov. 12, 2021), including documents and communications Relating To the scope and purposes of the fund.

20.    Any Communications with Persons acting on behalf of the below entities and groups:

> a.     AAKOMA Project (including but not limited to Dr. Alfiee M. Breland-Noble);
> b.     Blue Star Families;
> c.     Center for Digital Media Innovation and Diversity (including but not limited to Dr. Kevin Clark);
> d.     Center on Media and Child Health (including but not limited to Dr. Michael Rich and Kristelle Lavallee);
> e.     Child Mind Institute (including but not limited to Dr. Dave Anderson);
> f.     Connect Safely (including but not limited to Larry Magid);
> g.     Cyberbullying Research Center (including but not limited to Dr. Sameer Hinduja);
> h.     Digital Wellness Lab;
> i.     Duke Center for Eating Disorders (including but not limited to Nancy Zucker);
> j.     Family Online Safety Institute (including but not limited to Stephen Balkam and Jennifer Hanley);
> k.     Future of Privacy Forum (including but not limited to Amelia Vance);

l.      Fred Rogers Center (including but not limited to Rick Fernandes);

m.     Jed Foundation;

n.      Lewis J. Bernstein and Associates LLC;

o.      MediaSmarts (including but not limited to Cathy Wing Jane Tallim);

p.      National Eating Disorders Association;

q.      National PTA;

r.       New Mexico State University Learning Games Lab;

s.      Project Rockit (including but not limited to Lucy Thomas);

t.       Rachel Rodgers (Northeastern University);

u.      Sesame Workshop (including but not limited to Dr. Lewis Bernstein);

v.      Janis Whitlock (Cornell University);

w.     Yale Center for Emotional Intelligence (including but not limited to Dr. Robin Stern).

21.    Any Documents Relating To Your provision of funding, data, or any goods or services to any of the individuals, groups, or entities identified in **Request No. 20**.

22.    Any Documents constituting agreements or contracts with any of the individuals, groups, or entities identified in **Request No. 20**.

23.    Any Documents including meeting minutes, preparatory materials, agendas, presentations, or otherwise, and Communications Relating To the "Youth Advisors" group described in https://www.facebook.com/fbsafety/posts/1446426198728547 (last visited Nov. 12, 2021) and https://about.fb.com/news/2021/07/age-verification/ (last visited Nov. 12, 2021), including but not limited to Documents that Identify the members of such group, and all meeting minutes, notes, preparatory materials, agendas, reports, presentations, or otherwise.

24.    Any Documents and Communications with members of Your "Safety Advisory Board, as referenced at https://www.facebook.com/help/222332597793306 (last visited Nov. 12, 2021), Relating To the use of Your Product by Young Users, including but not limited to Documents that Identify the members of such board and all meeting minutes, notes, preparatory materials, reports, agendas, presentations, or otherwise.

25.    Any Documents sufficient to show all representations to Users, potential Users or the public, Relating To the safety or benefits of Your Product to Users or Young Users, including without limitation, representations made in Your privacy policy, terms and conditions, advertising, marketing, videos, blog posts, press releases, email, pop-up screens, government testimony, public speaking, and Product menus or controls.

26.    Any Documents sufficient to show all representations to investors, potential investors, advertisers, academics, researchers or the government Relating To the safety or benefits of Your Product to Users or Young Users.

27.    Any Communications with Persons affiliated with any media entity Relating To the safety or benefits of Your Product to Young Users.

28.     Any Communications by and between senior executives Relating To the use of Your Products by Young Users.

29.     Any Document comprising all meeting preparatory materials, agendas, and minutes of Your Board of Directors Relating To the use of Your Products by Young Users.

# EXHIBIT A

**(Guidelines for the Production of Electronically Stored Information)**



*State of New Jersey*
OFFICE OF THE ATTORNEY
GENERAL DIVISION OF LAW

## Guidelines for the Production of Electronically Stored Information

These guidelines outline the technical requirements for producing scanned paper collections, email, and other electronically stored information (ESI) to the Division of Law (NJ DOL) in the New Jersey Attorney General's Office (NJ OAG), where the production will be loaded to *Relativity* software to search, review and retrieve documents. These guidelines are intended for use by a knowledgeable party that is familiar with the technical aspects of ESI including document storage, organization, and format issues. Any proposed production in a format other than those identified below must be discussed with and approved by the NJ OAG.

## I.   General Instructions

1.  A cover letter should be included with each production. The cover letter should list each piece of media (hard drive, thumb drive, DVD or CD) included in the production along with the Bates range.

2.  Documents created or stored electronically MUST be converted or processed to TIFF files, Bates numbered, and include fully searchable text (OCR), not printed to paper or .PDF files.

3.  Data can be produced on CD, DVD, hard drive, or other removable media. Use the media requiring the least number of deliverables.

4.  Each piece of media should be "self-contained," for example, if 5 CDs are provided, each must have its own associated load file. CD or other media can be separated over time and this practice ensures IT's ability to reload any particular piece of media at any time.

5.  Label all media (printed not handwritten) with the following:
    a.      Case number
    b.      Production date
    c.      Bates range
    d.      Disk number (1 of X), if applicable

6. For a given project, all load files should use the same field names, ordering and structure as the first delivery.

7. Ensure there are no truncated file or folder names in your production. These would be indicated by a tilde ~. (E.g. AAA000~1.TIF).

8. When reviewing your load file, missing or empty folders indicate a potential problem. If your image folder contains subfolders 012, 013 and 015, your first question should be what happened to 001-011 and 014.

9. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.

10. All productions should be checked and produced free of computer viruses or other malware.

11. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the custodian.

## II.   Delivery Formats

Subpart A of this section sets forth the standard production format. Under limited circumstances, it may not be possible to produce ESI in that preferred format. Under those circumstances, and with prior approval of the NJ OAG, .PDF files and Email native files may be produced in the formats provided in subparts B. and C. of this section, respectively.

### A.   Production Format

All scanned paper, email and native file collections should be converted or processed to TIFF files, Bates numbered, and include fully searchable text (OCR). Most document productions will contain the elements listed below:

Folder labeled IMAGES
Folder labeled DATA
Folder labeled TEXT Folder
labeled NATIVES

### 1.   Bates Numbering

The Bates number must be a unique, consistently formatted identifier consisting of an alpha prefix along with a fixed length number for each custodian, e.g., "ABC0000001". This format must remain consistent across all production numbers. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted. Avoid Bates prefixes containing characters other than A through Z.

19

### 2. Images

### a. Generally

1. Black and White images should be single-page, Group IV TIFS (1 bit), and scanned at 200-300 DPI (Presentation software such as PowerPoint, AUTOCAD images and Spreadsheet images are exceptions please see step 4 below.) Color images should be single-page JPGS.

2. File names cannot contain embedded spaces.

3. The number of TIFF files per folder should not exceed 1000 files.

4. Rendering PowerPoint, AUTOCAD images and Excel files to images:
   i. PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
   ii. AUTOCAD images: If possible, files should be scanned to single page JPEG (.JPG) file format. Color images can be discussed on a case by case basis.
   iii. Excel: A placeholder image, named by the *IMAGEID* of the file, may be used.

### b. Image Cross-Reference File

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database. The format is as follows:

ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

| | |
|---|---|
| ImageID: | The unique designation that is used to identify an image. |
| | *Note*: This ImageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. It is recommended that the format be a 7 digit number to allow for the possible increase in the size of a production. |
| VolumeLabel: | Optional, but names for volumes should not be longer than eight characters, with a suffix not wider than three characters. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document. |
| FolderBreak: | Leave empty |
| BoxBreak: | Leave empty |
| PageCount: | Optional |

**Sample IMAGE Load file** (Often referred to as Opticon or .OPT file)....

```
IMG0000001,IMG01,E:\IMAGES\001\IMG0000001.TIF,Y,,,3
IMG0000002,IMG01,E:\IMAGES\001\IMG0000002.TIF,,,,
IMG0000003,IMG01,E:\IMAGES\001\IMG0000003.TIF,,,,
IMG0000004,IMG01,E:\IMAGES\001\IMG0000004.TIF,Y,,,2
IMG0000005,IMG01,E:\IMAGES\001\IMG0000005.TIF,Y,,,
```

The fields are, from left to right:

- Field One – (IMG0000001) – page identifier
- Field Two – (IMG01) – the volume identifier  not required
- Field Three – (E:\IMAGES\001\IMG0000001.TIF) – a path to the image to be loaded
- Field Four – (Y) – Document marker – a "Y" indicates the start of a unique document
- Field Five – (blank) – can be used to indicate a folder
- Field Six – (blank) – can be used to indicate box
- Field Seven – (3) – used to store page count

*Note*: Only images belong in the Opticon load file. If OCR files are included in the same folder as the images, errors will occur when retrieving the images.

### 3.    DATA Load File (.DAT file)

The data file (.DAT) contains all the fielded information that will be loaded into the database. Data can be delivered utilizing standard delimited files for coded data (.DAT) and .TXT files for OCR data. The data file (.DAT) contains all of the fielded information that will be loaded into the database:

1. The first line of the .DAT file must be a header row identifying the field names.

2. The best practice is to use the following standard delimiters in the .DAT file:

The following chart represents the most common delimiter characters used in Relativity, along with its decimal equivalent. If the source program you are importing from uses a different font, it can change the symbolic representation of the delimiters. If this happens, match the delimiter characters with the decimal equivalents instead of relying on the displayed symbol. Using the decimal equivalents will always result in a correct delimiter match. For a complete list of delimited characters you may reference the following link.

https://help.relativity.com/9.7/Content/Relativity/Relativity_Desktop_Client/Importing/Load_file_specifications.htm

| Delimiter Name | Symbol | Decimal Equivalent |
|---|---|---|
| Comma | , | 044 |
| Paragraph | ¶ | 020 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| semi-colon | ; | 059 |

3. Date fields should be provided in the format:  mm/dd/yyyy
    a.    E.g. "01/01/2004" and not "01/01/2004 12:01:01PM"

4. Date and time fields must be two separate fields

5. All attachments should sequentially follow the parent document/email. Parent Email and attachment document families should be kept intact.

6. All metadata associated with email, audio files, and native electronic document collections should be produced.

7. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
    1) BEGBATES: Beginning Bates number
    2) ENDBATES: Ending Bates number
    3) IMAGEID: Image Key field
    4) CUSTODIAN: Individual from whom the document originated

8. The .DAT file should NOT include document text.

9. For all non-redacted documents, please include the General Metadata fields for all files and respective metadata fields for emails and electronic documents (e.g., MS Word, MS Excel, etc.) where available using industry standard techniques. With respect to redacted documents, some metadata may be withheld as needed to preserve  privileges.

10. Spaces and returns must match the original text. No odd characters, such as a semi-colon, should appear in lieu of a soft-return or a space.

11. Fields provided in a .DAT file may include the following:

| GENERAL Metadata | Definition | Field Name |
|---|---|---|
| BEG BATES | The start  bates  of  the document | Bates Beg |
| END BATES | The end bates of the document | Bates End |
| BEG ATTACH | start  bates  of attachment | Bates Beg Attach |
| END ATTACH | The end bates of attachment | Bates End Attach |
| Page Count | Number of pages | Pages |
| Custodian | The name of the original custodian  of the  file | Custodian |
| File extension | The extension  of the file | File Extension |
| Confidential | Value | Confidential |
| Email type | Defines if a message file is an email or attachment | Record Type |
| Email Attachment | Defines if email has an attachment | Email Has Attachment |
| File path | The address where the file resides on the electronic media | Source Path |
| File Size | The amount of space the file takes up on the electronic | File Size |
| MD5Hash | The MD5 Hash for the original file | MD5 Hash |
| Native File Link | Relative path of submitted native files | Native File |
|  |  |  |

| Email Metadata | Definition | Field Name |
|---|---|---|
| FROM | The person who authored the email | Email From |
| TO | Recipient(s) of the email | Email To |
| COPIED | Person(s) copied on the email | Email CC |
| BCC | Person(s) blind copied on the email | Email BCC |

| | | |
|---|---|---|
| Date Sent | Date the email was sent expressed usually Eastern Standard Time if in US | Email Sent Date |
| Time Sent | Time the email was sent expressed usually Eastern Standard Time if in US | Email Sent Time |
| Time Zone | The time zone in which the emails were standardized | Time Zone Field |
| Date Received | Date Received Date received in EST | Email Received Date |
| Time Received | Time Received Date received in EST | Email Received Time |
| Subject | Subject line of email | Email Subject |
| Attachment Count | Number of attachments | Number of Attachments |
| INTFILEPATH | Original location of email including original file name | Email Folder Path |
| INTMSGID | Unique Message ID | Message ID |

| EDocs Metadata | Definition | Field Name |
|---|---|---|
| Author | The person who authored the document | Author |
| Date Created | Date the document was created | Created Date |
| Time Created | Time the document was created | Created Time |
| Date Last Modified | Date the file was last changed/saved | Last Modified Date |
| Time Last Modified | Time the file was last changed/saved | Last Modified Time |
| Printed Date | Date that the file was last printed | Last Printed Date |
| Title | Title of the document | Title |
| Extracted Text/OCR Path | Path to extracted text of the native file | Extracted Text |
| Path | Path where native file document was stored including | File Path |

12. No more than one document per database record. The database and load files should be sorted sequentially by Bates number. Relativity displays records in the same order they are loaded.

## 4.        Text

Searchable text of the entire document must be provided for every record, at the document level. For redacted documents, provide the full text for the redacted version. Delivery should be as follows:

1. The text should be delivered as multi-page ASCII text files with the files named the same as the ImageID field.

2. Text files must be placed in a separate folder labeled TEXT.

3. The number of files per folder should be limited to 1000 files.

4. Note:
   a. DO NOT include the searchable text in the same folder as the IMAGES folder.
   b. DO NOT include searchable text in the .DAT file.

## 5.        Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.

1. Native files must be named with the same naming convention associated with its associated files in the production:

    EXAMPLE:

    NJOAG0012345 – beginning bates number from the load file. NJOAG0012345.tif – associated image file
    NJOAG0012345.txt – associated text file
    NJOAG0012345.xls – associated native Excel spreadsheet.

2. The full path of the native file must be provided in the .DAT file for the LINK field.

3. The number of native files per folder should not exceed 1000 files.

4. These files should be located in a folder named NATIVE.

### B.     .PDF File Production

Production in this format requires prior approval from the NJ OAG.

1. When approved, .PDF files may be produced in native file format.

2. .PDF files should be produced in separate folders.

3. All .PDFs must be unitized at the document level, i.e. each .PDF should represent a distinct document; a single .PDF file cannot contain multiple documents.

4. All .PDF files must contain embedded text that includes all discernable words within the document, not selected text only. This requires all layers of the .PDF to be flattened first.

5. If .PDF files are Bates endorsed, the .PDF files must be named by the Bates range.

### C.     Email Native File Production

Production in this format requires prior approval from the NJ OAG. When approved, Outlook (e.g., .PST) email files may be produced in native file format. A separate folder should be provided for each custodian.