# EXHIBIT N

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

STATE OF NEW MEXICO, EX REL.,
RAÚL TORREZ, ATTORNEY GENERAL,

Plaintiff,

v.                                                         NO. D-101-CV-2023-02838

META PLATFORMS, INC.; INSTAGRAM, LLC;
META PAYMENTS, INC.; and META PLATFORMS
TECHNOLOGIES, LLC,

Defendants.


**META'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DEPOSITIONS OF KRISTIN ZOBEL AND ELAINE DAI**

The State makes the extraordinary request to depose two of Meta's in-house counsel, Elaine Dai and Kristin Zobel, based on unsupported and demonstrably false assertions that their advice was not provided for a legal purpose and is subject to the crime-fraud exception. As established by the attached declarations of Ms. Dai and Ms. Zobel, when working as in-house counsel for Meta, they solely provided legal advice on research and did not ever direct researchers to delete research findings or data (unless deletion of that data was necessary to comply with state, federal, or foreign law). Instead, they provided the conventional legal advice of in-house counsel by advising researchers on how to ensure compliance with legal regulations and frame research findings accurately to avoid litigation risk. The State's Motion should be denied.

## BACKGROUND

The type of research and data collection that Meta performs is subject to state, federal, and international data restrictions, such as the Children's Online Privacy Protection Act ("COPPA"), which, along with its implementing regulations, requires businesses to obtain parental consent before collecting data from children under the age of 13. *See* 15 U.S.C. § 6501, *et seq*.; *see also* 16 C.F.R. § 312. Moreover, at the time that Ms. Dai and Ms. Zobel worked for Reality Labs, Meta's business unit focused on virtual reality, litigation against Meta alleging harms to teen mental health was either imminent or had already been filed. To ensure Meta complied with legal regulations and that research results were accurately captured to reduce litigation risk, Meta in-house counsel provided legal advice to researchers at the company at all stages of the research process.

Ms. Dai and Ms. Zobel were two of those Meta in-house counsel. Ms. Dai is an attorney who has worked for Meta since June 2020. Ex. 1 (Declaration of Elaine Dai ("Dai Decl.")), ¶ 3. Although she has since moved to a different legal team at the company, Ms. Dai began her work for Meta as an attorney in the Reality Labs division, where she provided legal advice on research,

1

privacy issues, integrity, and accessibility. *Id.* During her time at Reality Labs, and particularly as it related to research done in-house at Meta, Ms. Dai provided only legal advice to Meta employees. *Id.* ¶¶ 3, 11. Ms. Zobel is also an attorney who has worked at Meta since May 2022, and has always worked in the Reality Labs division. Ex. 2 (Declaration of Kristin Zobel ("Zobel Decl.")), ¶ 3. In her role, Ms. Zobel has also provided exclusively legal advice to Meta employees about research and other issues. *Id.* ¶¶ 4, 13.

Ms. Dai and Ms. Zobel both provided legal advice to Meta employees about how to structure research studies and questions to mitigate litigation risk and to ensure compliance with legal obligations. Dai. Decl. ¶¶ 5-6; Zobel Decl. ¶¶ 5-6. For example, Ms. Dai and Ms. Zobel advised researchers on how to structure research questions to avoid collecting data in a way that violated state, federal or foreign law. Dai. Decl. ¶ 5; Zobel Decl. ¶ 5. Ms. Dai and Ms. Zobel also both advised researchers on how to draft summaries of research findings in a way that avoided implying a legal conclusion. Dai. Decl. ¶ 7; Zobel Decl. ¶ 7. Researchers or their managers, however, always had final say on the words used in their research summaries. Dai. Decl. ¶ 7; Zobel Decl. ¶ 7. Neither Ms. Dai nor Ms. Zobel ever instructed researchers to delete research findings or research data, unless deletion of that data was necessary to comply with laws—both federal, state, and foreign—precluding the retention of data (and only if that same data was not subject to a legal preservation obligation). Dai. Decl. ¶ 9; Zobel Decl. ¶ 9.

In November 2021, Ms. Dai gave a presentation to Reality Labs researchers titled "(RL) Best Practices for Sensitive Research and AC Privilege." Dai. Decl. ¶ 10. Consistent with the advice that Ms. Dai provided to researchers on an individual level, in this presentation, Ms. Dai provided legal advice to Reality Labs researchers as to how to structure and describe research in ways that are compliant with legal obligations. *Id.* Ms. Dai also defined and explained attorney-

client privilege.  *Id.*[1]

## **LEGAL STANDARD**

"Parties may obtain discovery of any information, *not privileged*, which is relevant to the subject matter involved in the pending action."  Rule 1-026(B)(1) NMRA (emphasis added).  When all of the testimony sought in a deposition would be subject to the attorney-client privilege, courts will prevent taking of the entire deposition.  *See, e.g.*, *Dowd v. Calabrese*, 101 F.R.D. 427, 440 n.39 (D.D.C. 1984) ("Since all of the information sought by plaintiffs from [the attorney] is privileged (except to the extent that it may be irrelevant) there is no need to require [the attorney] to attend the deposition and to assert the privilege there in response to specific questions."); Paul Rice, 2 *Attorney-Client Privilege in the U.S.* § 11:5 (2019) (collecting cases).

Attorney-client privilege applies when there exists "a confidential communication made for the purpose of facilitating or providing professional legal services to [a] client."  Rule 11-503(B) NMRA.  The party asserting the privilege has the burden of sustaining its claim of privilege, and can do so by submitting a sworn statement that "demonstrate[s] with detail an objectively reasonable basis for asserting privilege as to each withheld communication." *S.F. Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 21, 143 N.M. 215, 175 P.3d 309 (citing *Piña v. Espinoza*, 2001–NMCA–055, ¶ 24, 130 N.M. 661, 29 P.3d 1062).

Attorney-client privilege does not apply when "the professional legal services were sought or obtained to enable or assist anyone in committing or planning to commit what the client knew

---

[1] Meta objects to the State's attempt to incorporate by reference its Motion to Depose Ms. Dai and Ms. Zobel into its arguments to depose a separate individual named Jason Sattizahn.  Mot. 2 n.2. "[A]ttempts to reference and incorporate pleadings and briefs . . . in lieu of argument in [a party's] brief . . . is an unacceptable briefing practice."  *United Nuclear Corp. v. State ex rel. Martinez*, 1994-NMCA-031, ¶ 5, 117 N.M. 232, 870 P.2d 1390.  Moreover, the State has already had the chance to raise similar arguments in its reply brief in support of its motion to depose Sattizahn. Meta respectfully requests that the State not be permitted to enlarge its allotted briefing space on a separate motion via the current motion.

or reasonably should have known to be a crime or fraud." Rule 11-503(D)(1) NMRA. The party raising the crime-fraud exception to attorney-client privilege bears the initial burden of establishing a crime or fraud. *In re Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983). To do so, the movant "must do more than allege that" there has been a crime or fraud, and instead must present "*prima facie* evidence that the allegation of attorney participation in a crime or fraud has some foundation in fact." *Id.* (cleaned up). If the party claiming privilege rebuts the *prima facie* showing by providing a sufficient explanation for the attorney's conduct, "then the privilege remains." *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1307 (S.D. Fla. 2000). Because the attorney-client privilege and its exceptions are codified by statute in New Mexico, courts cannot participate in "ad hoc expansion" of the privilege or its exceptions. *Pub. Serv. Co. of New Mexico v. Lyons*, 2000-NMCA-077, ¶ 12, 129 N.M. 487, 10 P.3d 166.

<u>**ARGUMENT**</u>

**A. Ms. Dai and Ms. Zobel Provided Legal—Not Business—Advice to Researchers.**

As reflected in the attached declarations, throughout their tenures as in-house counsel for Reality Labs, Ms. Dai and Ms. Zobel provided legal—not business—advice to researchers. In arguing otherwise, the State merely offers the conclusory assertion that the advice provided by Ms. Dai in her November 2021 presentation is not privileged because policies "based on legal advice" are not themselves privileged. Mot. 8. It also claims—without support—that Ms. Dai's and Ms. Zobel's advice was "concerned with Meta's public image," rather than legal advice. *Id*. at 8-9. The State is wrong.

*First*, the presentation—and the policies contained in it—given by Ms. Dai in November 2021 was legal advice communicated to clients. Dai Decl. ¶ 10. In the presentation, Ms. Dai advised researchers how to frame research findings in ways that avoided making legal conclusions and using imprecise language that could lead to litigation risk. *Id.* That is a textbook example of

4

an attorney providing legal advice to a business client.  The presentation and underlying policy are not only counsel's judgment as to how to mitigate litigation risk, but also are counsel's communication of this judgment to employees of the company.  Courts widely consider such communications to be legal advice.  *See, e.g.*, *Feinberg v. T. Rowe Price Grp., Inc.*, No. 17-CV-00427-JKB, 2019 WL 6895580, at *5 (D. Md. Dec. 17, 2019) (finding documents discussing "litigation risk" provided privileged legal advice); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2024 WL 4907142, at *2 (N.D. Cal. Nov. 27, 2024) (same).

The State's two cited cases (Mot. 8) merely show that, in certain scenarios, policies "based on" legal advice are not themselves protected by the attorney-client privilege.  To be clear, Meta has not claimed attorney-client privilege over its research policies writ large, as evidenced by multiple deponents who have been asked about and testified about non-privileged aspects of Meta's research processes.  *See, e.g.*, Ex. 3 at 154:1-155:14; Ex. 4 at 33:10-34:15.  But the State does not seek to depose Ms. Dai about *research policies* "based on" legal advice.  Mot. 8.  It seeks to depose her about the *legal advice* she provided, as evidenced by the State's repeated reference to Ms. Dai's November 2021 presentation, which, as described above and in Ms. Dai's declaration, was legal advice.[2]

***Second***, the State also makes the unsupported claim that Ms. Dai's and Ms. Zobel's legal advice concerning phrasing of research questions and summaries was "concerned with Meta's public image," rather than legal advice.  Mot. 8-9.  This conjecture is wholly refuted by Ms. Dai's

---

[2] Moreover, if the State wanted to obtain non-privileged information about Meta's research policies generally, it already has ample, non-privileged testimony from Meta researchers, or could seek to depose another, non-legal Meta employee.  The State, however, cannot show that it could not obtain this information through "less burdensome" means than a deposition of Meta's in-house counsel.  Rule 1-026 NMRA(B)(2)(a).

and Ms. Zobel's attached declarations, in which they make clear that the advice they provided to researchers was meant to ensure compliance with legal obligations, and to mitigate the litigation risk that research findings may pose.  *See* Dai Decl. ¶¶ 3-7, 11; Zobel Decl. ¶¶ 3-7, 13.  The State cites only one case in support of its theory that this advice, writ-large, was for business purposes. Mot. 9 (citing *State v. Am. Tobacco Co.*, 1997 WL 728262, at \*9 (Wash. Super. Ct. Nov. 21, 1997)).  But, in that case, the court reached the conclusion that certain advice was provided for a business purpose only after specifically considering the documents at issue in camera and finding that, based on these documents, the specific advice at issue was not for a legal purpose.  *See Am. Tobacco Co*, 1997 WL 728262, at \*8-9.

By contrast, here, the Court is presented with competing sworn statements—some submitted by an entity named "Whistleblower Aid" from non-lawyers who were not involved in the legal decision-making at issue, and two from members of the Bar (Ms. Dai and Ms. Zobel) who were directly responsible for the challenged legal advice.  The "whistleblower" affidavits, submitted by Jason Sattizahn and other former, non-lawyer employees, merely recount their impressions of advice lawyers communicated to them—sometimes many years before—and without having a legal background to understand the legal bases for the advice.  By contrast, Ms. Dai and Ms. Zobel, attorneys with combined decades of experience, not only understand the legal bases for their advice by virtue of their experience, but they personally understand its reasoning precisely because they provided it.  Ms. Dai's and Ms. Zobel's declarations clearly state that they *solely* provided legal advice related to research, thereby meeting Meta's burden to establish the attorney-client privilege.  *See S.F. Pac.*, 2007-NMCA-133, ¶ 21.

### B. Ms. Dai's and Ms. Zobel's Advice Was Not Provided to Further a Crime or Fraud.

The State makes the far-fetched argument that all advice Ms. Dai and Ms. Zobel provided to researchers is subject to the crime-fraud exception for attorney-client privilege.  Not only are

the State's allegations of purported interference with research not cognizable as a crime or fraud under New Mexico law, but Ms. Dai's and Ms. Zobel's attached declarations directly refute the State's allegations and show that their legal advice reflected conventional advice of attorneys. Nor has the State established that Ms. Dai's and Ms. Zobel's conventional legal advice constitutes a "fraud on the court." Mot. 10.

As an initial matter, the State relies on federal cases that provide a broad definition of what can constitute a crime or fraud, such that no attorney-client privilege attaches. *See, e.g.*, Mot. 7 ("All that is necessary is that the client misuse or intend to misuse the attorney's advice in furtherance of an *improper purpose*." (quoting *In re Abbott Labs.*, 96 F.4th 371, 381 (3d Cir. 2024)). But New Mexico has codified its crime-fraud exception at Rule 11-503(D)(1) NMRA, which states that there is no privilege "[i]f the professional legal services were sought or obtained to enable or assist anyone in committing or planning to commit what the client knew or reasonably should have known to be a *crime or fraud*." Rule 11-503(D)(1) NMRA (emphasis added). And, because New Mexico courts "are not free to engage in ad hoc rule-making" relying on the common law to define privilege and its exceptions, *Lyons*, 2000-NMCA-077, ¶ 14, Rule 11-503(D)(1) NMRA must mean what it says: the attorney-client privilege is vitiated only when legal advice is used to further a "crime or fraud." The State's allegation of an "improper purpose" does not meet the standards for the crime-fraud exception under New Mexico law. Mot. 7.

The State does not attempt to claim that Meta's attorneys engaged in any crime. And "[i]n New Mexico, fraud is defined as a false representation, knowingly or recklessly made, with the intent to deceive, on which the other party acted to his or her detriment." *Vigil v. Fogerson*, 2006-NMCA-010, ¶ 49, 138 N.M. 822, 126 P.3d 1186 (cleaned up). The State does not cite this standard, let alone purport to meet it with evidence or even an allegation that Ms. Dai or Ms. Zobel acted "with the intent to deceive" via "false representation." Instead, it advances only the conclusory

7

allegation—without evidence—that Meta in-house counsel "limited, obfuscated, and altered" research. Mot. 9. As discussed below, Ms. Dai's and Ms. Zobel's sworn declarations disprove those allegations, meaning the privilege must remain. *See Gutter*, 124 F. Supp. 2d at 1307.[3]

Ms. Dai's and Ms. Zobel's declarations show that the State's allegations about the crime-fraud exception are demonstrably false because their advice was provided for proper, legal purposes:

- The State claims that Ms. Zobel "alter[ed] the design of" research so that a researcher did not "learn about any harms that Meta VR users may have faced;" "ordered the removal of" certain survey questions; and could "unilaterally prevent or alter . . . research for any reason." Mot. 2-3. But, as Ms. Zobel stated, she "do[es] not instruct researchers to alter the design of a study," and "do[es] not tell researchers what research to conduct," because "[r]esearchers, often in conjunction with the product development teams, decide what studies to run and how to conduct those studies." Zobel Decl. ¶¶ 10-11. Moreover, Ms. Zobel stated that "[r]esearchers and their managers have final say over what language they use in their research questions," *id.* ¶ 6, and that neither she nor "anyone else on the Legal team that [she is] aware of can unilaterally alter or prevent research for any reason," *id.* ¶ 12.

- The State claims that Ms. Zobel "directly edited or removed language" from summaries of research; "instructed" a researcher "to make changes or omissions" in summaries of research; and "deleted quotes from a" research "report." Mot. 2-3. But Ms. Zobel confirms that she only advised researchers on how to comply with legal regulations and how imprecise language in research reports may increase litigation risk. Zobel Decl. ¶ 7. Ms. Zobel, moreover, confirmed that "researchers and their managers . . . have final say over what language they use to summarize their research." *Id.*

- The State claims broadly that "Legal" "instructed" a researcher "to not record . . . data" showing "harms [users] faced on Meta's platform," and to "delete" that data "if it was captured." Mot. 2. Ms. Dai's and Ms. Zobel's declarations *both* confirm that they

---

[3] The State points to two state trial court cases involving tobacco litigation, neither of which involve facts remotely similar to what the State has alleged. In both cases, attorneys for tobacco companies established an entirely separate division of a research department to which they funneled negative research under the supervision of attorneys, and which they publicly promoted as a "scientifically honest and independent organization." *See* Michael V. Ciresi, Roberta B. Walburn & Tara D. Sutton, *Decades of Deceit: Document Discovery in the Minnesota Tobacco Litigation*, 25 Wm. Mitchell L. Rev. 477, 529 (1999); *Am. Tobacco Co.*, 1997 WL 728262, at *1, 9 (finding "related privilege logs" stemming from activities of same division of research department subject to crime-fraud exception). Here, the State has alleged, at most, that Meta in-house counsel advised on the scope of research and the ways that researchers characterized their findings. *See generally* Dai Decl.; Zobel Decl. That comes nowhere near the conduct at issue in the tobacco litigation.

never instructed a researcher to delete data unless "it was necessary to ensure compliance with privacy laws and/or in accordance with any applicable Meta privacy policy precluding the retention of data." Dai Decl. ¶ 9; Zobel Decl. ¶ 9.

- The State claims that Ms. Zobel instructed researchers to use third-party vendors so that Meta "could instruct them to . . . not document certain kinds of 'sensitive data,'" including collection of data on users under the age of 13. Mot. 2. As Ms. Zobel confirms, she does "not advise researchers to use a vendor based on the sensitivity of the research." Zobel Decl. ¶ 8.

- The State claims that Ms. Dai "intervened" in a study to "minimize gathering data showing that kids/teens are at-risk in Meta VR." Mot. 2-3. But, as Ms. Dai's declaration states, she provided legal advice to researchers to "ensure that their research studies and methods of collecting data were compliant with all laws," such as COPPA, which prohibits the collection of data on children under the age of 13 without parental consent. Dai Decl. ¶ 5.

- The State further claims that Ms. Dai and Ms. Zobel limited how research could be shared internally. Mot. 2. But the State cannot connect legal advice on who has access to research to any crime or fraud.

- Finally, the State focuses heavily on documents discussing a specific research study. Mot. 3-4. But the State does not claim Ms. Dai or Ms. Zobel would have any relevant testimony about this study, which was not specific to Reality Labs or virtual reality— the services on which the State seeks to question Ms. Dai and Ms. Zobel.[4]

As evidenced by Ms. Dai's and Ms. Zobel's affidavits, the advice that they provided to Meta researchers—how to describe research in ways to mitigate litigation risk, and how to gather data in compliance with legal regulations—falls well within the traditional advice lawyers provide to clients. It is common sense that in-house lawyers would (and indeed, should) provide advice on how employees can comply with legal regulations. *See Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) ("In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law." (citation omitted)). And it is similarly just as conventional and proper for

---

[4] The State also alleges that Meta employees over-designate documents as privileged, and cites to this as "conduct" that "reinforces the State's concerns." Mot. 5. As support, the State refers to Meta's ongoing privilege re-review—a voluntary decision by Meta to re-review documents withheld on grounds of privilege. *Id.* at 5 n.4. But, as Meta has communicated to the State, this voluntary exercise is intended to *produce* any erroneously withheld documents.

in-house attorneys to advise employees on structuring reports or other internal communications to avoid imprecise language that could create risks in litigation. *See, e.g.*, *In re Uber Techs.*, 2024 WL 4907142, at *4 (if an employee wrote to another employee "'in-house counsel has asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation,' that communication would likely be privileged").

Finally, there is no merit to the State's argument that Ms. Dai's and Ms. Zobel's conventional legal advice perpetrated a fraud on the court. For one, although the State claims "it is well established that efforts of in-house attorneys to alter or misrepresent documents or testimony in anticipation of litigation amount to fraud on the court," Mot. 9, the State cites no authority for this supposed well-established proposition. Indeed, it cannot because its allegations neither meet the standard for fraud on the court, nor do the facts as identified in Ms. Dai's and Ms. Zobel's affidavits amount to fraud on the court.

"Fraud on the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court. A party's failure to disclose information, or even a party's perjury, does not ordinarily constitute fraud on the court." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1096 (9th Cir. 2007) (cleaned up), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). The conventional legal advice that Ms. Dai and Ms. Zobel provided—advising employees on how to structure research to comply with legal regulations and describe research in ways that may mitigate legal risk to the company—cannot rise to this high standard. *See id.* at 1097 ("If a party could establish the crime-fraud exception simply by showing that an opponent structured a business transaction to limit its liability, the attorney-client privilege would be worth little, for under this standard many commercial disputes could be recast as fraud on the court.").

10

## CONCLUSION

For the foregoing reasons, the State's Motion to Compel the Depositions of Kristin Zobel and Elaine Dai should be denied.

DATED this 30th day of October 2025.

/s/ *John C. Anderson*
John C. Anderson
Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (*admitted pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
nshafroth@cov.com

Timothy C. Hester (*admitted pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

Megan Rodgers (*admitted pro hac vice*)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
mrodgers@cov.com

*Attorneys for Defendants Meta Platforms, Inc.,*
*Instagram, LLC, Meta Payments, Inc., and Meta*
*Platforms Technologies, LLC*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 30, 2025, the foregoing was filed through Odyssey File & Serve, causing it to be served by electronic mail on all parties of record.

/s/ <i>Olga Serafimova</i>
Olga Serafimova
