# EXHIBIT O

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/14/2025 4:39 PM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

STATE OF NEW MEXICO, EX REL.,
RAÚL TORREZ, ATTORNEY GENERAL,

    Plaintiff,

v.                                          NO. D-101-CV-2023-02838

META PLATFORMS, INC.; INSTAGRAM, LLC;
META PAYMENTS, INC.; and META PLATFORMS
TECHNOLOGIES, LLC,

    Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION TO COMPEL DEPOSITIONS OF KRISTIN ZOBEL AND ELAINE DAI

    Plaintiff State of New Mexico (the "State") respectfully requests that the Court enter an Order compelling Meta to produce for deposition Kristin Zobel and Elaine Dai. Meta's own researchers and key leadership figures recognized that Meta used its in-house counsel to exert improper influence over the work of its researchers. Meta should not now be permitted to use the attorney-client privilege to shield that improper conduct.[1]

---

[1] On November 3, 2025, in response to the State's Motion, Meta improperly clawed back the documents that the State attached as Exhibits 4 and 5. These documents are not privileged. The parties conferred on the subject, and Meta refuses to withdraw its improper clawback. In Meta's Opposition, it touts its "voluntary decision" to engage in an "ongoing privilege re-review." Oppn. at 9 n.4. It should not be commended for possibly (it remains to be seen) complying with its obligation to produce additional non-privileged documents just before the close of fact discovery and after most depositions have been taken, having hidden them from review since the start of discovery.

### I. Ms. Zobel's and Ms. Dai's Conduct with Respect to Research Was Primarily Business-Related, Not Legal.

With respect to Ms. Dai's presentation to researchers, Meta asserts that it concerns "litigation risk" and thus falls within the ambit of attorney-client privilege. But the words "litigation risk" are not a magic spell conferring attorney-client privilege. "It is possible to say that every action taken has implications of litigation preparation or avoidance. . . . No one in any sophisticated setting takes action without considering applicable legal standards and litigation and regulatory risks." *Adams v. Gateway, Inc.*, 2003 WL 23787856, at *12 (D. Utah Dec. 30, 2003) (holding that even where "[t]here were legal and litigation concerns, but the technical integrity of the Gateway product was the principal motivation[,]" attorney-client privilege did not apply).

The two cases Meta cites about "litigation risk" are inapposite. In *Feinberg v. T. Rowe Price Grp., Inc.*, 2019 WL 6895580 (D. Md. Dec. 17, 2019), the court held that documents discussing "legal advice" and "litigation risk," prepared by in-house counsel for the Board of Directors, were privileged. *Id.* at *5. In the second case, *In re Uber Technologies, Inc. Passenger Sexual Assault Litig.*, 2024 WL 4907142 (N.D. Cal. Nov. 27, 2024), the court likewise held that emails and documents prepared by attorneys assessing "litigation risk" and "convey[ing] legal advice" were privileged. *Id.* at *2–3. Neither case involved a presentation made to scores of employees—as was the case here, even by Meta's admission. Oppn. Ex. 1 (Dai Decl.) ¶ 10 ("In November 2021, I led a presentation to Reality Labs researchers titled '(RL) Best Practices for Sensitive Research and AC Privilege.'").[2] Accordingly, the authorities the State provided in its Motion—which directly discuss legal policies disseminated to employees and presented at training sessions—are more to

---

[2] This presentation, which appears to contain Meta's direction to employees about how and when to use "A/C Priv," is particularly relevant and discoverable in light of the evidence the State set forth in its Motion, at 4–5, that Meta improperly instructs employees to label documents "A/C Priv" when they concern "sensitive topic[s]."

2

the point, and their holdings should be applied here. Mot. at 8; *see also Uber Techs., Inc.*, 2024 WL 4907142, at *4 (document's "intended dissemination to a group of lawyers and non-lawyers" supported the court's holding that it was not privileged).

The declarations of Ms. Zobel and Ms. Dai confirm that their actions with respect to Meta research constituted business, not legal, advice. For instance, Ms. Zobel claims that "[r]esearchers and their managers have final say over what language they use in their research questions" and that neither she nor "anyone else on the Legal team that [she is] aware of can unilaterally alter or prevent research for any reason." Zobel Decl. at ¶ 12. Even if this were true,[3] it shows that her input with respect to research was part of "a collaborative process" that involved "lawyers and non-lawyers"—and thus that attorney-client privilege does not apply. *Uber Techs., Inc.*, 2024 WL 4907142, at *4.

Other Meta internal documents support this conclusion as well. For instance, in a December 2021 chat discussion regarding ▇▇▇▇▇▇, a Meta researcher said: ▇▇▇▇▇▇
▇▇▇▇▇▇ METANMAG-002-02471100
(**Exhibit 1**) (emphasis added). Since Meta carried out its research manipulation for a combination of policy and legal reasons, testimony regarding that manipulation is not protected by privilege. *Uber Techs., Inc.*, 2024 WL 4907142, at *4 (holding that because "the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy,

---

[3] This claim is contradicted by: (1) Jason Sattizahn's (Whistleblower Alpha) statement that Ms. Zobel "ordered the removal" of certain survey questions, Mot. at 3; (2) Whistleblower Beta's statement that Ms. Zobel and the legal team could—and did—"unilaterally prevent or alter" his research "for any reason[,]" *id.*; (3) Instagram CEO Adam Mosseri's statement that Legal was "driving or framing the decisions of whether or not to run or announce studies." Mot. at 4.

Since the filing of this Motion, this Court has granted the State's motion to depose Jason Sattizahn. Meta argued against granting the motion based on attorney-client privilege. Its privilege arguments here fail for the same reasons.

3

and public relations concerns in addition to assessing legal risk," document was not privileged and must be produced).

Meta also argues that "advis[ing] employees on structuring reports or other internal communications to avoid imprecise language that could create risks in litigation" would amount to privileged communications.[4] Oppn. at 9–10. But the changes made by Meta's legal counsel, as reported by whistleblowers and detailed in the State's Motion, at 1–5, were not just to restructure reports and avoid imprecise language but to insert outright *false* statements, to stop certain kinds of research, and to delete research findings, among other things. Meta has failed to explain how inserting false statements or blocking research could have been done with the goal of "ensur[ing] compliance with legal obligations," Oppn. at 2, as opposed to violating those very same legal obligations. *See infra*, Section II (discussing application of crime-fraud exception); *see also Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 290 (E.D. Va. 2004) ("[A]n attorney who counsels a client about the spoliation of evidence is not advancing the observance of the law, but rather counseling misconduct. Thus, there is no logical reason to extend the protection of the attorney-client privilege to communications undertaken in order to further spoliation.").

Likewise, Meta contends that Ms. Dai "provided legal advice to researchers to 'ensure that their research studies and methods of collecting data were compliant with all laws,' such as COPPA, which prohibits the collection of data under the age of 13 without parental consent."

---

[4] The only case Meta cites for this point is *Uber Techs., Inc.*, 2024 WL 4907142. There, the court addressed in dicta a hypothetical factual situation: if "'in-house counsel . . . asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation,' that communication would likely be privileged." *Id.* at *4. That hypothetical situation differs from the facts here—where Meta's counsel did not merely direct that research be discussed "in general terms" but instead directed that research not be conducted altogether, directed that research findings be deleted, or inserted language that rendered research reports factually inaccurate.

4

Oppn. at 9 (quoting Dai Decl. ¶ 5). But providing legal advice on *how* to collect data on youth lawfully is categorically different from instructing researchers to *stop collecting data altogether*—which the State's Motion alleges. This underscores the State's point that attorneys Dai and Zobel were engaged in business-related functions.

Finally, Meta tells the Court it should credit the accounts of Ms. Zobel and Ms. Dai that they were not directing research decisions over the whistleblowers' accounts that they were.[5] Oppn. at 6. But as the State explained in its Motion, at 4, it was not just whistleblowers who acknowledged the control Legal exercised over research but also Meta's leadership itself. This included Instagram CEO Adam Mosseri, who complained that ████████████████████ ████████████████████████████████████████████ Mot. Ex. 6 (emphasis added). Likewise, in May 2022, Mosseri protested that ████████████████████████████████████ ████████████ even after ████████████████████████████████████████ ████████████████████ METANMAG-111-00000044 (attached as **Exhibit 2**). Mosseri disagreed with ████████████████████████████████████████████ ████████████████████████████ *Id.* (emphasis added); *see also* METANMAG-005-00290892 (attached as **Exhibit 3**) (████████████████████████████████████████ ████████████████████████████████████████████ ████████████████). This dispels Meta's insinuation that the State's allegations concerning the legal team's role were only a misunderstanding on the part of a few errant whistleblowers. *See*

---

[5] Notably, Zobel and Dai's declarations differ regarding the State's core allegation that "Meta's legal team shaped, influenced, and **altered** internal Meta research concerning youth use of Meta products." (Mot. at 1) (emphasis added). Zobel's declaration contains a (conclusory) denial regarding "altering" study design, while Dai's does not. *Compare* Oppn. Ex. 2 (Zobel Decl.) ¶ 11 ("I do not instruct researchers to alter the design of a study. Researchers, often in conjunction with product development teams, design studies.") *with* Oppn. Ex. 1 (Dai Decl.) (no similar statement).

5

Oppn. at 6. Instead, even Meta's top decisionmakers understood that Legal had the final say on research. In light of this evidence, Meta has not—and cannot—satisfy its burden to establish that the "primary or predominate purpose" of all of Ms. Zobel's and Ms. Dai's doings with research was legal advice.[6] *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶¶ 17–18, 317 P.3d 856. Thus, Ms. Zobel and Ms. Dai possess non-privileged information.

## II.     The Crime-Fraud Exception Applies.

Once a party presents a *prima facie* showing of the applicability of the crime-fraud exception, "the burden shifts to the defendant to rebut the *prima facie* showing by a preponderance of the evidence." *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1308 (S.D. Fla. 2000). The defendant must do this "by providing a reasonable explanation of the conduct." *In re ATIF, Inc.*, No. 9:17-BK-1712, 2019 WL 10733623, at *2 (Bankr. M.D. Fla. Nov. 1, 2019). "If the court does not find the evidence presented is sufficient to rebut the *prima facie* case, then the *prima facie*

---

[6] For reference, Meta's privilege log contains about 50 documents involving Ms. Zobel, and about 427 documents involving Ms. Dai, as noted in the initial Motion. Mot. at 5 n. 4. An excerpt of Meta's privilege log is attached hereto as **Exhibit 4**.



Of the Zobel documents, ███████████████████████. *See, e.g.*, Ex. 4, ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████

Of the Dai documents, ███████████████████████████████. *See, e.g.,* Ex. 4, ███████████████████████████████████████████████████████████
███████████████████████████████████████████████

6

case still exists and the privilege is lost." *Gutter*, 124 F. Supp. 2d at 1307. Meta's Opposition failed to rebut the State's *prima facie* showing that the crime-fraud exception applies to Ms. Dai's and Ms. Zobel's communications with Meta researchers.

Meta claims that the State has not met its burden to present *prima facie* evidence of a "crime or fraud." Meta is wrong for two reasons. First, Meta does not dispute that fraud on the court satisfies the "crime or fraud" requirement. And the State showed that Meta has committed fraud on the court by interfering with the fairness of the judicial process in this case—both by ensuring that research harmful to Meta was stopped before it was ever created, and by failing to produce discoverable material in this action under the false guise of attorney-client privilege. *Gutter*, 124 F. Supp. 2d at 1313 (crime-fraud exception applied where DuPont, through its attorneys, misrepresented the existence of certain documents in prior litigation); *see id.* at 1301 ("scheme" to "thwart discovery" of documents satisfied crime-fraud exception); *Drummond, Inc. v. Collingsworth*, 2015 WL 13768169, at *6 (N.D. Ala. Dec. 7, 2015) (defendants' false representations "that they had already produced every responsive document they had" were fraud on the court); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Litig.*, 538 F.3d 180, 195 (8th Cir. 1976) (fraud on the court "can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense"), *abrogation on other grounds recognized by Briscoe v. County of St. Louis, Missouri*, 6909 F.3d 1004, 1011 n.2 (8th Cir. 2012); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 6168035, at *7 (C.D. Cal. June 12, 2018) ("Fraud on the court" is a "scheme by one party to hide a key fact from the court and the opposing party.").

Meta claims that the tobacco cases to which the State cited in its Motion do not "involve facts remotely similar to what the State has alleged." Oppn. at 8 n.3. This is incorrect. In *State v. American Tobacco Co.*, the court held that the crime-fraud exception applied where lawyers' involvement in "coordinat[ing] partisan research efforts designed to bolster defendants' litigation positions" when those efforts were "in conflict with the industry's public assurances" that its research was designed "to discover and disseminate the truth about smoking and health." 1997 WL 728262, at *9 (Wash. Nov. 21, 1997). The State alleges comparable conduct here: Meta publicly claimed that it was doing research to assess and reduce harm to youth, while internally, its lawyers ensured its research would only "bolster" Meta's later "litigation positions." *Id.*

Indeed, Meta's own employees recognized ███████████████████████████████████████████████████. For instance, one Facebook employee raised concerns in 2021 about ████████████████████████████████████████████████████████████████████████████ METANMAG-002-00131404 (attached as **Exhibit 5**). The employee stated:

███████████████████████████████████████████████████████████████████████████████████████████████████████

*Id.* In a separate chat conversation between Meta employees in 2022, one employee objected: ███████████████████████████████████████████████████████████████████████ METANMAG-005-01082398 (attached as **Exhibit 6**). And in an internal chat conversation in 2017, a different employee noted:

8

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ METANMAG-011-00305952 (attached as **Exhibit 7**). The similarities in conduct between Meta and the tobacco companies, as in the tobacco litigation, justify application of the crime-fraud exception.

Second, the failure to produce requested documents in response to the Attorney General's civil investigative demand is grounds for contempt. NMSA § 57-12-12(H) ("[I]f any person neglects or refuses to comply with the demand, the attorney general may invoke the aid of the court in the enforcement of the demand. In appropriate cases the court . . . may . . . punish the person for contempt."). Accordingly, Meta's willful failure to produce documents that it wrongfully deemed attorney-client privileged constitutes a separate and independent basis for application of the crime-fraud exception. The State has satisfied its *prima facie* burden, for the reasons stated above.

Meta's evidence fails to rebut that *prima facie* evidence. Meta submitted declarations in which attorneys Zobel and Dai dispute many of the State's allegations regarding their conduct with respect to internal research at Meta, in similar, conclusory, carefully crafted statements.[7] But a flat denial is not the same as "a reasonable explanation" of the conduct alleged. *In re ATIF, Inc.*, No. 9:17-BK-1712, 2019 WL 10733623, at *2 (Bankr. M.D. Fla. Nov. 1, 2019). Moreover, for the

---

[7] *See, e.g.*, Dai Decl. ¶ 3 ("I did not provide business advice; my role was solely to provide legal guidance and legal advice on issues related to the business") *and* Zobel Decl. ¶ 4 ("I do not provide business advice; my role is solely to provide legal guidance and legal advice on issues related to the business"); Dai Decl. ¶ 8 ("I did not tell researchers what research to conduct. Researchers, in conjunction with the product development teams, decide what studies to run and how to conduct those studies.") *and* Zobel Decl. ¶ 10 ("I do not tell researchers what research to conduct. Researchers, in conjunction with the product development teams, decide what studies to run and how to conduct those studies."); *see also* Dai Decl. ¶ 5 *and* Zobel Decl. ¶ 5; Dai Decl. ¶ 6 *and* Zobel Decl. ¶ 6; Dai Decl. ¶ 7 *and* Zobel Decl. ¶ 7; Dai Decl. ¶ 9 *and* Zobel Decl. ¶ 9; Dai Decl. ¶ 11 *and* Zobel Decl. ¶ 13.

reasons explained above, Meta has not provided any legitimate reason to credit the self-interested declarations of Ms. Zobel and Ms. Dai over the statements of other current and former Meta employees—including Instagram CEO Adam Mosseri. Meta has not rebutted the State's *prima facie* evidence, and the depositions should go forward.

### III. Conclusion

For the foregoing reasons, the State respectfully requests that the Court enter an Order requiring Meta to produce in-house counsel Kristin Zobel and Elaine Dai for depositions to be conducted no later than November 26, 2025.

If the Court finds it necessary, the State would welcome an *in camera* review process or a targeted factual hearing to satisfy the Court's inquiry as to the crime-fraud exception.

Dated: November 14, 2025

**RAÚL TORREZ**
**ATTORNEY GENERAL OF NEW MEXICO**

James W. Grayson
Chief Deputy Attorney General
Mark Noferi
Senior Litigation Counsel
Steven J. Perfrement
Senior Counsel
NEW MEXICO DEPARTMENT OF JUSTICE
408 Galisteo St.
Santa Fe, New Mexico 87501
Tel: (505) 490-4060
jgrayson@nmdoj.gov
mnoferi@nmdoj.gov
sperfrement@nmdoj.gov

Cassandra Currie
Senior Counsel
Lauren Perry
Assistant Attorney General
NEW MEXICO DEPARTMENT OF JUSTICE
201 3rd Street, Suite 300
Albuquerque, New Mexico 87102
Tel: (505) 490-4060
ccurrie@nmdoj.gov

lperry@nmdoj.gov

/s/ Linda Singer
Linda Singer *(Pro Hac Vice)*
David I. Ackerman *(Pro Hac Vice)*
Wesley Dunkirk *(Pro Hac Vice)*
Brendan Austin *(Pro Hac Vice)*
Jenna Forster *(Pro Hac Vice)*
**MOTLEY RICE LLC**
401 9th St., NW, Suite 630
Washington, D.C. 20004
Tel: (202) 232-5504
lsinger@motleyrice.com
dackerman@motleyrice.com
wdunkirk@motleyrice.com
baustin@motleyrice.com
jforster@motleyrice.com

*Counsel for Plaintiff State of New Mexico*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was submitted through the Court's Odyssey E-File and Serve System for filing and service to all counsel of record this 14th day of November 2025.

/s/ Linda Singer
Linda Singer