EXHIBIT 1

Page 1

FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE
STATE OF NEW MEXICO

_____

STATE OF NEW MEXICO, EX       )
REL., RAUL TORREZ,            )
ATTORNEY GENERAL,             )
                             )
                             )No. D-101-CV-2023-02838
         Plaintiff,           )
                             )
vs.                           )
                             )
META PLATFORMS, INC.;         )
INSTAGRAM, LLC; META          )
PAYMENTS, INC.; and META      )
PLATFORMS TECHNOLOGIES,       )
LLC;                          )
                             )
                             )
         Defendant(s).        )
_____  )



                AUDIO TRANSCRIPTION
              Date of Transcription:
             26th day of November 2025
                   -  -  -
            Stated Date of Audio Recording:
              21st day of November 2025



   TRANSCRIBED BY:


              Ana Maria Gallegos
              RPR, CA CSR No. 9246, NM CSR No. 190

```
                                                          Page 2
  1                A P P E A R A N C E S
  2     Presiding Judge:  Bryan Biedscheid
        (Information provided by Court Monitor Monserrath
  3     Rodriguez)
  4
                       ATTORNEYS OF RECORD
  5                 (Taken from Case Caption)
  6
        ATTORNEYS FOR DEFENDANTS:
  7     HOLLAND & HART LLP
        John C. Anderson
  8     Olga M. Serafimova
        110 N. Guadalupe Street, Suite 1
  9     Santa Fe, NM 87501
        Tel: (505) 988-4421
 10     Jcanderson@hollandhart.com
        Omserafimova@hollandhart.com
 11
        -and-
 12
        COVINGTON & BURLING LLP
 13     Nathan E. Shafroth (Pro Hac Vice)
        Isaac D. Chaput (Pro Hac Vice)
 14     E. Kate Patchen (Pro Hac Vice)
        415 Mission Street, Suite 5400
 15     San Francisco, CA 94105-2533
        Tel: (415) 591-7053
 16     Nshafroth@cov.com
        Ichaput@cov.com
 17     Kpatchen@cov.com
 18     Timothy C. Hester (Pro Hac Vice)
        David N. Sneed (Pro Hac Vice)
 19     Michael N. Kennedy (Pro Hac Vice)
        Suzan F. Charlton (Pro Hac Vice)
 20     John J. DeBoy (Pro Hac Vice)
        Amber Charles (Pro Hac Vice)
 21     Madeleine Dolan (Pro Hac Vice)
        One City Center
 22     850 Tenth Street, NW
        Washington, DC 20002-4956
 23     Tel: (202) 662-5324
        Thester@cov.com
 24     Dsneed@cov.com
 25     (Continued)
```

Page 3

```
 1                  ATTORNEYS OF RECORD
                  (Taken from Case Caption)
 2                     (Continued)
 3    Mkennedy@cov.com
      Scharlton@cov.com
 4    Jdeboy@cov.com
      Acharles@cov.com
 5    Mdolan@cov.com
 6    Patrick W. Nutter (Pro Hac Vice)
      1999 Avenue of the Stars, Suite 3500
 7    Los Angeles, CA 90067
      Tel: (432) 332-4800
 8    Pnutter@cov.com
 9    Megan Rodgers (Pro Hac Vice)
      Lindsey C. Barnhart (Pro Hac Vice)
10    3000 El Camino Real
      5 Palo Alto Square, 10th Floor
11    Palo Alto, CA 94306-2112
      Tel: (650) 632-4700
12    Mrodgers@hollandhart.com
      Lbarnhart@cov.com
13
      -and-
14
      KELLOGG, HANSEN, TODD, FIGEL &amp;
15    FREDERICK, P.L.L.C.
      Aaron M. Panner (Pro Hac Vice)
16    Kevin B. Huff (Pro Hac Vice)
      Kevin J. Miller (Pro Hac Vice)
17    Daniel V. Dorris (Pro Hac Vice)
      Leslie V. Pope (Pro Hac Vice)
18    Thomas G. Schultz (Pro Hac Vice)
      Daniel S. Severson (Pro Hac Vice)
19    Alex A. Parkinson (Pro Hac Vice)
      Ana N. Paul (Pro Hac Vice)
20    Kevin D. Horvitz (Pro Hac Vice)
      Justin B. Berg (Pro Hac Vice)
21    Diego Negron-Reichard (Pro Hac Vice)
      Alexander N. Gosanko (Pro Hac Vice)
22    Hilary M. Weaver (Pro Hac Vice)
      Ana Hall
23    1615 M Street, N.W., Suite 400
      Washington, DC 20036
24    Tel: (202) 326-7900
25    (Continued)
```

Page 4

```
 1                    ATTORNEYS OF RECORD
                     (Taken from Case Caption)
 2                        (Continued)
 3
      Apanner@kellogghansen.com
 4    Khuff@kellogghansen.com
      Kmiller@kellogghansen.com
 5    Ddorris@kellogghansen.com
      Lpope@kellogghansen.com
 6    Tschultz@kellogghansen.com
      Dseverson@kellogghansen.com
 7    Aparkinson@kellogghansen.com
      Apaul@kellogghansen.com
 8    Khorvitz@kellogghansen.com
      Jberg@kellogghansen.com
 9    Dnegron-reichard@kellogghansen.com
      Agosanko@kellogghansen.com
10    Hweaver@kellogghansen.com
11
      Attorneys for the Plaintiff:
12
      RAÚL TORREZ
13    ATTORNEY GENERAL
      OF NEW MEXICO
14    JAMES W. GRAYSON
      Chief Deputy Attorney General
15    MARK NOFERI
      Senior Litigation Counsel
16    STEVEN J. PERFREMENT
      Senior Litigation Counsel
17    BAILEY QUINN COLFAX
      Assistant Attorney General
18    New Mexico Department of Justice
      408 Galisteo Street
19    Santa Fe, NM 87501
      Phone: (505) 490-4040
20    Jgrayson@nmdoj.gov
      Mnoferi@nmdoj.gov
21    Sperfrement@nmdoj.gov
      Bcolfax@nmdoj.gov
22
23
24
25    (Continued)
```

Page 5

```
 1                    ATTORNEYS OF RECORD
                   (Taken from Case Caption)
 2                         (Continued)
 3      LAUREN PERRY
        CASSANDRA COURIER (PHONETIC)
 4      Assistant Attorney General
        New Mexico Department of Justice
 5      201 3rd Street, Suite 300
        Albuquerque, NM 87102
 6      Phone: (505) 490-4060
        Lperry@nmdoj.gov
 7
        MOTLEY RICE LLC
 8      LINDA SINGER (Pro Hac Vice)
        DAVID I. ACKERMAN (Pro Hac Vice)
 9      JENNA N. FORSTER
        WESLEY DUNKIRK (Pro Hac Vice)
10      BRENDAN AUSTIN (Pro Hac Vice)
        401 9th Street, NW, Suite 630
11      Washington, DC 20004
        Phone: (202) 232-5504
12      Lsinger@motleyrice.com
        Dackerman@motleyrice.com
13      Wdunkirk@motleyrice.com
        Baustin@motleyrice.com
14      Jforster@motleyrice.com
15      LANCE OLIVER (Pro Hac Vice)
        CYNTHIA SOLOMON (Pro Hac Vice)
16      ANN K. RITTER (Pro Hac Vice)
        ANDREW P. ARNOLD (Pro Hac Vice)
17      MAX N. GRUETZMACHER (Pro Hac Vice)
        DONALD A. MIGLIORI (Pro Hac Vice)
18      JESSICA BOTTO (Pro Hac Vice)
        CHELSEA MONROE (Pro Hac Vice)
19      28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
20      Phone: (843) 216-9000
        Loliver@motleyrice.com
21      Csolomon@motleyrice.com
        Aritter@motleyrice.com
22      Aarnold@motleyrice.com
        Mgruetzmacher@motleyrice.com
23      Dmigliori@motleyrice.com
        Jbotto@motleyrice.com
24      Cmonroe@motleyrice.com
25      (Continued)
```

Page 6

```
 1                    ATTORNEYS OF RECORD
                    (Taken from Case Caption)
 2                       (Continued)
 3
      VINCENT L. GREENE IV (Pro Hac Vice)
 4    40 Westminster Street, 5th Floor
      Providence, RI 02903
 5    Phone: (401) 457-7730
      Vgreene@motleyrice.com
 6    MICHAEL J. PENDELL (Pro Hac Vice)
      20 Church Street, 17th Floor
 7    Hartford, CT 06103
      Phone: (860) 218-2722
 8    Mpendell@motleyrice.com
 9
      REPRESENTING SNAP:
10
      MUNGER TOLLES & OLSON
11    By:  Faye Paul Teller
      350 South Grand Avenue
12    50th Floor
      Los Angeles, California 90071-3426
13    1.213.683.9583
      Faye.teller@mto.com
14
      HOLLAND & HART
15    By:  Larry J. Montano, Esq.
      110 North Guadalupe Steet, Suite 1
16    Santa Fe, New Mexico 87501
      1.505.954.7291
17    Lmontano@haollandhart.com
18
19
20
21
22
23
24
25
```

Page 7

```
 1                NOVEMBER 21, 2025

 2                        -   -   -

 3              (The following is a transcription of

 4              audio file number 1 of 1.)

 5         THE COURT:  The Court calls State of

 6   New Mexico versus Meta Platforms Inc., et al.,

 7   Case number D-101-CV-2023-02838.

 8         I'm sorry we're starting a little bit

 9   late.  But you might understand that I had

10   received some additional authorities in the matter

11   that I noted this morning in addition to what I

12   had already reviewed to be ready for this morning.

13   So sorry, at least I was working on the matter and

14   not some random other issue.

15         With that, will you please state your

16   appearances for the record.

17         MR. ACKERMAN:  Yes, Your Honor.

18         David Ackerman, Motley Rice for plaintiff,

19   State of New Mexico.  With me is Linda Singer and

20   Jenna Forster from Motley Rice and James Grayson,

21   Mark Noferi, and Cassandra Courier (phonetic) from

22   the New Mexico Department of Justice, including

23   probably others who I have neglected.  But those

24   would be the ones who will have speaking roles

25   today.
```

Page 8

1            THE COURT:  Thank you.

2            MR. ANDERSON:  Okay.  Good morning, Your

3    Honor.

4            John Anderson of Holland & Hart along with

5    Kevin Huff, Alex Parkinson, Ana Hall, and Thomas

6    Schultz of Kellogg Hansen.  And Timothy Hester

7    from Covington and Burling on behalf of Meta.

8            MR. MONTANO:  Good morning, Your Honor.

9            This is Larry Montano of Holland & Hart.

10   And with me here today is Faye Teller of Munger,

11   Tolles & Olson on behalf of Snap.

12           THE COURT:  All right.  Thank you, all.

13           First, it's not on the notice, but I just

14   wanted to let you know, thank you for your

15   submission of the supplemental jury questionnaire.

16           I did review that.  I have approved it.

17   And the order is in process.

18           So, I guess, knowing the time constraints

19   that you all are under, you can proceed, knowing

20   that that is the status, if you want to get things

21   to the jury services folks and the like.  And

22   hopefully, you will see it pop through from the

23   clerk's office.  But that's where it's at at the

24   moment.

25           So I did want to clear up any stressful

Page 9

1    confusion or uncertainty about the status of that

2    matter.

3              UNIDENTIFIED SPEAKER:  We will do that.

4    And thank you, Your Honor.  And see, the parties

5    can get along.

6              THE COURT:  Yeah, it's only when I

7    instigate, you know, conflict that there is

8    issues, I know.

9              UNIDENTIFIED SPEAKER:  Your Honor, you are

10   not the one who instigates --

11             THE COURT:  Oh, I don't know.  All right.

12   Let's see.  We've got three matters noticed up for

13   today.  But let's see, any other issues I should

14   be aware of or it would be helpful to address

15   other than I've got plaintiff's motion to compel

16   depositions of Kristin Zobel, and Elaine Dai.

17             I've got plaintiffs' motion to compel

18   non-party Snap to produce time spent data and

19   market share documents.  And dispute regarding

20   Sattizahn deposition privilege issues.

21             Any other issues floating around that it

22   would be helpful to address.

23             MR. ACKERMAN:  Your Honor, I don't think

24   there are any other issues from the State.  On the

25   order, I might suggest that we do Snap first so

Page 10

1    that Mr. Montano and Ms. Teller maybe can get on

2    with their morning.

3            And then the other two matters may involve

4    discussion of information designated as

5    confidential by Meta.  So I don't know how we want

6    to deal with that, if you might want to have

7    Ms. Sossman create a private link like we did last

8    time.

9            THE COURT:  All right.  All right.  Thank

10   you for that alert.

11           MR. ANDERSON:  Your Honor, from Meta, we

12   have an issue that we just want to raise at the

13   end of an impending issue that we just want to

14   alert Your Honor to.  But we can do that at the

15   end.

16           THE COURT:  All right.  Well, it sounds

17   like there is no appetite to hold Mr. Montano

18   hostage for the morning.  So let's move on to the

19   motion to compel non-party Snap first.

20           MR. ACKERMAN:  All right.  And Your Honor,

21   David Ackerman, Motley Rice, I will be arguing

22   this on behalf of the State.

23           Your Honor, we believe this is a fairly

24   straightforward motion concerning two categories

25   of documents.  The first is national or New Mexico

Page 11

1    user data that Snap previously produced in the

2    MDL, which includes daily average user or time

3    spent data.

4          The second are documents, I believe,

5    concerning market share relied on by one of the

6    state's experts, Dr. Chandler, in connection with

7    expert reports that he submitted in the MDL and

8    other litigations, but that are not at this point

9    available to him in this litigation.

10         Both of these categories of documents are

11   relevant to the State's case with respect to the

12   Snap national or New Mexico user data.  Meta seeks

13   to apportion liability or causation to other

14   entities or other causes, including to its

15   competitor Snap.  We noted in our brief on page 63

16   of the affirmative defenses, affirmative defenses

17   where Meta has made this assertion, questioning in

18   depositions that occurred just recently has

19   focused on Snap and including state allegations in

20   Snap -- against Snap brought in a separate

21   litigation.

22         Snap's user data is relevant to the

23   State's ability to defend itself against those

24   affirmative defenses.  If a party is seeking to

25   apportion liability to a third party, it is

Page 12

1    helpful to the plaintiff to know what that third

2    party's market share is.  That type of data would

3    be reflected in Snap's daily average user or time

4    spent data, which we then could compare against

5    Meta's data.  And this is data -- to be clear,

6    Snap has already produced in the MDL.  We are not

7    asking Snap to create anything new for this

8    litigation.

9         Now, Snap asserts that the information is

10   somehow irrelevant because Meta doesn't have it or

11   Meta didn't request it.  It's both untrue and

12   uncompelling.

13        It's untrue because Meta has this document

14   in the MDL.  Snap produced it there.  Frankly, the

15   fact that Meta hasn't requested it here may tell

16   us something.

17        And regardless, it doesn't somehow render

18   the data irrelevant.  The State cannot predict

19   what evidence Meta will or will not use to prove

20   its affirmative defenses, but the State is

21   entitled to be able to obtain evidence for use in

22   defense to those defenses.

23        And that is precisely the purpose of the

24   subpoena.  Indeed, the fact -- and that is why the

25   information is discoverable.

Page 13

1              With respect to the material relied on by

2       Dr. Chandler, that is also relevant.  Dr. Chandler

3       opines regarding aspects of the social media

4       market, and including financial incentives for

5       Meta to engage in the conduct that is the basis of

6       the State's complaints.  Now, part of his report

7       seeks to estimate revenue attributable to youth

8       using a model he adapted from peer reviewed

9       literature.

10             The original model that Dr. Chandler used,

11      only -- it used only Meta's data.  But his work in

12      other jurisdictions, including in the MDL, relied

13      on data from multiple defendants.  And that is why

14      the State sought production of that -- of data

15      already produced in the MDL or in the California

16      consolidated proceedings to refine Dr. Chandler's

17      opinions.

18             And just to make sure that the record is

19      clear, the total revenue in Dr. Chandler's

20      original New Mexico model for Instagram for the

21      multi-year model is similar to the total revenue

22      estimated in the MDL.  But there are differences

23      in how the revenue is distributed across the

24      years.  And what we believe is that the more data

25      available to the model, including data from Meta's

Page 14

1    competitors, the more refined the results are.

2        This is not a change to Dr. Chandler's

3    model, it is merely an additional input.

4        It also is relevant because it follows

5    arguments that his model here was somehow flawed

6    because it was lacking information that was

7    produced in other litigations.

8        So Snap's argument that Dr. Chandler has

9    already issued an opinion misses the mark.

10    Because even though his existing analysis is and

11    remains reliable, additional data that

12    Dr. Chandler already has access to in other

13    proceedings will only bolster his opinion.

14        So that deals with relevance.

15        The other issue addressed in the briefs is

16    undue burden.  And Your Honor, there is no undue

17    burden here.

18        All of the documents the State is

19    requesting from Snap already have been produced in

20    other litigation.  There is no physical or

21    technical burden.  All Snap has to do is take its

22    existing files and unload them to our vendor,

23    where they can then be downloaded.  If they want

24    to renumber the documents, they can do that as

25    well.

Page 15

1         But this is not a matter where we are

2    asking Snap to re-query its files or create new

3    documents.

4         To the extent there are concerns about

5    confidentiality, that is why we have a protective

6    order in this case.  The protective order in this

7    case has both confidential and highly confidential

8    designations and if for some reason those aren't

9    sufficient, Snap can propose changes to the

10   protective order, which we can -- which we can

11   consider.  Because certainly the protective orders

12   in the MDL or in the California proceedings are

13   sufficient because that is where Snap has already

14   produced this data in cases where Meta is a

15   co-defendant.

16        So with that, Your Honor, we believe the

17   motion to compel should be granted and I will

18   yield if the Court has any questions.

19        THE COURT:  I do not at the moment.

20        Mr. Montano.

21        MR. MONTANO:  Good morning, Your Honor.

22   Ms. Teller will be delivering the argument for

23   Snap.

24        THE COURT:  All right.  Ms. Teller.

25        MS. TELLER:  Good morning, Your Honor.

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 16

1    And thank you very much.

2         Faye Paul Teller for Snap from Munger,

3    Tolles & Olson.

4         In short, the State's request is not

5    proportional because the State has not

6    sufficiently articulated why either category

7    requested documents is relevant.  And both are, of

8    course, very sensitive business records.

9         The State's argument simply proves too

10   much while saying relatively little about the

11   relevance of these documents.  The State relies

12   heavily on the supposed lack of burden.  Because

13   Snap has produced this information in other

14   litigation, there is no burden to producing it in

15   this proceeding.

16        The State apparently thinks it is entitled

17   to go on a fishing expedition for anything from a

18   third party as long as they can show the third

19   party produced it somewhere before.  But that is

20   not the standard.

21        The State is ignoring Snap's significant

22   interest in protecting its sensitive and

23   confidential business information.  And we believe

24   has not made a persuasive showing as to why it

25   needs that information in this case against Meta,

Page 17

1  particularly where the expert has already rendered

2  opinions without it.

3          Taking relevance first, to us, the State

4  has never clearly articulated why this information

5  is relevant, particularly as to Snap's DAU data.

6          They've gestured at method's affirmative

7  defenses.  I think Mr. Ackerman referred to what

8  they preserved in their answer regarding

9  apportionment or comparative fault.  And then they

10  claim that the internal documents will help their

11  experts analysis.  We believe this is not an

12  adequate explanation of relevance in this

13  situation.

14          Regarding the affirmative defense, our

15  understanding is that fact discovery is closed,

16  that expert discovery is nearly complete.  I

17  believe I saw that summary judgment motions have

18  been filed.  And it's our understanding that Meta

19  has not put forward evidence on this affirmative

20  defense for which it has the burden on these

21  theories of apportionment or contributory

22  liability.

23          In the State's brief, I will note, it

24  didn't argue otherwise, particularly in its reply.

25  Regarding Mr. Chandler's revenue model, the

Page 18

1   State's vague descriptions of why these documents
2   are relevant is no moment.  The State has never
3   explained why it needs Snap's data to model Meta's
4   revenue.
5        I did look at the model that the expert
6   Mr. Chandler is using.  The article that it cites
7   uses other third parties, like Twitter, whose
8   information he has not sought to include in this.
9   So Snap, as a third party, should not have their
10  confidential information used to improve or
11  bulletproof his model.  We're not a party here.
12       The current state of the record suggests
13  this evidence is not needed to rebut any
14  affirmative defense and Mr. Chandler has been able
15  to put forward his opinions without the internal
16  documents they are now seeking.
17       Turning to burden, the question is one of
18  proportionality.  While relevance is broad, the
19  strength of the State's arguments should be
20  weighed against the burden to Snap.  And here, as
21  I've explained, we think that the argument as to
22  relevance is weak and speculative.
23       The detailed information Snap seeks about
24  daily and monthly active users on its platform is
25  highly competitive -- competitively sensitive

Page 19

1    information and closely protected by the company,

2    as demonstrated by the fact that this information

3    is not available in the public domain.

4         In the MDL where this information was

5    produced, it was subject to strict confidentiality

6    provisions that were heavily negotiated.

7         I understand the State is willing to

8    entertain such provisions here, but it doesn't get

9    around the fact that we are not a party in this

10   case.  In fact, the State has a separate lawsuit

11   against Snap, but we are not a party here.

12        And that gets me to my last point.  As the

13   target of a separate lawsuit by the State, Snap

14   remains very concerned about the State's effort to

15   obtain and analyze our data in a forum where we

16   have no ability to challenge that analysis.

17        As explained in our opposition, the expert

18   here, who we are discussing, rendered opinions in

19   the MDL where we are a party and they were

20   challenged, they were deeply flawed.

21        Snap has a strong interest in having the

22   ability to challenge the State's analysis of its

23   data that it may later use against it.

24        And with that, Your Honor, I will stop,

25   unless the Court has any questions.

Page 20

1           THE COURT:  Are there any protective

2   provisions in the MDL agreement?  Well, I guess

3   maybe I should back up and ask.

4           Have you seen the protective order in this

5   matter?

6           MS. TELLER:  I believe I have, Your Honor.

7   And it's different than the MDL because in the

8   MDL, we have competitor co-defendants.  So there

9   are some additional provisions that limit how the

10  documents can be shared among the parties.

11          THE COURT:  Right.  And I must confess, I

12  was assuming as much.  And so I was right.  If

13  those sorts of provisions were adopted in an order

14  of this court, noting that there is a competitor

15  involved, if I understand the industry correctly,

16  is that something that would help address and

17  perhaps mitigate some of the concerns of Snap?

18          MS. TELLER:  It definitely addresses some

19  of the concerns.  I think what it doesn't address

20  is the fact that the data is being analyzed

21  without our understanding of how it's being used.

22          So that part of it it would not address.

23  But I agree with you that that would address

24  concerns in terms of exposure to competitors.

25          Of course, and I'm sure Your Honor has

Page 21

1    heard this argument before, but I've been involved

2    in many cases, particularly here where we're

3    getting ready for trial, where these documents are

4    protected until they get used at trial.  And so

5    we're concerned about sort of what will happen

6    with these down the line.  And I know now that is

7    just a few months away.

8              THE COURT:  All right.  Thank you very

9    much.

10             MS. TELLER:  Thank you, Your Honor.

11             THE COURT:  Mr. Ackerman, any follow-up?

12             MR. ACKERMAN:  Just a few brief points,

13    Your Honor.

14             Your Honor has mentioned frequently

15    New Mexico's broad relevance standards that apply

16    here as well.

17             We disagree with the description of the

18    State's subpoena as a fishing expedition.  We have

19    targeted requests for two categories of documents.

20    It's not a fishing expedition at all.  With

21    respect to Meta's affirmative defenses, counsel

22    raised whether Meta has put forth information in

23    support of those affirmative defenses.

24             My understanding, and counsel for Meta can

25    confirm it if they would like, is that Meta has

Page 22

1    not waived or withdrawn those affirmative defenses

2    and their time to put forth their evidence is at

3    trial.  Their time to gather the evidence is now.

4    And that is why we're seeking evidence from Snap.

5          Finally, with respect to the questions

6    about the ability to challenge analysis of the

7    data, I mean, I think that is, number one, true of

8    any third party.  To the extent any data gets used

9    against Snap, they will have the ability to

10   challenge that analysis if it gets used in front

11   of Judge Wilson.

12         So the extent to which they -- they don't

13   have standing to object at a trial here.

14   Obviously confidentiality is a different issue and

15   we can cross that bridge when we get to it.

16         But as the Court noted, to the extent we

17   need to modify the protective order, the State is

18   willing to do so.

19         THE COURT:  All right.  Thank you.

20         All right.  So it is true in this matter,

21   just like every other discovery issue in this

22   case, I am applying New Mexico's broad discovery

23   standards.  What I understand from argument and

24   from the filings is that the State is not asking

25   for Snap to create any new documents or to

Page 23

1    undertake any new substantive analysis, but rather

2    to produce, subject to the subpoena, existing

3    documents that were previously produced in another

4    matter.

5            So on that basis, the Court finds that the

6    burden to benefit balancing analysis is in favor

7    of granting the plaintiff's motion.  The Court

8    will require that the provisions in the MDL

9    related to protecting Snap's data from competitors

10   be incorporated into -- and I don't know if you --

11   because I will leave it to you all to confer, if

12   you want to modify the existing protective order,

13   or it seems as if perhaps entering a new order

14   that tracks the MDL protections and expressly

15   covers Snap's documents might be the clearest way

16   to go.

17           But you all, no doubt, are masters of a

18   litigation universe that I only live in.

19           So with that, I think that my point is

20   those protections in the MDL, those provisions

21   need to be incorporated into this matter in the

22   clearest possible way to protect that data from

23   competitor use as it was in the MDL.

24           And if you decide to go down the road of

25   particularly a new protective order that is

Page 24

1    applicable to the Snap documents, if you would

2    please, I guess, get that to me at your earliest

3    convenience, that would be extremely helpful.

4         I will -- again, taking my moment to

5    altogether too frequent over-share, I am pretty

6    work focused until probably about noon Wednesday.

7    And then I will be, if at all possible, much less

8    so after that for a bit.

9         So if you could get it to me before then,

10   I would endeavor to get that entered.

11         MR. ACKERMAN:  Thank you, Your Honor.

12         THE COURT:  Any ambiguities, knowing that

13   you all know many more details about this matter

14   than I do, anything I've left ambiguous that is

15   going to make drafting an order, Mr. Ackerman, or

16   working on the protective order, counsel,

17   avoidably annoying?

18         MR. ACKERMAN:  Nothing from the State,

19   Your Honor.

20         MS. TELLER:  Nothing from Snap at this

21   time, thank you, Your Honor.

22         THE COURT:  All right.  Well, then, thank

23   you for your briefing on this and also your

24   argument, as it true of many issues in this case,

25   not just extremely helpful, but essential to

Page 25

1    allowing me to understand it.

2            So thank you very much for that.

3            MS. TELLER:  Thank you for the

4    opportunity, Your Honor.

5            THE COURT:  All right.  So with that then,

6    let's see, Ms. Teller and Mr. Montano, you are by

7    no means kicked off the Google Meet, but you are

8    excused any time you want to go.

9            MR. MONTANO:  Thank you, Your Honor.

10           THE COURT:  All right.  Then with respect

11   to motions one or three, is there a preference as

12   to Zobel, Dai, or the Sattizahn deposition?

13           MR. HESTER:  Your Honor, Timothy Hester

14   for the State -- for Meta, I'm sorry.  I think it

15   may make more sense for us to start with the

16   Zobel/Dai motion.

17           THE COURT:  Okay.

18           MR. ANDERSON:  But obviously be guided by

19   what the Court prefers.

20           THE COURT:  Well, I -- again, I think the

21   Court prefers to proceed in a manner that makes

22   sense and appreciates your input into just what

23   that constitutes.  So thank you.

24           All right.  We'll go with plaintiff's

25   motion to compel depositions of Kristin Zobel and

Page 26

1    Elaine Dai.

2          MR. ACKERMAN:  Your Honor, before we

3    start, as I noted earlier, we do believe this

4    motion may contain discussion of confidential

5    information.  And so I want to make the -- we had

6    modified Meta about this.  I don't know how the

7    Court wishes to proceed.

8          THE COURT:  All right.  Well, so, let me

9    ask.  Mr. Hester, for your argument, is there a

10   way to make it without delving into that

11   information in this public forum or do we need to

12   figure something else out?

13         MR. HESTER:  From my perspective, yes,

14   Your Honor, from the argument Meta is making, I

15   don't think it's going to turn on disclosure of

16   any confidential information.  But I'm not sure

17   whether the State has in mind that it needs to

18   speak about some of Meta's confidential documents.

19         THE COURT:  All right.  So Mr. Ackerman,

20   what I understood you to say is you were concerned

21   about Meta's ability to present its motion.

22         MR. ACKERMAN:  Your Honor, I apologize if

23   I had misspoken.  What I'm concerned about is

24   disclosure of information that has been designated

25   as confidential by Meta.  Ms. Forster will be

Page 27

1    arguing this motion and I think we do intend to

2    reference some documents that have been designated

3    as confidential.  But she will confirm that.

4         MS. FORSTER:  That's right, Your Honor, I

5    think out of an abundance of caution, it's

6    probably safest to do this behind closest doors.

7         THE COURT:  All right.  Well, then let

8    me -- am I correct, Mr. Hester, that you will not

9    be referencing protected or confidential

10   information during your argument.

11        MR. HESTER:  That's right, Your Honor,

12   unless I have to respond to something that the

13   State has to say.

14        THE COURT:  All right.  Well, again,

15   attempting to make everything that can be public

16   public, what I would propose to do is then allow

17   you to argue, Mr. Hester, here in the open

18   proceeding, and then shift over to a sequestered

19   link after that, or if I'm unable to produce a

20   sequestered link because I am ridiculously relying

21   on Ms. Sossman for that, then we will figure

22   something out.  Or maybe it's possible if any of

23   you have anyone that can produce a sequestered

24   link whilst I'm on the bench, that would be great

25   too.

Page 28

1          But I'm stuck at the moment.

2          MS. FORSTER:  Your Honor, I think I can

3     make this easier for you.

4          Given that it's Your Honor's preference

5     that we do this on the public link, I think I can

6     restrict the facts that I reference in my argument

7     to the whistleblower testimony and to the

8     declarations that were filed publicly in

9     connection with the briefing.  So I think we

10    should be good to go.

11         THE COURT:  Okay.  Well, thank you for

12    modifying then.  Because I do endeavor, where

13    possible, to make everything that can be public

14    public without, again, damaging parties and the

15    like with improper disclosure.

16         So we will stay on the public link.

17         And Mr. Hester.

18         MR. HESTER:  Thank you, Your Honor.

19         So the State is seeking the extraordinary

20    outcome of being able to depose two in-house

21    lawyers about legal advice they provided to Meta

22    researchers.

23         The State is not seeking to ask about

24    research policies or practices.  It could ask

25    researchers about those questions.

Page 29

1          What the State is seeking to ask these

2    lawyers about is the legal advice they provided to

3    company researchers.

4          This is not permissible under the

5    New Mexico rules.  The State is only entitled to

6    discovery of material that is not privileged.

7          Now, the State's arguments for piercing

8    the privilege are refuted by the sworn

9    declarations that we've submitted from these two

10   lawyers.

11         And as the State agrees in its reply brief

12   at tics (phonetic), if a party claiming the

13   privilege rebuts the prima facie showing by

14   providing a sufficient explanation for the

15   attorney's conduct, then the privilege remains.

16   That is the Gutter case out of the Southern

17   District of Florida that both sides have relied

18   on.

19         Allowing the State to pierce Meta's

20   privilege based on the untested assertions of a

21   non-attorney whistleblower is a dramatic departure

22   from New Mexico rules prohibiting discovery of

23   privileged materials.

24         And I should mention, the whistleblowers

25   were counting his impressions of advice received

Page 30

1    years ago in many cases.  He has no legal

2    background to know the bases by which the advice

3    was being given or the reasons for the advice.

4            Those reasons come from the lawyers.  And

5    the declarations that we've submitted from these

6    two lawyers directly contradict any suggestion

7    that there was either a crime or fraud here or

8    that this was business advice.

9            In particular, the State makes two

10   arguments.  First argument is that these lawyers

11   were simply providing business advice and,

12   therefore, they are entitled to ask what the

13   advice was.

14           That is directly contradicted by these

15   declarations, which state clearly that their role

16   was solely to provide legal advice.  And they also

17   state clearly, I did not provide business advice.

18   These were the sworn declarations from the two

19   lawyers.

20           There is no factual basis for the State's

21   argument that they were giving business advice.

22           And the State also claims that a

23   November 2021 presentation by Ms. Dai was not

24   legal advice because it was made to scores of

25   employees.  But it was advice about the

Page 31

1    application of the attorney/client privilege and

2    the fact that the legal advice was given to a

3    group of researchers doesn't alter the existence

4    and the application of attorney/client privilege.

5         The State cites cases involving business

6    policies that merely had input from lawyers.  But

7    here we've got legal advice being provided by

8    lawyers to a group of employees.

9         And that is a very different situation

10   from the cases the State relies on.  And in

11   particular, none of these cases permitted a

12   deposition of a lawyer who provided legal advice

13   on business policies.  They don't support the

14   State's argument somehow that it's entitled to

15   depose lawyers about their legal advice.  And here

16   we have a very very clear statement from both of

17   these lawyers in their declarations that that is

18   what their role was, solely to provide legal

19   advice.

20        On the second exception the State argues

21   or the second premise, the State argues that all

22   of the legal advice given by these lawyers to the

23   company is subject to the crime/fraud exception.

24   And the State asserts in its reply, without any

25   factual support, that these lawyers were, quote,

Page 32

1    inserting outside false statements, and, quote,

2    blocking research; which is not correct, not true.

3    That is not an accurate statement of what they

4    were doing.  Those assertions by the State have no

5    factual support.

6          And again, they're directly contradicted

7    by the declarations of these two lawyers, who

8    explain that the advice they were giving was:

9    First, to ensure compliance with data collection

10   laws; second, how to structure research studies

11   and questions to mitigate litigation risk; third,

12   how to draft summaries of research findings in a

13   way that avoided implying a legal conclusion.

14          But they also specifically say, quote,

15   they did not block research and they also

16   specifically say that they did not insert false

17   statements into documents and they specifically

18   dispute and make clear they did not direct the

19   destruction of research data or findings.

20          So the State has no factual basis for

21   making this very broad claim of an application of

22   the crime/fraud exception.

23          And the State does not dispute that the

24   crime/fraud exception only applies to

25   communications in furtherance of a crime or a

Page 33

1    fraud.  And that is stated very clearly in

2    Rule 11-503(d)(1), the attorney/client privilege

3    is vitiated only when the legal advice is used to

4    further a, quote, crime or fraud.

5           The State does not even claim there has

6    been a crime.  And the State has no evidence of

7    fraud, let alone communications in furtherance of

8    a fraud.

9           The declarations from Ms. Dai and

10   Ms. Zobel confirm they were providing conventional

11   legal advice about research, not engaged in a

12   crime.  Ms. Zobel stated she does not instruct

13   research to alter the designs of studies and,

14   quote, does not tell researchers what research to

15   conduct, because the researchers make those

16   decisions.

17          Ms. Zobel states that she advised

18   researchers on how to comply with legal

19   regulations and how imprecise language in research

20   reports may increase litigation risk.  And they

21   did not instruct researchers to delete research

22   data unless this was necessary to ensure

23   compliance with privacy laws or in accord with any

24   applicable Meta privacy policies.

25          So again, the factual premise of this

Page 34

1    argument for crime/fraud is simply refuted by the

2    declarations of these lawyers.  And once refuted,

3    the privilege remains in place.  There is no

4    evidence for the State's arguments about the

5    application of crime/fraud and these declarations

6    disprove the State's theory of fraud.

7        Now, the State makes a claim that Meta

8    committed, quote, fraud on the Court by deleting

9    research data.  But they have no evidence that

10   they advised -- that Ms. Dai and Ms. Zobel

11   instructed researchers to delete data.  And to the

12   contrary, the sworn declarations refute that.

13       They also say that there was a fraud on

14   the Court by stopping research before it happened.

15   But they were very clear in their declarations,

16   Ms. Dai and Ms. Zobel both say they did not have

17   final say over which research occurred or -- and

18   that the research decisions were ultimately in the

19   hands of the researchers.

20       But in any event, Meta is not obligated to

21   conduct specific research studies.  That can't be

22   a fraud.

23       And the State also makes a remarkable

24   argument in the reply that there has been a

25   failure to produce discoverable material under the

Page 35

1    false guise of attorney/client privilege.  The

2    State has no factual basis for that.  It's a wild

3    accusation to make in a paper without any

4    supporting evidence.  And it doesn't rise, in any

5    event, if arguments over particular designations

6    or particular documents doesn't establish

7    application of the crime/fraud exception.

8              The State also suggests in its briefs,

9    that these cases -- this case is like the tobacco

10   litigation.  It's completely different.  In the

11   tobacco litigation, the industry had created a

12   counsel for tobacco research, which they stated to

13   the public was a scientifically independent

14   organization that would be used to disseminate the

15   truth about smoking and health.  And the Court

16   found, and I'm quoting from the State v. American

17   Tobacco case, the Court found defendants used the

18   counsel for tobacco research to mislead, confuse,

19   and defraud the public.  They used the counsel for

20   tobacco research, quote, an entity they had

21   represented to the public as scientifically honest

22   and independent, to coordinate partisan research

23   efforts and to promote their public relations

24   positions.

25              In other words, in the tobacco cases,

Page 36

1    there was affirmative fraud, affirmative fraud.

2         The State has no evidence of this at all

3    in this case.  And to the contrary, these

4    declarations, sworn declarations from the two

5    lawyers, establish that they were providing

6    conventional advice on how to comply with

7    regulations governing the retention of data and

8    research and how to conduct research in a way to

9    mitigate risks for the company.

10        This is conventional work by in-house

11   lawyers.  And the suggestion that the State can

12   somehow turn that into a crime or a fraud goes

13   vastly beyond anything in the case law.  And

14   certainly vastly beyond what has been recognized

15   under New Mexico law as a basis for piercing the

16   attorney/client privilege.

17        So I will stop there, unless the Court has

18   a question for me.

19        THE COURT:  I do not.  And after four

20   weeks of jury trials in tobacco litigation, I

21   recognize the accuracy of your history there.

22        And while I was focusing so much on public

23   versus confidential and the like, I believe that I

24   managed to, you know, flip in some respects the

25   presentation on plaintiff's motion here.

Page 37

1              So I just want to let you know,

2    Ms. Forster, that I'm not planning on giving

3    Mr. Hester the reply.  You may proceed when you're

4    ready, and I apologize for that.  No disrespect

5    intended.

6              MS. FORSTER:  Understood.  And no worries,

7    Your Honor.

8              And it's my first time appearing before

9    you, so I will just say it's nice to meet you and

10   it's a privilege to be here.

11             THE COURT:  Okay.  Well, I believe I

12   actually don't screw things up every time.  So I'm

13   sorry I did that on your first time here.

14             MS. FORSTER:  All good.

15             THE COURT:  Whenever you're ready.

16             MS. FORSTER:  I want to start by

17   acknowledging the nature of the relief that the

18   State seeks in this motion.

19             We understand that it is unusual to ask

20   the Court to order Meta to produce for deposition

21   its own in-house counsel.  We understand that is

22   an unusual request.  And we think that it is

23   warranted here based on the unusual facts that are

24   beginning to come to light about how Meta used its

25   in-house counsel and its attorney/client privilege

Page 38

1    designations to hide, to conceal, and to in some

2    cases, delete research regarding the harms of its

3    products to children.

4          We understand that is a big claim, as

5    Mr. Hester said.  But we are not alone in thinking

6    that it's true.  In parallel litigation in DC, in

7    Tennessee, and in the California JCCP proceedings,

8    all of the plaintiffs in those cases have moved to

9    compel production of documents showing Meta

10   in-house counsel's involvement in research, and

11   they've all moved to compel production of those

12   documents on the basis that the crime/fraud

13   exception applies.

14         So we are not alone in thinking that the

15   actions that Meta's in-house counsel took that

16   were exposed by whistleblowers before Congress and

17   in the documents that those whistleblowers

18   produced, we are not alone in thinking that that

19   conduct rises to the level of crime/fraud

20   exception, and of the crime/fraud, un-vitiates the

21   attorney/client privilege.

22         Now, I want to zoom out a little bit.  The

23   reason that this is coming to you now, the reason

24   that DC and Tennessee and California are moving on

25   the same issues now is because of that

Page 39

1    Congressional whistleblower testimony.

2            To be candid, Your Honor, we don't know

3    what we don't know.  And we don't know what is

4    being hidden from us until sometimes a

5    whistleblower goes before Congress and explains

6    exactly what is being hidden and how it's being

7    hidden.  So that is why we have something that is

8    complained about.

9            That is why we have Dr. Sattizahn who

10   worked primarily in the virtual reality products.

11   That is why we're requesting depositions of

12   Ms. Zobel and Ms. Dai who also worked primarily in

13   reality labs.  It's because the information is

14   available to us.  What Dr. Sattizahn has

15   explained, that the way Meta works, is that all of

16   the products, all the culture within the company

17   and the procedures all kind of mesh together and

18   that's why we think that this is fair game here.

19           Now, I want to talk a little bit about the

20   information, now that the briefing is complete,

21   the information that we think is clearly

22   non-privileged, clearly primarily business advice,

23   or at least not primarily legal advice, such that

24   it would be entitled to attorney/client privilege

25   protection.

Page 40

1           And I want to rely primarily, as I'm

2    discussing this with Your Honor, on the

3    deposition -- excuse me, the declarations of

4    Ms. Dai and Ms. Zobel that were appended to Meta's

5    opposition.  And I'm going to start with something

6    Mr. Hester talked about, which is the presentation

7    that Ms. Dai gave.  The title of that presentation

8    was Best Practices for Sensitive Research and AC

9    Privilege, attorney/client privilege.

10          And Ms. Dai's declaration states that she

11   did present a -- present a presentation with that

12   title to researchers.

13          We think the case law is clear in

14   New Mexico that that presentation of policies is

15   not privileged.  Now, Mr. Hester said that the

16   cases we rely on said only that -- or applied only

17   to business policies with input from lawyers.

18   Well, that is not quite right.  The case at issue

19   here is Basker (phonetic).  And Basker

20   specifically said that policies implemented based

21   on legal advice are not protected by

22   attorney/client privilege because their

23   implementation and dissemination would destroy the

24   confidential nature of the communications and

25   render them primarily business related, not legal.

Page 41

1          Well, here Ms. Dai told us in the

2     declaration that she disseminated these policies,

3     these, quote, best practices, end quote, to

4     researchers about attorney/client privilege.  So

5     we think that is fair game for a deposition.

6          Now, I want to note that what we believe

7     to be that presentation was produced by a

8     whistleblower to Congress, and Congress has made

9     that document public.  It's Charlie 37, as denoted

10    in Congress's documents.

11          And what that document says -- it has

12    Ms. Dai's name on it.  And what it says is that

13    research is, quote, sensitive if it has, quote,

14    comms, policy or legal risks, end quote.  Comms,

15    policy or legal.

16          Now, when we look at that light of Bandari

17    (phonetic), the New Mexico Court of Appeals case,

18    what Bandari says is when there is an issue that

19    in-house counsel addresses that has both legal and

20    business-related advice involved, only if legal

21    wins out, only if legal predominates is the

22    document privileged.  If business predominates or

23    if there is a mix and it's just not clear that

24    legal predominates, then the document is

25    unprivileged.

Page 42

1         So we think that the fact that that

2    presentation specifically applies to sensitive

3    research and that sensitive research is defined as

4    comms, policy, or legal risks, research that

5    implicates those risks, we think that presentation

6    is clearly non-privileged.

7         That presentation goes on to label all

8    sensitive research as attorney/client privileged.

9    That is a big problem.  Because if sensitive

10   research is research with comms, policy, or legal

11   risks, not just legal risks, then we have

12   potential issues of mis-designation,

13   over-designation of attorney/client privilege, and

14   we think we are entitled to ask Ms. Dai about when

15   that policy was enacted, when it was disseminated

16   and implemented at Meta, who directed it, and what

17   other information that policy might have resulted

18   in not being produced to the State as a result of

19   things being improperly designated as privileged.

20        So that presentation and the circumstances

21   surrounding it, for those reasons, we think

22   clearly are predominantly business advice and are

23   fair game in a deposition.

24        There is a couple more that pertain to

25   Ms. Zobel.  There is whistleblower testimony that

Page 43

1    Ms. Zobel gave instructions regarding how far

2    research could go inside Meta internally, and in

3    particular research regarding teenage age

4    misrepresentation.

5           Ms. Zobel does not deny this in her

6    declaration.  She doesn't address it.  And Meta's

7    only response in their opposition is that the

8    State can't connect advice on how far research

9    goes inside Meta to the crime/fraud exception.

10          But before we get to the crime/fraud

11   exception, they have to show that attorney/client

12   privilege applies.  And in order to do that, they

13   have to show that it's legal, not business advice.

14   And Meta has offered no basis to conclude that how

15   far research goes internally inside Meta is

16   predominantly legal rather than that comms or

17   policy advice that Ms. Dai talked about in that

18   presentation to researchers.

19          So we think that is fair game as well.

20          And then the third category is we had

21   whistleblower statements that Ms. Zobel instructed

22   a whistleblower that certain research, certain

23   sensitive researched to be conducted by a third

24   party vendor.

25          Ms. Zobel's response to this in her

Page 44

1    declaration is a little confusing.  She says, I do

2    not advise researchers to use a vendor based on

3    the sensitivity of the research, but based on

4    whether the research is unbranded, i.e., not

5    identified with Meta, and based on how far

6    personal information is intended to be gathered.

7            Well, the first thing I will note is that

8    is a bit circular.  Ms. Zobel is saying, I only

9    advise researchers to use a vendor when we want

10   the research to come from a third party unbranded

11   vendor.  And then second, I will note that those

12   considerations that Ms. Zobel said she advises

13   researchers on about when to go through a third

14   party for research, those sound like business

15   matters, not legal.  And Meta has not explained

16   how whether Meta wants research to be unbranded

17   and how much personal information is going to be

18   gathered, how those could be predominantly legal

19   rather than -- rather than business advice.

20           So those are all examples of material that

21   Ms. Dai and Ms. Zobel, that their declarations

22   make clear, and we should get to ask them about in

23   depositions.

24           And that is before we even get to the

25   crime/fraud exception, Your Honor.  All of that

Page 45

1    could be asked about without a finding from you on

2    the application of the crime/fraud exception.

3          Now, on crime/fraud, we -- honestly, most

4    of this is in our briefs, Your Honor, which I know

5    you've read.  But -- and it's good to hear that

6    Your Honor has personal experience with the

7    tobacco cases.  But I find it hard to find

8    daylight between the tobacco cases and what

9    happened here.  Because really what we're talking

10   about is whistleblower testimony supported by

11   documents showing that attorney/client privilege

12   and that in-house counsel were employed to conceal

13   research, to misrepresent research, and that is

14   exactly what happened in tobacco.

15         And particularly as the tobacco cases rely

16   on with respect to the crime/fraud exception,

17   particularly where the issue is the hiding of

18   public health and safety risks, we think the

19   crime/fraud exception is particularly apt.  And

20   that is exactly what we have here.

21         Now, if Your Honor is hesitant about

22   application of the crime/fraud exception, which we

23   would understand, we would at least ask Your Honor

24   for something like the following arrangement:

25   That you allow us to select maybe 20 documents

Page 46

1    from Meta's privilege log that Ms. Zobel and Ms.

2    Dai are on that talk about research and have Your

3    Honor review those documents in camera and decide

4    if that can better inform your opinion about

5    whether the crime/fraud exception applies.

6            And in any event, we think that the

7    deposition should go forward on the clearly

8    non-privileged business advice issues.

9            Let me take one moment just to look over

10   my notes about things Mr. Hester said.

11           You know, he mentioned that it is not true

12   that what the State asserted in its reply, that

13   Ms. Zobel and Ms. Dai -- and particularly

14   Ms. Zobel inserted false statements in the

15   research.  That is a claim from whistleblower Beta

16   that was laid out in the exhibits to the State's

17   motion that, in fact, Ms. Zobel inserted

18   statements such as, this isn't based on research

19   on Meta's actual VR products, when, in fact, the

20   research was based on exactly that.

21           Mr. Hester also says that the State's

22   claim has no evidence, the State's claim that

23   legal was actually calling the shots, actually had

24   the final say about research.  And I would direct

25   Your Honor to -- I'm not going to mention it on

Page 47

1    the public line, but I would direct Your Honor to

2    the redacted information in our reply at pages

3    four, five, and nine, that demonstrate that very

4    clearly legal was calling the shots there.

5          And I think I will leave it there unless

6    Your Honor has questions for me.

7          THE COURT:  Let's see.  If you will just

8    give me one moment, I'm going to go off camera

9    because I've got my (unintelligible) sticky notes

10   attached to various things and I want to make sure

11   I've heard the information I need.

12         So if you will just give me one moment, I

13   will be back on in just a moment.

14         (Brief pause in audio.)

15         THE COURT:  All right.  Thank you for your

16   patience while I fumbled through my documents over

17   here.

18         Again, the Court takes note of the broad

19   New Mexico discovery standards.  But even applying

20   those, based on the filings and argument and the

21   declarations of Ms. Zobel and Ms. Dai, the Court

22   finds that their deposition, as attorneys that

23   provided legal advice to these various research

24   entities, is inappropriate as it would be allowing

25   them to be deposed on protected attorney/client

Page 48

1    privileged advice and information.  So with that,

2    the motion to compel is denied.

3          I guess last, we've got what is labeled

4    the dispute about Sattizahn which I -- and by the

5    way, I will state my general understanding and you

6    all can correct me if it's wildly off base or even

7    a little bit off base.  And that is that

8    Mr. Sattizahn has made public statements about

9    things that the defendants contend are privileged

10   and so are not wanting the plaintiffs to be able

11   to ask about those statements at his deposition.

12         Is that largely right or am I way off?

13         And with this, I will first hear from

14   plaintiffs.

15         MS. SINGER:  Good morning, Your Honor,

16   Linda Singer for the State of New Mexico.

17         Thank you for the opportunity.

18         I do think that that is an accurate

19   statement.  And perhaps also summarizes part of

20   the problem from the State's perspective, is that

21   we don't know what statements and documents Meta

22   has objected to, which we think is fatal to them

23   carrying the burden on this.

24         And with that, I'm happy to start on our

25   argument.

Page 49

1         THE COURT:  Certainly.

2         MS. SINGER:  Okay.  So at the core of the

3    State's amended complaint in this case, is that

4    Meta failed to ensure that its products were safe

5    and that Meta knowingly failed to disclose to

6    New Mexico consumers information that it had in

7    its possession showing that its products are not

8    safe for teens.

9         Dr. Sattizahn has information that shows

10   that Meta not only knew, for example, that its age

11   verification and parental controls weren't

12   effective in keeping kids safe, but that its

13   attorneys directed researchers to avoid asking

14   questions about what it called, quote, sensitive

15   topics; that the attorneys edited their research

16   and directed them to delete data that demonstrated

17   harm to children and teens.

18        That is evidence that Meta engaged in the

19   very fraud that the State has alleged and used

20   lawyers to help keep this evidence from coming to

21   light.  And we think that Meta's arguments with

22   regard to privilege in this deposition must fail

23   for four reasons:  First, Meta has never

24   identified the specific information that it

25   asserts is privileged, except as information Meta

Page 50

1    will assert at the deposition is privileged.  That

2    does not respond to the direction Your Honor gave

3    us at the last hearing that we work out these

4    issues in advance of the deposition.  And it

5    doesn't carry Meta's initial burden to show that

6    it has a valid claim of privilege over the

7    subjects of Dr. Sattizahn's testimony or to show

8    what the boundaries of that privilege are.

9             And I would direct Your Honor to Santa Fe

10   Pacific Gold Corporation, New Mexico Court of

11   Appeals, 2007, which holds that the company had

12   the burden to show that the privilege applied to

13   each of the documents at issue.

14             And I would note that it wouldn't have

15   been hard for Meta to lay out its specific

16   privilege objections here.

17             Meta has Dr. Sattizahn's detailed

18   declarations which amount to about 60 pages

19   collectively.  Meta has all of the documents that

20   the whistleblowers have produced, roughly 59 --

21   I'm sorry, exactly 59 by Dr. Sattizahn and roughly

22   the same number from other whistleblowers.  The

23   State asked Meta to identify the specific

24   information it claims is privileged, but Meta has

25   not provided it.

Page 51

1        And as a result, the Court is being asked
2    to make a broad prophylactic order untethered to
3    any specific statement or document, and that the
4    State prepare for and take a deposition without
5    knowing what is in bounds and out.  That is
6    inconsistent with New Mexico law that requires
7    Meta to establish the privilege it asserts and
8    prejudices the State's ability to take the
9    deposition that Your Honor has ordered.
10        Going forward, as Meta requests, on a
11    practical level, that at Dr. Sattizahn's
12    deposition, Meta can direct the witness not to
13    answer whenever it asserts a privilege claim
14    almost certainly means that we're going to be back
15    in front of this court arguing about whether the
16    objections were proper, which again, seems to be
17    exactly what you asked us to avoid.
18        Further, the fact that Dr. Sattizahn's
19    declarations and testimony before Congress and all
20    of the whistleblower documents are already known
21    to the State and publicly further undermines the
22    basis or need for a blanket gag order.  To the
23    extent there is or was a valid claim of privilege,
24    the information that Dr. Sattizahn has is already
25    known.

Page 52

1            And so we would suggest that the

2    deposition can proceed, subject to the protective

3    order in this matter, and the Court can evaluate

4    Dr. Sattizahn's actual testimony of the context

5    and substance of the issues determined whether the

6    information is actually privileged, and strike or

7    exclude any information Your Honor determines is

8    privileged based on a full record.

9            To avoid any prejudice, the Court can

10    direct that Meta's participation in the deposition

11    does not constitute any further waiver of any

12    claims of privilege.

13            So that is the first argument.

14            Your Honor, I will be briefer, I hope, in

15    the remaining.

16            The second reason we believe that Meta's

17    arguments fail is that Meta has failed to show

18    that the primary purpose of the communications at

19    issue were legal rather than business.  I know

20    that this is an argument that Ms. Forster made a

21    few minutes ago and I won't dwell on it.  And that

22    the communications constitute legal advice.

23            While it is challenging to respond to the

24    assertion of privilege in the abstract, if we

25    assume Meta will object to any communication it

Page 53

1    mentions or involves lawyers, much of that

2    information is factual.  And as this court knows,

3    attorney/client privilege doesn't protect facts.

4         So the facts that lawyers had to

5    approach -- sorry, approve research, which is what

6    the Washington court considered in State versus

7    American Tobacco, that any research on harm was

8    considered sensitive and was to not be

9    affirmatively investigated or were able to edit

10    research before it was shared, or just that acts,

11    they are not legal opinions.

12         And I would point the Court to Johnson

13    versus Hewlett-Packard, 2010 Westlaw, 41 --

14    4510345, which we cite in the briefing, which

15    indicates the testimony related, for instance, to

16    the process flow for proposing and reporting

17    safety research.  Including the fact that

18    attorneys were involved in that process is not

19    privileged.

20         And as a last point in this second

21    argument, Meta has not shown that lawyers

22    involvement in research served a legal rather than

23    a business purpose, as Bandari required.  Mark

24    Zuckerberg and Adam Mosseri testified publicly

25    that Meta conducts research to improve its

Page 54

1    products.  That is a business goal, not a legal

2    one.  And evidence that Meta failed to do so is

3    key to the State's case.

4        So then the third argument, the

5    information that Dr. Sattizahn, not a lawyer, has

6    laid out in his declarations and as demonstrated

7    by documents disclosed by he and the other

8    whistleblowers fall within the crime/fraud

9    exception, which is expressly recognized in recall

10    11-503(d) New Mexico annotated rules.

11        The case, in large part, as Your Honor

12    knows well at this point, rest on allegations that

13    Meta engaged in unfair, deceptive, and

14    unconscionable practices by failing to disclose

15    information to the public.  The information from

16    Dr. Sattizahn is evidence that Meta did just that,

17    using attorney/client privilege as one of the

18    tools to present disclosure.

19        And I want to take a moment to focus on

20    one of the documents.  That is the document right

21    before the one Ms. Forster mentioned, Charlie 36,

22    which is one of the publicly disclosed documents.

23    It's titled Reality Labs UXR, which is integrity

24    research, Guidance for Researchers on Sensitive

25    and Attorney/Client Privileged Research.  And it

Page 55

1    indicates, quote, sometimes research involving

2    sensitive categories requires extra care and

3    mitigations, which may include the legal POC, or

4    point of contact, making a determination about

5    whether a study should be conducted under

6    attorney/client privilege; whether other legal

7    integrity and/or outside counsel may need to

8    review and approve the research; and/or whether

9    the submission details documents should be limited

10   in any way.

11          And the document goes on, all on tobacco,

12   Your Honor, to lay out a plan for shielding that

13   research as attorney/client privilege.  I won't go

14   through all of it, but it says that Meta will

15   engage outside counsel, will jointly instruct the

16   researcher on the methodology and the study

17   details, the vendor will conduct the study, and I

18   will quote here, and deliver the findings to

19   outside counsel, and Meta legal point of contact.

20   Outside counsel renders legal advice to Meta based

21   on study results.  Most product safety, in parens,

22   health and safety integrity studies are conducted

23   under a CP, certify and privilege, working under

24   the direction of outside counsel.

25          There is an internal Meta document I won't

Page 56

1    go into, given that we are on the public line, but

2    it describes the sensitive topics or populations.

3    Again, I won't detail them.

4         Although I do think that they are

5    important because they track the allegations of

6    the State's complaint, and involves lawyers in

7    overseeing just that research.

8         And it is, again, to use Ms. Forster's

9    phrase, there is no daylight between what this

10   represents and what happened with the center for

11   tobacco research, and deliberately sheltering

12   information as attorney/client privilege to keep

13   it from being known in litigation.

14        According to whistleblower documents, Meta

15   even had formal internal guidance dated March 2023

16   for researchers conducting sensitive

17   attorney/client privileged research.

18        And this is -- I'm sorry, I will skip over

19   that factual matter because it's confidential,

20   Your Honor.

21        But again, I want to make the point that

22   this is not sui generis.  And I think the Court

23   can be guided by the tobacco litigation.  In our

24   briefing, we cite State versus Philip Morris and

25   State versus American Tobacco.  Both cases in

Page 57

1    which courts found that the company's failure to

2    conduct appropriate research into the safety of

3    its products and the failure to warn their

4    products consumers, if the research supported

5    negative conclusions, fall within the crime/fraud

6    exception.

7         I would note that the State first issued

8    CIDs, a CID to Meta in 2023, the conduct that we

9    describe in the briefing and that Dr. Sattizahn,

10   more importantly, describes in his testimony in

11   declarations, relate to evidence that was

12   sheltered or altered after the State issued its

13   CID.

14        And as we lay that in a brief, and again,

15   we don't make this allegation lightly, and we make

16   it based on evidence now publicly available, and

17   produced in this litigation, that that conduct is

18   a fraud on the Court.  And it undermines the

19   truth-seeking role of litigation and the

20   administration of justice.

21        It doesn't serve the purpose of

22   attorney/client privilege to ensure that lawyers

23   can freely provide guidance to clients, but

24   misuses the attorney/client privilege to allow

25   lawyers to hide information for their clients.

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 58

1            And that takes me to the fourth and final

2     point.  I don't want to spend a lot of time on

3     this because I think Your Honor need not reach it.

4            But the State has laid out that Meta has

5     waived any claim of privilege that may exist.  And

6     I do want to address Meta's argument, because I

7     think it misses the State's actual position.

8            We don't contend that Dr. Sattizahn waived

9     Meta's privilege.  We contend that Meta waived

10    Meta's privilege when, even after documents were

11    disclosed in this litigation and filed on the

12    docket, Meta made no effort to assert a privilege

13    or call them back.

14            Now, Meta said in its brief that it raised

15    its privilege argument as soon as the State sought

16    to depose Dr. Sattizahn.

17            But the State produced the relevant

18    documents in this litigation in September and then

19    again in early October, making them available in

20    this case, whether or not Dr. Sattizahn was ever

21    deposed.

22            And Meta has clawed back dozens of

23    documents in this litigation.  It knows how to

24    preserve its privilege.  And it failed to do so

25    here.

Page 59

1              And this is akin to US versus De La Jara,
2      a Ninth Circuit case which we cite.  But held that
3      even when the initial disclosure was involuntary,
4      as here, privilege is preserved only if, quote,
5      the privilege holder has made efforts reasonably
6      designed to protect and preserve the privilege.
7              And the Ninth Circuit said it would deem
8      privilege waived if the privilege holder fails to
9      pursue all reasonable means of preserving the
10     confidentiality of the privileged matter.
11             And in De La Jara, the privilege holder
12     did nothing to recover the letter or protect its
13     confidentiality over six months.  And that had the
14     privilege holder attempted to recover the letter,
15     appellant could have minimized the damage.  But in
16     failing to do so, it irretrievably breached
17     privilege and waived it.
18             For all of those reasons, we believe that
19     Dr. Sattizahn should be permitted to testify on
20     the documents (unintelligible) and contained in
21     his declaration and in the whistleblower
22     disclosures and that Meta should not be allowed
23     free rein without ever having identified the
24     specific information about which it asserts
25     privilege to limit Dr. Sattizahn's testimony.

Page 60

1              And with that very long argument, I will
2       yield to any questions the Court may have for the
3       State.
4              THE COURT:  All right.  At this point, I
5       don't have any for you.
6              Mr. Schultz, are you arguing?
7              MR. SCHULTZ:  Yes, Your Honor.  Thank you.
8              THE COURT:  All right.  Whenever you're
9       ready.
10             MR. SCHULTZ:  Sure.
11             So Dr. Sattizahn is a disgruntled former
12      Meta employee who, when he was terminated, stole
13      privileged documents from Meta, published them
14      online, and then testified before Congress about
15      legal advice he purportedly received from Meta's
16      attorneys.
17             The Court has already ruled a moment ago
18      that those communications with Meta's attorneys
19      are privileged.  And disclosing those materials,
20      Mr. Sattizahn -- or Dr. Sattizahn, excuse me,
21      flagrantly violated Meta's privilege.
22             The State now seeks to compound the harm
23      to Meta and induce Sattizahn to commit further
24      violations of Meta's privilege by eliciting his
25      deposition testimony about those privileged

Page 61

1    matters.

2         It's not appropriate for the State to

3    knowingly induce a witness to violate his former

4    employer's privilege.  In fact, doing so, would

5    directly violate New Mexico Rule of Professional

6    Conduct 404(a), which says that a lawyer shall not

7    use methods of obtaining evidence that violate

8    rights of a third party, here Meta, and ABA formal

9    opinion 91-359 expressly addresses this specific

10   situation and says that when an attorney is

11   contacting a former corporate employee, the

12   attorney must be careful not to seek to induce the

13   former employer to violate the privilege attaching

14   to attorney/client communications.

15        And that is exactly what the State seeks

16   to do here.

17        And so we're asking for remedy that is

18   fairly modest and we believe reasonable, which is

19   a protective order preventing the State from

20   asking Mr. Sattizahn about privileged legal advice

21   he received as a Meta employee, precluding

22   Dr. Sattizahn from disclosing privileged legal

23   advice, and obligating Mr. Sattizahn to adhere to

24   instructions during his deposition from Meta's

25   counsel not to answer questions on grounds of

Page 62

1    attorney/client privilege.

2          And I want to briefly just explain why we

3    think these procedures are necessary in this case.

4          In a normal deposition, I think it would

5    be sufficient to say, okay, there is some

6    privileged matters that they go into on the other

7    side, but we can have our attorneys instruct the

8    witness not to answer the question.  And if this

9    were a deposition of, say, Ms. Zobel and Ms. Dai,

10   those would be appropriate safeguards.  But there

11   are no safeguards in this deposition because we

12   can't expect Dr. Sattizahn to adhere or follow the

13   instructions of Meta's counsel not to disclose

14   privileged information, which (unintelligible) a

15   protective order obligating Dr. Sattizahn to

16   follow those instructions, and precluding the

17   State from going into areas that it knows or

18   should know are privileged.

19         Now, in the State's brief on this issue,

20   it raised three arguments.  The first two I think

21   have been disposed of by the Court already.  Those

22   are business communications and crime/fraud.

23   Those are the same arguments that the State raised

24   with respect to Ms. Zobel's and Ms. Dai's

25   deposition.

Page 63

1          The third argument is new.

2          THE COURT:  Well, Mr. Schultz, just to

3    make sure you're clear, from my perspective, there

4    is a distinction between seeking to depose Meta

5    counsel about legal advice that, you know, in

6    particular, according to their affidavits and

7    statements, they gave to these business entities.

8    And there is a distinction between that

9    potentially and someone who received advice and

10   will be testifying about in that witness's

11   non-counsel opinion how it affected or what it was

12   and how it affected his activities with the

13   company.

14          So I just want to let you know, so I'm not

15   being strangely opaque up here, I do see that as a

16   difference.  And so it is not necessarily true

17   that everything I just ruled on, finding a

18   balance, tipping in favor of attorney/client

19   privilege being protected would be true with

20   respect to Dr. Sattizahn.

21          MR. SCHULTZ:  I agree, Your Honor.

22          It is different in the sense that

23   Dr. Sattizahn is not an attorney and not

24   everything he did as a Meta employee is

25   privileged.  And that is not our position.  We're

Page 64

1    not opposing a deposition of Dr. Sattizahn, full

2    stop.

3            THE COURT:  Sure.

4            MR. SCHULTZ:  But we're simply seeking

5    safeguards to protect the very information, the

6    attorney/client communications that Dr. Sattizahn

7    received from counsel, like Ms. Zobel and Ms. Dai.

8            And on that issue, there is no

9    distinction.  If Ms. Zobel or Ms. Dai gives

10   Dr. Sattizahn legal advice, that legal advice is

11   privileged as to the attorneys and is privileged

12   as to Dr. Sattizahn.  It doesn't matter legally if

13   he received it or gave it.

14           The privilege still applies.

15           And the other distinction here, Your

16   Honor, is that Dr. Sattizahn has already shown a

17   willingness to disregard all privilege recalls out

18   there and disclose information that is privileged,

19   which is why we need appropriate safeguards at his

20   deposition that we're requesting.

21           And so again, we're not opposing the

22   deposition of Dr. Sattizahn.  We're simply asking

23   for the Court to implement safeguards and place

24   appropriate limits to protect information that is

25   privileged because it came from Meta's legal

Page 65

1   counsel.

2       Now, the State's argument that they focus

3   on in their brief on this is waiver.  And that is

4   an argument they raise on Dr. Sattizahn.  It's the

5   only one they don't raise with respect to Zobel

6   and Dai, but they do raise on Sattizahn, so I want

7   to focus on that.

8       And we think there has been no waiver

9   here.  There are two New Mexico rules on point,

10  directly on point, neither of which the State

11  squarely addresses.

12      The first is New Mexico Rule of Evidence

13  11-511, which sets forth the relevant standard for

14  waiver.

15      And that rule says, a person who possesses

16  a privilege against disclosure of a confidential

17  matter waives the privilege if the person

18  voluntarily discloses or consents to disclosure of

19  any significant part of the matter or

20  communication.

21      Now, clinically, that rule differs from

22  federal law and federal common law and state

23  common law.  It is a specific statutory based rule

24  on waiver that was implemented by the New Mexico

25  Supreme Court.

Page 66

1           And there is no evidence whatsoever that

2     Meta either voluntarily disclosed the privileged

3     material at issue here or consented to

4     Dr. Sattizahn disclosure of those materials, full

5     stop.

6           The State does not contend otherwise.

7           The State instead asserts that Meta waived

8     privilege over the improperly disclosed documents

9     by failing to claw them back after Dr. Sattizahn

10    published them online.

11          That argument, I think, finds no support

12    in either common sense or New Mexico law.

13    Starting with common sense, Meta cannot legally

14    compel a disgruntled former employee to unpublish

15    privileged documents by issuing him a claw back

16    notice.  And the State doesn't explain what

17    purpose serving such notice in this context

18    serves.

19          And under New Mexico law, there is no case

20    that we are aware of, and the State cites, holding

21    that failing to claw back a privileged document

22    published by a third party constitutes either a

23    voluntarily disclosing that privileged material or

24    consenting to disclosure of privileged material

25    under New Mexico Rule 11-511.

Page 67

1            And to the contrary, courts applying that

2      rule have generally required offensive or direct

3      use of privileged materials before a party will be

4      deemed to have waived its attorney/client

5      privilege.  That comes from the Lyons (phonetic0

6      case from 2000 Court of Appeals.

7            Now, the second New Mexico rule directly

8      on point here, which is New Mexico Rule 11-512,

9      which again the State does not address at all, and

10     that rule says a disclosure of a privileged matter

11     is not admissible against the holder of a

12     privilege when the disclosure was made without the

13     opportunity to claim the privilege.  This rule is

14     on top of the general waiver rule in 511 and is

15     directly on point here.  We did not have an

16     opportunity to claim privilege when Dr. Sattizahn

17     published these privileged documents online.

18            And that material, therefore, under

19     Rule 512, is not admissible against Meta.

20            Now, I imagine the State does not address

21     the elements of 511 or 512.  It instead relies

22     primarily on a 1988-case called Hartman (phonetic)

23     which applied a different common law waiver

24     standard in assessing disclosure of privileged

25     material by the privilege holder.

Page 68

1            That case is not relevant here for at

2      least three reasons:  One, again it applies a

3      common law waiver standard that is not found in

4      Rule 11-511.

5            And after Hartman, New Mexico Supreme

6      Court clarified, and this is a direct quote from

7      Allen v. LeMaster, who clarified that courts must

8      avoid applying common law principles that are

9      inconsistent with the language of our rules, being

10     Rule 11-511, and must not engage in a type of ad

11     hoc judicial analysis engaged in by other courts

12     that are (unintelligible) by the common law of

13     waiver.

14            In other words, New Mexico court should

15     apply the waiver standard as it's set forth in

16     Rule 11-511, not a common law test that is kind of

17     a free ranging reasonable standard that Ms. Singer

18     quoted a moment ago from the Ninth Circuit.  So

19     that is one reason Hartman doesn't apply here.

20            Second is Hartman addresses disclosure by

21     the privilege holder.  Again, this is an improper

22     disclosure by a third party, which is addressed by

23     11-512, which says that it's inadmissible if we

24     didn't have the chance to object to it.

25            And third, Hartman addressed waiver as to

Page 69

1    the specific documents disclosed in that case.

2    And that is an important point here, it's a

3    distinction in this case and Hartman.  What the

4    State is asking for here is not simply a waiver

5    order as to the documents disclosed by

6    Dr. Sattizahn.  They're asking for an order that

7    Meta has waived privilege over the subject matter

8    of those documents, such that the State can

9    further explore those materials through

10    Sattizahn's deposition testimony.

11          Essentially it's (unintelligible) not a

12    waiver (unintelligible) asking for here -- or the

13    State is asking for here.

14          And that is a very high bar to me.  And

15    the courts I quoted a moment ago, the Lyons case,

16    for example, generally hold that subject matter of

17    waiver of the type asked for by the State here

18    generally requires offensive or direct use by the

19    privilege holder.  There is no evidence of that

20    here.

21          The last issue I want to address briefly,

22    Your Honor, is the first part of Ms. Singer's

23    argument, which is sort of akin to waiver that the

24    State doesn't know what we're asserting privilege

25    over here.

Page 70

1            That is not our understanding of the
2    conversations that happened (unintelligible) from
3    the State.  We have interpreted the State's
4    position as a blanket we get to ask whatever we
5    want to Dr. Sattizahn about anything he made
6    public, regardless of what the privilege is, of
7    whether it's privileged.  There simply has not
8    been a discussion about a document per document
9    privilege claim because the State hasn't taken the
10   position that some documents may be off limits and
11   some may be within limits.
12           It hasn't indicated a willingness to have
13   that conversation about, okay, we'll cabin our
14   questions to this document, this document.  The
15   State has taken the position that everything is
16   fair game for Dr. Sattizahn.
17           If the State is willing to have that
18   conversation, we're happy to have it and tell the
19   State, okay, these documents are privileged
20   specifically and go document by document and say,
21   okay, this is -- research is not legal advice,
22   this is legal advice, it's off limits.
23           And we can have that conversation before
24   the deposition.
25           But regardless of that conversation, what

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 71

1    we think needs to happen or should happen here is

2    that there should be an order that prevents

3    Dr. Sattizahn from breaching Meta's privilege in a

4    further way by willingly disclosing privileged

5    material over the objections of Meta's counsel and

6    precluding the State from knowingly going into

7    privileged materials in the deposition in

8    violation of Rule 404.

9            Nothing further.  I will pause for

10   questions.

11           THE COURT:  All right.  I don't have any

12   for you at this time.

13           All right.  And let me just -- I will just

14   state at this point, I understood from the notice,

15   that this was sort of a dispute and then I noted

16   as well that there was a motion filed by plaintiff

17   on the 17th, so I'm not clear at this point if I'm

18   dealing with a dispute where I hear from each side

19   or if I'm ruling on a motion.

20           But maybe in any event, let me just --

21   Ms. Singer, I have a question for you.  And then

22   Mr. Schultz, I will ask you to weigh in too, if

23   necessary.

24           And that is, is there a reasonable

25   mechanism by which Dr. Sattizahn's -- the

Page 72

1    deposition transcript and any exhibits that are

2    alleged to be privileged and the like, could be

3    protected and confidential until the Court has an

4    opportunity to review objections made by Meta and

5    rule on those?

6            MS. SINGER:  From the State's perspective,

7    Your Honor, absolutely.  And I think that is one

8    of the point I perhaps inartfully tried to express

9    in my argument.

10           THE COURT:  No.  And you weren't inartful

11   at all.  I guess I just wanted to make sure that I

12   was stating it in a way that I would be applying

13   it.  And that is, you know -- and as well, I

14   understood from your argument as well, and I would

15   agree that Meta's participation in the deposition

16   is not a waiver of privilege and is not

17   prejudicing its position with respect to the

18   claims.

19           But I did want to make sure that it would

20   be clear both for the Court and plaintiffs that

21   that would be the sort of protective order I would

22   be interested in, is making sure that it's

23   protected until there is an opportunity to rule.

24           MS. SINGER:  Absolutely, Your Honor.  And

25   the State is willing to agree to whatever

Page 73

1    guardrails on that that provide confidence.  But,

2    yes, that would be our understanding and our

3    proposal.  And I do think it has the additional

4    virtue of giving the Court a clear record on which

5    to make those determinations and avoid a second

6    deposition of Dr. Sattizahn after a witness is

7    instructed not to answer questions and the Court

8    is making those determinations without the

9    information on what his answer would be.

10         THE COURT:  Sure.  And Mr. Schultz.

11         MR. SCHULTZ:  So if I understand correctly

12   the proposal on the table is essentially the State

13   can go forward with its deposition of

14   Dr. Sattizahn, if there are privilege objections,

15   that Dr. Sattizahn ignores instruction not to

16   answer, the Court can rule on those after the

17   deposition, is that right?

18         THE COURT:  Correct.  That he would be

19   allowed -- so I guess where I'm going in this, the

20   State would be allowed to explore, as I think I

21   previously ruled, questions related to all

22   publicly disclosed or available documents.  I

23   understand that Meta is contending they shouldn't

24   be and that they're -- still need to be protected.

25   But I would allow that deposition to go forward,

Page 74

1   allowing questioning on all such documents.

2   Meta's participation in the deposition would not

3   be a waiver of its claims of privilege with

4   respect to those documents.  And then the

5   deposition would be essentially sealed or

6   protected, you know, with similar or same effect,

7   and it would remain so until the Court can make a

8   decision based on, I guess, post deposition

9   assertions by Meta as to what was inappropriate.

10          I mean, part of this is noting, as well, I

11   think it's 512 that deals with admissibility of

12   such issues.  But I'm still focused on discovery.

13          And so that is another important

14   distinction for the Court.

15          So again, I want to make sure that what

16   I'm proposing is something that is, I understand,

17   objectionable, but workable.

18          MR. SCHULTZ:  Yes, and good flight on 512,

19   it does deal with admissibility.

20          I think I see two -- two issues with that

21   approach, Your Honor.

22          One is that the deposition is going to be,

23   you know, coordinated with MDL attorneys and

24   people in the deposition will not just be

25   New Mexico and Meta, it will be people outside.

Page 75

1    And so it's going to be hard to cabin the universe

2    of people who see this information to just people

3    in the Court (unintelligible) seeing it.

4          The second, and I think more problematic

5    issue from our perspective, Your Honor, is it's

6    going to be hard to cabin the topics that

7    Dr. Sattizahn testifies about.  It would be one

8    thing if, you know, all that was really

9    (unintelligible) was the words on the page and all

10   that Dr. Sattizahn testified about was the words

11   on the page of documents that were publicly

12   disclosed.

13         But the nature of a deposition is to

14   explore witness's testimony beyond the documents.

15   And so, you know, there is really no telling what

16   he will say and what additional conversations he

17   will disclose.  And so I think doing it this way,

18   from our perspective, risks further privilege

19   violations of not only the materials that were

20   already in public, but new alleged conversations

21   that Dr. Sattizahn had that have not previously

22   been disclosed before, which would obviously

23   compound the violation there.

24         So, you know, it's going to be hard to

25   police that line and it's going to be hard to

Page 76

1    police the line of where does, you know, the

2    documents he published stop and where does, you

3    know, referring else begin.

4         THE COURT:  Sure.  And by the way, I don't

5    disagree with what you're saying.  It's just from

6    a Court's perspective, the choice is place that

7    line without knowledge of what is going to be said

8    in advance of the deposition, or figure out the

9    line based on what was said after the deposition.

10   And I am obviously inclined towards the latter.

11        Let me ask, on the MDL piece, because it's

12   a good point and it's one that maybe I'm helping

13   facilitate, if not create, and that is -- and

14   again, counsel, correct me if I'm wrong.

15        I have understood that my rulings with

16   respect to coordinating depositions in this

17   matter, with those being taken in the MDL, was to

18   respect witness time, efficiency, expense, all

19   those things.

20        And it's been in that vein that I,

21   wherever possible, have said, coordinate.  But I

22   certainly have -- well, I shouldn't say -- the

23   other piece of my rulings, I think have been, that

24   coordination is not at the expense of this

25   New Mexico litigation in the application of

Page 77

1    New Mexico discovery standards.

2           So I guess where I'm going with all this

3    is if my rulings to try to accomplish the former,

4    the efficiencies and the respect for time and all

5    those sorts of things, is creating problems with

6    respect to applying New Mexico specific rulings,

7    let me know, because that could be a good reason

8    to say, all my other concerns are outweighed by

9    the latter and maybe this needs to be conducted in

10   a separate forum.

11          I don't know how feasible that is.  I

12   don't know -- again, I sort of feel like I have

13   steered you all towards or whatever, forced you

14   all towards, whatever the right term is, towards

15   coordinating, and now I'm hearing, judge, you're

16   actually creating problems for New Mexico

17   litigation by doing that, which has not been my

18   goal.

19          So let me ask Ms. Singer, as the person

20   who wants to take said deposition.  What are your

21   thoughts with respect to that.

22          MS. SINGER:  Yes, I think two issues.  And

23   it is a turn, Your Honor, given the prior posture

24   on this.

25          One is, I think Your Honor made clear at

Page 78

1    the last hearing, this deposition is proceeding as

2    a New Mexico deposition.  And for the witness's

3    convenience, we are prepared to coordinate, just

4    as Your Honor has directed in the past, and that

5    seems fair, we have agreed upon a division of time

6    that makes this a one-day deposition, among the

7    plaintiffs and with Meta, all.

8         That said, I think Your Honor could set

9    either one of two conditions in the interest of

10    allowing us to go forward.  One is that any

11    parties that participate in the New Mexico section

12    of this deposition have to agree to abide by the

13    same sealing requirements, and/or treat the

14    New Mexico deposition as a separate part of the

15    deposition.

16         I think either of those address the

17    concern that has been raised.

18         THE COURT:  All right.  Mr. Schultz.

19         MR. SCHULTZ:  Yeah, I mean, I think at a

20    minimum, if this procedure was to go forward, we

21    want to, you know, sequester that part of the

22    deposition and hold it entirely separately.

23         But, you know, it strikes me as well that,

24    you know, there might be a better way to do this,

25    which is, I thought Ms. Singer at the beginning of

Page 79

1    this call had a good idea of, you know, talking

2    through the documents that Dr. Sattizahn published

3    and clarifying what is and is off limits.

4            And I think if we can do that, we can, you

5    know, go forward with the deposition of the

6    non-privileged parts of Dr. Sattizahn's materials

7    that he's published and just leave it at that.

8            THE COURT:  All right.

9            MR. SCHULTZ:  But sanctioning a deposition

10   that will conceitedly have privilege disclosures

11   in it, I have never seen that done in a case in my

12   short career.  Maybe it has been and I'm not aware

13   of it.  But it strikes me as, say, an

14   unconventional remedy for (unintelligible) maybe

15   we can address in advance of the deposition simply

16   by talking to the State and Meta about, you know,

17   what is and is not off limits.

18           THE COURT:  All right.  Well, again, so in

19   past hearings, I have worked to address this,

20   admittedly imperfectly, but again, we've talked

21   about drawing lines and when they're drawn.

22           And I don't agree that, again,

23   Dr. Sattizahn's testimony about his activities and

24   how those activities worked and maybe even worked

25   in conjunction with, you know, some legal input is

Page 80

1    automatically and always going to be privileged.

2         And so I don't think it's as clear cut as

3    all that.  I would certainly encourage you all to

4    confer, because if there are documents that I am

5    clearly going to say, even though publically

6    available, which was the first line I drew, A,

7    this is never going to be admissible, clearly this

8    is going to be protected, well, I would encourage

9    you all to make your deposition productive and not

10   spend a bunch of time on that.

11        You know, so conferral, I think, still has

12   merit and I think still could be useful.

13        But, again, because I don't know, in fact,

14   that I am ordering a deposition that will

15   necessarily go into privileged matters, I just

16   know it's going to go into some matters that are

17   alleged to be privileged by one side that are

18   publicly available, I'm going to, again, allow

19   that to go forward.

20        I will say, the New Mexico specific

21   deposition that is allowing questions on these

22   matters should be a separate part of the

23   deposition, and just be New Mexico counsel and not

24   the -- all the MDL -- again, by the way, I hear

25   somebody saying -- if I am told later on that a

Page 81

1    similar or identical ruling has been made in the

2    MDL, so now there is really a distinction without

3    a difference, this ruling would change.  But

4    understanding at the moment that I am making a

5    decision that is unique to New Mexico and

6    different from what exists in the MDL, I would say

7    that the deposition of Dr. Sattizahn for

8    New Mexico purposes should be a separate and needs

9    to be a separate proceeding.

10        And by that, I don't mean you need to

11   change rooms, you need to do anything different, I

12   mean, other MDL counsel can't be sitting in there

13   learning all these things that I'm going to rule

14   on later and then seeing how they can use them in

15   other litigation.

16        MR. SCHULTZ:  Understood, Your Honor.

17        And if we are going to do it this way, I

18   think, you know, we would request that, you know,

19   after the deposition, to the extent that there are

20   things that Dr. Sattizahn said that are privileged

21   or disclosed privileged advice or materials, yeah,

22   we would be able to go to the Court and get those,

23   you know, stricken from the record entirely, as

24   privileged materials, and then have the State, you

25   know, basically destroy and then replace this

Page 82

1    transcript with a redacted version of the

2    non-privileged sections of the deposition.

3            THE COURT:  Sure.  When is this deposition

4    scheduled?

5            MS. SINGER:  December 8th, Your Honor.

6            THE COURT:  All right.

7            MR. GRAYSON:  Your Honor, may I have one

8    more thing on this issue?  This is James --

9            THE COURT:  Just one moment.  And that's

10   only because it's not your input of being

11   objectionable, but I only have a certain amount of

12   mental bandwidth sadly.

13           So I guess where I wanted to go with this

14   is, again, I think consistent with the notion that

15   there would be an order protecting and essentially

16   sealing this deposition transcript until this

17   Court has made any requested rulings related to

18   confidentiality, assuming that they are

19   immediately brought to the Court's attention.

20   Again, I'm not going to say sand bagging will be

21   rewarded.  But if they are immediately brought to

22   the Court's attention, I think it would make sense

23   and would be consistent with the ruling that I

24   rule on those before there is an unsealed version

25   of the transcript released.

Page 83

1          So I think that that is -- I don't

2     understand how else it would work frankly.

3          The other piece that I want you to know

4     for your timing in terms of when those matters are

5     being raised and when that briefing is done, I

6     currently have a jury trial scheduled the 9th to

7     the 16th.  And while I have endeavored to jump on

8     to hearings in this matter in the midst of the

9     last jury trial, this might be involved enough, I

10    suspect, that I would not be able to do that

11    during the jury trial.  I'm guessing.

12         So if you decide that a reasonably

13    competent judge would be able to do that, then you

14    can certainly request it.

15         But please be lenient with your

16    assessment, what you think a reasonably competent

17    judge could do.

18         With that, I would be looking to set this

19    matter, if needed, as one of those December issues

20    we talked about, and I think was requested earlier

21    on, and not something that is piling up into

22    January as you're trying to prepare for your

23    trial.

24         And so I don't know exactly when we would

25    do that.

Page 84

1            Part of it would also be to see how many

2     objections there are and what is involved.  But I

3     just want to let you know that that is precisely

4     the sort of proceeding that might, I think, need

5     to be scheduled in December sometime after the

6     16th when my jury trial is supposed to end.

7            All right.  Mr. Grayson.

8            MR. GRAYSON:  Thank you, Your Honor.

9            James Grayson for the New Mexico

10    Department of Justice.  And I apologize for

11    jumping in on this issue.

12            I just feel it necessary to address

13    Mr. Schultz's reference to Rules of Professional

14    Conduct, because as Your Honor pointed out, there

15    are two different issues here, admissibility

16    versus discovery.  But he raised that third issue,

17    and so I do want to the address that with the

18    Court.

19            THE COURT:  Okay.  And by the way, let me

20    just say, I will just have this -- which is, I am

21    ruling on the basis that I do not think that the

22    line is as clean as is being represented between

23    what is protected and what is not.

24            We're talking about publicly disclosed

25    documents.  I understand a party is saying that

Page 85

1    they are not happy with and have not waived

2    protections related to those disclosures.  But

3    again, it is what it is in terms of we've already

4    limited this to publicly available documents and

5    information.

6            So -- and the witness can ask questions

7    related to those.

8            So this Court is not out to steer itself

9    towards judicial standards.  It is not out to

10   steer counsel towards the disciplinary board.  I

11   am trying to make sure that we thread some needles

12   here so there is broad discovery consistent with

13   New Mexico standards and some protections that if

14   that leads us into areas that would be

15   inappropriately damaging or properly objectionable

16   to Meta, they get a chance to make those

17   objections before this is out in the world.

18           So if you -- if anybody here sends someone

19   to the disciplinary board for obeying my order, I

20   reserve the right to, as a judge, make a

21   countervailing complaint against that complaining

22   party.  But, you know, let's go with people are

23   following the Court's orders.  If anybody is at

24   fault, it's me, I will take that wrap and we'll

25   deal with it.

Page 86

1          But I think that this mechanism is going
2      to accomplish what I just said, which is full and
3      fair discovery.  And if it turns out that that has
4      led us into areas that are protected, I can make
5      decisions on that before it's released to the
6      world.
7          MR. GRAYSON:  Understood, Your Honor.  And
8      the State agrees 100 percent.  I wasn't suggesting
9      in any way that Your Honor was directing us toward
10     any --
11         THE COURT:  Well, that is what I would be
12     doing.  If the concern is, hey, following this
13     judge's order, now you violate Rules of
14     Professional Conduct, which is what I sort of
15     understood as a synopsis was being suggested, I'm
16     saying, follow my order and I will deal with
17     anything that comes from it.
18         But it is -- again, I am not trying to
19     ignore -- well, I am not ignoring the Rules of
20     Evidence, I'm not ignoring Rules of
21     Professionalism.  I am trying to make sure that we
22     balance the claims or potential claims of
23     privilege with the public availability of these
24     statements and the New Mexico Discovery standards.
25     And I think hopefully this mechanism will do that.

Page 87

1            I will ask that you all obviously confer,

2    as always, in good faith, and hopefully

3    productively, but with respect to the mechanisms

4    we've discussed this morning about this

5    deposition, and get me an order that I can enter

6    on that so that it is part of the record prior to

7    the deposition.

8            MR. GRAYSON:  And Your Honor, we're happy

9    to confer with Meta on this issue.  And the reason

10   I raised the Rules of Professional Conduct point

11   is just, I hope that this will be a reciprocal

12   relationship.

13           Because Mr. Schultz raised the issue of

14   contacting a former Meta employee and asking about

15   privilege matters, when, in fact, what happened

16   here is that Meta has deprived the State of the

17   same opportunity that Meta has today.  Meta

18   contacted a former employee of the New Mexico

19   Department of Justice -- or that employee rather

20   contacted Meta, suggested that he would be willing

21   to provide privileged information if he were

22   ordered to at deposition.  And then requested a

23   job from Meta in the same communication.

24           And Meta didn't produce that communication

25   to the State until the Court ordered it to do so.

Page 88

1            So I just want to remind Meta of its Rules

2    of Professional Conduct obligations at the same

3    time it's trying to do the same for the State.

4            THE COURT:  All right.  Well, again, it is

5    true that I've been trying to hopefully

6    appropriately balance these concerns with respect

7    to multiple sides.  I don't think that Meta yet

8    has my resume.

9            So I don't think that I'm unreasonably

10   biased in that effort.

11            And I think that where we're at is, yes,

12   the rules apply to everybody.  The Code of

13   Judicial Conduct applies to me.

14            And we will all behave accordingly.  And

15   we will deal with any issues as they come up.

16            But again, right now what I'm focused on

17   is the Court's ruling.  Get me an order so that I

18   can see that everyone is on the same page with

19   respect to the mechanics; they're going to allow

20   this matter to go forward or the deposition in

21   this case; that I'm not prohibiting the State or

22   limiting what they can ask about with respect to

23   these publicly available statements or documents,

24   and then we will circle back because that

25   transcript will be protected and see if there are

Page 89

1    any valid privilege assertions so that -- and that

2    will be done before the transcript is unsealed.

3              MR. GRAYSON:  Thank you, Your Honor.

4              THE COURT:  All right.  Anything else for

5    this morning?

6              MR. HUFF:  Your Honor, as I previewed at

7    the start, I have --

8              THE COURT:  Oh, yes, Mr. Huff.

9              MR. HUFF:  I have a very brief request.

10             And I'm not going to belabor and get into

11   the substance of it; just to explain the issue.

12             Which is:  We would like to ask for an

13   expedited briefing schedule for a matter that we

14   think requires semi-urgent resolution, which is

15   that on November 14th, the State amended its

16   interrogatory responses to add 63 new alleged

17   false statements to this case, and an entirely

18   brand new theory relating to guns and drugs on the

19   platform of Meta.

20             And of course, these theories were all

21   disclosed after the deadline for experts and after

22   the deadline for summary judgment.  So we filed

23   summary judgment motions attacking the statements

24   that the State had alleged were false.  And then

25   they added 63 more after summary judgment was

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 90

1    over.

2            In addition, I see a coming mess on

3    discovery related to AI Chatbots.  The parties are

4    still meeting and conferring about that and I'm

5    hopeful that we can come to a resolution.  But

6    given the positions the State has been taking, I

7    am concerned about it.

8            And so the reason that I'm raising this is

9    we are very likely to be filing a motion to strike

10   these new theories or, in the alternative, to

11   delay the trial to give us a chance to take

12   discovery into these new theories and add experts

13   and have summary judgment.

14           And so we would like just the opportunity

15   now for the Court to set a briefing schedule.  I'm

16   not here to argue the substance of the issue.  I

17   just would like an expedited briefing schedule.

18           THE COURT:  All right.  Thank you.

19           Ms. Singer.

20           MS. SINGER:  Yes.  I strongly disagree

21   with how Mr. Huff has characterized this.  And it

22   was raised to us only very very recently.  We have

23   not had a chance to respond.

24           What the State provided were additional

25   examples of misrepresentations within the

Page 91

1    categories that have already been disclosed to

2    Meta, some of which were revealed during

3    discovery, some of which were more recent

4    statements made by Meta, for example in rolling

5    out safety, purported safety tools, that

6    depositions taken in recent weeks have shown

7    aren't actually effective.  All of this has been

8    known to Meta, has been explored in discovery.

9         There is no new theory of the case that is

10   a surprise to Meta here or that experts on both

11   sides haven't addressed.

12        So I just want to be absolutely clear on

13   the record on those issues.

14        THE COURT:  Sure.  So let me just say

15   this:  Because as much as you would expect this

16   judge at this point in this litigation to

17   excitedly jump into quagmires related to AI

18   Chatbots without any briefing before me, I'm going

19   to resist that temptation.

20        What I will say, Mr. Huff, is that it

21   sounds as if you have identified a concern and you

22   have a desired remedy to request.  I will

23   certainly authorize you to file that with an

24   expedited tag on it.  But before doing that,

25   confer in good faith.  If you all can reach a

Page 92

1    reasonable briefing schedule, great.  And again,
2    this could well be one of those try to get it in
3    in December.  Because you've already got, as I
4    look at Odyssey, plenty for January.
5            But confer in good faith about how we
6    could address this as soon as possible.
7            And yes, you may say it's expedited.  And
8    at the very least, what that means is we will be
9    looking for a hearing setting whilst the briefing
10   schedule is going.  Given how close we are to
11   trial, I would encourage the plaintiffs as well to
12   perhaps relinquish some of their response time to
13   speed up when we can get this matter set.
14           So confer in good faith on that.  And then
15   if there is a filing, I will not be surprised and
16   we'll work to get it in as soon as we can.
17           MR. HUFF:  Thank you, Your Honor.
18   Appreciate that.
19           MS. SINGER:  And, Your Honor, of course we
20   will do our best, mindful of the fact that we also
21   have a holiday coming up.  I know Your Honor
22   intends to honor it.  And we would like to do the
23   same for our team.
24           THE COURT:  Sure.  I am not thinking --
25   you will not find a frustrated judge if briefing

Page 93

1   has not commenced by Thanksgiving.

2          But what I will be saying, I would hope

3   that maybe you can confer prior to then and maybe

4   have a schedule that you can alert me to via a

5   proposed text letting me know, hey, when holidays

6   are -- or at least the first holiday of the

7   holidays is done, here is what we're going to be

8   filing and when, and, judge, we're going to need a

9   setting in some reasonable time.

10         And I think -- I mean, all of you share a

11  common interest, I would think, in some respects.

12  And that is, helping the Court to make sure that I

13  know what is coming and that I can keep a rolling

14  schedule going so that at the end of the day, I

15  don't have a pile-up of issues that is going to

16  make it tempting to say, I don't think I can get

17  through this in time, you're going to have to

18  vacate this trial schedule and push it back.

19         I think that making sure that I can, to

20  the extent possible, keep things rolling and be

21  ready on February 2nd in this matter is certainly

22  the goal of the Court.

23         MS. SINGER:  Absolutely.

24         THE COURT:  So please do that, that

25  conferral, and help me keep things on the rails to

Page 94

1    the extent possible.

2          MS. SINGER:  Absolutely.  And, Your Honor,

3    we certainly share that goal adamantly.

4          And I would also just suggest to Meta's

5    counsel that we ought to meet and confer on this

6    issue, not only on a briefing schedule, but in an

7    effort to try to narrow disputes that are going to

8    the Court, which we have not done on this yet.

9          THE COURT:  All right.  Well, I would love

10   narrowing, I love scheduling, when there is

11   conferral.

12         Please do that.  I have no doubt you will.

13         And then keep me apprised as to this and

14   other -- the other issues that are undoubtedly

15   afoot.  Also, obviously, Dr. Sattizahn, if I'm

16   going to have -- you know, if you know there is

17   objections coming close on the heels of that

18   deposition, again, I've disclosed my jury trial

19   schedule, so you will know sort of within that

20   time, to the extent that objections and responses

21   can be submitted to me, that's great, because that

22   is time that I won't be able to be considering

23   them anyway.  But I would certainly do my part to

24   try to set that matter so that everyone knows, as

25   far advance to trial as possible, what is

Page 95

1    admissible and -- under 512 and what is not.

2            So that might be of use.

3            MS. SINGER:  Your Honor, may I raise one

4    other scheduling issue?

5            THE COURT:  Certainly.

6            MS. SINGER:  Just to keep it clean as you

7    balance all of these different demands.

8            And that is, we had talked several

9    hearings ago, I think, about meeting with the

10   Court to discuss trial technology logistics and

11   things like that.  The Court day, all of those

12   kinds of issues.

13           THE COURT:  Yes.

14           MS. SINGER:  And I know you had suggested

15   the possibility of doing that in December as well.

16   I think that would be very helpful to the parties.

17           THE COURT:  Well, let me just say on that

18   front:  Absolutely.  And this is true for all

19   counsel, all technologists, all -- anyone who is

20   interested that is involved in this case.  You can

21   contact Ms. Sossman.  You don't have to all do it

22   together.  But we've got an IT department here

23   that is extremely helpful.  I wouldn't be shocked

24   if you all have your own departments and you want

25   to bring in folks to make sure that our setup is

Page 96

1    compatible.  All of that is fine and I encourage

2    it.

3            And one of the -- well, I will say:

4    Certainly in particular in December, I think there

5    will be more opportunities to do that.  And by the

6    way, another option here that is always true,

7    which is I -- if it makes sense at some point to

8    have a hearing in this matter in person, where we

9    can argue in person and also check out the

10   courtroom and do those things on your end, I'm

11   happy to do that as well.

12           So I'm not as addicted to watching you all

13   on TV as it might seem from how things have

14   worked.

15           But that is another possibility.

16           But absolutely, reach out to Ms. Sossman,

17   reach out to our IT here at the court.  That is

18   Dave Madrid and Joe Moore.

19           They will absolutely help you to make sure

20   that -- we don't want things to get bogged down

21   because we didn't have the right adapter or any of

22   those sorts of things.

23           And then, let's see, similarly on that

24   front, I guess maybe I'm assuming something, it's

25   not critical at the moment.  But am I correct that

Page 97

1    you all will be hiring a court reporter to

2    transcribe these proceedings as opposed to going

3    with FTR.

4            MR. HUFF:  I don't think we've discussed

5    that yet, Your Honor.  But we will add that to our

6    log pile of conferrals.

7            THE COURT:  Okay.  Well, just know that

8    from the Court's perspective, while we're dealing

9    with these other matters in corners, that is a

10   helpful thing to know from this end.

11           And maybe it would be a good time for you

12   all to be considering that.

13           Just know one more piece and I have to go,

14   because I know I've got folks waiting on another

15   hearing.  But if you go the route of court

16   reporter, I will say, that is fine with me.  That

17   is not terribly uncommon in this division.

18           But I do require an order, stipulated

19   order, that you're going that route and that, most

20   importantly for the Court, the court reporter

21   understands that if there is, hard to imagine, if

22   there is an appeal following trial, that the court

23   reporter's transcript is the record proper and

24   will be provided for that purpose.  Because I've

25   never run into it, but I think some judge

Page 98

1    somewhere in the State ran into an issue where the

2    court reporter said, hey, judicial branch, pay me

3    to get -- that is not a situation that I want to

4    find myself in.

5            So just be aware of that as one more thing

6    to talk about and confer.

7            MR. HUFF:  We'll do that, Your Honor,

8    thank you.

9            THE COURT:  All right.  Anything else in

10   this matter for this morning?

11           MS. SINGER:  Not for the State, Your

12   Honor.

13           MR. HUFF:  Not for Meta either, Your

14   Honor.

15           THE COURT:  All right.  Well, please keep

16   up the good and helpful work of letting me know

17   what is afoot and what the Court needs to be aware

18   of and consider.

19           And we will continue to try to schedule

20   these sorts of hearings when you are available and

21   when the Court can do it to try to make sure that

22   things aren't piling up and you all are able to

23   keep -- continue to move forward.

24           MR. HUFF:  Thank you, Your Honor.

25           Have a good holiday.

Page 99

1            THE COURT:  You too.  And with that, we

2    are adjourned in this matter.

3            (End of audio file.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 100

```
 1                 REPORTER'S CERTIFICATE

 2

 3          I, ANA MARIA GALLEGOS, RPR, CLR, NM CCR

 4     #190, CA CSR #9246, DO HEREBY CERTIFY that I did,

 5     in stenographic shorthand, transcribe the audio

 6     proceedings set forth herein, and the foregoing

 7     pages are a true and correct transcription to the

 8     best of my ability.

 9          I FURTHER CERTIFY that I am neither

10     employed by nor related to nor contracted with

11     (unless excepted by the rules) any of the parties

12     or attorneys in this matter, and that I have no

13     interest whatsoever in the final disposition of

14     this matter.

15

16

17

18     _____

       ANA MARIA GALLEGOS, RPR, CLR

19     NM CCR #190, CA CSR #9246

       License expires:  12/31/2026

20

21

22

23

24

25
```

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 102 of 122

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 1

**A**

Aarnold@mot... 5:22
Aaron 3:15
ABA 61:8
abide 78:12
ability 11:23 19:16,22 22:6 22:9 26:21 51:8 100:8
able 12:21 18:14 28:20 48:10 53:9 81:22 83:10,13 94:22 98:22
absolutely 72:7 72:24 91:12 93:23 94:2 95:18 96:16,19
abstract 52:24
abundance 27:5
AC 40:8
access 14:12
accomplish 77:3 86:2
accord 33:23
accuracy 36:21
accurate 32:3 48:18
accusation 35:3
Acharles@cov... 3:4
Ackerman 5:8 7:17,18 9:23 10:20,21 17:7 21:11,12 24:11 24:15,18 26:2 26:19,22
acknowledging 37:17
actions 38:15
active 18:24
activities 63:12 79:23,24
acts 53:10
actual 46:19 52:4 58:7

ad 68:10
Adam 53:24
adamantly 94:3
adapted 13:8
adapter 96:21
add 89:16 90:12 97:5
added 89:25
addicted 96:12
addition 7:11 90:2
additional 7:10 14:3,11 20:9 73:3 75:16 90:24
address 9:14,22 20:16,19,22,23 43:6 58:6 67:9 67:20 69:21 78:16 79:15,19 84:12,17 92:6
addressed 14:15 68:22,25 91:11
addresses 20:18 41:19 61:9 65:11 68:20
adequate 17:12
adhere 61:23 62:12
adjourned 99:2
administration 57:20
admissibility 74:11,19 84:15
admissible 67:11,19 80:7 95:1
admittedly 79:20
adopted 20:13
advance 50:4 76:8 79:15 94:25
advice 28:21 29:2,25 30:2,3 30:8,11,13,16 30:17,21,24,25

31:2,7,12,15 31:19,22 32:8 33:3,11 36:6 39:22,23 40:21 41:20 42:22 43:8,13,17 44:19 46:8 47:23 48:1 52:22 55:20 60:15 61:20,23 63:5,9 64:10 64:10 70:21,22 81:21
advise 44:2,9
advised 33:17 34:10
advises 44:12
affidavits 63:6
affirmative 11:16,16,24 12:20 17:6,14 17:19 18:14 21:21,23 22:1 36:1,1
affirmatively 53:9
afoot 94:15 98:17
age 43:3 49:10
ago 30:1 52:21 60:17 68:18 69:15 95:9
Agosanko@ke... 4:9
agree 20:23 63:21 72:15,25 78:12 79:22
agreed 78:5
agreement 20:2 86:8
agrees 29:11 86:8
AI 90:3 91:17
akin 59:1 69:23
al 7:6
Albuquerque 5:5
alert 10:10,14

93:4
Alex 3:19 8:5
Alexander 3:21
allegation 57:15
allegations 11:19 54:12 56:5
alleged 49:19 72:2 75:20 80:17 89:16,24
Allen 68:7
allow 27:16 45:25 57:24 73:25 80:18 88:19
allowed 59:22 73:19,20
allowing 25:1 29:19 47:24 74:1 78:10 80:21
alter 31:3 33:13
altered 57:12
alternative 90:10
Alto 3:10,11
altogether 24:5
Amber 2:20
ambiguities 24:12
ambiguous 24:14
amended 49:3 89:15
American 35:16 53:7 56:25
amount 50:18 82:11
amp 3:14
Ana 1:24 3:19 3:22 8:5 100:3 100:18
analysis 14:10 17:11 19:16,22 22:6,10 23:1,6 68:11
analyze 19:15

analyzed 20:20
and- 2:11 3:13
and/or 55:7,8 78:13
Anderson 2:7 8:2,4 10:11 25:18
ANDREW 5:16
Angeles 3:7 6:12
ANN 5:16
annotated 54:10
annoying 24:17
answer 17:8 51:13 61:25 62:8 73:7,9,16
anybody 85:18 85:23
anyway 94:23
Apanner@kel... 4:3
Aparkinson@... 4:7
Apaul@kellog... 4:7
apologize 26:22 37:4 84:10
apparently 16:16
appeal 97:22
Appeals 41:17 50:11 67:6
appearances 7:16
appearing 37:8
appellant 59:15
appended 40:4
appetite 10:17
applicable 24:1 33:24
application 31:1 31:4 32:21 34:5 35:7 45:2 45:22 76:25
applied 40:16 50:12 67:23
applies 32:24 38:13 42:2

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 103 of 122

11/21/2025     State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 2

43:12 46:5
64:14 68:2
88:13
**apply** 21:15
68:15,19 88:12
**applying** 22:22
47:19 67:1
68:8 72:12
77:6
**apportion** 11:13
11:25
**apportionment**
17:9,21
**Appreciate**
92:18
**appreciates**
25:22
**apprised** 94:13
**approach** 53:5
74:21
**appropriate**
57:2 61:2
62:10 64:19,24
**appropriately**
88:6
**approve** 53:5
55:8
**approved** 8:16
**apt** 45:19
**areas** 62:17
85:14 86:4
**argue** 17:24
27:17 90:16
96:9
**argues** 31:20,21
**arguing** 10:21
27:1 51:15
60:6
**argument** 14:8
15:22 16:9
18:21 21:1
22:23 24:24
26:9,14 27:10
28:6 30:10,21
31:14 34:1,24
47:20 48:25
52:13,20 53:21

54:4 58:6,15
60:1 63:1 65:2
65:4 66:11
69:23 72:9,14
**arguments** 14:5
18:19 29:7
30:10 34:4
35:5 49:21
52:17 62:20,23
Aritter@motl...
5:21
**ARNOLD** 5:16
**arrangement**
45:24
**article** 18:6
**articulated** 16:6
17:4
**asked** 45:1 50:23
51:1,17 69:17
**asking** 12:7 15:2
22:24 49:13
61:17,20 64:22
69:4,6,12,13
87:14
**aspects** 13:3
**assert** 50:1
58:12
**asserted** 46:12
**asserting** 69:24
**assertion** 11:17
52:24
**assertions** 29:20
32:4 74:9 89:1
**asserts** 12:9
31:24 49:25
51:7,13 59:24
66:7
**assessing** 67:24
**assessment**
83:16
**Assistant** 4:17
5:4
**assume** 52:25
**assuming** 20:12
82:18 96:24
**attached** 47:10
**attaching** 61:13

**attacking** 89:23
**attempted** 59:14
**attempting**
27:15
**attention** 82:19
82:22
**attorney** 1:4
4:13,14,17 5:4
61:10,12 63:23
**attorney's** 29:15
**attorney/client**
31:1,4 33:21
35:1 36:16
37:25 38:21
39:24 40:9,22
41:4 42:8,13
43:11 45:11
47:25 53:3
54:17,25 55:6
55:13 56:12,17
57:22,24 61:14
62:1 63:18
64:6 67:4
**attorneys** 2:4,6
3:1 4:1,11 5:1
6:1 47:22
49:13,15 53:18
60:16,18 62:7
64:11 74:23
100:12
**attributable**
13:7
**audio** 1:15,19
7:4 47:14 99:3
100:5
**AUSTIN** 5:10
**authorities** 7:10
**authorize** 91:23
**automatically**
80:1
**availability**
86:23
**available** 11:9
13:25 19:3
39:14 57:16
58:19 73:22
80:6,18 85:4

88:23 98:20
**Avenue** 3:6 6:11
**average** 11:2
12:3
**avoid** 49:13
51:17 52:9
68:8 73:5
**avoidably** 24:17
**avoided** 32:13
**aware** 9:14
66:20 79:12
98:5,17

---

**B**

**B** 3:16,20
**back** 20:3 47:13
51:14 58:13,22
66:9,15,21
88:24 93:18
**background**
30:2
**bagging** 82:20
**BAILEY** 4:17
**balance** 63:18
86:22 88:6
95:7
**balancing** 23:6
**Bandari** 41:16
41:18 53:23
**bandwidth**
82:12
**bar** 69:14
**Barnhart** 3:9
**base** 48:6,7
**based** 29:20
37:23 40:20
44:2,3,5 46:18
46:20 47:20
52:8 55:20
57:16 65:23
74:8 76:9
**bases** 30:2
**basically** 81:25
**basis** 13:5 23:5
30:20 32:20
35:2 36:15
38:12 43:14
51:22 84:21

**Basker** 40:19,19
Baustin@motl...
5:13
Bcolfax@nmd...
4:21
**beginning** 37:24
78:25
**behalf** 8:7,11
10:22
**behave** 88:14
**belabor** 89:10
**believe** 10:23
11:4 13:24
15:16 16:23
17:11,17 20:6
26:3 36:23
37:11 41:6
52:16 59:18
61:18
**bench** 27:24
**benefit** 23:6
**Berg** 3:20
**best** 40:8 41:3
92:20 100:8
**Beta** 46:15
**better** 46:4
78:24
**beyond** 36:13,14
75:14
**biased** 88:10
**Biedscheid** 2:2
**big** 38:4 42:9
**bit** 7:8 24:8
38:22 39:19
44:8 48:7
**blanket** 51:22
70:4
**block** 32:15
**blocking** 32:2
**Blvd** 5:19
**board** 85:10,19
**bogged** 96:20
**bolster** 14:13
**BOTTO** 5:18
**boundaries** 50:8
**bounds** 51:5
**branch** 98:2

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 3

**brand** 89:18
**breached** 59:16
**breaching** 71:3
**BRENDAN** 5:10
**bridge** 22:15
**Bridgeside** 5:19
**brief** 11:15
  17:23 21:12
  29:11 47:14
  57:14 58:14
  62:19 65:3
  89:9
**briefer** 52:14
**briefing** 24:23
  28:9 39:20
  53:14 56:24
  57:9 83:5
  89:13 90:15,17
  91:18 92:1,9
  92:25 94:6
**briefly** 62:2
  69:21
**briefs** 14:15 35:8
  45:4
**bring** 95:25
**broad** 18:18
  21:15 22:22
  32:21 47:18
  51:2 85:12
**brought** 11:20
  82:19,21
**Bryan** 2:2
**bulletproof**
  18:11
**bunch** 80:10
**burden** 14:16,17
  14:21 16:12,14
  17:20 18:17,20
  23:6 48:23
  50:5,12
**Burling** 2:12 8:7
**business** 16:8,23
  30:8,11,17,21
  31:5,13 39:22
  40:17,25 41:22
  42:22 43:13
  44:14,19 46:8

52:19 53:23
54:1 62:22
63:7
**business-related**
  41:20

---
## C

**C** 2:1,7,18 3:9
**CA** 1:25 2:15 3:7
  3:11 100:4,19
**cabin** 70:13 75:1
  75:6
**California** 6:12
  13:15 15:12
  38:7,24
**call** 58:13 79:1
**called** 49:14
  67:22
**calling** 46:23
  47:4
**calls** 7:5
**camera** 46:3
  47:8
**Camino** 3:10
**candid** 39:2
**Caption** 2:5 3:1
  4:1 5:1 6:1
**care** 55:2
**career** 79:12
**careful** 61:12
**carry** 50:5
**carrying** 48:23
**case** 2:5 3:1 4:1
  5:1 6:1 7:7
  11:11 15:6,7
  16:25 19:10
  22:22 24:24
  29:16 35:9,17
  36:3,13 40:13
  40:18 41:17
  49:3 54:3,11
  58:20 59:2
  62:3 66:19
  67:6 68:1 69:1
  69:3,15 79:11
  88:21 89:17
  91:9 95:20
**cases** 15:14 21:2

30:1 31:5,10
31:11 35:9,25
38:2,8 40:16
45:7,8,15
56:25
**Cassandra** 5:3
  7:21
**categories** 10:24
  11:10 21:19
  55:2 91:1
**category** 16:6
  43:20
**causation** 11:13
**causes** 11:14
**caution** 27:5
**CCR** 100:3,19
**center** 2:21
  56:10
**certain** 43:22,22
  82:11
**certainly** 15:11
  36:14 49:1
  51:14 76:22
  80:3 83:14
  91:23 93:21
  94:3,23 95:5
  96:4
**CERTIFICATE**
  100:1
**certify** 55:23
  100:4,9
**challenge** 19:16
  19:22 22:6,10
**challenged**
  19:20
**challenging**
  52:23
**chance** 68:24
  85:16 90:11,23
**Chandler** 11:6
  13:2,2,10 14:8
  14:12 18:6,14
**Chandler's**
  13:16,19 14:2
  17:25
**change** 14:2
  81:3,11

**changes** 15:9
**Chaput** 2:13
**characterized**
  90:21
**Charles** 2:20
**Charlie** 41:9
  54:21
**Charlton** 2:19
**Chatbots** 90:3
  91:18
**check** 96:9
**CHELSEA** 5:18
**Chief** 4:14
**children** 38:3
  49:17
**choice** 76:6
**Church** 6:6
**CID** 57:8,13
**CIDs** 57:8
**circle** 88:24
**Circuit** 59:2,7
  68:18
**circular** 44:8
**circumstances**
  42:20
**cite** 53:14 56:24
  59:2
**cites** 18:6 31:5
  66:20
**City** 2:21
**claim** 17:10
  32:21 33:5
  34:7 38:4
  46:15,22,22
  50:6 51:13,23
  58:5 67:13,16
  70:9
**claiming** 29:12
**claims** 30:22
  50:24 52:12
  72:18 74:3
  86:22,22
**clarified** 68:6,7
**clarifying** 79:3
**claw** 66:9,15,21
**clawed** 58:22
**clean** 84:22 95:6

**clear** 8:25 12:5
  13:19 31:16
  32:18 34:15
  40:13 41:23
  44:22 63:3
  71:17 72:20
  73:4 77:25
  80:2 91:12
**clearest** 23:15
  23:22
**clearly** 17:4
  30:15,17 33:1
  39:21,22 42:6
  42:22 46:7
  47:4 80:5,7
**clerk's** 8:23
**clients** 57:23,25
**clinically** 65:21
**close** 92:10
  94:17
**closed** 17:15
**closely** 19:1
**closest** 27:6
**CLR** 100:3,18
**Cmonroe@m...**
  5:24
**co-defendant**
  15:15
**co-defendants**
  20:8
**Code** 88:12
**COLFAX** 4:17
**collection** 32:9
**collectively**
  50:19
**come** 30:4 37:24
  44:10 88:15
  90:5
**comes** 67:5
  86:17
**coming** 38:23
  49:20 90:2
  92:21 93:13
  94:17
**commenced**
  93:1
**commit** 60:23

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 105 of 122

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 4

committed 34:8
common 65:22
  65:23 66:12,13
  67:23 68:3,8
  68:12,16 93:11
comms 41:14,14
  42:4,10 43:16
communication
  52:25 65:20
  87:23,24
communicatio...
  32:25 33:7
  40:24 52:18,22
  60:18 61:14
  62:22 64:6
company 19:1
  29:3 31:23
  36:9 39:16
  50:11 63:13
company's 57:1
comparative
  17:9
compare 12:4
compatible 96:1
compel 9:15,17
  10:19 15:17
  25:25 38:9,11
  48:2 66:14
competent 83:13
  83:16
competitive
  18:25
competitively
  18:25
competitor
  11:15 20:8,14
  23:23
competitors
  14:1 20:24
  23:9
complained 39:8
complaining
  85:21
complaint 49:3
  56:6 85:21
complaints 13:6
complete 17:16

39:20
completely
  35:10
compliance 32:9
  33:23
comply 33:18
  36:6
compound 60:22
  75:23
conceal 38:1
  45:12
conceitedly
  79:10
concern 78:17
  86:12 91:21
concerned 19:14
  21:5 26:20,23
  90:7
concerning
  10:24 11:5
concerns 15:4
  20:17,19,24
  77:8 88:6
conclude 43:14
conclusion 32:13
conclusions 57:5
conditions 78:9
conduct 13:5
  29:15 33:15
  34:21 36:8
  38:19 55:17
  57:2,8,17 61:6
  84:14 86:14
  87:10 88:2,13
conducted 43:23
  55:5,22 77:9
conducting
  56:16
conducts 53:25
confer 23:11
  80:4 87:1,9
  91:25 92:5,14
  93:3 94:5 98:6
conferral 80:11
  93:25 94:11
conferrals 97:6
conferring 90:4

confess 20:11
confidence 73:1
confidential
  10:5 15:7,7
  16:23 18:10
  26:4,16,18,25
  27:3,9 36:23
  40:24 56:19
  65:16 72:3
confidentiality
  15:5 19:5
  22:14 59:10,13
  82:18
confirm 21:25
  27:3 33:10
conflict 9:7
confuse 35:18
confusing 44:1
confusion 9:1
Congress 38:16
  39:5 41:8,8
  51:19 60:14
Congress's
  41:10
Congressional
  39:1
conjunction
  79:25
connect 43:8
connection 11:6
  28:9
consented 66:3
consenting
  66:24
consents 65:18
consider 15:11
  98:18
considerations
  44:12
considered 53:6
  53:8
considering
  94:22 97:12
consistent 82:14
  82:23 85:12
consolidated
  13:16

constitute 52:11
  52:22
constitutes
  25:23 66:22
constraints 8:18
consumers 49:6
  57:4
contact 55:4,19
  95:21
contacted 87:18
  87:20
contacting 61:11
  87:14
contain 26:4
contained 59:20
contend 48:9
  58:8,9 66:6
contending
  73:23
context 52:4
  66:17
continue 98:19
  98:23
Continued 2:25
  3:2,25 4:2,25
  5:2,25 6:2
contracted
  100:10
contradict 30:6
contradicted
  30:14 32:6
contrary 34:12
  36:3 67:1
contributory
  17:21
controls 49:11
convenience
  24:3 78:3
conventional
  33:10 36:6,10
conversation
  70:13,18,23,25
conversations
  70:2 75:16,20
coordinate
  35:22 76:21
  78:3

coordinated
  74:23
coordinating
  76:16 77:15
coordination
  76:24
core 49:2
corners 97:9
corporate 61:11
Corporation
  50:10
correct 27:8
  32:2 48:6
  73:18 76:14
  96:25 100:7
correctly 20:15
  73:11
counsel 4:15,16
  21:21,24 24:16
  35:12,18,19
  37:21,25 38:15
  41:19 45:12
  55:7,15,19,20
  55:24 61:25
  62:13 63:5
  64:7 65:1 71:5
  76:14 80:23
  81:12 85:10
  94:5 95:19
counsel's 38:10
countervailing
  85:21
counting 29:25
COUNTY 1:1
couple 42:24
Courier 5:3 7:21
course 16:8
  20:25 89:20
  92:19
court 1:1 2:2 7:5
  7:5 8:1,12 9:6
  9:11 10:9,16
  15:18,19,24
  19:25 20:1,11
  20:14 21:8,11
  22:16,19 23:5
  23:7 24:12,22

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 106 of 122

11/21/2025     State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 5

25:5,10,17,19
25:20,21 26:7
26:8,19 27:7
27:14 28:11
34:8,14 35:15
35:17 36:17,19
37:11,15,20
41:17 47:7,15
47:18,21 49:1
50:10 51:1,15
52:3,9 53:2,6
53:12 56:22
57:18 60:2,4,8
60:17 62:21
63:2 64:3,23
65:25 67:6
68:6,14 71:11
72:3,10,20
73:4,7,10,16
73:18 74:7,14
75:3 76:4
78:18 79:8,18
81:22 82:3,6,9
82:17 84:18,19
85:8 86:11
87:25 88:4
89:4,8 90:15
90:18 91:14
92:24 93:12,22
93:24 94:8,9
95:5,10,11,13
95:17 96:17
97:1,7,15,20
97:20,22 98:2
98:9,15,17,21
99:1
**Court's** 76:6
82:19,22 85:23
88:17 97:8
**courtroom**
96:10
**courts** 57:1 67:1
68:7,11 69:15
**covers** 23:15
**Covington** 2:12
8:7
**CP** 55:23

**create** 10:7 12:7
15:2 22:25
76:13
**created** 35:11
**creating** 77:5,16
**crime** 30:7 32:25
33:4,6,12
**crime/fraud**
31:23 32:22,24
34:1,5 35:7
38:12,19,20
43:9,10 44:25
45:2,3,16,19
45:22 46:5
54:8 57:5
62:22
**critical** 96:25
**cross** 22:15
**Csolomon@m...**
5:21
**CSR** 1:25,25
100:4,19
**CT** 6:7
**culture** 39:16
**current** 18:12
**currently** 83:6
**cut** 80:2
**CYNTHIA** 5:15

———————
**D**
**D** 2:13 3:20
**D-101-CV-202...**
1:5 7:7
**Dackerman@...**
5:12
**Dai** 9:16 25:12
26:1 30:23
33:9 34:10,16
39:12 40:4,7
41:1 42:14
43:17 44:21
46:2,13 47:21
62:9 64:7,9
65:6
**Dai's** 40:10
41:12 62:24
**daily** 11:2 12:3

18:24
**damage** 59:15
**damaging** 28:14
85:15
**Daniel** 3:17,18
**data** 9:18 11:1,3
11:12,22 12:2
12:4,5,5,18
13:11,13,14,24
13:25 14:11
15:14 17:5
18:3 19:15,23
20:20 22:7,8
23:9,22 32:9
32:19 33:22
34:9,11 36:7
49:16
**Date** 1:16,19
**dated** 56:15
**DAU** 17:5
**Dave** 96:18
**David** 2:18 5:8
7:18 10:21
**day** 1:17,20
93:14 95:11
**daylight** 45:8
56:9
**DC** 2:22 3:23
5:11 38:6,24
**Ddorris@kell...**
4:5
**De** 59:1,11
**deadline** 89:21
89:22
**deal** 10:6 74:19
85:25 86:16
88:15
**dealing** 71:18
97:8
**deals** 14:14
74:11
**DeBoy** 2:20
**December** 82:5
83:19 84:5
92:3 95:15
96:4
**deceptive** 54:13

**decide** 23:24
46:3 83:12
**decision** 74:8
81:5
**decisions** 33:16
34:18 86:5
**declaration**
40:10 41:2
43:6 44:1
59:21
**declarations**
28:8 29:9 30:5
30:15,18 31:17
32:7 33:9 34:2
34:5,12,15
36:4,4 40:3
44:21 47:21
50:18 51:19
54:6 57:11
**deem** 59:7
**deemed** 67:4
**deeply** 19:20
**defend** 11:23
**Defendant(s)**
1:11
**defendants** 2:6
13:13 35:17
48:9
**defense** 12:22
17:14,20 18:14
**defenses** 11:16
11:16,24 12:20
12:22 17:7
21:21,23 22:1
**defined** 42:3
**definitely** 20:18
**defraud** 35:19
**delay** 90:11
**delete** 33:21
34:11 38:2
49:16
**deleting** 34:8
**deliberately**
56:11
**deliver** 55:18
**delivering** 15:22
**delving** 26:10

**demands** 95:7
**demonstrate**
47:3
**demonstrated**
19:2 49:16
54:6
**denied** 48:2
**denoted** 41:9
**deny** 43:5
**department** 4:18
5:4 7:22 84:10
87:19 95:22
**departments**
95:24
**departure** 29:21
**depose** 28:20
31:15 58:16
63:4
**deposed** 47:25
58:21
**deposition** 9:20
25:12 31:12
37:20 40:3
41:5 42:23
46:7 47:22
48:11 49:22
50:1,4 51:4,9
51:12 52:2,10
60:25 61:24
62:4,9,11,25
64:1,20,22
69:10 70:24
71:7 72:1,15
73:6,13,17,25
74:2,5,8,22,24
75:13 76:8,9
77:20 78:1,2,6
78:12,14,15,22
79:5,9,15 80:9
80:14,21,23
81:7,19 82:2,3
82:16 87:5,7
87:22 88:20
94:18
**depositions** 9:16
11:18 25:25
39:11 44:23

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 107 of 122

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 6

76:16 91:6
**deprived** 87:16
**Deputy** 4:14
**describe** 57:9
**describes** 56:2
57:10
**description**
21:17
**descriptions**
18:1
**designated** 10:4
26:24 27:2
42:19
**designations**
15:8 35:5 38:1
**designed** 59:6
**designs** 33:13
**desired** 91:22
**destroy** 40:23
81:25
**destruction**
32:19
**detail** 56:3
**detailed** 18:23
50:17
**details** 24:13
55:9,17
**determination**
55:4
**determinations**
73:5,8
**determined** 52:5
**determines** 52:7
**Diego** 3:21
**difference** 63:16
81:3
**differences**
13:22
**different** 20:7
22:14 31:9
35:10 63:22
67:23 81:6,11
84:15 95:7
**differs** 65:21
**direct** 32:18
46:24 47:1
50:9 51:12

52:10 67:2
68:6 69:18
**directed** 42:16
49:13,16 78:4
**directing** 86:9
**direction** 50:2
55:24
**directly** 30:6,14
32:6 61:5
65:10 67:7,15
**disagree** 21:17
76:5 90:20
**disciplinary**
85:10,19
**disclose** 49:5
54:14 62:13
64:18 75:17
**disclosed** 54:7
54:22 58:11
66:2,8 69:1,5
73:22 75:12,22
81:21 84:24
89:21 91:1
94:18
**discloses** 65:18
**disclosing** 60:19
61:22 66:23
71:4
**disclosure** 26:15
26:24 28:15
54:18 59:3
65:16,18 66:4
66:24 67:10,12
67:24 68:20,22
**disclosures**
59:22 79:10
85:2
**discoverable**
12:25 34:25
**discovery** 17:15
17:16 22:21,22
29:6,22 47:19
74:12 77:1
84:16 85:12
86:3,24 90:3
90:12 91:3,8
**discuss** 95:10

**discussed** 87:4
97:4
**discussing** 19:18
40:2
**discussion** 10:4
26:4 70:8
**disgruntled**
60:11 66:14
**disposed** 62:21
**disposition**
100:13
**disprove** 34:6
**dispute** 9:19
32:18,23 48:4
71:15,18
**disputes** 94:7
**disregard** 64:17
**disrespect** 37:4
**disseminate**
35:14
**disseminated**
41:2 42:15
**dissemination**
40:23
**distinction** 63:4
63:8 64:9,15
69:3 74:14
81:2
**distributed**
13:23
**District** 1:1
29:17
**division** 78:5
97:17
**Dmigliori@m...**
5:23
**Dnegron-reic...**
4:9
**docket** 58:12
**document** 12:13
41:9,11,22,24
51:3 54:20
55:11,25 66:21
70:8,8,14,14
70:20,20
**documents** 9:19
10:25 11:4,10

14:18,24 15:3
16:7,11 17:10
18:1,16 20:10
21:3,19 22:25
23:3,15 24:1
26:18 27:2
32:17 35:6
38:9,12,17
41:10 45:11,25
46:3 47:16
48:21 50:13,19
51:20 54:7,20
54:22 55:9
56:14 58:10,18
58:23 59:20
60:13 66:8,15
67:17 69:1,5,8
70:10,19 73:22
74:1,4 75:11
75:14 76:2
79:2 80:4
84:25 85:4
88:23
**doing** 32:4 61:4
75:17 77:17
86:12 91:24
95:15
**Dolan** 2:21
**domain** 19:3
**DONALD** 5:17
**doors** 27:6
**Dorris** 3:17
**doubt** 23:17
94:12
**downloaded**
14:23
**dozens** 58:22
**Dr** 11:6 13:2,2
13:10,16,19
14:2,8,12 39:9
39:14 49:9
50:7,17,21
51:11,18,24
52:4 54:5,16
57:9 58:8,16
58:20 59:19,25
60:11,20 61:22

62:12,15 63:20
63:23 64:1,6
64:10,12,16,22
65:4 66:4,9
67:16 69:6
70:5,16 71:3
71:25 73:6,14
73:15 75:7,10
75:21 79:2,6
79:23 81:7,20
94:15
**draft** 32:12
**drafting** 24:15
**dramatic** 29:21
**drawing** 79:21
**drawn** 79:21
**drew** 80:6
**drugs** 89:18
**Dseverson@k...**
4:6
**Dsneed@cov.c...**
2:24
**DUNKIRK** 5:9
**dwell** 52:21

--- E ---

**E** 2:1,1,13,14
**earlier** 26:3
83:20
**earliest** 24:2
**early** 58:19
**easier** 28:3
**edit** 53:9
**edited** 49:15
**effect** 74:6
**effective** 49:12
91:7
**efficiencies** 77:4
**efficiency** 76:18
**effort** 19:14
58:12 88:10
94:7
**efforts** 35:23
59:5
**either** 16:6 30:7
66:2,12,22
78:9,16 98:13
**El** 3:10

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 108 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 7

**Elaine** 9:16 26:1
**elements** 67:21
**eliciting** 60:24
**employed** 45:12
  100:10
**employee** 60:12
  61:11,21 63:24
  66:14 87:14,18
  87:19
**employees** 30:25
  31:8
**employer** 61:13
**employer's** 61:4
**enacted** 42:15
**encourage** 80:3
  80:8 92:11
  96:1
**endeavor** 24:10
  28:12
**endeavored** 83:7
**engage** 13:5
  55:15 68:10
**engaged** 33:11
  49:18 54:13
  68:11
**ensure** 32:9
  33:22 49:4
  57:22
**enter** 87:5
**entered** 24:10
**entering** 23:13
**entertain** 19:8
**entirely** 78:22
  81:23 89:17
**entities** 11:14
  47:24 63:7
**entitled** 12:21
  16:16 29:5
  30:12 31:14
  39:24 42:14
**entity** 35:20
**Esq** 6:15
**essential** 24:25
**essentially** 69:11
  73:12 74:5
  82:15
**establish** 35:6

  36:5 51:7
**estimate** 13:7
**estimated** 13:22
**et** 7:6
**evaluate** 52:3
**event** 34:20 35:5
  46:6 71:20
**everybody** 88:12
**evidence** 12:19
  12:21 17:19
  18:13 22:2,3,4
  33:6 34:4,9
  35:4 36:2
  46:22 49:18,20
  54:2,16 57:11
  57:16 61:7
  65:12 66:1
  69:19 86:20
**EX** 1:3
**exactly** 39:6
  45:14,20 46:20
  50:21 51:17
  61:15 83:24
**example** 49:10
  69:16 91:4
**examples** 44:20
  90:25
**excepted** 100:11
**exception** 31:20
  31:23 32:22,24
  35:7 38:13,20
  43:9,11 44:25
  45:2,16,19,22
  46:5 54:9 57:6
**excitedly** 91:17
**exclude** 52:7
**excuse** 40:3
  60:20
**excused** 25:8
**exhibits** 46:16
  72:1
**exist** 58:5
**existence** 31:3
**existing** 14:10
  14:22 23:2,12
**exists** 81:6
**expect** 62:12

  91:15
**expedited** 89:13
  90:17 91:24
  92:7
**expedition** 16:17
  21:18,20
**expense** 76:18
  76:24
**experience** 45:6
**expert** 11:7 17:1
  17:16 18:5
  19:17
**experts** 11:6
  17:11 89:21
  90:12 91:10
**expires** 100:19
**explain** 32:8
  62:2 66:16
  89:11
**explained** 18:3
  18:21 19:17
  39:15 44:15
**explains** 39:5
**explanation**
  17:12 29:14
**explore** 69:9
  73:20 75:14
**explored** 91:8
**exposed** 38:16
**exposure** 20:24
**express** 72:8
**expressly** 23:14
  54:9 61:9
**extent** 15:4 22:8
  22:12,16 51:23
  81:19 93:20
  94:1,20
**extra** 55:2
**extraordinary**
  28:19
**extremely** 24:3
  24:25 95:23

—————————
     **F**
—————————
**F** 2:19
**facie** 29:13
**facilitate** 76:13
**fact** 12:15,24

  17:15 19:2,9
  19:10 20:20
  31:2 42:1
  46:17,19 51:18
  53:17 61:4
  80:13 87:15
  92:20
**facts** 28:6 37:23
  53:3,4
**factual** 30:20
  31:25 32:5,20
  33:25 35:2
  53:2 56:19
**fail** 49:22 52:17
**failed** 49:4,5
  52:17 54:2
  58:24
**failing** 54:14
  59:16 66:9,21
**fails** 59:8
**failure** 34:25
  57:1,3
**fair** 39:18 41:5
  42:23 43:19
  70:16 78:5
  86:3
**fairly** 10:23
  61:18
**faith** 87:2 91:25
  92:5,14
**fall** 54:8 57:5
**false** 32:1,16
  35:1 46:14
  89:17,24
**far** 43:1,8,15
  44:5 94:25
**fatal** 48:22
**fault** 17:9 85:24
**favor** 23:6 63:18
**Faye** 6:11 8:10
  16:2
**Faye.teller@...**
  6:13
**Fe** 1:1 2:9 4:19
  6:16 50:9
**feasible** 77:11
**February** 93:21

**federal** 65:22,22
**feel** 77:12 84:12
**FIGEL** 3:14
**figure** 26:12
  27:21 76:8
**file** 7:4 91:23
  99:3
**filed** 17:18 28:8
  58:11 71:16
  89:22
**files** 14:22 15:2
**filing** 90:9 92:15
  93:8
**filings** 22:24
  47:20
**final** 34:17 46:24
  58:1 100:13
**Finally** 22:5
**financial** 13:4
**find** 45:7,7 92:25
  98:4
**finding** 45:1
  63:17
**findings** 32:12
  32:19 55:18
**finds** 23:5 47:22
  66:11
**fine** 96:1 97:16
**first** 1:1 8:13
  9:25 10:19,25
  17:3 30:10
  32:9 37:8,13
  44:7 48:13
  49:23 52:13
  57:7 62:20
  65:12 69:22
  80:6 93:6
**fishing** 16:17
  21:18,20
**five** 47:3
**flagrantly** 60:21
**flawed** 14:5
  19:20
**flight** 74:18
**flip** 36:24
**floating** 9:21
**Floor** 3:10 6:4,6

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 109 of 122

11/21/2025     State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 8

6:12
**Florida** 29:17
**flow** 53:16
**focus** 54:19 65:2
  65:7
**focused** 11:19
  24:6 74:12
  88:16
**focusing** 36:22
**folks** 8:21 95:25
  97:14
**follow** 62:12,16
  86:16
**follow-up** 21:11
**following** 7:3
  45:24 85:23
  86:12 97:22
**follows** 14:4
**forced** 77:13
**foregoing** 100:6
**formal** 56:15
  61:8
**former** 60:11
  61:3,11,13
  66:14 77:3
  87:14,18
**Forster** 5:9 7:20
  26:25 27:4
  28:2 37:2,6,14
  37:16 52:20
  54:21
**Forster's** 56:8
**forth** 21:22 22:2
  65:13 68:15
  100:6
**forum** 19:15
  26:11 77:10
**forward** 17:19
  18:15 46:7
  51:10 73:13,25
  78:10,20 79:5
  80:19 88:20
  98:23
**found** 35:16,17
  57:1 68:3
**four** 36:19 47:3
  49:23

**fourth** 58:1
**Francisco** 2:15
**frankly** 12:14
  83:2
**fraud** 30:7 33:1
  33:4,7,8 34:6,8
  34:13,22 36:1
  36:1,12 49:19
  57:18
**FREDERICK**
  3:15
**free** 59:23 68:17
**freely** 57:23
**frequent** 24:5
**frequently** 21:14
**front** 22:10
  51:15 95:18
  96:24
**frustrated** 92:25
**FTR** 97:3
**full** 52:8 64:1
  66:4 86:2
**fumbled** 47:16
**further** 33:4
  51:18,21 52:11
  60:23 69:9
  71:4,9 75:18
  100:9
**furtherance**
  32:25 33:7

-----
**G**
**G** 3:18
**gag** 51:22
**Galisteo** 4:18
**Gallegos** 1:24
  100:3,18
**game** 39:18 41:5
  42:23 43:19
  70:16
**gather** 22:3
**gathered** 44:6
  44:18
**general** 1:4 4:13
  4:14,17 5:4
  48:5 67:14
**generally** 67:2
  69:16,18

**generis** 56:22
**gestured** 17:6
**getting** 21:3
**give** 47:8,12
  90:11
**given** 28:4 30:3
  31:2,22 56:1
  77:23 90:6
  92:10
**gives** 64:9
**giving** 30:21
  32:8 37:2 73:4
**go** 16:17 23:16
  23:24 25:8,24
  28:10 43:2
  44:13 46:7
  47:8 55:13
  56:1 62:6
  70:20 73:13,25
  78:10,20 79:5
  80:15,16,19
  81:22 82:13
  85:22 88:20
  97:13,15
**goal** 54:1 77:18
  93:22 94:3
**goes** 36:12 39:5
  42:7 43:9,15
  55:11
**going** 24:15
  26:15 40:5
  44:17 46:25
  47:8 51:10,14
  62:17 71:6
  73:19 74:22
  75:1,6,24,25
  76:7 77:2 80:1
  80:5,7,8,16,18
  81:13,17 82:20
  86:1 88:19
  89:10 91:18
  92:10 93:7,8
  93:14,15,17
  94:7,16 97:2
  97:19
**Gold** 50:10
**good** 8:2,8 15:21

15:25 28:10
  37:14 45:5
  48:15 74:18
  76:12 77:7
  79:1 87:2
  91:25 92:5,14
  97:11 98:16,25
**Google** 25:7
**Gosanko** 3:21
**governing** 36:7
**Grand** 6:11
**granted** 15:17
**granting** 23:7
**Grayson** 4:14
  7:20 82:7 84:7
  84:8,9 86:7
  87:8 89:3
**great** 27:24 92:1
  94:21
**GREENE** 6:3
**grounds** 61:25
**group** 31:3,8
**GRUETZMA...**
  5:17
**Guadalupe** 2:8
  6:15
**guardrails** 73:1
**guess** 8:18 20:2
  24:2 48:3
  72:11 73:19
  74:8 77:2
  82:13 96:24
**guessing** 83:11
**guidance** 54:24
  56:15 57:23
**guided** 25:18
  56:23
**guise** 35:1
**guns** 89:18
**Gutter** 29:16

-----
**H**
**Hac** 2:13,13,14
  2:18,18,19,19
  2:20,20,21 3:6
  3:9,9,15,16,16
  3:17,17,18,18
  3:19,19,20,20

3:21,21,22 5:8
  5:8,9,10,15,15
  5:16,16,17,17
  5:18,18 6:3,6
**Hall** 3:22 8:5
**hands** 34:19
**Hansen** 3:14 8:6
**happen** 21:5
  71:1,1
**happened** 34:14
  45:9,14 56:10
  70:2 87:15
**happy** 48:24
  70:18 85:11
  87:8 96:11
**hard** 45:7 50:15
  75:1,6,24,25
  97:21
**harm** 49:17 53:7
  60:22
**harms** 38:2
**Hart** 2:7 6:14
  8:4,9
**Hartford** 6:7
**Hartman** 67:22
  68:5,19,20,25
  69:3
**health** 35:15
  45:18 55:22
**hear** 45:5 48:13
  71:18 80:24
**heard** 21:1
  47:11
**hearing** 50:3
  77:15 78:1
  92:9 96:8
  97:15
**hearings** 79:19
  83:8 95:9
  98:20
**heavily** 16:12
  19:6
**heels** 94:17
**held** 59:2
**help** 17:10 20:16
  49:20 93:25
  96:19

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 110 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.          Audio Transcription

Page 9

**helpful** 9:14,22
12:1 24:3,25
95:16,23 97:10
98:16
**helping** 76:12
93:12
**hesitant** 45:21
**Hester** 2:18 8:6
25:13,13 26:9
26:13 27:8,11
27:17 28:17,18
37:3 38:5 40:6
40:15 46:10,21
**Hewlett-Pack...**
53:13
**hey** 86:12 93:5
98:2
**hidden** 39:4,6,7
**hide** 38:1 57:25
**hiding** 45:17
**high** 69:14
**highly** 15:7
18:25
**Hilary** 3:22
**hiring** 97:1
**history** 36:21
**hoc** 68:11
**hold** 10:17 69:16
78:22
**holder** 59:5,8,11
59:14 67:11,25
68:21 69:19
**holding** 66:20
**holds** 50:11
**holiday** 92:21
93:6 98:25
**holidays** 93:5,7
**Holland** 2:7 6:14
8:4,9
**honest** 35:21
**honestly** 45:3
**honor** 7:17 8:3,8
9:4,9,23 10:11
10:14,20,23
14:16 15:16,21
15:25 19:24
20:6,25 21:10

21:13,14 24:11
24:19,21 25:4
25:9,13 26:2
26:14,22 27:4
27:11 28:2,18
37:7 39:2 40:2
44:25 45:4,6
45:21,23 46:3
46:25 47:1,6
48:15 50:2,9
51:9 52:7,14
54:11 55:12
56:20 58:3
60:7 63:21
64:16 69:22
72:7,24 74:21
75:5 77:23,25
78:4,8 81:16
82:5,7 84:8,14
86:7,9 87:8
89:3,6 92:17
92:19,21,22
94:2 95:3 97:5
98:7,12,14,24
**Honor's** 28:4
**hope** 52:14
87:11 93:2
**hopeful** 90:5
**hopefully** 8:22
86:25 87:2
88:5
**Horvitz** 3:20
**hostage** 10:18
**Huff** 3:16 8:5
89:6,8,9 90:21
91:20 92:17
97:4 98:7,13
98:24
**Hweaver@kel...**
4:10

**I**

**i.e** 44:4
**Ichaput@cov....**
2:16
**idea** 79:1
**identical** 81:1
**identified** 44:5

49:24 59:23
91:21
**identify** 50:23
**ignore** 86:19
**ignores** 73:15
**ignoring** 16:21
86:19,20
**imagine** 67:20
97:21
**immediately**
82:19,21
**impending**
10:13
**imperfectly**
79:20
**implement**
64:23
**implementation**
40:23
**implemented**
40:20 42:16
65:24
**implicates** 42:5
**implying** 32:13
**important** 56:5
69:2 74:13
**importantly**
57:10 97:20
**imprecise** 33:19
**impressions**
29:25
**improper** 28:15
68:21
**improperly**
42:19 66:8
**improve** 18:10
53:25
**in-house** 28:20
36:10 37:21,25
38:10,15 41:19
45:12
**inadmissible**
68:23
**inappropriate**
47:24 74:9
**inappropriately**
85:15

**inartful** 72:10
**inartfully** 72:8
**incentives** 13:4
**inclined** 76:10
**include** 18:8
55:3
**includes** 11:2
**including** 7:22
11:14,19 13:4
13:12,25 53:17
**inconsistent**
51:6 68:9
**incorporated**
23:10,21
**increase** 33:20
**independent**
35:13,22
**indicated** 70:12
**indicates** 53:15
55:1
**induce** 60:23
61:3,12
**industry** 20:15
35:11
**inform** 46:4
**information** 2:2
10:4 12:9,25
14:6 16:13,23
16:25 17:4
18:8,10,23
19:1,2,4 21:22
26:5,11,16,24
27:10 39:13,20
39:21 42:17
44:6,17 47:2
47:11 48:1
49:6,9,24,25
50:24 51:24
52:6,7 53:2
54:5,15,15
56:12 57:25
59:24 62:14
64:5,18,24
73:9 75:2 85:5
87:21
**initial** 50:5 59:3
**input** 14:3 25:22

31:6 40:17
79:25 82:10
**insert** 32:16
**inserted** 46:14
46:17
**inserting** 32:1
**inside** 43:2,9,15
**Instagram** 1:8
13:20
**instance** 53:15
**instigate** 9:7
**instigates** 9:10
**instruct** 33:12
33:21 55:15
62:7
**instructed** 34:11
43:21 73:7
**instruction**
73:15
**instructions**
43:1 61:24
62:13,16
**integrity** 54:23
55:7,22
**intend** 27:1
**intended** 37:5
44:6
**intends** 92:22
**interest** 16:22
19:21 78:9
93:11 100:13
**interested** 72:22
95:20
**internal** 17:10
18:15 55:25
56:15
**internally** 43:2
43:15
**interpreted** 70:3
**interrogatory**
89:16
**investigated**
53:9
**involuntary** 59:3
**involve** 10:3
**involved** 20:15
21:1 41:20

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 111 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 10

53:18 83:9
84:2 95:20
**involvement**
38:10 53:22
**involves** 53:1
56:6
**involving** 31:5
55:1
**irrelevant** 12:10
12:18
**irretrievably**
59:16
**Isaac** 2:13
**issue** 7:14 10:12
10:13 14:15
22:14,21 40:18
41:18 45:17
50:13 52:19
62:19 64:8
66:3 69:21
75:5 82:8
84:11,16 87:9
87:13 89:11
90:16 94:6
95:4 98:1
**issued** 14:9 57:7
57:12
**issues** 9:8,13,20
9:21,24 24:24
38:25 42:12
46:8 50:4 52:5
74:12,20 77:22
83:19 84:15
88:15 91:13
93:15 94:14
95:12
**issuing** 66:15
**IV** 6:3

**_J_**

**J** 2:20 3:16 4:16
6:6,15
**James** 4:14 7:20
82:8 84:9
**January** 83:22
92:4
**Jara** 59:1,11
**Jberg@kellog...**

4:8
**Jbotto@motle...**
5:23
**Jcanderson@....**
2:10
**JCCP** 38:7
**Jdeboy@cov.c...**
3:4
**Jenna** 5:9 7:20
**JESSICA** 5:18
**Jforster@mot...**
5:14
**Jgrayson@nm...**
4:20
**job** 87:23
**Joe** 96:18
**John** 2:7,20 8:4
**Johnson** 53:12
**jointly** 55:15
**judge** 2:2 22:11
77:15 83:13,17
85:20 91:16
92:25 93:8
97:25
**judge's** 86:13
**judgment** 17:17
89:22,23,25
90:13
**judicial** 1:1
68:11 85:9
88:13 98:2
**jump** 83:7 91:17
**jumping** 84:11
**jurisdictions**
13:12
**jury** 8:15,21
36:20 83:6,9
83:11 84:6
94:18
**justice** 4:18 5:4
7:22 57:20
84:10 87:19
**Justin** 3:20

**_K_**

**K** 5:16
**Kate** 2:14
**keep** 49:20

56:12 93:13,20
93:25 94:13
95:6 98:15,23
**keeping** 49:12
**Kellogg** 3:14 8:6
**Kennedy** 2:19
**Kevin** 3:16,16
3:20 8:5
**key** 54:3
**Khorvitz@kel...**
4:8
**Khuff@kellog...**
4:4
**kicked** 25:7
**kids** 49:12
**kind** 39:17 68:16
**kinds** 95:12
**Kmiller@kell...**
4:4
**knew** 49:10
**know** 8:14 9:7,8
9:11 10:5 12:1
21:6 23:10
24:13 26:6
30:2 36:24
37:1 39:2,3,3
45:4 46:11
48:21 52:19
62:18 63:5,14
69:24 72:13
74:6,23 75:8
75:15,24 76:1
76:3 77:7,11
77:12 78:21,23
78:24 79:1,5
79:16,25 80:11
80:13,16 81:18
81:18,23,25
83:3,24 84:3
85:22 92:21
93:5,13 94:16
94:16,19 95:14
97:7,10,13,14
98:16
**knowing** 8:18,19
24:12 51:5
**knowingly** 49:5

61:3 71:6
**knowledge** 76:7
**known** 51:20,25
56:13 91:8
**knows** 53:2
54:12 58:23
62:17 94:24
**Kpatchen@co...**
2:17
**Kristin** 9:16
25:25

**_L_**

**L** 6:3
**La** 59:1,11
**label** 42:7
**labeled** 48:3
**labs** 39:13 54:23
**lack** 16:12
**lacking** 14:6
**laid** 46:16 54:6
58:4
**LANCE** 5:15
**language** 33:19
68:9
**large** 54:11
**largely** 48:12
**Larry** 6:15 8:9
**late** 7:9
**LAUREN** 5:3
**law** 36:13,15
40:13 51:6
65:22,22,23
66:12,19 67:23
68:3,8,12,16
**laws** 32:10 33:23
**lawsuit** 19:10,13
**lawyer** 31:12
54:5 61:6
**lawyers** 28:21
29:2,10 30:4,6
30:10,19 31:6
31:8,15,17,22
31:25 32:7
34:2 36:5,11
40:17 49:20
53:1,4,21 56:6
57:22,25

**lay** 50:15 55:12
57:14
**Lbarnhart@c...**
3:12
**leads** 85:14
**learning** 81:13
**leave** 23:11 47:5
79:7
**led** 86:4
**left** 24:14
**legal** 28:21 29:2
30:1,16,24
31:2,7,12,15
31:18,22 32:13
33:3,11,18
39:23 40:21,25
41:14,15,19,20
41:21,24 42:4
42:10,11 43:13
43:16 44:15,18
46:23 47:4,23
52:19,22 53:11
53:22 54:1
55:3,6,19,20
60:15 61:20,22
63:5 64:10,10
64:25 70:21,22
79:25
**legally** 64:12
66:13
**LeMaster** 68:7
**lenient** 83:15
**Leslie** 3:17
**let's** 9:12,13
10:18 25:6
47:7 85:22
96:23
**letter** 59:12,14
**letting** 93:5
98:16
**level** 38:19 51:11
**liability** 11:13
11:25 17:22
**License** 100:19
**light** 37:24 41:16
49:21
**lightly** 57:15

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 112 of 122

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.      Audio Transcription

Page 11

**limit** 20:9 59:25
**limited** 55:9
    85:4
**limiting** 88:22
**limits** 64:24
    70:10,11,22
    79:3,17
**Linda** 5:8 7:19
    48:16
**Lindsey** 3:9
**line** 21:6 47:1
    56:1 75:25
    76:1,7,9 80:6
    84:22
**lines** 79:21
**link** 10:7 27:19
    27:20,24 28:5
    28:16
**literature** 13:9
**litigation** 4:15
    4:16 11:9,21
    12:8 14:20
    16:14 23:18
    32:11 33:20
    35:10,11 36:20
    38:6 56:13,23
    57:17,19 58:11
    58:18,23 76:25
    77:17 81:15
    91:16
**litigations** 11:8
    14:7
**little** 7:8 16:10
    38:22 39:19
    44:1 48:7
**live** 23:18
**LLC** 1:8,10 5:7
**LLP** 2:7,12
**Lmontano@h...**
    6:17
**log** 46:1 97:6
**logistics** 95:10
**Loliver@motl...**
    5:20
**long** 16:18 60:1
**look** 18:5 41:16
    46:9 92:4

**looking** 83:18
    92:9
**Los** 3:7 6:12
**lot** 58:2
**love** 94:9,10
**Lperry@nmd...**
    5:6
**Lpope@kellog...**
    4:5
**Lsinger@motl...**
    5:12
**Lyons** 67:5
    69:15

_____

**M**

**M** 2:8 3:15,22,23
**Madeleine** 2:21
**Madrid** 96:18
**making** 26:14
    32:21 55:4
    58:19 72:22
    73:8 81:4
    93:19
**managed** 36:24
**manner** 25:21
**March** 56:15
**Maria** 1:24
    100:3,18
**mark** 4:15 7:21
    14:9 53:23
**market** 9:19
    11:5 12:2 13:4
**masters** 23:17
**material** 13:1
    29:6 34:25
    44:20 66:3,23
    66:24 67:18,25
    71:5
**materials** 29:23
    60:19 66:4
    67:3 69:9 71:7
    75:19 79:6
    81:21,24
**matter** 7:10,13
    9:2 15:1 20:5
    22:20 23:4,21
    24:13 52:3
    56:19 59:10

64:12 65:17,19
    67:10 69:7,16
    76:17 83:8,19
    88:20 89:13
    92:13 93:21
    94:24 96:8
    98:10 99:2
    100:12,14
**matters** 9:12
    10:3 44:15
    61:1 62:6
    80:15,16,22
    83:4 87:15
    97:9
**MAX** 5:17
**MDL** 11:2,7
    12:6,14 13:12
    13:15,22 15:12
    19:4,19 20:2,7
    20:8 23:8,14
    23:20,23 74:23
    76:11,17 80:24
    81:2,6,12
**Mdolan@cov....**
    3:5
**mean** 22:7 74:10
    78:19 81:10,12
    93:10
**means** 25:7
    51:14 59:9
    92:8
**mechanics** 88:19
**mechanism**
    71:25 86:1,25
**mechanisms**
    87:3
**media** 13:3
**meet** 25:7 37:9
    94:5
**meeting** 90:4
    95:9
**Megan** 3:9
**mental** 82:12
**mention** 29:24
    46:25
**mentioned** 21:14
    46:11 54:21

**mentions** 53:1
**merely** 14:3 31:6
**merit** 80:12
**mesh** 39:17
**mess** 90:2
**Meta** 1:8,8,9 7:6
    8:7 10:5,11
    11:12,17 12:10
    12:11,13,15,19
    13:5 15:14
    16:25 17:18
    21:22,24,25
    25:14 26:6,14
    26:25 28:21
    33:24 34:7,20
    37:20,24 38:9
    39:15 42:16
    43:2,9,14,15
    44:5,15,16
    48:21 49:4,5
    49:10,18,23,25
    50:15,17,19,23
    50:24 51:7,10
    51:12 52:17,25
    53:21,25 54:2
    54:13,16 55:14
    55:19,20,25
    56:14 57:8
    58:4,9,12,14
    58:22 59:22
    60:12,13,23
    61:8,21 63:4
    63:24 66:2,7
    66:13 67:19
    69:7 72:4
    73:23 74:9,25
    78:7 79:16
    85:16 87:9,14
    87:16,17,17,20
    87:23,24 88:1
    88:7 89:19
    91:2,4,8,10
    98:13
**Meta's** 12:5
    13:11,25 18:3
    21:21 26:18,21
    29:19 38:15

40:4 43:6 46:1
    46:19 49:21
    50:5 52:10,16
    58:6,9,10
    60:15,18,21,24
    61:24 62:13
    64:25 71:3,5
    72:15 74:2
    94:4
**method's** 17:6
**methodology**
    55:16
**methods** 61:7
**Mexico** 1:2,3
    4:13,18 5:4
    6:16 7:6,19,22
    10:25 11:12
    13:20 29:5,22
    36:15 40:14
    41:17 47:19
    48:16 49:6
    50:10 51:6
    54:10 61:5
    65:9,12,24
    66:12,19,25
    67:7,8 68:5,14
    74:25 76:25
    77:1,6,16 78:2
    78:11,14 80:20
    80:23 81:5,8
    84:9 85:13
    86:24 87:18
**Mexico's** 21:15
    22:22
**Mgruetzmach...**
    5:22
**Michael** 2:19 6:6
**midst** 83:8
**MIGLIORI**
    5:17
**Miller** 3:16
**mind** 26:17
**mindful** 92:20
**minimized** 59:15
**minimum** 78:20
**minutes** 52:21
**mis-designation**

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.        Audio Transcription

Page 12

42:12
mislead 35:18
misrepresent
  45:13
misrepresenta...
  43:4
misrepresenta...
  90:25
misses 14:9 58:7
Mission 2:14
misspoken
  26:23
misuses 57:24
mitigate 20:17
  32:11 36:9
mitigations 55:3
mix 41:23
Mkennedy@c...
  3:3
Mnoferi@nm...
  4:20
model 13:8,10
  13:20,21,25
  14:3,5 17:25
  18:3,5,11
modest 61:18
modified 26:6
modify 22:17
  23:12
modifying 28:12
moment 8:24
  15:19 18:2
  24:4 28:1 46:9
  47:8,12,13
  54:19 60:17
  68:18 69:15
  81:4 82:9
  96:25
Monitor 2:2
MONROE 5:18
Monserrath 2:2
Montano 6:15
  8:8,9 10:1,17
  15:20,21 25:6
  25:9
monthly 18:24
months 21:7

59:13
Moore 96:18
morning 7:11,12
  8:2,8 10:2,18
  15:21,25 48:15
  87:4 89:5
  98:10
Morris 56:24
Mosseri 53:24
motion 9:15,17
  10:19,24 15:17
  23:7 25:16,25
  26:4,21 27:1
  36:25 37:18
  46:17 48:2
  71:16,19 90:9
motions 17:17
  25:11 89:23
Motley 5:7 7:18
  7:20 10:21
move 10:18
  98:23
moved 38:8,11
moving 38:24
Mpendell@m...
  6:8
Mrodgers@ho...
  3:12
Mt 5:19
multi-year
  13:21
multiple 13:13
  88:7
Munger 6:10
  8:10 16:2

        N
N 2:1,8,18,19
  3:19,21 5:9,17
N.W 3:23
name 41:12
narrow 94:7
narrowing 94:10
Nathan 2:13
national 10:25
  11:12
nature 37:17
  40:24 75:13

nearly 17:16
necessarily
  63:16 80:15
necessary 33:22
  62:3 71:23
  84:12
need 22:17
  23:21 26:11
  47:11 51:22
  55:7 58:3
  64:19 73:24
  81:10,11 84:4
  93:8
needed 18:13
  83:19
needles 85:11
needs 16:25 18:3
  26:17 71:1
  77:9 81:8
  98:17
negative 57:5
neglected 7:23
negotiated 19:6
Negron-Reich...
  3:21
neither 65:10
  100:9
never 17:4 18:2
  49:23 79:11
  80:7 97:25
new 1:2,3 4:13
  4:18 5:4 6:16
  7:6,19,22
  10:25 11:12
  12:7 13:20
  15:2 21:15
  22:22,25 23:1
  23:13,25 29:5
  29:22 36:15
  40:14 41:17
  47:19 48:16
  49:6 50:10
  51:6 54:10
  61:5 63:1 65:9
  65:12,24 66:12
  66:19,25 67:7
  67:8 68:5,14

74:25 75:20
  76:25 77:1,6
  77:16 78:2,11
  78:14 80:20,23
  81:5,8 84:9
  85:13 86:24
  87:18 89:16,18
  90:10,12 91:9
nice 37:9
nine 47:3
Ninth 59:2,7
  68:18
NM 1:25 2:9
  4:19 5:5 100:3
  100:19
Noferi 4:15 7:21
non-attorney
  29:21
non-counsel
  63:11
non-party 9:18
  10:19
non-privileged
  39:22 42:6
  46:8 79:6 82:2
noon 24:6
normal 62:4
North 6:15
note 17:23 41:6
  44:7,11 47:18
  50:14 57:7
noted 7:11 11:15
  22:16 26:3
  71:15
notes 46:10 47:9
notice 8:13
  66:16,17 71:14
noticed 9:12
noting 20:14
  74:10
notion 82:14
November 1:17
  1:20 7:1 30:23
  89:15
Nshafroth@co...
  2:16
number 7:4,7

22:7 50:22
Nutter 3:6
NW 2:22 5:10

        O
obeying 85:19
object 22:13
  52:25 68:24
objected 48:22
objectionable
  74:17 82:11
  85:15
objections 50:16
  51:16 71:5
  72:4 73:14
  84:2 85:17
  94:17,20
obligated 34:20
obligating 61:23
  62:15
obligations 88:2
obtain 12:21
  19:15
obtaining 61:7
obviously 22:14
  25:18 75:22
  76:10 87:1
  94:15
occurred 11:18
  34:17
October 58:19
Odyssey 92:4
offensive 67:2
  69:18
offered 43:14
office 8:23
Oh 9:11 89:8
okay 8:2 25:17
  28:11 37:11
  49:2 62:5
  70:13,19,21
  84:19 97:7
Olga 2:8
OLIVER 5:15
Olson 6:10 8:11
  16:3
Omserafimov...
  2:10

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 114 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.          Audio Transcription

Page 13

once 34:2
one-day 78:6
ones 7:24
online 60:14
  66:10 67:17
opaque 63:15
open 27:17
opines 13:3
opinion 14:9,13
  46:4 61:9
  63:11
opinions 13:17
  17:2 18:15
  19:18 53:11
opportunities
  96:5
opportunity
  25:4 48:17
  67:13,16 72:4
  72:23 87:17
  90:14
opposed 97:2
opposing 64:1
  64:21
opposition 19:17
  40:5 43:7
option 96:6
order 8:17 9:25
  15:6,6,10 20:4
  20:13 22:17
  23:12,13,25
  24:15,16 37:20
  43:12 51:2,22
  52:3 61:19
  62:15 69:5,6
  71:2 72:21
  82:15 85:19
  86:13,16 87:5
  88:17 97:18,19
ordered 51:9
  87:22,25
ordering 80:14
orders 15:11
  85:23
organization
  35:14
original 13:10

13:20
ought 94:5
outcome 28:20
outside 32:1
  55:7,15,19,20
  55:24 74:25
outweighed 77:8
over-designati...
  42:13
over-share 24:5
overseeing 56:7

_____ P _____

P 2:1,1 5:16
P.L.L.C 3:15
Pacific 50:10
page 11:15 75:9
  75:11 88:18
pages 47:2 50:18
  100:7
Palo 3:10,11
Panner 3:15
paper 35:3
parallel 38:6
parens 55:21
parental 49:11
Parkinson 3:19
  8:5
part 13:6 20:22
  48:19 54:11
  65:19 69:22
  74:10 78:14,21
  80:22 84:1
  87:6 94:23
participate
  78:11
participation
  52:10 72:15
  74:2
particular 30:9
  31:11 35:5,6
  43:3 63:6 96:4
particularly
  17:1,5,24 21:2
  23:25 45:15,17
  45:19 46:13
parties 9:4 18:7
  20:10 28:14

78:11 90:3
  95:16 100:11
partisan 35:22
parts 79:6
party 11:24,25
  16:18,19 18:9
  18:11 19:9,11
  19:19 22:8
  29:12 43:24
  44:10,14 61:8
  66:22 67:3
  68:22 84:25
  85:22
party's 12:2
Patchen 2:14
patience 47:16
Patrick 3:6
Paul 3:19 6:11
  16:2
pause 47:14 71:9
pay 98:2
PAYMENTS
  1:9
peer 13:8
PENDELL 6:6
people 74:24,25
  75:2,2 85:22
percent 86:8
PERFREME...
  4:16
permissible 29:4
permitted 31:11
  59:19
PERRY 5:3
person 65:15,17
  77:19 96:8,9
personal 44:6,17
  45:6
perspective
  26:13 48:20
  63:3 72:6 75:5
  75:18 76:6
  97:8
persuasive 16:24
pertain 42:24
Philip 56:24
Phone 4:19 5:6

5:11,20 6:5,7
phonetic 5:3
  7:21 29:12
  40:19 41:17
  67:22
phonetic0 67:5
phrase 56:9
physical 14:20
piece 76:11,23
  83:3 97:13
pierce 29:19
piercing 29:7
  36:15
pile 97:6
pile-up 93:15
piling 83:21
  98:22
place 34:3 64:23
  76:6
plaintiff 1:6 4:11
  7:18 12:1
  71:16
plaintiff's 9:15
  23:7 25:24
  36:25
plaintiffs 38:8
  48:10,14 72:20
  78:7 92:11
plaintiffs' 9:17
plan 55:12
planning 37:2
platform 18:24
  89:19
Platforms 1:8,9
  7:6
Pleasant 5:19
please 7:15 24:2
  83:15 93:24
  94:12 98:15
plenty 92:4
Pnutter@cov....
  3:8
POC 55:3
point 11:8 19:12
  23:19 53:12,20
  54:12 55:4,19
  56:21 58:2

60:4 65:9,10
  67:8,15 69:2
  71:14,17 72:8
  76:12 87:10
  91:16 96:7
pointed 84:14
points 21:12
police 75:25
  76:1
policies 28:24
  31:6,13 33:24
  40:14,17,20
  41:2
policy 41:14,15
  42:4,10,15,17
  43:17
pop 8:22
Pope 3:17
populations 56:2
position 58:7
  63:25 70:4,10
  70:15 72:17
positions 35:24
  90:6
possesses 65:15
possession 49:7
possibility 95:15
  96:15
possible 23:22
  24:7 27:22
  28:13 76:21
  92:6 93:20
  94:1,25
post 74:8
posture 77:23
potential 42:12
  86:22
potentially 63:9
practical 51:11
practices 28:24
  40:8 41:3
  54:14
precisely 12:23
  84:3
precluding
  61:21 62:16
  71:6

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 115 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 14

predict 12:18
predominantly
    42:22 43:16
    44:18
predominates
    41:21,22,24
preference
    25:11 28:4
prefers 25:19,21
prejudice 52:9
prejudices 51:8
prejudicing
    72:17
premise 31:21
    33:25
prepare 51:4
    83:22
prepared 78:3
present 26:21
    40:11,11 54:18
presentation
    30:23 36:25
    40:6,7,11,14
    41:7 42:2,5,7
    42:20 43:18
preserve 58:24
    59:6
preserved 17:8
    59:4
preserving 59:9
Presiding 2:2
pretty 24:5
preventing
    61:19
prevents 71:2
previewed 89:6
previously 11:1
    23:3 73:21
    75:21
prima 29:13
primarily 39:10
    39:12,22,23
    40:1,25 67:22
primary 52:18
principles 68:8
prior 77:23 87:6
    93:3

privacy 33:23,24
private 10:7
privilege 9:20
    29:8,13,15,20
    31:1,4 33:2
    34:3 35:1
    36:16 37:10,25
    38:21 39:24
    40:9,9,22 41:4
    42:13 43:12
    45:11 46:1
    49:22 50:6,8
    50:12,16 51:7
    51:13,23 52:12
    52:24 53:3
    54:17 55:6,13
    55:23 56:12
    57:22,24 58:5
    58:9,10,12,15
    58:24 59:4,5,6
    59:8,8,11,14
    59:17,25 60:21
    60:24 61:4,13
    62:1 63:19
    64:14,17 65:16
    65:17 66:8
    67:5,12,13,16
    67:25 68:21
    69:7,19,24
    70:6,9 71:3
    72:16 73:14
    74:3 75:18
    79:10 86:23
    87:15 89:1
privileged 29:6
    29:23 40:15
    41:22 42:8,19
    48:1,9 49:25
    50:1,24 52:6,8
    53:19 54:25
    56:17 59:10
    60:13,19,25
    61:20,22 62:6
    62:14,18 63:25
    64:11,11,18,25
    66:2,15,21,23
    66:24 67:3,10

67:17,24 70:7
    70:19 71:4,7
    72:2 80:1,15
    80:17 81:20,21
    81:24 87:21
Pro 2:13,13,14
    2:18,18,19,19
    2:20,20,21 3:6
    3:9,9,15,16,16
    3:17,17,18,18
    3:19,19,20,20
    3:21,21,22 5:8
    5:8,9,10,15,15
    5:16,16,17,17
    5:18,18 6:3,6
probably 7:23
    24:6 27:6
problem 42:9
    48:20
problematic
    75:4
problems 77:5
    77:16
procedure 78:20
procedures
    39:17 62:3
proceed 8:19
    25:21 26:7
    37:3 52:2
proceeding
    16:15 27:18
    78:1 81:9 84:4
proceedings
    13:16 14:13
    15:12 38:7
    97:2 100:6
process 8:17
    53:16,18
produce 9:18
    23:2 27:19,23
    34:25 37:20
    87:24
produced 11:1
    12:6,14 13:15
    14:7,19 15:14
    16:13,19 19:5
    23:3 38:18

41:7 42:18
    50:20 57:17
    58:17
producing 16:14
product 55:21
production
    13:14 38:9,11
productive 80:9
productively
    87:3
products 38:3
    39:10,16 46:19
    49:4,7 54:1
    57:3,4
Professional
    61:5 84:13
    86:14 87:10
    88:2
Professionalism
    86:21
prohibiting
    29:22 88:21
promote 35:23
proper 51:16
    97:23
properly 85:15
prophylactic
    51:2
proportional
    16:5
proportionality
    18:18
proposal 73:3,12
propose 15:9
    27:16
proposed 93:5
proposing 53:16
    74:16
protect 23:22
    53:3 59:6,12
    64:5,24
protected 19:1
    21:4 27:9
    40:21 47:25
    63:19 72:3,23
    73:24 74:6
    80:8 84:23

86:4 88:25
protecting 16:22
    23:9 82:15
protection 39:25
protections
    23:14,20 85:2
    85:13
protective 15:5
    15:6,10,11
    20:1,4 22:17
    23:12,25 24:16
    52:2 61:19
    62:15 72:21
prove 12:19
proves 16:9
provide 30:16
    30:17 31:18
    57:23 73:1
    87:21
provided 2:2
    28:21 29:2
    31:7,12 47:23
    50:25 90:24
    97:24
Providence 6:4
providing 29:14
    30:11 33:10
    36:5
provisions 19:6
    19:8 20:2,9,13
    23:8,20
public 19:3
    26:11 27:15,16
    28:5,13,14,16
    35:13,19,21,23
    36:22 41:9
    45:18 47:1
    48:8 54:15
    56:1 70:6
    75:20 86:23
publically 80:5
publicly 28:8
    51:21 53:24
    54:22 57:16
    73:22 75:11
    80:18 84:24
    85:4 88:23

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 116 of 122

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 15

published 60:13
66:10,22 67:17
76:2 79:2,7
purported 91:5
purportedly
60:15
purpose 12:23
52:18 53:23
57:21 66:17
97:24
purposes 81:8
pursue 59:9
push 93:18
put 17:19 18:15
21:22 22:2

Q
quagmires 91:17
question 18:17
36:18 62:8
71:21
questioning
11:17 74:1
questionnaire
8:15
questions 15:18
19:25 22:5
28:25 32:11
47:6 49:14
60:2 61:25
70:14 71:10
73:7,21 80:21
85:6
QUINN 4:17
quite 40:18
quote 31:25 32:1
32:14 33:4,14
34:8 35:20
41:3,3,13,13
41:14 49:14
55:1,18 59:4
68:6
quoted 68:18
69:15
quoting 35:16

R
R 2:1

rails 93:25
raise 10:12 65:4
65:5,6 95:3
raised 21:22
58:14 62:20,23
78:17 83:5
84:16 87:10,13
90:22
raising 90:8
ran 98:1
random 7:14
ranging 68:17
RAUL 1:4
RAÚL 4:12
re-query 15:2
reach 58:3 91:25
96:16,17
read 45:5
ready 7:12 21:3
37:4,15 60:9
93:21
Real 3:10
reality 39:10,13
54:23
really 45:9 75:8
75:15 81:2
reason 15:8
38:23,23 52:16
68:19 77:7
87:9 90:8
reasonable 59:9
61:18 68:17
71:24 92:1
93:9
reasonably 59:5
83:12,16
reasons 30:3,4
42:21 49:23
59:18 68:2
rebut 18:13
rebuts 29:13
recall 54:9
recalls 64:17
received 7:10
29:25 60:15
61:21 63:9
64:7,13

reciprocal 87:11
recognize 36:21
recognized
36:14 54:9
record 2:4 3:1
4:1 5:1 6:1
7:16 13:18
18:12 52:8
73:4 81:23
87:6 91:13
97:23
Recording 1:19
records 16:8
recover 59:12,14
redacted 47:2
82:1
reference 27:2
28:6 84:13
referencing 27:9
referred 17:7
referring 76:3
refine 13:16
refined 14:1
reflected 12:3
refute 34:12
refuted 29:8
34:1,2
regard 49:22
regarding 9:19
13:3 17:8,14
17:25 38:2
43:1,3
regardless 12:17
70:6,25
regulations
33:19 36:7
rein 59:23
REL 1:4
relate 57:11
related 23:9
40:25 53:15
73:21 82:17
85:2,7 90:3
91:17 100:10
relating 89:18
relations 35:23
relationship

87:12
relatively 16:10
released 82:25
86:5
relevance 14:14
16:11 17:3,12
18:18,22 21:15
relevant 11:11
11:22 13:2
14:4 16:7 17:5
18:2 58:17
65:13 68:1
reliable 14:11
relied 11:5 13:1
13:12 29:17
relief 37:17
relies 16:11
31:10 67:21
relinquish 92:12
rely 40:1,16
45:15
relying 27:20
remain 74:7
remaining 52:15
remains 14:11
19:14 29:15
34:3
remarkable
34:23
remedy 61:17
79:14 91:22
remind 88:1
render 12:17
40:25
rendered 17:1
19:18
renders 55:20
renumber 14:24
replace 81:25
reply 17:24
29:11 31:24
34:24 37:3
46:12 47:2
report 13:6
reporter 97:1,16
97:20 98:2
reporter's 97:23

100:1
reporting 53:16
reports 11:7
33:20
represented
35:21 84:22
REPRESENT...
6:9
represents 56:10
request 12:11
16:4 37:22
81:18 83:14
89:9 91:22
requested 12:15
16:7 82:17
83:20 87:22
requesting 14:19
39:11 64:20
requests 21:19
51:10
require 23:8
97:18
required 53:23
67:2
requirements
78:13
requires 51:6
55:2 69:18
89:14
research 28:24
32:2,10,12,15
32:19 33:11,13
33:14,19,21
34:9,14,17,18
34:21 35:12,18
35:20,22 36:8
36:8 38:2,10
40:8 41:13
42:3,3,4,8,10
42:10 43:2,3,8
43:15,22 44:3
44:4,10,14,16
45:13,13 46:2
46:15,18,20,24
47:23 49:15
53:5,7,10,17
53:22,25 54:24

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 117 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.     Audio Transcription

Page 16

54:25 55:1,8
55:13 56:7,11
56:17 57:2,4
70:21
**researched**
43:23
**researcher**
55:16
**researchers**
28:22,25 29:3
31:3 33:14,15
33:18,21 34:11
34:19 40:12
41:4 43:18
44:2,9,13
49:13 54:24
56:16
**reserve** 85:20
**resist** 91:19
**resolution** 89:14
90:5
**respect** 11:11
13:1 21:21
22:5 25:10
45:16 62:24
63:20 65:5
72:17 74:4
76:16,18 77:4
77:6,21 87:3
88:6,19,22
**respects** 36:24
93:11
**respond** 27:12
50:2 52:23
90:23
**response** 43:7,25
92:12
**responses** 89:16
94:20
**rest** 54:12
**restrict** 28:6
**result** 42:18 51:1
**resulted** 42:17
**results** 14:1
55:21
**resume** 88:8
**retention** 36:7

**revealed** 91:2
**revenue** 13:7,19
13:21,23 17:25
18:4
**review** 8:16 46:3
55:8 72:4
**reviewed** 7:12
13:8
**rewarded** 82:21
**RI** 6:4
**Rice** 5:7 7:18,20
10:21
**ridiculously**
27:20
**right** 8:12 9:11
10:9,9,16,20
15:24 20:11,12
21:8 22:19,20
24:22 25:5,10
25:24 26:8,19
27:4,7,11,14
40:18 47:15
48:12 54:20
60:4,8 71:11
71:13 73:17
77:14 78:18
79:8,18 82:6
84:7 85:20
88:4,16 89:4
90:18 94:9
96:21 98:9,15
**rights** 61:8
**rise** 35:4
**rises** 38:19
**risk** 32:11 33:20
**risks** 36:9 41:14
42:4,5,11,11
45:18 75:18
**RITTER** 5:16
**road** 23:24
**Rodgers** 3:9
**Rodriguez** 2:3
**role** 30:15 31:18
57:19
**roles** 7:24
**rolling** 91:4
93:13,20

**rooms** 81:11
**roughly** 50:20
50:21
**route** 97:15,19
**RPR** 1:25 100:3
100:18
**rule** 33:2 61:5
65:12,15,21,23
66:25 67:2,7,8
67:10,13,14,19
68:4,10,16
71:8 72:5,23
73:16 81:13
82:24
**ruled** 60:17
63:17 73:21
**rules** 29:5,22
54:10 65:9
68:9 84:13
86:13,19,20
87:10 88:1,12
100:11
**ruling** 71:19
81:1,3 82:23
84:21 88:17
**rulings** 76:15,23
77:3,6 82:17
**run** 97:25

---

**S**

**S** 2:1 3:18
**sadly** 82:12
**safe** 49:4,8,12
**safeguards**
62:10,11 64:5
64:19,23
**safest** 27:6
**safety** 45:18
53:17 55:21,22
57:2 91:5,5
**San** 2:15
**sanctioning** 79:9
**sand** 82:20
**Santa** 1:1 2:9
4:19 6:16 50:9
**Sattizahn** 9:20
25:12 39:9,14
48:4,8 49:9

50:21 51:24
54:5,16 57:9
58:8,16,20
59:19 60:11,20
60:20,23 61:20
61:22,23 62:12
62:15 63:20,23
64:1,6,10,12
64:16,22 65:4
65:6 66:4,9
67:16 69:6
70:5,16 71:3
73:6,14,15
75:7,10,21
79:2 81:7,20
94:15
**Sattizahn's** 50:7
50:17 51:11,18
52:4 59:25
69:10 71:25
79:6,23
**saw** 17:17
**saying** 16:10
44:8 76:5
80:25 84:25
86:16 93:2
**says** 41:11,12,18
44:1 46:21
55:14 61:6,10
65:15 67:10
68:23
**SC** 5:19
**Scharlton@co...**
3:3
**schedule** 89:13
90:15,17 92:1
92:10 93:4,14
93:18 94:6,19
98:19
**scheduled** 82:4
83:6 84:5
**scheduling**
94:10 95:4
**Schultz** 3:18 8:6
60:6,7,10 63:2
63:21 64:4
71:22 73:10,11

74:18 78:18,19
79:9 81:16
87:13
**Schultz's** 84:13
**scientifically**
35:13,21
**scores** 30:24
**screw** 37:12
**sealed** 74:5
**sealing** 78:13
82:16
**second** 11:4
31:20,21 32:10
44:11 52:16
53:20 67:7
68:20 73:5
75:4
**section** 78:11
**sections** 82:2
**see** 8:22 9:4,12
9:13 25:6 47:7
63:15 74:20
75:2 84:1
88:18,25 90:2
96:23
**seeing** 75:3
81:14
**seek** 61:12
**seeking** 11:24
18:16 22:4
28:19,23 29:1
63:4 64:4
**seeks** 11:12 13:7
18:23 37:18
60:22 61:15
**seen** 20:4 79:11
**select** 45:25
**semi-urgent**
89:14
**sends** 85:18
**Senior** 4:15,16
**sense** 25:15,22
63:22 66:12,13
82:22 96:7
**sensitive** 16:8,22
18:25 40:8
41:13 42:2,3,8

11/21/2025        State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.      Audio Transcription

Page 17

42:9 43:23
49:14 53:8
54:24 55:2
56:2,16
**sensitivity** 44:3
**separate** 11:20
19:10,13 77:10
78:14 80:22
81:8,9
**separately** 78:22
**September**
58:18
**sequester** 78:21
**sequestered**
27:18,20,23
**Serafimova** 2:8
**serve** 57:21
**served** 53:22
**serves** 66:18
**services** 8:21
**serving** 66:17
**set** 68:15 78:8
83:18 90:15
92:13 94:24
100:6
**sets** 65:13
**setting** 92:9 93:9
**setup** 95:25
**Severson** 3:18
**Shafroth** 2:13
**share** 9:19 11:5
12:2 93:10
94:3
**shared** 20:10
53:10
**sheltered** 57:12
**sheltering** 56:11
**shielding** 55:12
**shift** 27:18
**shocked** 95:23
**short** 16:4 79:12
**shorthand** 100:5
**shots** 46:23 47:4
**show** 16:18
43:11,13 50:5
50:7,12 52:17
**showing** 16:24

29:13 38:9
45:11 49:7
**shown** 53:21
64:16 91:6
**shows** 49:9
**side** 62:7 71:18
80:17
**sides** 29:17 88:7
91:11
**significant** 16:21
65:19
**similar** 13:21
74:6 81:1
**similarly** 96:23
**simply** 16:9
30:11 34:1
64:4,22 69:4
70:7 79:15
**Singer** 5:8 7:19
48:15,16 49:2
68:17 71:21
72:6,24 77:19
77:22 78:25
82:5 90:19,20
92:19 93:23
94:2 95:3,6,14
98:11
**Singer's** 69:22
**sitting** 81:12
**situation** 17:13
31:9 61:10
98:3
**six** 59:13
**skip** 56:18
**smoking** 35:15
**Snap** 6:9 8:11
9:18,25 10:19
11:1,12,15,19
11:20,20 12:6
12:7,9,14
14:19,21 15:2
15:9,13,23
16:2,13 18:9
18:20,23 19:11
19:13,21 20:17
22:4,9,25 24:1
24:20

**Snap's** 11:22
12:3 14:8
16:21 17:5
18:3 23:9,15
**Sneed** 2:18
**social** 13:3
**solely** 30:16
31:18
**SOLOMON**
5:15
**somebody** 80:25
**soon** 58:15 92:6
92:16
**sorry** 7:8,13
25:14 37:13
50:21 53:5
56:18
**sort** 21:5 69:23
71:15 72:21
77:12 84:4
86:14 94:19
**sorts** 20:13 77:5
96:22 98:20
**Sossman** 10:7
27:21 95:21
96:16
**sought** 13:14
18:8 58:15
**sound** 44:14
**sounds** 10:16
91:21
**South** 6:11
**Southern** 29:16
**speak** 26:18
**SPEAKER** 9:3,9
**speaking** 7:24
**specific** 34:21
49:24 50:15,23
51:3 59:24
61:9 65:23
69:1 77:6
80:20
**specifically**
32:14,16,17
40:20 42:2
70:20
**speculative**

18:22
**speed** 92:13
**spend** 58:2
80:10
**spent** 9:18 11:3
12:4
**Sperfrement...**
4:21
**Square** 3:10
**squarely** 65:11
**standard** 16:20
65:13 67:24
68:3,15,17
**standards** 21:15
22:23 47:19
77:1 85:9,13
86:24
**standing** 22:13
**Stars** 3:6
**start** 25:15 26:3
37:16 40:5
48:24 89:7
**starting** 7:8
66:13
**state** 1:2,3 7:5
7:15,19 9:24
10:22 11:19
12:18,20 13:14
14:18 16:5,11
16:16,21 17:3
18:2,12 19:7
19:10,13 22:17
22:24 24:18
25:14 26:17
27:13 28:19,23
29:1,5,11,19
30:9,15,17,22
31:5,10,20,21
31:24 32:4,20
32:23 33:5,6
34:7,23 35:2,8
35:16 36:2,11
37:18 42:18
43:8 46:12
48:5,16 49:19
50:23 51:4,21
53:6 56:24,25

57:7,12 58:4
58:15,17 60:3
60:22 61:2,15
61:19 62:17,23
65:10,22 66:6
66:7,16,20
67:9,20 69:4,8
69:13,17,24
70:3,9,15,17
70:19 71:6,14
72:25 73:12,20
79:16 81:24
86:8 87:16,25
88:3,21 89:15
89:24 90:6,24
98:1,11
**state's** 11:6,11
11:23 13:6
16:4,9 17:23
18:1,19 19:14
19:22 21:18
29:7 30:20
31:14 34:4,6
46:16,21,22
48:20 49:3
51:8 54:3 56:6
58:7 62:19
65:2 70:3 72:6
**stated** 1:19 33:1
33:12 35:12
**statement** 31:16
32:3 48:19
51:3
**statements** 32:1
32:17 43:21
46:14,18 48:8
48:11,21 63:7
86:24 88:23
89:17,23 91:4
**states** 33:17
40:10
**stating** 72:12
**status** 8:20 9:1
**statutory** 65:23
**stay** 28:16
**steer** 85:8,10
**steered** 77:13

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 119 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.          Audio Transcription

Page 18

Steet 6:15
stenographic 100:5
STEVEN 4:16
sticky 47:9
stipulated 97:18
stole 60:12
stop 19:24 36:17 64:2 66:5 76:2
stopping 34:14
straightforward 10:24
strangely 63:15
Street 2:8,14,22 3:23 4:18 5:5 5:10 6:4,6
strength 18:19
stressful 8:25
stricken 81:23
strict 19:5
strike 52:6 90:9
strikes 78:23 79:13
strong 19:21
strongly 90:20
structure 32:10
stuck 28:1
studies 32:10 33:13 34:21 55:22
study 55:5,16,17 55:21
subject 19:5 23:2 31:23 52:2 69:7,16
subjects 50:7
submission 8:15 55:9
submitted 11:7 29:9 30:5 94:21
subpoena 12:24 21:18 23:2
substance 52:5 89:11 90:16
substantive 23:1
sufficient 15:9

15:13 29:14 62:5
sufficiently 16:6
suggest 9:25 52:1 94:4
suggested 86:15 87:20 95:14
suggesting 86:8
suggestion 30:6 36:11
suggests 18:12 35:8
sui 56:22
Suite 2:8,14 3:6 3:23 5:5,10 6:15
summaries 32:12
summarizes 48:19
summary 17:17 89:22,23,25 90:13
supplemental 8:15
support 21:23 31:13,25 32:5 66:11
supported 45:10 57:4
supporting 35:4
supposed 16:12 84:6
Supreme 65:25 68:5
sure 13:18 20:25 26:16 47:10 60:10 63:3 64:3 72:11,19 72:22 73:10 74:15 76:4 82:3 85:11 86:21 91:14 92:24 93:12,19 95:25 96:19 98:21
surprise 91:10

surprised 92:15
surrounding 42:21
suspect 83:10
Suzan 2:19
sworn 29:8 30:18 34:12 36:4
synopsis 86:15

_____

T
table 73:12
tag 91:24
take 14:21 46:9 51:4,8 54:19 77:20 85:24 90:11
taken 2:5 3:1 4:1 5:1 6:1 70:9,15 76:17 91:6
takes 47:18 58:1
talk 39:19 46:2 98:6
talked 40:6 43:17 79:20 83:20 95:8
talking 45:9 79:1,16 84:24
target 19:13
targeted 21:19
team 92:23
technical 14:21
TECHNOLO... 1:9
technologists 95:19
technology 95:10
teenage 43:3
teens 49:8,17
Tel 2:9,15,23 3:7 3:11,24
tell 12:15 33:14 70:18
Teller 6:11 8:10 10:1 15:22,24 15:25 16:2 20:6,18 21:10

24:20 25:3,6
telling 75:15
temptation 91:19
tempting 93:16
Tennessee 38:7 38:24
Tenth 2:22
term 77:14
terminated 60:12
terms 20:24 83:4 85:3
terribly 97:17
test 68:16
testified 53:24 60:14 75:10
testifies 75:7
testify 59:19
testifying 63:10
testimony 28:7 39:1 42:25 45:10 50:7 51:19 52:4 53:15 57:10 59:25 60:25 69:10 75:14 79:23
text 93:5
thank 8:1,12,14 9:4 10:9 16:1 21:8,10 22:19 24:11,21,22 25:2,3,9,23 28:11,18 47:15 48:17 60:7 84:8 89:3 90:18 92:17 98:8,24
Thanksgiving 93:1
theories 17:21 89:20 90:10,12
theory 34:6 89:18 91:9
Thester@cov.... 2:23

thing 44:7 75:8 82:8 97:10 98:5
things 8:20 37:12 42:19 46:10 47:10 48:9 76:19 77:5 81:13,20 93:20,25 95:11 96:10,13,20,22 98:22
think 9:23 17:7 18:21 20:19 22:7 23:19 25:14,20 26:15 27:1,5 28:2,5,9 37:22 39:18,21 40:13 41:5 42:1,5,14,21 43:19 45:18 46:6 47:5 48:18,22 49:21 56:4,22 58:3,7 62:3,4,20 65:8 66:11 71:1 72:7 73:3,20 74:11,20 75:4 75:17 76:23 77:22,25 78:8 78:16,19 79:4 80:2,11,12 81:18 82:14,22 83:1,16,20 84:4,21 86:1 86:25 88:7,9 88:11 89:14 93:10,11,16,19 95:9,16 96:4 97:4,25
thinking 38:5,14 38:18 92:24
thinks 16:16
third 11:25 12:1 16:18,18 18:7 18:9 22:8 32:11 43:20,23 44:10,13 54:4

Case 4:22-md-03047-YGR    Document 2505-1    Filed 12/04/25    Page 120 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 19

61:8 63:1
66:22 68:22,25
84:16
**Thomas** 3:18 8:5
**thought** 78:25
**thoughts** 77:21
**thread** 85:11
**three** 9:12 25:11
62:20 68:2
**tics** 29:12
**time** 8:18 9:18
10:8 11:2 12:3
22:2,3 24:21
25:8 37:8,12
37:13 58:2
71:12 76:18
77:4 78:5
80:10 88:3
92:12 93:9,17
94:20,22 97:11
**timing** 83:4
**Timothy** 2:18
8:6 25:13
**tipping** 63:18
**title** 40:7,12
**titled** 54:23
**tobacco** 35:9,11
35:12,17,18,20
35:25 36:20
45:7,8,14,15
53:7 55:11
56:11,23,25
**today** 7:25 8:10
9:13 87:17
**TODD** 3:14
**told** 41:1 80:25
**Tolles** 6:10 8:11
16:3
**tools** 54:18 91:5
**top** 67:14
**topics** 49:15
56:2 75:6
**TORREZ** 1:4
4:12
**total** 13:19,21
**track** 56:5
**tracks** 23:14

**transcribe** 97:2
100:5
**TRANSCRIB...**
1:23
**transcript** 72:1
82:1,16,25
88:25 89:2
97:23
**transcription**
1:15,16 7:3
100:7
**treat** 78:13
**trial** 21:3,4 22:3
22:13 83:6,9
83:11,23 84:6
90:11 92:11
93:18 94:18,25
95:10 97:22
**trials** 36:20
**tried** 72:8
**true** 22:7,20
24:24 32:2
38:6 46:11
63:16,19 88:5
95:18 96:6
100:7
**truth** 35:15
**truth-seeking**
57:19
**try** 77:3 92:2
94:7,24 98:19
98:21
**trying** 83:22
85:11 86:18,21
88:3,5
**Tschultz@kell...**
4:6
**turn** 26:15 36:12
77:23
**Turning** 18:17
**turns** 86:3
**TV** 96:13
**Twitter** 18:7
**two** 10:3,24
21:19 28:20
29:9 30:6,9,18
32:7 36:4

62:20 65:9
74:20,20 77:22
78:9 84:15
**type** 12:2 68:10
69:17

_____
**U**
**ultimately** 34:18
**un-vitiates**
38:20
**unable** 27:19
**unbranded** 44:4
44:10,16
**uncertainty** 9:1
**uncommon**
97:17
**uncompelling**
12:12
**unconscionable**
54:14
**unconventional**
79:14
**undermines**
51:21 57:18
**understand** 7:9
19:7 20:15
22:23 25:1
37:19,21 38:4
45:23 73:11,23
74:16 83:2
84:25
**understanding**
17:15,18 20:21
21:24 48:5
70:1 73:2 81:4
**understands**
97:21
**understood**
26:20 37:6
71:14 72:14
76:15 81:16
86:7,15
**undertake** 23:1
**undoubtedly**
94:14
**undue** 14:16,16
**unfair** 54:13
**UNIDENTIFI...**

9:3,9
**unintelligible**
47:9 59:20
62:14 68:12
69:11,12 70:2
75:3,9 79:14
**unique** 81:5
**universe** 23:18
75:1
**unload** 14:22
**unprivileged**
41:25
**unpublish** 66:14
**unreasonably**
88:9
**unsealed** 82:24
89:2
**untested** 29:20
**untethered** 51:2
**untrue** 12:11,13
**unusual** 37:19
37:22,23
**use** 12:19,21
19:23 23:23
44:2,9 56:8
61:7 67:3
69:18 81:14
95:2
**useful** 80:12
**user** 11:1,2,12
11:22 12:3
**users** 18:24
**uses** 18:7
**UXR** 54:23

_____
**V**
**v** 3:17,17 35:16
68:7
**vacate** 93:18
**vague** 18:1
**valid** 50:6 51:23
89:1
**various** 47:10,23
**vastly** 36:13,14
**vein** 76:20
**vendor** 14:22
43:24 44:2,9
44:11 55:17

**verification**
49:11
**version** 82:1,24
**versus** 7:6 36:23
53:6,13 56:24
56:25 59:1
84:16
**Vgreene@mot...**
6:5
**Vice** 2:13,13,14
2:18,18,19,19
2:20,20,21 3:6
3:9,9,15,16,16
3:17,17,18,18
3:19,19,20,20
3:21,21,22 5:8
5:8,9,10,15,15
5:16,16,17,17
5:18,18 6:3,6
**VINCENT** 6:3
**violate** 61:3,5,7
61:13 86:13
**violated** 60:21
**violation** 71:8
75:23
**violations** 60:24
75:19
**virtual** 39:10
**virtue** 73:4
**vitiated** 33:3
**voluntarily**
65:18 66:2,23
**VR** 46:19
**vs** 1:7

_____
**W**
**W** 3:6 4:14
**waiting** 97:14
**waived** 22:1
58:5,8,9 59:8
59:17 66:7
67:4 69:7 85:1
**waiver** 52:11
65:3,8,14,24
67:14,23 68:3
68:13,15,25
69:4,12,17,23
72:16 74:3

Case 4:22-md-03047-YGR     Document 2505-1     Filed 12/04/25     Page 121 of 122

11/21/2025          State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.          Audio Transcription

Page 20

**waives** 65:17
**want** 8:20,25
  10:5,6,12,13
  14:23 23:12
  25:8 26:5 37:1
  37:16 38:22
  39:19 40:1
  41:6 44:9
  47:10 54:19
  56:21 58:2,6
  62:2 63:14
  65:6 69:21
  70:5 72:19
  74:15 78:21
  83:3 84:3,17
  88:1 91:12
  95:24 96:20
  98:3
**wanted** 8:14
  72:11 82:13
**wanting** 48:10
**wants** 44:16
  77:20
**warn** 57:3
**warranted** 37:23
**Washington**
  2:22 3:23 5:11
  53:6
**wasn't** 86:8
**watching** 96:12
**way** 23:15,22
  26:10 32:13
  36:8 39:15
  48:5,12 55:10
  71:4 72:12
  75:17 76:4
  78:24 80:24
  81:17 84:19
  86:9 96:6
**Wdunkirk@...**
  5:13
**we'll** 25:24
  70:13 85:24
  92:16 98:7
**we're** 7:8 18:11
  21:2,5 22:4
  39:11 45:9

  51:14 61:17
  63:25 64:4,20
  64:21,22 69:24
  70:18 84:24
  87:8 88:11
  93:7,8 97:8
**we've** 9:12 29:9
  30:5 31:7 48:3
  79:20 85:3
  87:4 95:22
  97:4
**weak** 18:22
**Weaver** 3:22
**Wednesday** 24:6
**weeks** 36:20
  91:6
**weigh** 71:22
**weighed** 18:20
**weren't** 49:11
  72:10
**WESLEY** 5:9
**Westlaw** 53:13
**Westminster** 6:4
**whatsoever** 66:1
  100:13
**whilst** 27:24
  92:9
**whistleblower**
  28:7 29:21
  39:1,5 41:8
  42:25 43:21,22
  45:10 46:15
  51:20 56:14
  59:21
**whistleblowers**
  29:24 38:16,17
  50:20,22 54:8
**wild** 35:2
**wildly** 48:6
**willing** 19:7
  22:18 70:17
  72:25 87:20
**willingly** 71:4
**willingness**
  64:17 70:12
**Wilson** 22:11
**wins** 41:21

**wishes** 26:7
**withdrawn** 22:1
**witness** 51:12
  61:3 62:8 73:6
  76:18 85:6
**witness's** 63:10
  75:14 78:2
**words** 35:25
  68:14 75:9,10
**work** 13:11 24:6
  36:10 50:3
  83:2 92:16
  98:16
**workable** 74:17
**worked** 39:10,12
  79:19,24,24
  96:14
**working** 7:13
  24:16 55:23
**works** 39:15
**world** 85:17
  86:6
**worries** 37:6
**wouldn't** 50:14
  95:23
**wrap** 85:24
**wrong** 76:14

**X**

**Y**

**yeah** 9:6 78:19
  81:21
**years** 13:24 30:1
**yield** 15:18 60:2
**youth** 13:7

**Z**

**Zobel** 9:16 25:12
  25:25 33:10,12
  33:17 34:10,16
  39:12 40:4
  42:25 43:1,5
  43:21 44:8,12
  44:21 46:1,13
  46:14,17 47:21
  62:9 64:7,9
  65:5

**Zobel's** 43:25
  62:24
**Zobel/Dai** 25:16
**zoom** 38:22
**Zuckerberg**
  53:24

**0**

**02903** 6:4
**06103** 6:7

**1**

**1** 2:8 6:15 7:4,4
**1.213.683.9583**
  6:13
**1.505.954.7291**
  6:16
**100** 86:8
**10th** 3:10
**11-503(d)** 54:10
**11-503(d)(1)**
  33:2
**11-511** 65:13
  66:25 68:4,10
  68:16
**11-512** 67:8
  68:23
**110** 2:8 6:15
**12/31/2026**
  100:19
**14th** 89:15
**1615** 3:23
**16th** 83:7 84:6
**17th** 6:6 71:17
**190** 1:25 100:4
  100:19
**1988-case** 67:22
**1999** 3:6

**2**

**20** 6:6 45:25
**2000** 67:6
**20002-4956** 2:22
**20004** 5:11
**20036** 3:23
**2007** 50:11
**201** 5:5
**2010** 53:13

**202** 2:23 3:24
  5:11
**2021** 30:23
**2023** 56:15 57:8
**2025** 1:17,20 7:1
**21** 7:1
**216-9000** 5:20
**218-2722** 6:7
**21st** 1:20
**232-5504** 5:11
**26th** 1:17
**28** 5:19
**29464** 5:19
**2nd** 93:21

**3**

**300** 5:5
**3000** 3:10
**326-7900** 3:24
**332-4800** 3:7
**350** 6:11
**3500** 3:6
**36** 54:21
**37** 41:9
**3rd** 5:5

**4**

**40** 6:4
**400** 3:23
**401** 5:10 6:5
**404** 71:8
**404(a)** 61:6
**408** 4:18
**41** 53:13
**415** 2:14,15
**432** 3:7
**4510345** 53:14
**457-7730** 6:5
**490-4040** 4:19
**490-4060** 5:6

**5**

**5** 3:10
**505** 2:9 4:19 5:6
**50th** 6:12
**511** 67:14,21
**512** 67:19,21
  74:11,18 95:1

11/21/2025    State of New Mexico, Ex Rel. Raul Torrez v. Meta Platforms Inc., et al.    Audio Transcription

Page 21

**5400** 2:14
**59** 50:20,21
**591-7053** 2:15
**5th** 6:4

---
**6**
---
**60** 50:18
**63** 11:15 89:16
  89:25
**630** 5:10
**632-4700** 3:11
**650** 3:11
**662-5324** 2:23

---
**7**
---

---
**8**
---
**843** 5:20
**850** 2:22
**860** 6:7
**87102** 5:5
**87501** 2:9 4:19
  6:16
**8th** 82:5

---
**9**
---
**90067** 3:7
**90071-3426** 6:12
**91-359** 61:9
**9246** 1:25 100:4
  100:19
**94105-2533** 2:15
**94306-2112** 3:11
**988-4421** 2:9
**9th** 5:10 83:6