Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc.; Facebook Holdings, LLC;
Facebook Operations, LLC; Meta Payments, Inc.
f/k/a Facebook Payments, Inc.; Meta Platforms
Technologies, LLC f/k/a Facebook Technologies,
LLC; Instagram, LLC; and Siculus LLC f/k/a
Siculus, Inc.*

*[Additional parties and counsel listed on
signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Breathitt County Board of Education v. Meta Platforms Inc., et al* | MDL No. 3047<br><br>Case No. 4:23-cv-01804-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ No. 1)**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date:    January 26, 2026<br>Time:   8:00 am<br><br>Place:  Courtroom 1, 4th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ....................................................................................................................1

II.     ARGUMENT ..........................................................................................................................2

      A.     Defendants Are Entitled to Summary Judgment on Causation. ..........................................2

            1.     Breathitt Understates Its Burden on Summary Judgment. ......................................2

            2.     Breathitt's Evidence Does Not Create a Genuine Dispute of Material Fact ............3

      B.     Breathitt's Failure to Warn Arguments Are Unavailing. ....................................................10

      C.     Defendants Are Entitled to Summary Judgment on Past Damages. ...................................12

            1.     Breathitt Is Not Entitled to Lost Time Damages as a Matter of Law. ...................12

            2.     Breathitt's Evidence of Lost Time Damages Fails. ...............................................13

            3.     Breathitt's Claim for Costs Cannot Withstand Summary Judgment. ....................14

      D.     Breathitt Cannot Recover the Hoover Plan as Future Damages. .......................................17

      E.     The Hoover Plan is Not a Proper Abatement Remedy Under Kentucky Law ....................18

      F.     Breathitt's Claims are Barred by Kentucky's Statute of Limitations. ...............................18

            1.     The Discovery Rule is Inapplicable Under Kentucky Law. ...................................19

            2.     Even if the Discovery Rule Applies, There is No Genuine Dispute of Material Fact that Breathitt's Negligence and Public Nuisance Claims Have Expired. .......19

III.    CONCLUSION ......................................................................................................................20

ii

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abel v. Austin*, 411 S.W.3d 728 (Ky. 2013)..............................................................19

*Alexopulos ex rel Alexopulos v. Riles*, 784 F.2d 1408 (9th Cir. 1986) ......................18

*Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 873 (Ky. Ct. App. 2001)............2

*Bank of N.Y. Mellon v. Lewis*, 796 F. App'x 956 (9th Cir. 2020)...............................18

*Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221 (E.D. Cal. 2023).............14, 15, 17

*Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001) .......................................8

*Briner v. Gen. Motors Corp.*, 461 S.W.2d 99 (Ky. 1971) ...........................................3

*Brown v. Arch Wood Prot., Inc.*, 265 F. Supp. 3d 700 (E.D. Ky. 2017) .....................3

*Bryant v. Tri–County Elec. Membership Corp.*, 844 F. Supp. 347 (W.D. Ky. 1994) ...............3

*Cargill v. Greater Salem Baptist Church*, 215 S.W.3d 63 (Ky. Ct. App. 2006) .........3

*Carr v. United States*, 28 F. Supp. 236 (W.D. Ky. 1939) .....................................14, 16

*Classic Country Land, LLC v. Eversole*, 2019 WL 13210645 (E.D. Ky. July 26, 2019)...............18

*Collins v. Ansell Inc.*, 2003 WL 22769266 (W.D. Ky. Nov. 19, 2003).....................2, 3

*Commonwealth v. S. Covington & Cincinnati St. Ry. Co.*, 205 S.W. 581 (Ky. Ct. App. 1918).............2

*Damron v. Garrett*, 2019 WL 4565239 (Ky. Ct. App. Sept. 20, 2019)........................7

*Demaree v. Toyota Motor Corp.*, 37 F. Supp. 2d 959 (W.D. Ky. 1999) .....................10

*Exec. Branch Ethics Comm'n v. Grimes*, 710 S.W.3d 8 (Ky. Ct. App. 2025) .............19

*Faesy v. JG 1187, Inc.*, 2015 WL 5178448 (Ky. Ct. App. Sept. 4, 2015)....................2

*Fluke Corp. v. LeMaster*, 306 S.W.3d 55 (Ky. 2010)................................................19

*Franzman v. Wyeth, Inc.*, 451 S.W.3d 676 (Mo. Ct. App. 2014) ...............................18

*Gassaway Constr. Co. v. Gentry*, 264 S.W.2d 658 (Ky. Ct. App. 1954) ....................12

*Graham v. Harlin, Parker & Rudloff*, 664 S.W.2d 945 (Ky. Ct. App. 1983)..............20

*Hansen v. United States*, 7 F.3d 137 (9th Cir. 1993) .................................................7

*Hellmueller Baking Co. v. Risen*, 174 S.W.2d 134 (Ky. Ct. App. 1943).....................12

iii

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

*Hines v. Denny*, 227 S.W. 567 (Ky. Ct. App. 1921) ................................................................ 17

*Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809 (N.D. Cal. 2019) ....................................... 14

*In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262 (S.D.N.Y. 2018) ............ 13

*Jones v. City of Franklin*, 677 Fed. App'x 279 (6th Cir. 2017) ................................................. 3

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991) ................................................. 9

*Lee v. City of Madera*, 2008 WL 5042856 (E.D. Cal. Nov. 21, 2008) ..................................... 10

*Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497 (Ky. 1979) ................ 19

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .................................................................. 7

*Lurry v. PharMerica Corp.*, 2024 WL 2965642 (W.D. Ky. June 12, 2024) ............................ 12

*Lynn Min. Co. v. Kelly*, 394 S.W.2d 755 (Ky. Ct. App. 1965) ................................................ 18

*Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) .............................. 2

*May v. Holzknecht*, 320 S.W.3d 123 (Ky. Ct. App. 2010) ...................................................... 17

*Morales v. Am. Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998) ........................................ 2, 3

*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) .................................................. 6

*Patton v. Bickford*, 529 S.W.3d 717 (Ky. 2016) ...................................................................... 2

*Schall v. Suzuki Motor of Am., Inc.*, 450 F. Supp. 3d 771 (W.D. Ky. 2020) .......................... 3

*Schulz v. Caldwell*, 558 S.W.2d 183 (Ky. Ct. App. 1977) ..................................................... 13

*Snawder v. Cohen*, 749 F. Supp. 1473 (W.D. Ky. 1990) ....................................................... 11

*Snawder v. Cohen*, 804 F. Supp. 910 (W.D. Ky. 1992) ......................................................... 11

*Spencer v. Woods*, 282 S.W.2d 851 (Ky. 1955) .................................................................... 18

*Stewart v. Gen. Motors Corp.*, 102 Fed. App'x 961 (6th Cir. 2004) ..................................... 10

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........ 18

*United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) ............................................................ 8

*Ward v. Cnty. of Siskiyou*, 816 Fed. App'x 51 (9th Cir. 2020) ................................................ 9

*Williams v. Steglinksi*, 2016 WL 1183134 (E.D. Cal. Mar. 28, 2016) .................................... 10

*Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709 (Ky. 2000) ................................................. 19

*Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849 (Ky. 2002) ............ 17

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) .................................................................. 10

**Other Authorities**

Equitable relief, Ky. L. of Damages § 31:8 ................................................................. 18

Fed R. Civ. Proc. 56(c)(2)........................................................................................ 6

Fed. R. Evid. 602 ..................................................................................................... 8

Fed. R. Evid. 801 ..................................................................................................... 8

Fed. R. Evid. 802 ..................................................................................................... 8

Restatement (Second) of Torts, § 402A cmt. j (1965).............................................. 11

Restatement (Second) of Torts, § 431 cmt. a (1965) ............................................... 2

v

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

1

## I.    INTRODUCTION

2    In the introduction to its complaint, Breathitt told the Court that it was "battling an unprecedented

3    mental health crisis" and that, as the "primary providers of mental health services to youth," it and other

4    school districts were forced to expend significant sums to provide "additional mental health resources" to

5    students.  Pls.' First Am. Master Compl. (Local Government and School District) (ECF No. 730) ¶ 197

6    ("Master Compl.").[1]  The Breathitt Opposition not only abandons that claim, but makes clear that Breathitt

7    lacks any evidence that Defendants' actionable conduct caused *any* material harm to Breathitt.  After

8    Defendants established that there is no genuine issue of material fact as to essential elements of Breathitt's

9    claims, the burden shifted to Breathitt to present evidence establishing that a genuine dispute of material

10    fact exists as to whether Defendants' actionable conduct caused Breathitt's alleged harms.  The Breathitt

11    Opposition does nothing of the sort.

12    Breathitt cannot establish a genuine dispute as to specific causation.  Breathitt has not cited any

13    evidence establishing that Defendants' *actionable conduct* caused its alleged harms.  Instead, Breathitt's

14    evidence consists of conclusory and speculative testimony and inadmissible hearsay about "social media"

15    in general or third-party content and conduct that this Court already held cannot be the basis of liability.

16    Nor can Breathitt escape this problem with its failure to warn claim.  Breathitt cites no Kentucky case law

17    supporting the existence of a duty and cites no record evidence whatsoever that it would have acted

18    differently had it been warned.

19    Breathitt likewise fails to establish a genuine dispute on damages.  Kentucky law does not

20    recognize the lost time opportunity costs claimed as past damages here and Breathitt has no evidence

21    establishing its entitlement to any compensable out-of-pocket damages.  Breathitt also cannot recover as

22    future damages expenses related to the 15-year plan created by its expert, Dr. Sharon Hoover, because it

23    cannot show it is reasonably certain to incur those expenses as damages.  Nor can Breathitt recover for

24    the plan as an abatement remedy under Kentucky law.

25

26

27

28    [1] Citations are to the MDL docket (4:22-md-03047-YGR) unless otherwise noted.

1

Finally, the statute of limitations precludes Breathitt's claims: Kentucky's limited discovery rule is inapplicable, and the evidence conclusively establishes that Breathitt knew or should have known about its claims against Defendants at least five years before it filed suit.

## II.    ARGUMENT

### A.    Defendants Are Entitled to Summary Judgment on Causation.

Breathitt does not dispute that, for its negligence and public nuisance claims to survive summary judgment, its evidence must create a genuine dispute of material fact as to specific causation. *See* Breathitt Mot. (ECF No. 2288) 12; Breathitt Opp. (ECF No. 2360) 6. Nor does Breathitt dispute that it must prove that each Defendant's conduct caused its alleged injuries. *See* Breathitt Mot. 12; Om. Opp. (ECF No. 2354) 187–90. Rather than deny its summary judgment burdens outright, its Opposition instead seeks to dilute these burdens by putting forth conclusory arguments based on speculation and inadmissible evidence, which the District claims withstand summary judgment. This is insufficient to meet Breathitt's burden to defeat Defendants' summary judgment motion.

### 1.    Breathitt Understates Its Burden on Summary Judgment.

Kentucky law requires that Breathitt prove causation in fact, or "but for" causation, for its negligence and public nuisance claims. *See Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016) (negligence); *Commonwealth v. S. Covington & Cincinnati St. Ry. Co.*, 205 S.W. 581, 583 (Ky. Ct. App. 1918) (public nuisance). "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent." Restatement (Second) of Torts, § 431 cmt. a (1965). Rather, the "but for" cause must be a "substantial factor" in causing the harm, which requires "the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty (negligence) and the plaintiff's damages." *Patton*, 529 S.W.3d at 731; *see Faesy v. JG 1187, Inc.*, 2015 WL 5178448, at *4 (Ky. Ct. App. Sept. 4, 2015) (upholding summary judgment where "the dangerous propensity of the instrumentality at issue . . . was a condition rather than a legal cause of [plaintiff's] injuries").

Although Breathitt argues that questions of causation are for the jury, the law is clear that "causation should not go to the jury unless the inference of causation is reasonable: it must 'indicate the *probable*, as distinguished from a *possible* cause.'" *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (quoting *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 873 (Ky. Ct. App. 2001)).

2

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

1
2
3
4
5
6
7

Thus, a plaintiff cannot establish causation merely by presenting evidence that a defendant's wrongful conduct *could* have caused the injury. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 521 (6th Cir. 1998); *see also Collins v. Ansell Inc.*, 2003 WL 22769266, at *3 (W.D. Ky. Nov. 19, 2003) ("It is not sufficient, [to prove causation], to present a number of circumstances about which one might theorize as to the cause of the accident.") (quoting *Briner v. Gen. Motors Corp.*, 461 S.W.2d 99, 102 (Ky. 1971)). Rather, a plaintiff must present evidence that directly connects its injury to the specific alleged wrongful conduct, especially when there are multiple potential causes of the plaintiff's injury.[2]

8
9
10
11
12
13
14
15
16
17

Breathitt further claims that, under Kentucky law, "[c]ausation may be proved by circumstantial evidence[.]" *See* Om. Opp. 189 n.8 (quoting *Schall v. Suzuki Motor of Am., Inc.*, 450 F. Supp. 3d 771, 784 (W.D. Ky. 2020)). However, circumstantial evidence may only prove causation if it is "sufficient to tilt the balance from possibility to probability." *Schall*, 450 F. Supp. 3d at 784 (quoting *Morales*, 151 F.3d at 507). Conclusory allegations are insufficient to tilt this balance. *See Cargill v. Greater Salem Baptist Church*, 215 S.W.3d 63, 69 (Ky. Ct. App. 2006) (granting summary judgment where the plaintiff's only evidence was "conclusory allegations based on suspicion and conjecture"); *see also Brown*, 265 F. Supp. 3d at 707 ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (quoting *Jones v. City of Franklin*, 677 Fed. App'x 279, 282 (6th Cir. 2017)).

### 2.    Breathitt's Evidence Does Not Create a Genuine Dispute of Material Fact.

18
19
20
21
22
23

To withstand summary judgment, Breathitt must put forth specific evidence that creates a genuine dispute of material fact as to whether each Defendant's actionable conduct caused Breathitt students to compulsively use Defendants' platforms, and in turn caused Breathitt to incur increased expense. *See* Om. Reply 4–5. Breathitt fails to do so. Rather, all of Breathitt's evidence suffers from at least one, if

24
25
26
27
28

---

[2] *See, e.g.*, *Brown v. Arch Wood Prot., Inc.*, 265 F. Supp. 3d 700, 707–09 (E.D. Ky. 2017) (granting summary judgment on causation where a plaintiff's evidence that defendants' products were used by his employer, "without more, d[id] not make it more likely than not" that defendants' products "were a substantial factor in causing his injuries"); *Bryant v. Tri-County Elec. Membership Corp.*, 844 F. Supp. 347, 354 (W.D. Ky. 1994) (granting summary judgment on causation because "Kentucky law simply does not permit a jury to hold a party liable on the strength of a one-in-six possibility" that the party is liable for plaintiff's injury); *Collins*, 2003 WL 22769266, at *3 (granting summary judgment on causation where the attempted link between defendants' product and plaintiff's injury was based on speculation).

not more, critical shortcomings: (1) the evidence is not specific to Defendants' platforms or at-issue features; (2) the evidence relates to harms indisputably arising from non-actionable third-party content and conduct; and/or (3) the evidence is comprised of conclusory assertions, is hearsay, or is contradictory, and thus is inadmissible.[3]

### a) Breathitt Has No Evidence Relating to Defendants' Platforms or the At-Issue Features.

Almost none of Breathitt's supposed causation evidence is specific to Defendants' platforms and none concerns the at-issue features, which is required to prove Breathitt's claims. *See* Breathitt Opp. 1–3, 7 (citing Breathitt Opp. Ex. 1 (Am. Hoover Breathitt Rebuttal Rep.) (ECF No. 2368-3) ¶¶ 6, 54, 97; Breathitt Opp. Ex. 2 (Hoover Expert Rep.) (ECF No. 2368-4) ¶¶ 3–4; Breathitt Opp. Ex. 10 (Am. Hoover Breathitt Rep.) (ECF No. 2368-12) ¶¶ 10, 47, 50). For example, Dr. Hoover's expert reports are not specific to Defendants' platforms; she analyzed only "social media" generally, and did not differentiate between Defendants' platforms or the at-issue features. *See* 702 GC Mot. Ex. 79 (Aug. 12, 2025 Hoover Dep.) (ECF No. 2298-82) 150:9–154:17. Likewise, the 2021 KIP Survey on which Dr. Hoover and Breathitt rely to demonstrate that Breathitt students compulsively use "social media" does not actually report use of social media alone,[4] let alone use of Defendants' platforms, at all. *See* Breathitt Opp. 2 (citing Breathitt Opp. Ex. 8 (ECF No. 2368-10) (2021 KIP Survey)); Breathitt Opp. 1 Ex. 1 (Am. Hoover Rebuttal Report) (ECF No. 2368-3) ¶ 17 (citing 2021 KIP Survey); *see also* Breathitt Opp. 3 (citing Breathitt Opp. Ex. 12 (ECF No. 2368-14) (2022 parent survey similarly referencing "social media" generally and not reporting use of social media or Defendants' platforms)).

---

[3] Breathitt claims that "Defendants argue that poverty, flooding, and other social challenges are the cause of [Breathitt's] injuries," and "these issues have always existed for school districts" and "do not absolve Defendants of liability." Breathitt Opp. 7. But Defendants make no such argument. Rather, Defendants highlight the "sharp contrast [in] evidence of harms from flooding, the pandemic, and financial mismanagement" compared to the lack of contemporaneous documentary evidence connecting Defendants' actionable conduct to any harms suffered by Breathitt (or its students). Breathitt Mot. 2.

[4] The question on the survey asked, "How often do you check social media *like* Instagram, *Twitter*, Snapchat, TikTok, Facebook *or online gaming platforms*?" Breathitt Opp. Ex. 8 (ECF No. 2368-10) at -1537 (emphases added).

Further, almost none of the deposition testimony or declaration excerpts cited by Breathitt are specific to Defendants' platforms. For example, Phillip Watts, the superintendent, testified only as to "social media" and cell phones and devices generally.[5] And, in the rare instance where a Defendant's platform is mentioned, the testimony or declaration excerpts do not relate to Defendants' actionable conduct. Although Daphne Noble references TikTok in her 30(b)(6) deposition, her testimony related solely to TikTok challenges, which this Court already precluded as a basis of liability. *See* Breathitt Opp. Ex. 7 (D. Noble 30(b)(6) Dep.) (ECF No. 2368-9) 74:7–19; First SD Order (ECF No. 1267) 25. Breathitt's other cited evidence mentioning Defendants' platforms similarly falls short. *See* Breathitt Opp. 2–3, 7–9 (citing Breathitt Opp. Ex. 6 (April 23, 2025 Hall Dep.) (ECF No. 2368-8) 59:10–21 (discussing students "messaging" on Snap and Facebook); Breathitt Opp. Ex. 18 (P. Watts Dep.) (ECF No. 2368-20) 23:2–9, 26:16–20 (discussing students watching YouTube videos); Breathitt Opp. Ex. 20 (McKnight 30(b)(6) Dep.) (ECF No. 2368-22) 148:18–21 (discussing computer software that blocks "websites like Facebook or other social media websites during class"); Breathitt Opp. Ex. 5 (Howard Decl.) (ECF No. 2368-7) ¶ 13 (discussing content of third-party Instagram accounts)); *see also* First SD Order 12–13 (listing the at-issue features). Breathitt has therefore not identified any evidence related to Defendants' actionable conduct.

### b)    Breathitt's Evidence Relates to Third-Party Content and Protected Publishing Activities.

As discussed above, Breathitt's scant evidence mentioning Defendants' platforms relates to third-party content and protected publishing activities that this Court already held cannot be the basis of liability.

---

[5] *See* Breathitt Opp. 2–3, 7–8 (citing Breathitt Opp. Ex. 3 (Watts 30(b)(6) Dep.) (ECF No. 2368-5) 25:25–26:8 (social media (*see* 25:17–26:24)), 63:23–64:4 (devices), 71:23–72:5 (social media), 72:12–16 (social media)); *see also* Breathitt Opp. 1–3, 7–8 (citing Breathitt Opp. Ex. 4 (July 28, 2025 Hall Dep.) (ECF No. 2368-6) 19:4–9 (social media); Breathitt Opp. Ex. 6 (April 23, 2025 Hall Dep.) (ECF No. 2368-8) 56:4–13, 69:11–20, 70:20–71:2 (social media); Breathitt Opp. Ex. 9 (Howard Dep.) (ECF No. 2368-11) 42:5–8 (social media); Breathitt Opp. Ex. 11 (July 29, 2025 D. Noble Dep.) (ECF No. 2368-13) 10:11–15, 40:4–8 (cell phones and social media); Breathitt Opp. Ex. 13 (H. Watts 30(b)(6) Dep.) (ECF No. 2368-15) 33:1–17 (cell phones); Breathitt Opp. Ex. 14 (Howard 30(b)(6) Dep.) (ECF No. 2368-16) 104:1–5, 105:19–23 (social media); Breathitt Opp. Ex. 18 (P. Watts Dep.) (ECF No. 2368-20) 13:22–25 (social media)); Breathitt Opp. 2–3, 8 (citing Breathitt Opp. Ex. 5 (Howard Decl.) (ECF No. 2368-7) ¶¶ 8–11, 19 (discussing social media generally); Breathitt Opp. Ex. 16 (D. Noble Decl.) (ECF No. 2368-18) ¶ 11 (same); Breathitt Opp. Ex. 17 (Hall Decl.) (ECF No. 2368-19) ¶ 11 (same)).

*See* First SD Order 12–13, 25–26; Breathitt Opp. 2–3, 7–9 (citing references to students participating in third-party TikTok challenges (Breathitt Opp. Ex. 7 (D. Noble 30(b)(6) Dep.) (ECF No. 2368-9) 74:14–19), messaging third-party content (Breathitt Opp. Ex. 6 (April 23, 2025 Hall Dep.) (ECF No. 2368-8) 59:10–21), watching third-party content (Breathitt Opp. Ex. 18 (P. Watts Dep.) (ECF No. 2368-20) 23:2–9, 26:16–20), and interacting with third-party content (Breathitt Opp. Ex. 5 (Howard Decl.) (ECF No. 2368-7) ¶ 13)).  Breathitt also cites Kera Howard's testimony and declaration, but at her deposition, Ms. Howard testified that 95 to 98 percent of social media issues facing Breathitt involve third-party content. Breathitt Mot. Ex. 11 (Howard Dep.) (Breathitt ECF No. 45-13) 44:15–45:6; *see also* Reply Ex. 1 (Howard 30(b)(6) Dep.) 105:17–113:13 (discussing incidents directly related to harmful content posted by third parties).  She also testified that the remaining 2 to 5 percent related to viral challenges (Breathitt Mot. Ex. 11 (Howard Dep.) (Breathitt ECF No. 45-13) 44:15–45:6), which, as discussed above, cannot be a basis for Defendants' liability.  This is consistent with the testimony cited by Breathitt in its Opposition, where Ms. Howard discussed students showing others content on a "social media platform," including posts and communications from third parties.  *See* Reply Ex. 1 (Howard 30(b)(6) Dep.) 105:19–106:4; Breathitt Opp. 3 (citing Breathitt Opp. Ex. 14 (Howard 30(b)(6) Dep.) (ECF No. 2368-16) 105:19–23).  Likewise, the portions of Ms. Howard's declaration cited by Breathitt show that the social-media related issues pertain to harms from third-party content.  *See* Breathitt Opp. 3, 8 (citing Breathitt Opp. Ex. 5 (Howard Decl.) (ECF No. 2368-7) ¶¶ 9 (discussing "cyberbullying, exclusion, and constant social comparison"), 10–11 (discussing "bullying and harassment that occurs on social media platforms"), 13 (discussing third-party content from anonymous bullying and social media "fight" accounts)).[6]

### c)    Breathitt's Evidence Is Inadmissible.

---

[6] Ms. Howard's testimony is consistent with that of other Breathitt witnesses, who testified that the social-media issues facing Breathitt involve third-party content. *See, e.g.*, Reply Ex. 5 (July 28, 2025 Hall Dep.) 28:21–31:9 (testifying that students' "issue[s] related to social media" involve interruption of instructional time "if something comes up[,]" such as bullying, "inappropriate comments, inappropriate images, [and] those types of things being transmitted"); Reply Ex. 4 (July 29, 2025 D. Noble Dep.) 37:13–38:9, 41:5–19 (social media concerns include students "complaining about so-and-so posting something on social media about them" and "say[ing] hurtful things on a social media platform about other students").

Much of Breathitt's cited evidence cannot be relied upon at summary judgment because it is inadmissible in that it relies on conclusory assertions, is contradictory, or is hearsay. *See* Fed R. Civ. P. 56(c)(2); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *see also* Breathitt Mot. 23, 29. Indeed, other than the 2021 KIP Survey (Breathitt Opp. Ex. 8 (ECF No. 2368-10)) and the 2022 parent survey (Breathitt Opp. Ex. 12 (ECF No. 2368-14)) referenced above, Breathitt fails to cite any contemporaneous or documentary evidence in support of its claims, instead relying almost exclusively on self-serving, after-the-fact deposition and declaration testimony.

**Conclusory Testimony.** The testimony Breathitt relies on is overwhelmingly conclusory and so cannot create a genuine dispute. For example, to support Breathitt's claim that Defendants' platforms cause its alleged injuries, Breathitt cites testimony that "most of the problems that teachers talk about . . . stem from social media." Breathitt Opp. 8 (citing Breathitt Opp. Ex. 3 (P. Watts 30(b)(6) Dep.) (ECF No. 2368-5) 71:23–72:5); *see also id.* at 2 (citing Breathitt Opp. Ex. 4 (July 28, 2025 Hall Dep.) (ECF No. 2368-6) 19:4–9 ("[N]early every fifth and six grader student who walks into our schools is dealing with an issue related to social media.")); Breathitt Opp. Ex. 6 (April 23, 2025 Hall Dep.) (ECF No. 2368-8) 70:20–71:2 (testifying that students "spend way too much time on these platforms")). Without more, these statements are merely bareboned recitations of Breathitt's claims. *See Damron v. Garrett*, 2019 WL 4565239, at *3 (Ky. Ct. App. Sept. 20, 2019) (Conclusory evidence exists in the form of arguments or conclusions with "no proof in support of [that] position."). But "[t]he object of [evidence at summary judgment] is not to replace conclusory allegations of the complaint . . . with conclusory allegations" in testimony or affidavits. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). This type of evidence cannot survive summary judgment; to hold otherwise would be to "convert[] the operation of [summary judgment] to a circular promenade" where a plaintiff makes "general allegations of injury" in their complaint; defendant contests "existence of specific facts to support injury"; and plaintiff responds with "general allegation of injury" in deposition or affidavit testimony. *Id.* at 889; *see Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

**Hearsay.** Breathitt also repeatedly relies on inadmissible testimony from unidentified third parties. For example, Breathitt cites Superintendent Watts' testimony and declaration to support that social media is a daily problem for Breathitt. *See* Breathitt Opp. 2–3, 5. But Superintendent Watts testified that this opinion was based on "conversations with administrators and teachers." Reply Ex. 2 (July 28, 2025 P. Watts Dep.) 60:24–61:21; *see also* Reply Ex. 3 (April 22, 2025 30(b)(6) P. Watts Dep.) 68:13–69:6 (testifying about "conversations" where he "hear[d] about the complaints" regarding social media). Similarly, Breathitt cites to Will Noble's declaration to claim that social media caused Breathitt to employ more technology staff (Breathitt Opp. 10); however, Mr. Noble confirmed this opinion is based only on "conversations" with staff. *See* Breathitt Mot. Ex. 22 (July 28, 2025 W. Noble Dep.) (Breathitt ECF No. 45-24) 20:7–21:12. Likewise, Daphne Noble, whose declaration Breathitt cites for support that students' use of Defendants' platforms disrupts Breathitt classrooms (Breathitt Opp. 7), repeatedly testified that her opinions were based on conversations with unidentified staff and students. *See* Reply Ex. 4 (July 29, 2025 D. Noble Dep.) 8:18–9:1 (testifying that her affidavit was prepared based "on conversations, debrief[s] with assistant principals, things of that nature"), 17:24–18:9 (testifying that her time-spent estimate as to developing the social media policy was based on "reflect[ions] on our conversations with assistant principals"), 58:1–9 (testifying that her time-spent estimates as to assistant principals addressing social media issues were based on "conversations"); Breathitt Mot. Ex. 20 (July 29, 2025 D. Noble Dep.) (Breathitt ECF No. 45-22) 46:8–47:7 (similarly testifying as to staff time-spent estimates); *see also* Reply Ex. 5 (July 28, 2025 Hall Dep.) 58:21–60:7 (similarly testifying that the only basis for his time-spent estimates was "conversations" with principals).

All of this testimony is inadmissible as hearsay and for lack of personal knowledge and should be disregarded. *See* Fed. R. Evid. 602, 801–02; *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (abuse of discretion to consider testimony at summary judgment where affiant "was not personally involved in any of the disciplinary suspensions" and "did not personally review any business records containing information regarding such disciplinary suspensions" but instead relied on information provided by others); *United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir. 1970) (summary judgment cannot be predicated on affidavits that do not "show affirmatively that the affiant is competent to testify to the matters stated therein"). Further, Breathitt may not avoid summary judgment by reference to the

unrecorded interviews of unidentified Breathitt "key informants" discussed in Dr. Hoover's report. While it is true that experts may sometimes "rely on hearsay" to form their opinions (Breathitt Opp. 10), Breathitt cannot use hearsay to avoid summary judgment where, as here, (i) it is offered for the truth of the matter asserted and (ii) the declarants are not identified. *See* Om. Reply 11.

**The Sham Howard Affidavit.** Lastly, Ms. Howard's declaration (Breathitt Opp. Ex. 5 (ECF No. 2368-7))—which forms the primary foundation of Breathitt's summary judgment opposition—should also be disregarded. First, it should be disregarded as a sham. A party cannot create a genuine issue of fact by submitting a declaration that contradicts sworn deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Ms. Howard's declaration clearly and unambiguously contradicts her prior sworn testimony. In her deposition as a Rule 30(b)(6) corporate representative, Ms. Howard repeatedly testified that the only mental health harms Breathitt was able to identify were caused by harmful content posted by third parties—specifically, that "what another kid is saying" or "spread[ing]" about a student, the posting of "nude" or "inappropriate" pictures, a "gay pride poster," a "trust[/]do not trust list," "videos of fight[s]," "threats," and "cyberbullying" represented a "*complete list* of the "social media-related issues" faced by Breathitt. Reply Ex. 1 (Howard 30(b)(6) Dep.) 105:17–113:13 (emphasis added).[7] Similarly, in her personal deposition, Ms. Howard was asked to identify "[a]ny issues around social media" that caused problems for Breathitt students. Reply Ex. 6 (Howard Dep.) 43:5–7. In response, she testified that 100 percent of the social media issues facing Breathitt involve third-party content and viral challenges. Breathitt Mot. Ex. 11 (Breathitt ECF No. 45-13) 44:15–22 (attributing 95 to 98 percent of issues to "content" and the remaining portion to viral challenges); *see also id.* at 44:23–45:6 (agreeing that these were "the only social media issues" Breathitt faced).

In sharp contrast, Ms. Howard's subsequent declaration asserts that students are addicted to social media; that they suffer from sleep deprivation, anxiety, and depression as a result of social media; and that

---

[7] Ms. Howard's testimony relates specifically to the 200 to 220 students that Breathitt estimated "have been seen due to issues explicitly relating to social media." Breathitt Mot. Ex. 7 (Howard 30(b)(6) Dep.) (Breathitt ECF No. 45-9) 103:11–104:5. While Breathitt asserts that "this number captures only a fraction of the problem" (Breathitt Opp. 3), the fact remains that Breathitt has not come forward with any other evidence "of [its] student body receiving mental health services" as a result of Defendants' conduct. Breathitt Mot. Ex. 7 (Howard 30(b)(6) Dep.) (Breathitt ECF No. 45-9) 103:11–104:5.

social media use is compulsive and problematic in itself. *See* Reply Ex. 7 (Nov. 7, 2025 Howard Decl.) ¶¶ 8–11, 16. These statements plainly contradict her unambiguous prior sworn deposition testimony. Given that Ms. Howard was examined at length in her deposition and acted as Breathitt's designated corporate representative, this is precisely the type of contradiction that the sham affidavit rule is designed to prevent. *See, e.g.*, *Ward v. Cnty. of Siskiyou*, 816 Fed. App'x 51, 54 (9th Cir. 2020) (upholding the application of the sham affidavit rule where "there were unambiguous inconsistencies between [plaintiff's] deposition testimony and his declaration"); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (similar). The Court should thus ignore Ms. Howard's declaration in its entirety.

Second, even if Ms. Howard's declaration were admissible, it cannot establish causation because it is an improper lay opinion that social media caused students' mental health issues. At deposition, Ms. Howard agreed that she is "not in a position to say what caused any student's mental health issues." Breathitt Mot. Ex. 11 (Howard Dep.) (Breathitt ECF No. 45-13) 27:7–28:3. Yet that is exactly what she attempts to do in her declaration. *See, e.g.*, Reply Ex. 7 (Nov. 7, 2025 Howard Decl.) ¶ 11 (opining that "students experience negative mental health impacts directly tied to their use of social media"). A lay witness, like Ms. Howard, "may not testify regarding a diagnosis, opinions, inferences or causation," or offer her opinion as to the features responsible for students' alleged compulsive use. *See Williams v. Steglinksi*, 2016 WL 1183134, at *1 (E.D. Cal. Mar. 28, 2016); *see also Lee v. City of Madera*, 2008 WL 5042856, at *4 (E.D. Cal. Nov. 21, 2008) ("[A] lay witness cannot offer testimony to establish a legal conclusion."). Thus, the Court should ignore Ms. Howard's declaration.

## B. Breathitt's Failure to Warn Arguments Are Unavailing.

For the reasons explained in Defendants' Omnibus Reply, Defendants (i) did not owe Breathitt a duty to warn it that it might suffer downstream economic harms resulting from its students' use of their platforms and (ii) did not owe a duty to warn parents and students that is enforceable by Breathitt. Om. Reply 14–19. For these fundamental reasons, and the additional reasons explained below, Breathitt's failure to warn arguments cannot save its claims from summary judgment for Defendants.

Although Breathitt asserts that it "[w]ould [h]ave [a]cted [d]ifferently [i]f [w]arned" (Breathitt Opp. 11), it does not cite *any record evidence* in support of that claim. Without any evidence that a warning to Breathitt would have changed anything, Breathitt cannot possibly establish that Defendants'

alleged failure to warn caused it any injury. Om. Reply 11–13; *see Stewart v. Gen. Motors Corp.*, 102 Fed. App'x 961, 965 (6th Cir. 2004) (upholding summary judgment where plaintiff "failed to demonstrate causation because she has not presented evidence" that a different warning would have changed the outcome of plaintiff's injury); *Demaree v. Toyota Motor Corp.*, 37 F. Supp. 2d 959, 968 (W.D. Ky. 1999) (granting summary judgment on a failure to warn claim in part because there was no genuine dispute of material "as to what different behavior the plaintiff would have engaged in had she been warned").

In an attempt to escape this conclusion, Breathitt argues that it is entitled to a heeding presumption, but Breathitt fails to cite any Kentucky case law that applies a heeding presumption in a case (such as this) where the plaintiff is claiming purely economic injuries. Instead, Breathitt's only support for that assertion is *Snawder v. Cohen*, which involved severe *physical injury* (polio from an oral vaccine). *See* Breathitt Opp. 12 (citing 804 F. Supp. 910, 911 (W.D. Ky. 1992)). *Snawder* grounded its adoption of the presumption in Comment J to § 402A of the Second Restatement, which similarly applies the presumption to situations involving *physical injury*, such as warning of allergic reactions to ingredients or poisonous drugs. *See Snawder*, 804 F. Supp. at 911 (citing *Snawder v. Cohen*, 749 F. Supp. 1473, 1479 (W.D. Ky. 1990) ("Kentucky has adopted § 402A [cmt. j] of the Restatement of Torts 2d.")).[8] Breathitt's claims do not involve allegations of physical injury, and thus Breathitt's request would require extending the presumption beyond its intended scope.

Moreover, even if the heeding presumption applied, Breathitt provided no evidence that a different warning would have altered Breathitt's actions. *See, e.g.*, *Snawder*, 749 F. Supp. at 1479 ("the presumption may be rebutted by the manufacturer's presentation of evidence showing that . . . a different warning would not have altered the plaintiff's decision"). Breathitt has been on notice of the supposed harms associated with Defendants' platforms at least since the time it filed its lawsuit more than 30 months ago. But there is no evidence that such notice has altered Breathitt's policies or practices related to social media—or even cell phones generally—in any material way. Breathitt has not told students or parents to stop using Defendants' platforms or itself provided any warnings to parents or students. To the contrary,

---

[8] *Snawder* analyzed a renewed motion for summary judgment where the court had previously adopted the heeding presumption based on the Restatement (Second) of Torts, § 402A cmt. j (1965).

Breathitt has maintained its Facebook and Instagram pages to communicate with families and students (Breathitt Mot. Ex. 33 (March 11, 2025 D. Noble Dep.) (Breathitt ECF No. 45-36) 7:25–10:10), has encouraged students (and parents) to engage over Facebook even after filing this lawsuit (Reply Ex. 8 (April 23, 2025 Hall Dep.) 43:1–6), has enabled YouTube as part of Google Workspace for Education and uses YouTube with restrictions "to help enhance [Breathitt's] instruction in the building," (Reply Ex. 9 (April 23, 2025 Hall 30(b)(6) Dep.) 9:18–10:5, 11:3–16:17), currently allows teachers to *direct students* to watch YouTube videos as part of classroom work (*id.* at 15:10–16:6), and obtains express permission from parents for their students to access YouTube (*id.* at 16:7–17). To date, Breathitt has never instituted a district-wide social media policy, and its current district-wide cell phone policy does not ban student cell phone or social media use in its schools. *See* Reply Ex. 10 (March 11, 2025 D. Noble 30(b)(6) Dep.) 23:15–24:13.

Breathitt also erroneously asserts that it may premise its claim based on Defendants' alleged failure to provide warnings to students and parents. For the reasons explained in Defendants' Omnibus Reply, that is incorrect as a matter of law. Om. Reply 18–19. Moreover, Breathitt does not argue that it is entitled to a presumption that parents and students would have acted differently if they had been warned in a manner different than the warnings they otherwise received, or that any such warning would have resulted in fewer harms to Breathitt. Nor could it, as no case anywhere recognizes a presumption that a plaintiff's harm could have been avoided by providing a warning to non-parties. Because Breathitt fails to come forward with *any record evidence* that a warning to parents or students (either by it or by Defendants) would have reduced its alleged economic injury, these allegations cannot save Breathitt's claims from summary judgment on causation grounds.

### C.    Defendants Are Entitled to Summary Judgment on Past Damages.

#### 1.    Breathitt Is Not Entitled to Lost Time Damages as a Matter of Law.

Kentucky law does not recognize lost time and opportunity costs as damages except in instances where a plaintiff can demonstrate loss of specific earnings. *See, e.g.*, *Gassaway Constr. Co. v. Gentry*, 264 S.W.2d 658, 659 (Ky. Ct. App. 1954) (finding that lost time damages were not recoverable where plaintiff "failed to show any loss of specific earnings as a result of her injury"); *Hellmueller Baking Co.*

12

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

*v. Risen*, 174 S.W.2d 134, 137 (Ky. Ct. App. 1943) (approving jury instruction that "loss of time" permitted only where "the proof showed that [plaintiff] did lose time depriving him of earning capacity").

The cases cited by Breathitt do not support a contrary rule. Breathitt cites *Lurry v. PharMerica Corp.*, 2024 WL 2965642, at *3 (W.D. Ky. June 12, 2024), for the proposition that "lost time and opportunity costs associated with attempting to mitigate the actual consequences of defendant's conduct" are recoverable damages. Om. Opp. 202. However, in *Lurry*, the court held only that allegations of lost time and opportunity costs while mitigating the consequences of a data breach were "sufficient to state a claim at the motion to dismiss stage." *Lurry*, 2024 WL 2965642, at *3. Nowhere does this case indicate that a plaintiff can survive summary judgment on the damages element of its claims *without* demonstrating some actual out-of-pocket loss. Likewise, in *Schulz v. Caldwell*, the plaintiff put forth evidence of loss of specific earnings from her partnership profits. 558 S.W.2d 183, 187 (Ky. Ct. App. 1977); *see also* Om. Opp. 202 (citing *Schulz*). At least one court applying Kentucky law rejected attempts to adopt "a more expansive definition of 'lost time' under Kentucky law…." *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 314–15 n.48 (S.D.N.Y. 2018). Here, Breathitt's "lost time" damages are entirely speculative and divorced from any actual monetary loss. *See* Breathitt Mot. 21–22. Thus, the Court should grant summary judgment as to these damages.

### 2.    Breathitt's Evidence of Lost Time Damages Fails.

Even if the Court permitted Breathitt to recover lost time damages, Breathitt's evidence cannot withstand summary judgment. To support its lost time damages claim, Breathitt cites Dr. Klein's survey of Breathitt staff, Will Noble's declaration and deposition, and Dr. Ward's opinion. Breathitt Opp. 10. None of this evidence carries the day for Breathitt.

Dr. Klein's survey is not specific to Defendants' platforms or the at-issue features. Dr. Klein asked survey respondents only about "student use of social media (e.g., Facebook, Instagram, Snapchat, TikTok, YouTube, etc.)." Breathitt Mot. Ex. 13 (Klein Rep.) (Breathitt ECF No. 45-15) ¶¶ 32–36; *see also id.* ¶¶ 14, 38. Additionally, it is based on an unreliable methodology and therefore inadmissible. *See* 702 SD Mot. (ECF No. 2297-1) III.B; Om. Reply 20.

Dr. Ward's opinion, which relies on declarations from Ms. Noble, Mr. Hall, Mr. Noble, and Superintendent Watts, suffers from the same deficiencies and more. As discussed above in relation to Dr.

Hoover's report, Breathitt's experts cannot take hearsay at face value to avoid summary judgment where, as here, it is offered for the truth of the matter asserted (and often involves multiple layers of hearsay). *See* Om. Reply 11. Further, almost none of the declarations are specific to Defendants' platforms and none are specific to Defendants' at-issue features. And all of the declarants' estimates were based purely on speculation or hearsay and no actual information or data. *See* Breathitt Mot. Ex. 20 (July 29, 2025 D. Noble Dep.) (Breathitt ECF No. 45-22) 46:8–47:12; Breathitt Mot. Ex. 21 (July 28, 2025 Hall Dep.) (Breathitt ECF No. 45-23) 40:2–41:4, 43:6–16; Breathitt Mot. Ex. 22 (July 28, 2025 W. Noble Dep.) (Breathitt ECF No. 45-24) 20:7-21:5; Breathitt Mot. Ex. 19 (July 28, 2025 P. Watts Dep.) (Breathitt ECF No. 45-21) 42:12–45:17; *see also Carr v. United States*, 28 F. Supp. 236, 241 (W.D. Ky. 1939) ("[D]amages . . . that are speculative, remote, [or] uncertain may not form the basis of a lawful judgment . . . . The speculations, guesses, [and] estimates of witnesses[] form no better basis of recovery than the speculations of the jury themselves.").

Finally, Mr. Noble's declaration is based on inadmissible hearsay. Breathitt Mot. Ex. 22 (July 28, 2025 W. Noble Dep.) (Breathitt ECF No. 45-24) 20:7–21:5; *see Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221, 1231–32 (E.D. Cal. 2023) (declining to consider hearsay within a declaration at summary judgment because no individual was identified as the declarant).[9]

### 3.    Breathitt's Claim for Costs Cannot Withstand Summary Judgment.

In its complaint, Breathitt told the Court that it was "battling an unprecedented mental health crisis" and that, as the "primary providers of mental health services to youth," it and other school districts were forced to expend significant sums to provide "additional mental health resources" to students. Master Compl. ¶ 197. Breathitt now abandons any claim that it incurred any out-of-pocket expenses for

---

[9] Breathitt argues that Defendants waived this argument because it was raised in a footnote. *See* Breathitt Opp. 10 (citing *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019)). While arguments "raised only in footnotes . . . are generally deemed waived" (*Holley*, 379 F. Supp. 3d at 834 (quotations omitted)), Defendants did not raise the hearsay argument *only* in a footnote. *See, e.g.*, Breathitt Mot. 22–23 (arguing that Breathitt's lost-time evidence cannot withstand summary judgment, in part, because it is "typically in the form of hearsay statements by individuals lacking personal knowledge").

"expanded mental health resources." Om. Opp. 198.[10]  Instead, Breathitt claims *less than $63,000 in costs* to purchase cellphone caddies, online safety programs, and computer software systems as the *only out-of-pocket expenditures* it incurred *over a ten-year period* (in comparison to the $2.2–3 *million* Breathitt seeks in other past damages and the over $60 *million* Breathitt seeks as part of Dr. Hoover's 15-year plan).  This conclusively refutes any assertion that Defendants' conduct caused any material harm to Breathitt.

Even as to these minor expenses, Breathitt's evidence is insufficient to create a genuine issue of material fact on summary judgment.  Like Breathitt's other evidence, its evidence of out-of-pocket expenditures is either not specific to Defendants' platforms or at-issue features, pertains to third-party content and protected publishing activities, and/or is inadmissible as conclusory or hearsay.[11]

**Cell Phone Caddies.**  Breathitt seeks less than $2000 for the purchase of cell phone caddies.  Om. Opp. 196 n.12.  To support its assertion that Defendants' platforms caused Breathitt to change its cell phone policy, which now also requires students to store cell phones in caddies and pouches during instructional time, Breathitt cites to Dr. Hoover's expert report, which states that social media required Breathitt "to expend and redirect already limited resources."  Breathitt Opp. 3 (citing Breathitt Opp. Ex. 10 (Hoover Am. Report) (ECF No. 2368-12) ¶ 4).  Not only is this conclusory, Dr. Hoover's report for Breathitt does not attribute costs for phone caddies to Defendants' platforms or at-issue features.  And, as previously discussed, Dr. Hoover relies on hearsay from interviews with unidentified witnesses to support this claim.  *See* Om. Reply 11; *Blackshire*, 648 F. Supp. 3d at 1231–32.  Additionally, neither the declaration nor the deposition testimony cited by Breathitt on this point attribute any cell phone policy updates to particular social media platforms or any of Defendants' at-issue features.  *See* Breathitt Opp. 4 (citing Breathitt Opp. Ex. 16 (D. Noble Decl.) (ECF No. 2368-18) ¶¶ 7–8; Breathitt Opp. Ex. 17 (Hall

---

[10] Breathitt also abandons any claims for property damage resulting from viral challenges.  *See* Breathitt Mot. 27 (arguing that Breathitt cannot recover property damage resulting from third-party acts); Om. Opp. 195–99 (not claiming property damage among Breathitt's "hard costs").

[11] Breathitt says that these costs "were independently reviewed and confirmed" by their expert Dr. Meyers. Breathitt Opp. 9 (citing Breathitt Opp. Ex. 23 (Meyers Rep.) (ECF No. 2368-25) ¶¶ 1, 14, 20–24). However, Dr. Meyers confirmed at deposition that his opinion (1) does not attribute these costs to Defendants' platforms (or any cause in particular) and (2) that he did not take any steps to validate the accuracy of these claimed costs.  *See* 702 SD Mot. Ex. 68 (August 22, 2025 Meyers Dep.) (ECF No. 2297-71) 132:15–133:4, 136:14–137:3.

Decl.) (ECF No. 2368-19) ¶ 8; Breathitt Opp. Ex. 7 (D. Noble 30(b)(6) Dep.) (ECF No. 2368-9) 58:12–15; Breathitt Opp. Ex. 18 (P. Watts Dep.) (ECF No. 2368-20) 16:9–14.  Indeed, nothing in the record, including Dr. Hoover's report, ties the purchase of these caddies to Defendants' actionable conduct.

**Online Safety Programs.**  Breathitt next seeks to recover less than $10,000 for payments to three vendors who provided online safety programs for students.  Om. Opp. 197.  Breathitt again cites conclusory evidence from Dr. Hoover that is not limited to Defendants' platforms or at-issue features.  Breathitt Opp. 4 (citing Breathitt Opp. Ex. 10 (Am. Hoover Report) (ECF No. 2368-12) ¶ 32).  Additionally, the declaration and deposition testimony cited by Breathitt make clear that these online safety efforts are not limited to Defendants' platforms and are centered around problematic third-party content, not Defendants' at-issue features.  *See, e.g.*, Breathitt Opp. 3–4 (citing Breathitt Opp. Ex. 5 (Howard Decl.) (ECF No. 2368-7) ¶ 19 (discussing how she hosts restorative groups because students sometimes need emotional support "tied to social media conflicts involving multiple individuals and complex dynamics"); Breathitt Opp. Ex. 3 (P. Watts 30(b)(6) Dep.) (ECF No. 2368-5) 46:23–47:14 (online safety efforts, like cyber safety week, relate generally to "social media")); *see also* Breathitt Mot. Ex. 19 (July 28, 2025 P. Watts Dep.) (Breathitt ECF No. 45-21) 31:6–18 (discussing how Breathitt's cyber safety week is about online safety and cyberbullying content from third parties).  No evidence supports the assertion that any of these vendors were hired as a result of Defendants' actionable conduct.

**Software Systems.**  Breathitt further claims approximately $45,000 for implementing a software system called Hapara, as well as less than $3,000 for two additional software systems, based on estimates that between 25% and 75% of the costs for these programs are "attributable to social media."

But Breathitt's witness admitted that these percentages are based on nothing more than speculation.  *See* Breathitt Mot. Ex. 19 (July 28, 2025 P. Watts Dep.) (Breathitt ECF No. 45-21) 26:11–27:5 (no data or information supporting his 75% allocation of damages for Hapara to Defendants' platforms), 30:4–20 (no data or information supporting his 50% estimate for Eduspire/E-Hallpass); Reply Ex. 2 (July 28, 2025 P. Watts Dep.) 33:10–22 (no data or information supporting his 25% estimate for Securly).  Therefore, this evidence is inadmissible to prove damages.  *See Carr*, 28 F. Supp. at 241 ("The speculations, guesses, [and] estimates of witnesses[] form no better basis of recovery than the speculations of the jury themselves.").

Moreover, Breathitt's evidence does not demonstrate that Breathitt incurred any of these expenses because of Defendants' platforms or at-issue features. Hapara is a general "monitoring system for teachers to observe students while they're on their Chromebooks or devices." Reply Ex. 11 (July 28, 2025 W. Noble Dep.) 13:11–20. It is not limited to Defendants' platforms or even social media generally. Reply Ex. 12 (McKnight 30(b)(6)) 148:16–150:7 (testifying that the monitoring software is "presumably" used to block students' access to video games, gambling websites, and pornography). The same is true of Breathitt's use of E-Hallpass, which is "a way for [Breathitt] to document who's gone at what time" for things like using the bathroom. Reply Ex. 2 (July 28, 2025 P. Watts Dep.) 29:1–30:20; *see also id.* at 33:10–22 (testifying that prior testimony about E-Hallpass applied to Securly). And, again, Dr. Hoover's opinion that these costs are attributable to Defendants' platforms is conclusory and based on inadmissible hearsay. *See* Om. Reply 11; *Blackshire*, 648 F. Supp. 3d at 1231–32. In short, there is no competent evidence tying Breathitt's purchase of these three software programs to Defendants' actionable conduct.

## D.    Breathitt Cannot Recover the Hoover Plan as Future Damages.

Defendants are also entitled to summary judgment as to Breathitt's future damages claims. Kentucky law permits a plaintiff to recover for future damages only where there is evidence establishing those damages with reasonable certainty. *May v. Holzknecht*, 320 S.W.3d 123, 128 (Ky. Ct. App. 2010) The damages claimed "should be capable of being definitely ascertained," and recovery is prohibited where damages "are so speculative and dependent upon numerous and changing contingencies that their amount is not susceptible of actual proof . . . ." *Hines v. Denny*, 227 S.W. 567, 570 (Ky. Ct. App. 1921). Thus, future damages have been awarded for the consequences of existing injuries, such as future pain and suffering, medical expenses, or lost profits, contingent upon the plaintiff providing evidence that these costs are reasonably certain to occur. *See May*, 320 S.W.3d at 128 (future pain and suffering); *Wood v. Wyeth-Ayerst Labs., Div. of Am. Home Prods.*, 82 S.W.3d 849, 856 (Ky. 2002) (future medical damages); *Hines*, 227 S.W. at 570 (future lost profits).

Breathitt's claimed future damages are not comparable to the types of future damages typically awarded under Kentucky law, which all pertain to *past* injuries. For example, in *May*, the court permitted damages for future pain and suffering where there was already evidence of *past* pain and suffering. 329 S.W.3d at 125, 128. But Breathitt does not claim future damages stemming directly from the same past

injury. Rather, to support its claim of future damages, Breathitt cites Dr. Hoover's 15-year plan, which is a plan of *optional* and *recommended* expenses to fund programs for *all* students' mental health, regardless of any connection to social media, Defendants' platforms, or Defendants' actionable conduct. These expenses are not "reasonably certain" to occur—they are expenses that Dr. Hoover believes would be "best practices" for Breathitt to implement. *See* Breathitt Mot. Ex. 27 (August 13, 2025 Hoover Dep.) (Breathitt ECF No. 45-29) 605:23–607:16, 612:7–23, 806:22–807:6. These expenses are contingent on a multitude of uncertain factors, including whether Breathitt *chooses* to implement them, whether Defendants' platforms and at-issue features continue to exist (and whether Breathitt students continue to use them), and any number of events that could allegedly impact Breathitt students' mental health. Thus, these optional expenses are not recoverable as future damages under Kentucky law. *See, e.g.*, *Classic Country Land, LLC v. Eversole*, 2019 WL 13210645, at *3 (E.D. Ky. July 26, 2019) ("[T]he law of Kentucky states that 'uncertain, contingent, and speculative damages cannot be recovered.'") (quoting *Spencer v. Woods*, 282 S.W.2d 851, 852 (Ky. 1955)).

### E. The Hoover Plan is Not a Proper Abatement Remedy Under Kentucky Law.

While Breathitt cites the generalized discussion about abatement in the Omnibus Opposition, it does not cite any Kentucky law permitting an abatement plan like the one it seeks. *See* Breathitt Mot. 28 (explaining abatement remedies under Kentucky law); Om. Opp. 210–15 (failing to address Kentucky authorities). In Kentucky, abatement remedies are limited to injunctions directing an offending party to cease the alleged nuisance-causing conduct. *See, e.g.*, Equitable relief, Ky. L. of Damages § 31:8 (collecting cases equating abating the nuisance with enjoining the offending conduct). Breathitt's purported "abatement" plan is entirely divorced from Kentucky law. It does not require Defendants to change how they design, operate, or market their platforms in general or for youth specifically. Nor is the plan tied to the harms allegedly resulting from Defendants' actionable conduct. *See* Breathitt Mot. 29–31. Because the Hoover plan is not a permissible abatement remedy under Kentucky law, summary judgment is warranted.

### F. Breathitt's Claims are Barred by Kentucky's Statute of Limitations.

Breathitt does not dispute that Kentucky applies a one-year statute of limitations to negligence claims and a five-year statute of limitations to nuisance claims. *See* Breathitt Mot. 38 (citing KRS

18

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

413.140(1)(a); *Franzman v. Wyeth, Inc.*, 451 S.W.3d 676, 692 (Mo. Ct. App. 2014) (applying Kentucky law); *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 757 (Ky. Ct. App. 1965)); Breathitt Opp. 13–14. Instead, Breathitt asks the Court to stretch Kentucky's limited discovery rule beyond its scope and criticizes Defendants for not pinpointing a specific date by which the (inapplicable) discovery rule stopped tolling the statute of limitations—a request not supported by Kentucky case law. Regardless of which statute of limitation applies, and regardless of whether the discovery rule applies, Breathitt's claims accrued more than five years before it filed suit on March 30, 2023. Therefore, summary judgment is appropriate.[12]

### 1. The Discovery Rule is Inapplicable Under Kentucky Law.

"Generally, a cause of action accrues when the injury occurs." *Exec. Branch Ethics Comm'n v. Grimes*, 710 S.W.3d 8, 16 (Ky. Ct. App. 2025) (cleaned up). Kentucky courts apply the discovery rule in only limited categories of cases and are hesitant to expand its reach. *See id.* at 17. The limited circumstances where Kentucky recognizes the discovery rule do not apply here, and the cases cited by Breathitt do not support a contrary rule. *See* Breathitt Opp. 13 (citing *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 499 (Ky. 1979) (extending discovery rule narrowly to "tort actions for injury resulting from a latent disease caused by exposure to a harmful substance" like asbestos); *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 56 (Ky. 2010) (refusing "to extend application of the discovery rule to cases not involving latent injuries, latent illnesses, or professional malpractice")). Unlike the injuries in the cited cases, Breathitt's alleged injury was neither latent nor unknowable, according to its own evidence.

### 2. Even if the Discovery Rule Applies, There Is No Genuine Dispute of Material Fact that Breathitt's Negligence and Public Nuisance Claims Have Expired.

Even if the discovery rule applied, Breathitt's own allegations and testimony show that it knew (or should have known) "(1) [that it] has been wronged, and (2) by whom the wrong has been committed" (*Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000)) more than five years before filing suit.

---

[12] While Breathitt asserts in passing that the Court should "strike this argument" (Breathitt Opp. 13), it identifies no prejudice resulting from Defendants' failure to include reference to it in a premotion letter. And judicial economy would not be served by trying untimely claims.

Contrary to Breathitt's arguments, Breathitt's cited authorities do not require Defendants to pinpoint a specific date on which the statute of limitations began to run. Rather, they stand for the undisputed proposition that defendants have the initial burden to demonstrate that the statute of limitations has run. But Defendants "need not show the precise date upon which [a plaintiff] reasonably should have discovered their cause of action." *Abel v. Austin*, 411 S.W.3d 728, 739 (Ky. 2013); *see also Graham v. Harlin, Parker & Rudloff*, 664 S.W.2d 945, 947 (Ky. Ct. App. 1983) (statute of limitations had begun running "[a]lthough the exact date [was] not pinpointed").

The evidence previously cited by Defendants makes clear that Breathitt has been aware of its harms since before the 2016 school year—approximately seven years before filing suit. *See* Breathitt Mot. 38–39. Breathitt argues that the evidence cited reflects only Breathitt's "present day awareness of harms and estimates of when that harm began . . . ." Breathitt Opp. 14. But this claim is contradicted by the record. Breathitt's own witness testified that, prior to the 2016 school year, Breathitt installed an online filtering tool on its systems to filter out social media sites like Defendants' platforms. Breathitt Mot. Ex. 18 (W. Noble Decl.) (Breathitt ECF No. 45-20) ¶ 7. Likewise, Superintendent Watts testified that, beginning in 2017, he spent approximately 20 percent of his work time on the social-media related concerns Breathitt alleges in this lawsuit. Breathitt Mot. Ex. 19 (July 28, 2025 P. Watts Dep.) (Breathitt ECF No. 45-21) 48:1–49:16. Breathitt cannot claim that its superintendent spent one-fifth of his entire work year in 2017 on social-media related concerns, yet it was not on notice of its potential claims at that time. *See also* Breathitt Mot. Ex. 21 (July 28, 2025 Hall Dep.) (Breathitt ECF No. 45-23) 31:14–32:1 (principal testifying that in 2018 he was already dealing with the issues Breathitt raises in this lawsuit).[13] Because Breathitt waited years to file this lawsuit, Defendants are entitled to summary judgment.

## III.    CONCLUSION

For the foregoing reasons, as well as the reasons stated in Defendants' Opening Motion for Summary Judgment and Omnibus Reply In Support of Its Motions for Summary Judgment, Defendants are entitled to summary judgment on Breathitt's claims.

---

[13] Defendants do not concede that those actions can result in liability, and they do not demonstrate causation for the reasons explained above, but they do demonstrate that Breathitt's own employees felt that social media was having adverse effects in the classroom. Breathitt Mot. 39.

20

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

Dated: December 5, 2025

**COVINGTON & BURLING LLP**

*/s/ Ashley M. Simonsen*
ASHLEY M. SIMONSEN (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

PHYLLIS A. JONES (*pro hac vice*)
PAUL W. SCHMIDT (*pro hac vice*)
CHRISTIAN J. PISTILLI (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

1

2

**WILLIAMS & CONNOLLY LLP**

3      /s/ *Ashley W. Hardin*
JOSEPH G. PETROSINELLI, *pro hac vice*

4      jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*

5      ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*

6      akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)

7      nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP

8      680 Maine Avenue SW
Washington, DC 20024

9      Tel.: (202) 434-5000

10

11     *Attorneys for Defendants YouTube, LLC and*
*Google LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KING & SPALDING LLP**

*/s/David P. Mattern*
GEOFFREY M. DRAKE, *pro hac vice*
*gdrake@kslaw.com*
TACARA D. HARRIS, pro hac vice
*tharris@kslaw.com*
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
*dmattern@kslaw.com*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

BAILEY J. LANGNER (SBN 307753)
*blangner@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorneys for Defendants TikTok Inc., ByteDance*
*Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (BREATHITT) (SD MSJ REPLY No. 1)
4:22-md-03047-YGR

**KIRKLAND & ELLIS LLP**

/s/ *Andrew M. Karp*
ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

**MUNGER, TOLLES & OLSON LLP**

JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Tel: (415) 512-4000

VICTORIA A. DEGTYAREVA (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Tel.: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendant Snap Inc.*

## **ATTESTATION PURSUANT TO CASE MANAGEMENT Order No. 27**

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED:   December 5, 2025

By:     */s/ Ashley W. Hardin*
Ashley W. Hardin
*Attorney for Defendants YouTube, LLC and Google, LLC.*

By:     */s/ Christian J. Pistilli*
Christian J. Pistilli
*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc. f/k/a Facebook Payments Inc.; Meta Platforms Technologies, LLC f/k/a Facebook Technologies, LLC; Instagram, LLC; and Siculus LLC f/k/a Siculus, Inc.*

By:     */s/ David P. Mattern*
David P. Mattern
*Attorney for Defendants TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC*

By:     */s/ Andrew M. Karp*
Andrew M. Karp
*Attorney for Defendant Snap Inc.*

1

## ATTESTATION PURSUANT TO LOCAL RULE 5-1

2

3
I, Ashely M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

4
DATED:   December 5, 2025                    By:     */s/ Ashley M. Simonsen*

5
                                                           Ashley M. Simonsen

6
                                                           *Attorney for Defendants Meta Platforms,*

7
                                                           *Inc. f/k/a Facebook, Inc.; Facebook*
                                                           *Holdings, LLC; Facebook Operations, LLC;*

8
                                                           *Meta Payments, Inc. f/k/a Facebook*
                                                           *Payments, Inc.; Meta Platforms*

9
                                                           *Technologies, LLC f/k/a Facebook*

10
                                                           *Technologies, LLC; Instagram, LLC; and*
                                                           *Siculus LLC f/k/a Siculus, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28