JONATHAN H. BLAVIN (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

ROSE L. EHLER (State Bar No. 296523)
Rose.Ehler@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on
signature pages]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br><br>ALL ACTIONS | MDL No. 3047<br><br>Case No. 4:22-MD-03047-YGR-PHK<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT**<br><br>**Hearing**:<br>Date:    January 26, 2026<br>Time:    8:00 am<br>Place:   Courtroom 1, Floor 4<br>Judge:   Hon. Yvonne Gonzalez Rogers |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    ARGUMENT ................................................................................................................. 1

    A.    Plaintiffs' Failure to Warn Claims Do Not Save Their GC Experts' Opinions. ......... 1

    B.    Plaintiffs' "But-For" Argument Is a Red Herring. ....................................................... 3

    C.    Whether Section 230 Is a Rule of Evidence Is Irrelevant. .......................................... 5

    D.    The Sword/Shield Doctrine Is Inapplicable. ............................................................... 6

    E.    Plaintiffs Cannot Excuse Their Experts' Faulty Methodologies................................. 6

    F.    The Court—Not the Jury—Is the Gatekeeper of Expert Testimony........................... 8

II.   CONCLUSION ............................................................................................................. 8

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**FEDERAL CASES**

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    2025 WL 2782591 (N.D. Cal. Sep. 30, 2025)...................................................................5

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009).............................................................................................4

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    186 F.3d 781 (7th Cir. 1999)...............................................................................................5

*Estate of Bride v. Yolo Techs., Inc.*,
    112 F.4th 1168 (9th Cir. 2024)...................................................................................2, 3, 4

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024)..............................................................................................4

*In re Circuit Breaker Litig.*,
    984 F. Supp. 1267 (C.D. Cal. 1997)...................................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)............................................................................................................8

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025)........................................................................................2, 4

*Engilis v. Monsanto Co.*,
    151 F.4th 1040 (9th Cir. 2025)...........................................................................................7

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015)......................................................................5

*George v. Ford Motor Co.*,
    2007 WL 2398806 (S.D.N.Y. Aug. 17, 2007) ...............................................................5, 6

*Jones v. United States*,
    933 F. Supp. 894 (N.D. Cal. 1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997)........................8

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ...............................................................................5

*Lemmon v. Snap Inc.*,
    995 F.3d 1085 (9th Cir. 2021)............................................................................................3

*Malden Transp., Inc. v. Uber Techs., Inc.*,
    404 F. Supp. 3d 404 (D. Mass. 2019) ................................................................................6

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Soc. Media Adolescent Addiction Litig.*,
    702 F. Supp. 3d 809 (N.D. Cal. 2023) ............................................................1, 3, 4

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965) ........................................................................................5

*United States v. Escalante*,
    637 F.2d 1197 (9th Cir. 1980) .........................................................................8

*United States v. Ford*,
    2021 WL 5042985 (D. Alaska Oct. 29, 2021) .................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)..................................................5

*Weit v. Cont'l Ill. Nat'l Bank & Trust Co.*,
    641 F.2d 457 (7th Cir. 1981)...........................................................................8

**FEDERAL STATUTES**

47 U.S.C. § 230 ......................................................................1, 2, 3, 4, 5, 6, 7

**FEDERAL RULES**

Fed. R. Evid. 702........................................................................................5, 6, 7

Fed. R. Evid. 702(a) .........................................................................................7

Fed. R. Evid. 702(a)–(d)....................................................................................5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Amend. I ..............................................................1, 2, 4, 6, 8

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

Plaintiffs' Opposition is most notable for what it does not say. *Nowhere* does it dispute that Plaintiffs' general causation (GC) experts fail to account for this Court's "feature-by-feature" rulings, which distinguish features of Defendants' platforms that are *protected* by Section 230 and the First Amendment from those the Court has found *unprotected*.[1]  Plaintiffs effectively concede their GC experts do not employ *any* methodology (much less a reliable one) showing that the unprotected features are independently capable of causing the alleged injuries.

Rather than address this central issue, Plaintiffs turn to specious legal arguments. Plaintiffs' lead argument—that their GC experts' testimony is admissible because their failure to warn claims are not subject to Section 230—contravenes controlling Ninth Circuit authority holding such claims *are* subject to Section 230 and ignores the fact that the GC experts challenged by this Motion *do not offer opinions on warnings causation*.  Plaintiffs' "but-for" argument mischaracterizes Defendants' application of the (correct) controlling Section 230 standard that a plaintiff's claims must be "fully independent" of a defendant's role in publishing third-party content.  And Plaintiffs' argument that they can evade the strictures of *Daubert* simply because they contend—apparently without having tried—that it would be difficult for their experts to comply with the law and analyze the independent impact of unprotected features disregards entirely this Court's critical gatekeeping function.  If disaggregating the causal impacts of protected features is an "impossible" task for Plaintiffs' cadre of Ph.D. experts, Opp. 12, a jury certainly cannot be expected to do it.

Ultimately, none of Plaintiffs' arguments excuses their decision to offer expert testimony that invites a jury to predicate liability on the very features this Court made clear are "no longer part of this case."  *In re Soc. Media Adolescent Addiction Litig*., 702 F. Supp. 3d 809, 846 (N.D. Cal. 2023).

## I.    ARGUMENT

### A.    Plaintiffs' Failure to Warn Claims Do Not Save Their GC Experts' Opinions.

Plaintiffs' lead argument stakes the admissibility of their GC expert testimony on the notion that these experts—who have not disclosed opinions on warnings-related causation—may

---

[1] Contrary to Plaintiffs' claim, Opp. 2 n.2, Defendants' Motion argues throughout that Plaintiffs' experts impermissibly tie causation to features protected by the First Amendment. *See, e.g.*, Mot. 7 ("Plaintiffs' experts overtly rely . . . on features this Court has already held are immunized by Section 230 and the First Amendment."); *id.* at 3 (noting features held protected under First Amendment).

1  nonetheless testify in support of Plaintiffs' failure to warn claims, which Plaintiffs argue are exempt

2  from Section 230 and the First Amendment.  Opp. 2–3.  This argument fails at every turn.

3      To begin, Plaintiffs' reliance on a failure to warn theory as an end run around Section 230

4  defies controlling law.  The Ninth Circuit has now repeatedly made clear that failure to warn claims

5  are barred to the same extent as product defect, negligence, and consumer protection claims premised

6  on the same underlying publishing activity.  In *Estate of Bride v. Yolo Technologies, Inc.*, 112 F.4th

7  1168 (9th Cir. 2024), the court affirmed dismissal of negligence, design defect, and failure to warn

8  claims challenging an app's anonymized messaging feature, explaining that the "failure to warn claim

9  faults YOLO for not mitigating, in some way, the harmful effects of the harassing and bullying

10  content" allegedly caused by the feature.  *Id.* at 1180.  The Ninth Circuit recently reaffirmed this

11  approach in *Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025), again applying Section 230 to reject

12  a failure to warn claim arising from an app's user matching and geolocation features.  Finding that

13  this theory was not "independent of the site's publishing function," the court held that "Grindr's role

14  as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of

15  harm' resulting from the App."  *Id.* at 1154 (quoting *Bride*, 112 F.4th at 1181).

16      Tellingly, Plaintiffs offer no legal argument *at all* on this point beyond citing to one of this

17  Court's motion to dismiss rulings, which was made without the benefit of the Ninth Circuit's decision

18  in *Grindr*.  As the Court itself recognized, the relevant law was "in some flux" when it made that

19  ruling, 753 F. Supp. 3d 849, 889 (N.D. Cal. 2024), and the Court has instructed the parties to defer

20  further motion practice on whether Section 230 bars the failure to warn claims pending the appeal by

21  Meta and TikTok—an instruction Plaintiffs disregard.  But if this issue is to be considered, binding

22  authority now makes clear Plaintiffs cannot pursue failure to warn claims premised on third-party

23  content and publishing features that this Court has already held are immunized by law.  It follows

24  that their experts cannot offer causation opinions—for failure to warn claims or otherwise—that

25  would premise liability on the supposedly harmful effects of protected publishing features.

26  Regardless of the claim, the Court's Section 230 and First Amendment rulings impose a "significant

27  limitation on [P]laintiffs' theories of recovery," 754 F. Supp. 3d 946, 954 (N.D. Cal. 2024).

28      Beyond being legally erroneous, Plaintiffs' failure to warn gambit fails on its own terms

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1  because their GC experts simply do not opine on the causal impact of any (possible) warnings.

2  Mot. 4 n.3. Plaintiffs do not seriously dispute this. They state in the vaguest of terms that "Plaintiffs'

3  evidence" is "chock-full" of "expert testimony on warnings causation," Opp. 2 n.5, but cite only a

4  portion of another brief, which, in turn, cites only the opinions of two experts *who are not the subject*

5  *of this Motion*. *See* Pls.' Opp. to Mot. Summ. J. 11–12, ECF 2414-1 (citing Noar and Estes reports).

6  Even if failure to warn claims could be asserted based on protected features (and they cannot), that

7  would not support the admissibility of opinions from GC experts who say nothing about warnings.

8  **B.    Plaintiffs' "But-For" Argument Is a Red Herring.**

9  Plaintiffs mischaracterize Defendants' application of controlling precedent (and this Court's

10  rulings) on Section 230 as a prohibited "but-for" test. Opp. 3–5. Defendants are not arguing that

11  Section 230 applies merely because content may have been a but-for cause of Plaintiffs' harms.

12  Rather, Defendants' Motion straightforwardly applies the Ninth Circuit's requirement that "claims

13  against online platforms like Defendants must be '*fully independent of* [their] role in monitoring or

14  publishing third-party content.'" Mot. 2 (quoting *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th

15  Cir. 2021) (emphasis added)). As the Motion explains, the fundamental problem with Plaintiffs' GC

16  expert reports is that they fail to separate the alleged causal effects of *unprotected* features from the

17  impact of third-party content and protected features this Court said were "no longer part of this case,"

18  702 F. Supp. 3d at 846—and, thus, they offer no opinions that any unprotected features are

19  independently capable of causing the alleged harms. That core methodological problem has nothing

20  to do with any "but-for" test; Plaintiffs' insistence otherwise ignores binding authority.[2]

21  As the Ninth Circuit has explained, rather than turning on a free-floating "but-for" test,

22  Section 230 asks whether the theory of liability at issue would "require the services to exercise some

23  kind of publication or editorial function." *Bride*, 112 F.4th at 1176. This Court has already analyzed

24  each of the features at issue, identified those protected publishing features that meet this test on the

25

---

26  [2] Plaintiffs also incorrectly apply the specific, not general, causation standard in arguing that their
GC experts can consider content and protected features in opining that the platforms "were a
27  substantial factor in causing harm." Opp. 4. While that is equally wrong as a matter of specific
causation, Plaintiffs' *general* causation experts must first show that unprotected features are
28  independently *capable of causing harm*. They have not done so.

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1  record then before the Court, and held that Plaintiffs cannot assert claims on the theory that those

2  features are defective or otherwise harmful.  702 F. Supp. 3d at 846.  Yet Plaintiffs' GC experts now

3  offer opinions that would invite the jury to premise liability *on those same features*.  Far from

4  endorsing an unbounded "but-for" standard, excluding those opinions simply applies this Court's

5  own rulings and the core premise of Section 230 that online platforms cannot be held "responsible

6  for users' speech or [their] decision to publish it."  *Bride*, 112 F.4th at 1180.

7          It is Plaintiffs, by contrast, that endorse an extreme, legally untethered position.  In their view,

8  their GC experts may offer opinions based on content and protected features without limit, so long

9  as *any* unprotected feature also is involved in any way, however minimal, in the causal chain.  But

10  that is directly contrary to the Ninth Circuit's decision in *Grindr*, which made clear that the relevant

11  question under Section 230 is whether the features at issue are or are "not independent of [the

12  defendant's] role as a facilitator and publisher of third-party content."  128 F.4th at 1153.  Because

13  the features at issue in *Grindr* (location-based user matching) were *not* independent of its publishing

14  role, Section 230 applied and liability could not be premised on those features.  In that circumstance,

15  the Ninth Circuit explained that it was "analytically insignificant whether [the plaintiff's] injuries

16  would not have occurred 'but for' [a platform's] role as a publisher."  *Id*. at 1153 n.3.  So too here.[3]

17          Left without binding on-point authority, Plaintiffs urge this Court to follow the JCCP Court,

18  Opp. 4–5, but as the Motion (at 14–15) explained, that decision should not guide this Court, for at

19  least three reasons, none of which Plaintiffs address.  *First*, unlike this Court, the JCCP Court did not

20  issue a series of comprehensive opinions identifying which features are protected by Section 230 and

21  which features are not; thus, the JCCP Court did not evaluate whether the experts ignored such

22  rulings and based their opinions on the very features this Court has held **cannot form** the basis of

23  Plaintiffs' claims—including infinite scroll, autoplay, notifications, and rewards.  Second, the JCCP

---

[3] Ignoring the controlling decisions in *Bride* and *Grindr*, Plaintiffs rely on inapposite contract cases. The Ninth Circuit has held that Section 230 analysis is simply "different" for contract claims than for tort claims.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1107 (9th Cir. 2009).  Indeed, the holdings in *Barnes* and *Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024), Opp. 4, were expressly based on the fact that they involved *contract* claims.  *See Barnes*, 570 F.3d at 1107; *Calise*, 103 F.4th at 743.  The reasoning of these cases has no bearing on this *tort* case, which includes no contract-based claims, and certainly does not allow Plaintiffs to circumvent this Court's ruling that Plaintiffs' challenges to certain features are barred by Section 230 and the First Amendment.  Mot. 7 & n.5.

1    Court did not consider the Ninth Circuit authority that controls here, and declined to follow "federal

2    law" decisions that were "not binding." Ex. 2 (JCCP Order) 65.  Third, the JCCP Court erroneously

3    concluded that Plaintiffs' experts could premise their core opinions on certain studies, such as time-

4    spent analyses, despite the fact that those studies do not control for content and protected features

5    and thus cannot be used to show that *unprotected* features are independently capable of causing harm.

6            **C.    Whether Section 230 Is a Rule of Evidence Is Irrelevant.**

7            Plaintiffs' argument that Section 230 is "[not] a rule of evidence," Opp. 5, boils down to the

8    unremarkable proposition that evidence inadmissible for one purpose may be admissible for another.

9    But the issue here is whether Plaintiffs can offer expert testimony, and Rule 702 makes clear that

10   such testimony is inadmissible unless its proponent establishes that the expert uses "reliable

11   principles and methods" applied to the "facts of the case" to help the jury "determine a fact in issue."

12   Fed. R. Evid. 702(a)–(d).  And while Section 230 may not be a rule of evidence, the immunity it

13   provides frames the causal question for this case, including at the *Daubert* stage.  Thus, the question

14   at issue is not whether *any evidence* about protected publishing features is admissible for *any*

15   *purpose*; instead, it is whether Plaintiffs' GC experts have a reliable method for opining that the

16   unprotected features, independent of the effects of content and protected features, are capable of

17   causing harm.  They have no such method and, indeed, did not even try to perform that analysis.

18           Tellingly, Plaintiffs do not cite a single case in support of this argument that involves expert

19   testimony—let alone expert testimony on causation.[4]  Where their cases have any relevance, they

20   support *Defendants'* position.  For instance, in *George v. Ford Motor Co.*, 2007 WL 2398806

21   (S.D.N.Y. Aug. 17, 2007), the court denied a motion in limine seeking to exclude evidence of conduct

22   immunized by *Buckman* preemption.  The court explained that the evidence was admissible at least

---

[4] *See* Opp. 5–7 (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965) (addressing admissibility of evidence for any purpose); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020) (addressing *allegations* on motion to dismiss); *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999) (addressing admissibility of lay witness testimony not going to liability); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594, at *15 n.4 (N.D. Cal. Oct. 30, 2017) (addressing *allegations* on motion to dismiss); *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 2025 WL 2782591, at *20 n.10 (N.D. Cal. Sep. 30, 2025) (addressing *allegations* on motion to dismiss); *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *2 (S.D.N.Y. Dec. 3, 2015) (addressing admissibility of evidence for any purpose)).

for some purpose because "plaintiffs do not seek in any way to create liability for" that immunized conduct. *Id.* at *8. But that is *exactly* what Plaintiffs seek to do here: offer expert testimony that the features this Court has already held are immunized from liability could cause Plaintiffs' harms. Neither *George* nor any other of Plaintiffs' cases supports the admissibility of such testimony.

Plaintiffs also fail to distinguish any of Defendants' on-point cases. Mot. 4–5. Plaintiffs suggest certain cases, including *Malden Transportation, Inc. v. Uber Technologies, Inc.*, 404 F. Supp. 3d 404, 424 (D. Mass. 2019), are inapplicable because the testimony in those cases was rejected "on Rule 702 grounds having nothing at all to do with Section 230 preemption." Opp. 9. But as Plaintiffs recognize, cases applying *Noerr–Pennington*, like *Malden* and *In re Circuit Breaker Litigation,* 984 F. Supp. 1267 (C.D. Cal. 1997), the latter of which Plaintiffs ignore, are analogous to this case given that they also implicate "both statutory immunity and First Amendment protections." Opp. 6. These cases reject expert testimony that fails to disentangle protected from unprotected conduct and invites liability for immunized conduct. Mot. 5. They should guide the Court's analysis here.

### D.    The Sword/Shield Doctrine Is Inapplicable.

Plaintiffs' contention that Defendants are trying to wield Section 230 as both sword and shield is simply wrong. Defendants' experts' "content moderation" opinions are *rebuttal opinions* that respond directly to Plaintiffs' claims and evidence about third-party content on the platforms, including the very expert testimony Defendants' seek to exclude with this Motion. As Defendants have already made clear to the Court, "if Plaintiffs are precluded from presenting evidence regarding third-party content, protected publishing activities, and content moderation, Defendants would have no need to (and would not) present expert evidence on these issues." Defs.' Lett. Br. 1–2, ECF 2183.

### E.    Plaintiffs Cannot Excuse Their Experts' Faulty Methodologies.

The methodologies employed by Plaintiffs' GC experts are *doubly* flawed: (1) they fail to isolate the independent causal impact of the at-issue, non-protected features; and (2) they conflate the causal impact of those features with that of third-party content and protected publishing features for which this Court has expressly barred liability. Mot. 6. Plaintiffs *do not contest* either point. If anything, Plaintiffs appear to acknowledge these shortcomings, suggesting that their experts "may rely on studies that *go partway* and then bridge 'the gap' to their own conclusions." Opp. 12

(emphasis added).  But Plaintiffs do not identify any studies that purportedly go "partway" with respect to the impact of the unprotected features.  And they do not—and cannot—explain how their experts have, in fact, "bridged the gap," much less in a methodologically reliable manner.  Plaintiffs bear the burden of satisfying Rule 702 for their experts, *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025), and this Court should not permit the jury to hear expert testimony based on a methodology that even Plaintiffs cannot explain, much less defend on its merits.

Plaintiffs also argue that it would have been "impossible"[5] for their experts to isolate the impact of the at-issue features consistent with this Court's dismissal rulings. Opp. 12. Yet Plaintiffs identify nothing that would have prevented their experts—despite having been on notice of what they had to do for almost two years—from conducting their own analyses of the effects of the at-issue features in a manner that controlled for the effects of content and protected publishing features. Instead, they just ignored this limitation.  As they acknowledged, "[w]hether a feature may be immunized by Section 230 did not play a factor" in their opinions.  Ex. 33 (Lembke MDL Dep.) 125:23–127:24; *see* Ex. 44 (Murray MDL Dep.) 270:8–271:5 (did not consider whether "defendants' platform features" are "immunized or not subject to liability").  At any rate, the purported challenges Plaintiffs identify are a function of law, not science.  If Plaintiffs are correct that the task is impossible—that any causal impact of the actionable features cannot be disentangled from the effects of protected conduct—it only underscores the fatal flaw in their theory of liability as well as their failures of proof.  Plaintiffs cannot be permitted to press a theory of causation that they acknowledge pins liability on protected publishing activity, only to use that flaw as an excuse to offer unreliable expert testimony that circumvents relevant federal protections (and this Court's rulings).

Plaintiffs are likewise mistaken that their GC experts' testimony is relevant.  Expert testimony concerning barred theories of liability is both irrelevant and prejudicial.  *See* Fed. R. Evid. 702(a); Mot. 3–4 (collecting authorities).  That the GC experts incidentally reference some features the Court found unprotected, Opp. 14, is beside the point.  What matters is that those experts have not opined,

---

[5] Plaintiffs inaccurately attribute this assessment to Defendants' expert, Dr. Baiocchi.  Opp. 12.  Dr. Baiocchi in fact opines that *choices made by Plaintiffs' expert*, Dr. Twenge, "mak[e] it impossible to estimate, in isolation, the effects" of features.  Mura Decl., Ex. 5 (Baiocchi Rep.) ¶ 62, ECF 2409-8.

1    and cannot reliably opine, that those features are capable of causing the alleged harms independently

2    of the effects of content and protected publishing features.  This failure requires exclusion.

3            **F.      The Court—Not the Jury—Is the Gatekeeper of Expert Testimony.**

4            Controlling Ninth Circuit law makes clear that determining the reliability and relevance of

5    expert testimony is an issue for the Court—not for the jury.  *See* Mot. 15.  Nonetheless, Plaintiffs

6    insist that this Court should abdicate its responsibility as a gatekeeper and allow them to present

7    unreliable expert testimony that invites the jury to find liability for immunized conduct.  But if

8    disaggregating the causal impacts of protected conduct is an "impossible" task for Plaintiffs' cadre

9    of professors and other experts, Opp. 12, there certainly is no way for a jury to do it.

10           Nor are jury instructions an effective substitute for faithful application of *Daubert*.[6]  To the

11   contrary, as courts have held, jury instructions are poorly suited to solve the problems posed by

12   testimony about immunized conduct.  In *Weit v. Continental Illinois National Bank & Trust Co.*, 641

13   F.2d 457 (7th Cir. 1981), for instance, the court excluded even *lay* testimony about the defendants'

14   *Noerr*-protected lobbying activities.  *Id.* at 467.  The court held that a "cautionary instruction" would

15   not alleviate the "likely confusion," as a jury, being "unskilled in the constitutional considerations of

16   *Noerr–Pennington*," could nonetheless "easily ... find[] ... liability for engaging in the First

17   Amendment right to petition."  *Id.*  Such risks are only magnified here by "the special dangers

18   inherent in scientific expert testimony." *Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal.

19   1996), *aff'd*, 127 F.3d 1154 (9th Cir. 1997).  Having failed to offer expert testimony that honors this

20   Court's rulings by distinguishing the effects of protected and unprotected features, Plaintiffs cannot

21   save such testimony from exclusion by asking a jury to do the work their experts chose not to do.

22   **II.     CONCLUSION**

23           For these reasons and those in the Motion, Plaintiffs' GC expert opinions should be excluded.

---

[6] Plaintiffs' claim that "*Daubert* itself" supports their position that jury instructions can remedy
methodological deficiencies, Opp. 15, is badly mistaken.  *Daubert* noted the importance of a "careful
instruction *on the burden of proof*" as an "appropriate means of attacking *shaky but admissible
evidence.*" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) (emphasis added).  But
Plaintiffs offer *inadmissible* expert opinions, and jury instructions cannot cure this threshold flaw.
Plaintiffs cite two other cases, neither of which involved expert testimony.  *See United States v.
Escalante*, 637 F.2d 1197, 1202–03 (9th Cir. 1980) (discussing *curative* instructions issued *after*
inadmissible evidence goes to the jury); *United States v. Ford*, 2021 WL 5042985, at *5 (D. Alaska
Oct. 29, 2021) (discussing jury instructions used to cure prejudice from a joint criminal trial).

1  DATED: December 5, 2025                    **MUNGER, TOLLES & OLSON LLP**

2

3
                                   By:  */s/ Jonathan H. Blavin*
4                                        Jonathan H. Blavin

5                                        JONATHAN H. BLAVIN, SBN 230269
                                         jonathan.blavin@mto.com
6                                        MUNGER, TOLLES & OLSON LLP
                                         560 Mission Street, 27th Floor
7                                        San Francisco, CA 94105
                                         Tel.: (415) 512-4000
8

9                                        ROSE L. EHLER, SBN 296523
                                         Rose.Ehler@mto.com
10                                       MUNGER, TOLLES & OLSON LLP
                                         350 South Grand Avenue, 50th Floor
11                                       Los Angeles, CA 90071
                                         Tel.: (213) 683-9100
12

13                                       *Attorneys for Defendant Snap Inc.*

14

15                                       **KIRKLAND & ELLIS LLP**

16

17                                 By:  */s/ Allison Brown*
                                         Allison Brown
18

19                                       ALLISON BROWN, *pro hac vice*
                                         KIRKLAND & ELLIS LLP
20                                       601 Lexington Avenue
                                         New York, NY 10022
21                                       Telephone: (212) 446-4757
                                         Email: Alli.Brown@kirkland.com
22

23                                       JESSICA DAVIDSON, pro hac vice
                                         KIRKLAND & ELLIS LLP
24                                       601 Lexington Avenue
                                         New York, NY 10022
25                                       Telephone: (212) 446-4723
                                         Email: Jessica.davidson@kirkland.com
26

27                                       *Attorneys for Defendant Snap Inc.*

28

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COVINGTON & BURLING LLP**


By:  /s/ Ashley M. Simonsen
     Ashley M. Simonsen

     ASHLEY M. SIMONSEN (Bar No. 275203)
     asimonsen@cov.com
     Covington & Burling LLP
     1999 Avenue of the Stars
     Los Angeles, California 90067
     Telephone: (424) 332-4800
     Facsimile: (424) 332-4749

     PHYLLIS A. JONES (*pro hac vice*)
     PAUL W. SCHMIDT (*pro hac vice*)
     CHRISTIAN J. PISTILLI (pro hac vice)
     pajones@cov.com
     pschmidt@cov.com
     Email: cpistilli@cov.com
     Covington & Burling LLP
     One City Center
     850 Tenth Street, NW
     Washington, DC 20001-4956
     Telephone: (202) 662-6000
     Facsimile: (202) 662-6291

     *Attorneys for Defendants Meta Platforms, Inc.*
     *f/k/a Facebook, Inc.; Facebook Holdings, LLC;*
     *Facebook Operations, LLC; Meta Payments*
     *Inc. f/k/a Facebook Payments Inc.; Meta*
     *Platforms Technologies, LLC f/k/a Facebook*
     *Technologies, LLC; Instagram, LLC; and*
     *Siculus LLC f/k/a Siculus, Inc.*

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1

**KING & SPALDING LLP**

2

3

By:  /s/ Geoffrey M. Drake

4      Geoffrey M. Drake

5      Geoffrey M. Drake, *pro hac vice*
       TaCara D. Harris, *pro hac vice*
6      1180 Peachtree Street, NE, Suite 1600
       Atlanta, GA 30309-3521
7      Telephone: (404) 572-4600
       Facsimile: (404) 572-5100
8      Email: gdrake@kslaw.com
            tharris@kslaw.com
9

10     David P. Mattern, *pro hac vice*
       KING & SPALDING LLP
11     1700 Pennsylvania Avenue, NW, Suite 900
       Washington, DC 20006-4707
12     Telephone: (202) 737-0500
       Facsimile: (202) 626-3737
13     Email: dmattern@kslaw.com

14

15     Bailey J. Langner (SBN 307753)
       KING & SPALDING LLP
16     50 California Street, Suite 3300
       San Francisco, CA 94111
17     Telephone: (415) 318-1200
       Facsimile: (415) 318-1300
18     Email: blangner@kslaw.com

19

       *Attorneys for Defendants TikTok Inc.,*
20     *ByteDance Inc., TikTok Ltd., ByteDance Ltd.,*
       *and TikTok LLC*

21

22

23

24

25

26

27

28

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1

2
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation

3

4
By:  /s/ Brian M. Willen
Brian M. Willen

5

6
Brian M. Willen (pro hac vice)
Wilson Sonsini Goodrich & Rosati PC

7
1301 Avenue of the Americas, 40th Floor
New York, New York 10019

8
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

9
bwillen@wsgr.com

10
Lauren Gallo White (SBN 309075)

11
Samantha A. Machock (SBN 298852)
Wilson Sonsini Goodrich & Rosati PC

12
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105

13
Telephone: (415) 947-2000
Facsimile: (947-2099)

14
lwhite@wsgr.com
smachock@wsgr.com

15

16
Christopher Chiou (SBN 233587)
Matthew K. Donohue (SBN 302144)

17
Wilson Sonsini Goodrich & Rosati PC
953 East Third Street, Suite 100

18
Los Angeles, CA 90013

19
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

20
cchio@wsgr.com
mdonohue@wsgr.com

21

22
*Attorneys for Defendants YouTube, LLC and
Google LLC*

23

24

25

26

27

28

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1

2

## MORGAN LEWIS & BOCKIUS LLP

3

By:  /s/ Yardena R. Zwang-Weissman
4      Yardena R. Zwang-Weissman

5      Yardena R. Zwang-Weissman (SBN 247111)
       300 South Grand Avenue, 22nd Floor
6      Los Angeles, CA 90071-3132
       Telephone: (213) 612-7238
7      yardena.zwang-
       weissman@morganlewis.com
8

9      Brian Ercole (pro hac vice)
       600 Brickell Avenue, Suite 1600
10     Miami, FL 33131-3075
       Telephone: (305) 415-3416
11     brian.ercole@morganlewis.com

12     Stephanie Schuster (pro hac vice)
       1111 Pennsylvania Avenue NW
13     Washington, DC 20004-2541
       Telephone: (202) 373-6595
14     stephanie.schuster@morganlewis.com

15

16     *Attorneys for Defendants YouTube, LLC and
       Google LLC*
17

18

19     ## WILLIAMS & CONNOLLY LLP

20

By:  /s/ Joseph G. Petrosinelli
21     Joseph G. Petrosinelli

22     JOSEPH G. PETROSINELLI (pro hac vice)
       ASHLEY W. HARDIN (pro hac vice)
23     680 Maine Avenue, SW
       Washington, DC 20024
24     Tel.: 202-434-5000
       jpetrosinelli@wc.com
25     ahardin@wc.com

26

27     *Attorneys for Defendants YouTube, LLC and
       Google LLC*

28

-13-                                    Case No. 4:22-MD-03047-YGR

REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT

1

## __ATTESTATION__

2        I, Jonathan H. Blavin, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

3  to the filing of this document has been obtained from each signatory hereto.

4

5   DATED:   December 5, 2025                        By:    */s/ Jonathan H. Blavin*
                                                            Jonathan H. Blavin
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 4:22-MD-03047-YGR
REPLY ISO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION
OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT