Jonathan H. Blavin (State Bar No. 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Victoria A. Degtyareva (State Bar No. 284199)
Victoria.Degtyareva@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702


*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*Tucson Unified School District v. Meta Platforms Inc., et al* | MDL No. 3047<br><br>Case No. 4:24-cv-01382-YGR<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON) (SD MSJ NO. 2)**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang<br><br>Date:     January 26, 2026<br>Time:    8:00 am<br><br>Place:   Courtroom 1, Floor 4 |

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 1

    A.     Defendants Are Entitled to Summary Judgment on Causation. ................................... 1

        1.     Tucson Fails to Apply the Proper Causation Standard. ................... 2

        2.     Tucson Has No Competent Evidence It Was Harmed Because of Defendants' Actionable Conduct. ...................................................... 3

            (a)     Tucson Relies Solely on Evidence of Third-Party Wrongdoing and Protected Publishing Activities. ................. 3

            (b)     Tucson Lacks Evidence of Causation as to Any Defendant's Specific Platform. ..................................................... 7

            (c)     Tucson Lacks Admissible Evidence of Causation. .......................... 10

        3.     Tucson's Failure to Warn Arguments Cannot Save its Claims from Dismissal on Causation Grounds. ................................................... 12

    B.     Defendants Have No Duty to Warn Under Arizona Law. ........................................ 15

    C.     Tucson Cannot Recover Past Damages. ................................................................... 16

        1.     Arizona Law Precludes Tucson from Recovering "Lost Time" Damages. ..................................................................................... 16

        2.     Tucson Lacks Evidence of "Lost Time" Attributable to Defendants' Actionable Conduct. ................................................... 17

        3.     Tucson Lacks Evidence of Out-of-Pocket Expenses Caused by Defendants' Actionable Conduct. ................................................... 19

    D.     Tucson Cannot Recover the Hoover Plan As Future Damages ................................ 21

    E.     The Hoover Plan Is Not a Proper Abatement Remedy Under Arizona Law. ........... 22

III.   CONCLUSION ...................................................................................................... 22

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Ader v. SimonMed Imaging Inc.*,
    465 F. Supp. 3d 953 (D. Ariz. 2020)....................................................................18

5

*Alexopulos ex rel Alexopulos v. Riles*,
6    784 F.2d 1408 (9th Cir. 1986).............................................................................10

7

*Block v. City of L.A.*,
    253 F.3d 410 (9th Cir. 2001).............................................................................8, 11

8

*In re Cathode Ray Tube Antitrust Litig.*,
9    2017 WL 11237000 (N.D. Cal. Mar. 9, 2017)....................................................19

10

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
    2024 WL 1289821 (E.D. Tex. Mar. 26, 2024)....................................................19

11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
12    521 F.3d 1157 (9th Cir. 2008)...........................................................................3, 4

13

*Feathers v. On Q Financial LLC*,
    2025 WL 1769764 (D. Ariz. June 26, 2025)........................................................16

14

*Griffey v. Magellan Health Inc.*,
15    562 F. Supp. 3d 34 (D. Ariz. 2021).....................................................................16

16

*Hansen v. United States*,
    7 F.3d 137 (9th Cir. 1993)......................................................................................6

17

*Harris v. Medtronic Inc.*,
18    2023 WL 2478913 (D. Ariz. Mar. 13, 2023).......................................................16

19

*Holaway v. Stratasys, Inc.*,
    771 F.3d 1057 (8th Cir. 2014)..............................................................................19

20

*IceMOS Tech. Corp. v. Omron Corp.*,
21    2020 WL 1083817 (D. Ariz. Mar. 6, 2020) ........................................................17

22

*Lee v. City of Madera*,
    2008 WL 5042856 (E.D. Cal. Nov. 20, 2008).......................................................8

23

*Lemmon v. Snap, Inc.*,
24    995 F.3d 1035 (9th Cir. 2021)................................................................................6

25

*Miller v. Int'l Bus. Machines Corp.*,
    2007 WL 1148996 (N.D. Cal. Apr. 18, 2007) .....................................................19

26

*Mills v. Bristol-Myers Squibb Co.*,
27    2011 WL 4708850 (D. Ariz. Oct. 7, 2011) .........................................................12

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

*Nelson v. Matrixx Initiatives*,
    2012 WL 3627399 (N.D. Cal. Aug. 21, 2012),
    *aff'd*, 592 F. App'x 591 (9th Cir. 2015) ...................................................................9

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ..............................................................................10

*PivotHealth Holdings LLC v. Horton*,
    2025 WL 1865788 (D. Ariz. July 7, 2025) ............................................................17

*Reliance Ins. Co. v. Doctors Co.*,
    299 F.Supp.2d 1131 (D. Haw. 2003) ....................................................................10

*Safari Club Int'l v. Haaland*,
    31 F.4th 1157 (9th Cir. 2022) ...............................................................................6

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
    318 F. Supp. 2d 879 (C.D. Cal. 2004) ...................................................................9

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007).................................................................................1

*United States v. Dibble*,
    429 F.2d 598 (9th Cir. 1970)...............................................................................12

*Wicker v. Oregon ex rel. Bureau of Labor*,
    543 F.3d 1168 (9th Cir. 2008)...............................................................................5

*Williams v. Steglinksi*,
    2016 WL 1183134 (E.D. Cal. Mar. 28, 2016) .........................................................8

**STATE CASES**

*A. Miner Contracting, Inc. v. Toho-Tolani Cnty. Imp. Dist.*,
    311 P.3d 1062 (Ariz. Ct. App. 2013) ....................................................................19

*Allen v. Devereaux*,
    426 P.2d 659 (Ariz. Ct. App. 1967) ......................................................................21

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*,
    712 P.2d 914 (Ariz. 1985) ....................................................................................3

*Badia v. City of Casa Grande*,
    988 P.2d 134 (Ariz. Ct. App. 1999) ......................................................................14

*Bradford v. City of Tucson*,
    573 P.3d 557 (Ariz. Ct. App. 2025) ........................................................................3

*Brandes v. Mitterling*,
    196 P.2d 464 (Ariz. 1948)....................................................................................22

*Brown v. City of Phoenix*,
    557 P.3d 321 (Ariz. Ct. App. 2024) ...................................................................3, 22

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

*Cactus Corp. v. State ex rel. Murphy,*
    480 P.2d 375 (Ariz. Ct. App. 1971) .................................................................22

*Cal-Am Props. Inc. v. Edais Eng'g Inc.,*
    509 P.3d 386 (Ariz. 2022) ..............................................................................15

*City of Safford v. Seale,*
    2009 WL 3390172 (Ariz. Ct. App. Oct. 21, 2009) ..........................................22

*Conklin v. Medtronic, Inc.,*
    431 P.3d 571 (Ariz. 2018) ..............................................................................15

*CVS Pharmacy Inc. v. Bostwick in and for Cnty. of Pima,*
    494 P.3d 572 (Ariz. 2021) ..............................................................................15

*DeStories v. City of Phoenix,*
    744 P.2d 705 (Ariz. Ct. App. 1987) ................................................................21

*Dinsmoor v. City of Phoenix,*
    492 P.3d 313 (Ariz. 2021) ..............................................................................15

*Dozier Crane & Mach., Inc. v. Gibson,*
    644 S.E.2d 333 (Ga. App. 2007) .....................................................................16

*Gilmore v. Cohen,*
    386 P.2d 81 (Ariz. 1963) ...............................................................18, 19, 20, 21

*Golonka v. Gen. Motors Corp.,*
    65 P.3d 956 (Ariz. Ct. App. 2003) ..................................................................12

*Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix,*
    167 P.3d 711 (Ariz. Ct. App. 2007) ............................................................2, 14

*Harris Cattle Co. v. Paradise Motors, Inc.,*
    448 P.2d 866 (Ariz. 1968) ..............................................................................18

*Mutschler v. City of Phoenix,*
    129 P.3d 71 (Ariz. Ct. App. 2006) ....................................................................3

*Oliver v. Henry,*
    260 P.3d 314 (Ariz. Ct. App. 2011) ................................................................19

*Piner v. Super. Ct. in & for Cnty. of Maricopa,*
    962 P.2d 909 (Ariz. 1998) ................................................................................7

*Quiroz v. ALCOA Inc.,*
    416 P.3d 824 (Ariz. 2018) .........................................................................15, 16

*Raschke v. Carrier Corp.,*
    703 P.2d 556 (Ariz. Ct. App. 1985) ................................................................12

*Rollings v. City of Tucson,*
    2007 WL 5556969 (Ariz. Ct. App. Dec. 24, 2007) ...........................................3

1

*Saide v. Stanton,*
     659 P.2d 35 (Ariz. 1983) .................................................................................................21

2

*Shetter v. Rochelle,*
     411 P.2d 45 (Ariz. Ct. App. 1966) ................................................................................13

3

4

*State ex rel. Indus. Comm'n v. Standard Oil Co. of Cal.,*
     414 P.2d 992,996 (Ariz. Ct. App. 1966) ........................................................................2

5

*Thienes v. City Center Exec. Plaza, LLC,*
     2016 WL 5219858 (Ariz. Ct. App. Sep. 22, 2016) ..........................................................3

6

7 **FEDERAL RULES**

8 Fed. R. Civ. P. 56(c)(2) ...................................................................................................10

9 Fed. R. Evid. 602 ...............................................................................................................11

10 Fed. R. Evid 701 .................................................................................................................8

11 Fed. R. Evid. 801 ...............................................................................................................11

12 Fed. R. Evid. 802 ...............................................................................................................11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1  **I.      <u>INTRODUCTION</u>**

2      Summary judgment should be granted because Tucson's Opposition fails at the most basic

3  level: it identifies no evidence of a causal link between any of Defendants' actionable conduct and

4  the District's alleged harms.  Because it has no evidence of actionable conduct, Tucson attempts to

5  support its claim with protected speech and third-party content, plainly ignoring this Court's ruling

6  that Section 230 and the First Amendment impose a "significant limitation on plaintiffs' theories of

7  recovery" by prohibiting the imposition of liability on this basis.  Order on Motion to Dismiss School

8  Districts' Master Complaint ("SD Order") (ECF No. 1267[1]) 2.  Nor can Tucson survive summary

9  judgment by relying on general allegations about students' cellphone and social media use to seek

10  unconstrained funding to address Tucson's endemic economic and social challenges that exist

11  independently of any of Defendants' actionable conduct.  Tucson tries to get around this problem by

12  invoking its failure to warn claim, but it fails to show that Defendants owed it any duty to warn or

13  that any warning would have prevented those alleged harms.

14      Tucson's damages arguments are just as baseless.  Tucson's claims for "lost time" are not

15  permitted under Arizona law, it offers no admissible evidence identifying any compensable out-of-

16  pocket damages, and it abandons its claim for property damage entirely.  Finally, Tucson's forward-

17  looking "strategic plan" fails to provide the reasonable certainty necessary to qualify as future

18  damages and is an improper abatement remedy under Arizona law.

19  **II.     <u>ARGUMENT</u>**

20      **A.      Defendants Are Entitled to Summary Judgment on Causation.**

21      Defendants' Motion explained that, to avoid summary judgment, Tucson must present

22  admissible evidence that Defendants' *actionable* conduct—as opposed to social media or cellphone

23  use generally, third-party content or conduct, or Defendants' protected publishing activities—caused

24  its alleged injuries.  Tucson Mot. (ECF No. 2290) 14–24; *see also Soremekun v. Thrifty Payless, Inc.*,

25  509 F.3d 978, 984 (9th Cir. 2007) ("The evidence presented by the parties [on summary judgment]

26  must be admissible.").  Tucson has not even attempted to make that showing.  Instead, Tucson raises

27

28  [1] The ECF numbers provided are from the MDL case docket (Case No.  4:22-md-03047-YGR).

a series of meritless arguments that cannot create a genuine dispute of material fact.  As a result, summary judgment is appropriate.  *See, e.g.*, *Grafitti-Valenzuela ex rel. Grafitti v. City of Phoenix*, 167 P.3d 711, 719 (Ariz. Ct. App. 2007) (affirming grant of summary judgment on causation); *State ex rel. Indus. Comm'n v. Standard Oil Co. of Cal.*, 414 P.2d 992,996 (Ariz. Ct. App. 1966) (same).

*First*, Tucson attempts to water down its burden on summary judgment by failing to apply the proper causation standards.

*Second*, Tucson cites evidence that fails to show any connection between Defendants' actionable conduct and the District's injury.  Instead, Tucson relies on evidence of third-party content and protected publishing activity—which the Court already held cannot establish liability—and evidence of cellphone use or student mental health generally that has no connection to Defendants' actionable conduct, all of which is independently inadmissible for lack of foundation and hearsay.

*Third*, because Tucson has no evidence of Defendants' actionable conduct causing harm, Tucson argues that evidence related to Defendants' protected platform features is relevant to its failure to warn claim.  But here too Tucson cannot meet its burden to show causation because it lacks evidence that Tucson would have acted in response to a warning and that Tucson's actions would have alleviated the alleged harm.

### 1.    Tucson Fails to Apply the Proper Causation Standard.

Tucson concedes that it must establish proximate cause to survive summary judgment on its negligence claim.  Tucson Opp. 2 (ECF No. 2369).  While Tucson claims that it needs to show only that Defendants' conduct contributed "only a little" to its damages, *id.*, it ignores that this is the standard for "but for"—not proximate—cause.  *See Grafitti-Valenzuela*, 167 P.3d at 717.  Under Arizona law, "[a] defendant's acts are the proximate cause of a plaintiff's injury only if they are a substantial factor in bringing about the harm."  *Id*.  In any event, for the reasons explained in Defendants' motion and below, Tucson cannot show either "but for" or proximate cause.

Tucson inaccurately asserts that its public nuisance claim requires a showing of only an "unreasonable interference with a public right," not proximate cause.  Tucson Opp. 2.  That is incorrect.  Arizona law is clear that causation is an element of a nuisance claim: "Under general tort law, liability for nuisance may be imposed upon one who sets in motion the forces which eventually

1   cause the tortious act," meaning that there must be a "showing of a *causal connection* between that

2   [Defendant's] activity and harm to another." *Armory Park Neighborhood Ass'n v. Episcopal Cmty.*

3   *Servs. in Ariz.*, 712 P.2d 914, 920 (Ariz. 1985) (emphasis added); *see also Bradford v. City of Tucson*,

4   573 P.3d 557, 562 (Ariz. Ct. App. 2025) (same); *Brown v. City of Phoenix*, 557 P.3d 321, 328  (Ariz.

5   Ct. App. 2024) ("[C]ausation is an essential element of a public nuisance claim."); *Thienes v. City*

6   *Center Exec. Plaza, LLC*, 2016 WL 5219858, at *13 (Ariz. Ct. App. Sep. 22, 2016) (nuisance claim

7   required that defendant created condition that was a "substantial factor" in causing plaintiff's harm).

8   The case Tucson cites makes clear that causation is an element of nuisance claims.  *See* Tucson Opp.

9   2 (citing *Rollings v. City of Tucson*, 2007 WL 5556969, at *3 (Ariz. Ct. App. Dec. 24, 2007) (plaintiff

10   required to show "that the City's water had invaded Rollings's property and *had caused Rollings*

11   *damage*.")) (emphasis added).[2]   Tucson thus cannot evade its burden to show that Defendants'

12   actionable conduct caused its alleged harms.

### 2.   Tucson Has No Competent Evidence It Was Harmed Because of Defendants' Actionable Conduct.

#### (a)   Tucson Relies Solely on Evidence of Third-Party Wrongdoing and Protected Publishing Activities.

16        Tucson's claims fail because the evidence Tucson cites, Tucson Opp. 4–6, relies *solely* on

17   examples involving protected features or content.

18       **Online Bullying.**  Tucson cites testimony that disruptions at school occur because "students

19   can create as many accounts as they want, they will come at a[nother] student by posting a meme or

20   making fun of someone." Tucson Opp. Ex. 5 (ECF No. 2369-6) (Rubio Dep.) 88:3–6 (cited at Tucson

21   Opp. 6).  But Defendants cannot be held liable for harmful messages posted by third parties.  *Fair*

22   *Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)

23   ("Section 230 . . . immunizes providers of interactive computer services against liability arising from

24   content created by third parties[.]"); Order Granting in Part and Denying in Part Defendants' Motions

---

26   [2] The other case cited by Tucson did not address causation but held that a city would have been
27   permitted to ban "live sex act clubs" as public nuisances because they "would contribute to the spread
    of sexually transmitted diseases," *Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App.
28   2006), so it is of no help to Tucson.

1   to Dismiss ("PI Order") (ECF No. 430) 16 (holding that that Section 230 bars any theory of liability

2   that would "require defendants to publish less third-party content").

3        **Creating and Viewing Harmful Content.**  Tucson argues that "Defendants' platforms

4   promote and encourage students to engage in attention-seeking behavior, e.g., posting school threats

5   and videos of fights." Tucson Opp. 4, n.2.  Likewise, Tucson cites the testimony of Julie Shivanonda,

6   Tucson's former Director of Social Emotional Learning and 30(b)(6) designee, to support its claim

7   that social media "contributes to an 'increase of anxiety, depression [and] social isolation,'" *id.* 5,

8   but Ms. Shivanonda testified that this purported increase was a "response to what [students are]

9   seeing and what they're engaging [with] on social media"—in other words, a response to *content.*

10   *See* Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 137:19–25; *see*

11   *also id.* 72:19–73:16 (disciplinary issues related to social media are "due to students creating profiles

12   and posting about fights"); *id.* Ex. 17 (ECF No. 2369-18) (June 30, 2025 Shivanonda Dep.) 15:4–

13   16:16 (Tucson behavioral specialists "work around a multitude of [student] behaviors that are often

14   *caused by social media content*") (emphasis added).  Tucson also cites to the testimony of its

15   Superintendent, Dr. Gabriel Trujillo, about school threats and "problematic images" being posted on

16   social media.  *Id.* Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 172:11–173:5 (cited at Tucson Opp. 6).

17   As noted, Defendants cannot be liable for allegedly harmful content posted by third parties.

18   *Roommates.Com, LLC*, 521 F.3d at 1162; PI Order 16.

19        **Social Media Challenges.**  Tucson also cites testimony that students participated in social

20   media challenges.  Tucson Opp. 3 (citing Tucson Opp. Ex. 5 (ECF No. 2369-6) (Rubio Dep.) 134:2–

21   19 (discussing "students destroying school property" "as part of" "TikTok challenges")).  But the

22   Court held that "alleged injury stemming from non-foreseeable third-party conduct cannot be

23   attributable to defendants," and that Defendants cannot be liable for the "mere publication of . . .

24   third-party content," absent evidence (which Tucson lacks) that Defendants engaged in "conduct like

25   providing cash prizes to challenge participants."  SD Order 25.

26        **"Likes," "Comments," and "Streaks."**  Tucson cites testimony that administrators have

27   allegedly observed students' "unhealthy" or compulsive" behavior tied to "likes," "streaks," "love,"

28   "reposts," and "reshares."  Tucson Opp. 5–6 (citing Tucson Opp. Ex. 5 (ECF No. 2369-6) (Rubio

Dep.) 43:22–44:4, 44:17–45:13; *id.* Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 108:10–109:13, 202:18–203:7; *id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivananda 30(b)(6) Dep.) 135:9–136:3. But the Court expressly held that Plaintiffs' claims with respect to notifications relating to third-party content (*e.g.*, likes) are barred under Section 230, and with respect to Defendants' own content including rewards to users for engagement (*e.g.*, Streaks) are barred under the First Amendment. SD Order 14; PI Order 18 ("where notifications are made to alert users to third-party content, Section 230 bars plaintiffs' product defect claims . . . . This includes notifications that someone has commented on or liked a user's post"); *id.* 22 ("the timing and clustering of notifications *of defendants' content* to increase addictive use . . . is entitled to First Amendment protection. There is no dispute that the content of the notifications themselves, such as awards, are speech.") (emphasis in original).

**Creating Videos During the School Day.** Tucson also argues that students are tardy or truant because they are "creating their videos for their TikToks to upload." Tucson Opp. Ex. 5 (ECF No. 2369-6) (Rubio Dep.) 42:22–43:5. The Court has made clear that Section 230 protects Defendants' decisions to publish third-party content such as videos, and that they cannot be held liable for "[f]ailing to institute blocks to use during certain times of day (such as during school hours or late at night)." SD Order 14. Therefore, the District cannot hold any Defendant liable for failing to prevent students from creating and posting videos during school hours.

**Body Dysmorphia.** Tucson cites testimony from an administrator who claimed that filters can affect body dysmorphia. Tucson Opp. 6 (citing Tucson Opp. Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 166:25–167:11). This testimony is insufficient for three reasons.

*First*, the testimony is inadmissible for lack of personal knowledge because the witness testified only to being "*aware of* times in the past where" other employees have run groups for young women focused on body dysmorphia. Tucson Opp. Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 167:5–7 (emphasis added); *see Wicker v. Oregon ex rel. Bureau of Labor*, 543 F.3d 1168, 1178 (9th Cir. 2008) (declaration disregarded at summary judgment where declarant discussed "a meeting which they apparently did not attend and about which they had no personal knowledge").

*Second*, even if admissible, the testimony is based on alleged harms from third-party content and non-actionable features. The witness linked the alleged body dysmorphia to "bullying and

harassment."  Tucson Opp. Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 166:25–167:4.  She also claimed that "young women" feel the "need[] to look like the people they see online that are provided to them through targeted ads."  *Id.* 167:9–11.  Both claims are barred by Section 230 and this Court's orders.  *See* SD Order 14; PI Order 18.[3]

*Third*, this vague, general testimony is insufficient as evidence of Tucson's claims; it establishes nothing about the severity or volume of any issues related to body dysmorphia within the District allegedly caused by filters—let alone any evidence linking such issues to the filters offered by a particular Defendant's platform(s) or to financial expenditures by Tucson.[4]  The witness admitted that she did not have any data to support her conclusion that body dysmorphia is caused by filters (though she claimed to be aware of what she called "correlation data").  Tucson Opp. Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 168:15–20.

**Parental Controls and Age Verification.**  Because Tucson lacks evidence connecting Defendants' actionable conduct to the alleged harm, it asserts—without citation—that all of "[t]hese problems are worsened by the absence of effective parental controls or age verification."  Tucson Opp. 6.  Such "bare assertions unsupported by evidence in the record . . . cannot survive summary judgment."  *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1176–77 (9th Cir. 2022); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

---

[3] While the Court held that Plaintiffs could proceed on claims "that the filters are harmful regardless of whether children eventually post the images that they filtered" and "not labeling filtered content," *see* PI Order 22, this testimony alleges specifically that students were harmed by viewing content posted by others.  *Lemmon v. Snap, Inc.*, 995 F.3d 1035 (9th Cir. 2021), held squarely that plaintiffs "would not be permitted under [Section 230] to fault Snap for publishing other Snapchat-user content," including filtered content.  *Id.* at 1093 n.4.  And this Court confirmed that Section 230 bars any theory of liability that would "require defendants to publish less third-party content."  PI Order 16.  Moreover, this testimony is not limited to filtered images and says nothing about how those images were labeled.

[4] Plaintiffs' general causation expert admitted that YouTube does not offer "their own appearance filter."  Plaintiffs' Response to Defendants' Motion to Exclude General Causation Testimony of Plaintiffs' Experts, Ex. 24 (ECF No. 2405-27) (Christakis Dep.) 733:10–25.

**(b)      Tucson Lacks Evidence of Causation as to Any Defendant's Specific Platform.**

Tucson lacks competent evidence establishing that Tucson students use any Defendant's specific platform(s) in a harmful manner.  Tucson does not dispute that it lacks the categories of district-wide data identified in Defendants' motion, Tucson Mot. 21–22—*e.g.*, data regarding how frequently students use Defendants' platforms, the features they use, or the prevalence of any alleged resulting mental health harms.  Tucson instead relies on evidence that it claims shows that (i) *cellphones* have caused discipline issues in schools, (ii) student mental health issues have increased; and (iii) student disciplinary issues have increased.  Even if this evidence were admissible, it cannot carry Tucson's burden to establish that *each Defendant*—let alone any Defendant's actionable conduct—was a cause of Tucson's injury.  *See Piner v. Super. Ct. in & for Cnty. of Maricopa*, 962 P.2d 909, 916 (Ariz. 1998) ("[T]he plaintiff has the burden of proving that the conduct of each defendant was a cause of the injury[.]")

**Tucson Cannot Rely on General Evidence of Cellphone Use.**  Tucson cites evidence that administrators view *cellphone* use as a problem in Tucson, but that evidence shows no connection to Defendants' platforms or their actionable conduct.  *See* Tucson Opp. Ex. 5 (ECF No. 2369-6 (Rubio Dep.) 128:23–129:3, 135:20–136:6; *id.* Ex. 6 (ECF No. 2369-7); *id.* Ex. 7 (ECF No. 2369-8) (communications with parents that discuss the "distraction" of cellphones but do not mention social media or Defendants' platforms)).  Defendants' platforms represent just five of millions of applications available on cellphones; Tucson cannot show causation without evidence linking Tucson students' cellphone use to Defendants' platforms and then to expenditures by the District.  Nor can Tucson cure this deficiency by citing anecdotal, inadmissible testimony that the majority of student cellphone use is linked to social media use broadly.  Tucson Opp. 3–4  (citing Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 80:3–83:22, 150:22–151:18; *id.* Ex. 3 (ECF No. 2369-4) (May 13, 2025 Shivanonda Decl.) ¶¶ 3, 4; *id.* Ex. 5 (ECF No. 2369-6) (Rubio Dep.) 44:8–13, 86:13–24, 105:21–23).  Even if the testimony were admissible, *see* Section II.A.2.(c), *infra*, anecdotal testimony from a handful of administrators cannot be generalized to tens of thousands of students during an eight-year period.

**Tucson Cannot Rely on Lay Speculation That Social Media Harms Mental Health.**

Tucson cites Ms. Shivanonda's testimony that social media use is responsible for a purported increase in students' behavioral and social-emotional needs[5] and that certain features (which are protected by Section 230, *see supra* Section II.A.2.a) drive purported compulsive engagement,[6] but Ms. Shivanonda is a lay witness, not a licensed psychiatrist or adolescent psychologist.  Tucson Opp. Ex. 2 (ECF No. 2369-3) (April 9, 2025 Shivanonda 30(b)(6) Dep.) 345:12–346:2; *see* Fed. R. Evid 701. So she "may not testify regarding a diagnosis, opinions, inferences or causation," or offer her opinion as to the features responsible for students' alleged compulsive use.  *See Williams v. Steglinksi*, 2016 WL 1183134, at *1 (E.D. Cal. Mar. 28, 2016); *Lee v. City of Madera*, 2008 WL 5042856, at *4 (E.D. Cal. Nov. 20, 2008) ("[A] lay witness cannot offer testimony to establish a legal conclusion.").

Ms. Shivanonda's opinions are also inadmissible for speculation, lack of personal knowledge, and hearsay—Ms. Shivanonda admitted her testimony is based on anecdotal conversations with other Tucson staff, not any comprehensive analysis.  *See* Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 101:21–102:21 (Tucson has never conducted an "explicit survey or an explicit analysis" of harms allegedly linked to social media); *id.* 119:7–121:2 (testifying that her opinions were based on "anecdotal conversations"); *Block v. City of L.A.*, 253 F.3d 410, 419 (9th Cir. 2001) (refusing to consider affidavit on summary judgment because it was "[n]ot made on personal knowledge" and relied on information from others).  Ms. Shivanonda further admitted that Tucson does not maintain any data on student diagnoses or the causes of student mental health problems.  Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 111:17–112:12 (stating that student diagnoses "[are] not necessarily trackable data"); *id.* 118:5–7 ("[W]e do not diagnose students with any disorders.  We are not clinicians or medical staff.").  And while she claimed that she saw an increase in "needs of students" "around 2015, 2016" from "personal

---

[5] Tucson Opp. 5 (citing Tucson Opp. Ex. 2 (ECF No. 2369-3) (April 9, 2025 Shivanonda 30 (b)(6) Dep.) 267:23–268:6, 353:24–354:15; *id.* Ex. 3 (ECF No. 2369-4) (May 13, 2025 Shivanonda Decl.) ¶ 9; *id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 66:11–67:9, 72:12–17, 73:4–16, 136:13–137:25)).

[6] Tucson Opp. 6 (citing Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 135:9–136:3 (discussing "the likes and the love and the repost and the reshares")).

experience," that experience was limited to her work in one middle school in 2016. *Id.* 67:2–9. Observations by one person in one middle school for one year cannot establish causation for the entirety of Tucson's claims.

Nor do Tucson's experts fill this gap. While Plaintiffs have presented general causation expert testimony on the mental health problems caused by "social media" generally, Tucson has not presented any expert testimony regarding the causes of mental health problems in Tucson specifically. *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 922 (C.D. Cal. 2004) (granting summary judgment where plaintiff failed to offer admissible expert testimony of specific causation); *Nelson v. Matrixx Initiatives*, 2012 WL 3627399, at *13 (N.D. Cal. Aug. 21, 2012), *aff'd*, 592 F. App'x 591 (9th Cir. 2015) ("Even assuming there is a triable issue on general causation, this does not create a genuine issue on specific causation. This is because there is a difference between determining whether scientific evidence supports an inference that the alleged exposure is capable of causing the type of injury in humans versus whether it was the most likely cause of the alleged injury in plaintiff.").

Testimony about student mental health also cannot create a genuine dispute of material fact on causation because it attempts to hold Defendants liable for non-actionable conduct. *See* Defendants' Omnibus Reply ("Omnibus Reply") Section II.A.2. For instance, Tucson cites Superintendent Gabriel Trujillo's testimony that social media use is "pervasive," Tucson Opp. 3 (citing Tucson Opp. Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 188:3–21), but this testimony relied on conduct the Court held cannot create liability, *id.* 186:10–186:25, 188:3–189:10 (referencing "online harassment and bullying," "videos, images and comments," and "memes," as "the major factors that we deal with as it pertains to the pervasive usage of these platforms by students," and discussing students "making comments about students' weights, students' looks, students' appearance" on social media as a "highly prevalent problem"). *See* PI Order 16. Allowing Tucson to rely on this testimony to avoid summary judgment would be an end-run around the Court's order.

**Tucson Cannot Rely on Evidence of Disciplinary Violations.** Tucson's claim that Defendants' platforms are responsible for a purported increase in student disciplinary issues is unsupported by record evidence. Tucson Opp. 4. Tucson points to an increase in the number of

disciplinary violations relating to "Improper Use of Technology," but it is undisputed that this category includes a "wide variety of discipline actions *not* having to do with social media or even cellphones, such as student possession of gaming systems, copyright infringement, vandalism of school computers, or downloading malware to school computers. Tucson Opp. Ex. 14 (ECF No. 2369-15) (Schwartz-Warmbrand Dep.) 69:20–70:14; *id.* Ex. 2 (ECF No. 2369-3) (April 9, 2025 Shivanonda 30(b)(6) Dep.) 220:25–222:21. Tucson also points to a purported increase in the overall number of disciplinary violations, Tucson Opp. 4, but has no admissible evidence that any increase is driven by Defendants' platforms. Tucson's Superintendent and Director of Student Relations both testified that Tucson has never analyzed how many disciplinary violations involve social media or cellphones. Tucson Opp. Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 201:10–202:5; *id.* Ex. 14 (ECF No. 2369-15) (Schwartz-Warmbrand Dep.) 48:25–50:7, 71:12–72:16.

### (c)    Tucson Lacks Admissible Evidence of Causation.

The evidence cited in Tucson's Opposition cannot create a genuine dispute for the independent reason that it is inadmissible. *See* Tucson Mot. 23, 29; Fed R. Civ. P. 56(c)(2); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 733 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").[7]

Tucson repeatedly attempts to prove causation with inadmissible testimony based on "anecdotal data" or "conversations" with unidentified third parties. Tucson Opp. 2–6. For instance, Tucson cites Ms. Shivanonda's testimony that cellphone use is "pervasive" and that social media is responsible for the majority of Tucson's disciplinary incidents. *Id.* 3–5 (citing Tucson Opp. Ex. 2 (ECF No. 2369-3) (April 9, 2025 Shivanonda Dep.) 228:21–25; *id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 46:23–47:25, 48:25–49:3, 79:14–80:2)). But Ms. Shivanonda testified that her understanding was based on anecdotal conversations. *Id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 49:10–19 ("[A]necdotally, as we talk with administrators

---

[7] Tucson does not respond to this argument in its Opposition and so has waived any response. *See Alexopulos ex rel Alexopulos v. Riles*, 784 F.2d 1408, 1410–11 (9th Cir. 1986) (tolling argument waived because the appellants failed to raise it in opposition to summary judgment); *Reliance Ins. Co. v. Doctors Co.*, 299 F.Supp.2d 1131, 1154 (D. Haw. 2003) ("Failure to raise issues in opposition to summary judgment functions as a waiver" of the argument. (citation omitted)).

1    . . . through those conversations we can see that that kind of through line is generally connected with

2    social media in some way."); *id.* 79:14–80:2 ("anecdotal data" about how often students use

3    cellphones is based on "conversations" between Ms. Shivanonda and "counselors" who "talk with

4    teachers").   Tucson likewise cites testimony that during revisions to the code of conduct, students

5    reported frequently using cellphones and social media, but Ms. Shivanonda admitted her knowledge

6    of these "conversations" with students was "secondhand." *Id.* 83:11–22; *see also id.* 80:7–18.[8]  This

7    testimony is plainly inadmissible for lack of personal knowledge and hearsay.  *See* Fed. R. Evid. 602,

8    801–802.   Tucson has not offered any evidence from any of the individuals with whom Ms.

9    Shivanonda conversed—let alone evidence that the incidents discussed concerned Defendants'

10   platforms or, if so, what features of Defendants' platforms.

11           Likewise, Tucson cannot rely on the testimony of Superintendent Trujillo, Regional Assistant

12   Superintendent Brian Lambert, and Tucson High School Dean of Students Clarinda Rubio.  All three

13   admitted their testimony was based on anecdotes or conversations with unidentified third parties.

14   Tucson Opp. Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 168:19–170:2 (citing "anecdotal data" and

15   admitting that District conducted no formal surveys or analysis); *id.* Ex. 5 (ECF No. 2369-6) (Rubio

16   Dep.) 86:13–24 (citing Ms. Rubio's conversations with other unidentified employees about student

17   technology use); *id.* 128:23–129:3 (referring to conversations about cellphone confiscation); *id.* Ex.

18   13 (ECF No. 2369-14) (May 14, 2025 Lambert Dep.) 142:6–22 (citing "anecdotal conversations"

19   from "talking with students and families").

20           This type of anecdotal, unsupported, and self-serving testimony should be disregarded as

21   inadmissible hearsay lacking personal knowledge.  *See* Fed. R. Evid. 602, 801–802; *Block*, 253 F.3d

22   at 419 (testimony inadmissible at summary judgment where declarant "was not personally involved

23   in any of the disciplinary suspensions, . . . did not personally review any business records containing

24   information regarding such disciplinary suspensions" and "instead relied on information from

25

26   ───────────────

     [8] In any event, the witness with responsibility for revisions to the Tucson code of conduct, Tucson's
27   Director of Student Relations, testified that the feedback received regarding cellphones was not
     sufficient to warrant changing the code of conduct.  Tucson Opp. Ex. 14 (ECF No. 2369-15)
28   (Schwartz-Warmbrand Dep.) 151:1–153:6.

─────────────────────────────────────────

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1  (unsworn) departmental personnel officers, and the source of these officers' information is unclear");

2  *United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir. 1970) (summary judgment cannot be

3  predicated on affidavits that do not "show affirmatively that the affiant is competent to testify to the

4  matters stated therein").

5  ### 3. Tucson's Failure to Warn Arguments Cannot Save its Claims from Dismissal on Causation Grounds.

6  Even if Defendants had a duty to warn Tucson (they do not, *see infra* Section II.B), Tucson

7  likewise lacks admissible evidence that any failure to warn caused its alleged harm. *See* Tucson Mot.

8  46–47.[9]  To defeat summary judgment, Tucson must show that (1) Tucson would have taken

9  precautions in response to a warning and (2) Tucson's response would have avoided its injuries. *See*

10  *Golonka*, 65 P.3d at 965–66 ("To prove causation, Plaintiffs were required to present evidence that

11  if GM had issued a proper warning, Mrs. Golonka would have taken precautions to avoid the

12  accident."); *Mills v. Bristol-Myers Squibb Co.*, 2011 WL 4708850, at *3 (D. Ariz. Oct. 7, 2011) ("For

13  plaintiff to establish proximate cause on her failure to warn claim, she needs to show that had a proper

14  warning been given, the injury would not have happened.").  Tucson cannot offer evidence on either

15  point.

16  **Tucson Cannot Show It Would Have Responded to a Warning.**  Tucson argues that it

17  would have acted in response to a warning because it previously placed limits on student cellphone

18  use, Tucson Opp. 13–14, but that necessarily means the alleged failure to warn cannot be the

19  proximate cause of any inaction by Tucson.  *See Raschke v. Carrier Corp.*, 703 P.2d 556, 559 (Ariz.

20  Ct. App. 1985) (failure to warn was not proximate cause of injury where plaintiff had already taken

21  action they purportedly would have taken in response to warning).  Nor can Tucson claim that it

22  would have enacted even stricter cell phone bans if it received an adequate warning.  Even after it

23  allegedly became "aware of the harms caused by Defendants' platforms," Tucson Opp. 14, Tucson

24  did not revise its cellphone policy until just a few months ago—years after filing this litigation—and

---

[9] Tucson does not argue that a "heeding presumption" applies and so has forfeited any argument to the contrary; and, in any event, Arizona recognizes the presumption only "in a strict liability information defect case" not applicable here. *See, e.g.*, *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 967 (Ariz. Ct. App. 2003).

1   it did so only because a new Arizona law required school districts to limit student cellphone use.

2   Reply Ex. 1 (September 16, 2025 Tucson Cellphone Policy); Tucson Opp. Ex. 1 (ECF No. 2369-2)

3   (Trujillo Dep.) 328:8–330:11.   But, even after these revisions, Tucson *still allows* high school

4   students to use cell phones during lunch and allows all students to use cellphones on campuses before

5   or after school, for educational purposes, or on trips outside school (if approved by a teacher or

6   coach).   Reply Ex. 1 (September 16, 2025 Tucson Cellphone Policy).   And the new policy does not

7   prohibit students from using social media on their cellphones while at school.   *Id.*   Further, Tucson

8   contends that "an outright ban" is "impractical," that its ability to enforce restrictions are limited by

9   parental concerns, and that it has "no means to dictate" what students access on their personal

10  devices.   Tucson Opp. 14 & n.9.  Thus, by Tucson's own account, it lacked the ability to enact further

11  changes even if it had received a warning.

12          Nor can Tucson rely on a newly minted declaration to create a triable issue.   *See* Tucson Opp.

13  14 (citing Tucson Opp. Ex. 31 (ECF No. 2369-32) (November 1, 2025 Shivanonda Decl.)).   In her

14  new declaration submitted with the Opposition, Ms. Shivanonda claims that if Defendants had

15  provided "adequate, evidence-informed warnings" (a term Ms. Shivanonda does not define), then

16  Tucson would "have implemented additional preventive programming and early intervention

17  measures."   Tucson Opp. Ex. 31 (ECF No. 2369-32) (November 1, 2025 Shivanonda Decl.) ¶¶ 4, 9.

18  Ms. Shivanonda never explains what information the warning should have included, where the

19  warning should have been located, or who would have read the warning.   Nor does Ms. Shivanonda

20  explain what information Tucson would have received from this warning that it did not already

21  possess.

22          And critically, Ms. Shivanonda's declaration cannot create a dispute of material fact as to

23  what Tucson would have done in the face of an adequate warning because, after years of litigation,

24  Tucson has *not actually taken any of these actions*.   *See Shetter v. Rochelle*, 411 P.2d 45, 46 (Ariz.

25  Ct. App. 1966) (ordering directed verdict for defendant for lack "of reliance by the plaintiff on any

26  failure to warn").   Indeed, Ms. Shivanonda testified that Tucson identified the problems of social

27  media as early as 2015.  Tucson Opp. Ex. 17 (ECF No. 2369-18) (June 30, 2025 Shivanonda Dep.)

28  46:17–22.   Yet, during the last 10 years, it has not done the things she self-servingly says Tucson

1   "could and would have" done, despite purportedly knowing about the alleged harms of Defendants'

2   platforms and the attendant rise in student mental health issues. *Id.* Ex. 31 (ECF No. 2369-32)

3   (November 1, 2025 Shivanonda Decl.) ¶ 6. To the contrary, Tucson allows students to access

4   YouTube on school devices and networks, *id.* Ex. 2 (ECF No. 2369-3) (April 9, 2024 Shivanonda

5   30(b)(6) Dep.) 378:11–20, 380:22–25, 386:13–15, and uses YouTube to share videos with "students,

6   staff, [and] parents," *id.* 385:2–7. Further, Tucson regularly engages with its students and families

7   through social media. *See id.* Ex. 8 (ECF No. 2369-9) (Carrier Dep.) 150:3–151:7 (Tucson engages

8   with its students on social media); *id.* Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 306:15-307:11 (Tucson

9   and individual schools within Tucson use Facebook, Instagram, and YouTube to communicate with

10  parents and students); *id.* 312:14–313:17 (agreeing that social media can be an incredible

11  instructional tool); *id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 180:5–

12  186:6 (Tucson uses Facebook, Instagram, and YouTube to communicate with students and families).

13      In short, Ms. Shivanonda's claim that Tucson would have acted in response to an unspecified,

14  hypothetical warning is speculative and cannot create a genuine dispute of material fact. *See Grafitti-*

15  *Valenzuela*, 167 P.3d at 718–19 (opinion that additional precautions would have prevented plaintiff's

16  harm did not create a genuine issue of fact on causation because "there [was] no basis in the facts"

17  supporting this conclusion, so it was "nothing more than speculation"); *Badia v. City of Casa Grande*,

18  988 P.2d 134, 142 (Ariz. Ct. App. 1999) ("Sheer speculation is insufficient to establish the necessary

19  element of proximate cause or to defeat summary judgment.").

20      **Tucson Has No Evidence that a Warning Would Have Prevented the Alleged Harm.**

21  Even if Tucson could show that it would have acted in response to a warning, Tucson cannot show

22  that the warning would have reduced its injuries. Tucson has presented no evidence that any

23  additional cell phone restrictions Tucson could have implemented would have affected student

24  mental health or Tucson's expenses. And Ms. Shivanonda does not claim—and would have no basis

25  to claim—that any other additional measures implemented by Tucson would have caused a single

26  student in Tucson to use Defendants' platforms less or experience fewer mental health harms. She

27  likewise has no basis to make the much larger leap that any additional measures taken by Tucson

28  would have sufficiently improved student mental health such that Tucson would have expended

1  fewer financial resources to address the alleged impact of students' use of Defendants' platforms.

2      **B.    Defendants Have No Duty to Warn Under Arizona Law.**

3          Summary judgment is also warranted on Tucson's failure to warn claim for the separate

4  reason that Tucson has not established that Defendants have a duty to warn.  Tucson does not identify

5  any Arizona authority supporting its novel claim that Defendants owed a duty to warn the District or

6  separately that Defendants owed a duty to warn the District's students and parents running to and

7  enforceable in tort by the District.

8          "[D]uty is not presumed; in every negligence case, the plaintiff bears the burden of proving

9  the existence of a duty." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz. 2018).  Tucson asserts that

10 "a duty to warn arises when a defendant's conduct creates a foreseeable risk of harm to others,"

11 Plaintiffs' Omnibus Opposition ("Om. Opp.") (ECF No. 2414-1) 5, but Arizona courts expressly

12 "remov[ed] foreseeability from [its] duty framework," "limiting the duty analysis to special

13 relationships and public policy."  *Quiroz*, 416 P.3d at 829; *see also Dinsmoor v. City of Phoenix*, 492

14 P.3d 313, 316 (Ariz. 2021) ("Duties are based on [either] 'special relationships' or on [ ] public

15 policy.").  Neither the Omnibus Opposition nor Tucson's individual Opposition identifies a single

16 Arizona case recognizing this kind of duty.

17         Tucson does not even argue that Defendants owed a duty to warn the District based on any

18 special relationship or public policy, as required under Arizona law.  Nor could it: "A duty based on

19 a special relationship requires a preexisting, recognized relationship between the parties," and Tucson

20 cannot identify any such relationship between itself and Defendants.  *Cal-Am Props. Inc. v. Edais*

21 *Eng'g Inc.*, 509 P.3d 386, 390 (Ariz. 2022) (citing *Quiroz*, 416 P.3d at 829).  Nor does Tucson point

22 to any state statutes covering the harms it alleges here, which is "the primary source of duties based

23 on public policy."  *Id.*; *see also CVS Pharmacy Inc. v. Bostwick in and for Cnty. of Pima*, 494 P.3d

24 572, 578 (Ariz. 2021) (requiring duties be "clearly expressed [in] public policy").

25         Moreover, Arizona courts have consistently refused to extend a duty to warn beyond direct

26 users of products or services.  *E.g.*, *Quiroz*, 416 P.3d at 829 (plaintiff could not assert failure to warn

27 claim based on defendant's alleged contamination of plaintiff's father with asbestos); *Conklin v.*

28 *Medtronic, Inc.*, 431 P.3d 571, 577 (Ariz. 2018) (holding state law doctrine "does not permit (or

1   require) a manufacturer to warn any and all third parties" of potential dangers of their products);

2   *Harris v. Medtronic Inc.*, 2023 WL 2478913, at *2 (D. Ariz. Mar. 13, 2023) ("Arizona law does not

3   recognize a duty to warn a third party such as the FDA" of "alleged deviations and defects" in drugs

4   (citation modified)).    Arizona courts have likewise barred plaintiffs from bringing suit based on

5   alleged failures to warn third parties, precluding Tucson's claims based on alleged failures to warn

6   students or parents.  *See* Tucson Mot. 48–49; *Quiroz*, 416 P.3d at 827 (plaintiff could not bring suit

7   for defendant's alleged failure to warn plaintiff's father "about the dangers of secondary asbestos

8   exposure," regardless of whether harm to plaintiff was foreseeable).

9           Not only are Tucson's claims out of step with Arizona law—they make no sense even under

10  the Districts' own cited cases.  In the Districts' cited cases from other states, Om. Opp. 6–7, a warning

11  might have allowed the plaintiff to directly avoid the alleged harm.  *See, e.g., Dozier Crane & Mach.,*

12  *Inc. v. Gibson*, 644 S.E.2d 333, 336–3337 (Ga. App. 2007) (construction worker plaintiffs could have

13  avoided being electrocuted had there been a sticker on the crane warning of that risk).  By contrast,

14  here, Tucson primarily claims that a warning would have allowed them to provide increased

15  education and wellness programs to encourage "healthy and balanced technology use" and avoid

16  "problematic use patterns"—in other words, provide more warnings to students, parents, and

17  teachers.  Tucson Opp. Ex. 31 (ECF No. 2369-32) (November 1, 2025 Shivanonda Decl.).  The

18  Districts cite no cases, and Defendants are aware of none, that hold that a duty to warn exists in such

19  a four-step process—*i.e.*, (1) there is a duty to warn a non-user plaintiff of potential harms to users

20  (2) so that the plaintiff can then provide more warnings to users (3) in the hopes that the users take

21  steps to reduce their own injuries, (4) which theoretically could (but might not) then reduce any

22  downstream financial damage to the plaintiff.

23          **C.      Tucson Cannot Recover Past Damages.**

24                  **1.      Arizona Law Precludes Tucson from Recovering "Lost Time" Damages.**

25          Tucson fails to show that it can recover damages for its "general allegations of lost time,"

26  which "are not cognizable injuries" under Arizona law.  *Griffey v. Magellan Health Inc.*, 562 F. Supp.

27  3d 34, 45–46 (D. Ariz. 2021) (citation modified); *see also Feathers v. On Q Financial LLC*, 2025

28  WL 1769764, at *13 (D. Ariz. June 26, 2025) ("Plaintiffs' claimed damages for lost time and

opportunity costs is insufficient to state the damages elements of a negligence claim.").  Tucson concedes that Defendants' platforms have not caused Tucson to hire additional staff or spend extra money on employee salaries or benefits.  *See* Tucson Opp. 12; Tucson Mot. Ex. 55 (ECF No. 17-57) (Ward Dep.) 165:21–166:22, 168:1–15 (Plaintiffs' damages expert agreeing Defendants' platforms did not increase Tucson's personnel costs).  Rather, Tucson used unverified survey responses and employee affidavits to claim that a percentage of employee wages and benefits were "lost" via time spent on social media.  Tucson Mot. 27.

Tucson's cited cases do not establish any entitlement to these "lost time" damages based on a percentage of employee wages and benefits.  In *PivotHealth Holdings LLC v. Horton*, 2025 WL 1865788 (D. Ariz. July 7, 2025), the court found that the plaintiff sufficiently alleged injury-in-fact because "it suffered damages including 'employee time, costs, and legal fees' incurred in responding to and defending against" a wrongful lawsuit.  *Id.* at *2.  The court did not otherwise address the "employee time" allegation.  And in *IceMOS Tech. Corp. v. Omron Corp.*, 2020 WL 1083817 (D. Ariz. Mar. 6, 2020), the court found only that the defendant had notice of the plaintiff's alleged damages; it did not address whether any of those claimed damages were compensable.  *Id.* at *4 n.1.

## 2.    Tucson Lacks Evidence of "Lost Time" Attributable to Defendants' Actionable Conduct.

Even assuming "lost time" damages were cognizable under Arizona law, Tucson fails to make the requisite showing to recover such damages.  First, Tucson alleges that its estimated "lost time" is compensable because it prevented the employees from "perform[ing] their official functions."  Tucson Opp. 8.  But Tucson does not explain how each employee's time was spent, why those activities (which presumably involve classroom management and discipline) fell outside of their "official functions," or what "official functions" those employees were prevented from performing.

Moreover, Tucson has failed to provide evidence that any of the time allegedly "lost" was spent on issues related specifically to Defendants' platforms.  For example, Tucson relies on time estimates provided by Dr. Sabrina Salmon, the Senior Director of Exceptional Education, Tucson Opp. 9, but ignores her admission that these percentages included time her staff spend addressing "*whatever mental health concern or counseling that a student has*"—regardless of any connection to

1   Defendants' platforms.  *See* Tucson Opp. Ex. 19 (ECF No. 2369-20) (Salmon Dep.) 154:8–155:15

2   (emphasis added).  Tucson also cites to a list of staff positions that were purportedly "impacted by

3   Defendants' conduct," Tucson Opp. 8–9, but Ms. Shivanonda admitted that list of staff positions

4   included *any* school personnel that "would be somehow connected in supporting the overarching

5   whole child needs of all of our students," even without any connection to Defendants' platforms or

6   actionable conduct.  Tucson Opp. Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.)

7   62:24–65:23.  Finally, Tucson cites Mr. Lambert's estimates of the time principals and assistant

8   principals spent addressing issues somehow related to social media.  Tucson Opp. 9.  But Mr.

9   Lambert did not explain how that time was spent or its consequences, and he admitted that he did not

10  review any discipline reports, prior analyses, interviews, or surveys to reach his estimates, which he

11  called a "ballpark number."  Tucson Opp. Ex. 21 (ECF No. 2369-22) (July 1, 2025 Lambert Dep.)

12  16:4–20:23; *see also id.* Ex. 15 (ECF No. 2369-16) (June 24, 2025 Hammel Dep.) 168:21–171:14

13  (same, regarding Holly Hammel's time estimates).[10]

14          Tucson also fails to show that its unsupported, speculative, and overly broad estimates of

15  "lost time" constitute admissible evidence as required to survive summary judgment.  *See Gilmore*

16  *v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963) (plaintiff bears the burden of "show[ing] amount of their

17  damages with reasonable certainty"); *Harris Cattle Co. v. Paradise Motors, Inc.*, 448 P.2d 866, 868

18  (Ariz. 1968) ("[T]he testimony establishing the loss must be free of speculation and conjecture.").

19  Tucson's cited cases, Tucson Opp. 10, are not to the contrary.  The only case Tucson cites involving

20  lost time, *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953 (D. Ariz. 2020), is inapposite: there,

21  individual employees testified regarding the total number of hours that *they themselves* worked, and

22  that testimony was corroborated by their timesheets and other contemporaneous documentation.  *Id.*

23  at 966–68.  Indeed, *Ader* recognized that another court rejected a comparable lost time claim where,

24  like here, "no time records existed to corroborate the plaintiff's estimates."  *Id.* at 968 (discussing

25

26  ─────────────────────────────

27  [10] Tucson's damages estimates suffer myriad other fatal defects, including that affiants offered
    estimates for years they did not work in the District, positions they did not supervise, schools that
    were not comparable to those they observed, and time spent addressing harms caused by non-
28  actionable or unrelated conduct.  Mot. 28–32.  Tucson ignores these arguments entirely.

*Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014)); *see also Gilmore*, 386 P.2d at 83 (rejecting damages claim because "[n]o books of account or other record of the costs . . . were introduced"). Tucson's remaining cited cases are likewise inapposite because they also involved direct evidence of specific damages. *See Oliver v. Henry*, 260 P.3d 314, 315 (Ariz. Ct. App. 2011) (appraisal expert opined on value car lost due to collision); *A. Miner Contracting, Inc. v. Toho-Tolani Cnty. Imp. Dist.*, 311 P.3d 1062, 1073 (Ariz. Ct. App. 2013) (plaintiff "submitted a detailed list and explanation of its actual damages"). By contrast, Tucson failed to submit the evidence needed to substantiate its requested damages.

### 3. Tucson Lacks Evidence of Out-of-Pocket Expenses Caused by Defendants' Actionable Conduct.

Tucson does not even try to contend that its out-of-pocket costs were incurred as a result of Defendants' *actionable* conduct or that it has made any attempt to separate out costs attributable to third-party content or protected features. Nor does Tucson dispute the evidence cited in Defendants' motion that each claimed item of costs serves numerous functions beyond Defendants' platforms. Tucson Mot. 33–35. Instead, Tucson conclusorily asserts that these expenditures were "necessitated by Defendants' conduct," Tucson Opp. 11, but it lacks evidence to support that claim.

**Interrogatory Responses.** Tucson cannot rely on its interrogatory responses to create a genuine dispute. Courts regularly refuse to consider inadmissible interrogatory responses at summary judgment. *In re Cathode Ray Tube Antitrust Litig.*, 2017 WL 11237000, at *4 (N.D. Cal. Mar. 9, 2017) (refusing to consider responses verified "on information and belief, not personal knowledge"); *Miller v. Int'l Bus. Machines Corp.*, 2007 WL 1148996, at *2 (N.D. Cal. Apr. 18, 2007) (declining to consider responses that were hearsay).[11] Tucson's General Counsel verified these responses, but his verification admitted the responses "are not all necessarily within my personal knowledge, or within the personal knowledge of any single individual." Tucson Opp. Ex. 16 (ECF No. 2369-17) (Tucson's Interrogatory Responses) 6. He likewise admitted at deposition that he did

---

[11] Tucson's only cited case concerned whether an expert may rely on inadmissible hearsay in interrogatory responses in forming their opinion, not whether inadmissible responses could create a genuine dispute. *See Correct Transmission, LLC v. Nokia of Am. Corp.*, 2024 WL 1289821, at *5 (E.D. Tex. Mar. 26, 2024).

Case No. 4:24-cv-01382-YGR

not draft the responses, did not rely on any personal knowledge in verifying them, and did not personally review any underlying data. *Id.* Ex. 25 (ECF No. 2369-26) (Ross Dep.) 14:9–15:12, 44:4–25. Accordingly, the responses are not admissible evidence.

**Yondr Pouches.** Tucson relies solely on inadmissible testimony from its General Counsel that the District purchased Yondr because of "student use of social media." Tucson Opp. 11. But he admitted that Tucson does not have any data about the amount of time students spend on Defendants' platforms as opposed to other applications on their phones, Tucson Opp. Ex. 25 (ECF No. 2369-26) (Ross Dep.) 43:6–12, and Tucson's own documents show that it used Yondr to prevent students from using apps *other than* Defendants' platforms and from engaging in behaviors that could be done "via text message" such as "meeting up with friends," or "ordering food." *See id.* Ex. 4 (ECF No. 2369-5) (April 8, 2025 Shivanonda 30(b)(6) Dep.) 148:1–151:25.

**Cellphone Lockers.** Tucson relies on testimony from its General Counsel as to the purchase of cellphone lockers, but again, he admitted that Tucson lacked data about what students actually do on their phones. Tucson Opp. Ex. 25 (ECF No. 2369-26) (Ross Dep.) 43:6–12. Tucson also cites a declaration from a regional assistant superintendent, but the declaration does not attribute the expense to Defendants in particular. Tucson Opp. 11; *id.* Ex. 10 (ECF No. 2369-11) (Hammel Decl.) ¶ 12.

**Character Strong and Talkspace.** Tucson suggests expenses for the Character Strong and Talkspace programs were caused by Defendants because they relate to mental health and Defendants' platforms allegedly harm mental health. Tucson Opp. 11. Such "'conjecture or speculation' cannot provide the basis for an award of damages" and does not show the amount of damages with reasonable certainty. *See Gilmore*, 386 P.2d at 82.

**Additional Personnel.** Tucson argues that "the district needs more counselors, support staff, and site administrators," Tucson Opp. 12, but it does not dispute that it has not identified *any* specific job positions it alleges were created because of Defendants' platforms, *see* Tucson Mot. 33. While Tucson now claims that the "inability to hire needed personnel . . . is itself a compensable harm," this is an entirely new theory without support in the record. For instance, Tucson has no evidence of what staff it needed to, but could not, hire in the past as a result of Defendants' platforms, or the amount of resulting damage.

1      **Property Damage.**  Tucson abandons any claims for repairing property damage allegedly

2   caused by social media challenges.  *See* Mot. 36 (arguing that Tucson cannot recover property

3   damage resulting from third-party acts); Om. Opp. 195–199 (not claiming property damage among

4   Tucson's "hard costs"); Tucson Opp. 11–12 (not listing property damage as an "additional cost").

5          **D.      Tucson Cannot Recover the Hoover Plan As Future Damages.**

6       The Arizona case cited by the District in the Omnibus Opposition (at 205) confirms that future

7   damages are not available as a matter of law for the alleged "future injuries" that Tucson claims it

8   will suffer.  Om. Opp. 206.  That case makes clear that a plaintiff may seek expenses for reasonably

9   certain future medical treatment for a *past injury* but says nothing about allowing payments for

10   injuries that have not yet occurred.  *Saide v. Stanton*, 659 P.2d 35, 36 (Ariz. 1983).

11      Even if future damages were available as a matter of law, as demonstrated in the Omnibus

12   Reply (Section II.C.2), Tucson has no evidence that it is reasonably certain to incur over $1 billion

13   in future expenses over the next 15 years because of alleged past injuries from Defendants' actionable

14   conduct.  *Gilmore*, 386 P.2d at 82. Contrary to Tucson's suggestion, Om. Opp. 206–07, this

15   heightened requirement applies to all forms of future damages, not just lost profits.  *See, e.g.*,

16   *DeStories v. City of Phoenix*, 744 P.2d 705, 707–09 (Ariz. Ct. App. 1987) (future medical expenses);

17   *Allen v. Devereaux*, 426 P.2d 659, 662 (Ariz. Ct. App. 1967) (future pain and suffering damages);

18   *see also Saide*, 659 P.2d at 36 (plaintiff must show that the "need for future care" is "reasonably

19   probable and there must be some evidence of the probable nature and cost of the future treatment").

20      Tucson has no evidence of what level of alleged mental health harms its students will

21   experience over the next 15 years (either as a result of Defendants' actionable conduct or

22   otherwise)—let alone how those harms will affect its finances.  There is no expert testimony specific

23   to Tucson, no testimony linking alleged future expenditures to Defendants' actionable conduct, and

24   no testimony considering the effect of future changes to Defendants' platforms.  Tucson relies

25   entirely on Dr. Hoover's opinions, but her opinions are virtually the same for every District and are

26   entirely speculative as to what future expenses will be needed.  *See* Tucson Mot. 43–44; *Gilmore*,

27   386 P.2d at 82 ("'conjecture or speculation' cannot provide the basis for an award of damages").

28   They are based on *nationwide* staffing recommendations that Tucson has long failed to meet for

reasons that have nothing to do with Defendants' platforms. *See* Tucson Opp. Ex. 1 (ECF No. 2369-2) (Trujillo Dep.) 134:20–136:15, 138:19–139:14 (Tucson has had a ratio of 500:1 students to counselors since at least 2018 "due to budgetary constraints"); *id.* Ex. 19 (ECF No. 2369-20) (Salmon Dep.) 220:13–221:19 ("shortages of psychologists" have been "consistent" due to "national trends" such as fewer individuals choosing to become psychologists).

### E.    The Hoover Plan Is Not a Proper Abatement Remedy Under Arizona Law.

For the reasons explained in the Omnibus Reply, the Districts cannot recover their strategic plans as an abatement remedy because (1) they have an adequate remedy at law and (2) the plans are not tailored to the alleged consequences of Defendants' conduct. But even if Tucson cleared those hurdles, it cannot show an award of money is proper abatement under Arizona law.

Tucson proves Defendants' point: "abatement encompasses removing or remedying the source of harm," Tucson Opp. 13, and the cases Tucson cites confirm that in Arizona, abatement is limited to an injunction requiring the defendant to terminate the conduct interfering with the relevant public right. *See Cactus Corp. v. State ex rel. Murphy*, 480 P.2d 375, 378–79 (Ariz. Ct. App. 1971) (enjoining future exhibitions of obscene film); *Brown v. City of Phoenix*, 557 P.3d 321, 329–30 (Ariz. Ct. App. 2024) (injunction required city to remove unlawful tents); *Brandes v. Mitterling*, 196 P.2d 464, 465 (Ariz. 1948) (plaintiffs sought injunction "to terminate the use of [a] field as an airport").[12] Contrary to Arizona law, the Hoover Plan does not recommend that Defendants do or refrain from doing anything regarding their platforms. Mot. 39–40.

### III.    **CONCLUSION**

The Court should grant Defendants' motion for summary judgment or, in the alternative, partial summary judgment.

---

[12] Tucson's citation to *City of Safford v. Seale*, 2009 WL 3390172, at *2 (Ariz. Ct. App. Oct. 21, 2009), is wholly inapt. *See* Om. Opp. 214. There, a court authorized a city to abate the unsafe condition caused by a contaminated residence through "razing and removal" of the house. *Id.* at *2. The house's owner objected under a state law that entitled her to "notice, right to appeal, and opportunity to remediate" the unsafe conditions before abatement could be ordered against her property. *Id.* Nothing in this case supports Tucson's claim that an abatement remedy can order a defendant to fund the plaintiff's "remediation" of harms allegedly caused by a public nuisance.

1 | DATED:  December 5, 2025          Respectfully submitted,

2                                   MUNGER, TOLLES & OLSON LLP

3

4                                   By: _____ /s/ Victoria A. Degtyareva_____
                                        JONATHAN H. BLAVIN (State Bar No. 230269)
5                                       Jonathan.Blavin@mto.com
                                        MUNGER, TOLLES & OLSON LLP
6                                       560 Mission Street, 27th Floor
                                        San Francisco, CA 94105
7                                       Tel: (415) 512-4000

8                                       VICTORIA A. DEGTYAREVA (State Bar No. 284199)
9                                       Victoria.Degtyareva@mto.com
                                        MUNGER, TOLLES & OLSON LLP
10                                      350 South Grand Avenue, 50th Floor
                                        Los Angeles, CA 90071
11                                      Tel.: (213) 683-9100

12                                      ALLISON BROWN (*pro hac vice*)
13                                      alli.brown@kirkland.com
                                        KIRKLAND & ELLIS LLP
14                                      2005 Market Street, Suite 1000
                                        Philadelphia, PA 19103
15                                      Tel.: (215) 268-5000

16                                      JESSICA DAVIDSON (*pro hac vice*)
17                                      jessica.davidson@kirkland.com
                                        JOHN J. NOLAN (*pro hac vice*)
18                                      jack.nolan@kirkland.com
                                        KIRKLAND & ELLIS LLP
19                                      601 Lexington Avenue
                                        New York, NY 10022
20                                      Tel.: (212) 446-4800

21
                                        *Attorneys for Defendant Snap Inc.*
22

23

24

25

26

27

28

1

2
                                    */s/ Ashley W. Hardin*
3                    JOSEPH G. PETROSINELLI (*pro hac vice*)
                     jpetrosinelli@wc.com
4                    ASHLEY W. HARDIN (*pro hac vice*)
                     ahardin@wc.com
5                    J. ANDREW KEYES (*pro hac vice*)
                     akeyes@wc.com
6                    NEELUM J. WADHWANI (SBN 247948)
                     nwadhwani@wc.com
7                    WILLIAMS & CONNOLLY LLP
8                    680 Maine Avenue, SW
                     Washington, DC 20024
9                    Tel.: (202) 434-5000

10                   *Attorneys for Defendants YouTube, LLC and Google LLC*

11

12
                                   */s/ Christian J. Pistilli*
13                   ASHLEY M. SIMONSEN (State Bar No. 275203)
                     asimonsen@cov.com
14                   COVINGTON & BURLING LLP
15                   1999 Avenue of the Stars
                     Los Angeles, California 90067
16                   Telephone: (424) 332-4800

17                   PHYLLIS A. JONES (*pro hac vice*)
                     pajones@cov.com
18                   PAUL W. SCHMIDT (*pro hac vice*)
                     pschmidt@cov.com
19                   CHRISTIAN J. PISTILLI (*pro hac vice*)
20                   cpistilli@cov.com
                     COVINGTON & BURLING LLP
21                   One City Center
                     850 Tenth Street, NW
22                   Washington, DC 20001-4956
                     Tel.: (202) 662-6000
23

24                   *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
                     *Facebook, Inc.; Facebook Holdings, LLC; Facebook*
25                   *Operations, LLC; Meta Payments Inc. f/k/a Facebook*
                     *Payments Inc.; Meta Platforms Technologies, LLC f/k/a*
26                   *Facebook Technologies, LLC; Instagram, LLC; and*
27                   *Siculus LLC f/k/a Siculus, Inc.*

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1

2                                            */s/ Bailey J. Langner*

3                                    GEOFFREY M. DRAKE (*pro hac vice*)
                                     gdrake@kslaw.com
4                                    TACARA D. HARRIS (*pro hac vice*)
                                     tharris@kslaw.com
5                                    KING & SPALDING LLP
                                     1180 Peachtree Street, NE, Suite 1600
6                                    Atlanta, GA 30309
                                     Tel.: (404) 572-4600
7

8                                    DAVID P. MATTERN (*pro hac vice*)
                                     dmattern@kslaw.com
9                                    KING & SPALDING LLP
                                     1700 Pennsylvania Avenue, NW
10                                   Suite 900
                                     Washington, D.C. 20006
11                                   Tel.: (202) 737-0500

12
                                     BAILEY J. LANGNER (State Bar No. 307753)
13                                   *blangner@kslaw.com*
                                     KING & SPALDING LLP
14                                   50 California Street, Suite 3300
                                     San Francisco, CA 94111
15                                   Tel.: (415) 318-1200

16
                                     *Attorneys for Defendants*
17                                   *TikTok Inc., ByteDance Inc., TikTok Ltd., ByteDance*
                                     *Ltd., and TikTok LLC*
18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1

## <u>ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER 27</u>

2

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

3

DATED:   December 5, 2025                      By:      */s/ Victoria A. Degtyareva*

4                                                                    Victoria A. Degtyareva

5                                                                    *Attorney for Defendant Snap Inc.*

6                                                           By:      */s/ Christian J. Pistilli*
                                                                    Christian J. Pistilli
7

8                                                                    *Attorney for Defendants Meta Platforms,*
                                                                    *Inc. f/k/a Facebook, Inc.; Facebook*
                                                                    *Holdings, LLC; Facebook Operations,*
9                                                                    *LLC; Meta Payments Inc. f/k/a Facebook*
                                                                    *Payments Inc.; Meta Platforms*
10                                                                   *Technologies, LLC f/k/a Facebook*
                                                                    *Technologies, LLC; Instagram, LLC; and*
11                                                                   *Siculus LLC f/k/a Siculus, Inc.*

12                                                          By:      */s/ Bailey J. Langner*
                                                                    Bailey S. Langner
13

14                                                                   *Attorneys for Defendants TikTok Inc.,*
                                                                    *ByteDance Inc., ByteDance Ltd., TikTok*
                                                                    *Ltd., and TikTok, LLC*
15

16                                                          By:      */s/ Ashley W. Hardin*
                                                                    Ashley W. Hardin
17

18                                                                   *Attorneys for Defendants YouTube, LLC and*
                                                                    *Google LLC*

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (TUCSON)
(SD MSJ NO. 2)

1

## ATTESTATION

2      I, Victoria A. Degtyareva, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-, that the

3  concurrence to the filing of this document has been obtained from each signatory hereto.

4

5   DATED:  December 5, 2025                      By:   /s/ Victoria A. Degtyareva
                                                      Victoria A. Degtyareva

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28