GEOFFREY M. DRAKE, *pro hac vice*
gdrake@kslaw.com
TACARA D. HARRIS, *pro hac vice*
tharris@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

DAVID P. MATTERN, *pro hac vice*
dmattern@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania, NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendants*
*TikTok Inc., ByteDance Inc., TikTok Ltd.,*
*ByteDance Ltd., and TikTok LLC*

[*Additional parties and counsel listed on signature pages*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL: 3047 |
| This Document Relates to: | Case No. 4:25-cv-02310-YGR |
| *DeKalb County School District v. Meta Platforms, Inc., et al.* | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (SD NO. 5)** |
| | **REDACTED VERSION** |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |
| | Date:      January 26, 2026 |
| | Time:      8:00 a.m. |
| | Place:     Courtroom 1, 4th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT ................................................................................................... 1

        A.    Defendants are Entitled to Summary Judgment on Causation ..................... 1

              1.    DeKalb Misconstrues Its Burden on Summary Judgment. .................... 2

              2.    DeKalb Has No Competent Evidence It Was Harmed Because of Each
                    Defendant's Actionable Conduct. ......................................................... 2

              3.    DeKalb's Opposition Confirms It Has No Evidence to Support Its Failure-To-
                    Warn Claim .......................................................................................... 8

        B.    DeKalb's Failure to Warn Claim Fails Because Georgia Supreme Court Precedent
              Forecloses Any Duty to Warn ..................................................................... 10

        C.    DeKalb Did Not Carry Its Burden On Past Damages ................................ 11

              1.    Binding Georgia Supreme Court Precedent Precludes DeKalb's "Lost Time"
                    Damages ............................................................................................. 11

              2.    DeKalb's Evidence of "Lost Time" Damages is Insufficient ............. 12

              3.    DeKalb Confirms It Did Not Incur Costs Because of Defendants' Actionable
                    Conduct .............................................................................................. 14

        D.    DeKalb Cannot Recover the Hoover Plan as Abatement or Future Damages ........... 16

              1.    The Hoover Plan is Not a Proper Abatement Remedy Under Georgia Law ...... 16

              2.    DeKalb Cannot Recover the Hoover Plan as Future Damages ............ 17

III.    CONCLUSION .............................................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases:**

3

*Aaron's Inc. v. MDC Grp., Inc.*,

4

2010 WL 11505919 (N.D. Ga. Dec. 15, 2010) ............................................................. 12

5

*Barrett Props., LLC v. Roberts Capitol, Inc.*,

729 S.E.2d 621 (Ga. Ct. App. 2012) ...................................................................... 2, 6

6

7

*Block v. City of Los Angeles*,

253 F.3d 410 (9th Cir. 2001)....................................................................................... 4

8

*Brazil v. Janssen Research & Development LLC*,

9

249 F. Supp. 3d 1321 (N.D. Ga. 2016) ..................................................................... 6

10

*Certainteed Corp. v. Fletcher*,

794 S.E. 2d 641 (2016) ......................................................................................... 10, 11

11

12

*Cotto Law Grp. LLC v. Benevidez*,

870  S.E.2d 472 (2022) ......................................................................................... 12, 16

13

*Davis v. Stark*,

14

31 S.E.2d 592 (1944) ................................................................................................. 16

15

*Fuller v. Self*,

131 S.E.2d 241 (1963) ................................................................................................ 5

16

17

*Georgia Cas. & Sur. Co. v. Salter's Indus. Servs., Inc.*,

734 S.E.2d 415 (2012) ................................................................................................ 8

18

19

*Green Meadows Hous. Partners, LP v. Macon-Bibb Cnty.*,

906 S.E.2d 430 (2024) .............................................................................................. 16

20

*Hubbard v. Bayer HealthCare Pharma., Inc.*,

21

407 F. Supp. 3d 1317 (N.D. Ga. 2019) ..................................................................... 8

22

*J.D. Jewell, Inc. v. Hancock*,

175 S.E.2d 847 (Ga. 1970).......................................................................................... 17

23

24

*Kroger Co. v. Perpall*,

125 S.E.2d 511 (Ga. Ct. App. 1962) ....................................................................... 12

25

26

*Kuhlke Constr. Co. v. Mobley, Inc.*,

285 S.E.2d 236 (Ga. Ct. App. 1981) ....................................................................... 14

27

*Lee v. City of Madera*,

28

2008 WL 5042856 (E.D. Cal. Nov. 20, 2008) ......................................................... 7

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

*Li v. Cnty. of L.A.*,
223 F. App'x. 613 (9th Cir. 2007) ................................................................. 6

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ........................................................................................ 8

*MCI Comms. Servs. v. CMES, Inc.*,
728 S.E.2d 649 (2012) ..................................................................... 11, 12, 16

*Orr v. Bank of Am., NT & SA*,
285 F.3d 764 (9th Cir. 2002) ..................................................................... 3, 15

*Sockwell v. Lucas & Jenkins*,
32 S.E.2d 201 (1944) ...................................................................................... 6

*Southwestern Railroad Co. v. Vellines*,
125 S.E.2d 511 (1914) .................................................................................. 12

*Superior Farm Mgmt., L.L.C. v. Montgomery*,
513 S.E.2d 215 (Ga. 1999) .......................................................................... 17

*U.S. v. 1980 Red Ferrari, VIN No. 9A0034335*,
827 F.2d 477 (9th Cir. 1987) .......................................................................... 6

*United States v. Dibble*,
429 F.2d 598 (9th Cir. 1970) .......................................................................... 4

*Williams v. Steglinksi*,
2016 WL 1183134 (E.D. Cal. March 28, 2016) ............................................ 7

*Zakas v. Jackson*,
835 S.E.2d 371 (Ga. App. Ct. 2019) ...................................................... 17, 18


**Other Authorities:**

Fed R. Civ. Proc. 56(c) ................................................................................... 3
Fed. R. Evid. 602 ............................................................................................ 4
Fed. R. Evid. 801 ............................................................................................ 4
Fed. R. Evid. 802 ............................................................................................ 4
Fed. R. Evid. 803(6) ...................................................................................... 13

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

1    **I.    INTRODUCTION**

2        DeKalb's Opposition confirms it has no evidence connecting the District's alleged injuries

3    to Defendants or their actionable conduct as required under this Court's rulings.  Instead, it reveals

4    DeKalb's claims as nothing more than an attempt to leverage general allegations about its students'

5    cellphone and social media use into a demand for *billions* of dollars.  DeKalb may face endemic

6    economic and social challenges, but those challenges are independent of any of Defendants'

7    actionable conduct.

8        Try as it might to salvage its sweeping claims, DeKalb's Opposition makes clear that the

9    District's claims are unsupported by the law and evidence.  DeKalb—which understates its burden

10   on summary judgment and relies entirely on inadmissible or irrelevant testimony—fails to establish

11   causation and has not provided any evidence that an alleged failure to warn caused harm.  Both

12   deficiencies are fatal.  DeKalb also explicitly relies on allegations that seek to hold Defendants

13   liable for conduct this Court has held is protected by Section 230 and the First Amendment.

14       DeKalb's arguments for damages fare no better: its "lost time" damages are foreclosed by

15   Georgia law and a binding decision of the Georgia Supreme Court.  DeKalb's Opposition identifies

16   no monetary loss nor any admissible evidence of compensable out-of-pocket damages.  Finally,

17   DeKalb's attempt to spin the Hoover Plan into a novel "monetary abatement" theory, or future

18   damages, is out of step with Georgia law and again unsupported by evidence.  Summary judgment

19   is warranted in Defendants' favor.

20   **II.    ARGUMENT**

21       **A.    Defendants are Entitled to Summary Judgment on Causation**

22       DeKalb's Opposition confirms it lacks evidence of causation.  To prove causation, DeKalb

23   needed to adduce admissible evidence showing that each Defendant and the specific features of

24   their respective platform(s) deemed actionable by the Court harmed DeKalb in particular, not just

25   unnamed individuals around the country.  *See* Order Granting in Part and Denying in Part

26   Defendants' Motions to Dismiss ("PI Order") (ECF No. 430[1]) 14; Order Granting in Part and

27

28   ---
     [1] Cited ECF numbers to the exhibits in support of Defendants' Motion for Summary Judgment and DeKalb's Opposition are from the case-specific docket (4:25-cv-02310-YGR). All other ECF number references are to the MDL case docket (4:22-md-03047-YGR).

Denying in Part Defendants' Motions to Dismiss Master Complaint ("SD Order") (ECF No. 1267) 12–13.  Rather than marshal this evidence, DeKalb minimizes its burden on summary judgment and relies on inadmissible speculation about students' social media or cellphone use generally and purported harms stemming from theories this Court barred (third-party content, third-party conduct, and Defendants' protected publishing activities).  The Court made clear that DeKalb cannot base its harms on these theories.  PI Order 14; SD Order 12–13.

### 1.    DeKalb Misconstrues Its Burden on Summary Judgment.

DeKalb erroneously states that "all it must do is offer causation evidence that amounts to more than a possibility" or show that "its theory is not just 'pure speculation or conjecture.'" DeKalb Opp. 5 (ECF No. 2389) (citing *Barrett Props., LLC v. Roberts Capitol, Inc.*, 729 S.E.2d 621, 624 (Ga. Ct. App. 2012)).  But DeKalb's recitation substantially misconstrues *Barrett*'s proximate cause standard, which requires a plaintiff to show that a defendant is "more likely than not" the cause of harm:

> [A] plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a *reasonable basis* for the conclusion that it is *more likely than not* that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the *probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant*.

729 S.E.2d at 624 (emphasis added).  DeKalb's selective, out-of-context quotation cannot change that it is subject to a "more likely than not" standard.  *See id.*  As laid out below, DeKalb does not meet its burden.

### 2.    DeKalb Has No Competent Evidence It Was Harmed Because of Each Defendant's Actionable Conduct.

DeKalb baldly asserts that its students' use of Defendants' platforms is "widespread, problematic, and highly disruptive," but it never actually puts forth admissible evidence proving that assertion.  DeKalb Opp. 2.  DeKalb's cited evidence suffers from a host of deficiencies, including reliance on improper lay testimony and hearsay evidence, improperly relying on Defendants' protected conduct, and citations to documents that do not distinguish between

1  Defendants' platforms, individual features of those platforms, or cell phone use generally.

2      **Evidence of Defendants' Protected Conduct Cannot Be Used to Prove DeKalb's**

3  **Claims.**  In its Opposition, DeKalb stretches to support its claim by pointing to a number of

4  protected features on Defendants' platforms, content, and third-party bad acts.  *See* DeKalb Opp.

5  Ex. 2, (Towns. Dep.) (ECF 34-3) 326:25–327:10 (citing testimony of Dr. Kishia Towns taking issue

6  with students' "scrolling" on "social media"); DeKalb Opp. 4 (referring to Dr. Towns's testimony

7  "how students scroll and scroll" on social media "with likes,"  and "how social media is on during

8  the school day, but should be off," as well as Dr. Logan's testimony regarding "social media

9  notifications students were receiving during class").  But that evidence cannot form the basis of

10  liability.  As this Court has held, features such as endless scroll, notifications, or third-party conduct

11  cannot be used to establish liability.  SD Order 14.  And DeKalb's attempt to point to at-issue

12  features like parental control and age verification do not suffice when all it can point to is one

13  witness referring to having heard references in unidentified news coverage that was not connected

14  to DeKalb, school districts generally, or to Defendants' specific platforms.  *See* DeKalb Opp. Ex.

15  2 (Towns Dep.) 92:2–13.

16      **Inadmissible Anecdotal or Hearsay Evidence Is Insufficient.** Defendants' Motion set

17  forth the well-established law that inadmissible evidence—including the anecdotal testimony about

18  alleged social media harms—cannot create a genuine dispute of material fact.  *See* DeKalb Motion

19  11, 26 (ECF No. 2289); Fed R. Civ. Proc. 56(c); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 733

20  (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

21  summary judgment.").

22      The evidence DeKalb cites (DeKalb Opp. 2–6) is generally inadmissible, unmoored from

23  the arguments raised in Defendants' motion, and fails to address the at-issue features of each

24  platform.  For example, DeKalb cites the testimony of Dr. Deborah Moore-Sanders, the Deputy

25  Superintendent at DeKalb from 2019–2023, who estimated that "approximately 10-20 percent of

26  teachers' time in the classroom was spent dealing with distractions related to Defendants'

27  platforms."  DeKalb Opp. 2–3.  But Dr. Moore-Sanders's basis for this statement was not personal

28  knowledge but the hearsay of unidentified staff who "tend[ed] to talk about those kinds of things."

DeKalb Opp. Ex. 3 (Moore-Sanders Dep.) (ECF 34-4), 180:2–181:4; *see also* DeKalb Opp. Ex. 2 (Towns Dep.) 272:10–16 (Dr. Towns's hearsay testimony that "teachers are reporting frequent use on social media during lessons"). This is classic inadmissible hearsay. *See* Fed. R. Evid. 801. And hearsay aside, this testimony does not identify what specifically these teachers spent time addressing, which platform(s) were the source of alleged problems, or which platform features allegedly prompted the students' unruly conduct. It provides no basis to conclude that it was "more likely than not" that the unprotected features of Defendants' platforms caused DeKalb's harms.

DeKalb also cites to testimony from Darnell Logan, the Director of Student Relations at DeKalb, for the proposition that "teachers say that students are more disengaged and more distracted, and that they are having to take more time to complete lessons due to these distractions." DeKalb Opp. 3. But Dr. Logan's basis for his testimony is again hearsay. DeKalb Opp. Ex. 4 (Logan Dep.) (ECF 34-5) 98:12–99:4 (testimony was based on personal belief and "information shared by parents and teachers as it relates to social media… anecdotal information. Discussions with parents, discussions with school staff."). And other than a general recollection of screenshots from social media sometimes used as evidence in disciplinary hearings, all non-actionable content to begin with, Dr. Logan admitted that he had not witnessed firsthand any other "concerns related to social media within [DeKalb's] schools." *Id.* at 27:25–29:2. Courts routinely disregard similar testimony as inadmissible hearsay. *See* Fed. R. Evid. 602, 801–02; *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (abuse of discretion to consider testimony at summary judgment where it was "clear from the affidavit" that the affiant "was not personally involved" in the at-issue proceedings, "did not personally review any [relevant] business records," and "instead relied on information from (unsworn) [individuals], and the source of [their] information [was] unclear."); *United States v. Dibble*, 429 F.2d 598, 601–02 (9th Cir. 1970) (summary judgment cannot be predicated on affidavits that do not "affirmatively [show] that the affiant is competent to testify to the matters stated therein").

**DeKalb's Limited Evidence Specific to Defendants' Platforms Does Not Establish Causation.** Much of the other evidence cited by DeKalb does not even name Defendants' platforms, and the few references to those platforms cannot establish causation. Citations to

4

1    isolated instances (through inadmissible hearsay) where students used or accessed Facebook,

2    Instagram, TikTok, Snapchat, or YouTube does not establish that Defendants' platforms, much less

3    the at-issue features, caused harm to the District. *See* DeKalb Opp. Ex. 9 (Lyle Email) (ECF 34-

4    10) (email discussing two students' access to YouTube videos on a District-issued device on the

5    District server, as well as other internet pages, including news stories); *Id*., Ex. 10 (Email) (ECF

6    34-11) (email discussing how Lightspeed can prevent access to "social media," including

7    Facebook, TikTok, Instagram, Twitter, and Pinterest"); *Id*., Ex. 2 (Towns Dep.) 272:10–16 (Dr.

8    Towns's hearsay testimony that teachers told her that students are often using Facebook, Instagram,

9    Snapchat, and TikTok). Dr. Towns's testimony about students using Snapchat "because things

10   disappear" and TikTok for its "challenge" content fares no better. *Id.*; DeKalb Opp. Ex. 9 (Lyle

11   Email)*; see also* DeKalb Opp. Ex. 4 (Logan Dep.) 84:21–85:23 (referring to discipline incidents

12   based on "TikTok challenges that frequently happened at [] school"). Again, features such as

13   ephemerality or third-party participation in viral challenges cannot be the basis of liability. SD

14   Order 25.

15        **DeKalb's Evidence That it was Harmed by "Social Media" Generally is Insufficient.**

16   DeKalb's citations to the record to contend that "social media" writ large caused its alleged harms

17   are similarly insufficient. For example, DeKalb relies on Dr. Hoover's generalized conclusions

18   that the "use of social media presents real and observable harms to students' functioning." But that

19   contention is not based on any observations by Dr. Hoover of DeKalb's students, and in any event,

20   those kinds of generalized conclusions fail to distinguish among the specific supposed harms

21   caused by each of Defendants' respective platforms (rather than "social media" as a monolith). *See*

22   Dekalb Mot. Ex. Q (Social Media Guidelines) (ECF 31-19) (defining "social media" broadly, as

23   "the collective of online communications channels dedicated to community-based input,

24   interaction, content-sharing and collaboration").

25        DeKalb's arguments about general "social media" harms are particularly misplaced because

26   under Georgia law, DeKalb must prove its claims as to each Defendant individually. *See Fuller v.*

27   *Self*, 131 S.E.2d 241, 243 (1963) (finding no error in jury instructions that instructed the jury that

28   it was "absolutely necessary and essential that he prove at least one of the acts of negligence charged

1  against each defendant in order for that defendant to be liable"); *Sockwell v. Lucas & Jenkins*, 32
2  S.E.2d 201, 203 (1944) (upholding verdicts in favor of defendants where "there was no evidence
3  authorizing a finding that the injuries were the result of any act of negligence by either of the
4  defendants").

5       DeKalb attempts to circumvent that requirement by grouping together Defendants'
6  platforms under cover of the "substantial contributing factor" standard, DeKalb Opp. 7, but that
7  strategy would not pass muster for a motion to dismiss, let alone summary judgment. *See Brazil v.*
8  *Janssen Research & Development LLC*, 249 F. Supp. 3d 1321, 1338–1339 (N.D. Ga. 2016)
9  ("Plaintiff's negligence claim fails for a lack of specificity as to each Defendant… Plaintiff does
10 not specify how any specific Defendant breached any duty in connection with Plaintiff…") (internal
11 quotations omitted).

12      Moreover, the Court cannot credit DeKalb's request that it construe "social media" to mean
13 "Defendants' platforms." Om. Opp. 188. Since at least the early 2010s, DeKalb itself has defined
14 "social media" to encompass more than just Defendants' platforms—including other online
15 platforms like Pinterest and Twitter, as well as things like music, news, and blogs. *See e.g.* DeKalb
16 Mot. Ex. KK (Social Media Guidelines) (ECF 31-39) (

17

18

19      ). It would be entirely unreasonable to construe DeKalb's references to "social media" to
20 mean only Defendants' platforms, particularly in view of evidence to the contrary. *U.S. v. 1980*
21 *Red Ferrari, VIN No. 9A0034335*, 827 F.2d 477, 479 (9th Cir. 1987) (where "there is overwhelming
22 evidence favoring the moving party, it may be unreasonable to draw an inference contrary to the
23 movant's interpretation of the facts"); *Li v. Cnty. of L.A.*, 223 F. App'x. 613, 620 (9th Cir. 2007) (a
24 reasonable inference is one based on more than mere speculation, conjuncture, or fantasy). And
25 DeKalb's citations to evidence relating to "social media" do not establish that it is "more likely
26 than not" that any harm to the District was caused by the actionable features of Defendants'
27 platforms, given that these citations make no effort to parse through those features. *Barrett*, 729
28 S.E.2d at 624.

**DeKalb Cannot Support its Claims with Lay Speculation That "Social Media" Harmed Mental Health or Increased Disciplinary Incidents in the District.**  DeKalb also relies on the testimony of Dr. Moore-Sanders, Dr. Logan, and Denise Revels claiming that social media use is responsible for a purported increase in students' mental health challenges.  DeKalb Opp. 3–4.  Dr. Moore-Sanders, Dr. Logan, and Ms. Revels are all lay witnesses and "may not testify regarding a diagnosis, opinions, inferences or causation," or offer their opinions as to the features responsible for students' alleged compulsive use.  *See Williams v. Steglinksi*, 2016 WL 1183134, at *1 (E.D. Cal. March 28, 2016); *Lee v. City of Madera*, 2008 WL 5042856, at *4 (E.D. Cal. Nov. 20, 2008) ("[A] lay witness cannot offer testimony to establish a legal conclusion.")*.*

Moreover, even if it were admissible, Dr. Logan's improper lay opinion, which is based on "his review of the records of [disciplinary] hearings," cannot establish causation.  DeKalb Opp. 3.  Dr. Logan's analysis focuses on *content*, which cannot serve as the basis for liability under Section 230.  *Id*. (citing DeKalb Opp. Ex. 4 (Logan Dep.) 75:13-18 (referring to discipline hearing records showing "consistent screenshots of social media")); *see e.g*., PI Order 14; SD Order 12–13.  And his affidavit shows only that a small subset of disciplinary actions mentioned social media (just 0.19 percent of the total number of disciplinary incidents logged in Infinite Campus for that school year, *see* DeKalb Mot. Ex. R (Expert Rep. of Dr. Diana Wildermuth) (ECF 31-20) ¶ 43)—a statistic that DeKalb does not dispute—not that social media was the *cause* of those actions.  *See* DeKalb Opp. Ex. 8 (Darnell Logan Aff.) (ECF 34-9).  DeKalb provides no explanation how such a *de minimis* number of incidents within a school district consisting of 96,000 students could substantiate its assertion that Defendants' platforms caused substantial issues with its student body that led to financial harm to DeKalb, particularly when DeKalb has dealt with tens of thousands of disciplinary incidents per year.  *See* DeKalb Mot. Ex. P (Discipline Incidents) (ECF 31-18).  Similarly, all of the lay testimony impermissibly lumps Defendants together generically as "social media" and therefore cannot establish causation against any of them.

**DeKalb Cannot Rely on General Evidence of Phone Use.**  DeKalb cites testimony that administrators see *phone* use as a problem in DeKalb.  DeKalb Opp. 2–3.  But its arguments to connect this evidence to Defendants' platforms are unsupported speculation.  At most, DeKalb cites

7

1   speculation from a handful of administrators about their opinions of what students do on their

2   phones.  DeKalb Opp. 2–3 (citing DeKalb Opp. Ex. 2 (Towns Dep.) 181:5–182:14, DeKalb Opp.

3   Ex. 3 (Moore-Sanders Dep.) 182:10–23).  For the reasons explained above, such inadmissible

4   hearsay cannot be considered on summary judgment.  *See supra* at II.A.2.  Moreover, even crediting

5   the administrators' speculation could not establish that students' use of Defendants' platforms is

6   the cause of phone-related disruption in DeKalb's schools.  It is beyond dispute that Defendants'

7   platforms represent just five of countless smartphone applications.  DeKalb cannot prove its claims

8   against Defendants based on testimony about cellphone use generally.

9
              **3.      DeKalb's Opposition Confirms It Has No Evidence to Support Its
10                      Failure-To-Warn Claim**

11      DeKalb has failed to explain, or set forth any evidence that establishes, how any of the

12   actions that the District purportedly would have taken had it received an unspecified warning would

13   have lessened any of its alleged harm.  *See Hubbard v. Bayer HealthCare Pharma., Inc.*, 407 F.

14   Supp. 3d 1317, 1320 (N.D. Ga. 2019) ("Without evidence that a different warning would have

15   changed the prescribing decision, Plaintiff cannot show that her injury would have been avoided

16   but for Bayer's alleged failure to warn.").

17      As a tacit admission that DeKalb lacks the necessary evidence to establish that Defendants'

18   alleged failure to warn caused any of its alleged injuries, DeKalb submitted a new declaration from

19   Dr. Kishia Towns, DeKalb's Chief of Wrap Around Services.  DeKalb Opp. Ex. 17 (Towns Aff.)

20   (ECF 34-18).  The declaration is insufficient to carry DeKalb's burden to show that a warning

21   would have prevented its alleged injuries, even if Georgia recognized a failure-to-warn claim in

22   this circumstance.  Dr. Towns summarily concludes, without explanation, that "because Defendants

23   did not provide any warnings, DeKalb has had to expend resources dealing with the negative effects

24   of their platforms on DeKalb and its student population."  *Id.* at ¶ 10.  But this conclusory

25   statement—which amounts to nothing more than a recitation of DeKalb's allegations—fails to

26   provide "a reasonable basis for the conclusion that it is more likely than not that the conduct of the

27   defendant was a cause in fact of the result."  *Georgia Cas. & Sur. Co. v. Salter's Indus. Servs., Inc.*,

28   734 S.E.2d 415, 420 (2012); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object

1  of [evidence at summary judgment] is not to replace conclusory allegations of the complaint…with

2  conclusory allegations" in testimony or affidavits). Separately, Dr. Towns concludes without

3  explanation that if Defendants had provided "adequate warnings,"[2] DeKalb would have taken

4  certain actions, some of which are inconsistent with other statements in the declaration. For

5  example, Dr. Towns claims, on the one hand, that "it is not DeKalb's job to provide warnings about

6  Defendants' platforms to its students and their parents," DeKalb Opp. Ex. 17 (Towns Aff.) ¶ 9,

7  before then claiming that "adequate warnings" would have allowed DeKalb to provide "more

8  education and communication to parents…to help them manage or limit student access to

9  Defendants' platforms," *id.* at ¶ 11.[3]

10  The bald assertion that DeKalb would have taken any steps had it been given some level of

11  warning is belied by the fact that there is no evidence of DeKalb undertaking the vast majority of

12  actions outlined in Dr. Towns' declaration (*i.e.*, "providing additional training for teachers,

13  counselors, and administrators to recognize harms related to Defendants' platforms and ways to

14  respond effectively," or "joining or supporting broader coalitions advocating for stronger online

15  protections for minors") even now, years after purportedly learning of the alleged negative effects

16  of Defendants' platforms and filing its lawsuit.

17  To the contrary—as raised in Defendants' Motion and as undisputed by DeKalb—long after

18  filing this litigation, DeKalb still maintains goals related to social media, has indicated that using

19  social media to engage with the community is a top priority, and even encourages its students to

20  use Defendants' platforms as part of district-driven campaigns. DeKalb Mot. 42; DeKalb Mot. Ex.

21  J (DEKALB1381292) (███████████████████████████████████████████

22  ████). Moreover, DeKalb continued to permit the use of YouTube as an instructional

23  tool. *See, e.g.*, DeKalb Opp. Ex. 11 (Davis Dep.) (ECF 34-12) 196:22–199:9 (noting that DeKalb

24

25  [2] Defendants dispute DeKalb's assertion that they did not provide adequate warnings. But that dispute is not before the Court. Even if Defendants failed to adequately warn school districts,

26  parents, or users, DeKalb has no evidence that that failure caused its alleged injuries.

27  [3] Notwithstanding, DeKalb's proffered evidence fails to establish that any warning to any parent or student would have lessened any of DeKalb's alleged harm. Indeed, such an assertion would be

28  pure speculation, as DeKalb has no way of knowing whether any warning to a parent or student would have been effective, let alone effective in reducing DeKalb's alleged harm.

1   allowed students to access educational content on YouTube through the Managed Restricted

2   Mode). And the District continues to use Facebook and Instagram to communicate with parents

3   and students. *See, e.g.*, Opp. Ex. 11 (Monika Davis Dep.) 62:24-63:3 (testifying that DeKalb uses

4   Instagram and Facebook to communicate with the community).

5        Finally, DeKalb's evidentiary proffer is also insufficient because it has no evidence (fact or

6   expert) of what any purported warning should look like, how it should have been implemented, to

7   whom within DeKalb it should have been provided, what it should have said, when it should have

8   been provided, or where and how the warning should have been communicated.   DeKalb's

9   eleventh-hour declaration cannot satisfy its evidentiary burden on its failure to warn claim.

10       **B.    DeKalb's Failure to Warn Claim Fails Because Georgia Supreme Court
                 Precedent Forecloses Any Duty to Warn**
11

12       Lack of evidence aside, for the reasons set forth in Defendants' Motion and in the Omnibus

13  Reply, DeKalb is incorrect that Georgia recognizes the type of failure to warn claim it asserts.   In

14  *Certainteed Corp. v. Fletcher*, the Georgia Supreme Court held that a manufacturer of a product

15  containing asbestos owed no duty to warn third parties—who did not purchase and were not the

16  direct users of a product—about the dangers of asbestos.  794 S.E. 2d 641, 645–46 (Ga. 2016).

17       DeKalb seeks to minimize the importance of *Certainteed* by relying on a Georgia Court of

18  Appeal case that predates *Certainteed* by nearly a decade and by trying to distinguish it as factually

19  dissimilar from DeKalb's case because *Certainteed* "involved remote, incidental injuries to

20  individuals unconnected to the defendants' actions." Om. Opp. 7.  Both attempts fail.  As discussed

21  in Defendants' Motion, *Certainteed* involved a daughter suing the manufacturer of asbestos-laden

22  water pipes after she developed mesothelioma from years of second-hand exposure to asbestos dust

23  on the clothing of her father, who worked with the pipes.  The daughter-plaintiff asserted that the

24  manufacturer owed her a duty to warn of the dangers of asbestos exposure.  The Georgia Supreme

25  Court rejected that claim.  *See* DeKalb Mot. 40; *Certainteed*, 794 S.E. 2d at 645.  DeKalb's claims

26  are even farther afield because the plaintiff in *Certainteed* asserted a duty to warn of physical

27  injuries resulting directly from her own exposure to the product.  *Id.*  DeKalb, on the other hand,

28  asserts a duty to warn it that other people's (i.e., students') exposure to allegedly harmful services

10

could cause them harm.  If the Georgia Supreme Court refused to recognize a duty to warn in that case, it certainly would not recognize a duty here.  *See* Om. Reply Section II.B.1.

### C.    DeKalb Did Not Carry Its Burden On Past Damages

#### 1.    Binding Georgia Supreme Court Precedent Precludes DeKalb's "Lost Time" Damages

The Opposition fails to identify any monetary loss for its "lost time."  *See* DeKalb Opp. 6. Accordingly, it cannot recover "lost time" as past damages.

The Georgia Supreme Court has made clear that a plaintiff cannot seek compensatory damages in tort actions unless those damages are for "amounts…actually lost."  *MCI Comms. Servs. v. CMES, Inc.,* 728 S.E.2d 649, 652-653 (2012); *id.* at 464 (requiring "some showing of monetary loss").  *MCI* explained that the "underlying principle of compensatory damages," is "to compensate for the injury actually sustained."  *Id.* at 462, 464.  The court contrasted this with "[d]amages [that] are *not* based on amounts…actually lost, [and] requiring [the defendant] to pay these 'damages'" flies in the face of what compensatory damages are meant to accomplish and "would only result in an unfair windfall" to the plaintiff.  *Id.* at 464 (emphasis added).  Applying these principles, *MCI* found that "loss of use damages"—which would have permitted a plaintiff to recover for the "loss of use" of its equipment—was not an actual monetary loss.

DeKalb's Opposition identifies no actual monetary loss.  *See* DeKalb Opp. 6.  DeKalb does not dispute that it would have paid teachers the same salary and benefits regardless of how those teachers spent their time.  Plaintiffs' Opp. to Mot. To Exclude Testimony Ex. 45 (August 15, 2025 Ward Dep.) (ECF 2407-053) 165:21–166:11, 167:8–169:6 (the Districts' damages expert agreeing that he is not "opining that because of Defendants' platforms specifically any school district had to pay teachers more than they would have paid teachers if Defendants' platforms did not exist"); 188:1–6 (the Districts' damages expert testifying that he did not "value the forgone output of that time").  The most DeKalb says is that teachers lost "valuable instruction time," DeKalb Opp. 6, but that again is not a "monetary loss" that can support recovery.  *MCI*, 728 S.E.2d at 652 (declining to award damages for building a system to "ensure the ability to reroute telecommunications traffic").  And if anyone is harmed by "lost instruction time," it is the students—not the District.

Much like the cable operator in *MCI* "still earned exactly the same amount of revenue it would have if the cable had never been severed," DeKalb has not shown any monetary harm had the Defendants' platforms not existed.  Awarding damages for funds that DeKalb would have spent regardless of Defendants' conduct "would only result in an unfair windfall."  *MCI*, 291 Ga. at 464.

In an attempt to avoid this result, DeKalb points to two intermediate Georgia appellate decisions that were issued 50 years and nearly a century prior to the Georgia Supreme Court's decision in *MCI*.  Om. Opp. 6 (citing *Kroger Co. v. Perpall*, 125 S.E.2d 511, 514 (Ga. Ct. App. 1962) and *Southwestern Railroad Co. v. Vellines*, 125 S.E.2d 511 (Ga. Ct. App. 1914)).  Neither decision can usurp more recent Georgia Supreme Court precedent, and both are also factually inapposite because they discussed "lost time" in the context of lost income.  *Kroger*, 125 S.E.2d at 514; *Sw. R. Co.*, 125 S.E.2d at 515.  This is not a lost income case—and DeKalb has provided no evidence of lost income.  *See MCI Comms.*, 728 S.E.2d at 650 (noting that plaintiff produced "no evidence that it issued any customer refunds or credits, lost any customers, or lost any profits due to" defendant's conduct).

Nor can *Aaron's Inc. v. MDC Grp., Inc.* save DeKalb's claim for damages.  2010 WL 11505919 (N.D. Ga. Dec. 15, 2010).  This decision likewise pre-dates the Georgia Supreme Court's decision in *MCI*.  And it is inapposite as it dealt specifically with damages in the context of breach of contract (where the underlying policy for damages is centered around the benefit of the bargain), not tort claims (where *MCI* instructed that the underlying policy for damages is centered around placing the plaintiff in the position it would have been without the tort).  *Compare id.* at *6 *with Cotto Law Grp. LLC v. Benevidez*, 870  S.E.2d 472, 478 (2022) (where "the firm would have paid the salaries of [two employees] whether they were helping "reorganize" after [defendant's tortious acts" or performing their normal job duties… the salaries did not represent any additional cost to the firm" and affirming conclusion that those "salaries did not constitute damages").[4]

### 2.    DeKalb's Evidence of "Lost Time" Damages is Insufficient

Even if Georgia law recognized DeKalb's "lost time" damages, DeKalb's Opposition

---

[4] DeKalb also cites to a variety of federal cases interpreting other states' laws, which do not, and cannot, override binding Georgia precedent.  Om. Opp. 201-04.

identifies no admissible evidence to quantify those damages. Although DeKalb asserts that it has sufficient evidence that is "specific, detailed, and directly ties to Defendants' features and platforms," DeKalb Opp. 7, DeKalb's cited evidence establishes the opposite.

*First*, none of DeKalb's cited evidence establishes the amount of time it allegedly lost to dealing with Defendants' alleged actionable conduct. DeKalb cannot rely on the responses of 6% of its teachers in the record only via the Klein survey to establish time actually lost because those responses are inadmissible hearsay. Om. Opp. 104–05. Further, DeKalb's reliance on its Chief Information Officer's affidavit—in which "she estimated that approximately 30% of her and her staff's time was devoted to combating social media-related issues," DeKalb Opp. 7—is entirely irrelevant. Ms. Davis's statements relate exclusively to IT personnel time, but DeKalb only seeks to recover lost teacher time, not time any time lost by members of the IT team. Ms. Davis's affidavit also suffers from a host of other defects,[5] including lack of foundation and hearsay.[6] *See* DeKalb Motion Ex. FF (Davis Aff.) (ECF 31-34) ¶ 15 ("…IT personnel estimates it spent 30% of its work time addressing and managing students' attempting to bypass Lightspeed to access prohibited material, including social media…").

*Second*, DeKalb's evidence, at most, discusses social media generally or the existence of

---

[5] Inexplicably, the Court is now in possession of two differing Davis affidavits. Although both are titled "Affidavit of Monika Davis" and dated May 16, 2025, the version of Ms. Davis's affidavit submitted in support of the DeKalb Opposition differs in one material way compared to the version provided to Defendants as part of discovery. The version of the Davis Affidavit provided to Defendants as part of discovery said: "By the time I retired in November 2024, *IT personnel* estimates it spent 30% of its work time addressing and managing students' attempting to bypass Lightspeed to access prohibited material, including social media…." Mot. Exhibit FF ¶ 15 (emphasis added). But the one DeKalb submitted with its summary judgment opposition said: "By the time I retired in November 2024, the district spent approximately 30% of work time addressing student attempts to bypass Lightspeed to access social media…." DeKalb Opp. Ex. 12 (Davis Aff.) (ECF 34-13) ¶ 15. DeKalb does not assert that Exhibit FF is an inoperative version of Ms. Davis's affidavit and has not otherwise explained why there are two different versions of her affidavit and why the later version attached to its Opposition conveniently removes language that establishes that Ms. Davis's 30% estimate is based entirely on hearsay and attributes that 30% to preventing students from accessing more than just social media.

[6] Although DeKalb summarily concludes that these statements fall under the business records exception, *see* DeKalb Opp. 10, DeKalb has made no attempt to establish that that hearsay exception applies here. Fed. R. Evid. 803(6) (records of regularly conducted activity is an exception to hearsay if the record was made at or near the time by someone with knowledge, the record was kept in the course of a regularly conducted activity, making the record was a regular practice of that activity, and all of these conditions are shown by the testimony of the custodian).

Defendants' platforms as a whole—not any actionable aspects of Defendants' platforms. *Supra* at II.A.2. None of this evidence establishes either the amount of time spent or that DeKalb spent any time specifically dealing with the actionable aspects of Defendants' platforms. At most, DeKalb's cited evidence amounts to a complaint that students access Defendants' platforms during the school day, which is not actionable. *See* SD Order 13; PI Order 16 (Section 230 bars claims based on "[f]ailing to institute '[b]locks to use during certain times of day (such as during school hours or late at night'").

*Finally*, DeKalb seeks support from cases that hold that the standard for calculating damages is merely reasonable certainty, but as its own cases make clear, DeKalb is not excused from adducing sufficient and competent evidence from which the reasonably certain calculation can be computed. *Kuhlke Constr. Co. v. Mobley, Inc.*, 285 S.E.2d 236, 239 (Ga. Ct. App. 1981) (calculated damages was "authorized with reasonable certainty by the legal evidence submitted") (cited at DeKalb Opp. 8).

### 3.    DeKalb Confirms It Did Not Incur Costs Because of Defendants' Actionable Conduct

DeKalb's claims for other types of damages—namely its so called "out-of-pocket" costs—are equally deficient.[7] Specifically, DeKalb identifies no admissible evidence that its claimed expenses related to Yondr pouches, cell phone lockers, and Lightspeed software, which collectively amount to $1,585,398 in claimed damages, are attributable to Defendants' actionable conduct.

***Yondr Pouches and Cell Phone Lockers***. DeKalb's own 30(b)(6) corporate representative's testimony—conspicuously absent from DeKalb's Opposition—confirms that the Yondr pouches were not purchased to deal specifically with Defendants' platforms, DeKalb Opp. Ex. 2 (Towns Dep.) 187:12–189:1 (agreeing that the "primary goal" of the Disconnect to Reconnect initiative—which the Yondr pilot program fell under—was "to improve student focus and reduce

---

[7] As an initial matter, the Opposition confirms that DeKalb does "not seek compensation for expanded mental health resources beyond the lost time for staff providing those resources." Om. Opp. 198. As such, the District cannot recover for those purported damages. Similarly, DeKalb makes no effort to save its request for damages for alleged property damage despite Defendants' identifying the various deficiencies with that request. Accordingly, DeKalb has waived its assertion that it is entitled to such damages.

distractions in the classroom by limiting cell phone access during school hours"). Also not addressed in Plaintiffs' Opposition are DeKalb's internal documents specifically stating that "the primary goal of this initiative is to improve student focus and reduce distractions in the classroom by limiting *cell phone* use during school hours." DeKalb Mot. Ex. T (Reducing Cell Phone Use in High School) (ECF 31-22). The undisputed evidence establishes that these physical barriers were not purchased in response to any actionable aspect of Defendants' platforms.

The evidence DeKalb cites does not create a triable issue on this fact. While DeKalb relies heavily on the testimony of its Director of Student Relations, Dr. Darnell Logan, his statements on this issue are inadmissible hearsay. *First*. Dr. Logan's testimony merely relayed a conversation he had with an assistant principal, who purportedly inquired as to "how he can prevent social media concerns in his school with this Yondr pouch." DeKalb Opp. Ex. 4 (Logan Dep.) 82:10–85:3; *see Orr*, 285 F.3d at 778. *Second*, Dr. Logan testified that the assistant principal made "a reference about concerns with some TikTok challenges." DeKalb Opp. Ex. 4 (Logan Dep.) 82:10–85:3. Beyond being inadmissible hearsay, this testimony relates only to non-actionable content that cannot be used to support liability under this Court's rulings. SD Order 25.

The remaining evidence DeKalb cites, also from Dr. Logan's deposition, focuses on notifications, which are protected under Section 230. PI Order 16. Further, Dr. Logan acknowledged that distractions can also arise from other uses of students' cellphones that do not involve Defendants' platforms, such as texting. DeKalb Opp. Ex. 4 (Logan Dep.) 97:2–98:1 (conceding that notifications from texting is distracting); *id.* at 143:3–145:10 (testifying that while students get notifications from social media, they also received notifications from texting, gaming, and calls). None of this evidence—which, except for one instance where Dr. Logan discusses a hearsay statement about a protected aspect of TikTok's platform—even discusses any of the Defendants' platforms by name or establishes that Defendants' platforms, let alone the *actionable* aspects of their platforms, necessitated this purchase.

**Lightspeed**. Similarly, DeKalb does not dispute that it has purchased and used Lightspeed since 2014 (before the existence of some of Defendants' platforms), nor does it dispute that it had Lightspeed (or some equivalent) to comply with the Children's Internet Protection Act (CIPA). *See*

1   DeKalb Opp. Ex. 15 (Meyers Rep.) (ECF 34-16).  Because the District would have borne costs for

2   Lightspeed without Defendants' platforms, this cost cannot be said to have been incurred as a result

3   of Defendants' alleged actionable conduct.  *MCI*, 728 S.E.2d at 651-652.  DeKalb similarly does

4   not meaningfully dispute that Ms. Davis's sworn statement—evidentiary defects, as discussed

5   above, notwithstanding—that the 30% of the time that IT personnel spent preventing students from

6   bypassing Lightspeed to access "prohibited material", is attributable to social media, let alone

7   Defendants' platforms.  DeKalb Motion Ex. FF (Davis Aff.) ¶ 15.  DeKalb merely concludes,

8   without any explanation as to why, that Defendants should bear even 30% of this cost despite

9   DeKalb's inability to allocate that entire 30% to dealing with Defendants' platforms.  *See Cotto*

10  *Law Grp.*, 870  S.E.2d 472 at 477 (law firm's testimony concluding that a typical case "can range

11  from $2,000 to $10,000," without providing any explanation as to why this range could be applied

12  to the cases at issue, was insufficient evidence to establish damages).

13          **D.    DeKalb Cannot Recover the Hoover Plan as Abatement or Future Damages**

14          The Hoover Plan is not available under Georgia law as either abatement for DeKalb's

15  nuisance claims or as future damages for its negligence claim.  *See also* Om. Reply Section II.D.

16          **1.    The Hoover Plan is Not a Proper Abatement Remedy Under Georgia**
17                  **Law**

18          In addition to the fact that DeKalb is not entitled to equitable relief because it asserts that it

19  has an adequate remedy at law, *see* Om. Reply Section II.D.1, the Hoover Plan is not proper

20  abatement under Georgia law.  DeKalb failed to explain why the Georgia Supreme Court's binding

21  decision in *Davis v. Stark*, which provides that a "public nuisance may be abated in equity *by*

22  *injunction only*," does not apply here. 31 S.E.2d 592, 596-597 (1944) (emphasis in the original);

23  *see also* DeKalb Mot. 36.[8]

---

24  [8] DeKalb's attempts to distinguish the Georgia cases cited by Defendants, Om. Opp. 214-15, fails.

25  DeKalb has not cited a single case where a court has found its theory of "monetary abatement" to be acceptable abatement relief under Georgia law.  It misses the mark in attempting to distinguish

26  *Green Meadows Hous. Partners, LP v. Macon-Bibb Cnty.*, 906 S.E.2d 430, 441 (2024). DeKalb asserts that the decision "turned on the statutory scope of receiverships," Om. Opp. 215, but it fails

27  to reckon with the Court of Appeals' citation to and reaffirmation of *Davis*, 31 S.E.2d 592, for the proposition that "a public nuisance may be abated in equity *by injunction only*." *Green Meadows*,

28  906 S.E.2d at 441 (emphasis in original).  DeKalb also attempts to distinguish *Superior Farm Mgmt., L.L.C. v. Montgomery*, 513 S.E.2d 215, 217-18 (Ga. 1999), by asserting that it says nothing

Moreover, DeKalb's Opposition confirms that the Hoover Plan is intended to address downstream consequences rather than any actionable conduct by Defendants.  *See, e.g.,* DeKalb Opp. 10–11 (describing the "harms caused by Defendants" as "student distraction," "disrupted student sleep," and "an overall burden on constrained school resources").  But DeKalb failed to provide *any* example of a Georgia court approving any abatement remedy that targets the downstream consequences of that action rather than the defendants' conduct.

## 2.    DeKalb Cannot Recover the Hoover Plan as Future Damages

DeKalb does not meaningfully rebut Defendants' assertion that the District is not "reasonably certain" to expend $2 to $4 billion to implement its voluntary "strategic plan."  In its cursory paragraph in support of its future damages claim, DeKalb claims that it "produced extensive testimony about, for example, its need for more mental health professionals…who are needed to provide an increase in mental health services due to social media addiction."  DeKalb Opp. 11.  DeKalb's evidence is not "extensive" at all, and the Opposition misses the point entirely.  Even if it is true that DeKalb recently hired more mental health personnel or created new SAFE centers, DeKalb Opp. Ex. 2 (Towns Dep.) 329:3-25, or that it desires to hire even more mental health workers at this time, *i.e.*, to attain certain student-to-psychologist ratios, DeKalb Opp. Ex. 5 (Revels Dep.) (ECF 34-6) 218:13-219:4; DeKalb Opp. Ex. 16 (Sauce Dep.) (ECF 34-17) 102:1-104:7, none of DeKalb's cited evidence establishes that it is "reasonably certain" to incur its alleged additional costs over the next 15 years as a result of harms caused by the actionable features of Defendants' platforms.

Contrary to the Districts' assertion in their Omnibus Opposition, *Zakas v. Jackson,* 835 S.E.2d 371 (Ga. App. Ct. 2019), does not stand for the proposition that a "plaintiff may obtain an award of future damages if it proves ongoing injury and the costs of remediation."  *See* Om. Opp. 205.  *Zakas* involved a plaintiff who was awarded future damages for costs he was reasonably certain to incur in the future as a result of a past injury.  352 Ga. App. at 600.  But DeKalb does not

---

about the form of abatement because the "nuisance was planned but had not begun," Om. Opp. 214, and *J.D. Jewell, Inc. v. Hancock*, 175 S.E.2d 847 (Ga. 1970), by stating that it involved matters of jurisdiction, Om. Opp. 215.  But those observations are immaterial.  Defendants cited these cases as examples of how Georgia courts have abated public nuisances: by issuing *injunctions* to cease activities constituting nuisances (or preventing them from starting in the first instance).

17

seek the Hoover Plan as reasonably certain expenses it will have to make as a result of past injury. It effectively claims that it is entitled to the Hoover Plan because Defendants may continue to injure it in the future, Om. Opp. 206, but DeKalb does not seek any changes to Defendants' conduct through the Hoover Plan.  And in any event, *Zakas* does not dispense of the District's requirement to establish that its future damages are "reasonably certain," which as described above, it failed to do.

**III.    CONCLUSION**

DeKalb's Opposition confirms that summary judgment or, in the alternative, partial summary judgment, in Defendants' favor is warranted.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

1    Dated: December 5, 2025                          Respectfully Submitted,

2

3                                                      By: /s/ David P. Mattern

4                                                          GEOFFREY M. DRAKE, *pro hac vice*
                                                          gdrake@kslaw.com
5                                                        TACARA D. HARRIS, *pro hac vice*
                                                          tharris@kslaw.com
6                                                        KING & SPALDING LLP
                                                          1180 Peachtree Street, NE, Suite 1600
7                                                        Atlanta, GA 30309
                                                          Tel.: (404) 572-4600
                                                          Facsimile: (404) 572-5100
8
                                                          DAVID P. MATTERN, *pro hac vice*
9                                                        dmattern@kslaw.com
                                                          KING & SPALDING LLP
10                                                       1700 Pennsylvania Avenue, NW
                                                          Suite 900
11                                                       Telephone: (202) 737-0500
                                                          Facsimile: (202) 626-3737
12
                                                          BAILEY J. LANGNER (SBN 307753)
13                                                       blangner@kslaw.com
                                                          KING & SPALDING LLP
14                                                       50 California Street, Suite 3300
                                                          San Francisco, CA 94111
15                                                       Telephone: (415) 318-1200
                                                          Facsimile: (415) 318-1300
16
                                                          *Attorneys for Defendants*
17                                                       *TikTok Inc., ByteDance Inc., TikTok Ltd.,*
                                                          *ByteDance Ltd., and TikTok LLC*
18

19
                                                      By: /s/ Christian J. Pistilli
20                                                       ASHLEY M. SIMONSEN (SBN 275203)
                                                          COVINGTON & BURLING LLP
21                                                       1999 Avenue of the Stars
                                                          Los Angeles, CA 90067
22                                                       Telephone: (424) 332-4800
                                                          Facsimile: (424) 332-4749
23                                                       asimonsen@cov.com

24                                                       Phyllis A. Jones (*pro hac vice*)
                                                          Paul W. Schmidt (*pro hac vice*)
25                                                       Christian J. Pistilli (*pro hac vice*)
                                                          COVINGTON & BURLING LLP
26                                                       One City Center
                                                          850 Tenth Street, NW
27                                                       Washington, DC 20001
                                                          Telephone: (202) 662-6000
28                                                       Facsimile: (202) 662-6291

                                    19
            DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
                     FOR SUMMARY JUDGMENT (SD NO. 5)

1  pajones@cov.com
   pschmidt@cov.com
2  cpistilli@cov.com

3  *Attorneys for Defendants Meta Platforms,*
   *Inc. f/k/a Facebook, Inc.; Facebook*
4  *Holdings, LLC; Facebook Operations,*
   *LLC; Meta Payments Inc. f/k/a Facebook*
5  *Payments Inc.; Meta Platforms*
   *Technologies, LLC; f/k/a Facebook*
6  *Technologies, LLC; Instagram, LLC; and*
   *Siculus LLC f/k/a Siculus, Inc.*

7

8
                              By: */s/ Andrew M. Karp*
9                             ALISON BROWN *pro hac vice*
                              alli.brown@kirkland.com
10                            KIRKLAND & ELLIS LLP
                              2005 Market Street, Suite 1000
11                            Philadelphia, PA 19103
                              Tel.: (215) 268-5000
12
                              JESSICA DAVIDSON, *pro hac vice*
13                            jessica.davidson@kirkland.com
                              JOHN J. NOLAN, *pro hac vice*
14                            jack.nolan@kirkland.com
                              ANDREW M. KARP, *pro hac vice*
15                            andrew.karp@kirkland.com
                              601 Lexington Avenue
16                            New York, NY 10022
                              Tel.: (212) 446-4800
17
                              JONATHAN H. BLAVIN (SBN 230269)
18                            jonathan.blavin@mto.com
                              MUNGER, TOLLES & OLSON LLP
19                            560 Mission Street, 27th Floor
                              San Francisco, CA 94105
20                            Tel.: (415) 512-4000

21                            VICTORIA A. DEGTYAREVA
                              (SBN 284199)
22                            victoria.degtyareva@mto.com
                              MUNGER, TOLLES & OLSON LLP
23                            350 South Grand Avenue, 50th Floor
                              Los Angeles, CA 90071
24                            Tel.: (213) 683-9100

25                            *Attorneys for Defendant Snap Inc.*

26

27
                              By: */s/ Ashley W. Hardin*
28                            JOSEPH G. PETROSINELLI,

                              20
─────────────────────────────────────────────
DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

**ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27**

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.


DATED: December 5, 2025

By: */s/ David P. Mattern*
DAVID P. MATTERN

*Attorneys for Defendants
TikTok Inc., ByteDance Inc., TikTok Ltd.,
ByteDance Ltd., and TikTok LLC*


By: */s/ Christian J. Pistelli*
CHRISTIAN J. PISTELLI

*Attorneys for Defendants Meta Platforms,
Inc. f/k/a Facebook, Inc.; Facebook
Holdings, LLC; Facebook Operations,
LLC; Meta Payments Inc. f/k/a Facebook
Payments Inc.; Meta Platforms
Technologies, LLC; f/k/a Facebook
Technologies, LLC; Instagram, LLC; and
Siculus LLC f/k/a Siculus, Inc.*


By: */s/ Andrew M. Karp*
ANDREW M. KARP

*Attorneys for Defendant Snap Inc.*


By: */s/ Ashley W. Hardin*
ASHLEY W. HARDIN

*Attorneys for Defendants YouTube, LLC
and Google LLC*

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)

**<u>ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27</u>**

I, David P. Mattern, hereby attest, pursuant to N.D. Cal Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


By: */s/ David P. Mattern*
DAVID P. MATTERN

DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (SD NO. 5)