# Exhibit 5

**FILED**
Superior Court of California
County of Los Angeles

OCT 3 0 2025

David W. Slayton, Executive Officer/Clerk of Court

By: A. Rosas, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

## *Social Media Cases*
## JCCP5255

## (Lead Case: 22STCV21355)

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**
**Date of Hearing: October 28, 2025**

**Defendants' Omnibus Motion to Seal (General Causation *Sargon* Expert Reports and Deposition Transcripts)**

Court's Ruling:  The Motion is granted solely with respect to (1) the names and other identifying information of Defendants' non-executive employees who have not been deposed in the MDL or JCCP proceedings, and, (2) as to executive employees and persons who have been deposed in the MDL or JCCP proceedings, personal identifying information other than their names. The Motion is denied in all other respects.

Within 10 days of the date of this Order, Defendants are to provide a list identifying (1) every document filed conditionally under seal in connection with the general causation *Sargon* motions that includes the above-mentioned identifying information that is permitted to be sealed by this Ruling, and (2) every document filed conditionally under seal in connection with the general causation *Sargon* motions that does *not* include the above-mentioned identifying information that is permitted to be sealed by this Ruling.  The clerk will then place in the public record all documents in the second category.  Within 15 days of this order, Defendants must re-file in the public record all documents from the first category after making redactions solely to the identifying information permitted to be sealed in accordance with this Ruling.

Defendants move for an order sealing certain portions of the expert reports and deposition transcripts that were lodged or filed provisionally

I

under seal with the Court in support of the Parties' motions to exclude testimony of general causation experts, which were heard on September 17, 2025.  Defendants move to seal four categories of information: (1) "the names and other identifying information of their non-party, non-executive employees (and the email addresses of all employees)"; (2) "the average daily usage statistics of Snapchat for 13–17 year old users in the United States for the first quarter of 2025"; (3) excerpts of two expert reports depict[ing] Meta's "user figures, metrics, and benchmarks"; and (4) "information identifying non-party, non-employee individuals whose identities are irrelevant to these cases." (Defs' Mot., at pp. 3-4.)

Plaintiffs have opposed the Motion.

"The court may order that a record be filed under seal only if it expressly finds facts that establish: (1) There exists an overriding interest that overcomes the right of public access to the record; (2) The overriding interest supports sealing the record; (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; (4) The proposed sealing is narrowly tailored; and (5) No less restrictive means exist to achieve the overriding interest." (Cal. Rules of Court, rule 2.550, subd. (d).) "A party requesting that a record be filed under seal must file a motion or an application for an order sealing the record. The motion or application must be accompanied by a memorandum and a declaration containing facts sufficient to justify the sealing." (Cal. Rules of Court, rule 2.551, (b)(1).) "The court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties." (Cal. Rules of Court, rule 2.551, subd. (a).)

A party seeking to have a record sealed must offer facts to establish that the "overriding interest supports sealing the record," and that "[a] substantial probability exists that the overriding interest will be prejudiced if the record is not sealed." (California Rules of Court, rule 2.550(d)(2)-(3).) "*Substantial probability* is a higher standard than *reasonable likelihood*, the latter of which has been construed to mean something less than more probable than not yet greater than something that is merely possible." (*Marino v. Rayant* (2025) 110 Cal.App.5th 846, internal citations, quotation marks, and brackets omitted; italics added.) As one court put it, the party moving to seal the documents must make a "specific showing of serious injury" resulting from the public filing of the confidential documents. (*Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1282.)

*1) Names and Identifying Information of Defendants' Employees*

2

"Defendants seek to redact the names and other personal identifying information (such as email addresses) of several non-party current or former employees" who are not employed at the executive level.  (Defs' Mot., at p. 5.)  Defendants offer the caveat that such names would not necessarily be sealed during trial:

> Plaintiffs also argue that "most" of these names "have been deposed" and "may be called to testify at trial." That is not accurate: the documents have many names of non-deponents and individuals who have not been put on Plaintiffs' draft witness lists, as a simple review indicates. More fundamentally, Plaintiffs are wrong that being deposed in a case or being put on an initial draft witness list sacrifices a non-party's privacy and security interests. ***If a witness is called to testify at trial, Defendants agree their name will generally be public absent special court order****.* But here, many of the individuals that Plaintiffs deposed may never be called to ultimately testify in the future. Until they are, their privacy interests outweigh any interest in their names being exposed.

(Defs' Mot., at p. 8, emphasis added.)

This court has already determined that the names of lower-level employees included in this proceeding's filed documents could remain under seal in the context of briefing on a demurrer.  (See Ruling, Jan. 8, 2025, at pp. 25-27.)  However, the public interest in disclosure now is greater because the court is considering documents that may be the basis for an adjudication in this litigation.  Unfortunately, Defendants have failed to identify *which* documents include employee names that are sought to be sealed and thus the court is not able to evaluate either the nature of the employees' work and responsibility or the context in which the employees' names appear.

Because Defendants have provided testimony that their employees have been the subject of unwanted attention when their names have appeared in connection with litigation, the balance of harms favors protecting the names of, and personal identifying information about, employees who have not played a significant role in connection with the facts at issue in this litigation.  However, the greater the importance of an employee's role in connection with facts that are being litigated here, the greater the public interest in knowing the identify of such persons.

3

If an employee has information of such significance to this litigation that he or she has been deposed in the MDL or the JCCP, either as a percipient witness or as a 30(b)(6) deponent, the balance of interests favors public disclosure, and the names of such employees may not be shielded from public view. However, the balance of interests favors redaction of (1) personal identifying information other than the names of such persons, and (2) the names and personal identifying information of Defendants' employees who have not been deposed and who are not employed at the executive level.

### 2) Snapchat's Daily Usage Statistics

"Snap seeks to seal Appendices B and C2 to the Expert Rebuttal Report of Krista Hayakawa dated July 28, 2025." (Defs' Mot., at p. 3.)

In support of this request, Snap relies on the five-paragraph declaration of Krista Hayakawa (Hayakawa), who is a "Data Engineer" for Snap. (Hayakawa Decl., ¶ 2.) Hayakawa describes her work for Snap as follows:

> As a Data Engineer, I have responsibility for managing user data for the company and providing analysis of that data to teams throughout the company. I also manage legal data preservation processes and oversee the legal program for fulfilling data requests. I am responsible for various data quality monitoring systems for the company that ensure data used in analytics is of high quality.

(Hayakawa Decl., ¶ 3.) The following two paragraphs of the declaration are offered as the justification for a sealing order:

> 4. Appendices B and C of the Rebuttal Report represent the average daily usage statistics of Snapchat for 13-17 year old users in the United States for the first quarter of 2025. These data are confidential and reveal sensitive information relating to how users engage with Snapchat. As a matter of policy and practice, Snap treats these data as confidential and Snap employees with access to these data closely guard such data from disclosure to competitors or customers.
>
> 5. Disclosure of these data to the public or to Snap's competitors would cause significant harm to Snap. Usage statistics are a key indicator of Snap's performance and competitive position in the market. Given the highly

4

competitive nature of the social media industry, there is a substantial probability the disclosure of these data—from less than a year ago—will competitively harm Snap and/or its customers in the marketplace. Among other things, the disclosure of these data will provide competitors with the latest insight into Snap's user engagement trends over time and across features, among a pertinent demographic of users.

(Hayakawa Decl., ¶¶ 4-5.)

The way in which users engage with Snapchat is of course highly relevant to this litigation. The public interest in having open access to such information when it is submitted to this court is high.

As a "Data Engineer," Hayakawa is responsible for making sure that Snap's data are analyzed accurately and the data are of "high quality." But Hayakawa does not purport to have any knowledge as to how such data could be used by a competitor to harm Snap's business interests. More importantly, Hayakawa simply fails to provide *facts* making a "specific showing of serious injury" to Snap from the filing of these data in the public record. Hayakawa's statement that data about user engagement will provide "competitors with the latest insight into Snap's user engagement trends" is tautological. The statement does not show how access to these data—which again, are highly relevant to this litigation—would prejudice Snap's business.

Accordingly, the Motion is denied as to Snap's user data.

*3) Meta's User Figures, Metrics, and Benchmarks*

"Meta seeks to seal one image and three sentences that, if disclosed, could cause it competitive harm. These excerpts (which appear in the Goldfield and Christakis reports) depict user figures, metrics, and benchmarks." (Defs' Mot., at p. 4.) However, Meta fails to identify what portion of the Goldfield and Christakis reports it refers to. The declarant offered by Meta to support its sealing (Max Eulenstein) does not identify any specific material that this court could review. Instead, the declarant states:

> I have reviewed the excerpts of the report of Dr. Christakis and amended report of Dr. Goldfield that Meta seeks to seal. The screenshot depicted in the Goldfield report and the identified excerpts in the Christakis report include

5

confidential and proprietary information, and could cause
Meta competitive harm if disclosed publicly.

(Eulenstein Decl., ¶ 2.)  The Christakis report is over 350 pages in length.
The amended Goldfield report is nearly 300 pages.  This court has no proper
way of knowing what portions of these two voluminous documents are the
subject of the sealing request.

Meta's declarant also fails to make a specific showing that the
(unidentified) information in the Christakis and Goldfield reports, if filed in
the public record, would harm Meta's business interests in a manner that
would justify denying the public's right to access such information.  Meta's
user data is highly relevant to this litigation; the public's right to view such
information when included in the record of this litigation is thus very high.
However, the declarant's offered justification for the sealing consists of just
the following three sentences:

> Public disclosure of user metrics could enable other
> companies to better determine Meta's position in the market
> and adjust their strategy in response. Public disclosure of
> user metrics also enables other companies to test their
> internal data against Meta's data. This information could
> therefore give Meta's competitors an unfair advantage and
> thereby cause Meta competitive harm.

(Elenstein Decl., ¶ 4.)  The declarant fails to provide sufficient factual detail
that would allow this court to conclude that Meta's user metrics would be
able to be used by Meta's competitors to gain a competitive advantage.
Instead, this court is left to assume (without supporting evidence) that any
information about a company's business that the company chooses to keep
confidential can be used by competitors to gain an unfair advantage; were
that the case, any and all internal information held by a company regarding
its business would be entitled to remain sealed from the public record.  The
California Rules of Court quoted above do not allow that conclusion.

Accordingly, the Motion is denied as to Meta's usage data.

### 4) Information Identifying Non-Employee Third Parties

There are three different pieces of information that Defendants seek to
seal under this heading.  First, Defendants claim that the expert Dr. Shear
"revealed information" about a non-party patient of his when giving
deposition testimony.  Defendants state (without citing to any evidence): "In
response to being asked whether he knew the author of a publication, [Dr.

6

Shear] (seemingly inadvertently) stated that he did have some familiarity because someone he knew connected with the author was a patient of his." (Defs' Mot., at p. 11.)  "Defendants only seek to seal the information about the patient."  (Defs' Mot., at p. 11.)  Defendants do not identify this information in Dr. Shear's deposition.  The court thus has no real ability to determine the nature of the information.  Nor have Defendants presented any declaration in support of this sealing request.  Defendants do not claim that any confidential information about the patient (address, diagnoses, reasons for seeking psychiatric care, etc.) was revealed in the deposition.  Nor do Defendants claim that the patient's *name* was revealed in the deposition.  That there is some unspecified "information" about a patient found somewhere in deposition testimony does not justify an order sealing that deposition.  This ruling is without prejudice to Defendants asking the court to redact confidential third-party patient information if it appears in a portion of the deposition of Dr. Shear that is used at trial.

Second, Defendants claim that "Dr. Christakis's JCCP and MDL expert reports contains a clip of a YouTube-produced document that identifies a 'Predatory Account' and includes a username (which appears to reflect an individual's first, middle, and last names) and phone number."  (Defs' Mot., at p. 12.)  Once again Defendants and their relevant declarant fail to identify what portion of the expert reports contains this information.  Defendants thus again fail to meet their burden in requesting to seal such information.  Moreover, Plaintiffs explain that "this third-party's account name, and his comment setting forth his telephone number, were both openly viewable on the YouTube platform where they were published by the user himself."  (Pls' Opp., at p. 7.)  The third-party has no privacy interest in information he willingly posted onto a public website.

Third, Snap vaguely states that it "seeks to redact the names, images, and other identifying information of non-party, non-employees."  (Defs' Mot., at p. 12.)  Defendants' Motion does not identify the filed records in which such information might be found, let alone the portions of those documents containing such information.  The declaration in support of this request to seal unspecified information is a purported declaration by Laura Lopez that Defendants claim was filed September 17, 2025.  After searching the docket of JCCP5255 and the lead case 22STCV21355, this court cannot find a declaration by "Laura Lopez" filed on September 17, 2025.  Defendants have failed to make any showing that would justify an order sealing the unidentified information.

7

Accordingly, the Motion is denied as to this purported third-party information.

Date: 10/30/2025

The Honorable Carolyn Kuhl
Judge of the Superior Court