# Exhibit 92

# PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE GENERAL CAUSATION TESTIMONY OF PLAINTIFFS' EXPERTS

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

1  [*Parties and Counsel Listed on Signature Pages*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>ALL ACTIONS | **PLAINTIFFS' FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(C) NON-RETAINED EXPERT DISCLOSURES** |

1    Pursuant to Federal Rule of Civil Procedure 26(a)(2) and (e), Plaintiffs make this amended

2  submission providing disclosure and information on its non-retained experts.

3    Depending on the Court's rulings on pretrial motions and motions during trial, evidentiary

4  rulings, evidence presented by Defendants, and other factors, Plaintiffs may call **Arturo Béjar** as a

5  witness at trial, or designate portions of his deposition testimony to be presented at trial. Mr. Béjar

6  is not "retained or specially employed to provide expert testimony in the case," nor do his duties

7  regularly involve giving expert testimony. He is therefore not required to provide a written report

8  pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure but whose testimony may

9  include information that could be considered expert testimony under Rules 702, 703 and/or 705 of

10  the Federal Rules of Evidence. Mr. Béjar may offer some or all of the opinions set forth in this

11  disclosure. Additional opinions may be elicited to rebut or respond to opinions of Defendants'

12  witnesses that have not been disclosed as of the date of this disclosure or to address new or

13  additional information. Mr. Béjar has previously given a deposition in this matter spanning three

14  days which contains the facts and opinions that Plaintiffs anticipate he may offer at trial. Plaintiffs

15  reserve the right to seek admission of this opinion testimony under Rules 702, 703 and/or 705 of the

16  Federal Rules of Evidence. Plaintiffs specifically reserve the right to designate fact or expert

17  testimony from this witness in accordance with any Court orders and instructions that may apply

18  regarding pretrial orders and the procedure for depositions.

19    Mr. Béjar has 30 years of experience in online and social media user safety. He began

20  working in the tech industry at the age of 15 for IBM. Mr. Béjar graduated with a degree in

21  mathematics from King's College in 1993. In 1994, he began work at Electric Communities, a

22  social media startup, where he focused on security issues. Mr. Béjar joined Yahoo! in 1998, where

23  he took on a role equivalent to the Chief Security Officer of the company. He was the first engineer

24  at Yahoo! dedicated to writing security code. His job was to make sure that every product that

25  Yahoo! made was safe for the people using it, which involved, among other things, implementing

26  protections for kids and using test accounts to assess the safety of the platform and the effectiveness

27  of safety features.

28

1    Mr. Béjar joined Meta in 2009, as the company's site integrity team manager. He continued

2    to work at Meta through 2015, and his role greatly expanded during that time to include not only

3    site integrity, but also customer care and other teams. In coordination with Meta CEO Mark

4    Zuckerberg, Mr. Béjar created the Protect and Care team, a cross-functional group that managed

5    Facebook's technical security and the safety of users and served as the program's senior engineer

6    and project leader. His work at Meta included recommending and implementing safety features on

7    the Facebook platform, and monitoring and assessing the platform for potential safety risks and

8    harms. This included, for example, developing and implementing a reporting framework that was

9    used by Facebook to identify harmful activity on the platform. In this role, Mr. Béjar interfaced

10    directly with Meta's senior leadership, including Mr. Zuckerberg and COO Sheryl Sandberg,

11    regarding Meta's safety program.

12    Mr. Béjar retired from Meta in 2015 to spend time with his family but continued to consult

13    with a number of technology firms about their safety programs. In 2019, Meta requested that Mr.

14    Béjar return as a part-time consultant to assist and advise Instagram's wellbeing team. Mr. Béjar's

15    second stint at Meta lasted from 2019 to 2021. As part of his consulting work at Meta, Mr. Béjar

16    performed an assessment of Instagram's safety framework to identify existing problems causing

17    harms to users, and to develop potential solutions. That assessment included creating and

18    conducting a large-scale user survey to identify the harms occurring to users on Instagram. Based

19    on that survey and other investigations, Mr. Béjar developed a set of safety recommendations for

20    Instagram, which he communicated directly to Meta's top leadership, including Mr. Zuckerberg.

21    Mr. Béjar later testified in front of the US Senate Judiciary Committee about the harms that

22    stem from Meta's platforms. Mr. Béjar's testimony covered both his personal knowledge and

23    experience working at Meta and independent research and testing of Meta's platforms and safety

24    features.

25    Mr. Béjar was also retained by Meta's 'Oversight Board' to advise on issues of youth safety

26    after his consulting stint at the company. Meta has described Mr. Béjar as having "world-class

27

28

- 3 -

expertise" and that "[t]here are fewer than 10 people in the world meeting [Bejar's] qualifications, we estimate, most of whom are retired or employed at [Meta's] competitors."

Mr. Béjar may offer testimony under Rule 702, 703 or 705 of the Federal Rules of Evidence on the following subject matters:

- His personal knowledge and experience related to online child safety and well-being;

- His personal knowledge and experience related to the ethical design of online platforms, and necessary safety designs for online platforms;

- His personal knowledge and experience of the safety of Meta's platforms for minors;

- His personal knowledge and experience related to how design defects on Meta's platforms can cause harm to minors (e.g., age verification, reporting processes, beauty filters, public like counts, infinite scroll, default settings, private messages, reels, ephemeral content, and connecting children with adult strangers);

- His personal knowledge and experience related to Meta's prioritization of growth and engagement over safety;

- His personal knowledge and experience about online predation and prevention efforts, including the prevalence and harmful effect of child sexual abuse material (CSAM), child exploitative imagery (CEI), minor sexualization, endangerment, exploitation, and grooming;

- His personal knowledge and experience related to online bullying and harassment;

- His personal knowledge and experience drafting and assessing the adequacy of disclosures concerning risks or known issues of online platforms to the public;

- His personal knowledge and experience related to the design and efficacy of Meta's safety features, and viable alternative technologies that would have improved the platforms' safety;

3238998.2

- His personal knowledge and experience related to Meta's community standards/policies and enforcement, Meta's community standards enforcement reports, the accuracy or inaccuracy of Meta's public statements about safety and harms, Meta's disclosure and warning of the risks and harms on Meta's platforms (or lack thereof), and the need for transparency, and Meta's concealment of information about harms on Meta's platforms;

- His personal knowledge and experience regarding evaluations and tests that he performed on the safety of Instagram and Facebook for children, videos of which were previously produced by Mr. Béjar;

- His personal knowledge and experience interpreting survey results and user testimonials concerning the safety of online platforms.

The facts and opinions to which Mr. Béjar may testify on the subjects listed above are set forth in his deposition testimony given in this case and may include the following:

- It is important for social media companies like Meta to protect kids who use their apps. Meta has a responsibility to make the platform safe for teens. User safety needs to be top priority for social media companies like Meta. If Meta knows that kids are being harmed on its app, its top priority should be to swiftly take action to prevent harm to kids.

- Meta does not adequately protect kids on Instagram. Instagram is not a safe place for kids. Kids are more vulnerable to online harms than adults. Instagram was not built to be safe or good for kids.

- Growth and engagement were a top priority for Meta, and safety was not a priority but an afterthought. Meta does not provide the necessary resources or support to the teams working on safety and wellbeing. Building safety measures can have a negative impact on user engagement, which disincentivizes Meta from building safety measures. Meta's organizational structure creates a conflict in favor of growth, not safety, and that caused Instagram to be unsafe for kids.

- Meta executives were aware of the harms teens were experiencing on their platforms, and they chose not to adequately understand those harms, address them, or reduce them.

- While consulting at Meta, Mr. Béjar performed a comprehensive assessment of Instagram's safety framework to see why there was so much harm to kids and found there were no features that meaningfully reduced harm. The lack of safety framework caused, or contributed to cause, an unsafe environment for kids. Instagram's approach to safety was inadequate and not effective at preventing or substantially reducing harm to kids. Instagram should have implemented a safety framework with four components: 1) users need to be able to effectively report, 2) Instagram needs to use information from reports to protect other users, 3) Instagram needs to provide feedback to the user causing harm, and 4) Instagram needs to monitor and measure progress. This safety framework is content agnostic. This safety framework would more likely than not reduce harm.

- A proper reporting flow is necessary to make social media platforms safe. If Meta has a reporting flow tool with a low action rate, then it has a bad reporting flow. Meta should want to receive reports from users about any bad experiences they are having so Meta can take action on those reports. Instagram's reporting flow is flawed because it was not designed for teens and does not reflect the harms that they experience—only 1 in 100 would actually complete a report. The reporting flow has the same flaws today.

- Instagram does not have appropriate metrics in place to assess how safe the platform is or how effective its safety features are.

- Instagram has not implemented any tools that are effective at reducing harm. The safety tools it has implemented are window dressing for the press and regulators but are not effective. Meta knows that users will not adopt opt-in features, yet it failed to make many of its safety features default settings.

- 6 -

- Instagram should have had appropriate age verification in place to keep kids safe. Instagram acknowledged that kids do not accurately report their age. Instagram had a "don't ask, don't tell policy" regarding the age of users. It was understood at Meta that young kids were using Instagram and that was a substantial reason behind Meta's acquisition of the platform. Meta wanted very young kids on their apps. There were no serious efforts to detect or remove under 13 accounts on Instagram. It is easy to find under 13 accounts on Instagram, but it is difficult to report those accounts. Mr. Béjar's own testing on teen accounts further demonstrates this. Instagram is not safe for kids under 13.

- Meta's platforms were designed to keep users, including kids, engaged and to maximize time spent on the platforms. Platform features that cause or contribute to engagement and potentially excessive time spent include the nature and frequency of notifications, never-ending infinite scroll of images and videos, and rewards such as likes and hearts.

- Instagram and social media can be addictive, and the design of the platforms can cause or contribute to addiction. Meta redefined the issue as problematic use, and it was not studied and understood in good faith. Meta did not publish any internal data on addiction or problematic use and did not publicize this risk. Meta did not do enough to prevent or substantially reduce kids' engagement or time spent or addiction or problematic use on Instagram. Meta did not monitor kids' excessive use or engagement. Meta did not properly monitor its platforms for addiction or problematic use and does not take adequate steps to prevent or substantially reduce kids' addiction or problematic use.

- Meta misleads the public to believe that its platforms are safe for teens and that it has policies that it effectively enforces that do not allow sexual exploitation. Meta fails to disclose that the design of the platform rewards dangerous behavior and encourages young girls to create racy content. Meta fails to disclose and warn that its

- 7 -

platforms facilitate grooming, sexual endangerment, child exploitation, and the production, sharing and sale of child sexual abuse material. Meta fails to disclose that these are not rare occurrences but occur with great frequency. Meta was aware of the problem with inappropriate interactions between adults and kids, but did not take appropriate actions to prevent this harm. Meta would even recommend unconnected adult strangers to young users. Parents are not aware of these risks because Meta does not make these risks known to the public. Instead, Meta publishes its community standards enforcement reports that falsely reassure parents that kids will not be exposed to sexual exploitation.

- Meta misleads the public to believe that its platforms are safe for teens and that it has policies that it effectively enforces that do not allow bullying and harassment. Meta fails to disclose and warn that bullying and harassment on Instagram gets amplified by the platform and is more harmful than bullying offline because online bullying is persistent, amplified, and it lives a much longer period of time. Mr. Béjar has consulted with parents of kids who committed suicide after being bullied on Instagram. More bullying occurs on Instagram than Mr. Béjar has seen in any other place he has worked, and it is because of the way the product is designed. Meta failed to disclose and warn about the risk of bullying on Instagram that can lead to mental health issues and suicide. Meta also is aware that suicide and self-injury content is easily accessed by kids on Instagram, despite its community standards, and fails to disclose and warn of that risk. Instead, Meta publishes its community standards enforcement reports that falsely reassure the public that bullying and harassment violations are a fraction of one percent on its platforms.

- Being transparent and working with outside experts is important for designing and maintaining a platform that is safe for kids. Transparency reduces harm to kids because the more people understand the potential harms of the platform the more can be done to protect users. If Meta knows that kids are at risk of harm from use of its

- 8 -

apps, it should inform users and the public about those risks. It is essential for social media companies to inform users and the public of the harms its apps cause or contribute to cause so people can make informed decisions. Parents are not at fault for not knowing what harms their children will be exposed to on Instagram, as there is a lack of information available to them. Despite Meta's public claims, Meta is not an industry leader for transparency.

- Meta's public reporting was misleading as to the harm that was pervasive on its platforms. Meta only enforces and discloses violations of narrowly defined community standards rather than preventing and disclosing actual harmful experiences. The transparency center is misleading as to the likelihood that any given child will experience a particular harm. For instance, the transparency center reports the prevalence of some harms as only a fraction of one percent. But internal Meta surveys and research showed that users frequently experienced significant harm. For instance, the Negative Experiences Survey showed that Meta is aware there is a meaningful amount of harm happening on Instagram every 7 days to hundreds of millions of users, and that it was worse for teens. Internal research showed that people were experiencing these harms 100 to 400 times greater than what is reported in the community standards enforcement reports. Another internal survey, the Bad Experiences and Encounters Framework Survey, showed that over half of the respondents experienced at least one of 22 harms on the platform in the past 7 days. For many of these bad experiences, it is Meta's algorithm that is feeding or recommending these bad experiences. The survey data also showed that teens were experiencing these issues from strangers and interactions facilitated by the product design of Instagram. Meta failed to disclose these survey results and the harms experienced by users to the public. Meta's lack of transparency by failing to inform the public of its research contributed to harms to kids on Instagram. Meta's lack of

- 9 -

enforcement of its community standards is not effectively protecting people from the harm they are experiencing.

- The Bad Experiences and Encounters Framework Survey asked users about the emotions they experienced and how long those emotions lasted. This data is important to understand the intensity and severity of these harmful experiences. Meta management instructed its researchers to not analyze but delete the emotions data derived from its survey. This reflects a company that does not want to know the harm that people are experiencing on its platform, in particular teens. It was inappropriate and not ethical to not follow through on understanding these harms. It was improper for Meta not to analyze the severity data, and to instead delete it.

- Mr. Béjar drew on his 30 years of experience testing online safety and security features to perform testing about the features currently available on Instagram. In his prior employment for Meta, Mr. Béjar would often create test accounts to test how the product was performing and whether the features functioned appropriately. Mr. Béjar followed his normal testing protocol to analyze the current functionality of Instagram using teen test accounts. Mr. Béjar's testing demonstrated that many of the safety features touted by Instagram do not function as advertised and do not adequately protect teens. Mr. Béjar's testing further demonstrated that it is easy to identify accounts of users below Instagram's minimum age of 13, but it is very difficult to report those accounts to Instagram. Mr. Béjar's testing also demonstrates that the design of the platform causes inappropriate interactions between kids and adult strangers.

Materials considered by Mr. Béjar in forming his opinions have been previously produced and marked as 3047MDL-Bejar-001-00000001 through 3047MDL-BEJAR-001-00000002 and BEJAR00000001 through BEJAR00002702.

DATE: November 7, 2025

*/s/ Lexi J. Hazam*

LEXI J. HAZAM
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

*Attorneys for PI/SD Plaintiffs*

**KRIS MAYES**
Attorney General
State of Arizona

*/s/ Laura Dilweg*
Laura Dilweg (AZ No. 036066, CA No. 260663)
Chief Counsel - Consumer Protection and Advocacy Section
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Laura.Dilweg@azag.gov

*Attorneys for Plaintiff State of Arizona*

- 11 -

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov

- 12 -

3238998.2

1    Elizabeth.orem@coag.gov

2    *Attorneys for Plaintiff State of Colorado, ex rel. Philip*
*J. Weiser, Attorney General*

3

4    **WILLIAM TONG**
Attorney General

5    State of Connecticut

6    /s/ Rebecca Borné

7    Rebecca Borné
(CT Juris No. 446982), pro hac vice

8    Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*

9    Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*

10   Assistant Attorneys General

11   Connecticut Office of the Attorney General
165 Capitol Avenue

12   Hartford, Connecticut 06106
Phone: 860-808-5306

13   Fax: 860-808-5593

14   Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov

15   Krislyn.Launer@ct.gov

16   *Attorneys for Plaintiff State of Connecticut*

17   **KATHLEEN JENNINGS**
Attorney General

18   State of Delaware

19   /s/ Ryan Costa

20   Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection

21   Ryan Costa (DE Bar 5325), *pro hac vice*

22   Deputy Director of Consumer Protection
Delaware Department of Justice

23   820 N. French Street, 5th Floor
Wilmington, DE 19801

24   Phone: (302) 683-8811

25   Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

26   *Attorneys for Plaintiff State of Delaware*

27

28

- 13 -

**ANNE E. LOPEZ**
Attorney General
State of Hawai'i

*/s/ Douglas S. Chin*
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawai'i*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

By: */s/ James Simeri*
James Simeri (ID Bar No. 12332)
Deputy Attorney General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-4114
james.simeri@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

- 14 -

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Matthew Davies*
Susan Ellis, Chief, Consumer Protection Division (IL
Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud
Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud
Bureau (IL Bar No. 6306019)
Matthew Davies, Assistant Attorney General,
Consumer Fraud Bureau (IL Bar No. 6299608), *pro
hac vice*
Daniel B. Roth, Assistant Attorney General, Consumer
Fraud Bureau (IL Bar No. 6290613)
Meera Khan, Assistant Attorney General, Consumer
Fraud Bureau (IL Bar No. 6345895)
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-2218
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Matthew.Davies@ilag.gov
Daniel.Roth@ilag.gov
Meera.Khan@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

**THEODORE E. ROKITA**
Attorney General
State of Indiana
*/s/ Scott L. Barnhart*
Scott L. Barnhart (IN Atty No. 25474-82)
*pro hac vice*
Chief Counsel and Director of Consumer Protection
Corinne Gilchrist (IN Atty No. 27115-53)
*pro hac vice*
Section Chief, Consumer Litigation
Mark M. Snodgrass (IN Atty No. 29495-49)
*pro hac vice*
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor

- 15 -

Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**KRIS W. KOBACH**
Attorney General
State of Kansas

/s/ *Sarah Dietz*
Sarah Dietz, Assistant Attorney General
(KS Bar No. 27457), *pro hac vice*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300

- 16 -

Fax: (502) 564-2698
*Attorneys for Plaintiff the Commonwealth of Kentucky*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Complex Litigation Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6435
NachabeA@ag.louisiana.gov
*Attorney for State of Louisiana*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine (Maine Bar No. 5048),
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov
*Attorney for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No. 9012190379),
*pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No. 1112090003),
*pro hac vice*
Assistant Attorney General

- 17 -

Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388)
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Tel: (651) 724-9180
Caitlin.micko@ag.state.mn.us

*Attorney for State of Minnesota, by its Attorney General, Keith Ellison*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna M. Anderson*
Anna M. Anderson (NE #28080)
Assistant Attorney General
*pro hac vice*
Benjamin J. Swanson (NE #27675)
Assistant Attorney General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

- 18 -

1

2    **MATTHEW J. PLATKIN**
     Attorney General
3    State of New Jersey

4    By: /s/ *Kashif T. Chand*
     Kashif T. Chand (NJ Bar No. 016752008),
5    *Pro hac vice*
     Assistant Attorney General
6    Thomas Huynh (NJ Bar No. 200942017),
     *Pro hac vice*
7    Assistant Section Chief, Deputy Attorney
     General
8    Verna J. Pradaxay (NJ Bar No. 335822021),
9    *Pro hac vice*
     Mandy K. Wang (NJ Bar No. 373452021),
10   *Pro hac vice*
     Deputy Attorneys General
11   New Jersey Office of the Attorney General,
12   Division of Law
     124 Halsey Street, 5th Floor
13   Newark, NJ 07101
     Tel: (973) 648-2052
14   Kashif.Chand@law.njoag.gov
     Thomas.Huynh@law.njoag.gov
15   Verna.Pradaxay@law.njoag.gov
16   Mandy.Wang@law.njoag.gov

17   *Attorneys for Plaintiffs Matthew J. Platkin, Attorney*
     *General for the State of New Jersey, and Elizabeth*
18   *Harris, Acting Director of the New Jersey Division of*
19   *Consumer Affairs*

20   **LETITIA JAMES**
     Attorney General
21   State of New York

22   /s/ *Nathaniel Kosslyn*
     Nathaniel Kosslyn, Assistant Attorney General (NY
23   Bar No. 5773676), *pro hac vice*
     nathaniel.kosslyn@ag.ny.gov
24   Alex Finkelstein, Assistant Attorney General
25   (NY Bar No. 5609623), *pro hac vice*
     alex.finkelstein@ag.ny.gov
26   New York Office of the Attorney General
27   28 Liberty Street
     New York, NY 10005
28
                                        - 19 -

1    (212) 416-8000
     **JEFF JACKSON**
2    Attorney General
     State of North Carolina
3
     */s/ Charles White*
4    Charles G. White (N.C. State Bar No. 57735),
     *pro hac vice*
5    Assistant Attorney General
     Kunal Choksi
6    Senior Deputy Attorney General
     Josh Abram
7    Special Deputy Attorney General
     N.C. Department of Justice
8    Post Office Box 629
     Raleigh, North Carolina 27602
9    Telephone: (919) 716-6006
     Facsimile: (919) 716-6050
10   E-mail: cwhite@ncdoj.gov
     *Attorneys for Plaintiff State of North Carolina*
11
     **DAVE YOST**
12   OHIO ATTORNEY GENERAL

13   */s/ Kevin R. Walsh*
     Melissa G. Wright (0077843)
14   Section Chief, Consumer Protection Section
     Melissa.Wright@ohioago.gov
15   Melissa S. Smith (0083551)
     Asst. Section Chief, Consumer Protection Section
16   Melissa.S.Smith@ohioago.gov
     Michael S. Ziegler (0042206)
17   Principal Assistant Attorney General
     Michael.Ziegler@ohioago.gov
18   Kevin R. Walsh (0073999)
     Senior Assistant Attorney General
19   Kevin.Walsh@ohioago.gov
     30 East Broad Street, 14th Floor
20   Columbus, Ohio 43215
     614-466-1031
21
     **DAN RAYFIELD**
22   Attorney General
     State of Oregon
23
     */s/ John Dunbar*
24   John J. Dunbar (Oregon Bar No. 842100)

25   - 20 -

Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile:  (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel.*
*Dan Rayfield, Attorney General*

**DAVID W. SUNDAY, JR.**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Senior Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
717.787.3391
jburns@attorneygeneral.gov

*Attorneys for Plaintiff the Commonwealth of*
*Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**ALAN WILSON**
Attorney General
State of South Carolina

- 21 -

1

2          _/s/ Anna C. Smith_____
           C. Havird Jones, Jr.
3          Senior Assistant Deputy Attorney General
           Jared Q. Libet (S.C. Bar No. 74975),
4          *pro hac vice*
           Assistant Deputy Attorney General
5          Anna C. Smith (SC Bar No. 104749),
           *pro hac vice*
6          Assistant Attorney General
           Office of the South Carolina Attorney General
7          Post Office Box 11549
           Columbia, South Carolina 29211
8          jlibet@scag.gov
           annasmith@scag.gov
9          803-734-0536

10
           *Attorneys for Plaintiff the State of South Carolina,*
11         *ex rel. Alan M. Wilson, in His Official Capacity as*
           *Attorney General of the State of South Carolina*
12

13         **MARTY J. JACKLEY**
           Attorney General
14         State of South Dakota
           _/s/  Amanda Miiller_____
15         By: Amanda Miiller (SD Bar No. 4271)
           Deputy Attorney General
16         1302 East SD Hwy 1889, Suite 1
           Pierre, SD 57501-8501
17         Telephone: (605) 773-3215
           Amanda.Miiller@state.sd.us
18

19         *Attorneys for Plaintiff State of South Dakota*

20
           **JASON S. MIYARES**
21         Attorney General
           Commonwealth Of Virginia
22

23         _/s/ Joelle E. Gotwals_____
           Steven G. Popps
24         Chief Deputy Attorney General
           Thomas J. Sanford
25         Deputy Attorney General
           Richard S. Schweiker, Jr.
26         Senior Assistant Attorney General and Section Chief
           Joelle E. Gotwals (VSB No. 76779),
27         Senior Assistant Attorney General
28
                                    - 22 -

*pro hac vice*
Chandler P. Crenshaw (VSB No. 93452)
Assistant Attorney General
*pro hac vice*
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone:      (804) 786-8789
Facsimile:      (804) 786-0122
E-mail: jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth of Virginia ex rel. Jason S. Miyares, Attorney General*

**NICHOLAS W. BROWN**
Attorney General State of Washington

*/s/ Claire McNamara*
Claire McNamara (WA Bar No. 50097)
Gardner Reed (WA Bar No. 55630)
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 340-6783
claire.mcnamara@atg.wa.gov
gardner.reed@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

**JOHN B. MCCUSKEY**
Attorney General
State of West Virginia

*/s/ Laurel K. Lackey*

Laurel K. Lackey (WVSB No. 10267)
Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General
Office of the Attorney General
Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
Telephone: (304) 267-0239
Email: laurel.k.lackey@wvago.gov

- 23 -

abby.g.cunningham@wvago.gov
*Attorneys for Plaintiff State of West Virginia, ex rel.*
*John B. McCuskey, Attorney General*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Brittany Copper*
Brittany A. Copper
Assistant Attorney General
WI State Bar # 1142446
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1795
Brittany.copper@wisdoj.gov

*Attorneys for Plaintiff State of Wisconsin*

- 24 -

3238998.2

1

<u>**CERTIFICATE OF SERVICE**</u>

2      The undersigned hereby certifies that a copy of the foregoing was served via electronic mail

3   on November 7, 2025, to Counsel for Defendants Counsel for Defendants Meta Platforms, Inc. f/k/a

4   Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.;

5   Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; TikTok Inc.; TikTok LTD; TikTok

6   LLC.; ByteDance Inc.; ByteDance LTD; Snap Inc.; YouTube, LLC; Google LLC; and Alphabet Inc.:

7      MetaNoticeofService@cov.com

8      SnapNoticeofService@mto.com

9      TikTokSOP@kslaw.com

10      SERVICE-YOUTUBE INRESOCIALMEDIAM@LIST.WSGR.COM.

11

12  Dated: November 7, 2025

13                              By:  _/s/ Kelly K. McNabb_____
                                     Counsel for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 25 -

3238998.2