**Exhibit 87**

# SCHOOL DISTRICT/LOCAL GOVERNMENT ENTITY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF SCHOOL DISTRICT EXPERTS

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

**Amended Rebuttal Report of**

**Dr. Sharon A. Hoover, PhD**

**for Breathitt County Board of Education**

**August 7, 2025**

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Table of Contents**

I.    Executive Summary of Expert Opinions .................................................................. 1

II.   Response to Defense Expert Opinions.................................................................... 2

    A.    Response to Wildermuth.................................................................................. 2

        1.    Response to Wildermuth Opinion 1: My Reliance on Sources of Breathitt-Specific Data is Well-Founded and Consistent with the Standards Employed In My Field ................................................................ 2

        2.    Response to Wildermuth Opinion 2: The Existence of Mental Health Resources and Initiatives Does Not Preclude Strategic Planning to Enhance and Supplement Those Resources and Initiatives ........................ 8

        3.    Response to Wildermuth Opinion 3: Breathitt County's Prior Staffing and Resource Levels Do Not Dispel Need for Improvement ................... 11

        4.    Response to Wildermuth Opinion 4: Every School District Faces Unique Challenges, But These Do Not Reduce the Unique Challenges of Social Media ........................................................................ 14

        5.    Response to Wildermuth Opinion 5: Strategic Plan for Breathitt Makes Appropriate Recommendations that Would be Effective and Feasible ...................................................................................................... 16

    B.    Response to Hutt.............................................................................................. 17

        1.    Summary of Response to Hutt Opinions 1-3 ........................................... 17

        2.    Response to Breathitt-Specific Claims in Hutt's Report ......................... 18

        3.    Concerns Regarding Dr. Hutt's Analytical Qualifications and Methods.................................................................................................. 19

        4.    Clarifying My Use of Evidence ................................................................ 20

        5.    Conclusion regarding Dr. Hutt's Breathitt Opinions .............................. 20

    C.    Response to Aguilar......................................................................................... 21

        1.    General Response to Opinions 1–6............................................................ 21

        2.    Rebuttal to District-Specific Opinions in Exhibit A (Breathitt County)... 21

        3.    Conclusion Regarding Dr. Aguilar's Breathitt Opinions.......................... 23

    D.    Response to Lakdawalla .................................................................................. 23

        1.    Lakdawalla Opinion 1................................................................................ 23

        2.    Lakdawalla Opinion 2................................................................................ 26

        3.    Lakdawalla Opinion 3................................................................................ 28

        4.    Lakdawalla Opinion 4................................................................................ 30

        5.    Lakdawalla Opinion 5................................................................................ 31

E.      Response to Nelson............................................................................................. 34

      1.      Nelson Opinion 2 ................................................................................... 34

      2.      Nelson Opinion 3 ................................................................................... 36

      3.      Nelson Opinion 4 ................................................................................... 40

III.    Conclusion .................................................................................................................... 43

## I.     Executive Summary of Expert Opinions

1.     The opinions summarized below are offered in response to the district-specific rebuttal reports submitted by Dr. Diana Wildermuth, Dr. Ethan Hutt, Dr. Stephen Aguilar, Dr. Darius Lakdawalla, and Dr. Robert Nelson (the "Defense Reports"). These opinions are informed by my review of each expert's report, relevant district documentation, interviews with Breathitt County Schools personnel, and the broader scientific literature on youth mental health and school-based supports. They are grounded in my expertise as a national leader in school mental health and implementation science, with over 25 years of experience advising state and local education agencies on the development, expansion, and evaluation of comprehensive school mental health systems.

2.     **Opinion 1: Data limitations in Breathitt County should not be interpreted as absence of harm.**
While Breathitt's available quantitative data are limited, outdated, and poorly aligned with social media-related harms, I did review them, and they do not alter my conclusions. In fact, the absence of comprehensive data reinforces the need for a proactive, well-resourced plan to support student mental health, digital well-being, and proper school functioning. My standard practice, as used here and as is consistent with implementation science and public health principles, includes both data review and structured interviews with key informants, methods that are particularly important in under-resourced districts with limited tracking systems.

3.     **Opinion 2: Existing resources in Breathitt County are insufficient to address the scale and nature of social media-related harms**.
While the district has taken steps to promote digital literacy and student mental health, these efforts are not holistic and systemic and are not tailored to the specific, emerging harms associated with social media platforms. My recommendations are additive, not duplicative, and explicitly designed to complement and enhance existing efforts with targeted, sustainable, and developmentally responsive programming.

4.     **Opinion 3: Breathitt County's current staffing is inadequate to meet new, externally imposed mental health demands introduced by social media.**
My staffing recommendations reflect widely accepted professional ratios and are tailored to Breathitt's size, configuration, and service gaps. They are consistent with best practices in school mental health and represent a proportionate response to new harms caused by social media that were not anticipated by prior staffing models.

5.     **Opinion 4: My plan appropriately accounts for Breathitt's broader challenges and is designed to operate within the constraints of under-resourced systems.**
Factors such as poverty, limited community mental health infrastructure, and prior administrative instability make a coordinated, well-supported school-based response to harms caused by social media even more urgent. Rather than being a barrier to implementation, these conditions underscore the need for external resources and scalable systems planning.

6.     **Opinion 5: Breathitt educators report concrete, school-based harms caused by social media use, including attention disruption, peer conflict, and emotional dysregulation.**
These observations, gathered through structured interviews, are consistent with national

1

trends and peer-reviewed literature. They are essential sources of evidence in districts where data systems lag behind emerging challenges.

7. **Opinion 6: My recommendations follow public health and implementation science models and are aligned with established frameworks for addressing large-scale behavioral health harms.**
The 15-year timeline and multi-tiered approach are consistent with how school systems have addressed complex external challenges in the past, such as tobacco, childhood obesity, and trauma. Short-term or fragmented responses will be insufficient.

8. **Opinion 7: My report is focused on strategic planning, not economic causality or statistical modeling.**
While other Plaintiff experts were tasked with quantifying damages and opining on the mental health effects of social media on young people, my role was to synthesize existing evidence and design a systems-level plan responsive to educator-observed harms to school districts. My conclusions are grounded in implementation science and public health, not econometrics.

9. **Opinion 8: My proposed interventions are targeted, scalable, and consistent with national school mental health guidance.**
The recommendations include digital wellness curriculum, staff training, Tier 2/3 service expansion, and improved data infrastructure. These components are standard in evidence-based MTSS and school mental health frameworks, and reflect necessary steps to respond to a pervasive source of school-based disruption.

10. **Opinion 9: The plan I propose reflects Breathitt's unique context, while aligning with principles that apply across districts facing similar harms.**
Social media harms are widespread and consistent in form, regardless of geography. Therefore, while some leadership roles and plan components are common across districts, their implementation for Breathitt is tailored to Breathitt's size, staffing, needs, and community partnerships.

11. **Opinion 10: Claims that social media has not harmed Breathitt because the district has not budgeted for it are misguided.**
Schools do not always act on harms immediately, especially when those harms are poorly understood or difficult to quantify. The absence of a current formal response should not be mistaken for absence of impact, especially when educators are already reporting meaningful disruptions in learning, student well-being, and proper school functioning.

## II.    Response to Defense Expert Opinions

### A.    Response to Wildermuth

#### 1.    Response to Wildermuth Opinion 1: My Reliance on Sources of Breathitt-Specific Data is Well-Founded and Consistent with the Standards Employed in My Field

12. Dr. Wildermuth asserts that my strategic recommendations for Breathitt County Schools are unsupported because they purportedly do not rely on Breathitt-specific data and

instead reflect characterizations from anonymous informants.[1] This assertion mischaracterizes both my process and the appropriate use of data in applied school mental health consultation.

13.    Contrary to Dr. Wildermuth's assertion, I did review and consider the Breathitt-specific data described in her report, including information on Tier 2 referrals, disciplinary incidents, Terrace Metrics reporting, the 2014, 2018 and 2021-KIP student survey, and graduation rates. None of this information alters my opinions or recommendations. In fact, my interpretation of this data, as well as its limitations, reinforces the need for a proactive, multi-tiered strategy to address harms to the school district from social media, like the strategic plan I propose.

14.    My standard practice when working with school districts is to review available district- and school-level data, but also to recognize that such data often misrepresents or only scratches the surface of what is actually happening with respect to student mental health, service delivery gaps, and school climate disruption.[2] Especially in under-resourced and rural districts, like Breathitt, data systems often fail to capture the social media harms such as emotional dysregulation, compulsive social media use, peer contagion, and cyberbullying. Specifically, while Breathitt uses Infinite Campus to track a number of behavior issues, they do not track all social media misuse given how widespread the problem is and the lack of resources to do so.[3] This is reflected by the consequence matrixes for the schools, which indicated that cell phone violations – including the use of social media – are to be handled in the classroom with an initial warning and thus are not typically entered into Infinite Campus.[4] Further, at various points in time, staff were instructed to not enter every cell phone or social media infraction into Infinite Campus. Specifically:

-    "When student phones are confiscated for the 1st offense, they should not be entered into Infinite Campus."[5]

-    "Staff determined 2 warning would be issued before recorded on the tracking sheet."[6]

15.    The absence of documented harms in quantitative datasets should not be mistaken for an absence of harm. This is especially true in districts like Breathitt that:

---

[1] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 6-8, ¶¶ 32-37).

[2] Hoagwood, K., Atkins, M., & Ialongo, N. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. *Administration and Policy in Mental Health and Mental Health Services Research*, *40*(6), 451-455.

[3] 30(b)(6) Deposition of Hannah Watts, 33:11-22 (Mar. 12, 2025) ("I mean if we documented all of them, that's – we don't have the people to do that.").

[4] E.g., BREATHITT00085016 at 036.

[5] BREATHITT00030124.

[6] BREATHITT00084312.

3

- Lack tracking systems to log the reasons for mental health referrals (e.g., social media–related distress),

- Have a short supply of mental health professionals (Breathitt has no school social workers and only one psychologist for over 1,500 students),

- Do not track informal or unreported student support interactions, which are often the frontline responses to digital harms, and

- Do not disaggregate student behavioral or attendance data by student social media use.[7]

For instance, the fact that formal referrals for mental health services never exceeded 11.4% of students is not proof that other students did not need support.[8] Many students suffering from anxiety, depression, cyberbullying, sleep dysregulation, or obsessive platform use do not receive formal referrals, especially in schools with limited staff trained in identifying and documenting social media harms.[9] Furthermore, Breathitt does not track referrals to external providers or log whether internal referrals are social media-related. These data gaps, acknowledged in Dr. Wildermuth's own report,[10] highlight the very issues that my recommendations are intended to address.

16.    Moreover, although Dr. Wildermuth claims Breathitt is unaware of whether any of the referrals for mental health services relate to social media, the stakeholders involved in these referrals report that social media is one of the largest mental health issues they see:

- "I deal with social media daily from students. It's – It's probably one of the – one of the largest issues that they bring to my office."[11]

- "Students tell me that due to interactions that they have on social media platforms or things that have been said about them on social media platforms and the number of people that [it] has reached, that they suffer from depression. A lot of my students are medicated for depression and their parents will normally corroborate that story."[12]

---

[7] Murthy, V. (2023). Social Media and Youth Mental Health: The US Surgeon General's Advisory; 2023.

[8] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education (pp. 11-12, ¶ 46).

[9] Costello, E. J., He, J. P., Sampson, N. A., Kessler, R. C., & Merikangas, K. R. (2014). Services for adolescents with psychiatric disorders: 12-month data from the National Comorbidity Survey–Adolescent. *Psychiatric services*, *65*(3), 359-366.

[10] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 7, 12, ¶¶ 34, 47).

[11] 30(b)(1) Deposition of Kera Howard, 42:5-8 (Mar. 10, 2025).

[12] 30(b)(1) Deposition of Kera Howard, 33:9-16 (Mar. 10, 2025).

This testimony is consistent with the information key informants shared with me.[13]

17.    Dr. Wildermuth references graduation rates, behavior incident reports, and the 2021 KIP survey to wrongly suggest that social media has had no meaningful impact on Breathitt's students. These data points do not meaningfully undermine my conclusions for several reasons:

- Graduation rates are not the metric at issue. I am not asserting that social media has caused a drop in GPA or graduation rates; rather, I assert that social media platforms are disrupting student attention, classroom engagement, emotional regulation, and interpersonal functioning, none of which are captured in graduation statistics. In fact, students may graduate while still experiencing serious social-emotional distress and digital dysregulation.

- Disciplinary data and bullying reports are known to underrepresent social media harms. As even Dr. Wildermuth notes, "over 1%" of events were logged as cyberbullying, not because harm is absent, but because such incidents are rarely reported, difficult to detect, and inconsistently classified.[14] As discussed above, given the classroom management policies, instructions to not report initial and even second offenses, and testimony of officials charged with tracking behavior issues, the Infinite Campus and other data likely underreports social media harms.

- The 2021 KIP survey results are outdated, methodologically narrow, and do not disaggregate specific platforms or risk exposures. This survey grouped "social media" with online gaming, asked only whether it made students feel better or worse, and did not assess anxiety, suicidal ideation, or compulsive use fully. It is inappropriate to use this single, vague data point to negate the need for broader digital wellness interventions.

- Dr. Wildermuth also fails to address the 2021 KIP survey results concerning how often students reported checking social media like Instagram, Twitter, Snapchat, TikTok, Facebook or online gaming platforms. While the 2021 KIP survey has flaws that I have addressed above, the results of this optional survey showed that 19 – 35% of students reported checking their social media every couple of minutes, 13 – 27% of students reported checking their social media every 10 – 15 minutes, and 17 – 32% of students reported checking their social media once or twice an hour.[15]

18.    Dr. Wildermuth claims that Breathitt has taken no action to address the student use of cellphones and social media following the 2021 KIP survey results. This is factually inaccurate. Both Breathitt High School and Sebastian Elementary School instituted changes to their cell phone and electronic device policies in an effort to reduce the impact

---

[13] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025; Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (p. 10, ¶¶ 48-52).

[14] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 10-11, ¶¶ 44-45).

[15] BREATHITT00151339.

of social media use during school hours.[16] While cell phone bans are imperfect tools for addressing harms caused by social media and cannot address all such harms, these efforts show that Dr. Wildermuth has mischaracterized the efforts by Breathitt to address these harms.

19.    Dr. Wildermuth critiques my reliance on informant interviews. However, key informant interviews are a standard, valid source of ground-level insight.[17] My opinions are not based *only* on interviews, but these interviews are a critical, intentionally weighted component of my standard school mental health evaluation process. Especially in the context of limited or lagging district data systems, key informants provide essential insight into emerging problems that may not yet be formally tracked. This approach is used consistently in every district for which I have been asked to develop a strategic plan for comprehensive school mental health improvement. Across dozens of school districts nationwide, I speak directly with district and school leaders, educators, and student support professionals to understand local strengths and identify service and infrastructure gaps in order to inform and support quality improvement. Breathitt informants' insights provided site-specific accounts of:

- Escalating challenges in student self-regulation due to compulsive platform engagement,

- Behavioral volatility fueled by digital rumors or conflicts,

- Staff overwhelm due to student social media use, and

- Student disengagement tied to sleep loss and social media distraction.

These insights, which were consistent across informants and converge with national data on social media harms, provided part of the foundation for my district-specific plan. In implementation science, such practice-based evidence is a necessary complement to traditional data sources.[18]

20.    Consistent with the standard practices in my field, I do not attribute specific quotations to named individuals. This is intentional and standard practice in school consultation and qualitative research. Anonymity helps ensure candor and protects respondents from potential repercussions, especially when they are discussing district challenges. That said, I did provide the list of informants for each district, including Breathitt, upon defense counsel's request, and the names were therefore available for Defendants' experts to review. Thus, it is unclear why Dr. Wildermuth refers to the interviewees as "unnamed"

---

[16] E.g., 30(b)(1) Deposition of Jeremy Hall, 74:12-18 (Apr. 23, 2025); 30(b)(6) Deposition of Phillip Watts, 62:20-63:1 (Apr. 22, 2025); Breathitt High School Handbooks, Sebastian Elementary Handbooks.

[17] Forman, S. G., Olin, S. S., Hoagwood, K. E., Crowe, M., & Saka, N. (2009). Evidence-based interventions in schools: Developers' views of implementation barriers and facilitators. *School Mental Health*, *1*(1), 26-36.

[18] Hoagwood, K. E., Atkins, M. S., & Ialongo, N. S. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. Administration and Policy in Mental Health and Mental Health Services Research, 40(6), 451-455.

in a misguided attempt to discredit my approach. The Breathitt interviewees included administrators and student support professionals, individuals with direct knowledge of social media impacts on Breathitt students' mental health and learning and district support service gaps. Dr. Wildermuth's repeated references to "unnamed" sources imply methodological opacity, when in fact my approach, which I use consistently as my standard practice when working with school districts across the country, reflects longstanding norms for psychological consultation in school systems, including practices used in federally-funded needs assessments, including SAMHSA-funded district school mental health evaluations.

21. A notable inconsistency in Dr. Wildermuth's argument is that she simultaneously criticizes me for not relying on Breathitt-specific data,[19] while acknowledging that the district does not collect meaningful data on social media use or its effects.[20] It is logically inconsistent to demand quantitative data-driven planning and then dismiss a plan for recognizing and responding to a clear lack of data infrastructure in the school district.

22. Breathitt faces well-documented challenges in staffing and technology. Like many rural and underfunded districts, it lacks the data systems and tracking protocols to systematically assess student use and impact of social media and the related district and school responses.[21] My plan addresses these deficits directly, by recommending not only service expansion, but data system strengthening, staff professional development, and implementation science principles for continuous quality improvement.

23. In sum, my analysis does not ignore Breathitt data. It reflects an informed recognition that the quantitative data Breathitt collects are incomplete and poorly aligned with the harms at issue in this case. Rather than relying solely on these imperfect data systems, I followed a best-practice, mixed-methods approach: I reviewed available data, incorporated expert knowledge from key district staff, and developed a tailored, evidence-informed strategy based on patterns I've seen in dozens of districts across the country. To suggest that my recommendations are invalid because they do not hinge on flawed or absent data is to conflate data availability with data sufficiency. While the district is collecting data to the best of its ability given practical constraints including limited resources, in reality, it is the very limitations of Breathitt's data infrastructure that reinforce the urgency of the supports I have proposed.

---

[19] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 6-7, ¶¶ 32-33).

[20] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 7, ¶ 34).

[21] E.g., BREATHITT00019362.

### 2. Response to Wildermuth Opinion 2: The Existence of Mental Health Resources and Initiatives Does Not Preclude Strategic Planning to Enhance and Supplement Those Resources and Initiatives

24. Dr. Wildermuth wrongly asserts that my proposed strategic plan for Breathitt County Schools fails to account for the district's existing Tier 1, Tier 2, and Tier 3 supports, and that many of my recommendations are duplicative or unnecessary.[22]

25. I carefully reviewed the existing services and supports in Breathitt County, including those described in Dr. Wildermuth's report. These included digital literacy efforts, assemblies and presentations, counseling roles, digital monitoring software (e.g., Hapara), and instructional uses of YouTube. None of these existing services, nor the anti-cyberbullying initiatives referenced in Dr. Wildermuth's report[23] negate or reduce the need for the interventions I have proposed. Rather, they highlight a baseline from which Breathitt must expand to meet the new and intensifying mental health and learning disruptions introduced by social media platforms.

26. Dr. Wildermuth claims that I ignore that Breathitt uses Hapara to attempt to monitor in classroom usage and filters to block social media sites.[24] However, Dr. Wildermuth ignores that multiple stakeholders have relayed, and school district documents support, that students are able to circumvent these restrictions by using VPNs or their cell phones.[25] This reality has not been referenced by Dr. Wildermuth and belies her criticism of my report.

27. The assertion that my recommendations ignore or duplicate existing services misunderstands both their intended role and design. My recommendations are additive, not duplicative. They are targeted toward addressing harms that existing efforts were never designed to address, including those stemming from compulsive platform use. Many of the initiatives cited in Dr. Wildermuth's report (e.g., Common Sense Media digital citizenship modules, the Digital Driver's License exam, periodic assemblies by outside speakers, and bullying prevention programs) were developed prior to or independent of the unique dynamics of social media platforms. These legacy programs:

    - Do not target the compulsive, neurologically reinforcing design of social media;

    - Do not train students to critically evaluate the intentional engineering of addictive features;

---

[22] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 12-13, ¶¶ 48-49).

[23] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 16-17, ¶ 56).

[24] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 13, ¶ 50).

[25] BREATHITT00404863; 30(b)(6) Deposition of Kera Howard, 127:13-16, -128:11-130:9 (Mar. 10, 2025).

- Do not engage students in repeated, developmentally responsive discussions about online identity, self-worth, and social comparison;

- Do not equip staff with the skills to detect or respond to platform-driven mental health issues (e.g., disordered eating trends, viral self-harm challenges, anxiety and other mental health issues).

28.  The current programs may provide a foundation, but they lack the depth, continuity, and social media-specific focus needed to meet the challenges school districts are facing due to social media platforms.[26] Breathitt has made good-faith efforts to respond to student mental health and engagement concerns using its available resources, and district staff are clearly committed to student well-being and proper school functioning. However, the scale and intensity of the harms introduced by social media are beyond what existing systems, many of which were designed for different challenges, can address in a sustained or comprehensive way.

29.  This is why my recommendations include enhanced digital literacy, expanded life skills programming with social media-specific components, staff training on platform impacts, and districtwide leadership roles in digital wellness.

30.  One-time events and generic programs are not a substitute for a strategic, sustained response.[27] Breathitt's past efforts to address social media, such as inviting Detective Mike Lemon to speak or implementing general anti-bullying programs, are commendable but episodic and insufficient. Many of these programs were:

- One-time events, not embedded curricula;

- Delivered infrequently or with long gaps between offerings;

- Broadly focused on general safety or behavior, not the cognitive-emotional toll of persistent social media use.

In contrast, my proposed strategic plan outlines sustained, multi-year investments across Tiers 1–3. These are not reactionary workshops but systems-level changes in leadership infrastructure, educator training, data use, curriculum integration, and service array.

31.  As stated in my general rebuttal and reaffirmed here: this is not a plan for business-as-usual student support.[28] Rather, it is a structured, multi-tiered public health response to a new and externally imposed burden on school environments: youth-facing social media platforms that undermine attention, increase distress, and disrupt classrooms. The interventions I propose are aligned with this distinct harm profile. Even the most robust existing programs in Breathitt (e.g., Kentucky's Digital Driver's License curriculum, Common Sense Media modules) were not developed to counteract the design features of

---

[26] Nesi, J., Telzer, E. H., & Prinstein, M. J. (2020). Adolescent development in the digital media context. *Psychological Inquiry*, *31*(3), 229-234.

[27] Durlak, J. A., Weissberg, R. P., Dymnicki, A. B., Taylor, R. D., & Schellinger, K. B. (2011). The impact of enhancing students' social and emotional learning: A meta-analysis of school-based universal interventions. *Child development*, *82*(1), 405-432.

[28] E.g., Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 3-10, ¶¶ 13-25).

Defendants' social media platforms that negatively impact student mental health and disrupt learning.

32.     Dr. Wildermuth suggests that because Breathitt is a small and historically under-resourced district, it cannot feasibly implement the interventions I propose.[29] But this is precisely why external resources from responsible parties (in this case, social media platforms) are essential. My recommendations explicitly account for resource limitations and propose a strategic infusion of staff and systems-building (including improving data infrastructure) that is financed by external support, not by local school budgets.

33.     Contrary to Dr. Wildermuth's claim, nothing in my report suggests dismantling or disregarding current programs. Instead, I propose building on them, refining them, and explicitly tailoring them to address the documented and well-researched harms associated with student use of social media. The goal is not to duplicate what exists, but to close gaps and target emergent risks that previous efforts were not designed to address. For example:

-   The Common Sense Media and Digital Citizenship curriculum used in Breathitt is valuable, but insufficient without embedded staff capacity to implement it with fidelity and adapt it to students' lived digital experiences.

-   Existing SEL programming should be preserved, but must be expanded to include modules that address emotional regulation related to social media, platform-fueled identity pressures, and online relational aggression.

-   Assemblies and external speakers should be supplemented by classroom-based, developmentally appropriate conversations and structured follow-ups.

34.     The framing of social media harms as a "trend" already addressed by existing services minimizes the scale and severity of what educators have described to me in Breathitt and across the country. This is not a challenge that can be met with piecemeal adjustments. It is a challenge that requires leadership roles dedicated to digital well-being; staff training that recognizes and responds to the harms of social media; family engagement efforts that provide tools and clarity around managing home social media use; and, digital policy coordination that empowers staff and protects students. My plan provides this, and does so in a way that aligns with the foundational supports already in place in Breathitt.

35.     In sum, I did consider the existing services and supports in Breathitt, including those described by Dr. Wildermuth. These services provide important groundwork, but do not and were never designed to address the rapidly evolving harms introduced by social media platforms. My recommendations are not duplicative, they are necessary and proportionate responses to a growing external threat to student mental health, learning and the school environment. This strategic plan is additive and tailored and reflects public health frameworks that justify additive responses to new risk environments.[30] It leverages

---

[29] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 19, ¶ 65).

[30] Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1), 172.

the district's strengths while addressing its vulnerabilities, particularly its current gaps in social media harm prevention and social media–related mental health response. To suggest that Breathitt can adequately respond to these challenges without expanded, social media-specific investments is to underestimate both the nature of the threat and to speculate Breathitt cannot implement my plan with fidelity (as Dr. Wildermuth does) underestimates the resilience of the district to meet these challenges, if given the appropriate tools and support.

### 3. Response to Wildermuth Opinion 3: Breathitt County's Prior Staffing and Resource Levels Do Not Dispel Need for Improvement

36. Dr. Wildermuth wrongly asserts that my staffing recommendations for Breathitt are excessive, insufficiently individualized, and infeasible due to past district challenges and national shortages in school-based mental health professionals.[31]

37. Dr. Wildermuth incorrectly states that I apply "the same staffing recommendations to every school district."[32] While the types of roles I recommend, such as school- and district-level leadership positions in key domains like digital literacy, family engagement, and student mental health, are consistent across districts, the numbers of staff and distribution of professional development hours are individualized and specifically tailored to Breathitt based on district and school enrollment size and school configuration.

38. Breathitt's recommended plan specifically reflects:

   - A student population of ~1,579 across five schools;

   - Existing gaps in Tier 1–3 supports, particularly in internal capacity for digital wellness and mental health response;

   - No current school-employed social workers and only one school psychologist;

   - An explicit recognition of community partner roles, including Kentucky River Community Care and other contracted mental health providers.

39. As detailed in my general report, the roles I recommend represent critical functions, not luxuries. Their inclusion across districts stems from the consistent nature of harms created by social media platforms, specifically, the way those platforms are designed to capture attention and foster compulsive checking and engagement behaviors among adolescents. These behavioral effects are functionally similar across student populations and thus warrant coordinated leadership in every district, regardless of size. My plan both understands this harm across districts and takes into account the specific needs of Breathitt.

---

[31] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 18-23, ¶¶ 62-74).

[32] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 19, ¶ 64).

40.    Dr. Wildermuth cites national and state-level shortages of student support professionals, including in Kentucky,[33] as a reason to doubt the feasibility of my staffing recommendations. Critically, Dr. Wildermuth has not actually conducted any analysis to determine whether there are actual staffing shortages in Breathitt. While I agree that shortages present challenges, they do not negate the fact that my recommendations can and should be implemented. Rather, they underscore the importance of strategic investment in workforce recruitment and development and role specialization, as well as training.

41.    Workforce shortages, both nationally and in Kentucky, are not insurmountable. This often reflects funding constraints rather than a lack of qualified professionals. A growing body of evidence supports effective strategies to recruit and retain school-based mental health personnel, including competitive compensation, professional development opportunities, supportive supervision, differentiated roles, and sustainable caseloads. While specific hiring, recruitment, and retention decisions may be tailored to district context, the recommended staffing levels represent the full capacity needed to address the harms of social media. Moreover, as discussed in my general rebuttal report, contrary to claims that the proposed staffing levels are unattainable, current data reflect a steady flow of qualified school mental health professionals entering the field.[34]

42.    Just as schools did not forgo hiring nurses during the rise of childhood asthma or health aides during the COVID-19 pandemic, new harms, like the persistent impacts of social media use require new staffing solutions. Schools cannot ignore new challenges simply because staffing them will require investment and prioritization.

43.    Importantly, the staffing recommendations in my report are *additive*.[35] They are not intended to replace existing personnel but rather to build upon them in a strategic and targeted manner. The national professional ratios were not designed with the harms of social media platform-driven digital engagement in mind. My staffing recommendations are both responsive to Breathitt's unique needs (e.g., enrollment size, existing service array, community partnerships), and rooted in established professional guidance, as provided by leading organizations in school mental health and student services.

44.    Dr. Wildermuth refers to "mismanagement" of staffing and funding[36] in Breathitt's past and uses this to imply that the district is not well positioned to implement my recommendations. I offer no opinion on these historical corruption allegations. I do note that Arch Turner has not been the superintendent of Breathitt since 2012. Moreover, I strongly caution against conflating legacy administrative issues with the current need for strategic investment in student services. Most districts, including Breathitt, operate under

---

[33] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 21, ¶ 70).

[34] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 13-14, ¶¶ 47-50).

[35] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (p. 8, ¶38).

[36] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 19-22, ¶¶ 65, 72).

constrained fiscal conditions. When resources are limited, leaders are often forced to make difficult trade-offs, for example, whether to hire an English teacher or a school psychologist. Such choices do not reflect mismanagement; they reflect the absence of sufficient public funding to fully meet students' academic and mental health needs.

45. The purpose of my report is not to assess how Breathitt got to its current staffing levels, but to offer evidence-informed recommendations for the staffing, training, and system design needed to meet the demands of a new, externally driven source of harm: the design of social media platforms that fosters compulsive engagement and distress among adolescents.

46. Dr. Wildermuth critiques the scale of my proposed staffing expansion (46 new staff) and suggests that I failed to consider feasibility or implementation pathways.[37] My role is to identify best practices based on available evidence. My recommendations reflect the level of capacity necessary to adequately respond to social media–caused impacts on proper school functioning, student well-being, and learning.

47. Dr. Wildermuth notes that Breathitt counselors spend time on non-counseling tasks like lunch duty.[38] This is a common symptom of systemic understaffing and a widespread issue nationally.[39] Inadequate staffing leads to role dilution, preventing highly trained professionals from delivering the full range of supports they are qualified to provide. The appropriate response is not to accept the status quo, but to expand staffing in order to:

- Free existing staff to perform their primary functions;

- Add complementary roles (e.g., peer specialists, family coordinators) to distribute workload;

- Improve fidelity and consistency in service delivery.

This is particularly important when addressing a novel, complex set of challenges like those created by persistent, compulsive social media use, which affects student mental health and classroom environments in ways that stretch existing roles beyond capacity.

48. My recommendations for additional staffing in Breathitt are evidence-based and proportionate to the scope of harm introduced by social media platforms to the district. They are not generic or duplicative; they are tailored to the district's size, structure, and documented gaps in Tier 1-3 supports. The claim that these recommendations are unreasonable due to shortages or past mismanagement is misguided. In fact, the very limitations cited (e.g., constrained capacity, underfunding, diverted roles) reinforce the urgency of targeted investment to support students and schools in the face of a new and intensifying challenge.

---

[37] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 18-19, ¶¶ 62-64).

[38] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 21, ¶ 71).

[39] Reback, R. (2010). Schools' mental health services and young children's emotions, behavior, and learning. *Journal of Policy Analysis and Management*, *29*(4), 698-725.

      4.      **Response to Wildermuth Opinion 4: Every School District Faces Unique Challenges, But These Do Not Reduce the Unique Challenges of Social Media**

49.      Dr. Wildermuth asserts that my recommendations fail to account for "the complex, multifaceted issues" facing Breathitt County Schools, including persistent poverty, limited community resources, student disengagement, administrative instability, and historical district mismanagement.[40] I disagree. I understood and considered these conditions in developing the Breathitt-specific strategic plan.

50.      First, it is important to clarify that every school district I have evaluated for this litigation operates in a unique and complex ecosystem. Breathitt's challenges with poverty, staffing shortages, and environmental stressors are deeply concerning, but not exceptional. They are shared by many rural and under-resourced school districts across the country, including those with high mental health burdens and limited capacity to respond to emergent student needs.

51.      Far from ignoring these contextual factors, my approach to evaluation and strategic planning assumes the presence of overlapping structural challenges, and is specifically designed to address the ways that new harms, stemming from social media platforms, interact with, and exacerbate, existing vulnerabilities in the school environment.

52.      I acknowledge and considered that student mental health is influenced by multiple and interrelated factors, including family adversity, trauma, poverty, and pandemic-related disruptions in crafting my strategic plan. However, the rise and widespread use of social media platforms has introduced a new and significant externally imposed source of harm that is distinct in scope, mechanism, and impact. This harm is:

- Pervasive, affecting nearly every student daily;

- New, significant and distinct and compounding, as it amplifies other risks and stressors;

- Unique, in that it stems from platform design choices that promote compulsive engagement and social comparison, not simply from student behavior or school conditions.

Accordingly, this new category of harm requires a proportionate and tailored response. My strategic plan is designed to complement existing efforts to address other mental health drivers while filling a critical gap in district capacity to respond to harms linked to social media platform use.

53.      Dr. Wildermuth argues that poverty and low community capacity limit the district's ability to implement new interventions.[41] While structural issues exist, they are not a reason to delay or reject new supports. Based on my understanding and consideration, I

---

[40] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 23-25, ¶¶ 75-78).

[41] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (p. 23, ¶ 75).

developed my plan based in part on the fact that students living in poverty are at heightened risk for::

- Mental health challenges such as anxiety, depression, and trauma exposure;

- Limited access to clinical care outside of school;

- High digital device usage;

- Exposure to peer dynamics and engagement patterns on social media platforms that intensify distress.

Given these risks, the harmful impact of social media on schools like Breathitt is acute and underscores the need for the robust, school-based mental health interventions I propose. The strategic plan I propose is designed to strengthen internal capacity where community infrastructure may be limited, and to bring evidence-based systems of prevention and early intervention for social media harms into Breathitt schools, where their students spend the majority of their time.

54.     Dr. Wildermuth notes that student disengagement, absenteeism, and behavioral dysregulation are key issues in Breathitt, yet claims that my plan fails to address them.[42] In fact, these are among the central problems my plan seeks to mitigate. Social media platforms, by design, encourage compulsive checking, emotional dysregulation, and disrupted sleep patterns, all of which interfere with students' ability to engage in sustained learning and maintain peer and adult relationships. These effects are not just theoretical; they have been documented in national data and described by Breathitt staff during interviews as contributing to increased peer conflict and emotional volatility; classroom distractions and behavioral incidents stemming from social media use; and difficulty sustaining attention, particularly in digital-rich environments.

55.     My plan responds to these issues through:

- Enhanced Tier 1 life skills programming that addresses self-regulation related to student use of social media;

- Staff training in identifying and addressing platform-related student distress;

- School-wide approaches to restoring disrupted climates and strengthening pro-social behavior.

Far from overlooking student engagement, my recommendations reflect an understanding that student mental health and engagement are now deeply intertwined with student use of social media.

56.     Dr. Wildermuth references prior corruption scandals dating back to 2012 and leadership instability in Breathitt's history.[43] I offer no opinion on these specific incidents. However, I note that such history is not uncommon in districts serving historically

---

[42] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 23-24, ¶ 76).

[43] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education, (pp. 24-25, ¶¶ 77-78).

marginalized or under-resourced communities, and should not be used to dismiss the feasibility, or necessity, of forward-looking planning. The strategic plan I propose includes:

- Clear leadership roles for digital wellness and mental health;

- Professional development to build staff capacity and restore systems of support;

- Data tracking systems that promote transparency and accountability.

These are precisely the types of structures that can mitigate the long-term effects of past instability. The existence of prior governance challenges should not serve as an argument against strategic planning; it should underscore the need for structured, evidence-based implementation supported by external resources and technical assistance in Breathitt.

57. Dr. Wildermuth's argument seems to rest on a false dichotomy: that districts can either address social media harms or address broader structural and contextual challenges, but not both. In reality, in order to effectively address the harm to the school district caused by social media platforms, integrated strategies are required to address both emergent and longstanding issues simultaneously.

58. The plan I offer does not attempt to solve every systemic barrier facing Breathitt. It does, however, offer a targeted response to a clearly defined and newly imposed category of harm, grounded in public health frameworks and informed by best practices in school mental health. This type of layered, domain-specific planning is standard in addressing complex youth health and education challenges, including tobacco use, obesity, trauma exposure, and now, social media-driven mental health risks.[44]

59. My strategic recommendations for Breathitt do not ignore the district's overarching challenges. Students in Breathitt face multiple, overlapping risk factors that increase their vulnerability to social media–related harm, and decrease the likelihood that those harms will be identified and addressed without a coordinated, districtwide response. Poverty, disengagement, and resource scarcity are not reasons to reject new supports. The plan I offer will help Breathitt Schools properly respond to the harms created by social media platforms and evolve, using the best available science and a deep respect for the real-world constraints in which educators operate.

### 5. Response to Wildermuth Opinion 5: Strategic Plan for Breathitt Makes Appropriate Recommendations that Would be Effective and Feasible

60. As discussed above and in my May 16 and May 18 reports,[45] my strategic plan for Breathitt is properly grounded in scientific literature on youth mental health and school-based supports and is based on my expertise as a national leader in school mental health and implementation science, with over 25 years of experience advising state and local

---

[44] Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1), 172.

[45] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025; Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025).

education agencies on the development, expansion, and evaluation of comprehensive school mental health systems. My strategic plan outlined in my initial report, appropriately proposes a 15-year, multi-tiered public health framework that is necessary to address the substantial harms caused by students' use of social media platforms. For all of the reasons discussed above, none of Dr. Wildermuth's criticisms undermine the foundation and basis for my plan and her opinion that the strategic plan for Breathitt is unnecessary, unlikely to be effective, and/or, in some cases, infeasible is unsupported.

## B. Response to Hutt

61. Dr. Hutt's report for Breathitt County is substantively identical to his general report and those submitted for other bellwether districts, except for a small number of paragraphs[46] where he references data specific to Breathitt. These district-specific claims do not meaningfully engage with the context or analysis in my Breathitt strategic plan and are based on cherry-picked observations that lack methodological rigor. Below, I summarize my general response to Dr. Hutt's core opinions and respond directly to the additional points he raises in the Breathitt context.

### 1. Summary of Response to Hutt Opinions 1-3

62. As described in my July 30, 2025 general rebuttal report,[47] I offered the following responses to Dr. Hutt's general claims:

63. On the charge of "educationalization":[48] My strategic plan is a public health response to a new, external harm, not an attempt to shift societal burdens onto schools. Schools have long adapted to emerging threats to student well-being and proper school functioning. The harms from social media platform use, including attention dysregulation, peer conflict, sleep disruption, and emotional distress, are discrete, observable challenges occurring during the school day and undermining the learning environment and school functioning. School systems are not being asked to "solve" social media; they are being equipped to respond to its impact on their school districts.

64. On contextualizing achievement and behavioral trends:[49] I understand and considered that student mental health and academic engagement are shaped by multiple factors, including poverty, trauma, family functioning, and COVID-19. I considered and understood these issues and my strategic plan accounts for them. None of these challenges negate the significant role of social media, which constitutes a distinct and increasingly dominant challenge to the school environment and school functioning. My analysis reflects this broader context, as does the layered, multi-tiered approach I propose.

---

[46] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Breathitt County Board of Education, (pp. 75-96, ¶¶ 139-140, 146, 163-164).

[47] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 34-41, ¶¶ 127-155).

[48] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 32-33, ¶ 70).

[49] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 80-85, ¶¶ 145-52).

65.  On interpreting test scores and academic data:[50] Unlike Dr. Hutt, I do not rely on academic achievement scores as the primary indicator of social media harm. As explained in my general and district-specific reports, harms manifest in ways that are often under-documented in test scores, such as student dysregulation, classroom disruption, strained peer and adult relationships, and increased need for counseling and behavioral support.

### 2.    Response to Breathitt-Specific Claims in Hutt's Report

66.  While most of Dr. Hutt's analysis is district-agnostic, he raises several points specific to Breathitt.[51] Each is addressed below:

67.  Dr. Hutt posits that Kentucky's adoption of Common Core (2010) and the K-Prep assessment (2012) may explain changes in student test scores, arguing that these systemic shifts coincided with the rise of social media and therefore offer a plausible alternative explanation.[52] This claim:

-  Is speculative and not accompanied by any analysis or data showing a measurable effect of the K-Prep adoption on Breathitt's achievement scores;

-  Fails to engage with the more salient and immediate issues raised in my report, such as student emotional dysregulation, staff time diverted from instruction, and mounting demands on behavioral supports, all of which were reported by Breathitt educators and are documented in my district-specific plan for Breathitt.[53]

68.  Dr. Hutt notes that Breathitt's graduation rate remained relatively stable during the rise of social media use and argues this stability undermines claims of social media harm.[54] However:

-  Graduation rates are a blunt instrument and poor proxies for student mental health or school climate;

-  Schools often work extremely hard to help students graduate, even when they are struggling socially and emotionally;

-  My report never claims that social media use led to a decline in graduation rates. Rather, I identify specific harms (e.g., anxiety, attention problems, peer conflict and other mental health issues) that undermine the learning process, even if students eventually graduate.

---

[50] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 73-84, ¶¶ 136-151).

[51] 2025.07.11 Expert Report of Hutt for Breathitt County Schools, Ph.D., (pp. 81-94, ¶¶ 146-164).

[52] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Breathitt County Board of Education, (pp. 76-80, ¶¶ 139-143).

[53] E.g., 30(b)(1) Deposition of Kera Howard, 33:9-16 (Mar. 10, 2025).

[54] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Breathitt County Board of Education, (pp. 81-82, ¶¶ 146-147).

69.     Dr. Hutt highlights that Breathitt's chronic absenteeism rose from 15% in 2018 to 28% in 2022[55] He argues this change spans grade levels and therefore cannot be tied to social media, framing absenteeism as part of a broader cultural shift.[56] However:

-   This claim is unsupported by any detailed breakdown by age or grade;

-   The data source (Return to Learn) admits it merges different data sources, which may not be methodologically comparable;[57]

-   The figure cited, an overall district absenteeism rate, cannot support Dr. Hutt's suggestion that the rise is too broad to implicate social media, since he does not analyze differences by grade, digital access, or device use;

-   Dr. Hutt offers no evidence to support the alternative cultural shift explanation, and provides no mechanism, data, or empirical citations to support his assertion.

### 3.     Concerns Regarding Dr. Hutt's Analytical Qualifications and Methods

70.     Dr. Hutt's rebuttal does not reflect a strong grounding in the social science methods necessary for causal inference or implementation-focused evaluation.[58] His analysis lacks the methodological rigor typically required in public health and implementation science, which limits the applicability of his critique to the type of strategic, systems-level planning at the core of my report.[59] Specifically:

-   His "analysis" consists of plotting raw data on a line chart and visually interpreting trends.

-   He conducts no statistical testing or control for confounding variables, yet draws sweeping conclusions.

-   His use of 8th grade standardized test scores is unsupported by any empirical rationale. He suggests that students "may" be using social media by then, but offers no age-based data to substantiate this choice. It appears the 8th grade was selected simply because it was the latest grade available.

-   Dr. Hutt references the Return to Learn absenteeism estimates despite the creators' own warnings that (1) the data are inconsistent across states, and (2) the rates are generated by combining distinct and methodologically incompatible data sources.[60] Further, the data is reported only at the district level. As such, these estimates are

---

[55] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Breathitt County Board of Education, (pp. 91-93, ¶¶ 162-163).

[56] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Breathitt County Board of Education, (p. 94, ¶ 164).

[57] *Chronic Absenteeism: 2017-2024*, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods").

[58] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 3-4, ¶¶ 13-15).

[59] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 2-3, ¶¶ 6-12).

[60] *Chronic Absenteeism: 2017-2024*, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods").

inadequate to support the fine-grained claims he makes about Breathitt's school-specific outcomes or subgroup-level effects.

71.     Ultimately, none of Dr. Hutt's analysis changes my opinions which are grounded in:

- Over 25 years of experience in school mental health, prevention science, policy evaluation and implementation frameworks;

- Review of publicly available and district specific data;

- Application of public health and multi-tiered systems of support (MTSS) frameworks tailored to the unique demands posed by social media-related harm;

- Triangulation of quantitative trends with qualitative data from Breathitt staff, peer-reviewed literature, and evidence from national surveys.

- Together, these elements provide a far more methodologically sound and contextually grounded basis for the recommendations I offer. Dr. Hutt's reliance on partial data and unsupported inferences does not meet the evidentiary standard required for district-level causal assessment or strategic planning.

### 4.     Clarifying My Use of Evidence

72.     Dr. Hutt mischaracterizes my analytic approach. My conclusions are not based on trends in test scores or academic performance metrics. Those are his chosen metrics, the use of which is not justified as described above. Instead, they are grounded in:

- Consistent educator reports of student dysregulation, inattention, and peer conflict across Breathitt schools;

- Observable behavioral shifts linked to increased student engagement with digital devices and social media platforms;

- Documented gaps in mental health staffing, disruptions to school function and climate, and the diversion of educator time and attention toward managing technology-related challenges, none of which are captured in standardized testing data.

The harms I identify are immediate and impactful in their own right. Whether or not certain academic achievement trends reflect these harms, they are clearly documented by staff and supported by national research.

### 5.     Conclusion regarding Dr. Hutt's Breathitt Opinions

73.     Dr. Dr. Hutt's Breathitt report is largely derivative of his general report and demonstrates limited engagement with Breathitt's specific context, student needs, or reported school-based challenges. His district-specific assertions rely on speculative interpretations of limited data and untested assumptions, offered without rigorous analysis or methodological transparency. In contrast, my recommendations are rooted in direct input from Breathitt's educators, aligned with established public health and school mental health frameworks, and guided by implementation science. Breathitt requires a response that addresses the real and documented challenges facing its students, not a generalized dismissal unsupported by meaningful local analysis.

### C.    Response to Aguilar

#### 1.    General Response to Opinions 1–6

74.    Dr. Aguilar's rebuttal for Breathitt is identical to his general rebuttal report, with no reference to Breathitt-specific evidence with the exception of Exhibit A. Therefore, I refer the reader to my July 30, 2025,[61] General Rebuttal Report, in which I respond in detail to each of Dr. Aguilar's core opinions. My response to his general opinions are summarized as follows:

75.    Opinion 1: While some regulated social media use may have limited educational uses, these uses are typically teacher-directed and scaffolded. My report does not dispute this; in fact, my strategic plan incorporates digital literacy training that helps students and staff distinguish helpful from harmful social media use. Indeed, the primary concern is not educator-directed social media use, but rather students' personal and pervasive use, which research and school personnel identify as a driver of attention and mental health problems and disrupted peer interactions and classroom environments.

76.    Opinion 2-3: The fact that civic engagement and peer connection may occur through social media in some contexts does not negate the substantial and growing body of evidence documenting increased mental health and learning problems caused by social media platforms. My report acknowledges that social media use is not monolithic. Yet, because of the significant harms caused by Defendants' platforms, a structured, district wide approach is needed.

77.    Opinion 4: The fact that some educators use social media for professional development is neither relevant to, nor addresses the harms in this case. The existence of teacher learning networks on social media does not offset the harms that Defendants' social media platforms are causing to school districts, the school environment and school functioning.

78.    Opinion 5: My plan does not advocate blanket bans as the only approach. To the contrary, my plan promotes thoughtful use policies and enhanced educator training to address harms that stem from Defendants' social media platforms and social media use.

79.    Opinion 6: Dr. Aguilar critiques my comparison to tobacco control. As I have noted in my general rebuttal,[62] the comparison is not one of mechanism but of scale and public health response. I state clearly that my strategic plan is modeled on past public health challenges that required system-wide and sustained action, not because social media is identical to tobacco, but because the public health infrastructure needed to respond is similarly complex and underdeveloped. With respect to the critique that the 15-year plan lacks iteration, to the contrary, my plan is explicitly designed for staged rollout and iterative refinement.

#### 2.    Rebuttal to District-Specific Opinions in Exhibit A (Breathitt County)

80.    In *Exhibit A* of his report for Breathitt, Dr. Aguilar presents three additional opinions (OP7-OP9) specific to the district. Each is addressed below:

---

[61] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 41-45, ¶¶ 156-172).

[62] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 21-25, ¶¶ 74-89).

81. Opinion 7: Dr. Aguilar notes that Breathitt has resources in place related to technology, including providing students with Chromebooks and high-speed internet access for educational purposes. However, this fact is not in dispute. My report does not argue that Breathitt lacks devices or internet infrastructure. Rather, my report documents that the harms stemming from students' personal and use of social media platforms occur despite the availability of educational technologies.

82. I acknowledge that:

   - Technology can be a powerful learning tool when usage is structured, scaffolded, and monitored by educators;

   - However, the issue in this case is not classroom-based educational technology, but widespread, frequent student use of social media platforms outside of instructional contexts;

   - The availability of Chromebooks or high-speed internet does nothing to mitigate these harms, and in some cases, it may facilitate increased unsupervised access to social media during and after the school day as students use VPNs to get around Breathitt's efforts to block social media sites.

83. Thus, the presence of devices in Breathitt classrooms is immaterial to the central claims of my report, which focus on the public health impacts of social media platform use among students and the consequences for schools.

84. Opinion 8: Dr. Aguilar notes that Breathitt County Schools uses social media for public communication. Again, this is not in dispute. The use of social media accounts by schools to communicate with families and the public has no bearing on the issues at hand.

85. It is entirely appropriate, and common, for school districts to maintain social media accounts for announcements and community engagement, emergency closures, and celebrating school events or achievements. This does not equate to an endorsement of student use, nor does it address the school-based harms caused by those platforms. My report does not call for eliminating public-facing school accounts. Rather, it recommends developing comprehensive systems of support to address the mental health challenges students experience as a result of social media use and the disruptions to classroom climate, attention, and school functioning.

86. Opinion 9: Breathitt has shown capacity to both educate students and train its teachers on technology, including social media.

87. I agree that Breathitt has some existing programming in this domain, and I reference these supports explicitly in my May 2025 Breathitt strategic report,[63] noting the district's efforts to provide digital learning supports and educator training and family engagement around technology use. However, the existence of basic digital literacy training does not negate the need for an expanded, systematized approach that addresses the full scale and complexity of social media harms.

---

[63] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 10-11, ¶¶ 53-58).

88.     As I explain in my report:

-   Current efforts are fragmented, reactive, and insufficiently resourced to address the public health-level impacts of social media observed by educators;

-   The harms described (e.g., emotional dysregulation, sleep deprivation, compulsive platform use, peer harassment) require a comprehensive, multi-tiered approach (MTSS) and ongoing staff development and evaluation.[64]

### 3.     Conclusion Regarding Dr. Aguilar's Breathitt Opinions

89.     Dr. Aguilar's Breathitt-specific observations largely reiterate his general arguments and reflect only surface-level engagement with the district's needs and realities. His opinions:

-   Do not contradict the core findings of my report;

-   Do not acknowledge the behavioral health impacts of social media on Breathitt's students;

-   And do not offer a viable or evidence-informed plan for how the district can respond to these harms in a coordinated, sustainable, and developmentally appropriate way.

90.     In contrast, my recommendations:

-   Are grounded in direct educator interviews and Breathitt-specific data;

-   Align with national public health and MTSS frameworks;

-   Support, rather than replace, existing educational technology efforts;

-   And offer a feasible and phased approach to building school capacity to meet the challenges caused by social media use.

### D.     Response to Lakdawalla

### 1.     Lakdawalla Opinion 1

91.     Dr. Lakdawalla asserts that my report, and the broader set of Plaintiff expert reports, fails to meet the standards of a "reliable economic analysis" because it does not independently establish each step in a causal chain from the "at-issue conduct" to the district-level harms alleged.[65] He suggests that my work must do the following:

-   (a) demonstrate that the at-issue conduct increases adolescent usage of Defendants' platforms;

-   (b) show that this increased usage causes measurable harm to adolescent mental health and behavior;

-   (c) isolate that harm from other confounding factors; and

---

[64] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 12-13, ¶¶ 66-68).

[65] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 16-18, ¶¶ 41-43).

- (d) quantify how those effects translate into discrete and attributable burdens on school districts like Breathitt.[66]

92. While this framework might be appropriate in other fields, it mischaracterizes the purpose and scope of my work as a school mental health and implementation science expert. My role was not to perform an economic damages analysis, but rather:

- To synthesize existing evidence (including literature and empirical reports from other Plaintiff experts);

- To consider school- and district-level reports of impacts;

- And to design a strategic, evidence-informed plan to address the harms caused by social media platforms already observed and documented by school systems.

93. The economic quantification he demands is not part of my expertise or part of my recommendations in my Breathitt report.[67]

94. Moreover, as discussed in my opening reports, I have opined, based on my experience as a psychologist with 25 years of experience in school mental health policy, research, training, and technical assistance, corroborated by the opinions offered in the expert reports of Drs. Twenge, Christakis, Mojtabai, Lembke, Goldfield and Telzer, that there are numerous, significant harms to the district caused by student social media use.[68]

95. As a national expert in school mental health and implementation science, my assignment was not to isolate causal variance through econometric modeling. Rather, I was retained to:

- Determine whether there are negative impacts from student social media use on the district;

- Assess school and district operations impacted by youth social media use;

- Review the relevant literature and expert findings on social media's effects;

- Integrate qualitative and quantitative evidence from educators and administrators;

- And develop a scalable strategic plan that addresses observed harms, promotes resilience, and builds sustainable capacity.

96. This is aligned with public health precedent. For example, in school-based asthma interventions, the causal pathways linking pollution to asthma exacerbations are

---

[66] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 20-21, ¶ 49).

[67] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025).

[68] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-10 ¶¶ 47-52).

established by epidemiologists, but the actual plans for nursing care, building ventilation, and parent education are developed by school health experts, as I have done here.[69]

97.    I understand and considered that multiple contributing factors affect student mental health. However, this does not mean the contribution of social media platforms is negligible or irrelevant; rather, social media is a significant and substantial contributing factor. Nor does it preclude an urgent, systems-level response to mitigate the school-based impacts of social media platforms. In public health, causation is rarely singular, but that has never been the standard for actionable prevention.

98.    Dr. Lakdawalla suggests that my failure to create a fully specified counterfactual ("but-for world") invalidates my plan. This again confuses economic damage quantification with implementation science planning. My recommendations are not based on counterfactual modeling, but on:

-    Real-world observations from district staff and administrators;

-    Emerging literature on digital behavior and mental health;

-    Case studies of other public health responses;

-    And a strategic prevention model designed to support Tier 1-3 school mental health capacity.

It is both appropriate in my field and standard for system response planning to begin with a synthesis of reported harms and public health indicators in this fashion, not wait for econometric analysis of exclusive causality. It is equally appropriate to draw upon well-established recommendations grounded in comprehensive school mental health system planning, an approach that has been applied for decades across hundreds of districts and thousands of schools to guide effective and sustainable supports for student well-being and proper school functioning.

99.    In Breathitt County specifically, I reviewed staffing reports, school mental health service array and data infrastructure, and I conducted direct interviews with key district stakeholders. These stakeholders consistently described the impacts of social media platform use on student regulation and behavior, classroom environment, and the need for more robust mental health supports.[70] It is neither speculative nor novel to respond to educator-observed patterns of harm, especially when those patterns align with national survey trends and platform design research.

100.    Dr. Lakdawalla's Opinion 1 sets an inappropriate bar for my role as an implementation science and school mental health expert. My task was to assess need, review the evidence, and offer a research-informed, multi-tiered plan that reflects the lived experiences of schools facing the effects of social media platform use by their students. I

[69] Bryant-Stephens, T. (2009). Asthma disparities in urban environments. *Journal of Allergy and Clinical Immunology*, *123*(6), 1199-1206.

[70] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025).

stand by my recommendations as appropriate, proportionate, and urgently needed, based on a combination of cross-disciplinary evidence and frontline educator input.

### 2.    Lakdawalla Opinion 2

101.   Dr. Lakdawalla wrongly asserts that Plaintiffs' experts, including myself, have failed to demonstrate the causal impact of Defendants' specific conduct on adolescent mental health and school district harm, and that we offer only "correlational or anecdotal" evidence.[71] He critiques the absence of a modeled counterfactual world and raises alternate explanations, such as declines in television use and increased reporting rates for mental health symptoms.[72]

102.   Once again, my role in this litigation is not to develop econometric estimates or simulate counterfactual worlds. Rather, as a national expert in school mental health and implementation science, I was tasked with:

- Determining the impact of social media on the district;

- Evaluating school-based impacts of adolescent social media use, particularly those reported by educators and documented in public data;

- And developing a comprehensive, evidence-informed strategic plan to help, Breathitt, mitigate and manage these harms.

103.   I reviewed and relied upon numerous peer-reviewed studies and the expert reports of Dimitri Christakis, M.D., M.P.H, Dr. Ramin Mojtabai, M.D., Ph.D., MPH, Eva Telzer, Ph.D., Anna Lembke, M.D., Dr. Jean M. Twenge, Ph.D., and Gary Goldfield, Ph.D., that address the causal links in question. These experts have extensively reviewed and published on the causal relationship between social media use and adolescent mental health outcomes, including anxiety, depression, sleep disruption, and emotional dysregulation. These findings are consistent with real-world observations from school systems across the country, including those voiced by school leaders and staff in Breathitt County. The scientific literature includes a substantial body of evidence that meets or exceeds standards of plausibility, temporal association, dose-response relationship, and coherence with other known data, hallmarks of causal inference in public health. Based on this body of evidence and my expertise, I concluded that there are numerous harms to school districts, including Breathitt, associated with student social media use.[73]

---

[71] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (p. 5, ¶ 6).

[72] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 27-40, ¶¶ 66-83).

[73] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-10 ¶¶ 47-52).

104. Dr. Lakdawalla faults me and other Plaintiff experts for failing to construct a counterfactual world.[74] As previously stated in my response to Dr. Lakdawalla's Opinion 1, my assignment was to develop a strategic plan responsive to the real, observed harms that educators and mental health staff are already experiencing in school the district. As discussed in my opening reports, schools, including the district, are not responding to abstract trends. Rather, among other things, they are responding to, among other things:

- Students arriving at school sleep-deprived due to late-night platform use;

- Social media drama and cyberbullying affecting school climate;

- Escalating needs for mental health support from the harms of student use of social media.[75]

My recommendation for a strategic plan to address these harms caused by social media relies not on anecdote, but on direct evidence from Breathitt bolstered by patterns that are consistent across educators, schools, and districts, and which converge with the broader evidence base discussed in peer reviewed literature and the expert reports of Dimitri Christakis, M.D., M.P.H, Dr. Ramin Mojtabai, M.D., Ph.D., MPH, Eva Telzer, Ph.D., Anna Lembke, M.D., Dr. Jean M. Twenge, Ph.D., and Gary Goldfield, Ph.D. This is a standard and appropriate method that I regularly use in my filed of implementation science and school-based systems planning.

105. Dr. Lakdawalla's assertion that increased social media use may have substituted for television use,[76] and that reporting rates for mental health issues have changed over time, reflects selective skepticism, not balanced scientific inquiry:

- Unlike passive television consumption, social media platforms are interactive and designed to maximize user engagement, features that are distinct from prior screen-time modalities and have transformed the classroom environment;[77]

- Increases in adolescent mental health concerns are evident not just in self-report data but in hospital admissions for self-harm among adolescents which Dr. Twenge has linked to trends in social media,[78] which are far less likely to be explained by greater willingness to report alone and;

- Dismissing these harms due to uncertainty in measurement trends runs contrary to the precautionary principle of public health, which calls for timely intervention even in

---

[74] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 22-24, ¶¶ 53-58).

[75] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-10 ¶¶ 47-52).

[76] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (p. 5, ¶ 5).

[77] E.g., 2025.05.16 Expert Report of Eva Telzer, Ph.D. at 86-87; 2025.05.16 Expert Report of Dimitri Christakis, M.D., M.P.H. at 278-81.

[78] 2025.05.16 Expert Report of Jean M. Twenge, Ph.D. at 14, ¶ 45.

27

the face of incomplete information, especially when the risks of inaction are high as they are here.

106. Breathitt educators are not reacting to trends in survey response rates. They are managing the daily consequences of widespread student dysregulation and distress: students arriving to school exhausted after late-night scrolling, peer conflicts initiated or escalated online, and classroom learning time diverted by the behavioral and emotional issues caused by social media use. These observations are echoed across schools in Breathitt and are consistent with national research.

107. While Dr. Lakdawalla critiques my report for not quantifying Breathitt's financial losses using econometric tools,[79] I again emphasize that my charge was not to assess financial cost, it was to design a strategic plan to address harms already reported by educators and supported by peer reviewed academic literature and expert testimony. The plan I propose is based on observable gaps in Tier 1–3 mental health supports in the district; documented challenges related to student mental health and classroom learning; and, system-level prevention frameworks that have been used to address other large-scale youth health challenges (e.g., tobacco, obesity, trauma).[80]

108. Implementation science does not wait for comprehensive quantitative data before acting, particularly when the harms are real, observable, and growing. My recommendations are grounded in Breathitt-specific needs, informed by educator experience, and supported by a national body of research and expert consensus. They are not speculative, they are proportionate and urgently needed.

### 3. Lakdawalla Opinion 3

109. Dr. Lakdawalla argues that national, state, and Breathitt County data do not support the theory that social media use has harmed students or school districts through increased behavioral issues, reduced academic performance, or greater staffing needs.[81] He concludes that available data are inconsistent with Plaintiffs' experts' conclusions. This critique reflects narrow and incomplete interpretation of how school harms are experienced and documented.

110. Dr. Lakdawalla appears to assume that the only valid evidence of harm to school districts must take the form of quantifiable declines in test scores, elevated suspension or expulsion rates, or formal changes in staffing counts. However, as explained in my prior responses above at ¶¶ 12-23, 68-69, these are not the primary metrics I used to assess or describe the impact of social media on school functioning. Rather, as is standard practice in my field, I focused on:

- Student mental health concerns that interfere with learning, even if not reflected in grades or test scores;

---

[79] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 45-58, ¶¶ 93, 112, 116-118).

[80] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 32, ¶¶ 107-109).

[81] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 58-83 ¶¶ 119-160).

- Disruptions to classroom climate and educator workload, often managed informally and undocumented in discipline logs;

- Underreported and subclinical student distress, which educators and mental health professionals consistently identify as growing in frequency and severity.[82]

This approach is consistent with school mental health best practices, where decision-making is based on a combination of data, educator input, and implementation frameworks, not test scores alone.

111.    As I detail in both my general and Breathitt-specific reports,[83] most schools, including Breathitt, lack comprehensive systems for tracking digital harms, such as time spent on social media during the school day, student use of social media contributing to distress, emotional dysregulation stemming from social media activity, or the reasons students are referred to counseling. When school counselors or teachers informally address these issues without formal referral or disciplinary action, they are often absent from district-level datasets, but not absent from reality. This is precisely why key informant interviews are essential in understanding the scope of harm.

112.    In Breathitt County, educators and administrators described:

- Students arriving to school sleep-deprived from nighttime social media use;

- Increasing conflict and emotional volatility related to digital peer interactions;

- Time and attention diverted from instruction to manage the fallout of social media-related incidents;

- An overstretched school mental health workforce struggling to meet student needs;

- Addictive, compulsive, and problematic use of social media with eye strain, headaches, anxiety and depression.[84]

These reports align with national survey data, published literature, and other expert findings.[85] That some of these impacts are not reflected in large-scale datasets reveals a limitation of those datasets, none of which are directly correlated to the issue at hand, and is not representative of the underlying reality.

---

[82] Green, J. G., McLaughlin, K. A., Alegría, M., Costello, E. J., Gruber, M. J., Hoagwood, K., ... & Kessler, R. C. (2013). School mental health resources and adolescent mental health service use. *Journal of the American Academy of Child & Adolescent Psychiatry*, *52*(5), 501-510.

[83] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 3, 28, ¶¶ 9, 103); Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 2, 42, ¶¶ 6, 163).

[84] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-11, ¶¶ 47-64); 30(b)(1) Deposition of Kera Howard, 33:9-16 (Mar. 10, 2025); 30(b)(6) Deposition of Phillip Watts, 71:25-72:5 (Apr. 22, 2025); 30(b)(1) Deposition of Jeremy Hall, 56:7-18 (Apr. 23, 2025).

[85] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-19, ¶¶ 30-57, 63-76).

113. Finally, on the critique related to not demonstrating a statistical relationship between Breathitt's administrative data and the at-issue conduct:[86] My charge was to develop a strategy based on observed needs and school mental health best practices consistent with standard practices in my field. The strategic plan I offer for Breathitt County reflects that mission and stands on solid scientific, experiential, and practical footing.

114. Dr. Lakdawalla's Opinion 3 rests on a narrow reading of what constitutes evidence of harm and again misapplies economic standards to a public health and school systems planning task. While school district administrative data are one piece of the puzzle, they are insufficient on their own, and often incomplete, especially when assessing harms as complex and evolving as those introduced by widespread student use of social media platforms. My approach integrates multiple data sources, including educator reports, implementation science frameworks, and the broader research literature, to offer an actionable response to harms that Breathitt is confronting daily.

### 4. Lakdawalla Opinion 4

115. In Opinion 4, Dr. Lakdawalla is wrong when he argues that my strategic plan is "overly broad," not tailored to the harms allegedly caused by Defendants' conduct, and duplicative of existing programs in Breathitt County. He further incorrectly contends that I have failed to justify the need for new programming or quantify the extent to which the proposed plan addresses incremental harms attributable specifically to Defendants' conduct.[87]

116. As I have stated in prior responses (see rebuttals to Dr. Wildermuth at ¶¶ 24-48 above), my strategic plan is not a standalone damages calculation or narrow treatment protocol. It is an evidence-informed, system-level response to the substantial and well-documented harms that social media platform use has caused within school environments. My recommendations are consistent with the findings of other Plaintiff experts, who have demonstrated that the design and deployment of social media platforms have had a measurable negative effect on student mental health and learning; and, that these harms are being absorbed by school systems, including Breathitt County, through increased behavioral incidents, heightened student distress, disruptions in instruction, and the expenditure and redirection of staff time and resources.

117. Dr. Lakdawalla suggests that my planning must isolate only those harms "incrementally" caused by Defendants' conduct.[88] That is not how public health response or school-based prevention planning is conducted. When faced with an externally introduced, population-wide risk, schools and public agencies must develop system-level responses that are comprehensive, multi-tiered, and resilient. That is what my strategic plan offers.

---

[86] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 58-83, ¶¶ 119-160).

[87] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 5-6, ¶¶ 8-9).

[88] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (p. 84, ¶ 162).

118. Dr. Lakdawalla repeats a critique raised by other Defense experts: that my plan overlaps with current programming and fails to explain how it is additive rather than duplicative.[89] I refer the reader to my detailed response to Dr. Wildermuth's Opinion 2 at ¶¶ 24-35, where I explain that:

- I explicitly reviewed existing supports in Breathitt, including digital literacy programs, external provider partnerships, and Tier 2 counseling efforts;

- My plan does not call for the dismantling or duplication of those services, but for the expansion and enhancement of district capacity to address new harms that existing programs were never designed to manage;

- These additions are targeted, structured within a Multi-Tiered System of Supports (MTSS) framework, and grounded in best practices in school mental health and prevention science.

Moreover, Breathitt's current staffing levels and data systems cannot address the scale of student need described by educators in the district as a result of Defendants' social media platforms.[90]

119. Dr. Lakdawalla faults me for not quantifying the reach of current programs or the exact proportion of harm attributable to Defendants. But as an implementation science expert, this was not my assignment. I was retained to synthesize available evidence and develop a strategic plan to address the harms to Breathitt caused by Defendants' social media platforms based on my analysis of the district's needs and extensive experience in school mental health policy, research, training, and technical assistance. I used standard planning tools from my experience with public health and school mental health to design a feasible and proportionate response. I did so in collaboration with known best practices for district-level systems development, not abstract economic modeling.

120. Dr. Lakdawalla's credentials do not include training or experience in child and adolescent mental health, school-based service delivery, or educational implementation science. It is therefore unclear on what basis he assesses the adequacy of existing district programs; the necessary scale or design of Tier 1–3 mental health supports; or the appropriateness of expanding school-based prevention efforts in response to platform-related harms. His critiques appear to stem from a misapplication of economic logic to a public health and education planning process, and from a lack of familiarity with how school systems implement multi-tiered mental health supports in practice.

### 5. Lakdawalla Opinion 5

121. In Opinion 5, Dr. Lakdawalla incorrectly contends that the costs of my proposed strategic plan, as calculated by Dr. Leslie, are inflated, unsupported, and insufficiently justified in duration, staffing, and design. He also wrongly suggests that I fail to consider existing

---

[89] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 91-94, ¶¶ 180-187).

[90] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-12, ¶¶ 47-65).

staff, alternative implementation strategies such as contractors, or the availability of other public funding sources.[91]

122. My role was not to estimate damages or calculate line-item costs, but to design an evidence-informed, scalable strategic plan aligned with school mental health best practices. That said, I strongly disagree with the suggestion that the design and duration of the plan are "unsupported."[92] My recommendations reflect decades of precedent in school systems reform and behavioral health, informed by my 25+ years of experience in building sustainable school mental health infrastructure across the country, using well-accepted methods common in my field.

123. My plan outlines a 15-year timeline for planning, implementation, evaluation, and sustainability. Dr. Lakdawalla critiques this duration and challenges my analogy to tobacco control efforts. It is important to note:

- The comparison to tobacco is not one of identical mechanism, but one of scale, complexity, and sustained exposure to an external harm;

- Tobacco control, childhood obesity, and other large-scale behavioral health efforts routinely require 10–20 year investments in education and system capacity building;

- Social media use, like tobacco use, involves persistent behavioral patterns shaped by external corporate design and incentives, requiring multi-tiered, intergenerational interventions to mitigate its impact.

This timeline is not arbitrary, it is based on the well-documented need for new workforce capacity, development and integration of Tier 1-3 supports, family and community partnership building, ongoing outcome evaluation and fidelity monitoring.

124. Dr. Lakdawalla incorrectly asserts that the costs of training are "double-counted" in Dr. Leslie's economic modeling.[93] Dr. Lakdawalla fails to recognize that in school systems, professional development costs are often incurred in addition to salary and benefits, particularly when training occurs outside of regular contract hours; collective bargaining agreements or union rules require compensation for training time; substitute teachers must be hired to cover classes during in-service days; and/or external trainers, materials, or certifications are needed. As a result, it is not uncommon, or incorrect, for school districts to incur training expenses in addition to staff salaries and benefits, and any attempt to eliminate these costs as redundant ignores how school systems actually operate.

---

[91] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 91-94, ¶¶ 180-187).

[92] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 96-99, ¶¶ 192-201).

[93] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 95, 101, ¶¶ 190, 206).

125. Dr. Lakdawalla argues that I ignored existing school-based mental health professionals when calculating staffing needs.[94] In fact, my Breathitt County report explicitly includes current staffing figures.[95] The suggestion that the district's current staffing is adequate, ignores the additive burden caused by the impact of social media platforms. The proposed staff are not meant to replace existing professionals, but to fill capacity gaps and address new challenges stemming from platform-driven harms.

126. Dr. Lakdawlla further contends that I have not justified why the levels of staffing I recommend are necessary.[96] However, to the contrary, my opening reports explain in substantial detail why the additional staffing I have recommended is necessary in order to support my strategic plan. As discussed at length in my opening reports, student social media used has caused substantial harms to school districts including Breathitt and existing staffing is not able to address these harms.[97] My staffing recommendations are based on my significant experience developing mental health programming for school districts and are based on my assessment of the staffing that will be required to implement my strategic plan for Breathitt.

127. Dr. Lakdawalla critiques my plan for not recommending outside contractors.[98] I am knowledgeable of and experienced with contractor models, having led a national school mental health technical assistance center for over 15 years. Contractors may be appropriate in early stages of implementation, especially when internal staff are not yet available; however, long-term reliance on contractors is less cost-effective and less sustainable than building district-owned, embedded capacity. Contractors also vary in quality and continuity and are often inaccessible in rural areas like Breathitt. My plan reflects best practices: initial capacity-building may include partnerships, but districts need their own staff to sustain effective, high-fidelity services.

128. Finally, Dr. Lakdawalla criticizes me for not accounting for existing federal, state, and local funding streams for mental health.[99] While I am familiar with many of these (e.g., ESSER, Medicaid, Title IV, state mental health block grants), these streams are not dedicated to mitigating social media–specific harms; are often short-term, competitive, or uncertain in duration; cannot reasonably be assumed to replace new funding

---

[94] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (p. 102, ¶ 209).

[95] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 7-8, ¶¶ 37-38).

[96] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 102-103, ¶ 210).

[97] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-19, ¶¶ 30-57, 63-76); Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 2-11, ¶¶ 56-62).

[98] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (p. 105, ¶ 215).

[99] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Breathitt County Board of Education, (pp. 109-110, ¶¶ 220-223).

responsibilities for harms caused by Defendants' platforms; and, are already being used to address a wide array of pre-existing needs. It would be inappropriate and irresponsible to assume that Breathitt should reallocate existing funds, intended for general student support, to absorb new harms stemming from social media platform use.

### E.    Response to Nelson

#### 1.    Nelson Opinion 2

129.    In Opinion 2, Dr. Nelson wrongly asserts that if social media were significantly harming students in Breathitt County Schools, it would be visible through a comprehensive set of formal district processes, such as systematic needs assessments, professional development planning, resource allocation, and evaluation systems.[100] He concludes that because social media has not been consistently reflected in these systems, it is unlikely to be a problem of substantial impact. Dr. Nelson's logic is both incomplete and overly rigid.

As I have detailed in my reports and reiterated throughout my rebuttals (including to Dr. Wildermuth's and Dr. Lakdawalla's opinions at ¶¶ 12-23, 111-116), the fact that a district has not fully incorporated a new and emerging harm into its formal systems, including its budget, does not mean the harm does not exist or is not substantial. Indeed, social media-related harms, including compulsive use, emotional dysregulation, classroom disruption, and mental health decline, represent a relatively new external stressor, one that many school systems are only beginning to fully understand and address. A lack of full documentation or formal budgetary response should not be conflated with lack of real and ongoing impact.

130.    Contrary to Dr. Nelson's implication that Breathitt has done nothing to address social media-related harms, my report acknowledges that the district has taken steps including the following:

-    Digital citizenship and online behavior education is included in some district programming;

-    School counselors and administrators report managing classroom disruptions and student distress tied to social media use;

-    Some professional development activities have touched on related themes, even if not organized under a comprehensive digital health initiative.[101]

These actions indicate that the district is aware of and attempting to address the issue, even if its response is piecemeal, under-resourced, and under-documented, as is common in school districts, including rural, high-need districts, like Breathitt.

---

[100] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (p. 3, ¶ 13).

[101] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 7, 10-11, ¶¶ 34, 53-58).

131.    Dr. Nelson emphasizes the importance of stakeholder input throughout his report. My standard process included interviews with a range of district stakeholders in Breathitt, including administrators and student support professionals. These informants described:

- A sharp rise in student anxiety and attention issues tied to social media use;

- Increasing incidents of peer conflict, emotional outbursts, and sleep deprivation attributable to social media;

- The need for more robust staffing, data systems, and programming to address these challenges.[102]

These are precisely the types of stakeholder concerns Dr. Nelson suggests should drive district action. The fact that they have not yet led to fully institutionalized programming is a function of system capacity, not a refutation of the underlying harms.

132.    Dr. Nelson also suggests that a serious response to social media-related harms would include a system-wide evaluation process, planning and implementation protocols, and integrated professional development. My proposed plan includes all of these elements. Specifically:

- It provides staffing and technical assistance to establish or improve needs assessments that include social media harms;

- It supports expanded and tiered professional development for educators on digital health and student emotional regulation;

- And it includes clear provisions for evaluation, accountability, and continuous improvement, consistent with MTSS and implementation science frameworks.[103]

Rather than being "disconnected" from real district processes, my recommendations enhance and extend them, offering the structure needed to address this emerging threat in a scalable and sustainable way.

133.    Public school districts, especially under-resourced ones like Breathitt, must make difficult decisions every day. The fact that social media harms are not yet fully integrated into their annual budget does not suggest they are unimportant. In many cases, districts are:

- Reactively managing symptoms (e.g., classroom disruptions, counseling demand) without a unified funding stream;

- Waiting for external support or funding to respond to newly recognized harms;

- Or simply unable to quantify harms they lack the infrastructure to measure.

It would be a mistake to assume that absence of line-item budgeting or open board discussions equates to absence of impact.

---

[102] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-52, 59-65).

[103] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 12-45, ¶¶ 66-170).

134.     Dr. Nelson's assertion that social media cannot be significantly harming Breathitt simply because it is not yet codified in district plans or budgets is inconsistent with how new challenges typically unfold in school systems, particularly those operating with constrained resources. It also ignores the very evidence he claims to value: direct, consistent reports from Breathitt educators that student mental health, classroom climate, and instructional time are being negatively affected by student social media use. Rather than contradicting my conclusions, the gaps Dr. Nelson identifies in current systems underscore the need for a coordinated strategic plan, one that my report provides.

### 2.     Nelson Opinion 3

135.     In Opinion 3, Dr. Nelson incorrectly asserts that social media is not an issue that is significantly impacting Breathitt.[104] This opinion is based upon Dr. Nelson's "review of Breathitt documents." As discussed in detail above, social-media related harms are a relatively new stressor which school systems are only beginning to fully understand, document and address. Accordingly, a lack of full documentation or formal budgetary responses do not indicate that social media is not a significant issue for Breathitt.

136.      As discussed above regarding Dr. Nelson Opinion 2, the impact of social media on Breathitt becomes apparent in discussions with district stakeholders, as detailed in my opening report, who have relayed the many ways in which social media is impacting Breathitt:

- A rise in student anxiety, depression, and attention issues tied to social media use;

- Increasing incidents of peer conflict, emotional outbursts, and sleep deprivation attributable to social media;

- The need for more robust staffing, data systems, and programming to address these challenges.[105]

The impact is also evident from the testimony of various school officials:

- "As a school system, we're just seeing more and more. It's every day. It drives some of the decision that I – that I make. It impacts all of our lives. It's just something that we've not had to always deal with and it's a – it's a reality."[106]

- "Most of the problems that the teachers talk about that they're dealing with stem from social media. There's – there is – you know, there is some good need for the devices, and the biggest – the biggest cause to put the devices up is social media."[107]

---

[104] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (p. 3, ¶ 14).

[105] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-52, 59-65).

[106] 30(b)(6) Deposition of Phillip Watts, 26:3-8 (Apr. 22, 2025).

[107] 30(b)(6) Deposition of Phillip Watts, 71:25-72:5 (Apr. 22, 2025).

- "I deal with social media daily from students. It's – It's probably one of the – one of the largest issues that they bring to my office."[108]

- "Well, they can't put it down. They keep constantly scrolling. You know, if they're using the calculator, that's fine. But if they're scrolling and they can't pay attention, it makes it really difficult."[109]

- "They – they struggle with putting them down. Their attention spans seem to be getting tougher on the day-to-day operations of instructing kids."[110]

- "Students tell me that due to interactions that they have on social media platforms or things that have been said about them on social media platforms and the number of people that it has reached, that they suffer from depression. A lot of my students are medicated for depression and their parents will normally corroborate that story."[111]

Notably, Dr. Nelson doesn't account for these stakeholder accounts in reaching his opinion, despite acknowledging their importance.

137. Setting aside the flaws in the survey's methodology, Dr. Nelson notably ignores that the negative impact of social media on the school is also in part captured by the 2021 KIP Survey results showing that 19 – 35% of Breathitt respondents report checking their social media every couple of minutes, 13 – 27% of Breathitt respondents report checking their social media every 10 – 15 minutes, and 17 – 32% of Breathitt respondents report checking their social media once or twice an hour:[112]

---

[108] 30(b)(1) Deposition of Kera Howard, 42:5-8 (Mar. 10, 2025).

[109] 30(b)(6) Deposition of Phillip Watts, 72:12-16 (Apr. 22, 2025).

[110] 30(b)(6) Deposition of Phillip Watts, 111:6-9 (Apr. 22, 2025).

[111] 30(b)(1) Deposition of Kera Howard, 33:9-16 (Mar. 10, 2025).

[112] BREATHITT00151339.





Despite citing to this survey, Dr. Nelson failed to address this specific question and the results it showed of compulsive checking of social media by Breathitt students.

138. Like other Defendant experts, Dr. Nelson notes that Breathitt has faced other challenges such as violence, substance abuse, COVID-19, and severe poverty.[113] However, as discussed above in my response to Dr. Wildermuth Opinion 4 at ¶¶ 49-59 above, these other challenges to the district are shared by many school districts across the country, including those with high mental health burdens and limited capacity to respond to emergent student needs. My strategic plan fully accounts for overlapping structural challenges, and is specifically designed to address the ways that new harms, stemming from social media platforms, interact with, and exacerbate, existing vulnerabilities in the school environment. Dr. Nelson's suggestion that because the district faces challenges from multiple sources social media is not a real or significant concern in the district is belied by the actual reports from key informants in Breathitt and the substantial evidence

---

[113] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 15-25, ¶¶ 61-83).

from peer reviewed literature and experts in this case that social media has real and serious negative impacts on school districts.[114]

139. Like Dr. Wildermuth, Dr. Nelson also incorrectly argues that district mismanagement is the source of the district's harms.[115] As discussed above in my response to Dr. Wildermuth Opinion 3 at ¶¶ 36-48, I offer no opinion on these historical corruption allegations but I strongly caution against conflating legacy administrative issues with the current need for strategic investment in student services.

140. Moreover, contrary to Dr. Nelson's assertion that Breathitt schools generally and Sebastian Elementary School have failed to implement policies to restrict cell phone use,[116] both Breathitt High School and Sebastian Elementary School have recently introduced changes to their cell phone and electronic device policies that were designed to address the growing impact of social media.[117] These actions indicate that the district is becoming aware of the issue, even if its response is not systemic and holisitic, under-resourced, and under-documented, as is common in school districts, including rural, high-need districts, like Breathitt. Moreover, Dr. Nelson offers no support for the suggestion that a cell-phone ban on its own is an effective remedy for the numerous and multifaceted harms to school districts caused by social media as discussed in my general opening report.[118]

141. Dr. Nelson's flawed argument that social media cannot be a concern in Breathitt because the district has used social media to interact with the community[119] is unfounded for the reasons discussed above in my response to Dr. Aguilar Opinions 1-4 and 8 at ¶¶ 75-77, 84-88 above. As previously discussed, the use of social media accounts by schools to communicate with families and the public has no bearing on the issues at hand. It is entirely appropriate, and common, for school districts to maintain social media accounts for announcements and community engagement, emergency closures, and celebrating school events or achievements. This does not equate to an endorsement of student use, nor does it address the school-based harms caused by those platforms.

---

[114] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-52, 59-65); Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-20, ¶¶ 30-82).

[115] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 25-28, ¶¶ 84-89).

[116] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (p. 28, ¶ 91).

[117] 30(b)(1) Deposition of Jeremy Hall, 74:12-18 (Apr. 23, 2025); 30(b)(6) Deposition of Phillip Watts, 62:20-63:1 (Apr. 22, 2025).

[118] E.g., Expert Report of Dr. Sharon A. Hoover, Ph.D. dated May 16, 2025 (p. 11, ¶ 45).

[119] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 31-32, ¶¶ 97-100).

142. Finally, Dr. Nelson makes an unfounded assertion that the only social media related concerns in Breathitt are content based.[120] Contrary to this assertion, as discussed by key informants from the district and in my reports, social media causes numerous harms to the district not related to content but rather to platform features which cause, among other things, compulsive use, student distraction, atrophying student social skills, sleep disruption, anxiety, depression, negative body image, and self-harm which all have a significant negative impact on the district.[121]

### 3. Nelson Opinion 4

143. Dr. Nelson inaccurately asserts that my Breathitt-specific recommendations are "unrealistic, unnecessary, and/or are not attributable to social media."[122] He claims that social media has not diminished teacher effectiveness or required districts like Breathitt to expend or redirect resources, and that my Tier 1 recommendations, staffing plan, and evaluation strategies are flawed or overreaching. While many of these unfounded concerns echo critiques made by other experts, and are addressed in earlier rebuttals (particularly those to Drs. Wildermuth and Lakdawalla at ¶¶ 12-60, 91-129 above), Dr. Nelson raises several points to which I specifically respond here.

144. Dr. Nelson Claim: "Social media has not diminished teacher effectiveness or required school districts to expend and redirect limited resources."[123] This claim directly contradicts evidence from Breathitt key informants and misrepresents how the effects of social media manifest in schools. As documented in my Breathitt report, and based on interviews with district stakeholders, they described:

- Increased classroom distractions and instructional disruptions stemming from students' late-night social media use, peer conflict initiated online, and students' difficulty with sustained attention;

- Time spent by teachers and administrators managing peer issues that originated on social media;

- Rising student distress that required counseling, family outreach, and behavioral supports, diverting time and resources away from academic instruction.[124]

---

[120] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 32-33, ¶¶ 101-103).

[121] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 6-21, ¶¶ 30-84); Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 9-11, ¶¶ 47-64).

[122] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (p. 45, ¶ 146).

[123] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 40-41, ¶¶ 131-134).

[124] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 9-11, ¶¶ 47-64).

These impacts may not always appear in formal budget documents or staffing charts, but they are consistently reported by district and school leaders and support professionals.[125] Dr. Nelson does not appear to have interviewed any Breathitt personnel or reviewed their affidavit or deposition testimony concerning their experience of how social media is impacting Breathitt:

- "Students tell me that due to interactions that they have on social media platforms or things that have been said about them on social media platforms and the number of people that it has reached, that they suffer from depression. A lot of my students are medicated for depression and their parents will normally corroborate that story."[126]

- "Most of the problems that the teachers talk about that they're dealing with stem from social media. There's – there is – you know, there is some good need for the devices, and the biggest – the biggest cause to put the devices up is social media."[127]

- "The biggest issues that I see with it is the – the disruption of instructional time. So you may have a kid that's on a Snap with another kid, you may have a kid that is messaging another kid, and then they're missing out on instruction, so I think that was the biggest concern that teachers had in our building with the use of those cellphones."[128]

- "They – they struggle with putting them down. Their attention spans seem to be getting tougher on the day-to-day operations of instructing kids."[129]

Despite failing to consider the lived experiences of numerous Breathitt stakeholders, Dr. Nelson offers broad unsupported claims dismissing their experiences.

145.  Dr. Nelson's unfounded assertions that Breathitt has not taken efforts to combat social media[130] conflate an inability of the district to have implemented a large and financially burdensome holistic and systemic system for addressing the harms caused by social media with the district purportedly making no efforts to confront the harms caused by social media. In truth, as discussed in my opening Breathitt report, the district has made an effort to begin addressing harms stemming from social media although it has lacked the ability to implement the holistic and systemic plan necessary to fully address the harms caused by social media.[131]

---

[125] Nesi, J. (2020). The impact of social media on youth mental health: challenges and opportunities. *North Carolina medical journal*, *81*(2), 116-121.

[126] 30(b)(1) Deposition of Kera Howard, 33:9-16 (Mar. 10, 2025).

[127] 30(b)(6) Deposition of Phillip Watts, 71:25-72:5 (Apr. 22, 2025).

[128] 30(b)(1) Deposition of Jeremy Hall, 58:11-18 (Apr. 23, 2025).

[129] 30(b)(6) Deposition of Phillip Watts, 111:6-9 (Apr. 22, 2025).

[130] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 43-44, ¶¶ 141-142).

[131] Expert Report of Dr. Sharon A. Hoover, PhD for Breathitt County Board of Education dated May 18, 2025 (amended June 20, 2025) (pp. 6-7, ¶¶ 32-35).

146. As addressed in my rebuttal to Dr. Lakdawalla Opinion 5 at ¶ 124 above, the 15-year timeline I propose is:

- Aligned with public health precedent, including efforts to address tobacco use, childhood obesity, and trauma;

- Reflective of the multi-year, phased approach needed to build sustainable district-level capacity, including staff recruitment, training, Tier 1 curriculum implementation, and fidelity monitoring;

- Proportionate to the scale and complexity of the challenge, especially given the persistent and evolving nature of student social media use.

Dr. Nelson's assertion that this timeline is unnecessary fails to engage with the underlying rationale or the precedent of long-term investment in effective systems change. Incremental change over a sustained period is not only realistic, it is essential.[132]

147. Dr. Nelson critiques my Tier 1 recommendations, arguing that they are "not attributable" to social media and therefore not justified in this context.[133] However, my Tier 1 plan includes:

- Universal digital wellness curriculum designed to build self-regulation, digital citizenship, and resilience;

- Professional development for educators and staff to recognize and respond to social media-related distress and attention disruption;

- Family engagement strategies to support at-home digital habits, including navigating social media, and peer relationship management.

148. Each of these components directly addresses harms introduced or intensified by social media platform design, including peer conflict and exclusion, sleep disruption from nighttime use, and emotional volatility tied to social comparison, compulsive use and online feedback loops. These are not generalized mental health strategies, they are tailored responses to platform-related harms documented in the literature and reported by district personnel.[134] The suggestion that Tier 1 programming should only address mental health harms with singular, isolated causes misrepresents how prevention science operates. Most Tier 1 strategies target multifactorial harms and are justified if they mitigate even one core driver, such as social media use.

---

[132] Spoth, R. L., Guyll, M., & Day, S. X. (2002). Universal family-focused interventions in alcohol-use disorder prevention: cost-effectiveness and cost-benefit analyses of two interventions. *Journal of studies on alcohol*, *63*(2), 219-228.

[133] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 45-46, ¶¶ 146-149).

[134] Twenge, J. M., & Campbell, W. K. (2019). Media use is linked to lower psychological well-being: Evidence from three datasets. *Psychiatric Quarterly*, *90*(2), 311-331.

149. Dr. Nelson implies that I overprescribe staffing without acknowledging existing professionals.[135] This concern was already addressed in detail in my rebuttal to Dr. Wildermuth Opinion 3 at ¶¶ 36-48. To reiterate:

- My report explicitly includes Breathitt's current staffing: 6 school counselors, 1 school psychologist, and 0 school social workers;

- These figures do not reflect capacity to address the additional significant and distinct harms associated with social media platforms;

- The recommended new roles are designed to be additive, with specific responsibilities tied to digital safety, student emotional regulation, and peer support.

It is not duplicative to propose new positions when the existing workforce is already stretched thin and new significant harms are caused by social media. To the contrary, my plan seeks to relieve pressure on existing staff and increase the system's capacity to meet newly emerging needs associated with social media use.

150. Dr. Nelson incorrectly argues that my evaluation and data recommendations are burdensome and not clearly tied to social media-related harms.[136] In fact, Breathitt currently lacks centralized data systems to monitor Tier 1 implementation fidelity, referral patterns, or social media–related behavioral disruptions. My plan includes modest, structured evaluation supports that are standard in MTSS implementation and are critical for identifying student subgroups at risk, tracking response to intervention, and documenting progress toward harm reduction goals.[137] This is not overreach, it is best practice. Districts implementing complex mental health and behavioral health initiatives require infrastructure to measure both need and effectiveness.

151. Dr. Nelson's conclusion that my Breathitt-specific recommendations are "unrealistic, unnecessary, or not attributable to social media" reflects a narrow view of how school systems respond to emerging harms. It disregards consistent and credible reports from Breathitt educators, misrepresents the intent and scope of my Tier 1 and evaluation recommendations, and fails to engage with the layered and sustained nature of meaningful school-based systems change. Rather than being excessive, my recommendations are proportionate, and informed by implementation science and the lived realities of educators confronting the effects of social media in real time.

## III.  Conclusion

152. The opinions and recommendations presented in this report reflect a comprehensive review of the district-specific rebuttal reports submitted by defense experts, as well as the unique needs, conditions, and capacity of Breathitt County Schools. Many of the defense

---

[135] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (pp. 49-50, ¶¶ 158-162).

[136] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Breathitt County Board of Education, (p. 49, ¶ 158).

[137] Forman, S. G., Shapiro, E. S., Codding, R. S., Gonzales, J. E., Reddy, L. A., Rosenfield, S. A., ... & Stoiber, K. C. (2013). Implementation science and school psychology. *School Psychology Quarterly*, *28*(2), 77.

expert critiques either misunderstand the scope of my work, overlook the realities of school system operations, are not based on the education, expertise or experience necessary to evaluate my opinions, or fail to meaningfully engage with the evidence provided by educators and mental health professionals on the front lines.

153.   Breathitt County, like many large and diverse school districts, is experiencing the new, significant and distinct harms as well as compounding harms of widespread student engagement with social media platforms. These consequences include increased student distress, attention disruption, digital peer conflict, disruptions to school functioning, harms to school climate and diversion of educator time and school resources. My recommendations are tailored to Breathitt County's context and are designed to address these harms through sustainable, evidence-informed strategies that complement and extend the district's current efforts. In offering my strategic plan for Breathitt, I do not suggest that social media is the only driver of student mental health challenges, but it is a distinct, substantial, external, and modifiable contributor that warrants a proportionate response. The interventions I propose are not speculative or excessive; they are grounded in decades of research, guided by implementation science, and designed to equip school systems to meet the impact of social media platforms on their schools and districts. Breathitt County Schools, and districts across the country, require the support and resources necessary to respond to this unprecedented challenge.

The undersigned hereby certifies their understanding that they owe a primary and overriding duty of candor and professional integrity to help the Court on matters within their expertise and in all submissions to, or testimony before, the Court. The undersigned further certifies that their report and opinions are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

_____
Sharon A. Hoover, Ph.D.
.

44

**Exhibit A**

**Additional Materials Considered**

Prior Opening Report dated May 18, 2025 and all documents cited therein, including Exhibit B.

**Breathitt Documents**

| Bates |
|---|
| BREATHITT00003364 |
| BREATHITT00008635 |
| BREATHITT00009117 |
| BREATHITT00013322 |
| BREATHITT00013859 |
| BREATHITT00014570 |
| BREATHITT00014634 |
| BREATHITT00019362 |
| BREATHITT00019620 |
| BREATHITT00020403 |
| BREATHITT00023336 |
| BREATHITT00024040 |
| BREATHITT00024041 |
| BREATHITT00024130 |
| BREATHITT00024131 |
| BREATHITT00024132 |
| BREATHITT00024137 |
| BREATHITT00024148 |
| BREATHITT00024149 |
| BREATHITT00024150 |
| BREATHITT00024154 |
| BREATHITT00024155 |
| BREATHITT00024156 |
| BREATHITT00024483 |
| BREATHITT00024486 |
| BREATHITT00024501 |
| BREATHITT00024502 |
| BREATHITT00024503 |
| BREATHITT00024510 |
| BREATHITT00024511 |
| BREATHITT00024513 |
| BREATHITT00024515 |
| BREATHITT00024517 |

45

| Bates |
| --- |
| BREATHITT00025075 |
| BREATHITT00025084 |
| BREATHITT00025089 |
| BREATHITT00025090 |
| BREATHITT00025291 |
| BREATHITT00025300 |
| BREATHITT00025303 |
| BREATHITT00025307 |
| BREATHITT00027164 |
| BREATHITT00027167 |
| BREATHITT00030124 |
| BREATHITT00031780 |
| BREATHITT00032814 |
| BREATHITT00033655 |
| BREATHITT00033900 |
| BREATHITT00041998 |
| BREATHITT00043893 |
| BREATHITT00051330 |
| BREATHITT00084312 |
| BREATHITT00084315 |
| BREATHITT00084316 |
| BREATHITT00084719 |
| BREATHITT00084804 |
| BREATHITT00125419 |
| BREATHITT00125426 |
| BREATHITT00125433 |
| BREATHITT00125434 |
| BREATHITT00125441 |
| BREATHITT00125442 |
| BREATHITT00125449 |
| BREATHITT00125450 |
| BREATHITT00125457 |
| BREATHITT00125458 |
| BREATHITT00125465 |
| BREATHITT00125466 |
| BREATHITT00125473 |
| BREATHITT00125474 |
| BREATHITT00125481 |
| BREATHITT00125482 |
| BREATHITT00125489 |

| Bates |
|---|
| BREATHITT00125490 |
| BREATHITT00125497 |
| BREATHITT00125498 |
| BREATHITT00125505 |
| BREATHITT00125506 |
| BREATHITT00125513 |
| BREATHITT00138133 |
| BREATHITT00151339 |
| BREATHITT00152401 |
| BREATHITT00152405 |
| BREATHITT00152713 |
| BREATHITT00152750 |
| BREATHITT00165982 |
| BREATHITT00170070 |
| BREATHITT00172014 |
| BREATHITT00176680 |
| BREATHITT00176712 |
| BREATHITT00177815 |
| BREATHITT00192517 |
| BREATHITT00193150 |
| BREATHITT00196071 |
| BREATHITT00213955 |
| BREATHITT00214250 |
| BREATHITT00214250 |
| BREATHITT00214251 |
| BREATHITT00214252 |
| BREATHITT00214253 |
| BREATHITT00214254 |
| BREATHITT00214256 |
| BREATHITT00214255 |
| BREATHITT00216429 |
| BREATHITT00219283 |
| BREATHITT00219350 |
| BREATHITT00221054 |
| BREATHITT00223314 |
| BREATHITT00223349 |
| BREATHITT00223452 |
| BREATHITT00231466 |
| BREATHITT00231619 |
| BREATHITT00249469 |

| Bates |
|---|
| BREATHITT00250356 |
| BREATHITT00268321 |
| BREATHITT00285452 |
| BREATHITT00290534 |
| BREATHITT00296273 |
| BREATHITT00305952 |
| BREATHITT00316615 |
| BREATHITT00318470 |
| BREATHITT00326164 |
| BREATHITT00333699 |
| BREATHITT00349091 |
| BREATHITT00350796 |
| BREATHITT00351364 |
| BREATHITT00352409 |
| BREATHITT00357378 |
| BREATHITT00358022 |
| BREATHITT00358659 |
| BREATHITT00360655 |
| BREATHITT00361268 |
| BREATHITT00365425 |
| BREATHITT00366004 |
| BREATHITT00368802 |
| BREATHITT00369795 |
| BREATHITT00370360 |
| BREATHITT00398016 |
| BREATHITT00403376 |
| BREATHITT00404863 |
| BREATHITT00412559 |
| BREATHITT00431051 |
| BREATHITT00432484 |
| BREATHITT00433321 |
| BREATHITT00433324 |
| BREATHITT00433326 |
| BREATHITT00433328 |
| BREATHITT00433330 |
| BREATHITT00433502 |
| BREATHITT00433913 |
| BREATHITT00433918 |
| BREATHITT00433920 |
| BREATHITT00433932 |

| Bates |
|---|
| BREATHITT00433938 |
| BREATHITT00433944 |
| BREATHITT00433949 |
| BREATHITT00433951 |
| BREATHITT00434342 |

**Articles and Studies**

| |
|---|
| Bryant-Stephens, T. (2009). Asthma disparities in urban environments. *Journal of Allergy and Clinical Immunology*, *123*(6), 1199-1206. |
| *Chronic Absenteeism: 2017-2024*, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods"). |
| Costello, E. J., He, J. P., Sampson, N. A., Kessler, R. C., & Merikangas, K. R. (2014). Services for adolescents with psychiatric disorders: 12-month data from the National Comorbidity Survey–Adolescent. *Psychiatric services*, *65*(3), |
| Durlak, J. A., Weissberg, R. P., Dymnicki, A. B., Taylor, R. D., & Schellinger, K. B. (2011). The impact of enhancing students' social and emotional learning: A meta-analysis of school-based universal interventions. *Child development*, *82*(1) |
| Fazel M, Hoagwood K, Stephan S, Ford T. Mental health interventions in schools in high-income countries. Lancet Psychiatry. 2014 |
| Forman, S. G., Olin, S. S., Hoagwood, K. E., Crowe, M., & Saka, N. (2009). Evidence-based interventions in schools: Developers' views of implementation barriers and facilitators. School Mental Health, 1(1), |
| Forman, S. G., Shapiro, E. S., Codding, R. S., Gonzales, J. E., Reddy, L. A., Rosenfield, S. A., & Stoiber, K. C. (2013). Implementation science and school psychology. *School Psychology Quarterly*, *28*(2) |
| Green, J. G., McLaughlin, K. A., Alegría, M., Costello, E. J., Gruber, M. J., Hoagwood, K., ... & Kessler, R. C. (2013). School mental health resources and adolescent mental health service use. *Journal of the American Academy of Child & Adolescent Psychiatry*, *52*(5) |
| Hoagwood, K., Atkins, M., & Ialongo, N. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. *Administration and Policy in Mental Health and Mental Health Services Research*, *40*(6) |
| Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1) |
| Murthy, V. (2023). Social Media and Youth Mental Health: The US Surgeon General's Advisory; 2023 |
| Nesi, J. (2020). The impact of social media on youth mental health: challenges and opportunities. *North Carolina medical journal*, *81*(2) |
| Nesi, J., Telzer, E. H., & Prinstein, M. J. (2020). Adolescent development in the digital media context. *Psychological Inquiry*, *31*(3) |
| Reback, R. (2010). Schools' mental health services and young children's emotions, behavior, and learning. *Journal of Policy Analysis and Management*, *29*(4) |

| Spoth, R. L., Guyll, M., & Day, S. X. (2002). Universal family-focused interventions in alcohol-use disorder prevention: cost-effectiveness and cost-benefit analyses of two interventions. *Journal of studies on alcohol*, *63*(2) |
| --- |
| Twenge, J. M., & Campbell, W. K. (2019). Media use is linked to lower psychological well-being: Evidence from three datasets. *Psychiatric Quarterly*, *90*(2) |

### Litigation Documents

| |
| --- |
| 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D. |
| 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Breathitt County Board of Education |
| 2025.07.11 Expert Report of Dr. Stephen J. Aguilar for Breathitt County Board of Education |
| 2025.07.11 Expert Report of Ethan L. Hutt for Breathitt County Board of Education |
| 2025.07.11 Expert Report of Robert G. Nelson Ed.D. for Breathitt County Board of Education |
| 2025.07.11 Expert Report of Darius Lakdawalla, PhD. For Breathitt County Board of Education |
| 2025.07.30 Rebuttal Report of Dimitri Christakis, M.D., M.P.H. |
| 2025.07.30 Rebuttal Report of Dr. Ramin Mojtabai, M.D., Ph.D., MPH |
| 2025.07.30 Rebuttal Report of Eva Telzer, Ph.D. |
| 2025.07.30 Rebuttal Report of Anna Lembke, M.D. |
| 2025.07.30 Rebuttal Report of Dr. Jean M. Twenge, Ph.D. |
| 2025.07.30 Rebuttal Report of Gary Goldfield, Ph.D. |
| 2025.05.19 Expert Report of Douglas L. Leslie, Ph.D. for Breathitt County Board of Education |
| 2025.06.20 Amended Expert Report of Douglas L. Leslie, Ph.D. for Breathitt County Board of Education |
| Deposition of Hannah Watts 30(b)(1), March 12, 2025, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation (MDL 3047), Transcript and Exhibits |
| Deposition of Hannah Watts 30(b)(6), March 12, 2025, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation (MDL 3047), Transcript and Exhibits |
| Deposition of Phillip Watts 30(b)(6), April 22, 2025, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation (MDL 3047), Transcript and Exhibits |
| Deposition of Phillip Watts 30(b)(1), April 22, 2025, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation (MDL 3047), Transcript and Exhibits |