**Exhibit 88**

# SCHOOL DISTRICT/LOCAL GOVERNMENT ENTITY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF SCHOOL DISTRICT EXPERTS

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

**Rebuttal Report of**

**Dr. Sharon A. Hoover, PhD**

**for Charleston County School District**

**August 1, 2025**

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**Table of Contents**

I.    Executive Summary of Expert Opinions ................................................................. 1

II.   Responses to Defendants' Expert Opinions ........................................................... 2

    A.   Response to Wildermuth ................................................................................ 2

        1.   Response to Wildermuth Opinion 1: My Reliance on Sources of CCSD-Specific Data is Well-Founded and Consistent with the Standards Employed in My Field .............................................................. 2

        2.   Response to Wildermuth Opinion 2: The Existence of Mental Health Resources and Initiatives Does Not Preclude Strategic Planning to Enhance and Supplement Those Resources and Initiatives .......................... 6

        3.   Response to Wildermuth Opinion 3: CCSD County's Prior Staffing and Resource Levels Do Not Dispel Need for Improvement ..................... 10

        4.   Response to Wildermuth Opinion 4: Every School District Faces Unique Challenges, But These Do Not Reduce the Unique Challenges of Social Media ............................................................................. 14

        5.   Response to Wildermuth Opinion 5: Strategic Plan for CCSD Makes Appropriate Recommendations that Would be Effective and Feasible ..... 17

    B.   Response to Hutt ......................................................................................... 17

        1.   Summary of Response to Hutt Opinions 1-3 ............................................... 17

        2.   Response to CCSD-Specific Claims in Hutt's Report ................................ 18

        3.   Concerns Regarding Dr. Hutt's Analytical Qualifications and Methods .. 19

        4.   Clarifying My Use of Evidence ................................................................... 20

        5.   Conclusion regarding Dr. Hutt's CCSD Opinions ..................................... 21

    C.   Response to Aguilar ..................................................................................... 21

        1.   General Response to Opinions 1-6 .............................................................. 21

        2.   Rebuttal to District-Specific Opinions in Exhibit A (CCSD) .................... 22

        3.   Conclusion regarding Dr. Aguilar's CCSD Opinions ................................ 24

    D.   Response to Lakdawalla ............................................................................... 24

        1.   Lakdawalla Opinion 1 ................................................................................ 24

        2.   Lakdawalla Opinion 2 ................................................................................ 27

        3.   Lakdawalla Opinion 3 ................................................................................ 29

        4.   Lakdawalla Opinion 4 ................................................................................ 31

        5.   Lakdawalla Opinion 5 ................................................................................ 32

    E.   Response to Nelson ....................................................................................... 35

        1.   Nelson Opinion 2 ........................................................................................ 35

2.      Nelson Opinion 3 ............................................................................................. 37

3.      Nelson Opinion 4 ............................................................................................. 40

III.    Conclusion ...................................................................................................................... 43

## I.     Executive Summary of Expert Opinions

1.   The opinions summarized below are offered in response to the district-specific rebuttal reports submitted by Dr. Diana Wildermuth, Dr. Ethan Hutt, Dr. Stephen Aguilar, Dr. Darius Lakdawalla, and Dr. Robert Nelson. These opinions are informed by my review of each expert's Charleston County School District ("CCSD")-specific rebuttal report, interviews with CCSD personnel, internal district documentation, and the broader research base on youth mental health and school-based supports. They are grounded in my expertise as a national leader in school mental health and implementation science, with over 25 years of experience supporting the development and evaluation of comprehensive school mental health systems.

2.   **Opinion 1: CCSD educators report significant school-based harms related to student social media use, including attention dysregulation, emotional distress, peer conflict, and increased need for staff intervention, that are not adequately captured in administrative datasets.**
These observations align with national data, published research, and the findings of other Plaintiff experts. The absence of direct references to social media in current CCSD documentation does not negate the reality of these harms, which were consistently described by district leaders and staff.

3.   **Opinion 2: Existing CCSD resources are insufficient to address the scale and nature of social media harms.**
While the district has made important investments in behavioral health and digital citizenship, these efforts remain fragmented and were not designed to respond to the novel and pervasive harms caused by social media use. My recommendations are targeted, additive, and aligned with the district's MTSS structure.

4.   **Opinion 3: Current staffing levels for school mental health professionals in CCSD cannot meet the additional demands introduced by social media harms**.
My recommendations for new district- and school-level positions are based on implementation science principles, educator-reported needs, and professional association benchmarks. These roles are not duplicative but essential to building sustainable internal capacity.

5.   **Opinion 4: My strategic plan considers and builds upon CCSD's existing strengths while addressing new, externally imposed social media challenges**.
It does not duplicate current programs, but enhances the district's infrastructure through coordinated leadership, expanded Tier 1-3 services, professional development, and data improvement efforts. This plan reflects well-established MTSS practices and responds to gaps in ability to address social media harms identified through district interviews and document review.

6.   **Opinion 5: The 15-year phased timeline in my plan is grounded in precedent from other large-scale behavioral health interventions and reflects the complexity of addressing population-level harms introduced by social media platforms**.
This is not a short-term problem, and the plan's duration allows for capacity building, adaptation, sustainability planning, and evaluation, consistent with models used in tobacco control, obesity prevention, and trauma-informed school transformation.

7.  **Opinion 6: Critiques that my plan fails to account for existing staff or alternative strategies like contractors misrepresent both my analysis and the realities of school system implementation**.
    Contractors may serve a short-term role but cannot replace sustainable internal staffing. My plan appropriately considers CCSD's current staffing and infrastructure, while proposing realistic additions needed to address social media harms.

8.  **Opinion 7: While the cost modeling in the CCSD plan was conducted by Dr. Leslie, the scope and design of the plan are my responsibility**.
    My recommendations are rooted in real-world implementation science and reflect feasible, proportionate strategies given the scale of social media harms faced by CCSD, including as described by CCSD educators. I reject the characterization of the plan as inflated or unsupported.

9.  **Opinion 8: My role was not to isolate causal variance through econometric modeling, but to synthesize educator input, review CCSD services and needs, review relevant literature, and design a school-based plan responsive to harms already observed**.
    Public health and implementation science do not require singular causality to prompt action, especially when harms are widespread, emergent, and significantly disrupt core school functions as social media harms do.

10. **Opinion 9: District-level quantitative data alone cannot fully capture the scope of social media harms.**
    As noted in my CCSD-specific report, many of these harms are informally managed by educators, underreported, or not tracked at all. Structured interviews, triangulated with broader research findings, are critical to understanding the full picture of school-based impact.[1]

11. **Opinion 10: Claims that social media has not harmed CCSD because it has not budgeted for such harms are misguided.**
    The absence of formal documentation or budget lines should not be mistaken for absence of harm. Requiring a formal documented response to new challenges misunderstands how school districts operate in real time responding to crises, particularly when such challenges are evolving rapidly or difficult to quantify. Lack of formal documentation does not negate the real harms CCSD is facing due to social media or the need for a systemic, holistic approach to address those harms.

## II.    Responses to Defendants' Expert Opinions

### A.    Response to Wildermuth

#### 1.    Response to Wildermuth Opinion 1: My Reliance on Sources of CCSD-Specific Data is Well-Founded and Consistent with the Standards Employed in My Field

12. Dr. Wildermuth's assertion that my strategic recommendations for CCSD are unsupported because they purportedly reflect characterizations from anonymous

---

[1] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 11-13, ¶¶ 52-57).

informants and do not rely on CCSD-specific data[2] mischaracterizes both my process and the appropriate use of data in applied school mental health consultation. I offer the following response:

13.    Contrary to Dr. Wildermuth's assertion, I reviewed and considered CCSD-specific data and, indeed, my report explicitly references CCSD data, including disciplinary incidents, the number of students receiving services, mental health service usage, discipline trends, and interviews with key informants.[3] All of this information and my interpretation thereof, including analysis of its limitations, reinforces the need for a proactive, multi-tiered strategy to address harms from social media faced by CCSD.

14.    My standard practice when working with school districts is to review available district- and school-level data, while recognizing that such data sometimes inaccurately represents or only scratches the surface of what is actually happening with respect to student mental health, service delivery gaps, and disruption of school climate and functioning.[4] Data systems often fail to capture social media harms such as emotional dysregulation, compulsive social media use, peer contagion, and cyberbullying.[5] Even in a large district, such as CCSD, with a recently updated Progressive Discipline Plan and a largely centralized disciplinary database, de-identified student data is often unlikely to reflect such nuances.[6] However, CCSD does capture cyberbullying as a defined infraction and has done so for the last several years.[7] CCSD continues to work toward tracking cyberbullying incidents that are reported and investigated but do not lead to a discipline referral.[8] In addition, the key informants reported data in accord with CCSD-specific data I reviewed. For instance, I was told that there had been a 250% increase in referrals for school mental health support over the past 6 years.[9] This dramatic increase was confirmed by data produced by CCSD that I reviewed and considered.[10]

---

[2] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 6-8, ¶¶ 33-37).

[3] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 6-10, ¶¶ 30-51).

[4] Hoagwood, K., Atkins, M., & Ialongo, N. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. *Administration and Policy in Mental Health and Mental Health Services Research*, *40*(6), 451-455.

[5] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 3, ¶ 9).

[6] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 3, ¶ 9).

[7] 30(b)(6) Deposition of Shavonna Coakley, 172:21-173:16 (Apr. 1, 2025).

[8] 30(b)(6) Deposition of Lisa Allison, 74:17-76:17 (Apr. 3, 2025).

[9] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (p. 10, ¶ 50).

[10] MR_CCSD_003487 (referenced in Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) [CCSD] as

15.    Key informant interviews are a standard, valid source of ground-level insight.[11] My opinions are not based *only* on interviews, but these interviews are a critical, intentionally weighted component of my standard school mental health evaluation process. In CCSD, these interviews were conducted with selected district leaders and staff who possess deep knowledge of the district's service array, staffing capacity, and the day-to-day experiences and needs of students and educators. Conducting structured interviews with such key informants is standard practice in school mental health and public health research, particularly when assessing system capacity and emergent risk factors. Especially in the context of limited or lagging district data systems, key informants provide essential insight into emerging problems that may not yet be formally tracked. This approach is used consistently in every district for which I have been asked to develop a strategic plan for comprehensive school mental health improvement. Across dozens of school districts nationwide, I speak directly with district and school leaders, educators, and student support professionals to understand local strengths and identify service and infrastructure gaps in order to inform and support quality improvement. CCSD informants' insights provided site-specific accounts of:

   – Classroom disruptions and distractions.

   – Students expressing distress over not being able to check their social media accounts;

   – An increase of 250% in referrals for school mental health supports over the past six years; and

   – A 30% increase of students on medical homebound compared to years past.[12]

16.    These insights, which were consistent across informants and converge with national data on social media harms, provided part of the foundation for my district-specific plan. In implementation science, such practice-based evidence is a necessary complement to traditional data sources.[13]

17.    Consistent with the standard practices in my field, I do not attribute specific quotations to named individuals. This is intentional and standard practice in school consultation and qualitative research. Anonymity helps ensure candor and protects respondents from fear of potential repercussions, especially when they are discussing district challenges. That said, I did provide the list of informants for each district, including CCSD, upon defense counsel's request, and the names were therefore available for Defendants' experts to

---

"Dashboard – Students Receiving Services"; reflects increase in students receiving direct mental health services between 2016 [950] and 2023 [3,293] of more than 246%).

[11] Forman, S. G., Olin, S. S., Hoagwood, K. E., Crowe, M., & Saka, N. (2009). Evidence-based interventions in schools: Developers' views of implementation barriers and facilitators. *School Mental Health*, *1*(1), 26-36.

[12] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[13] Hoagwood, K. E., Atkins, M. S., & Ialongo, N. S. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. Administration and Policy in Mental Health and Mental Health Services Research, 40(6), 451-455.

review. Thus, it is unclear why Dr. Wildermuth refers to the interviewees as "unnamed" in a misguided attempt to discredit my approach. The CCSD interviewees included school support staff and student support professionals, individuals with direct knowledge of social media impacts on CCSD students' mental health and learning and district support service gaps. Dr. Wildermuth's repeated references to "unnamed" sources imply methodological opacity, when in fact my approach, which I use consistently as my standard practice when working with school districts across the country, reflects longstanding norms for psychological consultation in school systems, including practices used in federally-funded needs assessments, including SAMHSA-funded district school mental health evaluations.

18.   Dr. Wildermuth cites The South Carolina Report Card for Charleston for various years, 2017-2018, 2020-2021, and 2023-2024 to highlight that Charleston students consistently performed marginally better than the state average.[14] This fails to address the more salient and immediate issues raised in my report, such as student emotional dysregulation, staff time diverted from instruction, and mounting demands on behavioral supports, all of which were reported by CCSD educators and are documented in my district-specific plan for CCSD.[15]

19.   Dr. Wildermuth also notes the improvement of CCSD's graduation rate during the same period and argues this stability undermines claims of social media harm.[16] The fact is that graduation rates are a blunt instrument and poor proxies for student mental health or classroom climate and functioning. Significantly, my report does not claim that social media use led to a decline in graduation rates. Rather, I identify specific harms (e.g., anxiety, attention problems, peer conflict and other mental health issues) that undermine the learning process, even if students eventually graduate.[17]

20.   A notable inconsistency in Dr. Wildermuth's argument is that she simultaneously criticizes me for not relying on CCSD-specific quantitative data while acknowledging that CCSD does not collect meaningful data on social media use or its impact on schools, school districts and the classroom environment and "has never produced any studies or collected any data on the prevalence of social media among students[.]"[18] It is logically inconsistent to demand quantitative data-driven planning and then dismiss a plan for recognizing and responding to a clear lack of data infrastructure in the school district to track incidents caused by social media. My plan addresses these deficits directly, by recommending not only service expansion, but data system strengthening, staff

---

[14] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp, 8-9, ¶¶ 39-41).

[15] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[16] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 8-9, ¶¶ 38-42).

[17] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-21, ¶¶ 30-84).

[18] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 6, ¶¶ 33-34).

professional development, and implementation science principles for continuous quality improvement.[19] In addition, Dr. Wildermuth assumes my report conflates "screen time" generally with social media.[20] This is a misunderstanding of how these issues manifest in real-world student experiences. The social media platforms at the heart of this litigation are overwhelmingly accessed via personal devices, primarily smartphones, and therefore constitute a significant share of overall screen time among youth. While not all screen time is social media use, a substantial portion of the time students spend on screens is, in fact, devoted to engaging with social media. This includes scrolling, posting, messaging, and consuming videos and peer commentary, activities directly tied to the design features of social media that contribute to dysregulation, sleep disruption, and mental health strain. Attempts to draw rigid distinctions between general screen use and social media use downplay the extent to which these platforms dominate adolescents' digital environments and obscure the practical challenges schools face in addressing their impacts. Furthermore, I distinguish between general screen time and social media use, recommending specific monitoring tools and policies for social media platforms.[21]

21.    In sum, my analysis does not ignore CCSD's data. Indeed, it reflects an informed recognition that the data CCSD collects are incomplete and poorly aligned with the harms at issue in this case. Rather than relying solely on these imperfect data systems, I followed a best-practice, mixed-methods approach and methodology: I reviewed available data, incorporated expert knowledge from key district staff, and developed a tailored, evidence-informed strategy based on patterns I have seen in dozens of districts across the country. To suggest that my recommendations are invalid because they do not hinge on absent or flawed data is to conflate data availability with data sufficiency. CCSD is doing its best to address the issues it is facing due to social media, however, it is not equipped to meet the challenges of new and intensifying mental health, learning and school disruptions introduced by social media platforms.

  2. Response to Wildermuth Opinion 2: The Existence of Mental Health Resources and Initiatives Does Not Preclude Strategic Planning to Enhance and Supplement Those Resources and Initiatives

22.    Dr. Wildermuth is simply wrong when she asserts that my proposed strategic plan for CCSD fails to account for the existing Tier 1, Tier 2, and Tier 3 supports, and that many of my recommendations are duplicative or unnecessary.[22]

23.    I carefully reviewed the existing services and supports at CCSD, including those described in Dr. Wildermuth's report. These included digital literacy efforts,

---

[19] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 12-39, ¶¶ 55-134).

[20] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 7-8, ¶ 36).

[21] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 13-14, ¶ 59).

[22] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 11-19, ¶¶ 51-70).

implementation of policies about social media and technology, a written code of conduct aimed at preventing harassment through social media, etc.[23] None of these existing services negate or reduce the need for the interventions I have proposed. Rather, they highlight a baseline from which CCSD must expand to meet the new and intensifying mental health learning, and school disruptions caused by social media platforms.

24.    The assertion that my recommendations ignore or duplicate existing services misunderstands both their intended role and design. My recommendations are additive, not duplicative. They are targeted toward addressing harms that existing efforts were never designed to address, including those stemming from compulsive platform use. Many of the initiatives currently underway at CCSD, and cited in Dr. Wildermuth's report (e.g., Project Prevent, Second Step, and restorative practices), were developed prior to or independent of the unique dynamics of Defendants' social media platforms.[24] These legacy programs:

-   Do not target the neurologically addictive nature of social media;

-   Do not train students to critically evaluate the intentional engineering of addictive features;

-   Do not engage students in repeated, developmentally responsive discussions about online identity, self-worth, and social comparison;

-   Do not equip staff with the skills to detect or respond to social media-driven mental health issues (e.g., disordered eating trends, viral self-harm challenges, anxiety and other mental health issues).

25.    The current programs may provide a foundation, but they lack the depth, continuity, and social media-specific focus needed to meet the challenges CCSD is facing due to harms from social media platforms.[25] This is why my recommendations include enhanced digital literacy, expanded life skills programming with social media-specific components, staff training on platform impacts, and districtwide leadership roles in digital wellness.

26.    One-time events and generic programs are not a substitute for a strategic, sustained response.[26] CCSD's past efforts to address social media, such as screening Screenagers and hosting a panel of experts on adolescent mental health or implementing general anti-bullying programs, are commendable but episodic and insufficient to address social media harms in a holistic way. Many of these programs were:

---

[23] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 6-11, ¶¶ 30-53).

[24] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 16, ¶¶ 62-63).

[25] Nesi, J., Telzer, E. H., & Prinstein, M. J. (2020). Adolescent development in the digital media context. *Psychological Inquiry*, *31*(3), 229-234.

[26] Durlak, J. A., Weissberg, R. P., Dymnicki, A. B., Taylor, R. D., & Schellinger, K. B. (2011). The impact of enhancing students' social and emotional learning: A meta-analysis of school-based universal interventions. *Child development*, *82*(1), 405-432.

&ndash; One-time events, not embedded curricula;

&ndash; Delivered infrequently or with long gaps between offerings;

&ndash; Broadly focused on general safety or behavior, not the cognitive-emotional toll of persistent social media use.[27]

27. In contrast, my proposed strategic plan for CCSD outlines sustained, multi-year investments across Tiers 1-3. These are not reactionary workshops but systems-level changes in leadership infrastructure, educator training, data use, curriculum integration, and service array—interventions that are simply unavailable to the district absent additional funding. As stated in my general rebuttal and reaffirmed here: this is not a plan for "business-as-usual" student support.[28] Rather, it is a structured, multi-tiered public health response to a new and externally imposed burden on school environments. The interventions I propose are aligned with this distinct harm profile. Even the most robust existing programs in CCSD were not developed to counteract the features of the Defendants' social media platforms that negatively impact student mental health, schools, school districts and the classroom environment, and disrupt learning.[29]

28. Dr. Wildermuth suggests that because CCSD received grants from Project Prevent with a goal of increasing the number of students receiving mental health services, the number of children receiving mental health services is falsely inflated.[30] These grants are neither a complete nor long term solution.

29. Contrary to Dr. Wildermuth's claim, there is nothing in my report that suggests dismantling or disregarding current programs. Quite the opposite, I propose building on them, refining them, and explicitly tailoring them to address the documented and well-researched harms associated with student use of social media.[31] The goal is not to duplicate what exists, but to close gaps and target emergent risks that previous efforts were not designed to address. For example:

&ndash; The implementation of Second Step, Botvin LifeSkills, and Stronger Connections programs used at CCSD are valuable, but insufficient to fully address social media harms without embedded staff capacity to implement programs with fidelity and adapt it to students' lived digital experiences.

---

[27] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 2, 11, 18, ¶¶ 7, 52-53, 75).

[28] E.g., Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 3-10, ¶¶ 13-25).

[29] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 6-7, ¶¶ 30-37).

[30] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 16, ¶¶ 62-63).

[31] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 13-17, ¶¶ 58-72).

- Existing SEL programming should be preserved but must be expanded to include modules that address emotional regulation related to social media, social media-fueled identity pressures, and online relational aggression.

- Assemblies and external speakers should be supplemented by classroom-based, developmentally appropriate conversations and structured follow-ups.

30. Dr. Wildermuth also discusses CCSD's strategic plan as a current initiative to improve the academic, social, emotional, and personal well-being of students while simultaneously acknowledging that there is no indication it was created, based on, or designed to address the effects of social media on CCSD students, the district, or its schools.[32] This recognition highlights the need for an overarching plan to address the impacts of social media.

31. Dr. Wildermuth cites CCSD's policies governing social media for students and staff as unacknowledged in my report.[33] In fact, my interviews with key informants reflect the need for structured professional development to address social media impacts.[34] Provision of professional development focused on social media and implementing polices governing social media goes far beyond what CCSD has already put in place through policies articulated in the CCSD Student Code of Conduct and the "Student Mobile Device Responsible Use Handbook and Agreement" and is necessary to address significant and evolving social media harms.

32. The framing of social media harms as a "trend" already addressed by existing services,[35] minimizes the scale and severity of what educators have described to me in CCSD and across the country. This is not a challenge that can be addressed with piecemeal adjustments. It is a significant harm that requires leadership roles dedicated to digital well-being; staff training that recognizes and responds to the harms of social media; family engagement efforts that provide tools and clarity around managing home technology use; and digital policy coordination that empowers staff and protects students. My plan provides this and does so in a way that aligns with the foundational supports already in place in CCSD. In contrast to Dr. Wildermuth's claim that I did not

---

[32] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 12-13, ¶¶ 52-53).

[33] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 13, ¶ 55).

[34] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[35] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 7, ¶ 35).

acknowledge CCSD's district-wide cellphone ban in January 2025,[36] I reference it in my report and support its continuation and expansion with secure storage solutions.[37]

33.    In sum, I considered the existing services and supports at CCSD, including those described in detail by Dr. Wildermuth. These services provide important groundwork, but do not and were never designed to address the rapidly evolving harms introduced by today's social media platforms. My recommendations are necessary and proportionate responses to a growing external threat to student mental health and learning and school functioning. This strategic plan is additive, not duplicative, and is tailored to reflect public health frameworks that justify additive responses to new risk environments.[38] It leverages the district's strengths and commendable efforts to date while addressing its vulnerabilities, particularly its current gaps in social media harm prevention and mental health response. Finally, Dr. Wildermuth falsely speculates that CCSD cannot implement my proposed plan with fidelity. To suggest that CCSD can adequately respond to these challenges without expanded, social media-specific investments is to underestimate both the nature of the threat of social media harms and to suggest that CCSD cannot implement my plan with fidelity underestimates the resilience of the district to meet these challenges if given the appropriate tools, resources and support.

### 3.    Response to Wildermuth Opinion 3: CCSD County's Prior Staffing and Resource Levels Do Not Dispel Need for Improvement

34.    Dr. Wildermuth is wrong in her assertion that my staffing recommendations for CCSD are "fundamentally flawed" because I purportedly propose a "dramatic increase" in staff, programs, and initiatives in CCSD without regard to CCSD's staffing, resource management, or existing services.[39]

35.    Moreover, Dr. Wildermuth incorrectly states that I apply "the same staffing recommendations to every school district."[40] While the types of roles I recommend, such as school- and district-level leadership positions in key domains like digital literacy, family engagement, and student mental health, are consistent across districts, the numbers of staff and distribution of professional development hours are individualized and

---

[36] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 14, ¶ 57).

[37] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 13-14, ¶ 59).

[38] Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1), 172.

[39] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 19-20, ¶¶ 71-73).

[40] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 17, ¶ 65).

specifically tailored to CCSD based on district and school enrollment size and school configuration.[41]

36.    CCSD's recommended plan specifically reflects:

–    A student population of ~51,166 across 80 schools;

–    Existing gaps in Tier 1-3 supports, particularly in internal capacity for digital wellness and mental health response;

Hiring for 6 dedicated, district-level staff and 1,081 school-building staff.[42]

As detailed in my general report, the roles I recommend represent critical functions,

not luxuries.[43] Their inclusion across districts stems from the consistent nature of harms created by social media platforms, specifically, the way those platforms capture attention and foster compulsive checking and engagement behaviors among adolescents.[44] These behavioral effects are functionally similar across student populations, and thus warrant coordinated leadership in every district, regardless of size. My plan both understands this harm across districts and considers the specific needs of CCSD.

37.    Dr. Wildermuth cites national and state-level shortages of student support professionals as a reason to doubt the feasibility of my staffing recommendations.[45] Critically, Dr. Wildermuth has not actually conducted any analysis to determine whether there are actual staffing shortages in CCSD. While shortages present challenges, they do not negate the need for action. Rather, they underscore the importance of strategic investment in workforce recruitment and development and role specialization, as well as training.

38.    Workforce shortages both nationally and in South Carolina, are not insurmountable. Lack of staffing often reflects funding constraints rather than a lack of qualified professionals. A growing body of evidence supports effective strategies to recruit and retain school-based mental health personnel, including competitive compensation, professional development opportunities, supportive supervision, differentiated roles, and sustainable caseloads. While specific hiring, recruitment, and retention decisions may be tailored to district context, the recommended staffing levels represent the full capacity needed to address the harms of social media. Moreover, as discussed in my general rebuttal report,

---

[41] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 21-39, ¶¶ 85-134).

[42] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 21-39, ¶¶ 85-134).

[43] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 28, ¶ 103).

[44] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-12, ¶¶ 30-52).

[45] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 22-23, ¶ 80).

contrary to claims that the proposed staffing levels are unattainable, current data reflect a steady flow of qualified school mental health professionals entering the field.[46]

39. Just as schools did not forgo hiring nurses during the rise of childhood asthma or health aides during the COVID-19 pandemic, new harms like the persistent impacts of social media use require new staffing solutions. Schools cannot ignore new challenges simply because staffing them will require investment and prioritization.

40. Importantly, the staffing recommendations in my report are *additive*.[47] They are not intended to replace existing personnel but rather to build upon them in a strategic and targeted manner. The national professional ratios were not designed with the harms of social media social media-driven digital engagement in mind. My staffing recommendations are both responsive to CCSD's unique needs (e.g., enrollment size, existing service array, community partnerships), and rooted in established professional guidance, as provided by leading organizations in school mental health and student services.

41. Dr. Wildermuth critiques the scale of my proposed staffing expansion (1,087 new staff) and asserts that I failed to consider feasibility or implementation pathways.[48] In fact, the staffing and cost recommendations I present are not aspirational targets or flexible guidelines; they represent the level of investment and capacity required to adequately address the harms due to social media use in school communities. The proposal is grounded in evidence-based best practices and structured to respond to the full scope of student mental health, learning, and school climate and functioning challenges caused and exacerbated by these harms. While local operational decisions may influence recruitment and retention practices, the recommended staffing model itself is not subject to reduction or dilution. It reflects what is necessary to meet the urgency and magnitude of the problem and should be understood as a direct response to the educational and public health impacts caused by the Defendants' platforms.

42. Dr. Wildermuth notes that CCSD counselors spend 80% of their time in special education meetings, reevaluation reviews, behavior intervention support, manifestation determination reviews, problem solving, and teacher consultation.[49] Even if this were accurate, this represents a common symptom of systemic understaffing and a widespread

---

[46] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 13-14, ¶¶ 47-50).

[47] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (p. 8, ¶¶ 40).

[48] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 19-23, ¶¶ 71-80).

[49] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 23, ¶ 81).

issue nationally.[50] Inadequate staffing leads to role dilution, preventing highly trained professionals from delivering the full range of supports they are qualified to provide.[51]

43.    The appropriate response is not to accept the status quo, but to expand staffing when faced with a new and significant harm like social media, in order to:

– Free existing staff to perform their primary functions;

– Add complementary roles (e.g., peer specialists, family coordinators) to distribute workload;

– Improve fidelity and consistency in service delivery.[52]

This is particularly important when addressing a novel, complex set of challenges like those created by persistent social media use, which impacts student mental health and classroom environments in ways that stretch existing roles beyond capacity.

44.    Dr. Wildermuth argues that, even if CCSD were able to expand its Student Services Professionals and counseling programming, such resources would be susceptible to diversion for the purpose of fulfilling CCSD's needs in other areas unrelated to mental health concerns related to social media.[53] The risk of diversion is not a reason to delay implementation of the staffing and supports I recommend for CCSD. My recommendations for additional staffing in CCSD are evidence-based and proportionate to the scope of harm introduced by social media platforms.[54] They are not generic or duplicative; they are tailored to the district's size, structure, and documented gaps in Tier 1-3 supports.[55] The claim that these recommendations are unreasonable due to shortages or past mismanagement is misguided. In fact, the very limitations cited (*e.g.*, constrained capacity, underfunding, diverted roles) reinforce the urgency for targeted investment to support students and schools in the face of a new and intensifying challenge.

---

[50] Reback, R. (2010). Schools' mental health services and young children's emotions, behavior, and learning. *Journal of Policy Analysis and Management*, *29*(4), 698-725.

[51] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 17-18, ¶¶ 73-76).

[52] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 17-18, ¶¶ 73-76).

[53] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 23, ¶ 81).

[54] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 21-39, ¶¶ 85-134).

[55] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 21-39, ¶¶ 85-134).

### 4. Response to Wildermuth Opinion 4: Every School District Faces Unique Challenges, But These Do Not Reduce the Unique Challenges of Social Media

45. Dr. Wildermuth asserts that my recommendations fail to account for "significant issues" facing CCSD, including community violence, the Covid-19 pandemic, racial injustice, and poverty.[56] I disagree. I considered and understood these issues and my strategic plan accounts for them.

46. First, it is important to note that every school district I have evaluated operates in a unique and complex ecosystem. CCSD's challenges with poverty, violence, and staffing shortages are not exceptional. They are shared by many large, diverse school districts across the country, including those with high mental health burdens and limited capacity to respond to emergent student and school needs due to social media.[57] I considered and understood these issues when drafting my reports, and my strategic plan accounts for them.

47. Far from ignoring these contextual factors, my approach to evaluation and strategic planning assumes the presence of overlapping structural challenges, and is specifically designed to address the ways that new harms, like those stemming from social media platforms, interact with, and exacerbate, existing vulnerabilities in the school environment.

48. In drafting my general report, I considered and understood that student mental health is influenced by multiple and interrelated factors, including family adversity, trauma, poverty, and pandemic-related disruptions. My strategic plan accounts for these factors. However, the rise and widespread use of social media platforms has introduced a new and externally imposed source of harm that is distinct and significant in scope, mechanism, and impact. This harm is:

   – Pervasive, affecting nearly every student daily;

   – New, significant and distinct and compounding, as it amplifies other risks and stressors;

   – Unique, in that it stems from platform features that promote compulsive engagement and social comparison, not simply from student behavior or school conditions.[58]

Accordingly, this new category of harm requires a proportionate and tailored response. My strategic plan is designed to complement existing efforts to address other mental health drivers while filling a critical gap in district capacity to respond to harms caused by social media platform use.

---

[56] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 23-25, ¶¶ 82-87).

[57] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 20-21, 35-36, ¶¶ 83, 120-126).

[58] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-21, ¶¶ 30-84).

49. Dr. Wildermuth argues that students living in poverty will limit the district's ability to implement new interventions.[59] While challenges exist, they are hardly a reason to reject or delay new supports. Based on my understanding and consideration, I developed my plan based in part on the fact that students living in poverty are at heightened risk for:

– Mental health challenges such as anxiety, depression, and trauma exposure;

– Limited access to clinical care outside of school;

– High digital device usage;

– Exposure to peer dynamics and engagement patterns on social media platforms that intensify distress.

50. Given these risks, the need for robust, school-based mental health infrastructure is amplified, not diminished, at CCSD. The strategic plan I propose is designed to strengthen internal capacity where community infrastructure may be limited, and to bring evidence-based systems of prevention and early intervention for social media harms into CCSD schools, where its students spend the majority of their time.

51. Social media platforms encourage compulsive checking, emotional dysregulation, and disrupted sleep patterns, all of which interfere with students' ability to engage in sustained learning and maintain peer and adult relationships.[60] These effects are not just theoretical; they have been documented in national data and described by CCSD staff during interviews as contributing to increased peer conflict and emotional volatility; classroom distractions and behavioral incidents stemming from online activity; and difficulty sustaining attention, particularly in social media-rich environments.[61]

52. My plan responds to these issues through:

– Enhanced Tier 1 life skills programming that addresses self-regulation related to student use of social media;

– Staff training in identifying and addressing social media-related student distress;

– School-wide approaches to disruption and strengthening pro-social behavior.

Far from overlooking student engagement, my recommendations reflect an understanding that student mental health and engagement are now deeply intertwined with student use of social media.

---

[59] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (p. 25, ¶¶ 86-87).

[60] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-14, ¶¶ 30-62).

[61] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-14, ¶¶ 30-62); Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

53.     Dr. Wildermuth references an increase in social and racial injustice as exacerbating the mental health needs of CCSD students.[62] Even if accurate, such history is not uncommon in districts serving historically marginalized or under-resourced communities, and should not be used to dismiss the feasibility, or necessity, of forward-looking planning. The strategic plan I propose includes:

  – Clear leadership roles for digital wellness and mental health;

  – Professional development to build staff capacity and restore systems of support;

  – Data tracking systems that promote transparency and accountability.[63]

54.     These are precisely the types of structures that can mitigate the long-term effects of past instability. The existence of other challenges should not serve as an argument against strategic planning; it should underscore the need for structured, evidence-based implementation supported by external resources and technical assistance for CCSD.

55.     Dr. Wildermuth's argument seems to rest on a false dichotomy: that districts can either address social media harms or address broader structural and contextual challenges, but not both. In reality, complex school environments require layered, integrated strategies that can address both emergent and longstanding issues simultaneously.

56.     The plan I offer does not attempt to solve every systemic barrier facing CCSD. It does, however, offer a targeted response to a clearly defined and newly imposed category of significant harm, grounded in public health frameworks and informed by best practices in school mental health. This type of layered, domain-specific planning is standard in addressing complex youth health and education challenges, including tobacco use, obesity, trauma exposure, and now, mental health risks caused by social media.[64]

57.     My strategic recommendations for CCSD do not ignore the district's overarching challenges. Students in CCSD face multiple, overlapping risk factors that increase their vulnerability to social media harms, and decrease the likelihood that those harms will be identified and addressed without a coordinated, districtwide response. Those factors are not reasons to reject new supports; The plan I offer will help CCSD properly respond to the harms created by social media platforms and evolve using the best available science and a deep respect for the real-world constraints in which educators operate.

---

[62] 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District, (pp. 24-25, ¶ 85).

[63] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 12-42, ¶¶ 55-151).

[64] Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1), 172.

### 5. Response to Wildermuth Opinion 5: Strategic Plan for CCSD Makes Appropriate Recommendations that Would be Effective and Feasible

58.    As discussed above and in my May 16 and May 18 reports,[65] my strategic plan for CCSD is properly grounded in scientific literature on youth mental health and school-based supports and my strategic plan is grounded in my expertise as a national leader in school mental health and implementation science, with over 25 years of experience advising state and local education agencies on the development, expansion, and evaluation of comprehensive school mental health systems. My strategic plan outlined in my initial report, appropriately proposes a 15-year, multi-tiered public health framework that is necessary to mitigate the substantial harms caused by students' use of social media platforms. For all of the reasons discussed above, none of Dr. Wildermuth's criticisms undermine the foundation and basis for my plan and her opinion that the strategic plan for CCSD is unnecessary, unlikely to be effective, and/or, in some cases, infeasible is unsupported.

## B.    Response to Hutt

59.    Dr. Hutt's report for CCSD is substantively identical to his general report and those submitted for other bellwether school districts, except for a small number of paragraphs where he references data specific to CCSD.[66] These district-specific claims do not meaningfully engage with the context or analysis in my CCSD strategic plan and are based on cherry-picked observations that lack methodological rigor. Below, I summarize my general response to Dr. Hutt's core opinions and respond directly to the additional points he raises in the CCSD context.

### 1. Summary of Response to Hutt Opinions 1-3

60.    As described in my July 30, 2025 general rebuttal report,[67] I offered the following responses to Dr. Hutt's general claims:

61.    On the charge of "educationalization":[68] My strategic plan is a public health response to a new, external harm, not an attempt to shift societal burdens onto schools. Schools have long adapted to emerging threats to student well-being and proper school functioning. The harms from social media platform use, including attention dysregulation, peer conflict, sleep disruption, and emotional distress, are discrete, observable challenges occurring during the school day and undermining the learning environment and school functioning. School systems are not being asked to "solve" social media; they are being equipped to respond to its impact on their school districts.

---

[65] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025; Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025).

[66] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Charleston County School District, (pp. 80-82, 95, ¶¶ 145-150, 167).

[67] Rebuttal Report of Sharon A. Hoover, PhD dated July 30, 2025, (pp. 34-41, ¶¶ 127-155).

[68] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 32-33, ¶ 70).

62. On contextualizing achievement and behavioral trends:[69] I understand and considered that student mental health and academic engagement are shaped by multiple factors, including poverty, trauma, family functioning, and COVID-19. I considered and understood these issues and my strategic plan accounts for them. None of these challenges negate the significant role of social media, which constitutes a distinct and increasingly dominant challenge to the school environment and school functioning. My analysis reflects this broader context, as does the layered, multi-tiered approach I propose.

63. On interpreting test scores and academic data:[70] Unlike Dr. Hutt, I do not rely on academic achievement scores as the primary indicator of social media harm. As explained in my general and district-specific reports, harms manifest in ways that are often under-documented in test scores, such as student dysregulation, classroom disruption, strained peer and adult relationships, and increased need for counseling and behavioral support.

### 2.    Response to CCSD-Specific Claims in Hutt's Report

64. While most of Dr. Hutt's analysis is district-agnostic, he raises some points specific to CCSD. Each is addressed below:

65. Dr. Hutt notes that CCSD's 8th grade proficiency rates in Math and English Language Arts remained relatively stable during the rise of social media use and argues this stability undermines claims of social media harm.[71] This claim fails to address the more salient and immediate issues raised in my report, such as student emotional dysregulation, staff time diverted from instruction, and mounting demands on behavioral supports, all of which were reported by CCSD educators and are documented in my district-specific plan for CCSD.[72]

66. Dr. Hutt notes that CCSD's graduation rate improved substantially during the rise of social media use and argues this stability undermines claims of social media harm. As I explain in my response to Dr. Wildermuth's rebuttal above:

   – Graduation rates are a blunt instrument and poor proxies for student mental health or classroom climate and functioning;

   – Schools often work extremely hard to help students graduate, even when they are struggling socially and emotionally;

   – My report does not claim that social media use led to a decline in graduation rates.

---

[69] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 80-85, ¶¶ 145-152).

[70] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 73-84, ¶¶ 136-151).

[71] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Charleston County School District, (p. 81, ¶ 149).

[72] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-39, ¶¶ 48-134).

&ndash;   Rather, I identify specific harms (e.g., anxiety, attention problems, peer conflict and other mental health issues) that undermine the learning process, even if students eventually graduate.[73]

67. Dr. Hutt highlights that CCSD's chronic absenteeism rose from single digits in 2019 to 17% in 2022.[74] He argues this change spans grade levels and therefore cannot be tied to social media, framing absenteeism as part of a "cultural shift related to beliefs about the importance of attending school or the harm in missing school[.]"[75] Dr. Hutt's opinions are unsupported generally and:

&ndash;   This claim is unsupported by any detailed breakdown by age or grade;

&ndash;   The data source (Return to Learn) admits it merges different data sources, which may not be methodologically comparable;[76]

&ndash;   The figure cited, an overall district absenteeism rate, cannot support Dr. Hutt's suggestion that the rise is too broad to implicate social media, since he does not analyze differences by grade, digital access, or device use; and

&ndash;   Dr. Hutt offers no evidence to support the alternative "cultural shift" explanation, and provides no mechanism, data, or empirical citations to support his assertion and as such no underlying methodology to support his claims.

68. Dr. Hutt's conclusions discount or ignore the experience of CCSD's student support professionals and school support staff, none of whom he has interviewed, and who are on the frontlines of combating the harms caused by student social media use.[77]

### 3. Concerns Regarding Dr. Hutt's Analytical Qualifications and Methods

69. Dr. Hutt's rebuttal does not reflect a strong grounding in the social science methods necessary for causal inference or implementation-focused evaluation.[78] His analysis lacks the methodological rigor typically required in public health and implementation science, which limits the applicability of his critique to the type of strategic, systems-level planning at the core of my report.[79] Specifically:

---

[73] *See supra* Section II.A.

[74] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Charleston County School District, (p. 95, ¶ 167).

[75] 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Charleston County School District, (p. 95, ¶ 167).

[76] *Chronic Absenteeism: 2017-2024*, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods").

[77] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (p. 10, ¶ 51) ("Leaders report social media also contributes to 'truancy and absenteeism'").

[78] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 3-4, ¶¶ 13-15).

[79] 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D., (pp. 2-3, ¶¶ 6-12).

19

- His "analysis" consists of plotting raw data on a line chart and visually interpreting trends.

- He conducts no statistical testing or control for confounding variables, yet draws sweeping conclusions.

- His use of 8th grade standardized test scores is unsupported by any empirical rationale. He suggests that students "may" be using social media by then, but offers no age-based data to substantiate this choice. It appears the 8th grade was selected simply because it was the latest grade available.

- Dr. Hutt references the Return to Learn absenteeism estimates despite the creators' own warnings that (1) the data are inconsistent across states, and (2) the rates are generated by combining distinct and methodologically incompatible data sources.[80] Further, the data is reported only at the district level. As such, these estimates are inadequate to support the fine-grained claims he makes about CCSD school-specific outcomes or subgroup-level effects.

70.    Ultimately, none of Dr. Hutt's analysis changes my opinions, which are grounded in:

- Over 25 years of experience in school mental health, prevention science, policy evaluation and implementation frameworks;

- Review of district-specific data;

- Direct interviews with school personnel familiar with local trends;

- Application of public health and multi-tiered systems of support (MTSS) frameworks tailored to the unique demands posed by social media-related harm;

- Triangulation of quantitative trends with qualitative data from CCSD staff, peer-reviewed literature, and evidence from national surveys.

71.    Together, these elements provide a far more methodologically sound and contextually grounded basis for the recommendations I offer. Dr. Hutt's reliance on partial data and unsupported inferences does not meet the evidentiary standard required for district-level causal assessment or strategic planning.

### 4.    Clarifying My Use of Evidence

72.    Dr. Hutt mischaracterizes my analytic approach. My conclusions are not based on trends in test scores or academic performance metrics. Those are his chosen metrics, the use of which is not justified as described above. Instead, they are grounded in:

- Consistent educator reports of student dysregulation, inattention, and peer conflict across CCSD schools;

- Observable behavioral shifts linked to increased student engagement with digital devices and social media platforms;

---

[80] *Chronic Absenteeism: 2017-2024*, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods").

– Documented gaps in mental health staffing, disruptions to school function and climate, and the diversion of educator time and attention toward managing technology-related challenges, none of which are captured in standardized testing data.

73. The harms I identify are immediate and impactful in their own right. Whether or not certain academic achievement trends reflect these harms, they are clearly documented by staff and supported by national research.

### 5.    Conclusion regarding Dr. Hutt's CCSD Opinions

74. Dr. Hutt's CCSD County report is largely derivative of his general report and demonstrates limited engagement with CCSD specific context, student needs, or reported school-based challenges. His district-specific assertions rely on speculative interpretations of limited data and untested assumptions, offered without rigorous analysis or methodological transparency. In contrast, my recommendations are rooted in direct input from CCSD educators, aligned with established public health and school mental health frameworks, and guided by implementation science. CCSD requires a response that addresses the real and documented challenges facing its students, not a generalized dismissal unsupported by meaningful local analysis.

### C.    Response to Aguilar

### 1.    General Response to Opinions 1-6

75. Dr. Aguilar's rebuttal for CCSD is identical to his general rebuttal report, with no reference to CCSD-specific evidence with the exception of Exhibit A. Therefore, I refer to my July 30, 2025, General Rebuttal Report, in which I respond in detail to each of Dr. Aguilar's core opinions. My response to his general opinions are summarized as follows.

76. Opinion 1: While some regulated social media use may have limited educational uses, these uses are typically teacher-directed and scaffolded. My report does not dispute this; in fact, my strategic plan incorporates digital literacy training that helps students and staff distinguish helpful from harmful social media use. Indeed, the primary concern is not educator-directed social media use, but rather students' personal and pervasive use, which research and school personnel identify as a driver of attention and mental health problems and disrupted peer interactions and classroom environments.

77. Opinion 2-3: The fact that civic engagement and peer connection may occur through social media in some contexts does not negate the substantial and growing body of evidence documenting increased mental health and learning problems caused by social media platforms. My report acknowledges that social media use is not monolithic. Yet, because of the significant harms caused by Defendants' platforms, a structured, district wide approach is needed.

78. Opinion 4: The fact that some educators use social media for professional development is neither relevant to, nor addresses the harms in this case. The existence of teacher learning networks on social media does not offset the harms that Defendants' social media platforms are causing school districts, school environment and school functioning.

21

79.    Opinion 5: My plan does not advocate blanket bans as the only approach. To the contrary, my plan promotes thoughtful use policies and enhanced educator training to address harms that stem from Defendants' social media platforms and social media use.

80.    Opinion 6: Dr. Aguilar critiques my comparison to tobacco control. As I have noted in my general rebuttal,[81] the comparison is not one of mechanism but of scale and public health response. I state clearly that my strategic plan is modeled on past public health challenges that required system-wide and sustained action, not because social media is identical to tobacco, but because the public health infrastructure needed to respond is similarly complex and underdeveloped. With respect to the critique that the 15-year plan lacks iteration, to the contrary, my plan is explicitly designed for staged rollout and iterative refinement.

### 2.    Rebuttal to District-Specific Opinions in Exhibit A (CCSD)

81.    Dr. Aguilar presents two additional opinions (OP7-OP8) in *Exhibit A* of his report related to CCSD. Each is addressed below:

82.    Opinion 7: Dr. Aguilar proffers that CCSD has resources in place related to technology, including being a 1:1 device district[82] and having a dedicated learning management system ("LMS") that allows educators to access digital content for purposes of collaboration, professional development, and educational purposes, and provides digital learning resources to students.[83] He also points out that, until 2025, CCSD's written policies permitted the use of mobile devices at designated times for instructional purposes within the classroom setting.[84] My report does not suggest that CCSD lacks devices or digital educational or professional resources, nor that it has always prohibited the use of mobile devices for instructional purposes. Indeed, he misses the point entirely. My report documents that the harms stemming from students' personal use of social media platforms occur despite the availability of educational technologies.[85]

83.    As I noted in my general and CCSD-specific reports:

–    The issue in this case is not classroom-based educational technology, but widespread, frequent student use of social media platforms outside of instructional contexts; and

–    The availability of electronic devices or digital educational or professional resources does nothing to mitigate these harms; nor does the ability for students to use mobile

---

[81] Rebuttal Report of Sharon A. Hoover, Ph.D. dated July 30, 2025, (pp. 21-25, ¶¶ 74-89).

[82] In fact, CCSD is not strictly a 1:1 device district as most schools do not issue each student a dedicated device for educational purposes. Instead, it primarily uses a cart model, and students may use two or three different devices throughout the day. 30 (b)(1) Deposition of Thomas Nawrocki, 24:18-26:17 (March 12, 2025).

[83] 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District, (pp. 47-48, ¶ 3).

[84] 2025.07.09 Expert Report of Stephen J. Aguilar, Ph.D., (p. 48, ¶ 4).

[85] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

devices for instructional purposes during specified classroom time. To the contrary, in some cases, it may facilitate increased unsupervised access to social media during, and after the school day.[86]

84. Thus, the presence of devices in CCSD classrooms is immaterial to the central opinions in my report, which focus on the public health impacts of social media platform use among students and the consequences for schools.

85. Opinion 8: Dr. Aguilar notes a "positive attitude" among district employees regarding the use of social media as a learning tool as a basis for asserting that CCSD recognizes the benefits of social media.[87] Again, he misses the point entirely as the opinions contained in my general and CCSD-specific reports do not relate to the use of technology or social media in an instructional context. It is also worth noting that Dr. Aguilar cites a few limited examples to support his view that there was "general agreement" amongst CCSD personnel on the issue of social media as a learning resource for students and teachers.[88] Indeed, one of those documents, an email Dr. Aguilar cited as "correspondence where a teacher wanted to convince a parent about the value of YouTube,"[89] is actually an exchange between a CCSD teacher and the Executive Director of Information Technology, Thomas Nawrocki, regarding CCSD's inability to block YouTube for two students whose parent "is refusing to allow their students to have access to devices…if the devices have access to YouTube[.]"[90]

86. Dr. Aguilar mentions the fact that CCSD uses social media for public communication.[91] Again, this is not in dispute. The use of social media accounts by schools and the district to communicate with families and the public has no bearing on the issues at hand. Indeed, CCSD's Superintendent, Anita Huggins, testified that CCSD's "social media exist to communicate with adults, not children."[92]

87. It is entirely appropriate, and common, for school districts to maintain social media accounts for announcements and community engagement, emergency closures, and celebrating school events or achievements. This does not equate to an endorsement of compulsive student use, nor does it address the school-based harms caused by that social

---

[86] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 2-6, ¶¶ 10-12); Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-21, ¶¶ 30-84).

[87] 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District, (pp. 48-49, ¶ 6).

[88] 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District, (pp. 48-49, ¶ 6).

[89] 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District, (p. 49, ¶ 7).

[90] MR_CCSD_573858.

[91] 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District, (p. 47, ¶ 1).

[92] 30(b)(1) Deposition of Anita Huggins, 161:7-18 (May 13, 2025).

media-driven behavior. My report does not call for eliminating public-facing school accounts, or the use of technology in an educational setting entirely. Rather, it recommends developing comprehensive systems of support to address the mental health challenges students experience as a result of social media use and the disruptions to the learning environment and school functioning.[93]

### 3.    Conclusion regarding Dr. Aguilar's CCSD Opinions

88.    Dr. Aguilar's CCSD-specific observations largely reiterate his general arguments and reflect only surface-level engagement with the district's needs and realities. His opinions:

- Do not contradict the core findings of my report;

- Do not acknowledge the behavioral health impacts of social media on CCSD's students;

- And do not offer a viable or evidence-informed plan for how the district can respond to these harms in a coordinated, sustainable, and developmentally appropriate way.

89.    In contrast, my recommendations:

- Are grounded in direct educator interviews and CCSD-specific data;

- Align with national public health and MTSS frameworks;

- Support, rather than replace, existing educational technology efforts;

- And offer a feasible and phased approach to building school capacity to meet the challenges caused by social media use.

### D.    Response to Lakdawalla

### 1.    Lakdawalla Opinion 1

90.    Dr. Lakdawalla asserts that my report, and the broader set of Plaintiff expert reports, fails to meet the standards of a "reliable economic framework" because it does not independently establish each step in a causal chain from the "at-issue conduct" to the district-level harms alleged.[94] He suggests that my work must do the following:

- (a) demonstrate that the at-issue conduct increases adolescent usage of Defendants' platforms;

- (b) show that this increased usage causes measurable harm to adolescent mental health and behavior;

- (c) isolate that harm from other confounding factors; and

---

[93] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 7, ¶ 33).

[94] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 17-18, ¶¶ 42-43).

- (d) quantify how those effects translate into discrete and attributable burdens on school districts like CCSD.[95]

91. While this framework might be appropriate in other fields, it mischaracterizes the purpose and scope of my work as a school mental health and implementation science expert. My role was not to perform an economic damages analysis, but rather:

- To synthesize existing evidence (including literature and empirical reports from other Plaintiff experts);

- To consider school- and district-level reports of impacts;

- And to design a strategic, evidence-informed plan to address the harms caused by social media platforms already observed and documented by school systems.

92. The economic quantification he demands is not part of my expertise or part of my recommendations in my CCSD report.[96]

93. Moreover, as discussed in my opening reports, I have opined, based on my experience as a psychologist with 25 years of experience in school mental health policy, research, training, and technical assistance, corroborated by the opinions offered in the expert reports of Drs. Twenge, Christakis, Mojtabai, Lembke, Goldfield and Telzer, that there are numerous harms to the district associated with student social media use.[97]

94. As a national expert in school mental health and implementation science, my assignment was not to isolate causal variance through econometric modeling. Rather, I was retained to:

- Determine whether there are negative impacts from student social media use on the district;

- Assess school and district operations impacted by youth social media use;

- Review the relevant literature and expert findings on social media's effects;

- Integrate qualitative and quantitative evidence from key informants;

- And develop a scalable strategic plan that addresses observed harms, promotes resilience, and builds sustainable capacity.

95. This is aligned with public health precedent. For example, in school-based asthma interventions, the causal pathways linking pollution to asthma exacerbations are

---

[95] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 20-21, ¶ 49).

[96] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025).

[97] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 49-56).

25

established by epidemiologists, but the actual plans for nursing care, building ventilation, and parent education are developed by school health experts, as I have done here.[98]

96. Dr. Lakdawalla argues that I must isolate the effects of social media platform design from all other variables.[99] However, in drafting both my general and district-specific report, I considered and understood that multiple contributing factors affect student mental health. This does not mean the contribution of social media platforms is negligible or irrelevant; rather, social media is a significant factor. Nor does it preclude an urgent, systems-level response to mitigate the school-based impacts of social media platforms. In public health, causation is rarely singular, but that has never been the standard for actionable prevention.

97. Dr. Lakdawalla suggests that my failure to create a fully specified counterfactual ("but-for world") invalidates my plan. This again confuses economic damage quantification with implementation science planning. My recommendations are not based on counterfactual modeling, but on:

  – Real-world observations from student support professionals and school support staff;

  – Emerging literature on digital behavior and mental health;

  – Case studies of other public health responses;

  – And a strategic prevention model designed to support Tier 1-3 school mental health capacity.

It is both appropriate in my field and standard for system response planning to begin with a synthesis of reported harms and public health indicators in this fashion, not wait for econometric analysis of exclusive causality. It is equally appropriate to draw upon well-established recommendations grounded in comprehensive school mental health system planning, an approach that has been applied for decades across hundreds of districts and thousands of schools to guide effective and sustainable supports for student well-being and proper school functioning.

98. For CCSD specifically, I reviewed staffing reports, school mental health service array and data infrastructure, and direct interviews with key informants. These stakeholders consistently described the impacts of social media platform use on student regulation and behavior, classroom environment, and the need for more robust mental health supports. It is neither speculative nor novel to respond to educator-observed patterns of harm, especially when those patterns align with national survey trends and platform design research.

99. Dr. Lakdawalla's Opinion 1 sets an inappropriate bar for my role as an implementation science and school mental health expert. My task was to assess need, review the evidence, and offer a research-informed, multi-tiered plan that reflects the lived

---

[98] Bryant-Stephens, T. (2009). Asthma disparities in urban environments. *Journal of Allergy and Clinical Immunology*, *123*(6), 1199-1206.

[99] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 22-24, ¶¶ 53-58).

experiences of schools facing the effects of social media platform use by their students. I stand by my recommendations as appropriate, proportionate, and urgently needed, based on a combination of cross-disciplinary evidence and frontline educator input.

### 2. Lakdawalla Opinion 2

100. Dr. Lakdawalla asserts that Plaintiffs' experts, including myself, have failed to demonstrate the causal impact of Defendants' specific conduct on adolescent mental health and school district harm, and that we offer only "correlational or anecdotal" evidence.[100] He critiques the absence of a modeled counterfactual world and raises alternate explanations, such as declines in television use and increased reporting rates for mental health symptoms.[101]

101. Once again, my role in this litigation is not to develop econometric estimates or simulate counterfactual worlds. As a national expert in school mental health and implementation science, I was tasked with:

- Determining the impact of social media on the district;

- Evaluating school-based impacts of adolescent social media use, particularly those reported by educators and documented in public data;

- And developing a comprehensive, evidence-informed strategic plan to help CCSD mitigate and manage these harms.

102. I reviewed and relied upon numerous peer-reviewed studies and the expert reports of Dimitri Christakis, M.D., M.P.H, Dr. Ramin Mojtabai, M.D., Ph.D., MPH, Eva Telzer, Ph.D, Anna Lembke, M.D., Dr. Jean M. Twenge, Ph.D, and Gary Goldfield, Ph.D, that address the causal links in question. These experts have extensively reviewed and published on the causal relationship between social media use and adolescent mental health outcomes, including anxiety, depression, sleep disruption, and emotional dysregulation. These findings are consistent with real-world observations from school systems across the country, including those voiced by school leaders and staff in CCSD. The scientific literature includes a substantial body of evidence that meets or exceeds standards of plausibility, temporal association, dose-response relationship, and coherence with other known data, hallmarks of causal inference in public health. Based on this body of evidence and my expertise, I concluded that there are numerous harms to CCSD, associated with student social media use.[102]

---

[100] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 5, ¶ 6).

[101] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 27-39, ¶¶ 66-83).

[102] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 9-11 ¶¶ 47-52).

103. Dr. Lakdawalla faults me and other Plaintiff experts for failing to construct a counterfactual world.[103] As previously stated in my response to Dr. Lakdawalla Opinion 1, my assignment was to develop a strategic plan responsive to the real, observed harms that educators and mental health staff are already experiencing in school the district. As discussed in my opening reports, schools, including the district, are not responding to abstract trends. Rather, among other things, they are responding to:

– Students arriving at school sleep-deprived due to late-night platform use;

– Social media drama and cyberbullying affecting school climate;

– Escalating needs for mental health support from the harms of student use of social media.[104]

My recommendation for a strategic plan to address these harms caused by social media relies not on anecdote, but on direct evidence from CCSD bolstered by patterns that are consistent across educators, schools, and districts, and which converge with the broader evidence base discussed in peer reviewed literature and the expert reports of Dimitri Christakis, M.D., M.P.H, Dr. Ramin Mojtabai, M.D., Ph.D., MPH, Eva Telzer, Ph.D, Anna Lembke, M.D., Dr. Jean M. Twenge, Ph.D, and Gary Goldfield, Ph.D. This is a standard and appropriate method that I regularly use in my field of implementation science and school-based systems planning.

104. Dr. Lakdawalla's assertion that increased social media use may have substituted for television use,[105] and that reporting rates for mental health issues have changed over time, reflects selective skepticism, not balanced scientific inquiry:

– Unlike passive television consumption, social media platforms are interactive and designed to maximize user engagement, features that are distinct from prior screen-time modalities and have transformed the classroom environment;[106]

– Increases in adolescent mental health concerns are evident not just in self-report data but in hospital admissions for self-harm among adolescents which Dr. Twenge has linked to trends in social media,[107] which are far less likely to be explained by "greater willingness to report" alone and;

---

[103] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 22-24, ¶¶ 53-58).

[104] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 1-2, 6-21, ¶¶ 3-5, 30-84); Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 9-11 ¶¶ 47-52).

[105] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 5, ¶ 5).

[106] E.g., 2025.05.16 Expert Report of Eva Telzer, Ph.D. at 86-87; 2025.05.16 Expert Report of Dimitri Christakis, M.D., M.P.H. at 278-281.

[107] 2025.05.16 Expert Report of Jean M. Twenge, Ph.D. at 7, 14-22.

- Dismissing these harms due to uncertainty in measurement trends runs contrary to the precautionary principle of public health, which calls for timely intervention even in the face of incomplete information, especially when the risks of inaction are high as they are here.

105. CCSD educators are not reacting to trends in survey response rates. They are managing the daily consequences of widespread student dysregulation and distress: students arriving to school exhausted after late-night scrolling, peer conflicts initiated or escalated online, and classroom learning time diverted by the behavioral and emotional issues caused by social media use. These observations are echoed across schools in CCSD and are consistent with national research.

106. While Dr. Lakdawalla critiques my report for not quantifying CCSD's financial losses using econometric tools,[108] I again emphasize that my charge was not to assess financial cost, it was to design a strategic plan to address harms already reported by educators and supported by peer reviewed academic literature and expert testimony. The plan I propose is based on observable gaps in Tier 1-3 mental health supports in the district; documented challenges related to student mental health and classroom learning; and, system-level prevention frameworks that have been used to address other large-scale youth health challenges (e.g., tobacco, obesity, trauma).[109]

107. Implementation science does not wait for comprehensive quantitative data before acting, particularly when the harms are real, observable, and growing. My recommendations are grounded in CCSD-specific needs, informed by educator experience, and supported by a national body of research and expert consensus. They are not speculative, they are proportionate and urgently needed.

### 3. Lakdawalla Opinion 3

108. Dr. Lakdawalla argues that national, state, and CCSD data do not support the theory that social media use has harmed students or school districts through increased behavioral issues, reduced academic performance, or greater staffing needs.[110] He concludes that available data are inconsistent with Plaintiffs' experts' conclusions. This critique reflects narrow and incomplete interpretation of how school harms are experienced and documented.

109. Dr. Lakdawalla appears to assume that the only valid evidence of harm to school districts must take the form of quantifiable declines in test scores, elevated suspension or expulsion rates, or formal changes in staffing counts. However, as explained in my prior responses above, these are not the primary metrics I used to assess or describe the impact of social media on school functioning. Rather, as is standard practice in my field, I focused on:

---

[108] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School) District, (pp. 44, 53, ¶¶ 92, 108).

[109] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (p. 32, ¶¶ 107-109).

[110] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 57-83, ¶¶ 119-160).

- Student mental health concerns that interfere with learning, even if not reflected in grades or test scores;

- Disruptions to classroom climate and educator workload, often managed informally and undocumented in discipline logs;

- Underreported and subclinical student distress, which educators and mental health professionals consistently identify as growing in frequency and severity.[111]

This approach is consistent with school mental health best practices, where decision-making is based on a combination of data, educator input, and implementation frameworks, not test scores alone.

110. As I detail in both my general and CCSD-specific reports,[112] most districts, including CCSD, lack comprehensive systems for tracking social media harms, such as time spent on social media during the school day, students' social media use contributing to distress, emotional dysregulation stemming from social media activity, or the reasons students are referred to counseling. When school counselors or teachers informally address these issues without formal referral or disciplinary action, they are often absent from district-level datasets, but not absent from reality. This is precisely why key informant interviews are essential in understanding the scope of harm.

111. In CCSD, school support staff and student support professionals described:

- Increasing conflict and emotional volatility related to digital peer interactions;

- Time and attention diverted from instruction to manage the fallout of social media-related incidents;

- An overstretched school mental health workforce struggling to meet student needs;

- Addictive, compulsive, and problematic use of social media, with resulting anxiety and depression.[113]

These reports align with national survey data, published literature, and other expert findings.[114] That some of these impacts are not reflected in large-scale datasets reveals a limitation of those datasets, none of which are directly correlated to the issue at hand, and is not representative of the underlying reality.

---

[111] Green, J. G., McLaughlin, K. A., Alegría, M., Costello, E. J., Gruber, M. J., Hoagwood, K., ... & Kessler, R. C. (2013). School mental health resources and adolescent mental health service use. *Journal of the American Academy of Child & Adolescent Psychiatry*, *52*(5), 501-10.

[112] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 3, 28, ¶¶ 9, 103); Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 2-3, 43, ¶¶ 7-8, 154).

[113] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[114] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-19, ¶¶ 30-57, 63-76).

112.    Finally, on the critique related to not demonstrating a statistical relationship between CCSD's administrative data and the at-issue conduct:[115] My charge was to develop a strategy based on observed needs and school mental health best practices consistent with standard practices in my field. The strategic plan I offer for CCSD reflects that mission and stands on solid scientific, experiential, and practical footing.

113.    Dr. Lakdawalla's Opinion 3 rests on a narrow reading of what constitutes evidence of harm and again misapplies economic standards to a public health and school systems planning task. While school district administrative data are one piece of the puzzle, they are insufficient on their own, and often incomplete, especially when assessing harms as complex and evolving as those introduced by widespread student use of social media platforms. My approach integrates multiple data sources, including educator reports, implementation science frameworks, and the broader research literature, to offer an actionable response to harms that CCSD is confronting daily.

### 4.    Lakdawalla Opinion 4

114.    In Opinion 4, Dr. Lakdawalla is wrong when he argues that my strategic plan is "overly broad," not tailored to the harms allegedly caused by Defendants' conduct, and duplicative of existing programs in CCSD. He further incorrectly contends that I have failed to justify the need for new programming or quantify the extent to which the proposed plan addresses incremental harms attributable specifically to Defendants' conduct.[116]

115.    As I have stated in prior responses (see rebuttals to Dr. Wildermuth at ¶¶ 22-57 above), my strategic plan is not a standalone damages calculation or narrow treatment protocol. It is an evidence-informed, system-level response to the substantial and well-documented harms that social media platform use has caused within school environments. My recommendations are consistent with the findings of other Plaintiff experts, who have demonstrated that the design and deployment of social media platforms have had a measurable negative effect on student mental health and learning; and, that these harms are being absorbed by school systems, including CCSD, through increased behavioral incidents, heightened student distress, disruptions in instruction, and the expenditure and redirection of staff time and resources.

116.    Dr. Lakdawalla suggests that my planning must isolate only those harms "incremental[ly]" caused by Defendants' conduct.[117] That is not how public health response or school-based prevention planning is conducted. When faced with an externally introduced, population-wide risk, schools and public agencies must develop system-level responses that are comprehensive, multi-tiered, and resilient. That is what my strategic plan offers.

---

[115] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 57-83, ¶¶ 119-160).

[116] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 5-6, ¶¶ 8-9).

[117] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 84, ¶ 162).

117.	Dr. Lakdawalla repeats a critique raised by other Defense experts: that my plan overlaps with current programming and fails to explain how it is additive rather than duplicative.[118] I refer the reader to my detailed response to Dr. Wildermuth's Opinion B at ¶¶ 22-44, where I explain that:

–	I explicitly reviewed existing supports in CCSD, including digital literacy programs, external provider partnerships, and Tier 2 counseling efforts;

–	My plan does not call for the dismantling or duplication of those services, but for the expansion and enhancement of district capacity to address new harms that existing programs were never designed to manage;

–	These additions are targeted, structured within a Multi-Tiered System of Supports (MTSS) framework, and grounded in best practices in school mental health and prevention science.

Moreover, CCSD's current staffing levels and data systems cannot address the scale of student need described by educators in the district as a result of Defendants' social media platforms.[119]

118.	Dr. Lakdawalla faults me for not quantifying the reach of current programs or the exact proportion of harm attributable to Defendants. But as an implementation science expert, this was not my assignment. I was retained to synthesize available evidence and develop a strategic plan to address the harms to CCSD caused by Defendants' social media platforms based on my analysis of the district's needs and extensive experience in school mental health policy, research, training, and technical assistance. I used standard planning tools from my experience with public health and school mental health to design a feasible and proportionate response. I did so in collaboration with known best practices for district-level systems development, not abstract economic modeling.

119.	Dr. Lakdawalla's credentials do not include training or experience in child and adolescent mental health, school-based service delivery, or educational implementation science. It is therefore unclear on what basis he assesses the adequacy of existing district programs; the necessary scale or design of Tier 1-3 mental health supports; or the appropriateness of expanding school-based prevention efforts in response to social media-related harms. His critiques appear to stem from a misapplication of economic logic to a public health and education planning process, and from a lack of familiarity with how school systems implement multi-tiered mental health supports in practice.

### 5.	Lakdawalla Opinion 5

120.	In Opinion 5, Dr. Lakdawalla incorrectly contends that the costs of my proposed Strategic Plan, as calculated by Dr. Leslie, are inflated, unsupported, and insufficiently justified in duration, staffing, and design. He also wrongly suggests that I fail to consider

---

[118] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 91-94, ¶¶ 180-187).

[119] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

existing staff, alternative implementation strategies such as contractors, or the availability of other public funding sources.[120]

121. My role was not to estimate damages or calculate line-item costs, but to design an evidence-informed, scalable strategic plan aligned with school mental health best practices. That said, I strongly disagree with the suggestion that the design and duration of the plan are "unsupported."[121] My recommendations reflect decades of precedent in school systems reform and behavioral health, informed by my 25+ years of experience in building sustainable school mental health infrastructure across the country, using well-accepted methods common in my field.

122. My plan outlines a 15-year timeline for planning, implementation, evaluation, and sustainability. Dr. Lakdawalla critiques this duration and challenges my analogy to tobacco control efforts. It is important to note:

– The comparison to tobacco is not one of identical mechanism, but one of scale, complexity, and sustained exposure to an external harm;

– Tobacco control, childhood obesity, and other large-scale behavioral health efforts routinely require 10-20 year investments in education and system capacity building;

– Social media use, like tobacco use, involves persistent behavioral patterns shaped by external corporate design and incentives, requiring multi-tiered, intergenerational interventions to mitigate its impact.

This timeline is not arbitrary, it is based on the well-documented need for new workforce capacity, development and integration of Tier 1-3 supports, family and community partnership building, ongoing outcome evaluation and fidelity monitoring.

123. Dr. Lakdawalla incorrectly asserts that the costs of training are "double-count[ed]" in Dr. Leslie's economic modeling.[122] He fails to recognize that in school systems, professional development costs are often incurred in addition to salary and benefits, particularly when training occurs outside of regular contract hours; collective bargaining agreements or union rules require compensation for training time; substitute teachers must be hired to cover classes during in-service days; and/or external trainers, materials, or certifications are needed. As a result, it is not uncommon, or incorrect, for school districts to incur training expenses in addition to staff salaries and benefits, and any attempt to eliminate these costs as redundant ignores how school systems actually operate.

---

[120] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 91-94, ¶¶ 180-183).

[121] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 96-99, ¶¶ 192-201).

[122] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 101, ¶ 205).

124. Dr. Lakdawalla argues that I ignored existing school-based mental health professionals when calculating staffing needs.[123] In fact, my CCSD report explicitly includes current staffing figures.[124] The suggestion that the district's current staffing is adequate ignores the additive burden caused by the impact of social media platforms. The proposed staff are not meant to replace existing professionals, but to fill capacity gaps and address new challenges stemming from social media-driven harms.

125. Dr. Lakdawlla further contends that I have not justified why the levels of staffing I recommend are necessary.[125] However, to the contrary, my opening reports explain in substantial detail why the additional staffing I have recommended is necessary in order to support my strategic plan. As discussed at length in my opening reports, student social media use has caused substantial harms to school districts including CCSD and existing staffing is not able to address these harms.[126] My staffing recommendations are based on my substantial experience developing mental health programming for school districts and are based on my assessment of the staffing that will be required to implement my strategic plan.

126. Dr. Lakdawalla critiques my plan for not recommending outside contractors.[127] I am knowledgeable of and experienced with contractor models, having led a national school mental health technical assistance center for over 15 years. Contractors may be appropriate in early stages of implementation, especially when internal staff are not yet available; however, long-term reliance on contractors is less cost-effective and less sustainable than building district-owned, embedded capacity. Contractors also vary in quality and continuity. My plan reflects best practices: initial capacity-building may include partnerships, but districts need their own staff to sustain effective, high-fidelity services.

127. Finally, Dr. Lakdawalla criticizes me for not accounting for existing federal, state, and local funding streams for mental health.[128] While I am familiar with many of these (e.g., ESSER, Medicaid, Title IV, state mental health block grants), these streams are not dedicated to mitigating social media-specific harms; are often short-term, competitive, or uncertain in duration; cannot reasonably be assumed to replace new funding responsibilities for harms caused by Defendants' platforms; and, are already being used

---

[123] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 102, ¶ 209).

[124] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 7-9, ¶¶ 39-45).

[125] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 102-103, ¶ 210).

[126] Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-19, ¶¶ 30-57, 63-76).

[127] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (p. 105, ¶ 215).

[128] 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District, (pp. 109-110, ¶¶ 220-223).

to address a wide array of pre-existing needs. It would be inappropriate and irresponsible to assume that CCSD should reallocate existing funds, intended for general student support, to absorb new harms stemming from social media platform use.

### E.    Response to Nelson

#### 1.    Nelson Opinion 2

128.    In Opinion 2, Dr. Nelson wrongly asserts that if social media were significantly harming students in CCSD, it would be visible through a comprehensive set of formal district processes, such as systematic needs assessments, professional development planning, resource allocation, and evaluation systems.[129] He concludes that because social media has not been consistently reflected in these systems, it is unlikely to be a problem of substantial impact. His logic in this case is both incomplete and overly rigid.

As I have detailed in my reports and reiterated throughout my rebuttals (including to Dr. Wildermuth's and Dr. Lakdawalla's opinions at ¶¶ 12-21, 108-113), the fact that a district has not fully incorporated a new and emerging harm into its formal systems, including its budget, does not mean the harm does not exist or is not substantial.

Indeed, social media-related harms, including compulsive use, emotional dysregulation, classroom disruption, and mental health decline, represent a relatively new external stressor, one that many school systems are only beginning to fully understand and address. A lack of full documentation or formal budgetary response should not be conflated with lack of real and ongoing impact.

129.    Contrary to Dr. Nelson's implication that CCSD has done nothing to address social media-related harms, my report acknowledges that the district has begun to take some initial steps:

–    Digital citizenship and online behavior education is included in some district programming;

–    School support staff and student support professionals report managing classroom disruptions and student distress tied to social media use;

–    Some professional development activities have touched on related themes, even if not organized under a comprehensive digital health initiative.[130]

These actions indicate that the district is becoming aware of the issue, even if its response is piecemeal, under-resourced, and under-documented, as is common in school districts, like CCSD.

130.    Dr. Nelson emphasizes the importance of stakeholder input throughout his report. My standard process included interviews with a range of district stakeholders in CCSD,

---

[129] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (p. 3, ¶ 13).

[130] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 11, 18, ¶¶ 52, 75).

including school support staff and student support professionals. These informants described:

- A sharp rise in student anxiety and attention issues tied to social media use;

- Increasing incidents of peer conflict and emotional outbursts attributable to social media;

- The need for more robust staffing, data systems, and programming to address these challenges.[131]

These are precisely the types of stakeholder concerns Dr. Nelson suggests should drive district action. The fact that they have not yet led to fully institutionalized programming is a function of system capacity, not a refutation of the underlying harms.

131. Dr. Nelson also suggests that a serious response to social media-related harms would include a system-wide evaluation process, planning and implementation protocols, and integrated professional development. My proposed plan includes all of these elements. Specifically:

- It provides staffing and technical assistance to establish or improve needs assessments that include social media harms;

- It supports expanded and tiered professional development for educators on digital health and student emotional regulation;

- And it includes clear provisions for evaluation, accountability, and continuous improvement, consistent with MTSS and implementation science frameworks.

Rather than being "disconnected" from real district processes, my recommendations enhance and extend them, offering the structure needed to address this emerging threat in a scalable and sustainable way.

132. School districts, especially under-resourced ones like CCSD, must make difficult decisions every day. The fact that social media harms are not yet fully integrated into their annual budget does not suggest they are unimportant. In many cases, districts are:

- Reactively managing symptoms (e.g., classroom disruptions, counseling demand) without a unified funding stream;

- Waiting for external support or funding to respond to newly recognized harms;

- Or simply unable to quantify harms they lack the infrastructure to measure.

It would be a mistake to assume that absence of line-item budgeting or open board discussions equates to absence of impact.

133. Dr. Nelson also points to the "achievement gap" as a major issue facing CCSD.[132] As I stated above in the summary of my responses to Dr. Hutt's opinions, I fully acknowledge

---

[131] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[132] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 20-21, ¶¶ 71-74).

that student mental health and academic engagement are shaped by multiple factors, including poverty, trauma, family functioning, and COVID-19. I considered and understood these issues and my strategic plan accounts for them. None of these challenges, however, negate the significant role of social media, which constitutes a distinct and increasingly dominant challenge to the school environment and school functioning. My analysis reflects this broader context, as does the layered, multi-tiered approach I propose.[133]

134.    Dr. Nelson also contends that school violence, crime, substance abuse, and needs stemming from COVID-19 are major issues at CCSD, but that Student Support Services has not "highlighted" social media concerns as an issue.[134] As I stated above in my response to Dr. Wildermuth Opinion 4, I considered and understood these issues and my strategic plan accounts for them.[135]

135.    Dr. Nelson's assertion that social media cannot be significantly harming CCSD simply because it is not yet codified in district plans or budgets is inconsistent with how new challenges typically unfold in school systems, particularly those operating with constrained resources. It also ignores the very evidence he claims to value: direct, consistent reports from CCSD educators that student mental health, classroom climate, and instructional time are being negatively affected by student social media use. Rather than contradicting my conclusions, the gaps Dr. Nelson identifies in current systems underscore the need for a coordinated strategic plan, one that my report provides.

### 2.    Nelson Opinion 3

136.    In Opinion 3, Dr. Nelson incorrectly asserts that social media is not an issue that is significantly impacting CCSD.[136] This opinion is based upon Dr. Nelson's "review of CCSD documents." As discussed in detail above, social-media related harms are a relatively new stressor which school systems are only beginning to fully understand and address. Accordingly, a lack of full documentation or formal budgetary responses do not indicate that social media is not a significant issue for CCSD.

137.    As discussed above regarding Dr. Nelson Opinion 2, the impact of social media on CCSD becomes apparent in discussions with district stakeholders, as detailed in my opening report, who have relayed the many ways in which social media is impacting CCSD:

   –   A rise in student anxiety, depression, and attention issues tied to social media use;

   –   Increasing incidents of peer conflict and emotional outbursts attributable to social media;

---

[133] *See supra* Section II.B.

[134] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 17-19, ¶¶ 66-70).

[135] *See supra* Section II.A.

[136] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (p. 3, ¶ 14).

– The need for more robust staffing, data systems, and programming to address these challenges.[137]

Notably, Dr. Nelson doesn't account for these stakeholder accounts in reaching his opinion despite acknowledging their importance.

138. Dr. Nelson's assertion that social media cannot be significantly harming CCSD simply because it is not yet codified in district plans or budgets is inconsistent with how new challenges typically unfold in school systems, particularly those operating with constrained resources. It also ignores the very evidence he claims to value: direct, consistent reports from CCSD educators that student mental health, classroom climate, and instructional time are being negatively affected by student social media use. Rather than contradicting my conclusions, the gaps Dr. Nelson identifies in current systems underscore the need for a coordinated strategic plan, one that my report provides.

139. Like other Defendant experts, Dr. Nelson notes that CCSD has faced other challenges such as violence, substance abuse, COVID-19, and severe poverty.[138] However, as discussed above in my response to Dr. Wildermuth Opinion D at ¶¶ 45-57 above, these other challenges to the district are shared by many school districts across the country, including those with high mental health burdens and limited capacity to respond to emergent student needs. My strategic plan fully accounts for overlapping structural challenges, and is specifically designed to address the ways that new harms, stemming from social media platforms, interact with, and exacerbate, existing vulnerabilities in the school environment. Dr. Nelson's suggestion that because the district faces challenges from multiple sources social media is not a real or significant concern in the district is belied by the actual reports from key informants in CCSD and the substantial evidence from peer reviewed literature and experts in this case that social media has real and serious negative impacts on school districts.[139]

140. Like Dr. Wildermuth, Dr. Nelson also incorrectly argues that district management is the source of the district's harms.[140] As discussed above in my response to Dr. Wildermuth Opinion 3 at ¶¶ 42-44, I strongly caution against conflating legacy administrative issues with the current need for strategic investment in student services.

---

[137] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[138] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 15-25, ¶¶ 62-82).

[139] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54); Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 6-20, ¶¶ 30-82).

[140] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 25-28, ¶¶ 83-88).

141. Dr. Nelson's flawed argument that social media cannot be a concern in CCSD because the district has used social media to interact with the community[141] is unfounded for the reasons discussed above in my response to Dr. Aguilar Opinions 1-4 and 8 at ¶¶ 76-78, 85-87 above. As previously discussed, the use of social media accounts by schools to communicate with families and the public has no bearing on the issues at hand. It is entirely appropriate, and common, for school districts to maintain social media accounts for announcements and community engagement, emergency closures, and celebrating school events or achievements. This does not equate to an endorsement of student use, nor does it address the school-based harms caused by those platforms.

142. Dr. Nelson also challenges my use of informant interviews as a source of data to support my conclusions.[142] As I stated above in my response to Dr. Wildermuth Opinion 1, my opinions are not based solely on interviews, but these interviews are a critical, intentionally weighted component of my standard school mental health evaluation process. Key informants provide essential insight into emerging problems that may not yet be formally tracked. CCSD informants' insights provided site-specific accounts of:

   – Classroom disruptions and distractions.

   – Students expressing distress over not being able to check their social media accounts;

   – An increase of 250% in referrals for school mental health supports over the past six years; and

   – A 30% increase of students on medical homebound compared to years past.

   (*See supra* Section II.A.).

143. Finally, Dr. Nelson makes an unfounded assertion that the only social media related concerns in CCSD are content based.[143] Contrary to this assertion, as discussed by key informants from the district and in my report, social media causes numerous harms to the district not related to content but rather to platform features which cause, among other things, compulsive use, student distraction, atrophying student social skills, sleep disruption, anxiety, depression, negative body image, and self-harm which all have a negative impact on the district.[144]

---

[141] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 17, 41-42, ¶¶ 64, 133).

[142] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 43-44, ¶¶ 140-42).

[143] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (p. 31, ¶¶ 98-99).

[144] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 6-12, ¶¶ 30-54); Expert Report of Dr. Sharon A. Hoover, PhD dated May 16, 2025, (pp. 11-15, ¶¶ 47-64).

### 3.    Nelson Opinion 4

144.    Dr. Nelson inaccurately asserts that my CCSD-specific recommendations are "unrealistic, unnecessary, and/or are not attributable to social media."[145] He claims that social media has not diminished teacher effectiveness or required districts like CCSD to expend or redirect resources, and that my Tier 1 recommendations, staffing plan, and evaluation strategies are flawed or overreaching. While many of these unfounded concerns echo critiques made by other experts, and are addressed in earlier rebuttals (particularly those to Drs. Wildermuth and Lakdawalla at ¶¶ 22-57, 108-119 above), Dr. Nelson raises several points to which I specifically respond here.

145.    Dr. Nelson Claim: "Social media has not diminished teacher effectiveness or required school districts to expend and redirect limited resources."[146] This claim directly contradicts evidence from CCSD key informants and misrepresents how the effects of social media manifest in schools. As documented in my CCSD report, and based on interviews with district stakeholders, they described:

–    Increased classroom distractions and instructional disruptions stemming from students' social media use, peer conflict initiated online, and students' difficulty with sustained attention;

–    Time spent by teachers and administrators managing peer issues that originated on social media;

–    Rising student distress that required counseling, family outreach, and behavioral supports, diverting time and resources away from academic instruction.[147]

146.    These impacts may not always appear in formal budget documents or staffing charts, but they are consistently reported by district and school leaders and support professionals.[148] Dr. Nelson does not appear to have interviewed any CCSD school support staff or student support professionals or reviewed their affidavit or deposition testimony concerning their experience of how social media is impacting CCSD.

Despite failing to consider the lived experiences of numerous CCSD stakeholders, Dr. Nelson offers broad unsupported claims dismissing their experiences.

---

[145] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (p. 44, ¶ 143).

[146] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (p. 39, ¶ 126).

[147] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 10-12, ¶¶ 48-54).

[148] Nesi, J. (2020). The impact of social media on youth mental health: challenges and opportunities. *North Carolina medical journal*, *81*(2), 116-121.

147. Dr. Nelson's unfounded assertions that CCSD has not taken efforts to combat social media[149] conflate an inability of the district to have implemented a large and financially burdensome holistic and systemic system for addressing harms of social media with no efforts to confront the harms caused by social media to the district. In truth, as discussed in my opening CCSD report, the district has made an effort to begin addressing harms stemming from social media although it has lacked the ability to implement the holistic and systemic plan necessary to fully address the harms caused by social media.[150]

148. As addressed in my rebuttal to Dr. Lakdawalla Opinion 5 at ¶ 106 above, the 15-year timeline I propose is:

- Aligned with public health precedent, including efforts to address tobacco use, childhood obesity, and trauma;

- Reflective of the multi-year, phased approach needed to build sustainable district-level capacity, including staff recruitment, training, Tier 1 curriculum implementation, and fidelity monitoring; and

- Proportionate to the scale and complexity of the challenge, especially given the persistent and evolving nature of student social media use.

Dr. Nelson's assertion that this timeline is unnecessary fails to engage with the underlying rationale or the precedent of long-term investment in effective systems change. Incremental change over a sustained period is not only realistic, it is essential.[151]

149. Dr. Nelson critiques my Tier 1 recommendations, arguing that they are "not attributable" to social media and therefore not justified in this context.[152] However, my Tier 1 plan includes:

- Universal digital wellness curriculum designed to build self-regulation, digital citizenship, and resilience;

- Professional development for educators and staff to recognize and respond to social media-related distress and attention disruption;

- Family engagement strategies to support at-home digital habits, including navigating social media, and peer relationship management.

150. Each of these components directly addresses harms introduced or intensified by social media platforms, including peer conflict and exclusion, sleep disruption from nighttime

---

[149] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 42-43, ¶¶ 137-139).

[150] Expert Report of Dr. Sharon A. Hoover, PhD for Charleston County School District dated May 18, 2025 (amended June 20, 2025) (pp. 6-10, ¶¶ 30-47).

[151] Spoth, R. L., Guyll, M., & Day, S. X. (2002). Universal family-focused interventions in alcohol-use disorder prevention: cost-effectiveness and cost-benefit analyses of two interventions. *Journal of studies on alcohol*, *63*(2), 219-228.

[152] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 45-46, ¶¶ 146-149).

use, and emotional volatility tied to social comparison, compulsive use and online feedback loops. These are not generalized mental health strategies, they are tailored responses to social media-related harms documented in the literature and reported by district personnel.[153] The suggestion that Tier 1 programming should only address mental health harms with singular, isolated causes misrepresents how prevention science operates. Most Tier 1 strategies target multifactorial harms and are justified if they mitigate even one core driver, such as social media use.

151. Dr. Nelson implies that I overprescribe staffing without acknowledging existing professionals.[154] This concern was already addressed in detail in my rebuttal to Dr. Wildermuth Opinion 3 ¶¶ 25-39. To reiterate:

    – My report explicitly includes CCSD's current staffing: 195 school counselors, 51 school psychologists, and 25 school social workers.

    – These figures do not reflect capacity to address the additional and distinct harms associated with social media platforms;

    – The recommended new roles are designed to be additive, with specific responsibilities tied to digital safety, student emotional regulation, and peer support.

    It is not duplicative to propose new positions when the existing workforce is already stretched thin and new significant harms are caused by social media. To the contrary, my plan seeks to relieve pressure on existing staff and increase the system's capacity to meet newly emerging needs associated with social media use.

152. Dr. Nelson argues that my evaluation and data recommendations are burdensome and not clearly tied to social media-related harms.[155] In fact, CCSD currently lacks centralized data systems to monitor Tier 1 implementation fidelity, referral patterns, or social media–related behavioral disruptions. My plan includes modest, structured evaluation supports that are standard in MTSS implementation and are critical for identifying student subgroups at risk, tracking response to intervention, and documenting progress toward harm reduction goals.[156] This is not overreach, it is best practice. Districts implementing complex mental health and behavioral health initiatives require infrastructure to measure both need and effectiveness.

153. Dr. Nelson's conclusion that my CCSD-specific recommendations are "unrealistic, unnecessary, or not attributable to social media" reflects a narrow view of how school

---

[153] Twenge, J. M., & Campbell, W. K. (2019). Media use is linked to lower psychological well-being: Evidence from three datasets. *Psychiatric Quarterly*, *90*(2), 311-331.

[154] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 48-49, ¶¶ 155-159).

[155] 2025.07.11 Expert Report of Robert G. Nelson, Ed.D. for Charleston County School District, (pp. 49-50, ¶¶ 160-161).

[156] Forman, S. G., Shapiro, E. S., Codding, R. S., Gonzales, J. E., Reddy, L. A., Rosenfield, S. A., ... & Stoiber, K. C. (2013). Implementation science and school psychology. *School Psychology Quarterly*, *28*(2), 77.

systems respond to emerging harms. It disregards consistent and credible reports from CCSD educators, misrepresents the intent and scope of my Tier 1 and evaluation recommendations, and fails to engage with the layered and sustained nature of meaningful school-based systems change. Rather than being excessive, my recommendations are proportionate, and informed by implementation science and the lived realities of educators confronting the effects of social media in real time.

### III.    Conclusion

154.    The opinions and recommendations presented in this report reflect a comprehensive review of the district-specific rebuttal reports submitted by defense experts, as well as the unique needs, conditions, and capacity of CCSD. Many of the defense experts' critiques either misunderstand the scope of my assignment, overlook the operational realities of school systems, lack the requisite expertise in school mental health and implementation science, or fail to meaningfully engage with the evidence provided by educators and mental health professionals on the front lines of this crisis.

155.    CCSD, like many large and diverse school districts, is experiencing the new, significant and distinct harms as well as compounding harms of widespread student engagement with social media platforms. These consequences include increased student distress, attention disruption, digital peer conflict, disruptions to school functioning, harms to school climate and diversion of educator time and school resources. My recommendations are tailored to CCSD's context and are designed to address these harms through sustainable, evidence-informed strategies that complement and extend the district's current efforts.

156.    Social media is a distinct, substantial, externally introduced, and modifiable contributor that requires a proportionate response. The interventions I propose are rooted in decades of research, aligned with implementation science principles, and designed to support school systems in responding to the disruptive impact of platform-driven social media harms and are neither speculative or excessive. My plan for CCSD provides the resources and infrastructure necessary to mitigate these social media harms and promote the well-being of all students as well as proper school functioning.

The undersigned hereby certifies their understanding that they owe a primary and overriding duty of candor and professional integrity to help the Court on matters within their expertise and in all submissions to, or testimony before, the Court. The undersigned further certifies that their report and opinions are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

_____
Sharon A. Hoover, Ph.D.

43

**Exhibit A**

**Additional Materials Considered**

Prior Opening Report dated May 18, 2025 and all documents cited therein, including Exhibit B.

**Charleston Documents**

| Bates |
|---|
| MR_CCSD_003487 |
| MR_CCSD_573858 |
| MR_CCSD_779236 |
| MR_CCSD_490964 |
| MR_CCSD_573924 |
| MR_CCSD_580220 |
| MR_CCSD_590127 |

**Articles and Studies**

| |
|---|
| Bryant-Stephens, T. (2009). Asthma disparities in urban environments. *Journal of Allergy and Clinical Immunology*, *123*(6), 1199-1206 |
| Chronic Absenteeism: 2017-2024, Return 2 Learn (last visited August 1, 2025), https://www.returntolearntracker.net/ (click "R2L's methods") |
| Durlak, J. A., Weissberg, R. P., Dymnicki, A. B., Taylor, R. D., & Schellinger, K. B. (2011). The impact of enhancing students' social and emotional learning: A meta-analysis of school-based universal interventions. *Child development*, *82*(1), 405-432 |
| Forman, S. G., Olin, S. S., Hoagwood, K. E., Crowe, M., & Saka, N. (2009). Evidence-based interventions in schools: Developers' views of implementation barriers and facilitators. *School Mental Health*, *1*(1), 26-36 |
| Forman, S. G., Shapiro, E. S., Codding, R. S., Gonzales, J. E., Reddy, L. A., Rosenfield, S. A., ... & Stoiber, K. C. (2013). Implementation science and school psychology. *School Psychology Quarterly*, *28*(2), 77 |
| Green, J. G., McLaughlin, K. A., Alegría, M., Costello, E. J., Gruber, M. J., Hoagwood, K., ... & Kessler, R. C. (2013). School mental health resources and adolescent mental health service use. *Journal of the American Academy of Child & Adolescent Psychiatry*, *52*(5), 501-10 |
| Hoagwood, K., Atkins, M., & Ialongo, N. (2013). Unpacking the black box of implementation: The next generation for policy, research and practice. *Administration and Policy in Mental Health and Mental Health Services Research*, *40*(6), 451-455 |
| Komro, K. A., Tobler, A. L., Delisle, A. L., O'Mara, R. J., & Wagenaar, A. C. (2013). Beyond the clinic: improving child health through evidence-based community development. *BMC pediatrics*, *13*(1), 172 |
| Nesi, J. (2020). The impact of social media on youth mental health: challenges and opportunities. *North Carolina medical journal*, *81*(2), 116-121 |
| Nesi, J., Telzer, E. H., & Prinstein, M. J. (2020). Adolescent development in the digital media context. *Psychological Inquiry*, *31*(3), 229-234 |

44

| |
|---|
| Reback, R. (2010). Schools' mental health services and young children's emotions, behavior, and learning. *Journal of Policy Analysis and Management*, *29*(4), 698-725 |
| Spoth, R. L., Guyll, M., & Day, S. X. (2002). Universal family-focused interventions in alcohol-use disorder prevention: cost-effectiveness and cost-benefit analyses of two interventions. *Journal of studies on alcohol*, *63*(2), 219-228 |
| Twenge, J. M., & Campbell, W. K. (2019). Media use is linked to lower psychological well-being: Evidence from three datasets. *Psychiatric Quarterly*, *90*(2), 311-331 |

**Litigation Documents**

| |
|---|
| 2025.07.09 Expert Report of Ethan L. Hutt, Ph.D. |
| 2025.07.11 Expert Report of Ethan L. Hutt, Ph.D. for Charleston County School District |
| 2025.07.11 Expert Report of Stephen J. Aguilar, Ph.D. for Charleston County School District |
| 2025.07.11 Expert Report of Diana Wildermuth, Ph.D. for Charleston County School District |
| 2025.07.11 Expert Report of Darius Lakdawalla, Ph.D. for Charleston County School District |
| 2025.07.11 Expert Report of Robert G. Nelson Ed.D. for Charleston County School District |
| 2025.07.30 Rebuttal Report of Dimitri Christakis, M.D., M.P.H. |
| 2025.07.30 Rebuttal Report of Dr. Ramin Mojtabai, M.D., Ph.D., MPH |
| 2025.07.30 Rebuttal Report of Eva Telzer, Ph.D. |
| 2025.07.30 Rebuttal Report of Anna Lembke, M.D. |
| 2025.07.30 Rebuttal Report of Dr. Jean M. Twenge, Ph.D. |
| 2025.07.30 Rebuttal Report of Gary Goldfield, Ph.D. |
| 2025.05.19 Expert Report of Douglas L. Leslie, Ph.D. for Charleston County School District |
| 2025.06.20 Amended Expert Report of Douglas L. Leslie, Ph.D. for Charleston County School District |
| Deposition of Anita Huggins, May 13, 2025, In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation (MDL 3047), Transcript and Exhibits |