# Exhibit 104

# SCHOOL DISTRICT/LOCAL GOVERNMENT ENTITY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF SCHOOL DISTRICT EXPERTS

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

**Rebuttal Report of**
**Douglas L. Leslie, Ph.D.**
**for DeKalb County School District**

**August 1, 2025**

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

## **Table of Contents**

I.    EXECUTIVE SUMMARY ................................................................................................. 1

II.    RESPONSES TO DR. HYMAN'S ARGUMENTS ............................................................ 2

    A.    **Dr. Hyman's Criticisms of Dr. Hoover's Strategic Plan** ................................................2

    B.    **Dr. Hyman's Arguments Regarding Training and Development Costs**......................2

    C.    **Dr. Hyman's Criticisms Regarding Cost-Benefit Analysis** ..........................................3

    D.    **Dr. Hyman's Arguments Regarding Funding the Strategic Plan** ................................5

I.  **EXECUTIVE SUMMARY**

1. In this matter, I submitted a report on May 19, 2025 and an amended report on June 20, 2025.[1] On July 11, 2025, Dr. Joshua Hyman submitted a report on behalf of Defendants.[2] In this Rebuttal Report, I respond to points raised by Dr. Hyman that bear on my Opening Report. My qualifications and experience are described in Section II of my Opening Report and not repeated here. Attachment A lists the materials I have relied upon and cited in this Rebuttal Report.[3]

2. As set forth in my Opening Report, my assignment in this matter was to calculate the cost of implementing the 15-year strategic plan designed by Dr. Sharon Hoover to address the negative impact of student social media use on schools and school districts.[4]

3. **Opinion 1**: There are significant costs to the DeKalb County School District ("DeKalb") associated with hiring the staff required to fulfill Dr. Hoover's strategic plan.

4. **Opinion 2**: Significant costs exist for DeKalb in applying the recommendations for training and ongoing professional development made in Dr. Hoover's strategic plan.

---

[1] Expert Report of Professor Douglas L. Leslie, Ph.D., for DeKalb County School District, in this matter, May 19, 2025; Amended Expert Report of Professor Douglas L. Leslie, Ph.D., DeKalb County School District, in this matter, June 20, 2025 (hereafter "Opening Report"). I amended my original report to change the fringe benefit multiplier for the "BLS Method" to include only the insurance category instead of all benefit categories. This change decreased damages for this method slightly and did not impact the "Budget Method," which is the primary method of damages calculation.

[2] Expert Report of Joshua Hyman, Ph.D., for DeKalb County School District, in this matter, July 11, 2025 (hereafter "Hyman Report").

[3] My Opening Report, all documents cited therein, and the materials considered for that report were also considered for this Rebuttal Report.

[4] Expert Report of Dr. Sharon Hoover, PhD, in this matter, May 16, 2025; Expert Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, May 18, 2025. Also see the Amended Expert Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, June 20, 2025.

5.  The following section of this Rebuttal contains my responses to Dr. Hyman's specific criticisms of my calculations and opinions. For the reasons discussed below, I adhere to the opinions expressed in my Opening Report.

## II. RESPONSES TO DR. HYMAN'S ARGUMENTS

### A. Dr. Hyman's Criticisms of Dr. Hoover's Strategic Plan

6.  Dr. Hyman argues that the estimated cost of Dr. Hoover's strategic plan for DeKalb is overstated because he believes there are issues with Dr. Hoover's strategic plan. For example, he argues that Dr. Hoover "identifies needs that are overstated, disproportionate to alleged harms, and unreliable."[5] He attributes these criticisms not to my actual calculations, but to the purportedly "overly broad" nature of the strategic plan.[6] I understand that Dr. Hoover has considered Dr. Hyman's criticisms and has concluded that none of them cause her to modify her original opinions about the scope of the strategic plan that is necessary to address the harms stemming from student social media use in DeKalb and that she continues to recommend the staffing and training outlined in her original report for DeKalb. My calculations are based on the recommendations Dr. Hoover has made for DeKalb's strategic plan. Thus, because Dr. Hoover has found that Dr. Hyman has not offered critiques that would cause her to modify the strategic plan, and she continues to recommend the strategic plan for DeKalb outlined in her original report, there is no basis to modify my calculations of the costs associated with Dr. Hoover's strategic plan for DeKalb.

### B. Dr. Hyman's Arguments Regarding Training and Development Costs

7.  Dr. Hyman incorrectly argues that my estimates of the training and development costs associated with the strategic plan are overstated. First, Dr. Hyman argues that existing staff are already required to do professional development, suggesting that this time could be used for the

---

[5] Hyman Report, Sections VIII.A and VIII.B.

[6] Hyman Report, Section VIII.A.1.

social media training described in Dr. Hoover's strategic plan.[7] However, my understanding is that Dr. Hoover's strategic plan is based on providing a systemic and holistic plan to address harms caused by social media and Dr. Hoover opines that current programming, including professional development for existing staff, is insufficient to address the harms caused by student social media use.[8] Second, Dr. Hyman wrongly argues that I have double-counted the time that newly hired staff would spend on professional development.[9] He argues that professional development time would be built into the cost of hiring a new employee so should not be costed out separately. However, I calculated training costs for all staff, including new positions, consistent with the strategic plan proposed by Dr. Hoover. I understand that Dr. Hoover opines that, in school systems, professional development costs are regularly incurred in addition to salary and benefits.[10] Thus, my calculations related to training and development for newly hired staff are not double counting.

### C. Dr. Hyman's Criticisms Regarding Cost-Benefit Analysis

8. Dr. Hyman criticizes Dr. Hoover and me for not conducting a cost-benefit analysis that assesses whether the potential benefits of the strategic plan proposed by Dr. Hoover exceed its costs.[11] He suggests that such an analysis might show that the school would benefit more from

---

[7] Hyman Report, Section VIII.B.4.

[8] Rebuttal Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, August 1, 2025.

[9] Hyman Report, Section VIII.B.4.

[10] Rebuttal Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, August 1, 2025.

[11] Hyman Report, Section VIII.C. Similarly, Dr. Hyman argues that I do not tie my cost estimates to harms incurred due to student social media use and the addictive features built into social media platforms (Hyman Report, Section VIII.B.3). In my report, I am costing out the strategic plan recommended by Dr. Hoover to address the negative impacts of student social media use in DeKalb—Dr. Hyman's criticism here is beyond the scope of my assignment.

allocating resources to other problems, "such as improving the quality of education or decreasing class sizes."[12]

9.  Dr. Hyman misses the point. My task is to cost out the strategic plan recommended by Dr. Hoover, not to perform a cost-benefit analysis. Moreover, for a school allocating scarce resources, cost-benefit analysis may be a useful tool. But it is irrelevant here where Defendants' conduct causes significant harm to school functioning, student mental health, and learning, and thus, external sources of funding will be provided for the strategic plan. In addition, Dr. Hoover's strategic plan is focused on addressing the relevant harms to DeKalb caused by student social media use and does not need to consider other actions the school could take to address potential concerns not at issue here.

10. Dr. Hyman also suggests that Defendants should not be responsible for addressing harms caused by their actions because the benefits of the strategic plan may outweigh its costs. However, Dr. Hyman provides no such analysis and is merely speculating.

11. In addition, Dr. Hyman's logic is flawed when he asserts that Defendants should be excused from financial obligation to address harms they caused if the monetary benefits of the strategic plan are outweighed by its cost. Dr. Hyman's flawed logic can be illustrated with a simple analogy. Imagine Dr. Hyman breaks his neighbor's window. His neighbor requests compensation to fix it. First, Dr. Hyman would argue that he should not have to pay his neighbor because, from a cost-benefit perspective, it would be a more "sensible use of resources"[13] to repair other parts of the house, such as the fence. Second, Dr. Hyman would argue that he should not have to pay because the cost of fixing the window is greater than the monetary value to his neighbor of having the window repaired (*e.g.*, from retaining heat). Clearly both arguments are logically flawed.

---

[12] Hyman Report, Section VIII.C.

[13] Hyman Report, ¶ 180.

### D. Dr. Hyman's Arguments Regarding Funding the Strategic Plan

12. Dr. Hyman argues that external sources of funding could be used to mitigate the harms caused by social media.[14] First, my opinion is limited to costing out Dr. Hoover's strategic plan, not opining on sources of funding for the plan. Second, I understand Dr. Hoover considered this issue and determined that these alternative sources of funding would not be sufficient.

The undersigned hereby certifies their understanding that they owe a primary and overriding duty of candor and professional integrity to help the Court on matters within their expertise and in all submissions to, or testimony before, the Court. The undersigned further certifies that their report and opinions are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

*[signature]*
_____
Douglas L. Leslie, Ph.D.
August 1, 2025

---

[14] Hyman Report, Section VIII.B.2.

**ATTACHMENT A**

# ATTACHMENT A

## MATERIALS CONSIDERED

Amended Expert Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, June 20, 2025.

Amended Expert Report of Professor Douglas L. Leslie, Ph.D., for DeKalb County School District, in this matter, June 20, 2025.

Expert Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, May 18, 2025.

Expert Report of Dr. Sharon Hoover, PhD, in this matter, May 16, 2025.

Expert Report of Joshua Hyman, Ph.D., for DeKalb County School District, in this matter, July 11, 2025.

Expert Report of Professor Douglas L. Leslie, Ph.D., for DeKalb County School District, in this matter, May 19, 2025.

Rebuttal Report of Dr. Sharon Hoover, PhD, for DeKalb County School District, in this matter, August 1, 2025.