*[Submitting Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION,* | MDL No. 3047<br>Case No. 4:22-md-03047-YGR |
| This Document Relates To: | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERTS' GENERAL CAUSATION OPINIONS FOR FAILURE TO ACCOUNT FOR SECTION 230 AND THE FIRST AMENDMENT** |
| ALL ACTIONS | Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.    ARGUMENT ................................................................................................. 2

    A.    Defendants ignore the Court's failure to warn rulings. ........................................ 2

    B.    Defendants misunderstand the scope of Section 230. ........................................... 3

    C.    Defendants improperly apply Section 230 as a rule of evidence. ........................... 5

    D.    Defendants seek to have it both ways by using content moderation as a defense ................................................................................................................. 10

    E.    Defendants do not present a proper *Daubert* challenge. ...................................... 11

        a.    Plaintiffs' experts' methodology is sufficiently reliable............................ 11

        b.    Plaintiffs' experts' opinions are relevant to the causes of action. ............. 13

    F.    Defendants seek to usurp the role of the jury. ..................................................... 14

III.    CONCLUSION ............................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                **Page(s)**

3

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) .................................................................... 4

4

*Barrett v. Harris*,
   86 P.3d 954 (Ariz. Ct. App. 2004) ............................................................. 13

5

6

*Brown v. Nat'l Oil Co.*,
   105 S.E.2d 81 (S.C. 1958) .......................................................................... 13

7

*Calise v. Meta Platforms, Inc.*,
   103 F.4th 732 (9th Cir. 2024) ................................................................. 4, 6

8

9

*Camp v. Jiffy Lube No. 114*,
   706 A.2d 1193 (N.J. Super. Ct. App. Div. 1998) ...................................... 13

10

11

*Conceptus, Inc. v. Hologic, Inc.*,
   2012 WL 44237 (N.D. Cal. Jan. 9, 2012) ................................................. 12

12

*Conley v. R.J. Reynolds Tobacco Co.*,
   286 F. Supp. 2d 1097 (N.D. Cal. 2002) ...................................................... 9

13

14

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...................................................................... 13

15

16

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................. 12, 15

17

*Doe v. Grindr Inc.*,
   128 F.4th 1148 (9th Cir. 2025) .................................................................... 8

18

19

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ....................................................................... 4

20

21

*Dunston v. Huang*,
   709 F. Supp. 2d 421 (E.D. Va. 2010) ....................................................... 13

22

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ...................................................................... 11

23

24

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................... 14

25

26

*George v. Ford Motor Co.*,
   2007 WL 2398806 (S.D.N.Y., Aug. 17, 2007) .......................................... 8

27

*Greenwood Utils. Comm'n v. Mississippi Power Co.*,
   751 F.2d 1484 (5th Cir. 1985) ..................................................................... 9

28

ii

**Page(s)**

*Hesling v. CSX Transp., Inc.*,
   396 F.3d 632 (5th Cir. 2005) ........................................................................... 9

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019) ........................................................................... 4

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
   2025 WL 2782591 (N.D. Cal. Sep. 30, 2025) .............................................. 5, 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   186 F.3d 781 (7th Cir. 1999) ........................................................................... 6

*In re Cir. Breaker Litig.*,
   984 F. Supp. 1267 (C.D. Cal. 1997) ................................................................ 9

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015) ............................................. 6, 15

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................. 6

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   289 F. Supp. 2d 1230 (W.D. Wash. 2003) ......................................................11

*In re Smith & Nephew BirminghamHip Resurfacing Hip Implant Products. Liability Litigation*,
   2023 WL 6794318 (D. Md. Oct. 12, 2023) ....................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ................................................... 6

*In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   2016 WL 2940778 (D.S.C. May 6, 2016) ......................................................... 9

*Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*,
   603 S.W.3d 409 (Tex. 2020) .......................................................................... 14

*John Crane, Inc. v. Jones*,
   604 S.E.2d 822 (Ga. 2004) ............................................................................. 13

*Kennedy v. Collagen Corp.*,
   161 F.3d 1226 (9th Cir. 1998) ....................................................................... 12

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ......................................................................... 8

*Lowery v. Sanofi-Aventis LLC*,
   2021 WL 872620 (N.D. Ala. Mar. 9, 2021) ..................................................... 9

**Page(s)**

*Malden Transp., Inc. v. Uber Techs., Inc.*,
404 F. Supp. 3d 404 (D. Mass. 2019) ......................................................... 9

*McBride v. Houston Cnty. Health Care Auth.*,
2015 WL 3648995 (M.D. Ala. June 11, 2015) ........................................... 12

*Messick v. Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) .................................................................. 12

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) .................................................................................. 9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
730 F.3d 1111 (9th Cir. 2013) .................................................................. 9

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023) .................................................... 11

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .................................................................... 11

*Rogers v. Kasdan*,
612 S.W.2d 133 (Ky. 1981) ...................................................................... 13

*Sidibe v. Sutter Health*,
103 F.4th 675 (9th Cir. 2024) .................................................................. 10

*Soc. Media Cases*,
2025 WL 2807828 (Cal. Super. Ct. Sep. 22, 2025) ........................... *passim*

*Soc. Media Cases*,
JCCP 5255, Order Denying Mot. for Summ. J. (R.K.C.) (Cal. Super. Ct. Nov. 5, 2025) ............ 5

*Stilwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) .................................................................. 9

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) .................................................................................. 6

*United States v. Escalante*,
637 F.2d 1197 (9th Cir. 1980) .................................................................. 15

*United States v. Finley*,
301 F.3d 1000 (9th Cir. 2002) ............................................................. 1, 14

*United States v. Ford*,
2021 WL 5042985 (D. Alaska Oct. 29, 2021) ........................................... 15

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

**Page(s)**

*United States v. Sandoval-Mendoza,*
　472 F.3d 645 (9th Cir. 2006) ................................................................................. 12

*Walton v. Premier Soccer Club, Inc.,*
　311 A.3d 406 (Md. Ct. App. 2024) ......................................................................... 13

*Wendell v. GlaxoSmithKline LLC,*
　858 F.3d 1227 (9th Cir. 2017) ............................................................................... 12

*Williams v. Gerber Prods. Inc.,*
　552 F.3d 934 (9th Cir. 2008) ................................................................................... 2

**Other Authorities**

Restatement (Second) of Torts § 821B (1979) ............................................................. 7

Inder M. Verma, *Editorial expression of concern: Experimental evidence of massive-scale
emotional contagion through social networks*, 111 PNAS No. 29 (Jul. 22, 2014),
available at: https://www.pnas.org/doi/10.1073/pnas.1412469111 ............................ 12

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

## I.   **INTRODUCTION**

Plaintiffs' general causation experts—leaders in their fields—offer testimony that will help the jury understand how the adolescent brain develops and how the addictive design of Defendants' platforms harms teens. Because these experts' opinions are the product of reliable principles and methods and "provide[] information beyond the common knowledge of the trier of fact," they should be heard by the jury. *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002).[1]

Defendants, however, have moved to exclude all causation testimony based on a counterfactual world where this Court dismissed failure to warn and the State AGs' deception claims, and only allowed certain features to be part of this case. *Contra* ECF 1214 at 36-37. The Court can deny Defendants' motion on that false predicate alone. But Defendants' motion is flawed for additional reasons. Defendants misunderstand the nature of Section 230, attempting to write a "but for" test into the statute that the Ninth Circuit, this Court, and the JCCP court have repeatedly rejected. Further, Defendants misconstrue Section 230 as a rule of evidence, improperly trying to use it to cordon off relevant and admissible evidence.

Defendants focus on these wrong-headed arguments on Section 230 while largely failing to address the bedrock *Daubert* requirements, which support the admission of Plaintiffs' general causation experts' testimony because these qualified experts have applied a reliable methodology

---

[1] Those conclusions are not controversial based on the evidence: adolescent brains are "particularly vulnerable to the negative impacts of social media[,]" ECF 2298-59 (Telzer Rep.) ¶ 4; "most of [D]efendants' design choices take advantage of [these] developmental susceptibilities, making it even more difficult for the adolescent user to curtail use, and increasing the likelihood of developing a problematic relationship with social media[,]" ECF 2298-21 (Cingel Rep.) ¶ 6; *see* Ex. 1 (Prinstein Rep.) ¶¶ 28-30; "[a]ddictive social media exploit our innate need for human connection by increasing access, quantity, potency, novelty, and uncertainty of social rewards, leading to brain and behavioral changes consistent with addiction[,]" ECF 2298-33 (Lembke Rep.) ¶ A.3; the research, which primarily measures time spent, is "agnostic to content[,]" ECF 2298-76 (Twenge Dep.) 140:20-41:5; the "totality of [it] demonstrates a clear causal path from social media use to low psychological well-being in adolescents[,]" ECF 2298-74 (Twenge Rep.) ¶ 7; and "[f]or parents and children to make an informed decision regarding the risks/benefits of social media, social media companies need to fully disclose the nature and risk of harms to them[,]" ECF 2298-9 (Christakis Rep.) ¶ 12.

1  to indisputably relevant matters, resulting in helpful testimony on the core question of causation.

2  The Court should deny Defendants' motion.[2]

3  **II.    ARGUMENT**

4      **A.    Defendants ignore the Court's failure to warn rulings.**

5        Defendants argue that Plaintiffs' experts' causation opinions are inadmissible because they

6  consider the effect of features that (supposedly) are "no longer part of this case." Mot. at 1. This

7  argument fails at the starting block. *All* of the features of Defendants' platforms are "part of this

8  case" given the Court's rulings on failure to warn and the State AGs' deception claims.[3] The Court

9  said unequivocally that Section 230 does not bar "liability predicated on a failure-to-warn of known

10  risks of addiction attendant to *any* platform features *or as to platform construction in general*."

11  ECF 1214 at 2 (emphasis added). Because "any platform features" and "platform construction in

12  general" are relevant to the causation and harm inquiries, Plaintiffs' experts should be permitted to

13  testify about them. The "disentangling" exercise Defendants insist upon is thus unnecessary and

14  unwarranted.[4] That is enough to dispose of Defendants' motion.[5]

15        Instead of briefing the issue, Defendants have engaged in a form of self-help—taking *as a*

16  *given* that their Ninth Circuit appeal has succeeded and that certain features connected to failure to

17  warn and the State AGs' deception claims are off the table for present purposes. Their only defense

18  of this position comes in a single conclusory sentence. Mot. at 4 n.3. Defendants do not explain

19  why the two cases they cite are inconsistent with the Court's rulings or how they are relevant to the

20

21

---

22  [2] Defendants' motion purports to challenge Plaintiffs' experts on the basis of both Section 230 and
23  the First Amendment, but they do not make (and hence have waived) any arguments directed at the
First Amendment. As such, Plaintiffs' brief focuses on Section 230.

24  [3] Contrary to Defendants' arguments, the State AGs' deception claims are broader than common-
law failure to warn, as a deception claim seeks to hold a company accountable for any statement or
25  omission that has a tendency or capacity to mislead the public. *See, e.g.*, *Williams v. Gerber Prods.*
*Inc.*, 552 F.3d 934, 938 (9th Cir. 2008).

26  [4] Nevertheless, Plaintiffs' experts *have* provided testimony specific to the design-defect and unfair-
practices features. *See infra* Section II.E.b.

27  [5] Defendants otherwise misdescribe Plaintiffs' evidence as devoid of expert testimony on warnings
28  causation. Even if such testimony were required (it is not), the record is chock-full of such evidence.
*See* Pls.' Omnibus Opp. to Defs.' Mot. for Summ. J. at 11-12.

          OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1  evidentiary issues before the Court. As Defendants have "failed to brief specific grounds" for their

2  position, there is no reason for the Court to consider it in its ruling. ECF 430 at 41 n.60.

3       If honored, Defendants' procedurally defective gambit would result in extreme substantive

4  prejudice to Plaintiffs. Indeed, the majority of Defendants' brief is devoted to inviting precisely that

5  prejudice, arguing that Plaintiffs' general causation experts should be prohibited from presenting

6  their opinions to the jury because they did not undertake an unnecessary filtration exercise,

7  removing from their expert analyses any trace of the supposedly off-limits features. If Plaintiffs'

8  experts had done what Defendants insist they should have—declined to consider the impact of the

9  platforms as a whole, and all their requisite features, in providing their general causation opinions—

10  Defendants surely would be complaining about *that* failing instead, seeking summary judgment on

11  the failure to warn and deception theories. Given the importance of failure to warn to the overall

12  shape of this litigation, Defendants' effort to reframe the Section 230 discussion in a manner that

13  assumes the validity of their underlying position rather than accept the Court's prior orders should

14  be rejected.

15       But Defendants' brief would still be meritless even if the *only* features relevant to proving

16  causation and damages were those which could be relied upon by a personal injury plaintiff raising

17  a design defect (but not a failure to warn) product liability claim or a State AG raising an unfairness

18  claim, respectively (hereinafter the "design-defect and unfair-practices features"). As the remaining

19  sections demonstrate, even in this counterfactual world, Defendants' motion should still be rejected.

20      **B.    Defendants misunderstand the scope of Section 230.**

21       The fundamental problem with Defendants' argument is that it misunderstands the scope of

22  Section 230. Their argument, in a nutshell, is that Plaintiffs' experts must offer opinions that the

23  design-defect and unfair-practices features, "***standing alone***, are capable of causing the harms

24  Plaintiffs allege." Mot. at 2 (emphasis added). But Section 230 creates no requirement that Plaintiffs

25  strip away third-party content (or other features) from the causal chain. This is what the Ninth

26  Circuit means when it rejects, repeatedly, parties' efforts to create a "but for" test (that test being,

27  could this cause of action move forward but for the content on the site—or, closer to home, are

28  design-defect and unfair-practices features, standing alone, capable of causing the harms alleged).

Just last year, the Ninth Circuit rejected such arguments (advanced by one of the Defendants here) and reaffirmed that "it is not enough that a claim, including its underlying facts, stems from third-party content for § 230 immunity to apply." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). In other words, a claim and its underlying facts **can** stem from third-party content without triggering Section 230. *See* ECF 430 at 11 ("Section 230 does not create immunity simply because publication of third-party content is relevant to or a but-for cause of the plaintiff's harm."); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016) ("Publishing activity is a but-for cause of just about everything [Defendants are] involved in."). If an unbarred claim can "stem" from third-party content, it follows *a fortiori* that an expert should be able to consider third-party content (and other features) in the course of opining that Defendants' design-defect and unfair-practices features were a substantial factor in causing harm. Section 230 only enters the equation when the overall duty plaintiffs seek to impose would "oblige[] the defendant to 'monitor third-party content'—or else face liability[.]" *Calise*, 103 F.4th at 742 (quoting *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)).

This makes sense. Take *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). The court held that Section 230 did not bar the plaintiff's promissory estoppel claim, in a case where the platform had promised to remove false profiles of her. But there was no way the plaintiff could prove that claim without introducing evidence of defendant's publication of, and failure to remove, the offending content. Failing to remove the content is what constituted the defendant's breach of the promise. *Id*. at 1107 ("[I]f Yahoo did make a promise, it promised to take down third-party content from its website[.]").Or consider *Calise*. Whether Meta was liable for breaching its promise to combat scam ads would of course require evidence about scam ads. *Calise*, 103 F.4th at 742-43. And to determine what harm flowed from the breach, the jury would have to consider the harm caused by those scam activities (*i.e.*, the harm caused by their publication). *See id*. In short, evidence of content can come in without catching the Section 230 tripwire.

Judge Kuhl correctly understood the import of these cases in evaluating (and rejecting) the same argument that Defendants pursue here: namely, "that Plaintiffs' general causation experts should be excluded because they rely on and fail to disentangle the impact of potentially harmful

third-party content on their opinions." *Soc. Media Cases*, 2025 WL 2807828, at *6 (Cal. Super. Ct. Sep. 22, 2025); *compare with* Mot. at 4 (arguing that Plaintiffs' experts must "disaggregate the impact of content and protected features from any actionable aspect of the platforms."). Judge Kuhl rejected this "over-generalized argument [as] unpersuasive[.]" *Soc. Media Cases*, 2025 WL 2807828, at *6. She held, in relevant part:

> Of course, Defendants' social media platforms could not operate without content, and much of that content is third-party content. Many of Plaintiffs' experts make the unsurprising observation that some of the third-party content minors see on social media can be harmful. Insofar as minors are harmed by content appearing on a social media platform, this court has held that Section 230 precludes liability for such harm.... But even if third-party content is a "but-for" cause of the harm suffered by a plaintiff, the action is not barred by Section 230 if the cause of action does not seek to hold the provider liable for allowing that content to exist on the social media platform or failing to remove the content.

*Id*. at *7; *see also Soc. Media Cases*, JCCP 5255, Order Denying Mot. for Summ. J. at 1-3 (R.K.C.) (Cal. Super Ct. Nov. 5, 2025) (denying summary judgment based on Section 230 and First Amendment because "[t]he cause of R.K.C.'s harms is a disputed factual question that must be resolved by the jury."). So too with the features this Court found to be closely tied to content, and this Court should reach the same conclusion.

## C. Defendants improperly apply Section 230 as a rule of evidence.

In addition to its other infirmities, Defendants' argument would require the Court to accept that Section 230 can even operate as a rule of ***evidence***, rather than just as a rule of preemption or as an affirmative defense to liability. Nothing in the text of the statute indicates it should be read this way (and Defendants do not so much as attempt a textual argument). Further, no court has ever held Section 230 restricts the admission of evidence. *See, e.g.*, *In re Apple Inc. App Store Simulated Casino-Style Games Litig.* ("*Casino Games Litig.*"), 2025 WL 2782591, at *20 n.10 (N.D. Cal. Sep. 30, 2025) ("[T]he Court sees no reason why it cannot consider facts that are unrelated to [the allowable liability theory]."). The standards governing admissibility of expert testimony in cases involving a Section 230 defense are no different from any other case, with admissibility contingent on the threshold relevance and reliability requirements of Rule 702 and *Daubert*.

Section 230 "depends on the duty being imposed." *Id.*[6] To analyze whether it preempts a plaintiff's claim, courts are "require[d]" to "look to the legal 'duty,'" not what evidence the plaintiff could use to show that the duty was violated. *Calise*, 103 F.4th at 742. Thus, it is "doubtful that Section 230 restricts the universe of . . . evidence that may be considered." *Casino Games Litig.*, 2025 WL 2782591, at *20 n.10.

Defendants' arguments to the contrary ignore the "established judicial rule" that conduct "which for some reason [is] barred from forming the basis for a suit, may nevertheless be introduced" for another admissible purpose—here, for example, to prove the significance of an interference with a public right. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965). This general principle that evidence may be admissible for some purposes even if barred for others has been well-litigated in cases involving other defenses and preemption of state tort law. Take—as Defendants do (Mot. at 5)—cases applying the *Noerr-Pennington* doctrine, which involves both statutory immunity and First Amendment protections. When considering admissibility, courts consistently allow plaintiffs to use evidence of *Noerr-Pennington*-protected conduct to support other, non-prohibited claims. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 789 (7th Cir. 1999) (court "erred in treating the doctrine as a rule of evidence that forbids the introduction of evidence"); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 633 n.61 (N.D. Cal. 2020) (allegations about petitioning conduct admissible as evidence of unfair conduct even if not independently actionable). These courts reason that "a defendant may not be held liable based solely on conduct that is protected by the First Amendment, but that does not mean that such conduct is altogether inadmissible or necessarily lacking in evidentiary value." *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 8130449, at *2 (S.D.N.Y. Dec. 3, 2015). So, for example, while a plaintiff could not bring a claim that a defendant's lobbying efforts constituted fraudulent misrepresentation, they *could* use evidence involving those lobbying efforts to prove knowledge and intent for a racketeering claim based on fraud. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017

---

[6] The evidentiary principles here equally apply to the State AGs' claims, as there is no material difference in evidentiary rules between claims sounding in tort and consumer protection.

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1   WL 4890594, at *15 n.4 (N.D. Cal. Oct. 30, 2017).

2         Here, the jury will decide (among other things) whether Defendants' conduct created an

3   "unreasonable interference with a right common to the general public." Restatement (Second) of

4   Torts § 821B (1979).[7] To decide whether Defendants' failure to implement meaningful parental

5   controls, time-of-use limitations, or effective age verification unreasonably interfered with a public

6   right to health, safety, or education, the jury may consider evidence about platform construction in

7   general because such evidence bears on the significance of the interference with a public right. *See*

8   *id.* at cmt. e ("significance" involves "weighing [] the gravity of the harm against the utility of the

9   conduct"). Whether, and to what extent, Defendants significantly interfered with a public right by

10  failing to provide, for example, adequate parental controls or effective time-of-use controls

11  necessarily turns on how dangerous the platform is for youth, including because its architecture

12  contributes to compulsive use. In undertaking that inquiry, how the design-defect and unfair-

13  practices features intersect with the platform as a whole is relevant. The jury could not, for example,

14  decide that failing to provide time-of-use limitations was a significant interference with a public

15  right without understanding how the platform's features collectively led youth to use the platform

16  compulsively. In short, what is and isn't unreasonable need not be decided in a vacuum but will

17  require expert testimony about Defendants' platforms and their harms writ-large. Such evidence,

18  then, has great evidentiary value and is admissible even if certain aspects of that conduct cannot,

19  standing alone, serve as an independent basis for liability.

20        While the foregoing discussion concerns the public nuisance claims maintained by certain

21  bellwether school districts, the same logic applies to all those districts' negligence claims and the

22  AGs' consumer protection claims. To understand whether, how, and to what extent Defendants

23  breached their duty of care or violated consumer protection laws, the jury will need to understand

24  how the Defendants' platforms work as a whole—and how use of the platforms impacts

25  adolescents' behavioral and mental health.

26        This common-sense approach explains why, even apart from *Noerr-Pennington* and its

27

28  _____

[7] Courts look to the Restatement to define public nuisance in the applicable bellwether states. ECF 2288 at 12; ECF 2289 at 12-13; ECF 2290 at 15; ECF 2296 at 15.

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

progeny, courts routinely admit evidence that could not form the basis for liability under certain theories, if relevant to other theories. For instance, in *George v. Ford Motor Co.*, the court declined to exclude evidence of alleged misrepresentations to federal agencies in a state-law tort case, even though "such misrepresentations could not in themselves provide a basis for a state-law cause of action, because any such claim would be preempted by the federal regulatory scheme." 2007 WL 2398806, at *8 (S.D.N.Y., Aug. 17, 2007). Casting aside the defendant's attempt to transform a preemption rule into a rule of evidence, the district court found that "[t]he Supreme Court manifestly did not lay down a rule of evidence, precluding admission of evidence of alleged misrepresentations to federal agencies in any state-law tort case." *Id*.

Defendants' own cited cases further prove the point. In *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Products. Liability Litigation* ("*Birmingham Hip*"), the court declined to exclude expert testimony that was applicable to preempted claims because it "could support the non-preempted claim of off-label promotion." 2023 WL 6794318, at *9 (D. Md. Oct. 12, 2023). The court also held that an expert could opine on the safety of the product "as a whole," even though claims related to particular components were preempted. *Id.* at *5, 9.

Defendants do not explain how or why Section 230 preemption should be understood to "lay down a rule of evidence," *George*, 2007 WL 2398806, at *8, and there is no good reason to find that it does so. Far from requiring Plaintiffs' experts to show "that the at-issue features are capable of causing harm 'independent of [the platform's] role as a facilitator and publisher of third-party content,'" Mot. at 15 (alteration in original) (quoting *Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025), *cert. denied*, No. 24-1202, 2025 WL 2906619 (U.S. Oct. 14, 2025)), *Grindr* stands for the same rule as every other Section 230 case cited by the Parties: Section 230 only applies if the duty imposed by the claim "seek[s] to hold [the defendant] responsible as a publisher or speaker." *Grindr*, 128 F.4th at 1153 (second alteration in original) (quoting *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021)). Whether third-party content (or "liability-barred features") is involved in the causal chain has no relevance to whether Section 230 shields a defendant from a particular claim. Nothing in *Grindr*, a case in which the claim turned entirely on third-party content and publishing (communications with abusive adults), says otherwise. *See id.* at 1153, 1153 n.3

(rejecting but-for causation standard). Neither does the First Amendment set such a legal boundary. In *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), the Court asked whether "lawful [or] unlawful collective action" was "the basis for a damages award." *Id.* at 933-34 (recognizing "the importance of avoiding the imposition of punishment for constitutionally protected activity"). There, liability was barred because the plaintiff specifically sought to punish the NAACP for its "use of speeches, marches, and threats of social ostracism." *Id.* at 933. That situation is far afield from ours, where Plaintiffs are ***not*** seeking to impose on Defendants an (impermissible) duty to remove or monitor third-party content.

Defendants' other citations are no more convincing. In the few cases Defendants cite where courts fully excluded testimony on the basis of preemption, it was because the testimony was ***only*** relevant to preempted claims. *See, e.g.*, *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 644-46 (5th Cir. 2005) (testimony offered solely in support of fully preempted claim); *Lowery v. Sanofi-Aventis LLC*, 2021 WL 872620, at *21 (N.D. Ala. Mar. 9, 2021) (same); *In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2016 WL 2940778, at *3 (D.S.C. May 6, 2016) (same); *see also In re Cir. Breaker Litig.*, 984 F. Supp. 1267, 1283 (C.D. Cal. 1997) (defendants' experts did not present any evidence "tying non-protected activities" to their claimed injuries).

Defendants' other cases address summary judgment rather than the admissibility of expert testimony. *Greenwood Utils. Comm'n v. Mississippi Power Co*., 751 F.2d 1484, 1496, 1503 (5th Cir. 1985) (review of summary judgment decision); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (same). Summary judgment and Rule 702 are distinct inquiries with non-overlapping standards. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007).

Finally, in Defendants' other cases, the challenged experts were excluded on Rule 702 grounds having nothing at all to do with Section 230 preemption. *See Malden Transp., Inc. v. Uber Techs., Inc*., 404 F. Supp. 3d 404, 416-18, 423-24 (D. Mass. 2019) (damages expert did not reliably calculate unfair competition damages attributable to anticompetitive activity); *Conley v. R.J. Reynolds Tobacco Co*., 286 F. Supp. 2d 1097, 1104-05 (N.D. Cal. 2002) (expert never offered opinion as to time of injury despite opining that plaintiff's death was caused by defendant).

1    In sum, the Court must consider whether Plaintiffs' expert evidence is admissible under

2    Rule 702, just as in any other case. *See infra* Sec. E. That Plaintiffs' experts discuss third-party

3    content and features other than the design-defect and unfair-practices features in explaining their

4    opinions has no bearing on their opinions' admissibility. *See Soc. Media Cases*, 2025 WL 2807828,

5    at *7 (that "[m]any of Plaintiffs' experts make the unsurprising observation that some of the third-

6    party content minors see on social media can be harmful" is no reason to exclude).

7    **D.      Defendants seek to have it both ways by using content moderation as a defense.**

8    Even if Section 230 were an evidentiary rule, Defendants may not invoke the statute "to

9    shield [themselves] from potentially damaging evidence" while using that same type of evidence

10   "as a sword to slice through the foundation of Plaintiffs' case." *Sidibe v. Sutter Health*, 103 F.4th

11   675, 701 (9th Cir. 2024) (cleaned up). Yet that is exactly what Defendants attempt in this case.

12   Meta offers the testimony of Professor Emilio Ferrara, a Professor of Computer Science.

13   Professor Ferrara advances six opinions that are ***exclusively*** concerned with Meta's content

14   moderation policies and practices, including that these policies are "reasonably designed, and

15   continuously improving." Ex. 2 (Ferrara Rep.) ¶ 262. TikTok offers the testimony of Dr. Chris

16   Mattmann, who works as a social media researcher. Dr. Mattmann offers similar opinions, claiming

17   that TikTok's content moderation is "industry leading" in "scale and efficacy." Ex. 3 (Mattmann

18   Rep.) ¶ 20. He devotes a lengthy section in his report (aptly titled "Content Moderation") to why

19   TikTok's content moderation practice should exculpate it in this case. *Id*. ¶¶ 66-172. Finally, Dr.

20   Sandeep Chatterjee, Snap's proposed expert, is currently the CEO of a technology consulting

21   company. His report engages in the same gambit as Drs. Ferrara and Mattmann, opining that Snap

22   "bar[s] a number of types of content," has "implemented multiple layers of moderation" to "address

23   potentially sensitive or suggestive material," and has "actively adjusted policies to exclude

24   inappropriate material." Ex. 4 (Chatterjee Rep.) ¶¶ 88, 90-91.

25   If Defendants were correct about the scope of Section 230, the testimony of these defense

26   experts would be barred in toto because their opinions "turn[] on content and protected publishing

27   activities." Mot. at 4. That Defendants themselves would stand in violation of the "Section 230 rule

28   of evidence" they propose is proof enough that rule is wrong.

### E.     Defendants do not present a proper *Daubert* challenge.

Under Rule 702 and *Daubert*, courts act as "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010), *as amended* (Apr. 27, 2010). A court fulfills its role as a gatekeeper by confirming that expert testimony "both rests on a ***reliable*** foundation and is ***relevant*** to the task at hand." *Id.* at 564 (citation omitted, emphasis added). "When an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565.

Defendants' motion purports to challenge both the reliability and relevancy of Plaintiffs' expert testimony, but in reality does neither. Defendants' arguments go to the weight that should be afforded to Plaintiffs' experts' causation opinions. That is for the jury to decide.

### a.     Plaintiffs' experts' methodology is sufficiently reliable.

Defendants do not show that Plaintiffs' experts used unreliable methodologies. That Defendants disagree with the experts' conclusions does "not establish that plaintiffs' experts utilized scientifically unreliable methodologies." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 289 F. Supp. 2d 1230, 1246 (W.D. Wash. 2003). While Defendants try to transform their attack on conclusions into a methodological challenge by arguing that Plaintiffs' experts ***should have*** performed studies isolating the effects of individual at-issue features on adolescents' health, Mot. at 2, 7-12, that is a challenge to weight, not admissibility. *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1033 (S.D. Cal. 2023) ("[A]n argument that an expert should have addressed different evidence at best, goes to the weight or credibility of the expert's analysis, not its admissibility.") (cleaned up). In rejecting an identical argument in the JCCP, Judge Kuhl explained "there is no requirement that a causation expert rely on a specific study or other scientific publication expressing precisely the same conclusion at which the expert has arrived." *Soc. Media Cases*, 2025 WL 2807828, at *3; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024-25 (9th Cir. 2022) (experts may eschew studies entirely and rely solely on their "specialized knowledge and experience").

Uncertainty in scientific literature, such as about the relative impact of content or features on youth mental health, is not a reason to exclude expert testimony. The Ninth Circuit has

"consistently recognized the difficulties in establishing certainty in the medical sciences," which means that "an expert [need not] be able to identify the sole cause of a medical condition in order for his or her testimony to be reliable." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1198-99 (9th Cir. 2014). An expert's testimony need only be premised on "good grounds, based on what is known." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) (cleaned up). Accordingly, experts may rely on studies that go partway and then bridge "the gap" to their own conclusions. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1229-30 (9th Cir. 1998).

Defendants' insistence on a study isolating the effects of particular features on youth mental health is belied by Defendants' own experts' concessions that such a study would be impossible, *e.g.*, Ex. 5 (Baiocchi Rep.) ¶ 64, and unhelpful to the trier of fact, since "research [that] has focused on the impact of these features in isolation . . . does not accurately reflect the user experience" on these platforms. Ex. 6 (Auerbach Rep.) ¶ 99. Still more, Defendants' own expert acknowledges that it would be unethical to perform such a case-controlled study because it would expose children to potentially harmful features over a prolonged period. Ex. 5 (Baiocchi Rep.) ¶ 64.[8] Far from interpreting *Daubert* to mandate studies under such circumstances, the Ninth Circuit has "long recognized that it may not always be possible to conduct certain types of studies," *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1236-37 (9th Cir. 2017), particularly when doing so would raise "ethical concerns." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006). This commonsense limitation "does not prevent the admission of Plaintiffs' experts' testimony." *Wendell*, 858 F.3d at 1237; *see also Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44237, at *10 (N.D. Cal. Jan. 9, 2012) (*Daubert* does not require experts to "do the impossible"); *McBride v. Houston Cnty. Health Care Auth.*, 2015 WL 3648995, at *4 (M.D. Ala. June 11, 2015) (expert's failure to conduct unethical studies exposing humans to potentially harmful conditions is no basis for

---

[8] When Meta performed and published a study that intentionally exposed hundreds of thousands of users to more negative content, it triggered an "editorial expression of concern." *See* Ex. 7 [Boland Dep., Ex. 25 at 1] ("In an experiment with people who use Facebook, we test whether emotional contagion occurs…The experiment manipulated the extent to which people ($N$=689,003) were exposed to emotional expressions in their News Feed."); Inder M. Verma, *Editorial expression of concern: Experimental evidence of massive-scale emotional contagion through social networks*. 111 PNAS No. 29 (Jul. 22, 2014), available at https://www.pnas.org/doi/10.1073/pnas.1412469111 (noting "a matter of concern that the collection of the data by Facebook may have involved practices that were not fully consistent with the principles of obtaining informed consent").

*Daubert* challenge); *Dunston v. Huang*, 709 F. Supp. 2d 421, 431 (E.D. Va. 2010) (similar).

        **b.**      **Plaintiffs' experts' opinions are relevant to the causes of action.**

Rule 702's relevance requirement considers the "fit" between an expert's testimony and the issues in the case. This is determined by the requirements of the underlying claim. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995) (on remand) (considering substantive tort requirements in assessing whether expert evidence was helpful under 702). The school districts here raise negligence and (for certain Bellwether districts) public nuisance; and the State AGs raise consumer protection claims.

To prove the tort claims, the school districts are required only to establish that Defendants' conduct was a "substantial factor" in causing harm. *Barrett v. Harris*, 86 P.3d 954, 960-61 (Ariz. Ct. App. 2004); *John Crane, Inc. v. Jones*, 604 S.E.2d 822, 825-26 (Ga. 2004); *Rogers v. Kasdan*, 612 S.W.2d 133, 136 (Ky. 1981); *Camp v. Jiffy Lube No. 114*, 706 A.2d 1193, 1195-96 (N.J. Super. Ct. App. Div. 1998); *Walton v. Premier Soccer Club, Inc.*, 311 A.3d 406, 419 (Md. Ct. App. 2024); *Brown v. Nat'l Oil Co.*, 105 S.E.2d 81, 84-85 (S.C. 1958). Neither claim requires the school district plaintiffs to show that Defendants' platforms (either taken as a whole or with regard to individual features) were the ***sole*** cause of their harms, or that certain features were not also a substantial factor. The State AGs' consumer protection claims require them to prove that Meta's statements or actions were likely to deceive members of the public (for deception claims) and that Meta engaged in unfair or unconscionable conduct (for unfairness claims). Section 230 does not alter these substantive requirements and therefore does not alter Rule 702's relevance analysis.

Testimony from Plaintiffs' general causation experts relates to relevant issues that are indisputably parts of the case. This is true in three broad respects. *First*, and returning to where we started, ***all*** the features on Defendants' platforms are "at issue"—because Plaintiffs' theories encompass failure to warn of, and deceptive acts related to, the "risks of addiction attendant to any platform features or as to platform construction in general." ECF 1214 at 2. There is no need for "disentangling work," Mot. at 13, when all features—as well as the risks of Defendants' overall platform design—remain actionable through Plaintiffs' negligence, nuisance, and consumer protection claims.

*Second*, Plaintiffs' experts testify at length about each specific design-defect and unfair-practices feature. *See, e.g.*, ECF 2298-9 (Christakis Rep.) ¶ 195 (beauty filters can exacerbate "body dissatisfaction and/or disordered eating" issues beyond those associated with "social media" as a whole); ECF 2298-21 (Cingel Rep.) ¶¶ 118-30 ("filters can be especially harmful"); ECF 2298-27 (Goldfield Rep.) ¶¶ 379-82, 412-20, 435-36, 452-54 (TikTok's "platform verification system made it easy for under 13 users to sign up for an account"); ECF 2298-45 (Murray Rep.) ¶¶ 197-204 (filters); ECF 2298-37 (Mojtabai Rep.) ¶¶ 186-88, 193-94 (discussing research measuring impact of filters); ECF 2298-33 (Lembke Rep.) 24 ¶ B.4.a.vi.A, 46 ¶ B.4.c.i.A, 66 ¶ B.4.g.i.C (discussing ease of access by lack of effective age verification); Ex. 1 (Prinstein Rep.) ¶ 45 (beauty filters "promote unhealthy relationships based on deception and false self-presentations"). Testimony from qualified experts that each of these specific features—offered by each of these Defendants—can cause precisely the types of harm at issue in this litigation is the *sine qua non* of general causation testimony. Defendants' belief that this testimony is unhelpful cannot be squared with the testimony these experts offer. *See Finley*, 301 F.3d at 1008.

*Third*, to the limited extent Plaintiffs' general causation experts discuss content on Defendants' platforms, nothing in the law forecloses them from doing so. "[A] general causation expert only will opine that the design or operation of a social media platform is *capable* of causing injury. Such expert is not required to opine that content cannot also cause harm." *Soc. Media Cases*, 2025 WL 2807828, at *7 (emphasis in original). Tellingly, none of the cases Defendants cite on this point actually involve general causation experts. *Cf. Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 423 (Tex. 2020) (exclusion of damages expert); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143, 146-47 (1997) (exclusion of specific causation expert).

In the end, Defendants' criticisms of Plaintiffs' experts are no basis to find their testimony irrelevant or inadmissible. "If Defendants believe that [these experts' opinions are] insufficient evidence to demonstrate that a particular platform caused a particular type of harm, then they will be free to so demonstrate at trial." *Soc. Media Cases*, 2025 WL 2807828, at *40.

**F.     Defendants seek to usurp the role of the jury.**

Ultimately, Defendants' disagreement lies not with the reliability or relevance of Plaintiffs'

experts' opinions, but with their conclusions—namely, that Defendants' platforms (and their failure to warn about, and other deceptive acts related to, them) are capable of causing harm, irrespective of whether content is too. *See supra* n. 1. This is not a reason to exclude the testimony. Quite the opposite: resolving disagreements between experts, and evaluating the persuasiveness of expert testimony, is firmly within the province of the jury. This is "not different in kind from a jury's responsibility for applying other legal and factual distinctions on which they are instructed in other cases." *Soc. Media Cases*, 2025 WL 2807828, at *7. For example, "[j]uries are frequently called upon to decide the extent to which a plaintiff's emotional harm is caused by the defendant's actionable conduct or, instead, by other influences." *Id*.

Defendants' true concern appears to be that a jury could return a finding of liability on grounds prohibited by Section 230 or the First Amendment. Mot. at 4. "[H]owever, the proper remedy for those concerns is care in instructing the jury with respect to what it must find in order to hold [Defendants] liable[,]" "not exclusion of evidence that is otherwise relevant[.]" *In re Gen. Motors*, 2015 WL 8130449, at *2. Defendants' assertion that "jury instructions are not an adequate remedy for improper expert testimony" is doubly incorrect. Mot. at 15. First, as explained at length in this brief, none of the testimony offered by Plaintiffs is improper under Section 230 or the First Amendment. Second, courts regularly use jury instructions to "help the jury compartmentalize the allegations and evidence." *United States v. Ford*, 2021 WL 5042985, at *5 (D. Alaska Oct. 29, 2021); *see also United States v. Escalante*, 637 F.2d 1197, 1202-03 (9th Cir. 1980) (jury instruction is sufficient to cure prejudice from evidence "applicable only to limited defendants or in a limited manner"). This includes *Daubert* itself, which names jury instructions as a method for guiding consideration of evidence that has been deemed admissible. *Daubert*, 509 U.S. at 596. The jury's role as a factfinder and arbiter of justice is one of the core elements of the American legal system, for social media companies and everyone else alike.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion to exclude Plaintiffs' general causation experts based on Section 230 or the First Amendment.

1    DATED: November 7, 2025              Respectfully submitted,

2

3                                        */s/ Lexi J. Hazam*
                                         LEXI J. HAZAM
4                                        **LIEFF CABRASER HEIMANN &**
                                         **BERNSTEIN, LLP**
5                                        275 BATTERY STREET, 29TH FLOOR
                                         SAN FRANCISCO, CA 94111-3339
6                                        Telephone: 415-956-1000
                                         lhazam@lchb.com
7

8                                        PREVIN WARREN
                                         **MOTLEY RICE LLC**
9                                        401 9th Street NW Suite 630
                                         Washington DC 20004
10                                       T: 202-386-9610
                                         pwarren@motleyrice.com
11

12                                       Co-Lead Counsel

13                                       ANDRE M. MURA
                                         **GIBBS MURA LLP**
14                                       1111 Broadway, Suite 2100
                                         Oakland, CA 94607
15                                       Telephone: (510) 350-9700
                                         Facsimile: (510) 350-9701
16                                       amm@classlawgroup.com

17

18                                       Plaintiffs Steering Committee Leadership

19                                       *Attorneys for PI/SD Plaintiffs*

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
                                         SECTION 230 AND FIRST AMENDMENT

1

2

**KRIS MAYES**
Attorney General
State of Arizona

3

4

*/s/ Reagan Healey*
Reagan Healey (AZ No. 038733), *pro hac vice*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax: (602) 542-4377
Reagan.Healey@azag.gov

5

6

7

8

9

*Attorney for Plaintiff State of Arizona*

10

**ROB BONTA**
Attorney General
State of California

11

12

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

13

14

15

16

17

18

19

20

21

22

23

24

*Attorneys for Plaintiff the People of the State of California*

25

26

**PHILIP J. WEISER**
Attorney General
State of Colorado

27

28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Krista Batchelder*
Krista Batchelder, (CO Reg.45066), *pro hac vice*
Deputy Solicitor General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*
Solicitor General
Elizabeth Orem (CO Reg. 58309), *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6384
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Rebecca Borné*
Rebecca Borné
(CT Juris No. 446982), pro hac vice
Tess E. Schneider
(CT Juris No. 444175), *pro hac vice*
Krislyn M. Launer
(CT Juris No. 440789), *pro hac vice*
Assistant Attorneys General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Rebecca.Borne@ct.gov
Tess.Schneider@ct.gov
Krislyn.Launer@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Ryan Costa*
Marion Quirk (DE Bar 4136), *pro hac vice*
Director of Consumer Protection
Ryan Costa (DE Bar 5325), *pro hac vice*
Deputy Director of Consumer Protection
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8811
Marion.Quirk@delaware.gov
Ryan.Costa@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**ANNE E. LOPEZ**
Attorney General
State of Hawaiʻi

*/s/ Douglas S. Chin*
Christopher J.I. Leong (HI JD No. 9662), *pro hac vice*
Supervising Deputy Attorney General
Kelcie K. Nagata (HI JD No. 10649), *pro hac vice*
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawaiʻi 96813
Phone: (808) 586-1180
Christopher.ji.leong@hawaii.gov
Kelcie.k.nagata@hawaii.gov
Douglas S. Chin (HI JD No. 6465), *pro hac vice*
John W. Kelly (HI JD No. 9907), *pro hac vice*
Special Deputy Attorney General
Starn O'Toole Marcus & Fisher
733 Bishop Street, Suite 1900
Honolulu, Hawaiʻi 96813
Phone: (808) 537-6100
dchin@starnlaw.com
jkelly@starnlaw.com

*Attorneys for Plaintiff State of Hawaiʻi*

**RAÚL R. LABRADOR**
Attorney General
State of Idaho

19

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

By:*/s/ James Simeri*
James Simeri (ID Bar No. 12332)

2

Deputy Attorney General
Attorney General's Office

3

P.O. Box 83720

4

Boise, ID 83720-0010
(208) 334-4114

5

james.simeri@ag.idaho.gov

6

*Attorneys for Plaintiff State of Idaho*

7

**KWAME RAOUL**

8

Attorney General
State of Illinois

9

10

*/s/ Matthew Davies*
Susan Ellis, Chief, Consumer Protection Division

11

(IL Bar No. 6256460)
Greg Grzeskiewicz, Chief, Consumer Fraud

12

Bureau (IL Bar No. 6272322)
Jacob Gilbert, Deputy Chief, Consumer Fraud

13

Bureau (IL Bar No. 6306019)
Matthew Davies, Assistant Attorney General,

14

Consumer Fraud Bureau (IL Bar No. 6299608),
*pro hac vice*

15

Daniel B. Roth, Assistant Attorney General,

16

Consumer Fraud Bureau (IL Bar No. 6290613)
Meera Khan, Assistant Attorney General,

17

Consumer Fraud Bureau (IL Bar No. 6345895)
Office of the Illinois Attorney General

18

115 S. LaSalle Street

19

Chicago, Illinois 60603
312-814-2218

20

Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov

21

Jacob.Gilbert@ilag.gov

22

Matthew.Davies@ilag.gov
Daniel.Roth@ilag.gov

23

Meera.Khan@ilag.gov

24

*Attorneys for Plaintiff the People of the State of Illinois*

25

26

**THEODORE E. ROKITA**
Attorney General

27

State of Indiana

28

20            OPPOSITION TO MOTION TO EXCLUDE BASED ON
                           SECTION 230 AND FIRST AMENDMENT

1    _/s/ Scott L. Barnhart_
      Scott L. Barnhart (IN Atty No. 25474-82)
2    *pro hac vice*
      Chief Counsel and Director of Consumer
3    Protection Corinne Gilchrist (IN Atty No. 27115-
      53)
4    *pro hac vice*
5    Section Chief, Consumer Litigation
      Mark M. Snodgrass (IN Atty No. 29495-49)
6    *pro hac vice*
7    Deputy Attorney General
      Office of the Indiana Attorney General
8    Indiana Government Center South
      302 West Washington St., 5th Floor
9    Indianapolis, IN 46203
      Telephone: (317) 232-6309
10   Scott.Barnhart@atg.in.gov
      Corinne.Gilchrist@atg.in.gov
11   Mark.Snodgrass@atg.in.gov
12
      *Attorneys for Plaintiff State of Indiana*
13
14   **KRIS W. KOBACH**
      Attorney General
15   State of Kansas
      _/s/ Sarah Dietz_
16   Sarah Dietz, Assistant Attorney General
      (KS Bar No. 27457), *pro hac vice*
17   Office of the Kansas Attorney General
      120 SW 10th Avenue, 2nd Floor
18   Topeka, Kansas 66612
      Telephone: (785) 296-3751
19   sarah.dietz@ag.ks.gov
20
      *Attorney for Plaintiff State of Kansas*
21
22   **RUSSELL COLEMAN**
      Attorney General
23   Commonwealth of Kentucky
24   _/s/ J. Christian Lewis_
      J. Christian Lewis (KY Bar No. 87109),
25   *pro hac vice*
      Philip Heleringer (KY Bar No. 96748),
26   *pro hac vice*
      Zachary Richards (KY Bar No. 99209),
27   *pro hac vice*
      Daniel I. Keiser (KY Bar No. 100264),
28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
                                                                SECTION 230 AND FIRST AMENDMENT

*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**LIZ MURRILL**
Attorney General
State of Louisiana

*/s/ Asyl Nachabe*
Asyl Nachabe (LA Bar No. 38846)
*pro hac vice*
Assistant Attorney General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Complex Litigation Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6435
NachabeA@ag.louisiana.gov
*Attorney for State of Louisiana*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Michael Devine*
Michael Devine (Maine Bar No. 5048),
*pro hac vice*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
(207) 626-8829
michael.devine@maine.gov

*Attorney for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Elizabeth J. Stern*
Philip D. Ziperman (Maryland CPF No.
9012190379), *pro hac vice*
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern (Maryland CPF No.
1112090003), *pro hac vice*
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney*
*General of Maryland*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Caitlin Micko*
Caitlin Micko (MN Bar No. 0395388)
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, MN 55101
Tel: (651) 724-9180
Caitlin.micko@ag.state.mn.us

*Attorney for State of Minnesota, by its*
*Attorney General, Keith Ellison*

**MICHAEL T. HILGERS**
Attorney General
State of Nebraska

*/s/ Anna M. Anderson*
Anna M. Anderson (NE #28080)
Assistant Attorney General

*pro hac vice*
Benjamin J. Swanson (NE #27675)
Assistant Attorney General
Nebraska Attorney General's Office
1445 K Street, Room 2115
Lincoln, NE 68509
(402) 471-6034
anna.anderson@nebraska.gov
benjamin.swanson@nebraska.gov

*Attorneys for Plaintiff State of Nebraska*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Matthew J. Platkin,*
*Attorney General for the State of New Jersey, and*
*Elizabeth Harris, Acting Director of the New*
*Jersey Division of Consumer Affairs*

**LETITIA JAMES**
Attorney General
State of New York

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

2    */s/ Nathaniel Kosslyn*
Nathaniel Kosslyn, Assistant Attorney General
3    (NY Bar No. 5773676), *pro hac vice*
nathaniel.kosslyn@ag.ny.gov
4    Alex Finkelstein, Assistant Attorney General
(NY Bar No. 5609623), *pro hac vice*
5    alex.finkelstein@ag.ny.gov
New York Office of the Attorney General
6    28 Liberty Street
New York, NY 10005
7    (212) 416-8000

8
**JEFF JACKSON**
9    Attorney General
State of North Carolina
10

11    */s/ Charles White*
Charles G. White (N.C. State Bar No. 57735), *pro*
12    *hac vice*
Assistant Attorney General
13    Kunal Choksi
Senior Deputy Attorney General
14    Josh Abram
Special Deputy Attorney General
15    N.C. Department of Justice
Post Office Box 629
16    Raleigh, North Carolina 27602
Telephone: (919) 716-6006
17    Facsimile: (919) 716-6050
E-mail: cwhite@ncdoj.gov
18    *Attorneys for Plaintiff State of North Carolina*
19

20    **DAVE YOST**
OHIO ATTORNEY GENERAL
21

22    */s/ Kevin R. Walsh*
Melissa G. Wright (0077843)
23    Section Chief, Consumer Protection Section
Melissa.Wright@ohioago.gov
24    Melissa S. Smith (0083551)
Asst. Section Chief, Consumer Protection Section
25    Melissa.S.Smith@ohioago.gov
Michael S. Ziegler (0042206)
26    Principal Assistant Attorney General
Michael.Ziegler@ohioago.gov
27    Kevin R. Walsh (0073999)
Senior Assistant Attorney General
28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

Kevin.Walsh@ohioago.gov
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
614-466-1031

**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ John Dunbar*
John J. Dunbar (Oregon Bar No. 842100)
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884
E-mail: john.dunbar@doj.oregon.gov

*Attorneys for State of Oregon ex rel.*
*Dan Rayfield, Attorney General*

**DAVID W. SUNDAY, JR.**
Attorney General
Commonwealth of Pennsylvania

*/s/ Jonathan R. Burns*
Jonathan R. Burns
Senior Deputy Attorney General
(PA Bar No. 315206), *pro hac vice*
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
717.787.3391
jburns@attorneygeneral.gov

*Attorneys for Plaintiff the Commonwealth of*
*Pennsylvania*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Stephen N. Provazza*
Stephen N. Provazza (R.I. Bar No. 10435),
*pro hac vice*
Assistant Attorney General
Rhode Island Office of the Attorney General

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
Email: SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

**ALAN WILSON**
Attorney General
State of South Carolina

*/s/ Anna C. Smith*
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Jared Q. Libet (S.C. Bar No. 74975),
*pro hac vice*
Assistant Deputy Attorney General
Anna C. Smith (SC Bar No. 104749),
*pro hac vice*
Assistant Attorney General
Office of the South Carolina Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
jlibet@scag.gov
annasmith@scag.gov
803-734-0536

*Attorneys for Plaintiff the State of South Carolina,*
*ex rel. Alan M. Wilson, in His Official Capacity as*
*Attorney General of the State of South Carolina*

**MARTY J. JACKLEY**
Attorney General
State of South Dakota

*/s/ Amanda Miiller*
By: Amanda Miiller (SD Bar No. 4271)
Deputy Attorney General
1302 East SD Hwy 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Amanda.Miiller@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

**JASON S. MIYARES**
Attorney General
Commonwealth Of Virginia

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

2       */s/ Joelle E. Gotwals*
        Steven G. Popps
3       Chief Deputy Attorney General
        Thomas J. Sanford
4       Deputy Attorney General
        Richard S. Schweiker, Jr.
5       Senior Assistant Attorney General and Section
        Chief
6       Joelle E. Gotwals (VSB No. 76779),
        Senior Assistant Attorney General
7       *pro hac vice*
        Chandler P. Crenshaw (VSB No. 93452)
8       Assistant Attorney General
        *pro hac vice*
9       Office of the Attorney General of Virginia
        Consumer Protection Section
10      202 N. 9th Street
        Richmond, Virginia 23219
11      Telephone:     (804) 786-8789
        Facsimile:     (804) 786-0122
12      E-mail: jgotwals@oag.state.va.us
13
        *Attorneys for the Plaintiff Commonwealth of*
14      *Virginia*
        *ex rel. Jason S. Miyares, Attorney General*
15

16      **NICHOLAS W. BROWN**
        Attorney General State of Washington
17
        */s/ Claire McNamara*
18      Claire McNamara (WA Bar No. 50097)
        Gardner Reed (WA Bar No. 55630)
19      Assistant Attorneys General
        Washington State Office of the Attorney General
20      800 Fifth Avenue, Suite 2000
        Seattle, WA 98104
21      (206) 340-6783
        claire.mcnamara@atg.wa.gov
22      gardner.reed@atg.wa.gov
23
        *Attorneys for Plaintiff State of Washington*
24

25      **JOHN B. MCCUSKEY**
        Attorney General
26      State of West Virginia
27

28

                                    28        OPPOSITION TO MOTION TO EXCLUDE BASED ON
                                              SECTION 230 AND FIRST AMENDMENT

1

*/s/ Laurel K. Lackey*
Laurel K. Lackey (WVSB No. 10267)

2

Abby G. Cunningham (WVSB No. 13388)
Assistant Attorneys General

3

Office of the Attorney General

4

Consumer Protection & Antitrust Division
Eastern Panhandle Office

5

269 Aikens Center
Martinsburg, West Virginia 25404

6

Telephone: (304) 267-0239
Email: laurel.k.lackey@wvago.gov

7

abby.g.cunningham@wvago.gov

8

*Attorneys for Plaintiff State of West Virginia, ex*

9

*rel. John B. McCuskey, Attorney General*

10

**JOSHUA L. KAUL**
Attorney General

11

State of Wisconsin

12

*/s/ Brittany Copper*

13

Brittany A. Copper
Assistant Attorney General

14

WI State Bar # 1142446
Wisconsin Department of Justice

15

Post Office Box 7857

16

Madison, Wisconsin 53707-7857
(608) 266-1795

17

Brittany.copper@wisdoj.gov

18

*Attorneys for Plaintiff State of Wisconsin*

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT

1

## ATTESTATION

2

3
I, Andre M. Mura, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

4
DATED: November 7, 2025                    */s/ Andre M. Mura*
                                           **GIBBS MURA LLP**

5
                                           1111 Broadway, Suite 2100
                                           Oakland, CA 94607

6
                                           Telephone: (510) 350-9700

7
                                           Facsimile: (510) 350-9701
                                           amm@classlawgroup.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCLUDE BASED ON
SECTION 230 AND FIRST AMENDMENT