Matthew S.L. Cate (SBN 295546)
matt@matthewcatelaw.com
**LAW OFFICE OF MATTHEW S.L. CATE**
101 Montgomery Street, Suite 900
San Francisco, CA  94104
Tel/Fax: 415-964-4400

Al-Amyn Sumar (*pro hac vice motion forthcoming*)
THE NEW YORK TIMES COMPANY
Legal Department
620 8th Avenue
New York, NY 10018
Telephone: (212) 556-1234
Facsimile: (212) 556-4634
Email: al-amyn.sumar@nytimes.com

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY

### IN THE UNITED STATES DISTRICT COURT
### THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047<br><br>**NOTICE OF MOTION AND MOTION OF NON-PARTY MEDIA ENTITY THE NEW YORK TIMES COMPANY FOR AN ORDER TO INTERVENE AND TO UNSEAL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        January 27, 2026<br>Time:        2:00 pm<br>Judge:      Hon. Yvonne Gonzalez Rogers<br>Courtroom:    1 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on January 27, 2026, at 2:00 pm or as soon thereafter as this matter may be heard in the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, non-party media entity The New York Times Company ("The Times") will and hereby does move this Court for an order permitting The Times to intervene in the above action for the limited purpose of enforcing the public's right of access to court records, and for an order unsealing material in those records.

   This Motion is made on the following grounds:

   1.    Under settled law, there is a "strong presumption" in favor of public access to court proceedings and documents. *See United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d 1188, 1194 (9th Cir. 2011).

   2.    Members of the press and the public have been permitted to intervene in civil cases to assert their rights to access judicial records. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

   3.    In this case, the proponents of sealing have not demonstrated "compelling reasons" to justify sealing the judicial records in question. The Times accordingly joins in the oppositions (*see* ECF 2586, 2587, 2588) to the motions to seal filed by certain defendants at ECF 2528, 2529, 2530.

   This Motion is based on the attached Memorandum of Points and Authorities, all pleadings, records and papers on file in this action, all matters of which this Court may take judicial notice, and such further evidence and argument as may be presented during the hearing on this Motion.

   For the reasons set forth here, the Times respectfully requests that this Court grant its Motion and unseal the requested material.

Date:  December 23, 2025

                                        LAW OFFICE OF MATTHEW S.L. CATE

                                        */s/ Matthew S.L. Cate*
                                        Matthew S.L. Cate

                                        Attorneys for Non-Party Media Entity
                                        THE NEW YORK TIMES COMPANY

— ii —

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iv

Memorandum of Points and Authorities ...................................................................... 1

I.    Introduction ....................................................................................................... 1

II.    Factual Background............................................................................................ 1

III.    Argument............................................................................................................ 3

    A.    The Times should be permitted to intervene. ........................................ 3

    B.    There is a common law and constitutional right of access to judicial records. ........ 3

    C.    Much of the sealed material relates directly to issues at the heart of the case. ....... 5

    D.    The companies have not justified the extent of sealing here................................. 8

IV.    Conclusion........................................................................................................ 10

Notice of Mot. & Mot. to Intervene for Limited Purpose and to Unseal / Case No. 4:22-MD-03047-YGR

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
  No. 18-CV-12084 (VSB) (KHP), 2024 U.S. Dist. LEXIS 132255
4
  (S.D.N.Y. July 25, 2024).............................................................................................9

5

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846 LHK (PSG), 2012 U.S. Dist. LEXIS 134380
6
  (N.D. Cal. Sept. 18, 2012)...........................................................................................9

7

*Beckman Industries, Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992).......................................................................................3
8

9

*Bohannon v. Facebook, Inc.*,
  No. 12-cv-01894-BLF, 2019 U.S. Dist. LEXIS 7302 (N.D. Cal. Jan. 14, 2019) ......3

10

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016)..................................................................................4, 5
11

12

*Co. Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014).......................................................................................9

13

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014).......................................................................................5
14

15

*Courthouse News Serv. v. Planet*,
  947 F.3d 581 (9th Cir. 2020).......................................................................................4

16

*Forbes Media LLC v. United States*,
  61 F.4th 1072 (9th Cir. 2023)......................................................................................4
17

18

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) .................................................................................................3, 5

19

*In re Copley Press, Inc.*,
  518 F.3d 1022 (9th Cir. 2008).....................................................................................4
20

21

*In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*,
  No. 14-MD-2542 (VSB), 2023 U.S. Dist. LEXIS 8010 (S.D.N.Y. Jan. 17, 2023) ...................5

22

*Jones v. Trump*,
  No. 25-401 (UNA), 2025 U.S. Dist. LEXIS 26370 (D.D.C. Feb. 13, 2025) .............9
23

24

*Kamakana v. City and Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ................................................................................4, 8

25

*Lugosch v. Pyramid Co.*,
  435 F.3d 110 (2d Cir. 2006) ........................................................................................5
26

27

*M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*,
  No. 22-cv-04345-HSG, 2023 U.S. Dist. LEXIS 41065 (N.D. Cal. Mar. 10, 2023)...............5, 6

28

Notice of Mot. & Mot. to Intervene for Limited Purpose and to Unseal / Case No. 4:22-MD-03047-YGR

*Ponomarenko v. Shapiro*,
   No. 16-cv-02763-BLF, 2017 U.S. Dist. LEXIS 133560 (N.D. Cal. Aug. 21, 2017) ..............8, 9

*Richards v. Centripetal Networks, Inc.*,
   No. 23-cv-00145-HSG, 2023 U.S. Dist. LEXIS 69502 (N.D. Cal. Apr. 20, 2023) ...................5

*San Jose Mercury News, Inc. v. U.S. Dist. Court*,
   187 F.3d 1096 (9th Cir. 1999) ...................................................................................................3

*Sumotext Corp. v. Zoove, Inc.*,
   No. 16-cv-01370-BLF, 2019 U.S. Dist. LEXIS 216789 (N.D. Cal. Dec. 16, 2019)...................5

*United States v. Brooklier*,
   685 F.2d 1162 (9th Cir. 1982) ...................................................................................................8

*United States v. Bus. of the Custer Battlefield Museum*,
   658 F.3d 1188 (9th Cir. 2011) ...................................................................................................4

*Valdivia v. Brown*,
   No. Civ. S-94-671 LKK/GGH, 2013 U.S. Dist. LEXIS 95005 (E.D. Cal. July 3, 2013)............8

*Valley Broad. Co. v. U.S. Dist. Court*,
   798 F.2d 1289 (9th Cir. 1986) ................................................................................................4, 9

**Constitutional Provisions**

U.S. Const. amend. I ...................................................................................................1, 4, 5

**Court Rules**

Fed. R. Civ. P. 24(b)(2) ....................................................................................................3

Civil Local Rule 79-5 ........................................................................................................5

**Other Cited Material**

*A Strategy to Treat Big Tech Like Tobacco*,
   N.Y. Times (Nov. 15, 2023), https://nyti.ms/4pcASVx............................................................2

Barbara Ortutay, *States sue Meta claiming its social platforms are addictive and harm
   children's mental health*, Associated Press (Oct. 24, 2023); https://bit.ly/4pKpX6m...............2

Cecilia Kang and Natasha Singer, *Meta Accused by States of Using Features to Lure Children to
   Instagram and Facebook*, N.Y. Times (Oct. 24, 2023), https://nyti.ms/3MPtlys.....................2

Claire Fahy, *What to Know About New Social Media Protections for Children in New York*,
   N.Y. Times (June 13, 2024), https://nyti.ms/4p6M5Xi .............................................................2

Isaiah Poritz, *Meta, Google, TikTok Must Face Schools' Addiction Claims*,
   Bloomberg (Oct. 24, 2024), https://bloom.bg/4qad5a5 .............................................................2

1
2

Leonardo Bursztyn and Cass R. Sunstein, *How to Get Kids to Give Up Social Media on Their Own*, Wall Street Journal (Oct. 2, 2025), https://on.wsj.com/3Y53Yel ............................2

3
4

Victoria Kim, *Australia's Social Media Ban for Children Takes Effect*, N.Y. Times (Dec. 9, 2025), https://nyti.ms/4ssr4JV .................................................................2

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notice of Mot. & Mot. to Intervene for Limited Purpose and to Unseal / Case No. 4:22-MD-03047-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.    INTRODUCTION

The New York Times Company ("The Times"), publisher of *The New York Times*, seeks to intervene in this proceeding to vindicate the public's common law and First Amendment rights of access to material that remains under seal. Specifically, The Times joins in the School Districts' oppositions (ECF 2586, 2587, 2588) to the Companies' motions to seal (ECF 2528, 2529, 2530) and requests that the Court unseal redactions in the School Districts' filings on Defendants' summary judgment and Rule 702 motions.[2] The degree of sealing in these filings has frustrated The Times's ability to report on this litigation, which is of immense consequence and public interest.

The Times does not address the propriety of sealing on a redaction-by-redaction basis, but writes instead to highlight three basic points. First, the standard for sealing is considerable: the Companies must articulate "compelling reasons" that justify abridging the public's rights of access. Second, the need for public access is heightened here because much of the sealed material is directly relevant to issues at the heart of this case. Third, as explained in greater detail below, the Companies have not met their burden to justify sealing. For these reasons and others, the Court should deny the Companies' motions to seal.

### II.    FACTUAL BACKGROUND

This multi-district litigation (MDL) consolidates claims from hundreds of actions brought by a range of plaintiffs — children, school districts, state attorneys general, and others — who

---

[1] This brief uses the following defined terms and abbreviations: "School Districts" for the school districts and local government entities that are plaintiffs in the lawsuits relevant here; "Companies" for Meta Platforms, Inc. ("Meta"), Google LLC and YouTube, LLC (together, "YouTube"), TikTok, Inc. ("TikTok"), and related entities; "Harford Opposition" for Plaintiff Harford County Board of Education's Opposition to Defendants' Motion for Summary Judgment (ECF 2395); "Omnibus Opposition" or "Omnibus Opp." for the School Districts' Corrected Omnibus Opposition to Defendants' Motions for Summary Judgment (ECF 2480); and "702 Filings" for the School Districts' oppositions to Defendants' Rule 702 motions and the exhibits thereto, as identified in ECF 2532.

[2] To be clear, these filings are the Omnibus Opposition, the 702 Filings, and exhibits to the Harford Opposition. The Times does not seek to unseal redactions that are not disputed by the School Districts, which includes redactions requested by Snap Inc. *See* ECF 2532 at 3-17; ECF 2585 at 2-6.

claim that social media companies "designed their platforms to foster compulsive use by minors, resulting in a variety of harms." ECF 1267 at 1. Lawsuits that are part of the MDL have been widely covered by news organizations, including *The New York Times*,[3] and the litigation has the potential to reshape how social media companies operate and design their products for young people.[4] The litigation is also unfolding at a time when various constituencies in this country and others — including lawmakers, parents, school districts, academics and others — are wrestling with the proper relationship between young people and social media.[5]

The relevant plaintiffs here, the School Districts, bring state law claims against the Companies for negligence and public nuisance. ECF 1267 at 2-3. Among other things the School Districts allege that "social media companies target schools" and that the School Districts have "expended substantial financial resources to mitigate the mental health and consequent behavioral issues their students suffer as a result of social media addiction." *Id.* at 3. This Court partly allowed the School Districts' claims to proceed to discovery, and Defendants have now moved for summary judgment on those claims. *See* ECF 2288, 2289, 2290, 2293, 2294, 2296. As relevant here, the Companies have also filed several motions under Federal Rule of Evidence 702 seeking to exclude testimony of the School Districts' experts. *See* ECF 2532 (listing relevant filings).

---

[3] *See, e.g.*, Cecilia Kang and Natasha Singer, *Meta Accused by States of Using Features to Lure Children to Instagram and Facebook*, N.Y. Times (Oct. 24, 2023), https://nyti.ms/3MPtlys; Barbara Ortutay, *States sue Meta claiming its social platforms are addictive and harm children's mental health*, Associated Press (Oct. 24, 2023); https://bit.ly/4pKpX6m; Isaiah Poritz, *Meta, Google, TikTok Must Face Schools' Addiction Claims*, Bloomberg (Oct. 24, 2024), https://bloom.bg/4qad5a5.

[4] *See, e.g.*, *A Strategy to Treat Big Tech Like Tobacco*, N.Y. Times (Nov. 15, 2023), https://nyti.ms/4pcASVx ("I think that is the design of the lawsuits, not only to try to litigate their way into causing Meta to change some of the things we discussed already, but it's going to attract a lot of publicity. And it's going to reinforce some of the concerns that lawmakers, the surgeon general, and many other people have already been voicing. And so I think that it's kind of the beginning of a snowball. And so I think that they're hoping to use these lawsuits to cause Meta to change and then, therefore, other social media platforms, whether they win the lawsuit or not.").

[5] *See, e.g.*, Victoria Kim, *Australia's Social Media Ban for Children Takes Effect*, N.Y. Times (Dec. 9, 2025), https://nyti.ms/4ssr4JV; Leonardo Bursztyn and Cass R. Sunstein, *How to Get Kids to Give Up Social Media on Their Own*, Wall Street Journal (Oct. 2, 2025), https://on.wsj.com/3Y53Yel; Claire Fahy, *What to Know About New Social Media Protections for Children in New York*, N.Y. Times (June 13, 2024), https://nyti.ms/4p6M5Xi.

The Times understands that the Court has established a protocol for resolving the parties' disputes about the sealing of judicial records, which includes two separate rounds of briefing. *See* ECF 2451. The Times also understands that the current round of briefing does not address the sealing of exhibits attached to the Omnibus Opposition, which will be briefed in January. *See* ECF 2598. This motion does not address the propriety of sealing those exhibits, though The Times may file a separate motion as to those exhibits at the appropriate time.

## III.   ARGUMENT

### A.    The Times should be permitted to intervene.

It is well established that the media has standing to challenge the sealing of judicial proceedings and records and to assert the public's — and its own — right of access to those records. *See, e.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (newspaper has right to be heard on issue of exclusion from court proceedings). Indeed, the Ninth Circuit has permitted non-parties like The Times to intervene in civil litigation for that purpose. *See, e.g.*, *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992); *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1100 (9th Cir. 1999) ("Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)."); *Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF, 2019 U.S. Dist. LEXIS 7302, at *6 (N.D. Cal. Jan. 14, 2019) (noting that Ninth Circuit law permits "non-party news organization[s] . . . to intervene in a civil case to move to unseal judicial records").[6]

### B.    There is a common law and constitutional right of access to judicial records.

The public and press have a well-settled right of access to judicial records under both the common law and First Amendment. The burden of overcoming that right rests with the proponent of sealing, and the showing necessary to satisfy that burden is considerable.

---

[6] The Times is aware that the Court denied a motion to intervene in this litigation by non-party TIME USA, LLC. ECF 2336 at 2. But the Court's ground for doing so was that granting the motion would have "unduly burden[ed] the process" for assessing the propriety of sealing. *Id.* The Times seeks to intervene not to "participat[e] in this case's bespoke sealing procedure," ECF 2262 at 2, but merely to request access to sealed material.

— 3 —

The Ninth Circuit has recognized that a right of public access to judicial records flows from two sources: the common law and the Constitution. The common law right of access applies to all but a "narrow range" of judicial records and documents.[7] *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *see id.* at 1180 (noting that "judicial records are public documents almost by definition, and the public is entitled to access by default"); *see also United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011). Where the records at issue are "more than tangentially related to the merits of a case," the proponent of sealing must put forth "compelling reasons," supported by "specific factual findings," that outweigh the general history of access and the public policies favoring disclosure. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-1102 (9th Cir. 2016); *Kamakana*, 447 F.3d at 1178-79 (cleaned up). An independent First Amendment right applies to court proceedings and records that satisfy the "experience and logic" test. *See, e.g.*, *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (constitutional right applies where public has had a history of access and access would benefit the functioning of court process, though lack of historical access is not dispositive); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (holding that First Amendment right applies to newly filed nonconfidential civil complaints). This constitutional right is even "stronger" than its common law counterpart: the sealing must be "essential to preserve higher values" and "narrowly tailored to serve those interests." *Bus. of the Custer Battlefield Museum*, 658 F.3d at 1197 n.7; *Courthouse News Serv.*, 947 F.3d at 594-95 (cleaned up).

Whatever its source, the access right is foundational to our democracy. It "promot[es] the public's understanding of the judicial process and of significant public events," *Valley Broad. Co. v. U.S. Dist. Court*, 798 F.2d 1289, 1294 (9th Cir. 1986), enables the public to "monitor . . . the courts," *Courthouse News Serv.*, 947 F.3d at 592 (cleaned up), and helps maintain the public's "confidence in the administration of justice," *Ctr. for Auto Safety*, 809 F.3d at 1096 (cleaned up). Stated simply, the right of access to court proceedings and records is "an essential part of the First

---

[7] The Ninth Circuit has identified only a handful of categories of material in that "narrow range." *See, e.g.*, *Forbes Media LLC v. United States*, 61 F.4th 1072, 1082 (9th Cir. 2023).

Amendment's purpose to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) (quoting *Globe Newspaper Co.*, 457 U.S. at 604) (cleaned up).

The courts have also recognized that the particular kinds of records at issue here are subject to a robust presumption of access. As a matter of common law, the motions to which the School Districts' filings relate — for summary judgment and exclusion of expert testimony — are clearly "more than tangentially related to the merits of [the] case." *See Ctr. for Auto Safety*, 809 F.3d at 1098 (noting that the Ninth Circuit has applied the compelling reasons standard to documents attached to a summary judgment motion); *Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2019 U.S. Dist. LEXIS 216789, at *3-4 (N.D. Cal. Dec. 16, 2019) (applying compelling reasons standard applied because "the parties' sealing motions relate to . . . expert opinions relevant to the motion for summary judgment"). The constitutional right of access likewise applies to summary judgment filings and motions to exclude expert testimony. *See, e.g.*, *Lugosch v. Pyramid Co.*, 435 F.3d 110, 124 (2d Cir. 2006) (concluding that "a qualified First Amendment right of access [applies] to documents submitted to the court in connection with a summary judgment motion"); *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2023 U.S. Dist. LEXIS 8010, at *42 (S.D.N.Y. Jan. 17, 2023) (noting that "*Daubert* motions are subject to the qualified First Amendment right of access," and collecting cases).

In this District, a party seeking to file information under seal in a civil case must also comply with Civil Local Rule 79-5. Among other things, the Rule requires parties to "explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents." Civil L.R. 79-5(a); *see, e.g.*, *Sumotext Corp.*, 2019 U.S. Dist. LEXIS 216789, at *2-3.

**C.    Much of the sealed material relates directly to issues at the heart of the case.**

The fact that much of the sealed material bears on issues directly relevant to the Companies' alleged wrongdoing in this litigation heightens the need for public access. *See, e.g.*, *Richards v. Centripetal Networks, Inc.*, No. 23-cv-00145-HSG, 2023 U.S. Dist. LEXIS 69502, *4-

— 5 —

5 (N.D. Cal. Apr. 20, 2023) (denying sealing of "investor reports, capitalization and financial information, and a settlement agreement with Plaintiff" because the proposed redactions were "critical to Plaintiff's claims" and therefore sealing would impede "the public's understanding of the judicial process and of significant public events"); *M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, No. 22-cv-04345-HSG, 2023 U.S. Dist. LEXIS 41065, at *5 (N.D. Cal. Mar. 10, 2023) (denying sealing of information detailing defendant's "business conduct, sales practices, and competitive positions" because the information was "critical (even central) to Plaintiff's claims"). Four categories of such material stand out.

*Employee names.* All of the Companies have sought to redact employee names that appear in the School Districts' filings. *See generally* ECF 2532 at 17-28.[8] In certain instances, these employees are (or were) company executives — *i.e.*, people who were in a position to make key decisions about products relevant to this litigation. TikTok, for instance, has sought to seal the name of a "senior safety executive" who was apparently so addicted to the company's own app that he had to install a third-party blocker to stop himself from using it. Omnibus Opp. at 87-88.[9] In other cases, redactions have been applied to names of employees who were apparently non-executives. But the identity of these employees and their place within the company are often important to understanding the strength of the School Districts' arguments and the degree of the company's alleged culpability. To take one example,[10] TikTok has redacted the name of the person who authored a 2020 internal safety review that found that social media was "inherently dangerous" and that minors were "at risk" on the TikTok app. *Id.* at 86. The public is not in a position to fully weigh that allegation without knowing information like the author's seniority, qualifications, and experience within the field.

*The Companies' knowledge about the alleged harmful effects of their products.* The Companies have also sought to seal information that frustrates the public's ability to understand

---

[8]  To be clear, The Times has no interest in other identifying information, like home addresses and phone numbers, that has no relevance to the litigation.

[9]  At least one other redaction has been applied to the names of TikTok executives. *See* Omnibus Opp. at 80.

[10]  There is a similar public interest in the identities of several other employees whose name or information has been redacted. *See, e.g.*, Omnibus Opp. at 88, 89, 91, 94, 106, 111, 112, 113.

the degree of their knowledge about the alleged harm caused by their products. For instance, TikTok has requested the sealing of information from its internal analyses about the app's effect on the school environment — which the School Districts say "prov[e] that TikTok's systems encouraged in-class engagement among minors." *Id.* at 93. TikTok has also sought to redact company data about how many of its minor users were active between midnight at 5 a.m., which is key to the School Districts' argument that TikTok "knew its platform interfered with sleep and learning." *Id.* at 92.[11]

*The Companies' goals and priorities in product design*. In a related vein, a number of the redactions obscure information that would shed light on what the Companies understood to be their goals and priorities as they made design choices about their products. In one striking example, TikTok has sought to redact what the School Districts describe as the company's "stated goal in the U.S.," which the School Districts say reflected greater concern for "user agency rather than addiction mitigation." *Id.* at 101. In another case, TikTok has requested sealing of material about the company's purpose in sending notifications, *id.* at 108, which goes directly to the School Districts' allegation that TikTok and other companies used notifications to increase the addictiveness of their products, *see, e.g.*, *id.* ("TikTok uses notifications to repeatedly draw users—particularly students—back to the platform").[12]

*The Companies' partnerships with PTAs and Common Sense Media*. Both TikTok and YouTube have sought to seal information about their respective partnerships with parent teacher associations (PTAs) and a nonprofit called Common Sense Media. The School Districts claim these partnerships were part of a strategy to convince parents their products were safe. *See, e.g.*, *id.* at 82-83, 160. TikTok has sought to seal its information about its sponsorship agreement with the National PTA and alleged efforts to "control[] the PTA's messaging." *Id.* at 83, 84. YouTube, for

---

[11] Other redactions appear to obscure information that similarly reflect the Companies' knowledge about the alleged harms of their products. *See* Omnibus Opp. at 94, 95, 96.

[12] Other redactions appear to obscure information that similarly speak to the Companies' goals and priorities in product design choices. *See* Omnibus Opp. at 80, 90.

1  its part, has redacted key information about its agreement with the PTA, which the School

2  Districts say gave YouTube "a direct line of communication to PTA members." *Id.* at 159.[13]

### D.    The companies have not justified the extent of sealing here.

4      The Times agrees with the School Districts that the Companies have not justified the

5  degree of sealing in the School Districts' filings. *See generally* ECF 2586, 2587, 2588. In

6  particular, the degree of sealing sought by TikTok and YouTube appears to go well beyond what

7  is necessary to prevent genuine commercial harm or protect employees' legitimate expectations of

8  privacy. The Times writes separately to underscore three points.

9      *First*, much of the sealing requested by the Companies on the basis that the information is

10 commercially sensitive is untenable. Some of the information is simply dated. TikTok, for

11 instance, has in multiple instances requested redaction of company information dating to 2019.

12 *See, e.g.*, Omnibus Opp. at 80, 83. The relevant question here is not whether the information was

13 ever sensitive, but whether its disclosure *today* could do plausible harm to the company. *See, e.g.*,

14 *United States v. Brooklier*, 685 F.2d 1162, 1172 (9th Cir. 1982) (holding that "transcripts of

15 properly closed proceedings must be released when the danger of prejudice has passed" because

16 "[e]ven where denial of access is appropriate, it must be no greater than necessary to protect the

17 interest justifying it"); *Valdivia v. Brown*, No. Civ. S-94-671 LKK/GGH, 2013 U.S. Dist. LEXIS

18 95005, at *6 (E.D. Cal. July 3, 2013) (noting the court may revisit a sealing determination "if

19 subsequent developments . . . demonstrate that the public interest in reviewing sealed documents

20 outweighs those interests which presently support sealing"). In other cases, as the School Districts

21 point out, the redactions appear to shield information that is embarrassing to the Companies but

22 not genuinely commercially sensitive. *See* ECF 2587 at 2 n.3; ECF 2588 at 4; *Kamakana*, 447

23 F.3d. at 1179 ("The mere fact that the [disclosure] of records may lead to a litigant's

24 embarrassment, incrimination, or exposure to further litigation will not, without more, compel the

25 court to seal its records."); *Ponomarenko v. Shapiro*, No. 16-cv-02763-BLF, 2017 U.S. Dist.

---

[13] Similar redactions have been applied to other information about these partnerships. *See* Omnibus Opp. at 85, 160.

— 8 —

1  LEXIS 133560, at *11 (N.D. Cal. Aug. 21, 2017) ("[P]otential embarrassment alone is not a

2  compelling reason to seal or redact the Court's records.").

3      *Second*, the Companies appear to treat the identities of their employees as categorically

4  confidential, *see* ECF 2528 at 2; ECF 2529 at 4-5; ECF 2530 at 5, even though they are not. As a

5  general matter, an employee does not have a weighty privacy interest in the fact of their

6  employment, especially where their employer is a large and influential company. *See, e.g.*, *Ap-*

7  *Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB) (KHP), 2024 U.S. Dist. LEXIS

8  132255, at *8 ("Goldman does not contend that its employees or their titles are nonpublic.

9  Therefore, while they might maintain a privacy interest in having personal details such as phone

10  numbers, email addresses, or actual addresses, they do not have a similar privacy interest in the

11  fact of their employment at Goldman during the relevant period."). Any privacy interest that does

12  exist is even weaker where the employee's work is directly relevant to the case, or where the

13  employee is an executive. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846 LHK

14  (PSG), 2012 U.S. Dist. LEXIS 134380, at *20-21 (N.D. Cal. Sept. 18, 2012). Absent a showing

15  that disclosure would cause an employee some tangible harm, *see id.* — a showing not made here,

16  certainly not in all cases — sealing is inappropriate.

17      *Third*, while much of the sealing here is overbroad, in some instances the redactions are so

18  pervasive that the public cannot make sense of the School Districts' arguments. One notable

19  example is within the School Districts' discussion of YouTube's allegedly ineffective age-

20  verification process. At one point in that discussion, redactions appear on 27 consecutive lines of

21  text, sometimes obscuring most or all of the text on a line. Omnibus Opp. at 173-74. Needless to

22  say, extensive redactions like these undermine "the public's understanding of the judicial process."

23  *Valley Broad. Co.*, 798 F.2d at 1294. And they are indefensible in a case where the plaintiffs are

24  government entities, as "the public has a strong interest in monitoring not only functions of the

25  courts but also the positions that its elected officials and government agencies take in litigation."

26  *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014); *see also Jones v. Trump*, No. 25-401

27  (UNA), 2025 U.S. Dist. LEXIS 26370, at *8 (D.D.C. Feb. 13, 2025) ("The interest of the public

28

— 9 —

and press in access to civil proceedings is at its apex when the government is a party to the litigation.") (cleaned up).

IV.    **CONCLUSION**

For all of the reasons set out above, The Times respectfully requests that the Court grant its motion to intervene and issue an order unsealing the requested material.

Date:  December 23, 2025                    **LAW OFFICE OF MATTHEW S.L. CATE**

_/s/ Matthew S.L. Cate_
Matthew S.L. Cate

Attorneys for Non-Party Media Entity
THE NEW YORK TIMES COMPANY