# EXHIBIT A-4

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**By Electronic Mail**                                                April 23, 2024

Austin P. Brane
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
abrane@wcllp.com

Thomas P. Cartmell
tcartmell@wcllp.com

Alexandra Walsh
awalsh@alexwalshlaw.com

Patrick I. Andrews
pandrews@lchb.com

Re:     **MDL 3047 — Plaintiffs' Requests for Production Sets 4-9**

Dear Counsel,

We write in response to your April 16 letter following our April 8 meet-and-confer on your Requests for Production Sets 4-9.

Regarding Meta's recurring objections raised in your letter:

1. We are willing to reconsider our position on features never released and/or not available in the United States, such that if our search terms cast over collected documents capture documents that are otherwise relevant and discuss such features, we will not exclude those documents from production on the basis that the feature was never released or is not available in the United States.

2. Similarly, with respect to otherwise relevant documents identified using search terms, Meta will not exclude documents from production on the basis that the documents are or may also be publicly available. That said, there may be limited categories of documents that you have asked us to locate and produce by way of a targeted search that are publicly available. With respect to such documents, we may indicate to you that the burden on you is substantially equivalent to the burden on us to pull those documents from public sources, and you should do so.

3. Similarly, with respect to otherwise relevant documents identified using search terms, Meta will not exclude documents from production on the basis that the documents are drafts. That said, when performing targeted searches, Meta will not affirmatively make efforts to find drafts where it has found a final version, yet will collect any relevant

standalone drafts in the same location. As the parties discussed during their March 22 Meet and Confer, Meta will not undertake burdensome and disproportionate searches and/or affirmative efforts to try to recreate or otherwise identify and/or collect draft versions of documents created by the automatic operation of a software program's version control function (for example, Google Docs).

Regarding the specific RFPs raised in your letter:

1. **RFPs 79-81.**  We are investigating whether Meta's accounting function breaks out expenses or maintains budgets for these categories (CSAM reporting, youth well-being, age verification).  To the extent such expense reports or budgets exist and are non-privileged, we will produce them.  We also expect that any communications by custodians concerning such expenses or budgets would likely be picked up by the search terms we have proposed.  If they are, we will produce them if non-privileged.

2. **RFPs 173-174.**  For RFP 173, Meta will conduct a reasonable search of documents of key non-duplicative custodians using appropriate search terms as applicable in compliance with the ESI protocol for documents discussing Youth and also discussing increasing engagement, including in the context of use during school or school activities, during the Relevant Time Period.  For RFP 174, Meta will conduct a reasonable search of documents of key non-duplicative custodians using appropriate search terms as applicable in compliance with the ESI protocol for analyses of time spent by youth on the platforms during school hours, and communications discussing such analyses, during the Relevant Time Period.

3. **RFPs 125-127.**  As you know, Meta has agreed to search for and produce any policies for user complaints to the extent related to youth safety (RFP 125), for complaints relating to youth use (RFP 126), and for CSAM reporting (RFP 127).  During our meet and confer, you asked if our search in relation to these three RFPs would include such policies as applicable to youth users even if the policies do not specifically mention "youth."  We said yes.  Your additional request in relation to RFP 125 for all documents discussing the policies responsive to that request is overbroad and unduly burdensome; virtually every implementation or response under such policies could potentially be viewed as discussing the policies to some extent; we therefore will not separately search for such documents.  That said, documents discussing the policies requested by RFP 125 to the extent related to youth safety would likely hit on our search terms and will be produced if they discuss youth harms or youth well-being.  Regarding Meta's approach to drafts, please see above.

4. **RFPs 128-130.**  During the meet and confer, we explained that your requests for policies related to third-party harms were too general and much broader than the issues in this case.  You state in your letter without explanation that these documents are relevant to your failure to warn claim and other unidentified "claims subject to ongoing briefing."  We disagree with your position and in any event do not understand your reasoning.  If you wish to pursue these particular RFPs, please explain with specificity how these policies are implicated by those claims.

5. **RFP 131.**  As described above and in prior correspondence relating to RFP 125, we stated that we will search for final versions of policies concerning user complaints to the extent related to youth safety.  RFP 131 is much broader and seeks "[d]ocuments that constitute, identify, or describe Your Policies, mechanisms, or other means for reporting

violations of Your Platform's Terms of Service or community standards during the Relevant Time Period and for Your consideration and response to such reports, including reporting by You to law enforcement." Meta's Platforms have many terms of service that are not implicated by the issues in this case, and this RFP therefore is vastly overbroad and unduly burdensome. Any relevant part of this RFP is covered by your RFP 125, with respect to which Meta has agreed to search for and produce any policies for user complaints to the extent related to youth safety. Moreover, as described above, documents discussing the policies requested by RFP 125 to the extent related to youth safety would likely hit on our search terms and will be produced if they discuss youth harms or youth well-being.

6. **RFP 133**: The number range in your letter is too broad. Meta agreed to produce certain policies as described above in response to RFPs 125-127. For the policies responsive to those RFPs, if there is a corresponding record retention policy related to the policy, we will also produce the record retention policy if non-privileged.

7. **RFP 142**: During the meet and confer, you clarified that Plaintiffs are requesting a list or documents sufficient to show "all features, classifiers, data sets, dimensions, and/or demographics that You use to categorize users of, or accounts on, Your Platform." As posed, the Request is vastly overbroad and unduly burdensome, and attempts to sweep in all manner of classifiers, metrics, scores, demographics and user categories that are not implicated by the issues in the case. That said, Meta is willing to produce documents sufficient to identify certain relevant age classifiers and metrics used by Meta to categorize users based on engagement.

8. **RFPs 84, 98, 104-107, and 155.** You are correct that during the meet and confer we said that in response to RFP 84 we would conduct a targeted search for documents discussing marketing and advertising directed at youth, and in response to RFP 155 we would conduct a targeted search for communications to actual or potential third-party advertisers discussing Meta's policies for marketing or advertising directed to youth. For RFP 98, we said that we did not think that a targeted search for documents relating to appearance-altering filters would be feasible and that Meta's response to this Request would rely on search terms. Meta already produced its terms of service for Facebook and Instagram in response to RFP 105. For RFPs 104 (regarding the account sign-up process), and 106-07 (regarding warnings), we do not recall discussing these requests during our meet and confer. We are willing to do so. In advance, RFP 107 in particular does not seem amenable to a targeted search.

Sincerely,

David W. Haller