EXHIBIT 2

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
12/5/2025 4:48 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**STATE OF NEW MEXICO, EX REL.,**
**RAÚL TORREZ, ATTORNEY GENERAL,**

**Plaintiff,**

**v.**                                                    **NO. D-101-CV-2023-02838**

**META PLATFORMS, INC.; INSTAGRAM, LLC;**
**META PAYMENTS, INC.; and META PLATFORMS**
**TECHNOLOGIES, LLC,**

**Defendants.**

<u>**AMENDED STIPULATED ORDER CONCERNING**</u>
<u>**THE DEPOSITION OF JASON SATTIZAHN**</u>

Plaintiff the State Attorney General of New Mexico ("New Mexico"); Defendants Meta

Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC

("Meta"); and non-party plaintiffs in the Non-New Mexico Actions listed in Appendix A (the

"Non-New Mexico Plaintiffs" and, together with New Mexico and Meta, the "Parties")

respectfully submit this Stipulation and Proposed Order.

WHEREAS the Parties previously agreed that the deposition of Jason Sattizahn scheduled

for December 8, 2025, which has been noticed and/or cross-noticed by the various Parties to this

Stipulation, will be an eight-hour deposition; that the New Mexico and Non-New Mexico Plaintiffs

will collectively have four hours and will go first in the deposition; that Meta will have four hours;

and that either side can reserve some of this time for rebuttal.

WHEREAS on November 21, 2025, this Court ruled that New Mexico would be permitted

to question Jason Sattizahn at his deposition scheduled for December 8, 2025, regarding his

previous testimony before the Senate, in which he made allegations regarding the role of Meta

personnel and attorneys in the conduct of research.  The New Mexico court further ordered that

Meta's participation in the deposition and its questioning of Sattizahn would not constitute waiver of any privilege and ruled that Meta's objections on the basis of privilege would be reserved until after the deposition. Ex. 1 at 23:7–14. Finally, the New Mexico court ordered that only counsel for Meta and New Mexico could attend the New Mexico portion of the Sattizahn deposition, unless other courts in related litigation issued orders imposing the same or similar conditions. *Id.* at 29:1–5, 16–20.

WHEREAS in ruling that New Mexico could question Sattizahn on the substance of his communications with Meta's in-house counsel, the Court stated its expectation that any privilege disputes following the deposition would be promptly raised in the New Mexico court. Ex. 1 at 30:15–31:2.

WHEREAS on December 1, 2025, the court in the Federal Action ruled from the bench that plaintiffs in the Federal Action and California State Action (as defined in Appendix A) could attend the New Mexico portion of Sattizahn's deposition, subject to the following conditions: (1) they would not ask any questions during the New Mexico portion of the deposition; (2) they would not ask any questions relating to alleged spoliation or communications with Meta's counsel, which would be handled exclusively by attorneys for New Mexico; (3) they would not take the position that Meta had waived privilege by virtue of allowing them to attend the New Mexico portion of the deposition; and (4) the attorney-client privilege is Meta's—not Sattizahn's—to waive. Meta maintains that Sattizahn's testimony before Congress did not waive Meta's privilege, and plaintiffs maintain that Meta's failure to take remedial steps constituted a waiver. The Parties reserve the right to challenge Meta's privilege objections at a later date in their respective jurisdictions. Counsel for plaintiffs in the Federal Action (including the State Attorneys General participating in the Federal Action), counsel for plaintiffs in the California State Action, and counsel for Sattizahn

confirmed on the record at the December 1 hearing that they would abide by these conditions.

WHEREAS the court in the Federal Action also agreed with this Court's stated expectation that any privilege disputes following the deposition would be promptly raised in this Court, suggesting, as a matter of judicial efficiency, that privilege disputes should be resolved by this Court in the first instance.  While those rulings by this Court would not be binding in other jurisdictions, the court in the Federal Action reasoned that having the New Mexico court rule first would narrow the range of disputes that must be resolved in other jurisdictions.

WHEREAS Meta will not object to the remaining Non-New Mexico Plaintiffs' participation in the deposition of Sattizahn scheduled for December 8, 2025, provided they agree to abide by the aforementioned four conditions, and that all Plaintiffs and Sattizahn agree that the failure to make a contemporaneous objection/motion to strike during the deposition shall not be deemed to be a waiver of such objections or of the privilege.

THEREFORE the remaining Non-New Mexico Plaintiffs hereby agree to abide by the aforementioned four conditions, and all Plaintiffs and Sattizahn agree that the failure to make a contemporaneous objection/motion to strike during the deposition shall not be deemed to be a waiver of such objections or of the privilege.

THEREFORE, the Parties agree that any privilege disputes following the deposition will be promptly raised in this Court and resolved by this Court in the first instance. While those rulings by this Court will not be binding in the Non-New Mexico jurisdictions, the Parties agree that having this Court rule first may narrow the range of disputes that must be resolved in other jurisdictions.

THEREFORE, the Parties agree that deposition will proceed as follows:

1.  New Mexico portion of deposition (sealed pending resolution of privilege objections

by New Mexico Court):

    a.  New Mexico's questioning

    b.  Meta's questioning

    c.  Any rebuttal questioning by New Mexico

    d.  Any rebuttal questioning by Meta

2. Remaining portion of deposition

    a.  Plaintiffs' questioning

    b.  Meta's questioning

    c.  Any rebuttal questioning by Plaintiffs

    d.  Any rebuttal questioning by Meta

**IT IS SO STIPULATED.**

/s/ *Linda Singer*
James W. Grayson
Chief Deputy Attorney General
Mark Noferi
Senior Litigation Counsel
Steven Perfrement
Senior Litigation Counsel
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 218-0850
New Mexico Attorney General's Office
Consumer & Environmental Protection
Division
201 Third Street N.W., Suite 300
Albuquerque, NM 87102
(505) 490-4846
jgrayson@nmdoj.gov
mnoferi@nmdoj.gov
sperfrement@nmdoj.gov

**HOLLAND & HART LLP**

/s/ *John C. Anderson*
John C. Anderson
Olga M. Serafimova
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Tel: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

-and-

**COVINGTON & BURLING LLP**

Nathan E. Shafroth *(Pro Hac Vice)*
Isaac D. Chaput *(Pro Hac Vice)*
E. Kate Patchen *(Pro Hac Vice)*
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel: (415) 591-7053
nshafroth@cov.com
ichaput@cov.com
kpatchen@cov.com

4

Linda Singer *(pro hac vice)*
David I. Ackerman *(pro hac vice)*
MOTLEY RICE LLC
401 9th Street NW, Suite 630
Washington, DC 20004
(202) 232-5504
lsinger@motleyrice.com
dackerman@motleyrice.com

*Attorneys for Plaintiff*

Timothy C. Hester *(Pro Hac Vice)*
David N. Sneed *(Pro Hac Vice)*
Michael N. Kennedy *(Pro Hac Vice)*
Suzan F. Charlton *(Pro Hac Vice)*
John J. DeBoy *(Pro Hac Vice)*
Amber Charles *(Pro Hac Vice)*
Madeleine Dolan *(Pro Hac Vice)*
One City Center
850 Tenth Street, NW
Washington, DC 20002-4956
Tel: (202) 662-5324
thester@cov.com
dsneed@cov.com
mkennedy@cov.com
scharlton@cov.com
jdeboy@cov.com
acharles@cov.com
mdolan@cov.com

Patrick W. Nutter *(Pro Hac Vice)*
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067
Tel: (432) 332-4800
pnutter@cov.com

Megan Rodgers *(Pro Hac Vice)*
Lindsey C. Barnhart *(Pro Hac Vice)*
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Tel: (650) 632-4700
mrodgers@cov.com
lbarnhart@cov.com

-and-

**KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.**

Aaron M. Panner *(Pro Hac Vice)*
Kevin B. Huff *(Pro Hac Vice)*
Kevin J. Miller *(Pro Hac Vice)*
Daniel V. Dorris *(Pro Hac Vice)*
Leslie V. Pope *(Pro Hac Vice)*
Thomas G. Schultz *(Pro Hac Vice)*
Daniel S. Severson *(Pro Hac Vice)*

Alex A. Parkinson *(Pro Hac Vice)*
Ana N. Paul *(Pro Hac Vice)*
Kevin D. Horvitz *(Pro Hac Vice)*
Justin B. Berg *(Pro Hac Vice)*
Diego Negron-Reichard *(Pro Hac Vice)*
Alexander N. Gosanko *(Pro Hac Vice)*
Hilary M. Weaver *(Pro Hac Vice)*
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel: (202) 326-7900
apanner@kellogghansen.com
khuff@kellogghansen.com
kmiller@kellogghansen.com
ddorris@kellogghansen.com
lpope@kellogghansen.com
tschultz@kellogghansen.com
dseverson@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
khorvitz@kellogghansen.com
jberg@kellogghansen.com
dnegron-reichard@kellogghansen.com
agosanko@kellogghansen.com
hweaver@kellogghansen.com

*Attorneys for Defendants Meta
Platforms Inc., Instagram, LLC,
Meta Payments, Inc., and Meta
Platforms Technologies, LLC*

**IT IS SO ORDERED.**

_____
HONORABLE BRYAN BIEDSCHEID
CHIEF JUDGE, FIRST JUDICIAL DISTRICT

## Appendix A: List of Non-New Mexico Actions

1. Federal Action: *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, Case No. 4:22-md-03047-YGR(PHK) (Northern District of California).

2. California Action: *Social Media Cases*, No. JCCP 5255 (California Superior Court).

3. D.C. Action: *District of Columbia v. Meta Platforms, Inc. and Instagram, LLC*, Case No. 2023 CAB 006550 (D.C. Superior Court).[1]

4. Tennessee Action: *State of Tennessee, ex rel. Jonathan Skrmetti, Attorney General and Reporter v. Meta Platforms, Inc., and Instagram, LLC*, Case No. 23-1364-IV (Tennessee Chancery Court, Davidson County).

5. Arkansas Action: *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Meta Platforms, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Meta Payments Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc.*, Case No. 57CV-23-47 (Arkansas Circuit Court, Polk County).

6. Massachusetts Action: *Commonwealth of Massachusetts v. Meta Platforms, Inc. and Instagram, LLC*, Case No. 2384CV02397 (Massachusetts Superior Court, Suffolk County).

7. Oklahoma Action: *State of Oklahoma, ex rel., Gentner Drummond, Attorney General of Oklahoma v. Meta Platforms, Inc. f/k/a Facebook, Inc.*, Case No. CJ-2023-180 (Oklahoma District Court).

8. Florida Action: *Office of the Attorney General, State of Florida, Department of Legal*

---

[1]    Noticed under the Deposition Coordination Agreement that includes the following cases: *Utah Div. of Consumer Prot. v. Meta Platforms, Inc.*, No. 230908060 (Utah Dist. Ct.); *State of Vermont v. Meta Platforms, Inc.*, No. 23-CV-04453 (Vt. Super. Ct.); and *State of New Hampshire v. Meta Platforms, Inc.*, No. 217-2023-CV-00594 (N.H. Super. Ct.).

*Affairs v. Meta Platforms, Inc., et al.*, Case No. 24 CA 3193 CAA XES (Florida Circuit Court).

EXHIBIT 1

Recorded Hearing November 21, 2025

Recording Name:
[SFED-CrtRm237_20251121-0912_01dc5ac6f2ee4c00]

Transcript Prepared By:



**DITTO**

(720) 287-3710
1355 S. Colorado Blvd.
Suite C515
Denver, CO 80222

DUNS Number: 037801851
CAGE Code: 6C7D5
Tax ID #: 27-2983097

1

| 1 | Judge: | The court calls State of New Mexico versus Meta |
| 2 | | Platforms Inc. et al, case D-101-CV-2023-02838. |

3

4     [NOT TRANSCRIBED 00:00:10-00:56:50]

5

| 6 | Judge: | I guess last we've got is what is labeled a dispute, |
| 7 | | uh, about Sattizahn, which I -- and by the way, I'll |
| 8 | | state my general understanding and you all can correct |
| 9 | | me if it's wildly off base or even a little bit off |
| 10 | | base. Um, and that is that Mr. Sattizahn has made |
| 11 | | public statements about things that, uh, the |
| 12 | | defendants contend are privileged, and so are not |
| 13 | | wanting the plaintiffs to be able to ask about those |
| 14 | | statements at his deposition. Is that largely right, |
| 15 | | or am I way off? And with this I'll first hear from - |
| 16 | | - from plaintiffs. |
| 17 | Singer: | Uh, good morning, Your Honor, Linda Singer for the |
| 18 | | state of New Mexico. Thank you for the opportunity. |
| 19 | | Um, I do think that that is an accurate statement, and |
| 20 | | -- and perhaps also summarizes part of the problem |
| 21 | | from the State's perspective, is that we don't know |
| 22 | | what statements and documents Meta has objected to, |
| 23 | | which we think is fatal to them carrying the burden on |
| 24 | | this. And with that, I'm happy to start on our |
| 25 | | argument? |



```
1   Judge:     Certainly.

2   Singer:    Okay.  So at the core of the State's amended complaint

3              in this case is that Meta failed to ensure that its

4              products were safe, and that Meta knowingly failed to

5              disclose to New Mexico consumers information that it

6              had in its possession showing that its products are

7              not safe for teens.  Dr. Sattizahn has information

8              that shows that Meta not only knew, for example, that

9              its age verification and parental controls weren't

10             effective in keeping kids safe, but that its attorneys

11             directed researchers to avoid asking questions about

12             what it called, quote, "sensitive topics" that the

13             attorneys edited their research and directed them to

14             delete data that demonstrated harms to children and

15             teens.  That is evidence that Meta engaged in the very

16             fraud that the State has alleged, and used lawyers to

17             help keep this evidence from coming to life.  And we

18             think that Meta's arguments with -- with regard to

19             privilege in this deposition must fail for four

20             reasons.

21                 First, Meta has never identified the specific

22             information that it asserts is privileged, except as

23             information Meta will assert that the deposition is

24             privileged.  That does not respond to the direction

25             Your Honor gave us at the last hearing that we work
```



1    out these issues in advance of the deposition, and it

2    doesn't carry Meta's initial burden to show that it

3    has a valid claim of privilege over the subjects of

4    Dr. Sattizahn's testimony or to show what the

5    boundaries of that privilege are.  And I would direct

6    Your Honor to Santa Fe Pacific Gold Corporation, New

7    Mexico Court of Appeals 2007, which holds that the

8    company had the burden to show that the privilege

9    applied to each of the documents at issue.  And I

10   would note that it wouldn't have been hard for Meta to

11   lay out its specific privilege objections here.  Meta

12   has Dr. Sattizahn's detailed declarations, which

13   amount to about 60 pages collectively.  Meta has all

14   of the documents that the whistleblowers have

15   produced, roughly 59 -- I'm sorry, exactly 59, by Dr.

16   Sattizahn, and roughly the same number from other

17   whistleblowers.  The State asked Meta to identify the

18   specific information it claims as privileged, but Meta

19   has not provided it.  And as a result the court is

20   being asked to make a broad prophylactic order

21   untethered to any specific statement or document, and

22   that the State prepare for and take a deposition

23   without knowing what is in bounds and out.  That is

24   inconsistent with New Mexico law that requires me to

25   establish the privilege it asserts and prejudice --



1    prejudices the State's ability to take the deposition
2    that Your Honor has ordered.  Going forward as Meta
3    requests on a practical level that at Dr. Sattizahn's
4    deposition, Meta can direct the witness not to answer
5    whenever it asserts a privilege claim almost certainly
6    means that we're going to be back in front of this
7    court arguing about whether the objections were
8    proper, which again seems to be exactly what you asked
9    us to avoid.
10         Further the fact that Dr. Sattizahn's
11   declarations and testimony before Congress and all of
12   the whistleblower documents are already known to the
13   state and publicly further undermines the basis or
14   need for a blanket gag order.  To the extent there is
15   or was a valid claim of privilege, the information
16   that Dr. Sattizahn has is already known.  And so we
17   would suggest that the deposition can proceed subject
18   to the protective order in this matter, and the court
19   can evaluate Dr. Sattizahn's actual testimony about
20   the context and substance of the issues, determine
21   whether the information is actually privileged, and
22   strike or exclude any information Your Honor
23   determines is privileged based on a full record.  To
24   avoid any prejudice, the court can direct that Meta's
25   participation in the deposition does not constitute

1    any further waiver of any claims of privilege.  So

2    that's the first argument.  Your Honor, I will be

3    briefer, I hope in the remaining,

4         The second reason we believe that Meta's

5    arguments fail is that Meta has failed to show that

6    the primary purpose of the communications at issue

7    were legal rather than business -- I know that this is

8    an argument that Ms. Forrester (ph) made a few minutes

9    ago, and I won't dwell on it -- and that the

10    communications constitute legal advice.  While it is

11    challenging to respond to the assertion of privilege

12    in the abstract, if we assume Meta will object to any

13    communication that mentions or involves lawyers, much

14    of that information is factual.  And as this court

15    knows, attorney-client privilege doesn't protect

16    facts.  So the facts that lawyers had to approach --

17    sorry, approve research, which is what the Washington

18    Court considered in State versus American Tobacco,

19    that any research on harm was considered sensitive and

20    was to not be affirmatively investigated or were able

21    to edit research before it was shared or just the

22    facts.  They're not legal opinions.  And I would point

23    the court to Johnson versus Hewlett Packard 2010

24    Westlaw 41 --  4510345, which we cite in the briefing,

25    which indicates that testimony related, for instance,

1     to the process flow for proposing and reporting safety

2     research, including the fact that attorneys were

3     involved in that process, is not privileged.  And I

4     note as last point in this second argument, Meta has

5     not shown that lawyers' involvement in research served

6     a legal rather than a business purpose as Bandari

7     requires.  Mark Zuckerberg and Adam er testified

8     publicly that Meta conducts research to improve its

9     products.  That's a business goal, not a legal one,

10    and evidence that me failed to do so is key to the

11    State's case.

12         So then the third argument, the information that

13    Dr. Sattizahn, not a lawyer, has laid out in his

14    declarations and is demonstrated by documents

15    disclosed by he and the other whistleblowers fall

16    within the crime fraud exception, which is expressly

17    recognized in Rule 11503D, New Mexico annotative

18    rules.  The case in large part, as your Honor knows

19    well at this point, rests on allegations that Meta

20    engaged in unfair, deceptive and unconscionable

21    practices by failing to disclose information to the

22    public.  The information from Dr. Sattizahn is

23    evidence that Meta did just that using attorney-client

24    privilege as one of the tools to prevent disclosure.

25    And I want to take a moment to focus on one of the

```
 1          documents.  It's the document right before the one Ms.
 2          Forrester mentioned, C36, which is one of the publicly
 3          disclosed documents.  It's titled Reality Labs UXR,
 4          which is, uh, integrity research.  Guidance for
 5          researchers on sensitive and attorney-client
 6          privileged research.  And it indicates sometimes
 7          research involving sensitive categories requires extra
 8          care and mitigations, which may include the legal POC
 9          -- or point of contact -- making a determination about
10          whether a study should be cons- -- conducted under
11          attorney-client privilege, whether other legal
12          integrity and or outside counsel may need to review
13          and approve the research, and or whether the
14          submission details documents should be limited in any
15          way.  And the document goes on a la Tobacco, Your
16          Honor, to lay out a plan for shielding that research
17          as attorney-client privilege.  I won't go through all
18          of it, but it says that Meta will -- will engage
19          outside counsel, will jointly instruct the researcher
20          on the methodology and the study details.  The vendor
21          will conduct the study, and I'll quote here, "and
22          deliver the findings to outside counsel and Meta legal
23          point of contact.  Outside counsel renders legal
24          advice to Meta based on the study results.  Most
25          product safety, in parens, health and safety,
```



OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
1355 S. Colorado Blvd., Suite C515, Denver, CO 80222

 1          integrity studies are conducted under ACP -- attorney-

 2          client privilege -- working under the direction of

 3          outside counsel."

 4              There is an internal Meta document I won't go

 5          into, given that we are on the public line, but it

 6          describes the sensitive topics or populations.  Again,

 7          I won't detail them, although I do think they are

 8          important because they track the allegations of the

 9          State's complaint and involves lawyers in overseeing

10          just that research.  And it is again -- to use Ms.

11          Forrester's phrase, there is no daylight between what

12          this represents and what happened with the Center for

13          Tobacco Research in deliberately sheltering

14          information as attorney-client privilege to keep it

15          from being known in litigation.  According to

16          whistleblower documents, Meta even had formal internal

17          guidance dated March 2023 for researchers conducting

18          sensitive attorney-client privilege research.

19              And this is cons- -- I'm sorry I'll skip over

20          that factual matter because it's confidential, Your

21          Honor.  But again want to make the point that this is

22          not sui generous, and I think the court can be guided

23          by the tobacco litigation.  In our briefing we cite

24          State versus Philip Morris and State versus American

25          tobacco, both cases in which courts found that the



1   company's failure to conduct appropriate research into

2   the safety of its products and the failure to warn

3   their products' consumers if the research supported

4   negative conclusions fall within the crime fraud

5   exception.  Uh, I would note that the State first

6   issued CIDs -- a CID to Meta in 2023.  The conduct

7   that we describe in the briefing and that Dr.

8   Sattizahn more importantly describes in his testimony

9   and declarations relate to evidence that was sheltered

10  or altered after the state issued its CID.  And as we

11  lay that in a brief -- and again we don't make this

12  allegation lightly and we make it based on evidence

13  now publicly available and produced in this

14  litigation, that that conduct is a fraud on the court,

15  and it undermines the truth seeking role of litigation

16  and the administration of justice.  It doesn't the

17  purpose of attorney-client privilege to ensure that

18  lawyers can freely provide guidance to clients but

19  misuses attorney-client privilege to allow lawyers to

20  hide information for their clients.

21       And that takes me to the fourth and final point.

22  I don't want to spend a lot of time on this because I

23  think Your Honor need not reach it.  But the state has

24  laid out that Meta has waived any claim of privilege

25  that may exist.  And I do want to address Meta's

1    argument, because I think it misses the State's actual

2    position.  We don't contend that Dr. Sattizahn waived

3    Meta's privilege.  We contend that Meta waived Meta's

4    privilege when even after documents were disclosed in

5    this litigation and filed on the docket, Meta made no

6    effort to assert a privilege or call them back.  Now

7    Meta said in its brief that it raised its privilege

8    argument as soon as the state sought to depose Dr.

9    Sattizahn.  But the state produced the relevant

10   documents in this litigation in September and then

11   again in early October, making them available in this

12   case whether or not Dr. Sattizahn was ever deposed.

13   And Meta has clawed back dozens of documents in this

14   litigation.  It knows how to preserve its privilege,

15   and it failed to do so here.  And this is akin to US

16   versus de la Jara, a Ninth Circuit case which we cite

17   that held that even when the initial disclosure was

18   involuntary, as here, privilege is preserved only if,

19   quote, "the privilege holder has made efforts

20   reasonably designed to protect and preserve the

21   privilege."  And the Ninth Circuit said it would deem

22   privilege waived if the privilege holder fails to

23   pursue all reasonable means of preserving the

24   confidentiality of the privileged matter.  In de la

25   Jara, the privilege holder did nothing to recover the

1        letter or protect its confidentiality over six months,

2        and that had the privilege holder attempted to recover

3        the letter, appellant could have minimized the damage,

4        but in failing to do so, it irretrievably breached

5        privilege and waived it.  For all of those reasons, we

6        believe that Dr. Sattizahn should be permitted to

7        testify on the documents and information contained in

8        his declaration and in the whistleblower disclosures,

9        and that Meta should not be allowed free reign without

10       ever having identified the specific information about

11       which asserts privilege to limit Dr. Sattizahn's

12       testimony.  And with that very long argument, I will

13       yield to any questions the court may have for the

14       State.

15 Judge:   All right, at this point I don't have any for you.

16        Uh, Mr. Shultz, are you arguing?

17 Shultz:  Yes, Your Honor.  Thank you.

18 Judge:   All right, whenever you're ready.

19 Shultz:  Sure.  So Dr. Sattizahn is a disgruntled former Meta

20        employee who, when he was terminated, stole privileged

21       documents from Meta, published them online, and then

22       testified before Congress about legal advice he

23       purportedly received from Meta's attorneys.  The court

24       has already ruled a moment ago that those

25       communications with Meta's attorneys are privileged,

1     and in disclosing those materials, Mr. Sattizahn --

2     Dr. Sattizahn, excuse me, flagrantly violated Meta's

3     privilege.  The State now seeks to compound the harm

4     to Meta and induce Sattizahn to commit further

5     violations of Meta's privilege by eliciting his

6     deposition testimony about those privileged matters.

7     It's not appropriate for the State to knowingly induce

8     a witness to violate his former employer's privilege.

9     And in fact, doing so would directly violate New

10    Mexico rule of professional conduct 404A, which says

11    that a lawyer shall not use methods of obtaining

12    evidence that violate legal rights of a third party,

13    here Meta, and ABA formal pending opinion 91359

14    expressly addresses this specific situation, and says

15    that when an attorney is contacting a former corporate

16    employee, the attorney must be careful not to seek to

17    induce the former employee to violate the privilege

18    attaching to attorney-client communications.  And that

19    is exactly what the State seeks to do here.  And so

20    we're asking for remedy that's fairly modest and we

21    believe reasonable, which is a protective order

22    preventing the State from asking Mr. Sattizahn about

23    privileged legal advice he received as a Meta

24    employee, precluding Dr. Sattizahn from disclosing

25    privileged legal advice and obligating Mr. Sattizahn

 1          to adhere to instructions during his deposition from
 2          Meta's counsel not to answer questions on grounds of
 3          attorney client privilege.  And I want to briefly just
 4          explain why we think these procedures are necessary in
 5          this case in a normal deposition, I think would be
 6          sufficient to say, okay, there's some privilege
 7          matters that they may go into on the other side, but
 8          we can have our attorneys instruct a witness not to
 9          answer the question.  And if this were a deposition
10          of, say, Ms. Zobel (ph) or Ms. Di (ph), um, those
11          would be appropriate safeguards.  But there are no
12          safeguards in this deposition because we can't expect
13          Dr. Sattizahn to adhere or follow the instructions of
14          Meta's counsel not to disclose privileged information,
15          which is why we need a protective order obligating Dr.
16          Sattizahn to follow those instructions and precluding
17          the State from, um, going into areas that it knows or
18          should know are privileged.
19              Now in the state's brief on this issue, it raised
20          three arguments.  The first two I think have been
21          disposed of by the court already.  Those are business
22          communications and crime fraud.  Those are the same
23          arguments that the State raised with respect to Ms.
24          Zobel and Ms. Di's deposition.  The third argument is
25          new.  Uh --



| | | |
|---|---|---|
| 1 | Judge: | Well, Mr. Shultz, just to make sure you're clear, from |
| 2 | | -- from my perspective, there is a distinction between |
| 3 | | seeking to depose Meta counsel about legal advice |
| 4 | | that, you know, in particular, according to their, uh, |
| 5 | | affidavits and statements, they gave to these business |
| 6 | | entities -- I think there's a distinction between that |
| 7 | | potentially and someone who received advice and would |
| 8 | | be testifying about in that witness's non counsel's |
| 9 | | opinion, how it affected or what it was and how it |
| 10 | | affected his activities with the company.  So I just |
| 11 | | want to let you know, so I'm not being strangely |
| 12 | | opaque up here.  I -- I do see that as a difference. |
| 13 | | And so it is not necessarily true that everything I |
| 14 | | just ruled on finding a balance, tipping in favor of |
| 15 | | attorney-client privilege being protected would be |
| 16 | | true with respect to Dr. Sattizahn. |
| 17 | Shultz: | I agree, your honor.  It is -- it is different in the |
| 18 | | sense that Dr. Sattizahn is not an attorney, and not |
| 19 | | everything he did as a Meta employee is privileged, |
| 20 | | and that's not our position.  We're not opposing a |
| 21 | | deposition of Dr. Sattizahn, full stop.  We're simply |
| 22 | | seeking safeguards to protect the very information, |
| 23 | | the attorney-client communications that Dr. Sattizahn |
| 24 | | received from counsel like Ms. Zobel and Ms. Di, and |
| 25 | | on that issue there is no distinction.  If Ms. Zobel |



1    or Ms. Di gives Dr. Sattizahn legal advice, that legal

2    advice is privileged as to the attorneys and it's

3    privileged as Dr. Sattizahn.  It doesn't matter

4    legally if you received it or gave it, um, the

5    privilege still applies.  And the other distinction

6    here, Your Honor, is that Dr. Sattizahn has already

7    shown a willingness to disregard all -- all privilege

8    rules out there and disclose information that is

9    privileged, which is why we need appropriate safeguard

10    at a deposition that we're requesting.  Uh, and so

11    again, we're not opposing a deposition of Dr.

12    Sattizahn.  We're simply asking for the court to

13    implement safeguards and place appropriate limits to

14    protect information that is privileged because it came

15    from Meta's legal counsel.

16        Now the State's argument, um, that they focus on

17    in their brief on this is waiver, uh, and that's an

18    argument they raise on Dr. Sattizahn.  It's the only

19    one they don't raise with, uh, respect to Zobel and

20    Di, but they do raise Sattizahn.  So I want to focus

21    on that, and we think there's been no waiver here.

22    There are two New Mexico rules on point -- directly on

23    point, neither of which the State squarely addresses.

24    The first is New Mexico rule of evidence 11-511, which

25    sets forth the relevant standard per waiver.  And that

1    rule says a person possesses a privilege against

2    disclosure of a confidential matter waives the

3    privilege if the person voluntarily discloses or

4    consents to disclosure of any significant part of the

5    matter or communication.  Now critically, that rule

6    differs from federal law and federal common law and

7    state common law.  It is a specific, um, statutory

8    based rule on waiver that was implemented by the New

9    Mexico Supreme Court.  And there is no evidence

10   whatsoever that Meta either voluntarily disclosed the

11   privileged material at issue here or consented to Dr.

12   Sattizahn's disclosure of those materials, full stop.

13   The State does not contend otherwise.  The State

14   instead asserts that Meta waive privilege over the

15   improperly disclosed documents by failing to claw them

16   back after Dr. Sattizahn published them online.  That

17   argument, I think, finds no support in either common

18   sense or New Mexico law.  Starting with common sense,

19   Meta cannot legally compel a disgruntled former

20   employee to unpublish privileged documents by issuing

21   him a claw back notice, and the State doesn't explain

22   what purpose serving such notice in this context would

23   serve.  And under New Mexico law, there is no case

24   that we're aware of and none that State cites holding

25   that failing to claw back a privileged document

1      published by a third party constitutes either

2      voluntarily disclosing that privilege material or

3      consenting to the disclosure of a privileged material

4      under New Mexico Rule 11-511.  And so the contrary

5      courts applying that rule, uh, have generally required

6      offensive or direct use of privileged materials before

7      a party will be deemed to have waived its attorney-

8      client privilege.  That comes from the Lyons case, uh,

9      from 2000 Court of Appeals.

10      Now there's a second New Mexico rule directly on

11      point here, which is New Mexico Rule 11-512, which

12      again the State does not address at all.  And that

13      rule says a disclosure of a privileged matter is not

14      admissible against the holder of a privilege when the

15      disclosure was made without the opportunity to claim

16      the privilege.  Now that rule is on top of the general

17      waiver rule in 511, and it's directly on point here.

18      We did not have an opportunity to claim privilege when

19      Dr. Sattizahn published these privilege documents

20      online.  And that material therefore, under rule 512,

21      is not admissible against Meta.  Now I mentioned the

22      state does not address the elements of 511 or 512.  It

23      instead relies primarily on a 1988 case called Hartman

24      which applied a different common law waiver standard

25      in assessing disclosure of privileged material by the



1    privileged holder.  That case is not relevant here for

2    at least three reasons.  One, again, it applies a

3    common law waiver standard that is not bound in Rule

4    11-511.  And after Hartman, the New Mexico Supreme

5    Court clarified -- and this is a direct quote from,

6    um, Allen v LeMaster, clarified that courts must avoid

7    applying common law principles that are inconsistent

8    with the language of our rules, meaning rule, uh, 11-

9    511, and must not engage in the type of ad hoc

10    judicial analysis engaged in by other courts that are

11    free to apply the common law of waiver.  In other

12    words, Mexico courts should apply the waiver standard

13    as it's set forth in Rule 11-511, not a common law

14    test that is a free ranging reasonable standard that

15    Ms. Singer quoted a moment ago from the Ninth Circuit.

16    So that's one reason Hartman doesn't apply here.

17        Second is Hartman addresses disclosure by the

18    privilege holder.  Again, this is an improper

19    disclosure by a third party, which is addressed by 11-

20    512, which says that it's an admissible if we didn't

21    have a chance to object to it.  And third, Hartman

22    addressed waiver as to the specific documents

23    disclosed in that case.  And that's -- that's an

24    important point here to distinguish between this case

25    and Hartman.  What the State is asking for here is not



1    simply, um, a waiver order as to the documents

2    disclosed by Dr. Sattizahn. They're asking for an

3    order that Meta is waived privilege over the subject

4    matter of those documents such that the State can

5    further explore those materials through Sattizahn's

6    deposition testimony. It's essentially a subject

7    matter waiver the court asking for here -- the State's

8    asking for here, and that's a very high bar to meet,

9    and the courts I quoted a moment ago -- the Lyons case

10   for example -- generally hold that subject matter

11   waiver of the type asked for by the State here

12   generally requires offensive or direct use by the

13   privilege holder. There's no evidence of that here.

14        The last issue I want to just address briefly,

15   Your Honor, is the -- the first part of Ms. Singer's

16   argument, uh, which is sort of akin to a waiver that

17   the State doesn't know what we're asserting privilege

18   over here. Um, that is not our understanding of the

19   conversations that happened between us and the State.

20   Uh, we -- we've interpreted the State's position as a

21   blanket, we get to ask whatever we want to Dr.

22   Sattizahn about anything he made public, um,

23   regardless of what the privilege is or whether it's

24   privileged. Uh, there simply has not been a

25   discussion about a document by document privilege, um,

1    claim because the State hasn't taken the position that

2    some documents, um, may be off limits and some may be

3    -- may be, uh, within limits.  It hasn't, um,

4    indicated a willingness to have that conversation

5    about okay, we'll cabin our questions to this

6    document, this document.  The state's taken the

7    position that everything is fair game for Dr.

8    Sattizahn.  If the state is willing to have that

9    conversation, we're happy to have it and tell the

10   state, okay, these documents are privileged

11   specifically, and go document by document and say,

12   okay, this -- this is research, it's not legal advice,

13   this is legal advice, it's off limits.  And we can

14   have that conversation before the deposition.  But

15   regardless of that conversation, what we think needs

16   to happen or should happen here is that there should

17   be an order that prevents Dr. Sattizahn from breaching

18   Meta privilege in a further way by willingly

19   disclosing privileged material over the objections of

20   Meta's counsel, and precluding the State from

21   knowingly going into privileged materials, uh, in the

22   deposition in violation of rule 404.  Uh, and if

23   nothing further, I'll pause for questions.

24   Judge:    All right.  Uh, I don't have any for you at this time.

25             Um, all right.  And let me just -- I will just state



|     |         |                                                                        |
| --- | ------- | ---------------------------------------------------------------------- |
| 1   |         | at this point, I -- I understood from the notes that                   |
| 2   |         | this was sort of a dispute, and then I noted as well                   |
| 3   |         | that there was a motion filed by plaintiffs on the                     |
| 4   |         | 17th.  So I'm not clear at this point if I'm dealing                   |
| 5   |         | with a dispute where I hear from each side or if I'm                   |
| 6   |         | ruling on a motion, but it may be in any event -- let                  |
| 7   |         | me just -- Ms. Singer, I have a question for you.  Um,                 |
| 8   |         | and -- and then Mr. Shultz, I'll ask you to weigh in                   |
| 9   |         | too if necessary.  And that is, uh, is there a                        |
| 10  |         | reasonable mechanism, uh, by which Dr. Sattizahn's --                  |
| 11  |         | the deposition, transcript and any exhibits that are                  |
| 12  |         | alleged to be privileged and the like, could be, uh,                  |
| 13  |         | protected and confidential until the court has an                     |
| 14  |         | opportunity to review objections made by -- by Meta                   |
| 15  |         | and rule on those?                                                     |
| 16  | Singer: | From the State's perspective, Your Honor?  Absolutely.                 |
| 17  |         | And I think that's one of the points I perhaps in-                     |
| 18  |         | artfully tried to express in my argument, that --                     |
| 19  | Judge:  | No, and you -- you weren't in-artful at all.  I guess                 |
| 20  |         | I just wanted to make sure that I was stating it in a                 |
| 21  |         | way that -- that I would be applying it, and that is -                |
| 22  |         | - uh, and as well -- I understood for your argument as                |
| 23  |         | well, and I would agree, that Meta's participation in                 |
| 24  |         | the deposition is not a waiver of privilege and is                    |
| 25  |         | not, uh, prejudicing its -- its position with respect                 |

|   |   |   |
|---|---|---|
| 1 |  | to the claims.  But I did want to make sure that it |
| 2 |  | would be clear, both for the court and plaintiffs, |
| 3 |  | that that would be the sort of protective order I'd be |
| 4 |  | interested in, is making sure that it's protected |
| 5 |  | until there's an opportunity to -- to rule. |
| 6 | Singer: | Absolutely, Your Honor, and the State is willing to |
| 7 |  | agree to whatever guardrails on that that provide |
| 8 |  | confidence.  But yes, that would be our understanding |
| 9 |  | and our proposal, and I do think it has the additional |
| 10 |  | virtue of giving the court a clear record on which to |
| 11 |  | make those determinations and avoid a second |
| 12 |  | deposition of Dr. Sattizahn after a witness is |
| 13 |  | instructed not to answer questions, and the court is |
| 14 |  | making those determinations without the information on |
| 15 |  | what his answer would be. |
| 16 | Judge: | Sure.  And Mr. Shultz? |
| 17 | Shultz: | So if I understand correctly, the -- the proposal on |
| 18 |  | the -- on the table is essentially the State can go |
| 19 |  | forward with its deposition of Dr. Sattizahn.  If |
| 20 |  | there are privileged objections that Dr. Sattizahn, |
| 21 |  | uh, ignores instructions not to answer, the court can |
| 22 |  | rule on those after the deposition, is that -- is that |
| 23 |  | right? |
| 24 | Judge: | Cor- -- correct.  That he would be allowed -- so I |
| 25 |  | guess where I'm going this the State would be allowed |

1     to explore, as I think I've previously ruled, uh,

2     questions related to all publicly disclosed or

3     available documents.  I understand that Meta's

4     contending they shouldn't be, uh, and that they still

5     need to be protected, but I would allow that

6     deposition to go forward, allow questioning on all

7     such documents.  Meta's participation in the

8     deposition would not be a waiver of its claims of

9     privilege with respect to those -- those documents.

10    And then the deposition would be essentially sealed or

11    protected, you know, with similar or same effect, and

12    it would remain so until the court can make a decision

13    based on, I guess, post deposition assertions by Meta

14    as to what was inappropriate.  I mean I -- part of

15    this is noting as well, I think it's 512 that deals

16    with admissibility of, uh, such issues, but I'm still

17    focused on discovery.  Uh, and so that's another

18    important distinction for the court.  So, uh, again, I

19    -- I want to make sure that what I'm proposing is

20    something that is, I understand, objectionable but

21    workable.

22 Shultz:  Yes.  And -- and good flag on 512.  It does deal with

23    admissibility.  I think I see two -- two issues with

24    that approach, Your honor.  One is that the deposition

25    is going to be, um, you know, coordinated with MDL



1    attorneys, and people in the deposition will not just

2    be New Mexico and -- and -- and Meta. It'll be people

3    outside, and so it's going to be hard to cabin the

4    universe of people who see this information to just

5    people the court might contemplate seeing it. The

6    second, and I think more problematic issue from our

7    perspective, Your Honor, is that it's going to be hard

8    to cabin, um, the topics that Dr. Sattizahn testifies

9    about. It'd be one thing if, um, you know, all that

10   was really asked about was the words on the page, and

11   all that Dr. Sattizahn testified about was the words

12   on the page of documents that were publicly disclosed.

13   But the nature of a deposition is to explore witness's

14   testimony beyond the documents. And so, you know,

15   there's -- there's really no telling what he'll say

16   and what additional conversations he'll disclose. And

17   so I think doing it this way, uh, from our protective

18   risks, further privilege violations of not only the

19   materials that were already in public but new alleged

20   conversations that Dr. Sattizahn had that have not

21   previously been disclosed before, which would

22   obviously compound the violation, uh, there. So, you

23   know, it's going to be hard to police that line, and

24   it's going to be hard to police the line of where

25   does, you know, the documents he published stop, and

| | |
|---|---|
| 1 | where does, um, you know, everything else begin? |
| 2 | Judge:  Sure.  And by the way, I don't disagree with what |
| 3 | you're saying.  It just from a court's perspective, |
| 4 | the choice is place that line without knowledge of |
| 5 | what's going to be said in advance of the deposition, |
| 6 | or figure out the line based on what was said after |
| 7 | the deposition.  And I -- I am obviously inclined |
| 8 | towards the latter.  Um, let me ask, on the MDL piece, |
| 9 | because I -- it's a good point, and it's one that |
| 10 | maybe I'm helping facilitate, uh, if not create.  Um, |
| 11 | and that is, and again, counsel, correct me if I'm |
| 12 | wrong.  I -- I have understood that my rulings with |
| 13 | respect to coordinating depositions in this matter |
| 14 | with those being taken in the MDL was to respect |
| 15 | witness time, efficiency, expense, all those things. |
| 16 | Uh, and it has been in that vein that I, wherever |
| 17 | possible, have said coordinate, but I certainly have - |
| 18 | - well I should say, the other piece of my ruling is I |
| 19 | think have been -- that coordination is not at the |
| 20 | expense of this New Mexico litigation and the |
| 21 | application of New Mexico discovery standards.  So I |
| 22 | guess where I'm going with all this is, if my rulings |
| 23 | to try to accomplish the former, the efficiency and |
| 24 | the respect for time and all sorts of things, is |
| 25 | creating problems with respect to applying New Mexico |



OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
1355 S. Colorado Blvd., Suite C515, Denver, CO 80222

|   |   |
|---|---|
| 1 | specific, uh, rulings, well let me know because that |
| 2 | could be a good reason to say, uh, all my other |
| 3 | concerns are outweighed by the latter, and maybe this |
| 4 | needs to be conducted in a separate forum. I don't |
| 5 | know how feasible that is. I don't know -- again, I |
| 6 | sort of feel like I have steered you all towards -- or |
| 7 | whatever, forced you all towards -- whatever the right |
| 8 | term is -- towards coordinating. And now I'm hearing |
| 9 | judge, you're actually creating problems for New |
| 10 | Mexico litigation by doing that, which has not been my |
| 11 | goal. So let -- let me ask Ms. Singer, this was the |
| 12 | person that wants to take said deposition, what are |
| 13 | your thoughts with respect to that? |

Singer:   Yes, I think two issues -- and it is a -- a turn, Your
         honor, given the prior posture on this. One is I
         think Your Honor made clear at the last hearing, this
         deposition is proceeding as a New Mexico deposition,
         and for the witness's convenience we are prepared to
         coordinate just as Your Honor has directed in the
         past. And that seems fair. We've agreed upon a
         division of time that makes this a one-day deposition
         among the plaintiffs and with Meta all. That said, I
         think your Honor could set either one of two
         conditions in the interest of allowing us to go
         forward. One is that any parties that participate in



|   |   |   |
|---|---|---|
| 1 |         | the New Mexico section of this deposition have to |
| 2 |         | agree to abide by the same ceiling requirements and or |
| 3 |         | treat the New Mexico deposition as a separate part of |
| 4 |         | the deposition.  I think either of those address the - |
| 5 |         | - the concern that has been raised. |
| 6 | Judge:  | All right.  Mr. Shultz? |
| 7 | Shultz: | Yeah, I mean I think at a minimum, if this procedure |
| 8 |         | was to go forward, we want to, you know, sequester |
| 9 |         | that part of the deposition, and hold it entirely |
| 10 |        | separately.  But, you know, it strikes me as well |
| 11 |        | that, um, you know, there might be a better way to do |
| 12 |        | this, which is -- I thought Ms. Singer at the |
| 13 |        | beginning of this call had a good idea of, you know, |
| 14 |        | talking through the documents that Dr. Sattizahn |
| 15 |        | published and clarifying what is and is not off |
| 16 |        | limits.  And I think if we can do that, we can go |
| 17 |        | forward with the deposition of the non-privileged |
| 18 |        | parts of Dr. Sattizahn's materials he published, and |
| 19 |        | just leave it at that, but sanctioning a deposition |
| 20 |        | that will conceivably have privileged disclosures in |
| 21 |        | it, I've -- I've never seen that done in a case in my |
| 22 |        | short career.  Maybe -- maybe it has been and I'm not |
| 23 |        | aware of it, but it strikes me as a -- a -- an |
| 24 |        | unconventional remedy for something we can address in |
| 25 |        | advance the deposition simply by talking to the State |



|   |   |   |
|---|---|---|
| 1 |  | and Meta about, you know, what is and is not off |
| 2 |  | limits. |
| 3 | Judge: | Right.  Well again, so in past hearings, I think I've |
| 4 |  | worked to address this admittedly imperfectly, but |
| 5 |  | again, we've talked about drawing lines and when |
| 6 |  | they're drawn, and I don't agree that, again, Dr. |
| 7 |  | Sattizahn's testimony about his activities and how, |
| 8 |  | uh, those activities worked, and maybe even worked in |
| 9 |  | conjunction with, uh, you know, some legal input is |
| 10 |  | automatically and always going to be privileged.  And |
| 11 |  | so I -- I don't think it's as clear cut as -- as all |
| 12 |  | that.  I -- I would certainly encourage you all to |
| 13 |  | confer because if there are documents that I am |
| 14 |  | clearly going to say, even though publicly available, |
| 15 |  | which was the first line I drew, hey, this is never |
| 16 |  | going to be admissible, clearly this is, uh, going to |
| 17 |  | be protected.  Well I would encourage you all to make |
| 18 |  | your deposition productive and not spend a bunch of |
| 19 |  | time on that.  Uh, so conferral I think still has |
| 20 |  | merit, and I think still could be useful.  But, uh, |
| 21 |  | again, because I don't know, in fact, that I am |
| 22 |  | ordering a deposition that will, uh, necessarily go |
| 23 |  | into privileged matters, I just know it's going to go |
| 24 |  | into some matters that are alleged to be privileged by |
| 25 |  | one side, but are publicly available, uh, I am going |



|   |   |
|---|---|
| 1 | to, again, allow that to go forward.  I will say the |
| 2 | New Mexico specific deposition that is allowing |
| 3 | questions on these matters, uh, should be a separate |
| 4 | part of the deposition, and just be New Mexico counsel |
| 5 | and not be all of the MDL.  Again, I -- by the way, I |
| 6 | -- here, let me just say in advance, if I am told |
| 7 | later on that a similar or identical ruling has been |
| 8 | made in the MDL, so now there's really a distinction |
| 9 | without a difference, this ruling would change, but |
| 10 | understanding at the moment that I am making a |
| 11 | decision that is unique to New Mexico and different |
| 12 | from what exists in the MDL, I would say the |
| 13 | deposition of Dr. Sattizahn for New Mexico purposes |
| 14 | should be a separate and needs to be a separate |
| 15 | proceeding.  And by that I don't mean you need to |
| 16 | change rooms, you need to do everything different.  I |
| 17 | mean other MDL counsel can't be sitting in there |
| 18 | learning all these things that I'm going to rule on |
| 19 | later and then seeing how they can use them in other |
| 20 | litigation. |
| 21 | Shultz:  Understood, Your Honor.  And if we are going to do it |
| 22 | this way, I think, you know, we would request that, |
| 23 | um, you know, after the deposition, to the extent that |
| 24 | there are things that, um, Dr. Sattizahn said that are |
| 25 | privileged or disclosed privileged advice or |



|    |         |                                                          |
|----|---------|----------------------------------------------------------|
| 1  |         | materials, um, you know, we'd be able to go to the       |
| 2  |         | court and get those, you know, stricken from the         |
| 3  |         | record entirely as privileged materials, and then       |
| 4  |         | have, um, the State, you know, basically destroy and     |
| 5  |         | then replace its transcript with a redacted version of   |
| 6  |         | the -- of the non-privileged sections of the             |
| 7  |         | deposition.                                              |
| 8  | Judge:  | Sure.  When -- when is this deposition, uh, scheduled?   |
| 9  | Singer: | December 8th, Your Honor.                                 |
| 10 | Judge:  | All right,                                               |
| 11 | Grayson:| Your Honor, may I have one more thing on this issue?     |
| 12 |         | This is --                                               |
| 13 | Judge:  | Well just one moment, and that's only because -- it's    |
| 14 |         | not your input being objectionable, but I only have a    |
| 15 |         | certain amount of mental bandwidth sadly.  Um, so I      |
| 16 |         | guess where I wanted to go with this is -- uh, again,    |
| 17 |         | I think consistent with the notion that there would be   |
| 18 |         | an order protecting and essentially sealing this         |
| 19 |         | deposition transcript until this court has made any      |
| 20 |         | requested rulings, uh, related to confidentiality,       |
| 21 |         | assuming they are immediately brought to the court's     |
| 22 |         | attention.  Again, I'm not going to say sandbagging      |
| 23 |         | will be rewarded, uh, but if they're immediately         |
| 24 |         | brought to the court's attention, uh, I think it would   |
| 25 |         | make sense and it would be consistent with that ruling   |



OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
1355 S. Colorado Blvd., Suite C515, Denver, CO 80222

1      that I rule on those before there's an unsealed

2      version of the transcript released.  So I think that

3      is -- I don't understand how else it would work,

4      frankly.  The other piece that I want you to know for

5      your timing in terms of when those matters are being

6      raised and when that briefing is done, I currently

7      have a jury trial scheduled the 9th to the 16th, and

8      while I have endeavored to jump on to hearings in this

9      matter in the midst of the last jury trial, this might

10     be involved enough, I suspect, uh, that I would not be

11     able to do that during the jury trial, I -- I am

12     guessing.  So, uh, if you decide that a reasonably

13     competent, uh, judge would be able to do that, then

14     you can certainly request it.  But please be lenient

15     with your, uh, assessment of what you think a

16     reasonably competent judge could do.  Um, with that, I

17     would be looking to set this matter if needed as one

18     of those December issues we talked about, uh, and I

19     think was requested earlier on, uh, and not something

20     that's piling up into January as you're trying to

21     prepare for your -- for your trial.  And so I -- I

22     don't know exactly when we would do that.  Part of it

23     would also be to see how many objections there are,

24     and, uh, what's -- what's involved, but I just want to

25     let you know that that is precisely the sort of

1          proceeding that might, I think, need to be scheduled

2          in December sometime after the 16th, when my jury

3          trial is supposed to end.

4

5  [END OF TRANSCRIPTION]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
1355 S. Colorado Blvd., Suite C515, Denver, CO 80222

```
 1                    TRANSCRIBER'S CERTIFICATE

 2

 3          I, Nicole Emert Topping, do hereby certify that I have

 4     listened to the recording of the foregoing; further that the

 5     foregoing transcript, Pages 1 through 32, was reduced to

 6     typewritten form from a digital recording of the proceedings

 7     held November 21st, 2025, in this matter; and that the foregoing

 8     is an accurate record of the proceedings as above transcribed in

 9     this matter on the date set forth.

10          DATED this 1st day of December, 2025.

11

12

13     _____

14     Nicole Emert Topping

15     Ditto Transcripts
       1355 S. Colorado Blvd.
16     Suite C515
       Denver, CO 80222
17     Tel: 720-287-3710
       Fax: 720-952-9897
18

19     DUNS Number: 037801851
       CAGE Code: 6C7D5
20     Tax ID #: 27-2983097

21

22

23

24
```

OFFICE 720-287-3710 | FAX 303-952-9897 | WEB www.dittotranscripts.com
1355 S. Colorado Blvd., Suite C515, Denver, CO 80222