IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

<table>
<tr><td>

**DISTRICT OF COLUMBIA,**
      **Plaintiff,**

      **v.**

**META PLATFORMS, INC., et al.,**
      **Defendants.**

</td><td>

**2023  CAB  006550**

**Judge Yvonne Williams**

</td></tr>
</table>

<u>**ORDER DENYING META'S OPPOSED MOTION FOR RECONSIDERATION OF OCTOBER 23, 2025 ORDER**</u>

Before the Court is the Opposed Motion for Reconsideration of October 23, 2025 Order ("Motion"), filed by Defendants Meta Platforms, Inc. and Instagram, LLC (collectively, "Meta") on October 27, 2025. The District of Columbia (the "District") filed its Opposition to Meta's Motion on November 11, 2025, to which, Meta replied on November 17, 2025. On December 22, 2025, Meta filed its Notice of Supplemental Authority, to which, the District responded on December 23, 2025. For the reasons set forth below, Meta's Motion is **DENIED**.

I.      **BACKGROUND**

The District initiated this action against Meta on October 24, 2023 alleging past and ongoing violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 to 28-3913 ("CPPA"). Pursuant to the Parties' discovery obligations, Meta began producing documents to the District in January 2024. Mot. at 2. Between March 9, 2025 and August 6, 2025, the District brought the following four documents (collectively, the "Documents") to Meta's attention because they contained potential attorney-client communications: (i) METADCAG-008-01392318 ("Document 1"); (ii) METADCAG-008-01082201 ("Document 2"); (iii) METADCAG-010-00353309 ("Document 3"); and (iv) METADCAG-022-00471540

("Document 4"). Meta subsequently clawed-back the Documents asserting attorney-client and work product privilege. *See id.* at 3-5.

On August 18, 2025, the District filed its Opposed Motion for an Order Finding No Privilege Over Clawed-Back Documents and for *In Camera* Review ("Claw-Back Motion"), requesting that the Court enter an order: (i) confirming that the Documents are not privileged; and (ii) requiring Meta to produce the Documents to the District. *See generally* Mot. Meta filed its Opposition to the District's Motion on September 2, 2025. On September 3, 2025, the Parties appeared before the Court for their Remote Status Hearing, at which, the Court informed the Parties that it would conduct an *in camera* review of the Documents prior to entering an order. On September 8, 2025 and September 11, 2025, the District filed its Reply and Supplemental Authority, to which, Meta filed a Sur-Reply on September 17, 2025. Following its *in camera* review of the Documents, the Court entered an Order Granting the District's Claw-Back Motion on October 23, 2025 ("October 23, 2025 Order"). Meta subsequently filed the instant Motion on October 27, 2025. On November 11, 2025, the District filed its Opposition to Meta's Motion, to which, Meta replied on November 17, 2025. On December 22, 2025, Meta filed its Notice of Supplemental Authority, to which, the District responded on December 23, 2025. Meta's Motion is, therefore, ripe for adjudication.

## II.    LEGAL STANDARD

"A trial court may grant a Rule 59(e) motion in order to correct manifest errors of law or fact." *In Re Estate of Derricotte*, 885 A.2d 320, 324 (D.C. 2005). The "manifest error" standard is extremely high and defined as "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Only extraordinary circumstances warrant the grant of a motion to alter or amend judgment under Rule

59(e). *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004). Pursuant to Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." D.C. Super. Ct. Civ. R. 59(e). "A timely motion asserting that the court committed an error of law is normally treated under Rule 59 (e)[.]" *District No. 1 – Pacific Coast District v. Travelers Casualty & Surety Co.*, 782 A.2d 269, 278 (D.C. 2001) (internal citations and quotations omitted).

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims…may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *D.C. Hous. Fin. Agency v. Harper*, 707 A.2d 53, 57 (D.C. 1998) (quoting D.C. Super. Ct. Civ. R. 54(b) (internal quotations omitted)). The standard for reconsideration of interlocutory orders under Rule 54(b) is whether reconsideration is consonant with justice. *See Marshall v. United States*, 145 A.3d 1014, 1019 (D.C. 2016). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012).

Reconsideration is warranted if, for example, moving parties "present newly discovered evidence, show that there has been an intervening change in the law, or demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *See Bernal v. United States*, 162 A.3d 128, 133 (D.C. 2017) (quotation, ellipsis, and brackets omitted). However, "it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Ali v. Carnegie Institute of Washington*, 309 F.R.D. 77, 81 (D.D.C. 2015). Raising "arguments that should have been, but were not, raised in" the original filing "is, frankly, a waste of the limited

time and resources of the litigants and the judicial system." *Estate of Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 9-10 (D.D.C. 2011); *see Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for…arguing matters that could have been heard during the pendency of the previous motion.").

## III.  DISCUSSION

Meta's Motion is denied. Meta argues that it is entitled to reconsideration of the Court's October 23, 2025 Order or, in the alternative, certification of the October 23, 2025 Order for interlocutory review because the Court: (i) committed a manifest error of fact by concluding that "Meta's counsel instructed employees to alter, delete, or falsify research findings or data," Mot. at 1; (ii) committed a manifest error of law by expanding the crime-fraud exception to govern "other misconduct" beyond explicitly criminal or fraudulent conduct, s*ee id.* at 10; and (iii) committed a manifest error of law by applying the crime-fraud exception to "conventional legal advice" provided by Meta's counsel. *Id.* at 1. The Court will address each of Meta's arguments in turn.

### A.  <u>Alleged Error of Fact</u>

Meta concludes that the Court committed a reversable error of fact by finding that "attorneys' proposed edits to *summaries* or *descriptions* of research meant that attorneys were altering the underlying research findings and data." Mot. at 1 (Meta's emphasis). The Court disagrees.

In the October 23, 2025 Order, the Court found that: (i) "Documents 1 and 2 contain communications between Meta and researchers relaying advice from Meta's counsel that researchers should remove portions of research showing Meta's knowledge of teen users' developmental vulnerability because the research could be used by government enforcers investigating Meta," Order (Oct. 23, 2025) at 10; (ii) "Document 3 contains communications

between Meta's researchers about efforts of Meta's counsel to block or redesign research about teen mental health harms due to litigation risks in lawsuits against Meta," *id.*; (iii) "Document 4 contains communications between Meta researchers recounting legal advice and attorney work product related to a presentation about teens' legal exposure to harmful content on Meta's platforms that the researchers had planned to provide to Meta's executives," *id.*; and (iv) according to the Documents, "Meta's counsel explicitly advised Meta researchers to 'remove,' 'block,' 'button[] up,' 'limit,' and 'update' their research." *Id.* In so doing, the Court drew directly from the text of the Documents. *See* Mot. (Aug. 18, 2025) at Exs. A-1, A-2, A-4, A-7. Neither Meta, nor the District, challenge the veracity of the communications contained in the Documents. *See generally* R. Accordingly, the Court reiterates that the communications in the Documents would on their face "warrant a reasonable and prudent person in the belief that the attorney-client communications in question were in furtherance of an ongoing crime[,] [] fraud[, or misconduct]," thus establishing the requisite factual foundation for the Court's application of the crime-fraud exception. *See In Re Public Defender Serv.*, 831 A.2d at 904.

Meta nevertheless attempts to escape the Court's finding by delineating between the communications present on the four corners of the Documents and the alleged context in which said communications were made. *See* Mot. at 5. Indeed, Meta asserts that the Documents relate not to recommendations from Meta's counsel to "amend their research," but instead refer to advice of Meta's Counsel to edit "summaries" or "descriptions" of the same. *Id.* The Documents themselves, however, do not reference any supposed "summaries" or "descriptions" of research. *See generally* Mot. (Aug. 18, 2025) at Exs. A-1, A-2, A-4, A-7. Instead, the Documents explicitly refer to advice from Meta's counsel to "remove," "block," "button[]up," "limit," and "update" certain "research," "stud[ies]," "data," "quantifiable measurements," "[s]tats," "outcomes," and

"data points." *See generally id.* It would belie reason for the Court to accept Meta's assertion that the Documents evince Meta's researchers referring to advice they received from Meta's Counsel to alter "summaries" or "descriptions" of their research, instead of their underlying research and/or conclusions. Thus, the Court will not accept Meta's sleight of hand attempt to recharacterize the subject of the communications contained in the Documents.

Apparently recognizing this flaw, Meta subsequently provided the Court with declarations from the individuals who made the comments referenced in the Documents to attest to the context surrounding their communications. Mot. at Exs. 1-3. Meta appears to conclude that said declarations prove that the Court erred in finding that the Documents on their face establish probable cause for the application of the crime-fraud exception. *See generally id.* The Court, however, rejects Meta's conclusion for two reasons.

First, "it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Ali*, 309 F.R.D. at 81. Meta failed to provide the Court with the relevant declarations in its initial briefing on the District's Claw-Back Motion. Moreover, Meta offers no persuasive rationale as to why it was unable to previously file said declarations. *See generally* Mot.; Reply; Supp. Auth. Thus, in reviewing the Motion, the Court need not consider the declarations. *See Ali*, 309 F.R.D. at 81.

Second, the Court will not conduct a mini-trial upon review of a discovery motion. As the Court noted in its October 23, 2025 Order, "the District has established probable cause that Meta acted upon the advice of its counsel to engage in a crime, fraud, or misconduct. Whether Meta, in fact, acted upon the advice of its counsel to engage in a crime, fraud, or misconduct is not a

question before the Court." Order (Oct. 23, 2025) at 11 n.1. Thus, Meta's *ex post* declarations serve not to rebut the Court's prior probable cause finding but instead serve as conflicting evidence as to whether Meta, in fact, engaged in any crime, fraud, or other misconduct. The weighing of such evidence, from the Court's perspective, must be left to the jury. *See Jenkins v. District of Columbia*, 223 A.3d 884, 891 (D.C. 2020) (quoting *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878) ("Whether the circumstances alleged to show [probable cause] are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law.")). To the extent that Meta believes its declarations clarify or negate the communications contained in the Documents, the Court will not usurp the jury's role in weighing the declarations against the four corners of the Documents. Based on the foregoing, the Court, therefore, rejects Meta's argument that the Court committed a reversable error of fact.

**B.  Alleged Errors of Law**

  i.  Expansion the Crime-Fraud Exception

Meta concludes that the Court committed a reversable error of law by expanding the crime-fraud exception to govern "other misconduct" beyond explicitly criminal or fraudulent conduct. Mot. at 10. The Court rejects Meta's conclusion. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications…and privileged communications are traditionally deemed worthy of maximum legal protection." *In Re Public Defender Serv.*, 831 A.2d 890, 900 (D.C. 2003) (citations and quotation marks omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Wender v. United Servs Auto. Asso*, 434 A.2d 1372, 1373 (D.C. 1981) (internal citation omitted). The existence of the attorney-client

privilege encourages clients to make such unguarded and ill-advised suggestions to their lawyers. *In Re Public Defender Serv.*, 831 A.2d at 901. The lawyer is then obliged, in the interests of justice and the client's own long-term best interests, to urge the client, as forcefully and emphatically as necessary, to abandon illegal conduct or plans. *See id.* (citing D.C. R. Prof'l Conduct § 3.3 (b)). Indeed, "[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *Id.* (quoting *McCandless v. Great Atlantic & Pacific Tea Co.*, 697 F.2d 198, 201-02 (7th Cir. 1983) (attributed to Elihu Root)).

But the privilege should be narrowly construed to protect only the purposes which it serves. *Wender*, 434 A.2d at 1373-74. Courts have declined to apply the privilege where it would exceed, or defeat, its purpose. *See Adams v. Franklin*, 924 A.2d 993, 999 (D.C. 2007). "Thus the privilege applies only in the following circumstances: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence,  (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Jones v. United States*, 828 A.2d 169, 175 (D.C. 2003) (citation omitted). Moreover, the party asserting the attorney-client privilege has the burden of proving that communications are protected by that privilege. *In Re Lindsey*, 158 F.3d 1263, 1270 (D.C. 1998).

"By encouraging clients to be open with their attorneys, the privilege of confidentiality for attorney-client communications is intended to enhance the ability of lawyers to dissuade their clients from committing frauds." *In Re Public Defender Serv.*, 831 A.2d at 901. The privilege, therefore, evaporates when the attorney-client communication works to further a fraud instead of to prevent one. *Id.* "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law[; h]e must let the truth be told." *Clark v.*

*United States*, 289 U.S. 1, 15 (1933). The crime-fraud exception to the attorney-client privilege "assures that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a crime or fraud. *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citations and quotation marks omitted).

Accordingly, the crime-fraud exception is applicable where a communication "further[s] a crime, fraud or other misconduct." *United States v. White*, 887 F.2d 267, 271 (D.C. 1989). Indeed, the privilege evaporates where a client "'consults a lawyer for the purpose, later accomplished, of obtaining assistance to engage in a crime or fraud.'" *In Re Public Defender Serv.*, 831 A.2d at 909 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 82 (a)). "Under this formulation the privilege is lost once the client obtains from his lawyer the assistance he seeks to commit a crime or fraud. But the privilege is not lost where the lawyer refuses such assistance and the criminal or fraudulent plan is abandoned or stopped in its tracks." *Id.* "[T]he proponent must present evidence that the consultation [between attorney and client] furthered the client's improper purpose." *Id.* This burden "is not a heavy one. [The proponent] does not have to show that the intended crime or fraud was accomplished, only that the lawyer's advice or other services were misused." *Id.*

Meta argues that the Court's allusion to "other misconduct" constitutes an impermissible overexpansion of the crime-fraud exception. Mot. at 10. (internal citations omitted). Meta, however, misreads the Court's conclusion. In the October 23, 2025 Order, the Court emphasized that "Meta's counsel instead offered legal advice potentially clouding Meta's conduct and liability—*vis a vis* the mental health of teen users of its platforms." Order (Oct. 23, 2025) at 10. The Court thereafter asserted that "[b]y any interpretation, the communications in the Documents would, 'warrant a reasonable and prudent person in the belief that the attorney-client

communications in question were in furtherance of an ongoing or future crime[,] [] fraud[, or misconduct],' *i.e.*, obfuscating the adjudication of Meta's liability in the related multidistrict litigation." *Id.* at 10-11. Accordingly, the Court did not find that the communications in the Documents evinced some nebulous "other misconduct,"[1] thereby necessarily triggering the crime-fraud exception. Instead, the Court merely concluded that the communications in the Documents establish sufficient probable cause to show that Meta "engage[d] in a crime, fraud, or 'any other type of misconduct fundamentally inconsistent with the basic premises of the adversary system.'" *Id.* at 11.

Indeed, the Court need not have constrained its application of the crime-fraud exception to merely a finding of "other misconduct." The crime-fraud exception is applicable where a communication "further[s] a crime, fraud or other misconduct." *White*, 887 F.2d at 271. Courts in this jurisdiction have concluded that the crime-fraud exception applies to any "unlawful or fraudulent act." *In Re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). Notably, two counts undergird the District's Complaint against Meta. First, the District alleges that Meta engages in unfair trade practices, in violation of D.C. Code § 28-3904, by designing its social media platforms to include features it knows are psychologically and physically harmful to children. *See generally* Compl. Second, the District alleges that Meta engages in deceptive trade practices, in violation of D.C. Code §§ 28-3904(e), (f), and (f-1), by making false misrepresentations and material

---

[1] The District Court for the District of Columbia has opined that courts in this jurisdiction "have formulated the [crime-fraud] exception in broader terms." *Coleman v. American Broadcasting Cos.*, 106 F.R.D. 201, 207-08 (D.D.C. 1985). "Similarly, at least two District of Columbia Circuit Cases have formulated the exception in broader language. The Court in *In Re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982)…framed the exception as follows: '…crime, fraud, or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system.'" *Id.* "Later, in *In Re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) the court reaffirmed this broader language…characterizing the exception as pertaining to 'crime, fraud or other misconduct.'" *Id.* "Often these expansions of the crime fraud-exception have occurred in business-related areas…." *Id.* Importantly, the District of Columbia Court of Appeals ("DCCA") adopted this expansive reading in *In Re Public Defender Serv.*, 831 A.2d at 906 (quoting *White*, 887 F.2d at 271). The Court, therefore, is not persuaded that it *could not* have applied the crime-fraud exception to "other misconduct."

omissions that have a tendency to mislead social media users regarding the safety of Meta's social media platforms, *e.g.* Facebook and Instagram. *See generally id.*

The Court reiterates that, on their face, the communications in the Documents contain evidence that according to Meta's researchers, Meta's counsel explicitly advised them to "remove," "block," "button[] up," "limit," and "update" certain "research," "stud[ies]," "data," "quantifiable measurements," "[s]tats," "outcomes," and "data points." *See* Mot. (Aug. 18, 2025) at Exs. A-1, A-2, A-4, A-7. Taken as true, the communications in the Documents would provide direct evidence that Meta engaged in a consumer fraud in violation of the CPPA. *See* D.C. Code §§ 28-3904, 28-3904(e), (f), and (f-1). The Documents, therefore, on their face evince the exact "crime, fraud, or other misconduct" governed by the crime-fraud exception. *See In Re Public Defender Serv.*, 831 A.2d at 906 (quoting *White*, 887 F.2d at 271); *see also In Re Sealed Case*, 107 F.3d at 49. The Court will not permit Meta to employ the attorney-client privilege as a "sword or weapon of offense to enable persons to carry out contemplated crimes[, frauds, or other misconduct] against society." *See* 1 Kenneth S. Broun et al., McCormick on Evidence § 95 (8th ed. 2022) (quoting *Gebhardt v. United Rys. Co. of St. Louis*, 220 S.W. 677, 679 (Mo. 1920)). As such, the Court rejects Meta's argument that the Court committed a reversable error of law by impermissibly expanding the crime-fraud exception.

ii.  <u>Application of the Crime-Fraud Exception</u>

Meta argues that the Court committed a reversable error of law by applying the crime-fraud exception to "conventional legal advice" provided by Meta's counsel. Mot. at 1. The Court disagrees. Meta's argument appears to rest largely upon the Court's allusion to the related multidistrict litigation in the October 23, 2025 Order. *See id.* 8-10. Meta argues the Court "erred by holding that the ongoing federal [multidistrict litigation] somehow precludes Meta's counsel

from assessing and advising on future risk…lawyers can (and must) continually assess the legal risks associated with potential courses of conduct, even amid litigation. To the extent the Court held otherwise, the Order contains a 'manifest error of law.'" Mot. at 9-10 (internal citations omitted). Again, Meta misreads the Court's conclusion.

Specifically, the Court did not rest its conclusion upon Meta's involvement in the multidistrict litigation. Nor did the Court apply the crime-fraud exception to "conventional legal advice." Instead, in the October 23, 2025 Order, the Court "assume[d] *arguendo* that the Documents are generally privileged." Order (Oct. 23, 2025) at 5. The Court thereafter opined that "Meta's counsel provided the advice so referenced in the Documents while Meta's conduct—*vis a vis* the mental health of teen users of its platforms—was the subject of a related multidistrict litigation." *Id.* at 9-10. Thus, the Court concluded that "[b]y any interpretation, the communications in the Documents would 'warrant a reasonable and prudent person in the belief that the attorney-client communications in question were in furtherance of an ongoing or future crime[,] []fraud[, or misconduct]," *i.e.*, obfuscating the adjudication of Meta's liability in the related multidistrict litigation. Order (Oct. 23, 2025) at 10-11. By employing "*i.e.*," the Court referred to Meta's involvement in the related multidistrict litigation merely as an illustrative restatement, not a comprehensive citation, of the Court's conclusion. The Court, therefore, affirms that its conclusion was not merely based upon Meta's involvement in the related multidistrict litigation. Accordingly, the Court reiterates that taken as true, the communications in the Documents on their face evince probable cause that Meta engaged in a consumer fraud *vis a vis* the mental health if its teen users, and engaged in the exact "crime, fraud, or other misconduct" governed by the crime-fraud exception. As such, the Court rejects Meta's argument that the Court committed a reversable error of law by impermissibly applying the crime-fraud exception.

C. **Interlocutory Review**

In the alternative, Meta requests that the Court certify its October 23, 2025 Order for interlocutory review pursuant to D.C. Code 11-721(d). Mot. at 13. "'The jurisdiction of [the DCCA] to hear appeals from the Superior Court is defined by statute.'" *Rolinski v. Lewis*, 828 A.2d 739, 745 (D.C. 2003) (*en banc*). Moreover, the DCCA's jurisdiction is generally limited to "final orders and judgments" of the Superior Court, D.C. Code § 11-721(a)(1) (2001), *i.e.*, orders and judgments that terminate the litigation. *See id.* at 745-46. D.C. Code § 11-721(d) does, however, authorize the DCCA to permit an interlocutory appeal in a civil case where the trial judge certifies in writing that the challenged ruling "involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal…may materially advance the ultimate termination of the litigation or case." *Ford v. Chartone, Inc.*, 834 A.2d 875, 878 (D.C. 2003). "The preconditions for [§ 11-721(d)] review—'a controlling question of law,' prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and [trial] courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009).

Discovery orders, like the Court's October 23, 2025 Order, typically do not qualify as final orders and are not separately appealable. *Scott v. Jackson*, 596 A.2d 523, 527 (D.C. 1993). Indeed, the Supreme Court has largely refused to qualify denial of claims of attorney-client privilege as collateral orders subject to interlocutory review because "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege." *McNair Builders Inc. v. Taylor*, 3 A.3d 1132, 1140 (D.C. 2010) (quoting and citing *Mohawk Indus.*, 558 U.S. at 108).

13

Meta argues that the Court's October 23, 2025 Order warrants certification for interlocutory review because: (i) there is a "substantial ground for difference of opinion" on the Court's application of the crime-fraud exception beyond solely criminal or fraudulent acts, *id.* at 14; (ii) interlocutory review of the Court's October 23, 2025 Order would promote judicial economy and clarify the bounds of the attorney-client privilege and the crime-fraud exception in the District of Columbia, *id.*; (iii) the "serious nature" of the attorney-client privilege and the crime-fraud exception justify immediate review, *id.* at 15; and (iv) the Court's October 23, 2025 Order may affect Meta beyond this suit and, therefore, constitutes a particularly injurious or novel ruling. *Id.* The Court is not persuaded by Meta's arguments.

Primarily, Meta has failed to square its request with the Supreme Court's general refusal to qualify denial of claims of attorney-client privilege as collateral orders subject to interlocutory review.[2] *See generally* Mot.; *see also McNair Builders Inc.*, 3 A.3d at 1140 (quoting and citing *Mohawk Indus.*, 558 U.S. at 108). Further, Meta has not offered any persuasive evidence or argument that a postjudgment appeal would in this case fail to protect its rights and "ensure the vitality of the attorney-client privilege," *e.g.*, by permitting the DCCA to vacate the October 23, 2025 Order. *See Mohawk Indus.*, 558 U.S. at 109. Finally, the Court emphasizes that it merely ordered Meta to produce said Documents to the District; it neither determined whether the

---

[2] To avoid this issue, Meta appears to blend its D.C. Code § 11-721(d) argument by asserting that the unique combination of the Court's application of the crime-fraud exception, the status of the attorney-client privilege in this jurisdiction, and Meta's particular harm as a defendant in multiple cases warrants the Court's certification of its October 23, 2025 Order for interlocutory review. *See* Mot. at 13-15. In *Mohawk Indus.*, cited by the Court in this Order and by both Parties in their briefing, the Supreme Court alluded to the role of adverse crime-fraud exception rulings in the context of certification for interlocutory review. The Supreme Court opined, "[w]hether or not immediate collateral order appeals are available, clients and counsel must account for the possibility that they will later be required by law to disclose their communications for a variety of reasons—for example, because…their communications fell within the privilege's crime-fraud exception." *Mohawk Indus.*, 558 U.S. at 110. As noted *supra*, the Supreme Court nevertheless held that discovery orders adverse to a party's assertion of the attorney-client privilege do not qualify for interlocutory review. *Id.* at 114. Given that the Supreme Court explicitly pondered the role of the crime-fraud exception in refusing to qualify attorney-client privilege discovery orders for interlocutory review, the Court finds that *Mohawk Indus.* strongly rebuts Meta's argument.

communications contained within the Documents are admissible at trial, nor barred Meta from challenging or undermining their veracity at trial. *See generally* Order (Oct. 23, 2025). Thus, contrary to Meta's contention, it is not clear at this juncture that the Court's October 23, 2025 Order will be "particularly injurious" to Meta in this action or elsewhere. *See* Mot. at 15 (quoting *Mohawk Indus.*, 558 U.S. at 109). Based on the foregoing, the Court, therefore, concludes that its October 23, 2025 Order does not constitute an "exceptional case" warranting certification for interlocutory review. *See Medlantic Health Care Group, Inc. v. Cunningham*, 755 A,2d 1932, 1034 (D.C. 2000) ("review by certification is intended to be exceptional and not merely a means of accelerated review for what may appear to be a difficult issue."). As such, the Court denies Meta's request for certification of the October 23, 2025 Order for interlocutory review.

Accordingly, it is this 5th day of January, 2026, hereby,

**ORDERED** that Meta's Opposed Motion for Reconsideration of October 23, 2025 Order is **DENIED**; and it is further

**ORDERED** that the Court's October 23, 2025 Order Granting the District's Opposed Motion for an Order Finding No Privilege Over Clawed-Back Documents and for *In Camera* Review is **AFFIRMED**; and it is further

**ORDERED** that Meta is prohibited from invoking its privilege to claw back the following documents from the District: (i) METADCAG-008-01392318; (ii) METADCAG-008-01082201; (iii) METADCAG-010-00353309; and (iv) METADCAG-022-00471540 (collectively, the "Documents"); and it is further

**ORDERED** that Meta must produce the Documents to the District within 7 days of the entry of this Order, on or before January 12, 2026.

**IT IS SO ORDERED**.

**Judge Yvonne Williams**

Date: January 5, 2026

Copies to:

Demi A. Moore
Jimmy R. Rock
Kevin Vermillion
Patrick Ntchobo
Megan Delurey
*Counsel for the District*

John DeBoy
Lindsey Barnhart
Isaac D. Chaput
Amber M. Charles
David Haller
Gregory Halperin
Timothy C. Hester
Michael X. Imbroscio
Phyllis A. Jones
Christian J. Pistilli
Paul W. Schmidt
David N. Sneed
*Counsel for Meta*

16