EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT
ADDICTION/PERSONAL INJURY
PRODUCTS LIABILITY LITIGATION

Case No. 22-md-03047-YGR (PHK)

**ORDER RESOLVING DISPUTE RE:
FOUR META DOCUMENTS AND
CRIME FRAUD EXCEPTION TO
ATTORNEY-CLIENT PRIVILEGE**

Re: Dkts. 2474, 2627

## **INTRODUCTION**

This MDL has been referred to the undersigned for all discovery purposes.  *See* Dkt. 426.
Now pending before the Court is a joint letter brief regarding a dispute between Plaintiffs and
Meta concerning four documents Meta has redacted based on an assertion of the attorney-client
privilege with regard to certain text in those documents.  [Dkt. 2474].  Plaintiffs argue that these
materials are subject to the crime-fraud exception to the attorney-client privilege, on the grounds
that communications from counsel to a client to spoliate evidence are not properly shielded by the
privilege.  In support, Plaintiffs bring to this Court's attention a pair of recent rulings from the
Superior Court of the District of Columbia finding that these four documents are subject to the
crime-fraud exception and ordering their production.

The Court heard oral argument on the dispute on December 1, 2025.  *See* Dkt. 2524.  At
the hearing, the Parties confirmed that the dispute is ripe for this Court's resolution and requested
that the Court conduct an *in camera* review of the four disputed documents.  Following the
hearing, Meta submitted the documents to this Court for *in camera* review, along with three
declarations from Meta personnel regarding the documents which were previously submitted to

the D.C. Superior Court in connection with Meta's motion for reconsideration of that court's prior ruling. Following receipt of the documents for *in camera* review, on December 17, 2025, this Court directed Meta to submit a declaration answering specific factual questions regarding the documents. [Dkt. 2581]. Meta did so on December 18, 2025. [Dkt. 2594]. Plaintiffs thereafter sent a procedurally defective email to Court staff requesting leave to submit a declaration of their own. By Order dated December 26, 2025, the Court excused Plaintiffs' use of improper procedure to request relief and granted Plaintiffs leave to submit a non-argumentative declaration on factual matters in response to Meta's submission. [Dkt. 2609]. Plaintiffs submitted their declaration that same day. [Dkt. 2611]. The Parties thereafter submitted emails directly to Court staff arguing various substantive points in connection with these various post-hearing submissions. For completeness of the record and to cure the procedural irregularity, the Court ordered the Parties to file their emails on the docket. [Dkt. 2617]. Meta filed its email on December 31, 2025. [Dkt. 2620]. Plaintiffs filed their email on January 2, 2026. [Dkt. 2621].

On January 5, 2026, the Parties filed a joint notice of the D.C. Superior Court's Order denying Meta's motion for reconsideration of that court's previous ruling that the four Meta documents at issue are subject to the crime-fraud exception to the attorney-client privilege, denying Meta's motion for interlocutory review, and ordering production of the four documents by no later than January 12, 2026. [Dkt. 2622]. On January 6, 2026, the undersigned ordered the Parties to file a supplemental discovery letter brief to address the impact of the D.C. Superior Court's order, including the practical impact of that decision given that the subject four documents would appear to be imminently produced in that case. [Dkt. 2623]. The Parties filed their joint supplemental letter brief on January 9, 2026. [Dkt. 2627].

The Court deems the matter submitted. *See* Civil L.R. 7-1(b).

## **LEGAL STANDARDS**

A party seeking discovery bears the burden of establishing that its request satisfies the relevancy and proportionality requirements under Federal Rule of Civil Procedure 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting

party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery").  For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

Whether to conduct an *in camera* review of allegedly privileged documents is an issue of federal law and procedure.  *See Young v. Safeco Ins. Co. of Am.*, No. 20-CV01816-LK, 2022 WL 1061940, at *2 (W.D. Wash. Apr. 8, 2022) ("Federal law, which governs the procedural aspects of this case, rests the determination of when to conduct in camera review in the sound discretion of the court."); *Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHXDWL, 2020 WL 5846606, at *1 n.1 (D. Ariz. Oct. 1, 2020) ("Although state law determines the scope of [] privilege . . . in diversity actions, federal law governs here because the propriety of in camera review is a procedural matter.") (internal citation omitted).

The "practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection" is "well established in the federal courts."  *United States v. Zolin*, 491 U.S. 554, 569 (1989).  Indeed, this Court has previously conducted multiple *in camera* reviews of documents to resolve privilege disputes in this MDL without objection from any party.  *See, e.g.*, Dkts. 1547, 1620.  "*In camera* review does not destroy the privileged nature of the contested communications[.]"  *Zolin*, 491 U.S. at 569.

United States District Court
Northern District of California

*Zolin* sets forth the standard required to show that an *in camera* review is appropriate. First, the party seeking *in camera* review must make an initial showing of "a factual basis adequate to support a good faith belief by a reasonable person" that the materials at issue are being improperly withheld as privileged. *Id.* at 572. Although this "evidentiary threshold" is "relatively minimal," it "must first be met by the party requesting review before the court may exercise its discretion." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). The threshold showing "may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Zolin*, 491 U.S. at 575.

Once that threshold showing is made, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* at 572. "The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.*

Federal common law governs the scope of the attorney-client privilege for claims brought under federal question jurisdiction, whereas state law governs the scope of the privilege in diversity actions. Fed. R. Evid. 501. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (citation omitted).

## **ANALYSIS**

### I. *In Camera* Review

The Parties requested that the Court conduct an *in camera* review of the four documents at issue so as to evaluate whether the crime-fraud exception to the attorney-client privilege applies to those documents.

"Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to

United States District Court
Northern District of California

establish the claim that the crime-fraud exception applies." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). The threshold for *in camera* review is "considerably lower" than that for fully disclosing documents. *In re Grand Jury Investigation*, 974 F.2d at 1073. Once such threshold showing is made, the decision whether to engage in *in camera* review lies within the Court's discretion. *Chen*, 99 F.3d at 1502. The Court must determine whether *in camera* review is appropriate without considering the documents the Parties have already submitted to the Court. *In re Outlaw Lab'ys, LP Litig.*, No. 18CV840 GPC (BGS), 2020 WL 3268581, at *7 (S.D. Cal. Jun. 17, 2020).

Based on the Court's review of the relevant factors and in light of the totality of the circumstances presented here, the Court finds that Plaintiffs have made a sufficient threshold showing to warrant *in camera* review of the four documents at issue. First, the volume of documents is very small. Second, the fact that the documents were produced in redacted form indicates that the four documents were deemed of sufficient relevance to the case to be within the scope of relevant discovery. Third, as discussed below, the Court finds that the *in camera* review, together with other available evidence before the Court, will substantively aid the Court in resolving whether the crime-fraud exception does apply. *Zolin*, 491 U.S. at 572. Given that the standard for holding *in camera* review is not stringent and the lack of objection from any Party, the Court exercises its discretion to review the four documents *in camera*.

Accordingly, the Court proceeds to analyze the substance of the dispute here: whether the redacted portions of the four documents at issue are properly withheld as privileged. As discussed below, the Court has conducted the *in camera* review to reach a determination as to whether the crime-fraud exception to the attorney-client privilege applies in this case.

## A. The Crime Fraud Exception to the Attorney-Client Privilege

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). The privilege attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose,

1   (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

2   disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States*

3   *v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d at

4   1071 n.2).

5   While the attorney-client privilege is one of the oldest and most fundamental common-law

6   privileges, it is "not absolute." *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir.

7   2016). "The protection afforded by the attorney-client privilege does not extend to any

8   communication 'in furtherance of intended, or present, continuing illegality.'" *In re Grand Jury*

9   *Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (citation omitted). "Thus the crime-

10  fraud exception insures that the confidentiality enveloping the attorney-client relationship does not

11  encompass communications 'made for the purpose of getting advice for the commission of a fraud

12  or crime,' but the exception does not sweep so broadly that it discourages clients from 'mak[ing]

13  full disclosure to their attorneys of *past* wrongdoings, in order that the client may obtain the aid of

14  persons having knowledge of the law and skilled in its practice.'" *Id.* (quoting *Zolin*, 491 U.S. at

15  562-63) (internal citation omitted). "Under the crime-fraud exception, communications are not

16  privileged when the client 'consults an attorney for advice that will serve him in the commission

17  of a fraud' or crime." *In re Grand Jury Investigation*, 810 F.3d at 1113 (quoting *Clark v. United*

18  *States*, 289 U.S. 1, 15 (1933)).

19  Both federal common law and California state law recognize a crime-fraud exception to

20  the attorney-client privilege. *Clark*, 289 U.S. at 15; *State Farm Fire & Cas. Co. v. Super. Ct.*, 54

21  Cal. App. 4th 625, 634 (Cal. Ct. App. 1997).

22  Under federal law, a party seeking to vitiate the attorney-client privilege must satisfy a

23  two-part test. First, the challenging party must make a *prima facie* showing that "the client was

24  engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to

25  further the scheme." *In re Grand Jury Investigation*, 810 F.3d at 1113. Second, the challenging

26  party must demonstrate that the sought after communications are "sufficiently related to" and were

27  made "in furtherance of the intended, or present, continuing illegality." *Id.* (alterations omitted).

28  "The attorney need not have been aware that the client harbored an improper purpose. Because

United States District Court
Northern District of California

6

United States District Court
Northern District of California

both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009).

The Ninth Circuit has held that a party in a civil action must establish the crime-fraud exception by a preponderance of the evidence when challenging attorney-client privilege. *Id.* at 1094-95.

In California, the crime-fraud exception applies when lawyers assist their clients in making affirmative misrepresentations during business transactions, even if the lawyers are not shown to have made the affirmative misrepresentations themselves. *BP Alaska Exploration, Inc. v. Super. Ct.*, 199 Cal. App. 3d 1240, 1268-69 (Cal. Ct. App. 1988). In *BP Alaska*, a client hired counsel to perform an investigation, and then used the results of the investigation to send allegedly fraudulent letters to a business competitor in furtherance of a scheme to usurp a business venture that arose from confidential business information misappropriated from the competitor. The court concluded that the crime-fraud exception to the attorney-client privilege applied, because the client "sought its attorney's services to assist in the commission or planning of a fraud by making misrepresentations of fact aimed at" the competitor. *Id.* at 1269. The court did not require the attorneys to be involved in the fraud—it was enough that the "fraudulent scheme . . . evolved from [a] privileged communication." *Id.*

Here, Plaintiffs argue that the crime-fraud exception applies here, because the allegedly privileged communications at issue constituted advice from lawyers to Meta employees that they should alter or change language in certain documents and such advice resulted in and encouraged spoliation of evidence. [Dkt. 2474 at 13].

The specific crime-fraud at issue then is spoliation of evidence. "Spoliation occurs when one destroys or materially alters evidence or fails to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012) (finding spoliation of evidence after remand where Rambus engaged in "shred days" pursuant to advice of counsel).

This MDL was commenced on October 6, 2022. [Dkt. 1]. All four disputed documents at

issue here postdate October 6, 2022. There is no dispute that all these documents were therefore

within the time frame for the litigation hold for preservation of evidence which Meta undertook in

connection with this litigation. There is, accordingly, no dispute that these four documents are

chronologically within the time frame for relevance for purposes of discovery applicable to this

MDL, and thus, no dispute that the documents have at least evidentiary value as discovery

materials in this case.

Under applicable ethical rules, a California lawyer cannot counsel a client to unlawfully

alter evidence. *See* Cal. Prof. Conduct Rule 3.4(a) ("A lawyer shall not: (a) . . . unlawfully alter,

destroy or conceal a document or other material having potential evidentiary value. A lawyer shall

not counsel or assist another person to do any such act[.]"). California Rule of Professional

Conduct 3.4(a) is based on the identically worded ABA Model Rule of Professional Conduct

3.4(a). Thus, the same ethical obligation applies to any lawyer who is a member of any bar which

has adopted this Model Rule. As the State Bar of California's comment to California Rule 3.4

provides,

> It is a criminal offense to destroy material for purpose of impairing its
> availability in a pending proceeding or one whose commencement
> can be foreseen. (See, e.g., Pen. Code, § 135; 18 U.S.C. §§ 1501-
> 1520.) Falsifying evidence is also generally a criminal offense. (See,
> e.g., Pen. Code, § 132; 18 U.S.C. § 1519.) Applicable law may permit
> a lawyer to take temporary possession of physical evidence of client
> crimes for the purpose of conducting a limited examination that will
> not alter or destroy material characteristics of the evidence.

Because Meta is a California-based corporation and is engaged in this litigation here in this

Court, California Rule 3.4(a) applies to all Meta lawyers who are members of the California bar

(or have been admitted *pro hac vice*), including presumably all in-house Meta lawyers practicing

law in California or with a California bar membership (or who are Registered In-House Counsel

under the California bar). Based on the record submitted, the Court finds that this rule of

professional conduct (or any counterpart rule governing the conduct of a lawyer who is a member

of the bar of a different state) applies to the conduct and communications at issue here.

Under California Rule 3.4(a), a lawyer cannot counsel a client to destroy or alter evidence.

Destroying evidence eliminates such evidence from possible discovery entirely and is sanctionable

1   conduct.  *See SK hynix Inc. v. Rambus Inc*., No. C-00-20905 RMW, 2013 WL 1915865, at *22

2   (N.D. Cal. May 8, 2013) (imposing $250,000,000 sanction on Rambus for spoliation of evidence

3   during "shred day").  Irreversibly altering evidence, such as in a way that overwrites or

4   irretrievably replaces the original evidence, also eliminates the original text or content of that

5   evidence from possible discovery entirely.

6          Accordingly, it should be self-evident that when a lawyer advises a client to destroy

7   evidence completely or to irreparably modify that evidence (where litigation is reasonably

8   foreseeable at the time, or worse, ongoing), communications regarding that advice could be

9   subject to the crime-fraud exception because such advice would run afoul of the lawyer's duties

10  under the rules of professional conduct and could implicate criminal statutes concerning

11  fabricating or destroying evidence.  *See, e.g.*, Cal. Penal Code § 135 ("A person who, knowing

12  that any book, paper, record, instrument in writing, digital image, video recording owned by

13  another, or other matter or thing, is about to be produced in evidence upon a trial, inquiry, or

14  investigation, authorized by law, willfully destroys, erases, or conceals the same, with the intent to

15  prevent it or its content from being produced, is guilty of a misdemeanor."); *id.* § 31 (criminal

16  liability for aiding and abetting a misdemeanor); *id.* § 659 (counseling the commission of a

17  misdemeanor by another is itself a misdemeanor).

18         Courts confronted with lawyers involved in advising spoliation of evidence have

19  concluded the such attorney-client communications are not shielded by the privilege due to the

20  crime-fraud doctrine.  *See, e.g.*, *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280, 289-90 (E.D.

21  Va. 2004) ("Communications between lawyer and client respecting spoliation of evidence,

22  however, is fundamentally inconsistent with the asserted principles behind the recognition of the

23  attorney-client privilege, namely, 'observance of law' and the 'administration of justice.'  Indeed,

24  by intentionally removing relevant evidence from litigation, spoliation directly undermines the

25  administration of justice.  Moreover, an attorney who counsels a client about the spoliation of

26  evidence is not advancing the observance of the law, but rather counseling misconduct. Thus,

27  there is no logical reason to extend the protection of the attorney-client privilege to

28  communications undertaken in order to further spoliation.") (internal citations omitted); *Micron*

United States District Court
Northern District of California

9

*Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1329-31 (Fed. Cir. 2011) (affirming piercing of attorney-client privilege under crime-fraud exception where communications from lawyers advised destruction of evidence).

With these legal standards in mind, the Court analyzes each of the four disputed documents (and in particular the redacted portions thereof) to determine whether the communications therein are subject to the crime-fraud exception to the attorney-client privilege due to spoliation.

**Documents 1 and 2**

The first document at issue was produced in redacted form during discovery in this MDL with Bates number META3047MDL-047-007006694 (the same document was produced in the D.C. Superior Court action bearing Bates number METADCG-008-01392318). For ease of reference, the D.C. Superior Court has referred to this document as "Document 1" and the Parties have followed that nomenclature. For similar reasons (and to avoid confusion), the undersigned will also refer to this document as Document 1 (and follow the same naming convention for the other three documents, discussed below).

Document 1 is a printout of a series (or thread) of electronic messages between two Meta employees (with their titles at the time provided by Meta)— ███████ (Senior Researcher, Central Social Impact) and ███████ (Research Manager). The messages are all dated November 22, 2022. Out of this series of electronic messages, only one particular message authored by Ms. ███████ was redacted in its entirety on grounds of attorney-client privilege. The remainder of Document 1 was produced unredacted. Neither Ms. ███████ nor Mr. ███████ are, or were at the relevant time, attorneys.

Document 2 was also produced in redacted form during discovery in this MDL with Bates number META3047MDL-047-00396577 (the same document was produced in the D.C. Superior Court action bearing Bates number METADCG-008-010822021). Document 2 is a printout of a series (or thread) of electronic messages between Ms. ███████ and another Meta employee, ███████ ███████ (User Experience Researcher), also dated November 22, 2022. Out of this series of electronic messages, only one particular message authored by Ms. ███████ was redacted in its entirety on grounds of attorney-client privilege. The remainder of Document 2 was produced

1    unredacted.  Neither Ms. ████ nor Ms. ████ are, or were at the relevant time, attorneys.

2    The text redacted in Document 1 is identical to the text redacted in Document 2, and for

3    that reason, the analysis herein applies equally to both.  Based on the Court's *in camera* review of

4    the redacted text in the context of each disputed document, the fact that other text in Documents 1

5    and 2 differs does not materially impact the analysis as to the redacted text in each.

6    In connection with the *in camera* review of these documents, Meta also submitted a

7    declaration from Ms. ████ which was apparently submitted to the D.C. Superior Court in

8    connection with Meta's then-pending motion for reconsideration of the crime-fraud issue being

9    litigated in that court.  Ms. ████ attests that, in the redacted portion under dispute, she

10    "described legal guidance that was relayed to [her] by an attorney working in-house at Meta."

11    ████ Decl. ¶ 3.  Based on the Court's *in camera* review and Meta's declaration submitted in

12    response to the Court's December 17, 2025 Order, the communication at issue originated from

13    Meta's outside counsel, and was (according to Ms. ████) "relayed" to her by an in-house

14    lawyer.

15    Without detailing the substance of the communication, in general, the communication at

16    issue refers to "possible adjustments to language" in a research proposal for the Meta & Youth

17    Social Emotional Trends ("MYST") study under contemplation at that time.  *Id.*  Ms. ████

18    attests that "[a]lthough that language was discussed with Meta attorneys, it was not ultimately

19    modified." *Id.*

20    Meta has confirmed through the declaration of its counsel that seven versions of the MYST

21    study proposal document have been produced in discovery in this case.  [Dkt. 2594-1 at 9-10 &

22    n.6 (identifying the seven MYST study proposal documents produced with Bates Numbers:

23    META3047MDL-294-00014165; META3047MDL-044-00022506; META3047MDL-044-

24    00022521; META3047MDL-031-00115619; META3047MDL-034-00135618; META3047MDL-

25    072-00327080; META3047MDL-294-00099937)].  Meta confirms that "[p]rior versions of

26    MYST study proposal documents, including versions that predate the lawyer's advice, have been

27    retained, but have not been produced[.]"  *Id.* at 10.

28    Based on the record submitted, there was no destruction of documents at issue here.  At

1    best, the record demonstrates that there was discussion about "possible" alteration of part of the

2    MYST study proposal. Ms. ██████'s statement that "ultimately" the language was not modified

3    implies that, in the process of editing/drafting before the MYST study was finalized, the language

4    underwent modifications which "ultimately" were not implemented. The issue then reduces to

5    whether the crime-fraud exception applies to communications regarding proposed or possible

6    modifications to the underlying MYST study proposal, *i.e.* whether such communications qualify

7    as some form of advising improper alteration of evidence.

8         When faced with a very similar issue, at least one other court has held that, where the

9    various versions of the underlying document (both predating and postdating the attorney

10   communication) are produced in discovery, there is insufficient cause to pierce the privilege based

11   on the crime-fraud exception. *See Tessera, Inc. v Micron Tech., Inc.*, No. 2:05cv94, 2006 WL

12   8441639, at *2 (E.D. Tex. June 23, 2006). In that patent infringement case, Tessera asserted that

13   certain Micron semiconductor chip products infringed Tessera's patent claims. During discovery,

14   Tessera argued that Micron altered a technical paper on Micron products (the original version is

15   referred to as the "Paper") in order to avoid language that would allegedly support Tessera's

16   infringement theories. *Id.* at *1. Specifically, Tessera argued that "Micron attorneys advised

17   some of its engineers to 'doctor a technical paper on semiconductor packaging reliability issues'"

18   and allegedly conveyed advice to alter that Paper to remove certain references to a technical

19   feature of the Micron product. *Id.* The textual references at issue in the technical paper "were

20   taken out of the final version ('the Revised Paper') following an email exchange wherein the

21   authors were supposedly advised to remove the references in light of this litigation. Micron

22   asserted privilege over the emails arguing that they contain[ed] legal advice, but Tessera argue[d]

23   that because altering the Paper amounts to spoliation of evidence, the related emails must be

24   produced under the crime-fraud exception to the attorney-client privilege." *Id.* In *Tessera*,

25   Micron produced both the original version of the Paper as well as the final Revised Paper in

26   discovery—the dispute thus centered on whether the emails from the lawyers regarding the

27   changes to that Paper should be produced or not. *Id.* at *2.

28        It is self-evident that the factual scenario in *Tessera* is remarkably similar, if not identical,

United States District Court
Northern District of California

to the situation here: Meta argues that the redacted text from the chat thread at issue is privileged, but Plaintiffs argue that the crime-fraud exception applies because the chat message advises a Meta researcher to undertake what amounts to spoliation of evidence. The *Tessera* opinion resolved the crime-fraud dispute as follows:

> Tessera has both the Paper and the Revised Paper. It may argue whatever it pleases concerning the motivation behind the alterations, but the mere fact that the Paper was altered does not automatically transform those changes into spoliation, which requires that Micron engaged in the destruction or significant and meaningful alteration of a document or instrument. Neither destruction nor alteration occurred in this case, therefore no spoliation occurred.

*Id.* at 2 (citation omitted).

As noted, here, Meta has confirmed that seven versions of the MYST study have been produced in discovery. Meta has confirmed that previous versions (prior to the attorney advice) of the MYST study proposal have been found and retained in its document repositories (although not produced in discovery previously). Based on this record, there has been no destruction of evidence, because the versions of the MYST study proposal which both predate and postdate the attorney advice here still exist. And there has been no irreversible or unreviewable alteration of evidence, because the pre- and post- advice versions exist and thus any changes are discoverable from simple comparison of the text of the various versions.

However, unlike in *Tessera* where both the Paper and the Revised Paper were produced, here, Meta has not produced in discovery the previous versions of the MYST study proposal (for various reasons Meta asserts based on the ESI protocol and Meta's objections to Plaintiffs' requests for production). This is straightforward to remedy and bring the dispute over Documents 1 and 2 in line with the reasoning of *Tessera*.

Accordingly, for all the reasons stated herein, the Court **ORDERS** Meta to perform a diligent and reasonable search for and then produce all non-duplicative versions of the MYST study proposal which predate November 22, 2022, including those versions Meta has already confirmed it has retained but not previously produced. These documents **SHALL** be produced on or before **January 23, 2026**, and to avoid delay Meta **SHALL** produce them on a rolling basis as they are found and processed for production.

13

United States District Court
Northern District of California

1    With these previous versions of the MYST study proposal in hand, as well as the already-

2    produced later versions of that study proposal, Plaintiffs will be able to determine readily what

3    changes were made to the language of that document over time and make use of those facts in

4    arguing the merits of this case however they see fit.  Given that the undersigned is solely resolving

5    a discovery dispute, clearly nothing herein addresses or stops any Party from seeking guidance or

6    relief from Judge Gonzalez Rogers regarding any issues concerning trial or other pre-trial related

7    issues regarding these documents (including but not limited to scope of arguments regarding

8    motivations for any changes, what if any inferences (negative or otherwise) would be permissible,

9    any applicable jury instructions, or any other issues not expressly resolved by this Order).

10   Because Ms. ███████ states that "ultimately" the language was not modified and because

11   the various versions of the MYST study proposal were not destroyed, Plaintiffs have not made a

12   sufficient showing that the crime-fraud exception to the attorney-client privilege applies to the

13   redacted portions of Documents 1 and 2.  As the *Tessera* opinion concluded, the production of the

14   various edited versions of the underlying document provides the party seeking the discovery the

15   underlying factual material from which that party can make arguments as to the merits of the case,

16   without the need to pierce the privilege.

17   Accordingly, the Court **GRANTS-IN-PART** Meta's motion for a protective order as to the

18   redacted portions of Documents 1 and 2, subject to Meta's compliance with the directives above to

19   produce the various versions of the MYST study proposal and to timely serve a privilege log as

20   discussed below.

21   **Document 3**

22   The next document at issue was produced in redacted form during discovery in this MDL

23   with Bates number META3047MDL-050-00353504 (the same document was produced in the

24   D.C. Superior Court action bearing Bates number METADCAG-010-003353309).  For ease of

25   reference, the D.C. Superior Court and the Parties have referred to this document as "Document 3"

26   and for reasons discussed above the undersigned will also refer to this document as Document 3.

27   Document 3 is a printout of a series (or thread) of electronic messages between several

28   Meta employees (whose titles at the time are provided)—███████████ (CSI - Youth and Well-

being Shared Research Team); ███████████████ (Director, Research, Central Social Impact

Research Team); ████████████ (Research Director, Social Impact Products RES Team);

and Ms. █████ (discussed in connection with Documents 1 and 2 above). The chat messages in

Document 3 are all dated March 10, 2023. Out of this series of electronic chat messages, one

message authored by ████████ and one message authored by Ms. █████ were each redacted

on grounds of attorney-client privilege. The remainder of Document 3 was produced unredacted.

None of the authors or recipients on this chat thread are, or were at the relevant time, attorneys.

In connection with the *in camera* review of these documents, Meta also submitted a

declaration from Ms. ████████ which was apparently submitted to the D.C. Superior Court

in connection with Meta's then-pending motion for reconsideration in that court. Ms. ████

████ attests that, in one redacted portion of Document 3 which she authored, she "quoted an

email from a colleague that described communications with Meta lawyers about a proposed study

– the Meta & Youth Social Emotional Trends study ('MYST')[.]" ████████ Decl. ¶ 3. Meta

submitted no declaration addressing the redacted portion of Document 3 authored by Ms. ████.

After *in camera* review, the Court finds that the following two redacted chat messages in

Document 3 do not mention, discuss, or even relate to any communication from anyone (including

a lawyer) to destroy, alter, or change any evidence: (1) the redacted chat message authored by Ms.

████ dated March 10, 2023 at time stamp 09:41:37 PST; and (2) the redacted chat message

immediately following authored by Ms. ████████ on the same date with time stamp

10:12:52 PST. Neither of these chat messages relays, communicates, or even summarizes the

substance of any attorney-client communications at all. Rather, in general, these two chat

messages are messages between Meta business personnel discussing a document and a work plan

for these personnel to interact with Meta's lawyers. At best, these are communications between

lay persons regarding preparations or planning for communicating with lawyers, not actual

attorney-client communications (whether relayed or not) in and of themselves. There is simply no

discussion in these two chat messages regarding editing, altering, changing, modifying,

destroying, or in any way spoliating any evidence. For these reasons and based on this *in camera*

review, the Court **FINDS** that these portions of Document 3 are not subject to the crime-fraud

1    exception to the attorney-client privilege.

2         The only remaining redacted portion of Document 3 is the March 1, 2023 chat message

3    (with time stamp 09:24:30 PST) authored by Ms. ████████ discussed in her declaration.  As

4    Ms. ████████ avers, the redacted portion of this chat message quotes from an email sent by

5    Emily Dalton Smith (VP of Product Management) to Nick Clegg (President, Global Affairs).  Like

6    Ms. ████████, neither of these Meta personnel are lawyers.  The email at issue also refers to

7    Jennifer Newstead, Meta's Chief Legal Officer, although the chat is unclear whether Ms.

8    Newstead was herself a recipient of the email.  Without detailing the substance of the

9    communication, in general, the quoted email concerns issues under discussion between Meta

10   business personnel and Meta's legal department regarding the MYST study.  Ms. Smith indicates

11   that she "will bring two issues" to Mr. Clegg for his input in the following week concerning Ms.

12   Smith's group's need for "durable, categorical legal guidance that allows us to operate freely,

13   without treating each study as a unique decision."

14        Unlike Documents, 1, 2, and 4, this redacted portion of Document 3 does not refer to any

15   specific other documents or evidence.  As counsel for Meta has represented to the Court under

16   oath, "the conversation in Document 3 did not relate to legal advice given on a specific document,

17   but rather to the entire MYST study, which is a complex, longitudinal study involving multiple

18   waves of data collection, with analyses still ongoing."  [Dkt. 2594-1 at 4].  The MYST study (not

19   limited to just its proposal document, referenced in Documents 1 and 2) involved multiple

20   documents.  *Id.*  As part of its submission for *in camera* review, Meta also submitted the

21   declaration of Sam Yang, Forensic Technology Lead on the eDiscovery and Information

22   Governance team at Meta.  [Dkt. 2594-2].  Meta relies on that declaration for its position that

23   searching for and producing prior versions of MYST study documents (given the number of such

24   documents and the potential number of prior versions) would be unduly burdensome.  [Dkt. 2594-

25   1 at 6].

26        Meta has indicated that at least some of the MYST study documents which have been

27   produced are or were collaborative documents, such as Google documents.  *Id.* at 4-6.  Meta has

28   confirmed that prior versions of those collaborative Google documents would have been retained

United States District Court
Northern District of California

16

and are accessible at least via manual recovery using the Google Vault tool. *Id.*; *see also* Dkt. 2594-2 at ¶¶ 3-6. Those prior versions of the MYST study collaborative documents have not been produced. Meta asserts that Google Vault itself does not allow for searching for prior versions of documents using a date range, and instead requires searching for versions by a specified date. [Dkt. 2594-2 at ¶¶ 5-6].

Meta's declarant, Mr. Yang, does not discuss or address the fact that there exist a number of eDiscovery vendors and third-party software tools available for interfacing with Google documents and Google Vault, ingesting that data, and then providing more robust search capabilities using parameters such as date ranges which are beyond those capabilities built-into Google Vault itself. Given the number of complex litigations Meta has been involved in in recent years (including this MDL) and the sophistication of eDiscovery tools and vendors, the Court finds Meta's declarant's reliance on the search limitations of Google Vault alone to be unpersuasive. While there is always some burden involved in searching for and producing versions of documents, the question for this Court is whether the burden amounts to undue burden. Meta's argument that it would be *unduly* burdensome to search for and produce prior versions of these collaborative MYST study documents is not sufficiently substantiated.

Based on the record submitted, there was no destruction of documents at issue here. At best, the record indicates that there was discussion with Meta's lawyers about redesigning the MYST study. As with Documents 1 and 2, the issue then reduces to whether the crime-fraud exception applies to communications regarding proposed and implemented modifications to the MYST study documents, *i.e.* whether such communications qualify as improperly advising alteration of evidence.

The discussion above regarding the analogous *Tessera* opinion and Documents 1 and 2 guides the resolution of the dispute as to Document 3. Meta has confirmed that collaborative documents (*i.e.*, Google documents) for the MYST study were produced in discovery. Meta has confirmed that previous versions (prior to the attorney advice) of these collaborative documents are found within Google Vault (although those versions have not been produced in discovery previously). Based on this record, there has been no destruction of evidence, because the versions

17

United States District Court
Northern District of California

of the MYST study documents which both predate and postdate the attorney advice here still exist. And there has been no irreversible or unreviewable alteration of evidence, because the pre- and post- advice versions exist, and thus, any changes are discoverable from simple comparison of the text of the various versions.

However, unlike in *Tessera* where both the original Paper and the Revised Paper were produced, here Meta has not produced in discovery the previous versions of the collaborative MYST study documents (for various reasons Meta asserts based on undue burden, the ESI protocol, and Meta's objections to Plaintiffs' requests for production).  As discussed above, the Court **OVERRULES** Meta's undue burden objection.  This is straightforward to remedy and bring the dispute over Document 3 in line with the reasoning of *Tessera*.  Accordingly, for all the reasons stated herein, the Court **ORDERS** Meta to perform a diligent and reasonable search for and then to produce all non-duplicative prior versions of all MYST study documents which are Google documents previously produced, where such prior versions pre-date March 10, 2023, including those versions Meta has already confirmed it has retained in Google Vault but not previously produced.  Because the volume of these documents is higher than the volume in connection with Documents 1, 2 and 4, the documents ordered with regard to Document 3 **SHALL** be produced on or before **January 30, 2026**, and to avoid delay Meta **SHALL** produce them on a rolling basis as they are found and processed for production.  For avoidance of doubt, this Order only applies to Meta's Google documents concerning the MYST study, and does not require searching for or producing prior MYST study documents which are not collaborative Google documents.

With these previous versions of the MYST study documents in hand, as well as the already-produced later version of those same Google documents, Plaintiffs will be able to determine readily what changes were made to the language of those documents over time and make use of those facts in arguing the merits of this case however they see fit.  Given that the undersigned is solely resolving a discovery dispute, clearly nothing herein addresses or stops any Party from seeking guidance or relief from Judge Gonzalez Rogers regarding any issues concerning trial or other pre-trial related issues regarding these documents (including but not

limited to scope of arguments regarding motivations for any changes, what if any inferences (negative or otherwise) would be permissible, any applicable jury instructions, or any other issues not expressly resolved by this Order).

Because the various versions of the Google documents which are MYST study documents were not destroyed, Plaintiffs have not made a sufficient showing that the crime-fraud exception to the attorney-client privilege applies to the redacted portion of Document 3 which quotes the email from Ms. Smith. As the *Tessera* opinion concluded, the production of the various edited versions of the underlying documents provides the party seeking the discovery the underlying factual material from which that party can make arguments as to the merits of the case, without the need to pierce the privilege.

Accordingly, the Court **GRANTS-IN-PART** Meta's motion for a protective order as to this redacted portions of Document 3, subject to Meta's compliance with the directives above to produce the various versions of the Google documents and to timely serve a privilege log as discussed below. However, as discussed above, the Court **GRANTS** Meta's motion for a protective order regarding the two chat messages in Document 3 authored by Ms. ███ and Ms. ███████ which the Court concludes are not at all subject to the crime-fraud exception, and correspondingly, **DENIES** Plaintiffs' request that the Court find that those two chat messages in particular are subject to the crime-fraud exception and not privileged.

**Document 4**

The final document at issue was produced in redacted form during discovery in this MDL with Bates number META3047MDL-111-00468706 (the same document was produced in the D.C. Superior Court action bearing Bates number METADCG-022-00471540). For ease of reference, the D.C. Superior Court has referred to this document as "Document 4" and for reasons discussed above the undersigned will also refer to this document as Document 4.

Document 4 is a printout of a series (or thread) of electronic messages between three Meta employees—██████████ (Project Manager), ██████████ (Product Design Director), and ██████████ (Product Manager), dated July 7, 2023. Out of this series of electronic chat messages, several messages authored by Ms. ███ and by Ms. ███ were redacted, either in

whole or in part, on grounds of attorney-client privilege. The remainder of Document 4 was produced unredacted. Neither Ms. █████, nor Ms. █████, nor Ms. ███ are, or were at the relevant time, attorneys.

In connection with the *in camera* review of these documents, Meta also submitted a declaration from █████, Director and Associate General Counsel for Meta (who is also Registered In-House Counsel with the State of California). This declaration from Ms. ███ was apparently submitted to the D.C. Superior Court in connection with Meta's then-pending motion for reconsideration in that court. Ms. ███ attests that, in the redacted portions of Document 4, the "chat exchange refers to legal advice I [Ms. ███] provided regarding language and other content to be used in an internal slide deck." ███ Decl. ¶ 3. Ms. ███ is not the author or recipient of any of the redacted chat messages.

The Court notes that the declaration of Ms. ███ is of limited utility in resolving this dispute. For the crime-fraud exception, it is the client's knowledge and state of mind that are relevant, and thus, the attorney's intent is not dispositive of the crime-fraud issue. *In re Grand Jury Investigation*, 628 F. App'x 482, 483 (9th Cir. Jan. 14, 2016); *see also ABN Corp. v. Groupe Pelm Int'l Corp.,* No. 23-cv-00004-RFL, 2024 WL 6884707, at *4 (N.D. Cal. June 5, 2024) ("The [crime-fraud] exception applies based on the client's intent, not the attorney's"). Ms. ███ 's after-the-fact statements as to what she intended to convey by her communications eighteen months ago (as referenced in the chat thread) are neither particularly helpful nor compelling evidence dispositive of the dispute. Further, the Court finds unpersuasive her declaration's attempt to interpret or construe certain words used in the chat thread (which again, Ms. ███ neither wrote nor received). The whole point of the agreed-upon *in camera* review of the documents was for the Court to see precisely what was said by Ms. █████ and Ms. █████, who both wrote in the vernacular (as is common in electronic chat messages), and thus, whose statements are readily understandable on their face without the need for a declaration providing interpretations of terminology (unlike, for example, a patent claim construction exercise).

Without detailing the substance of the communication, in general, the chat messages at issue refer to multiple alterations suggested by Meta's counsel to text in a set of slides to be used

1    for a presentation which Ms. ███ and Ms. ███ were working on at the time. ███ Decl. ¶ 3.

2    The chat thread at some points mentions Ms. ███ by name, as well as ███████████,

3    Director and Associate General Counsel, Product (Instagram).  [Dkt. 2594-1 at 8].  There is also

4    mention in this thread that, at one point, a total of five lawyers have been "added" to the slide deck

5    at issue.  *Id.*  However, not every single redacted chat message refers to a Meta attorney.  Unlike

6    the study proposal discussed in Documents 1 and 2 above, there is no averment here that the slides

7    discussed in Document 4 remained unchanged ("ultimately" or otherwise).  There is no real

8    dispute that the slide deck discussed by Ms. ███ and Ms. ███ changed over time.

9          Meta has confirmed through the declaration of its counsel that Meta produced the

10   referenced slide deck (with redactions) bearing Bates No. META3047MDL-299-00000001.  [Dkt.

11   2594-1 at 7 n.3].  Meta's counsel also avers that Meta produced another document,

12   META3047MDL-111-00158033, containing slides "with significant overlapping content" to the

13   slide deck referenced in META3047MDL-111-00468706.  *Id.*  Meta confirms that "[p]rior

14   versions of the slides, including the versions that predate the lawyer's advice, have been retained,

15   but have not been produced[.]"  *Id.* at 7.

16         Based on the record submitted, there was no destruction of documents at issue here.  At

17   best, the record demonstrates that there was discussion about alterations to the language in the

18   underlying slide deck discussed in the chat messages of Document 4.  As with Documents 1 and 2,

19   the issue then reduces to whether the crime-fraud exception applies to communications regarding

20   proposed and implemented modifications to the underlying slide deck, *i.e.* whether such

21   communications qualify as improperly advising alteration of evidence.

22         The discussion above regarding the analogous *Tessera* opinion and Documents 1 and 2

23   guides the resolution of the dispute as to Document 4.  Meta has confirmed that the underlying

24   slide deck was produced in discovery.  Meta has confirmed that previous versions (prior to the

25   attorney advice) of the slide deck have been found and retained in its document repositories

26   (although not produced in discovery previously).  Based on this record, there has been no

27   destruction of evidence, because the versions of the slide deck which both predate and postdate the

28   attorney advice here still exist.  And there has been no irreversible or unreviewable alteration of

United States District Court
Northern District of California

21

evidence, because the pre- and post- advice versions exist, and thus, any changes are discoverable from simple comparison of the text of the various versions.

However, unlike in *Tessera* where both the Paper and the Revised Paper were produced, here, Meta has not produced in discovery the previous versions of the slide deck (for various reasons Meta asserts based on the ESI protocol and Meta's objections to Plaintiffs' requests for production). This is straightforward to remedy and bring the dispute over Document 4 in line with the reasoning of *Tessera*.

Accordingly, for all the reasons stated herein, the Court **ORDERS** Meta to perform a diligent and reasonable search for and then produce all non-duplicative versions of the slide deck which predate July 7, 2023, including those versions Meta has already confirmed it has retained but not previously produced. These documents **SHALL** be produced on or before **January 23, 2026**, and to avoid delay Meta **SHALL** produce them on a rolling basis as they are found and processed for production.

With these previous versions of the slide deck in hand, as well as the already-produced later version of that slide deck, Plaintiffs will be able to determine readily what changes were made to the language of that document over time and make use of those facts in arguing the merits of this case however they see fit. Given that the undersigned is solely resolving a discovery dispute, clearly nothing herein addresses or stops any Party from seeking guidance or relief from Judge Gonzalez Rogers regarding any issues concerning trial or other pre-trial related issues regarding these documents (including but not limited to scope of arguments regarding motivations for any changes, what if any inferences (negative or otherwise) would be permissible, any applicable jury instructions, or any other issues not expressly resolved by this Order).

Because the various versions of the slide deck were not destroyed, Plaintiffs have not made a sufficient showing that the crime-fraud exception to the attorney-client privilege applies to the redacted portions of Document 4. As the *Tessera* opinion concluded, the production of the various edited versions of the underlying document provides the party seeking the discovery the underlying factual material from which that party can make arguments as to the merits of the case, without the need to pierce the privilege.

Accordingly, the Court **GRANTS-IN-PART** Meta's motion for a protective order as to the redacted portions of Document 4, subject to Meta's compliance with the directives above to produce the various versions of the slide deck and timely serve a privilege log as discussed below.

**<u>Conclusion as to Privilege and Crime-Fraud</u>**

The Court is cognizant that its conclusions as to the crime-fraud issues here differ from those of the D.C. Superior Court. As the D.C. Superior Court's order denying Meta's motion for reconsideration makes clear, the D.C. Superior Court was applying D.C. law on the issue of crime-fraud and not the controlling Ninth Circuit standards applicable here. The precise formulation of the crime-fraud standard under D.C. law is not identical to the formulation of the standard under Ninth Circuit or California law (discussed above). To the extent the conclusions of law differ as between this Court and the D.C. Superior Court, that should not be surprising and is of course one reason why the D.C. Superior Court's decisions are, at best, nonbinding, persuasive authority.

Also, while the D.C Superior Court undertook *in camera* review and provided in-depth analysis twice (both for the original order and the order denying Meta's motion for reconsideration), the D.C. Superior Court explicitly did not take into consideration the declarations of the Meta personnel which were submitted. Further, likely due to confidentiality issues, the D.C. Superior Court's orders refrain from discussing many of the details of the four disputed documents (even in the relatively general terms used in this Order), and thus contrast with this Court's analysis in that respect. Ultimately, the D.C. Superior Court's orders are not binding authority and, to the extent the findings of fact differ here, that is explicable given the slightly different procedural posture of that case and the different record submitted and considered.

As discussed above, the Court bases its finding that the crime-fraud exception should not apply in large part on the rationale that, if the underlying documents and evidence which demonstrate the changes made to the documents are produced, then there has been no spoliation. It follows that if Meta refuses or otherwise fails to produce the documents as ordered herein, or if it turns out that the prior versions of the documents do not in fact exist, then a fundamental premise of the Court's rulings would be lacking. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' request to find these four documents are subject to the crime-fraud

1    exception and not privileged.

2         Additionally, because this dispute centers on application of the attorney-client privilege,

3    the Court asked Meta to submit a copy of the privilege log for the four documents at issue.  [Dkt.

4    2581 at 2].  In response, Meta reported that, based on the Parties' discovery protocol, no privilege

5    log was required for the redactions for these four documents.  [Dkt. 2594-1 at 11].  However, these

6    four documents have become intensely disputed in three different courts.  Meta is the proponent of

7    the attorney-client privilege as to the redacted portions of Documents 1 through 4 here.

8         The party asserting the attorney-client privilege has the burden of proving that the privilege

9    applies.  *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citations omitted).  The

10   Ninth Circuit has "previously recognized a number of means of sufficiently establishing the

11   privilege, one of which is the privilege log approach."  *In re Grand Jury Investigation*, 974 F.2d at

12   1071.  "The Ninth Circuit has held that a party meets its burden of demonstrating the applicability

13   of the attorney-client privilege by submitting a log that identifies (a) the attorney and client

14   involved, (b) the nature of the document, (c) all persons or entities shown on the document to have

15   received or sent the document, (d) all persons or entities known to have been furnished the

16   document or informed of its substance, and (e) the date the document was generated, prepared, or

17   dated."  *Khasin v. Hershey Co.*, No. 5:12-cv-01862-EJD-PSG, 2014 WL 690278, at *2 (N.D. Cal.

18   Feb. 21, 2014) (citing *id.*); *see also Club Level, Inc. v. City of Wenatchee*, 619 F. App'x 316, 319

19   (9th Cir. 2015) (affirming district court's determination that challenged privilege log satisfied Rule

20   26(b)(5), where privilege log "disclosed the nature of the correspondence, the date of sending, the

21   sender and recipient(s), and a brief statement describing the subject of the content").

22        For most of the redacted text in these four documents, it is reasonably evident (based on

23   the *in camera* review) whether the redacted portion discusses an attorney-client communication.

24   However, some of the redactions do not directly identify or readily provide a means to infer the

25   identity of the attorney involved.  Accordingly, the Court **ORDERS** Meta to prepare a privilege

26   log for the redacted portions of these four documents and to serve that privilege log on Plaintiffs

27   by no later than **January 26, 2026**.

28        As summarized above, the D.C. Superior Court has on reconsideration confirmed its ruling

United States District Court
Northern District of California

that the four documents at issue here are subject to the crime-fraud exception to the attorney-client privilege under D.C. law, ordered Meta to produce those four documents in their entirety unredacted by January 12, 2026, and denied Meta's request for interlocutory review of that order denying reconsideration.  There is apparently a writ of mandamus pending which Meta has filed with the D.C. Court of Appeals, along with a motion to stay.  As of the date of this Order, there is no stay in place and mandamus has not been granted.  Accordingly, it is entirely conceivable that the fully unredacted versions of the four documents will be produced in discovery (over Meta's objections) imminently.

For these reasons, the Court directed the Parties to file a supplemental brief discussing the practical impact of the D.C. Superior Court's ruling.  [Dkt. 2623].  The Parties have reported that the JCCP action in Los Angeles Superior Court is scheduled to commence trial on January 27, 2026 and, as reported by the Parties, Judge Kuhl presiding over that action has asked a similar question.  The undersigned understands that oral argument in the JCCP on this same crime-fraud issue is scheduled for January 14, 2026 and, for that reason, the Court has endeavored to issue this Order as expeditiously as possible given the fast-moving pace of activities in the D.C. Superior Court.

Meta argues that the production of the four documents in the D.C. Superior Court action will have no practical impact on this MDL.  There is no automatic sharing of discovery documents for all the Parties as between that action and this MDL.  The Protective Order in the D.C. Superior Court action will govern the confidential treatment of the four documents (if they are produced) and they will not be made public (nor automatically available to all counsel in this MDL).  [Dkt. 2627 at 12].

Plaintiffs argue that "[i]n light of [the D.C Superior Court's order denying reconsideration] and the impending JCCP trial, the documents are likely to become a matter of public record in the near future, rendering the dispute here one of admissibility at trial rather than a discovery dispute over a question of privilege regarding documents not otherwise disclosed."  *Id.* at 14.  Plaintiffs further argue that "[t]he documents are likely to be relied upon at trial in the D.C. action and to become part of the public record.  This development substantially narrows—and may eliminate

altogether—the live controversy on which Meta bases its request for relief in the MDL." *Id.* Plaintiffs also report that "the plaintiff State Attorneys General in this MDL are permitted to access documents produced in the D.C. action, even if those documents have a confidentiality designation, by virtue of a law enforcement information sharing provision in the D.C. action's protective order." *Id.* at 15.

Plaintiffs argue that "the imminent production of the documents following a ruling rejecting privilege materially changes the landscape. Courts routinely account for such developments when determining whether continued withholding serves any legitimate purpose, especially once the documents have become public." *Id.* (citing *U.S. v. Philip Morris Inc.*, 212 F.R.D. 421, 428 (D.D.C. 2002)). As a consequence, Plaintiffs argue that "[w]ith the MDL trial six months away, the practical consequences of production should be assessed on a concrete rather than hypothetical basis after the documents are produced in the D.C. action and Judge Kuhl has issued a ruling in the JCCP. If the Court reaches the merits, it should confirm that the documents are not privileged under the crime-fraud exception." *Id.*

As noted, there is a lag of several months between the JCCP trial and the first trial in this MDL. There is also a gap of months between the currently ordered production of the four documents and trial in this MDL. Further, as noted, the State Plaintiffs in this MDL will have the ability to access the four documents as soon as they are produced in the D.C. action. And it is entirely possible that the four documents may be publicly disclosed at trial or a hearing in either the JCCP or the D.C. Superior Court prior to trial in this MDL. For these reasons, there is a likelihood that the status of these four documents may change between now and trial in this MDL. As a practical matter, at some point it is possible that this entire dispute as to privilege may become moot or at least narrowed. Accordingly, this Order granting Meta partial relief is **WITHOUT PREJUDICE** to Plaintiffs' filing an appropriate motion for other or different relief with regard to these four documents (without the need to seek leave from the undersigned to file a motion for reconsideration), if, for example, the four documents are made public in another forum.

## CONCLUSION

For all the reasons discussed herein, the Court **ORDERS** that Meta's motion for a

United States District Court
Northern District of California

protective order with regard to these four documents is **GRANTED-IN-PART**.  In accordance with the discussion herein, the Court **ORDERS** Meta to produce the documents as directed herein by the deadlines noted above (**January 23, 2026** for most categories of documents and **January 30, 2026** for the remainder).

Further, the Court **ORDERS** Meta to prepare and serve on Plaintiffs a privilege log for the redactions on each of the four documents.  Meta's privilege log **SHALL** be served on or before **January 26, 2026**.

Meta is further **ORDERED** to file a notice of compliance with the document production and privilege log requirements set forth herein (and attach a copy of that privilege log) by **January 27, 2026**.

This Order was drafted specifically to avoid disclosure of the substance of any alleged attorney-client communications.  The summaries and discussion of the four documents here are at a level of generality which would normally be found on a privilege log (identifying authors, recipients, dates, and summary of subject matter).  Accordingly, the Court **ORDERS** that there is no waiver of any applicable attorney-client privilege by virtue of this Court's description or discussion of the four documents in this Order.  The Court further **ORDERS** that no Party to this MDL shall argue waiver of any applicable attorney-client privilege based on this Order.

Because this Order discusses internal Meta documents and declaration, and because of the Protective Order's confidentiality provisions, the Parties are further **ORDERED** to meet and confer promptly and jointly file a proposed redacted version of this Order for public filing.  That proposed public version of this Order **SHALL** be filed on or before **January 23, 2026**.  The Parties are also **ORDERED** to provide to Judge Kuhl the full version of this Order as soon as it is issued, subject to the appropriate confidentiality provisions of the Protective Order in the JCCP.

Further, because this Order discusses the Meta declarations from the D.C. Superior Court which were submitted *in camera* in connection with this dispute (but not filed), Meta is **ORDERED** to file redacted, public versions of those declarations on the docket here for clarity and completeness of the record.  Meta **SHALL** file those public versions of the declarations by **January 23, 2026**.  Meta **SHALL** file under seal the unredacted, full versions of these

1    declarations by **January 14, 2026.**

2    Finally, because this Order discusses at least in part some of the non-privileged, unredacted

3    text of the four documents, again for completeness of the record, Meta is **ORDERED** to file under

4    seal the *redacted* versions of Documents 1-4 by **January 14, 2026**.

5    This **RESOLVES** Dkts. 2474 and 2627.

6    The Court **DIRECTS** the Clerk of Court to file this Order **UNDER SEAL**.

7

8    **IT IS SO ORDERED.**

9    Dated:  January 12, 2026

10   _____

11   PETER H. KANG
     United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

28