# Exhibit 9

ALLISON BROWN, *pro hac vice*
alli.brown@kirkland.com
KIRKLAND & ELLIS LLP
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 268-5000

JESSICA DAVIDSON, *pro hac vice*
jessica.davidson@kirkland.com
JOHN J. NOLAN, *pro hac vice*
jack.nolan@kirkland.com
ANDREW M. KARP, *pro hac vice*
andrew.karp@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800

*Attorneys for Defendant Snap Inc.*

*[Additional parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> This Document Relates To: <br><br> *Irvington Public Schools v. Meta Platforms, Inc., et al.* | MDL No. 3047 <br><br> Case No.: 4:23-cv-01467-YGR <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (IRVINGTON) (SD MSJ No. 4)** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Peter H. Kang <br><br> Date: January 26, 2026 <br> Time: 8:00 AM <br> Place: Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................................1

II.   ARGUMENT.......................................................................................................2

   A.    **Defendants Are Entitled to Summary Judgment on Causation Grounds.**...................2

      1.    Irvington Fails to Establish Injury Due to the At-Issue Features............................2

      2.    Irvington Lacks Defendant-Specific Causation Evidence. .......................................7

   B.    **Defendants Are Entitled to Summary Judgment on Irvington's Failure-to-Warn Claim.**........................................................................................................8

      1.    Defendants Did Not Have a Duty to Warn Irvington. .............................................8

      2.    Irvington Fails to Identify a Genuine Dispute of Material Fact Relating to Its Failure-to-Warn Claim.........................................................................................9

   C.    **Irvington Cannot Recover Past Damages.**......................................................12

      1.    Irvington's "Lost Time" Damages Are Not Available Under New Jersey Law....12

      2.    Irvington Lacks Admissible Evidence of "Lost Time" Damages..........................14

      3.    Irvington Lacks Evidence of Out-of-Pocket Vendor Costs. ..................................15

   D.    **Irvington Cannot Recover the 15-Year Dr. Hoover Plan as Future Damages**...........16

III.  CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
   2023 WL 4358713 (N.D. Fla. May 1, 2023) ..............................................................9, 10

*Alexander v. Cheaster*,
   164 A. 287 (N.J. 1933)...............................................................................................12

*Angelilli v. Activision Blizzard, Inc.*,
   781 F. Supp. 3d 691 (N.D. Ill. 2025) .......................................................................5

*Battaglia v. United Parcel Serv., Inc.*,
   70 A.3d 602 (N.J. 2013)............................................................................................17

*Bliesner v. Commc'ns Workers of Am.*,
   464 F.3d 910 (9th Cir. 2006) ...................................................................................14

*Coffman v. Keene Corp.*,
   628 A.2d 710 (N.J. 1993).......................................................................................9, 10

*Crawford v. City of Bakersfield*,
   944 F.3d 1070 (9th Cir. 2019) ..................................................................................4

*Durkin v. Wabash Nat'l*,
   2013 WL 2352612 (D.N.J. May 29, 2013) ............................................................10

*Dyroff v. Ultimate Software Grp.*,
   934 F.3d 1093 (9th Cir. 2019) ..................................................................................5

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019)........................................................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
   339 F. Supp. 3d 262 (S.D.N.Y. 2018)......................................................................12

*James v. Bessemer Processing Co.*,
   714 A.2d 898 (N.J. 1998)......................................................................................9, 10

*Kurak v. A.P. Green Refractories Co.*,
   689 A.2d 757 (N.J. Super Ct. App. Div. 1997).....................................................6, 7

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ..................................................................................3

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) .................................................................................15

*Macrie v. SDS Biotech Corp.*,
    630 A.2d 805 (N.J. Super. Ct. App. Div. 1993) .................................................. 8, 9

*N.J. Dep't of Env't Prot. v. E.I. du Pont Nemours & Co.*,
    2021 WL 6144081 (D.N.J. Dec. 30, 2021) ........................................................ 8

*NetChoice, LLC v. Bonta*,
    152 F.4th 1002 (9th Cir. 2025) ........................................................................ 6

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ........................................................................... 14

*Paddack v. Dave Christensen, Inc.*,
    745 F.2d 1254 (9th Cir. 1984) ......................................................................... 14

*People Express Airlines, Inc. v. Consolidated Rail Corporation*,
    495 A.2d 107 (N.J. 1985) ................................................................................. 12

*Sharpe v. Bestop, Inc.*,
    713 A.2d 1079 (N.J. Super. Ct. App. Div. 1998) ............................................. 9

*Sholtis v. Am. Cyanamid Co.*,
    568 A.2d 1196 (N.J. Super. Ct. App. Div. 1989) ............................................. 7

*Stephens v. Union Pac. R.R. Co.*,
    935 F.3d 852 (9th Cir. 2019) ...................................................................... 4, 6, 14

*Thomasson v. Air & Liquid Sys. Corp.*,
    2015 WL 1639730 (D.N.J. Apr. 19, 2015) ...................................................... 7

**Federal Rules**

Fed. R. Evid. 801(a) .................................................................................................. 14

Fed. R. Civ. P. 26 ...................................................................................................... 16

Fed. R. Civ. P. 26(a)(1)(A) ....................................................................................... 16

Fed. R. Evid. 702 ...................................................................................................... 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Irvington Public Schools ("Irvington" or the "District") claims there is "ample evidence showing Defendants' misconduct is harming IPS," Irvington Opp. 1 (ECF No. 2384), but its Opposition fails to identify admissible evidence connecting Irvington's injuries to Defendants' actionable conduct.  Instead, Irvington doubles down on vague allegations about student cell phone and social media use generally, as well as sporadic incidents involving content posted by others to social media—incidents for which Defendants cannot be held liable.  In doing so, Irvington's Opposition ignores this Court's ruling that Section 230 and the First Amendment impose a "significant limitation on [P]laintiffs' theories of recovery" by prohibiting the imposition of liability for third-party content and protected publishing activities.  Order Granting in Part and Denying in Part Defs.' Mot. to Dismiss the School District and Local Government Entities' Master Compl. (ECF No. 1267)[1] ("First SD Order") at 2.

Irvington tries to circumvent this significant limitation by arguing that it can base its claims on protected features because it asserts a failure-to-warn claim.  But Irvington cannot show that Defendants owed a duty to warn Irvington directly or a duty to warn the District's students and parents to prevent economic injury to Irvington.  In New Jersey, the duty to warn generally extends only to foreseeable users, and the authority cited by Irvington to argue the contrary is inapposite.  And in any event, Irvington lacks the admissible evidence needed to show that Defendants' alleged failure to warn harmed Irvington.

Lastly, Irvington has not shown it is entitled to past or future damages.  Contrary to Irvington's claims, New Jersey law forbids its demand to recover pure economic damages for its employees' allegedly "lost time."  Further, Irvington fails to identify admissible evidence of any compensable "lost time" or out-of-pocket damages.  Nor can Irvington recover the Hoover Plan as

---

[1]    The ECF numbers provided are from the MDL case docket (Case No. 4:22-md-03047-YGR), except for citations to exhibits to Defendants' Irvington Motion, which are from the case-specific docket (Case No. 4:23-cv-01467).

future damages because it cannot show that incurring those expenses is reasonably probable to flow from its alleged current injuries.

## II.    ARGUMENT

### A.    Defendants Are Entitled to Summary Judgment on Causation Grounds.

Irvington's Opposition fails to rebut Defendants' arguments that Irvington lacks sufficient evidence at each link in the causal chain.  It has not adduced evidence to show that the *actionable* features of *each* Defendant's platform—rather than third-party conduct or non-actionable features— affected its students and thereby caused injury to Irvington in the form of diverted resources or employee time.  Rather, Irvington's evidence is based on the protected features of Defendants' platforms and publishing activities alleged to have occurred on them.  Its evidence cannot furnish a jury with any reasonable method of determining the extent of Irvington's alleged injuries allegedly caused by Defendants' platforms or determining the amount of injury (if any) purportedly caused by each individual Defendant.

### 1.    Irvington Fails to Establish Injury Due to the At-Issue Features.

Irvington's Opposition does not create a triable issue as to any of Defendants' at-issue features.  At most, Irvington can show that *some* Irvington students *sometimes* used *some* social media platforms—facts that Defendants have never denied—and that those students were affected by third-party content posted on social media.  Because Irvington cannot show that Defendants' actionable conduct caused harm to student mental health or disruptions in classrooms, it is unsurprising that Irvington is similarly unable to show any harm to the District itself as a result of Defendants' actionable conduct.

#### a)    Irvington's Opposition Fails to Link Student Issues to Defendants' Actionable Conduct.

The Opposition attempts to show that Defendants' conduct harmed Irvington students and the District by citing scattered pieces of testimony from District employees.  *See* Irvington Opp. 2.  But all of this testimony instead underscores that Irvington's claims are based on third-party conduct and Defendants' protected publishing activities.  Indeed, the Opposition identifies monitoring of student

involvement in viral challenges posted by others on social media, Irvington Opp. Ex. 3 (May 16, 2025 Vauss 30(b)(6) Dep.) (ECF No. 2392-8) 20:9–23 (staff and administrators monitored student involvement in social media "challenges"—*i.e.*, third-party content); a school shutdown that occurred because of student reactions to comments by third parties, *id.* at 274:10–276:10; a student who, apparently unsupervised with a phone, took naked photos of herself and posted them "on a social media platform," *id.* at 92:20–94:7; and heated student arguments about two popular entertainers, Doechii and Beyoncé, stemming from "likes" and "comments" on Snapchat—even though Snapchat does not have those features, Irvington Opp. Ex. 2B (May 9, 2025 Vauss Dep.) (ECF No. 2392-7) 485:5–490:17; and bullying or harassing speech through comments and posts on social media by or toward Irvington students, Irvington Opp. Ex. 5 (May 20, 2025 Zahir Dep.) (ECF No. 2392-12) 281:25–283:17, 289:6–21. *See also, e.g.*, Irvington Opp. 4 ("Principal Zahir testified that, in his time at an IPS elementary school, students were impacted by fights being recorded and posted to social media sites, leading to arguments in the classroom."). With respect to "beauty filters" specifically, Irvington mischaracterizes the record by conflating its superintendent's testimony about the effects that *images of others* posted on social media have on students—third-party content—with "beauty filters." *See* Irvington Opp. 4–5 (citing Irvington Opp. Ex. 2B (May 9, 2025 Vauss Dep.) (ECF No. 2392-07) 491:2–22); Reply Ex. 1 (May 9, 2025 Vauss 30(b)(1) Dep.) 490:18–493:22 (describing images and content posted by others as causing self-esteem issues and admitting to lack personal knowledge of those instances).

Such incidents, while understandably upsetting, have nothing to do with Defendants' conduct and cannot form the basis for liability. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1093 n.4 (9th Cir. 2021) (plaintiffs "would not be permitted under [Section 230] to fault Snap for publishing other Snapchat-user content (*e.g.*, snaps of friends speeding dangerously) that may have incentivized the boys to engage in dangerous behavior"); *Force v. Facebook, Inc.*, 934 F.3d 53, 71 (2d Cir. 2019) (Section 230 barred allegations that Facebook displayed harmful posts).

Since Irvington lacks evidence linking student mental health or behavioral issues to the at-issue features of Defendants' platforms, it seeks to offer general and conclusory testimony about

increasing social media use by its students over the years.  Irvington Opp. 2.  In doing so, Irvington avoids conducting the necessary "conduct-specific, feature-by-feature" approach.  First SD Order at 12.  Irvington relies on Superintendent Dr. Vauss's offhand, hyperbolic statement that Irvington students use social media on "an ongoing, nonstop basis throughout the school day." Irvington Opp. 2 (citing Irvington Opp. Ex. 2A (ECF No. 2392-5) at 191:24–192:1).  But that kind of testimony is insufficient to create a genuine dispute of material fact as to whether any of Defendants' at-issue features harmed Irvington because it is not tied to a specific feature (or any of Defendants' platforms).  Further, it is pure speculation:  the record makes clear that Dr. Vauss rarely interacts directly with students throughout the District, and Irvington does not dispute that the District has never attempted to study its students' social media usage.  Reply Ex. 1 (May 9, 2025 Vauss 30(b)(1) Dep.) 516:16–520:23 (Dr. Vauss does not interact with students throughout the District as part of her role and only visited Irvington High School 5–10 times during the 2023–2024 school year); Irvington Mot. 4–5 (ECF No. 38-1); *see also Stephens v. Union Pac. R.R. Co*., 935 F.3d 852, 856–57 (9th Cir. 2019) ("A party's own speculation is insufficient to create a genuine issue of material fact . . . .").

The Opposition's reliance on Dr. Hoover's and lay witness testimony to show mental health harms to students from Defendants' platforms also fails.  *First*, Irvington misrepresents Dr. Hoover's expert report.  Irvington Opp. 4 (citing Irvington Opp. Ex. 12 (ECF No. 2392-23) ¶ 45).  Dr. Hoover *does not* explain how social media—much less Defendants' actionable conduct—harms Irvington students' mental health; she merely states in conclusory fashion that it does, based on unrecorded observations relayed to her by unsworn "key informants."  Irvington Opp. Ex. 12 (ECF No. 2392-23) ¶ 45.  Dr. Hoover did not analyze Irvington records or even attempt to disentangle the effects of protected conduct (*e.g.*, publication of third-party content) from her conclusions.  *E.g.*, *id.* ¶ 49.  *Second*, Irvington cannot rely on lay witness testimony about the effects of social media on Irvington students' mental health.  *See, e.g.*, *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1079 (9th Cir. 2019) (noting that while lay witnesses may testify regarding their observations of other individuals'

1    behavior, they may not opine that another suffers from a mental illness).  Thus, the testimony of Ms.

2    Lopez, Dr. Vauss, and Mr. Zahir cited in the Opposition is unavailing.

3         Finally, Irvington cannot rest its argument on a total increase in student mental-health

4    referrals over time.  Defendants identified documentary evidence supporting a connection between

5    the increase in student mental health issues and the Covid-19 pandemic.  *See* Irvington Mot. 3 (citing

6    Irvington Mot. Ex. 8 at -3254–55).  Irvington, by contrast, cannot point to *any* testimonial or

7    documentary evidence tying increased outside mental-health referrals to social media (let alone

8    Defendants' specific platforms or their at-issue features).  Irvington Opp. 5 (citing Irvington Opp.

9    Ex. 1).  It is unclear how Irvington's record citation to Irvington Opp. Ex. 8A plausibly supports the

10   proposition for which Irvington cites it, *i.e.*, that "IPS counselors' monthly meeting records confirm

11   they were making social media referrals."  Irvington Opp. 5 (citing Irvington Opp. Ex. 8A (May 13,

12   2025 Pettiford 30(b)(6) Dep.) (ECF No. 2392-18) 53:12–14, 78:23–79:6).  Those portions of the

13   record do not suggest that such referrals were in fact made.

14            b)    Irvington's Opposition Fails to Link Its Diverted Employee Time and
                    Resources to Defendants' Actionable Conduct.
15

16        Irvington asserts that its resources and employees' time have been diverted due to incidents

17   relating to social media "likes," "tagged images," "comments," or "notifications."  *See* Irvington

18   Opp. 3–4.  Even if Irvington's "lost time" theory were viable—it is not—it lacks evidence that the

19   Defendants' platforms' at-issue features caused these harms.  The Court has expressly held that

20   Plaintiffs' claims are barred with respect to notifications that students receive relating to third-party

21   content (*e.g.*, likes, comments, or tagged images).  First SD Order at 13; *see also* Order Granting in

22   Part and Denying in Part Defendants' Motions to Dismiss ("PI Order") (ECF 430) at 18 ("[W]here

23   notifications are made to alert users to third-party content, Section 230 bars plaintiffs' product defect

24   claims. . . .  This includes notifications that someone has commented on or liked a user's post."), 22

25   ("[T]he timing and clustering of notifications *of defendants' content* to increase addictive use (*id.* at

26   ¶ 845(l)) is entitled to First Amendment protection.  There is no dispute that the content of the

27   notifications themselves, such as awards, are speech." (emphasis in original)); *see also Angelilli v.*

28

*Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 697, 701 (N.D. Ill. 2025) (First Amendment barred claims that video game was "designed to be addictive," including through in-game "rewards").  The Ninth Circuit also held that "recommendations and notifications" are protected by Section 230 because they "are tools meant to facilitate the communication and content of others."  *Dyroff v. Ultimate Software Grp.*, 934 F.3d 1093, 1098 (9th Cir. 2019); *see also NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1016 (9th Cir. 2025) (enjoining California law targeting social media features displaying "the *number* of likes or feedback that [a] post has received" as barred by the First Amendment).  The Opposition's attempt to skirt around this well-established law demonstrates why summary judgment is warranted.

If anything, the evidence cited by Irvington's Opposition shows that teacher and non-teaching staff time was diverted due to publication of third-party content on online platforms and the acts of third parties that followed.  *See* Irvington Opp. 3–4.  Irvington points to the affidavit of a middle-school social worker Sandra Lopez, which was specifically limited to University Middle School ("UMS"), not the District as a whole, to support its assertion that teachers stop lessons due to social media, causing up to 70% of her time and 85% of UMS guidance time to be diverted.  But at deposition, Ms. Lopez admitted that disruptions experienced by UMS guidance counselors are caused by third-party content, not the features of Defendants' platforms.  Reply Ex. 2 (Lopez Dep. Tr.) 95:3–96:19 (admitting that "75 to 85 percent of school counselor time at UMS is spent addressing incidents where a student has posted something, maybe an image, maybe a video, maybe a comment, that has led to some type of conflict and the UMS counselors get involved"); *id.* 326:9–328:22 (referencing disruptions at UMS caused by third-party social media content and conduct); *id.* 329:6–331:7 (explaining that UMS students involved in or "targeted" by negative "social media *interactions*" are experiencing "anxiety" and "a high level of distress" as a result (emphasis added)).

Irvington cannot plug the holes in this evidentiary record through Dr. Hoover, who simply reiterates general and unsupported observations from her "key informants" that social media is disrupting schools—without any independent analysis or corroboration.  *See* Irvington Opp. 8 (citing and quoting Irvington Opp. Ex. 13); *Stephens*, 935 F.3d at 856–57 ("A party's own speculation is

1   insufficient to create a genuine issue of material fact, . . . and a party cannot make it sufficient

2   simply by finding an expert who is willing to assume its correctness.").

3                    **2.    Irvington Lacks Defendant-Specific Causation Evidence.**

4           New Jersey law requires Irvington to adduce competent evidence of causation as to *each*

5   Defendant.  *Kurak v. A.P. Green Refractories Co.*, 689 A.2d 757, 766 (N.J. Super Ct. App. Div.

6   1997) (entering judgment notwithstanding the verdict where no causation evidence existed as to *that*

7   defendant, despite sufficient evidence as to another defendant); *Thomasson v. Air & Liquid Sys.

8   Corp.*, 2015 WL 1639730, at *3 (D.N.J. Apr. 19, 2015) (applying New Jersey law requiring a

9   plaintiff to prove causation as to "particular" defendants).  Irvington attempts to gloss over the

10  deficiencies in its own evidence by misconstruing Defendants as urging that Irvington "must

11  quantify each [student's] usage or apportion harm among the Defendants" and by retreating to a

12  substantial factor test.  Irvington Opp. at 7–9.  But Defendants advance no such arguments, and the

13  substantial factor test is not a golden ticket to overcoming summary judgment.  *See Kurak*, 689 A.2d

14  at 761–62 (applying *both* substantial factor test and requirement that causation be proved as to each

15  defendant).  Defendants simply point out that Irvington must present sufficient evidence to create

16  triable issues of fact as to whether *each* Defendant's actionable features are a "legally responsible

17  source" of Irvington students' allegedly compulsive use and Irvington's own allegedly related

18  injuries.  *Id.* at 766; Irvington Mot. at 17–20.

19          Irvington also erroneously seeks to avoid its obligation to adduce Defendant-specific

20  evidence by arguing that circumstantial evidence is sufficient.  Irvington Opp. at 7.  But this

21  argument conflates two conceptually distinct questions: (1) whether evidence is direct or

22  circumstantial; and (2) whether evidence is general or Defendant-specific.  Under New Jersey law,

23  circumstantial evidence alone may indeed be sufficient to survive a motion for summary judgment.

24  *See Sholtis v. Am. Cyanamid Co.*, 568 A.2d 1196, 1207 (N.J. Super. Ct. App. Div. 1989) ("Since

25  proof of direct contact [with asbestos] is almost always lacking . . . courts must rely upon

26  circumstantial proof of . . . exposure.").  However, general evidence alone—the only evidence

27  Irvington can point to—is insufficient.  To survive summary judgment, Irvington must point to

28

competent record evidence sufficient to demonstrate that *each* Defendant caused its alleged injuries. *See id.* ("At a summary judgment motion a plaintiff [must] produce evidence . . . of plaintiff's contacts *with a particular manufacturer's* friable asbestos" sufficient to establish that particular defendant's asbestos was a substantial factor in the injury (emphasis added)).  Because it cannot, summary judgment is warranted.

**B.    Defendants Are Entitled to Summary Judgment on Irvington's Failure-to-Warn Claim.**

**1.    Defendants Did Not Have a Duty to Warn Irvington.**

As explained in Defendants' Irvington Motion and Omnibus Reply, Defendants: (i) owed no duty to warn Irvington of potential downstream economic harms resulting from student use of their platforms; and (ii) owed no duty to warn parents and students that can be enforced by Irvington. Irvington Mot. IV.D; Om. Reply II.B.  Irvington argues that Defendants' Motion "ignores the law" because "New Jersey courts have not limited the duty to warn to those with whom a defendant has a direct relationship."  Irvington Opp. 9 (quoting *N.J. Dep't of Env't Prot. v. E.I. du Pont Nemours & Co.*, 2021 WL 6144081, at \*7 (D.N.J. Dec. 30, 2021); and then citing *Macrie v. SDS Biotech Corp.*, 630 A.2d 805, 809 (N.J. Super. Ct. App. Div. 1993)).  Irvington mischaracterizes Defendants' argument, which is that there is no support in New Jersey law that a duty to warn extends to "a non-user of a product that others' use of that product may cause financial injury to the plaintiff." Irvington Mot. 32.  Neither case Irvington cites in its Opposition holds, or even suggests, otherwise. *See N.J. Dep't of Env't Prot.*, 2021 WL 6144081, at \*4 ("Courts have also recognized the State's authority . . . to take action to protect New Jersey's citizens from harm caused by environmental pollution."); *Macrie*, 630 A.2d at 808 (describing "plaintiffs' claim that they have suffered serious injuries as the result of their exposure to the product.").

Moreover, the cases Irvington cites are distinguishable.  *First*, as explained in Defendants' Omnibus Reply, *New Jersey Department of Environmental Protection* involved a claim brought by the state in its *parens patriae* capacity to protect its citizens and state resources.  Irvington has no authority to bring such claims, *see, e.g.*, First SD Order at 44, so the reasoning of *New Jersey*

1  *Department of Environmental Protection* does not apply.  *Second*, *Macrie* involved a cause of action

2  based on strict liability—*not* negligence—and therefore cannot support the broad expansion of duty

3  advocated for by Irvington.  630 A.2d at 807.  It is also factually distinguishable because the court

4  there held that a manufacturer of a fungicide applied to crops had a duty to warn even remote

5  vendees who might come into contact with the sprayed crops and be *physically injured* as a result.

6  *Id.* at 809.  *Macrie* provides no support for Irvington's assertion that Defendants had a duty to warn

7  Irvington that their platforms could cause harms to others or that those harms might cause

8  downstream financial harms to Irvington.

9           **2.      Irvington Fails to Identify a Genuine Dispute of Material Fact Relating to
                      Its Failure-to-Warn Claim.**
10

11          Irvington attempts to rely on New Jersey's heeding presumption for the proposition that "IPS

12  and its scholars and families" would have heeded warnings had they been provided.  Irvington Opp.

13  10.  But the heeding presumption does not apply in this manner.  New Jersey adopted the heeding

14  presumption in *Coffman* to "reinforce the basic duty to warn" by "encourag[ing] manufacturers . . .

15  to alert *users* of the hazards arising from the *use* of [their] products through effective warnings."

16  *Coffman v. Keene Corp.*, 628 A.2d 710, 718 (N.J. 1993) (emphasis added).  This policy justification

17  relies on the assumption that an effective warning—when received by a product's user or those

18  physically exposed to the product—will avoid the accident or injury.  *See id.* at 723.  Therefore,

19  *Coffman* reasoned that "[j]ust as it is fair and reasonable to assume that such a warning will serve to

20  render the product safe because it is calculated to alert the foreseeable *user* of the product of its

21  dangers, so should one assume that such a warning if provided will be followed [by the user]."  *Id.*

22  (emphasis added).  Irvington does not claim harm as a result of its own use of or exposure to

23  Defendants' platforms and does not—because it cannot—claim that had an adequate warning been

24  issued to it, it could have prevented its alleged injuries.  The policy reasons underlying the heeding

25  presumption therefore do not apply here.

26

27

28

In support of its position, Irvington quotes a Florida federal district court decision stating that the heeding presumption applies to "all failure to warn cases."[2]  Irvington Opp. 10 (quoting *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2023 WL 4358713, at *2 (N.D. Fla. May 1, 2023)) (alteration omitted).  Irvington also cites *James v. Bessemer Processing Co.*, 714 A.2d 898 (N.J. 1998) as an example of the heeding presumption applying to non-users.  Irvington Opp. 10.  But the *James* court merely recognized, "*In the employment context*, a manufacturer's duty to warn of the dangers posed by its products extends to *both* the employer and the employees of the recipient entity."  *Id.* at 908 (emphasis added).  And even then, there is a duty to warn the employer *only* because imposing such a duty increases the likelihood that the employee (the product's *user*) will be furnished with the warning, eliminating any alleged product defect.  *See Coffman*, 628 A.2d at 722 ("[T]he adequacy of a warning entails alerting the employer in order to alert the employee of the dangers of the unsafe product.").  It is this duty—narrow and clearly established by *Coffman* and *James*—that the court applied in *3M*.  *In re 3M*, 2023 WL 4358713, at *2 (citing *James* for the proposition that New Jersey courts apply the heeding presumption "even in cases where a manufacturer provides the allegedly defective product to an employer rather than to the plaintiff directly").  These cases provide no support for Irvington's claim that it can take advantage of the heeding presumption.

Moreover, even if the heeding presumption applied, the evidence conclusively rebuts it.  *See Durkin v. Wabash Nat'l*, 2013 WL 2352612, at *11–15 (D.N.J. May 29, 2013) (granting summary judgment on proximate cause grounds even "[a]ssuming that a duty to warn exist[ed]" and the heeding presumption applied).  Irvington has been on notice of the supposed harms associated with Defendants' platforms at least since the time it filed its lawsuit nearly three years ago, yet there is no evidence that this information has altered Irvington's policies or practices in any material way.  Irvington has not told its students or parents to get rid of their accounts on Defendants' platforms or

---

[2]  The ultimate source of this quoted language is *dicta* from *Sharpe v. Bestop, Inc.*, 713 A.2d 1079 (N.J. Super. Ct. App. Div. 1998), which addresses the effect—not the application—of the heeding presumption.  713 A.2d at 1086–87.  *Sharpe* does not indicate the heeding presumption may be applied to a third-party non-user of a product.

to stop using them altogether. In fact, the District has enabled YouTube access through its Google Workspace for Education account and "use[s] it as an educational tool," even permitting teachers to use YouTube in lesson plans. Reply Ex. 3 (May 16, 2025 Vauss 30(b)(6) Dep.) 331:19–332:20. Additionally, Irvington High School continues to run its own Instagram account. Irvington Mot. Ex. 5 (May 6, 2025 Vauss Dep.) (ECF No. 38-7) 146:8–147:13. Irvington does not dispute the facts in Defendants' Motion setting forth why a warning would not have altered Irvington's actions or alleviated any alleged harms. Irvington Mot. 34–35.

As a tacit admission that Irvington lacks the necessary evidence to establish that Defendants' alleged failure to warn caused any of its alleged injuries, Irvington submitted a new declaration from Dr. April Vauss, Irvington's Superintendent, with its Opposition to try to address the evidentiary dearth. *See* Irvington Opp. Ex. 28 (Nov. 3, 2025 Vauss Decl.) (ECF No. 2392-32). Notably, despite Dr. Vauss having previously been deposed in her personal and corporate representative capacities over three days in May 2025, and having submitted a May 13, 2025 affidavit, it was not until her new November 3, 2025 affidavit that Dr. Vauss first raised the issue of warnings. *See* Irvington Opp. Ex. 2A (May 6, 2025 Vauss 30(b)(1) Dep.) (ECF No. 2392-5); Irvington Opp. Ex. 2B (May 9, 2025 Vauss 30(b)(1) Dep.) (ECF No. 2392-6); Irvington Opp. Ex. 3 (May 16, 2025 Vauss 30(b)(6) Dep.) (ECF No. 2392-8); Irvington Mot. Ex. 22 (May 13, 2025 Vauss Affidavit) (ECF No. 38-24); Irvington Opp. Ex. 28 (Nov. 3, 2025 Vauss Decl.) (ECF No. 2392-32). But the new declaration is insufficient to carry Irvington's burden and is inconsistent with the evidence.

In her new declaration, Dr. Vauss summarily asserts without explanation that, if Defendants had provided "adequate warnings," Irvington would have taken various steps to reduce the alleged harms of social media. Irvington Opp. Ex. 28 (Nov. 3, 2025 Vauss Decl.) (ECF No. 2392-32) ¶¶ 4–8. For example, Dr. Vauss asserts in her new declaration that "[i]f Defendants had warned about the risks and dangers their platforms posed, IPS would have implemented a more comprehensive and enforceable cell-phone restriction policy earlier." Irvington Opp. Ex. 28 ¶ 6. But this is flatly contradicted by the record, which shows that Irvington's policies have prohibited student cell phone use during and in between classes since at least 2015. Irvington Mot. Ex. 7 (May 16, 2025 Vauss

30(b)(6) Dep.) (ECF No. 38-9) 48:15–21; Reply Ex. 4 (BW_Irvington00228030) at -061. That policy has not changed since Irvington filed this lawsuit. *See* Reply Ex. 3 (May 16, 2025 Vauss 30(b)(6) Dep.) 213:10–214:4. Dr. Vauss further testified that Irvington would not have taken any further steps to prohibit student personal devices on school grounds entirely because Irvington considers them safety tools and that is how parents are able to communicate with students. Irvington Mot. Ex. 5 (May 6, 2025 Vauss Dep.) (ECF No. 38-7) 143:21–145:2.

Irvington has presented no evidence that any students or parents in the District would have acted any differently even had Irvington implemented different policies. Irvington certainly has not presented evidence that students would have suffered fewer mental health harms or caused fewer classroom disruptions to such a degree that Irvington would have had to expend fewer resources in response. Thus, Irvington lacks sufficient evidence to show that the lack of an adequate warning caused its alleged harms.

### C.    Irvington Cannot Recover Past Damages.

#### 1.    Irvington's "Lost Time" Damages Are Not Available Under New Jersey Law.

In New Jersey, damages for "lost time" are recoverable only when they result in "loss of earnings." *See, e.g.*, *Alexander v. Cheaster*, 164 A. 287, 288 (N.J. 1933) (holding that a personal injury plaintiff "may recover for any loss sustained through being temporarily deprived of his capacity to perform his ordinary labor, or to attend to his ordinary business" resulting in "loss of earnings"); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 309, 317 (S.D.N.Y. 2018) (holding that New Jersey law "limit[s] lost time damages to lost income or earnings").

Irvington does not attempt to distinguish this controlling caselaw. Nor does the District cite *any* New Jersey decision holding that an employer can recover damages on account of its employees' "lost time." *See* Irvington Opp. at 11–12. Instead, it relies on *People Express Airlines, Inc. v. Consolidated Rail Corporation*, 495 A.2d 107 (N.J. 1985), for the proposition that "[c]ourts have long recognized that an injured entity may recover for financial and operational harms that are reasonably foreseeable." Irvington Opp. at 11. Irvington misstates the law: On the contrary, *People*

*Express* holds that under New Jersey law, plaintiffs in negligence actions whose persons or property have not been physically injured *cannot* recover for financial and operational harms—*i.e.*, pure economic injuries—without meeting the heightened proximate cause standard of "particular foreseeability." 495 A.2d at 117–18 (citing *Rickards v. Sun Oil Co.*, 41 A.2d 267, 268 (N.J. Sup. Ct. 1945) (denying recovery for "losses from expectant gains" as a matter of law where for-profit business plaintiffs sued a barge owner for negligently destroying a bridge that was the only means of access to the plaintiffs' businesses)). "Particular foreseeability" exists where "[t]here were no intervening causes"; "[t]he economic injury was close in time and space; the defendant had ample opportunity to ascertain the identity and nature of the plaintiff's interests . . . [and] the amount of litigation and extent of liability was finite, rather than expansive." *Id.* at 116–17. Here, because Irvington's "lost time" theory seeks purely economic damages in the form of "diverted" instructional time (and absent any physical injury to the District), it therefore must show that this "type of economic expectation[]" was "particularly foreseeable" to Defendants to survive summary judgment. *Id.* It cannot.

Irvington cannot dispute that its "lost time" damages in the form of employee salaries involve intervening causes (students' use of Defendants' platforms and their highly variable reactions to them), that the "lost time" during each school day for nearly a decade is attenuated in time and space from when Defendants designed their platforms, and that if Plaintiffs' theory prevails, the amount of litigation and extent of liability would be basically infinite because practically every institution whose productivity is allegedly affected by individuals' use of Defendants' platforms would be able to lodge the same type of claim as Irvington. Dr. Ward's "lost time" damages—which vary teacher by teacher, administrator by administrator, school by school, and year by year—were by no means particularly foreseeable by Defendants. Thus, Irvington's claim is fundamentally unlike any negligence action for pure economic damages that New Jersey has allowed to proceed beyond summary judgment. In *People Express* itself, for example, a railroad fire next to Newark International Airport caused the terminal to shut down for several hours. *Id.* at 108–09. The plaintiff in that case, an airline using a terminal in close proximity to the fire, lost business for 12

hours as a result and brought a negligence claim for purely economic damages (lost profits and expenses, though not any portions of its employees' salaries). *Id.* The New Jersey Supreme Court allowed the plaintiff to proceed past summary judgment *only* because it met this heightened proximate-cause standard: the adjacent fire causing a loss of business was extremely close in time, obviously foreseeable, and limited in scope of plaintiffs and liability. *Id.* at 116–18. Irvington's reliance on *People Express* as the basis for recovering portions of its employees' salaries and benefits as damages for "lost time" is therefore misplaced.

### 2. Irvington Lacks Admissible Evidence of "Lost Time" Damages.

Even if New Jersey law allowed recovery of lost time damages, Irvington's evidence is insufficient to create a triable dispute of fact. As explained in Defendants' Omnibus Reply, the survey performed by Plaintiffs' expert Mr. Klein is insufficient to establish damages based on Irvington teachers' "lost time." Om. Reply II.C.

Irvington's other evidence is inadmissible hearsay that cannot form the basis of a genuine dispute of material fact in the face of a motion for summary judgment. *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 779 & n.27, 783 (9th Cir. 2002) (upholding grant of summary judgment and affirming exclusion of evidence where contents of depositions were hearsay); *Bliesner v. Commc'ns Workers of Am.*, 464 F.3d 910, 915 (9th Cir. 2006) (affirming striking of affidavits in grant of summary judgment where affiant did not have personal knowledge); Irvington Mot. 24–25 & n.13. Irvington contends that the lost time estimates for Irvington psychologists, nurses, principals, and assistant principals provided by its superintendent—Dr. April Vauss—are not hearsay because those estimates are based on her "experience and interactions" with Irvington staff and "reports" from principals and assistant principals. Irvington Opp. 12. This contention raises more questions than it answers—most notably, how principals and assistant principals could possibly "report" lost time estimates to Dr. Vauss *other* than via inadmissible oral, written, or non-verbal assertions. *Cf.* Fed. R. Evid. 801(a). It is clear from the record that Dr. Vauss is merely the conduit for Irvington employees' out-of-court statements estimating lost time on account of "issues related to social

media," which are now being offered for the truth of the matters asserted.  Irvington Mot. Ex. 22 (May 13, 2025 Vauss Affidavit) (ECF No. 38-24) ¶¶ 20–23.  This is classic hearsay.

Irvington also argues that even if the statements are hearsay, its experts may rely on them. Irvington Opp. 12.  But the District cannot transform inadmissible hearsay into genuine disputes of material fact simply by having an expert regurgitate those out-of-court statements as if they were true.  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802." (citation and internal quotation marks omitted)); *see also Stephens*, 935 F.3d at 856–57 ("A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness.").

### 3. Irvington Lacks Evidence of Out-of-Pocket Vendor Costs.

Irvington lacks evidence tying its vendor-related damages to social media.  Thus, no triable issue exists as to this category of damages, and summary judgment is therefore warranted.

**Programming/Technology Lockers**.  Irvington concedes it is no longer "seeking compensation for hard costs of expanded programming" or for technology lockers.  Om. Opp. 196 n.12, 199.

**Filtering and Monitoring Software**.  Irvington concedes that it does not have any evidence that its costs for filtering and monitoring software are attributable to Defendants.  *See* Om. Opp. 197–98.  Irvington identifies its damages estimate of "35% compensation for implementing filtering systems GoGuardian ($73,185) and Palo Alto ($47,565)," Om. Opp. 197, but fails to identify any facts supporting its allegations.  *See* Om. Opp. 198 n.14 (identifying facts for other districts but not Irvington).

**Mental Health Resources**.  Irvington similarly fails to adduce evidence sufficient for a jury to find that Defendants owe "20% compensation" for certain third-party counseling providers.  *See* Om. Opp. 198.  Irvington's Opposition does not identify a single fact supporting its 20% estimate as to these particular vendors—or that those vendors provided *any* mental health support related to

social media.  The District does not cite a single document or line of testimony that would allow a jury to find that Irvington spent even one extra dollar (much less 20% of its overall payments) on Care Plus NJ, for instance, as a result of Defendants' actionable conduct.  That is fatal to Irvington's attempt to recover damages for this category.  *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("As a general rule, damages which result from a tort must be established with reasonable certainty").  Irvington concedes its damages expert, Mr. Meyers, simply "relied on sworn interrogatory responses" to assert this 20% estimate.  Om. Opp. 198.  Irvington's "sworn interrogatory responses" are merely damages calculations with conclusory assertions that 20% of some of its outside-vendor spending was attributable to Defendants.  *See* Irvington Mot. Ex. 24 (Pl.'s 3d Am. Answers to Defs.' Interrogatories to Irvington Public Schools (Set 3)) (ECF No. 38-26).[3] Mr. Meyers does not even purport to do *any analysis* confirming that 20% (or any) of Irvington's expenditures for *these vendors* had *anything* to do with Defendants' platforms.  Rather, Mr. Meyers only applied the unsupported 20% estimate to Irvington's spending on these vendors.  Summary judgment is therefore also warranted on this category of vendor damages.

### D.    Irvington Cannot Recover the 15-Year Dr. Hoover Plan as Future Damages.

For the reasons stated in the Omnibus Reply, Irvington cannot recover the Hoover Plan as "future damages."  Om. Reply II.D.3.  Irvington's claim for future damages is also specifically barred under New Jersey law.

Irvington argues that Defendants overstate the legal standard a plaintiff must meet to be entitled to future damages under New Jersey law; however, it cites the same standard Defendants set out in their motion for summary judgment, as well as the same caselaw.  Irvington Opp. 12–13 (citing *Mauro v. Raymark Indus., Inc.*, 561 A.2d 257, 264–65 (N.J. 1989)).  Thus, the parties agree that for Irvington to recover the estimated costs of Dr. Hoover's 15-year strategic plan as future damages, those expenditures must be "reasonably probable" to occur.  *Compare* Irvington Mot. 28–

---

[3]    The Federal Rules require all plaintiffs to disclose damages calculations under Rule 26(a)(1)(A). If a reasonable jury could determine damages based on Rule 26 disclosures alone—or as regurgitated by an expert—then summary judgment would never be appropriate on damages grounds.  That cannot be the case.

30 ("The long-standing rule in New Jersey is that prospective damages are not recoverable unless they are reasonably probable to occur." (quoting *Mauro*, 561 A.2d at 261)), *with* Irvington Opp. 12 ("New Jersey . . . allows recovery in tort for future damages so long as there is evidence from which a jury can find that 'future injury' is 'reasonably probable.'" (quoting *Mauro*, 561 A.2d at 264–65)).

In *Mauro*, the court held that a plaintiff who had already experienced a physical injury (bilateral pleural thickening) from exposure to asbestos could not recover based on an unquantified, increased risk of developing cancer because he had not established that such an injury was more probable than not based on his existing exposure. 561 A.2d at 258–60. Irvington does not even attempt to point to record evidence supporting the proposition that it is more likely than not to incur the costs associated with Dr. Hoover's strategic plan as a result of any existing injury. These expenses are contingent upon the continued existence of Defendants' platforms and at-issue features, the continued use of Defendants' platforms by Irvington students, students' use of other social media platforms (some of which certainly do not even yet exist), and any number of events that could allegedly impact Irvington students' mental health. For the reasons explained above, in Defendants' Irvington Motion, and in the Rule 702 briefing, Dr. Hoover's strategic plan does not fill that gap. Irvington Mot. 29–30. Allowing Irvington to recover the costs of Dr. Hoover's strategic plan would amount to "an improper award of damages based on conjecture or speculation." *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 623 (N.J. 2013).

## III.    CONCLUSION

For the foregoing reasons, as well as the reasons stated in Defendants' Irvington Motion and Omnibus Reply, Defendants are entitled to summary judgment on Irvington's claim.

1    DATED:  December 5, 2025                    Respectfully submitted,

2                                                By:    */s/ Andrew M. Karp*____
                                                        ALLISON BROWN, *pro hac vice*
3                                                       alli.brown@kirkland.com
                                                        KIRKLAND & ELLIS LLP
4                                                       2005 Market Street, Suite 1000
                                                        Philadelphia, PA 19103
5                                                       Tel.: (215) 268-5000

6                                                       JESSICA DAVIDSON, *pro hac vice*
                                                        jessica.davidson@kirkland.com
7                                                       JOHN J. NOLAN, *pro hac vice*
                                                        jack.nolan@kirkland.com
8                                                       ANDREW M. KARP, *pro hac vice*
                                                        andrew.karp@kirkland.com
9                                                       KIRKLAND & ELLIS LLP
                                                        601 Lexington Avenue
10                                                      New York, NY 10022
                                                        Tel.: (212) 446-4800
11
                                                        JONATHAN H. BLAVIN (State Bar No.
12                                                      230269)
                                                        Jonathan.Blavin@mto.com
13                                                      MUNGER, TOLLES & OLSON LLP
                                                        560 Mission Street, 27th Floor
14                                                      San Francisco, CA 94105
                                                        Tel: (415) 512-4000
15
                                                        VICTORIA A. DEGTYAREVA (State Bar
16                                                      No. 284199)
                                                        Victoria.Degtyareva@mto.com
17                                                      MUNGER, TOLLES & OLSON LLP
                                                        350 South Grand Avenue, 50th Floor
18                                                      Los Angeles, CA 90071
                                                        Tel.: (213) 683-9100
19                                                      Facsimile: (213) 687-3702

20                                                      *Attorneys for Defendant Snap Inc.*

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Christian Pistilli
Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones (*pro hac vice*)
Paul W. Schmidt (*pro hac vice*)
Christian J. Pistilli (*pro hac vice*)
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pajones@cov.com
Email: pschmidt@cov.com
Email: cpistilli@cov.com

*Attorneys for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc.; Facebook Holdings,
LLC; Facebook Operations, LLC; Meta
Payments Inc. f/k/a Facebook Payments Inc.;
Meta Platforms Technologies, LLC f/k/a
Facebook Technologies, LLC; Instagram,
LLC; and Siculus LLC f/k/a Siculus, Inc.*

1

2                                                    /s/ Bailey Langner
                                                     GEOFFREY M. DRAKE, *pro hac vice*
3                                                    gdrake@kslaw.com
                                                     TACARA D. HARRIS, pro hac vice
4                                                    tharris@kslaw.com
                                                     KING & SPALDING LLP
5                                                    1180 Peachtree Street, NE, Suite 1600
                                                     Atlanta, GA 30309
6                                                    Telephone: (404) 572-4600
                                                     Facsimile: (404) 572-5100
7
                                                     DAVID P. MATTERN, *pro hac vice*
8                                                    dmattern@kslaw.com
                                                     KING & SPALDING LLP
9                                                    1700 Pennsylvania Avenue, NW
                                                     Suite 900
10                                                   Washington, D.C. 20006
                                                     Telephone: (202) 737-0500
11                                                   Facsimile: (202) 626-3737

12                                                   BAILEY J. LANGNER (SBN 307753)
                                                     *blangner@kslaw.com*
13                                                   KING & SPALDING LLP
                                                     50 California Street, Suite 3300
14                                                   San Francisco, CA 94111
                                                     Telephone: (415) 318-1200
15                                                   Facsimile: (415) 318-1300

16                                                   *Attorneys for Defendants TikTok Inc.,*
                                                     *ByteDance Inc., ByteDance Ltd., TikTok Ltd.,*
17                                                   *and TikTok, LLC*

18

19

20

21

22

23

24

25

26

27

28

/s/ Ashley W. Hardin

JOSEPH G. PETROSINELLI, *pro hac vice*
jpetrosinelli@wc.com
ASHLEY W. HARDIN, *pro hac vice*
ahardin@wc.com
J. ANDREW KEYES, *pro hac vice*
akeyes@wc.com
NEELUM J. WADHWANI (SBN 247948)
nwadhwani@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel.: (202) 434-5000

*Attorneys for Defendants YouTube, LLC and Google LLC*

1

## ATTESTATION PURSUANT TO CASE MANAGEMENT ORDER NO. 27

2

3

I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

DATED:   December 5, 2025           By:   */s/ Andrew M. Karp*
4                                                Andrew M. Karp
                                                *Attorney for Defendant Snap Inc.*
5

6                                          By:   */s/ Christian J. Pistilli*
                                                Christian J. Pistilli
7                                                *Attorney for Defendants Meta Platforms,*
                                                *Inc. f/k/a Facebook, Inc.; Facebook*
                                                *Holdings, LLC; Facebook Operations,*
8                                                *LLC; Meta Payments Inc. f/k/a Facebook*
                                                *Payments Inc.; Meta Platforms*
9                                                *Technologies, LLC f/k/a Facebook*
                                                *Technologies, LLC; Instagram, LLC; and*
10                                               *Siculus LLC f/k/a Siculus, Inc.*

11                                         By:   */s/ Bailey J. Langner*
                                                Bailey J. Langner
12                                               *Attorney for Defendants TikTok Inc.,*
                                                *ByteDance Inc., ByteDance Ltd., TikTok*
13                                               *Ltd., and TikTok, LLC*

14                                         By:   */s/ Neelum J. Wadhwani*
                                                Neelum J. Wadhwani
15                                               *Attorney for Defendants YouTube, LLC and*
                                                *Google LLC*
16

17

## ATTESTATION PURSUANT TO LOCAL RULE 5-1

18

I, Andrew M. Karp, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence

19   to the filing of this document has been obtained from each signatory hereto.

20

DATED:   December 5, 2025           By:   */s/ Andrew M. Karp*
21                                               Andrew M. Karp

22

23

24

25

26

27

28