# EXHIBIT B

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

*Social Media Cases*
**JCCP5255**
**(Lead Case: 22STCV21355)**

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Dr. Sarah T. Roberts**

Court's Ruling:  The Motion is granted.

     Dr. Sarah T. Roberts (Roberts) is a professor of "Gender Studies, Information Studies, Labor Studies" at UCLA"  (6/13/25 Roberts Rept., at p. 3.)  Roberts has a Ph.D. in "Information Science"; her "dissertation focused on the work and experiences of social media content moderators."  (6/13/25 Roberts Rept., at p. 3.)  Roberts' work has focused on content moderation.  (6/13/25 Roberts Rept., at pp. 3-4.)

     Roberts offers the following four opinions:

> (1) Defendants' platforms are built on a business model that commodifies their users by selling user access to advertisers for purposes of generating advertising revenue. This commodification creates an inherent tension between maintaining advertising revenue through the sale of user attention and behavioral data, and prioritizing user safety and well-being.
> (2) Defendants' social media platforms: Instagram; Facebook; TikTok; Snapchat; and YouTube, are designed to maximize their users' engagement and time spent by each user on the platform. In their decision-making and implementation of those decisions, defendants' have

1

>consistently chosen to prioritize user engagement over user well-being.
>
>(3) Defendants were aware that their platforms were causing harm or creating serious risk of harm to their users. The defendants developed this knowledge through a combination of their own internal research, external research they commissioned, and their review of relevant academic literature.
>
>(4) The defendants misled the public, including the users of their platforms and the parents of minor users, by failing to disclose defendants' knowledge of the risks created by the use of their platforms.

(6/13/25 Roberts Rept., at pp. 7-34.)

Defendants raise three main arguments in support of their request that the court exclude Roberts' testimony. First, Defendants argue that Roberts is unqualified to offer the opinions. Second, Defendants argue that Roberts' testimony would be improper because Roberts merely reviews and summarizes Defendants' internal documents and certain deposition testimony. And third, Defendants argue that any analysis provided by Roberts is unreliable.

Roberts' methodology for offering her opinions was to review and summarize the following "([1]) internal company documents produced by defendants; ([2]) deposition testimony and exhibits; ([3]) court filings and case-related documents in this matter; and ([4]) publicly available information, including testimony from executives, statements made by social media companies to the public or posted on their websites, and news reports and other commentary." (6/13/25 Roberts Rept., at p. 6.) Roberts testified that the following accurately described her methodology in reaching her opinions:

>First, you reviewed the documents that were listed in Exhibit B [of your report] and then second, you -- you analyzed and summarized what the documents show about what defendants knew regarding certain issues relevant to this litigation and why defendants implemented certain policies but failed to communicate the risks posed by their platforms and policies to the public?

(Roberts Dep., at 128:16-22.) This evidence review is informed by Roberts' experience "advising and working with social media companies on a range of issues related to content moderation and public relations." (6/13/25 Roberts

2

Rept., at p. 6.)  Roberts did not conduct any of her own empirical qualitative research with reference to the opinions she offers.

Roberts claims that her summary of the cited evidence goes beyond mere summary because she also provides "an interpretative analysis grounded in the material." (Roberts Dep., at 107:4-11.)  However, as to her second, third and fourth opinions, this "analysis" of the evidence improperly usurps the jury's task of analyzing evidence and coming to a conclusion as to liability.  These opinions are Roberts' conclusions as to Defendants' intent, knowledge, and, ultimately, culpability—conclusions based on her review of certain pieces of evidence that can be presented at trial to the jury.  She does not demonstrate that her work in the field of content moderation (on which she does not opine in this case) or any cited academic literature adds to her analysis or her opinions based on her interpretation of Defendants' documents.[1]  She does not purport to have surveyed the literature regarding how operational features of Defendants' platforms (as opposed to content) affect minors.

As this court has explained when ruling on prior *Sargon* motions, an expert cannot merely offer opinions about Defendants' intent/knowledge based on a review of internal documents.  (See Ruling on Defendants' General Causation Sargon Motions, Sept. 22, 2025, at p. 29.)  "Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury." (*Gold v. Lumber Liquidators, Inc.* (N.D. Cal. 2017) 323 F.R.D. 280, 294.)  The summary and analysis of testimony and internal documents to reach the second, third, and fourth opinions will not properly assist the jury.  These opinions are thus inadmissible at trial.

Roberts' first opinion is about Defendants' business models: i.e., how Defendants turn a profit.  Plaintiffs have failed to show that any expert testimony on this question would actually assist the jury.  As Plaintiffs note, "Defendants do not dispute that they profit from selling access to users and their data." (Pls' Opp., at p. 14.)  Moreover, Plaintiffs have failed to show that Roberts' work and expertise in the field of content moderation relating to social media companies has provided her with special expertise to provide the first opinion.  "[T]he qualifications of an expert must be related to the *particular* subject upon which he is giving expert testimony. Qualifications on related subject matter are insufficient." (*Lowery v. Kindred Healthcare Operating, Inc.* (2020) 49 Cal.App.5th 119, 125, internal citations and

---

[1] For example, in paragraphs 42 and 43 of her Report, she cites academic literature concerning the effects of digital advertising on minors, but she relies on that literature to draw the conclusion (in paragraph 44) that minors may have difficulty even identifying content as advertising.  This analysis does not appear to concern any harmful conduct relied on by Plaintiffs in this litigation.

quotation marks omitted; emphasis added.)  Again, Roberts has not demonstrated that she has surveyed the literature, conducted research or published studies concerning the operational features of Defendants' platforms or when, why and how those features were adopted as part of Defendants' business models.  Roberts' expert testimony on this question is unlikely to aid the jury; Plaintiffs can demonstrate the nature of Defendants' business by relying on the same evidence Roberts relied upon: (1) Defendants' business documents; and (2) percipient witness testimony.


Date: 12/3/2025                                   _____
                                                  The Honorable Caroly Kuhl
                                                  Judge of the Superior Court