# EXHIBIT C

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Dr. John Chandler**

Court's Ruling:  The Motion is granted in part.  Although Dr. Chandler is qualified to, and may at trial, testify about the methodology and conclusions of the *Raffoul* article, he may not testify about his own calculations and conclusions that purport to estimate Defendants' revenues from advertising to youth aged 0-17.  Defendants' Motion is otherwise denied.

      Dr. John Chandler (Chandler) is an Assistant Professor of Data Science at the University of St. Thomas and has an academic background "in marketing, mathematics, and statistics," and professional experience based on 25 years working in digital marketing and analytics, including data-driven measurement of consumer behavior.  (Chandler Rep. pp. 3-6.)  As Plaintiffs put it, Chandler has been retained "to explain to the jury why Defendants had a financial incentive to hook young users onto their platforms, and to explain how that incentive influenced their marketing strategies."  (Pls' Opp., at p. 7.)  Chandler provides an overview of his principal opinions as follows:

> - The market for digital advertising provides a financial incentive for social media platforms to treat users, and particularly children, as sources of revenue, to the point where they are assigned an expected lifetime dollar value. To the Defendants, the attention of children is a resource to be aggregated and sold.

1

- Based on my knowledge of these market factors, along with my review of the scientific literature and documents produced in this case, it is my opinion that the Defendants exploited these market factors by focusing on capturing and holding children's attention on their platforms, to the exclusion of prioritizing children's safety or any other factors. Children were a vehicle to enhance their profits.

(Chandler Rep. p. 1.)

Part of the work Chandler performed in this case involved a calculation to analyze and quantify the amount of advertising revenue attributable to youth users of social media platforms. (Chandler Decl. ¶¶ 10-11.) Chandler has also been retained as an expert witness for the MDL case *State of New Mexico ex rel. Raúl Torrez v. Meta Platforms, Inc.* (New Mexico case), where he "used the same modeling methods to estimate the revenue that only Meta derived from youth on its platforms, during the same time period." (Chandler Decl., ¶ 12.)

Defendants argue that Chandler's testimony should be excluded for three reasons. First, Defendants argue that Chandler's revenue model is inherently unreliable. Second, Defendants argue that Chandler offers opinions on topics for which he lacks any relevant education, knowledge, training, or experience. Third, Defendants take issue with the way in which Chandler relies on Defendants' company documents.

Defendants' first argument addresses the way in which Chandler concluded that Defendants earned around $40 billion from advertising revenue associated with minor users of their platforms between 2020 and 2023. As Plaintiffs point out, Defendants do not question the methodology of the peer-reviewed article, Raffoul, et al., "Social Media Platforms Generate Billions of Dollars in Revenue from U.S. Youth: Findings from a Simulated Revenue Model," PLOS ONE vol.18, no. 12 (2023) (*Raffoul*), that Chandler purported to follow in making his calculations. Rather, Defendants argue that Chandler's application of the model yielded results that are conflicting and unreliable. Defendants detail the fact that the revenue estimates Chandler provided in this litigation differ very substantially from the estimates provided by Chandler in the New Mexico case.

The inconsistencies between Chandler's calculation of revenue estimates for these JCCP proceedings and Chandler's calculation in the New Mexico case are detailed in Defendants' Motion at pages 11-12. In opposing the Motion, Plaintiffs provide an additional Declaration of Dr. Chandler

attempting to address the substantial inconsistencies between the results of Chandler's calculations in this litigation and in the New Mexico case. However, for the reasons explained in Defendants' Reply Brief at p. 7, lines 4-15, the explanations are not sufficient for this court to conclude that Chandler's application of the methodology in the *Raffoul* study is reliable. As Defendants note, a scientifically valid study must yield results that are reproducible. An expert's opinion may not be speculative or conjectural, and an opinion not supported by "a reasoned explanation of why the underlying facts lead to the ultimate conclusion" is inadmissible. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123, internal quotation marks and citation omitted.) Importantly, however, while Chandler may not testify to his own calculations of Defendants' revenue from youth advertising, he is qualified to, and may, testify about the *Raffoul* study.

   Defendants' second main argument for excluding Chandler's testimony is that his "other opinions regarding social media, the design of Defendants' platforms, and their potential impact on adolescent mental health stray far beyond his stated expertise in advertising and should be excluded." (Defs' Mot., at p. 13.) Defendants claim that Chandler improperly offers testimony as to "the alleged harmful effects flowing from [the] features of Defendants' platforms," that "Defendants have adopted 'useless' age verification strategies designed to 'function as a façade to appease regulators,' " and as to the ways in which the platforms can manipulate minor users' psychology to increase engagement. (Defs' Mot., at pp. 13-14.)

   Plaintiffs clarify in their Opposition that "Chandler will not offer general causation opinions about the adequacy of specific platform features," and that he "will not testify that Defendants' age verification features are 'a façade to appease regulators.'" (Pls' Opp., at p. 15.) Other opinions offered by Chandler are related to his academic and professional expertise. Expertise "is relative to the subject, and is not subject to rigid classification according to formal education or certification." (*ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 294, quotation marks and citation omitted.) Defendants' analysis does not acknowledge that Chandler's testimony on techniques of product marketing and consumer behavior is supported by his professional experience in addition to his academic areas of expertise. Insofar as some of Chandler's opinions may stray into opinions requiring expertise about neuroscience, or, more generally, as to whether Defendants' design features can cause harm, those specific objections may be addressed by objecting at trial, given that Chandler's expert opinions on digital marketing tactics are otherwise admissible.

   Defendants' third argument is unpersuasive. As this court has stated before in connection with other experts, Chandler is free to rely on

3

Defendants' internal documents when offering otherwise relevant and admissible expert testimony.  (See, e.g., Ruling on Defendants' General Causation Sargon Motions, Sept. 22, 2025, at p. 42.)  Defendants' claim that Chandler "cherry-picks" Defendants' documents does not justify exclusion of expert testimony.  Any expert analysis in cases like this one involving voluminous internal documents necessarily requires the expert to pick and choose which documents to rely upon.  And Defendants have, in any event, failed to demonstrate that Chandler's selection of certain internal documents rather than others necessarily leads to unreliable expert testimony.  Chandler is not required to rely on internal documents purportedly showing that there are certain benefits to a minor's use of social media.  Nor is Chandler required to rely upon unidentified witness testimony that Defendants believe is more beneficial to their case.  To the extent Chandler, as Defendants warn, simply "regurgitates company documents" at trial, Defendants may state a proper objection when appropriate.

Date: 12/3/2025                     _____
                                    The Honorable Caroly Kuhl
                                    Judge of the Superior Court