# EXHIBIT D

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Brook Istook**

Court's Ruling:  The Motion is granted insofar as Defendants seek to exclude general causation testimony, including testimony about the "risks" created by Defendants' social media platforms.  However, as explained below, Istook can provide expert testimony about actions that can be taken to reduce risks to minors from online experiences and the extent to which Defendants' platforms did or did not take such actions.  Finally, Istook may not provide testimony regarding warnings about ephemeral content or CSAM.

  Brook Istook (Istook) states that she is "a social impact executive, digital safety expert and consultant with over 20 years' experience across non-profit, technology and consulting sectors."  (6/13/2025 Istook Rep., at p. 5.)  Istook's "work over the last 11+ years has been dedicated to working alongside technology companies, advocates, survivors and law enforcement to safeguard children online with a large focus at the intersection of tech and child sexual abuse."  (6/13/2025 Istook Rep., at p. 5.)  Istook details some of her work experience as follows:

> 16. Early in my career, I spent over 12 years in consulting and operations for global tech consulting companies including Accenture and Cognizant, supporting Fortune 500 clients in telecommunications, financial services and entertainment. In 2014 I joined Thorn, a tech nonprofit dedicated to developing technology to defend children from sexual abuse, to build and launch its first

1

software product Spotlight – a human trafficking investigations tool that was used by over 12,000 officers in the US and Canada and was used to identify over 20,000 trafficking victims over 6 years. As a Strategy and Operations leader at Thorn, I built and managed multiple departments including Product Development, People Operations, Research and Programs and was instrumental in creating the 5-year strategic plan that resulted in Thorn winning a $45M TED Audacious award in 2019.

17. From 2019 through early 2023, I was the Vice President of Youth and Communities and led the launch of Thorn's youth-centered research and prevention programming focused on combatting internet-enabled abuse by building tools to educate and empower children and families to navigate the digital world safely. With multiple viral videos, Thorn's programming presented educational and prevention messaging to youth and parents on social media over 300M times with over 170M video views across TikTok, Instagram, Snap, and YouTube, and is featured in Apple's Communications Safety Feature for families.

18. In 2023, I joined the Heat Initiative as Senior Advisor and then Chief Impact Officer to lead the development of Heat's research, legal, impact evaluation and strategic initiatives. Heat Initiative is an advocacy organization focused on making online environments safer for kids by putting pressure on companies that enable and profit from child sexual abuse. My work – which covers a range of online harms to children (suicide, body image, addiction, choking challenges, death by fentanyl sold on social platforms) – also includes research initiatives and efforts to empower parents of children who have suffered from online harms to take action. I am also Senior Impact Advisor for AngelQ, an AI start-up creating an AI-powered, kid-first browser that enables kids to safely explore the online world through age-appropriate content and experiences. In that role, and as described in greater detail below, I work to ensure AngelQ is safe for children, mitigating the risk of a range of harms. My work with the Heat Initiative and AngelQ has deepened my experience with addressing other areas of harm including problematic use/addiction, eating disorders, harmful online challenges and suicide. I also serve on the board of Empowered

2

> Network focused on empowering survivors of trafficking to reach financial stability and freedom.

(6/13/2025 Istook Rep., at pp. 7-8.)

Istook offers the following eight opinions:

> 1. Opinion 1. Children and adolescents face material risks of sexual harm online, including grooming, sextortion, and minor sexualization.
> 2. Opinion 2. As currently designed, the defendants' social media platforms facilitate these sexual harms to children at such a widespread scale that they have become almost normalized.
> 3. Opinion 3. The defendants have also implemented a wide range of features designed to maximize engagement that present significant risks of harm to children, including addiction, anxiety, depression, body image issues, eating disorders, and self-harm. These include features like infinite scroll, auto-play, excessive notifications, streaks and reward loops, aggressive algorithmic feeds and beauty filters.
> 4. Opinion 4. When designing an online platform that serves millions of children, it is critical that safety and well-being be integrated into the company's core product objectives and metrics frameworks, through key performance indicators (KPIs) and goals that are treated on par with growth and engagement KPIs and goals. The defendants' core product objectives and metrics frameworks, in contrast, have focused almost exclusively on growth and engagement.
> 5. Opinion 5. Tools and means exist to address and prevent the harms that children experience on the defendants' platforms, including (among other things) disabling addictive features and implementing strong default privacy settings. Any social media platform made available to children should also implement effective and accessible end user reporting because these tools empower young users to quickly flag harmful experiences online, enabling platforms to respond promptly and reduce the risk of ongoing harm.
> 6. Opinion 6.The defendants' risk-enhancing features are inconsistent with numerous, widely accepted safety standards and best practices.

3

>   7. Opinion 7. Parents are unaware of the scope and scale of the risks to their children on defendants' social media platforms, and they lack the information, tools, and means to keep their children safe while using the platforms. Parents have a difficult time trying to keep their kids safe within a multi-billion-dollar system that is incentivized to work against them and exploit their children. They are losing and getting blamed for it.
>   8. Opinion 8. The defendants failed to warn parents and the public of the scope and nature of online sexual harm children experience on their platforms and the risks their platforms pose to the millions of children using them.

(6/13/2025 Istook Rep., at pp. 4-5.)

Defendants raise three arguments in support of their request that Istook's testimony be excluded from trial.  First, Defendants argue that Istook, who has not been retained as a causation expert, should not be able to opine that Defendants' platforms cause or facilitate harms.  Second, Defendants argue that Istook's "risk" opinions are opinions regarding causation, and are based on an unreliable methodology.  Third, Defendants argue that, in light of past orders by the court and the application of Section 230, Istook's opinions that Defendnats failed to moderate, disclose, or warn of risks of ephemeral content, CSAM and third-party content are irrelevant to Plaintiffs' claims.

Defendants are correct insofar as they argue that Istook cannot offer "general causation" opinions.  Plaintiffs admit that "Istook is not a general causation expert." (Pls Opp., at p. 11.)  At no point do Plaintiffs dispute Defendants' arguments for why Istook may not provide general causation opinions at trial.  However, there are instances in which Istook has crossed the line into offering general causation testimony.  For example, Opinion 2 is clearly a general causation opinion: "As currently designed, the defendants' social media platforms facilitate these sexual harms to children at such a widespread scale that they have become almost normalized." (See also 6/13/2025 Istook Rep., at p. 6 [stating that children "are currently experiencing" harms "on the defendants' platforms].)  Istook may not offer these types of general causation opinions at trial.  Opinions 3, 6 and 8 also are opinions about the risks of Defendants' platforms, expressed in a manner that implies harm is or can be caused by Defendants' actions.

However, Defendants have failed to show that all of Istook's proffered testimony must be taken to be general causation testimony.  Given her experience, Istook is an expert as to how an institution or business

4

privileging the well-being and safety of minors would design its website/platform.  Istook may therefore offer testimony on the question of whether Defendants designed their platforms in a way that, according to an expert like Istook, would promote the online safety of minors.  Opinions 4, 5, and 7 are opinions about design safety and generally recognized standards of care.  Opinion 5, as stated, does appear to imply that children experience harm on Defendants' social media sites, but, if that phrase is deleted, Opinion 5 expresses an admissible opinion regarding allegedly reasonable safety features that should be used by internet service providers.  To offer such opinions, Istook need not determine whether Defendants' platforms actually ended up causing minors' relevant harms.  Put another way, Istook's testimony goes to the question of whether the design of the platforms (and the failure to warn thereof) met a reasonable standard of care—not to the question of whether any minors were actually harmed by the platforms.  It is thus appropriate for Istook to offer opinions such as the following: "The defendants' risk-enhancing features are inconsistent with numerous, widely accepted safety standards and best practices."

Similarly, Istook may provide testimony as to the "risks" involved in certain design features of a website or platform, as long as such testimony does not cross into general causation testimony.  Such testimony is best viewed as based on Istook's past work and research (especially work and research carried out with Thorn) regarding the dangers to minors associated with online platforms.  An expert with extensive experience in online safety is capable of properly reviewing Defendants' platforms themselves and determining whether those platforms are designed in a way that prioritizes minors' safety or instead creates known risks for minor users.  Defendants' argument that the methodology employed by Istook is unreliable is unpersuasive.  Defendants can attempt to undermine the testimony at trial by criticizing Istook's methods.  Again, such testimony is proper to the extent it is focused on *the design* of a platform, and not on the *actual harm* that ultimately resulted from use of that platform.

As for Defendants' third argument, Plaintiffs do not dispute that Section 230 bars Istook from testifying about warnings about CSAM or ephemeral content.  Such testimony is inadmissible at trial.  But Istook's testimony regarding warnings about potential harm from third parties is not categorically improper.  As Plaintiffs point out, this court has determined that Defendants might be liable for features that recommended that minor users become "friends" with adults.  Istook may provide testimony as to such features in a case in which the Plaintiff allegedly has been harmed by such recommendations.

Date: 12/3/2025                                              _____