# EXHIBIT F

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**
**Date of Hearing: November 10, 2025**

**Plaintiffs' Motion to Exclude the Opinions of Dr. Dzmitry Asinski**

Court's Ruling:  The Motion is denied.


Dr. Dzmitry Asinski (Asinski) has a Ph.D in economics and is "an Executive Vice President of Compass Lexecon, a leading economics consulting firm … ."  (Moore Asinski Rep., at p. 1.)  Asinski summarizes his experience as follows:

> 3. Throughout my nearly two decade-long career, I have performed economic, econometric, and statistical analyses relating to damages, class certification, mergers, price fixing, intellectual property, breach of contract, and the evaluation of statistical methods. My work spans numerous industries, including technology, healthcare, life sciences, telecommunications, media, automotive, financial services, transportation, and others. Throughout my career, I have served as a consulting and testifying expert in numerous litigations for both plaintiffs and defendants.
>
> 4. I have extensive experience in statistical and econometric analysis of data. In my work, I routinely analyze, interpret, and apply statistical techniques to large and complex data sets, including data sets generated by companies' internal computer systems. I have previously worked with and analyzed very large and complex databases produced by technology companies. I routinely

1

use and have expertise in numerous programming languages and statistical software tools.

(Moore Asinski Rep., at p. 1.)

As Plaintiffs explain, Asinski was retained "to calculate various metrics showing how much Plaintiffs Heaven Moore, K.G.M., and R.K.C. used Defendants' platforms." (Pls' Mot., at p. 1.) Asinski used Defendants' data to calculate Plaintiffs' usage; Asinski then compared his calculated usage with Plaintiffs' claims about how often they used Defendants' platforms. For example, Asinski calculates that, "*[d]uring the time period for which data are available*, the data show that Heaven Moore spent on average 106 minutes per day on Instagram, 9.5 minutes on TikTok, and nine minutes on Facebook." (Moore Asinski Rep., at p. 3, emphasis added.) Asinski then concludes that "[t]he average daily time spent on Facebook and Instagram reported by Heaven Moore in [her Plaintiff Fact Sheet (PFS)] is substantially higher than the time spent observed in the Defendants' data, and that "[t]he average daily time spent on TikTok reported by Heaven Moore in the PFS is similar to the time spent observed in the Defendants' data." (Moore Asinski Rep., at p. 4.)

Plaintiffs move to exclude Asinski's testimony, arguing:

> Asinski's calculations and comparisons … are inadmissible under *Sargon* because they are unreliable. The data sets that he used for his calculations are incomplete because they exclude years of Plaintiffs' usage, and because Defendants have chosen not to count certain user activity on their platforms. Asinski's comparisons between Defendants' data and what Plaintiffs have reported are not helpful to the jury because he attempts to compare usage information from two different time frames, and because his conclusion that Defendants' data shows more usage than Plaintiffs reported is an observation that jurors can make for themselves.
> 
> Asinski's conclusions also raise Section 352 concerns. It would be misleading for the jury to hear that Plaintiffs reported, in some instances, significantly higher levels of usage than what Defendants' data shows—when what Plaintiffs were reporting on is different than what the data was addressing. In these upcoming trials about Plaintiffs' addiction to these platforms, how much and how often Plaintiffs were using them will be a central question. Asinski's conclusions would have the appearance of greater

2

>       force, cloaked in data, and thus they would mislead the jury
>       into believing that Plaintiffs' usage levels were lower than
>       they actually were, and would mislead the jury into believing
>       that Plaintiffs were dishonest when they reported their
>       addiction.

(Pls' Mot., at p. 1.)

Plaintiffs' argument regarding the reliability of Asinski's testimony is premised on Plaintiffs' factual claim that Defendants' underlying data is incomplete and/or inaccurate. But the fact and extent of any inaccuracy in Defendants' data is a question for the jury to decide, as this court has stated elsewhere. Asinski makes clear in his reports that his opinions are based on the data provided to him by Defendants, and that this data has certain limitations. (See, e.g., Moore Asinski Rep., at p.11 [explaining the time limitations of Meta's provided data].) And Plaintiffs fail to show that an expert witness must be prevented from providing expert analysis whenever the underlying data he uses is limited. The factual dispute between the parties as to whether Defendants' underlying data is accurate or complete is one that must be decided by the jury. Indeed, Plaintiffs have proffered expert testimony to discuss the inaccuracy of Defendants' data. If Plaintiffs can convince the jury that Defendants' data is inaccurate and incomplete, then they will be able to argue that any expert testimony premised on that data is also inaccurate. (See, e.g., *Collins v. Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1513 [stating that the "limitations" of data relied upon by an expert go "to the weight of the evidence, not its admissibility," and that such limitations can be "explored on cross-examination"].)

Plaintiffs' separate argument that "Defendants' data does not support Asinski's opinions" is, in reality, a restatement of the argument that Defendants' data is too limited to serve as the basis of expert opinion. Insofar as Plaintiffs contend that Asinski has misrepresented that the data he has analyzed for some time periods is automatically applicable to other time periods, his reports do not support this conclusion. Where Askinski has represented what Defendants' data shows regarding Plaintiffs' time spent on a platform, he identifies the dates of the time range for which Defendants have data. (See, e.g., Rep. re R.K.C., Ex. C to the Lopez Decl., at p. 15, Table 1; Rep. re Heaven Moore, Ex. A to the Lopez Decl., at p. 20, Table 4.)

Plaintiffs argue that Asinski's comparison of his usage calculations with Plaintiffs' claimed usage should be excluded because it is simply a lay opinion that is not "sufficiently beyond common experience." (See Pls' Mot., at pp. 5-6.) But Asinski relies on his expertise to calculate whether Defendants' data shows that Plaintiffs used Defendants' platforms less than

3

they claim to have done in this litigation. That the final step of Asinski's analysis involves a simple comparison of Asinski's calculations based on Defendants' data with Asinski's calculations based on Plaintiffs' factual claims, does not mean that Asinski must offer a truncated version of his own expert analysis. Asinski may opine as to the ultimate conclusion he reached based on his expert analysis: namely, that Defendants' data show substantially less usage of the platforms than is claimed by Plaintiffs.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Plaintiffs' final argument is that the likelihood of Asinski's testimony misleading the jury outweighs its probative value. When making this argument, Plaintiffs admit that "[t]he amount of time Plaintiffs spent on Defendants' platforms, and the frequency with which they used the apps, goes to the heart of their addiction claims." (Pls' Mot., at p. 7.) Asinski's testimony about Plaintiffs' usage is thus highly relevant at trial. Weighed against this high probative value, is an unlikelihood of jury confusion. The jury is not, as Plaintiffs claim, "likely to be misled as to the true usage story." (Pls' Opp., at p. 7.) The jury can determine based on the evidence and argument whether Defendants' data is accurate, and what weight to accord expert witness testimony purporting to analyze that data.