# EXHIBIT G

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Robert W. Johnson**

Courts Ruling:  The Motion is denied.

     Plaintiffs offer the testimony of Robert W. Johnson (Johnson) to support their request for punitive damages.  Specifically, Johnson is set to testify as to Defendants' financial condition.  Johnson has served for many years as a litigation expert witness, providing his opinions as to damage calculations and as to the financial condition of companies.

     Defendants move to exclude Johnson's testimony as to Defendants' "financial condition" and "ability to pay."  Defendants raise two main arguments.  First, Defendants claim that the testimony is inadmissible because Johnson's "financial condition opinions merely recite numbers from publicly available documents the jury could read themselves."  (Defs' Mot., at p. 5.)  Second, Defendants argue that the ability to pay opinions "are speculative and untethered to any relevant baseline."  (Defs' Mot., at p. 5.)

     Defendants' first general argument must be rejected.  The argument is mostly based on Defendants' position that Johnson's determination of Defendants' financial condition would not assist the jury; Defendants are incorrect.

     "Three primary considerations govern the amount of punitive damages: (1) the reprehensibility of the defendant's conduct; (2) the injury

1

suffered by the victims; and (3) the wealth of the defendant. [Citation.] As to the wealth of the defendant, the function of deterrence will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort; conversely, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." [Citation.] [¶] To enable an appellate court to review whether punitive damages are excessive, *the record must contain evidence of the defendant's financial condition*." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 620, internal citations and quotation marks omitted; emphasis added.)  In some cases, the failure to present expert testimony estimating a defendant's financial condition can lead to a reversal of a punitive damages award. (*Kaffaga v. Estate of Steinbeck* (9th Cir. 2019) 938 F.3d 1006, 1019.)

In *Bankhead v. ArvinMeritor, Inc.* (2012) 205 Cal.App.4th 68 (*Bankhead*), the First District relied on expert testimony regarding "financial condition" by Johnson to reject the defendant's challenge to a punitive damages award.  Johnson's analysis of financial condition in *Bankhead* does not meaningfully differ from the analysis he has applied here to measure Defendants' financial condition:

> In evaluating [the defendant's] economic status, Johnson reviewed publicly available documents filed with the Securities and Exchange Commission, including ArvinMeritor's 2008, 2009, and 2010 annual 10–K reports; its adjusted 2009 10–K reports; a 2010 proxy statement sent to shareholders; and data regarding its market capitalization. These are "generally accepted financial documents used and relied upon by economists or experts in finance to evaluate a company."
> Johnson testified that between 2006 and 2010, [the defendant] attained over $3 billion in sales revenue each year, and an average annual cashflow profit of $111 million. [The defendant's] lowest performing year during that period was 2009, but even in that year, it had $95 million in cash available to it. In 2010, [the defendant's] annual sales revenues reached $3.59 billion; its annual report indicated it had earned $211 million in cash-flow profit; and it reported to its shareholders that it had earned a $12 million net profit—a conservative figure, as Johnson explained, because companies seek to reduce their reported net income, using legally available deductions such as depreciation, in order to minimize their tax liability. At the end of 2010, [the defendant] had on hand some $343

2

> million in cash and cash equivalents, and its outstanding stock had a total market value of almost $2 billion.
>
> [The defendant's] chief executive officer, who also served as its board chair and corporate president, earned over $7.6 million in 2010, and stood to receive between $19.9 million and $26.9 million upon leaving the company. Johnson explained that a company's willingness and ability to pay sums of this magnitude to its chief executive is an indicator of financial strength. Given all of these facts, Johnson opined that [the defendant] is financially sound.

(*Id.* at pp. 74-75, internal footnotes omitted.)

Defendants do not cite authority suggesting that it is improper for an expert to testify on the financial condition of a company. This court need not assume that jurors will not be aided by Johnson's organization and analysis of financial information with the average juror is often not conversant. Defendants rely on caselaw holding that, "if an expert is merely parroting hearsay information without understanding the information or otherwise providing explanation to 'assist the trier of fact,' the so-called expert can be prohibited from testifying altogether." (*People v. Veamatahau* (2020) 9 Cal.5th 16, 34.) But Johnson is not "merely parroting hearsay information." Defendants have not shown that their underlying financial data is inadmissible hearsay. Nor have they shown that the organization and analysis of such information would be unable to assist the jurors in determining how much punitive damages could properly be awarded against Defendants.

Defendants identify a handful of purported errors included in some of Johnson's calculations. These calculations do not affect the entirety of Johnson's analysis. And such purported miscalculations do not justify outright exclusion of Johnson's testimony, though they may be raised during cross-examination to challenge the credibility of Johnson's opinions before the jury.

Defendants' second main argument is that Johnson's opinion regarding Defendants' "ability to pay" a punitive damages award is inadmissible. Defendants make much of their deposition questioning of Johnson in which he did not state an upper limit of a particular Defendant's "ability to pay." Plaintiffs correctly explain that Johnson's testimony provides the jury with a greater understanding of a Defendant's financial condition so that the jury can assess whether a punitive damages award would be excessive. "[A] punitive damages award is excessive if it is disproportionate to the defendant's ability to pay." (*Adams v. Murakami* (1991) 54 Cal.3d 105,

112.)  As the "Directions for Use" for CACI Jury Instruction No. 3945 point out, a jury ordinarily is not instructed that "[a]ny award you impose may not exceed [*name of defendant*]'s ability to pay," unless "the defendant has presented relevant evidence regarding that issue."  (CACI, Vol. 2, at p. 962.)  Thus, Johnson would be expected to address a *Defendant's* hypothetical argument that it was unable to pay an amount of punitive damages in excess of a certain sum.  In the event such an argument were made by a Defendant in the punitive damages phase of the trial, Johnson's expertise and his analysis of the various elements of the Defendant's financial position would assist a jury in assessing that Defendant's argument.

Date: 12/3/2025                              _____
                                             The Honorable Caroly Kuhl
                                             Judge of the Superior Court