# EXHIBIT I

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES**

*Social Media Cases*
**JCCP5255
(Lead Case: 22STCV21355)**

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Dr. Seth Noar**

Court's Ruling:  The court denies the Motion.

    Dr. Seth Noar (Noar) is a professor of "Health Communication" who has "studied the effects of health messages for more than 20 years." (Noar Rep., at p. 4.)  Noar is among the most-cited academics in the world.  (Noar Rep., at p. 10.)  Defendants do not attack Noar's expertise in the field of providing health warnings regarding the health risks of products.  Noar has relied on his substantial expertise and his review of Defendants' documents and the relevant scientific literature to reach conclusions as to warnings regarding Defendants' platforms.

    Noar notes that "other experts have opined that use of social media platforms, including specific features, can cause adolescent addiction and problematic use; negative appearance comparisons and body image dissatisfaction; eating disorders; depression; anxiety; self-harm, suicidal ideation, and suicide; and child sexual exploitation and abuse, including exposure to child sexual abuse material … ." (Noar Rep., at p. 4.)  Noar opines that, given this expert testimony, Defendants "should have but did not provide to adolescent users and their parents effective warnings about these harms that can result from using their platforms." (Noar Rep., at p. 4.)  Noar states:

> 5. In my core opinion, the Social Media Defendants should have followed well-established principles and

1

standards for providing effective warnings on these harms, which include large, prominently placed warnings; rotating messages communicating specific harms of social media use; and imagery to most effectively communicate these harms. The Social Media Defendants should have pre-tested the warnings—and optimized these warnings for maximum engagement with users as the companies routinely do in other aspects of their business—and implemented them on their platforms.

    6. Specifically, the Social Media Defendants should have followed these well-established principles and standards for effective warnings:

    a. The Social Media Defendants should have implemented large, prominently placed warnings to inform adolescent users about the harms of using their platforms.

    b. The Social Media Defendants should have used rotating messages communicating to adolescent users the specific harms of social media use.

    c. The Social Media Defendants should have used imagery to better communicate to adolescent users the harms of using their platforms.

    d. The Social Media Defendants should have pre-tested the warnings before implementation, on the platforms that they alone control, and should have optimized those warnings for maximum engagement with adolescent users, as they routinely do in other aspects of their business.

    e. The Social Media Defendants should have designed and implemented a warnings strategy for parents.

    f. If the Social Media Defendants had developed, pretested, implemented, and monitored a warnings strategy that was based on well-established principles and standards, it would have been highly effective and many of the harms that children and adolescents have suffered as a result of using Defendants' social media platforms would have been reduced or avoided.

(Noar Rep., at p. 5, internal bolded typeface omitted.)

    Noar puts forward 13 separate opinions. The first through seventh opinions consist of Noar's view that Defendants did not provide effective warnings to warn adolescent users and their parents about the risks of using the platforms. The eighth through twelfth opinions concern general

2

instructions for how Noar believes Defendants should have warned users and their parents. The thirteenth opinion is that, if Defendants had followed Noar's proffered instructions for crafting and implementing proper warnings, such warnings would have been "highly effective" and many of the harms suffered by minors as a result of using Defendants' platforms would have been reduced or avoided.

Defendants now move to exclude Noar's testimony at trial.

Defendants argue first that Noar's eighth through thirteenth opinions are not based on reliable methodology. Defendants fault Noar for failing "to propose language or imagery for all but one category of warnings that he claims Defendants should have provided." (Def's Mot., at p. 11.) This argument is not a basis for excluding Noar's opinions. Noar's report includes examples for his opinions as to how to properly create and implement warnings. For example, Noar opines that Defendants should have used "a series of rotating warning statements, such as [inter alia]: … WARNING: Use of this social media platform can lead to addiction or problematic use. To reduce your risk, limit your usage." (Noar Rep., at p. 65, internal italics omitted.) More importantly, in order to give testimony regarding what Defendants *should have done* if they wanted to issue effective warnings about the alleged dangers of their platforms, Noar is not required to draft a proposed alternative warning. (See, e.g., *Thierfelder v. Virco, Inc. (*W.D. Mo. 2007) 502 F.Supp.2d 1025, 1032-1033.) Noar may offer testimony as to the appropriate general practices for creating and implementing effective warnings.

Defendants next contend that Opinion No. 9 is inadmissible because Noar failed to test his proposed warnings. Defendants rely on Noar's own testimony stating that any warnings should be pre-tested before determining effectiveness. For example, Noar has stated that "[o]nce text statements were drafted [by Defendants], qualitative approaches such as focus groups should have been used to understand how youth responded to the draft warnings (i.e., text statements and accompanying imagery)." (Noar Rep., at p. 68.) Defendants argue that "Noar cannot reliably opine that his proposed warnings would be effective or reduce the purported harms of the platforms without conducting the tests that he asserts would be necessary to determine whether consumers would understand the warnings." (Defs' Mot., at pp. 14-15.) Testing by Noar was not required in order to offer examples of the types of draft warning language that should have been created by Defendants as part of the overall process of creating and implementing effective warnings as a more general matter. Opinions regarding the appropriate *process* are admissible.

3

Defendants also argue that Noar's Opinion No. 13 should be precluded because Noar "makes the unsupported leap from the untested warnings strategy he lays out in his report to his final opinion that such a strategy would be effective." (Defs' Mot., at p. 12.) However, based on Noar's extensive experience and the testing of his recommended warning methodologies in other contexts, he has a reasonable basis on which to conclude that implementing his recommended warning protocol – including the size, placement, content, variation, repetition and imagery he advises as well as testing the impact of warnings on actual users – would result in effective warnings that would reduce the risk of harm to users.

Defendants' third main argument is that Noar has failed to conduct a platform-specific assessment. Even assuming Defendants are correct as a factual matter, any purported failure to adequately provide tailored opinions as to each of Defendants' platforms is more properly viewed as a question of whether Noar's testimony, viewed alone, is sufficient evidence to prove any one Defendant's liability for failure to warn claims. The issue is one for the jury; it does not justify exclusion of testimony under *Sargon*. In any event, Noar has reviewed evidence as to Defendants' platforms and determined that each platform lacked proper warnings. Defendants claim that "providing a single set of warnings that should apply across all the platforms regardless of their differences further undermines [Noar's] claims regarding warning effectiveness." (Defs' Mot., at p. 17.) But as Defendants themselves point out in their Motion, Noar does not provide a concrete set of well-defined warnings that should have been used by each Defendant; rather, Noar provides guidance on the procedure for creating proper warnings and determines that no Defendant followed such a procedure. And Defendants fail to show that any differences in the nature of their platforms necessarily justify completely different strategies as to providing warnings regarding those platforms.

Defendants' fourth main argument is that Noar's opinions are improper as to YouTube. Noar's Report refers to deposition testimony on which he relied suggesting that YouTube did not warn parents that the volume of YouTube videos their children watched could impact them. (Rep. ¶ 192.) Noar admitted at his deposition that he did not do any specific analysis of YouTube's sensitive *content* warnings. (Noar Dep., at 313:3—314:4.) But his opinion regarding YouTube centered on addressing warning about features and problematic use. (Rep. ¶ 194.) Defendants may cross examine Noar regarding his lack of familiarity with YouTube warnings regarding suicide and self-harm. (Noar Dep., at 319:14-24.)

Defendants' fifth main argument is that Noar's opinions as to Snapchat must be excluded. Defendants' argument is based on the fact that Noar

4

stated that, "[a]s an expert in this case, [he] did not look at the Snapchat app to determine what warnings are currently available on it for purposes of [his] analysis." (Noar Dep., at 357:9-15.) However, Noar made clear that he relied on relevant information, including Snap's internal documents obtained in this action, to assess Snapchat's warnings. (See, e.g., Noar Dep. at 356:7—357:6.) Defendants' argument as to Snapchat must therefore be rejected.

Defendants' sixth main argument is that Noar's Opinions Nos. 1 through 7 are inappropriate because they rely on third-party content that cannot form the basis of Defendants' liability due to Section 230 immunity. For example, Defendants note that Opinion No. 7 faults Defendants for failing to warn about the risk of child sexual exploitation and abuse, including exposure to CSAM. This argument does not justify exclusion of Noar's testimony. Noar provides substantial testimony regarding the need for warnings as to multiple causes of harm on Defendants' platforms, including harm arising from design features. Insofar as Noar's testimony at trial suggests a warning regarding the presence of particular content, such as CSAM, on a Defendant's platform, that particular testimony would be objectionable and will be excluded at trial.

Defendants' final argument is that Noar should be prevented from providing a "regurgitation" of Defendants' company documents. This court has repeatedly rejected this argument when made as to other experts. Noar is of course permitted to rely on Defendants' documents when determining whether Defendants issued adequate warnings or followed proper procedures for issuing adequate warnings. If Noar engages in improper "regurgitation" of Defendnats' documents at trial, Defendants may state appropriate objections.

Date: 12/3/2025

_____
The Honorable Caroly Kuhl
Judge of the Superior Court

5