# EXHIBIT K

FILED
Superior Court of California
County of Los Angeles
12/03/2025
David W. Slayton, Executive Officer / Clerk of Court
By: _____ A. Rosas _____ Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
**JCCP5255**
**(Lead Case: 22STCV21355)**

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**
**Date of Hearing: November 10, 2025**

**Defendants' Motion to Exclude the Expert Testimony of Dr. Kara Bagot** (Specific Causation as to R.K.C.)

Court's Ruling:  The court denies the Motion.

    Dr. Kara Bagot (Bagot) states that she is a board-certified psychiatrist. This court has already concluded that Bagot may provide expert testimony on the question of whether the design features of Defendants' platforms can cause the types of harms allegedly suffered by Plaintiffs here.

    Bagot has also offered specific causation opinions.  Bagot has concluded that R.K.C. has the following diagnoses:

    1. F81.9 Learning Disability
    2. F50.81 Binge Eating Disorder
    3. F41.1 Generalized Anxiety Disorder
    4. F33.2 Major Depressive Disorder, severe
    5. F98.8 Other Specified Behavioral and Emotional Disorder – Social Media Addiction
    6. F89 Unspecified Neurodevelopmental Disorder

(R.K.C. Bagot Rep., ¶ 4.)  Bagot concludes that "R.K.C. exhibits cognitive and behavioral symptoms consistent with problematic social media use and social media addiction, particularly with respect to Facebook, Instagram, Snapchat, YouTube and TikTok." (R.K.C. Bagot Rep., ¶ 2.)  Bagot concludes that "R.K.C.'s problematic social media use causally contributed to a

substantial degree to his diagnoses of Major Depressive Disorder, Generalized Anxiety Disorder, Binge Eating Disorder and Social Media Addiction." (R.K.C. Bagot Rep., ¶ 4.) Bagot concludes that, "R.K.C.'s problematic social media use exacerbated and worsened his general mental health and his pre-existing neurodevelopmental vulnerabilities and general mental health and diagnoses of Binge Eating Disorder, Generalized Anxiety Disorder and Major Depressive Disorder (including disrupted sleep)." (R.K.C. Bagot Rep., ¶ 5.) Bagot then concludes:

> Based on my extensive research on social media platforms as detailed in my General Causation report, I conclude that specific design features of the social media platforms used by R.K.C. substantially contributed to his problematic social media use and resulting mental health conditions. These features include:
> a. The use of intermittent variable rewards that create addiction-like neural activation patterns, similar to those seen in substance use disorders, affecting R.K.C.'s reward pathways and contributing to his compulsive use;
> b. Platform design features that maximize engagement through mechanisms such as fear of missing out, push notifications, infinite scroll, autoplay, and ephemeral content that made it difficult for KGM to disengage from platforms;
> c. Social validation mechanisms including "likes," followers, and public metrics embedded in platform architecture that adversely affected R.K.C.'s self-esteem and body image;
> d. Appearance-focused features including filters that contributed to R.K.C.'s body image disturbances and compulsive usage patterns.

(R.K.C. Bagot Rep., ¶ 6.)

Defendants move to exclude Bagot's specific causation opinions as to R.K.C.

First, Defendants argue that all of Bagot's opinions must be excluded because the basis for her opinions is a "black box." This argument is based on Defendants' claim that Bagot's "opinions about Defendants' platforms are based almost exclusively upon a few hours of interviews she apparently conducted with RKC and his father after this litigation was filed," but that Bagot "never recorded those interviews, and there is no documentation of the questions or responses." (Defs' Mot., at p. 1.) Defendants' first

2

argument fails to show that it is improper or unscientific in normal clinical practice for a psychiatrist to (1) rely on self-reported information from the patient and his family members, or (2) gather information in an interview that is not transcribed by the psychologist.  Bagot's analysis is admissible if she employed "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 772, internal citations and quotation marks omitted.)  The evidence before the court suggests that Bagot's decision to base a diagnosis on unrecorded interviews with a patient and a patient's family member accords with normal practice in the field of clinical psychiatry.  Defendants have been able to question Bagot at deposition as to the way she conducted the interviews.  Bagot's interview notes also serve as a guide to the information obtained and the context in which it was communicated.  The failure to transcribe the interviews does not justify exclusion of Bagot's opinions.

      Defendants' second main argument is that Bagot's diagnosis of "social media addiction" lacks "diagnostic validity and is not based on a proper methodology.  This argument is based on two claims: (1) social media addiction is not a recognized or codified disorder; and (2) Bagot failed to rely on Defendants' usage data for R.K.C.  But Defendants fail to show either that it is scientifically unreliable for a psychiatrist to diagnose conditions not listed in the DSM-5, or that a psychiatrist is required to rely on a company's usage data before making a diagnosis of a patient.  This court has already addressed and rejected the argument that the absence of the term "social media addiction" in the DSM-5 renders any diagnosis of that condition inadmissible.  (Ruling on Defendants' General Causation *Sargon* Motions, Sept. 22, 2025, at p. 25.)  As for Bagot's failure to rely on Defendants' data, the accuracy and completeness of Defendants' data is a disputed question that must be resolved by the jury at trial.  General practice in Bagot's field does not preclude her from relying on factual claims made by R.K.C. and his father about R.K.C.'s social media usage when diagnosing social media addiction.  If Defendants can demonstrate to the jury that their data is accurate and complete, then they may be able to effectively undermine Bagot's testimony in front of the jury.

      Defendants' third main argument is that Bagot's testimony is inadmissible because Bagot fails to disentangle the impact of content from design features.  Defendants claim that Bagot also concluded that harm arose from bullying on social media.  Defendants are incorrect to the extent they suggest that Bagot has failed to conclude that *design features* caused R.K.C.'s harms.  For example, Bagot has concluded that "[t]he platform's engagement-maximizing features drove [R.K.C.'s] increasing usage patterns," that R.K.C. became obsessed with the platforms' notification

3

features, that notification features and the "like" feature caused R.K.C. to lose focus during school hours, that R.K.C. spent his free time in school "engaging in endless scrolling." (R.K.C. Bagot Rep., ¶¶ 51, 58, 64, 94, 109.) Bagot concludes as follows in her R.K.C. Report:

> The platform design features that substantially caused R.K.C.'s conditions include a social media environment that created compulsive unsafe patterns, intermittent variable reward schedules that activated addiction-like neural pathways, infinite scroll and auto-play features that prevented natural stopping points, push notifications that created "fear of missing out" (FOMO) and interrupted sleep, social validation mechanisms that impacted his self-esteem and body image, and maximizing features that exploited his adolescent neurobiological vulnerabilities.

(R.K.C. Bagot Rep., ¶ 130.) The fact that Bagot may have also concluded that third-party content contributed to some of R.K.C.'s harm tends to support the reliability of her opinions (i.e., Bagot did not simply ignore other factors). As this court has repeatedly stated, the fact that third-party content is *also* a cause of harm does not mean that Defendants are entitled to Section 230 immunity for harm that was also substantially caused by design features. If Defendants believe that Bagot's testimony tends to show that harm was caused by third-party content, they will be able make that argument to the jury.

Defendants' fourth main argument is that Bagot's testimony is based on her "subjective say-so" because: (1) Bagot has relied on R.K.C.'s and R.K.C.'s father's recounting of R.K.C.'s social media usage instead of on more "quantitative" sources of information; (2) Bagot "ignores" R.K.C.'s medical and academic records; (3) Bagot's method for determining that a given factor is "significant" to causing mental harms is too subjective; and (4) Bagot's opinions shifted between her report and her deposition because she claimed in her report to have applied a "differential diagnostic approach," but stated in her deposition that she did not apply this type of methodology. The first of these arguments is a re-statement of prior arguments that this court has discussed above. This first argument also wrongly assumes that Bagot, who may give expert testimony as to how the design features of Defendants' platforms are capable of causing mental health harms, is entirely ignorant of how those platforms functioned when used by R.K.C. The second argument is incorrect on the facts: Bagot did review medical and academic records. (See, e.g., 8/19/2025 Bagot Depo. at 372:14-24.) That Defendants believe that those records should have led Bagot to draw different conclusions does not justify exclusion of Bagot's

4

testimony.  With their third argument, Defendants fail to show that Bagot's causation opinions fail to accord with the way in which a psychiatrist would make a causation opinion outside of litigation.  Indeed, Defendants' Reply suggests that Defendants believe that the field of psychology is not based on sufficiently reliable methods so as to warrant admission of psychiatric diagnosis at trial.  (Defs' Reply, at p. 6 ["While [Bagot's methods] may be acceptable for treatment, its is not for litigation"].)  But an expert is not held to a higher standard than she would be in her own field outside of litigation.  And finally, while Defendants contend that Bagot's application of "a forensic psychiatric evaluation" rather than a "differential diagnostic approach" justifies exclusion of her opinions, Bagot explained at her deposition that a forensic psychiatric evaluation does not relevantly differ from a normal psychiatric evaluation.  (8/20/2025 Bagot Dep., at 444:8—445:13.)

      Defendants' fifth main argument is that Bagot's opinions must be excluded because she offers no platform-specific analysis.  Bagot's purported failure to adequately assign causation to each of Defendants' platforms is more properly viewed as going to the question of whether Bagot's report, viewed alone, is sufficient evidence to prove any one Defendant's liability for the alleged harms suffered by R.K.C.  The issue is one for the jury; it does not justify exclusion of testimony under *Sargon*.

      Defendants' sixth argument is that Bagot's opinions regarding Snapchat are separately inadmissible.  This argument is based on the asserted fact that Snapchat's data suggest that R.K.C. had spent a total of less than four minutes on Snapchat before filing this lawsuit.  Again, the accuracy of Defendants' own usage data is a disputed question in this litigation.  Bagot could properly rely on R.K.C.'s self-reported Snapchat usage.  Defendants will be able to attack the conclusions in Bagot's R.K.C. Report by showing that Snap's usage data is correct.

      Defendants' final argument is that Bagot's opinions as to YouTube must be excluded because Bagot did not rely on any YouTube usage data in forming her opinions.  For reasons given above, in reaching her conclusions Bagot may rely on interviews and the review of medical/academic records, as well as her general knowledge of how YouTube functions.

**Defendants' Motion to Exclude the Expert Testimony of Dr. Kara Bagot** (Specific Causation as to K.G.M.)

Court's Ruling:  The court denies the Motion.

In addition to her general causation opinions, Bagot also offers specific causation opinions as to K.G.M.

Bagot diagnoses K.G.M. with the following:

a) F41.1 Generalized Anxiety Disorder (historical)
b) F42.9 Obsessive Compulsive Disorder
c) F33.1 Major Depressive Disorder
d) F45.22 Body Dysmorphic Disorder
e) F90.0 Attention Deficit Hyperactivity Disorder – Inattentive Type
f) F98.8 Other Specified Behavioral and Emotional Disorder – Problematic Social Media Use

(K.G.M. Bagot Rep., at p. 3.)  Bagot concludes that K.G.M. "exhibits cognitive and behavioral symptoms consistent with problematic social media use and social media addiction, particularly with respect to YouTube, Instagram, Snapchat, and TikTok," and that K.G.M.'s "problematic social media use caused and/or substantially contributed to the deterioration of her overall psychological well-being and mental health status."  (K.G.M. Bagot Rep., at p. 3.)  Bagot concludes that K.G.M.'s "problematic social media use causally contributed to a substantial degree to her development of Anxiety Disorder, Major Depressive Disorder, Body Dysmorphic Disorder, and Obsessive Compulsive Disorder diagnoses."  (K.G.M. Bagot Rep., at pp. 3-4.)  Bagot concludes that K.G.M.'s "problematic social media use exacerbated and intensified her overall psychological health and worsened her diagnosis of ADHD-inattentive type."  (K.G.M. Bagot Rep., at p. 4.)  Bagot further states:

> 10. Opinion Six: Based on my comprehensive research regarding social media platforms as described in my General Causation report, I conclude that specific design features of the social media platforms utilized by [K.G.M.] substantially contributed to her problematic social media use and consequent mental health conditions. These features include:
> a) Social validation systems including "likes," followers, and public metrics that negatively impacted

6

    [K.G.M.'s] self-worth and body image, and that incentivized [K.G.M.] to participate in dangerous behaviors such as adding adult strangers as friends;

    b) Appearance-centric features including filters and beauty enhancing effects that contributed to [K.G.M.'s] body image disturbances;

    c) Features that maximize user engagement and/or foster fear of missing out through mechanisms such as push notifications, infinite scroll, autoplay, and "gamification" elements like streaks and scores;

    d) The implementation of intermittent variable rewards in the algorithmic content delivery that creates addiction-like neural activation patterns, similar to those observed in substance use disorders, affecting [K.G.M.] reward pathways and contributing to her compulsive use;

    e) Features that allowed unknown adults to repeatedly, privately message [K.G.M.] with harassing statements and unsolicited sexual content;

    f) Sustained and increasingly targeted exposure to recommended content concerning eating disorders, body image disturbances, anxiety, depression, self-harm, and violence.

    11. Opinion Seven: In my opinion, to a reasonable degree of medical certainty, the social media platforms utilized by [K.G.M.] exploit adolescent neurobiological vulnerabilities during a crucial developmental stage. As documented in my General Causation report, adolescents like [K.G.M.] are especially vulnerable to social media addiction due to:

    a) The enhanced sensitivity to social rewards characteristic of adolescence;

    b) The incomplete development of prefrontal cortical areas responsible for impulse control and decision-making;

    c) The accelerated development of reward pathways relative to inhibitory control networks in the adolescent brain; and

    d) The elevated significance of peer evaluation and social comparison during adolescent identity development.

(K.G.M. Bagot Rep., at pp. 4-5.)

Bagot summarizes her methodology for reaching her conclusions as follows:

> My professional medical opinions are founded upon my extensive medical and clinical experience and education, and my examination of [K.G.M.'s] psychiatric and medical documentation, along with deposition statements provided by her, individuals in her personal circle, and her healthcare professionals. Furthermore, my opinions derive from my direct clinical assessment of [K.G.M.], encompassing her responses to multiple validated psychological instruments that I administered during our interview session. My opinions additionally draw from my clinical interview with [K.G.M.'s mother].

(K.G.M. Bagot Rep., at p. 2.)

Defendants now move to exclude the testimony of Bagot as to K.G.M. Defendants make essentially the same arguments with respect to Bagot's K.G.M. opinions as they do with respect to Bagot's R.K.C opinions. Because there are no relevant differences between the methodologies employed by Bagot when assessing R.K.C. and K.G.M., the same conclusions apply here as well. The court thus finds the following arguments raised by Defendants as to K.G.M. unpersuasive: (1) Bagot's opinions should be excluded because they are a "black box" (i.e., Bagot did not record her interviews); (2) Bagot's method for determining that a given factor is "significant" to causing mental harms is too subjective; (3) Bagot's opinions are based on her own subjective, "I know it when I see it" approach; (4) Bagot failed to adequately review relevant medical records; (5) Bagot failed to adequately discount other causes of harm; (6) Bagot's opinions shifted between her report and her deposition because she claimed in her report to have applied a "differential diagnostic approach," but stated in her deposition that she did not apply this type of methodology; (7) Bagot did not base her opinions on usage data from Defendants; (8) Bagot fails to disentangle harms from content and harms from design features; and (9) Bagot fails to sufficiently show that any single platform caused K.G.M.'s harms.

Defendants offer the additional argument that opinions regarding YouTube should be excluded for two reasons. First, Defendants point out that Bagot has concluded K.G.M. is not currently addicted to YouTube. But Defendants fail to show that K.G.M. is unable to recover for *past* harm caused to her as a minor by use of YouTube. In their Reply, Defendants suggest that their first argument also relates to *sufficiency* of the evidence; but as this court has explained, the fact that an expert's testimony might be

8

insufficient on its own to prove liability as to a certain Defendant does not justify exclusion of that expert's testimony at trial.  Defendants' second argument is that Bagot's opinions as to YouTube rest entirely on content.  However, Bagot's opinions also state that harm arose from design features, including design features present on YouTube.  Ultimately, the jury must decide whether the evidence adequately demonstrates harm arising from design features.

Date: 12/3/2025

_____
Carolyn B. Kuhl / Judge
The Honorable Caroly Kuhl
Judge of the Superior Court

9