# AMENDED Exhibit 851

# PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Case No.: 4:22-md-03047-YGR
MDL No. 3047
In Re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation

1                 UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3


4      ----------------------------x
       IN RE: SOCIAL MEDIA ADOLESCENT ) Case No. 4:22 md
5      ADDICTION/PERSONAL INJURY      ) 3047 YGR
       PRODUCTS LIABILITY LITIGATION  ) MDL No. 3047
6                                    x

7


8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10                 UNLIMITED JURISDICTION

11     COORDINATION PROCEEDING        ) Judicial Council
       SPECIAL TITLE [RULE 3.550]     ) Coordination
12                                    ) No. 5255
       SOCIAL MEDIA CASES             )
13     _____ ) Judge Carolyn Kuhl

14


15        CONTAINS HIGHLY CONFIDENTIAL INFORMATION

16


17


18     VIDEOTAPED DEPOSITION OF DAVID LEVENSON

19             LOS ANGELES, CALIFORNIA

20                 MARCH 14, 2025

21                   8:45 A.M.

22


23     Job No.: 7209739

24     Pages: 1   463

25     Reported by: Leslie A. Todd, CSR No. 5129 and RPR



David Levenson                                        37

```
 1  education, that you might not have been able

 2  to achieve what you achieved in terms of your

 3  academic performance.  True?

 4              MR. MAJOR:  Objection.  Vague,

 5         improper opinion.

 6              THE WITNESS:  Yes, if I was not

 7         paying attention in class or in

 8         college, I don't believe I would have

 9         achieved what I've achieved today.

10  BY MR. HONNOLD:

11         Q.    You would agree with me that

12  collectively if a number of students during

13  the course of a school day are involved in

14  looking at social media during class, at the

15  time of class, around class, associated with

16  the school day, that that may impact a

17  teacher's ability -- a teacher's ability to

18  provide them with good quality instruction?

19              MR. MAJOR:  Objection.  Vague,

20         compound, speculation, improper

21         opinion.

22              THE WITNESS:  If I understand

23         your question, yes, if collectively

24         students are not paying attention,

25         that would disrupt the teacher's
```

1          ability to teach.

2    BY MR. HONNOLD:

3          Q.    Okay.  You would agree with me

4    that as a general matter, public school

5    teachers, it is reasonable for them to expect

6    a classroom environment that is not

7    disruptive, correct?

8               MR. MAJOR:  Objection.  Vague,

9          foundation, speculation.

10              THE WITNESS:  I don't know if I

11         could speak to what teachers should

12         expect.  Teachers control the

13         classroom, so I would expect that they

14         would create an environment that is

15         distraction free.

16   BY MR. HONNOLD:

17         Q.    Could it be a distraction or

18   disruptive to the educational process if

19   students in class are spending a fair amount

20   of time -- and I'm now holding my cell phone

21   and I'm going to hold it down under the

22   desk -- if students are doing that a fair

23   amount of time during the school day, that

24   could be disruptive to the school

25   environment.  True?

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1              MR. MAJOR:  They've been
 2        produced.
 3              MR. HONNOLD:  All of the
 4        things, the personal notes were
 5        produced, his handwritten notes?
 6              MR. MAJOR:  We can talk about
 7        it off the record.
 8              MR. HONNOLD:  Okay, great.
 9    BY MR. HONNOLD:
10        Q.    Okay.  Let's go to this
11    document, which we marked as an exhibit.
12    It's Bates 7394 at the end.
13              And if we look at the bottom or
14    about two thirds of the way down, there is a
15    sentence above the web chat heading that
16    says:  "The following projects are presented
17    in order of estimated investment size and
18    impact."
19              Do you see that?
20        A.    Yes.
21        Q.    And it looks like above there's
22    discussion between you and Siegel, and you're
23    kind of talking about the impact of COVID on
24    school and maybe that's slowing down DAU.
25    Right?
```

1          A.     Yes, I see a sentence

2    representing that, yes.

3          Q.     Okay.  Then in this heading

4    that's called "Web Chat," it says:  "Today's

5    students and young working professionals are

6    spending a higher amount of time in front of

7    screens in general.  So mobile time spent is

8    growing, but we believe desktop

9    desktop/web time is up even more, as more

10   class and work shifts to online video

11   services like Zoom, and commute and

12   under the desk phone time decreases."

13              Do you see that?

14         A.     I see that, yes.

15         Q.     Okay.  So the context there for

16   under-the-desk phone time, what -- what is

17   your under- -- understanding of -- of that,

18   as Josh Siegel was using that term and as

19   as you read this?

20         A.     So I don't have a recollection

21   or a direct understanding of that term, but

22   in context, I would assume it means as

23   students were looking at their phone under a

24   desk, in class.

25         Q.     And you remember we    you

1   remember we talked about distractions in

2   school, and teachers having the expectation

3   of    you know, or needing to have a

4   distraction-free classroom and kids needing a

5   distraction free classroom?

6                Here is you, head of the growth

7   team, and Siegel -- what was his role?

8        A.    At this time I believe he was

9   head of growth product.

10        Q.    Okay.  You're talking on

11   your    your Slack about the phenomena of

12   kids using their phone looking at social

13   media, maybe including Snapchat in school.

14   Right?

15                MR. MAJOR:  Objection.

16        Misstates the document.

17                THE WITNESS:  Josh sent me an

18        update that references that, yes.

19   BY MR. HONNOLD:

20        Q.    Okay.  Did you anywhere in this

21   document say, Hey, we got to get this stuff

22   out of the schools.  We can't be having

23   kids -- we got to make sure that we're not

24   doing anything to promote or perpetuate kids

25   being on our platform at school?

1              Did you ever say that?

2         A.    That's not in this document,

3    no.

4         Q.    Have you ever said -- have you

5    ever said in your professional role ever,

6    We've got to take some action now today to

7    make sure that we aren't doing anything to

8    promote or enable kids getting on the

9    Snapchat platform when they're in class doing

10   this under-the-desk time sort of stuff?

11        A.    Not to my recollection.

12             MR. HONNOLD:  Okay.  All right.

13        Let's take a break.  We will get an

14        updated time.  I may be done.  I might

15        not be, depending on what I got left.

16        Thank you.

17             THE VIDEOGRAPHER:  We are now

18        going off the record, and the time is

19        now 4:47.

20             (Recess.)

21             THE VIDEOGRAPHER:  We are now

22        going back on the record, and the time

23        is 4:57 p.m.

24   BY MR. HONNOLD:

25        Q.    Mr. Levenson, we're back on

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

David Levenson                                            460

```
1        CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
2          The undersigned Certified Shorthand Reporter
3     does hereby certify:
4          That the foregoing proceeding was taken before
5     me at the place and time therein set forth, at
6     which time the witness was duly sworn; That the
7     testimony of the witness and all objections made
8     at the time of the examination were recorded
9     stenographically by me and were thereafter
10    transcribed, said transcript being a true and
11    correct copy of my shorthand notes thereof; That
12    the dismantling of the original transcript will
13    void the reporter's certificate.
14         In witness thereof, I have subscribed my name
15    this date:  March 28, 2025.
16                        <%14542,Signature%>
17                        _____
18                        LESLIE A. TODD, CSR, RPR
19                        Certificate No. 5129
20
21    (The foregoing certification of
22    this transcript does not apply to any
23    reproduction of the same by any means,
24    unless under the direct control and/or
25    supervision of the certifying reporter.)
```