*[Counsel listed on signature page]*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **META'S AFFIRMATIVE LETTER BRIEF REGARDING ANTICIPATED RULE 702 MOTIONS IN MULTISTATE AG CASE**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to ECF Nos. 2271 and 2584, Meta submits this letter setting forth its anticipated Rule 702 arguments regarding Carl Saba and Patrick McDaniel.[1]

***Carl Saba.*** Mr. Saba's opinions should be excluded in their entirety. First, Saba's opinions counting "instances" of purported statutory violations—specifically, (i) monthly instances in which teens spent more than 0.5, 1, 2, 3, 4 or 5 hours per day on Instagram and Facebook ("Time Spent Violations"), and (ii) instances in which teens supposedly had a negative experience on Instagram based on Saba's extrapolation of data from a single survey ("Bad Experience Violations")—are irrelevant because they are untethered to the conduct that the AGs allege constitutes violations of the UDAP Statutes. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("proposed expert testimony [must be] relevant to the task at hand, i.e., that it logically advances a material aspect of the proposing party's case" (internal quotations omitted)). Because Saba's disgorgement opinion is based on his Time Spent Violations, it is also irrelevant. Second, all of Saba's opinions rely on unreliable methodologies. For example, Saba bases his Time Spent Violations on arbitrary time thresholds. And Saba's calculation of Bad Experience Violations and U13s are based on flawed extrapolations from limited survey data that itself has significant methodological limitations. Third, significant sections of Saba's report constitute improper factual narrative, specifically, those titled "Meta's Financial Performance and Ability to Pay Penalties," "Meta's Focus on Teen Acquisition and Retention," and "Meta's Efforts to Address Issues Around Teen Usage on Instagram and Facebook." In those sections, Saba merely summarizes internal Meta documents or public information without applying any expertise or other specialized knowledge, and in some instances, opines on Meta's intent.

***Patrick McDaniel.*** Dr. McDaniel's opinions that Meta's processes for identifying accounts belonging to individuals under the age of 13 ("U13s") are insufficient—specifically, that Meta's detection framework "fails to comport with established security principles" (Opinion 1), that Meta's human review system is "ineffective" and prioritizes efficiency over accuracy (Opinion 2), and that Meta's failure to use machine-learning "soft-matching" to identify U13s "undermines the effectiveness of Meta's system" (Opinion 3)—should be excluded because they are irrelevant to whether Meta violated COPPA, which does not mandate any of the practices that McDaniel faults Meta for failing to implement. *See In re Juul Labs, Inc. Marketing, Sales Practices and Products Liability Litigation*, 2022 WL 1814440, at *20 (N.D. Cal., June 2, 2022) (experts may only "opine about whether conduct fell below standards in the industry" if "that testimony is relevant to the particular claims at issue"). Even if industry custom or practice were relevant, McDaniel applies inapposite guidance from the Institute of Electrical and Electronics Engineers and National Institute of Standards and Technology that are unrelated to age assurance systems, and he is unqualified to opine on practices in the age assurance field. McDaniel's fourth opinion, that Meta retains U13 data "for unreasonably long periods after detection," in violation of "established [] industry standards," is similarly irrelevant to whether Meta complied with COPPA. All four opinions are likely to confuse a jury.[2]

---

[1] Meta reserves the right to amend or raise additional grounds to exclude these opinions based on information learned through forthcoming depositions.

[2] McDaniel's report also includes 75 paragraphs recounting the facts regarding Meta's processes for identifying and removing U13s from Facebook and Instagram. To the extent that he intends to testify to those facts at trial, such testimony should be excluded as impermissible factual narrative. *See, e.g.*, *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *5 (N.D. Cal. July 17, 2023) (an expert may not "serve[] as a conduit for attorney argument").

Dated:  January 23, 2026

Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

  /s/ *James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
Antonio J. Perez-Marques (*pro hac vice*)
antonio.perez@davispolk.com
Caroline Stern (*pro hac vice*)
caroline.stern@davispolk.com
Corey M. Meyer (*pro hac vice*)
corey.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

**COVINGTON & BURLING LLP**

  /s/ *Ashley M. Simonsen*
Ashley M. Simonsen (State Bar. No. 275203)
asimonsen@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (650) 632-4800

Phyllis A. Jones (*pro hac vice*)
pajones@cov.com
Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*