1    GEOFFREY M. DRAKE, *pro hac vice*
     gdrake@kslaw.com
2    KING & SPALDING LLP
     1180 Peachtree Street, NE, Suite 1600
3    Atlanta, Georgia 30309
     Telephone: (404) 572-4600
4    Facsimile: (404) 572-5100

5    DAVID P. MATTERN, *pro hac vice*
     dmattern@kslaw.com
6    KING & SPALDING LLP
     1700 Pennsylvania, NW, Suite 900
7    Washington, DC 20006
     Telephone: (202) 737-0500
8    Facsimile: (202) 626-3737

9    *Attorneys for Defendants*
     *TikTok Inc., ByteDance Inc., TikTok Ltd.,*
10   *ByteDance Ltd., and TikTok LLC*

11   [*Additional parties and counsel listed on signature*
     *pages*]

12

13                    UNITED STATES DISTRICT COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15                          OAKLAND DIVISION

16

17   IN RE: SOCIAL MEDIA ADOLESCENT          MDL No. 3047
     ADDICTION/PERSONAL INJURY
18   PRODUCTS LIABILITY LITIGATION           Case No. 4:25-CV-02310-YGR

19                                           **JOINT SET OF PROPOSED JURY**
                                             **INSTRUCTIONS**
20
                                             Judge: Hon. Yvonne Gonzalez Rogers
21   This Document Relates to:               Magistrate Judge: Hon. Peter H. Kang

22   *DeKalb County School District v. Meta*  Pretrial Conference:      TBD
     *Platforms, Inc. et al.*                 Trial Date:               TBD
23

24

25

26

27

28

---

Plaintiff DeKalb County School District and Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC; (collectively, "Meta"); Snap, Inc. ("Snap"); ByteDance Ltd.; ByteDance Inc.; TikTok Ltd.; TikTok LLC; and TikTok Inc. (collectively, "TikTok"); and Google LLC and YouTube LLC (collectively, "YouTube"), by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).[1]

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds towards trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Authority | Whether the Parties Stipulate or Object |
|---|---|---|---|
| 1. | General Preliminary Instructions | 11th Cir. No. 1.1* <br><br> *With modifications | **The parties propose conflicting modifications to the description of the case.** |
| 2. | Use of Depositions | 11th Cir. No. 2.2 | Stipulate |
| 3. | Stipulations | 11th Cir. No. 2.1 | Stipulate |
| 4. | Use of Interrogatories | 11th Cir. No. 2.6 | Stipulate |
| 5. | Introduction to Final Instructions | 11th Cir. No. 3.1 | Stipulate |
| 6. | The Duty to Follow Instructions – Corporate Party Involved | 11th Cir. No. 3.2.2 | Stipulate |
| 7. | The Duty to Follow Instructions – | 11th Cir. No. 3.2.3 | Stipulate |

---

[1] Because this case would be tried in the Northern District of Georgia, the Parties propose instructions following the Eleventh Circuit's Model Instructions. The Parties understand that the Court's Standing Order at Paragraph 3(g)(ii)(H) requires redlines for any modifications to the Ninth Circuit Model Instruction, but the Parties do not read the instruction to apply to any model or pattern instructions regarding state law or to the Eleventh Circuit Model Instructions. However, the Parties are happy to provide such redlines to the cited model instructions if it would be helpful to the Court.

| | | | |
|---|---|---|---|
| | Government Entity or Agency Involved | | |
| 8. | Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court | 11th Cir. No. 3.3 | Stipulate |
| 9. | Credibility of Witness | 11th Cir. No. 3.4 | Stipulate |
| 10. | Impeachment of Witnesses Because of Inconsistent Statements | 11th Cir. No. 3.5.1 | Stipulate |
| 11. | Expert Witness | 11th Cir. No. 3.6.1 | Stipulate |
| 12. | Transition Instruction | Judge Gonzalez Rogers' Standing Order Re: Pretrial Instructions in Civil Cases (Updated March 17, 2025) | Stipulate |
| 13. | Section 230 | Special Instruction | **The parties propose conflicting instructions.** |
| 14. | Negligence – Introduction | Georgia Pattern Jury Instructions – Civil 60.001* *With modifications | **The parties propose conflicting modifications.** |
| 15. | Negligence – Ordinary Negligence | Georgia Pattern Jury Instructions – Civil 60.010* *With modifications | **The parties propose conflicting modifications.** |
| 16. | Causation – One Act Sufficient | Georgia Pattern Jury Instructions – Civil 60.060* *With modifications | **The parties propose conflicting modifications.** |
| 17. | Public Nuisance | Georgia Pattern Jury Instructions – Civil 46.010* *With modifications | **The parties propose conflicting modifications.** |
| 18. | Causation – Proximate Cause | Georgia Pattern Jury Instructions – Civil 60.200* *With modifications | **The parties propose conflicting modifications.** |
| 19. | Unusually Susceptible Plaintiff | Special Instruction | **Defendants object to this instruction in full.** |
| 20. | Causation – Intervening Cause | Georgia Pattern Jury Instructions – Civil 60.202 | **Defendants object to this instruction in full.** |

| 21. | Statute of Limitations | Georgia Pattern Jury Instructions – Civil 38.010*<br><br>*With modifications | **DeKalb objects to this instruction in full.** |
|---|---|---|---|
| 22. | Contributory Negligence | Georgia Pattern Jury Instructions – Civil 60.110 | **DeKalb objects to this instruction in full.** |
| 23. | Avoidance of Consequences | Georgia Pattern Jury Instructions – Civil 60.120 | **DeKalb objects to this instruction in full.** |
| 24. | Duty to Lessen / Mitigate | Georgia Pattern Jury Instructions – Civil 66.015 | **DeKalb objects to this instruction in full.** |
| 25. | Damages – Preliminary Instructions | Georgia Pattern Jury Instructions – Civil 66.001*<br><br>*With modifications: | **The parties propose conflicting modifications.** |
| 26. | Apportionment | Georgia Pattern Jury Instructions – Civil 66.810*<br><br>*With modifications: | **The parties propose conflicting modifications.** |
| 27. | No Double Recovery | Special Instruction | **DeKalb objects to this instruction in full.** |
| 28. | Punitive Damages - Liability | Georgia Pattern Jury Instructions – Civil 67.700 | **Defendants object to this instruction in full.** |
| 29. | Punitive Damages – Burden of Proof | Georgia Pattern Jury Instructions – Civil 67.701; Georgia Pattern Jury Instructions – Civil 02.040 | **Defendants object to this instruction in full.** |
| 30. | Punitive Damages – Liability (con't) | Georgia Pattern Jury Instructions – Civil 67.700 | **Defendants object to this instruction in full.** |
| **STOP (CLOSING ARGUMENTS)** | | | |
| **Post-Closing Instructions** | | | |
| 31. | Duty to Deliberate | 11th Cir. No. 3.8.1 | Stipulate |
| 32. | Election of Foreperson Explanation of Verdict Form | 11th Cir. No. 3.9 | Stipulate |

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1

UNITED STATES DISTRICT COURT

2

NORTHERN DISTRICT OF GEORGIA

3

ATLANTA DIVISION

4

5    IN RE: SOCIAL MEDIA ADOLESCENT          Case No. 4:25-CV-02310-YGR
     ADDICTION/PERSONAL INJURY
6    PRODUCTS LIABILITY LITIGATION

7

8    This Document Relates to:

9    *DeKalb County School District*

10

11

12

13   **JURY INSTRUCTIONS (COVER PAGE)**

14

15   Dated: _____

16

17

18                                    _____

                                      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

**Jury Instruction # 1**

**General Preliminary Instructions**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if they think the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses:</u>

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;

1      • the reasonableness of the witness's testimony in light of all the evidence; and

2      • any other factors affecting believability.

3      At the end of the trial, I'll give you additional guidelines for determining a witness's

4  credibility.

5      Description of the case:

6      This is a civil case. To help you follow the evidence, I'll summarize the parties' positions.

7  The plaintiff in this case is DeKalb County School District, also referred to as "Plaintiff,"

8  "DeKalb," or the "School District." The Defendants in this case are four groups of [technology]

9  [social media] companies:

10    1. Meta Platforms, Inc. f/k/a Facebook, Inc.; and Instagram, LLC, referred to collectively as

11       "Meta;"

12    2. Snap Inc., referred to as "Snap;"

13    3. TikTok Inc., ByteDance Inc., ByteDance Ltd., TikTok Ltd., and TikTok, LLC, referred to

14       collectively as "TikTok;" and

15    4. YouTube, LLC and Google LLC, referred to collectively as "YouTube."

16  Collectively, these four groups are referred to as "Defendants."

17     DeKalb claims that Defendants developed and operated their online platforms—specifically

18  Instagram, Facebook, TikTok, Snapchat, and YouTube—in a manner that caused mental health

19  harms to DeKalb students and led to additional expenses for the school district.

20     DeKalb County School District brings two legal claims: negligence and public nuisance.

21  The School District asserts that the Defendants negligently designed, operated, and/or marketed

22  their social media platforms to target students and schools. The School District asserts that the

23  Defendants' actions caused students to experience problematic use, compulsive use, and/or

24  addiction to their platforms, resulting in a deterioration of youth learning, mental health, and overall

25  well-being. The School District also asserts that Defendants' actions disrupted school operations

26  and negatively impacted the school environment. The School District asserts that Defendants'

27  actions harmed the School District by requiring the School District to expend and redirect already

28  limited resources. The School District further asserts that the harms to the School District are

ongoing and will continue to cause the School District harm. The School District asserts that the consequences of Defendants' actions were foreseeable, and Defendants failed to warn about those consequences. DeKalb has the burden of proving these claims as to each Defendant. Later, I will explain the specific legal requirements for each claim. The Defendants deny DeKalb's claims. Defendants also assert three affirmative defenses: (1) statute of limitations, (2) contributory negligence/fault, and (3) failure to mitigate damages. The Defendants have the burden of proof on these affirmative defenses. DeKalb denies Defendants' affirmative defenses.

    Burden of proof:

    DeKalb County School District has the burden of proving its case against each Defendant by what the law calls a "preponderance of the evidence." That means the School District must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring the School District and the evidence favoring each Defendant on opposite sides of balancing scales, DeKalb County School District needs to make the scales tip to the School District's side. If DeKalb County School District fails to meet this burden, you must find in favor of that Defendant.

    To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

    On certain issues, called "affirmative defenses," Defendants have the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Defendants must prove for any affirmative defense. After considering all the evidence, if you decide that a Defendant has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

    Conduct of the jury:

    While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court.

1  But you must not discuss anything about the case itself with anyone.

2      You shouldn't even talk about the case with each other until you begin your deliberations.

3  You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments,

4  and my instructions on the law – before you begin deliberating. You should keep an open mind

5  until the end of the trial. Premature discussions may lead to a premature decision.

6      In this age of technology, I want to emphasize that in addition to not talking face-to-face

7  with anyone about the case, you must not communicate with anyone about the case by any other

8  means. This includes e-mails, text messages, phone calls, encrypted-communication applications,

9  the Internet — including social networking-websites and apps, or any other similar technology,

10  even if I have not specifically mentioned it here.

11      You must not provide any information about the case to anyone by any means whatsoever,

12  and that includes posting information about the case, or what you are doing in the case, on any

13  device or Internet site, including blogs, chat rooms, social websites, or any other means.

14      You also shouldn't Google or search online or offline for any information about the case,

15  the parties, or the law. Don't read or listen to the news about this case, visit any places related to

16  this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk

17  with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very

18  important that you understand why these rules exist and why they're so important. You must base

19  your decision only on the testimony and other evidence presented in the courtroom. It is not fair to

20  the parties if you base your decision in any way on information you acquire outside the courtroom.

21  For example, the law often uses words and phrases in special ways, so it's important that any

22  definitions you hear come only from me and not from any other source. Only you jurors can decide

23  a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one

24  else is so qualified.

25      Taking notes:

26      If you wish, you may take notes to help you remember what the witnesses said. If you do

27  take notes, please don't share them with anyone until you go to the jury room to decide the case.

28  Don't let note-taking distract you from carefully listening to and observing the witnesses. When

1    you leave the courtroom, you should leave your notes hidden from view in the jury room.

2        Whether or not you take notes, you should rely on your own memory of the testimony. Your

3    notes are there only to help your memory. They're not entitled to greater weight than your memory

4    or impression about the testimony.

5        Course of the trial:

6        Let's walk through the trial. First, each side may make an opening statement, but they don't

7    have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative;

8    it's just an outline of what that party intends to prove.

9        Next, DeKalb County School District will present its witnesses and ask them questions.

10   After the School District questions the witness, Defendants may ask the witness questions – this is

11   called "cross-examining" the witness. Then Defendants will present their witnesses, and the School

12   District may cross-examine them. You should base your decision on all the evidence, regardless of

13   which party presented it.

14       After all the evidence is in, the parties' lawyers will present their closing arguments to

15   summarize and interpret the evidence for you, and then I'll give you instructions on the law.

16       You'll then go to the jury room to deliberate.

17

18   ± DeKalb's proposal in red text; Defendants' proposal in blue text.

19   AUTHORITY:        11th Circuit Model Instruction 1.1 – General Preliminary Instructions

20

21

22   DATE SUBMITTED:        January 28, 2026_____

23

24   DATE REVISED:        _____

25

26

27

28

**DEKALB'S POSITION ON INSTRUCTION 1:**

**Social Media Companies.** Defendants' refusal to describe themselves as "social media companies" is unjustifiable. Demanding that they only be called "technology companies" is unduly restrictive for no legitimate reason, confusing, and prejudicial, because it does not match reality, the testimony, or documentary evidence that will be admitted at trial, which commonly refers to Defendants as social media companies, including their own press releases. Nor is it prejudicial to Defendants to call them social media companies—that is what they are, hence the case caption.

To the extent YouTube specifically objects, its own internal documents refer to it as social media. As far back as 2020, YouTube explicitly stated that "YouTube is the most popular social media site used by 15-25 year olds." (GOOG-3047MDL-00402817).

**Statement of Case.** Defendants' statement of the case is cursory and does not explain the nature of the harm or the Plaintiff's theory of the case. It does little to inform the jury beyond naming the parties. By contrast, Plaintiff's proposed instruction includes a brief, accurate, and neutral description of its theories of liability to provide the jury with essential context regarding the claims at issue, as the Court has requested. *See* YGR Pretrial Standing Order 3(h). Contrary to Defendants' claims, Plaintiff's instruction includes a level of detail consistent with this Court's practice, especially in complex cases. *See, e.g., AngioScore, Inc. v. TriReme Medical, Inc., et al.*, No. 4:12-cv-03393-YGR, ECF No. 800, at *2 (N.D. Cal. Oct. 1, 2015) ("AngioScore also argues that Defendants have actively induced others to infringe" specific patent claims with specific products); *Zertuche v. Cnty. of Santa Clara et al.*, No. 4:11-cv-03691-YGR, ECF No. 157, at *3 (N.D. Cal. Nov. 20, 2013) (outlining plaintiff's claim that "she was retaliated against on account of complaints that she made concerning whether the Independent Defense Counsel Office was operated in a proper and ethical manner" and explaining three specific forms of retaliation); *Est. of Tindle v. Mateu*, No. 4:18-CV-05755-YGR, ECF No. 138, at *2 (N.D. Cal. Sept. 28, 2020) (explaining plaintiff's theory that defendant "used excessive force against Decedent . . . in violation of his constitutional right to be free from unreasonable force, causing his death"); *Trulove v. D'Amico et al.*, No. 4:16-cv-00050-YGR, ECF No. 508, at *17 (N.D. Cal. Apr. 4, 2018) (outlining theories of deprivation of due process rights and defendants' conspiracy).

1    Furthermore, inclusion of language clarifying that DeKalb seeks to hold Defendants liable

2    for school disruptions—not mental health harms borne by students—is consistent with the theories

3    of liability that the Court has allowed to proceed. *See infra* [First Claim – Negligence].

4    Finally, Defendants claim that referring to them as "Defendants" will "improperly . . . lump

5    Defendants together" when it comes to determining liability and apportioning fault. But they

6    propose no alternative—in fact, Defendants' own instruction refers to them collectively. The mere

7    use of this shorthand by both parties here says nothing about the law on liability or apportionment,

8    on which the jury will be separately instructed. *See infra* [Causation – Proximate Cause],

9    [Apportionment]; *see also Mohamed v. State*, 276 Ga. 706, 710 (2003) (no error where pertinent

10   principle is "adequately covered elsewhere in the jury charge as a whole"); *United States v. Vereen*,

11   920 F.3d 1300, 1306 (11th Cir. 2019) (no reversible error in rejecting proffered instruction where

12   charge given "substantially cover[s] the proposed instruction").

13   **Evidence Does Not Support Instruction on Affirmative Defenses.** As explained in

14   DeKalb's specific objections to Defendants' proposed instructions on each of these defenses,

15   Defendants have not articulated nor substantiated any basis from which the jury may find a failure

16   to mitigate, contributory negligence, or a statute of limitations bar. *See infra* [Statute of

17   Limitations], [Contributory Negligence], [Duty to Lessen or Mitigate]. Because these are "not

18   authorized by the evidence, denial of the request is proper." *Buckalew v. State*, 249 Ga.App. 134,

19   138 (2001); *see also Rice v. Francis*, 374 Ga.App. 280(2025) (reversible error to give instruction

20   on affirmative defense to which defendant was not entitled); *McCommons v. White*, 371 Ga.App.

21   93, 103 (2024) (no error in refusing to give instruction on apportionment where "[Defendant]

22   offered no evidence" of plaintiff's contributory negligence); *Taylor v. State*, 252 Ga. 125, 125-26

23   (1984) (no reversible error where instruction stated that "unless the State's evidence raised the issue

24   involving the alleged [affirmative] defense, the defendant, to raise the issue, must present evidence

25   thereon"). To the extent the Court denies any or all of Defendants' affirmative defense instructions,

26   it should also remove any mention of those instructions in this preliminary instruction.

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 1:**

2    Defendants' proposed Instruction on Claims and Defenses is consistent with Eleventh

3    Circuit Model Instructions and the Court's Standing Order Re: Pretrial Instructions in Civil Cases

4    (last updated March 17, 2025) ("Standing Order").[2] Defendants' Instruction is modeled after and

5    consistent with Model Instruction 1.1, which states that the instruction will "summarize the parties'

6    positions" and identify the parties, plaintiff's claims, defendant's affirmative defenses, and the

7    denials of the same.

8    **Affirmative Defenses.** Defendants include their affirmative defenses in their proposed

9    language, whereas DeKalb objects to instructing on affirmative defenses—a position that is in

10   direct opposition to Model Instruction 1.1 and has no support. Defendants' defenses are properly

11   asserted,[3] and DeKalb has not moved to strike them and did not seek summary judgment on those

12   defenses.  The Court should instruct on Defendants' affirmative defenses for the reasons set forth

13   in the arguments supporting Instructions 21, 22, 23, and 24.

14   **Statement of Claims.** DeKalb's proposed Instruction provides unnecessary details,

15   improper arguments, and objectionable characterizations of DeKalb's claims that go beyond the

16   framework of the Model Instruction and are inconsistent with the Court's Standing Order.

17   Specifically, DeKalb's paragraph starting that "The School District asserts that Defendants …" sets

18   out numerous assertions about DeKalb's allegations that are argumentative and unnecessary to

19   assist the jury, nor are they provided for in the Model Instructions. *See* Standing Order at 6

20   (providing that instructions shall be "free of argument.").[4] By contrast, Defendants propose a short

21   and neutral summary of DeKalb's claims that closely tracks its complaint.

---

22   [2] Defendants maintain that summary judgment should be granted for the reasons explained in

23   Defendants' Motion for Summary Judgment, including that Plaintiff has not identified any
     actionable conduct that caused its alleged harms, and they submit these proposed instructions

24   without waiving such arguments.
     [3] These affirmative defenses were raised in each of the Defendants' answers to the Districts' Master

25   Complaint.  *See* Dkt. 1419 (YouTube); 1421 (TikTok); Dkt. 1423 (Snap); Dkt. 1424 (Meta).
     [4] Defendants further object to Plaintiff's description of its claims involving "disruption of the school

26   environment." Such language should not be included, and certainly not divorced from the District's
     allegations that such "disruption" was caused by its students' mental health conditions, namely

27   addiction. From the outset, Plaintiff's theory of the case has been that Defendants' platforms
     adversely affect student mental health which, in turn, caused the district to incur economic harm.

28   For example, the Amended Master Complaint describes school districts' as being "harmed by
     students' compulsive use of, and addiction to, social media" and alleges that such use has caused

1   **Referring to Each Defendant.** DeKalb also improperly attempts to lump Defendants

2   together, despite Georgia law requiring assessment of liability and apportionment of fault for each

3   party. *See Swint v. Mae*, 340 Ga. App. 480, 485 (2017) (Plaintiffs were required to come forward

4   with some evidence showing a causal link between *each Defendant's* negligence and [plaintiff's]

5   injury . . . ." (emphasis added)); *Tuggle v. Helms*, 231 Ga. App. 899, 902 (1998) ("[T]he mere fact

6   that an accident happened and the plaintiff may have sustained injuries or damages affords no basis

7   for recovery against a particular defendant unless the plaintiff carries the burden of proof and shows

8   that such accident and damages were caused by specific acts of negligence on the part of that

9   defendant.").

10  Third, Defendants include their affirmative defenses in their proposed language, whereas

11  DeKalb objects to instructing on affirmative defenses—a position that is in direct opposition to

12  Model Instruction 1.1.

13  **Reference to "Social Media" Companies.** Defendants object to the use of "social media"

14  to describe their platforms. YouTube and Snap do not agree with the characterization of their

15  platforms as "social media," and that will be a contested fact at trial. This Court should, instead,

16  adopt the neutral language that Defendants propose.

17  Thus, based on the Eleventh Circuit Model Jury Instructions and the Standing Order, the

18  Court should accept Defendants' more neutral Instruction on Claims and Defenses.

19

20

21

22

23

24

25  "significant disruption." ECF 729, ¶ 194, and that the "youth mental health crisis has also caused a
    wide range of other behavioral issues," including "classroom disruptions." ECF 729, ¶ 208. Under

26  Plaintiff's own theory of the case, Plaintiff, cannot prove its claims by merely establishing that
    Defendants caused "disruptions of the school environment." Plaintiff must also prove that each

27  Defendant's actionable conduct caused student mental health harms, which caused Plaintiff to
    suffer damages. The inclusion of their proposed language runs the risk of confusing the jury,

28  leading them to believe that Defendants can be liable for any disruption to the school day caused
    by their platforms.

**Jury Instruction # 2**

**Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], has been presented to you by a video. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.


AUTHORITY:          11th Circuit Model Instruction 2.2 – Use of Depositions



DATE SUBMITTED:          January 28, 2026


DATE REVISED:          _____

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 3**

**Stipulations**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

AUTHORITY:          11th Circuit Model Instruction 2.1 – Stipulations

DATE SUBMITTED:          January 28, 2026

DATE REVISED:          _____

**Jury Instruction # 4**

**Use of Interrogatories**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

AUTHORITY:          11th Circuit Model Instruction 2.6 – Use of Interrogatories

DATE SUBMITTED:          January 28, 2026

DATE REVISED:          _____

**Jury Instruction # 5**

**Introduction to Final Instructions**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

AUTHORITY:          11th Circuit Model Instruction 3.1 – Introduction

DATE SUBMITTED:          <u>January 28, 2026</u>

DATE REVISED:          <u>        </u>

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 6**

**The Duty to Follow Instructions – Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

AUTHORITY:      11th Circuit Model Instruction 3.2.2 – The Duty to Follow Instruction – Corporate Party Involved

DATE SUBMITTED:     January 28, 2026

DATE REVISED:     _____

**Jury Instruction # 7**

**The Duty to Follow Instructions – Government Entity or Agency Involved**

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

AUTHORITY:      11th Circuit Model Instruction 3.2.3 – The Duty to Follow Instruction – Government Entity or Agency Involved

DATE SUBMITTED:      January 28, 2026

DATE REVISED:      _____

**Jury Instruction # 8**

**Consideration of Direct and Circumstantial Evidence;**

**Argument of Counsel; Comments by the Court**

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.


AUTHORITY:         11th Circuit Model Instruction 3.3 – Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court



DATE SUBMITTED:         January 28, 2026

DATE REVISED:         _____

**Jury Instruction # 9**

**Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.     Did the witness impress you as one who was telling the truth?

2.     Did the witness have any particular reason not to tell the truth?

3.     Did the witness have a personal interest in the outcome of the case?

4.     Did the witness seem to have a good memory?

5.     Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.     Did the witness appear to understand the questions clearly and answer them directly?

7.     Did the witness's testimony differ from other testimony or other evidence?

AUTHORITY:          11th Circuit Model Instruction 3.4 – Credibility of Witnesses

DATE SUBMITTED:          January 28, 2026

DATE REVISED:          _____

**Jury Instruction # 10**

**Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.


AUTHORITY:        11th Circuit Model Instruction 3.5.1 – Impeachment of Witnesses Because of Inconsistent Statements


DATE SUBMITTED:        January 28, 2026


DATE REVISED:        _____

1

**Jury Instruction # 11**

2

**Expert Witness**

3   　　　When scientific, technical or other specialized knowledge might be helpful, a person who

4   has special training or experience in that field is allowed to state an opinion about the matter.

5   　　　But that doesn't mean you must accept the witness's opinion. As with any other witness's

6   testimony, you must decide for yourself whether to rely upon the opinion.

7

8   AUTHORITY:　　　11th Circuit Model Instruction 3.6.1 - Expert Witness

9

10

11   DATE SUBMITTED:　　　January 28, 2026　　　

12

13   DATE REVISED:　　　　　　　　　

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **Jury Instruction # 12**

2    **Transition Instruction**

3        The Court will now explain the substantive law applicable to the negligence and public

4    nuisance claims that the plaintiff, DeKalb County School District, has asserted against the

5    Defendants, in this action.

6

7    AUTHORITY:          Judge Gonzalez Rogers' Standing Order Re: Pretrial Instructions in Civil

8                        Cases (*last updated* March 17, 2025) ("Standing Order"), § 3(g)(ii)(B)*

9

10                       *Modified to reflect the claim in this case

11

12

13    DATE SUBMITTED:          January 28, 2026_____

14

15    DATE REVISED:            _____

16

17

18

19

20

21

22

23

24

25

26

27

28

1      **Jury Instruction # 13**

2      **Section 230**

3      **(1)     Instruction # 13-D (Defendants' Proposed Instruction)**

4            Defendants in this case are providers of online platforms that publish their own content and

5      content generated by users. The U.S. Constitution's First Amendment, as well as a federal law

6      called Section 230, provide certain protections for Defendants when they publish such content or

7      otherwise engage in expressive activity.

8            Under Section 230, Defendants are not liable when they act as publishers of "third-party

9      content"—that is, content posted by the users of Defendants' platforms on those platforms. Such

10     "third-party content" includes words, messages, pictures, video, audio, comments, or any other

11     form of communication that users post, whether publicly or privately, on the Defendants' platforms.

12     Each Defendant cannot be found liable under Section 230 for publishing third-party content on its

13     platform, including whether, how, when, and to whom that content is published.

14            Under the First Amendment, each Defendant is not liable for exercising its right to speak or

15     engage in expressive activity. That means each Defendant cannot be found liable for making

16     available the content displayed on its platform, such as posts, text, videos, images, music,

17     comments, and "likes," as well as recommending, delivering, displaying, compiling, ranking, and

18     organizing posts, comments or other content made by users of its platform.

19            The Court has ruled that these legal protections apply to certain types of Defendants'

20     conduct that are "Protected Conduct" and cannot be the basis for finding any Defendant liable.

21            "Protected Conduct" includes making user content or communications available on

22     Defendants' platforms. You may <u>not</u> find any Defendant liable on the basis of user content (e.g.,

23     posts) or communications (e.g., messages) published on the Defendant's platform—whether shared

24     privately between users or shared publicly to a broader audience. In other words, if you find that

25     user content or communications on a Defendant's platform caused some or all of the harms to

26     students alleged by DeKalb, you may not find the Defendant liable on the basis of that user content

27     or communications.

28

"Protected Conduct" also includes a Defendant's publishing decisions. You may not find any Defendant liable on the basis of its decisions about whether and how to compile, disseminate, or display content to its users. This protection applies even when a Defendant uses technological tools, like an algorithm that recommends content to users.

"Protected Conduct" also includes specific design features of Defendants' platforms that the Court has already ruled are protected by Section 230 and/or the First Amendment and cannot be the basis for finding any Defendant liable.

Therefore, you may not find any Defendant liable on the basis of any of the following "Protected Conduct":

1.    Making third-party content available on a Defendant's platform;

2.    Making decisions about whether and how to recommend, compile, organize, disseminate, and display content to users of a Defendant's platform;

3.    Using algorithms to encourage users to spend more time on a platform, including the use of algorithms to display content;

4.    Providing users with an endless feed or infinite scroll;

5.    Providing informational messages, notifications, or alerts about third-party content or a Defendant's own content, including the timing and clustering of those notifications and regardless of how they are sent (*i.e.*, audiovisually or through vibrations);

6.    Not placing default protective limits on the length and frequency of use sessions;

7.    Making decisions about whether or not to institute blocks preventing use of a platform during certain times of day (such as during school hours or late at night);

8.    Making decisions to recommend certain accounts to certain users;

9.    Providing content in short-form or ephemeral formats (i.e., formats that disappear after a certain period of time);

10.    Allowing users to post or provide comments or to receive comments posted by others;

11.    Allowing users to exchange, send, or post private content;

12.     Publishing geolocating information (i.e., information about users' locations) for users;

13.     Using autoplay features (i.e., videos playing automatically after a video ends);

14.     Displaying "Likes" or listing the number of "Likes" certain content has received;

15.     Providing awards to users, including to frequent users or for continuous engagement with a Defendant's platform.

Therefore, in evaluating whether DeKalb has met its burden to satisfy the elements of a claim as to each Defendant, you <u>may</u> consider only "Non-Protected Conduct," which consists only of the Defendant's design and/or use of the following:

*["Non-Protected Conduct" list to be completed after ruling on MSJ and other motions and based upon case-specific evidence, but not to exceed the below list.]*

1.     Options for users to self-restrict time spent using a platform;

2.     The process for users to delete their accounts;

3.     Labels for filtered content;

4.     Appearance-altering filters;

5.     Processes for users to report suspected child sexual abuse materials to Defendants' platforms.

You may impose liability, if any, only if the harm is caused by this Non-Protected Conduct and the other elements of each claim are met. You may not find any Defendant liable on the basis that the Defendant's platform as a whole caused harm. It is Dekalb's burden to prove that any harm it allegedly suffered was caused by Non-Protected Conduct.

**(2)    Instruction # 13-P (Plaintiff's Objection and Proposed Instruction)**

In this case, you may not hold Defendants liable simply because Defendants hosted or published users' content, or because they removed or failed to remove content posted by users.

However, in deciding whether Defendants are liable for negligence or public nuisance, you may hold Defendants liable for their own actions, even if users' content contributed to the harm, so long as Defendants' actions were a substantial factor in causing DeKalb's harm. You may also hold Defendants liable for failing to warn about the risks of harm caused by their platforms even if users'

1    content contributed to the harm, so long as Defendants' failure to warn was a substantial factor in
2    causing DeKalb's harm.

3

4    ± DeKalb's proposal in red text; Defendants' proposal in blue text.

5

6    PLAINTIFF'S AUTHORITY:          N/A

7    DEFENDANTS' AUTHORITY:        47 U.S.C. § 230(c)(1); Order Granting in Part and Denying
                                   in Part Defendants' Motions to Dismiss (ECF 430) ("PI Order") at 14
8                                  (published at *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab.
                                   Litig.*, 702 F. Supp. 3d 809, 825–37 (N.D. Cal. 2023)) (outlining relevant
9                                  protections under Section 230 and the First Amendment); Order Granting in
                                   Part and Denying in Part Defendants' Motion to Dismiss the School District
10                                 and Local Government Entities' Master Complaint (ECF 1267) ("SD
                                   Order") at 12–14 (published at *In re Soc. Media Adolescent Addiction/Pers.
11                                 Inj. Prods. Liab. Litig.*, 754 F. Supp. 3d 946, 962–64 (N.D. Cal. 2024))
                                   (same, for school districts' claims); *In re Soc. Media Adolescent
12                                 Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 878–85 (N.D.
                                   Cal. 2024) (same, for state attorneys general claims); *Barnes v. Yahoo!, Inc.*,
13                                 570 F.3d 1096, 1107 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (holding
                                   that Section 230 "precludes liability when the duty the plaintiff alleges the
14                                 defendant violated derives from the defendant's status or conduct as a
                                   publisher or speaker"); *id.* at 1102 (publication "involves reviewing, editing,
15                                 and deciding whether to publish or to withdraw from publication third-party
                                   content"); *Estate of Bride by and through Bride v. Yolo Technologies, Inc.*,
16                                 112 F.4th 1168, 1180 (9th Cir. 2024) (Section 230 precludes failure-to-warn
                                   theories that fault platform "for not mitigating, in some, way, the harmful
17                                 effects of . . . content"); *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025)
                                   (similar); U.S. Const. Amend. 1; *Bartnicki v. Vopper*, 532 U.S. 514, 527
18                                 (2001) ("If the acts of 'disclosing' and 'publishing' information do not
                                   constitute speech, it is hard to imagine what does fall within that
19                                 category[.]"); *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1119 (9th Cir. 2024)
                                   (holding law that would require platforms to "opine on potential speech-
20                                 based harms to children" was subject to strict scrutiny and was likely
                                   invalid); *NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1224-25 (N.D. Ga. June
21                                 26, 2025) (holding that age verification requirement "imposes a sweeping
                                   burden on adults' access to speech"); *Students Engaged in Advancing Texas
22                                 v. Paxton*, 765 F. Supp. 3d 575, 559–600 (W.D. Tex. 2025) (similar);
                                   *NetChoice, LLC v. Griffin*, 2025 WL 978607, at *13 (W.D. Ark. Mar. 31,
23                                 2025) (similar).

24

25

26   DATE SUBMITTED:          January 28, 2026

27

28   DATE REVISED:            _____

1    **DEFENDANTS' POSITION ON INSTRUCTION 13:**

2        The Court has already ruled that Section 230 and the First Amendment impose a "significant

3    limitation on Plaintiffs' theories of recovery." SD Order at 2. To give effect to these rulings, the

4    jury must be instructed on which conduct may—and may not—form the basis of liability.

5    Defendants' proposed instruction identifies the specific features and activities that this Court has

6    already held are protected as a matter of law, as well as those that may form the basis of liability.

7    Without that specificity, the instructions would improperly invite the jury to find a Defendant liable

8    for conduct that is "no longer part of this case." [5]

9        Plaintiff's proposed instruction disregards the Court's "feature-by-feature" analysis

10   altogether and does not even mention any of the features or activities this Court held are protected.

11   SD Order at 12; PI Order at 16. Plaintiff's instruction would, thus, improperly require the jury to

12   determine on its own which features are protected, rather than applying this Court's answers to

13   those legal questions. *See Tortu v. L.V. Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009)

14   (courts must resolve legal questions and instruct the jury accordingly). And it creates a high risk of

15   confusing the jury into thinking that *none* of Defendants' conduct is protected, contrary to this

16   Court's rulings. *See Los Angeles Memorial Coliseum Com'n v. Nat'l Football League*, 726 F.2d

17   1381, 1398 (9th Cir. 1984) ("[w]ell-tailored and specific instructions" necessary where "abstract

18   legal principles are not self-explanatory to a lay jury" and facts "are complex").

19       Plaintiff's misguided assertion that its failure-to-warn theory renders the distinction

20   between protected and unprotected conduct irrelevant fails for numerous reasons.  First, a

21   substantial body of binding case law has emerged since the Court's prior rulings confirming that

22   Section 230 bars failure-to-warn claims that arise from protected publishing activity, including

23   challenged features.[6] *See, e.g., Doe v. Grindr*, 128 F.4th 1148, 1154 (9th Cir. 2025); *Estate of Bride*

24   *by and through Bride v. Yolo Technologies, Inc.*, 112 F.4th 1168, 1179–80 (9th Cir. 2024); *Doe*

25   *(K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025).  *Calise v. Meta*

26   ───────────────

27   [5] Defendants reserve the right to argue for the exclusion at trial of any evidence of content and protected publishing features.
     [6] In light of this intervening authority, Defendants did not include failure to warn in their list of

28   non-protected conduct.  Defendants omitted age verification from the list for similar reasons.  *See, e.g., NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1230 (N.D. Ga. 2025).

*Platforms, Inc.*, 103 F.4th 732, 743, 746 (9th Cir. 2024), is not to the contrary, because that case did not involve any failure- to-warn claims at all, and it held that Section 230 barred all of the plaintiff's non-contractual claims. *See id.* at 743, 746. Further, *Calise*'s discussion of failure-to-warn claims is *dicta*—not binding precedent—and it is inconsistent with the Ninth Circuit's subsequent decisions in *Bride* and *Grindr*.

In any event, even if the Court permits the failure-to-warn claim to proceed in its entirety, the jury still could not find liability for any damages caused by protected conduct; it could find liability only for damages caused by failing to warn about that protected conduct.[7] Plaintiff's position ignores that distinction and renders the vast majority of the Court's rulings null.

Plaintiff's proposal is also erroneous because it states that the jury "may hold Defendants liable for their own actions even if users' content contributed to the harm, so long as Defendants' actions were a cause of Plaintiff's harm." This instruction ignores this Court's rulings that many categories of "Defendants' actions" are protected publishing conduct that cannot form the basis of liability. *See* SD Order at 14; PI Order at 5, 22. Further, Plaintiff's position invites error by allowing the jury to hold Defendants liable for harms so long as any unprotected conduct is involved in any way, however minimally, in the causal chain. But claims against online platforms like Defendants must be "*fully independent of* [their] role in monitoring or publishing third-party content." *Lemmon v. Snap Inc.*, 995 F.3d 1085, 1093 (9th Cir. 2021) (emphasis added); *Grindr*, 128 F.4th at 1153 (it is "analytically insignificant whether [the plaintiff's] injuries would not have occurred 'but for' [a platform's] role as a publisher"); *see* PI Order at 11 (requiring that claims "ha[ve] *nothing to do*" with a platform's role as publisher (emphasis added)).

Finally, because the protections of Section 230 and the First Amendment cut across all of Plaintiffs' claims, Defendants submit that this instruction must be placed early in the lineup to give important context to the remaining instructions. Placing the instruction near the end would risk confusing the jury into erroneously concluding that Section 230 and the First Amendment are distinct issues that do not affect the proper framing of Plaintiffs' claims.

---

[7] If the Court permits the jury to hold Defendants liable for failure to warn about protected conduct, the proper approach would be to add failure to warn to the list of non-protected conduct.

1    **DEKALB'S OBJECTIONS TO INSTRUCTION 13:**

2    Defendants' instruction is procedurally improper, contradicts the Court's order on

3    Plaintiffs' failure to warn theory, and risks juror confusion, particularly regarding causation.

4    Section 230 determinations are questions of law for the Court, not the jury, so no instruction on

5    Section 230 is needed. But even if an instruction were appropriate, Defendants' proposal misstates

6    the law.

7    Defendants' instruction entirely omits the fact that Section 230 does not bar Plaintiffs'

8    failure-to-warn theory, despite that it remains in the case. *See* ECF 1267 at 45 (declining to hold

9    that Section 230 bars claims "predicated on a failure to warn of known risks of addiction attendant

10   to any platform features *or as to platform construction in general*." (emphasis added)).

11   Compounding the problem, Defendants' instruction forbids the jury from finding "any Defendant

12   liable on the basis that the Defendant's platform as a whole caused harm," again disregarding

13   negligent failure to warn. *Id.* Defendant's division of "protected" from "non-protected" conduct is

14   misleading for the same reason. There is no "protected" conduct for the purpose of the failure to

15   warn theory. *Id.* Nor does Section 230 create wholesale protection from liability for certain types

16   of conduct. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

17   Defendants' instruction also raises the risk of the jury mistakenly adopting the "but-for" test

18   for Section 230 protection that the Ninth Circuit has firmly and repeatedly rejected. *See, e.g.*, *Doe*

19   *1 v. Twitter*, 148 F.4th 635, 642 (9th Cir. 2025) ("A defendant is not immune from liability simply

20   because its status as a publisher is a 'but-for' cause of a plaintiff's injuries."); ECF 430 at 11 (same).

21   For example, Defendants' proposed instruction directs the jury to "consider only 'Non-Protected

22   Conduct'" when determining if Plaintiffs have met the elements of their claims. But "it is not

23   enough that a claim, including its underlying facts, stems from third-party content for § 230

24   immunity to apply." *Calise*, 103 F.4th at 742; *see also Casino Games Litig.*, 2025 WL 2782591, at

25   *20 n.10 (Doubting that "Section 230 restricts the universe of allegations or evidence that may be

26   considered."). The risk of confusion is magnified by Defendants' repeated use of the phrase "on

27   the basis of": A lay jury could easily understand "on the basis of" to mean the factual basis rather

28   than the specific legal duty breached and conclude that Section 230 requires that content must play

no role in causing the alleged harm. *See Optional Cap., Inc. v. Kyung Joon Kim,* 2008 WL 11336496, at *2 (C.D. Cal. 2008) (jury instructions should be in "understandable language" to avoid introducing "troubling ambiguities"); Manual on Complex Lit., Fourth, § 12.431 ("Instructions should use language that laypersons can understand . . ..").

Plaintiffs' more succinct proposed instruction would remedy these legal errors. It would inform the jury that Section 230 does nothing to prevent a finding of liability based on failure to warn, and would not improperly instruct the jury that a feature-by-feature analysis is necessary to impose liability for all claims. It would also instruct the jury on the proper application of Section 230: a bar to specific claims rather than a bar on elements of causation. And it would avoid the inevitable difficulty from applying multiple intricate subpoints that are challenging to parse even for a lawyer, amplifying the opportunities for juror confusion. Plaintiffs' shorter and simpler instructions are "far more likely to aid the jury in reaching an intelligent verdict than very long and involved instructions." *Alamo Cattle Co. v. Hall*, 220 F. 832, 835 (9th Cir. 1915).

Moreover, an instruction on the First Amendment is unnecessary and likely to confuse the jury. The only circumstance the Court found implicated the First Amendment was "the timing and clustering of notifications of *defendants' content.*" ECF 1267 at 14 (emphasis in original). Defendants have not claimed that *any* content on their platforms was their own. The Court should reject Defendants' blended 230/1A instruction: the defenses are distinct, and courts have held that if one applies, the other does not. *E.g., Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024). *If*, at trial, evidence comes in that implicates the timing and clustering of notifications of Defendants' content, the Court may provide a limiting instruction at that time. But unless and until that occurs, instructing the jury about the First Amendment overemphasizes an affirmative defense untethered to any evidence the jury will likely hear. Lastly, if given at all, this instruction belongs with Defendants' other affirmative defenses. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 n.1 (9th Cir. 2024).

**Jury Instruction # 14**

**First Claim - Negligence – Introduction**

DeKalb County School District's first claim is negligence. DeKalb contends that it was injured as the result of the negligence of each Defendant.

DeKalb must prove by a preponderance of the evidence that the negligent [Non-Protected Conduct] [conduct] of each Defendant, if any, was a proximate cause of mental health harm to the DeKalb County School District's students and/or disruption of the school environment, leading to increased expenses to the School District.

± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:        Georgia Suggested Pattern Jury Instructions (Civil), § 60.001 (2025) (Torts Introduction); ECF 729 (First Am. Master Local Gov. Compl.) ¶¶ 194-97, 973-75, 992-94, 998, 1016, 1018, 1023, 1034; SD Order at 19-21, 25-26.

DATE SUBMITTED:        January 28, 2026

DATE REVISED:        _____

1 **DEKALB'S POSITION ON INSTRUCTION 14:**

2     **Improper Limitation to Mental Health Harms.** DeKalb's proposed instruction

3 recognizes "disruption of the school environment" as a cognizable harm that may support a finding

4 of negligence against Defendants. This is consistent with DeKalb's allegations, ECF 729 ¶¶ 194-

5 97, 973-75, 992-94, 998, 1016, 1018, 1023, 1034, and this Court's prior order, which allowed

6 DeKalb's alleged harms to proceed past dismissal under a negligence claim. *See* ECF 1267 at 19-

7 21, 25-26. Accordingly, Defendants' claim that DeKalb must first prove that Defendants "caused

8 student mental health harms" before liability can attach is incorrect. Rather, this Court has

9 recognized that the "injuries borne by the school districts are related to, but unique from, the alleged

10 injuries of their minor students," and include "diverting and increasing financial resources to

11 address the disruptive forces of defendants' social media products in school" and "implementing

12 new information technology and physical resources to limit access to and mitigate risks caused by

13 defendants' platforms" separate and apart from "hiring mental health personnel and developing

14 mental health resources." *Id.* at 19-20. This holding recognizes that many of DeKalb's injuries—

15 such as the purchase of Yondr pouches—internalize the costs of preventing disruptions to the

16 school environment caused by Defendants, *even if no given* student has first suffered a mental health

17 injury. The proposed language is thus helpful to the jury in clarifying that mental health harms to

18 DeKalb's students are neither the only kind of harm to which liability may attach, nor a prerequisite

19 for liability.

20     **Repeated 230 Instruction.** Defendants' repetition of the phrases "Non-Protected Conduct"

21 and "Protected Conduct" throughout their instructions is prejudicial, misstates the law, and unduly

22 emphasizes one affirmative defense. Defendants use "Non-Protected Conduct" *ad nauseam* in their

23 instructions: Breathitt (29), Charleston (45), DeKalb (15), Harford (25), Irvington (53), Tucson

24 (20). "Repetitious instructions which place undue emphasis on matters favorable to either side

25 constitute reversible error," *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir. 1968), and

26 the repetition here exceeds what courts have found prejudicial, *e.g., Mack v. Precast Indus., Inc.*,

27 369 Mich. 439, 448 (1963) (reversible error where burden of proof was repeated 16 times); *see also*

28 *United States v. Schilleci*, 545 F.2d 519, 526 (5th Cir. 1977) (reversible error where trial court likely

1    caused "undue concentration on a specific paragraph" of instructions); *United States v. Jones*, 353

2    F.3d 816, 819 (9th Cir. 2003) (cautioning against "overemphasis of isolated parts" of jury

3    instructions). Because the improper Section 230 instruction permeates the entire set, any error is

4    unlikely to be harmless. *See Sidibe v. Sutter Health*, 103 F.4th 675, 705 (9th Cir. 2024) (court must

5    consider "cumulative error" in deciding whether error in instructions was harmless).

6        Defendants' repetition of this tendentiously-defined term also violates the mandate that jury

7    instructions should be "simple" and "use language that laypersons can understand." Manual on

8    Complex Lit., Fourth, § 12.431. By requiring the reader to turn to the definition repeatedly, defined

9    terms introduce excessive ambiguity. This concern is magnified where, as here, the definition itself

10   is "cumbersome" (spanning 3 full pages). *See LG Philips LCD Co. v. Tatung Co. of Am.*, 2005 WL

11   6219893, at *4 (C.D. Cal. May 5, 2005).

12       It is also simply unnecessary to repeat Defendants' Section 230 defense in other

13   instructions. It is presumed that jurors will "carefully follow" an instruction once it is given. *Francis*

14   *v. Franklin*, 471 U.S. 307, 324 (1985). That is why courts generally do not instruct on statute of

15   limitation and preemption and then use the phrase "non-time-barred non-preempted conduct"

16   throughout the instruction set.

17       Plaintiffs propose that, following a single instruction on immunity, the Court should simply

18   refer to Defendants' "conduct" as it gives remaining instructions, removing further references to

19   "Non-Protected Conduct" or "Protected Conduct." *See infra* [Section 230].

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 14:**

2        **References to "Conduct."** Plaintiff's proposed reference to "conduct" ignores the Court's

3    rulings on Section 230 and the First Amendment, which held that only certain, non-protected

4    conduct of each Defendant is actionable and that Defendants' protected conduct cannot form the

5    basis of liability. *See* SD Order at 2, 12–14; PI Order at 14. Plaintiff's proposed instruction would

6    improperly instruct the jury that Plaintiff need only prove that DeKalb was injured because

7    Defendants' conduct generally was negligent rather than being required to prove that each

8    Defendant's Non-Protected Conduct was negligent and that DeKalb was injured because of each

9    Defendant's negligent Non-Protected Conduct. Defendants' proposed reference to "Non-Protected

10    Conduct" should, therefore, be included.

11        Defendants' request that the jury only consider their Non-Protected Conduct across multiple

12    instructions is not improperly repetitious. Georgia courts make clear that "[m]ere repetition of a

13    principle of law is not reversible error unless it appears, from the charge as a whole, that there is

14    such undue emphasis as to constitute an unfair statement of law. *Wendlandt v. Shepherd Const.

15    Co.*, 178 Ga. App. 153, 155–56 (1986) (holding that repetitive instructions on different aspects of

16    a defense were not unfair or improper in light of complex area of law, particularly when the trial

17    court told the jury that repetition was not to provide emphasis but clarity on complex legal issues).

18    Plaintiff's own authority agrees. In *Flentie v. Am. Cmty. Stores Corp.*, 389 F.2d 80, 83 (8th Cir.

19    1968), the appellant complained that five instructions in a row repeated and over-emphasized his

20    burden of proving freedom from contributory negligence, but the court rejected those arguments,

21    holding that the instructions appropriately stated the law on different aspects of the negligence

22    claims and counterclaims in the case.[8]

23        Here, Defendants propose instructions that the jury that they must consider only

24    Defendants' Non-Protected Conduct at each step of the factfinding inquiry because the jury *must*

25    consider only Defendants' Non-Protected Conduct at each step of the factfinding inquiry—for

26    ─────────────

27    [8]Plaintiff's other citations are irrelevant. First, Plaintiff takes *Schilleci* and *Jones* out of context, which have nothing to do with the substance of instructions; rather, they describe the Fifth Circuit's policy (at the time) that the jury should not be given written copies of the instructions so that the

28    jury does not pick apart the language of the instructions. Second, Plaintiff's reliance on *Mack* is misplaced, as it related to the repetition of a *burden of proof* instruction, which the court recognized was particularly prejudicial. *Mack v. Precast Indus., Inc.*, 369 Mich. 439, 448 (1963)

1   deciding each element of negligence, for deciding each element of public nuisance, for determining

2   causation, for determining punitive damages, etc. This repetition is not an "unfair statement of the

3   law" because it accurately describes the law the jury must follow.

4       **References to "Disruption of the School Environment."** Defendants further object to

5   Plaintiff's description of its claims involving "disruption of the school environment." Such

6   language should not be included, and certainly not divorced from the District's allegations that such

7   "disruption" was caused by its students' mental health conditions, namely addiction. From the

8   outset, Plaintiff's theory of the case has been that Defendants' platforms adversely affect student

9   mental health which, in turn, caused the district to incur economic harm. For example, the Amended

10  Master Complaint describes school districts' as being "harmed by students' compulsive use of, and

11  addiction to, social media" and alleges that such use has caused "significant disruption." ECF 729,

12  ¶ 194, and that the "youth mental health crisis has also caused a wide range of other behavioral

13  issues," including "classroom disruptions." ECF 729, ¶ 208. Under Plaintiff's own theory of the

14  case, Plaintiff, cannot prove its claims by merely establishing that Defendants caused "disruptions

15  of the school environment." Plaintiff must also prove that each Defendant's actionable conduct

16  caused student mental health harms, which caused Plaintiff to suffer damages. The inclusion of

17  their proposed language runs the risk of confusing the jury, leading them to believe that Defendants

18  can be liable for any disruption to the school day caused by their platforms. The "disruption to the

19  school environment" language should likewise not be included in the Negligence Instruction

20  (Instruction 15) and the Causation Instruction (Instruction 18).

21
22
23
24
25
26
27
28

**Jury Instruction # 15**

**Negligence – Ordinary Negligence**

In this case, negligence means the absence of or the failure to use that degree of care that is used by ordinarily careful persons or organizations under the same or similar circumstances. A company which places a platform known to have substantial risk of harm into the stream of commerce may be held liable for negligently failing to warn about the known risk of danger. Before Dekalb can recover damages from a Defendant in a case such as this, there must be harm to the School District resulting from the Defendant's negligence.

Specifically, to establish this claim, DeKalb must prove all of the following as to each Defendant:

(1) The Defendant failed to comply with their duty to use ordinary care in one or more ways, including—but not limited to—the following:

    a. By not providing warnings that a reasonably prudent, safe, and competent company would have provided; or

    b. By designing, operating, and/or marketing their social media platforms in a way that caused minors to experience problematic use, compulsive use, and/or addiction; or

    c. By deliberately targeting school-aged children, knowing of the impact that doing so could have on schools; or

    d. By not designing, operating, and/or marketing their social media platforms as a reasonably prudent, safe, and competent company would have done.

(2) The Defendant's failure to use ordinary care was a substantial factor in causing the School District to suffer harm.

(3) As a result of its harm, the School District incurred expenses it claims as damages.

    1. That the Defendant's Non-Protected Conduct breached the duty to use ordinary care;

    2. That such breach proximately caused DeKalb School District's students to suffer mental health harms; and

    3. That those students' mental health harm and/or disruption of the school environment caused DeKalb School District to incur the additional expenses it claims as damages.

1  ± DeKalb's proposal in red text; Defendants' proposal in blue text; DeKalb's proposed additions

2  to Defendants' proposal in purple text.

3  AUTHORITY:         Georgia Suggested Pattern Jury Instructions (Civil), § 60.010 (2025) (Torts;

4                     Ordinary Negligence (Ordinary Diligence)); *Evershine Products, Inc. v.*

5                     *Schmitt*, 130 Ga. App. 34, 37  (1973); *see also Maynard v. Snapchat, Inc.*,

6                     346 Ga. App. 131 (2018); Standing Order at (g)(ii)(B), (C); *Byrom v.*

7                     *Douglas Hosp., Inc.*, 338 Ga.App. 768, 772 (2016)

8

9

10  DATE SUBMITTED:        January 28, 2026_____

11

12  DATE REVISED:          _____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEKALB'S POSITION ON INSTRUCTION 15:**

2        DeKalb's proposed instruction follows Georgia's pattern instruction on ordinary

3    negligence. *See* Georgia Suggested Pattern Jury Instructions (Civil), § 60.010 (2024).

4        **Elements.** The parties each sought to enumerate elements of negligence under Georgia law

5    pursuant to the Court's standing order. YGR Pretrial Standing Order at 3.g.ii.c ("The

6    instructions . . . shall begin with the elements."). As discussed below, DeKalb's recitation is

7    preferable because it (1) explains that a failure to warn is negligence; (2) enumerates the relevant

8    duties DeKalb alleges Defendants breached; (3) unlike Defendants' proposed language, does not

9    improperly limit DeKalb's theory of harm to its students' mental health harms; and (4) does not

10   include improper Section 230 language.

11       **Failure to Warn Theory.** DeKalb's instruction includes language from caselaw discussing

12   when failure to warn qualifies as negligence. *See Evershine Prods., Inc. v. Schmitt*, 130 Ga.App.

13   34, 37 (1973) ("[O]ne placing in the channels of commerce an item containing a defect which under

14   foreseeable conditions is likely to cause injury may be negligent because of failure to warn the

15   prospective purchaser."); *Long v. Phillips & Brooks/Gladwin, Inc*., 2005 WL 8154279, at *1 (N.D.

16   Ga. Mar. 31, 2005) ("[A] seller of a product may be liable for failure to warn if the seller also

17   undertakes the duty to maintain the product and consequently knows or should have known of the

18   substantial risks associated with the product of which the user of the product would not be aware

19   absent a warning."). This will assist the jury in applying the correct legal standard when evaluating

20   DeKalb's negligence claim, which includes a failure to warn theory.

21       **Enumerated Breaches.** DeKalb's recitation of the element of breach is superior because it

22   identifies the specific theories of breach DeKalb asserts. These theories track this Court's prior

23   rulings and tie the instructions to the actual theories of the case alleged, making the instruction

24   easier for the jury to apply to the evidence they will hear at trial. *See* ECF 1267 at 26, 34.

25       **Improper Limitation to Mental Health Harms.** For the same reasons expressed above,

26   this framing is misleading. *See supra* [Negligence].

27       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

28   [Negligence]; *infra* [Section 230].

1    Defendants state that substantial factor is not applicable law for causation in Georgia and

2    cite to *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (2004). This is a mischaracterization of the law.

3    The *Fouch* case interpreting *John Crane* held, "[i]n a case…involving multiple tortfeasors, an

4    individual tortfeasors conduct need only constitute a contributing factor, not a "substantial" factor,

5    in the injury in order for the tortfeasor's conduct to be considered a proximate cause. See *John*

6    *Crane,* supra, 278 Ga. at 748–751, 604 S.E.2d 822; *Thompson v. Thompson,* 278 Ga. 752, 753–

7    754, 605 S.E.2d 30 (2004)." *Fouch v. Bicknell Supply Co.*, 326 Ga. App. 863, 869, 756 S.E.2d 682,

8    688 (2014). [9]

9    Plaintiff's reference to whether Defendants acted as "reasonably prudent, safe, and

10   competent" companies does not lower the burden; it simply reflects the standard of ordinary care

11   applied to organizations. Defendants' complaint about the words "safe" or "competent" is semantic

12   and does not alter the governing ordinary-care standard.

13   Defendants also accuse Plaintiff of being "argumentative," but Defendants are the ones

14   attempting to insert their preferred factual and legal narrative into the instruction. Plaintiff's

15   proposal tracks the record and does not instruct the jury to credit any disputed fact. The Court

16   should decline Defendants' effort to use jury instructions as a vehicle to pre-exclude factual themes

17   that the jury is entitled to consider.

18

19

20

21

22

23

24

25

26

27

---

[9] Defendants' objections improperly reargue summary-judgment positions under the guise of jury-instruction challenges. The purpose of jury instructions is to correctly state the law applicable to the facts the jury will decide, not to relitigate how Defendants believe the evidence should be characterized.

28

**DEFENDANTS' POSITION ON INSTRUCTION 15:**

Defendants' proposed modifications to the pattern instruction add the elements of Plaintiff's negligence claim, consistent with the Court's Standing Order at (g)(ii)(C), and enumerates the elements of breach of duty, causation, and damages as they apply to this case, in a manner "free of argument." *Id.* at (g)(ii)(D). Moreover, the modifications require Plaintiff to prove its claim as to each Defendant's Non-Protected Conduct.

Meanwhile, Plaintiff's proposed modifications inject argument into the instructions and seek to improperly instruct the jury on what actions do and do not constitute negligence. Defendants object to the second sentence of Plaintiff's proposal ("A company which places a platform . . ."), which is a non-pattern modification relating to a failure to warn theory. As an initial matter, Plaintiff has failed to present competent, admissible evidence that it did or would have relied on any warnings provided by Defendants, and therefore summary judgment should be entered in Defendants' favor on this theory. Additionally, Plaintiff has provided no authority to support the position that a duty to warn attaches under Georgia law outside the products liability context when a Defendant merely "plac[es] a platform . . . into the stream of commerce." Plaintiff's authority, *Evershine Prods., Inc. v. Schmitt*, 130 Ga. App. 34, 37 (1973), relates to the failure to warn standard in products liability cases—namely that a *manufacturer* of a foreseeably defective product "may be negligent because of failure to warn the *prospective purchaser*" (emphasis added).

But Plaintiff has not asserted a products liability case, and the Georgia pattern instructions do not include any failure-to-warn provision in the negligence instructions. Rather, the pattern instructions only provide warnings instructions in the context of products liability claims, which are not present here. Georgia Suggested Pattern Jury Instructions (Civil), §§ 62.680, 62.681 (2025). Thus, if the Court permits Plaintiff to proceed past summary judgment on its failure-to-warn theory, Plaintiff may argue that Defendants breached their duty of ordinary care on this basis and include the theory in the statement of the allegations in Instruction 1, but it is improper to include here.

Plaintiff's other case, *Maynard v. Snapchat, Inc.*, 816 S.E.2d 77 (Ga. Ct. App. 2018), held that Section 230 did not bar a claim at the motion to dismiss stage, but it made no holding regarding the standard for negligence or negligent failure to warn. It, therefore, does not support Plaintiff's

1    proposed failure-to-warn language.

2        Next, Defendants object to Plaintiff's proposed elements for the following reasons:

3        First, Plaintiff's proposal lowers the School District's burden to establish that Defendants

4    were negligent by erroneously requiring that the jury to consider whether each Defendant was a

5    "reasonably prudent, safe, and competent company" rather than whether they exercised the "degree

6    of care that is used by ordinarily careful persons or organizations under the same or similar

7    circumstances." Although "reasonably prudent" is consistent with case law, Plaintiff provides no

8    support for the inclusion of "safe" or "competent."

9        Second, it is for the jury to decide whether Defendants acted as ordinarily careful

10   organizations under the same or similar circumstances. *Robinson v. Kroger Co.*, 268 Ga. 735, 739

11   (1997). Plaintiff's proposed enumeration of its theories of negligence invade the province of the

12   jury by implying that Defendants were negligent for not providing certain warnings, and for

13   designing and promoting their platforms in certain ways.

14       Third, Plaintiff's proposed modifications are argumentative in that they inappropriately

15   suggest to the jury Plaintiff's themes of the case—namely, that Defendants' platforms "caused

16   minors to experience problematic use, compulsive use, and/or addiction," Defendants were

17   "deliberately targeting school-aged children," and that Defendants knew "of the impact that doing

18   so could have on schools." Defendants dispute these contentions, and in any event, the jury should

19   be instructed about the law in a neutral manner, not in a manner that accepts Plaintiff's

20   characterizations of what it believes the evidence will show. Defendants' proposal appropriately

21   frames the elements of Plaintiff's negligence claim in a neutral, non-argumentative manner.

22       Finally, Plaintiff's proposed modifications require the jury to find that each Defendant's

23   negligence was a "substantial factor in causing the School District to suffer harm," but Georgia has

24   rejected the "substantial factor" or "substantial contributing factor" formulation of causation. *John

25   Crane, Inc. v. Jones*, 278 Ga. 747, 751 (2004). Instead, the causation instruction correctly provides

26   that causation requires determination that "in a natural and continuous sequence, produces an event,

27   and without which cause such event would not have occurred." Moreover, the causation instruction

28   provides no definition for "substantial factor," so its use here would likely confuse the jury.

1

**Jury Instruction # 16**

2

**Causation – One Act Sufficient**

3          DeKalb must prove that a Defendant's [Non-Protected Conduct] [conduct] was negligent

4    in one or more ways alleged in order to recover from that Defendant. It is not necessary for the

5    School District to prove that the Defendant was negligent in every way that the School District

6    claims. If you find no negligence at all on the part of a Defendant, then the School District's case

7    against that Defendant ends.

8

9    ± DeKalb's proposal in red text; Defendants' proposal in blue text.

10   AUTHORITY:          Georgia Suggested Pattern Jury Instructions (Civil), § 60.060 (2025) (Torts;

11                              Negligence; One Act Sufficient)

12

13

14   DATE SUBMITTED:          January 28, 2026

15

16   DATE REVISED:          _____

17

18

19

20

21

22

23

24

25

26

27

28

1  **DEKALB'S POSITION ON INSTRUCTION 16:**

2        **Ordering.** This instruction should be the first in the causation instructions, following each

3  claim.

4        **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See*

5  *supra* [Negligence]; *infra* [Section 230].

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEFENDANTS' POSITION ON INSTRUCTION 16:**

2       **Order of Instructions.** This instruction should be given after the negligence instructions

3    because it only applies to Plaintiff's negligence count because it instructs the jury that a Defendant

4    need only be negligent in a single way that causes injury. No such rule applies to Plaintiff's public

5    nuisance theory.

6       **References to Conduct.** Plaintiff's proposed reference to "conduct" ignores the Court's

7    rulings on Section 230 and the First Amendment, which held that only certain, non-protected

8    conduct of each Defendant is actionable and that Defendants' protected conduct cannot form the

9    basis of liability. *See* SD Order at 2, 12–14; PI Order at 14. Plaintiff's proposed instruction would

10   improperly instruct the jury that Plaintiff need only prove that DeKalb was injured because

11   Defendants' conduct generally was negligent, and in the context of this instruction that *any* single

12   act was negligent, rather than being required to prove that each Defendant's Non-Protected Conduct

13   was negligent and that DeKalb was injured because of each Defendant's negligent Non-Protected

14   Conduct. Defendants' proposed reference to "Non-Protected Conduct" should, therefore, be

15   included.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**Jury Instruction # 17 - P**

**Second Claim - Public Nuisance**

3      DeKalb County School District's second claim is public nuisance. A nuisance is anything

4  that causes hurt, inconvenience, or damage to another. The fact that the act done may otherwise be

5  lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be

6  fanciful or such as would affect only one of extraordinary or demanding taste, but it shall be such

7  as would affect an ordinary, reasonable person or organization. A public nuisance is a significant

8  and unreasonable interference with a public right affecting the health and safety of a community. A

9  right common to the general public is distinct from a private right. A right common to the general

10 public is collective in nature and not like the individual right that everyone has not to be assaulted

11 or defamed or defrauded or negligently injured.

12      A public nuisance is a nuisance that damages all persons who come within the sphere of its

13 operation, though it may vary in its effect on individuals. A public nuisance exists if the act

14 complained of affects rights which are common to all within a particular area.

15      To establish this claim, the School District must prove that the Defendants' design,

16 operation, and/or marketing of their social media platforms, or their failure to warn the public of

17 the dangers associated with the use of their platforms, created a situation or permitted a situation to

18 exist that interferes with the public's right to health and safety or the public's right to education.

19

20 AUTHORITY:      Georgia Suggested Pattern Jury Instructions – Civil § 46.010 (2025)

21                          (Nuisances; Definition); *Moreland v. Cheney*, 267 Ga. 469, 469 (1997).

22

23

24

25

26

27

28

**Jury Instruction # 17 - D**

**Second Claim - Public Nuisance**

DeKalb School District's second claim is public nuisance. A public nuisance is a significant and unreasonable interference with a public right affecting the health and safety of a community. A right common to the general public is distinct from a private right. Rather it is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured.

Although it may vary in its effects on individuals, to be actionable, a public nuisance must damage all persons who come within the sphere of its operation.

Generally, a public nuisance gives no right of action to any individual person or organization, but if a public nuisance causes special damage to an individual person or organization other than that suffered by the general public, the special damage gives that person or organization a right of action.

The fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful or such as would affect only one of extraordinary or demanding taste, but it shall be such as would affect an ordinary, reasonable person or organization.

As such, to prevail on its public nuisance claim, DeKalb County School District must prove all of the following as to each Defendant:

1.   The Defendant's Non-Protected Conduct significantly and unreasonably interfered with a public right to health and safety by causing DeKalb School District's students to suffer mental health harms in a manner that caused DeKalb County School District to incur additional expenses;

2.   Each Defendant's Non-Protected Conduct is such that all persons who engage with that conduct would be injured; and

3.   As a result, DeKalb County School District sustained special damages other than those suffered by the general public.

AUTHORITY:       Georgia Suggested Pattern Jury Instructions – Civil § 46.010 (2025) (Nuisances; Definition); Georgia Suggested Pattern Jury Instructions – Civil § 46.040 (2025) (Nuisances; Public Nuisances Private Right to Abate); O.C.G.A. § 41-1-2; O.C.G.A. § 41-1-3; O.C.G.A. § 41-2-2; *City of College Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209 (2008); Restatement (Second) of Torts § 821B (1979), 822, 826-831 (1979); Order Granting in Part and Denying in Part Motion to Dismiss School District and Local Government Entities Claims of Public Nuisance, at *13 (ECF 1332)

DATE SUBMITTED:     January 28, 2026

DATE REVISED:     _____

1  **DEKALB'S POSITION ON INSTRUCTION 17:**

2      **Ordering.** This instruction should follow negligence and precede causation.

3      **Definition of Nuisance.** Defendants improperly seek to confuse and overwhelm the jury

4  with inaccurate and unnecessarily cumbersome instructions on Public Nuisance. DeKalb's

5  proposed instruction on the general definition of nuisance mirrors exactly how Georgia law defines

6  nuisance. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the

7  fact that the act done may otherwise be lawful shall not keep it from being a nuisance. . .  it shall

8  be such as would affect an ordinary, reasonable man." O.C.G.A. § 41-1-1. This definition has also

9  been adopted into the Georgia pattern jury instructions. *See* Georgia Suggested Pattern Jury

10 Instructions – Civil § 46.010 (2024) (Nuisances; Definition). By contrast, Defendants' definition

11 of nuisance disregards Georgia's statutorily provided definition and requires three different

12 elements to be satisfied, none of which are found in Georgia law. This will only invite confusion

13 for the jury. The Court should give DeKalb's proposed instruction.

14      Defendants say that for DeKalb to prove nuisance, it must prove (1) a significant and

15 unreasonable interference, (2) that caused students to suffer mental health harms, (3) in a way that

16 forced DeKalb to incur additional expenses. But DeKalb's complaint contains ample allegations

17 about distractions and disruptions to the school environment caused by Defendants' platforms, not

18 just allegations about mental health harms to students. See MC § 212. This Court recognized the

19 same in its motion to dismiss order. *See* ECF 1267 at 25-26.

20      Defendants' definition of public nuisance also strays from the simple definition provided

21 by Georgia law: "A public nuisance is one which damages all persons who come within the sphere

22 of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. Georgia courts

23 have long recognized this definition. *See, e.g., Moreland v. Cheney*, 267 Ga. 469 (1997); *Atlanta

24 Processing Co. v. Brown*, 227 Ga. 203, 211 (1971).

25      **Special Damage.** Defendants include an instruction about the circumstances under which a

26 party may have a private right of action, which is a question of law that is completely unnecessary

27 for the jury to consider in general or as an element of the claim. *See Somerville v. White*, 337 Ga.

28 App. 414, 416 (2016) (describing determination whether statute provides private right of action as

1    a "judicial task"). The Court has already decided that DeKalb may maintain an action for nuisance

2    under Georgia law. *See* ECF 1332 at 26-27.

3          Defendants' contention that Georgia courts have not expressly recognized a public right to

4    education in nuisance cases ignores the concepts of nuisance law. Just because the public right to

5    education in the context of nuisance has not been established by case law does not mean there is no

6    right. As Defendants concede, a public nuisance exists when conduct interferes with a right shared

7    by the community, not one exercised identically by every person. *Moreland,* 267 Ga. 469 (1997).

8    Although it is not termed a "right", Georgia statutorily requires children to attend some kind of

9    school between their sixth and sixteenth birthdays, and it describes that attendance as

10   "compulsory". O.C.G.A. § 20-2-690.1(b). Public education is a constitutionally mandated public

11   system benefiting the entire community, and interference with a school district's ability to operate

12   safely, or a child's ability to receive their education, qualifies as interference with a public right.

13   *See Kenny A. ex rel. Winn & Perdue*, 218 F.R.D. 277, 295-96 (N.D. Ga. 2003) [implying a private

14   right of action for foster children in custody of Georgia Department of Human Resources to sue for

15   denial of access to education under Section 20-2-690.1].

16         Furthermore, Defendants' contention that Plaintiff has not shown interference with the

17   public's educational rights—nor that DeKalb has suffered injuries distinct from the public—is

18   incorrect. Plaintiff has set forth evidence that the conduct at issue caused concrete, measurable

19   disruption to DeKalb's ability to operate its public schools, diverted resources, impaired

20   educational functions, and substantially affected the health and welfare of students under its care.

21         Defendants' argument that "health and safety" is too broad also ignores O.C.G.A. § 41-1-1,

22   which broadly defines nuisance as anything causing "hurt, inconvenience, or damage." Plaintiff's

23   instruction mirrors the statute and as such it should be followed.

24         It is erroneous to instruct the jury that DeKalb must prove "as to each Defendant" that

25   DeKalb suffered damages. *See infra* [Causation – Proximate Cause].

26         **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

27   [Negligence]; *infra* [Section 230].

28

1    **DEFENDANTS' POSITION ON INSTRUCTION 17:**

2        Defendants' proposed instruction relies on the Georgia pattern instructions, case law, and

3    the Court's Standing Order to simply instruct the jury on the elements of Plaintiff's claim.

4        Defendants object to Plaintiff's proposed public nuisance instruction. As with the

5    negligence instruction, Plaintiff's proposed instruction impermissibly contemplates harms beyond

6    those allegedly caused by Defendant's Non-Protected Conduct and ignores the Court's rulings on

7    Section 230 and the First Amendment, which held that only certain, non-protected conduct of each

8    Defendant is actionable and that Defendants' protected conduct cannot form the basis of liability.

9    *See* SD Order at 2, 12–14; PI Order at 14. Defendants' proposed reference to "Non-Protected

10    Conduct" should, therefore, be included.

11        Plaintiff's proposed instruction also introduces confusion by misstating the law and failing

12    to clearly enumerate the requisite elements of public nuisance as applied to this case. First, despite

13    properly stating that a public nuisance is a nuisance that must "damage[] all persons who come

14    within the sphere of its operation," the third paragraph of Plaintiff's proposed instruction

15    confusingly omits that the School District must prove that the Defendants' Non-Protected Conduct

16    must injure all persons who engage with such conduct. O.C.G.A § 41-1-2. Meanwhile, Defendants'

17    instruction includes this requirement in its list of elements.

18        Second, Plaintiff's proposed instruction fails to include the requirement that a public

19    nuisance cause special damage to the Plaintiff other than that suffered by the general public, which

20    is a requisite element for a party to assert such a claim under O.C.G.A. § 41-1-3 and § 41-2-2 and

21    is included in the Georgia pattern instruction. Such omission seeks to circumvent the distinction

22    between public and private nuisance and absolve Plaintiff of the burden of providing the necessary

23    proof of such special injury. In opposition to this language, Plaintiff cites an irrelevant case that

24    discusses whether another statute grants a right of action, but the fact that the Pattern Instruction

25    46.040 instruct the jury on this issue indicates that Georgia courts intend the jury to determine

26    whether Plaintiff has special damage to grant a right of action. Moreover, Plaintiff cannot rely on

27    the allegations of their Complaint or the Court's motion-to-dismiss ruling to establish an element

28    it must prove at trial.

Third, Plaintiff's proposed instruction references the "public's right to education." Public nuisance requires an interference with a right "common to all" members of the public. *Moreland v. Cheney*, 267 Ga. 469, 470 (1997). Georgia courts have not recognized a "right to education" in the context of a public nuisance claim. Additionally, the "public's right to education" is not cognizable for public nuisance purposes because such right does not apply to the public at large—rather, access to and participation in K–12 schooling pertains only to enrolled students and school stakeholders. Even if the "right to education" was a recognized right for the purposes of public nuisance, Plaintiff has not proven that any such "right to education" has been interfered with nor that DeKalb's own "right to education" was injured in a manner different from the manner the general public was injured.

Finally, Plaintiff's formulation of the alleged public right as "the public's right to health and safety" is impermissibly broad and likely to mislead or confuse the jury—it provides the jury no basis to determine whether or how Plaintiff's right to health and safety was violated, or even what "the public's right to health and safety" even entails. *White v. Stanley*, 369 Ga. App. 330, 337 (2023) ("[A] request to charge, although it contains a correct abstract principle of law, is properly refused, where it may be misleading or confusing in its application to the facts of the particular case." (quotations omitted)); *Lindley v. State*, 225 Ga. App. 338, 342 (1997) ("If any portion of a requested charge is inapt, incorrect, *misleading, confusing*, not adequately adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper." (punctuation omitted) (emphasis added)). A generalized "right to health and safety" invites the jury to impose liability for reasons beyond the alleged particularized interference with a recognized public right. Defendants' proposed instruction solves this ambiguity by defining the interference as "causing student mental health harms," which necessitates that the "right to health and safety" at issue is "mental health." Similarly, Plaintiff's definition of a nuisance as "anything that causes hurt, inconvenience, or damage to another," while consistent with Georgia statute, is more appropriate in traditional nuisance cases involving land and water rights. Here, however, it is likely to mislead the jury into applying a reduced standard, allowing Plaintiff to prevail due to mere inconvenience.

**Jury Instruction # 18**

**Causation – Proximate Cause**

On both its negligence and public nuisance claims, DeKalb must prove by a preponderance of the evidence that each Defendant caused the School District to incur additional expenses it claims as damages from either mental health harms suffered by its students and/or disruption of the school environment. As it relates to DeKalb's negligence claim, the term "Actionable Non-Protected Conduct" means Non-Protected Conduct that you find failed to conform to the standard of reasonable care, if any.

Proximate cause means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. Defendants do not have a duty to prevent third parties from using their platforms in ways that may cause harm to DeKalb County School District or its students (for example, individuals who post dangerous "challenges" on Defendants' platforms, commit crimes, or post threats on Defendants' platforms).

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the sole proximate cause of an occurrence, then no act or omission of any party could have been a proximate cause.

When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the School District's harm. It need not be the only cause, nor the last or nearest cause. It is sufficient if [it] [a Defendant's conduct] combines with another cause resulting in the injury. A Defendant cannot avoid responsibility just because some other Defendant, person, condition, or event was also a proximate cause in causing the School District's harm, unless the other cause was the sole cause of the School District's harm. Each Defendant can be liable only for harms that you determine were caused by that Defendant's Actionable Non-Protected Conduct. You may not impose liability based on any harms that you believe may have been caused by the Defendants' Protected Conduct.

1    DeKalb County School District asserts that the independent wrongful conduct of each

2  Defendant unites to produce a single indivisible injury. When the independent wrongful conduct of

3  more than one defendant contributes to one indivisible injury, you may find each defendant liable

4  even if it not possible to determine whether or not the wrongful acts of any particular defendant,

5  acting alone, would have caused the injury.

6    The mere fact that a Defendant generally knows that third-party bad actors may use their

7  social media platforms to spread harmful challenges, transmit threats, or engage in crimes, is not,

8  by itself, sufficient to show that Defendants caused the School District's harm. However, even if a

9  third party is involved in the harm, you may hold Defendants liable for [their own conduct,

10  including conduct] [Defendants' Non-Protected Conduct] that foreseeably facilitates harm from

11  third parties.

12

13  ± DeKalb's proposal in red text; Defendants' proposal in blue text; Defendants' proposed revisions

14    to DeKalb's proposal in green text.

15  AUTHORITY:    Georgia Suggested Pattern Jury Instructions (Civil), § 60.200 (2025) (Torts;

16    Proximate Cause; Definition); *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal.

17    3d 578, 588-89 (1978); *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558,

18    571 (2019); *Deaton Holdings, Inc. v. Reid*, 367 Ga. App. 746, 749 (2023);

19    *Clyde v. Peterson*, 232 Ga. App. 589-590 (1998); *Hughes v. Kia Motors*

20    *Corp.*, 2013 WL 12099352, at *6 n.3 (N.D. Ga. Jan. 29, 2013); *Polston v.*

21    *Boomershine Pontiac-GMC Truck, Inc.*, 262 Ga. 616, 618 (1992); *KOS Ltd.*

22    *v. Dockery*, 371 Ga. App. 216, 220-21 (2024); *Georgia CVS Pharmacy, LLC*

23    *v. Carmichael*, 316 Ga. 718, 721-23 (2023); *Green Meadows Hous.*

24    *Partners, LP v. Macon-Bibb Cnty.*, 372 Ga. App. 724, 731 (2024); Georgia

25    Suggested Pattern Jury Instructions (Civil) § 66.504 (2025)

26

27  DATE SUBMITTED:    January 28, 2026

28

DATE REVISED: _____

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEKALB'S POSITION ON INSTRUCTION 18:**

2        DeKalb's proposed instruction follows Georgia's pattern instruction on proximate cause.

3    *See* Georgia Suggested Pattern Jury Instructions (Civil), § 60.200 (2024).

4        **Scope of Alleged Harms.** Defendants improperly limit the nature of the harm and cause of

5    damages to "mental health harms suffered by its students." *See supra* [Negligence].

6        **Indivisible Injury.** Defendants erroneously instruct the jury that a cause may only be a

7    cause of harm if "without which cause such event would not have occurred." Georgia law

8    recognizes the indivisible injury rule. *See Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 571

9    (2019); *see also Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 588-89 (1978). It is

10   "longstanding precedent" in Georgia that "when multiple acts of negligence combine to produce a

11   single indivisible injury and no rational basis exists for an apportionment of the damages, the actors

12   are considered joint tortfeasors." *Deaton Holdings, Inc. v. Reid*, 367 Ga.App. 746, 749 (2023); *see*

13   *also Clyde v. Peterson*, 232 Ga.App. 589-590 (1998). In such cases, it is only required that each

14   defendant's conduct be a substantial factor in causing the plaintiff's harm. *See Hughes v. Kia*

15   *Motors Corp.*, 2013 WL 12099352, at *6 n.3 (N.D. Ga. Jan. 29, 2013) (noting Georgia's substantial

16   factor test in case of indivisible injury with multiple alleged tortfeasors). Even if Defendants "do

17   not anticipate asserting a sole proximate cause defense" aside from contributory negligence,

18   because Plaintiff alleges that multiple Defendants contributed to an indivisible injury in this

19   complex case, Plaintiff's language that they "cannot avoid responsibility" due to causation by

20   "some other Defendant" and clarifying explanation of concurrent causation that focuses on

21   indivisible injury (which accurately reflects Georgia law, *see Reid*, 367 Ga.App. at 749) are

22   warranted. For this reason, language about but-for causation is inappropriate, as each Defendant

23   could avoid liability if another was a substantial factor in causing harm. Similarly, Defendants'

24   language that "Each Defendant can be liable only for harms that you determine were caused by that

25   Defendant's [conduct]" misstates Georgia law in cases of indivisible injury. The burden is on

26   Defendants to establish that evidence exists which would allow the jury to attribute particular harms

27   to particular Defendants' conduct. *See Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 262 Ga.

28   616, 618 (1992); *KOS Ltd. v. Dockery*, 371 Ga.App. 216, 220-21 (2024).

**Third Party Harms.** Plaintiff objects to instructing the jury on harms caused by third parties, but offers competing language if the Court decides an instruction is necessary.

First, this instruction is unwarranted. It is unlikely that evidence of challenges, crimes, or threats will be introduced at trial, much less play a substantial role that would warrant cautioning the jury about it here. The scope of the Defendants' duty is a question of law that the Court has already resolved. Including Defendants' proposed language risks misleading the jury into confusing duty with proximate cause—the question they *are* tasked with answering. If the Court is inclined to include an instruction on third party conduct, Plaintiff's language more closely adheres to the Court's actual ruling and informs the jury about when it may consider third-party misconduct in its determination of proximate cause. *See* ECF 1267 at 25-26.

Further, Defendants' proposed instruction is misleading because it presents an incomplete picture of the law. The instruction creates the false impression that third party negligence categorically relieves the Defendants from liability. This is at odds with both Georgia law and this Court's ruling: as Plaintiff's proposed instruction makes clear, Georgia law holds a negligent wrongdoer liable for causing foreseeable third-party misconduct. *See Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 721-23 (2023); *see also* ECF No. 1267 at 7-8, 25-26.

If the Court is inclined to instruct on third-party conduct, Plaintiff's language more closely adheres to the Court's ruling and informs the jury about when it may consider third-party misconduct. *See* ECF No. 1267 at 25-26. Defendants' critique falls flat. They claim that instructing the jury that Defendants may be held liable for their conduct, including that which "foreseeably facilitates harm from third parties" (as DeKalb does) would somehow suggest to the jury that they "could impose liability" for third-party conduct that was neither foreseeable nor facilitated by Defendants. But this claim is baseless: DeKalb's language entails that third-party conduct be facilitated by Defendants and foreseeable for liability to attach, which tracks the Court's ruling about "foreseeable uses" of Defendants' features by third parties. ECF 1267 at 25.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

1    **DEFENDANTS' POSITION ON INSTRUCTION 18:**

2          If the Court allows Plaintiff's claims to move forward, it should adopt Defendants' proposed

3    causation instruction for the following reasons: First, Defendants' first and final modifications from

4    the pattern instruction (the sentences beginning "As it relates to DeKalb's negligence claim, the term

5    . . ." and "Each Defendant can be liable only for harms . . .") instruct the jury that they must consider

6    whether Defendants' actionable conduct, as opposed to any admitted evidence of non-actionable

7    conduct, was a proximate cause of Plaintiff's claimed injuries. Failure to so instruct could allow the

8    jury to find causation on the basis of barred theories. *See* SD Order at 2, 12–14; PI Order at 14.

9    Defendants' proposed references to "Non-Protected Conduct" should, therefore, be included.

10          Second, Defendants' next proposed modification ("Defendants do not have a duty to

11    prevent third parties . . .") instructs the jury that, even if foreseeable, the actions of third parties

12    cannot provide the basis for liability, consistent with the Court's rulings at the motion to dismiss

13    stage that "defendants' general knowledge that bad actors may propagate harmful challenges,

14    transmit threats, or engage in crime on their platforms does not, on its own, suffice to establish

15    proximate cause." SD Order at 25. By contrast, Plaintiff's final paragraph on third-party harm ("The

16    mere fact that a Defendant generally knows . . .") is incorrect, confusing, and fails to provide any

17    guideposts for what type of conduct is and is not subject to liability in this case. For example,

18    Plaintiff's proposal instructs that Defendants can be held liable for their own actions "including"

19    foreseeable third-party conduct, but Georgia law allows liability for third-party conduct ***only*** when

20    that conduct is foreseeable or where the third party's conduct was triggered by the defendant's acts.

21    *Ontario Sewing Mach. Co., Ltd. v. Smith*, 275 Ga. 683, 686 (2002). Plaintiff's proposed instruction

22    incorrectly suggests that the jury could impose liability on Defendants for third-party acts outside

23    these circumstances. Moreover, the Court provided examples of the type of Defendant conduct

24    related to third parties that might or might not be actionable in its motion to dismiss ruling, SD

25    Order at 24-25, but Plaintiff's proposed instruction provides no such guidance.[10]

26          Third, Defendants object to Plaintiff's modification to the pattern instruction in the fourth

27    paragraph ("A Defendant cannot avoid responsibility . . ."). It is a non-pattern instruction and is

28

---

[10] If the Court gives Plaintiff's proposed language, Defendants' modifications ensure that the jury only considers whether Defendants' Non-Protected Conduct foreseeably facilitated third party harms.

unnecessary. The pattern instruction adequately instructs the jury that Defendants' conduct "need not be the only cause" to constitute the proximate cause of Plaintiff's injuries. Plaintiff provides no basis to deviate from the pattern instruction. Moreover, Defendants do not anticipate asserting a sole proximate cause defense except that they intend to argue that Plaintiff's own contributory negligence was the sole cause of its injuries, which is appropriately addressed by Instruction 22.

Finally, Defendants object to the penultimate paragraph of Plaintiff's proposal ("DeKalb County School District asserts that the independent wrongful conduct . . ."). It is unnecessary in light of the pattern instruction; it incorrectly relies on California law; and the Georgia cases that Plaintiff cites relate to the interpretation of the apportionment act and law of contribution, not the standard for causation (*Loudermilk*, *Deaton Holdings*, and *KOS Ltd.*), misinterprets Georgia law in dicta (*Hughes*), or align with the pattern instruction language (*Polston*)—which the parties agree should be included in the instruction—that "it is sufficient" to constitute proximate cause for a defendant's conduct "if it combines with another cause resulting in the injury" This sufficiently instructs the jury on the law of concurrent causation and no authority exists that a concurrent cause theory removes the "but for" causation standard.[11]

Defendants expect Plaintiff to use this proposed insertion to avoid its responsibility to present evidence that each Defendants' Non-Protected Conduct caused Plaintiff's injuries. Although Georgia law recognizes concurrent causation, Plaintiff must still present specific evidence as to the allegedly causative conduct for each Defendant, and it is insufficient to present as to only the effects of "social media" generally. *See Brazil v. Janssen Res. & Dev. LLC*, 249 F. Supp. 3d 1321, 1338–1339 (N.D. Ga. 2016) ("Plaintiff's negligence claim fails for a lack of specificity as to each Defendant…") (internal quotations omitted). Plaintiff's proposed instruction misleadingly suggests that the jury could find in Plaintiff's favor against a Defendant even if the jury did not find that such Defendant engaged in negligent, Non-Protected Conduct.

---

[11] Moreover, Plaintiff's injury is not the type of injury that "cannot be rationally apportioned between the tortfeasors." *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 262 Ga. 616, 617 (1992). Unlike a physical injury, Plaintiff's alleged damages are purely economic and can be determined in real dollars, and this could be divided, e.g., based on the proportion of time Plaintiff's students used each Defendant's platform.

**Jury Instruction # 19**

**Causation – Intervening Cause**

A Defendant may be held liable for a harm when [it commits a negligent act that] [its negligent Non-Protected Conduct] puts other forces in motion or operation resulting in the harm when such other forces are the natural and probable result of the act that the Defendant committed and that reasonably should have been foreseen by that Defendant. When the harms could not reasonably have been foreseen as the natural, reasonable, and probable result of the original negligent act, then there can be no recovery. If the chain reaction that resulted from that Defendant's alleged negligence, if any, meets the above tests, then the School District may recover.

OBJECTION:          Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

± Defendants' proposal in blue text.

DEKALB'S CITED AUTHORITY:

Georgia Suggested Pattern Jury Instructions (Civil), § 60.202 (2025) (Torts; Proximate Cause; Foreseeability; Natural and Probable Consequence; Intervening Cause Rules (Chain Reaction Situation)); *Drucker v. Morgan*, 371 Ga. App. 334, 339 (2024)

DATE SUBMITTED:          January 28, 2026

DATE REVISED:          _____

**DEKALB'S POSITION ON INSTRUCTION 19:**

DeKalb's proposed instruction is a verbatim reproduction of Georgia's pattern instruction on intervening cause. *See* Georgia Suggested Pattern Jury Instructions – Civil § 60.202 (Torts; Proximate Cause; Foreseeability; Natural and Probable Consequence; Intervening Cause Rules (Chain Reaction Situation). The only edits made are to insert the parties' names, and to change "injury" to "harm" for the ease of the jury's understanding in a case that involves economic harms.

**Intervening Cause Instruction is Warranted.** The proposed instruction is also necessary to assist the jury in evaluating causation where, as here, defendants argue that there were alternative causes to the plaintiff's injury. Under Georgia law, where "the character of [an] intervening act was such that its probable or natural consequences could reasonably have been foreseen by the original wrongdoer, the causal connection is ***not*** broken." *Drucker v. Morgan*, 371 Ga.App. 334, 339 (2024) (quoting *Granger v. MST Transp., LLC*, 329 Ga.App. 268, 270 (2014)) (emphasis added). An instruction that makes this caveat clear is thus necessary to explain to the jury that Defendants cannot escape liability merely by pointing the finger at another party—whether that be the "poverty," "chronic absenteeism," and "pervasive dysfunction in the administration" that Defendants have historically argued to be the source of DeKalb's harms, ECF 2289 at 1, or the "individuals who post dangerous 'challenges' on Defendant's platforms, commit crimes, or post threats on Defendants' platforms," which Defendants insist on mentioning to the jury through, for example, the language of their jury instructions on proximate cause. If Defendants agree to abandon their unsupported proffer of alternative causes, then DeKalb agrees that this instruction would be unnecessary.

Defendants contend that DeKalb would use this instruction to sidestep this Court's prior rulings. That assertion lacks any factual basis and is purely speculative. Plaintiff has complied—and will continue to comply—with all rulings of this Court, both in letter and in spirit.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; *infra* [Section 230].

**DEFENDANTS' OBJECTION TO INSTRUCTION 19:**

Defendants object to this instruction as unnecessary and likely to lead to jury confusion.

Plaintiff's proposed instruction introduces confusion by duplicating core proximate cause concepts. Refusing to give this instruction would not be error, as the proximate cause instruction adequately instructs the jury on principles of foreseeability. *Lee v. Georgia Power Co.*, 296 Ga. App. 719, 722 (2009).

Plaintiff asserts that this instruction is necessary to prevent Defendants from escaping liability by arguing that alternative causes (*e.g.*, poverty, homelessness, broken families) caused Plaintiff's alleged injuries. This misunderstands Defendants' position on this instruction and alternative causes. Defendants' arguments relating to alternative (and more plausible) causes of Plaintiff's alleged economic losses are legally distinct from intervening or superseding causes. As the pattern language makes clear, an intervening cause is one that occurs *after* a defendant's alleged negligence "puts other forces in motion or operation resulting in the harm." That is *not* the argument Defendants intend to present at trial.  Rather, Defendants intend to argue Plaintiff's alleged damages are the result of other causes, not Defendants.

Defendants also anticipate that Plaintiffs will use the proposed intervening cause instruction to sidestep this Court's rulings on Section 230, the First Amendment, and third party conduct; by omitting guidance tethered to those rulings and failing to delineate what may constitute "the natural, reasonable, and probable result" of Defendants' Non-Protected Conduct, the instruction invites juror confusion and encourages the jury to ascribe liability based on evidence of non-actionable conduct, effectively nullifying the Court's rulings through an all-purpose causation workaround. Given the complexity of determining which conduct is protected by Section 230 and the First Amendment, as well as the bar on recovery for certain third-party conduct, the instruction is likely to mislead the jury and permit a verdict resting on evidence of non-actionable conduct, contrary to the Court's prior rulings. *See* SD Order at 2, 12–14; PI Order at 14.

To the extent Plaintiff's proposed instruction is included over Defendants' objection, Defendants request that the Court instruct Plaintiff that it cannot argue at trial that any content on Defendants' platforms, viral challenges, or any other protected conduct constitutes a "natural,

reasonable, and probable result" of Defendants' actions. Moreover, Defendants' proposed modifications should be made to correctly instruct the jury to limit the scope of injuries that the jury may consider to only those that are proximately caused by Defendants' Non-Protected Conduct.

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 20**

**Unusually Susceptible Plaintiff**

Plaintiff may not recover for injuries or disabilities that are not connected with Defendants' Non-Protected Conduct. There can be no recovery for Plaintiff for any injury or disability that was not proximately caused by Defendants' Non-Protected Conduct.

It is possible that a plaintiff like DeKalb County School District operated under such conditions that made it more susceptible to harm than a similar entity. If you find that this is the case for the School District here, but that [a Defendant's] [one or more Defendants'] negligence exacerbated the School District's preexisting conditions, then the School District is entitled to recover damages from that Defendant to the extent that its conditions were worsened or prolonged.

OBJECTION: Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:    Georgia Suggested Pattern Jury Instructions (Civil), § 66.504 (2025) (Tort Damages; Pain and Suffering; Preexisting Injury; Aggravation); *Geary v. Estate of Tapley*, 373 Ga. App. 561, 566 (2024)

DATE SUBMITTED:    <u>January 28, 2026</u>

DATE REVISED:    <u>_____</u>

**DEKALB'S POSITION ON INSTRUCTION 20:**

**Unusually Susceptible Plaintiff Instruction is Warranted.** Defendants object to the inclusion of an Unusually Susceptible Plaintiff jury instruction but fail to provide justification. In fact, Defendants' prior arguments necessitate and support the inclusion of the "egg shell" Plaintiff instruction. In their Motion for Summary Judgment, Defendants repeated ad nauseum all the "problems" DeKalb had before Defendants' platforms caused DeKalb damage. *See* ECF No. 2289 at 1, 3, 35 (opening MSJ brief with alleged longstanding issues of poverty, dysfunction, violence, etc.). Defendants cannot attempt to use those prior "issues" as alternate causes and argue that those alternative cause are the actual cause of DeKalb's harms instead of Defendants' wrongful conduct. The fact that Defendants assert these alleged alternative causes demonstrates exactly why an unusually susceptible instruction is not only warranted, but mandated.. If Defendants want to abandon their unsupported proffer of alternative causes, then DeKalb would submit this instruction is not necessary.

In *Geary v. Estate of Tapley*, 373 Ga. App. 561, 566 (2024), the Court of Appeals reaffirmed the longstanding rule that "a tortfeasor takes a plaintiff in whatever condition he finds him." The court explained that "[a] negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act is negligent." *Id*. The court further emphasized that jury charges may be given when supported by even slight evidence, and because evidence of Tapley's preexisting conditions was presented, the instruction was proper. *Id*. (citing *AT Systems Southeast v. Carnes*, 272 Ga. App. 671, 674 (2005) (cleaned up)).

This principle is not novel. The Georgia Supreme Court has likewise held that "tortfeasors take their victims as they find them." *Cowart v. Widener*, 287 Ga. 622, 628 (2010) (cleaned up)). Together, these authorities establish that where evidence exists of a plaintiff's preexisting or unusual susceptibility, the jury may properly be instructed that the defendant remains liable for the full extent of the harm caused.

Accordingly, Defendants' objection cannot overcome binding precedent. The requested instruction is firmly grounded in Georgia law and should be given.

1      **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here in a way

2  that improperly suggests that they have immunity where publication is a "but-for" cause of a

3  plaintiff's harm, an argument that this Court has already rejected. *See supra* [Negligence]; *infra*

4  [Section 230]; *see also* ECF No. 430 at 11 ("Critically, Section 230 does not create immunity

5  simply because publication of third-party content is relevant to or a but-for cause of the plaintiff's

6  harm.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **DEFENDANTS' OBJECTION TO INSTRUCTION 20:**

2    Defendants object to DeKalb's proposed "unusually susceptible plaintiff" instruction.

3    Georgia law recognizes no such doctrine, but to the extent it is analogous with the eggshell plaintiff

4    doctrine or the rule that a plaintiff may recover for the aggravation of a preexisting condition,

5    Plaintiff's proposed instruction seeks to inappropriately extend this rule to an organizational

6    plaintiff.

7    No Georgia precedent applies the doctrine/rule to organizational plaintiffs—all cases apply

8    it only to personal injury cases involving individual persons. Indeed, even Plaintiff's authority,

9    *Geary v. Estate of Tapley*, involved an *individual plaintiff* suffering from an *existing bladder*

10   *perforation* and evidence existed such that the jury could find that the condition was worsened by

11   the defendant's failure to perform a cystogram and/or repair such bladder perforation. *Geary*, 373

12   Ga. App. at 565.

13   Consistent with the cases where this type of instruction was given, Georgia's model jury

14   instruction frames the rule in terms of an individual plaintiff that has received a personal injury

15   resulting in the aggravation of "any physical condition, ailment, or disease," and contains no

16   language permitting substitution of an organization or contemplating given the instruction in cases

17   involving the alleged aggravation of purely economic harms. *See* Georgia Suggested Pattern Jury

18   Instructions (Civil) § 66.504 (2025).

19   Even if this rule was applicable to organizational plaintiffs seeking only economic damages,

20   the instruction is still improper because Plaintiff has not pointed to any evidence showing that

21   DeKalb—a school district with an annual budget exceeding $2.1 billion—is "unusually

22   susceptible" to harm. To the extent Plaintiff seeks to use this instruction to excuse its failure to

23   deploy necessary resources to ensure organized classroom management and address their own

24   students' mental health conditions, such use is impermissible. The rule at issue relates back to the

25   aggravation of an existing condition, meaning the injury for which Plaintiff seeks to recover must

26   have been an injury that preexisted Defendants' conduct that was aggravated and made worse by

27   Defendants' conduct, not a vehicle to excuse Plaintiff's own funding decisions.

28   To the extent Plaintiff's proposed instruction is included over Defendants' objection,

1   Defendant's proposed modifications should be made. Defendants' first requested revisions
2   incorporate pattern instruction language from the aggravation instruction ("Plaintiff may not
3   recover for injuries . . ."). Georgia Suggested Pattern Jury Instructions (Civil) § 66.504 (2025). This
4   correctly instructs the jury to limit the scope of injuries that the jury may consider to only those that
5   are proximately caused by Defendants' Non-Protected Conduct.

6       Defendants' next set of proposed revisions ("a Defendant's" and "from that Defendant")
7   ensure that the jury cannot award damages from multiple defendants if it finds that only one
8   defendant aggravated Plaintiff's injuries because damages may only be awarded as to the defendant
9   that caused any aggravation.

10      Plaintiff's proposed departure from established law would risk confusing the jury,
11  improperly expand liability beyond settled foreseeability and proximate-cause principles, and invite
12  speculative damages.

1        **Jury Instruction # 21**

2        **Statute of Limitations**

3        [Defendants have raised the statute of limitations as an affirmative defense. Unless an

4    exception applies, lawsuits] [Lawsuits] upon claims must be filed within specified periods of time

5    after the claims arise and if not filed within that time, they are barred by the statute of limitations

6    and no recovery shall be allowed. [The statute of limitations for DeKalb's negligence claim is two

7    years. The statute of limitations for DeKalb's public nuisance claim is four years.] [The statute of

8    limitations for DeKalb's claims is four years. DeKalb filed its lawsuit on November 7, 2023.]

9    Therefore, if [Defendants prove that it is more likely than not that DeKalb's claimed harm occurred

10   before November 7, 2019, DeKalb's claims are barred.] [Defendants prove that it is more likely

11   than not that DeKalb's claimed harm occurred before November 7, 2021, DeKalb's negligence

12   claim is barred. If Defendants prove that DeKalb's claimed harm occurred before November 7,

13   2019, DeKalb's public nuisance claim is barred.] Moreover, if DeKalb proves that it was injured

14   by a Defendant after November 7, 2019, DeKalb's claim may proceed, but DeKalb may not recover

15   for any injury it sustained before November 7, 2019.

16       The continuing tort doctrine and the discovery rule are exceptions to the statute of

17   limitations. A continuing tort is one inflicted over a period of time. It has been described as the

18   plaintiff's injury developing "from prolonged exposure to the defendant's tortious conduct." In a

19   continuing tort, the statute of limitations does not run until a plaintiff discovers, or with reasonable

20   diligence should have discovered, that he was injured.

21       The term "discovery rule" can be used interchangeably with "continuing tort doctrine".

22   These principles provide that a plaintiff's cause of action does not accrue, and the statute of

23   limitations does not commence to run, until the plaintiff knew, or through the exercise of reasonable

24   diligence should have known, not only the nature/identity of the injury, but also the causal

25   connection between the injury and the alleged negligent conduct of the defendant.

26       Therefore, even if Defendants present evidence that DeKalb's public nuisance injury

27   occurred prior to November 7, 2019, DeKalb's public nuisance claim is still timely if DeKalb shows

28   that:

1    (1) prior to that date, DeKalb sustained an injury caused by Defendant's conduct; and

2    (2) DeKalb did not know, and through the exercise of reasonable diligence could not have

3    known, that its injury was caused by Defendants' wrongdoing.

4    Similarly, even if Defendants present evidence that DeKalb's negligence injury occurred

5    prior to November 7, 2021, DeKalb's negligence claim is still timely if DeKalb shows that:

6    (1) prior to that date, DeKalb sustained an injury caused by Defendant's conduct; and

7    (2) DeKalb did not know, and through the exercise of reasonable diligence could not have

8    known, that its injury was caused by Defendants' wrongdoing.

9

10   OBJECTION:        Plaintiff objects to this instruction in full. Plaintiff has proposed edits to the

11   extent this instruction is included over Plaintiff's objection.

12

13   ± DeKalb's proposal in red text; Defendants' proposal in blue text.

14   AUTHORITY:        Georgia Suggested Pattern Jury Instructions (Civil), § 38.010 (2025) (Statute

15                    of Limitations); O.C.G.A. § 9-3-31; *Corp. of Mercer Univ. v. Nat'l Gypsum*

16                    *Co.*, 258 Ga. 365, 365 (1988); *Hickey v. Askren*, 198 Ga. App. 718, 720

17                    (1991); *Carr v. Ethicon*, Inc., 2011 WL 4424457 (N.D. Ga. 2011), *2; *King*

18                    *v. Seitzingers, Inc.*, 160 Ga. App. 318-19 (1981); *Jones v. Ethicon, Inc.*, 2021

19                    WL 1199028 (S.D. Ga. 2021), *5, quoting *Luem v. Johnson*, 258 Ga. App.

20                    530, 532 (2002)

21

22

23   DATE SUBMITTED:        January 28, 2026

24

25   DATE REVISED:        _____

26

27

28

**DEFENDANTS' POSITION ON INSTRUCTION 21:**

Defendants' proposed instruction, without Plaintiff's proposed modifications, is sufficient to instruct the jury on Defendants' statute of limitations defense. Plaintiff's modifications, on the other hand, seek to incorrectly instruct the jury on two exceptions to the statute of limitations that do not apply under these circumstances: the discovery rule and the continuing tort doctrine.

In non-contract actions, Georgia law determines the appropriate statute of limitations according to the type of injury a plaintiff alleges, not the theory of recovery. For example, O.C.G.A. § 9-3-30 governs damage to real property, O.C.G.A. § 9-3-31 governs injuries to personalty (i.e., personal property), and O.C.G.A. § 9-3-33 governs personal injury. Georgia courts have further held that claims for economic losses are subject O.C.G.A. § 9-3-31, even in cases that do not involve contracts. *See Long v. A.L. Williams & Assocs., Inc.*, 172 Ga. App. 564, 566 (1984) (holding that tortious interference claim for financial injuries fell under O.C.G.A. § 9-3-31); *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997) (same for negligent misrepresentation claim for economic losses where parties were not in privity); *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 42 (2014) (same for breach of fiduciary duty claim for misappropriation of payments); *Mbigi v. Wells Fargo Home Mortg.*, 336 Ga. App. 316, 325 (2016) (same for fraud and negligent misrepresentation claims that allegedly caused plaintiff to stop making mortgage payments). Further, "tort claims for damage to property (as opposed to actions for personal injury) accrue, and the statute of limitations begins running, on the date the wrong is committed, regardless of when the injured party should have discovered the wrongdoing." *Tucker v. S. Wood Piedmont Co.*, 28 F.3d 1089, 1090–91 (11th Cir. 1994) (applying Georgia law).

Here, Plaintiff seeks to recover for the time its staff purportedly "lost" while addressing social media-related issues, payments for various services like web filtering and its purchase of Yondr pouches, and forward-looking expenses related to a proposed mental health "strategic plan." None of Plaintiff's claims arise from personal injury, and all seek to recover for alleged economic losses. Thus, O.C.G.A. § 9-3-31 (for damages to personalty) applies to both Plaintiff's negligence and public nuisance claims, and the statute of limitations began to run at the time Defendants committed their allegedly wrongful conduct, so Plaintiff is barred from asserting claims for conduct

1    that occurred more than four years before Plaintiff filed this action.

2            In addition, the two exceptions Plaintiff proposes do not apply to this case. First, the Georgia

3    Supreme Court has expressly held that the discovery rule "is confined to cases of bodily injury

4    which develop over an extended period of time," and the continuing tort theory is "limited to cases

5    in which personal injury is involved." *Corp. of Mercer Univ. v. National Gypsum Co.*, 258 Ga. 365,

6    365 (1988). Because Plaintiff here asserts no personal injury claims, the exceptions to the statute

7    of limitations it claims here are inapplicable. Plaintiff further fails to distinguish the plain text of

8    *Corp. of Mercer* cited by Defendants and instead relies on four personal injury cases to support its

9    modifications to the instruction. Notably, *Corp. of Mercer* explicitly limits the holding of one of

10    Plaintiff's cited cases (*King*), to personal injury cases involving latent injuries.  And the discussion

11    Plaintiff quotes from *Ambling* is about whether the plaintiff's personal injury claim was time barred.

12    *Ambling* does not support extending the continuing tort doctrine to cases involving economic loss,

13    which is foreclosed by the Georgia Supreme Court's decision in *Corp. of Mercer*. Second, instead

14    of recognizing the continuing tort doctrine in this setting, which would allow a plaintiff to recover

15    for all of their injuries, Georgia law recognizes that "a cause of action for a tort that is continuing

16    in nature . . . accrues at the time of continuance," *Tri-Cnty. Inv. Grp., Ltd. v. S. States, Inc.*, 231 Ga.

17    App. 632, 635 (1998, which allows a plaintiff to "recover for any damages that were suffered within

18    four years prior to the filing of the suit." *Id.* Accordingly, the jury must be instructed that DeKalb

19    may recover for any injuries suffered beginning four years before it filed the instant suit.

20            Finally, Plaintiff complains that the Defendants' proposed language does not explicitly say

21    that the statute of limitations is an affirmative defense, but this is not necessary because the instruction

22    includes the appropriate burden of proof, and this language in not in the pattern instruction for this

23    instruction (nor for any other instructions on defenses). Further, Plaintiff's complaint is hypocritical

24    as Plaintiff seeks to delete "it is more likely than not that" from Defendants' proposed instruction, but

25    this reference merely instructs the jury regarding Defendants' burden of proof as to their affirmative

26    defenses, which is a preponderance of the evidence, or "more likely true than not." *Hecht v. R.J.*

27    *Reynolds Tobacco Co.*, 710 F. App'x 794, 801 (11th Cir. 2017) (approving instruction that defendant

28    "bore the burden of proof by a preponderance of the evidence").

1    **DEKALB'S OBJECTION TO INSTRUCTION 21:**

2        **Instruction Not Supported by Evidence.** Plaintiffs object to instructing the jury on the

3    statute of limitations, as such an instruction is not supported by the evidence and Defendants have

4    not shown they are entitled to such an instruction. Should the Court decide to instruct on the statute

5    of limitations, it should do so using DeKalb's proposed instruction, as it is legally sound and the

6    easiest for the jury to understand.

7        **Affirmative Defense.** Defendants' proposed language omits that the statute of limitations

8    is an affirmative defense that Defendants must prove by a preponderance of the evidence. *See supra*

9    [General Preliminaries].

10        **Application of Discovery Rule and Continuing Tort Doctrine.** Defendants ask the Court

11    to instruct the jury that DeKalb's claims commenced on November 7, 2019. First, Defendants'

12    eleventh-hour attempt during the conferral process to recast the statute-of-limitations analysis is

13    unsupported by Georgia law. They now claim, without applicable authority, that the limitations

14    period is determined by the "type of injury" and that O.C.G.A. § 9-3-31 applies to both of DeKalb's

15    claims. Section 9-3-31 governs only actions "for injuries to personalty," and Defendants offer no

16    reasoned explanation as to how Plaintiff's claims fall within that narrow category.

17        Defendants rely on *Long v. A.L. Williams & Assocs., Inc.*, 172 Ga. App. 546 (1984), but

18    *Long* applies only to breach of contract or tortious interference with a contract, not to general

19    economic injuries. *Jaraysi v. City of Marietta*, No. 1:12-CV-2104-AT, 2012 WL 13065617, at *2*

20    (N.D. Ga. Dec. 21, 2012) analyzed *Long*, acknowledging that *Long* "(recogniz[ed]a four-year

21    statute of limitations for claims of tortious interference with a contract)." DeKalb asserts no

22    contract-based claims, making *Long* irrelevant. Because § 9-3-31 does not apply, *Corporation of*

23    *Mercer Univ. v. Nat'l Gypsum Co.*, 258 Ga. 365 (1988), is likewise inapplicable. *Mercer* limited

24    its holding to "cases that involve property damage only." *Id.* This case involves negligence and

25    nuisance, so *Mercer*'s restrictions have no bearing.

26        Second, the continuing tort doctrine and the discovery rule operate to toll any time

27    limitations. Indeed, Defendants cited during conferrals three cases to argue that the statute begins

28    to run at the time of injury—and therefore that DeKalb was injured more than two years before it

filed suit—but they ignore subsequent Georgia caselaw applying the continuing tort doctrine and the discovery rule. In *Ambling Management Co. v. Purdy*, 283 Ga.App.21 (2006), the Court of Appeals stated:

> . . .the theory of continuing tort applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time." Where there is a breach of a duty owed to another and the cumulative effects of continued exposure result in injury, a cause of action accrues when exposure to the hazard first produces ascertainable injury.
>
> While the tort is then complete in the sense that it will support a claim, it is nevertheless a tort of a continuing nature which *tolls the statute of limitation so long as the continued exposure to the hazard is occasioned by the continued failure of the tortfeasor to warn the victim,* and the statute of limitation does not commence to run under these circumstances until such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard.

*Id.*, at 25-26, quoting *Everhart v. Rich's, Inc.*, 229 Ga. 798, 802 (1972).[12] DeKalb has produced ample evidence to show that (1) Defendants' actions in the negligent design and operation of their platforms **after** November 7, 2019, and November 7, 2021, continued to cause the district harm in the form of disruptions and distractions among students during the day, (2) DeKalb was unaware of the cause of the harm until after these dates—for example, public notices from health authorities and the U.S. Surgeon General linking social media addiction to mental health harms were not issued until later, and Defendants failed to warn DeKalb of the risks posed by use of their platforms, and still have not to this day. The jury should not "only consider" injuries starting on those dates because other relevant conduct by Defendants could have occurred outside the purported limitations period. For all of these reasons, the Court should not give Defendants' proposed instruction on the statute of limitations.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

---

[12] Similarly, in *Miles v. Ashland Chem. Co.*, 261 Ga. 726, 727 (1991), the Georgia Supreme Court stated: "Under the "discovery rule", the right of action does not "accrue" until the injured person discovers the cause of his or her injury."

**Jury Instruction # 22**

**Contributory Negligence**

The Defendants claim that DeKalb County School District was itself negligent, and that the School District's own negligence contributed to its harms. Defendants must prove by a preponderance of the evidence that:

    (1) The School District failed to comply with its duty to exercise ordinary care;

    (2) The School District's failure to exercise ordinary care was a substantial factor in causing the harm it complains of in this lawsuit; and

    (3) The School District's expenses that it claims as damages in this lawsuit were the result of its failure to exercise ordinary care.

If you find that Defendants' negligence caused the School District's harms in part, you may still find for the School District unless the School District was the sole cause of its own harms. If you find that the School District was the sole cause of its own harms, then the School District cannot recover from the Defendants.

OBJECTION:        Plaintiff objects to this instruction in full. Plaintiff has proposed edits to the extent this instruction is included over Plaintiff's objection.

± DeKalb's proposal in red text.

AUTHORITY:        Georgia Suggested Pattern Jury Instructions (Civil), § 60.110 (2025) (Torts; Care for Own Safety, Duty to Exercise)

DATE SUBMITTED:        January 28, 2026

DATE REVISED:        _____

**DEFENDANTS' POSITION ON INSTRUCTION 22:**

This instruction is appropriate as it provides, with minimal modifications, the pattern instruction on Defendants' affirmative defense of contributory negligence.

At trial, Defendants anticipate presenting evidence that Plaintiff's injuries were caused by Plaintiff's own decisions, e.g., funding priorities, staffing decisions, staff and teacher training (or lack thereof). Additionally, Defendants anticipate presenting evidence that Plaintiff itself, and its teachers and staff, promoted the use of social media to their students and families for educational and non-educational purposes, both in the classroom and outside the classroom. While Defendants dispute whether their platforms cause the harm Plaintiff alleges, Defendants anticipate arguing that if Plaintiff believed that social media was dangerous, the jury will have ample evidence to find that Plaintiff failed to exercise ordinary care, resulting in its injuries.

Plaintiff argues that this evidence is insufficient to support a jury finding that Plaintiff was the sole cause of its alleged injuries. Defendants dispute this argument and submit that this is an issue for the jury to decide. In any event, Plaintiff asserts multiple categories of damages over a broad time period, so the jury could find that Plaintiff was solely responsible for certain of its injuries or for certain time periods but not others.

Plaintiff's modifications of the pattern instruction are inappropriate because negligence is defined in Instruction 15. Moreover, Plaintiff's proposed modifications require the jury to use a "substantial factor" formulation of causation, which the Georgia Supreme Court has rejected. *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (2004). Plaintiff's proposed modification also misunderstands that the standard for the jury to find in Defendants' favor on this defense is that the jury would be required to find that DeKalb was the ***sole cause*** of its injuries, so the elements Plaintiff proposes are inapplicable.

1    **DEKALB'S OBJECTION TO INSTRUCTION 22:**

2    **Contributory Negligence Instruction Not Warranted.** DeKalb objects to this proposed

3    instruction from Defendants. First, DeKalb objects to instructing the jury on contributory

4    negligence, as such an instruction is not supported by the evidence and Defendants have not shown

5    they are entitled to such an instruction. Relatedly, Defendants have failed to present any evidence

6    that would support an instruction implying that DeKalb's actions were the "sole" cause of the harms

7    sustained due to Defendants' wrongful conduct. And to the contrary, DeKalb has submitted ample

8    evidence through testimony, documents, and experts that Defendants' negligence cause was a

9    proximate cause of DeKalb's damages. *See* ECF No. 2389 at 2-5.

10    Second, the proposed instruction combines two separate instructions from the Georgia

11    pattern jury instructions. As to the first of these two proposed instructions – "Care for Own Safety"

12    – the instruction ignores the fact that Georgia recognizes the doctrine of comparative negligence,

13    which would allow the jury to determine the degree of fault of each party. *See Weston v. Dun*

14    *Transp.*, 304 Ga. App. 84, 87 (2010). This portion of Defendant's proposed instruction will confuse

15    the jury as currently phrased because it also fails to address the issue of Defendants' willful and

16    wanton misconduct, in which case contributory negligence would not bar recovery. *See infra*

17    [Avoidance of Consequences].

18    **Elements.** Defendants must prove contributory negligence by Plaintiffs under the same

19    standards that Plaintiffs must prove negligence by Defendants. Under Georgia law, if a defendant

20    claims that the plaintiff's negligence contributed to its own injuries, the defendant must establish

21    the elements of negligence by a preponderance of the evidence. *Zaldivar v. Prickett*, 297 Ga. 589,

22    600 (2015) (holding that every party alleged to be comparatively at fault for the plaintiff's injury

23    must be "a proximate cause" of the plaintiff's injury). In other words, this is the same standard and

24    elements required from Plaintiffs to prove their case. Plaintiffs reiterate the elements of negligence

25    that Defendants must prove to avail themselves of the defense of contributory negligence, as

26    required by this Court's standing order. YGR Pretrial Standing Order at 3.g.ii.c ("The instructions

27    … shall begin with the elements.").

28

**Jury Instruction # 23**

**Avoidance of Consequences**

If the DeKalb County School District, by the exercise of ordinary care, could have avoided the consequences caused by a Defendant's negligence, then the School District is not entitled to recover. In other cases, the Defendant is not relieved even though the Plaintiff may have contributed to the injury sustained. The Plaintiff's duty to exercise ordinary care to avoid the consequences of the Defendant's negligence does not arise until the Defendant's negligence exists and the Plaintiff knew or, in the exercise of ordinary care, should have known of such negligence.

OBJECTION:          Plaintiff objects to this instruction in full.

AUTHORITY:          Georgia Suggested Pattern Jury Instructions (Civil), § 60.120 (2025) (Torts; Avoidance of Consequences)

DATE SUBMITTED:          January 28, 2026_____

DATE REVISED:          _____

**DEFENDANTS' POSITION ON INSTRUCTION 23:**

This instruction is appropriate as it provides, with minimal modifications, the pattern instruction on a different aspect of Defendants' affirmative defense of avoidance of consequences.

While Instruction 22 related to the argument that Plaintiff contributed to its injuries and required Plaintiff's negligence to be the sole cause of its injuries, this instruction relates to actions that Plaintiff failed to take to avoid the consequences of Defendants' alleged negligence. While Instruction 22 does not require the jury to find that a Defendant was negligent for it to apply, this instruction applies if the jury finds that a Defendant was negligent and then determines that the Plaintiff failed to take reasonable action to avoid that negligence. Thus, the contributory negligence instruction is insufficient on its own to instruct the jury on Defendants' defenses. The Pattern Instructions provide for these defenses separately, so the Court should follow the pattern instructions and give them separately.

At trial, Defendants anticipate presenting evidence that DeKalb has failed to take reasonable steps to address the student mental health harms that it attributes to Defendants. For example, Defendants anticipate presenting evidence that teachers and administrators had concerns about social media use among students but failed for years to act to institute policies like cell phone bans or the use of Yondr pouches, which Plaintiff now asserts would mitigate the alleged harm. Defendants further anticipate presenting evidence that DeKalb failed to adequately and reasonably train its staff and teachers or implement classroom management policies for months, if not years, after the District or its representatives had knowledge of the harms it alleges in this action.

Thus, trial evidence will establish sufficient evidence to warrant giving the jury this instruction.

1    **DEKALB'S OBJECTIONS TO INSTRUCTION 23:**

2        **Avoidance of Consequences Instruction Not Warranted.** As a preliminary matter, this

3    instruction is in practice duplicative of the comparative negligence instruction. The instruction is

4    drawn from Georgia Code § 51-11-7, which essentially recasts the comparative fault doctrine in

5    the context of the plaintiff's fault being the sole proximate cause of its own injury. *Weston v. Dun*

6    *Transp.*, 304 Ga.App. 84, 87   (2010) (comparing avoidance of consequences to comparative

7    negligence and reasoning that "[u]nder this doctrine, the plaintiff's negligence in failing to avoid

8    the consequences of the defendant's negligence is deemed the sole proximate cause of the injuries

9    sustained and, therefore, is a complete bar to recovery, unless the defendant willfully and wantonly

10   inflicted the injuries"); *see also U.S. v. Fleming*, 115 F.2d 314, 317 (5th Cir. 1940) ("It is sufficient

11   to say that the Georgia rule does not defeat recovery by a negligent plaintiff unless it is made to

12   appear that his negligence was the sole, or . . . the legal, proximate cause of the injury."). The

13   overlapping concepts of avoidance of consequences and the duty to mitigate damages are highly

14   likely to confuse the jury, especially as the instruction is phrased. If the Court finds that Defendants

15   have proffered sufficient evidence to instruct the jury that DeKalb's negligence contributed to its

16   harms, the contributory negligence instruction already covers the core principle of Defendants'

17   avoidance of consequences instruction: "If you find that the School District was the sole cause of

18   its own harms, then the School District cannot recover from the Defendants."

19       Moreover, under Georgia law, a plaintiff's duty to avoid the consequences of a defendant's

20   negligence "does not arise until the defendant's negligence exists, and the plaintiff knew, or in the

21   exercise of ordinary care should have known of such negligence." *Est. of Serrano v. New Prime,*

22   *Inc.*, 2013 WL 2637023, at *6 (N.D. Ga. June 12, 2013). For plaintiff to be held to be contributorily

23   negligent, plaintiff must have had an opportunity to avoid the result of the defendant's negligence,

24   which means plaintiff knew or should have known of the danger and failed to avoid it when given

25   the opportunity to avoid. *Jordan v. Atlanta Replex Corp.*, 228 Ga. App. 670, 676(1997). If

26   Defendants are insistent on a jury instruction relating to any alleged negligence by DeKalb, the

27   Court should consider an instruction that properly instructs the jury as to Georgia's comparative

28   negligence standards. "Under Georgia's doctrine of comparative negligence, where the negligence

of the plaintiff joins with the negligence of the defendant in proximately causing the plaintiff's injuries, the plaintiff will be precluded from recovering against the defendant, if the negligence of the plaintiff is equal to or greater than that of the defendant, or, if the negligence of the plaintiff is less than that of the defendant, the plaintiff's recovery of damages will be reduced in proportion to his or her negligence." *Grier*, 2023 WL 4401618, at *2.

**Jury Instruction # 24**

**Duty to Lessen / Mitigate**

When a plaintiff is harmed by the negligence of another, it must mitigate its damages as much as is practicable by the use of ordinary care and diligence.

If you believe that DeKalb County School District has suffered damages as alleged, under the law, the School District is bound to reduce those damages, as much as is practicable, by the use of ordinary care. If you believe that by the use of such care, the School District could have reduced the damages,

If the Defendants demonstrate by a preponderance of the evidence that:

(1) The School District's damages could have been avoided through the exercise of ordinary care; and

(2) The School District failed to use ordinary care to minimize or avoid its damages,

Then you would determine to what extent and reduce such damages to that extent.


OBJECTION:        Plaintiff objects to this instruction in full. Plaintiff has proposed edits to the extent this instruction is included over Plaintiff's objection.


± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:        Georgia Suggested Pattern Jury Instructions (Civil), § 66.015 (2025) (Tort Damages; Duty to Lessen)



DATE SUBMITTED:        January 28, 2026_____


DATE REVISED:        _____

1  **DEFENDANTS' POSITION ON INSTRUCTION 24:**

2        This instruction is appropriate as it provides, with minimal modifications, the pattern

3  instruction on Defendants' defense of failure to mitigate damages. While Instructions 22 and 23

4  present options for the jury find complete bars to Plaintiff's recovery, this instruction directs the

5  jury, in any other instance, to reduce any damages award if it finds that Plaintiff could have reduced

6  or mitigated with ordinary care.

7        At trial, Defendants anticipate presenting evidence that Plaintiff or its representatives knew

8  or had reason to know of the alleged relationship between its alleged damages and Defendants'

9  conduct, Plaintiff failed to take reasonable actions to reduce its damages in several ways, including

10 adjusting its funding priorities, altering staffing decisions, taking reasonable steps to address the

11 student mental health harms that it attributed and now attributes to Defendants, timely instituting

12 policies like cell phone bans or the use of Yondr pouches, adequately and reasonably training its

13 staff and teachers or implement classroom management policies.

14       Thus, trial evidence will establish sufficient evidence to warrant giving the jury this

15 instruction.

16       Plaintiff argues that a mitigation of damages instruction is inappropriate in a continuing

17 nuisance case, and Defendants agree because the jury cannot award damages on Plaintiff's public

18 nuisance claim in any instance because a "public nuisance may be abated in equity *by injunction*

19 *only.*" *Davis v. Stark*, 198 Ga. 223, 230 (1944). This instruction is appropriate, however, because

20 Plaintiff seeks damages through its negligence claim, and Defendants' proposed instruction

21 correctly states that a plaintiff has a duty to mitigate damages in the context of such a claim.

22       Plaintiff's proposed modifications misinterpret the elements of this defense and incorrectly

23 conflate it with the avoidance of consequences defense, which is subject to Instruction 23.

24 Regardless, Plaintiff's proposed modification is unnecessary because the final paragraph of the

25 pattern instruction provides the elements: the jury should reduce its damages award if (1) Plaintiff

26 has suffered damages, and (2) Plaintiff has failed to exercise ordinary care to reduce its damages

27 as much as practicable.

28

**DEKALB'S OBJECTIONS TO INSTRUCTION 24:**

**Mitigation Instruction Not Warranted.** DeKalb objects to instructing the jury on the Duty to Lessen Damages, as such an instruction is not supported by the evidence and Defendants have not shown they are entitled to such an instruction. First, "'[M]itigation of damages' is in fact not a principle to apply in every case . . .". *Cleveland Motor Cars, Inc. v. Bank of Am., N.A.*, 295 Ga. App. 100, 102(2008). While a duty to mitigate damages may exist under Georgia law, whether a jury should be instructed on such a duty is "only justified when there is some evidence upon which to base it" and the burden of proving such an instruction should be given rests solely on the party seeking the instruction. *Georgia Farm Bureau Mut. Ins. Co. v. Turpin*, 294 Ga. App. 63, 66(2008); *Reynolds v. United States*, 2023 WL 12180009, at *23 (S.D. Ga. 2023). Moreover, "such proof must include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated." *Id.;*, *Nat'l Sur. Corp. v. Georgia Power Co.*, No. 2:17-CV-68-RWS, 2019 WL 4394403, at *3 (N.D. Ga. Sept. 12, 2019). Defendants have failed to meet their burden of such proof to support this proposed instruction.

**Mitigation Instructions are Not to be Given in Continuing Nuisance Cases.** Georgia law does not recognize a duty to mitigate in nuisance cases where the cause of the nuisance "could not be readily discovered and the problem [is] ongoing." *City of Gainesville v. Waters*, 258 Ga.App. 555, 563 (2002).

If the Court is inclined to give a mitigation instruction, it should use the language proposed by DeKalb for the following reasons:

**Affirmative Defense.** Defendants' proposed language omits that the duty to mitigate is an affirmative defense that Defendants must prove by a preponderance of the evidence.

**Elements.** DeKalb's language clearly enumerates that Defendants must show certain damages could have been minimized, and that DeKalb failed to use ordinary care in minimizing its damages. *See supra* [Contributory Negligence].

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**Jury Instruction # 25**

**Damages – Preliminary Instructions**

Damages are given as pay or compensation for injury done. In this case, DeKalb County School District is seeking compensatory damages.

When one party is required to pay damages to another, the law seeks to ensure that the damages awarded are fair to both parties. If you believe from a preponderance of the evidence that the School District is entitled to recover, you should award to the School District such sums as you believe are reasonable and just in this case.

As explained above, you may not award damages to DeKalb County School District for harms stemming from (1) non-foreseeable third-party conduct or (2) a Defendant's Protected Conduct.

± Defendants' proposal in blue text.

AUTHORITY:          Georgia Suggested Pattern Jury Instructions (Civil), § 66.001 (2025) (Tort Damages; Preliminary Instructions); O.C.G.A. § 51-12-8

DATE SUBMITTED:          January 28, 2026

DATE REVISED:          _____

**<u>DEKALB'S POSITION ON INSTRUCTION 25:</u>**

DeKalb's proposed instruction follows Georgia's pattern preliminary instruction on damages. *See* Georgia Suggested Pattern Jury Instructions (Civil), § 66.001 (2024).

**Overemphasis of Third-Party Conduct.** Defendants have revised to the pattern to include language barring recovery for harms caused by non-foreseeable third-party conduct. As Defendants' own language betrays, this limitation has already been "explained above" in both parties' proposed proximate cause instructions, which advise the jury not to consider non-foreseeable third-party conduct when evaluating Defendants' negligence. *See supra* [Causation – Proximate Cause]. Revisiting this topic is an instruction on damages is therefore unnecessary, repetitive, and likely to confuse the jury.

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**DEFENDANTS' POSITION ON INSTRUCTION 25:**

Defendants' proposed modification to the pattern instruction makes clear that only certain, non-protected conduct of each Defendant is actionable and that Defendants' protected conduct cannot form the basis of liability. *See* SD Order at 2, 12–14; PI Order at 14. This is consistent with Georgia Suggested Pattern Jury Instructions (Civil) § 66.504 (2025), which instructs the jury that "[n]o plaintiff may recover for injuries or disabilities that are not connected with the act or omissions of the defendant in this case. There can be no recovery for a particular plaintiff for any injury or disability that was not proximately caused by the incident in question." Similarly, O.C.G.A. § 51-12-8 bars any award of damages "if other and contingent circumstances preponderate in causing the injury." Defendants' modification is necessary to ensure that the jury does not consider any Protected Conduct in determining any damages award.

**Jury Instruction # 26**

**Apportionment**

If you believe that DeKalb County School District sustained damages, you must determine the amount of those damages. Do not make any reduction in the amount of damages because of the negligence, if any, of the plaintiff or of any non-party.

You must also decide the percentage of fault, if any, of all parties and any non-parties whose negligence contributed to the alleged injury or damages. For any person or entity you find did not contribute to the alleged injury or damages, enter 0%. The total of the fault assessed must equal 100%.

The court will enter a judgment based on your verdict and, if you find that the plaintiff was negligent in any degree, the court will reduce the total amount of damages awarded by the percentage of negligence which you attribute to the plaintiff. If you find that the negligence of the plaintiff is equal to or greater than the negligence of the defendant(s), then the plaintiff is not entitled to recover damages.

± Defendants' proposal in blue text.

AUTHORITY:        Georgia Suggested Pattern Jury Instructions (Civil), § 66.810 (2025) (Tort Damages; Apportionment of Damages; O.C.G.A. § 51-12-33(d)(2); *Pneumo Abex, LLC v. Long*, 357 Ga.App. 17, 19-20 (2020); *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 362–63 (2012); *Six Flags Over Ga. II, L.P. v. Martin*, 335 Ga. App. 350, 364-65 (3), 780 S.E.2d 796 (2015)

DATE SUBMITTED:        January 28, 2026

DATE REVISED:        _____

**DEKALB'S POSITION ON INSTRUCTION 26:**

Plaintiffs object to instructing the jury that it can apportion fault to a non-party. Pursuant to Georgia statute, a jury may consider apportioning fault to a non-party only if one of two prerequisites is satisfied: (1) the plaintiff has entered into a settlement with the non-party, or (2) a defendant has "give[n] notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." Ga. Code Ann. § 51-12-33(d). Neither prerequisite has been met here— in fact (as Defendants concede), they have produced no evidence that a particular person or entity is at fault for DeKalb's harms whatsoever, and thus cannot make even an attempt at "the best identification of the nonparty which is reasonably possible under the circumstances" that they admit the law requires. Ga. Code Ann. § 51-12-33(d)(2).

Defendants have not identified a single non-party to whom they apportion blame. However, Defendants argue that because DeKalb is not 120 days before trial (and DeKalb does not have a trial date), they are under no duty to disclose these non-parties to DeKalb. This is an attempt to "hide the ball" and have this Court enter an apportionment instruction without even disclosing a non-party. This is an abuse of the judicial process in the joint proceedings of this consolidated action. Further, the few identified "alternate causes" have been things such as alleged poverty, chronic absenteeism, and administrative dysfunction, all of which are not tangible non-parties. ECF No. 2289 at 1-2

For this reason, the cases Defendants cite are inapposite because they both apportion blame to a specific unknown assailant, which Defendants here have not been able to do.[13] As mentioned above, poverty, absenteeism, and district level turnover are not "unknown assailants" to whom blame may be apportioned. Since they have not met their "burden to establish a rational basis for apportioning fault to a nonparty," Defendants cannot justify presenting non-party apportionment to a jury. *Six Flags Over Georgia II, L.P. v. Martin*, 335 Ga.App. 350, 364-65 (2015), *aff'd in part,*

---

[13] *Couch v. Red Roof Inns, Inc*., 291 Ga. 359, 362–63 (2012) (allowing jury to apportion fault to an unknown third-party criminal assailant whose intentional conduct contributed to the plaintiff's injuries); *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718, 725–26 (2023) (allowing defendant to add unknown assailant to the verdict form where the defendant's notice identified the assailant by the conduct causing the injury).

1   *rev'd in part*, 301 Ga. 323 (2017), *and vacated sub nom. Six Flags Over Georgia II, LP v. Martin*,

2   343 Ga.App. 134 (2017). Therefore, Plaintiff's instruction should be given.

1    **DEFENDANTS' POSITION ON INSTRUCTION 26:**

2        The only dispute between the parties is whether it is appropriate to instruct the jury

3    regarding apportionment of damages among non-parties.

4        O.C.G.A. § 51-12-33, which governs apportionment, is designed to apportion damages

5    "among all persons or entities who contributed to the alleged injury or damages—even persons who

6    are not and could not be made parties to the lawsuit[.]" *Pneumo Abex, LLC v. Long*, 357 Ga. App.

7    17, 19-20 (2020). Plaintiff objects to the reference to non-parties in this instruction and their

8    inclusion on the verdict form because non-parties have not been specifically identified. O.C.G.A. §

9    51-12-33(d)(1) only requires such disclosure 120 days before trial,[14] and this case does not have a

10   trial date yet from which this deadline would trigger. Regardless, O.C.G.A. § 51-12-33(d)(2)

11   permits unnamed non-parties to be included on the verdict form when they are designated based on

12   "the best identification of the nonparty which is reasonably possible under the circumstances."

13   O.C.G.A. § 51-12-33(d)(2). And multiple cases have allowed the jury to apportion damages to

14   unnamed non-parties. S*ee Couch v. Red Roof Inns, Inc*., 291 Ga. 359, 362–63 (2012) (allowing jury

15   to apportion fault to an unknown third-party criminal assailant whose intentional conduct

16   contributed to the plaintiff's injuries); *Georgia CVS Pharmacy, LLC v. Carmichael*, 316 Ga. 718,

17   725–26 (2023) (allowing defendant to add unknown assailant to the verdict form where the

18   defendant's notice identified the assailant by the conduct causing the injury).

19       "[I]t is a defendant's burden to establish a rational basis for apportioning fault to a nonparty;

20   but whether the defendant meets that burden given the evidence at trial is an issue that should be

21   left to the jury." *Six Flags Over Ga. II, L.P. v. Martin*, 335 Ga. App. 350, 364-65 (2015). While

22   Defendants have not yet determined whether or which nonparties to designate to be included on the

23   verdict form, and will not be required to do so until 120 days before trial, Plaintiff's failure to

24   distinguish between social media platforms as a cause of its injuries could potentially support an

25   apportionment finding for any other non-party social media company.

26

27   [14] Courts regularly find that procedural rules related to apportionment, like the deadlines to file
     notices of nonparties at fault, which are required to put nonparties on the verdict forms in Georgia
28   and many other states, to be "inextricably intertwined with [the state's] substantive law," such that
     it applies in federal court. *See, e.g., Daly v. Royal Ins. Co. of Am.*, 2002 WL 1768887, at *16 (D.
     Ariz. July 17, 2002).

**Jury Instruction # 27**

**No Double Recovery**

As a general rule, there can be no double recovery for a single injury. Here, the injury of which DeKalb complains is that it allegedly incurred additional expenses to address student mental health harms caused by each Defendant's Actionable Non-Protected Conduct.

You may not award the same element of compensatory damages more than once. Any damages you award must compensate the plaintiff for the injury only once, and you must avoid overlapping or duplicative awards.

If you award DeKalb damages under either one or both of its claims, you should not double the amount of damages simply because there are two claims in this case.

OBJECTION:          Plaintiff objects to this instruction in full. Plaintiff has proposed edits to the extent this instruction is included over Plaintiff's objection.

± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:          *Junior v. Graham*, 313 Ga. 420, 424-25 (Ga. 2022); *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (2010)

DATE SUBMITTED:          January 28, 2026_____

DATE REVISED:          _____

1    **DEFENDANTS' POSITION ON INSTRUCTION 27:**

2          Defendants propose their Instruction on Double Recovery because it is consistent with

3    Georgia case law. "Georgia public policy generally prohibits a plaintiff from a double recovery of

4    compensatory damages." *Junior v. Graham*, 313 Ga. 420, 424 (2022). Moreover, "[w]hile a party

5    may pursue inconsistent remedies, he is not permitted a double recovery of the same damages for

6    the same wrong." *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (2010).

7          Here, Plaintiff has asserted multiple theories of injury and theories of recovery, each with

8    the potential to create overlapping recoveries. For example, Plaintiff seeks recovery for future

9    damages under both the Hoover Plan and to recover "lost" time of its staff. These recovery theories

10   potentially overlap because, if the Hoover Plan, or aspects thereof, are implemented, Plaintiff may

11   not have any "lost time" for which it needs to seek recovery.

12         Moreover, the jury may come to think that because Plaintiff asserted two separate claims,

13   that it may award damages separately for each. However, damages may only be recovered if the

14   jury finds in favor of Plaintiff on its negligence count because "public nuisance may be abated in

15   equity *by injunction only*," *Davis v. Stark*, 198 Ga. 223, 230 (1944). Because evidence may be

16   presented regarding theories of recovery that might be allowed under legal or equitable bases, the

17   jury should be instructed that it should not award overlapping awards. Georgia courts have

18   repeatedly reversed jury verdicts where awards were duplicative, including where legal and

19   equitable relief overlapped. *See Georgia Northeastern Railroad, Inc. v. Lusk*, 277 Ga. 245, 246

20   (2003) (reversing a jury verdict on the basis that it included damages for diminution of property

21   value as well as restoration of the property); *Marvin Nix*, 302 Ga. App. at 568 (vacating judgment

22   and remanding case so that the plaintiff could elect a remedy for either conversion or recovery on

23   the note and guaranty agreements).

24

25

26

27

28

1    **DEKALB'S OBJECTION TO INSTRUCTION 27:**

2        **Double Recovery Instruction Not Warranted.** This instruction is unnecessary. The

3    authorities that Defendants cite do not support giving this instruction in a case like this, where it is

4    unlikely jurors will be confused about the measure of damages or the parties from which DeKalb

5    can recover. None of Defendants' cases mandate a prophylactic instruction on the off chance that

6    jurors "may come to think" that they can award overlapping damages for distinct claims with

7    distinct evidence; rather, they deal with (and sometimes reject) particular claims of error in specific

8    jury verdicts. In *Junior v. Graham*, 313 Ga. 420 (2022), the Georgia Supreme Court rejected the

9    claim of error and found that the rule against double recovery was inapplicable because, like here,

10   the plaintiff did not seek duplicative damages. And despite Defendants' argument that the

11   combination of nuisance and tort claims presents a particular risk, their authority recognizes that a

12   case with claims sounding in nuisance and tort would "not necessarily" result in the award of double

13   damages. *Georgia Ne. R. Co. v. Lusk*, 277 Ga. 245, 246 (2003). Rather, the prospect of error in that

14   case arose from the wording of a special verdict form, and Defendants have not shown that there is

15   any such risk here. *Id.* Similarly, in *Marvin Nix Dev. Co. v. United Cmty. Bank*, 302 Ga.App. 566

16   (2010), the defendant appealed from a judgment where the same compensatory damages were

17   awarded for both conversion and the value of a loan obligation in a real estate transaction gone bad.

18   There is no such risk here, where DeKalb does not seek multiple awards for the same compensatory

19   damages. Rather, the record will show that DeKalb has submitted clear evidence under distinct

20   theories of recovery, and is not seeking duplicative remedies. Defendants' authorities are therefore

21   inapposite, and they have not articulated why instructing the jury about this prospectively is

22   warranted or helpful.

23        If there were a need for an instruction on double recovery, DeKalb's proposed instruction

24   is preferable because it is simpler, more straightforward, and less apt to confuse the jury. *See Beach*

25   *v. Lipham*, 276 Ga. 302, 305 (2003) ("an important goal of a jury charge is to explain the law in

26   simple, straightforward, and understandable language" (internal quotation marks and citation

27   omitted)).

28

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

**Jury Instruction # 28**

**Punitive Damages - Liability**

In tort actions, there may be aggravating circumstances that may warrant the awarding or imposing of additional damages called punitive damages.

Before you impose punitive damages, the School District must prove that a Defendant's [wrongful conduct] [Actionable Non-Protected Conduct] showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences. The School District must prove that a Defendant is liable for punitive damages by a higher standard than that for proof by other damages; that is, by clear and convincing evidence.

OBJECTION:        Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:        Georgia Suggested Pattern Instructions (Civil), § 66.700 (2025) (Punitive Liability)

DATE SUBMITTED:        January 28, 2026

DATE REVISED:

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1    **DEKALB'S POSITION ON INSTRUCTION 28:**

2        **Punitive Damages Instruction is Warranted.** Defendants unconvincingly object to the

3    inclusion of a Punitive Liability jury instruction. Plaintiff, however, has drawn the proposed

4    instruction directly from the Georgia Suggested Pattern Jury Instructions (Civil), § 66.700 (2024)

5    (Punitive Liability).

6        Moreover, Plaintiff intends to introduce direct evidence of Defendants' conduct that could

7    warrant an award of punitive damages. Georgia law expressly provides that punitive damages may

8    be awarded "only in such tort actions in which it is proven by clear and convincing evidence that

9    the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that

10   entire want of care which would raise the presumption of conscious indifference to consequences."

11   O.C.G.A. § 51-12-5.1(b).

12       Because Plaintiff has placed punitive damages directly at issue and intends to present

13   evidence supporting such a claim, the jury must be properly instructed on the applicable standard.

14   ECF No. 729 at ¶¶ 1011, 1043, 1044. Without this instruction, the jury would be left without

15   guidance on the heightened evidentiary burden and the specific conduct required to justify punitive

16   damages. Defendants' unsupported objection cannot overcome the statutory mandate and the

17   authority of the Georgia Pattern Jury Instructions. Accordingly, the Punitive Liability instruction is

18   both proper and necessary, and it must be given to the jury.

19       **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

20   [Negligence]; [Section 230].

21

22

23

24

25

26

27

28

1  **DEFENDANTS' OBJECTION TO INSTRUCTION 28:**

2      Defendants object to this instruction in full because Plaintiff has no evidence that any

3  Defendant's Non-Protected Conduct was willful, malicious, fraudulent, wanton, oppressive, or

4  consciously indifferent such that they could be liable for punitive damages. Plaintiff's briefing fails

5  to provide any single instance of such conduct by any of the Defendants. Without a proffer, Plaintiff

6  has failed to meet his burden to show that the jury should be instructed on punitive damages. *See*

7  *NEDA Const. Co. v. Jenkins*, 137 Ga. App. 344, 350, 223 S.E.2d 732, 739 (1976) (reversible error

8  to instruct on punitive damages unless supported by the evidence).

9      If the Court gives this instruction, Defendants request that their proposed modification be

10  included such that the jury is instructed to consider only Defendants' Non-Protected Conduct when

11  determining whether punitive damages are warranted. *See* SD Order at 2, 12–14; PI Order at 14.

12  This is necessary because Defendants anticipate evidence of protected conduct to be introduced at

13  trial, which may not be the basis of a punitive damages award. Georgia Suggested Pattern

14  Instructions (Civil), § 66.772 (instructing that the jury "may not consider evidence of any conduct

15  of the defendant that is dissimilar to that which resulted in the plaintiff's injury").

16      If the Court is inclined to instruct the jury that they may impose punitive damages,

17  Defendants reserve the right to a bifurcated trial.

18      Defendants further reserve their right to seek instructions during the second phase of trial,

19  including but not limited to instructions consistent with Georgia Suggested Pattern Instructions

20  (Civil), §§ 66.711, 66.712, 66.730. These instructions require the jury to find whether a defendant

21  acted with specific intent to harm, which is a prerequisite to award greater than $250,000 in punitive

22  damages. O.C.G.A. § 51-12-5.1(g). Further, Defendants reserve the right to seek instructions

23  consistent with Georgia Suggested Pattern Instructions (Civil), §§ 66.740, 66.741, 66.750, 66.760,

24  66.770, 66.771, 66.772, 66.773, and 66.780, which provide guidance regarding factors to consider

25  when determining the amount of punitive damages to award.

26

27

28

**Jury Instruction # 29**

**Punitive Damages - Burden of Proof**

As to the issue of punitive damages, DeKalb County School District must prove to a reasonable certainty by clear, convincing, and decisive evidence that DeKalb County School District is entitled to relief as a result of [wrongful conduct] [a Defendant's Actionable Non-Protected Conduct]. This is a different and higher burden of proof than a mere preponderance of the evidence.

OBJECTION:    Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.

± DeKalb's proposal in red text; Defendants' proposal in blue text.

AUTHORITY:    Georgia Suggested Pattern Instructions (Civil), § 66.701 (2025) (Clear and Convincing Evidence); Georgia Suggested Pattern Jury Instructions (Civil) (2025) § 02.040 (Clear and Convincing Evidence)

DATE SUBMITTED:    January 28, 2026

DATE REVISED:    _____

**DEKALB'S POSITION ON INSTRUCTION 29:**

**Clear and Convincing Standard Instruction is Warranted.** DeKalb's proposed instruction on the burden of proof is required under Georgia law. Georgia courts have consistently held that—where punitive damages are available—"the trial court must 'define both ['clear and convincing' and 'preponderance of the evidence'] standards to avoid misleading or confusing the jury.'" *H & H Subs, Inc. v. Lim,* 223 Ga.App. 656, 658  (1996) (quoting *Clarke v. Cotton*, 263 Ga. 861-62 (1994)). Here, because DeKalb intend to present evidence supporting an award of punitive damages, the Court should adopt DeKalb's proposed instruction, which also hews closely with Georgia's pattern instructions on the clear and convincing standard. *See* Georgia Suggested Pattern Instructions (Civil), § 66.701 (2024) (Clear and Convincing Evidence); Georgia Suggested Pattern Jury Instructions (Civil) (2024) § 02.040 (Clear and Convincing Evidence).

**Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra* [Negligence]; [Section 230].

1   **DEFENDANTS' OBJECTION TO INSTRUCTION 29:**

2      Defendants object to this instruction in full because Plaintiff has no evidence that any

3 Defendant's Non-Protected Conduct was willful, malicious, fraudulent, wanton, oppressive, or

4 consciously indifferent such that they could be liable for punitive damages.

5      If the Court gives this instruction, Defendants request that their proposed modification be

6 included such that the jury is instructed to consider only Defendants' Non-Protected Conduct when

7 determining whether punitive damages are warranted. *See* SD Order at 2, 12–14; PI Order at 14.

8 This is necessary because Defendants anticipate evidence of protected conduct to be introduced at

9 trial, which may not be the basis of a punitive damages award. Georgia Suggested Pattern

10 Instructions (Civil), § 66.772 (instructing that the jury "may not consider evidence of any conduct

11 of the defendant that is dissimilar to that which resulted in the plaintiff's injury").

12      If the Court is inclined to instruct the jury that they may impose punitive damages,

13 Defendants reserve the right to a bifurcated trial.

14      Defendants further reserve their right to seek instructions during the second phase of trial,

15 including but not limited to instructions consistent with Georgia Suggested Pattern Instructions

16 (Civil), §§ 66.711, 66.712, 66.730. These instructions require the jury to find whether a defendant

17 acted with specific intent to harm, which is a prerequisite to award greater than $250,000 in punitive

18 damages. O.C.G.A. § 51-12-5.1(g). Further, Defendants reserve the right to seek instructions

19 consistent with Georgia Suggested Pattern Instructions (Civil), §§ 66.740, 66.741, 66.750, 66.760,

20 66.770, 66.771, 66.772, 66.773, and 66.780, which provide guidance regarding factors to consider

21 when determining the amount of punitive damages to award.

22

23

24

25

26

27

28

**Jury Instruction # 30**

**Punitive Damages - Liability (con't)**

If the School District fails to prove, by clear and convincing evidence, that a [Defendant] [Defendant's Non-Protected Conduct] was guilty of willful misconduct, malice, fraud, wantonness, oppression, or entire want of care that would raise the presumption of conscious indifference to consequences, then you would not be authorized to impose punitive damages against that Defendant.

Mere negligence will not alone authorize an imposition of punitive damages.

Punitive damages, when authorized, are imposed not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant. In your verdict, you should specify whether you do or do not decide to impose punitive damages.

You may assess punitive damages against all Defendants, no Defendants, or some Defendants and not others.


OBJECTION:        Defendants object to this instruction in full. Defendants have proposed edits to the extent this instruction is included over Defendants' objection.


± Defendants' proposal in blue text.

AUTHORITY:        Georgia Suggested Pattern Instructions (Civil), § 66.702 (2025) (Punitive Liability, cont'd)


DATE SUBMITTED:        January 28, 2026


DATE REVISED:        _____

1    **DEKALB'S POSITION ON INSTRUCTION 30:**

2         Plaintiff's instruction follows the Georgia Suggested Pattern Instruction and as such it

3    should be given without Defendants' changes. *See supra* [Punitive Damages – Liability].

4         **Repeated 230 Instruction.** Defendants improperly insert their 230 defense here. *See supra*

5    [Negligence]; [Section 230].

1    **DEFENDANTS' OBJECTION TO INSTRUCTION 30:**

2        Defendants object to this instruction in full because Plaintiff has no evidence that any

3    Defendant's Non-Protected Conduct was willful, malicious, fraudulent, wanton, oppressive, or

4    consciously indifferent such that they could be liable for punitive damages.

5        If the Court gives Plaintiff's proposed instruction, it should include Defendants'

6    modification that instructs that the jury may only award punitive damages against a Defendant if it

7    finds that the Defendant's Non-Protected Conduct was "guilty of willful misconduct, malice, fraud,

8    wantonness, oppression, or entire want of care that would raise the presumption of conscious

9    indifference to consequences." *See* SD Order at 2, 12–14; PI Order at 14.

10       Moreover, the Court must "charge that each tortfeasor be considered separately as to

11   punitive damages." *Clarke v. Cox*, 197 Ga. App. 83, 83 (1990). While the final paragraph tells the

12   jury they can award punitive damages against all or less than all of the defendants, it does not

13   address that the defendants against whom punitive damages may be imposed must be the same

14   defendant or defendants whom the jury found guilty of conduct warranting punitive damages.

15       If the Court is inclined to instruct the jury that they may impose punitive damages,

16   Defendants reserve the right to a bifurcated trial.

17       Defendants further reserve their right to seek instructions during the second phase of trial,

18   including but not limited to instructions consistent with Georgia Suggested Pattern Instructions

19   (Civil), §§ 66.711, 66.712, 66.730. These instructions require the jury to find whether a defendant

20   acted with specific intent to harm, which is a prerequisite to award greater than $250,000 in punitive

21   damages. O.C.G.A. § 51-12-5.1(g). Further, Defendants reserve the right to seek instructions

22   consistent with Georgia Suggested Pattern Instructions (Civil), §§ 66.740, 66.741, 66.750, 66.760,

23   66.770, 66.771, 66.772, 66.773, and 66.780, which provide guidance regarding factors to consider

24   when determining the amount of punitive damages to award.

25

26

27

28

**STOP**

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

**Jury Instruction # 31**

**Duty to Deliberate**

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

AUTHORITY:          11th Circuit Model Instruction 3.8.1 – Duty to Deliberate When Only the Plaintiff Claims Damages

DATE SUBMITTED:          <u>January 28, 2026</u>

DATE REVISED:          <u>                    </u>

**Jury Instruction # 32**

**Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

<mark>[Explain verdict]</mark>

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.


AUTHORITY:        11th Circuit Model Instruction 3.9 – Election of Foreperson Explanation of Verdict Form[s]


DATE SUBMITTED:        January 28, 2026

DATE REVISED:        _____

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1  DATED: January 28, 2026

2                                    By:  /s/ Bailey J. Langner
3                                         GEOFFREY M. DRAKE, *pro hac vice*
                                          gdrake@kslaw.com
4                                         TACARA D. HARRIS, *pro hac vice*
                                          tharris@kslaw.com
5                                         KING & SPALDING LLP
                                          1180 Peachtree Street, NE, Suite 1600
6                                         Atlanta, GA 30309-3521
7                                         Telephone: (404) 572-4600
                                          Facsimile: (404) 572-5100
8
                                          DAVID P. MATTERN, *pro hac vice*
9                                         dmattern@kslaw.com
10                                        KING & SPALDING LLP
                                          1700 Pennsylvania Avenue, NW, Suite 900
11                                        Washington, DC 20006-4707
                                          Telephone: (202) 737-0500
12                                        Facsimile: (202) 626-3737
13
                                          BAILEY J. LANGNER (SBN 307753)
14                                        blangner@kslaw.com
                                          KING & SPALDING LLP
15                                        50 California Street, Suite 3300
                                          San Francisco, CA 94111
16                                        Telephone: (415) 318-1200
                                          Facsimile: (415) 318-1300
17
18                                        *Attorneys for Defendants TikTok Inc., ByteDance Inc.,*
                                          *TikTok Ltd., ByteDance Ltd., and TikTok LLC*
19
20                                   By:  /s/ Christian J. Pistilli
21                                        ASHLEY M. SIMONSEN (Bar No. 275203)
                                          asimonsen@cov.com
22                                        COVINGTON & BURLING LLP
                                          1999 Avenue of the Stars
23                                        Los Angeles, California 90067
                                          Telephone: (424) 332-4800
24                                        Facsimile: (424) 332-4749
25
                                          PHYLLIS A. JONES, *pro hac vice*
26                                        pajones@cov.com
                                          PAUL W. SCHMIDT, *pro hac vice*
27                                        pschmidt@cov.com
                                          CHRISTIAN J. PISTILLI, *pro hac vice*
28                                        cpistilli@cov.com

                                          111

1    COVINGTON & BURLING LLP
     One City Center
2    850 Tenth Street, NW
     Washington, DC 20001-4956
3    Telephone: (202) 662-6000
     Facsimile: (202) 662-6291
4

5    *Attorneys for Defendants Meta Platforms, Inc. f/k/a*
     *Facebook, Inc.; Instagram, LLC*
6

7
              By:  */s/ Victoria A. Degtyareva*
8                  JONATHAN H. BLAVIN (SBN 230269)
                   jonathan.blavin@mto.com
9                  MUNGER, TOLLES & OLSON LLP
                   560 Mission Street, 27th Floor
10                 San Francisco, CA 94105
                   Tel.: (415) 512-4000
11

12                 VICTORIA A. DEGTYAREVA (SBN 284199)
                   victoria.degtyareva@mto.com
13                 MUNGER, TOLLES & OLSON LLP
                   350 South Grand Avenue, 50th Floor
14                 Los Angeles, CA 90071
                   Tel.: (213) 683-9100
15

16                 ALLISON BROWN, *pro hac vice*
                   alli.brown@kirkland.com
17                 KIRKLAND & ELLIS LLP
                   2005 Market Street, Suite 1000
18                 Philadelphia, PA 19103
                   Tel.: (215) 268-5000
19

20                 JESSICA DAVIDSON*, pro hac vice*
                   jessica.davidson@kirkland.com
21                 JOHN J. NOLAN, *pro hac vice*
                   jack.nolan@kirkland.com
22                 KIRKLAND & ELLIS LLP
                   601 Lexington Avenue
23                 New York, NY 10022
                   Tel.: (212) 446-4800
24

25                 *Attorneys for Defendant Snap Inc.*

26

27

28

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1

2       By:  /s/ Ashley W. Hardin
             JOSEPH G. PETROSINELLI, *pro hac vice*
3            jpetrosinelli@wc.com
             ASHLEY W. HARDIN, *pro hac vice*
4            ahardin@wc.com
             J. ANDREW KEYES, *pro hac vice*
5            akeys@wc.com
             NEELUM J. WADHWANI (SBN 247948)
6            nwadhwani@wc.com
             680 Maine Avenue, SW
7            Washington, DC 20024
             Tel.: 202-434-5000
8

9            *Attorneys for Defendants YouTube, LLC
             and Google LLC*
10

11

12      By:  /s/ Davis Vaughn
             Davis Vaughn
13           Joseph VanZandt
             James Lampkin
14           Burton Walker
             Slade Methvin
15           **BEASLEY ALLEN CROW METHVIN PORTIS &
             MILES, P.C.**
16           234 Commerce Street
17           Montgomery, AL 36103
             Tel.: 334-269-2343
18           davis.vaughn@beasleyallen.com
             joseph.vanzandt@beasleyallen.com
19           james.lampkin@beasleyallen.com
             burton.walker@beasleyallen.com
20           slade.methvin@beasleyallen.com
21

22           *Counsel for Plaintiffs*

23
             LEXI J. HAZAM
24           **LIEFF CABRASER HEIMANN &
             BERNSTEIN, LLP**
25           275 Battery Street, 29th Floor
             San Francisco, CA 94111-3339
26           Telephone: 415-956-1000
             lhazam@lchb.com
27

28           *Co-Lead Counsel*

                              113

1

2
PREVIN WARREN
**MOTLEY RICE LLC**
3
401 9th Street NW Suite 630
Washington DC 20004
4
Telephone: 202-386-9610
pwarren@motleyrice.com
5

6
*Co-Lead Counsel*

7
MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
8
510 Walnut Street
Suite 500
9
Philadelphia, PA 19106
Telephone: 215-592-1500
10
mweinkowitz@lfsbalw.com

11
*Co-chair School District Committee*
12
*Plaintiffs' Steering Committee Leadership*

13
MELISSA YEATES
**KESSLER TOPAZ MELTZER**
14
**& CHECK LLP**
280 King of Prussia Road
15
Radnor, PA 19087
Telephone: 610-667-7706
16
myeates@ktmc.com
17

18
*Co-chair School District Committee*
*Plaintiffs' Steering Committee Leadership*
19

20
ANDRE M. MURA
**GIBBS MURA LLP**
21
1111 Broadway, Suite 2100
Oakland, CA 94612
22
Telephone: 510-350-9717
amm@classlawgroup.com
23

24
*Plaintiffs' Steering Committee Leadership*

25

26

27

28

PARTIES JOINT SET OF PROPOSED JURY INSTRUCTIONS

1

## **ATTESTATION**

2      I, Bailey J. Langner, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the

3  concurrence to the filing of this document has been obtained from each signatory hereto.

4

5  Dated: January 28, 2026

6                     */s/ Bailey J. Langner*

7                      Bailey J. Langner

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS